# EXHIBIT 11

1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
3 | LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
4 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
5 | Los Angeles, CA  90071-3144
Tel.: (213) 687-5000
6 | Fax: (213) 687-5600

7 | Attorneys for The MGA Parties

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11 | CARTER BRYANT, an individual,              ) CASE NO. CV 04-9049 SGL (RNBx)

12 |                         Plaintiff,          ) Consolidated with Case No. 04-9059
                                               ) and Case No. 05-2727
13 |              v.                            )
                                               ) Honorable Stephen G. Larson
14 | MATTEL, INC., a Delaware corporation,      )
                                               ) (1)   MGA PARTIES' NOTICE OF
15 |                         Defendant.          )        MOTION AND MOTION FOR
                                               )        PARTIAL JUDGMENT AS A
16 |                                            )        MATTER OF LAW FOR PHASE
                                               )        1B;
17 | AND CONSOLIDATED ACTIONS.                  )
                                               ) (2)   MEMORANDUM OF POINTS AND
18 |                                            )        AUTHORITIES IN SUPPORT
                                                        THEREOF;

19 |                                            **FILED UNDER SEPARATE COVER**:

20 |                                            (3)   [PROPOSED] ORDER

21 |

22 |                                            Hearing Date:   August 21, 2008
                                               Time:           10:00 AM

23 |

24 |

25 |

26 |

27 |

28 |

EXHIBIT 11
PAGE 155

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2       **PLEASE TAKE NOTICE** that, pursuant to the Court's order of August 15, 2008,

3  Defendants MGA Entertainment, Inc., MGA Entertainment (HK) Limited ("MGA HK"),

4  and Isaac Larian, will and hereby do move pursuant to Federal Rule of Civil Procedure 50(a)

5  for a partial judgment as a matter of law as to Mattel's claims on the following grounds:

6       First, Mattel has failed to prove an essential element – damages – for its state law

7  claims of intentional interference with contractual relations, aiding and abetting breach of

8  fiduciary duty, aiding and abetting breach of duty of loyalty, conversion, and unfair

9  competition, and thus those claims should be dismissed or, in the alternative, limited to

10  nominal damages;

11       Second, Mattel has failed to prove any damages arising from conduct of MGA HK

12  and therefore its claims against MGA HK conversion and unfair competition should be

13  dismissed in their entirety or, in the alternative, limited to nominal damages;

14       Third, Mattel's claims for copyright damages and disgorgement of Bratz profits do

15  not support its claim for punitive damages, and thus Mattel is not entitled to punitive

16  damages as a matter of law;

17       Fourth, the name "Bratz" is not subject to copyright protection, and thus Mattel is not

18  entitled to base any on claim on the name "Bratz" as a matter of law; and

19       Fifth, Mattel has failed to prove that there is any substantial similarity between

20  Bryant's drawings and the later-generation Bratz dolls, other product lines, or branded

21  merchandise, and thus these should be excluded from Mattel's copyright claims.

22       This Motion is based upon this Notice of Motion and accompanying Memorandum of

23  Points and Authorities, the records and files of this Court, and any other matter of which the

24  Court may take judicial notice.

25  DATED: August 18, 2008          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

26                                 By: _____/s/ Thomas J. Nolan_____

27                                        Thomas J. Nolan
                                    Attorneys for the MGA Parties
28

EXHIBIT __11__
PAGE __156__

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................... 1

ARGUMENT ......................................................................................... 1

I.   MATTEL DID NOT PROVE DAMAGES FOR ITS STATE LAW CLAIMS ................................................................................. 1

     A.   Mattel Did Not Present Evidence Of Any Permissible Damages ......... 1

     B.   Preemption Bars Recovery Of MGA's Bratz Profits For State Law Claims .......................................................................... 2

     C.   Damages For Aiding And Abetting Are Limited To Bryant's Profits ................................................................................. 5

     D.   Bratz Profits Are Not A Proper Measure Of Damages For Conversion .......................................................................... 6

II.  MATTEL DID NOT PROVE ANY DAMAGES AGAINST MGA HK ....... 7

III. MATTEL IS NOT ENTITLED TO PUNITIVE DAMAGES ....................... 7

IV.  MATTEL CANNOT BASE A CLAIM ON THE NAME "BRATZ" AND THE UNDISPUTED EVIDENCE SHOWS THAT MGA OWNS THAT NAME .......................................................................... 8

V.   MATTEL HAS FAILED TO PROVE COPYRIGHT INFRINGEMENT BY LATER GENERATION BRATZ DOLLS, OTHER PRODUCT LINES, OR BRANDED MERCHANDISE ....................................... 9

CONCLUSION ...................................................................................... 11

EXHIBIT 11
PAGE 157

1

# TABLE OF AUTHORITIES

2

## CASES

3

Page(s)

4

Abraham v. Super Buy Tires, Inc.,
    Civil No: 05CV1296-B(NLS),
5
    2007 U.S. Dist. LEXIS 35403 (S.D. Cal. May 15, 2007) ...........................9

6

Adams v. Herman,
    106 Cal. App. 2d 92 (1951)...........................................................................6

7

Aetna Health Inc. v. Davila,
    542 U.S. 200 (2004)......................................................................................3
8

Anderson v. Thacher,
9
    76 Cal. App. 2d 50 (1946)............................................................................6

10

Avina v. Spurlock,
    28 Cal. App. 3d 1086 (1972)........................................................................2
11

Bird v. Parsons,
12
    289 F.3d 865 (6th Cir. 2002)........................................................................8

13

Bucklew v. Hawkins, Ash, Baptie & Co., LLP.,
    329 F.3d 923 (7th Cir. 2003)................................................................3, 4, 8
14

Cano v. A World of Difference Institute,
15
    No. C 95-03291 CW,
    1996 U.S. Dist. LEXIS 8161 (N.D. Cal. May 31, 1996)..........................9
16

Carpenter Foundation v. Oakes,
17
    26 Cal. App. 3d 784 (1972)..........................................................................1

18

Convolve, Inc. v. Compaq Computer Corp.,
    No. 00 CV 5141 (GBD ),
19
    2006 WL 839022 (S.D.N.Y. Mar. 31, 2006) .............................................5

20

County of San Bernardino v. Walsh,
    158 Cal. App. 4th 533 (2007)......................................................................6
21

Del Madera Properties v. Rhodes & Gardner, Inc.,
22
    820 F.2d 973 (9th Cir. 1987)........................................................................3

23

Digital Envoy, Inc. v. Google, Inc.,
    370 F. Supp. 2d 1025 (N.D. Cal. 2005)......................................................5
24

Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,
25
    109 F.3d 1394 (9th Cir. Cal. 1997) ............................................................9

26

Eckard Brandes, Inc. v. Riley,
    338 F.3d 1082 (9th Cir. 2003)......................................................................6

27

28

· ii

EXHIBIT 11
PAGE 158

1  Ernest Paper Products Inc. v. Mobil Chemical Co.,
2      No. CV95-7918 LGB(AJWX),
       1997 WL 33483520 (C.D. Cal. Dec. 2,1997) .........................................5

3  Frank Music Corp. v. Metropolitan-Goldwyn-Mayer, Inc.,
4      772 F.2d 505 (9th Cir. 1985).................................................................4

5  Haines v. Parra,
       193 Cal. App. 3d 1553 (1987) ...............................................................7

6  Heckmann v. Ahmanson,
7      168 Cal. App. 3d 119 (1985) .................................................................6

8  Johnson v. Arista Holding, Inc.,
       No. 05 CIV. 9645 (LBS),
9      2006 WL 3511894 (S.D.N.Y. Dec. 5, 2006) .....................................3, 4

10 Kouf v. Walt Disney Pictures & Television,
       16 F.3d 1042 (9th Cir. 1994).................................................................9

11 Lanard Toys, Ltd. v. Novelty, Inc.,
12     511 F. Supp. 2d 1020 (C.D. Cal. 2007).................................................9

13 Lueter v. California,
       94 Cal. App. 4th 1285 (2002)................................................................6

14 Melchior v. New Line Products, Inc.,
15     106 Cal. App. 4th 779 (2003)................................................................6

16 Moore v. Local Union 569 of International Brotherhood of Electric Workers,
       989 F.2d 1534 (9th Cir. 1993)...............................................................2

17 Neilson v. Union Bank of California, N.A.,
18     290 F. Supp. 2d 1101 (C.D. Cal. 2003).................................................6

19 People v. Bestline Products, Inc.,
       61 Cal. App. 3d 879 (1976) ...................................................................5

20 Rickards v. Canine Eye Registration Foundation, Inc.,
21     704 F.2d 1449 (9th Cir. 1983)...............................................................2

22 Rosenthal v. Gould,
       273 Cal. App. 2d 239 (1969)..................................................................5

23 Seals-McClellan v. Dreamworks, Inc.,
24     No. 03-55570 ,
       2004 U.S. App. LEXIS 25426 (9th Cir. Dec. 9, 2004) .........................9

25 Spates v. Dameron Hospital Association,
26     114 Cal. App. 4th 208 (2003)................................................................6

27 Thrifty-Telegraph, Inc. v. Bezenek,
       46 Cal. App. 4th 1559 (1996).................................................................2

28

EXHIBIT  11
PAGE  159

Troensegaard v. Silvercrest Industrial, Inc.,
    175 Cal. App. 3d 218 (1985)................................................................8

Worth v. Universal Pictures, Inc.,
    5 F. Supp. 2d 816 (C.D. Cal. 1997) .......................................................4

Xum Speegle, Inc. v. Fields,
    216 Cal. App. 2d 546 (1963) .................................................................6

## STATUTES

Cal. Civ. Code § 3336..........................................................................6

Cal. Civ. Code § 3426.7.......................................................................5

17 U.S.C. §301 ..................................................................................3

## MISCELLANEOUS

5 William F. Patry, Patry on Copyright §18:21 (2008)...........................3, 4, 8

MGA Parties' Motion for Partial Judgment as a Matter of Law (Phase 1b) –
Case No. CV 04-9049 SGL (RNBx)

EXHIBIT 11
PAGE 160

## PRELIMINARY STATEMENT

Mattel failed to prove damages under any legally appropriate measure for any of its state law claims. Instead, by its own admission, Mattel put forth a single theory of recovery – disgorgement of MGA's and Larian's Bratz-related profits – which could only be properly awarded on its copyright claim. This theory of recovery is inappropriate for Mattel's state law claims because preemption bars the award of state law damages for conduct that is, in essence, copyright infringement. Mattel's aiding and abetting claims also fail because the appropriate measure of damages for these claims is the fiduciary's (that is, Bryant's) profits, not those of the abettor. Mattel's conversion claim similarly fails because the proper measure is the value of the drawings themselves at the time they were converted – a burden that Mattel recognized it faced but never met with any evidence. MGA HK is entitled to judgment as a matter of law because Mattel failed to prove any damages, an essential element of its claims, arising from MGA HK's conduct. Moreover, Mattel's request for punitive damages fails because Mattel seeks only disgorgement tantamount to copyright damages, with no showing whatsoever that Mattel itself suffered any other damages, which is a prerequisite for the imposition of punitive damages.

In addition, Mattel's copyright claims should be limited. To begin with, Mattel is barred as a matter of law from basing its copyright claims on the name "Bratz" because a single word or phrase is not the proper subject of copyright protection. More significantly, the later generation Bratz dolls, other product lines, or branded merchandise should be excluded from Mattel's copyright infringement claims, as Mattel has failed to offer any evidence of substantial similarity between those items and Bryant's drawings.

## ARGUMENT

### I.   MATTEL DID NOT PROVE DAMAGES FOR ITS STATE LAW CLAIMS

#### A.   Mattel Did Not Present Evidence Of Any Permissible Damages

Mattel must prove damages as an element of each of its state-law claims. See Carpenter Found. v. Oakes, 26 Cal. App. 3d 784, 799-800 (1972) ("It is elementary that a party claiming damage must prove that he has suffered damage and prove the elements

1

EXHIBIT ___11___
PAGE ___161___

1 | thereof with reasonable certainty."); see also Thrifty-Tel, Inc. v. Bezenek, 46 Cal. App. 4th

2 | 1559, 1570 (1996) (trial court erred in not requiring proof of actual damages).[1]  Mattel

3 | failed to present any evidence of damages that is not tied up in its purported rights to Bratz

4 | based on its theory of copyright infringement.  (See, e.g., Tr. 6286:15-6304:14 & Ex. 13932

5 | (presenting evidence of the profits derived from Bratz).)   Moreover, Mattel has only

6 | presented evidence of MGA's and Larian's – not Bryant's – profits.  (See id.)  For the

7 | reasons discussed below, such evidence does not suffice as an appropriate measure of

8 | recovery on any of Mattel's claims.  Consequently, having made no showing here with

9 | respect to intentional interference, aiding and abetting, conversion, or unfair competition,

10 | Mattel's state law claims should be dismissed.  Moore v. Local Union 569 of Int'l B'hd. of

11 | Elec. Workers, 989 F.2d 1534, 1542 (9th Cir. 1993) (affirming directed verdict in favor of

12 | defendant where plaintiff did not prove damages); Rickards v. Canine Eye Registration

13 | Found., Inc., 704 F.2d 1449, 1457 (9th Cir. 1983) (same).[2]

14 |   **B.   Preemption Bars Recovery Of MGA's Bratz Profits For State Law Claims**

15 |   Mattel's claims for intentional interference and unfair competition are limited by this

16 | Court's Order on summary judgment, in which the Court held that they are preempted by

17 | the Copyright Act "to the extent that [they are] based on Mattel's rights to Bratz."  (4/25/08

18 | Order at 2 & 4.)  Likewise, as the MGA Parties established in their Phase 1a JMOL brief,

19 |

---

20 | [1]   Absent a showing of the damages arising as a consequence of the specific harm which underlies its claim, Mattel is entitled to nominal damages at most.  Avina v. Spurlock, 28 Cal. App. 3d 1086,

21 | 1089 (1972) ("The rule rests upon the elemental concept that an award of damages, as in other findings, must rest upon substantial legal evidence; to award other than a token or trifling sum in

22 | the absence of such evidence is a judgment not supported by the evidence.").  Thus, to the extent Mattel has sought nominal damages in this case, such damages may be awarded as an alternative to

23 | dismissal.

24 | [2]   Although the Court, not the jury, will decide Mattel's damages on its unfair competition claims, Mattel has presented no evidence on which the Court could base this decision, and thus the unfair

25 | competition claim is equally subject to this motion.  See Rickards, 704 F.2d at 1457 (affirming directed verdict where jury was sitting in advisory capacity and decision was to be made by court).

26 | The only theory of unfair competition that survived summary judgment was commercial bribery (as to which Mattel offered no evidence of damages) and intentional interference (which has been

27 | preempted to the extent it seeks recovery of profits from the exploitation of the rights to Bratz). (4/25/08 Order at 7 & 5/21/08 Order at 10.)

28 |

EXHIBIT   11
PAGE   102

1  Mattel's aiding and abetting claims are preempted to the extent they replicate a copyright

2  claim and seek recovery based on exploiting any rights to Bratz. (See MGA Parties' Phase

3  1a JMOL at 1-3 (Docket 4080) (citing Del Madera Props. v. Rhodes & Gardner, Inc., 820

4  F.2d 973, 977 (9th Cir. 1987)).) [3]

5      Although Mattel has suggested otherwise, the Copyright Act is clear that it preempts

6  not just equivalent claims but also equivalent remedies. 17 U.S.C. § 301(b)(1). The

7  Supreme Court has cautioned district courts to be mindful of the "careful balancing"

8  engaged in by Congress when it enacts statutes like the Copyright Act that completely

9  preempt the field and instructing courts to find preemption when state law claims provide

10 alternative remedies to those provided in federal statutes. Aetna Health Inc. v. Davila, 542

11 U.S. 200, 213-14 (2004). As a leading treatise explains in noting that preemption must

12 occur both for rights and remedies:

13     Section 301(b)(1) expressly preempts equivalent rights or remedies. Section 504

14     of the Copyright Act grants a successful plaintiff the right to the defendant's

15     infringing profits. … The range of monetary relief available under the Copyright

16     Act is quite broad; therefore, a state claim for profits from use of a copyrighted

17     work or the reasonable value of the work cannot survive preemption.

18 5, William F. Patry, Patry on Copyright § 18:21 (2008) (emphasis added).

19                          
  [3]   The MGA Parties are mindful of this Court's tentative conclusion that there is an extra element

20 present in Mattel's fiduciary duty claim. (Tr. 5496:13-25, 7473:1-7474:18.) The MGA Parties
concede that it is possible that some portion of Mattel's claim relates to conduct other than the

21 exploitation of the rights to Bratz. But to the extent this claim is seeking damages for the
exploitation of the rights to Bratz, this portion of the claim "does not add any 'extra element'

22 which changes the nature of the action. … [O]wnership of this material, and the alleged
misappropriation by the defendants, are part and parcel of the copyright claim." Del Madera, 820

23 F.2d at 977. The fact that Mattel's proposed measure of damages is premised on the same conduct

24 for both its copyright and state law claims, indeed, Mattel concedes it is identical (Tr. 7480:15-17
("as is clearly the case, we're seeking disgorgement of benefits for the copyright claim as well as

25 the tort claims"), should be dispositive that Mattel's claims are preempted. The Court had asked
the MGA Parties whether there was any authority for the proposition that pursuit of copyright

26 remedies on state law theories resulted in preemption, and there is such authority, including the
express terms of the Copyright Act itself. 17 U.S.C. § 301(b)(1); Bucklew v. Hawkins, Ash,

27 Baptie & Co., LLP., 329 F.3d 923, 934 (7th Cir. 2003); Johnson v. Arista Holding, Inc., 2006 WL
3511894, at *7 (S.D.N.Y. Dec. 5, 2006); 5 Patry on Copyright § 18:21.

28

MGA Parties' Motion for Partial Judgment as a Matter of Law (Phase 1b) –
Case No. CV 04-9049 SGL (RNBx)

EXHIBIT __11__

PAGE __163__

1   Just as the claims themselves cannot be based on Mattel's purported rights to Bratz,
2   which arise only in the context of copyright, Mattel's damages likewise cannot be based on
3   Mattel's purported rights to the profits from Bratz. See id. (citing Bucklew v. Hawkins, Ash,
4   Baptie & Co., LLP., 329 F.3d 923, 934 (7th Cir. 2003) (where "[t]he compensatory
5   damages" that a plaintiff seeks for state law claims "are identical to the damages that it
6   seeks for copyright infringement," the "preemption clause forbids states to add sanctions for
7   a wrongful act that is identical to a violation of the [Copyright Act]")); see also Johnson v.
8   Arista Holding, Inc., 2006 WL 3511894, at *7 (S.D.N.Y. Dec. 5, 2006) ("Common law
9   causes of action are generally preempted when they seek damages that are identical to those
10  sought for copyright infringement"); Worth v. Universal Pictures, Inc., 5 F. Supp. 2d 816,
11  822-23 (C.D. Cal. 1997) (finding conversion claim preempted based on damages sought:
12  "Plaintiffs do not bring their conversion action for retrieval of these items, but rather for the
13  profits from the movie's reproduction and distribution. ... The profits created from the
14  movie "Daylight" are the damages sought from the movie's unauthorized reproduction and
15  distribution and are subsumed within federal copyright law.") Any other rule would make a
16  finding of preemption meaningless.

17   Indeed, the rationale for finding preemption of state law claims that mirror the
18  copyright claims is brought into stark relief in this Phase. Mattel seeks to recover under its
19  state law claims all of MGA's profits from exploiting Bratz. As Mattel candidly admits,
20  this is precisely the same relief that Mattel seeks on its Copyright claim, but with one major
21  caveat. Under the Copyright Act, Mattel's right to recovery is subject to an exhaustive and
22  detailed apportionment scheme that reduces and excludes certain items from any recovery.
23  See, e.g., Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 518 (9th Cir.
24  1985). By contrast, Mattel contends that there is no such limitation on its recovery for its
25  state law claims and relies on the fact there is no authority suggesting such an
26  apportionment is proper. (See Tr. 6313:18-20.) While it is true that there is little authority,
27  the absence of any authority stems, not surprisingly, from the fact that Congress expressly
28  occupied the entire area of calculating damages from the exploitation of rights to original

4


EXHIBIT  11
PAGE  164

Case 2:04-cv-09049-DOC-RNB    Document 4683-6    Filed 01/12/09    Page 12 of 113    Page ID
#:133847
Case 2:04-cv-09049-SGL-RNB    Document 4264    Filed 08/18/2008    Page 11 of 17

1 | works of authorship and made plain that state law claims must give way to this statutory
2 | scheme. 17 U.S.C. § 301(a) (mandating that any rights granted under state law that are
3 | "equivalent to any of the exclusive rights within the general scope of copyright as specified
4 | by section 106 [of the Copyright Act]" are preempted).[4] Given this broad preemption,
5 | disgorgement of Bratz profits is not an appropriate measure of damages for any of Mattel's
6 | state law claims as that theory of recovery is not only "equivalent to any of the exclusive
7 | rights within the general scope of copyright," it is <u>identical</u> to such exclusive rights.[5]

8 |     **C.**    <u>**Damages For Aiding And Abetting Are Limited To Bryant's Profits**</u>

9 |        With respect to Mattel's aiding and abetting claims, there is an additional limitation
10 | on Mattel's damages. Even if disgorgement of Bratz profits were an appropriate remedy in
11 | this case, it is <u>Bryant's</u> profits from Bratz, not Larian's or MGA's, that would be the
12 | appropriate measure. It is well-established that the aiding and abetting party may be held
13 | jointly liable with the fiduciary for the <u>fiduciary's</u> profits, not the abettor's own profits. <u>See</u>
14 | <u>People v. Bestline Prods., Inc.</u>, 61 Cal. App. 3d 879, 919 (1976) ("One who knowingly aids
15 | and abets a fiduciary to make secret profits may be held liable jointly with the fiduciary for
16 | such secret profits"); <u>Rosenthal v. Gould</u>, 273 Cal. App. 2d 239, 243 (1969) ("it is equally

17 | ────────────

[4]    In addition to preemption by the federal Copyright Act, Mattel's claim for aiding and abetting
18 | breach of fiduciary duty is also preempted by the California Uniform Trade Secrets Act
("CUTSA"). <u>See</u> Cal. Civ. Code § 3426.7. Mattel's breach of fiduciary duty claim is based on
19 | Bryant's misappropriation of proprietary information in violation of his duty under Paragraph 1(a)
of the Inventions Agreement to protect Mattel's confidential information. (5/21/08 Order at 4.)
20 | CUTSA preemption applies to any common law tort claim, like this one, involving conduct that
could support a claim for misappropriation of trade secrets. <u>See</u> <u>Digital Envoy, Inc. v. Google, Inc.</u>,
21 | 370 F. Supp. 2d 1025, 1032-35 (N.D. Cal. 2005); <u>see also</u> <u>Convolve, Inc. v. Compaq Computer</u>
<u>Corp.</u>, 2006 WL 839022, at *7 (S.D.N.Y. Mar. 31, 2006) (applying California law, finding
22 | preemption of "all common law claims that are based on the same conduct which could support a
UTSA cause of action"); <u>Ernest Paper Prods. Inc. v. Mobil Chem. Co. Inc.</u>, 1997 WL 33483520, at
23 | *9 (C.D. Cal. Dec. 2,1997) (finding preemption of all claims based on misappropriation of
24 | customer lists). Thus, Mattel's claim is doubly preempted.

[5]    Even if the Court decided not to find preemption of the aiding and abetting claims, if the
25 | Court's prior determination on summary judgment that the tortious interference and unfair
26 | competition claims are preempted is to have any meaning whatsoever, then Mattel must be barred
from recovery under Copyright-like theories for these two claims. The same would be true for the
27 | Court's grant of summary judgment on Mattel's conversion claim to the extent it sought recovery
beyond the value of the "paper and ink" of Carter Bryant's drawings at the time of the alleged
28 | conversion in 2000. (<u>See</u> 4/25/08 Order at 2.)

EXHIBIT __11__
PAGE __165__

1  clear that their liability is co-extensive with Gould's if, as determined by the trier of the fact,

2  they conspired with Gould and aided and abetted him in the breach of his fiduciary

3  obligations"); Anderson v. Thacher, 76 Cal. App. 2d 50, 72 (1946) ("And where, after the

4  violation of a fiduciary obligation, an amount is found to be due from the agent, judgment

5  for the same amount may also be rendered against those proven to have fraudulently aided

6  in the attempt of the fiduciary to obtain secret profits, although they themselves are not

7  fiduciaries, and even though they receive no share of the profits").[6] Thus, once again,

8  MGA's profits from Bratz are not the appropriate measure of damages on these claims.

9  And as Mattel sought recovery under no other theory, these claims fail as a matter of law.

10      **D.    Bratz Profits Are Not A Proper Measure Of Damages For Conversion**

11          To be awarded damages on its conversion claim, Mattel was obliged to prove: 1) the

12  fair market value of the items converted, and 2) the expenses it incurred in attempting to

13  recover the property.  See Cal. Civ. Code §3336; Melchior v. New Line Prods., Inc., 106

14  Cal. App. 4th 779 (2003).  The fair value market value is measured as of the time that the

15  property was converted, not at any later time.  See, e.g., Spates v. Dameron Hosp. Assn.,

16  114 Cal. App. 4th 208, 221 (2003); Lueter v. Cal., 94 Cal. App. 4th 1285, 1302 (2002).

17  Pursuant to this Court's order, Mattel's claim is limited to the value of the drawings

18  themselves as pieces of art, and Mattel is precluded from seeking recovery for any value

19  that exists from the exploitation of the rights to these drawings (i.e., copyright-like theories

20  of recovery).  (See 4/25/08 Order at 2.)  For these reasons, the MGA Parties' Bratz profits

21

---

22  [6]  Indeed, despite it its efforts to support its jury instruction on damages for aiding and abetting,
Mattel failed to point to a single case authorizing disgorgement of the aider/abettor's profits
23  connected to a fiduciary's breach of duty.  (See Mattel's Proposed Jury Inst. – Disgorgement of
Profits and Objection thereto (Docket 4163) at 129-137) (citing County of San Bernardino v.
24  Walsh, 158 Cal. App. 4th 533, 537 (2007) (awarding damages in the amount of the benefit
conferred upon fiduciary and actual damages suffered by County); Neilson v. Union Bank of Cal.,
25  N.A., 290 F. Supp. 2d 1101, 1127-29 (C.D. Cal. 2003) (making no reference to any profits by
defendants, denying defendants' motion to dismiss and explaining that personal financial gain was
26  not a prerequisite to liability); Heckmann v. Ahmanson, 168 Cal. App. 3d 119, 123 (1985)
(addressing direct liability, not aiding and abetting); Xum Speegle, Inc. v. Fields, 216 Cal. App. 2d
27  546, 551-52 (1963) (addressing direct liability, not aiding and abetting); Adams v. Herman, 106
Cal. App. 2d 92 (1951) (addressing direct liability, not aiding and abetting); Eckard Brandes, Inc. v.
28  Riley, 338 F.3d 1082, 1085 (9th Cir. 2003) (addressing direct liability, not aiding and abetting)).)

EXHIBIT ___11___

PAGE ___166___

1 | are not the proper measure of recovery for this claim. Mattel's counsel conceded that its
2 | conversion claim was subject to these limitations and could not be established through
3 | pursuit of defendants' profits. (Tr. 7476:14-19 ("MR. PROCTOR: Thank you, Judge.
4 | Alternative methods doesn't fit the case. We have one damages theory as to the state law
5 | claims, as to the aiding and abetting claim, as to the intentional interference claim.
6 | **Conversion permits a different remedy.** So that's a different claim, but there's going to
7 | be a different damages instruction on that claim.").) Notwithstanding these limitations,
8 | known to Mattel before trial, Mattel did not offer any evidence of the alleged value of any
9 | of the converted drawings at the time of the alleged conversion. In addition, it has failed to
10 | offer any evidence of the expenses it incurred in seeking to recover the converted property.[7]
11 | Thus, this claim fails for lack of proof of an essential element and should be dismissed.

12 | ## II.   MATTEL DID NOT PROVE ANY DAMAGES AGAINST MGA HK

13 | As the MGA Parties established in their JMOL for Phase 1a, Mattel's claim for unfair
14 | competition against MGA HK fails as the record is devoid of any evidence that would allow
15 | a reasonable jury to find that MGA HK could be liable for any alleged acts of unfair
16 | competition. Mattel has further failed to prove any damages arising from conduct of MGA
17 | (HK) and therefore all of its claims against MGA HK should be dismissed in their entirety.

18 | ## III.   MATTEL IS NOT ENTITLED TO PUNITIVE DAMAGES

19 | Because the only recovery Mattel seeks are disgorgement of MGA's and Larian's
20 | profits, and Mattel has not offered any evidence that it was harmed in any way by the
21 | conduct of the MGA Parties, Mattel is not entitled to pursue punitive damages against the
22 | MGA Parties.[8] To begin with, punitive damages are not permissible on state law claims that
23 | merely duplicate copyright claims. As Judge Posner explained in a well-reasoned opinion

24 | [7]   Indeed, in light of Mattel's failure to present **any** evidence, the issue of expenses should not
25 | even reach the jury. If it were to do so, the jury may be inclined to guess at Mattel's attorneys' fees, which is not a proper measure under Cal. Civ. Code § 3336. See, e.g., Haines v. Parra, 193 Cal.
26 | App. 3d 1553, 1559 (1987) (collecting cases).

27 | [8]   Moreover, the Court (at Mattel's urging) precluded the MGA Parties from introducing any
28 | evidence to show that Mattel was not harmed by the conduct at issue here and that Mattel never even would have offered Bratz products on the market had it owned such rights.

EXHIBIT __11__
PAGE __167__

1  of the Seventh Circuit, where the "compensatory damages" that a plaintiff seeks for state

2  law claims "are identical to the damages that it seeks for copyright infringement," the

3  plaintiff's "request for punitive damages is in fact a request for punitive damages for

4  copyright infringement." Bucklew, 329 F.3d at 934.  "The copyright statute does not

5  authorize such damages ... and the statute's preemption clause forbids states to add

6  sanctions for a wrongful act that is identical to a violation of the statute." Id. As a leading

7  treatise explains in discussing this case, "[t]he key to Judge Posner's opinion is his

8  statement that the damages plaintiff sought were identical to the damages that arose from

9  the acts constituting copyright infringement; in essence, the same acts gave rise to the same

10  damages and hence in that case the fraud claim was merely a re-labeled copyright

11  infringement claim." 5 Patry on Copyright § 18:21. Likewise, California courts have held

12  that plaintiffs may not recover duplicative damages where those damages serve the same

13  punitive – rather than compensatory – purpose. See, e.g., Troensegaard v. Silvercrest Indus.,

14  Inc., 175 Cal. App. 3d 218, 226-28 (1985) (denying recovery of both civil penalty and

15  punitive damages where both served "the purpose of punishing, and making an example of,

16  [the defendant]"). For these reasons, Mattel is not entitled to punitive damages on its claims.

17  **IV.   MATTEL CANNOT BASE A CLAIM ON THE NAME "BRATZ" AND THE**
18  **UNDISPUTED EVIDENCE SHOWS THAT MGA OWNS THAT NAME**

19       In Phase 1a, the jury was asked whether Carter Bryant "conceived" or "reduced to

20  practice" the name "Bratz" while employed by Mattel, and the jury found he did. But that

21  finding, by itself, cannot support a copyright claim. As Mattel admitted in its proposed jury

22  instruction on the issue, names are not subject to copyright. (See Mattel's Prop. Jury Inst. –

23  Copyright Infringement—Evidence Of Copying Of Names Or Titles (Docket 4163).)

24  Rather, names are only subject to trademark protection. See, e.g., Bird v. Parsons, 289 F.3d

25  865, 881 (6th Cir. 2002) (use of trademark consisting of single word did not constitute

26  copyright infringement because single word is not subject to copyright; collecting cases).

27  Indeed, the MGA Parties have presented uncontested evidence that they purchased the

28  trademark for the name "Bratz" from a company that asserted prior ownership. (Tr. 2149:2-

EXHIBIT   11
PAGE   168

Case 2:04-cv-09049-DOC-RNB   Document 4683-6   Filed 01/12/09   Page 16 of 113   Page ID
#:133851
Case 2:04-cv-09049-SGL-RNB   Document 4264   Filed 08/18/2008   Page 15 of 17

13.) Thus, the jury's Phase 1a finding that Bryant conceived of the name "Bratz" while at Mattel may not serve as the basis of its copyright or state law claims, and MGA is entitled as a matter of law to continue to use that name in the marketing and sales of its products.

## V.   MATTEL HAS FAILED TO PROVE COPYRIGHT INFRINGEMENT BY LATER GENERATION BRATZ DOLLS, OTHER PRODUCT LINES, OR BRANDED MERCHANDISE

As the Court's August 15, 2008 Proposed Phase 1b Jury Instructions explain, in order to prove copyright infringement, Mattel must demonstrate both that the MGA Parties copied original elements from Mattel's copyrighted work, and that there is "substantial similarity" between each allegedly infringing work and the "protected expression" in the copyrighted works.   See Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1398 (9th Cir. 1997); Seals-McClellan v. Dreamworks, Inc., 2004 U.S. App. LEXIS 25426, at *2 (9th Cir. Dec. 9, 2004) (unpublished) ("Proof of copying requires evidence that the alleged infringer had access to the protected work before creating the accused work and that a substantial similarity of expression exists between the protected and accused works."); Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d 1020, 1031 (C.D. Cal. 2007) ("To establish copyright infringement, plaintiffs have the burden of showing that (1) they own the allegedly infringed works, and (2) defendants copied protected expression from plaintiffs' works without authorization"); Kouf v. Walt Disney Pictures & Television, 16 F.3d 1042, 1043 n.2 (9th Cir. 1994); Cano v. A World of Difference Inst., 1996 U.S. Dist. LEXIS 8161 (N.D. Cal. May 31, 1996). Cf. Abraham v. Super Buy Tires, Inc., 2007 U.S. Dist. LEXIS 35403 (S.D. Cal. May 15, 2007) (noting that, in the context of a patent infringement case, "it is Plaintiffs' burden to prove infringement against each and every accused product.")

Mattel's Phase 1b case-in-chief focused almost entirely on a high-level comparison between the Bryant drawings and the first generation Bratz dolls.[9]   Mattel has not made any

---

[9]   Mattel has devoted most of its time to statements made by MGA in pleadings in other litigations, such as in Hong Kong. Evidence admitted through these pleadings does not discuss later generation Bratz dolls, other product lines, or branded merchandise.

9

EXHIBIT ___11___
PAGE ___169___

1  attempt to demonstrate "substantial similarity" between "protected expression" in the

2  Bryant drawings and any of the later generation Bratz dolls, which differ significantly from

3  first generation dolls in terms of the particularized expression that the Court has deemed

4  protectable.  MGA offered evidence demonstrating how later generation Bratz dolls differ

5  from first generation dolls – including the themes, fashions, accessories, face paint, and

6  characters.  Mattel, however, could not adduce any evidence to demonstrate that the MGA

7  artists who designed these later generation dolls "copied" protected expression from Carter

8  Bryant's drawings.  In fact, the evidence is squarely to the contrary.  It shows that MGA

9  employees working on later generation dolls used their own creative process to create new

10  doll designs, and had never even seen Carter Bryant's drawings.  (See, e.g., Tr. 7249:1-9

11  (testimony of L. Domingo, explaining that he had never seen Bryant's drawings and

12  designed different face paint, accessories, and fashions for later generation Bratz dolls).)

13      Mattel has also presented no evidence that indicates that any of the other product

14  lines (e.g., Kidz, Petz, Boyz, Babyz, etc.) are based on Carter Bryant's drawings, or that

15  these other products are substantially similar to the copyrighted works.  MGA presented the

16  testimony of MGA employee Leon Djiguerian, that the following product lines were

17  developed without reference to Carter Bryant's drawings, and each have different visual

18  attributes and appearances, as well as independently created sculpts: Bratz Boyz [Tr. 7204-

19  05]; Lil Bratz [7206]; Bratz Babyz [7207]; Bratz Big Babyz [7208]; Bratz Kidz [7209-10];

20  Big Kidz [7210]; Lil Angelz [7211-12]; Star Singerz [7212-13]; Fashion Pixiez [7213-14];

21  Talking Bratz [7214-15]; and Walking Bratz [7215-16].  MGA also offered the testimony of

22  MGA's Director of Operations, Ninette Pembleton, regarding the independent development

23  and design of various product lines, including Bratz Fashion Pixiez [Tr. 5756]; Bratz Babyz

24  [5763]; Micro Bratz [id.]; Big Babyz [5765]; Bratz Kidz [id.]; Bratz Babyz' Ponyz [5766];

25  Itsy Bitsy Bratz [5767]; and Bratz Petz [5785].

26      Finally, Mattel has failed to demonstrate infringement by MGA's branded

27  merchandise.  On July 21, 2008, Mattel represented during a telephonic hearing that one of

28  its theories "with respect to much of the merchandise ... is that it is a derivative work – or

EXHIBIT  11
PAGE  170

1  actually, it directly infringes to the extent that the merchandise has the images from the

2  protected works on them ..." (Hearing Tr. 5249:19-23.)  However, Mattel has failed to

3  provide evidence to support its theory with regard to the character art that appears on

4  MGA's branded merchandise.[10]  Debora Middleton, MGA's character art director, testified

5  that in developing hundreds of character art images per year, she has <u>never</u> seen or made

6  reference to the Carter Bryant drawings which Mattel now owns, nor has she ever directed

7  any of her employees to do so. (Tr. 7198-99.) Indeed, Ms. Middleton testified to creating

8  character art independently of the Bryant drawings and of the Bratz dolls themselves. (Tr.

9  7197.) Mattel has not proffered any contrary evidence. Thus, no reasonable juror could

10  conclude that the later generation Bratz dolls, other product lines, or branded merchandise

11  infringe upon Bryant's drawings.

## CONCLUSION

13      For the foregoing reasons, the MGA Parties respectfully request that their Motion for

14  Partial Judgment as a Matter of Law be granted in its entirety.

15  DATED: August 18, 2008      SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

16                              By: _____/s/ Thomas J. Nolan_____

17                                      Thomas J. Nolan
                                        Attorneys for the MGA Parties

---

[10]      MGA has conceded that the first generation Bratz doll packaging art was derivative of
Carter Bryant's drawings.  However, all other generations of character art, whether appearing on
doll packaging or branded merchandise, are in dispute.

EXHIBIT ____11____
PAGE ____171____

# EXHIBIT 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC.,<br><br>        Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT,<br><br>        Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>**FINAL VERDICT FORM AS GIVEN** |

7-17

07209/2554627.7

EXHIBIT _12_

PAGE _172_

**VERDICT FORM**

We answer the questions submitted to us as follows:

**<u>Timing of Tangible Items</u>**

1.     For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|---|---|---|
| ☒ | ☐ | TX 5-52, 62-1, 624/5-74, 62-11, 10537, 15180/5-75, 62-12, 10538, 15181/5-111, 708/5-112, 62-13/5-113/5-114/62-14/62-15, 1152-1, 1152-2, 10613/1328/10033-3/10033-4 |
| ☒ | ☐ | TX 5-88, 35-1, 35-3, 5-101, 1327, 10153-3, 10153-4 |
| ☒ | ☐ | TX 5-35, 757 |
| ☒ | ☐ | TX 5-36, 701, 702 |
| ☒ | ☐ | TX 5-37, 703 |
| ☒ | ☐ | TX 5-38, 762 |
| ☐ | ☐ | TX 5-39, 523, 752 |
| ☐ | ☐ | TX 5-40, 753, 754, 13583 |
| ☐ | ☐ | TX 751-2, 751-3, 5-41, 755 |
| ☐ | ☐ | TX 5-42, 756 |
| ☒ | ☐ | TX 5-43, 709 |
| ☒ | ☐ | TX 5-46, 710 |
| ☒ | ☐ | TX 5-49, 704 |
| ☒ | ☐ | TX 5-50, 705 |

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| ☒ | ☐ | TX 5-54, 62-2, 620, 774, 775 |
| ☒ | ☐ | TX 5-55, 62-3, 785, 1152-9 |
| ☒ | ☐ | TX 5-56, 764, 15176 |
| ☒ | ☐ | TX 5-57, 776, 777 |
| ☒ | ☐ | TX 5-58, 765, 15177 |
| ☒ | ☐ | TX 5-59, 739, 740 |
| ☒ | ☐ | TX 5-60, 761 |
| ☒ | ☐ | TX 5-61, 62-4, 782, 796-1, 1748 |
| ☒ | ☐ | TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| ☒ | ☐ | TX 5-63, 758, 759, 760 |
| ☒ | ☐ | TX 5-64, 62-6, 795, 1152-14, 1750 |
| ☒ | ☐ | TX 5-65, 1152-7, 1152-8, 11789 |
| ☒ | ☐ | TX 5-66, 794, 1152-13 |
| ☒ | ☐ | TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| ☒ | ☐ | TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| ☒ | ☐ | TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| ☒ | ☐ | TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| ☒ | ☐ | TX 5-73, 741, 742 |
| ☒ | ☐ | TX 5-76, 706 |
| ☒ | ☐ | TX 5-77, 707 |
| ☒ | ☐ | TX 5-78, 10539, 18501 |
| ☒ | ☐ | TX 5-136, 711 |
| ☒ | ☐ | TX 10579, 18281 |
| ☒ | ☐ | TX 15172 |

EXHIBIT 12

PAGE 174

2.   For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 3-1, 779, 780, 1-1, 2-1, 778 |
| ☒ | ☐ | TX 3-2, 726, 727, 728, 1-4, 2-5 |
| ☒ | ☐ | TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| ☒ | ☐ | TX 3-5, 791, 1-8, 2-2 |
| ☒ | ☐ | TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| ☒ | ☐ | TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| ☒ | ☐ | TX 3-9, 788, 1-10, 2-6, 746,  5-103, 10543 |
| ☒ | ☐ | TX 3-10, 735, 736 |
| ☒ | ☐ | TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| ☒ | ☐ | TX 3-13, 793, 1-5, 2-3, 10-3 |
| ☒ | ☐ | TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| ☒ | ☐ | TX 1-2 |
| ☒ | ☐ | TX 3-11 |
| ☒ | ☐ | TX 5-26, 712 |
| ☒ | ☐ | TX 5-27, 713 |
| ☒ | ☐ | TX 5-81, 720 |
| ☒ | ☐ | TX 5-82, 715 |
| ☒ | ☐ | TX 5-83, 723 |
| ☒ | ☐ | TX 3-4, 5-84, 716, 717 |
| ☒ | ☐ | TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| ☒ | ☐ | TX 5-80, 721, 722, 5-86 |
| ☒ | ☐ | TX 5-87, 5-108, 724, 725 |
| ☒ | ☐ | TX 5-34 |

EXHIBIT 12

PAGE 175

3.   For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 5-89, 35-2, 323-32, 323-33 |
| ☒ | ☐ | TX 1107, 10638 |
| ☒ | ☐ | TX 1108, 10639 |
| ☒ | ☐ | TX 1109, 771 |
| ☒ | ☐ | TX 1110, 773 |
| ☒ | ☐ | TX 5-14, 10515 |
| ☒ | ☐ | TX 5-18, 10518 |
| ☒ | ☐ | TX 5-19, 10519 |
| ☒ | ☐ | TX 5-28, 10526 |
| ☒ | ☐ | TX 5-30 |
| ☒ | ☐ | TX 5-95 |
| ☒ | ☐ | TX 5-96 |
| ☒ | ☐ | TX 5-99 |
| ☒ | ☐ | TX 323-18 |
| ☒ | ☐ | TX 323-19 |
| ☒ | ☐ | TX 323-26 |

EXHIBIT 12
PAGE 176

1    4.    For each of the items listed below, has Mattel proven by a

2  preponderance of the evidence that the item was "conceived or reduced to practice"

3  — that is, created — by Carter Bryant, alone or jointly with others, during the

4  period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

5

6          **Trial Exhibit No.**                    YES     NO

7    The Three Dimensional Item Presented at Pitch      X    ____

8                    Meeting

9

10            Trial Exhibit 1136                       X    ____

11

12                    **Timing of Ideas**

13

14    5.    Has Mattel proven by a preponderance of the evidence that Carter

15  Bryant conceived the "Bratz" characters while employed by Mattel?

16    Yes    X

17    No    ____

18

19

20    6.    Has Mattel proven by a preponderance of the evidence that Carter

21  Bryant conceived the name "Bratz" while employed by Mattel?

22          Yes    X

23          No    ____

24

25

26

27

28

EXHIBIT 17

PAGE ____ 177

1       **<u>Intentional Interference with Contractual Relations</u>**

2       7.    Is MGA Entertainment, Inc. ("MGA") liable to Mattel for intentional

3  interference with contractual relations?

4           Yes  _X_

5           No  ____

6

7       8.    Is Isaac Larian liable to Mattel for intentional interference with

8  contractual relations?

9           Yes  _X_

10          No  ____

11

12     **<u>Aiding and Abetting Breach of Fiduciary Duty</u>**

13      9.    Is MGA liable to Mattel for aiding and abetting breach of fiduciary

14  duty?

15          Yes  _X_

16          No  ____

17

18     10.   Is Isaac Larian liable to Mattel for aiding and abetting breach of

19  fiduciary duty?

20          Yes  _X_

21          No  ____

22

23    **<u>Aiding and Abetting Breach of the Duty of Loyalty</u>**

24     11.   Is MGA liable to Mattel for aiding and abetting breach of the duty of

25  loyalty?

26          Yes  _X_

27          No  ____

28

1        12.    Is Isaac Larian liable to Mattel for aiding and abetting breach of the

2   duty of loyalty?

3               Yes    X

4               No    ____

5

6                              **Conversion**

7        13.    Is MGA liable to Mattel for conversion?

8               Yes    X

9               No    ____

10

11       14.    Is Isaac Larian liable to Mattel for conversion?

12              Yes    X

13              No    ____

14

15       15.    Is MGA Entertainment (HK) Limited liable to Mattel for conversion?

16              Yes    X

17              No    ____

18

19

20       Once this verdict form is completed, the foreperson of the jury should sign

21   and date on the lines below.

22   DATED: _July  17_____, 2008

23

24

25                                    _____
                                          Presiding Juror

26

27

28

07209/2554627.7                              -7-        Case No. CV 04-9049 SGL (RNBx)
                                        FINAL PROPOSED VERDICT FORM FOR PHASE 1A

EXHIBIT  12

PAGE  179

# EXHIBIT 13

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | |
| | Consolidated with |
| vs. | CASE NO. CV 04-9059 SGL (RNBx) |
| | CASE NO. CV 05-2727 SGL (RNBx) |
| MGA ENTERTAINMENT, INC., et al., | Hon. Stephen G. Larson |
| Defendants. | |
| AND CONSOLIDATED ACTIONS | **COURT'S PHASE B JURY INSTRUCTIONS AS GIVEN** |

EXHIBIT _13_

PAGE _180_

### JURY INSTRUCTION NO. 1

Members of the Jury:

Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

2

EXHIBIT 13

PAGE 181

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 2**

You should decide the case as to each party separately. Unless otherwise stated, the instructions apply to all parties.

EXHIBIT _13_

PAGE _182_

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. 3**

Whether or not you have taken notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

4

EXHIBIT _____ *13*_____

PAGE _____ 183_____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY INSTRUCTION NO. 4

The evidence you are to consider in deciding what the facts are consists of:

1.   the sworn testimony of any witness;

2.   the exhibits which are received into evidence; and

3.   any facts to which the lawyers have agreed or stipulated.

EXHIBIT  13

PAGE  184

**JURY INSTRUCTION NO. 5**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)    Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)    Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)    Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4)    Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

6

EXHIBIT 13

PAGE 185

1

### JURY INSTRUCTION NO. 6

2
3
4
5
6
7
8

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a

fact, such as testimony by a witness about what that witness personally saw or heard or

did.  Circumstantial evidence is proof of one or more facts from which you could find

another fact.  You should consider both kinds of evidence.  The law makes no distinction

between the weight to be given to either direct or circumstantial evidence.  It is for you to

decide how much weight to give to any evidence.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7

EXHIBIT 13

PAGE 186

### JURY INSTRUCTION NO. 7

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I have ordered that evidence be stricken from the record. That means that when you are deciding the case, you must not consider that evidence.

EXHIBIT 13
PAGE 187

# JURY INSTRUCTION NO. 8

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

9

EXHIBIT 13

PAGE 188

1

## JURY INSTRUCTION NO. 9

2      I will now say a few words about your conduct as jurors.

3      First, you are not to discuss this case with anyone, including members of your
4
5 family, people involved in the trial, or anyone else; this includes discussing the case in
6 internet chat rooms or through internet "blogs," internet bulletin boards or e-mails.  Nor
7 are you allowed to permit others to discuss the case with you. If anyone approaches you
8 and tries to talk to you about the case, please let me know about it immediately;

9      Second, do not read or listen to any news stories, articles, radio, television, or
10
11 online reports about the case or about anyone who has anything to do with it;

12      Third, do not do any research, such as consulting dictionaries, searching the
13 Internet or using other reference materials, and do not make any investigation about the
14 case on your own;

15      Fourth, if you need to communicate with me simply give a signed note to the
16
17 bailiff to give to me; and

18      Fifth, do not make up your mind about what the verdict should be until after you
19 have gone to the jury room to decide the case and you and your fellow jurors have
20 discussed the evidence. Keep an open mind until then.

21      Finally, until this case is given to you for your deliberation and verdict, you are
22
23 not to discuss the case with your fellow jurors.

24

25

26

27

28

10

EXHIBIT _13_

PAGE _189_

1

## JURY INSTRUCTION NO. 10

2

During deliberations, you will have to make your decision based on what you

3

recall of the evidence.  You will not have a transcript of the trial.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

PAGE ___190___

1

## JURY INSTRUCTION NO. 11

2

You must not make any assumptions about a witness based solely upon the use of

3

an interpreter to assist that witness.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

EXHIBIT  13

PAGE   191

**JURY INSTRUCTION NO. 12**

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess. Please understand that while you were waiting, we were working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum. I did not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

13

EXHIBIT 13

PAGE 192

**JURY INSTRUCTION NO. 13**

The parties have agreed to certain facts. You should therefore treat these facts as having been proved.

14

EXHIBIT __13__

PAGE __193__

1

### JURY INSTRUCTION NO. 14

2

A deposition is the sworn testimony of a witness taken before trial.  The witness

3

4

is placed under oath to tell the truth and lawyers for each party may ask questions.  The

5

questions and answers are recorded.  When a person is unavailable to testify at trial, the

6

deposition of that person, including a videotaped deposition, may be used at the trial.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __13__

PAGE __194__

# JURY INSTRUCTION NO. 15

      Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

      Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

16

EXHIBIT __13__

PAGE __195__

1

## JURY INSTRUCTION NO. 16

2

Certain charts and summaries not received in evidence have been shown to you

3

in order to help explain the contents of books, records, documents, or other evidence in

4

the case.  They are not themselves evidence or proof of any facts.  If they do not correctly

5

6

reflect the facts or figures shown by the evidence in the case, you should disregard these

7

charts and summaries and determine the facts from the underlying evidence.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

EXHIBIT _____ 13 _____

PAGE _____ 196 _____

**JURY INSTRUCTION NO. 17**

Other charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

18

EXHIBIT 13

PAGE 197

**JURY INSTRUCTION NO. 18**

You have heard evidence that both Mattel and MGA purchased and evaluated each other's existing products and had those products in their respective facilities.  In this trial, there is no allegation that it is illegal or improper for a company or person to purchase, possess, or evaluate the publicly available product of a competitor.

19

EXHIBIT 13

PAGE 198

## JURY INSTRUCTION NO. 19

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

20

EXHIBIT __13__

PAGE __199__

**JURY INSTRUCTION NO. 20**

Mattel claims that the defendants, MGA Entertainment, Inc. ("MGA"), Isaac Larian and MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), engaged in copyright infringement of certain items that you found in Phase A of this trial were created by Carter Bryant when he worked at Mattel. The defendants deny that claim.

Copyright is the exclusive right to copy.

This right to copy includes the exclusive rights to:

(1)    Authorize, or make additional copies, or otherwise reproduce the copyrighted work;

(2)    Recast, transform, or adopt the work, that is, to prepare derivative works based upon the copyrighted work;

(3)    Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

(4)    Display publicly a copyrighted work.

It is the owner of a copyright who may exercise these exclusive rights to copy.

As a matter of law, Mattel is the owner, by assignment, of the Bratz-related items that you found were created by Carter Bryant, alone or jointly with others, while employed by Mattel, which items have been registered by Mattel at the U.S. Copyright Office. In general, copyright law protects against production, adaptation and distribution of substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in an action for copyright infringement.

21

EXHIBIT 13

PAGE 200

1      You must consider each defendant's acts separately to determine whether that

2  defendant has engaged in an act that is an infringement of Mattel's copyright.

22

EXHIBIT 13

PAGE 201

# JURY INSTRUCTION NO. 21

Copyright law allows the author of an original work to prevent others from copying the way or form the author used to express the ideas in the author's work. Only the particular way of expressing an idea can be copyrighted. Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work, such as any procedures, processes, systems, methods of operation, concepts, principles or discoveries.

The right to exclude others from copying extends only to how the author expressed the ideas in the copyrighted work. The copyright is not violated when someone uses an idea from a copyrighted work, as long as the particular way of expressing that idea in the work is not copied.

23

EXHIBIT 13
PAGE 202

1

**JURY INSTRUCTION NO. 22**

2

3       Anyone who copies original elements of a copyrighted work without the owner's

4   permission infringes the copyright.

5       Mattel claims that the defendants have infringed copyrights for the Bratz-related

6   items described above.  On Mattel's copyright infringement claim, Mattel has the burden

7   of proving both of the following by a preponderance of the evidence:

8       1.    Mattel is the owner of a valid copyright; and

9       2.    The defendants copied original elements from the copyrighted work.

10      If you find that Mattel has proved both of these elements, your verdict should be

11  for Mattel.

12

13      If, on the other hand, Mattel has failed to prove either of these elements, your

14  verdict should be for the defendants.

15      As a matter of law, the first element is satisfied because Mattel is the owner of

16  each of the items you found were created by Carter Bryant, alone or jointly with others,

17  while employed by Mattel and which Mattel has registered with the U.S. Copyright

18  Office.

19

20      Whether or not the second element is satisfied is for you to decide.

21

22

23

24

25

26

27

28

EXHIBIT ____13____

PAGE ____203____

1

### JURY INSTRUCTION NO. 23

2
3       A copyright owner is entitled to exclude others from creating derivative works
4   based upon the owner's copyrighted work.  The term derivative work refers to a work
5   based on one or more pre-existing works.  Accordingly, Mattel is entitled to exclude
6   others from recasting, transforming, or adapting, without Mattel's permission, the
7   copyrighted works you found were created by Carter Bryant, alone or jointly with others,
8   while he was employed by Mattel.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT __13__

PAGE __204__

1

## JURY INSTRUCTION NO. 24

2

An owner is entitled to copyright protection of a compilation.  A compilation is a

3

4

work formed by the collection and assembling of preexisting materials or of data that are

5

selected, coordinated, or arranged in such a way that the resulting work as a whole

6

constitutes an original work of authorship.

7

The owner of a compilation may enforce the right to exclude others in an action

8

for copyright infringement.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 13

PAGE 205

**JURY INSTRUCTION NO. 25**

As explained above, Mattel has the burden of proving that the defendants copied original elements from Mattel's copyrighted work. There are two ways in which Mattel may meet that burden.

First, Mattel may show the defendants copied from the work by showing by a preponderance of the evidence that the defendants actually copied a significant amount of protectable expression from the work.

Second, in the alternative, Mattel may also show the defendants copied from the work by showing by a preponderance of the evidence that the defendants had access to Mattel's copyrighted works and that there are substantial similarities between the defendants' works and original elements of Mattel's works.

It is undisputed in this case that defendants had access to Mattel's copyrighted works. Whether there are substantial similarities between the defendants' works and original elements of Mattel's works is for you to decide.

27

EXHIBIT 13

PAGE 206

**JURY INSTRUCTION NO. 26**

You are to make a determination regarding substantial similarity according to a two-step process, which includes application of the "extrinsic test" and the "intrinsic test." To prevail on its claims for copyright infringement, Mattel must satisfy both of these tests.

First, you must apply the extrinsic test. Under the extrinsic test, Mattel must establish that specific ideas and expressive elements of the works Mattel owns and the Bratz-related products that Mattel claims are infringing are substantially similar.

The Court has determined what elements of the works that you found were created by Carter Bryant, solely or jointly while working at Mattel, are protectable under copyright law. These are the elements that you should consider for the purpose of your comparisons to each of the allegedly infringing products under the extrinsic test:

First, the particularized, synergistic compilation and expression of the human form and anatomy that expresses a unique style and conveys a distinct look or attitude;

Second, the particularized expression of a doll's head, lips, eyes, eyebrows, eye features, nose, chin, hair style and breasts, including the accentuation or exaggeration of certain anatomical features relative to others (doll lips, eyes, eyebrows, and eye features) and de-emphasis of certain anatomical features relative to others (doll nose and thin, small doll bodies); and

Third, the particularized doll clothes, doll shoes, and doll accessories that express aggressive, contemporary, youthful style.

In contrast, certain basic elements of Carter Bryant's works are not protectable. Specifically, copying of protected expression or ideas cannot be established by the mere

EXHIBIT _13_

PAGE _207_

Case 2:04-cv-09049-DOC-RNB   Document 4683-6   Filed 01/12/09   Page 57 of 113   Page ID
#:133892
Case 2:04-cv-09049-SGL-RNB   Document 4267   Filed 08/20/2008   Page 29 of 56

1   fact that both Carter Bryant's works and the allegedly infringing designs bear a

2   resemblance or similarity to human form and human physiology; have hair, heads, two

3   eyes, eyebrows, lips, nose, chin, mouth, and other features that track human anatomy and

4   physiology; wear or have human clothes, shoes, and accessories; depict a certain age,

5   race, ethnicity, or have an "urban" appearance; possess common or standard anatomical

6   features relative to others or depict common or standard treatment of fashion doll  subject

7   matter.  Nevertheless, particular compilations or combinations of these otherwise non-

8   protectable elements in the works which express a particular style or convey a distinct

9   look or attitude, are protectable.

10

11           You should consider only the elements I have just listed for purposes of the

12   extrinsic test.  Focusing on the protectable elements of the works by Carter Bryant as

13   compared to those elements in the allegedly infringing Bratz-related works, you must

14   determine whether Mattel has proven by the preponderance of the evidence that the works

15   are substantially similar.  If you so find, you must next consider the intrinsic test.  If you

16   do not so find, you must find for the defendants.

17

18

19           The intrinsic test looks at the overall similarity of ideas and expression in the

20   works from the perspective of an ordinary observer.  You should ask yourself whether the

21   ordinary, reasonable audience, in this case girls between the ages of 7 and 12, would

22   determine or recognize the defendants' products as reflecting the total concept and feel, or

23   as a "picturization," of the Bratz-related works that you have found Carter Bryant created

24   alone or jointly with others while employed by Mattel.

25

26           Mattel does not need to establish that the works it alleges are infringing are

27   identical or virtually identical to the works it owns, nor that the allegedly infringing

28



EXHIBIT 13

PAGE 208

1  works do not contain any non-infringing material.  However, Mattel does need to

2  establish that, focusing on the protectable elements of Carter Bryant's designs which I

3  have identified under the extrinsic test, and the overall look and feel of the works under

4  the intrinsic test, there are substantial similarities between the copyright-protected works

5  and the allegedly infringing works.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 13

PAGE 209

**JURY INSTRUCTION NO. 27**

The degree of similarity required to support a finding of substantial similarity is affected by the degree of access MGA, Isaac Larian and MGA Hong Kong had to Carter Bryant's works. The greater the level of access, the lower the showing of similarity required to support a finding of substantial similarity. However, the burden of proving substantial similarity by a preponderance of the evidence always remains with Mattel.

31

EXHIBIT _13_

PAGE _210_

Case 2:04-cv-09049-DOC-RNB   Document 4683-6   Filed 01/12/09   Page 60 of 113   Page ID
#:133895
Case 2:04-cv-09049-SGL-RNB   Document 4267   Filed 08/20/2008   Page 32 of 56

1

## JURY INSTRUCTION NO. 28

2

Copyright law protects distinctive characters.  Defendants' works infringe

3

Mattel's copyrights if they copy recognizable and distinctive traits, attributes, and

4

elements of the personalities of the characters portrayed in Carter Bryant's works.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

32

EXHIBIT _13_

PAGE _211_

## JURY INSTRUCTION NO. 29

If you find that defendants had access to the copyrighted works and substantial similarity between the copyrighted works and allegedly infringing works, you must find that defendants infringed Mattel's copyrights. Defendants contend that certain Bratz-related works were created independently, that is, that defendants did not actually copy or prepare derivative works from Carter Bryant's works when they created these Bratz-related works, notwithstanding their admitted access to these works. A claim of independent creation applies where a defendant can prove that he or she created the allegedly infringing work without copying or adapting or preparing derivative works from the original to which he or she had access.

Defendants bear the burden of proof on the issue of independent creation.

If you find that Mattel has shown the elements of infringement and defendants have not established independent creation by a preponderance of the evidence, then you must find for Mattel on its claim of copyright infringement.

33

EXHIBIT _13_

PAGE _212_

**JURY INSTRUCTION NO. 30**

A two-dimensional work, such as a drawing, can be infringed by a three-dimensional work, such as a doll. A doll, which consists of different materials or includes aspects that are not visible in a copyrighted drawing, nevertheless will infringe the drawing when the works are substantially similar in their appearance under the extrinsic and intrinsic tests. A three-dimensional work is not an independent creation merely because it includes or is a result of artistic or non-artistic work not included in the copyrighted work. Rather, the question is whether the three-dimensional work is substantially similar to the two-dimensional work as a whole using the extrinsic/intrinsic test described above.

EXHIBIT 13
PAGE 213

**JURY INSTRUCTION NO. 31**

A copyright can be infringed by intermediate or preparatory works, including works prepared in the product development or marketing stage, that are substantially similar to a copyrighted work, regardless of whether the end product of the copying also infringes the copyright.

35

EXHIBIT 13
PAGE 214

Case 2:04-cv-09049-DOC-RNB   Document 4683-6   Filed 01/12/09   Page 64 of 113   Page ID
#:133899
Case 2:04-cv-09049-SGL-RNB   Document 4267   Filed 08/20/2008   Page 36 of 56

**JURY INSTRUCTION NO. 32**

  Mattel has presented evidence concerning certain copyright infringement lawsuits brought by MGA in Hong Kong pursuant to Hong Kong law.

  The Court has excluded, and you may not consider, any reference to any legal arguments or legal conclusions associated with those lawsuits.

  You may, however, consider any factual statements or factual representations that MGA made in those lawsuits.

  It is for you to decide how much weight, if any, to give to those factual statements or factual representations.

36

EXHIBIT _13_

PAGE _215_

## JURY INSTRUCTION NO. 33

If you find that MGA infringed Mattel's copyright in the Bratz works, you may consider Mattel's claim that Isaac Larian vicariously infringed that copyright. Mattel has the burden of proving each of the following by a preponderance of the evidence:

    1.    Isaac Larian profited directly from the infringing activity of MGA;

    2.    Isaac Larian had the right and ability to supervise/control the infringing activity of MGA; and

    3.    Isaac Larian failed to exercise that right and ability.

If you find that Mattel proved each of these elements, your verdict should be for Mattel if you also find that MGA infringed Mattel's copyright. If, on the other hand, Mattel has failed to prove any of these elements, your verdict should be for Isaac Larian on Mattel's claim for copyright infringement, unless you find that Isaac Larian is liable for contributory infringement under the instruction that follows.

37



EXHIBIT _13_

PAGE _216_

## JURY INSTRUCTION NO. 34

A defendant may be liable for copyright infringement engaged in by another if he/it knew or had reason to know of the infringing activity and intentionally materially contributes to that infringing activity.

If you find that MGA infringed Mattel's copyright in Bratz works, but that MGA Hong Kong and/or Isaac Larian did not directly or vicariously engage in acts of infringement, you should proceed to consider Mattel's claim that MGA Hong Kong and Isaac Larian contributorily infringed that copyright. To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

1.    Isaac Larian and/or MGA Hong Kong knew or had reason to know of the infringing activity of MGA; and

2.    Isaac Larian and/or MGA Hong Kong intentionally materially contributed to MGA's infringing activity.

If you find that MGA infringed Mattel's copyright and you also find that Mattel has proved both of these elements, your verdict should be for Mattel. If, on the other hand, Mattel has failed to prove either or both of these elements as against MGA Hong Kong and/or Isaac Larian, and also failed to prove direct or vicarious infringement by MGA Hong Kong and/or Isaac Larian, your verdict should be for those defendants.

38

EXHIBIT ___17___

PAGE ___217___

Case 2:04-cv-09049-DOC-RNB    Document 4683-6    Filed 01/12/09    Page 67 of 113    Page ID
#:133902
Case 2:04-cv-09049-SGL-RNB    Document 4267    Filed 08/20/2008    Page 39 of 56

### JURY INSTRUCTION NO. 35

Mattel claims that defendants fraudulently concealed the facts underlying Mattel's claims of intentional interference with contract and conversion. Defendants deny these allegations.

To prove fraudulent concealment, Mattel must show the following by a preponderance of the evidence

(1)  the defendants took affirmative steps to conceal the facts that could have led Mattel to discover that Carter Bryant created Bratz-related works while employed by Mattel or that Carter Bryant entered into a contract with and worked with MGA while he was still employed by Mattel; and

(2)  Mattel was not aware of such facts that either did or would have, with diligence, led Mattel to discover that Carter Bryant created Bratz works while employed by Mattel or that Carter Bryant entered into a contract with and worked with MGA while he was still employed by Mattel.

If you so find by the preponderance of the evidence, you should find for Mattel on its allegations of fraudulent concealment. If not, you should find for defendants on the allegations of fraudulent concealment.

EXHIBIT 13

PAGE 218

## JURY INSTRUCTION NO. 36

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

EXHIBIT 13

PAGE D19

# JURY INSTRUCTION NO. 37

In Phase A, you determined that Mattel had proved its claim for intentional interference with contractual relations against the defendants MGA and Isaac Larian. You must now decide how much money, if any, should be awarded as damages.

The amount of damages must include an award for each item of harm that was caused by MGA's and Isaac Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel must prove the amount of damages. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)   Compensatory and general damages, including disgorgement of profits earned by MGA and Isaac Larian as a result of their wrongful conduct;

(2)   Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's claim arose;

(3)   Punitive damages.

EXHIBIT __13__

PAGE __220__

## JURY INSTRUCTION NO. 38

In Phase A, you determined that Mattel had proved its claims against the defendants MGA and Isaac Larian for aiding and abetting Carter Bryant's breach of fiduciary duty and breach of the duty of loyalty. You must now decide how much money, if any, should be awarded as damages.

The amount of damages must include an award for each item of harm that was caused by MGA's and Isaac Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel must prove the amount of its damages. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)  Compensatory and general damages, including disgorgement of profits earned by MGA and Isaac Larian as a result of their wrongful conduct;

(2)  Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's claim arose;

(3)  Punitive damages.

42

EXHIBIT ___13___

PAGE ___221___

Case 2:04-cv-09049-DOC-RNB    Document 4683-6    Filed 01/12/09    Page 71 of 113    Page ID
#:133906
Case 2:04-cv-09049-SGL-RNB    Document 4267    Filed 08/20/2008    Page 43 of 56

### JURY INSTRUCTION NO. 39

Mattel is entitled to obtain disgorgement of profits as an element of its damages for the wrongful acts of aiding and abetting breach of fiduciary duty and duty of loyalty that you have found. Accordingly, if you find that MGA and/or Isaac Larian obtained profits or advantages because of these specific wrongful acts, those profits and advantages should be awarded to Mattel.

43

EXHIBIT _____13_____

PAGE _____222_____

**JURY INSTRUCTION NO. 40**

In Phase A of this trial, you found that Mattel had proved its claims for conversion of tangible property against MGA, Isaac Larian and MGA Hong Kong. You must now decide how much money will reasonably compensate Mattel for the harm. This compensation is called damages.

Mattel must prove the amount of its damages. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)  The fair market value of the tangible Bratz works created by Carter Bryant while he was employed by Mattel; and

(2)  Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's property was converted;

(3)  Punitive damages.

Fair market value is measured as of the time the tangible item was converted. Fair market value is the highest price that a willing buyer would have paid to a willing seller assuming that there is no pressure on either one to buy or sell, and that the buyer and seller know all the uses and purposes for which the tangible items are reasonably capable of being used.

EXHIBIT 13
PAGE 223

Case 2:04-cv-09049-DOC-RNB   Document 4683-6   Filed 01/12/09   Page 73 of 113   Page ID
#:133908
Case 2:04-cv-09049-SGL-RNB     Document 4267     Filed 08/20/2008     Page 45 of 56

1

**JURY INSTRUCTION NO. 41**

2

If you find for the plaintiff, Mattel, on any of its copyright infringement claims

3

against the defendants, you must determine Mattel's damages.  Mattel is entitled to

4

recover any profits of the defendants attributable to the infringement.  Mattel must prove

5

damages by a preponderance of the evidence.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

45

EXHIBIT _____ 13 _____

PAGE _____ 224 _____

## JURY INSTRUCTION NO. 42

You may make an award of the defendants' profits only if you find that the plaintiff showed a causal relationship between the infringement and the defendants' gross revenue.

The defendants' profit is determined by deducting expenses from the defendants' gross revenue.

The defendants' gross revenue is all of the defendants' receipts from sale of a product containing or using the copyrighted work or associated with the infringement. Mattel has the burden of proving the defendants' gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendants' gross revenue. The defendants have the burden of proving the defendants' expenses by a preponderance of the evidence.

Indirect profits are the defendants' profits with a less direct connection or link to the infringement. A plaintiff such as Mattel may be entitled to indirect profits in addition to direct profits. To recover indirect profits, Mattel must establish a causal relationship between the infringement and the profits generated indirectly from such infringement.

In other words, Mattel must offer some evidence that the infringement at least partially caused the profits that the infringer generated as a result of the infringement.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The defendants have the

46

EXHIBIT ____13____

PAGE ____225____

1  burden of proving the portion of the profit, if any, attributable to factors other than

2  infringing the copyrighted work.

3       Defendants are not required to prove with precision the percentage of its profits

4  attributable to factors other than infringement, so long as the apportionment is reasonable

5

6  and just. However, in determining what portion of the defendants' profits are attributable

7  to copyright infringement, the benefit of the doubt should be given to Mattel and not

8  defendants.

9       If the copyrighted portions are so intermingled with the rest of the infringing

10 work that they cannot well be distinguished from it, the entire profits realized by the

11 defendants are to be given to the plaintiff. At the same time, defendants do not need to

12 demonstrate that the profits not attributable to infringement are completely free of

13 

14 infringing material.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

47

EXHIBIT ____13____

PAGE ____226____

### JURY INSTRUCTION NO. 43

Mattel also claims that defendants engaged in willful infringement of Mattel's copyrights.  An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

1.   The defendants engaged in acts that infringed the copyright; and

2.   The defendants knew that those acts infringed the copyright.

A defendant cannot deduct overhead expenses, operating expenses, or taxes from his/its gross revenue when the copyright infringement is willful.

48

EXHIBIT 13

PAGE 227

## JURY INSTRUCTION NO. 44

Mattel seeks damages under more than one legal claim or theory and as to three defendants.  In awarding damages as to any particular claim or defendant, you should not consider or discount your award based on amounts, if any, that you award as to any other claim or defendant.  That is, you should award the full amount of damages you find appropriate, if any, as to each separate claim against each defendant.  The Court will ensure, once your verdict has been reached, that the plaintiff does not obtain duplicative damages.

49

EXHIBIT 13
PAGE 228

## JURY INSTRUCTION NO. 45

If you decide that Isaac Larian's, MGA's or MGA Hong Kong's conduct caused Mattel harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Isaac Larian only if Mattel proves by clear and convincing evidence that Isaac Larian engaged in that conduct with malice, oppression, or fraud.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

You may award punitive damages against MGA or MGA Hong Kong only if Mattel proves that MGA or MGA Hong Kong acted with malice, oppression, or fraud. To do this, Mattel must prove one of the following by clear and convincing evidence:

1.   That the malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of MGA or MGA Hong Kong, who acted on behalf of MGA or MGA Hong Kong; or

2.   That an officer, a director, or a managing agent of MGA or MGA Hong Kong had advance knowledge of the unfitness of another officer, director, or managing

EXHIBIT ___13___

PAGE ___229___

1  agent of MGA or MGA Hong Kong and employed that person with a knowing disregard

2  of the rights or safety of others; or

3      3.   That the conduct constituting malice, oppression, or fraud was authorized by

4  one or more officers, directors, or managing agents of MGA or MGA Hong Kong; or

5
6      4.   That one or more officers, directors, or managing agents of MGA or MGA

7  Hong Kong knew of the conduct constituting malice, oppression, or fraud and adopted or

8  approved that conduct after it had occurred.

9      "Malice" means that a defendant acted with intent to cause injury or that a

10  defendant's conduct was despicable and was done with a willful and knowing disregard of

11  the rights or safety of another.  A defendant acts with knowing disregard when the

12
13  defendant is aware of the probable dangerous consequences of his or its conduct and

14  deliberately fails to avoid those consequences.

15      "Oppression" means that a defendant's conduct was despicable and subjected

16  Mattel to cruel and unjust hardship in knowing disregard of its rights.

17      "Despicable conduct" is conduct that is so vile, base, or contemptible that it

18
19  would be looked down on and despised by reasonable people.

20      "Fraud" means that a defendant intentionally misrepresented or concealed a

21  material fact and did so intending to harm Mattel.

22      An employee is a "managing agent" if he or she exercises substantial independent

23  authority and judgment in his or her corporate decision making such that his or her

24  decisions ultimately determine corporate policy.

25
26      There is no fixed formula for determining the amount of punitive damages, and

27  you are not required to award any punitive damages.  If you decide to award punitive

28

51

EXHIBIT ___B___

PAGE ___220___

damages, you should consider all of the following separately for each defendant in determining the amount:

     a.    How reprehensible was that defendant's conduct?

     b.    Is there a reasonable relationship between the amount of punitive damages and Mattel's harm or between the amount of punitive damages and potential harm to Mattel that the defendant knew was likely to occur because of his or its conduct? Punitive damages may not be used to punish a defendant for the impact of its alleged misconduct on persons other than Mattel.

     c.    In view of that defendant's financial condition, what amount is necessary to punish him or it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because a defendant has substantial financial resources. Any award you impose may not exceed that defendant's ability to pay.

EXHIBIT 13
PAGE 231

1

## JURY INSTRUCTION NO. 46

2          You have heard testimony regarding the prospect of an injunction being issued in

3    this case.  It is for the Court to decide what, if any, injunctive relief to order.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _____13_____

PAGE _____232_____

### JURY INSTRUCTION NO. 47

When you begin your deliberations, your foreperson will preside over the deliberations and will speak for you here in Court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

54

EXHIBIT 13

PAGE 233

# JURY INSTRUCTION NO. 48

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

EXHIBIT __13__

PAGE __234__

### JURY INSTRUCTION NO. 49

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

EXHIBIT _13_

PAGE __235__

# EXHIBIT 14

1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  JASON D. RUSSELL (Bar No. 169219)
   (jrussell@skadden.com)
3  LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
   (laguiar@skadden.com)
4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
5  Los Angeles, CA  90071
   Tel.: (213) 687-5000/Fax: (213) 687-5600
6
7
8  Attorneys for MGA Parties

9            UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11                 EASTERN DIVISION

12 CARTER BRYANT, an individual,      ) CASE  NO.  CV  04-9049  SGL
                                      ) (RNBx)
13                 Plaintiff,         )
                                      ) Consolidated with Case No. 04-9059
14        v.                          ) and Case No. 05-2727
                                      )
15 MATTEL,   INC.,   a   Delaware     ) Honorable Stephen G. Larson
   corporation,                       )
16                                    ) MGA PARTIES' SUPPLEMENTAL
                   Defendant.         ) [PROPOSED] PHASE 1-B JURY
17                                    ) INSTRUCTIONS
                                      )
18 AND CONSOLIDATED ACTIONS.          )
                                      )
19
20
21
22
23
24
25
26
27
28

MGA Parties' Supplemental [Proposed] Jury Instructions – Case No. CV 04-9049 SGL (RNBx)

EXHIBIT __14__

PAGE __234__

# DAMAGES

The MGA Parties withdraw Proposed Jury Instruction No. 430: Causation: Substantial Factor, and propose the following two additional instructions:

| No. | Description | Authority | Page |
|---|---|---|---|
| MGA Special Inst. __ | DISGORGEMENT OF PROFITS | SEC v. First Pac. Bancorp, 142 F.3d 1186, 1192 (9th Cir. 2001); SEC v. Platforms Wireless Int'l Corp., 2008 U.S. Dist. LEXIS 27503, at **38-39 (S.D. Cal. Apr. 3, 2008).  See also Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A., 2007 U.S. Dist. LEXIS 91947, at **62 (N.D. Tex. Dec. 14, 2007); Commodity Futures Trading Comm'n v. American Bd. Of Trade, 803 F.2d 1242, 1251 (2d Cir. 1986); Allstate Ins. Co v. Receivable Fin. Co. LLC, 501 F.3d 398, 413 (5th Cir. 2007); FTC v. Magui Publishers, Inc., 1991 U.S. Dist. LEXIS 20452, at **48-50 (C.D. Cal. Mar. 28, 1991); Oshana v. Coca-Cola Co., 2005 U.S. Dist. LEXIS 14184, at **34-35 (N.D. Ill. July 13, 2005).  Cf. Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 371 (S.D.N.Y. 2007). | 1 |
| CACI 3947 | PUNITIVE DAMAGES – INDIVIDUAL AND ENTITY DEFENDANTS – TRIAL NOT BIFURCATED | CACI No. 3947. | 3 |

EXHIBIT 14

PAGE 237

i

MGA Parties' Supplemental [Proposed] Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

Case 2:04-cv-09049-DOC-RNB   Document 4683-6   Filed 01/12/09   Page 88 of 113   Page ID
#:133923
Case 2:04-cv-09049-SGL-RNB      Document 4242      Filed 08/11/2008      Page 3 of 7

1

## MGA'S SPECIAL JURY INSTRUCTION NO. ____
## DISGORGEMENT OF PROFITS

Mattel is entitled to obtain disgorgement of profits that MGA and Isaac Larian obtained by engaging in the wrongful acts of aiding and abetting breach of fiduciary duty and duty of loyalty that you have found. Accordingly, if you find that MGA and/or Mr. Larian obtained profits or advantages because of these wrongful acts, those profits and advantages should be awarded to Mattel.

**Authority**: <u>SEC v. First Pac. Bancorp</u>, 142 F.3d 1186, 1192 (9th Cir. 2001) (finding that a disgorgement award requires a "reasonable approximation of profits causally connected to the violation"); <u>SEC v. Platforms Wireless Int'l Corp.</u>, 2008 U.S. Dist. LEXIS 27503, at **38-39 (S.D. Cal. Apr. 3, 2008) (vacating a disgorgement order where the "causal connection between the profits and [the defendant's] violation [was] too speculative to support disgorgement"). <u>See also</u> <u>Super Future Equities, Inc. v. Wells Fargo Bank Minn., N.A.</u>, 2007 U.S. Dist. LEXIS 91947, at *62 (N.D. Tex. Dec. 14, 2007) (finding that plaintiff was "not entitled to disgorgement" because plaintiff had "not offered a reasonable approximation of what the Defendants [had] earned as a result of their alleged breach of fiduciary duties"); <u>Commodity Futures Trading Comm'n v. American Bd. Of Trade</u>, 803 F.2d 1242, 1251 (2d Cir. 1986) ("Normally, where the defendant has received benefits from both lawful and unlawful activities, the party seeking disgorgement must distinguish between the legally and illegally derived profits"); <u>Allstate Ins. Co v. Receivable Fin. Co. LLC</u>, 501 F.3d 398, 413 (5th Cir. 2007) (reversing a disgorgement award and explaining that "the party seeking disgorgement must distinguish between that which has been legally and illegally obtained"; also explaining that in a "private action, the party seeking monetary compensation [through disgorgement] may have a greater burden to prove its claim to the amount requested" than in an action brought by a public entity like the SEC); <u>FTC v. Magui Publishers, Inc.</u>, 1991 U.S. Dist. LEXIS 20452, at **48-50 (C.D. Cal. Mar.

1

EXHIBIT __14__

PAGE __238__

1  28, 1991) (explaining in an FTC action that the threshold requirements for an award of

2  disgorgement require a showing that "the defendant profited from violations of the FTC

3  Act," "that the profits are causally related to the violations," and "that the disgorgement

4  figure reasonably approximates the amount of unjust enrichment"); Oshana v. Coca-Cola

5  Co., 2005 U.S. Dist. LEXIS 14184, *34-35 (N.D. Ill. July 13, 2005) ("Any disgorgement

6  award must be traceable to her individual injury. Accordingly, Oshana's disgorgement

7  remedy is limited to only those ill-gotten gains that Coca-Cola obtained from her in

8  connection with its alleged illegal conduct").  Cf. Fraternity Fund Ltd. v. Beacon Hill

9  Asset Mgmt., LLC, 479 F. Supp. 2d 349, 371 (S.D.N.Y. 2007) ("In the aiding and abetting

10 context, a plaintiff must allege that the defendant's substantial assistance in the primary

11 violation proximately caused the harm on which the primary liability is predicated.

12 Plaintiffs must allege more than but-for causation.  They must allege also that their injury

13 was 'a direct or reasonably foreseeable result of the conduct.'").

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2

MGA Parties' Supplemental [Proposed] Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

EXHIBIT __14__

PAGE __239__

### CACI NO. 3947

## PUNITIVE DAMAGES – INDIVIDUAL AND ENTITY DEFENDANTS – TRIAL NOT BIFURCATED

If you decide that MGA's or Mr. Larian's conduct caused Mattel harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Mr. Larian only if Mattel proves by clear and convincing evidence that Mr. Larian engaged in that conduct with malice, oppression, or fraud.

You may award punitive damages against MGA only if Mattel proves that MGA acted with malice, oppression, or fraud. To do this, Mattel must prove one of the following by clear and convincing evidence:

1. That the malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of MGA, who acted on behalf of MGA; or

2. That an officer, a director, or a managing agent of MGA had advance knowledge of the unfitness of another officer, director, or managing agent of MGA and employed that person with a knowing disregard of the rights or safety of others; or

3. That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of MGA; or

4. That one or more officers, directors, or managing agents of MGA knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it had occurred.

3

EXHIBIT ___14___

PAGE ___240___

Case 2:04-cv-09049-DOC-RNB   Document 4683-6   Filed 01/12/09   Page 91 of 113   Page ID
#:133926
Case 2:04-cv-09049-SGL-RNB   Document 4242   Filed 08/11/2008   Page 6 of 7

1

2  "Malice" means that a defendant acted with intent to cause injury or that a defendant's

3  conduct was despicable and was done with a willful and knowing disregard of the rights or

4  safety of another.  A defendant acts with knowing disregard when the defendant is aware

5  of the probable dangerous consequences of his, her, or its conduct and deliberately fails to

6  avoid those consequences.

7

8  "Oppression" means that a defendant's conduct was despicable and subjected Mattel to

9  cruel and unjust hardship in knowing disregard of its rights.

10

11  "Despicable conduct " is conduct that is so vile, base, or contemptible that it would be

12  looked down on and despised by reasonable people.

13

14  "Fraud" means that a defendant intentionally misrepresented or concealed a material fact

15  and did so intending to harm Mattel.

16

17  An employee is a "managing agent" if he or she exercises substantial independent

18  authority and judgment in his or her corporate decision making such that his or her

19  decisions ultimately determine corporate policy.

20

21  There is no fixed formula for determining the amount of punitive damages, and you are not

22  required to award any punitive damages.  If you decide to award punitive damages, you

23  should consider all of the following separately for each defendant in determining the

24  amount:

25

26      (a) How reprehensible was that defendant's conduct? In deciding how reprehensible a

27          defendant's conduct was, you may consider, among other factors:

28

---

4

MGA Parties' Supplemental [Proposed] Jury Instructions– Case No. CV 04-9049 SGL (RNBx)

EXHIBIT 14

PAGE 241

1. Whether the conduct caused physical harm;

2. Whether the defendant disregarded the health or safety of others;

3. Whether Mattel was financially weak or vulnerable and the defendant knew Mattel was financially weak or vulnerable and took advantage of it;

4. Whether the defendant's conduct involved a pattern or practice; and

5. Whether the defendant acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and Mattel's harm or between the amount of punitive damages and potential harm to Mattel that the defendant knew was likely to occur because of its conduct? Punitive damages may not be used to punish a defendant for the impact of its alleged misconduct on persons other than Mattel.

(c) In view of the defendant's financial condition, what amount is necessary to punish it and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because a defendant has substantial financial resources. Any award you impose may not exceed that defendant's ability to pay.

**Authority:** CACI No. 3947.

DATED: August 11, 2008          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____/s/ Thomas J. Nolan_____
Thomas J. Nolan
Attorneys for the MGA Parties

5

EXHIBIT ___19___

PAGE ___242___

# EXHIBIT 15

September 14, 2000

Dear David,

Enclosed is a copy of my original offer of employment with Mattel. To the best of my knowledge, other than an agreement of confidentiality, there are no other expressed contracts that have been signed. I am unable to look into this too much further with our Human Resources director without risking suspicion, but I am quite certain that this should suffice.

Thank you very much.

Sincerely,

Carter H. Bryant

310-252-6099or
310-538-3615 home

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

DR 00030

EXHIBIT _____ 15

PAGE _____ 244

EX 2201-0002



**Mattel, Inc.**

331 Continental Boulevard
El Segundo, California 90245-5012
Phone: (310) 252-2000
Telex:   188155 or 188170

December 11, 1998

Mr. Carter Bryant
1-A Sycamore Dr.
Kimberling, MO 65686

Dear Carter,
Congratulations and welcome to Mattel!

We are pleased to confirm your acceptance of our offer for the position of Project Designer, and to outline the various benefits that are available to you as a member of the Mattel team.

**Compensation**

*Your annual base salary will be* ▮▮▮▮ *payable on a bi-weekly basis.*

**Relocation**

You will receive a relocation payment of ▮▮▮▮ less appropriate federal and state taxes, payable to you no later than 30 days following commencement of your employment.

If you choose to voluntarily terminate your employment with Mattel within one year of your date of hire, you will be required to repay this amount in full.

**Benefits**

The following is a brief outline of benefits in which you will be eligible to participate as of your date of hire. Specific details and plan limitations are provided in Summary Plan Descriptions or Plan Documents, and are subject to periodic modification and revision.

You and your qualified dependents, if applicable, will be eligible for the following coverage:

- Medical
- Dental
- Vision
- Prescription

- Life Insurance – 1-1/2 x base salary
- Accidental Death & Dismemberment – 1-1/2 x base salary
- Business Travel Coverage – $1,000,000
- Short & Long-Term Disability

You will be enrolled in the Mattel Personal Investment Plan (PIP), which is a 401(k) savings/retirement plan. The plan offers both Company Automatic and Matching contribution provisions as outlined below:

**DR 00031**

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

EXHIBIT _____ 15

PAGE _____ 245

EX 2201-0003

- **Company Automatic Contributions**
  The Company will make automatic contributions to your account ranging from 3% to 8% of your salary, based on age.

- **Company Matching Provision**
  The Company will match up to the first 6% of pay you contribute to your PIP account on a dollar-for-dollar basis up to 2% of your annual salary and on a fifty-cents-on-the-dollar basis for up to the next 4% of your salary.

Of course, this offer is contingent upon satisfactory verification of all information as to previous employers and academic institutions attended, eligibility to work in the United States, and the signing of a Confidential Information and Inventions Agreement. Further, you understand that this letter does not imply employment for a specific term and thus your employment is at will; either you or the Company can terminate it at any time, with or without cause. This letter acknowledges there are no oral or written side agreements or representations concerning the term or conditions of employment. Additional details of your employment relationship are contained in our employment application.

Enclosed is a packet containing various information and forms required to activate your employment. Please complete these forms and bring them with you on your first day of employment. Also, you will need to bring with you certain documents as set forth in the enclosed directions. Upon your arrival in the second floor lobby, please advise the security officer that you are a new employee. You will be escorted to an orientation session beginning at 8:00 a.m., which will last most of the morning.

Carter, we are all looking forward to you joining the Mattel team on 1/4/99. As a new member of the Mattel family, please feel free to call me at (310) 252-2535 if you have any questions.

Sincerely,

Lynne Robinson
VP, Human Resources

2

** TOTAL PAGE.84 **

**DR 00032**

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

EXHIBIT 15
PAGE 246

EX 2201-0004

To: David Rosenbaum

From: Carter H. Bryant

Total Pages: 4

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

DR 00029



EXHIBIT ___ 15

PAGE ___ 243

EX 2201-0001

# EXHIBIT 16

ATTORNEYS' EYES ONLY



Corporate Office:

16730 Schoenborn Street
North Hills, CA  91343
Phone: 818/894-2525
Fax:    818/894-1267

| | | | |
|---|---|---|---|
| **Fax To:** | Patty Glaser<br>Christensen, Miller et al. | **Date:** July 3, 2001 | |
| **Fax #:** | (310) 557-9815 | | |
| **From:** | Victoria O'Connor | **# of Pages:** 7<br>(Including cover) | |
| **Re:** | CARTER BRYANT | | |

---

### CONFIDENTIAL - ATTORNEY/CLIENT PRIVILEGE

Isaac asked that I fax you our contract with Carter Bryant (see attached).

CG 0018.1

p. 1     8188948094     mga entertainment     Jul 03 01 11:06a

EXHIBIT 16
247

EX 13383-0001

ATTORNEYS' EYES ONLY

*Final*

**MGA ENTERTAINMENT**
**16730 Schoenborn Street**
**North Hills, California  91343**

Mr. Carter Bryant
1319 West 160th Street
Gardena, California 90247

Dear Mr. Bryant:

Set forth below are the terms and conditions upon which we (hereinafter "MGA") are retaining you ("Bryant") to consult and advise MGA in the design and development of certain products which MGA wishes to manufacture and distribute (hereinafter our agreement is sometimes referred to as the "MGA Consulting Agreement"). The parties' agreement is as follows:

1.     **Retention as Consultant/Services:** MGA retains Bryant to provide his services to consult with MGA and advise MGA on the design and development by MGA of a line of dolls presently known as "Bratz" (the "MGA Products"). Bryant will render his services at such locations and times as may be reasonably be designated by MGA. It is understood and agreed that Bryant shall provide his services on a "top priority" basis as his services pertain to other clients of Bryant. In addition, Bryant and all other Bryant staff will take direction from and be under the supervision of such person(s) as may be reasonably designated by MGA from time to time upon notice to Bryant. It is understood and agreed that, subject to MGA's prior written consent, Bryant may retain third party contractors ("Contractors") to assist at his direction in the services to be rendered hereunder. Such third parties shall be compensated in a manner ("Contractor Fees") to be determined between Bryant and such third parties and shall be subject to the terms of this Agreement, including without limitation, paragraphs 3, 4, and 7, below. Bryant shall enter into agreements with all Contractors on a form approved by MGA as conforming to the terms of this Agreement and confirming MGA's ownership of all results and proceeds of the services provided by any such Contractors; such form is attached a Exhibit "A" to this Agreement, and is incorporated herein by reference.

2.     **Term/Exclusivity:** The Term shall commence on the date of this Agreement. MGA shall have the right to terminate this Agreement on not less than forty-five (45) days prior written notice to Bryant. During the Term of this Agreement, Bryant will not provide consulting services to any person, firm or corporation engaged in the design, development and manufacture and sale of dolls or similar products.

3.     **Ownership:**

(a)     All results and proceeds of the services provided by Bryant hereunder and any Contractor, including without limitation, any inventions, and any documentation related thereto, and any other material, whether written or oral (collectively, the "Bryant Work Product") shall be considered "work made for hire" and shall be owned exclusively, throughout the world, and in perpetuity by MGA (including all copyrights and patents therein and thereto, and all renewals and extensions thereof). MGA shall have the sole and exclusive right to use the Bryant Work Product, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify the Bryant Work Product and the results of Bryant's services hereunder and the Contractors' services, and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised. MGA shall have the sole and exclusive right to copyright or patent the Bryant Work Product in MGA's name, as the owner and author thereof, and to secure any and all registrations, renewals and extensions of such copyrights and

{00006862.DOC/2 / 10/04/2000  03:05 PM}

1.

CG 0019

EXHIBIT   14

PAGE   248

EX 13383-0002

ATTORNEYS' EYES ONLY

patents in MGA's name or Bryant's name or the Contractors' names, as permitted pursuant to applicable statute. Bryant expressly waives, and shall cause all Contractors to waive, any "moral rights" (as such term is commonly understood around the world) in and to the Bryant Work Product prepared by Bryant and/or the Contractors pursuant to the Agreement. Bryant shall, upon request, execute, acknowledge and deliver, and shall cause each Contractor to execute, acknowledge and deliver, to MGA such additional documents as MGA may deem necessary to evidence and effectuate MGA's rights hereunder, and Bryant hereby grants to MGA the right as Bryant's attorney-in-fact to execute, acknowledge, deliver and record in the U.S. Copyright Office, the U.S. Patent Office or elsewhere any and all such documents. If, whether by statutory amendment to the U.S. Copyright and/or Patent Laws, or a decision by a court of competent jurisdiction interpreting such laws, MGA shall not be deemed to be the author or owner of the Bryant Work Product, this Agreement and each agreement with a Contractor shall, nevertheless, constitute an irrevocable assignment by Bryant and each Contractor, as applicable, to MGA of any and all of Bryant's and each Contractors' right, title and interest, including copyright and patent (and all renewals and extensions thereof), in and to the Bryant Work Product. Bryant acknowledges and agrees, and shall cause each Contractor to acknowledge and agree, that he and they have no interest in and shall not, by virtue of this Agreement or any services rendered by Bryant and/or each Contractor to MGA acquire any interest in the MGA Products and that MGA may exploit the MGA Products and any derivative works thereto, without obligation to Bryant and/or the Contractors, except as provided in Paragraph 4, below.

(b)    Without limiting the generality of the provisions of Paragraph 3(a), above, with respect only to any inventions, and any documentation related thereto, and any other material, whether written or oral, created by or for Bryant relating to the MGA Products prior to the commencement of the term of this Agreement, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Bryant, Bryant hereby irrevocably grants, conveys, transfers, sets over and assigns to MGA in perpetuity all of Bryant's right, title and interest, in an to the such material, including, without limiting the generality of the foregoing, all rights under copyright and patent (and all renewals and extensions thereof) including the right to produce and authorize the production of any and all derivative works, and all proprietary rights of any kind therein, now known or hereafter created throughout the world. MGA shall have the sole and exclusive right to use such material, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify such materials and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised or refrain from doing so as MGA may determine. Bryant expressly waives any "moral rights" (as such term is commonly understood around the world) in and to such materials.

4.    **Compensation/Costs:**

(a)    For the first six (6) months of the Term of this Agreement, MGA shall pay Bryant for his services at the rate of five thousand five hundred dollars ($5,500.00) per month; for the next three (3) months of the Term, MGA shall pay Bryant for his services at the rate of five thousand dollars ($5,000.00) per month. All sums paid to Bryant as monthly fees shall be deemed to be non-refundable, fully-recoupable advances against any royalties that may be payable to Bryant pursuant to paragraph 4(b), below.

(b)    MGA shall pay to Bryant a royalty of three percent (3%) of the Net Sales Receipts from the sales by MGA of any of the MGA Products developed by MGA on which Bryant provided his consulting services. As used herein, the term "Net Sales Receipts" means all monies actually received by MGA from its customers on sales of MGA Products less (i) any and all excise, sales, value added or comparable or similar taxes; (ii) freight and similar third party handling charges paid or payable by MGA; and (iii) returns, discounts, allowances or credits (inclusive of co-op and trade discounts and allowances). MGA shall account to Bryant on a calendar quarterly basis within thirty (30) days after the end of each quarter. All statements of royalties rendered by MGA hereunder shall be conclusive, final,

CG 0020

EXHIBIT ___11___

PAGE ___249___

EX 13383-0003

ATTORNEYS' EYES ONLY

and binding on Bryant, shall constitute an account stated, and shall not be subject to any question for any reason whatsoever unless specific written objection, stating the basis thereof, is given by Bryant to MGA within two (2) years after the date rendered. No action, suit, or proceeding of any nature in respect of any royalty statement or other accounting rendered by MGA hereunder may be maintained against MGA unless such action, suit, or proceeding is commenced against MGA in a court of competent jurisdiction within one (1) year after the date of MGA's notice rejecting such objection. Bryant or his representatives shall have the right, not more than once per year and not more than once per statement of royalties, to examine MGA's books and records relating to the sales of such MGA Products, such examination to be conducted during MGA's normal business hours and upon reasonable prior written notice.

(c)     All costs and expenses incurred by Bryant in connection with the performance of his obligations hereunder shall be borne solely by Bryant, except as otherwise agreed and incurred with MGA's prior written consent. In the event MGA requests Bryant to travel to the Orient on MGA's behalf in connection with his services hereunder, MGA will reimburse Bryant for all travel expenses incurred in connection therewith, such as parking, airfare (economy class), auto rental, meals and hotel accommodations. Reimbursement shall be at the actual cost of such item without any mark-up.

(d)     Bryant shall submit invoices to MGA for his monthly fees (and reimbursable expenses, if and as agreed) on a monthly basis. Each invoice shall provide sufficient detail to support the monthly fee charges and hours rendered (and shall include satisfactory copies of bills and/or payments for reimbursable expenses, as applicable). MGA shall pay each such invoice within fifteen (15) days after receipt of such invoice, provided, however, MGA reserves the right to request further explanation or documentation before paying any invoice submitted by Bryant.

(e)     MGA shall use its reasonable business efforts, consistent with its business judgment, to market, promote, distribute, sell and/or exploit the MGA Products and to collect on all monies due from sales. MGA has not made and does not hereby make any representation or warranty with respect to the quantity of sales (if any) of MGA Products embodying the Property which MGA may sell. Bryant recognizes and acknowledges that the sale of MGA Products is speculative and agrees that MGA's judgment and the judgment of its subsidiaries and affiliated companies with regard to the sales of any of its MGA Products and with regard to the marketing, promotion, advertising and exploitation of the MGA Products shall be binding and conclusive upon Bryant. Bryant warrants and agrees that Bryant will not make any claim, nor shall any liability be imposed upon MGA based upon any claim, that more sales could have been made or that better business could have been done than what was actually made or done by MGA or any of MGA's subsidiaries or its affiliated companies, or that better prices or terms could have been obtained.

5.     Warranties and Indemnity:  Bryant represents, warrants and agrees that:

(a)     he has the right and is free to execute this Agreement, to grant the rights granted by him to MGA hereunder, and to perform each and every term and provision hereof;

(b)     neither the execution and delivery of this Agreement nor the performance by Bryant of any of his obligations hereunder will constitute a violation, breach or default under any agreement, arrangement or understanding, or any other restriction of any kind, to which Bryant is a party or by which Bryant is bound;

(c)     the Bryant Work Product shall be free of all liens and encumbrances and there will be no claims, demands or actions pending or threatened with respect thereto; and that the Bryant Work Product is original and no part thereof infringes or shall infringe upon any common law or statutory rights or intellectual property rights of any third party including, without limitation, contractual rights,

3

CG 0021

EX 13383-0004

ATTORNEYS' EYES ONLY

patents, copyrights, mask-work rights, trade secrets, rights of privacy and other intellectual property rights;

(d)     he shall comply with all applicable laws and regulations in force during the Term of this Agreement with respect to the services to be rendered hereunder; and

(e)     he shall indemnify and hold MGA harmless from and against any and all claims, losses, costs, judgments, settlements, damages and expenses (including reasonable counsel fees) arising from any breach by him of any of the warranties, representations and agreements made by him hereunder.

6.     **Default/Termination:**

(a)     In the event either Party fails to perform any of its material obligations hereunder, or breaches any representation, warranty or agreement contained herein, the other Party may terminate this Agreement on thirty (30) days prior written notice, provided the breaching Party shall not have remedied such failure within such thirty (30) day period.

(b)     Upon the termination of this Agreement Bryant shall turn over to MGA all materials relating to the MGA Products furnished by MGA to Bryant or shall give MGA satisfactory evidence of their destruction.

7.     **Confidentiality:**

(a)     Bryant shall keep in confidence and not disclose to any third party, without the written permission of MGA, the Confidential Information made known to him under this Agreement. As used herein, the term "Confidential Information" means information relating to MGA's products (whether current or projected), product titles, customers, employees, tools and techniques, designs, drawings, schematics and other documentation relating thereto and other confidential and proprietary business information of MGA and which is expressly labeled or identified to Bryant in writing as "confidential" or which, under the circumstances of such disclosure, Bryant knows, or reasonably should know, are treated by MGA as confidential. This requirement of confidentiality shall not apply to any information that is (i) in the public domain through no wrongful act of Bryant; (ii) rightfully received by the Bryant from a third party who is not bound by a restriction of nondisclosure; (iii) already in the Bryant's possession without restriction as to disclosure; or (iv) required to be disclosed by operation of law or by order of a court or administrative body of competent jurisdiction, (provided that prior to such disclosure, MGA shall first receive notice thereof from Bryant and have the opportunity to contest such order or requirement of disclosure or seek appropriate protective order).

(b)     Bryant agrees and acknowledges that all Confidential Information disclosed to him shall be and remain the sole property of MGA. Nothing contained in this Agreement shall be construed as granting to Bryant any right, title or interest of any kind, by license or otherwise, to the Confidential Information disclosed by MGA, the intellectual property therein or any part or copy thereof. Bryant further acknowledges and agrees that nothing contained herein shall be construed as granting Bryant any right to develop, manufacture, produce and/or distribute any product(s) derived from or which otherwise uses any of the Confidential Information disclosed by MGA, or authorize or in any way assist others to do so. Bryant may not make, sell, license or distribute copies of the Confidential Information disclosed by MGA and may not sublicense, transfer or assign in any manner whatsoever this Agreement or any of Bryant's rights or obligations under this Agreement.

(c)     Bryant acknowledges that his failure to perform any of the terms or conditions of this Agreement shall result in immediate and irreparable damage to MGA. Bryant also acknowledges that there may be no adequate remedy at law for such failures and that in the event thereof MGA shall be

{00006662.DOC/2 / 10/04/2000  03:05 PM}

4

EXHIBIT 6

PAGE 251

EX 13383-0005

mga entertainment 18189484094     Jul 03 01 11:08a     p.5

ATTORNEYS' EYES ONLY

entitled to equitable relief in the nature of injunction and to all other available relief, at law and/or in equity.

8.    **Notices:**  All notices, statements and/or payments to be given to the parties hereunder shall be addressed to the parties at the addresses set forth on the first page hereof or at such other address as the parties shall designate in writing from time to time.  All notices shall be in writing and shall either be served by personal delivery, mail, or facsimile (if confirmed by mail or personal delivery of the hard copy), all charges prepaid.  Except as otherwise provided herein, such notices shall be deemed given when personally delivered, all charges prepaid, or on the date five (5) days following the date of mailing, except that notices of change of address shall be effective only after the actual receipt thereof.  Copies of all notices to MGA shall be sent to Fischbach, Perlstein & Lieberman LLP, 1875 Century Park East, Suite 850, Los Angeles, California 90067, Attention: David S. Rosenbaum, Esq.  Copies of all notices to Bryant shall be sent to Carter Bryant 1319 West 160th Street, Gardena, California 90247.

9.    **Independent Contractor/No Partnership/Third Party Beneficiary:** Bryant's relationship with MGA is that of an independent contractor.  Bryant does not have, and will not represent that he has, any power, right or authority to bind MGA, or to assume or create any obligation or responsibility, express or implied, on behalf of MGA in MGA's name.  Nothing stated in the Agreement shall be construed as constituting a partnership or as creating the relationships of employer/employee or principal/agent between the parties.  In all matters relating to the Agreement, Bryant shall not act as MGA's employee within the meaning or application of any federal or state unemployment insurance laws, or any other laws or regulations which may impute any obligations or liabilities to MGA by reason of an employment relationship.  Bryant will be solely responsible for all taxes, including without limitation, employee and employer, and that he carries all of his own insurance.  Neither of the parties hereto shall hold itself out contrary to the terms of this provision by advertising or otherwise.  This Agreement shall not be construed to be for the benefit of any third party.

10.   **Services Rendered Deemed Special, etc.:**  Bryant acknowledges that the services to be rendered by him hereunder are of a special, unique, extraordinary and intellectual character which gives them peculiar value, the loss of which cannot be adequately compensated for in an action at law and that a breach of any term, condition or covenant hereof will cause irreparable harm and injury to MGA and in addition to any other available relief MGA will be entitled to seek injunctive relief.

11.   **General Provisions:**

        (a)    This Agreement may not be assigned by either Party hereto either voluntarily or by operation of law.  Any such assignment shall not relieve such Party of its obligations hereunder.

        (b)    The titles of the paragraphs of this Agreement are for convenience only and shall not in any way affect the interpretation of any paragraph of this Agreement or the Agreement itself.

        (c)    A waiver by either Party of the terms or conditions of this Agreement in any instance shall not be deemed or construed to be a waiver of such terms or conditions for the future or of any subsequent breach thereof.  All remedies, rights, undertakings, obligations and agreements contained herein shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either Party.

        (d)    Neither Party hereto shall be liable to the other for any incidental, consequential, special or punitive damages of any nature or kind, arising out of in connection with a breach by such Party of this Agreement, whether such liability is asserted on the basis of contract, tort (including negligence or strict liability), or otherwise, even if such Party has been warned of the possibility of any such loss or damage.

CG 0023

EXHIBIT Y

PAGE  252

EX 13383-0006

ATTORNEYS' EYES ONLY

(e)    This Agreement shall be construed and interpreted pursuant to the laws of the State of California, applicable to agreements made and to be performed entirely therein, and the parties hereto submit and consent to the jurisdiction of the courts of the State of California, including Federal Courts located therein, should Federal jurisdiction requirements exist, in any action brought to enforce (or otherwise relating to) this contract.

(f)    This Agreement constitutes the entire Agreement between the parties hereto and supersedes all prior agreements, whether written or oral, with respect to the subject matter herein contained. No provision of this Agreement shall be deemed waived, amended or modified by either Party unless such waiver, amendment or modification be in writing and signed by a duly authorized officer of the Party against whom the waiver, amendment or modification is to be enforced.

(g)    Nothing contained in this Agreement shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision of this Agreement and any material statute, law, ordinance, order or regulation contrary to which the parties hereto have no legal right to contract, the latter shall prevail, but in such event any provision of this Agreement so affected shall be curtailed and limited only to the extent necessary to bring it within the legal requirements.

Kindly indicate your agreement with the foregoing by signing in the space provided below.

Very truly yours,

MGA ENTERTAINMENT

By: _____

Its: _____

AGREED TO AND ACCEPTED:

_____
CARTER BRYANT

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
Social Security Number

(00008662.DOC/2 / 10/04/2000  03:05 PM)

6

CG 0024

EXHIBIT 16

PAGE 253

EX 13383-0007

# EXHIBIT 17

| | |
|---|---|
| **From:** | Isaac Larian |
| **To:** | Victoria O'Connor; Dave Malacrida; Aileen Storer; Paula Treantafelles; Margo Chazen; Dianna Eisenberg |
| **CC:** | Abe Mirza; Julie Mote; Beth Cahill |
| **BCC:** | |
| **Sent Date:** | 2002-03-12 12:17:42:953 |
| **Received Date:** | 2002-03-12 12:17:42:953 |
| **Subject:** | FW: Hi |
| **Attachments:** | |

Victoria, Dave: Who gave David Dees info and what he does for us to this Yahoo lady and why?

This Yahoo lady is giving us too much legal grief even though she does not mean it.

Please DO NOT send any information or reply to her e mails unless you have cleared it with me.

Julie/Beth/ Abe:                              There must be no mention about Mattel or any of their properties, Carter , any MGA Bratz arts ,etc.


-----Original Message-----
From: Paula Treantafelles
Sent: Monday, March 11, 2002 5:55 PM
To: Isaac Larian; Abe Mirza; Beth Cahill
Subject: FW: Hi

-----Original Message-----
From: David Dees [mailto:davodees@hotmail.com]
Sent: Saturday, March 09, 2002 12:37 PM
To: bryant598@cs.com
Subject: Hi

Hi Carter,

I thought you would enjoy this letter i wrote to the Bratzworld club on Yahoo. It starts off with the club leader introducing it. Dees.

Hello!

I'm posting a wonderful letter from David Dees- the guy who does the awesome art we love to look at on the Bratz website and on posters and wherever Bratz girls are. I just want to post it to its own message so I can save that as a text file in the David Dees folder in files so you can read it anytime you like. We've



EXHIBIT
4507

CONFIDENTIAL - ATTORNEYS' EYES ONLY          17                    MGA 3801819

EXHIBIT _____
        254
                                                                    4507 - 1
PAGE _____

EX 4507-0001

always liked it that MGA communicates with the Bratz fans and this takes it even further into VERY COOL land.

Make sure you also check out his portfolio for all the other stuff he does- you've probably seen lots of it- he's extremely talented!

Okay enough from me- I'll post his letter right after this
:)
snowflakebebe

>Hello my name is Christian (I'm a girl!) and I do a fan list for the Bratz
>dolls and I was wondering if you could post and maybe share some of your
>other Bratz art that we may not have seen (we have lots of it in the files
>section) - or talk about your experience working on the illustrations of
>the
>Bratz. I am in contact with MGA and they have endorsed this "fan club" so
>if
>I need to get permission from them for anything I can ask- but I hope
>you'll
>share some art if you can. We have the link to your portfolio up in our
>files and bookmark section. Come visit sometime :) We love your art. Its
>a
>big part of the fun of the Bratz :)

Hi Christian,

Thanks so much for your letter and interest in the world of Bratz. I talked to the art director at MGA , and she said that of course i am not the one to be releasing any Bratz art ahead of time, so i will check and see if i can post some of that older airbrush art for you. She also said MGA is in the process of building a new website that is going to be packed to the hilt with cool art of all the new fashions, and believe me, they are wild and colorful as i just finished about thirty new pieces of art that will amaze you.

I work freelance as an illustrator and have my own studio at home where i paint at my leisure, but if a job comes in you can be sure that it is usually being rushed. My immediate live-in family consists of two furry felines. A crosseyed siamese mix named Buddy, and a female red striped tabby named Goose.

I am swamped right now with colorizing lots of the new wacky funk styles, and there are new hats and boas and tops that I got a kick out of. However I can't take credit for creating the Bratz Dolls, or even the first Bratz illustrations, for that honor would go to a fellow named Carter Bryant*, who is truly a genius of fashion and the soul and only person who first drew those great pouty lips and that extreme look that only our heros share. I have never met him personally, but on the phone and emails he is certainly the nicest sincere fellow ever, and very optimistic and complementary about my art in his approach. It felt good early on when he would tell me i was doing a good job bringing them to life. Can you tell I am a fan of his as

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3801820

EXHIBIT 17

PAGE 255

4507-2

EX 4507-0002

well?

Let me tell you about MGA. It is located in North Hills, California, at the west end of the beautiful San Fernando Valley, where i lived for many years, but now i live in Salt Lake, where the Olympics just were. Anyway, when you walk into the big, high ceiling lobby there is a real pretty receptionist with reddish brown hair (and that sometimes wears leopard prints), and if you look to the left you will see the stairs wind up to the second floor where all the cool stuff happens. And as you start up them there is, to the right, a little rock garden with plants, and it always has some of the new toys, like robot dogs, insectobots, or baby dolls sitting in there as if they are playing. As you get to the top of the stairs, that is if you can get permission to come up to this top secret place, the first thing you notice to your right is two big doors opening into a spacious office with a fancy glass desk, usually covered with toys, and sitting there working busily away is a great fellow named Isaac, who is the owner, president, and creator of most of the MGA toys. He always seems to leave his doors open and when i stop by to pick up a job i glance in and wave if he happens to look up.

The first big area past there has lots of low partitioned cubicles with all the business people who keep the finances working, but then the next rows are the package and advertising designers, which is sort of the front line of the creativity, and as you continue up the steps there is a silly sign hanging that says Design Farm, and that is the beginning of the art studios. It always freaks me out to go in there because it is a busy beehive of toy ideas and designers flying around like a tornado. It is a big open room with black walls and bright lights shining down spotlighting the work areas, and colorful toys and wacky new ideas and drawings lining the walls. The middle area has a long table work table covered with new toy packages being assembled for the first time, with most of the mocked up packages being created by cutting and pasting by hand, and only after the idea is shown through many approval lines is it mass produced. Sometimes a whole new line of Bratz accessories will be displayed, and i am amazed at the details of the clothes at such a small scale. When i pop in I am usually asked for my opinion about the new toys, such as if i think they will be popular or how to promote them, and i am always happy to put in my two cents. There are about a dozen or so design areas with computers that surround the work table, and at each station is someone with more talent than you can imagine all corraled into one group. That is why they come up with such great stuff. There is also a window on one wall and whenever i look out of it, it is stunning to look down into the warehouse which quite a large expanse of big boxes and lifts carrying them around. I guess that is the tour.

About working on the illustrations, well they are all colored on the computer. The best thing i can say is that i finally figured out a great way to paint their hair that flows great, and looks sort of real. But that is in the last group of art i just finished and it will available to you soon i suppose. If you have any suggestions about any of the art I always welcome your viewpoint.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _____ 17

PAGE _____ 256

MGA 3801821

4807-3

EX 4507-0003

Anyway that is about it. I will send in anything that i am allowed to release to you guys, or check my website for new art that i am putting up all the time. Feel free to download any art that you like off my site. See ya. david.

(* You can do a google.com search under Carter Bryant and you can see some things he has done.

-snowflakebebe)

WOW what a cool letter... i have to say again that everyone so far involved with the Bratz company is so cool, and responds personally and actually takes some time.... as for Carter Bryant i searched and searched and came up with nothing. so if any one find his website, can you post the URL.. ;) many thanks...

Pink Glitter
>>Vayne<<
xxx

_____

Get your FREE download of MSN Explorer at http://explorer.msn.com/intl.asp.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _____ 17

PAGE _____ 257

MGA 3801822

4507 - 4

EX 4507-0004

# EXHIBIT 18

| From: | Isaac Larian |
|-------|--------------|
| To: | Dee Dee Valencia |
| CC: | |
| BCC: | |
| Sent Date: | 2003-02-06 20:05:14:687 |
| Received Date: | 2003-02-06 20:05:14:687 |
| Subject: | RE: Bratz |
| Attachments: | |

Good ideas.

Lets share with the team after NY and execute.

-----Original Message-----
From: Dee Dee Valencia
Sent: Thursday, February 06, 2003 11:59 AM
To: Isaac Larian
Subject: RE: Bratz

Okay ... I am jotting down my first thought .... I'll think more. Had experience in past lives in collectible market....

Limited Edition Collectible # of pcs low low low - build for the future

SELLING - DISTRIBUTION
-Go for 2 partners; 1 TV (QVC) and other Hallmark sold in Collectibles Section (next would be ornaments with Hallmark)
-Offer the first 1,000 to our fan club members - 1st come first serve - build frenzy then you can advertise that the remaining # is going to be on QVC and in Hallmark only for a limited time.
-This strategy would also help, 'literally presell' the program to QVC & Hallmark. Built in demand, advertised, slam dunk!
-After market sales - will boom - ebay.... keep track of it .. powerful ...

FEATURES:
-Signed by....???? - I know we want to keep Carter under wraps ...

-Custom / Original art of girls as the certificate of authenticity - framed for room and showing off to friends

-The box is JUST AS IMPORTANT as THE PRODUCT in the collectible market. So packaging needs to be authentic and out of this world.

Product Ideas:
-Porcelain real hair, real fabrics as accents - high high detail
-Tie to well known hip fashion designer that designed clothing for extra equity
-Set of 4 dolls 6"-8"high (size smaller than mass market dolls - these are display only pcs)
-They need to be sold in a showcase cool environment - funky - this is part of the display in their room
-Something exclusive for the girl herself ... exclusive fashion bag is my first thought.

I'll think more.... we should absolutely utilize the Bratz Fan Club more. They 'expect' to be the first ones to know what is up and coming for Bratz. This is a built in base for exclusive or allocated or presold sell of goods.

DD

(2 pgs)
Exhibit no. 4942
Date: 3/26/08
Larian I. P. Pyburn

EXHIBIT 18

PAGE 258

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3801558
EX 4942-0001

-----Original Message-----
**From:** Isaac Larian
**Sent:** Wednesday, February 05, 2003 8:13 PM
**To:** Summer Wells; Paula Treantafelles; Dee Dee Valencia; Shawn Brower; Randi Kagan
**Subject:** Bratz

What do you think about the idea of developing a high end ,really cute, older, collectable plush to sell only in Specialty and gift? For dolls, may be we do a plastic head?

Let me know what do you think?

Isaac Larian
CEO
MGA ENTERTAINMENT
*A Consumer Entertainment Product Company*
16730 Schoenborn Street
North Hills, California, 91343-6122
Tel: 818-894-3150
Fax:818-894-1267
llarian@mgae.com
www.MGAE.COM
Meet the girls with Passion for Fashion
www.Bratzpack.com

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___16___

PAGE ___259___

MGA 3801559

EX 4942-0002