1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8                 UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

| | |
|---|---|
| 11 CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12          Plaintiff, | Consolidated with |
| 13      vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 14 MATTEL, INC., a Delaware corporation, | Honorable Stephen G. Larson |
| 15          Defendant. | OPPOSITION OF MATTEL, INC. TO |
| 16 | MGA PARTIES' MOTION FOR REMITTITUR |
| 17 AND CONSOLIDATED ACTIONS | |
| 18 | Hearing Date:   February 11, 2009 |
| 19 | Time:           10:00 a.m.<br>Place:          Courtroom 1 |
| 20 | **Phase 1C** |

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.      MGA WAIVED ITS DUPLICATIVE DAMAGES ARGUMENT ................. 2

II.     MGA'S DUPLICATIVE DAMAGES ASSERTIONS LACKS MERIT ........ 5

        A.      MGA Is Required To Satisfy A Heavy Evidentiary Burden ................ 5

        B.      MGA Cannot Prove That Double Recovery Is The Only Possible
                Explanation Of The Jury's Damages Verdicts ....................................... 7

                1.      The Jury Instructions Do Not Establish Duplication ................... 7

                2.      Mattel's Damages Theory Does Not Establish Duplication ...... 11

                3.      The Claims Are Not Based On Identical Conduct .................... 14

                4.      Mattel's Copyright Damages Are Not Duplicative .................... 18

                5.      The Awards Against Larian And MGA Are Not
                        Duplicative ................................................................................ 20

                6.      The MGA HK Award Is Not Duplicative ................................. 21

III.    DAMAGES AGAINST LARIAN ARE NOT TIME BARRED ................... 22

IV.     CONVERSION DAMAGES SHOULD BE ENFORCED ............................. 24

CONCLUSION ........................................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

## Cases

Acosta v. Glenfed Development Corp.,
128 Cal. App. 4th 1278 (Cal. Ct. App. 2005)......................................................23

American Pipe & Constr. Co. v. Utah,
414 U.S. 538 (1974)..............................................................................................23

Bains LLC v. Arco Prods. Co.,
405 F.3d 764 (9th Cir. 2005)..........................................................................5, 8, 9

Beech Aircraft Corp. v. U.S.,
51 F.3d 834 (9th Cir. 1995)..................................................................................22

Bowers v. Baystate Technologies, Inc.,
320 F.3d 1317 (Fed. Cir. 2003)............................................................................19

CRST Van Expedited, Inc. v Werner Enterprises, Inc.,
479 F.3d 1099 (9th Cir. 2007)..............................................................................16

Carroll v. Nakatani,
342 F.3d 934 (9th Cir. 2003)................................................................................22

Carter v. District of Columbia,
795 F.2d 116 (D.C. Cir. 1986)..........................................................10, 13, 14, 25

Caudle v. Bristow Optical Co., Inc.,
224 F.3d 1014 (9th Cir. 2000)................................................................................9

Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.,
79 F.3d 182 (1st Cir. 1996) ..............................................................................2, 4

Cohen v. Heavey,
261 Cal. App. 2d 766 (Cal. Ct. App. 1968).........................................................23

D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co.,
692 F.2d 1245 (9th Cir. 1982)........................................................................13, 25

Diduck v. Kaszycki & Sons Contractors,
974 F.2d 270 (2d Cir. 1992), overruled on other grounds, Gerosa v. Savasta &
Co., Inc., 329 F.3d 317, 321, 327 (2d Cir. 2003) ................................................23

Duk v. MGM Grand Hotel, Inc.,
320 F.3d 1052 (9th Cir. 2003)................................................................................5

Echevarria v. U.S. Steel Corp.,
392 F.2d 885 (7th Cir. 1968)................................................................................22

Gentile v. County of Suffolk,
926 F.2d 142 (2d Cir. 1991)........................................................................2, 6, 11

Indu Craft, Inc. v. Bank of Baroda,
   47 F.3d 490 (2d Cir. 1995) .................................................................. 3, 6, 9, 11

Johnson v. Consolidated Rail Corp.,
   797 F.2d 1440 (7th Cir. 1986) .................................................................. 12

Landrau-Romero v. Banco Popular De Puerto Rico,
   212 F.3d 607 (1st Cir. 2000) .................................................................. 24

Ledbetter v. Goodyear Tire & Rubber Co., Inc.,
   127 S. Ct. 2162 (2007) .................................................................. 23

Levine v. CMP Publications,
   753 F.2d 1341 (5th Cir. 1985) .................................................................. 12

Lieberman v. Dudley,
   1998 WL 740827 (D. Conn. 1998) .................................................................. 5

Lightner Mining Co. v. Lane,
   161 Cal. 689 (Cal. 1912) .................................................................. 23

Los Angeles Memorial Coliseum Com'n v. National Football League,
   791 F.2d 1356 (9th Cir. 1986) .................................................................. 12, 13

Los Angeles Police Protective League v. Gates,
   995 F.2d 1469 (9th Cir. 1993) .................................................................. 11

Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.,
   532 F.3d 1063 (10th Cir. 2008) .................................................................. 5, 7, 11, 12, 14

New York v. Hendrickson Bros., Inc.,
   840 F.2d 1065 (2d Cir. 1988) .................................................................. 23

Nintendo of Am., Inc., v. Dragon Pac. Int'l,
   40 F.3d 1007 (9th Cir. 1994) .................................................................. 18

Peake v. Chevron Shipping Co., Inc.,
   2004 WL 1781008 (N.D. Cal. 2004) .................................................................. 14

Riddell v. Riddell Washington Corp.,
   866 F.2d 1480 (D.C. Cir. 1989) .................................................................. 23

Schutzky Distributors, Inc. v. Kelly,
   643 F. Supp. 57 (N.D. Cal. 1986) .................................................................. 5

In re Scrap Metal Antitrust Litig.,
   527 F.3d 517 (6th Cir. 2008) .................................................................. 23

In re Sonus Networks, Inc., Shareholder Derivative,
   499 F.3d 47 (1st Cir. 2007) .................................................................. 15

Theme Promotions, Inc. v. News America Marketing FSI,
   546 F.3d 991 (9th Cir. 2008) .................................................................. 17, 18

OPPOSITION OF MATTEL, INC. TO MGA PARTIES' MOTION FOR REMITTITUR

United Phosphorus, Ltd. v. Midland Fumigant, Inc.,
    205 F.3d 1219 (10th Cir. 2000) .................................................. 6, 12, 14

United States v. Alston,
    974 F.2d 1206 (9th Cir. 1992) ................................................ 8

Vigilant Ins. v. Sunbeam Corp.,
    231 F.R.D. 582 (D. Ariz. 2005) .............................................. 22

Yeti By Molly Ltd. v. Deckers Outdoor Corp.,
    259 F.3d 1101 (9th Cir. 2001) .............................................. 2, 4

**Statutes and Rules**

42 U.S.C. § 1981 ............................................................................. 8

Fed. R. Evid. 606 .......................................................................... 4

Rule 59 ............................................................................... 5, 9, 11

Rule 59(e) ........................................................................... 22, 24

**Treatises**

C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2503,
    at 489 (1971) .................................................................... 10

C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2815,
    at 104-105 (1973) .............................................................. 13

## **Introduction**

After failing to object to or seek clarification of the jury's damages verdicts before the jury was discharged, and after opposing Mattel's efforts to recall the jury post-discharge to clarify the award, MGA now asks the Court to overturn the jury's damages verdicts.  Under controlling Ninth Circuit precedent, MGA waived any contention that the jury's damages awards were duplicative.  A party cannot lie in wait and even obstruct efforts to clarify a verdict, only to then claim the verdict must contain duplication when it is too late to prove for certain whether it does or does not.  MGA had every reason to fear that clarification by the jury would eliminate the basis for this motion -- that the jury, if questioned, would confirm its intent to award Mattel $100 million.  Indeed, as MGA did not dispute previously, MGA's counsel knew from their communications with the jurors that they intended to award Mattel $100 million.  MGA's deliberate choice not to seek clarity from the jury -- to enable it to make the speculative and factually groundless arguments it now makes to the Court -- was a waiver.

MGA also ignores its stringent burden of proof; its motion fails on the merits in light of that burden.  In the absence of clear evidence demonstrating that the jury could not have found -- that it was *impossible* for it to have found -- $100 million in separate, unduplicated damages across the different causes of action, the presumption in favor of enforcement of jury awards controls.  It was far from impossible for the jury to find $100 million in unduplicated damages here.  The jury could have apportioned a total, undivided award of $100 million across multiple causes of action.  Or it could have decided to award a different portion of MGA's Bratz profits for each of the different wrongs established by Mattel.  MGA does not even argue that the jury's awards, either individually or in total, are not supported by sufficient evidence.  MGA's conclusion that the verdicts must reflect duplication is speculative, and speculation about duplicative damages does not warrant a remittitur.  A verdict that is, when totaled, well within the range of evidence must be upheld.

**Argument**

**I.    MGA WAIVED ITS DUPLICATIVE DAMAGES ARGUMENT**

Under the Ninth Circuit's controlling decision in <u>Yeti By Molly Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101 (9th Cir. 2001), MGA waived its duplicative damages claim.  As in this case, the verdict form in <u>Yeti by Molly</u> "required the jury to assign a separate damages figure for each cause of action."  <u>Id.</u> at 1110.  The defendant challenged the jury's awards post-verdict, arguing the separate awards duplicated one another.  <u>Id.</u>  The Ninth Circuit held that the defendant "waived the argument that the jury double-counted by returning five damages figures (one for each cause of action) for each plaintiff.  ***By failing to raise this argument until after the jury was discharged, the district court had no chance to develop a record of how the jury apportioned damages***."  <u>Id.</u> (emphasis added).  "Without this record[,]" the court concluded, "we decline to speculate and allow the verdicts to stand."  <u>Id.</u>  <u>See also</u> <u>Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.</u>, 79 F.3d 182, 201 (1st Cir. 1996) (duplicative damages argument waived: "a defendant may not argue verdict inconsistency if he or she failed to object 'after the verdict was read and before the jury was discharged'" because "to decide otherwise would countenance 'agreeable acquiescence to perceivable error as a weapon of appellate advocacy'").

The reason for this waiver rule is clear:  the failure to raise the argument in a timely fashion deprives the opposing party of the opportunity to prove that damages were not duplicative, and deprives the Court of a complete evidentiary record.  Appropriate post-verdict polling of a jury, on the other hand, can resolve any ambiguities inherent in its verdicts and eliminate the need for judicial speculation.  In <u>Gentile v. County of Suffolk</u>, 926 F.2d 142 (2d Cir. 1991), for instance, the Second Circuit upheld the trial court's rejection of a duplicative damages claim, emphasizing "the jury's insistence, in response to the court's appropriate polling after the verdict, that the jury did intend to award a total of $150,000 to each plaintiff and that the damages awarded under state law and federal law were 'independent.'"  <u>Id.</u> at 153-54.

The court reached the same conclusion in <u>Indu Craft, Inc. v. Bank of Baroda</u>, 47 F.3d 490 (2d Cir. 1995), where the rejection of a duplicative damages argument was likewise supported by post-verdict polling showing the jury's intent to award the combined total of the amounts listed on the verdict form.  <u>Id.</u> at 497.

MGA did not raise its duplicative damages argument prior to the discharge of the jury.  It did not object to the discharge of the jury, nor ask for clarification of the verdicts before it was discharged.  In fact, after the issue of how the jury's verdicts were intended to be read arose, MGA steadfastly *opposed* Mattel's efforts to recall the jury to clarify the matter.  Any one of these steps would have eliminated any purported confusion as to the verdicts.  MGA chose, tactically, to take none of them, undoubtedly because it knew that doing so would show beyond doubt what MGA already knows: the jury awarded Mattel $100 million in non-duplicative damages.  MGA should not be heard to demand that the awards be overturned in the absence of the well-developed record that would have been created by the timely objection the law requires.

The propriety of a finding of waiver is also confirmed by the contemporaneous statements that were made by the jurors.  Far from confirming MGA's current account that duplication is the only possible explanation for the verdicts, the available statements uniformly show that the jury intended to award ***the entire*** $100 million to Mattel.  That is what the jurors said to Mattel.[1]  Mattel previously advised the Court that, likewise, "MGA's counsel, and Larian himself, . . . were unequivocally told by the jurors that their award to Mattel totaled more than $100 million"[2] -- something MGA has never disputed.  Juror No. 7 even sent an email to the Court revealing her "shock" that MGA was asserting to the press that damages should be reduced, confirming that

---

[1]   <u>See</u> Declaration of Jon D. Corey In Support Of Mattel's Opposition to MGA's Motion For Remittitur.

[2]   Mattel's Submission Regarding Email From Juror No. 7 and Request To Recall The Jury, dated August 29, 2008 (Dkt No. 4288), at 1, Declaration of Michael T. Zeller In Support Of Mattel's Opposition to MGA's Motion For Remittitur ("Zeller Dec."), Exh. 1.

"the Jury intended that Mattel RECEIVE the full award amount, when added up."[3]  The jury's foreperson publicly said the same: "'The jury today sought to award Mattel about one-quarter of the $405 million MGA had said was its profit from the Bratz dolls,' jury foreman Christopher Blazer said in an interview after the verdict had been read."[4]  Had MGA requested clarification pre-discharge, as the law mandates, or had it not resisted Mattel's attempt to have the jury clarify its intent, as it did, there would be even more evidence of non-duplication.  The Ninth Circuit requires defendants who believe damages may be duplicative to seek, not resist, clarification.  Yeti by Molly, 259 F.3d at 1109-10.  That rule was intended to cover cases exactly like this.[5]

    MGA failed to raise any concerns about duplication once the jury returned its verdicts, pre-discharge.  It chose to fight Mattel's effort to seek clarification.  These were tactical choices taken to avoid clarity and to enable MGA to make the factually groundless arguments it now pursues.  Under Ninth Circuit law, MGA waived its claim that damages are duplicative.  Yeti by Molly, 259 F.3d at 1109-10; see also Coastal Fuels, 79 F.3d at 201.

---

[3]  See Trial Tr. 8356:10-8361:16.
[4]  E. Pettersson and T. Richards, Mattel Wins $100 Million in Damages Over Bratz Dolls, Bloomberg, August 26, 2008, available at http://www.bloomberg.com/apps/news?pid=newsarchive&sid=aHyiExtzSll8.
[5]  The Court previously rejected Mattel's argument that the jurors' email and post-verdict statements are admissible to clarify the verdicts.  See Order Denying Mattel's Request To Recall The Jury, dated September 3, 2008 (Dkt No. 4295), Zeller Dec. Exh. 2; Mattel's Submission Regarding Email From Juror No. 7 and Request To Recall The Jury, August 29, 2008 (Dkt No. 4288), Zeller Dec. Exh. 1.  But nothing in that ruling requires the Court to close its eyes to the fact that these statements both demonstrate the falsity of MGA's factual assertions and illustrate precisely why the Ninth Circuit's waiver rule exists.  Cf. Fed. R. Evid. 606, Ad. Comm. Notes (2006 amend.) (noting that nothing in Rule 606 precludes polling jury to clarify verdict).

1    **II.    MGA'S DUPLICATIVE DAMAGES ASSERTIONS LACKS MERIT**

2         **A.    MGA Is Required To Satisfy A Heavy Evidentiary Burden**

3         MGA fails to discuss, much less meet, its burden of persuasion to overcome the

4    presumption in favor of enforcement of jury awards.  The burden is stringent: jury

5    awards are to be enforced unless a defendant can prove that the jury could not *possibly*

6    have found separate, non-duplicative damages for each cause of action and defendant.

7    MGA has not made and cannot make such a showing.

8         MGA concedes it has filed what is "ostensibly a motion for new trial," seeking to

9    remit the alleged "excessiveness" of the jury's damages awards.  (Mtn. at 4.)  The

10   presumption applicable to such motions strongly favors enforcement of jury verdicts,

11   including damages awards, and is not easily overcome.  See Duk v. MGM Grand Hotel,

12   Inc., 320 F.3d 1052, 1058-59 (9th Cir. 2003).  "Once judges are given the discretion to

13   discard jury verdicts as they see fit, the viability of the jury as an institution capable of

14   rendering truly binding decisions is seriously imperiled."  Schutzky Distributors, Inc. v.

15   Kelly, 643 F. Supp. 57, 59-60 (N.D. Cal. 1986).  "The Seventh Amendment forbids

16   courts from converting jury verdicts into merely advisory opinions.  It is this danger of

17   usurping jury prerogatives that has led courts consistently to hold that every attempt to

18   harmonize or clarify a jury's verdicts must be made before a new trial can be granted."

19   Id.  A district court faced with a new trial motion is "obligated to ask 'not whether the

20   verdict necessarily makes sense under any reading, but whether it can be read in light of

21   the evidence to make sense.'"  Bains LLC v. Arco Prods. Co., 405 F.3d 764, 771 (9th

22   Cir. 2005).

23        Thus, it is not enough for MGA to raise doubt as to a damages award; in order to

24   prevail on a duplicative damages claim under Rule 59, MGA must affirmatively

25   establish that it is, quite literally, "impossible" that the jury verdicts reflect separate,

26   unduplicated damages.  Lieberman v. Dudley, 1998 WL 740827, at *3 (D. Conn. 1998)

27   (court may overturn the verdicts only if it would have been "***impossible*** for the jury to

28   have awarded separate and distinct damages," and should not do so where it is "not

00505.07209/2757156.5

-5-

impossible" that the jury found unduplicated damages) (emphasis added); see Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc., 532 F.3d 1063, 1079 (10th Cir. 2008) ("[E]ven where the chance is slight that the jury arrived at the award without erroneously duplicating, if the verdict is 'within range of the evidence,' it will be upheld.") (citing United Phosphorus Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1228 (10th Cir. 2000)); Indu Craft, 47 F.3d at 497 (addressing duplicative damages claim:  "A court's role is to reconcile and preserve whenever possible a seemingly inconsistent jury verdict.").

In Gentile, for example, the Second Circuit considered and rejected defendants' claim -- virtually identical to MGA's assertions here -- that "the fact that the jury divided their award for each plaintiff into two equal parts - $75,000 on the state law cause of action and $75,000 on the federal cause of action - indicates that the jury impermissibly compensated each plaintiff twice for identical injuries."  926 F.2d at 153-54.  Instead, the court found it was "equally conceivable that the jury found that each plaintiff suffered $150,000 worth of discrete, unduplicated injuries as a result of the County's violations of law, and merely split the total amount equally between the state and federal causes of action in announcing their award to the court."  Id. at 154.

Similarly, in Indu Craft, the Second Circuit **reversed** a ruling vacating jury awards for breach of contract and prima facie tort as duplicative.  "While it is possible that the jury impermissibly compensated Indu Craft twice for the same injury," the court wrote, "it is equally rational to believe that the jury found that Indu Craft suffered $3.25 million worth of injuries and merely allocated that amount between the two different causes of action, one for breach of contract and one for tort."  47 F.3d at 497.  "Because of our duty to reconcile a jury's verdict wherever possible, we think this award easily reconcilable and see no impermissible double recovery in the jury contract and tort awards."  Id.

Where it is "not impossible" that the jury apportioned total damages across different claims, or awarded different damages for different injuries, a motion to reduce

1   the award must be denied.  An award that is "within the range of evidence," as this

2   award indisputably is, will not be overturned even if "the chance is slight that the jury

3   arrived at the award without erroneously duplicating."  <u>Morrison Knudsen</u>, 532 F.3d at

4   1079.  MGA has not established improper duplication under the applicable standards.

5       **B.   <u>MGA Cannot Prove That Double Recovery Is The Only Possible</u>**

6           **<u>Explanation Of The Jury's Damages Verdicts</u>**

7       MGA bases its duplicative damages motion on six arguments: (1) the Court's

8   jury instructions, which indicated the Court would correct any duplication in the award;

9   (2) Mattel's singular damages theory (disgorgement) across claims; (3) "Mattel's

10  evidence and argument establish[ing] that the three state law claims arose from

11  identical allegedly wrongful conduct" (Mtn. at 1); (4) the overlap between the copyright

12  and state tort injuries and damages; (5) the inclusion of Larian's distribution in the

13  assessment of MGA's total profits for which Mattel sought disgorgement; and (6) the

14  copyright damages awarded against MGA HK which are allegedly duplicative because

15  MGA HK has no profits separate and apart from MGA.  None of these contentions,

16  separately or together, establishes that the jury could not have apportioned the total

17  damages among the five claims and three defendants listed on the verdict form or

18  calculated separately the damages for each claim and defendant.

19      **1.   <u>The Jury Instructions Do Not Establish Duplication</u>**

20      MGA erroneously assumes that since the Court instructed the jury that the

21  "'Court will ensure, once your verdict has been reached, that the plaintiff does not

22  obtain duplicative damages'" (Mtn. at 5 (quoting Tr. 8108: 11-19; Phase 1B Inst. 44)),

23  the jury *ipso facto* awarded duplicative damages for the same injury.  Merely because

24  the Court informed the jury that it would correct any duplicative awards ***if there were***

25  ***any*** does not establish that the jury ***in fact*** made such a duplicative award.  The Court's

26  instruction recognized the *possibility* of duplication; it does not follow that duplication

27  then happened.  Under MGA's reasoning, any time a court gives such an instruction it

28  is then required to remit the jury's awards on the assumption that they are duplicative.

1   This ignores the applicable legal standards.  Proof of duplication is required; an

2   assumption of duplication does not suffice.[6]

3          That the jury was also instructed to consider each claim separately -- "Mattel

4   seeks damages under more than one legal claim or theory, and as to three defendants . .

5   . . [Y]ou should award the full amount of damages you find appropriate, if any, as to

6   each separate claim against each defendant" (Mtn. at 5 (quoting Tr. 8108:11-19; Phase

7   1B Inst. 44)) -- does not negate the possibility that it apportioned non-duplicative

8   damages across multiple claims.  A similar instruction was given in Bains v. Arco

9   Prods. Co., 405 F.3d 764 (9th Cir. 2005).  There, the jury was told in Instruction No.

10  20, entitled "Double Damages," that "[p]laintiff seeks recovery against the defendant

11  on more than one theory of liability.  *If you find that the plaintiff is entitled to recover*

12  *on more than one claim, you should indicate the total damages awarded for each*

13  *claim.  Your separate award of damages could result in a duplication of damages.*

14  *You should not concern yourself with this.  The Court will correct for any duplication*

15  *of damages you might award* . . . ." 2002 WL 34403289, at *7-8 (emphasis added).  On

16  appeal, the defendant argued that the jury's award of one dollar in damages for a

17  violation of 42 U.S.C. § 1981 showed the economic harm needed to support that claim

18  did not exist, and required remittitur of the punitive damages awarded for the violation

19  of that statute.  The Ninth Circuit rejected the argument, emphasizing the duty to

20  determine "'not whether the verdict necessarily makes sense under any reading, but

21  whether it can be read in light of the evidence to make sense."  405 F.3d at 771.  The

22  court held -- notwithstanding the instruction -- that the jury might well have concluded

23  that the defendant's termination of its contract without notice cost plaintiff "around

24  $50,000 in damages," which constituted the required economic harm, "and that putting

25  _____

26      [6]   MGA cites United States v. Alston, 974 F.2d 1206, 1210 (9th Cir. 1992).  (Mtn. at 6.)
     That case merely restates the general principle that "[a] jury is presumed to follow the
27   instructions given by the court."  The presumption confirms that the jury understood that the
     Court would correct any duplication, not that duplication exists.

28

the same $50,000 under both the 1981 and the breach of contract causes of action would be double counting." Id. at 772.

The same holds true here.  The jury may well have concluded that awarding $100 million to Mattel for each cause of action would be double counting because it wished to award only $100 million in total (and since Mattel requested more than $400 million, it would not be clear whether the overall award was $100 million or $400 million). That the jury may haven chosen to apportion its award across multiple claims, even with an instruction calling for it to award the "total damages" for each claim, does not require that its verdicts be reduced under Ninth Circuit law.  See Bains, 405 F.3d at 771-72; see also Indu Craft, 47 F.3d at 497 ("While it is possible that the jury impermissibly compensated Indu Craft twice for the same injury, it is equally rational to believe that the jury found that Indu Craft suffered $3.25 million worth of injuries and merely allocated that amount between the two different causes of action, one for breach of contract and one for tort.").  Nor does the instruction preclude the possibility that the jury concluded its awards reflected the appropriate damages for the different causes of actions, carving up MGA's Bratz profits among the different wrongs (and yielding a total award which MGA does not and cannot argue is not supported by sufficient evidence).

MGA relies on Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014 (9th Cir. 2000).  That case involved an appellate court examination of whether the trial court abused its discretion in reducing a damages award (id. at 1023), not the standard to be applied by the trial court itself in addressing such a motion.  The deferential standard of appellate review is irrelevant to a district court's determination of a Rule 59 motion for remittitur in the first instance, where the movant carries a heavy evidentiary burden of persuasion.  Moreover, the defendant in Caudle satisfied the applicable standards:  there was *no possible argument* but that the *same* damages -- $10,000 in lost earnings -- had been awarded by the jury twice because it was "beyond dispute that the $10,000 back pay award represented Caudle's lost earnings during the period from her discharge to

-9-

September 1995." Id.  MGA has made no such showing here.  The evidence here would have supported an award well above the jury's combined verdicts.  There is no basis for concluding that the amounts awarded for each of the claims represent the same damages, awarded duplicatively, as opposed to only a share of the total or different damages for different injuries.  Speculation about what the jury did cannot support a remittitur.

The joint opinion of then-Judges Ginsburg and Bork for the D.C. Circuit in Carter v. District of Columbia, 795 F.2d 116 (D.C. Cir. 1986), emphasizes just how little discretion a district judge has to use remittitur to correct a jury's "mistakes."  The trial judge in that case, on post-trial motions, recognized he had erred in instructing the jury as to the measure of damages for plaintiffs' constitutional claim, wrongly inviting the jury to award damages not only for actual harms suffered but also for the "value" of the rights at issue.  In an effort to correct the instruction, and in response to the argument that damages for the constitutional deprivation and for a separate common law false imprisonment claim were duplicative, the court granted the defendants' remittitur motion and struck the $40,000 the jury had awarded for the fourth amendment claim.  This was error:

> [O]ne could not say with certainty that the $40,000 figures recorded as damages under the heading "fourth amendment," reflected simply and only price tags the jury placed on "the loss of constitutional rights as such."  The charge informed the jury that plaintiffs could recover for bodily injury, mental suffering, and wage losses under the fourth amendment heading.  Conceivably, the jurors here totaled the amounts they found for these items of actual damage, and then allocated the total between the false arrest and fourth amendment counts.  Perhaps they had in mind, in settling on the respective verdicts, limiting the sums for which the District [of Columbia] would be answerable directly, based on a notion that the city itself was not blameworthy. Such a judgment, although not consonant with *respondeat superior* doctrine, is the kind of response jurors not altogether uncommonly make.  *Cf.* 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2503, at 489 (1971) (noting argument that "one of the purposes of the jury system is to permit the jury to temper strict rules of law by the demands and

necessities of substantial justice").  Reviewing the record at this distance from the trial, with no opportunity to poll the jury, all one could say with security is this: How much, if anything, the jurors awarded "for the per se violation of Constitutional rights," is speculative, destined to remain unknown and unknowable.

Id. at 134-35 (citations omitted); see also Gentile, 926 F.2d at 153-54; Indu Craft, 47 F.3d at 497.

### 2.   Mattel's Damages Theory Does Not Establish Duplication

MGA urges that duplication is nonetheless established because Mattel sought a single remedy, disgorgement of Bratz profits, for its various claims.  It is not the remedy Mattel sought, but the damages the jury awarded, that determines whether the verdict must be upheld.  Mattel did indeed seek hundreds of millions of dollars on each of these claims.  But the jury, on each claim, chose to award less than what Mattel sought.  Why it did so is a question that can only be answered speculatively.[7]

But no speculation is required to recognize that the jury's total award is well within the range of evidence, and the Court should "only disrupt a jury verdict for duplication if the verdict amount is not within the range of evidence."  Morrison Knudsen, 532 F.3d at 1079.  Had the jury awarded the full amount sought by Mattel on each claim, its total award would exceed the range of evidence and reflect duplication. No such argument applies, however, where all the awards **combined** are well below the damages supported by the evidence, as here.  MGA does not even suggest the verdicts it seeks to reduce are not supported by sufficient evidence.  Quite the contrary, the

---

[7]   While possible alternative explanations are too speculative to bind the Court in an equitable proceeding, compare Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473-74 (9th Cir. 1993), the test for upholding a verdict is just the opposite of the test for determining whether it binds the Court.  A court is not bound by speculative rationales when reaching its own conclusions in equity, but the strong presumption in favor of enforcing verdicts requires a court to accept any possible explanation for a verdict that will avoid upsetting it on a Rule 59 motion.

1    evidence was more than sufficient to sustain a verdict even larger than the one MGA

2    seeks to reduce.

3         In such a circumstance, there is no basis for a remittitur.  In <u>United Phosphorus,</u>

4    <u>Ltd. v. Midland Fumigant, Inc.</u>, 205 F.3d 1219, 1228 (10th Cir. 2000), for example, the

5    defendant argued that a total damage award which exactly equaled the sum of

6    plaintiff's lost profits and defendant's profits should be overturned because plaintiff

7    was entitled at most to one or the other, but not both.  The Court of Appeals disagreed.

8    Even if the coincidence of the verdict amounts was suggestive of duplicative damages,

9    there was evidence to support the total reached by the jury:

10        Midland argues the jury award must be an improper double recovery of
          United's lost profits and Midland's profits.  We agree with the district
11        court that this conclusion requires us to speculate as to the jury's
          deliberations and calculations.  While Midland's explanation for the result
12        of the verdict is persuasive, it is not the only explanation.  However slight
          the chance, the jury could have arrived at the figure coincidentally, or
13        more likely, picked the number from plaintiff's exhibits 'because it was
          within the range of the evidence and the jury was somehow attracted to it .
14        . . . [G]iven the evidence presented of damages exceeding $4 million, the
          jury's award was well within the range of proof, and we refuse to
15        characterize the jury's verdict as an impermissible double recovery.
16
17
18   <u>Id.</u> (citations omitted).  <u>See also</u> <u>Morrison Knudsen</u>, 532 F.3d at 1079; <u>Levine v. CMP</u>

19   <u>Publications</u>, 753 F.2d 1341, 1344 (5th Cir. 1985) (rejecting duplicative damages

20   argument in part because "[t]he . . . actual damage awards are within the range of

21   damages reasonably supported by the evidence" (quoting district court order)).[8]

22        A jury's damages verdict "need not be broken down and attributed piece by piece

23   to particular injuries," but "'will be upheld if it is within the scope of the evidence

24   presented.'"  <u>Johnson v. Consolidated Rail Corp.</u>, 797 F.2d 1440, 1446 (7th Cir. 1986);

25   <u>see</u> <u>Los Angeles Memorial Coliseum Com'n v. National Football League</u>, 791 F.2d

26   _____

27        [8]  The <u>Levine</u> opinion was a panel response to a dissent from denial of rehearing en banc,
     following affirmance of the quoted district court order.

28

1356, 1366 (9th Cir. 1986) (cited by MGA) ("Even a total inadequacy of proof on isolated elements of damages claims submitted to a jury will not undermine a resulting aggregated verdict which is nevertheless reasonable in light of the totality of the evidence. . . . [W]here, as here, the jury's verdicts find substantial support in the record and lie within the range sustainable by the proof, we will not 'play Monday morning quarterback' and supplant the jury's evaluation of the complex and conflicting evidence with our own.") (citations omitted).[9]  For this reason, even where a remittitur for duplication *is* appropriate, the remittitur should be only to the maximum amount sustainable under the evidence.  "Because the seventh amendment right to jury trial pervades the atmosphere, it is appropriate to set a remittitur *so as to permit recovery of the highest amount the jury tolerably could have awarded*."  Carter, 795 F.2d at 135 n.13 (emphasis added) (citing 11 C. Wright & A. Miller, Federal Practice and Procedure § 2815, at 104-05 (1973) (advising that jury awards may be remitted only to "the highest amount that the jury could properly have awarded.  This is the only theory that has any reasonable claim of being consistent with the Seventh Amendment"); see also D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982) ("Although this circuit has not stated its position, others consistently approve remitting the judgment to the maximum amount sustainable by the proof.  This rule prevents the court's substitution of its judgment for that of the jury.  We adopt this standard.") (citations omitted).

---

[9]  MGA cites Los Angeles Memorial Coliseum for the proposition that "damages must be supported by 'substantial evidence' presented at trial.  (Mtn. at 16 n.5.)  Actually, the standard laid down in that case was, "*viewing the evidence as a whole and in the light most favorable to the nonmoving party* . . . does substantial evidence support the jury's verdict . . . ."  791 F.2d at 1360.  The Ninth Circuit went on to explain that, in "reviewing a jury's damages award, we must uphold the jury's 'finding of the amount of damages unless the amount is 'grossly excessive or monstrous,' clearly not supported by the evidence, or 'only based on speculation or guesswork.'"  Id.

Applying these standards here, there is nothing to remit -- the evidence more than supports the full amount of the jury's awards. The jury had more than enough evidence to conclude that MGA reaped $30 million in profits from its tortious interference with contract, another $30 million in profits from its aiding and abetting Bryant's breach of his statutory duty of loyalty and another $30 million from aiding and abetting Bryant's breach of fiduciary duty. MGA does not contend otherwise. Its claim that the awards must reflect the same $30 million loss three times over is pure speculation, and cannot be the basis for overturning the jury's verdict. There can be no remittitur for duplication where, as here, the overall award is within the range of evidence. <u>Morrison Knudsen</u>, 532 F.3d at 1079; <u>United Phosphorus</u>, 205 F.3d at 1228; <u>Carter</u>, 795 F.2d at 134-35.[10]

### 3.     The Claims Are Not Based On Identical Conduct

MGA's assertion that damages must be duplicative because Mattel allegedly relied on identical conduct to support its claims ignores the distinct elements and proof at trial of the individual claims. MGA describes the causes of action at the highest levels of abstraction as seeking "recompense for the same, single wrong: Carter Bryant's defection to Mattel competitor MGA with Mattel's property in hand." (Mtn. at 6). At this level of generality, virtually any set of claims could be made to appear similar; that does not mean they are identical. MGA claims that Mattel spoke about its claims in the same breadth in Phase 1B, seeking to prove that "MGA's supposed inducement of Bryant and receipt of BRATZ was the 'crime' . . . the jury . . . must rectify in Phase 1B." (<u>Id</u>. at 7; <u>see id</u>. at 8 ("Whether applied to the breach of fiduciary duty and the other wrongdoing you found in the first phase of the trial or the copyright claims, the concept is the same: Crime doesn't pay, directly or indirectly.")). Such

---

[10]     This distinguishes MGA's authority. For example, MGA cites <u>Peake v. Chevron Shipping Co., Inc.</u>, 2004 WL 1781008 (N.D. Cal. 2004), but in that case a remittitur issued because the damages awarded as duplicative **did** exceed the range of evidence: "None of the evidence adduced at trial justifies such profligate damage totals." <u>Id</u>. at *2.

general thematic statements, made during closing argument when counsel needs to remind jurors of their principal points, do not show Mattel's causes of action were fungible.  The jury instructions specifically address the distinctive nature and elements of each of Mattel's causes of action.[11]   The claims at issue here each had separate elements which Mattel was required to, and did, satisfy, and MGA makes no showing to the contrary.

A breach of the duty of loyalty involves the "failure to act in good faith [and] requires conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care (i.e., gross negligence)." In re Sonus Networks, Inc., Shareholder Derivative, 499 F.3d 47, 67 (1st Cir. 2007). Mattel's aiding and abetting breach of duty of loyalty claim encompassed harms to Mattel and benefits MGA obtained as a result of Bryant's work for MGA, and was not limited to the creation of Bratz designs.  The jury instructions asked whether "Mr. Bryant knowingly acted against Mattel's interests while he was employed by Mattel."[12] Similarly, Mattel's complaint averred that Bryant "could not compete with Mattel or assist a competitor of Mattel during [his] employment with Mattel."[13]  This claim was proved through evidence of Bryant's agreement to work for MGA on a "top priority" basis while employed by Mattel and the various activities Bryant undertook to reach that goal.  For instance, in conflict with his duty of loyalty to Mattel, Bryant located and

---

[11]  Compare Phase 1A Final Jury Instructions ("Phase 1A Jury Inst."), dated July 10, 2008 (Dkt No. 4115), No. 22 (requiring Mattel to prove the existence of a contract, and knowledge and intentional disruption by MGA and/or Larian of that contract) with Phase 1A Jury Inst. No. 26 (requiring proof that Bryant owed and breached a fiduciary duty to Mattel) and Phase 1A Jury Inst. No 27 (requiring proof that Bryant was an employee and knowingly acted against Mattel's interests while employed by Mattel), Zeller Dec. Exh. 3.

[12]  Phase 1A Jury Inst. No. 27, Zeller Dec. Exh. 3.

[13]  Mattel's Second Amended Answer and Counterclaims, dated July 12, 2007, at Counterclaims ¶ 143, Zeller Dec. Exh. 4.

00505.07209/2757156.5

worked with doll hair suppliers[14] and met with vendors to discuss packaging for the Bratz dolls.[15]  These were wrongs regardless of whether Mattel proprietary information was taken, used or disclosed, regardless of Bryant's violation of his notification obligations to Mattel and regardless of copying of protected works.

Tortious interference with contract is based on intermeddling – "a cause of action [occurs] against a defendant who interferes with a contract between the plaintiff and the third party."  CRST Van Expedited, Inc. v Werner Enterprises, Inc., 479 F.3d 1099, 1105 (9th Cir. 2007).  Mattel's tortious interference with contract claim included proof of Bryant's breaches of his agreements with Mattel, including but not limited to the section of the agreement establishing his fiduciary duty.  For example, the evidence established that Bryant made drawings not disclosed to Mattel, including drawings that both were and were not specifically used to create the Bratz dolls.[16]  Paragraph 2(a) of the Inventions Agreement required Bryant to notify Mattel of their existence.  Bryant's failure to do so meant that Mattel never knew it owned this property, could not use it, and could not discover defendants' illegal scheme.  Mattel's complaint specifically alleged that Bryant's failure to notify Mattel constituted a breach by him, and that MGA knew Bryant "was obligated to disclose to Mattel all inventions, including designs and other works, created, conceived, or reduced to practice during [his] employment with Mattel."[17]

Proof showing MGA's aiding and abetting breach of fiduciary duty included Bryant's unlawful disclosure of Mattel's proprietary information.  As noted in the Phase 1A jury instructions, "Mr. Bryant's fiduciary duty to Mattel is predicated upon Paragraph 1(a) of the Inventions Agreement and is related to Mr. Bryant's obligation to

---

[14]  E.g., Trial Exh. 30, Zeller Dec. Exh. 5; Trial Exh. 1765 at 3, Zeller Dec. Exh. 6; Trial Tr. at 3086:20-3090:22.

[15]  E.g., Trial Exh. 1765, Zeller Dec. Exh. 6; Trial Tr. at 933:21-934:25.

[16]  E.g., Trial Tr. at 2508:19-2509:2; 3006:14-3007:11.

00505.07209/2757156.5

keep Proprietary Information confidential."[18]  The breach of Bryant's fiduciary duty allowed MGA to profit from the disclosure of Mattel's proprietary information, including the drawings which were translated into the sculpt for the Bratz fashion doll. MGA benefited from Bryant's secrecy, even where it did not use proprietary information, because neither could its competitor, Mattel.

Bryant's breach of his duty of loyalty was established on summary judgment — he "breached this duty by entering into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products"[19] — even though the Court did not find summary judgment liability as to other claims based on these undisputed facts.  Thus, the undisputed conduct that established Bryant's breach of his duty of loyalty was not the same as was necessary to establish a breach of his other duties.  Similarly, in ruling on preemption, the Court considered and rejected the argument that the state law claims at issue here were identical to the claim for copyright infringement.  MGA's effort to overturn the jury's damages awards by claiming that only one wrong was involved, or that all of Mattel's claims were based on identical conduct, ignores the prior, correct rulings of this Court to the contrary.[20]

_____

[17]   Mattel's Second Amended Answer and Counterclaims, dated July 12, 2007 (Dkt No. 635-36), at Counterclaims ¶ 124, Zeller Dec. Exh. 4.

[18]   Phase 1A Jury Inst. No. 28, Zeller Dec. Exh. 3.  Confirming the distinctiveness of the claims, the Court vacated its finding of breach of fiduciary duty on summary judgment because it could not find as a matter of law that the fiduciary duty extended beyond Bryant's obligation to maintain Mattel's confidential information.  See Order Regarding Motion for Reconsideration and the Parties' Motions for Partial Summary Judgment, dated May 21, 2008 (Dkt No. 3758), at 3-4, Zeller Dec. Exh. 7.

[19]   Order Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment, dated April 25, 2008 (Dkt No. 3286), at 5, Zeller Dec. Exh. 8.

[20]   Reliance on overlapping conduct to establish different wrongs does not, in all events, undermine separate damage awards.  See Theme Promotions, Inc. v. News America Marketing FSI, 546 F.3d 991, 1005-06 (9th Cir. 2008) ("We have held that one act by a defendant may create two legal harms; where the statutes forbidding the act were enacted for different purposes, and where they prescribe different types of damages, there is no double (footnote continued)

00505.07209/2757156.5

### 4.    <u>Mattel's Copyright Damages Are Not Duplicative</u>

MGA's attack on the copyright damages fails for the same reasons as its attack on the state law claims.  MGA lists the forms of damages Mattel could have but did not seek for copyright infringement (Mtn. at 12 n.3), as if singularly pursuing disgorgement *ipso facto* establishes that any damages awarded must be duplicative.  The Ninth Circuit has rejected such an assertion.  <u>See</u> <u>Theme Promotions,</u> 546 F.3d at 1006 (no duplication in damages award despite unitary lost profits damages theory).  MGA also embraces the flawed premise that because the copyright damages were less than those awarded for the state law tort claims ($10 million total versus $30 million each), the "jury's infringement award is easily recognized as a narrower but overlapping subset of the unapportioned state law claim awards." (Mtn. at 14).  But the numbers themselves compel no such conclusion.

The Court has already recognized MGA's self-serving effort to explain the jury's damage award for copyright infringement as a "guessing game," pure and simple.  MGA's "subset" argument is no more inevitable than its earlier claim that the $10 million number must somehow be tied to the first wave dolls.  <u>See</u> Dec. 3 Order at 10 n.6 ("This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.").  MGA's latest suggestion that the $10 million for copyright might mean that the jury accepted Professor Joachimsthaler's testimony that MGA's efforts could be responsible for 50-70% of the Bratz profits (Mtn. at 14) is simply one more entry in the guessing game.  As the Court previously ruled in its injunction Order, the jury could have awarded $10 million for any number of other reasons.  <u>See</u> Dec. 3 Order at 9-10.  The same flaws also apply to MGA's arguments regarding the Bratz name and characters.  (Mtn. at 14-15.)  Because the jury here did not itemize its

recovery."); <u>Nintendo of Am., Inc., v. Dragon Pac. Int'l</u>, 40 F.3d 1007, 1011 (9th Cir. 1994) ("selling the cartridges may have been one act, but it was two wrongs.").

00505.07209/2757156.5

damages awards, it is impossible to parse out what the jury might have thought each violation it found was worth.  Nor did MGA even request that damages be parsed out in this way.  The absence of clear evidence establishing that the jury's awards necessarily were duplicative precludes remittitur.

Moreover, MGA's argument seeks to circumvent the Court's preemption rulings. At summary judgment, MGA argued that Mattel's tort claims were preempted because they duplicated its copyright claim.[21]  The Court agreed in part and disagreed in part.[22]  Now, MGA claims that the damages awards on the *non*-preempted tort claims -- the claims that the Court explicitly found contained extra elements, and were qualitatively different from the copyright claim -- should be disregarded as duplicative of the copyright award, effectively seeking to nullify the Court's preemption ruling and collapse the state claims into the copyright action.  If MGA were correct, a plaintiff could never recover non-duplicative damages for both copyright and state law claims when it pursues the same form of damages for both (e.g., disgorgement).  Just as Mattel's state law claims are not preempted by copyright even though Mattel pursued disgorgement as a remedy for both sets of claims,[23] the mere fact that Mattel sought disgorgement on all claims does not mandate that either state law or copyright damages be remitted.  Indeed, as this Court previously ruled, even overlapping damages remedies do not establish copyright preemption.[24]

---

[21]  See MGA Parties' Motion for Partial Summary Judgment, dated March 7, 2008 (Dkt No. 2543), at 35, Zeller Dec. Exh. 10.

[22]  See Order Granting in Part, Denying in Part, Deferring in Part Parties' Motions for Partial Summary Judgment, dated April 25, 2008 (Dkt No. 3285), at 2-4, Zeller Dec. Exh. 8.

[23]  See Mattel's Opposition to the MGA Parties' Renewed Partial Motion for Judgment as a Matter of Law for Phase 1(a) and 1(b), filed concurrently.

[24]  See Mattel's Opposition to the MGA Parties' Renewed Partial Motion for Judgment as a Matter of Law for Phase 1(a) and 1(b), filed concurrently.  MGA cites Bowers v. Baystate Technologies, Inc., 320 F.3d 1317 (Fed. Cir. 2003), for the proposition that plaintiffs cannot "recoup duplicative damages where they bring both state law and copyright claims" (Mtn. at 4), but that assumes the conclusion.  The question is *whether* the jury awarded duplicative damages in the first place.  In Bowers, "the breach of contract damages arose from the same (footnote continued)

### 5.   The Awards Against Larian And MGA Are Not Duplicative

MGA speculates, but cannot prove, that the jury's copyright infringement award against Larian was "[from] the exact same dollars"[25] as its award against MGA.  That Larian's $385.2 million of Bratz-related distributions were paid to him out of MGA's $777.9 million of Bratz-related profits does not prove that the $6 million awarded against MGA were for profits that had also been distributed to Larian; if anything, common sense would suggest that MGA's damages were assessed out of its retained profits, particularly in light of the care MGA took in explaining the difference to the jury:

> Q.   And here you've concluded that MGA made profits of 777.9 million, right?
>
> A.   I have.
>
> Q.   And then you found -- picking up the chronology, first they made those profits, 777-.  Now can we go back to slide 3.  And then 385 million of those profits got distributed to Mr. Larian, right?
>
> A.   Through December of 2007.  I don't know what's been distributed to him in the first six months of 2008.
>
> Q.   Okay.  And so if you wanted to know what MGA's end-of-the-day profits were, you'd have to subtract the 385- from 777-.
>
> A.   The profits they have retained, yes.[26]

That the jury awarded Mattel $0 from Mr. Larian's ownership percentage on the copyright claim, if it proves anything, supports the conclusion that the jury intended every amount it wrote down to be paid in full.  The jury may have believed that Larian's ownership value gains were already encompassed within the jury's awards

---

copying *and included the same lost sales that form the basis for the copyright damages*."  <u>Id</u>. at 1328 (emphasis added).  There is no proof of that here.

[25]   Mtn. at 18.

[26]   Trial Tr. at 6413:14-6414:1.

1  against the company and rejected damages for ownership gains on that basis.  The jury
2  might also have credited MGA testimony that it was impossible to value the stock.[27]
3  The jury's award of $0 for Larian's ownership value gains proves nothing about
4  whether its other awards were necessarily duplicative.

5      Similarly, there is no proof that the $60 million awarded against MGA for the
6  state law causes of action (in the face of evidence that MGA retained, and did not
7  distribute to Larian, $392 million in profits) came out of the portion of the profits that
8  were distributed to Larian.  MGA's suggestion to this effect (Mtn. at 17) rests on a false
9  assumption.  The jury did not "reject[] damages premised on Larian's ownership
10 interest" on the state law claims; with the consent of the parties, the verdict form did
11 not permit the jury to specify the bases of its state law damages awards.  Here again,
12 MGA's conclusions are purely speculative and therefore insufficient to overturn the
13 verdicts.[28]

14              **6.    The MGA HK Award Is Not Duplicative**

15     Defendants argue that the award against MGA HK is duplicative because MGA's
16 profits include profits made by MGA HK.  But MGA never introduced any evidence

17

18 _____

19 [27]  See Trial Tr. at 7760:1-17.
   [28]  Notably, MGA itself requested that the verdict form break out damages for each claim
20 by individual defendants, inviting the alleged "duplication" of which it now complains.
   Mattel initially proposed a verdict form that asked the jury to state the total amount of
21 damages for each of the state tort claims.  See Mattel, Inc.'s Amended Proposed Verdict Form
   For Phase 1B, dated July 28, 2008 (Dkt No. 4156), at Questions 1-4, Zeller Dec. Exh. 11.
22 MGA objected, demanding that damages be stated separately not only for each claim, but also
   for each defendant:  "The MGA Parties object to questions 1-4 to the extent that they do not
23 distinguish between damages awarded against different defendants."  See MGA Parties'
   Objections to Mattel, Inc.'s Proposed Phase 1B Special Verdict Forms, dated July 29, 2008
24 (Dkt No. 4169), at 5, Zeller Dec. Exh. 12.  The proposed verdict form was then revised to do
   exactly what MGA demanded -- "distinguish between damages awarded against different
25 defendants," Trial Tr. at 8072:11-20 -- and MGA withdrew its objections, Trial Tr. at 8074:5-
26 6.  MGA cannot now complain about confusion allegedly caused by a verdict form structure it
   not only agreed to, but insisted on.

27

28

1  establishing that "MGA HK is a consolidated entity for financial reporting purposes."

2  (Mtn. at 20.)  This argument therefore is waived.[29]

3  　　　　The argument fails on the merits in any event.  At trial, the evidence established

4  that MGA Entertainment focused on the design of the dolls, the sculpt,[30] the size and

5  shape of the dolls,[31] and their clothes, while MGA HK was more heavily involved in

6  the engineering, manufacturing and shipping of the dolls.[32]  Based on this evidence, the

7  jury could have found that MGA Entertainment should be primarily responsible for

8  profits owing to its unlawful reproduction of the design of the dolls, while MGA HK

9  should be responsible for those profits fairly attributable to its participation in the

10  wrongful and infringing conduct.  MGA does not and cannot prove that the jury could

11  *not* have found that each defendant was responsible for separate components of the

12  profits in line with their different roles and responsibilities for the infringing dolls.

13  **III.**  **DAMAGES AGAINST LARIAN ARE NOT TIME BARRED**

14  　　　　Without citing a single case, defendants allege that the $10 million award against

15  Larian for interference with contract is time-barred because he did not fraudulently

---

16  　　[29]  See Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003) ("A Rule 59(e) motion may

17  not be used to raise arguments or present evidence for the first time when they could

18  reasonably have been raised earlier in the litigation."); Beech Aircraft Corp. v. U.S., 51 F.3d 834, 841 (9th Cir. 1995) ("That Plaintiffs raised the issue in a post-judgment motion does not

19  save this issue for appeal for the Plaintiffs"); Echevarria v. U.S. Steel Corp., 392 F.2d 885, 892 (7th Cir. 1968) (defendant waived theory first raised on motion for new trial); Vigilant

20  Ins. v. Sunbeam Corp., 231 F.R.D. 582, 594 (D. Ariz. 2005) (rejecting new argument on motion for new trial or remittitur:  "As the first mention of this argument was in its motion for

21  a new trial, the Court concludes Defendant has waived this argument.").

22  　　[30]  See, e.g., Trial Tr. at 6673:21-24; 6679:15-6680:12; 6872:8 - 6874:2.

　　[31]  See, e.g., Trial Tr. at 6871:22- 6872:7; 6931:15- 6933:12.

23  　　[32]  See  Trial Exh. 18 (9/27/00 email from MGA to MGA HK regarding Bratz

24  development), Zeller Dec. Exh. 13; Trial Tr. (Garcia) 635:21-637:20 (on 9/27/00, MGA sent MGA HK Bryant's Bratz drawings, physical samples of a Bratz body, Bratz clothing, and

25  shoes to begin costing Bratz); Trial Exh. 1105 (10/15/00 e-mail from MGA HK confirming

26  that it had received a clay Bratz body), Zeller Dec. Exh. 14; Trial Exh. 923 (10/16/00 Bratz product development form sent from MGA to MGA HK)), Zeller Dec. Exh. 15; Trial Tr.

27  (footnote continued)

28

conceal his conduct.  Defendants ignore that the jury found that MGA *did* fraudulently conceal the conduct giving rise to Mattel's claims.  That is all that is required to preserve Mattel's claims.

"Statutes of limitations are designed to effect repose, not to affect standards governing conduct." <u>Diduck v. Kaszycki & Sons Contractors</u>, 974 F.2d 270, 282 (2d Cir. 1992), <u>overruled on other grounds</u>, <u>Gerosa v. Savasta & Co., Inc.</u>, 329 F.3d 317, 321, 327 (2d Cir. 2003); <u>see also</u> <u>American Pipe & Constr. Co. v. Utah</u>, 414 U.S. 538, 554-555, 558 (1974) (purpose of limitations rule is repose); <u>Ledbetter v. Goodyear Tire & Rubber Co., Inc.</u>, 127 S. Ct. 2162, 2170 (2007) (same).  Thus, once fraudulent concealment has been established, the only relevant question is when the plaintiff could have discovered the conduct at issue. <u>See</u> <u>Diduck</u>, 974 F.2d at 282.  One defendant's fraudulent concealment tolls the limitations period for all defendants. <u>Id.</u> "[A]ffirmative acts of concealment by one or more of the conspirators can be imputed to their co-conspirators for purposes of tolling the statute of limitations." <u>Riddell v. Riddell Washington Corp.</u>, 866 F.2d 1480, 1493 (D.C. Cir. 1989). <u>See also</u> <u>In re Scrap Metal Antitrust Litig.</u>, 527 F.3d 517, 537 (6th Cir. 2008) (same); <u>New York v. Hendrickson Bros., Inc.</u>, 840 F.2d 1065, 1084-85 (2d Cir. 1988) (same).  Moreover, because Larian is the primary shareholder and CEO of MGA, MGA's conduct can be imputed to him. <u>See</u> <u>Lightner Mining Co. v. Lane</u>, 161 Cal. 689, 703 (Cal. 1912) ("The fraud of the agents will be imputed to the principal for the purpose of preventing the running of the statute of limitations, whether the principal was aware of it or not."); <u>Acosta v. Glenfed Development Corp.</u>, 128 Cal. App. 4th 1278, 1301 (Cal. Ct. App. 2005) (same); <u>Cohen v. Heavey</u>, 261 Cal. App. 2d 766, 768 (Cal. Ct. App. 1968) (finding corporations were agents of their owners).[33]   The finding of fraudulent

---

(Garcia) 666:16-667:10 (MGA discussed with MGA HK that there would be four Bratz dolls as of 10/16/00).

[33]  While MGA relies on the prior order of this Court (<u>see</u> Further and Final Order Re Statute of Limitations Defense, dated June 2, 2008 (Dkt. No. 3902), at 3, Zeller Dec. Exh. 16), (footnote continued)

1  concealment by MGA applies to Larian, and the award against Larian should be

2  enforced.

3      In any case, defendants raise the claim that fraudulent concealment must be

4  proven against each and all defendants for the first time on this motion. It is therefore

5  waived.[34] MGA argued at summary judgment that fraudulent concealment was simply

6  not applicable,[35] but never before that it must be proved against each and every

7  defendant. The assertion is waived.

8  **IV.    CONVERSION DAMAGES SHOULD BE ENFORCED**

9      Last, MGA erroneously asserts that Mattel is not entitled to the damages awarded

10 by the jury for conversion because they are purportedly duplicative of the Court's

11 declaratory relief.[36] Conversion damages were awarded for the deprivation of Mattel's

12 property for eight years; declaratory relief was granted so that Mattel may regain actual

13 possession of property rightfully belonging to it going forward. MGA cites no

14 authority that a grant of declaratory relief somehow bars a plaintiff from recovering

15 damages for wrongs inflicted on it in the past. In any case, MGA has yet to return

16 Mattel's property. There is no duplication.

17                      **Conclusion**

18     MGA waived its right to protest the jury's awards as duplicative by not raising its

19 objection at a time when the jury could be questioned, a record could be developed, and

20 the jury's intent could be determined by something more than speculation. MGA has

21 _____

22 that order merely notes that the statutory period can be tolled by a period of concealment, not
   that concealment must be established as to each defendant, an argument defendants never
23 made.
   [34] See supra, n. 29; see also Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d
24 607, 612 (1st Cir. 2000) (rejecting statute of limitations claim raised after trial: "It is well-
   settled, however, that new legal arguments or evidence may not be presented via Rule
25 59(e).").
26 [35] See MGA Parties' Reply Memorandum of Points and Authorities in Further Support of
   Their Motion For Partial Summary Judgment, dated April 1, 2008 (Dkt. No. 2934), at 12-14,
27 Zeller Dec. Exh. 17.

28

1   also failed to meet the substantial burden imposed on a party who seeks to overturn a

2   jury verdict as inconsistent or duplicative.  Its motion should be denied.  And in all

3   events, "remittitur by fiat," which is what MGA seeks here, is not a proper remedy; if

4   MGA's arguments were accepted, they would require a new trial on damages, not a

5   reduction in the verdicts.  "Unless a jury's assessment of damages includes an

6   impermissible component that can be identified and calculated with precision . . . it is

7   not the district court's prerogative to enter a remittitur by fiat.  Instead, the appropriate

8   procedure is to pose to plaintiffs the choice between consent to the reduction and a new

9   trial.  Only by so proceeding can a district judge avoid encroaching on the parties' jury

10  trial right."  <u>Carter</u>, 795 F.2d at 135.[37]

12  DATED:  January 12, 2009          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP

14                                    By /s/ John B. Quinn
                                      _____
15                                    John B. Quinn
                                      Attorneys for Mattel, Inc.

---

[36]  <u>See</u> December 3 Order at 6, Zeller Dec. Exh. 9.

[37]  <u>See also</u> <u>D & S Redi-Mix</u>, 692 F.2d at 1249 (Ninth Circuit adopting standard that an allegedly excessive judgment may be remitted "to the maximum amount sustainable by the proof" because "[t]his rule prevents the court's substitution of its judgment for that of the jury").  The examples listed by Judges Ginsburg and Bork in <u>Carter</u> of damages that can be identified and calculated with the requisite precision are: (1) on a special verdict form an award for punitive damages relating to a wholly discrete issue of law; (2) interest; (3) the amount that should have been subtracted under an insurance policy's apportionment clause where the policy covers only 75% of losses; and (4) witness travel expenses and fees for which there was no entitlement under the applicable law.  Plainly, MGA's proposed reduction here is of an entirely different type and nature.