# EXHIBIT 1

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:   (213) 443-3100

7   Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

12              Plaintiff,                Consolidated with
                                          Case No.    CV 04-09059
13         vs.                            Case No.    CV 05-2727

14  MATTEL, INC., a Delaware             MATTEL'S SUBMISSION
    corporation,                         REGARDING EMAIL FROM JUROR
15                                        NO. 7 AND REQUEST TO RECALL
              Defendant.                  THE JURY
16

17  AND CONSOLIDATED ACTIONS

18

19

20

21

22

23

24

25

26

27        EXHIBIT _____ l _____

28        PAGE _____ 4 _____

07209/2620443.2

MATTEL'S SUBMISSION RE JUROR NO. 7'S EMAIL

1    Consistent with the Court's invitation at yesterday afternoon's hearing, Mattel
2  respectfully makes this submission to further explain its position with respect to the
3  email from Juror No. 7 and to request that the Court recall the jury to confirm the
4  correctness of the verdict amount.

5    As the phase 1(b) verdict form reflects, the jury awarded Mattel in excess of
6  $100 million in damages against defendants on Tuesday.   Yesterday, the Court
7  received an email from Juror No. 7 expressing "shock" at recent statements in the
8  press that the damages award in this case were far lower.   That email was the direct
9  result of MGA's and Isaac Larian's misstatements to the press that the amounts
10  awarded by the jury are duplicative and total only $20 million to $40 million.   Juror
11  No. 7's email confirms what is clear from the phase 1(b) verdict form:   the jury
12  awarded, and intended to award, Mattel total damages of more than $100 million.

13    Yesterday's email from Juror No. 7 did not tell MGA or Larian anything they
14  did not already know.   MGA's counsel, and Larian himself, spoke on Tuesday to the
15  jurors immediately after the verdict and were unequivocally told by the jurors that
16  their award to Mattel totaled more than $100 million.   Indeed, at the conference with
17  the Court yesterday regarding Juror No. 7's email, MGA's counsel did not dispute
18  the truth of Juror No. 7's email confirming the $100 million amount of the jury's
19  verdict and essentially conceded that MGA and Larian knew from their own post-
20  trial interviews that when the jury filled out the verdict form it intended that the
21  damages amounts be added up and constituted an award that totaled more than $100
22  million to Mattel.   See Hearing Transcript, August 28, 2008 ("Tr.") at 8358: 14-24.
23  That, however, did not stop MGA and Larian from publicly making the false claims
24  that shocked Juror No. 7—namely, that the damages awards were duplicative and
25  totaled as little as $20 million.

26    MGA and Larian have made clear that—despite their knowing the truth about
27  the verdict—they will continue to make similar claims in post-trial motions to the
28  Court.   Mattel is confident that the verdict form, on its face, shows the jury awarded

MATTEL'S SUBMISSION RE JUROR NO. 7'S EMAIL

EXHIBIT ___I___

PAGE_____5_____

1   Mattel in excess of $100 million and that the damages awards are in no way
2   duplicative.  Mattel is equally confident that the jury will confirm—as Juror No. 7
3   did in her email to the Court and as the jurors did post-verdict on Tuesday to both
4   sides—that the amount awarded Mattel is in excess of $100 million.  Accordingly,
5   to avoid further misstatements by MGA and Larian and avoid further groundless
6   motion practice by MGA and Larian that attempts to distort the verdict amount,
7   Mattel requests that the Court recall the jury for the limited purpose of confirming
8   the correct amount of their damages award, either by polling the jurors with a simple
9   yes or no question or by separately interviewing each of the jurors.

10      . MGA and Larian do not—and cannot in good faith—dispute that the jury
11   intended to award Mattel total damages in excess of $100 million.  Instead, MGA
12   and Larian take the position that they are nevertheless free to distort the verdict by
13   claiming that Mattel was awarded as little as $20 million dollars because Federal
14   Rule of Evidence 606(b) precludes any effort to confirm the correctness of the $100
15   million amount of the jury's award.  Apart from reflecting a troubling disregard for
16   what they know to be the truth, MGA's and Larian's position is not the law.
17   Numerous cases hold that Rule 606(b) does not prevent the Court from questioning
18   jurors to confirm the accuracy of their verdict.  See, e.g., Trans-World Intern., Inc.
19   v. Smith-Hemion Productions, Inc., 952 F. Supp. 667, 671 (C.D. Cal. 1996) (Rule
20   606(b) does not bar court from considering juror testimony when those comments
21   relate to possible miscommunication by jurors or misinterpretation by court of what
22   jurors actually decided, rather than how they reached their verdict; "Courts have
23   held that the Rule even permits post-discharge inquiry to determine what the jury
24   decided, as contrasted with how or why it did so.") (citations omitted); Resolution
25   Trust Corp. v. Stone, 998 F.2d 1534 (10th Cir. 1993) (district court properly
26   questioned the jury foreman concerning whether the jury meant to aggregate the
27   individual damages awards because Rule 606(b) "does not preclude a juror from
28   testifying as to the potential miscommunication of the verdict"); see also

-2-

MATTEL'S SUBMISSION RE JUROR NO. 7'S EMAIL

EXHIBIT 1

PAGE 6

1 | McCullough v. Consolidated Rail Corp., 937 F.2d 1167, 1171 (6th Cir. 1991)

2 | (district court properly doubled damages award based on juror testimony that the

3 | panel had decreased the intended award by half to account for the plaintiff's

4 | contributory negligence; "jurors [are] competent witnesses on the issue of whether

5 | the verdict delivered was the one agreed upon").

6 | Furthermore, the Advisory Committee Notes make clear that recent

7 | amendments to Rule 606(b) are intended to distinguish between (a) impermissible

8 | inquiries into whether the jury "misunderstood or misapplied an instruction" which

9 | go to "the jurors' mental processes underlying the verdict" and (b) permissible

10 | inquiries regarding the "verdict's accuracy in capturing what the jurors had agreed

11 | upon." Fed. R. Evid. 606(b)(3), 2006 Advisory Committee Notes.

12 | The lone decision that MGA and Larian point to does not support their

13 | assertion that any communication by the Court with the jurors to confirm the

14 | amount of the verdict is off limits.[1]   In the case they cited, Craig Outdoor

15 | Advertising, Inc. v. Viacom Outdoor, Inc., 528 F. 3d 1001(8th Cir. 2006), the Eighth

16 | Circuit merely held that the district court did not err in refusing to consider juror

17 | affidavits regarding their damages award where "[p]laintiffs' counsel obtained these

18 | affidavits after the jury was discharged, without notice to opposing counsel, and

19 | without permission from the District Court" to support plaintiffs' argument that an

20 | ambiguity in the verdict form confused the jurors. Id. at 1021-22.

21 | The situation here is far different. Juror No. 7 initiated contact with the Court

22 | after she was shocked to see MGA and Larian's misstatements in the press about the

23 | amount of the jury's award. Mattel does not seek to delve into the jury's thought

24 | processes in order to impeach the verdict or otherwise show that the jury misapplied

25 |

26 | [1]  That counsel came to court yesterday with this decision even though the

27 | existence of Juror No. 7's email had not yet been disclosed is further evidence that
MGA and Larian knew full what the jury intended with its verdict.

28 |

-3-

1   or misunderstood an instruction or was confused by any alleged ambiguity. To the
2   contrary, Mattel merely seeks to have the Court—through its own limited
3   questioning either by polling the jury or by separate interviews—confirm the correct
4   amount of the jury's award. There is nothing that prevents the Court from doing so
5   in these circumstances, and surely justice is not properly served by further efforts by
6   MGA or Larian to misstate to the Court what they know is the true amount of the
7   verdict. Mattel also respectfully requests that the Court recall the jurors to poll or
8   interview them as soon as practicable and while the matter is still fresh in their
9   minds.

10

11  DATED: August 29, 2008          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
12

·13                                 By /s/ Michael T. Zeller
14                                     Michael T. Zeller
                                       Attorneys for Mattel, Inc.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2620443.2

-4-

EXHIBIT ____1____

PAGE ____8____

# EXHIBIT 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date: September 3, 2008

Title:      MATTEL, INC. -v- MGA, INC.
            AND CONSOLIDATED ACTIONS
=========================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                        None Present
          Courtroom Deputy Clerk            Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

None present                         None present

PROCEEDINGS:   **ORDER DENYING MATTEL'S REQUEST TO RECALL THE JURY**

      On August 28, 2008, the Court held a hearing regarding an email received from Juror No. 7, in which she reported the jury intended to award $100 million dollars as the total amount of damages. Although at the hearing counsel for both parties initially indicated that no inquiry of the jury should be made, the Court gave leave to both sides to file points and authorities concerning the matter. The Court has received and reviewed the parties' submissions and issues the following Order.

      The cases cited by Mattel in its brief generally support its present position that the jury should be recalled to determine the amount of damages the jury intended to award. However, factual distinctions between those cases and the present case counsel against such action. Those cases all involved situations in which the jury had not yet been discharged, had not yet discussed the case with the attorneys involved, and were presumably not yet exposed to any publicity regarding the trial. Here, this issue arose more than twenty-four hours after the jury had been discharged, after many of the jurors had discussed the case with parties' attorneys (as well as the individual defendant and his family), and after the jurors had the opportunity to be exposed to a substantial amount of publicity regarding the trial.

MINUTES FORM 90                                  Initials of Deputy Clerk __jh_____
CIVIL -- GEN                        1

EXHIBIT ___2___

PAGE____9____

The Court's analysis is governed by Fed. R. Evid. 606(b), which allows jurors to testify regarding "extraneous prejudicial information," "outside influence[s]," and "mistake," but which generally prohibits testimony on all other topics, serving the purpose of insulating the jury's deliberative process from post-verdict scrutiny. See United States v. Henley, 238 F.3d 1111, 1120 (9th Cir. 2001). Rule 606(b) codified the long-standing common law rule that is succinctly stated as "[j]urors may not impeach their own verdict." United States v. Weiner, 578 F.2d 757, 764 (9th Cir. 1978) (citing McDonald v. Pless, 238 U.S. 264 (1915)).

Although Mattel argues that the Court's inquiry could be limited such that it delves into only a confirmation of the amount of damages the jury intended to award (which could be viewed as falling into the "mistake" category, upon which jurors are permitted to testify), MGA correctly argues that, given the presence of the jury instruction on the allocation of damages, any inquiry into this matter would stray far too close to – if it did not invade entirely – the territory protected by Rule 606(b): The jury's deliberative process.

Moreover, in light of the opportunity for many, if not all, of the jurors to be exposed to the substantial publicity this case has generated, as well as personal, off-the-record conversations with counsel, the Court finds that it must agree with MGA's assessment of this jury: They are hopelessly tainted by influences outside the evidence presented during the trial, the instructions given by the Court, and the arguments made by counsel. During the trial, the jurors were prohibited from reading any of the numerous press accounts of this case. After the trial, this restriction was lifted, and most, if not all, the jurors have ready access to archived press accounts of the case (as well as blog commentaries and the parties' various press releases) via the internet. Having devoted three months of their lives to the trial in this action, the Court presumes many of the jurors, like Juror No. 7, have been curious enough since the verdict was rendered to review the results of a simple on-line search. Likewise, during the trial, the attorneys were precluded from communicating with the jury; after the trial, whether the jurors speak with attorneys is left entirely up to each individual juror, and it appears that all parties are in agreement that there has been a great deal of communications with the jurors.

Mattel's request to recall the jury is **DENIED.**

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                                              2                    Initials of Deputy Clerk __jh_____

EXHIBIT ___2_____

PAGE ___10_____

# EXHIBIT 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> FILED
> CLERK, U.S. DISTRICT COURT
>
> JUL 10 2008
>
> CENTRAL DISTRICT OF CALIFORNIA
> EASTERN DIVISION            BY DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., <br><br>     Plaintiff, <br><br>    vs. <br><br> MGA ENTERTAINMENT, INC., <br><br>     Defendant. | CASE NO. CV 04-9049 SGL (RNBx) <br><br> Consolidated with <br> Case No. CV 04-09059 <br> Case No. CV 05-02727 <br><br> Hon. Stephen G. Larson <br><br> **FINAL JURY INSTRUCTIONS AS GIVEN** |
| AND CONSOLIDATED ACTIONS | |

EXHIBIT 3

PAGE 11

# JURY INSTRUCTION NO. 22

In its second claim, Mattel contends that that MGA and Isaac Larian intentionally interfered with the Inventions Agreement between Mattel and Carter Bryant. To establish this claim, Mattel must prove the following by a preponderance of the evidence:

1.      That there was a contract or contracts between Mattel and Carter Bryant;

2.      That MGA and/or Mr. Larian knew of the contract;

3.      That MGA and/or Mr. Larian intended to disrupt the performance of this contract;

4.      That the conduct of MGA and/or Mr. Larian prevented performance or made performance more difficult;

5.      That Mattel was harmed in some way; and

-24-          Case No. Case No. CV 04-9049 SGL (RNBx)
                     JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT 3
PAGE 12

1     6.      That the conduct of MGA and/or Mr. Larian was a substantial factor

2   in causing Mattel's harm.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _3_

PAGE _13_

## JURY INSTRUCTION NO. 26

To establish that Mr. Bryant breached his fiduciary duty to Mattel, Mattel must prove the following by a preponderance of the evidence:

1.     That Mr. Bryant owed a fiduciary duty to Mattel;

2.     That Mr. Bryant breached his fiduciary duty to Mattel;

3.     That Mattel did not give informed consent to Mr. Bryant's conduct;

4.     That Mattel was harmed in some way; and

5.     That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

Once a party assumes a fiduciary duty to another, that party is obligated to act on behalf of the other party, to hold the interest of the other paramount over his own interests, and to take no action that would further his interests over the other person's interest.

-29-     Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

EXHIBIT 3
PAGE 14

## JURY INSTRUCTION NO. 27

To establish that Mr. Bryant breached his duty of loyalty to Mattel, Mattel must prove the following by a preponderance of the evidence:

    1.    That Mr. Bryant was Mattel's employee;

    2.    That Mr. Bryant knowingly acted against Mattel's interests while he was employed by Mattel;

    3.    That Mattel did not give informed consent to Mr. Bryant's conduct;

    4.    That Mattel was harmed in some way; and

    5.    That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

An employee owes his or her employer a duty of loyalty. The scope of the employee's duty varies with the nature of the employee's relationship with his employer.

EXHIBIT 3

PAGE 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### JURY INSTRUCTION NO. 28

As a matter of law, Carter Bryant owed both a fiduciary duty and duty of loyalty to Mattel.

Mr. Bryant's fiduciary duty to Mattel is predicated upon paragraph 1(a) of the Inventions Agreement and is related to Mr. Bryant's obligation to keep Proprietary Information confidential.

Section 1(a) of the Inventions Agreement provides:

"I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."

The Inventions Agreement defines the term "Proprietary Information" as follows:

-31-        Case No. Case No. CV 04-9049 SGL (RNBx)

1  "'Proprietary Information' means any information (including formula,

2  pattern, compilation, device, method, technique or process) that derives

3  independent economic value, actual or potential, from not being generally known

4

5  to the public or to other persons who can obtain economic value from its disclosure

6  or use, and includes information on the Company, its customers, suppliers, joint

7  ventures, licensors, licensees, distributors, and other persons and entities with

8

9  whom the Company does business."

10

11

12  As a matter of law, Mr. Bryant breached his duty of loyalty to Mattel when

13  he entered into a contract with MGA, Mattel's competitor, while still employed by

14  Mattel, to produce a line of fashion dolls to be marketed in direct competition with

15

16  Mattel's products.

17

18  At the same time, merely seeking employment from a competitor, and a

19

20  failure to notify an employer of a decision to seek new employment until a

21  decision is final, does not constitute a breach of duty of loyalty.

22

23

24

25

26

27

28

EXHIBIT ___3___

PAGE ___17___

# EXHIBIT 4

CONFORMED COPY

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      Duane R. Lyons (Bar No. 125091)
5      (duanelyons@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
7   Facsimile: (213) 443-3100

8   Attorneys for Mattel, Inc.

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

12              Plaintiff,               Consolidated With Case No. 04-9059 and
                                         Case No. 05-2727
13       v.
                                         MATTEL, INC.'S SECOND AMENDED
14                                       ANSWER IN CASE NO. 05-2727 AND
                                         COUNTERCLAIMS FOR:
15  MATTEL, INC., a Delaware
    corporation,                         1.   COPYRIGHT INFRINGEMENT;
16                                       2.   VIOLATION OF THE
                Defendant.                    RACKETEER INFLUENCED AND
17                                            CORRUPT ORGANIZATIONS
                                              ACT;
18  MGA ENTERTAINMENT, INC. a          3.   CONSPIRACY TO VIOLATE THE
    California corporation,                   RACKETEER INFLUENCED AND
19                                            CORRUPT ORGANIZATIONS
                                              ACT;
20              Plaintiff,               4.   MISAPPROPRIATION OF TRADE
                                              SECRETS;
21       v.                              5.   BREACH OF CONTRACT;
                                         6.   INTENTIONAL INTERFERENCE
22  MATTEL, INC., a Delaware                  WITH CONTRACT;
    corporation, and DOES 1-10,          7.   BREACH OF FIDUCIARY DUTY;
23                                       8.   AIDING AND ABETTING
                Defendants.                   BREACH OF FIDUCIARY DUTY;
24                                       9.   BREACH OF DUTY OF
                                              LOYALTY;
25

26                                       **PUBLIC REDACTED VERSION**

27                                              **Volume I**

28

2154363.2

                                         C7 12 c7
                                         SECOND AMENDED ANSWER AND COUNTERCLAIMS

| | |
|---|---|
| 1 | MATTEL, INC., a Delaware corporation, |
| 2 | |
| 3 | Counter-claimant, |
| | v. |
| 4 | |
| 5 | MGA ENTERTAINMENT, INC., a California corporation; ISAAC |
| 6 | LARIAN, an individual; CARTER BRYANT, an individual; MGA |
| 7 | ENTERTAINMENT (HK) LIMITED, a Hong Kong Special Administrative |
| 8 | Region business entity; MGAE DE MEXICO, S.R.L. DE C.V., a |
| 9 | Mexico business entity; CARLOS GUSTAVO MACHADO GOMEZ, an individual; and DOES 4 through 10, |
| 10 | |
| 11 | Counter-defendants. |
| 12 | AND CONSOLIDATED CASES |

10. AIDING AND ABETTING BREACH OF DUTY OF LOYALTY;
11. CONVERSION;
12. UNFAIR COMPETITION; AND
13. DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

EXHIBIT __4__

PAGE __19__

-2-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1         1.     That the Complaint be dismissed with prejudice;

2         2.     That plaintiff take nothing by reason of the Complaint against

3 Mattel and that judgment be entered in Mattel's favor;

4         3.     That Mattel recover its costs and attorneys' fees; and

5         4.     That this Court award such other and further relief as it deems

6 just and proper.

7

8                       **COUNTERCLAIMS**

9       Pursuant to the Court's Orders of January 12, 2007 and June 27, 2007,

10 and incorporating its [Proposed] Amended Complaint dated November 19, 2006,

11 Mattel, Inc. alleges as follows:

12                    **Preliminary Statement**

13         1.     For years MGA Entertainment, Inc. has engaged in a pattern of

14 stealing and using Mattel, Inc.'s property and trade secrets.  MGA's use of the

15 stolen property and trade secrets caused and continues to cause significant harm to

16 Mattel.  MGA first stole "Bratz," a fashion doll, from Mattel, and then continued

17 stealing Mattel's confidential and proprietary information to fuel MGA's growth.

18         2.     Carter Bryant conceived, created and developed Bratz designs

19 while he was employed by Mattel as a doll designer.  He concealed his Bratz work

20 from Mattel and wrongfully sold Bratz to MGA while he was a Mattel employee.

21 As MGA knows, Mattel owns the Bratz designs that Bryant made.  As the rightful

22 owner of those Bratz designs, Mattel has registered copyrights for them and seeks

23 damages arising from MGA's repeated infringement of those copyrights.

24         3.     Emboldened by the success of its illegal conduct, MGA has

25 repeated—and even expanded—its pattern of theft on numerous occasions.  For

26 example, in or about 2004, MGA decided to expand into Mexico.  To do so, and

27 operating from its Southern California offices, MGA hired away three key Mattel

28 employees in Mexico, who, on their way out, stole virtually every category of

2134363.2

-29-

EXHIBIT _____ 1

PAGE _____ 20

1  value of the benefits that MGA obtained from Bryant as a result of the work he

2  performed for or with MGA during his Mattel employment.

3       121.  Bryant's conduct has caused, and unless enjoined will continue to

4  cause, irreparable injury to Mattel that cannot be adequately compensated by

5  money damages and for which Mattel has no adequate remedy at law.  Bryant

6  specifically acknowledged in his Employment Agreement that his breach of the

7  Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be

8  entitled to injunctive relief to enforce this Agreement, in addition to damages and

9  other available remedies."  Accordingly, Mattel is entitled to orders mandating

10  Bryant's specific performance of his contracts with Mattel and restraining Bryant

11  from further breach.

### Sixth Counterclaim

### Intentional Interference with Contract

### (Against MGA, Larian and Does 4 through 10)

15       122.  Mattel repeats and realleges each and every allegation set forth in

16  paragraphs 1 through 121, above, as though fully set forth at length.

17       123.  Valid agreements existed between Mattel and Bryant, Brawer,

18  Machado, Trueba, Vargas, Brisbois and the Other Former Employees (collectively,

19  the "Mattel Employees")

20       124.  At all times herein mentioned, MGA, Larian and Does 4 through

21  10 knew that the Mattel Employees had a duty under their agreements not to work

22  for or assist any competitor of Mattel, such as MGA.  In addition, at all times

23  mentioned herein, MGA, Larian and Does 4 through 10 knew that Bryant had

24  assigned to Mattel, and was obligated to disclose to Mattel all inventions, including

25  designs and other works, created, conceived or reduced to practice during their

26  employment with Mattel.

EXHIBIT ___4___

PAGE ___21___

-66-

2154363.2

1   141. In taking the aforesaid actions, MGA, Larian and Does 4 through

2   10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's

3   rights. Accordingly, Mattel is entitled to recover exemplary damages from

4   Counter-defendants in an amount to be determined at trial.

5                           <u>**Ninth Counterclaim**</u>

6                           **Breach of Duty of Loyalty**

7                           **(Against Bryant and Machado)**

8        · 142. Mattel repeats and realleges each and every allegation set forth in

9   paragraphs 1 through 141, above, as though fully set forth at length.

10       143. As employees of Mattel, Bryant and Machado owed a duty of

11  undivided loyalty to Mattel. Pursuant to this duty, Bryant and Machado could not

12  compete with Mattel or assist a competitor of Mattel during their employment with

13  Mattel. Pursuant to this duty, Bryant and Machado were required to always give

14  preference to Mattel's business over their own, similar interests during the course of

15  their employment with Mattel.

16       144. Bryant and Machado breached their duty of loyalty to Mattel in

17  that, while employed by Mattel, they secretly aided, assisted and worked for a

18  competitor of Mattel, including without limitation by entering into agreements with

19  a Mattel competitor. As alleged above, they also breached the aforementioned duty

20  by using Mattel property and resources for the benefit of, and to aid and assist,

21  themselves personally and the competitor of Mattel.

22       145. As a direct and proximate result of Counter-defendants' wrongful

23  conduct, Mattel has incurred damages in an amount to be determined at trial.

24       146. Counter-defendants acted with malice, fraud and oppression, and

25  in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an

26  award of punitive damages against Counter-defendants in an amount to be

27  determined at trial.

28

EXHIBIT ___4___

!!54363.2

-70-   PAGE ___22___

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1         15.   That Mattel have such other and further relief as the Court may

2    deem just and proper.

3

4    DATED: July 12, 2007          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
5

6                                  By_____
7                                      John B. Quinn
                                       Attorneys for Defendant and Counter-
8                                      claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    EXHIBIT ___4___

28    PAGE ___23___

2134363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

# EXHIBIT 5

September 18, 2000

Dear Kinuyo,

I enjoyed speaking with you on the phone today about possibly ordering a supply of your Hollow Saran hair fiber.

I would like to request a sample card of the different colors available and also, if possible, a sample card of the different curl sizes available.

The company I am working with is called MGA ENTERTAINMENT, and we are located in Los Angeles, CA. You can email me with any questions at: sophiesays@hotmail.com.

Please send the sample cards, along with price information to the following address:

MGA Entertainment
Attn: Carter Bryant
1319 W. 160th St.
Gardena, CA 90247
USA

My phone number, once again, is 310-538-3615

Thank you very much,

Sincerely,

Carter H. Bryant



DEPOSITION EXHIBIT
30
11·5·04      SH

BRYANT 01200
CONFIDENTIAL

EXHIBIT 5
PAGE 24

EX 30-0001

```
✖✖✖  TRANSMISSION  REPORT  ✖✖✖

SEP-17-00 17:55    ID:3102976835          KINKOS HAWTHORNE

   JOB  NUMBER                         757

   INFORMATION  CODE              OK

   TELEPHONE NUMBER         01181334061004
   NAME(ID NUMBER)          0334061004
   START TIME               SEP-17-00 17:54
   PAGES TRANSMITTED        001     TRANSMISSION MODE       EMMR
   RESOLUTION               STD     REDIALING TIMES         00
   SECURITY                 OFF     MAILBOX                 OFF
   MACHINE ENGAGED          00'23

   THIS TRANSMISSION IS COMPLETED.

   LAST SUCCESSFUL PAGE     001
```

September 18, 2000

Dear Kinoyo,

I enjoyed speaking with you on the phone today about possibly ordering a supply of your Hollow Saran hair fiber.

I would like to request a sample card of the different colors available and also, if possible, a sample card of the different curl sizes available. We will likely be placing a large order for this hair very soon, as we will probably be using it on a new doll line.

The company I am working with is called MGA ENTERTAINMENT, and we are located in Los Angeles, CA. You can email me with any questions at: sophiesays@hotmail.com.

Please send the sample cards, along with price information to the following address:

MGA Entertainment
Attn: Carter Bryant
1319 W. 160th St.
Gardena, CA 90247
USA

My phone number, once again, is 310-538-3615

Thank you very much,

Sincerely,

Carter H. Bryant

BRYANT 01201
CONFIDENTIAL

EXHIBIT ___5___

PAGE ___25___

EX 30-0002

Inbox                                                                    Page 1 of 2



MSN Home Hotmail Web Search Shopping Money People & Chat

**Hotmail®** *sophiesays@hotmail.com*

Inbox    Compose    Addresses    Folders    Options                    Calendar    Help

### Inbox

From:     "K. Shichijyo" <uccjapan@ma.rosenet.ne.jp> Save Address - Block Sender
To:       "Bryant Carter" <sophiesays@hotmail.com> Save Address
Subject: Hollow saran hair
Date:     Mon, 18 Sep 2000 17:24:37 +0900

Reply      · Reply All      Forward      Delete      Previous      Next      Close

Dear Mr. Bryant:

Thank you very much for your new inquiry of our hollow saran hair.
As per letter attached, I am sending yu color card of our hollow
saran hair.  If you have any other questions or requests, please
feel free to contact me at any time.

Meantime, as per your fax, you will likely be placing a large
order of the hair for your new doll line.
We would like to know how much order quantiy is expected
roughly when our hollow saran hair is used on your new doll lilne.

Thank you very much again of your new inquiry and we are
looking forward to start new business with you in the near future.

Best Regards,
K. Shichijyo
* * * * * * *
UNIVERSAL COMMERCE CORP., LTD.
E-MAIL : @uccjapan@ma.rosenet.ne.jp
TEL : +81-3-3407-8110   FAX : +81-3-3486-1084


✆ Attachment: MGAEntertainment.doc (157k) -- View Attachment

*Notice*: Attachments are automatically scanned for viruses using 

Reply      Reply All      Forward      Delete      Previous      Next      Close

(Move to Selected Folder)


.../getmsg?curmbox=F000000001&a=9692945309400123171l&msg=MSG969269/18/00

BRYANT 01202
CONFIDENTIAL

EXHIBIT    5
PAGE      24

EX 30-0003

# Universal   Commerce   Corp.,   Ltd.

**Fax Transmission**

Fax 81-3-3486-1084   Tel 81-3-3407-8110

Fax To MGA Entertainment

Attn.   Mr. Carter Bryant

From   K. Shichijyo

Ref No. F-16269/00

Date   Sept. 21, 2000

Page   1/1

Dear Mr. Bryant:

Re Hollow Saran Yarn

Thank you very much for your call this morning.

As per Tel. conversation, I learned that you are going to make dolls in Hongkong. We have an representative in HK and they have curing facility in China.

If your vendor in Hongkong does not have curling facility, we will supply curl hair to your HK vendor thru our representative.

We do business with many HK doll makers and please let us know doll manufacturer name who will make dolls for you for our reference.

I am sending you one bag each of curl hair samples in 3mm 6mm 10mm 13mm and 17mm by Airborne Express today. You will receive them early next week accordingly. As informed you, we will be glad to supply you any samples for your new development and please inform us color numbers and curl sizes required. We will send our samples to you or to your HK vendor according to your requirements.

As per your information, you are going to exhibit new dolls to Toy Fair in N.Y. next year. We really hope that your new doll line will be successful and we will be more than happy to work with you on this project.

Thank you very much again and we are looking forward to your reply.

Best Regards,
K. Shichijyo

BRYANT 01203
CONFIDENTIAL

EXHIBIT   5

PAGE   27

EX 30-0004

# EXHIBIT 6

| From: | carter bryant |
|---|---|
| To: | PTreantafelles@mgae.com |
| CC: | |
| BCC: | |
| Sent Date: | 2000-10-23 21:59:22:000 |
| Received Date: | 2000-10-23 21:56:18:170 |
| Subject: | RE: BRATZ |
| Attachments: | |

Hey there Paula....just a few things....first off let me give you my new email address that I'm trying to use now instead of this one... Bryant598@cs.com
secondly, I am working fast and furiously on fabrics and everything for the packages,and what I need to know is, are we going to be bound to these fabric choices forever...? ha ha. Just need to know in case something doesn't end up working or we decide we don't like it down the line...I'm not talking drastic changes, just minor revisions. Also, some of the fabrics and colors I would like to use we have examples of but they are not exactly right. Can we put these in the packages for examples for cost? Also, does the artwork for fabrics have to be defined at this point? I think you told me before that it doesn't, which is good, because that's going to take more time.

So here's a rundown of what we plan to have for you by Friday:
1. All doll fashions designed and swatched as closely as possible, including backpacks  (4 packages)
2. All fashion packs designed and swatched as closely as possible (3 packages)
3. Backpack accessory designed and swatched into four different color ways, as closely as possible (one package)

Ok, the next thing (sorry this is so long) is can we meet Wednesday to look at Margaret's sculpt? I can't do it tomorrow as Veronica and I need to work on these packages tomorrow. She will not be coming to see the sculpt on Wednesday so that she can focus on getting these done.

that's it! Thanks again for meeting with Stephen, he's a great guy and I'm looking forward to working with him on our FAB doll line!

Carter


>From: Paula Treantafelles <PTreantafelles@mgae.com>
>To: Carter Bryant <sophiesays@hotmail.com>
>Subject: RE: BRATZ
>Date: Thu, 19 Oct 2000 15:55:11 -0700
>
>yes we are going to use saran hair for the bratz line
>
>Steve Tarmihael is coming back on Monday at 9:30am so that I can introduce
>you and the BRATZ line to him.  Can you come in and reveal yourself?  He

Confidential - For Attorney's Eyes Only

6 pgs.

Khare II
EXHIBIT NO. 165
1-25-08
R. EVANS, RMR, CRR

MGA 0052031

EXHIBIT     6
PAGE          28

EX 1765-0001

>said that he will be traveling through 11/23...ouch but maybe this is good
>enough time for us to finalize the wax and have it downgenerated in HK.  He
>said that he will need about 100 heads pulled and ready to go as soon as he
>returns.
>
>
>
>-----Original Message-----
>From: carter bryant [mailto:sophiesays@hotmail.com]
>Sent: Thursday, October 19, 2000 2:30 PM
>To: PTreantafelles@mgae.com
>Subject: RE: BRATZ
>
>
>I'm hoping you mean other dolls besides the BRATZ line....I feel we must
>use
>
>saran for production on this line.
>Carter
>
>
> >From: Paula Treantafelles <PTreantafelles@mgae.com>
> >To: Samuel Wong <SWONG@mgae.com>, Mercedeh Ward <MWard@mgae.com>, Carter
> >Bryant <sophiesays@hotmail.com>
> >CC: Judy Rich <JRich@mgae.com>, Franki Tsang <FTSANG@mgae.com>, Cecilia
> >Kwok <CKwok@mgae.com>
> >Subject: RE: BRATZ
> >Date: Thu, 19 Oct 2000 08:49:15 -0700
> >
> >I apologize if my email below mislead you.  We may not use Saran for all
> >coming dolls but we will root all of our rooting masters here in LA on
>out
> >new rooting machine
> >
> > >  -----Original Message-----
> > > From:   Samuel Wong
> > > Sent:   Thursday, October 19, 2000 3:32 AM
> > > To:     Paula Treantafelles; Mercedeh Ward; Carter Bryant
> > > Cc:     Judy Rich; Franki Tsang; Cecilia Kwok
> > > Subject:  RE: BRATZ
> > >
> > > Dear All,
> > >
> > > Do you really want to use Saran hair for future production. My concern
> >is
> > > : the price of the hair is quite hair compare with our current local
>PP
> > > hair and the order leadtime ( one months vs local hair ,two weeks)
> > >
> > > please advise.
> > >

Confidential - For Attorney's Eyes Only

EXHIBIT _____6_____

PAGE _____29_____

MGA 0052032

EX 1765-0002

> > > Thanks & best regards
> > > Samuel (10/19/00)
> > >
> > >
> > >
> > >   -----Original Message-----
> > > From:  Paula Treantafelles
> > > Sent:  Thursday, October 19, 2000 1:44 AM
> > > To:    Samuel Wong; Mercedeh Ward; Carter Bryant
> > > Cc:    Judy Rich; Franki Tsang; Cecilia Kwok
> > > Subject:     RE: BRATZ
> > >
> > > Samuel
> > > Carter (our designer on Bratz) already sought information on this
> > > hair. I have sent all of this information to you by fax. In the
> >meantime
> > > we ordered one spool of a few colors in both straight and curly hair.
> >We
> > > just bought a rooting machine and we are hiring a vendor who will work
> >as
> > > much as we need him to root heads for BRATZ (of course he will be
> > > responsible for supporting us with rooting masters for all skus as
> > > needed).
> > >
> > > Please let me know if you have any questions.
> > >       -----Original Message-----
> > >       From:  Samuel Wong
> > >       Sent:  Wednesday, October 18, 2000 2:45 AM
> > >       To:    Mercedeh Ward
> > >       Cc:    Judy Rich; Franki Tsang; Cecilia Kwok; Paula
> > > Treantafelles
> > >       Subject:     RE: BRATZ
> > >
> > >       Mercedeh,
> > >
> > >       For all our current dolls, we are using local PP hair which
> > > the price is lower and leadtime is short and easy control by factory
> >on
> > > the delivery as the hair supplier is also in China. Actually, we are
> > > checking the cost and leadtime of the hair based on your information
> > > provided to us on Saran,
> > >       you can make final decision after we gathered all the
> > > information for you.
> > >
> > >       thanks & best regards
> > >       Samuel (10/18/00)
> > >
> > >          -----Original Message-----
> > >       From:  Mercedeh Ward
> > >       Sent:  Wednesday, October 18, 2000 12:50 AM
> > >       To:    Cecilia Kwok; Paula Treantafelles

Confidential - For Attorney's Eyes Only

EXHIBIT ___6___

PAGE ___30___

MGA 0052033

EX 1765-0003

```
> > >          Cc:   Samuel Wong; Judy Rich; Franki Tsang
> > >          Subject:    RE: BRATZ
> > >
> > >          Cecilia;
> > >
> > >          Could you please explain why we can not use Saran.
> > > This Toy is to be really special and the hair quality is important.
> > >
> > >          Regards;
> > >          Mercedeh
> > >
> > >          -----Original Message-----
> > >          From:  Cecilia Kwok
> > >          Sent:   Tuesday, October 17, 2000 12:48 AM
> > >          To:    Paula Treantafelles
> > >          Cc:    Samuel Wong; Judy Rich; Mercedeh Ward;
> > > Franki Tsang
> > >          Subject:    RE: BRATZ
> > >
> > >          Dear Paula,
> > >
> > >          Please see my comment below.
> > >
> > >          Regards,
> > >          Cecilia
> > >
> > >          -----Original Message-----
> > >          From:  Paula Treantafelles
> > >          Sent:   Tuesday, October 17, 2000 7:31 AM
> > >          To:    Cecilia Kwok; Samuel Wong; Franki Tsang
> > >          Cc:    Judy Rich; Mercedeh Ward
> > >          Subject:    BRATZ
> > >
> > >          I apologize that I wasnt able to release the
> > > attached information on Friday.
> > >
> > >          These are the PDF's for BRATZ:
> > >
> > >          << File: BRATZ DOLL PACK PDF.doc >>  << File: BRATZ
> > > FASHION PACK PDF.doc >>  << File: BRATZ HAIR PACK PDF.doc >>
> > >          [Cecilia]  Here is HK comment for the PDF.
> > >          - For the Doll Packs : The assortment is 4 different
> > > dolls & the master carton will be 6 pcs.  Are you going to have
> >2:2:1:1
> > >or
> > > 3:1:1:1 assortment?
> > >          - The hair material will be local PP instead of the
> > > "saran hair material"
> > >          - "Feet" will not be roto-cast.  The body, arms,
> > > legs, shoes will be injection molded.  Only the head will be
> >roto-cast.
```

Confidential – For Attorney's Eyes Only

MGA 0052034

EXHIBIT ___6___

PAGE ___31___

EX 1765-0004

> > >          .   . .-- The clamshell size for the hair pack & fashion
> > > packs are the same.  However, the master pack are different, one is
> 12/4
>
> > &
> > > the other is 48/12.  Please confirm.
> > >               - Please advise if the doll can be standable by
> > > itself.
> > >
> > >             Mercedeh, Judy and Cecilia-
> > >          . These are working schedules I put together for each
> > > of the above.  Isaac's target PS is 4/1.  At this point I am confident
> > > that we will not be able to support anything earlier than a 5/1 PS.
> > > Please keep in mind that we only started developing this line one
> month
> > > ago.
> > >
> > >          Please review and advise your thoughts/comments.
> > >           << File: BRATZ templates.xls >>
> > >          [Cecilia]  HK need a CLEAR direction on the PS - 4/1
> > > or 5/1.  As per the PD status report & the PDF, the PS is 4/1.
> However,
> > > the templates are based on 5/1.  ALL PS SHOULD BE CONSISTENT.  We
> don't
> > > want to waste any time on doing templates with different PS.  Please
> > > confirm the PS before fixed the templates.
> > >          According to your templates, HK CANNOT SUPPORT THE
> > > SAMPLES FOR THE JAN TF SAMPLES AS THE WAX RELEASED ON 11/27.
> > >  .        Will develop the template after the confirmation of
> > > the PS.
> > >
> > >
> > >          -Please note I released the rough casted body to you
> > > last Friday.  Please note that the doll is expected to be between 9"
> to
> > > 9.5" tall
> > >          [Cecilia]  Noted and will have prelim quote based on
> > > this.
> > >
> > >          -Per our conference call last week I promised to
> > > advise of the most expensive fabric construction I expect to use in
> doll
> > > packs.  The plan was for you to assume this expensive material for all
> > > pieces of clothes I sent you so that the ballpark quote will reflect a
> > > "worse case" scenario.  Please assume that this most expensive fabric
> is
> > > TWILL
> > >          [Cecilia]  Noted and will have prelim quote based on
> > > this.
> > >
> > >          However.. I plan to send you a softgoods swatch
> > > package with all proper fabric constructions, color and fabric art by

Confidential - For Attorney's Eyes Only

EXHIBIT _____ 6

PAGE _____ 32

MGA 0052035

> > > 10/30 (as noted in the schedule above).  This information will allow
>you
> > > to generate the most accurate costing information.  Do you think its
> > > better to wait 2 weeks and receive the most accurate fabric
> > > construction/art information.
> > >          [Cecilia]  HK will get the prelim quote with TWILL
> > > as fabric to have the idea of the cost first.  Will have the revised
> >quote
> > > upon receipt of your final fabric & pattern instruction.
> > >
> > >           My concern is that we are going to over design and
> > > find that our designs are over our target costs.  Ouch!
> > >
> > >           Please let me know if you have any questions.
> > >
> > >
> > >
> >
>_____
>Get Your Private, Free E-mail from MSN Hotmail at http://www.hotmail.com.
>
>Share information about yourself, create your own public profile at
>http://profiles.msn.com.

_____

Get Your Private, Free E-mail from MSN Hotmail at http://www.hotmail.com.

Share information about yourself, create your own public profile at
http://profiles.msn.com.

Confidential - For Attorney's Eyes Only

EXHIBIT ___6___

PAGE ___33___

MGA 0052036

EX 1765-0006

# EXHIBIT 7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                          Date: May 21, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
==========================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Jim Holmes | Theresa Lanza |
| Courtroom Deputy Clerk | Mark Schweitzer |
| | Court Reporters |

ATTORNEYS PRESENT FOR CARTER BRYANT:     ATTORNEYS PRESENT FOR MATTEL:

Christa M. Anderson                      John B. Quinn
Matthew M. Werdegar                      Michael T. Zeller
                                         Jon D. Corey

ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

Thomas J. Nolan
Jason D. Russell

PROCEEDINGS:   ORDER RE MOTION FOR RECONSIDERATION

               ORDER RE THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
               JUDGMENT

EXHIBIT ___7___

PAGE ___34___

This matter is before the Court on the parties' motions for partial summary judgment and Carter Bryant's and MGA's motion for reconsideration.[1]  The motions were heard on April 22, 2008, and again on May 19, 2008.  On April 25, 2008, the Court issued an order granting in part, denying in part, and deferring in part the motions for partial summary judgment.

The Court now issues the following further rulings regarding the motions for partial summary judgment and the motion for reconsideration.

## MOTION FOR RECONSIDERATION

The motion for reconsideration is based on the new California Supreme Court case of <u>City of Hope Nat'l Medical Center v. Genentech, Inc.</u>, 43 Cal. 4th 375 (2008).  After fulling considering <u>City of Hope</u>, however, the Court finds that the case has little applicability to the present case and does not compel a conclusion regarding the existence of a fiduciary duty contrary to that reached by the Court.

<u>City of Hope</u> addresses whether a fiduciary duty can arise (or fail to arise) by <u>operation of law</u> due to the existence of confidential contractual relationship.  At issue in this case is whether the parties' agreement itself created a fiduciary duty.  Under California, these two situations that may give rise to a fiduciary duty -- operation of law or agreement -- are distinct, and California courts have long distinguished between the two.  Despite this clear distinction, Carter Bryant's partial summary judgment papers conflated these principles, as does the motion for reconsideration.

Related to these distinct legal concepts, there is a crucial factual difference between the present case and <u>City of Hope</u>.  The contract at issue in <u>City of Hope</u> did not contain any language that even arguably gave rise to a fiduciary duty.  In contrast, the contract at issue here, for the reasons set forth in the Court's April 25, 2008, Order, sets forth language that does give rise to such a duty.

MGA contends that this Court committed reversible error by holding that the language set forth in ¶ 1(a) of the Inventions Agreement created a fiduciary duty.  <u>City of Hope</u>, MGA contends, held that "the entrusting of secret or confidential information to another 'does not compel the imposition of fiduciary duties by operation of law.'"  Motion at 6 (quoting <u>City of Hope</u>).  As alluded to above, this argument, as well as the other two raised by MGA in the motion, overlooks both the differing contractual language in <u>City of Hope</u> and the present case, as well as the related legal distinction regarding the creation of fiduciary relationships.  Factually, the Inventions Agreement

---

[1]  At the hearing, upon representation of settlement between Mattel and Carter Bryant, and pursuant to the stipulation between Mattel and Carter Bryant, the motion is moot as to Carter Bryant.  However, the Court considers the motion because MGA has joined in the motion on the issue of fiduciary duty.  As set forth on the record, because the claims against Carter Bryant have been dismissed, the Court treats MGA as the moving party.

EXHIBIT __7__

PAGE __35__

did more than merely entrust Bryant with confidential information; rather, as noted in the Court's first summary judgment Order, the Inventions Agreement explicitly conferred upon Bryant, and Bryant explicitly agreed to accept, a "position of trust" vis-à-vis that confidential information.  No such explicit undertaking is found in the agreement at issue in City of Hope, the relevant portions of which are set forth in the California Supreme Court opinion.

On that note, the portion of City of Hope upon which MGA relies to support its argument addresses when a fiduciary relationship arises by operation of law.  This argument is merely a continuation of Bryant's conflation, first appearing in Bryant's moving and opposition summary judgment papers, of fiduciary relationships that are created by contract and those that arise as a matter of law.  The Court's summary judgment holding clearly rests on the former; the arguments raised on reconsideration are premised on the latter.  Compare City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002) (cited by the Court and noting that a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . .") with City of Hope, 43 Cal.4th 375, ___, 75 Cal. Rptr.3d 333, 347 (relied on by Bryant for the proposition that the entrusting of confidential information "does not compel the imposition of fiduciary duties by operation of law") (emphasis added).

Although the majority of the motion for reconsideration is unmeritorious, it raises important issues, which the Court must address, regarding the scope of the fiduciary duty created, as well as the breach thereof.

Although the parties argued at length as to whether the Inventions Agreement gave rise to a fiduciary duty, they did not focus on the scope of the fiduciary duty that was created.  As noted in the Court's April 25, 2008, Order, the Court held Bryant had undertaken such a duty:

> Bryant . . . owed a fiduciary duty to Mattel by virtue of the
> language set forth in ¶ 1(a) of the Inventions Agreement.  Id. ("The
> value of the Proprietary Information depends on it remaining
> confidential.  The Company depends on me to maintain that
> confidentiality, and I accept that position of trust.").

April 25, 2008, Order at 5.

The Court also concluded that Bryant had breached that duty:

> [T]he undisputed facts establish that Bryant breached his fiduciary duty
> to communicate his inventions to Mattel when, rather than doing so, he
> secretly entered into a contract with Mattel's competitor, while still
> employed by Mattel, to produce a line of fashion dolls to be marketed in
> direct competition with Mattel's products.

EXHIBIT _____7_____

PAGE _____34_____

Id. at 6.

Upon re-examination of the Inventions Agreement, however, although the Court can conclude that, as a matter of law, Carter Bryant agreed to undertake a fiduciary duty vis-à-vis Mattel's confidential information, the Court cannot make the same conclusion -- as a matter of law -- regarding whether the fiduciary duty extends beyond Mattel's confidential information.

The language creating the fiduciary relationship appears in the section of the Inventions Agreement related to "Trade Secrets" and "Proprietary Information," and is preceded by language (in the same sentence) that Mattel depends upon employees to "maintain that confidentiality." Just above the signature line of the Inventions Agreement, reference is made again to "IMPORTANT OBLIGATIONS OF TRUST," but that language is clearly meant not to create new obligations, but rather to alert the employee that those obligations are created elsewhere within the agreement.

The question of whether an agreement creates a fiduciary duty is generally a question of fact, although a Court may resolve the question as a matter of law where the relevant facts are uncontroverted. See City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1051 (N.D. Cal. 2002); GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc., 83 Cal.App.4th 409, 417 (2000). Here, although the Court concludes as a matter of law that the Inventions Agreement imposed a fiduciary duty as to Mattel's confidential information, it cannot reach a similar conclusion regarding any broader duty based on the undisputed facts.

Accordingly, the Court **VACATES** the above-quoted language from its April 25 Order finding that Bryant breached his fiduciary duty and leaves the determination of whether Bryant's fiduciary duty beyond Mattel's confidential information as an issue for trial.[2]

One more point raised in the motion for reconsideration is worthy of note. Although Carter Bryant has been dismissed from the case, he raised at least one issue in his motion, in which MGA has not joined, that should not pass without comment by this Court.[3] Clearly, and perhaps understandably, counsel for Carter Bryant were disappointed by the Court's rulings as set forth in the first summary judgment order.[4]

---

[2] The Court also notes that its previous holding necessarily rested on a finding that the materials provided to MGA were indisputably Mattel's property. As set forth in section I, relating to the summary judgment breach of contract issue, that conclusion cannot be drawn as a matter of law on the undisputed facts, and thus summary judgment may not appropriately be granted.

[3] Upon the Court's expression of concern regarding this issue at the hearing on this matter, counsel for MGA explicitly disavowed any joinder in this part of Bryant's motion.

[4] The Court addresses this part of the Order to counsel because counsel are officers of the Court and authors of the comment at issue. The Court also references "counsel" in the plural rather than the singular because all counsel -- author, editor, and signatory -- who were involved in this comment bear responsibility therefor.

Initials of Deputy Clerk: jh
Time:  2/52

EXHIBIT ___7___

PAGE ___37___

However, in addressing what they saw as the deficiencies in the Court's Order, counsel painted with far too broad a brush. Rather than focus the Court's attention on a discrete issue -- or even a number of discrete issues -- counsel resorted to broad language incorporating every argument raised·in their summary judgment papers and, without articulated foundation, impugns the integrity of this Court's deliberative process. Nowhere is this more clear than in footnote 7 of the motion for reconsideration; accordingly, the Court's discussion focuses on that portion of the motion, which reads as follows:[5]

> In deciding Mattel's motion for summary judgment, the Court should have applied this standard in Bryant's and MGA's favor. On this issue, and many others, the Court has failed to do so, instead accept Mattel's views of disputed facts and ignoring material factual disputes. Indeed, the Court declined to address objections to evidence, apparently and summarily sustaining all Mattel's objections while denying all Bryant's. Bryant will not reiterate here all of the disputed facts and issues precluding summary judgment in Mattel's favor, which already appear in his (and MGA's) summary judgment briefing and supporting papers.

Motion at 11 n.7.

With this footnote, counsel first takes issue with the Court's application of the summary judgment standard, of which counsel and the Court are well aware. This standard requires the Court to view the evidence in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of the doubt of both any disputes of fact and all reasonable inferences to be drawn from the evidence. Nevertheless, the Court's focus is on **material** facts, and the determination of what constitutes a material fact is shaped by legal rulings made by the Court. Some facts that seem material to the parties under their legal theories become immaterial in light of the Court's rulings that reject those theories.

In footnote 7, counsel misrepresents the Court's treatment of the evidence offered in support of and in opposition to the three motions for partial summary judgment. Bryant states that the Court "apparently summarily sustain[ed] all Mattel's objections [and] den[ied] all Bryant's [evidentiary objections]." Id. However, the Court merely noted that, where a ruling necessarily relied upon evidence to which parties had made objections, the objections thereto were implicitly overruled:

---

[5] Footnote 7, however, is not the only offending portion of the motion for reconsideration. See e.g., Motion at 2 n.1 (referring to "the Order's other errors, including misapplication of the summary judgment standard," stating that those errors "will also require correction," but noting that the motion "does not discuss those flaws in detail"); motion at 9 n.5 (incorporating unspecified portions of his summary judgment briefing).

MINUTES FORM 90
CIVIL -- GEN

Page 5

Initials of Deputy Clerk: jh
Time: 2/52

EXHIBIT ___7___
PAGE ___38___

> The parties have made hundreds of objections to evidence
> offered in support of and in opposition to the motions for partial
> summary judgment. Although counsel for Bryant requested explicit
> rulings on the objections raised by Bryant, the Court declines to do so.
> To the extent that this Order necessarily relies on evidence subject to
> any party's objection, the objections are implicitly overruled.

April 25, 2008, Order at 1-2. This is a vastly different statement than that made by counsel.
Counsel's characterization of the Court's ruling implies that the Court, without inquiry into the
merits of Bryant's objections, arbitrarily denied them all. The Court's Order merely recognizes
that, by operation of law, to the extent a court relies upon objected-to evidence, and where, as
where, the evidence must be admissible to be relied upon for such ruling, any objections raised
thereto are implicitly overruled.

In addition to mounting an overly broad -- and baseless -- attack on the integrity of the
Court's deliberative process on a grand scale, counsel fail to support the more narrow point they
appear to be making in footnote 7. Footnote 7 is appended to text that takes issue with the Court's
conclusion that Bryant did nothing more than merely "prepare to compete" with his employer and,
thus, in Bryant's view, did not breach his duty of loyalty or fiduciary duty. See Motion at 10.

Although the footnote does not alert the Court to any particular material facts -- disputed or
undisputed -- which counsel contend were overlooked by the Court, the text to which the footnote
is appended provides valuable clues on this issue. From this text, the Court's attention is directed
to Bryant's Opposition at 23-24. The Court notes that the pages of that document refer to no
factual contentions; rather, those pages are devoted to legal arguments and conclusions.
However, reading further in the opposition, at page 29, the Court finally encounters a citation to the
facts upon which counsel rely. They reference "SGI 151" and SGI "154-156".

Although obvious to counsel who practice in this district, and certainly to counsel of record
here, to guide the uninitiated, the Court notes that in a summary judgment opposition filed in this
Court, "SGI" clearly refers to the "Statement of Genuine Issues" filed by a party opposing a
summary judgment motion. See Local Rule 56-2. Referring to that document, found at docket
# 2778, one finds that material facts are numbered sequentially, and that "SGI 151" refers to the
fact numbered "151." The subsequently cited facts, "154-156," not surprisingly, are found on the
page that follows.

Having thus traversed this far to ascertain the material facts upon which counsel relies for
its sweeping criticism of the Court's deliberative process, the Court notes those facts below.

Bryant signed the MGA contract on October 4, 2008, and gave notice of his resignation to
Mattel the same day. SGI 151. Before Bryant left Mattel, he told various Mattel employees,
including managerial employees, that he was going to start his own business as a freelance
designer, working on his own doll line as an independent contractor. SGI 154. Mattel's exit
interview form for Bryant reflects that during his exit interview, he told Mattel's HR representative,

EXHIBIT ____7____

PAGE ____39____

Sandy Yonemoto, that he was leaving for a new job as a "business owner" in "illustration/product design" because an "[o]pportunity arose -- had to take it." SGI 155. Bryant did not tell anyone at Mattel that he was leaving Mattel to work with a non-competitor, nor did Mattel inquire. SGI 156.

In accordance with the summary judgment standard, the Court viewed these facts in the light most favorable to Bryant. However, on the "preparations to compete" point, these facts are not material. They relate to the circumstances of his departure; essentially, Bryant's point is that he did not lie to Mattel when he left. Although this may well be true, the circumstances surrounding the announcement of his resignation and the last days of his employment with Mattel tell only part of the story.

Even assuming Bryant gave notice of his resignation to Mattel the same day he signed his contract, it is uncontroverted that he continued working for Mattel after that date; so Bryant's fact, which tends to imply that he made a clean break with Mattel the moment he established a contractual relationship with MGA, becomes immaterial when viewed in connection with the uncontroverted fact that he continued working for Mattel after he signed his MGA contract, as the latter fact neutralizes the implication presented by the former fact when it stood alone. Additionally, notwithstanding the fact that Bryant gave notice of his resignation the same day he signed his contract, the substance of his contract remains the same, including Bryant's agreement to begin working for MGA on a "top priority" basis, as does the undisputed fact that he entered into a contract with Mattel's competitor to produce a competing product while he was still employed by Mattel.

Moreover, the fact that he gave Mattel various descriptions of what he intended to do professionally *in the future*, any one of which might imply that he was leaving to pursue independent interests that would compete with or had a tendency to compete with Mattel, similarly does not detract from his past and/or then-present actions, or the fact that he was already under contract to compete with Mattel.

Thus, counsel's criticism of the Court's deliberative process is both overly broad and unfounded. Perhaps footnote 7 should come as no surprise to the Court. The parties in this action are engaged in what they themselves have described as high-stakes "corporate warfare." However, whatever the rules of engagement may be for such warfare, those rules are decidedly **not** representative of the standard of conduct which the parties -- and their counsel -- should look to for guidance as to how they should conduct themselves in or before this Court.

Counsel for Carter Bryant, and indeed, all counsel in this case and who practice before this Court, are strongly urged to concisely and precisely articulate their requests for relief in a manner that refrains from the unintentional impugning of the integrity of the Court's deliberative process. Counsel for all parties are reminded that this Court has extended to all counsel and all parties a similar professional courtesy.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** the motion for

MINUTES FORM 90
CIVIL -- GEN                          Page 7                  Initials of Deputy Clerk: jh
                                                             Time:  2/52

EXHIBIT _1_
PAGE _40_

reconsideration. The Court **VACATES** that portion of its April 25, 2008, order that found, as a matter of law, that Bryant breached his fiduciary duty.

## MOTIONS FOR PARTIAL SUMMARY JUDGMENT

### I. BREACH OF CONTRACT

Mattel seeks summary judgment on its breach of contract claim. Resolution of the breach of contract issue is largely an issue of timing.

There are undisputed facts regarding the timing of the creation of three categories of materials, but there are factors regarding each of these three categories that preclude a grant of summary judgment at this time.

Specifically, it is uncontroverted that four drawings (each with a color and a black-and-white version) of dolls in evening wear, were created by Bryant during the period of his employment with Mattel. However, the scope of the rights that may be assigned to Mattel under the Inventions Agreement is unclear in light of the larger disputed factual issue regarding the remaining Bratz drawings.

It is also undisputed that, during the period of his employment, Bryant created a dummy doll, anticipating it would used in his pitch of Bratz to MGA. However, this dummy is apparently no longer in existence, and therefore the scope of any rights owned by Mattel cannot be ascertained from the undisputed facts.

Finally, it is undisputed that a drawing by Bryant, from which the sculpt of the Bratz doll was made, was created during the period of Bryant's employment with Mattel. However, the record also reflects that this drawing was made on the basis of an earlier sculpt, and the record is not entirely clear as to who had input into that sculpt, nor is it clear what, if any, legal conclusions the Court could draw from a clear record on this issue.

Additionally, the larger timing issue regarding the remaining Bratz drawings, as admitted by the parties, involve triable issues of fact.

Accordingly, the Court **DENIES** Mattel's motion for summary judgment as to its claim for breach of contract.

### II. COPYRIGHT INFRINGEMENT

In order to establish copyright infringement, a plaintiff must establish three elements: (1) ownership of a valid copyright, (2) the defendant's access to the original, and (3) substantial similarity between the copyrighted work and the allegedly infringing work. Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003).

Initials of Deputy Clerk: jh
Time:  2/52

EXHIBIT ___7___

PAGE ___41___

Here, Mattel asks the Court to undertake the fact-specific determination involved in the third element, aided in large part by expert testimony, when the first element is clearly in dispute. Although often summary adjudication of one element of a claim is appropriate, such is not the case here. In order to undertake the substantial similarity analysis, the Court must compare a copyrighted work with an allegedly infringing work. The Court may not perform a meaningful substantial similarity analysis without the copyrighted work that is the foundation of that analysis.

Accordingly, the Court **DENIES** Mattel's motion for summary judgment on this issue.

### III. AIDING AND ABETTING

MGA and Larian are accused of aiding and abetting Bryant's breach of the duty of loyalty and breach of fiduciary duty.

For reasons ably set forth by counsel for MGA at the hearing, the Court finds that there are triable issues of fact as to the issue of aiding and abetting any breaches of the duty of loyalty and fiduciary duty by Carter Bryant and therefore **DENIES** Mattel's motion for summary judgment on this issue.

### IV. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with contractual relations. The Court previously denied MGA's motion, noting however, that the first, third, and fifth elements were met, and that Mattel has raised a triable issue of fact as to the second element.[6]

However, upon reflection, and in light of the Court's ruling regarding the aiding and abetting claims, the Court now concludes that, although Mattel has raised a triable issue of fact regarding the third element, the Court may not at this point conclude that the undisputed facts establish the third element. The Court leaves undisturbed its ruling that Mattel has raised a triable issue of fact as to the second element.

As set forth above, Mattel has also raised triable issues of fact regarding its claim for breach of contract, the fourth element.

Despite these minor changes in the Court's previous ruling, the disposition of this portion of

---

[6] The elements of a claim for intentional interference with contractual relations are stated as (1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50 Cal.3d 1118, 1126 (1990)).

EXHIBIT  7

PAGE  42

MGA's motion remains unchanged:  MGA's motion is **DENIED** to the extent it seeks summary judgment on Mattel's claim for intentional interference with contractual relations.

## V. UNFAIR COMPETITION

As noted by counsel for MGA at the May 19, 2008, hearing, the Court's first summary judgment left unaddressed Mattel's statutory unfair competition claim to the extent that is based on fraudulent conduct.  Mattel did not contend in opposition to MGA's motion for partial summary judgment that this claim was based on any fraudulent conduct.

In its first summary judgment order, the Court eliminated two bases for Mattel's statutory unfair competition.  See April 25, 2008, Order (referring to the unfair competition claim to the extent it is based on copyright infringement and to the extent it is based on unfair conduct).  The Court now holds that this third basis can also be eliminated at this time.

## VI. STATUTE OF LIMITATIONS

At the second hearing on the motions for partial summary judgment, for the first time, counsel for MGA referenced evidence in support of its statute of limitations argument, attached to a declaration that had not been served on opposing counsel and that had been filed earlier the same afternoon. Counsel thereafter made legal arguments regarding the conclusions to be drawn from this evidence.

Mattel had little opportunity to respond to MGA's arguments, as it was not entirely clear at the hearing to what evidence MGA referred in making its arguments.  Accordingly, the Court has afforded Mattel the opportunity to respond to this argument and therefore **DEFERS** ruling on the statute of limitations issue until the Court has had the opportunity to review Mattel's response.

**IT IS SO ORDERED.**

EXHIBIT 7
PAGE 43

# EXHIBIT 8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES – GENERAL

Case No.   CV 04-09049 SGL(RNBx)                          Date:  April 25, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes
            Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:       ATTORNEYS PRESENT FOR MATTEL:

None Present                                None Present


ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

**PROCEEDINGS:    ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN
                PART THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT
                (IN CHAMBERS)**

      This matter is before the Court on the parties' motions for partial summary judgment.  The
motions were heard on April 22, 2008, and the Court has set the motions for further hearing on
May 19, 2008, at 1:30 p.m.  As set forth below, the Court rules on a number of issues presented
by the motions for partial summary judgment and reserves ruling on other issues until after further
hearing on the motions for partial summary judgment and, in the case of MGA's affirmative
defenses, until after the Phase 1 trial.

      The parties have made hundreds of objections to evidence offered in support of and in
opposition to the motions for partial summary judgment.  Although counsel for Bryant requested

MINUTES FORM 90                                          Initials of Deputy Clerk: jh
CIVIL – GEN                        Page 1

EXHIBIT ___8___

PAGE ___44___

explicit rulings on the objections raised by Bryant, the Court declines to do so. To the extent that this Order necessarily relies on evidence subject to any party's objections, the objections are implicitly overruled.

## PREEMPTION

MGA and Bryant seek summary judgment in their favor as to Mattel's claims for intentional interference with contractual relations, conversion, and unfair competition, arguing that these claims are preempted by the Copyright Act. They are partially correct.

A state law is preempted by the Copyright Act where (1) the work at issue comes within the subject matter of copyright, and (2) the state law rights are "equivalent to rights within the general scope of copyright[.]" Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th Cir.1987). "If a state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claim is not preempted by the Copyright Act." Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005). Generally the Copyright Act does not preempt the enforcement of contractual rights. Id.

As to the first element, the intentional interference with contractual relations claim addresses generally an issue within the subject matter of copyright -- the underlying wrong upon which the claim is premised is Mattel's deprivation of rights to intellectual property.

As to the second element, it is clear that the tort of intentional interference with contractual relations is neither categorically preempted or categorically saved from preemption; rather, the Court must engage in a determination of whether the substance of the tort claim differs qualitatively from the copyright claim at issue. Compare Altera, 424 F.3d at 1089 (holding that a intentional interference claim was not preempted because it was based not on copyrights but on a contractual provision) with Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1144 (9th Cir. 2006) (holding preempted a singer's voice misappropriation claim was not qualitatively different from her copyright claim).

Here, to the extent that the tortious interference is premised upon MGA's alleged interference with any copyrights that Mattel may have under the Inventions Agreement, it is preempted. Such a claim is not qualitatively different from Mattel's copyright claim. However, to the extent that the claim is based on MGA's acts that may be found to have aided and abetted the breach or induced the breach of Bryant's fiduciary duty, the claim is not preempted. That claim is qualitatively different from Mattel's copyright claim.

Therefore, the tortious interference with contractual relations is preempted to the extent that it is based on Mattel's rights to Bratz. It is not preempted as to Mattel's claims for breach of fiduciary duty.

The parties' arguments regarding the conversion claim address two distinct issues: Conversion of ideas and conversion of tangible things. The Court addresses each in turn.

EXHIBIT ___8___

PAGE ___45___

Both sides acknowledge, as this Court certainly agrees, that one cannot copyright an idea.
Thus, it would seem, a claim for conversion of ideas is not subject to preemption because it is not
"within the subject matter of copyright." Del Madera, 820 F.2d at 977. MGA argues that ideas are
not subject to a claim of conversion, to which Mattel responds that such rights in ideas may be
created by contract. Mattel relies on Desny v. Wilder, 46 Cal.2d 715, 733 (1956) which,
remarkably, so holds. However, that case does not support the proposition that a breach of such
rights may be remedied by the tort claim of conversion rather than a breach of contract claim. The
law in California regarding the tort of conversion's applicability to ideas remains the same today as
in 1956: "The tort of conversion does not apply to ideas." Melchior v. New Line Productions, Inc.,
106 Cal.App.4th 779 (2003). Therefore, although this claim is not preempted, it is not actionable
as a tort claim. Accordingly, summary judgment in favor of MGA and Bryant is granted as to this
particular claim.

Mattel also argues that its conversion claim is not preempted to the extent that it seeks the
return of tangible things, most notably the original Bratz drawings. This claim is "within the subject
matter of copyright," but the state rights go beyond the rights protected by the Copyright Act by
allowing for the return of property.

At oral argument, counsel for MGA argued that Mattel seeks the rights that the drawings
represent, not the "paper and ink" of which those drawings are comprised. Mattel disagreed with
that interpretation, noting that it seeks the return of the original drawings and certain sculpts to
which it may have rights under the Inventions Agreement.

The items to which Mattel lays claim are not like the manuscript at issue in Dielsi v. Falk,
916 F.Supp. 985, 992 (C.D. Cal. 1996), or the government documents at issue in Idema v.
Dreamworks, Inc., 162 F.Supp.2d 1129, 1192-93 (C.D. Cal. 2001), both of which had value merely
for their ability to hold and convey their contents. Rather, the materials Mattel seeks are works of
art that may have value apart from the copyrights they represent or the "paper and ink" and other
materials of which they are comprised. Given the role of the drawings and sculpts in developing a
new, commercially successful line of fashion dolls, and given the role of these items in the present
litigation, the Court discerns a possible inherent value to the materials themselves.

MGA and Bryant also pressed at oral argument that Mattel had not advanced such a claim
for return of tangible items. The Court disagrees. Citing to its Complaint at ¶ 157, Mattel
contends it has long sought the return of tangible items.[1] An examination of Mattel's claim for
conversion reveals that it encompasses such a claim. Therefore, the conversion claim seeking
the return of tangible items is not preempted. MGA and Bryant's motions for summary judgment
on this issue are therefore denied.

To the extent that Mattel's statutory unfair competition claim, discussed more fully below, is

---

[1] From a review of the record, it is clear to the Court that Mattel intended to
cite ¶ 157 of its Amended Answer and Counterclaims, not its Complaint.

EXHIBIT ___8___

PAGE ___46___

based on copyright infringement, it is preempted, and the Court grants summary judgment in favor
of MGA on this issue.

## STATUTE OF LIMITATIONS

The Court heard argument at length on the statute of limitations issue. Although it is not
entirely clear, it appears to the Court from the hearing and from MGA's Rule 56(f) affidavit, that
there remain outstanding discovery matters that may have the potential, if resolved in MGA's
favor, to factor into the inquiry into the determination of the date of the accrual of any claims
against Bryant and/or MGA. Accordingly, the Court defers ruling on the issue of statute of
limitations at this time.

## INVENTIONS AGREEMENT

The Court addressed many issues of the enforceability of the Employee Confidentiality and
Inventions Agreement in its July 17, 2006, Order. The Court finds no good reason to revisit or
revise that Order.

Bryant argues that the Inventions Agreement is ambiguous on the issue of whether it
covered anything other than "inventions" as that term is used in patent law. Here, Bryant was a
fashion designer. He signed an agreement that assigned his "inventions" to Mattel. "Inventions"
is defined by the agreement to include "designs," which was undeniably the focus of Bryant's
employment with Mattel. In addition to assigning all rights to Bryant's "inventions" (i.e., "designs")
to Mattel, the agreement also assigned to Mattel "all [Bryant's] right, title, and interest in any . . .
copyrights . . . and copyright applications based [on those inventions]".

In order to conclude that the Inventions Agreement is ambiguous on the issue of whether it
would include any copyrightable drawings or doll designs developed by an employee, the Court
would have to read out of the agreement explicit terms assigning to the employer the rights to
"designs," "copyrights," and "copyright applications." The Court is required to read the contract as
a whole and, where possible, give effect to all its terms. Cal. Civ. Code § 1641 ("The whole of a
contract is to be taken together, so as to give effect to every part, if reasonably practicable, each
clause helping to interpret the other."). To accept the interpretation advanced by Bryant, the Court
would have to disregard this bedrock principle of contract construction by ignoring an explicit
assignment by the employee to the employer of copyrights. The interpretation advanced by
Bryant is therefore not reasonable, and the Court finds that the Inventions Agreement is not
ambiguous on the issue of its scope with respect to copyrightable materials.

The Inventions Agreement explicitly conveys to Mattel an employee's interest in any
copyrights or copyright applications. Assuming copyrightability and the resolution of certain (as
yet unresolved) issues of timing of creation and/or alteration in Mattel's favor, the original Bratz
drawings clearly fall within the scope of the Inventions Agreement.

Moreover, the Inventions Agreement incorporates, and therefore does not violate, Cal.

MINUTES FORM 90                                                        Initials of Deputy Clerk: jh
CIVIL -- GEN                              Page 4

EXHIBIT _____ 8 _____

PAGE _____ 47 _____

Labor Code § 2870. Pursuant to that statute (and its incorporation in the Inventions Agreement), because the subject matter at issue -- the Bratz dolls -- relate to Mattel's business of marketing fashion dolls, the factual question of whether Bryant worked on them on his own time, rather during his working hours at Mattel, is not relevant.

MGA argues that contracts of adhesion are unenforceable if they are either outside the scope of the parties' expectations or they are substantively unconscionable. The Court previously determined that the Inventions Agreement was not substantively unconscionable, and now determines that it is not outside the scope of the parties' expectations. As noted above, Bryant was a designer, and the plain language of the Inventions Agreement assigns his "designs" to his employer. Objectively, therefore, it would not be surprising that Mattel would lay claim to Bryant's rights to any doll or doll fashions he designed during the period of his employment with Mattel. Moreover, undisputed evidence establishes that Bryant's subjective understanding of the contract was that it transferred at least some of his rights to Mattel.

Bryant also argues that his actions went no further than lawful preparations to compete with his employer. The undisputed facts, however, tell a different story: Bryant directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel.

The Court grants summary judgment in favor of Mattel on the issue of the enforceability of the Inventions Agreement and the issue of applicability of the Inventions Agreement to any Bratz-related "inventions" (including any designs, improvements, ideas, concepts, and copyrightable subject matter) that he is found to have created during the period of his employment with Mattel.

## DUTY OF LOYALTY AND FIDUCIARY DUTY

Carter Bryant, like all other California employees, owed a duty of loyalty to Mattel while employed there. See Cal. Labor Code § 2863. The undisputed facts establish that he breached this duty by entering into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products. See Huong Que, Inc. v. Luu, 150 Cal.App.4th 400, 414 (2007) ("The duty of loyalty is breached, and the breach may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer.") (internal quotation marks and citation omitted).

Bryant also owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement. Id. ("The value of the Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."). Under California law, a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . ." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002). The Inventions Agreement imposed such a duty on Bryant.

EXHIBIT  6

PAGE  46

At the hearing on this matter, counsel contended that a required element for imposing a
fiduciary duty -- that the party with the duty be in a superior position to the party to whom the duty
is owed -- was missing. That element is described as follows: "[T]he essence of a fiduciary or
confidential relationship is that the parties do not deal on equal terms, because the person in
whom trust and confidence is reposed and who accepts that trust and confidence is in a superior
position to exert unique influence over the dependent party." City Solutions, Inc. v. Clear Channel
Communications, Inc., 201 F.Supp.2d 1048, 1050 (N.D. Cal. 2002) (internal quotation marks and
citation omitted). The "superior position" to which California courts refer in this context is not
superior bargaining power -- a position on which Mattel would apparently have the edge -- but
rather it refers to a superior position vis-à-vis the duty imposed. Here, because the duty imposed
upon Bryant was essentially to police his own actions by maintaining Mattel's confidentiality and
communicating his own "inventions" to Mattel, Bryant was "in a superior position to exert unique
influence over" Mattel because he was in the best position, arguably the only one in a position, to
know of and police his actions.

As with the duty of loyalty, the undisputed facts establish that Bryant breached his fiduciary
duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into
a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion
dolls to be marketed in direct competition with Mattel's products.

Accordingly, the Court grants Mattel's motion for summary judgment on the issues of the
existence and breach of the duty of loyalty. The Court grants Mattel's motion for summary
judgment and denies Bryant's motion for summary judgment on the issue of the existence and
breach of a fiduciary duty.

In its motion, MGA argued that there can be no liability for aiding and abetting a breach of
fiduciary duty in the absence of a fiduciary duty. Because the Court has rejected this argument,
the Court denies MGA's motion for summary judgment on this issue.

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with
contractual relations.

The elements of a claim for intentional interference with contractual relations are stated as
(1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the
contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the
contractual relationship; (4) actual breach or disruption of the contractual relationship; and
(5) resulting damage. Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp.,
461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50
Cal.3d 1118, 1126 (1990)).

The undisputed facts show that the first, third, and fifth elements are met. Mattel has
raised a triable issue of fact as to the second. The fourth element may be resolved after the

EXHIBIT ___8___

PAGE ___49___

Court's further hearing on the motions for partial summary judgment. The Court therefore defers ruling on this issue.

## UNFAIR COMPETITION

MGA and Bryant's motions are granted in part and denied in part as to Mattel's unfair competition claims.

Mattel's statutory unfair competition claim, brought pursuant to Cal. Bus. & Profs. Code § 17200, survives summary judgment because Mattel has raised a triable issue of fact as to whether MGA tortiously interfered with Bryant and Mattel's contractual relationship and whether MGA engaged in commercial bribery.

However, two bases for this claim are foreclosed at this time. To the extent that the § 17200 claim is based on copyright infringement, it is preempted. To the extent that it is based on unfair conduct, summary judgment in favor of MGA is granted because the articulated unfair conduct does not approximate an antitrust violation that threatens competition. See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 186-87 (1999).

As to Mattel's common law unfair competition claim, summary judgment in favor of MGA and Bryant is granted. This claim is not, as it must be, based on the act of passing off another's goods as one's own. See Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1153 (9th Cir. 2008) (citing Bank of the W. v. Superior Court, 2 Cal.4th 1254 (1992)).

## UNJUST ENRICHMENT

Because Mattel failed to oppose this portion of Bryant's motion, the Court grants Bryant's motion for partial summary judgment on the issue of unjust enrichment.

## AFFIRMATIVE DEFENSES

Mattel seeks summary judgment as to many of the affirmative defenses asserted by the MGA entities and Carter Bryant. Most of these defenses are essentially equitable in nature, and therefore the Court **DEFERS RULING** on them until after trial. Specifically, the Court **DEFERS RULING** on the affirmative defenses of abandonment, acts and omissions of others, acquiescence, consent, estoppel, failure to mitigate, laches, unclean hands, and waiver until after trial.

For the reason set forth above in a separate section, the Court defers ruling on Mattel's motion as to the statute of limitations defense.

The final affirmative defense is based on 17 U.S.C. § 205(d). With this affirmative defense, MGA essentially contends that it is a bona fide purchaser for value of the Bratz copyrights which

EXHIBIT   8

PAGE   50

took the rights in good faith and without notice of any prior transfer of the rights therein to Mattel. As the issue is argued by the parties, the Court would be required to determine the legal issue of whether MGA's registration of the copyrights as an "assignment" constitutes "constructive notice" in the manner required to give MGA the protection of 17 U.S.C. § 205(d). In the Court's view, this is a complex legal issue that is not thoroughly addressed by the parties' briefs. Moreover, the Court notes that a trial on the merits is likely to resolve the less complex factual issue of whether MGA acted in good faith and without notice of an earlier assignment of rights. Accordingly, the Court **DEFERS RULING** on this issue until after the Phase 1 trial.

* * * *

The Court will consider a number of remaining issues at the further hearing on these motions, set for May 19, 2008. Specifically, referencing the parties' Notices of Motion, the Court will consider the following issues:

Mattel's motion: Issue (2)(c), whether there is a factual dispute regarding the timing of certain drawings and a dummy model; issue (3), whether the first-generation Bratz dolls are substantially similar to seventeen drawings and a doll sculpt drawing or blueprint created by Bryant and whether those are original, protectable works of expression; issue (5), whether MGA and Larian are liable for aiding and abetting Bryant's breaches of the duty of loyalty and fiduciary duty; and issue (6)(a) whether Mattel is entitled to summary judgment as to the affirmative defense of statute of limitations.

Bryant's motion: Whether Bryant is entitled to summary judgment as to Mattel's claim for copyright infringement; whether Bryant is entitled to summary judgment as to Mattel's breach of contract claim; and whether Bryant is entitled to summary judgment on any portion of his claim for declaratory relief.

MGA's motion: Whether Mattel's claims are time barred; and whether the fourth element of intentional interference with contractual relations -- actual breach or disruption of the contractual relationship -- can be resolved on summary judgment.

Except for any updates from any party regarding the outstanding discovery matters that may be relevant to the statute of limitations, these issues are considered by the Court to be fully briefed. Any supplemental briefs by the parties on any issue other than the statute of limitations will be stricken by the Court. Any supplemental filings regarding the statute of limitations issue shall be limited to addressing the status of outstanding discovery issues and/or recently produced evidence.

**IT IS SO ORDERED.**

EXHIBIT ___8___

PAGE ___51___

## NOTICE PARTY SERVICE LIST

Case No.  CV 04-09049 SGL(RNBx)   Case Title  Carter Bryant v. Mattel, Inc.

Title of Document  Minute Order of April 25, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service -  Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | ***ADD NEW NOTICE PARTY*** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (Include suite or floor): P.O. Box 581103

Salt Lake City, UT   84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

| ***JUDGE / MAGISTRATE JUDGE (list below):*** |
|---|
| |
| |
| |
| |

Initials of Deputy Clerk jh

EXHIBIT 8

PAGE 52

# EXHIBIT 9

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

| | | |
|---|---|---|
| Case No. | CV 04-09049 SGL(RNBx) | Date: December 3, 2008 |
| Title: | MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al. | |

========================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

James Holmes                                  None Present
Courtroom Deputy Clerk                        Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                                  None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200 INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

EXHIBIT ___9___
PAGE ___53___

Case 2:04-cv-09049-DOC-RNB   Document 4684-4   Filed 01/12/09   Page 60 of 75   Page ID
#:134184
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 2 of 17

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING
DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S
MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE
RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S
MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties.
After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C
of the trial) and enters the following Order.  Filed concurrently herewith are:  (1) Mattel's Proposed
Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as
modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and
Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as
modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and
exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire
record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its
previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian
("Larian"), as "the MGA parties".  MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and
equitable arguments, authorities, and evidence concerning the motions identified above.  In its
final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that
Carter Bryant ("Bryant") created and developed the name, the concept, and, together with
Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                              2

EXHIBIT _____ 9

PAGE _____ 54

Case 2:04-cv-09049-DOC-RNB   Document 4684-4   Filed 01/12/09   Page 61 of 75   Page ID
#:134185
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 3 of 17

dolls while working as an employee of Mattel and while bound by the terms of an Inventions Agreement, which provided that all rights to such property, and the property itself, belong to Mattel. Moreover, the Court further finds, as did the jury, that the preponderance of the evidence establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel. Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion dolls, are liable to Mattel for copyright infringement.

## I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel, and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as to these three remaining affirmative defenses.[1]

### A.    Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1) lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004). The MGA parties establish neither element.

Because the Court has already found that all the claims asserted against the MGA parties were filed within the applicable limitations periods, the Court starts with the presumption that laches is inapplicable. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).

Mattel has not delayed in bringing its claims against the MGA parties. The Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004. See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a significantly protectable interest relating to the subject matter of the action, . . . and that MGA's interest is not adequately represented by the existing parties."). Thereafter, the parties briefed Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1]    By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase 1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses that they have not already expressly waived.

EXHIBIT   9
PAGE      55

Case 2:04-cv-09049-DOC-RNB   Document 4684-4   Filed 01/12/09   Page 62 of 75   Page ID
#:134186
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 4 of 17

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

### B. Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he
> must intend that his conduct shall be acted upon, or must so act that
> the party asserting the estoppel has a right to believe it was so
> intended; (3) the other party must be ignorant of the true state of facts;
> and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                              4

EXHIBIT ___9___

PAGE ___56___

Case 2:04-cv-09049-DOC-RNB   Document 4684-4   Filed 01/12/09   Page 63 of 75   Page ID
#:134187
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 5 of 17

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

### C.    Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

### II. Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

---

[2]  The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

EXHIBIT    1

PAGE    52

Case 2:04-cv-09049-DOC-RNB   Document 4684-4   Filed 01/12/09   Page 64 of 75   Page ID
#:134188
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 6 of 17

constructive trust as to MGA's copyright registrations in certain Bratz drawings.  As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act.  The Court rejects this argument.  The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3]  Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade."  Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty.  Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks.  As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A.      Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner."  Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."  The parties agree on the resulting elements, which may be stated as

---

[3]  The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

MINUTES FORM 90
CIVIL – GEN                                6                      Initials of Deputy Clerk: jh

EXHIBIT 9
PAGE 58

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4]  In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them.  The MGA parties enhanced the value of the names by acquiring trademark rights to them.  California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim.  It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)).  However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

## B.    § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls.  Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims.  See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]    Bryant's other characters were re-named before they were marketed:  Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

EXHIBIT    9

PAGE    59

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion). The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding. Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act. The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

### C.      § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may
> be enjoined in any court of competent jurisdiction. The court may make
> such orders or judgments, . . . as may be necessary to prevent the use
> or employment by any person of any practice which [either] constitutes
> unfair competition, . . . or as may be necessary to restore to any person
> in interest any money or property, real or personal, which may have
> been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

### IV. Motion for Permanent Injunction (docket #4306)

### A.      Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90                                         Initials of Deputy Clerk: jh
CIVIL -- GEN                         8

EXHIBIT  9

PAGE  60

Case 2:04-cv-09049-DOC-RNB Document 4684-4 Filed 01/12/09 Page 67 of 75 Page ID
#:134191
Case 2:04-cv-09049-SGL-RNB Document 4439 Filed 12/03/2008 Page 9 of 17

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

EXHIBIT __9__

PAGE __61__

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5]  Counsel likened the jury's damage award to a rug that, no matter which way one moved it, simply would not cover the floor. See Nov. 10, 2008, Tr. at 100-101.  Counsel explained that the jury's findings led to one conclusion or the other and, regardless of which conclusion was chosen, the jury's finding did not support an injunction:

> The rug is too small for an injunction, regardless of how you allocate that money.  You either come up with a vanishingly small subset of infringing products, or you come up with a vanishingly small percentage of infringement by all of the products.  And the jury has put that cap for us.

Id.  Although colorful, counsel's metaphor is not helpful.  Assuming that the Court would be bound by a jury's factual finding in a case where only two possible inferences -- both of which would lead the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an expert report, the Court will infer the factual findings that necessarily flow from it.  But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15, 2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2.  In doing so, the Court has first examined the specific expressive elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]   This argument was not raised in the opposition papers filed by the MGA parties, and is rejected for that reason as well.  See Opp. at 21 ("Here, the circumstances clearly show that the only reasonable conclusion to draw is that the jury's infringement finding was limited to a small universe of products, specifically the first generation Bratz dolls as clothed and packaged.") (emphasis added).

[6]   The MGA parties hazard such a guess in their opposition, wherein they attempt to explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total copyright infringement award:  "The jury's decision to award $6 million against MGA[E] (and $10 million total) rather than simply the $4 million] argued by MGA as profits for the first generation may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low."  Opp. at 21 n.30.  This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.

EXHIBIT __9__

PAGE __62__

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer. Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported by both analytical and market analysis. Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

### B.   Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.   Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90
CIVIL -- GEN                                    11                    Initials of Deputy Clerk: jh

EXHIBIT ___9___

PAGE ___43___

Case 2:04-cv-09049-DOC-RNB   Document 4684-4   Filed 01/12/09   Page 70 of 75   Page ID
#:134194
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 12 of 17

that hundreds of the MGA parties' products -- including all the currently available core female
fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties
have evinced an intention to continue marketing those dolls. This represents a wholesale inability
on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to
irreparable harm.   Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir.
2005).

        MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v.
Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case
holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not
permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay
> conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d
> 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right
> to control the use of its copyrighted materials, . . . irreparable harm
> inescapably flows from the denial of that right."   In substance, such
> language is nothing more than a disguised presumption, particularly
> with the use of the word "inescapably." After eBay, Plaintiffs cannot rely
> on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor
court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably"
in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a
review of the Taylor case makes clear that the Eighth Circuit considered the implications of
allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a
request for injunctive relief could otherwise "amount to a forced license to use the creative work of
another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the
application of a "disguised presumption" of irreparable harm and closer to an actual finding of
irreparable harm.

        At least one district court within the Ninth Circuit is in accord with the Court's decision today,
as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of
future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008
WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds
> that past infringement plus the threat of future infringement equals
> irreparable harm, it seems clear to this Court that such a rule would not
> run afoul of eBay's directives. First of all, the eBay Court did not
> address the showing necessary to establish "irreparable harm." It
> merely held that the plaintiff has the burden of proving it. Second, this
> two-part test does not resurrect the presumption of irreparable harm
> impliedly laid to rest by the eBay court. It simply recognizes that a

Initials of Deputy Clerk: jh

EXHIBIT ___9___

PAGE ___64___

plaintiff meets the burden of proving irreparable harm by making this
two-part showing. And finally, the two-part test does not represent a
rule·[prohibited by eBay] that an injunction automatically follows a
determination that a copyright has been infringed. . . . In exercising
their equitable discretion, courts would still have the freedom to deny
injunctive relief when the public interest or the balance of hardships
weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The
statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under
this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable
**to prevent or restrain infringement of a copyright**." 17 U.S.C. § 502 (emphasis added). The
Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record
shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to
his employer (and keep confidential from all others) all copyrightable works he creates during the
term of his employment, not only fails to so communicate but actually secretly purports to convey
the rights thereto to a direct competitor of his employer. The rights to those works are actively
concealed from their true owner (by both the employee and the competitor) for years while the
competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars.
After millions of pages of discovery are produced, thousands of filings are submitted, scores and
scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor
of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing
products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA
parties' past infringement and the high probability of continued acts of infringement.

## 2.    Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop
the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See
Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

## 3.    Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has
expressed its concerns in this regard on the record. The evidence at trial showed that, at least
historically, Bratz is the brand that has made MGA profitable. And the proposed injunction
addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the
cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if
any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995)
("Where the only hardship that the defendant will suffer is lost profits from an activity which has

EXHIBIT  9

PAGE  65

Case 2:04-cv-09049-DOC-RNB   Document 4684-4   Filed 01/12/09   Page 72 of 75   Page ID
#:134196
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 14 of 17

been shown likely to be infringing, such an argument in defense merits little equitable consideration
. . . .") (internal quotation marks and citations omitted), <u>accord, Cadence Design Systems, Inc. v.
Avant! Corp.</u>, 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases). The balance of equities
favor Mattel.

### 4.    Public Interest

There is a strong economic interest, especially in these troubled economic times, in
maintaining a profitable enterprise as a going concern. However, there is also a strong public
interest in enforcing copyright laws in a uniform manner. Indeed, nothing is more essential to long-
term economic prosperity than the stability provided by the rule of law. Although the MGA parties
raise excellent points in their opposition, in the end, the public interest is served by precluding
defendants from engaging in copyright infringement. The injunction issued by the Court does no
more than that.

### C.    Scope of Injunction

The scope of the permanent injunction is set forth in a separate order. Four issues raised in
the parties' papers warrant the brief discussion that follows.

### 1.    Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and
destruction of the specialized plates, molds, and matrices used to make them. Impoundment of
existing infringing products and the destruction of the means to make those products are clearly
remedies contemplated by the Copyright Act. <u>See</u> 17 U.S.C. § 503(a). The MGA parties argue
that these remedies are inappropriate because there is no ongoing infringement or, at the very
least, its products infringe very little. In its findings supporting the issuance of a permanent
injunction, the Court has rejected this premise, and the Court finds that the requested
impoundment and destruction is an appropriate remedy.[7]

### 2.    Recall

In light of the scope of infringement found by the Court, and in light of the fact that the
injunction addresses products that directly compete with Mattel's products, the Court has ordered
the recall of infringing products from retailers. <u>See CyberMedia, Inc. v. Symantec Corp.</u>, 19
F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7]    No party shall destroy any of the implements used to make the Bratz dolls that are the
subject of the permanent injunction absent a specific order of this Court authorizing such
destruction.

MINUTES FORM 90
CIVIL -- GEN                                  14                     Initials of Deputy Clerk: jh

EXHIBIT ___9___

PAGE ___66___

Case 2:04-cv-09049-DOC-RNB   Document 4684-4   Filed 01/12/09   Page 73 of 75   Page ID
#:134197
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 15 of 17

### 3.    Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4.    Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

### V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

### VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

MINUTES FORM 90
CIVIL -- GEN                                                    15                        Initials of Deputy Clerk: jh

EXHIBIT ____9____

PAGE ____67____

Case 2:04-cv-09049-DOC-RNB   Document 4684-4   Filed 01/12/09   Page 74 of 75   Page ID
#:134198
Case 2:04-cv-09049-SGL-RNB     Document 4439     Filed 12/03/2008     Page 16 of 17

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

### VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

### VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

### IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

### X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

MINUTES FORM 90
CIVIL -- GEN                                    16                        Initials of Deputy Clerk: jh

EXHIBIT ___9___

PAGE ___68___

Case 2:04-cv-09049-DOC-RNB   Document 4684-4   Filed 01/12/09   Page 75 of 75   Page ID
#:134199
Case 2:04-cv-09049-SGL-RNB      Document 4439       Filed 12/03/2008      Page 17 of 17

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA  90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA  90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA  92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA  92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA  90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA  90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases
1A and 1B trial transcripts maintained by the parties.  The Court will retain possession of the laptop
computer until after its ruling on the motions referred to in section IX, above, and the parties are
directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-
filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges
given the limited resources of the Court.  The permanent injunction, for reasons explained by
Mattel on the record, attaches to it approximately 900 color copies.  Accordingly, although the
Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs
Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent
injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

EXHIBIT  9
PAGE  69