# EXHIBIT 10

CALENDARED
RECEIVED
MAR 0 7 2008

1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  JASON D. RUSSELL (Bar No. 169219)
   (jrussell@skadden.com)
3  MARINA V. BOGORAD (Bar No. 217524)
   (mbogorad@skadden.com)
4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
5  Los Angeles, CA 90071-3144
   Tel.: (213) 687-5000 / Fax: (213) 687-5600
6
   KENNETH PLEVAN (admitted *pro hac vice*)
7  (kplevan@skadden.com)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
8  Four Times Square, New York, NY 10046
   Tel.: (212) 735-3000 / Fax: (212) 735-2000
9
   Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
10 MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

11             UNITED STATED DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13                  EASTERN DIVISION

14 CARTER BRYANT, an individual,      ) CASE NO. CV 04-9049 SGL (RNBx)
                                      ) Consolidated with Case No. 04-9059
15                   Plaintiff,       ) and Case No. 05-2727
                                      )
16        v.                          ) Honorable Stephen G. Larson
                                      )
17 MATTEL, INC., a Delaware           ) MGA PARTIES' NOTICE OF
   corporation,                       ) MOTION FOR PARTIAL SUMMARY
18                                    ) JUDGMENT, MOTION AND
                    Defendant.        ) MEMORANDUM OF POINTS AND
19                                    ) AUTHORITIES IN SUPPORT
   ─────────────────────────────     ) THEREOF;
20 AND CONSOLIDATED ACTIONS           )
                                      ) SUBMITTED UNDER SEPARATE
21                                    ) COVER:
                                        1.  [PROPOSED] STATEMENT OF
22                                          UNCONTROVERTED FACTS
                                            AND CONCLUSIONS OF LAW;
23 **FILED UNDER SEAL PURSUANT**        2.  REQUEST FOR JUDICIAL
   **TO PROTECTIVE ORDER**                  NOTICE;
24                                      3.  DECLARATION OF JASON D.
                                            RUSSELL;
25                                      4.  DECLARATION OF ISAAC
                                            LARIAN;
26                                      5.  [PROPOSED] ORDER; and
                                        6.  PROOF OF SERVICE.
27
28                                      Hearing Date: April 23, 2008
                                        Time: 10:00 a.m.

                        3.7.08

   MGA Parties' Motion for Partial Summary Judgment - Case No. CV 04-9049 SGL (RNBx)

                                        EXHIBIT  18

                                        PAGE  70

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2

3       PLEASE TAKE NOTICE that on April 23, 2008 at 10 a.m., or as soon thereafter

4  as the matter may be heard by the Honorable Stephen G. Larson in the above-referenced

   court located at 3470 Twelfth St., Riverside, California 92501, Defendants MGA

5  Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de Mexico, S.R.L. de

6  C.V. (collectively, "MGA"), and Isaac Larian (together with MGA, the "MGA Parties")

7  will and hereby do move pursuant to Federal Rule of Civil Procedure 56 for partial

8  summary judgment of plaintiff Mattel's First, Sixth, Eighth, Tenth, Eleventh, Twelfth,

9  and Thirteenth counterclaims in its Second Amended Answer and Counterclaims dated

10 July 12, 2007 on the following grounds:

11      First, all Mattel's counterclaims are time-barred because Mattel brought them

12 more than five and a half years after it was placed on notice of its potential claims;

13      Second, Mattel's interference with contract, conversion and unfair competition

14 claims (its Sixth, Eleventh, and Twelfth counterclaims, respectively) are preempted by
   the Copyright Act, as a matter of law;

15
        Third, Mattel's statutory and common law unfair competition claims (the Twelfth
16 counterclaim) fail as a matter of law because Mattel cannot establish that MGA's or

17 Larian's conduct was unfair, fraudulent, or unlawful;

18      Fourth, Mattel's claim for intentional interference with contract (its Sixth

19 Counterclaim) fails because there is no evidence of breach, intent, or inducement;

20      Fifth, Mattel's claim for aiding and abetting a breach of fiduciary duty allegedly

21 owed by defendant Carter Bryant to Mattel (its Eighth Counterclaim) fails because

22 Bryant, as a matter of law, did not owe such a duty to Mattel.

23      This Motion is made on the ground that "the pleadings, depositions, answers to

24 interrogatories, and admissions on file, together with the affidavits . . . show that there is

25 no genuine issue as to any material fact and that [the MGA Parties are] entitled to a
   judgment as a matter of law." Fed. R. Civ. P. 56(c).

26      This Motion is based upon this Notice of Motion and accompanying
27 Memorandum of Points and Authorities, the Statement of Uncontroverted Facts and

28

EXHIBIT 10

PAGE 71

1  Conclusions of Law filed concurrently under separate cover, the Declarations of Jason
2  D. Russell and Isaac Larian filed concurrently under separate cover, the MGA Parties'
3  Request for Judicial Notice filed concurrently under separate cover, the records and files
4  of this court, and any other matter of which the court may take judicial notice.
5      This Motion is made following the conference of counsel pursuant to Local Rule
6  7-3, which took place on February 15, 2008.
7  DATED:  March 7, 2008

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM, LLP

By:  _____
        Thomas J. Nolan
Attorneys for MGA Entertainment, Inc.,
MGA Entertainment (HK) Limited, MGAE
de Mexico, S.R.L. de C.V., and Isaac Larian

EXHIBIT ___16___

PAGE ___72___

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................... vi

PRELIMINARY STATEMENT ............................................................... 1

FACTUAL BACKGROUND ................................................................... 4

1.    Bryant's Initial Meetings with MGA And His Contract With MGA ................... 4

2.    Mattel Becomes Aware of MGA's Ownership of BRATZ in February 2001 and Suspects Bryant's Involvement In BRATZ Design .......................... 6

    (a)    February 2001 – Mattel sees the BRATZ at the Toy Fair.......................... 6

    (b)    June 2001 – BRATZ release in Spain piques Mattel's interest.................. 7

    (c)    BRATZ are introduced to the American market ......................................... 7

    (d)    Mattel immediately concludes that BRATZ was copied from Mattel dolls........................................................................... 8

    (e)    It was "common knowledge" within Mattel in 2001 that Bryant created BRATZ........................................................................ 8

3.    In March 2002, Mattel Launches An Internal Campaign To Investigate Its Alleged Rights In The BRATZ, Bryant's Creation Of The BRATZ Concept And MGA's Role In Its Development .......... 9

4.    Mattel Continues To Be Bombarded With Public Information About MGA, Larian And BRATZ Until It Sued Bryant in April 2004 ..................................... 11

5.    Barbie's "House Is On Fire" Due to Brisk Sales of BRATZ............................... 12

6.    The History of the Litigation at Hand.................................................................. 13

ARGUMENT ........................................................................................... 15

I.    ALL CLAIMS AGAINST MGA AND LARIAN ARE TIME-BARRED ......... 15

    A.    Mattel Was On Notice Of Its Claims For Statute Of Limitations Purposes As Early As February 2001 And No Later Than March 2002... 17

    B.    As Mattel Was On Notice Of Its Claims By March 2002, Its Claims Are Time-Barred, Unless They Relate Back To An Earlier Pleading............. 20

        1.    Mattel's Sixth, Eighth, and Tenth Counterclaims are time-barred by their respective two-year statutes of limitations and cannot be saved by any "relation-back" rules.................................................. 20

            (a)    Mattel's Sixth Counterclaim for Intentional Interference with Contract is time-barred ............................. 20

            (b)    Mattel's Aiding and Abetting claims are time-barred .......... 21

EXHIBIT _10_

PAGE _73_

2. Mattel's First, Eleventh, and Thirteenth Counterclaims, as well as a portion of its Twelfth Counterclaim, are time-barred by their respective three-year statutes of limitations ................................... 23

   (a) Mattel's claim for copyright "infringement" is time-barred ........................................................... 23

   (b) Mattel's claim for conversion is time-barred and cannot be saved by any "relation-back" rules ............... 26

   (c) Mattel's common law unfair competition claim is time-barred ................................................ 26

3. Mattel's remaining portion of its Twelfth Counterclaim for statutory unfair competition is time-barred by a four-year statute of limitation ...................................... 28

4. Mattel's claim for declaratory relief is time-barred ....................... 28

C. As MGA And Larian Are New Parties In The '04 Action, And Were Not Omitted by "Mistake", The '04 Complaint Cannot Save Mattel's Claims .................................. 29

D. The '05 Action Cannot Revive Mattel's Claims Against Larian .............. 33

II. MATTEL'S CONVERSION, INTENTIONAL INTERFERENCE WITH CONTRACT, AND UNFAIR COMPETITION CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT ........................................ 35

A. The BRATZ concept falls within Copyright Act's scope ........................ 35

B. Mattel's conversion, intentional interference with contract, and unfair competition claims fail to meet the "extra element" test ........................... 36

1. Mattel's conversion claim .............................................................. 36

2. Mattel's intentional interference with contract claim ..................... 38

3. Mattel's unfair competition claims ................................................. 39

III. MATTEL'S UNFAIR COMPETITION CLAIMS FAIL .................................... 41

A. MGA's and Larian's Conduct Was Not Unfair ..................................... 41

B. MGA and Larian's Conduct Was Not Fraudulent .................................. 41

C. MGA's and Larian's Conduct Was Not Unlawful ................................... 42

D. Mattel's Common Law Unfair Competition Claims Also Fail ................. 44

IV. MATTEL CANNOT ESTABLISH THAT LARIAN AND MGA INTENTIONALLY INTERFERED WITH BRYANT'S AT-WILL CONTRACT WITH MATTEL ....................................................... 45

1      A.    Bryant did not breach or disrupt his contract with Mattel..........................47

2      B.    MGA and Larian lacked the intent to induce Bryant to
             breach his contract......................................................................................47
3
       C.    MGA and Larian did not induce Bryant to leave Mattel
4            and therefore could not be the cause of his alleged breach.......................48

5  V.   AS BRYANT DID NOT OWE A FIDUCIARY DUTY
        TO MATTEL, THERE CAN BE NO AIDING AND
6       ABETTING LIABILITY ......................................................................................50

7  CONCLUSION ..........................................................................................................50

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _____ 10
PAGE _____ 75

counterclaims against him cannot be revived by relating back to that action.

## II. MATTEL'S CONVERSION, INTENTIONAL INTERFERENCE WITH CONTRACT, AND UNFAIR COMPETITION CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT

Mattel's conversion, intentional interference with Bryant's contract with Mattel, and unfair competition with respect to MGA and Larian's alleged infringement of copyrightable material claims against MGA and Larian are preempted by the Copyright Act. Section 301 of the Copyright Act establishes a two-part test for preemption. First, the subject work must fall within the subject matter of copyright, as defined in Sections 102 and 103 of the Copyright Act. 17 U.S.C. § 301(a). Second, the rights granted under state law must be "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [of the Copyright Act]." Id.; see generally Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 792 (2003) (reciting preemption test); 1 M. Nimmer & D. Nimmer, Nimmer on Copyright § 1.01[B][1] (2007) (hereafter, "Nimmer"). Mattel's conversion, intentional interference with contract, and unfair competition claims against MGA and Larian implicate material within and rights equivalent to the Copyright Act's exclusive protective grasp.

### A. The BRATZ concept falls within Copyright Act's scope

The expressions of the BRATZ concept, in both its drawn and sculptural forms, falls within the Copyright Act's exclusive purview. Section 102 of the Copyright Act provides protection for "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102. This includes "pictorial, graphic and sculptural works," such as "two-dimensional works of fine, graphics, and applied art ... technical drawings, diagrams, [and] models." 17 U.S.C. § 101. It is the effort expended to create drawings – tangible works of authorship – that is within the scope of copyright protection. See Del Madera Props. v. Rhodes & Gardner, Inc., 820 F.2d 973, 976-77 (9th Cir. 1987), overruled on other grounds by, Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994); Universal City Studios, Inc. v. J.A.R. Sales, Inc., 1982 WL 1279, 216 U.S.P.Q. 679, 680 (C.D. Cal

EXHIBIT _10_

PAGE _76_

1982) ("dolls are protected both as derivative works and as copyrightable subject matter in their own right"). Ownership of Bryant's original works of authorship (i.e., the BRATZ drawings) is at the heart of Mattel's counterclaims and, therefore, such claims clearly implicate subject matter within the Copyright Act's protective scope.

**B.    Mattel's conversion, intentional interference with contract, and unfair competition claims fail to meet the "extra element" test**

State law claims that contain different elements from their copyright counterparts are preempted unless they contain an "extra element" that is qualitatively different from a copyright infringement claim, and that changes not just the scope of the right, but its nature as well. See Motown Record Corp. v. Hormel & Co., 657 F. Supp. 1236, 1240 (C.D. Cal. 1987). As the gravamen of Mattel's suit is the alleged infringement of copyrightable material, Mattel's claims for conversion, intentional interference with contract, and unfair competition are preempted by the Copyright Act.

**1.    Mattel's conversion claim**

California courts consistently hold that conversion claims are preempted by the Copyright Act when they arise from the reproduction, copying and misuse of material falling within the general subject matter scope of the Act. See, e.g., Melchior, 106 Cal. App. 4th at 794 ("The tort of conversion does not apply to ideas."). For instance, in Meridian Project Sys., Inc. v. Hardin Constr. Co., 2006 WL 1062070, 79 U.S.P.Q.2d 1691, 1693 (E.D. Cal. Apr. 21, 2006), plaintiff asserted a claim for conversion of the non-copyrightable aspects of its project management software. In granting defendant's motion to dismiss the conversion claim as preempted, the court reasoned that, as the subject matter of copyright is broader than the scope of copyright protection, plaintiff's conversion claim sought to enforce rights equivalent to those asserted in plaintiff's copyright claim. Id. at 1694.

This rule applies whether the conversion claim is based on the deprivation of an idea itself or the tangible medium in which it is expressed. In Dielsi v. Falk, 916 F. Supp. 985, 992 (C.D. Cal. 1996), plaintiff's conversion claim was based on the use and

distribution of ideas expressed in a manuscript which plaintiff had given to defendant. In finding plaintiff's conversion claim was preempted, the court held that the conversion allegation "d[id] not add any additional element to the essential claim that Plaintiff's ideas were misappropriated by Defendants ... [because s]uch a claim is 'part and parcel' of a copyright claim." Id.

Although Mattel casts its conversion claim as seeking recovery of "tangible materials" (SAA ¶ 157 and at 76 ¶ 5), the focus of its claim is on the disgorgement of profits resulting from the alleged infringement of its copyrights (id. at 76-77). Plaintiff's semantic masquerade cannot save its claim – this action is not about tangible items Bryant allegedly converted[39] from Mattel, but about the BRATZ concept. Indeed, in Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1192-93 (C.D. Cal. 2001), the court held that, although plaintiffs alleged that there had been a conversion of tangible documents by defendants, "[p]laintiffs claim[ed] that Defendants somehow profited from information in those documents, and/or that this information was instrumental in the [alleged infringement]. It is therefore not the documents *themselves* which Plaintiffs claim as their 'property' which was wrongfully converted, but the *information* contained therein."

Mattel cannot save a claim for conversion of copyrightable material with language indicating that it instead seeks the restoration of the documents containing the genesis of the copyrightable concept. Where (1) the "crucial" allegation in the complaint involves the use and distribution of copyrighted work, as opposed to the deprivation of its tangible embodiment (Dielsi, 916 F. Supp. at 992; Harper & Row Publrs. v. Nation Enters., 723 F.2d 195, 201 (2d Cir. 1983) ("If unauthorized publication is the gravamen

---

[39]   Indeed, the items Bryant is alleged to have used in assembling the early BRATZ sculpts had been discarded by Mattel. Ex. 1 (Bryant) at 235:9-10 ("A. I think I remember it being placed in a hallway with a sign over it that said [basura]. Q. So you thought it was garbage? A. Yeah.")). Discarded material cannot be the subject of a conversion claim. Ananda Church of Self-Realization v. Mass. Bay Ins. Co., 95 Cal. App. 4th 1273, 1282 (2002) ("no claim for conversion or other interference with personal property rights may be based on the taking of documents placed in a trash can").

EXHIBIT _____ 10

PAGE _____ 78

of their claim, then it is clear that the right they seek to protect is coextensive with an exclusive right already safeguarded by the [Copyright] Act"), rev'd on other grounds by 471 U.S. 539 (1985)), and (2) the primary measure of damages is disgorgement of profits from the unauthorized use, reproduction or distribution of copyrighted works, the allegation is equivalent to a copyright claim. See Worth v. Universal Pictures, Inc., 5 F. Supp. 2d 816, 822 (C.D. Cal. 1997). As Mattel's "crucial" claim seeks the disgorgement of profits of MGA and Larian's use and reproduction of the BRATZ concept, Mattel's conversion claim is equivalent to its copyright infringement claim and is preempted.[40]

## 2.   Mattel's intentional interference with contract claim

The elements of awareness and intent in a claim of intentional interference with contract only alter the action's scope, not its nature, and, therefore, any such claims are preempted by the Copyright Act. See Harper, 723 F.2d at 201. In claims alleging intentional interference with a contract involving copyright, the enjoyment of the allegedly infringing use is "so intimately bound up with the right itself that it could not possibly be deemed a separate element." Id. Although Mattel pled an element resembling awareness, intent, or inducement apart from its copyright infringement claim, this "additional" element "goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the [allegedly] infringing party, nor a fundamental nonequivalence between the state and federal rights implicated." Id.

Mattel's Sixth Counterclaim for Intentional Interference with Contract offers all the same flavor as its copyright infringement claim in that it alleges (1) "MGA, Larian … knew that Bryant had assigned to Mattel, and was obligated to disclose to

---

[40]    Mattel may argue that because Judge Manella refused to find preemption of its conversion claims in connection with the briefing on remand, this Court should likewise reject MGA's preemption arguments. However, Judge Manella rejected defendant's conversion preemption argument because that complaint was "vague and generalized ... never mention[ed] what items or works Bryant allegedly converted." Mattel, Inc. v. Bryant, 441 F. Supp. 2d at 1093. Here, Mattel's Counterclaims specifically allege that Bryant converted "such proper[ty] [sic] and materials that were created by Bryant while he was a Mattel product designer." (See SAA ¶ 157.) Furthermore, Mattel's lynchpin counterclaim is for copyright infringement against MGA, Larian and Bryant. (See id. ¶¶ 82-87.) Thus, this Court's consideration of MGA and Larian's preemption argument would be based on entirely new allegations.

EXHIBIT   10

PAGE   79

Mattel all inventions, including designs and other works, created, conceived, or reduced to practice during their employment with Mattel," and that (2) "[d]espite such knowledge, Counter-defendants MGA, Larian … intentionally and without justification solicited, induced and encouraged the Mattel employees to breach their contracts with Mattel." (SAA ¶¶ 124-125.) This allegation does not add anything to Mattel's copyright claim, which similarly seeks to place liability on MGA and Larian for MGA's role in the alleged infringement. The addition of "elements such as awareness or intent may alter the scope of the action but not its nature." Motown Record, 657 F. Supp. at 1240 (intentional interference claim preempted by Copyright Act); see also Idema, 162 F. Supp. 2d at 1193; cf. Gemcraft Homes, Inc. v. Sumurdy, 688 F. Supp. 289, 295-6 (E.D. Tex. 1988) (claim for interference with contract preempted on allegations that defendants used copyrightable material).[41] As Mattel's lawsuit revolves around issues of infringement, its claim for intentional interference with contract is preempted.

### 3.   Mattel's unfair competition claims

Mattel's unfair competition claims are preempted because, to the extent they are not qualitatively different from a copyright claim, they are subsumed by federal copyright law. See Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d 1020, 1030-31 (C.D. Cal. 2007), citing Fisher v. Dees, 794 F.2d 432 (9th Cir. 1986).[42] This principle applies whether Mattel's claim under the Copyright Act ultimately fails. See Selby v. New Line Cinema Corp., 96 F. Supp. 2d 1053, 1058 (C.D. Cal. 2000) ("[T]he shadow actually cast by the Act's preemption is notably broader than the wing of its protection"). Thus, an unfair competition argument constructed upon the premises that copyrightable

---

[41]   Although Motown Record and Idema deal with interference with economic relations, they apply here as such claims undergo the same preemption analysis – focusing on the elements of intent and awareness – as interference with contract. See Kasparian v. County of Los Angeles, 38 Cal. App. 4th 242, 260 (1995) (interference with contract has been referred to as a species of the broader tort of interference with prospective economic relations); accord Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 381-391 (1995).

[42]   Mattel's common law unfair competition claim also is preempted. See Sony Pictures Ent. Inc. v. Fireworks Ent. Group, Inc., 156 F. Supp. 2d 1148, 1164 (C.D. Cal. 2001) (statutory and common law unfair competition claims treated the same for copyright preemption analysis).

material was (1) owned by plaintiff, and (2) was misappropriated defendants, will be considered "part and parcel of the copyright claim." Del Madera, 820 F.2d at 977.

A recent decision of this District, Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d at 1030-31, which involved a defendant supplier's allegedly infringing "knock-off" toys, granted defendants' summary judgment motion, holding that "plaintiffs may not allege a claim for unfair competition based on defendants' alleged infringement of its copyright." Furthermore, where a plaintiff specifically incorporates allegations made earlier in its complaint, such repetition is a sufficient basis for preemption. For instance, in Kodadek v. MTV Networks, Inc., the Ninth Circuit preempted plaintiff's unfair competition claim on the ground that its complaint "expressly base[d] his unfair competition claim on rights granted by the Copyright Act," because "the unfair competition claim incorporates by reference paragraphs from the copyright infringement claim." 152 F.3d 1209, 1212-13 (9th Cir. 1998) (emphasis added); see also Watermark Publrs., 1997 WL 717677, 44 U.S.P.Q.2d at 1582 (statutory unfair competition claim predicated on "the conduct alleged above" preempted).

Mattel also incorporated its infringement allegations into its unfair competition claim. Mattel's unfair competition claim specifically "repeats and realleges each and every allegation set forth in paragraphs 1 through 162, above, as though fully set forth at length." (SAA ¶ 163.) Furthermore, Mattel bases its unfair competition claim on MGA's "foregoing conduct." (Id. ¶ 165.) Naturally, this includes allegations of Bryant's purported copyright infringement (id. ¶¶ 21-36), which precede Mattel's unfair competition allegations. Claims of unfair competition predicated on ownership, misappropriation, and infringement of a copyright add no "extra element" to distinguish it from a copyright infringement claim. Del Madera, 820 F.2d at 977 ("[Plaintiff's] ownership of the material, and the alleged misappropriation by the defendants, are part and parcel of the copyright claim"). As the essence of Mattel's complaint is derived from MGA, Larian and Bryant's alleged unauthorized use of a copyrighted work, Mattel's unfair competition claim is preempted. See Motown Record, 657 F. Supp. at

who was not an MGA employee – in August of 2000. (UF ¶¶ 3, 7-10.) Mattel has no evidence to suggest that MGA approached or solicited Bryant to leave his position at Mattel.  Given these undisputed facts, MGA and Larian did not intentionally induce or cause Bryant to breach his Employment Agreement.

## V.   AS BRYANT DID NOT OWE A FIDUCIARY DUTY TO MATTEL, THERE CAN BE NO AIDING AND ABETTING LIABILITY

Mattel's 8th Counterclaim alleges that MGA and Larian are liable for aiding and abetting Bryant's breach of fiduciary duty owed to Mattel because they "encouraged, aided and financed Bryant to develop BRATZ," knowing Bryant was employed by Mattel and that Mattel is the "true owner of BRATZ designs and works." (SAA ¶¶ 33, 34; see also id. ¶¶ 26-27, 136-37, 139-41.) Bryant's concurrently filed summary judgment motion, in which MGA and Larian join, demonstrates that, as a matter of law, Bryant did not owe a fiduciary duty. (Bryant Br. at III.A.) Absent such a duty, a claim for aiding and abetting necessarily fails. See Richard B. LeVine, Inc. v. Higashi, 131 Cal. App. 4th 566, 574 (2005) (granting summary judgment on aiding and abetting breach of fiduciary duty where plaintiff failed to establish breach); see also MJT Securities v. Toronto Dominion Bank, 2007 WL 1725421, at **7-8 (N.D. Cal. June 14, 2007). As Bryant owed no fiduciary duty to Mattel, Mattel's claim against MGA and Larian likewise fails as a matter of law.

## CONCLUSION

For the foregoing reasons, MGA and Isaac Larian respectfully request an order granting partial summary judgment and dismissing Mattel's Phase I claims against them.

DATED: March 7, 2008

SKADDEN,  ARPS,  SLATE,  MEAGHER  & FLOM, LLP

By: _____
      Thomas J. Nolan
Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

EXHIBIT 10

PAGE 82

# EXHIBIT 11



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
  Jon D. Corey (Bar No. 185066)
  joncorey@quinnemanuel.com
  Timothy L. Alger (Bar No. 160303)
  timalger@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | Hon. Stephen G. Larson |
| MATTEL, INC., a Delaware corporation, | **MATTEL, INC.'S AMENDED PROPOSED VERDICT FORM FOR PHASE 1B** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | **Phase 1B:**<br><br>Trial Date:          July 23, 2008 |

EXHIBIT __11__

PAGE __83__

1    Mattel, Inc. ("Mattel") hereby proposes the following amended proposed

2   verdict form for Phase 1B of the trial in this matter.  Mattel requests and reserves the

3   right to amend, modify, withdraw and/or supplement this form before or during the

4   trial of this matter.

5

6   DATED:  July 24, 2008              QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
7

8                                      By /s/ Jon D. Corey
                                          Jon D. Corey
9                                         Attorneys for Mattel, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __11__

PAGE __84__

1
2
3          We answer the questions submitted to us as follows:
4

## Verdict Form for Phase 1B

### Intentional Interference With Contractual Relations

6          1.      In Phase 1A of this trial, you found that MGA Entertainment, Inc.
7    ("MGA") and Isaac Larian are liable to Mattel for intentional interference with
8    contractual relations.  What amount of damages do you award to Mattel?
9                        $_____

### Aiding and Abetting Breach of Fiduciary Duty

12         2.      In Phase 1A of this trial, you found that MGA and Isaac Larian are
13    liable to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty.
14    What amount of damages do you award to Mattel?
15                        $_____

### Aiding and Abetting Breach of the Duty of Loyalty

18         3.      In Phase 1A of this trial, you found that MGA and Isaac Larian are
19    liable to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.
20    What amount of damages do you award to Mattel?
21                        $_____

EXHIBIT ____11____

PAGE ____85____

1

## **Conversion**

2      4.      In Phase 1A of this trial, you found that MGA, Isaac Larian and MGA

3  Entertainment (HK) Limited ("MGA Hong Kong") are liable to Mattel for

4  conversion.  What amount of damages do you award to Mattel?

5                          $_____

6

7

## **Copyright Infringement**

8      5.      Did MGA infringe Mattel's copyrights?

9              Yes  ____

10             No   ____

11   · *If your answer is "yes," then answer Questions 6 and 7.*

12     *If your answer is "no," then answer Question 8.*

13

14     6.      Was MGA's infringement of Mattel's copyrights willful?

15             Yes  ____

16   .         No   ____

17

18     7.      What amount of damages do you award to Mattel for MGA's

19  infringement of Mattel's copyrights?

20             $_____

21

22     8.      Did Isaac Larian infringe Mattel's copyrights?

23             Yes  ____

24             No   ____

25     *If your answer is "yes," then answer Questions 9, 10 and 11.*

26     *If your answer is "no," then answer Question 12.*

27

28

EXHIBIT _____ 11

PAGE _____ 86

1    9.    Was Mr. Larian's infringement of Mattel's copyright's willful?

2         Yes _____

3         No  _____

4

5    10.   You must answer two questions regarding damages for Isaac Larian's

6  infringement of Mattel's copyrights.  First, what amount of damages do you award

7  to Mattel for Isaac Larian's infringement of Mattel's copyrights, as measured by

8  distributions by MGA to Mr. Larian?

9         $_____

10

11   11.   Separately, what amount of damages do you award to Mattel for Isaac

12  Larian's infringement of Mattel's copyrights, as measured by the value of Mr.

13  Larian's ownership interests in MGA?

14         $_____

15

16   12.   Did MGA Hong Kong infringe Mattel's copyrights?

17         Yes _____

18         No  _____

19    *If your answer is "yes," then answer Questions 13 and 14.*

20    *If your answer is "no," then answer Question 15.*

21

22   13.   Was MGA Hong Kong's infringement of Mattel's copyrights willful?

23         Yes _____

24         No  _____

25

26   14.   What amount of damages do you award to Mattel for MGA Hong

27  Kong's infringement of Mattel's copyrights?

28

-3-

EXHIBIT 11

PAGE 87

1   $ _____

2

3                    **Fraudulent Concealment**

4       . 15.   Did MGA fraudulently conceal the bases for Mattel's claim of

5   intentional interference with contract against it?

6              Yes   ____

7              No    ____

8       16.   Did Isaac Larian fraudulently conceal the bases for Mattel's claim of

9   intentional interference with contract against him?

10             Yes   ____

11             No    ____

12      17.   Did MGA fraudulently conceal the bases for Mattel's claim of

13  conversion against it?

14             Yes   ____

15             No    ____

16      18.   Did Mr. Larian fraudulently conceal the bases for Mattel's claim of

17  conversion against him?

18             Yes   ____

19             No    ____

20      19.   Did MGA Hong Kong fraudulently conceal the bases for Mattel's claim

21  of conversion against it?

22             Yes   ____

23             No    ____

24

25                    **Punitive Damages**

26      20.   Did MGA act with malice, oppression, or fraud?

27

28

EXHIBIT ___11___

PAGE ___88___

1         Yes    ____

2         No    ____

3  *If your answer is "yes," then answer Question 21.*

4  *If your answer is "no," then answer Question 22.*

5

6    21.   What amount of punitive damages do you award against MGA?

7        $_____

8

9    22.   Did Isaac Larian act with malice, oppression, or fraud?

10       Yes    ____

11       No    ____

12  *If your answer is "yes," then answer Question 23.*

13  *If your answer is "no," then answer Question 24.*

14

15    23.   What amount of punitive damages do you award against Mr. Larian?

16       $_____

17

18    24.   Did MGA Hong Kong act with malice, oppression, or fraud?

19       Yes    ____

20       No    ____

21  *If your answer is "yes," then answer Question 25.*

22

23    25.   What amount of punitive damages do you award against MGA Hong

24  Kong, if any?

25       $_____

26

27

28

EXHIBIT ____11____

PAGE ____89____

1

2

3          Once this verdict form is completed, the foreperson of the jury should sign

4     and date on the lines below.

5

6     DATED: _____, 2008

7

8                                                              _____

9                                                              Jury Foreperson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ___11___

PAGE _____90_____

# EXHIBIT 12

1   THOMAS J. NOLAN (Bar No. 66992)
    (tnolan@skadden.com)
2   JASON D. RUSSELL (Bar No. 169219)
    (jrussell@skadden.com)
3   LAUREN E. AGUIAR (Admitted Pro Hac Vice)
    (laguiar@skadden.com)
4   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    300 South Grand Avenue, Suite 3400
5   Los Angeles, CA  90071
    Tel.: (213) 687-5000/Fax: (213) 687-5600
6

7   Attorneys for MGA Parties

8               UNITED STATED DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11  CARTER BRYANT, an individual,        )   CASE   NO.   CV   04-9049   SGL
                                          )   (RNBx)
12                     Plaintiff,         )
                                          )   Consolidated with Case No. 04-
13           v.                           )   9059 and Case No. 05-2727
                                          )
14  MATTEL,   INC.,   a   Delaware        )   Honorable Stephen G. Larson
    corporation,                          )
15                                        )   MGA PARTIES' OBJECTIONS
                       Defendant.         )   TO MATTEL, INC.'S PROPOSED
16                                        )   PHASE 1-B SPECIAL VERDICT
                                          )   FORMS
17  AND CONSOLIDATED ACTIONS.            )
                                          )
18

19

20

21

22

23

24

25

26

27

28

1      The MGA Parties respectfully submit their objections to Mattel's Proposed
2  Special Verdict Forms as set forth below. The MGA Parties object to Mattel's
3  Proposed Special Verdict Forms in general for omitting any of the questions
4  proposed by the MGA Parties. In particular, the MGA Parties object to the Mattel
5  Special Verdict Forms because they ignore entirely MGA Parties' legal affirmative
6  defenses. See July 24, 2008 Order re Proceedings Regarding Laches And Other
7  Equitable Defenses ("the Court will have the parties present to the jury evidence
8  relevant only to the remaining claims, the issue of fraudulent concealment, and any
9  legal defenses to the remaining claims").

10     The MGA Parties further preserve their objection to the extent that Mattel has
11  proposed a special, rather than an general, verdict form. The purpose of a special
12  verdict is to concentrate the jury on its fact-finding role. See Zhang v. Am. Gem.
13  Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003) (discussing differences between
14  special verdicts and general verdicts and noting that "special verdicts 'compel the
15  jury to focus exclusively on its fact-finding role'") (quoting Floyd v. Laws, 929 F.2d
16  1390, 1395 (9th Cir. 1991)). Particularly where cases are complex and fact-intensive,
17  special verdict forms provide the jurors with assistance in framing their
18  understanding of the issue. For example, in a First Amendment case, Tavoulareas v.
19  Piro, then Circuit Court Judge Ruth Bader Ginsburg lauded the use of detailed
20  special verdict forms, noting that they "impel the jurors to advert to the framework
21  within which the judge has instructed them to consider the case and could assist them
22  to hold the distinct legal questions in clear and separate view" and "thus may
23  promote both comprehension and actual application of the governing … law." 817
24  F.2d 762, 809 (D.C. Cir. 1987) (Ginsburg, J., concurring). She described with
25  approval the use of "a jury verdict form which 'took the jury step by step through
26  each of the theories on which plaintiff relied.'" Id. at 809 n.4 (internal citations
27  omitted). Given the complexity of the issues in this case, particularly with respect to
28

EXHIBIT _____ 12

PAGE _____ 92

1  the copyright claims at issue in this Phase, the MGA Parties respectfully submit that
2  a special verdict form would be appropriate.
3        Finally, to the extent Mattel's proposed verdict form incorporates or relies
4  upon Mattel's objectionable jury instructions, the MGA Parties renew their
5  objections to those instructions and incorporate those objections by reference.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Objections to Mattel's Phase 1-B Proposed Verdict Form -Case No. CV 04-9049 SGL (RNBx)

EXHIBIT _2_
PAGE 93

### Special Verdict Form for Phase 1B

We answer the questions submitted to us as follows:

### Intentional Interference With Contractual Relations

1.    In Phase 1A of this trial, you found that MGA Entertainment, Inc. ("MGA") and Isaac Larian are liable to Mattel for intentional interference with contractual relations.  What amount of damages do you award to Mattel?

$_____

### Aiding and Abetting Breach of Fiduciary Duty

2.    In Phase 1A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty. What amount of damages do you award to Mattel?

$_____

### Aiding and Abetting Breach of the Duty of Loyalty

3.    In Phase 1A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.  What amount of damages do you award to Mattel?

$_____

EXHIBIT __12__

PAGE ____99____

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Conversion

4.      In Phase 1A of this trial, you found that MGA, Isaac Larian and MGA Entertainment (HK) Limited ("MGA Hong Kong") are liable to Mattel for conversion.  What amount of damages do you award to Mattel?

$_____

EXHIBIT ___12___

PAGE ___95___

4

1    **OBJECTION.**  The MGA Parties object to questions 1-4 to the extent that

2  they do not distinguish between damages awarded against different defendants.

3  Particularly as to conversion, where the defendants may have been found to convert

4  different items with different fair market values, this distinction is necessary.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                             EXHIBIT ___12____

28                                             PAGE ____96____

5

1

## **Copyright Infringement**

2

3      5.      Did MGA infringe Mattel's copyrights?

4              Yes   _____

5              No    _____

6              *If your answer is "yes," then answer Questions 6 and 7.*

7              *If your answer is "no," then answer Question 8.*

8

9      6.      Was MGA's infringement of Mattel's copyrights willful?

10             Yes   _____

11             No    _____

12

13     7.      What amount of damages do you award to Mattel for MGA's

14     infringement of Mattel's copyrights?

15             $_____

16

17     8.      Did Isaac Larian infringe Mattel's copyrights?

18             Yes   _____

19             No    _____

20             *If your answer is "yes," then answer Questions 9, 10 and 11.*

21             *If your answer is "no," then answer Question 12.*

22

23     9.      Was Mr. Larian's infringement of Mattel's copyright's willful?

24             Yes   _____

25             No    _____

26

27     10.     You must answer two questions regarding damages for Isaac Larian's

28     infringement of Mattel's copyrights.  First, what amount of damages do you

6

EXHIBIT _____ 12

PAGE _____ 97

1  award to Mattel for Isaac Larian's infringement of Mattel's copyrights, as

2  measured by distributions by MGA to Mr. Larian?

3  　　　$_____

4

5  11.　Separately, what amount of damages do you award to Mattel for Isaac

6  Larian's infringement of Mattel's copyrights, as measured by the value of Mr.

7  Larian's ownership interests in MGA?

8  　　　$_____

9

10  12.　Did MGA Hong Kong infringe Mattel's copyrights?

11  　　　Yes　____

12  　　　No　____

13  　　　*If your answer is "yes," then answer Questions 12 and 13.*

14  　　　*If your answer is "no," then answer Question 14.*

15

16  13.　Was MGA Hong Kong's infringement of Mattel's copyrights willful?

17  　　　Yes　____

18  　　　No　____

19

20  14.　What amount of damages do you award to Mattel for MGA Hong

21  Kong's infringement of Mattel's copyrights?

22  　　　$_____

23

24

25

26

27  EXHIBIT ___ 12

28  PAGE ___ 96

7

1   **OBJECTION.**  The MGA Parties object to questions 5-14 on the grounds that they

2  are patently overbroad in the face of the complex copyright issues in this case.  There

3  are sixteen drawings at issue in this case, and the jury might be asked consider both

4  BRATZ character art and BRATZ dolls – potentially thousands of items.  One

5  question, "Is [] liable to Mattel for copyright infringement?" can hardly produce a

6  factual finding on all of these diverse issues.  The MGA Parties respectfully suggest

7  that it is premature at this point to determine what questions should be asked on the

8  verdict form for copyright claims because Mattel has not yet indicated the precise

9  parameters of its claim, and reserve the right to amend their own verdict form to

10  conform to the evidence and arguments presented at trial.  However, regardless of

11  the evidence, Mattel's form is woefully inadequate.

12      The MGA Parties further object to these questions to the extent that they

13  incorporate Mattel's improper approach to damages calculation for the reasons set

14  forth in the MGA Parties' objections to Mattel's jury instructions on copyright

15  damages, which are incorporated by reference.

16      Finally, the MGA Parties object to these questions to the extent that they refer

17  to willful infringement, for the reasons set forth in the MGA Parties' objection to

18  Mattel's instruction Copyright – Damages - Willful Infringement, which is

19  incorporated by reference.

20

21

22

23

24

25

26

27                                  EXHIBIT ___12___

28                                  PAGE ___99___

**Fraudulent Concealment**

15.   Did MGA fraudulently conceal the bases for Mattel's claim of intentional interference with contract against it?

     Yes  _____

     No  _____

16.   Did Isaac Larian fraudulently conceal the bases for Mattel's claim of intentional interference with contract against him?

     Yes  _____

     No  _____

17.   Did MGA fraudulently conceal the bases for Mattel's claim of conversion against it?

     Yes  _____

     No  _____

18.   Did Mr. Larian fraudulently conceal the bases for Mattel's claim of conversion against him?

     Yes  _____

     No  _____

19.   Did MGA Hong Kong fraudulently conceal the bases for Mattel's claim of conversion against it?

     Yes  _____

     No  _____

EXHIBIT _12_

PAGE _100_

9

Objections to Mattel's Phase 1-B Proposed Verdict Form -Case No. CV 04-9049 SGL (RNBx)

1   **OBJECTION.**  The MGA Parties object to questions 15-19 to the extent they do not

2   refer to Mattel's burden of proof on the issue of fraudulent concealment.  (See MGA

3   Parties' Proposed Verdict Form Questions 18-22 ("Has Mattel proven by a

4   preponderance of the evidence that …").  The MGA Parties further respectfully

5   submit that it would be appropriate to mention the relevant date (April 27, 2001 or

6   2002) in the verdict form to ensure clarity on the part of the jury.  (See id.)  The

7   MGA Parties also incorporate by reference their response to Mattel's Statement

8   Regarding Fraudulent Concealment in Mattel's jury instructions.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27          EXHIBIT ___ 12

28          PAGE ___ 101

10

**Punitive Damages**

20.   Did MGA act with malice, oppression, or fraud?

　　　Yes   ＿＿＿

　　　No   ＿＿＿

　　　*If your answer is "yes," then answer Question 21.*

　　　*If your answer is "no," then answer Question 22.*


21.   What amount of punitive damages do you award against MGA?

　　　$＿＿＿＿＿＿＿＿＿＿＿＿＿


22.   Did Isaac Larian act with malice, oppression, or fraud?

　　　Yes   ＿＿＿

　　　No   ＿＿＿

　　　*If your answer is "yes," then answer Question 23.*

　　　*If your answer is "no," then answer Question 24.*


23.   What amount of punitive damages do you award against Mr. Larian?

　　　$＿＿＿＿＿＿＿＿＿＿＿＿＿


24.   Did MGA Hong Kong act with malice, oppression, or fraud?

　　　Yes   ＿＿＿

　　　No   ＿＿＿

　　　*If your answer is "yes," then answer Question 25.*


25.   What amount of punitive damages do you award against MGA Hong Kong, if any?

　　　$＿＿＿＿＿＿＿＿＿＿＿＿＿

EXHIBIT 12

PAGE 102

11

1    **OBJECTION.** The MGA Parties object to questions 20-25 on the grounds that

2    Mattel lacks any evidentiary basis to submit a verdict form concerning punitive

3    damages. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court

4    properly refused to instruct jury on punitive damages, as there was not clear and

5    convincing evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th

6    Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of the case if

7    it is supported by law and has foundation in the evidence").

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    EXHIBIT _____ 1 ᒻ

28    PAGE _____ 1 ᗷ

1    Once this verdict form is completed, the foreperson of the jury should sign and

2  date on the lines below.

3

4  DATED: _____, 2008

5

6    _____

7                Jury Foreperson

8

9

10  DATED: July 29, 2008

11                SKADDEN, ARPS, SLATE, MEAGHER &

12                FLOM, LLP

13                By: _____/s/ Thomas J. Nolan_____
                      Thomas J. Nolan
14                    Attorneys for the MGA Parties

15

16

17

18

19

20

21

22

23

24

25

26

27                EXHIBIT ___12___

28                PAGE ___104___

                        13

Objections to Mattel's Phase 1-B Proposed Verdict Form -Case No. CV 04-9049 SGL (RNBx)

# EXHIBIT 13

**From:** Paula Treantafelles
**Sent:** Wednesday, September 27, 2000 12:34 PM
**To:** Franki Tsang; Judy Rich
**Subject:** BRATZ

Franki
Please note that I sent to you today a binder describing the new small doll line called BRATZ.

This is a small doll line made up of 4 characters. The position of this line is hair and dress play. Dolls are sold with 1 hair style and 1 outfit for a "day time" look and another outfit and hair style for a "night time" look.

The consumer has the ability to:
- change dolls clothes
- snap in different hair styles (illustrated in the binder)
- snap in different pairs of shoes (illustrated in the binder)

I need you to help me get an idea of what a dress pack would cost. I need to make sure that pieces I am expecting to include support our retail price.

The second to last page of this binder reflects the doll pack piece count
- 2 hair styles
- 1 purse
- 4 piece fashion set
- 2 pairs of shoes

The very last page of this binder indicates:
- preferred hair vendor (contact name, address and phone number)
- approximate amount/weight of hair

I also sent to you physical samples of:
- body
- outfit pieces
- purse
- shoes
These pieces represent approximate size or amount of softgoods material expected for these mentioned pieces.

I am hoping that this information will help you ..help me get an idea of how much these components will cost.

I am going to send you a PDF by end of next week. Please call me if you have any questions. I would love to put a development schedule together as soon as I get Isaac to buy off on the line I mentioned above.

Sorry for this.

ATTORNEY'S EYES ONLY

MGA000422



EXHIBIT ____13____     11-5-04     SH

PAGE ____105____

EX 18-0001

# EXHIBIT 14

| | |
|---|---|
| **From:** | Judy Rich |
| **To:** | Mercedeh Ward |
| **CC:** | Cecilia Kwok; Samuel Wong |
| **BCC:** | |
| **Sent Date:** | 2000-10-16 15:35:51:828 |
| **Received Date:** | 2000-10-16 15:36:47:031 |
| **Subject:** | FW: Bratz |
| **Attachments:** | Clay.jpg |

Mercedeh,

I don't know if or how much Isaac has asked you to oversee the production of the Bratz line, but I expect that your expertise will be needed, so I'm forwarding this to you.

Judy


Judy Rich
Project Planner
Product Development
MGA Entertainment
jrich@mgae.com
818/894-2525 x173
www.mgae.com

-----Original Message-----
From: Cecilia Kwok
Sent: Sunday, October 15, 2000 9:52 PM
To: Paula Treantafelles
Cc: Franki TSANG; Judy Rich; Samuel WONG
Subject: Bratz

Paula,

Have received the rough clay body for the captioned item today. Found that the height of the body is more than 11". The doll height was 9.5 - 10" as per your package sent to HK before. Please clarify.
Enclosed is the photo for your reference.

Moreover, HK is still awaiting the following:
- PDF
- Fabric information

Please advise.

Regards,
Cecilia



EXHIBIT ___14___

PAGE ___104___

Confidential - Attorney's Eyes Only

MGA HK 0011155
EX 1105-0001



Confidential - Attomey's Eyes Only

MGA HK 0011156
EX 1105-0002

EXHIBIT __14__
PAGE __107__

# EXHIBIT 15



# PRODUCT DEVELOPMENT FORM

**MICRO GAMES OF AMERICA**

DESIGN#          SKU#

---

**PRODUCT DESCRIPTION**

| | | |
|---|---|---|
| Working Title: BRATZ doll packs | | Date: 10/16/00 |
| Final Name: | | Revision Date: |

---

**PRODUCTION SCHEDULE**

| Design Sample: | 1st Sample: | Pre-Production: | Mock-up Samples: | Production Start: | 4/1/00 |
|---|---|---|---|---|---|
| Quantity: | Quantity: | Quantity: | Quantity: | 1st Available: | |

---

**LEGAL INSTRUCTIONS**

| | |
|---|---|
| ☐ MGA Logo | ☐ European Labeling |
| ☐ TM, ® & © 2000_ MGA Entertainment, Inc. All Rights Reserved. | ☐ Other trademarks / logos per suppliers contracts, licensing, etc.. Specify: |
| 16730 Schoenborn St., North Hills, CA. 91343 www.mgae.com | |
| ☐ 800 number | ☐ Made in _China_____ |
| ☐ "CE" mark on package | ☐ Printed in: |
| ☐ FCC Requirement | ☐ Vin # |
| ☐ Licensee Copyriht | ☐ Patent Number or "Patent Pending" |
| ☐ Other Copyright | |

---

**MANUFACTURING CONFIGURATIONS**

| FMA date: | 2/1/00 | | Target Product Cost: | 1.85 |
|---|---|---|---|---|
| Package Type: | Clamshell | | Hong Kong FOB: | N/A |
| Try Me: | NO | | HK Tooling Cost: | |
| Instruction Sheet: | NO | | Royalty Rate: | 3% |
| Batteries: | NO | | Forecast: (Quota) | 1,000,000 |
| Assortment: | 4 different dolls | | Colors: | N/A |
| # / carton: | 6 units per master carton | | Texture: | N/A |
| Size: | 9"W X 12'H X 2.5' D | | Product Label: | N/A |

---

Revision 2

Page 1 of 5

May 3, 2000

Confidential - For Attorney's Eyes Only

Exhibit 923 Chui 9/28/07 Pgs. 5 J'ana Siegers, CSR 10845

MGA HK 0002370

EXHIBIT 15

PAGE 108

EX 923-0001



**MICRO GAMES OF AMERICA**

# PRODUCT DEVELOPMENT FORM

DESIGN#          SKU#

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ PRODUCT DESCRIPTION ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**CONCEPT OVERVIEW:**  *(Marketing)*
BRATZ are a gang of  teenaged girls that love to change the style of their hair and clothes to create new but very extreme and funky fashion styles.

An assortment of 9 inch small/fashion dolls that offer both fashion and hair play.  These dolls will be sold with two outfits and hair styles for both daytime and night time "looks".  Consumer can change the hair styles, fashion and feet (sculpted shoes that  snap into leg at ankle) to modify the "look" of her doll.

**MATERIALS DESCRIPTION:**  *(Marketing)*
Articulated 9 inch doll with roto-cast head and injection molded body
Fashion will be made of softgoods
Hair will be rooted in hollow  saran hair material
"Feet" will be made of roto-cast material with relatively hard shore-hardness

**GAMEPLAY:**  *(Game Designer and Marketing)*
Consumer changes hair by pulling the scalp piece from top of head and snapping in a new one.

Consumer changes fashion removing and dressing doll like traditional Barbie fashion play

Consumer changes feet by pulling the feet from ankle and snapping in a new set of feet

**LCD Layout:**  *(Game Designer and Marketing)-*
Not applicable

Revision 2                          Page 2 of 5                          May 3, 2000

Confidential - For Attorney's Eyes Only

EXHIBIT ___15___

PAGE ___109___

MGA HK 0002371

EX 923-0002

Confidential - For Attorney's Eyes Only

EXHIBIT ___15___

PAGE ___110___

MGA HK 0002372

EX 923-0003



# PRODUCT DEVELOPMENT FORM

DESIGN#          SKU#

ELECTRONIC SPECIFICATIONS

*Marketing is responsible to fill in specifications that are "must haves" in "Marketing Requirements". Development is responsible to respond to the specifications and fill in the remaining specifications in "Development Results". "N/A" should be inserted for any specifications that are not applicable and "TBD by PD" if Marketing does not have a particular requirement but is needed for the product (To B Determined by Product Development)t. If the space provided does not suffice, use a number reference to expand below.*

| | | Marketing Requirements | Development Results |
|---|---|---|---|
| Try Me | Number / length (sec) | N/A | |
| Sound | Number of Channels | N/A | |
| Voice | Length of Recording (sec, sample rate) | N/A | |
| Music | Length of Recording (sec, sample rate) | N/A | |
| Battery | Type | N/A | |
| | Life | N/A | |
| | | | |
| Interactive Communications | IR or RF | N/A | |
| | Frequency | N/A | |
| | Range | N/A | |
| Voice Recognition | Speaker Dependent # words | N/A | |
| | Speaker Independent # words | N/A | |
| Radio Control | Range | N/A | |
| | | | |
| Inputs / Outputs | On/Off | N/A | |
| | Reset | N/A | |
| | Pause | N/A | |
| | Lights | N/A | |
| | Motion, speed | N/A | |
| | LCD - size | N/A | |
| | Other | N/A | |
| | | | |

Confidential - For Attorney's Eyes Only

EXHIBIT _____ 15_____

PAGE _____ 111_____

MGA HK 0002373

EX 923-0004



**MICRO GAMES OF AMERICA**

# PRODUCT DEVELOPMENT FORM

DESIGN#          SKU#

| IC | Controller / Processor | N/A | |
|---|---|---|---|
| | Memory – program | N/A | |
| | Memory – recordings | N/A | |
| | Synthesizer | N/A | |
| | Logic Power Level | N/A | |

*ADDITIONAL INSTRUCTIONS*

*PROGRAMS*

| | Owner | Release / Revision |
|---|---|---|
| **Color Study** | Art Design / Product Manager | |
| **Texture Callout** | Art Design / Product Manager | |
| **Preliminary Art Design Drawings** | Art Design / Product Manager | |
| **Preliminary Packaging** | Art Design / Product Manager | |
| **Preliminary Schematics** | Project Manager LA / HK | |
| **Preliminary Mechanical Drawings** | Project Manager LA / HK | |
| **Preliminary Cost with BOM** | Project Manager HK | |
| **Project Plan** | Project Manager LA / HK | |
| **Engineering Specification** | Project Manager LA / HK | |
| **Flow Charts** | Product / Project Manager LA / HK | |
| **Final Art Design Drawings** | Art Design / Product Manager | |
| **Final Packaging** | Art Design / Product Manager | |
| **Final Schematics** | Project Manager LA / HK | |
| **Final Mechanical Drawings** | Project Manager LA / HK | |

Revision 2                           Page 5 of 5                           May 3, 2000

Confidential - For Attorney's Eyes Only

EXHIBIT ___ 15
PAGE ___ 172

MGA HK 0002374

EX 923-0005

# EXHIBIT 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.     CV 04-09049 SGL(RNBx)                              Date:  June 2, 2008
Title:       CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.  v. CARTER BRYANT
CASE NO. CV 05-02727 SGL (RNBx):  MGA ENTERTAINMENT, INC. v. MATTEL, INC.
========================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

              Jim Holmes
              Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:        ATTORNEYS PRESENT FOR MATTEL:

None Present                                None Present


ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present     .

PROCEEDINGS:   **FURTHER AND FINAL ORDER RE STATUTE OF LIMITATIONS DEFENSE
               (IN CHAMBERS)**

       In an order dated May 27, 2008, the Court made several rulings regarding the timeliness of
Mattel's claims ("SOL Order").  At that time, the Court invited further, limited briefing from the
parties regarding "what further conclusions regarding the timeliness of each claim should be
drawn" in light of the Court's rulings.  The parties filed further briefing in conformity with the Court's
Order, which the Court has reviewed.

       As a result of the briefing, the Court discusses the following issues:  (1) Clarification of the
Court's Ruling Regarding the August 2002 Anonymous Letter; (2) Clarification of the Court's
Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with
Contractual Relations and Conversion; and (3) Accrual of Mattel's Copyright Claim.

MINUTES FORM 90                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                          1

EXHIBIT _16_
PAGE _113_

### I. Clarification of the Court's Ruling Regarding the August 2002 Anonymous Letter

The parties differ on their interpretation of the Court's holding as to the earliest accrual date of Mattel's claims. Although the Court's SOL Order, read as a whole, is most reasonably interpreted as clarified herein, MGA, quite understandably, interprets the Court's Order in a manner more favorable to its position regarding the statute of limitations defense. Accordingly, the Court clarifies its Order as set forth below.

In a key paragraph of the SOL Order, the Court articulates the four possible accrual dates of those state-law claims, asserted by Mattel against Carter Bryant, that are subject to the discovery rule:[1]

> MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue. Any of the following could be the date upon which MGA claims against Carter Bryant accrued:  The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.

SOL Order at 7-8.  This portion of the Court's Order implicitly rejects MGA's contention that the August, 2002, letter could give rise to Mattel's claims against Bryant.

As set forth in the SOL Order, a claim accrues where a plaintiff has _**knowledge**_ of at least one of the three generic elements of wrongdoing, causation, and harm.  Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807 (Cal. 2005) (citation omitted).  The SOL Order did not explicitly state, as the Court does now, that there is no evidence that Mattel had any _**knowledge**_ of any one of the three generic elements of its claims, and thus no claim accrued, prior to the earliest date identified by the Court, which is July 18, 2003.

MGA's argument that Mattel's claims against Carter Bryant could have accrued in August 2002, is based on a statement made by the Court's regarding when the claims against MGA Entertainment, Inc., accrued:

> The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition.  Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant.  See Zeller Decl. Ex. 63

---

[1]    This portion of the Court's Order does not apply to Mattel's claims for intentional interference with contractual relations and conversion, which are addressed infra, in Section II.

2

Initials of Deputy Clerk:  jh

EXHIBIT ___16___

PAGE ___114___

(alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

SOL Order at 9. Mattel's understanding of this part of the SOL Order, that the claims against MGA Entertainment, Inc., accrued on the same date as did the claims against Carter Bryant, is correct. See Mattel Supp. Brief at 6 n.4.

## II. Clarification of the Court's Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with Contractual Relations and Conversion

The Court's statute of limitations analysis regarding Mattel's claims for intentional interference with contractual relations and conversion was rather inartfully articulated. The Court's ruling was meant to convey that although the remainder of the state-law claims asserted by Mattel are subject to the discovery rule, these two claims are not. Therefore, the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to Mattel's claims for intentional interference with contractual relations and conversion. Instead, these claims, having arisen around the time Bryant resigned from Mattel, are time-barred unless the relevant limitations periods have been extended by a period of fraudulent concealment.

Whether a period of fraudulent concealment exists, as well as the duration of any such period, cannot be determined on the undisputed record and are therefore questions of fact for the jury.

## III. Accrual of Copyright Claim

The supplemental briefing brings into focus an issue not addressed by the SOL Order: The accrual date of Mattel's copyright claim.

MGA refers to two arguments it made in its partial summary judgment papers regarding the statute of limitations and Mattel's copyright claim. First, MGA argues that the date Mattel registered its copyrights impacts upon the Court's application of the relation-back doctrine; second, MGA argues that the "rolling" statute of limitations regarding copyright claims is inapplicable when the gravamen of the claim is a claim of ownership rather than infringement.

Mattel did not address this issue in its supplemental briefing, which was filed concurrently with MGA's supplemental briefing. In its partial summary judgment papers, however, Mattel had responded to these arguments.

In reviewing the supplemental briefs, as well as the relevant portions of the partial summary judgment papers, and reflecting upon the hearings held on this matter, the Court concludes that it need not resolve MGA's two arguments.

In the SOL Order, the Court's analysis equated the accrual of Mattel's copyright claim with

EXHIBIT _16_

PAGE _115_

the accrual with certain of Mattel's state-law claims; as explained below, this analysis overlooks important concepts of copyright law.

As noted by the Court in its order regarding summary judgment, in order to establish copyright infringement, a plaintiff must establish three elements: (1) ownership of a valid copyright, (2) the defendant's access to the original, and (3) substantial similarity between the copyrighted work and the allegedly infringing work. Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003). Here, although the date Mattel received details regarding the City World litigation is in dispute, it is uncontroverted that Mattel did not receive copies of the Bratz drawings prior to November 23, 2003. Without the drawings, Mattel could not assess the substantial similarity factor to determine whether it could assert a claim that the Bratz dolls infringed Mattel's rights to them. Accordingly, on the undisputed record, the Court concludes that Mattel's copyright claim did not accrue prior to November 23, 2003.

Therefore, when first asserted on November 20, 2006, Mattel's copyright claim was timely in its own right, and the Court need not resolve MGA's two arguments regarding relation back and the rolling statute of limitations.[2]

**IT IS SO ORDERED.**

---

[2] In accordance with the foregoing, the Court VACATES the following language from the SOL Order:

> The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."). Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

SOL Order at 8.

MINUTES FORM 90
CIVIL – GEN

4

Initials of Deputy Clerk: jh

EXHIBIT __16__

PAGE __116__

# EXHIBIT 17

RECEIVED

APR 0 1 2008

1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
3 | MARINA V. BOGORAD (Bar No. 217524)
(mbogorad@skadden.com)
4 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Ste. 3400, Los Angeles, CA 90071-3144
5 | Tel.: (213) 687-5000 / Fax: (213) 687-5600

6 | KENNETH PLEVAN (admitted *pro hac vice*)
(kplevan@skadden.com)
7 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square, New York, NY 10046
8 | Tel.: (212) 735-3000 / Fax: (212) 735-2000

9 | Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

10 |                 UNITED STATES DISTRICT COURT

11 |                CENTRAL DISTRICT OF CALIFORNIA

12 |                      EASTERN DIVISION

13 |
CARTER BRYANT, an individual,           ) CASE NO. CV 04-9049 SGL (RNBx)
14 |                                        ) Consolidated with Case No. 04-9059
                    Plaintiff,           ) and Case No. 05-2727
15 |                                        )
          v.                             ) Honorable Stephen G. Larson
16 |                                        )
MATTEL, INC., a Delaware                 ) MGA PARTIES' REPLY MEMORANDUM
17 | corporation,                           ) OF POINTS AND AUTHORITIES IN
                                         ) FURTHER SUPPORT OF THEIR MOTION
18 |                 Defendant.           ) FOR PARTIAL SUMMARY JUDGMENT
                                         )
19 | ─────────────────────────────       ) **FILED UNDER SEPARATE COVER**:
                                         ) (1) MGA PARTIES' REPLY TO MATTEL,
20 | AND CONSOLIDATED ACTIONS            )     INC.'S [CORRECTED] STATEMENT
                                         )     OF GENUINE ISSUES;
21 |                                        ) (2) DECLARATIONS OF MARINA V.
                                         )     BOGORAD, MARTIN HITCH and SUP.
22 |                                        )     DECLARATION OF ISAAC LARIAN;
**FILED UNDER SEAL PURSUANT**            ) (3) MGA PARTIES' REQUEST FOR
23 | **TO PROTECTIVE ORDER**              )     JUDICIAL NOTICE;
                                         ) (4) MGA PARTIES' OPP'N TO MATTEL,
24 |                                        )     INC.'S EVIDENTIARY OBJECTIONS;
                                         ) (5) MGA PARTIES' OPP'N TO MATTEL,
25 |                                        )     INC.'S OBJECTIONS TO MGA
                                         )     PARTIES' REQUEST FOR JUDICIAL
26 |                                        )     NOTICE; and
                                         ) (6) PROOF OF SERVICE.
27 |
28 |                                        Hearing Date: April 22, 2008; Time: 10:00 a.m.

─────────────────────────────────────────────────────────
MGA Parties' Reply in Further Support of Their Motion for Partial Summary Judgment –
Case No. CV 04-9049 SGL (RNBx)

EXHIBIT _____ 17

PAGE _____ 117

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT .............................................................................................. 2

I.    MATTEL'S OPPOSITION CONFIRMS THAT ITS CLAIMS ARE STALE ............................................................................................. 2

    A.    Mattel Indisputably Knew or Should Have Known of the Facts Underlying Its Current Claims No Later Than March of 2002 ............ 4

    B.    Mattel's Inquiry Notice Theory Is Factually And Legally Unsupported .................................................................................. 7

    C.    There is No Tolling For Fraudulent Concealment Or The Stay ......... 12

    D.    Mattel Concedes It Cannot Satisfy the Mistake/Ignorance Requirement for "Relation-Back" of Claims Against New Parties.... 14

II.    MATTEL ONLY CONFIRMS ITS STATE-LAW CLAIMS ARE PREEMPTED ...................................................................................... 16

    A.    Mattel Fails to Save its Conversion Claim from Preemption ............ 17

        1.    Mattel's Claim that the MGA Parties Have Converted Bryant's Ideas/Concepts Fails ................................. 18

        2.    Mattel Provides No Evidence that the MGA Parties Converted Any Tangible Material of Any Value ..................... 19

    B.    Mattel Did Not Save Its Intentional Interference Claim From Preemption .............................................................................. 20

    C.    Mattel's Unfair Competition Claim is Preempted to the Extent it is Based on Copyright Infringement ........................................... 21

III.    MATTEL CONCEDES AWAY ITS UNFAIR COMPETITION CLAIM .............................................................................................. 22

    A.    Mattel Conceded The Fraudulent Prong Of Its Unfair Competition Claim .................................................................... 22

    B.    Mattel Effectively Conceded the Unfair Prong of its Claim ............. 22

    C.    Mattel Merely Confirmed the Unlawful Prong of Its Claim Fails ..... 23

    D.    Mattel Cannot Support its Common Law Unfair Competition Claim .................................................................................... 24

i

EXHIBIT _____ 12

PAGE _____ 118

1  IV.  MATTEL'S OPPOSITION CONFIRMS THAT THE MGA PARTIES DID  NOT INTENTIONALLY INTERFERE WITH BRYANT'S
2      CONTRACT ............................................................................... 25

3      A.  Mattel Created No Genuine Issue That The MGA Parties Lacked the Intent to Induce Bryant to Breach His Contract.............. 25
4
5      B.  The MGA Parties Did Not Induce Bryant to Leave Mattel  and Therefore Could Not Be the Cause of His Alleged Breach................ 28

6  V.   MATTEL CREATED NO GENUINE ISSUE TO SAVE ITS AIDING AND ABETTING CLAIMS AGAINST THE MGA
7      PARTIES................................................................................... 29

8  VI.  MATTEL IS NOT ENTITLED TO RULE 56(F) RELIEF .......................... 30

9  CONCLUSION .................................................................................. 30

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PRELIMINARY STATEMENT

In their opening brief, the MGA Parties established that Mattel's claims were time-barred, preempted, and failed on their merits. Mattel's meandering opposition does nothing to change that, even after Mattel repeatedly "corrected" its brief and supporting papers to make extensive substantive changes days after the deadline to file its brief. If anything, Mattel's opposition is more noteworthy for what it concedes or ignores than for what it argues. For example, Mattel fails to defend the fraudulent portion of its statutory unfair competition claim, effectively conceding it. Mattel also effectively concedes the unfair portion of that same claim by admitting that it had to plead and establish an antitrust violation to maintain that claim, yet no such claim is pled. Even where Mattel purports to contest a point, it makes fatal concessions. Thus, for example, Mattel contends that it is entitled to "relation-back" but admits that it knew the identities and roles of the MGA Parties in November of 2003 – before the first pleading in the '04 Action was filed – and thus, effectively concedes that it is not entitled to "relation-back", as this doctrine only applies in the case of mistake or ignorance of the identities of the newly-added defendants.

First, Mattel's claims are time-barred. Mattel did not create a genuine issue that it was on notice of its claims as early as January of 2001 but no later than March of 2002. Thus, all of its claims were stale years before it filed them in November of 2006. Mattel also failed to show that it was entitled to "relation-back" to the '04 Complaint, which is the only way that any of its claims could be revived because it admittedly knew all the facts surrounding its present claims before any pleading was ever filed and it cannot show the requisite mistake or ignorance. Indeed, Mattel has no substantive defense of the fact that "relation-back" is facially inapplicable to Larian and MGA (HK) as they were never parties to any action before Mattel filed its counterclaims. With respect to Mattel's infringement claim, Mattel failed to overcome the caselaw that holds that a copyright claim cannot be revived by relation-back where it was stale before plaintiff ever registered the copyright. As Mattel knew the facts surrounding its infringement claim three years before it registered its

MGA Parties' Reply in Further Support of Their Motion for Partial Summary Judgment –
Case No. CV 04-9049 SGL (RNBx)
1
EXHIBIT _____ 13

PAGE _____ 120

1   copyrights, under any theory, that claim is time-barred. (Section I, infra.)

2       Second, Mattel's state law claims are plainly preempted.  Although Mattel strives

3   mightily to manufacture an "extra element" to avoid preemption, all that Mattel

4   accomplishes is undercutting its other claims.   There simply is no avoiding that the

5   gravamen of all of Mattel's claims is for ownership of Bryant's original works, which are

6   squarely within the scope of the Copyright Act, and thus preempted. (See Section II, infra.)

7       Third, Mattel concedes away its unfair competition claims, as it does not defend the

8   fraudulent prong, admits it did not plead the requisite elements for its unfair prong, and

9   failed to establish any genuine issue or legal basis for its unlawful prong. (Section III, infra.)

10       Fourth, Mattel's intentional interference with contract claim fails as Mattel did not

11   create a genuine issue that the MGA Parties: (i) actually knew and intended that their

12   conduct would cause Bryant to breach his contract with Mattel (they did not); or (ii) induced

13   Bryant to breach his contract (it is undisputed he approached MGA).  (See Section IV, infra.)

14       Finally, Mattel's aiding and abetting claims fail because: (i) as a matter of law, Bryant

15   neither owed nor breached a duty; (ii) the conduct that Mattel challenges is not actionable

16   under California law; and (iii) there is no substantial assistance. (See Section V, infra.)

17   **ARGUMENT**[1]

18   **I.**   **MATTEL'S OPPOSITION CONFIRMS THAT ITS CLAIMS ARE STALE**

19       The MGA Parties have shown that Mattel was on inquiry notice of its claims as early

20   as January 2001 and no later than March 2002; some of Mattel's claims accrued when

21

22   [1]   The MGA Parties refer the Court to their and Bryant's summary judgment papers and
opposition for the facts relevant to the arguments herein and incorporate them by reference. (See

23   MGA MSJ at 4-15; Bryant MSJ at 3-8; MGA Opp'n passim; Bryant Opp'n § II.) All "MGA RF"
and "Bryant RF" references are to MGA Parties' Reply to [Corrected] Mattel, Inc.'s Statement of

24   Genuine Issues and Carter Bryant's Response to Mattel, Inc.'s Statement of Genuine Issues,
respectively. All "MGA OF" and "Bryant OF" references are to MGA Parties' Opposition to

25   Mattel, Inc.'s Separate Statement of Uncontroverted Facts and Conclusions of Law and Bryant's
Statement of Genuine Issues in Opposition to Mattel's Motion for Partial Summary Judgment,

26   respectively. All "Mattel OF" and "Mattel CB OF" references are to [Corrected] Mattel, Inc.'s
Statements of Genuine Issues Regarding MGA Parties' and Bryant's Statements of Uncontroverted

27   Facts, respectively. All "MGA UF", "Mattel UF" and "Bryant UF" references are to MGA
Parties', Mattel's, and Bryant's Separate Statements of Uncontroverted Facts and Conclusions of

28   Law, respectively.

1  Bryant left Mattel in October 2000. (See MGA MSJ at 6-11, 17-20; MGA Opp'n at 22-24.)

2      In response, Mattel tries to dissect the big picture of the evidence presented into tiny

3  fragments, striving to show that each of those fragments would be insufficient to place

4  Mattel on notice of its claims. That exercise, however, is fruitless as the evidence must be

5  viewed in its totality. Mangini v. Aerojet-General Corp., 230 Cal. App. 3d 1125, 1152-1153

6  (1991). Taken together, it was ample to place Mattel on inquiry notice. Mattel's longest

7  surviving claim thus expired no later than March 2005 (MGA MSJ at 20-28 & MGA Opp'n

8  at 24-26),[2] and Mattel's claims were dead on arrival when brought in November 2006.

9  While Mattel argues that its claims should be revived by "relation-back" to its '04

10  Complaint, the MGA Parties already showed that this theory is unavailable to Mattel as it

11  failed to satisfy both the "mistake" requirement under Rule 15(c) and the "ignorance"

12  requirement under California "Doe" defendant procedure. (MGA MSJ at 29-33; MGA

13  Opp'n at 24-27.) As Mattel admits that it knew the facts underlying its current claims

14  against the MGA Parties as of November 2003, its protestations that it did not know the full

15  extent of the MGA Parties' liability before it filed its '04 Complaint are irrelevant.[3]

16      Finally, Mattel's arguments concerning alleged "fraudulent concealment" of the

17  underlying facts and the intervening stay of proceedings from March 2005 until May 2006

18  are similarly irrelevant. The former provides no relief to Mattel because, as the MGA

19  Parties already showed, Mattel was aware of enough facts to place it on inquiry notice

20

---

21  [2]      Even assuming the latest possible inquiry notice in March 2002, Mattel's claims governed
   by two- and three-year statutes of limitations expired by March 2005. Mattel's sole claim governed

22  by a four-year statute of limitations for statutory unfair competition (asserted only against Larian
   and MGA (HK)) expired by October 2004 because this claim accrues upon the underlying wrong,

23  which in this case occurred when Bryant left Mattel in October 2000. (MGA MSJ at 27.)

   [3]      Oddly, Mattel argues that the MGA Parties "assert[ed] that Mattel's claims relate back to

24  MGA's complaint or Mattel's answer in the '05 Action" (Mattel Opp'n at 39:17-18) and then
   argues that "relation-back" to the '05 Action does **not** apply. (Mattel Opp'n at 39-41.) In fact, the

25  MGA Parties actually argued **against** relation back to the '05 Action (and relation back to the '04
   Action as well). (MGA MSJ at 33-34.) The MGA Parties raised "relation-back" to the '05 Action

26  only because the Court raised "relation-back" as an alternative to "relation-back" to the '04
   Complaint. (See Jan. 12, 2007 Order at 14 n.2.) In any event, as the MGA Parties already explained,

27  "relation-back" of Mattel's claims against MGA (HK) and Larian to the '05 Action is unavailable
   to Mattel as a matter of law as they were never parties to that action. (See MGA MSJ at 33-34.)

28

---

1   despite the alleged concealment; moreover, the purported "concealment" cited by Mattel is

2   of its own making, as the underlying facts show nothing but MGA's response to Mattel's

3   threatening letter (written by Quinn Emanuel), which demanded that the MGA Parties cease

4   and desist any references to Mattel or its intellectual property alongside MGA's BRATZ.

5   The latter, in turn, is of no help to Mattel because even if the Court were to account for the

6   year of the stay, that would only push the filing of Mattel's claims back to November 2005,

7   at which point Mattel's claims still would be untimely, as they expired no later than March

8   2005. And, as shown below, that stay did not bar the filing of pleadings, as Mattel filed its

9   First Amended Answer in the '05 Action in September 2005, during the middle of the stay.

10  Thus, it could have asserted counterclaims against MGA, but affirmatively chose not do so.

11  ### A.   Mattel Indisputably Knew or Should Have Known of the Facts
         Underlying Its Current Claims No Later Than March of 2002

12

13      The clock on many of Mattel's claims started ticking as soon as Bryant left Mattel in

14  October of 2000, as Mattel had all the evidence it needed to know that Bryant associated

15  with MGA while in Mattel's employ.[4] Mattel concedes that its executives suspected that

16  Bryant was leaving Mattel for a competitor.[5] If Mattel had checked its phone records, which

17  Mattel admits was a regular practice of its security department, it would have known who

18  that competitor was, as "Bryant placed dozens of calls to MGA from his extension at Mattel,

19  and sent faxes to MGA from the BARBIE COLLECTIBLES fax line" in September 2000.

20  (Mattel Opp'n at 6; see also MGA Opp'n at 22, Mattel UF ¶ 8, MGA RF ¶ 8.) Mattel thus

21  [4]   Mattel's claims for aiding and abetting a fiduciary duty and duty of loyalty, intentional

22  interference, conversion, and statutory unfair competition all accrued in October 2000, when
    Bryant left Mattel for MGA because these claims accrue upon the occurrence of the underlying

23  wrong. (MGA MSJ at 21, 25-26, 27; MGA Opp'n at 25 n.19, 26 n.23.) As explained herein, the
    fraudulent concealment theory is unavailable to Mattel to toll the statute of limitations for these

24  claims against the MGA Parties. (Infra at 12; see also MGA MSJ at 25 n.30; MGA Opp'n at 22
    n.16.)

25  [5]   (Mattel OF ¶ 29 (former Marketing Manager for Mattel's Barbie Collectibles suspected that
    Bryant was leaving Mattel to join a competitor and disputing this fact only to the extent that Bryant

26  allegedly denied he was doing so); see also Mattel Opp'n at 23 (acknowledging "suspicions that
    Bryant was going to a competitor", despite Bryant's alleged assurances that he was not); cf. MGA

27  Opp'n at 22 n.16 (collecting authority demonstrating that fraudulent concealment does not toll the
    statute of limitations where plaintiff suspects the truth despite the alleged concealment).)

28

MGA Parties' Reply in Further Support of Their Motion for Partial Summary Judgment –
Case No. CV 04-9049 SGL (RNBx)          EXHIBIT 13
4

PAGE 123

1    constructively knew that Bryant went to MGA.[6]

2        Barely three months later, Mattel attended toy fairs in New York, Hong Kong, and

3    Tokyo, where it encountered new dolls called BRATZ presented by MGA.[7] Importantly,

4    these displays and subsequent publicity included BRATZ drawings from Bryant's sketches,

5    which serve as the basis of Mattel's current claims against the MGA Parties. (MGA Opp'n

6    at 23, citing MGA OF ¶¶ 153, 157; id. ¶¶ 154-5.)[8] As Mattel claims, one look at these

7    displays and the subsequent final product upon its entry into the market raised suspicions

8    concerning alleged similarities between BRATZ and Mattel's own products, some of which

9

10   [6]    3 B.E. Witkin, California Procedure: Actions § 602, p. 773 (4th ed. 1996) (for statute of limitations, "constructive and presumed notice or knowledge are equivalent to knowledge. So,
11   when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation ..., the statute
12   commences to run"); Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807-8 (2005) (for inquiry notice, "plaintiffs are charged with presumptive knowledge of an injury if they have … 'the
13   opportunity to obtain knowledge from sources open to [their] investigation'"); Ortega v. Kmart Corp., 26 Cal. 4th 1200, 1209 (2001) (owner has constructive knowledge of dangerous condition
14   on premises "if he knew or by the exercise of reasonable care could have discovered" condition).

15   [7]    While Mattel denies its attendance at the Hong Kong Toy Fair claiming (falsely) it was attended only by a representative for Mattel's Mexican subsidiary (Mattel OF ¶ 31), Mattel was
16   present at the New York Toy Fair, as it exhibited its own products there. (See Mattel OF ¶ 34 (no dispute as to Exs. 42 & 43 (Mattel's own materials for products exhibited at the New York Toy
17   Fair in February 2001); no dispute as to Ex. 10 to Russell Decl.) Mattel also cannot deny it attended the Tokyo Toy Fair and saw the BRATZ there, as Mattel filmed the BRATZ booth in
18   Tokyo in February 2001. (MGA OF ¶¶ 154-55.) It was also at these fairs that Mattel was offered an opportunity to sell BRATZ and shortly thereafter declined to do so, asserting that BRATZ were too
19   similar to some of its own products. (MGA MSJ at 6-7, 18; MGA Opp'n at 23; see also Declaration of Martin Hitch dated April 1, 2008 at ¶ 6 (instructions precluding distribution of the
20   BRATZ as "too similar" to Mattel's own products came from Mattel, Inc.'s offices in El Segundo, California).) Although Mattel attempts to suggest a distinction between Mattel, Inc. and Mattel
21   Mexico correspondence between Mateo Romano and Martin Hitch reveals that Mattel, Inc. directly controlled Mattel Mexico's affairs. (See MGA RF ¶ 126.)

22   [8]    This public display of the BRATZ drawings undercuts Mattel's argument that its copyright infringement claim could not accrue until Mattel obtained Bryant's drawings in November 2003
23   (Mattel Opp'n at 44-45), as those publicly displayed and published drawings were sufficient for Mattel to perform the required substantial similarity analysis, especially considering, as discussed
24   below, that Mattel was on notice that the BRATZ drawings were Bryant's work. For this reason, Mattel's attempt to claim lack of required information at the time it attended the 2001 toy fairs and
25   on this basis distinguish Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) (plaintiffs were on notice of their infringement claim via attendance at a trade show) (Mattel Opp'n
26   at 45-46), also fails. In this connection, Mattel's reliance on the laches analysis in Kling v. Hallmark Cards Inc., 225 F.3d 1030 (9th Cir. 2000), is similarly unavailing, as the Kling court
27   expressly distinguished its analysis from that required for statute of limitations, observing that a copyright infringement claim may accrue earlier than the starting point for laches. Id. at 1038-39.

28

1  had never seen the light of day and, thus, could have been accessed only by a Mattel insider
2  that went to MGA. (MGA MSJ at 8, 18-19; MGA Opp'n at 23; <u>accord</u> Mattel OF ¶¶ 40-41
3  (Mattel's executives and marketing saw the BRATZ in June-July 2001), 47-48 (when
4  Mattel's executives saw the BRATZ, they immediately concluded that there were
5  similarities between them and Mattel's own products).) Given that in Mattel's world, it
6  takes "twelve to eighteen months" to come up with a new doll (MGA RF ¶ 127),[9] and that
7  Bryant left Mattel to design his own line of dolls (MGA UF ¶ 27), Bryant's departure to
8  work for MGA only three months earlier should have placed him on top of the list of
9  suspects.

10        And, in fact, it did. As Mattel confirms, Mattel investigated Bryant, along with MGA
11  and Isaac Larian, as potential suspects in suspected infringement no later than March 2002.
12  (<u>See, e.g.</u>, Mattel OF ¶¶ 57-59, 112-13; <u>see also</u> MGA UF ¶¶ 35-36 & MGA OF ¶¶ 154,
13  156-57, 160.)[10] Indeed, as speculations at Mattel that Bryant was the BRATZ's creator
14  reached fever pitch – starting with June 2001, when BRATZ were released in Spain, and
15  continuing into early fall of 2001, when BRATZ appeared on the U.S. market (MGA MSJ
16  at 7-9; MGA Opp'n at 23; <u>see also</u> RF ¶¶ 39-43) – Mattel could not help investigating
17  Bryant. Especially since ***Mattel had been already told that it was Bryant that created the***
18  ***BRATZ*** by "an MGA vendor [who] innocently revealed Bryant's role as the creator of

19  [9]      Mattel's reliance on MGA's expert Robert Tonner that it is possible to make a new doll in
20  just a couple of months (Mattel Opp'n at 24) does not help Mattel here because Mattel's inquiry
    notice is formed out of <u>Mattel</u>'s beliefs, not MGA's experts. See Gonsalves v. Kaiser Sand &
21  Gravel Co., Inc., 1994 WL 125211, at **3-4 (N.D. Cal. Mar. 24, 1994) ("It is <u>plaintiff's</u> belief or
    suspicion of a connection between his injury and another's wrongdoing - not the confirmation of
22  the belief or suspicion - that is the crucial date for the commencement of the limitations period
    under the delayed discovery rule.") (emphasis added). Here, Mattel believed that BRATZ could not
23  have been created in the three months following Bryant's departure from Mattel; thus, Mattel's
    own beliefs that it takes longer than that to create a new doll placed Mattel on notice that BRATZ
24  were created some time prior to Bryant's departure from Mattel.
    [10]      Mattel's awareness of Larian's role in the BRATZ enterprise since at least February 2001,
25  as well as Mattel's March 2002 investigation of Larian's involvement in suspected infringement on
    Mattel's intellectual property, negates Mattel's arguments that it was not on notice of Larian's
26  alleged wrongdoing until much later. (See Mattel Opp'n at 26-27 (relying on authorities with
    nothing to do with California law).) Indeed, as the record shows, Mattel wrote directly to Larian in
27  February 2002, demanding that he remove references to Mattel's products appearing alongside
    references to BRATZ on one of the BRATZ fan sites. (MGA Opp'n at 24, citing MGA OF ¶ 82.)
28

1 | Bratz on a Bratz fan site" in March 2002. (Mattel Opp'n at 10.) Mattel was monitoring that

2 | site at the time, as on February 7, 2002, Mattel (through its current counsel, Quinn Emanuel)

3 | wrote MGA a threatening letter, demanding removal of references to Mattel's products from

4 | that site. (MGA Opp'n at 24, citing MGA OF ¶ 82.)

5 |       Notably, it was in response to Mattel's February 7, 2002 letter that MGA instituted an

6 | internal policy that Mattel dramatically refers to as a "strict code of silence" precluding

7 | public references to Mattel or its products alongside MGA's own products, the very policy

8 | that Mattel now cites in support of the MGA Parties' alleged "fraudulent concealment" of

9 | the facts underlying its claims. (Mattel Opp'n at 10-11, 29; cf. MGA OF ¶¶ 83-85, 107 &

10 | RF ¶¶ 93, 96, 98 (disputing Mattel's allegations that Larian misled the public by claiming to

11 | have created BRATZ); MGA RF ¶¶ 93, 96 (MGA's copyright registrations openly lists

12 | Bryant as BRATZ' creator); Mattel UF¶ 23.)[11]

13 |     **B.**   **Mattel's Inquiry Notice Theory Is Factually And Legally Unsupported**

14 |       Mattel argues that the above-cited evidence was insufficient to put it on notice

15 | because it does not show that Mattel knew that Bryant allegedly created BRATZ while

16 | working at Mattel. First, this argument is irrelevant as Mattel did not need explicit public

17 | statements identifying Bryant as a BRATZ' creator to trigger the required suspicions for its

18 | inquiry notice, as the combined effect of (1) the timing of Bryant's departure from Mattel to

19 | design his own line of fashion dolls, (2) Mattel's constructive knowledge upon his departure

20 | that Bryant went to work for MGA, (3) the amount of time that Mattel believed it took to

21 | design a line of fashion dolls, and (4) the alleged similarities between MGA's new products

22 | 
23 | [11]    In light of the accumulation of the above-described facts by August 2002, when Mattel's CEO received an anonymous letter alleging that Bryant created BRATZ and sold them to MGA while employed at Mattel (Mattel Opp'n at 25), that letter undoubtedly cemented the facts that had

24 | already developed into a full blown inquiry notice by the time the letter landed on Mr. Eckert's desk. While the letter, as this Court indicated, would not necessarily suffice by itself to trigger such

25 | notice (id. at n.124), it was certainly sufficient to do so when viewed in conjunction with all the facts gathered by Mattel by the time it came in. Indeed, as Mattel's own authority suggests (id. at

26 | 25-26, citing U.S. v. Tri-State Ins. Co. of Minn., 946 F.2d 581 (8th Cir. 1991)), if the anonymous letter confirmed something that Mattel already knew, i.e., "the [anonymous] information received

27 | were in some way self-proving, its validity evident on its face, the [limitations] period might immediately commence to run." Id. at 583.

28 |

1  and Mattel's own intellectual property, observable by anyone who, like Mattel, attended toy

2  fairs in early 2001, placed Mattel on notice by March 2001 that Bryant may have created

3  BRATZ. Soliman v. Philip Morris Inc., 311 F.3d 966, 973 (9th Cir. 2002) ("the date that

4  [plaintiff] actually discovered his [injury] is irrelevant if a reasonable person would have

5  discovered it sooner").  Mattel's own views on how long it took to create a new doll line

6  had to trigger suspicions that Bryant created BRATZ at the time he was actually employed

7  by Mattel. (MGA MSJ at 19.) Those suspicions were solidified by Mattel's rumor mill that

8  identified Bryant as a BRATZ' creator by summer of 2001. (MGA RF ¶¶ 53-55, 95.)

9      Second, this argument is factually inaccurate. Mattel's repeated assertions that there

10  was no publicly available information linking BRATZ and Bryant before July 2003 does not

11  make it so. (Mattel OF ¶¶ 33, 35, 36, 51, 78, 93.)[12] As Mattel's evidence shows, if anyone

12  searched the internet in March 2002, he or she would have encountered the posting on the

13  BRATZ fan cite originating from an MGA vendor, specifically identifying Carter Bryant as

14  the BRATZ' creator.[13] Mattel was closely monitoring this very site at the time. (Supra at 6.)

15  That knowledge, together with the timing of Bryant's departure from Mattel, as well as the

16  time Mattel considered necessary to develop a new doll line (supra at 5-6), would have

17  necessarily triggered suspicions that Bryant might have created BRATZ while at Mattel.

18  Mattel's own witnesses confirm that it was "common knowledge" within Mattel's Design

19  Center by June of 2001 that Bryant had a role in creating BRATZ. (MGA UF ¶¶ 53-54.)

---

20  [12]      And neither does Mattel's *outright deception* that MGA purportedly "admit[ed] that no

21  public statement even recognizing Bryant as Bratz's creator was issued until July 18, 2003, when
    the Wall Street Journal published an article with that information." (See Mattel OF ¶ 33, citing Ex.

22  113 to Declaration of Dylan Proctor dated March 7, 2008 (MGA Entertainment, Inc.'s
    Supplemental and Amended Responses to Mattel, Inc.'s Third Set of Requests for Admission to

23  MGA Entertainment, Inc., Nos. 183, 185); see also Mattel Opp'n at 11:4-6 (citing the same alleged

24  "conce[ssion]"), 29:16-18 (same).) One look at MGA's Responses cited in support of this assertion
    confirms that the Requests for Admissions in question were actually *denied*.

25  [13]      This was not the only publicly available statement identifying Bryant as the BRATZ'
    creator. As a Mattel's executive testified, Mattel was watching "anything competitive on the

26  marketplace, even regional" (MGA UF ¶ 40); thus, it undoubtedly could not have missed other
    public statements identifying Bryant as the creator of BRATZ, such as, for example, MGA's

27  registrations for BRATZ in Brazil (where Mattel is the largest toy company), which publicly
    specified that Bryant was the BRATZ' "author." (MGA RF ¶¶ 93, 96.)

28

1    Indeed, Mattel itself confirms that by that point it had all the facts necessary to trigger

2  inquiry notice when it freely admits that it was on notice of its claims as of November 2003,

3  when it received a copy of Bryant's contract with MGA. (Mattel Opp'n at 25.) This is so

4  because seeing a copy of the contract added nothing more substantive than the contract's

5  specific date to the aforementioned universe of facts that Mattel should have suspected all

6  along – specifically, that Bryant had associated himself with MGA while still working at

7  Mattel and that he could not have developed BRATZ in the couple of months between his

8  departure and the BRATZ' first public display.[14] Mattel may not toll the statute of

9  limitations until it received final confirmation of what it suspected all along, as its claims

10  accrued as soon as Mattel "at least 'suspect[ed] ... that someone has done something wrong'

11  to ... [it]." (MGA Opp'n at 23 n.18, citing, inter alia, Soliman, 311 F.3d at 971-72; see also

12  id. at 22 n.16; MGA MSJ at 17.) Accord Kline v. Turner, 87 Cal. App. 4th 1369, 1374-75

13  (2001) (rejecting argument that "it is not the suspicion of a general wrong but rather the

14  suspicion of a particular wrong that is crucial").

15    Mattel's inquiry notice theory does not hold up as a matter of law either. First, if one

16  follows Mattel's logic, the statute of limitations would not even begin to run until it has

17  "concrete evidence" (Mattel Opp'n at 26; cf. id. at 30 n.139 (distinguishing one of the MGA

18  _____

[14]    Bryant's deposition in November 2004 also did not add any "actionable" facts to what
19  Mattel had already suspected by that time. While Mattel argues that it was at that deposition that it
    learned that MGA and Larian knew of Bryant's employment at Mattel when they contracted with
20  him (Mattel Opp'n at 26-27), that fact is irrelevant because, as shown below (infra §§ IV. & V.), it
    does not constitute an actionable wrong. Rather, it was Mattel's possession of its own September
21  2000 phone records demonstrating Bryant's communications with MGA while employed at Mattel,
    coupled with Mattel's suspicions that he was leaving to work for a competitor, and a new line of
22  MGA's dolls appearing shortly thereafter, bearing alleged similarities to Mattel's never-released
    intellectual property, that had already placed Mattel on notice of its claims by the time it deposed
23  Bryant. This is confirmed by Mattel's March 2002 investigation (see, e.g., MGA UF ¶ 58 (citing
    evidence demonstrating that in March 2002 Mattel was already investigating MGA's hiring of
24  Mattel's employees)). The MGA Parties are relegated to reliance on mere snippets of that record
    due to Mattel's persistent and inconsistent assumption of privilege in connection with its March
25  2002 investigation (see Nolan Decl. ¶¶ 2-6). Was it not for Mattel's tactics, the evidence would
    reveal the precise focus of Mattel's investigation on the very facts underlying Mattel's current
26  claims. (See, e.g., MGA UF ¶ 73 (Mattel's head of security writing with regard to the August 2002
    anonymous letter that he had been "aware of this situation and have been working on it for several
27  months," noting that "[t]he truth of the matter is that Carter Bryant did work for Mattel, however
    [REDACTED] according to outside attorneys.") (emphasis added); see also RF ¶¶ 112-114.)

28

1 Parties' authorities on the basis that Mattel made no "admissions" that it was on notice of its

2 claims)) – as opposed to "unverifiable suspicion[s]" (id. at 21).   In other words, Mattel

3 seems to take the preposterous position that it must win on the ultimate issue – whether

4 Bryant created the drawings while at Mattel – before it would be on inquiry notice. (See,

5 e.g., id. at 26 n.125). Unsurprisingly, Mattel's statute of limitations theory is not the law.

6 Indeed, Mattel's reliance in support of its theory on Intermedics, Inc. v. Ventritex, Inc., 775

7 F. Supp. 1258, 1266 (N.D. Cal. 1991), has been already rejected as "absurd" by one Circuit:

8      A rule such as the one [Plaintiff] proposes [relying, inter alia, on Intermedics],

9      under which a statute of limitations only begins running when a plaintiff can

10      unassailably establish a legal claim ..., would effectively eviscerate the statute of

11      limitations in all cases in which the plaintiff never discovers "smoking gun"

12      evidence [supporting its claim], but instead must rely on circumstantial and

13      inferential evidence to prove [the claim].

14 Chasteen v. UNISIA JECS Corp., 216 F.3d 1212, 1218 (10th Cir. 2000).[15]

15      Second, Mattel argues that because its March 2002 investigation was limited to

16 suspected infringement of "Diva Starz" or "Toon Teens" only – i.e., products that are not

17 the subject of its current claims against the MGA Parties – that investigation, as well as the

18 alleged similarities between those products and BRATZ observed as early as February 2001,

19 could not give rise to an inquiry notice as to Mattel's current claims. (See, e.g., Mattel

20 Opp'n at 23.) *As a initial matter, Mattel's characterization of this investigation should be*

21 *stricken* as it has wholly precluded the MGA Parties from testing the veracity of that

22 assertion through the wrongful assertion of privilege. See Bittaker v. Woodford, 331 F.3d

23    [15]   Relying on a later opinion in Intermedics, the Tenth Circuit underscored "a further absurd

24 consequence which would flow from [Plaintiff]'s proposed approach": "[U]nder plaintiff's theory, a defendant could successfully invoke the statute of limitations only by proving, in trial, that at an

25 earlier time, outside the limitations period, plaintiff would have established liability if it had litigated the matter to judgment. Defendant, in other words, would be required to litigate against

26 herself the plaintiff's stale claim, introducing the evidence that plaintiff would have introduced in the hypothetical earlier litigation, then introducing the evidence that she as defendant would have

27 presented, and then asking the jury to find that she (as defendant) would have lost." Chasteen, 216 F.3d at 1218, citing Intermedics, Inc. v. Ventritex, Inc., 822 F. Supp. 634, 641 (N.D. Cal. 1993).

28

715, 719 (9th Cir. 2003) (party may not use "privilege as both a shield and a sword"; "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials."); Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162-63 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield. ... [T]o the extent that Pennzoil claims that its tax position is reasonable because it was based on advice of counsel, Pennzoil puts at issue the tax advice it received. ... Pennzoil cannot invoke the attorney-client privilege to deny Chevron access to the very information that Chevron must refute"). If the Court permits Mattel to rely on that investigation – and it should not -- then the MGA Parties are entitled to further discovery. (See Declaration of Thomas J. Nolan dated March 7, 2008 ("Nolan Decl.") ¶¶ 2-6.)

Regardless, as Mattel's *own authority* shows (Mattel Opp'n at 51, citing Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515 (9th Cir. 1983)), the theory that a narrow investigation does not trigger the statute of limitations has been squarely rejected. In Wood, the Ninth Circuit held that where plaintiff suspected that defendants infringed one of his products, that suspicion placed him on inquiry notice as to possible infringement of his other products. Id. at 1521.[16] It also rejected the notion espoused by Mattel here that

---

[16]   California law is in accord. (See MGA Opp'n at 23 n.18, citing Soliman, 311 F.3d at 971-72 (plaintiff "need not be aware of the specific 'facts' necessary to establish the claim" for a claim to accrue. Nor need he be aware of a particular legal theory. His claim accrues "when, simply put, he at least 'suspects ... that someone has done something wrong' to him."), citing Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999), and Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1110-11 (1988); id. at 1110 n.7 (the "wrong" that plaintiff is to be aware of for purposes of the statute of limitations need not be in any technical sense, but rather in accordance with its "lay understanding"); Butler v. San Diego Dist. Attorneys Office, 2007 WL 935711, at *3 (S.D. Cal. Feb. 27, 2007) (in California, "the statute of limitations begins to run when the plaintiff suspects or should suspect that someone has done something wrong to him").) Mattel's cases are not to the contrary. Mattel cites Fox, 35 Cal. 4th 797, arguing that the suspicion required for inquiry notice must "relate specifically to the elements of the specific cause of action sued on." (Mattel Opp'n at 21.) Fox, however, clarified that "[r]ather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." Fox, 35 Cal. 4th at 807 (emphasis added). (See also MGA Opp'n at 22 n.16, distinguishing Mattel's other case, Garamendi v. SDI Vendome S.A., 276 F. Supp. 2d 1030 (C.D. Cal. 2003), on the grounds that it dealt with fraudulent concealment, as opposed to inquiry notice in general and, in any event, did not apply California law).)

1 | because it allegedly did not conduct any investigation into the precise facts that it is now
2 | suing upon (Mattel Opp'n at 24), the statute of limitations did not start, despite all the facts
3 | Mattel knew that compelled further investigation. Id. ("[a]lthough ... [plaintiff] may not
4 | actually have conducted this further investigation [into infringement on his other products],
5 | equity will impute to a litigant knowledge of facts that would have been revealed by
6 | reasonably required further investigation.").

7 |   **C.   There is No Tolling For Fraudulent Concealment Or The Stay**

8 |       As the MGA Parties already showed, Mattel's fraudulent concealment theory, even if
9 | properly alleged, is not only factually unsupported (see supra at 7), but also unavailable to
10 | Mattel because it was on inquiry notice of its claims despite the alleged concealment. (See
11 | MGA Opp'n at 22 n.16, citing, inter alia, Hynix Semiconductor Inc. v. Rambus Inc., 2007
12 | WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007) ("fraudulent concealment doctrine does not
13 | toll the statute of limitations, no matter what the defendant has done to conceal his wrongs,
14 | if a plaintiff has a suspicion of wrongdoing and knowledge of the harm and its cause").)[17]
15 | Accord Eichman v. Fotomat Corp., 880 F.2d 149, 157 (9th Cir. 1989) (applying similar rule
16 | for claims asserted under federal law).[18]

17 |

18 | [17]    (See also MGA MSJ at 25 n.30.) Accord Snapp & Assocs. Ins. Servs., Inc. v. Malcolm
   | Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-91 (2002) ("a suspicion of wrongdoing,
19 | coupled with a knowledge of the harm and its cause" is sufficient to end tolling based on fraudulent
   | concealment); Peterson v. Dein, 2006 WL 3020935, at *3 (Cal. App. Oct. 25, 2006) (if "a
20 | plaintiff ... is aware of facts sufficient to give rise to a reasonable suspicion of wrongdoing, then
   | the fraudulent concealment rule has no further application regardless of the lengths to which the
21 | defendant has gone to conceal the wrongs").
   | [18]    Mattel's reliance on Garamendi, 276 F. Supp. 2d at 1043, in support of its argument that
22 | fraudulent concealment tolls the statute of limitations even where plaintiff would have inquiry
   | notice (Mattel Opp'n at 28) is unavailing. In Garamendi, the court found that plaintiff had actual
23 | notice of its claims; thus, any discussion concerning mere inquiry notice is dicta. Moreover,
   | Garamendi's sole authority for the rule it states, aside from its reliance on non-California
24 | authorities, is Migliori v. Boeing North Am., Inc., 114 F. Supp. 2d 976 (C.D. Cal. 2000), which, in
   | turn, states the rule as follows: "[W]here fraud is established the statute [of limitations] is tolled
25 | only for as long as the plaintiff remains justifiably ignorant of the facts upon which the cause of
   | action depends; discovery or inquiry notice of the facts terminates the tolling." Id. at 984 (emphasis
26 | added). Thus, to the extent Garamendi has any precedential value, it misinterpreted California law
   | and, for that reason, has not been followed on that point by any other court. Mattel's other case,
27 | Regents of Univ. of Cal. v. Sup. Ct., 20 Cal. 4th 509, 533 (1999), does not even deal with the issue,
   | but merely cites the purpose behind the fraudulent concealment doctrine.

28 |

1    Mattel's tolling arguments based on the stay of proceedings from May 2005 until

2  May 2006 (Mattel Opp'n at 30-31) are irrelevant as all of Mattel's claims were barred

3  before the stay was entered (supra n.2). Moreover, Mattel does not get the benefit of tolling

4  based on the stay as a matter of law because such tolling extends neither to claims that were

5  yet to be asserted at the time the stay was entered nor to such entities that were yet to

6  become parties to the case at the time.[19] As Mattel did not assert its claims until after the

7  stay was lifted, the stay could not toll the statute of limitations for those claims. And, as

8  Larian and MGA (HK) were not parties to the action at the time (and neither, as shown

9  below, was MGA), the stay could not toll the statute of limitations as to them.[20]

10    Finally, tolling based on the stay of proceedings is inapplicable for yet another reason:

11  namely, the stay order did not preclude Mattel from amending its '04 Complaint or asserting

12  counterclaims in the '05 Action. On September 20, 2005, while the stay was pending,

13  Mattel amended its answer in the '05 Action, proving that the stay did not bar Mattel from

14  filing amended pleadings. Korody-Colyer Corp, 828 F.2d at 1575 (denying tolling based on

15  stay of proceedings, observing that plaintiff "points to absolutely no evidence indicating ...

16  that [he] was precluded from adding its ... [new] claim to its pleadings"; adding that

17  plaintiff "cannot now seize upon the stay as basis for excusing its slumber and its failure to

18  amend its pleadings for more than four years"). Thus, Mattel cannot seize upon the stay to

19  [19]    See Korody-Colyer Corp. v. General Motors Corp., 828 F.2d 1572, 1575 (Fed. Cir. (Cal.)

20  1987) (district court's order staying proceedings on antitrust claim did not preclude or excuse
    plaintiff from amending its antitrust claim to assert Walker Process claim, and so stay did not toll

21  statute of limitations on amended antitrust claim; "Nowhere does [plaintiff] explain how a claim
    that had not been made could have been stayed."); Lipman v. Bhend, 213 Cal. App. 2d 474, 480

22  (1963) (no tolling of statute of limitations based on the stay of proceedings pending appeal as to
    claims against the individual that "was not a party to the case" at the time appeal was taken); see

23  also Friedman v. Estate of Presser, 929 F.2d 1151, 1156-57 (6th Cir. 1991) (stay cannot affect
    rights of nonparties; thus, stay order did not toll the time for effecting personal service).

24  [20]    Mattel's cases are not to the contrary as they did not involve new claims or new defendants.
    See Selph v. Nelson, Reabe and Snyder, Inc., 966 F.2d 411, 413 (8th Cir. 1992) (tolling as to

25  original claims and original parties based on stay of proceedings warranted by pendency of parallel
    action in another court); Castle v. Wells Fargo Financial, Inc., 2007 WL 1105118, at *1 (N.D. Cal.

26  Apr. 10, 2007) (tolling statute of limitations for putative class members); Javier H. v. Garcia-
    Botello, 239 F.R.D. 342, 347-48 (W.D.N.Y. 2006) (contrary to Mattel's description of the case

27  (Mattel Opp'n at 30:16-18), tolling for an amended claim against defendants that were already
    before the court when it issued the stay, "which the ... Defendants [at issue] did not oppose").

28

1    excuse its own lack of diligence in pursuing claims against the MGA Parties.

2    **D.    Mattel Concedes It Cannot Satisfy the Mistake/Ignorance**
     **Requirement for "Relation-Back" of Claims Against New Parties**

3

4        The MGA Parties already showed that Mattel cannot revive its claims via "relation-

5    back" to its '04 Complaint as it cannot satisfy the "mistake" requirement of Rule 15(c) for

6    claims against new parties[21] or the "ignorance" requirement under California's "Doe"

7    defendant procedure. (MGA MSJ at 29-33; MGA Opp'n at 24-27.)[22] This is because, as

8

9    ---

[21]    While it is undisputed that MGA (HK) and Larian were new parties in this litigation at the
time Mattel asserted its claims against them, Mattel takes issue with MGA's characterization as
such, since, as Mattel argues, MGA's intervention made it a "full-blown" party (Mattel Opp'n at
35-36). Mattel ignores, however, that MGA's status as an intervenor was spelled out in the
Stipulation allowing MGA to intervene and it was Mattel itself that limited MGA's status to that
attendant to intervention "as a procedural matter" only. (See MGA Opp'n at 25; MGA MSJ at 14
& n.18 (explaining that Mattel was on notice that it had asserted no claims against MGA as a result
of the latter's intervention).) None of Mattel's cases address intervention by stipulation limiting the
intervenor's status, nor do they address "relation-back" of claims against such an intervenor-
defendant asserted after the applicable statute of limitations expired. (Cf. MGA Opp'n at 25 n.21
("relation-back" of claims against an intervenor-defendant, as opposed to claims by an intervenor-
plaintiff, is not allowed).) Cf. In re Syntex Corp. Sec. Litig., 95 F.3d 922, 935 (9th Cir. 1996)
(intervenor's complaint did not relate back to filing date of original complaint where interests of
original plaintiff and intervenor were adverse). Moreover, all claims asserted against MGA expired
before the filing of the '04 Complaint (MGA Opp'n at 24-25), as Mattel was on notice of its claims
as early as January-March 2001. Thus, "relation-back" for Mattel's claims against MGA is
irrelevant. Even assuming that Mattel was not on notice of its claims until summer 2001 -- when
BRATZ were released on the market, and it was "common knowledge" at Mattel that Bryant
created BRATZ -- Mattel's claims against MGA would have expired around June 2004 and still
would have been time-barred before MGA's intervention in December 2004. U.S. v. Randall &
Blake, 817 F.2d 1188, 1192 (5th Cir. 1987) (for statute of limitations, the date of intervention is the
operative date).

[22]    As the MGA Parties already explained, Mattel's protestations to the effect that this Court
had already accepted "relation-back" here in granting Mattel's motion for leave to amend (Mattel
Opp'n 34, 38) miss the mark because the Court neither reached the requirements for claims against
new parties nor had the current evidence record before it that only a motion for summary judgment
could properly bring in. (See MGA MSJ 16 n.20, 17 n.22.) Similarly, Mattel's reliance on this
Court's order denying MGA's motion for terminating sanctions (Mattel Opp'n at 34 n.152) is
unavailing, as the Court did not rule on the timing of inquiry notice there; rather, the Court
determined when Mattel's *duty to preserve evidence* arose, which is based on a standard markedly
different from that of the inquiry notice for purposes of statute of limitations. (See MGA Opp'n at
24.) Finally, Mattel's selective quoting of the MGA Parties' motion to the effect that the MGA
Parties' allegedly "concede[d]" that "relation-back" would revive Mattel's claims (Mattel Opp'n at
34) ignores the very language following the alleged concession, where the MGA Parties explained
that "relation-back" could "conceivably" revive only one of Mattel's claims (statutory unfair
competition asserted only against MGA (HK) and Larian), and only if the Court finds that
"discovery" rule delayed accrual of that claim, rather then follows the long line of authorities
holding that "discovery" rule does not apply. (MGA MSJ at 29; see also id. at 27 n.33.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   off-hours shopping trips for BRATZ (id. ¶ 65), equal "substantial assistance." Indeed, MGA

2   indisputably did not commission, pay for, or use any other Bryant "work" before Bryant

3   signed his contract with MGA on October 4, 2000. (Id. ¶¶ 6, 19, 59, 131-32, 135-39, 144.)

4   **VI.**   **MATTEL IS NOT ENTITLED TO RULE 56(F) RELIEF**

5       Mattel submitted a "Rule 56(f) Declaration of B. Dylan Proctor", but requested no

6   relief under Rule 56(f) in its opposition. As such, Rule 56(f) relief is improper, and the

7   declaration for this nonexistent request should be stricken. Foster v. Arcata Associates, Inc.,

8   772 F.2d 1453, 1467 (9th Cir. 1985) ("We reject appellant's claim [under Rule 56(f)]

9   because she failed to follow the proper procedures ... for obtaining a continuance or other

10  appropriate discovery order when opposing a motion for summary judgment."), overruled

11  on other grounds by, Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262 (9th Cir. 1991).

12                    **CONCLUSION**

13      For the foregoing reasons, and for the reasons stated in the MGA Parties' opening

14   papers, their Motion for Partial Summary Judgment should be granted in its entirety.

15   DATED: April 1, 2008        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

16

17              By: _____
                           Jason D. Russell
                       Attorneys for the MGA Parties

18

19

20

21

22

23

24

25

26

27

28