THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                          Plaintiff,<br><br>            v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                          Defendant.<br><br>_____<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br><br>**MGA PARTIES' OPPOSITION TO MATTEL'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Hearing Date:      February 11, 2009<br>Time:                    10:00 AM |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.    MATTEL IS NOT ENTITLED TO JMOL ON FRAUDULENT CONCEALMENT ............................................................................................. 2

II.   MATTEL IS NOT ENTITLED TO JMOL ON "INDEPENDENT CREATION" .................................................................................................... 9

III.  MATTEL IS NOT ENTITLED TO A "CONDITIONAL" JUDGMENT ON SUBSTANTIAL SIMILARITY ........................................................... 12

     A.    Mattel's Request for a "Conditional" Determination Seeks An Advisory Opinion ............................................................................ 12

     B.    There is No Basis To Determine That The "Core" Bratz Fashion Dolls Are Substantially Similar To The Bryant Works Owned By Mattel As A Matter Of Law ..................................................... 13

          1.    The Evidence Presented To The Jury Permits A Reasonable Juror To Conclude That "Core" Bratz Fashion Dolls Do Not Infringe ............................................................................... 13

          2.    Mattel's Purported Evidence Rests On Speculation And Alternative Credibility Determinations Which Must Be Disregarded ........................................................................... 15

          3.    The Court Cannot Consider Any "Evidence" That Mattel Failed To Present To The Jury At Trial ............................... 17

          4.    Mattel Offers No Grounds For Reconsideration Of Arguments That The Court Has Already Rejected On Summary Judgment ....................................................... 19

          5.    A JMOL At This Juncture Would Violate MGA's Seventh Amendment Rights To A Trial By Jury ....................... 20

     C.    The Court Has Already Rejected Mattel's Judicial Estoppel Argument .................................................................................... 22

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

O2 Micro International Ltd. v. Monolithic Power System, Inc.,
    420 F. Supp. 2d 1070 (N.D. Cal. 2006)..................................................... 4

Abercrombie & Fitch Co. v. Moose Creek, Inc.,
    486 F.3d 629 (9th Cir. 2007) ............................................................... 23

Apple Computer, Inc. v. Microsoft Corp.,
    35 F.3d 1435 (9th Cir. 1994) ............................................................... 24

Applied Medical Resources Corp. v. U.S. Surgical Corp.,
    549 F. Supp. 2d 1208 (C.D. Cal. 2008) ................................................... 3

Bethea v. Burnett,
    No. CV-04-7690JFWPLAX,
    2005 WL 1720631 (C.D. Cal. June 28, 2005) ........................................ 10

Calderon v. Ashmus,
    523 U.S. 740 (1998).......................................................................... 12

Calhoun v. Lillenas Publishing,
    298 F.3d 1228 (11th Cir. 2002) ............................................................ 9

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986).......................................................................... 19

Clemens v. DaimlerChrysler Corp.,
    534 F.3d 1017 (9th Cir. 2008) .......................................................... 6, 7

Coates v. Daugherty,
    973 F.2d 290 (4th Cir. 1992) .............................................................. 20

Cosmos Jewelry, Ltd v. Po Sun Hon Co.,
    No. CV-03-753CBM,
    2006 WL 5105219 (C.D. Cal. Apr. 5, 2006) .......................................... 9

Danjaq LLC v. Sony Corp.,
    263 F.3d 942 (9th Cir. 2001) .............................................................. 18

Diamond v. Davis,
    680 A.2d 364 (D.C. 1996) ................................................................... 7

Digital Envoy, Inc. v. Google, Inc.,
      No. C-04-0197RS,
      2006 WL 824412 (N.D. Cal. Mar. 28, 2006) ............................................. 12

Elbert v. Howmedica, Inc.,
      143 F.3d 1208 (9th Cir. 1998) ....................................................... 18

Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,
      122 F.3d 1211 (9th Cir. 1997) ....................................................... 11

Feist Publications, Inc. v. Rural Telephone Co.,
      499 U.S. 340, 111 S. Ct. 282, 113 L. Ed. 2d 358 (1991) ........................... 25

Feltner v. Columbia Pictures Television, Inc.,
      523 U.S. 340 (1998) .................................................................. 18

Flores v. Emerich & Fike,
      No. 1:05-CV-0291,
      2008 WL 2489900 (E.D. Cal. June 18, 2008) ..................................... 4, 6

Fox v. Ethicon Endo-Surgery, Inc.,
      35 Cal. 4th 797 (2005) ................................................................ 7

Funky Films, Inc. v. Time Warner Entertainment Co., L.P.,
      462 F.3d 1072 (9th Cir. 2006) ....................................................... 14

Garamendi v. SDI Vendome S.A.,
      276 F. Supp. 2d 1030 (C.D. Cal. 2003) .............................................. 7

Gladwell Government Services, Inc. v. County of Marin,
      No. C-04-3332 SBA,
      2005 WL 2656964 (N.D. Cal. Oct. 17, 2005) ..................................... 12

Granite Music Corp. v. United Artists Corp.,
      532 F.2d 718 (9th Cir. 1976) .................................................... 10, 11

Harbeson v. Parke Davis, Inc.,
      746 F.2d 517 (9th Cir. 1984) ....................................................... 10

Harper & Row Publishers, Inc. v. Nation Enterprises,
      471 U.S. 539 (1985) .................................................................. 24

Herbert Rosenthal Jewelry Corp. v. Kalpakian,
      446 F.2d 738 (9th Cir. 1971) ....................................................... 11

Hobson v. Wilson,
    737 F.2d 1 (D.C. Cir. 1984) ................................................................. 7

Hopkins v. Dow Corning Corp.,
    33 F.3d 1116 (9th Cir. 1994) ............................................................. 19

Humane Society of United States v. Cavel International, Inc.,
    No. 07-5120,
    2007 WL 4723381 (D.C. Cir. May 1, 2007) ..................................... 3

Idema v. Dreamworks, Inc.,
    162 F. Supp. 2d 1129 (C.D. Cal. 2001) .................................... 10, 25

John L. Perry Studio, Inc. v. Wernick,
    597 F.2d 1308 (9th Cir. 1979) ........................................................ 10

Jolly v. Eli Lilly & Co.,
    44 Cal. 3d 1103 (1988) ..................................................................... 7

Keeler Brass Co. v. Continental Brass Co.,
    862 F.2d 1063 (4th Cir. 1988) .......................................................... 9

Los Angeles Police Protective League v. Gates,
    328 F.3d 1028 (9th Cir. 2003) ........................................................ 20

Mars, Inc. v. JCM American Corp.,
    Civil No. 05-3165 (RBK),
    2008 U.S. Dist. LEXIS 21089 (D.N.J. Mar. 17, 2008) ................. 24

McEuin v. Crown Equipment Corp.,
    328 F.3d 1028 (9th Cir. 2003) ........................................................ 18

Migliori v. Boeing North American, Inc.,
    114 F. Supp. 2d 976 (C.D. Cal. 2000) ............................................. 7

Parsons v. Tickner,
    31 Cal. App. 4th 1513 (1995) ........................................................... 7

Pfizer, Inc. v. Ranbaxy Laboratories Ltd.,
    457 F.3d 1284 (Fed. Cir. 2006) ...................................................... 24

Platt Electric Supply, Inc. v. EOFF Electric, Inc.,
    522 F.3d 1049 (9th Cir. 2008) .......................................................... 7

<u>Reeves v. Sanderson Plumbing Products, Inc.</u>,
    530 U.S. 133 (2000).................................................................................. 3

<u>Riddell v. Riddell Washington Corp.</u>,
    866 F.2d 1480 (D.C. Cir. 1989)............................................................. 7

<u>Rita M. v. Roman Catholic Archbishop</u>,
    187 Cal. App. 3d 1453 (1986) ............................................................... 7

<u>Satava v. Lowry</u>,
    323 F.3d 805 (9th Cir. 2003) ............................................................... 18

<u>Settlegoode v. Portland Public Schools</u>,
    371 F.3d 503 (9th Cir. 2004) ................................................................. 3

<u>Smith v. Jackson</u>,
    84 F.3d 1213 (9th Cir. 1996) ............................................................... 14

<u>Snapp & Associate Insurance Services, Inc. v. Malcolm Bruce Burlingame Robertson</u>,
    96 Cal. App. 4th 884 (2002) .................................................................. 6

<u>Soliman v. Philip Morris Inc.</u>,
    311 F.3d 966 (9th Cir. 2002) ................................................................. 6

<u>Thorman v. American Seafoods Co.</u>,
    421 F.3d 1090 (9th Cir. 2005) ............................................................ 5, 6

<u>Three Boys Music Corp. v. Bolton</u>,
    212 F.3d 477 (9th Cir. 2000) ............................................................... 10

<u>Warner Brothers, Inc. v. America Broadcasting Cos.</u>,
    654 F.2d 204 (2d Cir. 1981) ................................................................ 11

<u>Whiteside Biomechanics, Inc. v. Sofamor Danek Group, Inc.</u>,
    88 F. Supp. 2d 1009 (E.D. Mo. 2000) ................................................ 18

<u>Winarto v. Toshiba America Electronics Components, Inc.</u>,
    274 F.3d 1276 (9th Cir. 2001) ..................................................... passim

**<u>STATUTES</u>**

Fed. R. Civ. P. 50(a)(2) ................................................................................. 2

**<u>MISCELLANEOUS</u>**

9 <u>Moore's Federal Practice - Civil</u> § 50.60[1] ............................................ 20

3-12 <u>Nimmer on Copyright</u> § 12.10.........................................................................18

3-12 <u>Nimmer on Copyright</u> § 12.11.........................................................................10

4-13 <u>Nimmer on Copyright</u> § 13.03.........................................................................10

MGA Parties' Opp'n to Mattel's Renewed Mot. for JMOL –Case No. CV 04-9049 SGL (RNBx)

## PRELIMINARY STATEMENT

Having had its day in Court, but obviously unhappy with how that day went, Mattel asks this Court to step in and grant relief that the jury refused to provide Mattel. Based on a fundamental misunderstanding of the relevant law and a one-sided and erroneous view of the facts, Mattel seeks judgment as a matter of law ("JMOL") on the MGA Parties' statute of limitations defense, asking the Court to second-guess and override the jury's findings that Isaac Larian and MGA HK did not fraudulently conceal the bases for Mattel's conversion and tortious interference claims. Mattel also seeks a "conditional" judgment on the substantial similarity element of Mattel's copyright infringement claim. Having just chided the MGA Parties for purportedly seeking an advisory opinion, Mattel's motion is a little difficult to take seriously in that it concedes that Mattel is seeking just such an opinion now. Lastly, Mattel seeks JMOL on the issue of independent creation. As shown below, Mattel's motion ("Mot.") should be denied as there are (at the very least) disputed issues of fact.

First, unhappy that the jury rejected its flimsy (as to Isaac Larian) and non-existent (as to MGA HK) evidence of fraudulent concealment, Mattel asks this Court to override the jury's express rejection of that evidence. The premise of Mattel's argument seems to be that because the jury found MGA fraudulently concealed certain claims, then the same result must be true for Isaac Larian and MGA HK. Mattel simply ignores that the evidence presented as to MGA was different than the evidence as to Larian. (And as to MGA HK, there simply was no evidence at all.) Mattel also ignores entirely the fact that the MGA Parties offered ample evidence to enable the jury to find that any tolling based on such fraudulent concealment ended as soon as Mattel suspected that there had been some wrong done to it in connection with the BRATZ. Thus, the jury's verdict rejecting fraudulent concealment as to Larian and MGA HK was entirely correct. (See Section I, infra.)

Second, Mattel is not entitled to JMOL on the issue of the MGA Parties' independent creation as it is neither an affirmative defense that has been waived nor an attempt to subvert the jury's Phase 1A findings. Rather, it is a legitimate means of negating Mattel's evidence of purported infringement, albeit one that Mattel dislikes. (See Section II, infra.)

1

1    <u>Third</u>, on the substantial similarity point, again Mattel ignores that MGA introduced

2   ample evidence negating this element, which creates at least a genuine issue for the jury.[1]

3   Moreover, the jury's findings implicitly reject this very argument as it awarded a fraction of

4   the damages sought by Mattel, which is flatly inconsistent with the findings that Mattel

5   seeks now.  (<u>See</u> Section III, <u>infra</u>.)

6                                          **<u>ARGUMENT</u>**

7   **I.   <u>MATTEL IS NOT ENTITLED TO JMOL ON FRAUDULENT CONCEALMENT</u>**

8        Mattel maintains that no reasonable jury could have concluded, as this jury did, that

9   Isaac Larian and MGA HK did not fraudulently conceal the bases for Mattel's conversion

10  and tortious interference claims from Mattel.  (Mot. at 17.)  Mattel's motion is frivolous.

11  As to MGA HK, Mattel did not even offer a shred of evidence and its JMOL certainly cites

12  none and so should be denied out of hand.  As to Larian, Mattel simply assumes away all of

13  the contrary evidence offered by Larian during trial as "conclusory" and "insufficient" (Mot.

14  at 17-18), as if maligning contrary evidence somehow makes it disappear.

15       The best proof that Mattel's motion is baseless can be seen in its attempt to erect a

16  legal standard under which an adversary's contrary evidence can be ignored.  To do this, in

17  what is unfortunately becoming a distressing pattern with Mattel, Mattel cites this Court

18  (again) to a **<u>dissenting opinion</u>**, this time in <u>Winarto v. Toshiba America Electronics</u>

19  <u>Components, Inc.</u>, 274 F.3d 1276, 1294 (9th Cir. 2001) (Wardlaw, J., concurring in part and

20  dissenting in part) for the unremarkable (and unrelated) proposition that "JMOL is

21  appropriate 'when "a party has been fully heard on an issue and there is no legally sufficient

22  evidentiary basis for a reasonable jury to find for that party on that issue." (Mot. at 18

23  n.80.)[2]  Tellingly, Mattel cites no authority even suggesting that MGA's evidence is either

24  _____

25  [1]    Mattel's JMOL refers generically to the "Bratz dolls." The MGA Parties have no basis for
     determining what Mattel means by this term.  At no point does Mattel specify whether it is
26  referring to the first generation dolls, later dolls, other merchandise, or all of the above. For this
     reason among others, Mattel's motion should be denied. <u>See</u> Fed. R. Civ. P. 50(a)(2) (motion must
27  "specify the judgment sought and the law and facts that entitle the movant to the judgment").
     [2]    As this Court will recall, this is the second time <u>in a month</u> that Mattel has cited the Court to
28  a dissenting opinion for a significant issue with no mention that the principle in question was
     <u>rejected</u> by the majority of the court and that the cited case <u>rejected</u> the argument being asserted

                                                                                                    *(cont'd)*

1   conclusory or insufficient to rebut Mattel's contradictory testimony.  To the contrary, as
2   discussed below, the <u>Winarto</u> majority opinion makes clear that the MGA testimony should
3   be accorded the same credibility and weight the jury gave it in refusing to find Larian and
4   MGA HK accountable for fraudulent concealment.   See <u>Winarto</u>, 274 F.3d at 1285 n.6,
5   1286-87.

6       Unfortunately for Mattel, it should have read the <u>majority</u> opinion in <u>Winarto</u>, which
7   <u>reversed</u> the lower court's granting of a post-verdict JMOL motion because the lower court
8   had "misapplied" the JMOL standard.  <u>Winarto</u>, 274 F.3d at 1283, 1292.  "The trial court
9   can overturn the jury and grant such a motion only if, under the governing law, <u>there can be</u>
10  <u>but one reasonable conclusion as to the verdict</u>.  In other words, the motion should be
11  granted only if 'there is no legally sufficient basis for a reasonable jury to find for that party
12  on that issue.'"  <u>Id.</u> at 1283 (emphasis added).  In rejecting the position advanced by Mattel
13  here, the Ninth Circuit warned that "[i]n ruling on a motion for JMOL, <u>the court is not to</u>
14  <u>make credibility determinations or weigh the evidence</u> and should view all inferences in the
15  light most favorable to the nonmoving party", and that the district court <u>must</u> "'accept the
16  jury's credibility findings consistent with the verdict'" and "'disregard all evidence
17  favorable to the moving party <u>that the jury is not required to believe</u>.'"  <u>Id.</u> (emphasis added).
18  The <u>Winarto</u> court also scolded the district court for "'substitut[ing] its view of the evidence
19  for that of the jury.'"  <u>Id.</u>[3]

20  _____
    *(cont'd from previous page)*
21  here by Mattel.  (See, e.g., Mattel's Opp'n to MGA's *Ex Parte* Stay Appl. (Dkt. 4513) at 17-18,
    citing the dissent of the unpublished decision in <u>Humane Soc'y of U.S. v. Cavel Int'l, Inc.</u>, 2007
22  WL 4723381, at *1 (D.C. Cir. May 1, 2007).)
    [3]      The JMOL standard applied by the majority in <u>Winarto</u> is hardly controversial.  See, e.g.,
23  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000) (reversing grant of JMOL
    motion and noting "the court must draw all reasonable inferences in favor of the nonmoving party,
24  and it may not make credibility determinations or weigh the evidence…. 'Credibility
    determinations, the weighing of the evidence, and the drawing of legitimate inferences from the
25  facts are jury functions, not those of a judge.'"); <u>Settlegoode v. Portland Public Sch.</u>, 371 F.3d 503,
    510, 512 (9th Cir. 2004) (same, reversing grant of JMOL); <u>Applied Med. Resources Corp. v. U.S.</u>
26  <u>Surgical Corp.</u>, 549 F. Supp. 2d 1208, 1210 (C.D. Cal. 2008) (denying plaintiff's JMOL after jury
    verdict finding no infringement because "[a] district court may not grant a JMOL motion unless
27  'the evidence is such that, without weighing the credibility of the witnesses or otherwise
    considering the weight of the evidence, there can be but one conclusion as to the verdict that
28  reasonable persons could have reached.'  The judge's role is not to resolve conflicts in testimony,
                                                                                        *(cont'd)*

1   Finally, while the <u>dissenting</u> opinion relied upon by Mattel took issue with the

2   majority's "rel[iance] on the self-serving testimony of [plaintiff's witnesses], and, on some

3   points, evidence of defendants controverted by plaintiffs" – the same issues Mattel

4   complains of here – the majority <u>rejected</u> these arguments, noting that "[t]he dissent

5   disparages inferences a reasonable juror could draw by referring to them as 'hypothesized

6   causal links' as opposed to the inferences the dissent draws, which it characterizes as

7   'legitimate inferences,' even though inferences going both ways are supported by the record.

8   <u>When two sets of inferences find support in the record, the inferences that support the jury's</u>

9   <u>verdict of course win the day.</u>" <u>Id.</u> at 1286-87 (emphasis added).  Indeed, the majority

10  excoriated the dissent's approach, noting that "<u>[t]he critical flaw undermining the dissent's</u>

11  <u>analysis is to ignore [plaintiff's] evidence</u>…<u>The only way to draw this conclusion from the</u>

12  <u>record is to credit defendants' witnesses over [plaintiff's] to resolve a direct conflict in</u>

13  <u>testimony. This resolution turns our standard of review on its head.</u>" <u>Id.</u> at 1285 n.6.[4]

14  Here, Mattel asks this Court to do precisely what <u>Winarto</u> forbids the Court from

15  doing, namely ignoring the MGA Parties' contrary evidence and drawing all inferences in

16  Mattel's favor.  That is not the law.  The jury's findings of credibility and liability based on

17  the evidence before them are clear in their verdict exonerating Larian and MGA HK.  In

18  response, Mattel points to evidence which – even if it were not already rejected as

19  unconvincing by the jury –would fail to establish fraudulent concealment.  "To establish

20

_____

21  *(cont'd from previous page)*
    but to determine whether a reasonable jury could make the inference the jury actually made.")

22  (citations omitted); <u>02 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.</u>, 420 F. Supp. 2d 1070, 1075
    (N.D. Cal. 2006) ("Judgment as a matter of law after the verdict may be granted only when the

23  evidence and its inferences, construed in the light most favorable to the non-moving party, permits
    only one reasonable conclusion as to the verdict.  Where there is sufficient conflicting evidence, or

24  if reasonable minds could differ over the verdict, judgment as a matter of law after the verdict is
    improper.").

25  [4]   <u>Accord id.</u> at 1286 n.9 (criticizing dissent for its reliance on defendant witness testimony:
    "This statement is supported only by defense witness testimony that is contradicted by Winarto's

26  testimony. <u>It is the non-movant's evidence that we assume to be true. To resolve direct conflicts in</u>

27  <u>testimony, the credibility of each side has to be weighed, and this is a task for the jury, not the trial</u>
    <u>judge, and not the appeals court.</u>") (emphasis added); <u>id.</u> at 1285 n.3 (criticizing dissent's

28  interpretation of evidence because "[t]his may be the conclusion that the defendants wanted the
    jury to draw, <u>but the jury did not</u>") (emphasis added).

1  fraudulent concealment, the <u>plaintiff carries the burden</u> of proving that … the defendant

2  <u>affirmatively misled the plaintiff</u> as to the operative facts that gave rise to the claim." <u>Flores</u>

3  <u>v. Emerich & Fike</u>, 2008 WL 2489900, at *21 (E.D. Cal. June 18, 2008) (emphasis added).

4  "<u>Merely keeping someone in the dark is not the same as affirmatively misleading him</u>."

5  <u>Thorman v. Am. Seafoods Co.</u>, 421 F.3d 1090, 1095 (9th Cir. 2005) (emphasis added); <u>see</u>

6  <u>also</u> <u>id.</u> ("the defendants' '<u>silence</u> … does <u>not</u> constitute fraudulent concealment'")

7  (emphasis added). Here, Mattel has not shown any attempts by Larian and MGA HK to

8  affirmatively mislead Mattel, only that (at most) it was kept "in the dark" as to Bryant's

9  creation of the BRATZ – <u>i.e.</u>, exactly the type of evidence that the Ninth Circuit held to be

10  insufficient for fraudulent concealment in <u>Thorman</u>.  Indeed, Mattel does not – because it

11  cannot – point to a single shred of evidence suggesting that MGA HK made any attempts to

12  conceal any information whatsoever.  The jury's finding that Mattel failed to show that

13  MGA HK was at fault is thus wholly grounded in the evidence – or lack thereof – before it.

14      Mattel's "evidence" that Larian and Bratz project manager Paula Garcia instructed

15  employees to keep quiet about Bryant's involvement with BRATZ is based, not on

16  "concrete documentary evidence and eyewitness testimony of concealment from numerous

17  and unrelated sources" as Mattel contends (Mot. at 18), but instead a single disgruntled and

18  self-interested former MGA employee's testimony (<u>id.</u> at 17 n.71.)[5]  Both Larian and Garcia

19  denied giving such instructions; Mattel has no other evidence to the contrary.[6]  Instead,

20  _____

21  [5]      Rachel Harris testified that she had been terminated by MGA, that at the time she gave her
deposition testimony she had applied for a vacant position at Mattel, and at the time of trial

22  continued to actively pursue employment at Mattel via an online application process. (Tr. 2389:14-
2390:17.) Moreover, Harris said that Mercedeh Ward told her the reason to hide Bryant's identity

23  was that he had presented the BRATZ concept to Mattel and Mattel passed (Tr. 2381:21-2382:1)
but this is wholly inaccurate, calling into question Harris' truthfulness and/or memory.

24  [6]      <u>See, e.g.</u>, Tr.  728:14-18,  887:14-888:7,  1725:2-9,  1738:20-1739:3,  1741:21-1742:6,
1742:15-18, 1743:5, 1751:20-21. Mattel also cites to Larian's email reacting to a posting on a

25  Yahoo fan site revealing Bryant as a former Mattel employee and the BRATZ creator. (Mot. at 17,
citing TX 4507.) But the MGA Parties already showed that this reaction was in response to the

26  cease and desist letter that Mattel's current counsel sent to Larian on February 7, 2002, demanding
that MGA remove all references to Mattel and Barbie from the site in question – clearly the source

27  of the "legal grief" Larian referred to in his email. (<u>See</u> TX 17252, 4507.) Similarly, the "keep
Carter under wraps" email (Mot. at 17, citing TX 4942) contains no evidence of any instruction to

28  do so; moreover, Larian testified that he didn't even "recall paying attention to that portion of the
e-mail", and no response suggests he did. (Tr. 1741:8-20.)

1   many witnesses testified under oath that they were never instructed nor instructed anyone

2   else to conceal Bryant's identity; indeed, they discussed Bryant's involvement with BRATZ

3   with then-Mattel employees.[7]  Moreover, although the jury found fraudulent concealment as

4   to MGA, it easily could have done so based on its decision not to credit Garcia's testimony,

5   while at the same time crediting Larian's testimony.  As the evidence Mattel leveled against

6   MGA obviously is different than the evidence it levels against Larian, the fact that the jury

7   exonerated Larian is entirely appropriate.  Mattel's evidence thus fails to warrant a JMOL

8   here, since, as the Ninth Circuit instructs, "[w]hen two sets of inferences find support in the

9   record, the inferences that support the jury's verdict of course win the day."  Winarto, 274

10  F.3d at 1287 (emphasis added).

11      Unable to demonstrate any reason to overturn the jury's verdict as to Larian and

12  MGA HK, Mattel charges instead that this is an issue of "timing of notice to Mattel."  (Mot.

13  at 18.)  Mattel bases this argument on a misunderstanding of the pertinent legal standard

14  governing the level of notice required to end tolling based on fraudulent concealment.

15  Mattel argues "near-actual" knowledge is the standard. (Mot. at 18 & 19 n.87.) The Ninth

16  Circuit disagrees. As the Ninth Circuit observed, "California applies a special standard in

17  cases of fraudulent concealment" under which a plaintiff must show, *inter alia*, "that the

18  plaintiff was not at fault for failing to discover [its cause of action] or had no actual or

19  presumptive knowledge of facts sufficient to put him on inquiry."  Clemens v.

20  DaimlerChrysler Corp., 534 F.3d 1017, 1024 (9th Cir. 2008) (emphasis added).[8] Thus,

---

[7]      See, e.g., Tr. 1037:19-1038:1 (Maurus); 4278:3-4279:15, 4285:22-4286:14, 4287:20-22, 4288:2-22, 4290:5-4291:22, 6828:20-6832:12 (Leahy, detailing conversations with Mattel employees about Bryant's involvement); 1134:25-1135:21 (former Mattel consultant Linker testimony that he met with Garcia and Bryant (then still a Mattel employee) on October 12, 2000).

[8]      See also Thorman, 421 F.3d at 1094 ("To establish fraudulent concealment, [plaintiff] carries the burden of proving that … [he] 'had neither actual nor constructive knowledge' of the[] operative facts despite his diligence in trying to uncover them.") (emphasis added); Flores, 2008 WL 2489900, at *21; Snapp & Assoc. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-891 (2002) ("The fraudulent concealment doctrine 'does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.'"); cf. Soliman v. Philip Morris Inc., 311 F.3d 966, 971-72 (9th Cir. 2002) (plaintiff on notice "when, simply put, he at least 'suspects ... that someone has done something wrong' to him") (emphasis added). (Accord MGA MSJ Opp'n at 22 n.16 (collecting cases).)

1  presumptive knowledge suffices to end any claimed fraudulent concealment. Id.; see also

2  Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d 1049, 1055-56 (9th Cir. 2008)

3  (fraudulent concealment tolling ends when plaintiff "should have been suspicious" of the

4  underlying facts at an earlier date and had "reason to at least suspect that a type of

5  wrongdoing [that] ha[d] injured" him) (emphasis added).[9]

6      Emboldened by its own erroneous heightened standard of notice,[10] Mattel ignores the

7  evidence showing that it should have suspected the facts underlying its interference and

8  conversion claims long before the relevant deadlines. For instance, Mattel's interference

9

10  [9]    Platt noted: "[i]n urging lack of means of obtaining knowledge [for purposes of fraudulent concealment], it must be shown that in the exercise of reasonable diligence the facts could not have been discovered at an earlier date." Id. at 1055. Discussing the level of notice sufficient to end the fraudulent concealment tolling, Platt noted the following passage from Parsons v. Tickner, 31 Cal. App. 4th 1513, 1525 (1995): "Under this rule constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to [its] investigation (such as public records or corporation books), the statute commences to run." Id. at 1056.

11  [10]    Mattel's lone authority for this erroneous standard is Garamendi v. SDI Vendome S.A., 276 F. Supp. 2d 1030 (C.D. Cal. 2003). Garamendi starts off correctly noting: "[t]he defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it." Id. at 1042 (emphasis added). But then Garamendi veers off course by discussing a "near-actual" knowledge standard. Assuming Garamendi survives Clemens and Platt, it should not be followed. First, its discussion of "near-actual" knowledge is dicta, as plaintiff there had actual notice of its claims. 276 F. Supp. 2d at 1043. Second, this dicta is based on cases applying D.C. law. Id. at 1042-43 ("[n]o California court appears explicitly to have adopted this formulation," i.e., "near actual" knowledge, and relying on Riddell v. Riddell Wash. Corp., 866 F.2d 1480, 1494-95 (D.C. Cir. 1989), and Hobson v. Wilson, 737 F.2d 1, 25 (D.C. Cir. 1984)). Riddell was disapproved on this very issue. See Diamond v. Davis, 680 A.2d 364, 372 (D.C. 1996) (declining to follow Riddell on its requirement of the "near-actual" knowledge standard to end fraudulent concealment tolling "as inconsistent with decisions that are binding upon us and the policies that motivate our accrual rules"). Although Garamendi suggests that Hobson was cited "approvingly" by a California court, the court that cited Hobson, Rita M. v. Roman Catholic Archbishop, 187 Cal. App. 3d 1453, 1460 (1986), merely relied on its statement of the rule that fraudulent concealment tolling ends once "'plaintiff is on notice of a potential claim'" and did not endorse a "near actual" knowledge standard. While Garamendi also relied on Migliori v. Boeing N. Am., Inc., 114 F. Supp. 2d 976 (C.D. Cal. 2000), that court stated: "discovery or inquiry notice of the facts terminates the tolling." Id. at 984 (emphasis added). Mattel maintains that "the standard of knowledge is higher on fraudulent concealment than for mere inquiry notice that is the subject of the discovery rule." (Mot. at 19 n.87.) This misstatement of the law is contradicted by reams of Ninth Circuit authority described above. Neither of the cases Mattel cites (Jolly v. Eli Lilly & Co., 44 Cal.3d 1103 (1988) and Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797 (2005)) address the notice standard for fraudulent concealment.

1   claim relates to Bryant's entry into a contract with MGA while still a Mattel employee.

2   Given the Court's preemption ruling, the timing of the creation of Bryant's Bratz drawings

3   has <u>nothing</u> to do with this claim. Thus, the claim accrued when Bryant signed the contract

4   with MGA and Mattel's fraudulent concealment defense fails as soon as Mattel had reason

5   to suspect that Bryant had entered a contract with a competitor. Mattel has admitted to

6   suspecting this very thing <u>before Bryant even left Mattel</u>. (Tr. 7410:11-7411:12.)  Mattel's

7   own phone records showed that Bryant called and faxed MGA while still working at Mattel.

8   (TX 472.)  The jury heard testimony that Mattel <u>knew</u> that Bryant was working on BRATZ

9   for MGA in 2001 and 2002. (Tr. 494:25-495:12, 6463:23-6464:3, 6828:20-6832:12,

10  7430:13-17.)   Indeed, Mattel investigated that MGA allegedly was hiring away Mattel

11  employees in March 2002. (TX 1195.1 RS, TX 1195.4 RS, TX 1195.66 RS.)[11]

12      Here, Mattel offers only self-serving and conclusory blanket statements of Mattel in-

13  house counsel Michael Moore to the effect that Mattel had no notice of the underlying facts

14  until it received a copy of Bryant's contract with MGA in November 2003 (Mot. at 18).

15  Similarly, Mattel's purported evidence that Larian made fraudulent statements to the press

16  designed to conceal the true facts from Mattel is internally inconsistent with Mattel's

---

[11]      The evidence concerning Mattel's suspicions on the conversion claim show Mattel had constructive notice of this claim many years ago as well. Contrary to Mattel's assertions, the evidence shows that Mattel had reason to suspect that BRATZ must have been created when Bryant worked at Mattel, given that BRATZ dolls were first exhibited at the Hong Kong Toy Fair in January 2001. (Tr. 6141:6-22; TX 911.) Even Mattel's own self-serving testimony shows it takes more than three months, <u>even up to a year</u>, to take a line of dolls from creation to exhibition. (Tr. 518:7-22 (characterizing three month production schedule as "aggressive").) That fact, taken together with Mattel's knowledge in early 2001 that it was Bryant who created BRATZ, puts Mattel on notice of the ultimate issue here. (Tr. 2011:19-2018:17 (toy fair exhibitions of BRATZ in early 2001 should have made Mattel suspicious that an insider might have accessed Mattel's intellectual property and used it to create BRATZ); Tr. 4278:3-4279:15, 4285:22-4286:14, 4288:2-22, 4290:5-4291:22, 6828:20-6832:12, 7413:21-7416:3 (by early summer 2001, Mattel knew Bryant did the concept drawings for BRATZ, because "everybody talked about it"); Tr. 1122:14-23 (testimony that Mattel had first considered using the name "Brats" in connection with Diva Starz as early as January 2000; thus, by the summer of 2001, when Bryant's involvement with BRATZ became known to Mattel, Mattel had enough facts to suspect that Bryant began working on BRATZ while he was still at Mattel); Tr. 731:4-733:6, 1730:7-1731:10, 1734:2-1736:3, 1738:14-19 (BRATZ fan site monitored by Mattel at the time reveals Bryant as the creator of BRATZ by March 2002).)

1  admitted suspicions at the time.[12]  In short, the jury's finding that Isaac Larian and MGA

2  HK did not fraudulently conceal Carter Bryant's involvement with the BRATZ was

3  grounded in the evidence before it, and Mattel is thus not entitled to a different conclusion.

4  ## II.   MATTEL IS NOT ENTITLED TO JMOL ON "INDEPENDENT CREATION"

5       Mattel argues that "independent creation" is an "affirmative defense" that MGA

6  waived "by not asserting it either in answer to Mattel's counterclaims, in its interrogatory

7  responses or in the Final Pretrial Conference Order." (Mot. at 14-15.)  Mattel is wrong:

8  > '[I]ndependent creation' is not an affirmative defense. The defendants, therefore,

9  > do not have the burden of persuasion for independent creation. [Plaintiff]'s *prima*

10 > *facie* case advanced the proposition that the defendants copied the design.

11 > Evidence of independent creation simply tends to prove the reverse of that

12 > proposition, <u>i.e.</u>, that the design was not copied. … A defense which points out a

13 > defect in the plaintiff's *prima facie* case is not an affirmative defense.

14 <u>Keeler Brass Co. v. Cont'l Brass Co.</u>, 862 F.2d 1063, 1066 (4th Cir. 1988) (emphasis

15 added); <u>see also</u> <u>Calhoun v. Lillenas Publ'g</u>, 298 F.3d 1228, 1230 n.3 (11th Cir. 2002) ("It

16 should be emphasized that independent creation is *not* an affirmative defense (<u>i.e.</u>, a claim

17 extraneous to the plaintiff's *prima facie* case). Rather, independent creation attempts to

18 prove the opposite of [the copyright owner's] primary claim, <u>i.e.</u>, copying"); <u>Cosmos</u>

19 <u>Jewelry, Ltd v. Po Sun Ho Co.</u>, 2006 WL 5105219, at *1 (C.D. Cal. Apr. 5, 2006)

20 ("[E]vidence relating to 'independent creation' does not constitute evidence relating to any

21 previously-waived affirmative defense.").

22

---

23 [12]    For example, Mattel points to the <u>Business Week</u> interview and the <u>San Fernando Valley</u>
<u>Business Journal</u> article as purportedly containing misleading information about BRATZ origins
24 (Mot. at 17), while ignoring that both of them came out <u>after</u> the <u>Wall Street Journal</u> article on July
18, 2003, the article <u>Moore admitted</u> was the basis for Mattel's investigation of Bryant (Tr.
25 6608:15-6609:4), where Larian not only disclosed that Bryant helped design the BRATZ and was a
former Barbie designer, but also indicated that he had originally chosen Bryant's design during a
26 time period when Bryant was still employed at Mattel. (TX 1A.1, 1A.2.)  Moreover, the reporters
cited by Mattel simply never asked Larian who drew the original concept drawings. (Tr. 1996:18-
27 21.)  Furthermore, the jury heard the <u>San Fernando Valley Business Journal</u> reporter testify that he
did not remember Larian saying that "it was Jason's idea for Bratz", that Larian was "always very
28 forthright" and he did not have a sense Larian was trying to conceal anything from him.  (Tr.
2128:11-21, 2130:12-15.)

1   As the Ninth Circuit has explained, "[t]he burden of proof, i.e., the risk of non-
2   persuasion, remains on the plaintiff throughout the presentation of the case, unless it is
3   declared to be elsewhere by statute or practice.  In a suit for copyright infringement the
4   plaintiff must prove that his copyrighted composition has been copied by the defendant, that
5   is, he has the burden of establishing the requisites of the case." Granite Music Corp. v.
6   United Artists Corp., 532 F.2d 718, 723 (9th Cir. 1976) (emphasis added).  Where the
7   plaintiff creates an "inference of copying," the accused infringer may make an "affirmative
8   offering of evidence" of "independent creation" which results in "what may be referred to
9   as a shift in the duty of 'going forward.'" Id. at 723-24  Thus, evidence of independent
10  creation is relevant to rebut a copyright holder's *prima facie* case of "copying;" however,
11  the burden of proving "copying" remains with the copyright owner (i.e., Mattel).[13] Id.; see
12  also Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1171 (C.D. Cal. 2001).

13  Because independent creation is not an affirmative defense, the MGA Parties did not
14  waive their absolute right to present evidence concerning the independent creation of the
15  accused items at issue in this case.[14]  Indeed, the Court has already recognized the propriety
16  of MGA's evidence of independent creation and included a jury instruction on this issue
17  (see Jury Instruction No. 29) and rejected Mattel's contention that this issue was waived
18
19

---

20  [13]   Similarly, in John L. Perry Studio, Inc. v. Wernick, 597 F.2d 1308 (9th Cir. 1979), the
    copyright owner "erroneously characterize[d] the foregoing burden of persuasion, the burden
21  required to rebut the presumption of copying, as one of going forward with 'clear and convincing'
    or 'strong, convincing and persuasive evidence.'" Id. at 1310.  The Court noted that this argument
22  was rejected in Granite Music, and quoted with approval the above cited language from Granite
    Music, which explained the shifting burden of persuasion (not proof) on the issue of "copying." Id.
23  [14]   Three Boys Music Corp. v. Bolton, 212 F.3d 477 (9th Cir. 2000), cited by Mattel, does not
    hold otherwise. Rather, the court cited Granite Music to support its holding that, "[b]y establishing
24  reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying.
    The burden shifts to the defendant to rebut that presumption through proof of independent
25  creation." Id. at 486. Three Boys did not hold that "independent creation" is an affirmative defense
    nor did it alter the fact that the plaintiff bears the ultimate burden of proof on the issue of copying.
26  Mattel cites only one other case, Bethea v. Burnett, 2005 WL 1720631 (C.D. Cal. June 28, 2005),
    in support of its position.  Although Bethea did use the phrase "affirmative defense," it is apparent
27  that the court was actually applying the burden-shifting approach, as it quotes the test directly from
    Three Boys Music.  Id. at *15. Harbeson v. Parke Davis, Inc., 746 F.2d 517, 520 (9th Cir. 1984),
28  also cited by Mattel, merely offers a general statement of the law of pleading affirmative defenses.

1    (see Tr. 8/20/08 AM session; Tr. 6548:22-6549:6; 6524:5-24).   Mattel offers neither new

2    facts nor new law to seek reconsideration of the Court's prior rejection of their argument.

3          Mattel also wrongly argues that MGA's independent creation evidence offered during

4    Phase 1B from such witnesses as Margaret Leahy and Paula Garcia is an improper attempt

5    to have the jury "reconsider its verdict in Phase 1A."  (Mot. at 15.)  Not true.  Under the

6    Ninth Circuit precedent discussed above, MGA is entitled to rebut Mattel's *prima facie* case

7    with evidence showing that the various accused BRATZ-related works were created

8    completely independently of the Bryant drawings. [15]   The MGA Parties presented

9    compelling evidence of independent creation in the Leahy and Garcia testimony Mattel

10   identifies, and it would be error to find there was no independent creation as a matter of

11   law.[16]   Moreover, any such finding would be an improper advisory opinion in light of the

12   jury's finding for Mattel on copyright infringement, as discussed in Section III A below.

13

14

15

16

17   ─────────────────────

18   [15]   See, e.g., Granite Music, 532 F.2d at 720-21 ("Any evidence pertaining to the manner in
     which the defendant created his composition is logically relevant: his training, the subject matter of
     the art, his access to other works or to the plaintiff's composition"; rejecting plaintiff's objection to
19   jury instruction that "[a]ny evidence produced by the defendant which explains or accounts to the
     satisfaction of the jury for such similarity or identity, rebuts [the presumption of copying]");
20   Warner Bros., Inc. v. Am. Broad. Cos., 654 F.2d 204, 211 (2d Cir. 1981) ("While '[n]o plagiarist
     can excuse the wrong by showing how much of his work he did not pirate,' … 'a defendant may
21   legitimately avoid infringement by intentionally making sufficient changes in a work which would
     otherwise be regarded as substantially similar to that of the plaintiff's.'"); Herbert Rosenthal
22   Jewelry Corp. v. Kalpakian, 446 F.2d 738, 741 (9th Cir. 1971) (plaintiff made a "strong
     circumstantial evidence of copying" which the court held was "not conclusive"; the accused
23   infringer was permitted to "testif[y] to independent creation from identified sources other than
     plaintiff's [copyrighted] pin"); 3-12 Nimmer on Copyright § 12.11 (courts have "held that '[a]ny
24   evidence produced by the defendant which explains or accounts to the satisfaction of the jury for
     such similarity or identity, rebuts such presumption [of copying]'"); 4-13 Nimmer on Copyright
25   § 13.03 ("a defendant may legitimately avoid infringement by intentionally making sufficient
     changes in a work that would otherwise be regarded as substantially similar to plaintiff's").
26
     [16]   Mattel's reliance on Entm't Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d
27   1211 (9th Cir. 1997), is misplaced.  The "costumes" at issue in that case involved exact duplication
     of such well-known characters as "Toucan Sam" and "Cap'n Crunch."  Unlike this case, whether
28   the 2-D and 3-D renderings of these characters were "substantial similar" was not at issue there.

## III.   MATTEL IS NOT ENTITLED TO A "CONDITIONAL" JUDGMENT ON SUBSTANTIAL SIMILARITY

### A.   Mattel's Request for a "Conditional" Determination Seeks An Advisory Opinion

Mattel brazenly admits, in labeling its request "conditional," that its motion is an improper request for an advisory opinion on an issue that is either moot or not yet ripe.  As Mattel is well-aware, the jury returned a verdict for Mattel on copyright infringement, as well as damages on that claim, and the Court issued a wide-reaching permanent injunction based on its own fact-finding.  (Mot. at 1, 3.)  There is no basis for entry of an order that would change neither the jury's damages award nor the scope of the injunction.[17]  What Mattel seeks is an advance ruling on the effect of the jury's verdict on future litigation, or a preemptive ruling should the permanent injunction be reversed on appeal.  It is not entitled to either.  See, e.g., Calderon v. Ashmus, 523 U.S. 740, 747 (1998) (party is not entitled to "gain a litigation advantage by obtaining an advance ruling on an affirmative defense"); Digital Envoy, Inc. v. Google, Inc., 2006 WL 824412, at *3 (N.D. Cal. Mar. 28, 2006) ("That the controversy might arise again in the future if Digital Envoy were to appeal successfully" does not justify rendering an advisory opinion); Gladwell Gov't Servs., Inc. v. County of Marin, 2005 WL 2656964, at *2 (N.D. Cal. Oct. 17, 2005) ("The fact that, theoretically speaking, Gladwell may in the future obtain a reversal … on appeal" does not justify rendering an advisory opinion).  A court may not issue an opinion where the party who seeks it "has nothing to gain at this juncture beyond a moral victory."  Digital Envoy, 2006 WL 824412, at *3.  Here, the jury rendered a verdict and the Court issued an injunction, which speak for themselves.  Mattel is entitled to nothing more and the Court should decline to provide the requested advisory opinion.

---

[17]   Even if its "conditional" JMOL were granted, Mattel could not now claim that the damages award is inconsistent with a finding of infringement across all generations and products – Mattel expressly asserted that the damages award could not be linked to any specific finding by the jury and prevailed in its Motion for Permanent Injunction based on that assertion.  (See Mattel Reply ISO Mot. for Perm. Inj. (Dkt 4384) at 3-5.)

**B.** **There is No Basis To Determine That The "Core" Bratz Fashion Dolls Are Substantially Similar To The Bryant Works Owned By Mattel As A Matter Of Law**

No doubt aware of its heavy burden to demonstrate the Court can eschew the jury's fact-finding role, as described in Section I., supra, Mattel maintains its evidence is "overwhelming" and "undeniable" on the issue of substantial similarity. (Mot. at 4, 8.) But Mattel's characterization of the evidence presented to the jury at trial overlooks the speculative nature of its own arguments, and ignores a vast array of countervailing evidence presented by MGA. Essentially, Mattel argues that its evidence is more persuasive than MGA's evidence, and that therefore its conclusions should be accepted wholesale by the Court – which flies in the face of controlling JMOL law.

**1.** **The Evidence Presented To The Jury Permits A Reasonable Juror To Conclude That "Core" Bratz Fashion Dolls Do Not Infringe**

Despite Mattel's speculative mantra as to what the "reasonable juror" would find, it is clear that copyright infringement by the core Bratz fashion dolls is at most a close factual question, and certainly does not merit a finding as a matter of law.[18] Regardless of the alleged import of Mattel's evidence, MGA presented ample evidence in Phase 1B for the jury to conclude that the core Bratz fashion dolls (and various features thereof) do not infringe Carter Bryant's works. Yet Mattel has wholly ignored MGA's evidence, let alone demonstrate that such evidence is so insufficient that a reasonable finder of fact could not possibly find for MGA.

For example, sculptor Margaret Leahy testified as to dozens of changes that she made between different iterations of the preliminary Bratz sculpts. (See, e.g., Tr. 6724:11-

---

[18]   Although Mattel's section heading refers to substantial similarity of "the Bratz dolls," it appears that its argument is directed entirely at the so-called "core" Bratz fashion dolls, which would encompass only those later generation dolls that utilize the same sculpt as the first generation dolls, and not any (i) Bratz-branded merchandise, or (ii) Bratz sub-brands such as Bratz Kidz, Bratz Boyz, Lil Bratz, Bratz Babyz, Bratz Big Babyz, Bratz Kidz, Big Kidz, Lil Angelz, Star Singerz, Fashion Pixiez, Talking Bratz, Walking Bratz, Bratz Petz, Micro Bratz, Itsy Bitsy Bratz, Funky Fashion Makeover Bratz, etc. MGA responds to Mattel's arguments regarding only the core fashion dolls herein, and does not waive any arguments directed toward other Bratz products. Further, MGA addresses later generation core fashion dolls, sub-brands, and branded merchandise in greater detail in its own Motion and Renewed Motion for Judgment as a Matter of Law. (See MGA Renewed JMOL (Dkt 4496) at 21.)

1  6732:15, 6784:8-6797:18.)  Garcia testified about significant differences between Bryant's

2  drawings and the final manufactured Bratz sculpt, including differences in the expression of

3  protectable elements such as the head, body proportions, feet, and posture.  (See, e.g., Tr.

4  6933:13-6936:4.)  Garcia also testified as to her role in making changes to make the doll

5  marketable, like changing the face paint, abandoning the removable hair feature, and

6  making changes in the fashions to make them workable in three dimensions.  (See, e.g., Tr.

7  6937:12-6938:3, 6941:6-6942:2, 6958:21-6960:4.)  In addition, Garcia flagged for the jury

8  differences between facial features of the drawings and the dolls, like the eyes and lips.

9  (See, e.g., Tr. 6960:5-6969:7.)  MGA's witnesses not only made specific comparisons of

10  protectable elements in the works (as per the extrinsic test of copyright infringement), but

11  also testified as to differences in the "overall look and feel" of the drawings and dolls (as

12  per the intrinsic test of copyright infringement).  (Tr. 6791:15-21, 6794:6-11, 6809:20-23,

13  6941:10-42:2, 6991:9-12, 7091:20-24.)[19]

14        MGA also presented copious evidence at trial distinguishing the first four Bratz dolls

15  from later products, demonstrating that the later generation "core" Bratz dolls were not only

16  created independently of the Bryant materials, but also differed substantially from their first

17  generation counterparts in their themes, fashions, accessories, face paint, and characters.

18  For example, MGA employees testified that they used their own creative processes to create

19  new doll designs, and had never even seen Carter Bryant's work.  (See, e.g., Tr. 7249:1-9)

20  (testimony of L. Domingo).)  Mattel has not, and cannot, establish as a matter of law that a

21  reasonable juror would have "no choice" but to reject the testimony of these MGA

22  witnesses, nor is the Court permitted to inquire into these witnesses' credibility in the

23  context of Mattel's JMOL.

24

25  [19]    The Ninth Circuit has determined that the intrinsic test "is exclusively the province of the jury."  Funky Films, Inc. v. Time Warner Entm't Co., L.P., 462 F.3d 1072, 1077 (9th Cir. 2006).

26  Accord Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996).  The centrality of the jury's role to the intrinsic test of copyright infringement is further emphasized by the Court's Phase 1B Jury

27  Instruction No. 26, which specifies that the subjective (i.e., intrinsic) inquiry asks whether "girls between the ages of 7 and 12 … would determine or recognize the defendants' products as

28  reflecting the total concept and feel" of Bryant's works.

### 2.   Mattel's Purported Evidence Rests On Speculation And Alternative Credibility Determinations Which Must Be Disregarded

Mattel's position that any juror disagreeing with Mattel's spin on the facts is per se "unreasonable" is baffling and untenable, especially since Mattel's conclusions regarding copyright infringement are rife with speculation. The most fundamental of Mattel's speculations concerns the Bratz "final production sculpt."   It is undisputed that the production sculpt is the one factor that has remained constant throughout the near-entirety of the "core" Bratz fashion doll line from 2001 to present, so Mattel strategically has targeted the sculpt as the primary infringing element of the Bratz dolls.   (Mot. at 4-5.) However, Mattel falls well short of demonstrating that a reasonable juror would have found that the sculpt infringed Mattel's copyrights.

First, the parties' presentations of evidence could have led the jury to conclude that the infringement was based on any number of factors other than the sculpt.  For example, over MGA's objection, the Court ruled that doll clothes, shoes, and accessories were protected by copyright, and the jury was so instructed.[20]  Capitalizing on this ruling, Mattel frequently pointed out in Phase 1B what it believed were similarities between the Bryant drawings and the first generation Bratz dolls – dressed in the first generation fashions – and repeatedly emphasized similarities between the clothes, shoes, and accessories. The overwhelming majority of visual comparisons made to the jury in Mattel's opening statement and closing argument compared clothed versions of the Bryant drawings and first generation Bratz dolls.  (See, e.g., Tr. 5421:25-5424:12; 5429:16-5432:3; 8141:15-8142:22.) Further, MGA itself recognized the prominence of the fashions in Bryant's drawings and conceded that the fashions sold with the first generation dolls were similar to the fashions depicted in Bryant's drawings.  (Tr. 6959:6-9.)  Given MGA's position, and the Court's instructions on "compilation" infringement and infringement if the dolls were a

---

[20]     The jury instructions included as protectable elements "particularized doll clothes, doll shoes, and doll accessories that express aggressive, contemporary, youthful style."  (See Phase B Jury Inst. No. 26.)

1   "picturization" of Bryant's sketches, [21] the jury could have easily found that the first

2   generation clothing — and not the sculpt — supported an infringement finding for the first

3   generation.  (See Phase B Jury Inst. (Dkt 4267) No. 26.)[22]

4       Second, Mattel assumes that the sculpt "was copied directly and intentionally from

5   the designs owned by Mattel" and concludes that "all the dolls based on it therefore infringe

6   Mattel's copyrights." (Mot. at 5.)[23]  But the evidence does not support this account.

7   Testimony by both Leahy and Bryant at most show a colorable question of fact as to the

8   extent to which Leahy relied on Bryant's drawings in crafting her sculpts.  Leahy testified

9   that Bryant told her "Here's my idea. Just take it and run with it.  Let me know when you've

10  sculpted something" (Tr. 4131:7-10) and that "it's rare that you get a designer that says

11  here's my vision.  You know, do your magic and run with it."  (Tr. 4371:1-5.)[24]  Consistent

12  with Leahy, Bryant testified that he told Leahy that "I'm not a sculptor; here's the drawing,

13  you know; just, you know, put your own spin on it."  (Tr. 2567:5-7).

14      Mattel ignores this testimony, citing instead to Bryant's deposition testimony

15  (replayed at trial) that purports to show that "the sculpt for the Bratz dolls was created based

16  on his drawings."  (Mot. at 5 n.16).  In fact, this explanation of Bryant's testimony is highly

17

18  [21]    Mattel devotes a portion of its JMOL to arguing that the jury should have found that the Bratz dolls infringed a "unique combination of elements protected by copyright law." (Mot. at 8.)

19  But Mattel has never specified what its alleged "unique combination" consists of, nor how this amorphous entity has been infringed.  With each subsequent brief, it becomes increasingly obvious

20  that Mattel either does not know, or finds it strategic to withhold this information.  In the current motion, this "combination" is little more than a re-packaging of the intrinsic test of copyright

21  infringement, as Mattel tries to shoehorn "particularized expressions of the characters' head and face, body and feet, clothes, shoes and accessories" into "overall look and feel, style, and attitude."

22  (Id.)  As noted above, however, the intrinsic test is generally determined by the jury.  (See supra n.19)

    [22]    Mattel also assumes that the sculpt itself incorporates "the unique attitude and expression

23  which define" the doll, but it can provide no basis for that conclusion. (Mot. at 5).  It is equally (if not more) likely that any "unique attitude and expression" is more a result of the face painting,

24  fashions, and accessories of the doll.

    [23]    Mattel does not base its infringement claim on the preliminary sculpt done by Margaret

25  Leahy (TX 1136A).  However, to the extent Mattel suggests that this sculpt is relevant, MGA notes that Leahy devoted substantial time to explaining to the jury how later iterations of the sculpt

26  differed in significant ways from 1136A.  (Tr. 6781:25-6783:15.)  Furthermore, MGA argues in its own JMOL motion that Carter Bryant is not an "author" of this preliminary sculpt as a matter of

27  law.  (MGA Renewed JMOL at 21-23.)

    [24]    See also Tr. 4131:7-10, 4133:12-17, 4135:20-23, 4136:18-21, 4146:20-24, 4312:6-9.

28

1   misleading.   The majority of the excerpt discusses the so-called "control drawing," (TX
2   323-32) which Leahy vigorously contended at trial was actually created by Bryant based on
3   her sculpt.  (Tr. 6835:8-6836:22).  While Mattel points to other Bryant testimony indicating
4   that he provided his work to Leahy, Mattel fails to counter Leahy's testimony that Bryant's
5   two-dimensional drawings were not "turn-around" drawings that would have provided her
6   with more "information" regarding the specifics of dimensions (depth, size, etc.), and that
7   Leahy created her sculpt based on the Steve Madden advertisement and her own creativity
8   and vision.   (See, e.g., Tr. 6839:18-6842:8, 6852:24-6853:6; see also 6872:21-6873:19,
9   6930:5-12.)[25]  To the extent that Leahy and Bryant's testimony diverge, it sets up a classic
10  credibility question between the two, which is exclusively the province of the jury to resolve.
11  It would be inappropriate for the Court to rule in Mattel's favor on this issue, particularly
12  when it is required to refrain from making any such alternative credibility determinations
13  and "disregard all evidence favorable to the moving party that the jury is not required to
14  believe." Winarto, 274 F.3d at 1283.

### 3.   The Court Cannot Consider Any "Evidence" That Mattel Failed To Present To The Jury At Trial

17        In conjunction with its Motion for a Permanent Injunction, Mattel submitted new
18  post-trial evidence (in the form of declarations) on the issue of substantial similarity that it
19  claimed was necessary "for the Court to consider in determining the propriety and scope of
20  the injunctive relief sought."  (Mattel Opp'n to MGA Mot. to Strike (Dkt 4394) at 2.)[26]  At
21  that time, MGA argued that such additional evidence on the purely legal claim of substantial

---

[25]      Many alleged "similarities" in the proportions of the figures in the Bryant drawings and the Bratz production sculpt merely reflect standard proportions in graphic depictions of the human form.  (See, e.g., Mot. at 6 (comparing "the distances between the brow, the top and bottom of the eye, the nose," etc.)).  As the Court is well aware, MGA has argued on several occasions that to the extent human anatomy is "expressed by nature" and "the common heritage of human kind ... no artist may use copyright law to prevent others from depicting" it.  Satava v. Lowry, 323 F.3d 805, 813 (9th Cir. 2003).  See MGA Mot. for Clarification or Reconsideration of July 24, 2008 Order re: Scope of Copyright Protection (Dkt 4185).

[26]      Mattel asserted that the declaration of outside counsel Dylan Proctor "provides the Court with a way ... to directly compare Bratz drawings and products," the declaration of Frank Keiser "allow[s] the Court to isolate and compare the shape of Mattel's copyright sculpt with the shape of a recent Bratz doll," and the declaration of Kenneth Hollander addressed "the relevant audience for the intrinsic test."  (Mattel Opp'n to MGA Motion to Strike (Dkt 4394) at 2-3.)

1  similarity, for which MGA has a Seventh Amendment right to a trial by jury,[27] is not

2  admissible post-trial on a motion for equitable relief, particularly where such evidence was

3  (i) directly relevant to the central jury issue of the Phase 1B trial, and (ii) readily available at

4  trial, but strategically withheld.[28]  In its December 3, 2008 Order, the Court rejected MGA's

5  argument and found the declarations "relevant to the application" of the substantial

6  similarity analysis.  (12/3 Order (Dkt 4439) at 15-16.)

7        Although the MGA Parties respectfully disagree with the Court's consideration of the

8  newly offered evidence in post-trial injunctive proceedings, the Court's decision to consider

9  such new evidence on the injunction motions is irrelevant to the analysis here.   In the

10  context of a JMOL, the jurisprudence is clear that, so long as "a party has been fully heard

11  on an issue during a jury trial," the Court may only rely on evidence **actually presented** to

12  the jury in determining whether "a reasonable jury would not have a legally sufficient

13  evidentiary basis to find for the party on that issue …." Fed. R. Civ. P. 50(a)(1).  See

14  McEuin v. Crown Equip. Corp., 328 F.3d 1028, 1037 (9th Cir. 2003) ("[e]vidence not

15  admitted at trial cannot be used in a review of the district court's denial of judgment as a

16  matter of law"); Elbert v. Howmedica, Inc., 143 F.3d 1208, 1209 (9th Cir. 1998) ("when

17  ruling on a Rule 50(b) motion … [t]he record should be taken as it existed when the trial

18  was closed").   Therefore, although the Court may have considered the Proctor, Keiser, and

19  Hollander declarations when sitting in equity, it cannot give any consideration to such

20

21

22  [27]    See, e.g., Danjaq LLC v. Sony Corp., 263 F.3d 942, 962 (9th Cir. 2001) ("McClory has a constitutional right to a jury trial on his copyright infringement claims ….") (citing Feltner v.

23  Columbia Pictures TV, 523 U.S. 340, 355 (1998); 3 Nimmer §12.10[A]. at 12-15 (May 2000) (noting that "a defendant who faces monetary sanctions may insist on jury trial").

24  [28]    See MGA Reply ISO Mot. to Strike (Dkt 4403) at 2-7; MGA Opp'n to Mattel Mot. for Perm.

25  Inj. (Dkt 4364) at 28-29.  See also Whiteside BioMechanics, Inc. v. Sofamor Danke Group, 88 F. Supp. 2d. 1009, 1012 (E.D. Mo. 2000) ("[I]t is inappropriate and impermissible for the Court and

26  jury to render judgments on the equitable and legal issues in the same case based on different records, except as the records might differ based on the limited relevance of particular evidence.

27  The Court held a separate evidentiary hearing on the non-jury issues, for the very purpose of taking evidence which was relevant only to those issues of equitable relief. The evidence now offered by

28  movants is not such evidence, but instead is equally relevant to the central issues of plaintiff's right to legal relief on the claim of misappropriation").

1    evidence in making its current determination.[29]

2        For example, Mattel relies heavily on the Bratz sculpt as a basis for infringement, but

3    it did not present Keiser's "two-dimensional depictions of three-dimensional models he

4    scanned using a sophisticated scanning machine" to the jury, and therefore any alleged

5    value to such scans in the infringement analysis must be disregarded.  (12/3 Order at 15.)  In

6    addition, without the benefit of Hollander's expert report, it is clear that Mattel's "evidence"

7    at trial of the intrinsic analysis of copyright infringement (i.e. from the perspective of a 7-12

8    year old girl) is simply non-existent.  Mattel's attempt to rely on this "evidence" is a tacit

9    admission that the evidence admitted at trial does not support the broad infringement

10   finding that Mattel now asks the Court to make as a matter of law.  As none of these

11   materials were presented to the jury at trial, this "evidence" can not be considered by the

12   Court in determining what a "reasonable jury" could find with regard to substantial

13   similarity.

14        **4.    Mattel Offers No Grounds For Reconsideration Of Arguments That The Court Has Already Rejected On Summary Judgment**

15        The Court recognized that MGA presented sufficient evidence on substantial

16   similarity to create a triable issue of fact when it rejected Mattel's Motion for Partial

17   Summary Judgment on this same issue both before the trial began and after the jury verdict

18   in Phase 1A.  (Mot. at 3-4, citing 7/24 Order (Dkt 4154) at 3).  As "[t]he standard for

19   granting a summary judgment is equivalent to the standard for granting a judgment as a

20   matter of law under Fed. R. Civ. P. 50," the Court should once again reject Mattel's request.

21   Hopkins v. Dow Corning Corp., 33 F.3d 1116, 1121 (9th Cir. 1994), citing Celotex Corp. v.

22   Catrett, 477 U.S. 317, 323 (1986).

23        Mattel implies that the Court based its July 24, 2008 decision primarily on evidence

24   proffered by MGA's design expert, Glenn Vilppu, and concludes that since Vilppu did not

25   testify at trial, MGA's opposition to any JMOL is undone.  (Mot. at 3-4.)  But Mattel

26

27   _____

28   [29]    Mattel has only argued that "'new' evidence is routinely admitted in connection with post-trial requests for equitable relief." (Mattel Opp'n to MGA Mot. to Strike (Dkt 4394) at 1) (emphasis added).

ignores the Court's specific references in its summary judgment order to the testimony of Paula Garcia of changes made to the Bratz design and evidence provided by Margaret Leahy of her "artistic freedom in creating the sculpt."  (7/24 Order (Dkt 4154) at 3.)  In addition, in lieu of Vilppu's testimony, both Garcia and Leahy, as discussed above, presented compelling evidence during Phase 1B of "differences between the Bratz dolls and the registered drawings."  Id.

In fact, it is Mattel, not MGA, that has offered less evidence post-trial than it did on its failed summary judgment motion.  On summary judgment, Mattel relied heavily on the expert report of its design expert, Lee Loetz, to make specific comparisons of features of the drawings versus the dolls.  (Mattel MSJ (Dkt 2547) at 15-22).  But Loetz's testimony was not presented to the jury in Phase 1B, as Mattel devoted the majority of its allotted time in Phase 1B to litigating the statements arising out of the lawsuits brought by MGA in Hong Kong, rather than to an analysis of substantial similarity of the copyrighted and allegedly infringing items at issue.  To the extent Mattel did focus on substantial similarity, its Phase 1B case-in-chief dealt almost entirely with a high-level comparison between the Bryant drawings and the first generation Bratz dolls.  As discussed above, Mattel cannot rely on evidence that it failed to present at trial.

### 5.    A JMOL At This Juncture Would Violate MGA's Seventh Amendment Rights To A Trial By Jury

MGA has repeatedly asserted that it has a constitutional right to a jury verdict on the scope of copyright infringement, and the Court has acknowledged that "where legal claims are tried by a jury and equitable claims are tried by a judge … the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations" on legal claims.  (12/3 Order at 9, quoting Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993).)  The Seventh Amendment similarly constrains the Court's fact-finding role in the context of a judgment as a matter of law: "Rule 50(a)(1) makes clear that courts have a duty to enforce controlling law without intruding on the jury's responsibility for fact determinations as dictated by the Seventh Amendment or by federal law." 9 Moore's Fed. Practice - Civil §50.60[1]; see also Coates v. Daugherty, 973 F.2d 290,

20

1    293 (4th Cir. 1992) (explaining that, in the context of a motion for a j.n.o.v, a court's

2    "power of review continues to be limited by the Seventh Amendment … we may not

3    therefore weigh the evidence, pass on the credibility of witnesses, or substitute our

4    judgment on the facts for that of the jury").

5        On the bases that the general verdict form (which Mattel championed and MGA

6    vigorously opposed (Tr. 7878:6-8040:10 (8/18 Charging Conf.))) left the parties "to hazard

7    various guesses as to the jury's intentions" and that "no factual findings can be inferred

8    from the jury's copyright infringement award," the Court rejected MGA's claim that the

9    jury only found infringing the first generation Bratz dolls, and engaged in its own fact

10   finding to grant Mattel an expansive permanent injunction.   (12/3 Order at 10-11.)

11   However, the Court did not determine that a finding of first generation infringement would

12   have been untenable based on the evidence presented at trial.  In fact, although the Court

13   asserted that MGA's argument was not sufficiently proven by the jury verdict alone, it

14   acknowledged the possibility that such a verdict would have been reasonable: "Again, had

15   the jury awarded an amount equal to the amount of profits generated by the first generation

16   Bratz dolls, the Court would find, based on the award and the jury's note, that the jury

17   implicitly found infringement as to the first generation Bratz dolls only." (Id. at 9.)

18        Although the Court did not make an affirmative finding that the verdict reflects the

19   jury's determination that only the first generation infringed, the jury's low damages award

20   and on-the-record expressions of intent clearly demonstrate that it rejected Mattel's theory

21   that all Bratz dolls infringed the Bryant works.  For example, the jury awarded no future

22   profit damages, and its award of $6 million against MGA, $3 million against Mr. Larian,

23   and $1 million against MGA Hong Kong represent only .77%, .43%, and .13% of the

24   amounts requested by Mattel for such infringement, respectively.  (See Phase 1B Verdict

25   Form (Dkt 4279) No. 11.)  Furthermore, the jury specifically asked during deliberation

26   whether it could "find that the first generation of dolls violate the copyright of Mattel but

27

28

1  subsequent generations of dolls do not violate the copyright?" (Tr. 8288:6-9).[30] There can

2  be no doubt that such manifestations by the jury are not only consistent with (if not

3  conclusive of) MGA's theory of infringement, but are wholly inconsistent with Mattel's

4  requested judgment as a matter of law.

5       **C.**    **The Court Has Already Rejected Mattel's Judicial Estoppel Argument**

6       Given the extensive amount of time and energy Mattel devoted in its Phase 1B case-

7  in-chief to MGA's lawsuits against third parties in foreign jurisdictions (i.e. Hong Kong),

8  and the lack of success derived therefrom, it is hardly surprising that Mattel continues to

9  regurgitate its argument that the MGA Parties are judicially estopped from denying

10  substantial similarity between the Bryant drawings and the Bratz dolls. But Mattel has once

11  again ignored that this argument has already been considered and rejected by this Court on

12  multiple occasions, and provides no reason why the Court should reconsider its decision.

13       Mattel's judicial estoppel argument dates back to March 7, 2008, when it filed its

14  Motion for Summary Judgment and presented statements made by MGA in foreign

15  pleadings. (Mattel MSJ at 14.)[31]  The Court denied summary judgment on this issue. (5/21

16  Order (Dkt 3758) at 8-9). Even Mattel had to acknowledge that this foreclosed the judicial

17  estoppel arguments:

18       Mr. Zeller: …. This highlights exactly the motion that Mattel brought, because

19       the Court will recall how we ended up here. We say that they are bound by these

20       prior judicial statements. They basically – the Court has obviously not ruled on

21       that issue, or at least, I guess, implicitly, I think has denied the motion with

22       respect to judicial estoppel by denying the motion on substantial similarity.

23       The Court:  Yes.

24

25  ───────────────

26  [30]    These examples are discussed in greater detail in MGA's Opposition to Mattel's Motion for Permanent Injunction (Dkt 4364) at 21-22, 25-26.

27  [31]    Mattel pressed its judicial estoppel argument in its Reply in Further Support of its Motion for Summary Judgment (Dkt. 2952) when it argued that "MGA's Opposition simply fails to

28  confront its prior statements and conduct regarding the originality of the drawings" (id. at 11) — even though the issue of originality of the Bryant drawings was never in dispute.

(Tr. 5378:14-5379:12.)   Mattel again raised judicial estoppel based on the Hong Kong statements during the motion in limine process, and again the Court declined to find judicial estoppel.  (See Mattel Opp'n to MGA MIL No. 3 (Dkt 3373) at 13.)  Mattel raised the issue of judicial estoppel a third time prior to the Phase 1B trial, and the Court again rejected Mattel's judicial estoppel argument, this time acknowledging the complex nature of the Hong Kong pleadings.  (Tr. 5388:-25-5389:4 ("And the Court is not going to let them do that.  That's part of the reason I decline to go down and accept Mr. Zeller's invitation earlier on judicial estoppel, because I think there's too many complicating factors for the Court to do that.") [32]   The Court confirmed its earlier decisions rejecting judicial estoppel in its final jury instructions, noting that the jury may "consider any factual statements" made in such pleadings, but that "it is for you [the jury] to decide how much weight, if any, to give to those factual statements."  (Phase B Jury Inst. No. 32).

The time for raising reconsideration of this issue has long passed.  The Court has already explicitly framed the issue for the jury as one of weighing the evidence, which, as discussed above, is out-of-bounds for the Court on a motion for a JMOL.  Furthermore, Mattel has provided no new legal authority that could justify reconsideration.  To find judicial estoppel, the positions taken in separate litigations must be "clearly inconsistent." Abercrombie & Fitch Co. v. Moose Creek, Inc., 486 F.3d 629, 633 (9th Cir. 2007).  Mattel, despite its attempt to "connect the dots" between various Hong Kong statements, still has failed to show where in these other litigations MGA has ever stated, "clearly" or otherwise, that the first generation (or later generation) Bratz dolls were substantially similar to the Bryant drawings, much less do so as a matter of undisputed fact. [33]

---

[32]    See also Tr. 5403:7-11 ("I understand that. And that's why the conclusions in the Hong Kong Court don't come in, because they are lacking that extrinsic analysis.  That's my very point and why I'm not going down the judicial estoppel road being invited by Mr. Zeller").

[33]    Mattel attempts to backstop its estoppel argument by arguing that "even short of outright estoppel, the positions MGA has taken in prior infringement actions indisputably prove infringement and confirm MGA's own infringement of Mattel's rights."  (Mot. at 14.)  But this conclusory statement is simply false.  At best, statements made in Hong Kong would demonstrate what MGA has already argued, i.e. that it had access to the Bryant's work when creating the first generation, and that referred to Carter Bryant's work as a conceptual starting-off point, or as "inspiration" for the first generation of Bratz dolls.

1   Moreover, applicable legal authority indicates that statements related to intellectual
2   property claims made in foreign jurisdictions are rarely, if ever, found to have a preclusive
3   effect under judicial estoppel principles.  See, e.g., Pfizer, Inc. v. Ranbaxy Labs. Ltd., 457
4   F.3d 1284, 1290 (Fed. Cir. 2006) (finding that statements made during prosecution of a
5   patent in foreign jurisdiction "are irrelevant to claim construction [in the United States]
6   because they were made in response to patentability requirements unique to Danish and
7   European law"); Mars, Inc. v. JCM Am. Corp., 2008 U.S. Dist. LEXIS 21089 at *39 (D.N.J.
8   Mar. 17, 2008) ("The German action is in a foreign jurisdiction, which likely has different
9   burdens of proof and issues of law and fact; therefore, it is not clear that [defendant's]
10   position is irreconcilably inconsistent with its position here.")

11   Nor do any of MGA's statements in this litigation constitute "admissions" of
12   infringement. (Mot. at 9.)  Mattel rehashes well-worn arguments, pointing to supplementary
13   copyright registrations for the first generation Bratz doll configurations, accessories, and
14   packaging (see, e.g., id. at 10, citing, *inter alia*, TX 558, 560, 562, & 564), alleging that
15   MGA therein admits that the dolls were "based on the Bryant drawings owned by Mattel."
16   (Id.)  But Mattel once again ignores the evidence, disregarding the testimony of MGA's
17   former general counsel, Daphne Gronich.  Gronich explained to the jury that the language in
18   question referred to two-dimensional packaging art, which MGA has already conceded is a
19   derivative work based on the Carter Bryant drawings.  (Tr. 5921:6-5924:11, 5926:16-
20   5930:25.)  Mattel also takes statements by Bryant, Leahy, Garcia, and Larian out of context
21   to attempt to demonstrate that each person has admitted that the dolls and drawings are
22   substantially similar.  Of course, all four of these witnesses denied substantial similarity, so
23   the jury's determination of credibility must control here.  Even taking Mattel's excerpts at
24   face value, Mattel can only argue that MGA "admitted" infringement by equating
25   "inspiration," "vision," and "concept drawings" with "substantial similarity." (Mot. at 9.)
26   But the law is clear that mere ideas are not copyrightable, and are filtered out of
27   infringement analyses.  Harper & Row Publishers Inc. v. Nation Enters., 471 U.S. 539, 556-
28   557 (1985); Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442-43 (9th Cir.

1   1994); <u>Idema</u>, 163 F. Supp. 2d at 1176-77.  That Paula Garcia hoped to stay true to Bryant's

2   general "vision" does not prove the actual copying of protectable expression required to

3   demonstrate infringement.  <u>Feist Publ'n, Inc. v. Rural Tel. Co.</u>, 499 U.S. 340, 361 (1991).

4   Thus, this Court should reject Mattel's judicial estoppel argument for the fourth—and

5   hopefully final – time.

## <u>CONCLUSION</u>

For the foregoing reasons, Mattel is not entitled to a judgment as a matter of law.

DATED:  January 12, 2009          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  _____/s/ Thomas J. Nolan_____
                             Thomas J. Nolan
                       Attorneys for the MGA Parties