UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

| | |
|---|---|
| MATTEL, INC., | ) |
| PLAINTIFF, | ) |
| VS. | ) NO. CV 04-09049 |
| MGA ENTERTAINMENT, INC., ET. AL., | ) |
| DEFENDANTS. | ) TRIAL DAY ONE, |
| AND CONSOLIDATED ACTIONS, | ) MORNING SESSION |

**CERTIFIED COPY**

REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

RIVERSIDE, CALIFORNIA

TUESDAY, MAY 20TH, 2008

9:02 A.M.

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA  92501
951-274-0844
WWW.THERESALANZA.COM

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

MATTEL, INC.,                      )
                                   )
                    PLAINTIFF,     )
                                   )
          VS.                      )    NO. CV 04-09049
                                   )
MGA ENTERTAINMENT, INC., ET. AL.,  )
                                   )
                    DEFENDANTS.    )    TRIAL DAY ONE,
_____    )    MORNING SESSION
AND CONSOLIDATED ACTIONS,          )
                                   )
_____    )

**CERTIFIED COPY**

REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

RIVERSIDE, CALIFORNIA

TUESDAY, MAY 20TH, 2008

9:02 A.M.

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA   92501
951-274-0844
WWW.THERESALANZA.COM

1

2    APPEARANCES:

3

4    ON BEHALF OF MATTEL, INC.:

5                          QUINN EMANUEL
                           BY:  JOHN QUINN
6                          BY:  JON COREY
                           BY:  MICHAEL T. ZELLER
7                          865 S. FIGUEROA STREET,
                           10TH FLOOR
8                          LOS ANGELES, CALIFORNIA  90017
                           213-624-7707
9

10
     ON BEHALF OF MGA ENTERTAINMENT:
11
                           SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
12                         BY:   THOMAS J. NOLAN
                           BY:   CARL ALAN ROTH
13                         BY:  RAOUL KENNEDY
                           300 SOUTH GRAND AVENUE
14                         LOS ANGELES, CALIFORNIA  90071-3144
                           213-687-5000
15

16

17

18

19

20

21

22

23

24

25

TUESDAY, MAY 20TH, 2008                    TRIAL DAY 1, MORNING SESSION

1                              I N D E X

2                                                            PAGE

3    MINI OPENING STATEMENTS.......................    33

4    VOIR DIRE.....................................    57

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

TUESDAY, MAY 20TH, 2008              TRIAL DAY 1, MORNING SESSION

1      RIVERSIDE, CALIFORNIA; TUESDAY, MAY 20TH, 2008; 9:02 A.M.

2                              -oOo-

3            THE CLERK:   CALLING CASE NUMBER CV 04-09049-SGL,

4      MATTEL, INC. VERSUS MGA ENTERTAINMENT, INC., ET AL., AND

5      RELATED ACTIONS.                                                    09:01

6            MAY WE HAVE COUNSEL PLEASE STATE YOUR APPEARANCES FOR

7      THE RECORD.

8            MR. QUINN:   JOHN QUINN, MIKE ZELLER, AND JON COREY

9      FOR MATTEL.

10           MR. NOLAN:   TOM NOLAN.                                       09:02

11           MS. AGUIAR:   LAUREN AGUIAR.

12           MR. KENNEDY:   RAOUL KENNEDY.

13           MR. NOLAN:   FOR THE MGA PARTIES.

14           THE COURT:   GOOD MORNING, COUNSEL.

15           WE'RE ON CALENDAR THIS MORNING, OF COURSE, TO BEGIN          09:02

16     THE JURY SELECTION IN THIS CASE.  MR. HOLMES IS PHOTOCOPYING

17     RIGHT NOW THE VOIR DIRE QUESTIONS WHICH I'M GOING TO PROVIDE TO

18     EACH MEMBER OF THE PROSPECTIVE JURY PANEL.  I'LL PROVIDE THEM

19     TO COUNSEL IN A MOMENT AS WELL.  ESSENTIALLY, WHAT I'VE DONE IS

20     TAKEN THE COURT'S GENERAL QUESTIONS AND THE VOIR DIRE PROPOSED     09:02

21     BY BOTH PARTIES.  I THINK I'VE COVERED ALL, OR AT LEAST MOST,

22     OF THE ISSUES THAT YOU HAVE ASKED, USING ONE OR MORE OF THE

23     QUESTIONS.

24           I WILL BE PROVIDING EACH SIDE WITH A 30-MINUTE

25     PERIOD, AFTER THE COURT HAS CONDUCTED THE ENTIRE VOIR DIRE, TO     09:02

5

1  FOLLOW UP, SO YOU WILL HAVE THAT ABILITY IN CASE YOU FEEL THE

2  COURT HAS MISSED ANYTHING WITH ANY ONE PARTICULAR JUROR.

3          THE OPENING STATEMENTS, I TRUST, WILL BE, AS I

4  INDICATED YESTERDAY, DEVOID OF ANY ARGUMENT OR LEGAL

5  CONCLUSIONS.  THEY SHOULD BE RESTRICTED SIMPLY TO TELLING WHAT          09:03

6  THE CASE IS ABOUT AND IN NO CIRCUMSTANCES ARE TO EXCEED FIVE

7  MINUTES.  I'LL HAVE YOU GO FORWARD WITH THOSE ONCE WE GET THE

8  JURY PANEL IN HERE.

9          WE'RE FORTUNATE, ACTUALLY, TO HAVE MORE JURORS THAN

10  WERE ACTUALLY REQUESTED.  I BELIEVE WE HAVE 70 JURORS          09:03

11  DOWNSTAIRS.  I'M GOING TO SEAT 56 AND DO THE VOIR DIRE ON 56,

12  AND I'M HOPING THAT WE'LL BE ABLE TO GET THE ENTIRE PANEL THAT

13  WE NEED FROM THAT 56, SINCE IT'S ONLY A PANEL OF TEN.  AND

14  THESE ARE ALL PRESCREENED FOR THE TWO-MONTH PERIOD, SO THAT

15  SHOULDN'T BE A PROBLEM.  THERE WERE THREE JURORS WHO REPORTED          09:03

16  THIS MORNING WHO DO NOT SPEAK OR UNDERSTAND THE ENGLISH

17  LANGUAGE, AND I HAVE EXCUSED THOSE ALREADY.  BUT THAT STILL

18  LEAVES US WITH 67.  AND THEN WE'LL BRING UP 56.

19          I THINK THAT'S ALL OF THE ISSUES.

20          MR. HOLMES INDICATED THAT WE'VE FOUND SOME STORAGE          09:04

21  SPACE.  JUDGE RAYBURN ON THE THIRD FLOOR HAS GRACIOUSLY AGREED

22  TO PROVIDE USE OF HIS ANTEROOM OFFICES THERE FOR THE STORAGE OF

23  THE BOXES THAT MGA HAS.

24          **MR. NOLAN:**  ONE ISSUE THAT APPARENTLY HASN'T BEEN

25  RISEN IS THAT AFTER AN INTANGIBLE OBJECT HAS BEEN INTRODUCED AS          09:04

1    AN EXHIBIT, WHETHER IT BE A DOLL OR A DRAWING --

2            THE COURT:  THOSE WILL BE SECURED THERE.

3         MR. NOLAN: -- SECURED UP THERE?

4         THE COURT:  YES.

5         MR. NOLAN:  THE LAST QUESTION, THERE IS A VIDEO

6    STATEMENT, FIVE MINUTES, I UNDERSTAND THE MOTION IN LIMINE --

7            DOES IT COVER 1-A AND 1-B SO WE CAN GO 1-A AND 1-B.

8         THE COURT:  OKAY.

9         MR. QUINN:  YOUR HONOR, I WOULD ASSUME AT THIS POINT

10   WE'RE JUST GOING TO BE TALKING ABOUT 1-A.  THERE'S NO REASON TO

11   BE POLLUTING THIS WITH 1-B ISSUES.

12        THE COURT:  AND I THINK YOU MADE THAT POINT, AS WELL,

13   YESTERDAY, MR. NOLAN.

14        MR. NOLAN:  JUST FOR CLARIFICATION.  I WAS CONFUSED

15   AS TO WHETHER OR NOT IT WAS GOING TO INCLUDE EVERYTHING.

16        THE COURT:  IT'S JUST 1-A AT THIS POINT.  FOR

17   PURPOSES OF THIS MINI OPENING, THAT'S ALL WE REALLY NEED TO

18   COVER.  THIS IS JUST TO GIVE THEM SOME FLAVOR FOR THE CASE.

19   YOU'RE NOT ARGUING YOUR CASE.  THERE'S GOING TO BE PLENTY OF

20   TIME FOR THEM TO GET INTO ALL OF THE 1-B ISSUES.  THIS IS

21   SIMPLY TO PROVIDE SOME CONTEXT FOR THE QUESTIONS DURING

22   VOIR DIRE.

23        MR. NOLAN:  I HAD FOUR REALLY GOOD MINUTES ON

24   ANALYTICAL DISSECTION...

25        THE COURT:  VERY WELL.

09:04

09:04

09:04

09:05

09:05

7

1          MR. QUINN?

2          MR. QUINN:  YOUR HONOR, UNFORTUNATELY, THERE'S ONE

3    OTHER ISSUE.

4          THE COURT:  I UNDERSTOOD THERE MIGHT BE ONE OTHER

5    ISSUE.  THAT'S WHY I'M OUT HERE.                              09:05

6          MR. QUINN:  MGA UNFORTUNATELY ISSUED A PRESS RELEASE

7    WHILE WE WERE IN COURT YESTERDAY AFTERNOON REGARDING THE

8    SETTLEMENT WITH MR. BRYANT, WHICH IS VERY MISLEADING; IT'S VERY

9    INACCURATE.  AND UNFORTUNATELY, IT SPECIFICALLY REFERENCES, IN

10   THE QUOTATION FROM MR. NOLAN, THE JURY SELECTION PROCESS, THAT  09:05

11   THIS IS DONE JUST ON THE EVE OF JURY SELECTION.  IT

12   MISREPRESENTS, AND CERTAINLY LEAVES THE IMPRESSION IN THE

13   READER'S MIND, THAT MR. NOLAN KNOWS THE TERMS OF THE

14   SETTLEMENT, AND THAT IT WAS A DISMISSAL FOR NO CONSIDERATION,

15   WHICH -- IF THE COURT CARES, I SEE AMBASSADOR PROSPER IS HERE.  09:05

16   IF THE COURT CARES TO INQUIRE OF AMBASSADOR PROSPER, I THINK HE

17   WILL ADVISE THE COURT THAT THIS WAS A MISLEADING PRESS RELEASE.

18          I'M CONCERNED ABOUT THE TIMING OF IT.  I'M CONCERNED

19   ABOUT -- IT'S BEEN PICKED UP IN THE WIRE SERVICES.  AND HERE WE

20   ARE GOING TO START JURY SELECTION TODAY, AND IT'S --           09:06

21          THE COURT:  WHAT EXACTLY ARE YOUR CONCERNS?

22          MR. QUINN:  THE IMPLICATION OF THIS PRESS RELEASE IS

23   THAT MATTEL RECOGNIZED IT HAD NO CASE AGAINST MR. BRYANT AND

24   SIMPLY DISMISSED HIM, FOR NOTHING.  THAT'S THE IMPLICATION,

25   THAT THERE WAS NO MERIT TO THE CASE ALL ALONG AND THAT WE      09:06

8

1   FINALLY ACKNOWLEDGED THAT AND WE'RE PREPARED TO FACE A JURY

2   WITH THE CLAIMS AGAINST MR. BRYANT.

3          WHAT THE PRESS RELEASE SAYS IS THAT MATTEL HAS

4   FINALLY ACKNOWLEDGED THAT ITS SUIT AGAINST CARTER BRYANT IS

5   WITHOUT MERIT.  THERE'S SIMPLY NO TRUTH TO THAT.  THERE'S          09:06

6   SIMPLY NO TRUTH TO THAT.  THIS IS THE SECOND TIME WE'VE HAD A

7   HICCUP IN THE -- YOU KNOW, THE COURT DIRECTED US TO PARTICIPATE

8   IN A MEDIATION PROCESS, AND AFTER THE SUMMARY JUDGMENT RULINGS,

9   THE FIRST BATCH THAT THE COURT ISSUED, THERE WAS A PRESS

10  RELEASE ISSUED THAT SPUN THAT QUITE INACCURATELY.  THAT WAS       09:07

11  THEN.  IT WAS A HICCUP IN THE SETTLEMENT PROCESS, BUT WE

12  MANAGED TO GET THROUGH IT, AT LEAST, WITH MR. BRYANT.

13         NOW, ON THE EVE OF JURY SELECTION, ISSUING A PRESS

14  RELEASE, WHICH IS SIMPLY FALSE, WHICH REFERENCES THE FACT THAT

15  JURY SELECTION IS GOING TO GO FORWARD TODAY, AND IS NOW BEING     09:07

16  PICKED UP IN THE WIRE SERVICES, I THINK IT'S INAPPROPRIATE,

17  YOUR HONOR.  WE SHOULDN'T HAVE TO BE DEALING WITH THIS.

18         **THE COURT:**  WHAT ARE YOU ASKING THE COURT TO DO AT

19  THIS POINT, I GUESS?

20         **MR. QUINN:**  WE CONSIDERED A NUMBER OF THINGS,          09:07

21  INCLUDING POTENTIALLY PUTTING OFF JURY SELECTION TODAY, BECAUSE

22  OF OUR CONCERN.  BUT I THINK, AT A MINIMUM, THE JURORS HAVE TO

23  BE ASKED WHETHER THEY'VE SEEN OR HEARD ANY PRESS REPORTS, NOW,

24  ABOUT THIS CASE.  AND I THINK, GIVEN THE PATTERN OF CONDUCT

25  HERE, THEY SHOULD BE ADVISED NOT TO READ ANY PRESS REPORTS        09:08

1    REGARDING THIS CASE.

2            THE COURT:  VERY GOOD.

3            MR. QUINN:  I HAVE A COPY OF THE PRESS RELEASE, IF

4    THE COURT IS INTERESTED IN SEEING IT.

5            THE COURT:  PLEASE GIVE IT TO AMBASSADOR PROSPER      09:08

6    AND -- I HAVE NOT SEEN THE PRESS RELEASE.  I DID RECEIVE A COPY

7    OF AN AP ARTICLE.

8            JUST GIVE ME A SECOND.

9            (BRIEF PAUSE.)

10           THE COURT:  VERY GOOD.                                 09:09

11           I TRUST, OF COURSE, MR. NOLAN, YOU HAVE A COPY OF THE

12   PRESS RELEASE?

13           MR. NOLAN:  I HAVE, YOUR HONOR.

14           THE COURT:  VERY GOOD.

15           MR. NOLAN:  YOUR HONOR, I DON'T THINK WHAT YOU HAVE    09:09

16   IS WHAT MATTEL RELEASED.  IT'S A LITTLE BIT ABOUT THE KETTLE

17   CALLING THE POT BLACK.

18           YOUR HONOR, THIS CASE, AND LEADING UP TO THIS CASE,

19   THERE'S BEEN A SERIES OF ARTICLES RELEASED TO THE PRESS BY

20   MATTEL SPECIFICALLY DEALING WITH MATTERS UNDER SEAL.  LAST     09:09

21   NIGHT, I WAS DEALING WITH THE WALL STREET JOURNAL ARTICLE

22   AUTHOR, WHO WAS GOING THROUGH, PIECE BY PIECE, THE SCIENTIFIC

23   EVIDENCE THAT'S UNDER SEAL IN THIS CASE, THAT HE WAS GIVEN BY

24   QUINN EMANUEL.  I DIDN'T MIND IT.  I DON'T SAY IT.  I'M NOT

25   COMING IN HERE AND WHINING.  BUT I COULD SHOW YOU ARTICLES FROM  09:10

1   TEL AVIV TO PARIS TO THE UNITED STATES, CLAIMING THAT MATTEL

2   HAS SCIENTIFIC EVIDENCE THAT BRATZ WAS BORN IN THE MATTEL

3   FAMILY.

4          THIS ARTICLE SIMPLY REPORTS OUR BELIEF OF THE VIEW

5   AND THE STRATEGIC GAMES THAT MATTEL PLAYS THE ENTIRE TIME.          09:10

6          YOUR HONOR, YOU CAN SCOLD ME; YOU CAN DO WHATEVER YOU

7   WANT.  WHAT YOU CANNOT TAKE AWAY FROM ME IS MY ABSOLUTE FIRM

8   RESOLVE THAT THIS HAS BEEN A GAME THAT COULD HAVE BEEN RESOLVED

9   TWO WEEKS AGO, BUT, NO, IT WAITED UNTIL THE EVE OF JURY

10  SELECTION, AND SO THAT THE DOCUMENT THAT'S RELEASED TO THE          09:11

11  PRESS, BEFORE I EVEN SEE IT, IS A PUBLIC STIPULATION INDICATING

12  THAT CARTER BRYANT WILL AGREE TO BE BOUND BY AN INJUNCTION, IF

13  ISSUED IN THIS CASE.

14          IF THAT'S NOT SUGGESTIVE AS TO WHAT THE OUTCOME OF

15  THIS CASE MIGHT BE -- I DON'T WANT TO FIGHT THIS IN THE PRESS,      09:11

16  AND I DON'T, YOUR HONOR.  I RESPOND TO NEWS INQUIRIES COMING TO

17  ME.  I ASKED YOU YESTERDAY ABOUT THE VALUE OF THIS LAWSUIT.

18  THAT WHOLE DISCUSSION WAS CARRIED BY THE WIRE SERVICES ABOUT MY

19  CONCERN AS TO WHETHER OR NOT IT WAS A NOMINAL SUM OR A LARGER

20  SUM.                                                               09:11

21          I HAD REPORTERS CALLING ME, SAYING, 'IS IT TRUE THAT

22  CARTER BRYANT PAID BACK ALL OF HIS ROYALTIES IN THE BRATZ CASE

23  ON THE EVE OF JURY SELECTION?'

24          YOUR HONOR, I RESPONDED TO THE PRESS.  I BELIEVE I

25  RESPONDED ACCURATELY.  I DID NOT DISCLOSE ANY OF THE TERMS OF       09:11

1  THE SETTLEMENT.  I DO NOT KNOW ANY OF THE SETTLEMENT TERMS.

2  BUT I DO KNOW THIS, AND I BELIEVE THIS, YOUR HONOR:  MATTEL

3  DROPPED ITS CASE AGAINST CARTER BRYANT FOR A REASON.  AND IT

4  HAD NOTHING TO DO WITH MONEY.

5          AND WE DO HAVE A RIGHT TO RESPOND IN THE PRESS.  WE

6  CAN NOT SIT BACK AND HAVE OUR BUYERS APPROACHED BY MATTEL AND

7  BE TOLD RULINGS THAT YOUR HONOR MADE THAT ARE COMPLETELY

8  INACCURATE.  THAT CAUSED THE LAST PRESS RELEASE.

9          THIS IS A WAR, YOUR HONOR, UNFORTUNATELY.  WE TRIED

10  TO RESPECT IT.  WE TRIED TO DEAL WITH IT.  AND WE'RE REACTING

11  IN THE PRESS.  BUT I AM NOT GOING TO ALLOW MY CLIENT TO BE

12  DRIVEN OUT OF BUSINESS BY MATTEL'S PR MACHINE RELEASING PR

13  INFORMATION TO BUYERS, TO BUYERS, SUGGESTING THAT AN INJUNCTION

14  IS GOING TO BE ISSUED IN THIS CASE, 'WHY SHOULD YOU CONTINUE TO

15  ISSUE BRATZ?'

16          WE OWN BRATZ.  THAT'S WHAT THIS TRIAL IS ABOUT.  THE

17  SCIENTIFIC EVIDENCE DOES NOT PROVE IT.  THAT'S IN THE PRESS

18  FROM TEL AVIV TO PARIS.  WE HAVE TO DEAL WITH IT, YOUR HONOR.

19  IT'S HARSH.  IT IS A TOUGH WAR OUT THERE.

20          **THE COURT:**  MR. NOLAN, I'M NOT INTERESTED IN SCOLDING

21  ANYBODY.  I DON'T LIKE TO SCOLD ATTORNEYS.  I SCOLD MY

22  CHILDREN.  I DON'T SCOLD PROFESSIONAL MEMBERS OF THE BAR, AND

23  CERTAINLY NOT THESE PROFESSIONAL MEMBERS OF THE BAR.

24          AT THE SAME TIME, IT PUTS THE COURT IN A -- I'M JUST

25  DISAPPOINTED TO SEE THIS.

09:12
09:12
09:13
09:13
09:13

1        IN LOOKING AT THE PRESS RELEASE AND THEN RECALLING

2   THE ARTICLE, AT LEAST THE ONE THAT I SAW LAST NIGHT, IT HAS

3   WHAT WAS -- WHAT, APPARENTLY, MR. LARIAN STATED IN THE PRESS

4   RELEASE HAS BEEN ATTRIBUTED TO YOU.  IT SEEMS THERE WAS A RUSH

5   BY WHOEVER WROTE THAT ARTICLE FOR THE ASSOCIATED PRESS TO GET          09:13

6   IT OUT WITHOUT -- WELL, THE PRESS IS FREE TO DO WHAT THE PRESS

7   IS GOING TO DO.  IT'S THEIR BUSINESS; IT'S NOT MINE.

8        WHAT IS MY BUSINESS, HOWEVER, OF COURSE, ARE THE

9   LAWYERS WHO ARE APPEARING BEFORE ME, AND THEIR PROFESSIONAL

10  CONDUCT.  AND EVERYBODY IN THIS COURTROOM HEARD AMBASSADOR           09:14

11  PROSPER YESTERDAY DESCRIBE THE AGREEMENT AS A CONFIDENTIAL

12  AGREEMENT BETWEEN CARTER BRYANT AND MATTEL.  AS LAWYERS, WE ALL

13  UNDERSTAND WHAT THAT MEANS:  IT'S A CONFIDENTIAL AGREEMENT.

14  AND TO PUT OUT A PRESS RELEASE WITH A QUOTE FROM THE MGA CEO

15  SAYING THAT MATTEL HAS FINALLY DROPPED ITS BASELESS CLAIMS          09:14

16  AGAINST MR. BRYANT, AND CLEARLY GIVING THE IMPRESSION THAT THIS

17  WAS A WALKAWAY -- WHICH, I THINK, IS REALLY THE ONLY FAIR WAY

18  TO READ THIS PRESS RELEASE -- IS NOT ACCURATE.

19       WHAT YOU'RE SAYING IS BASICALLY THE THING THAT I HEAR

20  ALL TOO OFTEN AT HOME:  'HE HIT ME FIRST'; THAT TYPE OF THING.      09:15

21       **MR. NOLAN:**  SO HE DIDN'T HIT ME FIRST ON THIS ONE,

22  ALTHOUGH, THE PRESS GOES OUT DIRECTLY.

23       YOUR HONOR, MR. LARIAN BELIEVES IN HIS HEART THAT

24  THIS CASE IS MERITLESS AND THE CASE AGAINST CARTER BRYANT WAS

25  MERITLESS FROM DAY ONE.                                            09:15

1    THE COURT:  AND I RESPECT THAT POSITION.  MR. LARIAN

2  CERTAINLY HAS THE RIGHT, AND I'M SURE, FROM HIS COMPANY'S

3  PERSPECTIVE, THE DUTY, TO ARTICULATE THAT; AND THAT'S TOTALLY

4  FAIR.

5    I'M NOT REALLY DIRECTING THIS TOWARDS MR. LARIAN, OR,

6  QUITE FRANKLY, ANY OF THE PRIVATE PARTIES INVOLVED IN THIS.

7  I'M DIRECTING THIS TOWARDS COUNSEL.

8    MR. NOLAN:  I UNDERSTAND THAT.  I'M TAKING IT AS

9  DIRECTLY TO ME.

10    THE COURT:  IT'S COUNSEL WHO HAS THE PROFESSIONAL

11  OBLIGATIONS BEFORE THIS COURT TO MAINTAIN THE HIGHEST DEGREE OF

12  PROFESSIONAL CONDUCT.  AND I'M CONCERNED ABOUT THIS.

13    NOW, AT THIS POINT, WHAT MR. QUINN IS ASKING FOR IS A

14  REMEDY, IS AN INQUIRY TO THE JURY, WHICH NOT ONLY THE COURT

15  WILL MAKE, BUT COUNSEL IS FREE TO MAKE, DURING THE VOIR DIRE

16  PROCESS, AND AN INSTRUCTION TO THE JURY, WHICH CERTAINLY, IN

17  LIGHT OF ALL OF THE PRESS IN THIS CASE FROM BOTH SIDES, THE

18  COURT WILL MAKE, NOT ONCE, BUT PROBABLY SEVERAL TIMES.

19    BEYOND THAT, MR. QUINN IS NOT SEEKING ANYTHING AT

20  THIS POINT, SO I'M NOT GOING TO MAKE A BIGGER ISSUE OUT OF

21  SOMETHING THAN THE PARTIES WISH TO MAKE.  BUT I HOPE THAT THIS

22  MOMENT WILL SERVE AS A CAUTIONARY TALE TO BOTH SIDES TO TAKE

23  GREAT CARE IN HOW THEY PROCEED FROM THIS POINT FORWARD.

24    THIS IS ALL SPIN.  AND INTELLIGENT, TALENTED LAWYERS

25  CAN SPIN ANYTHING ANY WHICH DIRECTION.  WE ALL KNOW THAT.

09:15
09:15
09:16
09:16
09:16

1   THAT'S NOT HOW WE WANT TO HAVE THIS CASE DECIDED, THOUGH.   WE

2   WANT THIS DECIDED IN A COURT OF LAW, NOT THE COURT OF PUBLIC

3   OPINION.   I UNDERSTAND THE IMPLICATIONS FOR WALL STREET, THE

4   IMPLICATIONS FOR THE FINANCIAL MARKET, THE IMPLICATIONS FOR

5   BUSINESS CONFIDENCE; ALL OF THE IMPLICATIONS OF THESE PRESS        09:17

6   RELEASES.   AND THE TIT-FOR-TAT, I THINK, ENDS UP DESTROYING

7   BOTH SIDES.

8            **MR. NOLAN:**   YOUR HONOR, I FULLY AGREE, AND I

9   ACCEPT -- A, I ACCEPT RESPONSIBILITY; B, I ACCEPT THE DUTY; AND

10  I WILL EXECUTE ON THAT DUTY.                                       09:17

11           YESTERDAY, WITH AS LONG AS WE WENT, I'LL CONFESS THAT

12  I DIDN'T GIVE THE SHARPEST EYE, AND IT MAY HAVE GONE OUT

13  WITHOUT THAT.   AND TO THAT, I APOLOGIZE TO THE COURT.

14           BUT I WILL NOT APOLOGIZE, YOUR HONOR -- AND I'M NOT

15  ASKING YOU NOT TO ASK THIS JURY ABOUT PRESS INQUIRIES, BECAUSE     09:17

16  I CANNOT, IN MY MIND, NOT BE CONCERNED THAT THIS JURY -- IT'S

17  INTERESTING, WE WANT TO RESTRICT IT TO 1-A COMMENTS.   AND

18  THAT'S FINE.   I UNDERSTAND THAT.   BUT WHEN YOU WERE IN BOSTON

19  AND YOU READ THE AP STORY THAT CAME OUT AND SAID THAT WHEN

20  MATTEL WINS THIS CASE, ACCORDING TO HIM, THEY'LL ADD               09:18

21  $500 MILLION TO THEIR BOTTOM LINE, THEIR STOCK ON WALL STREET

22  JUMPED THREE PERCENT.

23           YOUR HONOR, THE OTHER THING IS, THERE WAS AN ARTICLE

24  THAT RAN YESTERDAY, ON THE EVE OF TRIAL, SAYING THAT THE

25  RULINGS IN THIS CASE ARE GOING IN FAVOR OF MATTEL.   THAT'S WHY    09:18

1   WE NEED TO INQUIRE ABOUT THIS PRESS.

2       I'M NOT BACKING AWAY FOR A MOMENT ON WHAT'S BEFORE

3   YOU, AND I'M NOT WHINING ABOUT THE OTHER STUFF.  I'M JUST

4   TRYING TO PAINT THE PICTURE AS I SEE IT.  SO I HAVE NO

5   OBJECTION TO THE INQUIRIES, BUT I WOULD NOT LIMIT IT SIMPLY TO   09:18

6   THIS ONE ARTICLE OR THESE STORIES.  THERE ARE BLOGS OUT THERE.

7   THERE HAVE BEEN BLOGS OUT THERE FOR THREE WEEKS.  THERE HAVE

8   BEEN COMMUNICATIONS ON THE WEBSITE OF MATTEL.  I BELIEVE THE

9   STIPULATION THAT WAS ENTERED INTO, THE PUBLIC ONE, I DIDN'T

10  EVEN KNOW THERE WAS A STIPULATION.  IT WAS ON THE WEBSITE   09:19

11  BEFORE, I BELIEVE, WE WERE SERVED WITH IT RESPECT TO THE

12  LANGUAGE OF THE INJUNCTION.

13      BUT I ACCEPT THE COURT'S COMMENTS, AND I DO

14  APOLOGIZE.

15      **THE COURT:**  COUNSEL, THERE'S ONE OTHER DIMENSION OF   09:19

16  THIS THAT I HAVEN'T MENTIONED, AND THAT'S THE IMPACT THAT ALL

17  OF THIS HAS ON THE SETTLEMENT PROCESS.  AS I INDICATED

18  YESTERDAY WHEN AMBASSADOR PROSPER GAVE HIS REPORT, ALTHOUGH WE

19  HAVE SETTLED THE CASE BETWEEN MATTEL AND CARTER BRYANT, I STILL

20  WANT THIS PROCESS OF SETTLEMENT EFFORTS, WITH RESPECT TO MATTEL   09:19

21  AND MGA, TO CONTINUE.  ORDINARILY, ONCE THE TRIAL BEGINS, THAT

22  WOULD COME TO AN END, BUT HERE WE HAVE, ARGUABLY, THE MUCH

23  LARGER CASE, THE RICO CASE, STILL OUT THERE.  AND THAT'S WHY I

24  WANT AMBASSADOR PROSPER TO CONTINUE TO BE ENGAGED IN THIS

25  PROCESS.  I AM CONCERNED THAT THESE TYPES OF ACTIONS NOT ONLY   09:19

1   HAVE AN EFFECT ON THE BUSINESS CONFIDENCE, OR THE INVESTOR

2   CONFIDENCE, BUT HAVE AN ABILITY TO AFFECT THE CONFIDENCE,

3   PERHAPS, THAT COUNSEL MIGHT HAVE IN THE ABILITY TO WORK

4   TOGETHER IN GOOD FAITH TO RESOLVE THIS CASE.  IT'S NOT JUST

5   THIS CASE.  IT'S NOT JUST MATTEL VERSUS MGA.  I SEE MR. BIDART          09:20

6   IN THE BACK OF THE COURTROOM.  I KNOW THERE ARE CASES THAT ARE

7   TANGENTIALLY RELATED TO THIS, INVOLVING MGA AND INSURANCE

8   COMPANIES.  THERE'S A LOT OF LITIGATION AT STAKE HERE.  AND I

9   DON'T WANT WHAT'S GOING ON HERE TO DISRUPT THE VERY IMPORTANT

10  EFFORTS TO TRY TO RESOLVE THESE VARIOUS MATTERS, WITHOUT THE           09:20

11  COST AND EXPENSE OF GOING THROUGH TRIAL.

12          THE COURT IS PREPARED TO GIVE UP THE NEXT TWO MONTHS

13  TO TRY THIS CASE, BUT THIS IS OF EXTREME VALUE, NOT ONLY TO

14  THIS COURT, BUT TO THE ENTIRE CENTRAL DISTRICT OF CALIFORNIA,

15  THAT THESE EFFORTS PROCEED.                                           09:20

16          SO I GUESS I'D LIKE TO HEAR FROM YOU, AND THEN I'D

17  ALSO LIKE TO HEAR FROM MATTEL, ABOUT THE RELATIONSHIP OF THIS

18  AND WHAT MIGHT NEED TO BE DONE TO STOP THIS FROM HAVING AN

19  IMPACT ON THAT SETTLEMENT PROCESS.

20          **MR. NOLAN:**  IF I MIGHT, YOUR HONOR, AND WE'VE ALREADY      09:21

21  SAID THIS:  AMBASSADOR PROSPER HAS DONE A PHENOMENAL JOB.

22          I DO HAVE ONE OBJECTION THAT I WILL SAY, AND THAT

23  WAS, I WAS QUITE TAKEN ABACK IN YESTERDAY'S PROCEEDINGS WHEN

24  AMBASSADOR PROSPER SAID ON THE PUBLIC RECORD THAT HE THOUGHT

25  THAT THERE WAS A SETTLEMENT LIKELY, OR POSSIBLE STILL, BETWEEN        09:21

1   MGA AND MATTEL.  THAT, TOO, WAS PICKED UP IN THE NEWSPAPERS.  I

2   WAS RECEIVING PHONE CALLS AT 11:30 LAST NIGHT, ASKING ME TO

3   COMMENT, NOT ON CARTER BRYANT'S SETTLEMENT, BUT MGA AND

4   MATTEL'S SETTLEMENT.  THERE IS NO SETTLEMENT.  WE HAVE BEEN

5   PARTICIPATING.  THIS IS A WAR.  THERE'S NO DOUBT ABOUT IT.  AND          09:21

6   I WILL ADMIT THAT THERE ARE HARD FEELINGS ON BOTH SIDES,

7   CLIENT WISE AND LAWYER WISE.  BUT I CAN ASSURE YOU OF THIS, AND

8   JOHN CAN TELL YOU OTHERWISE:  I THINK, THROUGHOUT THESE

9   PROCEEDINGS, MR. QUINN AND I HAVE STAYED ABOVE THE FRAY, AND WE

10  ENJOY AN ABILITY TO REACH AN AGREEMENT ON DIFFICULT ISSUES,          09:22

11  WHEN NOBODY ELSE IN THE CASE HAS BEEN ABLE TO.  WHEN IT GETS TO

12  OUR LEVEL -- AND I DON'T MEAN IT IN SUCH A LOFTY WAY.  WE LIVE

13  A COUPLE OF BLOCKS AWAY FROM EACH OTHER.  SOMETIMES IT'S EASIER

14  TO TALK TO SOMEBODY WHO LIVES IN THE NEIGHBORHOOD.  MR. QUINN

15  AND I HAVE GREAT RESPECT FOR EACH OTHER.  WE HAVE A          09:22

16  COMMUNICATION.

17          THAT BEING SAID, THE REALITY OF LIFE IS THAT THERE

18  ARE PRESS RELEASES THAT THEY ISSUE, STATEMENTS THAT ARE ISSUED

19  IN THE PAPER, STATEMENTS THAT HAVE BEEN MADE TO THE MARKETING

20  UNIVERSE, THE BUYERS AT STORES, THAT HAVE COMPLETELY INFURIATED          09:22

21  MY CLIENT.  BUT WE HAVE STEADFASTLY ALWAYS COME BACK AND TAKEN

22  THE NEXT PHONE CALL FROM AMBASSADOR PROSPER.  WE'VE ALWAYS SAT

23  LATE INTO THE EVENING AND TALKED ABOUT EVERY ISSUE, EVEN THOUGH

24  WE WERE BRISTLING UNDER THE PRESS RELEASE.  SO I DON'T BELIEVE

25  THE PRESS IS GOING TO AFFECT THOSE THAT ARE REALLY MAKING THE          09:23

1    DECISIONS IN THIS CASE.

2            I HAVE PLEDGED TO COOPERATE IF THERE IS AN OFFERING

3    THAT MAKES PRUDENT SENSE FOR BOTH PARTIES.  I'M CONFIDENT THERE

4    COULD BE ONE.  BUT, YOUR HONOR, WE'RE A LONG, LONG WAY OFF.  IT

5    TOOK US A LONG, LONG TIME TO SIMPLY DECIDE THE EQUIVALENT OF          09:23

6    THE SIZE AND SHAPE OF THE TABLE THAT WE MIGHT SIT ON.

7            BUT THE BOTTOM LINE IS, I GIVE YOU MY WORD -- AND I'D

8    LIKE TO HAVE JOHN DISAGREE WITH ME.  HE CERTAINLY CAN WHEN THE

9    LAW --

10           **THE COURT:**  MR. QUINN, COUNSEL.                            09:23

11           **MR. NOLAN:** -- MR. QUINN TELL ME IF HE DISAGREES

12   DIFFERENTLY.  I THINK WE HAVE THE ABILITY TO WORK WITH

13   AMBASSADOR PROSPER, AND IF THERE'S AN OFFERING, A SETTLEMENT IN

14   THE OFFERING, WE WON'T LOSE THAT OPPORTUNITY, IF IT MAKES SENSE

15   FOR OUR CLIENT, IN LIGHT OF HOW WE VIEW THE EVIDENCE.                 09:24

16           **THE COURT:**  THANK YOU, COUNSEL.

17           MR. QUINN, COULD YOU ADDRESS THAT ISSUE.

18           **MR. QUINN:**  YES, YOUR HONOR.

19           MATTEL ISSUED NO PRESS RELEASE YESTERDAY.

20           MR. NOLAN, BLESS HIS HEART, COMES UP HERE AND MAKES           09:24

21   THESE STATEMENTS LIKE THIS WAS RESPONSIVE, THIS WAS

22   TIT-FOR-TAT.  WE HAVE AN E-MAIL FROM MR. NOLAN'S SECRETARY THAT

23   WAS COVERING THIS PRESS RELEASE, SAYING, QUOTE, "TOM WOULD LIKE

24   TO GET THIS SENT OUT TO THE NEWS SERVICES IMMEDIATELY."

25           THERE WAS NO STORY ABOUT THIS DISMISSAL YESTERDAY             09:24

1   UNTIL SKADDEN ARPS ISSUED A PRESS RELEASE.  AND TOM NOLAN IS

2   THE ONE THAT INSTRUCTED THAT GO OUT, UNFORTUNATELY.

3            MATTEL HAS NOT ISSUED ANY PRESS RELEASE; DIDN'T

4   YESTERDAY; HASN'T MADE ANY STATEMENT.

5            IT'S ALL WELL AND GOOD FOR MR. NOLAN TO GET UP HERE      09:24

6   AND MAKE THESE GENERALIZED STATEMENTS THAT BOTH SIDES ARE

7   ISSUING PRESS RELEASES AND SAYING SOMETHING ABOUT, WHEN YOU'RE

8   IN BOSTON AND HIM -- HE MAKES A STATEMENT, REFERRING TO ME,

9   ABOUT THIS WILL MEAN $500 MILLION.  THERE IS NO SUCH STATEMENT

10  FROM ME.  THERE'S NO SUCH STATEMENT FROM ANY MEMBER OF OUR      09:25

11  TEAM, YOUR HONOR.

12           THE FACT OF THE MATTER IS, THIS THING WAS SPUN.  IT

13  SAYS, "MATTEL HAS FINALLY ACKNOWLEDGED THAT ITS SUIT AGAINST

14  CARTER BRYANT WAS WITHOUT MERIT."

15           NOW, THERE IS NOTHING TO SUPPORT THAT STATEMENT.  IT    09:25

16  CAN'T BE JUSTIFIED.

17           AND I GUESS, IN TERMS OF WHAT THE IMPACT ON THE

18  SETTLEMENT PROCESS IS:  WE'RE DEALING WITH HUMAN BEINGS.  YES,

19  CORPORATIONS, BUT PEOPLE WHO GET AFFECTED.  AND POISONOUS

20  THINGS LIKE THIS, YOU KNOW, DESPITE OUR BEST EFFORTS AS         09:25

21  PROFESSIONALS TO TRY TO GET TO THE BOTTOM OF SETTLEMENT

22  EFFORTS, PEOPLE REACT.  IT HURTS.  THESE ARE UNTRUTHS.  THE

23  PRESS RELEASE THEY PUT OUT ABOUT THIS COURT'S RULINGS,

24  COMMENTING ON THIS COURT'S RULINGS, INCLUDING MR. NOLAN

25  COMMENTING TO THE PRESS ON THIS COURT'S RULINGS, YOU WOULD HAVE  09:25

20

1    THOUGHT THAT SUMMARY ADJUDICATION HAD BEEN GRANTED IN FAVOR OF

2    MGA ACROSS THE BOARD.

3              IT'S JUST NOT ACCURATE.

4              NOW, I'M PREPARED TO BE HELD TO ACCOUNT FOR ANYTHING

5    I DO, ANY STATEMENTS I MAKE.  AND I THINK MR. NOLAN NEEDS TO BE        09:26

6    HELD TO THE SAME STANDARD.

7              WE ARE NOW HAVING TO QUESTION JURORS ABOUT THE PRESS

8    BECAUSE OF ANOTHER VERY FOOLISH ACTION BY SKADDEN ARPS.

9    REMEMBER, YOUR HONOR, WHEN THE TOMIYAMA SITUATION CAME UP,

10   MR. NOLAN, THE WEEK BEFORE, SAID, 'THEY'VE MADE THAT MOTION TO         09:26

11   DISQUALIFY.  YOUR HONOR, WE'VE GOT AN ANSWER FOR THAT YOU'LL

12   HEAR.  IT WON'T BE A PROBLEM.'

13             IT TURNED OUT TO BE A BIG PROBLEM.  AND I KNOW THIS

14   COURT STRUGGLED WITH THE ISSUE ABOUT WHETHER THEIR FIRM SHOULD

15   BE DISQUALIFIED, PERIOD.  IT WAS A BIG PROBLEM.                        09:26

16             LET'S DECIDE THIS CASE BASED ON THE EVIDENCE INDUCED

17   WITHIN THE FOUR WALLS OF THIS ROOM.  IF THERE'S ANY HOPE OF

18   REACHING A SETTLEMENT HERE, LET'S NOT DO SILLY THINGS THAT CAN

19   STAND IN THE WAY OF THAT PROCESS.

20             **THE COURT:**  I APPRECIATE YOUR COMMENTS, COUNSEL.          09:27

21             I TRUST I HAVE YOUR COMMITMENT TO CONTINUE TO BE

22   ENGAGED IN THE SETTLEMENT PROCESS, NOTWITHSTANDING YOUR

23   DISAPPOINTMENT WITH THE PRESS RELEASE?

24             **MR. QUINN:**  YOU DO, YOUR HONOR.

25             **THE COURT:**  THANK YOU, COUNSEL.                          09:27

1      WE'RE GETTING CLOSE TO 9:30.  I'M GOING TO HAVE THE

2  JURY PANEL BROUGHT UP.

3      ARE THERE ANY OTHER MATTERS THAT WE NEED TO TAKE UP

4  BEFORE THE JURY PANEL IS BROUGHT UP?

5      YOU'VE RECEIVED A COPY OF THE QUESTIONS THAT THE                09:27

6  COURT INTENDS TO ASK, SO WHY DON'T YOU TAKE A BRIEF LOOK AT

7  THOSE.

8      **MR. QUINN:**  YOUR HONOR, IF ANY PROSPECTIVE JUROR

9  ACKNOWLEDGES THAT THEY'VE SEEN OR HEARD PRESS ACCOUNTS, I'M

10 WONDERING WHETHER IT WOULD BE A WISE IDEA TO EXPLORE THAT THEN      09:27

11 OUTSIDE THE PRESENCE OF THE OTHER JURORS AT SIDE-BAR.

12     **THE COURT:**  I INTEND TO DO SO.  WHAT I'M PLANNING TO

13 DO IS START WITH THE OPENING STATEMENTS, AGAIN TO GIVE CONTEXT,

14 SO THAT THE JURY CAN KNOW EXACTLY WHAT THE CASE IS ABOUT.  I

15 DON'T WANT TO START BY SIMPLY ASKING, 'HAVE YOU HEARD ANYTHING     09:27

16 ABOUT THE MATTEL VERSUS MGA CASE?'  AGAIN, THEY DON'T KNOW WHAT

17 THAT IS; SO THAT'S WHY I THINK THESE MINI OPENING STATEMENTS

18 ARE IMPORTANT.

19     BUT I AM GOING TO GRANT YOU THE RELIEF THAT YOU

20 REQUESTED; NAMELY, THE INQUIRY, COUPLED WITH THE INSTRUCTION.      09:28

21     **MR. QUINN:**  THANK YOU, YOUR HONOR.

22     **THE COURT:**  THAT'S ALL THAT YOU'RE ASKING AT THIS

23 POINT.

24     I DO HOPE, BY THE FACT THAT WE'VE SPENT -- I DON'T

25 WANT TO SAY "WASTED," BUT WE'VE SPENT ALMOST A HALF HOUR ON        09:28

1   THIS.  EVERYBODY IN THIS ROOM UNDERSTANDS HOW SIGNIFICANT THIS

2   IS TO THE COURT, AND IF THIS HAPPENS AGAIN DURING THE TRIAL,

3   THE REMEDIES WILL BE FAR GREATER THAN SIMPLY THE INQUIRY AND

4   THE INSTRUCTION.

5            THIS IS NOT TO BE TAKEN BY ANY MEMBER OF THE PRESS AS

6   ANY EFFORT BY THE COURT TO RESTRICT ANYTHING THE PRESS WRITES.

7   THAT IS ENTIRELY UP TO THE PRESS.  THAT'S THEIR FIRST AMENDMENT

8   RIGHT.

9            BUT COUNSEL IS ACCOUNTABLE TO THE COURT.  AND MORE

10  IMPORTANTLY THAN BEING ACCOUNTABLE TO THE COURT, THEY'RE

11  ACCOUNTABLE TO THE PROFESSIONAL CODE THAT GOVERNS THEIR

12  CONDUCT.

13           AS I INDICATED, LET ME JUST GO DOWN THROUGH THESE, IN

14  TOTAL, THERE ARE 15 QUESTIONS.

15       **MR. NOLAN:**  YOUR HONOR, WOULD ANY PRESS INQUIRY

16  QUESTIONS WILL BE ADDRESSED TO ANY PRESS, NOT JUST ANY PRESS

17  THAT OCCURRED YESTERDAY; CORRECT?

18       **THE COURT:**  ABSOLUTELY.  ANY PRESS.  NOT JUST

19  YESTERDAY.  THAT'S CORRECT.

20       **MR. NOLAN:**  THANK YOU, YOUR HONOR.

21       **THE COURT:**  I'LL ASK EACH JUROR TO STATE THEIR NAME.

22           TWO:  DESCRIBE ANY PRESENT AND PAST OCCUPATIONS AND

23  WORK EXPERIENCES.

24           THREE:  HAVE YOU OR ANYONE CLOSE TO YOU EVER HAD A

25  SERIOUS DISPUTE WITH AN EMPLOYER?  IF SO, PLEASE DESCRIBE.

09:28
09:28
09:29
09:29
09:29

23

1          OF COURSE, FOR A NUMBER OF THESE QUESTIONS, I WILL

2     INVITE THE JURY TO -- IF THEY WANT TO SPEAK AT SIDE-BAR, THEY

3     MAY DO SO.

4          FOUR:  HAVE YOU EVER SIGNED AN EMPLOYMENT AGREEMENT

5     OR AN INVENTIONS AGREEMENT WITH A PRESENT -- IT SAYS "FOR"; IT          09:29

6     SHOULD BE "OR" FORMER EMPLOYEE.

7          FIVE:  HAVE YOU OR ANYONE CLOSE TO YOU HAD ANY

8     EXPERIENCE WITH PATENTS, TRADEMARKS, OR COPYRIGHTS?

9          SIX:  DESCRIBE YOUR EDUCATIONAL BACKGROUND.  IF YOU

10    ATTENDED COLLEGE OR GRADUATE SCHOOLS, WHAT WERE YOUR MAJORS          09:29

11    AND/OR DEGREES?

12         SEVEN:  NAME THE CITY IN WHICH YOU LIVE.

13         EIGHT:  WHAT IS YOUR MARITAL STATUS?  WHAT IS YOUR

14    SPOUSE'S OR SIGNIFICANT OTHER'S OCCUPATION AND WORK EXPERIENCE?

15         NINE:  HOW MANY CHILDREN DO YOU HAVE?  WHAT ARE THE          09:30

16    AGES AND OCCUPATIONS OF ANY ADULT CHILDREN?

17         TEN:  ARE THERE ANY OTHER ADULTS LIVING IN YOUR

18    HOUSEHOLD?  WHAT ARE THE OCCUPATIONS OF ANY SUCH INDIVIDUALS?

19         ELEVEN:  DESCRIBE YOUR PRIOR JURY EXPERIENCE,

20    INDICATING WHETHER IT'S CIVIL OR CRIMINAL AND WHETHER OR NOT A          09:30

21    VERDICT WAS REACHED.

22         TWELVE:  ARE YOU FAMILIAR WITH A COMPANY CALLED

23    MATTEL OR ANY OF ITS PRODUCTS, INCLUDING THE BARBIE DOLL?  IF

24    SO, PLEASE DESCRIBE THE NATURE AND EXTENT OF YOUR FAMILIARITY.

25    WHAT, IF ANYTHING, IS YOUR OPINION OF MATTEL OR ANY OF ITS          09:30

1   PRODUCTS?  AND PLEASE EXPLAIN WHY YOU HAVE THAT OPINION.

2         AND THEN THE SAME QUESTION FOR MGA ENTERTAINMENT:

3   ARE YOU FAMILIAR WITH A COMPANY CALLED MGA ENTERTAINMENT OR ANY

4   OF ITS PRODUCTS, INCLUDING THE BRATZ DOLLS?  IF SO, PLEASE

5   DESCRIBE THE NATURE AND EXTENT OF YOUR FAMILIARITY.  WHAT, IF          09:30

6   ANYTHING, IS YOUR OPINION OF MGA ENTERTAINMENT OR ANY OF ITS

7   PRODUCTS?  AND PLEASE EXPLAIN WHY YOU HAVE THAT OPINION.

8         FOURTEEN:  HAVE YOU OR ANYONE CLOSE TO YOU EVER SUED

9   OR BEEN SUED IN A LAWSUIT?  IF SO, PLEASE DESCRIBE.

10        AND, FINALLY:  IS THERE ANY REASON THAT YOU CANNOT BE           09:31

11  A FAIR AND IMPARTIAL JUROR IN THIS CASE?

12        ARE THERE ANY OBJECTIONS TO THE COURT'S QUESTIONS?

13        MR. QUINN?

14        **MR. QUINN:**  NO, YOUR HONOR.

15        **THE COURT:**  MR. NOLAN?                                       09:31

16        **MR. NOLAN:**  NO, YOUR HONOR.

17        **THE COURT:**  VERY WELL.

18        I'LL BE ASKING EACH JUROR ALL OF THOSE QUESTIONS, AND

19  THEN YOU'LL HAVE AN OPPORTUNITY TO FOLLOW UP.

20        I'M GOING TO TAKE A BRIEF RECESS NOW AND HAVE                    09:31

21  MR. HOLMES BRING UP THE JURY.  I'M GOING TO ASK THE ATTORNEYS

22  SEATED IN THE FRONT ROW THERE TO MOVE TO THE OTHER SIDE AND

23  CLEAR THIS AREA HERE.

24        MR. QUINN?

25        **MR. QUINN:**  YOUR HONOR, WHEN WE CALL THE CASE, THE           09:31

1    CAPTION MAY SEEM KIND OF STRANGE TO THE JURORS.  IT'S CALLED,

2    NOW, BRYANT VERSUS MATTEL.

3         THE COURT:  I ALREADY SPOKE TO MR. HOLMES ABOUT THIS.

4         IT WILL BE MATTEL VERSUS MGA.

5         MR. QUINN:  THANK YOU.                          09:31

6         THE COURT:  RIGHT.

7         WE'LL HAVE FORMAL INTRODUCTIONS AT THAT TIME.

8         YOU'RE ALSO WELCOME TO INTRODUCE YOUR CLIENTS, IF YOU

9    WISH, BUT I'LL LEAVE THAT TO YOUR DISCRETION.

10        MR. QUINN:  THANK YOU, YOUR HONOR.              09:32

11        THE COURT:  COURT IS IN A BRIEF RECESS WHILE WE BRING

12   UP THE PANEL.

13        (WHEREUPON, A BRIEF RECESS WAS HELD.)

14        THE CLERK:  RECALLING CASE NUMBER CV 04-09049-SGL,

15   MATTEL, INC. VERSUS MGA, INC., ET AL., AND RELATED ACTIONS.    10:23

16        MAY WE HAVE COUNSEL PLEASE STATE YOUR APPEARANCES FOR

17   THE RECORD.

18        MR. QUINN:  JOHN QUINN FOR MATTEL.

19        MR. NOLAN:  TOM NOLAN --

20        MS. AGUIAR:  LAUREN AGUIAR.                     10:23

21        MR. KENNEDY:  RAOUL KENNEDY.

22        MR. NOLAN:  -- FOR MGA.

23        THE COURT:  GOOD MORNING, COUNSEL.

24        AND GOOD MORNING, MEMBERS OF THE PROSPECTIVE JURY.

25   WELCOME TO ALL OF YOU.                              10:23

26

1        WE ARE ABOUT TO BEGIN THE JURY SELECTION PROCESS FOR

2   A CASE THAT MAY LAST UP TO TWO MONTHS.  EACH OF YOU HAVE

3   PREVIOUSLY RECEIVED NOTICE OF THAT.  MY UNDERSTANDING IS,

4   YOU'VE ALL BEEN, ESSENTIALLY, TIME-QUALIFIED; THAT IS TO SAY

5   THAT YOU ARE AVAILABLE TO SERVE FOR THE NEXT TWO MONTHS.          10:23

6        THE PROCESS THAT WE'RE ABOUT TO EMBARK ON IS A VERY,

7   VERY IMPORTANT PROCESS.  WHAT WE ARE GOING TO ATTEMPT TO DO

8   TODAY, AND IF NEED BE TOMORROW, IS SELECT A JURY TO HEAR THE

9   FACTS OF THIS CASE AND THEN RENDER A VERDICT BASED ON THE

10  EVIDENCE, THE TESTIMONY THAT YOU HEAR, AND THE EXHIBITS THAT      10:23

11  ARE ADMITTED INTO EVIDENCE, TO DETERMINE THE FACTS OF THIS

12  CASE.

13       IT IS CRITICAL TO ALL OF US, THE PLAINTIFF, THE

14  DEFENDANTS, THE COURT, OUR ENTIRE SYSTEM OF JUSTICE, THAT WE

15  ASSEMBLE A JURY THAT IS GOING TO BE FAIR AND IMPARTIAL.  I'M     10:24

16  GOING TO BE ASKING ALL OF YOU A SERIES OF QUESTIONS WHICH ARE

17  DESIGNED TO FIND OUT INFORMATION ABOUT YOU THAT THE COURT CAN

18  CONSIDER, THAT COUNSEL CAN CONSIDER, TO MAKE SURE THAT YOU ARE

19  AN APPROPRIATE JUROR FOR THIS PARTICULAR CASE.

20       THE FACT THAT YOU ARE EXCUSED FROM THIS PARTICULAR         10:24

21  CASE IS NO REFLECTION ON YOU.  IT MAY RELATE TO SOMETHING IN

22  YOUR PAST EXPERIENCE, YOUR KNOWLEDGE OF ONE OF THE PARTIES OR

23  THE WITNESSES; IT COULD BE ANYTHING AT ALL.  SO PLEASE DON'T

24  TAKE AN EXCUSAL AS ANYTHING OTHER THAN AN INDICATION THAT FOR

25  THIS PARTICULAR CASE, SOMEONE ELSE IS GOING TO SERVE AS THE      10:24

1    JUROR.

2         NO MATTER HOW MANY QUESTIONS THAT I ASK YOU OR THAT

3    COUNSEL ASKS YOU, WE MAY NOT ASK THAT RIGHT QUESTION THAT

4    ELICITS THE RESPONSE THAT WE NEED TO DETERMINE WHETHER OR NOT

5    YOU WOULD BE A FAIR AND IMPARTIAL JUROR.  I NEED TO RELY ON

6    YOUR GOOD FAITH, FOR YOU TO SERIOUSLY CONSIDER THE NATURE OF

7    THIS CASE AND ALL OF THE QUESTIONS THAT WE ASK, AND, PERHAPS,

8    QUESTIONS THAT WE DON'T ASK.  IF THERE IS SOMETHING IN YOUR

9    MIND THAT SUGGESTS THAT YOU WOULD NOT BE A COMPLETELY FAIR AND

10   IMPARTIAL JUROR IN THIS CASE, IF YOU FIND YOURSELF, WITHOUT

11   HEARING ANY OF THE EVIDENCE, ANY OF THE EXHIBITS, OR ANY OF THE

12   TESTIMONY, FORMING AN OPINION AS TO WHICH SIDE IS RIGHT OR

13   WHICH SIDE SHOULD RECEIVE YOUR VERDICT, YOU'VE GOT TO LET US

14   KNOW.  YOU'VE GOT TO LET ME KNOW.  DON'T HESITATE.

15        IF THERE'S ANY QUESTION THAT YOU'RE ASKED THAT YOU

16   DON'T WANT TO SAY IN OPEN COURT, OR IF THERE'S ANY FEELING THAT

17   YOU HAVE THAT YOU DON'T WANT TO EXPRESS IN FRONT OF THE OTHER

18   JURORS, WE'RE HAPPY TO EXPLORE THAT AT SIDE-BAR, OUTSIDE THE

19   PRESENCE OF THE REST OF THE PANEL OR THE PUBLIC.

20        SO I REALLY NEED TO DEPEND UPON YOUR GOOD FAITH AND

21   YOUR WILLINGNESS TO REALLY CONSIDER AND DELIBERATE AND LET US

22   KNOW IF THERE'S ANY REASON AT ALL THAT YOU FEEL THAT YOU MAY

23   NOT BE AN APPROPRIATE JUROR IN THIS CASE.  ERR ON THE SIDE OF

24   LETTING US KNOW INFORMATION, NOT THE OTHER WAY AROUND.

25        IN A FEW MOMENTS, I'M GOING TO INVITE COUNSEL FOR

10:25
10:25
10:25
10:26
10:26

1    BOTH SIDES TO MAKE A VERY BRIEF STATEMENT AS TO WHAT THE CASE

2    IS ABOUT.  THE PURPOSE OF THIS STATEMENT IS SIMPLY TO PROVIDE

3    SOME CONTEXT SO THAT THE QUESTIONS THAT WE'RE GOING TO BE

4    ASKING YOU MAKE SENSE.  I WILL THEN HAVE COUNSEL IDENTIFY THE

5    POTENTIAL WITNESSES IN THIS CASE.  I WILL MAKE SURE THAT          10:26

6    COUNSEL IDENTIFIES ALL OF THE LAWYERS WHO ARE GOING TO BE

7    INVOLVED IN THIS CASE.  I'LL INTRODUCE THE DIFFERENT

8    INDIVIDUALS WHO ARE PART OF THE COURT STAFF IN THIS CASE.  IF

9    ANY OF YOU KNOW ANY OF US, PLEASE LET ME KNOW THAT, BECAUSE

10   IT'S IMPORTANT, BASICALLY FOR PURPOSES OF THIS TRIAL, THAT       10:27

11   WE'RE ALL STRANGERS; THAT WE DON'T HAVE ANY INTERESTS; THAT WE

12   DON'T HAVE ANY CONNECTION; AND THAT WE EVALUATE THIS WITH KIND

13   OF A DETACHED ASSESSMENT OF THE FACTS AND THE EXHIBITS AND

14   TESTIMONY.  SO AT ANY POINT IN TIME, IF YOU BELIEVE YOU NEED TO

15   LET ME KNOW SOMETHING ALONG THOSE LINES, PLEASE DO SO.           10:27

16            AFTER WE'VE HEARD THESE OPENING STATEMENTS, AFTER

17   WE'VE HEARD THE LIST OF THE WITNESSES AND THE COURT HAS

18   INTRODUCED ALL OF THE PARTIES AND ALL OF THE PLAYERS IN THIS

19   MATTER, WE'LL THEN BE GOING ONE BY ONE THROUGH ALL OF YOU AND

20   ASKING YOU THE SERIES OF QUESTIONS THAT YOU ALL HAVE IN FRONT    10:27

21   OF YOU.  THEN WHEN THAT IS DONE, I'LL BE GIVING THE LAWYERS AN

22   OPPORTUNITY TO ASK A FEW FOLLOW-UP QUESTIONS.

23            WE'RE HOPING TO HAVE THIS ENTIRE PROCESS COMPLETED

24   TODAY, BUT IT'S GOING TO TAKE SOME TIME.  IT'S AN UNUSUALLY

25   LARGE PANEL BECAUSE THIS IS A LONGER CASE.  ULTIMATELY, WE'RE    10:28

1   GOING TO BE SELECTING TEN MEMBERS TO BE A PART OF THIS JURY.

2   THERE'S NOT GOING TO BE ANY ALTERNATES, SO IT'S REALLY

3   IMPORTANT THAT EACH OF YOU ANSWERS THE QUESTIONS AS BEST YOU

4   CAN SO WE CAN DETERMINE WHO SHOULD AND WHO SHOULD NOT BE ON

5   THIS JURY.

6           WHAT I'M GOING TO DO IS, I'M GOING TO BEGIN BY

7   INTRODUCING THE COURT STAFF.

8           MYSELF, I'M JUDGE STEPHEN LARSON; MY COURT REPORTER

9   IS THERESA LANZA; MY COURTROOM DEPUTY IS JIM HOLMES; AND I HAVE

10  TWO LAW CLERKS THAT YOU MAY SEE COMING IN AND OUT AT DIFFERENT

11  TIMES DURING THE TRIAL; ONE IS MICHAEL KOWSARI, AND THE OTHER

12  IS BARBARA NORTH.  THEN I HAVE A JUDICIAL ASSISTANT WHO YOU MAY

13  ALSO SEE COME AND GO; AND HER NAME IS KATHIE PIMENTAL.

14          DO ANY OF YOU, JUST BY A SHOW OF HANDS, KNOW MYSELF

15  OR ANY OF THE MEMBERS OF THE COURT STAFF?

16          THERE'S ONE HAND IN THE BACK.

17          WHEN YOU'RE CALLED UPON TO ANSWER A QUESTION, IF YOU

18  WOULD ALWAYS START BY GIVING YOUR NAME, EVEN IF YOU HAVE

19  PREVIOUSLY ANSWERED A QUESTION, BECAUSE THE COURT REPORTER IS

20  TAKING DOWN ABSOLUTELY EVERYTHING YOU SAY, AND WE NEED TO BE

21  ABLE TO HAVE ANY STATEMENTS ATTRIBUTED TO THE PERSON WHO SAYS

22  IT.

23          **PROSPECTIVE JUROR:**  MY NAME IS FREDERICK JELLEY, AND

24  I KNOW YOURSELF, YOUR HONOR.

25          **THE COURT:**  I RECOGNIZE YOU AS A FORMER STUDENT OF

1    MINE IN LAW SCHOOL.

2            **PROSPECTIVE JUROR:**  THAT'S CORRECT.

3            **THE COURT:**  VERY GOOD.

4            **PROSPECTIVE JUROR:**  YOU WERE MY CONSTITUTIONAL LAW

5    PROFESSOR.

6            **THE COURT:**  VERY WELL.

7            IS THERE ANY OBJECTION, COUNSEL?

8        **MR. NOLAN:**  NO, YOUR HONOR.

9        **MR. QUINN:**  NO.

10       **MR. NOLAN:**  I ASSUME HE DID QUITE WELL.

11       **THE COURT:**  VERY WELL.

12           AS MUCH AS I WOULD VALUE YOU ON THE JURY, I THINK

13   IT'S PROBABLY APPROPRIATE THAT YOU'RE EXCUSED AT THIS TIME.

14           THANK YOU FOR YOUR SERVICE.

15       **MR. NOLAN:**  YOUR HONOR, I APOLOGIZE.

16           WHEN YOU WERE ASKING, I SAID I DIDN'T OBJECT.

17       **THE COURT:**  DO YOU OBJECT?

18       **MR. NOLAN:**  I DON'T OBJECT.  AS FAR AS I'M CONCERNED,

19   MR. JELLEY CAN SIT ON THE JURY.

20       **MR. QUINN:**  NO OBJECTION HERE EITHER, YOUR HONOR.

21       **THE COURT:**  OH, YOU HAVE NO OBJECTION TO HIM STAYING

22   ON.

23           I'M SORRY.  VERY GOOD.

24           MR. JELLEY, WHY DON'T YOU GO AHEAD AND HAVE A SEAT.

25           DOES ANYBODY ELSE KNOW ANYONE ON THE COURT STAFF?

1              LET'S GO THROUGH THE ATTORNEYS.

2              MR. QUINN, IF YOU WOULD REINTRODUCE YOURSELF AND THE

3     ATTORNEYS ASSOCIATED WITH YOUR TEAM.

4              **MR. QUINN:**  FOLKS, MY NAME IS JOHN QUINN.  I

5     REPRESENT MATTEL.  THERE'S A NUMBER OF OTHER LAWYERS WHO ARE        10:31

6     WORKING WITH ME ON THIS CASE:  MIKE ZELLER, JON COREY,

7     DYLAN PROCTOR, WILLIAM PRICE, AND TIMOTHY ALGER.

8              I THINK THOSE ARE THE NAMES, YOUR HONOR, THAT MIGHT

9     APPEAR IN COURT.

10             **THE COURT:**  VERY WELL.

                                                                        10:31

11             ANYBODY RECOGNIZE ANY OF THOSE NAMES OR ANY ATTORNEY

12    ASSOCIATED WITH THE LAW FIRM OF QUINN EMANUEL IN DOWNTOWN

13    LOS ANGELES?

14             VERY WELL.

15             MR. NOLAN, IF YOU WOULD INTRODUCE YOUR TEAM.             10:31

16             **MR. NOLAN:**  GOOD MORNING, LADIES AND GENTLEMEN.

17             MY NAME IS TOM NOLAN.  I'M WITH THE LAW FIRM BY THE

18    NAME OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM.  I'VE ALREADY

19    INTRODUCED LAUREN AGUIAR, RAOUL KENNEDY, WHO WILL BE THE TRIAL

20    TEAM.  I'M ALSO HELPED, LIKE MR. QUINN IS, WITH A NUMBER OF       10:31

21    OTHER LAWYERS:  CARL ROTH, JASON RUSSELL; AND AARON SHORR IS

22    OUR TECHNOLOGY PERSON THAT WILL BE WORKING THE COMPUTER.

23             THOSE ARE PRIMARILY THE PEOPLE THAT WE'LL BE DEALING

24    WITH AND THE NAMES THAT WILL COME UP.  THERE MAY BE OTHERS, BUT

25    THOSE ARE THE KEY ONES.

                                                                        10:32

1           **THE COURT:**  IS ANYBODY FAMILIAR WITH ANY OF THOSE

2    ATTORNEYS OR ANYONE ELSE AT THE LAW FIRM OF SKADDEN ARPS?

3           VERY GOOD.

4           WHAT WE'RE GOING TO DO NOW IS HEAR, LIKE I SAY, VERY

5    BRIEF STATEMENTS BY THE ATTORNEYS.  ONE INSTRUCTION THAT YOU'LL          10:32

6    HEAR ME GIVE NUMEROUS TIMES IN THIS TRIAL IS THAT ANYTHING

7    THESE ATTORNEYS SAY IS NOT EVIDENCE AND IS NOT, IN ANY WAY, THE

8    EVIDENCE THAT YOU WILL RELY UPON IN RENDERING A VERDICT IN THIS

9    CASE.  THIS IS SIMPLY THEIR STATEMENT OF WHAT THEY BELIEVE THE

10   EVIDENCE MAY SHOW.  THE PURPOSE OF THIS IS NOT EVEN TO GIVE YOU          10:32

11   AN OUTLINE OF THE TRIAL.  THE PURPOSE OF THIS IS SIMPLY TO

12   PROVIDE SOME CONTEXT IN WHICH THE QUESTIONS THAT WE'RE GOING TO

13   BE ASKING YOU WILL MAKE SENSE.

14          AFTER HEARING THESE TWO STATEMENTS FROM THESE TWO

15   FINE ATTORNEYS, YOU SHOULD NOT HAVE ANY OPINIONS ABOUT WHETHER          10:33

16   ONE SIDE OR THE OTHER SIDE SHOULD GET YOUR VERDICT IN THIS

17   CASE.  IF YOU DO, THAT WILL BE THE FIRST SIGNAL TO YOU THAT YOU

18   PROBABLY SHOULD NOT BE SITTING ON THIS JURY.  AND IT WILL

19   PROBABLY BE A GOOD TEST FOR YOURSELF, AND IT'S SOMETHING THAT

20   ONLY YOU CAN EVALUATE AND DETERMINE.  IF AFTER HEARING THESE           10:33

21   STATEMENTS, YOU'RE ALREADY THINKING, 'WELL, GOSH, I THINK THE

22   PLAINTIFF SHOULD PREVAIL,' OR 'I THINK THE DEFENSE SHOULD

23   PREVAIL,' THAT'S AN INDICATION THAT YOU PROBABLY -- YOU HAVEN'T

24   HEARD ANY EVIDENCE, ALL YOU'RE HEARING IS STATEMENTS; SO KEEP

25   THAT IN MIND AS YOU HEAR THESE STATEMENTS.                             10:33

1      SO AT THIS TIME, I'M GOING TO INVITE THE PLAINTIFF TO

2  PRESENT THEIR STATEMENT FIRST.  I'VE INSTRUCTED THE ATTORNEYS

3  THAT THEY CANNOT EXCEED FIVE MINUTES, SO THEY DON'T HAVE MUCH

4  TIME TO PRESENT A RATHER COMPLEX PRESENTATION.

5      BUT IF YOU'D DO SO, MR. QUINN, IN FIVE MINUTES.                    10:33

6  THANK YOU.

7      **MR. QUINN:**  THANK YOU, YOUR HONOR.

8      FOLKS, I'M JUST GOING TO GIVE YOU A VERY BRIEF

9  OVERVIEW OF WHAT THE CASE IS ABOUT.

10      FIRST, LET ME INTRODUCE LILLIE MARTINEZ, WHO'S A DOLL     10:34

11  DESIGNER AT MATTEL, WHO WILL BE MATTEL'S REPRESENTATIVE DURING

12  THIS TRIAL.

13      THIS IS A DISPUTE BETWEEN TWO TOY COMPANIES

14  CONCERNING WHO OWNS THE RIGHTS TO SOME DRAWINGS, SOME SCULPTS,

15  AND SIMILAR MATERIALS RELATING TO A DOLL CALLED "BRATZ" THAT     10:34

16  SOME OF YOU MAY HAVE HEARD OF.

17      I REPRESENT MATTEL.  THE OTHER TOY COMPANY IS MGA.

18      THE EVIDENCE IN THIS CASE WILL BE THAT MGA HAD NEVER

19  DESIGNED AND DEVELOPED ITS OWN FASHION DOLL, AND THAT WAS A

20  LINE OF BUSINESS THAT MGA WANTED TO GET INTO.  SO THEY CAME UP     10:34

21  WITH A PLAN TO GET A MATTEL DOLL DESIGNER TO DESIGN A FASHION

22  DOLL FOR MGA.  NOT A FORMER MATTEL DOLL DESIGNER, BUT A DOLL

23  DESIGNER WHO WAS ACTUALLY WORKING AT MATTEL.

24      THERE WAS A PERSON AT MGA WHO WAS IN CHARGE OF THEIR

25  GIRLS' TOY DIVISION BY THE NAME OF PAULA GARCIA.  AND     10:35

1  MS. GARCIA KNEW A DOLL DESIGNER WHO WORKED AT MATTEL BY THE

2  NAME OF CARTER BRYANT.  AND MR. BRYANT HAD A DESIGN, HAD SOME

3  IDEAS, HAD SOME DRAWINGS FOR A DOLL.  AND SHE ARRANGED A

4  MEETING WITH MR. BRYANT WHILE HE WAS WORKING AT MATTEL.

5       NOW, FIRST I HAVE TO TELL YOU THAT MR. BRYANT WORKED

6  IN WHAT MATTEL HAS -- THEY HAVE A DESIGN CENTER, WHICH IS IN

7  EL SEGUNDO, OUT NEAR L.A.X., AND THAT'S WHERE MS. MARTINEZ

8  WORKS.  THEY HAVE A LOT OF OTHER VERY, VERY TALENTED PEOPLE.

9  THEY HAVE HUNDREDS OF DESIGNERS THERE, WORKING, LIKE

10  MS. MARTINEZ; MR. BRYANT WAS THERE.  HUNDREDS OF DESIGNERS WHO

11  ARE HIGHLY TALENTED PEOPLE, WHO DESIGN CREATIVITY.  COMING UP

12  WITH IDEAS AND EXECUTING ON THOSE IDEAS IS THE LIFE BLOOD OF

13  MATTEL'S BUSINESS.

14       THAT'S WHAT MATTEL IS, IS IDEAS AND DESIGNS AND

15  DEVELOPING THEM.  AND THAT'S WHERE MR. BRYANT WAS WORKING AT

16  THE TIME HE FIRST HAD CONVERSATIONS WITH MGA.

17       AND THEY WERE INTERESTED IN HIS IDEA.  HE SHOWED

18  THESE DRAWINGS, WHILE STILL EMPLOYED BY MATTEL, AND THEY WERE

19  INTERESTED IN HIS IDEA.  AND THEY ULTIMATELY SIGNED HIM UP TO A

20  CONTRACT, WHILE HE WAS STILL EMPLOYED BY MATTEL, THAT SAYS THAT

21  HE WOULD, AS A TOP PRIORITY, EXECUTE AND ASSIST IN DEVELOPING

22  THIS DOLL.  HE ALREADY HAD THE DESIGN.

23       BUT IMPORTANTLY, THAT WAS NOT THE FIRST CONTRACT THAT

24  MR. BRYANT HAD SIGNED.  MR. BRYANT HAD ALREADY SIGNED A

25  CONTRACT WITH MATTEL, AS AN EMPLOYEE, THAT SAID THAT ANY OF HIS

10:35
10:35
10:36
10:36
10:36

1   INVENTIONS, ANY DESIGNS THAT HE CAME UP WITH, IN MATTEL'S LINE
2   OF BUSINESS, WHILE HE'S GETTING A MATTEL PAYCHECK, WHILE HE
3   WORKS FOR US, THAT THOSE ARE GOING TO BE OWNED BY MATTEL.  AND
4   THE EVIDENCE IN THIS CASE WOULD BE, THAT'S PRETTY STANDARD IN
5   THE INDUSTRY.  MGA DOES THE SAME THING.  MR. LARIAN ALSO
6   REQUIRES HIS EMPLOYEES TO ENTER INTO AN AGREEMENT LIKE THAT.
7            AND, IN FACT, MGA HAD ALREADY HIRED AWAY DOZENS OF
8   MATTEL EMPLOYEES, ALL OF WHOM HAD THESE CONTRACTS.  SO I THINK
9   THE EVIDENCE WOULD BE PRETTY CLEAR, AND THE CONCLUSION WOULD
10  BE, THAT THEY KNEW HE HAD THIS CONTRACT.
11           NOW, MR. BRYANT IS NOT A PARTY TO THIS CASE.  HE'S
12  ASSIGNED AWAY HIS RIGHTS TO THIS DESIGN.  SO WHAT THIS CASE IS
13  ABOUT IS, DID MATTEL GET THOSE PURSUANT TO THE AGREEMENT HE
14  ALREADY HAD WHEN HE WAS WORKING FOR MATTEL, THIS INVENTIONS
15  AGREEMENT; OR DOES MGA GET THE RIGHTS BECAUSE OF THIS CONTRACT
16  THEY ENTERED INTO AT THE TIME THAT THEY FIRST MET WITH
17  MR. BRYANT, WHEN HE WAS STILL WORKING FOR MATTEL?
18           THAT'S BASICALLY THE ISSUE IN THE CASE.
19           NOW, MGA CAME OUT WITH -- DID DEVELOP THIS BRATZ
20  DOLL, AND THEY LIED TO THE WORLD ABOUT WHERE IT CAME FROM.
21  THEY KEPT THE FACT THAT THEY HAD WORKED WITH CARTER BRYANT
22  UNDER WRAPS.  YOU WILL SEE DOCUMENTS, INTERNAL MGA DOCUMENTS,
23  WHERE THEY SAY, 'MAKE NO REFERENCE TO CARTER BRYANT,' WHERE
24  THEY'RE TALKING ABOUT HOW LONG -- THERE'S LISTS OF EMPLOYEES'
25  LONGEVITY AND TALKING ABOUT HOW LONG THEY'VE WORKED FOR THE

10:37
10:37
10:37
10:38
10:38

1    COMPANY; BUT CARTER BRYANT SAYS, 'DON'T ASK.'  THEY COVERED IT

2    UP AS TO WHERE THIS CAME FROM AND MR. BRYANT'S ROLE IN IT.

3            BUT ULTIMATELY, THE STORY BEGAN TO UNRAVEL, AND

4    PEOPLE CAME TO HEAR, IT CAME TO BE KNOWN, THAT, IN FACT,

5    MR. BRYANT HAD SOMETHING TO DO WITH IT.  SO THEN THEY HAD TO

6    COME UP WITH ANOTHER STORY.  AND THE STORY YOU'LL HEAR IS THAT

7    MR. BRYANT -- THERE WAS A GAP IN HIS MATTEL EMPLOYMENT, BACK IN

8    1998; HE WORKED FOR MATTEL BEFORE AND AFTER; EIGHT-MONTH GAP,

9    WHEN HE WENT BACK TO MISSOURI AND LIVED WITH HIS PARENTS.  AND

10   THEIR STORY IS THAT HE DID THESE DRAWINGS DURING THAT GAP IN

11   HIS EMPLOYMENT, WHEN HE DIDN'T HAVE A MATTEL CONTRACT, AND THEN

12   JUST PUT THEM IN A DRAWER AND DID NOTHING WITH THEM, UNTIL MGA

13   CAME ALONG.  THAT'S THEIR STORY.

14           BUT WE WILL BRING TO THE JURY IN THIS CASE SCIENTIFIC

15   EVIDENCE THAT THAT'S FALSE, THAT THERE WAS BACKDATING, THAT THE

16   INK ON NOTARY BOOKS WAS FINAGLED, AND THAT THINGS WERE COVERED

17   UP; THEY BEGAN A MASSIVE COVER-UP, INTERNAL, WITHIN THE COMPANY

18   AT MGA.  THAT STORY JUST WON'T HOLD WATER.

19           ANOTHER THING THE JURY WILL HEAR IN THIS CASE IS THAT

20   THE DEFENDANTS DESTROYED EVIDENCE; MR. LARIAN DESTROYED

21   EVIDENCE.  MR. BRYANT, AS PART OF THE PRETRIAL PROCEDURE, HAD

22   TO TURN OVER HIS COMPUTER.  WITHIN DAYS BEFORE HE TURNED OVER

23   HIS COMPUTER TO US TO EXAMINE, HE RAN A PROGRAM ON IT CALLED

24   "EVIDENCE ELIMINATOR."

25           **MR. NOLAN:**  YOUR HONOR --

1      **THE COURT:**  LET'S WRAP UP, COUNSEL.

2      **MR. QUINN:**  WHAT'S MGA'S RESPONSE TO THIS?

3  BASICALLY, YOU'RE GOING TO HEAR MGA'S RESPONSE IS, 'TRIVIALIZE

4  IT; IT'S NOT A BIG DEAL; IT WAS ONLY AT THE END OF HIS

5  EMPLOYMENT.'  THERE'S GOING TO BE A DISPUTE AS TO WHEN HE FIRST       10:40

6  STARTED WORKING ON THIS.  BUT THERE WILL BE NO DISPUTE THAT HE

7  BEGAN WORKING ON IT WHILE HE WAS STILL EMPLOYED BY MATTEL.

8      AND YOU'RE ALSO, I SUSPECT, GOING TO HEAR SOMETHING

9  ABOUT THE AMERICAN DREAM, THAT MR. LARIAN IS AN IMMIGRANT TO

10  THIS COUNTRY AND THE SUCCESS OF HIS COMPANY IS THE SUCCESS OF       10:40

11  THE AMERICAN DREAM.

12      BUT, FOLKS, THAT'S NOT THE AMERICAN DREAM, TO COMPETE

13  BY CHEATING AND STEALING.  AND THAT'S WHAT THE EVIDENCE WOULD

14  SHOW.  THE EVIDENCE WOULD SHOW IN THIS CASE THAT THOSE DESIGNS

15  FOR BRATZ ARE OWNED BY MATTEL.                                      10:40

16      THANK YOU VERY MUCH.

17      **THE COURT:**  MR. NOLAN.

18      **MR. NOLAN:**  THANK YOU.

19      GOOD MORNING.

20      FIVE MINUTES TO TALK ABOUT SOMETHING THAT MAY TAKE       10:40

21  TWO MONTHS.  LET ME TRY TO DO THIS.

22      THIS IS A CASE ABOUT LARGE CORPORATE AMERICA, THE

23  LARGEST TOY MANUFACTURER IN THE WORLD, BEING OUT BOUGHT AND OUT

24  EXECUTED.  IT'S ABOUT A START-UP, A FAMILY-OWNED COMPANY; YES,

25  PROUDLY LED BY AN IMMIGRANT WHO CAME OVER TO THIS COUNTRY WHEN       10:41

1   HE WAS 17 YEARS OLD, WITH $750 IN HIS POCKET.  HE WORKED HIS

2   WAY UP, WORKING IN A COFFEE SHOP; WENT TO COLLEGE; SOLD THINGS

3   OUT OF THE BACK SEAT OF HIS TRUCK; STARTED A TOY COMPANY;

4   BECAME A UNITED STATES CITIZEN; WOULD GO TO WAL-MART AND TRY TO

5   SELL THEM TOYS.  WAL-MART SAYS, 'BRING ME SOMETHING THAT WILL          10:41

6   COMPETE WITH THE ICONIC BARBIE DOLL.'

7          SO IT'S A CASE ABOUT DREAMS, ASPIRATIONS,

8   OPPORTUNITIES, AND A COMPANY BY THE NAME OF MATTEL WHO WANTS

9   SOMETHING THAT THE EVIDENCE IS UNCONTROVERTED ON; SOMETHING

10  THAT THEY DIDN'T COME UP WITH THE IDEA FOR; SOMETHING THAT THEY       10:42

11  DIDN'T DRAW THE DESIGNS OF; AND SOMETHING THAT THEY DID NOT

12  MANUFACTURE ANY TYPE OF SUCCESS.  THIS LAWSUIT WAS FINALLY

13  BROUGHT AFTER BRATZ WAS SUCCESSFUL IN THE MARKETPLACE AND THE

14  MATTEL BRAND BARBIE WAS IN A STATE OF --

15          **MR. QUINN:**  SUBJECT OF A MOTION *IN LIMINE*, YOUR          10:42

16  HONOR.  IT'S A CLEAR VIOLATION.

17          **THE COURT:**  MOVE ALONG, COUNSEL.

18          **MR. NOLAN:**  LET'S START AT THE BEGINNING.

19          CARTER BRYANT GROWS UP, WENT TO SCHOOL AT

20  APPLE VALLEY HIGH SCHOOL; A DESIGNER.  WHEN MOST CHILDREN ARE         10:43

21  INTERESTED IN PLAYING BASKETBALL AND FOOTBALL, CARTER IS AN

22  ARTIST.  HE'S DRAWING FASHIONS.  HE WANTS TO GO TO ART SCHOOL.

23  HE DOESN'T HAVE THE MONEY.  HE GOES TO WORK FIRST AT MATTEL IN

24  1995; LEAVES AFTER A COUPLE OF YEARS, FRUSTRATED; MOVES TO

25  MISSOURI WITH HIS FAMILY; MOVES IN WITH HIS MOM AND DAD; TRIES        10:43

1    TO START HIS OWN BUSINESS DOING HALLMARK CARDS; PUTS UP A

2    WEBSITE.  HE'S TRYING TO DO DESIGN CARDS.  HE'S WORKING AT OLD

3    NAVY.

4          BUT YOU KNOW WHAT?  IN 1998, CARTER BRYANT IS ALSO

5    OBSERVING WHAT IS GOING ON AROUND HIM, AND THE EVIDENCE WILL          10:43

6    SHOW IN THIS CASE, WHAT WAS GOING ON AROUND HIM WAS EXACTLY

7    WHAT WE SEE:  A GENERATION OF GIRLS WHO WERE NOT GROWING UP THE

8    SAME WAY WE DID 40 YEARS AGO.  THEY HAD DIFFERENT INTERESTS.

9          HE STARTED TO COME UP WITH AN IDEA IN A DRAWING FOR A

10   NEW FASHION DOLL, A CONCEPT THAT WOULD BE MULTI-ETHNIC, URBAN,       10:44

11   EDGY, NOT BARBIE.

12         HE DRAWS THE DRAWINGS IN 1998.  THERE WILL BE

13   SCIENTIFIC EVIDENCE.  THAT SCIENTIFIC EVIDENCE WILL NOT SUPPORT

14   MATTEL'S CLAIM IN THIS CASE.  IT WILL SUPPORT THAT

15   CARTER BRYANT DID THOSE DRAWINGS IN 1998; HE HAD THE IDEA AND         10:44

16   HE HAD THE DRAWINGS.

17         HE DECIDED TO MOVE BACK TO LOS ANGELES.  HE GOT A JOB

18   AT MATTEL AND HE COMMENCED WORKING AT MATTEL AGAIN.  BUT ONCE

19   AGAIN, FRUSTRATED WITH JUST DOING DRAWINGS OF BARBIE

20   FASHIONABLES, ELEGANT GOWNS, DRESSES, FOR A DOLL THAT HE             10:44

21   THOUGHT HE HAD A BETTER IDEA FOR, FROM 1998, SOMETHING THAT HE

22   HAD SEEN IN MISSOURI WITH YOUNG KIDS, SOMETHING THAT HE

23   OBSERVED IN ALMOST EVERY FASHION MAGAZINE, INCLUDING SEVENTEEN

24   MAGAZINE IN AUGUST 1998.

25         HE DECIDES THAT EVEN THOUGH HE'S AN EMPLOYEE AT               10:45

1  MATTEL, HE HAS THE RIGHT TO LOOK FOR A NEW JOB. AND THAT'S

2  WHAT HE DOES.

3       IN 2000, HE DECIDES THAT HE WANTS TO TRY THE IDEA

4  THAT HE CREATED IN 1998, TO SEE WHETHER OR NOT HE COULD GET

5  SOMEBODY TO BELIEVE IN HIM AND GIVE HIM THE OPPORTUNITY THAT HE

6  HAD WANTED EVER SINCE HE WAS A LITTLE KID.

7       THE EVIDENCE WILL SHOW THAT HE WAS SO TALENTED WHEN

8  HE WAS YOUNG THAT HE WON A CONTEST FOR DRAWING ON A COMIC

9  SERIES, REGGIE. I DON'T KNOW IF ANY OF YOU REMEMBER THE

10 CARTOON. HE SIGNED ON THERE AT A VERY YOUNG AGE; I THINK HE

11 WAS 13 OR 14. HE ACTUALLY DREW A COMIC STRIP. HE WANTED HIS

12 OWN LIFE. HE WAS NOT SATISFIED BEING AN 8:00 TO 5:00 PERSON.

13      HE HEARD ABOUT A COMPANY CALLED MGA. HE WENT OUT AND

14 INTERVIEWED FOR A JOB. HE INTERVIEWED FOR A JOB AND HE TOOK

15 THE DRAWINGS THAT HE HAD DONE IN 1998, THE CORE MASTER

16 DRAWINGS. HE PUT A LITTLE COLOR ON THEM. HE PUT A LITTLE

17 FASHION DRESS ON ONE OF THEM. HE BROUGHT IT TO MGA. AND HE

18 MEETS WITH ISAAC LARIAN, PAULA GARCIA, WHO WILL BE HERE LATE;

19 SHE HAD A BUYER'S MEETING THIS MORNING. I APOLOGIZE. PAULA

20 WAS THE PROJECT MANAGER. THEY LOOKED AT THE DRAWINGS. IT

21 MATCHED WHAT THEY WANTED TO DO. IT MATCHED THEIR OPPORTUNITY

22 IN THE MARKETPLACE.

23      SO THIS SMALL COMPANY, PRIVATELY OWNED, STEPPED UP,

24 TOOK THE RISK, INVESTED MONEY, USED THE DRAWINGS AS SIMPLY AS

25 INSPIRATION, DECIDED THAT THEY WERE TOO EDGY, MAYBE A LITTLE

```
 1   BIT TOO SEXY FOR THE MARKETPLACE, MAYBE THEY WOULDN'T SELL THAT

 2   WAY --

 3         MR. QUINN:   OBJECTION.   PHASE ONE BEING -- HE'S GONE

 4   BEYOND THAT.

 5         THE COURT:   COUNSEL, YOU NEED TO WRAP UP BECAUSE          10:47

 6   WE'RE AT THE FIVE-MINUTE MARK.

 7         MR. NOLAN:   IN ANY EVENT, THE EVIDENCE WILL BE THAT

 8   MGA BUILT THE BRATZ DOLL AND THAT MATTEL WANTS WHAT THEY ARE

 9   NOT ENTITLED TO, WHAT THEY DID NOT CONCEIVE OF, AND WHAT THEY

10   DID NOT MAKE.                                                  10:47

11         THE COURT:   THANK YOU, COUNSEL.

12         AT THIS TIME, LADIES AND GENTLEMEN, I'M GOING TO BE

13   ASKING COUNSEL TO READ THE WITNESS LIST.   THE WITNESS LIST WILL

14   BE RATHER LENGTHY.   HOWEVER, IT'S FULLY INCLUSIVE; IT'S

15   EVERYONE WHO MIGHT BE CALLED AS A WITNESS.   I'M GOING TO ASK   10:48

16   THEM TO READ IT DELIBERATELY, SLOWLY.   IF THERE ARE ANY NAMES

17   THAT SOUND FAMILIAR TO YOU, MAKE A NOTE OF THAT, AND THEN LET

18   US KNOW.   BUT, AGAIN, WE'RE TRYING TO ACCOMPLISH AND MAKE SURE

19   WE HAVE A JURY THAT'S DETACHED AND DOESN'T HAVE ANY PRIOR

20   RELATIONSHIP WITH ANYONE IN THIS TRIAL.                        10:48

21         COUNSEL.

22         MR. QUINN:   THANK YOU, YOUR HONOR.

23         VALERIE AGINSKY; JOHN ALEX; LUCY ARANT;

24   BRYAN ARMSTRONG; ARNOLD ARTAVIA; NANA ASHONG; SCHUYLER BACON;

25   HELENE BARTELS; MARY BERGSTEIN; ROBERT BEST; SANDRA BILOTTO;   10:48
```

```
 1   MATT BOUSQUETTE; RON BRAWER -- RONALD BRAWER; JANINE BRISBOIS;

 2   KERRI BRODE; CHARNAYNE BROOKS; CARTER BRYANT; JANET BRYANT;

 3   THOMAS BRYANT; ANA ISABEL CABRERA; SARAH CHOI; MEI WAH CHUI;

 4   ELISE CLOONAN; WILLIAM CONKLE; NICK ARMANDO CONTRERAS; DANIEL

 5   COONEY; LLOYD CUNNINGHAM; RICHARD DEANDA; DAVID DEES;            10:49

 6          ANNE DRISKILL; JAN DUFFY; ERNEST DUTCHER;

 7   ROBERT ECKERT; KEVIN FARR; WENDY FEINBURG; TRACI FELDMAN;

 8   WILLIAM FLYNN; HEATHER FONSECA; ADRIENNE FONTANELLA; JOE

 9   FRANKE; LISA FREED; NEIL FRIEDMAN; GARY FUNCK; JEANNE GALVANO;

10   PAULA GARCIA; BROOKE GILBERT; KAMI GILLMORE-BRYANT;             10:50

11   PATRICIA GLASER; ALAN GOLDGBERG; ANGEL GOMEZ; JEAN GOMEZ;

12   DAPHNE GRONICH; THOMAS GRUCA; SARAH HALPERN; KITTY HAMMONS;

13   RACHEL HARRIS; REBECCA HARRIS; MARGARET HATCH-LEAHY;

14          MICHAEL HEBDEN; MARTIN HITCH; HOI HOFFMAN-BRIGGS;

15   KENNETH HOLLANDER; BRIAN HOOKS; DON HOWARTH; ROBERT HUDNUT;     10:50

16   RICHARD IRMEN; KEITH JACOBY; JULIA JENSEN; KATIANA JIMINEZ;

17   ERICH JOACHIMSTHALER; MITCHELL KAMARCK; FRED KAWASHIMA;

18   ALAN KAYE; FRANK KEISER; RICHARD KELLNER; SAMIR KHARE;

19   DOUGLAS KIDDER; TIM KILPIN; ANDREAS KOCH; MARK KREMER; SUSANNAH

20   KUEMMERLE.                                                      10:51

21          MR. QUINN:  YOUR HONOR, I DON'T WANT TO DEPRIVE

22   MR. NOLAN THE PRIVILEGE OF READING SOME OF THESE NAMES, IF HE

23   WOULD LIKE TO.

24          MR. NOLAN:  I HAVE MY OWN LIST.

25          THE COURT:  VERY WELL.                                   10:51
```

```
 1        MR. QUINN:  ROBERT KULLMAN; CECELIA KWOK;

 2   SHEILA KYAW; FARHAD LARIAN; ISAAC LARIAN; EDMOND LEE;

 3   STEVEN LEE; VICTOR LEE; ROBERT LIND; STEVEN LINKER; YIM CHONG

 4   LO; KENNETH LOCKHART; LEE LOETZ; RON LONGSDORF; ALBERT LYTER;

 5   CARLOS GUSTAVO MACHADO; ELI MAKABI; DAVID MALACRIDA; JULIA      10:52

 6   MARINE; MARIA VERONICA DE SOUZA MARLOW; PETER MARLOW; LILIANA

 7   MARTINEZ; JENNIFER MAURUS; SUSAN MCBRIDE; HEATHER MCCOMB;

 8   LARRY MCFARLAND; GINGER MCRAE; MICHELE MCSHANE; DENNIS MEDICI;

 9        PETER MENELL; MARK MENZ; CARL MEYER; PAUL MEYER;

10   DEBBIE MIDDLETON; MINA MIRKAZEMI; NICHOLAS MIRZOEFF;           10:52

11   CARMEN MONTEAGUDO; MICHAEL MOORE; BEATRIZ MORALES; AMY MYERS;

12   TERESA NEWCOMB; JOYCE NG; JILL NORDQUIST; ROBERT NORMILLE;

13   CHARLES O'CONNOR; VICTORIA O'CONNOR; SARAH ODOM;

14   COLLEEN O'HIGGINS; RALPH OMAN; DENISE O'NEAL; KISLAP ONGCHANGO;

15   RODNEY PALMER; CHRISTOPHER PALMERI; CASSIDY PARK; RENE PASKO;  10:53

16   TINA PATEL; NINETTE PEMBLETON; CYNTHIA PIERCE; JONI PRATTE;

17   JACQUELINE RAMONA PRINCE; WILLIAM RAGSDALE; JESSIE RAMIREZ;

18        WALTER RANTANEN; ANNA RHEE; DAVID ROSENBAUM;

19   IVY ROSS; LON ROSS; MARIA ELENA SALAZAR; PEDRO SALAZAR; SHIRIN

20   SALEMNIA; RICHARD SANDHAM; CHUCK SCOTHON; CAROL SCOTT;         10:53

21   CHRIS SESTO; ROBERT SIMONEAU; KATHLEEN SIMPSON-TAYLOR;

22   STEFFEN SMITH; BRUCE STEIN; ELLIS STERN; AILEEN STORER; MAUREEN

23   TAFOYA; STEVEN TARMICHAEL; JOE TIONGCO; MAUREEN TKACIK;

24   BEN TON; ROBERT TONNER; LISA TONNU; FRANKIE TSANG; ROBERT

25   TURNER; DENISE VAN PATTEN; GLENN VILPPU; EVELYN VIOHL; A       10:54
```

```
 1   CUSTODIAN OF RECORDS OF WACHOVIA; MICHAEL WAGNER; ANN WANG;

 2   MERCEDEH WARD; PAUL WARNER; JEFF WEISS; DOUGLAS WICKHAM;

 3   ROBERT WILSON; SPENCER WOODMAN; MEL WOODS; SANDRA YONEMOTO;

 4   MILTON ZABLOW; MORAD ZARABI.

 5           MR. NOLAN:  THAT'S THE LIST, YOUR HONOR.  I'M GLAD      10:55

 6   THEY WEREN'T ALL HERE TO HEAR HOW I BUTCHERED THEIR NAMES.

 7           THE COURT:  MR. NOLAN, IS THERE ANYBODY ELSE WHO IS

 8   NOT INCLUDED ON THAT LIST?

 9           MR. NOLAN:  WELL, YOUR HONOR, I JUST WANT TO MAKE

10   CERTAIN THAT MR. QUINN READ WITNESSES THAT WE'RE GOING TO CALL.  10:55

11           THE COURT:  RIGHT.  THAT'S CLEAR.  MR. QUINN READ THE

12   ENTIRE LIST, THE JOINT WITNESS LIST.

13           THANK YOU, COUNSEL.

14           MR. NOLAN:  IF I MIGHT JUST GO OVER THE ONES, IF WE

15   HAVE TIME, SO WE'RE JUST ABSOLUTELY CERTAIN THAT -- I WASN'T    10:55

16   CERTAIN THAT THOSE WERE INCLUDED IN THE LIST.

17           THE COURT:  YOU THINK THERE MAY BE SOME ADDITIONAL

18   NAMES?

19           MR. NOLAN:  I THINK THERE ARE JUST A FEW THAT I NEED

20   TO --                                                          10:55

21           THE COURT:  VERY WELL.

22           MR. NOLAN:  MARY BERGSTEIN; MATT BOUSQUETTE;

23   RONALD BRAWER; CARTER BRYANT; JANET BRYANT; THOMAS BRYANT;

24   ELISE CLOONAN; RICHARD DEANDA; ANN DRISKILL; JAN DUFFY; ROBERT

25   ECKERT; KEVIN FARR; HEATHER FONSECA; ADRIENNE FONTANELLA; LISA  10:55
```

1   FREED; GARY FUNCK; JEANNE GALVANO; PAULA TREANTAFELLES GARCIA;

2   THOMAS GRUCA; RACHEL HARRIS; MARGARET HATCH-LEAHY; MARTIN

3   HITCH; BRIGGS HOFFMAN; RICHARD IRMEN; JULIA JENSEN; KATRINA

4   JIMINEZ; ERICH JOACHIMSTHALER; FRED KAWASHIMA; ALAN KAYE;

5        DOUGLAS KIDDER; TIM KILPIN; ROBERT KULLMAN;                    10:56

6   SHEILA KYAW; ISAAC LARIAN; ALBERT LYTER; JULIA MARINE;

7   VERONICA MARLOW; LILLIE MARTINEZ; HEATHER MCCOMB;

8   MICHELE MCSHANE; PETER MENELL; PAUL MEYER; DEBBIE MIDDLETON;

9   MINA MIRKAZEMI; MICHAEL MOORE; AMY MYERS; TERESA NEWCOMB;

10  JOYCE NG; JILL NORDQUIST; ROBERT NORMILE; VICTORIA O'CONNOR;      10:57

11  RALPH OMAN; RODNEY PALMER; CASSIDY PARK; TINA PATEL;

12  JONI PRATTE; JACQUELINE PRINCE; ANNA RHEE; DAVID ROSENBAUM;

13  IVY ROSS; KATHLEEN SIMPSON-TAYLOR; STEFFEN SMITH; BRUCE STEIN;

14  AILEEN STORER; MAUREEN TAFOYA; ROBERT TONNER; LISA TONNU;

15  DENISE VAN PATTEN; GLENN VILPPU; EVELYN VIOHL; ANN WANG; AND     10:57

16  SANDRA YONEMOTO.

17       **THE COURT:**  I KNOW THAT WAS A LOT OF NAMES,

18  LADIES AND GENTLEMEN, BUT ARE THERE ANY NAMES THAT STOOD OUT AS

19  NAMES THAT YOU RECOGNIZE OR THINK YOU MIGHT RECOGNIZE?

20       IN THE BACK, WE HAVE -- FIRST OF ALL, ANYBODY UP HERE       10:58

21  SITTING IN THE JURY BOX?

22       BACK ROW, THEN.

23       **PROSPECTIVE JUROR:**  IT'S FREDERICK JELLEY,

24  YOUR HONOR.

25       I RECOGNIZE THE NAME PAULA GARCIA.  I WORKED WITH           10:58

1   SOMEONE WITH THE SAME NAME IN THE HUMAN RESOURCES DEPARTMENT

2   FOR THE DIOCESE OF SAN BERNARDINO AT ONE POINT.

3        **THE COURT:**  WHO WOULD KNOW SOMETHING ABOUT

4   PAULA GARCIA?

5        **MR. NOLAN:**  I DO, YOUR HONOR.

6        I DON'T BELIEVE IT'S THE SAME ONE.

7        **THE COURT:**  VERY WELL.

8        ANYBODY ELSE?

9        VERY WELL.

10        **MR. NOLAN:**  BEFORE THE COURT ASKS ANY QUESTIONS, CAN

11   WE JUST TAKE ONE MINUTE AT SIDE-BAR VERY QUICKLY TO RAISE AN

12   ISSUE?

13        **THE COURT:**  YOU MAY.

14        (WHEREUPON, THE FOLLOWING PROCEEDINGS

15        WERE HELD AT SIDE-BAR:)

16        **MR. NOLAN:**  YOUR HONOR, DURING MR. QUINN'S OPENING

17   STATEMENT, MUCH TO MY AMAZEMENT, HE STOOD UP AND IDENTIFIED

18   CARTER BRYANT AND SAID "EVIDENCE ELIMINATOR" AND THAT HE

19   DESTROYED EVIDENCE SHORTLY BEFORE THE LAWSUIT IN THIS CASE.

20   FIRST OF ALL, IT'S NOT TRUE.  NUMBER TWO IS A MOTION *IN LIMINE*

21   TO EXCLUDE.  CARTER BRYANT IS NOT A WITNESS.  THEY KNOW AND

22   THEY HAVE USED IT AS MANY TIMES AS THEY CAN TO GET A REACTION.

23        THIS IS A HUGE REACTION FOR SOMEONE IN THIS PANEL TO

24   KNOW THAT SOMEONE ALLEGEDLY USED "EVIDENCE ELIMINATOR."  THEN

25   HE HAS AN OBJECTION TO ME BECAUSE I SAY SOMETHING ABOUT

10:58

10:58

10:59

11:00

1  BUILDING THE BRATZ DOLL SETS.  IT'S A VIOLATION OF A MOTION

2  *IN LIMINE*.

3        YOUR HONOR, I RESPECTFULLY -- AND I DO THIS WITH

4  GREAT HESITATION -- I DON'T THINK YOU CAN TAKE THIS PANEL.  I

5  DON'T KNOW HOW YOU CAN UNRING THE "EVIDENCE ELIMINATOR" BELL.            11:00

6  THIS IS WHAT THEY HAVE ALWAYS WANTED TO SAY IN FRONT OF THE

7  JURY.  THOSE ARE THE MAGIC WORDS.

8        THERE IS NO SUBSTANCE TO IT.  IT'S COMPLETELY

9  IRRELEVANT.  CARTER BRYANT IS NOT A PARTY TO THE CASE.  MORE

10  IMPORTANTLY, IT WAS AN INTENTIONAL VIOLATION OF YOUR ORDER NOT        11:00

11  TO DISCUSS ANYTHING IN THE MOTION *IN LIMINE*.

12        **THE COURT:**  MR. QUINN?

13        **MR. QUINN:**  IF THERE IS A MOTION *IN LIMINE* DIRECTED

14  TO "EVIDENCE ELIMINATOR," THAT'S MY FAULT; THAT WAS A MISTAKE;

15  THAT WAS AN ERROR THAT SHOULD NOT HAVE HAPPENED, IF THERE'S           11:01

16  SUCH A MOTION.  I DIDN'T BELIEVE THERE WAS SUCH A MOTION.

17        BUT MR. NOLAN TWICE WENT INTO THINGS WHICH ARE

18  CLEARLY SUBJECT TO MOTIONS *IN LIMINE*; THE REACTIONS OF THE

19  MARKETPLACE BECAUSE BARBIE SALES WERE GOING DOWN, AND THEN

20  GOING INTO PHASE 1-B, ABOUT HOW THEY SPENT ALL THIS MONEY AND        11:01

21  THEY DEVELOPED THIS PRODUCT.  SO THERE CLEARLY ARE MOTIONS

22  *IN LIMINE* DIRECTED TO THOSE TWO.

23        AS TO "EVIDENCE ELIMINATOR" ITSELF, IF IT'S A SUBJECT

24  OF A MOTION *IN LIMINE*, I APOLOGIZE.  I DON'T KNOW THAT IT IS.

25  I DIDN'T THINK IT WAS.                                               11:01

48

1          THE COURT:  VERY WELL.

2          I'VE HEARD BOTH OF YOUR OBJECTIONS.  WE'LL TAKE THIS

3    UP FURTHER DURING THE LUNCH HOUR.  I'M GOING TO REINSTRUCT THE

4    JURY, AS I ALREADY HAVE, THAT THEY ARE NOT TO TAKE ANY

5    EVIDENTIARY VALUE FROM ANYTHING THAT'S BEEN SAID HERE.  WE'LL          11:01

6    TAKE THIS UP FURTHER DURING THE LUNCH BREAK.  I'M GOING TO

7    PROCEED WITH THE JURY SELECTION AT THIS TIME.

8          MR. NOLAN:  SORRY FOR THE INTERRUPTION.

9          THE COURT:  THANK YOU, COUNSEL.

10          (WHEREUPON, SIDE-BAR PROCEEDINGS WERE CONCLUDED.)          11:02

11          THE COURT:  ALL RIGHT.  THE NEXT ISSUE THAT I WANT TO

12   TAKE UP -- AND I ADDRESS THIS TO ALL THE MEMBERS OF THE PANEL

13   HERE COLLECTIVELY -- IS THE ISSUE OF PRESS.  YOU'VE HEARD FROM

14   BOTH SIDES WHAT THEY BELIEVE THE CASE IS ABOUT, SO YOU HAVE

15   SOME CONTEXT OR UNDERSTANDING OF WHAT IT IS THAT WE'RE GOING TO          11:02

16   BE LITIGATING IN THIS COURTROOM FOR THE NEXT TWO MONTHS.

17          HAS ANYONE IN THE ROOM HERE HEARD ANYTHING ABOUT THIS

18   CASE, READ ANYTHING ABOUT THIS CASE, KNOW ANYTHING ABOUT THIS

19   CASE, COMING IN HERE, BEFORE YOU HEARD, OBVIOUSLY, WHAT YOU

20   HEARD FROM THESE STATEMENTS?          11:02

21          ANYBODY IN THE BOX HERE?

22          THERE'S NO INDICATION.

23          IN THE FIRST ROW, ANYBODY?

24          IN THE SECOND ROW, ANYBODY?

25          THE THIRD ROW, AT THE FAR END.          11:03

1        MA'AM, ACTUALLY, WHY DON'T I ASK YOU TO COME FORWARD,

2   SINCE I DON'T NECESSARILY WANT TO HAVE WHATEVER YOU KNOW BE

3   GIVEN TO EVERYBODY ELSE.  IF YOU WOULD COME FORWARD AND

4   APPROACH SIDE-BAR.

5        ANYBODY ELSE IN THAT THIRD ROW?                         11:03

6        ANYBODY IN THE FOURTH ROW, THE BACK ROW?

7        ALL RIGHT.  SO THERE'S ONLY ONE INDIVIDUAL, AND WE'LL

8   TAKE THAT PERSON AT SIDE-BAR.

9        MR. QUINN AND MR. NOLAN.

10        (WHEREUPON, THE FOLLOWING PROCEEDINGS                    11:03

11        WERE HELD AT SIDE-BAR:)

12        **THE COURT:**  STATE YOUR NAME, PLEASE.

13        **PROSPECTIVE JUROR:**  CAROLYN SCHROYAR.

14        **THE COURT:**  WHAT HAVE YOU HEARD ABOUT THIS CASE?

15        **PROSPECTIVE JUROR:**  JUST, I READ A LOT OF NEWS AND    11:03

16   FINANCIAL MAGAZINES, AND I READ THIS A LONG TIME AGO, ABOUT

17   THIS COMING UP AND BOTH SIDES OF THE DISPUTE.

18        **THE COURT:**  WHAT DO YOU REMEMBER AT THIS POINT FROM

19   WHAT YOU HAVE READ?

20        **PROSPECTIVE JUROR:**  BASICALLY, WHAT THEIR BRIEF        11:04

21   SUMMARY IS; THAT AN EMPLOYEE AND MATTEL -- AND I KNOW WHAT A

22   CONFIDENTIAL AGREEMENT IS -- THAT THEY BASICALLY VIOLATED THE

23   AGREEMENT.  THAT'S THEIR ARGUMENT.

24        AND MGA IS SAYING, NO, IT'S HIS PROPERTY.  AND IT'S A

25   MATTER OF ONE LARGE COMPANY CLAIMING OWNERSHIP.              11:04

50

1          **THE COURT:**  WOULD YOU BE ABLE TO PUT ASIDE ANYTHING

2   THAT YOU HAVE LEARNED FROM THE NEWSPAPERS AND NOT LET THAT

3   AFFECT HOW YOU VIEW THE CASE?

4          **PROSPECTIVE JUROR:**  HONESTLY, NO.

5          **THE COURT:**  DO YOU FEEL YOU ALREADY HAVE, PERHAPS, AN          11:04

6   OPINION FORMED?

7          **PROSPECTIVE JUROR:**  YES.

8          **THE COURT:**  AND WHAT IS THAT OPINION?

9          **PROSPECTIVE JUROR:**  AN EMPLOYEE HAD AN ASSIGNED

10  AGREEMENT, A LICENSING AGREEMENT.  HE LEFT THAT EMPLOYMENT.          11:05

11  WHEN HE CAME BACK, HE SIGNED AWAY HIS INDIVIDUAL RIGHTS TO HIS

12  IDEA.

13         **THE COURT:**  MR. QUINN, MR. NOLAN, DO YOU HAVE ANY

14  QUESTIONS?

15         **MR. QUINN:**  YES.          11:05

16         WHEN FOLKS ARE CALLED TO BE JURORS, THEY ALL COME

17  INTO THIS COURTROOM WITH SOME EXPERIENCES AND SOME INFORMATION

18  ABOUT LIFE.  AS YOU MENTIONED, YOU'RE FAMILIAR WITH INVENTIONS

19  AGREEMENTS.

20         IF YOU WERE SELECTED TO BE ON THIS JURY, DO YOU THINK          11:05

21  YOU COULD PUT THOSE IMPRESSIONS ASIDE AND DECIDE THE CASE JUST

22  BASED ON THE EVIDENCE THAT YOU HEAR IN THIS COURTROOM?

23         **PROSPECTIVE JUROR:**  MAYBE.  I COULDN'T SAY DEFINITELY

24  YES OR NO.

25         **THE COURT:**  MR. NOLAN?          11:06

1      **MR. NOLAN:**  I APPRECIATE YOUR CANDOR AND HONESTY.

2      **THE COURT:**  VERY WELL.

3      MA'AM, IF YOU WOULD RETURN TO YOUR SEAT.

4      THANK YOU SO MUCH.

5      WE'LL TAKE THIS UP AT THE LUNCH HOUR.                    11:06

6      (WHEREUPON, SIDE-BAR PROCEEDINGS WERE CONCLUDED.)

7      **THE COURT:**  SO THERE'S NO ANYBODY ELSE WHO'S READ

8  ANYTHING OR HEARD ANYTHING ABOUT THIS CASE?

9      I'LL SAY THIS TO ALL OF YOU AS WE GO THROUGH THIS

10 NEXT TWO-DAY PROCESS; HOPEFULLY, ONE DAY, BUT, PERHAPS, TWO-DAY   11:06

11 PROCESS TO SELECT THE JURY; AND I'LL CERTAINLY BE REPEATING

12 THIS TO THE TEN PEOPLE WHO ARE CHOSEN TO BE ON THE JURY:

13     DURING THIS CASE, YOU ARE NOT TO READ OR INVESTIGATE

14 OR LOOK UP ANYTHING ABOUT THE MATTER WHATSOEVER.  NO LOOKING ON

15 THE INTERNET, GOOGLING, YAHOO SEARCHES, WHATEVER.  IF YOU COME   11:07

16 ACROSS AN ARTICLE IN A PAPER THAT YOU'RE READING, SKIP THE

17 ARTICLE; PAY NO ATTENTION TO IT.  IF THERE'S ANYTHING ON THE

18 EVENING NEWS ABOUT THE CASE, IGNORE IT; TURN THE CHANNEL.  IT'S

19 REALLY IMPORTANT.  IT WOULD BE VERY UNFAIR TO THE PARTIES TO

20 ALLOW HOWEVER THE PRESS MIGHT CHARACTERIZE SOMETHING THAT'S      11:07

21 ASSOCIATED WITH THE CASE TO BE PART OF THE DECISION-MAKING

22 PROCESS.  SO THAT'S SOMETHING TO KEEP IN MIND.

23     WHAT WE'RE GOING TO DO NEXT IS GO THROUGH EACH JUROR.

24 WE'RE GOING TO START WITH WHAT'S CHARACTERIZED AS JUROR

25 NUMBER 1, ALL OF THE WAY THROUGH JUROR NUMBER 56, AND I'M GOING  11:07

1   TO ASK YOU TO ANSWER THE QUESTIONS THAT YOU HAVE BEFORE YOU ON

2   THE SHEET OF PAPER.  I'M GOING TO GO THROUGH THOSE QUESTIONS

3   BRIEFLY.

4           THE FIRST ONE, JUST STATE YOUR NAME; SECOND, DESCRIBE

5   YOUR PRESENT AND PAST OCCUPATIONS AND WORK EXPERIENCES; WHAT            11:08

6   YOU DO; IF YOU'RE RETIRED, WHAT YOU DID, IF YOU HELD ANY

7   PREVIOUS JOBS, OCCUPATIONS, WHATEVER THEY MIGHT BE.

8           IN THE CONTEXT OF ANSWERING THAT QUESTION,

9   NUMBER THREE ASKS YOU, HAVE YOU OR ANYONE CLOSE TO YOU EVER HAD

10  A SERIOUS DISPUTE WITH AN EMPLOYER?  HAVE YOU EVER BEEN FIRED?         11:08

11  HAVE YOU EVER HAD A GRIEVANCE, ANYTHING WHICH WOULD BE A

12  DISPUTE?  AND IF SO, PLEASE DESCRIBE.

13          AND WITH THIS, AS WITH ANY QUESTION, IF YOU DON'T

14  FEEL COMFORTABLE TALKING ABOUT IT IN PUBLIC OR IN FRONT OF

15  EVERYBODY ELSE, JUST TELL THE COURT THAT YOU'D LIKE TO SPEAK AT        11:08

16  SIDE-BAR, AND WE CAN DO IT JUST AS WE HAVE WITH THIS LAST

17  JUROR.

18          THE FOURTH QUESTION:  HAVE YOU EVER SIGNED AN

19  EMPLOYMENT AGREEMENT OR AN INVENTIONS AGREEMENT WITH A PRESENT

20  OR FORMER EMPLOYER?  IT SAYS "FOR" FORMER EMPLOYER.  IT SHOULD         11:08

21  BE "OR" FORMER EMPLOYER.

22          NUMBER FIVE:  HAVE YOU OR ANYONE CLOSE TO YOU HAD ANY

23  EXPERIENCE WITH PATENTS, TRADEMARKS, OR COPYRIGHTS?  HAVE YOU

24  OR ANYONE CLOSE TO YOU APPLIED FOR A PATENT OR A TRADEMARK?

25  ARE YOU INVOLVED WITH A COMPANY OR AN EMPLOYMENT THAT IS              11:09

1   INVOLVED IN TRADEMARK OR COPYRIGHT OR PATENT APPLICATION?

2           SIX:  DESCRIBE YOUR EDUCATIONAL BACKGROUND.  IF YOU

3   ATTENDED COLLEGE OR GRADUATE SCHOOL, WHAT WAS YOUR MAJOR?  WHAT

4   DID YOU RECEIVE YOUR DEGREES IN?  TELL US ABOUT YOUR

5   EDUCATIONAL BACKGROUND.                                          11:09

6           SEVEN:  NAME THE CITY IN WHICH YOU LIVE.  NO ONE IS

7   INTERESTED IN THE STREET ADDRESS, JUST THE GENERAL VICINITY.

8   IF IT'S AN UNINCORPORATED AREA, THE AREA OF THE COUNTY THAT YOU

9   LIVE.

10          EIGHT:  WHAT IS YOUR MARITAL STATUS?  WHAT IS YOUR       11:09

11  SPOUSE'S OR YOUR SIGNIFICANT OTHER'S OCCUPATION AND WORK

12  EXPERIENCE?

13          NINE:  HOW MANY CHILDREN DO YOU HAVE?  AND THEN WHAT

14  ARE THE AGES AND OCCUPATIONS OF ANY ADULT CHILDREN?  YOU DON'T

15  NEED TO PROVIDE THE INFORMATION FOR ANYONE UNDER 18, BUT IF YOU  11:10

16  HAVE ANY CHILDREN WHO ARE OVER 18, LET US KNOW WHAT THEIR AGE

17  IS AND WHAT THEIR WORK HISTORY IS.

18          TEN:  ARE THERE ANY OTHER ADULTS LIVING IN YOUR

19  HOUSEHOLD IN ADDITION TO OR BESIDES A SPOUSE OR SIGNIFICANT

20  OTHER AND ANY ADULT CHILDREN?  ARE THERE ANY ADULTS WHO RENT A   11:10

21  ROOM, LIVE WITH YOU; AN AUNT, A MOTHER-IN-LAW, WHATEVER IT

22  MIGHT BE?  AND THEN THE SAME QUESTION:  WHAT ARE THE

23  OCCUPATIONS OF ANY SUCH INDIVIDUALS?

24          QUESTION 11 ASKS YOU TO DESCRIBE YOUR PRIOR JURY

25  SERVICE.  AND ALL I'M ASKING FOR HERE IS WHETHER OR NOT YOU'VE   11:10

54

1  SERVED; IF YOU HAVE SERVED ON A CASE, WHETHER IT WAS CIVIL OR

2  CRIMINAL.  YOU DON'T NEED TO TELL ME THE TYPE OF CASE, JUST

3  CIVIL OR CRIMINAL.  AND THEN WHETHER OR NOT YOU REACHED A

4  VERDICT; IF IT WAS A CRIMINAL CASE, WHETHER YOU FOUND A GUILTY

5  OR A NOT GUILTY VERDICT.  IF IT WAS A CIVIL CASE, WHETHER YOU        11:10

6  FOUND A LIABLE OR A NOT LIABLE VERDICT.

7           DON'T TELL ME WHAT THE VERDICT IS.  I DON'T WANT TO

8  KNOW IF IT WAS GUILTY OR NOT GUILTY OR IF YOU FOUND FOR THE

9  PLAINTIFF OR THE DEFENDANT, JUST WHETHER OR NOT YOU REACHED A

10 VERDICT.                                                            11:11

11          NUMBER 12 AND 13 ARE BASICALLY MIRROR-IMAGE

12 QUESTIONS.

13          NUMBER 12 IS, ARE YOU FAMILIAR WITH A COMPANY CALLED

14 MATTEL OR ANY OF ITS PRODUCTS, INCLUDING THE BARBIE DOLL?  IF

15 SO, PLEASE DESCRIBE THE NATURE AND EXTENT OF YOUR FAMILIARITY;      11:11

16 WHAT, IF ANYTHING, IS YOUR OPINION OF MATTEL OR ANY OF ITS

17 PRODUCTS; AND EXPLAIN WHY YOU HAVE THAT OPINION.

18          THEN THE SAME THING FOR MGA ENTERTAINMENT OR ANY OF

19 ITS PRODUCTS, INCLUDING THE BRATZ DOLLS.  AGAIN, IF SO,

20 DESCRIBE THE NATURE AND EXTENT OF YOUR FAMILIARITY; WHAT, IF        11:11

21 ANYTHING, YOUR OPINION MIGHT BE OF MGA ENTERTAINMENT OR OF ITS

22 PRODUCTS; AND IF YOU HAVE AN OPINION, EXPLAIN WHY YOU HAVE THAT

23 OPINION.

24          FINALLY, THE LAST TWO QUESTIONS, HAVE YOU OR ANYONE

25 CLOSE TO YOU EVER SUED OR BEEN SUED IN A LAWSUIT?  IF SO,           11:11

1    PLEASE DESCRIBE.  AGAIN, FEEL FREE TO INVOKE THE SIDE-BAR IF
2    YOU DON'T WANT TO DESCRIBE THE LAWSUIT IN OPEN COURT.
3              AND LASTLY, IS THERE ANY REASON THAT YOU CANNOT BE A
4    FAIR AND IMPARTIAL JUROR IN THIS CASE?
5              THAT'S THE CATCHALL THAT I REALLY NEED TO DEPEND UPON         11:12
6    YOU.  IF THERE'S ANYTHING THAT YOU'VE HEARD OR SEEN -- YOU'VE
7    HEARD THOSE OPENING STATEMENTS, AND YOU SAW AN EXAMPLE IN THAT
8    OPENING STATEMENT OF OBJECTIONS MADE BY THE ATTORNEYS.  THESE
9    ARE FIRST-RATE ATTORNEYS ON BOTH SIDES, AND THEIR JOB, THEIR
10   DUTY, IS TO ZEALOUSLY REPRESENT THEIR CLIENTS' INTERESTS.  AND        11:12
11   SO THEY ARE REQUIRED, WHEN THEY BELIEVE THAT THE OTHER SIDE MAY
12   HAVE VIOLATED A RULE OF EVIDENCE, OR VIOLATED SOMETHING, TO
13   STAND UP AND MAKE AN OBJECTION.
14             YOU SHOULD INFER NOTHING FROM THE OBJECTION, UNLESS
15   THE COURT SUSTAINS THE OBJECTION OR INSTRUCTS YOU TO DISREGARD        11:12
16   SOMETHING OR NOT.  ALL THAT I'VE INSTRUCTED YOU SO FAR IN THIS
17   CASE IS BASICALLY THAT ANYTHING SAID IN THE STATEMENTS,
18   OBJECTED TO OR NOT OBJECTED TO, IS OF NO BEARING FROM AN
19   EVIDENTIARY STANDPOINT IN THIS TRIAL.  THESE WERE SIMPLY
20   COUNSELS' OPPORTUNITIES TO GIVE YOU SOME CONTEXT FOR THIS JURY        11:13
21   SELECTION.  BUT AS SOON AS THIS JURY SELECTION IS OVER, YOU'RE
22   REALLY STARTING TABULA RASA, A CLEAN SLATE, NOTHING ON IT, AND
23   THE DECISIONS THAT YOU'RE GOING TO BE CALLED UPON TO MAKE CAN
24   ONLY BE BASED ON THE EVIDENCE THAT I ADMIT INTO THE TRIAL.
25             SO THOSE ARE THE QUESTIONS.  I'M GOING TO TURN IT NOW        11:13

1   OVER TO YOU.  WHEN YOU GET THE MICROPHONE, START BY STATING

2   YOUR NAME, AND THEN JUST GO DOWN THROUGH THE QUESTIONS, ANSWER

3   THE QUESTIONS.  WHEN YOU'RE DONE, I'LL LEAD YOU TO THE NEXT

4   JUROR.  WE'LL BE TAKING A BREAK AT NOON FOR LUNCH, FROM 12:00

5   TO 1:00, AND THEN WE'LL RESUME AT 1:00.                              11:13

6           NOW, ALL OF YOU ARE TIME-QUALIFIED FOR TWO MONTHS,

7   BUT I ALSO KNOW THAT YOU CAN'T NECESSARILY CHECK OUT OF YOUR

8   LIVES FOR THE NEXT TWO MONTHS.  I SUSPECT THAT YOU MAY HAVE

9   APPOINTMENTS, IMPORTANT DOCTOR APPOINTMENTS OR OTHER

10  APPOINTMENTS, THAT MIGHT COME UP, WHETHER IT BE TODAY OR SOME       11:13

11  OTHER DAY; AND WE'RE CERTAINLY GOING TO DO ALL WE CAN TO

12  ACCOMMODATE THOSE, BOTH DURING THIS JURY SELECTION PROCESS AS

13  WELL AS BEYOND.  WE'RE CERTAINLY GOING TO ASK YOU, TO THE

14  EXTENT POSSIBLE, TO SCHEDULE YOUR APPOINTMENTS FOR MONDAYS,

15  WHICH ARE DAYS THAT WE'RE NOT GOING TO HAVE TRIAL, OR BEFORE OR     11:14

16  AFTER COURT HOURS.  BUT WE ALL CERTAINLY UNDERSTAND THAT WE'RE

17  ALL BUSY AND WE HAVE ALL KINDS OF DIFFERENT THINGS GOING ON.

18  SO IF SOMETHING COMES UP AND YOU NEED TO LEAVE EARLY ON A

19  PARTICULAR DAY OR YOU HAVE AN APPOINTMENT THAT YOU JUST CAN'T

20  MAKE, WRITE OUT WHAT IT IS AND PROVIDE IT TO MR. HOLMES, OR         11:14

21  WHOEVER IS ACTING AS THE COURTROOM DEPUTY.  HE'LL PROVIDE IT TO

22  ME; I'LL GO OVER IT WITH THE ATTORNEYS; AND THEN WE'LL DO ALL

23  WE CAN TO MAKE AN APPROPRIATE ACCOMMODATION.  WE REALLY NEED

24  YOU TO COMMUNICATE THAT.

25          BUT THE ONLY COMMUNICATION THAT YOU SHOULD BE HAVING        11:14

57

1   IS WITH MR. HOLMES IN WRITING.  DON'T TALK TO ME DIRECTLY.

2   CERTAINLY, DON'T EVER TALK TO THE ATTORNEYS.  THE ATTORNEYS ARE

3   UNDER STRICT INSTRUCTIONS, BASICALLY, TO IGNORE ALL OF YOU; SO

4   DON'T THINK THEY'RE BEING RUDE OR IMPOLITE WHEN THEY WALK BY

5   YOU AND DON'T EVEN LOOK AT YOU.  BUT IT'S JUST REALLY                    11:15

6   IMPORTANT, OF COURSE, THAT THERE'S NOT EVEN AN APPEARANCE OF

7   IMPROPRIETY; SO THE ATTORNEYS ARE STRICTLY INSTRUCTED NOT TO

8   HAVE ANY CONTACT WITH ANY OF YOU.  AND YOU THE SAME, OF COURSE.

9           SO WITH THAT IN MIND, WE'LL BEGIN NOW.  WE'LL GO

10  THROUGH NOON; WE'LL TAKE AN HOUR RECESS FOR LUNCH; AND THEN           11:15

11  WE'LL RESUME THIS AFTERNOON AND GO FROM THERE.  HOPEFULLY,

12  WE'LL GET THROUGH THIS TODAY.  IF NOT TODAY, WE CERTAINLY

13  ANTICIPATE BEING THROUGH THIS BY TOMORROW MORNING AND HAVING

14  OUR JURY.

15          LET'S BEGIN WITH MR. NICHOLS.                                 11:15

16          **PROSPECTIVE JUROR:**  MY NAME IS JAMES ROBERT

17  NICHOLS, SR.  I'M RETIRED.  I'VE BEEN RETIRED SINCE JANUARY.  I

18  WAS AN INSPECTOR FOR GOLDEN STATE WATER, WHICH IS BASED IN

19  SAN DIMAS.

20          NUMBER THREE IS NO; NUMBER FOUR IS NO.                        11:15

21          NUMBER FIVE IS NO.

22          MY EDUCATIONAL BACKGROUND IS, I FINISHED HIGH SCHOOL,

23  AND I WENT TO AN ADULT COLLEGE FOR TWO YEARS TO GET

24  CERTIFICATES FOR THE WATER COMPANY, WHICH IS WATER TREATMENT.

25          I LIVE IN APPLE VALLEY, CALIFORNIA.  I'M MARRIED.  MY         11:16

1   WIFE IS A HOUSEWIFE.  AND SHE WAS A WAITRESS FOR 25 YEARS

2   BEFORE SHE RETIRED.

3         I HAVE FIVE CHILDREN.  THE OLDEST IS 48; SHE'S A

4   NURSE IN APPLE VALLEY.  THE NEXT ONE IS A HOUSEWIFE IN EUGENE,

5   OREGON.  MY THIRD DAUGHTER LIVES IN TEMECULA; SHE'S ALSO A

6   HOUSEWIFE.  MY OLDEST SON, HE'S AT FORT SILL, OKLAHOMA, UNITED

7   STATES ARMY.  MY LAST SON, HE'S 22; HE WORKS IN ST. GEORGE,

8   UTAH, AT A SUPERMARKET.

9         THERE'S NO ADULTS LIVING IN THE HOUSEHOLD BESIDES MY

10  WIFE.

11        I WAS ON TWO JURIES.  WE REACHED A VERDICT ON BOTH OF

12  THEM.

13        I AM FAMILIAR WITH MATTEL.

14        **THE COURT:**  LET ME JUST STOP YOU THERE.

15        WERE THE CASES CIVIL OR CRIMINAL?

16        **PROSPECTIVE JUROR:**  CRIMINAL.

17        **THE COURT:**  BOTH OF THEM?

18        **PROSPECTIVE JUROR:**  YES.

19        **THE COURT:**  THANK YOU, SIR.

20        **PROSPECTIVE JUROR:**  I'M FAMILIAR WITH MATTEL.  I

21  BELIEVE EVERYBODY IS FAMILIAR WITH MATTEL.

22        MY WIFE, IN FACT, HAS A COLLECTION OF THE DOLLS,

23  BARBIE DOLLS; I THINK SHE HAS ABOUT 50 OF THEM.

24        THAT'S THE ONLY THING THAT I KNOW ABOUT MATTEL.

25        **THE COURT:**  DO YOU THINK THERE'S ANYTHING ABOUT YOUR

11:16
11:17
11:17
11:17
11:17

1  WIFE'S COLLECTION OF BARBIE DOLLS THAT MIGHT AFFECT HOW YOU'D

2  VIEW THIS CASE?

3          PROSPECTIVE JUROR:  I DON'T BELIEVE SO.

4          I'VE NEVER HEARD OF MGA.  I'M NOT FAMILIAR WITH ANY

5  OF THEM.

6          AND I'VE NEVER BEEN INVOLVED IN A LAWSUIT OR BEEN

7  SUED MYSELF.

8          I DON'T THINK THERE'S ANY REASON I CAN'T BE FAIR.

9          THE COURT:  THANK YOU, SIR.

10          IF YOU'D PASS THE MICROPHONE TO MS. FUENTES.

11          PROSPECTIVE JUROR:  MY NAME IS LORENA FUENTES.  I

12  USED TO BE A MAIL LADY FOR 15 YEARS.  RIGHT NOW, I'M WORKING AS

13  A SUBSTITUTE TEACHER.

14          THREE, FOUR, AND FIVE ARE NO.

15          I HAVE A BACHELORS OF SCIENCE IN HUMAN SERVICES.

16          I LIVE IN ONTARIO.  I'M MARRIED.  MY HUSBAND IS A

17  MAILMAN.  I HAVE TWO DAUGHTERS; ONE 13, ONE 19.  THE

18  19-YEAR-OLD IS A COLLEGE STUDENT.

19          THE ONLY OTHER ADULT LIVING IN MY HOUSEHOLD IS MY

20  BROTHER.  HE'S HANDICAPPED.  HE DOESN'T HAVE A JOB.

21          I'VE NEVER SERVED JURY DUTY.

22          YES, I'VE HEARD OF MATTEL; BARBIE DOLL, I GUESS.

23  THAT'S ALL I KNOW ABOUT IT.

24          THE COURT:  YOU DON'T HAVE A PARTICULAR OPINION ABOUT

25  MATTEL?

11:17
11:18
11:18
11:18
11:19

60

1          **PROSPECTIVE JUROR:**  I HAVE NONE.

2          **THE COURT:**  ALL RIGHT.

3          I'VE NEVER HEARD OF MGA, BUT I HAVE HEARD OF THE

4    BRATZ DOLLS.  I HAVE NO OPINION OF THEM EITHER.

5          14 IS NO.                                                11:19

6          I DON'T SEE ANY REASON WHY I CAN'T BE FAIR ON THIS

7    JURY.

8          **THE COURT:**  THANK YOU, MA'AM.

9          IF YOU'D PASS THE MICROPHONE TO MR. BAGALSO.

10         **PROSPECTIVE JUROR:**  MY NAME IS REYNALDO BAGALSO.  I'M    11:19

11   A RETIRED UNITED STATES COAST GUARD OF 20 YEARS, AND I RETIRED

12   ALSO AS A REGISTERED NURSE.

13         NUMBER THREE IS NO; NUMBER FOUR IS NO.

14         NUMBER FIVE IS DEFINITELY NO.

15         MY BACKGROUND EDUCATIONAL, I'M AN A.D. IN NURSING.  I     11:20

16   FINISHED HIGH SCHOOL, AND I GOT SOME SCHOOL IN MILITARY, WHICH

17   IS LIKE LAB TECH.  THAT'S ABOUT IT.

18         I'M MARRIED.  I LIVE IN UPLAND, CALIFORNIA.

19         I HAVE THREE CHILDREN.  MY FIRST DAUGHTER IS

20   GRADUATING AS A NURSE ANESTHETIST IN SEPTEMBER, AND MY SON IS   11:20

21   JUST A CAR DETAILER.  MY OTHER DAUGHTER IS WORKING IN SOCIAL

22   SERVICES SOMEWHERE IN VISTA, CALIFORNIA.

23         I HAVE NO PRIOR JURY EXPERIENCE.

24         THERE'S ONE ADULT LIVING IN MY HOUSEHOLD.  MY

25   BROTHER-IN-LAW IS MENTALLY CHALLENGED.  HE HAS THIS DOWN        11:20

1    SYNDROME PROBLEM, WHICH I USUALLY TAKE CARE OF HIM EVERY DAY.

2            MATTEL, THE ONLY THING THAT I KNOW ABOUT IS JUST

3    BARBIE DOLL AND KEN DOLL OR SOMETHING.  THAT'S ABOUT ALL I

4    KNOW.  I DON'T HAVE ANY OTHER OPINION WITH THEM.

5            THE MGA, I NEVER HEARD OF.                              11:21

6            14 IS NO.

7            15, I HAVE NO PROBLEM WITH THAT.

8            THE COURT:  YOUR MARITAL STATUS?

9            PROSPECTIVE JUROR:  I'M MARRIED.

10           THE COURT:  WHAT DOES YOUR WIFE DO?                     11:21

11           PROSPECTIVE JUROR:  MY WIFE IS A REGISTERED NURSE.

12           THE COURT:  SHE'S NOT RETIRED?  SHE'S STILL A

13   REGISTERED NURSE?

14           PROSPECTIVE JUROR:  SHE'S STILL WORKING.  I'M THE ONE

15   WHO RETIRED AND AM TAKING CARE OF MY BROTHER-IN-LAW WHO HAS     11:21

16   DOWN SYNDROME.

17           THE COURT:  VERY GOOD.

18           WHEN YOU WERE A REGISTERED NURSE, WHERE DID YOU WORK?

19           PROSPECTIVE JUROR:  I WORKED ALL OVER THE PLACE.

20   REGISTRY.  AND I WORKED IN JAIL.  AND I RETIRED ABOUT FIVE      11:22

21   YEARS AGO.

22           THE COURT:  VERY GOOD.  THANK YOU, SIR.

23           IF YOU'D PASS THE MICROPHONE TO MR. REDE.

24           PROSPECTIVE JUROR:  LUCIANO REDE.  I'VE WORKED ALL MY

25   ADULT LIFE IN REAL ESTATE.  I'VE NEVER HAD A DISPUTE WITH AN    11:22

1   EMPLOYER.

2         FOUR IS NO.  FIVE IS NO.

3         MY EDUCATIONAL BACKGROUND:  I HOLD AN ASSOCIATE OF

4   ARTS DEGREE IN COMMUNICATIONS.

5         I LIVE IN HESPERIA.  I'M WIDOWED.  I HAVE TWO            11:22

6   CHILDREN, A SON AND A DAUGHTER.  MY SON LIVES IN FLORIDA.  MY

7   DAUGHTER LIVES IN APPLE VALLEY.

8         I LIVE ALONE.

9         I HAVE NO PREVIOUS JURY EXPERIENCE.

10         I'VE HEARD OF MATTEL.  I KNOW THAT THEY'RE INVOLVED      11:23

11   IN THE MANUFACTURE OF TOYS, TO THAT EXTENT.  I HAVEN'T BOUGHT A

12   TOY IN 35, 40 YEARS.

13         MGA MUST BE A RELATIVELY NEW COMPANY.  I'VE NEVER

14   HEARD OF THEM BEFORE.

15         I HAVE NO OPINION OF EITHER MATTEL OR MGA.              11:23

16         AND I DON'T KNOW ANYONE THAT'S EVER BEEN SUED BEFORE.

17         AND THE ANSWER TO 15 IS NONE.

18         **THE COURT:**  YOU SAY YOU'RE IN REAL ESTATE.

19         COULD YOU EXPAND AND TELL US A LITTLE BIT ABOUT YOUR

20   WORK.                                                        11:24

21         **PROSPECTIVE JUROR:**  WELL, MY FATHER WAS A REAL ESTATE

22   AGENT IN MONTEBELLO, FROM WAY BACK IN 1914, 1916.  WHEN HE

23   RETIRED FROM REAL ESTATE, AFTER MY SERVICE IN THE MILITARY, I

24   TOOK OVER HIS OFFICE BACK IN 1951, AND I WAS A REAL ESTATE

25   BROKER IN LOS ANGELES COUNTY, AND I WORKED SAN BERNARDINO AND  11:25

1   RIVERSIDE COUNTY AND SAN DIEGO COUNTY, OUT OF MY OFFICE.

2          IT WAS A SMALL OFFICE.  WE ONLY HAD, MAYBE, OH, HALF

3   A DOZEN AGENTS AT ANY ONE TIME.  WE HAD, MAYBE, A COUPLE OF

4   TRAINEES AT THAT TIME.  BUT THAT'S WHERE I LIVED ALL OF MY

5   LIFE, IN REAL ESTATE.                                      11:25

6          THE COURT:  VERY GOOD.

7          I'M SORRY TO HEAR ABOUT YOUR WIFE.

8          WHAT DID SHE DO BEFORE SHE PASSED AWAY?

9          PROSPECTIVE JUROR:  MY WIFE WAS -- SHE HAD A CHILD

10  CARE CENTER.  AND I LOST HER ABOUT FOUR AND A HALF YEARS AGO,  11:25

11  SO I'VE BEEN BY MYSELF.

12         THE COURT:  YOUR SON AND DAUGHTER WHO LIVE AWAY FROM

13  YOU, WHAT WORK DO THEY DO?

14         PROSPECTIVE JUROR:  MY SON WORKS FOR THE DISNEY

15  COMPANY.  HE EMCEES A LOT OF CONVENTIONS THROUGHOUT FLORIDA.   11:25

16  AND MY DAUGHTER IS A HOMEMAKER.  SHE IS ON AND OFF GOING TO

17  SCHOOL, BECAUSE SHE'S GOT CHILDREN.  SO SHE GOES TO SCHOOL,

18  GOES TO SCHOOL, AND LET'S UP MAYBE A SEMESTER OR TWO, AND THEN

19  GOES BACK.  IT'S A WORK IN PROCESS.

20         THE COURT:  OKAY.  SO THE SON WHO DOES THE EMCEE WORK   11:26

21  FOR DISNEY, WHEN A CONVENTION COMES DOWN TO ORLANDO, OR

22  DISNEY WORLD, HE HELPS HOST IT; IS THAT RIGHT?

23         PROSPECTIVE JUROR:  IT DOESN'T WORK THAT WAY.  HE

24  GETS CALLED TO ALL OF THE SOUTHERN REGION OF FLORIDA, HE'S ON

25  CALL, AND THEY ASSIGN HIM TO GO AND DO THAT CONVENTION OR THE   11:26

64

1   OTHER ONE, IN LAUDERDALE OR WHEREVER.

2           THE COURT:  I SEE.  VERY GOOD.

3           THANK YOU VERY MUCH, SIR.

4           IF YOU'D PASS THE MICROPHONE TO MR. JUAREZ.

5           PROSPECTIVE JUROR:  MY NAME IS MANUAL JUAREZ, JR.      11:27

6           I CURRENTLY WORK FOR UNION PACIFIC RAILROAD FOR THE

7   NEXT 11 DAYS, WHEN I RETIRE.  MY CURRENT OCCUPATION IS MANAGER

8   OF OPERATIONS, AND BASICALLY, I HANDLE THE BUDGETS AND ALL OF

9   THE ADMINISTRATIVE WORK FOR THE THREE LOCOMOTIVE SHOPS WE HAVE

10  HERE IN THE L.A. BASIN.  ONE OF MY PRIMARY DUTIES IS HAVING TO   11:27

11  INVESTIGATE EEO COMPLAINTS OR ANY TYPE OF DISCRIMINATION OR

12  COMPLAINTS THAT EMPLOYEES HAVE AGAINST OTHER INDIVIDUALS.

13          I ALSO HAVE TO BE A HEARING OFFICER, WHICH IS SIMILAR

14  TO A TRIAL, WHERE I AM -- I ASK THE QUESTIONS, AND BASED ON THE

15  EVIDENCE PRODUCED, I RENDER A VERDICT.  AND IT'S ALL          11:27

16  ADMINISTRATIVE; SO I CAN DISMISS PEOPLE FROM EMPLOYMENT.

17          THE COURT:  SO YOU UNDERSTAND THE IMPORTANCE OF

18  HAVING A FAIR AND IMPARTIAL HEARING OFFICER AND --

19          PROSPECTIVE JUROR:  I HAVE TO BE STRICTLY FAIR AND

20  IMPARTIAL.                                                   11:28

21          THE COURT:  AND MAKING DECISIONS JUST BASED ON THE

22  EVIDENCE THAT'S PRESENTED TO YOU.

23          PROSPECTIVE JUROR:  THAT'S CORRECT.

24          THE COURT:  VERY GOOD.

25          PROSPECTIVE JUROR:  SO THAT'S WHAT I'VE DONE.  I'VE    11:28

1  WORKED MY WAY UP THROUGH THE COMPANY.  I STARTED OUT AS AN

2  ELECTRICIAN APPRENTICE.

3       I KNOW TWO INDIVIDUALS THAT HAVE HAD SERIOUS

4  DISPUTES.  ONE WAS MY SON.  WHEN HE WAS GOING TO SCHOOL, HE WAS

5  FIRED FOR TURNING IN AN EEO COMPLAINT; NOT FOR HIMSELF.  AND          11:28

6  THE OTHER INDIVIDUAL IS MY BROTHER-IN-LAW.  AND HE HAS HAD A

7  DISPUTE WITH THE STATE OF CALIFORNIA, HAVING TO DO, I THINK,

8  WITH A PROMOTION.

9       **THE COURT:**  ANYTHING ABOUT THOSE DISPUTES OR HOW THEY

10  WERE HANDLED THAT MIGHT EFFECT HOW YOU WOULD VIEW OTHER              11:28

11  DISPUTES BETWEEN AN EMPLOYEE OR A FORMER EMPLOYEE AND AN

12  EMPLOYER?

13       **PROSPECTIVE JUROR:**  I DON'T THINK SO.  OTHER THAN FOR

14  MY SON'S CASE.  I THOUGHT THEY WERE A LITTLE UNFAIR ON THAT

15  ONE, BECAUSE HE WAS FOLLOWING THE PROCEDURE, AND HE WAS             11:28

16  DISMISSED BY THE RESTAURANT THAT HE WAS WORKING FOR.

17       **THE COURT:**  BUT AS A HEARING OFFICER, YOU CERTAINLY

18  WOULD UNDERSTAND THAT THOSE FACTS RELATE TO THAT CASE AND THAT

19  WOULD NOT APPLY TO THIS CASE.

20       **PROSPECTIVE JUROR:**  THAT'S CORRECT.  IT'S COMPLETELY       11:29

21  UNRELATED TO ANY OF THE OTHER THINGS THAT I HAVE HAD TO DO AT

22  WORK.

23       **THE COURT:**  VERY GOOD.

24       **PROSPECTIVE JUROR:**  NO TO NUMBER FOUR.

25       NO TO NUMBER FIVE.                                             11:29

1           I HAVE A BACHELOR'S DEGREE, BACHELOR OF SCIENCE

2   DEGREE IN HUMAN RESOURCES MANAGEMENT.

3           I LIVE IN RANCHO CUCAMONGA.  I AM MARRIED.  MY WIFE

4   IS A SALES CLERK, WORKS FOR J.C.PENNEY, HAS BEEN THERE FOR

5   ABOUT 35 YEARS.

6           I HAVE FOUR CHILDREN.  MY OLDEST IS MY DAUGHTER.

7   SHE'S 32; SHE WORKS FOR A COMPANY NAMED FREEMAN OUT OF DALLAS,

8   AND THEY DO CONVENTIONS.  MY OLDEST SON IS 28.  HE IS A

9   COMPUTER TECH AND INSTRUCTOR FOR A COMPANY NAMED SPECTRUM IN

10  DENVER.  I HAVE TWIN BOYS, BOTH 25.  THE OLDEST OF THE TWINS

11  WORKS HERE IN RANCHO CUCAMONGA AT HOME DEPOT, AND THE YOUNGEST

12  OF THE TWINS IS A FIRST LIEUTENANT IN THE MARINES, CURRENTLY IN

13  IRAQ.

14          OTHER THAN ONE OF THE TWINS LIVING WITH US, THERE ARE

15  NO OTHER ADULTS LIVING AT THE HOUSE.

16          I'VE ONLY EXPERIENCED JURY DUTY ONE TIME.  IT WAS

17  CRIMINAL AND I WAS AN ALTERNATE, SO I WASN'T INVOLVED IN COMING

18  UP WITH A VERDICT.

19          I AM FAMILIAR WITH MATTEL, MAINLY BECAUSE OF THE KIDS

20  WHEN THEY WERE YOUNGER, AND THEN WITH THE BARBIE DOLL WITH MY

21  DAUGHTER.

22          OTHER THAN WHAT'S BEEN GOING ON LATELY WITH THE LEAD

23  IN PAINT, I THINK MATTEL MAKES GREAT TOYS.

24          **THE COURT:**  YOU MAKE REFERENCE TO THE LEAD IN PAINT.

25          WHAT ARE YOU REFERRING TO?

11:29

11:30

11:30

11:30

11:30

1          **PROSPECTIVE JUROR:**  FROM THE NEWS RECENTLY, ABOUT

2    SOME OF THE TOYS COMING IN FROM CHINA WITH LEAD PAINT.

3          **THE COURT:**  ANYTHING ABOUT THOSE NEWS STORIES THAT

4    MIGHT AFFECT HOW YOU WOULD VIEW MATTEL AS A PLAINTIFF IN THIS

5    CASE?                                                            11:31

6          **PROSPECTIVE JUROR:**  NO.  THIS IS JUST OUTSOURCING OF

7    WORK, AND WE ALL KNOW SOME OF THE THINGS WE HAVE TO DEAL WITH

8    WHEN WE OUTSOURCE WORK.

9          I'M NOT FAMILIAR WITH MGA.

10         NO TO NUMBER FOUR.                                         11:31

11         AND I THINK I CAN BE PRETTY FAIR AND IMPARTIAL IN

12   THIS CASE.

13         **THE COURT:**  THANK YOU, SIR.

14         IF YOU'D PASS THE MICROPHONE TO MS. KUNKLE.

15         **PROSPECTIVE JUROR:**  I'M ELDA KUNKLE FROM IDLEWILD.     11:31

16   I'M RETIRED.  WE HAD GROCERY STORES, AND I WORKED FOR THE

17   POSTAL SERVICE FOR 20 YEARS.

18         NEVER IN A SERIOUS DISPUTE.

19         NO TO FOUR.  NO TO FIVE.

20         EDUCATION:  JUST A HIGH SCHOOL DIPLOMA.                    11:32

21         I LIVE IN IDLEWILD.

22         MARITAL STATUS:  MARRIED.  AND MY HUSBAND IS RETIRED

23   ALSO.  HE WAS IN THE AIR FORCE, AND THEN HE WAS A HOME DELIVERY

24   MILKMAN AND A HOME DELIVERY WATER MAN YEARS BACK, WHEN THEY HAD

25   IT, AND THEN HE BUILT SOME HOUSES.  AND THEN WE HAD A GROCERY    11:32

1    STORE IN IDLEWILD.  WE WERE THE OWNERS.  HE RETIRED DUE TO BACK

2    PROBLEMS, AND THEN I STARTED WORK AT THE POSTAL SERVICE.

3            WE HAVE SIX CHILDREN, ALL ADULTS.  AND THE OLDEST IS

4    A DAUGHTER THAT LIVES IN EL CAJON AND WORKS FOR RALPH'S GROCERY

5    STORE.  OUR NEXT ONE IS TOM, AND HE IS RETIRED FROM BEING A

6    GROCERY STORE CLERK.  I THINK HE RETIRED AT 50.  AND THE NEXT

7    ONE LIVES IN SANTA BARBARA, AND HE IS NOT WORKING DUE TO HEALTH

8    PROBLEMS.  THE NEXT ONE IS STEVEN, WHO WORKS FOR THE WATER

9    COMPANY IN IDLEWILD.  THE NEXT ONE IS DAVID, WHO WORKS IN

10   HELENA, MONTANA, FOR NORTHROP GRUMMAN AS A DATABASE PROCESSOR.

11   AFTER MANY YEARS OF NOT WORKING WITH CANCER, HE IS NOW EMPLOYED

12   WITH A GOOD COMPANY.  THE NEXT ONE IS OUR DAUGHTER, WHO WILL BE

13   40 ON SATURDAY, AND SHE ISN'T WORKING RIGHT NOW.

14           NO OTHER ADULTS IN OUR HOUSEHOLD EXCEPT MY HUSBAND

15   AND I.

16           NO JURY EXPERIENCE.

17           I'M FAMILIAR WITH MATTEL DUE TO OUR CHILDREN, WHEN

18   THEY WERE GROWING UP.  BUT OUR TWO GIRLS WERE TOM BOYS; I NEVER

19   BOUGHT A DOLL.  AND I KNOW FOR A LOT OF THE GIRLS THAT AGE, IT

20   WAS VERY POPULAR, AND A LOT OF THE WOMEN BOUGHT THEM, I THINK,

21   AND PUT THEM AWAY, AND THE GIRLS NEVER GOT TO PLAY WITH THEM.

22   AND I THINK IT WAS ALWAYS -- I ALWAYS THOUGHT IT WAS A GOOD

23   COMPANY.  NEVER HEARD ANYTHING THAT I THOUGHT OTHERWISE.

24           I'M NOT FAMILIAR WITH MGA OR THE BRATZ DOLL.

25           AND I'VE NEVER BEEN SUED.

11:32

11:33

11:33

11:33

11:34

```
 1              THE ANSWER TO 14 IS NO.

 2              AND I WOULD TRY TO BE FAIR.  I HAVE NO REASON TO

 3     THINK THAT I WOULDN'T BE FAIR.

 4          THE COURT:  THANK YOU, MA'AM.

 5              IF YOU'D PASS THE MICROPHONE TO MS. APPLETON.          11:34

 6          PROSPECTIVE JUROR:  MY NAME IS JUDY APPLETON.  I AM A

 7     TEACHER, AND HAVE BEEN FOR 34 YEARS.  BEFORE THAT, I WAS A

 8     TELEPHONE OPERATOR.

 9              NO TO NUMBER THREE AND FOUR AND FIVE.

10              I GRADUATED FROM THE UNIVERSITY OF CALIFORNIA IN      11:34

11     SANTA BARBARA AS AN EDUCATION MAJOR.

12              I LIVE IN REDLANDS.  I AM MARRIED.  MY HUSBAND WAS A

13     RETAIL CLERK, AND HE IS NOW RETIRED.

14              WE HAVE TWO CHILDREN.  MY DAUGHTER JUST TURNED 40,

15     AND SHE'S A CRIME SCENE INVESTIGATOR FOR THE CITY OF FONTANA.  11:35

16     MY OTHER DAUGHTER IS 37, AND SHE IS A TEACHER WITH

17     SAN BERNARDINO SCHOOLS.

18              NO OTHER ADULTS.

19              I'VE BEEN ON TWO JURIES.  ONE CIVIL; AND I WAS AN

20     ALTERNATE, SO I DON'T KNOW ABOUT THE VERDICT.  THE OTHER WAS  11:35

21     CRIMINAL, AND WE DID REACH A VERDICT.

22              I'M VERY FAMILIAR WITH MATTEL FOR ALL ITS TOYS, NOT

23     ONLY THE BARBIES, BUT HAVING ONE DAUGHTER THAT LOVED DOLLS, SHE

24     HAD A LOT OF BARBIES.

25              I DON'T KNOW ABOUT MGA ENTERTAINMENT, BUT I HAVE     11:35
```

1   HEARD ABOUT THE BRATZ DOLLS, BECAUSE I TEACH THIRD GRADE AND

2   KIDS TALK ABOUT THEM.

3         I HAVE NO OPINION ONE WAY OR THE OTHER ABOUT EITHER

4   OF THE COMPANIES.

5         MY HUSBAND WAS INVOLVED IN A WORKMAN'S COMP SUIT WITH    11:36

6   HIS COMPANY.  DO I NEED TO DESCRIBE IT?  IT WAS JUST THE FACT

7   THAT HE WAS INJURED ON THE JOB, AND IT WAS HOW LONG BEFORE HE

8   WOULD NEED TO GO BACK TO WORK.

9         AND THERE'S NO REASON, I DON'T FEEL, THAT I COULDN'T

10  BE A FAIR AND IMPARTIAL JUROR.                                11:36

11        **THE COURT:**  SO THERE WASN'T ANYTHING ABOUT THAT

12  DISPUTE THAT WOULD AFFECT HOW YOU WOULD VIEW THIS CASE?

13        **PROSPECTIVE JUROR:**  NO.  IT MAINLY WAS -- THEY

14  SUGGESTED THE EASIEST WAY TO SETTLE IT.  THERE WAS NO ANIMOSITY

15  WITH THE COMPANY.                                             11:36

16        **THE COURT:**  THANK YOU, MA'AM.

17        MR. STEVENSON.

18        **PROSPECTIVE JUROR:**  MY NAME IS KENNETH MICHAEL

19  STEVENSON.  I WORK FOR METROPOLITAN WATER; BEEN THERE OVER

20  30 YEARS NOW.  I'M A HYDROELECTRIC PUMP MECHANIC.             11:37

21        ON NUMBER THREE, THAT WOULD BE NO.

22        NUMBER FOUR WOULD BE NO.

23        NUMBER FIVE, ABOUT, SAY, 25 YEARS AGO, I SORT OF

24  CHECKED IN TO PATENTS, BECAUSE MY COUSIN AND MYSELF, WE CAME UP

25  WITH AN IDEA AND WE WERE THINKING ABOUT DOING IT, BUT WE SORT  11:37

1  OF GOT DISCOURAGED AND JUST WENT ON OUR WAY.

2          HIGH SCHOOL DIPLOMA, WITH A LOT OF CERTIFICATES,

3  LARGE CERTIFICATES, CRANE CERTIFICATES, WELDING CERTIFICATES.

4          I LIVE IN RIVERSIDE.  I'M MARRIED.  MY WIFE WORKS FOR

5  METROPOLITAN WATER AS A BUYER.  NO CHILDREN.  NO OTHER ADULTS          11:37

6  BUT MY WIFE LIVING IN THE HOUSE.

7          I HAVE BEEN ON A FEW CASES, CIVIL CASES, CRIMINAL

8  CASES.  THE LAST CASE WAS A CRIMINAL CASE, AND I WAS AN

9  ALTERNATE ON IT.

10         **THE COURT:**  ON THE CASES THAT YOU WERE NOT AN          11:38

11  ALTERNATIVE BUT ACTUALLY SAT, WERE YOU ABLE TO REACH VERDICTS

12  IN THOSE CASES?

13         **PROSPECTIVE JUROR:**  YES, WE DID.

14         AND I'M GOING BACK PROBABLY 15 YEARS AGO.  I'VE BEEN

15  ON, PROBABLY, FOUR NOW, IN 15 YEARS.          11:38

16         I HAVE HEARD OF MATTEL.  MY SISTER, GROWING UP, SHE

17  HAD BARBIE DOLLS.  MY NIECES, THEY ALL PLAYED WITH THE BARBIES.

18  NO OPINIONS.

19         MGA, I'VE NEVER HEARD OF THE COMPANY.

20         ON 14, MY WIFE WAS SUED, CAR INSURANCE.  SOMEONE RAN          11:39

21  INTO THE BACK OF HER AND SUED HER, AND SO THE INSURANCE COMPANY

22  WAS TAKING CARE OF THE SUIT.  WE NEVER DID HAVE TO GO ANYWHERE.

23  THEY TOOK CARE OF IT.

24         AND 15, I HAVE NO PROBLEM BEING ON THIS JURY.  I

25  THINK -- I KNOW I COULD BE FAIR AND IMPARTIAL.          11:39

1    **THE COURT:**  TELL ME A LITTLE BIT ABOUT THE INVENTION

2  WHICH LED TO YOUR PATENT APPLICATION.

3    **PROSPECTIVE JUROR:**  IT WAS WHEN THE SKATEBOARDS WERE

4  REALLY POPULAR, WHEN THEY FIRST CAME OUT, AND A LOT OF THE

5  MALLS WERE PUTTING UP SIGNS SAYING, 'YOU CAN'T BE RIDING THEM;

6  YOU CAN'T CARRY THEM.'  SO WE MADE, LIKE, A CLOTH PACK WITH

7  VELCRO THAT ATTACHED TO IT, AND YOU SORT OF SLUNG IT OVER YOUR

8  SHOULDER LIKE A BOW AND ARROW, AND YOU HUNG IT ON YOUR BACK, SO

9  YOUR HANDS WERE FREE.  YOU COULD GO TO THE MALL WITHOUT GETTING

10 IN TROUBLE.

11   **THE COURT:**  VERY GOOD.

12   YOU SAY YOU WERE DISCOURAGED AND YOU EVENTUALLY

13 DROPPED THE IDEA.

14   ANYTHING ABOUT THAT PROCESS THAT MIGHT AFFECT HOW YOU

15 WOULD VIEW A CASE THAT INVOLVES INTELLECTUAL PROPERTY?

16   **PROSPECTIVE JUROR:**  NO.

17   WHEN WE WERE TRYING TO DO IT, WE DIDN'T HAVE TWO

18 NICKELS TO RUB TOGETHER, AND IT WAS GOING TO COST SOME MONEY,

19 AND WE JUST SAID, 'WELL, HECK WITH IT; WE'LL JUST SELL THEM TO

20 OUR FRIENDS.'  SO THAT'S WHAT WE DID.

21   **THE COURT:**  THANK YOU SO MUCH, SIR.

22   LET'S KEEP THIS IN ORDER.  LET'S PASS THE MICROPHONE

23 DOWN TO MS. VOEGELE.

24   **PROSPECTIVE JUROR:**  MY NAME IS CECILIA VOEGELE.  I'M

25 CURRENTLY UNEMPLOYED, BUT I WORKED IN CLERICAL MOST OF MY LIFE.

11:40
11:40
11:40
11:40
11:41

1  MY LAST JOB, EIGHT YEARS, WAS WITH A BABY COMPANY THAT MAKES

2  STROLLERS, HIGH CHAIRS, AND PLAYPENS.

3          I'VE NEVER HAD A SERIOUS DISPUTE.  I DID SIGN AN

4  EMPLOYEE AGREEMENT WITH BABY TREND NOT TO GO WITH ANY OTHER

5  RIVAL STROLLER COMPANIES, LIKE GRACO OR EVENFLOW, ONE OF THE       11:41

6  BIGGER HOUSES.

7          **THE COURT:**  DO YOU HAVE ANY FEELINGS ABOUT THAT

8  EMPLOYMENT AGREEMENT, POSITIVE OR NEGATIVE?

9          **PROSPECTIVE JUROR:**  I FEEL THAT IT'S UNETHICAL FOR ME

10 TO GO TO ANOTHER COMPANY AND GIVE OUT THE SECRETS.  IN CUSTOMER    11:41

11 SERVICE, I KNEW EVERYTHING ABOUT EVERY SINGLE PRODUCT; HOW THEY

12 WERE BUILT, HOW THEY WENT TOGETHER; SO I DIDN'T HAVE ANY

13 TROUBLE SIGNING THE AGREEMENT.

14         **THE COURT:**  AND DID IT EVER BECOME AN ISSUE IN TERMS

15 OF YOUR EMPLOYMENT?                                                11:42

16         **PROSPECTIVE JUROR:**  NO.  BECAUSE I NEVER WENT TO

17 ANOTHER BABY COMPANY AGAIN.

18         I'VE NEVER HAD A PATENT OR ANYTHING LIKE THAT.

19         MY EDUCATIONAL BACKGROUND IS HIGH SCHOOL, WITH A FEW

20 COLLEGE COURSES.  I'M A WRITER, ENGLISH, SPANISH, JUST GENERAL.    11:42

21         I LIVE IN ALTA LOMA, IN THE NORTH PART OF

22 RANCHO CUCAMONGA.  I'M MARRIED.  MY HUSBAND IS RETIRED.  HE

23 WORKED FOR THE GOVERNMENT FOR 30 YEARS.  HE WORKED FOR LONG

24 BEACH NAVAL SHIPYARD AND TEN YEARS WITH MARCH AIR FORCE BASE AS

25 A STRUCTURAL ENGINEER.  HE TOOK CARE OF THE BASE.                  11:42

1          I HAVE THREE CHILDREN.  MY OLDEST IS 33; SHE'S A

2     CLERK, OFFICE-TYPE PERSON.  MY SON IS 31; HE IS A COMPUTER

3     TECHNICIAN IN TEXAS FOR ONE OF THOSE BIG NATIONAL INSTRUMENTS,

4     OR WHATEVER.  AND THEN MY YOUNGEST SON IS 21; HE PAINTS CARS.

5     HE'S THE ONLY ONE THAT LIVES IN THE HOUSE.  EVERYBODY ELSE IS          11:43

6     GONE.  ME AND MY HUSBAND AND MY SON.

7          I'VE NEVER HAD ANY JURY DUTY AT ALL.  I'VE ALWAYS

8     WEASELED OUT OF IT.

9          I AM FAMILIAR WITH MATTEL, BUT I NEVER HAD A BARBIE

10    DOLL.  I WAS A TOMBOY.  I DIDN'T LIKE THEM.  I AM FAMILIAR WITH        11:43

11    MOST OF THE TOYS.  I HAVE GRANDCHILDREN, SO I DO KNOW THAT THEY

12    DO A LOT OF TOYS.  I ALWAYS THOUGHT THAT MATTEL WAS A

13    MAJOR-TYPE COMPANY, A BIG COMPANY THAT MADE A LOT OF THINGS.

14    BUT I'M OUT OF THE LOOP.  NO MORE LITTLE KIDS; SO I DON'T KNOW

15    ANYTHING ELSE ABOUT THEM.  AND I DON'T HAVE ANY OPINIONS.             11:43

16         I'VE NEVER HEARD OF MGA ENTERTAINMENT, BUT I HAVE

17    HEARD OF THE BRATZ DOLLS.  I DON'T KNOW IF I HAVE EVER SEEN

18    THEM, BUT I DID READ AN ARTICLE ONCE THAT THEY WERE KIND OF

19    GEARED FOR LITTLE GIRLS BUT THEY WERE KIND OF DRESSED, LIKE,

20    FOR OLDER GIRLS.  THAT'S THE ONLY THING I REMEMBER ABOUT THE          11:43

21    BRATZ, SO THAT'S THE ONLY OPINION I HAVE ABOUT THEM.

22         I'VE NEVER BEEN SUED OR KNOW ANYBODY.

23         AND I HOPE I COULD BE A FAIR JUROR.

24    **THE COURT:**  THANK YOU, MA'AM.

25         PASS THE MICROPHONE TO MR. OLSON.                               11:44

1          **PROSPECTIVE JUROR:**  MY NAME IS TIMOTHY J. OLSON.

2          I'M PRESENTLY RETIRED.  I RETIRED FROM WESTERN

3     MUNICIPAL WATER DISTRICT AFTER 34 YEARS AS AN OPERATIONS

4     SUPERINTENDENT.

5          I'VE NEVER HAD ANY REAL SERIOUS DISPUTES WITH                    11:44

6     EMPLOYERS.  WITH THE EMPLOYER, I HAVE HAD DISPUTES AS AN

7     OPERATIONS SUPERINTENDENT, WITH THE EMPLOYEES, OVER

8     WORK-RELATED THINGS.

9          **THE COURT:**  ANYTHING ABOUT THOSE DISPUTES THAT MIGHT

10    AFFECT HOW YOU WOULD VIEW ANOTHER --                                  11:44

11         **PROSPECTIVE JUROR:**  NO.  THEY DON'T HAVE ANYTHING

12    THAT'S ANYWHERE NEAR THIS.

13         I'VE NEVER SIGNED AN EMPLOYMENT AGREEMENT.  I'VE

14    NEVER BEEN AN AGREEMENT ON ANY INVENTIONS OR PRESENT WITH ANY

15    FORMER EMPLOYEES.                                                     11:45

16         I'VE NEVER HAD ANY EXPERIENCE WITH PATENTS OR

17    COPYRIGHTS.

18         I HAVE A HIGH SCHOOL EDUCATION, WITH A FEW COLLEGE

19    COURSES IN WATER TREATMENT AND SEWAGE TREATMENT.

20         I LIVE IN THE CITY OF RIVERSIDE.  I'M SINGLE.  I HAVE           11:45

21    ONE ADULT CHILD.  HE'S THE URBAN FORESTER FOR THE CITY OF

22    RIVERSIDE.  I HAVE NO ONE ELSE LIVING WITH ME.  I LIVE BY

23    MYSELF.

24         I HAVE NO PRIOR JURY EXPERIENCE.

25         I AM FAMILIAR WITH MATTEL AS A TOY MAKER.  THE ONLY            11:45

1   THING THAT I DO KNOW ABOUT THEM IS THE PAINT FROM CHINA WITH

2   THE LEAD.   THAT'S ABOUT ALL I KNOW ABOUT MATTEL.

3           THE COURT:   ANYTHING ABOUT THAT AND WHAT YOU MAY HAVE

4   HEARD ABOUT THAT THAT MIGHT AFFECT HOW YOU WOULD VIEW MATTEL IN

5   THIS CASE?                                                              11:46

6           PROSPECTIVE JUROR:   NO.   I DON'T FEEL KIDS SHOULD BE

7   CHEWING ON THE TOYS, SO I DON'T HAVE A DISPUTE WITH MATTEL ON

8   THAT.

9           I'VE NEVER HAD ANY JURY EXPERIENCE.

10          I HAVE NO IDEA WHO MGA IS.   AND I KNOW NOTHING ABOUT       11:46

11  THE BRATZ DOLLS.

12          I'VE BEEN SUED OVER CASES WITH EMPLOYMENT AND

13  INJURIES ON THE JOB AS A SUPERINTENDENT, BUT IT WAS NOTHING

14  THAT MADE BAD FEELINGS ABOUT ANYTHING.   IT WAS JUST TO SETTLE

15  DIFFERENCES.                                                          11:46

16          AND I BELIEVE I COULD BE IMPARTIAL AND FAIR AS A

17  JUROR.

18          THE COURT:   THANK YOU, SIR.

19          WOULD YOU PASS THE MICROPHONE TO MR. CASAS.

20          PROSPECTIVE JUROR:   MY NAME IS GILBERTO CASAS; I GO      11:47

21  BY JOSÉ.   I CURRENTLY WORK AT MERVYN'S LOGISTICS.   I DO

22  SHIPPING AND RECEIVING FOR THE TRUCKS, AND I ALSO DO TATTOOING

23  ON THE SIDE.   I USED TO WORK FOR WAHOO FISH TACO, NEWPORT

24  WAYSIDE CHRISTIAN CENTER; A BUNCH OF JOBS; BUILD-A-BEAR.

25          I'VE NEVER HAD A DISPUTE WITH AN EMPLOYER.   A FELLOW     11:47

1    EMPLOYEE, YES, BUT NOT AN EMPLOYER.

2         I HAVE HAD TO SIGN THOSE WHOLE AGREEMENT THINGS.  IT

3    WAS WITH BUILD-A-BEAR AND BLOCKBUSTER.  YOU CAN'T, LIKE, GIVE

4    THE DESIGNS OUT, OR WHATEVER, AND THE WHOLE MARKETING THING.

5         THE PATENTS AND TRADEMARKS AND COPYRIGHTS, I DO HAVE    11:47

6    TO WORK WITH THAT, BECAUSE WITH THE WHOLE TATTOOING, WE DO

7    FLASH AND STUFF LIKE THAT.  IF YOU DON'T KNOW WHAT FLASH IS,

8    IT'S THE CARDS YOU PUT UP ON THE WALLS.  THEY PUT ALL OF THE

9    DESIGNS ON THEM.

10        HIGH SCHOOL GRADUATE.  I TOOK A COUPLE OF COURSES AT    11:47

11   THE LOCAL OCC IN ORANGE COUNTY, MAINLY FOR ART, ANATOMY, AP

12   DRAWING PORTFOLIO, AND JUST BASIC OTHER STUFF.

13        I CURRENTLY RESIDE INSIDE OF RIVERSIDE.  SINGLE.  MY

14   LADY, I DON'T KNOW, SHE WORKS ALONGSIDE ME AT MERVYN'S.  I

15   DON'T HAVE ANY CHILDREN, BUT I HAVE ONE COMING.  MY DAD WORKS  11:48

16   AS A PORTER IN PARAMOUNT.  MY MOM CLEANS BANKS.  MY OLDER

17   BROTHER IS A MANAGER AT TARGET.  MY OLDER SISTER IS A

18   DIRECTOR/SUPERVISOR AT ANOTHER MERVYN'S, AND STUFF LIKE THAT.

19   AND THEN THE OTHER ONE, HE'S JUST KIND OF A BUM AROUND THE

20   HOUSE.                                                       11:48

21        THIS IS MY FIRST TIME DOING THIS.  I DON'T KNOW IF

22   YOU GUYS CAN TELL.

23        I AM FAMILIAR WITH MATTEL AND BARBIE DOLLS.  I USED

24   TO HAVE -- NO, I DID NOT HAVE BARBIES, BUT MY NEIGHBOR, SHE

25   USED TO HAVE BARBIE DOLLS, AND SHE'D ASKED ME TO PLAY WITH HER  11:49

1    KEN DOLL.

2            THE BRATZ DOLLS, I HAVE NIECES; SO, LIKE, THEY'RE ALL

3    INTO THAT THING, YOU KNOW, AND THEY GOT ALL OF THE LITTLE

4    OUTFITS AND STUFF.

5            NO, I'VE NEVER BEEN SUED OR GOING TO SUE.

6            AND NO ON 15.  I THINK I'LL BE COOL.

7            THE COURT:  VERY GOOD.

8            YOU INDICATED YOU HAD A DISPUTE WITH AN EMPLOYEE?

9            PROSPECTIVE JUROR:  YEAH.  THERE'S ANOTHER MALE

10   EMPLOYEE.  HE GAVE ME A HUG, LIKE, FROM BEHIND, WHILE I WAS AT

11   THE REGISTER.  SO I DIDN'T LIKE IT, AND I TOLD HIM TO BACK OFF.

12   AND HE DIDN'T LIKE IT THAT I TOLD HIM TO BACK OFF, SO THEN HE

13   ASKED ME TO STEP OUTSIDE, AND, YOU KNOW, HISTORY IS HISTORY.

14           THE COURT:  YOU SETTLED IT OUTSIDE?

15           PROSPECTIVE JUROR:  YEAH.

16           THE COURT:  THE EMPLOYMENT AGREEMENT AT BUILD-A-BEAR,

17   ANYTHING ABOUT SIGNING THAT THAT CAUSED YOU CONCERN, OR DO YOU

18   HAVE ANY FEELINGS ABOUT IT?

19           PROSPECTIVE JUROR:  THE FIRST ONE THAT I HAD WAS,

20   LIKE, THE WHOLE INVENTIONS AGREEMENT, BECAUSE THEY HAVE, LIKE,

21   THAT WHOLE FLUFFER THING, WHATEVER, AND, LIKE, THEY HAVE A

22   SPECIAL DESIGN FOR IT; NOT ANYBODY ELSE DOES IT; SO YOU HAVE

23   TO, LIKE, SIGN OFF ON IT.

24           BLOCKBUSTER WAS TOTALLY DIFFERENT, BECAUSE THEY HAD

25   IT FOR MARKETING AND NEW IDEAS THAT THEY HAD.  BECAUSE WE'D

11:49

11:49

11:50

11:50

11:50

1    HAVE, LIKE, NEW KINDS OF WAYS OF SELLING THINGS TO PEOPLE, YOU

2    KNOW, LIKE, ONE WEEK, AND THEN THE NEXT WEEK, IT WOULD CHANGE.

3    JUST THAT.

4          THE COURT:  ANY STRONG OPINIONS ABOUT THOSE, ONE WAY

5    OR THE OTHER, THE FACT THAT YOU HAD TO SIGN THEM?                    11:50

6          PROSPECTIVE JUROR:  NOT A STRONG OPINION.  IT'S JUST,

7    LIKE -- IT'S KIND OF WHAT SOME BUSINESSES DO AND SOME DON'T.  I

8    DON'T KNOW.

9          THE COURT:  AS FAR AS THE --

10         PROSPECTIVE JUROR:  MY TATTOOING THING?                        11:51

11         THE COURT:  -- THE COPYRIGHTS AND THE TATTOOS, IF YOU

12   COULD EXPLAIN THAT AGAIN.  I WASN'T REALLY SURE.

13         PROSPECTIVE JUROR:  WHEN YOU MAKE AN ORIGINAL DESIGN,

14   OR SOMETHING LIKE THAT, JUST SO SOMEONE ELSE WON'T TAKE YOUR

15   DESIGN OR STEAL IT, YOU HAVE TO GET IT COPYRIGHTED; SO YOU HAVE     11:51

16   TO GO DOWN TO THE CITY AND COUNTY AND STUFF LIKE THAT AND GET

17   THEM COPYRIGHTED.  SO WE MAKE, LIKE, BIG SACKS ABOUT LIKE THIS

18   OF ORIGINAL DESIGNS THAT WE USE THAT ARE TOTALLY MARKETED, AND

19   THEY HAVE OUR COMPANY'S LITTLE INK; IT'S GOT IT ALL PLASTERED

20   OVER IT, AND IT'S GOT THE DATE TO IT AND ALL OF THAT.               11:51

21         THE COURT:  AS YOU HEARD FROM THE OPENING STATEMENTS,

22   OR THE MINI OPENING STATEMENTS, THE ISSUE OF COPYRIGHT

23   INFRINGEMENT IS GOING TO BE INVOLVED IN THIS CASE.  PART OF

24   WHAT I WILL DO AT THE END OF THE EVIDENCE IS BE INSTRUCTING YOU

25   AND ALL OF THE MEMBERS OF THE JURY WHO ARE PART OF THE JURY         11:51

1   PANEL ON THE LAW CONCERNING COPYRIGHT THAT YOU HAVE TO APPLY TO

2   THIS CASE.

3        WOULD YOU BE ABLE TO PUT ASIDE, PERHAPS, ANYTHING

4   THAT YOU MIGHT HAVE HEARD FROM YOUR FRIENDS AT THE TATTOO

5   PARLOR ABOUT COPYRIGHT AND JUST FOLLOW THE LAW THAT THE COURT       11:52

6   GIVES YOU?

7        **PROSPECTIVE JUROR:**  AS IT APPLIES, YES.

8        **THE COURT:**  OKAY.  VERY GOOD.

9        THANK YOU VERY MUCH, MR. CASAS.

10       IF YOU'D PASS THE MICROPHONE TO MS. JOHNSTONE.       11:52

11       **PROSPECTIVE JUROR:**  MY NAME IS RHONDA JOHNSTONE.

12       I AM A READING TEACHER, A HIGH SCHOOL READING

13  TEACHER.  I'VE BEEN THERE FOR -- I'M JUST FINISHING UP MY NINTH

14  YEAR.  BEFORE THAT, I WAS A STUDENT FOR SIX AND A HALF YEARS.

15  BEFORE THAT, DAY CARE.  JUST MINIMUM WAGE JOBS.  NOTHING BIG.       11:52

16       I'VE NEVER BEEN IN A SERIOUS DISPUTE.  NEVER HAD TO

17  SIGN AN AGREEMENT.  NEVER HAD ANY PATENTS.  NOTHING WITH THAT.

18       I HAVE A BACHELOR'S DEGREE IN ELEMENTARY EDUCATION,

19  WITH A MINOR IN READING.  I HAVE A MASTER'S DEGREE IN READING

20  EDUCATION, PLUS 34 HOURS, SOMETHING LIKE THAT.       11:53

21       I LIVE IN ALTA LOMA.  I'M MARRIED.  MY SPOUSE, AT

22  THIS TIME, SINCE HE'S A TRUCKER, HE CAN'T AFFORD THE FUEL, SO

23  HE IS A HOME HUSBAND.  HE SAID HE'S GOING TO RETIRE.  FOR THE

24  PAST 20 YEARS, HE'S BEEN A TRUCKER.

25       WE HAVE NO CHILDREN.  NO OTHER ADULTS IN THE HOUSE.       11:53

1        I HAVE NEVER BEEN ASSIGNED TO A JURY.

2        I KNOW MATTEL BY THEIR ADVERTISING AND PRODUCTS.  I

3  DON'T HAVE KIDS, SO I'VE NEVER REALLY BOUGHT ANY.  AND I PLAYED

4  WITH THE TRUCKS INSTEAD OF THE DOLLS.

5        I'VE NEVER HEARD OF MGA OR THE BRATZ.                    11:53

6        AND I'VE NEVER BEEN SUED, NEVER BEEN INVOLVED.

7        AND I CAN'T SEE WHY I CAN'T BE A FAIR JUROR.

8        **THE COURT:**  THANK YOU, MA'AM.

9        MR. WAGES.

10       **PROSPECTIVE JUROR:**  DAVID WAGES.  I'VE BEEN A TRUCK    11:53

11  DRIVER FOR THE LAST 18 YEARS.  I'M CURRENTLY WORKING IN THE

12  OFFICE.

13       NO FOR THREE, FOUR, AND FIVE.

14       HIGH SCHOOL EDUCATION.  CURRENTLY LIVE IN RIVERSIDE.

15  MARRIED.  WIFE WORKS AT A DOCTOR'S OFFICE IN BOOKKEEPING.  I    11:54

16  HAVE SIX CHILDREN.  THE OLDEST IS IN CARPET CLEANING; THE OTHER

17  TWO WORK IN WAREHOUSES; ONE IS PASSED AWAY; AND I'VE GOT ONE

18  LIVING IN THE HOUSE, GRADUATING THIS YEAR.

19       **THE COURT:**  GRADUATING HIGH SCHOOL?

20       **PROSPECTIVE JUROR:**  THIS YEAR, YES, SIR.             11:54

21       NEVER SERVED ON A JURY.

22       I'M FAMILIAR WITH MATTEL, BECAUSE DOING TRUCK

23  DRIVING, I'VE ACTUALLY PICKED UP FOR THEM.  HAD KIDS PLAY WITH

24  THE DOLLS AND STUFF.  NO REAL OPINIONS.

25       I HAVEN'T HEARD OF MGA.  I HAVE HEARD OF THE BRATZ       11:54

1    DOLLS.  NO OPINION ON THAT.

2              I'VE NEVER BEEN SUED.

3              AND I FEEL LIKE I COULD BE FAIR ON THE JURY.

4         **THE COURT:**  YOU'VE DONE SOME TRUCKING FOR MATTEL?

5         **PROSPECTIVE JUROR:**  YEAH.  JUST PICKING UP OUT OF THE    11:55

6    CITY OF INDUSTRY AND STUFF.  THAT'S ABOUT IT.

7         **THE COURT:**  NOTHING ABOUT THAT THAT WOULD AFFECT HOW

8    YOU WOULD VIEW MATTEL AS A PLAINTIFF?

9         **PROSPECTIVE JUROR:**  NO.  IT WAS JUST FREIGHT.

10        **THE COURT:**  VERY GOOD.  THANK YOU, SIR.    11:55

11        MR. EHLERS.

12        **PROSPECTIVE JUROR:**  MY NAME IS DAVID EHLERS.  I'M

13   RETIRED.  I'VE HAD ONE JOB.  I WORKED 40 YEARS FOR A

14   MANUFACTURER THAT MADE ELECTRIC GEAR MOTORS; WORKED MAINLY FOR

15   INSIDE SALES.  I DID SIGN AN EMPLOYMENT AGREEMENT.    11:55

16        **THE COURT:**  ANY FEELINGS ABOUT THAT?

17        **PROSPECTIVE JUROR:**  NOT AT ALL, NO.

18        I DON'T HAVE ANY EXPERIENCE WITH PATENTS, TRADEMARKS,

19   OR COPYRIGHTS.  I HAVE AN AA DEGREE IN BUSINESS AND BUSINESS

20   MANAGEMENT.    11:56

21        I LIVE IN BANNING.  I'M MARRIED.  MY WIFE, WHO'S ALSO

22   RETIRED, SHE WAS A SECRETARY.  I HAVE THREE DAUGHTERS.  THE

23   OLDEST ONE IS 40; SHE'S A TEACHER.  MY MIDDLE DAUGHTER, SHE'S

24   37, AND SHE WORKS FOR THE COUNTY OF RIVERSIDE.  AND MY YOUNGEST

25   DAUGHTER IS 34, AND SHE'S ALSO A TEACHER.    11:56

1    I DON'T HAVE ANY ADULTS LIVING IN MY HOME.

2    I DID SIT ON TWO CRIMINAL CASES.  THE FIRST CASE, WE

3    DID COME TO A VERDICT; THE SECOND CASE, WE DID AND WE DIDN'T

4    COME TO A VERDICT.

5    **THE COURT:**  YOU DID COME TO A VERDICT IN THE SECOND        11:57

6    CASE?

7    **PROSPECTIVE JUROR:**  THE SECOND CASE, WE DID AND WE

8    DIDN'T.

9    **THE COURT:**  SO THERE WERE MULTIPLE COUNTS, I TAKE IT?

10    **PROSPECTIVE JUROR:**  NO.  THERE WERE TWO DEFENDANTS IN     11:57

11    ONE CASE.

12    **THE COURT:**  I SEE.  SO YOU FOUND FOR ONE AND NOT FOR

13    THE OTHER.

14    **PROSPECTIVE:**  RIGHT.

15    I AM VERY FAMILIAR WITH MATTEL, HAVING THREE                 11:57

16    DAUGHTERS.  I HAVE NO OPINION ON MATTEL ONE WAY OR THE OTHER.

17    I'M NOT FAMILIAR WITH MGA ENTERTAINMENT, BUT I AM

18    FAMILIAR WITH THE BRATZ DOLLS.  THE WAY I BECAME FAMILIAR IS, I

19    USED TO WORK FOR K-MART.  I WORKED FOR THEIR LOSS PREVENTION,

20    AND I WOULD CHECK THE RECEIPTS ON PEOPLE COMING IN AT THE     11:58

21    DOORS, AND THAT WAS ONE ITEM THAT WAS, A LOT OF TIMES, ON THE

22    RECEIPTS.  BUT THAT'S THE ONLY EXPERIENCE THAT I EVER HAD WITH

23    THEM.

24    **THE COURT:**  THAT EXPERIENCE WOULDN'T LEAD YOU TO

25    FAVOR ONE SIDE OR THE OTHER OR THINK HIGHLY OR LESS HIGHLY OF  11:58

1  ONE SIDE OR THE OTHER?

2         **PROSPECTIVE JUROR:**  RIGHT.

3         I WAS INVOLVED IN A PERSONAL LAWSUIT, WHICH WAS

4  SETTLED OUT OF COURT.

5         **THE COURT:**  ANYTHING ABOUT THE EXPERIENCE WITH THIS            11:59

6  LAWSUIT THAT WOULD AFFECT HOW YOU WOULD VIEW THIS LAWSUIT OR

7  LAWYERS OR THE PROCESS?

8         **PROSPECTIVE JUROR:**  NO, NOT AT ALL.

9         **THE COURT:**  OKAY.

10        **PROSPECTIVE JUROR:**  AND I BELIEVE I CAN BE FAIR AND            11:59

11 VERY IMPARTIAL.

12        **THE COURT:**  VERY GOOD.

13        ACTUALLY, WE'RE GOING TO STOP HERE BEFORE WE GO ON TO

14 MR. BULLARD, AND WE'RE GOING TO BREAK FOR OUR LUNCH.

15        COUPLE OF THINGS.  FIRST OF ALL, IN THE NEXT HOUR,            11:59

16 DON'T DISCUSS ANYTHING THAT WE'VE DONE THIS MORNING AMONGST

17 YOURSELVES OR WITH ANYBODY ELSE.  I'M GOING TO ASK YOU TO BE

18 BACK HERE PROMPTLY AT 1:00, SO WE CAN CONTINUE WITH THIS AND

19 GET THROUGH THIS AS QUICKLY AS WE CAN TODAY.  IT'S IMPORTANT

20 THAT YOU LOOK AROUND WHERE YOU'RE SEATED, BECAUSE I'M GOING TO            11:59

21 ASK YOU TO SIT EXACTLY WHERE YOU'RE SITTING RIGHT NOW.  IT'S

22 IMPORTANT THAT WE KEEP THIS ORDER.

23        IT'S PROBABLY EASIER FOR THE PEOPLE HERE IN THE JURY

24 BOX THAN FOR YOU OUT IN THE -- JUST TAKE A LOOK, AND I WILL SEE

25 YOU BACK HERE AT 1:00.            11:59

1          ALL RISE FOR THE JURY.

2          (WHEREUPON, PROSPECTIVE JURORS EXIT COURTROOM.)

3          **THE COURT:**  COUNSEL, WE'RE BACK ON THE RECORD OUTSIDE

4     THE PRESENCE OF THE JURY PANEL, WITH THE EXCEPTION OF

5     MICHAEL JELLEY.                                                          12:03

6          WOULD YOU PLEASE COME FORWARD.

7          I JUST RECEIVED A NOTE FROM YOU.

8          I CAN SAY "COUNSEL," BECAUSE I KNOW YOU GRADUATED

9     FROM LAW SCHOOL.  AT LEAST I CAN SPEAK TO YOUR CONSTITUTIONAL

10    LAW BACKGROUND.  WHY DON'T YOU GO AHEAD AND EXPLAIN TO THE          12:04

11    LAWYERS WHAT YOU PUT HERE IN THE NOTE TO THE COURT.

12         **PROSPECTIVE JUROR:**  I'M SCHEDULED TODAY TO RECEIVE AN

13    AWARD FROM THE POPE.  IT'S THE PRO ECCLESIA ET POTIFICE CROSS.

14    THE CEREMONY BEGINS AT 1:30 THIS AFTERNOON, FOLLOWED BY A

15    PRAYER SERVICE AT 4:00 P.M.                                          12:04

16         SINCE THIS IS ONCE IN A LIFETIME FOR MY WIFE AND

17    MYSELF, I WOULD LIKE TO BE ABLE TO ATTEND AND RECEIVE THIS

18    AWARD.

19         **MR. NOLAN:**  OF COURSE.

20         **MR. QUINN:**  NO PROBLEM, YOUR HONOR.                          12:04

21         **MR. NOLAN:**  WE HAVE NO OBJECTION TO THAT.

22         **THE COURT:**  VERY WELL.

23         THANK YOU FOR YOUR SERVICE THIS MORNING.  YOU'RE

24    EXCUSED, AND MY CONGRATULATIONS.

25         (WHEREUPON, MR. JELLEY EXITS COURTROOM.)                        12:04

TUESDAY, MAY 20TH, 2008              TRIAL DAY 1, MORNING SESSION

1        **THE COURT:**  A COUPLE OF THINGS THAT THE COURT WANTED

2   TO JUST BRING UP.  I'VE HAD A CHANCE NOW TO REVIEW THE DOCUMENT

3   THAT MR. NOLAN BROUGHT TO THE COURT'S ATTENTION YESTERDAY AT

4   THE END OF THE DAY.  THIS IS THE DOCKET 3705.  IT'S THE

5   SUPPLEMENTAL DECLARATION OF MS. BOROGARD, IN FURTHER SUPPORT OF     12:05

6   MGA PARTY'S MOTION FOR PARTIAL SUMMARY JUDGMENT.  IT GOES TO

7   THE STATUTE OF LIMITATIONS ISSUE.

8        THE COURT WOULD LIKE A RESPONSE FROM MATTEL, AND I'D

9   LIKE THE RESPONSE BY NOON TOMORROW.

10       **MR. QUINN:**  VERY WELL, YOUR HONOR.                          12:05

11       **THE COURT:**  I'M GOING TO CONSIDER THIS, BUT I WANT TO

12  GIVE MATTEL AN OPPORTUNITY, GIVEN THE WAY THAT -- IT WAS

13  APPARENT THAT YOU HADN'T RECEIVED A COPY OF THIS IN ADVANCE OF

14  THE HEARING, SO I'D LIKE TO GIVE YOU A CHANCE TO DO THAT.

15       UNRELATED TO THAT, I'VE RECEIVED A LETTER FROM AN            12:05

16  AMY MYERS OF SAN PEDRO, CALIFORNIA.  WE RECEIVED THIS LATE IN

17  THE DAY YESTERDAY.  AND APPARENTLY, MATTEL HAS SUBPOENAED

18  AMY MYERS AS A WITNESS IN THIS CASE.  AND SHE WROTE A LETTER, A

19  LENGTHY LETTER, EXPLAINING WHY SHE WANTS TO BE EXCUSED FROM

20  HONORING THE SUBPOENA, ALONG WITH SOME DOCUMENTATION.             12:06

21       I'M GOING TO DIRECT THE COURTROOM DEPUTY TO FILE THE

22  LETTER AND THE SUPPORTING DOCUMENT.  I'M GOING TO TREAT THIS AS

23  A MOTION TO QUASH THE SUBPOENA, BEING BROUGHT PRO PER, AND I

24  WILL GIVE MATTEL AN OPPORTUNITY TO RESPOND TO THAT AS WELL.

25  THE COURT WILL TAKE THAT UP TOMORROW.  SO I'LL HAVE THAT FILED    12:06

1    AND SERVED ON BOTH SIDES.

2          MR. QUINN:   YOUR HONOR, I'M TOLD WE DON'T HAVE A COPY

3    OF THAT.

4          THE COURT:   I'LL MAKE SURE YOU GET A COPY OF IT.   IT

5    WILL BE FILED, AND A COPY WILL BE PROVIDED TO BOTH SIDES.          12:06

6          MR. NOLAN, YOU INDICATED AS I WAS WALKING OUT,

7    STEPPING OUT TO TAKE A BREAK, THAT YOU HAD A MATTER YOU WANTED

8    TO TAKE UP.

9          MR. NOLAN:   YOUR HONOR, YOU SAID AT SIDE-BAR THAT YOU

10   WERE GOING TO TAKE UP THIS "EVIDENCE ELIMINATOR" ISSUE OUTSIDE     12:06

11   THE PRESENCE OF THE JURY.   WE'RE OBVIOUSLY TROUBLED BY IT.

12   MR. QUINN SAID THAT I VIOLATED SOME MOTIONS *IN LIMINE*.

13         YOUR HONOR --

14         THE COURT:   THE COURT DIDN'T SAY THAT.   MR. QUINN

15   SAID THAT.                                                         12:07

16         MR. NOLAN:   I THOUGHT I SAID MR. QUINN.

17         THE COURT:   OKAY.   I'M SORRY.

18         MR. NOLAN:   I WOULD HAVE BEEN GENUFLECTING IF I

19   THOUGHT YOU HAD SAID IT.

20         BUT, YOUR HONOR, THE OTHER POINT THAT I WANTED TO            12:07

21   MAKE IS THAT ANOTHER MOTION *IN LIMINE* IN THIS CASE IS WHETHER

22   OR NOT MGA'S EMPLOYMENT CONTRACT HAS ANY RELEVANCE TO THIS

23   CASE.   OF COURSE, YOU HEARD IN HIS OPENING STATEMENT THAT HE

24   CLEARLY POINTED TO ISAAC LARIAN AND SAID THAT ISAAC LARIAN KNEW

25   IT BECAUSE HE HAS AN EMPLOYMENT AGREEMENT WHICH IS EXACTLY THE     12:07

1  SAME.

2        NOW, WHAT'S INTERESTING ABOUT THAT STATEMENT, YOUR

3  HONOR, FIRST OF ALL, IT IS SUBJECT TO A MOTION *IN LIMINE*.

4  SECOND OF ALL, IT'S NOT TRUE.  MGA'S EMPLOYMENT AGREEMENT IS

5  DIFFERENT.  THAT'S ONE OF THE REASONS WHY WE SAID IT WAS         12:07

6  IRRELEVANT IN THIS CASE.  BUT MOST IMPORTANTLY, IN EXAMINATION,

7  MR. LARIAN TESTIFIED THAT HAD AN EMPLOYEE WHO HAD SIGNED HIS

8  EMPLOYMENT AGREEMENT DONE A DESIGN UNRELATED TO WHAT HE DID FOR

9  MGA, AND DID IT AT NIGHT, NOT BEFORE HE EVEN GOT TO MGA,

10  MR. LARIAN WOULD NOT CONSIDER HIM BOUND TO THE EMPLOYMENT        12:08

11  CONTRACT.

12        MR. QUINN KNEW THAT, AND YET, HE SAID THAT IN FRONT

13  OF THE JURY AGAIN.

14        THEN THE LAST POINT, YOUR HONOR, IS THAT IN ONE OF

15  THE COMMENTS THAT WAS MADE TO THE GENTLEMAN WHO DOES TATTOOS,    12:08

16  YOU INDICATED TO HIM THAT BASED ON THE OPENING STATEMENTS, YOU

17  KNOW THAT THERE'S GOING TO BE COPYRIGHT ISSUES IN THIS CASE.

18        IT'S OUR VIEW WE MAY NEVER GET TO THOSE COPYRIGHT

19  ISSUES, YOUR HONOR.  SO I WOULD JUST ASK FOR A LITTLE BIT OF

20  INDULGENCE IN SAYING WE MAY HAVE COPYRIGHT ISSUES IN THE        12:08

21  FUTURE, BUT CERTAINLY, THAT'S NOT MY BIGGEST CONCERN.  MY

22  BIGGEST CONCERN IS JUST WHAT I BELIEVE TO BE A WILLFUL AND

23  BLATANT ATTEMPT TO POISON, WITHIN FIVE MINUTES, CLEARLY

24  VIOLATING YOUR COURT ORDER.

25        FRANKLY, ONE MINUTE AFTER, OR FIVE MINUTES AFTER, I       12:08

1    AM CALLED INTO QUESTION ABOUT A PRESS RELEASE THAT I ISSUED IN

2    AN ATTEMPT TO INFLUENCE THE JURY, WHICH NOBODY EVEN READ.  BUT

3    THIS ONE WAS BLATANT.  WHAT I SAID AT SIDE-BAR, I REPEAT,

4    YOUR HONOR:  I DON'T KNOW HOW YOU CAN UNRING THAT BELL ABOUT

5    "EVIDENCE ELIMINATOR," AND "DESTROYING EVIDENCE."  THAT'S WHAT          12:09

6    WAS SAID:  'EVIDENCE ELIMINATOR' AND 'DESTROYING EVIDENCE' AND

7    'A MASSIVE CONSPIRACY.'

8              **THE COURT:**  SO, COUNSEL, WHAT ARE YOU MOVING FOR?

9              **MR. NOLAN:**  YOUR HONOR, I DON'T THINK WE CAN KEEP

10   THIS PANEL.  I AM LOATHED TO GO THROUGH THIS EXERCISE.  I KNOW          12:09

11   THE BURDEN.  BUT IT'S NOT MY DOING.  I HAVE TO REPRESENT THE

12   BEST INTEREST OF MY CLIENT.  I DO.  I DON'T WANT TO DO IT, BUT

13   I HAVE NO OTHER CHOICE.  IF THIS WAS A TRIAL GOING ON RIGHT NOW

14   AND "EVIDENCE ELIMINATOR" WAS MENTIONED, I'D ASK THE COURT FOR

15   A MISTRIAL.                                                            12:09

16             **THE COURT:**  SO YOU'RE MAKING A MOTION TO DISCHARGE

17   THIS PANEL AND RECONSTITUTE THE PANEL?

18             **MR. NOLAN:**  YES, YOUR HONOR.

19             **THE COURT:**  MR. QUINN?

20             **MR. QUINN:**  YOUR HONOR, THERE ARE SOMETHING LIKE 30       12:09

21   OR 40 MOTIONS *IN LIMINE*.  I STILL DON'T KNOW IF THERE'S ONE

22   DIRECTED TO "EVIDENCE ELIMINATOR."  IF THERE IS ONE DIRECTED TO

23   "EVIDENCE ELIMINATOR," THEN THAT WAS MY ERROR.

24             WE BELIEVE HE VIOLATED A COUPLE OF MOTIONS *IN LIMINE,*

25   AND I DON'T REALLY HEAR HIM DISPUTING THAT THERE ARE MOTIONS           12:10

1    *IN LIMINE* ON THE SUBJECTS WHICH HE BROACHED.  BUT I THINK THIS

2    IS MUCH ADO ABOUT NOTHING.  THIS IS A FIVE-MINUTE, VERY

3    PRELIMINARY OPENING STATEMENT.  WE'RE GOING TO HAVE RULINGS ON

4    MOTIONS *IN LIMINE*, ASSUMING THAT IF THERE IS ONE ON "EVIDENCE

5    ELIMINATOR," WHICH I DON'T KNOW THAT THERE IS, WE'RE GOING TO                12:10

6    HAVE A RULING ON THAT.  I CAN'T IMAGINE THAT IT'S NOT GOING TO

7    COME IN.

8            I DON'T THINK AT THIS POINT THERE'S ANY BASIS FOR

9    DISMISSING THIS PANEL AT THIS VERY PRELIMINARY EARLY STAGE.  I

10   MEAN, WE'RE GOING TO HAVE OPENING STATEMENTS NEXT WEEK, AND THE              12:10

11   TRIAL IS GOING TO START.  I DON'T THINK ANYBODY'S MINDS HAVE

12   BEEN AFFECTED OR CHANGED BY ANYTHING EITHER ONE OF US SAID.

13           **THE COURT:**  THANK YOU, COUNSEL.

14           THE COURT DENIES THE MOTION TO DISCHARGE THE PANEL.

15           HOWEVER, I WILL AFFORD LEAVE TO EITHER COUNSEL, IF,                  12:11

16   AT THE END OF THIS TRIAL -- WHICH WILL BE A MONTH AND A HALF

17   FROM NOW, OR TWO MONTHS -- IF THEY STILL BELIEVE THAT SOMETHING

18   THAT WAS STATED AT THE OPENING MINI STATEMENT NEEDS A CURATIVE

19   INSTRUCTION, THE COURT WILL CERTAINLY PROVIDE THAT AND GIVE

20   LEAVE TO COUNSEL TO PROPOSE THAT TO THE COURT; BUT I'M NOT                   12:11

21   GOING TO DISCHARGE THIS PANEL AT THIS POINT.

22           I DO WANT TO TAKE ISSUE, THOUGH, MR. QUINN -- THE

23   NUMBER OF MOTIONS *IN LIMINE*, THE NUMBER OF ORDERS THAT THIS

24   COURT MUST ISSUE WITH RESPECT TO THAT, IS NOT GOING TO BE AN

25   EXCUSE IN THE FUTURE AS TO WHY IT IS THAT YOU'RE NOT FAMILIAR               12:11

1   WITH WHAT THE MOTIONS *IN LIMINE* ARE OR WHAT THE COURT'S ORDERS

2   ARE.   THAT'S SIMPLY NOT GOING TO BE AN EXCUSE.

3           **MR. QUINN:**   UNDERSTOOD, YOUR HONOR.

4           **THE COURT:**   VERY WELL.

5           AS FAR AS WHERE WE GO FROM HERE -- WE'RE IN THE                    12:11

6   MIDDLE OF VOIR DIRE -- I SUPPOSE IN ADDITION TO THE CURATIVE

7   INSTRUCTION, I WILL ALSO AFFORD COUNSEL ON BOTH SIDES AN

8   OPPORTUNITY TO EXPLORE WHETHER ANYTHING THAT THEY'VE HEARD UP

9   TO THIS POINT IN ANY WAY AFFECTS HOW THEY VIEW EITHER SIDE.

10          THE COURT APPRECIATES MR. NOLAN'S COMMENTS, AND I             12:12

11  WILL BE MINDFUL.   MY EXPLORATION OF COPYRIGHT LAW WAS SIMPLY TO

12  EXPLORE WHETHER OR NOT TATTOO PARLOR OWNERS' VIEWS OF COPYRIGHT

13  MIGHT INFLUENCE HIS OWN.   THAT'S ALL THAT WAS, AND THAT HE

14  WOULD UNDERSTAND THAT ANY INSTRUCTION THE COURT MIGHT GIVE IN

15  THE FUTURE WOULD TRUMP THAT.                                              12:12

16          IN ANY EVENT, I THINK THAT WE CAN PROCEED HERE.

17          I DON'T MEAN TO MAKE LIGHT OF THE CONCERNS, BECAUSE I

18  WANT BOTH COUNSEL TO PAY VERY CAREFUL ATTENTION TO THE

19  PARAMETERS OF WHAT IS AND WHAT IS NOT PERMISSIBLE IN OPENING

20  STATEMENTS.   I JUST DON'T THINK THAT WHAT WE HAVE RIGHT HERE      12:12

21  CANNOT BE CURED.   AND MOREOVER, WHEN I WEIGH THAT AND I BALANCE

22  THAT AGAINST THE EXPENSE OF LITERALLY STARTING ALL OVER AGAIN,

23  PUTTING OFF THIS TRIAL FOR TWO TO THREE MONTHS, AS WE

24  RECONSTITUTE ANOTHER JURY -- WE CAN'T SIMPLY CLICK OUR FINGERS

25  AND ALL OF A SUDDEN HAVE ANOTHER 80 PEOPLE WHO ARE TIME-          12:13

1   QUALIFIED.  IT'S A LENGTHY PERIOD OF TIME TO DO.

2           IF THERE WAS TRULY SOMETHING THAT I THOUGHT WAS SO

3   PREJUDICIAL THAT IT INFECTED THE FAIRNESS OF THE TRIAL, I WOULD

4   DO THAT, HOWEVER RELUCTANTLY I MIGHT DO THAT.  I DON'T THINK

5   THAT'S WHAT WE HAVE HERE.  I THINK A COMBINATION OF APPROPRIATE       12:13

6   VOIR DIRE AND CURATIVE INSTRUCTIONS CAN ADDRESS ANY PREJUDICE

7   THAT MAY HAVE BEEN INFECTED WITH THE OPENING STATEMENTS.

8           HAVING SAID THAT, COUNSEL, BE REALLY CAREFUL DURING

9   YOUR FORMAL OPENING STATEMENTS.

10          ANYTHING FURTHER?                                            12:13

11          MR. NOLAN:  I KNOW THE COST AND THE DELAY FACTOR.  IT

12  WAS HEARTFELT IN MAKING THE REQUEST.  IT IS, FOR ME, A VERY

13  SERIOUS ISSUE.

14          I DO THINK, THOUGH, THAT WHAT'S INTERESTING IS, WE

15  SHOULD, BEFORE WE DO THE OPENING STATEMENTS, HAVE, PERHAPS,          12:13

16  JUST A FEW MINUTES DISCUSSION AS TO WHAT'S IN AND WHAT'S OUT OF

17  THIS CASE.  AND I ASSUME THAT THAT'S GOING TO BE THE CASE WITH

18  RESPECT TO THE MOTIONS *IN LIMINE.*

19          THE COURT:  THAT'S PART OF THE PROBLEM.  WE HAVEN'T

20  REALLY HAD OUR FINAL PRETRIAL CONFERENCE YET, AND THAT'S            12:14

21  SOMETHING WHICH I HOPE TO DO THROUGH THE PRETRIAL CONFERENCE

22  ORDER, TO MAKE IT REALLY CLEAR WHAT'S IN AND WHAT'S OUT.  AND

23  WE'LL HAVE THE BENEFIT OF HAVING THE COURT HAVING RULED ON

24  MOTIONS *IN LIMINE,* HAVING FULLY RULED ON THE MOTIONS FOR

25  SUMMARY JUDGMENT, AND THE FINAL PRETRIAL CONFERENCE ORDER, AS        12:14

1    WE GO INTO THOSE OPENING STATEMENTS.

2            MR. NOLAN:   RIGHT.   BECAUSE WE WILL BE ARGUING

3    "EVIDENCE ELIMINATOR," ESPECIALLY NOW THAT CARTER BRYANT IS NOT

4    IN THE CASE.   AND US NOT BEING INVOLVED IN THAT AT ALL -- I

5    DON'T WANT TO ARGUE THAT.                                        12:14

6            I SIMPLY WANT TO LEAVE ON THIS POINT:   IT IS SIMPLY

7    THE TWO WORDS, "EVIDENCE ELIMINATOR," THAT HAS SUCH A STENCH TO

8    IT THAT I SUSPECT -- AND NOBODY REMEMBERS WHAT I SAID, BUT THEY

9    PROBABLY ARE GOING TO --

10           THE COURT:   COUNSEL, I'VE HEARD YOUR ARGUMENTS ON THE   12:14

11   MOTION, AND THE COURT HAS RULED ON THE MOTION.

12           UNLESS YOU'RE MAKING A MOTION FOR RECONSIDERATION --

13           MR. NOLAN:   NO, NO, NO.   I WAS JUST GOING TO REVISIT

14   IT AT THE END OF THE TRIAL.

15           THE COURT:   MR. ZELLER?                                 12:15

16           MR. ZELLER:   THANK YOU, YOUR HONOR.

17           I DON'T KNOW IF THIS IS THE APPROPRIATE TIME TO TALK

18   ABOUT LOGISTICS, BUT I THINK AT SOME POINT WE SHOULD TALK JUST

19   ABOUT THE ORDER IN WHICH WE'LL TAKE THE VARIOUS MOTIONS THAT

20   ARE COMING UP, ON OUR SIDE ANYWAY; AND I SUSPECT THEY'LL BE     12:15

21   TRUE ON THE OTHER SIDE AS WELL.   WE HAVE DIVIDED THEM UP, AND,

22   PERHAPS, GIVING SOME PEOPLE SOME IDEA OF WHEN THE MOTIONS -- OR

23   AT LEAST THE ORDER IN WHICH WE'LL TAKE THE MOTIONS IN LIMINE.

24           THE COURT:   THE ORDER OF THE MOTIONS IN LIMINE?

25           MR. ZELLER:   YES.                                      12:15

1        **THE COURT:**  THE COURT HAS ITS OWN THOUGHTS.  I HAVE

2   REVIEWED THE MOTIONS *IN LIMINE*.  AND, FOR EXAMPLE, I PLAN ON

3   TAKING THE VARIOUS MOTIONS *IN LIMINE* CONCERNING THE EXPERT

4   WITNESSES TOGETHER.  THAT'S KIND OF ONE CATEGORY OF MOTIONS

5   *IN LIMINE*.  THERE ARE OTHER CATEGORIES THAT RELATE TO ACTUAL          12:15

6   PARTICULAR ITEMS OF EVIDENCE.

7        PERHAPS, THE EASIEST THING FOR ME TO DO WOULD BE --

8   I'M HOPEFUL WE'RE GOING TO BE ABLE TO GET THROUGH THIS JURY

9   SELECTION TODAY.  I WILL, AT LEAST BY TOMORROW MORNING, BE ABLE

10  TO ADVISE YOU OF THAT.  I MAY NOT BE ABLE TO DO SO BEFORE          12:16

11  TOMORROW MORNING.  I STILL HAVE A LOT OF WORK MYSELF TO DO ON

12  THE MOTIONS *IN LIMINE* THIS EVENING.  AND I WANT TO WORK

13  TONIGHT, AS WELL, ON THE ORDERS FROM YESTERDAY.  I'M STILL

14  GOING THROUGH THAT.

15       I'LL DO THE BEST I CAN, MR. ZELLER.          12:16

16       **MR. ZELLER:**  FAIR ENOUGH, YOUR HONOR.  I

17  APPRECIATE IT.

18       THE OTHER MOTION THAT I BELIEVE IS EITHER BRIEFED OR

19  IS ALMOST COMPLETED WITH ITS BRIEFING IS THE PALMERI MOTION,

20  WHICH I BELIEVE THERE MAY HAVE BEEN SOME SORT OF STIPULATED          12:16

21  SCHEDULE THAT PUTS ITS HEARING THIS TIME THIS WEEK.  SO I WAS

22  WONDERING IF THAT WAS SOMETHING WE WOULD DEAL WITH IN THE

23  STREAM OF THESE OR IF THERE WOULD BE A --

24       **THE COURT:**  I BELIEVE SO.  TO BE HONEST, I HAVEN'T

25  LOOKED AT THAT MOTION YET.  I WISH I COULD GIVE YOU MORE.          12:16

1    I WAS JUST HANDED A NOTE BY MR. HOLMES.  I'LL JUST

2   READ IT:  "JUDGE, NUMBER 17, MR. STUART WEINER, NOTICED THAT

3   A," QUOTE, UNQUOTE, "SKULL CAP" -- AND IT'S HIS WORDS -- "IS

4   BEING WORN BY THE GENTLEMAN ON THE RIGHT SIDE GALLERY.  HE SAYS

5   IT SHOULD BE REMOVED IN THE COURTROOM."                          12:17

6    THAT'S A NOTE; THAT'S MR. WEINER'S OBSERVATION.  I'LL

7   LEAVE IT TO YOU TO TAKE THAT AS YOU WISH.

8    HAVE A GOOD LUNCH.  I'LL SEE YOU AT 1:00.

9   **THE CLERK:**  COURT STANDS IN RECESS.

10    (THIS CONCLUDES TRIAL DAY ONE, MORNING SESSION.)          12:17

11

12

13

14

15

16

17

18                         CERTIFICATE

19

20   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.
23

24   _____          5-21-08
     THERESA A. LANZA, CSR, RPR          _____
25   FEDERAL OFFICIAL COURT REPORTER       DATE

TUESDAY, MAY 20TH, 2008              TRIAL DAY 1, MORNING SESSION