1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                 EASTERN DIVISION

4                     - - -

5      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                     - - -

7   MATTEL, INC.,                    )
                                     )
8                    Plaintiff,      )
                                     )
9          vs.                       )  No. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, inc., et. Al.,)
                                     )
11                   Defendants.     )
    _____)  MORNING SESSION
12  AND CONSOLIDATED ACTIONS,        )
    _____)

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                RIVERSIDE, California

17             WEDNESDAY, MAY 21, 2008

18                   12:45 P.M.

19

20

21

22

23             THERESA A. LANZA, RPR, CSR
             FEDERAL Official Court Reporter
24             3470 12th Street, Rm. 134
             RIVERSIDE, California  92501
25                  951-274-0844
                WWW.THERESALANZA.COM

```
 1  APPEARANCES:

 2
    On behalf of MATTEL, INC.:
 3
                            QUINN EMANUEL
 4                          By:  JOHN QUINN
                            BY:  JON COREY
 5                          BY:  MICHAEL T. ZELLER
                            BY:  HARRY OLIVAR
 6                          BY:  TIMOTHY ALGER
                            865 S. FIGUEROA STREET,
 7                          10TH FLOOR
                            LOS ANGELES, California  90017
 8                          213-624-7707

 9
                            STROOCK & STROOCK & LAVAN LLP
10                          BY:  MICHAEL J. NIBORSKI
                            2029 CENTURY PARK EAST
11                          LOS ANGELES, CA  90067-3086
                            310-556-5800
12

13
    ON BEHALF OF MGA ENTERTAINMENT:
14
                            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
15                          BY:  THOMAS J. NOLAN
                            BY:  JASON RUSSELL
16                          300 SOUTH GRAND AVENUE
                            LOS ANGELES, CALIFORNIA  90071-3144
17                          213-687-5000

18
    ON BEHALF OF 3RD PARTY CHRIS PALMERI:
19
                            DAVIS, WRIGHT, TREMAINE LLP
20                          BY:  ALONZO WICKERS IV
                            865 SOUTH FIGUEROA STREET,
21                          SUITE 2400
                            LOS ANGELES, CALIFORNIA  90017-2566
22                          213-633-6865

23

24

25
```

MAY 21, 2008                    MORNING SESSION - MOTIONS IN LIMINE

1                              i N D E X

2                                                                Page

3    MOTIONS IN LIMINE............................    4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        RIVERSIDE, CALIFORNIA; WEDNESDAY, MAY 21, 2008; 12:47 P.M.

 2                              -oOo-

 3        THE CLERK:  CALLING ITEM NUMBER ONE, CASE NUMBER

 4   CV 04-09049-SGL, MATTEL, INC. VERSUS MGA ENTERTAINMENT, INC.,

 5   AND RELATED ACTIONS.

 6        MAY WE HAVE COUNSEL IN THIS MATTER PLEASE STATE YOUR

 7   APPEARANCES FOR THE RECORD.

 8        MR. QUINN:  JOHN QUINN FOR MATTEL.

 9        MR. ZELLER:  MIKE ZELLER ON BEHALF OF MATTEL.

10        MR. ALGER:  TIMOTHY ALGER FOR MATTEL.                    -02:-

11        MR. NOLAN:  TOM NOLAN, JASON RUSSELL, LAUREN AGUIAR,

12   DAVID HANSON ON BEHALF OF MGA PARTIES.  THEY WILL BE MAKING

13   SOME OF THE ARGUMENTS ON THE MOTIONS IN LIMINE TODAY AS WELL.

14        MR. WICKERS:  AL WICKERS ON BEHALF OF CHRIS PALMERI,

15   NONPARTY DEFENDANT.                                          -02:-

16        THE COURT:  GOOD AFTERNOON.

17        I UNDERSTAND THAT YOU HAVE AN OBLIGATION IN DOWNTOWN

18   LOS ANGELES LATER?

19        MR. WICKERS:  I DO, YOUR HONOR.

20        THE COURT:  VERY GOOD.                                  -02:-

21        WHAT I WANT TO COVER THIS AFTERNOON, WHAT THE COURT

22   IS PREPARED TO COVER, IS -- I HAVE FOUR DISCOVERY MOTIONS.  I

23   HAVE 30 MOTIONS IN LIMINE.  I HAVE THE ISSUE REGARDING THE

24   GLOBAL ORDER UNSEALING THE RECORD, WHICH I WANT TO TAKE UP WITH

25   BOTH PARTIES, BECAUSE AS I INDICATED BEFORE THIS TRIAL STARTED, -02:-
```

1 I WANT TO MAKE SURE THAT THE ONLY THINGS THAT REMAIN UNDER SEAL

2 IN THE CLERK'S OFFICE ARE THINGS FOR WHICH GOOD CAUSE HAS BEEN

3 ESTABLISHED, SO THAT THERE'S A TRANSPARENCY TO THIS WHOLE

4 PROCESS.

5          I THINK THAT'S IT.                                    -02:-

6          BUT WHAT I WANT TO TAKE OUT OF ORDER IS THE DISCOVERY

7 ISSUE RELATED TO THE DEPOSITION FOR CHRISTOPHER PALMERI, SO

8 COUNSEL CAN GET ON HIS WAY.

9          **MR. WICKERS:**  THANK YOU VERY MUCH, YOUR HONOR.

10          **THE COURT:**  SO WHY DON'T WE BEGIN WITH THAT ONE.    -02:-

11          MR. ALGER.

12          **MR. ALGER:**  MICHAEL NIBORSKI HAS BEEN HANDLING THIS

13 PARTICULAR MATTER FOR MATTEL.  HE'S FROM THE STROOCK FIRM.

14 WE'VE HEARD HIM BEFORE.  HE'LL BE APPEARING FOR MATTEL ON THIS.

15          **THE COURT:**  VERY GOOD.                            -02:-

16          SO WHY DON'T YOU MAKE AN APPEARANCE, COUNSEL, IF YOU

17 WOULD.

18          **MR. NIBORSKI:**  MICHAEL NIBORSKI FROM STROOCK, STROOCK

19 & LAVAN ON BEHALF OF MATTEL.

20          **THE COURT:**  VERY GOOD.  GOOD AFTERNOON, MR. NIBORSKI.  -02:-

21          SO WHAT I HAVE BEFORE ME, AND WHAT I'VE REVIEWED, IS

22 A MOTION OBJECTING TO THE DISCOVERY MASTER'S MAY 8, 2008 ORDER,

23 DENYING MATTEL'S MOTION FOR RECONSIDERATION OF THE FEBRUARY 26,

24 2008 ORDER, DENYING THE MOTION TO COMPEL THE DEPOSITION OF

25 CHRISTOPHER PALMERI.  I HAVE THE OPPOSITION THERETO THAT WAS    -02:-

1  SUBMITTED.  THERE'S A DECLARATION BY MR. NIBORSKI AND A

2  DECLARATION BY ROBIN ERICKSON.

3        THE QUESTION I'M GRAPPLING WITH ON THIS MOTION IS

4  WHETHER OR NOT THIS IS ONE OF THOSE EXCEPTIONAL CASES WHICH

5  WARRANTS PIERCING THE PRIVILEGE HERE, IN LIGHT OF THE ACTUAL          -02:-

6  DISCOVERY THAT HAS BEEN PRODUCED ON THIS PARTICULAR ISSUE, IN

7  LIGHT OF WHAT MATTEL IS ABLE TO MAKE OF THE BUSINESSWEEK

8  ARTICLE AND WHETHER THE FINDING OF THE DISCOVERY MASTER THAT IT

9  WAS NOT ONE OF THOSE EXCEPTIONS CASES IS CLEARLY ERRONEOUS.

10        **MR. NIBORSKI:**  I THINK I CAN SIMPLIFY IT BY --         -02:-

11  DEPENDING ON HOW YOU FRAME HOW RELEVANT THIS EVIDENCE IS TO THE

12  CASE WILL THEN DICTATE WHETHER IT'S A CUMULATIVE PIECE OF

13  EVIDENCE, AND EVEN WHETHER WE'VE EXHAUSTED OTHER POSSIBLE

14  AVENUES TO OBTAIN THIS EVIDENCE.

15        OUR POSITION FROM THE BEGINNING HAS BEEN THAT             -02:-

16  JUDGE INFANTE DEFINED THAT INITIAL RELEVANCE TOO BROADLY.  HE

17  DEFINED IT, ESSENTIALLY, AS ANOTHER PIECE OF IMPEACHMENT

18  AGAINST MR. LARIAN AT MGA.  AND THE REALITY IS THAT I THINK

19  WE'VE REALLY FOCUSED THIS, NOW THAT YOUR HONOR HAS SEEN SEVERAL

20  BRIEFS.                                                        -02:-

21        IF YOU ASSUME FOR THE SAKE OF ARGUMENT THAT THIS

22  PIECE OF EVIDENCE SPEAKS DIRECTLY TO WHETHER OR NOT THERE IS

23  EVIDENCE THAT MR. LARIAN ACTED IN ACCORDANCE WITH OUR

24  CONTENTION THAT MATTEL OWNED BRATZ -- LET'S ASSUME WE DEFINE IT

25  THAT WAY -- THEN, NUMBER ONE, WE CLEARLY HAVE A PIECE OF         -02:-

1   EVIDENCE THAT GOES TO A CENTRAL POINT IN THIS CASE.  MORE

2   IMPORTANTLY, THOUGH, IF WE LOOK AT THE CUMULATIVE ISSUE, WE

3   HAVE TWO OTHER REPORTERS THAT TESTIFIED IN THIS CASE.  THERE'S

4   THREE; TWO THAT HAVE TESTIFIED ABOUT STORIES MR. LARIAN HAS

5   TOLD ABOUT THE ORIGIN OF BRATZ.  HOWEVER, THOSE ARE NOT                -02:-

6   CUMULATIVE OF THIS PARTICULAR PIECE OF EVIDENCE.  THEY MAY

7   SPEAK TO A PARTICULAR STORY THAT MR. LARIAN TOLD TO THE

8   WALL STREET JOURNAL.  IN ONE CASE, HE DOESN'T EVEN DISCUSS THE

9   ISSUE OF WHO INVENTED BRATZ; HE JUST TALKS ABOUT THE ORIGIN OF

10  THE NAME "BRATZ."  SO I THINK THERE'S A DIFFERENCE BETWEEN              -02:-

11  SOMEBODY GIVING AN ARTICLE TO THE SAN FERNANDO VALLEY BUSINESS

12  JOURNAL AND SAYING X, AND AT THE KEY TIME FRAME, GOING TO THE

13  WORLD'S LARGEST BUSINESS MAGAZINE, AND KNOWING WHAT HE KNEW

14  ABOUT THE TRUE ORIGIN OF BRATZ, SAYING, 'THIS IS WHO INVENTED

15  IT; THIS IS HOW IT CAME TO BE.'                                        -02:-

16          **THE COURT:**  SO IS THERE ANY QUESTION THAT THERE IS

17  EVIDENCE THAT HE WENT TO BUSINESSWEEK; THAT HE HAD THE

18  INTERVIEW?

19          **MR. NIBORSKI:**  YES, THERE IS.  THERE ARE DOCUMENTS

20  PRODUCED IN DISCOVERY WHERE MR. PALMERI IS SENDING A CONFIRMING       -02:-

21  E-MAIL TO MR. LARIAN ACKNOWLEDGING THEIR INTERVIEW, ASKING FOR

22  CLARIFICATION AND CONFIRMATION OF CERTAIN --

23          **THE COURT:**  SO THERE IS NO QUESTION?  HE DID HAVE THE

24  INTERVIEW?

25          **MR. NIBORSKI:**  YES.                                       -02:-

1          **THE COURT:**  MAYBE I ASKED MY QUESTION POORLY.

2          SO THERE'S NO QUESTION, THEN, THAT HE DID HAVE THE

3   INTERVIEW?

4          **MR. NIBORSKI:**  CORRECT.

5          AND THERE IS ALSO, REALISTICALLY, NO QUESTION THAT          -02:-

6   MR. LARIAN SAID THE SPECIFIC STATEMENTS IN THE ARTICLE.  AND WE

7   TALKED ABOUT THIS AT THE LAST HEARING.  YES, THERE'S NO QUOTES.

8   YES, THERE IS NO -- MR. LARIAN SAID EXPLICITLY.  COLON.

9          HOWEVER, A REASONABLE READING OF THE ARTICLE -- AND,

10  AGAIN, WE ALSO TALKED ABOUT THIS AT THE LAST HEARING.  IF          -02:-

11  COUNSEL FOR BUSINESSWEEK HAD SAID, 'YOU KNOW WHAT, WE GOT THAT

12  FROM SOMEBODY ELSE; THAT WAS ACTUALLY A DIFFERENT SOURCE,' WE

13  WOULDN'T HAVE EVER FILED THIS MOTION AND WE WOULDN'T BE HERE.

14  THE ONLY REASON WE ARE HERE IS BECAUSE ON THIS SIDE OF THE

15  LEDGER, YOU'VE GOT, REALISTICALLY, A 15-MINUTE DEPOSITION,          -02:-

16  WHERE WE ARE GOING TO ASK, AFTER BACKGROUND, ONE QUESTION.  AND

17  WE'RE GOING TO DO IT AT A TIME AND A PLACE AND IN ANY CONTEXT

18  THAT IS CONVENIENT FOR MR. PALMERI, BECAUSE NO ONE HERE IS

19  DISPUTING --

20          **THE COURT:**  I UNDERSTAND THAT, COUNSEL.          -02:-

21          GET BACK TO THIS ISSUE THAT I WANT TO EXPLORE A

22  LITTLE BIT MORE; AND THAT'S WHAT YOU ALREADY HAVE WITHOUT THIS

23  DEPOSITION, IN TERMS OF THIS PARTICULAR ARTICLE, IN TERMS OF

24  WHAT YOU'RE GOING TO BE ABLE TO PRESENT OR WHAT MATTEL IS GOING

25  TO BE ABLE TO PRESENT TO THE JURY.          -02:-

1        YOU'VE GOT THE ARTICLE.  YOU'VE GOT THE STATEMENT.

2   YOU'VE GOT THE FACT THAT THE INTERVIEW TOOK PLACE.  THERE IS NO

3   QUESTION THAT MR. LARIAN IS NOT IN A POSITION, BASED ON HIS

4   DEPOSITION TESTIMONY, TO DENY THAT HE SAID IT, BECAUSE HE SAYS

5   HE CAN'T REMEMBER IF HE SAID IT OR HE DIDN'T.  YOU'RE GOING TO        -02:-

6   HAVE, AS YOU JUST SUGGESTED THERE, KIND OF THE REASONABLE

7   INFERENCE, BEING FROM THE CONTEXT OF THE ARTICLE AND THE WAY

8   IT'S PRESENTED, THAT HE PROBABLY DID SAY THAT.  I MEAN, THAT'S

9   A DECISION FOR THE JURY TO MAKE.

10        BUT IT'S NOT LIKE IT'S AN ALL OR NOTHING PROPOSITION,        -02:-

11   THAT YOU'RE NOT GOING TO GET A SUBSTANTIAL AMOUNT OF

12   EVIDENTIARY VALUE OF WHATEVER EVIDENTIARY VALUE THE ARTICLE

13   DOES HAVE.  AND I'M NOT PASSING OPINION ON WHAT IT HAS, BUT I'M

14   TRYING TO IDENTIFY THE MARGINAL INCREASE IN VALUE OF ACTUALLY

15   HAVING THE DEPOSITION, VIS-À-VIS THE VALUE THAT YOU ALREADY        -02:-

16   HAVE, BASED ON WHAT IS UNDISPUTED ABOUT THE ARTICLE.

17        **MR. NIBORSKI:**  CERTAINLY.  AND THIS TIES BACK INTO

18   THE ISSUE OF WHAT WAS ACTUALLY SAID IN THE DEPOSITION; THAT,

19   YES, MR. LARIAN SAID, AMBIGUOUSLY, 'I DON'T RECALL.  I MAY HAVE

20   SAID IT; I MAY NOT HAVE SAID IT.'  HE EVEN WENT SO FAR TO SAY,        -02:-

21   'WELL, THE STATEMENT IS PARTIALLY TRUE.'  THE REALITY IS, THE

22   ONLY WORD THAT MATTERS IN THE ENTIRE THING IS THE PRONOUN

23   "HE," HE MEANING MR. LARIAN.  WHETHER HIS CHILDREN WERE WEARING

24   HIPHUGGERS AT THE TIME ISN'T THE POINT THAT WE'RE TRYING TO

25   MAKE.        -02:-

```
 1           NUMBER ONE, THE VALUE OF A THIRD PARTY, WITH NO STAKE

 2  IN THIS ACTION, SAYING TO THE JURY, 'THIS IS WHAT MR. PALMERI

 3  TOLD ME ON THIS DATE.  AND I AM NOT ONLY A REPORTER, AN

 4  UNBIASED PERSON, I COVER THE TOY INDUSTRY, I WORK FOR THE

 5  WORLD'S PREEMINENT BUSINESS MAGAZINE' -- AND THAT CARRIES A      -02:-

 6  SIGNIFICANT MORE AMOUNT OF WEIGHT THAN MR. LARIAN'S DEPOSITION,

 7  WHICH SAYS, 'WELL, I MAY HAVE SAID IT; I MAY NOT HAVE,' AND

 8  REALLY NOT ANSWERING THE QUESTION.

 9           SECONDLY --

10           THE COURT:  WAIT A SECOND.  LET'S TAKE YOUR FIRST      -02:-

11  POINT.

12           SO YOU'RE SAYING, JUST THE FACT THAT THIS IS A

13  BUSINESSWEEK REPORTER SOMEHOW GUSSIES UP THE STATEMENT?

14           MR. NIBORSKI:  WELL, IT GUSSIES IT UP.  BUT

15  IMPORTANTLY -- FIRST OF ALL, IT'S CORROBORATION.  SECONDLY --   -02:-

16           THE COURT:  I UNDERSTAND IT'S CORROBORATION.  THAT

17  GETS INTO THE WHOLE CUMULATIVE FINDING BY THE DISCOVERY MASTER.

18  BUT EVERYONE IS GOING TO KNOW THIS IS BUSINESSWEEK.  AND I

19  SUPPOSE THERE'S OTHER WAYS OF PROVING THAT BUSINESSWEEK IS A

20  WELL-ESTABLISHED, IMPORTANT, PROMINENT BUSINESS JOURNAL THAN    -02:-

21  HAVING THE REPORTER HIMSELF -- IF ANYTHING, THAT'S PROBABLY --

22  EVERY REPORTER THINKS THEY WORK FOR THE MOST IMPORTANT

23  NEWSPAPER OR JOURNAL OR WHATEVER.

24           MR. NIBORSKI:  THAT'S TRUE.  BUT TWO RESPONSES TO

25  THAT:  NUMBER ONE, THE KEY IS WHAT THE JURY IS GOING TO THINK.  -02:-
```

1  AND WE BELIEVE THERE'S SOME SIGNIFICANT ADDED VALUE HERE IN

2  HAVING A REPORTER FROM A SIGNIFICANT BUSINESS JOURNAL.  BUT

3  MORE IMPORTANTLY THAN THAT, IF YOU READ THE DEPOSITIONS FROM

4  THE OTHER REPORTERS, WALL STREET JOURNAL, NEW YORK TIMES,

5  CHICAGO SUN TIMES, THERE WAS AN ATTEMPT TO IMPEACH THE -- NOT

6  VORACITY, BUT THE CREDIBILITY OF THE REPORTER'S MEMORY.

7  'MR. LARIAN WAS ON A CELL PHONE.  MR. LARIAN SPEAKS WITH AN

8  ACCENT.'  AND IT'S CLEARLY GOING TO BE AN ATTEMPT TO TRY TO

9  UNDERMINE THE VALUE OF THAT TESTIMONY.

10       AND MR. PALMERI IS IN A UNIQUE POSITION TO NOT ONLY

11  HAVE THE KEY PIECE OF EVIDENCE, AT THE KEY TIME, WORKING FOR A

12  KEY PERIODICAL, BUT HE IS NOT NECESSARILY GOING TO SUFFER FROM

13  THAT LEVEL OF IMPEACHMENT.

14       AND WHILE THIS MAY NOT BE THE ONLY PIECE OF EVIDENCE

15  THAT THE ENTIRE CASE HINGES UPON, WE BELIEVE THAT MATTEL IS

16  ENTITLED TO THIS, PARTICULARLY WHEN YOU BALANCE IT AGAINST THE

17  ABSOLUTE BARE MINIMUM, BARE MINIMUM, IMPINGEMENT ON WHAT WE

18  ACKNOWLEDGE IS THE REPORTER'S SANCTITY OF THE PRIVILEGE.

19       **THE COURT:**  I GUESS I'M NOT CONVINCED THAT THE AMOUNT

20  OF TIME OF THE DEPOSITION IS REALLY ALL THAT MUCH OF A FACTOR.

21  I COULD SEE -- YOU'RE DEALING WITH A PRIVILEGE, WHETHER IT BE

22  THE REPORTER'S PRIVILEGE, THE ATTORNEY-CLIENT PRIVILEGE.  IT

23  MAY NOT TAKE A WHOLE LOT OF TIME TO -- I MEAN, ONE OR TWO

24  QUESTIONS TO AN ATTORNEY WOULD PROBABLY BE JUST AS MUCH

25  OBJECTED TO AS THE ONE OR TWO QUESTIONS THAT YOU WANT TO ASK

```
 1   THE REPORTER.

 2          I GUESS I DON'T SEE THE SIGNIFICANCE OF THE FACT THAT

 3   IT'S JUST GOING TO BE A SHORT DEPOSITION, AS OPPOSED TO A LONG

 4   DEPOSITION.

 5          MR. NIBORSKI:  WELL, THIS SPEAKS BACK TO YOUR                -02:0

 6   ORIGINAL POINT OF, WHY DOES THIS QUALIFY AS THE TYPE OF

 7   EXCEPTIONAL CASE WHERE YOUR HONOR MAY SAY, 'YES, I'M GOING TO

 8   COMPEL A REPORTER TO SIT AND ANSWER QUESTIONS FROM US'?  AND WE

 9   THINK, UNDERLYING THIS ENTIRE PROCESS, IS THAT ISSUE; THAT WE

10   ARE NOT ASKING FOR CONFIDENTIAL RECORDS, CONFIDENTIAL SOURCES,    -02:0

11   NOTES, OUT TAKES, RECORDINGS; THAT WE ARE RIGHT UP ON THE

12   BORDERLINE OF WHAT EVERYONE WILL ACKNOWLEDGE AS A QUOTE.  AND

13   WE ARE ABSOLUTELY TREADING, TO THE BARE MINIMUM, ON THE

14   REPORTER'S TIME.

15          WE ARE NOT SEEKING ANY DOCUMENTS.  SO I THINK THAT IS      -02:0

16   RELEVANT TO THE POINT THAT -- IS THIS AN EXCEPTIONAL CASE.

17          IF YOU READ ALL OF THE OTHER CASES, WHERE THE

18   PRIVILEGE IS EITHER PIERCED OR NOT PIERCED, YOU'RE GOING TO SEE

19   A MORE SIGNIFICANT BURDEN PLACED ON THE REPORTER.

20          THE COURT:  ALL RIGHT.  THANK YOU, MR. NIBORSKI.           -01:-

21          COUNSEL.

22          MR. WICKERS:  THANK YOU, YOUR HONOR.

23          AFTER 12 BRIEFS ON THIS ISSUE, I'M NOT SURE HOW MUCH

24   MORE THERE IS TO SAY.  I WOULD LIKE TO RESPOND BRIEFLY TO A FEW

25   POINTS MADE BY OPPOSING COUNSEL, AND ALSO TO ANSWER ANY          -01:-
```

```
 1   QUESTIONS THAT THE COURT MAY HAVE.

 2        I THINK THE COURT WENT RIGHT TO THE CRUX OF THE

 3   ISSUE, LOOKING AT WHAT IS THE MARGINAL BENEFIT TO MATTEL FROM

 4   THIS TESTIMONY.  AND AS THE DISCOVERY MASTER FOUND, NOW

 5   TWICE -- THE DISCOVERY MASTER, WHEN HE CONSIDERED THE RELEVANCE   -01:-

 6   ISSUE -- AND JUST TO EMPHASIZE, IT'S NOT SIMPLY RELEVANCE THAT

 7   IS A STANDARD; IT IS CLEAR RELEVANCE TO AN IMPORTANT ISSUE --

 8   AND THE DISCOVERY MASTER CLEARLY CONSIDERED, NOT JUST

 9   IMPEACHMENT, NOT JUST STATUTE OF LIMITATIONS ISSUES, NOT JUST

10   THE LACHES ISSUE -- THOSE THREE, AS WELL AS THIS GUILTY MIND   -01:-

11   TYPE OF THEORY THAT MATTEL HAS RAISED IN ITS LAST FEW BRIEFS.

12   AND ON BOTH OCCASIONS, THE DISCOVERY MASTER FOUND THAT THE

13   MARGINAL BENEFIT FROM THIS TESTIMONY DID NOT MEET THAT HIGH

14   STANDARD OF CLEAR RELEVANCE TO AN IMPORTANT ISSUE IN THE CASE.

15        WE BELIEVE THAT DETERMINATION BY THE DISCOVERY MASTER   -01:-

16   WAS CORRECT.  THE DISCOVERY MASTER HAS HEARD NUMEROUS DISCOVERY

17   MOTIONS IN THIS CASE.  HE'S VERY FAMILIAR WITH THE ISSUES THAT

18   THE PARTIES HAVE PRESENTED.  HE'S HEARD THIS ISSUE TWICE, ONCE

19   ORIGINALLY ON THE MOTION TO COMPEL AND ONCE ON THE

20   RECONSIDERATION MOTION THAT THIS COURT DIRECTED.  AND HE'S   -01:-

21   REACHED THE SAME CONCLUSION BOTH TIMES.

22        MR. NIBORSKI MENTIONED THAT THIS WAS FOR

23   CORROBORATION.  AND THAT'S EXACTLY RIGHT.  THEY HAVE

24   MR. LARIAN'S TESTIMONY ABOUT WHAT HE MAY HAVE SAID TO THE

25   REPORTER.  HE DIDN'T DENY MAKING THIS STATEMENT.  HE EXPLAINED   -01:-
```

1  THAT IT IS PARTIALLY TRUE, AND HE GAVE THE CONTEXT OF WHAT HE

2  WOULD HAVE MEANT BY THAT STATEMENT.

3          **THE COURT:**  GIVEN THAT MR. LARIAN IS NOT DENYING IT,

4  THE REPORTER INCLUDED IT IN A PUBLISHED ARTICLE, WHERE IS THE

5  REAL HARM IN TERMS OF THE REPORTER HAVING TO BASICALLY JUST          -01:-

6  VERIFY THAT, WHICH IS NOT BEING DENIED AND IS PUBLISHED IN THE

7  JOURNAL?

8          I MEAN, THIS IS NOT SOMETHING WHERE WE'RE TRYING TO

9  GET A SOURCE THAT HASN'T BEEN DISCLOSED.  THIS IS NOT LIKE

10 WE'RE TRYING TO GET ACCESS TO INFORMATION THAT WAS NOT INCLUDED     -01:-

11 IN THE ARTICLE, THE REPORTER'S NOTES, OR ANYTHING OF THAT SORT.

12 THE EFFORT HERE IS TO HAVE A CORROBORATION OF WHAT WAS

13 PUBLISHED.

14         **MR. WICKERS:**  YES, YOUR HONOR.  AND AS THE NINTH

15 CIRCUIT POINTED OUT IN THE SHARON DECISION, THERE ARE FOUR          -01:-

16 DANGERS THAT ARE POSED BY REPORTER SUBPOENAS LIKE THIS ONE.

17 THEY INCLUDE THE BURDEN AND EXPENSE TO REPORTERS AND TO THEIR

18 EMPLOYERS OF HAVING TO RESPOND TO THESE SUBPOENAS.

19         **THE COURT:**  THAT'S NOT ALL THAT SIGNIFICANT IN THIS

20 CASE.                                                               -01:-

21         **MR. WICKERS:**  IN ADDITION, IT GOES TO THE POINT THAT

22 WHEN PEOPLE SPEAK TO REPORTERS, THEY VIEW REPORTERS, AS

23 MR. NIBORSKI POINTED OUT, AS UNBIASED SOURCES, NOT AS PEOPLE

24 WHO ARE LIKELY TO BE CALLED AS WITNESSES, EITHER IN A CIVIL

25 CASE, IN A CRIMINAL CASE, OR OTHERWISE.  AND MOST OF THE            -01:-

```
 1   CIRCUIT COURTS THAT HAVE LOOKED AT THIS ISSUE AND ANALYZED THE
 2   DANGERS POSED BY SUBPOENAS TO REPORTERS HAVE CONCLUDED THAT
 3   THAT CHILLS PEOPLE FROM SPEAKING TO REPORTERS, WHEN IT IS MADE
 4   CLEAR THAT REPORTERS MAY BECOME TARGETS FOR SUBPOENAS BY CIVIL
 5   LITIGANTS IN THE FUTURE.  BECAUSE REPORTERS ARE, BY THEIR VERY      -01:-
 6   NATURE, PEOPLE WHO ARE IN THE POSSESSION OF LOTS OF
 7   INFORMATION, AND OFTEN ABOUT VERY CONTROVERSIAL SUBJECTS, SUCH
 8   AS THE UNDERLYING DISPUTE BETWEEN MATTEL AND MGA.  SO THERE IS,
 9   IN FACT, A HARM TO MR. PALMERI AND TO HIS EMPLOYER FROM HAVING
10   TO RESPOND TO THIS SUBPOENA.                                        -01:-
11          THE NINTH CIRCUIT SET FORTH THE THREE FACTORS THAT A
12   COURT IS SUPPOSED TO CONSIDER IN DETERMINING WHETHER OR NOT TO
13   MAKE A FINDING THAT A PARTICULAR CASE IS ONE OF THE EXCEPTIONAL
14   CASES WHERE A CIVIL LITIGANT MAY OVERCOME A NONPARTY JOURNALIST
15   REPORTER'S PRIVILEGE.  IN THOSE CASES, THE COURT WAS CLEAR THAT     -01:-
16   CUMULATIVENESS, EXHAUSTION OF REASONABLE ALTERNATIVE SOURCES,
17   AND CLEAR RELEVANCE TO AN IMPORTANT ISSUE ARE THE THREE TESTS
18   THAT THE COURT IS SUPPOSED TO ANALYZE.
19          AS THE COURT INDICATED EARLIER DURING THIS HEARING,
20   WE DON'T BELIEVE THAT THE LENGTH OF THE DEPOSITION OR HOW MANY      -01:-
21   QUESTIONS MAY BE ASKED HAS ANY RELEVANCE.  IT'S NOT ONE OF THE
22   FACTORS THAT THE NINTH CIRCUIT PROMULGATED AS PART OF ITS
23   THREE-PART STANDARD, NOR HAVE OTHER COURTS.  AND IN THIS MANY,
24   MANY ROUNDS OF BRIEFING THAT WE HAVE HAD, THE PARTIES HAVE
25   CITED, I BELIEVE, CLOSE TO A DOZEN CASES INVOLVING VERY SIMILAR     -01:-
```

1  CIRCUMSTANCES WHERE A CIVIL LITIGANT SOUGHT TO COMPEL A

2  REPORTER TO TESTIFY ABOUT, TO VERIFY, OR TO AUTHENTICATE A

3  QUOTE.  AND WE WOULD SUBMIT THAT THIS IS NOT A PUBLISHED QUOTE.

4  IT WAS NOT IN QUOTATIONS, AS THE COURT DISCUSSED AT OUR

5  PREVIOUS HEARING BACK IN APRIL.                                    -01:-

6          BUT EVEN IN CASES WHERE IT'S INDISPUTABLY A QUOTE, IN

7  THOSE CASES, THE COURTS HAVE SAID THAT STILL GOES TO THE CORE

8  CONSTITUTIONAL ISSUES AND STILL IMPLICATES THE REPORTER'S

9  PRIVILEGE.  AND THE SAME IS TRUE IN THIS CASE.

10         **THE COURT:**  THANK YOU, COUNSEL.                         -01:-

11         **MR. WICKERS:**  THANK YOU, YOUR HONOR.

12         **THE COURT:**  ANYTHING FURTHER, MR. NIBORSKI?

13         **MR. NIBORSKI:**  YES.

14         THE REASON WE'RE HERE IS BECAUSE WE NEED A PARTICULAR

15  PIECE OF EVIDENCE.  AND I DON'T WANT ANYBODY TO CLOUD THE FACT   -01:-

16  THAT EVIDENCE DOES NOT EXIST; THAT AN INFERENCE THAT MAY OR MAY

17  NOT BE DRAWN BY THE JURY FROM STATEMENTS THAT MR. LARIAN MADE

18  IN HIS DEPOSITION IS A FAR CRY FROM AN UNBIASED WITNESS SAYING,

19  'THIS IS EXACTLY WHAT MR. LARIAN TOLD ME.'

20         KEEP IN MIND ALSO, YOUR HONOR, THAT THEY'VE MOVED TO      -01:-

21  EXCLUDE THE BUSINESSWEEK ARTICLE, SO AS WE STAND HERE TODAY, WE

22  DON'T KNOW EXACTLY WHAT'S GOING TO BE ADMITTED IN THIS TRIAL

23  AND WHAT'S NOT.  SO I JUST WANT YOUR HONOR TO KEEP THAT IN

24  MIND; THAT THIS IS NOT A PIECE OF EVIDENCE THAT WE ALREADY

25  HAVE.  WE'RE TRYING TO CORROBORATE THAT.  WE'RE TRYING TO        -01:-

1   CORROBORATE OUR CLAIM.  AND RIGHT NOW, WE HAVE AN INFERENCE OF

2   AN AMBIGUOUS STATEMENT IN A DEPOSITION FROM A PARTY.  NOT

3   SOMETHING THAT WE CAN TRULY POINT TO THE JURY AND SAY, 'THIS IS

4   AN UNEQUIVOCAL STATEMENT.  THIS PROVES OUR CASE.'

5          **THE COURT:**  YOU RAISE AN INTERESTING POINT.                -01:-

6          LET ME HEAR FROM MR. NOLAN ON THAT MOTION TO EXCLUDE

7   THAT EVIDENCE.

8          **MR. NOLAN:**  YOUR HONOR, THE PARTIES HAVE NOT YET MET

9   AND CONFERRED ON ALL OF THE EXHIBITS; EITHER THERE'S BEEN AN

10  OBJECTION --                                                         -01:-

11         **THE COURT:**  BECAUSE THERE'S NO MOTION *IN LIMINE*

12  GOVERNING THIS PARTICULAR PIECE OF EVIDENCE.

13         **MR. NOLAN:**  NO.

14         **THE COURT:**  I'M PRETTY FAMILIAR AT THIS POINT WITH

15  THE MOTIONS *IN LIMINE*.                                             -01:-

16         **MR. NOLAN:**  I THOUGHT I WAS TOO.

17         **THE COURT:**  AND I TRUST, MR. QUINN, YOU'VE BRUSHED UP

18  ON THEM SINCE YESTERDAY AFTERNOON.

19         **MR. QUINN:**  WE OVERLOOKED THIS ONE, YOUR HONOR, OR

20  SOMEBODY DID.                                                        -01:-

21         **THE COURT:**  VERY GOOD.  OKAY.

22         BUT REGARDING THIS PIECE OF EVIDENCE --

23         **MR. NOLAN:**  NO, YOUR HONOR.  I THINK THAT LAST

24  REFERENCE WAS SIMPLY TO AN EVIDENTIARY OBJECTION THAT WAS

25  ASSERTED IN THE MEET AND CONFER.                                     -01:-

```
 1          THE COURT:  FAIR ENOUGH.

 2          MR. NOLAN:  MAY I, JUST FOR A MOMENT --

 3          THE COURT:  YOU MAY.

 4          MR. NOLAN:  I SUPPOSE WE DON'T HAVE A DOG IN THE

 5    FIGHT, ALTHOUGH WE HAVE THE ACTUAL DOG IN THE FIGHT IN THE      -01:-

 6    SENSE OF THIS --

 7          THE COURT:  WELL, LET ME EXPLAIN WHY I'M ASKING YOU,

 8    BECAUSE THIS WOULD PLAY IN.  I MEAN, IF YOU'RE TAKING THE

 9    POSITION THAT FOR SOME REASON THE ONLY WAY THAT THE EVIDENCE

10    COULD COME IN -- I'M ASSUMING, I GUESS, IN THIS ARGUMENT THAT    -01:-

11    WHAT IS OUT THERE WOULD COME IN AND THE JURY COULD TAKE IT FOR

12    WHAT IT'S WORTH AND IT DOESN'T HAVE THE SAME EVIDENTIARY VALUE,

13    AS MR. NIBORSKI IS SAYING, OF ACTUALLY HAVING THE REPORTER IN

14    HERE.  BUT IF YOUR POSITION IS THAT BECAUSE WE DON'T HAVE

15    MR. PALMERI'S DEPOSITION, OR WE DON'T HAVE THE FOUNDATION       -01:-

16    BECAUSE WE DON'T HAVE THE AUTHENTICITY, BECAUSE WE HAVE THESE

17    OTHER PIECES OF EVIDENCE THAT MAY RAISE AN ISSUE AS TO WHETHER

18    OR NOT IT'S AUTHENTIC, THAT IT SHOULD BE EXCLUDED, IGNORING THE

19    WHOLE CALCULUS OF THE NEED FOR MR. PALMERI'S DEPOSITION.

20          I WANT TO GET YOUR POSITION ON THE RECORD ON THIS

21    CLEAR.

22          MR. NOLAN:  ON THE RECORD, I AM STATING THAT IS NOT

23    THE BASIS OF ANY OBJECTION THAT WE WOULD MAKE TO THAT

24    PARTICULAR BUSINESSWEEK ARTICLE.

25          THE COURT:  WHAT WOULD THE BASIS BE?                      -01:-
```

1   **MR. NOLAN:**   THERE MAY BE A CUMULATIVE OBJECTION,

2 WHICH, OF COURSE, IS WHAT JUDGE INFANTE WENT TO.  BUT I WILL

3 POINT OUT, YOUR HONOR, AND I WILL SAY TO YOU, THAT I WILL NOT

4 ARGUE, AS A BASIS FOR BLOCKING THAT EXHIBIT, 'WHERE IN THE

5 WORLD IS MR. PALMERI?'  I WOULD NEVER DO THAT.   -01:-

6   I DO WANT TO LEAVE ON THIS POINT:  THIS IS A

7 PARAGRAPH, NOT A QUOTE.  MR. LARIAN DOES NOT HAVE A SPECIFIC

8 RECOLLECTION OF WHAT HE SAID, NOR WOULD ANYBODY IF IT WAS NOT

9 IN QUOTES.  WHAT HE DID SAY, HOWEVER -- I'M PUTTING IT IN

10 CONTEXT, AND ALL IT SAYS WAS THAT, 'YOU KNOW WHAT, THE BRATZ -01:-

11 DOLLS AND THE IDEA, WHEN HE WENT HOME, THEY LOOKED A LOT LIKE

12 THE GIRLS THAT WERE VISITING HIS HOUSE.'

13   TO PUT THIS ALSO IN CONTRAST, YOUR HONOR, WE WILL NOT

14 OBJECT.  WE'LL MAKE WHATEVER ARGUMENTS WE NEED TO MAKE.  IN

15 ANOTHER ISSUE, SAME KIND OF FACT, MR. STEIN, WHO IS THEIR -01:-

16 EXPERT, FORMER PRESIDENT OF MATTEL OF ONE OF THEIR DIVISIONS,

17 WAS QUOTED IN A NEWSPAPER ARTICLE, QUOTED, THAT "BRATZ WAS AN

18 IDEA THAT MATTEL WOULD NEVER HAVE PURSUED," END OF QUOTE.

19   I THINK I MAY HAVE COME PRETTY CLOSE TO THAT.  I

20 DON'T HAVE IT IN FRONT OF ME.   -01:-

21   MR. STEIN SAID IN HIS DEPOSITION -- AND HE'S GOING TO

22 BE AN EXPERT IN THIS CASE -- 'OH, YOU KNOW, THOSE REPORTERS GET

23 THEM ALL WRONG.'  THAT WAS THE DIRECT QUOTE.

24   WE'RE NOT GOING TO TAKE THAT POSITION IN THIS CASE,

25 YOUR HONOR.  WE'LL EXPLAIN AWAY THAT ARTICLE, IF YOU OVERRULE -01:-

1   THE CUMULATIVE OBJECTION.  BUT I'M NEVER GOING TO SAY THEY

2   SHOULD HAVE TAKEN CHRIS PALMERI.

3          THIS IS A TREMENDOUSLY IMPORTANT CASE.  IN MANY

4   RESPECTS, IT IS A UNIQUE CASE.  BUT FIRST AMENDMENT CONCERNS

5   ABOUT COMPELLING A REPORTER TO ANSWER QUESTIONS -- AND I DON'T          -01:-

6   REPRESENT THE REPORTER.  I REALLY DON'T CARE.

7          **THE COURT:**  THANK YOU, COUNSEL.

8          **MR. ALGER:**  I WANTED TO RESPOND ON THE EVIDENTIARY

9   ISSUE.

10          FIRST OF ALL, MGA HAS OBJECTED TO THIS ARTICLE AS          -01:-

11   HEARSAY.  AND MR. NOLAN SAYING THAT MGA IS NOT GOING TO HAVE A

12   PROBLEM WITH THIS ARTICLE COMING IN DOESN'T SOLVE THE PROBLEM

13   OF THE UNDERLYING STATEMENT.  THE ARTICLE ITSELF --

14          **THE COURT:**  HE'S SAYING THAT HE'S NOT ASSERTING THAT

15   FOUNDATIONAL OBJECTION.

16          FIRST OF ALL, YOU'VE GOT TO SLOW DOWN.

17          **MR. ALGER:**  I'M SORRY.

18          **THE COURT:**  YOU REALLY HAVE TO SLOW DOWN.

19          SECOND OF ALL, I JUST HEARD FROM MR. NOLAN WHAT HIS

20   OBJECTION IS.  SO WHATEVER OBJECTION HE MADE IN THE PAST, HE'S          -01:-

21   NOT GOING TO CHANGE HIS REPRESENTATION TO THE COURT RIGHT NOW.

22          **MR. ALGER:**  OKAY.  SO I'LL TAKE THAT FIRST STEP THAT

23   HE'S NOT OBJECTING TO HEARSAY, THE UNDERLYING HEARSAY, IN THE

24   ARTICLE.

25          BUT THE SECOND PROBLEM IS EXACTLY WHAT MR. NOLAN          -01:-

```
 1    SAYS -- AND I THINK HE MISSTATED WHEN HE SAID "A PARAGRAPH."  I
 2    THINK HE MEANT "A PARAPHRASE."  'A PARAPHRASE IS NOT A QUOTE,'
 3    HE SAID.  SO MR. NOLAN IS KEEPING HIS POWDER DRY HERE.  AND
 4    HE'S GOING TO ARGUE TO THE JURY THAT PARAPHRASE, THAT SECOND
 5    PART THAT'S NOT IN QUOTES, IS NOT AN ACCURATE REPRESENTATION OF   -01:-
 6    WHAT MR. LARIAN SAID TO MR. PALMERI.
 7            THAT'S PRECISELY WHY WE NEED THIS DEPOSITION, YOUR
 8    HONOR.  AND THAT'S PRECISELY WHY WE'RE ENTITLED TO THE ACTUAL
 9    UNEQUIVOCAL TESTIMONY OF A WITNESS TO A STATEMENT BY
10    MR. LARIAN, TO ACTIONS BY MR. LARIAN THAT WERE CONSISTENT WITH   -01:-
11    A COVER-UP, WHICH WERE CONSISTENT WITH HIS KNOWLEDGE OF
12    MATTEL'S TRUE OWNERSHIP OF THE BRATZ DRAWINGS.  MR. LARIAN
13    BEHAVED IN A MANNER AND SPOKE IN A MANNER TO A REPORTER THAT
14    WAS CONSISTENT WITH HIS KNOWLEDGE OF MATTEL'S TRUE OWNERSHIP OF
15    THESE DRAWINGS.  AND THAT'S WHAT WE NEED.  WE NEED THE           -01:-
16    UNEQUIVOCAL DIRECT EVIDENCE FROM AN AVAILABLE SOURCE,
17    MR. PALMERI.
18            WE'RE NOT GOING FISHING.  MANY OF THESE CASES THAT
19    ARE CITED IN THE BRIEFS ARE FISHING EXPEDITIONS.  THEY DEAL
20    WITH CUMULATIVE EVIDENCE, STUFF THAT IS ANCILLARY TO THE CASE.   -01:-
21    WHAT WE'RE TALKING ABOUT IS STUFF THAT GOES DIRECTLY TO THE
22    HEART OF THIS CASE, A STATEMENT BY A DEFENDANT, A STATEMENT BY
23    THE CEO OF MATTEL, THAT WAS CONSISTENT WITH HIS KNOWLEDGE OF
24    THE TRUE OWNERSHIP OF THE BRATZ DRAWINGS.
25            AND FOR MR. NOLAN TO SAY, 'OH, WELL, WE'RE NOT GOING      -01:-
```

1  TO HAVE A PROBLEM WITH THIS ARTICLE COMING IN,' BUT THEN TURN

2  AROUND AND SAY, 'IT'S JUST A PARAPHRASE, YOUR HONOR' -- THAT'S

3  PRECISELY WHAT THEY'RE GOING TO ARGUE TO THE JURY.  AND WE'RE

4  ENTITLED TO -- WE SHOULDN'T HAVE TO RELY ON INFERENCES.

5         **THE COURT:**  IT IS A PARAPHRASE, THOUGH; CORRECT?     -01:-

6         **MR. ALGER:**  WE DON'T KNOW.  WE HAVEN'T TALKED TO

7  MR. PALMERI YET.  WE DON'T KNOW.  IT MAY BE AN ACTUAL QUOTE

8  THAT THEY DECIDED, FOR STYLISTIC PURPOSES, NOT TO PUT QUOTE

9  MARKS AROUND IT.  WE DON'T KNOW, BECAUSE WE HAVEN'T HAD THE

10 OPPORTUNITY TO TAKE A FEW MINUTES OF MR. PALMERI'S TIME, WHICH  -01:-

11 WE'VE BEEN TRYING TO GET NOW FOR A YEAR, YOUR HONOR.  I

12 APPROACHED MR. PALMERI A YEAR AGO THIS MONTH FOR THIS

13 DEPOSITION.

14        **THE COURT:**  THANK YOU, COUNSEL.

15        **MR. ALGER:**  THANK YOU, YOUR HONOR.            -01:-

16        **THE COURT:**  VERY GOOD.

17        THIS IS A CLOSE CASE.  THIS COMES REALLY CLOSE TO THE

18 EXCEPTIONAL CIRCUMSTANCE, FOR THE REASONS WELL ARTICULATED BY

19 MATTEL.  BUT I'M GOING TO DENY THE MOTION BROUGHT BY MATTEL,

20 AND I'M FINDING THAT THIS WAS NOT A CLEARLY ERRONEOUS RULING BY  -01:-

21 THE DISCOVERY MASTER, EITHER THE INITIAL ORDER OR THE ORDER

22 REGARDING THE MOTION FOR RECONSIDERATION.

23        HOWEVER, I WILL CERTAINLY CONSIDER THE OBJECTION

24 RELATED TO CUMULATIVENESS DURING THE CONTEXT OR IN THE CONTEXT

25 OF THE TRIAL.  BUT AS IT STANDS RIGHT NOW, I DON'T SEE ANY    -01:-

1    BASIS FOR EXCLUDING THE ARTICLE.  BUT WE'LL TAKE THAT UP AGAIN

2    IN THE COURSE OF THE TRIAL.

3              SO, COUNSEL, YOU CAN MAKE YOUR NEXT APPEARANCE.

4         **MR. WICKERS:**  THANK YOU, YOUR HONOR.

5         **THE COURT:**  BEFORE I GET INTO ANY SUBSTANTIVE          -01:-

6    MOTIONS, THERE IS A SMALL LOGISTICAL ISSUE THAT I WANT TO TAKE

7    CARE OF.  AND THAT IS THE ISSUE OF THE ROOMS.  I UNDERSTAND

8    THERE'S BEEN SOME DISCUSSION ABOUT THAT.

9              HAS THAT BEEN RESOLVED, MR. QUINN?  HAVE YOU DECIDED

10   UPON WHICH OF THE TWO ROOMS -- THE FIRST ROOM IS THE ONE THAT'S   -01:-

11   IMMEDIATELY TO THE LEFT THROUGH THESE DOUBLE DOORS.  THE OTHER

12   ONE IS THE ADR ROOM IN THE HALLWAY.

13        **MR. QUINN:**  THEY CAN HAVE WHICHEVER ROOM THEY WANT.

14        **THE COURT:**  MR. NOLAN?

15        **MR. NOLAN:**  WE WANT THE ROOM WITH THE CLOSET IN IT SO   -01:-

16   THAT WE CAN PUT THE DOLLS IN THERE.  I THINK THAT'S THE POINT

17   THAT WE WANT.  I THINK THIS IS THE ONE THAT IS RIGHT NEXT TO

18   YOUR COURTROOM.  IT'S THE ONE THAT WE'VE BEEN USING.  IT'S NOT

19   NEAR THE ONE WITH JUDGE PHILLIPS.

20        **THE COURT:**  I WANT TO RESOLVE THIS REALLY QUICKLY.      -01:-

21             MR. HOLMES, IF YOU WOULD GO INTO THE WELL.

22             MR. NOLAN, SINCE YOU'RE AT THE LECTERN, I'LL ALLOW

23   YOU TO CALL THE COIN IN THE AIR.

24        **THE CLERK:**  YOUR HONOR, I WANT TO SHOW THE COIN TO

25   THE COUNSEL SO THEY KNOW IT'S NOT A TWO-HEADED COIN.            -01:-

```
1            MR. NOLAN:  I DIDN'T THINK THERE WAS A DISPUTE.

2            MR. QUINN:  WHO'S CALLING?

3            THE CLERK:  CALL IT IN THE AIR, IF YOU'D LIKE.

4            MR. QUINN:  ONE OF US HAS TO CALL.

5            THE COURT:  MR. NOLAN, I SAID, MAY CALL IT IN THE       -01:-

6   AIR.

7            MR. NOLAN:  THANK YOU.

8            HEADS.

9            THE CLERK:  THAT'S THE HEAD'S SIDE, YOUR HONOR.

10           THE COURT:  SO, MR. NOLAN, YOU MAY CHOOSE WHICH ROOM    -01:-

11  YOU WANT.

12           MR. NOLAN:  THE ONE WITH THE CLOSET.

13           THE COURT:  VERY WELL.

14           THE ONLY REQUEST I HAVE TO BOTH OF YOU IS TO PLEASE

15  PICK UP YOUR TRASH AT THE END OF THE DAY.                        -01:-

16           THANK YOU, MR. HOLMES.

17           BACK TO MORE SUBSTANTIVE MATTERS.

18           THE DISCOVERY MATTERS THAT I HAVE BEFORE ME RIGHT NOW

19  -- WE'VE TAKEN CARE OF THE MOTION REGARDING THE PALMERI

20  DEPOSITION.  I HAVE THREE OTHERS.  I HAVE THE MATTEL EX-PARTE    -01:-

21  APPLICATION FOR AN ORDER THAT THERE IS NO BASIS UNDER THE

22  PROTECTIVE ORDER FOR MATTEL TO RETURN THE FIVE DOCUMENTS

23  PRODUCED BY MGA.  I'M GOING TO CALL THAT NUMBER ONE.

24           NUMBER TWO, I HAVE THE MATTEL EX-PARTE APPLICATION TO

25  STRIKE PORTIONS OF THE EXPERT REPORTS OF LYTER AND KULLMAN.      -01:-
```

1    THAT'S GOING TO BE NUMBER TWO.

2             AND NUMBER THREE IS THE MATTEL MOTION OBJECTING TO

3    THE MAY 6TH ORDER REGARDING THE TEMPORAL SCOPE OF MATTEL'S

4    PRIVILEGE LOG.

5             ARE THERE ANY OTHER DISCOVERY MOTIONS THAT I SHOULD          -01:-

6    HAVE BEFORE ME?

7             MR. ZELLER?

8             **MR. ZELLER:**  I'M NOT SURE HOW THIS QUITE FITS IN.  I,

9    MYSELF, AM NOT TERRIBLY FAMILIAR WITH IT.  BUT THERE WAS, LIKE,

10   AN MGA APPLICATION FOR RELIEF FROM REQUIREMENTS OF LOCAL RULE        -01:-

11   37-1 AND 37-2.  I BELIEVE THAT IS RELATED TO THE WACHOVIA

12   SUBPOENA MATTER THAT I BELIEVE HAS BEEN --

13            **THE COURT:**  MR. COREY, DO YOU HAVE SOMETHING?

14            **MR. COREY:**  I WAS GOING TO TELL MR. ZELLER, THAT'S

15   THE ONE THAT I REFERRED TO YESTERDAY.                                -01:-

16            **THE COURT:**  THAT'S WITHDRAWN; SO THAT'S GONE, RIGHT?

17            **MR. ZELLER:**  AND THAT'S WHAT I WANTED TO

18   DOUBLE-CHECK.

19            **THE COURT:**  MR. NOLAN, DO YOU AGREE THAT'S GONE?

20            **MR. NOLAN:**  YES, YOUR HONOR.                            -01:-

21            **THE COURT:**  OKAY.  VERY GOOD.

22            **MR. ZELLER:**  AND THAT IS CONSISTENT WITH THE LIST WE

23   HAVE, YOUR HONOR.

24            **THE COURT:**  OKAY.  SO THAT'S ONE, TWO, AND THREE.

25            AND THEN WE HAVE THE 30 -- ACTUALLY, IT'S 27, BECAUSE       -01:-

1   THERE WERE THREE MOTIONS *IN LIMINE* THAT WERE BROUGHT BY

2   CARTER BRYANT, AND THOSE WERE NOT FORMALLY JOINED IN BY MGA,

3   UNLESS I'M MISTAKEN.

4           **MR. NOLAN:**  THEY WERE, YOUR HONOR.

5           **THE COURT:**  THEY WERE JOINED IN?                    -01:-

6           **MR. NOLAN:**  FORMALLY.  AND WE HAVE THE DOCUMENTS

7   HERE.

8           **THE COURT:**  I KNOW CARTER BRYANT JOINED IN THE MGA

9   ONES, BUT DID MGA JOIN IN THE CARTER BRYANT ONES?

10          **MR. NOLAN:**  YES, YOUR HONOR.  IT'S DOCKET          -01:-

11  NUMBER 3310.

12          **THE COURT:**  ALL RIGHT.

13          **MR. NOLAN:**  IT'S 3310.  I APOLOGIZE.  IT'S 3070.

14          **THE COURT:**  THANK YOU.

15          I'M NOT PREPARED TO DEAL WITH THOSE THREE.  I SET      -01:-

16  THOSE ASIDE.  BUT I WILL GET TO THEM, AND WE CAN PROBABLY PICK

17  THOSE UP TOMORROW.

18          AND THE LAST THING, BESIDES THE MOTIONS *IN LIMINE*,

19  THE DISCOVERY ORDERS, AND THE THIRD THING IS THE GLOBAL ORDER

20  UNSEALING THE RECORD IN THIS CASE.                            -01:-

21          I HAVE THE DOCUMENT, FILED MAY 14TH, ENTITLED, "A

22  JOINT REPORT REGARDING DOCUMENTS SUBMITTED IN SUPPORT OF THE

23  PARTIES' MOTION FOR PARTIAL SUMMARY JUDGMENT."  THAT SETS FORTH

24  THE EXCEPTIONS TO THE UNSEALING ORDER RELATED TO THE SUMMARY

25  JUDGMENT PAPERS AND EXHIBITS.  THEN I HAVE A DOCUMENT FILED    -01:-

1   MAY 19TH, WHICH IS THE "JOINT REPORT REGARDING UNDER-SEAL

2   FILINGS;" THAT SETS FORTH ALL OTHER EXCEPTIONS TO THE

3   CONTEMPLATED UNSEALING ORDER.  AND THEN I ALSO HAVE EXHIBIT 86.

4   I NEED TO UNSEAL THE CORRECT EXHIBIT 86.  MR. NOLAN MADE

5   REFERENCE TO THIS.                                          -01:-

6         WHAT I WOULD LIKE, JUST FOR THE COURT'S REFERENCE, IF

7   SOMEONE COULD SUBMIT THE DOCKET NUMBER FOR THAT.  I'VE BEEN

8   HAVING TROUBLE FINDING IT.  GENERALLY, WHEN YOU WANT THE COURT

9   TO FIND SOMETHING PARTICULAR, GIVE ME THE DOCKET NUMBER,

10  BECAUSE THERE'S A LOT OF DOCUMENTS IN THIS CASE.  WE CAN'T EVEN  -01:-

11  BRING UP THE ENTIRE DOCKET AT ONE TIME WITHOUT CRASHING OUR

12  COMPUTER, SO WE HAVE TO BRING IT UP IN PORTIONS.

13        **MR. ALGER:**  YOUR HONOR, ON EXHIBIT 86, THE ZELLER

14  DECLARATION, WHICH WE FILED A CORRECTED VERSION, I'LL GET THAT

15  NUMBER FOR YOUR HONOR.  I HAVE TO SEND AN E-MAIL OUT.        -01:-

16        **THE COURT:**  PLEASE DO.  JUST PROVIDE IT TO

17  MR. HOLMES.

18        **MR. NOLAN:**  YOUR HONOR, IF WE'RE TALKING ABOUT

19  DISCOVERY MATTERS -- IT'S NOT A DISCOVERY MATTER, BUT IT'S NOT

20  ON THE AGENDA, BUT I WANTED TO ALERT THE COURT THAT I WANTED TO  -01:-

21  SEEK THE COURT'S GUIDANCE ON EITHER FILING LEAVE TO MAKE A

22  MOTION OR HOW WE SHOULD DEAL WITH THIS.

23        YESTERDAY, AS YOU KNOW, THERE WAS A LOT OF DISCUSSION

24  REGARDING COMMENTS THAT WERE ATTRIBUTED TO US IN THE PRESS

25  REGARDING CARTER BRYANT'S SETTLEMENT AGREEMENT; AND THE COURT  -01:-

1    EMPHASIZED THE CONFIDENTIALITY OF THAT AGREEMENT.

2         THAT WAS ALSO THE SUBJECT OF THE MONDAY CONVERSATION,

3    OR STATEMENTS THAT I MADE ON THE RECORD, WITH RESPECT TO THE

4    CONCERN OF, WHAT IS THE CARTER BRYANT SETTLEMENT AND HOW DOES

5    THAT IMPACT ON THE CASE?                                    -01:-

6         THE COURT TOLD ME THAT IT WAS CONFIDENTIAL.

7         YOUR HONOR, I AM PREPARED TO HAND UP TO THE COURT A

8    DOCUMENT THAT WE HAVE RECEIVED INDICATING THAT DESPITE MATTEL'S

9    CLAIMS TO THIS COURT THAT THE TERMS OF MR. BRYANT'S AGREEMENT

10   ARE CONFIDENTIAL, THERE HAVE BEEN COMMUNICATIONS TO A GENTLEMEN   -01:-

11   BY THE NAME OF GARRETT JOHNSON, WHO'S --

12        **THE COURT:**  MR. NOLAN, I'D LIKE TO GET THROUGH THIS

13   ISSUE.

14        **MR. NOLAN:**  YOUR HONOR, I JUST WANTED TO ASK HOW WE

15   SHOULD RAISE THIS WITH YOUR HONOR, BECAUSE I THINK THAT WHAT IS   -01:-

16   BEING DONE IS THAT THE INVESTOR RELATIONS DEPARTMENT OF MATTEL,

17   NOT ANY OF THE TRIAL LAWYERS, ARE ACTUALLY MAKING STATEMENTS TO

18   ADVISORS ABOUT THE FACT THAT CARTER BRYANT PAID MONEY AS PART

19   OF HIS SETTLEMENT.

20        I WANT TO RAISE THIS -- I JUST DON'T KNOW WHEN TO           -01:-

21   RAISE IT WITH YOU, YOUR HONOR.

22        **THE COURT:**  LET ME GET THROUGH THIS UNDER-SEAL FILING

23   ISSUE FIRST, THEN I'LL GET TO THIS.

24        **MR. NOLAN:**  I APOLOGIZE.

25        **THE COURT:**  GETTING BACK TO THIS, I HAVE THE TWO        -01:-

1   JOINT REPORTS, ONE RELATED TO THE SUMMARY JUDGMENT PLEADINGS,

2   ONE RELATED TO ALL OF THE OTHER PLEADINGS.  I'VE GOT TO GET

3   EXHIBIT 86.  EXCEPT FOR THOSE THAT HAVE BEEN IDENTIFIED, I'M

4   GOING TO ISSUE AN ORDER UNSEALING EVERYTHING ELSE, EXCEPT FOR

5   THOSE THREE CATEGORIES.  WHAT I NEED FROM THE PARTIES -- AND I          -01:-

6   BELIEVE MATTEL MAY HAVE ALREADY COMPLIED WITH THIS, BECAUSE

7   THEY'VE BEEN DOING THIS AS WE GO ALONG -- TO THE EXTENT THAT

8   THERE ARE GOING TO BE DOCUMENTS THAT HAVE PORTIONS SEALED, I

9   NEED THE PUBLIC REDACTED VERSIONS OF THOSE SUBMITTED.  AND I'D

10  LIKE TO SET A DATE FOR THE SUBMISSION OF THAT SO THAT WE'LL          -01:-

11  HAVE A DATE CERTAIN THAT, BASICALLY, EVERYTHING IS CLEANED UP.

12          SO, MR. NOLAN, MR. RUSSELL, HOW MUCH TIME DO YOU NEED

13  TO BE ABLE TO DO THAT?

14          **MR. RUSSELL:**  YOUR HONOR, I THINK IT'S INTERESTING

15  THAT MOST OF THE FILINGS ARE ACTUALLY MATTEL'S FILINGS, WHICH          -01:-

16  IS WHY MATTEL HAS BEEN FAIRLY QUICK TO FILE THE -- I DON'T KNOW

17  THAT THERE ARE THAT MANY FOR US; SO IF WE HAD A WEEK, I THINK

18  WE COULD EASILY DO IT.

19          **THE COURT:**  VERY GOOD.

20          FROM MATTEL'S PERSPECTIVE?          -01:-

21          **MR. ALGER:**  YEAH.  I SUPPOSE THAT WOULD BE FINE,

22  YOUR HONOR.

23          THE MSJ SITUATION, MY UNDERSTANDING WAS, THE COURT SO

24  ORDERED THE UNSEALING OF THE MSJ DOCS, PURSUANT TO THE

25  APRIL 18TH REPORT, WHEN WE MET ON THE PHONE A WEEK AGO.          -01:-

1           **THE COURT:**  YES.

2           **MR. ALGER:**  THE MAY 19TH SET OF DOCUMENTS THAT ARE

3    IDENTIFIED, WHICH IS THE FULL RECORD, I UNDERSTAND -- I DON'T

4    HAVE THAT IN FRONT OF ME -- THERE'S QUITE A FEW DOCUMENTS ON

5    THERE.  AND MGA IDENTIFIED, I THINK, WELL OVER A HUNDRED.        -01:-

6           WE HAD A SMALLER GROUP.  THERE'S SOME SUBSETS OF THE

7    MGA DOCUMENTS THAT WE WANT TO MEET AND CONFER WITH THEM ABOUT

8    THAT MATTEL DOESN'T AGREE WITH THEIR CLAIM OF GOOD CAUSE TO

9    KEEP THEM UNDER SEAL, AND MR. RUSSELL AND I ARE GOING TO BE

10   TALKING ABOUT THAT IN THE NEXT DAY OR TWO; SO THERE IS A COUPLE  -01:-

11   OF SUBCATEGORIES THAT NEED TO HAVE SOME DISCUSSION.

12          BUT WE DON'T HAVE ANY PROBLEM WITH THE UNSEALING OF

13   ANY UNIDENTIFIED DOCUMENTS IN THE MAY 19TH ORDER.

14          **THE COURT:**  OKAY.  THIS IS WHAT I'LL DO, THEN:  I'LL

15   SET MAY 27TH AS THE DATE.  IF YOU CAN'T WORK IT OUT, IF THERE'S  -01:-

16   SOME DOCUMENT THAT'S IN DISPUTE AS TO WHETHER OR NOT IT SHOULD

17   STAY UNDER SEAL OR NOT, BRING IT TO THE COURT'S ATTENTION ON

18   MAY 27TH.  THEN I'LL USE MAY 28TH, A WEEK FROM NOW, AS THE DATE

19   THAT ALL PARTIES ARE TO HAVE FILED PUBLIC REDACTED VERSIONS OF

20   ALL EXHIBITS THAT REMAIN UNDER SEAL.  AND THAT WAY, FROM        -01:-

21   MAY 28TH GOING FORWARD, EVERYTHING IS OPEN EXCEPT FOR THOSE.

22   AND THEN WE HAVE REDACTED VERSIONS AVAILABLE FOR THE PUBLIC, SO

23   ALL DOCUMENTS WILL THEN BE AVAILABLE TO THE PRESS AND TO THE

24   PUBLIC.

25          **MR. ALGER:**  NOT TO FINE-TUNE IT TOO MUCH, AND MAYBE   -01:-

1    IT'S BETTER TO ADDRESS THIS WITH MR. HOLMES, BUT SOMETIMES,

2    THERE WILL BE A VERY LARGE DECLARATION WITH A HUNDRED OR MORE

3    EXHIBITS BUT ONLY ONE EXHIBIT IS IN PLAY IN THIS PROCESS.  AND

4    I GUESS THE QUESTION WHICH WE NEED TO GRAPPLE WITH IS WHETHER

5    THAT ENTIRE DOCUMENT, YOU KNOW, THE DECLARATION OF, SAY,          -01:-

6    TIM ALGER, NEEDS TO BE REFILED IN A PUBLIC VERSION, WITH

7    REDACTED PAGES, OR WHATEVER, IN THAT ENTIRE HUGE DOCUMENT, OR

8    WHETHER WE CAN HANDLE IT IN A MANNER WHERE JUST A PORTION IS

9    RICO.

10        **THE COURT:**  I APPRECIATE THE CONCERN ABOUT CONSERVING    -01:-

11   PAPERS, AND I'M ALWAYS CONCERNED THAT WE'RE GOING TO HAVE THAT

12   SCENE FROM THE LORD OF THE RINGS WHERE THE TREES KIND OF, LIKE,

13   UPROOT AND COME AND ATTACK US FOR WHAT WE'VE DONE TO THEM.

14        BUT PUTTING THOSE CONCERNS ASIDE, I REALLY DON'T KNOW

15   ANY OTHER WAY OF DOING IT, BECAUSE WE NEED TO KEEP WHAT'S        -01:-

16   SEALED IN THE SEALED ENVELOPES.  THEY'RE IN ANOTHER PART OF THE

17   CLERK'S OFFICE.  AND THEN WE NEED TO HAVE A COMPLETE DOCUMENT

18   THAT'S AVAILABLE TO THE PRESS WITH THE APPROPRIATE REDACTION IN

19   IT.  UNLESS SOMEONE HAS A PROPOSAL AS TO HOW TO AVOID THAT,

20   THAT THE CLERK'S OFFICE CAN MANAGE, I REALLY DON'T KNOW HOW TO   -01:-

21   DO THAT.

22        FOR FUTURE REFERENCE, I SUPPOSE, THAT EXHIBIT,

23   PERHAPS, COULD HAVE BEEN SET ASIDE IN A SECOND DECLARATION BY

24   THE SAME PERSON.  BUT GIVEN THE RECORD AS IT IS RIGHT NOW, I

25   THINK THIS MIGHT BE SOMETHING THAT THE COURT MIGHT BE MORE       -01:-

```
 1   MINDFUL OF, AND THE NEXT TIME I ANTICIPATE A CASE OF THIS

 2   NATURE, TO HAVE THAT SEPARATION EARLIER ON.  BUT AT THIS

 3   JUNCTURE, I THINK IT'S BEST JUST TO SUBMIT THE FULL DECLARATION

 4   WITH THE REDACTION.

 5            MR. ALGER:  THANK YOU, YOUR HONOR.                    -01:-

 6            THE COURT:  VERY GOOD.

 7            SO, MAY 27TH, THEN, FOR ANY OBJECTIONS TO UNDER

 8   SEALING; AND THEN MAY 28TH WILL BE THE DATE THAT THE PARTY WILL

 9   FILE A PUBLIC REDACTED VERSIONS, IF YOU HAVE NOT ALREADY DONE

10   SO, OF ALL EXHIBITS THAT REMAIN UNDER SEAL.                   -01:-

11            OKAY.  NOW, MR. NOLAN.

12            MR. NOLAN:  YOUR HONOR, I COMPLETELY APOLOGIZE.  I

13   WAS SO EXCITED ABOUT WINNING THE COIN TOSS, I DIDN'T REALIZE

14   YOU WERE STILL IN THE MIDDLE OF THE DISCUSSION ABOUT THE OTHER

15   DOCUMENTS.  I REALLY APOLOGIZE FOR THE INTRUSION.            -01:-

16            THE COURT:  YES.

17            MR. NOLAN:  BUT WHAT I'D LIKED TO DO, YOUR HONOR --

18   AND I'LL HAND A COPY TO MR. QUINN, AND ALSO, I'LL HAND A COPY

19   TO THE CLERK.  THIS IS AN E-MAIL COMMUNICATION, AS I SAID, FROM

20   GARRETT JOHNSON, WHO IS VICE PRESIDENT, EQUITY RESEARCH TOYS,  -01:-

21   BMO CAPITAL MARKETS, IN NEW YORK, I BELIEVE; AND IT IS AN

22   EXCHANGE REGARDING CARTER BRYANT'S SETTLEMENT.  IT WAS SENT TO

23   MR. LARIAN, AND IT INCLUDES A STATEMENT WHERE IT SAYS THAT

24   CARTER BRYANT PAID MONEY IN HIS SETTLEMENT.

25            IF YOU'LL LOOK ON THE BOTTOM OF THE FIRST PAGE,      -01:-
```

1    YOUR HONOR, FROM JOHNSON TO ISAAC LARIAN.

2            "GREAT.  THANKS FOR YOUR INFORMATION.  THE IR," WHICH

3    IS INVESTOR RELATIONS, "REPRESENTATIVE OF MATTEL SAID THAT

4    MR. BRYANT MADE A MONETARY PAYMENT TO THEM.  HE DIDN'T SAY HOW

5    MUCH.  AGAIN, NOT MY CONJECTURE.  IT'S WHAT WAS RELATED TO ME          -01:-

6    BY MATTEL.  ANYWAY, GOOD LUCK WITH EVERYTHING, AND THANKS AGAIN

7    FOR THE UPDATE."

8            AND, IF YOU GO UP, MR. LARIAN SAYS, "THANKS.  BY THE

9    WAY, WHO'S MATTEL'S PR REP?  A BIG PR COMPANY?"

10           AND HE ANSWERS AT THE TOP, "THEY DO BOTH THEIR IR AND          -01:-

11   PR IN-HOUSE.  I SPOKE SPECIFICALLY WITH MIKE SALOP," S-A-L-O-P,

12   "WHO IS TREASURER AND VICE PRESIDENT OF INVESTOR RELATIONS AT

13   MATTEL."

14           AND, YOUR HONOR, I THINK THIS IS -- WELL, IT'S A LOT

15   OF THINGS.  IT'S INTERESTING.  AND IT'S NOT APPROPRIATE THAT          -01:-

16   THE VICE PRESIDENT OF INVESTOR RELATIONS OF MATTEL CAN

17   COMMUNICATE WITH ANALYSTS AND TELL ANALYSTS, OR AT LEAST ONE

18   ANALYST, SPECIFICALLY THAT CARTER BRYANT PAID MONEY UNDER A

19   SETTLEMENT, IN CONNECTION WITH A SETTLEMENT, ON THE EVE OF THIS

20   TRIAL, WHERE I, REPRESENTING THE OTHER PARTY, AM NOT ONLY           -01:-

21   CHASTISED FOR MAKING COMMENTS -- NOT BY YOU, BUT BY

22   MR. QUINN -- WHILE AT THE SAME TIME, THEY'RE OUT TELLING THE

23   WORLD PARTS OF THIS AGREEMENT, WHICH, TAKEN OUT OF CONTEXT, IS

24   JUST TOTALLY INAPPROPRIATE.

25           WE'D ASK, YOUR HONOR, TO TAKE THIS AS A VERY SERIOUS        -01:-

1   MATTER.  I THINK WE NEED THE CARTER BRYANT SETTLEMENT.  I'LL

2   REPRESENT TO YOU, FOR STEP NUMBER ONE, AS AN OFFICER OF THE

3   COURT, I WOULD LIKE TO TAKE POSSESSION OF A COPY OF THE

4   SETTLEMENT AGREEMENT SO THAT I CAN BE IN A BETTER POSITION TO

5   ARGUE TO THE COURT WHAT SHOULD BE DONE AND WHAT SHOULD BE TOLD   -01:-

6   TO THIS JURY.

7           THIS IS ON THE HEELS OF A FIVE-MINUTE MINI OPENING

8   STATEMENT YESTERDAY THAT WAS DEDICATED MORE TO CARTER BRYANT IN

9   THIS CASE AND WHAT HE DID, INCLUDING THE USE OF "EVIDENCE

10  ELIMINATOR," DESTROYING FILES.  WE'RE GOING TO GET TO THAT IN A   -01:-

11  MINUTE.  BUT I CANNOT BE DEFENDING THIS CASE WITHOUT THIS JURY

12  UNDERSTANDING THAT CARTER BRYANT, A, WAS A PARTY; B, THAT

13  ACTUALLY, CARTER BRYANT HIMSELF HAD SUED FIRST IN THIS CASE;

14  THAT MATTEL SETTLED THIS CASE WITH CARTER BRYANT.  IT'S JUST

15  NOT FAIR, YOUR HONOR.  BUT I'M NOT GOING WHOLE HOG HERE RIGHT    -01:-

16  NOW.  I WANT TO TAKE THIS IN BITE STEPS.

17          **THE COURT:**  LET ME STOP YOU THERE.

18          I NEED THE SAME THING I WAS ASKING MR. QUINN

19  YESTERDAY.  I NEED TO KNOW WHAT RELIEF YOU'RE SEEKING.

20          WHAT ARE YOU ASKING THE COURT TO DO?              -01:-

21          **MR. NOLAN:**  YOUR HONOR, I WOULD LIKE TO HAVE THE

22  CARTER BRYANT SETTLEMENT PRODUCED TO US FORTHWITH.

23          **THE COURT:**  VERY GOOD.  ALL RIGHT.

24          MR. QUINN?

25          **MR. QUINN:**  YOUR HONOR, I DON'T KNOW WHO        -01:-

1  GARRETT JOHNSON IS.  WHAT WE'VE BEEN PROVIDED WITH IS A COPY OF

2  AN E-MAIL BETWEEN MR. LARIAN AND GARRETT JOHNSON, WHO, JUST

3  JUDGING BY THE E-MAIL ADDRESS -- I'VE NEVER HEARD OF THE

4  NAME -- IT'S NOT SOMEBODY WHO'S AT MATTEL.

5          **THE COURT:**  I WAS JUST LOOKING AT THE BACK PAGE.          -01:-

6  MR. GARRETT JOHNSON IS IDENTIFIED IN THE E-MAIL AS VICE

7  PRESIDENT, EQUITY RESEARCH OF TOYS, BMO CAPITAL MARKETS.

8          **MR. QUINN:**  SO HE'S SOMEBODY IN THE FINANCIAL WORLD.

9  AND IF WE ACCEPT THIS AT FACE VALUE, HE SAYS HE SPOKE TO

10  SOMEBODY AT MATTEL AND THAT HE WAS TOLD BY SOMEBODY AT MATTEL          -01:-

11  THAT THERE WAS A PAYMENT.

12          I'M NOT IN A POSITION TO SAY -- I'VE NEVER SEEN THIS

13  BEFORE.  I DON'T KNOW WHETHER THAT'S TRUE OR NOT.

14          **THE COURT:**  AMBASSADOR PROSPER TOLD THE COURT ON

15  MONDAY THAT THE TERMS OF THE AGREEMENT WERE CONFIDENTIAL.          -01:-

16  THAT'S THE EXTENT OF THE COURT'S KNOWLEDGE OF THE TERMS OF THE

17  AGREEMENT, OTHER THAN THE COMPLETE RELEASE AND DISMISSAL.

18          I TRUST THAT TO BE THE CASE.

19          **MR. QUINN:**  THAT IS THE CASE, YOUR HONOR.

20          **THE COURT:**  OKAY.          -01:-

21          AND I CERTAINLY DON'T WANT YOU TO CONFIRM OR DENY FOR

22  THE RECORD WHETHER OR NOT ANY OF THE TERMS OR CONDITIONS

23  INVOLVED A PAYMENT OR NOT, BECAUSE THAT IS CONFIDENTIAL;

24  CORRECT?

25          **MR. QUINN:**  CORRECT, YOUR HONOR.          -01:-

```
 1            THE COURT:  ALL RIGHT.

 2            IF THIS IS TRUE, THOUGH, AND ASSUMING, AS I AM, THAT

 3  THE TERMS ARE CONFIDENTIAL, THIS CREATES A BIT OF A PROBLEM.

 4            MR. QUINN:  I WON'T GET INTO A DISCUSSION ABOUT

 5  MERELY SAYING WHETHER THERE WAS A PAYMENT WOULD BE A MATERIAL     -01:-

 6  BREACH.  LET'S SET THAT ASIDE.  LET'S ASSUME THAT'S A BREACH.

 7  IT SEEMS TO ME THAT'S REALLY MORE MR. BRYANT'S CONCERN.  WE'RE

 8  HERE FOCUSING ON THIS.

 9            WHY ARE WE HAVING THIS DISCUSSION AGAIN TODAY?

10            WE'RE HAVING THIS DISCUSSION BECAUSE MR. NOLAN ISSUED   -01:-

11  A PRESS RELEASE, WHICH THIS COURT SAID, I THINK CORRECTLY, WAS

12  INACCURATE; THAT THE SETTLEMENT WAS AN ACKNOWLEDGMENT THAT THE

13  CASE WAS BASELESS FROM THE BEGINNING, WHICH HE COULDN'T SAY,

14  BECAUSE HE DIDN'T KNOW ANYTHING ABOUT THE SETTLEMENT.

15            I GOT CONTACTED BY THE AMERICAN LAWYER TODAY, SAYING,   -01:-

16  'CAN YOU CONFIRM THAT MR. NOLAN SAYS IT'S A WALKAWAY?'

17            I DON'T KNOW.  MAYBE THEY'RE MISQUOTING HIM.  BUT I

18  THINK --

19            MR. NOLAN:  YOUR HONOR, I HAVE NEVER SPOKEN TO THE

20  AMERICAN LAWYER ABOUT THIS CASE.                                 -01:-

21            MR. QUINN:  THEY SAID IT WAS A PRESS RELEASE THEY

22  HAD.

23            THE COURT:  REPORTERS SOMETIMES SAY THINGS, JUST LIKE

24  INVESTIGATORS AND OTHERS, TO GET REACTIONS.  I'M NOT SAYING

25  THAT THE AMERICAN LAWYER DOES OR DOESN'T DO THAT, BUT WE CAN'T   -01:-
```

1    BELIEVE EVERYTHING THAT WE HEAR, COUNSEL.

2        **MR. QUINN:**  I APPRECIATE THAT, YOUR HONOR.

3        IT SEEMS TO ME WE HAVE ENOUGH REAL ISSUES TO WORRY

4    ABOUT IN THIS CASE, FROM BEING DISTRACTED WITH THE PRESS

5    WARFARE.  I MEAN, WE'RE NOT ISSUING PRESS RELEASES, YOUR HONOR.    -01:-

6        **THE COURT:**  I AGREE WITH THAT, MR. QUINN.  BUT AT THE

7    SAME TIME, THIS IS OF A CONCERN.

8        AND YOU'RE CORRECT, MR. BRYANT, OF COURSE, HAS THE

9    MOST IMMEDIATE STANDING TO BRING A COMPLAINT IF YOUR CLIENT HAS

10   BREACHED THE CONFIDENTIALITY OF THE AGREEMENT.  AND THE COURT    -01:-

11   CAN CERTAINLY AFFORD LEAVE TO MR. BRYANT TO BRING THIS TO THE

12   COURT'S ATTENTION.

13       BUT I DO THINK, IN A CONTEXT OF ENSURING A FAIR

14   TRIAL, THAT MGA AND MR. LARIAN ALSO HAVE SOME INTEREST IN

15   ENSURING THAT THE CONFIDENTIAL AGREEMENT THAT WAS REACHED IS    -01:-

16   NOT SOMEHOW BEING SPUN OR LEAKED OUT OR DISCLOSED FOR THE

17   PURPOSE OF SOMEHOW INFLUENCING THE JURY OR OTHER PEOPLE.  I

18   THINK THAT'S A LEGITIMATE CONCERN.  IT'S A CONCERN THAT YOU

19   HAVE EXPRESSED AND YOU ARTICULATED VERY CLEARLY YESTERDAY.

20       **MR. QUINN:**  YOUR HONOR, IT'S NOT ONLY A LEGITIMATE    -01:-

21   CONCERN, AS THE COURT JUST STATED, I THINK IT'S AN ETHICAL

22   OBLIGATION; AN ATTORNEY SHOULD NOT MAKE JUDICIAL STATEMENTS FOR

23   THE PURPOSE OF INFLUENCING A PROCEEDING.

24       **THE COURT:**  RIGHT.  BUT YOU ALSO CAN'T HIDE BEHIND

25   THE FACT, THOUGH, 'THAT WAS MY CLIENT; THAT'S NOT ME, SO I'M    -01:-

1    OFF THE HOOK HERE.'

2         **MR. QUINN:**  YOUR HONOR, WHAT WE'RE LOOKING AT HERE IS

3    A SECONDHAND STATEMENT RELATED TO MR. LARIAN ABOUT SOMETHING

4    THAT WAS NOT RELEASED TO THE PUBLIC.  LET'S ASSUME IT WAS SAID.

5    APPARENTLY, A COMMENT WAS MADE TO SOMEBODY IN THE FINANCIAL                    -01:-

6    COMMUNITY.  IT WOULD BE MY PREFERENCE THAT NOBODY SAYS ANYTHING

7    ABOUT THE SETTLEMENT.  WE'RE NOT INTERESTED IN --

8         **THE COURT:**  THAT IS MY PREFERENCE AS WELL, COUNSEL.

9         I'M GOING TO DENY THE RELIEF, MR. NOLAN, BECAUSE I

10   THINK THAT WOULD COMPOUND THE PROBLEMS BY PROVIDING A COPY OF A              -01:-

11   CONFIDENTIAL SETTLEMENT AGREEMENT TO A NONPARTY TO THAT

12   SETTLEMENT.  I THINK THAT ACTUALLY COMPOUNDS THE PROBLEM, NOT

13   REDUCES IT, BECAUSE IT JUST SETS, QUITE FRANKLY, MR. NOLAN, YOU

14   UP TO BEING ACCUSED OF DOING SOMETHING -- I DON'T THINK THAT

15   REALLY SOLVES ANYTHING.                                                       -01:-

16        I AM GOING TO IMPOSE UPON COUNSEL FOR MATTEL AN

17   OBLIGATION TO FOLLOW UP AND INVESTIGATE THIS, AND FIND OUT IF

18   THIS IS, IN FACT, TRUE OR NOT TRUE, AND REPORT BACK TO THE

19   COURT.  AND ALSO, LET THE COURT KNOW WHAT MEASURES COUNSEL IS

20   GOING TO TAKE TO ENSURE THAT THEIR CLIENT IS ABIDING, AND WILL               -01:-

21   CONTINUE TO ABIDE, BY THE TERMS OF ANY AGREEMENT THAT THEY

22   ENTERED INTO UNDER THE AUSPICES OF THIS COURT.

23        I MEAN, THIS IS RELATED TO A MATTER BEFORE THIS

24   COURT, I THINK.  I'M NOT ISSUING A GAG ORDER ON ANYBODY, BUT I

25   DO THINK THIS COURT HAS, NOT ONLY THE RIGHT, BUT THE                         -01:-

```
1   RESPONSIBILITY TO ENSURE THAT ANY AGREEMENT THAT WAS ENTERED

2   UNDER THIS COURT'S JURISDICTION IS BEING BOUND TO OR FOLLOWED

3   BY THE PARTIES.

4        WE HAVE REASONABLE GROUNDS FOR A SUSPICION THAT,

5   PERHAPS, SOMETHING MAY HAVE HAPPENED HERE.  I'M NOT DRAWING ANY

6   CONCLUSIONS.  I'M ASKING YOU, AS AN OFFICER OF THE COURT,

7   MR. QUINN, TO INVESTIGATE THIS AND REPORT BACK TO THE COURT.

8        MR. QUINN:  I WILL DO THAT, YOUR HONOR.

9        I POINT OUT, IF YOU LOOK AT THE FIRST E-MAIL IN THE

10  STRING, WHAT STARTS THIS IS AN E-MAIL FROM MR. LARIAN TO

11  MR. JOHNSON, SPECULATING ABOUT THE RESULTS OF OUR JURY

12  RESEARCH.  IT SAYS, "CARTER BRYANT ADMITTED NO FAULT AND

13  PROBABLY PAID MATTEL ZERO."

14        SO THAT'S WHAT STARTS THIS, WITH MR. LARIAN'S EGGING

15  ON, IT APPEARS, MR. JOHNSON.  AND MR. JOHNSON SAYS WHAT HE

16  SAYS.

17        MR. NOLAN:  YOUR HONOR, THAT IS SIMPLY CONJECTURE ON

18  THE PART OF MR. LARIAN.

19        THE COURT:  IT IS.

20        MR. NOLAN:  IT IS.  OKAY.  AND THAT'S FINE.  THAT'S

21  WHAT HE'S SAYING.

22        THE COURT:  I SEE THAT.

23        MR. NOLAN:  BUT HERE'S THE POINT:  WE HAVE HERE THE

24  TREASURER AND VICE PRESIDENT OF INVESTOR RELATIONS MAKING A

25  STATEMENT TO MR. JOHNSON, WHO, YOUR HONOR, I'LL REPRESENT TO
```

1    YOU, IS A VERY WELL-KNOWN TOY ANALYST THAT COVERS THE TOY

2    INDUSTRY AND HAS BEEN MAKING COMMENTS WITH RESPECT TO THIS

3    CASE.

4            IT IS THE FACT THAT MATTEL IS MAKING A STATEMENT THAT

5    MONEY WAS PAID.                                                    -01:-

6            **THE COURT:**  I UNDERSTAND THAT.

7            **MR. NOLAN:**  YOUR HONOR, I WOULD JUST URGE ONE OTHER

8    POINT; AND THAT IS, TO ASK AMBASSADOR PROSPER WHETHER OR NOT,

9    IF THE COURT DOESN'T KNOW THE TERMS, WHETHER OR NOT A STATEMENT

10   THAT MONIES WERE PAID UNDER THAT SETTLEMENT IS ACTUALLY A TRUE    -01:-

11   STATEMENT.

12           **THE COURT:**  THAT'S PUTTING THE CART BEFORE THE HORSE.

13   I'VE GIVEN MY DIRECTION TO MR. QUINN, AND I'LL WAIT FOR HIS

14   REPORT BACK BEFORE I TAKE ANY FURTHER ACTION.

15           WE'LL TAKE THIS UP TOMORROW.                               -01:-

16           ALL RIGHT.  MOVING ON TO THE MOTIONS.

17           I'M GOING TO START WITH THE MOTIONS *IN LIMINE*, AND

18   THEN WE'LL DO THE DISCOVERY MOTIONS.

19           I GUESS IT DOESN'T MATTER WHICH ONE I START WITH.

20           (LAUGHTER.)                                                -01:-

21           **THE COURT:**  I HAVE MGA'S IN FRONT OF ME, SO I'LL

22   START WITH MGA'S.

23           LET ME JUST SAY RIGHT NOW, EVERYONE WILL HAVE PLENTY

24   TO BE UPSET WITH THE COURT ABOUT BY THE END OF THIS AFTERNOON

25   OR TOMORROW, SO DON'T TAKE IT PERSONALLY.  I GUARANTEE YOU THAT   -01:-

```
 1   NOT ONLY CAN I NOT PLEASE EVERYBODY, I KNOW BY DEFINITION I
 2   WILL DISPLEASE EVERYBODY AT SOME POINT, SO...  IT'S NOTHING
 3   PERSONAL.
 4            MGA'S FIRST MOTION, IN LIMINE NUMBER ONE:  TO EXCLUDE
 5   ALL EVIDENCE RELATING TO LITIGATION OR OTHER PROCEEDINGS
 6   BETWEEN ISAAC AND FARHAD LARIAN.
 7            WHAT I'M GOING TO DO ON EACH OF THESE IS INDICATE
 8   BASICALLY WHERE I'M AT, TO GIVE BOTH SIDES AN OPPORTUNITY TO
 9   RESPOND, AND THEN I'LL EITHER RULE NOW OR I WILL RULE AFTER
10   I'VE HAD A CHANCE TO THINK ABOUT WHAT YOU HAVE SAID, AND WE'LL
11   MOVE ON TO THE NEXT ONE.
12            THIS ANALYSIS APPLIES TO A COUPLE OF THESE MOTIONS,
13   BROUGHT BY BOTH SIDES, WHEN WE GET INTO EVIDENCE FROM OTHER
14   PROCEEDINGS.  I'M RELUCTANT TO CATEGORICALLY SAY THAT ALL
15   EVIDENCE, ALL TESTIMONY, ALL TRANSCRIPTS, ALL DOCUMENTS FROM
16   OTHER PROCEEDINGS, FROM ANY OTHER PROCEEDINGS, ARE PRECLUDED AS
17   A MATTER OF LAW.  I REALLY THINK IT'S GOING TO BE SOMETHING
18   THAT I'M GOING TO HAVE TO DO IN THE TRIAL ITSELF.
19            I MEAN, TO THE EXTENT THAT ISAAC LARIAN IS ON THE
20   STAND, AND HE HAS SAID SOMETHING IN ANOTHER HEARING, WHETHER IT
21   WAS WITH HIS BROTHER OR WHETHER IT WAS IN ANOTHER TRIAL THAT
22   CAN BE USED TO IMPEACH THAT STATEMENT, THAT'S SOMETHING WHICH
23   IS GOING TO PROBABLY COME IN, DEPENDING AND SUBJECT TO ANY
24   OTHER OBJECTIONS.  THE MERE FACT THAT IT COMES FROM ANOTHER
25   TRIAL OR ANOTHER HEARING IS NOT BY ITSELF GOING TO PRECLUDE
```

1    THAT.

2           NOW, ON THE OTHER HAND, JUST BECAUSE IT WAS FROM

3    ANOTHER HEARING, IT'S NOT GOING TO OPEN THE DOOR AND ALL GOING

4    TO COME IN EN MASS.  I MEAN, I REALLY THINK THIS IS SOMETHING

5    WHICH NEEDS TO BE EVALUATED ON A CASE-BY-CASE BASIS AND REALLY       -01:-

6    ISN'T SUITABLE TO BEING A CATEGORICAL MOTION *IN LIMINE* TYPE

7    ISSUE.

8           BUT I UNDERSTAND THE ARGUMENT ABOUT, GOSH, THE 403

9    ARGUMENT HERE, ABOUT BROTHER VERSUS BROTHER, BUT FOR BETTER OR

10   FOR WORSE, SINCE CAIN AND ABEL HAD IT OUT, WE'VE BEEN SEEING --     -01:-

11   THAT'S A THEME FROM TIME IMMEMORIAL.  I DON'T THINK THE FACT

12   THAT BROTHERS ARE HAVING A BUSINESS DISPUTE IS NECESSARILY THE

13   TYPE OF SHOCKING NEWS THAT'S GOING TO SOMEHOW PREJUDICE THE

14   JURY ONE WAY OR THE OTHER.

15       **MR. RUSSELL:**  THANK YOU FOR THAT, YOUR HONOR.  THAT'S        -01:-

16   CERTAINLY HELPFUL.  I THINK THE CONCERN, AS YOU CORRECTLY POINT

17   OUT, IS, YOU KNOW, THERE MAY HAVE BEEN --

18       **THE COURT:**  I'M NOT SUGGESTING, MR. LARIAN, THAT YOU

19   AND YOUR BROTHER'S RELATIONSHIP IS ANYTHING LIKE CAIN AND

20   ABEL'S.                                                             -01:-

21       **MR. NOLAN:**  THEY'VE MADE UP, YOUR HONOR.  IT'S FINE.

22       **THE COURT:**  I UNDERSTAND THAT.  AND IT HAD A MUCH

23   HAPPIER ENDING, MAYBE.

24       **MR. RUSSELL:**  HERE'S THE POINT, YOUR HONOR:  THERE'S

25   NO REASON FOR THE PROCEEDINGS BETWEEN THE LARIAN BROTHERS TO BE      -01:-

1    BEFORE THIS COURT PRECISELY BECAUSE DISCOVERY HAS BEEN ALLOWED

2    IN THIS PROCEEDING.  MR. LARIAN HAS BEEN DEPOSED MULTIPLE

3    TIMES, AS HAS HIS BROTHER FARHAD, AS HAS MR. ZARABI.  THE ONLY

4    PERSON MATTEL HAS NOT BROUGHT IN IS JENNIFER MORRIS, THOUGH I

5    UNDERSTAND THEY SUBPOENAED HER FOR TRIAL; SO LET THEM PUT THESE    -01:-

6    PEOPLE ON THE STAND AND ASK THEM FACTUAL QUESTIONS OF 'IS IT

7    TRUE, MR. FARHAD LARIAN, THAT YOU MADE THE FOLLOWING

8    STATEMENT,' WITHOUT CONTEXT, WITHOUT SAYING 'YOU SUED YOUR

9    BROTHER.'

10         BUT I THINK WHAT'S MUCH MORE OF CONCERN TO US ARE THE    -01:-

11   MORE EMOTIONAL COMPONENTS OF THAT CASE.  FOR EXAMPLE, THERE ARE

12   SOME LENGTHY E-MAILS AND SOME WRITINGS BETWEEN COUNSEL ABOUT

13   FARHAD ACCUSING HIS BROTHER OF SCREAMING AT HIM AND THROWING A

14   CHAIR; STATEMENT LIKE THAT MADE IN THE HEAT OF PASSION THAT

15   DON'T HAVE ANYTHING DO WITH THIS CASE.  BUT I THINK A JURY    -01:-

16   HEARING TWO BROTHERS MAKING THOSE KINDS OF EMOTIONAL

17   STATEMENTS, PARTICULARLY IN A CASE WHERE FARHAD LARIAN

18   ULTIMATELY RECANTED EVERYTHING AND APOLOGIZED TO MR. LARIAN,

19   THAT WOULD BE, I THINK, QUITE CLEARLY, WITHIN THE PURVIEW OF

20   403.  THAT'S WHAT I'M CONCERNED ABOUT.    -01:-

21         IF THEY WANT TO PUT ISAAC LARIAN ON THE STAND AND

22   SAY, 'DIDN'T YOU TESTIFY 'X' PREVIOUSLY,' I DON'T THINK THERE'S

23   ANY PROBLEM WITH THAT.  WE CAN HANDLE THAT.  BUT I DON'T THINK

24   IT'S FAIR AND I THINK WE SHOULD HAVE RULES BEFORE WE START SO

25   THAT WE KNOW WHAT THE JURY IS GOING TO HEAR ON TUESDAY, SO WE    -01:-

```
 1   DON'T HEAR, 'YOU'RE GOING TO HEAR ISAAC LARIAN WAS SUED BY HIS
 2   BROTHER WHO CALLED HIM A LIAR, WHO SAID HE THROWS CHAIRS, HE'S
 3   VIOLENT, HE'S ABUSIVE.'  THAT, TO ME, IS WHAT WE'RE TALKING
 4   ABOUT HERE.  I DON'T HAVE ANY PROBLEM WITH A CASE BY CASE WITH
 5   RESPECT TO SPECIFIC STATEMENTS.                                   -01:-
 6           THE COURT:  THANK YOU, COUNSEL.
 7           MR. ZELLER?
 8           MR. ZELLER:  I GENERALLY AGREE THAT THE COURT HAS IT
 9   RIGHT, CERTAINLY, ON THIS; THAT IT IS NOT A MATTER OF IS IT
10   FROM ANOTHER PROCEDURE OR NOT.  AND CLEARLY, EVIDENCE FROM        -01:-
11   OTHER PROCEEDINGS, STATEMENTS FROM OTHER PROCEEDINGS, IT REALLY
12   TURNS ON ITS OWN MERITS, WE'LL SAY, AS TO WHETHER IT COMES IN
13   OR NOT.
14           THE COURT:  THIS COMES UP IN A NUMBER OF MOTIONS
15   IN LIMINE THAT YOU BROUGHT, THAT MGA HAS BROUGHT, THE HONG        -01:-
16   KONG-CHINESE LITIGATION, THE PRIOR ACTS, ALL OF THIS IS -- THE
17   THEME THAT I'M GOING TO TRY TO ESTABLISH IN MY RULINGS ON THESE
18   MOTIONS, TO THE EXTENT THAT SOME THINGS FROM THE PAST CAN BE
19   CLEARLY TIED IN TO A RELEVANT ISSUE IN THIS CASE, THEN THE FACT
20   THAT IT'S FROM ANOTHER LITIGATION OR SOMETHING ELSE IS NOT        -01:-
21   GOING TO BE DISPOSITIVE.
22           BUT I WOULD APPRECIATE YOUR THOUGHTS ON HOW DO WE
23   AVOID, SIMPLY, THE OVERLY POTENTIALLY PREJUDICIAL ASPECTS OF
24   THIS.
25           MR. ZELLER:  WHAT I WOULD SUGGEST IS THIS:  I DO NOT      -01:-
```

1   THINK IT IS FAIR, AND I ACTUALLY DON'T EVEN THINK IT'S

2   FEASIBLE, TO SHIELD THE JURY FROM THE FACT THAT THERE WAS A

3   DISPUTE BETWEEN THE BROTHERS.  I MEAN, THERE NEEDS TO BE ENOUGH

4   CONTEXT.  BECAUSE THE JURY IS GOING TO HAVE TO UNDERSTAND, FOR

5   EXAMPLE, WHY SOME OF THESE THINGS WERE BEING SAID; WHY SOME OF   -01:-

6   THESE THINGS HAPPENED.  AND THE SPOLIATION OF THE USB DRIVE

7   THAT HAD BRATZ DOCUMENTS ON IT WELL AFTER THIS LAWSUIT WAS

8   BROUGHT.  IT WILL BE ABSOLUTELY INEXPLICABLE TO THE JURY.

9        **THE COURT:**  AND I CAN UNDERSTAND PROVIDING THE

10   CONTEXT WHEN A PARTICULAR PIECE OF EVIDENCE IS INTENDED TO BE   -01:-

11   INTRODUCED.  BUT WHAT DO WE DO ABOUT OPENING STATEMENTS?

12   BECAUSE WHAT I DON'T WANT IS -- I PRESUME IT'S MR. QUINN WHO

13   WILL BE GIVING OPENING STATEMENTS.  I DON'T WANT TO BE FOCUSING

14   ON THE VERY TYPES OF THINGS MR. RUSSELL WAS REFERRING TO.

15        **MR. ZELLER:**  I THINK PART OF IT DEPENDS ON WHERE DO   -01:-

16   WE END UP ON SOME OF MGA'S POSITIONS?

17        YOU, OF COURSE, HEARD MR. NOLAN YESTERDAY DURING VOIR

18   DIRE MAKING COMMENTS ABOUT THE DUTY OF LOYALTY IS A TWO-WAY

19   STREET.

20        **THE COURT:**  BUT YOU GET TO GO FIRST, SO YOU'RE GOING   -01:-

21   TO BE SETTING THE TONE.

22        **MR. ZELLER:**  CORRECT.  BUT SOME OF THIS, WE MAY HAVE

23   COURSE TO RESPOND.  AND THIS GETS INTO ANOTHER MOTION, SO I

24   DON'T WANT TO GO TOO FAR INTO IT.  BUT, TO GIVE YOU AN

25   ILLUSTRATION, I ASSUME THAT WHAT MR. NOLAN IS DRIVING AT IS   -01:-

1  THAT AT SOME POINT DURING THE COURSE OF THE CASE THEY ARE GOING

2  TO WANT TO SAY "MATTEL IS JUST HORRIBLE TO ITS EMPLOYEES; THEY

3  LAID THEM OFF; THEY HAVE DONE ALL SORTS OF THESE HORRIBLE

4  THINGS." WELL, CERTAINLY, THE JURY IS GOING TO HAVE TO HEAR AT

5  THAT POINT WHAT MGA HAS DONE; SO THIS IDEA THAT SOMEHOW --          -01:-

6          **THE COURT:** ACTUALLY, I DON'T THINK WHAT OTHER

7  EMPLOYEES AND THE COMPANY'S RELATIONSHIPS WITH OTHER EMPLOYEES,

8  OR WHAT THEY HAVE DONE OR HAVEN'T DONE, IS, AS YOU ARGUE IN A

9  NUMBER OF YOUR MOTIONS *IN LIMINE*, ARE RELEVANT.

10          THIS FIRST PHASE OF THE TRIAL IS REALLY QUITE SIMPLE:   -01:-

11  THE OWNERSHIP OF BRATZ. THAT'S WHAT WE'RE TRYING TO DO HERE.

12          **MR. ZELLER:** RIGHT.

13          **THE COURT:** NOW, WHETHER THERE'S A BREACH OF THESE

14  CONTRACTS OR THESE DUTIES BY CARTER BRYANT AND WHETHER OR NOT

15  MGA PLAYED A ROLE IN AIDING AND ABETTING THAT OR INTENTIONALLY   -01:-

16  INTERFERING IN WHATEVER OBLIGATIONS OR DUTIES OR RELATIONSHIPS

17  THAT CARTER BRYANT HAD WITH MATTEL. BUT THAT'S IT.

18          **MR. ZELLER:** LET ME STEP BACK JUST A MOMENT, BECAUSE

19  THIS IS THE CONTEXT IN WHICH I SEE THIS.

20          CERTAINLY, ONE THING WE'RE GOING TO HAVE TO PROVE      -01:-

21  DURING THE COURSE OF PHASE 1-A IS MGA'S KNOWLEDGE. THEY ARE

22  GOING TO ABSOLUTELY DENY THAT THEY HAD ANY REASON TO KNOW THAT

23  ANY OF THIS HAPPENED. AND, CERTAINLY, IT IS AN ELEMENT AS TO

24  SOME OF OUR CLAIMS.

25          **THE COURT:** WE'LL CONDUCT SOME 404(B) ANALYSIS       -01:-

1  SHORTLY IN THE CONTEXT OF ONE OF YOUR MOTIONS ABOUT AGREEMENTS

2  WITH OTHER -- BUT THAT'S THE TOUCHSTONE, IS BEING ABLE TO SHOW

3  THAT A PARTICULAR RELATIONSHIP OR INFORMATION FROM ANOTHER

4  EMPLOYEE IS DIRECTLY RELATED TO KNOWLEDGE, INTENT.

5          AND CONVERSELY, MGA HAS CERTAIN AFFIRMATIVE DEFENSES,          -01:-

6  AGAIN, THAT KNOWLEDGE AND INTENT PLAY INTO.  BUT WE'VE GOT TO

7  AVOID THIS BROAD BRUSH AND JUST TRYING TO DIRTY UP MGA, OR MGA

8  TRYING TO DIRTY UP MATTEL.

9          I SUPPOSE THE ONLY WAY FOR ME TO DO THIS IS, WHEN I

10  HEAR IT, STOP IT IN THE OPENING STATEMENTS.  AND I DON'T LIKE          -01:-

11  DOING THAT.  I LIKE BEING ABLE TO SIT BACK IN OPENING

12  STATEMENTS AND LET THE ATTORNEYS PRESENT THEIR CASE.  BUT I

13  WANT TO PUT BOTH SIDES ON NOTICE NOW THAT I DO HAVE CONCERNS,

14  AFTER HEARING THE MINI OPENING STATEMENTS, AND THE POSITIONS

15  THAT YOU ARE TAKING WITH RESPECT TO THESE MOTIONS IN LIMINE,          -01:-

16  AND I WILL INTERRUPT, AND I DON'T WANT TO DO THAT.  I THINK

17  THAT CAN BE COUNTER PRODUCTIVE.  IF THE JURY HAS TO SEE THAT

18  THE JUDGE HAS TO SCOLD THE ATTORNEYS OR STOP THE ATTORNEYS FROM

19  TRYING TO BEAT UP ON THE OTHER SIDE, THEY ARE GOING TO FIGURE

20  OUT WHAT'S GOING ON.  AND I THINK IT'S GOING TO BE COUNTER          -01:-

21  PRODUCTIVE FROM YOUR CLIENTS' PERSPECTIVES.

22          **MR. ZELLER:**  THAT'S UNDERSTOOD, YOUR HONOR.

23          IF I MAY, I WAS ACTUALLY ATTEMPTING TO NOT SPEAK WITH

24  A BROAD BRUSH, ABSOLUTELY NOT.

25          WHAT I'M TRYING TO DO IS HEAD TOWARDS THE POINT OF          -01:-

1    HOW CONTEXT IS ULTIMATELY GOING TO NEED TO BE GIVEN.

2           **THE COURT:**  "ULTIMATELY" IS THE KEY WORD THERE.  IT

3    DOESN'T NEED TO BE GIVEN IN THE OPENING STATEMENTS.

4           **MR. ZELLER:**  THAT MAY BE FAIR ENOUGH.

5           WHAT I'M ULTIMATELY TRYING TO SAY IS THAT THE JURY

6    WILL NOT KNOW WHY IT WAS THAT FARHAD LARIAN HAD GONE AROUND FOR

7    A NUMBER OF YEARS COLLECTING ALL OF THIS INFORMATION ABOUT THE

8    ORIGINS OF BRATZ UNLESS THEY KNOW THERE WAS A DISPUTE AND THEN

9    THAT HE THEN DESTROYED IT.

10          WE CERTAINLY THINK WE HAVE ENOUGH INFORMATION, ENOUGH

11   EVIDENCE, TO TIE MGA INTO IT.  I MEAN, IT'S RELEVANT BECAUSE

12   FARHAD LARIAN HIMSELF WAS A WITNESS, AND THAT ALONE WOULD MAKE

13   IT RELEVANT.  BUT THE FACT IS THAT WE ALSO THINK IT'S PART OF

14   THIS OVERALL SPOLIATION OF EVIDENCE THAT, AS THE COURT IS

15   AWARE, IS ALSO TIED INTO SOME OTHER ISSUES THAT WE'LL BE

16   ADDRESSING OVER THE COURSE OF THE NEXT COUPLE OF DAYS.

17          **THE COURT:**  THANK YOU, COUNSEL.

18          **MR. ZELLER:**  THANK YOU.

19          **THE COURT:**  THE FIRST MOTION IN LIMINE IS DENIED.

20          HOWEVER, BOTH PARTIES SHOULD BE MINDFUL OF THE

21   COURT'S CONCERNS AND THE COURT'S ADMONITION THAT IT WILL NOT BE

22   RELUCTANT TO INTERVENE IF COUNSEL CROSSES THE LINE IN THEIR

23   OPENING STATEMENTS.

24          THE SECOND MOTION IN LIMINE OF MGA RELATES TO EXCLUDE

25   ALL EVIDENCE OF ISAAC LARIAN'S WEALTH AND ASSETS.

1    MY THOUGHT HERE IS THAT, CERTAINLY, MR. LARIAN'S

2  WEALTH AND ASSETS AS A GENERAL TOPIC, IS NOT PROPERLY

3  INTRODUCED.  HIS FINANCIAL GAIN SPECIFICALLY FROM BRATZ, FROM

4  THE BRATZ DOLL, WOULD BE RELEVANT, CERTAINLY, IN PHASE 1-B IN

5  TERMS OF DAMAGES; SO TO THE EXTENT THAT IS WHAT THE EVIDENCE IS    -01:-

6  GEARED TOWARDS, I'D BE INCLINED TO LET IT IN.  IF IT'S JUST HIS

7  OVERALL WEALTH AND ASSETS THAT HE HAS THAT ARE UNRELATED TO

8  BRATZ AND MGA AND ARE OUT THERE, THAT CERTAINLY WOULD BE

9  BEYOND -- LET'S PUT IT THIS WAY:  READING THE BRIEFS, I DON'T

10  SEE ANY RELEVANCE FOR THAT.    -01:-

11    **MR. RUSSELL:**  I AGREE.  IT DOES NOT HAVE BEARING IN

12  PHASE 1-A.  I'D LIKE TO TAKE A MOMENT TO AT LEAST TRY TO SHAPE

13  WHAT COULD BE HEARD BY THE JURY IN 1-B, AND THAT IS THAT IT'S

14  NOT CLEAR THAT MR. LARIAN'S FINANCIAL GAIN HAS TO BE LAID OUT

15  CHAPTER AND VERSE FOR COPYRIGHT CASE IN PARTICULAR THAT'S WHAT    -01:-

16  WE'RE TALKING ABOUT.  THEY ARE ALLOWED TO SHOW REVENUES.  WE

17  DEDUCT COSTS.  YOU GET PROFITS.  THAT'S WHAT THEY GET AFTER AN

18  APPORTIONMENT.

19    BUT I THINK FOR PURPOSES OF MR. LARIAN, WHAT THEY GET

20  IS HIS DISTRIBUTIONS FROM MGA OF THOSE PROFITS TO THE EXTENT    -01:-

21  THEY DON'T ALREADY RECOVER THEM FROM MGA.

22    **THE COURT:**  THERE IS A CREDIBILITY ISSUE AS WELL.  I

23  THINK PART OF EVALUATING MR. LARIAN'S TESTIMONY, WHICH NO DOUBT

24  WOULD BE A CRITICAL PIECE OF TESTIMONY IN THIS TRIAL, BOTH FOR

25  THE DEFENSE AND FOR THE PLAINTIFF, IS WHAT HE RECEIVES FROM    -01:-

```
 1   BRATZ AND HIS MOTIVE TO PROTECT BRATZ AND TO PROMOTE BRATZ, I

 2   SEE A RELEVANCE THERE AS WELL BEYOND JUST THE DAMAGE ISSUE.

 3           MR. RUSSELL:  IT DEPENDS ON THE TIMING WE'RE TALKING

 4   ABOUT.  IN OTHER WORDS, THE ARGUMENTS THAT WERE MADE BY MATTEL

 5   IN THE BRIEFS WERE THAT THEY WANTED TO INTRODUCE THIS EVIDENCE      -01:-

 6   TO ESTABLISH AIDING AND ABETTING TORTUOUS INTERFERENCE.  THEY

 7   WANT TO "CORROBORATE" THE INTENT BY SHOWING FINANCIAL GAIN.

 8   AND, OF COURSE, YOUR HONOR, WE SHOWED YOU THAT INTENT HAS TO BE

 9   MEASURED AT THE TIME OF THE ALLEGEDLY WRONGFUL ACTS; SO HERE

10   WHEN MR. LARIAN ALLEGED EITHER AIDED AND ABETTED -- INTERFERING    -01:-

11   IN A CONTRACT BETWEEN BRYANT AND MATTEL, WE HAVE TO LOOK AT

12   WHAT HIS GAIN AT THE TIME WAS, WHICH IS SPECULATIVE.  THAT'S

13   WHY, FOR PHASE 1-A, DOESN'T COME IN.  HE DIDN'T KNOW AT THE

14   TIME WHETHER OR NOT BRATZ WAS GOING TO BE SUCCESSFUL.  IT

15   DIDN'T HAPPEN FOR YEARS.  AND REALLY ALL THAT HIS FINANCIAL       -01:-

16   GAIN COMES INTO PLAY ON -- IT'S NOT FOR INTENT; IT'S FOR

17   DAMAGES.  AND THE JURY NEED NOT HEAR HUNDREDS OF MILLIONS OF

18   DOLLARS.  THEY CAN BE TOLD HIS OWNERSHIP IN MGA, WHICH IS A

19   MUCH MORE GENERIC STATEMENT THAT GETS THEM TO THE SAME PLACE

20   AND IS FAR LESS PREJUDICIAL.  I THINK THAT'S WHAT WE'RE HEADING    -01:-

21   FOR.

22           THE COURT:  THANK YOU, COUNSEL.

23           MR. RUSSELL:  THANK YOU.

24           MR. OLIVAR:  I THINK YOUR HONOR'S STATEMENT ABOUT

25   WEALTH AND ASSETS ARE CORRECT; THAT DOESN'T COME IN UNTIL THE     -01:-
```

1    PUNITIVE DAMAGE STAGE, WHICH IS LATER STAGE.  NOT PHASE ONE.

2           YOUR HONOR IS ALSO CORRECT THAT THE FINANCIAL

3    BENEFITS FROM BRATZ IS RELEVANT TO SOME PHASE ONE ISSUES.  I

4    THINK THERE'S BEEN SOME --

5           **THE COURT:**  SLOW DOWN, COUNSEL.  I NEED TO UNDERSTAND   -01:-

6    THIS ARGUMENT.

7           YOU SAY PHASE 1.  DO YOU MEAN 1-A?

8           **MR. OLIVAR:**  YES.  1-A ALSO.

9           **THE COURT:**  EXPLAIN HOW IT'S RELEVANT TO 1-A.  I GET

10   HOW IT'S RELEVANT TO 1-B, TO THE EXTENT THAT IT'S LIMITED TO   -01:-

11   HIS FINANCIAL GAIN FROM BRATZ.  HOW IS HIS FINANCIAL GAIN FROM

12   BRATZ RELEVANT TO 1-A, TO THE BREACH OF CONTRACT AND INDUCING

13   THE BREACH, ALL OF THE VARIOUS --

14          **MR. OLIVAR:**  IT IS RELEVANT EVIDENCE FOR THE AIDING

15   AND ABETTING CLAIM.                                           -01:-

16          **THE COURT:**  IN WHAT WAY?

17          **MR. OLIVAR:**  AS SET FORTH IN THE NEILSON VERSUS UNION

18   BANK CASE WHERE THE CASE CITES HECMAN V ALMONSON AND SAYS WE

19   DON'T THINK HECMAN V ALMONSON SHOULD BE READ TO FIND FINANCIAL

20   GAIN IS AN ELEMENT OF AIDING AND ABETTING.  HOWEVER, A REVIEW   -01:-

21   OF THE CASE LAW IN SCHOLARLY LITERATURE, CENTRAL DISTRICT IN

22   2003, INDICATES THAT THE PROPER ROLE TO ASSIGN TO FINANCIAL

23   GAIN IS IT SHOULD NOT BE VIEWED AS AN ELEMENT BUT AN EVIDENCE

24   OF KNOWLEDGE, SUBSTANTIAL ASSISTANCE, OR BOTH.

25          WE ALSO CITE THE MUNSON CASE, THIRD CIRCUIT, WHICH   -01:-

1   FINDS THE REQUIREMENT OF KNOWLEDGE --

2          **THE COURT:**  LET ME STOP YOU THERE.

3          LET'S THINK ABOUT THE LOGIC BEHIND THAT.

4          I CAN CERTAINLY SEE A CASE IN WHICH A PERSON WHO IS

5   STEALING, FRAUDULENTLY STEALING, SOME MONEY FROM SOMEBODY ELSE,   -01:-

6   OR FRAUDULENTLY STEALING A VALUABLE ART WORK FROM SOMEBODY

7   ELSE, THAT THE VALUE OF THAT ART WORK OR THE AMOUNT OF MONEY

8   THAT'S BEING TAKEN IS RELEVANT; THAT GOES TO THE MOTIVE; IT

9   GOES TO THE INTENT.

10          BUT YOU NEED TO ADDRESS COUNSEL'S ARGUMENT THAT AT   -01:-

11   THE POINT THAT THESE ACTS ALLEGEDLY TOOK PLACE, IT WAS

12   SPECULATIVE IN TERMS OF WHAT VALUE BRATZ WOULD HAVE.

13          **MR. OLIVAR:**  YOUR HONOR, AT THE TIME BRATZ WAS

14   MISAPPROPRIATED, WE THINK IT'S VERY IMPORTANT EVIDENCE UNDER

15   THE CASES WE CITED, MR. LARIAN STOOD TO GAIN SUBSTANTIALLY FROM   -01:-

16   A SUCCESSFUL PRODUCT AT MGA, AND THAT PROVIDES MOTIVE.  HE

17   STOOD TO GAIN SUBSTANTIALLY; SO IT'S A GREATER LIKELIHOOD OF

18   KNOWLEDGE, AND A GREATER LIKELIHOOD THAT HE WAS INVOLVED IN

19   ASSISTING THE BREACHES OF DUTY.  THAT'S WHAT THE CASES HOLD.

20   THE THIRD CIRCUIT CASE WE CITED IN THE CENTRAL DISTRICT OF   -01:-

21   CALIFORNIA CASE; THAT WHEN SOMEONE STANDS TO GAIN IS RELEVANT

22   TO THOSE ELEMENTS OF AIDING AND ABETTING.

23          THAT'S THE ONE POINT, YOUR HONOR.

24          **THE COURT:**  ONE STANDS TO GAIN, YES.  BUT IS WHAT ONE

25   ULTIMATELY GAINED NECESSARILY EVIDENCE OF WHAT ONE STANDS TO   -01:-

1  GAIN?  ISN'T WHAT'S RELEVANT WHAT HE UNDERSTOOD?

2          AND CERTAINLY, IF THERE WAS AN E-MAIL -- FOR ALL I

3  KNOW, THERE IS ONE SOMEPLACE OUT THERE -- IN WHICH, MR. LARIAN

4  SPECULATED AS TO HOW MUCH THIS IS WORTH OR SOMEBODY ELSE TOLD

5  HIM HOW MUCH THIS IS WORTH -- THAT WOULD BE EVIDENCE OF WHAT HE     -01:-

6  UNDERSTOOD HE STOOD TO GAIN.  AND UNDER THE CASE LAW THAT YOU

7  CITE, I COULD SEE THAT COMING IN.

8          BUT WHAT YOU'RE TRYING TO DO IS USE EVIDENCE OF A

9  FUTURE GAIN, WHICH AT THE TIME THAT HE'S ALLEGEDLY DOING WHAT

10 YOU ALLEGE HIM TO DO IS ONLY SPECULATION.                           -01:-

11         **MR. OLIVAR:**  WE BELIEVE THE EVIDENCE THERE WAS

12 SUBSTANTIAL IS EVIDENCE THAT HE HAD REASON TO BELIEVE THERE WAS

13 SUBSTANTIAL GAIN.

14         **THE COURT:**  I WILL ALLOW IN ANY EVIDENCE WHICH WOULD

15 INDICATE THAT THERE WOULD BE SUBSTANTIAL GAIN IN PHASE 1-A. BUT     -01:-

16 I THINK YOU'RE ASKING FOR SOMETHING DIFFERENT.  YOU'RE ASKING

17 FOR THE ACTUAL EVIDENCE OF SUBSTANTIAL GAIN TO COME IN IN 1-A;

18 CORRECT?

19         **MR. OLIVAR:**  WE'RE ASKING FOR BOTH, YOUR HONOR, BASED

20 ON 81-PERCENT SHARE OWNERSHIP, HE STOOD TO GAIN SUBSTANTIALLY.     -01:-

21         **THE COURT:**  ABSOLUTELY.  THE SHARE OWNERSHIP COMES

22 IN.  I DON'T THINK COUNSEL EVEN OBJECTED TO THAT.  WHATEVER

23 GAIN COMES IN, HE'S GOING TO GET 80 PERCENT OF; THAT COMES IN.

24 AND ANY EVIDENCE INDICATING THE VALUE.

25         BUT I DON'T KNOW IF IN PHASE 1-A WE NEED TO GET INTO         -01:-

1    THE TOTAL BREAK DOWN.

2         DO YOU UNDERSTAND THE DISTINCTION I'M TRYING TO

3    MAKING HERE?

4         **MR. OLIVAR:**  YES, YOUR HONOR.  WE THINK THE SECOND IS

5    ALSO RELEVANT UNDER THE REAP THE BENEFIT PORTION.                    -01:-

6         **THE COURT:**  I APPRECIATE THAT.

7         **MR. OLIVAR:**  THE OTHER POINT ABOUT PHASE 1-A IS WE DO

8    BELIEVE THAT THE GAINS AT STAKE GO TO BIAS AND CREDIBILITY AS

9    WELL.  MR. LARIAN HAS A TREMENDOUS AMOUNT OF STAKE IN THIS CASE

10   AND WE THINK THE AMOUNT HE HAS IS RELEVANT TO HIS                    -01:-

11   CREDIBILITY -- AS YOU POINTED OUT, THE TESTIMONY ABOUT THOSE

12   GAINS HAS NOT BEEN TRUTHFUL FROM MR. LARIAN IN THE PAST.  WE

13   ALSO BELIEVE IT GOES TO BIAS FROM THE WITNESS, WHICH IS ALWAYS

14   RELEVANT.

15        **MR. RUSSELL:**  YOUR HONOR --                                 -01:-

16        **THE COURT:**  THERE'S NO NEED, COUNSEL.  I WILL GRANT

17   IN PART AND DENY IN PART THIS MOTION IN LIMINE.  I WILL

18   CERTAINLY ALLOW MATTEL TO BRING IN ANY EVIDENCE OF MR. LARIAN'S

19   INTEREST IN THE COMPANY, ANY EVIDENCE THAT RELATES TO WHAT HE

20   STOOD TO GAIN FROM THE ALLEGED FRAUDULENT ACTIVITY, ALLEGED        -01:0

21   ACTIVITY IN THE COMPLAINT.

22        BUT PART OF THE WHOLE POINT OF DIVIDING THIS INTO 1-A

23   AND 1-B IS TO KEEP THE ACTUAL FINANCIAL BREAKDOWN, THE REVENUES

24   THAT CAME IN FROM BRATZ, ET CETERA, IN THAT SECOND PHASE, AND

25   THEY ONLY GET TO IT IF, IN FACT, THEY FOUND THE LIABILITY ON       -01:0

1    VARIOUS CLAIMS IN 1-A.

2            I'LL SPELL THAT OUT A LITTLE BIT CLEANER IN THE

3    ORDER.

4            THE THIRD MOTION IN LIMINE IS A MOTION TO EXCLUDE

5    REFERENCE TO AND USE OF EVIDENCE OF OTHER LEGAL PROCEEDINGS,          -01:0

6    AND THIS KIND OF TIES INTO MY ANALYSIS I GAVE IN THE FIRST

7    MOTION IN LIMINE.

8            **MR. NOLAN:**  AND YOUR HONOR, I'LL KEEP THOSE COMMENTS

9    IN MIND, BUT IF I COULD JUST PINPOINT A COUPLE OF CONCERNS

10   BECAUSE I THINK THIS MOTION RAISES SOME UNIQUE ISSUES.               -01:0

11           WE'VE HEARD SO MUCH ABOUT HONG KONG FROM MATTEL, AND

12   I SUSPECT THAT THEY ARE GOING TO ATTEMPT TO INTRODUCE -- IN

13   FACT, WHAT THIS MOTION IS REALLY DIRECTED TO IS TO EXCLUDING

14   FINDINGS OF OTHER COURTS, SUMMARIES OF OTHER COURT PROCEEDINGS,

15   MATTEL'S SUMMARIES OF THOSE PROCEEDINGS WHICH WE SUBMIT ARE          00:-5

16   COMPLETELY INACCURATE, AS WELL AS THE PRIOR STATEMENTS OFFERED

17   BY MGA ARE RELEVANT AND UNDULY PREJUDICIAL TO US.

18           IT'S FOR THIS PRECISE REASON WITH RESPECT TO CHINA,

19   HONG KONG, YOUR HONOR, THE DECLARATIONS -- LET ME STEP BACK, IF

20   I MIGHT.                                                            00:-5

21           IN PREPARING FOR THIS ARGUMENT LAST NIGHT, WHAT

22   STRUCK ME IS HOW MANY VERSIONS OF JURY INSTRUCTIONS HAVE BEEN

23   SUBMITTED TO YOU WITH RESPECT TO THE PROPER STANDARD OF -- IT'S

24   BREATHTAKING.

25           **THE COURT:**  YES.                                        00:-5

1          **MR. NOLAN:**  HAVING ARGUED TO YOU TWO TIMES NOW ON A

2    SUMMARY JUDGMENT MOTION AS TO ANALYTICAL DISSECTION, ABSTRACT

3    FILTRATION, WHAT DOES SUBSTANTIAL SIMILARITY MEAN UNDER U.S.

4    LAW, WHICH ALL OF US, I SUSPECT, AND I AM MAKING AN ASSUMPTION

5    HERE THAT THE COURT HAS MORE KNOWLEDGE OF THAN CERTAINLY HONG          00:-5

6    KONG LAW.

7          YET, WHAT MATTEL IS TRYING TO DO IS TO TAKE

8    STATEMENTS THAT ARE MADE IN CLAIMS FILED IN A FOREIGN

9    JURISDICTION, ALWAYS SUBMITTED UNDER THE LAWS OF HONG KONG,

10   SPECIFICALLY SAY THAT, WHERE THE HONG KONG LAW IS DIFFERENT.          00:-5

11   MATTEL HAS NOT SUBMITTED ANY EVIDENCE TO SUGGEST OTHERWISE.

12         FOR EXAMPLE, YOUR HONOR, IN THE MGA ENTERTAINMENT

13   VERSUS DOUBLE GRAND CORPORATION CASE, WHICH THEY CITE AND SAY

14   WE WOULD WANT TO GET IN MR. LARIAN'S DECLARATION IN THAT CASE

15   IDENTIFYING, QUOTE, "ARTISTIC WORKS" AND THAT HE RELIED ON --         00:-5

16   AND THERE WERE TWO select DRAWINGS OF CHLOE, THE DOLL CHLOE,

17   BECAUSE THAT'S WHAT THE INFRINGEMENT ACTION WAS BASED ON.

18   ACTUALLY, THE TERM "ARTISTIC WORKS" IN THAT SUBMISSION IN HONG

19   KONG INCLUDED TWO DRAWINGS OF CHLOE; A SET OF POLYURETHANE

20   SAMPLES OF SCULPTS; FACE PAINTS OF CHLOE THAT WAS DONE AFTER          00:-5

21   CARTER BRYANT LEAVES MATTEL'S EMPLOYMENT; A COLOR PANTON EYE

22   COLOR GUIDE, WHICH, FROM WHAT I TAKE IT, IT'S WHAT THE FACE

23   PAINTERS IN HONG KONG WOULD USE IN TERMS OF DECIDING WHAT COLOR

24   TO PUT ON EITHER FOR THE COMPLEXION OR THE EYE.  AND THEN DECO

25   MASTERS -- AND I'VE LEARNED THAT DECO MASTERS, YOUR HONOR, IS         00:-5

1  PRETTY CLOSE TO A FINAL FORM OF SCULPT THAT IS BEING USED TO

2  MAKE A DOLL.

3          INTERESTINGLY, IN HONG KONG -- AND I MAKE THIS

4  REPRESENTATION; I CAN BE PROVEN WRONG -- BUT I HAVE BEEN TOLD

5  THAT IN HONG KONG, YOU ARE NOT ALLOWED TO ASSERT A COPYRIGHT          00:-5

6  INFRINGEMENT ACTION BASED ON THE DOLL ITSELF, THE SCULPT.

7  WHICH OF COURSE, IT WOULD BE THE PREFERRED WAY.  YOU HAVE TO

8  RELY ON A SERIES OF ARTISTIC WORKS.  AND WHAT WE SAID WERE THAT

9  THE DRAWINGS WERE RELATED TO BRATZ.

10          NOW, I UNDERSTAND YOUR RATHER ELEGANT SOLUTION OF          00:-5

11  TRYING TO DEAL WITH THIS LATER AT TRIAL, AND MAYBE THAT WORKS

12  EVEN IN THE ARBITRATION BETWEEN FARHAD AND ISAAC.  BUT, YOUR

13  HONOR, IN HONG KONG, BEFORE WE EVEN GET THERE, THERE IS A HUGE

14  403 ARGUMENT AS TO HOW MUCH TIME WE'RE GOING TO HAVE TO USE UP

15  TO EXPLAIN THE LAW IN HONG KONG IS DIFFERENT THAN THE LAW IN          00:-5

16  THE UNITED STATES.

17          **THE COURT:**  COUNSEL, MAYBE I'LL SAVE YOU SOME TIME BY

18  INDICATING -- AND THIS ALSO TIES INTO ANOTHER MOTION IN LIMINE

19  WITH RESPECT TO THE EXPERTS -- THE COURT IS NOT GOING TO PERMIT

20  TOO MUCH LEGAL ANALYSIS OR LEGAL EVIDENCE, EXPLANATIONS OF THE          00:-5

21  LAW, BY ANYBODY IN THIS TRIAL.  THIS JURY IS TO DECIDE THE

22  FACTS AND WILL APPLY THE LAW AS I GIVE IT TO THEM; SO THERE'S

23  NOT GOING TO BE EXPERTS UP HERE DESCRIBING FOR THE JURY WHAT

24  THE LAW IS.  THERE'S NOT GOING TO BE EVIDENCE THAT'S ADMITTED

25  DESCRIBING LEGAL CONCLUSIONS.          00:-5

1      **MR. NOLAN:**  THAT DOESN'T COME AS A SURPRISE.

2          BUT IT IS PRECISELY YOUR HONOR'S HESITANCY TO DO THAT

3    INVOLVING U.S. LAW.  WHY SHOULD MATTEL BE ALLOWED TO TAKE OUT

4    PLEADINGS IN HONG KONG WITH NO EXPLANATION, WITHOUT ANY EXPERT

5    TESTIMONY?  WHEN THE LAW, WHEN THE FIRST STEP, IF YOU WOULD,         00:-5

6    THAT THE COURTS SUGGEST THAT WE LOOK AT, IS WHETHER OR NOT

7    THERE IS AN INCONSISTENCY IN POSITIONS TAKEN.

8          HOW CAN THE DETERMINATION BE THAT A STATEMENT

9    SUBMITTED UNDER HONG KONG LAW IN CONNECTION WITH A COPYRIGHT

10   INFRINGEMENT IS INCONSISTENT WITH THE POSITION BEING ASSERTED       00:-5

11   IN THIS JURISDICTION UNDER THE U.S. COPYRIGHT STATUTE?

12         **THE COURT:**  YOUR ARGUMENT HAS AN APPEAL TO IT,

13   MR. NOLAN.  THE PROBLEM IS THAT IT HAS -- I THINK IT GOES TOO

14   FAR BECAUSE IT THEN SERVES AS A SHIELD FOR BASICALLY YOUR

15   CLIENTS TO DO WHATEVER THEY WANT IN ANOTHER JURISDICTION, TAKE      00:-5

16   WHATEVER POSITION THEY WANT, HOWEVER INCONSISTENT WITH THE

17   POSITION THEY MAY BE TAKING HERE, AND SIMPLY INVOKE THE SHIELD.

18   "WELL, THAT WAS A DIFFERENT JURISDICTION.  THE LAW IS SLIGHTLY

19   DIFFERENT OVER THERE.  THEREFORE, YOU CAN'T USE ANY STATEMENT

20   OR BRING TO A JURY'S ATTENTION ANY POSITION THAT WE TOOK            00:-5

21   OVERSEAS."

22          I THINK THAT GOES TOO FAR.  WE NEED TO BALANCE THIS.

23          I AGREE WITH YOU THAT I JUST DON'T WANT A STATEMENT

24   THROWN OUT THERE THAT DOESN'T HAVE CONTEXT.  BUT AS MATTEL

25   POINTS OUT IN THEIR OPPOSITION PAPERS, WHAT THEY ARE SEEKING        00:-5

1    THE IS ABILITY TO ELICIT FROM THE MGA EMPLOYEE OR WITNESS

2    THEMSELVES, EXACTLY WHAT IS THE CONTEXT IN WHICH THAT STATEMENT

3    WAS MADE.

4           AND WE'RE TALKING HERE ABOUT, AND THE TYPE OF

5    STATEMENT THAT THE COURT WOULD BE INCLINED TO ALLOW IN OR THE          00:-5

6    TYPE OF TESTIMONY THE COURT WOULD BE INCLINED TO ALLOW IN,

7    WOULD BE TESTIMONY ABOUT FUNDAMENTAL POSITIONS TAKEN:  DO WE

8    OWN THIS?  IS THIS OURS?  DID WE CREATE THIS?  OR WHATEVER IT

9    MIGHT BE; IF IT'S THE BRATZ DOLL OR WHATEVER IT IS.  AS OPPOSED

10   TO THE TYPE OF LEGAL CONCLUSIONS THAT MAY HAVE BEEN RENDERED BY        00:-5

11   A HONG KONG OR A CHINESE COURT.  I THINK THERE'S A BIG

12   DISTINCTION THERE.  I THINK YOU MAY SWEEP TOO MUCH OUT BY YOUR

13   POSITION.

14          **MR. NOLAN:**  I MAY.  BUT IN SO SWEEPING, YOUR HONOR, I

15   DON'T WANT TO AT LEAST COLLECT WHAT I HAVE EXCLUDED.  I WANT TO        00:-5

16   MAKE ABSOLUTELY CERTAIN OF THIS.  AND I HAVE A VERY SIMPLE

17   PROPOSAL HERE.

18          YOUR HONOR, I DON'T THINK THAT FINDINGS OF OTHER

19   COURTS, OF ANOTHER COURT, WOULD BE RELEVANT IN THIS CASE.  AND

20   WE HAVE CERTAINLY CITED TO, FOR INSTANCE, THE MENDENHALL VERSUS       00:-5

21   CEDAR RAPIDS CASE; THAT WOULD BE TOTALLY INAPPROPRIATE.  WE

22   THINK IT USURPS THE FACTUAL FINDING PROCESS BY A JURY.  I DON'T

23   THINK THAT'S A REMARKABLE PROPOSITION AND I DON'T THINK IT'S

24   PAINTING WITH A BROAD BRUSH.

25          ALSO, YOUR HONOR, SUMMARIES THAT MATTEL HAS PREPARED          00:-5

1  REGARDING THOSE PROCEEDINGS SHOULD NOT BE ADMISSIBLE UNDER ANY

2  CIRCUMSTANCES.  AND YET, THAT'S WHAT THEY WANT TO DO.

3       **THE COURT:**  A SUMMARY IS ONLY AS GOOD AS THE EVIDENCE

4  BEHIND IT; SO AT THE END OF THE DAY, IF THEY PREPARE A SUMMARY

5  BASED ON TESTIMONY, I'M NOT GOING TO EXCLUDE THAT NOW; THAT          00:-5

6  WILL BE SOMETHING WHICH MAY BE DONE.  WE DON'T LEAD WITH THE

7  SUMMARY JUDGMENT, THOUGH.

8       **MR. NOLAN:**  AND I WANT TO COME BACK TO MAYBE A

9  PROCEDURE TO HANDLE THAT, BECAUSE WE CONTEND THAT MATTEL'S

10 SUMMARIES TO DATE NOW ARE INACCURATE.  MATTEL SHOULD NOT BE        00:-5

11 ALLOWED TO ARGUE JUDICIAL ESTOPPEL BASED ON ANY STATEMENTS OR

12 ARGUMENTS MADE, AND YET THEY HAVE A LOT OF JURY INSTRUCTIONS

13 THAT THEY ARE SUBMITTING ON THIS VERY POINT.

14      WE CAN GET TO IT IN THE CONTEXT OF JURY INSTRUCTIONS,

15 AND MAYBE THAT'S THE BETTER TIME TO DO IT.                        00:-5

16      **THE COURT:**  I THINK SO.

17      **MR. NOLAN:**  HERE'S WHAT I DON'T WANT, AND I THINK

18 THIS IS A SIMPLE RULE, YOUR HONOR.  IF SOMETHING IS GOING TO BE

19 PRESENTED FROM ANOTHER PROCEEDING, AND, IN PARTICULAR, HONG

20 KONG, BEFORE IT'S MENTIONED, THAT WE ARE ALLOWED TO AT LEAST       00:-5

21 SEE HOW IT'S GOING TO BE.  BUT IF MR. LARIAN IS ON THE STAND

22 AND THEY WANT TO PRESENT A DECLARATION, I'D LIKE TO BE HEARD AS

23 TO THAT PARTICULAR DECLARATION AHEAD OF TIME, MAYBE AT SIDE-BAR

24 FOR JUST ONE SECOND, TO MAKE THE FURTHER ADDITIONAL POINT.

25 WE'RE KIND OF DEALING WITH A BROAD BRUSH, AND WE HAVE TO.  IT'S    00:-5

1   A MOTION IN LIMINE, AND IT'S BREATHTAKING THE NUMBER OF

2   EXHIBITS THAT ARE HERE AND THE ARGUMENTS THAT HAVE BEEN MADE.

3   AND I THINK I'M A LITTLE BIT MORE CONSERVATIVE AFTER YESTERDAY,

4   IN TERMS OF THE BREADTH OF THE ARGUMENTS THAT I THINK COULD BE

5   MADE.                                                          00:-5

6           WHAT I WOULD ASK, YOUR HONOR, I THINK THERE SHOULD BE

7   A CLEAR BRIGHT LINE RIGHT NOW THAT YOU COULD GO ON THAT

8   FINDINGS OF OTHER COURTS ARE NOT ADMISSIBLE; THE SUMMARIES WILL

9   NOT BE PRESENTED UNLESS THERE'S A DETERMINATION BEFOREHAND,

10  EITHER THROUGH A MEET AND CONFER PROCESS THAT, A, THEY ARE      00:-5

11  RELEVANT AND ACCURATE, AND WE GET TO MAKE THAT ARGUMENT TO YOU;

12  AND THAT NO EVIDENCE BE INTRODUCED FROM HONG KONG OR MENTIONED

13  TO THE JURY UNLESS WE CAN APPROACH THE COURT AND MAKE THIS

14  UNDERSTANDING AS TO EXACTLY WHAT THEY ARE SAYING.

15          BUT IF THEY WANT TO ASK MR. LARIAN, FOR INSTANCE, DID   00:-5

16  YOU MAKE THIS STATEMENT IN HONG KONG IN A DECLARATION, AND

17  MR. LARIAN ANSWERS YES, I WILL NEED TO BE ABLE TO ASK

18  MR. LARIAN TO LOOK AT THE LAST PAGE; IT'S FILED UNDER THE LAWS

19  OF HONG KONG.  DID YOU UNDERSTAND THE LAW TO BE DIFFERENT, OR

20  SOMETHING LIKE THAT.                                           00:-4

21          **THE COURT:**  OF COURSE.

22          **MR. NOLAN:**  BUT, YOUR HONOR, THEIR EFFORTS HERE ARE

23  VERY BROAD IN TERMS OF WHAT THEY WANT TO PUT IN THESE

24  PROCEEDINGS, AND THAT'S WHAT I WANT TO MAKE CERTAIN IS THAT

25  THERE IS CLEAR GUIDANCE ON THIS FROM THE COURT IN KEEPING WITH  00:-4

1    YOUR STATEMENT REGARDING HOW YOU'RE GOING TO APPROACH THIS,

2    MORE OR LESS ON A SELECTIVE BASIS.  IF SOMEONE IS TAKING AN

3    INCONSISTENT POSITION, THEN THAT'S FAIR GAME, AS LONG AS IT CAN

4    BE SHOWN THAT IT'S INCONSISTENT.  THAT'S THE POINT I WANT TO

5    MAKE BEFOREHAND.                                                    00:-4

6          **THE COURT:**  THANK YOU, COUNSEL.

7          MR. COREY?

8          **MR. COREY:**  THANK YOU, YOUR HONOR.

9          SO APPARENTLY WHAT'S BEING ASKED OF MATTEL IS THAT WE

10   CONSULT WITH COUNSEL BEFORE WE IMPEACH WITNESSES IN THE MIDDLE      00:-4

11   OF CROSS?  THAT'S WHAT I HEARD.

12         **THE COURT:**  SOMETHING ALONG THOSE LINES.

13         MR. NOLAN PROBABLY WOULD PREFER YOU CONSULT HIM ON

14   EVERYTHING.

15         **MR. NOLAN:**  I'M HERE AND I'M ALWAYS AVAILABLE.           00:-4

16         **THE COURT:**  THAT GOES ALONG WITH A 1-WEEK NOTICE ON

17   WHO YOU'RE GOING TO CALL.

18         **MR. COREY:**  MAYBE WE CAN JUST DO SCRIPTS FOR EACH

19   OTHER AND JUST AVOID THE WHOLE PROCESS.

20         **THE COURT:**  WHAT THE COURT IS INCLINED TO DO IS GRANT    00:-4

21   THE MOTION WITH RESPECT TO THE FINDINGS BY A FOREIGN COURT.

22   I'M REALLY CONCERNED ABOUT FINDINGS BY A FOREIGN COURT BASED ON

23   FOREIGN LAW BEING PRESENTED TO THIS JURY; THAT REALLY RAISES

24   SOME REAL CONCERNS.

25         I'M MUCH MORE INCLINED TO GO ALONG WITH YOUR REQUEST         00:-4

```
 1   TO BE ABLE TO EXAMINE PARTICULAR WITNESSES ABOUT STATEMENTS
 2   THEY MADE OR POSITIONS THAT THEY TOOK AND THEN PROVIDE BOTH
 3   COUNSEL AN OPPORTUNITY TO EXAMINE AND CROSS-EXAMINE AND MAKE
 4   SURE THOSE STATEMENTS ARE BEING PLACED IN A CORRECT CONTEXT AND
 5   THAT THE JURY UNDERSTANDS THAT THIS IS A FOREIGN PROCEEDING        00:-4
 6   UNDER DIFFERENT LAW.  IT'S THOSE ULTIMATE CONCLUSIONS THAT I'M
 7   CONCERNED ABOUT, SO IF YOU COULD START BY ADDRESSING THOSE.
 8        MR. COREY:  ABSOLUTELY, YOUR HONOR.
 9        AND MAYBE WE SHOULD START BY TALKING ABOUT THE
10   MENDENHALL CASE JUST A LITTLE BIT.                                00:-4
11        IN THE MENDENHALL CASE, IT WASN'T REALLY A JUDICIAL
12   ESTOPPEL ARGUMENT.  THERE HAD BEEN A PRIOR DECISION BY A JUDGE,
13   AND, I BELIEVE, A 100-PLUS PAGE OPINION BENCH TRIAL WITH
14   RESPECT TO THE VALIDITY OF A CERTAIN PATENT.  AND IN A
15   SUBSEQUENT PROCEEDING RELATED TO THAT PATENT BY THE PLAINTIFF     00:-4
16   AGAINST A DIFFERENT DEFENDANT, SO YOU'VE GOT OFFENSIVE -- THE
17   PLAINTIFF AGAINST THE STRANGER DEFENDANT TRIED TO INTRODUCE
18   THAT 100-PAGE OPINION IN FRONT OF THE JURY.  I DON'T THINK --
19   THAT'S NOT THE KIND OF ANIMAL WE'RE TALKING ABOUT HERE.
20        WHAT WE'RE CONCERN ABOUT ARE INCONSISTENT POSITIONS,        00:-4
21   DOCUMENTING INCONSISTENT POSITIONS.  AND TO THE EXTENT THAT
22   THOSE ARE REFLECTED IN THE FINDINGS OF PRIOR COURTS, WE THINK
23   THAT THOSE ARE FAIR GAME.
24        THE COURT:  I GET THE POSITIONS PART.  BUT WHAT DOES
25   THE FINDING ADD TO THAT?                                         00:-4
```

1          LET'S SAY MR. LARIAN SAYS "I OWN X AND SUED OVER

2     CLAIMING THAT I OWED X" AND THE JUDGE, OR WHATEVER, THE COURT

3     FOUND THAT HE OWNED X.  WHAT DOES THAT FINDING ADD THAT THE

4     CLAIM AND THE LITIGATION DOESN'T ALREADY BRING?  HE'S LOCKED

5     IN; THAT'S HIS POSITION.  WHETHER IT'S TRUE OR NOT --                    00:-4

6          **MR. COREY:**  THAT'S THE THING.  IF YOU HAVE A

7     DETERMINATION THAT IT IS TRUE, OR IT ISN'T, DEPENDING ON WHAT

8     THE POSITION IS.

9          **THE COURT:**  BUT THAT'S BASED ON FOREIGN LAW.

10         WITHOUT REPLICATING THAT TRIAL BEFORE THIS JURY,                    00:-4

11    AREN'T WE SUBSTITUTING A FACT FINDING BY ANOTHER COURT THAT

12    THIS JURY IS SUPPOSED TO -- IT'S GETTING AT THE IMPRIMATUR THAT

13    ANOTHER COURT HAS ALREADY FOUND THIS, SO YOU'VE GOT ACCEPT IT.

14         **MR. COREY:**  WELL, HERE'S THE FUNNY THING ABOUT THAT.

15         IF THEY HAD BEEN CONSISTENT THROUGHOUT THEIR                        00:-4

16    PROSECUTION AND THE DEFENSE OF THIS INTELLECTUAL PROPERTY, THIS

17    WOULD NOT BE AN ISSUE BEFORE THIS COURT.

18         **THE COURT:**  PERHAPS.

19         **MR. COREY:**  WE'RE HERE TODAY, THEY ARE WORRIED ABOUT

20    THIS, BECAUSE THEY HAVE HAD TO CHANGE POSITIONS.  THAT, TO ME,           00:-4

21    IS THE REASON WE HAVE JUDICIAL ESTOPPEL AND IMPEACHMENT AND

22    THINGS LIKE THAT.  THAT'S WHY WE'RE HERE.  THE BEST THING THAT

23    I HAVE TO IMPEACH IN SOME INSTANCES MAY BE A FINDING FROM A

24    PRIOR COURT.

25         **THE COURT:**  I PRESUME ANY FINDING OF A FOREIGN COURT            00:-4

```
 1   WILL HAVE BEEN PREDICATED UPON SOME POSITION TAKEN BY THE

 2   PARTIES IN THAT FOREIGN COURT.

 3          MR. COREY:  THAT'S TRUE.

 4          THE COURT ORDERED A NUMBER OF THESE DOCUMENTS TO BE

 5   PRODUCED, I BELIEVE, LAST WEEK; SO WE'RE KIND OF DOING THIS IN    00:-4

 6   BITS AND PIECES.

 7          THE COURT:  I SEE.

 8          MR. COREY:  SO IF THAT'S ONLY PIECE OF EVIDENCE THAT

 9   I HAVE, I DON'T WANT TO BE PRECLUDED FROM RELYING ON IT -- THE

10   FINDING, RATHER THAN AN UNDERLYING COURT RECORD.                 00:-4

11          THE COURT:  I THINK I'M GOING TO FOLLOW THROUGH WITH

12   THE ORDER THAT I SUGGESTED, BUT I WOULD CERTAINLY GIVE YOU

13   LEAVE TO REVISIT THIS ISSUE IF, FOR SOME REASON, THE ONLY PIECE

14   OF EVIDENCE THAT YOU HAD ON A POSITION THAT A WITNESS TOOK IN A

15   FOREIGN COURT, ASSUMING THAT POSITION IS RELEVANT TO SOMETHING   00:-4

16   IN THIS CASE, WAS THAT FINDING.  I WOULD CERTAINLY GIVE YOU

17   LEAVE.

18          OTHERWISE, I'M GOING TO GRANT THE MOTION IN LIMINE

19   WITH RESPECT TO ANY FINDINGS BY ANOTHER COURT.  I'M GOING TO

20   OTHERWISE DENY THE MOTION IN LIMINE SUBJECT TO INDIVIDUAL        00:-4

21   OBJECTIONS.  YOU CERTAINLY PRESERVE ALL OF YOUR RIGHTS TO

22   OBJECTION, WHETHER IT'S RELEVANCE, THE WHOLE PANOPLY OF

23   EVIDENTIARY OBJECTIONS TO ANYTHING THAT'S BEING INTRODUCED.

24          MOVING RIGHT ALONG TO NUMBER FOUR.

25          EXCLUDE REFERENCE TO AND USE OF MGA'S EMPLOYMENT          00:-4
```

1    AGREEMENTS WITH ITS EMPLOYEES.

2          MY THOUGHT HERE IS THAT GENERALLY THAT'S NOT

3    RELEVANT.  I THINK THE DEFENSE IS CORRECT.

4          HOWEVER, I COULD SEE HOW IT COULD BE MADE RELEVANT OR

5    THE DOOR TO THIS COULD BE OPENED UP BY A POSITION IF MGA TAKES          00:-4

6    THE POSITION THAT, LOW AND BEHOLD, EMPLOYMENT AGREEMENT?  WHAT

7    EMPLOYMENT AGREEMENT?  WE'VE NEVER SEEN AN EMPLOYMENT AGREEMENT

8    LIKE THIS BEFORE.  WE HAD NO REASON TO EXPECT THAT MATTEL WOULD

9    HAVE EVER DONE SOMETHING LIKE THIS.  WHEN THEIR OWN EMPLOYEES

10   HAVE THE SAME TYPE OF AGREEMENTS AND HAVE COME OVER WITH THE           00:-4

11   SAME TYPE OF AGREEMENTS FROM MATTEL.

12         SO I KIND OF TEND TO THINK THIS IS ONE THAT THE DOOR

13   COULD EASILY BE OPENED TO, ALTHOUGH PERHAPS THIS IS NOT

14   SOMETHING WHICH THE PLAINTIFF BE PERMITTED TO LEAD WITH.

15         **MR. RUSSELL:**  YOUR HONOR, THAT WOULD BE FINE WITH US.        00:-4

16   IF THE DOOR IS OPENED, WE'LL ADDRESS WHETHER GET TO WALK IN AT

17   THAT TIME.  BUT I THINK RIGHT NOW, THE DOOR SHOULD BE FIRMLY

18   BOLTED SHUT, PARTICULARLY GIVEN THAT THE RECORD IS IT WAS

19   PRECISELY BECAUSE OF CONCERNS ABOUT INVENTIONS AGREEMENTS IN

20   THE TOY INDUSTRY THAT MR. LARIAN AND OTHERS WERE INQUIRING OF          00:-4

21   MR. BRYANT WHETHER OR NOT HE HAD AN AGREEMENT WITH MATTEL.

22         SO, IN OTHER WORDS, THERE ISN'T ANY -- YOU DON'T NEED

23   TO PROBE MGA'S CONTRACTS TO SEE THAT.  SO WHAT MGA DID OR

24   DIDN'T DO SPECIFICALLY WOULD NOT BE RELEVANT.  BUT IF WE GET UP

25   THERE AND TAKE THE POSITION THAT WE DON'T HAVE THAT AGREEMENT,         00:-4

```
 1   AND PUT IT SQUARELY AT ISSUE, CERTAINLY LET'S ADDRESS IT THEN.
 2   BUT FOR NOW, I JUST DON'T SEE THE RELEVANCE AT THE THRESHOLD.
 3              THE COURT:  LET ME HEAR FROM MATTEL.
 4              MR. PROCTOR:  ON SUMMARY JUDGEMENT, MGA'S MAIN
 5   DEFENSE TO THE INTENTIONAL INTERFERENCE CLAIM WAS THAT THEY DID    00:-4
 6   NOT KNOW ABOUT THE CONTRACT, THEY DID NOT KNOW THE TERMS OF THE
 7   CONTRACT.  PROVING KNOWLEDGE OF AN ADVERSE PARTY IS NOT EASY.
 8   WE'RE NOT LIKELY TO GET A DIRECT ADMISSION OF, YES, I KNEW
 9   THIS.  WE DID GET A SEMI-DIRECT ADMISSION MR. ROSENBAUM, THEIR
10   LAWYER.  BUT WE DON'T HAVE ANYTHING LIKE THAT FROM MR. LARIAN.     00:-4
11        "YES, I KNEW WHAT THE TERMS OF MATTEL'S CONTRACTS
12   WERE."  SO CIRCUMSTANTIAL EVIDENCE IS KEY TO BE ABLE TO PROVE
13   THEIR KNOWLEDGE.  AND COURTS EVEN HOLD THAT THINGS LIKE
14   INDUSTRY PRACTICE ARE CIRCUMSTANTIAL EVIDENCE THAT'S ADMISSIBLE
15   TO PROVE KNOWLEDGE.  THE NORTHERN DISTRICT HELD THAT LAST YEAR.    00:-4
16   I CAN PROVIDE A CITE.
17        HERE WE'RE TALKING ABOUT MORE THAN INDUSTRY PRACTICE.
18   WE'RE TALKING ABOUT MGA'S OWN PRACTICE.  AND THE CONTRACTS THAT
19   THEY HAD THAT WERE SIGNED BY MR. LARIAN IN THE YEAR 2000 AND IN
20   1999 ARE STRIKINGLY SIMILAR IN THE KEY PROVISIONS.  THE KEY       00:-4
21   PROVISION, THE ASSIGNMENT OF INTEREST PROVISION ASSIGNS TO MGA
22   "ALL INTERESTS WHICH EMPLOYEE MAY HAVE AND ALL PATENTABLE
23   AND/OR NON PATENTABLE IDEAS AND/OR INVENTIONS MADE OR CONCEIVED
24   BY EMPLOYEE SOLELY OR JOINTLY WITH OTHERS, ETC.  THIS
25   ASSIGNMENT SHALL NOT APPLY TO ANY IDEA OR INVENTION DEVELOPED     00:-4
```

1  BY EMPLOYEE ENTIRELY ON EMPLOYEE'S OWN TIME WITHOUT EQUIPMENT,

2  SUPPLIES, FACILITIES OR RESOURCES OF THE COMPANY, UNLESS SUCH

3  INVENTION OR IDEA RELATES TO THE BUSINESS OF THE COMPANY."

4       **THE COURT:**  COUNSEL, DO YOU HAVE EVIDENCE OF THE

5  INDUSTRY PRACTICE?                                             00:-4

6       **MR. PROCTOR:**  YES.  WE HAVE AN EXPERT ON THAT.

7       **THE COURT:**  THAT'S WHAT I THOUGHT; SO YOU'RE GOING TO

8  GET YOUR EVIDENCE, ASSUMING THAT -- I KNOW IT'S SUBJECT TO YET

9  ANOTHER MOTION IN LIMINE -- BUT IT DOES SEEM YOU'RE GOING TO BE

10  ABLE TO ESTABLISH THAT.                                       00:-4

11       **MR. PROCTOR:**  SURE.

12       **THE COURT:**  BUT I, LIKE THE COURT YOU REFER TO, IS

13  MORE COMFORTABLE WITH INDUSTRY PRACTICE AS OPPOSED TO BRINGING

14  IN PARTICULAR AGREEMENTS AND SAYING IS THIS WHAT THESE

15  AGREEMENTS SAY, AND THAT SOMEHOW MR. LARIAN SHOULD ASSUME THAT   00:-4

16  CARTER BRYANT'S AGREEMENT SAYS THE SAME THING THAT HIS

17  AGREEMENT SAYS.

18       **MR. PROCTOR:**  SURE.  AND IT'S NOT SIMPLY THAT HE

19  SHOULD HAVE ASSUMED THAT.

20       MGA'S AGREEMENT --                                  00:-4

21       **THE COURT:**  ISN'T THAT WHAT YOU'RE ARGUING?  YOU'RE

22  SUGGESTING THIS IS THE PRACTICE.  "JURY, YOU SHOULD ASSUME THAT

23  MR. LARIAN KNEW THAT THERE WOULD BE AN AGREEMENT HERE AND THAT

24  HE WAS VIOLATING THAT AGREEMENT, BECAUSE, LOOK, HIS AGREEMENTS

25  PREVENT THIS."                                                00:-3

1    HE'S ON NOTICE, SOMEHOW, OF MR. BRYANT'S AGREEMENT BY

2  VIRTUE OF HIS COMPANY'S AGREEMENT.

3         **MR. PROCTOR:**  LET ME TRY TO CLARIFY.

4    THE TOY INDUSTRY IS NOT THAT BIG.  PROOF OF INDUSTRY

5  PRACTICE INCLUDES PROOF OF MGA'S OWN PRACTICES.  MGA'S OWN

6  PRACTICE AT THE TIME WAS TO INCLUDE AN INVENTIONS AGREEMENT

7  WHICH IS MUCH LIKE MATTEL'S.

8    NOW, MGA DENIES KNOWING WHAT MATTEL'S WERE, AND PROOF

9  OF THE TERMS OF MGA'S AGREEMENTS MAY NOT, IN AND OF ITSELF,

10  PROVE KNOWLEDGE OF THE TERMS OF MATTEL'S AGREEMENTS.  BUT IT IS

11  EVIDENCE.  IT IS RELEVANT EVIDENCE.  AND IT TENDS TO SHOW

12  KNOWLEDGE THAT IN THIS INDUSTRY, TOY COMPANIES REQUIRE THEIR

13  DESIGNERS TO ASSIGN TO THEIR EMPLOYERS ALL INVENTIONS THEY

14  CREATE WHILE WORKING FOR THEM AT ANY TIME OF DAY.

15    THE FACT THAT MR. LARIAN REQUIRED THAT OF HIS OWN

16  EMPLOYEES CAN'T BE SHIELDED FROM THE JURY WHEN -- YESTERDAY

17  MR. NOLAN, AFTER THE OPENINGS, I THINK, IT WAS OUTSIDE OF THE

18  PRESENCE OF THE JURY -- MR. NOLAN SAID TO YOU THAT MR. LARIAN

19  WAS GOING TO TESTIFY THAT AT MGA, IF AN EMPLOYEE DID SOMETHING

20  AT NIGHT, MGA WOULD NEVER CLAIM IT.  THAT'S WHAT HE SAID TO YOU

21  JUST YESTERDAY.

22    THIS AGREEMENT FLATLY CONTRADICTS THAT.  THIS

23  AGREEMENT WAS EXECUTED AND ROLLED OUT BY MR. LARIAN, SIGNED BY

24  MR. LARIAN PERSONALLY, AT EXACTLY THE TIME --

25         **THE COURT:**  BUT YOU DON'T GET TO INTRODUCE EVIDENCE

    1   DURING THE TRIAL TO REBUT THINGS THAT WERE SAID OUT OF TRIAL.

    2        MR. PROCTOR:  FAIR ENOUGH.

    3        AT EXACTLY THE TIME THAT HE WAS NEGOTIATING WITH

    4   MR. BRYANT AND CLAIMING "I HAVE NO IDEA WHAT MATTEL'S

    5   AGREEMENTS SAY."                                              00:-3

    6        THE COURT:  IF THAT WAS DONE IN THE TRIAL, I COULD

    7   SEE -- THAT'S THE TYPE OF OPENING THE DOOR THAT I'M TALKING

    8   ABOUT.  BUT WHAT I'M TRYING TO GET FROM YOU IS AN EXPLANATION

    9   AS TO WHY, FROM THE GET-GO, YOU SHOULD BE ABLE TO INTRODUCE

   10   THESE EMPLOYMENT AGREEMENTS.                                  00:-3

   11        MR. PROCTOR:  BECAUSE CIRCUMSTANTIAL EVIDENCE IS

   12   CLEARLY ADMISSIBLE, AND THIS IS AN ELEMENT OF CIRCUMSTANTIAL

   13   EVIDENCE.  THERE IS NOTHING PREJUDICIAL ABOUT THIS AGREEMENT.

   14        THE COURT:  CIRCUMSTANTIAL EVIDENCE OF WHAT?  OF THE

   15   FACT THAT THESE EMPLOYMENT AGREEMENTS ARE COMMON IN THE       00:-3

   16   INDUSTRY?

   17        MR. PROCTOR:  ABSOLUTELY.  AND COMMON AT MGA.  THE

   18   FACT THAT MGA KNOWS THEY ARE COMMON IN THE INDUSTRY BECAUSE

   19   IT'S WHAT THEY DO.  IT'S WHAT MR. LARIAN REQUIRES OF HIS

   20   EMPLOYEES.  THAT IS CIRCUMSTANTIAL EVIDENCE THAT TENDS TO PROVE   00:-3

   21   HIS KNOWLEDGE OF MATTEL'S CONTRACT.

   22        AND RELEVANCE IS THE STANDARD HERE.  THIS IS 401.  IT

   23   JUST HAS TO TEND TO PROVE SOMETHING.  THERE'S NOTHING

   24   PREJUDICIAL OR TIME CONSUMING OR CONFUSING OR ANYTHING ELSE

   25   ABOUT THIS THREE-PAGE AGREEMENT.  TO SHIELD THAT FROM THE JURY   00:-3

```
1    WOULD BE UNFAIR.

2         THE COURT:  MR. RUSSELL, I'LL GIVE YOU A FEW MOMENTS.

3         MR. RUSSELL:  FIRST, YOUR HONOR, I'LL POINT OUT THAT

4    THE COMMENTS THAT MR. PROCTOR WAS REFERENCING MADE BY

5    MR. NOLAN --                                                    00:-3

6         THE COURT:  FORGET ABOUT THOSE.  GET ON TO THE BETTER

7    ARGUMENT.

8         MR. RUSSELL:  HERE, THE RECORD EVIDENCE IS AS

9    FOLLOWS, AND THIS IS THE CASE MGA IS GOING TO PUT ON, WE'VE

10   REFERENCED IT IN OUR SUMMARY JUDGMENT ARGUMENTS:  EVIDENCE OF   00:-3

11   WHAT IT IS THAT MGA KNEW IS THIS:  THEY ASKED MR. BRYANT, "DO

12   YOU HAVE A CONTRACT WITH MATTEL?  DOES IT COVER BRATZ?"

13        HE SAID NO.  HIS PATENT ATTORNEY SAID NO.  HE SIGNED

14   A CONTRACT THAT SAID NO.  AND HE INDEMNIFIED MGA IF HE WAS

15   LYING.                                                          00:-3

16        THE COURT:  SO YOU'VE GOT SOME STRONG EVIDENCE HERE.

17   MR. NOLAN POINTED THIS OUT QUITE WELL YESTERDAY, AND THE COURT

18   IS MINDFUL ON THAT ISSUE.  BUT --

19        MR. RUSSELL:  SO WHAT WOULD BE THE RELEVANCE OF, FROM

20   THE GET-GO --                                                   00:-3

21        THE COURT:  INDUSTRY STANDARD IS WHAT HE'S SAYING, SO

22   RESPOND TO THAT.

23        MR. RUSSELL:  YOU DON'T NEED THAT EVIDENCE PRECISELY

24   BECAUSE THE COURT --

25        THE COURT:  THAT'S THE BEST EVIDENCE THEY HAVE.  THEY      00:-3
```

1    DON'T NEED IT.  THEY ARE DESPERATE FOR IT.

2          WHAT ARE YOU TALKING ABOUT?

3       **MR. RUSSELL:**  BECAUSE IT'S IRRELEVANT.  THE FACT IS

4    THEY ARE GOING TO GET THAT EVIDENCE IN A WAY WITHOUT PUTTING

5    OUR CONTRACTS IN.  THEY ARE GOING TO GET INDUSTRY PRACTICE IN          00:-3

6    FROM OUR MOUTHS.  WE'RE GOING TO SAY, 'WE KNOW MATTEL IS

7    AGGRESSIVE IN SUING PEOPLE.  WE KNOW THAT THEY" --

8       **THE COURT:**  THAT'S ASSUMING ANOTHER MOTION IN LIMINE.

9    BUT LETS NOT GET AHEAD OF OURSELVES.

10      **MR. RUSSELL:**  YOU CAN'T SAY YOU'RE GOING TO PUT IN           00:-3

11   OUR CONTRACT AND SHOW THAT WE WOULD HOLD EMPLOYEES TO THESE

12   TIGHT INVENTIONS AGREEMENTS AND THEN SAY BUT WE DON'T GET TO

13   SAY -- WE HAVE A CONCERN, IS SOMEONE AT MATTEL SUBJECT TO A

14   CONTRACT.  OUR EVIDENCE IS EXACTLY THAT:  WE WERE CONCERNED

15   ABOUT THE CONTRACT; THAT'S WHY WE INQUIRED.                          00:-3

16         AND THERE'S NO REASON TO PUT IN MGA'S CONTRACT UNLESS

17   MGA SAYS "WE'VE NEVER HEARD OF SUCH A SILLY THING.  NO ONE IN

18   THE TOY INDUSTRY IS SUBJECT TO SUCH A RESTRICTION."

19         THAT'S NOT OUR POSITION AT ALL.

20      **THE COURT:**  SO YOU WILL BE FRONTING EVIDENCE                  00:-3

21   YOURSELF, BASICALLY, THAT SUCH EMPLOYMENT AGREEMENTS EXISTED AT

22   MGA AND THAT YOU RECOGNIZE THAT THEY EXISTED AT MATTEL.

23      **MR. RUSSELL:**  I DON'T KNOW THAT WE NEED TO TALK ABOUT

24   WHAT MGA'S PRACTICE IS.  I THINK WE CAN BE MORE --

25      **THE COURT:**  YOU ALMOST MADE IT REALLY EASY FOR ME.           00:-3

1        **MR. RUSSELL:**  I'M NOT GOING TO DO IT THAT NICELY FOR

2   YOU, YOUR HONOR.

3        **THE COURT:**  LETS MOVE ON.

4        THE FIFTH MOTION IN LIMINE.

5        **MR. NOLAN:**  WAS THERE A RULING ON NUMBER FOUR?          00:-3

6        **THE COURT:**  THERE IS.  I'M GOING TO TIE THAT IN,

7   WE'RE GOING TO SEE HOW ANOTHER MOTION COMES OUT AND THEN CIRCLE

8   BACK.  YOU WILL HAVE ONE BEFORE THE DAY'S END, THOUGH, COUNSEL.

9        **MR. NOLAN:**  THANK YOU.

10       **THE COURT:**  THE FIFTH MOTION TO INCLUDE REFERENCES TO   00:-3

11  PRIOR LEGAL REPRESENTATION.

12       NO.  THERE'S NO REASON FOR MR. QUINN TO GET UP AND

13  SAY O'MELVENY & MYERS WAS HERE; THEY GOT FIRED, TERMINATED, LET

14  GO, HOWEVER YOU WANT TO PHRASE IT; AND NOW SKADDEN ARPS IS IN.

15       MIGHT THERE BE A CIRCUMSTANCE UNDER WHICH MR. QUINN       00:-3

16  OR MATTEL CALLS A LAWYER FROM O'MELVENY & MYERS AND THEY ELECT

17  TO DISCLOSE THAT THEY PREVIOUSLY WERE INVOLVED IN THIS CASE AS

18  REPRESENTATION?  SURE, I COULD SEE THAT HAPPENING.

19       **MR. RUSSELL:**  LET'S TALK ABOUT THE SPECIFIC EXAMPLE

20  THEY GAVE, BECAUSE THERE'S ONLY ONE THAT'S RELEVANT TO MGA'S    00:-3

21  PRIOR COUNSEL, AND THAT'S PATRICIA GLASER.  THE DISCOVERY

22  MASTER HAS BEEN ASKED TO DEAL WITH THIS EXTENSIVELY.  HE

23  LIMITED MATTEL TO ONE AREA OF INQUIRY.  I WAS HANDED, WHEN WE

24  SAT DOWN THIS AFTERNOON, A SUPPLEMENTAL DECLARATION FROM

25  JUAN PABLO ALBAN.  I'LL ASSUME THE COURT EITHER HAS IT OR WILL  00:-3

1  GETS IT.  IT'S ADDRESSING THAT ONE NARROW ISSUE, AND THAT IS

2  WHETHER OR NOT MS. GLASER RECEIVED A FAX FROM ISAAC LARIAN OR

3  SOMEONE AT MGA IN JUNE OF 2001 ESSENTIALLY TRANSMITTING A COPY

4  OF THE CONTRACT BETWEEN CARTER BRYANT AND MGA.

5       IF YOU READ THE TESTIMONY, YOU'LL SEE, MS. GLASER          00:-3

6  ACTUALLY DOESN'T HAVE ANY RECOLLECTION OF THE DOCUMENT

7  WHATSOEVER, SHE SAYS SHE DOESN'T HAVE ANY REASON TO DISAGREE IT

8  WAS RECEIVED.  SHE DOES NOT REMEMBER IT.  SHE DOESN'T REMEMBER

9  IT BEING RECEIVED.

10       **THE COURT:**  FAIR ENOUGH.                               00:-3

11       **MR. RUSSELL:**  SO HERE'S THE CONCERN:  BECAUSE THAT'S

12 THE ONLY AREA THAT THEY HAVE IDENTIFIED, AND BECAUSE SHE WAS

13 TRIAL COUNSEL, I THINK THERE'S A SIGNIFICANT DANGER OF PUTTING

14 HER ON THE STAND AND THEM ASKING QUESTIONS OF HER AND WE'VE

15 SUDDENLY GOTTEN INTO PRIVILEGED AREAS IN A HURRY.               00:-3

16       WE CITED YOUR HONOR TO THE SHELTON CASE THAT SAYS

17 DEPOSING OPPOSING COUNSEL IS HIGHLY DISFAVORED.  HERE, YOU GO A

18 STEP FURTHER.  THEY WANT TO PUT MGA'S FORMER TRIAL COUNSEL IN

19 FRONT OF THE JURY AND TRY TO IMPEACH US WITH THAT.  AND THERE

20 IS A SIGNIFICANT RISK AND NO BENEFIT THAT I'VE HEARD.          00:-3

21       THEY ALREADY HAVE TESTIMONY ON THIS ONE TOPIC THAT

22 THEY WANT TO PUT IN.  THEY WANT TO SAY A FAX WAS WHITED OUT AT

23 MR. LARIAN'S DIRECTION, REMOVING A BARBIE COLLECTIBLES --

24       **THE COURT:**  I DON'T THINK THERE'S GOING TO BE MUCH

25 THERE TO DISPUTE.  LET ME HEAR FROM MR. COREY HERE.            00:-3

1      IS THAT ALL YOU ARE PLANNING ON USING MS. GLASER FOR?

2          **MR. COREY:**  ACTUALLY, IF MGA WILL STIPULATE THAT BOTH

3   OF THE EXHIBITS TO MR. ALBAN'S DECLARATION CAN COME IN -- THE

4   ONE FROM THE POSSESSION OF MGA AND THE ONE THAT COMES IN FROM

5   MS. GLASER -- WHICH SHOWS THAT CERTAIN INFORMATION BEEN                    00:-3

6   REDACTED, WE WILL NOT NEED TO CALL MS. GLASER.

7          **THE COURT:**  MR. RUSSELL, ANY PROBLEM WITH THAT

8   STIPULATION?

9          **MR. RUSSELL:**  SINCE I JUST GOT THESE TERMS, I'D LIKE

10  TO LOOK AT THEM.  I DON'T EVEN KNOW -- LOOKING AT THE                      00:-3

11  DOCUMENTS, THEY DON'T APPEAR TO MATCH UP TO DEPOSITION

12  TESTIMONY; SO CERTAINLY ALL ON THE FLY I'M NOT GOING TO AGREE

13  TO THAT.

14         **THE COURT:**  COUNSEL, MR. COREY, DO YOU REALLY NEED TO

15  MAKE REFERENCE TO THE FACT THAT SHE WAS LEAD TRIAL COUNSEL?               00:-3

16         **MR. COREY:**  ABSOLUTELY NOT.  WE SAID WE WOULD

17  STIPULATE TO THAT.  WE DON'T WANT TO GET INTO THE REASONS FOR

18  THE WITHDRAWAL.  ALL WE NEED IS ENOUGH OF AN EXPLANATION

19  THAT --

20         **THE COURT:**  OR EVEN HER ROLE IN THE LITIGATION.                 00:-3

21         **MR. COREY:**  ALL WE NEED TO DO IS IDENTIFY HER AS THE

22  LAWYER WHO RECEIVED A DOCUMENT.

23         **THE COURT:**  VERY WELL.

24         I'M GOING TO GRANT THE MOTION IN LIMINE.  BUT I'LL

25  CERTAINLY GIVE YOU LEAVE TO CALL MS. GLASER AS A WITNESS IF YOU           00:-3

1    NEED HER FOR FOUNDATIONAL PURPOSES.

2              **MR. COREY:**  OKAY.

3              **THE COURT:**  UNLESS THERE'S SOMETHING ELSE YOU NEED

4    HER FOR.

5              **MR. COREY:**  THERE IS.  BECAUSE WHAT HAPPENED IS THE          00:-3

6    REPLY TURNED INTO -- WE ALSO WANT TO EXCLUDE ANY REFERENCE TO

7    MENDELSON.  THEY HAVE SEPARATE ISSUES.  I THINK THE COURT CAN

8    GRANT THE MOTION WITH RESPECT TO MS. GLASER.  WITH RESPECT TO

9    THE REFERENCE TO THE WITHDRAWAL, I HAVE NO PROBLEM WITH THAT.

10   BUT I'D ASK THE COURT -- IT'S NOT WITHIN THE SCOPE OF THE            00:-3

11   MOTION -- I WOULD ASK THE COURT TO RULE WITH RESPECT TO THE

12   LITTLER --

13             **THE COURT:**  THE MOTION, AS IT'S PRESENTED HERE, IS

14   SIMPLY A MOTION TO MAKE ANY REFERENCE AT TRIAL TO THE

15   WITHDRAWAL OF PRIOR COUNSEL AND/OR WITHDRAWAL OF               00:-3

16   CARTER BRYANT'S PRIOR COUNSEL.  THE REASONS FOR SUCH

17   WITHDRAWAL, THE FACT THAT THEY HAD PRIOR COUNSEL THAT ARE NO

18   LONGER INVOLVED IN THE CASE, OR ANY VARIATION THEREOF.  THAT'S

19   WHAT I'M GRANTING.

20             **MR. COREY:**  THANK YOU, YOUR HONOR.                      00:-3

21             **THE COURT:**  THAT'S THE MOTION.  IT'S GRANTED.

22             NEXT MOTION.

23             NUMBER SIX:  EXCLUDE REFERENCE AND USE OF PHASE TWO

24   EVIDENCE.

25             THIS COMES UP TWICE.  IT COMES UP IN MGA'S MOTION; IT        00:-2

1  ALSO COMES UP -- MATTEL MAKES A SIMILAR MOTION.  THE COURT

2  STILL VIEWS THE DISTINCTION THAT IT PREVIOUSLY DREW BETWEEN

3  PHASE ONE AND PHASE TWO AND WITHIN PHASE ONE BETWEEN PHASE 1-A,

4  WHICH IS CARTER BRYANT'S EMPLOYMENT AND THE ISSUE OF WHO OWNS

5  BRATZ, AND PHASE 1-B, THE COPYRIGHT ISSUE AND THE DAMAGES AS            00:-2

6  STILL HAVING VALUE; THAT WILL BE A DISTINCTION THAT I'M GOING

7  TO TRY TO HOLD TO THROUGHOUT THIS TRIAL, UNDERSTANDING THAT

8  THERE'S GOING TO BE SOME OVERLAP.

9         IT'S EASIER TO SEVER OUT THE DAMAGES ISSUES, FOR THE

10 MOST PART.  IT'S NOT AS EASY TO FULLY SEVER OUT THE COPYRIGHT           00:-2

11 ISSUES.  THERE'S GOING TO BE SOME -- I CAN SEE SOME EVIDENCE

12 GOING BOTH WAYS.

13        IN PHASE 1-A, AGAIN, WHO OWNS BRATZ, AND THE

14 CONTRACTS, AND HIS EMPLOYMENT RELATIONSHIPS WITH MATTEL, AND

15 WHAT HAPPENED OR DIDN'T HAPPEN BETWEEN MGA AND CARTER BRYANT;          00:-2

16 AGAIN, LARGELY DISCERNABLE.  BUT THERE IS GOING TO BE SOME

17 OVERLAP.  THE JURY IS HERE FOR SIX WEEKS AND THEY ARE GOING TO

18 BE HEARING A LOT OF TESTIMONY.  SOME PHASE 1-B TESTIMONY IS

19 GOING TO SLIP PROBABLY INTO PHASE 1-A, AND IT'S NOT GOING TO BE

20 THE END OF THE WORLD FOR YOU.                                          00:-2

21        **MR. NOLAN:**  AND I UNDERSTAND THAT.

22        I WANT TO SAY THAT I ACTUALLY THINK THE JURY MAY BE

23 HERE ONLY THREE WEEKS.

24        **THE COURT:**  I UNDERSTAND YOUR POSITION ON THAT.

25 RIGHT.                                                                 00:-2

1          **MR. NOLAN:**  I ALWAYS WANT TO KEEP COMING BACK TO

2     THAT.

3          **THE COURT:**  I APPRECIATE THAT.  YOU MADE THAT POINT

4     YESTERDAY DURING THE VOIR DIRE.  THEY MAY NOT GET TO THE POINT

5     THAT THEY FIND THAT CARTER BRYANT MADE ALL OF THIS STUFF BACK          00:-2

6     IN MISSOURI IN 1998, THEN --

7          **MR. NOLAN:**  THAT'S CORRECT.  WE THINK THE SCIENTIFIC

8     EVIDENCE WILL SHOW THAT.

9          BUT, YOUR HONOR, I HAVE NO PROBLEM WITH THE

10    UNDERSTANDING THAT THERE MAY BE SOME OVERLAP WITH 1-A AND 1-B.         00:-2

11    I THINK, HOWEVER, THE MISCHIEF HERE IS THAT WITH RESPECT TO

12    PHASE TWO EVIDENCE, WHAT THEY WANT TO DO UNDER THE GUISE OF

13    TRYING TO UNDUE, LET'S SAY, APPORTIONMENT ON THE DAMAGES, THEY

14    WANT TO GO IN AND TRY TO CLAIM ALL OF THE UNFAIR BUSINESS

15    PRACTICES THAT THEY ALLEGE IN PHASE TWO WITH RESPECT TO HIRING        00:-2

16    AWAY EMPLOYEES AND THAT TYPE OF THING.  THAT'S WHAT WE'RE

17    CONCERNED ABOUT.

18         WE SPECIFICALLY IDENTIFIED I THINK IT WAS 500

19    DOCUMENTS THAT ARE ON THE EXHIBIT LISTS WHICH WE THINK ARE OF A

20    CONCERN.  I'M NOT ASKING THE COURT TO TAKE UP THE TIME RIGHT          00:-2

21    NOW.  I THINK WHERE WE NEED TO REALLY HAVE A BRIGHT LINE HERE

22    IS --

23         **THE COURT:**  I'LL TRY TO GIVE YOU THAT BRIGHT LINE.

24         THE ONE AREA THAT YOU OBJECT TO THAT I THINK PROBABLY

25    WHICH REALLY DOES BLUR IN BOTH CASE IS THE MGA'S HIRING OF            00:-2

```
 1  MATTEL EMPLOYEES.  I CAN SEE TO A CERTAIN EXTENT THAT COMING IN

 2  IN 1-A.

 3          MR. NOLAN:  OTHER THAN CARTER BRYANT?

 4          THE COURT:  OTHER THAN CARTER BRYANT.

 5          AND THIS IS WHERE I NEED TO CONDUCT KIND OF A 404(B)       00:-2

 6  ANALYSIS, AND I'D LIKE TO HEAR YOU -- YOUR PAPERS CERTAINLY

 7  ADDRESS THIS, BUT WHETHER OR NOT THIS IS RELEVANT TO INTENT AND

 8  KNOWLEDGE.  I MEAN, TO THE EXTENT THAT MR. LARIAN BRINGS OVER

 9  -- I JUST HEARD ARGUMENT ABOUT -- THERE'S GOING TO BE EVIDENCE

10  CONCERNING WHAT THE PRACTICES IN THE INDUSTRY ABOUT THESE        00:-2

11  EMPLOYMENT AGREEMENTS, AND CERTAINLY TO THE EXTENT THAT

12  SOMEBODY ELSE HAS COME OVER, HAS BEEN HIRED AWAY -- I DON'T

13  WANT TO PHRASE THIS IN A WAY THAT'S FAVORING ONE SIDE OR THE

14  OTHER.  BUT TO THE EXTENT THAT MR. LARIAN, MGA, BROUGHT THEM

15  OVER, AN EMPLOYEE, BROUGHT THEM OVER, IS AWARE OF THE            00:-2

16  EMPLOYMENT CONTRACT OR EMPLOYMENT AGREEMENT THAT THAT EMPLOYEE

17  FORMERLY HAD WITH MATTEL, THAT MAY GO TO KNOWLEDGE OR INTENT,

18  DEPENDING ON WHAT THE TESTIMONY IS.

19          SO THIS IS ONE AREA ON A LIMITED BASIS THAT I CAN SEE

20  HAVING RELEVANCE.                                                00:-2

21          MR. NOLAN:  YOUR HONOR, I WANT TO MAKE SURE I'M

22  FOLLOWING THE COURT'S THINKING ON THIS WITH RESPECT TO THE

23  RELEVANCE AND 1-A.  AND I LISTENED TO THE ARGUMENTS WITH

24  RESPECT TO INDUSTRY STANDARDS, AND I THINK I UNDERSTAND HOW THE

25  DOOR COULD BE OPENED IF I MAKE A CERTAIN ARGUMENT ABOUT WHETHER  00:-2
```

```
 1   OR NOT WE DENIED THAT WE -- YOU KNOW, "WE'RE SHOCKED THAT

 2   MATTEL WOULD HAVE AN INVENTIONS AGREEMENT."

 3          THE COURT:  I CAN'T BELIEVE GAMBLING IS GOING ON

 4   BEHIND --

 5          MR. NOLAN:  CASABLANCA ALL OVER AGAIN.                    00:-2

 6          THAT'S NOT THIS CASE.  WE WOULD NEVER HAVE HIRED A

 7   LAWYER.  WE WOULD HAVE NEVER PUT IT IN AN INDEMNIFICATION

 8   CLAUSE.  THAT'S NOT WHAT THE ISSUE IS.

 9          IF WHAT THEY ARE TRYING TO DO IS TO SAY THAT WE

10   WHOLESALE HIRED AWAY MATTEL EMPLOYEES SPECIFICALLY TO DO        00:-2

11   SOMETHING WITH BRATZ, AND SPECIFICALLY, LET'S SAY, WITH

12   PACKAGING OR ANYTHING ELSE, THAT'S CLEARLY, WE THINK, PHASE TWO

13   ISSUES BECAUSE IT'S NOT RELEVANT TO A 1-A ISSUE.  THE 1-A

14   ISSUES -- I CAN'T FATHOM AN ARGUMENT THAT, YOU KNOW, BY HIRING

15   AWAY EMPLOYEES WHO HAVE BEEN LAID OFF BY MATTEL, OR WANTED TO    00:-2

16   LEAVE MATTEL'S EMPLOYMENT AND SEEK OTHER EMPLOYMENT, EVEN

17   BEFORE BRATZ WAS CONCEIVED AND THOUGHT OF AT, LET'S SAY, MGA.

18          THE COURT:  DOES IT REALLY HAVE TO BE JUST ABOUT

19   BRATZ?  THE ARGUMENT HERE IS THE INTENTIONAL INTERFERENCE WITH

20   CONTRACTUAL RELATIONS.  PART OF THE BURDEN OF PROOF THAT THE     00:-2

21   PLAINTIFF BEARS IS SHOWING THAT THEY KNEW THERE WAS A CONTRACT

22   TO INTERFERE WITH.  RIGHT?

23          MR. NOLAN:  RIGHT, YOUR HONOR.

24          BUT AGAIN, MAYBE I'M TALKING -- AND I USUALLY AM --

25   AT CROSS PURPOSES HERE.                                         00:-2
```

1         IF WE DENY THAT WE DID NOT KNOW OF A CONTRACT AT

2    MATTEL, OR THE POTENTIAL FOR A CONTRACT AT MATTEL, I COULD

3    UNDERSTAND THEN THAT WE'VE OPENED THE DOOR TO THAT KIND OF

4    KNOWLEDGE.  BUT THE MERE SUGGESTION THAT THERE ARE EMPLOYEES

5    WHO LEAVE MATTEL, WHETHER OR NOT THEY WERE FIRED, LET GO, OR          00:-2

6    FEARED BEING LAID OFF.  YOU KNOW, THE RECORD EVIDENCE IN THIS

7    CASE, YOUR HONOR, BY THE CHIEF EXECUTIVE OFFICER OF MATTEL, IS

8    THAT DURING THE RELATIVE PERIOD OF TIME OF THIS LITIGATION AND

9    THE TIME OF THE INVESTIGATION OF CARTER BRYANT, UP TO AS MANY

10   AS A THOUSAND EMPLOYEES WERE LAID OFF AT MATTEL; THAT AN             00:-2

11   AT-WILL EMPLOYEE GOING TO WORK AT MATTEL -- AND UNLIKE

12   PROSPECTIVE JUROR NUMBER NINE YESTERDAY THAT WORKED FOR -- HER

13   CONTRACT, SURPRISINGLY, PROHIBITED HER FROM GOING TO WORK FOR A

14   COMPETITOR -- SHE SHOULD GET A LAWYER, MAYBE.

15         BUT THAT'S ANOTHER ISSUE.                                      00:-2

16         HERE, THAT'S NOT THE CONTRACT OF MATTEL.  YOU JUST

17   CAN'T LEAVE AND TAKE CONFIDENTIAL INFORMATION.  LET'S KEEP THE

18   TRIAL ON THAT BASIS.  I THINK THAT BY OPENING THIS UP IN 1-A TO

19   THIS KIND OF ACTIVITY, YOUR HONOR, REALLY OPENS UP THE DOOR TO

20   YOUR PHASE TWO STRUCTURE, WHICH WAS WHAT MATTEL HAD REQUESTED        00:-2

21   IN THE FIRST PLACE.

22         AND THEN I'D ALSO SUGGEST, YOUR HONOR, THAT THE

23   SUBSEQUENT HIRING OF MATTEL EMPLOYEES -- SUBSEQUENT ACTS NOT

24   PROVING THE CONFORMITY WITH EARLIER BEHAVIOR, IT'S ILLOGICAL.

25         **THE COURT:**  I SAW THAT.  SOMEONE BRIEFED THAT.  IT         00:-2

1    MUST HAVE BEEN -- BUT THAT DOESN'T MAKE SENSE TO ME.  I THINK

2    THE CLASSIC 404(B) EVIDENCE QUESTION IN LAW SCHOOL IS THE BANK

3    ROBBERY OR THE CAT BURGLAR WHO LEAVES HIS OR HER MARK.  THERE'S

4    FOUR BURGLARIES, AND IN ALL FOUR OF THESE BURGLARIES, THE CAT

5    BURGLAR LEFT A PARTICULAR MARK OR SOMETHING, AND YOU SHOW THE          00:-2

6    MODUS OPERANDI SO WHEN HE OR SHE GETS CHARGED WITH THE FIFTH,

7    THEN YOU CAN BRING IN THE EVIDENCE OF THE PREVIOUS ONES TO SHOW

8    THE MODUS OPERANDI, OR WHATEVER IT IS.

9            WHY DOES THE SEQUENCING MATTER?

10           IF THERE WAS FIVE BURGLARIES OR FIVE ROBBERIES AND          00:-2

11   THEY ARE UNCHARGED, WHETHER THE FIRST OR THE FIFTH, AND THE

12   OTHER FOUR IS EVIDENCE OF MODUS OPERANDI OR INTENT, I DON'T

13   UNDERSTAND THE LOGIC OF SUGGESTING WHETHER IT'S A SUBSEQUENT

14   BAD ACT OR A PRIOR BAD ACT, WHY THAT SHOULD MATTER.  THERE'S

15   NOTHING IN THE LANGUAGE OF 404(B) WHICH SUGGESTS IT HAS TO TAKE      00:-2

16   A PARTICULAR CHRONOLOGICAL ORDER, AND THERE'S NOTHING IN THAT

17   LOGIC THAT APPEALS TO ME.

18           **MR. NOLAN:**  I UNDERSTAND, YOUR HONOR.

19           **THE COURT:**  I KNOW THERE'S A CASE THAT WAS CITED THAT

20   SUGGESTS AS SUCH, BUT --                                             00:-2

21           **MR. NOLAN:**  LET'S TAKE IT OUT OF THE CASE LAW FOR

22   JUST A MOMENT AND LET'S STAY WITH THE LOGIC OF THIS.  AND I

23   CERTAINLY UNDERSTAND, AND I HAVE, IN THE PAST, HAD THE PLEASURE

24   OF PRODUCING SUBSEQUENT BANK ROBBERIES TO SHOW THAT THE FIRST

25   ONE WAS CONDUCTED.                                                   00:-2

1           THIS CASE IS A CLAIM IN 1-A WITH RESPECT TO THE

2    OWNERSHIP OF BRATZ AND WHETHER CARTER BRYANT DID IT BEFORE HE

3    GOT TO MATTEL AND IT WAS HIS OWN IDEA, AND WHETHER OR NOT IT

4    WAS DONE WHILE HE WAS AN EMPLOYEE OF MATTEL.  WHETHER OR NOT WE

5    HIRED AWAY EMPLOYEES LATER ON FROM MATTEL, FOR WHATEVER REASON

6    -- WE THINK THEY WERE GETTING LAID OFF; THEY WERE TIRED OF

7    MATTEL; TIRED OF BARBIE; I DON'T WANT TO GET INTO ALL THAT

8    RIGHT NOW.  IN THIS CASE, YOUR HONOR, UNLIKE THE LOGICAL ONE

9    THAT YOU INVITED ME TO TALK ABOUT, THAT'S NOT THIS CASE.  AND

10   IN FACT, YOUR HONOR, AT MATTEL'S REQUEST, AND WE AGREED WITH IT

11   AND DISCOVERY WAS STAYED, THOSE SUBSEQUENT CAT BURGLARS AND

12   BANK ROBBERIES, THAT HAS BEEN PURPOSELY PUT OFF BECAUSE IT WAS

13   DISTINCT ENOUGH FROM THE ISSUES AND THE CLAIMS THAT WERE GOING

14   TO BE TRIED IN 1-A, AND NOW WE'RE GOING TO BLUR THAT ISSUE OF

15   WHAT WE UNDERSTOOD WITH RESPECT TO CARTER AND WHETHER OR NOT HE

16   DID THE DRAWINGS BEFORE 1998.  THAT'S THE ISSUE.  AND THAT'S

17   WHERE I THINK 403 REALLY COMES IN.  AND THAT'S WHY THE WISDOM

18   OF THE COURT'S RULING IN THE FIRST INSTANCE ON PHASING THIS, I

19   THINK, WAS CORRECT.

20           **THE COURT:**  WHAT ABOUT THE EVIDENCE -- MATTEL'S SAYS

21   THEY HAD NO PLANS TO INTRODUCE EVIDENCE THAT MGA LAUNCHED

22   PRODUCTS TO INTERFERE WITH THE SUCCESS AND NO PLANS TO

23   INTRODUCE EVIDENCE RELATED THAT MGA DEFAMED MATTEL TO THE

24   PUBLIC.  THAT PORTION OF THE MOTION IN LIMINE IS GRANTED.

25           THERE IS ANOTHER PORTION HERE RELATED TO EVIDENCE

1    THAT MGA INDUCED MATTEL EMPLOYEES TO WORK OFF-HOURS FOR MGA.

2              **MR. NOLAN:**  LET'S TALK ABOUT THAT.

3              THIS IS THE SO-CALLED SEAMSTRESS EVIDENCE.

4         **THE COURT:**  RIGHT.

5              **MR. NOLAN:**  YOUR HONOR, MATTEL, MIGHTILY AS THEY

6    HAVE, THEY HAVE TAKEN THE DEPOSITION OF EVERYBODY INVOLVED.

7    AND ALTHOUGH THERE HAVE BEEN FIFTH AMENDMENT ASSERTIONS WITH

8    RESPECT TO A TAX ISSUE -- WHICH WE'RE NOT INVOLVED IN; WE HAD

9    NO KNOWLEDGE OF; IT HAD TO DO WITH THE ISSUANCE OF 1099 FORMS;

10   THAT MAY COME TO YOU IN THE FUTURE -- EVERY WITNESS WHO HAS

11   BEEN DEPOSED IN THIS CASE HAS CATEGORICALLY DENIED EVER TELLING

12   MGA THAT SEAMSTRESSES WERE BEING USED AT MATTEL.

13        **THE COURT:**  WELL, THAT GOES TO THE WEIGHT OF THE

14   EVIDENCE.

15             WHAT ABOUT THE EVIDENCE ITSELF?

16             LET'S ASSUME THAT THERE WAS EVIDENCE OF IT.

17        **MR. NOLAN:**  YOUR HONOR, I DON'T THINK THERE'S ANY

18   DOUBT.  WE'RE NOT DISPUTING THAT NOW SUBSEQUENTLY WE HAVE

19   LEARNED THAT VERONICA MARLOW HIRED SEAMSTRESSES AT MATTEL TO DO

20   WORK AT NIGHT SEWING PATTERNS IN A MOONLIGHTING SITUATION.

21        **THE COURT:**  RIGHT.

22        **MR. NOLAN:**  THEY DID NOT THINK THEY WERE DOING

23   ANYTHING WRONG IN THE BEGINNING.  THEN IN 2004 --

24   INTERESTINGLY -- YOU KNOW, SOMETIMES WHEN I ARGUE THIS --

25        **THE COURT:**  IT'S NOT THE KNOWLEDGE OF THE

1    SEAMSTRESSES.  WE'RE TALKING ABOUT MGA'S KNOWLEDGE.

2         **MR. NOLAN:**  WE MAY BE.  LET ME JUST MOVE THAT BACK

3    BEFORE I GO PASSED THAT.  OUR AFFIRMATIVE DEFENSES, ALTHOUGH

4    THEY HAVE AN ENFORCEABLE CONTRACT, THE QUESTION OF WHETHER OR

5    NOT THEY ACQUIESCED IN MOONLIGHTING; WHETHER OR NOT THEY

6    ACTUALLY ENFORCED THE TERMS OF THE CONTRACT; WHETHER OR NOT THE

7    EMPLOYEES WERE DOING MOONLIGHTING AND ACTUALLY THOUGHT THAT IT

8    WAS OKAY, UNTIL THEY WENT TO A MEETING IN 2004 AND

9    MATT BOUSQUETTE HOLDS A MANDATORY MEETING AND ASKS EVERYBODY TO

10   SIGN YET ANOTHER CONFIDENTIALITY AGREEMENT.

11        IF THE AGREEMENT WAS SO CLEAR TO MATTEL -- BECAUSE

12   THEY MADE THE MOTION, THEY ARGUED TO YOU, THAT SUMMARY JUDGMENT

13   WAS PROPER AND THE COURT --

14        **THE COURT:**  WE'RE NOT GOING TO GO BACK OVER THIS,

15   COUNSEL.

16        **MR. NOLAN:**  NO, WE'RE NOT.  BUT I JUST THINK THAT YOU

17   MAKE CHOICES.  YOU MAKE CHOICES.  AND YOU MAKE A PRESENTATION.

18   AND OUR ARGUMENT WOULD BE THAT IF YOU HAD THE ENFORCEABLE

19   CONTRACT, THE EVIDENCE THAT WE WILL SHOW OF MOONLIGHTING

20   INDICATES THAT THEY WERE ACQUIESCING, THEY WERE ALLOWING THAT

21   CONDUCT TO GO FORWARD THAT THEY WERE NOT ENFORCING THESE

22   CONTRACTS.

23        BUT, YOUR HONOR, I DON'T THINK THAT WOULD BE

24   PARTICULARLY RELEVANT TO 1-A; THAT'S A PHASE-TWO ISSUE.

25        **THE COURT:**  I UNDERSTAND YOUR ARGUMENT.

1          COUNSEL, WE'RE GOING TO TAKE A BREAK FOR THE COURT

2     REPORTER FOR ABOUT 15 MINUTES.  I'LL HEAR FROM MATTEL WHEN WE

3     COME BACK AT 3:00.

4               **THE CLERK:**  COURT STANDS IN RECESS.

5

6

7

8

9

10

11                              CERTIFICATE

12

13    I hereby certify that pursuant to section 753, title 28, united
      states code, the foregoing is a true and correct transcript of
14    the stenographically recorded proceedings held in the above-
      entitled matter and that the transcript page format is in
15    conformance with the regulations of the judicial conference of
      the united states.

16

17    _____          _____

      THERESA A. LANZA, CSR, RPR                       Date
18    FEDERAL Official COURT Reporter

19

20

21

22

23

24

25