that.  If not -- Mr. Corey didn't provide anything that
requires further elaboration?  A retraction, perhaps?

MR. ZELLER:  He just wanted to make sure it was
clear that the -- those initial motions to enforce dealt with
the two hard drives that have already been turned over.  He
just wanted to make sure of that.

THE COURT:  I am familiar that those hard drives.
The question is whether or not the order encompasses
something beyond those two additional hard drives.

MR. ZELLER:  Absolutely.  And I just wanted to
alert the Court that there were those subsequent issues.  I
will double-check and make sure there's no further orders on
that January 25th order.

THE COURT:  I hope to be able to resolve this on
Tuesday morning.  I'll see you here at 8:00 sharp.  Is there
anything else?

MS. AGUIAR:  We raised an issue with you before
regarding a witness that's on the list for Tuesday, and you
did indicate that we would wait to see how it came out with
his testimony.  My conversations with Mr. Zeller, though,
it's my understanding that that would be the sole area of
inquiry for this witness.  So I just wanted to get some
guidance, if we could, on the question of whether copyright
applications from subsequent years are in play at this point.
I think --

1    THE COURT:  Well, let me hear from Mr. Zeller,

2  first of all, as to why they would even be in play.  And I'll

3  give you a chance to respond so you don't have to anticipate

4  his argument.

5    Mr. Zeller, why would subsequent year copyright

6  applications have any relevance at this point?

7    MR. ZELLER:  I'm not sure that's really the

8  appropriate issue to determine with Mr. Armstrong.  Because I

9  assume that what she's referring to is to Mr. Armstrong's

10  testimony.

11    THE COURT:  Is that right, Ms. Aguiar?

12    MS. AGUIAR:  Yes.

13    THE COURT:  Very well.

14    MR. ZELLER:  Number one, Mr. Armstrong was a

15  designated 30(b)(6) witness on certain topics.  Some of those

16  topics in fact included the copyright registrations that the

17  Court will recall Mr. Nolan put in front of a witness

18  yesterday, Lucy Arant.  Those registrations, I mean, they are

19  clearly now in play.  They clearly relate to --

20    THE COURT:  Well, they are in play only to the

21  extent that they involve the date of creation and provide

22  evidence for that purpose.

23    MR. ZELLER:  Certainly I would agree --

24    THE COURT:  It doesn't open the door for -- I don't

25  think you want to get into copyright at this point.

1870

1    MR. ZELLER:  That is correct, your Honor.  And I am

2    focused on those registrations, corrections made to them that

3    pertain to the dates.

4        THE COURT:  Okay.

5        MR. ZELLER:  I will say this, however, your Honor.

6    Obviously, both Mr. Larian and Ms. Garcia, not accusing

7    counsel of anything, but have certainly loaded their answers

8    with this wedge, this division between the dolls and the

9    drawings.  That is also addressed by these registrations.  So

10   I don't think it's fair to say that --

11       THE COURT:  Proffer for the Court in what way is

12   that addressed by these registrations?

13       MR. ZELLER:  Well, it is addressed by the

14   registrations, and we have expert testimony that can further

15   elaborate upon this in terms of copyright office procedure.

16   But the fact is what they obtained was a registration for the

17   doll.  They also have other registrations for those Bryant

18   drawings that list the dolls or make clear that the dolls are

19   derivatives of the drawings.

20       THE COURT:  Okay.  This is clearly 1-B, Counsel, on

21   this.

22       MR. ZELLER:  I don't necessarily disagree on one

23   level with the Court.

24       THE COURT:  I'm concerned.  I understand you want

25   to respond to what you perceive as this wedge, which I think

1  we addressed at sidebar on several occasions, and I believe

2  once we got past one particular witness, it seemed less and

3  less a problem.  If I allow you to then now use that wedge to

4  open up this entire issue and get into what's derivative and

5  what's not derivative, I've got to afford MGA the opportunity

6  to do the same thing.  And I think we'll just obliterate the

7  line between 1-A and 1-B.

8           MR. ZELLER:  I would put it this way, your Honor.

9  I think, you know, as we have -- as we've gone along, there

10  have been lines drawn.  You know, we have a 30(b)(6) witness

11  who has given testimony on this very issue about, you know,

12  about what the registrations cover and what was being

13  identified as being created at particular dates.

14           So, I mean, to some degree, these things are

15  intertwined.  We've heard Mr. Larian.  I mean, he was even

16  ending the day on this note of, well, absolutely I'm the

17  creator of the dolls.  Different somehow than the concept of

18  Bratz, different than the drawings.  I mean, they have been

19  consistently trying to draw this division.

20           THE COURT:  I think there is sufficient evidence

21  being presented just in what has been presented through a

22  number of witnesses, of the relationship between the drawings

23  and the dolls for purposes of 1-A.  Without going into a

24  legal discussion of copyright registrations, derivative

25  copyright registrations and the like.  I don't think you are

1  without evidentiary material to respond to whatever limited

2  incursions have taken place already of 1-B issues into 1-A.

3        I think to do what you're suggesting now might take

4  it to another level altogether that I don't think is

5  warranted at this time.  And I'm not saying that as we go

6  forward, if this continues to be at issue and Mr. Larian

7  starts relying on this distinction in the same way that

8  Ms. Garcia did, that perhaps that door might not be opened.

9        But given where we're at right now, my inclination

10  would be to limit your copyright information to the issue of

11  the dates and the correction of the dates, and let's leave it

12  at that.

13        MR. ZELLER:  And I understand the Court's ruling on

14  that.  And so certainly Mr. Armstrong can address the date

15  issue that I think we all agree is in play for purposes of

16  Phase 1-A.  Another issue that Mr. Armstrong can address, and

17  he was a designated 30(b)(6) witness on this, was the patent

18  application for interchangeable feet.  The one that

19  Mr. Larian was shown today.

20        There are declarations that Carter Bryant made in

21  support of that.  There are other factual issues that

22  underlie that application that he can and has testified

23  about, that from our perspective, we, of course, believe that

24  it was an untrue statement for Mr. Larian to be saying to the

25  Patent Office that he was the sole inventor of that -- of the

1    invention that was set forth in the application.

2            THE COURT:  This is strictly for impeachment

3    purposes?

4            MR. ZELLER:  I'm sorry?

5            THE COURT:  This is for impeachment purposes?

6            MR. ZELLER:  No, your Honor.  It is part of the

7    pattern of misstatements and concealment that was done in

8    terms of where Bratz came from.  This is part of the series

9    of statements that, of course, many of which have been

10   highlighted today in which Mr. Larian made false statements

11   to the press, to the U.S. government, to other people that he

12   was in fact the person who came up with Bratz, invented

13   Bratz, any number of variations on this idea.

14           So it actually goes to this concealment, and it's

15   also intent.

16           THE COURT:  I guess the concern I have is by using

17   the copyright papers to do that, you get into the very legal

18   issues which we've been trying to keep out, the copyright

19   legal issues that we're trying to keep out of 1-A.

20           MR. ZELLER:  Actually, that's the patent

21   application, your Honor.

22           THE COURT:  This is the patent application.

23           MR. ZELLER:  It's a patent application.  It's

24   Exhibit 500 that was shown to Mr. Larian today and is now in

25   evidence.  It is entitled, and I'm sure I won't get the words

1    exactly right.  But it's --

2            THE COURT:  Doll with aesthetic changeable foot

3    gear.

4            MR. ZELLER:  Correct.  And there is also a

5    declaration by Mr. Larian, which is in evidence today, in

6    which he swore to the Patent Office that he was the sole

7    inventor.

8            Mr. Armstrong was the Rule 30(b)(6) designee on

9    that application and on the statements that were played to

10   the Patent Office.  So he does have testimony on that

11   subject.  It also relates to the fact that Carter Bryant,

12   too, was involved in that application, and he made certain

13   statements to the Patent Office.

14           So from our perspective, it goes to part of this

15   series of statements that were made up until certainly the

16   time of the Wall Street Journal article, and even somewhat

17   beyond, in which Isaac Larian took the lion's share.

18           Carter Bryant isn't mentioned as being the

19   inventor, and that's not only the concealment point, but it

20   also goes to intent.  He obviously can't continue to say

21   well, everyone else in the world has misunderstood me.  When

22   we have this series of statements, particularly when they are

23   trying to make distinctions like the kind they are today,

24   which is well, I really meant the dolls, or I really meant

25   something else.

1    THE COURT:  Let me hear from Ms. Aguiar on this.

2    MR. ZELLER:  I thought those were the major issues

3  that Mr. Armstrong would address.

4    THE COURT:  Very good.

5    MS. AGUIAR:  With regard to the date, I guess if I

6  have clarification from Mr. Zeller that what he means is the

7  June -- I think this is correct -- June of 2000 date of

8  creation that was on the copyright application and then the

9  correction of that date, because obviously the applications

10  themselves have a lot of dates on them, can I get that --

11    THE COURT:  That's what the Court is referring to.

12  So whether Mr. Zeller is referring to it or not, that's

13  what's going to come in.

14    MS. AGUIAR:  And then with regard to the patent

15  application, Mr. Armstrong was asked questions about the

16  patent application.  He was a 30(b)(6) witness.  He's a legal

17  assistant at MGA.  I guess what I would say on that is that

18  Mr. Larian was asked questions, and they are going to be

19  continuing to ask Mr. Larian questions on that.

20    I know that doesn't mean they can't ask another

21  witness those same questions, but they do have the person who

22  is really the person with firsthand knowledge of those

23  documents, of the patent application.

24    THE COURT:  I understand.  What I'm thinking of

25  doing, Ms. Aguiar, is limiting -- and I want to hear your

1  response to this -- is limiting Mr. Armstrong as a 30(b)(6)

2  witness to covering exhibits and issues that have been

3  previously admitted.  To the extent that Exhibit 500 has been

4  admitted and Mr. Larian has discussed it, I think it's fair

5  game for them to bring up another witness to examine

6  Exhibit 500.  To the extent that the copyright applications

7  came in as rebuttal to basically your cross-examination or

8  Mr. Nolan's cross-examination of their witness, then it's

9  fair game for them to bring in this 30(b)(6) witness to

10 address those copyright applications.

11      What I'm going to limit, I think, is any foray into

12 any additional copyright material or intellectual property

13 material that I think gets us too far astray of the issues in

14 1-A, but I'll hear from both of you on that.  That's my

15 tentative thoughts in terms of how to proceed on this.

16      MR. PRICE:  Before I allow Mr. Zeller to speak, the

17 one exception I would like to that, your Honor, is Mr. Bryant

18 will be testifying, and there is, as Mr. Zeller referred to,

19 another document with respect to him and this patent

20 application.  And we know what his explanation is.  And the

21 30(b)(6) witness refutes that.  So with that, I believe we'll

22 be getting into evidence --

23      THE COURT:  I don't know if it will or it won't.

24 But the point I'm making is that by the time Mr. Armstrong

25 takes the stand, my thought will be to limit it to a

1  discussion of exhibits and issues that have already been

2  raised and not to use him as a means to go into further

3  copyright discussion absent a clear showing of relevance and

4  foundation.

5          MR. ZELLER:  If I may, first, just by way of

6  clarification, the June 2000 date is not from the copyright

7  applications.

8          THE COURT:  I understand.  It was from the

9  trademark application, but you're using this showing the

10  change of the trademark application -- on the copyright

11  application, the change there, that was their argument.  And

12  I understand that you disagree with that.

13          MR. ZELLER:  That was their argument.  But even

14  apart from that, we would still say that the fact that they

15  initially submitted copyright applications for the dolls

16  saying that they were done in the year 2000, and, of course,

17  we also have Nana Ashong's e-mail saying not only was it

18  2000, it was September 18, 2000, we would say that then for

19  them to go off and change after the litigation began,

20  changing that date, part of the concealment --

21          THE COURT:  That's further argument to be made.  I

22  understand.  But they are free to bring in evidence that the

23  change was made for innocent reasons or whatever.  And that's

24  part of why we're having a trial.

25          MR. ZELLER:  And part of what I would suspect that

1   Mr. Armstrong would be examined on would be the reasons for

2   the exchanges.  That was certainly part of the 30(b)(6)

3   testimony --

4            THE COURT:  The reasons for the changes of the

5   dates.  It's all tied to the date testimony.

6            MR. ZELLER:  Correct.

7            THE COURT:  Yes, Counsel.

8            MR. ZELLER:  Yes.  So the Court is certainly

9   correct that it is not our intention to get into a foray

10  about a bunch of other registrations, because there are many,

11  but I would ask the Court just somewhat to reserve judgment

12  as to what the full scope of this is.  We will know better,

13  of course, once Mr. Larian is done testifying.

14           THE COURT:  And after we hear from Mr. Bryant, as

15  Mr. Price points out.  Just so you know, I'm still

16  formulating this, but my touchstone is going to be are these

17  issues that have been raised by MGA or have been admitted

18  through evidence from Mattel and limit it to that.

19           MR. ZELLER:  It's certainly our intention not to go

20  broad.  It's to go narrow on these issues, and we understand

21  the Court's concern.

22           THE COURT:  Ms. Aguiar, does that give you enough

23  guidance in terms of where I am right now?  Because

24  admittedly, I have to wait to hear the actual testimony

25  itself.

 1          MS. AGUIAR:  I understand.  I appreciate it.

 2          THE COURT:  That's a general orientation.

 3          Okay.  While we're on the topic of witnesses, who

 4 are we hearing from -- we're going to hear from Mr. Larian, I

 5 presume.  Mr. Price, you have another --

 6          MR. PRICE:  Fifteen minutes.

 7          THE COURT:  -- five, ten minutes?

 8          MR. PRICE:  That's actually accurate.

 9          THE COURT:  Mr. Nolan, you have cross-examination?

10          MR. NOLAN:  I don't think it's going to be that

11 lengthy.  I'm hoping maybe an hour, hour and a half.

12          THE COURT:  Very well.  Who's next?

13          MR. QUINN:  Mr. Eckert.

14          THE COURT:  Okay.

15          MR. QUINN:  And then?

16          MR. ZELLER:  We have Rachel Harris, who we

17 anticipate testifying.  There's Andreas Koch, who we believe

18 we have something of a resolution, to which is that we will

19 play what we would expect to be agreed to or largely agreed

20 to portions of his videotaped deposition.  The general

21 concept is it will involve his testimony about an initial

22 meeting that he participated in with Mr. Bryant.

23          There are other issues that have been raised with

24 respect to Mr. Koch's testimony.  They go into other issues

25 about the workplace environment, treatment of employees there

1   at MGA, and a variety -- and without -- I understand the

2   Court's -- where the Court's going already on this.  But we

3   have decided to do, because contingent obviously on any door

4   opening issues and that sort of thing --

5              THE COURT:  Exactly.  And don't get me wrong.  I

6   think there's a degree of relevance to all of this with the

7   witnesses themselves for them to describe, you know, their

8   relationship with their employer, how they felt about working

9   there, whether they are disgruntled employees, whether they

10  are happy employees, I think there's a degree of that that's

11  relevant to the issue of witness credibility.  But to simply

12  bring in witnesses who are going to describe conditions at

13  Mattel or MGA, I think, I think whatever -- whatever

14  relevance that has is outweighed by the prejudice that would

15  be brought in through those types -- that type of testimony.

16             MR. ZELLER:  And what our intention was is that as

17  to those other issues, is that at this time we will not have

18  them as part of the videotaped deposition.  So that will

19  eliminate those issues.  Both sides are reserving their

20  rights.

21             Obviously, if we think it becomes relevant or

22  important to have the additional testimony in, you know, and

23  they are reserving their rights, of course, to oppose it, and

24  we would deal with it in that context.  The only thing that

25  would be waived is perhaps not the right word, but there's at

1   least agreement that people won't argue later on because

2   we've already had one segment played, that additional

3   segments can't be played again.

4           THE COURT:  Let me get through this list of

5   witnesses, and then I'll hear from Ms. Aguiar on any

6   particular objections they have.

7           So Mr. Eckert, Ms. Harris, Mr. Koch.  Who is next?

8           MR. ZELLER:  We have on the witness list for

9   Tuesday, whether we get to him beyond those witnesses, I

10  would say, is unlikely.  But Mr. Armstrong would potentially

11  be on that list.

12          THE COURT:  Okay.  And then where do we go from

13  there?

14          MR. ZELLER:  And then I think we're to Mr. Bryant.

15          THE COURT:  Okay.

16          MR. ZELLER:  There are maybe some additional things

17  that we would have in between.  There's the Kickapoo video,

18  which we're contemplating perhaps playing before.

19          THE COURT:  But nothing that's going to require --

20  the Court's inquiring more in terms of any hearings that I

21  need to hold, or morning hearings I need to hold relating to

22  motion in limine issues.  It sounds like the one we have on

23  Tuesday, which obviously goes to Carter Bryant in terms of

24  these hard drives and the Litler Mendleson (phonetic)

25  deposition and all of that, and Evidence Eliminator, that can

1   all be taken up on Tuesday morning.  There's nothing else

2   that needs to be addressed for any of your witnesses for

3   Tuesday or Wednesday; is that correct?

4          MR. ZELLER:  I'm not sure if this fully answers the

5   Court's question.  In general that's true.  The one thing I'm

6   not sure about is Mr. Menz.  He is one of the forensic

7   experts.  As a matter of timing, we were contemplating

8   calling him on Tuesday.  Again, I think at this point we're

9   into pretty theoretical territory, at least given the pace of

10  the past, that we would make it through all of these

11  witnesses, but we do have him on the list of people who

12  potentially would be called on Tuesday because it is our

13  intention after this sequence of witnesses, and maybe we

14  would shorten it up a bit, is then to have Mr. Bryant

15  testify.

16         THE COURT:  Well, Mr. Menz is something that we do

17  have to have a hearing for.  So if we find ourselves -- let

18  me take a look at my calendar and make sure I don't have

19  anything during the lunch hour.

20         I suppose if we have to, we'll know by noon, and

21  then we can do something during the lunch hour.

22         MR. ZELLER:  All right.  And we did have some

23  additional people on the Tuesday list.  Farhad Larian was

24  one.  I'm advised he's not really available next week.

25         THE COURT:  As long as you provide this to counsel.

1  I'm just really interested on anyone that would require a

2  hearing.

3           MR. ZELLER:  There is nobody else who -- well,

4  actually Farhad Larian would probably require a hearing, at

5  least in the sense of he had a U.S.B. device, and there were

6  spoliation issues that relate to Mr. Larian.  It does -- he

7  does start to get us into some of those issues.

8           THE COURT:  All right.  Very good.  Well, just keep

9  me posted on this.  Let me hear from Ms. Aguiar in terms of

10 any of the witnesses.

11          Is there anything else, Mr. Zeller?

12          MR. ZELLER:  One clarification of the materials

13 that the Court would like.  I know you would like the

14 underlying briefs related to the January 25th order.

15          THE COURT:  Well, not just the briefs, but anything

16 that was submitted.

17          MR. ZELLER:  That's what I was going to ask.  The

18 declarations as well.

19          THE COURT:  I'm afraid whenever I ask for that

20 stuff, but yeah, I need that as well.

21          MR. ZELLER:  Well --

22          THE COURT:  For whatever reason, we're having

23 trouble finding it.

24          MR. ZELLER:  To forewarn the Court that the January

25 25th, 2007, order covered an extremely broad range of

1   discovery issues.  I -- while I don't have a specific

2   recollection of the size of those declarations, I imagine

3   they are quite voluminous because that order covered an

4   entire range of discovery.

5            THE COURT:  Well, this might be a way, and

6   obviously I want both sides to look at what's being submitted

7   to me, and preferably you could run this also by the Keker

8   firm, Ms. Anderson.  You're going to need to do that before

9   you submit it because otherwise, it would be -- so you do

10  need to run this by them before you submit anything to the

11  Court.  But if you can go through there, and I will give you

12  an instruction -- submit the briefs in whole, but to the

13  extent that there are portions of the exhibits in the

14  declarations that are entirely irrelevant and you and counsel

15  for MGA and counsel for Carter Bryant can agree on it, I'd

16  just as soon not receive those.

17           MR. ZELLER:  We will do that, your Honor.

18           THE COURT:  Very well.  Anything further?

19           MR. ZELLER:  That was it for us.  Oh, actually, I

20  apologize.  Mr. Quinn handed me a note.  If we can get an

21  updated time count.

22           THE COURT:  I'll give that to you momentarily.

23           MR. NOLAN:  Could we charge the last half hour

24  against Mr. Zeller?

25           THE COURT:  Very good.  Give me a moment on this.

1   I have for the defense, I have approximately 12 hours and 15

2   minutes, and for the plaintiff, you've already gone around

3   the chess clock once, and now it's a total of 23 hours and 15

4   minutes.

5          MR. ZELLER:  I think that is it.  That's the last

6   note that was passed to me, and I think that is it.  Thank

7   you.

8          THE COURT:  Very well.

9          All right, Ms. Aguiar.  You've got complete control

10  of the floor now.

11         MS. AGUIAR:  With regard to Mr. Koch, I did say

12  that we would agree to the video and not require that he be

13  here live if it was limited in the way that Mr. Zeller just

14  described.  So we did reach that agreement, and so we were

15  able to work that out.

16         With regard to Mr. Menz, I am assuming that he

17  would obviously only be a witness if your Honor were to hold

18  that the Evidence Eliminator issues were relevant.

19         THE COURT:  So right.  That preliminary matter will

20  be decided Tuesday morning.

21         MS. AGUIAR:  Great.  And then the two nonparties

22  that were on their list for Tuesday were Farhad Larian, who I

23  understand he will not be on the table for Tuesday because

24  he's not available?

25         MR. ZELLER:  That's my understanding.

1    MS. AGUIAR:  And Elise Cloonan is also a nonparty.

2    And I'm guessing, based on what Mr. Zeller said, she's also

3    not on the table for Tuesday.

4         MR. ZELLER:  That's a little more difficult to say

5    for the moment.  But she is on our Tuesday list.  She's

6    represented by Larry McFarland.  We would expect her to

7    testify prior to the time that Carter Bryant starts.  It's a

8    little difficult, of course, to know how long Mr. Larian has

9    left on the stand.  And we obviously don't want to -- and

10   also whether or not --

11        THE COURT:  So she may be a Wednesday witness,

12   then?

13        MR. ZELLER:  Correct.

14        THE COURT:  So you are saying, though, that she

15   will be called before Carter Bryant?

16        MR. ZELLER:  That's our expectation.

17        MS. AGUIAR:  By my count, she would definitely be a

18   Wednesday witness.  And I think that's it.

19        THE COURT:  I think that's accurate, given that

20   we're going to have a late start on Tuesday.  We're not going

21   to start until 10:00.

22        MS. AGUIAR:  Right.  And they said they weren't

23   sure they were going to get to Armstrong.  And Cloonan would

24   be after him.

25        THE COURT:  Okay.   Anything further for MGA?

1       MR. NOLAN:   Your Honor, we start at 8:30 Tuesday

2   morning?

3       THE COURT:   8:00.   The order that I issued, I want

4   Carter Bryant's attorneys here at 8:00 as well, and I'm

5   planning to put us at 8:00 to 10:00 on the two motions

6   outstanding, the Evidence Eliminator, the hard drives, all of

7   this, and I hope to be well prepared myself to indicate my

8   tentative thoughts, and then I'll hear further argument.

9   I'll hear whatever witnesses that I need to hear, and make a

10  decision and go forward.

11      MR. NOLAN:   Your Honor, the last point was I wanted

12  to thank you on behalf of MGA for the manner which you

13  handled the order this morning.   That was very helpful.   And

14  two, we all wish we had the patience you have.

15      THE COURT:   The trial is not over yet.

16      Good evening.

17

18          (Proceedings concluded at 5:35 P.M.)

19

20

21

22

23

24

25

# C E R T I F I C A T E

    I hereby certify that pursuant to Title 28,

Section 753 United States Code, the foregoing is a true and

correct transcript of the stenographically reported

proceedings in the above matter.

    Certified on June 6, 2008.


**MARK SCHWEITZER, CSR, RPR, CRR**
Official Court Reporter
License No. 10514