1   IT.

2   **BY MR. PRICE:**

3   Q    DO YOU RECALL THAT YOU WANTED TO TALK ABOUT -- ADD

4   TESTIMONY ABOUT A CONVERSATION WITH ROXANNA POWELL THAT YOU HAD

5   NOT PREVIOUSLY SAID IN RESPONSE TO AN EARLIER QUESTION;                    10:50

6   CORRECT?

7   A    BUT WHAT WAS THE PRIOR TESTIMONY?

8   Q    WELL, THAT'S GOING TO BE MY NEXT QUESTION.

9         DO YOU SEE, YOU WERE SAYING THAT YOU WANTED TO ADD TO

10  YOUR PRIOR TESTIMONY ABOUT TALKING ABOUT THE CASE?  DO YOU SEE    10:50

11  THAT?  THIS IS 204, LINES 22 THROUGH 25.

12  A    IT JUST SAYS "PRIOR TESTIMONY."

13        WHERE IS THE PRIOR TESTIMONY?

14        I'M JUST TRYING TO GET A REFERENCE.

15  Q    FIRST I'M GOING TO ASK YOU TO LOOK AT THIS WHERE YOU SAY     10:51

16  YOU WANT TO ADD TO YOUR PRIOR TESTIMONY ABOUT TALKING ABOUT THE

17  CASE.

18        DO YOU SEE THAT?

19  A    AND THE PRIOR TESTIMONY ABOUT TALKING ABOUT THE CASE IS

20  WHERE?  CAN I READ THAT?                                          10:51

21  Q    LOOK AT PAGE 93 AND LOOK AT LINES FOUR THROUGH NINE.

22  A    RIGHT.

23  Q    IS IT YOUR BEST RECOLLECTION THAT'S THE ANSWER YOU WANTED

24  TO ADD TO?

25  A    YEAH, THE PART ABOUT 'OR CARTER BRYANT.'                     10:51

1            **MR. PRICE:**  AT THIS POINT, YOUR HONOR, IF I MAY PLAY

2   93, LINES FOUR THROUGH NINE.

3            **THE COURT:**  COUNSEL?

4            **MR. NOLAN:**  STILL THE SAME OBJECTION.  LACK OF

5   FOUNDATION, YOUR HONOR.  IT'S NOT PROPER IMPEACHMENT.        10:52

6            **THE COURT:**  COUNSEL, JUST ASK THESE QUESTIONS, NOW

7   THAT SHE'S REFRESHED HER RECOLLECTION WITH THE DEPOSITION.

8   LET'S SEE IF YOU CAN'T PROCEED IN THAT MANNER.

9   **BY MR. PRICE:**

10  Q    UP UNTIL THE TIME OF YOUR DEPOSITION, HAD YOU SPOKEN WITH   10:52

11  ANYONE AT MATTEL ABOUT ANY LAWSUIT OR LITIGATION WITH MGA OR

12  CARTER BRYANT?

13  A    WELL, I SPOKE ABOUT CARTER BRYANT BUT I DIDN'T SPEAK ABOUT

14  THE LAWSUITS OR THE LITIGATION.

15            I JUST UNDERSTAND THAT AS THEM ASKING IF I TALKED    10:52

16  ABOUT CARTER -- NOT ABOUT CARTER AND --

17  Q    YOU UNDERSTOOD THAT TO BEING ASKED WHETHER YOU TALKED WITH

18  HIM ABOUT CARTER BRYANT.

19            **THE COURT:**  THE PROBLEM IS IT'S COMPOUND, COUNSEL, AS

20  THE WITNESS HAS APTLY POINTED OUT; SO BREAK THE QUESTION DOWN   10:52

21  INTO SEPARATE --

22            **MR. PRICE:**  I THINK SHE SAID --

23  **BY MR. PRICE:**

24  Q    YOU UNDERSTOOD THAT QUESTION TO BE ASKING YOU NOT JUST

25  ABOUT THE CASE BUT WHETHER YOU HAD ANY CONVERSATIONS WITH      10:52

1   CARTER BRYANT.

2   A     ABOUT CARTER BRYANT.   ABOUT.

3          **THE COURT:**   COUNSEL, I'M GOING TO INTERJECT.

4          IT'S A COMPOUND QUESTION.   BREAK THE QUESTION UP AND

5   ASK THE WITNESS EACH COMPONENT SEPARATELY.                         10:53

6          **MR. PRICE:**   MAY I HAVE A SIDE-BAR ON THIS?

7          **THE COURT:**   YES.

8          (SIDE-BAR PROCEEDINGS AS FOLLOWS:)

9          **THE COURT:**   FIRST OF ALL, THIS IS A COMPOUND

10  QUESTION, AND THE WITNESS IS CLEARLY STRUGGLING BECAUSE SHE        10:53

11  WANTS TO ANSWER TO THE CARTER BRYANT PART BUT NOT TO THE MGA

12  PART.

13         **MR. PRICE:**   WHAT'S IMPORTANT, FIRST, THERE'S NO

14  OBJECTION IT WAS COMPOUND AT THIS TIME.

15         **THE COURT:**   I UNDERSTAND.   BUT IT'S A CONCERN WITH     10:53

16  THE CONFUSION HERE WITH THE WITNESS.   THE COURT IS TRYING TO

17  KEEP ORDER --

18         **MR. PRICE:**   LET ME CLARIFY.   WHAT SHE JUST SAID WAS

19  -- WHAT SHE UNDERSTOOD WAS RATHER THAN ASKING JUST ABOUT THE

20  CASE BUT ALSO ASKING ABOUT CARTER BRYANT.   SHE SAID NO, BUT       10:54

21  THEN SHE AMENDED HER ANSWER AND ADDED ONE PERSON.   NOT THREE.

22  SO THAT'S THE POINT.   SHE UNDERSTOOD THIS.   YOU CAN SEE BY THE

23  FACTS, SHE ADDED TO THE ANSWER.   SHE UNDERSTOOD THIS TO BE

24  ASKING WHETHER SHE HAD SPOKEN WITH ANYONE AT MATTEL ABOUT

25  CARTER BRYANT.   BECAUSE THEN SHE SAYS I HAD THIS CONVERSATION     10:54

1   WITH ROXANNA POWELL WHICH DIDN'T CONCERN THE CASE, IT JUST

2   CONCERNED CARTER BRYANT; SO THAT'S MY POINT.  HER UNDERSTANDING

3   IS IMPORTANT.

4           **THE COURT:**  I THINK THAT THIS IS STRUCTURED ON A

5   POORLY WORDED QUESTION AND I'M GOING TO SUSTAIN THE OBJECTION.   10:54

6   MOVE ALONG TO THE NEXT QUESTION.

7           (SIDE-BAR PROCEEDINGS CONCLUDED.)

8   **BY MR. PRICE:**

9   Q   MS. LEAHY, IN ANY EVENT, AT SOME POINT IN YOUR DEPOSITION,

10  YOU CAME BACK AND SAID YOU WANTED TO ADD SOME INFORMATION ABOUT   10:55

11  ROXANNA POWELL; CORRECT?

12  A   CORRECT.  THAT'S THIS ONE, RIGHT, ON 204?

13  Q   YES.  AND AT THAT TIME WHEN YOU WANTED TO ADD INFORMATION,

14  YOU TALKED ABOUT A CONVERSATION YOU HAD WITH ROXANNA POWELL

15  ABOUT CARTER BRYANT; CORRECT?                                    10:55

16  A   CORRECT.

17  Q   NOT ABOUT THE CASE BUT ABOUT CARTER BRYANT; RIGHT?

18  A   CORRECT.  THERE WASN'T A CASE.

19  Q   WHEN YOU CAME BACK TO SAY YOU WANTED TO ADD INFORMATION

20  ABOUT WHO YOU TALKED TO ABOUT CARTER BRYANT, YOU ONLY MENTIONED   10:55

21  ROXANNA POWELL; YOU DIDN'T MENTION MR. HEBDEN OR HUSSEIN ABBO;

22  CORRECT?

23  A   NOT IN THE DEPOSITION, NO.

24  Q   AND THE REASON YOU CAME BACK FROM THE BREAK WAS TO MAKE

25  SURE THE RECORD WAS ACCURATE; YOU WANTED TO ADD SOME             10:55

1   INFORMATION; RIGHT?

2   A    YEAH, AS MUCH AS I COULD REMEMBER.

3   Q    AND IT'S TRUE THAT -- BY THE WAY, IN YOUR TESTIMONY, AT

4   THAT TIME YOU SAID YOU SPOKE WITH MS. POWELL, WAS IT AT A BAR

5   AFTER ONE OF YOUR WORKOUTS?                                      10:56

6   A    GYMNASTICS.

7   Q    AND THAT SHE WAS THE ONE TO INITIATE THE CONVERSATION.

8   A    CORRECT.

9   Q    AND YOU WERE ASKED BY MR. NOLAN WHETHER OR NOT, WHEN YOU

10  WERE WORKING ON BRATZ, WHETHER YOU WERE TOLD TO KEEP QUIET      10:56

11  ABOUT MR. BRYANT.  CLEARLY WHEN YOU WERE WORKING ON BRATZ AND

12  BEFORE THE DOLL BECAME PUBLIC, YOU KNEW THAT AS OF VENDOR YOU

13  WERE SUPPOSED TO KEEP INFORMATION ABOUT BRATZ CONFIDENTIAL;

14  CORRECT?

15  A    CORRECT.                                                    10:56

16  Q    NOW, AFTER BRATZ CAME OUT, YOU SAID YOU HAD THIS

17  CONVERSATION WITH MS. POWELL; RIGHT?

18  A    CORRECT.

19  Q    AND IT'S TRUE, IS IT NOT, MA'AM, THAT IN THIS CONVERSATION

20  WITH MS. POWELL, AT NO TIME DID YOU TELL HER THAT MR. BRYANT    10:5

21  WAS WORKING ON BRATZ WHEN HE WAS EMPLOYED BY MATTEL; IS THAT

22  CORRECT?

23  A    WE DIDN'T TALK ABOUT THAT.  NO.

24  Q    SO IN FACT, IT'S TRUE YOU NEVER TOLD ANYONE AT MATTEL THAT

25  MR. BRYANT WAS WORKING ON BRATZ WHILE HE WAS EMPLOYED AT        10:5

1   MATTEL; RIGHT?

2          LET ME ASK THAT SO IT'S NOT A DOUBLE NEGATIVE?

3          **THE COURT:**  VERY WELL.  WITHDRAW THE QUESTION.

4   **BY MR. PRICE:**

5   Q    DID YOU EVER TELL ANYONE AT MATTEL THAT CARTER BRYANT WAS    10:57

6   WORKING ON BRATZ WHILE HE WAS EMPLOYED AT MATTEL?

7   A    IT DIDN'T COME UP IN ANY CONVERSATION, SO I DIDN'T THINK

8   ABOUT IT.

9   Q    SO THE ANSWER IS NO; CORRECT?

10  A    IT DIDN'T COME UP IN ANY CONVERSATION.                      10:57

11  Q    SO LET'S TALK, THEN, ABOUT YOUR INTERACTION WITH

12  CARTER BRYANT.  AND FIRST, ACTUALLY I WANT TO ASK YOU QUESTIONS

13  ABOUT THE CALL YOU GOT FROM MR. MOORE IN I THINK IT WAS JUNE OF

14  2004, YOU SAID; IS THAT RIGHT?

15  A    SOMEWHERE AROUND THERE, EITHER BEFORE OR AFTER I HAD THE    10:57

16  BABY.

17  Q    AND AT THAT TIME YOU WERE NOT REPRESENTED BY COUNSEL;

18  CORRECT?

19  A    CORRECT.

20  Q    AND IN FACT, EARLIER IN 2004, IN ABOUT APRIL OR MAY, YOU    10:5

21  HAD DONE SOME THIRD-PARTY VENDOR WORK WITH MATTEL; IS THAT

22  CORRECT?

23  A    I DID A HANDFUL OF WORK WITH MATTEL, BUT I CAN'T REMEMBER

24  THE DATES.  I'D HAVE TO GO THROUGH AND LOOK AT MY INVOICES AND

25  MY NOTES.                                                        10:5

1    Q    IF YOU WOULD LOOK, THERE'S A BLACK BINDER OF EXHIBITS, AND

2    LET'S SEE IF THIS REFRESHES YOUR RECOLLECTION.

3            IF YOU WOULD LOOK AT EXHIBIT 10022.  I BELIEVE THE

4    NAME OF YOUR COMPANY AT THAT TIME WAS 3-D DESIGNS, OR SOMETHING

5    LIKE THAT.                                                           10:59

6    A    YEAH.  3-D DESIGN.

7    Q    AND DO YOU RECALL THAT AROUND MAY OF 2004 THAT YOU WERE

8    APPROVED FOR A MATTEL PROJECT?  AND I'LL CALL YOUR ATTENTION TO

9    THE THIRD PAGE OF THIS DOCUMENT.

10   A    WHAT WAS YOUR QUESTION?                                         10:59

11   Q    THAT IT WAS AROUND MAY OF 2004 THAT YOU WERE APPROVED FOR

12   AN INDEPENDENT THIRD-PARTY PROJECT WITH MATTEL.

13   A    THIS WASN'T FOR A PROJECT.  THEY WOULD JUST OPEN UP, LIKE,

14   ALMOST LIKE ACCOUNTS SO, YOU KNOW, IF I DID DO A PROJECT WITH

15   THEM, THEY COULD PAY ME FROM THIS ALLOTTED MONEY; SO THIS ISN'T     11:00

16   ABOUT ANY SPECIFIC PROJECT.

17   Q    AND YOU HAD APPLIED FOR THAT ACCOUNT SOME TIME IN FEBRUARY

18   OF '94 WITH A BUSINESS VALIDATION APPLICATION; IS THAT RIGHT?

19   A COUPLE OF PAGES LATER, YOU'LL SEE IT, I THINK AT PAGE 4.

20   A    WHERE IS THE DATE ON HERE?                                      11:00

21   Q    I THINK THE DATE IS AT PAGE 6.

22   A    RIGHT.

23   Q    AND THEN THERE WAS -- DO YOU RECALL THERE WAS AN

24   ENGAGEMENT OF SERVICES FORM, IF YOU LOOK AT PAGE 7, DATED

25   JANUARY, 2004?                                                      11:0

```
 1   A     THIS IS A JUST-GETTING-ME-SET-UP-TYPE FORM.

 2   Q     DO YOU RECALL THERE WAS A SERVICES AGREEMENT --

 3   A     I'M ASKING, IS THAT WHAT THIS IS?

 4   Q     I'M ASKING YOU.

 5         THE COURT:  MA'AM, YOU NEED TO JUST ANSWER THE          11:01

 6   QUESTIONS?

 7         ANSWER THE NEXT QUESTION.

 8         THE WITNESS:  OKAY.

 9   BY MR. PRICE:

10   Q     IF YOU WOULD LOOK AT PAGE 10, DO YOU RECALL THERE BEING A   11:01

11   SERVICES AGREEMENT SIGNED SOME TIME IN 2004, AROUND APRIL OF

12   2004?

13   A     CORRECT.

14   Q     SO YOU HAD THESE INTERACTIONS WITH MATTEL IN THE APRIL OR

15   MAY 2004 TIME FRAME; CORRECT?                                 11:01

16   A     CORRECT.

17   Q     AND MR. MOORE CONTACTS YOU SOME TIME AROUND JUNE OF 2004;

18   CORRECT?

19   A     JUNE OR JULY.

20   Q     AND ONE OF THE THINGS YOU DO IN RESPONSE IS YOU CALLED UP   11:01

21   MS. GONRICH OF MGA; CORRECT?

22   A     GRONICH.

23   Q     IS THAT RIGHT?

24   A     CORRECT.

25   Q     SHE WAS THE ATTORNEY FOR MGA; CORRECT?                   11:02
```

```
 1   A    CORRECT.

 2   Q    AND THEN IT WAS IN FEBRUARY OF 2005 THAT YOU WERE ACTUALLY

 3   HIRED FULL-TIME AT MGA; CORRECT?

 4   A    CAN I ASK YOU TO REPEAT A QUESTION AGAIN?

 5   Q    DO YOU WANT ME TO REPEAT THAT QUESTION?            11:02

 6   A    THE ONE ABOUT WHEN I CALLED DAPHNE GRONICH.

 7   Q    DIDN'T YOU TESTIFY IN RESPONSE TO MR. NOLAN'S QUESTIONS

 8   THAT AFTER MR. MOORE CALLED YOU, YOU CALLED MS. GRONICH, MGA'S

 9   GENERAL COUNSEL?

10   A    HE CALLED ME AND LEFT A MESSAGE AND THEN I CALLED HIM   11:02

11   BACK.  THEN I CALLED DAPHNE GRONICH.

12   Q    AND MY NEXT QUESTION IS, IT WAS THEN SEVERAL MONTHS AFTER,

13   IN FEBRUARY OF 2005, THAT YOU BECAME A FULL TIME EMPLOYEE OF

14   MGA; CORRECT?

15   A    IT WAS APRIL.                                       11:02

16   Q    IF YOU WOULD LOOK AT EXHIBIT 538.

17        DO YOU HAVE THAT?

18   A    YES.

19   Q    DO YOU RECOGNIZE THAT AS AN AGREEMENT EXECUTED BETWEEN YOU

20   AND MGA ON OR ABOUT FEBRUARY -- THIS IS FEBRUARY OF 2004;   11:03

21   RIGHT?

22   A    I DON'T SEE A DATE.

23   Q    IF YOU WOULD LOOK AT -- LET'S GO TO PAGE 4.

24   A    OKAY.  BUT THAT SAYS -- OKAY.  SORRY.

25        MR. PRICE:  YOUR HONOR, MOVE EXHIBIT 538 INTO       11:03
```

1    EVIDENCE.

2              MR. NOLAN:  NO OBJECTION.

3              THE COURT:  IT'S ADMITTED.  YOU MAY PUBLISH.

4              (EXHIBIT 538 RECEIVED.)

5    BY MR. PRICE:                                              11:03

6    Q    IN ANY EVENT, IT'S ALSO TRUE THAT -- I THINK YOU SAID MGA

7    DID PROVIDE YOU WITH COUNSEL; CORRECT?

8    A    CORRECT.

9    Q    AND WHEN WAS THAT?

10   A    IT WOULD HAVE BEEN AFTER THE FIRST PHONE CALL WITH        11:04

11   MICHAEL MOORE.

12   Q    SO THE CHRONOLOGY IS MR. MOORE CALLED, AND YOU CALLED HIM

13   BACK; CORRECT?

14   A    CORRECT.

15   Q    HE DIDN'T OFFICIALLY OFFER TO GET YOU COUNSEL; CORRECT?    11:04

16   A    CORRECT.

17   Q    THEN YOU CALLED MS. GRONICH, THE GENERAL COUNSEL FOR MGA;

18   CORRECT?

19   A    CORRECT.

20   Q    THEN MGA PROVIDES YOU WITH COUNSEL; RIGHT?                 11:04

21   A    CORRECT.

22   Q    AND THIS IS BEFORE YOU'RE A FULL-TIME EMPLOYEE WITH MGA;

23   CORRECT?

24   A    YES.

25   Q    AND SO THEY ARE PAYING THE ATTORNEYS' FEES FOR YOUR       11:0

```
 1   ATTORNEY; CORRECT?

 2   A     FROM WHAT I ASSUMED.

 3   Q     AND THAT WAS FROM SOMETIME IN 2004 TO THE PRESENT; RIGHT?

 4   A     CORRECT.

 5   Q     AND YOU HAVE ALSO EARNED FEES FROM MGA PERSONALLY; RIGHT?     11:04

 6         MR. NOLAN:  OBJECTION.  VAGUE AND AMBIGUOUS.

 7         THE COURT:  REPHRASE.

 8   BY MR. PRICE:

 9   Q     YOU MADE MONEY BECAUSE YOU WORKED FOR MGA; THEY MADE YOU

10   PAID YOU MONEY; CORRECT?                                           11:05

11   A     YEAH, THEY PAID ME MONEY.

12   Q     SOMEWHERE IN EXCESS OF HALF A MILLION DOLLARS SINCE THE

13   FIRST TIME YOU BEGAN WORKING FOR THEM; CORRECT?

14   A     YEAH.  WELL, I DON'T KNOW, I NEVER ADDED IT UP, BUT --

15   Q     DOES THAT SOUND ABOUT RIGHT, THAT IT'S SOMEWHERE IN EXCESS    11:05

16   OF HALF A MILLION DOLLARS?

17   A     WELL, I DIDN'T ADD IT UP; I'D HAVE STICKER SHOCK.

18   Q     YOU HAVE A GENERAL IDEA OF WHAT YOU MADE OVER THE YEARS

19   WITH MGA, THOUGH, DON'T YOU?

20   A     YEAH.  I'D HAVE TO GO THROUGH AND ADD UP ALL MY THINGS.       11:05

21   Q     OKAY.

22         NOW, LET ME SWITCH, THEN, TO YOUR CONTACTS WITH

23   MR. BRYANT IN SEPTEMBER.

24         YOU GOT A CALL FROM MR. BRYANT IN SEPTEMBER; CORRECT?

25   A     THIS IS GOING BACK TO 2000?                                   11:05
```

1   Q    YES.  YOU'RE RIGHT.  IN SEPTEMBER OF 2000, YOU GOT A CALL

2   FROM MR. BRYANT; RIGHT?

3   A    RIGHT.

4   Q    AND PRIOR TO THAT, SIX YEARS PRIOR TO THAT, SEPTEMBER

5   2000, YOU HAD WORKED FOR MATTEL; RIGHT?                           11:06

6   A    YEAH; SOMEWHERE IN '95; IT WAS RIGHT AFTER I GOT MARRIED,

7   SO SOMEWHERE LATE '94, EARLY '95.

8   Q    AND BEFORE BRATZ, YOU HAD NEVER DONE A FASHION DOLL FROM

9   START TO FINISH; CORRECT?

10  A    CORRECT.  I MAINLY DID THE HEADS.                            11:06

11  Q    SO MR. BRYANT CALLED YOU WHEN YOU WERE AT YOUR HOME;

12  RIGHT?

13  A    CORRECT.

14  Q    AND I BELIEVE YOU TESTIFIED TO THE JURY YESTERDAY THAT YOU

15  WERE EXCITED BECAUSE THIS PROJECT GAVE YOU ARTISTIC FREEDOM.      11:06

16       DO YOU RECALL THAT?

17  A    YES.  I REMEMBER.

18  Q    BUT IN YOUR DEPO, YOU SAID YOU WERE EXCITED BECAUSE IT WAS

19  THE FIRST JOB YOU GOT; RIGHT?

20  A    BOTH ARE TRUE.                                               11:0

21  Q    BUT YOU DIDN'T MENTION THE THING ABOUT ARTISTIC FREEDOM,

22  DID YOU?

23  A    I'D HAVE TO GO THROUGH AND READ MY DEPOSITION.

24  Q    LETS GO TO PAGE 131, LINES TWO THROUGH 11.

25       ACTUALLY, IT SHOULD BE LINES SIX THROUGH 11.                11:0

1   A    OKAY.

2            MR. PRICE:  YOUR HONOR, IF I MAY PLAY THAT.

3            MR. NOLAN:  YOUR HONOR, FOR COMPLETENESS ON THIS

4   SUBJECT, THE SUBJECT IS ADDRESSED AGAIN AT PAGE 152, LINES

5   EIGHT THROUGH 11.                                              11:07

6            MR. PRICE:  THAT'S IRRELEVANT AND NOT REQUIRED.

7            THE COURT:  152, LINES 8 THROUGH 11 IS JUST --

8            MR. PRICE:  HE PROBABLY MEANS SEVEN, YOUR HONOR.

9   THERE'S A QUESTION ABOUT 'WHAT DO YOU MEAN BY INSPIRATION?'

10           THE COURT:  IT'S IRRELEVANT.                          11:08

11           MR. NOLAN:  IT'S 11; AND QUESTION NUMBER EIGHT --

12           MR. PRICE:  I DON'T THINK IT'S REQUIRED, YOUR HONOR.

13  IT'S NOT THE SAME QUESTION.

14           THE COURT:  COUNSEL, YOU'RE ON PAGE 152?

15           MR. NOLAN:  PAGE 152, QUESTION, LINE SEVEN, AND THE   11:08

16  ANSWER REFERS TO --

17           THE COURT:  IT REFERS TO INSPIRATION.  I JUST DON'T

18  SEE INSPIRATION ON PAGE 131.  I'LL LET YOU -- UNLESS I'M

19  MISSING SOMETHING.

20           MR. NOLAN:  IT'S THE FIRST SENTENCE THAT RELATES BACK 11:0

21  TO HER VIEW OF THE PROJECT.

22           THE COURT:  YOU MAY BRING THAT UP IN YOUR REDIRECT

23  EXAMINATION, COUNSEL.

24           OBJECTION.  OVERRULED.

25           (VIDEO DEPOSITION PLAYS; EXCERPTS PROVIDED            11:0

1          AS FOLLOWS BY COUNSEL; PAGE 131:06 TO 131:11:)

2          Q    DID YOU TELL MR. BRYANT DURING THAT

3          CONVERSATION WHETHER OR NOT YOU WOULD BE WILLING TO.

4          DO THE WORK?

5          A    I CAN'T REMEMBER VERBATIM.  I'M ASSUMING I

6          SAID THAT.  I WAS VERY EXCITED BECAUSE IT WAS ONE OF.

7          MY FIRST JOBS AS A VENDOR.

8          (EXCERPTS CONCLUDED.)

9    **BY MR. PRICE:**

10   Q    WHEN MR. BRYANT CALLED YOU IN THIS FIRST CALL, ONE OF THE          11:09

11   THINGS HE SAID WAS PAULA TREANTAFELLES WAS WORKING ON THIS

12   PROJECT; CORRECT?

13   A    CAN I LOOK AT MY NOTEBOOK?

14   Q    YOU MAY IF YOU LIKE.  I BELIEVE THAT'S 1137, PAGE 14, IS

15   WHERE YOU HAVE NOTES ABOUT SEPTEMBER 29TH.          11:09

16   A    I DON'T REMEMBER TALKING TO HIM ABOUT PAULA IN THE FIRST

17   PHONE CALL.

18          **MR. PRICE:**  YOUR HONOR, I'D LIKE TO PLAY PAGE 129,

19   LINES NINE THROUGH 17.

20          **THE COURT:**  ANY OBJECTION?          11:10

21          **MR. NOLAN:**  WE'D LIKE TO RUN IT TO 130, LINE 3.

22          **THE COURT:**  COUNSEL?

23          **MR. PRICE:**  IT'S NOT REQUIRED FOR THE POINT THAT'S

24   BEING MADE.

25          **THE COURT:**  I THINK IT MAKES IT COMPLETE; IT'S CLOSE          11:11

1  ENOUGH; LET'S IMPROVE IT.

2          **MR. PRICE:**  129, LINES 9 TO 30, TO 130, LINE 3.

3          (VIDEO PLAYS; EXCERPTS PROVIDED BY

4          COUNSEL AS FOLLOWS:

5          Q    AND DURING THAT CONVERSATION IS WHEN CARTER

6          BRYANT BROUGHT UP THE NAME M.G.A.; IS THAT CORRECT?

7          A    YES.  I ASKED HIM WHO THE PROJECT WAS FOR.

8          Q    IF YOU COULD, PLEASE, TELL ME WHAT YOU AND

9          CARTER BRYANT DISCUSSED DURING THAT TELEPHONE

10         CONVERSATION?

11         A    FROM WHAT I REMEMBER, HE SAID HE HAD A

12         PROJECT, AND IT WAS FOR M.G.A. IN NORTH HILLS AND.

13         THAT PAULA TREANTAFELLES WAS WORKING ON IT AS WELL.

14         Q    DID HE SAY ANYTHING ELSE IN THAT CONVERSATION?

15         A    NOT THAT I REMEMBER.

16         Q    DID YOU HAVE AN UNDERSTANDING OR DID HE SAY

17         WHAT THE PROJECT FOR M.G.A. WAS?

18         A    NOT AT THAT TIME.

19         Q    THAT WAS SOMETHING YOU LEARNED SUBSEQUENTLY?

20         A    YES.

21         Q    AT THAT TIME, DID YOU UNDERSTAND THAT PAULA

22         TREANTAFELLES WAS AT M.G.A.?

23         A    THAT'S WHAT I ASSUMED BECAUSE I DIDN'T KNOW

24         HER NAME.

25         (EXCERPTS CONCLUDED.)

11:12

BY MR. PRICE:

1

2   Q    AND YOU HAD, THEN, A FACE TO FACE MEETING WITH MR. BRYANT

3   ABOUT A WEEK TO A WEEK AFTER THIS; CORRECT?

4   A    CORRECT.

5   Q    IF YOU LOOK AT EXHIBIT 1137, PAGE 14 -- I THINK YOU WERE          11:13

6   LOOKING AT THAT TO REFRESH YOUR MEMORY -- AND THAT'S IN

7   EVIDENCE, YOUR HONOR -- IF WE COULD BLOW UP THE TOP PART HERE.

8        DO YOU SEE YOU HAVE THESE ENTRIES, "CARTER BRYANT,"

9   "X 6099" AND THEN "310-538-3615"?  DO YOU SEE THAT?

10  A    YES.                                                            11:13

11  Q    AND THEN IT SAYS "DOLL PLAY FASHION, MGA ENTERTAINMENT."

12       DO YOU SEE THAT?

13  A    YES.

14  Q    DO YOU BELIEVE THOSE ARE YOUR NOTES FROM THIS FIRST

15  TELEPHONE CALL?                                                      11:13

16  A    YES.

17  Q    AND THIS "STAR 6099," YOU KNOW WHAT THAT REFERS TO;

18  CORRECT?

19  A    YES; THAT'S CARTER'S EXTENSION.

20  Q    YOU SAY HIS EXTENSION; THAT WAS HIS EXTENSION WHERE?           11:13

21  A    AT MATTEL.

22  Q    SO MR. BRYANT CALLS YOU, HE TELLS YOU -- HE GIVES YOU HIS

23  MATTEL EXTENSION; CORRECT?

24  A    CORRECT.

25  Q    HE SAYS THIS PROJECT IS FOR MGA; CORRECT?                      11:1

1    A    CORRECT.

2    Q    AND HE TELLS YOU THAT MS. TREANTAFELLES, WHOSE NAME YOU

3    HAD NEVER HEARD BEFORE, WAS ALSO INVOLVED WITH THIS; RIGHT?

4    A    WELL, I DON'T KNOW IF HE DID IT ON THE FIRST PHONE

5    CONVERSATION OR ONE OF THE SECOND CONVERSATION.  HER NAME IS AT    11:14

6    THE BOTTOM OF THAT PAGE BECAUSE I NEEDED TO SPELL IT; SO, YES,

7    HE COULD HAVE GONE OVER THAT ON THE FIRST CONVERSATION OR A

8    LATER ONE.

9    Q    BUT THE LATER ONE, YOU'RE TALKING ABOUT THE ONE YOU MIGHT

10   HAVE HAD A WEEK OR A WEEK AND A HALF LATER; RIGHT?    11:14

11   A    OR A LATER PHONE CONVERSATION.

12   Q    WELL, A WEEK OR A WEEK AND A HALF LATER, YOU DID HAVE A

13   FACE-TO-FACE MEETING WITH MR. BRYANT; CORRECT?

14   A    CORRECT.

15   Q    WHEN YOU HAD YOUR MEETING WITH HIM, HE DIDN'T GIVE YOU A    11:1

16   WRITTEN DESCRIPTION OF THE BRATZ DOLLS, DID HE?  THAT IS,

17   SOMETHING IN HANDWRITING DESCRIBING THEIR PERSONALITY AND

18   CHARACTERISTICS?

19   A    YOU MEAN WITH WORDS?

20   Q    YES.    11:1

21   A    NO.  IT WAS JUST THE DRAWINGS.

22   Q    AND HE DIDN'T SAY HE WANTED THESE DOLLS TO LOOK LIKE

23   BARBIE, DID HE?

24   A    NO.

25   Q    HE DIDN'T SAY HE WANTED THEM TO LOOK LIKE A CABBAGE PATCH    11:1

1  DOLL; RIGHT?

2  A   RIGHT.

3  Q   HE INSTEAD GAVE YOU SOME DRAWINGS TO SHOW YOU HIS CONCEPT

4  OF HOW THESE DOLLS SHOULD LOOK; CORRECT?

5  A   HE GAVE ME A BINDER WITH DRAWINGS IN THIS.                    11:15

6  Q   AND HE SAID 'THIS IS MY CONCEPT OF HOW I WANT THE DOLLS TO

7  LOOK'; RIGHT?

8  A   HE SAID NOT 'THIS IS HOW I WANTED THE DOLLS TO LOOK' BUT

9  'THIS IS MY IDEA, MY CONCEPT DRAWINGS, FOR THE DOLLS.'

10 Q   AND HE WANTED YOU TO DO A SCULPT; CORRECT?                    11:15

11 A   RIGHT; HE WANTED ME TO START SCULPTING.

12 Q   HE GAVE YOU -- I THINK YOU WERE SHOWN EXHIBIT 302, WHICH

13 WAS SOME BRATZ SKETCHES BY MR. BRYANT.  DO YOU RECALL THAT?

14 MR. NOLAN SHOWED YOU THAT?  THAT WAS IN THE WHITE BINDER?

15 A   YES.                                                         11:15

16 Q   IN FACT, IN THIS CASE, YOU PRODUCED TO US SKETCHES THAT

17 MR. BRYANT HAD DONE OF BRATZ DOLLS.  DO YOU RECALL THAT?  YOU

18 GAVE THEM TO YOUR ATTORNEY AND THEN THEY WERE HANDED OVER TO

19 US.

20 A   RIGHT.  I GAVE THEM THE BINDER.                              11:16

21 Q   AND IF YOU WOULD LOOK AT EXHIBIT 1125, IN THE BLACK

22 BINDER.  YOU RECOGNIZE THESE DRAWINGS AS THE DRAWINGS YOU

23 PROVIDED TO YOUR COUNSEL TO PROVIDE TO US; CORRECT?

24 A   WELL, I GAVE THE BINDER.  I DON'T WANT TO SAY I RECOGNIZE

25 EACH INDIVIDUAL DRAWING BECAUSE I DON'T REMEMBER WHICH ONES I    11:1

1    REMEMBER.  YOU KNOW WHAT I'M SAYING?

2             I JUST WANT TO MAKE SURE I'M BEING CLEAR THAT I DON'T

3    REMEMBER EACH SPECIFIC DRAWING BUT I REMEMBER THE BINDER FULL

4    OF DRAWINGS.

5    Q    AND YOU SEE THIS HAS THESE BATES ON IT "SABW-L."          11:17

6             DO YOU SEE THAT?

7    A    BATES?

8    Q    AT THE BOTTOM, IT HAS A NUMBER.

9    A    YEAH.

10   Q    DO YOU SEE THAT?                                          11:17

11   A    YES.

12   Q    AND YOUR COUNSEL WAS SIDLEY AUSTIN.

13             DO YOU RECOGNIZE THIS AS THE FILE YOU GAVE YOUR

14   COUNSEL?  DO YOU SEE THAT?

15   A    WHAT DO YOU MEAN, THE FILE?                               11:17

16   Q    YOU SAID YOU GAVE A BINDER OF DOCUMENTS.  THIS IS THE

17   BINDER THAT YOU GAVE YOUR COUNSEL; CORRECT?

18   A    WELL, LIKE I SAID, I GAVE THEM A BINDER.  I CANNOT

19   HONESTLY IDENTIFY IF EACH WAS IN THERE OR NOT.

20   Q    DOES IT APPEAR TO BE CONSISTENT WITH WHAT YOU GAVE YOUR   11:18

21   COUNSEL?

22   A    YES.  IT APPEARS TO BE SIMILAR.

23             **MR. PRICE:**  YOUR HONOR, MOVE EXHIBIT 1125 INTO

24   EVIDENCE.

25             **MR. NOLAN:**  NO OBJECTION.                        11:1

THURSDAY, JULY 3, 2008            TRIAL DAY 20, MORNING SESSION

1          **THE COURT:**  ADMITTED.  YOU MAY PUBLISH.

2          (EXHIBIT 1125 RECEIVED.)

3    **BY MR. PRICE:**

4    Q    SO, FOR EXAMPLE, AMONG THE DRAWINGS YOU GOT IN THE FILE

5    WERE, SAY, THE DRAWING ON THE FIRST PAGE.  DO YOU SEE THAT?

6    A    YES.

7    Q    AND THE DRAWING ON THE SECOND PAGE.

8          LET ME JUST FLIP THROUGH THESE QUICKLY AND GET AN

9    IDEA OF WHAT'S IN HERE.

10         ONE OF THE OTHER DRAWINGS YOU GOT FROM MR. BRYANT WAS

11   ALREADY IN EVIDENCE, 1139; IF WE COULD SHOW THAT.

12   A    I DON'T KNOW IF THAT WAS IN THE BINDER, BUT I DID GET THEM

13   AT SOME POINT.

14   Q    FROM MR. BRYANT?

15   A    CORRECT.

16   Q    WHEN YOU MET AND HE GIVE YOU THESE DRAWINGS, DID HE ALSO

17   GAVE YOU AN AD BY STEVE MADDEN.  DO YOU RECALL THAT?

18   A    YES, I DO.

19   Q    AND I THINK YOU'VE ALREADY IDENTIFIED THAT AS 1127.

20         PERHAPS WE CAN SHOW THAT.

21         HE GAVE YOU THIS; CORRECT?

22   A    CORRECT.

23         **MR. PRICE:**  AND IF WE COULD SHOW YOU WHAT'S ALREADY

24   IN EVIDENCE, YOUR HONOR, IS EXHIBIT 10179-133; THAT'S A PAGE

25   FROM THE AUGUST 1999 SEVENTEEN MAGAZINE.  IF WE COULD PUT THAT

1    UP.

2              THE COURT:   YOU MAY.

3    BY MR. PRICE:

4    Q    DO YOU SEE EXHIBIT 10179-133 FROM THE AUGUST 1999

5    SEVENTEEN MAGAZINE; THAT'S THE SAME PHOTOGRAPH.

6              DO YOU SEE THAT?

7    A    DO I NEED TO TURN TO THE PAGE?

8    Q    SURE.  OR YOU CAN LOOK AT THE MONITOR.

9    A    COMPARE THIS TO WHAT?

10   Q    THE PICTURE IN 10179-133, THE AUGUST '99 SEVENTEEN

11   MAGAZINE, IS THE SAME PHOTOGRAPH AS EXHIBIT 1127 THAT YOU SEE.

12             THE COURT:   COUNSEL, PUT WHAT YOU'RE ASKING THE

13   WITNESS TO COMPARE ON THE SCREEN.

14             MR. PRICE:   OKAY.

15   BY MR. PRICE:

16   Q    DO YOU SEE THAT NOW?

17   A    YES.

18   Q    YOU'LL AGREE THAT THE PHOTOGRAPH IS THE SAME PHOTOGRAPH

19   THAT WAS IN THE AUGUST '99 SEVENTEEN MAGAZINE AND WHAT

20   MR. BRYANT GAVE TO YOU IN SEPTEMBER.

21   A    WELL, THERE'S DIFFERENT WORDS AT THE BOTTOM.

22   Q    RIGHT.  BUT I'M SAYING THE PHOTOGRAPHS ARE THE SAME;

23   CORRECT?

24             MR. NOLAN:   WELL, YOUR HONOR, I'M SORRY.

25             OBJECTION TO THE AMBIGUITY IN THE PHOTOGRAPH.

1        **THE COURT:**  SUSTAINED.

2   BY MR. PRICE:

3   Q    DISREGARDING THE PRINT THAT'S ON IT, THE PHOTOGRAPHS OF

4   THE TWO DOLLS, YOU'LL AGREE, ARE THE SAME.

5   A    YEAH, FROM THE SCREEN, FAR AWAY.                          11:21

6        I MEAN.  IF YOU WANT ME TO COMPARE THEM, LIKE, REALLY

7   HARD, THEN -- BUT, YEAH, THEY APPEAR TO BE THE SAME.  THERE'S

8   DIFFERENT THINGS ON THEM, BUT THE FIGURES APPEAR TO BE THE

9   SAME.

10       IS THAT WHAT YOU ARE ASKING?                             11:2

11  Q    IN FACT, MY QUESTION IS, ON DIRECT, DID YOU TESTIFY THAT

12  THIS WAS WHAT CARTER BRYANT GAVE YOU?

13  A    WHICH ONE?

14  Q    THE 10179-0133.

15  A    THAT'S WHICH ONE?                                        11:2

16  Q    THE ONE ON THE LEFT.

17  A    SEEING THEM TOGETHER, I SEE THAT THERE'S DIFFERENT WORDS.

18  I DON'T REMEMBER WHAT YOU GUYS WERE SHOWING ME AT THE

19  DEPOSITION.

20  Q    I MEANT DURING YOUR EXAMINATION BY MR. NOLAN.            11:2

21  A    I'M CONFUSED.  I'M SORRY.

22  Q    I'LL MOVE ON.

23       YOU MENTIONED THAT YOU GOT A PHOTOGRAPH OF THESE

24  DOUBLE ANGEL PICTURES.  I'M GOING TO SHOW YOU SOMETHING ALREADY

25  MARKED IN EVIDENCE, IT'S EXHIBIT 17246-115.                   11:2

1       THIS IS NOT SOMETHING MR. BRYANT GAVE YOU; CORRECT?

2   A    CAN I LOOK IT UP IN HERE IN MY BOOK?

3   Q    I'M NOT SURE IT'S THERE.  I MIGHT HAVE TO BRING THIS UP TO

4   YOU.

5           **MR. PRICE:**  IF I MAY, YOUR HONOR?

6           **THE COURT:**  YOU MAY.

7   **BY MR. PRICE:**

8   Q    THIS IS ALREADY IN EVIDENCE.  I'M JUST CONFIRMING.

9           THIS IS NOT WHAT MR. BRYANT GAVE YOU IN SEPTEMBER;

10  RIGHT?

11  A    NO, IT IS NOT.

12  Q    IF I COULD SHOW YOU 17246-126.  THIS ALSO IS NOT SOMETHING

13  THAT MR. BRYANT GAVE YOU IN SEPTEMBER OF 2000; CORRECT?

14  A    CORRECT.

15  Q    AND I'LL ASK YOU THE SAME QUESTIONS ABOUT 17246-127, AND

16  17246-193.  THIS SOMETHING MR. BRYANT GAVE YOU; CORRECT?

17  A    NO, IT IS NOT.

18  Q    AND IF YOU LOOK AT 17246-193, MR. BRYANT DIDN'T GIVE YOU

19  THIS EITHER; CORRECT?

20  A    NO, HE DID NOT.

21  Q    SO HE GAVE YOU WHAT APPEARS TO BE IN EXHIBIT 1125 AND THIS

22  STEVE MADDEN AD, EXHIBIT 1127; CORRECT?

23  A    WHAT'S THE 1125?

24  Q    THAT WAS THE BINDER, YOUR BINDER.

25           SO THOSE ARE THE THINGS HE GAVE YOU; CORRECT?

1    A    CORRECT.

2    Q    NOW, ONE OF THE OTHER DOCUMENTS HE GAVE YOU IS

3    EXHIBIT 1128; CORRECT?  IF YOU WOULD LOOK AT THAT.

4         AND I BELIEVE THAT WAS IN EVIDENCE AS WELL THROUGH

5    MR. NOLAN'S EXAMINATION.

6         **MR. NOLAN:**  I THINK THAT'S A MISSTATEMENT,

7    YOUR HONOR.  I DON'T THINK I SHOWED THIS TO HER.

8    **BY MR. PRICE:**

9    Q    IF YOU LOOK AT EXHIBIT 1128, DO YOU SEE THAT?

10   A    UH-HUH.

11   Q    THAT'S ONE OF THE DRAWINGS MR. BRYANT GAVE YOU; IS THAT

12   CORRECT?

13   A    HE GAVE IT TO ME AT SOME POINT.  I'M NOT CLEAR IF IT WAS

14   IN THE BINDER OR NOT.

15        IS THAT WHAT YOU ARE ASKING?

16   Q    SOME TIME IN SEPTEMBER OR OCTOBER, MR. BRYANT GAVE YOU

17   THIS DRAWING, 1128; CORRECT?

18   A    CORRECT.  I WOULD ASSUME.  I DON'T KNOW THE DATE.  I CAN'T

19   TELL YOU THE EXACT DATE.

20        **MR. PRICE:**  I'LL MOVE THAT INTO EVIDENCE, YOUR HONOR.

21        **THE COURT:**  IT'S ADMITTED.  YOU MAY NOW PUBLISH.

22        **MR. NOLAN:**  NO OBJECTION.

23        (EXHIBIT 1128 RECEIVED.)

24        **MR. PRICE:**  ACTUALLY, IF WE COULD PUT THAT UP, ALONG

25   WITH 1127 AND 1125-2.

11:2
11:2
11:2
11:2
11:2

1        THEY ARE ALL IN EVIDENCE, YOUR HONOR.  IT'S WHAT WE

2  JUST WENT THROUGH.

3        **THE COURT:**  VERY WELL.

4  **BY MR. PRICE:**

5  Q   SO SOME TIME IN SEPTEMBER AND OCTOBER 2000, YOU RECEIVED    11:26

6  FROM MR. BRYANT EACH OF THESE THREE DRAWINGS; CORRECT?

7        **MR. MCFARLAND:**  OBJECTION.  MISSTATES HER TESTIMONY.

8        **MR. NOLAN:**  I'LL JOIN IN THE OBJECTION.

9        **THE COURT:**  LET ME SEE ALL THREE COUNSEL AT SIDE-BAR

10  FOR A SECOND.    11:26

11        (SIDE-BAR PROCEEDINGS AS FOLLOWS:)

12        **THE COURT:**  WE'RE HAVING ONE ATTORNEY ON THE

13  OBJECTIONS.  YOU CAN CERTAINLY MAKE OBJECTIONS ON

14  ATTORNEY-CLIENT PRIVILEGE AND ON PERSONAL OBJECTIONS, BUT IN

15  TERMS OF DEFENDING MGA'S CASE, THEY ARE IN THE GOOD HANDS OF    11:27

16  MR. NOLAN.

17        **MR. MCFARLAND:**  APOLOGIZE.

18        **THE COURT:**  MR. NOLAN, DO YOU JOIN?

19        **MR. NOLAN:**  I JOIN IN THE SAME ONE.

20        **THE COURT:**  STATE THE OBJECTION.    11:27

21        **MR. NOLAN:**  IT MISSTATES HER TESTIMONY, THE PREAMBLE.

22        **THE COURT:**  REPHRASE YOUR QUESTION.

23        **MR. MCFARLAND:**  SO FOR CLARIFICATION, IF IT'S

24  ATTORNEY-CLIENT, THAT'S FINE.

25        **THE COURT:**  RIGHT.  YOU'RE REPRESENTING HER IN HER    11:27

1   PERSONAL CAPACITY.  I'M ONLY ALLOWING ONE ATTORNEY TO SPEAK FOR

2   MGA IN TERMS OF THE MERITS OF THE CASE.

3           MR. MCFARLAND:  VERY WELL.

4           THE COURT:  VERY WELL.

5           (SIDE-BAR PROCEEDINGS CONCLUDED.)                    11:27

6   BY MR. PRICE:

7   Q    THE GENTLEMAN WHO MADE THE OBJECTION, THAT'S YOUR ATTORNEY

8   MR. MCFARLAND.

9   A    WAS THAT YOU?

10          YES.                                                 11:28

11  Q    AND YOU UNDERSTOOD THAT HE ALSO REPRESENTS MGA.

12  A    I DIDN'T KNOW THAT UNTIL RECENTLY.

13  Q    BUT DO YOU KNOW NOW THAT HE ALSO REPRESENTS MGA?

14  A    RIGHT.

15          MR. NOLAN:  YOUR HONOR, OBJECTION TO THE             11:28

16  CHARACTERIZATION OF THAT IN THIS LITIGATION.

17          THE COURT:  YOU CAN FOLLOW UP, THEN, COUNSEL.

18  BY MR. PRICE:

19  Q    AND MY QUESTION WAS -- WE'VE ALREADY BEEN THROUGH THIS, I

20  BELIEVE, BUT LET'S TRY.                                      11:28

21          YOU RECEIVED A PHOTOGRAPH WHICH HAD THIS

22  DRAWING/PHOTOGRAPH FROM MR. BRYANT IN SEPTEMBER OR OCTOBER OF

23  2000; CORRECT?

24  A    YEAH.  IT HAD THE TWO FIGURES ON IT.

25  Q    AND IN THE BINDER THAT YOU GAVE YOUR COUNSEL, WHICH YOU   11:28

1    RECEIVED FROM MR. BRYANT, WE HAVE THIS DRAWING; IT'S THE SECOND

2    PAGE OF 1125; CORRECT?

3    A    CORRECT.

4    Q    AND YOU SAID YOU RECEIVED 1128 SOME TIME IN SEPTEMBER OR

5    OCTOBER AS WELL; CORRECT?                                              11:29

6    A    CORRECT.

7    Q    SO YOU RECEIVED THESE THREE DRAWINGS FROM MR. BRYANT SOME

8    TIME IN SEPTEMBER OR OCTOBER OF 2000; CORRECT?

9    A    WELL, THE ONE ON THE LEFT ISN'T A DRAWING; IT'S AN AD.

10   Q    OKAY.  THIS DISTORTED PHOTOGRAPH?                                 11:29

11   A    RIGHT.

12   Q    AND AFTER THIS INITIAL MEETING WHERE MR. BRYANT GAVE YOU

13   DRAWINGS AND GAVE YOU THIS STEVE MADDEN AD, YOU THEN WENT TO

14   WORK TO DO A SCULPT; CORRECT?

15   A    CORRECT.                                                          11:2

16   Q    AND MR. BRYANT DIDN'T LIVE AT YOUR HOUSE; RIGHT?

17   A    NO, HE DIDN'T.

18   Q    SO HE WASN'T THERE WHILE YOU WERE ACTUALLY DOING THE

19   SCULPT.

20   A    NO.                                                              11:2

21   Q    AND YOU WOULDN'T HAVE EXPECTED HIM TO BE; RIGHT?

22   A    RIGHT.

23   Q    THEN SOME TIME AROUND SEPTEMBER 29TH YOU HAD A MEETING

24   WITH MR. BRYANT.

25          MR. NOLAN:  YOUR HONOR, MY OBJECTION, IS THIS EXHIBIT           11:2

```
 1   BEING PUBLISHED TO THE JURY OR IS IT --

 2            MR. PRICE:  WE CAN TURN IT OFF NOW.

 3            THE COURT:  THANK YOU, COUNSEL.

 4   BY MR. PRICE:

 5   Q    THEN YOU HAVE YOUR SECOND MEETING WITH MR. BRYANT, WHICH      11:30

 6   IS SOMETIME AROUND SEPTEMBER 29TH; CORRECT?

 7   A    CORRECT.

 8   Q    AND AT THAT TIME, MS. TREANTAFELLES, MS. GARCIA, PAULA, IS

 9   NOT AT THAT MEETING; CORRECT?

10   A    THERE WAS SEVERAL MEETINGS, I HONESTLY CAN'T REMEMBER WHO     11:30

11   WAS AT WHICH MEETING.  THEY COULD HAVE BEEN AT THAT MEETING;

12   THEY COULD HAVE NOT BEEN AT THAT MEETING.

13            MR. PRICE:  IF WE COULD PLAY FROM MS. LEAHY'S

14   DEPOSITION TESTIMONY, 211, LINE 20, TO 212, LINE 7.

15            THE COURT:  ANY OBJECTION?                                11:30

16            MR. NOLAN:  NO OBJECTION, YOUR HONOR.

17            THE COURT:  YOU MAY PLAY IT.

18            (VIDEO PLAYS; EXCERPTS PROVIDED AS FOLLOWS: )

19            Q    WHEN IS IT THAT YOU HAD FIRST CONTACT WITH

20            ANYONE AT M.G.A. REGARDING THE BRATZ PROJECT?

21            A    WHEN PAULA CAME TO MY HOUSE.

22            Q    WHEN DID THAT OCCUR?

23            A    THE FIRST TIME I MET PAULA WAS OCTOBER 6TH.

24            Q    OF 2000?

25            A    YES.
```

4323

```
1              Q    YOU HAD MET PAULA TREANTAFELLES AT THAT TIME

2         ON OCTOBER 6TH, 2000, AT YOUR HOUSE?

3              A    YES.

4              Q    DID YOU HAVE ANY SORT OF CONTACT WITH HER

5         PRIOR TO THAT?

6              A    NO.

7              (EXCERPTS CONCLUDED.)
```

**BY MR. PRICE:**

```
9    Q    AND MS. LEAHY, IF YOU WOULD LOOK AT YOUR NOTES,

10   EXHIBIT 1137-14, IF WE CAN DISPLAY THAT, THAT'S IN EVIDENCE.      11:3:

11   YOU'VE SEE YOU'VE GOT AN ENTRY DATED SEPTEMBER 29TH.

12              DO YOU SEE THAT?

13   A    RIGHT.

14   Q    AND YOU SEE YOU HAVE NOTED -- YOU PRESENTED YOUR SCULPT

15   THAT YOU HAD DONE; CORRECT?                                        11:3:

16              MR. NOLAN:  OBJECTION TO TIME.
```

**BY MR. PRICE:**

```
18   Q    ON SEPTEMBER 29TH, YOU PRESENTED THE SCULPT THAT YOU HAD

19   DONE?

20   A    RIGHT; THE FIRST VERSION OF THIS ONE.                         11:3:

21   Q    AND WHAT WE HAVE HERE IN YOUR NOTES ARE FIVE LINES WHERE

22   YOU WROTE DOWN COMMENTS THAT WERE MADE ABOUT THAT SCULPT;

23   CORRECT?

24   A    CORRECT.

25   Q    AND THESE WERE COMMENTS THAT WERE ALL MADE BY                 11:3:
```

1   CARTER BRYANT; CORRECT?

2   A    WELL, WHAT I'M SAYING IS WHEN I LOOK AT THESE NOTES, THEY

3   COULD HAVE BEEN MADE BY PAULA AND VERONICA; THEY COULD HAVE

4   BEEN MADE BY CARTER.  I DON'T REMEMBER IF THEY WERE THERE AT

5   THAT MEETING OR NOT.                                          11:33

6   Q    WELL, AT YOUR DEPOSITION YOU HAD THESE NOTES IN FRONT OF

7   YOU; CORRECT?

8   A    CORRECT.

9   Q    AND AT YOUR DEPOSITION, LOOKING AT THESE NOTES, YOU SAID

10  IT WAS CARTER BRYANT WHO GAVE YOU EACH ONE OF THOSE CRITICISMS;  11:33

11  CORRECT?

12  A    DID I SAY THAT IN MY DEPOSITION?

13          MR. PRICE:  LET'S PLAY PAGE 161, LINES 5 THROUGH 17.

14          THE COURT:  ANY OBJECTION?

15          MR. NOLAN:  YES.  IT'S NOT IMPEACHMENT.  SHE DOES NOT  11:33

16  IDENTIFY THOSE COMMENTS BEING FROM CARTER BRYANT.

17          THE COURT:  IS 1137 THE SAME AS 1133 IN THE

18  DEPOSITION?

19          MR. PRICE:  YES; IT WAS A REDACTED VERSION.

20          THE COURT:  THE OBJECTION IS OVERRULED.            11:3

21          YOU MAY PLAY IT.

22          (VIDEO PLAYS; EXCERPTS PROVIDED BY

23          COUNSEL AS FOLLOWS: )

24          Q SO YOU SAID THAT YOU NEEDED TO LOOK AT YOUR

25          BOOK IN ORDER TO DETERMINE WHEN IT IS THAT YOU.

1          STARTED WORKING ON THAT FIRST SCULPT FOR BRATZ, SO,.

2          PLEASE, TELL ME NOW THAT YOU HAVE YOUR BOOK IN FRONT.

3          OF YOU MARKED AS 1132 AND 1133 WHEN THAT WAS?

4          A   IT SAYS SEPTEMBER 29 HERE WHERE CARTER IS

5          CRITIQUING THE SCULPT ON PAGE 00078.01.  IT'S THE.

6          FIRST PAGE AFTER THE FIRST PAGE.

7          Q   SO, PLEASE, TELL US WHAT THAT MEANS?

8          A   THAT MEANS HE WAS CRITIQUING MY SCULPT.  IT

9          TOOK ME TWO DAYS TO DO THE SCULPT, SO THAT WOULD HAVE

10         BEEN TWO OR THREE DAYS BEFORE SO THE 26TH OR THE.

11         27TH, SOMEWHERE AROUND THAT TIME.

12         (EXCERPTS CONCLUDED.)

13         **MR. PRICE:**  AND, YOUR HONOR, IF I COULD READ INTO

14    EVIDENCE AT THE SAME TIME PAGES 162, LINES 21 -- ACTUALLY, WE

15    CAN PLAY IT, LINES 21 THROUGH LINE 24.                    11:3!

16         **THE COURT:**  ANY OBJECTION?

17         **MR. PRICE:**  162, LINE 21, TO 163, LINE 22.

18         **MR. NOLAN:**  NO OBJECTION, YOUR HONOR.

19         **THE COURT:**  VERY WELL.

20         (VIDEO PLAYS; EXCERPTS PROVIDED BY                   11:3

21         COUNSEL AS FOLLOWS:)

22         Q   THIS CRITIQUE THAT YOU MENTIONED THAT OCCURRED

23         ON OR ABOUT SEPTEMBER 29TH, 2000, OF THE FIRST BRATZ

24         SCULPT THAT YOU DID, MR. BRYANT WAS THAT?

25         A   YES.

1    Q    YOU WERE THERE, OF COURSE?

2    A    YES.

3    Q    WAS ANYONE ELSE THERE?

4    A    JUST MY DAUGHTER.

5    Q    YOUR INFANT DAUGHTER?

6    A    MY INFANT DAUGHTER AT THE TIME.

7    Q    AND WHERE DID THIS TAKE PLACE?

8    A    AT MY HOUSE.

9    Q    MR. BRYANT GAVE YOU THE COMMENTS THAT ARE

10   REFLECTED HERE IN YOUR BOOK, THE SECOND PAGE OF.

11   EXHIBIT 1132?

12   A    CAN YOU SAY THAT AGAIN?

13   Q    SURE.  DIRECTING YOUR ATTENTION TO THE SECOND

14   PAGE OF EXHIBIT 1132, IT HAS THE ENTRY FOR SEPTEMBER

15   29TH, 2000.  IT HAS COMMENTS WHERE IT SAYS, "FIONA";

16   RIGHT?

17   A    YES.

18   Q    YOU MENTIONED THOSE WERE THE COMMENTS THAT

19   CARTER BRYANT GAVE YOU ON YOUR FIRST BRATZ SCULPT;

20   CORRECT?

21   A    CORRECT.

22   Q    DID HE GIVE YOU ANY OTHER COMMENTS?

23   A    NO.  THAT WAS IT.  I WROTE EVERYTHING DOWN.

24   (EXCERPTS CONCLUDED.)

25   **MR. PRICE:**  YOUR HONOR, THE SECOND PAGE, FOR THE

11:37

1    RECORD, 1132 IS THE SAME AS WHAT WE'VE HAD ON THE BOARD, WHICH

2    IS EXHIBIT 1137-14.

3              THE COURT:  IS THAT STIPULATED TO?

4         MR. NOLAN:  NO, YOUR HONOR.

5              WELL, NOW, THIS VERSION IS THE SAME BECAUSE IT HASN'T     11:38

6    BEEN REDACTED ON THE BOTTOM.  THE ONE SHOWN BEFORE, YOUR HONOR,

7    HAD A REDACTION.

8         MR. PRICE:  THAT'S TRUE.  THE ONE BEFORE HAD A

9    REDACTION.  THEN THEY GAVE US A COPY BUT BOTH HAD THESE

10   CRITIQUES HERE.                                                     11:38

11             THE COURT:  IS THAT AGREED?

12             CAN SOMEONE HIGHLIGHT THE PORTION YOU'RE REFERRING

13   TO?

14             IS THAT THE SAME AS WHAT WAS BEING REFERRED TO IN

15   BOTH DEPOSITION TESTIMONY AND BEFORE THE JURY?                     11:38

16        MR. NOLAN:  YES, YOUR HONOR.  BUT THAT DEPOSITION

17   EXHIBIT SHOWN TO MS. LEAHY HAD THE BOTTOM PART OF IT NOT THERE,

18   WHICH HAS PAULA TREANTAFELLES' NAME UNDER THE DATE; THAT'S THE

19   POINT; SO WHEN IT'S REPRESENTED THAT THEY ARE THE SAME, IT'S

20   NOT THE SAME.                                                      11:38

21        THE COURT:  THE PORTION THAT'S HIGHLIGHTED IS THE

22   SAME; IS THAT CORRECT?

23        MR. NOLAN:  YES, YOUR HONOR.

24        THE COURT:  AND THE PORTION WITH THE NAME

25   "PAULA TREANTAFELLES" IS NOT THE SAME.                            11:38

1        MR. NOLAN:   CORRECT.

2          THE COURT:   THANK YOU.

3        MR. NOLAN:   THAT'S NOT ON THE EXHIBIT SHE WAS SHOWN

4    AT DEPOSITION.

5          MR. PRICE:   FOR THE RECORD, WE DID NOT REDACT THAT;     11:39

6    THAT WAS MGA'S REDACTION.

7          MR. NOLAN:   OBJECTION.   THAT'S NOT TRUE.   THAT WAS

8    NOT MGA'S REDACTION.

9          THE COURT:   WHO'S REDACTION WAS IT?

10         MR. ZELLER:   THEY WERE DONE BY MS. LEAHY'S COUNSEL AT     11:39

11   THE TIME, AND IT IS MY RECOLLECTION THAT AT THAT TIME, IT WAS

12   MR. MCFARLAND.

13         MR. NOLAN:   THAT WAS THE PRODUCT OF THE MEET AND

14   CONFER WE HAD WITH RESPECT TO DISCOVERY ISSUES INVOLVING THE

15   LAW FIRM OF QUINN EMANUEL THAT CERTAIN REDACTIONS WERE MADE.     11:39

16         THE COURT:   VERY WELL.

17         THE JURY IS TO AT THIS POINT DISREGARD THIS

18   DISCUSSION ABOUT THE REDACTION.   ALL THAT IS RELEVANT TO THE

19   CURRENT TESTIMONY IS THE HIGHLIGHTED AREA, AND BOTH PARTIES

20   STIPULATE THAT WAS THE SAME BEFORE THE WITNESS NOW AND AT THE     11:39

21   DEPOSITION.

22         IS THAT CORRECT, MR. PRICE?

23   MR. PRICE:   YES.

24   THE COURT:   MR. NOLAN?

25   MR. NOLAN:   YES.   EXCEPT FOR THE CHARACTERIZATION

1    THAT THE ONLY RELEVANCE IS THE TOP PART BECAUSE OF THE

2    INCLUSION OF THE NAME PAULA TREANTAFELLES UNDER THE DATE OF

3    SEPTEMBER 29TH.

4            THE COURT:   HOW IS THAT RELEVANT TO THE TESTIMONY WE

5    JUST HAD RIGHT NOW, COUNSEL?                                    11:40

6            MR. NOLAN:   YOUR HONOR, BECAUSE COUNSEL IS PLAYING A

7    REDACTED EXHIBIT OR SHOWING A REDACTED EXHIBIT THAT DID NOT

8    HAVE PAULA TREANTAFELLES' NAME.

9            THE COURT:   I UNDERSTAND THAT.  BUT HOW IS THAT

10   RELEVANT TO THE QUESTION THAT WAS POSED AND JUST PLAYED?        11:40

11           MR. NOLAN:   BECAUSE, YOUR HONOR, THEY ARE TRYING TO

12   IMPEACH MS. LEAHY WITH RESPECT TO HER RECOLLECTION ONE WAY OR

13   THE OTHER OF WHETHER OR NOT PAULA TREANTAFELLES WAS PRESENT.

14           THE COURT:   THAT WASN'T THE QUESTION THAT WAS JUST

15   POSED; THAT GOES TO AN EARLIER QUESTION.  AND THAT'S A POINT    11:40

16   THAT I'LL PERMIT YOU TO EXAMINE ON WHEN WE GET TO THAT.

17           FOR PURPOSES OF THE PENDING SERIES OF QUESTIONS, IS

18   THERE ANY OBJECTION?

19           IF THERE IS, THEN WE SHOULD JUST BRING BOTH EXHIBITS

20   IN.                                                             11:40

21           MR. NOLAN:   BOTH EXHIBITS ARE IN EVIDENCE, AND MY

22   OBJECTION IS --

23           THE COURT:   WHAT'S THE OTHER EXHIBIT?

24           MR. NOLAN:   1137.

25           MR. PRICE:   IT'S 1132 AND 1133.                        11:4

1          WE'RE REFERRING NOW TO 1132-2 AND 1132-3 ARE THE SAME

2     AS REDACTED VERSIONS OF 1137-14 AND 1137-15.

3          **THE COURT:**  LET'S PUT THEM UP NEXT TO EACH OTHER.

4          **MR. NOLAN:**  THANK YOU, YOUR HONOR.

5          **MR. PRICE:**  IF WE COULD GO TO 1137-14.                    11:41

6          **THE COURT:**  SO THE EXHIBIT ON THE LEFT IS WHAT

7     WAS BEFORE THE WITNESS AT THE DEPOSITION; IS THAT CORRECT?

8          **MR. PRICE:**  YES.

9          **MR. NOLAN:**  CORRECT.

10         **THE COURT:**  THE EXHIBIT ON THE RIGHT IS WHAT IS          11:42

11    BEFORE THE WITNESS PRESENTLY; CORRECT?

12         **MR. PRICE:**  CORRECT.

13         **THE COURT:**  WHO DID THE REDACTION TO THE ONE ON THE

14    LEFT?

15         **MR. ZELLER:**  MY RECOLLECTION IS THAT THE REDACTED        11:42

16    VERSION ON THE LEFT IS WHAT WE WERE GIVEN IN ADVANCE OF

17    MS. LEAHY'S DEPOSITION, WHICH WAS PRODUCED BY HER COUNSEL,

18    MR. MCFARLAND'S LAW FIRM.

19         **THE COURT:**  MR. NOLAN, FROM YOUR PERSPECTIVE, WHO DID

20    THE REDACTION ON THE LEFT?                                        11:4

21         **MR. NOLAN:**  I APOLOGIZE.

22         MR. MCFARLAND.  BUT I WAS MISTAKEN.  THEY HAVE NOW

23    SHOWN 1132 --

24         **THE COURT:**  THEY BOTH SEEM TO HAVE

25    PAULA TREANTAFELLES' NAME ON THEM.                                11:4

1      **MR. NOLAN:**  NO.  THAT'S THE POINT.

2          IF I COULD HAVE EXHIBIT 1133 WHICH IS THE EXHIBIT

3   THAT WAS USED AT THE DEPOSITION, THAT PORTION HAS BEEN

4   REDACTED; SO 1132, MY UNDERSTANDING, IS NOT EXHIBIT.

5          **THE COURT:**  I'M GOING TO EXCUSE THE JURY AND WE'RE          11:42

6   GOING TO GET TO THE BOTTOM OF THIS.

7              (WHEREUPON JURORS DEPART COURTROOM.)

8          **THE COURT:**  COUNSEL, I'LL GIVE YOU A FEW CHANCES TO

9   TALK ABOUT THIS AMONGST YOURSELVES.

10             (WHEREUPON A LUNCH RECESS WAS HELD.)                        11:43

11             (MORNING SESSION CONCLUDED.)

12

13

14

15

16

17                         CERTIFICATE

18

19  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
20  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
    ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
21  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.

22

23

24  THERESA A. LANZA, RPR, CSR          7-7-08
    OFFICIAL COURT REPORTER                DATE

25                                                                        11:47

THURSDAY, JULY 3, 2008          TRIAL DAY 20, MORNING SESSION