```
 1   GRANTING THIS MOTION, THE STATUTE OF LIMITATIONS, OUTRIGHT, ON
 2   SUMMARY JUDGMENT, AND TWICE I PUT IT BACK, BECAUSE I AM NOT
 3   CONVINCED THAT THERE IS A GENUINE ISSUE OF FACT.
 4        THERE MAY BE.  AND WHERE IT MAY BE IS IN A
 5   COMBINATION OF THE FACT OF THE ANONYMOUS LETTER, THE
 6   INVESTIGATION, AND SOME REASONABLE INFERENCES THAT MAY BE DRAWN
 7   FROM OTHER TESTIMONY.
 8        MIND YOU, I MAY GO BACK TO MY INITIAL INCLINATION
 9   WHICH I TWICE REJECTED, AND THAT IS THAT, YOU'RE RIGHT, AS A
10   MATTER OF LAW, THAT THIS IS NOT A TRIABLE ISSUE.  BUT PART OF
11   THE COMPONENT OF THAT TRIABLE ISSUE OF FACT IS THE STATEMENT
12   THAT, YOU KNOW, YOU'RE GOING TO GET IN THE ANONYMOUS LETTER;
13   THAT COMES IN.  YOU'RE GOING TO GET IN -- NOT NECESSARILY
14   THROUGH THIS WITNESS; YOU HAVE TO LAY FOUNDATION; BUT YOU'RE
15   GOING TO GET THE ANONYMOUS LETTER; AND YOU'RE GOING TO GET IN
16   THAT AS EARLY AS 2002, MAYBE EVEN EARLIER, THAT IT WAS CARTER
17   BRYANT WHO DEVELOPED BRATZ.
18        THE CRITICAL ISSUE IS IN TERMS OF WHETHER OR NOT IT
19   WAS DEVELOPED WHILE HE WAS AS A MATTEL EMPLOYEE.  AND I
20   RECOGNIZE THAT, AND I UNDERSTAND ABOUT THE INVESTIGATION, THAT
21   THAT WAS FOCUSED ON SOMETHING ENTIRELY DIFFERENT.  AND I
22   UNDERSTAND ABOUT THE E-MAIL THAT WAS FOCUSED ON SOMETHING
23   DIFFERENT.  I GET ALL OF THAT.  THAT'S NOT COMING IN.
24        BUT WE JUST NEED TO GET PAST THIS.  AND I'M
25   PERMITTING EVIDENCE IN THAT HE -- BUT I DON'T KNOW WHERE THIS
```

1    IMPEACHMENT -- WHAT ARE YOU TRY TO IMPEACH WITH HIM AT THIS

2    POINT?  THAT THERE WERE OTHER PEOPLE THAT HE DIDN'T KNOW ABOUT

3    OR THAT HE DID KNOW ABOUT?

4           FOR THAT TO BE IMPEACHED, YOU WOULD HAVE TO SHOW, AND

5    HAVE A GOOD FAITH BASIS FOR BELIEVING, THAT HE KNEW THAT THERE

6    WERE OTHER PEOPLE INVESTIGATING THIS PRIOR TO HIM INVESTIGATING

7    IT?

8           WHAT ARE YOU TRYING TO PROVE?

9           **MR. SLOAN:**  THERE'S AN INVESTIGATIVE REPORT THAT IS

10   PRODUCED BY MATTEL THAT SHOWS AN INVESTIGATION WHICH BEGAN IN

11   MARCH OF 2002.  I THINK I'M ENTITLED TO INQUIRE WHETHER

12   TESTIMONY FROM SOMEONE FROM THE VIDEO DEPARTMENT TESTIFYING

13   THAT HE DIDN'T KNOW ABOUT THIS KEY PIECE OF EVIDENCE IN

14   NOVEMBER OF 2003 -- HE KNEW ABOUT OTHER EVIDENCE OR OTHER

15   PEOPLE KNEW ABOUT OTHER EVIDENCE; THAT WOULD PUT THEM ON NOTICE

16   THAT CARTER BRYANT WAS INVOLVED IN SOME CREATION OF BRATZ BACK

17   INTO MARCH OF 2002.  I THINK THAT'S A FAIR QUESTION TO ASK

18   ABOUT.  NOT JUST FOR IMPEACHMENT, BUT IT GOES DIRECTLY TO THE

19   FRAUDULENT CONCEALMENT, WHICH IS THE ONLY REASON, I SUBMIT,

20   THAT MR. ZELLER CALLED HIM AS A WITNESS.

21          **MR. ZELLER:**  THIS IS REALLY A DISTORTION OF THE

22   COURT'S RULINGS.  WHAT MR. SLOAN IS DOING, IT'S QUITE CLEAR

23   FROM THE COURT'S ORDER, THERE IS A KEY DISTINCTION AS TO

24   KNOWING WHETHER CARTER BRYANT WAS CREATING BRATZ WHILE EMPLOYED

25   BY MATTEL OR CREATING IT AT ANY TIME.

1          **THE COURT:**  I UNDERSTAND THAT.

2          **MR. ZELLER:**  THEY HAVE NO TIME LIMITATION ON IT; SO

3    THE QUESTION IS VAGUE.

4          OF COURSE MR. MOORE IS GOING TO SAY 'I LOOKED INTO

5    WHETHER OR NOT CARTER BRYANT WAS INVOLVED IN THE CREATION OF

6    BRATZ.'

7          **THE COURT:**  BUT YOU CAN CLARIFY ON REDIRECT; SO I

8    THINK WE SHOULD JUST MOVE FORWARD AND THAT CLARIFICATION COMES

9    OUT, AND THAT'S THAT.

10         BUT I'M HAVING THE SAME PROBLEM WITH THIS WITNESS

11   THAT I'M HAVING WITH SEVERAL OTHERS.  WHAT IS IT WITH IN-HOUSE

12   COUNSEL THAT THEY CAN'T ANSWER A SIMPLE QUESTION?  I MEAN...

13         **MR. ZELLER:**  I WILL SAY -- AND I DON'T WANT TO SOUND

14   -- BUT THE QUESTIONS ARE TROUBLING TO ME.  WE'RE OBVIOUSLY

15   OBJECTING TO THEM.  BUT I THINK THEY ARE VAGUE.

16         YES, OF COURSE, HE LOOKED AT THESE THINGS, BUT.

17         **THE COURT:**  HE NEEDS TO JUST ANSWER THE QUESTIONS.

18   AND YOU CAN REDIRECT; SO LET'S GO THROUGH THIS.

19         BUT PLEASE BE PRECISE IN YOUR QUESTIONS.

20         (SIDE-BAR PROCEEDINGS CONCLUDED.)

21         **THE COURT:**  YOU MAY PROCEED, COUNSEL.

22         JUST ASK YOUR NEXT QUESTION, COUNSEL.

23         **MR. SLOAN:**  ARE YOU ASKING ME TO ASK A DIFFERENT

24   QUESTION?

25         **THE COURT:**  JUST ASK A QUESTION, ANY QUESTION.

```
 1              MR. SLOAN:  I'LL TRY TO MAKE IT SOMETHING THAT'S NOT
 2    OBJECTABLE, YOUR HONOR.
 3              THE COURT:  THANK YOU.
 4    BY MR. SLOAN:
 5    Q    MR. MOORE, ARE YOU AWARE THAT THERE WERE OTHER PEOPLE AT
 6    MATTEL WHO WERE INVESTIGATING MR. BRYANT'S ROLE IN DESIGNING
 7    BRATZ BEFORE THE SUMMER OF 2003?
 8              MR. ZELLER:  ASSUMES FACTS; LACKS FOUNDATION.
 9              MR. SLOAN:  I ASKED WHETHER HE'S AWARE.
10              THE COURT:  YOU DID ASK WHETHER HE'S AWARE.  THAT
11    ASSUMES FACTS NOT IN EVIDENCE.  YOU HAVE TO CHANGE IT TO AN
12    "IF."  DO YOU KNOW "IF" AS OPPOSED TO WHETHER YOU ARE AWARE
13    "THAT"; THAT DOES ASSUME FACTS NOT IN EVIDENCE AS FORMED.
14              OBJECTION SUSTAINED.
15    BY MR. SLOAN:
16    Q    DO YOU KNOW IF THERE WERE OTHER PEOPLE AT MATTEL WHO WERE
17    INVOLVED IN INVESTIGATING MR. BRYANT'S ROLE IN DESIGNING BRATZ
18    BEFORE THE SUMMER OF 2003?
19    A    WHAT YOU HAVE TO UNDERSTAND IS A LOT OF MY KNOWLEDGE IS
20    BASED ON CONVERSATIONS THAT I HAVE HAD WITH LAWYERS AND THINGS;
21    SO JUST MAY AWARENESS --
22              THE COURT:  JUST ANSWER THE QUESTION.
23              THE WITNESS:  OKAY.  I WAS AWARE THAT THERE WAS SOME
24    REVIEW OF BRATZ WITH RESPECT TO TOON TEENZ.
25    BY MR. SLOAN:
```

```
 1   Q    AND WERE THERE OTHER PEOPLE IN THE LEGAL DEPARTMENT, TO

 2   YOUR KNOWLEDGE, WHO WERE INVOLVED IN INVESTIGATING WHETHER

 3   MR. BRYANT WAS INVOLVED IN THE CREATION OF BRATZ?

 4   A    WHEN YOU SAY "IN THE CREATION OF BRATZ," THAT, I DON'T

 5   KNOW.

 6   Q    WERE THERE OTHER PEOPLE IN THE LEGAL DEPARTMENT WHO WERE

 7   INVOLVED IN INVESTIGATING WHETHER BRATZ IN SOME WAY INFRINGED

 8   ON TOON TEENZ?

 9   A    I WAS AWARE THERE WAS A REVIEW OF WHETHER BRATZ INFRINGED

10   TOON TEENZ.

11   Q    DO YOU WORK WITH MICHELE MCSHANE?

12   A    I DON'T CURRENTLY.

13   Q    DID YOU FORMERLY WORK WITH HER?

14   A    YES.

15   Q    WAS SHE INVOLVED IN INVESTIGATING THIS CASE IN ANY WAY?

16           MR. ZELLER:  OBJECTION.  VAGUE AS TO "THIS CASE."

17           THE COURT:  REPHRASE, COUNSEL.

18   BY MR. SLOAN:

19   Q    WAS SHE INVOLVED IN INVESTIGATING THE CLAIMS WHICH LED TO

20   THE FILING OF THE COMPLAINT AGAINST MGA AND ISAAC LARIAN IN

21   THIS CASE?

22   A    NO.  NOT TO MY KNOWLEDGE.

23   Q    SHE WASN'T.

24           DID YOU WORK WITH MR. ROBERT NORMILE IN CONNECTION

25   WITH THIS INVESTIGATION?
```

1    A    I WORKED WITH BOB NORMILE IN CONNECTION WITH MY ACTIVITIES

2    IN 2003, YES.

3    Q    AND ARE YOU AWARE OR ARE YOU AWARE OF WHETHER THE GLOBAL

4    SECURITY DEPARTMENT AT MATTEL CONDUCTED ANY SORT OF

5    INVESTIGATION INTO WHETHER OR NOT CARTER BRYANT WAS INVOLVED IN

6    THE CREATION OF BRATZ?

7    A    AS TO THAT QUESTION, I'M NOT AWARE THAT THEY LOOKED INTO

8    THAT.

9    Q    OKAY.

10          MR. MOORE, YOU TESTIFIED EARLIER, I THINK, THAT

11   YOU -- LET ME DIRECT YOU BACK TO YOUR DECLARATION, WHICH IS

12   EXHIBIT 18064, PARAGRAPH FIVE, THE SECOND SENTENCE OF THAT.

13   YOU SAY "I PERSONALLY SPENT HUNDREDS OF HOURS, BEGINNING IN

14   2003, SEARCHING FOR, COLLECTING AND PRESERVING DOCUMENTS,

15   INCLUDING ELECTRONIC DATA, IN CONNECTION WITH THIS LITIGATION."

16          IS THAT CORRECT?

17   A    THAT'S WHAT I SAID HERE, YES.

18   Q    WELL, I DIDN'T ASK WHETHER THAT'S WHAT YOU SAID HERE.  I

19   SAID IS WHAT YOU SAID THERE CORRECT?

20   A    I DIDN'T MEAN TO -- THAT'S -- WHAT I SAID HERE IS CORRECT.

21   Q    OKAY.

22          AND ARE YOU AWARE THAT THERE'S A GLOBAL SECURITY

23   DEPARTMENT AT MATTEL THAT CONDUCTS INVESTIGATIONS?

24   A    I AM AWARE.

25   Q    AND IN THE NORMAL COURSE OF INVESTIGATING POTENTIAL CLAIMS

```
 1   AGAINST SOMEONE FOR INFRINGING A COPYRIGHT THAT'S OWNED BY

 2   MATTEL, WOULD YOU NORMALLY LOOK AT INVESTIGATIVE REPORTS FROM

 3   THE GLOBAL SECURITY DEPARTMENT?

 4            MR. ZELLER:  ASSUMES FACTS; FOUNDATION; SEEMS TO BE

 5   INVADING WORK PRODUCT.

 6            THE COURT:  REPHRASE IT, COUNSEL.

 7   BY MR. SLOAN:

 8   Q    ARE YOU AWARE THAT THE GLOBAL SECURITY DEPARTMENT PREPARES

 9   INVESTIGATIVE REPORTS, SIR?

10   A    YES.

11   Q    AND WHEN THERE IS A POTENTIAL BREACH OF INTELLECTUAL

12   PROPERTY RIGHTS OWNED BY MATTEL, DOES THE GLOBAL SECURITY

13   DEPARTMENT SOMETIMES PERFORM AN INVESTIGATION INTO THAT?

14   A    THEY HAVE ON OCCASION, YES.

15   Q    DO YOU KNOW WHETHER IN THIS CASE THE GLOBAL SECURITY

16   DEPARTMENT PERFORMED ANY INVESTIGATION INTO WHETHER OR NOT

17   CARTER BRYANT HAD ANY ROLE IN THE CREATION OF BRATZ?

18            MR. ZELLER:  "THIS CASE," YOUR HONOR.  VAGUE;

19   FOUNDATION.

20            THE COURT:  USING "INVESTIGATION" AS HE PREVIOUSLY

21   DEFINED IT?

22            MR. SLOAN:  YES, YOUR HONOR.

23            THE COURT:  OVERRULED.

24            THE WITNESS:  I'M NOT AWARE THAT THE GLOBAL SECURITY

25   DEPARTMENT EVER LOOKED INTO WHEN CARTER BRYANT CREATED BRATZ.
```

**BY MR. SLOAN:**

Q    ARE YOU AWARE OF WHETHER THE GLOBAL SECURITY DEPARTMENT EVER LOOKED AT WHETHER MR. BRYANT WAS INVOLVED IN THE CREATION OF BRATZ AT ALL?

**MR. ZELLER:**  CALLS FOR PRIVILEGE; WORK PRODUCT.

**THE COURT:**  THERE'S NO FOUNDATION AT THIS POINT. HE'S NOT AWARE OF --

HE JUST TESTIFIED HE WAS NOT AWARE OF ANY INVESTIGATION INTO THE CREATION.  THE QUESTION SEEMS TO REPEAT THAT.

**MR. SLOAN:**  YOUR HONOR, I THINK WHAT HE SAID, HE WASN'T AWARE OF AN INVESTIGATION INTO THE TIMING OF WHEN MR. BRYANT CREATED BRATZ.

I DON'T HAVE THE TRANSCRIPT IN FRONT OF ME, BUT...

I CAN MOVE ON.

**THE COURT:**  HE DID SAY "WHEN."  YOU'RE CORRECT.  BUT LAY A FOUNDATION FOR ANYTHING FURTHER, AND BE CAREFUL ABOUT THE WORK PRODUCT.

**BY MR. SLOAN:**

Q    SIR, COULD I HAVE YOU TAKE A LOOK AT EXHIBIT 1195 IN THE WHITE BINDER.  DO YOU SEE THAT DOCUMENT?

A    YES.

Q    AND IS THAT A DOCUMENT THAT WAS PRODUCED BY MATTEL IN THE COURSE OF THIS LITIGATION?

A    I UNDERSTAND IT WAS, YES.

1    Q    AND YOU UNDERSTAND THAT BY VIRTUE OF THE FACT IT HAS A

2    MATTEL BATES NUMBER ON THE BOTTOM?

3    A    THAT'S RIGHT.

4    Q    AND, SIR, YOU HAVE INDICATED IN YOUR DECLARATION, AND I

5    BELIEVE IN YOUR TESTIMONY, THAT YOU WERE INVOLVED AND SPENT

6    HUNDREDS OF HOURS COLLECTING DOCUMENTS IN CONNECTION WITH THIS

7    CASE; IS THAT CORRECT?

8    A    I TESTIFIED TO THAT, YES.

9    Q    AND WAS ONE OF YOUR RESPONSIBILITIES THAT YOU HAD WAS

10   COLLECTING DOCUMENTS TO PRODUCE TO MGA AND ISAAC LARIAN IN

11   RESPONSE TO DISCOVERY REQUESTS?

12   A    YES.

13   Q    AND THIS IS, IN FACT, A DOCUMENT WHICH WAS PRODUCED BY

14   MATTEL BY MATTEL'S LEGAL DEPARTMENT; CORRECT?

15   A    IT WAS.

16   Q    OKAY.

17          HAVE YOU SEEN THIS DOCUMENT BEFORE?

18   A    I'VE SEEN THIS ONLY IN CONNECTION WITH -- ONLY AFTER THE

19   CASE WAS FILED DID I SEE THIS DOCUMENT.

20   Q    ARE YOU AWARE OF WHAT THIS REPORT IS OR WHAT THIS DOCUMENT

21   IS, THOUGH?

22          **MR. ZELLER:**  QUESTION IS VAGUE.

23          **THE COURT:**  OVERRULED.

24          **THE WITNESS:**  IT LOOKS LIKE -- I MEAN, I DON'T REALLY

25   KNOW.  IT LOOKS LIKE AN INVESTIGATION FILE FROM OUR GLOBAL

```
 1    SECURITY GROUP.

 2    BY MR. SLOAN:

 3    Q    AND TO YOUR KNOWLEDGE, IS IT NORMAL PRACTICE FOR THE

 4    GLOBAL SECURITY DEPARTMENT TO PREPARE INVESTIGATIVE REPORTS?

 5    A    IT IS.

 6    Q    AND ARE THEY KEPT IN THE ORDINARY COURSE OF BUSINESS?

 7    A    YES.

 8              MR. SLOAN:  YOUR HONOR, I'D MOVE TO ADMIT

 9    EXHIBIT 1195.

10              THE COURT:  ANY OBJECTION.

11              MR. ZELLER:  LACKS FOUNDATION; NOT RELEVANT; 403.

12              THE COURT:  COUNSEL, DO YOU PLAN ON ASKING FURTHER

13    QUESTIONS OF THIS WITNESS ABOUT THIS DOCUMENT?

14              MR. SLOAN:  YES, YOUR HONOR.

15              THE COURT:  YOU'RE GOING TO NEED TO LAY FURTHER

16    FOUNDATION FOR THAT.

17              ADMITTING THE DOCUMENT, SEPARATE AND PART FROM THAT,

18    I'LL TAKE THAT UP LATER, BUT YOU'LL NEED FURTHER -- THERE'S NOT

19    SUFFICIENT FOUNDATION TO QUESTION THIS WITNESS ABOUT THIS

20    DOCUMENT.

21    BY MR. SLOAN:

22    Q    YOU SAID YOU HAD SEEN THIS DOCUMENT, BUT YOU SAW IT AFTER

23    THE LITIGATION WAS FILED; IS THAT CORRECT?

24    A    THAT'S RIGHT.

25    Q    AND DO YOU HAVE ANY REASON TO BELIEVE THIS IS AN AUTHENTIC
```

1   -- THIS IS NOT AN AUTHENTIC DOCUMENT PRODUCED BY MATTEL?

2              **MR. ZELLER:**  NOT A PROPER FOUNDATION QUESTION.

3              **THE COURT:**  IT'S FINE WITH THE QUESTION.

4         BUT THAT'S NOT THE FOUNDATION I'M TALKING ABOUT,

5   COUNSEL.  THE FOUNDATION IS THIS WITNESS'S ABILITY TO

6   COMPETENTLY TESTIFY ABOUT THIS DOCUMENT.

7         YOU'VE LAID A FOUNDATION TO INTRODUCE THE DOCUMENT,

8   AND THAT GETS PAST THE HEARSAY EXCEPTION.  THIS FOUNDATION GOES

9   TO THIS WITNESS'S COMPETENCY TO TESTIFY ABOUT THE DOCUMENT.

10             **MR. ZELLER:**  IT UNDERLIES THE PRIVILEGE AND WORK

11  PRODUCT ISSUE.  THIS IS A MEMBER OF OUR LITIGATION TEAM.  HE'S

12  ASKING HIM ABOUT HIS FAMILIARITY WITH THE DOCUMENTS PRODUCED IN

13  THE CASE; THAT'S WHAT'S CAUSING MY CONCERN.

14             **THE COURT:**  I WAS HOPING TO AVOID THIS, BUT WE'RE

15  GOING TO NEED TO DISCUSS THIS AT SIDE-BAR.

16             (SIDE-BAR PROCEEDINGS AS FOLLOWS:)

17             **THE COURT:**  WHAT EXHIBIT NUMBER?

18             **MR. SLOAN:**  1195; IT'S AN INVESTIGATIVE REPORT

19  PRODUCED BY THEM THAT HAS -- THEY HAVE NOT CLAIMED WORK PRODUCT

20  ON IT; THEY HAVE NOT CLAIMED PRIVILEGE WITH RESPECT TO THE

21  REPORT; THEY PRODUCED IT.  I THINK THAT IF THIS WITNESS HAS

22  SAID THAT HE HAS REVIEWED IT SINCE IT WAS FILED, I THINK IT'S

23  FAIR GAME FOR ME TO ASK HIM ABOUT IT.

24             **THE COURT:**  LET'S DEAL WITH THE FIRST QUESTION FIRST,

25  WHETHER IT WAS WORK PRODUCT.

```
 1            MR. ZELLER:  THE FILE ITSELF IS NOT WORK PRODUCT.
 2   THE PROBLEM IS THE QUESTIONS HE'S ASKING OF THIS WITNESS.  JUST
 3   AS A STRAIGHT FOUNDATIONAL ISSUE, THIS IS NO DIFFERENT THAN
 4   SOMEONE SAYING --
 5            THE COURT:  RIGHT.  BUT YOU'RE NOT OBJECTING TO THE
 6   INTRODUCTION OF THE EXHIBIT AT THIS POINT.
 7            MR. ZELLER:  WE HAVE NO AUTHENTICITY OBJECTION.  WE
 8   HAVE OTHER OBJECTIONS.
 9            THE COURT:  WHICH ARE WHAT?
10            MR. ZELLER:  WELL, ONE THING IS THIS WITNESS CANNOT
11   LAY A FOUNDATION FOR IT.  AND THAT'S --
12            THE COURT:  BUT THIS IS SOMETHING -- THIS GOES BACK
13   -- AND I DIDN'T GIVE A LOT OF SEPARATE -- FROM MGA.
14            MR. ZELLER:  I UNDERSTAND THAT.  THAT'S NOT WHERE I'M
15   AT.  WE HAVE THE 403 PROBLEMS.
16            THE COURT:  SO THE DOCUMENT IS ADMISSIBLE.  THAT'S
17   THE ISSUE.  THE QUESTION IS THE QUESTION -- THIS WITNESS --
18   IT'S JUST LIKE PUTTING UP A CUSTODIAN OF RECORDS ON SOME OF THE
19   DOCUMENTS THAT YOU'VE HAD.  IF THE WITNESS DOESN'T KNOW
20   ANYTHING ABOUT THEM, THERE'S NOT GOING TO BE ANY QUESTIONS TO
21   THAT WITNESS.  THAT'S THE FOUNDATION I'M MISSING.
22            SIMPLY BECAUSE HE'S READ IT DOES NOT MEAN HE HAS AN
23   ABILITY TO ANSWER SUBSTANTIVE QUESTIONS ABOUT THE DOCUMENT.
24            I NEED TO KNOW:  WHAT QUESTIONS DO YOU WANT TO ASK
25   HIM ABOUT THIS DOCUMENT?
```

1          **MR. SLOAN:**  THERE ARE SPECIFIC STATEMENTS IN THE

2    DOCUMENT WHICH SAY THAT THERE WAS AN INVESTIGATION STARTED IN

3    MARCH OF 2002, AND THERE WERE STATEMENTS MADE TO THE GLOBAL

4    SECURITY DEPARTMENT IN MARCH 2002 AND THEREABOUTS RELATING

5    SPECIFICALLY TO CARTER BRYANT, TO MR. LARIAN, TO MGA, AND THEIR

6    ROLE IN BRATZ.

7          HE MAY SAY I'VE NEVER -- I DON'T KNOW ANYTHING ABOUT

8    THIS; I'VE NEVER LOOKED AT IT.  BUT I THINK I'M ENTITLED TO

9    INQUIRE IF THERE ARE --

10          **THE COURT:**  HE'S ALREADY SAID THAT HE DIDN'T LOOK AT

11   IT PRIOR TO THIS LITIGATION.

12          THOSE STATEMENTS ARE GOING TO COME IN, MR. ZELLER.

13          **MR. ZELLER:**  I HAVE NO OBJECTION TO THAT.  I THINK

14   WE'RE ON THE SAME PAGE.  YOUR CONCERN YOU JUST ARTICULATED IS

15   EXACTLY THE ONE I WAS EXPRESSING; BUT IT'S THAT HE CANNOT ASK

16   SUBSTANTIVE QUESTIONS OF THIS WITNESS.

17          **THE COURT:**  YOU CAN PUT THIS UP ON THE THING, IF YOU

18   WANT, TO SHOW THEM TO THE JURY, DO WHATEVER YOU WANT.  I'M

19   ADMITTING THE EVIDENCE.  YOU CAN SHOW IT.  BUT THERE'S NO BASIS

20   TO IMPEACH HIM OR QUESTION HIM UNLESS AND UNTIL YOU LAY A

21   FOUNDATION.

22          HAVING SIMPLY READ THE DOCUMENT AFTER IT BEING

23   INTRODUCED IS NOT SUFFICIENT.

24          **MR. ZELLER:**  MY CONCERN, TOO, IS THAT IT WILL BE

25   INVADING A PRIVILEGED WORK PRODUCT.

```
 1              THE COURT:  THAT'S WHAT I WAS LOOKING FOR, COUNSEL.
 2         YOU MEAN JUST PUTTING THE DOCUMENT UP?
 3              MR. ZELLER:  PUTTING IT UP.  BUT ASKING HIM TO
 4    INTERPRET --
 5              THE COURT:  I JUST SAID HE CAN'T DO THAT.
 6              MR. SLOAN:  MY INTENT WAS TO ASK HIM -- I UNDERSTAND
 7    THAT HE'S TESTIFIED HE DIDN'T LOOK AT IT BEFORE, BUT HE'S
 8    LOOKED AT IT SINCE THEN, AND HE'S TESTIFIED THAT TO HIS
 9    KNOWLEDGE NO ONE KNEW ABOUT THIS BEFOREHAND.
10              THE COURT:  THIS IS GOING TO BE ATTORNEY-CLIENT
11    PRIVILEGE.  YOU CAN USE THE DOCUMENT BUT NOT QUESTION HIM
12    FURTHER ON IT, UNLESS YOU CAN LAY FOUNDATION FOR IT PRIOR TO
13    HIS --
14              MR. SLOAN:  I WANT TO ASK YOU, THEN -- HE SAID THAT
15    HE LOOKED AT IT AFTER THE LITIGATION.  DID YOU LOOK AT THIS
16    PASSAGE?  DID YOU LOOK AT THIS PASSAGE?
17              THE COURT:  SO HE SAYS YES; WHAT'S YOUR QUESTION?
18              MR. SLOAN:  THEN I THINK -- HOW CAN HE HAVE SAID THAT
19    NO ONE KNEW ABOUT THIS BEFORE HIM, TO HIS KNOWLEDGE?
20              MR. ZELLER:  THIS IS A STATEMENT OF MR. MOORE'S
21    TESTIMONY.  THIS IS THE PROBLEM THAT HAS BEEN PERVADING THIS --
22    HE SAID "IN SOME RESPECTS."
23              THE COURT:  THERE IS THAT LANGUAGE.
24              MR. SLOAN:  HE CAN QUALIFY IT.
25              THE COURT:  HE ALREADY DID QUALIFY IT.
```

1          **MR. ZELLER:**  MR. SLOAN CONTINUES TO MISSTATE IT;

2    THAT'S THE PROBLEM.

3          **THE COURT:**  THEN THAT'S --

4          **MR. SLOAN:**  YOUR HONOR, I DON'T THINK THAT --

5          **THE COURT:**  I AGREE WITH MR. SLOAN.  YOU CAN ASK HIM

6    THAT QUESTION.  YOU'RE GOING TO HAVE REDIRECT EXAMINATION,

7    COUNSEL.

8          I'M NOT GOING TO ALLOW -- MR. SLOAN, YOU MAY WANT TO

9    HEAR THE REST OF THIS -- I'M NOT GOING TO PERMIT HIM TO GET

10   INTO AN ANALYSIS ON THIS.  AND THAT'S WHERE YOU'RE CORRECT

11   ABOUT WORK PRODUCT.  BUT SIMPLY THE STATEMENT ITSELF AND

12   COMPARING THAT STATEMENT AS TO SOMETHING HE READ, HAVING IT

13   EXPLAIN HIS EARLIER STATEMENT.  HE'S AN ATTORNEY, HE SHOULD BE

14   ABLE TO DO THIS.

15         **MR. ZELLER:**  THANK YOU.

16         (SIDE-BAR PROCEEDINGS CONCLUDED.)

17         **THE COURT:**  THE DOCUMENT IS ADMITTED.

18         YOU MAY PUBLISH.

19         (EXHIBIT 1195 IS RECEIVED.)

20   **BY MR. SLOAN:**

21   Q    SIR, YOU SAID THAT YOU DID REVIEW THIS DOCUMENT AFTER THE

22   LITIGATION WAS COMMENCED; IS THAT CORRECT?

23   A    YEAH.  I'VE SEEN THE DOCUMENT AFTER THE LITIGATION BEGAN,

24   YES.

25   Q    I'D LIKE TO HAVE YOU LOOK AT PAGE 66 OF THIS DOCUMENT, IF

```
 1    WE COULD PUBLISH THAT.

 2              BY THE WAY, HAVE YOU LOOKED AT THESE TYPES OF

 3    DOCUMENTS BEFORE, MEANING INVESTIGATIVE REPORTS PREPARED BY THE

 4    GLOBE SECURITY DEPARTMENT?

 5    A    NO.  I MEAN, I MAY HAVE SEEN EXCERPTS, BUT I HAVE NOT

 6    LOOKED AT THE FILES BEFORE.

 7    Q    I'M NOT TALKING ABOUT THIS PARTICULAR CASE.  I'M TALKING

 8    ABOUT IN OTHER CASES, HAVE YOU LOOKED AT -- ARE YOU FAMILIAR

 9    WITH THIS TYPE OF A DOCUMENT?

10    A    WELL, LIKE I SAID, I HAVE NEVER REVIEWED A FULL FILE

11    BEFORE.  I'VE PROBABLY SEEN EXCERPTS FROM FILES, BUT I DON'T

12    KEEP THESE FILES; THESE AREN'T IN MY CONTROL.

13    Q    LET ME DIRECT YOUR ATTENTION TO THE SECOND LINE, WERE IT

14    SAYS 3-20, AND IT SAYS "MET WITH IVY ROSS ON THIS CASE AND

15    DISCUSSED IP PROTECTION PROGRAM."

16              DO YOU SEE THAT?

17    A    I SEE WHAT YOU'VE HIGHLIGHTED, YES.

18    Q    WOULD YOU AGREE THAT APPEARS TO BE AN ENTRY PERTAINING TO

19    MARCH 20, 2002?

20    A    I SUPPOSE, YES.

21    Q    DO YOU KNOW WHO WROTE THAT?

22    A    I DON'T.

23    Q    WHEN YOU LOOKED AT THIS INVESTIGATIVE FILE AFTER THE

24    LITIGATION WAS FILED, DID YOU LOOK AT THIS PAGE?

25    A    I DON'T REMEMBER THIS PAGE.
```

| | |
|---|---|
| 1 | Q    BUT YOU LOOKED AT SOME PORTION OF THIS REPORT. |
| 2 | A    I DID. |
| 3 | Q    LET ME DIRECT YOUR ATTENTION TO THE NEXT LINE, MARCH 28, |
| 4 | WHICH SAYS "MET WITH CASSIDY PARK TO GET MORE INFO ON THE MGA |
| 5 | ISSUE.  SHE SUGGESTED CARTER BRYANT AS ILLUSTRATOR/FORMER |
| 6 | EMPLOYEE WHO MAY HAVE PLAGIARIZED DESIGN OF LILY MARTINEZ AND |
| 7 | CREATED BRATZ DOLLS FOR MGA." |
| 8 |           DO YOU SEE THAT? |
| 9 | A    YES. |
| 10 | Q    DOES THAT APPEAR TO BE AN ENTRY THAT WAS MADE ON MARCH 28, |
| 11 | 2002? |
| 12 | A    IT SAYS MARCH 28; I'M ASSUMING 2002. |
| 13 | Q    AND DID YOU REVIEW THAT AFTER THIS LITIGATION WAS FILED? |
| 14 | A    AGAIN, I REALLY DON'T REMEMBER THIS PARTICULAR PAGE. |
| 15 | Q    SO YOU'RE NOT SAYING YOU DIDN'T REVIEW IT; YOU'RE JUST |
| 16 | SAYING YOU DO NOT RECALL REVIEWING IT; IS THAT CORRECT? |
| 17 | A    THERE ARE SO MANY DOCUMENTS IN THIS CASE.  I DON'T RECALL |
| 18 | REVIEWING THIS PARTICULAR ONE.  IT DOESN'T -- I DON'T REMEMBER. |
| 19 | Q    AND IT SAYS "AT 1500, CHECKED WITH HR FOR BRYANT'S FILE |
| 20 | TERM DATE, 10-20-2000; FILE IS AT OFF-SITE STORAGE; REQUESTED |
| 21 | IT TO BE RETRIEVED." |
| 22 |           DO YOU SEE THAT? |
| 23 | A    YES. |
| 24 | Q    DO YOU THINK IT'S FAIR INTERPRETATION THAT THAT'S AN ENTRY |
| 25 | THAT WAS MADE AT 1500 HOURS, OR 3:00 P.M., ON MARCH 28, 2002? |

```
 1              MR. ZELLER:  OBJECTION AS TO INTERPRETATION.

 2              THE COURT:  REPHRASE, COUNSEL.

 3    BY MR. SLOAN:

 4    Q    WHAT DO YOU THINK THAT 1500 MEANS THERE?

 5    A    I DON'T KEEP THESE FILES.  I MEAN, I COULD SPECULATE THAT

 6    IT MEANS 3:00, BUT THAT'S SPECULATION.  I DON'T KNOW.

 7    Q    SIR, ARE YOU AWARE OF WHO CASSIDY PARK IS?

 8    A    YES.

 9    Q    DO YOU HAVE ANY REASON TO DOUBT THE ACCURACY OF THE

10    INFORMATION REFLECTED IN THIS MATTEL INVESTIGATIVE REPORT?

11              MR. ZELLER:  LACKS FOUNDATION.

12              THE COURT:  SUSTAINED.

13              MR. ZELLER:  PRIVILEGED ISSUE.

14              THE COURT:  SUSTAINED.

15    BY MR. SLOAN:

16    Q    SIR, IF YOU HAD SEEN THIS, WOULD YOU STILL HAVE TESTIFIED

17    THAT, TO THE BEST OF YOUR KNOWLEDGE, NO ONE BEFORE YOU HAD BEEN

18    INVOLVED IN INVESTIGATING WHETHER CARTER BRYANT WAS INVOLVED IN

19    CREATING BRATZ IN SOME RESPECTS?

20    A    YOU KNOW, I BELIEVE I WOULD, BECAUSE I THOUGHT -- I WAS

21    TRYING TO UNDERSTAND YOUR QUESTION, AND I ANSWERED ACCORDINGLY.

22    Q    WHAT DIDN'T YOU UNDERSTAND ABOUT MY QUESTION?

23    A    IT SOUNDED LIKE YOUR QUESTION WAS BLURRING THE DISTINCTION

24    BETWEEN WHETHER WE WERE LOOKING AT "WHEN" CARTER BRYANT CREATED

25    BRATZ VERSUS "IF" HE DID.  AND I DON'T THINK, AND TO MY
```

```
 1   KNOWLEDGE, THAT ANYONE ELSE LOOKED AT "WHEN" CARTER BRYANT WAS

 2   CREATING BRATZ REALLY UNTIL THE SUMMER, MAYBE NOVEMBER OF 2003,

 3   YOU KNOW.

 4   Q    BUT THIS ENTRY WOULD SUGGEST THAT AS OF MARCH 2002, THERE

 5   WERE PEOPLE AT MATTEL WHO WERE INVESTIGATING WHETHER CARTER

 6   BRYANT WAS INVOLVED IN THE CREATION OF BRATZ; CORRECT?

 7              MR. ZELLER:  FOUNDATION; VAGUE.

 8              THE COURT:  SUSTAINED.

 9              THE DOCUMENT LARGELY SPEAKS FOR ITSELF; THIS WITNESS

10   DOES NOT HAVE FOUNDATION TO EXPAND ON IT.

11   BY MR. SLOAN:

12   Q    SIR, WHEN YOU SAID YOU THOUGHT YOU WERE THE FIRST PERSON,

13   YOU WERE JUST TESTIFYING THAT YOU WERE THE FIRST PERSON, TO

14   YOUR KNOWLEDGE, WHO INVESTIGATED WHEN CARTER BRYANT HAD CREATED

15   BRATZ; CORRECT?

16   A    YEAH.  THERE ARE A LOT OF PEOPLE WHO HAVE WORKED ON THIS

17   CASE.  I THINK THAT I WAS AMONG THE FIRST TO LOOK AT WHEN

18   CARTER BRYANT CREATED BRATZ.

19   Q    BUT THERE WERE OTHER PEOPLE WHO WERE INVOLVED IN

20   INVESTIGATING WHETHER CARTER BRYANT WAS INVOLVED IN THE

21   CREATION OF BRATZ BEFORE YOU GOT INVOLVED IN THE INVESTIGATION;

22   IS THAT A FAIR STATEMENT, SIR?

23              MR. ZELLER:  OBJECTION.  LACKS FOUNDATION AS TO

24   "INVOLVED WITH THE INVESTIGATION"; ALSO VAGUE.

25              THE COURT:  TO THE EXTENT THAT YOU ARE AWARE OF.
```

```
 1              THE WITNESS:  I BELIEVE SOME PEOPLE WERE WONDERING
 2    WHETHER HE DID.  I DON'T KNOW TO THE EXTENT OF WHAT THEY DID.
 3    BY MR. SLOAN:
 4    Q    AS A MATTER OF FACT, I BELIEVE THAT YESTERDAY, YOU HAD
 5    SAID AT SOME POINT THAT THERE WERE SOME RUMORS; IS THAT
 6    CORRECT?
 7    A    I MENTIONED RUMORS YESTERDAY, YES.
 8    Q    AND THOSE WERE RUMORS ABOUT CARTER BRYANT'S INVOLVEMENT IN
 9    BRATZ; CORRECT?
10    A    THAT'S RIGHT.
11    Q    AND WHAT WERE THOSE RUMORS?
12              MR. ZELLER:  QUESTION IS VAGUE AS TO TIME.
13              THE COURT:  AS TO TIME, COUNSEL.
14    BY MR. SLOAN:
15    Q    YOU MENTIONED THERE WERE RUMORS FLOATING AROUND MATTEL
16    THAT CARTER BRYANT WAS INVOLVED IN THE CREATION OF BRATZ; IS
17    THAT CORRECT?  IS THAT WHAT YOU TESTIFIED TO YESTERDAY?
18    A    THAT'S RIGHT, YES.
19    Q    OKAY.
20              AND WHEN DID YOU FIRST HEAR THOSE RUMORS?
21    A    I WAS WORKING ON A CASE INVOLVING ANOTHER TOY COMPANY
22    CALLED SIMBA, AND I HEARD THEM ABOUT THE TIME THE WALL STREET
23    JOURNAL ARTICLE CAME OUT.
24    Q    SO THAT WOULD HAVE BEEN JULY 2003.
25    A    YES.
```

```
 1   Q    AND DID YOU, THEN, SINCE YOU WERE TRYING TO DETERMINE WHEN
 2   CARTER BRYANT HAD CREATED BRATZ, DID YOU THEN GO AND TALK TO
 3   THOSE PEOPLE TO INVESTIGATE THESE RUMORS?
 4   A    I ASKED ABOUT THE RUMORS; I TALKED TO PEOPLE ABOUT THEM.
 5   Q    OKAY.  WHO DID YOU TALK TO?
 6   A    VARIOUS DESIGNERS IN OUR DESIGN CENTER.  I BELIEVE I
 7   PROBABLY SPOKE WITH IVY ROSS.
 8   Q    LET'S STOP THERE.
 9        YOU SPOKE TO IVY ROSS.
10        WHEN DID SHE TELL YOU SHE FIRST SUSPECTED THAT
11   MR. BRYANT WAS INVOLVED IN THE CREATION OF BRATZ?
12        MR. ZELLER:  ASSUMES FACTS; PRIVILEGED.
13        THE COURT:  AS PHRASED.
14        REPHRASE.
15   BY MR. SLOAN:
16   Q    YOU SAID YOU SPOKE TO IVY ROSS; CORRECT?
17   A    YEAH, I DID.
18   Q    DID YOU ASK HER WHETHER SHE SUSPECTED THAT MR. BRYANT WAS
19   INVOLVED IN THE CREATION OF BRATZ?
20        MR. ZELLER:  QUESTION INVADES PRIVILEGE; VAGUE;
21   FOUNDATION; ASSUMES FACTS.
22        THE COURT:  IT SEEMS TO GET INTO THE PRIVILEGE,
23   COUNSEL.  YOU'RE ASKING ABOUT CONVERSATIONS BETWEEN IN-HOUSE
24   COUNSEL AND MS. ROSS.  SUSTAINED.
25   BY MR. SLOAN:
```

```
 1   Q    LETS LOOK AT ANOTHER DOCUMENT.

 2            CAN YOU LOOK AT EXHIBIT 1703 WHICH IS ALSO IN YOUR

 3   BINDER, SIR?  DO YOU HAVE THAT IN YOUR BINDER?

 4   A    I DO.

 5   Q    YOU SAID THAT YOU'RE A TRADEMARK AND COPYRIGHT COUNSEL;

 6   CORRECT?

 7   A    YES.

 8   Q    ARE YOU AWARE THAT MATTEL SOMETIMES FILES COPYRIGHTS IN

 9   FOREIGN JURISDICTIONS?

10   A    ACTUALLY, NO.

11   Q    THEY DON'T?

12   A    I'M TRYING TO REMEMBER IF I HAVE EVER SEEN ONE.  I DON'T

13   THINK I'VE EVER SEEN ONE.

14   Q    LET ME HAVE YOU LOOK AT EXHIBIT 1703.

15            DO YOU RECOGNIZE THAT DOCUMENT?

16   A    I DO.

17   Q    IS THIS A DOCUMENT THAT WAS PRODUCED BY MATTEL?

18   A    I BELIEVE IT WAS.

19   Q    AND IS IT A COPY OF A COPYRIGHT REGISTRATION?

20            MR. ZELLER:  YOUR HONOR, I OBJECT TO THE

21   SUMMARIZATION OF THESE CONTENTS WITHOUT FOUNDATION.

22            THE COURT:  SUSTAINED.

23   BY MR. SLOAN:

24   Q    WHAT DO YOU RECOGNIZE THIS DOCUMENT AS, EXHIBIT 1703?

25   A    WELL, IT'S A DOCUMENT THAT I SAW THAT PURPORTS TO BE A
```

1    COPYRIGHT REGISTRATION FROM BRAZIL.

2    Q    AND WHO WERE THOSE COPYRIGHT REGISTRATIONS FILED BY.

3           **MR. ZELLER:**  STILL NO FOUNDATION.

4    **BY MR. SLOAN:**

5    Q    DO YOU KNOW WHO THESE WERE FILED BY?

6           **THE COURT:**  COUNSEL, THERE'S AN OBJECTION PENDING

7    BEFORE THE COURT.

8           **MR. SLOAN:**  I'M SORRY, YOUR HONOR.  I WAS TRYING TO

9    REPHRASE.

10          **THE COURT:**  VERY WELL.  IF YOU'RE WITHDRAWING, YOU

11   MAY PROCEED.

12   **BY MR. SLOAN:**

13   Q    DO YOU KNOW WHO THIS COPYRIGHT REGISTRATION WAS FILED BY,

14   SIR?

15   A    DO I KNOW?

16          I MEAN, IT APPEARS TO SAY THAT ABC INTERNATIONAL

17   TRADERS FILED IT.  IT'S THE REGISTER.  I DON'T KNOW.

18          I HAVE NEVER SEEN A BRAZILIAN COPYRIGHT REGISTRATION

19   BEFORE THIS, IF THIS IS ONE, AND SO...

20   Q    BUT THIS IS A DOCUMENT THAT WAS PRODUCED BY MATTEL IN THE

21   COURSE OF THIS LITIGATION; CORRECT?

22   A    CORRECT.

23   Q    AND YOU'RE SAYING THAT IT INDICATES "ABC INTERNATIONAL

24   TRADERS."  DOES IT INDICATE ANOTHER NAME FOR ABC INTERNATIONAL

25   TRADERS?

1          **MR. ZELLER:**  YOUR HONOR, LACKS FOUNDATION.  NOW HE'S

2    ASKING HIM TO READ THE DOCUMENT.

3          **THE COURT:**  YOU NEED FURTHER FOUNDATION.  SUSTAINED.

4    BY **MR. SLOAN:**

5    Q    DO YOU BELIEVE THIS TO BE AN AUTHENTIC COPY OF A COPYRIGHT

6    REGISTRATION FILED IN BRAZIL?

7          **MR. ZELLER:**  FOUNDATION; RELEVANCE.

8          **THE COURT:**  COUNSEL, I'VE SUSTAINED THE FOUNDATIONAL

9    OBJECTION.  THAT'S NOT A FOUNDATIONAL QUESTION.

10   BY **MR. SLOAN:**

11   Q    SIR, ARE YOU FAMILIAR WITH MATTEL'S DOCUMENT RETENTION

12   POLICY?

13   A    I'M NOT THE KEEPER OF THE POLICY, BUT I KNOW ABOUT IT,

14   YES.

15   Q    YOU'VE PROVIDED DECLARATIONS IN THIS CASE ABOUT IT,

16   HAVEN'T YOU, SIR?

17   A    I MAY HAVE.  CAN YOU REFRESH MY RECOLLECTION.

18   Q    YES.  COULD I DIRECT YOUR ATTENTION BACK TO EXHIBIT 18064;

19   THAT'S THE DECLARATION WE'VE LOOKED AT BEFORE.

20   A    OKAY.

21   Q    AND I'LL DIRECT YOUR ATTENTION TO PAGE 3 OF THAT DOCUMENT

22   AT PARAGRAPH SIX, STARTING AT LINE SIX.  YOU SAID THERE THAT

23   BECAUSE MATTEL HAS AN E-MAIL RETENTION POLICY --

24          **MR. ZELLER:**  OBJECTION.

25          I APOLOGIZE FOR INTERRUPTING, BUT THIS IS IRRELEVANT.

```
 1              THE COURT:  COUNSEL, WHERE DOES THIS GO TO, WHAT
 2    LEGAL ISSUE?
 3              MR. SLOAN:  YOUR HONOR, THIS GOES TO THE ISSUE OF
 4    WHETHER THERE WAS EVIDENCE THAT --
 5              THE COURT:  NO, NO.  WHAT LEGAL ISSUE DOES THIS GO
 6    TO?  WHAT IS THIS GOING TO?  I DON'T WANT TO HAVE TO TAKE YOU
 7    TO SIDE-BAR.  CAN YOU DESCRIBE, WHAT DOES THIS GO TO?
 8              MR. SLOAN:  IT GOES TO FRAUDULENT CONCEALMENT, YOUR
 9    HONOR.
10              THE COURT:  THAT'S TOO BROAD.
11              LET'S HAVE A SIDE-BAR.
12              (SIDE-BAR PROCEEDINGS AS FOLLOWS:)
13              THE COURT:  PAGE 3, PARAGRAPH SIX.  WHAT DOES
14    DOCUMENT RETENTION GO TO?
15              MR. SLOAN:  IT GOES TO WHETHER THERE MIGHT BE -- THE
16    ISSUE IS FRAUDULENT CONCEALMENT, AND ONE OF THE ISSUES IS
17    WHETHER THERE IS ANY EVIDENCE OF IT.  THE FACT THEY HAVE HAD A
18    DOCUMENT RETENTION POLICY WHICH LEAD TO THE DESTRUCTION OF
19    E-MAILS AND THE E-MAIL SERVER MAY ACCOUNT FOR THE REASON THERE
20    MAY NOT BE CERTAIN EVIDENCE PERTAINING TO FRAUDULENT
21    CONCEALMENT.
22              THE COURT:  SO WE'VE MOVED BEYOND THE BRAZILIAN
23    COPYRIGHT THING?
24              MR. SLOAN:  YES, YOUR HONOR.
25              THE COURT:  SO THIS IS A SEPARATE AREA.
```

```
 1              IS THERE ANYTHING ELSE, ANOTHER AREA YOU CAN GO TO IN
 2    THE NEXT FIVE MINUTES?
 3              MR. SLOAN:  YES.
 4              THE COURT:  LET'S DO THAT; LET'S TAKE THIS UP DURING
 5    LUNCH.
 6              (SIDE-BAR PROCEEDINGS CONCLUDED.)
 7              THE COURT:  WE'LL COME BACK TO THAT.
 8    BY MR. SLOAN:
 9    Q    MR. MOORE, YOU STARTED YOUR TESTIMONY YESTERDAY BY SAYING
10    THAT YOU HAD NOT RECEIVED A COPY OF THE CONTRACT BETWEEN
11    MR. BRYANT AND MGA THAT'S DATED AS OF SEPTEMBER 18, 2000, UNTIL
12    YOU TRAVELED WITH MR. ZELLER TO HONG KONG IN NOVEMBER OF 2003;
13    IS THAT CORRECT?
14    A    THAT'S RIGHT.
15    Q    AND YOU TRAVELED THERE TO MEET WITH COUNSEL FOR CITY
16    WORLD; CORRECT?
17    A    THAT WAS ONE OF THE REASONS TO GO TO HONG KONG, YES.
18    Q    BEFORE YOU TRAVELED TO HONG KONG TO MEET WITH THE CITY
19    WORLD COUNSEL, YOU AND OTHER PEOPLE AT MATTEL HAD VARIOUS
20    COMMUNICATIONS WITH THE CITY WORLD COUNSEL; CORRECT?
21    A    YES.
22    Q    IN FACT, YOU HAD EXCHANGED NUMEROUS LETTERS; IS THAT
23    CORRECT?
24    A    I THINK THERE WERE A COUPLE OF LETTERS EXCHANGED.
25    "NUMEROUS" PROBABLY DOESN'T DESCRIBE IT; BUT ONE OR TWO.
```

```
 1   Q    LET ME HAVE YOU LOOK AT EXHIBIT 4434, WHICH IS ALSO IN

 2   YOUR BINDER.

 3   A    OKAY.

 4   Q    DO YOU RECOGNIZE THAT DOCUMENT?

 5   A    YES.

 6   Q    IS THAT A DOCUMENT THAT YOU PREPARED?

 7   A    I HELPED PREPARE THIS, YES.

 8   Q    IS ALL OF THE INFORMATION REFLECTED ON THIS ACCURATE, TO

 9   THE BEST OF YOUR BELIEF?

10   A    YES.

11   Q    AND YOU PREPARED THIS IN CONNECTION WITH A DEPOSITION OF

12   ANOTHER MATTEL EMPLOYEE.

13   A    THAT'S RIGHT.

14          MR. SLOAN:  YOUR HONOR, I'D MOVE INTO EVIDENCE

15   EXHIBIT 4434.

16          MR. ZELLER:  NO OBJECTION.

17          THE COURT:  IT'S ADMITTED.  YOU MAY PUBLISH.

18          (EXHIBIT 4434 RECEIVED.)

19   BY MR. SLOAN:

20   Q    SIR, THIS INDICATES, IF WE LOOK AT THE SECOND LINE --

21   WELL, LET'S LOOK AT THE FIRST LINE.  IT INDICATES AS OF

22   SEPTEMBER 4, 2003, DANNY YU, COUNSEL FOR CITY WORLD, HAD

23   WRITTEN TO MR. BOB NORMILE.  DID YOU SEE THAT LETTER?

24   A    I DID.

25   Q    AND IT INDICATES AS OF SEPTEMBER 23, 2003, THAT MATTEL HAD
```

```
 1   OBTAINED A COPY OF THE MGA CITY WORLD CLAIM; CORRECT?

 2   A    THAT'S WHAT IT SAYS, CORRECT.

 3   Q    THAT'S CORRECT, ISN'T IT?

 4   A    WELL, IT IS; I MEAN, WHAT WE DID RECEIVE WAS CALLED, I

 5   THINK, AN ENDORSEMENT OF A CLAIM, OR SOMETHING LIKE THAT.

 6   Q    OKAY.

 7        AND THIS INDICATES THAT ON SEPTEMBER 25TH THAT

 8   MR. NORMILE SPOKE WITH MR. YU; IS THAT CORRECT?

 9   A    YES.

10   Q    AND I'M NOT GOING TO GO THROUGH ALL OF THESE ENTRIES, BUT

11   IF YOU LOOK AT NOVEMBER 18TH, FOR INSTANCE, THIS INDICATES THAT

12   YOU CALLED SIMON CW YUNG FIRM; CORRECT?

13   A    YES.

14   Q    DID YOU MAKE THAT PHONE CALL?

15   A    YES.

16   Q    THEN ON NOVEMBER 20TH, IT SAYS THAT "MOORE MAKES TWO BRIEF

17   CALLS TO DANNY YU; ONE TO HIS OFFICE, ONE TO HIS CELL PHONE."

18        DO YOU SEE THAT?

19   A    YES.

20   Q    SO YOU HAD A NUMBER OF PHONE CALLS WITH CITY WORLD'S

21   COUNSEL; CORRECT?

22   A    YES; TO ARRANGE THE MEETING IN HONG KONG.

23   Q    AND MR. NORMILE ALSO HAD CONTACT WITH THEM.

24   A    YES; THAT'S RIGHT.

25   Q    AND DURING SOME OF THOSE CONVERSATIONS, DID CITY WORLD'S
```

1    COUNSEL TELL YOU THAT, IN FACT, THEY HAD A COPY OF A CONTRACT

2    BETWEEN MR. BRYANT AND MGA?

3    A    I BELIEVE IN THE CONVERSATIONS, NO.  I THINK THEY WERE

4    REALLY HESITANT TO DISCUSS MUCH WITH US.  THEY WERE EXPLAINING

5    IN HONG KONG THERE'S SOME IMPLIED UNDERTAKING THAT THEY CAN'T

6    REVEAL THINGS; AND SO THEY WERE BEING VERY CAUTIOUS.

7    Q    BUT YOU STARTED OFF YESTERDAY TESTIFYING THAT ONE OF THE

8    MOST IMPORTANT POINTS ABOUT YOUR TRIP WITH MR. ZELLER TO HONG

9    KONG WAS THE FACT THAT YOU GOT THIS CONTRACT DATED AS OF

10   SEPTEMBER 18, 2002, BETWEEN MR. BRYANT AND MGA; CORRECT?

11   A    RIGHT.

12   Q    AND IT'S NOW YOUR TESTIMONY THAT YOU TRAVELED ALL OF THE

13   WAY TO HONG KONG AND -- I'M SORRY, THAT YOU TRAVELED ALL OF THE

14   WAY TO HONG KONG WITH MR. ZELLER TO MEET WITH CITY WORLD'S

15   COUNSEL, AND THEY NEVER LET ON TO YOU AT ALL THAT THEY HAD A

16   COPY OF THIS CONTRACT?

17        **MR. ZELLER:**  ARGUMENTATIVE; MISSTATES THE WITNESS'S

18   TESTIMONY.

19        **THE COURT:**  IT'S A QUESTION.  YOU MAY ANSWER IT.

20        **THE WITNESS:**  YEAH.  I WAS ANSWERING AS TO THE

21   TELEPHONE CONVERSATION.  THE THOSE WERE REALLY JUST TO ARRANGE

22   THE MEETING, I BELIEVE, WITH ME.  THERE MAY BE A DOCUMENT WHICH

23   MENTIONS SOME RELATIONSHIP WITH MGA; I CAN'T RECALL UNLESS I

24   SEE IT.  I KNEW THERE WERE SOME DOCUMENTS THEY WANTED TO

25   EXCHANGE AND I THINK I KNEW THERE WAS SOMETHING SIGNIFICANT.

```
 1   BUT I DIDN'T TRAVEL TO HONG KONG JUST FOR THAT PURPOSE.
 2   BY MR. SLOAN:
 3   Q    DID YOU KNOW THAT ONE OF THOSE DOCUMENTS MIGHT BE THIS
 4   CONTRACT BETWEEN MR. BRYANT AND MGA?
 5   A    YOU KNOW, I CAN'T REMEMBER IF I KNEW THAT.  I THINK WHAT I
 6   WAS INTERESTED IN WAS THE DRAWINGS; THAT WAS THE FOCUS.
 7            MR. SLOAN:  YOUR HONOR, I THINK THIS IS A FINE TIME
 8   TO BREAK.
 9            THE COURT:  VERY WELL.  LET'S DO THAT.
10            AS I INDICATED, MEMBERS OF THE JURY, I'LL SEE YOU AT
11   1:00.  I APOLOGIZE FOR THE SHORT LUNCH.  IT WILL BE A SHORT
12   DAY.
13            (WHEREUPON JURORS DEPART COURTROOM.)
14            THE COURT:  MR. SLOAN, I'LL TAKE UP THE ISSUE OF
15   PARAGRAPH SIX ON THE 18064 EXHIBIT.
16            MR. SLOAN:  YES, YOUR HONOR.
17            THE COURT:  I THOUGHT WE WERE STILL ON THAT BRAZIL
18   THING.
19            MR. SLOAN:  YOUR HONOR, I MEANT TO MOVE OFF OF
20   BRAZIL, AND I APOLOGIZE THAT I DIDN'T MAKE THAT CLEAR.
21            THE PURPOSE OF INTRODUCING THIS IS THAT, SINCE THIS
22   WITNESS WAS INTRODUCED SOLELY WITH RESPECT TO FRAUDULENT
23   CONCEALMENT, IN MY MIND, AND I THINK THAT IT IS PERTINENT TO
24   THAT ISSUE WHERE THERE MIGHT HAVE BEEN E-MAILS THAT WOULD HAVE
25   REFLECTED THAT MATTEL WAS ON NOTICE, AS EARLY AS 2002 OR SOME
```

```
 1   TIME EARLIER, THAT MR. BRYANT HAD, IN FACT, BEEN INVOLVED WITH
 2   MGA WHILE HE WAS STILL AT MATTEL, AND THOSE DOCUMENTS COULD
 3   HAVE BEEN DESTROYED AS A RESULT OF MATTEL'S DOCUMENT RETENTION
 4   POLICY, WHERE THEY ROUTINELY ESSENTIALLY DESTROYED E-MAILS
 5   EVERY 120 DAYS.
 6           THE COURT:  HOW IS THIS ANYTHING DIFFERENT THAN UTTER
 7   SPECULATION?
 8           MR. SLOAN:  YOUR HONOR, I THINK THAT IF THEY ARE
 9   GOING TO ARGUE THAT THERE'S AN ABSENCE OF EVIDENCE THAT ANYONE
10   AT MATTEL WAS ON NOTICE OF THIS, I THINK THAT WE SHOULD BE
11   ALLOWED TO ARGUE THAT IT'S POSSIBLE THAT POSSIBLE EVIDENCE WAS
12   DESTROYED.  AND I'M NOT CASTING ASPERSIONS ON MATTEL.  I
13   UNDERSTAND IT WAS AS A RESULT OF A REGULAR DOCUMENT RETENTION
14   POLICY.  BUT IT COULD EXPLAIN WHY SOME OF THOSE DOCUMENTS ARE
15   NO LONGER IN EXISTENCE.
16           THE COURT:  MR. ZELLER?
17           MR. ZELLER:  NUMBER ONE, OBVIOUSLY THIS DECLARATION
18   AND THE SUBSTANCE OF WHAT IT IS THAT MR. SLOAN WISHES TO GET
19   INTO AND DELVE INTO IS IN THE CONTEXT OF THE TERMINATING
20   SANCTIONS MOTION THAT THE COURT REJECTED.  THERE WAS NO FINDING
21   OF MISCONDUCT.  QUITE THE CONTRARY.  THE COURT WAS VERY CLEAR
22   THERE WAS NO MISCONDUCT.
23           THE COURT IS FULLY COGNIZANT OF THE FACT THAT MGA WAS
24   THE ONE THAT SET THIS EXTREMELY HIGH STANDARD FOR, REALLY,
25   INTRODUCTION OF ANY EVIDENCE RELATING TO THE DESTRUCTION OF
```

```
 1   EVIDENCE.  WE WENT ROUND AND ROUND OVER EVIDENCE ELIMINATOR AND

 2   THE STANDARDS THERE.  JUST TO THEN KIND OF TREAT IT LIKE YOU

 3   CAN JUST BACK DOOR IT IN THIS WAY, BECAUSE MR. MOORE PUT IN A

 4   DECLARATION IN RESPONSE TO A MOTION THAT THE COURT REJECTED?  I

 5   JUST DON'T THINK IT'S PROPER.

 6           ALSO, MR. MOORE IS NOT, OF COURSE, THE CUSTODIAN OF

 7   THE E-MAILS.  HE IS NOT A PERSON WHO COULD POSSIBLY TESTIFY AS

 8   TO SUPPOSEDLY THERE BEING E-MAILS ON THE SYSTEM THAT THEY WANT

 9   TO SPECULATE WERE DESTROYED.  IT'S REALLY RANK SPECULATION THAT

10   SHOULD NOT BE PERMITTED IN FRONT OF THE JURY, EVEN APART FROM

11   THE FACT THAT IT DOESN'T EVEN REMOTELY MEETS THE LEGAL

12   STANDARDS MGA ITSELF ADVOCATED IN THIS CASE.

13           THE COURT:  MR. SLOAN, ANYTHING FURTHER?

14           MR. SLOAN:  YOUR HONOR, FIRST OF ALL, I'LL BE CLEAR

15   ON THIS, THIS IS INVOLVING TERMINATING SANCTIONS.  I JUST SAID

16   I'M NOT CLAIMING ANY MISCONDUCT ON MATTEL'S PART.  I'M JUST

17   SAYING THAT IT'S A POTENTIAL REASON THAT POTENTIALLY IS ABSENT.

18   IT'S SIMILAR TO THE ISSUE WITH RESPECT TO THE PHONE RECORDS.

19   MY RECOLLECTION IS THE OCTOBER 2000 RECORDS WHICH HAVE WE DON'T

20   HAVE WHICH COULD BE PERTINENT TO SHOW THAT -- AND WE COULD

21   ARGUE THAT MATTEL SHOULD HAVE BEEN ON NOTICE BECAUSE THEY HAVE

22   THESE RECORDS OF CARTER BRYANT.

23           THE COURT:  I GUESS THE DIFFERENCE IS I ALLOWED IN

24   THAT EVIDENCE; I ALLOWED IN THE STIPULATION, THE PARTIES

25   STIPULATED THAT THERE WAS THIS REFERENCE TO A CERTAIN PERIOD OF
```

1 TIME; THERE WERE NO RECORDS FOR OTHER PERIODS OF TIME, AND YOU

2 COULD MAKE WHATEVER ARGUMENT YOU WANTED.

3        THIS SEEMS HIGHLY SPECULATIVE.

4        THERE'S NO QUESTION THIS IS A LEGITIMATE RETENTION

5 POLICY. THERE IS NO EVIDENCE THAT SOMEBODY ATTEMPTED TO

6 COMMUNICATE SOMETHING BY E-MAIL OR ANY OTHER MANNER. THERE IS

7 JUST NO EVIDENCE THAT MAYBE THERE WAS EVIDENCE. IT JUST SEEMS

8 A LITTLE TOO SPECULATIVE, COUNSEL.

9        I'LL SUSTAIN THE OBJECTION.

10        HOW MUCH FURTHER DO YOU HAVE WITH THIS WITNESS?

11        **MR. SLOAN:** YOUR HONOR, I DON'T THINK I HAVE A LOT.

12        **THE COURT:** VERY WELL.

13        AFTER THIS WITNESS, WHO'S MATTEL CALLING?

14        **MR. ZELLER:** VIDEOTAPES; AND SOME STIPULATIONS OR TWO

15 TO BE READ.

16        **THE COURT:** SO YOU'RE WAITING ON ME FOR THE BRODY AND

17 THE CARTER BRYANT RULINGS.

18        **MR. ZELLER:** YES, YOUR HONOR.

19        **THE COURT:** LET'S RESUME AT 12:30.

20        (MORNING PROCEEDINGS CONCLUDE. )

21

22

23

24 / / /

25 / / /

1

2                                    CERTIFICATE

3

4    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
5    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
6    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

7

8    _____        _____
     THERESA A. LANZA, CSR, RPR                        DATE
9    FEDERAL OFFICIAL COURT REPORTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FRIDAY, AUGUST 8, 2008                    TRIAL DAY 32, MORNING SESSION