THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, <br><br> Plaintiff, <br><br> v. <br><br> MATTEL, INC., a Delaware corporation, <br><br> Defendant. <br><br> AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx) <br><br> Consolidated with Case No. 04-9059 and Case No. 05-2727 <br><br> Honorable Stephen G. Larson <br><br> MGA PARTIES' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR REMITTITUR <br><br> Hearing Date: February 11, 2009 <br> Time: 10:00 AM |

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT ................................................................................................................ 2

    I.    THE MGA PARTIES HAVE NOT WAIVED REMITTITUR ......................... 2

    II.    THE MGA PARTIES HAVE SHOWN THAT REMITTITUR IS PROPER ................................................................................................................ 5

    III.    THE AWARDS FOR MATTEL'S STATE LAW AND COPYRIGHT INFRINGEMENT CLAIMS ARE DUPLICATIVE .......................................... 7

        A.    Mattel's State Law Claims Seek Recovery For The Same Wrong ........... 7

        B.    Mattel Sought The Same Damages For All Of Its Claims ....................... 7

        C.    Mattel's Copyright Damages Are Not Saved By Preemption .................. 9

    IV.    THE JURY'S AWARDS IN THE CLAIMS AGAINST ISAAC LARIAN AND MGA ARE DUPLICATIVE ...................................................... 9

    V.    THE COPYRIGHT AWARD AGAINST MGA HK IS DUPLICATIVE ....... 10

    VI.    DAMAGES AGAINST LARIAN FOR INTENTIONAL INTERFERENCE ARE BARRED BY THE STATUTE OF LIMITATIONS ...................................................................................................... 11

    VII.    MATTEL IS NOT ENTITLED TO BOTH POSSESION OF THE DRAWINGS AND DAMAGES EQUAL TO THE VALUE OF THOSE DRAWINGS ................................................................................................... 12

CONCLUSION .......................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

Bains LLC v. Arco Products Co.,
    405 F.3d 764 (9th Cir. 2005) ................................................................. 6

Bowers v. Baystate Techs., Inc.,
    320 F.3d 1317 (Fed. Cir. 2003) ..................................................... 6, 8, 9

Carter v. District of Columbia,
    795 F.2d 116 (D.C. Cir. 1986) .............................................................. 5-6

Caudle v. Bristow Optical Co., Inc.,
    224 F.3d 1014 (9th Cir. 2000) ............................................................. 6, 8

Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petrol. Corp.,
    79 F.3d 182 (1st Cir. 1996) .................................................................... 4

Duk v. MGM Grand Hotel, Inc.,
    320 F.3d 1052 (9th Cir. 2003) ............................................................... 5

Gentile v. County of Suffolk,
    926 F.2d 142 (2d Cir. 1991) ............................................................. 4, 5

Indu Craft, Inc. v. Bank of Baroda,
    47 F.3d 490 (2d Cir. 1995) ............................................................... 4, 5

Lieberman v. Dudley,
    Case No. No. CIV. 395CV2437(AHN),
    1998 WL 740827 (D. Conn. July 27, 1998) ......................................... 5

Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.,
    532 F.3d 1063 (10th Cir. 2008) ............................................................. 5

Nintendo of America, Inc. v. Dragon Pac. International,
    40 F.3d 1007 (9th Cir. 1994) ................................................................. 8

Sanchez v. South Hoover Hospital,
    18 Cal. 3d 93 (1976) ............................................................................ 11

Schutzky Distributors, Inc. v. Kelly,
    643 F. Supp. 57 (N.D. Cal. 1986) .......................................................... 5

Sparaco v. Lawler, Matusky, Skelly Eng'rs LLP,
    313 F. Supp. 2d 247 (S.D.N.Y. 2004) ................................................ 6, 8

Theme Promotions, Inc. v. News America Marketing FSI,
    546 F.3d 991 (9th Cir. 2008) ................................................................. 8

ii
Reply ISO MGA Parties' Motion for Remittitur - Case No. CV 04-9049 SGL (RNBx)

Yeti by Molly Ltd. v. Deckers Outdoor Corp.,
    259 F.3d 1101 (9th Cir. 2001) ................................................................................3-4

**PRELIMINARY STATEMENT**

The MGA Parties' Motion for Remittitur argued that Mattel's state law and copyright claims sought recovery for the same wrongs using the same theory of damages from each of the MGA Parties, and, in light of the Court's instruction that the jury should award the full amount of damage on each claim against each defendant, produced duplicative damages which the Court should reduce as it had always planned. (Mot. at 6-20.) In response, Mattel offered an Opposition consisting of an incomprehensible waiver argument in which Mattel suggests the issue should have been put before the jury, and repeated citations to inapposite cases involving inconsistent or ambiguous verdicts that purport to establish that the Court may not disturb the jury's findings. (Opp'n at 2-14, 18-21.) Mattel's position defies credulity given that it was <u>Mattel</u> that urged that the issue of dealing with duplicative damages would confuse the jury and thus would be better handled by the Court (Tr. 7477:11-19). Indeed, the Court asked Mattel point-blank if it recognized the Court's authority to make the very adjustments that the MGA Parties now seek and Mattel's counsel responded that "**we absolutely accept the Court's authority.**" (Tr. 7894: 15-24 (emphasis added).) Other than a waiver argument that Mattel itself has already waived, Mattel makes only feeble attempts to contest the substance of the MGA Parties' arguments. This is hardly surprising as the record proves beyond dispute that the jury did as it was instructed and awarded duplicative damages that should be reduced now as the parties previously planned, and the Court assured them (and the jury) it would do.

The MGA Parties also sought to strike the damages award against Isaac Larian for intentional interference with contract – in light of the Court's order that the claim was time barred and the jury's finding of no fraudulent concealment – as well as the damages award on conversion, in light of Mattel's election to recover the converted drawings themselves. (Mot. at 20-21.) These seemingly non-controversial requests were met with equally vitriolic opposition – and likewise demolished by Mattel's prior concessions. For instance, Mattel's contention that a finding of concealment by any one should apply to all (Opp'n at 22-24) is destroyed by the fact Mattel itself proposed the verdict form which provided

separate findings for each defendant and that Mattel ridiculed the precise argument it now makes. Mattel further objects that the MGA Parties should provide Mattel with the Bratz drawings themselves as well as damages for conversion, arguing that these damages were compensation for the time spent without the drawings (Opp'n at 24), while having recognized in the past that the measure of damages for conversion is actually the drawings' fair market value – that is, compensation for the drawings themselves.

In short, Mattel does not contest that it presented a single theory of damages to be applied to all of its claims, nor does it muster any significant evidence to contest that its claims all seek redress for what is fundamentally a singular wrong. It cannot credibly contest the jury's finding on fraudulent concealment, nor present a reasoned argument for receiving both the Bratz drawings themselves and their fair market value. Consequently, the Court should exercise its authority to reduce the judgment to a total of $20 million – $10 million against MGA, $0 against MGA HK, and $10 million against Isaac Larian.

## ARGUMENT

### I. THE MGA PARTIES HAVE NOT WAIVED REMITTITUR

Mattel's argument that the MGA Parties waived remittitur of duplicative awards because they failed to put the question to the jury before it was discharged defies comprehension. There is no basis for Mattel's argument given the history of the duplicative damages discussion in this case: <u>Mattel</u> urged the Court to make any duplication assessments on its own, the Court found this to be the most appropriate course of action, and, indeed, <u>verified that Mattel would not challenge the Court's authority to do so</u>. At the charging conference, Mattel objected to the MGA Parties' instruction admonishing the jury not to award duplicative damages, proposing instead that the Court resolve the issue:

> THE COURT: **Duplicative damages, your argument is essentially that this is something the Court can do?**
>
> MR. PROCTOR: It's not a jury instruction issue. If an instruction were given and the jury actually followed the instruction, they would put down a damages number, whatever it is on the first claim, and write zero on every other claim,

> which is not an appropriate thing for a whole variety of reasons. We're entitled to get a jury finding as to damages to each claim. We're not seeking double damages. **<u>The Court can figure out what's double afterwards.</u>**

(Tr. 7477:11-19 (emphasis added).) The Court noted that there was precedent for this approach and that it was inclined take up the issue itself rather than instructing the jury on it:

> THE COURT: Focus on duplicative, then. The cases that you cite, a good number of them talk about the District Court or the trial court actually doing the reduction. In fact, one of the Ninth Circuit cases talks about the case being remanded to the District Court to reduce the damages. **<u>So this is certainly something that the Ninth Circuit has viewed as something that the District Court can do.</u>** None of these that I saw anyway stand for the proposition that it's only the District Courts that can do it. My sense is that's a safer way of doing it as opposed to turning that over to the jury. **<u>I have more confidence in my ability to parse through this and make sure that there's not double damages being awarded than frankly turning that task over to the jury.</u>**

(TR. 7478:17-7479:5 (emphasis added).) The Court later verified that Mattel would have no objection to having the Court – rather than the jury – make this determination:

> THE COURT: And – and to be clear, Mattel recognizes the Court's – and accepts the Court's authority to so **<u>adjust any award returned by the verdict to eliminate any duplicative award</u>** for compensation; correct?
>
> MR. ZELLER: **<u>That's correct, your honor.</u>** The – the Court will recall that a few days ago you and I had that discussion, that we thought that that was the correct approach. And **<u>we absolutely accept the Court's authority</u>** and think that that's really the only practical way of doing it under these circumstances.

(Tr. 7894: 15-24 (emphasis added).) Given that Mattel already agreed that the Court can and should make the determination itself, if anyone has waived the argument, it is Mattel.

Mattel's waiver argument is not only illogical, and waived, it is also not supported by any of the cases cited by Mattel. In Mattel's lead case, <u>Yeti by Molly Ltd. v. Deckers</u>

Outdoor Corp., the defendant's claim was that an error <u>in the verdict form</u> produced duplicative awards, and the Ninth Circuit found that by failing to object <u>to the verdict form</u> despite ample opportunity to do so, the defendant waived any objection to ambiguities it created. 259 F.3d 1101, 1109-10 (9th Cir. 2001).[1] Here, the MGA Parties did object to the verdict form (Tr: 7940:18-7941:17), but in light of Mattel's representation that there would be no challenge to the Court's authority to parse the duplication itself, they had no basis (nor any need) for polling the jury post-verdict.[2]

Mattel's other cases are inapposite – there, the circumstances left ambiguity as to whether the jury awarded duplicative damages, thus requiring the courts to either ask the jury or speculate about their intent. <u>Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petrol. Corp.</u>, 79 F.3d 182, 201-202 (1st Cir. 1996); <u>Indu Craft, Inc. v. Bank of Baroda</u>, 47 F.3d 490, 496-97 (2d Cir. 1995); <u>Gentile v. County of Suffolk</u>, 926 F.2d 142, 153 (2d Cir. 1991). Here, for all the reasons discussed in the opening brief and below, there is no uncertainty in the jury's findings that requires clarification – the MGA Parties' request is based on the nature of the claims and the damages theory presented, not on speculation as to what the jury must have decided.[3] Unsurprisingly, Mattel has found no case requiring the MGA Parties to raise the issue of duplicative damages prior to the jury's discharge where they have properly objected to the verdict form and jury instructions and where there is no issue of ambiguity or inconsistency. Particularly in light of Mattel's own concession to the

---

[1] As the court explained, "[Defendant] contends now that there were several errors inherent in the verdict form. These are not claims about the way the jury answered the form's interrogatories, rather these are allegations that errors were built into the form itself. We hold that [Defendant] waived these contentions by failing to raise them until after the jury had rendered its verdict and was discharged." 259 F.3d at 1109.

[2] Indeed, when Mattel attempted to have the jury polled on this very issue, the Court noted that "MGA correctly argues that, given the presence of the jury instruction on the allocation of damages, any inquiry into this matter would stray far too close to – if it did not invade entirely – the territory protected by Rule 606(b): The jury's deliberative process." (9/3 Order (Dkt 4295) at 2.) Both the Court and Mattel were well aware, even before the jury's discharge, that the MGA Parties would seek remittitur. (Tr. 8336:6-10, 8346:2-5; <u>see also</u> Tr. 8359:11-14.)

[3] Mattel's attempt to present evidence of the jury's supposed intentions is improper, as discussed at length in the MGA Parties' concurrently filed objections to the Corey and Zeller Declarations, and as this Court found in its 9/3 Order Denying Mattel's Request To Recall The Jury. As discussed below, the jury is presumed to have followed the Court's instructions.

Court's authority, there can be no waiver.

## II. THE MGA PARTIES HAVE SHOWN THAT REMITTITUR IS PROPER

Mattel's insistence on drawing analogies to cases where the verdict was inconsistent or ambiguous also explains its erroneous assertion that the MGA Parties must prove that it is "impossible" for the jury to have reached its verdict without duplicating damages and that the Court may only reduce the damages award if it falls outside the total damages sought by Mattel. (Opp'n at 5-11.)[4] This Court is not being asked to reconcile inconsistent responses on the verdict form nor disregard the jury's findings, unlike the courts in the cases cited by Mattel. Moreover, this Court is not being asked, unlike the courts in Mattel's cases, to determine whether the jury erroneously duplicated or purposefully apportioned what they perceived as the total damages across multiple claims. (Id. at 5-11.)[5]

Here, purposeful apportionment was not an option, as the Court instructed the jury to award not to do so in Instruction No. 44.[6] (Phase 1b Jury Inst. (Dkt 4267).) The jury is

---

[4] See, e.g., Duk v. MGM Grand Hotel, Inc., 320 F.3d 1052, 1056 (9th Cir. 2003) ("the inconsistency arose when the jury awarded damages to Duk, even though it found him more than 50% responsible for his own injuries"); Schutzky Distrib., Inc. v. Kelly, 643 F. Supp. 57, 61-62 (N.D. Cal. 1986) (defendant claimed that different damages awarded on different causes of action was inconsistent with the fact that he was involved in only a single transaction).

[5] See, e.g., Lieberman v. Dudley, 1998 WL 740827, at *3 (D. Conn. July 27, 1998) ("While it is possible that the jury impermissibly compensated the plaintiff twice for the same injury, it is also plausible that the separate awards represent a purposeful apportionment of damages between the two causes of action."); Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc., 532 F.3d 1063, 1079-80 (10th Cir. 2008) (finding duplication, but noting that it would not "even where the chance is slight that the jury arrived at the award without erroneously duplicating" (emphasis added)); Indu Craft, 47 F.3d at 497 ("[I]t is equally rational to believe that the jury found that Indu Craft suffered $3.25 million worth of injuries and merely allocated that amount between the two different causes of action …"); Gentile, 926 F.2d at 154 ("[I]t is equally conceivable that the jury found that each plaintiff suffered $150,000 worth of discrete, unduplicated injuries as a result of the County's violations of law, and merely split the total amount equally between the state and federal causes of action in announcing their award to the court on the form submitted to it.").

[6] Mattel has clearly missed the import of this instruction. Contrary to Mattel's assertion, the MGA Parties do not "erroneously assume[] that since the Court instructed the jury" that it would correct duplicative damages, "the jury *ipso facto* awarded duplicative damages for the same injury." (Opp'n at 7.) What Instruction No. 44 does establish is that the jury was told not to apportion their damages award between the various claims and defendants, but rather to award the full amount for each claim against each defendant. Because it is certain that the damages award was not apportioned between claims or defendants, Mattel's repeated citation to cases such as Carter v. Dist. of Columbia (Opp'n at 10-11) where courts rejected remittitur based on uncertainty are unhelpful. Indeed, the Carter court made this very distinction: "Unless a jury's assessment of damages includes an impermissible component that can be identified and calculated with precision

*(cont'd)*

presumed to have followed the instructions it was given and to have awarded damages as instructed for each claim and each defendant. <u>Caudle v. Bristow Optical Co., Inc.</u>, 224 F.3d 1014, 1023 (9th Cir. 2000) ("[T]he law presumes that jurors carefully follow the instructions given to them."). Despite Mattel's extended discussion, <u>Bains LLC v. Arco Prods. Co.</u> does not say otherwise. In <u>Bains</u>, the defendant claimed that the jury's various damages awards based on claims of discrimination were inconsistent with their award of nominal damages on a 42 U.S.C. § 1981 claim, which implied that there were no economic damages from discrimination. 405 F.3d 764, 770-71 (9th Cir. 2005). Listing the myriad possible reasons for the inconsistency, the court noted that the jury may have believed that "double counting" was inappropriate (without reference to the contrary instruction). <u>Id.</u> at 772. <u>Bains</u> does not establish, as Mattel suggests, that the Court may simply ignore the jury instruction when there is no inconsistency to explain, much less to **create** ambiguity where none otherwise exists.

    The MGA Parties are not seeking in this Motion to overturn or disregard the jury verdict in any way. Rather, having instructed the jury to award full damages on each claim for each defendant, coupled with an assurance that the Court would eliminate the duplication, the Court is now asked to do only what Mattel has admitted it must do: assess the nature of the claims and the damages theory presented to the jury and eliminate duplicative damages. As the Court has already noted – and Mattel agreed – this is well within its authority.[7]

---

*(cont'd from previous page)*
- and as we have just explained, the fourth amendment awards here are not of that character - it is not the district court's prerogative to enter a remittitur by fiat." 795 F.2d 116, 135 (D.C. Cir. 1986). In <u>Carter</u>, it was unclear if the jury's award was based on duplication combined with factors it was erroneously instructed to consider or whether it was based in whole or in part on permissible calculations – as such, a remittitur was inappropriate. <u>Id.</u> Where the jury was only given one possible damages theory and told to award the full amount on every claim, there is no such concern.

[7] See, e.g., <u>Caudle</u>, 224 F.3d at 1023 (court properly concluded that damages awarded on state law claims were duplicative of back pay award); <u>Bowers v. Baystate Techs., Inc.</u>, 320 F.3d 1317, 1327-28 (Fed. Cir. 2003) (eliminating copyright damages as duplicative of contract damages); <u>Sparaco v. Lawler, Matusky, Skelly Eng'rs LLP</u>, 313 F. Supp. 2d 247, 253-55 (S.D.N.Y. 2004) (eliminating copyright damages as duplicative of contract damages).

## III. THE AWARDS FOR MATTEL'S STATE LAW AND COPYRIGHT INFRINGEMENT CLAIMS ARE DUPLICATIVE

### A. Mattel's State Law Claims Seek Recovery For The Same Wrong

Mattel's state law claims all stem from Bryant's providing MGA with Mattel's confidential information – as outlined in this Court's ruling on summary judgment, the jury instructions and argued by Mattel to the jury. (Mot. at 6-9.)[8] Mattel's efforts to separate its claims only emphasize the similarity. Arguing Bryant breached the duty of loyalty in "work[ing] for MGA while employed by Mattel" to MGA's benefit and Mattel's harm, Mattel claims that Bryant contacted doll hair suppliers for MGA, which was "wrong[] regardless of whether Mattel proprietary information was taken, used or disclosed." (Opp'n at 15-16.) But that is not the story Mattel gave the jury, grilling Bryant about asking a co-worker for Mattel's hair vendor's number, without disclosing he intended to use it for MGA, because he and MGA knew "it might be inconsistent with [his] obligations to Mattel" (Tr. 2535:24-2540:4, 3090:18-25; see also Tr. 1127:13-23, 1137:22-1138:2 (showing Garcia and Bryant knew and contacted Linker due to his work for Mattel.) Similarly, Mattel's "tortious interference with contract claim included proof of Bryant's breaches of his agreements with Mattel" when Bryant made drawings for Bratz, including those "not specifically used to create Bratz dolls," without disclosing them to Mattel, and Bryant's breach of fiduciary duty "allowed MGA to profit from the disclosure of Mattel's proprietary information … even where it did not use [it], because neither could its competitor, Mattel." (Opp'n at 16-17.) These claims all hinge on Bryant's use of information rightfully belonging to Mattel for his (and MGA's) gain – Mattel's inability to separate the wrongs only proves MGA's point.

### B. Mattel Sought The Same Damages For All Of Its Claims

Mattel does not dispute that it applied the same theory of damages to all of its state law claims as well as its copyright claim. (Opp'n at 11-14, 18.) Rather, Mattel asserts that,

---

[8] Mattel's claim that "the jury instructions specifically address the distinctive nature and elements of each of Mattel's causes of action" (Opp'n at 15) is belied by the sheer similarity of those instructions (Mot. at 8-9). Mattel's reliance on the summary judgment rulings ignores the holding that Mattel's intentional interference claim and its claim for aiding and abetting breach of fiduciary duty are intertwined. (Id. at 8; Opp'n at 16-17.)

7

because the jury's total award fell below the total damages Mattel attempted to prove, the award cannot be remitted. (Id. at 11-14) As above, Mattel relies on inapposite cases involving ambiguous and inconsistent verdicts to support its claim that this is the appropriate test. (Id.) It is not. (See supra § 2.) Where the nature of the claims and the plaintiff's theory of damages establish that plaintiff is seeking the same damages for the same wrongs in the guise of multiple claims, the Court has the authority to reduce the damages award accordingly. See Caudle, 224 F.3d at 1023 (remitting damages on state law claims that were duplicative of back pay award because jury was specifically instructed to include back pay in damages on state law claims); Bowers, 320 F.3d at 1327-28 (eliminating copyright damages as duplicative of contract damages where contract provided protection "encompassing but more extensive than copyright protection," noting that: "The law is clear that the jury may award separate damages for each claim, 'leaving it to the judge to make appropriate adjustments to avoid double recovery.'"); Sparaco, 313 F. Supp. 2d at 253-55 (finding that harm addressed by contract claim was essentially the same harm remedied by copyright claim – copying – and eliminating copyright damages).[9]

Here, Mattel presented but one measure of damages – the MGA Parties' "ill-gotten" gains from their misappropriation of Bratz – to be awarded for each and every claim. (Mot. at 9-15.) The MGA Parties need not analyze the evidence or the verdict in exhaustive detail to show that is true – it is apparent from Mattel's claims and theory of damages. (Mot. at 6-15.)[10] Indeed, Mattel assumed as much in objecting to the duplicative damages instruction,

---

[9] That Mattel has found cases where the claims did not arise from the same wrongs or generate the same damages is unsurprising. See, e.g., Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d 991, 1005-06 (9th Cir. 2008) (refusing remittitur because the damages addressed "separate legal harms" and "the two injuries did not arise from the same act" even though a single measure of damages was provided); Nintendo of Am., Inc. v. Dragon Pac. Int'l, 40 F.3d 1007, 1009-1011 (9th Cir. 1994) (damages were not duplicative because (1) defendant committed two wrongs – "If Sheng had sold the cartridges without representing that they were Nintendo products, he would have committed the wrong of copyright infringement. Or, if Sheng had represented that the cartridges were Nintendo products, even though they contained no Nintendo games, he would have committed the wrong of trademark infringement." – and (2) plaintiff was awarded statutory penalties on copyright claim and actual damages on trademark claim). This does not change the fact that when the harm and the damages are the same, as in Caudle, Bowers, and Sparaco and as here, remittitur is appropriate.

[10] As such, Mattel's assertion that the jury's verdict need not be explained with particularity to
*(cont'd)*

expressing concern that the jury would award full damages for the first tort claim, and then "award zero damages for the other tort claims pursued by Mattel and the copyright claim," which would be problematic if the first claim did not survive post-trial motions or appeal. (Resp. to Obj. to MGA Phase 1b Jury Inst. (Dkt 4166) at 110; Tr. 7477:13-17.)  So instead, the jury awarded it three times on the state law claims and, with apportionment, a portion of those damages on the copyright claim.  This does not entitle Mattel to quadruple recovery.

### C. **Mattel's Copyright Damages Are Not Saved By Preemption**

Bizarrely, Mattel asserts that the MGA Parties duplicative damages argument would effectively nullify the Court's preemption rulings. (Opp'n at 19.)  This is simply not true. To begin with, Mattel's argument is based on a backwards analysis – Mattel claims that the state law claims will be "collapsed into" the copyright action when it is the copyright damages that are subsumed into the more expansive state law claims (as in <u>Bowers</u>).  As explained in the opening brief, to the extent that the state law claims do have "extra elements," those elements are compensated by the larger recovery (as are those elements of the rights to Bratz that are uncopyrightable). (Mot. at 13-15.)  Morever, <u>Mattel objected to</u> a jury instruction intended to limit the damages on partially preempted claims to damages not arising from rights to Bratz. (Resp. to Obj. to MGA Phase 1b Jury Inst. at 50-53.)  Thus, once again, it is difficult to imagine how Mattel can sustain any argument on this issue having refused its remedy.  In any event, even Mattel characterizes the damages awards as "overlapping," (Opp'n at 19) and the Court, in ruling that "the mere fact that the remedies are the same does not result in the preemption" noted that "I understand how this leads to duplicative damages." (Tr. 7927:6-21.)  Preemption is clearly no impediment to remittitur.

### IV. **THE JURY'S AWARDS AGAINST LARIAN AND MGA ARE DUPLICATIVE**

MGA showed that Larian's sole benefits were 1) distributions and/or 2) his MGA

---

*(cont'd from previous page)*
survive review is inapt, as is its discussion of jury's copyright findings. (Opp'n at 12-13, 18.)  The MGA Parties do not purport to "guess" why the jury awarded the damages it did or what particular wrongs the jury sought to address – whatever the answers to those questions, the jury awarded to Mattel that portion of the Bratz profits that they attributed to the MGA Parties' misconduct in acquiring and using Bryant's Bratz drawings.  That is a singular recovery for a singular wrong.

stock, and since on the copyright claim the jury awarded no damages from Larian's stock ownership, the jury's state law awards came solely from the distributions. Because those distributions were included in MGA's profits, as Mattel's expert conceded, <u>Mattel can either recover from MGA or Larian, **but not both**</u>. (Mot. at 15-19.) As Mattel told the jury: "Included in MGA's $777.9 million in profits is money that went to Isaac Larian. You might be concerned that Mattel is trying to double-count by asking for it to be awarded against both Mr. Larian and MGA. <u>Rest assured, as the Court has already indicated, the Court will not let that happen.</u>" (Tr. 8136:8-13 (emphasis added).) Mattel's argument that the jury's outright rejection of its stock ownership theory of damages "proves nothing" because the "jury may have believed that Larian's ownership value gains were already encompassed within the jury's awards" (Opp'n at 20-21),[11] requires this Court to assume, contrary to the law, that the jury flatly disregarded its instructions. (<u>See</u> Phase 1b Inst. No. 44; Mot. at 5-6 (collecting cases).)[12] Mattel cannot plausibly explain why the jury's rejection of Mattel's ownership interest damages theory would be reversed if the jury could "specify the bases" for its state law awards; indeed, the symmetry between the copyright and state law awards shows the jury had a consistent approach to <u>all</u> claims. Finally, Mattel argues that the jury considered only "retained profits" in assessing damages against MGA (without support, since the jury heard no such approach).[13] Mattel cannot deny that Larian's distributions consist of the same dollars as MGA's profits and the awards against Larian are duplicative.

## V. <u>THE COPYRIGHT AWARD AGAINST MGA HK IS DUPLICATIVE</u>

Mattel indisputably told the jury that the profits it sought from MGA HK were the

---

[11] Mattel posits that the jury might have thought stock valuation was "impossible" (Opp'n at 21), but the jury also heard its valuation of Larian's stock at $310.8 million (Tr. 6297:22-6303:13).
[12] Mattel wrongly argues that MGA created the "confusion" when it "insisted on" "'distinguish[ing] between damages awarded against different defendants'" (Opp'n at 21 n.28), but MGA's proposed verdict form simply addressed the Court's concerns that awards against Larian would be from "the same dollars" and individual damage assessments could help the Court eliminate duplication post-verdict. (Tr. 5230:17-21, 5231:16-20.)
[13] Mattel bases its "retained profits" theory on an MGA cross-examination demonstrating that the distributions made to Larian were included in MGA's profits– hardly a command to use MGA's retained profits as a basis for assessing damages(Tr. 6412:25-6414:13). Mattel told the jury to consider MGA's <u>total</u> profits of $777.9 million (Tr. 8135:23, 8158:5).

same as those sought against MGA, and did not present a separate theory of damages against MGA HK. (Mot. at 19-20.) [14] In response, Mattel offers the wholly novel explanation that since MGA was responsible for doll design and development, and MGA HK was responsible for manufacturing, the damages award must be based on each defendant's responsibility "for separate components of the profits in line with their different roles" (Opp'n at 22). Nothing suggests the jury adopted such an attenuated theory and Mattel simply ignores its telling the jury that "MGA Hong Kong would be the same as MGA" in calculating damages. (Tr. 8268:10-13.)  The MGA HK damages are duplicative.

## VI. DAMAGES AGAINST LARIAN FOR INTENTIONAL INTERFERENCE ARE BARRED BY THE STATUTE OF LIMITATIONS

In an attempt to avoid the jury's finding that Isaac Larian did not engage in fraudulent concealment (Phase 1b Verdict (Dkt 4279) No. 19), Mattel claims that the MGA Parties have waived any argument that fraudulent concealment must be shown as to each defendant, citing assorted irrelevant cases involving co-conspirators and agents.  (Opp'n at 22-24.) This argument is not only incomprehensible, it is patently frivolous because Mattel's **own** proposed verdict form provided for separate verdicts on each defendant.  (Mattel Prop. Verdict Form (Dkt 4161) at 4.)  Mattel did not make this decision idly.

The MGA Parties objected to Mattel's proposed jury instruction on fraudulent concealment "to the extent it suggests that fraudulent concealment by one defendant would necessarily toll the statute as to another defendant not found culpable in the alleged concealment."[15]  (Mattel Prop. Phase 1b Jury Inst., Obj., & Resp. (Dkt 4163) at 108.)

---

[14]   Mattel contends that the MGA Parties waived this argument because MGA did not previously establish MGA HK's profits are consolidated with MGA's. (Opp'n at 22.)  Not so. (See, e.g., TX 656 (Consolidated Financial Statements, Year ended December 31, 2003) at 6 ("The accompanying consolidated financial statements include MGA Entertainment, Inc. (MGA or the Company) and its wholly owned subsidiaries, MGA Entertainment (Mauritius) Limited (Mauritius) and MGA Entertainment (H.K.) Ltd. (Hong Kong).").)  Moreover, because Mattel failed to present any damages evidence specific to MGA HK, if anyone waived this argument, it was Mattel, as the MGA Parties had no obligation to respond to evidence that Mattel never presented in the first place.

[15]   Citing Sanchez v. South Hoover Hospital, 18 Cal. 3d 93, 100 (1976) ("The rationale for the foregoing rule [of fraudulent concealment] is that the culpable defendant should be estopped from profiting by his own wrong [t]o the extent that it hindered an 'otherwise diligent' plaintiff in discovering his cause of action.").

1  Mattel's response: "Defendants' objection that the proposed instruction is objectionable
2  because it suggests that concealment by one defendant would toll as to all is also not well
3  taken. **Mattel's proposed verdict form includes separate findings regarding fraudulent**
4  **concealment as to each defendant, rendering the concern raised by defendants moot.**"
5  (Id. at 110.)  It is Mattel, not the MGA Parties, who has waived any argument on this issue.
6  As such, the award against Larian on intentional interference should be stricken.

### VII. MATTEL IS NOT ENTITLED TO BOTH POSSESION OF THE DRAWINGS AND DAMAGES EQUAL TO THE VALUE OF THOSE DRAWINGS

MGA established that, in addition to the jury award of fair market value of Bryant's original drawings in 2000, Mattel sought and received the drawings themselves. Mattel cannot have both.  (Mot. at 21.)  Mattel's Opposition offers no authority establishing that it is entitled to both conversion damages <u>and</u> possession of the property, and suggests instead that the damages were for "the deprivation of Mattel's property for eight years" – again citing no authority to support its "lost time" theory.  (Opp'n at 24.)  Mattel did not ask the jury for compensation for its years without the drawings, it sought the fair market value of the drawings at the time they were converted. (Phase 1b Jury Inst. 40; <u>see also</u> Mattel Prop. Phase 1b Jury Inst., Obj., & Resp. at 142.)  Mattel's double recovery of the cash damages <u>and</u> the original "converted" drawings is particularly unjust in light of the enormous value of the original Bryant drawings now that <u>MGA</u> has made Bratz a household name.  The jury award of additional damages should be stricken.

### CONCLUSION

For the foregoing reasons, the MGA Parties respectfully request that their Motion for Remittitur be granted in its entirety and that the Court reduce the judgment to $10 million against MGA, $0 against MGA HK, and $10 million against Isaac Larian.

DATED: January 19, 2009          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                                 By:    /s/ Thomas J. Nolan
                                        Thomas J. Nolan
                                 Attorneys for the MGA Parties