THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071-3144
Tel.: (213) 687-5000
Fax: (213) 687-5600

Attorneys for The MGA Parties

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | Honorable Stephen G. Larson |
| MATTEL, INC., a Delaware corporation, | MGA PARTIES' REPLY IN FURTHER SUPPORT OF THEIR RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW |
| Defendant. | |
| AND CONSOLIDATED ACTIONS. | Hearing Date:     February 11, 2009 |
| | Time:                  10:00 AM |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 1

I.     MATTEL'S STATE LAW CLAIMS ARE PREEMPTED ................................. 1

     A.    The Copyright Act Preempts Mattel's Claims ........................................ 1

     B.    The California Uniform Trade Secrets Act Preempts Mattel's Claims ..................................................................................................... 2

II.    MATTEL FAILED TO PROVE DAMAGES FOR ITS STATE LAW CLAIMS ............................................................................................................ 4

III.   MATTEL FAILED TO SHOW MGA OR LARIAN HAD ACTUAL KNOWLEDGE OF BRYANT'S FIDUCIARY DUTY OR BREACH THEREOF ........................................................................................................... 5

IV.   MATTEL REVERSES ITS CONCESSION TO THIS CLAIM YET CANNOT SHOW MGA HK IS LIABLE FOR UNFAIR COMPETITION ....................................................................................................... 7

V.    MATTEL MAY NOT BASE CLAIMS ON RIGHTS TO THE BRATZ NAME ................................................................................................................ 9

VI.   MATTEL OFFERS NO FURTHER EVIDENCE TO SHOW INFRINGEMENT IN LATER GENERATION DOLLS OR OTHER LINES ......................................................................................................... 10

VII.  BRYANT IS, AT MOST, A JOINT AUTHOR OF TX 1136A ...................... 10

     A.    The Jury Did Not Find Bryant Was An "Author" of TX 1136A ........... 10

     B.    Mattel Has Not Proven That Bryant Is An Author Of TX 1136A .......... 11

CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

Aalmuhammed v. Lee,
    202 F.3d 1227 (9th Cir. 2000) ................................................................ 12

Altera Corp. v. Clear Logic, Inc.,
    424 F.3d 1079 (9th Cir. 2005) .................................................................. 1

Anderson v. Stallone,
    No. 87-0592 WDKGX,
    1989 WL 206431 (C.D. Cal. Apr. 25, 1989) ............................................ 12

Andrien v. S. Ocean County Chamber of Commerce,
    927 F.2d 132 (3d. Cir. 1991) ................................................................... 11

Balboa Insurance Co. v. Trans Global Equities,
    218 Cal. App. 3d 1327 (1990) ................................................................... 1

Barnett v. County of Contra Costa,
    Nos. C04-4437 TEH, C04-5365 THE,
    2007 WL 196678 (N.D. Cal. Jan. 24, 2007) ............................................. 7

Briarpatch Ltd. v. Phoenix Pictures, Inc.,
    373 F.3d 296 (2d Cir. 2004) ...................................................................... 1

Community for Creative Non-Violence v. Reid,
    490 U.S. 730 (1989)................................................................................ 11

Convolve, Inc. v. Compaq Computer Corp.,
    NO. 00 CV 5141 (GBD),
    2006 WL 839022 (S.D.N.Y. Mar. 31, 2006)....................................... 3, 4

Casey v. U.S. Bank Nat'l Ass'n,
    127 Cal. App. 4th 1138 (2005) .................................................................. 6

Chandler v. Roach,
    156 Cal. App. 2d 435 (1957) ..................................................................... 9

County of San Bernardino v. Walsh,
    158 Cal. App. 4th 533 (2007) .................................................................... 4

Del Madera Properties v. Rhodes & Gardner, Inc.,
    820 F.2d 973 (9th Cir. 1987) ................................................................. 1, 2

Desny v. Wilder,
    46 Cal. 2d 715 (1956) ................................................................................ 9

DIRECTV, Inc. v. Barrett,
        311 F. Supp. 2d 1143 (D. Kan. 2004)............................................................ 3

Easton Sports, Inc. v. Warrior LaCrosse, Inc.,
        No. 05-CV-72031,
        2005 WL 2234559 (E.D. Mich. Sept 14, 2005) ...................................... 4

Ernest Paper Products, Inc. v. Mobil Chemical Co.,
        No. CV 95-7918,
        1997 WL 33483520 (C.D. Cal. Dec. 2, 1997)............................................ 4

Family Home & Financial Center, Inc. v. Federal Home Loan Mortgage Corp.,
        461 F. Supp. 2d 1188 (C.D. Cal. 2006),
        aff'd, 525 F.3d 822 (9th Cir. 2008) ...................................................... 8

Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,
        499 U.S. 340 (1991)...............................................................................10-11

In re First Alliance Mortgage Co.,
        471 F.3d 977 (9th Cir. 2006) ................................................................. 6

Geshwind v. Garrick,
        734 F. Supp. 644 (S.D.N.Y. 1990) ...................................................... 11

Gilchrist v. Jim Slemons Imports, Inc.,
        803 F.2d 1488 (9th Cir. 1986) ................................................................ 3

Gonzales v. Lloyds TSB Bank, PLC,
        532 F. Supp. 2d 1200 (C.D. Cal. 2006) ............................................... 7

Gospel Missions of Am. v. City of Los Angeles,
        328 F.3d 548 (9th Cir. 2003) ................................................................ 7

Grosso v. Miramax Film Corp.,
        383 F.3d 965 (9th Cir. 2004) ................................................................ 1

Johns v. AutoNation USA Corp.,
        246 F.R.D. 608 (D. Ariz. 2006)............................................................ 3

Jonathan Browning, Inc. v. Venetian Casino Resort, LLC
        No. C 07-3983JSW, 2007 WL 4532214 (N.D. Cal. Dec. 19, 2007)...........................9

Lindsay v. Wrecked & Abandoned Vessel R.M.S. Titanic,
        NO. 97 CIV. 9248 (HB),
        1999 WL 816163 (S.D.N.Y. Oct. 13, 1999)..................................... 11

MGA Parties' Reply ISO Renewed Mot. for JMOL –Case No. CV 04-9049 SGL (RNBx)

Neilson v. Union Bank of California, N.A.,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ........................................................ 7

Oddo v. Ries,
    743 F.2d 630 (9th Cir. 1984) ....................................................................... 1

People v. Bestline Products, Inc.,
    61 Cal. App. 3d 879 (1976) ......................................................................... 5

Pfaff v. Wells Electric, Inc.,
    525 U.S. 55 (1998)..................................................................................... 10

Resolution Trust Corp. v. Rowe,
    NO. C 90-20114 BAC,
    1993 WL 183512 (N.D. Cal. Feb. 8, 1993) ................................................ 7

Scarff v. Wells Fargo Bank, N.A.,
    Nos. C03-03394 JFPVT, C03-04829 JFPVT,
    2005 WL 3454136 (N.D. Cal. Dec. 16, 2005)............................................. 6

Sebastian International Inc. v. Russolillo,
    162 F. Supp. 2d 1198 (C.D. Cal. 2001) ...................................................... 7

Silicon Image, Inc. v. Analogix Semiconductor, Inc.,
    NO. C-07-0635 JCS,
    2007 WL 1455903 (N.D. Cal. May 16, 2007).............................................. 7

United States v. Davis,
    332 F.3d 1163 (9th Cir. 2003) ..................................................................... 7

United States v. First National Bank of Circle,
    652 F.2d 882 (9th Cir. 1981) ....................................................................... 3

Wolf v. Reliance Standard Life Insurance Co.,
    71 F.3d 444 (1st Cir. 1995)........................................................................... 3

Worth v. Universal Pictures, Inc.,
    5 F. Supp. 2d 816 (C.D. Cal. 1997) ............................................................ 2

Wyatt v. Union Mortgage Co.,
    24 Cal. 3d 773 (1979) .................................................................................. 7

**STATUTES**

17 U.S.C. §101 .............................................................................................. 10

Cal. Civ. Code § 3246.1(d) ............................................................................. 4

Cal. Civ. Code § 3426.7(b) ........................................................................ 4

**MISCELLANEOUS**

William F. Patry, <u>Patry on Copyright</u> §5:97 (2008) ............................................... 12

MGA Parties' Reply ISO Renewed Mot. for JMOL –Case No. CV 04-9049 SGL (RNBx)

**1**

**PRELIMINARY STATEMENT**

Mattel's Opposition merely confirms that the MGA Parties are entitled to judgment as a matter of law ("JMOL").  First, unable to overcome binding Ninth Circuit precedent showing its claims are preempted by the Copyright Act and CUTSA, Mattel instead cites a multitude of out of circuit and inapposite cases.  (Section I.)  Second, Mattel failed to prove damages in support of any of its state law claims.  (Section II.)  Third, Mattel was unable to shown that MGA and Larian had actual knowledge of Bryant's contractual fiduciary duty or its breach for its aiding and abetting claim. (Section III.)  Fourth, Mattel offers no basis to find MGA HK liable for unfair competition, and fails even to mention that it previously failed to contest this very argument in the prior JMOL briefing. (Section IV.) Fifth, Mattel's opposition confirms that Mattel has no rights to the Bratz name. (Section V.)   Sixth, Mattel's opposition also confirms that that the later generation Bratz products do not infringe any work owned by Mattel. (Section VI.)   Finally, Mattel failed to provide any evidence that Bryant was the sole author of the Bratz sculpt. (Section VII, infra.).

**ARGUMENT**

**I.    MATTEL'S STATE LAW CLAIMS ARE PREEMPTED**

**A.    The Copyright Act Preempts Mattel's Claims**

Unable to deny that the Ninth Circuit's decision in Del Madera Props. v. Rhodes & Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987) is indistinguishable from this case, Mattel floods its brief with decisions from other Circuits, district courts, and state courts, and a few inapposite Ninth Circuit decisions to try to wash away Del Madera's binding holding.[1]

---

[1]     For example, Mattel cites Oddo v. Ries, 743 F.2d 630, 635 (9th Cir. 1984), which predates Del Madera and has no analysis of the issue, and Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 307 (2d Cir. 2004), a Second Circuit decision. Balboa Ins. Co. v. Trans Global Equities, 218 Cal. App. 3d 1327, 1352 (1990), a non-binding state court case that is not even persuasive authority on federal preemption, distinguished Del Madera as the breach "extends way beyond the unauthorized transfer of [intellectual property]"- whereas Bryant's breach did not go "way beyond" transferring his drawings.  Grosso v. Miramax Film Corp., 383 F.3d 965, 968 (9th Cir. 2004) found no preemption as the right being vindicated was an implied promise to pay for the intellectual property, an element absent in Del Madera and absent here. Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089-90 (9th Cir. 2005) is inapplicable outside of litigation over software or similar property – there, the court found no preemption because "[t]he right at issue is not the reproduction of the [copyrighted] software …, but is more appropriately characterized as the use of the bitstream

*(cont'd)*

---

1

1  (Opp'n at 1-4.) In <u>Del Madera</u>, a third-party – like Bryant – allegedly misappropriated

2  plaintiff's intellectual property and gave it to defendants in breach of a fiduciary duty.  820

3  F.2d at 975, 977.  Plaintiff claimed defendants induced that breach, and that the breach and

4  inducement provided the "extra element" to avoid preemption of their claim – just like

5  Mattel here. <u>Id.</u> at 977. <u>Del Madera</u> rejected that argument (<u>id.</u>) and its holding controls here,

6  establishing that Mattel's claims are preempted to the extent based on the rights to Bratz.[2]

7         Mattel's efforts to pursue copyright remedies for its state claims are also preempted.[3]

8  Mattel argues that because many courts assess preemption without reference to remedies

9  that remedies are irrelevant to the analysis.  (Opp'n at 4-6.)  Not so.  Remedies inform the

10  analysis because they show the nature of the right that plaintiff seeks to vindicate.  <u>See, e.g.,</u>

11  <u>Worth v. Univ. Pictures, Inc.</u>, 5 F. Supp. 2d 816, 822-23 (C.D. Cal. 1997) (conversion claim

12  preempted because plaintiffs sought profits, which "are the damages sought from the

13  movie's unauthorized reproduction and distribution and are subsumed within federal

14  copyright law").  Here, Mattel only sought damages arising from the rights to Bratz.  The

15  Court's preemption rulings would be meaningless if Mattel were permitted to recover

16  damages based on the very theory that has been preempted.  And, allowing Mattel to collect

17  copyright damages without copyright apportionment would expand the scope of copyright

18  protection in the guise of state law tort claims – precisely what preemption seeks to avoid.

19  **B.    <u>The California Uniform Trade Secrets Act Preempts Mattel's Claims</u>**

20         Mattel argues that the MGA Parties waived their CUTSA preemption argument.

21

22  _____
*(cont'd from previous page)*

23  [produced when the software was run]… A state law tort claim concerning the unauthorized use of the software's end-product is not within the rights protected by the federal Copyright Act."

24  [2]    Mattel suggests that a partial preemption of the aiding and abetting claims, limited <u>to the extent</u> they are based on the rights to Bratz, is not permissible.  (Opp'n at 3.)  The Court's order on the intentional interference claim proves otherwise.  (4/25 Order (Dkt 3286) at 2.)  Moreover, the

25  <u>Del Madera</u> court made the same distinction, finding plaintiff's claims preempted to the extent they were based on plans for real estate development, but not preempted to the extent they were based on efforts to get permits to build.  820 F.2d at 977.  Notably, copyright preemption applies whether

26  or not the subject matter at issue rises to the level of copyrightability.  (MGA Mot. at 3, 6)  Thus, the preempted "rights to Bratz" includes the rights to exploit the Bratz name and characters.

27  [3]    The MGA Parties recognize that the Court has held otherwise on the MGA Parties' original JMOL motions, but respectfully renew their argument post-verdict, as contemplated by FRCP 50.

28

1   (Opp'n at 7-8.)  Its cases do not agree.  Mattel cites a string of cases for the proposition that
2   preemption is an affirmative defense that may be waived.  Although all note that <u>certain</u>
3   <u>types</u> of preemption are waivable, <u>not one</u> of these cases holds that CUTSA preemption may
4   be waived.  <u>Wolf v. Reliance Std. Life Ins. Co.</u>, 71 F.3d 444, 449 (1st Cir. 1995) ("Our
5   holding is limited to ERISA preemption of benefits-due actions"); <u>DIRECTV, Inc. v.</u>
6   <u>Barrett</u>, 311 F. Supp. 2d 1143, 1147 (D. Kan. 2004) ("other Circuits have held that certain
7   types of preemption are affirmative defenses"); <u>Johns v. AutoNation USA Corp.</u>, 246 F.R.D.
8   608, 609-10 n.1 (D. Ariz. 2006) ("ERISA preemption is a waivable defense in only certain
9   ERISA cases, including benefits-due cases").[4]  Moreover, the MGA Parties argued for
10  CUTSA preemption in their Phase 1b JMOL – their earliest opportunity after learning that
11  Mattel's claims would be limited to misappropriation of confidential information.[5]

12          Mattel contends that its state law tort claims are not preempted by CUTSA because
13  they involve elements that are not identical to a cause of action for trade secret
14  misappropriation and do not require the jury to find that the information at issue is a trade
15  secret.  (Opp'n at 8-10.)  Mattel is wrong on both counts.  "'The [UTSA] does not ... simply
16  preempt common law claims for which misappropriation of a trade secret is an element.' …
17  Instead, the UTSA preemption clause is meant to eliminate **all** common law claims that are
18  based on **the same conduct** which could support a UTSA cause of action."  <u>Convolve, Inc.</u>
19  <u>v. Compaq Computer Corp.</u>, 2006 WL 839022, at *7 (S.D.N.Y. Mar. 31, 2006).  Thus,
20

---

21  [4]      Mattel's other cases are likewise inapt.  <u>Gilchrist v. Jim Slemons Imports, Inc.</u>, 803 F.2d
22  1488, 1497 (9th Cir. 1986) (holding only that a preemption argument that was never raised in the
    District Court could not "be raised for the first time on appeal"); <u>U.S. v. First Nat'l Bank of Circle</u>,
    652 F.2d 882, 886 (9th Cir. 1981) (party waived <u>evidentiary</u> theory not contained in pretrial
23  conference order, not holding that right to raise <u>purely legal</u> issues is constrained by pretrial order).
    [5]      On summary judgment, the Court found that Bryant owed a fiduciary duty to Mattel arising
24  out of Paragraph 1(a) of the Inventions Agreement to protect Mattel's confidential information.
    (5/21/08 Order (Dkt 3758) at 4.) This Court did not conclude, as a matter of law, that Bryant had
25  any duties to Mattel beyond those identified, and left it for Mattel to prove any broader duties at
    trial.  (<u>Id.</u>)  In their Phase 1a JMOL, the MGA Parties argued that Mattel had not proven any
26  broader duties.  (Phase 1a JMOL (Dkt 4080) at 3.)  In its Jury Instructions for Phase 1a, the Court
    instructed the jury only on the duty to protect Mattel's confidential information – effectively
27  granting the MGA Parties' JMOL on the issue.  (Phase 1a Jury Inst. (Dkt 4115) No. 28.)  Thus, it
    was not until after the Phase 1a Jury Instructions that the MGA Parties had a determination from
28  the Court that Mattel's claims would be limited to misappropriation of proprietary information.

1  CUTSA preempts a wide range of tort claims, even if they have other elements.[6]  Moreover,

2  Mattel's claim that the information at issue here is not a "trade secret" under CUTSA

3  (Opp'n at 9) is belied by the Court's prior orders.  Under CUTSA, a trade secret "derives

4  independent economic value, actual or potential, from not being generally known to the

5  public or to other persons …; and (2) is the subject of efforts … to maintain its secrecy."

6  Cal. Civ. Code § 3426.1(d).  Bryant's duty to Mattel was defined as a duty to "maintain [the]

7  confidentiality" of "any information … that derives independent economic value … from

8  not being generally known to the public or to other persons."  (Phase 1a Jury Inst. No. 28

9  (quoting TX 25 ¶¶ 1(a)-(b)).)  The language is virtually identical.  Thus, Mattel's claims

10 arising out of this contract are based on conduct that could support a CUTSA cause of

11 action—the allegedly wrongful disclosure of trade secrets.  They are therefore preempted.

12 **II.    MATTEL FAILED TO PROVE DAMAGES FOR ITS STATE LAW CLAIMS**

13       The MGA Parties showed that Mattel failed to prove permissible damages for any of

14 its state law claims.  (Mot. at 8-10.)  Mattel's responded that it has proven generic harm on

15 its state law claims, but this does not save Mattel from the obligation to prove some form of

16 damages.[7]  As discussed above, Mattel's damages theory – disgorgement of Bratz profits –

17 is preempted.  Moreover, it is settled that the aiding and abetting party is jointly liable with

18 the fiduciary for the <u>fiduciary's</u> profits, not the abettor's profits.[8]  Mattel did not offer any

19 

20 ─────────────────

[6]       <u>Convolve</u>, 2006 WL 839022 at *6-8 (CUTSA preempts claim for tortious interference with contract, as well as other tort claims, where all claims arise out of "the same nucleus of facts");
21 <u>Easton Sports, Inc. v. Warrior LaCrosse, Inc.</u>, 2005 WL 2234559, at *3 (E.D. Mich. Sept 14, 2005) (breach of fiduciary duty claim preempted by CUTSA); <u>Ernest Paper Prods., Inc. v. Mobil Chem.</u>
22 <u>Co.</u>, 1997 WL 33483520, at *7-8 (C.D. Cal. Dec. 2, 1997) (tortious interference claim preempted by CUTSA).  These cases also show the fallacy in Mattel's attempt to rely on the preemption
23 exclusion in Cal. Civ. Code § 3426.7(b), which expressly carves out "contract <u>remedies</u>," not tort remedies based on contractual rights.  (Opp'n at 9.)

24 [7]       Nominal damages are permissible where there is a showing of harm but no damages.  (Phase 1b JMOL (Dkt 4264) at 2 n.1)  However, Mattel resisted a nominal damages jury instruction and
25 did not argue that theory to the jury.  (Mattel Obj. to MGA Phase 1b Jury Inst. (Dkt 4158) at 49.)

26 [8]       Mattel's lead case to the contrary – <u>County of San Bernardino v. Walsh</u> – did not discuss an aiding and abetting claim, but rather defendants who were found jointly and severally liable for
27 breach of fiduciary duty and inducing a breach. 158 Cal. App. 4th 533, 537-43 (2007).  Moreover, in <u>Walsh</u>, the County sued Walsh and Mays for their role in bribing Hlawek, the County's Chief
28 Administrative Officer.  <u>Id.</u>  The damages consisted of Hlawek's salary, the direct bribes made to Hlawek, and most of Mays' consulting fees received from NorCal.  <u>Id.</u>  The court explained that

*(cont'd)*

1   evidence of Bryant's profits.  As to its conversion claim, Mattel contends that it provided

2   the jury with "evidence from which the jury can approximate damages."  (Opp'n at 13.)

3   However, the evidence Mattel cited did not give the jury any framework for assessing the

4   monetary value of Bryant's drawings at the time they were converted.  (Id. at 13 & n. 39-40,

5   citing Tr. 563:22-24 (testimony that Paula Garcia "loved" the drawings), 994:20-995:1

6   (same), 2167:9-2168:1 (discussing Bryant's projected royalties from the Bratz line).)[9]  Thus,

7   Mattel failed to present evidence relevant to damages for any of its state law claims.

8   **III.   MATTEL FAILED TO SHOW MGA OR LARIAN HAD ACTUAL KNOWLEDGE OF BRYANT'S FIDUCIARY DUTY OR BREACH THEREOF**

9   

10          Mattel's Opposition concedes that it had to prove that MGA and Larian had "actual

11   knowledge" of Bryant's contractual fiduciary duty and his breach, (Opp'n at 13-14),[10] yet it

12   fails to challenge MGA's undisputed evidence that (i) MGA and Larian never saw the

13   Bryant agreement with Mattel – the sole basis for Bryant's fiduciary duty –before this suit,

14   and (ii) they had no any knowledge of the provisions or obligations of Mattel's agreement

15   with Bryant or any breach thereof. (Mot. at 13, 17-18.)  Mattel needed – but failed – to

16   show that someone familiar with Bryant's contract actually notified MGA of his contractual

17   fiduciary duty.[11]  Instead, Mattel insists that Larian and MGA "knew" of Bryant's

18   _____
    *(cont'd from previous page)*

19   Mays and Hlawek were both fiduciaries owing duties to the County. Id.  The court then found that
    liability extended to Walsh as an "active participant[ ] in a breach of such duty."  Id.  The court's

20   award consisted of "most of Mays's consulting fees from NorCal" but is silent with respect to any
    benefit obtained by Walsh, the non-fiduciary.  Id. at 540.  Instead, Walsh shares liability for the

21   benefit conferred upon Mays, as well as the losses incurred by the County. Mattel tried to
    distinguish the MGA Parties' cases on the grounds that they do not expressly forbid disgorgement

22   of the abettor's profits.  (Opp'n at 13 n.38.)  However, these cases are clear that the measure of
    damages is the fiduciary's profits.  People v. Bestline Prods., Inc., 61 Cal. App. 3d 879, 919 (1976).

23   Mattel claims that the MGA Parties conceded this issue by proposing a counter-instruction on
    disgorgement.  (Opp'n at 12 n. 36.)  However, the MGA Parties objected at length to a

24   disgorgement instruction.  (Mattel Prop. Phase 1b Jury Inst., Obj., & Resp. (Dkt 4163) at 131-137.)

25   [9]   The MGA Parties' mention of the absolute maximum award conceivable in their closing (Tr.
    8236:23-8237:19) does not relieve Mattel of its duty to present evidence in support of its claim.

26   [10]   Mattel claims the jury was instructed "it must find such actual knowledge to find liability"
    (Opp'n at 13-14). Over MGA's objections, "actual knowledge" was not defined and the jury was

27   told only to determine whether "MGA and/or Mr. Larian knew that Mr. Bryant's conduct
    constituted a breach of duty or duties." (Tr. 4678: 1-8; Phase 1a Jury Inst. No. 25.)

28   [11]   Mattel claims, without authority, that it is sufficient that MGA knew Bryant had a contract
    with Mattel, but does not explain how knowledge of existence of Bryant's contract establishes
    *(cont'd)*

1 contractual obligations because it is "industry practice" for employees to sign "inventions

2 and confidentiality agreements"[12]; Garcia signed such an agreement with Mattel knowing

3 "that all Mattel employees were required to sign"; and Bryant told MGA he had an

4 Inventions Agreement with Mattel (but never provided it to MGA). (Opp'n at 14-15.) But

5 this evidence does not show actual knowledge of any duty. (Mot. at 14 (jury heard only

6 Garcia's understanding of Mattel ownership of employee ideas and duty of loyalty, not that

7 she "knew" she or any Mattel employees owed Mattel a fiduciary duty), 15 (no evidence

8 MGA's employees owed a fiduciary duty.)  Mattel's speculation that MGA and Larian had

9 "guilty knowledge" of Bryant's conduct does not constitute evidence of "actual knowledge"

10 of Bryant's contractual duties and his breach.  (MGA JMOL Opp'n (Dkt 4685) at 5-6.)

11 MGA showed that California law requires an aiding and abetting plaintiff to

12 concretely demonstrate the "defendant's actual knowledge of the specific breach of

13 fiduciary duty for which it seeks to hold the defendant liable."  (Mot. at 17, citing Casey v.

14 U.S. Bank Nat'l Ass'n, 127 Cal. App. 4th 1138, 1152-53 (2005) (rejecting allegations of

15 knowledge of fiduciary's "wrongful conduct", even specifically described, as failing to

16 establish actual knowledge).)  Mattel ignores Casey, insisting it can establish actual

17 knowledge via its "circumstantial evidence" (Opp'n at 14), but its cases do not support that

18 contention.[13]  Indeed, Mattel is reduced to mischaracterizing decisions determining whether

19

_____
*(cont'd from previous page)*

20 actual knowledge of its contractual provisions, as required here.  (Opp'n at 16.)

[12]   Although challenged to do so, Mattel did not show that it was standard industry practice for
21 employees to contractually undertake a fiduciary duty, nor could it since California courts have
22 rejected imposition of a fiduciary duty on employees to their employer. (Mot. at 12 n.11.)

[13]   Mattel's description of In re First Alliance Mortg. Co., 471 F.3d 977 (9th Cir. 2006), is
23 misleading, given that the Ninth Circuit embraced the Casey court's standard "requir[ing] more
than a vague suspicion of wrongdoing" or that "something fishy was going on", but denying a post-
24 verdict JMOL where the jury heard evidence that the aider and abettor of a fraud investigated the
fraudulent conduct and its officers reviewed "reports that detailed the fraudulent practices in which
25 [fraudster] was engaged" and documented their concerns.  Id. at 993-94.  In Scarff v. Wells Fargo
Bank, N.A., 2005 WL 3454136, at *6 (N.D. Cal. Dec. 16, 2005), there was sufficient evidence to
26 deny summary judgment on an aiding and abetting fraud claim because witnesses admitted forging
and falsely witnessing signatures on loan documents and lying about gifts from the fraudster.  Id. at
27 *6.  Although Mattel claims this evidence is "far more attenuated than that presented by Mattel"
(Opp'n at 16), in fact the evidence heard in First Alliance and Scarff provided a very direct link to
28 actual knowledge, contrasting starkly with Mattel's failure to prove actual knowledge here.

actual knowledge was sufficiently pled to survive a motion to dismiss as instances where courts "found" actual knowledge.[14]   Mattel lacks facts or law to claim a jury could find MGA and Larian actually knew Bryant had and breached a fiduciary duty to Mattel.

## IV. MATTEL REVERSES ITS CONCESSION TO THIS CLAIM YET CANNOT SHOW MGA HK IS LIABLE FOR UNFAIR COMPETITION

Mattel did not oppose MGA HK's motion for judgment as a matter of law on the unfair competition claim in Phase 1a.  (See Mattel Opp'n to MGA 1a JMOL (Dkt 4092) at 5 n.15.)  Despite its formal concession that there is no evidence sufficient to find MGA HK liable for unfair competition, Mattel now argues that a jury could find MGA HK tortiously interfered with Bryant's contract, thus unfairly competing with Mattel (Opp'n at 17). Mattel cannot undo its prior concession. "[F]actual stipulations in a trial brief may be treated as 'judicial admissions.' Such admissions, which 'have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact,' are binding on both the parties and the court[.]" U.S. v. Davis, 332 F.3d 1163, 1168 (9th Cir. 2003) (emphasis added); Gospel Missions of Am. v. City of Los Angeles, 328 F.3d 548, 557 (9th Cir. 2003) (courts "have discretion to consider a statement made in briefs to be a judicial admission, binding on both this court and the trial court"); Barnett v. County of Contra Costa,  2007 WL 196678, at *3 (N.D. Cal. Jan. 24, 2007).  This Court should bind Mattel to its prior concession that MGA HK is not liable and disregard Mattel's new arguments here.

The impropriety of Mattel's newfound opposition aside, Mattel cannot show that the jury would have found MGA HK liable for tortious interference had MGA HK even been a

---

[14]   Id. at 16 (citing Gonzales v. Lloyds TSB Bank, PLC, 532 F.Supp.2d 1200, 1206 (C.D. Cal. 2006) (knowledge element adequately pled to survive motion to dismiss); Silicon Image, Inc. v. Analogix Semiconductor, Inc., 2007 WL 1455903, at *4 (N.D. Cal. May 16, 2007) (distinguished at Mot. at 15-16).)  Tellingly, Mattel cites Neilson v. Union Bank of Cal., N.A., 290 F.Supp.2d 1101, 1120 (C.D. Cal. 2003), which required the plaintiff plead that "defendants had actual knowledge of a specific primary violation"—something Mattel cannot show here.  Mattel's other authority is similarly unavailing.  See Resolution Trust Corp. v. Rowe, 1993 WL 183512, at *5 (N.D. Cal. Feb. 8, 1993) (granting summary judgment on aiding and abetting claim where plaintiff offered no "testimony or direct evidence" to establish actual knowledge, rejecting plaintiff's circumstantial evidence); Sebastian Int'l Inc. v. Russolillo, 162 F. Supp. 2d 1198, 1203 (C.D. Cal. 2001) (standard applied by court to tortious interference claim did not require showing of actual knowledge)); Wyatt v. Union Mortg. Co., 24 Cal.3d 773, 784-85 (1979) (same, civil conspiracy).

defendant in that claim – and it was not (see Mot. at 18).  To show intentional interference with contractual relations, Mattel needed to prove, inter alia, MGA HK's knowledge of the contract and its intentional acts designed to induce a breach or disruption of the contractual relationship.  Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 461 F. Supp. 2d 1188, 1193 (C.D. Cal. 2006), aff'd 525 F.3d 822 (9th Cir. 2008).[15]  Mattel's belated evidence does not show MGA HK was even aware of Bryant's contract with Mattel, let alone acted to induce him to breach it.  Mattel contends "MGA HK knew that Bryant designed Bratz and was working with MGA… while he was still employed by Mattel" (Opp'n at 17) based solely on a Garcia email to MGA HK employees stating that "Carter (our designer on BRATZ) already sought information on this hair."  (See Proctor Decl. Ex. 23 (TX 1765).)[16]  Since only Bryant's Hotmail address is listed, it is unclear how this email informed MGA HK Bryant had a contract (or indeed, any association at all) with Mattel.  (Id.)  Failing utterly to show knowledge, Mattel likewise offers no evidence that MGA HK intentionally acted to induce Bryant to breach his Mattel contract.[17]  Nor could it, given that Mattel's only evidence "informing" MGA HK that Bryant even existed was sent two weeks after Bryant signed his contract with MGA and gave notice at Mattel – thus any "interference" with his Mattel contract had already concluded.  (Id. (dated October 19, 2000); Tr. 2446:21-22 & 2564:10-12 (Bryant signed MGA agreement and gave notice to Mattel on October 4, 2000).)  There is no way a jury could find tortious interference against

[15]     The elements for a cause of action for tortious interference are discussed at length in prior briefing.  (See MGA MSJ (Dkt 2572) at 44-49; MGA MSJ Reply (Dkt 2934) at 25-28.)

[16]     Mattel's argument that the appearance of that "3%" next to "Royalty Rate" on a product worksheet (see Proctor Decl. Ex. 22 (TX 923)) "informed MGA HK that Bryant would receive a 3% royalty on Bratz" (Opp'n at 17 n.60) is puzzling, given that Bryant's name is absent. And how this royalty rate information somehow conveyed to MGA HK that Bryant had a contract with Mattel, or, in passively receiving this form, MGA HK induced Bryant to breach his contract, remains a mystery -- especially since the form is dated 12 days after Bryant signed his contract with MGA. (Tr. 2446:21-22, 2564:10-12.)  Likewise, Bryant is not even mentioned in Mattel's evidence that MGA's Paula Garcia sent some of Bryant's drawings and various samples to MGA HK as "basic information" to start the project. (Opp'n at 16-17 nn. 58-59; Tr. 847:2-16.)

[17]     Mattel also casually suggests MGA HK could be found liable for unfair competition based on Larian's "complete control" over MGA HK (Opp'n at 17), lamely demonstrated by one email complaining about a Hong Kong product manager's inexperience. (Proctor Decl. Ex. 24 (TX 11277).)  Mattel cites neither evidence or legal authority in support of this novel agency theory, and certainly presented none to the jury, so it should be disregarded.

1  MGA HK here (and they were not asked to); thus, there is no predicate to find MGA HK

2  liable for unfair competition.

3  **V.   MATTEL MAY NOT BASE CLAIMS ON RIGHTS TO THE BRATZ NAME**

4        Unable to counter the merits of the arguments that the Bratz name is not subject to

5  property rights either under Inventions Agreement or under California law, Mattel claims

6  the MGA Parties waived those arguments. (Opp'n at 17-21.)  They did not.  In their Phase

7  1b JMOL, the MGA Parties moved for JMOL that "the jury's Phase 1a finding that Bryant

8  conceived of the name 'Bratz' while at Mattel may not serve as the basis of its copyright or

9  state law claims."  (MGA Phase 1b JMOL at 9.)  The MGA Parties explained that, as the

10 name was not copyrightable, it was not susceptible to protection under any intellectual

11 property laws and could not serve as the basis for any claim.  (Id. at 8-9.)  In their Renewed

12 JMOL, the MGA Parties have simply explained why in greater detail.  (Mot. at 18-21.)

13       In asserting that ideas are subject to the Inventions Agreement, Mattel merely

14 reiterates the language of the Inventions Agreement and cites to the Court's summary

15 judgment order.  (Opp'n at 18-19.)  Yet, as the MGA Parties pointed out, neither the plain

16 language nor the Court's order on the Inventions Agreement support their view, as the Court

17 found that "[a]ssuming copyrightability," the Bratz drawing fell within its scope.  (4/25

18 Order at 4.)[18]  Moreover, Mattel completely ignores the MGA Parties' argument that, even

19 if the contract applied to ideas, "[u]nlike a copyright, a contract creates no monopoly …

20 Any person not a party to the contract is free to use the idea without restriction."  Chandler

21 v. Roach, 156 Cal. App. 2d 435, 441 (1957); Jonathan Browning Inc. v. Venetian Casino

22 Resort, 2007 WL 4532214, at *8 (N.D. Cal. Dec. 19, 2007) (a contract "does not withdraw

23 the idea from general circulation."); Desny v. Wilder, 46 Cal. 2d 715, 733 (1956) ("an idea

24 is not property subject to exclusive ownership").  Because the Bratz name is not subject to

25 any form of intellectual property rights, it cannot form the basis for Mattel's claims.[19]

26 [18]     Mattel's reference to the Proprietary Information Check Out offers no comfort, as it was not

27 even provided to the employees at the same time as the Inventions Agreement.  It was, as its name suggest, a document given to Bryant when he departed from Mattel.  (See TX 25, 27; Tr. 2767: 2-5

28 (Bryant executed TX 27 "around October 19th of 2000; that is, the last day [he was] at Mattel").)
[19]     As noted above, Bryant's disclosure of the Bratz name cannot form the basis of any claim
*(cont'd)*

## VI.   MATTEL OFFERS NO FURTHER EVIDENCE TO SHOW INFRINGEMENT IN LATER GENERATION DOLLS OR OTHER LINES

The MGA Parties already showed that a reasonable jury could not (and did not) find the later generation dolls or other product lines infringed.  (Mot. at 21.)  In response, Mattel refers to its Motion for JMOL for its "overwhelming evidence introduced at trial establishing that all the Bratz dolls infringe[.]"  (Opp'n at 21.) The MGA Parties refuted that "evidence" in their Opposition to that JMOL. (See Mot. at 13-17.)

## VII.   BRYANT IS, AT MOST, A JOINT AUTHOR OF TX 1136A

### A.   The Jury Did Not Find Bryant Was An "Author" of TX 1136A

Mattel's argument that "[a]uthorship [of TX 1136A] did not come up as a result of Phase 1(a); it was decided by it" (Opp'n at 22) is yet another example of Mattel conflating ownership of a copyright with ownership of a tangible item in which that copyright is fixed. See 17 U.S.C. §101; Patry on Copyright §5:97.  Mattel offers this self-created ambiguity to wrongly state that the jury has already "found that Bryant was the author of TX 1136A," and thus a ruling in MGA's favor would be "contrary to the Phase 1(a) verdict." (Id.)  The MGA Parties have repeatedly argued that the Phase 1a verdict could not address ownership of the copyright in TX 1136A because the jury only found that Bryant "created" the work "alone or jointly with others." (See Phase 1a Verdict (Dkt 4125) No. 4.) The Court itself reiterated several times that Phase 1a only determined issues of "timing," not any issues of "copyright ownership."   (Mot. at 22 n.17.) As the verdict paralleled the Inventions Agreement by defining "created" as "conceived or reduced to practice," the jury could have found that Bryant only "conceived" of TX 1136A during his tenure at Mattel. [20]  Mattel claims "conceived" means "to form a notion or idea of" (Opp'n at 18), but it is a fundamental tenet of copyright law that ideas are not copyrightable.  Feist Publ'ns, Inc. v.

---

*(cont'd from previous page)*

because such a claim would be preempted by CUTSA.  In failing to respond to the MGA Parties' arguments and rather focusing on this duty not to disclose (Opp'n at 19-21), Mattel merely shows that its claims as to the name are in fact no more than thinly veiled trade secret claims.

[20]   Because "[a] composition of matter is reduced to practice when it is completely composed," Pfaff v. Wells Elec., Inc., 525 U.S. 55, 57 (1998) (emphasis added), Bryant clearly did not reduce TX 1136A to practice during his tenure at Mattel.

1  Rural Tel. Serv. Co., Inc., 499 U.S. 340, 353 (1991).   Thus, if the jury found only

2  conception, it could not affect copyright authorship of the sculpt.

### B.   Mattel Has Not Proven That Bryant Is An Author Of TX 1136A

4         The MGA Parties' Motion showed that Mattel had the burden to prove ownership of

5  the copyrights at issue in this case; it was not their burden to prove the lack thereof.   Mattel

6  has not demonstrated sufficient facts for a reasonable juror to find that Bryant was an author

7  — much less the sole author — of TX 1136A.[21]   "As a general rule, the author is the party

8  who actually creates the work, that is, the person who translates an idea into a fixed,

9  tangible expression entitled to copyright protection."   CCNV v. Reid, 490 U.S. 730, 737

10  (1989) (emphasis added).   Although mechanical manipulation of tangible materials is not

11  per se required for authorship, Mattel is wrong in arguing that TX 1136A must merely

12  "owe[] its origin to Bryant."   (Opp'n at 22.)   An author who does not fix expression in a

13  tangible medium must exercise a high level of control over its creation to obtain any level of

14  authorship.[22]   Bryant did not.   Leahy was the "mastermind" who exercised control over the

15  sculpt, while Bryant contributed no more than a general vision and a few suggestions Leahy

16  was not bound to follow.[23]   Mattel does not point to any "independently copyrightable

17  contribution" made by Bryant, which, Mattel admits, is required from each author of a joint

---

19  [21]      Mattel's waiver arguments miss the mark.   The issue of authorship was not waived because
20  authorship is not an affirmative defense, but rather Mattel's burden to prove.   (Mot. at 23 n.18.).
   Mattel is also incorrect in arguing that MGA did not raise the issue at trial (Opp'n at 21), because
   MGA's Trial Brief Re: TX 1136A (Dkt 4241) specifically addressed both sole and joint authorship.
21  [22]      For example, in Andrien v. S. Ocean County Chamber of Commerce, the court found that
   the plaintiff was an author despite hiring a printing company to transform his map into the final
22  product because the plaintiff showed that the maps were made by the printer "with me at her elbow
   practically" and that he spent time each day at the print shop, directing the map's preparation in
23  specific detail.   927 F.2d 132, 133-35 (3d Cir. 1991).   Similarly, in Lindsay v. RMS Titanic, the
   court held that a film director who did not actually operate the cameras filming the Titanic
24  wreckage could be an author of the resulting film because he created storyboards detailing camera
   angles and sequences, held daily meetings to provide "detailed instructions for positioning and
25  utilizing the light towers," and "screened the footage at the end of each day to confirm that he had
   obtained the images he wanted."   1999 WL 816163 at *5 (S.D.N.Y. Oct. 13, 1999).
26  [23]      Accord Geshwind v. Garrick, 734 F. Supp. 644, 650 (S.D.N.Y. 1990) (plaintiff special
   effects producer held not to be an "author" of an animated production because he made only
27  minimal contributions to the final product and had only some, if any, of his "suggestions"
   incorporated into the final product); Lindsay, 1999 WL 816163 at *6 (distinguishing plaintiff's
28  "contributions" from mere "suggestions" which would not entitle him to authorship).

1 work.  (Opp'n at 24, quoting <u>Aalmuhammed v. Lee</u>, 202 F.3d 1227, 1234 (9th Cir. 2000).)

2 Mattel downplays Leahy's contributions to TX 1136A, asserting that Leahy

3 incorporated "creative comments she received from Bryant on the sculpt," (Opp'n at 23)

4 only offering evidence of a Bryant suggestion <u>rejected</u> by Leahy. (Tr. 4159:8-18.)[24]  Leahy

5 testified she did not use Bryant's drawings as anything more than an idea to "take it and run

6 with it."  (Tr. 4131:7-10, 6839:18-6842:8, 6852:24-6853:6, 6872:21-6873:19, 6930:5-12.)

7 At a minimum, applying the <u>Aalmuhammed</u> factors, Leahy is a joint author of TX 1136A.[25]

8 Leahy had more control than Bryant, and <u>MGA</u> had ultimate control over the sculpt.  (Tr.

9 4129:2-4, 4310:25-4311:1, 4154:12-13.)   Both confirmed they intended Leahy to be an

10 author.[26]  The MGA Parties are thus entitled to JMOL that Bryant was not a sole author.

## CONCLUSION

12 For the foregoing reasons, the MGA Parties respectfully request that their renewed

13 motion for judgment as a matter of law be granted.

14 DATED:  January 19, 2009          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

15                                  By:  _____/s/ Thomas J. Nolan_____

16                                       Thomas J. Nolan
                                         Attorneys for the MGA Parties

---

17 [24]  Mattel's argument that Leahy's contributions were "functional" is unsupported by the record.  Although Leahy had to create a producible object, this does not diminish her creative
18 contributions, nor make her "primary" role that of a "manufacturer."  Tellingly, Mattel cites numerous instances where Leahy chose <u>not</u> to follow Bryant's suggestions (Opp'n at 23 n.94 (Tr.
19 4262:16-4263:2, 4159:8-15)), rendering Mattel's conjecture that "any of Leahy's contributions … were subject to [Bryant's] approval … is baseless (<u>id.</u> at 24 n.95).  Other Mattel evidence is simply
20 irrelevant to authorship. (<u>Id.</u> at 23 (Leahy had "never sculpted a doll body from start to finish").)
21 [25]  Mattel misunderstands the relevance of an "unauthorized derivative work." (Opp'n at 25 n.97.)  Although it is true that Leahy (or MGA) would not have copyright protection in TX 1136A
22 if it were a derivative work, Mattel could likewise have <u>no</u> copyright in the sculpt, because the "original copyright owner is not the author" of new material added by others.  <u>Patry on Copyright</u> §
23 12:22 (2008) (the notion that "the original copyright owner obtains copyright in an unauthorized derivative work as a result of infringement finding … is erroneous."); <u>Anderson v. Stallone</u>, 1989
24 WL 206431 at *8 (C.D. Cal. Apr. 25, 1989) ("since [defendant's work] is an unauthorized derivative work, no part of the treatment can be granted copyright protection").  Although the
25 Court expressed concern with Patry's language that "the original copyright owner can control <u>exploitation</u> of the infringing nonseparable material," (Tr. 6881:7-23), Patry was referring only to
26 <u>distributing</u> the infringing material, not copying or adapting the work. <u>Patry on Copyright</u> § 12:22
27 (2008).  Mattel cannot base any suit on TX 1136A because "if there is nonseparable material in the unauthorized derivative work, the original copyright owner has no business using it." <u>Id.</u>
28 [26]  Bryant <u>told</u> Leahy that "I'm not a sculptor; here's the drawing … put your own spin on it" (Tr. 2567:5-7); and Leahy said she understood that it was hers to "run with." (Tr. 4131:7-10.)