1    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
       John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
       Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
       Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5    Los Angeles, California  90017-2543
     Telephone:  (213) 443-3000
6    Facsimile:  (213) 443-3100

7    Attorneys for Mattel, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                          EASTERN DIVISION

| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| 13          Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 14          vs. | **DECLARATION OF B. DYLAN** |
| 15  MATTEL, INC., a Delaware<br>corporation, | **PROCTOR IN SUPPORT OF**<br>**MATTEL, INC.'S MOTION FOR**<br>**JUDGMENT AS A MATTER OF** |
| 16          Defendant. | **LAW** |
| 17 | |
| 18 | |
| 19  AND CONSOLIDATED ACTIONS | Hearing Date:     February 11, 2009<br>Time:             10:00 a.m.<br>Place:            Courtroom 1 |
| 20 | |
| 21 | **Phase 1C** |
| 22 | |

23

24

25

26

27

28

1

2

3

## DECLARATION OF B. DYLAN PROCTOR

I, B. Dylan Proctor, declare as follows:

1.      I am a member of the bar of the State of California, and am a partner with Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc.  I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently hereto.

2.      Attached as Exhibit 1 hereto is a true and correct copy of MGA Parties' Ex Parte Application and Motion For Stay Pending Appeal [Redacted Version], dated December 9, 2008.

3.      Attached as Exhibit 2 hereto is a true and correct copy of MGA Parties' Emergency Motion For Stay Pending Appeal [Redacted Version], dated December 19, 2008.

4.      Attached as Exhibit 3 hereto is a true and correct copy of the Court's Order Granting Mattel's Motion for Permanent Injunction, dated December 3, 2008.

5.      Attached as Exhibit 4 hereto is a true and correct copy of the Court's Phase B Jury Instructions As Given, No. 29, dated August 20, 2008.

6.      Attached as Exhibit 5 hereto is a true and correct copy of an excerpt of MGA Parties' Responses to Mattel's Objections to MGA Parties' Revised Disputed [Proposed] Phase 1B Jury Instructions, dated July 29, 2008.

7.      Attached as Exhibit 6 hereto is a true and correct copy of an excerpt of MGA's Second Supplemental Responses to Mattel, Inc.'s Revised Third Set of Interrogatories, dated January 7, 2008.

8.      Attached as Exhibit 7 hereto is a true and correct copy of MGA's Third Supplemental Responses to Mattel, Inc.'s Amended Fourth Set of Interrogatories, dated January 28, 2008.

-1-

1        9.     Attached as Exhibit 8 hereto is a true and correct copy of the

2   Court's Further and Final Order Regarding Statute of Limitations Defense, dated

3   June 2, 2008.

4

5        I declare under penalty of perjury under the laws of the United States of

6   America that the foregoing is true and correct.

7

8        Executed on January 19, 2009, at Los Angeles, California.

9

10                                      /s/ B. Dylan Proctor
                                        B. Dylan Proctor
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
3 | LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
(laguiar@skadden.com)
4 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
5 | Los Angeles, CA 90071-3144
Tel.: (213) 687-5000
6 | Fax: (213) 687-5600

7 | Attorneys for The MGA Parties

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11 | CARTER BRYANT, an individual,

12 | Plaintiff,

13 | v.

14 | MATTEL, INC., a Delaware corporation,

15 | Defendant.

16 | AND CONSOLIDATED ACTIONS.

| CASE NO. CV 04-9049 SGL (RNBx) |
| Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| Honorable Stephen G. Larson |

**MGA PARTIES' *EX PARTE* APPLICATION AND MOTION FOR STAY PENDING APPEAL; and**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;**

**FILED UNDER SEPARATE COVER:**

(1)   DECLARATION OF JASON D. RUSSELL IN SUPPORT THEREOF;

(2)   DECLARATION OF RAOUL D. KENNEDY IN SUPPORT THEREOF;

(3)   DECLARATION OF BRIAN WING IN SUPPORT THEREOF [under seal];

(4)   COMPENDIUM OF THIRD-PARTY DECLARATIONS IN SUPPORT THEREOF [under seal]; and

(5)   [PROPOSED] ORDERS [lodged under separate cover].

Hearing Date: TBD
Time: TBD

20 | **CONFIDENTIAL – ATTORNEY'S EYES ONLY –**

22 | **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

EXHIBIT ___1___

PAGE ___3___

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2  **PLEASE TAKE NOTICE** that, pursuant to Local Rule 7-19, counter-defendants

3  MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and Isaac Larian

4  (collectively, the "MGA Parties"), respectfully submit this *ex parte* application seeking

5  relief from the five-day requirement of Local Rule 7-3 and an expedited hearing on the

6  MGA Parties' Motion For Stay Pending Appeal, and hereby move for entry by no later than

7  December 31, 2008 of a stay pending appeal of this Court's December 3, 2008 orders (the

8  Order Granting Mattel, Inc.'s Motion for Permanent Injunction, the Order Granting Mattel,

9  Inc.'s Motion for Declaratory Judgment; and the Order Granting Mattel, Inc.'s Motion for

10  Constructive Trust and For Finding Liability and Injunctive Relief Pursuant to Cal. Bus. &

11  Prof. Code § 17200) pursuant to Federal Rule of Civil Procedure 62(c).

12  The MGA Parties seek immediate consideration of their request for immediate entry

13  of a stay of the orders issued by this Court on December 3, 2008 pending appeal, on the

14  grounds that the MGA Parties will suffer irreparable harm if a stay pending appeal is not put

15  in place before December 31, 2008, and because a stay is appropriate under Federal Rule of

16  Civil Procedure 62(c) in light of the irreparable harm to the MGA Parties absent a stay and

17  the substantial legal questions implicated by the Orders. The urgency of this request is

18  unavoidable in light of the scope of the injunctive relief granted. Thus, the MGA Parties

19  respectfully request that this matter be heard as soon as possible.

20  This Application and Motion is based on this notice, the accompanying memorandum

21  of points and authorities, the concurrently filed declarations, and all other pleadings and

22  papers on file with the Court in this action.

23  **Statement of Compliance with Local Rule 7-19**

24  Counsel for Mattel, Inc. include Michael Zeller, Jon Corey, and B. Dylan Proctor of

25  Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP (telephone: 213-443-3000; address: 865

26  South Figueroa Street, 10th Floor, Los Angeles, CA 90017).

27  Pursuant to Local Rule 7-19.1, counsel for the MGA Parties gave notice of this

28  Application to counsel for Mattel by leaving a telephone message for counsel for Mattel, Inc.

EXHIBIT _____ **I**

PAGE _____ **4**

1  on December 8, 2008. (See Declaration of Jason D. Russell dated December 11, 2008 ¶ 2.)

2  Counsel for the MGA Parties followed up this call with a detailed conversation with counsel

3  for Mattel, which occurred on December 10, 2008. (Id. ¶ 3.) Counsel for Mattel indicated

4  that Mattel would oppose the Application. (Id.)

5  DATED: December 11 , 2008        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

6

7                                  By: _____/s/ Thomas J. Nolan_____
                                                   Thomas J. Nolan
8                                               Attorneys for the MGA Parties

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' *Ex Parte* Application And Motion To Stay Pending Appeal - Case No. CV 04-9049 SGL (RNBx)

EXHIBIT _____1_____

PAGE _____5_____

# TABLE OF CONTENTS

PAGE:

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT............................................................................................ 1

ARGUMENT ........................................................................................................................ 2

I.     STANDARDS FOR GRANTING A STAY PENDING APPEAL ..................... 2

II.    THE EQUITIES WEIGH OVERWHELMINGLY IN SUPPORT OF STAYING THE COURT'S DECEMBER 3 ORDERS PENDING APPEAL .................................................................................................................. 4

       A.      [REDACTED]
                                                                                    ....... 4

       B.      Mattel Cannot Show It Will Be Equally Harmed By A Stay ................... 7

III.   THE PUBLIC INTEREST FAVORS A STAY ................................................... 8

IV.    MGA'S APPEAL RAISES SUBSTANTIAL QUESTIONS OF LAW ........... 10

       A.      Substantial Legal Issues Arise From The Permanent Injunction Order.................................................................................................... 11

               1.      The Court's Decision To Set Aside The Jury's Findings To Enjoin MGA's Sale Of Bratz Dolls Presents A Substantial Legal Question ................................................................. 11

               2.      The Irreparable Injury Finding Presents A Substantial Legal Issue ...................................................................................... 13

               3.      Rejecting An Ongoing Royalty Presents A Substantial Legal Issue ...................................................................................... 14

               4.      The Breadth Of The Order Raises Substantial Issues ................. 15

               5.      Consideration Of Mattel's New Evidence In Post-Trial Submissions While Fashioning Injunctive Relief Presents A Serious Legal Issue ..................................................................... 16

       B.      Substantial Legal Issues Arise From The Constructive Trust Order...... 16

       C.      Substantial Legal Issues Arise From The Declaratory Relief Order ...... 19

       D.      Substantial Legal Issues Arise From The Court's Underlying Rulings ................................................................................................. 19

               1.      The Court's Substantive Pretrial Rulings Are Implicated By The Orders And Present Substantial Questions Of Law .............. 19

               2.      The Court's Rulings During Trial Are Implicated By The Orders And Present Substantial Questions Of Law ..................... 23

i.

EXHIBIT _____ 1

PAGE _____ 6

1    CONCLUSION ........................................................................................................... 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

EXHIBIT _____ 1

PAGE _____ 7

# TABLE OF AUTHORITIES

Aalmuhammed v. Lee,
  202 F.3d 1227, 1232 (9th Cir. 2000) .......................................................... 24

A.G. Design & Associates, LLC v. Trainman Lantern Co.,
  NO. C07-5158BHS
  2007 WL 2273676 (W.D. Wash. Aug. 7, 2007) .......................................... 3

Abend v. MCA, Inc.,
  863 F.2d 1465 (9th Cir. 1988), aff'd, 495 U.S. 207 (1990) ...................... 14

Advanced Medical Optics, Inc. v. Alcon Laboratories, Inc.,
  NO. CIV. A. 03-1095-KAJ
  2005 WL 3454283 (D. Del. Dec. 16, 2005) .............................................. 3, 7

Aliotti v. R. Dakin & Co.,
  831 F.2d 898 (9th Cir. 1987) ...................................................................... 22

Arvelo v. American International Insurance Co.,
  875 F. Supp. 95 (D.P.R. 1995) .................................................................... 17

Azurin v. Von Raab,
  792 F.2d 914 (9th Cir. 1986) ...................................................................... 10

BR Associates, Inc. v. LaFramboise,
  NO. 06-11870-BC,
  2007 WL 1840031 (E.D. Mich. June 26, 2007) .......................................... 9

Bancroft-Whitney Co. v. Glen,
  64 Cal. 2d 327, 411 P. 2d 921 (1966) ........................................................ 21

Barbara A v. John G.,
  145 Cal. App. 3d 369, 383 (1983) .............................................................. 21

Bennigan's Franchising Co., L.P. v. Swigonski,
  NO. CIVA 3: 06CV2300G,
  2007 WL 603370 (N.D. Tex. Feb. 27, 2007) .............................................. 9

Bertram Music Co. v. Yeager Holdings of California, Inc.,
  NO. CIV S07-1766 LEW OOH
  2008 WL 2055480 (E.D. Cal. 2008) ......................................................... 14

Bristow v. Lycoming Engines,
  NO. CIVS061947LKKGGH
  2008 WL 2561105 (E.D. Cal. June 24, 2008) ............................................. 3

Brookfield Communications, Inc. v. West Coast Entertainment Corp.,
  174 F.3d 1036 (9th Cir. 1999) .................................................................... 16

Buckland v. Threshold Enterprises, Ltd.,
  155 Cal. App. 4th 798, 66 Cal. Reporter 3d 543 (2007) ............................. 17

Cadence Design Systems, Inc. v. Avant! Corp.,
  125 F.3d 824 (9th Cir. 1997) .................................................................. 7, 8

iii

1  Cargill, Inc. v. Sears Petroleum & Transport Corp.,
2       NO. 5:03CV 0530 (DEP)
        2004 WL 3507329 (N.D.N.Y. Aug. 27, 2004)................................................ 4

3  Christopher Phelps & Associates, LLC v. Galloway,
4       492 F.3d 532 (4th Cir. 2007) ........................................................... 13

   City of Hope National Medical Center. v. Genentech, Inc.,
5       43 Cal. 4th 375, 181 P. 3d 142 (2008)........................................ 12, 20, 21

6  Conversive, Inc. v. Conversagent, Inc.,
7       433 F. Supp. 2d 1079 (C.D. Cal. 2006)........................................... 16

   Convolve, Inc. v. Compaq Computer Corp.,
8       2006 WL 839022 (S.D.N.Y. Mar. 31, 2006) ................................... 18

9  Cortez v. Purolator Air Filtration Products Co.,
10      23 Cal. 4th 163, 999 P. 2d 706 (2000)........................................... 17

   Cosmos Jewelry v. Po Sun Hon Co.,
11      470 F. Supp. 2d 1072 (C.D. Cal. 2006)........................................... 23

12 Costco Wholesale Corp. v. Hoen,
        NO. C04-360P
13      2006 WL 2645183 (W.D. Wash. Sept. 14, 2006) ........................... 10

14 Danjaq LLC v. Sony Corp.,
15      263 F.3d 942 (9th Cir. 2001) ........................................................ 16

   Daro v. Superior Court,
16      151 Cal. App. 4th 1079, 61 Cal. Reporter 3d 716 (2007) ................ 18

17 Davila v. County of San Joaquin,
        NO. CIV S06-2691LKK/EFB
18      2008 WL 4426669 (E.D. Cal. Sept. 26, 2008) ........................... 3, 10

19 Designer Skin, LLC v. S&L Vitamins, Inc.,
20      2008 WL 4174882 (D. Ariz. Sept. 5, 2008) ................................... 14

   Digital Envoy, Inc. v. Google, Inc.,
21      370 F. Supp. 2d 1025 (N.D. Cal. 2005)........................................... 18

22 Dyer v. Napier,
        No. CV 04-0408-PHX-SMM,
23      2006 U.S. Dist. LEXIS 68990 (D. Ariz. Sept. 25, 2006) ............... 23

24 E.I. Du Pont de Nemours & Co v. Phillips Petroleum Co.,
25      835 F.2d 277 (Fed. Cir. 1987) ...................................................... 8

   eBay, Inc. v. MercExchange, L.L.C.,
26      547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed 2d 641 (2006) ........... 13, 14

27 Ernest Paper Products Inc. v. Mobil Chemical Co. Inc.,
28      1997 WL 33483520 (C.D. Cal. Dec. 2, 1997)................................. 18

EXHIBIT _____1_____

PAGE _____9_____

Feltner v. Columbia Pictures Television, Inc.
    523 U.S. 340, 118 S. Ct. 1279, 140 L. Ed. 2d 438 (1998) ......................................... 16

Floyd v. Laws,
    929 F.2d 1390 (9th Cir. 1991) ....................................................................................... 13

Friends of Yosemite Valley v. Kempthorne,
    NO. CVF 00-6191 AWI DLB,
    2007 WL 896154 (E.D. Cal. Mar. 22, 2007) .................................................... 2, 10, 11

GTE Products Corp. v. Kennametal, Inc.,
    772 F. Supp. 907 (W.D. Va. 1991) ............................................................................. 7, 8

Georgia-Pacific Corp. v. U.S. Plywood Corp.,
    318 F. Supp. 1116 (1970) .............................................................................................. 15

Goldberg v. Cameron,
    482 F. Supp. 2d 1136 (N.D. Cal. 2007) ....................................................................... 22

Golden Gate Restaurant Association v. City & County of San Francisco,
    512 F.3d 1112 (9th Cir. 2008) ..................................................................................... 2, 4

Gordon Bennett & Associates, Inc. v. Volkswagen of America, Inc.,
    186 U.S.P.Q. 271 (N.D. Cal. 1975) .............................................................................. 17

In re Hayes Microcomputer Products, Inc. Patent Litigation,
    766 F. Supp. 818 (N.D. Cal. 1991) aff'd. 982 F. 2d 1527 (Fed. Cir. 1992) ...... 1, 3, 4, 8

Hilton v. Braunskill,
    481 U.S. 770 (1987) ..................................................................................................... 2, 3

Himebaugh v. Smith,
    476 F. Supp. 502 (C.D. Cal. 1978) ............................................................................... 11

Jazzabi v. Allstate Insurance Co.,
    278 F.3d 979 (9th Cir. 2002) ........................................................................................ 25

Los Angeles Police Protective League v. Gates,
    995 F.2d 1469 (9th Cir. 1993) ................................................................................. 11, 12

Lucky Break Wishbone Corp. v. Sears, Roebuck, & Co.,
    528 F. Supp. 2d 1106 (W.D. Wash. 2007) ................................................................... 22

Madrid v. Perot Systems Corp.,
    130 Cal. App. 4th 440 (2005) ....................................................................................... 17

MercExchange, L.L.C. v. eBay, Inc.,
    500 F. Supp. 2d 556 (E.D.Va. 2007) ............................................................................ 14

Metro Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.
    518 F. Supp. 2d 1197 (C.D. Cal 2007) ......................................................................... 14

Microsoft Corp. v. Nop,
    549 F. Supp. 2d 1233 (E.D. Cal. 2008) ........................................................................ 14

v

EXHIBIT _____1_____

PAGE _____10_____

1 | National Instruments Corp. v. Mathworks, Inc.,
2 |     NO. CIV. A. 2:01-CV-11-TJW
3 |     2003 WL 24049230 (E.D. Tex. June 23, 2003),
      aff'd, 113 Fed Appx 895 (Fed. Cir. 2004) ............................................................ 4

4 | Novartis Pharmaceuticals Corp. v. Teva Pharmaceuticals. USA, Inc.,
5 |     NO. CIVA 05-CV-1887 DMC,
      2007 WL 2669338 (D.N.J. Sept. 6, 2007) .......................................................... 14

6 | Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.,
      575 F.2d 1152 (6th Cir. 1978) ........................................................................... 15

7 | Pass & Seymour, Inc. v. Hubbell, Inc.,
8 |     532 F. Supp. 2d 418 (N.D.N.Y. 2007) ................................................................ 10

9 | Persson v. Smart Inventions, Inc.,
      125 Cal. App. 4th 1141 (2005) ........................................................................... 20

10 | Platt Electrical Supply, Inc. v. EOFF Electric, Inc.,
11 |     522 F.3d 1049 (9th Cir. 2008) ........................................................................... 22

12 | Rice v. Fox Broadcasting Co.,
      330 F.3d 1170 (9th Cir. Cal. 2003) .................................................................... 15

13 | Richelle L. v. Roman Catholic Archbishop of San Francisco,
14 |     106 Cal. App. 4th 257 (2003) ........................................................................... 21

15 | Satava v. Lowry,
      323 F.3d 805 (9th Cir. 2003) ........................................................................ 22, 23

16 | Sengoku Works Ltd. v. RMC International, Ltd.,
17 |     96 F.3d 1217 (9th Cir. 1996) as modified, 97 F. 3d 1460 (9th Cir. 1996) ................. 16

18 | Service & Training, Inc. v. Data General Corp.,
      737 F. Supp. 334 (D. Md. 1990), aff'd, 963 F. 2d 680 (4th Cir. 1992) ....................... 17

19 | Soliman v. Philip Morris Inc.,
20 |     311 F.3d 966 (9th Cir. 2002) ........................................................................... 22

21 | Standard Havens Products, Inc. v. Gencor Industrial, Inc.,
      897 F.2d 511 (Fed. Cir. 1990) ...................................................................... passim

22 | Stanislawski v. Jordan,
23 |     337 F. Supp. 2d 1103 (E.D. Wis. 2004) .............................................................. 23

24 | Star-Kist Foods, Inc. v. P.J. Rhodes & Co.,
      769 F.3d 1393 (9th Cir. 1985) ........................................................................... 15

25 | Subafilms, Ltd. V. MGA-Pathe Communications Co.,
26 |     24 F.3d 1088 (9th Cir. 1994) ........................................................................... 15

27 | Tyler v. Children's Home Society,
      29 Cal. App. 4th 511, 549 (1994) ...................................................................... 21

28 |

1  UMG Recordings, Inc. v. Higareda,
2       NO. 1:08CV00112-AWI-SMS
        2008 WL 3836074 (E.D. Cal. Aug. 14, 2008)................................................. 14
3  United States v. 1020 Electric Gambling Machines,
4       38 F. Supp. 2d 1219 (E.D. Wash. 1999)........................................................ 9
   United States v. Henley,
5       238 F.3d 1111 (9th Cir. 2001) ...................................................................... 25
6  Wang Laboratories, Inc. v. Toshiba Corp.,
7       NO. CIV. A 90-1477-A,
        1991 WL 333701 (E.D. Va. Aug. 23, 1991) ................................................. 8
8  Warner Brothers Entertainment, Inc. v. Carsagno,
9       NO. 06CV 2676NG (RLM)
        2007 WL 1655666 (E.D.N.Y. June 4, 2007)............................................... 14
10 Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,
11      559 F.2d 841 (D.C. Cir. 1977)....................................................................... 4

12                              **STATUTES**

13 Cal. Bus. & Prof. Code § 16600 ........................................................................ 19
14 Cal. Bus. & Prof. Code § 17200 ........................................................................ 18
15 Cal. Bus. & Prof. Code § 17204 ........................................................................ 17
16 Cal. Labor Code § 96(k), 98.6, 2699 & 2870 .................................................. 19
17 Fed. R. Civ. P. 62(c)............................................................................................. 2

18                        **OTHER AUTHORITIES**

19 2 Dan B. Dobbs, Law of Remedies § 6.3(5) (2d ed. 1993) ................................. 8
20 3 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 18:2 (4th
        ed. 2008) .......................................................................................................... 16
21 3 Melvin B. Nimmer, Nimmer on Copyright § 12.10 [A], at 12-14 (May 2000) ................ 16
22 2 William F. Patry, Patry on Copyright § 5:7 (2008) ....................................... 24
23
24
25
26
27
28

EXHIBIT _____ 1

PAGE _____ 12

Case 2:04-cv-09049-DOC-RNB   Document 4709-2   Filed 01/19/09   Page 15 of 70   Page ID
#:139471
Case 2:04-cv-09049-SGL-RNB      Document 4458      Filed 12/11/2008      Page 11 of 35

1

## PRELIMINARY STATEMENT

2      MGA has appealed this Court's orders granting Mattel's motions for permanent

3   injunction, declaratory relief, and constructive trust (the "December 3 Orders"). However,

4   if the December 3 Orders are not stayed pending appeal, the consequences for MGA will be

5   catastrophic. Although this Court stayed the December 3 Orders until February 2009, that

6   interim stay is not sufficient to stave off the irreparable harm to MGA from the threat that

7   the December 3 Orders will be enforced shortly.

8

9

10

11                                        REDACTED

12

13

14

15

16                          (See Compendium of Declarations.)

17      Analyzing the relative hardships, the scale strongly tips in MGA's favor.

18

19                                        REDACTED

20                                  This type of

21   harm has routinely been recognized as sufficient to warrant a stay pending appeal.  (See

22   Section II.A, infra, citing, inter alia Standard Havens Prods., Inc. v. Gencor Indus., Inc., 897

23   F.2d 511, 516 (Fed. Cir. 1990) (granting stay of permanent injunction where a "substantial

24   legal question exists," the harm to defendant absent a stay "would be both catastrophic and

25   irreparable," and "[w]ithout a stay, [defendant] may well cease to exist"); In re Hayes

26   Microcomputer Prods., Inc. Patent Litig., 766 F. Supp. 818, 823 (N.D. Cal. 1991) (granting

27   stay pending appeal where permanent injunction was essentially "a corporate death

28   penalty").)  In stark contrast, Mattel will suffer no harm if the December 3 Orders are not

1

EXHIBIT ___1___

PAGE ___13___

Case 2:04-cv-09049-DOC-RNB  Document 4709-2  Filed 01/19/09  Page 16 of 70  Page ID
#:139472
Case 2:04-cv-09049-SGL-RNB     Document 4458     Filed 12/11/2008     Page 12 of 35

1 | stayed as Mattel has already waited years before even seeking an injunction. (See Section
2 | II.B, infra.) Further favoring a stay, the Court's December 3 Orders will have a lasting and
3 | irrevocable impact on the public, permanently altering the market place. (Section III, infra.)

4 | MGA need not establish that it will prevail on appeal – although MGA believes that it
5 | will – only that there are "serious legal questions" and that the balance of hardships tips
6 | strongly in its favor. (See Sections I and IV, infra, citing Golden Gate Rest. Ass'n v. City &
7 | County of San Francisco, 512 F.3d 1112, 1115 (9th Cir. 2008).) While MGA respectfully
8 | disagrees with the Court's rulings, on one point there can be no real dispute: as the Court
9 | itself has noted in various rulings, this Court's December 3 Orders address a host of serious
10 | and in many instances novel questions that should be considered by the Ninth Circuit
11 | because of the impact of these rulings not only on MGA, but on future parties in copyright
12 | actions. If a stay pending appeal is not afforded to MGA, these serious and novel questions
13 | may never be addressed before the Ninth Circuit          [REDACTED]

14 |

15 |                                    **ARGUMENT**

16 | **I.     STANDARDS FOR GRANTING A STAY PENDING APPEAL**

17 | This Court may grant a stay "[w]hile an appeal is pending from an interlocutory order
18 | or final judgment that grants, dissolves, or denies an injunction[.]" Fed. R. Civ. P. 62(c).
19 | According to the Supreme Court, "the factors regulating the issuance of a stay" are: "(1)
20 | whether the stay applicant has made a strong showing that he is likely to succeed on the
21 | merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether
22 | issuance of the stay will substantially injure the other parties interested in the proceeding;
23 | and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776 (1987).
24 | Courts in the Ninth Circuit follow this standard. Golden Gate, 512 F.3d at 1115; Friends of
25 | Yosemite Valley v. Kempthorne, 2007 WL 896154, at *1 (E.D. Cal. Mar. 22, 2007).

26 | In ruling on a motion for a stay pending appeal, the Ninth Circuit employs "'two
27 | interrelated legal tests' that 'represent the outer reaches of a single continuum.'" Golden
28 | Gate, 512 F.3d at 1115. The "irreparably injured" and "likelihood of success" factors are

Case 2:04-cv-09049-DOC-RNB   Document 4709-2   Filed 01/19/09   Page 17 of 70   Page ID
#:139473
Case 2:04-cv-09049-SGL-RNB    Document 4458    Filed 12/11/2008    Page 13 of 35

1   considered on "a sliding scale in which the required degree of irreparable harm increases as
2   the probability of success decreases." Id. at 1116. If the party seeking the stay shows a
3   strong likelihood of success, the <u>mere possibility</u> of irreparable injury absent relief warrants
4   granting a stay. Id. Alternatively, if that party shows that "the balance of hardships tips
5   sharply in its favor," relief is warranted if there are "serious legal questions" on appeal. Id.

6       In <u>Standard Havens</u>, a leading case on stays pending appeal, the Federal Circuit
7   applied <u>Hilton</u>'s four-factor test to a request for stay of a permanent injunction pending
8   appeal in a patent infringement case. 897 F.2d at 512. In granting the stay, the court adopted
9   a "sliding scale approach," holding when "harm to applicant is great enough, a court will
10  not require 'a strong showing' that applicant is 'likely to succeed on the merits.'" Id. at
11  513."Each factor ... need not be given equal weight" and "likelihood of success in the
12  appeal is not a rigid concept." Id. The court granted the stay as "substantial legal question
13  exists," the harm to defendant absent a stay "would be both catastrophic and irreparable,"
14  and "<u>[w]ithout a stay, [defendant] may well cease to exist.</u>" Id. at 516.

15      Courts routinely apply <u>Standard Havens</u> to consider stays of injunctions pending
16  appeal in infringement cases. E.g., <u>In re Hayes</u>, 766 F. Supp. at 822-824 (stay of permanent
17  injunction pending appeal of verdict in willful patent infringement case where, although
18  "doubtful as to the strength of defendants' showing of likely success on appeal," court
19  concluded that likelihood defendants would be "put out of business" posed a "serious risk"
20  of irreparable injury); <u>A.G. Design & Assocs., LLC v. Trainman Lantern Co.</u>, 2007 WL
21  2273676, at *1 (W.D. Wash. Aug. 7, 2007) (stay pending appeal where "substantial legal
22  question" shown); <u>Adv. Med. Optics, Inc. v. Alcon Labs., Inc.</u>, 2005 WL 3454283, at **10-
23  12 (D. Del. Dec. 16, 2005) (staying permanent injunction pending appeal; while defendant
24  "has not made a strong showing of likelihood of success on appeal, it has shown that it has a
25  substantial case" and lost sales and market impact constituted irreparable injury).[1]

---

[1]     Accord <u>Bristow v. Lycoming Engines</u>, 2008 WL 2561105, at *2 (E.D. Cal. June 24, 2008)
(where "balance of hardships tip[ped] sharply in [the movant party's] favor," even though court
could not "conclude that it [was] probable that [the movants] [would] succeed on the merits of their
appeal" staying warranted because "serious legal question" presented); <u>Davila v. County of San
Joaquin</u>, 2008 WL 4426669, at *2 (E.D. Cal. Sept. 26, 2008) (granting motion for stay where "the
*(cont'd)*

MGA Parties' *Ex Parte* Application And Motion To Stay Pending Appeal - Case No. CV 04-9049 SGL (RNBx)

EXHIBIT _____ 1

PAGE _____ 15

Case 2:04-cv-09049-DOC-RNB  Document 4709-2  Filed 01/19/09  Page 18 of 70  Page ID
#:139474
Case 2:04-cv-09049-SGL-RNB    Document 4458    Filed 12/11/2008    Page 14 of 35

1  **II.   THE EQUITIES WEIGH OVERWHELMINGLY IN SUPPORT OF**
2  **STAYING THE COURT'S DECEMBER 3 ORDERS PENDING APPEAL**

3  A.                               REDACTED

4      Because the balance of the hardships tips decidedly in MGA's favor, the December 3

5  Orders should be stayed pending appeal – even if the Court felt that MGA is not likely to

6  prevail on appeal – because in weighing the relevant hardships, courts favor maintaining the

7  status quo pending appeal. Golden Gate, 512 F.3d at 1119 ("if the balance of hardships tips

8  sharply in favor of the party seeking the stay," even a small showing of a likelihood of

9  success on appeal justifies a stay); Cargill, Inc. v. Sears Petroleum & Transp. Corp., 2004

10  WL 3507329, at *12 (N.D.N.Y. Aug. 27, 2004) ("Taking the second and third factors

11  together, I am required to evaluate the relative harm to the parties of either allowing the

12  injunction to be implemented or, instead, granting a stay. This analysis is made against the

13  backdrop of an acknowledged preference for maintaining the status quo pending appeal.").

14      This principle has particular force where, as here, the injunction threatens to

15      REDACTED        See, e.g., Standard Havens, 897 F.2d at 515 (stay granted where

16  company was "likely to suffer irreparable harm in the form of employee layoffs, immediate

17  insolvency, and, possibly, extinction"); In re Hayes, 766 F. Supp. at 823 (stay granted where

18  permanent injunction was essentially "a corporate death penalty"); Wash. Metro. Area

19  Transit Comm'n v. Holiday Tours, Inc., 599 F.2d 841, 843 (D.C. Cir. 1977) (stay pending

20  appeal granted as "harm to [defendant] in the absence of a stay would be its destruction in

21  its current form as a provider of bus tours"). Nat'l Instrums. Corp. v. Mathworks, Inc., 2003

22  WL 24049230, at *6 (E.D. Tex. June 23, 2003) (stay pending appeal given "financial

23  impact and loss of employees that defendant would suffer should a stay not be granted").

24      Here, the balance of the hardships overwhelmingly indicates a stay is appropriate to

25  ensure that    REDACTED    a well-loved line of toys are not destroyed before the

26  Ninth Circuit has an opportunity to review the issues.

27  _____
   *(cont'd from previous page)*

28  defendants ha[d] met their burden" by demonstrating that their appeal "present[ed] at least 'serious
legal questions" in their appeal instead of meeting the higher "probability of success" standard).

EXHIBIT _____ 1

PAGE _____ 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REDACTED

5

EXHIBIT _____ 1

PAGE _____ 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REDACTED

6

EXHIBIT _____ 1 _____

PAGE _____ 18 _____

1
2
3
4
5
6
7
8                                                    REDACTED
9
10
11
12
13
14
15
16
17
18
19

20      **B.**   **Mattel Cannot Show It Will Be Equally Harmed By A Stay**

21          In contrast                         REDACTED                         Mattel will suffer no

22   "irreparable" harm from a stay. MGA acknowledges the Court's conclusion that Mattel will

23   suffer harm based on "past infringement and the high probability of continued acts of

24   infringement." (12/3 Order (Dkt 4439) at 13.) But this "harm" is no different from the

25   inability to exclude others from using the intellectual property, a factor given little weight in

26   the stay context. Advanced Med., 2005 WL 3454283, at *11 ("While [plaintiff] will lose its

27   right to exclusivity pending appeal and may suffer some injury to its reputation as a

28   company that enforces its patent rights, a temporary stay [pending appeal] is not likely to

7

EXHIBIT _____ 1

PAGE _____ 19

1  cause irreparable harm."); GTE Prods., 772 F. Supp. at 920-21 ("the inability to exclude
2  others causes injury in and of itself, however, I find that such injury is not substantial under
3  the present circumstances."). Especially when Mattel waited years to seek an injunction.

4      Furthermore, Mattel does not make any products that utilize the "Bratz" name or the
5  copyrighted works – a fact that weighs heavily against the notion that Mattel will suffer
6  "irreparable" harm while the case is on appeal. See Wang Labs., Inv. v. Toshiba Corp.,
7  1991 WL 333701, at *1 (E.D. Va. Aug. 23, 1991) (citing E.I. Du Pont de Nemours & Co v.
8  Phillips Petroleum Co., 835 F.2d 277, 278 (Fed. Cir. 1987) ("In particular, the Court notes
9  that [plaintiff] does not manufacture the patented invention itself and has not represented
10 that it has attempted to exclude others from manufacturing it. Hence, any harm to [plaintiff]
11 from staying the injunction is less and of a different nature than harm to a patentee who is
12 practicing its invention and fully excluding others.")); cf. Cadence Design, 125 F.3d at 828
13 (noting authorities holding that presumption of harm to plaintiff based on copyright
14 infringement is rebutted where the "plaintiff's copyrighted item is no longer on the market").

15     If, notwithstanding Mattel's lack of use of the intellectual property at issue, the Court
16 believes it is appropriate to protect Mattel while the case is on appeal, the appropriate
17 procedure is to require MGA to pay a reasonable royalty into escrow. E.g., In re Hayes, 766
18 F. Supp. at 823 (where injunction threatened to destroy company, stay pending appeal
19 issued and defendant required to pay reasonable royalty into escrow); Standard Havens, 897
20 F.2d at 516. MGA's experts have provided a reasonable royalty analysis (see Meyer Decl.
21 ISO Opp'n to Mattel's Mot. for Perm. Inj. (Dkt 4348) at 2-5), and, if a stay through appeal
22 is issued immediately, the royalty amount can be addressed on February 11, 2009.

23 **III.   THE PUBLIC INTEREST FAVORS A STAY**

24     As this Court noted, "[t]here is a strong economic interest, especially in these
25 troubled economic times, in maintaining a profitable enterprise as a going concern." (12/3
26 Order at 14.)[2]  Although the Court decided that public interest concerns did not justify

27 _____
   [2]  2 Dan B. Dobbs, Law of Remedies § 6.3(5) (2d ed. 1993) (if "destruction or even an
28 injunction against distribution will prevent exploitation of economically viable materials, problem
   is one of economic waste, certainly if the economic value of the plaintiff's copyright is less than
                                                                                    *(cont'd)*

EXHIBIT

PAGE            20

1  denying a <u>permanent</u> injunction, such concerns amply support an <u>interim stay</u> of the

2  December 3 Orders pending appeal. Given current economic conditions, the public interest

3  weighs against                REDACTED                    stripping already struggling

4  state and local governments of tax revenue and exacerbating the strain on public resources

5               REDACTED                    <u>U.S. v. 1020 Elec. Gambling Mach.</u>, 38 F. Supp. 2d 1219,

6  1225 (E.D. Wash. 1999) (public interest favored allowing casino employees to retain jobs

7  and "avoid dependence upon government-provided benefits," even though certain casino

8  operations were illegal and provided unfair edge over competitors); <u>Bennigan's Franchising</u>

9  <u>Co. v. Swigonski</u>, 2007 WL 603370, at *5 (N.D. Tex. Feb. 27, 2007).

10        Moreover, as this Court noted in imposing the temporary stay now in place, removing

11  Bratz products from the marketplace also affects businesses other than MGA – such as

12  retailers who face their own financial troubles. (11/10 Tr. 123:22-124:4.) Denying a stay

13  will have global repercussions, given the irreparable harm to MGA's international

14  distributors and licensees.

15

16

17                              REDACTED

18

19

20

21                         the public interest in promoting competition in the

22

23  ―――――――――
   (cont'd from previous page)
   the economic costs entailed in the destruction or injunction"); <u>BR Assocs. v. LaFramboise</u>, 2007
24  WL 1840031, at *10 (E.D. Mich. June 26, 2007) (denying injunction which would cause waste).

25

26

27                              REDACTED

28

1 toy and doll industries that militated against entering an injunction, <u>Pass & Seymour, Inc. v.</u>
2 <u>Hubbell, Inc.</u>, 532 F. Supp. 2d 418, 434 (N.D.N.Y. 2007) (denying injunction due to "anti-
3 competitive nature"), also favors a stay. Finally, eliminating Bratz from the marketplace
4 before the appeal will deprive children of a well-loved product. An Illinois mother recently
5 wrote to MGA and Mattel expressing anger and frustration that the injunctions will "pull
6 playmates from the shelves, hearts and imaginations" of "millions of young children in this
7 world" and force her to explain to her heartbroken seven-year-old daughter that "Bratz have
8 to go away and we can't buy them anymore." (Kennedy Decl. Ex. A.) She complains that
9 Mattel is "out of touch with its own consumers" in seeking to eliminate Bratz "at the
10 expense of our children": "I find i[t] very disheartening especially since you will be hurting
11 the very people that Barbie professes to be trying to give a great, imaginative, memorable
12 childhood to[]." (<u>Id.</u>) She sums up the terrible impact of the orders on the Bratz consumer in
13 compelling her daughter to "let[] go of what our children find most precious - their toys,
14 their friends, their playmates" as follows: "taking these items away from our youngest most
15 venerable (sic) consumers is not only heartless[,] it is greedy and unfair." (<u>Id.</u>)

16 **IV.   <u>MGA'S APPEAL RAISES SUBSTANTIAL QUESTIONS OF LAW</u>**

17        "When the request for a stay is made to a district court, common sense dictates that
18 the moving party need not persuade the court that it is likely to be reversed on appeal."
19 <u>Costco Wholesale Corp. v. Hoen</u>, 2006 WL 2645183, at *2 (W.D. Wash. Sept. 14, 2006).
20 The Court need not reject its findings to grant a motion to stay and can grant a stay even if it
21 still "believes [its] ruling was correct." <u>Davila</u>, 2008 WL 4426669, at *2. So long as
22 substantial legal questions exist on the appeal, a stay of an injunction pending appeal is
23 proper. <u>Azurin v. Von Raab</u>, 792 F.2d 914, 915 (9th Cir. 1986) (granting stay pending
24 appeal where "issues presented on appeal [were] substantial and of public importance").

25        MGA carries its burden here by showing the Court "ruled on an admittedly difficult
26 legal question." <u>Pac. Merch. Shipping Ass'n v. Cackette</u>, 2007 WL 2914961, at **1-2 (E.D.
27 Cal. Oct. 5, 2007) (finding "questions of law [were] sufficiently difficult so that the court
28 [needed to] undertake an analysis of the other factors"); <u>Yosemite Valley</u>, 2007 WL 896154,

EXHIBIT _____ 1

PAGE _____ 22

1  at *2 (party seeking stay need show only that there are "serious and difficult questions of

2  law in an area where the law is somewhat unclear"). Where the legal issues raise "difficult

3  questions of law and policy" or "there [is] no Ninth Circuit authority directly on point," a

4  stay is proper. Himebaugh v. Smith, 476 F. Supp. 502, 510 (C.D. Cal. 1978) (sufficient

5  legal question existed to warrant granting a stay but ultimately denying stay because "other

6  factors...[did] not weigh in favor of a stay"); Yosemite Valley, 2007 WL 896154, at *2

7  (standard can be met by showing "scarcity of case law regarding" legal question).

8      A.    **Substantial Legal Issues Arise From The Permanent Injunction Order**

9          1.    **The Court's Decision To Set Aside The Jury's Findings To Enjoin
               MGA's Sale Of Bratz Dolls Presents A Substantial Legal Question**
10

11         MGA respectfully submits that the Court's decision to enjoin the sale of all Bratz-

12  related products presents several substantial legal questions, beginning with the Court's

13  decision to set aside the jury's verdict as to Mattel's copyright claim. The Seventh

14  Amendment provides "no fact tried by a jury shall be otherwise re-examined in any Court of

15  the United States, than according to the rules of the common law." U.S. Const. amend. VII.

16  This admonition has been interpreted by the Ninth Circuit as requiring a Court sitting in

17  equity to follow "the jury's implicit or explicit factual determinations." Los Angeles Police

18  Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993). Indeed, as the Tenth

19  Circuit explained, if it is clear that "certain views of the evidence were not taken by the jury

20  as they could not have rationally supported the result," the judge is bound by that negative

21  inference in evaluating equitable relief. Ag Servs. of Am. v. Nielsen, 231 F.3d 726 (10th

22  Cir. 2000) (7th Amendment precluded court from making equitable findings against

23  defendant that were inconsistent with logical inferences from jury's findings of no liability).

24  The Court recognized this limitation declaring that "[t]he jury was asked specific questions,

25  and the dollar amounts they came up with were reflected – they essentially answered those

26  questions in dollars and cents. And, certainly, the Court is bound by whatever explicit or

27  implicit logical conclusions are to be reached by those answers." (11/10 Tr. 72:10-15.)

28  MGA respectfully submits that the Court did not follow the "implicit logical conclusions"

that flowed from the jury's findings; rather it crafted a wholly new test: holding that the

11

EXHIBIT _____ 1

PAGE _____ 23

1 verdict did not limit its discretion at all as the jury's award was not tied to a "specific piece
2 of evidence." (12/3 Order at 10.) MGA respectfully submits that no case law supports this
3 new test, making it the sort of question that justifies a stay given the absence of authority.[4]

4       The "level of damages" awarded by the jury conflicts with the holding underlying the
5 injunction order. The jury was instructed to find the portion of Bratz profits "attributable to
6 factors other than use of the copyrighted work." (Phase 1b Jury Inst. (Dkt 5267) No 42.)  In
7 awarding the "level of damages" that it did – a fraction of overall Bratz profits – the
8 "implicit logical conclusion" is that the jury found either that a small portion of Bratz
9 products infringed, or that many products infringed, but those profits derived primarily from
10 factors other than Bryant's drawings.[5]  While the choice between those alternatives cannot
11 be ascertained with certainty,[6] given the damages award, the jury certainly <u>could not have</u>
12 <u>found what the Court did in its injunction order:</u> <b>both</b> that (1) all products infringe, and (2)
13 a substantial portion of the value of the products was attributable to infringement.

14      The "implicit logical conclusion" from the jury's findings, which bind the Court, is
15 that all products infringe <u>only if</u> Bratz' value derived overwhelmingly from other sources,
16 including MGA's own ingenuity. Indeed, the Court already so noted: "the measurable value

17

18 [4]     The leading Ninth Circuit authority does not so hold. <u>Gates</u>, 995 F.2d at 1474-75 (inferring
19 jury findings based on the "level of damages" as viewed against the jury instructions, not from link
between jury's damage award and a specific piece of evidence). Nothing in <u>Gates</u> suggests that the
20 damages "level" flowed directly from a number offered by the plaintiffs' damages expert. Rather,
<u>Gates</u> concluded that the jury "could not have awarded the level of damages it awarded without
21 finding that" the plaintiff "would not have been discharged except for his refusal to be illegally
searched." <u>Gates</u>, 995 F.2d at 1474. The reverse is true here: the jury could not have arrived at the
22 "level of damages" that it found without concluding that (1) a minute portion of products infringed,
or (2) all products infringed but the infringing elements were a tiny fraction of the overall value.
23 [5]     Because the verdict's ambiguity as to which of these alternative interpretations correctly
reflects the jury's actual findings as to the extent of infringement is due to Mattel's objection to a
24 special verdict form and insistence on a general form as respects the scope of infringement
(compare Mattel's Am. Proposed 1B Verdict Form (Dkt. 4161), with MGA Parties' 2d Rev.
25 Proposed Phase 1b Verdict Form (Dkt. 4250)), the Court should have resolved that ambiguity by
interpreting the verdict against the party responsible for causing that uncertainty. <u>See City of Hope</u>
26 <u>v. Genentech, Inc.</u>, 43 Cal. 4th 375, 397-98 (2008); Cal. Civ. Code §1654.
[6]     Mattel created this uncertainty when it insisted on using a general verdict form rather than a
27 specific verdict form – which would have identified with specificity the products the jury found
infringing. (<u>Compare</u> Mattel's Am. Proposed 1B Verdict Form (Dkt. 4161), <u>with</u> MGA Parties' 2d
28 Rev. Proposed Phase 1b Verdict Form (Dkt. 4250).)

MGA Parties' *Ex Parte* Application And Motion To Stay Pending Appeal - Case No. CV 04-9049 SGL (RNBx)

EXHIBIT _____ 1

PAGE _____ 24

Case 2:04-cv-09049-DOC-RNB   Document 4709-2   Filed 01/19/09   Page 27 of 70   Page ID
#:139483
Case 2:04-cv-09049-SGL-RNB      Document 4458      Filed 12/11/2008      Page 23 of 35

1  of Bratz, the brand Bratz, the doll Bratz, and everything that comes with it, is so much a
2  function of what Isaac Larian and his team put into it." (11/10 Tr. 60:23-61:2.) By failing to
3  apply this "implicit logical conclusion" from the jury's findings, the Court created a
4  substantial legal question as to whether the jury's findings were ignored and defendants'
5  Seventh Amendment right violated. Floyd v. Laws, 929 F.2d 1390, 1397 (9th Cir. 1991).[7]

6              **2.    The Irreparable Injury Finding Presents A Substantial Legal Issue**

7          The Court's irreparable harm finding is based on the misconduct attendant to
8  Bryant's delivery of intellectual property to MGA. (12/3 Order at 13.)[8] However, the Phase
9  1b verdict already recompensed Mattel for any such harm. The Court found there must be
10 irreparable injury here because MGA intends to "produce their infringing products." MGA
11 submits that this finding overlooks that the jury concluded, in the Court's words, that "the
12 measurable value of Bratz, the brand Bratz, the doll Bratz, and everything that comes with it,
13 is so much a function of what Isaac Larian and his team put into it." (11/10 Tr. 60:23-61:2.)

14         The Court's ruling is not based on specific facts supporting a finding of irreparable
15 injury, but rather on the "categorical rule" that a finding of infringement plus the likelihood
16 of future infringement always constitutes irreparable injury. MGA respectfully submits that
17 this conflicts with eBay, which emphasized that injunctions should issue through the
18 "equitable discretion of the district courts...consistent with traditional principles of equity"
19 rather than according to "categorical rule[s]." eBay Inc., 547 U.S. at 393-94; see also
20 Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532, 543 (4th Cir. 2007)

21

22  [7]    Indeed, if, despite the MGA Parties' contrary contention, the jury verdict did not preclude
the Court from making its own factual findings on the injunction issue, that was only because the
23  verdict failed to specify with sufficient clarity the jury's findings on what products were infringed.
As this Court acknowledged, using a special verdict form would have provided the necessary
24  clarity to narrowly-tailor the injunction. (Tr. 7978: 14-18 ("But why – what is the downside of
having the jury also identify exactly what it is that they've have found? I mean, that's going to be
25  very helpful to the court with respect to tailoring injunctive relief.").) Failing to do so, in this
circumstance, was a fundamental error because it eviscerated MGA's right to have the scope of
26  infringement determined by the jury and empowered the Court to "redetermine" facts that
necessarily must have been found by the jury in connection with its award of monetary relief.
27  [8]    The Court's ruling overlooks that the jury found that MGA had not "engaged in acts that
infringed [Mattel's] copyright" while "kn[owing] those acts infringed [Mattel's] copyright." (Jury
28  Instr. No 43 (Dkt. 4267); Phase B Verdict Form Nos. 6, 8, 10.)

EXHIBIT _____1_____

PAGE _____25_____

Case 2:04-cv-09049-DOC-RNB   Document 4709-2   Filed 01/19/09   Page 28 of 70   Page ID
#:139484
Case 2:04-cv-09049-SGL-RNB      Document 4458      Filed 12/11/2008      Page 24 of 35

1  (applying eBay and rejecting plaintiff's assertion that "when copyright infringement has
2  been proved and there is a threat of continuing infringement, the copyright holder is
3  'entitled to an injunction'"); Novartis Pharms. Corp. v. Teva Pharms. USA, Inc., 2007 WL
4  2669338 at *13 (D.N.J. Sept. 6, 2007) ("This court relies upon eBay's broader holding that,
5  on motions for injunctions, courts should not apply categorical rules and presumptions").
6  Indeed, MGM Studios, Inc. v. Grokster expressly rejected the "categorical rule" that this
7  Court now adopts.  518 F. Supp 2d 1197, 1209 (C.D. Cal. 2007).[9]

8            **3.    Rejecting An Ongoing Royalty Presents A Substantial Legal Issue**

9         A royalty, not an injunction, is the appropriate remedy where, as here, the success of
10  the allegedly infringing work resulted from the "collaborative efforts of many talented
11  individuals"; the success "resulted in large part from factors completely unrelated to
12  infringement"; and "defendants invested substantial money, effort, and talent creating the
13  infringing work."  Abend v. MCA, Inc., 863 F.2d 1465, 1479 (9th Cir. 1988). The Court
14  found widespread, ongoing infringement (12/3 Order at 15), which can be reconciled with
15  the jury's verdict only if Bratz' success derived largely from factors other than infringement
16  – the predicate that led Abend to deem an injunction "inappropriate." 863 F.2d at 1478.

17        The Court rejected the royalty because of the parties' inability to negotiate a royalty,
18  which evidenced the parties' "hostility" to one another.  (12/3 Order at 15.)  Once again,
19  this presents a substantial question. In the copyright context, a judicial mechanism exists to

20  [9]     The Court relies on Designer Skin, LLC v. S&L Vitamins, Inc., 2008 WL 4174882 (D. Ariz.
21  Sept. 5, 2008) (12/3 Order at 12-13), which predicates injunctive relief on the "high probability of
    continued acts of infringement" where, unlike here, plaintiff has commercialized the underlying
22  intellectual property. While injury to the copyright holder may be inevitable where its product has
    to compete with the infringing product, this logic does not apply where plaintiff has not marketed,
23  developed, or sold the copyrighted work and has not introduced evidence that it will.
    MercExchange, L.L.C. v. eBay, Inc., 500 F. Supp. 2d 556, 570 (E.D. Va. 2007). Mattel offered
24  only evidence that it will not license its copyrighted products. (Decl. of Judy Willis (Dkt. 4382-2).)
    Mattel cited five cases to support its argument that "past infringement coupled with an ongoing
25  threat to the holder's exclusive rights" creates a presumption of irreparable harm.  As with
    Designer Skins, in each of these cases the plaintiff was actively involved in commercially
26  exploiting the copyrighted work. See Bertram Music Co. v. Yeager Holdings of Cal., Inc., 2008
    WL 2055480 (E.D. Cal. 2008); UMG Recordings, Inc. v. Higareda, 2008 WL 3836074 (E.D. Cal.
27  2008); Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233 (E.D. Cal. 2008); Warner Bros. Entm't, Inc.
28  v. Carsagno, 2007 WL 1655666 (E.D.N.Y. 2007). Moreover, the latter four cases involved default
    judgments where it is questionable whether the viability of the presumption was litigated.

EXHIBIT ____ **1**

PAGE _____ **26**

Case 2:04-cv-09049-DOC-RNB   Document 4709-2   Filed 01/19/09   Page 29 of 70   Page ID
#:139485
Case 2:04-cv-09049-SGL-RNB      Document 4458      Filed 12/11/2008      Page 25 of 35

1  impose a royalty, notwithstanding hostilities or failed attempts at settlement. See Georgia-

2  Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (1970) (a royalty calculation

3  assumes a negotiation "as if both [parties] had been reasonably and voluntarily trying to

4  reach an agreement"); Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152,

5  1159 (6th Cir. 1978) ("Determination of a 'reasonable royalty' after infringement, like

6  many devices in the law, rests on a legal fiction....There is, of course, no actual willingness

7  on either side"). The Court's reasoning effectively renders the remedy unavailable in any

8  case: all litigations involve some hostility between parties, and courts must rule only where

9  the parties have failed to agree. The Court's reasoning raises substantial issues.[10]

10           **4.    The Breadth Of The Order Raises Substantial Issues**

11           The Court's Order could be read to require MGA to take steps outside of the U.S.

12  based on principles of U.S. copyright law. (See generally 12/3 Injunction Order.) Yet U.S.

13  copyright laws do not apply outside the U.S. and an order purporting to enjoin a party from

14  taking or refraining from actions outside the U.S. in reliance on such laws would be

15  inappropriate. See, e.g., Subafilms, Ltd. v. MGM-Pathe Commc'ns Co., 24 F.3d 1088, 1095

16  (9th Cir. 1994) (refusing to overturn "eighty years of consistent jurisprudence" stating that

17  "the United States' copyright laws have no application to extraterritorial infringement").[11]

18           It also is settled that "characters are ordinarily not afforded copyright protection."

19  Rice v. Fox Broad. Co., 330 F.3d 1170, 1175 (9th Cir. Cal. 2003). Although "especially

20  distinctive" characters may be protected "apart from the copyrighted work," id., the

21  attributes and "personality" of Bryant's "characters" were minimally defined (MGA Obj. to

22  Mattel Jury Inst. (Dkt 4168) at 34-38.) While the Court did not find that the characters were

23  copyrightable (12/3 Order at 10-11), its injunction extends to products depicting "any of the

24

25  [10]   Although the Court lamented the parties' failure to successfully resolve this matter through
    settlement (12/3 Order at 15), in fact, Mattel generally resisted face to face meetings with MGA to
26  discuss settlement, and refused to meet after the Phase 1b verdict (in contravention of the Court's
    orders).  MGA, of course, was and remains interested in settlement.  The breadth of the Court's
27  December 3 Orders has effectively removed any incentive for Mattel even to discuss the issue.
    [11]   The same is true of the Court's order granting a Constructive Trust over foreign trademarks.
28  (See 12/3 Constructive Trust Order ¶ 1; Star-Kist Foods, Inc. v. P.J. Rhodes & Co., 769 F.2d 1393,
    1396 (9th Cir. 1985) (limiting trademark injunction to infringement within the U.S.).

1  Jade, Cloe, Yasmin and Sasha Bratz characters." (12/3 Injunction Order ¶¶ 1(f) & 1(i).)

2  **5.    Consideration Of Mattel's New Evidence In Post-Trial Submissions**
   **While Fashioning Injunctive Relief Presents A Serious Legal Issue**

3         The Court's admission of Mattel's new evidence following the 1b verdict, including

4  new arguments presented by its outside counsel, and new expert reports presents a

5  substantial legal issue. These declarations dealt with copyright infringement and its scope –

6  issues that Mattel did not present to the jury. Permitting Mattel to submit new post-trial

7  "evidence" for its permanent injunction motion, infringed MGA's constitutional right to

8  have infringement determined by the jury. Danjaq LLC v. Sony Corp., 263 F.3d 942, 962

9  (9th Cir. 2001); Feltner v. Columbia Pictures TV, 523 U.S. 340, 355 (1998)); 3 Nimmer on

10  Copyright §12.10, at 12-14 (May 2000). Moreover, all three declarations were inadmissible

11  as an evidentiary matter. (MGA's 11/3/08 Reply ISO Motion to Strike (Dkt 4403).)

12         **B.    Substantial Legal Issues Arise From The Constructive Trust Order**

13         The Constructive Trust Order charts new territory in intellectual property law,

14  creating substantial legal questions for examination on appeal. In awarding a constructive

15  trust over the Bratz and various other trademarks, the Constructive Trust Order granted

16  trademark rights in a situation that would not otherwise confer them. A person who invents

17  a potential trademark has no exclusive rights to its use. Brookfield Commc'ns, Inc. v. W.

18  Coast Entm't Corp., 174 F.3d 1036, 1046 (9th Cir. 1999); Sengoku Works Ltd. v. RMC

19  Int'l, Ltd., 96 F.3d 1217, 1219, as modified, 97 F.3d 1460 (9th Cir. 1996). Even substantial

20  preparations showing a clear intent to use a mark are not enough to confer exclusive rights –

21  neither registering the mark as an internet domain name, nor using it in correspondence with

22  customers, nor "putting one's mark on 'a business office door sign, letterheads, architectural

23  drawings, etc.'" is sufficient. Brookfield, 174 F.3d at 1052. Only actual use in commerce

24  creates a property right. Id.[12] This Court's ruling circumvents that standard, and finds that

25

26  [12]    This Court has held that an assignment of a trademark that is not in use is void as "no rights
   can be transferred apart from the business with which the mark has been associated" and "law is
27  well settled that there are no rights in a trademark alone." Conversive, Inc v. Conversagent, Inc.,
   433 F. Supp. 2d 1079, 1090 (C.D. Cal. 2006). A leading treatise concluded that "where a
28  designation has never been used as a mark, there is nothing to assign." 3 McCarthy on Trademarks
   & Unfair Competition § 18:2 (4th ed. 2008).

EXHIBIT _____ 1

PAGE _____ 28

Case 2:04-cv-09049-DOC-RNB   Document 4709-2   Filed 01/19/09   Page 31 of 70   Page ID
#:139487
Case 2:04-cv-09049-SGL-RNB   Document 4458   Filed 12/11/2008   Page 27 of 35

1  while a person who invents a potential trademark has no exclusive rights to its use, he may

2  assign his right to another, and that act creates a protectible interest in an unused trademark,

3  vis-à-vis any other users who acquire it from the same inventor.[13] This novel ruling is based

4  upon the problematic interaction between federal trademark law and California contract law.

5  This interaction has not been explored in federal courts, but MGA submits it **does not**

6  provide a basis for the constructive trust granted here. (MGA's Opp'n to Mot. for Const.

7  Trust & UCL (Dkt 4349).) Given the novel nature, it presents a substantial legal question.

8        Mattel's satisfaction of the "injury in fact" standing requirement under Cal. Bus. &

9  Prof. Code § 17204, also raise substantial legal questions. Mattel failed to show that it "lost

10 money or property" as a result of the conduct in question, mostly because the marks that

11 Mattel claimed entitlement to were never Mattel's property in the first place.[14]   The Court

12 gave no weight to Mattel's admissions that Mattel's claimed harm is limited to MGA's

13 purportedly "ill-gotten" gains – a harm that is not cognizable under the UCL, Madrid v.

14 Perot Sys. Corp., 130 Cal. App. 4th 440, 455 (2005). The Court found that Mattel satisfied

15 the injury requirement because it "lost market share." (12/3 Order at 7.)  But as UCL

16 recognizes an injury only when plaintiff suffers a loss of property that he had a "vested"

17 interest in (MGA 1c Stmt. (Dkt 4308) at 21 n.16 (collecting cases)), loss of market share

18 cannot qualify. Cf. Serv. & Training, Inc. v. Data Gen. Corp., 737 F. Supp. 334, 343 (D.

19 Md. 1990) ("companies … have no vested interest in an existing market structure").

20       The Court's further findings that the UCL "injury in fact" standing requirement was

21 satisfied by the jury's implicit findings of "harm" as part and parcel of the verdict on state

---

22 [13]    This is despite the fact that the inventor could not have prevented others from using the
23 mark. See Arvelo v. Am. Int'l Ins. Co., 875 F. Supp. 95, 101-102 (D.P.R. 1995) (plaintiff did not
   have any rights to trademark despite inventing it and presenting it to defendant; rather defendant
24 who eventually used name held trademark rights); Gordon Bennett & Assocs., Inc. v. Volkswagen
   of Am., Inc., 186 U.S.P.Q. 271, 272 (N.D. Cal. 1975) (soliciting advertising service business from
25 financial institutions by suggesting use of trademark did not establish rights to trademark).
   [14]    Compare Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 177-78 (2000)
26 (limiting availability of restitution under the UCL to "money that once had been in the possession
   of the person to whom it [is] to be restored"; "the remedy we approved was literally restoration of
27 money, the return of money acquired from an individual to that individual"), with Buckland v.
   Threshold Enters., Ltd., 155 Cal. App. 4th 798, 817-818 (2007) (UCL standing is limited to
28 individuals who are eligible for restitution).

EXHIBIT _____ 1

PAGE _____ 29

Case 2:04-cv-09049-DOC-RNB   Document 4709-2   Filed 01/19/09   Page 32 of 70   Page ID
#:139488
Case 2:04-cv-09049-SGL-RNB      Document 4458      Filed 12/11/2008      Page 28 of 35

1   law claims (12/3 Order at 7-8) effectively obliterate the UCL "injury" standing requirement
2   whenever the underlying predicate is based on a common law claim, as elements of
3   common law claims typically include a finding of "harm." The MGA Parties respectfully
4   submit that this cannot be what California voters intended when they passed Prop. 64 to
5   impose an **additional** requirement of "lost money or property" for UCL claims, knowing
6   that underlying violations would typically satisfy the broader "harm" requirement. See Prop.
7   64, § 1, subd. (e); Daro v. Super. Ct., 151 Cal. App. 4th 1079, 1097 (2007) ("After
8   Proposition 64, a private person has standing to sue under the UCL only if that person has
9   suffered injury *and* lost money or property '*as a result* of such unfair competition.'").

10      The Court held that copyright preemption bars Mattel's interference claim "to the
11  extent that it is based on Mattel's rights to Bratz" (4/25/08 Order at 2), and MGA sought
12  judgment as a matter of law declaring this limitation on Mattel's aiding and abetting claims.
13  (MGA's Phase 1a JMOL (Dkt 4080).)    The California Uniform Trade Secrets Act
14  ("CUTSA") also displaces any common law tort claim that involves conduct that could
15  support a claim for misappropriation of trade secrets. See Digital Envoy, Inc. v. Google,
16  Inc., 370 F. Supp. 2d 1025, 1032-35 (N.D. Cal. 2005); Convolve, Inc. v. Compaq Computer
17  Corp., 2006 WL 839022, at *7 (S.D.N.Y. Mar. 31, 2006) (California law); Ernest Paper
18  Prods. Inc. v. Mobil Chem. Co. Inc., 1997 WL 33483520, at *9 (C.D. Cal. Dec. 2, 1997)
19  (preemption of claims based on misappropriation of customer lists). Mattel's claims for
20  interference and for aiding and abetting breach of fiduciary duty rest on the jury's finding
21  that Bryant improperly disclosed proprietary information to MGA. The aiding and abetting
22  claim was based on Bryant's disclosure of proprietary information to MGA while he was an
23  employee of Mattel, and therefore is displaced by CUTSA. Likewise, the interference claim
24  was displaced as the predicate of that claim was aiding and abetting liability. (4/25/08
25  Order at 2.) To the extent the aiding and abetting of the breach of Bryant's duty of loyalty
26  was based on more than merely signing the employment contract – that is, was based on
27  disclosure of proprietary information – it is likewise preempted. Finally, CUTSA displaced
28  the Section 17200 claim because the predicate wrongful act was tortious interference.

EXHIBIT _____ 1 _____

PAGE _____ 30

Case 2:04-cv-09049-DOC-RNB  Document 4709-2  Filed 01/19/09  Page 33 of 70  Page ID
#:139489
Case 2:04-cv-09049-SGL-RNB  Document 4458  Filed 12/11/2008  Page 29 of 35

1    **C.    Substantial Legal Issues Arise From The Declaratory Relief Order**

2    The Declaratory Relief Order also raises substantial questions regarding California

3    contract law concerning rights to ideas, and the interplay of that law with federal intellectual

4    property law – specifically, copyright.  In light of the potential conflict between these two

5    areas of law, it is difficult to assess what the Declaratory Relief Order actually declares.  A

6    claim purporting to assign ownership of material subject to copyright laws is necessarily

7    preempted by the Copyright Act. (MGA's Opp'n to Mot. for Decl. Judg. (Dkt 4350).) As

8    the order assigned ownership of works of art <u>and</u> "ideas" for the Bratz name and characters

9    without reference to copyright law, it is unclear what property rights are being declared, or

10   the effect of that declaration.  Indeed, at the hearing even Mattel's counsel was unable to

11   articulate the precise relief it was seeking. (11/10 Tr. 37:4-40:24.) The Declaratory Relief

12   Order turns on a novel and difficult reconciliation of state and federal law.

13   **D.    Substantial Legal Issues Arise From The Court's Underlying Rulings**

14   **1.    The Court's Substantive Pretrial Rulings Are Implicated By The
         Orders And Present Substantial Questions Of Law**

15

16   Many of the Court's pretrial rulings create additional substantial legal questions.  The

     non-exhaustive list includes the Court's determination on issues of the enforceability of the
17
     Inventions Agreement, which Carter Bryant challenged as unconscionable and unlawful
18
     under Cal. Bus. & Prof. Code § 16600 and Cal. Labor Code §§ 96(k), 98.6, 2699 & 2870.
19
     (See 7/17/06 Order Granting Mot. to Dismiss (Dkt 63) at 10-14; 4/25/08 Order at 4-5.)
20
     Another substantial legal question is presented by the Court's ruling on the scope of the
21
     Inventions Agreement as encompassing Bryant's tangible drawings and intangible ideas for
22
     Bratz created (or, as the Inventions Agreement itself states, "conceived or reduced to
23
     practice") during the period of his employment at Mattel.  (<u>Id.</u> at 5.)  Despite the adhesive
24
     nature of the contract, the Court ruled that Mattel's interpretation of the Inventions
25
     Agreement was within Bryant's reasonable expectations, and that the contract was neither
26
     substantively  unconscionable  nor  ambiguous  with  respect  to  the  assignment  of
27
     copyrightable (as opposed to patentable) subject matter.  (<u>Id.</u> at 4-5.)  The Court held that
28
     the contract was unambiguous despite Mattel's admission that Bryant's interpretation of the

19

EXHIBIT _____ 1

PAGE _____ 31

1  terms at issue also was reasonable. (4/22 Tr. 40:10-41:18)  The Court's ruling not only
2  rejected the contract's use of purely patent-related terms of art (i.e., "inventions,"
3  "discoveries," "improvements," "formulae," "conceived or reduced to practice," etc.), but
4  also Mattel's subsequent revisions of its standard invention agreements to include the very
5  copyright language missing from the Inventions Agreement, confirming the lack of clarity.

6      The Court's interpretation of the scope of the Inventions Agreement as extending
7  beyond copyrightable material to Bryant's intangible "ideas," a term that is never used to
8  define "inventions" in the Agreement itself, also presents a substantial legal issue. (4/25/08
9  Order at 5.)  The Court's interpretation incorporates its finding that ideas are subject to
10  contractual protection and can thus be the basis for various state law claims and, ultimately,
11  claims for declaratory relief and a constructive trust.  The Court itself acknowledged the
12  novelty of the issue. (Id. at 3, citing Desny v. Wilder, 46 Cal. 2d 715 (1956).)[15]

13      The Court's rulings as to Bryant's owing Mattel both a fiduciary duty and duty of
14  loyalty and his breach thereof also created substantial legal issues.  The Court instructed the
15  jury that Bryant owed, and had breached, a fiduciary duty.  Bryant was not in one of the
16  categories of relationship that, as a matter of law, are fiduciary. City Of Hope Nat. Med.
17  Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 386 (2008). However, the Court concluded that
18  Bryant was in a "confidential relationship" as he possessed confidential information
19  entrusted to him by Mattel. (4/25/08 Order at 5.)  While "confidential relationships" may
20  impose fiduciary duties, more is required than possession of confidential information. There
21  are "significant differences" between a categorical fiduciary duty and a confidential
22  relationship. Persson v. Smart Inventions, Inc., 125 Cal. App. 4th 1141, 1160 (2005). The
23  "absolutely essential" predicate for a confidential relationship is vulnerability. Persson, 125
24  Cal. App. 4th at 1161. This vulnerability must be more than a mere dependence upon the
25  specialized knowledge of another, arising from "advanced age, youth, lack of education,

26  _____
   [15]    Desny's interpretation is debatable, it addressed whether disclosure of an idea constituted
27  consideration under a contract, maintaining that "an idea is not property subject to exclusive
   ownership." 46 Cal. 2d at 733. Ideas are not protected under copyright. (MGA MSJ Opp'n (Dkt
28  2784) at 13; see also Desny, 46 Cal. 2d at 732-33 ("Only in the 'expression' of a copyrighted work
   does any monopoly inhere; the 'theme,' the 'plot,' the 'ideas' may always be freely borrowed.").)

EXHIBIT ____1____

PAGE ____32____

Case 2:04-cv-09049-DOC-RNB   Document 4709-2   Filed 01/19/09   Page 35 of 70   Page ID
#:139491
Case 2:04-cv-09049-SGL-RNB   Document 4458   Filed 12/11/2008   Page 31 of 35

1   weakness of mind, grief, sickness, or some other incapacity." Richelle L. v. Roman
2   Catholic Archbishop of San Francisco, 106 Cal. App. 4th 257, 273 (2003). As a matter of
3   law, Mattel could not establish a "confidential relationship" that imposed a fiduciary duty.
4   Unlike a fiduciary relationship, the existence of a confidential relationship is a question of
5   fact. Tyler v. Children's Home Soc'y, 29 Cal. App. 4th 511, 549 (1994); Barbara A v. John
6   G., 145 Cal. App. 3d 369, 383 (1983). It was error to instruct that as a matter of law Bryant
7   owed Mattel a fiduciary duty. Due to that error, the finding that MGA induced a breach of
8   fiduciary duty fails.[16] Moreover, given the sizeable authority on the issue supporting
9   MGA's arguments, there is also a substantial legal issue on the Court's determination that
10   Bryant's actions went beyond the line separating permissible preparations to compete from
11   actual competition. See, e.g., Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 346 (1966).

12         Another substantial legal issue is the MGA Parties' statute of limitations defense,
13   which required three separate orders of this Court to resolve. (See Orders of 1/12/07,
14   5/27/08, and 6/2/08.) The Court's holding that Mattel's claims against the MGA Parties
15   added years after the case began, may benefit from the "relation-back" doctrine, presents a
16   serious legal question[17] given that Mattel introduced no evidence establishing that it made a
17   "mistake" concerning the MGA Parties' identities as required by FRCP Rule 15(c) or that it
18   was unaware of the MGA Parties' involvement in the matter as required by California
19   procedure for substitution of "Doe" defendants. (MGA MSJ Reply (Dkt 2934) at 14-16.)[18]

20   [16]     The Court's 4/25/08 Order found a fiduciary duty because Bryant possessed confidential
21   information (his own inventions) and was in a position to disclose that confidential information to
      MGA. If that were all that is required to create a fiduciary duty, every possessor of a confidence
22   would owe a fiduciary duty. The California Supreme Court has definitively rejected that
      proposition. See, e.g., City of Hope, 43 Cal. 4th at 389 ("[A] fiduciary relationship is not
23   necessarily created when one part . . . entrusts a secret invention to another party . . .").
      [17]     Mattel's stale claims cannot be rescued by a post-hoc determination that its 2006 claims
24   against the MGA Parties relate back to MGA's procedural intervention as a defendant in December
      2004. Further, even if MGA joined the action for all purposes in 2004, Mr. Larian indisputably did
25   not become involved until Mattel sued him in 2006.
      [18]     The Court's determination with respect to inquiry notice, which the Court acknowledged
26   was "not so clear cut" (5/27/07 Order at 5), also raises substantial legal issues. Despite the
      evidence of Mattel's awareness of Bryant's creation of Bratz as early as summer of 2001 and no
27   later than March of 2002, the Court held that Mattel's duty to inquire into the facts underlying its
      claims did not arise until Mattel came to acquire actual knowledge of the facts. (6/2/08 Order at 2.)
28   The Court did not apply the standard inquiry notice in California, which gets triggered "when...
                                                                    (cont'd)

MGA Parties' Ex Parte Application And Motion To Stay Pending Appeal - Case No. CV 04-9049 SGL (RNBx)

EXHIBIT       I

PAGE       33

1  Finally, substantial legal issues are raised by the Court's ruling in its July 24, 2008
2  Order (as clarified by its August 15, 2008 Order) that Bryant's drawings were subject to an
3  infringement standard of "substantial similarity," rather than "virtual identity." (7/24/08
4  Order (Dkt 4154) at 3-5.) MGA submits that this Court's decision to apply the "substantial
5  similarity" standard misapplied Ninth Circuit precedent. After acknowledging that Satava v.
6  Lowry, 323 F.3d 805 (9th Cir. 2003), which held that the glass-in-glass jellyfish sculpture at
7  issue was entitled to merely "thin" protection, was controlling, the Court distinguished the
8  Satava finding that the sculptures "were unprotected to the extent the physiology of jellyfish
9  drove the presentation of the sculptures." (Id. at 4.) However, the Court rejected analogy of
10 these sculptures to Bryant's depictions of the human form on the grounds that "[j]elly fish
11 anatomy is much simpler than human anatomy" and "there are far more variations in
12 humans (at least that we humans discern)." (Id.) In fact, neither party presented any
13 evidence on this issue or even presented it as a basis for distinguishing Satava. Moreover,
14 Satava has been applied by courts to a variety of natural forms.[19] Whether human anatomy
15
16 (cont'd from previous page)
   [the plaintiff] at least 'suspect[ed] ... that someone ha[d] done something wrong' to ...[it]."
17 Soliman v. Philip Morris Inc., 311 F.3d 966, 971-72 (9th Cir. 2002) (emphasis added). Relatedly,
   allowing Mattel to preclude discovery of its internal investigation while simultaneously relying on
18 that investigation's supposed conclusions raises a substantial legal issue. (5/27/08 Order at 7). The
   Court's distinction of that investigation as pertaining only to Diva Starz and Toon Teens in MGA's
19 view conflicted with Ninth Circuit precedent. Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d
20 1049, 1057 (9th Cir. 2008) (inquiry notice is interpreted "'to mean not when the plaintiff became
   aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that
21 an injury was caused by wrongdoing.... A plaintiff need not be aware of the specific facts
   necessary to establish a claim since they can be developed in pretrial discovery.'"). In addition,
22 that distinction was undermined by Mattel's subsequent reliance on evidence relating to Diva Starz
   and Toon Teens to prove its case throughout the trial. Indeed, the Court's rulings in connection
23 with the inquiry notice issue were sufficiently subject to debate that the Court sought the parties'
24 assistance in drawing conclusions from its own findings (5/27/08 Order at 9) and vacated a portion
   of those findings when it turned out that the Court's earlier determination as to the accrual date of
25 Mattel's copyright claim doomed its timeliness (6/2/08 Order at 3-4 & n.2). The Court's
   misinterpretation of inquiry notice also led it erroneously to conclude that, as a matter of law,
26 Mattel's claim for copyright infringement against the MGA Parties did not accrue until November
27 23, 2003 and therefore was timely filed on November 20, 2006. (6/2/08 Order at 4.) Because the
   "inquiry [into whether or when a plaintiff should have reasonably discovered infringement] is a
   question of fact[,]" this issue should have been submitted to the jury. Goldberg v. Cameron, 482 F.
28 Supp.2d 1136, 1148 (N.D. Cal. 2007). Thus, the copyright infringement verdict cannot stand.
   [19] See, e.g., Aliotti, 831 F.2d at 901 (dinosaurs); Lucky Break Wishbone Corp. v. Sears,
   (cont'd)

22
MGA Parties' Ex Parte Application And Motion To Stay Pending Appeal - Case No. CV 04-9049 SGL (RNBx)

EXHIBIT 1
PAGE 34

Case 2:04-cv-09049-DOC-RNB   Document 4709-2   Filed 01/19/09   Page 37 of 70   Page ID
#:139493
Case 2:04-cv-09049-SGL-RNB      Document 4458      Filed 12/11/2008      Page 33 of 35

1   is more complex than a jellyfish, standard elements of human anatomy in Bryant's drawings
2   are relevant to the determination of the protection to be afforded to the drawings. Human
3   anatomy is "expressed by nature" and "common heritage of human kind," and "no artist
4   may use copyright law to prevent others from depicting" it. Id. at 813.

### 2.   The Court's Rulings During Trial Are Implicated By The Orders And Present Substantial Questions Of Law

Another substantial legal question is the Court's apparent conflation of two related, but distinct, types of ownership of a copyrighted work under the Copyright Act: (a) ownership of the tangible work itself, and (b) ownership of the copyright in such work. 17 U.S.C. §202 ("[o]wnership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied"). During the Phase 1a trial, the Court repeatedly noted that the Phase 1a verdict would solely be directed to issues of timing of the creation of the Bryant works (whether they were "created" during Bryant's tenure at Mattel), and that all issues of copyright ownership of such works, as the basis for any infringement claims, were reserved for Phase 1b.[20] Consistent with this dichotomy between timing and ownership, the Court specifically conformed the verdict form to the language in Bryant's employment agreement in asking whether works at issue were "'conceived or reduced to practice' — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by

---

(cont'd from previous page)
Roebuck, & Co., 528 F. Supp. 2d 1106, 1123-24 (W.D. Wash. 2007) (turkey wishbone); Dyer v. Napier, 2006 WL 2730747, at ** 7-9 (D. Ariz. Sept. 25, 2006) (mountain lion); Cosmos Jewelry v. Po Sun Hon Co., 470 F. Supp. 2d 1072, 1082 (C.D. Cal. 2006) (Plumeria flower); Stanislawski v. Jordan, 337 F. Supp. 2d 1103, 1116 (E.D. Wis. 2004) (oak leaf and shape of horse). The Court addressed these cases at trial by stating: "The series of cases that MGA cites in addition to Satava ... are distinct for the same reason that the Court distinguished Satava. All of these are animal physiological and nature-based physiological and structural cases, and they just don't apply to the context of dolls." (Tr. 6203:8-15.) But the Court's reasoning presents a substantial legal issue because it blurs the natural physiology being depicted with the tangible item depicting it.

[20]   See, e.g., 7/7/08 Tr. 107:5-8 ("The issue for the jury is what was done and when ... the Court will ultimately have the issue of ownership to decide based on findings in Phase 1-A and, if necessary, findings in Phase 1-B"); Tr. 4727:24 -28:8 ("All we're trying to decide in 1-A is what was conceived or reduced to practice during the particular time period. And 1-B will decide whether or not these were – there was elements of originality or elements of copyrightability such that this was actually the ownership ... All we're deciding is the factual predicate of when these things came into existence") (emphasis added). Mattel concurred. (7/7/08 Tr. 102:25-103:3.)

EXHIBIT _____ 1

PAGE _____ 35

1 | Mattel." (Phase 1a Verdict Form (Dkt 4125) No. 1 (emphasis added).)

2 | However, in Phase 1b, the Court appeared to abandon the dichotomy, instead finding
3 | that the <u>copyrights</u> in all of Bryant's works were owned by Mattel. (Phase 1b Jury Inst. No.
4 | 22 ("On Mattel's copyright infringement claim, Mattel has the burden of proving both of the
5 | following by a preponderance of the evidence ... (1) Mattel is the owner of a valid
6 | copyright;.... <u>As a matter of law</u>, the first element is satisfied because Mattel is the owner of
7 | each of the <u>items</u> you found were created by Carter Bryant, alone or jointly with others,
8 | while employed by Mattel ...") (emphasis added).) In doing so, MGA respectfully suggests
9 | that the Court erred in assigning sole copyright ownership of any works which were
10 | authored "jointly" by Bryant and others. 17 U.S.C. §201(a). For jointly authored works,
11 | each author is entitled to copyright ownership. <u>Patry on Copyright</u> §5:7.[21]

12 | Likewise, many of the Court's evidentiary rulings provide sufficiently substantial
13 | legal questions that tip the balance in favor of the stay here. For instance, the Court
14 | excluded any testimony or evidence regarding non-privileged communications from MGA
15 | attorney David Rosenbaum to MGA establishing that Bryant's attorney, Anne Wang, told
16 | MGA that Bryant created the concept for Bratz at a time he was not working for Mattel (the
17 | "Rosenbaum Evidence"). While conceding that "it's a close case", the Court refused to
18 | allow the introduction of the Rosenbaum Evidence absent a waiver of MGA's attorney-
19 | client privilege in its entirety. (Tr. 7656:10-7658:4 and Tr. 4066:13-17.) MGA repeatedly
20 | argued that an attorney's communication of facts to a client is not privileged, especially a
21 | communication confirming facts that MGA and Larian had already learned independently,

22 | [21] During the Phase 1b trial, MGA addressed the issue of joint authorship as to several items,
23 | including Exhibit 1136A, a preliminary sculpt of the Bratz created for MGA by Margaret Leahy.
    Under authorship standards, Bryant was, <u>at best</u>, a <u>joint</u> author of the preliminary sculpt.  <u>See</u>
24 | <u>Aalmuhammed v. Lee</u>, 202 F.3d 1227, 1232 (9th Cir. 2000). Indeed, Leahy was arguably the sole
    author. (<u>See, e.g.</u>, Tr. 4144:7-15, 23-24) Thus, the issue of authorship of Exhibit 1136A was "a
25 | question of fact for the jury." <u>See</u> Comment, 9th Cir. Manual of Model Jury Insts. – Civil, No. 17.6
    "Copyright Interests – Authorship."  MGA was not given the opportunity to have its arguments on
26 | joint authorship decided on the merits because the Court found that MGA had waived this issue by
    failing to present it in the pretrial conference order, summary judgment papers, or during Phase 1a.
27 | (Tr. 6907:24-6909:7.) The MGA Parties dispute this decision, as they included an instruction on
    joint authorship in their proposed instructions following the Phase 1a verdict, once this issue
28 | became apparent. (<u>See</u> MGA Prop. Disp. Phase 1b Jury Inst. (Dkt 4164) at 39.)

MGA Parties' <i>Ex Parte</i> Application And Motion To Stay Pending Appeal - Case No. CV 04-9049 SGL (RNBx)

EXHIBIT _____ 1

PAGE _____ 36

1 | and thus MGA would not waive its privilege or implicate the advice of counsel defense by
2 | introducing testimony from Rosenbaum or Wang or the emails themselves. (See MGA
3 | Opp'n To Mot. For Order Compelling Prod. Of Commc'ns (Dkt. 4067) at 11-24 (describing
4 | procedural history, collecting cases); MGA MIL Opp'n No. 7 (Dkt 3387) at 2-14 (same).)
5 | The Rosenbaum Evidence excluded by the Court may well have convinced the jury that
6 | MGA and Larian verified Bryant's ownership of Bratz at the time of the contract
7 | negotiations, negating the showing of intent or wrongfulness required by Mattel's state law
8 | claims, as well as by this Court's award of constructive trusts. Given that the Court noted
9 | that this issue presents a "close" call, it presents a substantial legal question on appeal.

10 |     Finally, substantial legal issues exist as to the validity of the Phase 1a verdict, upon
11 | which all of Mattel's injunctive relief relies. As this Court is well-aware, MGA sought a
12 | mistrial at the end of Phase 1a in light of evidence of juror bias. In its opinion, the Court,
13 | while recognizing Ninth Circuit precedent in the Sixth Amendment context, declined to
14 | apply the doctrine that the presence of even a single biased juror undermines the validity of
15 | a verdict in the civil context. (See Order Denying Mot. for Mistrial (Dkt 4238) at 8-10.)
16 | The MGA Parties posit that, in light of the fact that they are entitled to a unanimous verdict
17 | on liability, see Jazzabi v. Allstate Ins. Co., 278 F.3d 979, 984-85 (9th Cir. 2002), a single
18 | biased juror is of no less concern under the Seventh Amendment. A question of such
19 | Constitutional magnitude, combined with the accompanying questions regarding the scope
20 | of a court's permissible inquiry into juror bias (which in this Circuit have been addressed
21 | thus far only in United States v. Henley, 238 F.3d 1111, 1119-20 (9th Cir. 2001)), certainly
22 | merits consideration on appeal and raises the possibility of a different result.

23 |                                   **CONCLUSION**

24 |     For the foregoing reasons, the MGA Parties respectfully request that enforcement of
25 | the December 3 Orders be stayed pending appeal.

26 | DATED: December 9, 2008        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

27 |                                By: _____/s/ Thomas J. Nolan_____
28 |                                          Thomas J. Nolan
                                   Attorneys for the MGA Parties

# EXHIBIT 2

CA No. 08-57015
DC No. CV 04-9049 SGL (RNBx)

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT
HK, LTD., and ISAAC LARIAN,

*Appellants,*

v.

MATTEL, INC., a Delaware corporation,

*Appellee.*

On Appeal From Judgment Of The United States District Court
For The Central District Of California
(Hon. Stephen G. Larson, Presiding)

# EMERGENCY MOTION
# UNDER CIRCUIT RULE 27-3

## MOTION FOR STAY PENDING APPEAL
## [REDACTED FOR PUBLIC FILE]

JEROME B. FALK, JR. (No. 39087)
STEVEN L. MAYER (No. 62030)
DOUGLAS A. WINTHROP (No. 183532)
SHAUDY DANAYE-ELMI (No. 242083)
REBECCA M. KAHAN (No. 244423)
HOWARD RICE NEMEROVSKI CANADY
   FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone: 415/434-1600
Facsimile: 415/217-5910

THOMAS J. NOLAN (No. 66992)
RAOUL D. KENNEDY (No. 40892)
JASON D. RUSSELL (No. 169219)
SKADDEN, ARPS, SLATE, MEAGHER &
   FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: 213/687-5000
Facsimile: 213/687-5600

RUSSELL J. FRACKMAN (No. 49087)
MITCHELL, SILBERBERG & KNUPP LLP
11377 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310/312-2000
Facsimile: 310/312-3100

*Attorneys for Appellants MGA Entertainment, Inc., MGA
Entertainment HK, Ltd., and Isaac Larian*

EXHIBIT ___2___

PAGE ___38___

## CIRCUIT RULE 27-3 CERTIFICATE

### (i) Telephone Numbers And Office Addresses Of All Attorneys For The Parties.

Howard Rice Nemerovski Canady Falk & Rabkin
A Professional Corporation
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111-4024
(415) 434-1600

Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
(213) 687-5000

Mitchell, Silberberg & Knupp LLP
11377 W. Olympic Blvd.
Los Angeles, CA 90064
(310) 312-2000

*Attorneys for Appellants MGA Parties*

Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000

*Attorneys for Appellee Mattel, Inc.*

### (ii) Facts Showing The Existence And Nature Of The Claimed Emergency.

If the injunctive orders that are the subject of this appeal ("the Orders") are not stayed by December 31, 2008, pending appeal, the MGA Parties and their employees will suffer irreparable harm.

; in addition, the Orders would inflict serious injury to suppliers,

1

EXHIBIT _____2_____

PAGE _____39_____

licensees and retailers (and their employees), and deprive consumers of a product they wish to buy:

•

•

•

•

•

**(iii) When And How Counsel For The Other Parties Were Notified And Whether They Have Been Served With The Motion; Or, If Not Notified And Served, Why That Was Not Done.**

On December 19, 2008, counsel for the MGA Parties notified counsel for

Mattel via e-mail that they would be filing the Motion for Stay Pending Appeal.

2

EXHIBIT _____2_____

PAGE _____40_____

As agreed between counsel, the other parties will be served with the Motion via
e-mail and the supporting papers by overnight delivery on December 19, 2008.

### (iv) Whether All The Grounds Advanced In Support Of The Relief Sought In the Motion Were Submitted To The District Court.

Yes.   MGA filed its application for stay in the District Court on
December 11, 2008.  The parties stipulated to a briefing schedule, which the
District Court (*sua sponte*) has abruptly suspended.  In addition, the court has
advised that it will be "dark" during the week of December 22.  It is therefore
unlikely that the court will even rule on MGA's stay application before the end
of the year.  Given MGA's urgent need for a stay by December 31, relief from
the dire consequences of the Orders appealed from is not available in the Dis-
trict Court (*see* FED. R. APP. P. 8(a)(2)(A)(i), (ii)), and the District Court's inac-
tion is tantamount to denial of the stay motion.  For that reason, MGA is filing

3

EXHIBIT _____ 2
PAGE _____ 41

this motion even though, despite its diligent efforts, it has been unable to obtain

a ruling from the District Court on its stay application.

DATED: December 19, 2008.

Respectfully,

JEROME B. FALK, JR.
STEVEN L. MAYER
DOUGLAS A. WINTHROP
SHAUDY DANAYE-ELMI
REBECCA M. KAHAN
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation

THOMAS J. NOLAN
RAOUL D. KENNEDY
JASON D. RUSSELL
SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP

RUSSELL J. FRACKMAN
MITCHELL, SILBERBERG & KNUPP LLP

By _____
          JEROME B. FALK, JR.

*Attorneys for Appellants MGA Entertainment, Inc.,*
*MGA Entertainment HK, Ltd. and Isaac Larian*

4

EXHIBIT _____2_____

PAGE _____42_____

## CORPORATE DISCLOSURE STATEMENT
## (FED. R. APP. P. 26.1)

MGA Entertainment, Inc., and MGA Entertainment HK, Ltd., are corporations. No publicly held corporation owns 10% or more of the stock of either of those corporations.

EXHIBIT _____ 2 _____

PAGE _____ 43 _____

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................ 1

STATEMENT OF FACTS ......................................................................... 7

    A.   MGA's Development Of The Successful Bratz Brand. ............ 7

    B.   Mattel's Allegations Against Bryant And The MGA Parties. .......... 8

    C.   During the Jury's Phase 1(a) Deliberations, Juror No. 8 Made "Grossly Inappropriate Remarks" About Iranians To Other Jurors. ......... 9

    D.   The Phase 1(a) Verdict. .................................................... 10

    E.   Phase 1(b) Commences, But Is Interrupted When Juror No. 8's Racially Charged Comments Are Discovered; The Court Denies The MGA Parties' Motion For Mistrial. .......... 11

    F.   The Phase 1(b) Trial. ...................................................... 12

        1.   Infringement, Profits And Brand Development Evidence. .......... 12

        2.   The Verdict Form. ............................................. 14

        3.   The Phase 1(b) Instructions, Deliberations And Verdict. ......... 15

    G.   Mattel's Motions For Equitable Remedies And The Court's Sweeping Orders. ......... 16

    H.   Unavailability Of Relief In District Court. .......... 19

-i-

EXHIBIT _____2_____

PAGE _____44_____

# TABLE OF CONTENTS

Page

ARGUMENT . . . . . 20

I.   THE EQUITIES WEIGH HEAVILY IN FAVOR OF GRANTING A STAY PENDING APPEAL. . . . 20

   A.   The Standard For Granting A Stay Pending Appeal. . . 20

   B.   Irreparable Injury Here Is Manifest: . . . 22

   C.   Mattel Cannot Show It Will Be Equally Harmed By A Stay. . . . 25

   D.   The Public Interest Favors A Stay. . . . 27

II.  THE APPEAL WILL RAISE SUBSTANTIAL ISSUES (INDEED, ISSUES ON WHICH MGA IS LIKELY TO PREVAIL). . . . 28

   A.   In Issuing The Sweeping Copyright Injunction, The District Court Violated The Seventh Amendment By Reexamining Facts Necessarily Decided By The Jury And Misapplied The Standards Enunciated In eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006). . . . 28

      1.   The District Court Was Required To Accept The Jury's Implicit Finding That Only A Small Portion Of MGA's Profits Were Attributable To Mattel's Copyright. . . . 30

      2.   The District Court Should Have Interpreted The Jury's Verdict As A Finding That Only The First Generation Bratz Dolls Infringed Mattel's Copyright. . . . 35

-ii-

EXHIBIT _____ 2

PAGE _____ 45

# TABLE OF CONTENTS

Page

3.   The District Court's Failure To Submit A Special Interrogatory Specifying Which Products Infringed, Which Would Inevitably Require A Reexamination Of Facts In Violation Of The Seventh Amendment, Was An Abuse Of Discretion. ....................................................... 36

B.   A Constructive Trust Is An Improper Remedy. .................. 38

C.   The District Court Erred In Denying MGA's Motion For Mistrial And Allowing An Irrevocably Tainted Verdict To Stand. ...................................................... 41

1.   The MGA Parties Had A Constitutional Right To A Verdict Rendered By A Unanimous, Impartial Jury. ...................................................... 41

2.   Juror No. 8's Statements Showed Actual Bias. ...... 42

D.   The Verdicts On The State Law Claims Do Not Support The Constructive Trust/17200 Or Declaratory Relief Orders. ...................................... 44

1.   The State Law Tort Claims On Which The Constructive Trust/17200 Order Rests Are Precluded By The California Uniform Trade Secrets Act. ...................................................... 44

2.   As Bryant Owed No Fiduciary Duties To Mattel, The MGA Parties Could Not Have Aided And Abetted A Breach Of Fiduciary Duty. ................... 46

3.   The Intentional Interference With Contractual Relations Verdict Does Not Support The Constructive Trust/17200 And Declaratory Relief Orders. ...................................................... 48

-iii-

EXHIBIT _____ 2 _____

PAGE _____ 46 _____

# TABLE OF CONTENTS

**Page**

4.   The Aiding And Abetting Breach Of The Duty
     Of Loyalty Verdict Does Not Support The
     Constructive Trust/Section 17200 Order.                    49

CONCLUSION                                                        50

-iv-

EXHIBIT _____ 2 _____

PAGE _____ 47 _____

## TABLE OF AUTHORITIES

**Page**

### Cases

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941 (N.D. Cal. 2003) ... 45

*Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554 (D. Del. 2008) ... 34

*Advanced Med. Optics, Inc. v. Alcon Labs., Inc.*, No. Civ.-A03-1095-KAT, 2005 WL 3454283 (D. Del. Dec. 16, 2005), *appeal dismissed*, 197 Fed. Appx. 939 (Fed. Cir. 2006) ... 21, 22, 26

*Ag Servs. of Am. v. Nielsen*, 231 F.3d 726 (10th Cir. 2000) ... 31

*Am. Credit Indem. Co. v. Sacks*, 213 Cal. App. 3d 622 (1989) ... 45

*Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327 (1966) ... 49

*Bennigan's Franchising Co. v. Swigonski*, No. 3:06-CV-2300-G, 2007 WL 603370 (N.D. Tex. Feb. 27, 2007) ... 27

*BR Assocs. v. LaFramboise*, No. 06-11870-BC, 2007 WL 1840031 (E.D. Mich. June 26, 2007) ... 27

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999) ... 39, 40

*Brown v. Ornoski*, 503 F.3d 1006 (9th Cir. 2007), *cert. denied*, 129 S.Ct. 63 (2008) ... 29

*Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619 (9th Cir. 1999) ... 45, 46

*Cadence Design Sys., Inc. v. Avant! Corp*, 125 F.3d 824 (9th Cir. 1997) ... 25

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375 (2008) ... 36, 39, 47, 48

-v-

EXHIBIT ___2___

PAGE ___48___

*Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980 (1995) ............ 39

*Conversive, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999) ............ 39

*Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001) ............ 38

*Davies v. Krasna*, 14 Cal. 3d 502 (1975) ............ 47, 49

*Designer Skin, LLC v. S&L Vitamins, Inc.*, No. CV 05-3699-PHX-JAT, 2008 WL 4174882 (D. Ariz. Sept. 5, 2008) ............ 34, 35

*Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025 (N.D. Cal. 2005) ............ 45

*Dun v. Lumbermen's Credit Ass'n*, 209 U.S. 20 (1908) ............ 32

*Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998) ............ 41

*E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277 (Fed. Cir. 1987) ............ 25

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ............ 4, 28, 32, 33, 34

*Elliott v. Elliott*, 231 Cal. App. 2d 205 (1964) ............ 41

*Ernest Paper Prods., Inc. v. Mobil Chem. Co.*, No. CV 95-7918, 1997 WL 33483520 (C.D. Cal. Dec. 2, 1997) ............ 45

*Estrada v. Scribner*, 512 F.3d 1227 (9th Cir. 2008) ............ 12, 41

*Etuk v. Slattery*, 936 F.2d 1433 (2d Cir. 1991) ............ 44

*Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112 (9th Cir. 2008) ............ 20, 21

*GTE Prods. Corp. v. Kennametal, Inc.*, 772 F. Supp. 907 (W.D. Va. 1991), *appeal dismissed*, 988 F.2d 131 (Fed. Cir. 1993) ............ 21, 26

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ............ 20

*Humane Soc'y of the United States v. Gutierrez*, 527 F.3d 788 (9th Cir. 2008) ............ 21

EXHIBIT _____ 2

PAGE _____ 49

*In re Hayes Microcomputer Prods., Inc. Patent Litig.*, 766 F. Supp. 818 (N.D. Cal. 1991), *aff'd*, 982 F.2d 1527 (Fed. Cir. 1992) ... 25, 26

*Johnson v. Louisiana*, 406 U.S. 356 (1972) ... 41

*Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365 (9th Cir. 1987) ... 37

*Los Angeles Police Protective League v. Gates*, 995 F.2d 1469 (9th Cir. 1993) ... 30

*McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548 (1984) ... 42

*MGM Studios, Inc. v. Grokster, Inc.*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007) ... 34

*Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838 (9th Cir. 1969), *criticized in part on other grounds*, *Golden Door, Inc. v. Odisho*, 646 F.2d 347 (9th Cir. 1980) ... 40

*Murray v. Laborers Union Local No. 324*, 55 F.3d 1445 (9th Cir. 1995) ... 41

*Nat'l Res. Def. Council, Inc. v. Winter*, 508 F.3d 885 (9th Cir. 2007) ... 32

*Noble v. Noble*, 198 Cal. 129 (1926) ... 41

*Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592 (D. Del. 2007) ... 34

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821 (7th Cir. 1978) ... 30, 31

*Paice, LLC v. Toyota Motor Corp.*, 504 F.3d 1293 (Fed. Cir. 2007) ... 33

*Paice, LLC v. Toyota Motor Corp.*, No. 2:04-CV-211-DF, 2006 WL 2385139 (E.D. Tex. Aug. 16, 2006), *aff'd in part, vacated in part on other grounds*, 504 F.3d 1293 (Fed. Cir. 2007) ... 32, 33

EXHIBIT _____ 2 _____

PAGE _____ 50 _____

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978) .......... 33

*Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141 (2005) .......... 46, 47

*Populist Party v. Herschler*, 746 F.2d 656 (10th Cir. 1984) .......... 20

*Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257 (2003) .......... 47

*Silverstein v. Penguin Putnam*, 368 F.3d 77 (2d Cir. 2004) .......... 32

*Springville v. Thomas*, 166 U.S. 707 (1897) .......... 41

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511 (Fed. Cir. 1990) .......... 21, 27

*Sun Optics, Inc. v. FGX Int'l, Ltd.*, No. 07-137-SLR, 2007 WL 2228569 (D. Del. Aug. 2, 2007), *appeal dismissed*, 275 Fed. Appx. 967 (Fed. Cir. 2008) .......... 34

*Sundance, Inc. v. DeMonte Fabricating Ltd.*, No. 02-73543, 2007 WL 37742 (E.D. Mich. Jan. 4, 2007) .......... 34

*Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552 (Fed. Cir. 1984) .......... 35

*United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90 (1918) .......... 40

*United States v. 1020 Elec. Gambling Machs.*, 38 F. Supp. 2d 1219 (E.D. Wash. 1999) .......... 27

*United States v. Allsup*, 566 F.2d 68 (9th Cir. 1977) .......... 45

*United States v. Gonzalez*, 214 F.3d 1109 (9th Cir. 2000) .......... 42

*United States v. Henley*, 238 F.3d 1111 (9th Cir. 2001) .......... 41, 42

*United States v. Shapiro*, 669 F.2d 593 (9th Cir. 1982) .......... 43

*United States v. Sturdivant*, 244 F.3d 71 (2d Cir. 2001) .......... 36

*W. Med. Consultants v. Johnson*, 80 F.3d 1331 (9th Cir. 1996) .......... 49

EXHIBIT _____ 2 _____

PAGE _____ 51 _____

*Wang Labs., Inc. v. Toshiba Corp.*, Civ. No. 90-1477-A, 1991 WL 333701 (E.D. Va. Aug. 23, 1991) .......... 25

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir. 1977) .......... 21

*Wolf v. Superior Court*, 107 Cal. App. 4th 25 (2003) .......... 48

*z4 Techs., Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437 (E.D. Tex. 2006) .......... 32

## Constitutional Provisions

U.S. CONST. amend. V .......... 41

U.S. CONST. amend. VII .......... 41

## Statutes & Rules

17 U.S.C. §507(b) .......... 26

Fed. R. App. P. 8(a)(A)(i), (ii) .......... 7, 20

Fed. R. Civ. P. 12(h)(2)(C) .......... 46

CAL. BUS & PROF. CODE §17200 .......... 17, 45

CAL. CIV. CODE
§1654 .......... 39
§3426.7 .......... 45

## Other Authorities

2 DAN B. DOBBS, DOBBS LAW OF REMEDIES (2d ed. 1993)
§6.3(5) .......... 27
§6.6(3) .......... 40

3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §18:2 (4th ed. 2008) .......... 39, 40

-ix-

EXHIBIT _____ 2 _____

PAGE _____ 52 _____

## INTRODUCTION

Appellant MGA Entertainment, Inc. ("MGA")                    unless this Court grants an emergency stay pending appeal of three orders entered by the District Court on December 3, 2008 ("the Orders"). Although MGA sought a stay below, and explained the exigent circumstances necessitating that a stay be in place before December 31, 2008, the court yesterday suspended further briefing on the stay motion and indicated it will be unavailable the whole week of December 22.

MGA manufactures and sells a hugely successful line of fashion dolls and accessories under the name "Bratz." These products, brought to market in 2001, have hundreds of millions of dollars of annual worldwide sales. MGA employs over 1,500 people, and its suppliers and retailers employ many more. The Orders require it to do nothing less than hand over the entire Bratz brand to Appellee Mattel, Inc. ("Mattel"). Given the importance of the Bratz products to MGA, if the Orders go into effect

The Orders are the result of numerous serious errors of law (of which only a few can be summarized in this emergency motion) and are very likely to be reversed on appeal. But if they are not immediately stayed,

- 1 -

EXHIBIT _____ 2 _____

PAGE _____ 53 _____

In contrast, entry of a stay will result in no irreparable harm to Mattel. At a minimum, any harm that Mattel could possibly suffer from a stay of the Orders can be monetarily compensated. And a stay could be conditioned on payment of an interim royalty into escrow that would reflect the small contribution to MGA's profits that the jury found was attributable to the infringement of Mattel's copyright. *See* p.26-27, *infra*. In short, all the irreparable harm is on MGA's side of the equity balance sheet. Continuing to maintain the status quo until the validity of the Orders is resolved will not harm Mattel.

The Orders are sweeping and breathtaking. The Copyright Injunction—which is eleven pages long and has eight inches of exhibits—prohibits MGA from selling or licensing any of its several thousand Bratz products (from dolls to keychains to lamps), requires MGA to recall from retailers around the globe each and every Bratz product they have on hand, and orders MGA to turn over to Mattel "for impoundment" all of the Bratz products in its possession, custody or control. The Constructive Trust/17200 Injunction Order imposes a constructive trust in favor of Mattel on all of MGA's worldwide trademarks, service marks and domain names that include the words "Bratz" or "Jade" (one of the dolls). Finally, the Declaratory Relief Order grants Mattel ownership of "ideas" and "concepts" for names and characters, declares that numerous Bratz-related copyright registrations are subject to a constructive trust in favor of Mattel, and requires MGA to turn over certain Bratz-related property to Mattel.

2

EXHIBIT ____ 2

PAGE ____ 54

The situation is dire.  Because of the Orders,

*See* Part I(B), *infra*.

Given this lopsided imbalance of equities, to obtain a stay MGA need only show that its appeal will present "serious legal questions."  MGA easily meets this standard.  Its appeal raises a number of substantial legal questions—issues on which it is, indeed, *likely* to prevail.  These include:

- *Seventh Amendment Issues.*  In awarding only a tiny fraction of the copyright damages sought, the jury necessarily found that nearly all the profits from the Bratz products are attributable to factors *other*

3

EXHIBIT _____ *2*

PAGE _____ *55*

*than copyright infringement*, including MGA's efforts and contributions to brand development. Yet, in violation of the Seventh Amendment, the District Court reexamined the facts and made findings that are profoundly inconsistent with the jury's necessary findings. For example, it found that MGA earned profits "totaling hundreds of millions of dollars" from infringement whereas the jury found only $10 million of such profits. On the basis of its own findings, the court enjoined the continued manufacture and sale of thousands of products that the jury found to have benefited only slightly—at most—from Mattel's copyrighted materials. *See* Part II(A), *infra*.

- *Misapplication Of Supreme Court Precedent On Injunctions.* Given this jury finding, and the enormous harm this sweeping injunction would cause, the court misapplied the standards for granting injunctive relief in intellectual property cases established in *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Mattel's interests could be protected by imposition of a royalty compensating it for the small contribution its copyrighted materials make to MGA's profits. Moreover, this relief would avoid the injury to third parties, the bankruptcy of MGA, the loss of employment to hundreds of workers, and the injury to suppliers, retailers, creditors of MGA and the public that the injunction will inevitably cause.

4

EXHIBIT 2

PAGE 56

- *Erroneous Imposition Of Constructive Trust.* The Constructive Trust/17200 Order and the Declaratory Relief Order are based on the premise that under an agreement between Mattel and the employee who thought of the idea for the names "Bratz" and "Jade" ("the Names"), Mattel became their owner. This is incorrect and the constructive trust remedy was therefore improper. Under that agreement, Mattel acquired rights to the employee's "inventions" that were potentially patentable or copyrightable expression, but not to his ideas for product names. Moreover, as a fundamental matter of trademark law, no one owned the idea for those Names until, long after the employee left Mattel, MGA used them with its products. *See* Part II(B), *infra*.

- *Participation In Verdict By Bigoted Juror.* The jury that rendered the verdicts on which the Orders rest included a woman who made outrageous and racially biased statements during jury deliberations to the effect that persons of Appellant Larian's Iranian descent are prone to stealing "other persons ideas." The court excused her from serving in the trial's second phase, finding her unfit to serve. However, it denied a mistrial, erroneously holding that she was not biased in "the legal sense" and that in any event MGA was not entitled to a unanimous decision of impartial jurors in a civil case—a point that is

5

EXHIBIT _____ 2

PAGE _____ 57

inconsistent with decisions of this Court and the United States Supreme Court. *See* Part II(C), *infra*.

- **Flawed State Law Claims On Which The Constructive Trust Rests.** Even if Mattel had rights to the Names, they would extend only to contractual remedies against Mattel's former employee, but would not prevent a third party's use of the underlying idea. Moreover, the court's imposition of a constructive trust and an injunction was error because the underlying state law claims on which they were based are multiply flawed. Among other things: (1) the California Uniform Trade Secrets Act displaces state law tort claims for improper disclosure of proprietary information; and (2) MGA did not aid and abet the Mattel employee's breach of fiduciary duty because he was not a fiduciary. *See* Part II(D), *infra*.

MGA filed its application for stay in the District Court on December 11, 2008. The parties stipulated to a briefing schedule, which the District Court (*sua sponte*) has just suspended. Exs. 44, 45, 46.[1] Because the court has advised that it will be "dark" during the entire week of December 22, it is now unlikely that it will even rule on MGA's stay application before the end of the year. Given MGA's urgent need for a stay within that period (*see* p.3, *supra*;

---

[1] Exhibits, both public and those filed under seal, filed in support of this Emergency Motion are submitted in separate volumes, tabbed in chronological order, and cited as "Ex. [Tab Number] (Page Number)" or "Sealed Ex. [Tab Number] (Page Number)." We can supplement Record Transcripts on request.

EXHIBIT ___2___

PAGE ___58___

Part I(B), *infra*), relief from the dire consequences of the Orders is not available in the District Court (*see* FED. R. APP. P. 8(a)(2)(A)(i), (ii). Accordingly, the District Court's failure to rule on the stay application in time to avoid irreparable injury is tantamount to its denial. For that reason, MGA is filing this motion even though, despite its diligent efforts, it has been unable to obtain a formal ruling from the District Court on its stay request.

## STATEMENT OF FACTS

### A. MGA's Development Of The Successful Bratz Brand.

MGA manufactures and sells a line of fashion dolls and related accessories under the name "Bratz." Ex. 18 (5751:9-18). The Bratz line of dolls and branded products are identifiable by their hip, multi-ethnic, urban look that appeals to contemporary teenage and pre-teen girls. Ex. 6 (747:13-748:12); Ex. 7 (911:5-9); Ex. 11 (3119:24-3120:11); E x. 25 (7092:16-19). Appellant Isaac Larian is the founder and Chief Executive Officer of MGA. Ex. 8 (1573:9-12). He was born in Iran and immigrated to this country by himself when he was 17 years old. Ex. 10 (2065:8-23). Appellant MGA Entertainment HK, Ltd. ("MGA HK") is a wholly owned subsidiary of MGA. (MGA, Larian and MGA HK are referred to collectively as the "MGA Parties.")

The initial inspiration for the Bratz dolls came from a young designer named Carter Bryant. In October 2000, Bryant transferred ownership of the Bratz concept that he had created, including approximately twenty drawings he had made of Bratz dolls, to MGA. Sealed Ex. 10. At the same time, he agreed

to become a consultant to MGA. Ex. 11 (3048:10-15). After an intensive effort
by MGA artists, designers and sculptors (Ex. 21 ( 6724:11-6732:15); Ex. 23
(6784:11-6797:10,  6839:18-6842:8,  6852:24-6853:6);  Ex. 24  (6872:21-
6873:19, 6930:5-12, 6937:12-6938:3, 6941:6-6942:2, 6958:21-6960:4)), MGA
introduced the Bratz dolls in 2001. Ex. 2 ¶8. They were an instant success.
Today, there are over 14,000 Bratz products in the marketplace, excluding
licensed products Ex. 20 (6380:22-6381:3), and

Sealed Ex. 9 ¶8.

MGA presently employs over 1,500 people, most of whom reside in Southern
California. *Id.* ¶5.

## B.  Mattel's Allegations Against Bryant And The MGA Parties.

In 2004, Mattel brought suit against Bryant, who had worked for Mattel
from September 1995 to April 1998 and again from January 1999 to October
2000. Ex. 1 ¶9. Mattel alleged that Bryant's work for an unnamed "competi-
tor" violated Bryant's obligations to Mattel under a "Employee Confidential
Information and Inventions Agreement" by which Bryant agreed not to work
for any Mattel competitors and to assign to Mattel any "inventions . . . con-
ceived or reduced to practice by [Bryant] . . . at any time during [his] employ-
ment by the Company" (the "Inventions Agreement"). *Id.* ¶10 & Ex. A.

In 2005, MGA sued Mattel in federal court for unfair competition, alleging
that Mattel was introducing products that copied MGA's Bratz line of dolls and

8

EXHIBIT _____ 2 _____

PAGE _____ 60 _____

engaging in other forms of unfair competition. Ex. 2 ¶¶33-66. In early 2007, Mattel counterclaimed against the MGA Parties and Bryant claiming that Bryant had "create[d] the concept, design and name of Bratz," and drawings and models of Bratz dolls while employed by Mattel, and had assisted MGA in producing Bratz dolls before he had formally resigned from Mattel. Sealed Ex. 1 at 35, ¶26. Mattel alleged that the MGA Parties encouraged and aided Bryant's alleged breaches of his obligations to Mattel. These allegations formed the basis of Mattel's claims (1) against both Bryant and the MGA Parties for, *inter alia*, copyright infringement of the Bratz drawings that Mattel claimed Bryant had made while employed by Mattel, conversion and unfair competition (*id.* ¶¶82-87, 155-66); (2) against Bryant for breach of contract, breach of fiduciary duty, and breach of duty of loyalty (*id.* ¶¶116-21, 129-35, 142-48); and (3) against the MGA Parties for intentional interference with contractual relations, aiding and abetting breach of fiduciary duty, and aiding and abetting breach of duty of loyalty. *Id.* ¶¶122-29, 136-41, 149-54.

### C. During the Jury's Phase 1(a) Deliberations, Juror No. 8 Made "Grossly Inappropriate Remarks" About Iranians To Other Jurors.

After making a series of summary adjudication rulings, several of which are discussed below, the first part of a three-phase trial commenced on May 20, 2008. This "Phase 1(a)" trial addressed the factual issue of when Bryant created his Bratz drawings— *i.e.*, in the period between his two stints at Mattel, as he contended and as he had represented to MGA at the time he "pitched" his

9



EXHIBIT _____ 2

PAGE _____ 61

Bratz drawings to MGA or, as Mattel contended, after he had returned to work for Mattel.  Phase 1(a) also addressed Mattel's claims against the MGA Parties for (1) aiding and abetting Bryant's alleged breach of his duty of loyalty; (2) aiding and abetting Bryant's alleged breach of fiduciary duty to Mattel; (3) intentional interference with contractual obligations; (4) conversion; and (5) unfair competition.  (Bryant settled with Mattel before trial commenced. Ex. 5.

Closing argument ended on July 10, 2008.  The jurors deliberated for almost a week before rendering a verdict.  On the last day of deliberations, in the course of discussing issues on which the jury was deadlocked, Juror No. 8 "indicated that her husband, an attorney, [had] told her about [a] client or clients who are Iranian and who are stubborn, rude, *and have stolen other person's ideas.*"  Ex. 17 at 1 ¶1 (emphasis added); *see also* Ex. 16 (5663:5-11); Ex. 22 at 4.

### D.   The Phase 1(a) Verdict.

On July 17, 2008, the jury, which still included Juror No. 8, reached its verdict.  It found that all but four of Carter Bryant's drawings as well as two "sculpts" (which are used to create doll molds) were created by Bryant while he was an employee of Mattel, and that Bryant had conceived the Bratz characters and the name "Bratz" while employed by Mattel.  Ex. 13 at 1-5 [Phase 1(a) Verdict Form].  It further found that MGA and Mr. Larian had intentionally

10

EXHIBIT _____ 2 _____

PAGE _____ 62 _____

interfered with Bryant's contractual relationship with Mattel, had aided and abetted Bryant's breach of his fiduciary duty to Mattel, and had aided and abetted Mr. Bryant's breach of his duty of loyalty to Mattel. *Id.* at 6-7.[2]

### E. Phase 1(b) Commences, But Is Interrupted When Juror No. 8's Racially Charged Comments Are Discovered; The Court Denies The MGA Parties' Motion For Mistrial.

Phase 1(b), which was supposed to resolve Mattel's claims of copyright infringement as well as the damages to be awarded to Mattel on the claims for which the jury had found liability in Phase 1(a), commenced on July 23, 2008. After opening statements,          told the court:

Sealed Ex. 4 (5:9-12).

*Id.* (12:25-13:25);

Ex. 16 (5647:6-11). It then made oral findings from the bench, disclosing Juror No. 8's statements and expressing dismay that she would "harbor" such prejudice in "this day and age," particularly without disclosing her bias at *voir dire. Id.* (5663:5-11, 5655:23-5656:4). The court characterized these biased views as a "cancer" in the proceedings and described the various resulting emotional distresses of the other jurors. (Ex. 16 at 5655:10-12, 5648:7-14.) The court subsequently summarized its findings on July 25, 2008, in a written order excusing her.

---

[2]The jury also found the MGA Parties liable to Mattel for conversion of Bryant's actual, physical drawings of the Bratz dolls. Ex. 13 at 7.

11

EXHIBIT _____ 2

PAGE _____ 63

On July 29, 2008, MGA filed a Motion for Mistrial. Sealed Ex. 5. The court denied the motion. It said that Juror No. 8 was not "biased in the legal sense." It even rejected the premise that Juror No. 8 "herself held certain pre-conceptions about Iranians or Persians." Ex. 22 at 7. Instead, the court analyzed the issue as nothing more than the introduction into the jury room of "extraneous information"—here, the views about Iranians of Juror No. 8's husband. The court concluded that, because the juror's views about Iranians did not, in its view, affect the verdict, there was no need for a mistrial. *Id.* at 6. Applying the harmless error analysis of *Estrada v. Scribner*, 512 F.3d 1227, 1238 (9th Cir. 2008), The court also rejected MGA's argument that civil litigants, like defendants in criminal cases, have a constitutionally protected right to a unanimous verdict by an impartial jury and that the presence of even one biased juror requires a retrial. *Id.* at 8-10.[3]

### F. The Phase 1(b) Trial.

#### 1. Infringement, Profits And Brand Development Evidence.

The Phase 1(b) trial resumed on August 5, 2008. The parties submitted conflicting evidence as to whether and to what extent any of MGA's Bratz products infringed Mattel's copyrights in the drawings and two sculpts that the jury, in Phase 1(a), found had been made by Carter Bryant when he was an

---

[3]Seeking a stay of the just-commenced Phase 1b trial, the MGA Parties filed a Petition for Writ of Mandamus in this Court, which was denied. *In re MGA Entm't, Inc.*, No. 08-73438, Slip op. (9th Cir. Aug. 12, 2008).



EXHIBIT _____2_____

PAGE _____64_____

employee of Mattel. Mattel repeatedly emphasized what it believed were similarities between the Bryant drawings and the "first generation Bratz dolls"—the first four dolls that were introduced in 2001, and in the market through early 2003. Ex. 14 (5421:25-5424:12, 5429:16-5432:3); Ex. 18 (5752:6-5753:1); Ex. 32 (8141:17-8142:22). Most of the visual comparisons shown to the jury in Mattel's opening statement and closing argument compared the Bryant drawings to first generation dolls. *See* Ex. 14 (5421:25-5425:22); Ex. 32 (8141:17-8142:22).

MGA submitted evidence that later generation dolls were created independently of the Bryant drawings and differ substantially from the first generation dolls. Ex. 26 (7249:1-9, 7198:12-7199:4, 7197:7-9). During closing argument, counsel for Mattel acknowledged that the hair, face paint and clothes on later generation dolls were different than on the first generation dolls. Ex. 32 (8154:4-13, 8155:14-15).

A Mattel expert testified that, as damages for the MGA Parties' alleged copyright infringement, Mattel was entitled to all the profits that the MGA Parties had received from Bratz-related sales since the introduction of the product in 2001. Those claimed profits were $777.9 million from MGA, $696 million from Isaac Larian, and $777.9 million from MGA HK, for a total of $2.251 billion. Ex. 33 (8268:7-13). Mattel did not present any evidence of the MGA Parties' profits from only the first generation dolls. The MGA Parties' expert testified that MGA had earned $4 million in profits from the first gen-

13

EXHIBIT _____ 2 _____

PAGE _____ 65 _____

eration dolls (Ex. 29 (7784:2-9)), and that MGA's total profits from all Bratz products were $405 million. *Id.* (7693:21-24).

The MGA Parties presented both expert and percipient testimony demonstrating the enormous time, effort and resources that MGA and Mr. Larian had devoted to creating the Bratz brand, and the contribution that these efforts made to the financial success of the brand. *See, e.g.*, Ex. 27 (7369:19-7372:21); Ex. 24 (6868:11-6869:7, 6925:2-6926:19, 6950:15-6951:15).

### 2. The Verdict Form.

MGA proposed a verdict form for Phase 1(b) pursuant to which the jury would specifically identify which of the many accused products it found to be infringing. Ex. 28 at 2-6. Mattel objected, arguing instead for a general verdict on the issue of infringement. *See* Ex. 30 (7985:11-13, 7994:4-16, 8030:1-9, 8036:5-8). The court initially agreed that MGA's proposed form was appropriate since, among other things, specific infringement findings would help the court in "tailoring injunctive relief." *Id.* (7978:14-18; 7989:19-21). In the end, however, the court adopted Mattel's proposed verdict form.

Counsel for Mattel argued that, for purposes of any later request for injunctive relief, the court would be able to "discern" the scope of the jury's infringement finding from the size of the jury's damages award:

> And the damages number is going to reflect the overall award one way or the other. You're going to be able to discern from the damages award what the jury finds. So the jury will make a finding and make a damages award based on that. The only finding that's legally

14

EXHIBIT ____ 2 ____

PAGE ____ 66 ____

required is the finding of copyright infringement. (*Id.* (7981:22-7982:3))

*See also id.* (7978:5-10) ("The Court: I could very well see a jury finding substantial similarity with respect to certain dolls or classes of dolls and . . . not finding it with respect to others. [Counsel for Mattel]: Sure, but their . . . damages award will reflect that").

### 3. The Phase 1(b) Instructions, Deliberations And Verdict.

At the close of the evidence, the court instructed the jury that Mattel was entitled to recover any MGA profits "attributable to the infringement," but "only if you find that [Mattel] showed a causal relationship between the infringement and the [MGA Parties'] gross revenue." Ex. 34.

The jury began deliberations on Thursday August 21, 2008. On Friday, August 22, the jury sent a note to the court: "Can we find that the first generation of dolls violate the copyright of Mattel but that subsequent generations of dolls do not violate the copyright?" Ex. 36 (8288:3-9). With the approval of both MGA and Mattel, the court responded that it could. *Id.* (8288:16-8290:23). The same juror note also stated that the jury had a "dilemma" concerning "appropriation of first generation, \$4 million profit." *Id.* (8288:12-13).

The jury did not deliberate on Monday, August 25, 2008. Ex. 35 (8283:1-15). On Tuesday, August 26, 2008, the jury reached its verdict. The jury found copyright infringement, but rejected Mattel's claim that it was "willful." Ex. 38 at 4-5. Although Mattel had sought a total of \$2.251 billion in MGA profits

15

EXHIBIT 2

PAGE 67