from allegedly infringing sales, the jury found that Mattel should be awarded $10 million: $6 million from MGA and $1 million from MGA HK. *Id.* at 5. With respect to Mr. Larian, the jury found that he had received distributions from MGA attributable to infringing Bratz-related works of $3 million that he must disgorge, but that no part of the value of Mr. Larian's ownership percentage of MGA was attributable to infringing Bratz-related works. *Id.* The jury found that Mattel had failed to prove that any of the three MGA Parties had acted with malice, oppression or fraud. *Id.* at 6-7. Finally, on each claim for tortious interference with contractual relations, aiding and abetting breach of fiduciary duty and aiding and abetting breach of duty of loyalty, the jury awarded $20 million against MGA and $10 million against Mr. Larian. Ex. 38.

## G. Mattel's Motions For Equitable Remedies And The Court's Sweeping Orders.

On September 29, 2008, Mattel filed three motions seeking a series of equitable remedies based on the jury's Phase 1(a) and 1(b) verdicts. These were (1) a motion for permanent injunction under the Copyright Act, 17 U.S.C. §§502(a), 503(a), in which Mattel sought a complete ban on, and impoundment and recall of, any and all Bratz-related products; (2) a motion for constructive trust and finding of liability and injunctive relief under California Business and Professions Code Section 17200, in which Mattel sought a constructive trust over, and injunction barring use of, MGA's trademarks, service marks and domain names related to the Names; and (3) a motion for declaratory relief in

16

EXHIBIT _____ 2

PAGE _____ 68

which Mattel sought a declaratory judgment that, *inter alia*, all Bratz-related works created by Carter Bryant, and all ideas and concepts he conceived while he was employed by Mattel belonged to Mattel.

At the hearing on November 10, 2008, the court noted that "the measurable value to Bratz, the brand Bratz, to the dolls Bratz, to everything that came of it, is so much a function of what Isaac Larian and his team at MGA put into it," and that Mattel's position that the Court should "take everything that is of value" relating to Bratz and give it to Mattel was "quite a leap." Ex. 39 (60:24-61:13).

By orders entered on December 3, 2008 (the "Orders"), the court made that leap. It imposed a constructive trust on MGA's worldwide trademarks, service marks and domain names that include "Bratz" and "Jade." Ex. 40 at 6-7. The court also held that the MGA Parties had violated Section 17200 and should be enjoined from using these trademarks "anywhere in the world." *Id.* at 8; Ex. 41 at 2-3.

The court granted Mattel's motion for declaratory relief, declaring, *inter alia*, that Mattel owns all the "Bratz-related works, ideas, and concepts that Carter Bryant conceived or created while employed by Mattel, as found by the jury in this case, including the idea for the [Names]". Ex. 42 at 2. The court further ordered that all copyrights that MGA had obtained in the drawings and sculpts made by Carter Bryant were subject to a constructive trust in Mattel's favor. *Id.* at 5.

17

EXHIBIT _____ 2

PAGE _____ 69

Finally, the court granted Mattel's motion for a sweeping injunction essentially barring MGA from selling any Bratz-related products and requiring MGA to recall and impound all Bratz products presently in the marketplace. *See* Ex. 40 at 8-11. The court recognized that, under the Seventh Amendment, it was bound by the jury's "'implicit or explicit factual determinations'" (*id.* at 9), and that "the jury returned an award of damages that was far less than that sought by Mattel." *Id.* Nonetheless, it declared that it could "make no principled inferences [from the verdict] and must therefore engage in its own fact-finding." *Id.* at 10. The court then concluded that every Bratz product was substantially similar to the drawings and sculpts that the jury found were created by Bryant when he worked at Mattel. *Id.* at 11. Even though the jury had found that only $10 million of Bratz profits was attributable to Mattel's copyright, the court found that MGA had reaped profits "totaling hundreds of millions of dollars" from the infringement. *Id.* at 13 (emphasis added).

The court found there was irreparable injury "on the basis of the MGA parties' past infringement and the high probability of continued acts of infringement." *Id.* The court found that Mattel did not have an adequate remedy at law given that it would have to sue each retailer and distributor of Bratz products for infringement. *Id.* It recognized the hardship that its order would place on MGA, but "afford[ed] this [hardship] very little—if any—weight" because "the only hardship that will be suffered is lost profits from the cessation of . . . infringing activities." *Id.* at 13-14. Finally, the court recognized that "[t]here is

EXHIBIT _____ 2

PAGE _____ 70

a strong economic interest, especially in these troubled economic times, in maintaining a profitable enterprise as a going concern." *Id.* at 14. Notwithstanding this interest, the court held that "the public interest is served by precluding defendants from engaging in copyright infringement." *Id.* Rejecting the MGA Parties' argument that a royalty was a more appropriate remedy in these circumstances, the court stated that the failure of the parties to agree on a settlement that included a royalty, and the hostility between the parties, made such a remedy "unworkable." *Id.* at 15.

## H.    Unavailability Of Relief In District Court.

The court stayed its orders until mid-February, when it is expected to rule on certain post-trial motions. *Id.* at 16. As set out below, that temporary stay is insufficient to prevent both the collapse of MGA and the irreparable loss of the Bratz brand long before the propriety of the Orders will be determined by this Court. On December 9, MGA moved for an immediate stay. Sealed Ex. 7. The MGA Parties also filed a Notice of Appeal from the Orders on December 11, 2008. Ex. 43.

The parties stipulated to a briefing schedule, which the District Court has (*sua sponte*) just suspended pending resolution of a question regarding the classification of sealed declarations. Exs. 44, 45, 46. Because the court has advised that it will be "dark" during the week of December 22 (Ex. 46), it is now unlikely that the court will even rule on MGA's stay application before the

19

EXHIBIT _____ 2

PAGE _____ 71

end of the year. Given MGA's urgent need for a stay *before* the end of the year (*see* p.3, *supra*; Part I(B), *infra*), relief from the dire consequences of the Orders appealed from is not available in the District Court. *See* FED. R. APP. P. 8(a)(2)(A)(i), (ii). For that reason, MGA is filing this motion even though it has been unable to obtain a ruling from the District Court on its stay application. *See, e.g., Populist Party v. Herschler*, 746 F.2d 656, 657 n.1 (10th Cir. 1984).

## ARGUMENT

### I.

### THE EQUITIES WEIGH HEAVILY IN FAVOR OF GRANTING A STAY PENDING APPEAL.

### A.   The Standard For Granting A Stay Pending Appeal.

There are four factors to consider when determining whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008).

The "irreparably injured" and "likelihood of success" factors comprise "'a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" *Golden Gate*, 512 F.3d at 1116 (citation

20

EXHIBIT _____ 2
PAGE _____ 72

omitted). If the party seeking a stay shows that "'the balance of hardships tips sharply in its favor,'" the party need not make a strong showing of likelihood of success; relief is warranted if the appeal presents "'serious legal questions.'" *Id.* (citation omitted); *see also Humane Soc'y of the United States v. Gutierrez*, 527 F.3d 788, 790 (9th Cir. 2008). The "public interest" factor is then considered "separately from and in addition to whether the applicant [for stay] will be irreparably harmed absent a stay[.]" *Golden Gate*, 512 F.3d at 1116 (citation and internal quotation marks omitted).

Accordingly, when an injunction threatens to

, showing that "serious legal questions" are present is sufficient.[4] Similarly, an injunction that will

is appropriately stayed pending appeal.[5]

------

[4]

[5]*See GTE Prods. Corp. v. Kennametal, Inc.*, 772 F. Supp. 907, 921 (W.D. Va. 1991) (staying permanent injunction pending appeal when defendant "would suffer a loss of market share that it may not be able to regain"), *appeal dismissed*, 988 F.2d 131 (Fed. Cir. 1993); *Advanced Med. Optics, Inc. v. Alcon Labs., Inc.*, No. Civ.-A03-1095-KAT, 2005 WL 3454283, at *11 (D. Del. Dec. 16, 2005) (stay pending appeal where injunction would cause defendant to lose all its sales of infringing product), *appeal dismissed*, 197 Fed. Appx. 939 (Fed. Cir. 2006).

EXHIBIT      2
PAGE      73

## B.   Irreparable Injury Here Is Manifest:

Sealed Ex. 9 ¶8.  The Orders require nothing less than the complete termination of the Bratz brand.

22

EXHIBIT _____ 2

PAGE _____ 74

23

EXHIBIT _____ 2 _____

PAGE _____ 75 _____

**C.   Mattel Cannot Show It Will Be Equally Harmed By A Stay.**

In contrast to the

, Mattel will not suffer any appreciable

harm from issuance of a stay.  Mattel does not make any products that utilize

---

6

the Bratz name or the copyrighted works—a fact that weighs heavily against any claim that Mattel would be harmed if a stay issues. *See Wang Labs., Inc. v. Toshiba Corp.*, Civ. No. 90-1477-A, 1991 WL 333701, at *1 (E.D. Va. Aug. 23, 1991) ("In particular, the Court notes that [plaintiff] does not manufacture the patented invention itself and has not represented that it has attempted to exclude others from manufacturing it.   Hence, any harm to [plaintiff] from staying the injunction is less 'and of a different nature than harm to a patentee who is practicing its invention and fully excluding others'") (quoting *E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987)); *cf. Cadence Design Sys., Inc. v. Avant! Corp*, 125 F.3d 824, 828 (9th Cir. 1997) (noting authorities holding that presumption of harm to plaintiff based on copyright infringement is rebutted where the "plaintiff's copyrighted item is no longer on the market").

While MGA would continue to market and sell Bratz products while the appeal is pending, that is true in any intellectual property case in which a district court has issued an injunction.   Indeed, several courts have found that this fact does not provide a substantial basis for denying a stay pending appeal, even when, unlike here, the plaintiff itself is using the intellectual property at issue. *See, e.g., Advanced Med. Optics*, 2005 WL 3454283, at *11 ("While [plaintiff] will lose its right to exclusivity pending appeal and may suffer some injury to its reputation as a company that enforces its patent rights, a temporary

25

EXHIBIT _____ 2 _____

PAGE _____ 77 _____

stay [pending appeal] is not likely to cause irreparable harm"); *GTE Prods.*, 772 F. Supp. at 920-21.

That Mattel will not suffer any appreciable harm is demonstrated by its own conduct. Bratz products have been in the market since 2001. Mattel admittedly has been on notice of its purported claims against MGA since November 2003. *E.g.*, Sealed Ex. 2 at 26. Yet Mattel waited until three days before the copyright statute of limitations expired to assert these claims. Sealed Ex. 1; 17 U.S.C. §507(b). Moreover, Mattel never sought a preliminary injunction. In short, Mattel has survived for years with Bratz in the marketplace. It will survive until MGA's appeal is heard. In contrast, denying a stay likely will result in MGA's bankruptcy and the end of Bratz. The balance of equities is not close.

In all events, if—notwithstanding Mattel's lack of use of the intellectual property at issue—this Court believes it is appropriate to protect Mattel while the case is on appeal, requiring MGA to pay a reasonable royalty into escrow pending appeal is the preferable alternative to a                    injunction. *E.g., In re Hayes*, 766 F. Supp. at 823 (where injunction

, stay pending appeal issued and defendant required to pay reasonable royalty into escrow); *Standard Havens*, 897 F.2d at 516.

26

EXHIBIT _____ 2

PAGE _____ 78

### D. The Public Interest Favors A Stay.

As the District Court acknowledged, "[t]here is a strong economic interest, especially in these troubled economic times, in maintaining a profitable enterprise as a going concern." Ex. 40 at 14.[7] The public interest weighs heavily against                                        , stripping already struggling state and local governments of tax revenue and exacerbating the strain on public resources by                            . *See, e.g., United States v. 1020 Elec. Gambling Machs.*, 38 F. Supp. 2d 1219, 1225 (E.D. Wash. 1999) (public interest favored allowing casino employees to retain jobs and "avoid dependence upon government-provided benefits," even though certain casino operations were illegal and provided unfair edge over competitors); *Bennigan's Franchising Co. v. Swigonski*, No. 3:06-CV-2300-G, 2007 WL 603370, at *5 (N.D. Tex. Feb. 27, 2007).

Moreover, as the District Court noted, removing Bratz products from the marketplace also affects businesses other than MGA—such as retailers who face their own financial troubles. Ex. 39 (123:22-124:4). In fact, denying a stay literally will have global repercussions. MGA's international distributors

---

[7]*See also* 2 DAN B. DOBBS, DOBBS LAW OF REMEDIES §6.3(5), at 68 (2d ed. 1993) (if "destruction or even an injunction against distribution will prevent exploitation of economically valuable materials, the problem is one of economic waste, certainly if the economic value of the plaintiff's copyright is less than the economic costs entailed in the destruction or injunction") (footnote omitted); *BR Assocs. v. LaFramboise*, No. 06-11870-BC, 2007 WL 1840031, at *10 (E.D. Mich. June 26, 2007) (denying injunction which would cause waste).

EXHIBIT _____ 2

PAGE _____ 79

and licensees, who are uninvolved in this suit,

## II.

## THE APPEAL WILL RAISE SUBSTANTIAL ISSUES (INDEED, ISSUES ON WHICH MGA IS LIKELY TO PREVAIL).

**A.    In Issuing The Sweeping Copyright Injunction, The District Court Violated The Seventh Amendment By Reexamining Facts Necessarily Decided By The Jury And Misapplied The Standards Enunciated In *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).**

MGA's expert testified that its profits from the sale of Bratz products were at least $405 million. Ex. 29 (7693:21-25). Mattel's damages expert testified that MGA's Bratz profits were even higher, nearly $778 million. Ex. 19 (6287:19-21). Yet the jury, which was instructed that it should award Mattel "any profits of the defendants attributable to the infringement" (Ex. 34), awarded only $6 million in copyright damages against MGA. That sum is between .7% and 1.5% of MGA's total Bratz profits.

28

EXHIBIT _____ 2

PAGE _____ 80

The jury's proportionally small damages award is necessarily based on one or the other of two possible findings. First, the jury could have found that only a relatively small number of Bratz products—*i.e.*, the first generation dolls (which are no longer in production)—infringed Mattel's copyright, and awarded Mattel *all* the profits it found were made on these dolls.[8] Alternatively, the jury could have found that, although multiple Bratz products infringed, the products' profits were overwhelmingly attributable to factors unrelated to Bryant's drawings.[9] Either way, the jury *necessarily* found that the infringement of Mattel's copyright was not a significant factor in MGA's Bratz profits. That finding is incompatible with the sweeping copyright injunction entered by the District Court.[10]

---

[8]Although MGA's damages expert testified that the profits on the first generation dolls were only $4 million (Ex. 29 (7784:2-9)), the jury was not required to accept this testimony.

[9]The jury was instructed that it should not award profits proven to be "attributable to factors other than use of the copyrighted work." Ex. 34.

[10]Mattel has suggested two other ways to interpret the relatively small award, but neither of them is consistent with the instructions given to the jury. First, Mattel urged that the jury may have found substantial infringement but awarded only minimal damages because of MGA's assertion that it was in dire financial straits due to the verdict in Phase 1(a). However, the jury was instructed that Mattel was "entitled" to any and all profits attributable to the infringement, and "juries are presumed to follow the court's instructions." *Brown v. Ornoski*, 503 F.3d 1006, 1018 (9th Cir. 2007), *cert. denied*, 129 S.Ct. 63 (2008). Second, Mattel contended that the jury may have found substantial infringement but reduced the award because it believed, based on statements by MGA, that injunctive relief was likely to follow. But the possibility of injunctive relief was mentioned only in passing, and the brief comments were stricken by the judge. Ex. 20 (6385:17-6388:12). Moreover, the jury was
(continued . . . )

29



EXHIBIT 2

PAGE 81

### 1. The District Court Was Required To Accept The Jury's Implicit Finding That Only A Small Portion Of MGA's Profits Were Attributable To Mattel's Copyright.

The Seventh Amendment provides that "no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." This Court has held that this Amendment "'requires the trial judge to follow the jury's *implicit or explicit* factual determinations.'" *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993) (citation omitted; emphasis added); *see also Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir. 1978) ("The court may not make findings 'contrary to or inconsistent with the jury's resolution . . . of that same issue *as implicitly reflected in its general verdict . . . on the damages claim*'") (citation omitted; emphasis added).

This principle limited the injunctive relief available in this case. The jury necessarily found that the infringement of Mattel's copyright was not a significant factor in MGA's profits from the Bratz products. That finding bound the trial court, even though it is not possible to know whether the jury found that only the first generation of dolls infringed or that there was a smaller amount of infringement in a greater number of dolls. *Ohio-Sealy Mattress Manufacturing Co.* illustrates this point. There, the court concluded that while

---

( . . . continued)

specifically instructed not to consider testimony that was excluded or stricken. Ex. 34. This claim, too, is rebutted by the presumption that jurors follow the instructions.

30

EXHIBIT ___2___

PAGE ___82___

the general verdict "could not necessarily be said to have foreclosed any particular issue," the dollar amount of the verdict made it a "mathematical certainty" that the jury found the defendant to have violated the applicable law in some manner. 585 F.2d at 844. Accordingly, it held that "the district court should have approached the requested equitable relief in light of this established fact." *Id.*

The size of the jury's infringement award against MGA makes it a "mathematical certainty" that the jury found that the infringement of Mattel's copyright was *not* a significant factor in MGA's profits from Bratz. The court was required to accept this negative inference. *Ag Servs. of Am. v. Nielsen*, 231 F.3d 726, 733 (10th Cir. 2000). Instead, the court impermissibly made its own contrary finding that MGA's infringement was substantial. *See* Ex. 40 at 12 (noting in the course of the irreparable injury analysis that "the Court has found that hundreds of the MGA parties' products—including all the currently available core female fashion dolls Mattel was able to locate in the marketplace—infringe [Mattel's exclusive] rights [to the Bratz drawings"). Indeed, even though the jury had awarded a total of only *$10 million* for copyright infringement (Ex. 34 at 5), in awarding injunctive relief the court found that MGA had reaped profits *"totaling hundreds of millions of dollars"* from its infringement of Mattel's copyright. Ex. 40 at 13 (emphasis added).

Without these impermissible findings, the trial court could not have entered an order enjoining the sale of *all* Bratz products. "Injunctive relief must

31

EXHIBIT 2

83

be tailored to remedy the specific harm alleged" and an overbroad injunction "is an abuse of discretion." *Nat'l Res. Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007). Two years ago, the Supreme Court dramatically altered the legal landscape by rejecting the notion that "an injunction automatically follows a determination that a copyright has been infringed," and making clear that courts considering requests for injunctive relief must carefully analyze all of the traditional equitable considerations. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Since *eBay*, several courts have declined to issue permanent injunctions after finding that the degree of infringement was relatively small in comparison to the defendants' contribution to the value of the infringing product.[11] In one of the first post-*eBay* cases, for example, the court refused to grant a permanent injunction against Microsoft where the patented invention constituted only a small part of Microsoft's infringing system. *z4 Techs., Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437, 444 (E.D. Tex. 2006); *see also, e.g.*, *Paice, LLC v. Toyota Motor Corp.*, No. 2:04-CV-211-DF, 2006 WL 2385139, at *5 (E.D. Tex. Aug. 16, 2006) ("[t]he jury's damages award also indicates that the infringed

---

[11]Even in the pre-*eBay* era, courts recognized that injunctions were unnecessary and inappropriate if the scope of the infringement was relatively minor and the consequences of future infringement were relatively minimal or compensable through monetary damages. *See, e.g.*, *Dun v. Lumbermen's Credit Ass'n*, 209 U.S. 20, 23-24 (1908); *Silverstein v. Penguin Putnam*, 368 F.3d 77 (2d Cir. 2004).

EXHIBIT _____ 2 _____

PAGE _____ 84 _____

claims constitute a very small part of the value of the overall vehicles"), *aff'd in part, vacated in part on other grounds*, 504 F.3d 1293 (Fed. Cir. 2007).

Accordingly, under post-*eBay* case law, the minimal infringement found by the jury in this case cannot justify the court's broad injunction, especially in light of the following circumstances: (1) the availability of a royalty as an alternative remedy;[12] (2) the fact that the infringement was not willful; (3) the significant injury to employees of MGA who will be laid off if MGA is forced to stop manufacturing and distributing Bratz dolls; (4) the injury to retailers, licensees and their respective employees that would result from an injunction; (5) the injury to third-party lenders; and (6) consumers who will no longer be able to purchase the popular Bratz dolls.[13]

---

[12]Since *eBay,* there have been several cases in which an ongoing royalty has been endorsed as an alternative to an injunction where, as here, the degree of infringement is small. In *Paice,* for example, the court denied an injunction but ordered an ongoing royalty. *Paice, LLC v. Toyota Motor Corp.*, 2006 WL 2385139, at *5-6. The Federal Circuit affirmed the choice of remedy, noting that "[u]nder some circumstances, awarding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate." *Paice, LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007).

The District Court's rejection of this sensible alternative was utterly illogical. The court rejected a royalty because the parties could not negotiate one, which purportedly evidenced their "hostility" to one another. Ex. 40. But courts only need to make rulings when the parties have been unable or unwilling to reach agreement. And in the copyright and patent contexts, a judge can unilaterally impose a royalty notwithstanding hostilities or failed attempts at settlement. *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1159 (6th Cir. 1978).

[13]Although MGA competes with Mattel, the Bratz products were not accused of copying copyrighted designs that Mattel has ever produced or sold.
(continued . . . )

EXHIBIT 2

PAGE 85

In sum, the court erred when it issued a sweeping injunction based on a finding about the extent of infringement that conflicted with facts necessarily found by the jury.[14]

---

( . . . continued)

Moreover, Mattel chose to present no specific evidence of lost sales or market data. Indeed, it successfully fought to prohibit MGA from introducing any evidence concerning the comparative success of Barbie (Mattel's competing fashion doll) and Bratz. *See* Sealed Ex. 3. The absence of such evidence is fatal to Mattel's claim of irreparable injury. For example, in *Sundance, Inc. v. DeMonte Fabricating Ltd.*, No. 02-73543, 2007 WL 37742 (E.D. Mich. Jan. 4, 2007), the court denied an injunction despite direct competition between the parties because the plaintiff could not "tie alleged lost sales to the nature of [the defendant's] infringement." *Id.* at *2. And where, as here, there are several suppliers in the relevant market and the plaintiff's irreparable injury argument is premised on a general loss of market share, courts have declined to issue injunctions in the absence of specific evidence of lost sales or market data. *Compare Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554 (D. Del. 2008), *with Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 612-13 (D. Del. 2007).

[14]Moreover, by relying on a "categorical rule" that a finding of past infringement plus a likelihood of future infringement always constitutes irreparable injury, rather than examining the evidence to determine whether Mattel proved it would actually suffer such harm, the District Court applied an incorrect legal standard. *eBay Inc.*, 547 U.S. at 393-94. Although this Court has not expressly addressed the continuing validity of a presumption of irreparable harm, several courts have rejected such a presumption in light of *eBay*. *See, e.g., MGM Studios, Inc. v. Grokster, Inc.*, 518 F. Supp. 2d 1197, 1209-10 (C.D. Cal. 2007); *Sun Optics, Inc. v. FGX Int'l, Ltd.*, No. 07-137-SLR, 2007 WL 2228569, at *1 (D. Del. Aug. 2, 2007), *appeal dismissed*, 275 Fed. Appx. 967 (Fed. Cir. 2008). Further, such a presumption is unjustified where, as here, the plaintiff has never marketed, developed or sold the copyrighted work—and has not indicated any intent to do so in the future. *Compare Designer Skin, LLC v. S&L Vitamins, Inc.*, No. CV 05-3699-PHX-JAT, 2008 WL 4174882, at *5 (D. Ariz. Sept. 5, 2008) (finding that a "plaintiff meets the burden of proving irreparable harm by making this two-part showing" in a case where the plaintiff actively commercialized the underlying intellectual property). Accordingly, the court's reliance on this improper presumption

(continued . . . )

EXHIBIT _____ 2

PAGE _____ 86

### 2. The District Court Should Have Interpreted The Jury's Verdict As A Finding That Only The First Generation Bratz Dolls Infringed Mattel's Copyright.

Even if the jury's verdict was ambiguous as to whether subsequent generations of Bratz dolls infringed Mattel's copyright to a limited degree. Issuance of the copyright injunction would still have been erroneous. Any uncertainty regarding the jury's findings concerning the extent of infringement was due to Mattel's own conduct. Accordingly, the court should have resolved that uncertainty by adopting the interpretation of the verdict least favorable to Mattel—*i.e.*, that only the first generation dolls infringed. Had the court done that, no injunction could have issued inasmuch as MGA was no longer making those dolls. *See, e.g., Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1565 (Fed. Cir. 1984).

MGA proposed a verdict form that included specific questions about the scope of infringement; Mattel objected and the trial court refused to give it. *See* p.14-15; *supra.* But for Mattel's insistence on a verdict form that did not specify which products infringed, the claimed uncertainty upon which the court seized to justify its redetermination of the scope of infringement would not have arisen. Just as uncertainties in contracts are resolved against the drafter who created the uncertainty (*see, e.g., City of Hope Nat'l Med. Ctr. v. Genentech,*

_____

( . . . continued)

constitutes sufficient grounds to reverse the sweeping injunction or, at least, to remand for the court to reconsider the existence of irreparable harm under the proper standard.

*Inc.*, 43 Cal. 4th 375, 397-98 (2008)), the court should have interpreted the verdict against Mattel. Indeed, it would be improper and inequitable to allow Mattel to benefit from an uncertainty that it caused. *See, e.g., United States v. Sturdivant*, 244 F.3d 71, 77-78 (2d Cir. 2001) ("Principles of equity prohibit the government from benefiting from the prejudicial ambiguity that the government alone was responsible for creating"). The court should therefore have interpreted the verdict as finding that only the first generation dolls infringed Mattel's copyright.[15]

> **3.     The District Court's Failure To Submit A Special Interrogatory Specifying Which Products Infringed, Which Would Inevitably Require A Reexamination Of Facts In Violation Of The Seventh Amendment, Was An Abuse Of Discretion.**

The court found the verdict form too uncertain to bind it in fashioning injunctive relief. *See* p.18, *supra*. But that uncertainty would not have existed had the court submitted the verdict form that MGA proposed. That form would have listed the various MGA products and inquired whether they infringed. *See*

---

[15]Substantial evidence indicates that this is in fact the correct interpretation of the jury's verdict. The jury specifically asked during deliberations: "Can we find that the first generation of dolls violate the copyright of Mattel but that subsequent generations of dolls do not violate the copyright?" Ex. 36 (8288:6-9). The District Court responded that an infringement finding limited to the first generation dolls would be permitted. *Id.* (8288:16-8290:23). The same juror note also stated that the jury had a "dilemma" concerning "appropriation of first generation, $4 million profit." *Id.* (8288:12-13). While the precise "dilemma" is unclear, it is clear from this note that the jury conceptually separated first generation dolls from later generation dolls for purposes of its infringement analysis.



EXHIBIT _____ 2
PAGE _____ 88

p.14-15, *supra*. That particularized inquiry is comparable to what the court required in Phase 1(a), where the verdict form listed each of Carter Bryant's designs (four pages worth) and inquired whether it was "conceived or reduced to practice" by Bryant during his employment by Mattel. Ex. 13 at 1-4.[16] Failing to do so was a fundamental error that (1) predictably eviscerated MGA's right to have the scope of infringement determined by the jury; and (2) impermissibly empowered the Court to "redetermine" facts that necessarily must have been found by the jury. Seventh Amendment rights are not so ephemeral that courts may confer upon themselves the power to redetermine facts found by the jury through the device of rejecting simple steps that would reveal what the jury's findings were.

District Courts have broad discretion in determining whether to submit a special verdict. *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1374 (9th Cir. 1987). In the circumstances presented here, however, the court's failure to submit MGA's proposed special verdict form exceeded the bounds of this discretion.[17] The court *knew* that it would have to decide which products

---

[16]There can, therefore, be no credible argument that use of such a verdict form in Phase 1b would have been burdensome or inefficient.

[17]This Court has recognized that a trial court can abuse its discretion and "run afoul of the Seventh Amendment" by ordering bifurcation of a trial in a manner that permits reexamination of a factual issue decided by a jury. *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961-63 (9th Cir. 2001). Because the same principles apply here, if this Court concludes that the jury's verdict is too vague to bind the District Court, the case must be remanded for a new trial at which the jury is given an appropriate special verdict form allowing it to specify

(continued . . . )

37

EXHIBIT 2
PAGE 89

infringed in order to determine the appropriate equitable relief; and it *knew* the jury would have to make that determination as part of its consideration of damages. Ex. 30 (7978:14-18). It also *knew* that by submitting a general question on the issue of infringement, it ensured that the court would reexamine the jury's findings on the scope of infringement. Ex. 37 (8305:4-6). Such an end run around the Seventh Amendment cannot be permissible.

## B.   A Constructive Trust Is An Improper Remedy.

The District Court held that because "the MGA parties wrongfully acquired the *idea* for the [N]ame[s]" from Mattel, the Bratz and Jade *trademarks* are held in constructive trust for Mattel. Ex. 40 at 7 (emphasis added). This was error, for two distinct reasons.

First, Mattel never had a right to the Names. The Inventions Agreement, which defined what ideas of an employee belonged to the employer, applied only to "discoveries, improvements, processes, developments, designs, know-how, data computer programs and formula, whether patentable or unpatentable" (Ex. 1 at Ex. A ¶2(b)) and required Bryant to assign to Mattel "patents, copyrights, patent applications or copyright applications." *Id.* ¶2(a).[18]

---

( . . . continued)
which products infringe Mattel's copyright.

[18]The agreement also prohibited disclosure of "Proprietary Information, which included "trade secrets." Ex. 1 at Ex. A ¶1. As shown below, however, any tort claim based on disclosure of trade secrets is precluded by CUTSA. *See* pp.44-46, *infra*. Moreover, the agreement's definition of trade secret required that the information have "economic value." Ex. 1 at Ex. A ¶1(b). The names
(continued . . . )



38

Accordingly, the Inventions Agreement neither gave Mattel rights to ideas for a product name nor required Bryant to assign those ideas to Mattel.[19]  Indeed, even if it had, no one "owned" the Names, and no one had any right to assign them, until MGA acquired that right by putting them to use in connection with a product.  *See, e.g., Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999); *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1089-90 (C.D. Cal. 2006); 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §18:2 (4th ed. 2008) ("MCCARTHY").  Mattel therefore cannot meet the most basic requirement for a constructive trust: that it have an interest in the property subject to the trust.  *See Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 990 (1995).

Second, even if Mattel had a legally protectable interest in the *Names*, equity would not support imposing a constructive trust over the *trademarks*. The trademark property right does not exist apart from its actual use.  *E.g., Brookfield Commc'ns,* 174 F.3d at 1047, 1052 (conceiving of the name for a mark does not create exclusive rights to the use of that name).  This is because a

---

( . . . continued)
"Jade" and "Bratz," which at that time were unconnected with any product and had never been used in commerce (and were therefore not qualified for trademark protection), lacked economic value and therefore were not "Proprietary Information."

[19]Even if the agreement were ambiguous as to whether an idea for a name qualifies as an "invention," that ambiguity would have to be resolved against the drafter of the contract: Mattel. *See, e.g., City of Hope*, 43 Cal. 4th at 397; CAL. CIV. CODE §1654.

EXHIBIT _____ 2
PAGE _____ 91

trademark is merely a symbol of good will: if there is no business and no good will, a trademark symbolizes nothing. *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97-98 (1918); 3 MCCARTHY, §18:2. For this reason, "there are no rights in a trademark alone and . . . no rights can be transferred apart from the business with which the mark has been associated." *Mister Donut of America, Inc. v. Mr. Donut, Inc.*, 418 F.2d 838 (9th Cir. 1969), *criticized in part on other grounds*, *Golden Door, Inc. v. Odisho*, 646 F.2d 347 (9th Cir. 1980).

Here, the value of the idea for the Names obtained by MGA was nominal; at the time Bryant came up with the name "Bratz," it had no actual value to anyone. *See, e.g.*, Ex. 39 at 7:15-10:13, 27:7-28:6. In order to *create* the trademarks (and their value), MGA necessarily devoted its own money, labor, and creativity to building up the Bratz business and corresponding goodwill. *See, e.g.*, Ex. 9 (1750:25-1751:2); Ex. 39 (8:14-16). The benefits from these investments and efforts do not belong to Mattel. *See* 2 DAN B. DOBBS, DOBBS LAW OF REMEDIES §6.6(3) at 148 (2d ed. 1993) (equity does not allow a plaintiff to capture "the fruits of the defendant's own labors or legitimate efforts"). Accordingly, imposing a constructive trust on the trademarks would confer a windfall on Mattel, in violation of the rule that equity allows Mattel to recover only the *value* of its lost property. *See Elliott v. Elliott*, 231 Cal. App. 2d 205, 209-10 (1964); *see also Noble v. Noble*, 198 Cal. 129, 132 (1926).

40

EXHIBIT 2
PAGE 92

### C.    The District Court Erred In Denying MGA's Motion For Mistrial And Allowing An Irrevocably Tainted Verdict To Stand.

All three of the Orders appealed from rest on the findings made by the jury in Phase 1(a) of the trial. That verdict is tainted by juror bias, revealed after the verdict was returned.

#### 1.    The MGA Parties Had A Constitutional Right To A Verdict Rendered By A Unanimous, Impartial Jury.

The Seventh Amendment and the Fifth Amendment together guarantee *civil litigants* a unanimous verdict by impartial jurors. *Johnson v. Louisiana*, 406 U.S. 356, 369 n.5 (1972) (Powell, J., concurring); *Springville v. Thomas*, 166 U.S. 707 (1897); *Murray v. Laborers Union Local No. 324*, 55 F.3d 1445, 1451 (9th Cir. 1995). Accordingly, the presence of even one biased juror renders the verdict *per se* invalid. *See Dyer v. Calderon*, 151 F.3d 970, 973, 985 (9th Cir. 1998) (en banc); *Estrada v. Scribner*, 512 F.3d 1227, 1239 (9th Cir. 2008); *United States v. Henley*, 238 F.3d 1111, 1120 (9th Cir. 2001). The court erred in holding that this rule applies only to criminal cases, and that the presence of a biased juror on a civil jury does not require invalidation of the verdict. Ex. 22 at 8-10; *see also* Ex. 15 (5535:8-14). The MGA Parties had a constitutional right to a unanimous verdict of impartial, unbiased jurors.

#### 2.    Juror No. 8's Statements Showed Actual Bias.

Juror No. 8 told her fellow jurors that Iranians are "stubborn" and "rude," and steal "other person's ideas." Ex. 22 at 3-4. The court recognized that the

41



EXHIBIT _____ 2

PAGE _____ 93

juror's statements were "grossly inappropriate" (Ex. 17 at 1 ¶1)—a "cancer" in the proceedings (Ex. 16 (5662:6))—and excused her from participation in Phase 1(b).

Juror No. 8's statements were irrefutable evidence of actual bias. Actual bias is "bias in fact—the existence of a *state of mind* that leads to an inference that the person will not act with entire impartiality." *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000) (citation and internal quotation marks omitted; emphasis added). Because jurors are often reluctant to admit actual bias, "'the reality of their biased attitudes must be revealed by circumstantial evidence.'" *Id.* at 1111-12 (citation omitted); *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 558 (1984) (Brennan, J., concurring); *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir. 1977) (same). Making negative generalizations about a class of individuals, or leaping to unsupported conclusions about a litigant because of his or her ethnicity or nationality, are compelling indicators of bias. *See Henley*, 238 F.3d at 1121-22.

Juror No. 8's negative generalizations about Iranians went to the heart of this case. She chose to speak out about Iranians during jury deliberations, branding Iranians as people who have "stolen other people's ideas" at the very moment that the jurors were deliberating on the issue of whether Mr. Larian had, as Mattel alleged at trial, "stolen" certain of Mattel's intellectual property.

Juror No. 8's *post hoc* attempt to distance herself from those words does not wash. Her "vehement" objections to the statements attributed to her by

42


EXHIBIT 2
PAGE 94

*eight* other jurors and her newfound explanation that "her reference to Mr. Larian's ethnicity was in the context of a possible language barrier" (Ex. 15 (5514:22-24); Ex. 22 at 2-3) would not in any event dispel the unavoidable inference of actual bias. *See United States v. Shapiro*, 669 F.2d 593, 601 (9th Cir. 1982).

In its written order, the court stated that "there is not evidence before the Court to support a finding[] that Juror No. 8 was biased in the *legal* sense of that term." Ex. 22 at 8; *see also id.* at 11 (emphasis added). This odd phraseology cannot camouflage the ugly stain of bigotry. A juror who, at a crucial moment in deliberations in a case in which a litigant of Iranian ancestry is accused of stealing the plaintiff's intellectual property, blurts out that Iranians are people who have "stolen other people's ideas" is biased in every conceivable sense of the word. On that ground alone, the verdict—and the Orders appealed from—cannot stand.

## D. The Verdicts On The State Law Claims Do Not Support The Constructive Trust/17200 Or Declaratory Relief Orders.

The Constructive Trust/17200 and Declaratory Relief Orders[20] rest on the jury's finding that the MGA Parties aided and abetted Bryant in breaching his

---

[20]Despite the title "Order Granting Declaratory Judgment," this Order in fact granted Mattel sweeping constructive trusts over "any and all copyright rights, in and to the Bratz-related works, ideas and concepts that Carter Bryant conceived or created while employed by Mattel . . . including the idea for the name 'Bratz' and the idea for the 'Bratz' characters" and "all copyright registrations MGA has obtained in and for the Bratz works" listed in (continued . . . )

43



EXHIBIT 2

PAGE 95

fiduciary duty and his duty of loyalty to Mattel, and intentionally interfered with his obligations under the Inventions Agreement. *See* Ex. 40 at 6-8.[21] Because the claims on which the Order is based fail as a matter of law, the Order cannot stand.

### 1. The State Law Tort Claims On Which The Constructive Trust/17200 Order Rests Are Precluded By The California Uniform Trade Secrets Act.

Mattel's aiding and abetting/breach of fiduciary duty claims were based on Bryant's disclosure of proprietary information to MGA while he was a Mattel employee. *See* Ex. 12 at 31:6-8, 32:1-9. The intentional interference claim was based on the claims of aiding and abetting a breach of fiduciary duty. *See* Ex. 3 at 2. All these tort claims are precluded by the California Uniform Trade Secrets Act ("CUTSA"). *See* CAL. CIV. CODE §3426.7.[22]

---

( . . . continued)
Paragraph 1 of the Order. Ex. 42 at 2, 5; *see also* Ex. 40 at 6 n.3 (constructive trust remedies set forth in the Declaratory Judgment based on same reasoning as Constructive Trust/17200 Order). Because the Order grants coercive relief, it is appealable as an injunction. *Etuk v. Slattery*, 936 F.2d 1433, 1439-40 (2d Cir. 1991).

[21]The constructive trust cannot be justified by the jury's verdict on the claim of conversion, which the court limited to MGA's receipt of the physical drawings made by Bryant. *See* Ex. 3 at 3 (conversion of ideas preempted); Ex. 38 at 3 (awarding $31,500 as damages for conversion of property).

[22]The analysis that follows also invalidates Mattel's unfair competition claim. CAL. BUS & PROF. CODE §17200. Because the District Court granted summary judgment in favor of MGA on the Section 17200 claim "to the extent that it is based on unfair conduct" (Ex. 3 at 7, Ex. 4 at 10), the unfair competition finding was based on the court's determination that MGA's underlying torts satisfied the "unlawful" prong of the statute. *Id.*; Ex. 40 at 6-8.
(continued . . . )

44


EXHIBIT ___2___

PAGE ___96___

"The stated purpose of the [CUTSA] is to provide '*unitary* definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law.'" *Am. Credit Indem. Co. v. Sacks*, 213 Cal. App. 3d 622, 630 (1989) (citation omitted; emphasis added). For that reason, nearly all decisions applying CUTSA hold that it is the *exclusive* tort remedy for misuse of the plaintiff's commercially valuable confidential information, and that other common law tort claims based on those facts are precluded. *See Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (tort claims precluded by CUTSA); *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 953-54 (N.D. Cal. 2003); *Ernest Paper Prods., Inc. v. Mobil Chem. Co.*, No. CV 95-7918, 1997 WL 33483520, at *7-8 (C.D. Cal. Dec. 2, 1997); *see also Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 624 (9th Cir. 1999). That principle forecloses Mattel's reliance on state law tort claims to support the Constructive Trust/Section 17200 and Declaratory Judgment Orders.[23]

---

( . . . continued)

Accordingly, because the underlying tort claims cannot be sustained, the Section 17200 claim falls with them.

[23]MGA raised the CUTSA issue in a JMOL motion filed on August 20, 2008, before the jury was instructed. Ex. 31 at 5 n.4. This was proper: Rule 12(h)(2)(C) of the Federal Rules says that the failure to state a claim on which relief can be granted can be raised during the trial. Had the court granted JMOL on this ground, the state law tort claims would have been eliminated from the jury's consideration of damages.

45



EXHIBIT 2
PAGE 97

### 2. As Bryant Owed No Fiduciary Duties To Mattel, The MGA Parties Could Not Have Aided And Abetted A Breach Of Fiduciary Duty.

The Constructive Trust/17200 and Declaratory Relief Orders rest in part on the jury's finding that the MGA Parties had aided and abetted Bryant in breaching his fiduciary duty to Mattel. *See* Ex. 40 at 6-8. The court granted Mattel summary judgment on this issue, holding that Paragraph 1(a) of the Inventions Agreement created a confidential relationship that gave rise to fiduciary duties because it gave Bryant "a position of trust vis-à-vis [Mattel's] confidential information." *Id.* at 3. But, under California law "the existence of a confidential relationship generating a fiduciary duty is a question of fact." *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1161 (2005). Moreover, "[t]he secrecy of information provided by one party to another . . . may be considered by the trier of fact in deciding whether a fiduciary relationship exists, *but it does not compel the imposition of fiduciary duties by operation of law.*" *City of Hope*, 43 Cal. 4th at 391 (emphasis added). The court erred in resolving this issue on summary judgment.

The court's holding that a contractual obligation to keep information confidential creates a "confidential relationship" that imposes stringent fiduciary duties is contrary to California law. In *Davies v. Krasna*, 14 Cal. 3d 502 (1975), the Court held that one party's consensual transfer of confidential information to another "may impose upon [the other] a duty to refrain from unauthorized disclosure of the idea, but [it is] insufficient to impose upon him

46

EXHIBIT _____ 2
PAGE _____ 98

the fiduciary-like duties that arise from a confidential relationship." *Id.* at 511. Consequently, to establish a confidential relationship, Mattel also had to show *vulnerability*, which is the "'absolutely essential'" predicate for a confidential relationship. *Persson*, 125 Cal. App. 4th at 1161 (citation omitted). Mattel could not do so. "The vulnerability that is the necessary predicate of a confidential relation ... usually arises from advanced age, youth, lack of education, weakness of mind, grief, sickness, or some other incapacity." *Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257, 273 (2003). Mattel did not suffer from any of these infirmities when it contracted with Bryant; to the contrary, as the District Court noted, if anything it was in the superior bargaining position. Ex. 3 at 6.

The court nevertheless held that Bryant stood in a "superior position" to Mattel in performing his obligations under the Inventions Agreement because "he was in the best position, arguably the only one in a position, to know of and police his actions." *Id.* This also contradicts California law. *Every* recipient of confidential knowledge is in "the best position" to monitor its own compliance with its duty of confidentiality.[24] Consequently, if the court's rationale were the

---

[24]Indeed, every contracting party is in the best position to monitor its own performance, regardless of the contract's subject matter. That is why "'[e]very contract requires one party to repose an element of trust and confidence in the other to perform.'" *City of Hope*, 43 Cal. 4th at 391 (quoting *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 31 (2003)). Accordingly, the District Court's rationale provides no basis for distinguishing the myriad contracts that do not create confidential relationships from the few that do.

47



EXHIBIT 2
PAGE 99

law, *every* contract for the protection of confidential information would create fiduciary duties. Yet in *City of Hope*, the Court found no fiduciary relationship, even though the plaintiff transferred confidential scientific information to the defendant (*see* 43 Cal. 3d at 391), and in *Davies v. Krasna*, the Court likewise found no confidential relation where the plaintiff gave the defendant a confidential story idea. *See* 14 Cal. 3d at 511. The same result follows here.

### 3.   The Intentional Interference With Contractual Relations Verdict Does Not Support The Constructive Trust/17200 And Declaratory Relief Orders.

The court correctly held that to the extent the intentional interference claim was "premised upon MGA's alleged interference with any copyrights that Mattel may have had under the Inventions Agreement, it is preempted" by federal copyright law. Ex. 3 at 2. But, it said, the intentional interference claim was not preempted to the extent that it rested on Mattel's claim that MGA aided and abetted Bryant's breach of fiduciary duty. Because, as shown in the previous section, Bryant had no fiduciary duty, the non-preempted portion of the intentional interference claim also fails.

Nor could the intentional interference claim be based on Mattel's contention that MGA induced Bryant to disclose the Names ("Bratz" and "Jade") to it. Because the Inventions Agreement gave Mattel no rights to the Names, Bryant was free to disclose them to MGA. *See* p.38-40, *supra.*

48

EXHIBIT _____ 2
PAGE _____ 100

### 4. The Aiding And Abetting Breach Of The Duty Of Loyalty Verdict Does Not Support The Constructive Trust/Section 17200 Order.

The aiding and abetting breach of the duty of loyalty verdict (Ex. 13 at 6-7) was based on a summary judgment ruling that Bryant had breached his duty of loyalty merely by signing an agreement with MGA to produce a competing line of fashion dolls. Ex. 12 at 32; Ex. 3 at 5-6. That was error because employees are permitted, prior to resigning, t o solicit and accept offers of employment for work that competes with the employer. *See Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 345-46 & n.10 (1966); *W. Med. Consultants v. Johnson*, 80 F.3d 1331, 1336-38 (9th Cir. 1996). In any event, even if MGA had aided and abetted a breach of the duty of loyalty merely by entering into the contract with Bryant, that breach could be remedied by an appropriate award of money damages. It does not, however, support orders that impose sweeping constructive trusts over many of MGA's copyright registrations, the idea for the Names, the idea for the Bratz characters, and the trademarks for the Names.

Nor could the verdict rest on Bryant's disclosure of the Names (or the characters) to MGA while still employed by Mattel. As explained previously, the Inventions Agreement did not apply to ideas for a product name nor, by extension, to ideas for a product character. *See* p.38-40, *supra*. Revealing them to MGA was not a breach of Bryant's duty of loyalty.[25]

---

[25]Bryant undeniably would have been free to give those names and characters to MGA once his employment at Mattel ended. Accordingly, even if

(continued . . . )

49

EXHIBIT _____ 2

PAGE _____ 101

## CONCLUSION

For the foregoing reasons, the orders appealed from should be stayed until disposition of the appeal.

DATED: December 19, 2008.

Respectfully,

JEROME B. FALK, JR.
STEVEN L. MAYER
DOUGLAS A. WINTHROP
SHAUDY DANAYE-ELMI
REBECCA M. KAHAN
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation

THOMAS J. NOLAN
RAOUL D. KENNEDY
JASON D. RUSSELL
SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP

RUSSELL J. FRACKMAN
MITCHELL, SILBERBERG & KNUPP LLP

By _____
      JEROME B. FALK, JR.

*Attorneys for Appellants MGA Entertainment, Inc., MGA
Entertainment HK, Ltd., and Isaac Larian*

W03 121908-158460006/Y04/1541620/v1

---

  ( . . . continued)

revealing the names and characters to MGA while he remained employed at Mattel were a breach of loyalty, that would not support a permanent constructive trust over the rights to those names and characters as well as a permanent injunction against their use.

50

EXHIBIT _____ 2
PAGE _____ 102

## PROOF OF SERVICE

I, Alaina Austin, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is Three Embarcadero Center, 7th Floor, San Francisco, California 94111-4024. On December 19, 2008, I served the following document(s) described as:

**APPELLANTS' MOTION TO EXCEED PAGE LIMITATION ON MOTION FOR STAY PENDING APPEAL;**

**APPELLANTS' MOTION TO FILE PORTIONS OF MOTION FOR STAY PENDING APPEAL UNDER SEAL;**

**NOTIFICATION AS TO THE NECESSITY TO SEAL;**

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 - MOTION FOR STAY PENDING APPEAL [FILED UNDER SEAL];**

**EXHIBITS IN SUPPORT OF APPELLANTS' EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 – MOTION FOR STAY PENDING APPEAL [FILED UNDER SEAL], VOLS. 1 AND 2;**

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 - MOTION FOR STAY PENDING APPEAL [REDACTED FOR PUBLIC FILE]; AND**

**EXHIBITS IN SUPPORT OF APPELLANTS' EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 - MOTION FOR STAY PENDING APPEAL, VOLS. 1 AND 2**

**X**    by placing the document(s) listed above in a <u>sealed Federal Express envelope</u> and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery to the address(es) set forth below.

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

*Attorneys for Appellee Mattel, Inc.*

Honorable Stephen G. Larson
United States District Judge
U.S.D.C., Central District of California, Eastern Division
3470 12th Street
Riverside, CA 92501
**(Emergency Motion [Filed Under Seal] and Emergency Motion [Redacted for Public File] Only)**

EXHIBIT _____ 2 _____

PAGE _____ 103 _____

I am readily familiar with the practice for collection and processing of documents for delivery by overnight service by Federal Express of Howard Rice Nemerovski Canady Falk & Rabkin, A Professional Corporation, and that practice is that the document(s) are deposited with a regularly maintained Federal Express facility in an envelope or package designated by Federal Express fully prepaid the same day as the day of collection in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California on December 19, 2008.

Alaina Austin

2

EXHIBIT 2
104

# EXHIBIT 3

Case 2:04-cv-09049-DOC-RNB   Document 4709-3   Filed 01/19/09   Page 39 of 63   Page ID
#:139565
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008    Page 1 of 17

O

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
#### CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                            Date: December 3, 2008
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
================================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           James Holmes                         None Present
           Courtroom Deputy Clerk               Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                            None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE
DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200
INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS
AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER
DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                          1

EXHIBIT ___3___
PAGE ___105___

Case 2:04-cv-09049-DOC-RNB   Document 4709-3   Filed 01/19/09   Page 40 of 63   Page ID
#:139566
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008     Page 2 of 17

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties. After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C of the trial) and enters the following Order. Filed concurrently herewith are: (1) Mattel's Proposed Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian ("Larian"), as "the MGA parties". MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and equitable arguments, authorities, and evidence concerning the motions identified above. In its final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that Carter Bryant ("Bryant") created and developed the name, the concept, and, together with Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                                          2

EXHIBIT __3__
PAGE __106__

Case 2:04-cv-09049-DOC-RNB   Document 4709-3   Filed 01/19/09   Page 41 of 63   Page ID
#:139567
Case 2:04-cv-09049-SGL-RNB     Document 4439     Filed 12/03/2008     Page 3 of 17

dolls while working as an employee of Mattel and while bound by the terms of an Inventions Agreement, which provided that all rights to such property, and the property itself, belong to Mattel. Moreover, the Court further finds, as did the jury, that the preponderance of the evidence establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel. Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion dolls, are liable to Mattel for copyright infringement.

## I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel, and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as to these three remaining affirmative defenses.[1]

### A.    Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1) lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004). The MGA parties establish neither element.

Because the Court has already found that all the claims asserted against the MGA parties were filed within the applicable limitations periods, the Court starts with the presumption that laches is inapplicable. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).

Mattel has not delayed in bringing its claims against the MGA parties. The Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004. See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a significantly protectable interest relating to the subject matter of the action, . . . and that MGA's interest is not adequately represented by the existing parties."). Thereafter, the parties briefed Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1]    By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase 1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses that they have not already expressly waived.

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk: jh

EXHIBIT __3__
PAGE ___107___

Case 2:04-cv-09049-DOC-RNB   Document 4709-3   Filed 01/19/09   Page 42 of 63   Page ID
#:139568
Case 2:04-cv-09049-SGL-RNB     Document 4439       Filed 12/03/2008    Page 4 of 17

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

## B.    Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                                          4

EXHIBIT __3__
PAGE __108__

Case 2:04-cv-09049-DOC-RNB  Document 4709-3  Filed 01/19/09  Page 43 of 63  Page ID
#:139569
Case 2:04-cv-09049-SGL-RNB     Document 4439     Filed 12/03/2008    Page 5 of 17

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

### C.   Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

### II. Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

_____

[2]   The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

Initials of Deputy Clerk: jh

EXHIBIT ___3___
PAGE ___109___

Case 2:04-cv-09049-DOC-RNB   Document 4709-3   Filed 01/19/09   Page 44 of 63   Page ID
#:139570
Case 2:04-cv-09049-SGL-RNB   Document 4439      Filed 12/03/2008     Page 6 of 17

constructive trust as to MGA's copyright registrations in certain Bratz drawings. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act. The Court rejects this argument. The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3]  Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

## III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade." Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty. Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A.    Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The parties agree on the resulting elements, which may be stated as

---

[3]  The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

EXHIBIT   3
PAGE      110

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4] In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)). However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

## B.  § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]  Bryant's other characters were re-named before they were marketed: Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

EXHIBIT   3
PAGE   111

Case 2:04-cv-09049-DOC-RNB   Document 4709-3   Filed 01/19/09   Page 46 of 63   Page ID
#:139572
Case 2:04-cv-09049-SGL-RNB   Document 4439      Filed 12/03/2008      Page 8 of 17

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion). The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding. Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act. The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

## C.    § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, . . . as may be necessary to prevent the use or employment by any person of any practice which [either] constitutes unfair competition, . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

## IV.   Motion for Permanent Injunction (docket #4306)

## A.    Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90
CIVIL -- GEN

8

Initials of Deputy Clerk: jh

EXHIBIT __3__
PAGE ___112___

Case 2:04-cv-09049-DOC-RNB   Document 4709-3   Filed 01/19/09   Page 47 of 63   Page ID
#:139573
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008    Page 9 of 17

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                                    9

EXHIBIT __3__
PAGE __113__

Case 2:04-cv-09049-DOC-RNB Document 4709-3 Filed 01/19/09 Page 48 of 63 Page ID
#:139574
Case 2:04-cv-09049-SGL-RNB Document 4439 Filed 12/03/2008 Page 10 of 17

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5] Counsel likened the jury's damage award to a rug that, no matter which way one moved it, simply would not cover the floor. See Nov. 10, 2008, Tr. at 100-101. Counsel explained that the jury's findings led to one conclusion or the other and, regardless of which conclusion was chosen, the jury's finding did not support an injunction:

> The rug is too small for an injunction, regardless of how you allocate
> that money. You either come up with a vanishingly small subset of
> infringing products, or you come up with a vanishingly small percentage
> of infringement by all of the products. And the jury has put that cap for
> us.

Id. Although colorful, counsel's metaphor is not helpful. Assuming that the Court would be bound by a jury's factual finding in a case where only two possible inferences -- both of which would lead the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an expert report, the Court will infer the factual findings that necessarily flow from it. But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15, 2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. In doing so, the Court has first examined the specific expressive elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]    This argument was not raised in the opposition papers filed by the MGA parties, and is rejected for that reason as well. See Opp. at 21 ("Here, the circumstances clearly show that the only reasonable conclusion to draw is that the jury's infringement finding was limited to a small universe of products, specifically the first generation Bratz dolls as clothed and packaged.") (emphasis added).

[6]    The MGA parties hazard such a guess in their opposition, wherein they attempt to explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total copyright infringement award: "The jury's decision to award $6 million against MGA[E] (and $10 million total) rather than simply the $4 million] argued by MGA as profits for the first generation may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low." Opp. at 21 n.30. This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.

MINUTES FORM 90                                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                                                10

EXHIBIT ___3___
PAGE ___114___

Case 2:04-cv-09049-DOC-RNB   Document 4709-3   Filed 01/19/09   Page 49 of 63   Page ID
#:139575
Case 2:04-cv-09049-SGL-RNB   Document 4439      Filed 12/03/2008    Page 11 of 17

above, and the Court has then further examined the overall similarity of the expression in various
works from the perspective of the ordinary observer. Although the Court recognizes that there are
differences between the works, the Court ultimately finds that those dolls and products set forth in
the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted
drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the
Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes,
eyebrows, eye features, noses, as well as the particularized expression of certain anatomical
features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other
doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized
doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic
compilation and expression of the human form and anatomy that quite clearly expresses a unique
style and conveys a distinct look or attitude, especially as perceived by the intended consumer
market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported
by both analytical and market analysis. Together, these features clearly give each of the dolls the
particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008,
Orders.

## B.     Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff
> seeking a permanent injunction must satisfy a four-factor test before a
> court may grant such relief. A plaintiff must demonstrate: (1) that it has
> suffered an irreparable injury; (2) that remedies available at law, such
> as monetary damages, are inadequate to compensate for that injury; (3)
> that, considering the balance of hardships between the plaintiff and
> defendant, a remedy in equity is warranted; and (4) that the public
> interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.     Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer
irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury
was presumed in intellectual property cases; in light of the eBay decision, some doubt has been
cast on whether courts should continue to apply that presumption. See Broadcom Corp. v.
Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the
presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                                   11

EXHIBIT __3__
PAGE ___115___

Case 2:04-cv-09049-DOC-RNB   Document 4709-3   Filed 01/19/09   Page 50 of 63   Page ID
#:139576
Case 2:04-cv-09049-SGL-RNB    Document 4439    Filed 12/03/2008    Page 12 of 17

that hundreds of the MGA parties' products -- including all the currently available core female fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties have evinced an intention to continue marketing those dolls. This represents a wholesale inability on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to irreparable harm. Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005).

MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay
> conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d
> 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right
> to control the use of its copyrighted materials, . . . irreparable harm
> inescapably flows from the denial of that right." In substance, such
> language is nothing more than a disguised presumption, particularly
> with the use of the word "inescapably." After eBay, Plaintiffs cannot rely
> on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably" in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a review of the Taylor case makes clear that the Eighth Circuit considered the implications of allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a request for injunctive relief could otherwise "amount to a forced license to use the creative work of another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the application of a "disguised presumption" of irreparable harm and closer to an actual finding of irreparable harm.

At least one district court within the Ninth Circuit is in accord with the Court's decision today, as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008 WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds
> that past infringement plus the threat of future infringement equals
> irreparable harm, it seems clear to this Court that such a rule would not
> run afoul of eBay's directives. First of all, the eBay Court did not
> address the showing necessary to establish "irreparable harm." It
> merely held that the plaintiff has the burden of proving it. Second, this
> two-part test does not resurrect the presumption of irreparable harm
> impliedly laid to rest by the eBay court. It simply recognizes that a

MINUTES FORM 90                                              Initials of Deputy Clerk: jh
CIVIL -- GEN                                   12

EXHIBIT ___3___
PAGE ___116___

> plaintiff meets the burden of proving irreparable harm by making this two-part showing. And finally, the two-part test does not represent a rule [prohibited by eBay] that an injunction automatically follows a determination that a copyright has been infringed. . . . In exercising their equitable discretion, courts would still have the freedom to deny injunctive relief when the public interest or the balance of hardships weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable *to prevent or restrain infringement of a copyright*." 17 U.S.C. § 502 (emphasis added). The Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to his employer (and keep confidential from all others) all copyrightable works he creates during the term of his employment, not only fails to so communicate but actually secretly purports to convey the rights thereto to a direct competitor of his employer. The rights to those works are actively concealed from their true owner (by both the employee and the competitor) for years while the competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars. After millions of pages of discovery are produced, thousands of filings are submitted, scores and scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA parties' past infringement and the high probability of continued acts of infringement.

## 2.     Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

## 3.     Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has expressed its concerns in this regard on the record. The evidence at trial showed that, at least historically, Bratz is the brand that has made MGA profitable. And the proposed injunction addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has

EXHIBIT __3__
PAGE __117__

Case 2:04-cv-09049-DOC-RNB   Document 4709-3   Filed 01/19/09   Page 52 of 63   Page ID
#:139578
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 14 of 17

been shown likely to be infringing, such an argument in defense merits little equitable consideration
. . . .") (internal quotation marks and citations omitted), accord, Cadence Design Systems, Inc. v.
Avant! Corp., 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases). The balance of equities
favor Mattel.

### 4.    Public Interest

There is a strong economic interest, especially in these troubled economic times, in
maintaining a profitable enterprise as a going concern. However, there is also a strong public
interest in enforcing copyright laws in a uniform manner. Indeed, nothing is more essential to long-
term economic prosperity than the stability provided by the rule of law. Although the MGA parties
raise excellent points in their opposition, in the end, the public interest is served by precluding
defendants from engaging in copyright infringement. The injunction issued by the Court does no
more than that.

### C.    Scope of Injunction

The scope of the permanent injunction is set forth in a separate order. Four issues raised in
the parties' papers warrant the brief discussion that follows.

### 1.    Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and
destruction of the specialized plates, molds, and matrices used to make them. Impoundment of
existing infringing products and the destruction of the means to make those products are clearly
remedies contemplated by the Copyright Act. See 17 U.S.C. § 503(a). The MGA parties argue
that these remedies are inappropriate because there is no ongoing infringement or, at the very
least, its products infringe very little. In its findings supporting the issuance of a permanent
injunction, the Court has rejected this premise, and the Court finds that the requested
impoundment and destruction is an appropriate remedy.[7]

### 2.    Recall

In light of the scope of infringement found by the Court, and in light of the fact that the
injunction addresses products that directly compete with Mattel's products, the Court has ordered
the recall of infringing products from retailers. See CyberMedia, Inc. v. Symantec Corp., 19
F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7]   No party shall destroy any of the implements used to make the Bratz dolls that are the
subject of the permanent injunction absent a specific order of this Court authorizing such
destruction.

MINUTES FORM 90                                                 Initials of Deputy Clerk: jh
CIVIL -- GEN                          14

EXHIBIT   3
PAGE    118

### 3.    Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4.    Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

## V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

## VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

EXHIBIT ___3___
PAGE _____119_____

Case 2:04-cv-09049-DOC-RNB   Document 4709-3   Filed 01/19/09   Page 54 of 63   Page ID
#:139580
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 16 of 17

intrinsic test.  The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls.  Hollander's survey attempts to determine just that.  The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

### VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration.  This motion is **DENIED AS MOOT.**  This declaration sets forth a calculation justifying the proposed .3% royalty.  The Court has rejected the proposal that a royalty be imposed.

### VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions.  This stay shall remain in place until lifted by further Order of this Court.

### IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008.  Response briefs may be filed no later than January 12, 2009.  Replies may be filed no later than January 19, 2009.  A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

### X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court.  The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction.  The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles.  Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008.  Any such objections are to be submitted *in camera* and under seal with the Court.  After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

Initials of Deputy Clerk: jh

EXHIBIT ___3___
PAGE ___120___

Case 2:04-cv-09049-DOC-RNB   Document 4709-3   Filed 01/19/09   Page 55 of 63   Page ID
#:139581
Case 2:04-cv-09049-SGL-RNB   Document 4439      Filed 12/03/2008      Page 17 of 17

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA  90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA  90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA  92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA  92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA  90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA  90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases
1A and 1B trial transcripts maintained by the parties. The Court will retain possession of the laptop
computer until after its ruling on the motions referred to in section IX, above, and the parties are
directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-
filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges
given the limited resources of the Court. The permanent injunction, for reasons explained by
Mattel on the record, attaches to it approximately 900 color copies. Accordingly, although the
Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs
Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent
injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk: jh

EXHIBIT   3
PAGE   121

# EXHIBIT 4

Case 2:04-cv-09049-DOC-RNB   Document 4709-3   Filed 01/19/09   Page 57 of 63   Page ID
#:139583
Case 2:04-cv-09049-SGL-RNB    Document 4267    Filed 08/20/2008    Page 1 of 56

1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10                              EASTERN DIVISION

11   MATTEL, INC.,                    | CASE NO. CV 04-9049 SGL (RNBx)

12            Plaintiff,              |

13                                    | Consolidated with

14        vs.                         | CASE NO. CV 04-9059 SGL (RNBx)

15                                    | CASE NO. CV 05-2727 SGL (RNBx)

16   MGA ENTERTAINMENT, INC., et al., | Hon. Stephen G. Larson

17

18   Defendants.

19                                    | **COURT'S PHASE B JURY**

20   AND CONSOLIDATED ACTIONS         | **INSTRUCTIONS AS GIVEN**

21

22

23

24

25

26

27

28

EXHIBIT ___4___
PAGE ___122___

Case 2:04-cv-09049-DOC-RNB   Document 4709-3   Filed 01/19/09   Page 58 of 63   Page ID
#:139584
Case 2:04-cv-09049-SGL-RNB     Document 4267     Filed 08/20/2008     Page 33 of 56

**JURY INSTRUCTION NO. 29**

      If you find that defendants had access to the copyrighted works and substantial similarity between the copyrighted works and allegedly infringing works, you must find that defendants infringed Mattel's copyrights.  Defendants contend that certain Bratz-related works were created independently, that is, that defendants did not actually copy or prepare derivative works from Carter Bryant's works when they created these Bratz-related works, notwithstanding their admitted access to these works.  A claim of independent creation applies where a defendant can prove that he or she created the allegedly infringing work without copying or adapting or preparing derivative works from the original to which he or she had access.

      Defendants bear the burden of proof on the issue of independent creation.

      If you find that Mattel has shown the elements of infringement and defendants have not established independent creation by a preponderance of the evidence, then you must find for Mattel on its claim of copyright infringement.

EXHIBIT 33  4
PAGE     123

# EXHIBIT 5

Case 2:04-cv-09049-SGL-RNB   Document 4166   Filed 07/29/2008   Page 1 of 201

1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  JASON D. RUSSELL (Bar No. 169219)
3  (jrussell@skadden.com)
   LAUREN E. AGUIAR (*Admitted Pro Hac Vice*)
4  (laguiar@skadden.com)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
5  300 South Grand Avenue, Suite 3400
6  Los Angeles, CA 90071
   Tel.: (213) 687-5000/Fax: (213) 687-5600
7
8  Attorneys for MGA Parties

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

12  CARTER BRYANT, an individual,        )  CASE NO. CV 04-9049 SGL
                                         )  (RNBx)
13                 Plaintiff,            )
                                         )  Consolidated with Case No. 04-
14         v.                            )  9059 and Case No. 05-2727
                                         )
15  MATTEL, INC., a Delaware             )  Honorable Stephen G. Larson
    corporation,                         )
16                                       )  MGA PARTIES' RESPONSES TO
                   Defendant.            )  MATTEL'S OBJECTIONS TO
17                                       )  THE MGA PARTIES' REVISED
    _____)  DISPUTED [PROPOSED] PHASE
18  AND CONSOLIDATED ACTIONS.           )  1-B JURY INSTRUCTIONS
                                         )
19
20
21
22
23
24
25
26
27                     EXHIBIT _____5_____
28                     PAGE _____124_____

─────────────────────────────────────────────────────────────
Responses to Objections to MGA Parties' Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1                                **INSTRUCTION NO.** ____

2              **COPYRIGHT INFRINGEMENT – INDEPENDENT CREATION**

3

4  Even if Mattel proves that MGA had access to the 16 Bryant sketches and that particular

5  Bratz dolls are substantially similar to certain of these sketches, this only creates a

6  presumption of illegal copying. MGA may rebut that presumption with evidence that the

7  Bratz dolls are the product of independent creation, and were not copied from the 16

8  Bryant sketches. If MGA presents evidence of independent creation, then you should

9  weigh all of the evidence bearing in mind that Mattel bears the burden of proving that

10 MGA copied the 16 Bryant sketches.

11

12 **Authority**: Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486 (9th Cir. 2000) ("By

13 establishing reasonable access and substantial similarity, a copyright plaintiff creates a

14 presumption of copying. The burden shifts to the defendant to rebut that presumption

15 through proof of independent creation.") (citing Granite Music Corp. v. United Artists

16 Corp., 532 F.2d 718, 721 (9th Cir. 1976)); see also Moore v. Kulicke & Soffa Industries,

17 Inc., 318 F.3d 561 (3d Cir. 2003); Keeler v. Brass Co. v. Continental Brass Co., 862 F.2d

18 1063 (4th Cir. 1988); Don Post Studios, inc. v. Cinema Secrets, Inc., 124 F. Supp. 2d 311

19 (E.D. Pa. 2000).

20

21

22

23

24

25

26

27                          EXHIBIT ____5____

28                          PAGE ____125____

                                        151

1 | **MATTEL'S OBJECTION**

2

3 |     Mattel objects to defendants' proposed jury instruction regarding Independent
4 | Creation on the following grounds:

5 |     1.     This proposed instruction is improper since defendants did not assert the
6 | affirmative defense of independent creation in their answers and have therefore waived
7 | such defense. *See, e.g., Bethea v. Burnett*, 2005 WL 1720631(C.D.Cal. 2005) (noting that
8 | independent creation is an affirmative defense); *Harbeson v. Parke Davis, Inc.*, 746 F.2d
9 | 517, 520 (9th Cir. 1984) (unasserted affirmative defenses are waived).

10 |     2.     Defendants contend improperly that "[i]f MGA presents evidence of
11 | independent creation then you should weigh all of the evidence bearing in mind that Mattel
12 | bears the burden of proving that MGA copied the 16 Bryant sketches." Independent
13 | creation is an affirmative defense that, if pleaded, could only be addressed once Mattel
14 | establishes copyright infringement. *Eden Toys v. Marshall Field & Co.*, 675 F.2d 498, 501
15 | (2d Cir. 1982) ("Evidence of independent creation may be introduced by a defendant to
16 | rebut a plaintiff's prima facie case of infringement."). However, since defendants did not
17 | plead this defense, it cannot be considered at all. Moreover, the "bearing in mind"
18 | language repeatedly used by defendants is inappropriate and biased.

19 |     3.     Defendants' reliance on the independent creation defense is misplaced. The
20 | independent creation defense applies where the accused infringer shows that he created the
21 | work prior to or wholly independently of the infringed work (i.e., where two different
22 | people happen to create similar works). For instance, an author accused of copying
23 | another writer's novel can establish independent creation by showing drafts of his work
24 | that pre-date his access to the allegedly infringed novel. *See, e.g., Dimmie v. Carey*, 88 F.
25 | Supp. 2d 142 (S.D.N.Y 2000) (finding for the defendant singer and composer where the
26 | singer produced extensive notes and demo recordings demonstrating independent
27 | development of the allegedly infringing hit song). This, however, is a case where the
28 | author of the infringed work (Bryant) also worked and continues to work on a series of

1 infringing works. In this context, any reference to "independent creation" is not only
2 meritless as a matter of law and unsupported by the evidence, but would also confuse the
3 jury.

4     4.    Moreover, the law is clear that a three-dimensional work is not an
5 independent creation where it is recognizable as an embodiment of a two-dimensional
6 work. *See, e.g., Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d
7 1211, 1223 (9th Cir. 1997) (finding that 3-D works were copies, not derivatives: "because
8 [a party's] costumes are 'instantly identifiable as embodiments' of the underlying
9 copyrighted characters in 'yet another form,' no reasonably juror could conclude that there
10 are any 'non-trivial' artistic differences between the underlying cartoon characters and the
11 immediately recognizable costumes").

12     5.    Defendants' proposed instruction is biased and self-serving particularly as to
13 the "bearing in mind" clause and because it discusses only copying and not preparation of
14 derivative works.

15     6.    *Counter-Instruction*: To the extent the Court decides, over Mattel's objections,
16 to give any instruction on this defense, Mattel requests that the Court adopt the following
17 instruction:

18

19         If you find access and substantial similarity, you must find that
20     defendants infringed Mattel's copyrights. Defendants contend that the Bratz
21     dolls were created independently, i.e., that defendants did not actually copy
22     or prepare derivative works from Bryant's drawings when they created the
23     Bratz dolls notwithstanding their admitted access to these drawings. The
24     independent creation defense applies where the defendant can prove that he
25     created the allegedly infringed work without copying or adapting or
26     preparing derivative works from the original to which he had access. For
27     instance, an author accused of copying another writer's novel can establish
28     independent creation by showing drafts of his work that pre-date his access

EXHIBIT 5

PAGE 127