1    to the allegedly infringed novel.  Defendants bear the burden of proof on
2    this defense.  If you find that Mattel has shown the elements of infringement
3    and defendants have not established this defense by a preponderance of the
4    evidence, then you must find for Mattel on its claim of copyright
5    infringement.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT _____ 5

PAGE _____ 128

154

1 **MGA PARTIES' RESPONSE**

2    1.-2. Mattel's assertion in paragraphs 1-2 that MGA has "waived" the "defense" of
3 independent creation is wrong. Evidence of independent creation is not a defense that is
4 "waived" if not asserted in the pleadings, but rather, as Mattel's own cited authority
5 recognizes, it is evidence that can be used to <u>rebut</u> a prima facie case of infringement—i.e.
6 an inference of copying—established by evidence of access and substantial similarity. <u>See</u>
7 <u>Eden Toys Inc. v. Marshall Field & Co.</u>, 675 F.2d 498, 501 (2d Cir. 1982) ("Evidence of
8 independent creation may be introduced by a defendant to rebut a plaintiff's prima facie
9 case of infringement."); <u>see also</u> <u>Granite Music Corp. v. United Artists Corp.</u>, 532 F.2d
10 718, 721 (9th Cir. 1976); <u>Calhoun v. Lillenas Publ'g</u>, 298 F.3d 1228, 1230 (11th Cir. 2002)
11 (under copyright law, "independent creation is not an affirmative defense. Rather,
12 independent creation attempts to prove the opposite of the [plaintiff's] primary claim, i.e.,
13 copying") (citation omitted); <u>Sobhani v. @radical.media, Inc.</u>, 257 F. Supp. 2d 1234, 1237
14 (C.D. Cal. 2003); <u>Cosmos Jewelry, Ltd v. Po Sun Ho Co.</u>, 2006 US Dist LEXIS 97115 at
15 *3 (C.D. Cal. 2006) ("evidence relating to 'independent creation' does not constitute
16 evidence relating to any previously-waived affirmative defense"); <u>accord</u> <u>Keeler Brass Co.</u>
17 <u>v. Continental Brass Co.</u>, 862 F.2d 1063, 1066 (4th Cir. 1988) ("'[I]ndependent creation'
18 is not an affirmative defense. The defendants, therefore, do not have the burden of
19 persuasion for independent creation. Keeler's prima facie case advanced the proposition
20 that the defendants copied the design. Evidence of independent creation simply tends to
21 prove the reverse of that proposition, i.e., that the design was not copied."); <u>see generally</u>
22 Charles A. Wright and Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1270 (3d ed.
23 2004) ("Federal Rule 8(c) ... deals with affirmative defenses ... distinguished from ...
24 Rule 8(b), which deals with denials or negative defenses that directly contradict elements
25 of the plaintiff's claim for relief.").

26

27                                          EXHIBIT    **5**

28                                          PAGE    **129**

155

1       Mattel cites only one case, <u>Bethea v. Burnett</u>, 2005 WL 1720631 (C.D. Cal. June 28,
2  2005), for its affirmative defense argument. (<u>Harbeson v. Parke Davis, Inc.</u>, 746 F.2d 517,
3  520 (9th Cir. 1984), offers merely a general statement of the law of pleading affirmative
4  defenses and does not even relate to copyright law.) Although the court in <u>Bethea</u> did use
5  the phrase "affirmative defense" in a lengthy analysis of substantial similarity, it is
6  apparent that the court was not using it in a technical sense, because in the same paragraph
7  the court explains that it is only once a copyright plaintiff establishes reasonable access
8  and substantial similarity that the burden shifts to the defendant to rebut that presumption.
9  <u>Id.</u> at * 15 (citing <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 486 (9th Cir. 2000)).

10      Evidence of independent creation is to be considered along with the plaintiff's
11  evidence in evaluating whether infringement has occurred. <u>See</u> 3 <u>Nimmer, on Copyright</u> §
12  12.11[D] ("[T]he trier [of fact] may entirely believe both that the defendant had access to
13  the plaintiff's work and that the two works are substantially similar, but nevertheless,
14  reasonably conclude that the defendant independently created, rather than copied. <u>Jury</u>
15  <u>instructions should so reflect.</u>") (emphasis added); <u>id.</u> at § 12.10[B][2][b] ("[T]he law has
16  devised proof of access plus probative similarity as surrogates to prove copying as a
17  factual matter. To the extent that defendant denies that copying and maintains independent
18  creation, a factual issue arises … for trial to resolve.").

19     3.    In support of its assertion that an instruction on independent creation is
20  "misplaced," Mattel cites one case—<u>Dimmie v. Carey</u>, 88 F. Supp. 2d 142 (S.D.N.Y.
21  2000)—but offers no authority or explanation to suggest that evidence of independent
22  creation is only admissible in cases with the same fact pattern as <u>Dimmie</u> (and indeed, the
23  various Ninth Circuit cases in which evidence of independent creation is considered
24  refutes such a notion).

25      Because it is not an affirmative defense, MGA was not required to assert
26  "independent creation" in its answer.  MGA <u>has</u> asserted, in the proper context of
27  interrogatory responses, that the first generation and all subsequent BRATZ dolls were
28  independently created by a team of professional artists who were inspired by Carter

1  Bryant's concept drawings, but who developed the finished BRATZ dolls using their own
2  creativity and originality. (See MGA's Second Supplemental Responses to Mattel's
3  Revised Third Set of Interrogatories, dated January 7, 2008, at 18, 29-30, 48.)

4      4.    Mattel's reliance on Entertainment Research Group v. Genesis Creative
5  Group, Inc., 122 F.3d 1211 (9th Cir. 1997), is misplaced. That case did not involve the
6  issue of "independent creation."

7      5.-6. As the preceding paragraphs demonstrate, MGA's proposed instruction is
8  neither biased nor self-serving.

9      Mattel's proposed counter-instruction is improper because it incorrectly states the
10  law regarding independent creation. As explained above, independent creation is not an
11  affirmative defense which MGA must prove by a preponderance of the evidence, but
12  rather is rebuttal evidence to counter a prima facie case of copying established by evidence
13  of access and substantial similarity. The example offered is also misleading in that it
14  suggests that evidence of independent creation must demonstrate work that pre-dates
15  access to the copyrighted work. Tellingly, Mattel has not distinguished (and could not
16  distinguish) any of the cases cited by MGA, including the Ninth Circuit's decision in
17  Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486 (9th Cir. 2000) ("By establishing
18  reasonable access and substantial similarity, a copyright plaintiff creates a presumption of
19  copying. The burden shifts to the defendant to rebut that presumption through proof of
20  independent creation.") (citing Granite Music Corp., 532 F.2d at 721).

21
22
23
24
25
26
27
28

EXHIBIT  5

PAGE  131

157

**MGA PARTIES' RESPONSE**

1.    MGA's proposed instruction tracks the Ninth Circuit model and adds a clarification, consistent with precedent, that "mere awareness that potential infringing activity might result" is insufficient to find Mr. Larian cannot be liable for intentional inducement. Mattel concedes that this clarification is consistent with the Supreme Court's decision in Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913 (2005), and its attempt to distinguish that case on the facts is unavailing. See also Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007) ("under Grokster, an actor may be contributorily liable for intentionally encouraging direct infringement if the actor knowingly takes steps that are substantially certain to result in such direct infringement) (emphasis adde).

2.    This instruction is necessary to clarify the applicable law for the jury, and is proper based on the authorities defendants cited in support of the instruction and cases discussed therein. The intentional inducement requirement set forth here is also consistent with the Model Instruction on contributory infringement, but provides more explanation to help the jury apply the appropriate law. Mattel's objections rely on unduly narrow and fact-dependent interpretations of that authority, which in fact support the approach set forth in this instruction.


DATED: July 29, 2008              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


                                  By: _____/s/ Thomas J. Nolan_____
                                                  Thomas J. Nolan
                                           Attorneys for the MGA Parties


EXHIBIT ___5___

PAGE ___132___

198

# EXHIBIT 6



1  THOMAS J. NOLAN (Bar No. 66992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California  90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
4  E-mail:    tnolan@skadden.com

5  TIMOTHY A. MILLER (Bar No. 154744)
   RAOUL D. KENNEDY (Bar No. 40892)
6  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   Four Embarcadero Center, 38th Floor
7  San Francisco, California  94111-5974
   Telephone:  (415) 984-6400
8  Facsimile:  (415) 984-2698
   E-mail:    rkennedy@skadden.com

9
   Attorneys for Cross-Defendants
10 MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
   MGAE De Mexico, S.R.L. De C.V., and ISAAC LARIAN

11
                    UNITED STATES DISTRICT COURT
12
                   CENTRAL DISTRICT OF CALIFORNIA
13
                         EASTERN DIVISION
14

15 CARTER BRYANT, an individual      )  CASE NO. CV 04-9049 SGL (RNBx)
                                     )
16           Plaintiff,              )  Consolidated with Case No. 04-9059
                                     )  and Case No. 05-2727
17     v.                            )
                                     )  **DISCOVERY MATTER**
18 MATTEL, INC., a Delaware          )
   corporation                       )
19                                   )  **MGA ENTERTAINMENT, INC.'S**
             Defendant.              )  **SECOND SUPPLEMENTAL**
20                                   )  **RESPONSES TO MATTEL, INC.'S**
   _____  )  **REVISED THIRD SET OF**
21 Consolidated with MATTEL, INC. v. )  **INTERROGATORIES**
   BRYANT and MGA                    )
22 ENTERTAINMENT, INC. v.            )
   MATTEL, INC.                      )
23                                   )  **Phase 1:**
   **CONFIDENTIAL – ATTORNEYS'**     )  Discovery Cut-Off:   January 28, 2008
24 **EYES ONLY**                     )  Pre-Trial Conference: May 5, 2008
                                     )  Trial Date:         May 27, 2008
25

26 PROPOUNDING PARTY:     MATTEL, INC. ("MATTEL")

27 RESPONDING PARTY:      MGA ENTERTAINMENT, INC.  ("MGA")

28 SET NUMBER:            REVISED THIRD

                              /- 7

   MGA'S 2ND SUPPLEMENTAL RESPONSE TO MATTEL'S REVISED 3RD SET OF INTERROGATORIES

                                        **EXHIBIT 44**
                                        **PAGE 1388**

                    EXHIBIT ____6____

                    PAGE ____133____

**INTERROGATORY NO. 27:**

IDENTIFY each and every BRATZ INVENTION YOU contend was CREATED, in whole or in part, prior to January 4, 1999, and for each BRATZ INVENTION so identified state all facts that support YOUR contention that such BRATZ INVENTION (or aspects or portions thereof) was CREATED prior to January 4, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

**RESPONSE TO INTERROGATORY NO. 27:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding the Definitions), including but not limited to its objections to the definitions of the terms BRATZ INVENTION, CREATED, IDENTIFY and REFER OR RELATES TO. MGA further objects to this interrogatory as compound because it contains discrete subparts that require separate, distinct and multiple responses. Specifically, MGA objects to the term IDENTIFY as overbroad and unduly burdensome, as Mattel's definition of this term calls for responses to multiple discrete subparts. For example, Mattel's definition of the term IDENTIFY in the context of this interrogatory would require MGA to provide a multitude of discrete responses for each BRATZ INVENTION, including:

(a)  the Bates number of any document that "REFERS OR RELATES TO the BRATZ INVENTION;"

(b)  the IDENTITY of the individual author or creator of the BRATZ INVENTION;

(c)  the IDENTITY of each other individual who contributed in any manner to the BRATZ INVENTION;

(d)  the form, material and medium of the BRATZ INVENTION;

(e)  the title or name of the BRATZ INVENTION;

(f)  the version, modification, revision or iteration number of the

8

EXHIBIT ___6___

PAGE ___134___

EXHIBIT 44
PAGE 1396

1  practice of any such invention occurred before January 1999 and/or after October 20,

2  2000. With respect to design patents, in August or September of 1998, Carter

3  Bryant, inspired by images he was exposed to, including in the August 1998 issue of

4  *Seventeen Magazine*, the appearance of teenagers, as well as other images in the

5  public domain, conceived of an idea for a line of dolls he named Bratz. At the same

6  time, Bryant sketched a series of drawings to illustrate his idea. To the extent said

7  idea contained elements covered by design patent law, no such invention was

8  "reduced to practice" until after October 20, 2000. Nor did it fall within the scope of

9  the term "inventions" as used in the "INVENTIONS AGREEMENT."

10         The following persons have knowledge of the facts and circumstances

11  surrounding Bryant's conception and his illustrative drawings that he named Bratz:

12  Carter Bryant; Bryant's mother, Janet Bryant; Bryant's father, Thomas Bryant;

13  Jeanne Galvano; Richard Irmen; Elyse Cloonan; Ramona Prince.

14         The following documents may be relevant to these facts: the sketches

15  drawn by Bryant in August or September of 1998; publicly available materials that

16  Bryant identified in his deposition testimony as inspiring his conception of a line of

17  dolls in August or September of 1998, including but not limited to the August 1998

18  issue of *Seventeen Magazine*; and other documents shown to Bryant at his November

19  2004 deposition.

20  **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 27:**

21         MGA incorporates by reference its General Response and General

22  Objections above, as though fully set forth herein and specifically incorporates

23  General Objection No. 7 (regarding the Definitions), including but not limited to its

24  objections to the definitions of the terms BRATZ INVENTION, CREATED,

25  IDENTIFY and REFER OR RELATES TO. MGA further objects to this

26  interrogatory as compound because it contains discrete subparts that require separate,

27  distinct and multiple responses. Specifically, MGA objects to the term IDENTIFY

28  as overbroad and unduly burdensome, as Mattel's definition of this term calls for

13

EXHIBIT _____ 6

FAGE _____ 135

EXHIBIT 44
PAGE 1401

1    For the reasons stated in General Objection No. 7(e) and in the specific
2  objections listed above, in responding to this interrogatory, MGA interprets the word
3  "invention" only as it is generally understood in normal, accepted usage under patent
4  law.

5    With respect to "inventions" as that term is used in reference to utility
6  patents, MGA does not make any affirmative contentions regarding a utility
7  invention related to Bratz conceived or reduced to practice prior to January 4, 1999.
8  MGA does contend that the concept for a new line of fashion dolls envisioned by
9  Carter Bryant dates to a period prior to January 4, 1999, more specifically to August
10  and/or September 1998. MGA further contends that said concept could not have
11  been patented as a utility patent because fashion dolls were in the public domain for
12  the purposes of utility patent protection. However, Carter Bryant's idea of a line of
13  fashion dolls that he called "Bratz" was sufficiently novel and original to be
14  protected under California law as a confidential novel idea under Desny v. Wilder,
15  46 Cal.2d 715 (1956) and its progeny.

16    With respect to "inventions" as the term is used in reference to design
17  patent law, MGA does not make any affirmative contentions that any work related to
18  Bratz created prior to January 4, 1999 qualified for such patent protection. In
19  addition, to the extent that Mattel argues that the shapes of characters in Carter
20  Bryant's drawings that he called "Bratz" (including, but not limited to, those
21  drawings identified by Carter Bryant in Exhibit 5 of his deposition as being sketched
22  in August 1998) represented a conception of what could have later have been
23  developed into a tangible item that would have qualified for protection under a
24  design patent, MGA contends as follows:

25    (a)    Carter Bryant's pre-1999 drawings of characters that he called
26  "Bratz" were never reduced to practice.

27    (b)    Under 35 U.S.C. §171, design patents are available for three-
28  dimensional objects, not drawings or two-dimensional flat art of the sort that Carter

17

EXHIBIT ___6___

PAGE ___136___

**EXHIBIT 44
PAGE 1405**

1 Bryant sketched in 1998. The design patent statute provides design patent protection

2 for "any new, original and ornamental design for an article of manufacture", and

3 would not cover the expression on the faces of Bryant's doll sketches.

4       (c)    Carter Bryant was not a sculptor, and any effort to translate his

5 pre-1999 two-dimensional flat art into a three-dimensional form for use as a fashion

6 doll sculpt would have produced shapes that were different from the actual shape of

7 the final three-dimensional Bratz sculpt used in manufacturing the first generation of

8 Bratz dolls released on the market by MGA in or about June 2001. Also, different

9 sculpt artists would have created different sculpts – Bryant's two-dimensional

10 drawings did not dictate a specific three-dimensional object. The shapes of the

11 characters in Bryant's drawings bear little resemblance to the final shape of the

12 actual Bratz dolls. Differences between the drawings and the final shape of the

13 actual Bratz dolls include, but are not limited to, the following: posture; hip-to-waist

14 ratio; feet size (dolls' feet are not as exaggerated as characters' feet in the drawings);

15 head size (dolls' heads are proportionally smaller than characters' heads in the

16 drawings); eyes (dolls' eyes are more open than characters' eyes in the drawings);

17 other facial features including lips, cheek bones, chin and forehead.

18       (d)    The final physical shape of the first generation of Bratz dolls,

19 released on the market by MGA in or about June 2001, was conceived of by

20 Margaret Leahy, working on behalf of MGA, after October 20, 2000, along with

21 other MGA agents and employees such as employees in Hong Kong and Mercedeh

22 Ward. This concept was "reduced to practice" by individuals working on or behalf

23 of MGA no earlier than December 19, 2000.

24       (e) Bryant's drawings used standard fashion model poses, and thus were

25 not novel or original.

26       With respect to copyright issues, MGA contends that the drawings of

27 characters that Bryant completed in August and September, 1998, contained original

28 expression covered by copyright, but that subsequent modifications and versions that

18

EXHIBIT 44
PAGE 1406

EXHIBIT _____ 6

PAGE _____ 137

1 Bryant made in 1999 and 2000 did not contain original expression.

2        The following persons have knowledge of facts and circumstances
3 regarding the foregoing: Carter Bryant, Janet Bryant, Thomas Bryant, Jeanne
4 Galvano, Richard Irmen, Ramona Prince, Margaret Leahy, Victoria O'Connor,
5 Veronica Marlow, Paula Garcia, Isaac Larian, Frankie Tsang, Samuel Wong, Cecilia
6 Kwok, Jesse Ramirez, Tina Tomiyama, Cassidy Park, Ann Driskill, Elise Cloonan,
7 Mercedeh Ward, Aileen Storer.

8        The following documents are relevant to the foregoing: Carter Bryant's
9 August and September 1998 drawings that he called "Bratz" (including, but not
10 limited to, those drawings identified by Carter Bryant in Exhibit 5 of his deposition
11 as being sketched in August 1998); publicly available materials that Bryant identified
12 in his deposition testimony as inspiring his conception of a line of dolls in August or
13 September of 1998, including but not limited to the August 1998 issue of *Seventeen*
14 *Magazine*; public domain materials Bryant was aware of and that directly or
15 indirectly influenced him; all of Carter Bryant's sketches and/or modifications of
16 sketches relating to the Bratz concept which were made by him after January 4, 1999
17 and prior to October 21, 2000; each and every document, prototype, and sample
18 produced by Margaret Leahy, including documents and items marked as exhibits at
19 her deposition and those not marked as exhibits at her deposition; castings produced
20 by Veronica Marlow at her deposition, including photographs of such castings
21 marked as exhibits at her deposition; Bratz prototypes, samples, sculpts, and
22 rotocasts found in Hong Kong and produced to Mattel; invoices submitted by Carter
23 Bryant, Veronica Marlow, Anna Rhee, Victoria O'Connor, and other invoices
24 submitted by freelancers for work performed on the Bratz project.

25 **INTERROGATORY NO. 28:**

26        IDENTIFY each and every BRATZ INVENTION YOU contend was
27 CREATED, in whole or in part, after October 19, 2000 and before June 1, 2001, and
28 for each BRATZ INVENTION so identified state all FACTS that support YOUR

EXHIBIT _____ 6

PAGE _____ 138

**EXHIBIT 44**
**PAGE 1407**

1  contention that such BRATZ INVENTION (or aspects or portions thereof) was
2  CREATED after October 19, 2000 and before June 1, 2001, and IDENTIFY all
3  PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR
4  RELATE TO such facts.

5  **RESPONSE TO INTERROGATORY NO. 28:**

6        MGA incorporates by reference its General Response and General
7  Objections above, as though fully set forth herein and specifically incorporates
8  General Objection No. 7 (regarding the Definitions), including but not limited to its
9  objections to the definitions of the terms BRATZ INVENTION, CREATED,
10  IDENTIFY, and REFER OR RELATED TO. MGA further objects to this
11  interrogatory on the grounds that it is overbroad, unduly burdensome, vague and
12  ambiguous both generally and specifically with respect to the term BRATZ
13  INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR
14  RELATES TO, is so broad and over-inclusive that it could be read to include each
15  and every thought, idea and conversation that anyone may have had about BRATZ
16  during the time period at issue.

17        MGA further objects to this interrogatory as compound because it
18  contains discrete subparts that require separate, distinct and multiple responses.
19  Specifically, MGA objects to the term IDENTIFY as overbroad and unduly
20  burdensome, as Mattel's definition of this term calls for responses to multiple
21  discrete subparts. For example, Mattel's definition of the term IDENTIFY in the
22  context of this interrogatory would require MGA to provide a multitude of discrete
23  responses for each BRATZ INVENTION, including:

24        (a)    the Bates number of any document that "REFERS OR RELATES
25  TO THE BRATZ INVENTION;"

26        (b)    the IDENTITY of the individual author or creator of the BRATZ
27  INVENTION;

28        (c)    the IDENTITY of each other individual who contributed in any

EXHIBIT _____ 6

PAGE _____ 139

**EXHIBIT 44**
**PAGE 1408**

1 | individually.

2 | **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 28:**

3 | MGA incorporates by reference its General Response and General

4 | Objections above, as though fully set forth herein and specifically incorporates

5 | General Objection No. 7 (regarding the Definitions), including but not limited to its

6 | objections to the definitions of the terms BRATZ INVENTION, CREATED,

7 | IDENTIFY, and REFER OR RELATED TO.  MGA further objects to this

8 | interrogatory on the grounds that it is overbroad, unduly burdensome, vague and

9 | ambiguous both generally and specifically with respect to the term BRATZ

10 | INVENTION, which incorporates the terms BRATZ, DESIGN and REFER OR

11 | RELATES TO, is so broad and over-inclusive that it could be read to include each

12 | and every thought, idea and conversation that anyone may have had about BRATZ

13 | during the time period at issue.

14 | MGA further objects to this interrogatory as compound because it

15 | contains discrete subparts that require separate, distinct and multiple responses.

16 | Specifically, MGA objects to the term IDENTIFY as overbroad and unduly

17 | burdensome, as Mattel's definition of this term calls for responses to multiple

18 | discrete subparts. For example, Mattel's definition of the term IDENTIFY in the

19 | context of this interrogatory would require MGA to provide a multitude of discrete

20 | responses for each BRATZ INVENTION, including:

21 | (a) the Bates number of any document that "REFERS OR RELATES

22 | TO the BRATZ INVENTION;"

23 | (b) the IDENTITY of the individual author or creator of the BRATZ

24 | INVENTION;

25 | (c) the IDENTITY of each other individual who contributed in any

26 | manner to the BRATZ INVENTION;

27 | (d) the form, material and medium of the BRATZ INVENTION;

28 | (e) the title or name of the BRATZ INVENTION;

EXHIBIT ___**6**___

EXHIBIT 44
PAGE 1414

PAGE ___**140**___

1 Bratz (and related issues) will be the subject of expert testimony at trial. MGA

2 objects to this interrogatory to the extent it seeks to limit the expert testimony that

3 MGA may seek to introduce at trial. MGA will identify its experts and make related

4 disclosures in accordance with the Court's orders and applicable rules. MGA further

5 objects to the interrogatory as unduly burdensome, on the grounds that it would

6 require MGA to identify numerous documents that have already been produced and

7 are readily available to Mattel.

8        MGA objects to the interrogatory on the ground that it is compound and

9 therefore Mattel has propounded more than 50 interrogatories, including discrete

10 subparts, in violation of Judge Larson's order of February 22, 2007, that

11 "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

12 SGL and CV 05-02727]." In its supplemental response to this interrogatory, MGA

13 did not refuse to answer the interrogatory based on the 50-interrogatory limit, but

14 rather refused to use the compound and misleading defined terms that permeate

15 Mattel's interrogatories. The interrogatories attempt to use misleading and unfair

16 definitions to create jury confusion or to circumvent 50-interrogatory limit. For

17 example, Mattel's definition of "BRATZ INVENTION" contains ten separate

18 component parts ("representation, idea, concept, work, process, procedure, plan,

19 improvement, DESIGN or other development"). The incorporation of the defined

20 term "DESIGN" adds at least another 21 elements ("all works, designs, artwork,

21 sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

22 diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

23 practice, developments, inventions and/or improvements"). The inclusion of these

24 disparate concepts in the term "invention" improperly conflates distinct issues of

25 patent law, copyright protection, trade secret law and the common law protecting

26 original ideas, many of which have no place in the ordinary usage of the term

27 "invention." In its previous supplemental responses, MGA used the word

28 "invention" in its ordinary usage, and does so again in these second supplemental

28

EXHIBIT 44
PAGE 1416

EXHIBIT _____ 6

PAGE _____ 141

1  responses. During the meet and confer process regarding MGA's supplemental
2  responses, Mattel's counsel objected to MGA's responses, and argued that MGA
3  must either use Mattel's distorted definitions or respond to each of the many
4  component parts of Mattel's defined terms. As was made clear during the meet and
5  confer process and as more fully set forth in MGA's Opposition to Mattel, Inc.'s
6  Motion To Compel Responses To Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34,
7  35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 47, 48, 49 and 50) By The MGA Parties,
8  MGA objects to this interrogatory as compound and a violation of the 50-
9  interrogatory limit to the extent that Mattel continues to assert that MGA is required
10  to respond to each component part of Mattel's defined terms.

11        Subject to and without waiving the foregoing objections, MGA provides
12  its Second Supplemental Response as follows:

13        For the reasons stated in General Objection No. 7(e) and in the specific
14  objections listed above, in responding to this interrogatory, MGA interprets the word
15  "invention" only as it is generally understood in normal, accepted usage under patent
16  law.

17        MGA does not make any affirmative contentions with respect to
18  inventions created in whole or in part after October 19, 2000 and before June 1,
19  2001. With respect to the issues of utility and/or design patents relevant to Bratz
20  dolls, MGA incorporates by reference its second supplemental response to
21  Interrogatory No. 27 as though fully set herein. Furthermore, to the extent that the
22  Bratz line of dolls first marketed by MGA in 2001 contained features covered by
23  design patent law, said inventions were "conceived of" and "reduced to practice" by
24  Margaret Leahy, working on behalf of MGA, after October 20, 2000 and before June
25  1, 2001, along with other MGA agents and employees such as employees in Hong
26  Kong and Mercedeh Ward. With respect to certain package designs for Bratz
27  products, MGA notes that the unique shape of the packaging qualified for design
28  patent protection, including aspects "conceived of" and "reduced to practice" by

29
MGA'S 2ND SUPPLEMENTAL RESPONSE TO MATTEL'S REVISED 3RD SET OF INTERROGATORIES

EXHIBIT 44
PAGE 1417

EXHIBIT ____ 6

PAGE ____ 142

1 MGA after October 20, 2000 and before June 1, 2001.

2        MGA further contends that each of the four first-generation Bratz dolls
3 are protected by copyright and that such copyrights are owned by MGA.

4        With respect to Bratz two-dimensional character art utilized on, for
5 example, Bratz product packaging and licensed products, while the initial Bratz
6 character art was derivative of Bryant's initial sketches from 1998, by no later than
7 August, 2003, the Bratz character art had changed sufficiently such that it was no
8 longer derivative of Bryant's sketches.

9        The following persons have knowledge of facts and circumstances
10 regarding the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica
11 Marlow; Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca
12 Harris; Cecilia Kwok; David Dees; Jesse Ramirez; Sam Wong; Edmond Lee; Steven
13 Lee; Aileen Storer; Eric Yip; Leon Djiguerian; Rachel Harris; Maggie Siu; Ben Ton;
14 Samuel Wong; Ray Wong; Steffen Smith; Samir Khare; Debora Middleton; Ronan
15 Spelman; Charlotte Broussard.

16        The following documents may be relevant to these facts:  all
17 "DOCUMENTS" that refer to or evidence the work performed by MGA employees
18 and freelancers toward the reduction to practice of the first generation of Bratz dolls
19 during the period after October 19, 2000 through June 1, 2001, including but not
20 limited to: documents showing the development of the first generation of Bratz dolls;
21 documents showing exchanges with the Hong Kong factory regarding the
22 development of the first generation of Bratz dolls; documents showing the timing of
23 the development of packaging, fashion, and accessories for the first generation of
24 Bratz dolls; documents related to the January 2001 Hong Kong toy fair; documents
25 related to the February 2001 New York toy fair; polyurethane samples of prototypes;
26 rotocasts and sculpts in Hong Kong; all prototypes, samples, and tangible items
27 produced by Margaret Leahy and Veronica Marlow, including items marked as
28 exhibits at their depositions and those not marked as exhibits at their depositions;

EXHIBIT    6

PAGE    143

EXHIBIT 44
PAGE 1418

1  invoices submitted by Carter Bryant, Veronica Marlow, Anna Rhee, Victoria

2  O'Connor, and other invoices submitted by freelancers for work performed on the

3  Bratz project; Carter Bryant's August and September 1998 drawings of characters

4  that he called "Bratz" (including, but not limited to, those drawings identified by

5  Carter Bryant in Exhibit 5 of his deposition as being sketched in August 1998); all of

6  Carter Bryant's sketches and/or modifications of sketches relating to the Bratz

7  concept which were made by him after January 4, 1999 and prior to October 21,

8  2000; documents and tangible items depicting Bratz character art.  The documents

9  evidencing this work are too numerous to identify individually.

10  **INTERROGATORY NO. 29:**

11         IDENTIFY each and every BRATZ INVENTION that was CREATED,

12  in whole or in part, after January 3, 1999 and before October 21, 2000, and for each

13  BRATZ INVENTION so identified state all FACTS that REFER OR RELATE TO

14  the timing of the creation of such BRATZ INVENTION and IDENTIFY all

15  PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR

16  RELATE TO such facts.

17  **RESPONSE TO INTERROGATORY NO. 29:**

18         MGA incorporates by reference its General Response and General

19  Objections above, as though fully set forth herein and specifically incorporates

20  General Objection No. 7 (regarding Definitions), including but not limited to its

21  objections to the definitions of the terms BRATZ INVENTION, CREATED, REFER

22  OR RELATE TO, and IDENTIFY.  MGA further objects to this interrogatory as

23  compound because it contains discrete subparts that require separate, distinct and

24  multiple responses.  Specifically, MGA objects to the term IDENTIFY as overbroad

25  and unduly burdensome, as Mattel's definition of this term calls for responses to

26  multiple discrete subparts.  For example, Mattel's definition of the term IDENTIFY

27  in the context of this interrogatory would require MGA to provide a multitude of

28  discrete responses for each BRATZ INVENTION, including:

MGA'S 2ND SUPPLEMENTAL RESPONSE TO MATTEL'S REVISED 3RD SET OF INTERROGATORIES

EXHIBIT ___ 6

PAGE ___ 144

EXHIBIT 44
PAGE 1419

1 "invention" only as it is generally understood in normal, accepted usage under patent
2 law.

3      There were no "inventions" related to Bratz that were created after
4 January 3, 1999 and before October 21, 2000 that could be covered by a utility
5 patent. In this connection, MGA incorporates by reference its second supplemental
6 response to Interrogatory No. 27 as though fully set herein. There also were no
7 inventions related to Bratz that were created after January 3, 1999 and before
8 October 21, 2000 that could be covered by a design patent. In this connection, MGA
9 incorporates by reference its second supplemental response to Interrogatory No. 27
10 as though fully set herein.

11      MGA further contends that there was no Bratz-related original
12 expression protected by copyright after January 3, 1999, and before October 21,
13 2000. MGA further contends that there were no novel/original ideas falling within
14 the scope of Desny v. Wilder, 46 Cal. 2d 714 (1956) related to Bratz, conceived of
15 after January 3, 1999 and before October 21, 2000.

16      The persons who have knowledge of facts and circumstances supporting
17 these contentions include those persons listed in MGA's supplemental responses to
18 Interrogatory Nos. 27, 28 and 30.

19      Documents which may be relevant to these facts include all documents
20 and/or tangible items specifically listed in MGA's supplemental responses to
21 Interrogatories No. 27, 28 and 30.

22 **INTERROGATORY NO. 30:**

23      State all facts that support YOUR contention, if YOU so contend, that,
24 assuming BRYANT assigned rights in any BRATZ INVENTION to MATTEL
25 pursuant to the INVENTIONS AGREEMENT, MGA is entitled to priority over
26 and/or has superior rights to MATTEL as to such BRATZ INVENTION, and
27 IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that
28 REFER OR RELATE TO such facts.

EXHIBIT _____ 6

PAGE _____ 145

EXHIBIT 44
PAGE 1428

1 | superior rights in the Bratz dolls because: (i) there were no "inventions" related to
2 | Bratz covered by the "INVENTIONS AGREEMENT;" (ii) the Bratz dolls were
3 | neither substantially similar to, nor a copy of, nor derivative of, Mattel's hypothetical
4 | rights; and (iii) Mattel waived any rights it may have had due to laches and the
5 | statute of limitations.

6 | **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 30:**

7 | MGA incorporates by reference its General Response and General
8 | Objections above, as though fully set forth herein and specifically incorporates
9 | General Objection No. 7 (regarding Definitions), including but not limited to its
10 | objections to the definitions of the terms BRATZ INVENTION, INVENTIONS
11 | AGREEMENT, IDENTIFY and REFER OR RELATE TO. MGA also objects to
12 | this interrogatory to the extent it seeks information that is not subject to disclosure
13 | under any applicable privilege, doctrine or immunity, including without limitation
14 | the attorney-client privilege, the work product doctrine, the right of privacy, and all
15 | other privileges recognized under the constitutional, statutory or decisional law of
16 | the United States of America, the State of California or any other applicable
17 | jurisdiction. MGA further objects to this interrogatory to the extent it calls for a
18 | legal conclusion. MGA further objects to the extent that this interrogatory seeks
19 | information that is outside MGA's knowledge and is not in MGA's possession,
20 | custody, or control. In particular, MGA objects to this interrogatory to the extent
21 | that it requests MGA to "state *all facts* . . . *and* IDENTIFY all PERSONS . . . and *all*
22 | DOCUMENTS" (emphasis added).

23 | MGA further objects to the interrogatory on the grounds that it is vague,
24 | ambiguous and threatens to mislead the trier of fact in that it is stated in the
25 | hypothetical and therefore proceeds from the false premise that Bryant assigned
26 | rights in the Bratz line of dolls to Mattel and that all terms of the INVENTIONS
27 | AGREEMENT are binding and enforceable. *See e.g., Kendrick v. Sullivan,* 125
28 | *F.R.D. 1, 3 (D. D.C. 1989) (holding that Rule 33 does not permit contention*

EXHIBIT ___6___

EXHIBIT 44
PAGE 1432

PAGE ___146___

1  been patented as a utility patent, because fashion dolls were in the public domain for

2  the purposes of utility patent protection. However, Carter Bryant's idea of a line of

3  fashion dolls that he called "Bratz" was sufficiently novel and original to be

4  protected under California law as a confidential novel idea under Desny v. Wilder,

5  46 Cal.2d 715 (1956) and its progeny.

6      With respect to "inventions" as the term is used in reference to design

7  patent law, the "INVENTIONS AGREEMENT" did not apply to design patent

8  rights. To the extent that Mattel argues that the shapes of characters in Carter

9  Bryant's drawings that he called "Bratz" (including, but not limited to, those

10  drawings identified by Carter Bryant in Exhibit 5 of his deposition as being sketched

11  in August 1998) represented a conception of what could later have been developed

12  into a tangible item that would have qualified for protection under a design patent,

13  MGA contends as follows:

14      (a)    Carter Bryant's pre-October 21, 2000 drawings of characters that

15  he named "Bratz" were never reduced to practice.

16      (b)    Under 35 U.S.C. §171, design patents are available for three-

17  dimensional objects, not drawings or two-dimensional flat art of the sort that Carter

18  Bryant sketched in 1998. The design patent statute provides design patent protection

19  for "any new, original and ornamental design for an article of manufacture," and

20  would not cover the expression on the faces of Bryant's doll sketches.

21      (c)    Carter Bryant was not a sculptor, and any direct translation of his

22  pre-October 21, 2000 two-dimensional flat art into a three-dimensional form for use

23  as a fashion doll sculpt would have produced shapes that were different from the

24  actual shape of the final three-dimensional Bratz sculpt used in manufacturing the

25  first generation of Bratz dolls released on the market by MGA in or about June 2001.

26  Also, different sculpt artists would have created different sculpts – Bryant's two-

27  dimensional drawings did not dictate a specific 3-dimensional object. The shapes of

28  the characters in Bryant's drawings bear little resemblance to the final shape of the

MGA'S 2ND SUPPLEMENTAL RESPONSE TO MATTEL'S REVISED 3RD SET OF INTERROGATORIES

EXHIBIT _____ 6

EXHIBIT 44
PAGE 1435

PAGE _____ 147

1  actual Bratz dolls. Differences between the drawings and the final shape of the
2  actual Bratz dolls include, but are not limited to, the following: posture; hip-to-waist
3  ratio; feet size (dolls' feet are not as exaggerated as characters' feet in the drawings);
4  head size (dolls' heads are proportionally smaller than characters' heads in the
5  drawings); eyes (dolls' eyes are more open that characters' eyes in the drawings);
6  other facial features including lips, cheek bones, chin and forehead.

7            (d)      The final physical shape of the first generation of Bratz dolls,
8  released on the market by MGA in or about June 2001, was "conceived of" and
9  "reduced to practice" by Margaret Leahy, working on behalf of MGA, after October
10  20, 2000 and before June 1, 2001, along with other MGA agents and employees such
11  as employees in Hong Kong and Mercedeh Ward.

12            (e)      Bryant's drawings used standard fashion model poses, and thus
13  were not novel or original.

14            (f)      Although Carter Bryant brought a "dummy" to his meeting with
15  MGA on September 1, 2000, this three-dimensional figure was merely an
16  assemblage of random pre-existing doll parts that was never intended to, and did not,
17  provide an accurate representation of what became the Bratz sculpt.

18            Based on the foregoing, assuming arguendo both that Bryant assigned
19  his 1998 drawings to Mattel, and that such drawings were the conception of what
20  could have been developed into a tangible item that would have qualified for
21  protection under a design patent, such conception would not have covered the shape
22  of the final Bratz sculpt utilized in the first generation of Bratz dolls released to
23  market in or about June 2001, nor any subsequent three-dimensional Bratz shape.

24            With respect to copyright protection, neither the first generation Bratz
25  dolls nor any subsequent Bratz products were substantially similar to Bryant's pre-
26  October 21, 2000 drawings. With respect to Bratz two-dimensional character art
27  utilized on, for example, Bratz product packaging and licensed products, while the
28  initial Bratz character art was derivative of Bryant's initial sketches from 1998, by

48

EXHIBIT ___6___

EXHIBIT 44
PAGE 1436

PAGE ___148___

1 | no later than August, 2003, the Bratz character art had changed sufficiently such that
2 | it was no longer derivative of Bryant's sketches. In addition, the "INVENTIONS
3 | AGREEMENT" did not apply to copyright rights.

4 |          With respect to Bryant's concept of a novel line of fashion dolls, Mattel
5 | would not have exploited said concept, but rather would have suppressed it in order
6 | to protect Mattel's Barbie franchise. In addition, once made public, Bryant's concept
7 | was in the public domain and freely available to be used by competitors. Finally, for
8 | the reasons set forth in response to Interrogatory No. 32, Mattel is not entitled to
9 | injunctive relief.

10 |          With respect to the name "Bratz," Mattel never used it as a trademark,
11 | nor would Mattel ever have used the name for a line of fashion dolls. Trademarks
12 | conceived of by Bryant, moreover, are not covered by the "INVENTIONS
13 | AGREEMENT".

14 |          The following persons have knowledge of facts and circumstances
15 | regarding the foregoing: Carter Bryant; Janet Bryant; Thomas Bryant; Jeanne
16 | Galvano; Richard Irmen; Ramona Prince; Margaret Leahy; Victoria O'Connor;
17 | Veronica Marlow; Paula Garcia; Isaac Larian; Jesse Ramirez; Tina Tomiyama;
18 | Cassidy Park; Ann Driskill; Elise Cloonan; Mercedeh Ward; Frankie Tsang; Samuel
19 | Wong; Cecilia Kwok; Debora Middleton; Ronan Spelman; Charlotte Broussard.

20 |          The following documents are relevant to the foregoing: Carter Bryant's
21 | August and September 1998 drawings that he called "Bratz" (including, but not
22 | limited to, those drawings identified by Carter Bryant in Exhibit 5 of his deposition
23 | as being sketched in August 1998); publicly available materials that Bryant identified
24 | in his deposition testimony as inspiring his conception of a line of dolls in August or
25 | September of 1998, including but not limited to the August 1998 issue of *Seventeen*
26 | *Magazine*; public domain materials Bryant was aware of and that directly or
27 | indirectly influenced him; Mattel's Brand Directional Outlines; analyses and
28 | assessments of Mattel's marketing strategies prepared and/or produced by Young

EXHIBIT ____ **6**

PAGE ____ **149**

**EXHIBIT 44
PAGE 1437**

1  DATED: January 7, 2008

2

3                              SKADDEN, ARPS, SLATE, MEAGHER &
                               FLOM LLP
4
                               By: _____
5                                    Timothy A. Miller
                               Attorneys for Counter-Defendants, MGA
6                              ENTERTAINMENT, INC., ISAAC LARIAN,
                               MGA ENTERTAINMENT (HK) LTD., and
7                              MGAE de MEXICO S.R.L. de C.V.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        115
MGA'S 2ND SUPPLEMENTAL RESPONSE TO MATTEL'S REVISED 3RD SET OF INTERROGATORIES

EXHIBIT 44
PAGE 1503

EXHIBIT ___6___

PAGE ___150___

# EXHIBIT 7

Case 2:04-cv-09049-DOC-RNB Document 4709-4 Filed 01/19/09 Page 26 of 64 Page ID
#:139615
Case 2:04-cv-09049-SGL-RNB Document 3848-26 Filed 05/28/2008 Page 18 of 91

1 | THOMAS J. NOLAN (Bar No. 66992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 300 South Grand Avenue
Los Angeles, California 90071-3144
3 | Telephone: (213) 687-5000
Facsimile: (213) 687-5600
4 | E-mail: tnolan@skadden.com

5 | RAOUL D. KENNEDY (Bar No. 40892)
TIMOTHY A. MILLER (Bar No. 154744)
6 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Embarcadero Center, 38th Floor
7 | San Francisco, California 94111-5974
Telephone: (415) 984-6400
8 | Facsimile: (415) 984-2698
E-mail: rkennedy@skadden.com

9

10 | Attorneys for Cross-Defendants
MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
11 | MGAE De Mexico, S.R.L. De C.V., and ISAAC LARIAN

12 | UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

13 | EASTERN DIVISION

14

15 | CARTER BRYANT, an individual ) CASE NO. CV 04-9049 SGL (RNBx)

16 | Plaintiff, ) Consolidated with Case No. 04-9059
) and Case No. 05-2727

17 | v. ) DISCOVERY MATTER

18 | MATTEL, INC., a Delaware ) MGA ENTERTAINMENT, INC.'S
corporation ) THIRD SUPPLEMENTAL
19 | ) RESPONSES TO MATTEL, INC.'S
Defendant. ) AMENDED FOURTH SET OF
20 | ) INTERROGATORIES

21 | Consolidated with MATTEL, INC. v. )
BRYANT and MGA )
22 | ENTERTAINMENT, INC. v. )
MATTEL, INC. )

23 | ) Phase 1:
) Discovery Cut-Off: January 28, 2008
24 | CONFIDENTIAL – ATTORNEYS' ) Pre-Trial Conference: May 5, 2008
EYES ONLY ) Trial Date: May 27, 2008

25

26 | PROPOUNDING PARTY: MATTEL, INC. ("MATTEL")

27 | RESPONDING PARTY: MGA ENTERTAINMENT, INC.

SET NUMBER: AMENDED FOURTH

28

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

## PRELIMINARY STATEMENT

The General Response set forth herein applies to all responses that MGA Entertainment, Inc. ("MGA") is providing in response to these interrogatories (the "Interrogatories") or may in the future provide in response to any discovery request in this action. The Response is made without waiving, or intending to waive but, on the contrary, expressly reserving: (a) the right to object, on the grounds of competency, privilege, relevancy or materiality, or any other proper grounds, to the use of the Response, for any purpose in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other interrogatories or other discovery procedures; and (c) the right at any time to revise, correct, add to, or clarify any of the responses propounded herein.

The Response reflects only the present state of MGA's discovery regarding the information that Mattel seeks. Discovery for Phase Two and other investigation or research concerning this litigation are continuing. It is anticipated that further discovery, independent investigation, and legal research and analysis will supply additional facts and meaning to the known facts, as well as establish entirely new factual conclusions, all of which may lead MGA to discover other information responsive to these Interrogatories. MGA therefore reserves the right to amend or supplement this Response at any time in light of future investigation, research or analysis, and also expressly reserves the right to rely on, at any time, including trial, subsequently discovered information omitted from this Response as a result of mistake, error, oversight or inadvertence. MGA does not hereby admit, adopt or acquiesce in any factual or legal contention, assertion or characterization contained in the Interrogatories or any particular request therein, even where MGA has not otherwise objected to a particular interrogatory, or has agreed to provide information responsive to a particular interrogatory.

No incidental or implied admissions are intended by this Response.

EXHIBIT _____ 709

EXHIBIT _____ 7 _____ PAGE __ 1711

PAGE _____ 152

Case 2:04-cv-09049-DOC-RNB Document 4709-4 Filed 01/19/09 Page 28 of 64 Page ID
#:139617
Case 2:04-cv-09049-SGL-RNB Document 3848-26 Filed 05/28/2008 Page 20 of 91

1 objectionable where they seek to require more of MGA than any obligation imposed
2 by the Federal Rules of Civil Procedure; subject MGA to unreasonable and undue
3 annoyance, oppression, burden, and expense; and/or seek to impose upon MGA an
4 obligation to investigate or discover information or materials from sources equally
5 accessible to Mattel.

6      5.   MGA objects to these Interrogatories to the extent they are
7 overbroad and unduly burdensome.

8      6.   MGA objects to the definitions and instructions to the extent such
9 definitions and instructions purport to enlarge, expand, or alter in any way the plain
10 meaning and scope of any specific term or specific interrogatories on the ground that
11 such enlargement, expansion, or alteration renders such a term or request vague,
12 ambiguous, unintelligible, overly broad, unduly burdensome, and/or uncertain.

13      7.   MGA objects to the terms YOU, YOUR, BRYANT, LARIAN,
14 MGA, MATTEL, AFFILIATES, PERSON, PERSONS, DESIGN, DESIGNS,
15 BRATZ, SOLD, SELL, SALE, BRATZ DOLL, BRATZ PRODUCT, BRATZ
16 MOVIE, BRATZ TELEVISION SHOW, BASED ON, and REFER OR RELATE
17 TO on the grounds that these terms render the interrogatories overbroad, unduly
18 burdensome, vague and ambiguous and to the extent that they could be read to call
19 for legal conclusions in responding to the interrogatories, including, by way of
20 example and without limitation, as follows:

21      (a)   MGA objects to the definition of the term "BRATZ"
22 (Definitions ¶ 9) as vague, ambiguous, overly broad and unduly burdensome, and
23 designed to mislead and confuse the trier of fact. The definition includes "any
24 project, product, doll or DESIGN ever known by [the Bratz] name (whether in whole
25 or in part and regardless of what such project, product or doll is or has been also,
26 previously or subsequently called) and any product, doll or DESIGN or any portion
27 thereof that is now or has ever been known as, or sold or marketed under, the name
28 or term 'Bratz' (whether in whole or in part and regardless of what such product, doll

Case 2:04-cv-09049-DOC-RNB   Document 4709-4   Filed 01/19/09   Page 29 of 64   Page ID
#:139618
Case 2:04-cv-09049-SGL-RNB   Document 3848-26   Filed 05/28/2008   Page 21 of 91

1  or DESIGN or portion thereof is or has been also, previously or subsequently called)
2  or that is now or has ever been sold or marketed as part of the 'Bratz' line, and each
3  version or iteration of such product, doll or DESIGN or any portion thereof," and it
4  goes on.  By incorporating the definition of DESIGN, the overly broad definition of
5  BRATZ includes two-dimensional and three-dimensional representations, including
6  "works, designs, artwork, sketches, drawings, illustrations, representations,
7  depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models,
8  samples, rotocasts, reductions to practice, developments, inventions and/or
9  improvements . . . ." (Definitions ¶ 8.)  These convoluted and multi-part definitions
10  combine to render the interrogatories vague, ambiguous and overly broad, and to
11  include within the term BRATZ things that do not fairly represent the Bratz line of
12  dolls, accessories and related products that are the subject of this case.  In responding
13  to these interrogatories, MGA will interpret the term BRATZ to mean the line of
14  dolls introduced by MGA to the market for sale in May or June of 2001 and
15  subsequent dolls, accessories and other products known as Bratz or associated by
16  MGA with the Bratz line of dolls;

17            (b)  .  MGA objects to the definition of the term "BRATZ
18  DOLL" (Definitions ¶ 12) as vague, ambiguous, overly broad and unduly
19  burdensome, and designed to mislead and confuse the trier of fact.  The definition
20  includes any doll that "REFERS OR RELATES TO BRATZ."  Mattel's definition of
21  the terms "BRATZ" and "REFERS OR RELATES" renders the definition of
22  "BRATZ DOLL" unintelligible because MGA cannot know, by way of example,
23  what dolls may "deal with, comment on, respond to, . . . or pertain" (Definitions ¶
24  17) to "BRATZ."  In responding to these interrogatories, MGA will interpret the
25  term "BRATZ DOLL" to mean the line of dolls introduced by MGA to the market
26  for sale in May or June of 2001 and subsequent dolls known as Bratz;

27            (c)    MGA objects to the definition of the term "BASED ON" as
28  vague, ambiguous, overly broad and unduly burdensome, and designed to mislead

EXHIBIT ____
EXHIBIT ___7___          PAGE___17|3___
PAGE ___154___

Case 2:04-cv-09049-DOC-RNB    Document 4709-4    Filed 01/19/09    Page 30 of 64    Page ID
#:139619
Case 2:04-cv-09049-SGL-RNB    Document 3848-26    Filed 05/28/2008    Page 22 of 91

1  and confuse the trier of fact. The definition strays far from the English meaning of
2  "based on" by including terms loaded with legal significance in intellectual property
3  law, such as "substantially similar to," or "a derivative of." In responding to these
4  interrogatories, MGA will not interpret the term "BASED ON," but rather will
5  respond using "based on" in its normal accepted meaning.

6          (d)    MGA objects to the terms "IDENTIFY" or "IDENTITY"
7  as overbroad, unduly burdensome, vague, ambiguous, and oppressive. Mattel's
8  definition of these terms inherently call for answers to multiple discrete questions or
9  subparts to questions. For example, when those terms are used to reference any
10  BRATZ PRODUCT, the use of those terms requests at least 6 different and distinct
11  facts: (a) the full name of the product; (b) the number of the product; (c) the SKU of
12  the number; (d) any other applicable designation of the product useful for
13  identification; (e) the period of time during which the product was, has been, or will
14  be sold; and (f) the identity of each person who has licensed from YOU the right to
15  sell such BRATZ PRODUCT. Therefore, any interrogatory that includes or
16  incorporates the terms IDENTIFY or IDENTITY are necessarily compound and
17  should be posed as separate interrogatories.

18          (e)    MGA objects to the term "any" and "REFER OR RELATE
19  TO" on the grounds and to the extent that they are overbroad, unduly burdensome,
20  and/or are vague and ambiguous in the context of the interrogatories as written and
21  as those interrogatories would be plainly understood absent Mattel's definitions.

22      8.    MGA objects to these interrogatories to the extent that they may
23  unfairly seek to restrict the facts on which MGA may rely at trial. Discovery has not
24  been completed and MGA is not yet necessarily in possession of all the facts and
25  documents upon which MGA intends to rely. All of the responses submitted
26  herewith are tendered to Mattel with the reservation that the responses are submitted
27  without limiting the evidence on which MGA may rely to support the contentions
28  and defenses that MGA may assert at the trial of this action and to rebut or impeach

5

Case 2:04-cv-09049-DOC-RNB   Document 4709-4   Filed 01/19/09   Page 31 of 64   Page ID
#:139620
Case 2:04-cv-09049-SGL-RNB   Document 3848-26   Filed 05/28/2008   Page 23 of 91

1  the contentions, assertions and evidence that Mattel may present. MGA reserves the

2  right to supplement or amend these responses at a future date.

3       9.    MGA objects to each interrogatory to the extent that it seeks

4  information that will be the subject of expert witness testimony and that is therefore

5  premature.

6       10.    In responding to these interrogatories, MGA has not and will not

7  comply with any instructions or definitions that seek to impose requirements in

8  addition to those imposed by the Federal Rules of Civil Procedure and any applicable

9  local rule, any orders entered by the Court in this Action, or other applicable law.

10      11.    Consistent with Rule 33(d) of the Federal Rules of Civil

11 Procedure, MGA objects to providing responses to interrogatories that can be

12 derived from documents that have or will be produced (when requested in

13 compliance with Rule 26) and where the burden to derive such information is

14 substantially the same for Mattel as it is for MGA.

15      12.    MGA objects to each interrogatory to the extent that it seeks the

16 disclosure of confidential, proprietary, or trade-secret information.

17      13.    MGA objects to each interrogatory to the extent that it calls for a

18 legal conclusion.

19      14.    MGA objects to several of those interrogatories that appear to be

20 directed at other parties to the litigation and not to MGA, given the nature of the

21 claims asserted against MGA in this case.

22      15.    MGA reserves the right to object on any ground at any time to

23 such other or supplemental discovery requests as Mattel may propound involving or

24 relating to the same subject matter of these interrogatories.

25      16.    To the extent MGA responds to an interrogatory, it does so

26 without waiving or intending to waive but rather, on the contrary, preserving and

27 intending to preserve, its contention that anything Mr. Bryant did on weekends,

28 evenings, vacation and any other time outside ordinary business hours was not done

6

EXHIBIT _____ 709

EXHIBIT _____ 7 _____   PAGE ___ 1715

PAGE ___ 156

Case 2:04-cv-09049-DOC-RNB   Document 4709-4   Filed 01/19/09   Page 32 of 64   Page ID
#:139621
Case 2:04-cv-09049-SGL-RNB   Document 3848-26   Filed 05/28/2008   Page 24 of 91

1   while he was working for Mattel.  MGA's response may not be taken as an admission

2   that the information it provides in its response in any way reflects or evidences work

3   performed by Mr. Bryant while he was working for Mattel or that MGA adopts or

4   agrees with any fact or legal conclusion assumed, presumed or contained in Mattel's

5   interrogatory.

6            17.      MGA objects to each of Mattel's interrogatories because Mattel

7   has propounded more than 50 interrogatories, including discrete subparts.  Under

8   Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each

9   side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

10           18.      MGA's responses are made based on its understanding and

11  interpretation of each interrogatory.  MGA reserves the right to supplement its

12  objections and responses should Mattel subsequently put forth an interpretation of

13  any interrogatory that differs from those of MGA.

14  **OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES**

15           Without waiving or departing from its General Response and General

16  Objections, and specifically incorporating them in its response to each Interrogatory

17  below, MGA makes the following additional objections and responses to specific

18  Interrogatories:

19  **INTERROGATORY NO. 42:**

20           State all facts that support YOUR contention, if YOU so contend, that

21  any BRATZ DOLLS are not BASED ON BRATZ DESIGNS created by BRYANT

22  on or before October 19, 2000, and IDENTIFY all PERSONS with knowledge of

23  such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

24  **RESPONSE TO INTERROGATORY NO. 42:**

25           MGA incorporates by reference its General Response and General

26  Objections above, as though fully set forth herein and specifically incorporates

27  General Objection No. 7 (regarding Definitions), including without limitation

28  MGA's objection to the definition of the terms BASED ON, BRATZ DOLLS,

7

EXHIBIT ___ 7

PAGE ___ 157

EXHIBIT ___ 109

PAGE ___ 1716

Case 2:04-cv-09049-DOC-RNB   Document 4709-4   Filed 01/19/09   Page 33 of 64   Page ID
#:139622
Case 2:04-cv-09049-SGL-RNB   Document 3848-26   Filed 05/28/2008   Page 25 of 91

1 | BRATZ, DESIGN, IDENTIFY and REFER OR RELATE TO, and further objects to
2 | this interrogatory on the ground that it is overbroad, unduly burdensome, vague and
3 | ambiguous.

4 |         MGA also objects to this interrogatory to the extent it seeks information
5 | that is not subject to disclosure under any applicable privilege, doctrine or immunity,
6 | including without limitation the attorney-client privilege, the work product doctrine,
7 | the right of privacy, and all other privileges recognized under the constitutional,
8 | statutory or decisional law of the United States of America, the State of California or
9 | any other applicable jurisdiction. MGA objects to this interrogatory to the extent it
10 | calls for a legal conclusion.

11 |         MGA further objects to this interrogatory on the ground that it is
12 | premature because the invention, creation, conception, or reduction to practice of
13 | Bratz (and other legal concepts that may be relevant) will be the subject of expert
14 | testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the
15 | expert testimony that MGA may seek to introduce at trial. MGA will identify its
16 | experts and make related disclosures in accordance with the Court's orders and
17 | applicable rules.

18 |         MGA further objects to this interrogatory on the grounds that it seeks
19 | information that is not relevant to the claims or defenses of any party to the action
20 | and is not reasonably calculated to lead to the discovery of admissible evidence
21 | because the INVENTIONS AGREEMENT executed by Carter Bryant in or around
22 | January 1999, purports to state that any inventions conceived or reduced to practice
23 | by him during his employment with Mattel would be owned by Mattel. The
24 | references to the conception and reduction to practice of an invention are terms of art
25 | in patent law. Accordingly, copyright law principles of substantial similarity,
26 | copying, and derivative works are not relevant to the INVENTIONS AGREEMENT
27 | which, by its terms, involves only principles of patent law.

28 |         MGA further objects on the ground that this interrogatory is an

8

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____ 109
PAGE _____ 1717

EXHIBIT _____ 7
PAGE _____ 158

1  overbroad and unduly burdensome contention interrogatory to the extent it asks for
2  "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*
3  *Am. v. Rawstron,* 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
4  requests seeking "all facts, documents, and witnesses that support the denial of a
5  statement or allegation of fact" because the "universe of potentially responsive
6  information is almost endless").

7  MGA further objects to the extent that this interrogatory seeks
8  information that is outside MGA's knowledge and is not in MGA's possession,
9  custody, or control. In particular, MGA objects to this interrogatory to the extent
10  that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*
11  DOCUMENTS" (emphasis added).

12  MGA further objects to this interrogatory because Mattel has
13  propounded more than 50 interrogatories. Under Judge Larson's order of February
14  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
15  04049-SGL and CV 05-02727].

16  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

17  MGA incorporates by reference its General Response and General
18  Objections above, as though fully set forth herein and specifically incorporates
19  General Objection No. 7 (regarding Definitions), including without limitation
20  MGA's objection to the definition of the terms BASED ON, BRATZ DOLLS,
21  BRATZ, DESIGN, IDENTIFY and REFER OR RELATE TO, and further objects to
22  this interrogatory on the ground that it is overbroad, unduly burdensome, vague and
23  ambiguous.

24  MGA also objects to this interrogatory to the extent it seeks information
25  that is not subject to disclosure under any applicable privilege, doctrine or immunity,
26  including without limitation the attorney-client privilege, the work product doctrine,
27  the right of privacy, and all other privileges recognized under the constitutional,
28  statutory or decisional law of the United States of America, the State of California or

9

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____109_____
PAGE _____1710_____

EXHIBIT _____7_____
PAGE _____159_____

Case 2:04-cv-09049-DOC-RNB   Document 4709-4   Filed 01/19/09   Page 35 of 64   Page ID
#:139624
Case 2:04-cv-09049-SGL-RNB   Document 3848-26   Filed 05/28/2008   Page 27 of 91

1  any other applicable jurisdiction. MGA objects to this interrogatory to the extent it
2  calls for a legal conclusion.

3        MGA further objects to this interrogatory on the ground that it is
4  premature because the invention, creation, conception, or reduction to practice of
5  Bratz (and other legal concepts that may be relevant) will be the subject of expert
6  testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the
7  expert testimony that MGA may seek to introduce at trial. MGA will identify its
8  experts and make related disclosures in accordance with the Court's orders and
9  applicable rules.

10        MGA further objects to this interrogatory on the grounds that it seeks
11  information that is not relevant to the claims or defenses of any party to the action
12  and is not reasonably calculated to lead to the discovery of admissible evidence
13  because the INVENTIONS AGREEMENT executed by Carter Bryant in or around
14  January 1999, purports to state that any inventions conceived or reduced to practice
15  by him during his employment with Mattel would be owned by Mattel. The
16  references to the conception and reduction to practice of an invention are terms of art
17  in patent law. Accordingly, copyright law principles of substantial similarity,
18  copying, and derivative works are not relevant to the INVENTIONS AGREEMENT
19  which, by its terms, involves only principles of patent law.

20        MGA further objects on the ground that this interrogatory is an
21  overbroad and unduly burdensome contention interrogatory to the extent it asks for
22  "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*
23  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
24  requests seeking "all facts, documents, and witnesses that support the denial of a
25  statement or allegation of fact" because the "universe of potentially responsive
26  information is almost endless").

27        MGA further objects to the extent that this interrogatory seeks
28  information that is outside MGA's knowledge and is not in MGA's possession,

                                    10

EXHIBIT ____109____

EXHIBIT ____7____          PAGE ____1719____

PAGE ____160____

1  custody, or control.  In particular, MGA objects to this interrogatory to the extent
2  that it requests that MGA "state *all* facts … and IDENTIFY *all* PERSONS…and *all*
3  DOCUMENTS" (emphasis added).

4          Subject to and without waiving the foregoing objections, MGA
5  responds as follows:

6          Should there be a finding that any intellectual property rights associated
7  with the drawings completed by Carter Bryant in August or September, 1998, and/or
8  subsequent drawings, sketches, and/or representations that Bryant created prior to
9  October 4, 2000, are owned by Mattel, it is MGA's position that the first generation
10  of Bratz dolls, first "reduced to practice," and first expressed in a tangible medium,
11  after October 20, 2000, and all subsequent Bratz dolls, are not substantially similar
12  to, are not a copy of, and are not derivative of Carter Bryant's aforementioned works.

13          MGA further responds that said first generation of Bratz dolls differ
14  markedly and significantly from the drawings or designs completed by Carter Bryant
15  prior to October 19, 2000.  First, with respect to the three-dimensional "dummy" to
16  which Bryant referred at his deposition, it had no material resemblance to the first
17  generation of Bratz dolls.  Second, with respect to Carter Bryant's drawings, MGA
18  points out that two-dimensional drawings do not translate into three-dimensional
19  dolls without original, creative effort.  Third, there are recognizable and material
20  differences in the total overall look and feel of the first generation Bratz dolls
21  compared to Carter Bryant's drawings completed prior to October 21, 2000.  Fourth,
22  there are recognizable and material differences in individual elements of the first
23  generation Bratz dolls compared to Carter Bryant's drawings completed prior to
24  October 21, 2000, including, but not limited to, with respect to the following: hair
25  styles; hair colors; facial expression; depiction of noses; eye art; extent of detail of
26  eye art; lip art; eyebrow art; proportions of the bodies; posture; spatial arrangement
27  of hands; wrists and arms; and proportions and spatial arrangements of the eyes,
28  noses, and mouths.  Additional details regarding such differences will be the subject

11
MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT ___/09

PAGE ___1720

EXHIBIT ___7

PAGE ___161

Case 2:04-cv-09049-DOC-RNB  Document 4709-4  Filed 01/19/09  Page 37 of 64  Page ID
#:139626
Case 2:04-cv-09049-SGL-RNB  Document 3848-26  Filed 05/28/2008  Page 29 of 91

1  of expert disclosures and will be provided at a later time.

2      With respect to any design relating to the Bratz concept that Carter
3  Bryant may have contributed after October 4, 2000 and before October 21, 2000, i.e.,
4  during a period that he was performing such services for MGA pursuant to a
5  freelance contract, MGA notes that any such design would have incorporated the
6  original and/or creative input of other artists working for or on behalf of MGA on the
7  Bratz concept, which was owned by MGA as a consequence of the October 4, 2000
8  transfer of rights from Bryant to MGA. In addition, the first generation of Bratz
9  dolls, and all subsequent Bratz dolls, are not substantially similar to, derivative of,
10  and/or a copy of any work performed or created by Carter Bryant from October 4-
11  October 20, 2000.

12      The following persons have knowledge of said facts: Isaac Larian;
13  Carter Bryant; Margaret Leahy; Veronica Marlow; Anna Rhee; Mercedeh Ward;
14  Sarah Halpern; Paula Treantafelles (Garcia); Steve Tarmichael; Rebecca Harris;
15  Cecilia Kwok; David Dees; Jesse Ramirez; and Samuel Wong.

16      The following documents may be relevant to these facts: all
17  DOCUMENTS that refer to or evidence the work performed by MGA employees
18  and freelancers toward the reduction to practice of the first generation of Bratz dolls
19  during the period after October 20, 2000 through June 1, 2001, including but not
20  limited to: Carter Bryant's drawings; the Bratz dolls; My Scene dolls;
21  DOCUMENTS evidencing the development of the first generation of Bratz dolls by
22  employees and freelance artists working for MGA; and invoices submitted by
23  freelancers for work performed on the Bratz Project. The documents evidencing this
24  work are too numerous to identify individually.

25  **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

26      MGA incorporates by reference its General Response and General
27  Objections above, as though fully set forth herein and specifically incorporates
28  General Objection No. 7 (regarding Definitions), including without limitation

12

EXHIBIT     7

PAGE     162

EXHIBIT     109

PAGE     1721

Case 2:04-cv-09049-DOC-RNB   Document 4709-4   Filed 01/19/09   Page 38 of 64   Page ID
#:139627
Case 2:04-cv-09049-SGL-RNB   Document 3848-26   Filed 05/28/2008   Page 30 of 91

1  MGA's objection to the definition of the terms BASED ON, BRATZ DOLLS;
2  BRATZ, DESIGN, IDENTIFY and REFER OR RELATE TO, and further objects to
3  this interrogatory on the ground that it is overbroad, unduly burdensome, vague and
4  ambiguous.

5          MGA also objects to this interrogatory to the extent it seeks information
6  that is not subject to disclosure under any applicable privilege, doctrine or immunity,
7  including without limitation the attorney-client privilege, the work product doctrine,
8  the right of privacy, and all other privileges recognized under the constitutional,
9  statutory or decisional law of the United States of America, the State of California or
10  any other applicable jurisdiction. MGA objects to this interrogatory to the extent it
11  calls for a legal conclusion.

12          MGA further objects to this interrogatory on the ground that it is
13  premature because the invention, creation, conception, or reduction to practice of
14  Bratz (and other legal concepts that may be relevant) will be the subject of expert
15  testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the
16  expert testimony that MGA may seek to introduce at trial. MGA will identify its
17  experts and make related disclosures in accordance with the Court's orders and
18  applicable rules.

19          MGA further objects to this interrogatory on the grounds that it seeks
20  information that is not relevant to the claims or defenses of any party to the action
21  and is not reasonably calculated to lead to the discovery of admissible evidence
22  because the INVENTIONS AGREEMENT executed by Carter Bryant in or around
23  January 1999, purports to state that any inventions conceived or reduced to practice
24  by him during his employment with Mattel would be owned by Mattel. The
25  references to the conception and reduction to practice of an invention are terms of art
26  in patent law. Accordingly, copyright law principles of substantial similarity,
27  copying, and derivative works are not relevant to the INVENTIONS AGREEMENT
28  which, by its terms, involves only principles of patent law.

13

EXHIBIT __109__

PAGE __1722__

EXHIBIT __7__

PAGE __163__

Case 2:04-cv-09049-DOC-RNB    Document 4709-4    Filed 01/19/09    Page 39 of 64    Page ID
#:139628
Case 2:04-cv-09049-SGL-RNB    Document 3848-26    Filed 05/28/2008    Page 31 of 91

1         MGA further objects on the ground that this interrogatory is an

2 overbroad and unduly burdensome contention interrogatory to the extent it asks for

3 "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*

4 *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

5 requests seeking "all facts, documents, and witnesses that support the denial of a

6 statement or allegation of fact" because the "universe of potentially responsive

7 information is almost endless").

8         MGA further objects to the extent that this interrogatory seeks

9 information that is outside MGA's knowledge and is not in MGA's possession,

10 custody, or control.  In particular, MGA objects to this interrogatory to the extent

11 that it requests that MGA "state *all* facts … and IDENTIFY *all* PERSONS…and *all*

12 DOCUMENTS" (emphasis added).

13         MGA objects to the interrogatory on the ground that it is compound and

14 therefore Mattel has propounded more than 50 interrogatories, including discrete

15 subparts, in violation of Judge Larson's order of February 22, 2007, that

16 "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

17 SGL and CV 05-02727]." In its supplemental response to this interrogatory, MGA

18 did not refuse to answer the interrogatory based on the 50-interrogatory limit, but

19 rather refused to use the compound and misleading defined terms that permeate

20 Mattel's interrogatories.  The interrogatories attempt to use misleading and unfair

21 definitions to create jury confusion or to circumvent 50-interrogatory limit.  For

22 example, Mattel's definition of "BRATZ INVENTION" contains ten separate

23 component parts ("representation, idea, concept, work, process, procedure, plan,

24 improvement, DESIGN or other development").  The incorporation of the defined

25 term "DESIGN" adds at least another 21 elements ("all works, designs, artwork,

26 sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

27 diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

28 practice, developments, inventions and/or improvements").  The inclusion of these

14

EXHIBIT 7

PAGE 164

EXHIBIT 109

PAGE 1723

Case 2:04-cv-09049-DOC-RNB   Document 4709-4   Filed 01/19/09   Page 40 of 64   Page ID
#:139629
Case 2:04-cv-09049-SGL-RNB    Document 3848-26    Filed 05/28/2008    Page 32 of 91

1  disparate concepts in the term "invention" improperly conflates distinct issues of

2  patent law, copyright protection, trade secret law and the common law protecting

3  original ideas, many of which have no place in the ordinary usage of the term

4  "invention." In its previous supplemental responses, MGA used the word

5  "invention" in its ordinary usage, and does so again in these second supplemental

6  responses. During the meet and confer process regarding MGA's supplemental

7  responses, Mattel's counsel objected to MGA's responses, and argued that MGA

8  must either use Mattel's distorted definitions or respond to each of the many

9  component parts of Mattel's defined terms. As was made clear during the meet and

10 confer process and as more fully set forth in MGA's Opposition to Mattel, Inc.'s

11 Motion To Compel Responses To Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34,

12 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 47, 48, 49 and 50) By The MGA Parties,

13 MGA objects to this interrogatory as compound and a violation of the 50-

14 interrogatory limit to the extent that Mattel continues to assert that MGA is required

15 to respond to each component part of Mattel's defined terms.

16         Subject to and without waiving the foregoing objections, MGA provides

17 its Second Supplemental Response as follows:

18         MGA contends that, applying the generally-accepted definitions of the

19 words "based on" and "design", neither the first generation of Bratz dolls nor any

20 subsequent Bratz products were based on any Carter Bryant designs created on or

21 before October 19, 2000. MGA further contends that even if MGA applies Mattel's

22 misleading definitions of "BASED ON" and "DESIGN," neither the first generation

23 of Bratz dolls nor any of subsequent Bratz products were "BASED ON" any Carter

24 Bryant "DESIGNS" created on or before October 19, 2000. MGA further contends

25 that the first generation of Bratz dolls (and subsequent Bratz products) were

26 "conceived of" and "reduced to practice" for purposes of design patent law, and first

27 expressed in a tangible medium for purposes of copyright law, after October 20,

28 2000, as a result of original, creative efforts of artists employed by, or working on

15
MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT      1
PAGE         165

EXHIBIT      109
PAGE         1724

1  behalf of, MGA.  All first-generation Bratz dolls and subsequent Bratz products are
2  not substantially similar to, are not a copy of, and are not derivative of, any Carter
3  Bryant designs completed on or before October 19, 2000.

4          To the extent that Mattel argues that the shapes of characters in Carter
5  Bryant's drawings that he called "Bratz" (including, but not limited to, those
6  drawings identified by Carter Bryant in Exhibit 5 of his deposition as being sketched
7  in August 1998) represented a conception of what could have later become a three-
8  dimensional object that could have been the subject of a design patent, MGA
9  contends as follows:

10          Carter Bryant was not a sculptor, and any effort to translate his pre-1999
11  two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt
12  would have produced shapes that were different from the actual shape of the final
13  three-dimensional Bratz sculpt used in manufacturing the first generation of Bratz
14  dolls released on the market by MGA in or about June 2001.  Also, different sculpt
15  artists would have created different sculpts -- Bryant's two-dimensional drawings did
16  not dictate a specific three-dimensional object.  The shapes of the characters in
17  Bryant's drawings bear little resemblance to the final shape of the actual Bratz dolls.
18  Differences between the drawings and the final shape of the actual Bratz dolls
19  include, but are not limited to, the following:  posture; hip-to-waist ratio; feet size
20  (dolls' feet are not as exaggerated as characters' feet in the drawings); head size
21  (dolls' heads are proportionally smaller than characters' heads in the drawings); eyes
22  (dolls' eyes are more open than characters' eyes in the drawings); other facial features
23  including lips, cheek bones, chin and forehead.

24          Moreover, the final physical shape of the first generation of Bratz dolls,
25  released on the market by MGA in or about June 2001, was conceived of by
26  Margaret Leahy, working on behalf of MGA, along with other MGA agents and
27  employees such as employees in Hong Kong and Mercedeh Ward.  The conception
28  of this physical shape was completed on or after October 20, 2000, and reduced to

16

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT ___109___

EXHIBIT ___7___

PAGE ___1725___

PAGE ___1616___

Case 2:04-cv-09049-DOC-RNB   Document 4709-4   Filed 01/19/09   Page 42 of 64   Page ID
#:139631
Case 2:04-cv-09049-SGL-RNB   Document 3848-26   Filed 05/28/2008   Page 34 of 91

1    practice no earlier than December 19, 2000.

2         Copyright infringement analysis under Ninth Circuit law requires that
3    "objective" or "extrinsic" elements that are "scènes-à-faire" in the public domain, or
4    public domain materials that Bryant was aware of and that directly or indirectly
5    influenced him in developing his concept for a new line of fashion dolls, be filtered
6    out of the subject works, and, thereafter, that the remaining "subjective" or
7    "intrinsic" elements be evaluated for substantial similarity.  Carter Bryant's 1998
8    drawings contain many elements that must be filtered out, including but not limited
9    to the oversized head, eyes, lips, and feet of the figures in Bryant's drawings and the
10   stock model and/or doll poses.  A non-exhaustive list of examples of prior existing
11   works that incorporate such elements includes the following:  sources of inspiration
12   specifically identified by Carter Bryant, including Steve Madden advertisements and
13   Paris Blues advertisements, which were highly visible in 1998 (various Steve
14   Madden advertisements also served as a key inspiration for Mattel's own "Toon
15   Teens" dolls); Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie
16   dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No
17   Name; Hello Kitty; Coca-Cola advertisements; anime, including, e.g., Sailor Moon;
18   and manga.

19        Once all of the materials that directly or indirectly influenced Bryant
20   and all "scène-à-faire" features are eliminated from the analysis, the first generation
21   Bratz dolls (and all subsequent Bratz products) are readily seen as not substantially
22   similar to Carter Bryant's 1998 drawings.  The differences between the drawings and
23   the first generation Bratz dolls include, but are not limited to, the following:

24        • Posture
25        • Hip-to-waist ratio
26        • Feet size (dolls' feet are not as exaggerated as characters' feet in
27          the drawings)
28        • Head size (dolls' heads are proportionally smaller than characters'

17

EXHIBIT ___109___

EXHIBIT ___7___

PAGE ___1726___

PAGE ___167___

Case 2:04-cv-09049-DOC-RNB  Document 4709-4  Filed 01/19/09  Page 43 of 64  Page ID
#:139632
Case 2:04-cv-09049-SGL-RNB  Document 3848-26  Filed 05/28/2008  Page 35 of 91

1         heads in the drawings)

2            • Eyes (dolls' eyes are more open than characters' eyes in the

3               drawings)

4            • Eye to lips ratio (lips of characters in drawings are proportionally

5               larger relative to eyes than are lips of dolls)

6            • Hair (characters in drawings have much edgier hairstyles than the

7               dolls do)

8            • Shapes of eyes and eye design

9            • Shapes of lips

10           • Overall look and feel (dolls are overall softer, less extreme than

11               drawings)

12        That the dolls and the drawings are not substantially similar also is

13 consistent with the fact that Carter Bryant was not a sculptor, and, as discussed

14 above, any effort to translate his pre-1999 two-dimensional flat art into a three-

15 dimensional form for use as a fashion doll sculpt would have produced shapes that

16 were different from the actual shape of the final three-dimensional Bratz sculpt used

17 in manufacturing the first generation of Bratz dolls released on the market by MGA

18 in or about June 2001. Indeed, a team of highly-skilled artists (including several that

19 had been used by Mattel) spent months developing the Bratz first-generation dolls—

20 valuable time and original creative effort that would not have been necessary if said

21 first-generation Bratz dolls were simply a copy of Bryant's designs.

22        The absence of substantial similarity is further shown in the close

23 correlation between Bryant's drawings and the inspiration he points to, including but

24 not limited to the Steve Madden and Paris Blues advertisements in the August 1998

25 issue of *Seventeen Magazine*, as well as other advertisements in that issue, such as

26 the Coca Cola advertisement.

27        Mattel's own My Scene Barbie line of dolls provides further proof that

28 the first generation of Bratz dolls was not substantially similar to the Bryant

18

EXHIBIT ____ 109

EXHIBIT ____ 7

PAGE ____ 1727

PAGE ____ 168

1  drawings, in that (i) Mattel asserts that the My Scene Barbie dolls are independent
2  works of art, not copied from Bratz, yet (ii) said dolls are far closer in appearance to
3  Bratz dolls than are Bryant's two-dimensional drawings.

4       Additional details regarding such differences will be the subject of
5  expert disclosures and will be provided in accordance with the Court's schedule for
6  expert discovery.

7       With respect to any Carter Bryant contribution to the first generation
8  Bratz product after October 4, 2000 and before October 21, 2000, i.e., during a
9  period that he was performing such services for MGA pursuant to a freelance
10 contract while completing a two-week end-of-employment notice period at Mattel,
11 MGA notes that any such contribution was far outweighed by the original and/or
12 creative input of other artists working for or on behalf of MGA on the Bratz concept,
13 which was owned by MGA as a consequence of the October 4, 2000 transfer of
14 rights from Bryant to MGA.

15      With respect to Bratz two-dimensional character art utilized on, for
16 example, Bratz product packaging and licensed products, while the initial Bratz
17 character art was derivative of Bryant's initial sketches from 1998, by no later than
18 August, 2003, the Bratz character art had changed sufficiently such that it was no
19 longer derivative of Bryant's sketches.

20      The following persons have knowledge of facts and circumstances
21 surrounding the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica
22 Marlow; Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca
23 Harris; Tina Tomiyama; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong;
24 Lily Martinez; Ei Akiko Fong; John Steven Baulch; Aileen Storer; Debora
25 Middleton; Ronan Spelman; Charlotte Broussard.

26      The following documents may be relevant to the foregoing: all
27 DOCUMENTS that refer to or evidence the work performed by MGA employees
28 and freelancers toward the reduction to practice of the first generation of Bratz dolls

19

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT __7__

EXHIBIT __109__

PAGE __169__

PAGE __1728__

Case 2:04-cv-09049-DOC-RNB  Document 4709-4  Filed 01/19/09  Page 45 of 64  Page ID
#:139634
Case 2:04-cv-09049-SGL-RNB    Document 3848-26    Filed 05/28/2008    Page 37 of 91

1  during the period after October 20, 2000 through June 1, 2001, including but not
2  limited to: Carter Bryant's drawings; documents and tangible things produced by
3  Margaret Leahy; tangible things produced by Veronica Marlow; invoices submitted
4  by employees and/or freelance artists working for MGA for work performed on the
5  Bratz project; all DOCUMENTS that constitute samples of the following items in the
6  public domain in 1998: Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and
7  Barbie dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little
8  Miss No Name; Hello Kitty; anime, including, e.g., Sailor Moon; manga; Coca-Cola
9  advertisements; Steve Madden advertisements; and Paris Blues advertisements;
10  Bratz prototypes, samples, sculpts, and rotocasts found in Hong Kong and produced
11  to Mattel. The documents evidencing this work are too numerous to identify
12  individually.

13  **THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

14          MGA incorporates by reference its General Response and General
15  Objections above, as though fully set forth herein and specifically incorporates
16  General Objection No. 7 (regarding Definitions), including without limitation
17  MGA's objection to the definition of the terms BASED ON, BRATZ DOLLS,
18  BRATZ, DESIGN, IDENTIFY and REFER OR RELATE TO, and further objects to
19  this interrogatory on the ground that it is overbroad, unduly burdensome, vague and
20  ambiguous.

21          MGA also objects to this interrogatory to the extent it seeks information
22  that is not subject to disclosure under any applicable privilege, doctrine or immunity,
23  including without limitation the attorney-client privilege, the work product doctrine,
24  the right of privacy, and all other privileges recognized under the constitutional,
25  statutory or decisional law of the United States of America, the State of California or
26  any other applicable jurisdiction. MGA objects to this interrogatory to the extent it
27  calls for a legal conclusion.

28          MGA further objects to this interrogatory on the ground that it is

20

EXHIBIT _____ 7

PAGE _____ 170

EXHIBIT _____ 109

PAGE _____ 1729

Case 2:04-cv-09049-DOC-RNB   Document 4709-4   Filed 01/19/09   Page 46 of 64   Page ID
#:139635
Case 2:04-cv-09049-SGL-RNB   Document 3848-26   Filed 05/28/2008   Page 38 of 91

1 | premature because the invention, creation, conception, or reduction to practice of
2 | Bratz (and other legal concepts that may be relevant) will be the subject of expert
3 | testimony at trial.  MGA objects to this interrogatory to the extent it seeks to limit the
4 | expert testimony that MGA may seek to introduce at trial.  MGA will identify its
5 | experts and make related disclosures in accordance with the Court's orders and
6 | applicable rules.

7 |          MGA further objects to this interrogatory on the grounds that it seeks
8 | information that is not relevant to the claims or defenses of any party to the action
9 | and is not reasonably calculated to lead to the discovery of admissible evidence
10 | because the INVENTIONS AGREEMENT executed by Carter Bryant in or around
11 | January 1999, purports to state that any inventions conceived or reduced to practice
12 | by him during his employment with Mattel would be owned by Mattel.  The
13 | references to the conception and reduction to practice of an invention are terms of art
14 | in patent law.  Accordingly, copyright law principles of substantial similarity,
15 | copying, and derivative works are not relevant to the INVENTIONS AGREEMENT
16 | which, by its terms, involves only principles of patent law.

17 |          MGA further objects on the ground that this interrogatory is an
18 | overbroad and unduly burdensome contention interrogatory to the extent it asks for
19 | "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*
20 | *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
21 | requests seeking "all facts, documents, and witnesses that support the denial of a
22 | statement or allegation of fact" because the "universe of potentially responsive
23 | information is almost endless").

24 |          MGA further objects to the extent that this interrogatory seeks
25 | information that is outside MGA's knowledge and is not in MGA's possession,
26 | custody, or control.  In particular, MGA objects to this interrogatory to the extent
27 | that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS ... and *all*
28 | DOCUMENTS" (emphasis added).

Case 2:04-cv-09049-DOC-RNB  Document 4709-4  Filed 01/19/09  Page 47 of 64  Page ID
#:139636
Case 2:04-cv-09049-SGL-RNB  Document 3848-26  Filed 05/28/2008  Page 39 of 91

1    MGA objects to the interrogatory on the ground that it is compound and
2  therefore Mattel has propounded more than 50 interrogatories, including discrete
3  subparts, in violation of Judge Larson's order of February 22, 2007, that
4  "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-
5  SGL and CV 05-02727]." In its supplemental response to this interrogatory, MGA
6  did not refuse to answer the interrogatory based on the 50-interrogatory limit, but
7  rather refused to use the compound and misleading defined terms that permeate
8  Mattel's interrogatories. The interrogatories attempt to use misleading and unfair
9  definitions to create jury confusion or to circumvent the 50-interrogatory limit. For
10  example, Mattel's definition of "BRATZ INVENTION" contains ten separate
11  component parts ("representation, idea, concept, work, process, procedure, plan,
12  improvement, DESIGN or other development"). The incorporation of the defined
13  term "DESIGN" adds at least another 21 elements ("all works, designs, artwork,
14  sketches, drawings, illustrations, representations, depictions, blueprints, schematics,
15  diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to
16  practice, developments, inventions and/or improvements"). The inclusion of these
17  disparate concepts in the term "invention" improperly conflates distinct issues of
18  patent law, copyright protection, trade secret law and the common law protecting
19  original ideas, many of which have no place in the ordinary usage of the term
20  "invention." In its previous supplemental responses, MGA used the word
21  "invention" in its ordinary usage, and does so again in these third supplemental
22  responses. During the meet and confer process regarding MGA's supplemental
23  responses, Mattel's counsel objected to MGA's responses, and argued that MGA
24  must either use Mattel's distorted definitions or respond to each of the many
25  component parts of Mattel's defined terms. As was made clear during the meet and
26  confer process and as more fully set forth in MGA's Opposition to Mattel, Inc.'s
27  Motion To Compel Responses To Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34,
28  35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 47, 48, 49 and 50) By The MGA Parties,

22

Case 2:04-cv-09049-DOC-RNB  Document 4709-4  Filed 01/19/09  Page 48 of 64  Page ID
#:139637
Case 2:04-cv-09049-SGL-RNB  Document 3848-26  Filed 05/28/2008  Page 40 of 91

1  MGA objects to this interrogatory as compound and a violation of the 50-

2  interrogatory limit to the extent that Mattel continues to assert that MGA is required

3  to respond to each component part of Mattel's defined terms.

4  Subject to and without waiving the foregoing objections, MGA provides

5  its Third Supplemental Response as follows:

6  MGA contends that, applying the generally-accepted definitions of the

7  words "based on" and "design", neither the first generation of Bratz dolls nor any

8  subsequent Bratz products were based on any Carter Bryant designs created on or

9  before October 19, 2000. MGA further contends that even if MGA applies Mattel's

10  misleading definitions of "BASED ON" and "DESIGN," neither the first generation

11  of Bratz dolls nor any of the subsequent Bratz products were "BASED ON" any

12  Carter Bryant "DESIGNS" created on or before October 19, 2000. MGA further

13  contends that the first generation of Bratz dolls (and subsequent Bratz products) were

14  "conceived of" and "reduced to practice" for purposes of design patent law, and first

15  expressed in a tangible medium for purposes of copyright law, after October 20,

16  2000, as a result of original, creative efforts of artists employed by, or working on

17  behalf of, MGA. All first-generation Bratz dolls and subsequent Bratz products are

18  not substantially similar to, are not a copy of, and are not derivative of, any Carter

19  Bryant designs completed on or before October 19, 2000.

20  To the extent that Mattel argues that the shapes of characters in Carter

21  Bryant's drawings that he called "Bratz" (including, but not limited to, those

22  drawings identified by Carter Bryant in Exhibit 5 of his deposition as being sketched

23  in August 1998) represented a conception of what could have later become a three-

24  dimensional object that could have been the subject of a design patent, MGA

25  contends as follows:

26  Carter Bryant was not a sculptor, and any effort to translate his pre-1999

27  two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt

28  would have produced shapes that were different from the actual shape of the final

23

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____ 109

PAGE _____ 1732

EXHIBIT _____ 7

PAGE _____ 173

Case 2:04-cv-09049-DOC-RNB   Document 4709-4   Filed 01/19/09   Page 49 of 64   Page ID
#:139638
Case 2:04-cv-09049-SGL-RNB   Document 3848-26   Filed 05/28/2008   Page 41 of 91

1  three-dimensional Bratz sculpt used in manufacturing the first generation of Bratz
2  dolls released on the market by MGA in or about June 2001. Also, different sculpt
3  artists would have created different sculpts – Bryant's two-dimensional drawings did
4  not dictate a specific three-dimensional object. The shapes of the characters in
5  Bryant's drawings bear little resemblance to the final shape of the actual Bratz dolls.
6  Differences between the drawings and the final shape of the actual Bratz dolls
7  include, but are not limited to, the following:  posture; hip-to-waist ratio; feet size
8  (dolls' feet are not as exaggerated as characters' feet in the drawings); head size
9  (dolls' heads are proportionally smaller than characters' heads in the drawings); eyes
10  (dolls' eyes are more open than characters' eyes in the drawings); removable hair (a
11  feature present only in the drawings); other facial features including lips, cheek
12  bones, chin and forehead.

13          Moreover, the final physical shape of the first generation of Bratz dolls,
14  released on the market by MGA in or about June 2001, was conceived of by
15  Margaret Leahy, working on behalf of MGA, along with other MGA agents and
16  employees such as employees in Hong Kong and Mercedeh Ward.  The conception
17  of this physical shape was completed on or after October 20, 2000, and reduced to
18  practice no earlier than December 19, 2000.

19          Copyright infringement analysis under Ninth Circuit law requires that
20  "objective" or "extrinsic" elements that are "scènes-à-faire" in the public domain, or
21  public domain materials that Bryant was aware of and that directly or indirectly
22  influenced him in developing his concept for a new line of fashion dolls, be filtered
23  out of the subject works, and, thereafter, that the remaining "subjective" or
24  "intrinsic" elements be evaluated for substantial similarity.  Carter Bryant's 1998
25  drawings contain many elements that must be filtered out, including but not limited
26  to the oversized head, eyes, lips, and feet of the figures in Bryant's drawings and the
27  stock model and/or doll poses.  A non-exhaustive list of examples of prior existing
28  works that incorporate such elements includes the following:  sources of inspiration

24

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____ 109

EXHIBIT _____ 7

PAGE _____ 1733

EXHIBIT _____

PAGE _____ 174

1 | specifically identified by Carter Bryant, including Steve Madden advertisements and
2 | Paris Blues advertisements, which were highly visible in 1998 (various Steve
3 | Madden advertisements also served as a key inspiration for Mattel's own "Toon
4 | Teens" dolls); Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie
5 | dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No
6 | Name; Hello Kitty; Coca-Cola advertisements; anime, including, <u>e.g.</u>, Sailor Moon;
7 | and manga.

8 |      Once all of the materials that directly or indirectly influenced Bryant
9 | and all "scène-à-faire" features are eliminated from the analysis, the first generation
10 | Bratz dolls (and all subsequent Bratz products) are readily seen as not substantially
11 | similar to Carter Bryant's 1998 drawings. The differences between the drawings and
12 | the first generation Bratz dolls include, but are not limited to, the following:

13 |     &bull; Posture
14 |     &bull; Hip-to-waist ratio
15 |     &bull; Feet size (dolls' feet are not as exaggerated as characters' feet in
16 |       the drawings)
17 |     &bull; Head size (dolls' heads are proportionally smaller than characters'
18 |       heads in the drawings)
19 |     &bull; Eyes (dolls' eyes are more open than characters' eyes in the
20 |       drawings)
21 |     &bull; Eye to lips ratio (lips of characters in drawings are proportionally
22 |       larger relative to eyes than are lips of dolls)
23 |     &bull; Hair (characters in drawings have much edgier hairstyles than the
24 |       dolls do; unlike the drawings, the dolls' hair is not removable)
25 |     &bull; Shapes of eyes and eye design
26 |     &bull; Shapes of lips
27 |     &bull; Overall look and feel (dolls are overall softer, less extreme than
28 |       drawings)

EXHIBIT ___109___

PAGE ___1734___

EXHIBIT ___7___

PAGE ___175___

1    That the dolls and the drawings are not substantially similar also is
2  consistent with the fact that Carter Bryant was not a sculptor, and, as discussed
3  above, any effort to translate his pre-1999 two-dimensional flat art into a three-
4  dimensional form for use as a fashion doll sculpt would have produced shapes that
5  were different from the actual shape of the final three-dimensional Bratz sculpt used
6  in manufacturing the first generation of Bratz dolls released on the market by MGA
7  in or about June 2001. Indeed, a team of highly-skilled artists (including several that
8  had been used by Mattel and other toy companies in the past) spent months
9  developing the Bratz first-generation dolls—valuable time and original creative
10 effort that would not have been necessary if said first-generation Bratz dolls were
11 simply a copy of Bryant's designs.

12    The absence of substantial similarity is further shown in the close
13 correlation between Bryant's drawings and the inspiration he points to, including but
14 not limited to the Steve Madden and Paris Blues advertisements in the August 1998
15 issue of *Seventeen Magazine*, as well as other advertisements in that issue, such as
16 the Coca Cola advertisement.

17    Mattel's own My Scene Barbie line of dolls provides further proof that
18 the first generation of Bratz dolls was not substantially similar to the Bryant
19 drawings, in that (i) Mattel asserts that the My Scene Barbie dolls are independent
20 works of art, not copied from Bratz, yet (ii) said dolls are far closer in appearance to
21 Bratz dolls than are Bryant's two-dimensional drawings.

22    Additional details regarding such differences will be the subject of
23 expert disclosures and will be provided in accordance with the Court's schedule for
24 expert discovery.

25    With respect to any Carter Bryant contribution to the first generation
26 Bratz product after October 4, 2000 and before October 21, 2000, i.e., during a
27 period that he was performing such services for MGA pursuant to a freelance
28 contract while completing a two-week end-of-employment notice period at Mattel,

EXHIBIT _____ 109
PAGE _____ 1735

EXHIBIT _____ 7
PAGE _____ 176

Case 2:04-cv-09049-DOC-RNB   Document 4709-4   Filed 01/19/09   Page 52 of 64   Page ID
#:139641
Case 2:04-cv-09049-SGL-RNB   Document 3848-26   Filed 05/28/2008   Page 44 of 91

1  MGA notes that any such contribution was far outweighed by the original and/or
2  creative input of other artists working for or on behalf of MGA on the Bratz concept,
3  which was owned by MGA as a consequence of the October 4, 2000 transfer of
4  rights from Bryant to MGA.

5          With respect to Bratz two-dimensional character art utilized on, for
6  example, Bratz product packaging and licensed products, while the initial Bratz
7  character art was derivative of Bryant's initial sketches from 1998, by no later than
8  August 2003, the Bratz character art had changed sufficiently such that it was no
9  longer derivative of Bryant's sketches.

10         The following persons have knowledge of facts and circumstances
11 surrounding the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica
12 Marlow; Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca
13 Harris; Tina Tomiyama; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong;
14 Lily Martinez; Ei Akiko Fong; John Steven Baulch; Aileen Storer; Debora
15 Middleton; Ronan Spelman; Charlotte Broussard; Cassidy Park; Katherine Dumas;
16 Michelle McShane; Ivy Ross.

17         The following documents may be relevant to the foregoing: all
18 DOCUMENTS that refer to or evidence the work performed by MGA employees
19 and freelancers toward the reduction to practice of the first generation of Bratz dolls
20 during the period after October 20, 2000 through June 1, 2001, including but not
21 limited to: Carter Bryant's drawings; documents and tangible things produced by
22 Margaret Leahy; tangible things produced by Veronica Marlow; invoices submitted
23 by employees and/or freelance artists working for MGA for work performed on the
24 Bratz project; all DOCUMENTS that constitute samples of the following items in the
25 public domain in 1998: Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and
26 Barbie dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little
27 Miss No Name; Hello Kitty; anime, including, e.g., Sailor Moon; manga; Coca-Cola
28 advertisements; Steve Madden advertisements; and Paris Blues advertisements;

27

EXHIBIT _____ 109
EXHIBIT _____ 7    PAGE _____ 1736
PAGE _____ 177

Case 2:04-cv-09049-DOC-RNB  Document 4709-4  Filed 01/19/09  Page 53 of 64  Page ID
#:139642
Case 2:04-cv-09049-SGL-RNB  Document 3848-26  Filed 05/28/2008  Page 45 of 91

1  Bratz prototypes, samples, sculpts, and rotocasts found in Hong Kong and produced
2  to Mattel. The documents evidencing this work are too numerous to identify
3  individually.

4  **INTERROGATORY NO. 43:**

5          For each concept, design, product, product packaging or other matter
6  that YOU contend MATTEL copied or infringed, including but not limited to those
7  identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re
8  Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any
9  Supplemental Responses to such Interrogatory), state the date that each such concept,
10  design, product, product packaging or other matter was conceived, and IDENTIFY
11  all PERSONS with knowledge of, and all DOCUMENTS that REFER OR RELATE
12  TO, the foregoing.

13  **RESPONSE TO INTERROGATORY NO. 43:**

14          MGA incorporates by reference its General Response and General
15  Objections above, as though fully set forth herein and specifically incorporates
16  General Objection No. 7 (regarding Definitions), including without limitation its
17  objections to the terms IDENTIFY and REFER OR RELATE.

18          MGA also objects to this interrogatory to the extent it seeks information
19  that is not subject to disclosure under any applicable privilege, doctrine or immunity,
20  including without limitation the attorney-client privilege, the work product doctrine,
21  the right of privacy, and all other privileges recognized under the constitutional,
22  statutory or decisional law of the United States of America, the State of California or
23  any other applicable jurisdiction. MGA further objects to the interrogatory to the
24  extent it calls for a legal conclusion.

25          MGA also objects to this interrogatory on the ground that it is premature
26  because the invention, creation, conception, or reduction to practice of Bratz (and
27  related issues) will be the subject of expert testimony at trial. MGA objects to this
28  interrogatory to the extent it seeks to limit the expert testimony that MGA may seek

28
MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____ 109
EXHIBIT _____ 7          PAGE _____ 1737
PAGE _____ 178

Case 2:04-cv-09049-DOC-RNB   Document 4709-4   Filed 01/19/09   Page 54 of 64   Page ID
#:139643
Case 2:04-cv-09049-SGL-RNB   Document 3848-26   Filed 05/28/2008   Page 46 of 91

1  to introduce at trial. MGA will identify its experts and make related disclosures in
2  accordance with the Court's orders and applicable rules.

3        MGA further objects to this interrogatory to the extent that it seeks
4  information that is not relevant to the claims or defenses of any party to this action
5  and is not reasonably calculated to lead to the discovery of admissible evidence; the
6  term "conceived" is not a legal term of art that is relevant to MGA's affirmative
7  claims for false designation of origin, affiliation, association or sponsorship, unfair
8  competition, dilution, and unjust enrichment.

9        MGA further objects to the extent that this interrogatory seeks
10 information that is outside MGA's knowledge and is not in MGA's possession,
11 custody, or control. In particular, MGA objects to this interrogatory to the extent
12 that it requests that MGA "IDENTIFY *all* PERSONS...and *all* DOCUMENTS"
13 (emphasis added).

14       MGA further objects to this interrogatory because Mattel has
15 propounded more than 50 interrogatories. Under Judge Larson's order of February
16 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
17 04049-SGL and CV 05-02727]."

18       Subject to and without waiving the foregoing objections, MGA
19 responds as follows: MGA is willing to meet and confer with Mattel regarding this
20 interrogatory and the obligation of Mattel to supplement its responses to MGA's First
21 Set of Interrogatories.

22 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 43:**

23       MGA incorporates by reference its General Response and General
24 Objections above, as though fully set forth herein and specifically incorporates
25 General Objection No. 7 (regarding Definitions), including without limitation its
26 objections to the terms IDENTIFY and REFER OR RELATE.

27       MGA also objects to this interrogatory to the extent it seeks information
28 that is not subject to disclosure under any applicable privilege, doctrine or immunity,

29

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT    7

PAGE    179

EXHIBIT    109

PAGE    1738

Case 2:04-cv-09049-DOC-RNB  Document 4709-4  Filed 01/19/09  Page 55 of 64  Page ID
#:139644
Case 2:04-cv-09049-SGL-RNB  Document 3848-26  Filed 05/28/2008  Page 47 of 91

1 || including without limitation the attorney-client privilege, the work product doctrine,

2 || the right of privacy, and all other privileges recognized under the constitutional,

3 || statutory or decisional law of the United States of America, the State of California or

4 || any other applicable jurisdiction. MGA further objects to the interrogatory to the

5 || extent it calls for a legal conclusion.

6 || MGA also objects to this interrogatory on the ground that it is premature

7 || because the invention, creation, conception, or reduction to practice of Bratz (and

8 || related issues) will be the subject of expert testimony at trial. MGA objects to this

9 || interrogatory to the extent it seeks to limit the expert testimony that MGA may seek

10 || to introduce at trial. MGA will identify its experts and make related disclosures in

11 || accordance with the Court's orders and applicable rules.

12 || MGA further objects to this interrogatory to the extent that it seeks

13 || information that is not relevant to the claims or defenses of any party to this action

14 || and is not reasonably calculated to lead to the discovery of admissible evidence; the

15 || term "conceived" is not a legal term of art that is relevant to MGA's affirmative

16 || claims for false designation of origin, affiliation, association or sponsorship, unfair

17 || competition, dilution, and unjust enrichment.

18 || MGA further objects to the extent that this interrogatory seeks

19 || information that is outside MGA's knowledge and is not in MGA's possession,

20 || custody, or control. In particular, MGA objects to this interrogatory to the extent

21 || that it requests that MGA "IDENTIFY *all* PERSONS...and *all* DOCUMENTS"

22 || (emphasis added).

23 || Subject to and without waiving the foregoing objections, MGA

24 || responds as follows:

25 || MGA incorporates by reference its response to Interrogatory No. 3 of

26 || Mattel's First Set of Interrogatories re Claims of Unfair Competition (including

27 || supplemental responses thereto) as though fully set forth herein. MGA notes that, in

28 || general, at MGA, product development is completed 7-8 months before the first

30

Case 2:04-cv-09049-DOC-RNB   Document 4709-4   Filed 01/19/09   Page 56 of 64   Page ID
#:139645
Case 2:04-cv-09049-SGL-RNB   Document 3848-26   Filed 05/28/2008   Page 48 of 91

1 invoice date, although that time period could be reduced in certain situations to 5-6
2 months.

3 **INTERROGATORY NO. 44:**

4      For each concept, design, product, product packaging or other matter
5 that YOU contend MATTEL copied or infringed, including but not limited to those
6 identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re
7 Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any
8 Supplemental Responses to such Interrogatory), state the date that each such concept,
9 design, product, product packaging or other matter was first fixed in any tangible
10 medium of expression (if ever), and IDENTIFY all PERSONS with knowledge of,
11 and all DOCUMENTS that REFER OR RELATE TO, the foregoing.

12 **RESPONSE TO INTERROGATORY NO. 44:**

13      MGA incorporates by reference its General Response and General
14 Objections above, as though fully set forth herein and specifically incorporates
15 General Objection No. 7 (regarding Definitions), including without limitation its
16 objections to the terms IDENTIFY and REFER OR RELATE. MGA also objects to
17 this interrogatory to the extent it seeks information that is not subject to disclosure
18 under any applicable privilege, doctrine or immunity, including without limitation
19 the attorney-client privilege, the work product doctrine, the right of privacy, and all
20 other privileges recognized under the constitutional, statutory or decisional law of
21 the United States of America, the State of California or any other applicable
22 jurisdiction. MGA also objects to this interrogatory to the extent that it calls for a
23 legal conclusion.

24      MGA also objects to this interrogatory on the ground that it is premature
25 because the invention, creation, conception, or reduction to practice of Bratz (and
26 related issues) will be the subject of expert testimony at trial. MGA objects to this
27 interrogatory to the extent it seeks to limit the expert testimony that MGA may seek
28 to introduce at trial. MGA will identify its experts and make related disclosures in

31

EXHIBIT _____ 7

EXHIBIT _____ 109

PAGE _____ 181

PAGE _____ 1740

Case 2:04-cv-09049-DOC-RNB  Document 4709-4  Filed 01/19/09  Page 57 of 64  Page ID
#:139646
Case 2:04-cv-09049-SGL-RNB  Document 3848-26  Filed 05/28/2008  Page 49 of 91

1  accordance with the Court's orders and applicable rules.

2       MGA further objects to this interrogatory to the extent that it seeks
3  information that is not relevant to the claims or defenses of any party to this action
4  and not reasonably calculated to lead to the discovery of admissible evidence
5  because the phrase "'fixed in a tangible medium of expression" is a legal term of art
6  that does not have relevance to MGA's affirmative claims, which are for false
7  designation of origin, affiliation, association or sponsorship, unfair competition,
8  dilution, and unjust enrichment.

9       MGA further objects to the extent that this interrogatory seeks
10  information that is outside MGA's knowledge and is not in MGA's possession,
11  custody, or control. In particular, MGA objects to this interrogatory to the extent
12  that it requests that MGA "IDENTIFY all PERSONS...and all DOCUMENTS"
13  (emphasis added).

14       MGA further objects to this interrogatory because Mattel has
15  propounded more than 50 interrogatories. Under Judge Larson's order of February
16  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
17  04049-SGL and CV 05-02727]."

18       Subject to and without waiving the foregoing objections, MGA
19  responds as follows: MGA is willing to meet and confer with Mattel regarding this
20  interrogatory and the obligation of Mattel to supplement its responses to MGA's First
21  Set of Interrogatories.

22  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 44:**

23       MGA incorporates by reference its General Response and General
24  Objections above, as though fully set forth herein and specifically incorporates
25  General Objection No. 7 (regarding Definitions), including without limitation its
26  objections to the terms IDENTIFY and REFER OR RELATE. MGA also objects to
27  this interrogatory to the extent it seeks information that is not subject to disclosure
28  under any applicable privilege, doctrine or immunity, including without limitation

32
MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____ 7
PAGE _____ 182

EXHIBIT _____ 109
PAGE _____ 1741

Case 2:04-cv-09049-DOC-RNB   Document 4709-4   Filed 01/19/09   Page 58 of 64   Page ID
#:139647
Case 2:04-cv-09049-SGL-RNB   Document 3848-26   Filed 05/28/2008   Page 50 of 91

1   the attorney-client privilege, the work product doctrine, the right of privacy, and all
2   other privileges recognized under the constitutional, statutory or decisional law of
3   the United States of America, the State of California or any other applicable
4   jurisdiction. MGA also objects to this interrogatory to the extent that it calls for a
5   legal conclusion.

6          MGA also objects to this interrogatory on the ground that it is premature
7   because the invention, creation, conception, or reduction to practice of Bratz (and
8   related issues) will be the subject of expert testimony at trial. MGA objects to this
9   interrogatory to the extent it seeks to limit the expert testimony that MGA may seek
10  to introduce at trial. MGA will identify its experts and make related disclosures in
11  accordance with the Court's orders and applicable rules.

12         MGA further objects to this interrogatory to the extent that it seeks
13  information that is not relevant to the claims or defenses of any party to this action
14  and not reasonably calculated to lead to the discovery of admissible evidence
15  because the phrase "fixed in a tangible medium of expression" is a legal term of art
16  that does not have relevance to MGA's affirmative claims, which are for false
17  designation of origin, affiliation, association or sponsorship, unfair competition,
18  dilution, and unjust enrichment.

19         MGA further objects to the extent that this interrogatory seeks
20  information that is outside MGA's knowledge and is not in MGA's possession,
21  custody, or control. In particular, MGA objects to this interrogatory to the extent
22  that it requests that MGA "IDENTIFY all PERSONS...and all DOCUMENTS"
23  (emphasis added).

24  ///
25  ///
26  ///
27  ///
28  ///

33

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____ 109

PAGE _____ 1742

EXHIBIT _____ 7

PAGE _____ 183

1          Subject to and without waiving the foregoing objections, MGA

2   responds as follows:

3          MGA incorporates by reference its responses to Interrogatory No. 3 of

4   Mattel's First Set of Interrogatories re Claims of Unfair Competition (including

5   supplemental responses thereto) and Interrogatory No. 43 (including supplemental

6   responses thereto) as though fully set forth herein.

7

8   DATED:  January 28, 2008

9

10                         SKADDEN, ARPS, SLATE, MEAGHER &
                           FLOM LLP

11

12                         By:

13                                   Timothy A. Miller
                           Attorneys for Counter-Defendants, MGA
                           ENTERTAINMENT, INC., ISAAC LARIAN,

14                         MGA ENTERTAINMENT (HK) LTD., and
                           MGAE de MEXICO S.R.L.de C.V.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT    7

PAGE    184

EXHIBIT    109

PAGE    1743

# EXHIBIT 8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.     CV 04-09049 SGL(RNBx)                          Date: June 2, 2008
Title:       CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC. v. CARTER BRYANT
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC. v. MATTEL, INC.
==================================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes
          Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:        ATTORNEYS PRESENT FOR MATTEL:

None Present                                None Present


ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:   **FURTHER AND FINAL ORDER RE STATUTE OF LIMITATIONS DEFENSE
               (IN CHAMBERS)**

        In an order dated May 27, 2008, the Court made several rulings regarding the timeliness of
Mattel's claims ("SOL Order"). At that time, the Court invited further, limited briefing from the
parties regarding "what further conclusions regarding the timeliness of each claim should be
drawn" in light of the Court's rulings. The parties filed further briefing in conformity with the Court's
Order, which the Court has reviewed.

        As a result of the briefing, the Court discusses the following issues: (1) Clarification of the
Court's Ruling Regarding the August 2002 Anonymous Letter; (2) Clarification of the Court's
Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with
Contractual Relations and Conversion; and (3) Accrual of Mattel's Copyright Claim.

MINUTES FORM 90                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                          1

EXHIBIT ___**8**___

PAGE _____**185**___

## I. Clarification of the Court's Ruling Regarding the August 2002 Anonymous Letter

The parties differ on their interpretation of the Court's holding as to the earliest accrual date of Mattel's claims. Although the Court's SOL Order, read as a whole, is most reasonably interpreted as clarified herein, MGA, quite understandably, interprets the Court's Order in a manner more favorable to its position regarding the statute of limitations defense. Accordingly, the Court clarifies its Order as set forth below.

In a key paragraph of the SOL Order, the Court articulates the four possible accrual dates of those state-law claims, asserted by Mattel against Carter Bryant, that are subject to the discovery rule:[1]

> MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue. Any of the following could be the date upon which MGA claims against Carter Bryant accrued: The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.

SOL Order at 7-8. This portion of the Court's Order implicitly rejects MGA's contention that the August, 2002, letter could give rise to Mattel's claims against Bryant.

As set forth in the SOL Order, a claim accrues where a plaintiff has ***knowledge*** of at least one of the three generic elements of wrongdoing, causation, and harm. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807 (Cal. 2005) (citation omitted). The SOL Order did not explicitly state, as the Court does now, that there is no evidence that Mattel had any ***knowledge*** of any one of the three generic elements of its claims, and thus no claim accrued, prior to the earliest date identified by the Court, which is July 18, 2003.

MGA's argument that Mattel's claims against Carter Bryant could have accrued in August 2002, is based on a statement made by the Court's regarding when the claims against MGA Entertainment, Inc., accrued:

> The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63

---

[1]    This portion of the Court's Order does not apply to Mattel's claims for intentional interference with contractual relations and conversion, which are addressed infra, in Section II.

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk: jh

EXHIBIT    8

PAGE    186

(alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

SOL Order at 9. Mattel's understanding of this part of the SOL Order, that the claims against MGA Entertainment, Inc., accrued on the same date as did the claims against Carter Bryant, is correct. See Mattel Supp. Brief at 6 n.4.

## II. Clarification of the Court's Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with Contractual Relations and Conversion

The Court's statute of limitations analysis regarding Mattel's claims for intentional interference with contractual relations and conversion was rather inartfully articulated. The Court's ruling was meant to convey that although the remainder of the state-law claims asserted by Mattel are subject to the discovery rule, these two claims are not. Therefore, the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to Mattel's claims for intentional interference with contractual relations and conversion. Instead, these claims, having arisen around the time Bryant resigned from Mattel, are time-barred unless the relevant limitations periods have been extended by a period of fraudulent concealment.

Whether a period of fraudulent concealment exists, as well as the duration of any such period, cannot be determined on the undisputed record and are therefore questions of fact for the jury.

## III. Accrual of Copyright Claim

The supplemental briefing brings into focus an issue not addressed by the SOL Order:  The accrual date of Mattel's copyright claim.

MGA refers to two arguments it made in its partial summary judgment papers regarding the statute of limitations and Mattel's copyright claim.  First, MGA argues that the date Mattel registered its copyrights impacts upon the Court's application of the relation-back doctrine; second, MGA argues that the "rolling" statute of limitations regarding copyright claims is inapplicable when the gravamen of the claim is a claim of ownership rather than infringement.

Mattel did not address this issue in its supplemental briefing, which was filed concurrently with MGA's supplemental briefing.  In its partial summary judgment papers, however, Mattel had responded to these arguments.

In reviewing the supplemental briefs, as well as the relevant portions of the partial summary judgment papers, and reflecting upon the hearings held on this matter, the Court concludes that it need not resolve MGA's two arguments.

In the SOL Order, the Court's analysis equated the accrual of Mattel's copyright claim with

3

Initials of Deputy Clerk:  jh

EXHIBIT    **8**

PAGE    **187**

the accrual with certain of Mattel's state-law claims; as explained below, this analysis overlooks important concepts of copyright law.

As noted by the Court in its order regarding summary judgment, in order to establish copyright infringement, a plaintiff must establish three elements: (1) ownership of a valid copyright, (2) the defendant's access to the original, and (3) substantial similarity between the copyrighted work and the allegedly infringing work. Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003). Here, although the date Mattel received details regarding the City World litigation is in dispute, it is uncontroverted that Mattel did not receive copies of the Bratz drawings prior to November 23, 2003. Without the drawings, Mattel could not assess the substantial similarity factor to determine whether it could assert a claim that the Bratz dolls infringed Mattel's rights to them. Accordingly, on the undisputed record, the Court concludes that Mattel's copyright claim did not accrue prior to November 23, 2003.

Therefore, when first asserted on November 20, 2006, Mattel's copyright claim was timely in its own right, and the Court need not resolve MGA's two arguments regarding relation back and the rolling statute of limitations.[2]

**IT IS SO ORDERED.**

---

[2] In accordance with the foregoing, the Court VACATES the following language from the SOL Order:

> The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein. See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances."). Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

SOL Order at 8.

MINUTES FORM 90                                          Initials of Deputy Clerk: jh
CIVIL – GEN                                    4

EXHIBIT ___8___

PAGE ___188___