QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443 3000
Facsimile: (213) 443 3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**NOTICE OF RENEWED MOTION AND RENEWED MOTION FOR ISSUANCE OF LETTER OF REQUEST**<br><br>[Declaration of Jon Corey; Notice of Lodging of Foreign Authorities; and [Proposed] Order Filed Concurrently]<br><br>Hearing Date: March 30, 2009<br>Time: 10:00 a.m.<br>Courtroom: 1<br><br>**Phase 2**<br>Discovery Cut-off: Not Set<br>Pre-trial Conference: Not Set<br>Trial Date Not Set |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that on March 30, 2009, at 10:00 a.m., or as soon
3  thereafter as the matter may be heard, in the courtroom of Honorable Stephen G.
4  Larson, located at 3470 Twelfth Street, Riverside, California, 92501, Mattel, Inc.
5  will, and hereby does, move the Court, pursuant to Federal Rule of Civil Procedure
6  28, for the issuance of a Letter of Request for International Judicial Assistance:
7  (1) to compel the oral deposition and production of documents by Janine Brisbois in
8  her personal capacity in Ontario, Canada; and (2) to compel the oral deposition of
9  MGA Entertainment Canada Company's ("MGA Canada") person most
10  knowledgeable and the production of documents by MGA Canada in Ontario,
11  Canada.  A form of the Letter of Request for International Judicial Assistance for
12  Janine Brisbois and MGA Canada are attached hereto as Exhibit 1.  The documents
13  requested by Mattel are set forth in Schedules B and D to the attached Letter of
14  Request.  The topics of oral testimony sought from Janine Brisbois and MGA
15  Canada's designee or designees are set forth in Schedules C and E, respectively.

16  Mattel makes this motion pursuant to Federal Rule of Civil Procedure 28 on
17  the grounds that Ms. Brisbois and MGA Canada have evidence in the form of
18  relevant testimony and documents critical to the subject matter of these consolidated
19  cases and specifically to Mattel's Counterclaims.  MGA Canada and Ms. Brisbois,
20  through counsel for MGA Entertainment, Inc., the parent of MGA Canada, have
21  refused to provide to Mattel the requested evidence.  Accordingly, Mattel requests
22  that this Court issue the accompanying Letter of Request for International Judicial
23  Assistance to obtain the requested evidence.

24  This Motion is based on this Notice of Motion, the accompanying
25  Memorandum of Points and Authorities, the accompanying Declaration of Jon
26  Corey, the Notice of Lodging, all other pleadings and papers on file in this action,
27  any matters of which this Court may take judicial notice, and such further evidence
28  and argument as may be presented at or before the hearing on this matter.

07975/2768037.2

1    The parties met and conferred on the matters in this Motion on September 18,

2  2007 pursuant to Local Rule 7-3 and thereafter.

3

4  DATED:  January 26, 2009          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
5

6                                    By /s/ Jon Corey
7                                        Jon Corey
                                         Attorneys for Mattel, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ I

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 2

ARGUMENT ............................................................................................................ 4

I.   THE COURT HAS AUTHORITY TO ISSUE THE LETTER OF REQUEST ........................................................................................................ 4

II.  MATTEL'S REQUEST FOR INFORMATION IS CONSISTENT WITH CANADIAN LAW ......................................................................................... 8

    A.   The Topics Of Testimony And Categories Of Documents Sought From Ms. Brisbois and MGA Canada Are Both Relevant And Necessary To Mattel's Prosecution Of Its Counterclaims At Trial ....... 10

    B.   Mattel Has Unsuccessfully Attempted To Obtain The Testimony And Documentary Evidence To Prosecute Its Counterclaims ............. 12

    C.   The District Court's Order Granting Mattel's Letter Of Request Is Not Contrary To Canadian Public Policy Or Sovereignty ................... 13

    D.   The Documents Sought Are Specified With Reasonable Particularity And No Undue Burden Will Result ................................ 14

CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## Cases

Advance/Newhouse Partnership and Bright House Networks, LLC v.
Brighthoulse, Inc.,
   [2005] CarswellOnt 1371 (S.C.J.) ........................................................... 15

Campbell Estate v. Stenhouse,
   [1995] B.C.J. No. 2304................................................................................ 13

Friction Division Products Inc. v. E.I. Du Pont de Nemours & Co. (No. 2),
   [1986] 56 O.R. (2d) 722 (H.C.J.)................................................................. 9

Ontario Public Service Employees Union Pension Trust Fund v. Clark,
   (2006) 270 D.L.R. (4th) 429 (C.A.).................................................... 12, 15

Zingre v. The Queen et al.,
   1981 CanLII 32 at 401 (S.C.C.)................................................................. 13

## Statutes

Federal Rule of Civil Procedure 28(b)(1)................................................................ 4

Federal Rule of Civil Procedure 28(b)(2)................................................................ 4

## Other Authorities

Canada Evidence Act, R.S.C., ch. C-5, § 46 (1999) (Can.) .......................................... 9

Ontario Evidence Act, § 60(1)........................................................................... 9

R.S.O. 1990, c. E.23, s. 60 (1); 2000, c. 26, Sched. A, s. 7 (2). ................................... 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Mattel, Inc. ("Mattel") requests that this Court issue the accompanying Letter of Request for International Judicial Assistance for the purpose of taking the deposition under oath of Janine Brisbois and MGA Canada in Ontario, Canada. Mattel further requests the Letter of Request provide for the production of documents by Ms. Brisbois and MGA Canada.

There is ample justification for the issuance of the Letter of Request. Janine Brisbois, Mattel's former Director of Sales for the Girls Division in Canada, is a key figure in Mattel's counterclaims. Mattel's claims include allegations that Ms. Brisbois, while employed by Mattel, was responsible for Mattel's accounts at Toys 'R Us and Wal-Mart. Ms. Brisbois had access to and subsequently stole Mattel's trade secrets and/or otherwise confidential and propriety information and furnished this information to MGA. Ms. Brisbois also stole and provided to MGA approximately 45 Mattel documents ranging from Mattel's BARBIE television advertising strategy to product launch dates for new Mattel products. Ms. Brisbois and MGA subsequently used this information to MGA's benefit, including MGA's management of its Toys 'R Us and Wal-Mart accounts. Given Ms. Brisbois' and MGA's misconduct, the requested discovery is both highly relevant and essential to Mattel's counterclaims.

Further, as to MGA Canada, Mattel seeks discovery in the form of deposition testimony and documents regarding how MGA Canada used Mattel's trade secrets, confidential and proprietary information to the benefit of MGA Entertainment in the United States. This requires that Mattel understand, for example, the manner in which MGA Canada accesses, stores, reproduces, disseminates and/or reviews the documents and information stolen by Ms. Brisbois from Mattel. Accordingly, Mattel seeks documents regarding MGA Canada's use of Mattel's proprietary and confidential information and the deposition of MGA Canada on these topics.

1    The requested discovery is narrowly tailored.  Mattel seeks to depose
2  Ms. Brisbois on six topics and Mattel has requested 10 categories of documents be
3  produced by her.  Similarly, Mattel seeks to depose MGA Canada's person most
4  knowledgeable on two topics and Mattel has requested 10 categories of documents be
5  produced.  While this discovery, which may be otherwise unavailable to Mattel, will
6  not impose an undue burden upon Ms. Brisbois or MGA Canada, it is essential for
7  Mattel to prosecute its counterclaims against MGA.  The requested discovery is not
8  contrary to Canadian public policy, and it will not infringe upon Canadian sovereignty.
9  For these reasons, and for the reasons set forth below, the Court should issue the
10  proposed Letter of Request for Foreign Judicial Assistance.

11                          **Statement of Facts**

12    MGA Canada is a direct, fully-owned subsidiary of defendant MGA
13  Entertainment, Inc.[1]  Mattel has previously attempted to depose Ms. Brisbois.  Mattel
14  noticed Ms. Brisbois' deposition on two occasions—once for November 8, 2007 and
15  again for November 14, 2007.[2]  Mattel also requested that MGA voluntarily produce
16  Ms. Brisbois for deposition.[3]  MGA refused, asserting that Ms. Brisbois works for a
17  non-party in Canada and, therefore, Mattel improperly noticed her deposition.[4]

18

19    [1]  See Exhibit 515 to the July 19, 2007 deposition transcript of Lisa Tonnu
     (attached to the Declaration of Jon D. Corey dated January 26, 2009 ("Corey Dec.")
20  as Exhibit P, respectively); 7/19/2007 Tonnu Tr. at 47:14 to 48:11(attached to the
     Corey Dec. as Exhibit H); see also letter from Jon Corey to Amman Khan dated
21  September 25, 2007 ("You also stated that Jeanine Brisbois does not work for MGA,
     but an MGA subsidiary. . . . ") (attached to the Corey Dec. as Exhibit I).
22
     [2]  See Notice of Deposition of Janine Brisbois dated September 14, 2007;
23  Corrected Notice of Deposition of Janine Brisbois dated September 14, 2007
24  (attached to the Corey Dec. as Exhibits A and B, respectively).
     [3]  See Letter from Jon Corey to MGA's counsel dated September 14, 2007
25  (attached to the Corey Dec. as Exhibit C).
26  [4]  See Letter from Scott E. Gizer to the Honorable Edward Infante dated
     September 16, 2007 (attached to the Corey Dec. as Exhibit D); see also MGA
27  Entertainment, Inc's Objection to Mattel Inc.'s Submission Regarding Deposition
28  (footnote continued)

1    Similarly, Mattel has attempted to obtain documents from both Ms. Brisbois and
2  MGA Canada regarding Ms. Brisbois' involvement in the allegations underlying
3  Mattel's counterclaims and MGA Canada's access to and use of Mattel's trade secrets,
4  confidential and proprietary information.[5]  MGA, however, has refused to produce
5  documents that are within the possession, custody or control of its subsidiary and
6  agent.[6]

7    On January 7, 2008, the Court granted leave for Mattel to take the deposition of
8  Ms. Brisbois.[7]  On January 22, 2008, and pursuant to the Court's Order, Mattel inquired
9  as to whether MGA would produce Ms. Brisbois for deposition.[8]  MGA did not
10  respond.  On January 28, 2008, Mattel filed a motion for letters of request seeking the

11

12  _____

13  Scheduling dated September 16, 2007 at 9 (attached to the Corey Dec. as Exhibit E).
   Mattel does not agree with MGA's characterization; Brisbois in fact acted as an
14  agent for MGA who MGA is obligated to produce.
15  [5]  See generally Mattel, Inc.'s First Set of Requests for Documents and Things
   dated December 18, 2006 (attached to the Corey Dec. as Exhibit F); letter from Jon
16  Corey to Amman Khan dated September 25, 2007 at 3 (attached to the Corey Dec.
   as Exhibit I); letter from Jon Corey to Amman Khan dated October 2, 2007 at 1
17  (attached to the Corey Dec. as Exhibit J).
18  [6]  E.g., MGA Entertainment, Inc.'s Responses to Mattel, Inc.'s First Set of
   Requests for Production of Documents and Tangible Things dated April 13, 2005 at
19  3 ("MGA objects to each request to the extent it seeks information relating to
20  activities in a foreign country.  In each instance in which MGA has agreed to
   produce documents, *such production is hereby expressly limited to documents
21  relating to domestic activities or conduct only.*") (emphasis added) (attached to the
22  Corey Dec. as Exhibit G).
   [7]  See Mattel's Motion for Leave to Take Additional Discovery dated
23  November 17, 2007 at 13 (attached to the Corey Dec. as Exhibit N); Order dated
24  January 7, 2008 at 3 (attached to the Corey Dec. as Exhibit O).
   [8]  See letter from Jon Corey to Paul Eckles dated January 22, 2008 (attached to
25  the Corey Dec. as Exhibit K); see also emails from Jon Corey to Paul Eckles dated
26  January 22, 2008 and January 23, 2008 (attached to the Corey Dec. as Exhibits L
   and M, respectively); see January 8, 2009 letter from J. Corey to T. Nolan (attached
27  to the Corey Dec. as Exhibit V).
28

07975/2768037.2

-3-

1  depositions of Ms. Brisbois and MGA Canada, and the production of their documents.[9]
2  On February 4, 2008, the Court stayed Phase 2 discovery.[10]  In response to the stay
3  order and this motion, on February 15, 2008, MGA filed a preliminary response stating
4  that it would respond to the motion after the Phase 1 trial because it related to Phase 2.[11]
5  Because the Court did not rule explicitly on this motion, it presumably was denied
6  without prejudice in the Court's September 23, 2008 order relating to all pending
7  motions.[12]

8    On January 6, 2009, the Court lifted the stay on Phase 2 discovery.[13]  On January
9  8, 2009, Mattel again asked MGA whether they would voluntarily produce Ms.
10 Brisbois for deposition.[14]  MGA again did not respond.[15]

11                                      **Argument**

12 **I.    THE COURT HAS AUTHORITY TO ISSUE THE LETTER OF**
13         **REQUEST**

14    Under Federal Rule of Civil Procedure 28(b)(1), "[a] deposition may be taken in
15 a foreign country . . . under a letter of request, whether or not captioned a 'letter
16 rogatory.'" Further, Rule 28(b)(2) provides for the issuance of a Letter of Request "on
17 appropriate terms after an application and notice of it. . . . " Because information and
18 witnesses necessary to Mattel's prosecution of its counterclaims against MGA are
19 located in Canada, the Court should issue the Proposed Letter of Request for

20 _____
21   [9]  See Mattel's Motion for Issuance of Letters of Request dated January 28, 2008 (attached to the Corey Dec. as Exhibit Q).
22   [10]  See Order dated February 4, 2008 (attached to the Corey Dec. as Exhibit R).
23   [11]  See MGA's Preliminary Response to Mattel's Motion for Letters of Request dated February 15, 2008 (attached to the Corey Dec. as Exhibit S).
24   [12]  See Order dated September 23, 2008 (attached to the Corey Dec. as Exhibit
25 T).
     [13]  See Order dated January 6, 2009 (attached to the Corey Dec. as Exhibit U).
26   [14]  See January 8, 2009 letter from J. Corey to T. Nolan (attached to the Corey
27 Dec. as Exhibit V).
     [15]  Corey Dec. ¶ 23.
28

1  International Judicial Assistance to the Ontario Superior Court of Justice.  The
2  Proposed Letter of Request, filed concurrently herewith, would ask the Ontario
3  Superior Court of Justice to compel: (1) Janine Brisbois to produce the documents set
4  forth in Schedule B; (2) Janine Brisbois to be examined under oath on the topics set
5  forth in Schedule C; (3) MGA Entertainment Canada to produce the documents set
6  forth in Schedule D; and (4) MGA Entertainment Canada to produce a knowledgeable
7  designee to testify on the topics set forth in Schedule E who will be examined under
8  oath.

9        Specifically, the Letter of Request to the Ontario Superior Court is warranted to
10  allow Mattel to obtain evidence necessary to prosecute its counterclaims against MGA.
11  Janine Brisbois is featured prominently throughout Mattel's Counterclaims as one of the
12  former Mattel employees who misappropriated Mattel's trade secrets and other Mattel
13  confidential and proprietary information.  See Mattel Counterclaims, ¶¶ 4, 71-76, 89-
14  90, 97, 99, 107, 123.  Mattel alleges:

15        In 2005, MGA needed help in Canada. So MGA, again operating
16        from its Southern California headquarters, hired Janine Brisbois
17        from Mattel.  At that time, Ms. Brisbois was responsible for
18        Mattel's account with Toys 'R Us ("TRU") and Wal-Mart.  MGA
19        gave her responsibility for those same accounts, and she took from
20        Mattel documents containing proprietary advertising, project, sales,
21        customer and strategy information for not only Canada, but for the
22        United States.  Eliminating any doubt that MGA then proceeded to
23        use those stolen materials, Brisbois subsequently accessed and

1   modified certain of those Mattel documents while employed by
2   MGA.[16]

3   *       *       *

4   Mattel subsequently learned that on the same day that she spoke
5   with Mr. Larian and four days before she resigned, Brisbois copied
6   approximately 45 Mattel documents on to a USB or "thumb" drive
7   with the volume label "BACKPACK."   On information and belief,
8   Brisbois removed the thumb drive from Mattel Canada's office by
9   concealing it in her backpack or gym bag the last time that she left
10   that office.   These documents contained Mattel trade secret and
11   proprietary information, and included:

12   •       a document containing the price, cost, sales plan and
13   quantity of every Mattel product ordered by every Mattel customer
14   in 2005 and 2006;

15   •       the BARBIE television advertising strategy and
16   information concerning sales increases generated by television
17   advertisements;

18   •       competitive analysis of Mattel vis-à-vis its competitors
19   in Canada;

20   •       an analysis of Mattel's girls business sales beginning in
21   2003 and forecasts through 2006;

22   •       profit and loss reviews for Mattel's products being sold
23   in Wal-Mart, including margins and profit in not only Canada, but
24   in the United States and Mexico; and a document containing the

25

26   [16]   The allegations set forth in this section are from Mattel's Second Amended
27   Counterclaims dated July 12, 2007 ("Mattel's Counterclaims"), ¶ 4 (attached to the
     Corey Dec. as Exhibit W).
28

1    product launch dates and related advertising for all Mattel new

2    products between Fall 2005 and Spring 2006.[17]

3        *       *       *

4    After Mattel discovered that Brisbois had copied these sensitive

5    documents to a thumb drive, Mattel notified Canadian law

6    enforcement authorities.   Canadian law enforcement authorities

7    recovered from Brisbois a thumb drive with the volume label

8    "BACKPACK" containing the documents that Brisbois had copied

9    from Mattel's computer system. Mattel later learned that while she

10   was working as a Vice President of Sales at MGA, Brisbois

11   accessed and modified documents on that thumb drive.[18]

12   Ms. Brisbois has unique, personal knowledge of the claims and defenses in these

13   consolidated actions. It will further the interests of justice if she is deposed, under oath,

14   as to her knowledge of the facts which are relevant to the issues of these cases.

15       Mattel also seeks discovery in the form of deposition testimony and documents

16   from MGA Canada regarding how it and MGA Entertainment used Mattel's trade

17   secrets, confidential and proprietary information in the United States. This information

18   is plainly discoverable and, indeed, critical.   Mattel cannot, for example, fairly

19   prosecute its claims without understanding the manner in which MGA Canada

20   accesses, stores, reproduces, disseminates, and/or reviews the documents and

21   information stolen by Ms. Brisbois from Mattel.

22       Ms. Brisbois, MGA Canada's person most knowledgeable and the documents

23   requested by Mattel in its accompanying Letter of Request are located in Ontario,

24   Canada.  Mattel requested by both deposition notice and letter addressed to MGA's

25

26

---

27   [17] Mattel's Counterclaims, ¶ 74 (attached to the Corey Dec. as Exhibit W).
     [18] Mattel's Counterclaims, ¶ 75 (attached to the Corey Dec. as Exhibit W).

28

1   counsel that they produce Ms. Brisbois for deposition.[19]   MGA refused.[20]   On

2   January 7, 2008, the Court granted leave for Mattel to take the deposition of

3   Ms. Brisbois.[21] On January 22, 2008, and in accordance with the Court's Order, Mattel

4   inquired as to whether MGA would produce Ms. Brisbois for deposition. MGA has not

5   responded to Mattel's inquiry. Then, after the Phase 2 discovery stay was lifted earlier

6   this month, Mattel again inquired whether MGA would produce Ms. Brisbois, but

7   MGA did not respond.  Accordingly, Mattel must rely on this Court's authority to

8   request judicial assistance from the Ontario Superior Court of Justice to permit Mattel

9   to obtain the necessary evidence.

10  ## II.   MATTEL'S REQUEST FOR INFORMATION IS CONSISTENT WITH

11  ## CANADIAN LAW

12      Both Canadian federal law and Ontario provincial law provide for the

13  examination of parties or witnesses with information relevant to foreign lawsuits, as

14  well as the production of documents relevant to such lawsuits.[22]  The Ontario Superior

15

16  [19]   See Notice of Deposition of Janine Brisbois dated September 14, 2007;

17  Corrected Notice of Deposition of Janine Brisbois dated September 14, 2007; Letter

    from Jon Corey to MGA's counsel dated September 14, 2007 (attached to the Corey

18  Dec. as Exhibits A, B and C, respectively).

19  [20]   See fn.3, *supra*; see also letter from Jon Corey to Amman Khan dated

    September 25, 2007 (attached to the Corey Dec. as Exhibit I); letter from Jon Corey

20  to Amman Khan dated October 2, 2007 (attached to the Corey Dec. as Exhibit J).

21  [21]   See Mattel's Motion for Leave to Take Additional Discovery dated

    November 17, 2007 (attached to the Corey Dec. as Exhibit N); Order dated

22  January 7, 2008 (attached to the Corey Dec. as Exhibit O).

23  [22]   Section 46 of the Canada Evidence Act provides:

        If, on an application for that purpose, it is made to appear to any court

24      or judge that any court or tribunal outside Canada, before which any

        civil, commercial or criminal matter is pending, is desirous of obtaining

25      the testimony in relation to that matter of a party or witness within the

        jurisdiction of the first mentioned court, of the court to which the judge

26      belongs or of the judge, the court or judge may, in its or their

        discretion, order the examination on oath on interrogatories, or

27

28  (footnote continued)

1  Court, in <u>Friction Division Products Inc. v. E.I. Du Pont de Nemours & Co. (No. 2)</u>,

2  [1986] 56 O.R. (2d) 722 (H.C.J.) at 732, set out the factors to be considered by the

3  Canadian court when exercising its discretion to grant a district court's Letter of

4  Request.  Those factors are:

5      (1)    The evidence is relevant;

6

7

8  otherwise, before any person or persons named in the order, of that

9  party or witness accordingly, and by the same or any subsequent order
   may command the attendance of that party or witness for the purpose of

10  being examined, and for the production of any writings or other
    documents mentioned in the order and of any other writings or

11  documents relating to the matter in question that are in the possession

12  or power of that party or witness.

13  Canada Evidence Act, R.S.C., ch. C-5, § 46 (1999) (Can.).

14  Similarly, Section 60(1) of the Ontario Evidence Act provides:
    Where it is made to appear to the Superior Court of Justice or a judge

15  thereof, that a court or tribunal of competent jurisdiction in a foreign

16  country has duly authorized, by commission, order or other process, for
    a purpose for which a letter of request could be issued under the rules

17  of court, the obtaining of the testimony in or in relation to an action,

18  suit or proceeding pending in or before such foreign court or tribunal,
    of a witness out of the jurisdiction thereof and within the jurisdiction of

19  the court or judge so applied to, such court or judge may order the

20  examination of such witness before the person appointed, and in the
    manner and form directed by the commission, order or other process,

21  and may, by the same or by a subsequent order, command the

22  attendance of a person named therein for the purpose of being
    examined, or the production of a writing or other document or thing

23  mentioned in the order, and may give all such directions as to the time

24  and place of the examination, and all other matters connected therewith
    as seem proper, and the order may be enforced, and any disobedience

25  thereto punished, in like manner as in the case of an order made by the

26  court or judge in an action pending in the court or before a judge of the

27  court.

R.S.O. 1990, c. E.23, s. 60 (1); 2000, c. 26, Sched. A, s. 7 (2).

28

-9-

1      (2)    The evidence sought is necessary for trial and will be adduced at trial, if

2  admissible;

3      (3)    The evidence is not otherwise obtainable;

4      (4)    The order sought is not contrary to public policy;

5      (5)    The documents sought are identified with reasonable specificity; and

6      (6)    The order sought is not unduly burdensome.

7      Here, Mattel has met its burden with respect to each of these factors.

8    **A.**    **The Topics Of Testimony And Categories Of Documents Sought**

9          **From Ms. Brisbois And MGA Canada Are Both Relevant And**

10          **Necessary To Mattel's Prosecution Of Its Counterclaims At Trial**

11      As detailed in Section I, *supra*, Ms. Brisbois is an actor central to the events

12  alleged throughout Mattel's Second Amended Counterclaims and plainly a relevant

13  witness. Mattel alleges that MGA and other defendants have engaged in the systematic

14  theft of Mattel's trade secrets, much of which helped MGA unfairly compete against

15  Mattel.[23] Specifically, in the past few years, MGA has hired directly from Mattel at

16  least 70 employees, ranging from the Senior Vice-President level to lower level

17  employees.[24] Many of these employees were specifically targeted and recruited by

18  MGA based on the Mattel confidential and proprietary information the Mattel

19  employees could access.[25] Ms. Brisbois was one of these employees.

20      MGA targeted Ms. Brisbois at least as early as 2005. Mattel has alleged that

21  Ms. Brisbois, while employed by Mattel, was responsible for Mattel's accounts at Toys

22  'R Us and Wal-Mart.[26] Ms. Brisbois had access to and subsequently stole Mattel's

23

24

25  [23]  Mattel's Counterclaims, ¶ 37 (attached to the Corey Dec. as Exhibit W).

     [24]  Mattel's Counterclaims, ¶ 77 (attached to the Corey Dec. as Exhibit W); see

26  also Trial Exhibit 1932 (attached to the Corey Dec. as Exhibit X).

27  [25]  Id.

     [26]  Mattel's Counterclaims, ¶ 72 (attached to the Corey Dec. as Exhibit W).

28

1  trade secret, confidential and propriety information and furnished it to MGA.[27]
2  Ms. Brisbois also stole and provided to MGA approximately 45 Mattel documents
3  ranging from Mattel's BARBIE television advertising strategy to product launch dates
4  for new Mattel products.[28] Ms. Brisbois and MGA subsequently used this information
5  to MGA's benefit, including MGA's management of its Toys 'R Us and Wal-Mart
6  accounts.[29] Ms. Brisbois' testimony regarding her participation in this scheme with
7  MGA and others acting on MGA's behalf is, therefore, both relevant and necessary to
8  Mattel's prosecution of its Counterclaims for RICO, conspiracy to violate the RICO
9  Act, theft and misappropriation of trade secrets, and unfair competition, among
10  others.[30]

11      Further, MGA Canada's person most knowledgeable on the topics set forth in
12  Schedule E to the concurrently filed Letter of Request has unique and personal
13  knowledge regarding the manner in which MGA Canada accessed, used, reproduced,
14  disseminated and/or transferred Mattel's trade secrets, confidential and proprietary
15  information stolen by Ms. Brisbois. Therefore, it will further the interests of justice if
16  MGA Canada's person most knowledgeable on these topics is deposed, under oath, as
17  to his or her knowledge of the facts which are relevant to the issues of these cases.

18      Similarly, in its request for the production of documents, Mattel seeks highly
19  relevant information. Mattel requests documents containing communications between
20  Ms. Brisbois and MGA (including Larian) prior to her resignation from Mattel. Such
21  documents constitute evidence that Ms. Brisbois, acting in concert with MGA, planned
22  and subsequently stole Mattel's trade secret or otherwise confidential and propriety
23  information, including information relating to Bratz dolls. These documents are
24  relevant and necessary to Mattel's Counterclaims for RICO, conspiracy, and

25

[27]  Mattel's Counterclaims, ¶¶ 72, 74 (attached to the Corey Dec. as Exhibit W).
26
[28]  Mattel's Counterclaims, ¶ 74 (attached to the Corey Dec. as Exhibit W).
27
[29]  Mattel's Counterclaims, ¶ 97 (attached to the Corey Dec. as Exhibit W).

28

-11-

misappropriation of trade secrets, among others.[31]   Similarly, documents regarding Mattel's propriety information received and utilized by MGA or MGA Canada from Ms. Brisbois (either directly or indirectly) will establish the same and such documents are necessary in order for Mattel to adequately prosecute its Counterclaims.

## B.   Mattel Has Unsuccessfully Attempted To Obtain The Testimony And Documentary Evidence To Prosecute Its Counterclaims

Mattel has previously sought to depose Ms. Brisbois.   Mattel noticed her deposition and also requested through MGA's counsel that she appear for deposition and produce the requested documents.[32]   MGA's counsel, on behalf of Ms. Brisbois, refused.[33]   Furthermore, MGA has stated that its production of documents "is hereby expressly limited to documents relating to domestic activities or conduct only."[34] Where, as here, Mattel has requested the discovery but has been met with refusals has no other means of obtaining the requested discovery, then it is appropriate for this Court to make the requested order.   See Ontario Public Service Employees Union Pension Trust Fund v. Clark, (2006), 270 D.L.R. (4th) 429 (C.A.); see also Campbell

---

[30]   See Mattel's Counterclaims, ¶¶ 88-97; 98-105, 106-115, 163-170.

[31]   See Mattel's Counterclaims, ¶¶ 88-97; 98-105, 106-115.

[32]   See Notice of Deposition of Janine Brisbois dated September 14, 2007; Corrected Notice of Deposition of Janine Brisbois dated September 14, 2007; Letter from Jon Corey to MGA's counsel dated September 14, 2007 (attached to the Corey Dec. as Exhibits A, B and C, respectively).

[33]   See Letter from Scott E. Gizer to the Honorable Edward Infante dated September 16, 2007; see also MGA Entertainment, Inc's Objection to Mattel Inc.'s Submission Regarding Deposition Scheduling dated September 16, 2007 at 9 (attached to the Corey Dec. as Exhibits D and E, respectively); letter from J. Corey to Paul Eckles dated January 22, 2008 (attached to the Corey Dec. as Exhibit K); emails from J. Corey to Paul Eckles dated January 22, 2008 and January 23, 2008 (attached to the Corey Dec. as Exhibits L and M, respectively); January 8, 2009 letter from J. Corey to T. Nolan (attached to the Corey Dec. as Exhibit V).

[34]   See MGA Entertainment, Inc.'s Responses to Mattel, Inc.'s First Set of Requests for Production of Documents and Tangible Things dated April 13, 2005 at 3 (attached to the Corey Dec. as Exhibit G).

1   Estate, [1995] B.C.J. No. 2304, at ¶ 15 ("Where, as here, the respondents initially
2   declined co-operation and the foreign court, with that knowledge, requested co-
3   operation by issuing the Letters Rogatory, this court may make the order sought.").

4       **C.     The District Court's Order Granting Mattel's Letter Of Request Is**
5              **Not Contrary To Canadian Public Policy Or Sovereignty**

6       MGA would be hard pressed to plausibly argue that Canadian public policy or
7   sovereignty would be undermined by Ms. Brisbois' deposition, the deposition of MGA
8   Canada's person most knowledgeable, or the requested production of documents. The
9   Supreme Court of Canada has recognized that international comity requires that Letters
10  of Request issued by foreign courts be "given full force and effect unless it be contrary
11  to public policy of the jurisdiction to which the request is directed . . . or otherwise
12  prejudicial to the sovereignty of the citizens of the latter jurisdiction." Zingre v. The
13  Queen et al., 1981 CanLII 32 at 401 (S.C.C.). The Canadian Supreme Court in Zingre
14  also stated that "the court of one jurisdiction will give effect to the laws and judicial
15  decisions of another jurisdiction, not as a matter of obligation, but out of mutual
16  deference and respect." Id.

17      This policy objective of international comity and ensuring that Mattel may
18  properly prepare its case for trial overrides the non-existent public policy concerns that
19  may be asserted by MGA in this case. There has been no intimation by MGA that this
20  Court's issuance of the Proposed Letter of Request, nor the Ontario Superior Court of
21  Justice's granting Mattel's Letter of Request, would infringe upon Canadian
22  sovereignty. Similarly, there has been no indication that the requested discovery would
23  frustrate any Canadian public policy or that the Canadian government would find the
24  requested discovery objectionable. The Letter of Request is not in any way contrary to
25  public policy.

26
27
28

**D. The Documents Sought Are Specified With Reasonable Particularity And No Undue Burden Will Result**

In its Proposed Letter of Request, Mattel requests the testimony of Ms. Brisbois regarding the following highly material issues:

(A) Knowledge of the theft of Mattel documents containing proprietary advertising, project, sales, customer and strategy information by anyone, including Ms. Brisbois (including the 45 documents taken by Ms. Brisbois from Mattel); and

(B) Knowledge of Ms. Brisbois' communications with MGA, Larian and anyone else acting on MGA's behalf, on or before September 27, 2005, including but not limited to communications regarding Ms. Brisbois' resignation from Mattel and compensation, money or anything of value paid by MGA to Ms. Brisbois. Mattel also seeks to depose MGA Canada on its methods and procedures regarding its access and use of Mattel's trade secret, confidential and proprietary information. Not only are these topics precise and narrow with respect to the testimony that Mattel seeks to elicit from Ms. Brisbois and MGA Canada, but the information regarding these topics is appropriate given Mattel's allegations.

In addition, as to Ms. Brisbois, Mattel requests the production of documents regarding: (1) Ms. Brisbois' communications with MGA prior to her resignation from Mattel; and (2) documents received by MGA, whether directly or indirectly from Ms. Brisbois, that relate to any Mattel product or plan. These limited document requests are narrowly focused to obtain the evidence sought by Mattel without imposing an undue burden upon Ms. Brisbois.

Mattel seeks similar documents from MGA Canada, limiting those requests generally to (1) MGA Canada's efforts, and communications relating thereto, to recruit Ms. Brisbois from Mattel; (2) documents received directly or indirectly from Ms. Brisbois that contain Mattel trade secret, proprietary or confidential information; (3) MGA Canada's access and use of Mattel's trade secret, proprietary or confidential

1 information; and (4) Ms. Brisbois responsibility for the Toys 'R Us and Wal-Mart
2 accounts at MGA.

3       Similar requests have been enforced by Canadian courts. <u>See</u>, <u>e.g.</u>,
4 <u>Advance/Newhouse Partnership and Bright House Networks, LLC v.</u>
5 <u>Brighthoulse, Inc.</u>, 2005 CarswellOnt 1371 (S.C.J.) (allowing depositions of third-party
6 witness pursuant to letters rogatory issued by district court); <u>Ontario Public Service</u>
7 <u>Employees Union Pension Trust Fund v. Clark</u>, (2006) 270 D.L.R. (4th) 429 (C.A.)
8 (allowing deposition with production of documents pursuant to district court's letters
9 rogatory).  Given the precise nature of Mattel's discovery requests, MGA cannot be
10 heard to complain of undue burden.[35]

11 ## Conclusion

12       The testimony and documentary evidence that Mattel seeks through depositions
13 of Janine Brisbois and MGA Canada and the accompanying production of documents
14 are relevant, narrowly tailored, necessary to afford Mattel an adequate opportunity to
15 present its case, not contrary to Canadian public policy or sovereignty, and Mattel has
16 no other method of securing this evidence.  Mattel therefore respectfully requests that
17 the Court issue the concurrently filed Letter of Request for Foreign Judicial Assistance.

18
19 DATED:  January 26, 2009       QUINN EMANUEL URQUHART OLIVER &
      HEDGES, LLP
20
21
      By /s/ Jon Corey
22       Jon Corey
      Attorneys for Mattel, Inc.
23
24
25

26 [35]   Further, to the extent that MGA can demonstrate any burden exists, Mattel
27 will pay the costs associated with the requested document productions, Ms. Brisbois'
deposition, and the deposition of MGA Canada's person most knowledgeable.
28

# EXHIBIT 1

1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9            CENTRAL DISTRICT OF CALIFORNIA
10                  EASTERN DIVISION
11

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation,, | **[PROPOSED] REQUEST FOR JUDICIAL ASSISTANCE (LETTER OF REQUEST) BY THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |

19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

I.   NATURE OF PROCEEDINGS ........................................................................ 2

    A.   Names and Addresses of the Parties and Their Representatives ............ 2

    B.   Nature and Purpose of the Proceedings and Summary of the
        Alleged Facts ......................................................................................... 2

        1.   Procedural Background ................................................................. 2

        2.   Knowledge of Person to be Examined .......................................... 4

            (a)   Janine Brisbois ................................................................. 4

            (b)   MGA Entertainment Canada ............................................. 6

II.   CANADIAN EVIDENCE SOUGHT .............................................................. 6

    A.   Janine Brisbois ..................................................................................... 7

    B.   MGA Entertainment Canada's Person Most Knowledgeable ................ 9

        1.   Subject Matter About Which The Deponents Are To Be
            Examined ................................................................................... 10

        2.   Special Methods or Procedures to be Followed .......................... 10

        3.   Fees and Costs ............................................................................ 10

        4.   Conclusion ................................................................................. 10

III.   REQUEST FOR JUDICIAL ASSISTANCE ................................................. 11

IV.   RECIPROCITY ........................................................................................... 14

V.   CONCLUSION ............................................................................................ 14

SCHEDULE A ...................................................................................................... 15

SCHEDULE B ...................................................................................................... 16

SCHEDULE C ...................................................................................................... 20

SCHEDULE D ...................................................................................................... 21

SCHEDULE E ...................................................................................................... 25

1   **TO THE ONTARIO SUPERIOR COURT OF JUSTICE:**

2       The United States District Court for the Central District of California presents
3   its compliments to the Ontario Superior Court of Justice, and requests international
4   judicial assistance to obtain the following: (1) the production of documents and oral
5   examination, under oath, from Janine Brisbois, as set forth in Schedule B and C,
6   respectively; (2) the production of documents from MGA Entertainment Canada, as
7   set forth in Schedule D; and (3) the oral examination, under oath, from MGA
8   Entertainment Canada on the topics set forth in Schedule E.

9       This request is made pursuant to 28 U.S.C. § 1781 and the Canada Evidence
10  Act, Revised Statutes of Canada, 1970, c. E-10. This Court, the United States
11  District Court for the Central District of California, Eastern Division, is a
12  competent court of law and equity which properly has jurisdiction over this
13  proceeding, and has the power to compel the attendance of witnesses and production
14  of documents both within and outside its jurisdiction. On information and belief,
15  Ms. Brisbois resides in Canada. The testimony of Ms. Brisbois and the production
16  of documents by her is intended for use at trial. Further, on information and belief,
17  the person most knowledgeable on the topics set forth in Schedule E is employed by
18  MGA Entertainment Canada and resides in Ontario, Canada. The testimony of this
19  witness and the production of documents by MGA Canada is intended for use at
20  trial.

21      This request is made with the understanding that it will in no way require the
22  person described below to commit any offense, nor will it require the person
23  described below to undergo a broader form of inquiry than they would if the
24  litigation were conducted in Canada. In the proper exercise of its authority, this
25  Court has determined that the testimony of Janine Brisbois on the topics set forth in
26  Schedule C and the documents described in Schedule B can not be secured except
27  by the intervention of the Ontario Superior Court of Justice. This Court has further
28  determined that the testimony of the person most knowledgeable on the topics set

1  forth in Schedule E and the documents described in Schedule D can not be secured
2  except by intervention of the Ontario Superior Court of Justice.

3  **I.     NATURE OF PROCEEDINGS**

4      **A.     Names and Addresses of the Parties and Their Representatives**

5      The evidence requested relates to the action entitled <u>Bryant v. Mattel, Inc.</u>,
6  Case No. CV 04-9049 SGL (RNBx), which consists of three actions that have been
7  consolidated before the requesting judicial authority: <u>Mattel, Inc. v. Bryant</u>, Case
8  No. CV 04-9049 SGL (RNBx) (the "Bryant Case"); <u>Bryant v. Mattel, Inc.</u>, Case
9  No. CV 04-9049 SGL (RNBx) (the "Declaratory Relief Case"), and <u>MGA v.</u>
10 <u>Mattel, Inc.</u>, Case No. CV05-2727 SGL (RNBx) (the "Unfair Competition Case").
11 The parties and their representatives are listed in Schedule A attached hereto. The
12 applicant for this letter of request is defendant and cross-plaintiff Mattel, Inc.
13 ("Mattel").

14      **B.     Nature and Purpose of the Proceedings and Summary of the**
15           **Alleged Facts**

16           **1.     Procedural Background**

17      <u>Mattel's Original Complaint</u>.  Mattel learned in November 2003 that Carter
18 Bryant, a former Mattel doll designer, had contracted to provide and provided
19 services to MGA Entertainment, Inc. while he was a Mattel employee.  Mattel
20 originally filed suit against Bryant for breach of contract, breach of fiduciary duty,
21 breach of the duty of loyalty, unjust enrichment and conversion in April 2004.  In its
22 Complaint, Mattel alleged its claim to ownership of all inventions and works created
23 by Bryant during his Mattel employment and seeks to recover all benefits obtained
24 as a result of his breach of duties.  As of January 2005, Bryant claimed he had
25 earned more than $10 million from his relationship with MGA.  MGA intervened in
26 Mattel's case against Bryant in December 2004 to defend the rights it claims in the
27 Bratz properties, which Bryant created while, Mattel alleges, he was a Mattel doll
28 designer.

1    <u>Bryant's Counterclaims</u>. Bryant initially challenged the assignment
2    provisions in the Inventions Agreement between he and Mattel in four
3    Counterclaims, alleging unconscionability, mistake, duress, fraud, Labor Code
4    violations, Business and Professions Code violations, unfair competition and other
5    claims. Bryant sought rescission of the Inventions Agreement and a declaration that
6    the Inventions Agreement is unenforceable. The Court dismissed all of Bryant's
7    Counterclaims in an 18-page Order. The Court rejected Bryant's arguments that the
8    Inventions Agreement is not enforceable, holding that, even construing Bryant's
9    allegations in the light most favorable to him, "Bryant cannot prove any set of facts
10   in support of the claims that would entitle him to relief."

11   In addition to his Counterclaims, Bryant sued Mattel in November 2004 for a
12   declaratory judgment that he had not infringed the copyrights in a Mattel project
13   known as "Toon Teens." Like his Counterclaims, the Court dismissed Bryant's
14   declaratory judgment complaint on the pleadings.

15   <u>Consolidation</u>. After the Court lifted a discovery stay imposed while the
16   Ninth Circuit Court of Appeal resolved an appeal regarding subject matter
17   jurisdiction issues, the Court consolidated Mattel's case against Bryant, Bryant's
18   declaratory relief case and a case that MGA had filed against Mattel alleging trade
19   dress infringement, delusion and unfair competition, among others, for all purposes.

20   <u>Mattel's Second Amended Counterclaims</u>. Mattel filed its Second Amended
21   Answer and Counterclaims on July 12, 2007, asserting thirteen counterclaims
22   against six named defendants, MGA Entertainment, Inc., Isaac Larian, MGA
23   Entertainment (HK) Ltd., MGAE de Mexico S.R.L. de C.V., Carlos Gustavo
24   Machado Gomez, and Carter Bryant. Mattel's counterclaims included claims for
25   copyright infringement, misappropriation of trade secrets, violation of and
26   conspiracy to violate the Racketeer Influenced and Corrupt Organizations ("RICO")
27   Act, breach of contract, intentional interference with contract, breach of fiduciary
28   duty, aiding and abetting breach of fiduciary duty, breach of duty of loyalty, aiding

1 and abetting breach of duty of loyalty, conversion, unfair competition, and
2 declaratory relief.

3     In its Second Amended Counterclaims, Mattel alleges that MGA and other
4 defendants have engaged in the systematic theft of Mattel's trade secrets, which
5 MGA used to unfairly compete against Mattel.[1]  It is alleged that MGA hired
6 directly from Mattel at least 25 employees, ranging from the Senior Vice-President
7 level to lower level employees.[2]  Mattel further alleged that MGA specifically
8 targeted and recruited many of these employees based on the Mattel confidential and
9 proprietary information the Mattel employees could access and bring to MGA.[3]
10 Janine Brisbois was one of these Mattel employees.

11 ## 2.   Knowledge of Person to be Examined
12 ### (a)   Janine Brisbois

13     Mattel has alleged that Janine Brisbois was one of the principal actors in
14 MGA's scheme to steal and profit from Mattel's trade secrets and confidential and
15 proprietary information.  MGA recruited Janine Brisbois in 2005.  In 2005,
16 Ms. Brisbois was a Director of Sales for Mattel's Girls Division in Canada and
17 responsible for Mattel's accounts with Toys 'R Us and Wal-Mart.[4]  When
18 Ms. Brisbois joined MGA Entertainment Canada, MGA gave her responsibility for
19 those same accounts.[5]

20     Mattel alleges that Ms. Brisbois spoke with Isaac Larian, the President and
21 CEO of MGA, prior to her departure from Mattel, and four days before she
22 resigned, copied approximately 45 Mattel documents containing Mattel proprietary

---

24 [1]  The allegations set forth in this section are from Mattel's Second Amended
25 Counterclaims dated July 12, 2007. Id. at ¶ 37.
  [2]  Id. at ¶ 77.
26 [3]  Id.
27 [4]  Id. at ¶ 71.
  [5]  Id. at ¶ 73.
28

1 advertising, project, sales, customer and strategy information (for both Canada and

2 the United States) onto a USB drive.[6]  While Ms. Brisbois was working as a Vice

3 President of Sales at MGA Entertainment Canada, Brisbois accessed and used a

4 number of these Mattel documents.[7]  Mattel further alleges that Ms. Brisbois and

5 MGA subsequently used these stolen trade secrets to improperly benefit MGA

6 Entertainment, Inc., including its management of MGA's Toys 'R Us and Wal-Mart

7 accounts.[8]  Ms. Brisbois' testimony regarding her participation in this alleged

8 scheme with MGA and anyone acting on MGA's behalf is, therefore, both relevant

9 to and essential for Mattel's prosecution of its Counterclaims.[9]

10      Mattel's document requests also seek highly relevant documents.  Mattel

11 requests documents containing communications between Ms. Brisbois and MGA

12 prior to her resignation from Mattel.  Such documents will prove that Ms. Brisbois,

13 acting in concert with MGA, planned and subsequently stole Mattel's trade secret, or

14 otherwise confidential and propriety information.  These documents are also

15 relevant and necessary to support Mattel's Counterclaims for misappropriation of

16 trade secrets, among others.[10]  Similarly, documents regarding Mattel's proprietary

17 information received by MGA from Ms. Brisbois (either directly or indirectly) will

18 show the same and such documents are necessary in order for Mattel to adequately

19 prosecute its Counterclaims.

20      Mattel has previously sought to depose Ms. Brisbois.  Mattel noticed her

21 deposition and requested, through MGA's counsel, that she voluntarily appear for

22

23

24

25   [6]  Id. at ¶ 74.

26   [7]  Id. at ¶¶ 70-76.
  [8]  Id. at ¶ 97.

27   [9]  Id. at ¶¶ 88-97; 98-105, 106-115.
  [10]  Id. at ¶¶ 88-97; 98-105, 106-115.

28

deposition and produce the requested documents.  MGA's counsel, on behalf of Ms. Brisbois, refused.[11]

### (b)   MGA Entertainment Canada

Through this Letter of Request, Mattel seeks discovery in the form of deposition testimony and documents regarding how MGA Entertainment Canada used Mattel's trade secrets, confidential and proprietary information to the benefit of MGA Entertainment in the United States.  This discoverable information requires that Mattel understand the manner in which MGA Entertainment Canada accesses, stores, reproduces, disseminates, and/or reviews the documents and information stolen by Ms. Brisbois from Mattel.  Accordingly, Mattel seeks the deposition of MGA Entertainment Canada's person most knowledgeable on the topics set forth in Schedule E.

## II.   CANADIAN EVIDENCE SOUGHT

The evidence to be obtained consists of testimony for use in the trial of the actions that have been consolidated as part of Bryant v. Mattel, Inc., Case No. 04-9049 SGL (RNBx) (Consolidated with Case No. 04-9059 and Case No. 05-2727).  It is requested that a Canadian judicial authority compel Janine Brisbois to appear and to be deposed, under oath, as to her knowledge of the topics set forth in Schedule C. Additionally, Mattel requests the production of documents, as set forth in Schedule B.  It is further requested that a Canadian judicial authority compel MGA Entertainment Canada to identify a designee and to appear and to be deposed, under oath, as to his or her knowledge of the topics set forth in Schedule E, and compel MGA Entertainment Canada to produce the documents described in Schedule D.

---

[11]   See generally Declaration of Jon D. Corey dated January 28, 2008 and Exhibits A-O attached thereto.

6

## A.     Janine Brisbois

Ms. Brisbois resides in your jurisdiction at 3130 Cole Road, RR # 2, Queensville, Ontario, Canada L0GR0.  As detailed in section I.B.2, *supra*, it is alleged that Ms. Brisbois was one of the principal actors engaged in MGA's scheme of wrongdoing underlying Mattel's Counterclaims in that she stole and subsequently assisted MGA in profiting from Mattel's trade secrets, or otherwise confidential or proprietary information.  Mattel has alleged:

> In 2005, MGA needed help in Canada.  So MGA, again operating from its Southern California headquarters, hired Janine Brisbois from Mattel.  At that time, Ms. Brisbois was responsible for Mattel's account with Toys 'R Us ("TRU") and Wal-Mart.  MGA gave her responsibility for those same accounts, and she took from Mattel documents containing proprietary advertising, project, sales, customer and strategy information for not only Canada, but for the United States.  Eliminating any doubt that MGA then proceeded to use those stolen materials, Brisbois subsequently accessed and modified certain of those Mattel documents while employed by MGA.[12]

> \*        \*        \*

> Mattel subsequently learned that on the same day that she spoke with Mr. Larian and four days before she resigned, Brisbois copied approximately 45 Mattel documents on to a USB or "thumb" drive with the volume label "BACKPACK."  On information and belief, Brisbois

7

1    removed the thumb drive from Mattel Canada's office by

2    concealing it in her backpack or gym bag the last time

3    that she left that office.  These documents contained

4    Mattel trade secret and proprietary information, and

5    included:

6    •    a document containing the price, cost, sales plan

7    and quantity of every Mattel product ordered by every

8    Mattel customer in 2005 and 2006;

9    •    the BARBIE television advertising strategy and

10   information concerning sales increases generated by

11   television advertisements;

12   •    competitive analysis of Mattel vis-à-vis its

13   competitors in Canada;

14   •    an analysis of Mattel's girls business sales

15   beginning in 2003 and forecasts through 2006;

16   •    profit and loss reviews for Mattel's products being

17   sold in Wal-Mart, including margins and profit in not

18   only Canada, but in the United States and Mexico; and a

19   document containing the product launch dates and related

20   advertising for all Mattel new products between Fall

21   2005 and Spring 2006.[13]

22                    *        *        *

23   After Mattel discovered that Brisbois had copied these

24   sensitive documents to a thumb drive, Mattel notified

25   Canadian law enforcement authorities.  Canadian law

26

27   [12]   Id. at ¶ 4.
     [13]   Id. at ¶ 74.

28

1    enforcement authorities recovered from Brisbois a thumb

2    drive with the volume label "BACKPACK" containing

3    the documents that Brisbois had copied from Mattel's

4    computer system.  Mattel later learned that while she was

5    working as a Vice President of Sales at MGA, Brisbois

6    accessed and modified documents on that thumb drive.[14]

7  These allegations, and others, underlie Mattel's claims for misappropriation of

8 trade secrets and RICO violations.[15]  These allegations are also relevant to Mattel's

9 claims in that they will bear on and Mattel believes will evidence MGA's theft and

10 use of Mattel's trade secrets.  Moreover, they are relevant to MGA's unfair

11 competition claims because such information will prove that it was MGA that had

12 prior access to Mattel's business plans and strategies and that MGA was the one

13 copying Mattel—not the other way around as MGA alleges.

14  Because Ms. Brisbois has unique and personal knowledge of the matters at

15 issue in the consolidated litigation proceedings, it will further the interests of justice

16 if she is deposed, under oath, as to her knowledge of the facts which are relevant to

17 the issues of these cases and produce the documents set forth in Schedule B.

18  **B. MGA Entertainment Canada's Person Most Knowledgeable**

19  MGA Entertainment Canada resides in your jurisdiction at 7100 Woodbine

20 Avenue, Suite #202, Markham, Ontario, Canada, L3R 5J2.  MGA Entertainment

21 Canada's designee on the topics set forth in Schedule E has unique and personal

22 knowledge regarding the manner in which MGA Entertainment Canada accessed,

23 used, reproduced, disseminated and/or transferred Mattel's trade secrets, confidential

24 and proprietary information stolen by Ms. Brisbois.  Therefore, it will further the

25 interests of justice if MGA Entertainment Canada designee is deposed, under oath,

26

27 [14] Id. at ¶ 75.

  [15] Id. at ¶¶ 88-115.

28

07975/2774602.1

1  as to his or her knowledge of the facts which are relevant to the issues of these cases
2  and produce the documents set forth in Schedule D.

3          **1.     Subject Matter About Which The Deponents Are To Be**
4                   **Examined**

5          The subject matter about which Ms Brisbois is to be examined is set forth in
6  Schedule C.  The subject matter about which MGA Entertainment Canada designee
7  is to be examined is set forth in Schedule E.

8          **2.     Special Methods or Procedures to be Followed**

9          The examinations shall be taken under the Federal Rules of Civil Procedure
10 of the United States of America, except to the extent such procedure is incompatible
11 with the internal laws of Canada.

12         The examination shall be taken before a commercial stenographer and a
13 verbatim transcript shall be produced.  The deposition shall also be videotaped.

14         **3.     Fees and Costs**

15         Any fees and costs incurred by Ms. Brisbois or MGA Entertainment Canada
16 in conjunction with their respective depositions and production of documents will be
17 paid by Defendant Mattel, Inc, through its counsel of record:  Jon D. Corey, Quinn
18 Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th Floor,
19 Los Angeles, CA  90017.  Mattel's payment of any such fees and costs is without
20 prejudice to its making a subsequent request to be reimbursed for these costs by
21 other parties in this consolidated proceeding.

22         **4.     Conclusion**

23         Based on the foregoing and the Court's review of the pleadings, the
24 Declaration of Jon D. Corey filed concurrently with the Letter of Request, this Court
25 has concluded that Janine Brisbois has information, including both personal
26 knowledge and documents, about the transactions that are the subject of the civil
27 action against MGA and Carter Bryant, including but not limited to her knowledge
28 of the alleged theft of Mattel's propriety advertising, project, sales, customer and

1  strategy information and her knowledge of communications with MGA, or anyone
2  acting on MGA's behalf, on or before September 27, 2005, regarding her resignation
3  from Mattel; compensation, money or anything of value paid by MGA to
4  Ms. Brisbois.

5      Further, this Court has concluded that MGA Entertainment Canada has
6  information, including both personal information and documents, about the
7  transactions which are the subject of the civil action against MGA and Carter
8  Bryant, including but not limited to the manner in which MGA Entertainment
9  Canada accessed, used, reproduced, disseminated and/or transferred Mattel's trade
10 secrets, confidential and proprietary information stolen by Ms. Brisbois.

11     Accordingly, in the interests of justice and to assure a complete record, it is
12 necessary for: (1) Janine Brisbois to produce the documents set forth in Schedule B;
13 (2) Janine Brisbois to be examined under oath on the topics set forth in Schedule C;
14 (3) MGA Entertainment Canada to produce the documents set forth in Schedule D;
15 and (4) MGA Entertainment Canada to produce a designee knowledgeable about the
16 topics set forth in Schedule E to be examined under oath.

17 **III.    REQUEST FOR JUDICIAL ASSISTANCE**

18     The evidence sought cannot be obtained other than from Janine Brisbois or
19 MGA Entertainment Canada, through deposition and document production, and
20 such evidence will be useful to this Court in determining the validity of the claims
21 and defenses in this case. The evidence sought is necessary for trial in this matter
22 and will be adduced at trial, if admissible and appropriate.

23     Therefore, after having thoroughly reviewed the pleadings in this matter and
24 the exhibits attached to the concurrently filed Declaration of Jon D. Corey, this
25 Court requests the following as to Janine Brisbois:

26     (1)    You cause, by your proper and usual process, Janine Brisbois to be
27 summoned to appear before you or some competent office authorized by you, on a
28 date mutually agreed upon by the deponent and the parties or at a time and/or place

07975/2774602.1

11

1   to be determined by you, to give testimony under oath by questions and answers
2   upon oral deposition, such deposition to continue day to day until completion and
3   conducted in accordance with the <u>Federal Rules of Civil Procedure</u> or as permitted
4   by you.  In the event that the Law of Canada does not permit the swearing of an oath
5   by a particular witness, the duly appointed officer shall make inquiry of such
6   witness to ensure that he/she understands the gravity of the procedure and affirms
7   that his/her statement will be true and correct in all respects.

8       (2)    You permit Janine Brisbois to be examined under oath by counsel for
9   all parties in this matter, allowing full examination and cross-examination on the
10  subject matter of this case, including the topics delineated in Schedule C to this
11  Letter of Request.

12      (3)    You order Janine Brisbois to produce documents at the offices of
13  Heenan Blaikie LLP, Attn: George Karayannides, Suite 2600, 200 Bay Street, Royal
14  Bank Plaza, South Tower, Toronto, Ontario M5J 2J4 in accordance with Schedule B
15  to this Letter of Request and not later than 5 court days prior to the date of
16  Ms. Brisbois' deposition.

17      (4)    You order Janine Brisbois to produce, at or immediately after the oral
18  examination, specific documents relevant to the subject matter of this case, the
19  existence of which becomes known during the course of the examination and which
20  are requested by counsel.

21      (5)    You cause a verbatim transcript of the testimony of the witness to be
22  taken and reduced to writing.  The deposition shall also be videotaped.

23      (6)    You order, pursuant to <u>Ontario Rule of Civil Procedure</u> 30.1, that the
24  oral and documentary evidence produced pursuant to your enforcement of this
25  Letter of Request shall not be used by anyone in any manner or proceeding other
26  than in this matter, <u>Bryant v. Mattel, Inc.</u>, Case No. 04-9049 SGL (RNBx)
27  (Consolidated with Case No. 04-9059 and Case No. 05-2727), pending in the United
28

12

1  States District Court for the Central District of California.  A Protective Order was
2  entered in this action on January 4, 2005 (Attachment A hereto).

3       This Court further requests the following as to MGA Entertainment Canada:

4       (1)    You cause, by your proper and usual process, MGA Entertainment
5  Canada to produce a designee with knowledge of the topics set forth in Schedule E
6  to be summoned to appear before you or some competent office authorized by you,
7  on a date mutually agreed upon by the deponent and the parties or at a time and/or
8  place to be determined by you, to give testimony under oath by questions and
9  answers upon oral deposition, such deposition to continue day to day until
10  completion and conducted in accordance with the <u>Federal Rules of Civil Procedure</u>
11  or as permitted by you.  In the event that the Law of Canada does not permit the
12  swearing of an oath by a particular witness, the duly appointed officer shall make
13  inquiry of such witness to ensure that he/she understands the gravity of the
14  procedure and affirms that his/her statement will be true and correct in all respects.

15       (2)    You permit MGA Entertainment Canada's knowledgeable designee to
16  be examined under oath by counsel for all parties in this matter, allowing full
17  examination and cross-examination on the subject matter of this case, including the
18  topics delineated in Schedule E to this Letter of Request.

19       (3)    You order MGA Entertainment Canada to produce documents at the
20  offices of Heenan Blaikie LLP, Attn: George Karayannides, Suite 2600, 200 Bay
21  Street, Royal Bank Plaza, South Tower, Toronto, Ontario M5J 2J4 in accordance
22  with Schedule D to this Letter of Request and not later than 5 court days prior to the
23  date of MGA Entertainment Canada's person most knowledgeable deposition.

24       (4)    You order MGA Entertainment Canada to produce, at or immediately
25  after the oral examination, specific documents relevant to the subject matter of this
26  case, the existence of which becomes known during the course of the examination
27  and which are requested by counsel.

28

07975/2774602.1

13

1   (5)   You cause a verbatim transcript of the testimony of the witness to be
2   taken and reduced to writing.  The deposition shall also be videotaped.

3   (6)   You order, pursuant to <u>Ontario Rule of Civil Procedure</u> 30.1, that the
4   oral and documentary evidence produced pursuant to your enforcement of this
5   Letter of Request shall not be used by anyone in any manner or proceeding other
6   than in this matter, <u>Bryant v. Mattel, Inc.</u>, Case No. 04-9049 SGL (RNBx)
7   (Consolidated with Case No. 04-9059 and Case No. 05-2727), pending in the United
8   States District Court for the Central District of California.  A Protective Order was
9   entered in this action on January 4, 2005 (Attachment 1 hereto).

10  **IV.   RECIPROCITY**

11  This Court expresses its sincere willingness to provide similar assistance to
12  the Ontario Superior Court of Justice if future circumstances should require.

13  **V.   CONCLUSION**

14  In the spirit of comity and reciprocity, this Court hereby requests international
15  judicial assistance in the form of this Letter of Request to compel: (1) Janine
16  Brisbois to produce the documents set forth in Schedule B; (2) Janine Brisbois to be
17  examined under oath on the topics set forth in Schedule C; (3) MGA Entertainment
18  Canada to produce the documents set forth in Schedule D; and (4) MGA
19  Entertainment Canada to produce a knowledgeable designee on the topics set forth
20  in Schedule E to be examined under oath.

21  DATED: _____, 2008

22

23  By_____
    THE HONORABLE STEPHEN G. LARSON
24  United States District Judge

25  SHERRI R. CARTER, Clerk of the Court

26

27  By_____
    Deputy Clerk_____

28

1

## **SCHEDULE A**

2

### NAMES AND ADDRESSES OF THE PARTIES

3

### AND THEIR REPRESENTATIVES

4

John B. Quinn, Esq.
Michael T. Zeller, Esq.

5

Jon D. Corey, Esq.
**QUINN EMANUEL**

6

**URQUHART**
**OLIVER & HEDGES, LLP**

7

865 South Figueroa Street, 10th
Floor

8

Los Angeles, CA 90017

9

**Attorneys for Mattel, Inc.**

10

Thomas Nolan, Esq.
**SKADDEN ARPS SLATE**

11

**MEAGHER FLOM, LLP**
300 South Grand Avenue

12

Suite 3400
Los Angeles, California 90071

13

14

*Attorneys for MGA*
*Entertainment, Inc.; MGAE de*

15

*Mexico, S.A. de C.R.L; MGA*
*Entertainment (HK) Limited; and*
*Isaac Larian*

16

Mark E. Overland, Esq.
David C. Scheper, Esq.
Alexander H. Cote, Esq.
**OVERLAND, BORENSTEIN,**
**SCHEPER & KIM, LLP**
300 S. Grand Avenue, Suite 2750
Los Angeles, CA 90071

*Attorneys for Carlos Gustavo*
*Machado Gomez*

17

18

19

20

21

22

23

24

25

26

27

28

07975/2774602.1

15

## SCHEDULE B

For purpose of construing the below-listed Requested Documents, the following definitions and instructions apply:

### I.   DEFINITIONS

For purposes of these Requests, the following definitions apply:

A.   The terms "YOU" and "YOUR" shall mean Janine Brisbois, her attorneys, accountants, agents, and all persons acting under her, or by her direction or control, or on her behalf.

B.   "MGA" means MGA Entertainment, Inc. and any individual or entity acting directly or indirectly by, through, under or on behalf of MGA Entertainment, Inc., including but not limited to current or former directors, officers, employees, agents, contractors, attorneys, accountants, or representatives of MGA Entertainment, Inc. and any corporation, partnership, association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and any other PERSON acting on its behalf.

C.   The term "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

D.   "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 1001 of the Federal Rules of Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all writings, including but not limited to handwriting, typewriting, printing, image, photograph, photocopy, digital file of any kind, transmittal by (or as an attachment to) electronic mail (including instant messages and text messages) or facsimile, video and audio recordings, and every other means of recording upon any tangible thing, any form of communication or representation, and any record thereby created,

1  regardless of the manner in which the record has been stored, and all non-identical
2  copies of such DOCUMENTS, in the possession, custody, or control of YOU,
3  YOUR counsel, or any other PERSON acting on YOUR behalf.

4      E.      The term "COMMUNICATION," in the plural as well as the singular,
5  means any transmittal and/or receipt of information, whether such was oral or
6  written, and whether such was by chance, prearranged, formal or informal, and
7  specifically includes, but is not limited to, conversations in person, telephone
8  conversations, electronic mail (including instant messages and text messages),
9  voicemail, letters, memoranda, statements, media releases, magazine and newspaper
10  articles, and video and audio transmissions.

11     F.      "BRATZ PRODUCT" means any product, whether two-dimensional or
12  three-dimensional, and whether in tangible, digital, electronic or other form: (i) that
13  is or has ever been distributed, marketed or sold under the name "Bratz" or as part of
14  the "Bratz" line; (ii) that depicts, incorporates, embodies, consists of or REFERS
15  OR RELATES TO BRATZ; and/or (iii) that is or has ever been distributed,
16  marketed or sold in any packaging that includes the name "Bratz" or depicts,
17  incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ.

18     G.      The term "PERSON," in the plural as well as the singular, means any
19  natural person, association, partnership, corporation, joint venture, government
20  entity, organization, trust, institution, proprietorship, or any other entity recognized
21  as having an existence under the laws in United States or any other nation.

22     H.      The terms "RELATE TO" and "RELATING TO" means any and all of
23  the following terms and their synonyms:  refer to, discuss, constitute, evidence,
24  pertain to, mention, support, contradict, negate, bear on, touch on, contain, embody,
25  reflect, identify, state, deal with, concern, comment on, respond to, relevant to, or
26  describe.

27
28

07975/2774602.1

17

## II.   REQUESTS FOR DOCUMENTS AND THINGS

**REQUEST FOR PRODUCTION NO. 1:**

All COMMUNICATIONS between MGA, Isaac Larian and Ron Brawer, on the one hand, and Janine Brisbois, on the other, ("Brisbois") prior to September 27, 2005.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS RELATING TO COMMUNICATIONS between MGA, Isaac Larian and Ron Brawer, on the one hand, and Brisbois, on the other, prior to September 27, 2005, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brisbois' resignation from Mattel.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Brisbois, whether directly or indirectly, by MGA between January 2005 and the present.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS received by MGA, directly or indirectly, from Brisbois RELATING TO any MATTEL product or plan.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS RELATING TO MGA's receipt, access, use, reproduction, copying, storage, transmission, transfer, disclosure, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, that were prepared, made, created, generated, assembled or compiled by or for MATTEL and that MGA received, directly or indirectly from Brisbois.

1 | **REQUEST FOR PRODUCTION NO. 7:**

2 |      A copy of each personnel file maintained or created by MGA

3 | RELATING TO Brisbois.

4 | **REQUEST FOR PRODUCTION NO. 8:**

5 |      All DOCUMENTS taken by Brisbois from Mattel Canada, Inc.,

6 | including but not limited to the 45 Mattel documents contained on a USB or

7 | "thumb" drive with the volume label "BACKPACK" from Mattel's Canada, Inc.'s

8 | office.

9 | **REQUEST FOR PRODUCTION NO. 9:**

10 |      All DOCUMENTS RELATING TO COMMUNICATIONS between

11 | Brisbois, on the one hand, and Toys 'R Us or Wal-Mart on the other, or anyone

12 | acting on behalf of Toys 'R Us or Wal-Mart, between September 27, 2005, and

13 | January 1, 2007, including but not limited to her COMMUNICATIONS with Toys

14 | 'R Us or Wal-Mart about promotions of MGA products.

15 | **REQUEST FOR PRODUCTION NO. 10:**

16 |      All DOCUMENTS, including but not limited to all

17 | COMMUNICATIONS with any PERSON, created by Brisbois while employed by

18 | MGA RELATED TO MGA's marketing of products that compete with Mattel's

19 | products, recruiting or attempting to recruit Mattel's employees, or the theft of

20 | Mattel trade secrets, confidential or proprietary information.

1

## SCHEDULE C

2 SUBJECT MATTER ABOUT WHICH MS. BRISBOIS IS TO BE EXAMINED

3  1.  Theft of Mattel documents containing proprietary advertising, project, sales,
4      customer and strategy information by anyone, including Ms. Brisbois.
5  2.  Theft by Ms. Brisbois of approximately 45 Mattel documents contained on a
6      USB or "thumb" drive with the volume label "BACKPACK" from Mattel's
7      Canada office.
8  3.  Ms. Brisbois' communications with MGA, or anyone acting on MGA's behalf,
9      on or before September 27, 2005, including but not limited to
10     communications regarding Ms. Brisbois' resignation from Mattel;
11     compensation, money or anything of value paid by MGA to Ms. Brisbois.
12 4.  Ms. Brisbois' receipt, access, use, reproduction, copying, storage,
13     transmission, transfer, disclosure, retention, destruction, deletion or use of any
14     documents, data and/or information, that were prepared, made, created,
15     generated, assembled or compiled by or for MATTEL and that MGA
16     received, directly or indirectly from Brisbois.
17 5.  Ms. Brisbois' access, use, dissemination or disclosure of Mattel's trade secrets,
18     or otherwise confidential or proprietary information, while employed by
19     MGA, including but not limited to Mattel's information regarding advertising
20     strategy and in-store promotions at retailers.
21 6.  Ms. Brisbois' communications with MGA, including but not limited to Isaac
22     Larian or Ron Brawer, relating to her decision to join MGA and other matters
23     at issue in this Action.

24

25

26

27

28

1

## SCHEDULE D

2  For purpose of construing the below-listed Requested Documents, the

3  following definitions and instructions apply:

4  **I.   DEFINITIONS**

5  For purposes of these Requests, the following definitions apply:

6  I.   The terms "YOU" and "YOUR" shall mean MGA Entertainment

7  Canada, its attorneys, accountants, agents, and all persons acting under its direction

8  or control, or on its behalf.

9  J.   "MGA" means MGA Entertainment, Inc. and any individual or entity

10  acting directly or indirectly by, through, under or on behalf of MGA

11  Entertainment, Inc., including but not limited to current or former directors, officers,

12  employees, agents, contractors, attorneys, accountants, or representatives of MGA

13  Entertainment, Inc. and any corporation, partnership, association, trust, parent,

14  subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and

15  any other PERSON acting on its behalf.

16  K.   The term "MATTEL" means Mattel, Inc. and all current or former

17  directors, officers, employees, agents, contractors, attorneys, accountants,

18  representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and

19  successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

20  authority or subject to its control.

21  L.   "DOCUMENT" or "DOCUMENTS" means all "writings" and

22  "recordings" as those terms are defined in Rule 1001 of the Federal Rules of

23  Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all

24  writings, including but not limited to handwriting, typewriting, printing, image,

25  photograph, photocopy, digital file of any kind, transmittal by (or as an attachment

26  to) electronic mail (including instant messages and text messages) or facsimile,

27  video and audio recordings, and every other means of recording upon any tangible

28  thing, any form of communication or representation, and any record thereby created,

1  regardless of the manner in which the record has been stored, and all non-identical
2  copies of such DOCUMENTS, in the possession, custody, or control of YOU,
3  YOUR counsel, or any other PERSON acting on YOUR behalf.

4      M.     The term "COMMUNICATION," in the plural as well as the singular,
5  means any transmittal and/or receipt of information, whether such was oral or
6  written, and whether such was by chance, prearranged, formal or informal, and
7  specifically includes, but is not limited to, conversations in person, telephone
8  conversations, electronic mail (including instant messages and text messages),
9  voicemail, letters, memoranda, statements, media releases, magazine and newspaper
10  articles, and video and audio transmissions.

11      N.     "BRATZ PRODUCT" means any product, whether two-dimensional or
12  three-dimensional, and whether in tangible, digital, electronic or other form: (i) that
13  is or has ever been distributed, marketed or sold under the name "Bratz" or as part of
14  the "Bratz" line; (ii) that depicts, incorporates, embodies, consists of or REFERS
15  OR RELATES TO BRATZ; and/or (iii) that is or has ever been distributed,
16  marketed or sold in any packaging that includes the name "Bratz" or depicts,
17  incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ.

18      O.     The term "PERSON," in the plural as well as the singular, means any
19  natural person, association, partnership, corporation, joint venture, government
20  entity, organization, trust, institution, proprietorship, or any other entity recognized
21  as having an existence under the laws in United States or any other nation.

22      P.     The terms "RELATE TO" and "RELATING TO" means any and all of
23  the following terms and their synonyms:  refer to, discuss, constitute, evidence,
24  pertain to, mention, support, contradict, negate, bear on, touch on, contain, embody,
25  reflect, identify, state, deal with, concern, comment on, respond to, relevant to, or
26  describe.

27

28

07975/2774602.1

22

## II.    **REQUESTS FOR DOCUMENTS AND THINGS**

**REQUEST FOR PRODUCTION NO. 1:**

All COMMUNICATIONS between YOU and Janine Brisbois ("Brisbois") prior to September 27, 2005.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and Brisbois prior to September 27, 2005, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Brisbois' resignation from Mattel.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO compensation, money or any other item of value paid to Brisbois, whether directly or indirectly, by MGA between January 2005 and the present.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS received by YOU, directly or indirectly, from Brisbois RELATING TO any MATTEL product or plan.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS RELATING TO YOUR receipt, access, use, reproduction, copying, storage, transmission, transfer, disclosure, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, that were prepared, made, created, generated, assembled or compiled by or for MATTEL and that MGA received, directly or indirectly from Brisbois.

**REQUEST FOR PRODUCTION NO. 7:**

A copy of each personnel file maintained or created by YOU RELATING TO Brisbois.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS taken by Brisbois from Mattel Canada, Inc., including but not limited to the 45 Mattel documents contained on a USB or "thumb" drive with the volume label "BACKPACK" from Mattel's Canada, Inc.'s office.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU, on the one hand, and Toys 'R Us or Wal-Mart on the other, or anyone acting on behalf of Toys 'R Us or Wal-Mart, between September 27, 2005 and January 1, 2007, regarding Ms. Brisbois or Ms. Brisbois' responsibility for the Toys 'R Us and Wal-Mart accounts with MGA, and COMMUNICATIONS with Toys 'R Us or Wal-Mart about promotions or advertising for MGA products.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, created by Brisbois while employed by MGA RELATED TO MGA's marketing of products that compete with Mattel's products, recruitment or attempted recruitment of Mattel's employees, or the theft of Mattel trade secrets or confidential or proprietary information.

# SCHEDULE E

## SUBJECT MATTER ABOUT WHICH PERSON MOST KNOWLEDGEABLE IS TO BE EXAMINED

1. Knowledge of MGA Entertainment Canada's methods and procedures regarding the access, use, reproduction, copying, storage, transmission, transfer, disclosure, retention, destruction, deletion or use of any documents, data and/or information, that were prepared, made, created, generated, assembled or compiled by or for MATTEL and that MGA received, directly or indirectly from Janine Brisbois.

2. Knowledge of MGA Entertainment Canada's methods and procedures regarding the access, use, reproduction, copying, storage, transmission, transfer, disclosure, retention, destruction, deletion or use of any documents, data and/or information regarding MGA Entertainment Canada's advertising, project, sales, customer and strategy information related to any Bratz Product, regardless of whether such information was received directly or indirectly from Janine Brisbois.

# ATTACHMENT A

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Jon D. Corey (Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware Corporation,<br><br>                Plaintiff,<br><br>        v.<br><br>CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,<br><br>                Defendants.<br><br>CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public,<br><br>                Counter-Claimant,<br><br>        v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>                Counter-Defendant. | CASE NO. CV 04-9059 NM (RNBx)<br><br>STIPULATED PROTECTIVE ORDER; AND<br><br>[PROPOSED] ORDER<br><br>[Discovery Matter] |

FILED
CLERK, U.S. DISTRICT COURT
JAN - 4 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

07272/625581.2

PROTECTIVE ORDER

## GOOD CAUSE STATEMENT

Plaintiff Mattel, Inc. ("Mattel"), defendant Carter Bryant, and intervenor-defendant MGA Entertainment, Inc. ("MGA") are parties to the above-captioned litigation (hereinafter, the "Action"). (Mattel, Carter Bryant and MGA Entertainment, Inc. are each referred to herein as a "Party" and collectively are the "Parties.")

In this Action, Mattel has alleged, and defendants dispute, that Bryant worked for and otherwise aided and assisted MGA while defendant was employed by Mattel as a designer, in violation of his contractual and other legal duties to Mattel.

All parties believe that they will or may be required to produce or disclose in this Action, and that nonparties may produce or disclose, information that is trade secret, proprietary, confidential and/or is of a private or personal nature and that, if disclosed in this Action without restriction on its use or further disclosure, may cause disadvantage, harm, damage and loss to the disclosing Party or to the disclosing nonparty.

In addition, the Parties are currently in a competitive relationship in the toy industry, with Mattel and MGA operating as a manufacturers and marketers of dolls, toys and other products and Bryant working at this time as a contractor for a Mattel competitor, MGA, and further anticipate that nonparty competitor information may be produced or disclosed in this Action.

In particular, without prejudice to any Party's right to object to or resist disclosure of such categories of information on relevance or any other grounds, the Parties currently anticipate that categories of such trade secret, proprietary, confidential and/or private documents and other information that may be disclosed in discovery by the Parties and by nonparties will or may include:

(1) Personnel files and other private or confidential employment, contractor or vendor information;

07272/625581.2

-2-

1        (2)  The specific terms of agreements with, and information received
2    from, third parties that a Party is required to disclose only under conditions of
3    confidentiality;

4        (3)  Personal or private financial information, and confidential
5    financial data that is not known generally to the trade or to competitors, including
6    financial data relating to specific sales, cost and profit information for specific
7    products and product lines; and

8        (4)  Business plans and product information that are not known
9    generally to the trade or to competitors, including non-public information relating to
10   product development and design.

11

12       WHEREFORE, believing that good cause exists, the Parties HEREBY
13   STIPULATE that, subject to the Court's approval, the following procedures shall be
14   followed in this Action to facilitate the orderly and efficient discovery of relevant
15   information while minimizing the potential for unauthorized disclosure or use of
16   confidential or proprietary information:

17

18               <u>SCOPE OF THIS ORDER</u>

19

20       1.  This Protective Order shall apply to trade secret, confidential and
21   proprietary information, documents and things that are produced or disclosed in any
22   form during the course of the Action by any Party or any nonparty:

23          (a)  through discovery;

24          (b)  in any pleading, document or other writing; or

25          (c)  in testimony given at a deposition.

26   (The foregoing information, documents and things shall be referred to hereinafter
27   collectively as "Litigation Materials.")

28

-3-

## CONFIDENTIAL AND ATTORNEYS' EYES ONLY INFORMATION

2.      Any Party or nonparty producing or disclosing Litigation Materials in this Action may designate such information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by designating it in the manner set forth in paragraph 3 below.   The designation of Litigation Materials as "CONFIDENTIAL" shall be limited to information which the disclosing Party or nonparty believes in good faith contains, constitutes or reveals confidential design, engineering or development information, confidential commercial information, non-public financial information, confidential or private information about current or former employees, contractors or vendors (including employee, contractor and vendor personnel records), or other information of a confidential, proprietary, private or personal nature.   The designation of information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be limited to trade secrets or other confidential commercial information, including without limitation non-public designs and drawings, which the disclosing Party or nonparty in good faith believes will result in competitive disadvantage or harm if disclosed to another Party to this Action without restriction upon use or further disclosure.   Information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may only be used and disclosed as provided in this Protective Order.

## MANNER OF DESIGNATION OF MATERIALS

3.      A Party or nonparty may designate Litigation Materials as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in the following manner:

(a)      Documents or Things.      "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment may be

1   obtained by typing or stamping "CONFIDENTIAL" or "CONFIDENTIAL --
2   ATTORNEYS' EYES ONLY" on the particular document or thing.

3         (b)   Interrogatory Answers and Responses to Requests for
4   Admissions. In answering any interrogatory or request for admission, or any
5   part thereof, a Party may designate its or his answer as "CONFIDENTIAL" or
6   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by affixing thereto the
7   legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES
8   ONLY." Such "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'
9   EYES ONLY" answers shall be made on separate pages from any other
10   answers or portions thereof that are not designated as "CONFIDENTIAL" or
11   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

12         (c)   Deposition Testimony. Any Party or nonparty giving
13   deposition testimony in this Action may obtain "CONFIDENTIAL" or
14   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment therefor by
15   designating, during the course of that testimony, for which "CONFIDENTIAL"
16   or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment is desired,
17   the testimony that is claimed to be "CONFIDENTIAL" or "CONFIDENTIAL
18   -- ATTORNEYS' EYES ONLY," or alternatively by designating the entire
19   testimony to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'
20   EYES ONLY," subject to a good faith obligation to identify any non-
21   confidential portions of the testimony (and/or any lesser "CONFIDENTIAL"
22   portions in the event that the entire testimony is designated "CONFIDENTIAL
23   -- ATTORNEYS' EYES ONLY") within fourteen (14) calendar days after
24   receipt of the transcript of the testimony. The reporter shall separately
25   transcribe and bind the testimony so designated as "CONFIDENTIAL" and
26   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and shall mark the face
27   of the separate bound transcript containing such testimony with the term
28   "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

1    A Party or nonparty also may make the above-referenced designation of

2    confidentiality in writing and within fourteen (14) calendar days of the receipt

3    by said Party or nonparty of the transcript of said testimony. In that event, said

4    portion of the transcript will be treated as "CONFIDENTIAL" or

5    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" under the provisions of

6    this Protective Order, except that it will not be separately bound. If, during the

7    course of deposition testimony, any Party or nonparty reasonably believes that

8    the answer to a question will result in the disclosure of "CONFIDENTIAL" or

9    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, all persons

10    other than those persons entitled to receive such information pursuant to

11    paragraphs 5 and 6 hereof shall be excluded from the room in which the

12    deposition testimony is given. Unless previously designated as

13    "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY,"

14    all transcripts of deposition testimony and any related exhibits, and all

15    information adduced in deposition, shall, in their entirety, be treated as

16    "CONFIDENTIAL" for a period of fourteen (14) calendar days after receipt of

17    the transcript by counsel for the designating Party or nonparty. The Party or

18    nonparty designating the testimony or information as "CONFIDENTIAL" or

19    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may, within that fourteen

20    (14) calendar day period described above, specifically designate information

21    contained in the transcript(s) and/or exhibit(s) as "CONFIDENTIAL" or

22    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," whether or not previously

23    designated as such, by notifying all Parties in writing of the portions of the

24    transcript or exhibit which contains such information. Each Party shall attach

25    a copy of such written statement to the face page of the transcript or exhibit

26    and to each copy in its or his possession, custody or control. Thereafter, these

27    portions of the transcript or exhibits designated as "CONFIDENTIAL" or

28    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be treated in

accordance with the terms of this Protective Order. In addition, the provisions of Paragraph 3(e) for later designating transcripts or exhibits shall apply after the expiration of the fourteen (14) calendar day period described in this Paragraph 3(c).

(d)     Typing or stamping the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" upon the first page of a collection of Litigation Materials which are bound together shall have the effect of designating such collection in its entirety as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." In the case of disks, tapes, CD-ROMs, DVDs and other tangible storage media or devices, labeling, stamping or marking the outside of such disk, tape, CD-ROM, DVD or other medium or device with the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall have the effect of designating the entire contents of such disk, tape, CD-ROM, DVD or other medium or device, and all data stored thereupon, as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," as the case may be.

(e)     Except as otherwise provided in Paragraph 3(c) of this Protective Order, the receiving Party shall not reveal any information produced for a period of seven (7) calendar days following receipt. Failure to designate a document, thing or other information as CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in accordance with this Protective Order shall not preclude any Party or nonparty desiring to so designate the document, thing or information from so designating thereafter; provided that the Party or nonparty proceeds promptly after discovery of any omission of marking, in good faith marks the document, thing or other information and requests, in writing, that each receiving Party so mark and treat the document, thing or other information in accordance with this Protective Order. Thereafter, the document, thing or other information shall

1   be fully subject to this Protective Order. No Party shall incur liability for any
2   disclosures made prior to notice of such designation, except to the extent that
3   any such disclosures occurred prior to the seven (7) day period described above
4   or prior to such other time periods as are provided by this Protective Order,
5   including without limitation such time periods as are provided in Paragraph
6   3(c) above.

7
8   <u>RESTRICTIONS ON DISCLOSURE OF DESIGNATED MATERIALS</u>
9

10      4.    Any Litigation Materials produced or disclosed in this Action,
11  whether or not designated "CONFIDENTIAL" or "CONFIDENTIAL --
12  ATTORNEYS' EYES ONLY," may only be used by the receiving Party of such
13  information for purposes of litigation and not for any other purpose, including
14  without limitation for any business or trade purpose. As used herein, the term
15  "litigation" shall mean preparation for, participation in and prosecution and defense
16  of any suit, motion, trial, appeal, hearing, review or other judicial proceeding or in
17  connection with any mediation or other alternative dispute resolution procedure that
18  this or any other court may order or that the Parties may agree to.

19      5.    Subject to Paragraph 7 herein, and unless as otherwise ordered by
20  the Court, Litigation Materials designated as "CONFIDENTIAL" shall not be
21  disclosed to any person other than:

22          (a)   the attorneys for the Parties and their partners, shareholders,
23  associates, document clerks and paralegals who are necessary to assist such
24  attorneys;

25          (b)   secretaries, stenographers and other office or clerical
26  personnel employed by said attorneys and who are necessary to assist such
27  attorneys;

28

-8-

PROTECTIVE ORDER

1                (c)     a named Party or officers or employees of a named Party,

2    to the extent deemed necessary by their respective attorneys for purposes

3    assisting in litigation;

4                (d)    the authors, senders, addressees and designated copy

5    recipients of any document or thing which has been designated as

6    "CONFIDENTIAL" information;

7                (e)    such other persons as may be consented to by the Party or

8    nonparty designating such information as "CONFIDENTIAL" information;

9                (f)    outside litigation support vendors, including commercial

10    photocopying vendors, scanning services vendors, coders and keyboard

11    operators;

12               (g)    professional court reporters engaged to transcribe

13    deposition testimony, professional videographers engaged to videotape

14    deposition testimony and translators;

15               (h)    independent outside consultants or experts retained by the

16    attorneys to the extent deemed necessary by said attorneys for purposes of

17    litigation; and

18               (i)    non-party fact witnesses in a deposition, provided, however,

19    that such persons may not retain such "CONFIDENTIAL" information unless

20    otherwise authorized to receive it. If the attendance of a non-party fact witness

21    at a deposition can only be obtained through compulsory process, the witness

22    need not execute an Assurance of Compliance in the form attached as Exhibit

23    A, provided that: (1) the witness acknowledges his obligation to maintain the

24    confidentiality of "CONFIDENTIAL" information under oath; and (2) such

25    "CONFIDENTIAL" information may only be shown to the witness during the

26    deposition.

27

28

1    6.    Subject to paragraph 7 herein, and unless as otherwise ordered by
2  the Court, Litigation Materials designated as "CONFIDENTIAL -- ATTORNEYS'
3  EYES ONLY" shall not be disclosed to any person other than:

4         (a)    the attorneys for the Parties (but not including in-house
5  counsel for the Parties or any attorney who is an officer, director, shareholder
6  or employee of any Party or its corporate affiliates) and their partners,
7  shareholders, associates, document clerks and paralegals who are assigned to
8  and necessary to assist such attorneys. For the purposes of this subparagraph,
9  "affiliate" shall mean any corporate parent or subsidiary of any Party, or any
10  other entity that is under common control with any Party or corporate parent
11  or subsidiary of any Party, or any of their successors or predecessors in
12  interest;

13         (b)    secretaries, stenographers and other office or clerical
14  personnel employed by said attorneys and who assist them with respect to
15  litigation;

16         (c)    the authors, senders, addressees and designated copy
17  recipients of any document or thing which has been designated as
18  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

19         (d)    such other persons as may be consented to by the Party
20  designating such information as "CONFIDENTIAL -- ATTORNEYS' EYES
21  ONLY" information;

22         (e)    outside litigation support vendors, including commercial
23  photocopying vendors, scanning services vendors, coders and keyboard
24  operators;

25         (f)    independent outside consultants or experts retained by the
26  attorneys to the extent deemed necessary by said attorneys for the purposes of
27  litigation; and

28

1     (g) professional court reporters engaged to transcribe

2   deposition testimony, professional videographers engaged to videotape

3   deposition testimony and translators.

4     7. None of the following is bound by or obligated under this Order

5 in any respect and specifically are not bound or obligated to treat information

6 designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

7 ONLY" in any particular manner: The Court hearing this Action (including the Court

8 having jurisdiction of any appeal), Court personnel, court reporters working for the

9 Court, translators working for the Court, or any jury impaneled in this Action.

10     8. Other than those identified in Paragraph 7 above, each person to

11 whom information designated as "CONFIDENTIAL" or "CONFIDENTIAL --

12 ATTORNEYS' EYES ONLY" is disclosed shall be informed of the terms of this

13 Protective Order and agree to be bound by it before disclosure to such persons of any

14 such information. The persons described in Paragraphs 5(f), 5(h), 6(e) and 6(f) shall

15 not have access to either "CONFIDENTIAL" or "CONFIDENTIAL --

16 ATTORNEYS' EYES ONLY" information, as the case may be, until they have

17 certified that they have read this Protective Order and have manifested their assent

18 to be bound thereby by signing a copy of the Assurance of Compliance attached

19 hereto as Exhibit A. Once a person has executed such an Assurance of Compliance,

20 it shall not be necessary for that person to sign a separate Assurance of Compliance

21 each time that person is subsequently given access to confidential material. Any

22 person who signed an Assurance of Compliance in connection with the Stipulation

23 for Protection of Confidential Information and Protective Order filed September 16,

24 2004 in <u>Mattel Inc. v. Bryant</u>, Case No. BC 314398, pending in Los Angeles County

25 Superior Court, need not re-sign the Assurance of Compliance attached hereto but

26 shall, by virtue of his or her prior signature, be deemed to have signed the attached

27 Assurance of Compliance.

28

1          9.     The failure of any Party to object to the designation of
2 information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES
3 ONLY" shall not be deemed an admission that such information qualifies for such
4 designation.

5          10.    If any Party wishes to have any information, document or
6 testimony marked "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'
7 EYES ONLY" by another Party or nonparty reclassified as non-confidential, or from
8 "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" to "CONFIDENTIAL," the
9 Parties and/or relevant nonparty or nonparties will confer and try to reach agreement.
10 If the Parties and/or relevant nonparty or nonparties cannot reach agreement, either
11 Party and/or the relevant nonparty or nonparties may apply to the Court to resolve the
12 matter in accordance with the Local Rules. Unless and until this Court enters an
13 Order changing the designation of the information, it shall be afforded the treatment
14 prescribed in this Protective Order for its designation.

15          11.    Nothing contained in this Protective Order shall restrict or prevent
16 any Party or nonparty from disclosing or otherwise using its or his own Litigation
17 Materials which that Party or nonparty produces or discloses in this action.

18          12.    The inadvertent or unintentional disclosure by a producing Party
19 or nonparty of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES
20 ONLY" Litigation Materials during the course of this litigation, regardless of whether
21 the information was so designated at the time of disclosure, shall not be deemed a
22 waiver in whole or in part of a Party's or nonparty's claim of confidentiality, either
23 as to the specific information disclosed or as to any other information relating thereto
24 or on the same or related subject matter. Counsel for the Parties and/or nonparties
25 shall in any event, to the extent possible, upon discovery of inadvertent error,
26 cooperate to restore the confidentiality of the "CONFIDENTIAL" or
27 "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material that was inadvertently
28 or unintentionally disclosed.

1     13.    If a Party or nonparty through inadvertence produces or provides
2  discovery that it, he or she believes is subject to a claim of attorney-client privilege
3  or work product immunity, the producing Party or nonparty may give written notice
4  to the receiving Party that the document is subject to a claim of attorney-client
5  privilege or work product immunity and request that the document be returned to the
6  producing Party or nonparty.  The receiving Party shall promptly return to the
7  producing Party or nonparty the inadvertedly disclosed document and all copies of
8  such document.  Return of the document by the receiving Party shall not constitute
9  an admission or concession, or permit any inference, that the returned document is,
10  in fact, properly subject to a claim of attorney-client privilege or work product
11  immunity, nor shall it foreclose any Party from moving the Court for an Order that
12  such document has been improperly designated or should be producible for reasons
13  other than a waiver caused by the inadvertent production.

14     14.    Nothing contained in this Protective Order shall affect the right
15  of any Party or nonparty to make any objection, claim any privilege, or otherwise
16  contest any request for production of documents, interrogatory, request for admission,
17  or question at a deposition or to seek further relief or protective orders from the Court
18  in accordance with the <u>Federal Rules of Civil Procedure</u> and the <u>Local Rules</u>.
19  Nothing in this Protective Order shall constitute an admission or waiver of any claim
20  or defense by any Party.

21

22              <u>FILING AND USE IN COURT OF DESIGNATED MATERIALS</u>

23

24     15.    Except when the filing under seal is otherwise authorized by
25  statute or federal rule, the Parties shall seek the Court's prior approval for the filing
26  under seal of pleadings and other documents containing properly designated
27  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"
28  information in accordance with the procedures set forth in <u>Local Rule</u> 79-5.1, as such

PROTECTIVE ORDER

1  Rule may be amended from time to time.  Prior to the time that a Party receiving the
2  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"
3  information from any other Party files with the Court an application and the other
4  materials required by Local Rule 79-5.1, as such Rule may be amended from time to
5  time, to seal the producing Party's confidential information, the receiving Party shall
6  consult with the producing Party's attorney to determine whether the producing Party
7  will re-designate the previously designated confidential information so as to avoid the
8  need for the request to file such information under the seal.  Upon the default of a
9  Party to seek the Court's approval to file a document containing "CONFIDENTIAL"
10 or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information under seal, any
11 Party may subsequently seek the approval of the Court to file that document under
12 seal, in accordance with the procedures set forth in Local Rule 79-5.1, as such Rule
13 may be amended from time to time.
14
15            THIRD-PARTY REQUEST FOR DESIGNATED MATERIALS
16
17         16.    If any Party or nonparty receives a subpoena or document request
18 from a third party which purports to require the production of materials in that Party's
19 possession which have previously been designated as "CONFIDENTIAL" or
20 "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by any other Party or nonparty,
21 the Party or nonparty receiving such subpoena or document request (a) shall object
22 and refuse to produce documents absent a Court Order or the consent of the Party or
23 nonparty who designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL
24 -- ATTORNEYS' EYES ONLY", (b) immediately notify the Party or nonparty who
25 designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL --
26 ATTORNEYS' EYES ONLY" of the receipt of said subpoena or document request,
27 and (c) shall not oppose any effort by the Party or nonparty which designated the
28 material as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

                                                     PROTECTIVE ORDER

1   ONLY" to quash the subpoena or obtain a protective order limiting discovery of such
2   material.

3
### DISCOVERY FROM NONPARTIES
5

6          17.    Discovery of nonparties may involve receipt of information,
7   documents, things or testimony which include or contain "CONFIDENTIAL" or
8   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" materials or information.  A
9   nonparty producing such material in this case may designate as "CONFIDENTIAL"
10  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" some or all of the material it
11  produces in the same manner provided for in this Protective Order with respect to
12  material furnished by or on behalf of the Parties.  Any Party may also designate as
13  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any
14  materials or information produced by a nonparty that constitute "CONFIDENTIAL"
15  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material of the designating
16  Party under Paragraph 2 of this Protective Order, regardless of whether the producing
17  nonparty has also so designated.  In addition, a nonparty may also designate as
18  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any
19  materials or information produced by a Party that constitute "CONFIDENTIAL" or
20  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material or information of such
21  nonparty under Paragraph 2 of this Protective Order, regardless of whether the
22  producing Party has also so designated.  In either such an event, the designation
23  providing for the greater level of protection for the material information shall control,
24  subject to Paragraph 10 of this Protective Order.  Nonparty materials designated
25  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by a
26  nonparty or Party shall be governed by the terms of this Protective Order.

27
28

07272/625581.2                              -15-

1

2

## CONCLUSION OF LITIGATION

3        18.    Within thirty (30) days of the conclusion of this Action, including
4   any post-trial motions or appellate proceedings relating thereto, all documents,
5   transcripts or other things or information designated as "CONFIDENTIAL" or
6   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," and all copies thereof, shall be
7   returned to the attorneys for the Party or nonparty furnishing the same, or shall be
8   destroyed by the attorneys having such documents in their possession. In addition,
9   all summaries or other materials containing or disclosing information contained in
10  such documents, answers, transcripts or other things shall be destroyed; provided,
11  however, that outside counsel for each Party may retain one complete and unredacted
12  set of pleadings and papers filed with the Court or served on the other Parties. Such
13  retained copy of pleadings and papers shall be maintained in a file accessible only to
14  outside counsel bound by this Protective Order. This Protective Order shall continue
15  to be binding after the conclusion of this Action.

16

17

## AMENDMENT OF THIS AGREEMENT

18

19       19.    The provisions of this Stipulation and Protective Order may
20  be  modified at any time by stipulation of the Parties as approved by Order of the
21  Court. In addition, a Party may at any time apply to the Court for modification of this

22

23

24

25

26

27

28

PROTECTIVE ORDER

1  Stipulation and Protective Order pursuant to a motion brought in accordance with the

2  rules of the Court.

3

4  **IT IS SO STIPULATED.**

5

6  DATED: December 22, 2004          QUINN EMANUEL URQUHART
                                     OLIVER & HEDGES, LLP
7

8
                                     By_____
9                                       Jon Corey
                                        Attorneys for Plaintiff
10                                      Mattel, Inc.

11
    DATED: December ___, 2004         LITTLER MENDELSON
12

13
                                     By_____
14                                      Douglas A. Wickham
                                        Attorneys for Defendant
15                                      Carter Bryant

16  DATED: December ___, 2004         O'MELVENY & MEYERS, LLP

17
                                     By_____
18                                      Diana M. Torres
                                        Attorneys for Interventor-Defendant
19                                      MGA Entertainment, Inc.

20

21
    **IT IS SO ORDERED.**
22

23
    DATED: ___1/4/05___              ROBERT N. BLOCK
24                                   THE HONORABLE ROBERT N. BLOCK
                                     United States Magistrate Judge
25

26

27

28

07272/625581.2                        -17-
                                                        PROTECTIVE ORDER