# NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)   **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of February 4, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

✓ **ADD NEW NOTICE PARTY**
(If sending by fax, mailing address must also be provided)

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*: P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

*JUDGE / MAGISTRATE JUDGE (list below):*

Initials of Deputy Clerk  jh

EXHIBIT  R

PAGE  250

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)    **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of February 4, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

✓ ***ADD NEW NOTICE PARTY***
*(if sending by fax, mailing address must also be provided)*

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address *(include suite or floor)*:  Two Embarcadero Center, Suite 1500, San Francisco, CA  94111

*E-mail:

*Fax No.:

* For CIVIL cases only

| ***JUDGE / MAGISTRATE JUDGE (list below):*** |
|---|
| |
| |
| |
| |

**Initials of Deputy Clerk**  jh

EXHIBIT  R

PAGE  251

# EXHIBIT S

1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
3 | Los Angeles, CA  90071
Tel.: (213) 687-5000/Fax: (213) 687-5600
4 |
KENNETH PLEVAN (admitted *pro hac vice*)
5 | (kplevan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | Four Times Square
New York, NY  10046
7 | Tel.: (212) 735-3000 / Fax: (212) 735-2000

8 | Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. DE C.V., and Isaac Larian
9 |

10 |                     UNITED STATED DISTRICT COURT

11 |                     CENTRAL DISTRICT OF CALIFORNIA

12 |

13 |

14 | CARTER BRYANT, an individual,        )   CASE NO. CV 04-9049 SGL (RNBx)

15 |                    Plaintiff,        )   MGA'S PRELIMINARY RESPONSE
                                         )   TO MATTEL'S MOTION FOR
16 |          v.                         )   LETTERS OF REQUEST
                                         )
17 | MATTEL, INC., a Delaware            )
     corporation,                       )
18 |                                     )
                    Defendant.          )
19 |                                     )
     _____        )
20 |                                     )
     AND CONSOLIDATED ACTIONS           )
21 |                                     )

22 |

23 |

24 |

25 |

26 |

27 |

28 |
                              2·15·08
─────────────────────────────────────────────────────────────
       MGA'S PRELIMINARY RESPONSE TO MATTEL'S MOTION FOR LETTERS OF REQUEST

EXHIBIT ____S____

PAGE ____252____

On January 28, 2008, the final day of Phase I discovery, Mattel filed a motion for issuance of Letters of Request for International Judicial Assistance to allow it to take the depositions of two non-parties (Jeanine Brisbois and MGA Canada) in Canada. Jeanine Brisbois is a former Mattel employee who went to work for MGA Canada in 2005. In its motion, Mattel identifies the witnesses as relevant to its Phase 2 RICO, conspiracy, and misappropriation of trade secret counterclaims. Mattel does not contend that the depositions are relevant to any Phase 1 issues.

In its February 4, 2008 Order, the Court stayed all Phase 2 discovery, including motions relating to Phase 2 discovery, until after the conclusion of Phase 1 of the trial. In light of the Court's ruling, MGA will respond to Mattel's motion at the appropriate time after the conclusion of the Phase 1 trial. MGA hereby reserves all of its rights in connection with Mattel's motion, including whether the motion should have been directed to the Discovery Master.

DATED: February 15, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _Thomas J. Nolan_____
    Thomas J. Nolan
    Attorney for MGA Entertainment, Inc.

---

MGA'S PRELIMINARY RESPONSE TO MATTEL'S MOTION FOR LETTERS OF REQUEST
1

EXHIBIT ___5___

PAGE ___253___

# EXHIBIT T

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date: September 23, 2008

Title:    MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=========================================================================
=
PRESENT: HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

         Jim Holmes                              None Present
         Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                            None Present

PROCEEDINGS:     ORDER RE PENDING MOTIONS AS REPORTED ON THE COURT'S
                 DOCKET (IN CHAMBERS)

        A review of the Court's docket, which indicates over 4,200 filings in this case, reveals that
hundreds of motions appear to be pending resolution by the Court that have in fact already been
resolved.

        Currently pending before the Court are the parties' motions for judgment as a matter of law,
docket #4078, #4080, # 4264, and #4265.  Other discovery motions have been reserved or
withdrawn by the parties pending the reopening of Phase 2 discovery.

        In order to effectively docket, consider, and resolve any future motions that may be filed by
the parties, the Court **ORDERS** that all pending motions, other than the above-referenced motions
for judgment as a matter of law, and to the extent the Court has not already ruled upon those
motions elsewhere in the record, be **DENIED WITHOUT PREJUDICE**.  The Clerk is instructed to
make any docket adjustments necessary to reflect this Order.  This Order deals with mere internal
housekeeping issues and is not meant to affect the substantive rights of any party.

        **IT IS SO ORDERED.**

MINUTES FORM 90                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                        1

EXHIBIT ____ 1 ____
PAGE ____ 254 ____

# EXHIBIT U

CALENDARED

**RECEIVED**

JAN 0 8 2009

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                    Date: January 6, 2009

Title:    MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

             James Holmes                      None Present
             Courtroom Deputy Clerk            Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                         None Present

PROCEEDINGS:    ORDER APPOINTING DISCOVERY MASTER

    As in Phase 1 of this case, the Court intends to appoint a Discovery Master to govern any discovery disputes that might arise in Phase 2 of this case.  The appointment of the Discovery Master was made at the joint request of the parties in this case.  <u>See</u> Stipulation for Appointment of a Discovery Master and Order, December 6, 2006.

    Pursuant to Federal Rule of Civil Procedure 53(a)(1)(C), the Court continues to believe that a Discovery Master, as opposed to the assigned Magistrate Judge, is necessary to address what MGA has aptly described to the Court as "the massive administrative burdens in time and labor necessary to deal with the enormous complexities, both legal and practical, of the issues in Phase 2" and the "sheer volume of complex civil discovery disputes likely to arise in Phase 2."  Based on the Court's experience in this case, there is no question that a Discovery Master is needed to "effectively and timely" address the anticipated discovery matters in this case.

    The Court previously submitted to all counsel of record the names of eight attorneys for consideration by the parties and invited counsel to submit, in camera, any objections to those attorneys to serve as a Discovery Master (or as a Special Master to oversee the implementation of the permanent injunction, if needed).  The Court has carefully considered the objections submitted.  Two of the individuals named were not the subject of an objection by any party.  Of those two, the Court selects Robert C. O'Brien of Arent, Fox to serve as Discovery Master for Phase 2 of this

MINUTES FORM 90                                      Initials of Deputy Clerk: jh
CIVIL -- GEN                          1

01-06

EXHIBIT ____ 255

PAGE ____ u

case.

The Discovery Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006, the terms and conditions of which were previously agreed to by the parties. The stay on discovery for Phase 2 of this case is hereby VACATED.

Notwithstanding the parties' stated lack of objection to the appointment of Mr. O'Brien as Discovery Master, the Discovery Master is directed to promptly disclose to counsel for all parties any potential grounds for conflict of interest or disqualification, and the parties shall, within three days of receipt of said disclosure, submit any objection to the Court in camera. A failure to object will be deemed by the Court as a waiver of any objections and consent to Mr. O'Brien to serve as Discovery Master. The Discovery Master is further directed to contact counsel for all parties and resolve any and all outstanding discovery motions as expeditiously as possible.

IT IS SO ORDERED.

EXHIBIT ___U___

PAGE ___256___

# EXHIBIT V

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 7, 2008

**VIA MESSENGER**

Thomas Nolan, Esq.
Jason Russell, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Suite 3400
Los Angeles, CA 90071

Mark E. Overland, Esq.
Alexander H. Cote, Esq.
Overland Borenstein Scheper & Kim LLP
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071-3144

Re:   Mattel, Inc. v. Carter Bryant, et al.

Dear Counsel:

I have enclosed with this letter notices for the depositions of Mr. Vargas, Ms. Trueba and Ms. Salemnia, which depositions the Court granted Mattel leave to take. The dates in the notices are convenient to counsel for Mattel. If a date in the same time frame as the noticed date may be more convenient to the witnesses, please let me know and we expect to be able to accommodate the witnesses, within reason.

Separately, Mattel has been granted leave to take the deposition of Jeanine Brisbois. Please let me know whether MGA is willing to produce her for deposition in the United States, and if so, when.

If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon Corey

Enclosures

EXHIBIT ___✓___

PAGE ___257___

07209/2753516.1

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

# EXHIBIT W

CONFORMED COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 90378)
2   (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
    Duane R. Lyons (Bar No. 125091)
5   (duanelyons@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx)
12 |             Plaintiff, | Consolidated With Case No. 04-9059 and Case No. 05-2727
13 |         v. | MATTEL, INC.'S SECOND AMENDED ANSWER IN CASE NO. 05-2727 AND COUNTERCLAIMS FOR:
14 | | 
15 | MATTEL, INC., a Delaware corporation, | 1.  COPYRIGHT INFRINGEMENT;
16 |             Defendant. | 2.  VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT;
17 | | 
18 | MGA ENTERTAINMENT, INC. a California corporation, | 3.  CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT;
19 | | 
20 |             Plaintiff, | 4.  MISAPPROPRIATION OF TRADE SECRETS;
21 |         v. | 5.  BREACH OF CONTRACT;
22 | MATTEL, INC., a Delaware corporation, and DOES 1-10, | 6.  INTENTIONAL INTERFERENCE WITH CONTRACT;
23 |             Defendants. | 7.  BREACH OF FIDUCIARY DUTY;
   | | 8.  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY;
24 | | 9.  BREACH OF DUTY OF LOYALTY;
25 | EXHIBIT ____ W | 
26 | | **PUBLIC REDACTED VERSION**
27 | PAGE ____ 258 | **Volume I**
28 | | 

2154363.2

C7 12·c7

FILED

2009 JAN 12  PM 3:02

| | |
|---|---|
| 1 | MATTEL, INC., a Delaware corporation, |
| 2 | |
| 3 | Counter-claimant, |
| | v. |
| 4 | |
| 5 | MGA ENTERTAINMENT, INC., a California corporation; ISAAC LARIAN, an individual; CARTER |
| 6 | BRYANT, an individual; MGA ENTERTAINMENT (HK) LIMITED, |
| 7 | a Hong Kong Special Administrative Region business entity; MGAE DE |
| 8 | MÉXICO, S.R.L. DE C.V., a Mexico business entity; CARLOS |
| 9 | GUSTAVO MACHADO GOMEZ, an individual; and DOES 4 through 10, |
| 10 | |
| 11 | Counter-defendants. |
| 12 | AND CONSOLIDATED CASES |

10. AIDING AND ABETTING BREACH OF DUTY OF LOYALTY;
11. CONVERSION;
12. UNFAIR COMPETITION; AND
13. DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

EXHIBIT ___W___

PAGE ___059___

-2-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

21S4363.2

1          1.     That the Complaint be dismissed with prejudice;

2          2.     That plaintiff take nothing by reason of the Complaint against

3   Mattel and that judgment be entered in Mattel's favor;

4          3.     That Mattel recover its costs and attorneys' fees; and

5          4.     That this Court award such other and further relief as it deems

6   just and proper.

7

8                              **COUNTERCLAIMS**

9          Pursuant to the Court's Orders of January 12, 2007 and June 27, 2007,

10  and incorporating its [Proposed] Amended Complaint dated November 19, 2006,

11  Mattel, Inc. alleges as follows:

12                          **Preliminary Statement**

13         1.     For years MGA Entertainment, Inc. has engaged in a pattern of

14  stealing and using Mattel, Inc.'s property and trade secrets.  MGA's use of the

15  stolen property and trade secrets caused and continues to cause significant harm to

16  Mattel.  MGA first stole "Bratz," a fashion doll, from Mattel, and then continued

17  stealing Mattel's confidential and proprietary information to fuel MGA's growth.

18         2.     Carter Bryant conceived, created and developed Bratz designs

19  while he was employed by Mattel as a doll designer.  He concealed his Bratz work

20  from Mattel and wrongfully sold Bratz to MGA while he was a Mattel employee.

21  As MGA knows, Mattel owns the Bratz designs that Bryant made.  As the rightful

22  owner of those Bratz designs, Mattel has registered copyrights for them and seeks

23  damages arising from MGA's repeated infringement of those copyrights.

24         3.     Emboldened by the success of its illegal conduct, MGA has

25  repeated—and even expanded—its pattern of theft on numerous occasions.  For

26  example, in or about 2004, MGA decided to expand into Mexico.  To do so, and

27  operating from its Southern California offices, MGA hired away three key Mattel

28  employees in Mexico, who, on their way out, stole virtually every category of

2154363.2

-29-

EXHIBIT   W

PAGE   260

1 | Mattel's sensitive and trade secret business plans and information for the Mexican
2 | market, as well as a significant quantity of sensitive and trade secret information
3 | for Mattel's U.S. and worldwide businesses, and took them to MGA. Armed with
4 | Mattel's confidential business plans and methods, MGA claimed to have increased
5 | its market share in Mexico alone by 90% in a single year.

6 |     4.   In 2005, MGA needed help in Canada. So MGA, again
7 | operating from its Southern California headquarters, hired Janine Brisbois from
8 | Mattel. At that time, Ms. Brisbois was responsible for Mattel's account with Toys
9 | 'R Us ("TRU") and Wal-Mart. MGA gave her responsibility for those same
10 | accounts, and she took from Mattel documents containing proprietary advertising,
11 | project, sales, customer and strategy information for not only Canada, but for the
12 | United States. Eliminating any doubt that MGA then proceeded to use those stolen
13 | materials, Brisbois subsequently accessed and modified certain of those Mattel
14 | documents while employed by MGA.

15 |     5.   These are not the only instances of such misconduct, which
16 | MGA orchestrated and carried out from its headquarters in this District. Counter-
17 | defendants have engaged in an ongoing, widespread pattern of illegal acts,
18 | consisting of inducing Mattel employees to steal Mattel's confidential information
19 | or other property and take it with them to MGA to further MGA's business interests
20 | and to harm Mattel.

21 | **Jurisdiction**
22 |     6.   This Court has federal question jurisdiction over this action
23 | pursuant to 28 U.S.C. §§ 1331, 17 U.S.C. §§ 101 *et seq.*, and 18 U.S.C. § 1964(c).
24 | This Court has supplemental jurisdiction over Mattel's state law claims pursuant to
25 | 28 U.S.C. § 1367.

26 | **Venue**
27 |     7.   Venue is proper in this District pursuant to 28 U.S.C.
28 | §§ 1391(b)-(d), 1391(f) and 1400(a) and 18 U.S.C. § 1965.

EXHIBIT    W

PAGE   261

-30-

**Parties**

8.     Mattel is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in El Segundo, California.

9.     Counter-defendant MGA Entertainment, Inc. ("MGA") is a corporation organized and existing under the laws of the State of California, with its principal place of business in Van Nuys, California.  Mattel is informed and believes, and on that basis alleges, that ABC International Traders, Inc. is a predecessor corporation to MGA and that until September 16, 2002, MGA was incorporated and known as ABC International Traders, Inc.  Upon the filing of the Complaint, Mattel, being ignorant of the nature, extent and scope of MGA Entertainment, Inc.'s involvement and complicity in the conduct alleged therein and having designated MGA Entertainment, Inc. in the Complaint as Doe 1 and having discovered its involvement and complicity, Mattel hereby amends its Complaint by substituting MGA Entertainment, Inc. for the fictitious Doe name Doe 1.

10.     Counter-defendant Carter Bryant ("Bryant") is an individual who formerly was employed by Mattel and has worked for and continues to work as a contactor for MGA.  Mr. Bryant currently resides in the State of Missouri.

11.     Counter-defendant MGA Entertainment (HK) Limited is a business entity organized and existing under the laws of the Hong Kong Special Administrative Region, with its principal place of business in Hong Kong.  Upon the filing of the Complaint, Mattel, being ignorant of the nature, extent and scope of involvement and complicity of MGA Entertainment (HK) Limited in the conduct alleged therein and having designated MGA Entertainment (HK) Limited in the Complaint as Doe 2 and having discovered its involvement and complicity, Mattel hereby amends its Complaint by substituting MGA Entertainment (HK) Limited for the fictitious Doe name Doe 2.

EXHIBIT ____W____

PAGE ____262____

SECOND AMENDED ANSWER AND COUNTERCLAIMS

21543363.2

12.   Counter-defendant MGAE de Mexico, S.R.L. de C.V. ("MGA de Mexico") is a business entity organized and existing under the laws of Mexico, with its principal place of business in Mexico City, Mexico.

13.   Mattel is informed and believes, and on that basis alleges, that Counter-defendant Larian is the President and CEO of MGA and an individual residing in the County of Los Angeles.   Upon the filing of the Complaint, Mattel, being ignorant of the nature, extent and scope of involvement and complicity of Larian in the conduct alleged therein and having designated Larian in the Complaint as Doe 3 and having discovered his involvement and complicity, Mattel hereby amends its Complaint by substituting Larian for the fictitious Doe name Doe 3.

14.   Counter-defendant Carlos Gustavo Machado Gomez is an individual who is employed by Counter-defendant MGA and who, on information and belief, currently resides in the County of Los Angeles.

15.   The true names and capacities of Counter-defendants sued herein as DOES 4 through 10, inclusive, are unknown to Mattel, which therefore sues said Counter-defendants by such fictitious names. Mattel will amend its pleadings to allege their true names and capacities when the same are ascertained.

### Factual Background

## I.   MATTEL

16.   Mattel manufactures and markets toys, games, dolls and other consumer products. Harold Mattson and Eliot and Ruth Handler founded Mattel in 1945. The name of the company was created by incorporating the names of two of its founders, "MATT-son" and "EL-liot." Originating from the Handlers' garage in Southern California, the company greatly expanded its operations following World War II. During the next several decades, Mattel became famous for producing high-quality products at reasonable prices.

EXHIBIT   $\mathcal{W}$

PAGE   263

SECOND AMENDED ANSWER AND COUNTERCLAIMS

17.    Critical to Mattel's success is its ability to design and develop new products.  Mattel invests millions of dollars in product design and development and introduces hundreds of new products each year.  Mattel maintains a 180,000 square-foot design center in El Segundo, California, that houses hundreds of designers, sculptors, painters and other artists, who work exclusively to create the products on which Mattel's business depends.

18.    Mattel also has invested substantial amounts over many years to develop its business methods and practices, including, without limitation, its marketing and advertising research, plans, methods and processes; its business research and forecasts; its costs, budgets, pricing, credit terms, deal terms and finances; its manufacturing, distribution, and sales methods and processes; and its inventory methods and processes.  These represent a material part of the intellectual infrastructure of Mattel and are highly valuable.

## II.    MGA ENTERTAINMENT

19.    MGA is also a toy manufacturer.  MGA began as a consumer electronics business, but expanded into the toy business with licenses to sell handheld electronic games.  By approximately late 1999 or early 2000, MGA developed a strategy to expand its business and compete directly with Mattel by launching a fashion doll line, so it stole a fashion doll that was owned by Mattel – "Bratz."

20.    MGA intentionally stole not just specific Mattel property, such as Bratz designs, prototypes and related materials, but also a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure.  MGA's rapid growth was not organic, but rather was based upon its theft of Bratz.  As a result, MGA lacked an appropriate intellectual infrastructure for a company of its size and it became increasingly difficult to manage.  To deal with these problems, as detailed below, time and time again MGA simply stole Mattel's proprietary business methods, practices and information.  This not only

SECOND AMENDED ANSWER AND COUNTERCLAIMS

21544363.2

EXHIBIT W
PAGE 264

1  allowed MGA to avoid expending time, money and effort necessary to build a

2  legitimate business, but also allowed MGA to unfairly compete against Mattel by

3  taking Mattel's playbook.

4  **III.  MGA STEALS A NEW LINE OF FASHION DOLLS FROM MATTEL**

5      21.  Carter Bryant is a former Mattel employee.  Bryant joined Mattel

6  in September 1995, where he worked in Mattel's Design Center as a BARBIE

7  product designer.  In or about April 1998, Bryant resigned his position with Mattel

8  and moved to Missouri to live with his parents.  Late in 1998, Bryant applied to

9  Mattel to be rehired.  On January 4, 1999, he began working at Mattel in Mattel's

10  Design Center, again as a product designer, for Mattel's BARBIE collectibles line.

11      22.  Upon his return to Mattel in January 1999, Bryant executed an

12  Employee Confidential Information and Inventions Agreement (the "Employment

13  Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

14      23.  Pursuant to his Employment Agreement and as a condition of

15  and in consideration for his employment, Bryant agreed, among other things, that

16  he held a position of trust with Mattel, that the designs and inventions he created

17  during his Mattel employment (with certain exceptions not relevant here) were

18  owned by Mattel, and that he would be loyal to the company by agreeing not to

19  assist or work for any competitor of Mattel while he was employed by Mattel.

20      24.  On January 4, 1999, Bryant also executed Mattel's Conflict of

21  Interest Questionnaire (the "Conflict Questionnaire").  Among other things, Bryant

22  certified in the Conflict Questionnaire that, other than as disclosed, he had not

23  worked for any competitor of Mattel in the prior twelve months and had not

24  engaged in any business venture or transaction involving a Mattel competitor that

25  could be construed as a conflict of interest.  Bryant understood what the Conflict

26  Questionnaire required because, among other things, he disclosed on it the

27  freelance work he had performed while in Missouri for Ashton-Drake, which is

28  EXHIBIT _____ W _____

PAGE _____ 265 _____

-34-

1  unrelated to the conduct alleged herein. A true and correct copy of the Conflict

2  Questionnaire executed by Bryant is attached hereto as Exhibit B.

3    25. Pursuant to the Conflict Questionnaire, Bryant also agreed that

4  he would immediately notify his supervisor of any change in his situation that

5  would cause him to change any of the foregoing certifications. Despite this

6  obligation, at no time did Bryant disclose to Mattel that he was engaging in any

7  business venture or transaction with MGA or any other Mattel competitor.

8    26. More specifically, while Bryant was employed by Mattel, Bryant

9  and other Counter-defendants misappropriated and misused Mattel property and

10  Mattel resources for the benefit of Bryant and MGA. Such acts included, but are

11  not limited to, the following:

12    a. using his exposure to Mattel development programs to

13  create the concept, design and name of Bratz;

14    b. using Mattel resources, and while employed by Mattel,

15  Bryant worked by himself and with other Mattel employees and contractors to

16  design and develop Bratz, including without limitation by creating drawings and

17  three-dimensional models of Bratz dolls, and fashion designs for the dolls'

18  associated clothing and accessories; and

19    c. using Mattel resources, and while employed by Mattel,

20  Bryant took steps to assist MGA to produce Bratz dolls.

21    27. During the time that he was employed by Mattel and thereafter,

22  Bryant concealed these actions from Mattel, including by failing to notify his

23  supervisor of the conflict of interest he created when he began working on MGA's

24  behalf and when he began receiving payments from MGA. Bryant additionally

25  enlisted other Mattel employees to perform work on Bratz during the time he was

26  employed by Mattel and, by all indications, in at least some cases led them to

27  believe that they were performing work on a project for Mattel.

28

EXHIBIT ___W___

-35- PAGE ___266___

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

28.    Bryant also made affirmative misrepresentations to Mattel management and employees immediately before his departure from Mattel on October 20, 2000.  For example, during his last few weeks at Mattel, Bryant told his co-workers and supervisors that he was going to leave Mattel for "non-competitive" pursuits.  Bryant's representations to his supervisors and his co-workers were false.  Bryant knew at the time that those representations were false and made those false statements to conceal from Mattel the fact that he was already working with MGA and that he had contracted with MGA to assign Bratz works to MGA and to provide design and development services to MGA, a Mattel competitor.

29.    As a result of the efforts of Bryant and other Mattel employees working on Bratz (which were done without Mattel's knowledge), the Bratz dolls had been designed and were far along in development during the time that Bryant was employed by Mattel and prior to the time that Bryant left Mattel on October 20, 2000.  Not only did Bryant create and develop designs for the dolls as well as other aspects of the products such as their fashion accessories during the time he was employed by Mattel, but MGA showed Bratz prototypes and/or product to both focus groups and retailers in November 2000, less than three weeks after Bryant left Mattel.  Bryant, Larian and others at MGA arranged these meetings while Bryant was still employed by Mattel.

30.    Bryant and MGA employees also repeatedly and continuously communicated with employees of MGA Entertainment (HK) Limited on subjects such as design and manufacturing of Bratz.  On information and belief, at all material times, MGA Entertainment (HK) Limited has maintained regular and continuous contacts with persons in the County of Los Angeles; it regularly has shipped products that it manufactures, or that are manufactured for it, to the County of Los Angeles; and such products have been distributed to retailers and sold to consumers in the County of Los Angeles.    EXHIBIT ___W___

2154363.2

-36-    PAGE __267__

SECOND AMENDED ANSWER AND COUNTERCLAIMS

31.   Bratz also were shown to retailers at the Hong Kong Toy Fair in
January 2001.  By early 2001, only a few months after Bryant resigned from
Mattel, MGA began having the Bratz fashion doll line and accessories
manufactured and then, shortly thereafter, began selling them at retail.

32.   Since 2001, MGA has distributed and sold Bratz and Bratz-
related products throughout the world.  Mattel is informed and believes that MGA
also licenses Bratz to third parties.  Mattel is also informed and believes that MGA
derives annual revenue from its sales and licenses of Bratz in excess of $500
million.  Mattel is further informed and believes that MGA and Bryant claim
current ownership of Bratz, and all copyrights and copyright registrations attendant
thereto.  MGA continues to market, sell and license Bratz and has expressed an
intention to continue to do so.

33.   Mattel is informed and believes that MGA and Larian
encouraged, aided and financed Bryant to develop Bratz, knowing full well that
Bryant was still employed by Mattel at the time and that by performing such work,
including design-related work, for his own benefit and/or the benefit of MGA,
Bryant would be, and was, in breach of his contractual, statutory and common law
duties to Mattel.  Mattel is also informed and believes that MGA proceeded to aid
and encourage Bryant to develop Bratz with the goal of obtaining a valuable
fashion doll line that would be commercially successful in the competitive, multi-
billion dollar market for fashion dolls.

34.   Pursuant to Bryant's contract with Mattel, among other things,
Mattel is the true owner of Bratz designs and works, including those specifically
that were conceived, created or reduced to practice during Bryant's Mattel
employment as well as all designs and works that are or have been derived
therefrom.  Counter-defendants' continued use, sale, distribution and licensing of
Bratz thus infringes upon Mattel's rights, injures Mattel and unlawfully enriches the
Counter-defendants.

EXHIBIT ___V___

-37-     PAGE __268__

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

35.   Bryant and MGA deliberately and intentionally concealed facts sufficient for Mattel to suspect or to know that it was the true owner of Bratz. Their acts of concealment include, but are not limited to, concealing the fact that Bryant conceived, created, designed and developed Bratz while employed by Mattel, including by tampering with and defacing documents which showed that, in fact, Bryant was a Mattel employee while he was working for and with MGA; concealing the fact that Bryant worked with and assisted MGA during the time Bryant was employed by Mattel and was compensated for that assistance; concealing that Bryant was providing consulting services to MGA; concealing Bryant's role in Bratz by falsely claiming that Larian and others were the creators of Bratz; and concealing the fact that Mattel was the true owner of Bratz by, among other things, filing fraudulent registrations and/or amendments to registrations with the United States Copyright Office claiming MGA as the author of Bratz as a work for hire and altering relevant dates on such documents to further obscure the true facts of when the works were created.

36.   Because of Bryant's and MGA's acts of concealment and Bryant's misrepresentations to Mattel, Mattel had no reason to suspect that Bryant had worked with MGA, or assisted MGA, while he still employed by Mattel until approximately November 24, 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's agreement with MGA which showed that the date of Bryant's agreement with MGA predated Bryant's departure from Mattel. It was then, as a result, that Mattel learned for the first time that Bryant had secretly aided, assisted and worked for and with MGA while employed at Mattel and in violation of his Mattel Employment Agreement. Specifically, Bryant's agreement with MGA obligated Bryant to provide product design services to MGA on a "top priority" basis. Bryant's agreement with MGA also provided that Bryant would receive royalties and other consideration for sales of products on which Bryant provided aid or assistance; that all works and services furnished by Bryant under

2154363.2

EXHIBIT ___W___

PAGE ___269___

-38-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1   the agreement, including those he purportedly provided while still a Mattel

2   employee, purportedly would be considered "works for hire" of MGA; and that all

3   intellectual property rights to preexisting works by Bryant, including Bratz designs,

4   purportedly were assigned to MGA.

5   **IV.   MGA STEALS MATTEL TRADE SECRETS IN MEXICO**

6          37.   On information and belief, in or about late 2003 or early 2004,

7   MGA decided to open business operations in Mexico.  Faced with the difficult task

8   of developing an overall strategy for expanding into a market in which it had only a

9   nominal presence and no operations, MGA elected to steal Mattel's plans, strategy

10  and business information for the Mexican market and materials related to Mattel's

11  worldwide business strategies.  As detailed below, MGA and Larian approached

12  three employees of Mattel's Mexican subsidiary ("Mattel Mexico"), enticed them to

13  steal Mattel's most sensitive business planning materials, and then hired them to

14  assist in establishing and running MGA's new Mexican subsidiary.

15  **A.   MGA Hires Three Senior Mattel Employees in Mexico**

16         38.   Carlos Gustavo Machado Gomez ("Machado") was the Senior

17  Marketing Manager, Boys Division, for Mattel Mexico, a position of trust and

18  confidence.  He was employed at Mattel Mexico from April 1, 1997 until April 19,

19  2004.  His duties included short, medium and long-term marketing planning,

20  generating product sales projections, and assisting in creation of the media plan.  In

21  his position, Machado had access to highly confidential and sensitive marketing

22  and product development information.  Machado had an employment agreement

23  with Mattel in which he agreed to maintain the confidentiality of Mattel's protected

24  information.  Mattel's policies also required Machado to protect Mattel's

25  proprietary information and not to disclose it to competitors.

26         39.   Mariana Trueba Almada ("Trueba") was the Senior Marketing

27  Manager, Girls Division, for Mattel Mexico, a position of trust and confidence.

28  She was employed at Mattel Mexico from November 3, 1997 until April 19, 2004.

EXHIBIT _____ W_____                            -39-
PAGE _____ 270                        SECOND AMENDED ANSWER AND COUNTERCLAIMS

21154363.2

1  Like Machado, her duties included short, medium and long-term marketing
2  planning, generating product sales projections, and assisting in creation of the
3  media plan. In her position, Trueba had access to highly confidential and sensitive
4  marketing and product development information. Trueba had an employment
5  agreement with Mattel in which she agreed to maintain the confidentiality of
6  Mattel's protected information. Mattel's policies also required Trueba to protect
7  Mattel's proprietary information and not to disclose it to competitors.

8       40.  Pablo Vargas San Jose ("Vargas") was a Senior Trade Marketing
9  Manager with Mattel Mexico, a position of trust and confidence. He was employed
10  at Mattel Mexico from March 29, 2001 until April 19, 2004. Vargas was
11  responsible for ensuring that point-of-sale promotions were carried out, analyzing
12  the results of such promotions, negotiating promotion budgets, and generally
13  managing promotional activities. Vargas also had access to highly confidential and
14  sensitive marketing and product development information. Vargas had an
15  employment agreement with Mattel in which he agreed to maintain the
16  confidentiality of Mattel's protected information. Mattel's policies also required
17  Vargas to protect Mattel's proprietary information and not to disclose it to
18  competitors.

19       41.  Beginning in late 2003 or early 2004, Machado, Trueba and
20  Vargas began planning to leave Mattel Mexico to join MGA. In connection with
21  that plan, and with the encouragement of Larian and other MGA officers operating
22  in the United States, they began accessing, copying and collecting proprietary
23  Mattel documents to take with them. On April 19, 2004, Machado, Trueba and
24  Vargas each resigned their positions with Mattel, effective immediately. They
25  stated that they had been hired by a Mattel competitor, but refused to identify that
26  competitor. In fact, they had been offered and accepted employment by MGA to
27  establish and run MGA's new operation in Mexico.

EXHIBIT _____ W

28

215 4363.2

-40-  PAGE _____ 27 1

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**B.      Machado, Trueba and Vargas Stole Dozens of Confidential Trade Secret Marketing and Sales Documents for MGA's Benefit**

42.      Following these resignations, Mattel discovered that Machado, Trueba and Vargas had been in frequent telephonic and e-mail contact with MGA personnel, including Larian, for over three months prior to their resignations. The primary vehicle for these communications in furtherance of their "plot" was an America Online e-mail account with the address <plot04@aol.com>. On information and belief, during this time, Machado, Trueba and Vargas supplied Larian with certain Mattel confidential and proprietary information in order to prove their value to MGA and to improve their negotiating position vis-à-vis their respective employment contracts with MGA.

43.      In March 2004, Machado, Trueba and Vargas were making plans to travel from Mexico to Los Angeles to meet with MGA personnel in person prior to resigning their positions at Mattel. Also, by at least March 3, 2004, Machado, Trueba and Vargas were discussing with MGA personnel, including Larian, specific details regarding setting up MGA offices in Mexico City. On information and belief, prior to their resignations, Larian and others at MGA directed Machado, Trueba and Vargas to steal virtually all Mattel confidential and proprietary information that they could access and bring it with them to MGA. This was reflected in, among things, e-mail messages that Mattel had discovered after Machado, Trueba and Vargas had resigned. For example, on March 22, 2006, approximately one month before they resigned, Machado, Trueba and Vargas wrote an e-mail message from the <plot04@aol.com> e-mail account addressed to Larian, MGA's General Manager Susan Kuemmerle and another MGA officer Thomas Park. In that e-mail message, Machado, Trueba and Vargas sought to prove their value in this endeavor to MGA by writing: "Attached you will find our analysis for future discussion. We will be available during the nights of the week after 16:30 Los Angeles time . . . ." In another e-mail message, showing that the

1  participants intentionally sought to maximize the damage to Mattel from their

2  conduct, Kuemmerle wrote to Larian and Park:  "Gustavo, Mariana and Pablo want

3  to resign (all at the same time, and you can believe my smile!) next Wednesday."

4        44.   Beginning on April 12, 2004, a week before his resignation and

5  after numerous communications and meetings with Larian and other MGA

6  personnel, Machado began transferring additional Mattel confidential and

7  proprietary information to a portable USB storage device (also know as a "thumb

8  drive") that he connected to his Mattel computer.  On Friday, April 16, 2004, the

9  last business day before he gave notice, Machado copied at least 70 sensitive

10  documents to the portable USB storage device.

11        45.   Starting on April 12, 2004, Vargas also copied a host of

12  confidential and proprietary materials to a portable USB storage device, including

13  sales plans, sales projections and customer profiles.

14        46.   On April 16, 2004, Trueba also copied Mattel confidential and

15  proprietary information to a portable USB storage device connected to her Mattel

16  computer.

17        47.   With full knowledge that she was going to leave Mattel for a

18  competitor, Trueba also took steps to increase further her access to Mattel's

19  confidential information shortly before her resignation.  For example, just four days

20  before leaving, Trueba went out of her way to seek to attend a meeting at which

21  Mattel personnel analyzed BARBIE programs for the United States, Canada and

22  South America.  Two days before her resignation, she contacted both a Mattel

23  employee located in El Segundo, California and Mattel's advertising agency to

24  request updated confidential information about advertising plans for BARBIE.  On

25  information and belief, Trueba acted at the direction of MGA and Larian and did so

26  in order to obtain further information that would allow MGA to obtain unfair

27  competitive advantage over Mattel.

28

EXHIBIT _____ W

PAGE _273_

2154363.2

-42-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1      48.  Machado, Trueba and Vargas stole virtually every type of

2  document a competitor would need to enter the Mexican market and to unlawfully

3  compete with Mattel in Mexico, in the United States, and elsewhere.  They stole

4  global internal future line lists that detailed anticipated future products, production

5  and shipping costs for Mattel products; daily sales data for Mattel products;

6  customer data; sales estimates and projections; marketing projections; documents

7  analyzing changes in sales performance from 2003 to 2004; budgets for advertising

8  and promotional expenses; strategic research reflecting consumer responses to

9  products in development; media plans; consumer comments regarding existing

10  Mattel products customer discounts and terms of sale; customer inventory level

11  data; assessments of promotional campaign success; market size historical data and

12  projections; marketing plans and strategies; merchandising plans; retail pricing and

13  marketing strategies; and other similar materials.

14      49.  The stolen data was not limited to the Mexican market.  The

15  information stolen would, and did, give MGA an unfair competitive advantage in

16  the United States and around the world.  Further, the stolen information was not

17  located exclusively in Mexico, but included confidential and proprietary

18  information that resided on Mattel computers in Phoenix, Arizona and El Segundo,

19  California, and/or documents which were originally created by personnel in El

20  Segundo.  Included among these stolen documents was one of Mattel's earliest

21  internal global line lists, which included information for BARBIE products for the

22  upcoming year and included, for each product, the expected profit margin,

23  advertising expenditures, expected volume and marketing strategy.  On information

24  and belief, Machado, Trueba or Vargas delivered that internal line list to Larian or

25  another MGA officer during their negotiations with MGA.

26      50.  MGA has used the information taken from Mattel to obtain an

27  unfair advantage over Mattel, including in both the United States and Mexico.  In

28  fact, MGA later publicized its claim that, in 2005, it had increased its Mexican

2 154363.2

EXHIBIT __W__

PAGE ____274____

-43-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

market share by 90 percent over the prior year. This increase came at the expense of Mattel, which lost market share during 2004 in Mexico and was forced to increase its advertising and promotional spending to offset further losses.

51. Machado, Trueba and Vargas attempted to conceal their widespread theft of Mattel's proprietary information. For example, Machado ran a software program on his Mattel personal computer in an attempt to erase information, including information that would reveal the addresses to which he had sent, or from which he had received, e-mail messages. On information and belief, for the same purpose Machado also damaged the hard drive of the personal computer that he used at Mattel.

52. On information and belief, on April 19, 2004, immediately after Machado, Trueba and Vargas simultaneously resigned, they traveled from Mexico to Los Angeles to meet with MGA personnel, including Larian, in person.

53. Mattel notified Mexican authorities about the theft of its trade secret and confidential information. On October 27, 2005, the Mexican Attorney General Office obtained a search warrant from the Mexican Federal Criminal Courts for MGA's facilities in Mexico City. In that search, the Mexican authorities found and seized from MGA's offices both electronic and paper copies of a large number of documents containing Mattel trade secrets, including those that Mattel discovered through its forensic investigations, plus many others that Mattel had not known had been stolen.

54. Based on Machado's "performance" in Mexico, Isaac Larian subsequently promoted Machado and he was transferred to MGA's main office in Van Nuys, California. On information and belief, Machado currently resides in the County of Los Angeles, California.

EXHIBIT __W__

PAGE __275__

SECOND AMENDED ANSWER AND COUNTERCLAIMS

21543633.2

V.     **MGA HIRES MATTEL'S SENIOR VICE PRESIDENT AND
GENERAL MANAGER TO FACILITATE ITS THEFT AND USE OF
MATTEL'S HIGHLY VALUABLE BUSINESS METHODS AND
PRACTICES**

55.     On October 1, 2004, Mattel's Senior Vice President and General
Manager, Ron Brawer, left Mattel and joined MGA.  Tyco Toys, Inc. ("Tyco"), a
predecessor to Mattel, had hired Brawer on April 22, 1996.  The same day, Brawer
entered into an Employee Invention & Trade Secret Agreement with Tyco.  On
April 9, 1997, Brawer became a Marketing Director for Mattel in Mount Laurel,
New Jersey, and remained bound by his Employee Invention & Trade Secret
Agreement.

56.     In January 2003, while Brawer held a position of trust and
confidence at Mattel, Mattel's "Code of Conduct" was circulated to all Mattel
employees worldwide.  Included in the Code of Conduct were statements that:

> Employees and Directors have an obligation to protect the
> confidentiality of Mattel's proprietary information.  Proprietary
> information is any information not generally known to the public
> that is useful to Mattel, that would be useful to its competitors or
> other third parties or that would be harmful to Mattel or its
> customers if disclosed.  Proprietary information includes trade
> secrets, revenue and profit information and projections, new
> product information, marketing plans, design and development
> efforts, manufacturing processes and any information regarding
> potential acquisitions, divestitures and investments.
> We can protect the security of Mattel's proprietary information
> by limiting access to it.  Confidential information should not be
> discussed with those who are not obligated to maintain the
> information in confidence and in public places where the

1          information is not likely to be kept secret, such as planes,

2          restaurants and elevators.  The obligation to preserve confidential

3          information continues even after employment ends.

4  The Code of Conduct applied to Brawer and required that he meet his obligations

5  under the Code of Conduct.

6        57.  By 2003, Brawer had advanced within Mattel to a Senior Vice

7  President position over customer marketing, a position of trust and confidence.  In

8  his executive position, Brawer was provided access to information that was both

9  sensitive and confidential, including, but not limited to, detailed information related

10  to development, manufacture, marketing, pricing, shipping, and performance of

11  Mattel's then-current and anticipated future product lines, and other confidential

12  business plans between Mattel and its most significant retail customers.

13        58.  In December 2003, Alan Kaye, Mattel's Senior Vice President of

14  Human Resources, asked Brawer whether he was discussing potential employment

15  with MGA.  Brawer denied that he had been in contact with MGA and represented

16  that he would not talk to MGA.  Throughout 2004, Mattel reminded and stressed to

17  its employees, including Brawer, the importance of protecting Mattel's confidential

18  and proprietary materials and information.

19        59.  On March 18, 2004, in response to a survey from the President of

20  Mattel Brands, Matt Bousquette, confirming compliance with Mattel's Code of

21  Conduct, Brawer wrote back that he "applaud[ed] the company's vigorous

22  protection of it's [sic] intellectual property," reflecting Brawer's clear

23  understanding that Mattel required its proprietary information to be kept

24  confidential.

25        60.  In April 2004, Mattel promoted Brawer to Senior Vice

26  President/General Manager.  The General Manager position also is an executive

27  position of trust and confidence.  The role of a General Manager is to lead a cross-

28  functional "Customer Business Team."  Each General Manager is accountable for a

1    strategic partnership with a key Mattel retailer, covering all aspects of the business,
2    including both traditional toy sales and retail development of licensed products.

3        61.   In or about late May 2004, Brawer began performing General
4    Manager duties, working with one of Mattel's major retail customer accounts.
5    Thereafter, Brawer began receiving information related not only to the Senior Vice
6    President, Customer Marketing position that he still formally held, but also began
7    receiving detailed information related to his role as General Manager.  Brawer
8    began requesting and analyzing detailed information related to Mattel and its four
9    key retail accounts.

10       62.   On September 15, 2004, Brawer left work at noon for observance
11   of Rosh Hashanah.  As Brawer left, he carried a large cardboard box with binders
12   and other materials.  Several hours after his departure, Brawer instructed his
13   assistant to print Mattel's 2004 Sales Plan for one of Mattel's significant customers
14   and to provide it to him, falsely claiming he needed it for a meeting

15       63.   On September 17, 2004, Brawer returned to Mattel and
16   immediately informed his supervisor that he was leaving Mattel, effective October
17   1, 2004, to work for competitor MGA.

18       64.   On September 20, 2004, Mattel hand-delivered a letter to Brawer
19   reminding him of his continuing obligation to preserve the confidentiality of
20   Mattel's proprietary information and trade secrets not only through October 1,
21   2004, but continuing beyond the termination of his employment.

22       65.   At his exit interview on September 29, 2004, Mattel reminded
23   Brawer that he had ongoing duties of confidentiality to Mattel, even after the
24   termination of his employment.  Brawer was given a copy of his Original
25   Confidentiality Agreement, which he had signed on April 22, 1996, and another
26   copy of the Code of Conduct.  During the exit interview, however, Brawer noted
27   that he had not signed the Code of Conduct, which he intended and Mattel
28   understood to mean that Brawer believed he was not bound by Mattel's policy

because he had not signed it. Brawer was unwilling to complete or sign the form that sought to confirm that Brawer understood his ongoing obligations under the Code of Conduct, which included the obligation to preserve the confidentiality of Mattel's proprietary and trade secret information.

66. On October 1, 2004, Brawer's final day of employment with Mattel, Mattel hand-delivered to Brawer a letter that, among other things, reminded Brawer of his confidentiality obligations to Mattel under the Code of Conduct.

67. Upon joining MGA, Brawer became its Executive Vice-President of Sales and Marketing. In that role he was responsible for MGA's sales worldwide. As part of those responsibilities, Brawer had and continues to have responsibility for MGA's accounts with the same retailers that he worked with while at Mattel.

68. Brawer represented during his Mattel exit interview that he had returned all proprietary information to Mattel. That representation was false. On information and belief, Brawer removed proprietary and trade secret information from Mattel that he did not return. Mattel is informed and believes that Brawer did not return to Mattel, for example, the information contained in his contacts file. The contacts file included contact information for Mattel customers, most notably TRU, and extensive contact information for Mattel employees, including titles, e-mail addresses and telephone numbers.

69. Mattel has recently learned that Brawer has been using that contact information on a regular basis, including within recent months. Since leaving Mattel, Brawer has had contacts with Mattel employees, both by telephone and by electronic mail. Based on his knowledge of Mattel's operations and the roles of certain Mattel employees, he has targeted certain Mattel employees who have broad access to Mattel proprietary information in an effort to induce and encourage them to join MGA and to steal or otherwise wrongfully misappropriate Mattel confidential information and trade secrets. Brawer has done so by

2154363.2

1   promising these Mattel employees salaries 25 percent or more higher than they earn

2   at Mattel and stating to them that they should not be concerned by legal action

3   taken by Mattel to protect its trade secrets and its rights because such claims are

4   hard to prove and easy to defeat.

5   **VI.   MGA STEALS MATTEL TRADE SECRETS IN CANADA**

6   　　　　70.   In an effort to increase its market share and sales in Canada and

7   elsewhere, MGA stole Mattel trade secrets regarding Mattel's customers, sales,

8   projects, advertising and strategy, not only for Canada, but the United States and

9   the rest of the world.

10   　　　　71.   Janine Brisbois was a Director of Sales for the Girls Division in

11   Canada. Mattel hired her as a National Account Manager in August 1999. When

12   she was hired as a Mattel employee, Brisbois agreed that she would preserve and

13   would not disclose Mattel's proprietary or confidential information. For example,

14   Brisbois agreed:

15   　　　　You must keep Mattel's Proprietary Information confidential,

16   　　　　and you may only use or disclose such information as necessary

17   　　　　to perform your job responsibilities in accordance with Mattel

18   　　　　policies. Your obligation to keep Mattel's Proprietary

19   　　　　Information confidential will continue even after any termination

20   　　　　of your employment with your employer.

21   　　　　. . .

22   　　　　Mattel takes steps to maintain the secrecy and confidential nature

23   　　　　of Mattel's Proprietary Information and, if a competitor

24   　　　　discovered Mattel's Proprietary Information, it could

25   　　　　significantly damage Mattel and your Employer.

26   　　　　72.   While with Mattel, Brisbois had responsibility for Mattel's

27   account with TRU and later had responsibility for Mattel's Wal-Mart account. In

28   her capacity as Sales Director Wal-Mart/CTC/Girls Team, Brisbois had access to

EXHIBIT _____ W _____

PAGE _____ 280 _____

-49-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

Mattel confidential and proprietary information regarding Mattel's future product lines, advertising and promotional campaigns and product profitability.

73. On September 26, 2005, Brisbois resigned from Mattel to take a position as Vice President of Sales at MGA. Mattel is informed and believes that in that position Brisbois has responsibility for MGA's accounts with both TRU and Wal-Mart. During Brisbois' exit interview she was specifically asked whether she was "taking anything." Brisbois responded, "No." Both during and after her exit interview, Brisbois was advised by Mattel of her obligations to preserve Mattel's confidential and proprietary information.

74. Mattel is informed and believes that Brisbois spoke with Isaac Larian, MGA's CEO, on September 22, 2005 at approximately 8:30 p.m., when he called Ms. Brisbois at her home. Mattel subsequently learned that on the same day that she spoke with Mr. Larian and four days before she resigned, Brisbois copied approximately 45 Mattel documents on to a USB or "thumb" drive with the volume label "BACKPACK." On information and belief, Brisbois removed the thumb drive from Mattel Canada's office by concealing it in her backpack or gym bag the last time that she left that office. These documents contained Mattel trade secret and proprietary information, and included:

- a document containing the price, cost, sales plan and quantity of every Mattel product ordered by every Mattel customer in 2005 and 2006;
- the BARBIE television advertising strategy and information concerning sales increases generated by television advertisements;
- competitive analysis of Mattel vis-à-vis its competitors in Canada;
- an analysis of Mattel's girls business sales beginning in 2003 and forecasts through 2006;
- profit and loss reviews for Mattel's products being sold in Wal-Mart, including margins and profit in not only Canada, but in the United States and Mexico; and

1        • a document containing the product launch dates and related advertising

2          for all Mattel new products between Fall 2005 and Spring 2006.

3        75.   After Mattel discovered that Brisbois had copied these sensitive

4  documents to a thumb drive, Mattel notified Canadian law enforcement authorities.

5  Canadian law enforcement authorities recovered from Brisbois a thumb drive with

6  the volume label "BACKPACK" containing the documents that Brisbois had

7  copied from Mattel's computer system.  Mattel later learned that while she was

8  working as a Vice President of Sales at MGA, Brisbois accessed and modified

9  documents on that thumb drive.

10      76.   After joining MGA, Brisbois repeatedly traveled to MGA's

11  offices in Van Nuys, California and met with Larian and Brawer.  In February,

12  2006, knowing that Mattel trade secrets had been seized from MGA's Mexico City

13  offices and that at least three MGA employees were under criminal investigation,

14  MGA nonetheless issued a press release trumpeting its 2005 performance, with

15  Larian himself concluding, "Our international teams in Mexico and Canada have

16  done a fantastic job."

## VII. MGA PERSUADES OTHER EMPLOYEES LEAVING MATTEL TO JOIN MGA TO MISAPPROPRIATE MATTEL TRADE SECRETS FOR THE BENEFIT OF MGA

20      77.   In the past few years, MGA has hired directly from Mattel's

21  United States operations at least 25 employees, from Senior Vice-President level to

22  lower level employees.  On information and belief, many of these employees were

23  specifically targeted and recruited by MGA, including by Larian and Brawer, based

24  on the Mattel confidential and proprietary information they could access.  Many of

25  these employees had access to information that Mattel considers to be highly

26  proprietary and confidential.  Mattel believes that some of those former Mattel

27  employees may be observing their obligations not to misappropriate, disclose or

28  use Mattel's confidential and proprietary information.  Mattel is informed and

EXHIBIT _____ W_____

PAGE ___282___

-51-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1154363.2

1    believes, however, that certain additional employees accessed, copied and took

2    from Mattel confidential and proprietary information, including Mattel's strategic

3    plans; business operations, methods and systems; marketing and advertising

4    strategies and plans; future product lines; product profit margins; and customer

5    requirements. The misappropriated confidential and proprietary information

6    included information that these Mattel employees were not authorized to access.

7    On information and belief, the misappropriated confidential and proprietary

8    information taken from Mattel is being disclosed to and used by MGA for the

9    benefit of MGA and to the detriment of Mattel.

10   **VIII. LARIAN MAKES MISREPRESENTATIONS TO RETAILERS**

11   **ABOUT MATTEL'S PRODUCTS**

12        78.    Counter-defendants have engaged in other illegal practices in

13   their efforts to compete unfairly with Mattel. Larian has a practice of sending e-

14   mail messages to a "Bratz News" distribution list that Larian created or that was

15   created for him. Mattel is informed and believes that the recipients of e-mail

16   messages sent to the "Bratz News" distribution list include members of the media

17   as well as representatives of many of Mattel's most significant customers.

18        79.    On May 12, 2006, Larian sent an e-mail message to the "Bratz

19   News" distribution list that included a reference to Mattel's updated MY SCENE

20   MY BLING BLING product with real gems. Mattel had not publicly announced

21   this product at the time that Larian sent his May 12, 2006 e-mail. In fact, Mattel

22   had guarded the identification of this particular product.

23        80.    Shortly thereafter, Larian engaged in a campaign of calling

24   Mattel's most significant customers, including but not limited to Target and TRU,

25   regarding the MY SCENE MY BLING BLING product with real gems. In an

26   effort to dissuade these retailers from purchasing Mattel's MY SCENE MY BLING

27   BLING product with real gems, Larian knowingly made false factual statements

28   about that product to each retailer. As of the writing of this Second Amended

2154363.2

EXHIBIT   W

PAGE  883

-52-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1   Answer and Counterclaims, Mattel is aware that Larian represented to each retailer
2   that each was the only retailer to purchase the product and that Mattel would not be
3   supporting the product with television advertising.  At the time that Larian made
4   these statements, he knew them to be false.  As a result of Larian's
5   misrepresentations, at least one retailer cancelled its order for 75,000 units of the
6   MY SCENE MY BLING BLING product with real gems.  Only after Mattel
7   learned of Larian's misrepresentations and was able to correct them was Mattel able
8   to assure the retailer that Larian's representations were false and to persuade the
9   retailer to reinstate the order.

10        81.    Such conduct is not an isolated incident.  MGA and Larian, in an
11   effort to gain an unfair competitive advantage, repeatedly issued false and
12   misleading press releases.  In these press releases, MGA and Larian have
13   misrepresented Bratz's sales, Bratz's market share, Bratz's position vis-à-vis
14   Mattel's BARBIE products, sales of Mattel's BARBIE products, and the market
15   share of Mattel's BARBIE products.

16                              **CLAIMS FOR RELIEF**
17                              <u>**First Counterclaim**</u>
18                           **Copyright Infringement**
19              **(Against MGA, MGA Entertainment (HK) Limited,**
20                    **Larian, Bryant and Does 4 through 10)**

21        82.    Mattel repeats and realleges each and every allegation set forth in
22   paragraphs 1 through 81, above, as though fully set forth at length.

23        83.    Mattel is the owner of copyrights in works that are fixed in
24   tangible media of expression and that are the subject of valid, and subsisting,
25   copyright registrations owned by Mattel.  These include, without limitation, the
26   works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-
27   378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-

28

EXHIBIT ____ U)

PAGE __289__

SECOND AMENDED ANSWER AND COUNTERCLAIMS

21543363.2

378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-378-660, VAu 715-270, VAu 715-271 and VAu 715-273.

84.   Counter-defendants have reproduced, created derivative works from and otherwise infringed upon the exclusive rights of Mattel in its protected works without Mattel's authorization.  Counter-defendants' acts violate Mattel's exclusive rights under the Copyright Act, including without limitation Mattel's exclusive rights to reproduce its copyrighted works and to create derivative works from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.

85.   Counter-defendants' infringement (and substantial contributions to the infringement) of Mattel's copyrighted works is and has been knowingly made without Mattel's consent and for commercial purposes and the direct financial benefit of Counter-defendants.  Counter-defendants, moreover, have deliberately failed to exercise their right and ability to supervise the infringing activities of others within their control to refrain from infringing Mattel's copyrighted works and have failed to do so in order to deliberately further their significant financial interest in the infringement of Mattel's copyrighted works.  Accordingly, Counter-defendants have engaged in direct, contributory and vicarious infringement of Mattel's copyrighted works.

86.   By virtue of defendants' infringing acts, Mattel is entitled to recover Mattel's actual damages plus Counter-defendants' profits, Mattel's costs of suit and attorneys' fees, and all other relief permitted under the Copyright Act.

87.   Counter-defendants' actions described above have caused and will continue to cause irreparable damage to Mattel, for which Mattel has no remedy at law.  Unless Counter-defendants are restrained by this Court from continuing their infringement of Mattel's copyrights, these injuries will continue to occur in the future.  Mattel is accordingly entitled to injunctive relief restraining Counter-defendants from further infringement.

EXHIBIT __W__

PAGE __285__

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1

## Second Counterclaim

2 **Violation of the Racketeer Influenced and Corrupt Organizations Act**

3 **18 U.S.C. §§ 1962(c) and 1964(c)**

4 **(Against All Counter-defendants)**

5        88.  Mattel repeats and realleges each and every allegation set forth in

6 paragraphs 1 through 87, above, as though fully set forth at length.

7       89.  Beginning at various times from approximately 1999 through the

8 filing of this Second Amended Answer and Counterclaims, in the Central District

9 of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK)

10 Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and

11 Brawer, Trueba, Vargas and Brisbois were employed by and associated-in-fact with

12 an enterprise engaging in, and the activities of which affect, interstate and foreign

13 commerce (the "MGA Criminal Enterprise"). The MGA Criminal Enterprise is

14 made up of the MGA Group (MGA, MGA Entertainment (HK) Limited, MGA de

15 Mexico, Larian, certain of the Doe Counter-defendants and Brawer), the Bryant

16 Group (Bryant and certain of the Doe Counter-defendants), the Mexican Group

17 (Machado, Trueba and Vargas) and the Canadian Group (Brisbois). In addition,

18 beginning at various times from approximately 1999 through the filing of this

19 Second Amended Answer and Counterclaims, in the Central District of California

20 and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited,

21 Larian and Bryant, and certain of the Doe Counter-defendants, were employed by

22 and associated-in-fact with a second enterprise engaging in, and the activities of

23 which affect, interstate and foreign commerce (the "Bratz Criminal Enterprise").

24       90.  MGA, MGA Entertainment (HK) Limited, MGA de Mexico,

25 Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas,

26 Brisbois, and the Other Former Employees, and each of them, for the purpose of

27 executing and attempting to execute the scheme to improperly defraud Mattel and

28 steal its trade secret or otherwise confidential and proprietary information, by

2154363.2

EXHIBIT __W__

PAGE __286__

-55-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1   means of tortious, fraudulent and criminal conduct, did and do unlawfully, willfully

2   and knowingly conduct and participate, directly and indirectly, in the conduct of

3   the MGA Criminal Enterprise's affairs and, in the case of MGA, MGA

4   Entertainment (HK) Limited, Larian, Bryant, and certain of the Doe Counter-

5   defendants, the Bratz Criminal Enterprise's affairs, through a pattern of

6   racketeering activity.  Their actions include multiple, related acts in violation of:

7   18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1512

8   (tampering with a witness victim, or informant), 18 U.S.C. § 1952 (interstate and

9   foreign travel to aid racketeering), and 18 U.S.C. § 2319(a) and 17 U.S.C. §

10  506(a)(1)(A) (criminal copyright infringement).

11          91.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico,

12  Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas,

13  Brisbois, and the Other Former Employees, and each of them, shared the common

14  purpose of enabling MGA to obtain confidential, proprietary and otherwise

15  valuable Mattel property through improper means in order to assist MGA in

16  illegally competing with Mattel domestically and throughout the world.

17          92.   The MGA Criminal Enterprise and Bratz Criminal Enterprise as

18  described herein are and have been at all relevant times continuing enterprises

19  because, among other reasons, each is designed to and did unlawfully acquire the

20  confidential business information and property of Mattel and incorporated this

21  information and property into MGA's ongoing business, marketing strategies and

22  business methods, practices and processes.  The conduct of each enterprise

23  continues through the date of this Second Amended Answer and Counterclaims and

24  is ongoing by virtue of MGA's continuing use of Mattel's information and property,

25  all to the detriment of Mattel.

26          93.   The pattern of racketeering activity, as defined by 18 U.S.C.

27  §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat

28  of continuing criminal activity.  This activity consists of multiple acts of

1  racketeering by each member of the MGA Criminal Enterprise and Bratz Criminal

2  Enterprise, is interrelated, not isolated and is perpetrated for the same or similar

3  purposes by the same persons.  This activity extends over a substantial period of

4  time, up to and beyond the date of this Second Amended Answer and

5  Counterclaims.  These activities occurred after the effective date of 18 U.S.C.

6  §§ 1961 *et seq.*, and the last such act occurred within 10 years after the commission

7  of a prior act of racketeering activity.  These racketeering activities included

8  repeated acts of:

9       (a)   <u>Mail Fraud</u>:  Counter-defendants MGA, MGA Entertainment

10            (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and

11            Does 4 through 10, aided and abetted by each other and some or

12            all of the remaining members of the MGA Criminal Enterprise,

13            having devised a scheme or artifice to defraud Mattel of its

14            confidential trade secret information and property by conversion,

15            false representations, concealment and breaches of fiduciary duty,

16            did for the purpose of furthering and executing such a scheme or

17            artifice to defraud, deposited or caused to be deposited matters or

18            things to be sent or delivered by the Postal Service, or any private

19            or commercial interstate carrier, or took or received matters or

20            things therefrom, or knowingly caused matters or things to be

21            delivered by mail or such carrier according to the direction

22            thereon, or at the place at which it is directed to be delivered by

23            the person to whom it is addressed, in violation of 18 U.S.C.

24            § 1341 and 18 U.S.C. § 2, as alleged with greater particularity in

25            the foregoing paragraphs and as evidenced by, among other

26            things, the true and correct copies of communications and other

27            evidence included in Exhibit C;

28

2154363.2

(b)  Wire Fraud:  Counter-defendants MGA, MGA Entertainment
(HK) Limited, MGA de Mexico, Larian, Bryant, Machado and
Does 4 through 10, aided and abetted by each other and some or
all of the remaining members of the MGA Criminal Enterprise,
having devised a scheme or artifice to defraud Mattel of its
confidential and trade secret information and property by
conversion, false representations, concealment and breaches of
fiduciary duty, did for the purpose of furthering and executing
such a scheme or artifice to defraud, transmit and cause to be
transmitted by means of wire communications in interstate or
foreign commerce, writing, signs, signals, pictures or sound, in
violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with
greater particularity in the foregoing paragraphs and as evidenced
by, among other things, the true and correct copies of
communications and other evidence included in Exhibit C;

(c)  Tampering With a Witness, Victim or Informant:  Counter-
defendants MGA, MGA Entertainment (HK) Limited, MGA de
Mexico, Larian, Bryant, Machado and Does 4 through 10, aided
and abetted by each other and some or all of the remaining
members of the MGA Criminal Enterprise, did corruptly alter,
destroy, mutilate, or conceal more than one record, document, or
other object, or attempted to do so, with the intent to impair the
object's integrity or availability for use in an official proceeding,
including this action, including without limitation by:

    i.  altering Bryant's contract with MGA relating to
Bratz to conceal evidence that Bryant faxed the contract from the
BARBIE COLLECTIBLES department of Mattel, using a fax

EXHIBIT ___W___

PAGE ___287___

-58-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

machine owned by Mattel and while Bryant was employed by Mattel;

    ii.    altering numerous original Bratz drawings created by Bryant by adding false and misleading date notations of "8/1998" and "© 8/1998" to the drawings even though the drawings were not created in August 1998; and

    iii.    destroying electronic and other evidence, including by destroying evidence previously contained on Carter Bryant's and Isaac Larian's computer hard drives.

Such actions are in violation of 18 U.S.C. § 1512 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs;

(d)    Interstate and Foreign Travel in Aid of Racketeering Enterprises: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, traveled in interstate and foreign commerce, or used the mail or any facility in interstate or foreign commerce, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of unlawful activity, i.e. bribery, in violation of the laws of the State of California, Cal. Penal Code § 641.3, all in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs;

(e)    Criminal Copyright Infringement: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by

EXHIBIT W

PAGE 290

-59-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

each other and some or all of the remaining members of the MGA Criminal Enterprise, willfully infringed Mattel's copyrights, including with respect to documents containing Mattel trade secret and confidential information, for purposes of commercial advantage and private financial gain, all in violation of 18 U.S.C. § 2319(a) and 17 U.S.C. § 506(a)(1)(A), as alleged with greater particularity in the foregoing paragraphs.

94.   The persons alleged herein to have violated 18 U.S.C. § 1962(c) are separate from, though employed by or associated with, MGA, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group.

95.   MGA had a role in the racketeering activity that was distinct from the undertaking of those acting on its behalf. MGA also attempted to benefit, and did benefit, from the activity of its employees and agents alleged herein, and thus was not a passive victim of racketeering activity, but an active perpetrator.

96.   Mattel has been injured in its business or property as a direct and proximate result of the Counter-defendants' and the other enterprise members' violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts constituting the pattern of racketeering activity.

97.   As a result of the violations of 18 U.S.C. § 1962(c), by MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, Brawer, Trueba, Vargas, Brisbois and the Other Former Employees, Mattel has suffered substantial damages, in an amount to be proved at trial. Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special compensatory damages, plus interest, costs and attorneys, fees, incurred by reason of Counter-defendants' violations of 18 U.S.C. § 1962(c).

EXHIBIT __W__

PAGE __271__

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

### Third Counterclaim
### Conspiracy To Violate the Racketeer
### Influenced And Corrupt Organizations Act
### (18 U.S.C. §§ 1962(d) and 1964(c))
### (Against All Counter-defendants)

98.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 97, above, as though fully set forth at length.

99.   Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois and the Other Former Employees willfully, knowingly and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(c).

100.   These conspirators were employed by and associated-in-fact with the MGA Criminal Enterprise engaging in, and the activities of which affect, interstate and foreign commerce.  Specifically, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the MGA Criminal Enterprise's affairs through a pattern of racketeering activity.  In addition, MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the Bratz Criminal Enterprise's affairs through a pattern of racketeering activity.

101.   The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), including acts of mail fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2; acts of wire fraud in violation of 18 U.S.C. § 1343 and 18

1  U.S.C. § 2; acts of tampering with witnesses, victims or informants in violation of

2  18 U.S.C. § 1512 and 18 U.S.C. § 2; acts of interstate and foreign travel in aid of

3  racketeering enterprises in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2; and

4  acts of criminal copyright infringement in violation of 18 U.S.C. § 2319(a) and 17

5  U.S.C. § 506(a)(1)(A).

6       102.  Counter-defendants and the other members of the MGA Criminal

7  Enterprise schemed to defraud Mattel and steal its property and trade secret

8  information by means of false representation, breaches of fiduciary duty,

9  conversation and concealment, as more fully set forth in the foregoing paragraphs.

10       103.  In furtherance of this unlawful conspiracy, and to effect its

11  objectives, Counter-defendants and various co-conspirators committed numerous

12  overt acts, including but not limited to those set forth in the foregoing paragraphs.

13       104.  Mattel has been injured in its business or property as a direct and

14  proximate result of the Counter-defendants' and the other enterprise members'

15  violations of 18 U.S.C. § 1962(d), including injury by reason of the predicate acts

16  constituting the pattern of racketeering activity.

17       105.  As a result of the conspiracies between and among all Counter-

18  defendants and the other conspirators to violate 18 U.S.C. § 1962(c), Mattel has

19  suffered substantial damages, in an amount to be proved at trial.  Pursuant to 18

20  U.S.C. § 1964(c), Mattel is entitled to recover treble its general and special

21  compensatory damages, plus interest, costs and attorneys, fees, incurred by reason

22  of Counter-defendants' violations of 18 U.S.C. § 1962(d).

23             **Fourth Counterclaim**

24           **Misappropriation of Trade Secrets**

25      **(Against Counter-defendants MGA, MGA de Mexico,**

26         **Larian, Machado and Does 4 through 10)**

27       106.  Mattel repeats and realleges each and every allegation set forth in

28  paragraphs 1 through 105, above, as though fully set forth at length.

2154363.2

EXHIBIT _____ W_____

PAGE _____ 293 _____

-62-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

107. As used herein, "Trade Secret Material" shall mean the documents, materials and information stolen by Machado, Trueba, Vargas, Brisbois, the Other Former Employees, and other persons acting for, on behalf of or at the direction of MGA and/or Larian. Prior to their theft by Counter-defendants, the Trade Secret Materials gave Mattel a significant competitive advantage over its existing and would-be competitors, including MGA. This advantage, as to MGA, has now been compromised as a result of Counter-defendants' unlawful activities.

108. Mattel made reasonable efforts under the circumstances to maintain the confidentiality of the Trade Secret Materials, including by having employees and consultants who may have access the Trade Secret Materials sign confidentiality agreements that oblige them not to disclose the Trade Secret Materials or characteristics of the Trade Secret Materials; by limiting the circulation of said materials within Mattel; by protecting and limiting access to computers with log-in identifications and passwords; by limiting each employee's access to electronic files to those that the particular employee needs to access; by educating employees on the nature of Mattel's information that is confidential and proprietary; and by reminding employees on a regular and periodic basis of their obligation to protect and maintain Mattel's confidential and proprietary information.

109. Mattel's Trade Secret Materials derive independent economic value from not being generally known to the public or to other persons who can obtain economic benefit from their disclosure.

110. Counter-defendants have illegally obtained the trade secret materials, as set forth above, and through other means of which Mattel is presently unaware.

111. Counter-defendants have used and disclosed Mattel's Trade Secret Materials without Mattel's consent and without regard to Mattel's rights, and

EXHIBIT _____ W

PAGE _____ 294

-63-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

4363.2

1    without compensation, permission, or licenses for the benefit of themselves and

2    others.

3            112. Counter-defendants' conduct was, is, and remains willful and

4    wanton, and was taken with blatant disregard for Mattel's valid and enforceable

5    rights.

6            113. Counter-defendants' wrongful conduct has caused and, unless

7    enjoined by this Court, will continue in the future to cause irreparable injury to

8    Mattel. Mattel has no adequate remedy at law for such wrongs and injuries. Mattel

9    is therefore entitled to a permanent injunction restraining and enjoining Counter-

10   defendants, and each of them, as well as their agents, servants, and employees, and

11   all persons acting thereunder, in concert with, or on their behalf, from further using

12   in any manner Mattel's trade secrets.

13           114. In addition, as a proximate result of Counter-defendants'

14   misconduct, Mattel has suffered actual damages, and Counter-defendants have been

15   unjustly enriched.

16           115. The aforementioned acts of the Counter-defendants were willful

17   and malicious, including in that Counter-defendants misappropriated Mattel's trade

18   secrets with the deliberate intent to injure Mattel's business and improve their own.

19   Mattel is therefore entitled to enhanced damages. Mattel is also entitled to

20   reasonable attorney's fees.

21                              **Fifth Counterclaim**

22                              **Breach of Contract**

23                              **(Against Bryant)**

24           116. Mattel repeats and realleges each and every allegation set forth in

25   paragraphs 1 through 115, above, as though fully set forth at length.

26           117. Pursuant to his Employment Agreement, Bryant agreed that he

27   would not, without Mattel's express written consent, engage in any employment or

28   business other than for Mattel or assist in any manner any business competitive

1  with the business or future business plans of Mattel during his employment with

2  Mattel.  Pursuant to his Mattel Employment Agreement, Bryant further assigned to

3  Mattel all right, title and interest in "inventions," including without limitation

4  "designs" and other works that he conceived, created or reduced to practice during

5  his employment by Mattel.  In addition, pursuant to the Conflict Questionnaire,

6  Bryant certified that, other than as disclosed, he had not worked for any competitor

7  of Mattel and had not engaged in any business venture or transaction involving a

8  Mattel competitor that could be construed as a conflict of interest.  Bryant further

9  promised that he would notify his supervisor immediately of any change in his

10  situation that would cause him to change any of the foregoing certifications or

11  representations.

12  118. The Employment Agreement and the Conflict Questionnaire are

13  valid, enforceable contracts, and Mattel has performed each and every term and

14  condition of the Employment Agreement and Conflict Questionnaire required to be

15  performed by Mattel.

16  119. Bryant materially breached the foregoing contracts with Mattel,

17  in that, among other things, he secretly aided, assisted and worked for a Mattel

18  competitor during his employment with Mattel without the express written consent

19  of Mattel.

20  120. As a consequence of Bryant's breach, Mattel has suffered and

21  will, in the future, continue to suffer damages in an amount to be proven at trial.

22  Such damages include, without limitation, the amounts paid by the competitor to

23  Bryant during his Mattel employment; the amounts paid by MGA to Bryant during

24  his Mattel employment; the amount that Mattel paid Bryant during the time he

25  wrongfully worked with MGA; the value of information and intellectual property

26  owned by Mattel which Bryant provided to MGA; the value of the benefits that

27  MGA obtained from Bryant during the time he was employed by Mattel; and the

28

EXHIBIT _____ W

2154363.2

-65-

PAGE _____ 296

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1   value of the benefits that MGA obtained from Bryant as a result of the work he

2   performed for or with MGA during his Mattel employment.

3         121. Bryant's conduct has caused, and unless enjoined will continue to

4   cause, irreparable injury to Mattel that cannot be adequately compensated by

5   money damages and for which Mattel has no adequate remedy at law. Bryant

6   specifically acknowledged in his Employment Agreement that his breach of the

7   Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be

8   entitled to injunctive relief to enforce this Agreement, in addition to damages and

9   other available remedies." Accordingly, Mattel is entitled to orders mandating

10   Bryant's specific performance of his contracts with Mattel and restraining Bryant

11   from further breach.

12               **Sixth Counterclaim**

13         **Intentional Interference with Contract**

14      **(Against MGA, Larian and Does 4 through 10)**

15         122. Mattel repeats and realleges each and every allegation set forth in

16   paragraphs 1 through 121, above, as though fully set forth at length.

17         123. Valid agreements existed between Mattel and Bryant, Brawer,

18   Machado, Trueba, Vargas, Brisbois and the Other Former Employees (collectively,

19   the "Mattel Employees")

20         124. At all times herein mentioned, MGA, Larian and Does 4 through

21   10 knew that the Mattel Employees had a duty under their agreements not to work

22   for or assist any competitor of Mattel, such as MGA. In addition, at all times

23   mentioned herein, MGA, Larian and Does 4 through 10 knew that Bryant had

24   assigned to Mattel, and was obligated to disclose to Mattel all inventions, including

25   designs and other works, created, conceived or reduced to practice during their

26   employment with Mattel.

27   EXHIBIT _____ U

28   PAGE _____ 297

2154363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1    125.  Despite such knowledge, Counter-defendants MGA, Larian and

2  Does 4 through 10 intentionally and without justification solicited, induced and

3  encouraged the Mattel Employees to breach their contracts with Mattel.

4    126.  As a direct and proximate result of Counter-defendants' efforts

5  and inducements, the Mattel Employees did breach their contracts with Mattel.

6    127.  As a result of said breaches, Mattel has suffered damages and

7  will imminently suffer further damages, including the loss of its competitive

8  position and lost profits, in an amount to be proven at trial.

9    128.  Counter-defendants performed the aforementioned conduct with

10  malice, fraud and oppression, and in conscious disregard of Mattel's rights.

11  Accordingly, Mattel is entitled to recover exemplary damages from Counter-

12  defendants in an amount to be determined at trial.

13  <u>**Seventh Counterclaim**</u>

14  **Breach of Fiduciary Duty**

15  **(Against Bryant and Machado)**

16    129.  Mattel repeats and realleges each and every allegation set forth in

17  paragraphs 1 through 128, above, as though fully set forth at length.

18    130.  Bryant and Machado held positions of trust and confidence with

19  Mattel.  In their positions, Bryant and Machado had access to and were entrusted

20  with Mattel's proprietary and confidential information, supervised the work of

21  others, exercised discretion and worked independently in many of their job

22  assignments and duties.  In their positions, Bryant and Machado also represented

23  Mattel in its dealings with third parties and, in actions in the course and scope of

24  their employment with Mattel, were agents of Mattel.  They confirmed their

25  relationship of trust with Mattel in respective employee agreements.  Bryant and

26  Machado thus owed Mattel a fiduciary duty that included, but was not limited to,

27  an obligation not to take any action that would be contrary to Mattel's best interests

28

EXHIBIT

PAGE ___898___

2154363.2

-67-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1 | or that would deprive Mattel of any opportunities, profit or advantage which Bryant
2 | or Machado might bring to Mattel.

3 |     131. Bryant breached his fiduciary duty to Mattel in that, while
4 | employed by Mattel, he secretly aided and assisted a competitor of Mattel,
5 | including without limitation by entering into an agreement with a Mattel
6 | competitor. As alleged above, Bryant also breached the aforementioned duty by
7 | using Mattel property and resources for the benefit of, and to aid and assist, himself
8 | personally and MGA.

9 |     132. Machado breached his fiduciary duty to Mattel, in that while
10 | employed by Mattel, he secretly aided and assisted a competitor of Mattel by,
11 | among other things, misappropriating Mattel trade secret and proprietary
12 | information and providing said information to officers of MGA. Machado also
13 | breached the aforementioned duty by using Mattel property and resources for the
14 | benefit of, and to aid and assist, himself personally and MGA.

15 |     133. As a direct and proximate result of Counter-defendants' wrongful
16 | conduct, Mattel has incurred damages in an amount to be determined at trial.

17 |     134. Counter-defendants acted with malice, fraud and oppression, and
18 | in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an
19 | award of exemplary damages against Counter-defendants in an amount to be
20 | determined at trial.

21 |     135. Furthermore, Counter-defendants' conduct has caused, and unless
22 | enjoined will continue to cause, irreparable injury to Mattel that cannot be
23 | adequately compensated by money damages and for which Mattel has no adequate
24 | remedy at law. Accordingly, Mattel is entitled to an order restraining further
25 | breach of Bryant's fiduciary duty to Mattel and/or restraining Counter-defendants
26 | from continuing to benefit from such breach.

EXHIBIT _____ 5

PAGE _____ 299

**Eighth Counterclaim**

**Aiding and Abetting Breach of Fiduciary Duty**

**(Against MGA, Larian and Does 4 through 10)**

136.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 135, above, as though fully set forth at length.

137.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant held a position of trust and confidence at Mattel.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that Bryant owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to secretly developing and designing Bratz while employed by Mattel and by secretly assisting Larian and MGA .

138.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) held positions of trust and confidence at Mattel.  At all times herein mentioned, MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) owed a fiduciary duty to Mattel not to take any action that would be contrary to Mattel's best interests, including but not limited to taking confidential trade secret information from Mattel's premises and providing that information to a competitor.

139.  Despite such knowledge, Counter-defendants MGA, Larian and Does 4 through 10 intentionally and without justification solicited, encouraged, aided and abetted and gave substantial assistance to the Mattel Employees to breach their fiduciary duties to Mattel, knowing that their conduct would constitute breaches of their fiduciary duties to Mattel.

140.  As a direct and proximate result of Counter-defendants' efforts, the Mattel Employees did breach their fiduciary duties to Mattel and Mattel has incurred damages in an amount to be proven at trial.  Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

EXHIBIT _____ W

PAGE _____ 300                    -69-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1    141. In taking the aforesaid actions, MGA, Larian and Does 4 through

2  10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's

3  rights. Accordingly, Mattel is entitled to recover exemplary damages from

4  Counter-defendants in an amount to be determined at trial.

5                              **Ninth Counterclaim**

6                          **Breach of Duty of Loyalty**

7                        **(Against Bryant and Machado)**

8    142. Mattel repeats and realleges each and every allegation set forth in

9  paragraphs 1 through 141, above, as though fully set forth at length.

10    143. As employees of Mattel, Bryant and Machado owed a duty of

11  undivided loyalty to Mattel. Pursuant to this duty, Bryant and Machado could not

12  compete with Mattel or assist a competitor of Mattel during their employment with

13  Mattel. Pursuant to this duty, Bryant and Machado were required to always give

14  preference to Mattel's business over their own, similar interests during the course of

15  their employment with Mattel.

16    144. Bryant and Machado breached their duty of loyalty to Mattel in

17  that, while employed by Mattel, they secretly aided, assisted and worked for a

18  competitor of Mattel, including without limitation by entering into agreements with

19  a Mattel competitor. As alleged above, they also breached the aforementioned duty

20  by using Mattel property and resources for the benefit of, and to aid and assist,

21  themselves personally and the competitor of Mattel.

22    145. As a direct and proximate result of Counter-defendants' wrongful

23  conduct, Mattel has incurred damages in an amount to be determined at trial.

24    146. Counter-defendants acted with malice, fraud and oppression, and

25  in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an

26  award of punitive damages against Counter-defendants in an amount to be

27  determined at trial.

EXHIBIT ___ W

PAGE _30|

-70-

!154363.2

147. Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining further breach of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-defendants from continuing to benefit from such breach.

148. In breaching their duty of loyalty to Mattel, Bryant and Machado acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

## Tenth Counterclaim
### Aiding and Abetting Breach of Duty of Loyalty
### (Against MGA, Larian and Does 4 through 10)

149. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 148, above, as though fully set forth at length.

150. MGA, Larian and Does 4 through 10 knew that Bryant, as an employee of Mattel, owed a duty of loyalty to his employer. MGA, Larian and Does 4 through 10 knew that this duty included an obligation on the part of Bryant not to compete with Mattel or assist a competitor of Mattel during the term of his employment with Mattel. MGA, Larian and Does 4 through 10 also knew that Bryant was required to give preference to Mattel's business over his own, similar interests or those of Mattel's competitors. or those of Mattel's competitors during the course of his employment with Mattel.

151. MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) were employed by Mattel, and, as employees of Mattel, that they owed duties of loyalty to Mattel. MGA, Larian and Does 4 through 10 knew that these duties included an obligation on the part of the Mattel

EXHIBIT ___W___

PAGE ___302___

-71-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

21S4363.2

1 | Employees (excluding Bryant) not to compete with Mattel or assist a competitor of
2 | Mattel during their Mattel employment.

3 | 152. Despite such knowledge, Counter-defendants MGA, Larian and
4 | Does 4 through 10 intentionally and without justification solicited, encouraged,
5 | aided and abetted and gave substantial assistance to the Mattel Employees to
6 | breach their duties of loyalty to Mattel, knowing that their conduct would constitute
7 | breaches of their duties of loyalty to Mattel.

8 | 153. As a further consequence of Counter-defendants' efforts, Mattel
9 | has suffered injury and is entitled to compensatory damages in an amount to be
10 | proven at trial.

11 | 154. In taking the aforesaid actions, MGA, Larian and Does 4 through
12 | 10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's
13 | rights. Accordingly, Mattel is entitled to recover exemplary damages from
14 | Counter-defendants in an amount to be determined at trial.

15 | **Eleventh Counterclaim**
16 | **Conversion**
17 | **(Against All Counter-defendants)**

18 | 155. Mattel repeats and realleges each and every allegation set forth in
19 | paragraphs 1 through 154, above, as though fully set forth at length.

20 | 156. Counter-defendants wrongfully converted Mattel property and
21 | resources by appropriating and using them for their own benefit and gain and for
22 | the benefit and gain of others, without the permission of Mattel.

23 | 157. Mattel was entitled to, among other things, the exclusive right
24 | and enjoyment in property and tangible materials owned by Mattel, including
25 | without limitation such proper and materials that were created by Bryant while he
26 | was a Mattel product designer. Such property was taken by Bryant from Mattel to
27 | further his own interests and, in at least some instances, provided by Bryant to
28 | Larian and MGA in furtherance of the interests of Bryant, Larian and MGA.

158. In addition, Counter-defendants wrongfully converted Mattel's property by removing the Trade Secret Materials in electronic and paper form from Mattel's offices. Counter-defendants did so without Mattel's permission and continue to possess them.

159. As a direct and proximate result of Counter-defendants' wrongful conversion of Mattel property, including those relating to Bratz and Mattel's Trade Secret Materials, Mattel has incurred damages. Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

160. As a result of Counter-defendants' acts of conversion, Mattel is entitled to damages in an amount sufficient to indemnify Mattel for the loss suffered, which is not measured by the value of the property misappropriated, but includes the lost profits that Mattel suffered as a result of the conversion or, alternatively, the profits generated by the Counter-defendants that would not have been generated but for the conversion. Only such a measure of damages would fully and fairly compensate Mattel for the injury it suffered due to Counter-defendants' acts of conversion.

161. Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

162. Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining Counter-defendants from further conversion of Mattel property and resources and/or restraining Counter-defendants from continuing to benefit from such conversion.

1                                  **Twelfth Counterclaim**

2                                  **Unfair Competition**

3            **(Common Law and *Cal. Bus. & Prof. Code* § 17200)**

4                **(Against All Counter-defendants)**

5         163. Mattel repeats and realleges each and every allegation set forth in

6 paragraphs 1 through 162, above, as though fully set forth at length.

7         164. Section 17200 of the California Business and Professions Code

8 prohibits unfair competition, including "any unlawful, unfair or fraudulent business

9 act or practice . . . ."

10         165. By engaging in the foregoing conduct, Counter-defendants have,

11 individually and in combination, engaged in unlawful, unfair and/or fraudulent acts

12 of unfair competition in violation of both the common law of the state of California

13 and *Cal. Bus. & Prof. Code* § 17200 *et seq.* Such conduct included, without

14 limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal Code*

15 § 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a).

16 Such conduct also included, without limitation, MGA's and Larian's disparagement

17 of Mattel's products and misrepresentations as alleged above.

18         166. As a result of the aforementioned conduct, Mattel has suffered

19 damages and will imminently suffer further damages, including but not limited to

20 lost profits in an amount to be proven at trial. No adequate remedy at law exists for

21 the wrongs and injuries Mattel has suffered and will continue to suffer, and Mattel

22 is entitled to an injunction enjoining Counter-defendants' continued wrongful acts.

23 Mattel is also entitled to recover compensatory and exemplary damages pursuant to

24 the doctrine of common law unfair competition and *Cal. Civ. Code* § 3294.

25

26 EXHIBIT _____ W

27

28 PAGE _____ 305

2154363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1
2
3

### Thirteenth Counterclaim

### Declaratory Relief

### (Against All Counter-defendants)

4   167.  Mattel repeats and realleges each and every allegation set forth in

5   paragraphs 1 through 166, above, as though fully set forth at length.

6   168.  As shown in the foregoing paragraphs above, an actual

7   controversy exists between Mattel and Counter-defendants regarding Counter-

8   defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

9   169.  Accordingly, Mattel seeks a declaration of the Court that

10   Counter-defendants have no valid or protectable ownership rights or interests in

11   Bratz, and that Mattel is the true owner of the same, and further seeks an

12   accounting and imposition of a constructive trust over Bratz, including without

13   limitation registrations and applications for registrations relating thereto made or

14   filed by Counter-defendants and third parties, and over all revenues and other

15   monies or benefits derived or obtained from MGA's and Bryant's purported

16   ownership, use, sale, distribution and licensing of Bratz.

17   170.  Mattel seeks a declaration of the Court that any and all

18   agreements between Bryant, on the one hand, and MGA, on the other hand, in

19   which Bryant purports to assign to MGA any right, title or interests in any work

20   that he conceived, created or reduced to practice while a Mattel employee,

21   including but not limited to the Bratz designs, is void and of no effect, including

22   without limitation because Bryant had previously assigned said right, title or

23   interest to Mattel and because Mattel was otherwise the owner of said right, title or

24   interest.

25   ### Prayer for Relief

26   WHEREFORE, Mattel respectfully requests judgment:

27   1.  For a declaration that Counter-defendants have no valid or

28   protectable ownership interests or rights in Bratz designs and works conceived,

2154363.2

EXHIBIT ___ ⏄ ___

PAGE ___ 306 ___

-75-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1 created or reduced to practice by Bryant during the term of his Mattel employment

2 and/or by any others then-employed by Mattel, as well as in all derivatives

3 prepared therefrom, and that Mattel is the true owner of the foregoing;

4        2.    For a declaration that any agreement between Bryant, on the one

5 hand, and MGA or any person or entity, on the other hand, in which Bryant

6 purported to assign any right, title or interests in any work that he conceived,

7 created or reduced to practice while a Mattel employee, including but not limited to

8 the Bratz designs, is void and of no effect;

9        3.    For an Order enjoining and restraining Counter-defendants, their

10 agents, servants and employees, and all persons in active concert or participation

11 with them, from further wrongful conduct, including without limitation from

12 imitating, copying, distributing, importing, displaying, preparing derivatives from

13 and otherwise infringing Mattel's copyright-protected works;

14        4.    For an Order, pursuant to 17 U.S.C. § 503(a) and other

15 applicable law, impounding all of Counter-defendants' products and materials that

16 infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles

17 by which copies of the works embodied in Mattel's copyrights may be reproduced

18 or otherwise infringed;

19        5.    For an Order mandating that Counter-defendants return to Mattel

20 all tangible items, documents, designs, diagrams, sketches or any other

21 memorialization of inventions created or reduced to practice during Bryant's

22 employment with Mattel as well as all Mattel property converted by Counter-

23 defendants;

24        6.    For an Order mandating specific performance by Bryant to

25 comply with and satisfy Bryant's contractual obligations to Mattel;

26        7.    That Mattel be awarded, and Counter-defendants be ordered to

27 disgorge, all payments, revenues, profits, monies and royalties and any other

28 benefits derived or obtained as a result of the conduct alleged herein, including

2154363.2

EXHIBIT _____ W

PAGE ___ 367

-76-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  without limitation of all revenues and profits attributable to Counter-defendants'

2  infringement of Mattel's copyrights under 17 U.S.C. § 504;

3        8.    For an accounting of all profits, monies and/or royalties from the

4  exercise of ownership, use, distribution, sales and licensing of Bratz;

5        9.    For the imposition of a constructive trust over Bratz, including

6  without limitation registrations and applications for registrations relating thereto

7  made or filed by Counter-defendants and third parties, and all profits, monies,

8  royalties and any other benefits derived or obtained from Counter-defendant's

9  exercise of ownership, use, sale, distribution and licensing of Bratz;

10       10.    That Mattel recover its actual damages and lost profits;

11       11.    That Counter-defendants be ordered to pay exemplary damages

12  in a sum sufficient to punish and to make an example of them, and deter them and

13  others from similar wrongdoing;

14       12.    That Counter-defendants be ordered to pay treble its general and

15  special damages, plus interest, costs and attorney's fees incurred by reason of

16  Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

17       13.    That Counter-defendants be ordered to pay double damages due

18  to their willful and malicious misappropriation of Mattel's trade secrets with

19  deliberate intent to injure Mattel's business and improve its own;

20       14.    That Counter-defendants pay to Mattel the full cost of this action

21  and Mattel's attorneys' and investigators' fees; and

22

23

24

25

26  EXHIBIT _____ W

27

28  PAGE _____ 308

2154363.2

-77-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1          15.   That Mattel have such other and further relief as the Court may

2   deem just and proper.

3

4   DATED:  July 12, 2007          QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP

5

6                                  By _____

7                                     John B. Quinn
                                      Attorneys for Defendant and Counter-
8                                     claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                 EXHIBIT ___W___

27

28                                 PAGE ___309___

21 54363.2

-78-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1                      **DEMAND FOR JURY TRIAL**

2

3           Mattel, Inc. respectfully requests a jury trial on all issues triable

4 thereby.

5

6 DATED: July 12, 2007            QUINN EMANUEL URQUHART OLIVER &
                            HEDGES, LLP

7

8                     By_____

9                      John B. Quinn
                     Attorneys for Defendant and Counter-

10                      claimant Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                 EXHIBIT ___W___

27

28                                 PAGE ___310___

-79-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

# EXHIBIT X

## FORMER MATTEL EMPLOYEES - 04/20/06

| | A ACTIVE EMPLOYEES | B MGA POSITION | C MGA DATES | D MATTEL DATES |
|---|---|---|---|---|
| 1 | ACTIVE EMPLOYEES | MGA POSITION | MGA DATES | MATTEL DATES |
| 2 | | | | |
| 3 | Abundis, Ricardo | SR. SALES ANALYST | 12/06/04-PRESENT | 07/00-11/04 |
| 4 | Bate, Ian | QUALITY ASSURANCE MANAGER | 7/31/2006-PRESENT | 7/2000-10/2000 |
| 5 | Bloodworth III, John E. | Product Manager, Games | 08/21/06-PRESENT | 06/01/06-08/06 |
| 6 | Bloodworth III, John E. | Product Manager, Games | 08/21/06-PRESENT | 03/1999-01/2000 |
| 7 | Bloomfield, Kevin | SR. DESIGNER | 11/28/02-PRESENT | 10/00-11/00 |
| 8 | Brawer, Ron | EVP MARKETING | 10/05/04-PRESENT | 1996-2004 |
| 9 | Brisbois, Janine (CANADA) | VP NAT'L ACCTS. | 10/04/05-PRESENT | 1/2001-9/2005 |
| 10 | Castilla, Jorge | MGR. SALES PLANNING | 04/03/06-PRESENT | 06/98-03/06 |
| 11 | Chang, Suzy | Sr. Development Designer | 08/28/06-Present | Summer 2000 |
| 12 | Cheng, Steve | SR. DESIGNER | 04/03/02-PRESENT | 09/99-09/01 |
| 13 | Cody Jr., Gerry | Sr. Designer - Boys Toys | 11/20/06-PRESENT | 11/99-4/00 |
| 14 | Cody Jr., Gerry | Sr. Designer - Boys Toys | 11/20/06-PRESENT | 06/04-01/05 |
| 15 | Contreras, Nick | VP CUSTOMER MKTG | 11/29/04-PRESENT | 1994-2004 |
| 16 | Cooney Jr., Daniel | VP National Account Manager | 05/15/06-PRESENT | 01/04-05/06 |
| 17 | Cooney Jr., Daniel | VP National Account Manager | 05/15/05-PRESENT | 10/96-09/01 |
| 18 | Domingo, Luisito H | DEV. DESIGNER | 07/07/03-PRESENT | 10/96-10/01 |
| 19 | Dominguez, Greg Paul | PROD. DESIGNER | 04/01/02-PRESENT | 11/99-07/00 |
| 20 | Feldman, Joe | DESIGN ENGINEER | 12/08/04-PRESENT | 7/93-204 |
| 21 | Forrest, Craig | Product Manager, Games | 5/15/06-PRESENT | 10/97-01/05 |
| 22 | Garcia, Mia | DEV. DESIGNER | 2/23/05-PRESENT | 2000-2004 |
| 23 | Garcia, Paula | VP GIRLS TOY PD | 04/17/00-PRESENT | 12/97-04/00 |
| 24 | Gonzalez, Eduardo | Sr. Director of Quality Assurance | 10/16/06-PRESENT | 4/1985-1/1997 |
| 25 | Gonzalez, Eduardo | QUALITY ASS. MGR. | 1/3/05-PRESENT | 4/1985-1/1997 |
| 26 | Hall, Tracy | FACE PAINTER | 08/07/06 - PRESENT | 09/1987-04/1989 |
| 27 | Hansen, Melody | FACE PAINTER | 03/13/06-PRESENT | 04/94-01-06 |
| 28 | Hansen, Todd | PACKAGING ENG. | 5/2/05-PRESENT | 1994-1996 |
| 29 | Hatch, Jill | Sr. Director, National Sales | 09/18/06 - PRESENT | 04/04 - 09/02/2006 |
| 30 | Hatch, Jill | Sr. Director, National Sales | 09/18/06 - PRESENT | 06/96 - 01/03 |
| 31 | Hinh, Michael | MGR. CATEGORY ADV. | 6/27/05-PRESENT | 10/02-6/05 |
| 32 | Hsu, Janet | VP LIFESTYLES | 3/9/05-PRESENT | 8/2002-3/2005 |
| 33 | Koa, Alice | CUST. MKTG. MGR. | 2/21/05-PRESENT | 10/03-2/05 |
| 34 | Kaufman, Ken | ADVERTISING EXEC. | 01/03/05-PRESENT | 1995-2004 |
| 35 | Keller, Pamela E | VP Supply Chain & Operations | 09/25/06 - PRESENT | 10/95 - 01/99 |
| 36 | Keossian, Alejandro Gabriel | GR. DESIGNER | 08/11/03-PRESENT | 02/02-08/03 |
| 37 | Kim, Joyce | SR. PLAYSET DESIGN | 2/23/05-PRESENT | 9/98-9/04 |
| 38 | Kim, Young | SEAMSTRESS | 01/15/04-PRESENT | 09/98-06/02 |
| 39 | Kirst, Kristen | HAIR ROOTER | 03/31/03-PRESENT | 12/00-02/03 |
| 40 | Komatsu, Ellen | DEV. DESIGNER | 08/25/03-PRESENT | 10/98-03/02 |

EXHIBIT X
PAGE 311

(8 pgs)
Exhibit no. 1932
Date: 1/28/08
Contreras   P. Pyburn

Confidential - For Attorney's Eyes Only

MGA 1134723

EX 1932-0001

## FORMER MATTEL EMPLOYEES - 04/20/06

| | A | B | C | D |
|---|---|---|---|---|
| 41 | Larson, Jill | Sales Associate | starts 12/19/06 | 09/90-Present |
| 42 | Law, Chi Shing | DEV DESIGN MGR | 05/01/06-PRESENT | 08/00-08/02 |
| 43 | Leahy, Margaret | SR. SCULPTOR | TEMP TO PERM EFF 44/05 | 03/95-09/00 |
| 44 | Lumabao, Bo | PRD/MKT MANAGER | 2/14/05-PRESENT | 4/01-10/02 |
| 45 | Marks, Dorothy | SAMPLE MAKER | 07/26/05-PRESENT | 01/01/03-04/12/04 |
| 46 | Martin, Raymond John | PROD. MANAGER | 02/23/04-PRESENT | 08/97-02/03 |
| 47 | McBride, Susan | PROD. MANAGER | 06/03/02-PRESENT | 2000-2001 |
| 48 | Min, Aye Aye | HAIR ROOTER | 03/20/2006-PRESENT | 07/1994-02/2006 |
| 49 | Nigoghossian, Christine | SR. DOLL DESIGNER | 04/25/05-PRESENT | 1991-2002 |
| 50 | Paljo, Amelia Ivy Arafiles | SR. SCULPTURIST | 02/23/04-PRESENT | 08/98-01/04 |
| 51 | Parkinson, Ana Mancia | DEV. DESIGNER | 05/10/04-PRESENT | 1990-2004 |
| 52 | Paulino, Denise | SAMPLE MAKER | 01/18/05-PRESENT | 05/1991-3/2001 |
| 53 | Pestonji, Danny | DESIGNER | 06/01/04-PRESENT | 06/95-11/01 |
| 54 | Phoosopha, Poottipong | FACE PAINTER | 12/08/03-PRESENT | 03/97-10/01; 02/02-12/03 |
| 55 | Pickard, Michael | PACKAGING ENG. | 03/22/04-PRESENT | 10/92-02/02 |
| 56 | Ratleff, Leland | Senior HR Director | 12/04/06-PRESENT | 1985-12/1/06 |
| 57 | Ronquillo, Desiree Elisabeth | SR. DEV. DESIGNER | 05/03/04-PRESENT | 02/01-04/04 |
| 58 | Ruiz, Micaela | SAMPLE MAKER | 2/13/06-PRESENT | 1985-2/2006 |
| 59 | Sasic-Koetsier, Natasha | ILLUSTRATOR | 06/01/04-PRESENT | NOT APPLICABLE |
| 60 | Salazar, Maria Elena | SEAMSTRESS | 03/31/03-PRESENT | 1996-2001 |
| 61 | Salemmia, Shirin | RESEARCH MGR. | 02/17/03-PRESENT | 06/00-01/03 |
| 62 | Scott, Harvey | SAMPLE MAKER | 08/01/05-PRESENT | 1992-07/2005 |
| 63 | Su, Jier | DIR. PROJECT PLANNING | 8/15/05-PRESENT | 11/1998-07/2005 |
| 64 | Smith, Steffen J. | SR. PKG. ENG. | 10/13/03-PRESENT | 01/99-12/00 |
| 65 | Soai, Dennis | DEV. DESIGNER | 03/04/02-PRESENT | 06/95-02/00 |
| 66 | Thompson, Maria | SOURCING MANAGER | 04/04/04-PRESENT | 07/91-03/05 |
| 67 | Tran, Chau Ngoc | SAMPLE MAKER | 05/10/04-PRESENT | 08/88-10/03 |
| 68 | Upshaw, Gail | SEAMSTRESS | 5/23/05-PRESENT | 9/83-3/01 |
| 69 | Wang, Chang-Chin | ASSOC. FACE DES. | 05/03/04-PRESENT | 11/98-04/04 |
| 70 | Ward, Lance | STRUCTURAL ENG. | 08/02/04-PRESENT | 12/99-10/03 |
| 71 | Whittaker, Dawn | DESIGN DEV. MGR. | 12/06/04-PRESENT | 1998-2004 |
| 72 | Wong, Jenny | GR. DESIGNER | 09/09/02-PRESENT | 11/99-02/02 |
| 73 | | | | |
| 74 | | | | |
| 75 | 1 Confidentiality/Inventions Agreement | | | |
| 76 | 2 Proprietary Information Agreement | | | |
| 77 | 3 Employment Agreement | | | |
| 78 | | | | |
| 79 | | | | |
| 80 | NON-ACTIVE EMPLOYEES | MGA POSITION | MGA DATES | MATTEL DATES |

EXHIBIT ____X____

PAGE ____312____

Confidential - For Attorney's Eyes Only

MGA 1134724

EX 1932-0002

## FORMER MATTEL EMPLOYEES - 04/20/06

| | A | B | C | D |
|---|---|---|---|---|
| 81 | | | | |
| 82 | Aryapour, Daryoush | CREATIVE SER. DIR. | 10/25/99-04/14/00 | 03/96-06/99 |
| 83 | Blaser, Janet | DEV. DESIGNER | 06/14/04-09/10/04 | 04/95-04/04 |
| 84 | Bower Violette, Mari Joanne | PROD. MANAGER | 10/13/03-PRESENT | 07/99-03/03 |
| 85 | Brown, Lilia | GR. DESIGNER | 03/31/03-05/05/05 | UNKNOWN |
| 86 | Burlando, Gabriella | PROD. MANAGER | 03/5/02-06/27/06 | 11/97-10/01 |
| 87 | Cichavel, Fabienne | MARKETING MGR. | 04/10/92-08/23/02 | 8/95-2/96 |
| 88 | Dailey, Christine | VP PROD. DEV. | 05/14/01-11/22/02 | 05/84-01/86 |
| 89 | Gillmour, Kami | VP MARKETING | 05/24/99-07/14/00 | 05/90-04/99 |
| 90 | Hardouin, Christopher | PROJECT MGR. | 06/04/01-07/15/04 | 7/04-PRESENT |
| 91 | Hitch, Martin | VP INTL. SALES | 01/04/01-06/04/02 | 04/90-01/98 |
| 92 | Huntley, James | VP MARKETING | 5/23/05-PRESENT | 4/01-5/05 |
| 93 | Kagan, Randi | MARKETING DIR. | 09/23/02-07/22/03 | 11/97-04/98 |
| 94 | Koch, Andreas | PRODUCT MGR. | 10/18/99-01/11/01 | 04/98-12/98 |
| 95 | Mayer, Lyn Carol | FABRIC ARTIST | 07/21/03-05/05/05 | 02/98-04/01 |
| 96 | Mils, Frank | MANAGER OF QA | 03/20/06-07/07/06 | 08/97-07/01 |
| 97 | Nguyen, Xuanlan T | PATTERN MAKER | 05/19/03-31/03/05 | 08/92-10/99 |
| 98 | O'Brien, Gary Thomas | FIELD SALES DIR. | 05/10/04-07/22/04 | 1998-2002 |
| 99 | Otero, Jose | WEB DESIGNER | 08/11/03-2/1/06 | 2003? |
| 100 | Owen, Dan | SR. PAYSET MGR. | 08/23/04-12/13/05 | 01/99-08/04 |
| 101 | Parasole, Nicoletta | GR. DESIGNER | 01/05/04-6/27/04 | UNKNOWN |
| 102 | Rambeau, Roger | VP OPERATIONS | 05/13/96-04/03/98 | 10/72-10/85 |
| 103 | Reed, Wendy | SOFT GOODS SPEC. | 11/06/00-01/12/01 | 07/87-10/00 |
| 104 | Reyes, Scot Anthony | SM DOLL DESIGNER | 05/23/04-3/1/05 | 05/01-11/02; 01/04 |
| 105 | Ross, Lon | MARKETING DIR. | 11/13/00-08/03/01 | 1996-2000 |
| 106 | Schwartz, Dena | SR. PROD. MGR. | 05/21/01-04/08/02 | 1984-1988 |
| 107 | Shaver, Brandi | GR. DESIGNER | 05/03/04-06/30/06 | NOT APPLICABLE |
| 108 | Stinnett, Holly | SR. BRAND MGR. | 03/21/03-3/12/05 | 05/96-10/02 |
| 109 | Tawil, Lisa | LICENSING COORD. | 04/08/02-07/18/03 | 10/98-2/01 |
| 110 | Terry, Gord | DIR. OF SALES | 10/01/01-06/06/02 | 06/94-03/97 |
| 111 | Ward, Mercedeh | SR. PROD. DESIGNER | 10/00-1/01; 3/7/05-8/5/05 | 1988-2000 |
| 112 | Whitaker, Joseph | CONSULTANT | 11/05/96-03/27/97 | 88-'89; '82-'83; '64-'78 |
| 113 | Williams, Patrick | SVP SALES | 01/07/01-05/29/01 | 5/96-11/98 |
| 114 | Wong, Tong | DEV. DESIGNER | 03/10/03-05/16/03 | 1999-2003 |
| 115 | Wright, Cherrise | SOFT GOODS MGR. | 03/03/04-8/24/05 | 11/94-05/99 |
| 116 | Zbojniewicz, Dave* | DIR BUS PLANNING | 04/04-09/04 | 09/04-PRESENT |
| 117 | | | | |
| 118 | * Independent Contractor | | | |
| 119 | | | | |
| 120 | | | | |

EXHIBIT    X

PAGE    313

Confidential - For Attorney's Eyes Only

MGA 1134725

EX 1932-0003

## FORMER MATTEL EMPLOYEES - 04/20/06

| | A | B | C | D |
|---|---|---|---|---|
| | MGA TEMPS | MGA POSITION | MGA DATES | MATTEL DATES |
| 121 | | | | |
| 122 | | | | |
| 123 | Bryant, Carter | PRODUCT DESIGNER | ????-PRESENT | DON'T ASK |
| 124 | Feicht, Steve | ARTIST/JR. DESIGNER | 07/18/02-PRESENT | 01/97-01/02 |
| 125 | Ho, Jeff | SR. PROD. ARTIST | ????-10/04 | 1998-???? |
| 126 | Rhee, Anna | DOLL FACE DESIGN | ????-PRESENT | DON'T ASK |
| 127 | | | | |
| 128 | ** Signed Copyright Assignment | | | |

EXHIBIT _____ X _____

PAGE _____ 3 14 _____

Confidential - For Attorney's Eyes Only

MGA 1134726

EX 1932-0004