QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS<br><br><br><br>**PUBLIC REDACTED** | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To be heard by Discovery Master Robert C. O'Brian pursuant to the Court's orders of December 6, 2006 and January 6, 2009]**<br><br>MATTEL, INC.'S NOTICE OF MOTION AND RENEWED MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS BY MGA ENTERTAINMENT, INC. AS CALLED FOR BY MATTEL'S FIRST SET OF RFPS NO. 48, AND THIRD SET OF RFPS NOS. 43 THROUGH 75, 87 AND 88<br><br>[Declaration of Zachary D. Krug and Separate Statement filed concurrently herewith]<br><br>Date:   To be set<br>Time:   To be set<br>Place:   To be set<br><br>**Phase 2**<br>Pre-Trial Conference:   Not Set<br>Trial Date:   Not Set |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at a hearing before the Discovery Master Robert O'Brien, occurring at a date and time to be set by the Discovery Master, Mattel, Inc. ("Mattel") will, and hereby does, move to compel MGA Entertainment, Inc. ("MGA") to produce documents and things responsive to Mattel's Request No. 48 of its First Set of Requests for Documents and Things, and Mattel's Request Nos. 43-75, 87 and 88 of its Third Set of Requests for Documents and Things.

This Motion is made pursuant to Federal Rules of Civil Procedure 34 and 37 and pursuant to the former Discovery Master's April 14, 2008 Order Granting in Part Mattel's Motion to Compel MGA to Produce Communications Regarding This Action ("Order re First Set"), and April 14, 2008 Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents and Things by MGA ("Order re Third Set"). Because the Court had stayed Phase 2 discovery at the time that those Orders were entered, the former Discovery Master deferred ruling on portions of Mattel's Motions that related to Phase 2 matters, including Mattel's theft of trade secrets claims against MGA and MGA's unfair competition claims against Mattel. See Order re First Set at 6; Order re Third Set at 6-8.

Now that the Court has lifted the stay of Phase 2 discovery, Mattel renews its motions to compel on the grounds that the specific Requests identified above seek relevant, discoverable information, regarding which MGA has no proper basis to withhold production.

This Motion is based on this Notice of Motion and the concurrently filed Memorandum of Points and Authorities, Separate Statement and Declaration of Zachary Krug, and all other matters of which the Court may take judicial notice.

MOTION TO COMPEL

<u>**Statement of Rule 37-1 Compliance**</u>

The parties met and conferred regarding these motions on December 24, 2007, December 31, 2007, January 7, 2008, January 18, 2008 and dates thereafter.

DATED:  January 26, 2009         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ Jon Corey
   Jon Corey
   Attorneys for Mattel, Inc.

07209/2766962.12

-ii-

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

CASE BACKGROUND ..................................................................................... 2

ARGUMENT ................................................................................................ 6

I.      MATTEL'S MOTIONS RELATING TO PHASE 2 DOCUMENT
        REQUESTS ARE PROPERLY RENEWED NOW THAT PHASE 2
        DISCOVERY IS NO LONGER STAYED............................................................ 6

II.     MGA'S COMMUNICATIONS WITH KEY INDIVIDUALS
        REGARDING THIS ACTION SHOULD BE COMPELLED........................... 9

III.    MGA SHOULD BE COMPELLED TO PRODUCE RELEVANT
        PERSONNEL AND VENDOR FILES.......................................................... 13

IV.     MGA SHOULD BE COMPELLED TO PRODUCE DOCUMENTS
        RELATING TO MGA'S TRADE SECRET THEFT....................................... 15

CONCLUSION............................................................................................. 16

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

## **Cases**

4

Aiken v. Rimkus Consulting Group, Inc.,
   2007 WL 1101210 (S.D. Miss. Apr. 4, 2007) ......................................................13

5

Bernstein v. Travelers Ins. Co.,
   447 F. Supp. 2d 1100 (N.D. Cal. 2006) ..........................................................9, 13

6

7

Steinbach v. Credigy Receivables, Inc.,
   2006 WL 1007272 (E.D. Ky. Apr. 14, 2006) ......................................................13

8

9

## **Statutes**

10

Fed. R. Civ. P. 26(b)(1) ................................................................................................9

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

MGA has failed and refused to produce non-privileged communications about this litigation that MGA had with key witnesses and at least one defendant with knowledge about Mattel's trade secret theft and RICO claims.  It also has failed and refused to produce personnel files of witnesses related to Phase 2 claims.  This includes, specifically, the personnel files of Mattel employees who left to join MGA and whom Mattel has alleged were bribed (or paid well above market) to deliver to MGA Mattel trade secrets or were otherwise involved in the wrongdoing alleged in Mattel's claims.  These documents are, without question, likely to lead to the discovery of admissible evidence.

MGA has withheld these documents, even though the prior Discovery Master already ordered MGA to produce these same categories of documents—communications with witnesses and personnel files—as they related to Phase 1. Because Phase 2 discovery stayed by the time of his ruling, however, the former Discovery Master did not compel MGA to produce Phase 2-related communications or personnel files.  In doing so, the former Discovery Master made clear that Mattel would have the opportunity to seek such documents as they pertain to Phase 2. Mattel accordingly respectfully requests that the Discovery Master, like the prior Discovery Master did with similar Phase 1 documents, compel their production now.

Likewise, MGA has refused to produce documents related to MGA's "Scooter Samantha" and "Space Babes" products.  Mattel alleges that MGA stole these products from Mattel, like MGA was found at trial to have done with the Bratz product, and these projects further evidence MGA's RICO violations.  Because these products related to Mattel's Phase 2 claims, however, the prior Discovery Master declined to order their production when Mattel first moved in light of the then-existing stay.  Now that the Phase 2 discovery stay has been lifted, Mattel

-1-

1  requests that MGA now be compelled to produce documents relating to these
2  projects as well.

3       Mattel respectfully submits that its motion to compel should be granted.

4  ## **Case Background**

5       Mattel first asserted claims relating to this dispute in April 2004 when it sued
6  Carter Bryant and MGA subsequently intervened as a defendant later that same
7  year. After Carter Bryant and MGA brought their own reactive countersuits in 2004
8  and 2005, respectively, Judge Larson consolidated the three cases, and then, on
9  February 21, 2007, bifurcated these consolidated cases into two phases.[1]

10       Phase 1 focused on ownership of Bratz, Mattel's claims of copyright
11  infringement stemming from that ownership and Bryant's work with MGA while he
12  was a Mattel employee, including the illegal payments MGA made or offered to him
13  while he was a Mattel employee.[2]  It was the Phase 1 claims that the parties tried
14  before Judge Larson during the summer of 2008, resulting in jury verdicts in
15  Mattel's favor.  In particular, the jury found that Bryant had created or conceived of
16  the Bratz characters, the Bratz name and virtually all of the Bratz drawings, sculpts
17  and prototypes at issue during the time he was a Mattel employee.[3]  Such Bratz-
18  related inventions therefore were owned by Mattel, and not Bryant or MGA, under
19  Bryant's Inventions Agreement with Mattel.[4]  The jury also found MGA, its Hong
20  Kong affiliate and its CEO, Isaac Larian, liable on Mattel's claims for copyright

21     [1]  See Scheduling Orders in <u>Mattel v. Bryant</u>, Case No. CV 04-09059 ("Phase
22  1") and <u>MGA v. Mattel</u>, Case No. CV 05-02727 ("Phase 2"), dated February 21,
23  2007.  The Scheduling Orders are attached as Exhibit 1 to the concurrently filed
Declaration of Zachary D. Krug ("Krug Decl.").
24     [2]  See  July 2, 2007 Minute Order, at 2, Krug Decl., Ex. 2.
25     [3]  See Final Verdict Form as Given – Phase 1(a) ("Phase 1(a) Verdict"), dated
July 17, 2008, at 1-5, Krug Decl., Ex. 3.
26     [4]  See April 25 Order re Parties' Motions for Partial Summary Judgment, at 4-5,
27  Krug Decl., Ex. 4; Final Jury Instructions as Given – Phase 1(a), Instruction No. 21,
dated July 10, 2008, at 22-23, Krug Decl., Ex. 5.
28

-2-

infringement and for several intentional torts and awarded damages against these defendants.[5]

Phase 2 involves the remainder of the claims and counterclaims that the parties have asserted against each other. Mattel's Phase 2 claims include allegations that:

• Over the course of several years, MGA stole massive amounts of Mattel trade secrets in the U.S., Mexico and Canada, including Mattel's forward-looking, international business plans that MGA then used illegally to damage Mattel in the U.S. and global marketplaces.[6] In 2005, the Office of the Mexican Attorney General obtained a search warrant from the Mexican Federal Courts for MGA's facilities in Mexico City.[7] In the search, Mexican criminal authorities found and seized from MGA's offices both electronic and hard copies of hundreds of pages of documents containing Mattel's trade secrets.[8] ████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████[9]

---

[5]   Specifically, in addition to copyright infringement, the jury found these defendants had engaged in tortious interference with contract, conversion, aiding and abetting Bryant's breach of fiduciary duty and aiding and abetting Bryant's breach of the duty of loyalty. See Phase 1(a) Verdict at 6-7, Krug Decl., Ex. 3; Final Verdict Form as Given – Phase 1(b), dated August 22, 2008, at 2-9, Krug Decl. Ex. 6.

[6]   See Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims ("SAAC"), dated July 12, 2007, at ¶¶ 37-77, Krug Decl., Ex. 7.

[7]   See SAAC ¶ 53.

[8]   See id.

[9]   See Deposition Transcript of Susana Kuemmerle, dated January 28, 2008 ("Kuemmerle Depo. Tr."), at 140:20-144:10, Krug Decl., Ex. 8.

Despite knowing this, Larian and MGA promoted Machado to Vice President of Worldwide Marketing and transferred him to MGA's headquarters in the U.S.[10] Subsequently, when deposed in this case, Machado and another MGA manager directly involved in MGA's thefts of Mattel's trade secrets from Mattel's El Segundo headquarters, refused to answer questions based on their claimed Fifth Amendment rights.[11]

• MGA bribed then-Mattel employees beyond Bryant to secretly provide services to MGA while they were still employed by Mattel, in violation of contractual and fiduciary obligations and in violation of duties of loyalty, and otherwise interfered with Mattel's contractual relationships.[12] These included, for example, three Mattel sample makers who worked in Mattel's El Segundo Design Center and who secretly worked on hundreds of Bratz products over the span of five years.[13] MGA engaged in this misconduct through its vendors, Veronica and Peter Marlow, who paid these Mattel employees in cash and prepared bogus documentation using false names and false social security numbers in order to conceal their work for MGA.[14]

• MGA has participated in an enterprise that has engaged in numerous acts of mail and wire fraud, including conspiracy to commit perjury, and numerous

---

[10]   See SAAC ¶ 54.

[11]   See, e.g., Deposition Transcript of Carlos Gustavo Machado, dated October 14, 2008 ("Machado Depo. Tr."), at 53:10-14, 61:23-63:3, 68:21-69:6, 110:13-113:21, Krug Decl., Ex. 9; Deposition Transcript of Jorge Castilla, Vol. 1, dated October 28, 2008 ("Castilla Depo. Tr. Vol. 1") , at 51:15-22, 80:9-20, 84:19-85:6, 112:11-23. 113:11-114:22, Krug Decl., Ex. 10.

[12]   See SAAC ¶¶ 55-69.

[13]   See Deposition Transcript of Peter Marlow Vol. 2, dated June 16, 2008 ("P. Marlow Depo. Tr. Vol. 2"), at 409:19-410:5, 420:14-421:7, Krug Decl., Ex. 11.

[14]   See id. at 448:15-19, 453:3-454:9.

acts of commercial bribery, trade secret theft and criminal copyright infringement in violation of the RICO statute.[15]

The predicate acts of MGA's RICO violations also include MGA's tampering with evidence through its repeated alteration of documents and spoliation of evidence.   To cite a few examples, as noted above, MGA utilized fabricated documentation to conceal the secret work of Mattel employees with MGA. Furthermore, while still a Mattel employee, Bryant sent his signed MGA contract using a Mattel fax machine.  Larian instructed another MGA executive to white-out the fax header showing it came from Mattel before sending it to an MGA lawyer.[16] That copy also had the contract's date of September 18, 2000 whited-out.[17]   After Bryant began working with MGA, Bryant also put "1998" dates on Bratz drawings—dates that Bryant later admitted were wrong.[18]  MGA nevertheless used the false dates on those drawings in filings with the U.S. Copyright Office.[19]  And, in 2005, after he knew this suit had been filed, Farhad Larian, Isaac Larian's brother and a former MGA executive and director who was still working as a paid consultant for MGA at the time, destroyed ten to twelve boxes of documents and

---

[15]   See SAAC ¶¶ 88-105.
[16]   See Trial Transcript in Phase 1 ("Trial Tr.") at 1327:23-1329:11 (O'Connor), Krug Decl., Ex. 12.
[17]   See July 3, 2001 Fax from V. O'Connor to P. Glaser, Trial Exhibit ("TX") 13383, Krug Decl., Ex. 13.
[18]   See Carter Bryant's Responses to Mattel's Fifth Set of Requests for Admission, dated July 9, 2007, Response Nos. 27 and 29, at 24-28, Krug Decl., Ex. 14.
[19]   See Certificate of Registration VA 1-218-491 (Yasmin drawing), TX 511; Certificate of Registration VA 1-218-488 (Sasha drawing), TX 507; Certificate of Registration VA 1-218-487 (Jade drawing), TX 505; Certificate of Registration VA 1-218-490 (Cloe drawing), TX 509; Certificate of Registration VA 1-218-489 (Bratz group drawing), TX 513, Krug Decl., Exs. 15 – 19.

numerous emails and computer files containing information about Bratz.[20]   He intentionally did so to keep the documents from Mattel in this case.[21]   Further showing that the Larians' attempts to subvert the judicial process is part of a deliberate pattern, Farhad Larian had confirmed in an earlier email that Isaac Larian had instructed him (Farhad) to tell attorneys—falsely—that certain original documents could not be found in an insurance claim suit involving MGA.[22]

   •   MGA and its CEO, Isaac Larian, made deliberately false statements about Mattel and its products in order to damage Mattel's reputation in the marketplace and to garner an unfair advantage.[23]

   In short, Mattel's Phase 2 claims are based on allegations that MGA has engaged in a pattern of illegal conduct which goes well beyond its original theft of Bratz.

## Argument

### I.   MATTEL'S MOTIONS RELATING TO PHASE 2 DOCUMENT REQUESTS ARE PROPERLY RENEWED NOW THAT PHASE 2 DISCOVERY IS NO LONGER STAYED

   Near the conclusion of Phase 1 discovery in early 2008, Mattel submitted two discovery motions to the prior Discovery Master, the Hon. Edward R. Infante (Ret.).[24]   The motions sought an order overruling MGA's objections and to compel

---

[20]   See Deposition Transcript of Farhad Larian, Vol. 1 ("F. Larian Depo. Tr. Vol. 1"), dated February 4, 2008, at 53:10-16, 56:9-57:5, 65:25-67:2, Krug Decl., Ex. 20.
[21]   See id. at 56:12-57:2.
[22]   See Trial Tr. at 3785:19-24 (F. Larian), Krug Decl., Ex. 12; May 25, 2000 Email from F. Larian to I. Larian, TX 13380, Krug Decl., Ex. 21.
[23]   See SAAC ¶¶ 78-81.
[24]   See Mattel's Motion to Compel Production of Documents and Things by MGA, dated January 28, 2008 ("Mot. re Third Set"), Krug Decl., Ex. 22; Mattel's Motion to Compel MGA to Produce Communications Regarding This Action, dated February 4, 2008 ("Mot. re First Set"), Krug Decl., Ex. 23.

1   MGA to produce documents and information responsive to certain Mattel requests

2   for production in Mattel's First and Third Sets of Request for Production.[25]

3       On February 4, 2008, Judge Larson stayed all Phase 2 discovery.[26]

4   Thereafter, in mid-April, the Discovery Master granted Mattel's motions in

5   substantial part as they related to Phase 1 of the case that was tried before Judge

6   Larson this past summer.[27]

7       At that time, however, the Discovery Master declined to rule in Mattel's favor

8   on certain Phase 2-related requests because the Court had in the interim stayed

9   Phase 2 discovery.  Those requests upon which the Discovery Master declined to

10  rule are as follows:

11      • Request No. 48 from Mattel's First Set of RFPs: This request

12          sought MGA's non-privileged communications between with a

13          variety of individuals regarding the MGA-Mattel dispute.[28]

14      • Request Nos. 43-55 from Mattel's Third Set of RFPs:   These

15          requests sought documents relating to MGA's conception and

16          development of the "Scooter Samantha" products.[29]

---

[25]   Mattel's requests, along with MGA's objections, are set out in the
concurrently filed Consolidated Separate Statement in Support of its Renewed
Motion to Compel ("Separate Statement").
[26]   See Feb. 4, 2008 Minute Order ¶ 4, Krug Decl., Ex. 24.
[27]   See April 14, 2008 Discovery Master's Order Granting in Part Mattel's
Motion to Compel MGA to Produce Communications Regarding This Action
("Order re First Set"), Krug Decl., Ex. 25; April 14, 2008 Discovery Master's Order
Granting in Part and Denying in Part Mattel's Motion to Compel Production of
Documents and Things by MGA ("Order re Third Set"), Krug Decl., Ex. 26.
[28]   See Separate Statement at 1-3.  Through the meet and confer process, the
scope of this request was limited to certain specified individuals, twelve of whom
remain at issue here.
[29]   See Separate Statement at 8-26, 54-55.

MOTION TO COMPEL

- Request Nos. 56-75 from Mattel's Third Set of RFPs: These requests sought documents relating to MGA's conception and development of the "Space Babies" products.[30]

- Request Nos. 87 and 88 from Mattel's Third Set of RFPs: These requests sought documents from the personnel and vendor files of former Mattel/current MGA employees.[31]

Because the Discovery Master was persuaded that these requests, in whole or in part, were related to Phase 2 issues, he declined to compel MGA to produce documents responsive to these requests to that extent.  In particular, he granted Mattel's motion as to Request No. 48—non-privileged communications about the dispute—as it related to certain individuals with knowledge of Phase 1 claims and defenses, but declined to grant it as to others whose communications would be largely relevant to Phase 2: "In view of the stay on Phase 2 discovery, Mattel's request is denied as to the following individuals: Ron Brawer, Janine Brisbois, Carlos Gustavo Machado Gomez, Mariana Trueba Almade, Pablo Vargas San Jose, Susanna Kuemmerle, Schuyler Bacon, Nanette Black, Nick Contrereas, Dan Cooney, Jorge Castilla and Jill Hatch."[32]

Similarly, the Discovery Master declined to compel MGA to produce documents responsive to Request Nos. 34-75 on the development of "Scooter Samantha" and "Space Babies"—both of which are products relevant to Mattel's allegations regarding MGA's theft of trade secrets—because they "relate primarily to Phase 2 of this case, and discovery relating to Phase 2 has been stayed."[33]

---

[30] See Separate Statement at 27-55.

[31] See Separate Statement at 3-7.  The former Mattel employees subsequently employed by MGA are identified in TX 664, Krug Decl., Ex. 27.

[32] See Order re First Set at 6.

[33] See Order re Third Set at 6.

1    Finally, for these same reasons, the Discovery Master declined to compel

2  MGA to produce its personnel files of former Mattel employees pursuant to Request

3  Nos. 87 and 88, because the documents would "relate primarily to Phase 2 issues"—

4  *i.e.*, the theft of Mattel's trade secrets and other wrongdoing by MGA.[34]

5    In each Order, the Discovery Master's denial was without prejudice to

6  Mattel's rights to "seek[] additional documents responsive to [the requests] as part

7  of Phase 2 discovery."[35]  In light of the Court's recent order lifting the stay of Phase

8  2 discovery, and consistent with the prior Discovery Master's Orders, Mattel

9  therefore respectfully renews its prior motions with respect to these specific

10  requests.  As set forth more fully below, these requests seek relevant, discoverable

11  documents whose production should be compelled.  MGA has offered and can offer

12  no valid objection excusing their production.

13  **II.    MGA'S COMMUNICATIONS WITH KEY INDIVIDUALS**

14  **REGARDING THIS ACTION SHOULD BE COMPELLED**

15    Mattel is entitled to discovery that is "relevant to the claim or defense of any

16  party." Fed. R. Civ. P. 26(b)(1).  Moreover Mattel is entitled to information which,

17  although not admissible at trial, is "reasonably calculated to lead to the discovery of

18  admissible evidence."  Id.   Ultimately, the test for relevancy is "whether there

19  appears to be a sufficient connection between the target of the discovery probe and

20  the issues to be litigated to support a conclusion that there is a decent chance that the

21  party propounding the discovery would be able to use the information it uncovers

22  either as evidence or to help find evidence."  Bernstein v. Travelers Ins. Co.,

23  447 F. Supp. 2d 1100, 1105 (N.D. Cal. 2006).

24    Mattel's Request No. 48 seeks MGA's communications regarding this action

25  with twelve specific individuals who are either named defendants involved with the

26

---

27  [34]  See id. at 7.

[35]  See Order re First Set at 6; Order re Third Set at 8.

28

theft of Mattel's trade secrets or who are likely have knowledge about such actions by others. Each of these individuals has knowledge of Mattel's Phase 2 claims.

Carlos Machado, Mariana Trueba and Pablo Vargas. These three individuals, who are central to Mattel's trade secret theft and RICO claims, were senior executives of Mattel's Mexican subsidiary before Larian recruited them to be the first employees of defendant MGA de Mexico.[36] They used their positions of trust and confidence to steal Mattel's most sensitive business materials for the unlawful benefit (and at the direction of) of Isaac Larian and other MGA executives.[37]

Susanna Kuemmerle. Ms. Kuemmerle is an MGA executive who was involved in recruiting Machado, Trueba and Vargas to MGA de Mexico. She often acted as an intermediary between Larian and Machado, Trueba and Vargas when they communicated using the "plot04" email address that they had established for purposes of communicating with MGA about leaving Mattel and establishing MGA de Mexico.[38] These "plot04" emails are specifically alleged to be part of the RICO claim predicate acts of wire fraud.[39]

Ron Brawer. Mr. Brawer was a Mattel Senior Vice President and General Manager until he became MGA's Executive Vice-President of Sales and Marketing.[40] Mr. Brawer is also a key player in Mattel's trade secret theft and RICO claims. Since leaving Mattel, Brawer has "targeted certain Mattel employees who have broad access to Mattel proprietary information in an effort to induce and encourage them to join MGA and to steal or otherwise wrongfully misappropriate

---

[36] See SAAC ¶¶ 37-40.
[37] See SAAC ¶¶ 41-49; see also Mattel's Supplemental Responses to MGA's First Set of Interrogatories to Mattel ("Mattel's Supp. Resp."), dated December 7, 2007, at 21-33, Krug Decl., Ex. 28.
[38] See SAAC ¶¶ 42-43; see also Mattel's Supp. Resp. at 29-30, Krug Decl., Ex. 28; see also Kuemmerle Depo. Tr. at 185:8-187:23, Krug Decl., Ex. 8.
[39] See SAAC ¶ 93(b).
[40] See SAAC ¶¶ 55, 67.

-10-

Mattel confidential information and trade secrets."[41]   Brawer's communications furthering the enterprises' unlawful scheme are themselves predicate acts, thus constituting not only admissions but actual elements of Mattel's claims and defenses.

Janine Brisbois.  Ms. Brisbois was Director of Sales for the Girls Division for Mattel Canada until she joined MGA Canada as Vice President of Sales.[42]  Brisbois stole various electronic documents from Mattel when she left to join MGA.[43]   Her communications about this case, like those of Brawer, are highly likely to lead to the discovery of admissible evidence pertaining to Mattel's RICO and trade secret claims.

Schuyler Bacon.  Ms. Bacon is likewise a key MGA employee regarding Mattel's RICO and trade secret theft claims.  She joined MGA in 2004 as the Director of Recruiting and is MGA's Executive Recruiter.[44]  As such, she is directly involved in the events underlying Mattel's claims that MGA has poached Mattel's employees and induced them to abscond with Mattel's trade secrets.[45]

[46]   As shown below, Mattel employees recruited by Ms. Bacon brought Mattel's trade secrets with them to MGA.

---

[41]   SAAC ¶ 69; see also Mattel's Supp. Resp. at 33-35, Krug Decl., Ex. 28.
[42]   SAAC ¶ 71, 73.
[43]   See SAAC ¶¶ 74-76; see also Mattel's Supp. Resp. at 35-38.
[44]   See Deposition Transcript of Schuyler Bacon, dated September 27, 2007 ("Bacon Depo. Tr."), at 12:10-19, Krug Decl., Ex. 29.
[45]   SAAC ¶ 77.
[46]   Bacon Depo. Tr. at 51:22-25.

1    <u>Jorge Castilla.</u>  Mr. Castilla was a Mattel employee who Mr. Brawer and Ms.

2    Bacon were involved in recruiting to MGA.[47]  Before he left Mattel for MGA,

3    Castilla downloaded scores of confidential and proprietary documents (totaling

4    56MB) to a folder he aptly named "To Take."[48]  He then transferred the files to a

5    personal digital device before attempting to delete the file and folder from Mattel's

6    system.[49]  ████████████████████████████

7    ████████████████████████████████████

8    ████████████████████████████████████

9    ████████████████.  When deposed last year, Castilla refused to answer

10   questions about his conduct and instead invoked the Fifth Amendment nearly 500

11   times.[50]

12       <u>Nanette Black, Nick Contreras, Dan Cooney and Jill Hatch.</u>  Each of these

13   individuals were former Mattel employees who were, like Castilla, recruited by Ms.

14   Bacon.[51]  Each of these individuals is a former Mattel employee who left for senior

15   managerial positions at MGA.[52]

16       As the Discovery Master previously ruled, communications about the case

17   with knowledgeable witnesses are relevant and discoverable.  The communications

18   Mattel seeks here are unquestionably relevant to Mattel's theft of trade secrets and

19   RICO claims and should be produced.[53]  Each of these individuals was either

20   _____

21   [47]  <u>See</u> Bacon Depo. Tr. at 114:19-115:23; March 13, 2006 Email from R.
     Abundis to R. Brawer, S. Bacon and N. Coleman, MGA 1753319-21, Krug Decl.
22   Ex. 30 (regarding the recruitment of Jorge Castilla).

23   [48]  <u>See</u> Mattel's Supp. Resp. at 41-43.
     [49]  <u>See id.</u>
24   [50]  <u>See</u> Krug Decl. ¶ 11.

25   [51]  <u>See</u> Bacon Depo. Tr. at 115:4-23.
     [52]  <u>See</u> Mattel's Supp. Resp. at 84, 85, 87.
26   [53]  They are also relevant to the development of Mattel's defenses in Phase 2.
     For example, MGA has asserted claims against Mattel for trade dress.  But as the
27   Discovery Master previously noted "[a]ny proof of trade secret theft is also relevant
28        (footnote continued)

MOTION TO COMPEL

07209/2773998.3

directly involved or is likely to have knowledge of the events in question. Moreover, because Request No. 48 is by its terms limited to communications referring or relating to <u>this action</u>, there is not just "a decent chance," but a virtual certainty, that responsive documents will permit Mattel to "use the information it uncovers either as evidence or to help find evidence." <u>Bernstein</u>, 447 F. Supp. 2d at 1105. For this reason, courts consistently uphold similar requests for production. <u>See, e.g.</u>, <u>Steinbach v. Crediqy Receivables, Inc.</u>, 2006 WL 1007272, at *9 (E.D. Ky. Apr. 14, 2006) (overruling defendants' objections to requests for production for all "internal communications with respect to Plaintiff, . . . [the] lawsuit, or the claims in [the] [Amended] Complaint"); <u>Aiken v. Rimkus Consulting Group, Inc.</u>, 2007 WL 1101210, at *1-2 (S.D. Miss. Apr. 4, 2007) (permitting plaintiff to discover all "communications" and "correspondence" relating to its claim against defendant). The Court should do the same here.

## III.   <u>MGA SHOULD BE COMPELLED TO PRODUCE RELEVANT PERSONNEL AND VENDOR FILES</u>

Mattel's Request Nos. 88 and 87 seek production of documents from MGA's personnel or vendor files for former Mattel employees. These files contain information that is either relevant or reasonably calculated to lead to the discovery of admissible evidence regarding MGA's theft of trade secrets and its interference with Mattel's employees' continued duties to Mattel. For example, as an active part of its recruitment of Mattel employees, MGA has encouraged Mattel employees to abscond with Mattel's confidential information. (Indeed for some employees, this is likely the reason that they were recruited.) As such, the back-and-forth

to Mattel's defenses against MGA's unfair competition claims." January 25, 2007 Discovery Master's Order, at 14, Krug Decl., Ex. 31. Thus, MGA's communications may reveal not only that MGA stole trade secrets from Mattel, but the specific trade dress on which MGA bases its claims was in fact stolen from Mattel.

1   communications documenting the recruitment process and their hiring, including the

2   terms and conditions (salaries, bonus, etc.) are unquestionable relevant to Mattel's

3   allegation that MGA overpaid or paid above market salaries, bonuses, etc. to those

4   Mattel employees that left with Mattel trade secrets.[54]   Also highly relevant to

5   Mattel's claims is such information as interview dates, the identities of those who

6   did the interviewing, start dates, end dates, the identity of projects worked on, the

7   identities of supervisors and the dates and terms of promotions.   This type of

8   information is contained in MGA's personnel files; therefore, the files should be

9   produced.   Indeed, as to MGA employees such as Castilla who invoked the Fifth

10  Amendment even as to questions such as his employment history and the identity of

11  at least one of his MGA supervisors,[55] the information in MGA's personnel files are

12  crucial to Mattel's claims.

13       Throughout Phase 1 discovery, the Discovery Master recognized that the

14  personnel files of MGA employees could have relevant information and ordered

15  such files produced.[56]  The April 14 Order was no different:  the Discovery Master

16  ordered MGA to produced personnel files relevant to certain Phase 1 issues, but

17  declined to compel them with regard to Phase 2 because of the stay that was then—

18  but is no longer—in effect.[57]  They should now be compelled as to Phase 2 as well.

19

20  [54]   The "recruitment" of Machado, Trueba and Vargas, for example, entailed a

21  vast and surprising exchange of Mattel's confidential information.  See Mattel's Supp. Resp. at 28-30.

22  [55]   See Castilla Depo. Tr. at 24:24-25:4, 96:9-14, 253:19-21, 255:21-256:7, Krug

23  Decl., Ex. 10.

24  [56]   See, e.g., May 15, 2007 Order Granting Mattel's Motion to Compel
    Production of Documents and Things, at 11 n.4, Krug Decl., Ex. 32.  Indeed MGA

25  appeared, at least initially, to concede the same by agreeing to produce personnel
    files, subject to privilege.  See, e.g., MGA's Response to Mattel's First Set of

26  Request for Documents and Things, dated April 13, 2005, at 71-78, Krug Decl. Ex.

27  33.
    [57]   See Order re Third Set at 7.

28

## IV.  MGA SHOULD BE COMPELLED TO PRODUCE DOCUMENTS RELATING TO MGA'S TRADE SECRET THEFT

Mattel's Request Nos. 43-55 and 56-75 each seek documents relating to Mattel's claims in Phase 2. They bear directly on the timing, origins, conception, design and development of the "Scooter Samantha" and "Space Babies" projects at MGA which Mattel alleges are—like Bratz—stolen from Mattel through MGA's pattern and conspiracy of stealing Mattel product ideas and concepts, like Bratz, and marketing them as its own.

For example, Mattel alleges that MGA derived the "Scooter Samantha" doll from its theft of Mattel's "Scooter Shannen" doll.[58] The origins and development of "Scooter Samantha" are therefore at issue in this lawsuit, and the Requests seek documents related to that issue. For example, Request No. 43 seeks documents related to "when and under what circumstances Scooter Samantha was first conceived," and Request Nos. 53 and 54 seek documents sufficient to show the first manufacture and ship dates of "Scooter Samantha" products.[59] If MGA developed Scooter Samantha independently, then these documents should show that, or they will confirm MGA's theft. Either way, they are relevant to Mattel's claims.

MGA has offered no reasonable basis on which to object to producing these documents. When Mattel initially brought its motions in Phase 1, MGA's argument in opposition was simply that Mattel's requests were "premature" because they relate to Phase 2 issues. That may have been applicable then, but it is no longer. Now that Phase 2 has begun in earnest, these documents should be produced to allow Mattel to fully develop its claims and defenses in this Phase of the litigation.

[58] See Mattel's Supp. Resp. at 44 (re Scooter Samantha), 92 (re Scot Reyes).
[59] See Separate Statement at 8, 22-24, 54-55. The same is true of Mattel's Requests regarding "Space Babies."

07209/2773998.3

-15-

MOTION TO COMPEL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Conclusion

Mattel respectfully requests that its motion be granted in its entirety.

DATED:  January 26, 2009          QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES, LLP


                                  By /s/ Jon Corey
                                  _____
                                     Jon Corey
                                     Attorneys for Mattel, Inc.