# EXHIBIT 8

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 9

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 10

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 11

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 12

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                  EASTERN DIVISION

4                   - - -

5       HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                   - - -

7    MATTEL, INC.,                    )
                                      )
8              PLAINTIFF,             )
                                      )
9        VS.                          )   NO. CV 04-09049
                                      )
10   MGA ENTERTAINMENT, INC., ET. AL.,)
                                      )
11             DEFENDANTS.            )   TRIAL DAY 7
                                      )   PAGES 1255-1390
12   AND CONSOLIDATED ACTIONS,        )
                                      )

13

14

15       REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16                RIVERSIDE, CALIFORNIA

17              WEDNESDAY, JUNE 4TH, 2008

18                   8:28 A.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
            FEDERAL OFFICIAL COURT REPORTER
24              3470 12TH STREET, RM. 134
            RIVERSIDE, CALIFORNIA  92501
25                951-274-0844
               WWW.THERESALANZA.COM

**CERTIFIED COPY**

EXHIBIT  12
PAGE  750

```
 1   Q    WERE YOU STILL UNCOMFORTABLE THAT MR. BRYANT WAS STILL

 2   WORKING FOR A MATTEL COMPETITOR?

 3   A    YES.

 4   Q    DID YOU SPEAK WITH MR. LARIAN OR MS. TREANTAFELLES OR

 5   ANYONE ELSE ABOUT THAT FACT?                                    09:57

 6   A    YES.

 7   Q    WHO DID YOU SPEAK TO?

 8   A    FOR CERTAIN, I SPOKE TO ISAAC LARIAN, AND I'M SURE I SPOKE

 9   TO PAULA AS WELL.

10   Q    DID YOU CALL ATTENTION TO THE FACT THAT YOU RECEIVED THIS  09:57

11   SIGNED CONTRACT AND IT HAD THIS FAX HEADER ON THE TOP?

12   A    I DID.

13   Q    IF YOU COULD LOOK AT EXHIBIT 15.

14        I'M GOING TO ASK YOU IF YOU CAN IDENTIFY THAT

15   DOCUMENT.                                                       09:58

16   A    OKAY.

17   Q    CAN YOU IDENTIFY IT?

18   A    YES.

19   Q    WHAT IS IT?

20   A    IT'S THE LICENSE AGREEMENT BETWEEN MGA AND CARTER BRYANT.  09:58

21   Q    AND IS THAT THE FINAL SIGNED AGREEMENT?

22   A    YES, IT APPEARS TO BE.

23        MR. QUINN:  I'D OFFER EXHIBIT 15, YOUR HONOR.

24        MR. NOLAN:  NO OBJECTION, YOUR HONOR.

25        THE COURT:  IT'S ADMITTED.  YOU MAY PUBLISH.              09:58
```

EXHIBIT __12__

PAGE __251__

WEDNESDAY, JUNE 4, 2008         TRIAL DAY 7

| | |
|---|---|
| 1 | BY MR. QUINN: |
| 2 | Q    AND THIS IS THE AGREEMENT THAT YOU RECEIVED FROM |
| 3 | MR. BRYANT BY FAX. |
| 4 | A    I BELIEVE SO. |
| 5 | Q    IT SHOWS THERE, IN THE UPPER RIGHT, THAT IT'S DATED AS OF |
| 6 | SEPTEMBER 18, 2000. |
| 7 | DO YOU SEE THAT? |
| 8 | A    YES. |
| 9 | Q    WAS THAT DATE THERE WHEN YOU RECEIVED THIS DOCUMENT FROM |
| 10 | MR. BRYANT? |
| 11 | A    I BELIEVE SO, BUT I COULDN'T SAY FOR CERTAIN. |
| 12 | Q    BUT YOU DID NOTICE THAT A DATE WAS MISSING THERE. |
| 13 | THIS APPEARS TO BE THE DOCUMENT YOU GOT FROM |
| 14 | MR. BRYANT. |
| 15 | A    YES. |
| 16 | Q    AND YOU UNDERSTOOD THAT MR. BRYANT WAS STILL WORKING FOR |
| 17 | MATTEL AT THE TIME. |
| 18 | A    CORRECT. |
| 19 | Q    AND DID YOU RECEIVE THIS AROUND OR ABOUT SEPTEMBER 18, |
| 20 | 2000? |
| 21 | A    I BELIEVE SO, BUT IT WAS A LONG TIME AGO. |
| 22 | Q    SURE. |
| 23 | I'D LIKE YOU TO JUMP FORWARD NOW TO SOME TIME LATER |
| 24 | IN THE NEXT YEAR, IN 2001, WERE YOU EVER ASKED TO SEND THIS |
| 25 | CONTRACT TO ANYONE? |

09:5€
09:59
09:59
09:59
09:59

EXHIBIT 12
PAGE 252

```
 1  A    YES.

 2  Q    WHO WERE YOU ASKED TO SEND IT TO?

 3  A    PATTIE GLASER.

 4  Q    WHO'S PATTIE GLASER?

 5  A    OUTSIDE COUNSEL FOR MGA ENTERTAINMENT.            10:00

 6  Q    SHE'S A LAWYER WHO DID WORK FOR MGA?

 7  A    YES.

 8  Q    WHO ASKED YOU TO SEND THAT AGREEMENT TO MS. GLASER?

 9  A    ISAAC LARIAN.

10  Q    WHEN HE ASKED YOU TO SEND THAT AGREEMENT TO HIS OUTSIDE   10:00

11  LAWYER, DID HE GIVE YOU ANY PARTICULAR INSTRUCTIONS?

12  A    NO; NOT THAT I REMEMBER; JUST TO FAX IT TO HER.

13  Q    DID HE GIVE YOU ANY INSTRUCTIONS WITH RESPECT TO THE FAX

14  HEADER?

15  A    I WAS ASKED TO WHITE OUT THE FAX HEADER AT SOME POINT, AND   10:00

16  I DON'T RECALL IF THAT WAS UPON RECEIVING THE EXECUTED CONTRACT

17  OR AT THE TIME I SENT THE FAX TO PATTIE GLASER.

18  Q    I MAY HAVE GOTTEN THAT WRONG.  LET ME BACK UP.

19          AT SOME POINT YOU WERE ASKED TO WHITE OUT THE FAX

20  HEADER THAT SAID "BARBIE COLLECTIBLES"?            10:00

21  A    YES.

22  Q    YOU'RE JUST NOT SURE WHEN THAT WAS.

23  A    CORRECT.

24  Q    ARE THERE A COUPLE OF POSSIBILITIES YOU'RE THINKING OF AS

25  TO WHAT THAT WAS?                                 10:01
```

EXHIBIT  12
PAGE  253

1        **MR. NOLAN:**   I THINK IT'S LEADING; AND IT'S ALSO

2    TESTIFYING.

3            **THE COURT:**   SUSTAINED.

4    BY MR. QUINN:

5    Q    WHAT'S YOUR BEST RECOLLECTION AS TO WHEN IT WAS YOU WERE          10:01

6    ASKED TO WHITE OUT THAT FAX HEADER?

7    A    I BELIEVE IT WAS UPON FIRST RECEIVING IT.

8    Q    AND WHO WAS IT THAT ASKED YOU TO DO THAT?

9    A    ISAAC LARIAN.

10   Q    DID HE DO THAT AFTER YOU CALLED HIS ATTENTION TO IT?             10:01

11   A    YES.

12   Q    DO YOU RECALL WHEN IT WAS THAT HE LATER ASKED YOU TO SEND

13   IT TO HIS OUTSIDE LAWYER?

14   A    IT WAS SOME TIME IN 2001.

15   Q    DID HE TELL YOU WHY HE WANTED YOU TO SEND IT TO HIS              10:01

16   OUTSIDE LAWYER?

17   A    NOT THAT I RECALL.

18   Q    PUTTING ASIDE THE ISSUE OF THE HEADER, DID HE TELL YOU TO

19   MAKE ANY OTHER CHANGES BEFORE FAXING THIS TO MS. GLASER?

20   A    NOT THAT I RECALL.                                              10:02

21   Q    WHEN YOU SENT IT TO MS. GLASER, DID YOU HAVE A COPY OF THE

22   CONTRACT OR DID YOU HAVE TO GET A COPY OF THE CONTRACT?

23   A    I BELIEVE THE CONTRACT WAS HANDED TO ME AND TOLD TO FAX IT

24   TO HER.

25   Q    WHO HANDED IT TO YOU AND TOLD YOU TO FAX IT TO HER?             10:02

EXHIBIT __12__

PAGE __254__

```
 1  A    ISAAC LARIAN.

 2  Q    DID YOU DO THAT?

 3  A    I DID.

 4  Q    WOULD YOU TAKE A LOOK AT EXHIBIT 13383, WHICH IS IN YOUR

 5  BINDER.  MY QUESTION TO YOU IS WHETHER YOU CAN IDENTIFY THAT    10:02

 6  DOCUMENT?

 7  A    YES.

 8  Q    WHAT IS THAT?

 9  A    THIS IS THE FAX THAT I SENT TO PATTIE GLASER WITH THE

10  LICENSE AGREEMENT BETWEEN CARTER BRYANT AND MGA.               10:03

11  Q    THAT YOU SENT IN RESPONSE TO MR. LARIAN'S REQUEST.

12  A    YES.

13          MR. QUINN:  WE'D OFFER THAT, YOUR HONOR.

14          MR. NOLAN:  NO OBJECTION, YOUR HONOR.

15          THE COURT:  IT'S ADMITTED.  YOU MAY PUBLISH.           10:03

16          MR. QUINN:  IF WE COULD JUST ENLARGE THIS FIRST PAGE,

17  HERE.

18  BY MR. QUINN:

19  Q    IS THIS THE FAX COVER PAGE THAT YOU USED TO TRANSMIT THE

20  CONTRACT TO MS. GLASER?                                        10:03

21  A    YES.

22  Q    AND DOES SEEING THIS REFRESH YOUR RECOLLECTION AS TO WHEN

23  IT WAS YOU SENT IT TO MS. GLASER?

24  A    YES.

25  Q    IF WE COULD SEE THE NEXT PAGE.                            10:03
```

EXHIBIT __12__
PAGE __255__

1   THE COURT HAS NOT RULED ON.

2         **THE COURT:** OKAY. THANK YOU.

3

4

5

6

7

8

9

10

11                      CERTIFICATE

12

13   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
      STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF

14   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
      ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

15   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
      THE UNITED STATES.

16

17                                          6-4-08
      THERESA A. LANZA, CSR, RPR            DATE

18   FEDERAL OFFICIAL COURT REPORTER

19

20

21

22

23

24

25                            EXHIBIT 12
                            PAGE 256

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    EASTERN DIVISION

4    - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6    - - -

7    MATTEL, INC.,                    )

8                     PLAINTIFF,      )
                                      )
9           VS.                       )    NO. CV 04-09049
                                      )
10   MGA ENTERTAINMENT, INC., ET. AL.,)
                                      )
11                   DEFENDANTS.      )    TRIAL DAY 18
                                      )    MORNING SESSION
12   AND CONSOLIDATED ACTIONS,        )    PAGES 3690-3821
                                      )

13

14

15   REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16   RIVERSIDE, CALIFORNIA

17   TUESDAY, JULY 1ST, 2008

18   8:44 A.M.

19

20

21

22

23   THERESA A. LANZA, RPR, CSR
     FEDERAL OFFICIAL COURT REPORTER
24   3470 12TH STREET, RM. 134
     RIVERSIDE, CALIFORNIA  92501
25   951-274-0844
     WWW.THERESALANZA.COM

**CERTIFIED COPY**

EXHIBIT __12__

PAGE __257__

```
 1   YOUR BROTHER'S REQUEST?

 2   A    NO, I DID NOT.

 3   Q    IT'S TRUE, THOUGH, ISN'T IT, THAT YOUR BROTHER HAS TOLD

 4   YOU PREVIOUSLY TO MAKE DOCUMENTS UNAVAILABLE IN LITIGATION?

 5   ISN'T THAT TRUE?

 6         MR. NOLAN:  OBJECTION, YOUR HONOR.  RELEVANCE; 403;

 7   LACK OF FOUNDATION; AND ALSO HEARSAY.

 8         THE COURT:  OVERRULED.

 9   BY MR. QUINN:

10   Q    SIR, IT'S TRUE THAT IN CONNECTION WITH OTHER LITIGATION,

11   YOUR BROTHER HAS TOLD YOU TO MAKE DOCUMENTS UNAVAILABLE; ISN'T

12   THAT TRUE?

13   A    I WANT TO ANSWER, IF I CAN GO BACK FOR A SECOND.

14         I'VE PROVIDED YOU 12,000 PAGES OF DOCUMENTS.  SORRY,

15   I LOST TRACK OF MY

16         IS IT TRUE?  I THINK I KNOW WHAT YOU'RE REFERRING TO.

17         IN 2000, ISAAC AND I WERE BICKERING AT EACH OTHER,

18   AND WE WERE PLAYING A TIT-FOR-TAT GAME, AND HE DIDN'T WANT ME

19   INVOLVED IN LITIGATION AT THE TIME BECAUSE I HAD SCREWED UP

20   SOME CASE IN TEXAS; SO HE SIMPLY DIDN'T WANT ME TO DEAL WITH

21   THE ATTORNEYS IN THAT CASE.

22   Q    THAT MAY BE THE ANSWER TO A DIFFERENT QUESTION, SIR.

23         MY QUESTION IS, IT'S TRUE THAT YOUR BROTHER HAS TOLD

24   YOU PREVIOUSLY TO MAKE DOCUMENTS UNAVAILABLE IN LITIGATION?

25   THAT'S HAPPENED BEFORE; TRUE?
```

EXHIBIT 12
PAGE 258

1  A    WHAT HAPPENED WAS, IN THE FIREMAN'S FUND CASE, AS I SAID,

2  WE WERE PLAYING TIT-FOR-TAT; WE WERE BICKERING AT EACH OTHER;

3  AND HE DID NOT WANT ME INVOLVED IN THE CASE.  THERE WAS ONE

4  DOCUMENT THAT WE HAD GIVEN COPIES OF TO THE ATTORNEYS, AND THE

5  ORIGINAL WAS EXACTLY THE SAME AS THE COPY.  HE SIMPLY DIDN'T

6  WANT ME INVOLVED IN THE CASE, AND THAT'S WHY HE TOLD ME NOT TO

7  GIVE IT.

8  Q    SO HE TOLD YOU IN THAT CASE NOT TO MAKE THE LEGIBLE

9  ORIGINALS AVAILABLE TO FIREMEN'S FUND; CORRECT?  THAT'S WHAT HE

10  TOLD YOU?

11  A    BECAUSE HE WAS GOING TO HANDLE IT HIMSELF.

12  Q    YOU WROTE AN E-MAIL ABOUT THIS; CORRECT?

13  A    YES.

14  Q    YOU DIDN'T MAKE ANY MENTION OF THE FACT IN THE E-MAIL THAT

15  HE WAS GOING TO HANDLE IT HIMSELF, DID YOU?

16  A    AS I SAID, WE WERE PLAYING TIT-FOR-TAT, AND I WAS TRYING

17  TO SAY, 'I GOT YOU,' AND HE WAS TRYING TO SAY HE GOT ME; SO WE

18  HAD -- WE HAD A SIBLING RIVALRY.

19  Q    AND THE 'I GOT YOU' THAT YOU GAVE TO HIM WAS THAT YOU

20  REMINDED HIM THAT IN THIS FIREMAN'S FUND CASE, HE HAD

21  INSTRUCTED YOU NOT TO MAKE SOME ORIGINAL DOCUMENTS AVAILABLE,

22  AND YOU SAID, 'I DID IT ANYWAY.'

23       YOU SAID YOU DID IT ANYWAY; CORRECT?

24  A    THAT'S TRUE.

25  Q    NOW, AFTER YOU DISMISSED YOUR FRAUD CASE AGAINST

EXHIBIT   12
PAGE   259

```
 1  MR. LARIAN RELATING TO YOUR ALLEGATIONS OF CONCEALMENT OF

 2  BRATZ, HE WENT TO COURT AND GOT AN ATTORNEY'S FEES AWARD

 3  AGAINST YOU; CORRECT?

 4  A    YES, HE DID.

 5  Q    FOR $1 MILLION; CORRECT?

 6  A    YES, HE DID.

 7  Q    THAT'S STILL HANGING OVER YOU TO THIS DAY; ISN'T THAT

 8  TRUE?

 9  A    NO, IT'S NOT.

10  Q    HAVE YOU PAID IT?

11  A    NO, I HAVE NOT.

12  Q    HAS ANYBODY TAKEN CARE OF THAT, THAT YOU'RE AWARE OF?

13  A    TAKEN CARE OF IT, MEANING WHAT?

14  Q    LET ME ASK IT THIS WAY:  IT'S TRUE, ISN'T IT, THAT YOUR

15  BROTHER COULD, TOMORROW, GO EXECUTE AND TRY TO COLLECT THAT

16  MILLION DOLLAR ATTORNEY'S FEES AWARD?

17  A    ALL HE HAS TO DO IS GIVE ME A CALL AND I'LL WRITE HIM A

18  CHECK.

19  Q    HAS HE GIVEN YOU THAT CALL YET?

20  A    NO.

21  Q    HE COULD GIVE IT TO YOU TOMORROW.

22  A    IF HE WANTS TO, HE CAN.  HE PROMISED ME HE WOULDN'T

23  COLLECT IT.  IF HE WANTS TO, HE CAN.

24  Q    HAVE YOU EVER HEARD OF SOMETHING CALLED A SATISFACTION OF

25  JUDGMENT THAT SOMEBODY CAN FILE WITH THE COURT TO ABSOLUTELY
```

11:2
11:2
11:
11::
11:

EXHIBIT   12

PAGE   260

```
1    COMING BACK UNTIL 1:45.

2              ANYTHING FROM MGA?

3         MR. NOLAN:  NO.  WE'RE FINE.

4              (MORNING SESSION CONCLUDED.)

5

6

7

8

9

10

11

12

13                        CERTIFICATE

14

15   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
16   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
17   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.
18

19

20   THERESA A. LANZA, RPR, CSR                    7-2-08
     OFFICIAL COURT REPORTER                         DATE
21

22

23

24                                   EXHIBIT  12
25                                   PAGE     261
```

TUESDAY, JULY 1, 2008                    TRIAL DAY 18, MORNING SESSION