QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | Honorable Stephen G. Larson |
| Defendant. | MATTEL, INC.'S RESPONSE TO THE MGA PARTIES' EVIDENTIARY OBJECTIONS TO MATTEL'S OPPOSITION TO THE MGA PARTIES' MOTION FOR REMITTITUR |
| AND CONSOLIDATED ACTIONS | |
| | Hearing Date: February 11, 2009<br>Time: 10:00 a.m.<br>Place: Courtroom 1 |

07209/2771007.2

Mattel, Inc. ("Mattel") respectfully submits the following Response to the MGA Parties' Evidentiary Objections to Mattel's Opposition to the MGA Parties' Motion for Remittitur.  MGA objects to Mattel's proffered evidence as inadmissible but, in doing so, ignores Mattel's stated purpose for submitting this evidence.  Mattel merely seeks to show that MGA and Larian do not, and cannot in good faith, establish that it was *impossible* for the jury to have found $100 million in separate, unduplicated damages across the different causes of action.  The very fact that the jury made these statements affirms this.[1]  And as Mattel has previously informed the Court, "MGA's counsel, and Larian himself, . . . were unequivocally told by the jurors that their award to Mattel totaled more than $100 million" -- a fact that MGA did not previously dispute and *still* does not dispute.[2]

Mattel recognizes that this Court previously rejected the proffer of jury statements to clarify the jury's intent and does not seek to relitigate that ruling.[3]  The question presented by MGA's current motion, however, is not what the jury intended, but whether the only possible explanation for their verdict requires its invalidation.  The Court's decision to decline inquiry into juror intent does not mean that it must close its eyes to a valid explanation for the verdict that refutes MGA's motion merely because it happens to be offered by members of the jury.[4]  Perhaps even more important, the juror

---

[1] See Declaration of Jon D. Corey in Support of Mattel's Opposition to MGA's Motion for Remittitur; Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, dated August 29, 2008 (Dkt No. 4288), at 1, Declaration of Michael T. Zeller in Support of Mattel's Opposition to MGA's Motion for Remittitur ("Zeller Dec."), Exh. 1; Trial Tr. 8356:10-8361:16; E. Pettersson and T. Richards, Mattel Wins $100 Million in Damages Over Bratz Dolls, Bloomberg, August 26, 2008, available at http://www.bloomberg.com/apps/news?pid=newsarchive&sid=aHyiExtzSll8.

[2] See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, dated August 29, 2008 (Dkt No. 4288), at 1, Zeller Dec., Exh. 1

[3] See Order Denying Mattel's Request to Recall the Jury, dated September 3, 2008 (Dkt No. 4295), Zeller Dec., Exh. 2.

[4] See Mattel's Opposition to the MGA Parties' Motion for Remittitur, dated January 12, 2009, at 4 n.5.

statements, whether or not admitted for their truth, illustrate precisely why the Ninth Circuit's waiver rule exists and why it should be applied here.[5]

Nothing in MGA's cited authorities requires the Court to close its eyes to the jurors' statements in these circumstances. Rather, they merely set forth the general premise of Rule 606(b) that inquiry into the jurors' "mental processes" may not be used to impeach the verdict -- something MGA, not Mattel, seeks to do. See Fed. R. Evid. 606(b). In Travers v. Meshriy, 627 F.2d 934 (9th Cir. 1980), defendants sought to introduce evidence "about the manner in which [the jurors] arrived at the verdict." Id. at 941. The Ninth Circuit held that "[t]he district court's refusal to reopen the case to hear the evidence about the jury's *internal deliberations* was correct." Id. (emphasis added).[6] Similarly, the holding in Sims' Crane Serv., Inc. v. Ideal Steel Prods., Inc., 800 F.2d 1553 (11th Cir. 1986) is of no moment. In Sims', after a general verdict was returned for the plaintiff, the foreman offered to explain the jury's "reason" for the verdict and stated that because the jurors were unable to find gross negligence by either

---

[5] See id. Indeed, there is authority supporting admission of these statements for their truth. See, e.g., Trans-World Int'l, Inc. v. Smith-Hemion Prods., Inc., 952 F. Supp. 667, 671 (C.D. Cal. 1996) ("Courts have held that the rule even permits *post*-discharge inquiry to determine *what* the jury decided, as contrasted with *how* or *why* it did so.") (citations omitted) (emphasis in original); TeeVee Toons, Inc. v. MP3.com, 148 F. Supp. 2d 276, 278 (S.D.N.Y. 2001) ("[F]ederal law distinguishes between inquiring into the jury's deliberative process, which Rule 606(b) forbids, and merely seeking to determine whether the verdict actually agreed to by the jury is the same as the verdict reported to the court, which the case law permits."); Resolution Trust Corp. v. Stone, 998 F.2d 1534, 1548 (10th Cir. 1993) (district court properly questioned the jury foreman concerning whether the jury meant to aggregate the individual damages awards because Rule 606(b) "does not preclude a juror from testifying as to the potential miscommunication of the verdict"); McCullough v. Consolidated Rail Corp., 937 F.2d 1167, 1171 (6th Cir. 1991) (district court properly doubled damages award based on juror testimony that the panel had decreased the intended award by half to account for the plaintiff's contributory negligence; "jurors [are] competent witnessses on the issue of whether the verdict delivered was the one agreed upon").

[6] The other Ninth Circuit case cited by MGA, U.S. v. Hernandez-Escarsega, 886 F.2d 1560 (9th Cir. 1989), is even less applicable. There, the Ninth Circuit affirmed the district court's refusal to hold an evidentiary hearing, where a juror affidavit suggested that "one of the jurors used prayer and a belief in a sign from God as part of her *mental process*." Id. at 1579 (emphasis added).

party, they had decided to divide up the damages. Id. at 1555. The Eleventh Circuit stated that the foreman's comments -- which unquestionably touch upon the manner in which the jury reached its verdict -- "was heard as a matter of curiosity" and could not serve as a binding special interrogatory. Id.

Robles v. Exxon Corp., 862 F.2d 1201 (5th Cir. 1989), and Plummer v. Springfield Terminal Railway Co., 5 F.3d 1 (1st Cir. 1993), are likwise inapposite. These cases provide that Rule 606(b) prohibits inquiry into whether the jury understood the court's instructions -- an inquiry which is clearly aimed at the jury's mental processes. See Robles, 862 F.2d at 1208 ("The testimony on its face violates rule 606(b) because it relates to how the jury interpreted . . . the court's instructions, and thus unquestionably consitutes testimony as to a 'juror's mental processes' that is forbidden by the rule."); Plummer, 5 F.3d at 4 ("the requested inquiry went to what the jurors were thinking when they chose the number that they did and whether their thinking was sound"). Here, the jury's understanding of the Court's instructions is not at issue. As Mattel showed in its Opposition, the fact that the Court instructed the jury that the "Court will ensure, once your verdict has been reached, that the plaintiff does not obtain duplicative damages"[7] does not mean that the jury *ipso facto* awarded duplicative damages for the same injury. (Opp. at 7-8).

MGA's reliance on Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001 (8th Cir. 2008), fails for the same reason. In Craig, the Court refused to modify the verdict based on post-verdict affidavits from jurors, recognizing that a "district court is generally prohibited from receiving testimony from jurors after the jury has returned a verdict and has been discharged. A district court may, however, consider juror testimony that because of some oversight or mistake, the verdict announced at trial was not the verdict on which the jurors had agreed. In other words, '[t]he admission of a juror's testimony is proper to indicate the possibility of a 'clerical

---

[7] Phase 1B Jury Instructions As Given, Instruction No. 44.

error' in the verdict, but not the 'validity' of the verdict.'" Id. at 1022 (citation omitted). Here, it is MGA, not Mattel, that challenges the validity of the verdict, and the juror statements, even if inadmissible to explain the verdict, simply cannot be squared with MGA's claim that a valid verdict was impossible. Indeed, that evidence -- which MGA makes no effort to refute -- demonstrates that MGA knows its motion is factually baseless and even false. In all events, the statements need not be considered for their truth (or at all) to conclude that MGA waived; the very fact that they were made is the strongest possible support for the waiver rule, which defeats MGA's speculative, *post hoc* attacks on the jury's verdict.

## RESPONSE TO THE MGA PARTIES' SPECIFIC OBJECTIONS[8]

**Mattel's Evidence:** Corey Declaration ¶¶ 2 & 3 and Exhibit 1 Attached Thereto (Post-trial Discussion With Jurors).

| MGA Parties' Objections | Mattel's Response |
|---|---|
| This Declaration purports to summarize a conversation between Mattel counsel and Juror No. 4 and Juror No. 7. (Corey Dec. ¶ 2.) The statements were made outside the presence of adverse counsel and the Court, without the safeguards of the rules of evidence, without testing through cross-examination, and in response to questioning; moreover, the role of | MGA's objection is vague and ambiguous, including in that MGA fails to identify the specific "statements" that constitute the alleged hearsay to which MGA objects. It is not Mattel's role, or that of the Court, "to comb through [this] document[], identify potential hearsay, and determine if an exception applies," without any assistance from |

---

[8] Mattel does not separately address MGA's general objections. As Mattel's responses to MGA's specific objections below demonstrate, the general objections are entirely without merit.

| MGA Parties' Objections | Mattel's Response |
|---|---|
| suggestion and coercion on the part of the questioners (Mattel's counsel) will never be known.  Mattel offers this evidence to demonstrate what "[b]oth jurors indicated [regarding what] the jury awarded."  (Id.)  As these statements were made out-of-court and are being offered for the truth purportedly asserted therein, they are inadmissible hearsay and no exception is applicable.  Fed. R. Evid. 801, 802.  And to the extent these statements purport to summarize statements made by <u>other</u> jurors, they constitute impermissible double hearsay.<br><br>The cited evidence is also speculative and thereby inadmissible under Fed. R. Evid. 602 because it reflects the rank speculation of Juror Nos. 4 and 7 regarding the actual intentions of the jury at-large.  Juror Nos. 4 and 7 may have personal knowledge regarding their own intentions as well as the actual verdict rendered (although no admissible evidence is offered of those intentions) -- but they do not have personal knowledge regarding the underlying intentions of other members of the jury. | defendants.  See Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1124 (E.D. Cal. 2006) (denying evidentiary objection where defendants had "only very generally objected to these documents in their entirety based on the argument that they 'contain' hearsay."); cf. Wright, Miller & Kane, 10B Federal Practice and Procedure § 2738 ("It follows that a motion to strike should specify the objectionable portions of the affidavit and the grounds for each objection.  A motion asserting only a general challenge to an affidavit will be ineffective.").<br><br>Further, these statements are not hearsay because Mattel does not offer them for the truth that the jury actually intended to award in excess of $100 million to Mattel, but rather to show that the jurors stated (and MGA and Larian heard) that they intended such an award.  This evidence establishes, at a minimum, why the Ninth Circuit's waiver rule exists and why it should be applied here to defeat MGA's *post hoc*, |

| MGA Parties' Objections | Mattel's Response |
|---|---|
| Juror Nos. 4 and 7's beliefs about the subjective opinions of <u>other</u> jurors are irrelevant.  Fed. R. Evid. 402.<br><br>This evidence reflecting counsel's alleged discussions with Juror No. 4 and No. 7 fall squarely within the prohibitions of Fed. R. Evid. 606(b) ("a juror may not testify . . . dissent from the verdict . . . or concerning the juror's mental processes in connection therewith").  Therefore, all evidence relating to counsel's discussions with jurors and Mattel's discussion thereof should be stricken. | factually groundless and self-serving attacks on the jury's verdict.  <u>See</u> Mattel's Opposition to the MGA Parties' Motion for Remittitur, dated January 12, 2009, at 3-4.<br><br>MGA's claim that the "statements were made outside the presence of adverse counsel" is false.  As set forth in the unrefuted Corey Declaration, at the time that Mr. Corey met with the jurors, "counsel for MGA, including Mr. Nolan, was in the same location (in the hall outside the courtroom where the admitted Bratz product exhibits were located) and spoke with the same jurors, including Juror No. 4 and Juror No. 7."  <u>See</u> Corey Delcaration, ¶ 3.<br><br>The cited evidence is not speculative.  In ¶¶ 2-3 of his declaration and Exhibit 1 thereto, Mr. Corey recounts his meeting with several jurors immediately following the verdict in this case.  This is plainly matter within Mr. Corey's personal knowledge, as attested to in ¶ 1 of the declaration.  <u>See</u> Fed. R. Evid. |

| MGA Parties' Objections | Mattel's Response |
|---|---|
| | 602. Nor are the statements by Juror Nos. 4 and 7 speculative. As members of the jury, they have personal, firsthand knowledge of the matters stated.<br><br>MGA's relevance argument fails. Mattel's proffered evidence is clearly relevant to show that the jurors stated (and MGA and Larian heard) that they intended to award Mattel more than $100 million in damages. This evidence establishes, at a minimum, why the Ninth Circuit's waiver rule exists and why it should be applied here to defeat MGA's *post hoc*, factually groundless and self-serving attacks on the jury's verdict. See Fed. R. Evid. 401, 402.<br><br>As set forth above, Fed. R. Evid. 606(b) does not bar admission of Mattel's evidence. Nothing in Rule 606(b) precludes consideration of evidence that is relevant (here, to show precisely why the Ninth Circuit waiver rule exists), even if not admissible to impeach the |

| MGA Parties' Objections | Mattel's Response |
|---|---|
| | verdict. |

**Mattel's Evidence:** Tr. 8356:10-8361:16; Zeller Declaration ¶ 2 and Exhibit 1 Attached Thereto (Email from Juror #7) (cited in Opp'n at 2-3).

| MGA Parties' Objections | Mattel's Response |
|---|---|
| In its Opposition and attached Declaration submitted in support thereof, Mattel relies on an email it claims establishes what Juror No. 7 believed the jury intended Mattel should receive. (Zeller Dec. ¶ 2.) Because the statements were made out-of-court in an e-mail communication post-verdict and are offered for the truth of the matter asserted regarding the jury's intentions, they are inadmissible hearsay and no exception is applicable. Fed. R. Evid. 801, 802. Furthermore, to the extent the email references Juror No. 7's recollection of statements made by other jurors, the statements constitute double hearsay. The cited evidence is also speculative and thereby inadmissible under Fed. R. Evid. 602 because it reflects the rank speculation of Juror No. 7 regarding the actual | MGA's objection is vague and ambiguous, as MGA fails to identify the specific "statements" that constitute the alleged hearsay to which it objects. It is not Mattel's role, or that of the Court, "to comb through [this] document[], identify potential hearsay, and determine if an exception applies," without any assistance from defendants. See Burch, 433 F. Supp. 2d at 1124 (E.D. Cal. 2006) (denying evidentiary objection where defendants had "only very generally objected to these documents in their entirety based on the argument that they 'contain' hearsay."); cf. Wright, Miller & Kane, 10B Federal Practice and Procedure § 2738 ("It follows that a motion to strike should specify the objectionable portions of the affidavit and the grounds for each |

| MGA Parties' Objections | Mattel's Response |
|---|---|
| intentions of the jury at-large. Juror No. 7 may have personal knowledge regarding her own intentions as well as the actual verdict rendered (although the e-mail is not admissible evidence of such intention) -- but she does not have personal knowledge regarding the underlying intentions of other members of the jury.<br><br>Juror No. 7's beliefs about the subjective opinions of <u>other</u> jurors are irrelevant. Fed. R. Evid. 402.<br><br>This Court already recognized that this evidence is impermissible under Fed. R. Evid. 606(b). In denying Mattel's request to recall the jury, the Court explained that this exact evidence must be disregarded:<br><br>  Moreover, in light of the opportunity for many, if not all, of the jurors to be exposed to the substantial publicity this case has generated, as well as personal, off-the-record conversations with counsel, the Court finds that it must agree with MGA's assessment of this jury: They are hopelessly tained by influences outside the | objection. A motion asserting only a general challenge to an affidavit will be ineffective.").<br><br>Further, these statements are not hearsay because Mattel does not offer them for the truth that the jury actually intended to award in excess of $100 million to Mattel, but rather to show that the jurors stated (and MGA and Larian heard) that they intended such an award. This evidence establishes, at a minimum, why the Ninth Circuit's waiver rule exists and why it should be applied here to defeat MGA's *post hoc*, factually groundless and self-serving attacks on the jury's verdict. <u>See</u> Mattel's Opposition to the MGA Parties' Motion for Remittitur, dated January 12, 2009, at 3-4.<br><br>Mr. Zeller's declaration is not speculative. As set forth in ¶ 1 of the declaration, Mr. Zeller made his declaration "of personal, firsthand knowledge." As such, the evidence is admissible. <u>See</u> <u>Fed. R. Evid.</u> 602. Nor |

| MGA Parties' Objections | Mattel's Response |
|---|---|
| evidence presented during the trial, the instructions given by the Court, and the arguments made by counsel.  During the trial, the jurors were prohibited from reading any of the numerous press accounts of this case.  After the trial, this restriction was lifted, and most, if not all, the jurors have ready access to archived press accounts of the case (as well as blog commentaries and the parties' various press releases) via the internet.  Having devoted three months of their lives to the trial in this action, the Court presumes many of the jurors, like Juror No. 7, have been curious enough since the verdict was rendered to review the results of a simple on-line search.  Likewise, during the trial, the attorneys were precluded from communicating with the jury; after the trial, whether the jurors speak with attorneys is left entirely up to each individual juror, and it appears that app parties are in agreement that there has been a great deal of communications with the jurors. | is Juror No. 7's e-mail speculative.  As a member of the jury, she has personal, firsthand knowledge of the matters stated.  MGA's relevance argument fails.  Mattel's proffered evidence is clearly relevant to show that the jurors stated (and MGA and Larian heard) that they intended to award Mattel more than $100 million in damages.  This evidence establishes, at a minimum, why the Ninth Circuit's waiver rule exists and why it should be applied here to defeat MGA's *post hoc*, and self-serving, attacks on the jury's verdict.  See Fed. R. Evid. 401, 402.  As set forth above, Fed. R. Evid. 606(b) does not bar admission of Mattel's evidence.  Nothing in Rule 606(b) precludes consideration of evidence that is relevant (here, to show precisely why the Ninth Circuit waiver rule exists), even if not admissible to impeach the verdict. |

| MGA Parties' Objections | Mattel's Response |
|---|---|
| 9/3/08 Order (Dkt 4684-4) at 2.)  Mattel has provided no reason to depart from the Court's well-reasoned decision.  Nor is there any reason sanctioned under the law.  Juror No. 7's email purports to speak on behalf of the entire jury.  Rule 606(b) commands this speculation be given no weight.  U.S. v. Gonzales, 227 F.3d 520, 525-27 (6th Cir. 2000) (excluding a letter in which "[t]he juror not only wrote about her own thought processes; she also wrote about the thought processes of other jurors").  As such, this email and Mattel's discussion thereof should be stricken as improper. | Further, MGA's reliance on the Court's September 3, 2008 Order is misplaced.  As Mattel noted in its Opposition to MGA's Motion for Remittitur, "nothing in that ruling requires the Court to close its eyes to the fact that these statements both demonstrate the falsity of MGA's factual assertions and illustrate precisely why the Ninth Circuit's waiver rule exists."  (Opp. at 4 n.5) <br><br> Nor does MGA's cited authority, U.S. v. Gonzales, 227 F.3d 520, 525-27 (6th Cir. 2000), bar consideration of Mattel's evidence.  The letter at issue in Gonzales touched upon the jurors' *thought processes*, and was offered to impeach the verdict.  See id. at 525.  As set forth more fully above, Mattel's evidence merely lends support for the Ninth Circuit waiver rule. |

**Mattel's Evidence:** Statements in E. Pettersson and T. Richards, Mattel Wins $100 Million in Damages Over Bratz Dolls, Bloomberg, August 26, 2008 (cited Opp'n at 4, n.4).

| MGA Parties' Objections | Mattel's Response |
|---|---|
| To the extent out-of court statements purportedly made by the jury foreman to a reporter are offered for the truth of the matter asserted, they are inadmissible hearsay and no exception is applicable. Fed. R. Evid. 801, 802.  Furthermore, as the foreman's statements were embodied in a newspaper article, the evidence constitutes double hearsay not subject to any exception.  See U.S. Football League v. National Football League, 1986 WL 5803, at *1 (S.D.N.Y. May 16, 1986) (noting that "[C]ourts rarely allow newspaper articles into evidence to prove the truth of the statements contained therein. . . .  Indeed, it is not uncommon for a trial court to summarily reject newspaper articles as obvious hearsay").<br><br>The cited evidence is also speculative and thereby inadmissible under Fed. R. Evid. 602 because it reflects the rank speculation of the jury foreman regarding the intentions of the jury at-large.  The foreman may have personal knowledge regarding his own intentions as well as the actual verdict rendered -- but he does not have personal | MGA's objection is vague and ambiguous, as MGA fails to identify the specific "statements" that constitute the alleged hearsay to which MGA objects. It is not Mattel's role, or that of the Court, "to comb through [this] document[], identify potential hearsay, and determine if an exception applies," without any assistance from defendants. See Burch, 433 F. Supp. 2d at 1124 (E.D. Cal. 2006) (denying evidentiary objection where defendants had "only very generally objected to these documents in their entirety based on the argument that they 'contain' hearsay."); cf. Wright, Miller & Kane, 10B Federal Practice and Procedure § 2738 ("It follows that a motion to strike should specify the objectionable portions of the affidavit and the grounds for each objection. A motion asserting only a general challenge to an affidavit will be ineffective.").<br><br>Further, these statements are not hearsay because Mattel does not offer them for the truth that the jury actually |

| MGA Parties' Objections | Mattel's Response |
|---|---|
| knowledge regarding the underlying intentions of other members of the jury.<br><br>The article's conclusions about the jury foreman's supposed beliefs about the subjective opinions of <u>other</u> jurors are irrelevant. Fed. R. Evid. 402.<br><br>Moreover, to the extent this article pertains to the internal deliberations of the jury, it is also prohibited by Rule 606(b). The fact that these representations were made "publicly" to the press (Opp'n at 4) does not change the analysis; the statements must be disregarded. <u>See</u> <u>U.S. v. Blackwell</u>, 459 F.3d 739, 769 (6th Cir. 2006) (finding that Rule 606(b) "prohibit[ed] the introduction of" a "Columbus Monthly article, which quotes one juror" concerning juror "mental impressions"). This evidence and Mattel's discussion thereof should be stricken. | intended to award in excess of $100 million to Mattel, but rather to show that the jurors stated (and MGA and Larian heard) that they intended such an award. This evidence establishes, at a minimum, why the Ninth Circuit's waiver rule exists and why it should be applied here to defeat MGA's *post hoc*, factually groundless and self-serving attacks on the jury's verdict. <u>See</u> Mattel's Opposition to the MGA Parties' Motion for Remittitur, dated January 12, 2009, at 3-4.<br><br>The cited evidence is not speculative. <u>See</u> <u>Fed. R. Evid.</u> 602. As a member of the jury, the jury foreman has personal, firsthand knowledge of the matters stated.<br><br>MGA's relevance argument fails. Mattel's proffered evidence is clearly relevant to show that the jurors stated (and MGA and Larian heard) that they intended to award Mattel more than $100 million in damages. This evidence establishes, at a minimum, |

| MGA Parties' Objections | Mattel's Response |
|---|---|
|  | why the Ninth Circuit's waiver rule exists and why it should be applied here to defeat MGA's *post hoc*, factually groundless and self-serving attacks on the jury's verdict.  See Fed. R. Evid. 401, 402.<br><br>As set forth above, Fed. R. Evid. 606(b) does not bar admission of Mattel's evidence.  Nothing in Rule 606(b) precludes consideration of evidence that is relevant (here, to show precisely why the Ninth Circuit waiver rule exists), even if not admissible to impeach the verdict. |

DATED:  February 2, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ B. Dylan Proctor
 B. Dylan Proctor
 Attorneys for Mattel, Inc.