1    Bingham McCutchen LLP
      TODD E. GORDINIER (SBN 82200)
2    todd.gordinier@bingham.com
      PETER N. VILLAR (SBN 204038)
3    peter.villar@bingham.com
      JENNIFER A. LOPEZ (SBN 232320)
4    jennifer.lopez@bingham.com
      600 Anton Boulevard
5    18th Floor
      Costa Mesa, CA  92626-1924
6    Telephone:  714.830.0600
      Facsimile:  714.830.0700

7

8    Attorneys for Non-party
      OMNI 808 INVESTORS, LLC

9

10            UNITED STATES DISTRICT COURT

11           CENTRAL DISTRICT OF CALIFORNIA

12                 EASTERN DIVISION

13

14    Carter Bryant, an individual,         Case No. CV 04-9049 SGL (RNBx)

15           Plaintiff,           **OMNI 808 INVESTORS, LLC'S *EX PARTE* APPLICATION FOR LEAVE TO INTERVENE FOR LIMITED PURPOSE AS A MATTER OF RIGHT OR, IN THE ALTERNATIVE, FOR PERMISSIVE INTERVENTION**

16              v.

17    Mattel, Inc., a Delaware Corporation,

18           Defendant.

19                            Judge:  Hon. Stephen G. Larson

20

21    AND CONSOLIDATED ACTIONS

22

23

24

25

26

27

28

1   Omni 808 Investors, LLC ("Omni") hereby applies *ex parte* pursuant to Rule

2   24(a) or, in the alternative, Rule 24(b) of the Federal Rules of Civil Procedure and

3   Local Rule 7-19, for an order authorizing it to intervene for the limited purpose of

4   responding to Mattel, Inc.'s ("Mattel") *Ex Parte* Application for Appointment of a

5   Receiver for MGA Entertainment, Inc. ("MGA") and all other issues related to

6   Omni's status as a secured creditor of MGA.

7   Omni makes this application on the grounds that Mattel's request for the

8   appointment of a receiver at MGA may have an immediate and irreparable adverse

9   impact on Omni, MGA's largest secured creditor. Omni satisfies all of the

10   requirements to intervene as a matter of right: the application is timely; Omni has

11   a significantly protectable interest relating to the property or transaction involved

12   in the pending lawsuit; disposition of the lawsuit may adversely affect Omni's

13   interest unless intervention is allowed; and the existing parties do not adequately

14   represent Omni's interest. In the alternative, the Court should exercise its

15   discretion to grant permissive intervention because Omni has a claim that shares a

16   common question of law or fact with the main action.

17   Good cause exists to seek this relief on an *ex parte* basis because Mattel has

18   made its request for the appointment of a receiver on an *ex parte* basis. If the

19   Court appoints a receiver, Omni may suffer irreparable harm.

20   Pursuant to Local Rule 7-19, on February 2, 2009, Omni's counsel gave

21   notice of this *ex parte* application and the relief being sought to counsel for MGA,

22   Robert Herrington of Skadden, Arps, Slate, Meagher & Flom LLP (telephone: 213-

23   687-5000; address: 300 South Grand Avenue, Suite 3400, Los Angeles, California

24   90071) and counsel for Mattel, Jon Corey of Quinn Emanuel Urquhart Oliver &

25   Hedges, LLP (telephone: 213-443-3000; address: 865 South Figueroa Street, 10th

26   Floor, Los Angeles, California 90017-2543). Counsel for MGA stated that MGA

27   will not oppose this application. Counsel for Mattel stated that Mattel will oppose

28

- 1 -

1   this application because it is Mattel's view that MGA as debtor can adequately

2   protest the interests of its largest secured creditor.  Omni disagrees.

3        This application is based on this Notice of *Ex Parte* Application, the

4   accompanying Memorandum of Points and Authorities, the records and files of this

5   Court, including without limitation the Phase 1 trial record, and all other matters of

6   which the Court may take judicial notice.

7

8   DATED:  February 3, 2009        Bingham McCutchen LLP

9

10

11   By: _____

12        Todd E. Gordinier
     Attorneys for Non-party
     Omni 808 Investors, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................ 3

III.  LEGAL ARGUMENT ............................................................................... 6

      A.   Omni is Entitled to Intervene as a Matter of Right for the
           Limited Purpose of Protecting Omni's Status as a Secured
           Creditor ........................................................................................... 6

           1.   Omni's Application Is Timely. ............................................... 7

           2.   Omni Has a Significantly Protectable Interest in the
                Receivership Issues Involved in the Pending Litigation. .......... 7

           3.   The Appointment of a Receiver May Impair or Impede
                Omni's Ability to Protect Its Interests. .................................. 8

           4.   The Existing Parties May Not Adequately Represent
                Omni's Interest. ..................................................................... 9

      B.   In the Alternative, This Court Should Grant Omni Permissive
           Intervention .................................................................................. 10

IV.   CONCLUSION ........................................................................................ 11

-i-

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003) ................................................................. 6, 9

*Beckman Indus. Inc. v. International Ins. Co.,*
    966 F.2d 470 (9th Cir. 1992) ..................................................................... 6

*Commerz Union Austalt v. Collectors' Guild, Ltd.,*
    792 F. Supp. 870 (S.D.N.Y. 1991) ............................................................ 8

*DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.,*
    187 F. Supp. 910 (S.D. Ohio 2001) ........................................................... 9

*Donnelly v. Glickman,*
    159 F.3d 405 (9th Cir. 1998) ..................................................................... 6

*Engra, Inc. v. Gabel,*
    958 F.2d 643 (5th Cir. 1992) ..................................................................... 7

*Forest Conservation Council v. United States Forest Serv.,*
    66 F.3d 1489 (9th Cir. 1995) ..................................................................... 7

*Kootenai Tribe v. Veneman,*
    313 F.3d 1094 (9th Cir. 2002) ................................................................. 10

*League of United Latin American Citizens v. Wilson,*
    131 F.3d 1297 (9th Cir. 1997) ................................................................... 6

*Lockyer v. U.S.,*
    450 F.3d 436 (9th Cir. 2006) ..................................................................... 6

*Meyer Jewelry Co. v. Meyer Holdings, Inc.,*
    906 F. Supp. 428 (E.D. Mich. 1995) ......................................................... 9

*Mountain Top Condominium v. Dave Stabbert Master Builder,*
    72 F.3d 361 (3rd Cir. 1995) ....................................................................... 8

*NL Indus. v. Secretary of Interior,*
    777 F.2d 433 (9th Cir. 1985) ..................................................................... 8

A/72829697.5/3009108-0000335082

*Reich v. ABC/York-Estes Corp.*,
   64 F.3d 316 (7th Cir. 1995) ...................................................................... 3

*Rumbaugh v. Beck*,
   491 F. Supp. 511 (E.D. Pa. 1980) ........................................................... 9

*Saluck v. Rosner*,
   1999 WL 46620 (E.D. Pa. Jan. 6, 1999) ................................................. 9

*San Juan County v. U.S.*,
   503 F.3d 1163 (10th Cir. 2007) .............................................................. 7

*SEC v. Flight Transp. Corp.*,
   699 F.2d 943 (8th Cir. 1983) ................................................................... 8

*Sierra Club v. EPA*,
   995 F.2d 1478 (9th Cir. 1993) ................................................................ 8

*Southwest Center for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) .............................................................. 3, 7

*Stringfellow v. Concerned Neighbors in Action*,
   480 U.S. 370 (1987) ................................................................................ 6

*Trbovich v. United Mine Workers*,
   404 U.S. 528 (1972) ................................................................................ 9

*U.S. v. South Florida Water Dist.*,
   922 F.2d 704 (11th Cir. 1991) ............................................................... 7

*United States v. State of Washington*,
   86 F.3d 1499 (9th Cir. 1996) ................................................................. 7

*Venegas v. Skaggs*,
   867 F.2d 527 (9th Cir. 1989) ............................................................... 11

*Yniguez v. Arizona*,
   939 F.2d 727 (9th Cir. 1991) ................................................................. 8

RULES

Fed. R. Civ. P. 24(a) ................................................................................... 6

Federal Rule of Civil Procedure 24(b)(2) ................................................ 10

-iii-

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2  **I.    INTRODUCTION**

3          Non-party Omni 808 Investors, LLC ("Omni") is the largest secured creditor

4  of MGA Entertainment, Inc. ("MGA"). Omni recently was served with a sweeping

5  subpoena from Mattel, Inc. ("Mattel") in connection with this litigation requesting

6  the production of documents relating to Omni's formation, governance, finances,

7  business relationships and transactions. Mattel's papers in support of its request to

8  have the Court appoint a receiver to "oversee and control all business and financial

9  aspects" of MGA mischaracterize Omni, its principals and the transaction Mattel

10  purports to describe to this Court. Because the appointment of a receiver could

11  significantly and irreparably harm Omni's interests as a senior secured creditor of

12  MGA, Omni hereby seeks leave of Court to intervene in this action for this limited

13  purpose.

14          Mattel's *ex parte* application is replete with false and misleading

15  representations and demonstrates Mattel's profound misunderstanding, *inter alia*,

16  of Omni and the circumstances surrounding its recent purchase of MGA's debt

17  from non-party Wachovia. The actual background of this transaction is both

18  straightforward and easily explained. In October 2006, Wachovia Bank, National

19  Association and a syndicate of other financial institutions (collectively,

20  "Wachovia") provided a senior revolving credit facility to MGA (the "Senor Bank

21  Credit Facility"). In July 2008, Wachovia accelerated the maturity of the

22  outstanding debt obligations owed to Wachovia by MGA (over $310 million),

23  demanding full and immediate payment of the entire unpaid balance as it was

24  entitled to do under the terms of its Senior Bank Credit Facility.

25         In response to Wachovia's accelerated loan payment demand, MGA began

26  efforts to find someone who would purchase the Senior Bank Credit Facility from

27  Wachovia. Neil Kadisha, the Managing Partner of a diversified investment firm,

28  Omninet Capital, LLC, was approached and began discussions with Wachovia

- 1 -

1   regarding a potential purchase of the Senior Bank Credit Facility.  In September

2   2008, Wachovia and Omni (a special purpose entity formed by Mr. Kadisha for

3   this transaction) entered into an assignment and exchange agreement whereby

4   Omni acquired all right, title and interest in the Senior Bank Credit Facility

5   excluding approximately $21 million which was retained by Wachovia.  Omni's

6   purchase of the Senior Bank Credit Facility from Wachovia was a straightforward,

7   arms-length business deal between non-parties to this action.

8        In support of its argument for the appointment of a receiver, Mattel

9   insinuates, without any evidence, that there was something untoward about the

10  timing and circumstances of Omni's debt purchase transaction.  Mattel falsely

11  represents to the Court that MGA received new "sudden funding" from an "off-

12  shore, non-operating" entity during the trial of this action.  Even allowing for its

13  ignorance of the actual terms of the Omni-Wachovia transaction, there is no reason

14  for such language.  If by "funding" Mattel means the loan from Wachovia, that

15  funding was provided by Wachovia to MGA under the Senior Bank Credit Facility

16  beginning in 2006 -- *long before the trial and any judgment was entered against*

17  *MGA in this action in 2008.*  If by "funding" Mattel means the Omni-Wachovia

18  transaction, the monies flowed *from Omni to Wachovia* as consideration for the

19  purchase of the debt owed by MGA.  The timing of the Omni-Wachovia

20  transaction in September 2008 was driven by a host of factors, most proximately

21  by Wachovia's decision to accelerate the outstanding debt obligation under the

22  Senior Bank Credit Facility.

23       Moreover, the source was not an "off-shore, non-operating" entity, as Mattel

24  repeatedly suggests in its application.  Wachovia (defined to include it and its

25  syndicate of bank and other institutional lenders), the original source of the

26  funding, are all substantial financial institutions; Omni, the assignee of the loan, is

27  a California limited liability company.  Mattel's paranoiac rhetoric regarding this

28  transaction and the source of the funding is unfounded.

- 2 -

1   Under federal law, a non-party is entitled to intervene *as a matter of right*

2   when it claims an interest relating to the property or transaction that is the subject

3   of the action and is so situated that disposing of the action may as a practical

4   matter impair or impede its ability to protect its interest.  A non-party may also

5   intervene, in the discretion of the court, when it has a claim that shares with the

6   main action a common question of law or fact.

7   Here, Omni has a secured interest in MGA's assets, including, *inter alia,*

8   MGA's inventory and accounts receivable, that is far greater and superior to any

9   alleged interest of unsecured creditors like Mattel.  Mattel is asking this Court for

10  an extraordinary remedy, solely to suit its own litigation and competitive interests,

11  which if granted could well cripple MGA's operations and would certainly impair

12  the security interests of Omni and other creditors.  Indeed, the proffered basis for

13  Mattel's opposition to Omni's application for leave to intervene -- that a debtor can

14  adequately represent the interests of its largest secured creditor -- speaks volumes

15  about Mattel's approach not only to this issue but also to its actual motivations in

16  making its request for a receiver.

17  For these reasons, Omni respectfully requests that the Court grant it leave to

18  intervene in this action for the purposes of challenging the appointment of a

19  receiver and related issues that could adversely affect Omni's security interests.

20

21  **II.   STATEMENT OF FACTS**[1]

22  On or about October 27, 2006, MGA entered into a Credit Agreement with

23  Wachovia Bank, National Association and a syndicate of other banks and

24

---

25  [1] In evaluating a motion to intervene, courts must accept as true all nonconclusory

26  allegations contained in the motion.  *Southwest Center for Biological Diversity v.*
    *Berg*, 268 F.3d 810, 819 (9th Cir. 2001); *Reich v. ABC/York-Estes Corp.*, 64 F.3d

27  316, 321 (7th Cir. 1995).

28

- 3 -

1    institutional lenders (collectively, "Wachovia"), pursuant to which Wachovia

2    provided a senior revolving credit facility to MGA in an aggregate available

3    amount for borrowing up to $400 million, secured by a senior perfected security

4    interest in, *inter alia,* all of MGA's inventory and accounts receivable (the "Senior

5    Bank Credit Facility").  On July 21, 2008, Wachovia declared the Senior Bank

6    Credit Facility to be in default and accelerated the maturity of the outstanding debt

7    obligations owed to Wachovia by MGA, demanding full and immediate payment

8    of the entire unpaid $313,496,700 balance of the loans.

9         In response to Wachovia's accelerated loan payment demand, MGA

10   approached Neil Kadisha, a highly regarded businessman and philanthropist who is

11   currently the Managing Partner of a diversified investment firm, Omninet Capital,

12   LLC.[2]  Mr. Kadisha and Omninet Capital, LLC have substantial experience

13   evaluating and investing in distressed debt and distressed companies.  Mr. Kadisha

14   immediately commenced negotiations with Wachovia regarding a potential

15   purchase of the Senior Bank Credit Facility from Wachovia.

16        On or about July 29, 2008, Omninet Capital, LLC made an offer to acquire

17   the Senior Bank Credit Facility, including the outstanding debt obligations from

18   Wachovia for $109,723,845 (representing 35% of the $313,496,700 principal

19   amount of the debt obligations outstanding as of the acceleration date).  After a

20   couple weeks of heavy negotiations, Wachovia agreed to sell and assign its interest

21   in all but $21,944,769 of the outstanding debt obligations under the Senior Bank

22   Credit Facility to Omni (the retained amount was then exchanged for unsecured

23   promissory notes issued by MGA to Wachovia).  In order to fund the acquisition of

24

25   [2]  Omni is loathe to address the gratuitous ad hominem attacks concerning Mr.
     Kadisha and an ongoing civil litigation matter in the papers filed by Mattel, which
26   are inaccurate, incomplete and irrelevant, but if the Court is at all concerned by
     those matters Omni is prepared to do so.  Suffice it to say for now that the civil
27   litigation matter referred to by Mattel has not yet been finally resolved.

28

                                    - 4 -

1   the Senior Bank Credit Facility, Mr. Kadisha solicited various private investors and

2   formed a special purpose entity, Omni 808 Investors, LLC, a California limited

3   liability company ("Omni")[3]. The formation of a special purpose entity is very

4   common for these types of transactions and is neither suspicious nor improper.

5       On or about September 3, 2008, Omni and Wachovia entered into a written

6   Master Assignment and Exchange Agreement whereby Omni acquired all right,

7   title and interest in the debt obligations under the Senior Bank Credit Facility,

8   other than the $21,944,769 exchanged for the unsecured promissory notes issued

9   by MGA to Wachovia Bank, National Association and the other original lenders.

10  As a result of the agreement, Omni stepped into and presently stands, as successor-

11  in-interest, in the position of Wachovia under the Senior Bank Credit Facility and

12  has a senior perfected security interest in MGA's assets, including, *inter alia,*

13  MGA's inventory and accounts receivable. Omni's secured interest is superior to

14  that of any potential unsecured creditors, including Mattel.

15      Omni has a compelling interest in the financial health and stability of MGA

16  and its assets. If MGA fails, MGA's ability to repay the outstanding debt

17  obligation in excess of $300 million owed to Omni will certainly be imperiled.

18  The appointment of a receiver to "oversee and control all financial and business

19  aspects" of MGA, solely to satisfy Mattel's interests, would harm MGA's ability to

20  operate independently and efficiently and would infringe upon, or potential

21  foreclose, the interests of Omni and other creditors.

22

23

24

25

_____

26  [3]  Mattel erroneously refers to Omni 808 International, LLC, in its *ex parte*
    application, which further demonstrates Mattel's confusion regarding the entities

27  involved.

28

## III.   LEGAL ARGUMENT

### A.   Omni is Entitled to Intervene as a Matter of Right for the Limited Purpose of Protecting Omni's Status as a Secured Creditor

Omni is entitled to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a). Rule 24(a) provides that a court must permit a non-party to intervene who "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest . . . ." *See also*, *Lockyer v. U.S.*, 450 F.3d 436, 440 (9th Cir. 2006). The Ninth Circuit construes Rule 24 liberally in favor of applicants for intervention. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). The inquiry required under Rule 24(a)(2) is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate. *Donnelly*, 159 F.3d at 409. "In determining whether intervention is appropriate, we are guided primarily by practical and equitable considerations. We generally interpret the requirements broadly in favor of intervention." *Id.*

When a non-party claims an interest relating to the subject property or transaction of the action, courts generally require four factors: (1) a timely application; (2) the applicant has a "significantly protectable" interest relating to the property or transaction involved in the pending lawsuit; (3) the disposition of the lawsuit may adversely affect applicant's interest unless intervention is allowed; and (4) the existing parties may not adequately represent the would-be intervenor's interest. *Arakaki*, 324 F.3d at 1083; *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

Additionally, a district court has the discretion to grant a non-party limited intervention for certain issues or purposes. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378 (1987); *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *Beckman Indus. Inc. v. International Ins. Co.*, 966 F.2d

- 6 -

1    470, 473 (9th Cir. 1992). "A nonparty may have a sufficient interest for some

2    issues in a case but not others, and the court may limit intervention accordingly."

3    *U.S. v. South Florida Water Dist.*, 922 F.2d 704, 707 (11th Cir. 1991); *San Juan*

4    *County v. U.S.*, 503 F.3d 1163, 1203 (10th Cir. 2007).

5                    1.    Omni's Application Is Timely.

6         Courts generally consider the following factors relevant to the issue of

7    timeliness: (1) the stage of the proceedings at the time the applicant seeks to

8    intervene; (2) the prejudice to the existing parties from applicant's delay in seeking

9    leave to intervene; and (3) any reason for and the length of delay in seeking

10   intervention. *United States v. State of Washington*, 86 F.3d 1499, 1502 (9th Cir.

11   1996); *Engra, Inc. v. Gabel*, 958 F.2d 643, 644 (5th Cir. 1992).

12        Here, Omni's application is timely. On or about January 9, 2009, Mattel

13   served a subpoena on Omni requesting the production of documents relating to

14   Omni's formation, governance, finances, business relationships and transactions.

15   Omni also recently learned that Mattel filed an *ex parte* application for the

16   appointment of a receiver at MGA. The Court has yet to decide the pending

17   request for the appointment of a receiver and Omni has acted without delay.

18                    2.    Omni Has a Significantly Protectable Interest in
                            the Receivership Issues Involved in the Pending
19                          Litigation.

20        "[W]hether an applicant for intervention demonstrates sufficient interest in

21   an action is a practical, threshold inquiry. No specific legal or equitable interest

22   need be established." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d

23   810, 818 (9th Cir. 2001) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th

24   Cir. 1993)); *see also Forest Conservation Council v. United States Forest Serv.*, 66

25   F.3d 1489, 1493 (9th Cir. 1995). "It is generally enough that the interest [asserted]

26   is protectable under some law, and that there is a relationship between the legally

27   protected interest and the claims at issue." *Southwest Center for Biological*

28   *Diversity*, 268 F.3d at 818 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th

                                        - 7 -

1    Cir. 1993)).  *See, e.g., NL Indus. v. Secretary of Interior*, 777 F.2d 433, 435 (9th

2    Cir. 1985) (corporate property owner that held unpatented mining claim on

3    particular property permitted to intervene in dispute over other mining claims on

4    that property).  An intervenor's interest must be "significantly protectable such that

5    it will be directly and immediately affected by the litigation."  *Werbungs und*

6    *Commerz Union Austalt v. Collectors' Guild, Ltd.*, 792 F. Supp. 870, 874

7    (S.D.N.Y. 1991) (court allows intervention by investor in one party when investor

8    had secured appeal bond and owned collateral securing letter of credit).

9            Here, Omni is the largest secured creditor of MGA, with a superior interest

10   in MGA's assets to any unsecured creditors including Mattel.  Omni's interest is

11   directly related to issues raised by Mattel in its *ex parte* application for the

12   appointment of a receiver.  Therefore, Mattel has a significantly protectable

13   interest relating to the property or transaction which is the subject of this action.

14                       3.      The Appointment of a Receiver May Impair or
15                               Impede Omni's Ability to Protect Its Interests.

16          In order to show that the disposition of the action may impair or impede the

17   ability to protect a non-party's interest, the non-party need only show a "practical"

18   impairment, "not whether the decision itself binds them."  *Yniguez v. Arizona,* 939

19   F.2d 727, 735 (9th Cir. 1991).  Courts consistently allow creditors to intervene "of

20   right" where a receiver has been appointed and taken control of a debtor's assets.

21   The rationale is that the first creditor's action may effectively foreclose the

22   interests of other creditors.  *See Sierra Club v. U.S.*, 995 F.2d 1478, 1486 (9th Cir.

23   1993); *SEC v. Flight Transp. Corp.*, 699 F.2d 943, 947 (8th Cir. 1983); *Mountain*

24   *Top Condominium v. Dave Stabbert Master Builder*, 72 F.3d 361, 366-367 (3rd

25   Cir. 1995).

26          Here, the appointment of a receiver to "oversee and control all financial and

27   business aspects" of MGA, as Mattel proposes, could cripple MGA's business and

28   impair Omni's ability to protect its senior perfected security interest in its

- 8 -

1   collateral, which includes MGA's inventory and accounts receivable and

2   ultimately in MGA's ability to repay its outstanding secured debt obligation to

3   Omni of in excess of $300 million.  The financial and business affairs of MGA are

4   best handled independently by businessmen who understand its products and its

5   industry.[4]

6           4.    The Existing Parties May Not Adequately
7                 Represent Omni's Interest.

8           In order to demonstrate the inadequacy of the existing parties to protect its

9   interest, the applicant's burden is minimal and is satisfied so long as the applicant

10  shows that representation by existing parties *"may be"* inadequate.  *Trbovich v.*

11  *United Mine Workers*, 404 U.S. 528, 538 n.10 (1972).  The Ninth Circuit considers

12  three factors in determining the adequacy of representation: "(1) whether the

13  interest of a present party is such that it will undoubtedly make all of a proposed

14  intervenor's arguments; (2) whether the present party is capable and willing to

15  make such arguments; and (3) whether a proposed intervenor would offer any

16  necessary elements to the proceeding that other parties would neglect." *Arakaki*,

17  324 F.3d at 1086 (citing *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775,

18  778 (9th Cir.1986)).  "The most important factor in determining the adequacy of

19  representation is how the applicant's interest compares with the interest of existing

20  parties." *Id.*

21

22  _____

    [4] Courts are reluctant to appoint receivers to solvent corporations.  *See, e.g.,*
23  *DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.*, 187 F. Supp. 910, 925 (S.D.
    Ohio 2001) (declining to appoint receiver despite other facts in favor of doing so
24  where corporation was solvent and productive); *Meyer Jewelry Co. v. Meyer
    Holdings, Inc.*, 906 F. Supp. 428, 434 (E.D. Mich. 1995) ("The deleterious effects
25  of a receivership would result in more harm than good in this case."); *Rumbaugh v.
    Beck*, 491 F. Supp. 511, 521 (E.D. Pa. 1980) (finding that because a corporation
26  was presently operating in a successful manner, appointment of a receiver would
    "be potentially more harmful than if one were not implanted"); *Saluck v. Rosner*,
27  1999 WL 46620, at *2 (E.D. Pa. Jan. 6, 1999) ("the appointment of a receivership
    of a solvent corporation is a drastic remedy.").

28
                                        - 9 -

1    Here, the interests of the present parties are not such that they will

2    undoubtedly make all of Omni's arguments in opposition to the appointment of a

3    receiver. Obviously Mattel's interests are directly at odds with Omni's interests.

4    Further, although MGA also opposes the appointment of a receiver, there is no

5    reason to believe that it can or will make all of Omni's arguments on its behalf.

6    Omni's primary interest is in MGA's ability to repay its secured debt obligation of

7    in excess $300 million owed to Omni. Moreover, Omni is in the best position to

8    describe the facts and circumstances surrounding its purchase of the Senior Bank

9    Credit Facility from Wachovia.

10    According to Mattel's counsel, it is Mattel's view that MGA as debtor can

11    adequately protect the interests of its largest secured creditor. Mattel's position is

12    nonsensical as the financial interests of a debtor and secured creditor are, on their

13    face, aligned differently. Therefore, the existing parties may not adequately

14    represent Omni's interest regarding the appointment of a receiver and other issues

15    relating to Omni's status as a secured creditor.

16    **B.    In the Alternative, This Court Should Grant Omni**
17    **Permissive Intervention**

18    Even if Omni were not entitled to intervene as a matter of right, the Court

19    should exercise its discretion and permit its intervention in this matter. Under

20    Federal Rule of Civil Procedure 24(b)(2), permissive intervention should be

21    granted whenever the "applicant's claim . . . and the main action have a question of

22    law or fact in common," and when the intervention would not "unduly delay or

23    prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P.

24    24(b)(2). The existence of a "common question" is liberally construed. *Kootenai*

25    *Tribe v. Veneman*, 313 F.3d 1094, 1108-1109 (9th Cir. 2002). A proposed

26    intervenor under Rule 24(b)(2) "need not demonstrate a 'significantly protectable'

27    interest relating to the property or transaction which is the subject of the action.'"

28    *Defenders of Wildlife*, 2005 WL 3260986, at *2 (citing *Kootenai Tribe of Idaho v.*

- 10 -

1  *Veneman*, 313 F.3d 1094, 1108-09 (9th Cir. 2002)).  Omni meets each of these

2  requirements.

3      Here, as explained above, there are common questions of law and fact

4  between Omni's claims and the issues raised in Mattel's application to appoint a

5  receiver.  Moreover, Omni's participation will not unduly delay or prejudice the

6  adjudication of the rights of the original parties.  Omni's participation will be

7  limited to challenging Mattel's request to appoint a receiver and protecting its

8  interests as a secured creditor.  The burden is on the parties to plead and prove any

9  alleged prejudice.  *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989).

10

11  **IV.    CONCLUSION**

12      For the foregoing reasons, Omni respectfully requests the Court grant this

13  application and authorize it to intervene for the limited purpose of responding to

14  Mattel's request for the appointment of a receiver for MGA and all other issues

15  related to the proposed receiver or Omni's status as a secured creditor of MGA.

16

17  DATED:  February 3, 2009          Bingham McCutchen LLP

18

19

20  By: _____
                Todd E. Gordinier
21             Attorneys for Non-party
               Omni 808 Investors, LLC
22

23

24

25

26

27

28

- 11 -

A/72829697.5/3009108-0000335082