1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2 | John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

| | |
|---|---|
| 11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12 | Plaintiff, | Consolidated with Case No. CV 04-09059 |
| 13 | vs. | Case No. CV 05-02727 |
| 14 | MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 15 | Defendant. | **[To Be Heard By Discovery Master Robert C. O'Brien Pursuant To Order Of January 6, 2009]** |
| 16 | | |
| 17 | AND CONSOLIDATED ACTIONS | MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL |
| 18 | | PRODUCTION OF DOCUMENTS RESPONSIVE TO THIRD-PARTY |
| 19 | | SUBPOENAS; AND |
| 20 | **PUBLIC REDACTED** | MEMORANDUM OF POINTS AND AUTHORITIES |
| 21 | | [Mattel, Inc.'s Separate Statement and Declaration of Jon D. Corey filed |
| 22 | | concurrently herewith] |
| 23 | | Hearing Date: TBD |
| 24 | | Time: TBD |
| 25 | | Place: TBD |
| 26 | | Phase 2: |
| 27 | | Discovery Cut-off: Not set Pre-trial Conference: Not set Trial Date: Not set |
| 28 | | |

07209/2785965.1

1  TO ALL PARTIES, NON-PARTIES IGWT GROUP, LLC, IGWT 826
2  INVESTMENTS, LLC, VISION CAPITAL, LLC, OMNI 808 INVESTORS, LLC
3  AND OMNINET CAPITAL, LLC, AND THEIR RESPECTIVE ATTORNEYS OF
4  RECORD:

5       Please take notice that at a hearing before Discovery Master Robert C. O'Brien
6  that will occur on a date and at a time to be determined by the Discovery Master,
7  plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court for an order
8  overruling objections by IGWT Group, LLC, IGWT 826 Investments, LLC, Vision
9  Capital, LLC, Omni 808 Investors, LLC and OmniNet Capital, LLC and the MGA
10 Parties related to Mattel's subpoenas and for an order compelling IGWT Group, LLC,
11 IGWT 826 Investments, LLC, Vision Capital, LLC, Omni 808 Investors, LLC and
12 OmniNet Capital, LLC to produce documents responsive to their respective subpoenas
13 and, to the extent any subpoenaed party is withholding documents on the basis of
14 privilege, to provide a privilege log.

15      This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 37 and 45 on
16 the grounds that the subpoenas seek discoverable information and that the MGA
17 Parties' objections and the third-parties' objections, to the extent asserted, should be
18 overruled.

19      This Motion is based on this Notice of Motion and Motion, the accompanying
20 Memorandum of Points and Authorities, the Declaration of Jon D. Corey filed
21 concurrently herewith, the records and files of this Court, and all other matters of which
22 the Court may take judicial notice.

23      <u>**Certificate Of Compliance With Local Rule 37-1**</u>

24      Mattel, MGA and the third-parties met and conferred regarding the production of
25 documents responsive to the third-party subpoenas on January 28, 2009 and thereafter,

26
27
28

07209/2785965.1

MOTION TO COMPEL

1   but were unable to reach agreement regarding the issues raised in this motion.

2

3   DATED:  February 3, 2009          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
4

5
                                      By /s/ Jon Corey
6                                        Jon Corey
                                         Attorneys for Mattel, Inc.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................ 1

CASE BACKGROUND ...................................................................................... 3

STATEMENT OF FACTS ................................................................................. 8

ARGUMENT .................................................................................................... 14

I.   MGA HAS A HISTORY OF UNTRUSTWORTHY STATEMENTS ABOUT ITS FINANCES ....................................................................... 14

II.  MATTEL'S SUBPOENAS SEEK DOCUMENTS THAT ARE UNQUESTIONABLY RELEVANT ............................................................ 18

 A.   The Documents Sought Are Relevant to Mattel's RICO Claims .......... 18

 B.   The Documents Sought Are Relevant to Mattel's Disgorgement Claim ..................................................................................................... 19

 C.   The Documents Sought Are Relevant to Phase 2 Damages ................. 21

 D.   The Documents Sought Are Relevant to Defendants' Credibility ........ 23

 E.   The Documents Sought are Relevant to the MGA Parties' Unclean Hands Defense ......................................................................... 23

 F.   The Documents Sought Are Relevant to Mattel's Unfair Competition Claim ................................................................................ 24

III. THE REMAINING OBJECTIONS ARE BOILERPLATE AND SHOULD BE OVERRULED .................................................................... 25

 A.   The Boilerplate Objections Are Improper ............................................. 25

 B.   That Documents May be Available from Other Parties Does Not Excuse Compliance ................................................................................ 25

 C.   The Objection Based Upon the Accountant-Client Privilege Is Unfounded .............................................................................................. 26

 D.   Mattel's Requests Do Not Impose an Undue Burden ............................ 27

 E.   Mattel's Requests Do Not Violate the Discovery Master's May 7, 2008 Order ............................................................................................. 27

 F.   Concerns Over Confidentiality Are Alleviated by the Protective Order ....................................................................................................... 28

IV.  EACH OF THE SUBPOENAED PARTIES MUST PRODUCE ADEQUATE PRIVILEGE LOGS ............................................................. 29

1

CONCLUSION.............................................................................................................30

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO COMPEL

1

# TABLE OF AUTHORITIES

2

**Page**

3

## Cases

4

A. Farber and Partners, Inc. v. Garber,
234 F.R.D. 186 (C.D. Cal. 2006)................................................................25, 28

5

Asdourian v. Konstantin,
6   77 F. Supp. 2d 349 (E.D.N.Y. 1999) ......................................................18, 19

7

In re Bergeson,
112 F.R.D. 692 (D. Mont. 1986) ....................................................................24

8

Blain v. Doctor's Co.,
9   222 Cal. App. 3d 1048 (1990) ........................................................................24

10

Burlesci v. Petersen,
68 Cal. App. 4th 1062 (1998) .........................................................................21

11

Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.,
12   408 F.3d 1142 (9th Cir. 2005) ........................................................................28

13

Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.,
175 F.R.D. 646 (C.D. Cal. 1997).....................................................................23

14

Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,
15   20 Cal. 4th 163 (1999).....................................................................................25

16

Clark v. Bunker,
453 F.2d 1006 (9th Cir. 1972) ........................................................................20

17

Couch v. United States,
18   409 U.S. 322 (1972).........................................................................................26

19

Covey Oil Co. v. Continental Oil Co.,
340 F.2d 993 (10th Cir. 1965) ........................................................................25

20

Cramer v. Biddison,
21   257 Cal. App. 2d 720 (1968) ..........................................................................20

22

Eastman Kodak Co. v. Camarata,
238 F.R.D. 372 (W.D.N.Y. 2006) ...................................................................19

23

Farmer Ins. Exchange v. Zerin,
24   53 Cal. App. 4th 445 (1997) ...........................................................................21

25

GoTo.com, Inc. v. Walt Disney Co.,
202 F.3d 1199 (9th Cir. 2000) ........................................................................23

26

Goodman v. U.S.,
27   369 F.2d 166 (9th Cir. 1966) ....................................................................25, 27

28

*Granberry v. Islay Investments,*
9 Cal. 4th 738 (1995) ...................................................................................24

*Heat and Control, Inc. v. Hester Indus., Inc.,*
785 F.2d 1017 (Fed. Cir. 1986) ...................................................................18

*Hilao v. Estate of Marcos,*
103 F.3d 767 (9th Cir. 1996) ........................................................................21

*In re Heritage Bond Litigation,*
2004 WL 1970058 (C.D. Cal. 2004) ............................................................28

*In re Imperial Corp. of Am.,*
174 F.R.D. 475 (S.D. Cal. 1997) ..................................................................28

*In re Lifschultz Fast Freight,*
132 F.3d 339 (7th Cir. 1996) ........................................................................11

*In re McKesson HBOC, Inc. Erisa Litigation,*
391 F. Supp. 2d 812 (N.D. Cal. 2005)..........................................................23

*In re Mobile Steel,*
563 F.2d 692 (5th Cir. 1977) ........................................................................11

*JZ Buckingham Investments, LLC v. United States,*
78 Fed. Cl. 15 (Fed. Cl. Ct. 2007) ...............................................................27

*Korea Supply Co. v. Lockheed Martin Corp.,*
29 Cal. 4th 1134 (2003) ...............................................................................20

*Keith H. v. Long Beach Unified School District,*
228 F.R.D. 652 (C.D. Cal. 2005)..................................................................28

*Kraus v. Trinity Management Servs., Inc.,*
23 Cal. 4th 116 (2000) .................................................................................20

*Kraus v. Willow Park Public Golf Course,*
73 Cal. App. 3d 354 (1977) ..........................................................................21

*Nelmida v. Shelly Eurocars, Inc.,*
112 F.3d 380 (9th Cir. 1997) ........................................................................24

*Northrop Corp. v. McDonnell Douglas Corp.,*
751 F.2d 395 (D.C. Cir. 1984)......................................................................27

*Panola Land Buyers Ass'n v. Shuman,*
762 F.2d 1550 (11th Cir. 1985) ....................................................................25

*Putnam v. Eli Lilly and Co.,*
508 F. Supp. 2d 812 (C.D. Cal. 2007)..........................................................28

*Robert L. Cloud & Associates v. Mikesell,*
69 Cal. App. 4th 1141 (1999) .......................................................................21

07209/2785965.1

Rubin v. Green,
4 Cal. 4th 1187 (1993) ................................................................24

Southern California Housing Rights Center v. Krug,
2006 WL 4122148 (C.D. Cal. 2006) ...........................................21

State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.,
2007 WL 2993840 (E.D.N.Y. 2007) ............................................25

Taylor v. Polackwich,
145 Cal. App. 3d 1014, 1022 (1983) ...........................................20

U.S. v. American Optical Co.,
39 F.R.D. 580 (N.D. Cal. 1966) ..................................................18

Weiss v. Marchus,
Weiss v. Marchus 51 Cal. App. 3d 590 (1975) ...........................20

**Statutes**

11 U.S.C. § 510(c) .........................................................................11

18 U.S.C. § 1956 ............................................................................19

18 U.S.C. § 1957 ............................................................................19

18 U.S.C. § 2314 ............................................................................19

Fed. R. Civ. P. 45 ...........................................................................28

Fed. R. Civ. P. 45 ...........................................................................18

Fed. R. Civ. P. 45(b) ......................................................................18

**Other Authorities**

Business and Professions Code § 17200 .......................................24

Cal. Civ. Code § 2223 ..............................................................20, 21

Cal. Civ. Code § 2224 ..............................................................20, 21

Local Rule 30(b)(6) ..................................................................16, 20

Local Rule 45(d)(2) ........................................................................28

07209/2785965.1

-v-

## Preliminary Statement

Throughout this litigation, MGA has obstructed Mattel's -- and the Court's -- attempts to obtain an accurate, complete understanding of MGA's and Isaac Larian's finances. This ultimately led the District Court to comment, only a month ago, that "the finances of MGA, []at this point, quite frankly, are a mystery to the Court." (12/30/08 Hearing Tr. at 57:11-18).

MGA's recent financial dealings only add to that mystery. Following the jury's Phase 1B trial verdict in Mattel's favor this past summer, Mattel learned that MGA had a new alleged creditor, Omni 808, that replaced Wachovia as MGA's apparently largest creditor. Omni 808 is a shell corporation that was formed during trial and is owned and funded by other shell corporations -- Vision Capital and Lexington Financial. Lexington Financial, in turn, was incorporated off-shore in the Caribbean banking secrecy haven of Nevis and lists a fictional London address as its purported headquarters. Intentionally or not, the structure of the transactions and the use of these entities serve to obscure MGA's finances. And, only serving to heighten the concern about the integrity and completeness of MGA's financial information, a Los Angeles Superior Judge found that the CEO of Omni 808, MGA's newest business partner, to be "no more than a common thief" for his embezzlement of millions of dollars, his fabrication of financial records and his perjury. Similarly, serious questions exist about yet more, also newly minted entities that MGA's CEO and principal shareholder, Isaac Larian, created during trial to purchase Bratz products from MGA ███████. MGA is selling current product to these newly-formed Larian companies -- named IGWT ██████████████████.

In an effort to get to the bottom of MGA's finances, Mattel served subpoenas on the third-party entities involved. Continuing MGA's pattern of concealment and obstructionism as found in numerous Court Orders and the jury's verdict, however, MGA and the third parties associated with MGA flatly refuse to produce discoverable, highly-relevant information. Indeed, they refuse to produce any discovery on these

-1-

crucial subjects.  This is plainly improper, as the requested discovery is relevant to Phase 2 claims and defenses, as well as to other issues that both MGA and Mattel have raised before the Court, such as in Mattel's pending application for a receiver and in MGA's repeated stay requests.

More specifically, over the past six months alone, MGA has repeatedly sought stays from the District Court and the Ninth Circuit based on representations about its alleged financial condition, ███████████████████████████. Given that its appeal has been dismissed and its requests for a stay pending appeal have been denied, MGA undoubtedly will try again once the District Court's injunctive orders actually become final.  Mattel also has a pending request that the Court appoint a receiver.   Indeed, in opposing Mattel's receivership motion, MGA initially misrepresented to the Court -- under oath --that it ██████████████████████ ██████.  MGA then had to confess that it had, in fact, received credit from Omni 808 after it was revealed by Mattel's investigation (and not from any facts disclosed by MGA) that Omni, Vision Capital and Lexington Financial had entered into purported credit transactions with MGA.  Similarly, despite its repeated claims of ████████ ██████ to the District Court and to the Ninth Circuit, MGA made no disclosure that █ █████████████████████████████████████████ ████████████████.  The discovery sought by the subpoenas is directly pertinent to all of these transactions and thus to matters that both MGA and Mattel have raised. And, the discovery is relevant because it is reasonably calculated to lead to admissible evidence that will impeach MGA's and Larian's sworn statements.

Not only did MGA itself make its financial condition relevant by interjecting these issues into the case, but MGA's financial condition is relevant to Mattel's claims in Phase 2 of this case.  The subpoenaed documents are reasonably calculated to understand MGA's and Larian's financial condition and to significant transactions affecting their condition.  MGA's and Larian's net worth, financial condition, and ability to pay are also relevant to the punitive damages that will be tried as part of Phase 2 of

1    this case. Further, the MGA Parties' actions in manipulating the sources of funding and
2    apparently using single-purpose companies controlled by Larian to ███████
3    █████████████████████████ and resell them at a profit are relevant to
4    Mattel's Phase 2 criminal copyright infringement claims, affects MGA's and Larian's
5    financial condition, and represents anti-competitive conduct actionable under Mattel's
6    unfair competition claim.  MGA's mid-trial transactions with non-operating entities
7    bear the classic hallmarks of an attempt to fraudulently transfer assets to its controlling
8    shareholders that, if substantiated, may constitute predicate acts of wire and mail fraud
9    that support Mattel's RICO claims. The requested documents are also to relevant to the
10   MGA Parties' unclean hands defense. Mattel is entitled to respond to this defense by
11   demonstrating that MGA is precluded from invoking the unclean hands because they
12   have not themselves acted with clean hands.

13        The Discovery Master should grant Mattel's motion, overrule the objections of
14   MGA and the third parties and compel IGWT Group, LLC, IGWT 826 Investments,
15   LLC, Vision Capital, LLC, Omni 808 Investors, LLC and OmniNet Capital, LLC to
16   produce documents responsive to their respective subpoenas.

17                                  **Case Background**

18        **Phase 1.**  Mattel first asserted claims relating to this dispute when it sued Carter
19   Bryant in April 2004, and MGA intervened as a defendant later that same year. After
20   Bryant and MGA brought their own reactive countersuits in 2004 and 2005,
21   respectively, Judge Larson consolidated the three cases, and then, on February 21,
22   2007, bifurcated these consolidated cases into two phases.[1]

23        Phase 1 focused on ownership of Bratz, Mattel's claims of copyright
24   infringement stemming from that ownership and Bryant's work with MGA while he
25

26   _____
     [1]  See Scheduling Orders in <u>Mattel v. Bryant</u>, Case No. CV 04-09059 ("Phase 1") and
27   <u>MGA v. Mattel</u>, Case No. CV 05-02727 ("Phase 2"), dated February 21, 2007.  The
     Scheduling Orders are attached as Exhibit 10 to the concurrently filed Declaration of Jon D.
     Corey ("Corey Dec."). The District Court ultimately dismissed Bryant's suit for failure to state
28   a claim. See Order Granting Motions to Dismiss, dated July 17, 2006, Corey Dec., Exh. 11.

1   was a Mattel employee, including the illegal payments MGA made or offered to him

2   while he was a Mattel employee.[2] It was the Phase 1 claims that the parties tried before

3   Judge Larson during the summer of 2008, resulting in jury verdicts in Mattel's favor.

4       Phase 1 trial proceeded in three stages. On July 17, 2008, after hearing six weeks

5   of evidence, the jury returned a unanimous verdict for Mattel in Phase 1A.[3] The jury

6   found that Carter Bryant conceived or created the Bratz characters, the Bratz name and

7   virtually all of the Bratz drawings, sculpts and prototypes at issue during the time he

8   was a Mattel employee.[4] As a consequence, the Court ruled that Mattel, and not MGA

9   or Bryant, owned the Bratz-related inventions under Bryant's Inventions Agreement

10  with Mattel.[5] The jury also unanimously found MGA and Larian liable for tortious

11  interference with contract, conversion, aiding and abetting breach of fiduciary duty, and

12  aiding and abetting breach of duty of loyalty.[6]

13      In Phase 1B trial, after hearing additional testimony and evidence, the jury

14  unanimously found MGA liable for infringing Mattel's copyrights in the Bratz works

15  that Mattel owned.[7] The jury also found that MGA fraudulently concealed the bases for

16  Mattel's claims of intentional interference and conversion.[8] The jury awarded Mattel in

17  excess of $100 million for all its claims.

18      Phase 1C, addressing non-jury and remedial issues, is proceeding before the

19  district court. On December 3, 2008, the Court found that Mattel was entitled to an

20  order enjoining MGA's further manufacture, distribution and sale of infringing Bratz

21  dolls and its further use of the "Bratz" name.[9] The Court also ruled that Mattel was

22

23  [2]   See July 2, 2007 Minute Order, at 2, Corey Dec., Exh. 12.
    [3]   See Final Verdict Form as Given – Phase 1(a) ("Phase 1(a) Verdict"), dated July 17,
24  2008, Corey Dec., Exh. 13.
    [4]   See Phase 1(a) Verdict, at 1-5, Corey Dec., Exh. 13.
25  [5]   See April 25 Order re Parties' Motions for Partial Summary Judgment, at 4-5, Corey
    Dec., Exh. 14; Final Jury Instructions as Given – Phase 1(a), Instruction No. 21, dated July 10,
26  2008, at 22-23, Corey Dec., Exh. 15.
    [6]   Phase 1(a) Verdict, Corey Dec., Exh. 12.
27  [7]   Final Verdict Form as Given – Phase 1(b), dated August 26, 2008, Corey Dec., Exh. 16.
    [8]   Id. at 8.
28  [9]   December 3, 2008 Minute Order, at 6-15, Corey Dec., Exh. 17.

07209/2785965.1

-4-

MOTION TO COMPEL

1  entitled to a declaration of ownership of its Bratz-related properties and a constructive
2  trust.[10]  The Court stayed its orders pending further order of the Court so as to allow the
3  Court to rule on the parties' remaining post-trial motions,[11] which are currently
4  scheduled for hearing on February 11, 2009.  On December 3, 2008, the Court also
5  rejected MGA's equitable defenses, such as laches, to Mattel's Phase 1 claims.[12]

6       **Phase 2.**   Phase 2 involves the remainder of the parties' claims and
7  counterclaims.  Mattel's Phase 2 claims include allegations that:

8       •     Over the course of several years, MGA stole massive amounts of Mattel
9  trade secrets in the U.S., Mexico and Canada, including Mattel's forward-looking,
10  international business plans that MGA then used illegally to damage Mattel in the U.S.
11  and global marketplaces.[13]  In 2005, the Office of the Mexican Attorney General
12  obtained a search warrant from the Mexican Federal Courts for MGA's facilities in
13  Mexico City.[14]  In the search, Mexican criminal authorities found and seized from
14  MGA's offices both electronic and hard copies of hundreds of pages of documents
15  containing Mattel's trade secrets.[15]  ███████████████████

16  ███████████████████████████████████████

17  ███████████████████████████████████████

18  ███████████████████████████.[16]

19       Despite knowing this, Larian and MGA promoted Machado to Vice President of
20  Worldwide Marketing and transferred him to MGA's headquarters in the U.S.[17]
21  Subsequently, when deposed in this case, Machado and another MGA manager directly
22  involved in MGA's thefts of Mattel's trade secrets from Mattel's El Segundo

---

[10]   Id.
[11]   Id. at 16.
[12]   Id. at 3-5.
[13]   See Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims
("SAAC"), dated July 12, 2007, at ¶¶ 37-77, Corey Dec., Exh. 19.
[14]   See SAAC ¶ 53.
[15]   See id.
[16]   See Deposition Transcript of Susana Kuemmerle, dated January 28, 2008 ("Kuemmerle
Depo. Tr."), at 140:20-144:10, Corey Dec., Exh. 20.

07209/2785965.1

MOTION TO COMPEL

1  headquarters, ███████████████████████████████████

2  ███.[18]

3  •   MGA bribed then-Mattel employees even beyond Bryant to secretly

4  provide services to MGA while they were still employed by Mattel, in violation of

5  contractual and fiduciary obligations and in violation of duties of loyalty, and otherwise

6  interfered with Mattel's contractual relationships.[19] These included, for example, ████

7  ████████████████████████████████████████████████

8  ████████████████████████████████████████████.[20]  MGA

9  engaged in this misconduct through its vendors, ████████████████████

10 ████████████████████████████████████████████████

11 ███████████████████████████████████████.[21]

12 •   MGA has participated in an enterprise that has engaged in numerous acts

13 of mail and wire fraud, including conspiracy to commit perjury, and numerous acts of

14 commercial bribery, trade secret theft and criminal copyright infringement in violation

15 of the RICO statute.[22]

16     The predicate acts of MGA's RICO violations also include MGA's tampering

17 with evidence through its repeated alteration of documents and spoliation of evidence.

18 To cite a few examples, as noted above, MGA utilized fabricated documentation to

19 conceal the secret work of Mattel employees with MGA.  Furthermore, while still a

20 Mattel employee, Bryant sent his signed MGA contract using a Mattel fax machine.

21 Larian instructed another MGA executive to white-out the fax header showing it came

22

23  [17] See SAAC ¶ 54, Corey Dec., Exh. 19.
    [18] See, e.g., Deposition Transcript of Carlos Gustavo Machado Gomez, dated October 14,
24  2008 ("Machado Depo. Tr."), at 53:10-14, 61:23-63:3, 68:21-69:6, 110:13-113:21, Corey
    Dec., Exh. 21; Deposition Transcript of Jorge Castilla, Vol. 1, dated October 28, 2008
25  ("Castilla Depo. Tr. Vol. 1") , at 51:15-22, 80:9-20, 84:19-85:6, 112:11-23. 113:11-114:22,
    Corey Dec., Exh. 22.
26  [19] See SAAC ¶¶ 55-69, Corey Dec., Exh. 19.
    [20] See Deposition Transcript of Peter Marlow Vol. 2, dated June 16, 2008 ("P. Marlow
27  Depo. Tr. Vol. 2"), at 409:19-410:5, 420:14-421:7, Corey Dec., Exh. 23.
    [21] See id. at 448:15-19, 453:3-454:9.
28  [22] See SAAC ¶¶ 88-105, Corey Dec., Exh. 19.

1  from Mattel before sending it to an MGA lawyer.[23]  That copy also had the contract's

2  date of September 18, 2000 whited-out.[24]  After Bryant began working with MGA,

3  Bryant also put "1998" dates on Bratz drawings—dates that Bryant later admitted were

4  wrong.[25]  MGA nevertheless used the false dates on those drawings in filings with the

5  U.S. Copyright Office.[26]  And, in 2005, after he knew this suit had been filed, Farhad

6  Larian, Isaac Larian's brother and a former MGA executive and director who was still

7  working as a paid consultant for MGA at the time, ███████████████████

8  ████████████████████████████████████████████

9  ███[27]████████████████████████████████████[28]

10  Further showing that the Larian's' attempts to subvert the judicial process is part of a

11  deliberate pattern, Farhad Larian had confirmed in an earlier email that Isaac Larian had

12  instructed him (Farhad) to tell attorneys—falsely—that certain original documents

13  could not be found in an insurance claim suit involving MGA.[29]

14      •      MGA and its CEO, Isaac Larian, made deliberately false statements about

15  Mattel and its products in order to damage Mattel's reputation and to garner an unfair

16  advantage in the marketplace.[30]

---

[23]  See Trial Transcript in Phase 1 ("Trial Tr.") at 1327:23-1329:11 (O'Connor, June 4, 2008), Corey Dec., Exh. 18.
[24]  See July 3, 2001 Fax from V. O'Connor to P. Glaser, Trial Exhibit ("TX") 13383, Corey Dec., Exh. 24.
[25]  See Carter Bryant's Responses to Mattel's Fifth Set of Requests for Admission, dated July 9, 2007, Response Nos. 27 and 29, at 24-28, Corey Dec., Exh. 25.
[26]  See Certificate of Registration VA 1-218-491 (Yasmin drawing), TX 511; Certificate of Registration VA 1-218-488 (Sasha drawing), TX 507; Certificate of Registration VA 1-218-487 (Jade drawing), TX 505; Certificate of Registration VA 1-218-490 (Cloe drawing), TX 509; Certificate of Registration VA 1-218-489 (Bratz group drawing), TX 513, Corey Dec., Exhs. 26-30.
[27]  See Deposition Transcript of Farhad Larian, Vol. 1 ("F. Larian Depo. Tr. Vol. 1"), dated February 4, 2008, at 53:10-16, 56:9-57:5, 65:25-67:2, Corey Dec., Exh. 32.
[28]  See id. at 56:12-57:2.
[29]  See Trial Tr. at 3785:19-24 (F. Larian, July 1, 2008), Corey Dec., Exh. 31; May 25, 2000 E-mail from F. Larian to I. Larian, TX 13380, Corey Dec., Exh. 33.
[30]  See SAAC ¶¶ 78-81, Corey Dec., Exh. 19.

1    In short, Mattel's Phase 2 claims are based on allegations that MGA has engaged
2    in a pattern of illegal conduct which goes well beyond its original theft of Bratz.
3    Although some Phase 2 discovery has occurred, the Court stayed Phase 2 discovery in
4    an order dated February 4, 2008, lifting it on January 6, 2009.[31]

5                          **Statement of Facts**

6       **MGA Misrepresents Its Financial Condition.**  In connection with applications
7    for an order staying the December 3, 2008 injunctive orders, MGA represented to this
8    Court and to the Ninth Circuit that, as a result of this case, ███████████████████
9    ████[32]  Mattel reviewed the financing statements filed regarding MGA and learned
10   that this was apparently false.  Since the Phase 1B verdict, a new creditor, Omni 808
11   International, LLC ("Omni 808") has taken a security interest in the bulk of MGA's
12   assets,[33] which facially suggested that new credit had been extended to MGA.  After
13   Mattel brought the Omni 808 transaction to the Court's attention, and contrary to
14   MGA's earlier, sworn representations to the Court and to the Ninth Circuit that it had
15   been ████████████, ███████████████████████
16   ████████████.[34]

17      The transaction revealed in the financing statements also appears to be structured
18   to conceal the ultimate source of funds for the Omni 808/MGA transaction.  ████████
19   ████████████████████████████████[35]
20   That does not appear to be accurate, nor should the association with OmniNet be a basis
21   to assuage concerns.  Far from it.  OmniNet Capital is a private equity firm owned and

22   ───────────────
      [31]  See Court's Minute Order, dated February 4, 2008, Corey Dec., Exh. 34; Court's
23   Minute Order, dated January 6, 2009, Corey Dec., Exh. 35.
      [32]  See Declaration of Brian Wing in Support of the MGA Parties' Request for a Stay,
24   dated December 11, 2008, at ¶ 13, Corey Dec., Exh. 36.
      [33]  UCC Financing Statement Amendment dated September 9, 2008, amending prior UCC
25   Financing Statement to add Omni 808 Investors LLC as a creditor to MGA with co-priority
      with Wachovia Bank, N.A., Corey Dec., Exh. 37.
26      [34]  MGA Parties Corrections to the Opposition to Mattel, Inc.'s Ex Parte Application for
      Appointment of a Receiver or for Alternative Relief, dated December 31, 2008, at 1-2, Corey
27   Dec., Exh. 38.
28

07209/2785965.1                          -8-
                                                        MOTION TO COMPEL

1   controlled by the Nazarian family, including Nazarian family brother-in-law Neil

2   Kadisha.[36] ████████████████████████████████████████████████

3   ████.[37] In a 2006 Los Angeles Superior Court decision, Mr. Kadisha was found to be

4   "no more than a common thief" for his embezzlement of millions (including for

5   OmniNet), his fabrication of financial records and his perjury.[38] In that decision, the

6   Los Angeles Superior Court found Kadisha liable for stealing millions of dollars as part

7   of a decade-long pattern of fraudulent conduct that included perjury, subordination of

8   perjury, fabrication of financial records, sham transactions, preparation of back-dated

9   documents, fraudulent accountings, acts of looting, embezzlement and other

10  misappropriations of funds, breaches of fiduciary duty, conflicts of interest and illegal

11  self-dealing.[39]

12        Equally significantly, if the transaction were a straightforward purchase of

13  Wachovia's debt by OmniNet, then MGA, Larian, OmniNet and others would have no

14  incentive to conceal the ultimate source of funds, as apparently happened here.

15  OmniNet is not the secured party, and thus presumably not the actual debt

16  purchaser/lender. Rather, the company holding the security interest is Omni 808, **a**

17  **single purpose entity** which was formed on August 12, 2008, near the end of the Phase

18

19

---

20   [35] See MGA Parties' Opposition to Mattel's *Ex Parte* Application for Appointment of a

21  Receiver, dated December 30, 2008, at 8-9 n.4, Corey Dec., Exh. 39.
    [36] Compare Omni 808 registration information (with address of 9420 Wilshire Boulevard,

22  4th Floor, Beverly Hills, CA 90212), Corey Dec., Exh. 37 at UCC Financing Statement
    Amendment ¶ 7(c) with OmniNet Capital address (with address of 9420 Wilshire Boulevard,

23  4th Floor, Beverly Hills, CA 90212), OmniNet "Contact Us", Corey Dec., Exh. 40; see also
    OmniNet "About Us", Corey Dec., Exh. 41.

24   [37] See December 31, 2008 Letter from Omni 808 Investors, LLC, attached as Exhibit B to
    the Declaration of Brian Wing in Support of MGA's Correction to the Opposition to Mattel's

25  *Ex Parte* Application for a Receiver, dated December 31, 2008, Corey Dec., Exh. 42.
    [38] In re Uzyel Irrevocable Trust, No. BP 058 898 (Los Angeles Sup. Ct. October 24,

26  2006), at 13:19, Corey Dec., Exh. 43.
    [39] E.g., id., at 2:13-25, 4:13-18, 26:3-11; 31:22-24, 34:6-7, 41:23-24, 45:25-27, 48:25-28,

27  50-51 n. 12, 62:24-63:2, 71:7-9, 72:15-16, 102:1-20, 111:24-27, 112:10-13, 117:17-23,
    118:23, 120:1-2, 121:1, 125:1-27, 126:16, 141:27-28, 152:17-22, 153:1-6, 155:13-14, 156:1-

28  157:24, 158:23-28, 166:11-22, 168:1-5, 175:10-13, 181:13, 183:11-21.

07209/2785965.1

MOTION TO COMPEL

1B trial.[40]  Nor does it appear that OmniNet owns Omni 808.  Omni 808 appears to be owned and funded by a company called Vision Capital, LLC that, like Omni 808, was formed during the damages phase of the trial.[41]

Vision Capital, LLC ("Vision Capital") borrowed the money used to fund Omni 808, and presumably MGA, from a company called Lexington Financial Limited ("Lexington").  Lexington is an offshore company registered in the Caribbean island of Nevis, a country notorious for its corporate and banking secrecy laws.[42]  Indeed, the official corporate records for Lexington from Nevis declare that Nevis does not ask -- and therefore will not disclose -- any information about Lexington, such as even the bare identifies of its principals.[43]  Lexington also has an address in London at the same location as a company that provides "virtual office" services, i.e., mail drop and answering service.[44]  Fred Mashian, a Sunset Boulevard "estate-planning" attorney, is identified as the Lexington contact on a UCC financing statement showing that Vision Capital secured its loan from Lexington with its ownership interest in Omni 808.[45]  Lexington perfected its purported security interest in Vision Capital's ownership interest in Omni 808 on August 29, 2008--three days after the Phase 1B jury verdict.[46]  The public records Mattel has obtained thus far do not disclose who provided Lexington Financial with the funds that it loaned to Vision Capital, that it contributed to

---

[40]   Omni 808 Investors LLC Certificate of Status and Articles of Organization, Corey Dec., Exh. 44.

[41]   Vision Capital, LLC Certificate of Formation dated August 19, 2008, Corey Dec. Exh. 45.

[42]   UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 46 (with Lexington Financial taking a security interest in Vision Capital's ownership interest in Omni 808 Investors LLC); "Offshore-Based Limited Liability Company (LLC)" at www.offshore-protection.com/nevisLLC.html, Corey Dec., Exh. 47.

[43]   Corey Dec., Exh. 49.

[44]   UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 46; December 12, 2008 letter from Registrar Clevelan Williams, Corey Dec., Exh. 49.  Office Front "Home" (offering website by Office Front allowing a person to obtain a "virtual office" for as little as £10 a month), Corey Dec., Exh. 48.

[45]   UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 46.

[46]   August 29, 2008 Lexington Financial UCC financing statement, Corey Dec., Exh. 46.

1  Omni 808 for the loan/debt purchase related to MGA. Nor has MGA been able to
2  explain why, if OmniNet is truly on the other side of this transaction, it is using shell
3  companies and offshore vehicles, which may be used to conceal the flow of funds, and
4  a sole-practitioner estate planning attorney to process UCC Financing Statements.

5          There may be an innocent explanation for the mid-damages-trial transaction in
6  which MGA's largest creditor became a newly formed shell corporation owned and
7  funded by another newly formed shell corporation that obtained its funding from an
8  offshore corporation registered in the corporate secrecy haven of Nevis and using a
9  fictional London address. But such an explanation has yet to be provided. And, it is a
10 common (but unlawful) tactic for shareholders of a company to create the impression of
11 an arms-length loan to a troubled corporation (rather than a proper capital contribution)
12 while concealing that the shareholder is the source of the funds.[47]

13         **Mattel Discovers that Larian is Setting Up New Companies to Purchase**
14 **Bratz Product from MGA for Pennies on the Dollar**. In addition to its questionable
15 financial dealings, Larian appears to be transferring assets from MGA as well. Larian,
16 through a company called IGWT Group (apparently an abbreviation of "In God We
17 Trust"), is purchasing Bratz product for pennies on the dollar and reselling it. Larian
18 created this company on June 26, 2008 -- during the Phase 1 trial -- and registered its
19 place of business as his home address.[48]  Larian also created an affiliated company
20 called IGWT 826 Investments on August 27, 2008 -- the day after the Phase 1 trial
21 ended.[49]  IGWT 826 is registered at the home address of Shirin Makabi (Isaac Larian's

22

---

23     [47]    For example, one reason this is done is so that a shareholder's sham creditor can
       claim priority over unsecured or secured creditors with lower priority, rather than being
24     last in line as an owner. <u>In re Lifschultz Fast Freight</u>, 132 F.3d 339, 343 (7th Cir. 1996)
       (noting that "[e]quityholders come last in bankruptcy, which generally means they get
25     nothing at liquidation. To avoid this, an owner might disguise her equity claim as debt.
       The doctrine of equitable subordination empowers a bankruptcy court to foil this queue-
26     jumping."); <u>see generally</u> <u>In re Mobile Steel</u>, 563 F.2d 692 (5th Cir. 1977); 11 U.S.C.
       section 510(c) (authorizing equitable subordination).
27     [48]    IWGT Group, LLC registration information, Corey Dec., Exh. 50.
       [49]    IWGT 826 Investments, LLC registration information, Corey Dec., Exh. 101.
28

                                                            MOTION TO COMPEL

1  sister) and Eli Makabi (Isaac Larian's brother-in-law and the only shareholder of MGA
2  other than Isaac Larian).[50]

3      In a spate of "emergency" filings which MGA recently submitted to the District
4  Court and the Ninth Circuit, MGA has relied on claims about Bratz inventory, but made
5  no mention of these entities nor disclosed on what terms IGWT is obtaining Bratz
6  inventory.  After Mattel (and not MGA) brought IGWT to the Court's attention, MGA
7  admitted ███████████████████████████████████████████████
8  ████████████████████████████[51]  The few pages of documents that MGA then self-
9  selected and provided to the Court showed ████████████████████████
10 ███████.[52]

11  **Mattel Subpoenas Relevant Documents From Third Parties**.  After the Court
12  lifted the Phase 2 discovery stay, Mattel served subpoenas on the following:

13      • Omni 808 Investors, LLC.  Mattel served these subpoenas on January 9,
14  2009.[53]  As noted above, Omni 808 is a non-operating entity, formed on August 12,
15  2008, during trial.  It has recently provided new credit to MGA, in addition to taking a
16  security interest in the bulk of MGA's assets.  Omni 808 Investors, LLC served
17  objections to the subpoena on January 28, 2009.[54]  The MGA parties also served
18  purported objections on that date.[55]

19      • OmniNet Capital, LLC.  Mattel served this subpoena on January 9,
20  2009.[56]  OmniNet shares a registered address with Omni 808.  The MGA parties served
21  purported objections to the subpoena on January 28, 2008.[57]

22
23  [50] Id.
    [51] See MGA Parties' Opposition to Mattel, Inc.'s *Ex Parte* Application For Appointment
24  of a Receiver, dated December 30, 2008, at 10, Corey Dec., Exh. 39.
    [52] See Declaration of Cyrus Naim in Support of Mattel's *Ex Parte* Application For
25  Appointment of a Receiver, dated January 2, 2009, at ¶ 2, Corey Dec., Exh. 51.
    [53] Omni 808 Investors, LLC (Beverly Hills) and Omni 808 Investors, LLC (Los Angeles)
26  subpoenas, dated January 9, 2009, Corey Dec., Exh. 56.
    [54] Omni 808 Objections to Subpoena, Corey Dec., Exh. 67.
27  [55] The MGA Parties Objections to Subpoena, Corey Dec., Exh. 64.
    [56] OmniNet Capital, LLC subpoena, dated January 9, 2009, Corey Dec., Exh. 55.
28  [57] The MGA Parties Objections to Subpoena, Corey Dec., Exh. 62.

MOTION TO COMPEL

1     • <u>Vision Capital, LLC</u>.  Mattel served this subpoena on January 13,

2  2009.[58]  Vision Capital owns and presumably funds Omni 808.  Further, like Omni 808,

3  Vision Capital is a non-operating entity which was formed during the course of the

4  Phase 1 trial in this case.  Vision Capital served objections to the subpoena on January

5  28, 2009.[59]  The MGA parties also served purported objections on the same day.[60]

6      • <u>IGWT Group, LLC</u>.  Mattel served this subpoena on January 12, 2009.[61]

7  As set forth above, IGWT Group is a company that Larian formed during trial and

8  appears to be selling Bratz products and conducting Bratz business in lieu of MGA.[62]

9  IGWT Group served objections to the subpoena on January 28, 2009.[63]  The MGA

10  parties served purported objections on the same day.[64]

11      • <u>IGWT 826 Investments, LLC</u>.  Mattel served this subpoena on January

12  12, 2009.[65]  IGWT 826 is likewise a company recently created and registered at the

13  home address of MGA's other shareholders, Eli Makabi.[66]  IGWT 826 Investments

14  served objections to the subpoena on January 28, 2009.[67]  The MGA parties also served

15  purported objection on the same day.[68]

---

[58] Vision Capital, LLC subpoena, dated January 13, 2009, Corey Dec., Exh. 54.
[59] Vision Capital Objections to Subpoena, Corey Dec., Exh. 68.
[60] The MGA Parties Objections to Subpoena, Corey Dec., Exh. 63.
[61] IGWT Group, LLC subpoena, dated January 12, 2009, Corey Dec., Exh. 52.
[62] See IWGT Group, LLC registration information, Corey Dec., Exh. 50.
[63] IGWT Group Objections to Subpoena, Corey Dec., Exh. 65.
[64] The MGA Parties Objections to Subpoena, Corey Decl., Exh. 60.
[65] IGWT 826 Investments, LLC subpoena, dated January 12, 2009, Corey Dec., Exh. 53.
[66] See IWGT 826 Investments, LLC registration information, Corey Dec., Exh. 101.
[67] IGWT 826 Objections to Subpoena, Corey Dec., Exh. 64.
[68] The MGA Parties Objections to Subpoena, Corey Decl., Exh. 59.  Mattel also served a subpoena on Wachovia on January 12, 2009.  Wachovia Corporation subpoena, dated January 12, 2009, Corey Dec., Exh. 57.  Wachovia was previously MGA's largest lender.  With Wachovia's consent, Omni 808 has recently taken over the bulk of MGA's debt.  Wachovia Corp. served objections to the subpoena on January 28, 2009.  Wachovia Corp. Objections to Subpoena, Corey Dec., Exh. 66.  The MGA parties also served purported objections on the same day.  The MGA Parties Objections to Subpoena, Corey Dec., Exh. 58.  The Wachovia subpoena is not at issue in this motion.

07209/2785965.1

-13-

MOTION TO COMPEL

1          **Argument**

2    **I.    MGA HAS A HISTORY OF UNTRUSTWORTHY STATEMENTS**

3         **ABOUT ITS FINANCES**

4          Throughout Phase 1, MGA hindered Mattel and the Court's attempts to obtain an

5    accurate understanding of MGA's and Larian's finances, notwithstanding the

6    indisputable importance of such information to a host of issues.  After trial, Mattel

7    learned that MGA was once again engaging in questionable financial activities,

8    including possibly using newly created entities to sell Bratz products "off the books."

9    Mattel served subpoenas to learn more, gain information relevant to Phase 2 and protect

10   its interests in the Bratz product line as found by the Court.  Now, once again, ignoring

11   the Court's repeated orders and actions designed to obtain clear financial information --

12   as attested most recently by its appointment of a financial auditor -- and the potential

13   prejudice to Mattel, MGA has moved to quash all of the subpoenas in their entirety.

14   Not one of the third-parties at issue here has produced a single document nor have they

15   agreed to do so.

16          In representations to Mattel, the Court, and the Ninth Circuit, MGA and Larian

17   have proved that their representations about their finances are not trustworthy.  They

18   have repeatedly and drastically changed their statements of their own respective net

19   worth and financial condition.  In such circumstances, it is imperative that Mattel be

20   permitted to obtain full and complete information related to MGA's financial condition

21   from third parties.

22          In January 2008, Larian produced summary spreadsheets, dated as recently as

23   October 2007,[69] that showed his personal net worth to be in excess of $1.9 billion, and

24   MGA's net worth as more than $2 billion.[70]  Five months later, MGA produced

25   "Supplemental" documents that placed Larian's net worth at $723.3 million, with MGA

26   ──────────────

27   [69]   Trial Exhibit ("TX") 4947, Isaac and Angela Larian Net Worth as of March 14, 2006, Corey Dec., Exh. 69.

28

07209/2785965.1

MOTION TO COMPEL

valued at $540.5 million -- downward revisions of nearly $1.2 billion and $1.5 billion respectively.[71]  On August 7, 2008, when asked at trial whether the original, higher valuations were accurate, Larian -- who had previously testified at his deposition that ███████ ██████████[72] -- stated unequivocally that they were not.[73]

Following the return of the Phase 1A verdict, and at a time when it was in MGA's interest to understate its financial standing, MGA produced documents from Moss Adams, Larian's accountants,[74] purporting to value the company at █████ ████[75] -- three months *before* defendants' previously-produced spreadsheet indicating a net worth of $2 billion.[76]  The document says on its face that ████ ██████████[77]  The mid-trial production of this document also contradicted MGA's and Larian's previous position that no such valuation existed.[78]  During Phase 1B of the trial, MGA went a step further, claiming that as a result of the Phase 1A verdict, it could not place any value on the company.[79]

---

[70]  See id.; Trial Tr. at 6375:21-6376:21 (August 7, 2008, afternoon session), Corey Dec., Exh. 70.

[71]  See id.; Trial Tr. at 6375:21-6378:19 (August 7, 2008, afternoon session), Corey Dec., Exh. 70; TX 13969, Corey Dec., Exh. 71; Corey Dec., ¶¶ 72-73.

[72]  See Deposition Tr. of Isaac Larian, Volume 2, dated March 26, 2008, at 502:13-509:11, Corey Dec., Exh. 74.  See also TX 13909, Corey Dec., Exh. _.

[73]  See Trial Tr. at 6280:17-20 (August 7, 2008, morning session), Corey Dec., Exh. 73.  To the extent Larian offered any estimate of the net worth figures at his deposition, he placed his personal worth ██████████. See Deposition Tr. of Isaac Larian, Volume 2, dated March 26, 2008, at 504:23-505:5, 508:17-23, Corey Dec., Exh. 74.  These numbers are entirely inconsistent with the amounts reflected in the financial records produced by MGA, and further demonstrates the conflicting and misleading nature of MGA's financial claims.

[74]  Moss Adams's Valuation Analysis of MGA Entertainment, Inc. as of June 30, 2007, Cover Letter to MGA dated October 12, 2007, Corey Dec., Exh. 76.

[75]  See id.

[76]  Compare id. with TX 4947, Corey Dec., Exh. 69.

[77]  Moss Adams's Valuation Analysis of MGA Entertainment, Inc. as of June 30, 2007, Cover Letter to MGA dated October 12, 2007, Corey Dec., Exh. 76.

[78]  Mattel had subpoenaed information from Moss Adams related to Larian's net worth in November 2007.  MGA moved to quash the subpoena on the grounds that the subpoena was "duplicative" of documents that Defendants has previously produced. Based on that representation, the Court quashed the subpoena. May 7, 2008 Order, at 3, 10, 13; Corey Dec.. Exh. 7, Corey Dec.¶ 78.  Moreover, at her September 24, 2007 deposition, MGA's Rule 30(b)(6) designee, Lisa Tonnu, testified that ██████████
(footnote continued)

07209/2785965.1

MOTION TO COMPEL

MGA has also made self-serving claims of impending bankruptcy in an attempt to avoid the Phase 1B trial -- only to later renounce that claim when it became more helpful to its legal position to assert that it was perfectly solvent. Thus, during trial, when MGA filed a Petition for Writ of Mandamus seeking to overturn the Court's order denying a mistrial, it was in MGA's interest to claim that without Ninth Circuit intervention, it would be destroyed. ███████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

Subsequently, when opposing Mattel's Motion for Permanent Injunction, it was in MGA's interest to proclaim its financial viability -- and that is what MGA did. In seeking a permanent injunction, Mattel urged that an injunction was appropriate ████████████████████████████████████████████

██████. On October 13, 2008, in its Opposition to Motion for Permanent Injunction, MGA submitted the declaration of a financial expert proclaiming ████████████

███████████████████████████████████

████████████████████████████████████████████[80]

After the Court's December 3 Orders granting Mattel's requests for injunctive relief, MGA did another about-face. As shown previously, at that point MGA represented to the District Court and the Ninth Circuit that was, in fact, █████████

███████.

---

████████████████████████████████ Deposition Tr. of Lisa Tonnu, Volume 2, dated September 24, 2007, 333:3-334:21, Corey Dec., Exh. 77. However, the Moss Adams ███████████████

██████████████. Moss Adams's Valuation Analysis of MGA Entertainment, Inc. as of June 30, 2007, Cover Letter to MGA dated October 12, 2007, Corey Dec., Exh. 76.
[79] Trial Tr. at 7760:1-17 (August 15, 2008, afternoon session), Corey Dec., Exh. 79.
[80] Petition for Writ of Mandamus, dated August 7, 2008, at 34, Corey Dec., Exh. 83; MGA Parties' Opp. to Motion for Permanent Injunction, at 13:12-15, Corey Dec., Exh. 84.

Additionally, as discussed above, MGA further clouded its financial condition by making conflicting claims about the status of its debt obligations.  In August 2008, during the trial damages phase when it suited MGA to claim financial distress, MGA represented that its lender,



.[81]  However, MGA

.[82]

In short, MGA has made repeated, conclusory and conflicting claims about its financial status, including on motions MGA itself has brought.   Indeed, the inconsistencies in MGA's assertions are what prompted the District Court to observe that MGA's finances were a "mystery."[83]  And, there is no reason to doubt that, once the Court's December 3 Orders become final, MGA will once again argue to the District Court and the Ninth Circuit that

.  Discovery on MGA's financials is amply warranted by MGA's own statements alone.

---

[81] See Letter from Thomas M. Cambern, Managing Director of Wachovia Securities, to MGA, dated July 21, 2008, which is identified by Bates No. MGA 3896745-46, Corey Dec., Exh. 85; Letter from Thomas M. Cambern, Managing Director of Wachovia Securities, to MGA, dated July 21, 2008, which is identified by Bates No. MGA 3896747-48, Corey Dec., Exh. 86; Letter from Thomas M. Cambern, Managing Director of Wachovia Securities, to MGA, dated July 21, 2008, which is identified by Bates No. MGA 3896749-50, Corey Dec., Exh. 87.
At the time, MGA's counsel, Mr. Nolan, stated:                    Trial Tr. at 5587:9-15 (Sealed in Camera Conference, dated July 24, 2008), Corey Dec., Exh. 88.

Trial Tr. at 5588:20-5589:9 (Sealed in Camera Conference, dated July 24, 2008), Corey Dec., Exh. 88.
[82] See Declaration of Brian Wing in Support of the MGA Parties' Request for a Stay, dated December 11, 2009, at ¶ 9, Corey Dec., Exh. 36.
[83] 12/30/08 Hearing Tr. at 57:11-18, Corey Dec., Exh. 78.

07209/2785965.1

-17-

MOTION TO COMPEL

## II.   MATTEL'S SUBPOENAS SEEK DOCUMENTS THAT ARE UNQUESTIONABLY RELEVANT

Federal Rule of Civil Procedure 45 obligates third parties to produce documents responsive to a subpoena that a party serves on them. Fed. R. Civ. P. 45(b), (d). If the documents are relevant and there is good cause for their production, the subpoena is enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying, or embarrassing. U.S. v. American Optical Co., 39 F.R.D. 580, 583 (N.D. Cal. 1966); accord Heat and Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986) ("the factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.").

### A.   The Documents Sought Are Relevant to Mattel's RICO Claims

Mattel's requests are directly relevant to its RICO claims. In its counterclaims, Mattel alleges that the counter-defendants have operated a widespread criminal enterprise that has engaged in numerous acts of mail and wire fraud and other predicate acts in violation of the RICO statute.[84] MGA's mid-trial transactions with Omni 808 and the other non-operating entities, which bear the classic hallmarks of an effort to fraudulently transfer assets to its controlling shareholders, are just a continuation of that pattern of racketeering activity in which MGA and Larian have long been engaged. See, e.g., Asdourian v. Konstantin, 77 F. Supp. 2d 349, 355, 359 (E.D.N.Y. 1999) (allegations that defendant "siphoned away" corporation's assets through "systematic looting" accomplished through fraudulent mortgages constitute predicate acts for RICO). At a minimum, then, the requests are likely calculated to lead to evidence of acts of wire and mail fraud.[85] As such, they are unquestionably relevant, because a

---

[84]   Mattel's Second Am. Complaint and Counter-Claims, dated July 12, 2007, at ¶¶ 88-105, Corey Dec., Exh. 19.
[85]   See id. at ¶ 93(a) & (b).

1  plaintiff alleging RICO violations should be permitted discovery <u>into each instance of a</u>

2  <u>predicate act</u>, even where further discovery is "unnecessary" to establish the category of

3  predicate act.  <u>See</u> <u>Eastman Kodak Co. v. Camarata</u>, 238 F.R.D. 372, 376 (W.D.N.Y.

4  2006).[86]

5       The discovery sought by the subpoenas may also reveal additional, distinct

6  predicate acts in support of Mattel's RICO allegations.  Mattel's requests seek to

7  unravel the true nature of these "financing" transactions, which involve various shell

8  and off-shore companies and appear to be deliberately structured to conceal the

9  ultimate source of funding.  It may be intended to "conceal or disguise the nature,

10  the location, the source, the ownership, or the control of the proceeds" derived from

11  defendants' unlawful activity—here, among other things, their infringement of

12  Mattel's intellectual property.  18 U.S.C. § 1956.  Whatever the reason, MGA's

13  recent "financing" raises a host of potential predicate RICO violations, regarding

14  which Mattel is entitled to discovery.  <u>See, e.g.,</u> 18 U.S.C. § 1957 (use of unlawful

15  funds), 18 U.S.C. § 2314 (transportation of converted funds).  Likewise, the sales by

16  the IGWT entities of infringing Bratz product may constitute predicate acts of

17  criminal copyright infringement by MGA -- predicate acts that Mattel has alleged

18  against MGA in Phase 2.[87]  Thus, the discovery sought is plainly proper.

19       **B.    The Documents Sought Are Also Relevant to Mattel's Disgorgement**

20             **Claim**

21       One remedy Mattel seeks is disgorgement of all amounts wrongfully

22  obtained.  Mattel may also be entitled to damages for lost profits pursuant to its

23  disgorgement theory of damages.  The disgorgement remedy also provides for the

24  imposition of constructive trusts to recover the ill-gotten gains of MGA and Isaac

25  _____

26  [86]    Moreover, even the terms of the loans are themselves relevant.  MGA has paid hundreds of millions of dollars to Larian and his family or associates throughout this litigation.

27  <u>See</u> Corey Dec., ¶ 92 and reference exhibits therein.  That is directly relevant to Larian's personal liability for RICO violations and evidence of his association with and control over the enterprise.

28

Larian that have been transferred to other parties.  For purposes of establishing disgorgement, Mattel must take into account money transferred from MGA and Isaac Larian, regardless of the manner in which it was transferred.  Mattel is entitled to discovery that shows all assets siphoned from MGA or Isaac Larian for which there was no compensation during the period of the alleged wrongful conduct.

It is undisputed that disgorgement is an available remedy for Mattel's claims against MGA and Larian, including Mattel's claim for trade secret misappropriation.  See 4 Callmann, Unfair Competition and Monopolies § 14.45 (4th ed.) and Clark v. Bunker, 453 F.2d 1006, 1011 (9th Cir. 1972).  The scope of the disgorgement remedy is set forth in two recent California Supreme Court decisions.  See Kraus v. Trinity Management Servs., Inc., 23 Cal. 4th 116 (2000); Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134 (2003).  The court indicated that:

> "disgorgement" is a broader remedy than restitution. . . .
> [A]n order for disgorgement "may compel a defendant to
> surrender *all* money obtained through an unfair business
> practice even though not all is to be restored to the persons
> from whom it was obtained or those claiming under those
> persons.  It has also been used to refer to surrender of *all*
> profits earned as a result of an unfair business practice
> regardless of whether those profits represent money taken
> directly from persons who were victims of the unfair
> practice."

Korea Supply, 29 Cal. 4th at 1145 (quoting Kraus, 23 Cal. 4th at 127) (emphasis added).  Moreover, an important part of disgorgement is the imposition of a constructive trust to recover ill-gotten gains that have been transferred to others by the defendant.  A constructive trust is intended to prevent unjust enrichment, with equity compelling the restoration to another of property to which the holder thereof is not justly entitled.  Taylor v. Polackwich, 145 Cal. App. 3d 1014, 1022 (1983); Cal. Civ. Code §§ 2223, 2224.  See also Weiss v. Marchus, 51 Cal. App. 3d 590, 600 (1975) (constructive trust may be imposed in case of fraud, mishandling, or almost any case of

---

[87]   SAAC, ¶ 93, Corey Dec., Exh. 19.

1    wrongful acquisition or detention of property to which another is entitled).   When
2    personal property is in dispute, the legislature has allowed plaintiffs to invoke the
3    remedy of constructive trust.  Cal Civ. Code §§ 2223, 2224.  To create a constructive or
4    involuntary trust only three conditions are necessary: existence of a res, i.e. property or
5    some interest in property, plaintiff's right to that res and defendant's gain of the res by
6    fraud, accident, mistake, undue influence, violation of the trust or other wrongful act.
7    Kraus v. Willow Park Public Golf Course, 73 Cal. App. 3d 354 (1977); see Cramer v.
8    Biddison, 65 Cal. Rptr. 624, 257 Cal. App. 2d 720 (1968).  See Burlesci v. Petersen, 68
9    Cal. App. 4th 1062, 1067 (1998) (constructive trust); Farmers Ins. Exchange v. Zerin,
10   53 Cal. App. 4th 445, 454-55 (1997) (equitable lien is proper if unjust enrichment and
11   detrimental reliance are implicated)

12        By these subpoenas, Mattel seeks evidence to prove the amount the defendants
13   must disgorge.  Money that properly belonged to Mattel was transferred from MGA or
14   Isaac Larian to an entity controlled by them.  Mattel should be able to understand how
15   that money was used because MGA and Isaac Larian have no right to whatever
16   additional gains realized with Mattel's money.  Rather, the right to those additional
17   gains vests solely in Mattel.

18        **C.    The Documents Sought Are Relevant to Phase 2 Damages**

19        The requests also seek documents relevant to the MGA parties' financial
20   condition, which is relevant to Mattel's Phase 2 damages claims.  A defendant's net
21   worth, financial condition, and ability to pay any award are all factors relevant to an
22   award of punitive damages.  See, e.g., Hilao v. Estate of Marcos, 103 F.3d 767, 781-82
23   & n. 7 (9th Cir. 1996) (financial condition a relevant factor in awarding punitive
24   damages); Southern California Housing Rights Center v. Krug, 2006 WL 4122148, *4
25   (C.D. Cal. 2006) ("When a punitive damages claim has been asserted, a majority of
26   federal courts permit pretrial discovery of financial information about defendants
27   without requiring the plaintiff to establish a prima facie case on the issue of punitive
28   damages."); Robert L. Cloud & Associates v. Mikesell, 69 Cal. App. 4th 1141,148-

1  1152 (1999) (defendant's "ability to pay damages award" and "financial condition"
2  were relevant to determining award of punitive damages for misappropriation of trade
3  secrets).

4      Judge Larson and the former Discovery Master have ruled that Mattel is entitled
5  to evidence related to MGA's net worth.  For example, Mattel moved to compel MGA
6  to produce a <u>Rule</u> 30(b)(6) witness on issues related to MGA's net worth after MGA
7  claimed such evidence was irrelevant and should be left to expert testimony.  The
8  Discovery Master agreed with Mattel and ordered the deposition to proceed on the issue
9  of net worth, among others.  MGA objected and appealed to Judge Larson, who
10 affirmed the Discovery Master and held "[t]hat net worth is generally the subject of
11 expert testimony at trial -- a proposition disputed by neither Mattel nor the Court --
12 does not render it an improper subject for a Rule 30(b)(6)."[88]

13     Omni 808 and Vision Capital are directly involved in providing funding to MGA
14 in exchange for a security interest.  Such funding, and security interests, are in and of
15 themselves directly relevant to the financial condition of the MGA Parties, including
16 the amount of the security interests, the terms and conditions of the funding, and the
17 rate of the funding.  The true identity of the persons and entities providing the funding
18 and obtaining a security interest in MGA are likewise relevant to that issue.  Moreover,
19 given the level of financing, the parties must have engaged in evaluations of the past,
20 present, and future value of the MGA parties.  It is just such documents that the third-
21 party subpoenas at issue seek.

22     Finally, as noted above, MGA is using IGWT to sell Bratz products and conduct
23 Bratz business.  Obviously, this kind of evasion is directly relevant to the claims at
24 issue, as well as to the net worth and financial condition of the MGA Parties.  Mattel is
25 entitled to the information sought by the subpoenas for these additional reasons.

26
27
28

[88]  July 2, 2007 Order, at 5, Corey Dec., Exh. 12.

MOTION TO COMPEL

**D.     The Documents Sought Are Relevant to the MGA Parties' Credibility**

Information is also relevant and discoverable if it relates to "the credibility of any witness." Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc., 175 F.R.D. 646, 650 (C.D. Cal. 1997). As set forth below, in Section II *infra*, MGA and Larian made statements under oath about their financial condition as well as about the role of Omni 808 and the other non-operating entities in providing MGA with additional funding.[89] Mattel is therefore entitled to discovery to determine the true state of these matters -- information which is directly relevant to MGA's and Larian's credibility.

**E.     The Documents Sought are Relevant to the MGA Parties' Unclean Hands Defense**

The subpoenas also seek documents relevant to the MGA Parties' defense of unclean hands. In their answers to Mattel's cross-claims, MGA and Larian asserted that "Mattel's counterclaims are barred in whole or in part by Mattel's unclean hands."[90] The alleged basis for their unclean hands defense is wide ranging, touching on every aspect of Phases 1 and 2 of this case, including the alleged infringement of MGA's trade dress and Bratz products as well as allegedly interfering with MGA's efforts to hire Mattel employees.[91]

Mattel is entitled to respond to these allegations by demonstrating that the MGA Parties are precluded from invoking the unclean hands defense because they have not themselves acted with clean hands. The invocation of "unclean hands" is an equitable defense. GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1209-10 (9th Cir. 2000) (discussing "equitable defense" of "unclean hands"); In re McKesson HBOC, Inc. Erisa

---

[89] Compare Declaration of Brian Wing in support of the MGA Parties' Request for a Stay, dated December 11, 2008, at ¶ 13, Corey Dec., Exh. 36 with MGA Parties' Corrections to the Opposition to Mattel's *Ex Parte* Application for Appointment of a Receiver, dated December 31, 2008, at 1, Corey Dec., Exh. 38.
[90] MGA's Amended Answer and Affirmative Defenses, dated September 19, 2007, at 20-21, Corey Dec., Exh. 103; Isaac Larian's Amended Answer and Affirmative Defenses, dated November 8, 2007, at 16-18, Corey Dec., Exh. 104.

1  Litigation, 391 F.Supp.2d 812, 842 (N.D. Cal. 2005) ("[U]nclean hands is an equitable
2  defense.").  A party asserting an equitable defense, however, must itself have "clean
3  hands."  Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 385 (9th Cir. 1997) (("A
4  cardinal maxim of equity jurisprudence is that he who comes into equity must come
5  with clean hands.") (quoting Banks v. Rockwell Intern. North American Aircraft
6  Operations, 855 F.2d 324, 327 (6th Cir. 1988)); Granberry v. Islay Investments, 9 Cal.
7  4th 738, 743-744, 750 (1995) (equitable defense may be "barred by any of the generally
8  applicable equitable affirmative defenses, including . . . unclean hands"); Blain v.
9  Doctor's Co., 222 Cal. App. 3d 1048, 1059 (1990) ("He who comes into Equity must
10 come with clean hands.").  As discussed above, MGA may be engaging in sham and
11 financial fraudulent transactions such as concealing profits and sales of Bratz and other
12 products "off the books" through newly created single purpose companies.  If true,
13 MGA and Larian would be acting with unclean hands and thus precluded from
14 invoking the unclean hands defense themselves.

15      **F.      The Documents Sought Are Relevant to Mattel's Unfair**
16               **Competition Claim**

17         The subpoenas seek documents related to Mattel's claim for unfair competition.
18 The MGA Parties' actions in manipulating the sources of funding and apparently using
19 single-purpose companies to unload Bratz products for pennies on the dollar and resell
20 them may be anti-competitive actions that are encompassed by California's unfair
21 competition laws.  Under Business and Professions Code § 17200, "unfair competition"
22 includes "any unlawful, unfair or fraudulent business act or practice...."  Section
23 17200's scope is "sweeping, embracing anything that can properly be called a business
24 practice and that at the same time is forbidden by law."  Rubin v. Green, 4 Cal. 4th
25 1187, 1200 (1993) (internal quotation marks and citation omitted).  It encompasses
26 "anti-competitive business practices as well as injuries to consumers, and has as a major

27  _____
28  [91] Id.

1  purpose the preservation of fair business competition." <u>Cel-Tech Communications, Inc.</u>
2  <u>v. Los Angeles Cellular Telephone Co.</u>, 20 Cal. 4th 163, 180 (1999).  Accordingly, the
3  documents sought are reasonably calculated to lead to the discovery of admissible
4  evidence relating to Mattel's unfair competition claim.

5  **III.    THE REMAINING OBJECTIONS ARE BOILERPLATE AND**
6  **          SHOULD BE OVERRULED**

7      **A.    The Boilerplate Objections Are Improper**

8        The third parties assert a host of boilerplate general objections, which they repeat
9  in their specific objections.  Through these objections, they generally assert that
10  Mattel's document requests (including Mattel's definitions) are irrelevant, overbroad,
11  ambiguous, harassing, cumulative, and unduly burdensome.  Such objections are the
12  hallmark of boilerplate objections that are improper under the Federal Rules of Civil
13  Procedure.  <u>A. Farber and Partners, Inc. v. Garber</u>, 234 F.R.D. 186, 188 (C.D. Cal.
14  2006) (overruling defendant's boilerplate objections as improper and ordering
15  production of documents).  <u>See</u> <u>Panola Land Buyers Ass'n v. Shuman</u>, 762 F.2d 1550,
16  1559 (11th Cir. 1985) (holding that court did not have discretion to limit discovery on
17  basis of boilerplate objections).

18      **B.    That Documents May be Available from Other Parties Does Not**
19         **Excuse Compliance**

20        MGA and the third-parties suggest that they are excused from compliance with
21  the third-party subpoenas because some of the documents purportedly may be available
22  from MGA or other sources.  However, because documents may be available from
23  other sources is not grounds to refuse production.  "[A] person may not avoid a
24  subpoena by saying that the evidence sought from him is obtainable from another."
25  <u>Covey Oil Co. v. Continental Oil Co.</u>, 340 F.2d 993, 998 (10th Cir. 1965) (overruled on
26  other grounds); <u>State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.</u>, 2007 WL
27  2993840, at *1 (E.D.N.Y. 2007) (compelling production of documents third-party
28  claimed were in possession of party to litigation); <u>In re Bergeson</u>, 112 F.R.D. 692, 695

07209/2785965.1

-25-

1   (D. Mont. 1986) (conclusory assertions that documents sought are available from others

2   more economically "does not constitute a showing of unreasonableness or

3   oppressiveness."). Moreover, no party has demonstrated that all of the documents

4   requested are available from another party. Nor does this seem likely. As held by the

5   State Farm court, "nothing in the Federal Rules of Civil Procedure requires a litigant to

6   rely solely on discovery obtained from an adversary instead of utilizing subpoenas." Id.

7   at *1.

8        Furthermore, Mattel should not be forced to rely solely on MGA in obtaining

9   discovery related to their financial condition or illegal activities. As the jury

10  unanimously found at trial, MGA fraudulently concealed its illegal activities in this

11  case. It engaged in a pattern of misrepresentations about its financial condition,

12  including concealing valuations, providing valuations within months of each other that

13  fluctuated by hundreds of millions of dollars, and claiming near insolvency when it

14  suited its legal arguments and then denying it when their needs shifted. There also is

15  evidence, described above, of concealment, spoliation and alteration of documents by

16  MGA, Isaac Larian and other MGA executives and MGA-affiliated parties. The truth-

17  finding function in this case is not served by entrusting MGA itself to produce

18  evidence, including evidence of its own wrongdoing. As MGA's pattern of misconduct

19  amply shows, quite the opposite is the case here.

20  **C.    The Objection Based Upon the Accountant-Client Privilege Is**

21  **Unfounded**

22        MGA and the IGWT parties' objection that the requests seek documents

23  protected from disclosure by the accountant-client privilege is without basis. The

24  United States Supreme Court has recognized that there is "no confidential accountant-

25  client privilege [that] exists under federal law, and no state created privilege has been

26  recognized in federal cases." Couch v. United States, 409 U.S. 322, 335 (1972)

27  (collecting cases). Therefore, the objection is frivolous. Nevertheless, even if there

28  was such a privilege, IGWT offers no foundation for its application to the documents

1  requested.  IGWT does not contend that it provides accounting services, much less that
2  it has acted as an accounting firm or agency in relation to MGA (or Larian).

3  **D.    Mattel's Requests Do Not Impose an Undue Burden**

4        The third parties object that the requests are unduly burdensome and that the
5  burden and expense outweighs the documents relevance.  These subpoenaed parties
6  bear the burden of proving undue burden by "specific and compelling" proof;
7  conclusory assertions are insufficient.  Goodman v. U.S., 369 F.2d 166, 169 (9th Cir.
8  1966) ("The party must provide specific and compelling proof that the burden is
9  undue."); see JZ Buckingham Investments, LLC v. United States, 78 Fed. Cl. 15, 25
10  (Fed. Cl. Ct. 2007) (denying motion to quash); Northrop Corp. v. McDonnell Douglas
11  Corp., 751 F.2d 395, 403 (D.C. Cir. 1984) (reversing district court's decision quashing
12  subpoena).  Here, third parties have not demonstrated the time, cost, or burden involved
13  in responding to Mattel's subpoenas is undue.  Nor could they.  Virtually all of the third
14  parties here are single purpose entities that have existed only a few months.  It is
15  dubious at best that they should have such voluminous records, let alone voluminous
16  records of the type requested by Mattel in the subpoenas, that any burden could be
17  considered undue.

18        The MGA Parties' complaints about alleged burden are wholly irrelevant -- it
19  lacks any standing to even make such an argument -- and simply serve to underscore
20  that MGA seeks to obstruct.  "The burden of showing that a subpoena is unreasonable
21  and oppressive *is upon the party to whom it is directed*."  Goodman, 369 F.2d at 169
22  (emphasis added).

23  **E.    Mattel's Requests Do Not Violate the Discovery Master's May 7,**
24         **2008 Order**

25        MGA and the IGWT Parties object, claiming that the subpoenas violate Judge
26  Infante's May 7, 2008 Order in which he allegedly found that "similarly phrased
27  requests to third parties" were overly burdensome and improper.  This objection should
28  be overruled.  First, the subpoenas at issue in the May 7, 2008 Order sought different

1   information and went to different issues than the present requests.  Second, Judge
2   Infante was clear that "[n]othing in this Order is intended to authorize or preclude
3   Mattel from seeking documents from the non-parties identified herein as part of Phase 2
4   discovery, if appropriate."[92]  So, the objection is without merit.

5   **F.    Concerns Over Confidentiality Are Alleviated by the Protective**
6          **Order**

7          The third parties object on the grounds that Mattel seeks documents containing
8   trade secrets, confidential information or otherwise protected by a right of privacy.
9   Because the Court has entered a Protective Order in this action, which Mattel has
10  provided to the subpoenaed parties,[93] the subpoenaed party's concerns about
11  confidentiality do not justify withholding documents from production.  See, e.g.,
12  Putnam v. Eli Lilly and Co., 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007) (finding that a
13  protective order "can strike the appropriate balance between the need for the
14  information and the privacy concerns" of the party opposing production's employees);
15  Keith H. v. Long Beach Unified School District, 228 F.R.D. 652, 658 (C.D. Cal. 2005)
16  (compelling production of student records because of slight redactions and "a protective
17  order to minimize any invasion of the students' privacy rights"); In re Heritage Bond
18  Litigation, 2004 WL 1970058 at *5, n.12 (C.D. Cal. 2004) ("Any privacy concerns . . .
19  defendants have in their bank records and related financial statements are adequately
20  protected by the protective order, and are not sufficient to prevent production in this
21  matter"); A. Farber and Partners, Inc., 234 F.R.D. at 191-92 ("P]laintiff's need for
22  defendant Garber's financial documents outweighs defendant Garber's claim of privacy,
23  especially when the 'impact' of the disclosure of the information can be protected by a
24  'carefully drafted' protective order").

25
26
27
28

---

[92]  May 7, 2008 Order, at 13, Corey Dec., Exh. 75.
[93]  Corey Dec., ¶ 3.

MOTION TO COMPEL

1        Indeed, the former Discovery Master previously and repeatedly ruled that the

2   Protective Order is sufficient to alleviate any privacy concerns.[94]   Although MGA

3   objected to that ruling, the District Court approved the Discovery Master's order,

4   finding that the entry of a protective order justified compelling production of even

5   "sensitive documents" to MGA's "fierce competitor."[95]   Therefore, the confidential,

6   privacy and trade secret objections must be overruled.

7   **IV.   EACH OF THE SUBPOENAED PARTIES MUST PRODUCE**

8   **ADEQUATE PRIVILEGE LOGS**

9        To the extent the subpoenaed parties are withholding documents on the basis of

10   privilege, they must provide a timely privilege log. Fed. R. Civ. P. 45; see Burlington

11   N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142, 1148-50

12   (9th Cir. 2005) (affirming district court's holding that party waived privilege objections

13   by failing to provide privilege log within thirty days of serving its responses); In re

14   Imperial Corp. of Am., 174 F.R.D. 475, 477 (S.D. Cal. 1997) (waiver rule for failure to

15   provide privilege log applies to subpoenas to third parties). Accordingly, the Discovery

16   Master should order the subpoenaed parties to produce privilege logs as required by

17   Rule 45(d)(2).

18

19

20

21

22

23

24

25

26

27   [94]   Order Dated May 15, 2007, at 11, n.4, Corey Dec., Exh. 99.

28   [95]   Order Dated July 2, 2007, at 3, Corey Dec., Exh. 23.

07209/2785965.1

MOTION TO COMPEL

1    **<u>Conclusion</u>**

2        For the reasons set forth above, and for those set forth in the Mattel's Separate

3  Statement, Mattel respectfully requests that the objections to the subpoenas be

4  overruled and that IGWT Group, LLC, IGWT 826 Investments, LLC, Vision Capital,

5  LLC, OmniNet Capital, LLC, and Omni 808 Investors, LLC be compelled to produce

6  all documents sought by Mattel's subpoenas as well as to produce a privilege log for

7  any documents withheld on the basis of privilege.

8

9  DATED:  February 3, 2009          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
10

11                                   By/s/ Jon D. Corey
                                        Jon D. Corey
12                                      Attorneys for Mattel, Inc.

13