# EXHIBIT 14

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| CARTER BRYANT, | | **CASE NUMBER** | |
| | | CV 04-09049 SGL (RNBx) | |
| | PLAINTIFF(S), | | |
| | v. | | |
| MATTEL, INC., et al., | | **NOTICE OF CLERICAL ERROR** | |
| | DEFENDANT(S), | | |

TO:     U. S. District Judge(s)
         U. S. Magistrate Judge(s)
         Counsel of Record

You are hereby notified that due to a clerical error ☐ documents associated with the filing of the new action ☐ the following scanned document ☑ docket entry   have/has been corrected as indicated below.

Title of Scanned Document:   Minute Order of 4-25-08, Granting in part, Denying in part, and Deferring in Part the Parties' MSJ

Filed Date: 4-25-08 _____   Document Number: 3285 _____

☐   Incorrect case number _____ was assigned to this ☐ action ☐ document.

☐   Case number has been corrected. The correct case number is _____

☐   Incorrect judge's initials were indicated on this ☐ action ☐ document. The correct judge's initials are _____

☐   Incorrect magistrate judge's initials were indicated on this ☐ action ☐ document. The correct magistrate judge's initials are _____

☐   Case has been reassigned from ☐ Judge ☐ Magistrate Judge _____ to

        ☐ Judge ☐ Magistrate Judge _____. The initials of the new judge(s) are _____

☐   Case was assigned to ☐ Western ☐ Southern ☐ Eastern division. Pursuant to General Order ☐ 349, ☐ 98-3 ☐ 02-06,

        the case has been reassigned to the ☐ Western ☐ Southern ☐ Eastern division. The former case number _____
        has been reassigned to new case number _____

☐   Subsequent documents must be filed at the ☐ Western ☐ Southern ☐ Eastern division. Failure to file at the proper location will result in your documents being returned to you.

☐   Case title is corrected from _____ to _____

☐   Document has been re-numbered as document number _____

☐   Incorrect ☐ Filed Date ☐ Date of Document ☐ ENTERED Date ☐ DATE ENTERED ON CM/ICMS was stamped on document. The correct date is _____

☑   Document is missing page number(s):   7 and 8 _____

☐   To ensure proper routing of documents, all documents filed with the court must reflect the following case number and judge's initials: _____

☑   Other: a complete copy with missing pages are re-scanned for service on the parties.

CLERK, U.S. DISTRICT COURT

Date  4-25-08 _____

By: _____          Jim Holmes, CRD
                        Deputy Clerk

*cc: Intake Supervisor / Deputy In Charge*

G-11 (06/05)                                        **NOTICE OF CLERICAL ERROR**

Exhibit 14
Page 124

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date: April 25, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx): MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
===========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes
            Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:       ATTORNEYS PRESENT FOR MATTEL:

None Present                                None Present


ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:    ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN
                PART THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT
                (IN CHAMBERS)

        This matter is before the Court on the parties' motions for partial summary judgment. The
motions were heard on April 22, 2008, and the Court has set the motions for further hearing on
May 19, 2008, at 1:30 p.m. As set forth below, the Court rules on a number of issues presented
by the motions for partial summary judgment and reserves ruling on other issues until after further
hearing on the motions for partial summary judgment and, in the case of MGA's affirmative
defenses, until after the Phase 1 trial.

        The parties have made hundreds of objections to evidence offered in support of and in
opposition to the motions for partial summary judgment. Although counsel for Bryant requested

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                         Page 1

Exhibit 14
Page 125

explicit rulings on the objections raised by Bryant, the Court declines to do so.  To the extent that this Order necessarily relies on evidence subject to any party's objections, the objections are implicitly overruled.

## PREEMPTION

MGA and Bryant seek summary judgment in their favor as to Mattel's claims for intentional interference with contractual relations, conversion, and unfair competition, arguing that these claims are preempted by the Copyright Act.  They are partially correct.

A state law is preempted by the Copyright Act where (1) the work at issue comes within the subject matter of copyright, and (2) the state law rights are "equivalent to rights within the general scope of copyright[.]"  Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th Cir.1987).  "If a state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claim is not preempted by the Copyright Act."  Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005).  Generally the Copyright Act does not preempt the enforcement of contractual rights.  Id.

As to the first element, the intentional interference with contractual relations claim addresses generally an issue within the subject matter of copyright -- the underlying wrong upon which the claim is premised is Mattel's deprivation of rights to intellectual property.

As to the second element, it is clear that the tort of intentional interference with contractual relations is neither categorically preempted or categorically saved from preemption; rather, the Court must engage in a determination of whether the substance of the tort claim differs qualitatively from the copyright claim at issue.  Compare Altera, 424 F.3d at 1089 (holding that a intentional interference claim was not preempted because it was based not on copyrights but on a contractual provision) with Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1144 (9th Cir. 2006) (holding preempted a singer's voice misappropriation claim was not qualitatively different from her copyright claim).

Here, to the extent that the tortious interference is premised upon MGA's alleged interference with any copyrights that Mattel may have under the Inventions Agreement, it is preempted.  Such a claim is not qualitatively different from Mattel's copyright claim.  However, to the extent that the claim is based on MGA's acts that may be found to have aided and abetted the breach or induced the breach of Bryant's fiduciary duty, the claim is not preempted.  That claim is qualitatively different from Mattel's copyright claim.

Therefore, the tortious interference with contractual relations is preempted to the extent that it is based on Mattel's rights to Bratz.  It is not preempted as to Mattel's claims for breach of fiduciary duty.

The parties' arguments regarding the conversion claim address two distinct issues: Conversion of ideas and conversion of tangible things.  The Court addresses each in turn.

MINUTES FORM 90                                                                 Initials of Deputy Clerk:  jh
CIVIL -- GEN                                       Page 2

Exhibit 14
Page 126

Both sides acknowledge, as this Court certainly agrees, that one cannot copyright an idea. Thus, it would seem, a claim for conversion of ideas is not subject to preemption because it is not "within the subject matter of copyright." Del Madera, 820 F.2d at 977.  MGA argues that ideas are not subject to a claim of conversion, to which Mattel responds that such rights in ideas may be created by contract.  Mattel relies on Desny v. Wilder, 46 Cal.2d 715, 733 (1956) which, remarkably, so holds.  However, that case does not support the proposition that a breach of such rights may be remedied by the tort claim of conversion rather than a breach of contract claim.  The law in California regarding the tort of conversion's applicability to ideas remains the same today as in 1956: "The tort of conversion does not apply to ideas." Melchior v. New Line Productions, Inc., 106 Cal.App.4th 779 (2003).  Therefore, although this claim is not preempted, it is not actionable as a tort claim.  Accordingly, summary judgment in favor of MGA and Bryant is granted as to this particular claim.

Mattel also argues that its conversion claim is not preempted to the extent that it seeks the return of tangible things, most notably the original Bratz drawings.  This claim is "within the subject matter of copyright," but the state rights go beyond the rights protected by the Copyright Act by allowing for the return of property.

At oral argument, counsel for MGA argued that Mattel seeks the rights that the drawings represent, not the "paper and ink" of which those drawings are comprised.  Mattel disagreed with that interpretation, noting that it seeks the return of the original drawings and certain sculpts to which it may have rights under the Inventions Agreement.

The items to which Mattel lays claim are not like the manuscript at issue in Dielsl v. Falk, 916 F.Supp. 985, 992 (C.D. Cal. 1996), or the government documents at issue in Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1192-93 (C.D. Cal. 2001), both of which had value merely for their ability to hold and convey their contents.  Rather, the materials Mattel seeks are works of art that may have value apart from the copyrights they represent or the "paper and ink" and other materials of which they are comprised.  Given the role of the drawings and sculpts in developing a new, commercially successful line of fashion dolls, and given the role of these items in the present litigation, the Court discerns a possible inherent value to the materials themselves.

MGA and Bryant also pressed at oral argument that Mattel had not advanced such a claim for return of tangible items.  The Court disagrees.  Citing to its Complaint at ¶ 157, Mattel contends it has long sought the return of tangible items.[1]  An examination of Mattel's claim for conversion reveals that it encompasses such a claim.  Therefore, the conversion claim seeking the return of tangible items is not preempted.  MGA and Bryant's motions for summary judgment on this issue are therefore denied.

To the extent that Mattel's statutory unfair competition claim, discussed more fully below, is

---

[1]  From a review of the record, it is clear to the Court that Mattel intended to cite ¶ 157 of its Amended Answer and Counterclaims, not its Complaint.

MINUTES FORM 90                                                           Initials of Deputy Clerk: jh
CIVIL – GEN                              Page 3

Exhibit 14
Page 127

based on copyright infringement, it is preempted, and the Court grants summary judgment in favor of MGA on this issue.

## STATUTE OF LIMITATIONS

The Court heard argument at length on the statute of limitations issue. Although it is not entirely clear, it appears to the Court from the hearing and from MGA's Rule 56(f) affidavit, that there remain outstanding discovery matters that may have the potential, if resolved in MGA's favor, to factor into the inquiry into the determination of the date of the accrual of any claims against Bryant and/or MGA. Accordingly, the Court defers ruling on the issue of statute of limitations at this time.

## INVENTIONS AGREEMENT

The Court addressed many issues of the enforceability of the Employee Confidentiality and Inventions Agreement in its July 17, 2006, Order. The Court finds no good reason to revisit or revise that Order.

Bryant argues that the Inventions Agreement is ambiguous on the issue of whether it covered anything other than "inventions" as that term is used in patent law. Here, Bryant was a fashion designer. He signed an agreement that assigned his "inventions" to Mattel. "Inventions" is defined by the agreement to include "designs," which was undeniably the focus of Bryant's employment with Mattel. In addition to assigning all rights to Bryant's "inventions" (i.e., "designs") to Mattel, the agreement also assigned to Mattel "all [Bryant's] right, title, and interest in any . . . copyrights . . . and copyright applications based [on those inventions]".

In order to conclude that the Inventions Agreement is ambiguous on the issue of whether it would include any copyrightable drawings or doll designs developed by an employee, the Court would have to read out of the agreement explicit terms assigning to the employer the rights to "designs," "copyrights," and "copyright applications." The Court is required to read the contract as a whole and, where possible, give effect to all its terms. Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). To accept the interpretation advanced by Bryant, the Court would have to disregard this bedrock principle of contract construction by ignoring an explicit assignment by the employee to the employer of copyrights. The interpretation advanced by Bryant is therefore not reasonable, and the Court finds that the Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials.

The Inventions Agreement explicitly conveys to Mattel an employee's interest in any copyrights or copyright applications. Assuming copyrightability and the resolution of certain (as yet unresolved) issues of timing of creation and/or alteration in Mattel's favor, the original Bratz drawings clearly fall within the scope of the Inventions Agreement.

Moreover, the Inventions Agreement incorporates, and therefore does not violate, Cal.

MINUTES FORM 90
CIVIL -- GEN

Page 4

Initials of Deputy Clerk: jh

Exhibit 14
Page 128

Case 2:04-cv-09049-SGL-RNB     Document 3286 ·     Filed 04/23/2008     Page 6 of 11

Labor Code § 2870. Pursuant to that statute (and its incorporation in the Inventions Agreement), because the subject matter at issue -- the Bratz dolls -- relate to Mattel's business of marketing fashion dolls, the factual question of whether Bryant worked on them on his own time, rather during his working hours at Mattel, is not relevant.

MGA argues that contracts of adhesion are unenforceable if they are either outside the scope of the parties' expectations <u>or</u> they are substantively unconscionable. The Court previously determined that the Inventions Agreement was not substantively unconscionable, and now determines that it is not outside the scope of the parties' expectations. As noted above, Bryant was a designer, and the plain language of the Inventions Agreement assigns his "designs" to his employer. Objectively, therefore, it would not be surprising that Mattel would lay claim to Bryant's rights to any doll or doll fashions he designed during the period of his employment with Mattel. Moreover, undisputed evidence establishes that Bryant's subjective understanding of the contract was that it transferred at least some of his rights to Mattel.

Bryant also argues that his actions went no further than lawful preparations to compete with his employer. The undisputed facts, however, tell a different story: Bryant directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel.

The Court grants summary judgment in favor of Mattel on the issue of the enforceability of the Inventions Agreement and the issue of applicability of the Inventions Agreement to any Bratz-related "inventions" (including any designs, improvements, ideas, concepts, and copyrightable subject matter) that he is found to have created during the period of his employment with Mattel.

### DUTY OF LOYALTY AND FIDUCIARY DUTY

Carter Bryant, like all other California employees, owed a duty of loyalty to Mattel while employed there. <u>See</u> Cal. Labor Code § 2863. The undisputed facts establish that he breached this duty by entering into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products. <u>See</u> <u>Huong Que, Inc. v. Luu</u>, 150 Cal.App.4th 400, 414 (2007) ("The duty of loyalty is breached, and the breach may give rise to a cause of action in the employer, when the employee takes action which is inimical to the best interests of the employer.") (internal quotation marks and citation omitted).

Bryant also owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement. <u>Id.</u> ("The value of the Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."). Under California law, a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . . ." <u>City Solutions, Inc. v. Clear Channel Communications, Inc.</u>, 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002). The Inventions Agreement imposed such a duty on Bryant.

MINUTES FORM 90                                                                                          Initials of Deputy Clerk: jh
CIVIL – GEN                                              Page 5

Exhibit 14
Page 129

At the hearing on this matter, counsel contended that a required element for imposing a fiduciary duty -- that the party with the duty be in a superior position to the party to whom the duty is owed -- was missing. That element is described as follows: "[T]he essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050 (N.D. Cal. 2002) (internal quotation marks and citation omitted). The "superior position" to which California courts refer in this context is not superior bargaining power -- a position on which Mattel would apparently have the edge -- but rather it refers to a superior position vis-à-vis the duty imposed. Here, because the duty imposed upon Bryant was essentially to police his own actions by maintaining Mattel's confidentiality and communicating his own "inventions" to Mattel, Bryant was "in a superior position to exert unique influence over" Mattel because he was in the best position, arguably the only one in a position, to know of and police his actions.

As with the duty of loyalty, the undisputed facts establish that Bryant breached his fiduciary duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.

Accordingly, the Court grants Mattel's motion for summary judgment on the issues of the existence and breach of the duty of loyalty. The Court grants Mattel's motion for summary judgment and denies Bryant's motion for summary judgment on the issue of the existence and breach of a fiduciary duty.

In its motion, MGA argued that there can be no liability for aiding and abetting a breach of fiduciary duty in the absence of a fiduciary duty. Because the Court has rejected this argument, the Court denies MGA's motion for summary judgment on this issue.

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with contractual relations.

The elements of a claim for intentional interference with contractual relations are stated as (1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50 Cal.3d 1118, 1126 (1990)).

The undisputed facts show that the first, third, and fifth elements are met. Mattel has raised a triable issue of fact as to the second. The fourth element may be resolved after the

Exhibit 14
Page 130

Court's further hearing on the motions for partial summary judgment. The Court therefore defers ruling on this issue.

## UNFAIR COMPETITION

MGA and Bryant's motions are granted in part and denied in part as to Mattel's unfair competition claims.

Mattel's statutory unfair competition claim, brought pursuant to Cal. Bus. & Profs. Code § 17200, survives summary judgment because Mattel has raised a triable issue of fact as to whether MGA tortiously interfered with Bryant and Mattel's contractual relationship and whether MGA engaged in commercial bribery.

However, two bases for this claim are foreclosed at this time. To the extent that the § 17200 claim is based on copyright infringement, it is preempted. To the extent that it is based on unfair conduct, summary judgment in favor of MGA is granted because the articulated unfair conduct does not approximate an antitrust violation that threatens competition. See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 186-87 (1999).

As to Mattel's common law unfair competition claim, summary judgment in favor of MGA and Bryant is granted. This claim is not, as it must be, based on the act of passing off another's goods as one's own. See Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1153 (9th Cir. 2008) (citing Bank of the W. v. Superior Court, 2 Cal.4th 1254 (1992)).

## UNJUST ENRICHMENT

Because Mattel failed to oppose this portion of Bryant's motion, the Court grants Bryant's motion for partial summary judgment on the issue of unjust enrichment.

## AFFIRMATIVE DEFENSES

Mattel seeks summary judgment as to many of the affirmative defenses asserted by the MGA entities and Carter Bryant. Most of these defenses are essentially equitable in nature, and therefore the Court **DEFERS RULING** on them until after trial. Specifically, the Court **DEFERS RULING** on the affirmative defenses of abandonment, acts and omissions of others, acquiescence, consent, estoppel, failure to mitigate, laches, unclean hands, and waiver until after trial.

For the reason set forth above in a separate section, the Court defers ruling on Mattel's motion as to the statute of limitations defense.

The final affirmative defense is based on 17 U.S.C. § 205(d). With this affirmative defense, MGA essentially contends that it is a bona fide purchaser for value of the Bratz copyrights which

MINUTES FORM 90
CIVIL – GEN                                       Page 7                          Initials of Deputy Clerk: jh

Exhibit 14
Page 131

took the rights in good faith and without notice of any prior transfer of the rights therein to Mattel.
As the issue is argued by the parties, the Court would be required to determine the legal issue of
whether MGA's registration of the copyrights as an "assignment" constitutes "constructive notice"
in the manner required to give MGA the protection of 17 U.S.C. § 205(d).  In the Court's view, this
is a complex legal issue that is not thoroughly addressed by the parties' briefs.  Moreover, the
Court notes that a trial on the merits is likely to resolve the less complex factual issue of whether
MGA acted in good faith and without notice of an earlier assignment of rights.  Accordingly, the
Court **DEFERS RULING** on this issue until after the Phase 1 trial.

* * * *

The Court will consider a number of remaining issues at the further hearing on these
motions, set for May 19, 2008.  Specifically, referencing the parties' Notices of Motion, the Court
will consider the following issues:

Mattel's motion:  Issue (2)(c), whether there is a factual dispute regarding the timing of
certain drawings and a dummy model; issue (3), whether the first-generation Bratz dolls are
substantially similar to seventeen drawings and a doll sculpt drawing or blueprint created by
Bryant and whether those are original, protectable works of expression; issue (5), whether MGA
and Larian are liable for aiding and abetting Bryant's breaches of the duty of loyalty and fiduciary
duty; and issue (6)(a) whether Mattel is entitled to summary judgment as to the affirmative
defense of statute of limitations.

Bryant's motion:  Whether Bryant is entitled to summary judgment as to Mattel's claim for
copyright·infringement; whether Bryant is entitled to summary judgment as to Mattel's breach of
contract claim; and whether Bryant is entitled to summary judgment on any portion of his claim for
declaratory relief.

MGA's motion:  Whether Mattel's claims are time barred; and whether the fourth element of
intentional interference with contractual relations -- actual breach or disruption of the contractual
relationship -- can be resolved on summary judgment.

Except for any updates from any party regarding the outstanding discovery matters that
may be relevant to the statute of limitations, these issues are considered by the Court to be fully
briefed.  Any supplemental briefs by the parties on any issue other than the statute of limitations
will be stricken by the Court.  Any supplemental filings regarding the statute of limitations issue
shall be limited to addressing the status of outstanding discovery issues and/or recently produced
evidence.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                                   Page 8

Initials of Deputy Clerk:  jh

Exhibit 14
Page 132

Case 2:04-cv-09049-SGL-RNB     Document 3286     Filed 04/25/2008     Page 10 of 11

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)   **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of April 25, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | *ADD NEW NOTICE PARTY* <br> **(if sending by fax, mailing address must also be provided)** |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (*include suite or floor*):  P.O. Box 581103

Salt Lake City, UT  84158

*E-mail:  Prosper.Pierre@Arentfox.com

*Fax No.:

\* For CIVIL cases only

*JUDGE / MAGISTRATE JUDGE (list below):*

Initials of Deputy Clerk  jh

Exhibit 14
Page 133

## NOTICE PARTY SERVICE LIST

Case No.   CV 04-09049 SGL(RNBx)    Case Title   Carter Bryant v. Mattel, Inc.

Title of Document   Minute Order of April 25, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | **ADD NEW NOTICE PARTY** (If sending by fax, mailing address must also be provided) |
|---|---|

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address (Include suite or floor):  Two Embarcadero Center, Suite 1500, San Francisco, CA 94111

*E-mail:

*Fax No.:

* For CIVIL cases only

**JUDGE / MAGISTRATE JUDGE (list below):**

Initials of Deputy Clerk jh

Exhibit 14
Page 134

# EXHIBIT 15



```
FILED
CLERK, U.S. DISTRICT COURT

JUL 10 2008

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MGA ENTERTAINMENT, INC., <br><br> Defendant. <br><br> AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx) <br><br> Consolidated with <br> Case No. CV 04-09059 <br> Case No. CV 05-02727 <br><br> Hon. Stephen G. Larson <br><br> **FINAL JURY INSTRUCTIONS AS GIVEN** |

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit 15
Page 135

## JURY INSTRUCTION NO. 21

1
2
3
In its first claim, Mattel contends that it has certain rights to all Bratz-
4 related ideas, concepts, drawings, designs, and other works "conceived or reduced
5 to practice," that is, created, by Carter Bryant, alone or jointly with others, while he
6
7 was employed by Mattel, including Bratz drawings and the idea for the name
8 "Bratz."
9
10
11
MGA and Isaac Larian deny Mattel's contention.
12
13
14
Mattel's claim is based on a contract between Carter Bryant and Mattel
15 called the "Employee Confidential Information and Inventions Agreement" or
16 simply the "Inventions Agreement."  As a matter of law, the Inventions Agreement
17
18 is a valid and enforceable agreement.
19
20
Section 2(a) of the Inventions Agreement provides:
21
22
23
"I agree to communicate to the Company as promptly and fully as
24 practicable all inventions [as defined below] conceived or reduced to practice by
25 me (alone or jointly [with] others) at any time during my employment by the
26 Company.  I hereby assign to the Company and/or its nominees all my right, title
27
28

-22-     Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

Exhibit 15
Page 136

1   and interest in such inventions, and all my right, title and interest in any patents,

2   copyrights, patent applications or copyright applications based thereon. I will

3
4   assist the Company and/or its nominees (without charge but at no expense to me)

5   at any time in every proper way to obtain for its and/or their own benefit, patents,

6   and copyrights for all such inventions anywhere in the world and to enforce its

7   and/or their rights in legal proceedings."

8

9

10

11   The Inventions Agreement defines the term "inventions" as follows:

12

13   "[T]he term 'inventions' includes, but is not limited to, all discoveries,

14   improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable."

15

16

17   To prevail on its first claim, Mattel must show, by the preponderance of the evidence, that any particular Bratz-related idea, concept, drawing, design or work was

18   "conceived or reduced to practice," that is, created, by Mr. Bryant, alone or jointly

19   with others, while employed by Mattel.

20

21

22   It is for you to decide what, if any, Bratz-related works were created by Mr.

23   Bryant, alone or jointly with others, while he was employed by Mattel.

24

25

26

27

28

-23-   Case No. Case No. CV 04-9049 SGL (RNBx)
                 JOINT PROPOSED JURY INSTRUCTIONS

Exhibit 15
Page 137

# EXHIBIT 16

1

2

3

4

5

6

7

8     UNITED STATES DISTRICT COURT

9     CENTRAL DISTRICT OF CALIFORNIA

10    EASTERN DIVISION

11

| 12  MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| 13         Plaintiff, | Consolidated with<br>Case No. CV 04-09059 SGL (RNBx)<br>Case No. CV 05-02727 SGL (RNBx) |
| 14      vs. | |
| 15  MGA ENTERTAINMENT, INC., et al., | Honorable Stephen G. Larson |
| 16         Defendant. | **PHASE B VERDICT FORM AS GIVEN** |
| 17  AND CONSOLIDATED ACTIONS | |
| 18 | |

19

20

21

22

23

24

25

26

27

28

07209/2609529.2209/260
584.2

Exhibit 16
Page 138

**VERDICT FORM - PHASE B**

We answer the questions submitted to us as follows:

### I.  Damages for Phase A Claims

(Answer all four questions in this section.)

### Intentional Interference With Contractual Relations

1.     In Phase A of this trial, you found that MGA Entertainment, Inc. ("MGA") and Isaac Larian are liable to Mattel for intentional interference with contractual relations.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:          $   20  MILLION

As to Mr. Larian:  $   10  MILLION

### Aiding and Abetting Breach of Fiduciary Duty

2.     In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:          $  20 MILLION

As to Mr. Larian:  $  10  MILLION

### Aiding and Abetting Breach of the Duty of Loyalty

3.     In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:          $  20  MILLION

As to Mr. Larian:  $  10  MILLION

-2-

Exhibit 16
Page 139

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 20 of 53   Page ID
#:147657
Case 2:04-cv-09049-SGL-RNB     Document 4279     Filed 08/26/2008     Page 3 of 9

1

## Conversion

2    4.    In Phase A of this trial, you found that MGA, Isaac Larian and MGA

3    Entertainment (HK) Limited ("MGA Hong Kong") are liable to Mattel for

4    conversion. What amount of damages, if any, should be awarded to Mattel?

5        As to MGA:                   $___31,500 PLUS 7% INTEREST

6        As to Mr. Larian:            $_____0____ CALCULATED FROM

7        As to MGA Hong Kong: $_____0____ THE DATE MATTEL'S

8                                                              PROPERTY WAS

9                                                              CONVERTED.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 16
Page 140

## II.  Copyright Infringement

5.    Has Mattel proven by a preponderance of the evidence that MGA is liable to Mattel for copyright infringement?

          Yes       __X__

          No       ____

If your answer is "yes," then answer Question 6.

If your answer is "no," then answer Question 7.


6.    Was MGA's copyright infringement willful?

          Yes       ____

          No    __X__

Answer Question 7.


7.    Has Mattel proven by a preponderance of the evidence that Isaac Larian is liable to Mattel for copyright infringement?

          Yes    __X__

          No       ____

If your answer is "yes," then answer Question 8.

If your answer is "no," then answer Question 9.


8.    Was Mr. Larian's copyright infringement willful?

          Yes       ____

          No    __X__

Answer Question 9.


9.    Has Mattel proven by a preponderance of the evidence that MGA Hong Kong is liable to Mattel for copyright infringement?

          Yes    __X__

Exhibit 16
Page 141

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 22 of 53   Page ID
#:147659
Case 2:04-cv-09049-SGL-RNB      Document 4279      Filed 08/26/2008      Page 5 of 9

1        No    ____

2    If your answer is "yes," then answer Question 10.

3    If your answer is "no," then answer Question 11.

4

5    10.    Was MGA Hong Kong's copyright infringement willful?

6         Yes   ____

7         No   _X_

8    Answer Question 11.

9

10    11.    What amount of damages, if any, should be awarded to Mattel for the

11    defendants' copyright infringement?

12    (a)    Copyright Infringement by MGA

13         $__6 Million__

14    (b)    Copyright Infringement by Isaac Larian

15        Distributions Mr. Larian received from MGA attributable to Bratz-

16        related works:

17         $__3 Million__

18        Value of Mr. Larian's ownership percentage of MGA attributable to

19        Bratz-related works:

20         $___0___

21    (c)    Copyright Infringement by MGA Hong Kong:

22         $___1 Million___

23

24

25

26

27

28

PHASE B VERDICT FORM AS GIVEN
Exhibit 16
Page 142

### III.  Punitive Damages

12.    Has Mattel proven by clear and convincing evidence that MGA acted with malice, oppression, or fraud?

Yes _____

No   X

If your answer is "yes," then answer Question 13.

If your answer is "no," then answer Question 14.

13.    What amount of punitive damages, if any, should be awarded against MGA?

$_____

Answer Question 14.

14.    Has Mattel proven by clear and convincing evidence that Isaac Larian acted with malice, oppression, or fraud?

Yes _____

No   X

If your answer is "yes," then answer Question 15.

If your answer is "no," then answer Question 16.

15.    What amount of punitive damages, if any, should be awarded against Mr. Larian?

$_____

Answer Question 16.

16.    Has Mattel proven by clear and convincing evidence that MGA Hong Kong acted with malice, oppression, or fraud?

Yes _____

PHASE B VERDICT FORM AS GIVEN

Exhibit 16
Page 143

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 24 of 53   Page ID
#:147661
Case 2:04-cv-09049-SGL-RNB   Document 4279   Filed 08/26/2008   Page 7 of 9

1       No      X

2       If your answer is "yes," then answer Question 17.

3       If your answer is "no," then answer Question 18.

4

5       17.    What amount of punitive damages, if any, should be awarded against

6   MGA Hong Kong?

7           $ _____0_____

8       Answer Question 18.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-7-
                                                                        PHASE B VERDICT FORM AS GIVEN

Exhibit 16
Page 144

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 25 of 53   Page ID
#:147662
Case 2:04-cv-09049-SGL-RNB   Document 4279   Filed 08/26/2008   Page 8 of 9

## IV.  Fraudulent Concealment

(Answer all five questions in this section.)

18.   Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of intentional interference with contract against it until at least April 27, 2002?

Yes   _X_

No   ____

19.   Has Mattel proven by a preponderance of the evidence that Isaac Larian fraudulently concealed the bases for Mattel's claim of intentional interference with contract against him until at least April 27, 2002?

Yes   ____

No   _X_

20.   Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of conversion against it until at least April 27, 2001?

Yes   _X_

No   ____

21.   Has Mattel proven by a preponderance of the evidence that Mr. Larian fraudulently concealed the bases for Mattel's claim of conversion against him until at least April 27, 2001?

Yes   ____

No   _X_

PHASE B VERDICT FORM AS GIVEN

Exhibit 16
Page 145

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 26 of 53   Page ID
#:147663
Case 2:04-cv-09049-SGL-RNB     Document 4279     Filed 08/26/2008     Page 9 of 9

1      22.     Has Mattel proven by a preponderance of the evidence that MGA Hong

2    Kong fraudulently concealed the bases for Mattel's claim of conversion against it

3    until at least April 27, 2001?

4              Yes    _____

5              No      X

6

7         Once this verdict form is completed, the foreperson of the jury should sign

8    and date on the lines below.

9

10   DATED: *August 26, 2008*                    /s/

                                        _____
                                        Jury Foreperson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2609529.2608584*2*

PHASE B VERDICT FORM AS GIVEN

Exhibit 16
Page 146

# EXHIBIT 17

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 28 of 53   Page ID
#:147665
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 1 of 17

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                        Date: December 3, 2008
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
================================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

         James Holmes                          None Present
         Courtroom Deputy Clerk                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                           None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE
DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200
INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS
AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER
DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

MINUTES FORM 90                                        Initials of Deputy Clerk: jh
CIVIL -- GEN                       1

Exhibit 17
Page 147

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 29 of 53   Page ID
#:147666
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 2 of 17

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING
DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S
MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE
RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S
MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties.
After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C
of the trial) and enters the following Order.  Filed concurrently herewith are:  (1) Mattel's Proposed
Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as
modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and
Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as
modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and
exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire
record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its
previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian
("Larian"), as "the MGA parties".  MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and
equitable arguments, authorities, and evidence concerning the motions identified above.  In its
final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that
Carter Bryant ("Bryant") created and developed the name, the concept, and, together with
Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 30 of 53   Page ID
#:147667
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 3 of 17

dolls while working as an employee of Mattel and while bound by the terms of an Inventions
Agreement, which provided that all rights to such property, and the property itself, belong to Mattel.
Moreover, the Court further finds, as did the jury, that the preponderance of the evidence
establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations
with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted
Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel.
Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the
MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion
dolls, are liable to Mattel for copyright infringement.

## I.   The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA
parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel,
and waiver.  As set forth below, the Court rules in favor of Mattel, and against the MGA parties as
to these three remaining affirmative defenses.[1]

### A.   Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1)
lack of diligence by the plaintiff, and (2) prejudice to the defendant."  Grand Canyon Trust v.
Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004).  The MGA parties establish neither
element.

Because the Court has already found that all the claims asserted against the MGA parties
were filed within the applicable limitations periods, the Court starts with the presumption that
laches is inapplicable.  Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir.
2002).

Mattel has not delayed in bringing its claims against the MGA parties.  The Court has
already found, based on the undisputed evidence, that Mattel had no reason to know of its claims
against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA
and Larian until Bryant was deposed approximately a year later on November 4, 2004.  MGAE
intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004.
See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a
significantly protectable interest relating to the subject matter of the action, . . . and that MGA's
interest is not adequately represented by the existing parties.").  Thereafter, the parties briefed
Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a
stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1]   By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase
1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses
that they have not already expressly waived.

MINUTES FORM 90                                                       Initials of Deputy Clerk: jh
CIVIL -- GEN                          3

Exhibit 17
Page 149

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 31 of 53   Page ID
#:147668
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 4 of 17

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

## B.   Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

MINUTES FORM 90                                                      Initials of Deputy Clerk: jh
CIVIL -- GEN                                   4

Exhibit 17
Page 150

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 32 of 53   Page ID
#:147669
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 5 of 17

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

## C.    Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

## II. Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2]  Mattel also seeks imposition of a

---

[2]  The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

MINUTES FORM 90                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                          5

Exhibit 17
Page 151

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 33 of 53   Page ID
#:147679
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 6 of 17

constructive trust as to MGA's copyright registrations in certain Bratz drawings. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act. The Court rejects this argument. The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3] Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade." Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty. Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A.   Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The parties agree on the resulting elements, which may be stated as

---

[3] The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.

MINUTES FORM 90
CIVIL -- GEN                                                 6

Initials of Deputy Clerk: jh

Exhibit 17
Page 152

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 34 of 53   Page ID
#:147673
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 7 of 17

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4] In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)). However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

## B.   § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]   Bryant's other characters were re-named before they were marketed:  Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

MINUTES FORM 90
CIVIL -- GEN                                    7                   Initials of Deputy Clerk: jh

Exhibit 17
Page 153

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 35 of 53   Page ID
#:147673
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 8 of 17

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion). The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding. <u>Los Angeles Police Protective League v. Gates</u>, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act. The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

## C.   § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, . . . as may be necessary to prevent the use or employment by any person of any practice which [either] constitutes unfair competition, . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

## IV. Motion for Permanent Injunction (docket #4306)

### A.   Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                              8

Exhibit 17
Page 154

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 36 of 53   Page ID
#:147673
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 9 of 17

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

MINUTES FORM 90                                                    Initials of Deputy Clerk: jh
CIVIL -- GEN                              9

Exhibit 17
Page 155

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 37 of 53   Page ID
#:147674
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 10 of 17

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5]  Counsel likened the jury's damage award to a rug that, no matter which way one moved it, simply would not cover the floor. See Nov. 10, 2008, Tr. at 100-101.  Counsel explained that the jury's findings led to one conclusion or the other and, regardless of which conclusion was chosen, the jury's finding did not support an injunction:

> The rug is too small for an injunction, regardless of how you allocate that money.  You either come up with a vanishingly small subset of infringing products, or you come up with a vanishingly small percentage of infringement by all of the products.  And the jury has put that cap for us.

Id.  Although colorful, counsel's metaphor is not helpful.  Assuming that the Court would be bound by a jury's factual finding in a case where only two possible inferences -- both of which would lead the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an expert report, the Court will infer the factual findings that necessarily flow from it.  But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15, 2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2.  In doing so, the Court has first examined the specific expressive elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]  This argument was not raised in the opposition papers filed by the MGA parties, and is rejected for that reason as well.  See Opp. at 21 ("Here, the circumstances clearly show that the only reasonable conclusion to draw is that the jury's infringement finding was limited to a small universe of products, specifically the first generation Bratz dolls as clothed and packaged.") (emphasis added).

[6]  The MGA parties hazard such a guess in their opposition, wherein they attempt to explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total copyright infringement award: "The jury's decision to award $6 million against MGA[E] (and $10 million total) rather than simply the $4 million] argued by MGA as profits for the first generation may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low."  Opp. at 21 n.30.  This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL -- GEN                              10

Exhibit 17
Page 156

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 38 of 53   Page ID
#:147675
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 11 of 17

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer. Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported by both analytical and market analysis. Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

## B.    Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.    Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90
CIVIL -- GEN

11

Initials of Deputy Clerk: jh

Exhibit 17
Page 157

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 39 of 53   Page ID
#:147676
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 12 of 17

that hundreds of the MGA parties' products -- including all the currently available core female
fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties
have evinced an intention to continue marketing those dolls. This represents a wholesale inability
on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to
irreparable harm.  Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir.
2005).

    MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v.
Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case
holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not
permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay
> conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d
> 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right
> to control the use of its copyrighted materials, . . . irreparable harm
> inescapably flows from the denial of that right."  In substance, such
> language is nothing more than a disguised presumption, particularly
> with the use of the word "inescapably." After eBay, Plaintiffs cannot rely
> on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor
court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably"
in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a
review of the Taylor case makes clear that the Eighth Circuit considered the implications of
allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a
request for injunctive relief could otherwise "amount to a forced license to use the creative work of
another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the
application of a "disguised presumption" of irreparable harm and closer to an actual finding of
irreparable harm.

    At least one district court within the Ninth Circuit is in accord with the Court's decision today,
as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of
future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008
WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds
> that past infringement plus the threat of future infringement equals
> irreparable harm, it seems clear to this Court that such a rule would not
> run afoul of eBay's directives. First of all, the eBay Court did not
> address the showing necessary to establish "irreparable harm." It
> merely held that the plaintiff has the burden of proving it. Second, this
> two-part test does not resurrect the presumption of irreparable harm
> impliedly laid to rest by the eBay court. It simply recognizes that a

Exhibit 17
Page 158

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 40 of 53   Page ID
#:147677
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 13 of 17

> plaintiff meets the burden of proving irreparable harm by making this
> two-part showing. And finally, the two-part test does not represent a
> rule [prohibited by eBay] that an injunction automatically follows a
> determination that a copyright has been infringed. . . . In exercising
> their equitable discretion, courts would still have the freedom to deny
> injunctive relief when the public interest or the balance of hardships
> weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The
statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under
this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable
*to prevent or restrain infringement of a copyright*." 17 U.S.C. § 502 (emphasis added). The
Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record
shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to
his employer (and keep confidential from all others) all copyrightable works he creates during the
term of his employment, not only fails to so communicate but actually secretly purports to convey
the rights thereto to a direct competitor of his employer. The rights to those works are actively
concealed from their true owner (by both the employee and the competitor) for years while the
competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars.
After millions of pages of discovery are produced, thousands of filings are submitted, scores and
scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor
of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing
products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA
parties' past infringement and the high probability of continued acts of infringement.

### 2.    Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop
the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See
Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

### 3.    Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has
expressed its concerns in this regard on the record. The evidence at trial showed that, at least
historically, Bratz is the brand that has made MGA profitable. And the proposed injunction
addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the
cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if
any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995)
("Where the only hardship that the defendant will suffer is lost profits from an activity which has

Exhibit 17
Page 159

Case 2:04-cv-09049-DOC-RNB    Document 4771-3    Filed 02/04/09    Page 41 of 53    Page ID
#:147678
Case 2:04-cv-09049-SGL-RNB    Document 4439    Filed 12/03/2008    Page 14 of 17

been shown likely to be infringing, such an argument in defense merits little equitable consideration
. . . .") (internal quotation marks and citations omitted), <u>accord</u>, <u>Cadence Design Systems, Inc. v.
Avant! Corp.</u>, 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases).  The balance of equities
favor Mattel.

### 4.    Public Interest

There is a strong economic interest, especially in these troubled economic times, in
maintaining a profitable enterprise as a going concern.  However, there is also a strong public
interest in enforcing copyright laws in a uniform manner.  Indeed, nothing is more essential to long-
term economic prosperity than the stability provided by the rule of law.  Although the MGA parties
raise excellent points in their opposition, in the end, the public interest is served by precluding
defendants from engaging in copyright infringement.  The injunction issued by the Court does no
more than that.

### C.    Scope of Injunction

The scope of the permanent injunction is set forth in a separate order.  Four issues raised in
the parties' papers warrant the brief discussion that follows.

### 1.    Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and
destruction of the specialized plates, molds, and matrices used to make them.  Impoundment of
existing infringing products and the destruction of the means to make those products are clearly
remedies contemplated by the Copyright Act.  <u>See</u> 17 U.S.C. § 503(a).  The MGA parties argue
that these remedies are inappropriate because there is no ongoing infringement or, at the very
least, its products infringe very little.  In its findings supporting the issuance of a permanent
injunction, the Court has rejected this premise, and the Court finds that the requested
impoundment and destruction is an appropriate remedy.[7]

### 2.    Recall

In light of the scope of infringement found by the Court, and in light of the fact that the
injunction addresses products that directly compete with Mattel's products, the Court has ordered
the recall of infringing products from retailers.  <u>See</u> <u>CyberMedia, Inc. v. Symantec Corp.</u>, 19
F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7]    No party shall destroy any of the implements used to make the Bratz dolls that are the
subject of the permanent injunction absent a specific order of this Court authorizing such
destruction.

MINUTES FORM 90                                                      Initials of Deputy Clerk: jh
CIVIL -- GEN                              14

Exhibit 17
Page 160

### 3. ' Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4. Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

### V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

### VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

MINUTES FORM 90
CIVIL -- GEN                                  15                    Initials of Deputy Clerk: jh

Exhibit 17
Page 161

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

### VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

### VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

### IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

### X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

MINUTES FORM 90
CIVIL -- GEN                                16                    Initials of Deputy Clerk: jh

Exhibit 17
Page 162

Case 2:04-cv-09049-DOC-RNB   Document 4771-3   Filed 02/04/09   Page 44 of 53   Page ID
#:147681
Case 2:04-cv-09049-SGL-RNB   Document 4439   Filed 12/03/2008   Page 17 of 17

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA  90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA  90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA  92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA  92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA  90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA  90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases 1A and 1B trial transcripts maintained by the parties.  The Court will retain possession of the laptop computer until after its ruling on the motions referred to in section IX, above, and the parties are directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges given the limited resources of the Court.  The permanent injunction, for reasons explained by Mattel on the record, attaches to it approximately 900 color copies.  Accordingly, although the Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

17

Initials of Deputy Clerk: jh

Exhibit 17
Page 163

# EXHIBIT 18

1          UNITED STATES DISTRICT COURT

2         CENTRAL DISTRICT OF CALIFORNIA

3             EASTERN DIVISION

4              - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6              - - -

7  MATTEL, INC.,                    **CERTIFIED**
                         )
8              PLAINTIFF,   )         **COPY**
                         )
9       VS.              )    NO. CV 04-09049
                         )
10  MGA ENTERTAINMENT, INC., ET. AL.,   )
                         )
11             DEFENDANTS.   )    TRIAL DAY 7
                         )    PAGES 1255-1390
12  AND CONSOLIDATED ACTIONS,        )
                         )

13

14

15    REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16           RIVERSIDE, CALIFORNIA

17          WEDNESDAY, JUNE 4TH, 2008

18              8:28 A.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR
         FEDERAL OFFICIAL COURT REPORTER
24          3470 12TH STREET, RM. 134
         RIVERSIDE, CALIFORNIA  92501
25            951-274-0844
           WWW.THERESALANZA.COM

Exhibit 18
Page 164

1256

1   APPEARANCES:

2

3   ON BEHALF OF MATTEL, INC.:

4                         QUINN EMANUEL
                          BY:   JOHN QUINN
5                               JON COREY
                                MICHAEL T. ZELLER
6                               HARRY OLIVAR
                                TIMOTHY ALGER
7                         865 S. FIGUEROA STREET,
                          10TH FLOOR
8                         LOS ANGELES, CALIFORNIA   90017

9

10  ON BEHALF OF MGA ENTERTAINMENT:

11                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:   THOMAS J. NOLAN
12                              JASON RUSSELL
                                RAOUL KENNEDY
13                              LAUREN AGUIAR
                                CARL ROTH
14                        300 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA   90071-3144
15                        213-687-5000

16·

17.

18

19

20

21

22

23

24

25

WEDNESDAY, JUNE 4, 2008                              TRIAL DAY 7
Exhibit 18
Page 165

1326

1  Q    WERE YOU STILL UNCOMFORTABLE THAT MR. BRYANT WAS STILL

2  WORKING FOR A MATTEL COMPETITOR?

3  A    YES.

4  Q    DID YOU SPEAK WITH MR. LARIAN OR MS. TREANTAFELLES OR

5  ANYONE ELSE ABOUT THAT FACT?                                    09:57

6  A    YES.

7  Q    WHO DID YOU SPEAK TO?

8  A    FOR CERTAIN, I SPOKE TO ISAAC LARIAN, AND I'M SURE I SPOKE

9  TO PAULA AS WELL.

10 Q    DID YOU CALL ATTENTION TO THE FACT THAT YOU RECEIVED THIS  09:57

11 SIGNED CONTRACT AND IT HAD THIS FAX HEADER ON THE TOP?

12 A    I DID.

13 Q    IF YOU COULD LOOK AT EXHIBIT 15.

14        I'M GOING TO ASK YOU IF YOU CAN IDENTIFY THAT

15 DOCUMENT.                                                        09:58

16 A    OKAY.

17 Q    CAN YOU IDENTIFY IT?

18 A    YES.

19 Q    WHAT IS IT?

20 A    IT'S THE LICENSE AGREEMENT BETWEEN MGA AND CARTER BRYANT.  09:58

21 Q    AND IS THAT THE FINAL SIGNED AGREEMENT?

22 A    YES, IT APPEARS TO BE.

23        MR. QUINN:  I'D OFFER EXHIBIT 15, YOUR HONOR.

24        MR. NOLAN:  NO OBJECTION, YOUR HONOR.

25        THE COURT:  IT'S ADMITTED.  YOU MAY PUBLISH.            09:58

WEDNESDAY, JUNE 4, 2008                      TRIAL DAY 7

Exhibit 18
Page 166

1    **BY MR. QUINN:**

2    Q    AND THIS IS THE AGREEMENT THAT YOU RECEIVED FROM

3    MR. BRYANT BY FAX.

4    A    I BELIEVE SO.

5    Q    IT SHOWS THERE, IN THE UPPER RIGHT, THAT IT'S DATED AS OF    09:58

6    SEPTEMBER 18, 2000.

7           DO YOU SEE THAT?

8    A    YES.

9    Q    WAS THAT DATE THERE WHEN YOU RECEIVED THIS DOCUMENT FROM

10   MR. BRYANT?    09:59

11   A    I BELIEVE SO, BUT I COULDN'T SAY FOR CERTAIN.

12   Q    BUT YOU DID NOTICE THAT A DATE WAS MISSING THERE.

13          THIS APPEARS TO BE THE DOCUMENT YOU GOT FROM

14   MR. BRYANT.

15   A    YES.    09:59

16   Q    AND YOU UNDERSTOOD THAT MR. BRYANT WAS STILL WORKING FOR

17   MATTEL AT THE TIME.

18   A    CORRECT.

19   Q    AND DID YOU RECEIVE THIS AROUND OR ABOUT SEPTEMBER 18,

20   2000?    09:59

21   A    I BELIEVE SO, BUT IT WAS A LONG TIME AGO.

22   Q    SURE.

23          I'D LIKE YOU TO JUMP FORWARD NOW TO SOME TIME LATER

24   IN THE NEXT YEAR, IN 2001, WERE YOU EVER ASKED TO SEND THIS

25   CONTRACT TO ANYONE?    09:59

**Exhibit 18**
**Page 167**

WEDNESDAY, JUNE 4, 2008

1328

1   A      YES.

2   Q      WHO WERE YOU ASKED TO SEND IT TO?

3   A      PATTIE GLASER.

4   Q      WHO'S PATTIE GLASER?

5   A      OUTSIDE COUNSEL FOR MGA ENTERTAINMENT.                    10:00

6   Q      SHE'S A LAWYER WHO DID WORK FOR MGA?

7   A      YES.

8   Q      WHO ASKED YOU TO SEND THAT AGREEMENT TO MS. GLASER?

9   A      ISAAC LARIAN.

10  Q      WHEN HE ASKED YOU TO SEND THAT AGREEMENT TO HIS OUTSIDE    10:00

11  LAWYER, DID HE GIVE YOU ANY PARTICULAR INSTRUCTIONS?

12  A      NO; NOT THAT I REMEMBER; JUST TO FAX IT TO HER.

13  Q      DID HE GIVE YOU ANY INSTRUCTIONS WITH RESPECT TO THE FAX

14  HEADER?

15  A      I WAS ASKED TO WHITE OUT THE FAX HEADER AT SOME POINT, AND  10:00

16  I DON'T RECALL IF THAT WAS UPON RECEIVING THE EXECUTED CONTRACT

17  OR AT THE TIME I SENT THE FAX TO PATTIE GLASER.

18  Q      I MAY HAVE GOTTEN THAT WRONG.  LET ME BACK UP.

19         AT SOME POINT YOU WERE ASKED TO WHITE OUT THE FAX

20  HEADER THAT SAID "BARBIE COLLECTIBLES"?                          10:00

21  A      YES.

22  Q      YOU'RE JUST NOT SURE WHEN THAT WAS.

23  A      CORRECT.

24  Q      ARE THERE A COUPLE OF POSSIBILITIES YOU'RE THINKING OF AS

25  TO WHAT THAT WAS?                                                10:01

**Exhibit 18**
**Page 168**

1       **MR. NOLAN:**  I THINK IT'S LEADING; AND IT'S ALSO

2   TESTIFYING.

3       **THE COURT:**  SUSTAINED.

4   BY MR. QUINN:

5   Q    WHAT'S YOUR BEST RECOLLECTION AS TO WHEN IT WAS YOU WERE          10:01

6   ASKED TO WHITE OUT THAT FAX HEADER?

7   A    I BELIEVE IT WAS UPON FIRST RECEIVING IT.

8   Q    AND WHO WAS IT THAT ASKED YOU TO DO THAT?

9   A    ISAAC LARIAN.

10  Q    DID HE DO THAT AFTER YOU CALLED HIS ATTENTION TO IT?              10:01

11  A    YES.

12  Q    DO YOU RECALL WHEN IT WAS THAT HE LATER ASKED YOU TO SEND

13  IT TO HIS OUTSIDE LAWYER?

14  A    IT WAS SOME TIME IN 2001.

15  Q    DID HE TELL YOU WHY HE WANTED YOU TO SEND IT TO HIS               10:01

16  OUTSIDE LAWYER?

17  A    NOT THAT I RECALL.

18  Q    PUTTING ASIDE THE ISSUE OF THE HEADER, DID HE TELL YOU TO

19  MAKE ANY OTHER CHANGES BEFORE FAXING THIS TO MS. GLASER?

20  A    NOT THAT I RECALL.                                               10:02

21  Q    WHEN YOU SENT IT TO MS. GLASER, DID YOU HAVE A COPY OF THE

22  CONTRACT OR DID YOU HAVE TO GET A COPY OF THE CONTRACT?

23  A    I BELIEVE THE CONTRACT WAS HANDED TO ME AND TOLD TO FAX IT

24  TO HER.

25  Q    WHO HANDED IT TO YOU AND TOLD YOU TO FAX IT TO HER?              10:02

1330

```
 1   A     ISAAC LARIAN.

 2   Q     DID YOU DO THAT?

 3   A     I DID.

 4   Q     WOULD YOU TAKE A LOOK AT EXHIBIT 13383, WHICH IS IN YOUR

 5   BINDER.  MY QUESTION TO YOU IS WHETHER YOU CAN IDENTIFY THAT      10:02

 6   DOCUMENT?

 7   A     YES.

 8   Q     WHAT IS THAT?

 9   A     THIS IS THE FAX THAT I SENT TO PATTIE GLASER WITH THE

10   LICENSE AGREEMENT BETWEEN CARTER BRYANT AND MGA.                  10:03

11   Q     THAT YOU SENT IN RESPONSE TO MR. LARIAN'S REQUEST.

12   A     YES.

13           MR. QUINN:  WE'D OFFER THAT, YOUR HONOR.

14           MR. NOLAN:  NO OBJECTION, YOUR HONOR.

15           THE COURT:  IT'S ADMITTED.  YOU MAY PUBLISH.             10:03

16           MR. QUINN:  IF WE COULD JUST ENLARGE THIS FIRST PAGE,

17   HERE.

18   BY MR. QUINN:

19   Q     IS THIS THE FAX COVER PAGE THAT YOU USED TO TRANSMIT THE

20   CONTRACT TO MS. GLASER?                                           10:03

21   A     YES.

22   Q     AND DOES SEEING THIS REFRESH YOUR RECOLLECTION AS TO WHEN

23   IT WAS YOU SENT IT TO MS. GLASER?

24   A     YES.

25   Q     IF WE COULD SEE THE NEXT PAGE.                              10:03
```

1  THE COURT HAS NOT RULED ON.

2              **THE COURT:**  OKAY.  THANK YOU.

3

4

5

6

7

8

9

10

11                        CERTIFICATE

12

13  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
14  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
    ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
15  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.

16

17 _____           6-4-08
    THERESA A. LANZA, CSR, RPR           _____
18  FEDERAL OFFICIAL COURT REPORTER          DATE

19

20

21

22

23

24

25

Exhibit 18
Page 171