# EXHIBIT 31

3690

1               UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                 EASTERN DIVISION

4                 - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6               - - -

**CERTIFIED COPY**

7  MATTEL, INC.,         )

8            PLAINTIFF,  )

                    )

9       VS.          )  NO. CV 04-09049

                    )

10  MGA ENTERTAINMENT, INC., ET. AL.,  )

                    )

11          DEFENDANTS.  )  TRIAL DAY 18

                    )  MORNING SESSION

12  AND CONSOLIDATED ACTIONS,    )  PAGES 3690-3821

                    )

13

14

15     REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16           RIVERSIDE, CALIFORNIA

17          TUESDAY, JULY 1ST, 2008

18             8:44 A.M.

19

20

21

22

23         THERESA A. LANZA, RPR, CSR

        FEDERAL OFFICIAL COURT REPORTER

24       3470 12TH STREET, RM. 134

        RIVERSIDE, CALIFORNIA  92501

25          951-274-0844

         WWW.THERESALANZA.COM

Exhibit 31
Page 410

3691

```
 1   APPEARANCES:

 2
     ON BEHALF OF MATTEL, INC.:
 3
                          QUINN EMANUEL
 4                        BY:   JOHN QUINN
                                JON COREY
 5                              MICHAEL T. ZELLER
                                HARRY OLIVAR
 6                               TIMOTHY ALGER
                          865 S. FIGUEROA STREET,
 7                        10TH FLOOR
                          LOS ANGELES, CALIFORNIA   90017
 8

 9

10   ON BEHALF OF MGA ENTERTAINMENT:

11                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:   THOMAS J. NOLAN
12                              JASON RUSSELL
                                RAOUL SLOAN
13                              LAUREN AGUIAR
                                CARL ROTH
14                        300 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA   90071-3144
15                        213-687-5000

16

17

18

19

20

21

22

23

24

25
```

TUESDAY, JULY 1, 2008                    TRIAL DAY 18, MORNING SESSION

Exhibit 31
Page 411

3784

1    YOUR BROTHER'S REQUEST?

2    A     NO, I DID NOT.

3    Q     IT'S TRUE, THOUGH, ISN'T IT, THAT YOUR BROTHER HAS TOLD

4    YOU PREVIOUSLY TO MAKE DOCUMENTS UNAVAILABLE IN LITIGATION?

5    ISN'T THAT TRUE?                                                    11:17

6          MR. NOLAN:  OBJECTION, YOUR HONOR.  RELEVANCE; 403;

7    LACK OF FOUNDATION; AND ALSO HEARSAY.

8          THE COURT:  OVERRULED.

9    BY MR. QUINN:

10   Q     SIR, IT'S TRUE THAT IN CONNECTION WITH OTHER LITIGATION,      11:17

11   YOUR BROTHER HAS TOLD YOU TO MAKE DOCUMENTS UNAVAILABLE; ISN'T

12   THAT TRUE?

13   A     I WANT TO ANSWER, IF I CAN GO BACK FOR A SECOND.

14         I'VE PROVIDED YOU 12,000 PAGES OF DOCUMENTS.  SORRY,

15   I LOST TRACK OF MY                                                  11:18

16         IS IT TRUE?  I THINK I KNOW WHAT YOU'RE REFERRING TO.

17         IN 2000, ISAAC AND I WERE BICKERING AT EACH OTHER,

18   AND WE WERE PLAYING A TIT-FOR-TAT GAME, AND HE DIDN'T WANT ME

19   INVOLVED IN LITIGATION AT THE TIME BECAUSE I HAD SCREWED UP

20   SOME CASE IN TEXAS; SO HE SIMPLY DIDN'T WANT ME TO DEAL WITH        11:18

21   THE ATTORNEYS IN THAT CASE.

22   Q     THAT MAY BE THE ANSWER TO A DIFFERENT QUESTION, SIR.

23         MY QUESTION IS, IT'S TRUE THAT YOUR BROTHER HAS TOLD

24   YOU PREVIOUSLY TO MAKE DOCUMENTS UNAVAILABLE IN LITIGATION?

25   THAT'S HAPPENED BEFORE; TRUE?                                       11:18

1  A    WHAT HAPPENED WAS, IN THE FIREMAN'S FUND CASE, AS I SAID,

2  WE WERE PLAYING TIT-FOR-TAT; WE WERE BICKERING AT EACH OTHER;

3  AND HE DID NOT WANT ME INVOLVED IN THE CASE.  THERE WAS ONE

4  DOCUMENT THAT WE HAD GIVEN COPIES OF TO THE ATTORNEYS, AND THE

5  ORIGINAL WAS EXACTLY THE SAME AS THE COPY.  HE SIMPLY DIDN'T        11:19

6  WANT ME INVOLVED IN THE CASE, AND THAT'S WHY HE TOLD ME NOT TO

7  GIVE IT.

8  Q    SO HE TOLD YOU IN THAT CASE NOT TO MAKE THE LEGIBLE

9  ORIGINALS AVAILABLE TO FIREMEN'S FUND; CORRECT?  THAT'S WHAT HE

10 TOLD YOU?                                                          11:19

11 A    BECAUSE HE WAS GOING TO HANDLE IT HIMSELF.

12 Q    YOU WROTE AN E-MAIL ABOUT THIS; CORRECT?

13 A    YES.

14 Q    YOU DIDN'T MAKE ANY MENTION OF THE FACT IN THE E-MAIL THAT

15 HE WAS GOING TO HANDLE IT HIMSELF, DID YOU?                        11:19

16 A    AS I SAID, WE WERE PLAYING TIT-FOR-TAT, AND I WAS TRYING

17 TO SAY, 'I GOT YOU,' AND HE WAS TRYING TO SAY HE GOT ME; SO WE

18 HAD -- WE HAD A SIBLING RIVALRY.

19 Q    AND THE 'I GOT YOU' THAT YOU GAVE TO HIM WAS THAT YOU

20 REMINDED HIM THAT IN THIS FIREMAN'S FUND CASE, HE HAD              11:20

21 INSTRUCTED YOU NOT TO MAKE SOME ORIGINAL DOCUMENTS AVAILABLE,

22 AND YOU SAID, 'I DID IT ANYWAY.'

23     YOU SAID YOU DID IT ANYWAY; CORRECT?

24 A    THAT'S TRUE.

25 Q    NOW, AFTER YOU DISMISSED YOUR FRAUD CASE AGAINST             11:20

3786

1   MR. LARIAN RELATING TO YOUR ALLEGATIONS OF CONCEALMENT OF

2   BRATZ, HE WENT TO COURT AND GOT AN ATTORNEY'S FEES AWARD

3   AGAINST YOU; CORRECT?

4   A    YES, HE DID.

5   Q    FOR $1 MILLION; CORRECT?                                    11:20

6   A    YES, HE DID.

7   Q    THAT'S STILL HANGING OVER YOU TO THIS DAY; ISN'T THAT

8   TRUE?

9   A    NO, IT'S NOT.

10  Q    HAVE YOU PAID IT?                                           11:20

11  A    NO, I HAVE NOT.

12  Q    HAS ANYBODY TAKEN CARE OF THAT, THAT YOU'RE AWARE OF?

13  A    TAKEN CARE OF IT, MEANING WHAT?

14  Q    LET ME ASK IT THIS WAY:  IT'S TRUE, ISN'T IT, THAT YOUR

15  BROTHER COULD, TOMORROW, GO EXECUTE AND TRY TO COLLECT THAT      11:20

16  MILLION DOLLAR ATTORNEY'S FEES AWARD?

17  A    ALL HE HAS TO DO IS GIVE ME A CALL AND I'LL WRITE HIM A

18  CHECK.

19  Q    HAS HE GIVEN YOU THAT CALL YET?

20  A    NO.                                                         11:21

21  Q    HE COULD GIVE IT TO YOU TOMORROW.

22  A    IF HE WANTS TO, HE CAN.  HE PROMISED ME HE WOULDN'T

23  COLLECT IT.  IF HE WANTS TO, HE CAN.

24  Q    HAVE YOU EVER HEARD OF SOMETHING CALLED A SATISFACTION OF

25  JUDGMENT THAT SOMEBODY CAN FILE WITH THE COURT TO ABSOLUTELY     11:21

3821



1   COMING BACK UNTIL 1:45.

2            ANYTHING FROM MGA?

3            **MR. NOLAN:**   NO.   WE'RE FINE.

4            (MORNING SESSION CONCLUDED.)

5

6

7

8

9

10

11

12

13                      CERTIFICATE

14

15   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
16   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
17   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

18

19

20   THERESA A. LANZA, RPR, CSR                    7-2-08
     OFFICIAL COURT REPORTER                        DATE

21

22

23

24

25

TUESDAY, JULY 1, 2008                    TRIAL DAY 18, MORNING SESSION

Exhibit 31
Page 415

# EXHIBIT 32 REMOVED

# PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 33

ATTORNEYS' EYES ONLY

**Isaac Larian (President / CEO)**

From:        Fred Larian
Sent:        Thursday, May 25, 2000 12:49 PM
To:          Isaac Larian
Subject:     RE: Information requested by Marty Katz regarding Fireman's Fund

Your denial does not make my allegation any less true and time will prove what the real truth is. I doubt you will swear on any of your children's lives that my allegations are not true (then again, I have been surprised before). .

When the time comes, we will go through both of our testimonies and prove who lied about what.

-----Original Message-----
From:   Isaac Larian
Sent:   Wednesday, May 24, 2000 7:15 PM
To:     Fred Larian
Subject:    RE: Information requested by Marty Katz regarding Fireman's Fund .

Your allegation stated below is false, and self serving , as usual.

The records we have ( including your testimony in the Fireman Insurance case) speak for themselves.

-----Original Message-----
From:       Fred Larian
Sent:       Wednesday, May 24, 2000 6:32 PM
To:         Isaac Larian
Subject:    Information requested by Marty Katz regarding Fireman's Fund

You have accused me of falsifying documents. You are the one who is trying to falsify things. For example, during the week of April 24, I informed you that in response to a fax from Risa of Marty Katz's office, the originals of the health insurance termination forms on Leon Michanle (copies of which had been previously provided to Fireman's Fund) were located and that legible copies were made. You instructed me to not provide those to Marty and to tell him we could not find the originals. On April 30, 2000, at my preparation meeting with Marty, I ignored your instructions and gave the copies to Marty.

1

CG 0009

Exhibit 33
Page 433

EX 13380-0001

# EXHIBIT 34

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
### CIVIL MINUTES – GENERAL

| | | |
|---|---|---|
| Case No. | CV 04-09049 SGL(RNBx) | Date: February 4, 2008 |
| Title: | CARTER BRYANT -v- MATTEL, INC. | |
| | AND CONSOLIDATED ACTIONS | |

========================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

| Jim Holmes | Theresa Lanza |
|---|---|
| Courtroom Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR CARTER
BRYANT:

Michael Page

ATTORNEYS PRESENT FOR MATTEL:

John Quinn
Jon D. Corey

ATTORNEYS PRESENT FOR MGA:

Thomas J. Nolan
Carl A. Roth
Robert J. Harrington

ATTORNEY PRESENT FOR CARLOS
GUSTAVO MACHADO GOMEZ:

ATTORNEYS PRESENT FOR THIRD-
PARTY WITNESSES

Larry W. McFarland
Scott Gizer
Ramit Mizrahi
Henry H. Gonzalez
Neal A. Potischman
John Patrick Petrullo

Alexander H. Cote

MINUTES FORM 90
CIVIL -- GEN

1

Initials of Deputy Clerk ___jh
Time: 1/45

Exhibit 34
Page 434

PROCEEDINGS:

HEARING ON EX PARTE APPLICATIONS:

1722 EX PARTE APPLICATION to Compel Deposition of Ana Cabrera, Beatriz Morales, and Maria Salazar and Mel Woods

1724 EX PARTE APPLICATION to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc.

1538 EX PARTE APPLICATION for Relief from 01-07-2008 Order re Motion Hearing

1583 EX PARTE APPLICATION to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow

1624 EX PARTE APPLICATION to Enforce Court's Orders Compelling Production of Tangible Items

1628 EX PARTE APPLICATION to Stay pending Review of Discovery Master's January 11, 2008 Order Granting MGA's and Bryant's Motion to Compel

ORDER TO SHOW CAUSE DIRECTED TO COUNSEL LARRY McFARLAND

Having considered the documents submitted in support of and opposition to the applications set forth above, and having heard oral argument, the Court issues its rulings on these matters as stated on the record and as follows:

## EX PARTE APPLICATIONS REGARDING DEPOSITIONS
## (DOCKET #1722 AND #1724) AND ORDER TO SHOW CAUSE

These applications are DENIED IN PART, subject to the following rulings:

(1)   The Court's January 7, 2008, Order was intended to grant certain specified relief from the numerical limitations on discovery requests; it was not meant to make definitive rulings on burdensomeness, relevance, privilege, or service of discovery requests.

(2)   The Phase 1 discovery deadline has expired. Any Phase 1 discovery not properly served on or before this deadline may not now be pursued. Based on the representation of counsel that process for the letters rogatory on the Hong Kong witnesses has not been initiated, these witnesses may not be deposed on Phase 1 issues. Notwithstanding this ruling, however, the Court is concerned with the allegations by Mattel in its ex parte application regarding certain actions of Larry

Exhibit 34
Page 435

McFarland, who represents certain third-party witnesses. Mattel submits that Mr. McFarland has been deliberately evading service of a notice of deposition on him and his clients – serious allegations when made by an officer of the Court against another officer of the Court. Accordingly, Mr. McFarland is **ORDERED TO SHOW CAUSE** why he and his clients should not be ordered to appear for deposition. A written response to this OSC must be filed no later than February 11, 2008. Other parties may file written replies no later than February 19, 2008. The Court will hear the matter at 10:00 a.m., February 25, 2008, in Courtroom One of the above-referenced Court.

(3)    Phase 1 depositions that have been scheduled past the discovery deadline for the convenience of the witnesses or pursuant to the stipulation of the parties and/or witnesses may proceed as scheduled.

(4)    All discovery related to Phase 2, other than certain individual depositions that may be related to both Phase 1 and Phase 2, is STAYED until further order of the Court.

(5)    As previously ordered and reaffirmed by this Court, all discovery matters shall be presented in the first instance to the Discovery Master. The fact that the Discovery Master's ruling might impact upon the Court's scheduling order does not relieve the parties of following this procedure. For instance, motions to compel, motions to quash, or motions challenging service as to existing discovery requests shall be brought before the Discovery Master. So, too, must objections based on burdensomeness, relevancy, or privilege. In general, and on the matters touched upon herein, the Court expresses no opinion as to these issues, and instead leaves those issues to the Discovery Master to decide in the first instance.

(6)    To the extent that certain challenged depositions are within the scope of the Court's January 7, 2008, Order, and are related to Phase 1 (or to the extent that a given deposition (other than a Rule 30(b)(6) deposition) is related to both Phase 1 and Phase 2), said deposition may proceed subject to the challenges set forth in the previous paragraph. To the extent that the depositions are related to Phase 2, they are STAYED, as set forth above, notwithstanding the January 7, 2008, Order.

(7)    The parties' arguments require the Court to resolve an internal inconsistency in the Court's January 7, 2008, Order. The Court's Order was meant to grant all parts of Mattel's Motion for Leave to Take Additional Discovery (docket #1134) except the relief sought as to the deposition of Carter Bryant. The Court amends its 01.07.08 Order as follows:

Delete: <Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO

MINUTES FORM 90
CIVIL – GEN                                   3

Initials of Deputy Clerk ___jh_____
Time: 1/45

Exhibit 34
Page 436

claims (set forth in the moving papers at 13).>

Replace with: <Specifically, the Court grants Mattel's request to take
the individual depositions relating to the Bratz claims (set forth in the
moving papers at 9-11), relating to the trade secret and RICO claims
(set forth in the moving papers at 13), and relating to document
preservation (set forth in the moving papers at 14 (Joe Tiongco and
Daphne Gronich)).>

(8)     The Court's January 7, 2008, Order granted leave to take additional discovery over
and above the previously allocated 24 depositions per side. Nevertheless, as to all
other depositions, how to "count" the previously allocated depositions is left to the
discretion of the Discovery Master.

(9)     At the hearing, counsel for Christensen, Glaser requested that the Court clarify that
its January 7, 2008, ruling granted leave to depose it on only one issue. That is not
the case, and the request is DENIED. Mattel has been granted relief from the
numerical limitations that previously restricted its ability to depose those individuals
and entities addressed by the Court's January 7, 2008, Order, including its ability to
depose Christensen, Glaser. Unless otherwise restricted by the Discovery Master
upon proper presentation of the issue to him, Mattel may depose Christensen,
Glaser on any relevant, non-privileged matter.

### MACHADO GOMEZ'S EX PARTE APPLICATION RE
### JANUARY 7, 2008, ORDER (DOCKET # 1504)

This application is GRANTED. As noted above, Phase 2 discovery is STAYED until further
order of the Court. The Court will address Phase 2 discovery, motions, pretrial, and trial dates
after the conclusion of Phase 1 of the trial.

### MATTEL'S EX PARTE APPLICATION RE MOTION TO COMPEL PRODUCTION OF
### ELECTRONIC MEDIA FROM THIRD PARTIES (DOCKET #1538)

This application is DENIED. This matter must be addressed in the first instance by the
Discovery Master.

### MATTEL'S EX PARTE APPLICATION TO ENFORCE COURT'S ORDERS
### COMPELLING PRODUCTION OF TANGIBLE ITEMS (#1624)

This application is GRANTED IN PART. Counsel for MGA shall employ its best efforts to
arrange for shipment of those tangible things located in the Peoples' Republic of China ("PRC") to
Hong Kong Special Administrative Region ("Hong Kong") for examination in conjunction with those
tangible things already located in Hong Kong. Otherwise, counsel for MGA shall cooperate in the

Exhibit 34
Page 437

arrangements for inspection in both Hong Kong and the PRC.   Mattel's request for costs is denied without prejudice.

Counsel are encouraged to meet and confer with the intent of reaching a stipulation regarding the supplementation of expert reports.  Absent such stipulation, at the appropriate time, the Court will entertain an ex parte application from any party regarding this issue.

### MATTEL'S EX PARTE APPLICATION TO STAY PENDING REVIEW OF DISCOVERY MASTER'S JANUARY 11, 2008 ORDER (DOCKET # 1628)

This application is GRANTED IN PART.  The Court sets the motion for hearing on February 11, 2008.  Opposition shall be filed no later than February 6, 2008; any reply shall be filed no later than February 8, 2008.  The Discovery Master's January 11, 2008, Order is stayed until the issuance of the Court's minute order regarding the February 11, 2008, hearing.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                                    5

Initials of Deputy Clerk ___jh_____
Time: 1/45

Exhibit 34
Page 438

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)   **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**   Minute Order of February 4, 2008

| |
|---|
| Atty Sttlmnt Officer Panel Coordinator |
| BAP (Bankruptcy Appellate Panel) |
| Beck, Michael J (Clerk, MDL Panel) |
| BOP (Bureau of Prisons) |
| CA St Pub Defender (Calif. State PD) |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| Case Asgmt Admin (Case Assignment Administrator) |
| Catterson, Cathy (9th Circuit Court of Appeal) |
| Chief Deputy Admin |
| Chief Deputy Ops |
| Clerk of Court |
| Death Penalty H/C (Law Clerks) |
| Dep In Chg E Div |
| Dep In Chg So Div |
| Federal Public Defender |
| Fiscal Section |
| Intake Section, Criminal LA |
| Intake Section, Criminal SA |
| Intake Supervisor, Civil |
| PIA Clerk - Los Angeles (PIALA) |
| PIA Clerk - Riverside (PIAED) |
| PIA Clerk - Santa Ana (PIASA) |
| PSA - Los Angeles (PSALA) |
| PSA - Riverside (PSAED) |
| PSA - Santa Ana (PSASA) |
| Schnack, Randall (CJA Supervising Attorney) |
| Statistics Clerk |

| |
|---|
| US Attorneys Office - Civil Division -L.A. |
| US Attorneys Office - Civil Division - S.A. |
| US Attorneys Office - Criminal Division -L.A. |
| US Attorneys Office - Criminal Division -S.A. |
| US Bankruptcy Court |
| US Marshal Service - Los Angeles (USMLA) |
| US Marshal Service -  Riverside (USMED) |
| US Marshal Service -Santa Ana (USMSA) |
| US Probation Office (USPO) |
| US Trustee's Office |
| Warden, San Quentin State Prison, CA |

✓ ***ADD NEW NOTICE PARTY***
*(if sending by fax, mailing address must also be provided)*

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*: P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

***JUDGE / MAGISTRATE JUDGE (list below):***

**Initials of Deputy Clerk** jh

Exhibit 34
Page 439

# NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)   **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**   Minute Order of February 4, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

✓ ***ADD NEW NOTICE PARTY***
(if sending by fax, mailing address must also be provided)

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address (include suite or floor): Two Embarcadero Center, Suite 1500, San Francisco, CA 94111

*E-mail:

*Fax No.:

* For CIVIL cases only

| ***JUDGE / MAGISTRATE JUDGE (list below):*** |
|---|
| |
| |
| |
| |

Initials of Deputy Clerk  jh

Exhibit 34
Page 440

# EXHIBIT 35

CALENDARED

RECEIVED

JAN 0 8 2009

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                    Date: January 6, 2009

Title:    MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=====================================================================
PRESENT: HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

      James Holmes                          None Present
      Courtroom Deputy Clerk                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                          None Present

PROCEEDINGS:    ORDER APPOINTING DISCOVERY MASTER

      As in Phase 1 of this case, the Court intends to appoint a Discovery Master to govern any discovery disputes that might arise in Phase 2 of this case. The appointment of the Discovery Master was made at the joint request of the parties in this case. See Stipulation for Appointment of a Discovery Master and Order, December 6, 2006.

      Pursuant to Federal Rule of Civil Procedure 53(a)(1)(C), the Court continues to believe that a Discovery Master, as opposed to the assigned Magistrate Judge, is necessary to address what MGA has aptly described to the Court as "the massive administrative burdens in time and labor necessary to deal with the enormous complexities, both legal and practical, of the issues in Phase 2" and the "sheer volume of complex civil discovery disputes likely to arise in Phase 2." Based on the Court's experience in this case, there is no question that a Discovery Master is needed to "effectively and timely" address the anticipated discovery matters in this case.

      The Court previously submitted to all counsel of record the names of eight attorneys for consideration by the parties and invited counsel to submit, in camera, any objections to those attorneys to serve as a Discovery Master (or as a Special Master to oversee the implementation of the permanent injunction, if needed). The Court has carefully considered the objections submitted. Two of the individuals named were not the subject of an objection by any party. Of those two, the Court selects Robert C. O'Brien of Arent, Fox to serve as Discovery Master for Phase 2 of this

MINUTES FORM 90                                      Initials of Deputy Clerk: jh
CIVIL -- GEN                          1

01-06

Exhibit 35
Page 441

case.

The Discovery Master will serve under the terms and conditions of the Stipulation and Order
dated December 6, 2006, the terms and conditions of which were previously agreed to by the
parties. The stay on discovery for Phase 2 of this case is hereby VACATED.

Notwithstanding the parties' stated lack of objection to the appointment of Mr. O'Brien as
Discovery Master, the Discovery Master is directed to promptly disclose to counsel for all parties
any potential grounds for conflict of interest or disqualification, and the parties shall, within three
days of receipt of said disclosure, submit any objection to the Court in camera.   A failure to object
will be deemed by the Court as a waiver of any objections and consent to Mr. O'Brien to serve as
Discovery Master.  The Discovery Master is further directed to contact counsel for all parties and
resolve any and all outstanding discovery motions as expeditiously as possible.

IT IS SO ORDERED.

MINUTES FORM 90                                        Initials of Deputy Clerk: jh
CIVIL -- GEN                            2

Exhibit 35
Page 442

**EXHIBIT 36 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 37

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Ann Jones, Paralegal (404) 881-7563

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

CT Corporation System
2295 Gateway Oaks Drive
Ste 185
Sacramento CA 95833

06-7090317861
10/30/2006 16:46

FILED
CALIFORNIA
SECRETARY OF STATE
SOS

102145102002   UCC 1 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| MGA Entertainment (Mexico), Inc. | | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16380 Roscoe Blvd., Suite 200 | Van Nuys | CA | 91406 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| 20-0998523 | | Corporation | California | CA C2643976 | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Wachovia Bank, National Association, as Agent | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| One South Broad Street, PA 4830 | Philadelphia | PA | 19107 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All of the Debtor's right, title and interest in the following, whether now owned or hereafter acquired: (a) subject to the limitation set forth in Exhibit A attached hereto, equity interests in MGAE de Mexico SRL de CV, (b) related assets and (c) proceeds thereof, all as more particularly described on Exhibit A attached hereto.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]   [optional] | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA
File with California Secretary of State

MN16768845-1

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

Gardner 19513/315438

EXHIBIT 1
PAGE 9

Exhibit 37
Page 449

## Exhibit A

**Debtor:**
MGA Entertainment (Mexico), Inc.
16380 Roscoe Blvd., Suite 200
Van Nuys, California 91406

**Secured Party:**
Wachovia Bank, National Association, as Agent
One South Broad Street, PA 4830
Philadelphia, Pennsylvania 19107

All of Debtor's right, title and interest in, to and under the following (collectively, the "Collateral"):

(a)     all Equity Interests now or hereafter acquired or held by Debtor in the issuer (the "Issuer") described in Schedule 1 attached hereto;

(b)     all payments due or to become due to Debtor in respect of any of the foregoing;

(d)     all of Debtor's claims, rights, powers, privileges, authority, puts, calls, options, security interests, liens and remedies, if any, in respect of any of the foregoing;

(e)     all of Debtor's rights to exercise and enforce any and every right, power, remedy, authority, option and privilege of Debtor relating to any of the foregoing including, without limitation, any power to (i) terminate, cancel or modify any agreement, (ii) execute any instruments and to take any and all other action on behalf of and in the name of Debtor in respect of any of the foregoing and the applicable Issuer thereof, (iii) exercise voting rights or make determinations, (iv) exercise any election (including, but not limited to, election of remedies), (v) exercise any "put", right of first offer or first refusal, or other option, (vi) exercise any right of redemption or repurchase, (vii) give or receive any notice, consent, amendment, waiver or approval, (viii) demand, receive, enforce, collect or receipt for any of the foregoing, (ix) enforce or execute any checks, or other instruments or orders, and (x) file any claims and to take any action in connection with any of the foregoing;

(f)     all certificates and instruments representing or evidencing any of the foregoing;

(g)     all other rights, titles, interests, powers, privileges and preferences pertaining to any of the foregoing; and

(h)     all Proceeds of any of the foregoing.

Notwithstanding the foregoing, Debtor has only granted a security interest in (x) 65% (or such greater percentage that, due to a change in an applicable law after October 27, 2005, (A) could not reasonably be expected to cause the undistributed earnings of the Issuer as determined for United States federal income tax purposes to be treated as a deemed dividend to the Issuer's United States parent and (B) could not reasonably be expected to cause any material adverse tax consequences) of the issued and outstanding Equity Interest of the Issuer entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) and (y) 100% of the issued and outstanding Equity Interest of the Issuer not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)).

As used herein:

"Equity Interest" means, with respect to any Person, any share of capital stock of (or other ownership interests in) such Person, any warrant, option or other right for the purchase or other

A-1

EXHIBIT 1
PAGE 4

Exhibit 37
Page 450

acquisition from such Person of any share of capital stock of (or other ownership interests in) such Person, any security convertible into or exchangeable for any share of capital stock of (or other ownership interests in) such Person or warrant, right or option for the purchase or other acquisition from such Person of such shares (or such other ownership interests), and any other ownership interest in such Person (including, without limitation, partnership, member or trust interests therein), whether voting or nonvoting, and whether or not such share, warrant, option, right or other interest is authorized or otherwise existing on any date of determination.

"Person" means an individual, corporation, partnership, limited liability company, association, trust or unincorporated organization, or a government or any agency or political subdivision thereof.

"Proceeds" means all proceeds (including proceeds of proceeds) of any of the Collateral including all: (a) rights, benefits, distributions, premiums, profits, dividends, interest, cash, instruments, documents of title, accounts, contract rights, inventory, equipment, general intangibles, payment intangibles, deposit accounts, chattel paper, and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for, or as a replacement of or a substitution for, any of the Collateral, or proceeds thereof (including any cash, Equity Interests, or other instruments issued after any recapitalization, readjustment, reclassification, merger or consolidation with respect to the Issuers and any security entitlements, as defined in Section 8-102(a)(17) of the UCC, with respect thereto); (b) "proceeds," as such term is defined in Section 9-102(a)(64) of the UCC; (c) proceeds of any insurance, indemnity, warranty, or guaranty (including guaranties of delivery) payable from time to time with respect to any of the Collateral, or proceeds thereof; and (d) payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral, or proceeds thereof.

A - 2

EXHIBIT 1
PAGE 7

Exhibit 37
Page 451

## SCHEDULE 1

### MGA Entertainment (Mexico), Inc.
### Pledged Equity Interests

| Issuer | Jurisdiction of Formation | Class of Equity Interest | Certificate Number (if any) | Percentage of Ownership |
|---|---|---|---|---|
| MGAE de Mexico SRL de CV | Mexico | Shares Parte Social | N/A | 65% |

EXHIBIT ____1____
PAGE ____9____

Exhibit 37
Page 452

**FILING OFFICER STATEMENT**

**INTERNAL USE ONLY**

1. Identification of the Record to which this **FILING OFFICER STATEMENT** relates.

   1a. INITIAL FINANCING STATEMENT #: 067090317861

   1b. RECORD TO WHICH THIS STATEMENT RELATES:

**DOCUMENT NUMBER:** 10268190001
**FILING NUMBER:** 0670908369
**FILE DATE/TIME:** 11/3/2006 1:34:00 PM

THE ABOVE SPACE IS FOR THE CA FILING OFFICE USE ONLY

2. Describe the inaccuracy or mistake on the part of the file office:

☒ Debtor   ☐ Secured Party
☐ Name and Address not indexed.
☒ Name Indexed Incorrectly
☐ Address Indexed Incorrectly

☐ File Date entered incorrectly
☐ Wrong Action type entered
☐ Wrong Filing Type entered
☐ Filed in Error
☐ Other

3. Describe filing office administrative action taken as a result of inaccuracy or mistake (Including date of each action).

☐ Added Name:
☐ Address:
☒ Corrected Name from: MGA EMTERTAINMENT (MEXICO), INC.
☒ To: MGA ENTERTAINMENT (MEXICO), INC.
☐ Corrected Address from:
☐ To:
☐ Corrected File Date from    to
☐ Re-entered the UCC3    as a
☐ Changed the Filing Type from    to
☐ Document Deleted
☐ Other:

4. Additional Explanation (if applicable):

11/03/2006 13:34               1

EXHIBIT 1
PAGE 9

Exhibit 37
Page 453

**UCC FINANCING STATEMENT AMENDMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Ann Jones, Paralegal (404) 881-7563

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

UCC Direct Services
1232 Q St
Sacramento CA 95814
Account 10010537
CDD

**07-71137422**
**05/14/2007 11:35**

**FILED**
CALIFORNIA
SOS        SECRETARY OF STATE

12848850803   UCC 3 FS:1M9

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 06-7090317861 filed 10/30/06 | |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor  or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. **CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |

7. **CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☒ restated collateral description, or describe collateral ☐ assigned.

All of the Debtor's right, title and interest in the following, whether now owned or hereafter acquired: (a) subject to the limitation set forth in Exhibit A attached hereto, equity interests in MGAE de Mexico SRL de CV, (b) related assets and (c) proceeds thereof, all as more particularly described on Exhibit A attached hereto.

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Wachovia Bank, National Association, as Agent | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
File with California Secretary of State; Debtor Name: MGA Entertainment (Mexico), Inc.   6926488 SO
                                                                                        JBM

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)
Gardner 19513/315438

EXHIBIT 1
PAGE 10

Exhibit 37
Page 454

## Exhibit A

**Debtor:**
MGA Entertainment (Mexico), Inc.
16380 Roscoe Blvd., Suite 200
Van Nuys, California 91406

**Secured Party:**
Wachovia Bank, National Association, as Agent
One South Broad Street, PA 4830
Philadelphia, Pennsylvania 19107

All of Debtor's right, title and interest in, to and under the following (collectively, the "Collateral"):

(a)     all Equity Interests now or hereafter acquired or held by Debtor in issuer (the "Issuer") described in Schedule 1 attached hereto;

(b)     all payments due or to become due to Debtor in respect of any of the foregoing;

(c)     all of Debtor's claims, rights, powers, privileges, authority, puts, calls, options, security interests, liens and remedies, if any, in respect of any of the foregoing;

(d)     all of Debtor's rights to exercise and enforce any and every right, power, remedy, authority, option and privilege of Debtor relating to any of the foregoing including, without limitation, any power to (i) terminate, cancel or modify any agreement, (ii) execute any instruments and to take any and all other action on behalf of and in the name of Debtor in respect of any of the foregoing and the applicable Issuer thereof, (iii) exercise voting rights or make determinations, (iv) exercise any election (including, but not limited to, election of remedies), (v) exercise any "put", right of first offer or first refusal, or other option, (vi) exercise any right of redemption or repurchase, (vii) give or receive any notice, consent, amendment, waiver or approval, (viii) demand, receive, enforce, collect or receipt for any of the foregoing, (ix) enforce or execute any checks, or other instruments or orders, and (x) file any claims and to take any action in connection with any of the foregoing;

(e)     all certificates and instruments representing or evidencing any of the foregoing;

(f)     all other rights, titles, interests, powers, privileges and preferences pertaining to any of the foregoing; and

(g)     all Proceeds of any of the foregoing.

Notwithstanding the foregoing, (x) in no event shall the Debtor be required to subject to the Lien of the Pledge Agreement or any other loan document more than 65% (or such greater percentage that, due to a change in an Applicable Law after October 27, 2006, (A) could not reasonably be expected to cause the undistributed earnings of such Foreign Subsidiary as determined for United States federal income tax purposes to be treated as a deemed dividend to such Foreign Subsidiary's United States parent and (B) could not reasonably be expected to cause any material adverse tax consequences) of the issued and outstanding Equity Interest of a Foreign Subsidiary entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) determined on a collective basis, but (y) the Debtor shall be required to subject to the Lien of the Pledge Agreement 100% of the issued and outstanding Equity Interest of a Foreign Subsidiary not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)).

EXHIBIT 1
PAGE 11

Exhibit 37
Page 455

As used herein:

"Equity Interest" means, with respect to any Person, any share of capital stock of (or other ownership interests in) such Person, any warrant, option or other right for the purchase or other acquisition from such Person of any share of capital stock of (or other ownership interests in) such Person, any security convertible into or exchangeable for any share of capital stock of (or other ownership interests in) such Person or warrant, right or option for the purchase or other acquisition from such Person of such shares (or other ownership interests), and any other ownership interest in such Person (including, without limitation, partnership, member or trust interests therein), whether voting or nonvoting, and whether or not such share, warrant, option, right or other interest is authorized or otherwise existing on any date of determination.

"Person" means an individual, corporation, partnership, limited liability company, association, trust or unincorporated organization, or a government or any agency or political subdivision thereof.

"Proceeds" means all proceeds (including proceeds of proceeds) of any of the Collateral including all: (a) rights, benefits, distributions, premiums, profits, dividends, interest, cash, instruments, documents of title, accounts, contract rights, inventory, equipment, general intangibles, payment intangibles, deposit accounts, chattel paper, and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for, or as a replacement of or a substitution for, any of the Collateral, or proceeds thereof (including any cash, Equity Interests, or other instruments issued after any recapitalization, readjustment, reclassification, merger or consolidation with respect to the Issuers and any security entitlements, as defined in Section 8-102(a)(17) of the UCC, with respect thereto); (b) "proceeds," as such term is defined in Section 9-102(a)(64) of the UCC; (c) proceeds of any insurance, indemnity, warranty, or guaranty (including guaranties of delivery) payable from time to time with respect to any of the Collateral, or proceeds thereof; and (d) payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral, or proceeds thereof.

EXHIBIT 1
PAGE 12

Exhibit 37
Page 456

## SCHEDULE 1

### MGA Entertainment (Mexico), Inc.
#### Pledged Equity Interests

| Issuer | Jurisdiction of Formation | Class of Equity Interest | Certificate Number (if any) | Percentage of Ownership |
|---|---|---|---|---|
| MGAE de Mexico SRL de CV | Mexico | Shares Parte Social | N/A | 100% |

LEGAL02/30237046v2

EXHIBIT ___1___
PAGE ___13___

Exhibit 37
Page 457

████████████████
████████████████
████████████████
████████████████

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

P6-00000-459-7

**CL@S**
INFORMATION SERVICES
WWW.CLASINFO.COM
2070 HURLEY WAY, SUITE 150
SACRAMENTO, CA 95825
TEL-916.444.3939 / 888.712.5135
FAX-916.444.2100

general number 1036 AM/RW

**08-71714107**
**09/09/2008 16:03**

**FILED**
CALIFORNIA
SECRETARY OF STATE
SOS

18335690005 UCC 3 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # **06-7090317661** | 10/30/06 | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the ☐ REAL ESTATE RECORDS. |
|---|---|---|

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ **ASSIGNMENT (full):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

| ☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable). |
|---|---|---|

**6. CURRENT RECORD INFORMATION:**

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**7. CHANGED (NEW) OR ADDED INFORMATION**

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | **OMNI 808 Investors LLC, as Agent** | | | |
| | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS **9420 Wilshire Blvd., Suite 400** | CITY **Beverly Hills** | STATE **CA** | POSTAL CODE **90212** | COUNTRY **USA** |
|---|---|---|---|---|

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION **Limited Liability Company** | 7f. JURISDICTION OF ORGANIZATION **California** | 7g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted, or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | **Wachovia Bank, National Association, as Agent** | | | |
| | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 10. OPTIONAL FILER REFERENCE DATA **Debtor: MGA Entertainment (Mexico), Inc.** | CA-SOS |
|---|---|

FILING OFFICE COPY – NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC 3) (REV. 07/29/98)

AZ761603 10001770 0080306275

**EXHIBIT 1**
**PAGE 14**

Exhibit 37
Page 458

**EXHIBIT 38 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 39 REMOVED

# PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 40

Omninet Capital

## OMNINET™

| Home | Private Equity | Real Estate | Venture Capital | About Us |

### Contact

▸ "Service is never an accident, it is the result of high intentions, sincere effort, intelligent direction, & skillful execution"
   –Robert Huebner

#### About Us

**Omninet Capital**
9420 Wilshire Boulevard, 4th Floor
Beverly Hills, CA 90212

Tel: 310.300.4100
Fax: 310.300.4101

Email: info@omninet.com

MapQuest Link

**Directions**
We are located at 9420 Wilshire Blvd. in the Rolex Building, which is located between Beverly Drive and Canon Drive in Beverly Hills, California.

There is a free private parking lot available on the Canon Drive side of our building on the south side of Wilshire Blvd. We are located on the 4th floor of the Rolex Building. If you have any questions, please call 310-300-4100.

▸ About Us
▸ Team
▸ News
● Contact
▸ Site Map

Site Map | Contact | Copyright (c) 2007 OMNINET Capital

http://www.omninet.com/pe2.php?page=about_us&sub=contact_us

12/28/2008

EXHIBIT 8
PAGE 27

Exhibit 40
Page 485

12/28/2008

Omninet Capital

EXHIBIT _8_
PAGE _20_

Exhibit 40
Page 486

http://www.omninet.com/pe2.php?page=about_us&sub=contact_us

# EXHIBIT 41

# OMNINET™

| Home | Private Equity | Real Estate | Venture Capital | About Us |

## Team

> "Courage is what it takes to stand up and speak, courage is also what it takes to sit down and listen"
> — Sir Winston Churchill

- About Us
- Team
- News
- Contact
- Site Map

## About Us

**Neil Kadisha - Managing Partner**
Neil Kadisha is primarily responsible for providing management expertise and strategic planning for Omninet companies. He is also involved in seeking synergistic investment opportunities and offering industry insights for the evaluation of potential investments. Prior to Omninet, Neil founded and served as the CEO of numerous high-tech manufacturing companies. For over 15 years, Neil served on the Board of Directors of Qualcomm. He also serves on the Boards of various privately held companies. Neil's academic background is in Industrial Management and Economics.

**Benjamin Nazarian - Managing Partner**
Benjamin Nazarian is primarily responsible for Omninet's overall investment strategy, with an operational emphasis on the private equity portfolio. Benjamin currently serves as CEO and member of the Board of Directors of Stadco, a supplier of high precision parts and components for the defense and aerospace industry. He also serves on the Board of Directors of Altra, Paramount Scaffold, Plymouth Health, PWP Industries, and Texollini. Benjamin serves on the Board of Councilors of the Law Center at the University of Southern California and is a member of the Young Presidents Organization (YPO). He received his Juris Doctorate from the Law Center at the University of Southern California and holds a Bachelor of Science degree in Accounting, Cum Laude, from the University of Southern California.

**Parviz Nazarian - Managing Partner**
Parviz Nazarian offers his technical and industry vision for the evaluation of potential investments. He provides strategic guidance with the operation and management of Omninet's portfolio. Prior to Omninet, Parviz spent his career managing numerous companies in various industries including construction equipment, aerospace, and plastic equipment. Parviz is a member of the International Board of Governors of the Technion Institute of Technology and Tel Aviv University. Parviz served as a member of the Board of Directors of Qualcomm until 1994. He currently serves on the Board of Directors of privately-held Plymouth Health, PWP Industries and Stadco.

**Michael Daniel - Senior Vice President & General Counsel**
Michael Daniel is responsible for the evaluation and negotiation of investment opportunities, including all legal matters related to potential investments. Michael focuses his efforts on the acquisition and development of commercial and residential real estate projects for Omninet. Before joining Omninet, Michael practiced law with the firms of Brobeck, Phleger & Harrison and Buchalter, Nemer, Fields & Younger, specializing in finance, mergers & acquisitions, real estate transactions and general corporate representation of high-growth companies. Michael received his Jurist Doctorate degree from the University of California, Berkeley, Boalt Hall School of Law. Michael holds a Bachelor of Arts degree in Economics, Magna Cum Laude, from the University of California, Los Angeles.

**Kevin P. Tanna - Vice President of Development**
Kevin is responsible for the origination and development of real estate investments throughout California, Nevada and Arizona. His efforts focus on the acquisition, design, and construction of commercial and multifamily residential projects and his diverse experience includes work in a real estate law firm primarily providing transactional support for the acquisition, construction, management, sales and leasing of commercial properties. Kevin is the founder of several entrepreneurial ventures, including an international trade company, and he has spent nearly a decade working alongside building contractors and developers. Kevin earned his Jurist Doctorate degree from Hofstra University, School of Law and a Bachelor of Science degree in Finance, Cum Laude, from the Hawaii Pacific University.

**Andrea Costantini - Senior Associate**

EXHIBIT 9
PAGE 20

Omninet Capital

Andrea is responsible for assessing investment opportunities and increasing the value of Omninet's portfolio companies. Andrea focuses on the strategic and financial assessment of new investments and supports portfolio companies in achieving distinctive growth and performance through operational improvements and strategic planning. Before joining Omninet, Andrea was an Engagement Manager at McKinsey and Company where he spent 5 years assisting Fortune 500 companies as strategic advisor in the media, tech and real estate industries across the U.S., Europe and Asia. Andrea holds a Master in Business Administration from the University of California, Los Angeles and a Master of Science in Aerospace Engineering Summa Cum Laude from Politecnico di Torino, Italy.

**Daphna Salimpour - Head of Design Development**
Daphna is responsible for the design and project management of Omninet's real estate developments.  Before joining Omninet, Daphna was the owner of a design firm specializing in the design of residential projects and medical offices in Los Angeles. She was also an architect at Levin & Associates, a firm specializing in the preservation and rehabilitation of historical landmarks. Daphna has a Bachelor of Architecture degree from the University of Southern California. She also attended the Syracuse Architecture Program in Florence, Italy.

**Dave Johnson - Construction Manager**
David is responsible for advising Omninet on building logistics, feasibility, engineering and permitting issues for various construction projects. He has over 40 years of experience in the construction industry including work as a project manager, field supervisor, superintendent and corporate consultant for commercial as well as estate home builders. David relocated to Los Angeles in 2000 from Seattle, WA where he was co-owner of a successful construction company. He has a Bachelor of Science in Construction Management from the University of Washington.

**Michael Halimi - Acquisitions**
Michael is responsible for sourcing opportunities to acquire commercial real estate and debt instruments. His responsibilities include interfacing with brokers, financial institutions and real estate investors. Prior to joining Omninet, Michael worked in commercial and residential real estate finance and has assisted and negotiated deals on behalf of investors for deal syndications. Michael has a bachelor degree in Law and Society from the University of California, Santa Barbara.

EXHIBIT 9
PAGE 90

**EXHIBIT 42 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**