**EXHIBIT 76 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 77 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 77

# EXHIBIT 78

1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3        EASTERN DIVISION

4        - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6        - - -

CERTIFIED
COPY

7    MATTEL, INC.,                    )
                                      )
8                    Plaintiff,       )
                                      )
9            vs.                      )    No. CV 04-09049
                                      )
10   MGA ENTERTAINMENT, INC., ET. AL.,)
                                      )
11                   Defendants.      )
     _____)    HEARING

12

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16        Riverside, California

17        Tuesday, December 30, 2008

18        10:04 A.M.

19

20

21

22

23        THERESA A. LANZA, RPR, CSR
          Federal Official Court Reporter
24        3470 12th Street, Rm. 134
          Riverside, California  92501
25        951-274-0844
          WWW.THERESALANZA.COM

Exhibit 78
Page 1209

Tuesday, December 30, 2008                        Mattel vs. MGA

4

```
 1   RIVERSIDE, CALIFORNIA; TUESDAY, DECEMBER 30, 2008; 10:04 A.M.

 2                              -oOo-

 3           THE CLERK:  Calling calendar item one, Mattel versus

 4   MGA Entertainment, Inc., CV 04-09049-SGL.

 5           May we have counsel please come forward and state      00:14

 6   your appearances for the record.

 7           MR. QUINN:  John Quinn, Mike Zeller,

 8   Dylan Proctor for Mattel.

 9           MR. NOLAN:  Tom Nolan, Jason Russell,

10   Jennifer del Castillo on behalf of Isaac Larian.              00:17

11           THE COURT:  We're on calendar this morning for MGA's

12   motion for this Court to issue a stay pending appeal.

13           The Court has received the filings in this matter and

14   has reviewed them.  There are a few matters, and I'll rule on

15   them just preliminary; I think I've basically ruled on them;  00:18

16   some are moot.

17           There is before the Court Mattel's ex-parte

18   application to redesignate MGA's compendium of third-party

19   declarations.  I'm going to deny that as moot pursuant to the

20   stipulation that was reached out and communicated to the Court. 00:18

21           There is Mattel's ex-parte application regarding a

22   briefing schedule regarding the declaration.  That is also

23   denied as moot.  The Court has received and reviewed the papers

24   that were submitted, both in support of and in opposition to

25   the particular declarations, and the Court will rule on the    00:19
```

**Exhibit 78**
**Page 1210**

56

1    2001 through 2007.

2           He points to $3 million of profits.  It's true, but

3    profit is different than revenues.  And the reason profits

4    suffered, respectfully, is because of extraordinary costs like

5    this case.  What we're talking about here, and the evidence is       01:37

6    uncontroverted, MGA's primary, or in Mr. Quinn's showing, only

7    profitable line, if this Court's orders are not stayed, will be

8    enjoined.  MGA's revenue from its only, according to Mr. Quinn,

9    profitable line will not be received by the company.  Mr. Wing

10   says it's at least 44 percent of the revenues.  MGA will lose       01:38

11   $150 million in sunk costs.  There is no question that this

12   will cause grave, potentially catastrophic, harm; and they

13   haven't even tried to rebut that.

14          Now, I understand he wants to get to the receiver

15   argument, which we were forced to respond to in 12 hours.  And      01:38

16   we can do that on Monday.  But for purposes of today, there is

17   absolutely no showing, none whatsoever, from Mattel that this

18   will not kill MGA.  It will kill MGA.  That is the record

19   before trial.  That is the record before you.

20          **THE COURT:**  Very well.                                    01:38

21          I think both prudence and equity require the Court to

22   modify its previous order, extending the stay to February 11th.

23          Having said that, I find simply no grounds to grant

24   the motion as phrased, a motion for stay pending appeal, for

25   the reasons that I stated earlier.  There is simply no way of       01:39

Tuesday, December 30, 2008                          Mattel vs. MGA

Exhibit 78
Page 1211

1   measuring the likelihood of success of an appeal of a decision

2   that has yet to be made.  And, likewise, the Court does have

3   serious questions about the irreparable harm.

4          In suggesting that I need to modify my previous stay,

5   I am not making a finding of irreparable harm.  And it's not on

6   that basis.  Rather, it is on the basis that I believe there is

7   a serious concern that the Court has that the status quo would

8   not be preserved on February 11th if the Court did not take

9   appropriate steps to modify its previously-entered stay.

10          So it is my intention to do so.

11          I happen to believe that this is inextricably

12   intertwined, however, with issues raised by Mattel in terms of

13   the finances of MGA, which at this point, quite frankly, are a

14   mystery to the Court.  And that mystery was compounded in part

15   by what I read on appeal, what I've heard from counsel, what

16   I've seen in other papers.  I just don't know what exactly is

17   going on with all of that, and I want to explore that at

18   Monday's hearing on that motion.

19          What I intend to do, following Monday's hearing, is

20   issue a written order which will set forth how '09 will

21   proceed, pending, of course, any decisions that the Court makes

22   on February 11th.  Because if the Court were to rule in MGA's

23   favor on February 11th, that would, if not eviscerate,

24   certainly unravel those decisions made after Phase 1-C. But I

25   do accept the evidence that a degree of certainty needs to be

01:39
01:39
01:40
01:40
01:40

1    maintained in order to preserve the status quo; and the Court

2    will be issuing an order to that effect following the hearing

3    on Monday.

4         That is the most that I can give at this point.  I

5    trust that there is probably a lot of work for MGA to do with          01:41

6    its suppliers and buyers to make sure that we can go forward.

7    The Court would certainly provide leave to both parties to

8    submit language that the Court might wish to consider to

9    address the concern, and only the concern, that the Court has

10   identified, how to preserve the 2009 buying season, purchasing        01:41

11   and buying season, for Bratz.

12        I think that is all the evidence supports.  I think

13   that's all the relief that is warranted at this stage, at this

14   posture of the litigation, and much remains to be seen in terms

15   of how things fold out on February 11th.  The more immediate          01:41

16   concern of the Court, though, is preserving the status quo; and

17   we'll take that up and the financial questions that the Court

18   has on Monday.

19        Are there any questions concerning where the Court is

20   at at this point?                                                       01:42

21        Mr. Nolan?

22        MR. NOLAN:  No, your Honor.   Thank you.

23        THE COURT:  Mr. Quinn?

24        MR. QUINN:  No, your Honor.

25        THE COURT:  Very well.                                            01:42

Tuesday, December 30, 2008                              Mattel vs. MGA

Exhibit 78
Page 1213

1          Good day.  And Happy New Year.

2

3

4                              CERTIFICATE

5

6    I hereby certify that pursuant to section 753, title 28, United
     States Code, the foregoing is a true and correct transcript of
7    the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
8    conformance with the regulations of the Judicial Conference of
     the United States.

9

10   _____          _____1-7-09_____
     THERESA A. LANZA, CSR, RPR                        Date
11   Federal Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 78
Page 1214

Tuesday, December 30, 2008                          Mattel vs. MGA

# EXHIBIT 79

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                    - - -

4     **HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING**

5                    - - -

6   MATTEL, INC.,                    :   PAGES 7652 - 7873
                                     :
7              PLAINTIFF,            :
                                     :
8       VS.                         :   NO. ED CV04-09049-SGL
                                     :   [CONSOLIDATED WITH
9   MGA ENTERTAINMENT, INC.,         :   CV04-9059 & CV05-2727]
    ET AL.,                          :
10                                   :
               DEFENDANTS.           :
11

12

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16             RIVERSIDE, CALIFORNIA

17          FRIDAY, AUGUST 15, 2008

18            JURY TRIAL - DAY 36

19             AFTERNOON SESSION

20

21

22                          MARK SCHWEITZER, CSR, RPR, CRR
                            OFFICIAL COURT REPORTER
23                          UNITED STATES DISTRICT COURT
                            181-H ROYBAL FEDERAL BUILDING
24                          255 EAST TEMPLE STREET
                            LOS ANGELES, CALIFORNIA 90012
25                          (213) 663-3494

CERTIFIED COPY

Exhibit 79
Page 1215

7653

```
 1    Appearances of Counsel:

 2

 3    On Behalf of Mattel:

 4        Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
          By John B. Quinn, Esq.
 5            B. Dylan Proctor, Esq.
              Michael T. Zeller, Esq.
 6            Harry Olivar, Esq.
              John Corey, Esq.
 7            Diane Hutnyan, Esq.
              William Price, Esq.
 8        855 South Figueroa Street
          10th Floor
 9        Los Angeles, CA 90017
          (213) 624-7707
10

11

12    On Behalf of MGA Entertainment:

13        Skadden, Arps, Slate, Meagher & Flom LLP
          By Thomas J. Nolan, Esq.
14            Carl Alan Roth, Esq.
              Jason Russell, Esq.
15            Lauren Aguiar, Esq.
              David Hansen, Esq.
16            Matthew Sloan, Esq.
              Robert Herrington, Esq.
17            Raoul D. Kennedy, Esq.
          300 South Grand Avenue
18        Los Angeles, CA 90071-3144
          (213) 687-5000
19

20

21

22

23

24

25
```

**Exhibit 79**
**Page 1216**

7759

1    He's not going to give the number.  It's exactly what I told

2    the Court that our expert would be saying.  He's not going to

3    give the precise number.

4            THE COURT:  Well, what's the answer?  What is he

5    going to say?

6            MR. ROTH:  He's going to say given the

7    uncertainties of the company, he cannot place a value on it

8    today.

9            THE COURT:  He cannot place a value?

10           MR. ROTH:  Right.

11           THE COURT:  Okay.

12           MR. COREY:  But that's the answer.  If he says you

13   can't put a value on it, they are going to say --

14           THE COURT:  If all he says is I can't place a

15   value, there are uncertainties.  I mean, the Court is going

16   to instruct the jury to do their best job to come up with a

17   value.

18           MR. PRICE:  But he's going to go further.

19           THE COURT:  I thought this was going to --

20           MR. PRICE:  I did, too.  But I think what he's

21   suggesting is that no one could.  So --

22           MR. ROTH:  Well, I will tell you --

23           THE COURT:  You know, this is fine.  That's

24   overruled.

25           **(CONCLUSION OF SIDEBAR CONFERENCE.)**

Exhibit 79
Page 1217

1   Q.   BY MR. KENNEDY:   Given everything you've learned in this

2   case about sales performance of Bratz, including the first

3   half of 2008 and taking into account the jury's verdict

4   that's already been returned in this case, and taking into

5   account the fact that we are still in trial in this case, and

6   taking into account the monetary amounts that Mattel is

7   seeking in this phase of the case, do you have an opinion as

8   to whether it is presently possible to place a value on

9   Mr. Larian's interest in the Bratz line portion of MGA?

10  A.   With all those issues, it would be my opinion that you

11  could not place a value on Mr. Larian's interest at this

12  point in time.   You just could not do that.

13  Q.   And is that also true of MGA's interest in the Bratz

14  line?

15  A.   It would be my opinion with all those issues and

16  uncertainties, you could not place a value on MGA at this

17  point in time.

18  Q.   And finally, did you prepare a graphic providing a

19  breakdown of profits according to segments of the overall

20  revenue for the Bratz line?

21  A.   Yes, I have.

22       MR. KENNEDY:   Aaron, could we see Exhibit 162.

23  Q.   And knowing we're short on time here, is what you've

24  done here taking the 3.1 billion in revenues, when you round

25  it up and broken that down into at least five of the overall

Exhibit 79
Page 1218

1   components that go to make it up?

2   **A.**    That's right.  If you go back to the prior schedules,

3   you'll see how this summary aligns with those schedules that

4   I've grouped together for the jury, the revenues and profits

5   from the various products and subbrands for the Bratz line,

6   and the total is the 3.1 billion.  Revenue, the total

7   profits, 405, and you'll see that spread amongst the various

8   categories.

9            MR. KENNEDY:  Thank you very much.  I have no

10  further questions, your Honor.  And I would move in all of

11  the exhibits except for the ones that Mr. Price has objected

12  to.  I think he and I can reach closure on that.

13           THE COURT:  Very well.  Why don't you confer

14  afterwards.

15           Thank you, Mr. Kennedy.

16           Mr. Price?

17                     **CROSS-EXAMINATION**

18  BY MR. PRICE:

19  **Q.**    Mr. Meyer, I want to ask you a little bit about your

20  testimony about Stanford.  Do you recall about teaching

21  there?

22  **A.**    At Stanford?

23  **Q.**    And Stanford has a terrific business school.  Do you

24  teach in the business school?

25  **A.**    I teach in the engineering school.  I teach business to

Exhibit 79
Page 1219

1

2

3

4

5

6

7                              C E R T I F I C A T E

8

9

10              I hereby certify that pursuant to Title 28,

11      Section 753 United States Code, the foregoing is a true and

12      correct transcript of the stenographically reported

13      proceedings in the above matter.

14              Certified on August 15, 2008.

15

16

17      _____
        MARK SCHWEITZER, CSR, RPR, CRR
18      Official Court Reporter
        License No. 10514

19

20

21

22

23

24

25

Exhibit 79
Page 1220

**EXHIBIT 80 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 81

1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3        EASTERN DIVISION

4        - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6        - - -

7    MATTEL, INC.,                    )
                                      )
8                    Plaintiff,       )
                                      )
9          vs.                        )   No. CV 04-09049
                                      )
10   MGA ENTERTAINMENT, inc., et. Al., )
                                      )
11                   Defendants.      )
     _____)   MOTION HEARING
12   AND CONSOLIDATED ACTIONS,        )
                                      )
     _____)

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16        Riverside, California

17        Monday, November 10, 2008

18        1:05 P.M.

19

20

21

22

23        THERESA A. LANZA, RPR, CSR
          Federal Official Court Reporter
24        3470 12th Street, Rm. 134
          Riverside, California   92501
25        951-274-0844                     **Exhibit 81**
          WWW.THERESALANZA.COM             **Page 1225**

CERTIFIED COPY

2

```
1  APPEARANCES:

2
   On behalf of Mattel, Inc.:
3
                          QUINN EMANUEL
4                         By:   JOHN QUINN
                                MICHAEL T. ZELLER
5                         865 S. FIGUEROA STREET,
                          10TH FLOOR
6                         LOS ANGELES, California  90017
                          213-624-7707
7

8

9  On behalf of MGA Entertainment:

10                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:   THOMAS J. NOLAN
11                              JASON RUSSELL
                                LAUREN AGUIAR
12                              RAOUL KENNEDY
                          300 SOUTH GRAND AVENUE
13                        LOS ANGELES, CALIFORNIA  90071-3144
                          213-687-5000
14

15

16

17

18

19

20

21

22

23

24

25
```

```
1   It's not conceptual.  It's not theoretical.  We not only can't
2   market Bratz, we can't market our own products without being
3   sued and being charged with infringing Bratz.
4           With respect to monopoly, the public interest of
5   monopoly, there's a case, the Mortgage Market Guide case, 2008,
6   Westlaw 299, where the court said that courts recognize no
7   monopoly -- there is not a monopoly if MGA can continue to
8   compete just with noninfringing products.  I'm substituting
9   "MGA" in there for the language in the opinion.  But they are
10  not unable to compete.  They are still free to, as Mr. Larian
11  said he would, come out with a new fashion doll.
12          With respect to royalty, there's a motion with
13  respect to Mr. Meyer's declaration, your Honor, that there is
14  no evidence before the Court from which the Court could derive
15  what a market royalty would be, what would be the result of a
16  negotiation between these two parties.  And it's all
17  hypothetical, and it's premised on an assumption about what the
18  jury must have decided.  No evidence about what prevailing
19  royalties are.  No evidence on what arrangements MGA or Mattel
20  have entered into.
21          We've submitted a declaration of Ms. Willis about how
22  she said, If there were hypothetical negotiations between these
23  parties, for a lot of different reasons, it would not make any
24  sense to license MGA.
25          And then, just on a very practical level, in terms of
```

Exhibit 81
Page 1227

Monday, November 10, 2008                    CV 04-09049

```
 1   royalty, your Honor, the Court has a very good sense of these
 2   parties and the individuals involved.  That would put these
 3   parties in an ongoing relationship, with royalty payments to be
 4   made, to be questioned, to be audited.  The trust that would be
 5   required whenever you have a licensing arrangement with a
 6   royalty, I submit, this is not an appropriate case for that.
 7           Thank you, your Honor.
 8           THE COURT:  Mr. Quinn, Mr. Kennedy, is there anything
 9   further?
10           MR. KENNEDY:  Just one minute, your Honor.
11           In addition to all of the other jury instructions
12   we've talked about, the Court gave Instruction Number 42, which
13   read, in part, "However, in determining what portion of the
14   defendant's profits are attributable to copyright infringement,
15   the benefit of the doubt should be given to Mattel and not
16   defendants.  If the copyrighted portions are so intermingled
17   with the rest of the infringing work that they cannot well be
18   distinguished from it, the entire profits realized by the
19   defendants are to be given to the plaintiff."
20           And against that, and all of the other jury
21   instructions, these folks came up with $10 million for
22   everybody and $6 million for MGA; so we have both explicit and
23   implicit findings that they were accepting only some very, very
24   small portion of total profits.
25           Against that, obviously, your Honor has a very
```

1  weighty decision; and this probably is going to be new law

2  whichever way you go.  As Mr. Quinn correctly pointed out,

3  eBay hasn't been with us that long.  But I've got a

4  responsibility for something like 800 people's jobs.  If

5  there's any question I have not answered today that you think I

6  might be able to answer, I'd really appreciate the opportunity,

7  if there's something further that's on your Honor's mind that I

8  just have not been able to cover.

9          **THE COURT:**  I appreciate that, Counsel.  I appreciate

10  your argument and the outstanding argument of everyone this

11  afternoon.  The briefs are of the standard that I have come to

12  expect in this case, as are the oral arguments; so I thank you.

13          Those were the four motions I wanted to cover.  I

14  know there are three motions to strike.  There are a number of

15  additional issues which the Court will address, based on the

16  well-written papers.

17          Mr. Zeller, is there something further?

18          **MR. ZELLER:**  Yes, your Honor.  I wanted to direct the

19  Court's attention to a couple of pieces of evidence

20  particularly concerning this issue that was raised during oral

21  argument about the value of the name.  In particular,

22  Rachel Harris testified -- this is actually in the trial

23  transcript, Page 4208 through Page 4209.  And she was asked

24  about the circumstances about the Bratz name, and she said,

25  basically, that Bratz, B-R-A-T-Z, was one of about 20 that MGA

Exhibit 81
Page 1229

Monday, November 10, 2008                    CV 04-09049

121

1   considered, and that they ultimately went with Bratz.  And the

2   following question was asked:

3          Question:  "And do you know why the name "Bratz" was

4   ultimately selected?"

5          We're talking about the name here.  This is October

6   of 2000, before any use was made of this, in commerce, or any

7   kind of trademark rights could have attached under U.S. law.

8          Answer:  "It was the most edgy.  It was just a cool

9   name."

10         Question:  "That was the consensus of the MGA

11   committee?"

12         Answer:  "Yes."

13         Question:  "Of which you were a member?"

14         Answer:  "Yes."

15      **MR. ZELLER:**  So MGA itself recognized that there was

16   an inherent value in this name, because it was edgy, it was

17   cool.

18         And also, as Paula Garcia testified at deposition,

19   this coalesced -- it basically matched up, it fit, with the

20   concept of the dolls.

21         So this is a name in itself that people perceived as

22   having value.  And actually, the decision was made to go

23   forward with it, for that very reason, because MGA itself

24   perceived and understood that the very name that Carter Bryant

25   came up with and that MGA took had value.

12

13

14

15

16

17                              CERTIFICATE

18        I hereby certify that pursuant to section 753, title 28, United
          States Code, the foregoing is a true and correct transcript of
19        the stenographically recorded proceedings held in the above-
          entitled matter and that the transcript page format is in
20        conformance with the regulations of the Judicial Conference of
          the United States.

21

22        
          _____    11-26-08
          THERESA A. LANZA, CSR, RPR      Date
23        Federal Official Court Reporter

24

25

                    Monday, November 10, 2008          CV 04-09049

Exhibit 81
Page 1231

# EXHIBIT 82 REMOVED

# PURSUANT TO PROTECTIVE ORDER

**EXHIBIT 83 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 84 REMOVED**

**PURSUANT TO PROTECTIVE ORDER**