QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **MATTEL, INC.'S OPPOSITION TO OMNI 808 INVESTORS, LLC'S *EX PARTE* APPLICATION TO INTERVENE** |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | Phase 1C |
| | Hearing Date:  February 11, 2009<br>Time:  10:00 a.m.<br>Place:  Courtroom 1 |
| | Discovery Cut-off:  Not Set<br>Pre-trial Conference:  Not Set<br>Trial Date:  Not Set |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT ................................................................................................ 6

I.   OMNI 808 HAS NOT SHOWN THAT IT IS ENTITLED TO
     INTERVENE AS A MATTER OF RIGHT ......................................... 6

     A.   Omni 808 Does Not Have The Necessary "Significantly
          Protectable Interest" ............................................................. 6

          1.   Omni 808 Fails To Show That It Has Any Bona Fide
               Interest Or Is The Real Party In Interest ...................... 6

          2.   Omni 808's Position As A Creditor Is Insufficient To
               Justify Intervention ..................................................... 9

     B.   Omni 808 Has Not Shown That The Appointment Of A Receiver
          May Impair Or Impede Its Ability to Protect Its Interest ......... 11

     C.   There Is No Showing That Larian/MGA Cannot Adequately
          Represent Omni 808's Interests ................................................ 14

     D.   Omni 808's Application Is Not Timely ..................................... 16

II.  THE COURT SHOULD DENY PERMISSIVE INTERVENTION ............... 18

CONCLUSION ........................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

## Cases

Alisal Water Corp. v. Silverwood Estates,
370 F.3d 915 (9th Cir 2004) ...................................................9, 10, 12, 16, 17, 19

American Monument Foundation, LLC v. Fairbrother,
2006 WL 3063473 (D. Nev. 2006) ........................................................... 12

Arakaki v. Cayetano,
324 F.3d 1078 (9th Cir. 2003) ......................................................... 6, 14, 15

Beverly Health & Rehabilitation Services, Inc.,
2006 WL 3593472 (E.D. Cal. 2006) ........................................................... 6

Cal. Dept. of Toxic Substances Control v. Commercial Realty Projects, Inc.,
309 F.3d 1113 (9th Cir. 2002) ........................................................... 17

California ex rel. Lockyer v. U.S.,
450 F.3d 436 (9th Cir. 2006) ........................................................... 12

Cf. California Physicians' Service v. Superior Court,
102 Cal. App. 3d 91, 162 Cal. Rptr. 266 (1980).......................................... 19

Cf. In re Lifschultz Fast Freight,
132 F.3d 339 (7th Cir. 1997) ........................................................... 8

Cf. In re Unicom Computer Corp.,
13 F.3d 321 (9th Cir. 1994) ........................................................... 12

Daugherty v. Oppenheimer & Co.,
2007 WL 2701311 (N.D. Cal. 2007)........................................ 9, 10, 11, 19

Donnelly v. Glickman,
159 F.3d 405 (9th Cir. 1998) ........................................................... 6, 18

In re eBay Seller Antitrust Litigation,
2008 WL 4412278 (N.D.Cal. 2008)........................................... 3, 4, 11

Gould v. Alleco, Inc.,
883 F.2d 281 (4th Cir. 1989) ........................................................... 10

Greene v. U.S.,
996 F.2d 973 (9th Cir. 1993) ........................................................... 18

Kootenai Tribe v. Veneman,
313 F.3d 1094 (9th Cir. 2002) ........................................................... 19

League of United Latin American Citizens v.  Wilson,
131 F.3d 1297 (9th Cir. 1997) ........................................................... 16

In re McGaughey,
24 F.3d 904 (7th Cir. 1994) ........................................................... 13

Medical Liability Mut. Ins. Co. v. Alan Curtis LLC,
  485 F.3d 1006 (8th Cir. 2007) ..................................................................... 10

Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.,
  72 F.3d 361 (3d Cir. 1995) .................................................................. 10, 13

NL Indus. v. Sec. of Interior,
  777 F.2d 433 (9th Cir. 1985) ......................................................................... 9

Orange v. Air Cal.,
  799 F.2d 535 (9th Cir. 1986) ....................................................................... 18

Ouch v. Sharpless,
  237 F.R.D. 163 (E.D. Tex. 2006) ................................................................ 10

Prete v. Bradbury,
  438 F.3d 949 (9th Cir. 2006) ................................................................ 14, 15

SEC v. Flight Transp. Corp.,
  699 F.2d 943 (8th Cir. 1983) ................................................................ 13, 14

Schultz v. Judgment Resolution Corp.,
  2008 WL 4239757 (N.D. Cal 2008) ........................................................ 6, 11

Sierra Club v. U.S. E.P.A.,
  995 F.2d 1478 (9th Cir. 1993) ..................................................................... 13

Smith v. Marsh,
  194 F.3d 1045 (9th Cir. 1999) ..................................................................... 17

Snyder v. Floworks, Inc.,
  2007 WL 2429451 (N.D.Cal. 2007) .............................................................. 3

Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers,
  101 F.3d 503 (7th Cir. 1996) .............................................................. 17, 20

Southern California Edison Co. v. Lynch,
  307 F.3d 794 (9th Cir. 2002) ....................................................................... 18

Southwest Center For Biological Diversity v. Berg,
  268 F.3d 810 (9th Cir. 2001) ......................................................................... 3

Spangler v. Pasadena City Bd. of Ed.,
  552 F.2d 1326 (9th Cir. 1977) ..................................................................... 19

U.S. v. City of Los Angeles,
  288 F.3d 391 (9th Cir. 2002) ....................................................................... 15

U.S. v. Oregon,
  913 F.2d 576 (9th Cir. 1990) .............................................................. 15, 16, 17

Werbungs und Commerz Union Austalt v. Collectors' Guild, Ltd.,
  782 F. Supp. 870 (S.D.N.Y. 1991) ................................................................ 9

White v. U.S.,
  2006 WL 1722301 (D. Ariz. 2006) ........................................................ 10, 11

## **Statutes and Rules**

Cal. Bus. Prof. Code § 17200 ........................................................................... 12

Fed. R. Civ. Proc. 24(b)(1)(B) ......................................................................... 18

Fed. R. Civ. Proc. Rule 24(b)(2) ................................................................ 18, 20

Local Rule 7.1-1 ..................................................................................... 8, 12, 13

Local Rule 24 ............................................................................... 2, 11, 16, 17

Local Rule 24(a) ....................................................................................... 9, 10

Local Rule 24(a)(2)  ............................................................................... 10, 17

Local Rule 24(b) ............................................................................................ 19

Local Rule 24(b)(1) ........................................................................................ 18

Local Rule 24(b)(2) ........................................................................................ 18

## **Other Authorities**

WRIGHT & MILLER, Fed. Prac. & Proc. § 1909, at 318 (2d ed. 1986)...................... 14

§1911 ............................................................................................................ 19

§ 1913.................................................................................................... 19, 20

## Preliminary Statement

As the Court will recall from Mattel's receivership application, Omni 808 is a single-purpose entity that was formed during the Phase 1B damages trial and that now claims MGA owes it more than $300 million in unpaid loans.  As reflected in UCC financing statements, Omni 808's alleged acquisition of that $300 million in MGA debt – also during trial – was funded by a shell entity called Vision Capital. Vision Capital, which owns Omni 808, too was formed mid-trial.  Vision Capital's funds, in turn, came from Lexington Financial, an off-shore shell entity with a London mail drop.  MGA offered no evidence or specifics as to who owned its new business partners, who was actually behind these transactions, the source of the funding or even the transactions' true terms.  What little MGA did disclose about the facts was incorrect – as MGA had to concede when confronted with evidence Mattel's investigation had turned up about these entities and the transactions.  All of this was troubling enough, especially in conjunction with the belated revelation of Isaac Larian's formation of other companies mid-trial that he used to buy tens of millions of dollars of MGA's Bratz inventory at a drastic discount.

Omni 808's intervention papers confirm that MGA has been engaged in at best highly suspect financial transactions and compound the many serious questions surrounding MGA's finances and its financial condition.  Omni 808 claims to be MGA's "largest creditor" and repeatedly touts without evidence or legal support the superiority of its supposed interests – devised during the damages phase of trial – over Mattel.  It dismisses the Court's and Mattel's stated concerns about MGA's financial dealings with an *ipse dixit* that its transactions were "arms-length" and are "both straight-forward and easily explained," but provides no relevant details, let alone evidence, to substantiate that proclamation.  Indeed, like MGA before it, Omni 808 fails to disclose who its alleged unnamed "investors" are, who owns Omni 808, Vision Capital or Lexington Financial, where Omni 808 obtained over $100 million

in funds to acquire the ostensible interests in MGA it touts or even the actual terms of its alleged transactions with MGA or anyone else.

Omni 808 fails to do so because the facts belie its conclusory assertions. Mattel has learned, but neither MGA nor Omni 808 have disclosed, that Vision Capital and Lexington Financial are anything but arms-length actors. In fact, both Vision Capital and Lexington Financial – the alleged source of funding for Omni 808 and thus for MGA – are directly tied to Isaac Larian's brother-in-law, Leon Neman. Thus, for example, Vision Capital purports to have an address of 1525 South Broadway in Los Angeles. No company called Vision Capital is located there; in fact, the receptionist at the building said she had never heard of it. Rather, Leon Neman owns the property at 1525 South Broadway and runs his businesses from there. Multiple Leon Neman entities list as their agent Fred Mashian, who purports to be Lexington Financial's agent in the UCC financing statement. And, Vision Capital's Delaware address is the same address as a Neman entity that lists Mr. Mashian as its agent.

Omni 808's application fails to establish any of the elements for intervention that Omni 808 is required to establish. Omni 808 bases its application to intervene solely on its alleged position as MGA's "largest creditor." But contrary to its representation, a transaction that has the fingerprints of Isaac Larian's brother-in-law all over it is scarcely "arms length," let alone facially bona fide. Without proof of a legitimate, demonstrable interest of any kind, Omni 808's application wholly fails. In addition to being both suspect and unproven, Omni 808's claimed status as creditor here is also insufficient to establish a "significantly protectable interest" under Rule 24. It has not shown that Bratz is within the scope of collateral of the relevant UCC financing statements. And, the jury found that MGA never owned Bratz, so Omni 808 does not and cannot have any claim to it. Because Omni 808 does not show the necessary, legally cognizable interest to support intervention, its application must be denied.

Omni 808's application to intervene should be denied for additional, independent reasons as well.  It has not shown that its interests would be impaired by appointment of a receiver.  It has identified no reason why its interests and MGA's are not aligned, nor proffered any arguments it would make that MGA has not.  Finally, this *ex parte* application, coming months after Omni 808's purported interests were acquired and weeks after Mattel first sought a receiver, is untimely.

Omni 808's application is not only without merit, but its belated intervention into this litigation would risk serious prejudice.  It would threaten to delay this case, interfere with the work of the forensic auditor, complicate an already complex suit, consume additional resources and allow it to block any chance of settlement.  These risk are all the more acute if, as it appears may be the case, Omni 808 and its unidentified "investors" are related parties to MGA and Larian.  The Court should deny the application in its entirety.

## **Background**

Omni 808 furnishes no evidence on its application, but only bald assertions.[1]

---

[1]  Omni 808 argues, in a footnote, that "courts must accept as true all nonconclusory allegations" in a motion for intervention, apparently as an excuse for its failure to provide any evidence to support its allegations.  As the authority Omni 808 cites makes clear, however, courts are required only "to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, *and declarations* supporting the motion as true *absent sham, frivolity or other objections.*" Southwest Center For Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001) (emphasis added).  A court need not accept allegations that are suspect.  See, e.g., Snyder v. Floworks, Inc., 2007 WL 2429451, at *3 (N.D.Cal. 2007) ("As a preliminary matter, the court has significant concern that the Stanford Square pleading is a sham. The court views this attempt to intervene with suspicion for several reasons.").  Here, Omni 808's unproven claims are conclusory, dubious and indeed contrary to record evidence.  Moreover, a proposed intervenor's allegations are not viewed in isolation:  "we do not foreclose consideration of the pleadings and affidavits of opponents to intervention, nor do we preclude district courts from holding a hearing when necessary to resolve ambiguities or conflicts."  Southwest Center For Biological Diversity, 268 F.3d at 820.  Omni 808 "bears the burden of showing that *all* the requirements for intervention have been met."  In re eBay Seller Antitrust Litigation, 2008 WL 4412278, *1 (N.D.Cal. 2008) (quotations
(footnote continued)

It claims that it is a special purpose entity formed by Neil Kadisha to purchase the Wachovia Senior Bank Credit Facility, as a distressed debt investor. (See App. at 2). It further claims that the only flow of funds here is from Omni 808 to Wachovia as consideration for the purchase of the debt owned by MGA. (See id.). Refuting Omni 808's assertion, however, MGA was previously forced to admit to the Court that Omni 808, in fact, extended additional funding to MGA in October 2008.[2]

Even more troubling, Omni 808's application is conspicuously silent as to the actual source of the funds for the transaction that it claims gave rise to its purported security interest—information that is critical to the Court's determination of whether Omni 808 has an interest which justifies intervention. The available evidence reflects that those funds did not come from OmniNet, and Omni 808 certainly does not prove they did. Omni 808 is a single-purpose entity that was formed on August 12, 2008, during the Phase 1B damages trial.[3] Omni 808 appears to be owned by Vision Capital, LLC, also formed during the damages phase of trial.[4] Vision Capital borrowed the money used to fund Omni 808 from Lexington Financial Limited ("Lexington"), an offshore company registered in the Caribbean island of Nevis.[5] Nevis' corporate and banking secrecy laws are notorious. Indeed, the official corporate records for Lexington declare that Nevis does not ask—and therefore will

---

omitted)) (emphasis in original). The conclusory allegations Omni 808 makes, unsupported and controverted by evidence, fail to meet that burden.

[2] MGA Parties Corrections to the Opposition to Mattel, Inc.'s Ex Parte Application for Appointment of a Receiver or for Alternative Relief, dated December 31, 2008, at 1-2, Zeller Dec., Exh. 19.

[3] Omni 808 Investors LLC Certificate of Status and Articles of Organization , Zeller Dec., Exh. 1.

[4] Vision Capital, LLC Certificate of Formation dated August 19, 2008, Zeller Dec. Exh. 2.

[5] UCC Financing Statement dated August 29, 2008, Zeller Dec., Exh. 5 (with Lexington Capital taking a security interest in Vision Capital's ownership interest in Omni 808 Investors LLC). As the Court is no doubt aware, Nevis is known for its corporate secrecy laws. "Offshore-Based Limited Liability Company (LLC)" at www.offshore-protection.com/nevisLLC.html, Zeller Dec., Exh. 11.

1  not disclose—any information about Lexington, including the identities of its

2  principals.[6]  Lexington's London address is a company that provides "virtual office"

3  services, i.e., a mail drop and answering service.[7]  Fred Mashian, a Los Angeles

4  attorney, is identified as Lexington's agent on a UCC financing statement showing

5  that Vision Capital secured a loan from Lexington with its ownership interest in

6  Omni 808.[8]  Lexington purportedly perfected its security interest in Vision Capital's

7  ownership interest in Omni 808 on August 29, 2008—three days after the Phase 1B

8  jury verdict.[9]

9      On January 12, 2009, Mattel attempted to serve a subpoena on Vision Capital

10  at 1525 South Broadway in Los Angeles—the address provided in that August 29,

11  2008 UCC financing statement.[10]  Vision Capital was not located at that address; in

12  fact, the receptionist at the building said she had never heard of the company.[11]

13  Rather, 1525 South Broadway is the address of Neman Brothers & Associates.[12]

14  Leon Neman is a principal of Neman Brothers & Associates and owns the building

15  at 1525 Broadway, where Vision Capital is ostensibly located.[13]  Leon Neman is

16  Isaac Larian's brother-in-law and has served as a director of MGA.[14]  Mr. Mashian,

17  the agent for Lexington Financial, is the listed agent for several entities that Leon

18  Neman owns.[15]  Indeed, Rock-Hill Holdings, LLC, a Leon Neman entity that lists

---

[6]  See Zeller Dec. Exh. 18.

[7]  UCC Financing Statement dated August 29, 2008, Zeller Dec., Exh. 5; December 12, 2008 letter from Registrar Clevelan Williams, Zeller Dec., Exh. 18. Office Front "Home" (offering website by Office Front allowing a person to obtain a "virtual office" for as little as ₤10 a month), Zeller Dec., Exh. 10.

[8]  UCC Financing Statement dated August 29, 2008, Zeller Dec., Exh. 5.

[9]  Id.

[10]  See Declaration of David Antolin, dated February 4, 2009.

[11]  Id.

[12]  Id.

[13]  See Zeller Dec. ¶ 6.

[14]  See Zeller Dec. ¶ 4.

[15]  See Zeller Dec. ¶ 11.

Mashian as its registered agent, also has a Delaware address that is the same as Vision Capital's alleged Delaware address.[16]

## Argument

## I.   OMNI 808 HAS NOT SHOWN THAT IT IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT

### A.   Omni 808 Does Not Have The Necessary "Significantly Protectable Interest"

Omni 808 has not met its "burden of asserting a significantly protectable interest relating to the property or transaction that is the subject of this action." See Schultz v. Judgment Resolution Corp., 2008 WL 4239757, at *3 (N.D. Cal 2008). "An applicant has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims." Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir. 1998) (citation and quotations omitted).  Omni 808 has the burden to establish both elements.  Arakaki v. Cayetano, 324 F.3d 1078, 1084 (9th Cir. 2003).  Here, Omni 808 has failed to satisfy either—it has merely proclaimed that it is MGA's largest creditor.[17]

### 1.   Omni 808 Fails To Show That It Has Any Bona Fide Interest Or Is The Real Party In Interest

As a threshold matter, Omni 808 makes no showing that it has any bona fide interest or that it is even the real party in interest here.  The only evidence of record suggests to the contrary.  Omni 808 represents, but does not establish, that it owns

---

[16]   See Zeller Dec. ¶ 12.

[17]   Having failed in its application to assert any other basis for its interest, and having offered no evidence in support of its assertions, it would be improper for Omni 808 to attempt to do so in its reply.  See, e.g., Beverly Health & Rehabilitation Services, Inc., 2006 WL 3593472, at *7 (E.D. Cal. 2006) ("It is well established in this circuit that courts typically do not consider arguments raised for the first time in a reply brief, as doing so may unfairly deprive [the other party] of its opportunity to make a meaningful response.").

1   MGA's debt as a result of an "arms-length" transaction that "is both straight-forward

2   and easily explained." (App. at 2:7, 1:17-18). Omni 808 alleges, but does not

3   prove, that MGA approached Neil Kadisha to arrange the purchase of Wachovia's

4   credit facility following Wachovia's accelerated loan payment demand.[18] According

5   to Omni 808, Mr. Kadisha then "solicited various private investors" – none of whom

6   Omni 808 or MGA have ever identified – and purchased the notes through Omni

7   808, apparently at a substantial discount. (App. at 4:15-5:3).[19]

8        The evidence Mattel has gathered to date, however, indicates that the Omni

9   808 transaction was not "straight-forward," "easily explained" or "arms-length."

10  Mattel has served subpoenas seeking the documents relating to these transactions,

11  but Larian and MGA seem intent on preventing Mattel from getting them. For its

12  part, Omni 808 refuses to produce documents that would show who owns it or

13

14  _____

15  [18]  Omni 808 essentially ignores the Superior Court's findings that Mr. Kadisha is "no
    more than a common thief" and engaged in serious misconduct, tersely dismissing Court

16  rulings as "ad hominem" attacks and saying only that the Uzyel litigation has "not yet been
    finally resolved"—hardly a spirited disputation of the Superior Court's overwhelming

17  findings. See In re Uzyel Irrevocable Trust, No. BP 058 898 (Los Angeles Sup. Ct.

18  October 24, 2006), at 13:19, Zeller Dec., Exh. 17, at 2:13-25, 4:13-18, 26:3-11; 31:22-24,
    34:6-7, 41:23-24, 45:25-27, 48:25-28, 50-51 n. 12, 62:24-63:2, 71:7-9, 72:15-16, 102:1-20,

19  111:24-27, 112:10-13, 117:17-23, 118:23, 120:1-2, 121:1, 125:1-27, 126:16, 141:27-28,
    152:17-22, 153:1-6, 155:13-14, 156:1-157:24, 158:23-28, 166:11-22, 168:1-5, 175:10-13,

20  181:13, 183:11-21.

21  [19]  Omni 808 charges that "Mattel falsely represents to the Court that MGA received
    new 'sudden funding' . . . during the trial of this action," and suggests that the only

22  "funding" that took place was the loan "provided by Wachovia to MGA under the Senior

23  Bank Credit Facility beginning in 2006 – long before the trial and any judgment was
    entered against MGA in this action in 2008." (App. at 2). Omni 808 not only

24  mischaracterizes Mattel's earlier statements, but its assertion that it did not provide new
    funding is false. After Mattel brought the Omni transaction to the Court's attention, and

25  contrary to MGA's earlier sworn representations to the Court and to the Ninth Circuit that

26  it had been unable to obtain new credit, MGA was forced to admit that Omni 808 had
    extended it additional funding in October 2008. See MGA Parties Corrections to the

27  Opposition to Mattel, Inc.'s Ex Parte Application for Appointment of a Receiver or for

28  Alternative Relief, dated December 31, 2008, at 1-2, Zeller Dec., Exh. 19.

where the funding actually came from.[20]   Omni 808 also refuses to provide that information in its application to intervene or in its Certified Notice of Interested Parties as well, even though <u>Local Rule</u> 7.1-1 requires it.  What Mattel does know is that UCC filings reflect Omni 808's funds for the purchase of the Wachovia notes came from Vision Capital.[21]   And Vision Capital's funds, in turn, came from Lexington, a Nevis entity with a London mail drop.[22]  Even more disturbing, both of these entities can be tied to Isaac Larian's brother-in-law, Leon Neman: for example, Vision Capital by its use of fictional addresses in California and Delaware that are the same as Leon Neman's; and Lexington by its identification of Neman's frequent associate Fred Mashian as its agent.

The long-standing "mystery" of MGA's finances, the concealed involvement of a Larian family member in both Vision Capital and Lexington, the trail of shell companies that leads to Nevis and a phantom office in London, the timing of the formation of the entities and the transactions during the damages phase of trial after MGA and Larian had been found liable, and the flat refusals to provide discovery or proof even as to the most basic information about these matters by MGA and Omni 808 all point to the conclusion that the transaction was anything but "arms-length" as Omni 808 proclaims.  To the contrary, such conduct suggests that related parties to MGA and Larian created these vehicles for the improper purpose of attempting to leapfrog over Mattel's claims and shield their assets from creditors and other rights-holders such as Mattel.  <u>Cf.</u> <u>In re Lifschultz Fast Freight</u>, 132 F.3d 339, 343 (7th Cir. 1997) (noting that "[e]quityholders come last in bankruptcy, which generally means they get nothing at liquidation.  To avoid this, an owner might disguise her equity claim as debt.").

---

[20]  <u>See</u> Corey Dec. ¶¶ 2-5.
[21]  <u>See</u> Zeller Dec. ¶ 8.
[22]  <u>See</u> Zeller Dec. ¶¶ 8, 9.

Based on this record, there is no basis for concluding that Omni 808 has a bona fide, let alone significant, interest at all which it can assert here and therefore no basis for its intervention.  At the very least, Omni 808 has failed to show that it is the one that actually owns any interest in any of MGA's assets.  To the contrary, the UCC filings reveal that Lexington, not Omni 808, is the real party in interest and the purported entity that supposedly stands to lose if MGA cannot repay the notes.[23]

## 2.   Omni 808's Position As A Creditor Is Insufficient To Justify Intervention

Even if (contrary to fact) Omni 808 could establish it is a bona fide creditor, its application would still fail.  A creditor's generalized claim that the litigation may impair its ability to be repaid by the debtor, like Omni 808 asserts here, does not constitute a protectable interest under Rule 24(a).  See Alisal Water Corp. v. Silverwood Estates, 370 F.3d 915, 920 (9th Cir 2004) ("an allegedly impaired ability to collect judgments arising from past claims does not, on its own, support a right to intervention"); Daugherty v. Oppenheimer & Co., 2007 WL 2701311, at *1 (N.D. Cal. 2007) ("The impaired ability to collect judgments that may arise from future claims or past claims does not give rise to a right of intervention.").[24]  As the Ninth Circuit recognized in Alisal, "[t]o hold otherwise would create an open

---

[23]   See Zeller Dec. ¶¶ 6-7.  In the event that the Court does not reject Omni 808's application outright on these grounds, Mattel requests that it be entitled to take expedited discovery to determine whether there is any bona fide credit interest, including into the identity of the true ultimate owner of the Wachovia interests and the ultimate source of funds in the Omni-Wachovia transactions.

[24]   Omni cites two cases; neither is remotely similar to the situation here.  In NL Indus. v. Sec. of Interior, 777 F.2d 433, 435-36 (9th Cir. 1985), rather than the kind of generalized security interest in the defendant that Omni asserts, the intervenor had an interest in the "specific claims" being adjudicated, an "unpatented mining claim" over the same land as the plaintiff's "unpatented mining claim" which was the subject of the current litigation.  In the other cited case, Werbungs und Commerz Union Austalt v. Collectors' Guild, Ltd., 782 F. Supp. 870 (S.D.N.Y. 1991), the court explicitly distinguished the fact pattern here, noting that the potential intervenor there was "*more than* a shareholder or *creditor* of [defendants]."  Id. at 875 (emphasis added).

invitation for virtually any creditor of a defendant to intervene in a lawsuit where damages might be awarded."  <u>Alisal</u>, 270 F.3d at 920.  Yet, this is precisely what Omni 808 seeks—to intervene on the sole basis that it is allegedly MGA's "largest creditor."  (App. at 8).  Although "[i]n a sense, every company's stockholders, bondholders, directors and employees have a stake in the outcome of any litigation involving the company, . . . this alone is insufficient to imbue them with the degree of 'interest' required for Rule 24(a) intervention."  <u>Gould v. Alleco, Inc.</u>, 883 F.2d 281, 285 (4th Cir. 1989) (rejecting bondholder's motion to intervene on the grounds that "[m]erely claiming a general interest in [defendant's] assets based on a speculative recovery in an unrelated civil action" does not satisfy this element of <u>Rule</u> 24(a)(2) because if it did, "every proposed settlement would be subject to derailment as long as a potential judgment creditor decided to intervene").  Having a "mere interest in property that may be impacted by litigation is not a passport to participate in the litigation itself."  <u>Alisal</u>, 370 F.3d at 920 n.3.[25]

In short, "[t]here is simply no right to intervene based on the fact that the outcome of a case may increase or decrease the collectability of a third-party's claim against a party."  <u>White v. U.S.</u>, 2006 WL 1722301, at *3 (D. Ariz. 2006) (citation omitted).  "To hold otherwise would create a slippery slope where anyone with an interest in the property of a party to a lawsuit could bootstrap that stake into an interest in the litigation itself."  <u>Id</u>.  Omni 808's avowed position as MGA's largest secured creditor is not a significant protectable interest.

---

[25]  <u>See also</u> <u>Daugherty</u>, 2007 WL 2701311, at *1; <u>Medical Liability Mut. Ins. Co. v. Alan Curtis LLC</u>, 485 F.3d 1006, 1008 -09 (8th Cir. 2007) (finding intervenor's interest in ensuring defendants "has sufficient resources to satisfy any judgment she might obtain against them ... too remote and indirect to qualify as a cognizable interest under Rule 24(a)(2)") (citation omitted); <u>Ouch v. Sharpless</u>, 237 F.R.D. 163, 165-66 (E.D. Tex. 2006) (denying motion to intervene where intervenor had "no substantive interest in the dispute" since he was essentially seeking to "ensure that any recovery [plaintiff] receives will be available to satisfy debts that [intervenor] alleges are owed to him").

Even if it were, "to trigger a right to intervene, . . . an economic interest must be concrete and *related* to the underlying subject matter of the action." Alisal Water Corp., 370 F.3d at 919 (emphasis added) (citation omitted).  Omni 808 asserts that its interest is "directly related" to this litigation, but it does not explain how.  (App. at 8).  Omni 808's position as a purported creditor of MGA does not catapult Omni 808 into a position where its interests are "related" to any and all litigation in which MGA's assets are at issue.  See Daugherty 2007 WL 2701311, at *1 (potential intervenor failed to show his interest was related because his sole interest in the action was in the "prospective collectability of a debt from plaintiff[,]" which arose pursuant to a contract unrelated to the subject matter of the current litigation ).[26] Omni 808's position as a supposed creditor of MGA fails the second prong of the protectable interest test.  See Schultz, 2008 WL 4239757 at *3 (denying Rule 24 motion where intervenor's interest in collecting on a judgment awarded to him against the plaintiff in a prior case was "not sufficiently related to the claims ... in the present action").

### B.   Omni 808 Has Not Shown That The Appointment Of A Receiver May Impair Or Impede Its Ability to Protect Its Interest

As an independent basis for denial of its application, Omni 808's ability to protect its interests will not be impaired because there is no argument, let alone evidence, that the Bratz line or the infringing Bratz intellectual property in this

---

[26]   See also In re eBay Seller Antitrust Litigation, 2008 WL 4412278, at *2 (N.D. Cal. 2008) (denying intervention where proposed intervenor's claims were "not related in any way to the antitrust litigation currently before the Court."); White, 2006 WL 1722301 at *3 (denying motion to intervene where intervenor asserted it had the necessary interest because a "[s]ettlement or judgment would have a direct and immediate effect upon [its] right to recover its advanced costs and its equitable share of the contingency fees[,]" explaining that such interest "is several degrees removed from the tort claims that are the backbone of this litigation").

action is within the scope of collateral in the relevant UCC Financing Statements.[27] Furthermore, to the extent that Bratz was, at any time, arguably within the scope of the collateral, it evaporated with the jury's verdict in Phase 1A when it found that Bratz was created during Bryant's Mattel employment and that therefore Mattel, and not MGA, owned the Bratz properties.   Bratz properties were also held in constructive trust for Mattel under the jury's findings and the Court's Orders; MGA never owned it and could not encumber them.[28]   Cf. In re Unicom Computer Corp., 13 F.3d 321, 324 (9th Cir. 1994) (property held in constructive trust is not part of the debtor's estate in bankruptcy).   Nor would such a result create any unfairness.  Omni 808 may claim to be "harmed" if and when MGA is forced to stop infringing on Mattel's intellectual property rights, but Omni 808 accepted these risks when it purchased the rights to the Wachovia notes after the Phase 1A verdict at a steep discount.

Moreover, "[e]ven if this lawsuit would *affect* [Omni 808's] interests, their interests might not be *impaired* if they have 'other means' to protect them." California ex rel. Lockyer v. U.S., 450 F.3d 436, 442 (9th Cir. 2006) (emphasis in original); see also Alisal Water Corp. 370 F.3d at 921 (holding that interests were not impaired because the court had established other means by which judgment creditor could protect interests); American Monument Foundation, LLC v. Fairbrother, 2006 WL 3063473, at *10 (D. Nev. 2006) ("The availability of another forum is a factor to consider in determining whether the pending action will impair or impede an applicant's interests sufficiently to support intervention as of right. (citation omitted)).  As was the case in American Monument, Omni 808 "has not

---

[27]   See Zeller Dec. Exh. 20; Exhibit A to the UCC Financing Statement No. 06-7090318014.

[28]   See  Court's Order Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus.  Prof. Code § 17200, dated December 3, 2008, Corey Dec. Ex. 11.

explained how this action will impede or impair its ability to protect its interests through other means besides its conclusory allegation[s]. . .." 2006 WL 3063473 at *11. To the contrary, it is evident that Omni 808 has other means available to protect its interests. Assuming it is an entity with actual rights, Omni 808 can sue MGA and/or Larian separately. If MGA defaults, Omni 808 presumably could accelerate the note. And, if, as MGA and Omni 808 claim, Omni 808 is truly an independent creditor, <u>Local Rule</u> 66-4 would grant it the ability to respond to an order to show cause why a permanent receiver should not be appointed at that time. <u>Local Rule</u> 66-4. Omni 808's intervention is thus not necessary or appropriate for it to be heard on the receivership issue.

Omni 808 also does not explain how the appointment of a receiver, charged by the Court to preserve the Bratz assets, would impair any legitimate interests. Indeed, the primary purpose in appointing a receiver is "to protect, conserve and administer property pending final disposition of a suit." <u>In re McGaughey</u>, 24 F.3d 904, 907 (7th Cir. 1994). Moreover, Mattel has requested a receivership over Bratz assets only. Limiting the scope of the receivership in this way addresses any concern that the receivership would impair MGA's ability to generate revenue from its non-Bratz assets. Having acquired its interest after the Phase 1A verdict (at a sharp discount undoubtedly *because of* the Phase 1A verdict), Omni 808 cannot show that any legitimate interest it possesses would be injured by a receivership.

Omni 808 cites two cases for the proposition that courts allow creditors to intervene when a receiver has been appointed because "the first creditor's action may effectively foreclose the interests of other creditors." (Omni App. at 8; citing <u>Sierra Club v. U.S. E.P.A.</u>, 995 F.2d 1478 (9th Cir. 1993); <u>Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.</u>, 72 F.3d 361 (3rd. Cir. 1995).) These cases do not deal with creditors, debtors or receivers, but rather with the City of Phoenix intervening in a lawsuit filed under the Clean Water Act (<u>Sierra Club</u>), and with condominium owners intervening in a mediation to challenge the

distribution of insurance proceeds by a condominium association (<u>Mountain Top</u>). <u>Sierra Club</u>, 995 F.2d at 1480; <u>Mountain Top</u>, 72 F.3d at 364-65.

Omni 808 also cites <u>SEC v. Flight Transp. Corp</u>. 699 F.2d 943, 947 (8th Cir. 1983), as an example where courts have allowed a creditor to intervene.  (App. at 8.) In that case, however, the court stressed that the assets sought by both the creditors and the SEC were virtually the only assets Flight Transportation Corporation had. <u>Id</u>.  Omni 808 has not provided any evidence that virtually all of MGA's assets would be lost, except for its conclusory, unproven statements that MGA could be "crippled" or that Omni 808's ability to protect its security interest would be impaired.  (App. at 8-9.)

While there may be circumstances where a bona fide secured creditor's interest in a specific, identifiable asset or group of assets warrants intervention, Omni 808's generalized, alleged interest in MGA's financial well-being does not. Its application should be denied.

**C.   <u>There Is No Showing That Larian/MGA Cannot Adequately Represent Omni 808's Interests</u>**

Independently, Omni 808 makes no showing that Larian and MGA will not adequately represent its interests.  Omni 808 correctly quotes that "[t]he most important factor in determining the adequacy of the representation is how the interest compares with the interest of existing parties."  <u>Arakaki v. Cayetano</u>, 324 F.3d 1078, 1086 (9th Cir. 2003) (citing Wright & Miller, Fed. Prac. & Proc. § 1909, at 318 (2d ed. 1986)).  However, Omni 808 omits the following sentences from <u>Arakaki</u>: "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises.  If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." <u>Arakaki</u>, 324 F.3d at 1086 (internal citations omitted); <u>see also</u> <u>Prete v. Bradbury</u>, 438 F.3d 949, 956 (9th Cir. 2006).  Omni 808 and MGA admittedly have the "same ultimate

objective"—to oppose the appointment of a receiver in this action.  Larian and MGA, represented by Skadden and two other law firms, have ably opposed the application and signaled their intention to continue that opposition.[29]  This unity of interest creates a presumption of adequate representation, and Omni 808 has the burden of making a compelling showing to the contrary as a result.

Omni 808 fails to meet that burden.  See U.S. v. City of Los Angeles, 288 F.3d 391, 402-03 (9th Cir. 2002) (affirming district court's denial of motion for intervention because the interests of the would-be intervenors were adequately protected by plaintiff and noting that "[a]ny differences [the plaintiff and the intervenors] have are merely differences in strategy, which are not enough to justify intervention as a matter of right"); Prete, 438 F.3d at 959 (reversing district court's decision to grant intervenors' motion because intervenors failed to present a compelling showing of inadequate representation); Arakaki, 324 F.3d at 1086-87 (denying motion to intervene because intervenor's "interests [we]re adequately represented by existing parties.").  While Omni 808 suggests that it is not sure that MGA "will undoubtedly make all of Omni 808's arguments," it fails to identify a single argument it would make that Larian and MGA have not.  And Omni 808 fails to establish that it could offer any additional *necessary* elements to the proceeding that MGA would otherwise neglect.[30]  Moreover, as set forth above, Mr. Larian's family members' undisclosed, and unexplained, connections to the transactions

---

[29]  See MGA Parties' Request for Conditional Briefing Schedule and Hearing on Mattel's Pending Motion.

[30]  Omni's contention that it is in the best position to relay the facts and circumstances of its position does not entitle it to intervene.  See Arakaki, 324 F.3d at 1086 (listing the factors considered by the Ninth Circuit in determining the adequacy of representation); see also Prete, 438 F.3d at 958 (stating that fact that proposed intervenor may have some "specialized knowledge" did not entitle it to intervene because this knowledge could also be obtained by the defendant).  Plus, its position does not matter, only the merits to oppose the receiver.

1  strongly suggests that MGA's and Larian's counsel will sufficiently protect Omni

2  808's interests.

3      **D.    Omni 808's Application Is Not Timely**

4      Omni 808's application is also untimely, which constitutes an additional basis

5  for its denial.  "Timeliness is the threshold requirement for intervention."  U.S. v.

6  Oregon, 913 F.2d 576, 588 (9th Cir. 1990).  Omni 808 asserts that it acted without

7  delay.  (See App. at 7).  But Omni 808's alleged interest was created over five

8  months ago, by September 2008.  (App. at 5).  Indeed, on the first prong of the Rule

9  24 test, Omni 808 asserts that its interest is "directly related" *to this litigation*—a

10 supposed interest that Omni 808 unquestionably knew about all along.  It learned of

11 Mattel's receivership papers at least five weeks ago.  Its C.E.O., Neil Kadisha, even

12 sent a letter acknowledging them.[31]  Yet, Omni offers no explanation why it waited

13 to seek intervention until now, let alone on an *ex parte* basis.  See Alisal Water

14 Corp., 370 F.3d at 923 (upholding district court's decision that motion was untimely

15 where district court "found that [intervenor] ha[d] not explained why it delayed").  A

16 party must intervene when it "knows or has to reason to know that his interests

17 might be adversely affected by the outcome of litigation[,]" and Omni 808's

18 unexplained decision to wait five months renders its application untimely.  Oregon,

19 913 F.2d at 589 (citation omitted).

20     The late stage of these proceedings weighs heavily against Omni 808's

21 intervention.  The Phase 1 trial has been completed, the Court has decided numerous

22

23     [31]  See Decl. of B. Wing In Support of MGA's Opp. to Mattel's App. for a Receiver
   ("Wing Decl."), Exh. B, dated December 31, 2008.  Attached as Exhibit B to the Wing
24 Declaration is a copy of a letter from CEO of Omni to MGA, dated Dec. 31, 2008,
   notifying MGA that it was in default and expressing concern about "Mattel's ex parte
25 application for the appointment of a receiver."  For the convenience of the Court, Exhibit B
   to the Wing Decl. is attached as Exhibit 22 to the Zeller Decl.  Omni 808 also fails to
26 acknowledge that Mattel first asked the Court for a receiver even before that, when it filed
   its Opposition to MGA's *Ex Parte* Application for Stay of Injunction Pending Appeal on
27 December 23, 2008.

28

post-trial motions and is less than a week away from its scheduled hearing on the remaining post-trial motions, and the Court-appointed forensic auditor has been working full time for weeks.   The Court has already "substantively-and substantially-engaged the issues in this case," a factor that "weighs heavily against allowing intervention as of right."   League of United Latin American Citizens v. Wilson, 131 F.3d 1297, 1303, 1307 (9th Cir. 1997) (finding on *de novo* review that the intervenors' Rule 24 motion failed on timeliness grounds); see also Smith v. Marsh, 194 F.3d 1045, 1052-53 (9th Cir. 1999) (affirming denial of Rule 24(a)(2) motion as untimely because the intervenors waited to seek intervention without any satisfactory explanation for the delay).

The prejudice to Mattel of letting Omni 808 intervene at this point is "[o]ne of the most important factors in determining timeliness[,]" and an additional basis for denying the application.  See Oregon, 913 F.2d at 588.  Omni 808's intervention would further complicate and delay this litigation, and further imperil Mattel's intellectual property currently under the control of MGA.  See Cal. Dept. of Toxic Substances Control v. Commercial Realty Projects, Inc., 309 F.3d 1113, 1119 (9th Cir. 2002); see also Alisal Water Corp., 370 F.3d at 923.  That is all the more true if Omni 808 uses its intervention as an excuse to object to, litigate over or interfere with the work of the forensic auditor, Ronald Durkin.  Mr. Durkin is now weeks into his task, and disruption of that work would be unquestionably prejudicial. Furthermore, "intervention can impose substantial costs on the parties and the judiciary, not only by making the litigation more cumbersome but also (and more important) by blocking settlement."  Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers, 101 F. 3d 503, 507-508 (7th Cir. 1996). Permitting Omni 808 to intervene would empower it to control any resolution of this suit.  That would be an extravagant and expensive proposition, for obvious reason, given the nature of this litigation and especially if Omni 808 is a related party to MGA and Larian.

While intervention would prejudice Mattel, denying Omni 808's application would not bar Omni 808 from seeking traditional remedies if MGA were to default on its obligations to Omni 808 or from responding to an OSC relating to the appointment of a receiver.  See Alisal Water Corp., 370 F.3d at 923 (noting that "to the extent relevant, the prejudice to [intervenor] from being denied intervention is ameliorated by the fact that the district court did not bar [it] from enforcing its judgment against [defendant]").

## II.    THE COURT SHOULD DENY PERMISSIVE INTERVENTION

To qualify for permissive intervention, Omni 808 must show that:  (1) there is an "independent ground for jurisdiction [over the proposed intervenor's claims]; (2) the motion is timely;[32] and (3) the applicant's claim or defense and the main action have a question of law or fact in common."  Greene v. U.S., 996 F.2d 973, 978 (9th Cir. 1993); Fed. R. Civ. Proc. 24(b)(1)(B).[33]   Whether to grant permissive intervention rests entirely in the discretion of the Court.  Donnelly v. Glickman, 159 F.3d 405, 412 (9th Cir. 1998) (citing Orange v. Air Cal., 799 F.2d 535, 539 (9th Cir. 1986) ("Permissive intervention is committed to the broad discretion of the district court.") (other citations omitted).

Omni 808 alleges that "there are common questions of law and fact between Omni 808's claims and the issues raised in Mattel's application to appoint a receiver."  (App. at 11:3-5)  However, Omni 808 provides no factual support for

---

[32]   Omni makes no showing that there is an "independent ground for jurisdiction" over any claims it may allege in this action; nor that its motion is timely as required by Rule 24(b)(1).  For the reasons stated above, Omni's motion is not timely and should be denied on that basis alone.  See supra I.A.

[33]   Omni incorrectly cites to Rule 24(b)(2).  Rule 24(b)(2) provides that "the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order requirement, or agreement issued or made under the statute or executive order."  Fed. R. Civ. Proc. Rule 24(b)(2).  Omni, by its own description—"a special purpose entity"—is neither a federal or state governmental officer or agency, nor does it purport to be.  (App. at 2).

this conclusory statement.  Omni 808 does not identify a single common question of law or fact, much less a claim.  Omni 808's suggestion that common questions of law and fact exist simply by virtue of Omni 808's creditor status is incorrect.  <u>See</u> <u>Southern California Edison Co. v. Lynch</u>, 307 F.3d 794, 803-804 (9th Cir. 2002) ("the Proposed Intervenors' concerns as to whether SoCal Edison would repay them are sufficiently different from the issues in the underlying action so as to not meet this factor of the test for permissive intervention").  As discussed above, a creditor's mere argument that the litigation may impair its ability to be repaid by the debtor does not justify intervention.  <u>Alisal Water Corp.</u>, 370 F.3d at 920; <u>see also</u> <u>Daugherty</u>, 2007 WL 2701311, at *1.[34]

Even if Omni 808 could show "common questions of law and fact"—which it cannot—the court should exercise its discretion to deny permissive intervention.[35] "[I]f there is another adequate remedy available to protect the intervenor's rights, this may persuade the court to deny leave to intervene."  Wright & Miller, Fed. Prac. & Proc. § 1913.[36]   Moreover, courts deny requests for intervention when "the

---

[34]   California cases also recognize that a creditor's mere claim that the litigation may impair its ability to be repaid by the debtor does not justify permissive intervention.  <u>Cf.</u> <u>California Physicians' Service v. Superior Court</u>, 102 Cal.App.3d 91, 95-96, 162 Cal.Rptr. 266, 269 (1980) ("One cardinal rule which is established by the cases is that an intervener's interest must be more direct and immediate than that of a simple creditor of one of the parties.") (citation omitted).

[35]   Omni cites to <u>Kootenai Tribe v. Veneman</u>, 313 F.3d 1094, 1108-1109 (9th Cir. 2002), for the proposition that the "existence of a 'common question' is liberally construed."  <u>Kootenai</u> does not stand for this proposition, but rather states that a common question of law or fact is required to satisfy <u>Rule</u> 24(b).  <u>Kootenai</u>, 313 F.3d at 1108-09 (quoting Wright & Miller, Fed. Prac. & Proc. §1911, 357-63 (2d ed. 1986).  However, even if there is a common question of law or fact, the court still has discretion to deny intervention.  <u>Id.</u>

[36]   "If the trial court determines that the initial conditions for permissive intervention under rule 24(b)(1) or 24(b)(2) are met, it is then entitled to consider other factors in making its discretionary decision on the issue of permissive intervention. These relevant factors include the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to

(footnote continued)

intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. Proc. Rule 24(b)(3). "Additional parties always take additional time that may result in delay and that thus may support the denial of intervention." Wright & Miller, Fed. Prac. & Proc. § 1913 (citing S.E.C. v. TLC Investments and Trade Co., 147 F. Supp. 2d 1031 (D.C. Cal. 2001)) (additional citations omitted).

Though Omni 808 makes its application under the pretense that it only seeks to intervene as to the receivership issue, Omni 808 explicitly leaves open the possibility that its intervention will relate to "*all other issues* related to Omni's status as a secured creditor of MGA." (App. at 11:14-15)(emphasis added). Omni 808's sweeping definition conceivably means that Omni 808 intends to litigate every issue that may arise in this case—past, present and future. This will undoubtedly prejudice Mattel, create unnecessary issues, delay proceedings, create confusion as to who is acting on behalf of MGA, and complicate matters in what the Court has already recognized is a "complicated case."[37] Moreover, the addition of another party at this stage in the litigation would further complicate and perhaps destroy the possibility of settlement. Solid Waste, 101 F. 3d at 507-508 ("intervention can impose substantial costs on the parties and the judiciary, not only by making the litigation more cumbersome but also (and more important) by blocking settlement.").

---

the merits of the case. The court may also consider whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." Spangler v. Pasadena City Bd. of Ed., 552 F.2d 1326, 1329 (9th Cir. 1977) (citations omitted). Each of these factors supports denial of Omni 808's application.

[37] See e.g., Court's Order, dated January 12, 2009, at 2, Zeller Dec. Exh. 21.

1

## <u>Conclusion</u>

2          The Court should deny Omni 808's application to intervene.   In the

3   alternative, in the event that the Court is not inclined to deny the application

4   outright, Mattel requests that the Court postpone ruling on the application until

5   Mattel has had the opportunity to take discovery as to the circumstances surrounding

6   Omni 808, Vision Capital, Lexington and the Wachovia-Omni transaction, including

7   the true ultimate owners and the true source of funds.

8

9   DATED:  February 5, 2009          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP

10

11                                   By /s/Michael T. Zeller
                                       Michael T. Zeller
12                                     Attorneys for Mattel, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28