QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**[PUBLIC REDACTED]<br>DECLARATION OF MICHAEL T.<br>ZELLER IN SUPPORT OF<br>MATTEL, INC.'S OPPOSITION TO<br>OMNI 808'S EX PARTE<br>APPLICATION TO INTERVENE**<br><br>Hearing Date: February 11, 2009<br>Time: 10:00 a.m.<br>Courtroom: 1<br><br>**Phase 1C**<br>Discovery Cut-off: Not Set<br>Pre-trial Conference: Not Set<br>Trial Date Not Set |

07209/2786092.1

ZELLER DEC. ISO MATTEL'S OPPOSITION TO APPLICATION TO INTERVENE

## DECLARATION OF MICHAEL T. ZELLER

I, Michael T. Zeller, declare as follows:

1. I am a member of the bars of the State of California, New York and Illinois and am a partner with Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently hereto.

2. Omni 808 Investors, LLC was formed on August 12, 2008, which was after the Phase 1A verdict in this case and while the Phase 1B damages trial was still on-going. A true and correct copy of Omni 808 Investors, LLC's Certificate of Status and Articles of Organization is attached hereto as Exhibit 1.

3. Vision Capital, LLC was formed on August 19, 2008, which also was after the Phase 1A verdict in this case and while Phase 1B damages trial was still on-going. A true and correct copy of Vision Capital, LLC's Certificate of Formation is attached hereto as Exhibit 2. As set forth below, Vision Capital, LLC appears to own and have funded Omni 808 Investors, LLC. An off-shore entity named Lexington Financial Limited appears, in turn, to own and have funded Vision Capital, LLC.

4. Leon Neman is a Larian family member. He is the brother-in-law of Isaac Larian and the brother of Angela Larian, who is Isaac Larian's wife. He also has served as an MGA director. Attached as Exhibit 3 hereto is a true and correct copy of excerpts from the sworn arbitration testimony of Isaac Larian in the Larian v. Larian matter so stating. Attached as Exhibit 4 hereto is a true and correct copy of excerpts from the deposition of Farhad Larian in this litigation so stating as well.

5. Attached as Exhibit 5 hereto is a true and correct copy of UCC Financing Statement 08-7170410109. In that statement, Vision Capital, LLC's California address is given as 1525 South Broadway in Los Angeles.

-1-
ZELLER DEC. ISO MATTEL'S OPPOSITION TO APPLICATION TO INTERVENE

6. As set forth in the concurrently filed declaration of David Antolin, when Mattel attempted to serve a subpoena on Vision Capital, LLC at its claimed 1525 South Broadway address, the process server discovered that the building was occupied by a company named Neman Brothers & Associates and was told by the receptionist that she had never heard of Vision Capital. Both deed and tax records further confirm that the owner of 1525 South Broadway in Los Angeles is Neman Brothers & Associates. Attached as Exhibit 6 hereto is a true and correct copy of a State of California Deed for 1525 South Broadway in Los Angeles reflecting that Neman Brothers & Associates -- "attn: Leon Neman" -- is the grantee of the property. Attached as Exhibit 7 hereto is a true and correct copy of a 2009 tax record reflecting Neman Brothers & Associates as the taxpayer on the 1525 South Broadway property.

7. The owner and operator of Neman Brothers & Associates is Leon Neman, who as noted above is Isaac Larian's brother-in-law and brother of Isaac Larian's wife Angela Larian. Attached as Exhibit 8 hereto is a true and correct copy of a U.S. Business Finder record from Westlaw reflecting that Leon Neman is the owner of that entity. Attached as Exhibit 9 hereto is a true and correct copy of a printout from the website of the State of California additionally reflecting Leon Neman's association with Neman Brothers & Associates. See also Exhibit 6 hereto (identifying Leon Neman by name in the Neman Brothers & Associates deed for 1525 South Broadway).

8. UCC Financing Statement 08-7170410109 (Ex. 5) reflects that Vision Capital, LLC purports to own "right, title and interest in membership interests of Omni 808 Investors, LLC," and that Lexington Financial Limited, a Nevis Corporation, in turn purports to own Vision Capital, LLC's claimed interest in Omni 808 Investors, LLC.

9. That UCC Financing Statement (Ex. 5) also identifies 33-35 Daws Lane, London, NW7 4SD, as the purported business address of Lexington

Financial Limited. That is the address of a company called "Officefront," which appears to be company that provides a virtual office--mail, fax and phone reception--starting at £10 per month. A true and correct copy of the Officefront webpage <http://officefront.co.uk/>, as accessed on December 28, 2008, is attached as Exhibit 10. The jurisdiction in which Lexington Financial Limited was formed, the Caribbean island of Nevis, promotes itself as providing entities registered there with "excellent privacy". See "Offshore-Based Limited Liability Company (LLC)" by Sovereign Management & Legal, S.A. (available at www.offshore-protection.com/nevisLLC.html), a true and correct copy of which is attached as Exhibit 11.

10.   UCC Financing Statement 08-7170410109 (Ex. 5) was filed by Fred Mashian, an attorney with offices on Sunset Boulevard in Los Angeles, on the alleged behalf of Lexington Financial Limited. Not only are the California offices of Vision Capital, LLC actually the offices of Leon Neman as shown above, but Mr. Mashian is a long-standing associate of Leon Neman's as well.

11.   For example, Fred Mashian is listed as the registered agent for numerous Leon Neman entities going back several years, including, for example, 85 Harvest Moon, LLC; Imperial Real Estate Holdings L.P.; Vertigo Real Estate Holdings L.P.; Joshua Paradise Holdings, LLC; and Rock-Hill Holdings, LLC. True and correct hard copy printouts of corporate records reflecting these associations between Leon Neman and Fred Mashian are attached hereto as Exhibit 12.

12.   Imperial Real Estate Holdings L.P., Vertigo Real Estate Holdings L.P. and Joshua Paradise Holdings, LLC, owned by Leon Neman and for which Fred Mashian is the registered agent, all also give their address as 1525 South Broadway in Los Angeles -- the same California address of Vision Capital, LLC. See Exhs. 5 and 12. Furthermore, Rock-Hill Holdings, LLC., owned by Leon Neman and for which Fred Mashian is the registered agent, gives its address as 800

Delaware Ave., Wilmington, DE -- the same Delaware address as Vision Capital, LLC. See Exhs. 2 and 12.

13. Although Mattel's investigation is still continuing, and despite MGA's failures and refusals to provide discovery into the matter, there is reason to believe that there also may be familial ties between Fred Mashian and the Nemans and/or the Larians. Yoel Neman is an executive at Neman Brothers & Associates. Attached hereto as Exhibit 13 is a true and correct copy of a printout from a Westlaw informational database reflecting this. On information and belief, Yoel Neman is the brother of Leon Neman and Angela Larian and therefore the brother-in-law of Isaac Larian. Yoel Neman's wife is Monia Neman, whose home address is the same as the same as Yoel Neman's. Attached hereto as Exhibit 14 is a true and correct copy of a printout from a Westlaw informational database so reflecting. Monia Neman has given her business address as 1525 South Broadway in Los Angeles. Attached hereto as Exhibit 15 is a true and correct printout of UCC filing 0014560274 so reflecting. As Exhibit 16 reflects, Monia Neman is also known as Monia Mashian, which on information and belief is her maiden name.

14. Mattel uncovered through investigation the documents and facts set forth in paragraphs 2 through 3 and 5 through 13, inclusive, above. MGA, Larian, Omni 808, Vision Capital and Lexington Financial disclosed none of it.

15. Neil Kadisha purports to be the CEO of Omni 808 Investors, LLC. Attached as Exhibit 17 hereto is a true and correct copy of the Statement of Decision of the Los Angeles Superior Court in In re Uzyel Irrevocable Trust, dated October 24, 2006, No. BP 058 898. In that action, Neil Kadisha was found liable for taking millions of dollars as part of a 12-year-long pattern of fraudulent conduct that included perjury, fabrication of financial records, sham transactions, preparation of back-dated documents, fraudulent accountings, acts of looting, embezzlement and other misappropriations of funds, breaches of fiduciary duty, conflicts of interest and illegal self-dealing. Thus, for example, the Los Angeles Superior Court found:

- "Kadisha was heavily involved in two corporations (Omninet Corporation and Qualcomm) that were in dire need of millions of dollars to stave off impending bankruptcies. He took and used trust assets for his own financial interests (much of which was tied to the two failing corporations)..." In re Uzyel Irrevocable Trust, October 24, 2006, at 2:13-16.
- "Kadisha prepared accountings to cover up, mislead and deceive..." Id. at 2:22-23.
- "Kadisha believed it to be prudent strategy to commit perjury..." Id. at 4:17-18.
- "Kadisha was no more than a common thief in his monumental takings of ... money for his own use and benefit." Id. at 13:19-20.
- "Kadisha's first act as Trustee was to misappropriate $500,000..." Id. at 14:13-14.
- "At this time, Kadisha had stripped Trust 2 of virtually all of its cash..." Id. at 38:27-28.
- "In discovery, under penalty of perjury, Kadisha gave six different and untrue accounts of what he did with the Namco Loan proceeds." Id. at 41:23-24.
- "The creation of the Rahban 'loans' was simply part of Kadisha's pattern of creating phony transactions..." Id. at 50-51 n.12.
- "Kadisha created a phony, backdated sale to conceal..." Id. at 62:24-25.
- "Kadisha's Trust Accountings Were Fraudulent, Misleading, and Inaccurate and Concealed his Wrongdoings." Id. at 71:7-8.
- Kadisha "misappropriat[ed]" loan proceeds, trust property and trust funds. Id. at 102:1-20.

- "The court finds beyond any doubt that the acquisition of the subject 30,000 shares of Qualcomm was enable by Kadisha embezzlement of practically all the subject Namco loan proceeds." Id. at 111:24-27.
- "[T]he trust agreements are the product of fraud by the respondent [Kadisha]." Id. at 112:12-23.
- "The loan was a conflicted transaction that breached [Kadisha's] fiduciary duties..." Id. at 117:19.
- "[P]ractically everything Kadisha did in so-called management of the Trusts was done by embezzlement of trust money for his own interests and without regard to any of his obligations as trustee..." Id. at 118:22-24.
- "Kadisha, being guilty of perjury among other misdeeds..." Id. at 120:1-2.
- "Kadisha was self-dealing" and "concocted a phony loan of $1,400,000..." Id. at 121:14-18.
- "Kadisha's misappropriation of millions of dollars of trust money from 1988 to 1996 were not loans made at an adequate interest rate or with adequate security, as Kadisha contends. Kadisha embezzled the funds in flagrant violation of his fiduciary duties." Id. at 126:16-18.
- Kadisha "intentionally retailiat[ed]" against petitioners "for suing him." Id. at 141:27-28.
- "In considering Kadisha's conduct, the total pattern of Kadisha's conduct comes into play. His malice, fraud, recidivism, and reprehensibility may be singular. The evidence of his overall conduct over the 12 years of his trusteeship establishes by clear and convincing evidence that none of his acts were innocent or an accident..." Id. at 152:17-20.
- "Kadisha misappropriated substantially all of the Trust's assets for his own use to bolster his shaky finances and the shaky finances of

- businesses in which he was heavily invested, including Omninet and Qualcomm." Id. at 153:2-6.
- "Kadisha did not engage in an isolated act of misconduct -- he repeatedly, systematically and intentionally engaged in conduct that he knew was prohibited to him as a trustee." Id. at 155:13-14.
- "He [Kadisha] intentionally and consistently violated his fiduciary duties. He looted the Trusts. ... He concealed his wrongdoings with fraudulent accountings, backdated promissory notes and phony transactions." Id. at 156:1-5.
- "[A]s another example of his fraud, Kadisha stole money from the Trusts under the guise of making loans to David Rahban, whom the Court has found to be a non-existent person in the claimed loan transaction." Id. at 156:8-11.
- "Kadisha's malice and/or fraud also includes ... his intentional self-dealing with trust assets, ... his backdating of promissory notes and creating backdated, phony transactions; his misappropriations of over $10 million of the Trusts' cash without adequate security or even the most minimal documentation". Id. at 156:16-157:1.
- "Kadisha set the course of his entire trusteeship on the impermissible taking of Trust assets, false accountings, back-dating of notes and the many other intentional breaches of trust hereinbefore set forth." Id. at 157:14-17.
- "While it may be repetitive, Kadisha didn't borrow Trust funds -- he embezzled them, millions of dollars of them. ... He backdated notes in an effort to cover up his wrongful takings. He intentionally and carelessly caused accountings to be prepared that were deliberately designed to deceive and did deceive". Id. at 158:23-28.

- "He [Kadisha] backdated promissory notes prepared after he repaid the misappropriations and knew that he had to conceal the fact that they were backdated, as demonstrated by his untruthful testimony at his deposition about the preparation and execution of the notes." Id. at 166:18-20.
- "He [Kadisha] intentionally designed his accountings to conceal his misappropriations." Id. at 166:22.
- "But one of the most important things that Kadisha knew, which relates to his opposition to each of Petitioners' claims as well as his affirmative defenses, is that he would have to give false testimony and suborn perjury to prevent his wrongdoings from being discovered by the Court." Id. at 168:1-5.
- "Kadisha perjured and suborned perjury at trial." Id. at 169:22.

16. Attached hereto as Exhibit 18 is a true and correct copy of a letter from Registrar Clevelan Williams, dated December 12, 2008.

17. Attached hereto as Exhibit 19 is a true and correct copy of MGA Parties' Corrections to the Opposition to Mattel, Inc.'s Ex Parte Application for Appointment of a Receiver, dated December 25, 2008.

18. Attached hereto as Exhibit 20 is a true and correct copy of Exhibit A to the UCC Financing Statement No. 06-7090318014.

19. Attached hereto as Exhibit 21 is a true and correct copy of the Court's Order, dated January 12, 2009.

20. Attached hereto as Exhibit 22 is a true and correct copy of the Declaration of Brian Wing in Support of MGA's Correction to the Opposition to Mattel's Ex Parte Application for Receiver, dated December 31, 2008.

21. Attached hereto as Exhibit 23 is a true and correct copy of Mattel's Motion to Compel, dated February 3, 2009. MGA is also obstructing Mattel's ability to obtain documents from these entities.

-9-

1  I declare under penalty of perjury under the laws of the United States of
2  America that the foregoing is true and correct.
3  Executed on February 5, 2009, at Los Angeles, California.

Michael T. Zeller

Page

Intentionally

Left

Blank