1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2   johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

7   Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)
                                         Consolidated with
12              Plaintiff,               Case No. CV 04-09039
                                         Case No. CV 05-02727
13       vs.
                                         **DISCOVERY MATTER**
14  MATTEL, INC., a Delaware
    corporation,                         **[To Be Heard By Discovery Master
15                                       Robert C. O'Brien Pursuant To
                Defendant.               Order Of January 6, 2009]**
16
                                         [PUBLIC REDACTED] MATTEL,
17  AND CONSOLIDATED ACTIONS             INC.'S NOTICE OF MOTION AND
                                         MOTION TO COMPEL
18                                       DEPOSITIONS OF PABLO VARGAS
                                         AND MARIANA TRUEBA;
19                                       AND REQUEST FOR SANCTIONS;

20                                       MEMORANDUM OF POINTS AND
                                         AUTHORITIES
21
                                         [Declaration of Michael T. Zeller filed
22                                       concurrently]

23                                       Hearing Date:    TBD
                                         Time:            TBD
24                                       Place:           TBD

25                                       **Phase 2**
                                         Discovery Cutoff:    Not Set
26                                       Pre-trial Conference: Not Set
                                         Trial:               Not Set
27

28

07209/2790983.1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at a hearing before Discovery Master Robert C. O'Brien that will occur on a date and at a time to be determined by the Discovery Master, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court for an order overruling objections to the deposition notices of Pablo Vargas San Jose and Mariana Trueba Almada, both officers and/or managing agents of counter-defendant MGAE de Mexico, compelling them to appear for deposition in Los Angeles, California within 10 business days and imposing monetary sanctions on MGA Entertainment, Inc. and MGA de Mexico for their obstructionism in refusing to produce them.

This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 26, 30 and 37(a)(4) on the grounds Pablo Vargas San Jose and Mariana Trueba Almada are officers, directors or managing agents of counter-defendant MGAE de Mexico, and although Mattel has duly noticed the depositions of Mr. Vargas and Ms. Trueba on two separate occasions Mr. Vargas and Ms. Trueba refused to appear for depositions without justification.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and the Declaration of Michael T. Zeller filed concurrently herewith, and all other matters of which the Court may take judicial notice.

### Statement of Rule 37-1 Compliance

The parties met and conferred regarding this motion on January 27, 2009 and thereafter.

DATED:  February 6, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Jon D. Corey
   Jon D. Corey
   Attorneys for Mattel, Inc.

1

## **TABLE OF CONTENTS**

2                                                                              **Page**

3

4    PRELIMINARY STATEMENT ................................................................1

5    FACTUAL BACKGROUND.................................................................2

6    ARGUMENT....................................................................................11

7    I.    THE COURT SHOULD COMPEL VARGAS AND TRUEBA TO
         APPEAR FOR DEPOSITION IN LOS ANGELES ........................11

8          A.    Vargas And Trueba Are Managing Agents Of MGA Mexico..............11

9

10         B.    The Depositions Should Take Place In Los Angeles............................13

11   II.   THE COURT SHOULD SANCTION THE MGA PARTIES FOR
         OBSTRUCTIONIST TACTICS .................................................16

12   CONCLUSION.................................................................................17

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Afram Export Corp. v. Metallurgiki Halyps, S.A.,
772 F.2d 1358 (7th Cir. 1985) ............................................................... 15

Braley v. Campbell,
832 F.2d 1504 (10th Cir. 1987) ............................................................. 16

Cadent Ltd. v. 3m Unitek Corporation,
232 F.R.D. 625 (C.D. Cal. 2005)............................................... 11, 14, 15

Custom Form Mfg. v. Omron Corp.,
196 F.R.D. 333 (N.D. Ind. 2000)........................................................... 15

Delphi Automotive Systems LLC v. Shinwa International Holdings Ltd.,
2008 WL 2906765 (S.D. Ind. July 23, 2008) ........................................ 14

Founding Church of Scientology of Washington, D.C. v. Webster,
802 F.2d 1448 (D.C. Cir. 1986)............................................................. 12

In re Honda American Motor Co.,
168 F.R.D. 535 (D. Md. 1996) .............................................................. 12

Hyde & Drath v. Baker,
24 F.3d 1162 (9th Cir. 1994) ................................................................ 16

Mediatek, Inc. v. Sanyo Electronic Co. Ltd.,
2006 WL 5709449 (E.D. Tex. August 9, 2006) .................................... 14

New Medium Techs. LLC v. Barco N.V.,
242 F.R.D. 460 (N.D. Ill. 2007) ...................................................... 14, 15

RTC v. Dabney,
73 F.3d 262 (10th Cir. 1995) ................................................................ 16

Reed Paper Co. v. Procter & Gamble Distributing Co.,
144 F.R.D. 2 (D. Me. 1992) .................................................................. 12

Rubio v. General Tire and Rubber Co.,
18 F.R.D. 51 (S.D.N.Y. 1955)............................................................... 12

Salve Regina College v. Russell,
499 U.S. 225 (1991)............................................................................... 16

South Seas Catamaran, Inc. v. Motor Vessel "Leeway"
120 F.R.D. 17 (D.N.J. 1988) ................................................................. 16

Sugarhill Records Ltd. v. Motown Record Corp.,
105 F.R.D. 166 (S.D.N.Y. 1985)........................................................... 12

## **Statutes**

28 U.S.C. § 1927 ................................................................................................ 16

Fed. R. Civ. P. 37(a)(4) ...................................................................................... 16

Fed. R. Civ. P. 26(c)(2) ...................................................................................... 14

Fed. R. Civ. P. 30 ............................................................................................... 11

Fed. R. Civ. P. 30(b)(1) ...................................................................................... 11

## **Other Authorities**

Schwarzer, Tashima & Wagstaffe,
  California Practice Guide: Fed. Civil Procedure Before Trial,
  §§ 11:1419, 11:2226 (2005) ........................................................................... 11

07209/2790983.1

MATTEL. INC.'S MOTION TO COMPEL DEPOSITIONS OF PABLO VARGAS AND MARIANA TRUEBA

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Pablo Vargas San Jose ("Vargas") and Mariana Trueba Almada ("Trueba") are key witnesses in this case and are specified, by name, in Mattel's claims as high-level MGA Mexico managers who stole Mattel trade secrets. Vargas is the Director of Sales for MGA Mexico. Trueba is its Director of Marketing. Both are former managers of Mattel in Mexico who, along with another former Mattel manager and named defendant, Carlos Gustavo Machado Gomez ("Machado"), were recruited by MGA and Isaac Larian in 2004 to establish and run MGA's new Mexico operation. Before leaving Mattel, the three stole virtually every type of document that MGA would need to enter into the market in Mexico and to compete with Mattel worldwide, including the US and Mexico. When Mexican criminal authorities executed a search warrant at MGA's offices in Mexico City in October 2005, they found and seized scores of documents containing Mattel's trade secrets.

Mattel first noticed the depositions of Vargas and Trueba more than a year ago. MGA initially promised to produce them, but then delayed, and the Court subsequently stayed Phase 2 discovery. Now, with the stay of Phase 2 having been lifted, the MGA Parties refuse to produce Vargas or Trueba, claiming that neither the Director of Sales nor the Director of Marketing is a "managing agent" and that Mattel is required to subpoena them in Mexico. But there can be no serious dispute that Vargas and Trueba exercise judgment and discretion in carrying out their duties. Indeed, MGA's CEO, Isaac Larian, has admitted that he hired them to "███████ ███." As persons involved in founding and managing the day-to-day operations of the company, they can also be expected to identify with the interests of MGA Mexico and to carry out MGA Mexico's direction to give testimony in this action. Moreover, the law requires that any doubt at this stage of the proceedings regarding their status as managing agents be resolved in Mattel's favor. Defendant MGA

1  Mexico is obligated to produce Vargas and Trueba to appear for deposition pursuant
2  to Mattel's deposition notices.

3  　　　　This is not the first time defendants have sought to obstruct Mattel from
4  taking key depositions in this case, even of the most obvious witnesses.  It took two
5  Court Orders and an award of sanctions before Isaac Larian deigned to appear for
6  deposition.  Three Court Orders were required for a <u>Rule</u> 30(b)(6) deposition of
7  MGA, even though in the second Order the former Discovery Master had described
8  MGA's discovery misconduct as "flagrant" and "egregious."  The deposition of Mr.
9  Machado, also a named defendant, was delayed for well over a year and did not
10 occur until the Court ordered his deposition to proceed.  Indeed, the MGA Parties
11 have produced no significant witness for deposition in this case until compelled to
12 do so by Court Order—and even then it has often required multiple Court Orders to
13 obtain compliance.  This pattern should be brought to an end, and Mattel should not
14 have to wait any longer to take the depositions of Vargas and Trueba.  The Court
15 should order them to appear for deposition without further delay in Los Angeles as
16 noticed and should impose sanctions on the MGA Parties for their obstructionism in
17 refusing to produce them.

18

19 　　　　　　　　　　　　**Factual Background**

20 　　　　<u>Mattel's allegations of trade secret theft by Vargas and Trueba</u>.  Vargas
21 and Trueba are former senior-level employees of Mattel's Mexican subsidiary
22 ("Mattel Mexico").  Vargas was the Senior Marketing Manager, Boys Division, for
23 Mattel Mexico and Trueba was the Senior Marketing Manager, Girls Division, for
24 Mattel Mexico.[1]  On April 19, 2004, Vargas, Trueba and another senior-level

25

26

27 　　　[1]　　Mattel, Inc.'s Second Amended Answer and Counterclaims (public redacted
   version; exhibits omitted), dated July 12, 2007, ¶¶ 39-40, attached to the Declaration
28 of Michael T. Zeller dated February 6, 2009 ("Zeller Dec.") as Exh. 1.

employee of Mattel Mexico, Carlos Gustavo Machado Gomez ("Machado"), each resigned their positions with Mattel, effective immediately. They stated that they had been hired by a Mattel competitor, but refused to identify that competitor. In fact, they had been hired by MGA to form and run MGA's new operation in Mexico.[2]

Following their resignations, Mattel discovered that Vargas, Trueba and Machado had been in frequent telephonic and e-mail contact with MGA personnel, including Isaac Larian, MGA's CEO, for at least three months prior to their resignation. The primary vehicle for these communications was an America Online e-mail account with the address <plot04@aol.com>.[3] By at least March 3, 2004, Machado, Trueba and Vargas were discussing with MGA personnel, including Larian, specific details regarding setting up MGA offices in Mexico City and establishing MGA's new Mexico subsidiary.[4] Long before they left, all three began copying and collecting trade secret an d proprietary Mattel documents to portable USB storage devices connected to their Mattel computers.[5] With full knowledge that she was going to leave Mattel for MGA, Trueba also took steps to increase her access to Mattel's trade secret information shortly before her resignation. For example, just four days before leaving, Trueba went out of her way to attend a meeting at which Mattel personnel analyzed BARBIE programs for the United States, Canada and Latin America. Two days before her resignation, she contacted a Mattel employee in El Segundo and Mattel's advertising agency to request updated trade secret information about advertising plans for BARBIE.[6]

---

[2]   Id. at ¶ 41.
[3]   Id. at ¶ 42.
[4]   Id.
[5]   Id. at ¶¶ 44-46.
[6]   Id. at ¶ 47.

When he left, Machado attempted to damage the hard drive on his assigned computer to conceal his theft.[7]

Vargas, Trueba and Machado stole virtually every type of document a competitor would need to enter the Mexican market and to unlawfully compete with Mattel in Mexico, in the United States, and elsewhere.[8]   Mattel has alleged in its claims that MGA and Larian enticed Vargas, Trueba and Machado to steal Mattel's confidential and proprietary information and that they provided the information to MGA and Larian both before and after their resignations from Mattel.[9]   On October 27, 2005, the Mexican Attorney General's Office obtained a search warrant from the Mexican Federal Criminal Courts for MGA's offices in Mexico City.  In that search, Mexican authorities found and seized from MGA's offices both paper and electronic copies of a large number of documents containing Mattel's trade secrets.[10]

Vargas, Trueba and Machado form MGA Mexico.  Immediately after resigning from Mattel, Vargas and Trueba started with MGA Mexico; Vargas as Director of Sales and Trueba as Director of Marketing, Girls Division.[11]   Larian admits that he recruited Vargas and Trueba, along with Machado, ███████████ ██████████████████████████████."[12]   Larian personally extended written employment contracts to Vargas, Trueba and Machado,[13] referred to them in

---

[7]   Id. at ¶ 51.
[8]   Id. at 48-49.
[9]   Id. at ¶ 37, 42-43 and 47.
[10]   Id. at ¶ 53.
[11]   Employment contract for Mariana Trueba Almada, dated April 14, 2004, Zeller Dec. Exh. 2; Employment contract for Pablo Vargas, dated April 14, 2004, Zeller Dec. Exh. 3; Employment contract for Gustavo Machado, dated April 14, 2004, Zeller Dec. Exh. 4.
[12]   Declaration of Isaac Larian, dated April 11, 2007, ¶ 3, Zeller Dec.. Exh. 5.
[13]   Offer Letter from MGAE de Mexico to Pablo Vargas, dated March 30, 2004, Zeller Dec., Exh. 6; Offer Letter from MGAE de Mexico to Mariana Trueba Almada, dated March 30, 2004, Zeller Dec., Exh. 7.

internal correspondence as the people who "███████████████"[14] and compensated them commensurately.[15]   Vargas manages 8 to 9 employees who report directly to him as Director of Sales.[16]   Among other things, he approves sales of inventory,[17] negotiates transactions and enters into agreements on the company's behalf.[18]   As Director of Marketing, Trueba's responsibilities include all media and public relations.[19]   According to MGA Mexico's Vice President, Susanna Kuemmerle, all of MGA Mexico's day-to-day operations are managed in Mexico by a small group of director-level employees, including the Director of Sales (Vargas) and Director of Marketing (Trueba).[20]   Indeed, MGA Mexico's management team is "████████████" that Kuemmerle, Trueba, Vargas and Machado are "█████████"[21]   For example, the four of them set the prices for MGA Mexico's products through "██████████████."[22]

> *Vargas and Trueba fail to appear for deposition in January 2008.*   On January 10, 2008, Mattel served deposition notices setting the depositions of Vargas

---

[14]   E-mail from Isaac Larian to Nancy Koppang, dated April 11, 2004, Zeller Dec., Exh. 8.

[15]   Vargas and Trueba each received substantial six-figure salaries (in US dollars), annual bonuses based on a percentage of MGA Mexico sales, annual Christmas bonuses equal to one month's salary, a $27,000 car allowance, a guaranteed severance payment of $40,000 and other lucrative benefits, Zeller Dec. Exhs. 2 & 3.   These far exceeded the salaries they earned at Mattel.

[16]   Deposition of Susana Kuemmerle, dated January 28, 2008 ("Kuemmerle Tr.") at 97:5-15, Zeller Dec., Exh. 9.

[17]   Email from Isaac Larian to Brad Schneider, dated August 30, 2006, Zeller Dec., Exh. 10.

[18]   Email from Pablo Vargas to Isaac Larian, dated May 13, 2004 at MGA 0181077, Zeller Dec., Exh. 11.

[19]   Kuemmerle Tr. at 97:14-15, Zeller Dec., Exh. 9.

[20]   Declaration of Susana Kuemmerle, dated February 27, 2007, ¶ 6, attached to Zeller Dec., Exh. 12.   Notably, Ms. Kuemmerle herself resides in New Jersey, not Mexico. Kummerle Tr. at 22:18-19, Zeller Dec., Exh. 9.

[21]   Kuemmerle Tr. at 135:8-136:5, Zeller Dec., Exh. 9.

[22]   Kuemmerle Tr. at 91:8-14, Zeller Dec., Exh. 9.

07209/2790983.1

1    and Trueba for January 24, 2008.[23]  Neither witness appeared.  The MGA Parties
2    contended that neither the "Director of Marketing" nor the "Director of Sales" is a
3    "managing agent."[24]  Even though they have never provided an address for Vargas
4    or Trueba and have consistently represented that they can be contacted through
5    MGA's counsel of record,[25] the MGA Parties now maintained that Mattel was
6    required to personally serve Vargas and Trueba with deposition subpoenas in
7    Mexico.[26]  On January 28, 2008, Mattel filed an <u>ex parte</u> application to compel the
8    depositions of Vargas, Trueba and others.[27]  Mattel's application was stayed with
9    other Phase 2 discovery,[28] then denied without prejudice by a September 23, 2008
10   order in which the Court denied all pending motions without prejudice for its
11   convenience.[29]

12           <u>Vargas and Trueba fail to appear for deposition in January 2009.</u>  The
13   Court lifted the Phase 2 discovery stay on January 6, 2009.  Thereafter, on January
14   9, 2009, Mattel re-noticed the depositions of Vargas and Trueba for January 27 and
15   28, 2009, respectively.[30]  On January 22, 2009, Jason Russell, of the Skadden firm,
16   represented to Mr. Zeller, counsel for Mattel, that Monday, January 26, 2009, MGA

---

19   [23] Zeller Dec., Exh. 13.
20   [24] E-mail correspondence between Michael T. Zeller and MGA's counsel at
     Skadden Arps, dated January 13, 2008, Zeller Dec., Exh. 14.
21   [25] MGA Entertainment, Inc.'s Supplemental Disclosures and MGA
22   Entertainment (HK) Limited, MGAE de Mexico S.R.L. De C.V., and Isaac Larian's
     Initial Disclosures Under Rule 26(a)(1), dated September 21, 2007 at 15, Zeller
23   Dec., Exh. 59.
24   [26] E-mail correspondence between Michael T. Zeller and MGA's counsel at
     Skadden Arps, dated January 14-18, 2008, Zeller Dec., Exh. 15.
25   [27] Mattel's, Inc.'s Ex Parte Application to Compel Depositions, dated January 28,
26   2008, Zeller Dec., ¶ 16.
     [28] Court's Order, dated February 4, 2008 at 3, Zeller Dec., Exh. 17.
27   [29] Court's Order, dated September 23, 2008, Zeller Dec., Exh. 18.
28   [30] Zeller Dec., Exh. 19.

1   would provide firm dates for the depositions of Vargas and Trueba.[31]  MGA failed
2   to provide dates for deposition as promised.[32]   Instead, another MGA lawyer,
3   Amman Khan of the Glaser Weil firm, even before receiving the Court's Order
4   allowing Glaser Weil to associate in, reversed the MGA Parties' position. At 11:40
5   p.m. on January 28, 2009, the day after Vargas' deposition was to occur and after the
6   close of business on the day Trueba's deposition was noticed, Mr. Khan served
7   objections to the Vargas and Trueba deposition notices.  The MGA Parties, objected
8   on the alleged grounds that neither was an officer, director or managing agent of
9   MGA Mexico and argued that Mattel would have to serve them with deposition
10  subpoenas in Mexico.[33]   In subsequent meet and confer d iscussions, t he MGA
11  Parties' co-counsel stood on these untimely objections to refuse to make Vargas and
12  Trueba available for deposition.[34]

13          Defendants' attempts to obstruct other key depositions. This is not the
14  MGA Parties' first use of obstructionist tactics.   Defendants have stonewalled
15  Mattel's efforts to obtain the depositions of every key witness in the case, without
16  exception. Carter Bryant evaded deposition for over four months.[35]  At one point, to
17  avoid a motion to compel, Bryant's counsel even gave their "word as attorneys" that
18  he would sit for deposition on a date certain in August 2004, only to unilaterally
19  renege at the last minute.[36]  Even after that, it took two Court orders compelling

20

21      [31]    Zeller Dec., ¶ 21.  Mr. Russell also agreed to provide a firm date for the
22  deposition of Shirin Salemnia, but that was not provided either.  Instead, as with
    Vargas and Trueba, MGA refused to provide a firm date for her deposition.  That
23  deposition is not part of this motion but may be raised by a separate motion if
24  appropriate.
        [32]    Zeller Dec., ¶ 21.
25      [33]    Zeller Dec., Exhs. 20 & 21.
26      [34]    Correspondence between Jon D. Corey and Amman A. Khan, dated January
    27 through February 2, 2009, Zeller Dec., Exh. 22.
27      [35]    Zeller Dec. ¶¶28-40, Exhs. 26-38.
28      [36]    Zeller Dec. ¶¶ 30- 32, Exhs. 29 & 30.

-7-

1    Bryant's deposition before he finally appeared.[37]   Similarly, Isaac Larian—MGA's
2    CEO and a named defendant—refused to be deposed.  It took two Court Orders and
3    the imposition of sanctions before Mr. Larian appeared for deposition.[38]  MGA also
4    had to be compelled three times to produce witnesses in response to a Mattel Rule
5    30(b)(6) notice of deposition.[39]  In the Discovery Master's second Order compelling
6    an MGA witness to appear, he specifically found that "the violation was particularly
7    egregious" and that "MGA's clear and flagrant violation of a court order warrant[ed]
8    sanctions."[40]

9          Consistent with this pattern, the MGA Parties delayed producing many
10   other key witnesses.  Although Mattel first filed suit in April 2004, defendants had
11   produced no witnesses other than Bryant and Larian for deposition as of January
12   2007 (and, even as to them, had to be compelled by multiple Court Orders).  MGA
13   did not produce Paula Garcia, the project manager of Bratz since the brand's
14   inception, until after Mattel moved to compel her deposition.[41]  After designating
15   Garcia on more than 20 topics and improperly instructing her not answer questions

16

17

18   _____

          [37]   Zeller Dec. ¶¶ 36-38, Exhs. 34-36.
19        [38]   Court's Order, dated March 23, 2005, Zeller Dec., Exh. 23; Court's Civil
20   Minutes of June 16, 2006, ordering Mr. Larian to appear for deposition, Zeller Dec.,
     Exh. 23.
21        [39]   See Order Granting in Part and Denying in Part Mattel's Motion to Enforce
22   Court's Discovery Orders and To Compel; To Overrule Purportedly Improper
     Instructions; and For Sanctions, dated January 8, 2008, Zeller Dec., Exh. 41; Order
23   Granting in Part Mattel's Motion to Enforce the Court's Order of May 16, 2007, to
24   Compel MGA to Produce Witnesses for Deposition Pursuant to Rule 30(b)(6), and
     Granting Request for Sanctions, dated August 14, 2007, Zeller Dec., Exh. 42; Order
25   Compelling MGA to Produce Rule 30(b)(6) Witnesses, dated May 16, 2007, Zeller
26   Dec., Exh. 43.
          [40]   Court's Order, dated August 14, 2007 at 9:15-22, Zeller Dec., Exh. 42.
27        [41]   See Discovery Master Order Granting Mattel's Motion to Compel Witnesses,
28   dated May 16, 2007, Zeller Dec., Exh. 43.

1   on numerous others, MGA refused to produce Garcia for additional time until
2   compelled a second time.[42]

3         MGA and Carlos Gustavo Machado Gomez—a named defendant—also
4   repeatedly delayed scheduling Machado's deposition until compelled by the Court.[43]
5   Mattel began seeking deposition dates from Machado on June 4, 2007.   On
6   September 3, 2007, James Spertus, counsel for Machado, confirmed that October
7   26, 2007 was an "acceptable date" for Machado's deposition.[44]   The next day Mattel
8   served a deposition notice that confirmed the parties' agreement.[45]   Counsel for
9   MGA and Bryant also agreed to the October 26, 2007 deposition.[46]   When Mr.
10  Spertus withdrew as Machado's counsel,[47] his new counsel, Alexander Cote,
11  contacted Mattel to discuss, among other things, Machado's pending deposition.[48]
12  He confirmed that Machado would be made available for deposition, but said that he

13
14
15
16

---

17  [42]   See Discovery Master's Order Granting Mattel's Motion for Extension of Time to Depose Paula Garcia, dated August 14, 2007, Zeller Dec., Exh. 42.
18  [43]   See Court's Order Granting Mattel's Motion to Compel the Deposition of Carlos Gustavo Machado, dated September 2, 2008, Zeller Dec., Exh. 44.
19  [44]   See Letter from James Spertus to Jon Corey, dated September 3, 2007, Zeller
20  Dec., Exh. 46.
21  [45]   See Notice of Deposition of Carlos Gustavo Machado, dated September 4, 2007, Zeller Dec., Exh. 47; Email from Corey to Michael Page, Amman Khan and
22  Diana Torres attaching document that listed Machado under a heading of "Witnesses
23  Whose Dates Have Been Agreed Upon And Set After Meet and Confers Requested By Mattel," and stating that Machado's deposition was set for October 26, 2007,
24  Zeller Dec., Exh. 48.
25  [46]   See Letter from Jon D. Corey to Amman Khan, dated September 25, 2007, Zeller Dec., Exh. 49.
26  [47]   See Order On Request for Approval of Substitution of Attorney, dated October 2, 2007, Zeller Dec., Exh. 50.
27  [48]   See e-mail message from Alexander Cote to Dylan Proctor, dated October 5,
28  2007, Zeller Dec., Exh. 51.

1   would need to "update [Mattel] on Machado's availability for his deposition as
2   [counsel] get[s] more information."[49]

3          After months of additional delay,[50] Machado's counsel offered to make
4   him available for deposition in Mexico City on January 15, 2008.[51]  On January 7,
5   2008, the Court granted Mattel leave to take Mr. Machado's deposition relating to
6   Mattel's trade secret and RICO claims.[52]  Based on counsel's representation that the
7   deposition would go forward, Mattel agreed on January 11, 2008 to continue the
8   hearing on Mattel's Motion to Compel (1) the Deposition of Carlos Gustavo
9   Machado Gomez; and (2) Consent to Production of Electronic Mail Messages,
10  which the Discovery Master had set for hearing on January 16, 2008.[53]  However,
11  the very next morning, the MGA Parties unilaterally cancelled Mr. Machado's
12  deposition claiming that counsel for the MGA Parties was not available.[54]  Before
13  Machado's deposition was re-scheduled, the Court stayed Phase 2 discovery.[55]
14  Thus, Machado's deposition did not take place until October 14, 2008 – more than a
15  year after Mattel had first sought dates from Machado's counsel.

16
17
18

_____

19  [49]   See id.
20  [50]   See Mattel's Motion to Compel re Machado, dated November 15, 2007, at
    5:3-7:2, Zeller Dec., Exh. 52.
21  [51]   Email for Alexander Cote to Dylan Proctor, dated December 6, 2007, Zeller
22  Dec., Exh. 53.
23  [52]   See Mattel's Motion for Leave to Take Additional Discovery and Objections
    to Discovery Master Order of September 28, 2007, dated November 19, 2007 at 12-
24  14. Zeller Dec., Exh. 54; Court's Minute Order, dated January 7, 2008, Zeller Dec.,
    Exh. 55.
25  [53]   See Second Supplemental Declaration of Jon D. Corey in Support of Mattel,
26  Inc.'s Motion to Compel Deposition of Carlos Gustavo Machado Gomez ¶¶ 5 & 7,
    Zeller Dec., Exh. 56.
27  [54]   Id.
28  [55]   See Court's Civil Minutes, dated February 4, 2008, Zeller Dec., Exh. 17.

-10-

1

**Argument**

2  **I.**    **THE COURT SHOULD COMPEL VARGAS AND TRUEBA TO**

3        **APPEAR FOR DEPOSITION IN LOS ANGELES**

4        **A.**    **Vargas And Trueba Are Managing Agents Of MGA Mexico**

5               Pursuant to Rule 30(b)(1) of the Federal Rules of Civil Procedure, a

6  notice of deposition is sufficient to compel the deposition of an officer, director or

7  managing agent of a corporate party.  It is not necessary to subpoena such an

8  individual.  See Cadent Ltd. v. 3m Unitek Corporation, 232 F.R.D. 625, 628 (C.D.

9  Cal. 2005) ("It is well recognized that 'if the corporation is a *party, the notice*

10  *compels it to produce* any officer, director or managing agent named in the

11  deposition notice.  It is not necessary to subpoena such individual.  The corporation

12  risks *sanctions*—including default or dismissal—if the designated individual fails to

13  appear.'") (quoting Schwarzer, Tashima & Wagstaffe, California Practice Guide:

14  Fed. Civil Procedure Before Trial, §§ 11:1419, 11:2226 (2005)) (emphasis in

15  original).

16               As the MGA Parties have acknowledged,[56] the courts use a three-prong

17  test to determine who is a "managing agent" for the purposes of Rule 30:

18               First, the employee should be "a person invested by the
corporation with general powers to exercise his judgment

19               and discretion dealing with corporate matters.

20               Second, the employee should be a person who "could be
depended upon to carry out his employer's direction to

21               give testimony at the demand of a party engaged in
litigation with the employer."

22

23               Third, the employee should be a person who can be
expected to identify himself with the interest of the

24               corporation rather than with those of the other parties.

25

26

27  [56]  See MGA's and Carter Bryant's Opposition to Mattel's Ex Parte Applications
to Compel Additional Depositions, dated January 30, 2008, Zeller Dec., Exh. 57 at

28  15.

1   Reed Paper Co. v. Procter & Gamble Distributing Co., 144 F.R.D. 2, 4 (D. Me.
2   1992) (quoting Rubio v. General Tire and Rubber Co., 18 F.R.D. 51, 56 (S.D.N.Y.
3   1955)) (citing cases).  Of the three factors, "[t]he 'paramount test' is whether the
4   individual can be expected to identify with corporation's interest as opposed to an
5   adversary's."   In re Honda American Motor Co., 168 F.R.D. 535, 541 (D. Md.
6   1996).

7          Any "doubt[s] about an individual's status as a 'managing agent,' at the
8   pre-trial discovery stage, are resolved in favor of the examining party.  Id. at 540,
9   (citing Founding Church of Scientology of Washington, D.C. v. Webster, 802 F.2d
10  1448, 1452 n.4 (D.C. Cir. 1986)); Sugarhill Records Ltd. v. Motown Record Corp.,
11  105 F.R.D. 166, 171 (S.D.N.Y. 1985) ("I am to resolve close questions regarding the
12  status of an employee as 'managing agent' in favor of the examining party since the
13  issue of whether the witness' testimony can be used as a statement by the defendant
14  still remains to be resolved at trial.") (citing cases).

15         Vargas and Trueba are "managing agents" of MGA Mexico.  The MGA
16  Parties cannot seriously dispute that they exercise judgment and discretion in
17  dealing with MGA Mexico matters.  Larian admits that he recruited them to found
18  the sales and marketing operations of MGA Mexico and that, together with
19  Machado, they "                    ."  Vargas is the Director of Sales and manages 8
20  to 9 employees who report directly to him.[57]  Among other things, he approves sales,
21  negotiates transactions and enters into agreements on the company's behalf.[58]
22  Trueba is the Director of Marketing, Girls Division and her responsibilities include
23
24

---

25   [57]   Deposition of Susana Kuemmerle, dated January 28, 2008 ("Kuemmerle Tr.")
26  at 97:5-15, Zeller Dec., Exh. 9.
27   [58]   Email from Isaac Larian to Brad Schneider, dated August 30, 2006, Zeller
    Dec., Exh. 10; Email from Pablo Vargas to Isaac Larian, dated May 13, 2004 at
28  MGA 0181077, Zeller Dec., Exh. 11.

1  all media and public relations.[59]   Along with Kuemmerle and Machado, they are
2  responsible for setting the prices of MGA's products in Mexico.[60]

3        As part of a "███" group that founded and manages the day-to-day
4  operations of MGA Mexico, Vargas and Trueba can also be expected to identify
5  with the interests of the company.  Moreover, Vargas and Trueba are alleged to have
6  acted in concert with the MGA Parties in plotting to steal and stealing Mattel's trade
7  secrets in Mexico.  This further supports the conclusion that they can be expected to
8  identify with the interests of MGA Mexico rather than with those of Mattel and
9  depended upon to carry out their employer's direction to give testimony upon its
10  demand.  Indeed, the MGA Parties themselves have identified Vargas and Trueba as
11  witnesses who "may possess knowledge of facts in support of MGA's defenses to
12  Mattel's RICO and trade secret counterclaims" and who are to be contacted through
13  MGA's counsel of record.[61]

14        At this stage of the proceedings, any doubt as to the status of Vargas
15  and Trueba as managing agents of MGA Mexico should be resolved in Mattel's
16  favor.  Mattel has twice duly noticed their depositions.  The Court should compel
17  them to appear.

18      **B.**    **The Depositions Should Take Place In Los Angeles**

19        Vargas and Trueba's status as managing agents of a party to the lawsuit
20  also disposes of the MGA Parties' claim that Mattel must take their depositions in
21  Mexico.

---

[59]  Kuemmerle Tr. at 97:14-15, Zeller Dec., Exh. 9.
[60]  Kuemmerle Tr. at 91:8-14, Zeller Dec., Exh. 9.
[61]  MGA Entertainment, Inc.'s Supplemental Disclosures and MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. De C.V., and Isaac Larian's Initial Disclosures Under Rule 26(a)(1), dated September 21, 2007 at 15, Zeller Dec., Exh. 59.

1            "A party may unilaterally choose the place for deposing the opposing
2    party, subject to the granting of a protective order by the Court pursuant to Rule
3    26(c)(2)." Cadent, 232 F.R.D. at 628; see also Delphi Automotive Systems LLC v.
4    Shinwa International Holdings Ltd., 2008 WL 2906765, *1 (S.D. Ind. July 23,
5    2008).     Where the opposing party is a corporation, its officers, directors and
6    managing agents are treated "opposing parties" for purposes of this analysis.  See
7    Cadent, 232 F.R.D. at 628; Delphi, 2008 WL 2906765 at *3.  Vargas and Trueba
8    were properly noticed for deposition in this District and should be compelled to
9    appear.

10            Nor should Mattel be required to take the depositions in Mexico as the
11    MGA Parties contend.  While the determination as to the location of a deposition is
12    "ultimately an exercise in the vast discretion a district court has in supervising
13    discovery," New Medium Techs. LLC v. Barco N.V., 242 F.R.D. 460, 462 (N.D. Ill.
14    2007), courts consider a number of factors in making this determination.  These
15    include the location of counsel for the parties, the likelihood of discovery disputes
16    arising which would necessitate resolution by the forum court, whether the persons
17    to be deposed often engage in travel for business purposes, and the equities with
18    regard to the nature of the claim and the parties' relationship.  Cadent, 232 F.R.D. at
19    629.  Accordingly, "corporate defendants are frequently deposed in places other than
20    the principal place of business, especially in the forum where the action is pending."
21    Id.  Mr. Machado, also an employee of MGA Mexico, traveled to Los Angeles to be
22    deposed.

23            Each of these factors weighs in favor of holding the deposition in Los
24    Angeles where they were noticed.  First, counsel for all parties, including MGA
25    Mexico, are located in Los Angeles.  See Mediatek, Inc. v. Sanyo Electronic Co.
26    Ltd., 2006 WL 5709449 (E.D. Tex. August 9, 2006) (ordering depositions of
27    Japanese corporate defendant to take place in California and noting that "it would be
28    much easier for those witnesses to travel to California for deposition than for the

-14-

1 gaggle of attorneys on both sides to travel to Japan").[62]  Second, discovery disputes
2 are far from uncommon in this case; requiring the depositions to take place in
3 Mexico would compromise the Court's ability to resolve such disputes.  See Custom
4 Form Mfg. v. Omron Corp., 196 F.R.D. 333, 336-37 (N.D. Ind. 2000) (if
5 depositions take place in Japan, "this court's authority to intervene, should it become
6 necessary, is compromised"); New Medium, 242 F.R.D. at 467 (ordering
7 depositions of Japanese corporate defendant to take place in Chicago where action
8 was pending and noting that "an antecedent history of contentiousness is a sufficient
9 . . . basis on which to require a deposition in a locale where judicial supervision will
10 be available").  Third, MGA itself is located in this District and Vargas and Trueba
11 travel here for business.[63]  Indeed, they both traveled here while still employed by
12 Mattel to meet in person with Isaac Larian.[64]  They can hardly be heard to complain
13 about traveling here now for their depositions, particularly when MGA has
14 identified them as witnesses and MGA itself has asserted claims in this case.  The
15 equities regarding the nature of the claims also weighs in favor of a Los Angeles
16 location; Mattel is located in this District and suffered the effects of Vargas and
17 Trueba's theft of its trade secrets here.

18           MGA Mexico bears the burden of showing that it will suffer prejudice
19 or undue burden if the depositions of Vargas and Trueba are held in Los Angeles
20 where they were noticed.  Cadent, 232 F.R.D. at 629.  It cannot meet its burden.  Id.
21 (ordering officers and managing agents of corporation who resided in Israel and
22 New Jersey to appear for deposition in Los Angeles where noticed); see also Afram

---

24  [62]  Taking the depositions in Mexico would require travel not only by counsel for all the parties, but also by a court reporter and videographer.
25  [63]  Kuemmerle Tr. at 62:19-21, 63:13-25, Zeller Dec., Exh. 9; Deposition of
26 Isaac Larian, dated March 26, 2008 at 335:20-25, 338:2-12 ("Larian Tr."), Zeller Dec., Exh. 58.
27  [64]  Kuemmerle Tr. at 62:16-63:25, Zeller Dec., Exh. 9; Larian Tr. at 335:17-25,
28 Zeller Dec., Exh. 58.

1  *Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1365 (7th Cir. 1985)
2  (affirming district court's order that Greek corporation's president be deposed in the
3  United States where corporation made no showing of hardship) abrogated on other
4  grounds, *Salve Regina College v. Russell*, 499 U.S. 225, 235-240 (1991); *South*
5  *Seas Catamaran, Inc. v. Motor Vessel "Leeway"*, 120 F.R.D. 17, 21 n.5 (D.N.J.
6  1988) ("courts have often required corporate defendants to produce their officers or
7  agents for depositions at locations other than the corporation's principal place of
8  business where there has been no showing that the defendant will suffer any
9  resulting financial hardship.").

10

11  **II.  THE COURT SHOULD SANCTION THE MGA PARTIES FOR**
12      **OBSTRUCTIONIST TACTICS**

13         Under the *Federal Rules*, a party bringing a motion to compel is entitled
14  to "the movant's reasonable expenses incurred in making the motion, including
15  attorney's fees," unless "(i) the movant filed the motion before attempting in good
16  faith to obtain the disclosure or discovery without court action; (ii) the opposing
17  party's nondisclosure, response, or objection was substantially justified; or (iii) other
18  circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(4). *Fed. R.*
19  *Civ. P.* 37(a)(4). The burden of establishing substantial justification is on the party
20  being sanctioned. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994).
21  Independently, sanctions may be imposed under 28 U.S.C. § 1927, which provides
22  that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably
23  and vexatiously may be required by the court to satisfy personally the excess costs,
24  expenses, and attorneys' fees reasonably incurred because of such conduct."
25  Sanctions under this section are appropriate "for conduct that, viewed objectively,
26  manifests either intentional or reckless disregard of the attorney's duties to the
27  court." *RTC v. Dabney*, 73 F.3d 262, 265 (10th Cir. 1995), citing *Braley v.*
28  *Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987).

1    Sanctions are called for here.  Mattel has duly noticed the depositions
2  of Vargas and Trueba.  MGA and MGA Mexico agreed to provide dates only to
3  later renege and claim that Mattel must serve them with subpoenas in Mexico.
4  There is no justification for the MGA Parties' conduct.  Rather, it is part of a pattern
5  of conduct designed to obstruct Mattel from taking the deposition of every key
6  witness in this case.  The Court should sanction MGA and MGA Mexico for
7  requiring Mattel to bring a motion to compel the depositions who should have been
8  produced more than a year ago and to deter repetition of the MGA Parties' practice
9  of groundless objections and forcing motion practice over virtually every deposition
10  in this case. Mattel requests that MGA and MGA Mexico and its counsel be ordered
11  to pay $5,000 as partial reimbursement for the fees Mattel has incurred on this
12  Motion.

13

14                              **Conclusion**

15    For the foregoing reasons, Mattel respectfully requests that its motion
16  be granted in its entirety.

17

18  DATED: February 6, 2009          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES. LLP
19

20
                                     By /s/ Jon D. Corey
21                                      Jon D. Corey
                                        Attorneys for Mattel. Inc.
22

23

24

25

26

27

28

07209/2790983.1

-17-