# Exhibit 44

**CONFORMED COPY**

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:   (415) 774-2611
4  Facsimile:   (415) 982-5287

5

6

7

8

9

10

11  CARTER BRYANT, an individual,

12          Plaintiff,

13      v.

14  MATTEL, INC., a Delaware corporation,

15          Defendant.

16

17

18  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
19  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
20

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CASE NO. C 04-09049 SGL (RNBx)
JAMS Reference No. 1100049530

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**ORDER GRANTING MATTEL'S MOTION FOR AN EXTENSION OF TIME TO DEPOSE PAULA GARCIA IN HER INDIVIDUAL CAPACITY AND AS A 30(b)(6) DESIGNEE; DENYING REQUEST FOR SANCTIONS**

21

22                    I. INTRODUCTION

23      On June 15, 2007, Mattel, Inc. ("Mattel") submitted its "Motion To Enforce The Court's

24  Order To Compel, And For Sanctions." Specifically, Mattel moves (1) to enforce the Discovery

25  Master's May 16, 2007 Order Granting Mattel's Motion to Compel MGA to Produce Witnesses

26  for Deposition Pursuant to Rule 30(b)(6) by compelling MGA Entertainment, Inc. ("MGA") to

27  produce Paula Garcia for further deposition testimony, or in the alternative, by granting leave for

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 19
PAGE 438

1   additional time to depose Ms. Garcia on the topics set forth in Mattel's Rule 30(b)(6) notices[1];

2   (2) to compel Ms. Garcia to answer the questions MGA's counsel instructed her not to answer

3   during her deposition; and (3) for sanctions against MGA in the amount of $5,315. MGA

4   submitted an opposition on June 25, 2007; and Mattel submitted a reply on June 29, 2007. The

5   motion was heard on August 13. Having considered the motion papers and the comments of

6   counsel, Mattel's motion for additional time to depose Ms. Garcia is granted, and the request for

7   sanctions is denied.

## II. BACKGROUND

9       In February of 2005 Mattel served a notice of deposition of MGA pursuant to Rule

10  30(b)(6), Fed.R.Civ.P. (the "First Notice"). The parties met and conferred, and by May of 2005

11  MGA named Ms. Garcia as one of the witnesses who would testify on six of the eight topics in

12  the First Notice. Ms. Garcia has been MGA's product manager for Bratz since the product's

13  inception at MGA, and is, in Mattel's view, one of the most important witnesses in its case.

14      The action was stayed from mid-May of 2005 to mid-May of 2006. Thereafter, Mattel

15  renewed its attempts to schedule a 30(b)(6) deposition. In a telephonic conference with the

16  Discovery Master, MGA represented that it would provide Mattel with dates for the deposition.

17  In January of 2007, Mattel was able to depose one of MGA's designees on the First Notice, but

18  not Ms. Garcia due to her unavailability. For the next couple of months, Mattel continued its

19  efforts to schedule Ms. Garcia's deposition without success.

20      In the interim, in February of 2007, Mattel served its Second Notice of Deposition of

21  MGA pursuant to Rule 30(b)(6), Fed.R.Civ.P. (the "Second Notice"). The parties met and

22  conferred, and MGA identified designees for some but not all of the forty-six topics in the

23  Second Notice.

24      After a couple of months had passed without any witnesses being produced for deposition

25  pursuant to the First and Second Notices, Mattel brought a motion to compel. On May 16, 2007,

26  _____

27  [1] Mattel does not specify in its motion papers how much additional time it seeks.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 43

PAGE 439

1  the Discovery Master granted Mattel's motion to compel and ordered MGA to, *inter alia*, (1)

2  produce Ms. Garcia for deposition on or before June 15, 2007, in her individual capacity and as a

3  designee on Topics 1-3 and 6-8 of Mattel's First Notice; and (2) make its designees available for

4  deposition for all Topics except Nos. 25 and 26 in Mattel's Second Notice on or before June 30,

5  2007 (the "Order").[2]  This is the Order that is the subject of Mattel's motion.

6       After the Court's Order, MGA confirmed Ms. Garcia's designation on the following

7  Topics in Mattel's Second Notice: Topic Nos. 1-8, 9 (to the extent not covered by previously

8  designated testimony), 10, 12, 13 (with respect to manufacturers only), 16 (to the extent not

9  covered by designated portions of Isaac Larian's and Carter Bryant's depositions), 17, 29, 30, 35,

10  and 36. MGA offered to produce Ms. Garcia for her deposition on May 24 and 25, 2007, or else

11  not until the end of June. Mattel accepted the May 24 and 25 dates. The parties agreed that the

12  this deposition would cover Bryant-related issues, and that they would make separate

13  arrangements to depose Ms. Garcia on the unfair competition, trade secrets and RICO issues in

14  the <u>MGA v. Mattel</u> and <u>Mattel v. MGA</u> suits. Zeller Decl., Ex. 10; <u>see also</u> MGA's Opposition

15  at p.6, n. 19.

16       Two days before Ms. Garcia's deposition, MGA produced approximately 7,600 pages of

17  documents. MGA's counsel, Diana Torres, advised Mattel that MGA was willing to defer her

18  deposition in light of the document production. Ms. Torres also informed Mattel that by

19  proceeding with the deposition as scheduled, Mattel was "choosing to do so at the risk that later

20  discovery (including the [7,600 pages of documents] may be relevant to her deposition and will

21  not be entitled to call her back for that reason."[3]  Zeller Decl., Ex. 10. Mattel's counsel

22

23       [2]  During the hearing, the undersigned stated that he did not think the seven-hour limitation on depositions
     applied to Rule 30(b)(6) depositions, but also commented that it did not make sense to be focusing on such a
24  "theoretical" issue, as Ms. Garcia had not yet been deposed. Zeller Decl., Ex. 8. Mattel's assertion that the
     Discovery Master "ruled" on this issue is erroneous.
25
       [3]  As stated previously, the parties have an agreement, however, that MGA will make Ms. Garcia available
26  for a separate deposition on the unfair competition, trade secrets and RICO issues in the <u>MGA v. Mattel</u> and <u>Mattel</u>
     <u>v. MGA</u> cases. Zeller Decl., Ex. 10; <u>see also</u> MGA's Opposition at p.6, n. 19.
27

28

1  responded by accusing MGA of delaying its document production for tactical reasons. Mattel's

2  counsel also advised MGA that it was proceeding with Ms. Garcia's deposition as scheduled,

3  and furthermore, that it did not believe it was "waiving" its rights to obtain further discovery

4  regarding the 7,600 pages of documents.

5       Mattel began the deposition of Ms. Garcia in her individual and corporate capacity on

6  Thursday, May 24, 2007. The next day, MGA's counsel offered to delay the deposition from

7  Friday, May 25, 2007, to Tuesday, May 29, 2007, in light of the recent document production.

8  Mattel's counsel rejected the offer because Mattel did not want to delay Ms. Garcia's deposition

9  any further and because Mattel was prepared to question Ms. Garcia about other documents

10 already produced in the case.

11      Mattel deposed Ms. Garcia for a total of 14 hours and 18 minutes. Mattel asked MGA to

12 produce Ms. Garcia for at least one more day of deposition, however, MGA refused unless

13 Mattel agreed not to "revisit" topics that had already been covered. Mattel's Motion at p.3.

14 MGA also indicated that even if it were to produce Ms. Garcia for further questioning, it would

15 probably not agree to produce her for an additional full day.

16      Mattel seeks additional time to depose Ms. Garcia. Mattel contends that 14 hours and 18

17 minutes was not enough time to cover the 24 topics on which Ms. Garcia was designated, much

18 less to cover Ms. Garcia's personal knowledge of facts central to Mattel's claims against Bryant.

19 According to Mattel, the Discovery Master has ruled that the 7-hour rule does not apply to Rule

20 30(b)(6) depositions, and that MGA's refusal to produce Ms. Garcia for further questioning

21 violates the Order.

22      Even if the 7-hour rule applies, Mattel contends that there is good cause to extend the

23 deposition of Ms. Garcia for a number of reasons. First, Mattel contends that the deposition

24 progressed slowly because Ms. Garcia regularly asked for questions to be repeated or rephrased

25 and often took long pauses before answering. Mattel also contends that there were lengthy

26 breaks, after which Ms. Garcia returned with clarifications of her prior testimony that required

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 44

PAGE 441

4

1   further questioning.  Mattel also contends that Ms. Garcia was not prepared to answer questions

2   regarding personnel involved in the early phases of the Bratz project.

3         Second, Mattel contends that MGA's counsel improperly instructed Ms. Garcia not to

4   answer questions regarding facts she ostensibly learned from counsel.  Third, Mattel contends

5   that MGA's counsel improperly instructed Ms. Garcia not to answer questions about MGA

6   Mexico.  Mattel admits that the parties had an agreement to limit the scope of Ms. Garcia's

7   deposition to Bryant-related issues; however, Mattel believes that this agreement did not bar

8   questions about MGA Mexico's contacts with the United States in light of MGA's then-pending

9   motion to dismiss MGA Mexico for lack of personal jurisdiction.[4]

10        Fourth, Mattel contends that it should be permitted to resume the deposition of Ms.

11  Garcia because just two days prior to the deposition, MGA produced approximately 7,600 pages

12  of documents, the bulk of which have Ms. Garcia's name on them and relate to the 2000 and

13  2001 time period.  Mattel contends that MGA had no legitimate basis for withholding the

14  documents.  Mattel also contends that the production was incomplete insofar as it did not include

15  documents that the Discovery Master ordered MGA to produce.  Lastly, Mattel contends that it

16  should be given more time to depose Ms. Garcia because MGA has demanded more deposition

17  time for witnesses on topics that are far less central to this litigation.

18        MGA opposes the motion on numerous grounds.  As a preliminary matter, MGA accuses

19  Mattel of using 30(b)(6) depositions as a means to circumvent the district court's order limiting

20  the number of depositions to be taken by each side.  At present, the parties are limited to 24

21  depositions per side for the entire consolidated action, including both individual and 30(b)(6)

22  depositions.  In MGA's view, Mattel is using 30(b)(6) depositions with excessive numbers of

23  topics to avoid noticing witnesses to testify in their individual capacity.  MGA further contends

24  that Rule 30(b)(6) depositions are indeed limited to one seven-hour day, and furthermore, that

25

26        [4]   The district court has since denied MGA's motion to dismiss MGA Mexico.

27

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

EXHIBIT 44
PAGE 442
5

1  the district court must have intended the limit to apply when he restricted each side to 24

2  depositions.

3       Next MGA contends that Ms. Garcia was deposed on time and in compliance with the

4  Order. According to MGA, Ms. Garcia testified at length about the early development of Bratz,

5  the persons involved in that development process, as well as the other topics for which she had

6  been designated.  MGA acknowledges that Ms. Garcia could not recall the names of some of the

7  individuals involved in Bratz; however, MGA believes Mattel could have remedied the situation

8  by simply showing Ms. Garcia documents to refresh her recollection rather than treating the

9  deposition as a memory test.

10       MGA denies engaging in any delay tactics or other forms of obstruction during the

11  deposition.  According to MGA, Ms. Garcia requested to have questions rephrased when she did

12  not understand the question.  MGA also contends that pauses are appropriate to allow counsel to

13  interject any necessary objections.  Furthermore, MGA contends that it properly instructed Ms.

14  Garcia not to answer only when necessary to preserve the attorney-client privilege.  MGA also

15  defends its instructions not to answer questions about MGA Mexico because those questions

16  exceeded the agreed upon scope of the deposition.  The parties agreed that Ms. Garcia would be

17  made available for one deposition regarding Bryant-related matters and a separate deposition

18  regarding Mattel's counterclaims.  MGA considers questions regarding MGA Mexico as

19  irrelevant to Bryant-related matters, and relevant only to Mattel's counterclaims.

20       In MGA's view, Mattel, not MGA is to blame for not completing Ms. Garcia's

21  deposition.  MGA asserts that Mattel wasted time by questioning Ms. Garcia on topics not

22  relevant to the litigation, including her addresses for the past year, whether she had any

23  roommates during that time and who they were, and her cell phone bills.

24       MGA also contends that Mattel caused the document production delay by insisting that

25  MGA produce all color documents in a different electronic format than previously requested.

26  Furthermore, MGA contends that it made multiple offers to postpone the deposition to allow

27

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

EXHIBIT 44

PAGE 443

6

1   Mattel additional time to review the document production.   MGA contends that Mattel chose to

2   move forward with the deposition, and therefore Mattel "has no basis for asserting that MGA's

3   document production was an attempt to prevent Mattel from deposing Ms. Garcia on the topics

4   for which she was designated nor that it had any impact on Mattel's ability to do so." MGA's

5   Opposition, p.6.

6       Lastly, MGA contends Mattel filed the instant motion without meeting and conferring in

7   good faith. MGA points out that during the meet and confer process, it agreed to produce Ms.

8   Garcia for additional time without the need to resort to motion practice. More specifically, MGA

9   is prepared to make Ms. Garcia available for an additional four hours, provided that any further

10  questioning "does not revisit already questioned areas of inquiry." MGA's Opposition at p.3.

11                              III. STANDARDS

12      Rule 30(d) of the Federal Rules of Civil Procedure provides the following with respect to

13  the schedule and duration of depositions:

14      (1) Any objection during a deposition must be stated concisely and in a non-
        argumentative and non-suggestive manner. A person may instruct a deponent
15      not to answer only when necessary to preserve a privilege, to enforce a limitation
        directed by the court, or to present a motion under Rule (d)(4).
16
        (2) Unless otherwise authorized by the court or stipulated by the parties, a
17      deposition is limited to one day of seven hours. The court must allow additional
        time consistent with Rule 26(b)(2) if needed for a fair examination of the
18      deponent or if the deponent or another person, or other circumstance, impedes or
        delays the examination.
19
        (3) If the court finds that any impediment, delay, or other conduct has
20      frustrated the fair examination of the deponent, it may impose upon the persons
        responsible an appropriate sanction, including the reasonable costs and attorney's
21      fees incurred by any parties as a result thereof.

22

23  The Advisory Committee Notes for Rule 30(d)(2) provide the following guidelines for

24  compliance:

25      Paragraph (2) imposes a presumptive durational limitation of one day of seven
        hours for any deposition. The Committee has been informed that the overlong
26      depositions can result in undue costs and delays in some circumstances. This
        limitation contemplates that there will be reasonable breaks during the day for
27      lunch and other reasons, and that the only time to be counted is the time occupied

28

by the actual deposition.  For purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition.  The presumptive duration may be extended, or otherwise altered, by agreement.  Absent agreement, a court order is needed.  The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order.

Parties considering extending the time for deposition – and courts asked to order an extension – might consider a variety of factors.  For example, if the witness needs an interpreter, that may prolong the examination.  If the examination would cover events occurring over a long period of time, that may justify allowing additional time. . . .

It is expected that in most instances the parties and the witness will make reasonable accommodations to avoid the need for resort to the court.  The limitation is phrased in terms of a single day on the assumption that ordinarily a single day would be preferable to a deposition extending over multiple days; if alternative arrangements would better suit the parties, they may agree to them.  It is also assumed that there will be reasonable breaks during the day.  Preoccupation with timing is to be avoided.

The rule directs the court to allow additional time where consistent with Rule 26(b)(2) if needed for a fair examination of the deponent.  In addition, if the deponent or another person impedes or delays the examination, the court must authorize extra time.  The amendment makes clear that additional time should also be allowed where the examination is impeded by an "other circumstance," which might include a power outage, a health emergency, or other event.

\*    \*    \*

Paragraph (3) includes sanctions provisions formerly included in paragraph (2).  It authorizes the court to impose an appropriate sanction on any person responsible for an impediment that frustrated the fair examination of the deponent.  This could include the deponent, any party, or any other person involved in the deposition.  If the impediment or delay results from an "other circumstance" under paragraph (2), ordinarily no sanction would be appropriate.

See Advisory Committee Notes on the 2000 Amendments to Fed.R.Civ.P. 30(d).

## IV. DISCUSSION

### A.  There Is Good Cause For An Extension Of Time To Depose Ms. Garcia

As a preliminary matter, MGA is in compliance with the Order insofar as it has produced Ms. Garcia for deposition in her individual and corporate capacity by the June 30th deadline.[5]  Therefore, Mattel's motion, although styled as motion to compel compliance with

---

[5]  Mattel, however, has filed a separate motion to compel compliance with other portions of the Order.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 44
PAGE 445

8

1   the Order, is treated herein as motion for additional time to complete the deposition of Ms.

2   Garcia pursuant to Rule 30(d)(2), Fed.R.Civ.P.

3        Applying the standards above, Mattel has demonstrated the requisite good cause to

4   warrant an extension of the "presumptive" 7-hour time limit for depositions. Ms. Garcia is,

5   without question, one of the most important witnesses in this case. She has been the product

6   manager for Bratz since the product's inception at MGA. Therefore, she has considerable

7   knowledge regarding the timing and origins of Bratz, Bryant's involvement with MGA, and the

8   development of Bratz. Ms. Garcia was the first person at MGA with whom Bryant spoke. Ms.

9   Garcia was present when Bryant first presented the idea of Bratz to Mr. Larian. Ms. Garcia also

10  met with Bryant and Margaret Leahy to discuss doll sculpting at a time when Bryant was still

11  employed at Mattel. In addition, another witness, Steve Linker, testified that Ms. Garcia

12  contacted him in September of 2000 to create packaging for Bratz and gave him art boards and

13  illustrations in October of 2000. Ms. Garcia was also involved in naming the Bratz characters.

14       Furthermore, MGA has designated Ms. Garcia on numerous topics. MGA designated

15  Ms. Garcia to testify regarding Topics 1-3 and 6-8 of the First Notice, which are set forth below.

16  Topic 1: The identity of each person involved in the MGA Projects, and the
17  nature and time period(s) of each such person's involvement therein.

18  Topic 2: The conception, design and development of the MGA Projects,
    including without limitation the chronology thereof.

19
20  Topic 3: The identity of, and the design, development and first sale of, any
    products resulting from the MGA Projects.

21  Topic 6: The identity of documents and tangible items that relate to the MGA
    Projects.

22
23  Topic 7: The identity, source and current location of each head that was
    provided by, for, on behalf of MGA or any of its representatives to Anna Rhee
    for painting prior to October 21, 2000.

24  Topic 8: The identity of each person involved in the conception, design,
25  development, production, sculpting, rotocasting, molding, modeling or
    prototyping of each head that was provided by, for or on behalf of MGA or any
26 //  of its representatives to Anna Rhee for painting prior to October 21, 2000.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 44
PAGE 446

9

1   Zeller Decl., Ex. 1.  MGA also designated Ms. Garcia to testify regarding the following

2   topics in the Second Notice:

3       Topic 1:  The origin, conception, creation, design, sculpting, development,
        engineering, rotocasting, modeling and prototyping of BRATZ and BRATZ
4       DESIGNS CREATED prior to June 30, 2001 (regardless of when or whether
        such was released in any form to the public), including without limitation the
5       timing thereof; the IDENTITY of each PERSON with knowledge thereof, the
        IDENTITY of each PERSON involved therein, and the nature, extent and time
6       period(s) of each such PERSON's involvement.

7       Topic 2:  The circumstances under which BRATZ or any BRATZ DESIGN first
        came to YOUR attention, including without limitation the timing, method and
8       manner thereof and the IDENTITY of each PERSON with knowledge thereof.

9       Topic 3:  The identity of each doll, product, work or item produced, developed,
        manufactured, licensed, sold or offered for sale by or for YOU or on YOUR
10      behalf that was BASED ON any BRATZ DESIGN which BRYANT CREATED.

11      Topic 4:  To the extent not covered by Topic 3, each EMBODIMENT of any
        doll, doll accessory or toy that BRYANT CREATED prior to June 30, 2001.
12

13      Topic 5:  The work, activities and/or services that BRYANT performed for or
        with YOU or on YOUR behalf prior to June 30, 2001.

14      Topic 6:  The origin, conception and creation of DESIGNS that BRYANT
        CREATED prior to June 30, 2001 and in which YOU claim to have, or have ever
15      claimed to have, any right, title or interest (whether in whole or in part).

16      Topic 7:  The identity of, and the design, development, sculpting, development,
        engineering, rotocasting, modeling, prototyping and first sale of, any doll,
17      product, work or item that has been produced, developed, manufactured,
        licensed, sold or offered for sale by, for or on behalf of YOU and that was
18      BASED ON any DESIGN referenced in Topic 6.

19      Topic 8:  Each EMBODIMENT of BRATZ that was CREATED prior to June
        30, 2001 or that was at any time BASED ON any BRATZ DESIGN which was
20      CREATED prior to June 30, 2001.

21      Topic 9:  The DRAWINGS, including without limitation the authorship,
        creation, dissemination and use thereof and the source, meaning, authenticity and
22      timing of any dates thereof.

23      Topic 10:  The IDENTITY of each vendor or third party who performed or
        contributed, or who was considered, solicited, requested, proposed or
24      contemplated by YOU or BRYANT to perform or contribute, any activities,
        work or services in connection with BRATZ or BRATZ DESIGNS prior to June
25      30, 2001, YOUR COMMUNICATIONS therewith, and the nature, extent and
        timing of such activities, work or services.
26

27      Topic 12:  The actual, proposed, requested or contemplated manufacture,
        fabrication or tooling (including the production of molds) of BRATZ, including
28

1    without limitation the timing thereof and the IDENTITY of each manufacturer and potential manufacturer used, proposed or considered.

2

3    Topic 13:  COMMUNICATIONS prior to June 30, 2001 between YOU and any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE TO BRATZ or any BRATZ DESIGN.

4

5    Topic 16:  COMMUNICATIONS BETWEEN YOU AND BRYANT prior to January 1, 2001, including without limitation the content, means and timing of such COMMUNICATIONS, the IDENTITY of the PERSONS who were parties thereto and the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

6

7

8    Topic 17:  COMMUNICATIONS that BRYANT made for YOU or on YOUR behalf with any PERSON other than YOU that REFER OR RELATE TO BRATZ prior to June 30, 2001.

9

10   Topic 29:  COMMUNICATIONS made by, for or on behalf of YOU, whether directly or indirectly, with Anna Rhee, including without limitation since February 2005(but not including any such COMMUNICATIONS with her legal counsel).

11

12

13   Topic 30:  COMMUNICATIONS between YOU and Veronica Marlow, Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), Sarah Halpern, Steve Linker, Liz Hogan and/or Jesse Ramirez that REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including without limitation all DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

14

15

16   Topic 35:  COMMUNICATIONS between YOU and Universal Commerce Corp., Ltd. prior to June 30, 2001.

17

18   Topic 36:  The source, meaning and authenticity of SL00013-14, including without limitation the timing of its creation and the handwriting thereon.

19

20   Zeller Decl., Ex. 3.  The specific topics identified above for which Ms. Garcia has been

21   designated are relevant and proper.  It is unrealistic to require Mattel to cover the number and

22   breadth of topics for which Ms. Garcia has been designated to testify in a matter of fourteen

23   hours.

24         In addition, just two days prior to the scheduled deposition, MGA produced

25   approximately 7,600 pages of documents.  Mattel has reviewed these documents and

26   determined that Ms. Garcia's name appears on the bulk of the documents.  Mattel also

27   determined that a significant portion of the documents pertain to a key period (2000 or the first

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 44

PAGE 448

11

1   half of 2001) and that some deal with the early development of Bratz while Carter Bryant was

2   still with Mattel. Regardless of where the fault lies for the belated document production, Mattel

3   is entitled to a fair examination of the deponent regarding these 7,600 pages of documents.[6]

4           Mattel is also entitled to additional time to depose Ms. Garcia because MGA improperly

5   instructed her not to answer questions regarding MGA Mexico. See Zeller Decl., Ex. 9 at

6   439:10-442:6 and 445:14-18. Although the parties had an agreement to limit the scope of Ms.

7   Garcia's deposition to Bryant-related issues, that agreement was never presented to the court for

8   approval and therefore does not have the force and effect of a court order. In the absence of a

9   court order, an instruction not to answer is improper unless necessary to preserve a privilege.

10  See Fed.R.Civ.P. 30(d)(1).

11          In summary, the four factors above provide ample good cause to justify additional time

12  to depose Ms. Garcia.

13  B.  Instructions Not To Answer Deposition Questions

14          Mattel next contends that counsel improperly asserted the attorney-client privilege as to

15  certain deposition questions. In opposition, MGA contends that counsel properly instructed Ms.

16  Garcia not to answer to avoid revealing the substance of protected attorney-client

17  communications.

18          The attorney-client privilege protects an attorney's communication of legal advice to his

19  client, as well as the client's communication of information to the attorney "to enable him to give

20  sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 390 (1981). The

21  protection extends only to communications; however, it does not extend to the facts underlying

22  privileged communications. Id. at 395-96. The Ninth Circuit has described the elements of the

23  attorney-client privilege as follows: "(1) When legal advice of any kind is sought (2) from a

24

25  ────────────────

26  [6] Furthermore, during the hearing, Mattel indicated that MGA produced more than 100,000 documents
    after Ms. Garcia's deposition. This production of documents provides additional justification for resuming Ms.
27  Garcia's deposition.

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

    EXHIBIT  44
    PAGE  449                                    12

1   professional legal adviser in his or her capacity as such, (3) the communications relating to that

2   purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently

3   protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be

4   waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir.2002).  The party asserting the

5   privilege has the burden of establishing that the privilege applies.  In re Grand Jury Investigation,

6   974 F.2d 1068, 1070 (9th Cir. 1992).

7          In the first excerpt at issue, counsel, Ms. Torres, interjected an objection and instruction

8   not to answer:

9          Q:  How is it that you learned Carter Bryant was employed by Mattel as of the
           time that he had this meeting with you and others that you reference as occurring
10         on September 1, 2000?

11         Ms. Torres:  I object and instruct the witness not to answer if her answer involves
           communications with counsel.
12
           The Witness:  Then I can't answer the question.
13

14  Garcia Depo. at 273:6-14, Zeller Decl., Ex. 9.  This objection is sustained because a response

15  would have necessarily revealed the substance of a protected attorney-client communication.

16         In the next excerpt at issue, Mattel posed another question regarding Mr. Bryant's

17  employment with Mattel:

18         Q:  What facts are you aware of from any source as to whether or not Mr. Bryant
           was still working for Mattel as of September 1, 2000?
19
           Ms. Torres:  I am going to caution the witness not to disclose attorney-client
20         communications.  If you can answer that otherwise, go ahead.

21         The Witness:  Then I can't

22         (Instruction not to answer.)

23         Mr. Page:  I pose an objection as to form.

24         The Witness:  I can't answer the question.

25         Mr. Zeller:  Because of the instruction?

26         The Witness:  Yes.

27  //

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                              EXHIBIT  44

                              PAGE  490                    13

1   Garcia Depo. at 273:20-275:2, Zeller Decl., Ex. 9. The objection is sustained because of the

2   way the question is phrased. If the question had been posed differently, without reference to the

3   source of information and called for disclosure of facts only, the objection would have been

4   improper.

5       In the following excerpt, Ms. Garcia was asked how she learned of the arbitration

6   between Isaac and Fred Larian:

7       Q: At some point, did you come to learn that there was an arbitration or
        litigation between Isaac Larian and Fred Larian?

8

9       A: Yes.

10      Q: How did you learn that?

11      (Ms. Torres): Objection, I'm going to instruct the witness not to answer if she
        learned from counsel.

12      The Witness: I believe it was – I believe it was through his – Isaac's assistant.

13      Mr. Zeller: Was it – I'm blanking on her name. Was it still Dede Brown? Was
        it still Dede Brown at that time?

14

15      A: I don't think so, but I'm not sure.

16   Garcia Depo. at 349:7-21; Zeller Decl., Ex. 9. Ms. Garcia answered the question posed to her

17   and therefore the objection is moot.

18       In the next section, Ms. Garcia also gave a response to the question posed:

19      Q: So is it fair to say that you don't have any knowledge or information as to
        when it is that Mr. Bryant first created Bratz in any form?

20      Ms. Torres: Objection, vague, calls for a legal conclusion.

21      The Witness: Outside of privileged and confidential?

22      Ms. Torres: I will instruct you not to answer to the extent you have knowledge
        that comes solely from counsel.

23

24      The Witness: No.

25   Garcia Depo. at 291:12-22, Zeller Decl., Ex. 9. Because Ms. Garcia gave a response, the

26   objection is moot.

27

28

EXHIBIT 44

PAGE 451

14

1    In the following excerpts, Mattel sought to question Ms. Garcia about what caused her to

2    change her testimony after returning from a break in the deposition:

3        A:  I don't mean to interrupt.  I want to state something before we got started.
         With some more thought during our break, I just wanted to state for the record
4        that I am very sure that Margaret Leahy received the armature engineering
         drawings that I mentioned in my earlier testimony.  I originally mentioned I
5        wasn't sure, but I'm very sure she received that sketch.

6        Q:  What's your basis for now being very sure of that?

7        A:  Taking a few minutes with fresh air and thinking through my memory more
         clearly.  My memory is more sharp and more clear.
8
9        Q:  Between the time that you gave your prior answers about that particular
         drawing and now, you obviously had discussions with MGA's counsel, is that
10       correct?

11       A:  Yes.

12       Q:  Did you discuss with them that particular drawing?

13       Ms. Torres:  I instruct the witness not to answer on the grounds of attorney-client
         privilege.

14       (Instruction not to answer.)

15       The Witness:  I can't answer that question.

16       (By Mr. Zeller)
         Q:  Did you look at the armature drawing that you're referring to?
17
         A:  During the break?
18
         Q:  Yes.
19
         A:  No.
20
         Q:  It's fair to say what you learned about that drawing was told to you by MGA's
21       lawyers during the break?

22       Ms. Torres:  Objection, misstates the witness' testimony and calls for attorney-
         client privilege communications.  If you can answer without revealing attorney-
23       client privileged communications, go ahead.

24       The Witness:  I can't answer the question.

25       (By Mr. Zeller)
         Q:  Based upon the instruction that your counsel is giving you?
26
         A:  Yes.
27

28

EXHIBIT 44

PAGE 452

1   Garcia Depo. at 617:16-619:2.  The objections are overruled.  The questions did not require Ms.

2   Garcia to reveal the content of an attorney-client communication.  Rather, the questions posed

3   called for disclosure of underlying facts to which Mattel is entitled.

4                                    IV.  CONCLUSION

5        For the reasons set forth above, additional time to depose Paula Garcia in her individual

6   capacity and as a Rule 30(b)(6) designee is necessary for a fair examination pursuant to Rule

7   30(d)(2) and Rule 26(b)(2), Fed.R.Civ.P.  MGA shall make Ms. Garcia available for deposition

8   for an additional fourteen hours.[7]  Upon resumption of her deposition, Ms. Garcia shall provide

9   answers to the two questions where counsel's objections have been overruled.  The deposition

10  shall be held at a mutually agreeable date and time, and shall be completed no later than

11  September 28, 2007.  The motion for sanctions is denied.

12        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

13  Master, Mattel shall file this Order with the Clerk of Court forthwith.

14

15  Dated: August 14, 2007

16                                        HON. EDWARD A. INFANTE (Ret.)
                                          Discovery Master

17

18

19

20

21

22

23

24

_____

25    [7]  During oral argument, MGA implied it may de-designate Ms. Garcia as to some topics.  Without
      determining whether such a practice is proper or improper, if MGA does de-designate Ms. Garcia as to some topics,
26    it will have no bearing on the finding that fourteen hours are necessary for a full and fair examination of Ms. Garcia
      in her individual and corporate capacities.
27

28
      Bryant v. Mattel, Inc.,                                    EXHIBIT 44                    16
      CV-04-09049 SGL (RNBx)
                                                                 PAGE 453

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 14, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION FOR AN EXTENSION OF TIME TO DEPOSE PAULA GARCIA IN HER INDIVIDUAL CAPACITY AS A 30(b)(6) DESIGNEE; DENYING REQUEST FOR MONETARY SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 14, 2007, at San Francisco, California.

_Sandra Chan_
Sandra Chan

EXHIBIT ___44___

PAGE ___454___

# Exhibit 45

Case 2:04-cv-09049-DOC-RNB   Document 4799-8   Filed 02/09/09   Page 20 of 89   Page ID
#:150620
Case 2:04-cv-09049-SGL-RNB    Document 4293    Filed 09/02/2008    Page 1 of 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                                      Date: September 2, 2008

Title:    MATTEL, INC. -v- MGA, INC.
          AND CONSOLIDATED ACTIONS
=========================================================================
=
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

              Jim Holmes                           None Present
              Courtroom Deputy Clerk               Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                             None Present

PROCEEDINGS:   ORDER SETTING VARIOUS BRIEFING SCHEDULES

        The Court, having considered the positions of counsel at the hearing herein, as well as the
parties' proposed scheduling positions, hereby sets the following scheduling order for further
proceedings in this matter:

1.    The case is STAYED from the date of this order through September 19, 2008, <u>except</u> for
      efforts aimed in good faith at a complete and global settlement.  Principal corporate officers
      for both plaintiff and defendants (Mr. Eckert and Mr. Larian) are ORDERED to make
      themselves available, at a mutually agreeable time, to meet with counsel and Ambassador
      Prosper to discuss a global resolution of this matter.

2.    On September 29, 2008, the parties may file opening briefs and submissions regarding
      remaining claims and defenses for Phase 1(c) as well as opening briefs and submissions for
      injunctive relief, constructive trust, and/or other remedial measures.  Response briefs and
      submissions are due October 13, 2008.  Reply briefs and submissions are due October 20,
      2008.  A hearing not to exceed four hours will be conducted before this Court on **Monday,
      November 10, 2008, at 1:00 p.m.**

MINUTES FORM 90                                        Initials of Deputy Clerk __jh_____
CIVIL -- GEN                          1

EXHIBIT 45
PAGE 455

3.    Opening briefs for JMOLs (new or renewed), motion(s) for new trial, and/or motion(s) for
remittitur may be filed 10 days following the Court's ruling on Phase 1(c) issues and its
issuance of any injunction(s), constructive trust(s), and/or other remedial measures.
Response briefs are due 14 days following the opening briefs, and reply briefs are due 7
days following the response briefs.  A hearing will be set by the Court after receiving the
response briefs.  Depending on the outcome of the hearing, the Court may address or defer
addressing the following additional issues: (1) Whether or not to issue a judgment or await
completion of Phase 2; (2) the appointment of a discovery master for Phase 2 (the Court will
provide three proposed discovery masters in advance of the hearing to which counsel for
the parties may indicate any objection(s)); and (3) further scheduling for Phase 2.

4.    All discovery related to Phase 2 is STAYED pending the hearing described in paragraph 3,
except as follows:  For good cause shown, the Court ORDERS the deposition of **Carlos
Gustavo Machado** and **Jorge Castillo** to be taken at a mutually convenient date within 30
days of September 19, 2008.  Any disputes concerning the taking of these depositions shall
be presented to this District Judge in the manner prescribed in Local Rule 37.

**IT IS SO ORDERED.**

Initials of Deputy Clerk __jh_____

EXHIBIT 45

PAGE 456

Case 2:04-cv-09049-SGL-RNB     Document 4293     Filed 09/02/2008     Page 3 of 3

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)   **Case Title**  Mattel, Inc. v. MGA ENTERTAINMENT, INC

**Title of Document**  MINUTES OF SEPTEMBER 2, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor): P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |

**Initials of Deputy Clerk** jh

EXHIBIT 45

PAGE 457

**Exhibit 46**

*Law Offices of*
# JAMES W. SPERTUS

CALENDARED

RECEIVED
SEP 0 6 2007
12100 Wilshire Boulevard, Suite 620
Los Angeles, CA 90025
Phone: (310) 826-4700
Fax: (310) 826-4711
Jim@SpertusLaw.com
www.SpertusLaw.com

VIA FACSIMILE (213) 443-3100 and US MAIL

September 3, 2007

Jon Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 So. Figueroa St., 10th Floor
Los Angeles, CA 90017

     Re:    Mattel, Inc. v. MGA Entertainment et. al., Case No. CV 04-9049 SGL

Dear Mr. Corey,

    I spoke to Mr. Machado and October 26, 2007, is an acceptable date for his deposition. Please arrange for a certified Spanish language interpreter to be present at the deposition. Thank you.

Regards,

James W. Spertus

EXHIBIT 44
PAGE 458

# Exhibit 47



1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12                          EASTERN DIVISION

13  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

14              Plaintiff,                  Consolidated with
                                            Case No. CV 04-09059
15        vs.                               Case No. CV 05-02727

16  MATTEL, INC., a Delaware               NOTICE OF DEPOSITION OF
    corporation,                           CARLOS GUSTAVO MACHADO
17
                Defendant.                  Date:    October 26, 2007
18  _____       Time:    9:30 a.m.
                                            Place.:  Quinn Emanuel Urquhart Oliver
19  AND CONSOLIDATED CASES                           & Hedges, LLP
                                                     865 South Figueroa Street, 10th
20                                                   Floor
                                                     Los Angeles, CA 90017
21
                                            Discovery Cut-Off: January 14, 2008
22                                          Pre-Trial Conference: April 7, 2008
                                            Trial Date: April 29, 2008
23

24

25

26

27                                          EXHIBIT  47

28                                          PAGE  459
                            9/04
07209/2211044.1
   _____
                    NOTICE OF DEPOSITION OF CARLOS GUSTAVO MACHADO

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that pursuant to the agreement of counsel of

3    Mattel, Inc. and counsel for Mr. Machado, Mattel, Inc. will take the deposition of

4    Carlos Gustavo Machado on October 26, 2007 beginning at 9:30 a.m., at the offices

5    of Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th

6    Floor, Los Angeles, California 90017.

7         PLEASE TAKE FURTHER NOTICE that the deposition will take

8    place upon oral examination before a duly authorized notary public or other officer

9    authorized to administer oaths at depositions, and will continue from day to day,

10   Sundays, Saturdays and legal holidays excepted, until completed.

11        PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

12   P. 30(b)(2), the deposition will be videotaped. Mattel also reserves the right to use

13   Livenote or other technology for real-time transcription of the testimony.

14

15   DATED:  September 4, 2007          QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
16

17                                      By_____
18                                         Jon Corey
                                           Attorneys for Mattel, Inc.
19

20

21

22

23

24

25

26

27                                      EXHIBIT __47__

28                                      PAGE __460__

07209/2211044.1

                                        -2-
                  NOTICE OF DEPOSITION OF CARLOS GUSTAVO MACHADO

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California. I am over the age of
eighteen years and not a party to the within action; my business address is Now Legal Service,
3  1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4      On September 4, 2007, I served true copies of the following document(s) described as:
**NOTICE OF DEPOSITION OF CARLOS GUSTAVO MACHADO** on the parties in this
5  action as follows:

6

       Diana M. Torres, Esq.                    James W. Spertus, Esq.
7      **O'Melveny & Myers**                     **Law Offices Of James W. Spertus**
       400 So. Hope Street                      12100 Wilshire Blvd., Suite 620
8      Los Angeles, CA 90071                     Los Angeles, CA 90025

9  [√] **BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the
person(s) being served.
10

       I declare under penalty of perjury under the laws of the State of California that the
11  foregoing is true and correct.

12      Executed on September 4, 2007, at Los Angeles, California.

13

14                                        _____

15                                        NOW LEGAL -- Dave Quintana

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2211071.1

EXHIBIT __47__

PAGE __461__

1
2
3
4                          **PROOF OF SERVICE**
5        I am employed in the County of Los Angeles, State of California.  I am over the age of
   eighteen years and not a party to the within action; my business address is 865 South Figueroa
6  Street, 10th Floor, Los Angeles, California.
7        On September 4, 2007, I served true copies of the following document(s) described as:
   **NOTICE OF DEPOSITION OF CARLOS GUSTAVO MACHADO** on the parties in this
8  action as follows:
9
       John W. Keker, Esq.                     Patricia Glaser, Esq.
10     Michael H. Page, Esq.                   **Christensen, Glaser, Fink, Jacobs, Weil**
       Christina M. Anderson, Esq.             **& Shapiro, LLP**
11     **Keker & Van Nest, LLP**              10250 Constellation Blvd., 19th Floor
       710 Sansome Street                      Los Angeles, CA  90067
12     San Francisco, CA 94111
13
14
   [√] **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I
15
   deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with
16 postage thereon fully prepaid.
17        Executed on September 4, 2007, at Los Angeles, California.
18
.19
20
21                                             Johanna Lopez
22
23
24
25
26
27
28

07209/2211071.1                          -2-

EXHIBIT 47

PAGE 462

# Exhibit 48

**Tiffany Garcia**

| | |
|---|---|
| **From:** | Jon Corey |
| **Sent:** | Friday, September 14, 2007 3:00 PM |
| **To:** | Michael Page; Amman Khan; Torres, Diana |
| **Cc:** | Michael T Zeller; Christa Anderson; Patricia Glaser |
| **Subject:** | RE: Mattel v. Bryant |
| **Attachments:** | 2221657_Deposition List -- Mattel Noticed Witnesses.XLS; 2221693_Mattel Depositions - Word.DOC |

Counsel,

I have attached Mattel's list of witnesses who currently need to be scheduled along with a record of notice dates. Please provide me with a copy of the chart that you propose to send to Judge Infante as soon as you have it completed so that we can review it for completeness and accuracy before it is submitted to him. We look forward to receiving it. Please let me know whether it will be distributed by close of business today.

Best regards,

Jon Corey
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: joncorey@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Michael Page [mailto:MPage@KVN.com]
**Sent:** Friday, September 14, 2007 10:43 AM
**To:** Amman Khan; Jon Corey; Torres, Diana
**Cc:** Michael T Zeller; Christa Anderson; Patricia Glaser
**Subject:** RE: Mattel v. Bryant

Along the same lines, I understand that Quinn is speaking with Larry McFarland to schedule the depos of his four third party clients (Leahy, Marlowe, Cloonan, and Halperin). Larry may want to participate.

**From:** Amman Khan [mailto:akhan@chrisglase.com]
**Sent:** Friday, September 14, 2007 10:21 AM
**To:** 'Jon Corey'; Torres, Diana

EXHIBIT _48_

PAGE _463_

9/14/2007

**Cc:** Michael T Zeller; Christa Anderson; Michael Page; Patricia Glaser
**Subject:** RE: Mattel v. Bryant

Likewise, please send me a list of all depositions that Mattel seeks, the date on which the notice of deposition was served, and, if applicable, any order(s) you contend imposes a deadline for the taking of a witness's deposition. Once I have that information in Word format, I will create a list of depos. to present to Judge Infante and possible dates. -- Amman Khan

---

**From:** Jon Corey [mailto:joncorey@quinnemanuel.com]
**Sent:** Friday, September 14, 2007 10:06 AM
**To:** Amman Khan; Torres, Diana
**Cc:** Michael T Zeller
**Subject:** Mattel v. Bryant

Counsel,

To prepare for the conference before Judge Infante on Monday, please provide Mattel with a list of the individuals who MGA claims need to be scheduled.

Best regards,

Jon Corey
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: joncorey@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT 48

PAGE 464

9/14/2007

| Date | Notice |
|------|--------|
| 6/17/2004 | PLAINTIFF MATTEL, INC.'S NOTICE OF DEPOSITION OF CARTER BRYANT |
| 8/26/2004 | PLAINTIFFS' NOTICE OF VIDEOTAPED DEPOSITION OF CARTER BRYANT |
| 12/15/2004 | MATTEL, INC.'S NOTICE OF DEPOSITION OF ISAAC LARIAN |
| 2/16/2005 | NOTICE OF DEPOSITION OF MGA PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) |
| 3/15/2005 | SUBPOENA IN A CIVIL CASE - SARAH HALPERN |
| 3/15/2005 | SUBPOENA IN A CIVIL CASE - MARGARET HATCH-LEAHY |
| 3/16/2005 | SUBPOENA IN A CIVIL CASE - VERONICA MARLOW |
| 5/12/2005 | SUBPOENA IN A CIVIL CASE - ELISE CLOONAN |
| 7/7/2006 | NOTICE OF DEPOSITION OF ISAAC LARIAN |
| 2/1/2007 | SECOND NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) |
| 3/26/2007 | NOTICE OF DEPOSITION OF PAULA GARCIA |
| 6/4/2007 | NOTICE OF DEPOSITION OF CARLOS GUSTAVO MACHADO GOMEZ |
| 6/4/2007 | NOTICE OF DEPOSITION OF MGA ENTERTAINMENT (HK) LIMITED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) |
| 6/4/2007 | NOTICE OF DEPOSITION OF RON BRAWER |
| 6/5/2007 | THIRD NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6) |
| 6/6/2007 | NOTICE OF DEPOSITION OF KERRI BRODE |
| 6/6/2007 | NOTICE OF DEPOSITION OF DAVE MALACRIDA |
| 6/6/2007 | NOTICE OF DEPOSITION OF SARAH CHUI |
| 7/9/2007 | NOTICE OF DEPOSITION OF JANET BRYANT |
| 7/9/2007 | NOTICE OF DEPOSITION OF TOM BRYANT |
| 7/9/2007 | NOTICE OF DEPOSITION OF RICHARD IRMEN |
| 7/18/2007 | NOTICE OF DEPOSITION OF DANIEL J. COONEY, JR. |
| 7/20/2007 | NOTICE OF DEPOSITION OF SUSAN KUEMMERLE |
| 8/9/2007 | NOTICE OF DEPOSITION OF JORGE CASTILLA |
| 8/20/2007 | AMENDED NOTICE OF DEPOSITION OF TOM BRYANT |
| 8/20/2007 | AMENDED NOTICE OF DEPOSITION OF RICHARD IRMEN |
| 8/20/2007 | AMENDED NOTICE OF DEPOSITION OF JANET BRYANT |
| 9/4/2007 | NOTICE OF DEPOSITION OF SHIRIN SALEMNIA |
| 9/4/2007 | NOTICE OF DEPOSITION OF CARLOS GUSTAVO MACHADO |
| 9/4/2007 | NOTICE OF DEPOSITION OF FARHAD LARIAN |
| 9/6/2007 | NOTICE OF DEPOSITION OF LITTLER MENDELSON PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) |
| 9/6/2007 | AMENDED NOTICE OF DEPOSITION OF SUSANA KUEMMERLE |
| 9/6/2007 | AMENDED NOTICE OF DEPOSITION OF SCHUYLER BACON |
| 9/13/2007 | NOTICE OF DEPOSITION OF MARIANA TRUEBA |
| 9/13/2007 | NOTICE OF DEPOSITION OF PABLO VARGAS SAN JOSE |
| 9/14/2007 | NOTICE OF DEPOSITION OF JANINE BRISBOIS |

EXHIBIT 48

PAGE 465

**Witnesses Whose Depositions Have Been Ordered But For Whom MGA Has Provided No
Dates Despite Mattel's Requests**

1.   Paula Garcia -- Topics Nos. 1-10, 12-13, 16-17, 29-30 and 35-36 of Mattel's Second Rule
     30(b)(6) Notice to MGA ("Second Notice"); and Topic Nos. 1-3 and 6-8 of Mattel's First
     Rule 30(b)(6) Notice to MGA ("First Notice") -- 2 days by 9/28.
2.   Lisa Tonnu -- Topic Nos. 21, 24, 25, 26, 31, 37, 39, 40 and 41 of Second Notice -- 2 days
     by 9/30
3.   Ken Lockhart -- Topics No. 39 of Second Notice -- by 9/30
4.   Topic Nos. 16, 18, 20 and 32 of Mattel's Second Notice of MGA -- by 6/30

**Witnesses Whose Depositions Have Been Ordered And For Whom There Are Agreed Dates**

5.   Spencer Woodman -- Topic No. 34 of Second Notice -- 9/24
6.   Tom Bryant -- 9/25
7.   Janet Bryant -- 9/26
8.   Richard Irmen -- 9/28

**Witnesses Whose Dates Have Been Agreed Upon And Set After Meet and Confers
Requested By Mattel**

9.   Schuyler Bacon -- Topic Nos. 4, 5, 10, and 14 of Mattel's Third Rule 30(b)(6) Notice to
     MGA ("Third Notice") -- 9/27
10.  Sarah Chui -- 9/28
11.  Edmond Lee -- MGA Hong Kong designee on all Rule 30(b)(6) Topics -- Starting on 10/4
12.  Susan Kuemmerele -- 10/24
13.  Carlos Gustavo Machado -- 10/26

**Witnesses for Whom Mattel Needs Dates, Including Witnesses MGA Promised Dates For
But Have Never Provided**

14.  Charlene Brooks -- MGA Designee on Topics 15 and 16 of Mattel's Third Notice
15.  Topic Nos. 1-3, 6-8, 9, and 11-13 of Mattel's Third Notice
16.  Rachel Harris, for completion of her Rule 30(b)(6) testimony on Second Notice
17.  Kerri Brode, for completion of her Rule 30(b)(6) testimony on Second Notice
18.  Dave Malacrida
19.  Ron Brawer
20.  Carter Bryant
21.  Dan Cooney
22.  Farhad Larian
23.  Shirin Salemnia
24.  Mariana Trueba
25.  Pablo Vargas
26.  Elise Cloonan
27.  Sarah Halpern
28.  Margaret Hatch Leahy

EXHIBIT 48

PAGE 467

29.   Veronica Marlow
30.   Jorge Castilla
31.   Jeanine Brisbois
32.   Isaac Larian
33.   Stephen Lee
34.   Lucy Arant
35.   Joe Tiongco
36.   Littler Mendelson

EXHIBIT 48

PAGE 468

# Exhibit 49



**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

September 25, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>

Amman Khan, Esq.
Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP
1025 Constellation Boulevard, 19th Floor
Los Angeles, California 90067

Re:     <u>Mattel v. Bryant</u>

Dear Mr. Khan:

I write further to our meetings of counsel on September 18 and 21, 2007 regarding deposition scheduling.  The parties confirmed dates for the following depositions:

- MGA will produce Lisa Tonnu for deposition on September 24 and 25 at Quinn Emanuel Urquhart Oliver & Hedges LLP's Los Angeles offices starting at 9:30 a.m.

- MGA and Bryant confirmed that the scheduled depositions of Janet Bryant (September 25), Tom Bryant (September 26), Richard Irmen (September 28), Sarah Chui (September 28), Edmond Lee (October 4), Susan Kuemmerle (October 24) and Carlos Machado (October 26) will proceed as scheduled.

- The parties agreed that the deposition of Denise O'Neil will take place on October 3 in Chicago and that the deposition of Maureen Tkacik will take place on September 28 in New York.

EXHIBIT **49**

PAGE **469**

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 1 s Fastgate all Suit 7  S   i      li   i

MGA also provided dates for the following witnesses:

- Ron Brawer on October 25 in Los Angeles (we indicated that we believed that Brawer is an important witness and that we will need two days with him).

- Dan Cooney on October 22 in New York.

- Dave Malacrida on October 18, 2007 (we confirmed this date and will get back to MGA on how much time we believe we will need for Mr. Malacrida).

Mattel will take the Brawer motion off calendar when MGA agrees to stipulate that Mr. Brawer will appear on that date, which Judge Infante can "so order." MGA requested until Thursday, September 27, 2007 to confer with Mr. Brawer. We agreed to give MGA an extension to file its brief in opposition to the Brawer motion to compel until that date.

We informed you that Mattel would like dates for the continued deposition of Samir Khare, pursuant to the parties' agreement that Mattel will have additional time to depose Mr. Khare. You stated on September 21 that MGA had available dates for Mr. Khare, but that you had misplaced them and were unable to provide any dates during our call. You stated that you would provide Mattel dates for Mr. Khare on Friday, September 28, 2007.

Mr. Jenal stated for the first time that MGA takes the position that the testimony of Charlene Brooks and Kerri Brode completed the testimony the Topics in Mattel's Second Rule 30(b)(6) Notice of Deposition of MGA that they were designated for. That is incorrect and, indeed, conflicts with the representation made by MGA in its Objection to Mattel's Submission Regarding Deposition Scheduling and Preliminary Response submitted to Judge Infante. In that submission, MGA stated that Ms. Brooks would be produced on the "completion of topics of Second Notice previously testified to by Kerri Brode." Mattel expects MGA to produce a witness (whether Ms. Brooks or Ms. Brode) on the completion of that Rule 30(b)(6) testimony.

You stated MGA's position that it would not produce any witnesses in response to Mattel's Third Rule 30(b)(6) Notice of MGA until after MGA's motion to compel certain Topics in the Third Notice is ruled on by Judge Infante. MGA refused to produce even those witnesses that it had previously agreed to produce on Topics in the Third Notice that are not subject to Mattel's motion to compel (e.g., Schuyler Bacon and Charlene Brooks), although by separate e-mail on September 20, 2007, MGA confirmed that Ms. Bacon would be produced.

As William Charron acknowledged on the September 18 call, MGA has agreed to produce witnesses on Topic Nos. 16, 18, 20 and 32 in Mattel's Second Rule 30(b)(6) Notice of Deposition

EXHIBIT __49__

PAGE __470__

of MGA. You stated that MGA would get back to us on designations and dates for these Topics on Friday, September 28.

You stated that you were not sure whether your firm would be representing Mariana Trueba Alamada or Pablo Vargas San Jose, but that you would get back to us and inform us whether you will be representing either of them. You stated that Christensen Glaser will represent Shirin Salemnia, but you have not yet provided dates on which Mr. Salemnia is available. You also stated that Jeanine Brisbois does not work for MGA, but an MGA subsidiary, and as such MGA will not be producing her. However, you stated that you would inquire as to who would be representing Ms. Brisbois and get back to us. You acknowledged that Christensen Glaser represents Farhad Larian and stated that Mr. Larian would be available for deposition in November. We will get back to you on whether MGA can put off Mr. Larian's deposition until that time.

MGA stated its position that it will not produce Isaac Larian for further deposition regarding Phase 1 issues. However, MGA acknowledged that Mattel is entitled to Mr. Larian's testimony regarding Phase 2. MGA claimed for the first time on the September 18 call that Mr. Larian's deposition is an apex deposition and that Mattel would need to make a the necessary showing of Mr. Larian's personal knowledge of facts in the case before deposing him. MGA's newly stated position is not credible. Mr. Larian is a party in this case and is intimately involved in the facts at issue. Please let me know on Friday, September 28, whether this remains Larian's position.

You confirmed that Anna Rhee's deposition will not being going forward on October 9, 2007 as originally scheduled. You stated that, according to Ms. Rhee's attorney, there are 2 hours and 41 minutes remaining for questioning Ms. Rhee. Mattel has had no opportunity to inquire, and is entitled to the remainder of the time. You asked Mattel to reconsider and proposed splitting this time with Mattel. We will look into the issue and get back to you.

MGA requested dates for the deposition of Matt Bousquette. As we informed you during the parties' first call, Mr. Bousquette is a third party. However, we will try to obtain dates on which is available and get back to MGA. Before we do so, however, you need to provide a date by which MGA will complete its unfair competition document production. MGA also requested dates for Tina Patel, Adrienne Fontanella and Jamie Cygielman. As we informed you, all three are third party witnesses and we do not yet know if we will be representing any of them. You informed us on September 21 that Ms. Patel and Ms. Fontanella have been served, but that Ms. Cygielman has not yet been served with her deposition subpoena.

We offered to produce Mattel's CEO Robert Eckert for one hour in later November or early December. As Mattel's CEO, Mr. Eckert's deposition is an apex deposition and, because his unique personal knowledge of the facts in this case is limited, we do not believe MGA is entitled to more than one hour with him. MGA stated that it believed it would need more than one day to depose Mr. Eckert. If MGA can make a showing that Mr. Eckert has unique personal knowledge

EXHIBIT __49__

PAGE __471__

warranting a longer deposition, Mattel will consider producing Mr. Eckert for more than one hour of deposition. We await that showing.

The parties are still meeting and conferring regarding any potentially outstanding Topics in MGA's Rule 30(b)(6) of Mattel and Bryant's Rule 30(b)(6) of Mattel. Mattel has set aside the following dates on which it is available to produce Rule 30(b)(6) witnesses: November 6, 7, 14 and 15 and December 5.

You stated that MGA wants additional time with Jill Nordquist. As we stated on the September 18 call, defendants have already deposed Ms. Nordquist for seven hours and it is Mattel's position that MGA is not entitled to additional time with Ms. Nordquist. You claimed that it was your belief that the parties had agreed that Mattel would produce Ms. Nordquist for additional deposition testimony. That is incorrect. Mattel has entered into no such agreement.

We stated that because Rene Pasko is currently the subject of MGA's "bandying" motion, Mattel would not produce Ms. Pasko for additional deposition until the Court has ruled on that motion. I believe that Ms. Nordquist also falls into this category.

The parties agreed that going forward they will send letters requesting depositions of the opposing party to see if the parties can come to an agreement on the availability of particular witnesses before the depositions of those witnesses are noticed.

We scheduled another call to discuss deposition scheduling for Friday, September 28, 2007 at 9:30 a.m. We look forward to speaking with you then.

Best regards,

Jon D. Corey

JDC:BBS
07209/2231905.1

cc:   William Charron
      Jim Jenal

EXHIBIT __49__

PAGE __472__

4

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

| <u>NEW YORK</u><br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000<br>Facsimile: (212) 849-7100 | <u>LOS ANGELES</u><br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>(213) 443-3000<br>Facsimile: (213) 443-3100 | <u>SAN FRANCISCO</u><br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>(415) 875-6600<br>Facsimile: (415) 875-6700 |

<u>SILICON VALLEY</u>
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

### LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   September 25, 2007          **NUMBER OF PAGES, INCLUDING COVER: 4**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| *Amman Kahn, Esq.*<br>Christensen, Glaser, Fink, Jacobs,<br>   Weil & Shapiro, LLP | 310.553.3000 | 310.556.2920 |
| *James Jenal, Esq.*<br>   O'Melveny & Myers LLP | 213.430.6584 | 213.430.6407 |
| William J. Charron, Esq.<br>**O'Melveny & Myers LLP** | 310-246-8462 | 310-246-6779 |

**FROM:**   Jon Corey

**RE:**   Mattel, Inc. v. Bryant

**MESSAGE:**

Please see attached.

> FAXED
> SEP 2 5 2007

07209/2224559.1

| | ROUTE/ | | ☐ CONFIRM FAX |
|---|---|---|---|
| CLIENT #    7209 | RETURN TO: | **Johanna Lopez -10th** | ☐ INCLUDE CONF. REPORT |
| OPERATOR: | | CONFIRMED?   ☐ NO   ☐ YES: |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product.
The information is intended only for the use of the individual or entity to whom it is addressed.  If you are not the intended recipient, or
the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution
or copying of this communication is strictly prohibited.  If you have received the facsimile in error, please immediately notify us by
telephone, and return the original message to us at the address above via the U.S. Postal Service.  Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT  49

PAGE  473

09/25/2007 10:35 FAX  12134433100        QEUOH-LAO                                      ☑001

```
*******************************
***    MULTI TX/RX REPORT    ***
*******************************
```

| TX/RX NO | 2266 |
| PGS. | 5 |
| TX/RX INCOMPLETE | ----- |
| TRANSACTION OK | |
| (1) | 1*13105562920 |
| (2) | 1*12134306407 |
| (3) | 1*13102466779 |
| ERROR INFORMATION | ----- |

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:**    September 25, 2007                **NUMBER OF PAGES, INCLUDING COVER: 4**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| *Amman Kahn, Esq.* Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | 310.553.3000 | 310.556.2920 |
| *James Jenal, Esq.* O'Melveny & Myers LLP | 213.430.6584 | 213.430.6407 |
| William J. Charron, Esq. O'Melveny & Myers LLP | 310-246-8462 | 310-246-6779 |

**FROM:**    Jon Corey

**RE:**    Mattel, Inc. v. Bryant

**MESSAGE:**

Please see attached.

EXHIBIT ___49___

PAGE ___474___

# Exhibit 50

Law Offices of James W. Spertus
James W. Spertus (State Bar No. 159825)
12100 Wilshire Blvd., Suite 620
Los Angeles, CA 90025
Tel (310) 826-4700
Fax (310) 826-4711
Jim@ Spertus Law . Com
Attorneys for Carlos Gustavo Machado

Send ☑
Enter
Closed
JS-5/JS-6
JS-2/JS-3
JS-3/JS-Only
Scan Only

FILED - EASTERN DIVISION
CLERK, U. S. DIS.. CT COURT

· OCT – 2 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

Plaintiff(s)

v.

MATTEL, INC.

Defendant(s).

CASE NUMBER CV 04-9049 SGL (RNBx)
Consolidated With Nos. 04-9059 &05-2727

ORDER ON
REQUEST FOR APPROVAL OF
SUBSTITUTION OF ATTORNEY

The Court hereby orders that the request of:
☐ Plaintiff   ☐ Defendant ☒ Other <u>Counter-defendant   CARLOS GUSTAVO MACHADO GOMEZ</u>
to substitute  <u>Mark E. Overland, David C. Scheper and Alexander H. Cote of Overland Borenstein</u>
<u>Scheper & Kim LLP</u>  who are

☒ Retained Counsel   ☐ Counsel appointed by the Court (Criminal cases only) ☐ Pro Se

**OVERLAND BORENSTEIN SCHEPER & KIM LLP**
MARK E. OVERLAND (State Bar No. 38375) moverland@obsklaw.com
DAVID C. SCHEPER (State Bar No. 120174) dscheper@obsklaw.com
ALEXANDER H. COTE (State Bar No. 211558) acote@obsklaw.com
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071-3144
Telephone:   (213) 613-4655
Facsimile:   (213) 613-4656

as attorney of record in place and stead of <u>James Spertus, Law Offices of James W. Spertus</u>
*Present Attorney*

is hereby  ☒ GRANTED   ☐ DENIED

Dated   <u>10 - 2 - 07</u>

U. S. District Judge/U.S. Magistrate Judge

NOTICE TO COUNSEL : IF YOU ARE CURRENTLY ENROLLED IN THE OPTICAL SCANNING PROGRAM AND HAVE
CHANGED YOUR E-MAIL ADDRESS SINCE YOUR ENROLLMENT, YOU MUST COMPLETE AN ENROLLMENT/UPDATE FORM (G-
78) TO ENSURE THAT DOCUMENTS ARE SERVED AT THE PROPER E-MAIL ADDRESS. THIS FORM, AS WELL AS
INFORMATION ABOUT THE OPTICAL SCANNING PROGRAM IS AVAILABLE ON THE COURT'S WEBSITE AT
WWW.CACD.USCOURTS.GOV.

EXHIBIT <u>50</u>

PAGE <u>475</u>

G-01 ORDER.doc
G-01 ORDER (05/05)      ORDER ON REQUEST FOR APPROVAL OF SUBSTITUTION OF ATTORNEY

DOCKETED ON CM

· - 3 2007

046

# Exhibit 51

**From:** Alexander Cote [mailto:acote@obsklaw.com]
**Sent:** Friday, October 05, 2007 4:40 PM
**To:** Dylan Proctor
**Subject:** Thanks for talking this afternoon

Dylan, thanks for taking my call this afternoon. I just wanted to confirm in writing what we discussed:

- You were pretty sure that new counsel need not sign the protective order (although you'll let me know if that's not correct)
- Mr. Machado requests a Spanish/English interpreter at his deposition
- We will update you on Mr. Machado's availability for his deposition as we get more information
- We would appreciate seeing any proposed interrogatories to Mr. Machado prior to you bringing any motion before the Court on that point

I think that's everything. Please feel free to contact me with any questions or concerns
Thanks,

Alexander H. Cote
Overland Borenstein Scheper & Kim LLP

10/5/2007

EXHIBIT __51__

PAGE __476__

Thanks for talking this afternoon

Page 2 of 2

**300 South Grand Avenue, Suite 2750**
**Los Angeles, CA 90071-3101**
**(t) 213-613-4660**
**(f) 213-613-4656**

10/5/2007

EXHIBIT __51__
PAGE __477__

**Exhibit 52**

ORIGINAL

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                     EASTERN DIVISION

11

| | |
|---|---|
| 12  CARTER BRYANT, an individual,<br><br>13           Plaintiff,<br><br>14      vs.<br><br>15  MATTEL, INC., a Delaware corporation,<br><br>16           Defendant.<br><br>17<br>18  AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]**<br><br>MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL:<br><br>(1) DEPOSITION OF CARLOS GUSTAVO MACHADO GOMEZ;<br><br>(2) CONSENT TO PRODUCTION OF ELECTRONIC MAIL MESSAGES; AND<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br><br>[Declaration of Jon D. Corey filed concurrently]<br><br>Hearing Date:    TBA<br>Time:            TBA<br>Place:           Telephonic Hearing<br><br>Discovery Cut-off:      January 28, 2007<br>Pre-trial Conference:   May 5, 2008<br>Trial Date:             May 27, 2008 |

07209/2296350 1

EXHIBIT 52

PAGE 478

MATTEL, INC.'S MOTION TO COMPEL RE MACHADO

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that, at a time and place of hearing to be set by

3  Discovery Master Hon. Edward Infante (Ret.), Mattel, Inc. will, and hereby does,

4  move the Discovery Master, pursuant to Federal Rules of Civil Procedure 30 and 37,

5  for an order (a) compelling the deposition of defendant Carlos Gustavo Machado

6  Gomez in Los Angeles, California or Mexico City, Mexico, on or before December

7  30, 2007; and (b) compelling Machado to provide his consent to the disclosure of

8  relevant electronic mail messages from his internet service providers.

9      This Motion is made on the ground that, despite repeated requests by Mattel

10  and a prior agreement that Machado's deposition would take place on October 26,

11  2007, counsel for Machado now refuses to produce Machado, a party-defendant in

12  this case, for deposition or even to offer dates for his deposition. This Motion is

13  made on the further ground that Machado has used electronic mail services from

14  third-party internet service providers for communications in connection with his

15  trade secret theft and disloyalty, but has refused to produce electronic mail messages

16  or to consent to their production from third-parties.

17      This Motion is based on this Notice of Motion and Motion, the accompanying

18  Memorandum of Points and Authorities, the Declaration of Jon D. Corey, the

19  records and files of this Court, and all other matters of which the Discovery Master

20  may take judicial notice.

21

22

23

24

25

26

27

28

07209/2296350.1

EXHIBIT 52

PAGE 479

ii

MATTEL, INC.'S MOTION TO COMPEL RE MACHADO

1              **Statement of Local Rule 37-1 Compliance**

2         The parties met and conferred regarding this motion on October 18, 2007 and

3 times thereafter.

4

5 DATED:  November 15, 2007       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6

7                         By_____

8                            Jon D. Corey
                           Attorneys for Mattel, Inc.

9

10

1 available for deposition, but said that he would need to "update [Mattel] on Machado's
2 availability for his deposition as [counsel] get[s] more information."[16]

3     Mattel then met with Machado's counsel to discuss, among other things,
4 Machado's deposition.[17] Mr. Cote told Mattel that the deposition could not take place
5 on October 26, 2007 because of restrictions on Machado's mobility to and from Mexico
6 resulting from the criminal indictment in Mexico, but he assured Mattel that alternate
7 deposition dates would be forthcoming.[18] Mr. Cote also began asserting that because of
8 the criminal charges pending against him in Mexico, Machado would be invoking the
9 Fifth Amendment for *some* questions at his deposition.[19] He asked Mattel to consider a
10 stipulation that Machado will assert his Fifth Amendment Privilege to avoid the need
11 for a deposition entirely.[20] Mattel declined because Machado would not and could not
12 agree that he will invoke for all questions and again asked for deposition dates.[21]

13     Mr. Cote did not respond. Mattel sent another letter requesting "dates in
14 November [] when Machado will be available for deposition."[22] By telephone, Mr.
15 Cote told Mattel that Machado was restricted from leaving Mexico due to criminal
16 proceedings against him there as a result of the his theft of Mattel's trade secrets and
17 did not provide any replacement dates for Machado's cancelled deposition.[23] Mattel
18 reiterated its offer to take Machado's deposition in Mexico and requested dates when

19
20 [16] See id.
21 [17] See Letter from B. Dylan Proctor to Cote, dated October 18, 2007, Corey Dec., Exh. 19.
22 [18] See id.
23 [19] See id.
24 [20] See id.
25 [21] See id.
26 [22] See Letter from Stephen Hauss to Cote, dated October 24, 2007, Corey Dec., Exh. 20.
27 [23] See Letter from Hauss to Cote, dated October 25, 2007, Corey Dec., Exh. 21.
28

EXHIBIT **52**

PAGE **481**

-5-

MATTEL, INC.'S MOTION TO COMPEL RE MACHADO

1   he would be available in Mexico.[24]  Mr. Cote did not respond, so Mattel sent another

2   letter that reiterated the need to schedule Machado's deposition.[25]

3       Mr. Cote responded in a November 1, 2007 letter. He stated that Machado "may

4   be available for deposition at the end of November in the United States,"[26] but

5   suggested that a deposition "[would] not be fruitful" because Machado would assert his

6   Fifth Amendment right to most of Mattel's questions. [27]  Mattel explained in response

7   that any Fifth Amendment right could not allow him to avoid his deposition entirely.

8   Mattel offered to take Machado's deposition in Mexico to accommodate his travel

9   restrictions due to his prosecution in Mexico.[28]  Mattel again requested deposition dates

10  in the location of counsel's choice in Los Angeles or in Mexico.[29]

11      Mr. Cote responded on November 5, 2007. He provided no dates for Machado's

12  deposition.  Instead, he reiterated that this deposition "[would] not be productive"

13  because it is "no secret that [Mattel] plans to ask Machado questions concerning

14  [Mattel's] allegations" to which Machado will invoke the Fifth Amendment.[30]  Despite

15  Mattel's earlier offer to hold the deposition in a location of counsel's choice, and

16  rejecting Mattel's efforts to resolve any issue over the location of Machado's deposition,

17  counsel claimed that Mattel had provided no "justification" for "forcing counsel to

18

---

19  [24]  See id.

20  [25]  See Letter from Zeller to Nolan, dated October 29, 2007, Corey Dec., Exh.
21  23.

22  [26]  See Letter from Cote to Zeller, Corey, Proctor and Hauss, dated November 1,
    2007, Corey Dec., Exh. 24.

23  [27]  See id.

24  [28]  See Letter from Zeller to Cote, dated November 3, 2007, Corey Dec., Exh.
25  25.

26  [29]  See id.

27  [30]  See Letter from Cote to Zeller, dated November 5, 2007, Corey Dec., Exh.
    26.

28

EXHIBIT 52

PAGE 482

-6-

MATTEL, INC.'S MOTION TO COMPEL RE MACHADO

07209/2296350.1

1   incur the expense of traveling to Mexico" for this deposition.  Mr. Cote then invited

2   Mattel to move to compel.[31]

3       Machado Has Failed to Produce Emails to Which Mattel Is Entitled.  Mattel

4   served Machado with Requests for Production on September 11, 2007 requesting,

5   among other things, relevant emails sent to and from him, including from the

6   <plot04@aol.com> account.[32]  Machado has produced no such e-mails to Mattel with

7   these documents.  Mattel also served a subpoena on Yahoo! on October 29, 2007

8   requesting the production of emails from Machado's <gus_cmt@yahoo.com> account.[33]

9   On that same day, Mattel sent a letter to Machado informing him that a subpoena had

10  been served on Yahoo! requesting documents identical to those requested in Mattel's

11  Requests for Production served on Machado on September 11, 2007 and requesting his

12  consent to the release of his emails from Yahoo! under the Stored Electronic

13  Communications Act.[34]  The letter attached a form for Machado to sign indicating his

14  consent.[35]  On November 1, 2007, Mr. Cote responded.  He wrote that "Mr. Machado

15  has already produced documents from his Yahoo! e-mail account."[36]  In reality,

16  Mr. Machado has produced only 124 pages of documents, none of which are emails

17

18

19

20     [31]  Id. at 2.

21     [32]  Mattel's First Set of Requests for Documents and Things to Machado, dated

22  September 11, 2007, Corey Dec., Exh. 30.

23     [33]  Notice of Subpoena Issued to Yahoo!, dated October 29, 2007, Corey Dec., Exh. 31.

24     [34]  Letter from Corey to Machado, care of Cote, dated October 29, 2007, at 1-2,

25  Corey Dec., Exh. 32.

26     [35]  Id.

27     [36]  Letter from Cote to Zeller, et al., dated November, 2007, at 2, Corey Dec., Exh. 25.

28

EXHIBIT 52

PAGE 483

-7-

MATTEL, INC.'S MOTION TO COMPEL RE MACHADO

1   his consent to the release of these documents, he should be sanctioned. See O'Grady v.

2   Superior Court, 139 Cal. App. 4th 1423, 1446 (2006) (stating that where a party to an

3   email communication being sought is also a party to the litigation it is within the court's

4   power to require the party's consent to disclosure of the communication on pain of

5   discovery sanctions). Machado's only excuse here -- that he himself has supposedly

6   already produced the emails--is demonstrably false.  In reality, Mr. Machado has

7   produced only 124 pages of documents, none of which are emails from the Yahoo!, or

8   any other, account.[44]

9        Mattel respectfully requests that the Discovery Master order Machado to provide

10  written consent to the production of relevant e-mails from any e-mail account (and to

11  identify each e-mail account) he has used in the past five years.

12                              **Conclusion**

13       For the foregoing reasons, the Discovery Master should grant Mattel's motion.

14

15  DATED:  November 15, 2007        QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
16

17                               By _____
18                                  Jon D. Corey
                                    Attorney for Mattel, Inc.
19

20

21

22

23

24

25

26
    _____
27  [44]   Machado's Initial Disclosures Pursuant to Rule 26(a)(1), dated September 24,
    2007, Corey Dec. Exh. 29.
28

**Exhibit 53**

**From:** Dylan Proctor
**Sent:** Friday, December 07, 2007 5:47 PM
**To:** 'Alexander Cote'
**Cc:** Michael T Zeller; Jon Corey
**Subject:** RE: Gustavo Machado

Alex, thanks for your note below. This will confirm that Mattel is willing to take Mr. Machado's deposition in
Mexico City on January 15, 2008. Please do not hesitate to contact me if you have questions. Regards,


B. Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3112
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: dylanproctor@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the
recipient(s) named above. This message may be an attorney-client communication and/or work product and as
such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible
for delivering it to the intended recipient, you are hereby notified that you have received this document in error

EXHIBIT __53__

PAGE __485__

Gustavo Machado                                                          Page 2 of 2

and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have
received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Alexander Cote [mailto:acote@obsklaw.com]
**Sent:** Thursday, December 06, 2007 5:22 PM
**To:** Dylan Proctor
**Subject:** Gustavo Machado

Dylan,
        Mr. Machado will be available in Mexico City for deposition on 15th of January. Please let me know if
that day is convenient.

Thanks,

Alexander H. Cote
Overland Borenstein Scheper & Kim LLP
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071-3101
(t) 213-613-4660
(f) 213-613-4656

12/10/2007

EXHIBIT __53__
PAGE __486__

**Exhibit 54**

CONFORMED

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:   (213) 443-3100

8  Attorneys for Mattel, Inc.

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

12  | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
13  | Plaintiff, | Consolidated with<br>Case No. CV 04-09059 |
14  | vs. | Case No. CV 05-02727 |
15  | MATTEL, INC., a Delaware<br>corporation, | Hon. Stephen G. Larson |
16  | Defendant. | NOTICE OF MOTION AND MOTION<br>OF MATTEL, INC. FOR LEAVE TO<br>TAKE ADDITIONAL DISCOVERY |
17  |  | AND OBJECTIONS TO DISCOVERY<br>MASTER ORDER OF SEPTEMBER |
18  | AND CONSOLIDATED ACTIONS | 28, 2007; AND |
19  |  | MEMORANDUM OF POINTS AND<br>AUTHORITIES |
20  |  |  |
21  |  | [Declaration of B. Dylan Proctor filed<br>concurrently] |
22  |  | Hearing Date:  January 7, 2008 |
23  |  | Time:            10:00 a.m.<br>Courtroom:    1 |
24  |  | **Phase 1:** |
25  |  | Discovery Cut-off:    January 28, 2008<br>Pre-trial Conference:  May 5, 2008 |
26  |  | Trial Date:            May 27, 2008 |

27
28

11 - 19

-i-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT ___54___

PAGE ___487___

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on January 7, 2008, at 10:00 a.m., or as soon
3  thereafter as the matter may be heard, in the courtroom of Honorable Stephen G.
4  Larson, located at 3470 Twelfth Street, Riverside, California, 92501, Mattel, Inc. will,
5  and hereby does, move the Court, pursuant to Federal Rule of Civil Procedure 26(b)
6  and the Court's February 12, 2007 Scheduling Order, for an order granting Mattel leave
7  to take additional depositions, including Rule 30(b)(6) depositions of defendants MGA
8  Entertainment, Inc., and MGAE de Mexico S.R.L. de C.V., beyond the current limit set
9  by the Court and to serve additional interrogatories on defendants.  Pursuant to 28
10  U.S.C. § 636(b)(1), Mattel also seeks an additional 12 hours to depose Carter Bryant, in
11  addition to the seven hours already permitted by Discovery Master Infante.

12         Mattel makes this Motion on the grounds that the breadth and complexity of this
13  case warrant more than the 24 depositions and 50 interrogatories permitted by the
14  Court's Scheduling Order.  Mattel further makes this Motion on the grounds that, given
15  Bryant's central role in the hundreds of products that MGA has sued upon in this case,
16  and because both the parties and third-parties have produced many millions of pages of
17  documents since Mr. Bryant's deposition in 2005, seven hours is not enough time to
18  fully depose Mr. Bryant.

19         This Motion is based on this Notice of Motion and Motion, the accompanying
20  Memorandum of Points and Authorities, the Declaration of B. Dylan Proctor filed
21  concurrently herewith, the records and files of this Court, and all other matters of which
22  the Court may take judicial notice.

23
24
25
26
27
28

07209/2299353.1

-ii-

EXHIBIT __54__

PAGE __488__

1     **Statement of Local Rule 7-3 Compliance**

2        The parties met and conferred pursuant to <u>Local Rule</u> 7-3 on October 3, 2007,

3   and times thereafter, but were not able to resolve this motion.

4

5   DATED: November 19, 2007       QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP

6

7                                         By_____

8                                            Jon Corey
                                           Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iii-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT __54__

PAGE __489__

1

## TABLE OF CONTENTS

2                                                                                    **Page**

PRELIMINARY STATEMENT..........................................................................................1

STATEMENT OF FACTS ..........................................................................................3

ARGUMENT .........................................................................................................6

I.    THE RULES CONTEMPLATE ADDITIONAL DISCOVERY.....................6

    A.    Each Category of Claims Warrants More Depositions..........................8

        1.    The Bratz Claims Require Additional Depositions ....................8

        2.    Mattel's Trade Secret and RICO Claims and MGA's Unfair Competition Claims Require Additional Depositions ..............12

    B.    Mattel Needs Additional Depositions Because the Integrity of MGA's and Bryant's Preservation of Documents Is At Issue...............14

    C.    Mattel Seeks Leave to Take 30(b)(6) Depositions On Non-Duplicative Topics.................................................................................15

    D.    Mattel Meets The Requirements for Additional Discovery.................15

II.   THE COURT SHOULD GRANT LEAVE WITH RESPECT TO MATTEL'S INTERROGATORIES...............................................................16

III.  THE COURT SHOULD ALLOW ADDITIONAL TIME FOR THE BRYANT DEPOSITION ......................................................................20

CONCLUSION ...................................................................................................25

07209/2299353.1

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT **54**

PAGE **490**

1

## **TABLE OF AUTHORITIES**

2                                                                              **Page**

3

### **Cases**

Andamiro v. Konami Amusement of Am.,
2001 WL 535667 (C.D. Cal. April 26, 2001) ........................................................ 8

Bahn v. NME Hosps., Inc.,
929 F.2d 1404 (9th Cir. 1991) ................................................................ 22

Bromgard v. Montana,
2007 WL 1101179 (D. Mont. April 11, 2007) ............................................ 11, 18

Collaboration Prop. v. Polycom, Inc.,
224 F.R.D. 473 (N.D. Cal. 2004) ............................................................. 8

Fresenius Med. Care Hldgs, Inc. v. Roxane Labs., Inc.,
2007 WL 764302 Proctor Dec., Ex. 43 ...................................................... 23

Rx USA Wholesale, Inc. v. McKesson Corp.,
2007 WL 1827335 (E.D.N.Y. June 25, 2007) ..................................... 7, 11, 19

Whittingham  v. Amherst Coll.,
163 F.R.D. 170 (D. Mass. 1995) ......................................................... 7

### **Statutes**

Cal. Civ. Code § 3426.1 ...................................................................... 20

Fed. R. Civ. P. 26(b) ..................................................................... 8, 20

Fed. R. Civ. P. 30(a)(2)(A) ............................................................. 7, 20

Fed. R. Civ. P. 33 ..................................................................... 7, 8, 20

Local Rule 7-3 ................................................................................ 3

Fed. R. Civ. P. 30(b)(6) ......................................................... 9, 14, 16, 17

Fed. R. Civ. P. 53(e) ..................................................................... 21

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

19/2299353.1

EXHIBIT **54**

PAGE **491**

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

In its Scheduling Order, the Court limited each side to 50 interrogatories and 24 fact depositions. The Court recognized, however, that the case's complexity could require additional depositions or interrogatories and invited motions for additional discovery, if necessary: "I don't want to say they are soft limits [on the number of depositions], but they are limits which the Court would certainly understand or would invite counsel to submit a motion to expand if there's reason to. But I just want to have some parameters placed on this at the outset." Likewise, with respect to the interrogatory limit, the Court stated: "[L]et's try and work within the confines of the 50 interrogatories, and if you need more, again, the Court is going to be forthcoming, if there's a need for it."[1] Mattel respectfully submits that time has come.

Under the Federal Rules, leave to take additional discovery "shall be granted" to the extent consistent with the principles set forth in Rule 26(b)(2). Fed. R. Civ. P. 30(a)(2)(A) & 33(a). The additional discovery Mattel seeks is appropriate under that framework. It is not duplicative of prior discovery, Mattel has not had an adequate opportunity to take discovery on these matters, and the substantial benefits of discovery on these central issues outweigh any burden. MGA has identified many dozens of witnesses with knowledge of the parties' claims or defenses. Mattel has sued MGA for inducing several Mattel employees to misappropriate many thousands of pages of documents containing Mattel trade secrets over an extended period of time. For its part, MGA has accused over 400 Mattel products of infringing the trade dress of more than 200 MGA products. As MGA has proclaimed, it will be seeking "billions" of dollars from Mattel on its claims alone. Additional depositions are warranted given the breadth and complexity of the claims and defenses in this case and the stakes involved.

---

[1]   February 12, 2007 Scheduling Conference Tr. at 22:12-15 and 24:5-7, Exhibit 7 to the Declaration of B. Dylan Proctor, dated November 19, 2007 ("Proctor Dec.").

-1-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT __54__

PAGE __492__

To date, Mattel has taken 18 depositions, which leaves Mattel with six remaining. Mattel has been able to take only one deposition on its counterclaims or defenses to MGA's unfair competition claims, and as of yet, Mattel has been unable to depose any of the individuals actively involved in the theft of Mattel's trade secrets. The specific individuals who Mattel seeks to depose are identified below, along with the justification for each. In addition, Mattel cannot obtain without the Court's leave the corporate testimony of MGA or MGAE de Mexico on the facts related to either MGA's unfair competition claims or Mattel's counterclaims. Mattel seeks leave to serve the First Notice of Deposition of MGAE de Mexico, attached as Exhibit A, and an additional Notice of Deposition of MGA, attached as Exhibit B, on those subjects.

Mattel also seeks leave to serve defendants with additional interrogatories. Mattel has served interrogatories seeking MGA's contentions with respect to the creation of Bratz and MGA's unfair competition claims. Mattel's proposed interrogatories, which are attached as Exhibit C, seek information related to Mattel's counterclaims and to MGA's claims against Mattel for alleged unfair competition, as well as certain of defendants' defenses.[2]

Finally, Mattel seeks additional time to depose Mr. Bryant. Although Bryant was deposed in 2004, since that time MGA and Bryant have produced millions of pages of documents that they had long withheld until compelled by the Court, and the scope of the claims in these consolidated cases has increased dramatically. Only after Bryant's deposition occurred, MGA asserted its broad unfair competition claims against Mattel. Only after Bryant's deposition occurred, Mattel asserted its counterclaims, including its copyright infringement and RICO counterclaims, against Bryant and other defendants. And, despite the fact that Mattel sought documents relating to the origins of Bratz

---

[2]   Because defendants refuse to answer Mattel's previously served interrogatories based on spurious claims that they exceed the 50 limit, Mattel seeks leave as to them to avoid defendants' further quarreling over the counting of interrogatories and thereby obtain obvious information about defendants' own contentions and other critical subjects.

-2-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT 54
PAGE 498

1  before Bryant's initial deposition, both MGA and Bryant were, unbeknownst to Mattel,

2  withholding such documents at the time of the deposition – this was discovered only

3  after multiple motions to compel brought by Mattel were granted.   Judge Infante

4  recognized that Bryant is the "most knowledge witness with respect to virtually all of

5  the factual issues" and claims in these matters.[3]  Judge Infante nevertheless gave Mattel

6  only seven additional hours for Bryant's deposition (on top of two hours previously

7  granted due to Bryant's and his counsel's improper conduct during the prior deposition).

8  That simply is not enough to depose Bryant on MGA's claims, Mattel's counterclaims

9  and all the newly produced evidence that post-dates the 2004 deposition.   Mattel

10 therefore requests that this Court grant additional time of another 12 hours for a total of

11 21 additional hours to question Bryant.

12                         **Statement of Facts**

13          Mattel's Original Complaint.  Mattel filed its initial Complaint on April 27, 2004,

14 alleging that Carter Bryant breached his duties to Mattel by working with and assisting

15 a Mattel competitor, MGA, while he was employed by Mattel.[4]   While at Mattel,

16 Bryant worked on the "Bratz" project.[5]  On December 7, 2004, MGA filed an answer in

17 intervention claiming that the action put at issue MGA's rights to Bratz.[6]

18          MGA's Complaint.  MGA filed a complaint against Mattel on April 13, 2005

19 alleging that Mattel engaged in "serial copycatting" of the Bratz dolls.[7]  Mattel's action

20 and MGA's action were later consolidated along with a declaratory relief action filed by

21 Bryant, which was later dismissed.[8]

22          Mattel's Counterclaims.  On November 19, 2006, Mattel moved for leave to

23 amend its complaint. The Court granted Mattel's motion, allowing Mattel's new claims

24  [3]  9/27/07 Hearing Tr. at 24:24-25:2, Proctor Dec., Ex 85.

25  [4]  Proctor Dec., Ex. 1.
    [5]  Id. ¶¶ 12-13.
26  [6]  Proctor Dec., Ex. 2.
    [7]  Proctor Dec., Ex. 3.
27  [8]  Minute Order Re Consolidation (June 19, 2006), Proctor Dec., Ex. 4.

28

109/2299353.1

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT __54__

PAGE __494__

1   to be alleged as counterclaims to MGA's complaint.[9]  Mattel filed its Second Amended
2   Answer and Counterclaims on July 12, 2007.  Mattel's counterclaims against MGA
3   Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L.
4   de C.V. include claims for copyright infringement, violation of RICO, conspiracy to
5   violate RICO, misappropriation of trade secrets, intentional interference with contract,
6   aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of
7   loyalty, conversion and unfair competition.[10]  MGA's current amended answer to
8   Mattel's counterclaims asserts twenty-two affirmative defenses.[11]

9       <u>Scheduling Conference</u>.  At the February 12, 2007, and as reflected in a Minute
10  Order, the Court limited depositions to 24 per side and interrogatories to 50 per side.[12]
11  The Court recognized that the parties might need more depositions or interrogatories:

12          I don't want to say they are soft limits [on the number of
            depositions], but they are limits which the Court would
13          certainly understand or would invite counsel to submit a
14          motion to expand if there's reason to.  But I just want to have
            some parameters placed on this at the outset.
15
            . . .
16          [L]et's try and work within the confines of the 50
            interrogatories, and if you need more, again, the Court is
17          going to be forthcoming, if there's a need for it.[13]
18

19      <u>Mattel's Interrogatories</u>.  To date, Mattel has propounded 50 interrogatories.[14]  In
20  June 2007, Mattel propounded 19 interrogatories on MGA, MGA Hong Kong, Larian

21

22      [9]  1/11/07 Order Re Mattel's Motion for Leave to Amend, Proctor Dec., Ex. 5.
        [10]  <u>See</u> Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims,
23  dated July 12, 2007 ("Mattel's Counterclaims"), Proctor Dec., Ex. 16.
        [11]  <u>See</u> MGA's Amended Answer and Affirmative Defenses ("MGA's Amended
24  Answer"), Proctor Dec., Ex. 46.  MGA had filed its original answer on August 13, 2007.
25  Proctor Dec., Ex. 17.  After meeting and conferring, MGA acknowledged deficiencies in
    its defenses and served its amended answer on September 19, 2007.
26      [12]  2/12/07 Scheduling Order, at 1, Proctor Dec., Ex. 6.
        [13]  2/12/07 Scheduling Conference Tr., at 22:12-15 and 24:5-7, Proctor Dec., Ex. 7.
27      [14]  <u>See</u> Proctor Dec., Exs. 8-12, 15, 64-68.
28

EXHIBIT __54__

PAGE __495__

1  and Bryant, seeking information about Bratz development, their affirmative defenses to

2  Mattel's claims, defendants' contentions regarding unfair competition claims and

3  MGA's benefit from Bratz.[15]  Defendants claimed they exceeded the interrogatory limit,

4  and on September 5, 2007, Judge Infante ruled that identical interrogatories served on

5  multiple parties, as well as interrogatories asking defendants to "state all facts"

6  supporting a particular contention, "identify all persons with knowledge of such facts,"

7  and "identify all documents" relevant to such facts, would each count as only one

8  interrogatory.[16]  However, an interrogatory asking a party to state facts supporting

9  different affirmative defenses would count as a different interrogatory per defense.[17]  In

10  accordance with that ruling, on September 21, 2007, Mattel served revised sets of

11  fifteen interrogatories.[18]  Defendants nevertheless still refuse to substantively answer

12  these interrogatories, including because they allegedly exceed the number permitted.[19]

13       Mattel Depositions.  To date, Mattel has taken 18 depositions.  Mattel has had

14  good cause for each of those depositions.  They include:

15  - Carter Bryant – defendant

16  - Victoria O'Connor – former MGA executive with knowledge of MGA's and Larian's spoliation of evidence

17
18  - Jaqueline Prince – witness allegedly supporting Bryant's Bratz creation story

19  - Isaac Larian – defendant

20  - Steve Linker – third party with knowledge of work on Bratz before Bryant left Mattel

21
22  - Paula Garcia – Bratz project manager from the start who worked on Bratz with Bryant before he left Mattel

23  - Brooke Gilbert – Bryant's niece with knowledge of Bryant's computer on which Bryant installed and used "Evidence Eliminator"

24

---

25  [15]  Proctor Dec., Ex. 13.

26  [16]  9/5/07 Order Re Mattel's Interrogatories, at 5-6, Proctor Dec., Ex. 14.

27  [17]  See id. at 7.

28  [18]  Proctor Dec., Ex. 45.
[19]  See Proctor Dec., Exs. 73-74.

-5-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT ___54___

PAGE ___496___

- Kerri Brode – MGA employee with knowledge of Bryant's work on Bratz while at Mattel

- Dave Malacrida – MGA public relations employee with knowledge regarding early Bratz design and marketing

- Janet Bryant – Bryant's mother and relied upon by Bryant to establish alleged date of Bratz creation

- Thomas Bryant – Bryant's father and relied upon by Bryant to establish alleged date of Bratz creation

- Sarah Chui – worked on Bratz in 2000 for MGA Hong Kong

- Richard Irmen.– Bryant's partner and relied upon by Bryant to establish alleged date of Bratz creation

- Maureen Tkacik – *Wall Street Journal* reporter to whom Larian stated, in an interview, that he chose Mr. Bryant's idea for the Bratz over several others after holding "a sort of fashion-doll design contest in late 1999" -- a time during which Bryant was employed by Mattel and months before MGA and Bryant now say they first were introduced

- MGA Entertainment, Inc. – defendant

- MGA Entertainment (HK) Limited – defendant

- Schyler Bacon – MGA employee who recruited Mattel employees who stole trade secrets

- Denise O'Neal – *Chicago Sun Times* reporter to whom Larian made prior inconsistent statements, including that MGA's creative team decided to use the "Brats" name but to change the "s" to a "z"

## Argument

### I.    THE RULES CONTEMPLATE ADDITIONAL DISCOVERY

The Federal Rules require that a party obtain leave before serving interrogatories or taking depositions beyond the limits established by the Court.  See Fed. R. Civ. P. 33(a) (interrogatories); id. 30(a)(2)(A) (depositions).  The purpose of these limits is to allow the Court to "maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of [w]ide ranging discovery".  Rx USA Wholesale, Inc. v. McKesson Corp., 2007 WL 1827335, at *2-3 (E.D.N.Y. June 25, 2007) (quoting Whittingham v. Amherst Coll., 163 F.R.D. 170, 171-72 (D. Mass. 1995)).  The limits, however, are not intended to "prevent needed discovery," and courts have "broad[] discretion" to allow

EXHIBIT __54__

PAGE __497__

1  additional discovery "based on the complexity" of the case at hand.  Notes of the
2  Advisory Committee (1993) to Fed. R. Civ. P. 26(b) & 33.  Leave to take additional
3  discovery "shall be granted" to the extent consistent with the principles set forth in Rule
4  26(b)(2). Fed. R. Civ. P. 30(a)(2)(A), & 33(a). Courts permit additional interrogatories
5  or depositions after considering whether:

6      (1) the discovery sought is unreasonably cumulative or duplicative, or is
       obtainable from some other source that is more convenient, less
7      burdensome, or less expensive; (2) the party seeking discovery has [had]
8      ample opportunity obtain the information sought; or (3) the burden or
       expense of the proposed discovery outweighs its likely benefit, taking into
9      account the needs of the case, the amount in controversy, the party's
10     resources, and the importance of the proposed discovery in resolving the
       issues.
11

12  Andamiro v. Konami Amusement of Am., 2001 WL 535667, at *2 (C.D. Cal. April
13  26, 2001) (depositions); see also Collaboration Prop. v. Polycom, Inc., 224 F.R.D.
14  473, 475 (N.D. Cal. 2004) (interrogatories).

15  **II.     MATTEL SHOULD BE GRANTED ADDITIONAL DEPOSITIONS**

16      Mattel should be permitted to take more than 24 depositions in these
17  consolidated cases. This action contains three broad categories of significant claims,
18  each of which necessitates additional depositions:  Mattel's Bratz-related claims,
19  MGA's unfair competition claims, and Mattel's trade secret theft and RICO claims.
20  MGA's supplemental initial disclosures identified 86 witnesses with knowledge of
21  MGA's claims and defenses, 62 of whom are not Mattel employees.[20]  Mattel's
22  supplemental disclosures contain nearly double the number of witnesses with
23  knowledge, only 43 of whom are Mattel employees.[21]  Based on the million-and-a-half
24  pages that MGA has recently produced, Mattel is preparing third supplemental
25

26  [20]  See MGA Entertainment, Inc.'s Supplemental Disclosures and MGA Entertainment
    (HK) Limited, MGAE de Mexico S.R.L. de C.V. and Larian's Initial Disclosures Under
27  Rule 26(a)(1), dated September 21, 2007, at 1-16, Proctor Dec., Ex. 18.
    [21]  See Proctor Dec., Ex. 19, at 3-19.
28

07209/2299353.1

-7-

EXHIBIT 54

PAGE 498

1   disclosures which will name additional witnesses. Mattel can rely on Rule 30(b)(6) to

2   obtain some information, but Mattel cannot effectively prosecute or defend these cases

3   with only 24 depositions.

4   **A.   Each Category of Claims Warrants More Depositions**

5   **1.   The Bratz Claims Require Additional Depositions**

6          The number of witnesses involved with the creation of Bratz or with knowledge

7   of Bryant's purported story about when he created – and the inconsistent stories that

8   MGA spun in the media – justify additional depositions. For example, Bryant claims

9   that he created Bratz when he was not a Mattel employee.[22] He initially identified three

10  people who he claimed could corroborate this story:   Tom and Janet Bryant (his

11  parents) and Richard Irmen (his partner). Bryant's mother for the first time in this case

12  recently identified a fourth:  her friend, Jeanne Galvano.  Bryant will introduce their

13  testimony to vouch for his story, so Mattel obviously needs and is entitled to depose

14  them.  Similarly, Isaac Larian has repeatedly made conflicting, inconsistent statements

15  about Bratz's creation to the press, among others.[23]  Mattel thus far has deposed two of

16  the journalists who wrote those stories – depositions where Mattel's questioning lasted

17  far less than an hour. Bryant's "alibi" witnesses and the reporters alone use up one-third

18  of Mattel's originally allotted 24 depositions.

19          In addition, at the time of the Scheduling Order, Bryant and MGA had said only

20  a handful of people worked directly on Bratz prior to 2002:  Bryant, Anna Rhee,

21  Mercedeh Ward, Margaret Leahy, Paula Garcia and unidentified people in Hong

22  Kong.[24]  In a recent supplemental interrogatory response, MGA identified 11 more

23  people who worked on the first Bratz dolls, including Sarah Halpern, Veronica Marlow,

24

25  [22]   Bryant Dep. Tr. at 140:9-141:8, Proctor Dec., Ex. 20.

26  [23]   Proctor Dec., Ex. 21.
    [24]   See Bryant's Objections and Responses to Second Set of Interrogatories

27  Propounded by Mattel, Inc., at 4, Proctor Dec., Ex. 22; MGA's Response to Mattel's
    Second Set of Interrogatories, at 4:17-20, Proctor Dec., Ex. 23.

28

-8-

EXHIBIT __54__

PAGE __499__

1  Cecilia Kwok, David Dees, Stephen Tarmichael, Edmond Lee, Franki Tsang, Samuel
2  Wong, Stephen Lee, William Ragsdale and Wendy Ragsdale (and Mattel now knows
3  that even this list is incomplete).[25]  This list does not include anyone involved in early
4  sales, marketing, product testing or advertising of Bratz.

5        When a deponent possesses unique information, courts generally grant leave for
6  additional depositions because they do not undermine the key purpose of the limits –
7  preventing duplicative discovery.  See, e.g., Bromgard v. Montana, 2007 WL 1101179,
8  at *2 (D. Mont. April 11, 2007).  Courts deny additional depositions when deponents
9  are likely to have common, interchangeable information.  And, even in such instances,
10  courts may allow a limited number or sequential depositions to proceed.  See, e.g., Rx
11  USA, 2007 WL 1827335, at *3 (allowing additional deposition testimony on one but
12  not both individuals with generalized information).

13        Here, Mattel seeks depositions of witnesses who each have specific, unique
14  personal knowledge of the Bratz claims as well as about other claims in the case.  All of
15  them are third parties:

16    • Sarah Halpern – worked on the patterns for the first Bratz dolls
17    • Margaret Leahy – sculpted the first Bratz dolls and 4-Ever Best Friends
18    • Veronica Marlow – worked on the first Bratz doll fashions as well on
19      products at issue in MGA's claims
20    • Elise Cloonan – worked with Bryant on his Bratz pitch to MGA while both
       were employed by Mattel
21    • Jesse Ramirez – worked on molds for Bratz
22    • Jeanne Galvano – alleged witness Bryant's mother recently claimed can
       verify facts relating to Bratz's creation
23
24    • Stephen Lee – Managing Director of MGA Hong Kong during development
       of Bratz and other products at issue

25  ――――――――――――――――――――――――――――――
26  [25]  MGA's Third Supplemental Responses to Mattel's Second Set of Interrogatories, at
    4:1-6:3, Proctor Dec., Ex. 24; see Linker Dep. Tr. at 59:22-64:9, Proctor Dec., Ex. 25
27  (testifying that Paula (Treantafelles) Garcia and Bryant approached him and his partner,
    Liz Hogan, before Bryant left Mattel to work on Bratz).
28

EXHIBIT  54
PAGE  500

- Cecilia Kwok – MGA Hong Kong employee principally involved with first Bratz dolls

- Farhad Larian – brother of Isaac Larian, who sued Isaac Larian and alleged, inter alia, that MGA was working on Bratz by early 2000 (months before MGA and Bryant claim to have met) when he was a part owner of MGA[26]

- Certain as yet unidentified attorneys who represented parties to disputes between Isaac Larian and Farhad Larian in which the creation of and value of Bratz was at issue

- Sandra Bilotto – sculptor who worked on Prayer Angel dolls at issue[27]

- Anne Wang – represented Bryant in negotiations with MGA while he was a Mattel employee that led to the agreement dated "as of September 18, 2000"[28]

- David Rosenbaum – represented MGA in negotiations with Bryant's first agreement with MGA[29]

- Christensen Glaser LLP – firm to which Victoria O'Connor faxed the MGA/Bryant agreement that Isaac Larian had ordered her to alter[30]

- Lucy Arant – lawyer with knowledge of MGA's first use of Bratz

- Mitchell Kamarck – former MGA counsel who responsible for patent applications, including those in which Isaac Larian had claimed to be the inventor of Bratz features that Bryant has since testified he created[31]

- Carol Witschell – lawyer who worked on MGA trademark applications and other trademark matters at issue

- Nana Ashong – former MGA employee who stated Bratz was created during Bryant's employment by Mattel[32]

- Larry McFarland – wrote MGA copyright registrations that stated the Bratz dolls were created during 2000 and that, after this suit was filed, MGA claimed were incorrect

- Eric Yip – MGA Hong Kong Sales Administrator in 2000 and 2001, when Bratz were created and first shipped to Bandai in Spain[33]

---

[26]   See Larian Dep. Tr. at 159:17-160:14, Proctor Dec. Ex. 54.
[27]   Brode Dep. Tr. at 303:9-316:16, Proctor Dec. Ex. 55; Dep. Exhs. 607, 608, 609, Proctor Dec., Ex. 56.
[28]   See Bryant Tr. at 39:6-42:18, Proctor Dec. Ex. 60.
[29]   See O'Connor Dep. Tr. at 94:1-95:21, Proctor Dec., Ex. 61.
[30]   See O'Connor Tr. 17:3-19:19, Proctor Dec., Ex 75.
[31]   See Armstrong Dep. Tr. at 10:7-12, 26:16-23, 244:18-21, Proctor Dec. Ex. 62.
[32]   See Brode Tr. at 87:13-88:11, Proctor Dec., Ex. 55.
[33]   See Harris Dep. Tr. at 121:16-122:17, Proctor Dec. Ex. 63.

-10-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

07209/2299353.1

EXHIBIT **54**
PAGE **551**

- Gentle Giant Studios – created relevant moldings and casts while Bryant was still employed at Mattel[34]

- Christopher Palmeri – *Business Week* reporter who wrote that Larian purportedly "got the idea for Bratz after seeing his own kids run around in navel-bearing tops and hip-huggers"[35]

- Jeff Weiss – *San Fernando Valley Business Journal* reporter who quoted another inconsistent Larian statement concerning the origin of Bratz[36]

- Kickapoo High School – where Bryant allegedly found inspiration for Bratz and author of documents refuting that claim

- LA Focus – conducted Bratz focus groups, including focus groups that MGA denies occured

- Joyce Ng – independent contractor who moderated Bratz focus groups

- Rachel Harris – former MGA employee who worked on initial Bratz packaging as well as on other packaging which MGA's claims rest on

- Peter Marlow – spouse of Veronica Marlow who negotiated millions of dollars in payments for Bratz from Bryant on her behalf

- Andreas Koch – former MGA manager who has knowledge of Bryant's initial contacts with MGA

- Kami Gillmour – former Mattel and MGA employee who has knowledge regarding Paula Garcia's employment with MGA, confidential information taken from Mattel and MGA's projects at issue

- Mercedeh Ward – engineer on initial Bratz dolls and author of emails reflecting the use of Mattel property in its creation

- Moss Adams – accounting firm with knowledge of MGA's profits and distributions thereof to Larian (who owns 90% of MGA's shares)

- Wachovia Bank – bank identified as being involved in early Bratz financing and knowledgeable about MGA's net worth or value

- Amy Myers – formerly with MGA and has knowledge of Prayer Angels project that MGA has raised as a defense

- Two or three parties MGA sued for infringement of Bratz and whose identities are not yet known to Mattel – they will have knowledge of the dolls and other properties MGA has sued on in the past, which is relevant to refuting MGA's current claims that earlier iterations of Bratz products look nothing like subsequent iteration of Bratz products

---

[34] See Proctor Dec., Ex 72.
[35] Proctor Dec. Ex. 52.
[36] Proctor Dec. Ex. 53.

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT 54

PAGE 502

1    Further, many of these same witnesses are also knowledgeable as to MGA's

2  claims of unfair competition and Mattel's trade secret and RICO claims, as they

3  continued to work with MGA in later years.  For example, MGA has already identified

4  Halpern, Kwok, Leahy, Marlow, Lee, Ward and Yip as individuals involved with the

5  products at issue.[37]  Likewise, Ramirez continued working on molds for subsequent

6  Bratz dolls through at least 2005,[38] while   Kamarck,[39]  Witschell,[40]  Arant, and

7  McFarland[41] were involved in subsequent Bratz-related intellectual property matters.

8  As such, testimony from these witnesses is essential for both phases of trial.

9        2.    **Mattel's Trade Secret and RICO Claims and MGA's Unfair**

10              **Competition Claims Require Additional Depositions**

11    Mattel has sued MGA for misappropriating Mattel trade secrets and RICO

12  violations by, among other things, stealing thousands of pages of Mattel confidential

13  information in the United States, Canada and Mexico.[42]  Mattel identified Ron Brawer,

14  Janine Brisbois, Gustavo Machado, Mariana Trueba Almada and Pablo Vargas as

15  individuals who misappropriated Mattel trade secrets.  The only person Mattel has been

16  able to depose on its counterclaims is Ms. Bacon, who coordinated MGA's recruiting of

17

18

19

20

21  [37]   See MGA's Fourth Supp. Response to Interrogatory No. 1 of Mattel's First Set of
Interrogatories Re Claims of Unfair Competition, at 10-12, 18, 19, Proctor Dec., Ex. 27.

22  [38]   See, e.g., Proctor Dec., Ex. 69 (showing various Bratz-related work in 2005).

23  [39]   See, e.g., Armstrong Tr. 26:5-23, Proctor Dec., Ex. 62 (discussing involvement in
Bratz-related patent applications through 2004).

24  [40]   See, e.g., Proctor Dec., Ex. 70 (discussing involvement with Bratz registrations).

25  [41]   See, e.g., Proctor Dec., Ex. 71 (discussing involvement with Bratz licensing).

26  [42]   Mattel's Counterclaims ¶¶ 37-54, 70-76, Proctor Dec., Ex 16.

27

28

-12-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT __54__

PAGE __503__

1    Mattel employees.[43]   Accordingly, Mattel seeks leave to take the depositions of the

2    following witnesses on such claims:[44]

- Ron Brawer – has knowledge of stolen Mattel trade secrets in the U.S.

- Janine Brisbois – former Mattel employee who stole Mattel trade secrets

- Gustavo Machado – former Mattel employee who stole Mattel trade secrets

- Mariana Trueba – former Mattel employee who stole Mattel trade secrets

- Pablo Vargas – former Mattel employee who stole Mattel trade secrets

- Ricardo Abundis – has knowledge of stolen Mattel trade secrets in Mexico

- Jorge Castilla – believed to have stolen Mattel trade secrets in the U.S.

- Nic Contreras – believed to have knowledge of stolen Mattel trade secrets

- Dan Cooney – believed to have knowledge of stolen Mattel trade secrets

- Susan Kuemmerle – believed to have knowledge regarding stolen Mattel trade secrets in Mexico

- Shirin Salemnia – believed to have knowledge of stolen Mattel trade secrets

- MGAE de Mexico – defendant to trade secret theft and RICO claims

- MGA Entertainment, Inc. – defendant

   Further, MGA has accused Mattel of trade dress infringement and dilution and

unfair competition in connection with more than 440 products.[45]   MGA has identified

---

[43]   Bacon Dep. Tr. at 12:12-13, 51:22-52:17, 86:8-12, and 114:19-116:9, Proctor Dec., Ex. 28. And even with respect to Ms. Bacon's deposition, MGA attempted to prevent her from testifying on the grounds that Mattel had not noticed her deposition individually, but only as a Rule 30(b)(6) designee.   See Proctor Dec., Ex. 29.

[44]   These are those who Mattel has identified to date.   Mattel anticipates that there may be more who will need to be deposed in connection with MGA's unfair competition claims and Mattel's counterclaims because (a) it continues to review the over one-and-a-half million pages of documents that MGA produced in the past month and (b) MGA, to date, has failed to identify how it anticipates defending Mattel's counterclaims or which documents or witnesses it will rely upon to do so, including by its ongoing failures to answer Mattel contention interrogatories related to its defenses to Mattel's counterclaims.

[45]   MGA's Supp. Response to Interrogatory No. 2 Of Mattel, Inc.'s First Set of Interrogatories Re Claims of Unfair Competition, at 5-19, Proctor Dec., Ex. 26.

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT ___54___

PAGE ___504___

1  117 witnesses with knowledge of the creation or promotion of those products,[46]
2  including many of the persons listed above.  Mattel has taken the depositions of only
3  six of those 117 named individuals, and has not yet been able to depose two of them,
4  Bryant or Larian, regarding the unfair competition allegations.

5         **B.**    **Mattel Needs Additional Depositions Because the Integrity of MGA's**
6              **and Bryant's Preservation of Documents Is At Issue**

7        Mattel also is entitled to inquire about MGA's and Bryant's preservation and
8  production of evidence.  For example, as MGA's designee on document preservation
9  testified, MGA had only obtained off-site documents as of the summer of 2007 and had
10  searched none of these documents for responsive documents, even though the Court
11  had ordered MGA to produce them and MGA had previously represented that its
12  production was complete.[47]  Further, MGA's designee on MGA's electronic document
13  preservation and collection testified that MGA's only search of such information was a
14  single search of Isaac Larian's e-mails in 2005, nothing more.[48]  MGA's designee
15  repeatedly testified that Joe Tiongco, who Mattel seeks to depose, has more
16  knowledge.[49]  In the same vein, Mattel seeks to depose Daphne Gronich, who provided
17  the preservation declaration on MGA's behalf.[50]  In addition, there are serious issues
18  about Bryant's hard drives, including because of Bryant's prior counsel's conflicting
19  representations about their collection and preservation – and indeed even their
20  existence.  Mattel therefore seeks testimony on these subjects.[51]  Bryant's belated
21  revelation that he installed and used the "Evidence Eliminator" program on these drives

22
23     [46]   MGA's Fourth Supp. Resp. Unfair Comp. No. 1, at 5-16, Proctor Dec., Ex. 27.
   [47]   9/24/07 Stip. and Order, Proctor Dec., Ex. 30; Tonnu Dep. Tr. at 612:13-612:15,
24  620:14-621:21, Proctor Dec., Ex. 31; 8/13/07 Order, at 14:18-22, Proctor Dec., Ex. 32.
   [48]   See Lockhart Deposition Tr. at 265:1-11, Proctor Dec., Ex. 33.
25     [49]   Id. at 116:2-14, 150:25-151:5, 158:10-15. 258:17-259:9, 265:1-11, 266:12-267:5.
   [50]   See Dec. of Daphne Gronich in Response to Court's Request for Information
26  Regarding Document Preservation, dated September 10, 2007, Proctor Dec., Ex. 34.
   [51]   Notice of Deposition of Littler Mendelson Pursuant to Federal Rule of Procedure
27  30(b)(6), dated September 6, 2007, Proctor Dec., Ex. 35.
28

07209/2299353.1

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT **54**

PAGE **505**

1  underscores all the more the legitimacy of full and fair discovery into the integrity of
2  his drives.

3    **C.    Mattel Seeks Leave to Take 30(b)(6) Depositions On Non-Duplicative**
4        **Topics**

5        MGA objected, and the Discovery Master has ruled, that a corporate party who
6  has been deposed pursuant to a <u>Rule</u> 30(b)(6) notice cannot be deposed pursuant to a
7  subsequent notice absent Court leave.[52]  Mattel has not propounded a <u>Rule</u> 30(b)(6)
8  Notice of Deposition on MGA or MGAE de Mexico related to either MGA's unfair
9  competition claims or Mattel's counterclaims.  Mattel's Notices of Deposition—
10 attached as Exhibits A and B—contain topics of testimony which relate to those
11 claims.[53]  Mattel has not previously served any <u>Rule</u> 30(b)(6) Notice on MGAE de
12 Mexico at all, and the topics in the additional Notice to MGA are not duplicative of
13 those in Mattel's prior Notices to MGA.[54]  Mattel respectfully submits that it should be
14 granted leave to proceed with those depositions.

15   **D.    Mattel Meets The Requirements for Additional Discovery**

16       When a deponent possess unique information, courts will generally allow leave
17 for additional depositions because they do not undermine the key purpose of the

18 ─────────────────
19  [52]  9/25/07 Order Re Mattel's Motion to Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under 30(b)(6), Proctor Dec., Ex. 36.
20  [53]  <u>See</u> Exhibits A & B.  Mattel's Fourth Notice of Deposition is far less than
21  burdensome compared to MGA's recently served Notice of Deposition, which contains more than 80 topics, each of which has many sub-parts.  <u>See</u> MGA Entertainment, Inc.'s
22  Notice of Deposition of Mattel, dated September 5, 2007, Proctor Dec., Ex. 40.
    [54]  Mattel's First Notice of Deposition was narrowly tailored to obtain information
23  related to MGA's contentions that Bryant and Anna Rhee had worked on Prayer Angels,
24  not Bratz, while Bryant employed by Mattel.  Proctor Dec., Ex. 37.  Mattel's Second Notice sought information related to Bratz, including Bratz revenues, costs and profits, and
25  evidence preservation and collection.  Proctor Dec., Ex. 38.  Mattel's Third Notice sought
    follow-up information on matters that had arisen in discovery, including with respect to
26  specific electronic evidence, specific individuals who worked on the first Bratz dolls,
27  payments made to witnesses or parties, and statements to reporters related to Bratz's creation and inspiration.  Proctor Dec., Ex. 39.
28

EXHIBIT **54**

PAGE **606**

1  limits—preventing duplicative discovery. See, e.g., Bromgard, 2007 WL 1101179, at
2  *2 (D. Mont. April 11, 2007).  As explained above, Mattel seeks depositions of
3  individuals who each have specific, unique knowledge of the underlying events.

4      Without additional depositions, Mattel cannot discover the full extent of MGA's
5  wrongdoing or adequately prepare to defend against MGA's claims.  Mattel seeks a
6  declaration of ownership of Bratz works that Bryant created during his Mattel
7  employment and their derivatives – property that MGA and Bryant have claimed are
8  worth hundreds of millions of dollars and perhaps more.  Mattel has accused MGA of
9  stealing thousands of pages of Mattel's most valuable trade secrets, including product
10  lines, and strategic plans.  MGA has accused Mattel of infringing hundreds of MGA
11  products, alleging "billions" of dollars in damages.  In light of the magnitude of this
12  case, the burden or additional expense of these depositions pales in comparison to
13  Mattel's need to fully prepare to try this case.  As set forth above, the depositions that
14  Mattel seeks by this motion are not collateral, but go to the heart of its claims and
15  defenses.  See, e.g., Rx USA, 2007 WL 1827335, at *2-3 (additional depositions
16  warranted in a dispute between large corporations, given the complexity of the issues
17  and the parties' resources).

18  III.  **THE COURT SHOULD GRANT LEAVE WITH RESPECT TO**
19      **MATTEL'S INTERROGATORIES**

20      Two categories of interrogatories are involved here: first, Mattel's proposed
21  additional interrogatories that it seeks leave to serve; and, second, interrogatories which
22  Mattel has already served on defendants.

23      A.  **Mattel Should Be Allowed To Propound Additional Interrogatories**
24      Mattel seeks leave to propound additional interrogatories related to MGA's unfair
25  competition claims and Mattel's counterclaims, and MGA's evidence collection and
26  preservation.  To properly prepare for trial, Mattel seeks leave to serve interrogatories
27  requiring defendants to identify the facts, documents and witnesses it will use to prove
28  its claims, defenses and damages.  Mattel's proposed interrogatories thus seek to

07209/2299353.1

-16-

EXHIBIT __54__

PAGE __567__

1  identify which specific Mattel designs or products defendants allege infringe on
2  defendants' designs[55] and trade dress[56] and the facts supporting those legal claims.[57]
3  Additionally, Mattel seeks to determine defendants' position regarding their
4  misappropriation of Mattel documents, including whether defendants contend that no
5  such documents were obtained improperly,[58] that the information contained therein has
6  no value as a trade secret,[59] that the information had been publicly disclosed,[60] that
7  defendants did not use or disclose such information,[61] that any such disclosure neither
8  benefited defendants nor harmed Mattel,[62] and that defendants have a right to possess,
9  use or disclose any such documents in their possession.[63]  These are essential elements
10 of the trade secret theft claim.  See Cal. Civ. Code § 3426.1.  Finally, Mattel seeks
11 information related to MGA's efforts to collect and preserve evidence relevant or
12 potentially relevant to this action.[64]

13       The proposed interrogatories are consistent with the factors set out in Rule 26(b)
14 and should be permitted.  They seek disclosure of specific relevant facts regarding
15 topics which have not been the subject of prior interrogatories.  The majority of Mattel's
16 prior interrogatories focused on issues related to creation and ownership of Bratz.[65]
17 Only Mattel's set of interrogatories relating to MGA's unfair competition claims could
18
19

20  [55] See Mattel's Proposed Interrogatory No. 51.
    [56] See Mattel's Proposed Interrogatory No. 52.
21  [57] See Mattel's Proposed Interrogatories Nos. 53, 54, 55.
22  [58] See Mattel's Proposed Interrogatory No. 56.
    [59] See Mattel's Proposed Interrogatory No. 57.
23  [60] See Mattel's Proposed Interrogatory No. 58.
    [61] See Mattel's Proposed Interrogatory No. 59.
24  [62] See Mattel's Proposed Interrogatory No. 60.
    [63] See Mattel's Proposed Interrogatory No. 61.
25  [64] See Mattel's Proposed Interrogatories Nos. 63-64.
    [65] See First Set to Bryant, Proctor Dec., Ex 8; First Set to MGA, Proctor Dec., Ex. 9;
26  Second Set to Bryant, Proctor Dec., Ex. 11; Second Set to MGA, Proctor Dec., Ex. 10;
27  Third Set Revised, Proctor Dec., Ex. 45.
28

07209/2299353.1

-17-

EXHIBIT __54__

PAGE __508__

1  conceivably overlap with the proposed interrogatories.[66]  However, the interrogatories
2  already propounded focused on issues distinct from the proposed interrogatories—
3  specifically, facts relating to MGA employees involved with certain MGA products,[67]
4  MGA's alleged injuries,[68] MGA's allegations regarding Mattel's conduct with certain
5  third-parties in the industry[69] and MGA's allegations of product confusion.[70] These are
6  not duplicated in the interrogatories which Mattel is proposing.

7        Finally, the benefits of the proposed interrogatories outweigh any added burden,
8  as these type of facts are properly revealed through interrogatories, and the information
9  sought by the interrogatories will advance this litigation and avoid surprise at trial.

10   **B.    The Court Should Grant Leave With Respect To Mattel's**
11        **Outstanding Interrogatories That Defendants Will Not Answer**

12        To date, Mattel has served 50 interrogatories on the defendants.  Yet, by
13  objecting to some of those previously served interrogatories served as being compound,
14  defendants refuse to answer on the purported ground that they exceed the Court's
15  limit.[71]  Although defendants are wrong, the Court should eliminate further delay and
16  quarreling by defendants by simply granting Mattel leave to serve them regardless of
17  how they are counted.

18        Mattel has been seeking answers to these basic interrogatories for over five
19  months now.  To justify their wholesale refusal to answer them, defendants claimed
20  they exceeded the Court's limit on the number of interrogatories.  Mattel moved to
21  compel, defendants moved for a protective order, and in a September 5, 2007 Order
22  Judge Infante provided guidance on the counting of the interrogatories.  Mattel then

---

[66] See First Set Re Unfair Comp., Proctor Dec., Ex. 12.
[67] See id. No. 1.
[68] See id. No. 4.
[69] See id. Nos. 5, 8, 9, and 10.
[70] See id. No. 7.
[71] See Bryant's Objections to Revised Third Set, Proctor Dec., Ex. 73; Bryant's Objections to Amended Fourth Set, Proctor Dec., Ex. 74.

-18-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT 54
PAGE 509

1   propounded revised interrogatories that were consistent with the Discovery Master's

2   Order.

3        Defendants nevertheless claim, once again, that Mattel exceeds its 50 allotted

4   interrogatories. Not only is this without merit,[72] but it is clear that defendants rehash

5   this objection for no other reason than to obstruct. Bryant refuses to answer any

6   interrogatory past No. 27 because "Mattel has propounded more than 50

7   interrogatories."[73] And, even the minimal answers he gave to others amply confirms

8   that he continues to stonewall on even basic discovery in this case. MGA makes

9   essentially the same objection.[74] Accordingly, through nothing more than creatively

10

11   _____

[72] The essence of the defendants' objection is that Mattel's revised interrogatories are
compound interrogatories because they improperly require them to respond to individual

12   interrogatories with "different and distinct facts." See Bryant's Objections to Revised
Third Set, at 18; Bryant's Objections to Amended Fourth Set, at 4. For example,

13   defendants frivolously object to having to identify both the name of a product and its
corresponding product number. But Judge Infante ruled on this matter, explaining that

14   interrogatories "'containing subparts directed at eliciting details concerning [a] common
theme should be considered a single question,'" while interrogatories on "discrete issues"

15   should be treated as multiple interrogatories. Order re Mattel's Interrogs., at 5 (quoting 8A
Wright & Miller, Federal Practice & Procedure § 2168.1 (2d ed. 1994)); see also id. at 7.

16   The scope of Mattel's revised interrogatories is no different than those which Judge Infante
ruled were permissible, as in both instances the "subparts are related and directed to the

17   underlying details of a specifically identified" subject. See id. Judge Infante specifically
observed that under the Advisory Committee notes, interrogatories which required distinct

18   factual answers relating to the same subject—e.g., the time, place, persons present, and
contents of a particular communication—should be treated as a single interrogatory. See

19   id. Mattel's revised interrogatories are not compound, and defendants' arguments to the
contrary are groundless: the fact that an interrogatory answer requires different facts does

20   not convert it into a compound interrogatory on different issues.
[73] Bryant's Objections to Revised Third Set, at 7. Bryant then makes the same

21   objection to the remaining 23 interrogatories.
[74] See MGA's Objections to Revised Third Set, at 8, Proctor Dec., Ex. 76; MGA (HK)

22   Ltd.'s Objections to Revised Third Set, at 17, Proctor Dec., Ex. 77; MGAE de Mexico's
Objections to Revised Third Set, at 8, Proctor Dec., Ex. 78; Larian's Objections to Revised

23   Third, at 8, Proctor Dec., Ex. 79; MGA's Objections Amended Fourth Set, at 7, Proctor
Dec., Ex. 80; MGA (HK) Ltd.'S Objections to Amended Fourth Set, at 7-8, Proctor Dec.,

24   Ex. 81; MGAE de Mexico's Objections to Amended Fourth Set, at 8, Proctor Dec., Ex. 82;
Larian's Objections to Amended Fourth Set, at 7, Proctor Dec., Ex. 83.

25

26

27

28

-19-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT 54

PAGE 510

1  counting a few interrogatories as a multitude, defendants manufacture grounds to delay
2  yet more and refuse obviously appropriate discovery.  To the extent that defendants
3  have substantive objections to specific interrogatories, these issues may be properly
4  heard before the Discovery Master.  But defendants should not be permitted to serially
5  raise the same objection to a few specific interrogatories in order to delay for yet more
6  months in responding to the bulk of Mattel's interrogatories.  Mattel requests that this
7  Court cut through this issue by granting Mattel leave, to the extent needed, to serve
8  each of the interrogatories that have been served to date regardless of how they are
9  counted.

10  **IV.  THE COURT SHOULD ALLOW ADDITIONAL TIME FOR THE**
11  **BRYANT DEPOSITION**

12  On September 28, 2007, the Discovery Master issued an Order Granting in Part
13  Mattel's Motion for Additional Time to Depose Carter Bryant for All Purposes,
14  granting Mattel seven additional hours to depose Bryant (in addition to 2 hours
15  previously granted based on counsel's dozens of improper instructions not to answer at
16  the Bryant deposition), but denying Mattel the 21 hours that it sought.[75]  Mattel
17  respectfully submits that the facts, as determined by the Discovery Master, justify far
18  more than seven additional hours, and the Court should grant additional time.

19  Mattel does not contest the Discovery Master's factual findings in any way.  To
20  the contrary, the underlying factual findings were plainly correct.  As Judge Infante
21  noted, Mattel's deposition of Bryant in 2004 took place before MGA even brought its
22  unfair competition claims and before Mattel filed its counterclaims, and Mattel had no
23  opportunity to depose Bryant on either.[76]  Thus, as Judge Infante justifiably found:

24  •  The new claims and defenses that were added to the case after Bryant's
deposition justify additional deposition time. . . . Without question,

25  ─────────────
[75]  Order Granting in Part Mattel's Motion for Additional Time to Depose Carter
26  Bryant for All Purposes (Sept. 28, 2007) ("Order re Additional Time"), at 8:7-13, Proctor
27  Dec., Ex. 43.
[76]  Id. at 5:2-10.
28

07209/2299353.1

EXHIBIT 54
PAGE 511

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bryant is a critical witness regarding MGA's unfair competition claims and Mattel has not had an opportunity to depose him on such claims.[77]

• In addition, Mattel filed a counterclaim against Bryant, MGA, and other defendants in 2007, asserting thirteen different claims . . . . Bryant filed an answer asserting over twenty affirmative defenses. Mattel has not had an opportunity to depose Bryant on any of these claims or defenses.[78]

• Bryant is the central figure in this litigation and arguably the most important witness *for virtually every claim in the case*. No other witness in the case has his depth and breadth of relevant information.[79]

Bryant and MGA cannot dispute any of this. In interrogatory responses, MGA lists Bryant as a person directly involved with and knowledgeable about the allegedly infringed MGA products that MGA has put at issue.[80] MGA's responses to Mattel's interrogatories also state that the <u>entire</u> Bratz line is the subject of MGA's claims, and an MGA witness has declared that there are more than 200 Bratz products.[81] Moreover, Paula Garcia, MGA's Vice President of Product Design and Development, has declared that she and Bryant are "the *only* people who know what the concept is and who see the early product drawings" with respect to many Bratz products.[82] That is particularly important because many of both Mattel's *and* MGA's claims will turn on the source and timing of these products at issue. As the Court knows, Mattel's defenses to MGA's infringement claims rest, in part, on the fact that it was MGA which stole and copied Mattel products through its trade secret thefts. Testimony on the origins of those MGA products and when they were created is indispensable.

---

[77] <u>Id.</u> at 5:4-5.
[78] <u>Id.</u> at 5:6-10.
[79] <u>Id.</u> at 5:15-17 (emphasis added).
[80] MGA's Responses to Mattel's First Set of Interrogatories Re Claims of Unfair Competition, dated January 19, 2007, Response No. 1, at 6:9, Proctor Dec., Ex. 57.
[81] <u>See</u> Declaration of Patricia Perrier in Support of MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz Ownership in Phase One, dated May 25, 2007, at ¶ 2, Proctor Dec., Ex. 58; MGA Sup. Resp. Unfair Comp. No. 2, Proctor Dec., Ex. 26.
[82] Declaration of Paula Garcia in Support of MGA's Opposition to Mattel's Motion to Compel, dated February 9, 2007, ¶ 6 (emphasis in original), Proctor Dec., Ex. 59.

-21-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT __54__

PAGE __512__

1    Bryant is also obviously a crucial witness on Mattel's copyright infringement,

2 RICO and other counterclaims, which raise a host of new issues Bryant has not been

3 deposed on. According to MGA, Mattel's copyright infringement claim against Bryant

4 alone relates to "*hundreds* of products."[83]  Bryant was also personally involved, either

5 as sender or recipient, in approximately 100 of the predicate acts of mail and wire fraud

6 alleged by Mattel. [84]  Mattel is entitled to question Bryant about these and all the other

7 issues presented for the first time by Mattel's counterclaims and Bryant's answer.

8    Moreover, as Judge Infante found, "new evidence justifies additional time to

9 depose Bryant."[85]  Judge Infante noted that Bryant's deposition took place before "98

10 percent of Bryant's and MGA's collective document production took place"[86] – and that

11 did not even reflect the more than a million-and-a-half pages, that MGA has produced

12 in recent weeks.[87]  In truth, *99.9% of defendants' production in this case has occurred

13 only after Bryant's 2004 deposition.*  Thus, Mattel has had no opportunity to examine

14 Bryant on the vast bulk of the evidence, whether relevant to new claims or the original

15 ones.  This includes, for example:

16    •    Bryant's fee agreements with MGA, which reflect that MGA is paying
        Bryant's legal fees at its discretion, and which were withheld by Bryant
17       even in the face of prior court orders;

18    •    Bratz design drawings produced by Bryant for the first time this year,
        only after being ordered, which bear handwritten dates of September
19       19, 1999, at time when Bryant was employed by Mattel;

20    •    Bryant's desktop hard drive, which reveals his use of "Evidence
        Eliminator" software, which was not produced until compelled this
21       year.

---

22   [83]   See MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz

23 Ownership in Phase One at 3:12-19.

24   [84]   See Mattel's Second Amended Answer & Counterclaims, Exhibit C.
     [85]   Order re Additional Time at 5:20 (font altered), Proctor Dec., Ex. 43.

25   [86]   Id. at 5:24-27, Proctor Dec., Ex. 43.  Notably, Judge Infante calculated the 98

26 percent number based on MGA's production of 157,000 pages of documents as of the close
   of briefing in late August.  Since that time MGA has produced over a million-and-a-half

27 pages of documents.  See Proctor Dec. ¶ 45.
     [87]   See Proctor Dec. ¶ 45.

28

-22-

EXHIBIT 54

PAGE 513

1    •    Original Bratz drawings, which Bryant did not make available for
2         inspection until this summer, after being ordered to do so,
          notwithstanding his promise that he would produce such documents at
3         the 2004 deposition.

4    •    A fax from Bryant to David Rosenbaum, outside counsel for MGA,
          dated September 14, 2000, wherein Bryant stated that he could not ask
5         Mattel's Human Resources any more questions about his contract with
          Mattel "without risking suspicion."

6    •    October 10, 2000 e-mails between Isaac Larian, Victoria O'Connor and
          Paula Garcia (formerly Treantafelles), reflecting that Bryant worked on
7         Bratz with MGA "on average about 4 hours a day," starting at least six
          weeks before he left Mattel.

8
9    •    Invoices showing that Veronica Marlow, a key third party, billed MGA
          for 169 hours of development services on Bratz that were performed
10        before Bryant left Mattel.

11   The list of new evidence that was requested by Mattel before Bryant's deposition but

12   first produced by defendants only later literally goes on and on.  As Judge Infante

13   ruled, "a witness may be re-deposed with respect to . . . new developments" in a

14   case, including new documents such as these, as well as new claims.[88]

15        Despite his factual findings, Judge Infante ruled that Mattel is only entitled to an

16   additional seven hours of deposition.  Previously Judge Infante had gave Mattel two

17   additional hours as a result of the improper instructions and objections by counsel at

18   Bryant's deposition.[89]  So, under Judge Infante's ruling, Mattel has been limited to only

19   seven hours to depose Bryant – the "most important witness for virtually every claim in

20   the case"[90] –  on MGA's claims, Mattel's counterclaims, the hundreds of MGA and

21   Mattel products now at issue about which Bryant has unique knowledge, and the vast

22   amounts of recently produced new evidence.  This is unfair.  The ruling that Mattel be

23

24   ─────────────────
     [88]   Order re Additional Time at 4:20-24 (quoting Fresenius Med. Care Hldgs, Inc. v.
25   Roxane Labs., Inc., 2007 WL 764302 (S.D. Ohio 2007)), Proctor Dec., Ex. 43.
     [89]   Order re Additional Time at 7:24-25, Proctor Dec., Ex. 43; see Order Granting In
26   Part And Denying In Part Mattel's Motion To Overrule Instructions Not To Answer During
27   The Deposition Of Carter Bryant (March 7, 2007), Proctor Dec., Ex. 44.
     [90]   Id. at 5:15-17.
28

07209/2299353.1

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT  54

PAGE  514

1  granted only seven additional hours is clearly erroneous given Bryant's singular
2  importance, the magnitude of this case and the tectonic shift of claims.

3        Also, based on Rule 30's "presumptive one day, seven-hour limitation on
4  depositions," Judge Infante awarded Mattel a total of 7 hours to depose Bryant on all of
5  MGA's claims and all of Mattel's counterclaims.[91]  It is simply impossible to conduct a
6  deposition on those claims – which had not even been filed when Bryant was first
7  deposed – in that amount of time.  Judge Infante apparently awarded Mattel no
8  additional time based on new evidence, even though 99.9% of defendants' production
9  has taken place since the 2004 deposition.  That effectively punishes Mattel for
10  defendants' discovery misconduct. Mattel requested defendants' documents before the
11  deposition took place; defendants withheld them at their own peril, not at Mattel's.[92]
12  Mattel is entitled to a fair amount of time to depose the key witness in the case on the
13  new claims and evidence he has not been deposed on.  The Court should afford that,
14  and grant Mattel a total of 21 hours for the deposition.[93]

15

16

17  [91] Id. at 8:10-13.
18  [92] See, e.g., Fresenius Medical Care Holdings, Inc. v. Roxane Laboratories, Inc., 2007 WL 764302, at *2 (S.D. Ohio 2007) (originally cited by Bryant to Judge Infante) (allowing
19  second deposition because defendant failed to produce requested documents prior to first deposition); Robins v. Scholastic Book Fairs, 928 F. Supp. 1027, 1036 (D. Or. 1996) ("the
20  second set of depositions of these individuals was necessary because they had to be questioned about additional documents that Defendant produced after the first set of
21  depositions"); Ritchie v. U.S., 2004 WL 1161171, at *3 (N.D. Cal. 2004) ("when further
22  evidence linking [witness to the project in dispute] subsequently came to light this court permitted plaintiff to depose [the witness] a second time").
23  [93] In the alternative, the Court should excercise its discretion to enlarge Mattel's time
24  to depose Bryant. The Court previously extended MGA's deadlines to produce documents that it was compelled to produce even though Judge Infante had specifically *rejected*
25  MGA's request for additional time to comply and despite MGA's failure to show there was any error in that ruling. Here, there can be no dispute that the Court has the right to ensure
26  that the parties receive fair discovery, proportionate to the magnitude and complexity of
27  the case, and that trial in this matter is conducted without undue surprises which will cause prejudice and waste the time of the Court and the jury.
28

07209/2299353.1

-24-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT 54
PAGE 516



1                                 <u>**Conclusion**</u>

2           For the foregoing reasons, Mattel respectfully requests that the Court grant

3 Mattel's motion for leave.

4 DATED:  November 19, 2007      QUINN EMANUEL URQUHART OLIVER &
                                                 HEDGES, LLP

5

6                                   By <u>Jon Corey /s/</u>

7                                       Jon Corey
                                      Attorneys for Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

07209/2299353.1

EXHIBIT __54__

PAGE __516__