QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**SUPPLEMENTAL DECLARATION OF JON COREY IN FURTHER SUPPORT OF MATTEL, INC.'S OPPOSITION TO OMNI 808'S <u>EX PARTE</u> APPLICATION TO INTERVENE**<br><br>Hearing Date:   February 11, 2009<br>Time:   10:00 a.m.<br>Courtroom:   1<br><br>**Phase 1C**<br>Discovery Cut-off:   Not Set<br>Pre-trial Conference:   Not Set<br>Trial Date   Not Set |

# SUPPLEMENTAL DECLARATION OF JON COREY

I, Jon Corey, declare as follows:

1. I am a member of the bars of the State of California and the District of Columbia. I am a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2. As set forth in my declaration in support of Mattel's opposition to Omni 808's application to intervene, Omni 808 Investors, LLC ("Omni 808") filed a deficient Notice of Interested Parties on February 4, 2009, which was filed only after Mattel brought Omni 808's failure to do so to its attention. See Declaration of Jon Corey in Support of Mattel, Inc.'s Opposition to Omni 808 Investors, LLC's *Ex Parte* Application to Intervene, dated February 5, 2009, at ¶ 7 ("Corey Dec."). As of the date of this Declaration, Omni 808 has not filed or served a corrected Notice that complies with Local Rule 7.1-1 and identifies all interested parties.

3. Instead, all Omni 808 disclosed in its untimely and incomplete Notice of Interested Parties is that Neil Kadisha is its CEO. Mattel has been attempting to serve a subpoena upon Mr. Kadisha, at both his home and at his place of business, since January 23, 2009, only to be told that Mr. Kadisha was "out of town." When, after repeated attempts, Mattel was unable to serve Mr. Kadisha, I wrote a letter to counsel for Omni 808, Todd Gordinier, on February 6, 2009 asking him whether he would accept service of a subpoena for Mr. Kadisha, his client's alleged CEO. A true and correct copy of my letter to Mr. Gordinier is attached as Exhibit 1. Mr. Gordinier responded to my letter on February 9, 2009, writing that "Mr. Kadisha is, in fact, out of the country" and that had requested, but did not have authority to accept service of a subpoena. A true and correct copy of Mr. Gordinier's response to my letter is attached as Exhibit 2. Despite counsel's commitment of follow-up, I have received no further communication from Mr. Gordinier or other counsel for Omni 808 on this subject.

4.	As set forth in my declaration in support of Mattel's opposition to Omni 808's application to intervene, Mattel served subpoenas on Omni 808, OmniNet Capital, LLC ("OmniNet") and Vision Capital, LLC ("Vision Capital"), among others. <u>See</u> Declaration of Jon D. Corey in Support of Mattel, Inc.'s Opposition to Omni 808 Investors, LLC's *Ex Parte* Application to Intervene, dated February 5, 2009, at ¶ 2.  As of the date of this Declaration, Omni 808, Vision Capital and OmniNet still have not produced a single page of documents in response to the subpoenas, but instead have refused to produce the requested discovery.

5.	Because Omni 808, Vision Capital and OmniNet were unwilling to produce documents, on February 3, 2009, Mattel filed a motion to compel Omni 808, Vision Capital and OmniNet, among others, to produce documents responsive to the subpoenas.  <u>See</u> Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Opposition to Omni 808 Investors, LLC's *Ex Parte* Application to Intervene, dated February 5, 2009, Exh. 23.  Mattel filed that motion pursuant to an agreement among and between the parties and the subpoenaed parties, as documented in a January 23, 2009 letter from Rob Herrington to Michael T. Zeller, counsel for Mattel; Todd Gordinier, counsel for Omni 808 and Vision Capital; Jeffrey Valle, counsel for IGWT Group and IGWT 826 Investments; and Neil Potishman, counsel for Wachovia. A true and correct copy of that letter is attached as Exhibit 3.  Under the Discovery Master Stipulation which, explicitly in Paragraph 15 governs discovery disputes with third parties, Omni 808, Vision Capital and OmniNet's opposition to the motion to compel is due today, February 10, 2009.

6.	On February 6, 2009, I informed counsel for Omni 808 that, in light of its *ex parte* application to intervene, Mattel wanted and was entitled to have any opposition to the motion to compel *before* the hearing on the application to intervene.  A true and correct copy of my February 6, 2009 electronic mail message to Peter Villar, counsel for Omni 808, is attached as Exhibit 4.  Rather than filing a timely opposition, in an effort not to do so, Omni 808 filed an *ex parte* application to strike Mattel's

Motion on February 9, 2009, the day before their opposition to Mattel's motion to compel was due. Omni 808's, Vision Capital's and OmniNet's *ex parte* application appears at Docket No. 4797.

  7.  After the Phase 2 discovery stay was lifted, Mattel propounded discovery requests seeking, among other things, information that MGA and Larian may have regarding Omni 808, Vision Capital, Lexington Financial, Neil Kadisha or transactions that they may have been involved in. On February 6, 2009, after Mattel had filed its Opposition to Omni 808's Intervention Application, MGA and Larian served objections to Mattel's Phase 2 document requests. Both MGA and Larian refused to produce a single document in response to any of the document requests. True and correct copies of MGA's and Larian's objections to Mattel's first set of Phase 2 document requests are attached as Exhibits 5 and 6, respectively.

  8.  In all of its *ex parte* papers, the only fact for which Omni 808 has provided a supporting citation is in its reply papers where it claims to be MGA's largest creditor. Omni 808 supports that proposition with a cite to *Mattel's* application for an order appointing a receiver. Omni 808 does *not* cite to a declaration or affidavit by any witness with personal knowledge of this claim from Omni 808 or from MGA.

  9.  Further, while Omni 808 claims to have a legitimate security interest in MGA assets, Mattel has never admitted that Omni 808 is a legitimate creditor of MGA. Nor could it. The efforts of the MGA Parties and certain subpoenaed parties, including Omni 808, have so far prevented Mattel from having any verifiable knowledge about Omni 808's supposed interest or the Omni/Wachovia transaction.

  10.  Omni 808 selectively quotes from Mattel's application to support its claim that Mattel made such an admission. For example, the full sentence that Omni purports to rely on shows that Mattel, in fact, has questioned the legitimacy of Omni 808's creditor status. Omni 808 quotes only the bold portion of the following sentence, but omits the qualifications and omits the sentences that follow it which makes clear that Omni 808 has distorted Mattel's papers: "Maybe there is an innocent explanation

for MGA's sudden funding -- during trial -- by a newly formed offshore corporation that appears to be a shell, that obscures its funding sources for MGA and that **is now apparently one of MGA's largest creditors (and perhaps its largest)**." Docket No. 4540 at 6:13-16. In the immediately following sentences, Mattel then went on to say: "Mr. Fred Mashian, a Sunset Boulevard 'estate-planning' attorney identified as the Lexington Financial contact on the financing statement, may be able to provide it. Or not. It is a common (but unlawful) tactic for shareholders of a company to create the impression of an arms-length loan to a troubled corporation (rather than a proper capital contribution) while concealing that the shareholder is the source of the funds." Id. at 6:16-7:5 (internal cites omitted). That is hardly an admission of legitimacy.

11. Omni 808's other quote from Mattel's application says simply that, in direct contravention of MGA's representations to the Court and to the Ninth Circuit about obtaining no new funding, Mattel discovered (but MGA omitted to disclose) a UCC Financing Statement that, on its face, appears to show that Omni 808 extended funding to MGA. Docket No. 4540 at 5:7-8. Far from being an admission, that sentence that Omni 808 quotes is an introduction to two subsequent pages of discussion in which Mattel explains that the available evidence shows Omni 808 is a single purpose, shell entity formed during trial, is owned by another single purpose, shell entity that was loaned money by a Nevis company, Lexington Capital, with a London mail drop address, leaving Mattel to conclude that the "structure of these non-operating companies conceals the actual source of funds provided to MGA." Id. at 6:10-11. That has been Mattel's consistent position in submissions to this Court, including in the very *Ex Parte* Application For Appointment of a Receiver For MGA, dated December 28, 2008 (Docket No. 4540, at 5:6-7:9), that Omni 808 claims to rely upon to argue that Mattel has somehow acceded to the legitimacy of its security interest.

12. A further example showing that far from accepting any of the transactions at issue as being valid or legitimate, Mattel has repeatedly questioned this alleged security interest and the transactions in general is Mattel's Opposition to Omni

808 Investors' *Ex Parte* Application to Intervene, dated February 5, 2009 (Docket No. 4776, at 7:8-8:24):

> The long-standing "mystery" of MGA's finances, the concealed involvement of a Larian family member in both Vision Capital and Lexington, the trail of shell companies that leads to Nevis and a phantom office in London, the timing of the formation of the entities and the transactions during the damages phase of trial after MGA and Larian had been found liable, and the flat refusals to provide discovery or proof even as to the most basic information about these matters by MGA and Omni 808 all point to the conclusion that the transaction was anything but "arms-length" as Omni 808 proclaims. To the contrary, such conduct suggests that related parties to MGA and Larian created these vehicles for the improper purpose of attempting to leapfrog over Mattel's claims and shield their assets from creditors and other rights-holders such as Mattel.

13.     In addition, in Mattel, Inc.'s [Public Redacted] Motion to Compel Notice of Motion and Motion to Compel Production of Documents Responsive to Third-Party Subpoenas, dated February 3, 2009 (Docket No. 4769, at 1:7-15), Mattel wrote:

> Following the jury's Phase 1B trial verdict in Mattel's favor this past summer, Mattel learned that MGA had a new *alleged* creditor, Omni 808, that replaced Wachovia as MGA's apparently largest creditor. Omni 808 is a shell corporation that was formed during trial and is owned and funded by other shell corporations -- Vision Capital and

> Lexington Financial. Lexington Financial, in turn, was incorporated off-shore in the Caribbean banking secrecy haven of Nevis and lists a fictional London address as its purported headquarters. Intentionally or not, the structure of the transactions and the use of these entities *serve to obscure* MGA's finances. And, only serving to heighten the *concern about the integrity and completeness* of MGA's financial information, a Los Angeles Superior Judge found that *the CEO of Omni 808, MGA's newest business partner, to be "no more than a common thief" for his embezzlement of millions of dollars, his fabrication of financial records and his perjury*.

Mattel has not acceded that Omni 808 has a legitimate security interest in any MGA asset. Quite the opposite has been the case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 10, 2009, at Los Angeles, California.

          /s/ Jon Corey
          Jon Corey