| MGA's "BRATZ" "Funky Fashion Makeover Head" | Mattel's "My Scene" "Stylin' Head" |
|---|---|

   

   

56.   Indeed, Mattel's "My Scene" styling head is so close to the "BRATZ" styling head that even the press have mistakenly pictured and identified it as MGA's "BRATZ". The picture of Mattel's "My Scene" styling head shown below, for instance, appeared in the press with a caption indicating that the child was trying out different hairstyles "on a *Bratz* hair and makeup doll head."

Hairstyle practice

21

EXHIBIT __22__

PAGE __872__

57.   Creating further confusion, Mattel's television commercial for its "My Scene" styling head was like watching a re-run of MGA's commercial for its "Funky Fashion Makeover Head".

58.   At one point in time, Mattel also used a portion of the "BRATZ" dolls' now-famous trademarked tag line "The Girls With a Passion for Fashion" on Mattel's' website for its "Diva Starz" dolls, asking its website users: "Do you have a passion for fashion?"

59.   Mattel has even recently come out with a confusingly similar line of "My Scene" plush pets, which adopt the distinctive look of MGA's "BRATZ" line. The "My Scene" pets feature large, humanlike eyes and wear clothing making them remarkably and confusingly similar to "BRATZ" products, including "BRATZ PETZ", as seen in this example where the pets each wear a jacket, a cap and carry a purse:

**MGA's "BRATZ Dogz"**     **Mattel's "My Scene" dog**

     

60.   And here too, Mattel chose to package its pets the same way that MGA packaged its "BRATZ PETZ", sitting in an open box, with no top and with partial side panels that slope from a narrow front panel to a higher back panel.

61.   Indeed, the similarity of the "My Scene" pets to "BRATZ PETZ" has confused even sophisticated retailers who have mistakenly merchandised "My Scene" dogs in the middle of the "BRATZ" section of a retail display, next to and as if they were part of MGA's "BRATZ Petz" line. It comes as no surprise that

EXHIBIT __22__

PAGE __873__

customers too have been confused.

62.   Indeed, Mattel's television commercials and "My Scene" products have become so confusingly similar to MGA's that even advertising executives have expressed concern.  One went so far as to say that although imitation is the best form of flattery, what the individual had seen at Mattel's showroom, and how its "My Scene" dolls now look so confusingly similar to "BRATZ", was "shocking."  This person further opined that it was clear that Mattel is intending to confuse customers and capture "BRATZ" market share, and even asked MGA if it was considering legal action.

63.   The press also has taken notice of Mattel's attempts to confuse consumers.  On or about February 18, 2005, a visitor to MGA's showroom from a prominent news publication stated, "Oh my, I just came from Mattel's showroom and their new 'My Scene' packaging is just like 'BRATZ' minus the handle."  Another member of the press visiting MGA's showroom offered the unsolicited comment, "have you seen the new 'My Scene' dolls eyes are exactly like 'BRATZ'?"  Yet another opined that Mattel's "My Scene" line was exactly like "BRATZ", indeed, so much so that the reporter confusingly thought that Mattel had bought "BRATZ", and still another has commented on Mattel's imitation of MGA.  On or about February 16, 2005, during an interview of a Mattel representative on local network news in New York, "My Scene Barbie" was displayed by a Mattel representative.  During conversation about the dolls, the interviewer exclaimed that they looked like "BRATZ".  The Mattel representative just laughed – but this is no laughing matter.  This colloquy was available for replay and viewing, and was even transcribed, on the internet.

64.   Customers too have been similarly confused.  Some actually contacted MGA seeking to purchase "My Scene" dolls.

65.   Mattel's conduct is planned, deliberate and intentional.  Mattel has systematically, copied, imitated and liberally borrowed many of the distinctive,

23

EXHIBIT 22

PAGE 874

essential elements that identify and make "BRATZ" dolls "BRATZ" dolls, diluting the brand, creating customer confusion, and unfairly stifling competition.

66.  Ironically, Mattel sued one of its other competitors in Europe for doing much the same thing: "systematically copying and borrowing elements" from "My Scene", on grounds that "this conduct constitutes unfair competition and passing off." Indeed it does.

67.  What is more, Mattel's conduct has reached beyond "BRATZ" and "BRATZ"-related products to include other new MGA toy lines.

68.  For example, MGA's "4-Ever Best Friends" line was the obvious, and well-recognized model for Mattel's "Wee 3 Friends" line. Mattel even adopted changes to the color scheme of its similarly-shaped packaging to create confusion with MGA's distinctive packaging.

| MGA's "4-Ever Best Friends" | Mattel's "Wee 3 Friends" |
| --- | --- |
|  |  |
|  |  |

EXHIBIT 22

PAGE 875

69.   In the second half of 2002, MGA's "Mommy's Little Patient," originally designed as the first in a series of "Mommy's Little . . ." dolls, was followed by Mattel's "Little Mommy" doll.

| MGA's<br>"Mommy's Little Patient" | Mattel's<br>"Little Mommy Potty Training Baby Doll" |
|---|---|
|  |  |

70.   Sparing nothing, Mattel has also extended its monkey-see monkey-do behavior into its boys' line.  When MGA came out with its "Alien Racers" line of toy racing vehicles, for instance, Mattel rushed to revamp and rename one of its "Hot Wheels" lines.  Although well-known and clearly branded for decades as "Hot Wheels", Mattel's answer to MGA's "Alien Racers" was to re-brand and market its Hot Wheels Highway 35 line under an "AcceleRacerS" logo.  MGA's line consists of "extreme" radio controlled racing vehicles marketed in connection with a strong, almost battle-like, science fiction theme.  MGA's logo accentuates the "A", "R", and "S" in compressed block lettering.  Mattel's line also consists of extreme racing vehicles marketed in connection with a strong, almost battle-like, theme.  Mattel's logo too accentuates the "A", "R", and "S" in compressed block lettering.

EXHIBIT 22

PAGE 876

71.    Here, too, Mattel's mimicry has spilled over into Mattel's advertising and thematic presentation and marketing of this toy line.  In particular, Mattel has adopted MGA's "other-worldly" theme in its commercials.  For instance, in Mattel's commercials, the product, whose logo appears as "AcceleRacerS", now compete against alien-like Cyborgs engaged in a "race to save the world," mimicking MGA's alien theme and commercials in which MGA's "Alien Racers" are engaged in a "race to save the universe."

72.    None of this is coincidence.  Mattel has deliberately adopted a pattern and practice of coming out with variations of MGA's products to create confusion in the marketplace, interfere with MGA's business and divert profits away from MGA.  Mattel says, on its website, that it is in the business of creating "[t]he world's premier toy brands [of] today and tomorrow."  It seemingly does so, however, by borrowing liberally from its competitors, even when it refreshes its own existing brands and products.

73.    MGA has suffered extensive injury from Mattel's conduct.  Mattel's habitual, serial simulation of MGA's products, product lines and trade dress has allowed Mattel to take a free ride on the extensive amount of time, expense and creative development MGA expends on developing new products, product packaging and presentation, giving Mattel an unfair advantage, and making it virtually impossible for MGA to compete with Mattel on a level playing field.

**Mattel's additional unfair, manipulative, anti-competitive conduct**

74.    This already substantial injury has been exacerbated by the strong-arm tactics, and other illegitimate, unfair and anti-competitive means that Mattel has used to manipulate the market and ensure that its control and domination of the industry can continue unabated.

EXHIBIT 22

PAGE 877

75.    For example, wielding the litigation privilege as a potential shield for intimidating conduct, Mattel has sent threatening letters to several of its former employees who now work for MGA warning them not to disclose *even publicly available information* about Mattel, including the names and positions of Mattel employees.  Mattel even went so far as to sue one of its former senior executives, after he had the temerity to resign and join MGA in October 2004.  Not only was Mattel's lawsuit dismissed for failure to state a viable claim, but Mattel thereafter seemingly could not muster up a shred of evidence sufficient to support an amended complaint.  As a result, Mattel's case against its former executive was dismissed with prejudice.

76.    Mattel has also warned a number of companies, including the biggest publishing entity in the United Kingdom, not to license MGA products, or risk retribution.  The threats are not idle.  In May 2004, Mattel terminated one of its licensees, apparently in retribution for licensing "BRATZ".  While some companies have been courageous enough to take the risk, others have not, and MGA has lost valuable licensing opportunities as a result.

77.    Mattel has used similar intimidation to pressure distributors and retailers, particularly in foreign countries, not to distribute "BRATZ", to reduce shelf and display space for "BRATZ" and to place "BRATZ" in unfavorable locations at retail outlets.

78.    When MGA faced a shortage of doll hair in October 2002, MGA is informed and believes that the reason for that shortage was that Mattel had locked MGA out by buying up the supply from the two main hair supply companies.

79.    Mattel has also manipulated the retail market.  For instance, Mattel merchandisers have been caught tampering with MGA's retail displays, replacing favorably located MGA merchandise with Mattel merchandise instead.  MGA is also informed and believes that Mattel has falsely told a major United States retailer that MGA was giving another major United States retailer below-market pricing

27

EXHIBIT 22

PAGE 878

and falsely told a United Kingdom retailer that MGA was discontinuing one of its lines, in order to make such line less attractive to buyers and thereby attempt to increase sales of the competitive Mattel product and improve its own sales, at MGA's expense.

80.    Even supposedly unbiased and impartial industry organizations have fallen prey to Mattel's abusive wield of power, to MGA's detriment.

81.    NPD Funworld ("NPD"), for one, is the leading supplier of sales statistics in the toy industry.  Accurate NPD statistics are essential for efficient product-line management.  Without these statistics, it is difficult, if not impossible, for toy companies to assess and measure the relative success of their products in key categories.  It is, however, a subscription service, and NPD restricts the manner in which its subscribers may use the data it provides.

82.    Mattel has regularly ignored the restrictions -- using NPD data about Mattel's comparative standing relative to other companies in press releases and in communications with retailers and financial investors who are not NPD subscribers.

83.    Mattel generates substantially more annual subscription revenue for NPD than does MGA, and carries more clout.

84.    After MGA had subscribed to the service for more than 12 years, NPD terminated MGA's subscription in 2003 theoretically on the grounds that MGA misused NPD data in a press release.

85.    MGA is informed and believes that the termination was the result of pressure from Mattel, notwithstanding Mattel's own frequent violations of NPD's restrictions.

86.    In addition to this, the market share numbers that NPD generates are heavily dependent on the category in which NPD places a particular product.  MGA is informed and believes that Mattel also pressured NPD into changing certain product classifications for its "BRATZ" products in order to manipulate the data

28

EXHIBIT 22
PAGE 879

1    and preserve Mattel's market share rankings in the critical fashion doll category –

2    and thereby lower MGA's.

3        87.    The Children's Advertising Review Unit ("CARU") is another

4    organization that, upon information and belief, appears to have been subject to

5    improper influence by Mattel. CARU is the toy industry's supposedly independent

6    self-regulatory body in charge of maintaining standards in advertising. CARU's

7    approval is considered critical within the toy industry to avoiding regulatory action

8    by the Federal Trade Commission.

9        88.    CARU is heavily subsidized by Mattel.

10       89.    Upon information and belief, Mattel has used its influence as a major

11   contributor to CARU's budget to induce CARU to place onerous restrictions on

12   MGA advertisements, and require MGA to amend aspects of commercials that have

13   gone unchallenged in other parties' commercials.

14       90.    As a result of CARU's restrictions, MGA has been forced to incur

15   unnecessary costs for reshooting and producing or re-editing its commercials.

16       91.    On several occasions, CARU has also either strongly suggested, if not

17   also required, that MGA respond to inquiries about its website policies and make

18   substantial changes to the "BRATZ" website notably and significantly in excess of

19   restrictions imposed on Mattel and others.

20       92.    Even TIA, the toy industry's trade association, is apparently not

21   untainted by Mattel's influence and power. Each year, TIA presents the Toy-of-

22   the-Year Awards, the most prestigious of which had been the award for Toy of the

23   Year. Winning the Toy of the Year Award is a significant achievement that not

24   only very likely increases the sales of the winning toy, but also denotes the winning

25   company as a leader in toy innovation and generates substantial goodwill with

26   retailers, distributors, licensees, and customers.

27       93.    For the years 2000 (the first year of the award), 2001 and 2002, the

28   Toy of the Year award was chosen by consumer vote. The awards ceremony was



EXHIBIT 22

PAGE 880

then held the following year, at a dinner in New York. (For example, the awards dinner for the year 2000 award was held in February 2001). Leap Frog won the 2000 People's Choice Toy of the Year Award and MGA won the 2001 and 2002 People's Choice Toy of the Year Awards. With the 2003 Toy of the Year Award, however, the rules suddenly changed. Now, the award is selected by members of the industry.

94.   Upon information and belief, this change was orchestrated by a Fisher Price (a Mattel subsidiary) executive who, until recently, served as the Chairman of TIA.

95.   Perhaps not surprisingly given this change in the winner selection procedures, "Hokey Pokey Elmo" ("Elmo"), a Fisher Price toy, won for the year 2003 (awarded in 2004), beating out the other leading nominee, "BRATZ Formal Funk Super Stylin' Runway Disco."

96.   TIA has refused to provide MGA with the vote count procedure and totals for this award, despite repeated requests.

97.   MGA is also informed and believes that Mattel was instrumental in attempting to keep MGA from participating as a sponsor in this year's "Kids' Choice Awards."

98.   Mattel has clearly engaged in tortious, illegal and unethical behavior in its unfettered efforts to disrupt, if not destroy, MGA. Indeed, this is apparently Mattel's current *modus operandi* when it comes to "competing" in the industry. The once immensely successful "LeapFrog" interactive learning product, for example, has apparently been one of Mattel's other recent victims.

99.   Mattel may not shield its illegal, unfair and unethical business practices from the public eye. It is time for the truth to be told, and the world to know of Mattel's unfair, unethical and illegal business practices and unfair competition. "Barbie" does not "play nice" with others (particularly her competitors), and needs to be taught how "to share" (at least in the fashion doll marketplace). She cannot be

EXHIBIT  22

PAGE  881

1    allowed to continue to be the playground bully and trample on the rights of others,

2    including MGA.

3        100.   As a result of Mattel's manipulative, illegal, unfair, unethical and anti-

4    competitive conduct, MGA has suffered and, unless abated, will continue to suffer

5    lost sales, lost licensing fees, lost contracts, lost relationships, lost business

6    opportunities and other damages and harm for which there is no adequate remedy at

7    law. Its ability to enter new markets and product lines has been hampered and

8    delayed. Its production costs have increased, its reputation and relationships with

9    important players in the industry have been negatively impacted, the value of its

10   business has been diminished, and its ability to attract, hire and retain employees

11   has been affected.

12

13                       **FIRST CLAIM FOR RELIEF**

14   **(False Designation of Origin or Affiliation in Violation of 15 U.S.C. § 1125 (a))**

15        101.   MGA repeats and realleges the allegations contained in paragraphs 1

16   through 100 of this Complaint and incorporates them by reference as though fully

17   and completely set forth herein.

18        102.   MGA's "BRATZ" line has a unique and distinctive style and

19   distinctive characteristics, such as the disproportionately large head, large dramatic

20   eyes with a distinctive presentation (including the eye shape, make-up and lashes),

21   pouty, plump lips with a distinctive presentation (including the lip shape and make-

22   up), small, thin bodies, oversized feet, and up-to-date fashions. MGA's "BRATZ"

23   line is known for and recognized by the total image that is presented by its product

24   and the style and arrangement of the packaging and display. This "*tout ensemble*"

25   is representatively described and depicted herein. The characteristics of MGA's

26   "BRATZ" line, alone or in combination, have come to identify the "BRATZ" line

27   and its source, MGA, and thus serve as protectable trade dress. MGA's trade dress

28   in its "BRATZ" line is purely aesthetic and non-functional or, if any utility exists, it

                                    31

EXHIBIT 22
PAGE 882

1    is not essential to the purpose, quality or source identifying attributes of the

2    aesthetics. MGA's trade dress in its "BRATZ" line is inherently distinctive or has

3    acquired distinction within the meaning of the Lanham Act.

4        103. Similarly, MGA's "BRATZ PETZ," part of the "BRATZ" line, also

5    has its own unique and distinctive characteristics, such as the humanlike eye and

6    unusual appearance of the animals dressed in clothing. MGA's "BRATZ PETZ"

7    line has become known for and recognized by the total image that is presented by

8    the product and the style and arrangement of its packaging. This "*tout ensemble*" is

9    representatively described and depicted herein. The characteristics of MGA's

10    "BRATZ PETZ", alone or in combination, have come to identify the "BRATZ

11    PETZ" line and its source, MGA, and thus serve as protectable trade dress. MGA's

12    trade dress in its "BRATZ PETZ" line is purely aesthetic and non-functional or, if

13    any utility exists, it is not essential to the purpose, quality or source identifying

14    attributes of the aesthetics. MGA's trade dress in its "BRATZ PETZ" line is

15    inherently distinctive or has acquired distinction within the meaning of the Lanham

16    Act.

17        104. Mattel's production, sale and marketing of "My Scene" dolls,

18    including styling heads and doll heads, and "My Scene" pets that are confusingly

19    similar to MGA's "BRATZ" line (including its "BRATZ PETZ"), without MGA's

20    permission or consent, constitutes designation and use of a term, symbol, device or

21    combination thereof that is false or misleading within the meaning of 15 U.S.C.

22    Section 1125 and is likely to cause confusion, or to cause mistake, or to deceive as

23    to the affiliation, connection, or association, or as to the origin, sponsorship, or

24    approval of Mattel's goods or commercial activities, within the meaning of 15

25    U.S.C. Section 1125. MGA has been damaged by Mattel's acts.

26        105. Mattel's conduct has been intentional and willful, and is calculated

27    specifically to trade off the goodwill that MGA has developed in its successful

28    "BRATZ" line. By its aforesaid acts, particularly its imitation of the distinctive

EXHIBIT 22

PAGE 883

features of MGA's "BRATZ" line in connection with goods sold and distributed in interstate commerce, Mattel has infringed and is likely to continue to infringe on MGA's substantial rights in and to the "BRATZ" line trade dress. In so doing, Mattel has falsely represented and designated to the public generally and consumers of fashion doll products specifically the source and origin of Mattel's "My Scene" fashion doll products in violation of 15 U.S.C. § 1125(a).

106. MGA has been damaged by, and Mattel has profited from, Mattel's wrongful conduct in an amount to be proven at trial.

107. For each act of infringement, MGA is entitled to recover its actual damages as well as Mattel's profits from such infringement.

108. Monetary relief alone, however, is not adequate to address fully the irreparable injury that Mattel's illegal actions have caused and will continue to cause MGA, if not enjoined. MGA is therefore entitled to preliminary and permanent injunctive relief to stop Mattel's ongoing infringement of MGA's trade dress.

## SECOND CLAIM FOR RELIEF

### (Unfair Competition in Violation of 15 U.S.C. § 1125 (a) and Unfair Competition and Unfair Business Practices in Violation of Cal. Bus. & Prof. Code § 17200 *et seq.* and California Common Law)

109. MGA repeats and realleges the allegations contained in paragraphs 1 through 108 of this Complaint and incorporates them by reference as though fully and completely set forth herein.

110. Mattel has deliberately and, indeed, repeatedly adopted, imitated and mimicked the make-up, appearance, features, trade dress, and image of MGA's products, packaging and advertising, including its repackaging and refreshing of older Mattel toys. Mattel's actions were and are done with the intent to deceive consumers, cause confusion and mistake, and interfere with the ability of consumers to identify the source of goods by appearance and packaging. By this

33

EXHIBIT 22
PAGE 884

conduct, Mattel pirates and exploits, by subliminal or conscious association with MGA, the goodwill and reputation of MGA and derives benefit therefrom.

111.  Mattel has particularly and deliberately poached upon the commercial magnetism of MGA's "BRATZ" and the success of "BRATZ". Mattel's conduct has been intentional and willful, and is calculated specifically to trade off the goodwill that MGA has developed in its successful "BRATZ" line.

112.  By its acts, including its intentional imitation of the distinctive features of MGA's "BRATZ" dolls, which has progressively become closer and closer, as well as its imitation of "BRATZ" themes, packaging and the overall look, feel and total image of the "BRATZ" line, imitation of other MGA products, packaging and advertising, and other conduct alleged herein, Mattel has engaged in unfair competition under both federal and California state law.

113.  Mattel has also willfully and maliciously used its power, influence and intimidation to threaten certain retailers, suppliers, licensees, distributors and manufacturers so as to limit, if not prevent, MGA from doing business with these retailers, suppliers, licensees, distributors and manufacturers, using its power and influence to intimidate and manipulate industry bodies. Mattel has further used its power and influence to attempt to, if not actually, intimidate and threaten MGA's current and potential employees so as to cause MGA competitive injury.

114.  Alone, in combination, or in totality, Mattel's actions discussed and alleged herein constitute unfair competition and unfair business practices within the meaning of federal law, California statutory law and/or California common law.

115.  As a result of its conduct, Mattel has derived substantial monetary and non-monetary benefit and business advantage. Mattel has also wrongfully diverted profits away from MGA and to Mattel and, on information and belief, deprived MGA of the patronage of a large number of actual and potential customers.

116.  MGA has been damaged by, and Mattel has profited from, Mattel's wrongful conduct in an amount to be proven at trial.

34

EXHIBIT 22

PAGE 885

117.   Monetary relief alone, however, is not adequate to address fully the irreparable injury that Mattel's actions have caused and will continue to cause MGA, if not enjoined.  MGA is therefore entitled to preliminary and permanent injunctive relief to stop Mattel, and all persons acting in concert with Mattel, from engaging in acts of unfair competition and unfair business practices.

118.   MGA is further entitled to relief whereby Mattel is ordered to pay restitution for damages resulting from Mattel's unfair competition and unfair business practices.

## THIRD CLAIM FOR RELIEF

**(Dilution in Violation of 15 U.S.C. § 1125 (c); Cal. Bus. & Prof. Code § 14330 and California Common Law)**

119.   MGA repeats and realleges the allegations contained in paragraphs 1 through 118 of this Complaint and incorporates them by reference as though fully and completely set forth herein.

120.   The look and trade dress of the MGA products referenced herein are distinctive and famous, and have been since before Mattel launched its similar versions.  By its aforesaid acts, Mattel caused and continues to cause blurring and dilution of the distinctive look of MGA's products and trade dress, which previously served as a unique source identifier for MGA, within the meaning of the Lanham Act, California Business and Professions Code § 14330 and/or California common law.

121.   Mattel's conduct has been intentional and willful, calculated specifically to trade on MGA's goodwill and reputation and to cause dilution of MGA's famous marks, particularly those connected with MGA's famous and successful "BRATZ" doll head, "BRATZ" doll product line, "BRATZ Funky Fashion Makeover Head" and "BRATZ PETZ" line.

122.   MGA has been damaged by, and Mattel has profited from, Mattel's wrongful conduct in an amount to be proven at trial.

EXHIBIT **22**

PAGE **886**

123.  Monetary relief alone, however, is not adequate to address fully the irreparable injury that Mattel's actions have caused and will continue to cause MGA, if not enjoined.  MGA is therefore entitled to preliminary and permanent injunctive relief to stop Mattel's ongoing dilution.

## FOURTH CLAIM FOR RELIEF

### (Unjust Enrichment)

124.  MGA repeats and realleges the allegations contained in paragraphs 1 through 123 of this Complaint and incorporates them by reference as though fully and completely set forth herein.

125.  As a result of the conduct alleged herein, Mattel has been unjustly enriched to MGA's detriment.  MGA seeks a worldwide accounting and disgorgement of all ill-gotten gains and profits resulting from Mattel's inequitable activities.

## PRAYER FOR RELIEF

WHEREFORE, MGA prays for relief, as follows:

1.  That Mattel, its agents, servants and employees and all persons acting in concert be restrained preliminarily and permanently from directly or indirectly:

    a.  using confusingly similar trade dress;

    b.  improperly influencing, or attempting to improperly influence, standard-setting and industry organizations;

    c.  engaging in unfair competition and unfair business practices; and

    d.  diluting MGA's trade dress;

2.  For general and actual damages, according to proof at trial but believed to reach or exceed tens of millions of dollars;

3.  For the disgorgement of all profits derived by Mattel for its acts of:

    a.  false designation of origin or affiliation;



EXHIBIT __22__

PAGE __887__

b.   unfair competition and unfair business practices; and

c.   dilution;

4.   For costs of suit and reasonable attorneys' fees;

5.   For punitive and/or exemplary damages as a result of Mattel's willful and malicious conduct to the extent allowable by law; and

6.   For such other and further relief as the Court deems just and proper.

Dated:      April 13, 2005

PATRICIA GLASER
CHRISTENSEN, MILLER, FINK,
JACOBS, GLASER, WEIL &
SHAPIRO LLP

DALE M. CENDALI
DIANA M. TORRES
PAULA E. AMBROSINI
O'MELVENY & MYERS LLP

By: _____
Diana M. Torres
Attorneys for Plaintiff
MGA ENTERTAINMENT, INC.

37

EXHIBIT 22

PAGE 888

## DEMAND FOR JURY TRIAL

MGA hereby demands a jury trial on all triable issues.

Dated: April 13, 2005

PATRICIA GLASER
CHRISTENSEN, MILLER, FINK,
JACOBS, GLASER, WEIL &
SHAPIRO LLP

DALE M. CENDALI
DIANA M. TORRES
PAULA E. AMBROSINI
O'MELVENY & MYERS LLP

By: _____
Diana M. Torres
Attorneys for Plaintiff
MGA ENTERTAINMENT, INC.

38

EXHIBIT 22
PAGE 889

**Exhibit 23**

CONFORMED COPY

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2     John B. Quinn (Bar No. 90378)
      (johnquinn@quinnemanuel.com)
3     Michael T. Zeller (Bar No. 196417)
      (michaelzeller@quinnemanuel.com)
3     Jon D. Corey (Bar No. 185066)
      (joncorey@quinnemanuel.com)
4     Duane R. Lyons (Bar No. 125091)
      (duanelyons@quinnemanuel.com)
5   865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
7   Facsimile: (213) 443-3100

8   Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

12            Plaintiff,                  Consolidated With Case No. 04-9059 and
                                          Case No. 05-2727
13       v.
                                          MATTEL, INC.'S SECOND AMENDED
14                                        ANSWER IN CASE NO. 05-2727 AND
    MATTEL, INC., a Delaware             COUNTERCLAIMS FOR:
15  corporation,
                                          1.   COPYRIGHT INFRINGEMENT;
16            Defendant.                  2.   VIOLATION OF THE
                                               RACKETEER INFLUENCED AND
17                                             CORRUPT ORGANIZATIONS
                                               ACT;
18  MGA ENTERTAINMENT, INC. a            3.   CONSPIRACY TO VIOLATE THE
    California corporation,                    RACKETEER INFLUENCED AND
19                                             CORRUPT ORGANIZATIONS
              Plaintiff,                        ACT;
20                                        4.   MISAPPROPRIATION OF TRADE
         v.                                    SECRETS;
21                                        5.   BREACH OF CONTRACT;
    MATTEL, INC., a Delaware             6.   INTENTIONAL INTERFERENCE
22  corporation, and DOES 1-10,                WITH CONTRACT;
                                          7.   BREACH OF FIDUCIARY DUTY;
23            Defendants.                 8.   AIDING AND ABETTING
                                               BREACH OF FIDUCIARY DUTY;
24                                        9.   BREACH OF DUTY OF
                                               LOYALTY;
25

26                                        PUBLIC REDACTED VERSION

27                                        Volume I

28

2154363.2

EXHIBIT 23

PAGE C7·12·C7

PAGE 890

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT

1  MATTEL, INC., a Delaware corporation,

2                                     Counter-claimant,

3       v.

4  MGA ENTERTAINMENT, INC., a
   California corporation; ISAAC
5  LARIAN, an individual; CARTER
   BRYANT, an individual; MGA
6  ENTERTAINMENT (HK) LIMITED,
   a Hong Kong Special Administrative
7  Region business entity; MGAE DE
   MEXICO, S.R.L. DE C.V., a
8  Mexico business entity; CARLOS
   GUSTAVO MACHADO GOMEZ, an
9  individual; and DOES 4 through 10,

10                                    Counter-defendants.

11

12  AND CONSOLIDATED CASES

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10. AIDING AND ABETTING
    BREACH OF DUTY OF
    LOYALTY;
11. CONVERSION;
12. UNFAIR COMPETITION; AND
13. DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

EXHIBIT __23__

PAGE __891__

2154363.2

-2-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

## SECOND AMENDED ANSWER

Pursuant to the Court's Orders of January 12, 2007 and June 27, 2007, Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA Entertainment, Inc. ("Complaint") as follows:

### Preliminary Statement

The Complaint in this case contravenes Rule 8(a) of the Federal Rules of Civil Procedure in multiple respects. For example, in many places, the Complaint improperly mixes factual averments with argumentative rhetoric. The Complaint also includes a selective recitation of alleged historical facts and "rumor," much of which is both irrelevant and inflammatory in tone and content. In addition, many of the allegations of the Complaint are overly broad, vague or conclusory and include terms which are undefined and which are susceptible to different meanings. Accordingly, by way of a general response, all allegations are denied unless specifically admitted, and any factual averment admitted is admitted only as to the specific facts and not as to any conclusions, characterizations, implications or speculations which are contained in the averment or in the Complaint as a whole. These comments and objections are incorporated, to the extent appropriate, into each numbered paragraph of this Second Amended Answer.

Mattel further submits that the use of the headings throughout the Complaint is improper, and therefore no response to them is required. In the event that a response is required, Mattel denies those allegations.

The Complaint also contains many purported photographs of various items, and it uses one or more headings purporting to describe, either individually or in groups, these various photographs. The images of these photographs contained in the Complaint are all relatively small and some are of less than optimal quality, making it difficult to evaluate the adequacy of the photographs or their fairness and accuracy in depicting what they purport to represent. The Complaint also does not describe the circumstances or time frame in which these photographs were taken,

EXHIBIT 23

PAGE 892

-3-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  and in many cases does not identify, or does not sufficiently or properly identify, the

2  item depicted in the photographs.  All of these factors, as well as the use of these

3  photographs and headings out of context, or with an insufficient context, impair the

4  ability of Mattel to fully respond to these photographs and headings, or to any

5  purported allegations involving, or relying upon, the use of such photographs and

6  accompanying headings.  By way of a general response, Mattel therefore does not

7  admit the authenticity of any photograph, or the accuracy or adequacy of any

8  heading, nor does it admit any allegation or inference that is based on, or purports to

9  be based on, any photograph or accompanying heading in the Complaint.  Mattel

10 reserves the right to challenge the authenticity of any photograph and the accuracy

11 or adequacy of any heading (either as included in the Complaint or in the context of

12 additional material not included).  Further, with reference to all photographs and

13 accompanying headings, or any averments based on the Complaint's use of such

14 photographs and headings, which might be offered into evidence, Mattel specifically

15 reserves its right to object to any use of such photographs, headings, and averments,

16 or the Complaint as a whole or in part, in evidence for any purpose whatsoever.

17          To the extent that Mattel has endeavored to answer any particular

18 allegation containing any such photographs and headings, any admission concerning

19 the item purported to be depicted in such photograph, or described in such headings,

20 shall not constitute an admission that the photograph is authentic, adequate, or

21 admissible, nor that any heading is accurate, adequate, or admissible.  All such items

22 purportedly depicted in such photographs, and described in such headings, "speak

23 for themselves".  Accordingly, to the extent that any such referenced materials are

24 deemed allegations against Mattel, they are denied.

25                              Responses

26          1.       Answering paragraph 1 of the Complaint, Mattel admits that

27 plaintiff MGA Entertainment, Inc. ("plaintiff" or "MGA") is a California

28 corporation with a principal place of business in Van Nuys, California.

EXHIBIT __23__

PAGE __893__

-4-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

2.     Answering paragraph 2 of the Complaint, Mattel admits that Mattel is a Delaware corporation with a principal place of business in El Segundo, California.

3.     Answering paragraph 3 of the Complaint, Mattel denies that there has been wrongful conduct on its part and states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth therein and, on that basis, denies them.

4.     Answering paragraph 4 of the Complaint, Mattel admits that plaintiff purports to assert claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and (c), California Business and Professions Code §§ 17200 *et seq.*, California Business and Professions Code § 14330 and California common law, denies that plaintiff is entitled to any relief thereunder and denies the truth of the remaining allegations set forth in paragraph 4.

5.     Answering paragraph 5 of the Complaint, Mattel admits that it is subject to personal jurisdiction in this District and denies the truth of the remaining allegations set forth in paragraph 5.

6.     Answering paragraph 6 of the Complaint, Mattel admits that venue is proper in this District and denies the truth of the remaining allegations set forth in paragraph 6.

7.     Answering paragraph 7 of the Complaint, Mattel admits that MGA has filed the instant lawsuit and denies the truth of the remaining allegations set forth in paragraph 7.

8.     Answering paragraph 8 of the Complaint, Mattel states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding MGA's history set forth therein and, on that basis, denies them, states that MGA has made conflicting representations, including in sworn statements, that are at odds with the allegations of the Complaint and denies the truth of the remaining allegations set forth in paragraph 8.

1    9.    Answering paragraph 9 of the Complaint, Mattel admits that

2  MGA filed this action, states that Mattel's web site and corporate governance

3  policies speak for themselves and denies the truth of the remaining allegations set

4  forth in paragraph 9.

5    10.    Answering paragraph 10 of the Complaint, Mattel admits that it

6  is the world's most successful toy company, states that the first doll in its BARBIE

7  line was publicly introduced in 1959 and that BARBIE-branded dolls have been the

8  world's best-selling toys, states that Mattel's sales and stock price speak for

9  themselves, and denies the truth of the remaining allegations set forth in paragraph

10  10.

11    11.    Answering paragraph 11 of the Complaint, Mattel admits that

12  Adrienne Fontanella is the former president for girls' toys at Mattel, states that it is

13  without knowledge or information sufficient to form a belief as to the truth or falsity

14  of the allegations regarding an alleged statement by Ms. Fontanella, and denies the

15  truth of the remaining allegations set forth in paragraph 11.

16    12.    Answering paragraph 12 of the Complaint, Mattel is without

17  knowledge or information sufficient to form a belief as to the truth or falsity of the

18  allegations regarding alleged statements by unidentified "analysts," states that

19  Mattel's sales and stock price speak for themselves, and denies the truth of the

20  remaining allegations set forth in paragraph 12.

21    13.    Answering paragraph 13 of the Complaint, Mattel admits that Jill

22  Barad became President and Chief Executive Officer of Mattel in January 1997, that

23  Mattel acquired Tyco Industries, Inc. ("Tyco") in March 1997, that Mattel acquired

24  Pleasant Company in 1998, Mattel acquired the Learning Company in May 1999,

25  that Mattel acquired Purple Moon in 1999, that the MATCHBOX brand was owned

26  by Tyco, that the AMERICAN GIRL line of dolls was made by Pleasant Company

27  at the time of that entity's acquisition, and denies the truth of the remaining

28  allegations set forth in paragraph 13.

EXHIBIT  **23**

PAGE  **895**

-6-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1      14.    Answering paragraph 14 of the Complaint, Mattel states that its

2  public announcements speak for themselves, and denies the truth of the remaining

3  allegations set forth therein.

4      15.    Answering paragraph 15 of the Complaint, Mattel states that its

5  stock price and its public announcements speak for themselves, and denies the truth

6  of the remaining allegations set forth therein.

7      16.    Answering paragraph 16 of the Complaint, Mattel states that its

8  stock price speaks for itself, states that it is without knowledge or information

9  sufficient to form a belief as to the truth or falsity of the allegations regarding the

10  alleged views of unnamed "analysts" and "[i]nvestors," and denies the truth of the

11  remaining allegations set forth therein.

12      17.    Answering paragraph 17 of the Complaint, Mattel admits that

13  Ms. Barad resigned in February 2000.

14      18.    Answering paragraph 18 of the Complaint, Mattel admits that

15  Robert Eckert became Chairman and Chief Executive Officer of Mattel in May 2000

16  and that Mr. Eckert previously was employed at Kraft Foods, Inc. for 23 years, is

17  without knowledge or information sufficient to form a belief as to the truth or falsity

18  of the allegations regarding the views of unnamed "[i]nvestors" and others, and

19  denies the truth of the remaining allegations set forth in paragraph 18.

20      19.    Answering paragraph 19 of the Complaint, Mattel admits that the

21  *Wall Street Journal* published an article on August 10, 2000 the content of which

22  speaks for itself, and denies the truth of the remaining allegations set forth therein.

23      20.    Answering paragraph 20 of the Complaint, Mattel admits that it

24  disposed of the Learning Company in October 2000, states that its sales and

25  revenues speak for themselves, states that the remainder of the allegations contained

26  therein are characterizations, not factual assertions, and therefore no response is

27  necessary under Fed. R. Civ. P. 8(b) and, to the extent any further response is

28  required, denies the truth of any remaining allegations set forth in paragraph 20.

21.     Answering paragraph 21 of the Complaint, Mattel admits that products in plaintiff's "Bratz" line compete with products in Mattel's BARBIE and other product lines and states that the remainder of the allegation contained therein—consisting of a sentence fragment—is unintelligible and on that basis denies the truth of any such remaining allegation set forth therein.

22.     Answering paragraph 22 of the Complaint, Mattel admits that products in plaintiff's "Bratz" line compete with Mattel products, states that the remainder of the allegations contained therein are characterizations, not factual assertions, and that therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies the truth of any remaining allegations set forth therein.

23.     Answering paragraph 23 of the Complaint, Mattel states that MGA has made conflicting statements, including in sworn statements, that are inconsistent with the allegations set forth in paragraph 23 of the Complaint and states that it is therefore without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth therein and, on that basis, denies them.

24.     Answering paragraph 24 of the Complaint, Mattel states that the "look" of the referenced dolls speak for themselves and denies the truth of the remaining allegations set forth therein.  By way of further answer, Mattel states that the photographs and their accompanying caption on page 7 of the Complaint are false and misleading to the extent they are intended to suggest that MGA has produced or used a consistent packaging shape or look or that it has protectible rights in the matters depicted in the photographs.

25.     Answering paragraph 25 of the Complaint, Mattel admits that Bratz dolls are between approximately 9.5 to 10 inches in height, states that the appearances of the dolls speak for themselves, denies that "Bratz" dolls are or "were intentionally shorter" than dolls in Mattel's BARBIE line, denies that the "Bratz"

1  dolls "looked like no other" and denies the truth of the remaining allegations set

2  forth in paragraph 25.

3        26.    Answering paragraph 26 of the Complaint, Mattel states that the

4  use of the term "classic" is unintelligible, since Mattel has designed and sold

5  different dolls using different heads and with different fashions and themes over the

6  years, and denies the truth of any remaining allegations. By way of further answer,

7  Mattel states that the image encaptioned "Mattel's 'Barbie'" on page 8 of the

8  Complaint is misleading in that it depicts one of the doll heads that have been used

9  as part of the BARBIE line for many years, and therefore ignores that Mattel has

10  long designed and sold an array of different BARBIE line dolls that use different

11  doll heads, including doll heads which depict different ethnicities, and that are

12  dressed in different clothing and fashion styles.

13        27.    Answering paragraph 27 of the Complaint, Mattel admits that

14  MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

15  denies that MGA originated or otherwise has rights to that phrase, admits that one

16  audience for products in the "Bratz" line has been "tweens" and denies the truth of

17  the remaining allegations set forth in paragraph 27.

18        28.    Answering paragraph 28 of the Complaint, Mattel admits that

19  certain "Bratz" dolls have won certain awards, the terms of which speak for

20  themselves, states that it is without knowledge or information sufficient to form a

21  belief as to the truth or falsity of the allegations regarding the "awards" MGA claims

22  and, on that basis, denies them, denies that plaintiff has protectible rights and denies

23  the truth of any remaining allegations set forth in paragraph 28.

24        29.    Answering paragraph 29 of the Complaint, Mattel admits that

25  dolls in the "Bratz" line compete with dolls in Mattel product lines, denies that

26  Mattel has or has ever had a "stranglehold" on any market, states that the market

27  allegations contained in paragraph 29 are vague and ambiguous, including without

28  limitation in that the allegations fail to specify what products among the parties'

SECOND AMENDED ANSWER AND COUNTERCLAIMS



EXHIBIT 23

PAGE 898

1   respective lines are being referred to and what time period is being referred to, and

2   denies the truth of any remaining allegations set forth in paragraph 29.

3          30.    Answering paragraph 30 of the Complaint, Mattel admits that

4   MGA has been a licensee of Mattel, states that the market allegations are vague and

5   ambiguous, including without limitation in that the allegations fail to specify what

6   products are being referred to and what time periods or points in time are being

7   referred to, and states that the remainder of the allegations contained therein are

8   characterizations, not factual assertions, and therefore no response is necessary

9   under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies

10  the truth of any remaining allegations set forth in paragraph 30.

11         31.    Answering paragraph 31 of the Complaint, Mattel states that the

12  allegations contained therein are characterizations, not factual assertions, and

13  therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any

14  further response is required, denies the truth of the allegations set forth in paragraph

15  31.

16         32.    Answering paragraph 32 of the Complaint, Mattel denies the

17  truth of the allegations set forth therein.

18         33.    Answering paragraph 33 of the Complaint, Mattel denies the

19  truth of the allegations set forth therein.

20         34.    Answering paragraph 34 of the Complaint, Mattel states that it

21  has released various MY SCENE dolls, including MY SCENE dolls named

22  "Madison", "Chelsea" and "Barbie," states that the appearance of the Bratz and MY

23  SCENE dolls speak for themselves, denies that Mattel designed its MY SCENE

24  dolls to "evoke" or resemble the alleged "look" of "Bratz" dolls, denies that plaintiff

25  has protectible rights, states that MGA has made conflicting representations that are

26  at odds with the allegations of the Complaint and that it is therefore without

27  knowledge or information sufficient to form a belief as to the truth or falsity of the

28  allegations regarding the "launch" of Bratz dolls set forth therein and, on that basis,

1   denies them, and denies the truth of the remaining allegations set forth therein.  By

2   way of further answer, Mattel states that the photographs and their accompanying

3   captions on page 10 of the Complaint are misleading and false to the extent they are

4   intended to suggest that a particular Mattel doll has been changed over time as

5   purportedly depicted.  Among other things, Mattel has long designed and sold an

6   array of different BARBIE line dolls using different doll heads, and the photographs

7   encaptioned "Mattel's Traditional 'Barbie'" is one of the doll heads that has been

8   used, and continues to be used, as part of the BARBIE line.  In addition, the

9   photographs encaptioned MY SCENE doll "circa 2002" is, in fact, a Mattel doll

10  character called BARBIE that continues to be sold and/or marketed with that head,

11  and the photographs encaptioned MY SCENE doll "circa 2004" depict a MY

12  SCENE doll character separate and apart from the one depicted in the "circa 2002"

13  image (and is not a revised character as plaintiff apparently attempts to imply).

14          35.    Answering paragraph 35 of the Complaint, Mattel admits that

15  Mattel released a product line called FLAVAS, states that the appearance of the

16  FLAVAS dolls speaks for themselves, states that it is without knowledge or

17  information sufficient to form a belief as to the truth or falsity of the allegations

18  regarding the  "rumor" relied upon by plaintiff and the undefined "media"

19  purportedly quoting Isaac Larian and, on that basis, denies them, denies that Mattel

20  has abandoned the FLAVAS line, and denies the truth of the remaining allegations

21  set forth in paragraph 35.

22          36.    Answering paragraph 36 of the Complaint, Mattel denies the

23  truth of the allegations set forth therein.

24          37.    Answering paragraph 37 of the Complaint, Mattel denies the

25  truth of the allegations set forth therein.  By way of further answer, Mattel states that

26  the unnumbered photographs and their accompanying captions on pages 11 through

27  16 of the Complaint -- which apparently were included to purportedly support the

28  allegation that MY SCENE dolls "became 'Bratz,'" which allegation Mattel

EXHIBIT __23__   -11-

PAGE __900__                    SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  specifically denies -- are false and misleading.  Among other things, the heads

2  depicted are among an array of different doll heads that Mattel has used, and

3  continues to use, over the course of many years.  Moreover, the images purport to

4  compare different Mattel doll lines to show alleged changes in appearance even

5  though, in fact, each of the heads are currently sold and/or marketed to the public.

6  The "Blonde" series of photographs encaptioned "original" and "recent" MY

7  SCENE is further and specifically misleading in that it purports to compare two

8  differently named and outfitted dolls in the MY SCENE doll line, both of which

9  continue to be sold and/or marketed.

10         38.    Answering paragraph 38 of the Complaint, Mattel states that the

11  phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,

12  denies that MGA was the originator of or the first to use the eye shape or makeup

13  depicted as purportedly constituting "the 'BRATZ' eye," denies that Mattel has

14  copied the "the 'BRATZ' eye" and denies the truth of the remaining allegations

15  contained in paragraph 38.  By way of further answer, Mattel states that the

16  unnumbered photographs and accompanying caption on page 13 of the Complaint

17  are false and misleading.  Among other things, the purported "Original Mattel 'My

18  Scene' Eye" is one of the eye and makeup designs that Mattel has used over the

19  course of many years, and Mattel continues to sell and/or market dolls using the eye

20  and makeup design depicted therein.

21         39.    Answering paragraph 39 of the Complaint, Mattel states that the

22  phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,

23  denies that MGA was the originator of or the first to use the eye shape or makeup

24  purportedly described as constituting "the 'BRATZ' eye," denies that Mattel has

25  copied "the 'BRATZ' eye," states that the relevant dolls speak for themselves and

26  denies the truth of the remaining allegations contained in paragraph 39.  By way of

27  further answer, Mattel states that the unnumbered photographs and accompanying

28  captions on page 14 of the Complaint are false and misleading.  Among other things,

EXHIBIT 23 -12-

PAGE 901

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  the purported "New Mattel 'My Scene' Eye" is one of the eye and makeup designs
2  that Mattel has used over the course of many years, and Mattel continues to sell
3  and/or market dolls using the eye and makeup design depicted on page 14 of the
4  Complaint.

5        40.    Answering paragraph 40 of the Complaint, Mattel denies the
6  truth of the allegations therein.  By way of further answer, Mattel states that the
7  unnumbered photographs and their accompanying captions on pages 15 to 16 are
8  false and misleading.  Among other things, the heads depicted are among an array of
9  different doll heads that Mattel has used, and continues to use, over the course of
10  many years.  Moreover, the photographs purport to compare different Mattel doll
11  lines to show alleged changes in appearance even though, in fact, each of the heads
12  are currently sold and/or marketed to the public.  The "Blonde" series of
13  photographs encaptioned "original" and "recent" MY SCENE is further and
14  specifically misleading in that it purports to compare two differently named and
15  outfitted dolls in the MY SCENE doll line, both of which continue to be sold and/or
16  marketed.

17        41.    Answering paragraph 41 of the Complaint, Mattel denies the
18  truth of the allegations set forth therein.

19        42.    Answering paragraph 42 of the Complaint, Mattel admits that the
20  photographs purport to depict two packages that were, among others, part of the MY
21  SCENE line, state that the packages speak for themselves and denies the truth of any
22  remaining allegations set forth therein.

23        43.    Answering paragraph 43 of the Complaint, Mattel admits that the
24  photograph purports to depict one of the packages that were, among others, part of
25  the MY SCENE line, states that the parties' packages speak for themselves, states
26  that MGA has failed to establish that it originated, or has protectible rights in, an
27  "open and transparent style" for packaging and denies the truth of the remaining
28  allegations set forth therein.

EXHIBIT   23

PAGE   902

-13-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1       44.    Answering paragraph 44 of the Complaint, Mattel admits that

2  one photograph purports to depict one of the packages that were, among others, part

3  of the MY SCENE line, admits that the other photograph purports to depict one of

4  the packages that were, among others, used as part of the Bratz line, states that the

5  parties' packages speak for themselves, denies that MGA originated, or has

6  protectible rights in, "the 'BRATZ' packaging" or in the packaging depicted in the

7  Complaint and denies the truth of any remaining allegations set forth therein.

8       45.    Answering paragraph 45 of the Complaint, Mattel admits that

9  one photograph purports to depict one of the packages that were, among others, part

10  of the MY SCENE line, admits that the other photograph purports to depict one of

11  the packages that were, among others, used as part of the Bratz line, states that the

12  parties' packages speak for themselves, denies that MGA originated, or has

13  protectible rights in, the packaging depicted in the Complaint and denies the truth of

14  any remaining allegations set forth therein.

15       46.    Answering paragraph 46 of the Complaint, Mattel states that it

16  has utilized a wide variety of packaging styles and shapes over the years, states that

17  the relevant packaging speaks for itself, states that MGA lacks protectible rights in

18  "non-rectangular shaped box" packaging or in the other elements MGA claims in

19  paragraph 46, and denies the truth of the remaining allegations set forth therein.

20       47.    Answering paragraph 47 of the Complaint, Mattel denies that

21  any alleged "theme" is "MGA's theme," denies that MGA originated or has rights to

22  any theme and denies the truth of the remaining allegations set forth therein.

23       48.    Answering paragraph 48 of the Complaint, Mattel admits that it

24  released a doll called "Chillin Out!", states that it has released such themed dolls

25  over the course of many years, admits MGA released a "Wintertime Wonderland"

26  themed doll, denies that MGA originated or has rights to such theme, states that the

27  relevant products speak for themselves and denies the truth of the remaining

28  allegations set forth therein.

EXHIBIT 23

PAGE 903

2154363.2

-14-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1    49.    Answering paragraph 49 of the Complaint, Mattel admits that it

2  released a doll called "Night on the Town", states that it has released such themed

3  dolls over the course of many years, admits MGA released a "Formal Funk" themed

4  doll, denies that MGA originated or has rights to such theme, states that the relevant

5  products speak for themselves and denies the truth of the remaining allegations set

6  forth therein.

7    50.    Answering paragraph 50 of the Complaint, Mattel admits that it

8  released a doll called "Jammin' in Jamaica" and a playset called "Guava Gulch Tiki

9  Lounge", states that it has released such themed dolls and products over the course

10  of many years, admits that MGA released a "Sun-Kissed Summer" themed doll and

11  playset, denies that MGA originated or has rights to such theme, states that the

12  relevant products speak for themselves and denies the truth of the remaining

13  allegations set forth therein.

14    51.    Answering paragraph 51 of the Complaint, Mattel admits that it

15  has aired television commercials for its MY SCENE line, states that such

16  commercials speak for themselves, denies the truth of the remaining allegations set

17  forth therein and specifically denies that MGA was the originator of or has rights to

18  commercials "combining live action with animated sequences" set to "pop music

19  and lyrics".

20    52.    Answering paragraph 52 of the Complaint, Mattel denies the

21  truth of the allegations set forth therein.

22    53.    Answering paragraph 53 of the Complaint, Mattel admits that it

23  released a MY SCENE "Sound Lounge", admits that MGA released a product called

24  "Runway Disco", states that the relevant products speak for themselves, denies that

25  it "imitated MGA's trapezoidal box," denies that MGA has rights thereto, and

26  denies the truth of the remaining allegations set forth therein.

27    54.    Answering paragraph 54 of the Complaint, Mattel denies the

28  truth of the allegations set forth therein.

2154363.2

EXHIBIT 23

PAGE 904

-15-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1       55.    Answering paragraph 55 of the Complaint, Mattel admits that,

2  among the styling heads it has produced and sold over the course of many years, it

3  released a MY SCENE styling head, admits that MGA released a styling head called

4  "Funky Fashion Makeover Head", states that the relevant products speak for

5  themselves, denies that MGA has protectible rights and denies the truth of the

6  remaining allegations set forth in paragraph 55.

7       56.    Answering paragraph 56 of the Complaint, Mattel is without

8  knowledge or information sufficient to form a belief as to the truth or falsity of the

9  allegations set forth therein because plaintiff fails to identify the alleged instances of

10  confusion, including the source of the unidentified picture titled "Hairstyle practice",

11  and on that basis, denies them, and denies the truth of any remaining allegations set

12  forth in paragraph 56.

13       57.    Answering paragraph 57 of the Complaint, Mattel admits that it

14  has aired television commercials for its MY SCENE line, states that such

15  commercials speak for themselves and denies the truth of the remaining allegations

16  set forth therein.

17       58.    Answering paragraph 58 of the Complaint, Mattel admits that

18  MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

19  denies that MGA originated that phrase or otherwise has rights to it, states that

20  Mattel's web site speaks for itself and denies the truth of the remaining allegations

21  set forth therein.

22       59.    Answering paragraph 59 of the Complaint, Mattel admits that,

23  among the plush products that it has produced and sold over the course of many

24  years, it has released plush dogs as part of its MY SCENE "Miami Getaway"

25  themed product line, states that Mattel has for many years sold plush pets of the type

26  used with its MY SCENE dog, admits that MGA has released various Bratz pets,

27  states that MGA was not the originator of and has no rights to the features and other

28

1  elements described therein, states that the relevant products speak for themselves

2  and denies the truth of the remaining allegations set forth therein.

3      60.    Answering paragraph 60 of the Complaint, Mattel admits that,

4  among the plush toys that it has released over the course of many years, its MY

5  SCENE dog has been sold in packaging depicted (in part) on page 22 of the

6  Complaint, states that Mattel has for many years sold plush pets and other plush

7  products in packaging of the type used with its MY SCENE dog, admits that MGA

8  has released a "Bratz" dog, states that MGA was not the originator of and has no

9  rights to the packaging described therein, states that the relevant packages speak for

10  themselves and denies the truth of the remaining allegations set forth therein.

11      61.    Answering paragraph 61 of the Complaint, Mattel denies that it

12  has intended to cause any consumer confusion and states that it is without

13  knowledge or information sufficient to form a belief as to the truth or falsity of the

14  allegations set forth therein concerning unnamed retailers, customers and others

15  because plaintiff fails to identify any source for the matters alleged and, on that

16  basis, denies them and denies the truth of any remaining allegations set forth therein.

17      62.    Answering paragraph 62 of the Complaint, Mattel denies that it

18  has intended to cause any confusion and states that it is without knowledge or

19  information sufficient to form a belief as to the truth or falsity of the allegations set

20  forth therein concerning alleged comments and conversations because plaintiff fails

21  to identify any source for the alleged comments and conversations and, on that

22  basis, denies them, and denies the truth of any remaining allegations set forth

23  therein.

24      63.    Answering paragraph 63 of the Complaint, Mattel denies that it

25  has intended to cause any confusion and states that it is without knowledge or

26  information sufficient to form a belief as to the truth or falsity of the allegations set

27  forth therein because plaintiff fails to identify any source for the alleged comments

28

EXHIBIT   23

PAGE   906

-17-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  and conversations and, on that basis, denies them, and denies the truth of any

2  remaining allegations set forth therein.

3        64.  Answering paragraph 64 of the Complaint, Mattel denies that it

4  has intended to cause any confusion and states that it is without knowledge or

5  information sufficient to form a belief as to the truth or falsity of the allegations set

6  forth therein because plaintiff fails to identify any source for the alleged comments

7  and conversations and, on that basis, denies them, and denies the truth of any

8  remaining allegations set forth therein.

9        65.  Answering paragraph 65 of the Complaint, Mattel denies the

10  truth of the allegations set forth therein.

11        66.  Answering paragraph 66 of the Complaint, Mattel admits that it

12  sued a competitor in the German courts for unfair competition for copying various

13  Mattel BARBIE line products, states that such claims exclusively arose under and

14  were the subject of German law, states that since that time the Federal Supreme

15  Court has rejected the contention made by MGA in paragraph 66 that

16  "systematically copying and borrowing elements" from competing dolls supports a

17  claim for unfair competition, and denies the truth of the remaining allegations set

18  forth therein.

19        67.  Answering paragraph 67 of the Complaint, Mattel denies the

20  truth of the allegations set forth therein.

21        68.  Answering paragraph 68 of the Complaint, Mattel admits that it

22  has released dolls called "Wee 3 Friends," admits that MGA has released dolls

23  called "4-Ever Best Friends," states that the relevant products speak for themselves,

24  denies that MGA's packaging is distinctive, denies that MGA has protectible rights

25  thereto and denies the truth of the remaining allegations set forth in paragraph 68.

26        69.  Answering paragraph 69 of the Complaint, Mattel admits that its

27  Fisher Price division has released, among other dolls called "Little Mommy," the

28  "Little Mommy Potty Training Baby Doll," admits that MGA has released a

2154363.2

EXHIBIT 23

PAGE 907

-18-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

"Mommy's Little Patient" doll and denies the truth of the remaining allegations set forth therein.

70.     Answering paragraph 70 of the Complaint, Mattel admits that it has released die-cast cars and other products called "Acceleracers" as part of its HOT WHEELS line, admits that MGA has released products called "AlienRacers," denies that MGA was the originator of or has rights to the elements and matters described in paragraph 70, states that the relevant products speak for themselves and denies the truth of the remaining allegations set forth therein.

71.     Answering paragraph 71 of the Complaint, Mattel admits that it has aired commercials relating to "Acceleracers," states that such commercials speak for themselves, denies the truth of the remaining allegations set forth therein and specifically denies that MGA originated or has rights to commercials and other matters described therein.

72.     Answering paragraph 72 of the Complaint, Mattel states that its web site speaks for itself, denies the truth of the remaining allegations contained in paragraph 72 and specifically denies that Mattel intended to create confusion in the marketplace.

73.     Answering paragraph 73 of the Complaint, Mattel denies the truth of the allegations set forth therein.

74.     Answering paragraph 74 of the Complaint, Mattel denies the truth of the allegations set forth therein.

75.     Answering paragraph 75 of the Complaint, Mattel admits that it has reminded certain former employees who became employed by MGA by letter of their contractual and fiduciary obligation to maintain the secrecy of all Mattel confidential and proprietary business information, states that such letters were prepared and sent to their recipients in good faith contemplation of litigation, admits that it filed a complaint for declaratory relief against Ronald Brawer in Los Angeles Superior Court, entitled Mattel, Inc. v. Brawer, Case No. BC323381, on October 21,

1  2004, states that pursuant to the Court's Order of August 25, 2005 it need not

2  respond to the allegations in paragraph 75 relating to that action, and denies the truth

3  of the remaining allegations set forth in paragraph 75.

4        76.    Answering paragraph 76 of the Complaint, Mattel states that

5  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

6  including such acts that are lawful in foreign nations, and denies the truth of

7  allegations set forth therein.

8        77.    Answering paragraph 77 of the Complaint, Mattel states that

9  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

10 including such acts that are lawful in foreign nations, and denies the truth of the

11 allegations set forth therein.

12       78.    Answering paragraph 78 of the Complaint, Mattel states that it is

13 without knowledge or information sufficient to form a belief as to the truth or falsity

14 of the allegations regarding MGA's claimed "shortage of doll hair" and, on that

15 basis, denies them and denies the truth of the remaining allegations set forth therein.

16       79.    Answering paragraph 79 of the Complaint, Mattel states that

17 MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

18 including such acts that are lawful in foreign nations, and denies the truth of

19 allegations set forth therein.

20       80.    Answering paragraph 80 of the Complaint, Mattel denies the

21 truth of the allegations set forth therein.

22       81.    Answering paragraph 81 of the Complaint, Mattel admits that

23 NPD Funworld ("NPD") supplies sales statistics in *inter alia* the toy, PC games and

24 video games industries, admits that to Mattel's knowledge NPD restricts the use of

25 its subscriber information, states that MGA was sued by NPD and states that it is

26 without knowledge or information sufficient to form a belief as to the truth or falsity

27 of the allegations regarding the need of unspecified "toy companies" for NPD

28

1  statistics and, on that basis, denies them and denies the truth of any remaining
2  allegations set forth therein.

3       82.    Answering paragraph 82 of the Complaint, Mattel denies the
4  truth of the allegations set forth therein.

5       83.    Answering paragraph 83 of the Complaint, Mattel states that it is
6  without knowledge or information sufficient to form a belief as to the truth or falsity
7  of the allegations set forth therein because MGA fails to quantify its annual
8  subscription fees and, on that basis, denies them.

9       84.    Answering paragraph 84 of the Complaint, Mattel states that it is
10  without knowledge or information sufficient to form a belief as to the truth or falsity
11  of the allegations set forth therein and, on that basis, denies them.

12       85.    Answering paragraph 85 of the Complaint, Mattel states that
13  MGA was sued by NPD, states that it is without knowledge or information sufficient
14  to form a belief as to such nature and grounds for such litigation (to which Mattel
15  was not a party) and, on that basis, denies the allegations relating thereto, and denies
16  the truth of the remaining allegations set forth therein.

17       86.    Answering paragraph 86 of the Complaint, Mattel denies the
18  truth of the allegations set forth therein.

19       87.    Answering paragraph 87 of the Complaint, Mattel admits that the
20  Children's Advertising Review Unit ("CARU") is the children's arm of the
21  advertising industry's self-regulation program, states that compliance with CARU's
22  Privacy Program can provide FTC-approved Safe Harbor under the Children's
23  Online Privacy Protection Act ("COPPA"), and denies the truth of the remaining
24  allegations set forth therein.

25       88.    Answering paragraph 88 of the Complaint, Mattel admits that it
26  is one of dozens of CARU Supporters and denies the truth of the remaining
27  allegations set forth therein.

28

EXHIBIT **23**

PAGE **910**

-21-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

89. Answering paragraph 89 of the Complaint, Mattel denies the truth of the allegations set forth therein.

90. Answering paragraph 90 of the Complaint, Mattel states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations as to the consequences to MGA of MGA's violations of CARU standards and, on that basis, denies them.

91. Answering paragraph 91 of the Complaint, Mattel states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations as to the consequences to MGA of MGA violation of CARU standards and, on that basis, denies them.

92. Answering paragraph 92 of the Complaint, Mattel admits that the Toy Industry Association, Inc. ("TIA") is a toy industry trade association, admits that at certain times TIA has given awards called the People's Choice Toy of The Year or the Toy of The Year Award, denies that Mattel wrongfully influenced TIA and states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth therein and, on that basis, denies them.

93. Answering paragraph 93 of the Complaint, Mattel states that the allegations set forth therein are vague and ambiguous, including in that they fail to properly identify the years in which the referenced awards were given and/or the particular product which won such awards, and accordingly lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth therein and, on that basis, denies them.

94. Answering paragraph 94 of the Complaint, Mattel admits that Neil Freidman was the chairman of TIA from approximately May 2002 to May 2004, states that Fischer Price is a division of Mattel and denies the truth of the remaining allegations set forth therein.

EXHIBIT 23

PAGE 911

-22-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

95.     Answering paragraph 95 of the Complaint, Mattel admits that Hokey Pokey Elmo won the Toy of the Year Award and denies the truth of the remaining allegations set forth therein.

96.     Answering paragraph 96 of the Complaint, Mattel states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth therein and, on that basis, denies them.

97.     Answering paragraph 97 of the Complaint, Mattel denies the truth of the allegations set forth therein.

98.     Answering paragraph 98 of the Complaint, Mattel denies the truth of the allegations set forth therein.

99.     Answering paragraph 99 of the Complaint, Mattel denies the truth of the allegations set forth therein.

100.    Answering paragraph 100 of the Complaint, Mattel denies the truth of the allegations set forth therein.

101.    Answering paragraph 101 of the Complaint, Mattel repeats its responses contained in paragraphs 1 through 100 of this Second Amended Answer and incorporates them by reference as though fully and completely set forth herein.

102.    Answering paragraph 102 of the Complaint, Mattel denies the truth of the allegations set forth therein and specifically denies that MGA's alleged trade dress is distinctive.

103.    Answering paragraph 103 of the Complaint, Mattel denies the truth of the allegations set forth therein and specifically denies that MGA's alleged trade dress is distinctive.

104.    Answering paragraph 104 of the Complaint, Mattel denies the truth of the allegations set forth therein.

105.    Answering paragraph 105 of the Complaint, Mattel denies the truth of the allegations set forth therein.

EXHIBIT 23

PAGE 912

1      106.   Answering paragraph 106 of the Complaint, Mattel denies the

2   truth of the allegations set forth therein.

3      107.   Answering paragraph 107 of the Complaint, Mattel denies the

4   truth of the allegations set forth therein.

5      108.   Answering paragraph 108 of the Complaint, Mattel denies the

6   truth of the allegations set forth therein and specifically denies that plaintiff is

7   entitled to injunctive relief.

8      109.   Answering paragraph 109 of the Complaint, Mattel repeats its

9   responses contained in paragraphs 1 through 108 of this Second Amended Answer

10   and incorporates them by reference as though fully and completely set forth herein.

11      110.   Answering paragraph 110 of the Complaint, Mattel denies the

12   truth of the allegations set forth therein.

13      111.   Answering paragraph 111 of the Complaint, Mattel denies the

14   truth of the allegations set forth therein.

15      112.   Answering paragraph 112 of the Complaint, Mattel denies the

16   truth of the allegations set forth therein.

17      113.   Answering paragraph 113 of the Complaint, Mattel denies the

18   truth of the allegations set forth therein.

19      114.   Answering paragraph 114 of the Complaint, Mattel denies the

20   truth of the allegations set forth therein.

21      115.   Answering paragraph 115 of the Complaint, Mattel denies the

22   truth of the allegations set forth therein.

23      116.   Answering paragraph 116 of the Complaint, Mattel denies the

24   truth of the allegations set forth therein.

25      117.   Answering paragraph 117 of the Complaint, Mattel denies the

26   truth of the allegations set forth therein and specifically denies that plaintiff is

27   entitled to injunctive relief.

28

2154363.2

EXHIBIT 23

PAGE 913

-24-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1    118.   Answering paragraph 118 of the Complaint, Mattel denies the
2    truth of the allegations set forth therein.

3    119.   Answering paragraph 119 of the Complaint, Mattel repeats its
4    responses contained in paragraphs 1 through 118 of this Second Amended Answer
5    and incorporates them by reference as though fully and completely set forth herein.

6    120.   Answering paragraph 120 of the Complaint, Mattel denies the
7    truth of the allegations set forth therein.

8    121.   Answering paragraph 121 of the Complaint, Mattel denies the
9    truth of the allegations set forth therein.

10    122.   Answering paragraph 122 of the Complaint, Mattel denies the
11    truth of the allegations set forth therein.

12    123.   Answering paragraph 123 of the Complaint, Mattel denies the
13    truth of the allegations set forth therein and specifically denies that plaintiff is
14    entitled to injunctive relief.

15    124.   Answering paragraph 124 of the Complaint, Mattel repeats its
16    responses contained in paragraphs 1 through 123 of this Second Amended Answer
17    and incorporates them by reference as though fully and completely set forth herein.

18    125.   Answering paragraph 125 of the Complaint, Mattel denies the
19    truth of the allegations set forth therein.

20

21    <u>General Denial</u>

22    Unless specifically admitted herein, Mattel denies the truth of each and
23    every allegation set forth in plaintiff's Complaint and specifically denies that
24    plaintiff is entitled to any relief against Mattel.

25

26

27

28

## Affirmative Defenses

By alleging the Affirmative Defenses set forth below, Mattel does not agree or concede that it bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.

## First Affirmative Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## Second Affirmative Defense

Plaintiff has no valid, enforceable or protectible rights or interest in the alleged trade dress or other matters asserted, including without limitation in that plaintiff has failed to establish that its alleged trade dress is distinctive as to plaintiff.

## Third Affirmative Defense

Plaintiff's claims, including without limitation plaintiff's claims based upon alleged extra-territorial acts, are barred in whole or in part by lack of subject matter jurisdiction.

## Fourth Affirmative Defense

Plaintiff's claims are barred in whole or in part by plaintiff's unclean hands.

## Fifth Affirmative Defense

Plaintiff's claims are barred in whole or in part by virtue of Mattel's prior-creation of the elements and other matters asserted in the Complaint.

## Sixth Affirmative Defense

Plaintiff's claims are barred in whole or in part by its lack of standing.

## Seventh Affirmative Defense

Plaintiff's claims are barred in whole or in part by the applicable statutes of limitation and the doctrine of laches.

## Eighth Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrines of waiver, estoppel and acquiescence.

## Ninth Affirmative Defense

Plaintiff's claims are barred in whole or in part by Mattel's constitutional rights of free speech, petitioning and association, including without limitation by the litigation privilege as protected by and/or codified in *inter alia* Section 47(b) of the California Civil Code, the *Noerr-Pennington* doctrine, the common interest privilege and by other privileges.

## Tenth Affirmative Defense

Plaintiff's claims are barred in whole or in part by Mattel's federal and state constitutional rights of free speech, including without limitation under the First Amendment of the United States Constitution.

## Eleventh Affirmative Defense

Plaintiff's claims are barred in whole or in part by the competitor privilege.

## Twelfth Affirmative Defense

Plaintiff's claims are in whole or in part preempted by the Copyright Act and barred by the *Sears-Compco* doctrine.

## Thirteenth Affirmative Defense

Plaintiff's requested relief, including plaintiff's requests for punitive and/or enhanced damages, are barred in whole or in part because all of Mattel's actions were in good faith.

## Fourteenth Affirmative Defense

Plaintiff's damages, if any, were not caused by Mattel and are not attributable to the acts or omissions of Mattel.

## Fifteenth Affirmative Defense

Plaintiff has failed to mitigate its damages, if any.

## Additional Defenses

Mattel has insufficient knowledge or information upon which to form a belief as to whether additional defenses are available. Mattel reserves the right to amend this Second Amended Answer to add, delete, or modify additional defenses based on legal theories which may or will be divulged through clarification of the Complaint, through discovery, through change or clarification of the governing law or through further legal analysis of plaintiff's positions in this litigation.

## Prayer for Relief

WHEREFORE, Mattel prays for relief as follows:

EXHIBIT 23
PAGE 917
-28-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

1          1.     That the Complaint be dismissed with prejudice;

2          2.     That plaintiff take nothing by reason of the Complaint against

3  Mattel and that judgment be entered in Mattel's favor;

4          3.     That Mattel recover its costs and attorneys' fees; and

5          4.     That this Court award such other and further relief as it deems

6  just and proper.

7

8                    **COUNTERCLAIMS**

9          Pursuant to the Court's Orders of January 12, 2007 and June 27, 2007,

10  and incorporating its [Proposed] Amended Complaint dated November 19, 2006,

11  Mattel, Inc. alleges as follows:

12                **Preliminary Statement**

13          1.     For years MGA Entertainment, Inc. has engaged in a pattern of

14  stealing and using Mattel, Inc.'s property and trade secrets.  MGA's use of the

15  stolen property and trade secrets caused and continues to cause significant harm to

16  Mattel.  MGA first stole "Bratz," a fashion doll, from Mattel, and then continued

17  stealing Mattel's confidential and proprietary information to fuel MGA's growth.

18          2.     Carter Bryant conceived, created and developed Bratz designs

19  while he was employed by Mattel as a doll designer.  He concealed his Bratz work

20  from Mattel and wrongfully sold Bratz to MGA while he was a Mattel employee.

21  As MGA knows, Mattel owns the Bratz designs that Bryant made.  As the rightful

22  owner of those Bratz designs, Mattel has registered copyrights for them and seeks

23  damages arising from MGA's repeated infringement of those copyrights.

24          3.     Emboldened by the success of its illegal conduct, MGA has

25  repeated—and even expanded—its pattern of theft on numerous occasions.  For

26  example, in or about 2004, MGA decided to expand into Mexico.  To do so, and

27  operating from its Southern California offices, MGA hired away three key Mattel

28  employees in Mexico, who, on their way out, stole virtually every category of

2154363.2

EXHIBIT 23

PAGE 918

-29-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1   Mattel's sensitive and trade secret business plans and information for the Mexican

2   market, as well as a significant quantity of sensitive and trade secret information

3   for Mattel's U.S. and worldwide businesses, and took them to MGA.  Armed with

4   Mattel's confidential business plans and methods, MGA claimed to have increased

5   its market share in Mexico alone by 90% in a single year.

6       4.   In 2005, MGA needed help in Canada.  So MGA, again

7   operating from its Southern California headquarters, hired Janine Brisbois from

8   Mattel.  At that time, Ms. Brisbois was responsible for Mattel's account with Toys

9   'R Us ("TRU") and Wal-Mart.  MGA gave her responsibility for those same

10   accounts, and she took from Mattel documents containing proprietary advertising,

11   project, sales, customer and strategy information for not only Canada, but for the

12   United States.  Eliminating any doubt that MGA then proceeded to use those stolen

13   materials, Brisbois subsequently accessed and modified certain of those Mattel

14   documents while employed by MGA.

15       5.   These are not the only instances of such misconduct, which

16   MGA orchestrated and carried out from its headquarters in this District.  Counter-

17   defendants have engaged in an ongoing, widespread pattern of illegal acts,

18   consisting of inducing Mattel employees to steal Mattel's confidential information

19   or other property and take it with them to MGA to further MGA's business interests

20   and to harm Mattel.

21                **Jurisdiction**

22       6.   This Court has federal question jurisdiction over this action

23   pursuant to 28 U.S.C. §§ 1331, 17 U.S.C. §§ 101 *et seq.*, and 18 U.S.C. § 1964(c).

24   This Court has supplemental jurisdiction over Mattel's state law claims pursuant to

25   28 U.S.C. § 1367.

26                 **Venue**

27       7.   Venue is proper in this District pursuant to 28 U.S.C.

28   §§ 1391(b)-(d), 1391(f) and 1400(a) and 18 U.S.C. § 1965.

### Parties

8.    Mattel is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in El Segundo, California.

9.    Counter-defendant MGA Entertainment, Inc. ("MGA") is a corporation organized and existing under the laws of the State of California, with its principal place of business in Van Nuys, California.  Mattel is informed and believes, and on that basis alleges, that ABC International Traders, Inc. is a predecessor corporation to MGA and that until September 16, 2002, MGA was incorporated and known as ABC International Traders, Inc.  Upon the filing of the Complaint, Mattel, being ignorant of the nature, extent and scope of MGA Entertainment, Inc.'s involvement and complicity in the conduct alleged therein and having designated MGA Entertainment, Inc. in the Complaint as Doe 1 and having discovered its involvement and complicity, Mattel hereby amends its Complaint by substituting MGA Entertainment, Inc. for the fictitious Doe name Doe 1.

10.    Counter-defendant Carter Bryant ("Bryant") is an individual who formerly was employed by Mattel and has worked for and continues to work as a contactor for MGA.  Mr. Bryant currently resides in the State of Missouri.

11.    Counter-defendant MGA Entertainment (HK) Limited is a business entity organized and existing under the laws of the Hong Kong Special Administrative Region, with its principal place of business in Hong Kong.  Upon the filing of the Complaint, Mattel, being ignorant of the nature, extent and scope of involvement and complicity of MGA Entertainment (HK) Limited in the conduct alleged therein and having designated MGA Entertainment (HK) Limited in the Complaint as Doe 2 and having discovered its involvement and complicity, Mattel hereby amends its Complaint by substituting MGA Entertainment (HK) Limited for the fictitious Doe name Doe 2.