QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>Hon. Stephen G. Larson<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Robert C. O'Brien Pursuant To Order Of January 6, 2009]**<br><br>MATTEL, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO THIRD-PARTY SUBPOENAS<br><br>[Supplemental Declaration of Jon D. Corey Submitted Concurrently]<br><br>Hearing Date:  TBD<br>Time:  TBD<br>Place:  TBD<br><br>Phase 2:<br>Disc. Cut-off:  December 11, 2009<br>Pre-trial Conf.:  March 1, 2010<br>Trial Date:  March 23, 2010 |

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ................................................................................................................2

I. AS THE COURT HAS NOW EXPLICITLY CONFIRMED, THE COURT HAS PLACED NO LIMITATIONS ON PHASE 2 DISCOVERY .....................................................................................................2

II. THE DOCUMENTS SOUGHT ARE RELEVANT TO PHASE 2 ...................5

III. THE OMNI PARTIES HAVE FAILED TO SHOW THAT THE REQUESTS ARE OVERLY BURDENSOME ..................................................6

    A. The Omni Parties Have Not Shown Undue Burden ..............................6

    B. The Omni Parties Are Not Entitled to Heightened Protection ...............8

IV. THE OMNI PARTIES HAVE WAIVED ANY REMAINING OBJECTIONS ...................................................................................................9

V. THE OMNI PARTIES' REMAINING ARGUMENTS ARE WITHOUT MERIT AND ARE INTERPOSED ONLY FOR PURPOSES OF DELAY ...................................................................................9

    A. Mattel Amply Met and Conferred in Good Faith ...................................9

    B. Mattel and the Omni Parties Met and Conferred Pursuant to the Agreement ............................................................................................11

VI. MATTEL COMPLIED WITH THE RULES GOVERNING DISCOVERY DISPUTES IN THIS MATTER ..............................................13

    A. The Court Order Appointing a Discovery Master Applies to this Dispute ..................................................................................................13

    B. Mattel Complied with the Court Order Appointing a Discovery Master and the Parties' Agreement .......................................................16

CONCLUSION ..........................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

A. Farber and Partners, Inc. v. Garber,
  234 F.R.D. 186 (C.D. Cal. 2006) .................................................................... 6

Bible v. Rio Properties, Inc.,
  246 F.R.D. 614 (C.D. Cal. 2007) .................................................................... 6

DIRECTV, Inc. v. Puccinelli,
  224 F.R.D. 677 (D. Kan. 2004) ...................................................................... 9

Fletcher v. Atex, Inc.,
  156 F.R.D. 45 (S.D.N.Y. 1994) ...................................................................... 7

McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,
  894 F.2d 1482 (5th Cir. 1990) ........................................................................ 7

Nagele v. Electronic Data Systems Corp.,
  193 F.R.D. 94 (W.D.N.Y. 2000) .................................................................... 7

Panola Land Buyers Ass'n v. Shuman,
  762 F.2d 1550 (11th Cir. 1985) ...................................................................... 7

Residential Constructors, LLC v. Ace Property and Cas. Ins. Co.,
  2006 WL 3149362 (D. Nev. 2006) ................................................................. 7

U.S. E.E.O.C. v. ABM Industries Inc.,
  2008 WL 5385618 (E.D. Cal. 2008) ............................................................... 7

## Statutes

Fed. R. Civ. Pro. 53 ............................................................................................. 14

Fed. R. Civ. Pro. 53(C)(1)(a) .............................................................................. 14

**Preliminary Statement**

Mattel has been trying, for weeks, to obtain even the most basic discovery about the true identity and source of funds for Omni 808's alleged mid-trial acquisition of MGA debt and whether it was in fact a related-party transaction. After MGA, Larian, Omni 808 and their affiliates all refused to provide a single page of documents relating to this transaction -- or even disclose who owns Omni, Vision Capital or Lexington -- Mattel file a motion to compel before the Discovery Master. The Omni Parties then waited a week, until the day before its opposition was due, to bring an application to strike Mattel's motion, forcing Mattel to file an opposition to the application to strike on short notice. Then, the Omni parties went ahead and filed an opposition as well. MGA's and Omni's repeated stonewalling, along with their demonstrably erroneous statements to the Court about the transaction and, now, the Omni Parties' filing of an ex parte application and then an opposition that simply restates the same arguments, all confirm the Omni Parties' one purpose here, which is to continue to hide the facts and delay vital discovery.

The relevance of the information requested is beyond legitimate dispute and relates to numerous aspects of Phase 2, including Mattel's RICO and unfair competition claims, damages, punitive damages and MGA's own unclean hands defense. The information is also directly relevant to issues that MGA itself has raised and unquestionably will continue to raise, including in its requests to stay the Court's injunctive orders based on its assertions about its financial condition.

Rather than dispute relevance, the Omni Parties raise alleged procedural hurdles that are both without merit and a further indication that their stonewalling is only to create further delay. Thus, the Omni Parties claim that the third-party subpoenas improperly violate a supposed Court ban on financial discovery as stated in its January 7, 2009 Order. But the Court never banned any Phase 2 discovery; to the contrary, the Court lifted the stay of all Phase 2 discovery. And, eliminating any doubt on the subject, Judge Larson rejected earlier this week

the very argument that the Omni Parties make here and confirmed that his January 7 Order placed no limits on discovery into MGA's finances.

The Omni Parties also claim that Mattel has violated every <u>Local Rule</u> that it can think of, the Standing Order and the Discovery Master Order. The problem with this position, and much of Omni's argument, is that it explicitly agreed to (a) the timing and manner of meet and confer process, and (b) cross-briefing on the motion to quash and motion to compel. The Discovery Master Order permits the parties to deviate from any requirement of the Order in furtherance of resolving discovery disputes. That is what the parties and the subpoenaed parties did here.

Omni refuses to produce documents responsive to the subpoenas. If the Motion to Quash is denied, it offered to produce only the bare agreements between Omni 808 and Wachovia, nothing more. That provides no insight into the substance of the transaction. Omni refused to produce any documents relating to its formation (which occurred mid-trial), who the owners or members are, who ultimately controls it, who provided the capital for Omni, who was the ultimate source of $100 million that Omni allegedly used to purchase the MGA debt, or any documents relating to MGA, Isaac Larian or his family members. Each of these topics was discussed with counsel for Omni and the time is ripe for resolution of this dispute.

The Discovery Master should grant Mattel's motion and order the production of responsive documents.

**Argument**

**I.  AS THE COURT HAS NOW EXPLICITLY CONFIRMED, THE COURT HAS PLACED NO LIMITATIONS ON PHASE 2 DISCOVERY**

Unable to dispute that Mattel's subpoenas seek relevant, discoverable information, the Omni Parties contend that they violate the Court's January 7, 2009 Order appointing a forensic auditor and are therefore premature. (Opp., 3:2-24). The January 7 Order, however, did not stay or limit Phase 2 discovery in any way.

Moreover, the Omni Parties ignore the Court's Order -- issued just the day before -- reopening Phase 2 discovery <u>without limitation</u>.[1]

The Omni Parties do not, and cannot, point to a single word in the Court's January 7, 2009 written Order that supports its erroneous reading.  No such language exists.[2]  Rather, in its Order, the Court found "good cause" to appoint a forensic auditor to investigate MGA's financial condition, without any mention of limiting Phase 2 discovery.[3]  The Omni Parties instead purport to rely on comments made by the Court at the January 5, 2009 hearing on Mattel's application.  To the extent the Court's remarks suggest that the appointment of a forensic auditor is in place of discovery, the Court is referring to the <u>expedited</u> discovery Mattel sought in connection with its receiver application.[4]  The Court at no time stated, however, that it was limiting otherwise relevant Phase 2 discovery.

Judge Larson also resolved any doubt about the status of discovery at the February 11, 2009 hearing on Omni 808's application to intervene.  The Court rejected the argument, advanced by the Omni Parties as well as MGA, that the January 7 order foreclosed Phase 2 discovery into MGA's finances.  In particular, the Court noted that the appointment of a forensic auditor was not meant to displace the parties' discovery efforts:  "Mr. Durkin [the forensic auditor] is acting at the Court's direction to inform the Court of information.  <u>I may or may not release any of the information</u> that Mr. Durkin provides; so no one, neither side, should be relying upon the information that Mr. Durkin is gathering for purposes of litigating this case.  <u>That's an entirely separate matter.  And I have not stayed any discovery</u>,

---

[1] Court's January 6, 2009 Order Appointing Discovery Master, at 2, Supplemental Declaration of Jon D. Corey ("Suppl. Corey Dec."), Exh. 20.
[2] Court's January 7, 2009 Order Appointing Forensic Auditor, at 1, Suppl. Corey Dec., Exh. 21.
[3] See id.

1 and there should be no reliance on that."[5]  In response to the suggestion by
2 defendants that the January 7 Order foreclosed financial discovery, the Court stated
3 that "there is <u>nothing</u> from this Court which is precluding any discovery sought for
4 the trial that is scheduled."[6]  Indeed, when defendants attempted to argue that
5 financial discovery was "solely related to the receiver," the Court rejected that
6 contention and made clear that discovery into MGA's finances is a proper Phase 2
7 discovery matter:

> I guess where I would distinguish, counsel, is this notion of receiver discovery, or that phrase, that's not a phrase the Court has used. Not that I can recall using. If I did, I certainly did not intend to. <u>I'm not designating that as a separate and severable part of the discovery.</u>
>
> The question for the discovery master will be whether or not the disputed discovery request is related or relevant to the trial that has not been scheduled in March or not. I can see <u>tremendous overlap between, for example, discovery on financial condition of the company as it relates to damages in the Phase 2</u> and also issues that the receiver is looking at.[7]

The Omni Parties' argument regarding the January 7 Order is without basis and provides no excuse for its refusal to produce responsive documents.

---

[4] Suppl. Corey Dec., ¶ 26; Mattel's Notice of Lodging Expedited Discovery Requested in Connection with Mattel, Inc.'s *Ex Parte* Application for Receiver, Corey Dec., Exh. 30.
[5] February 11, 2009 Hearing Transcript, 98:8-15, Suppl. Corey Dec., Exh. 31 (emphasis added).
[6] February 11, 2009 Hearing Transcript, 101:22-25, Suppl. Corey Dec., Exh. 31.
[7] <u>Id.</u>, 100:20-101:8 (emphasis added).

## II. THE DOCUMENTS SOUGHT ARE RELEVANT TO PHASE 2

Rather than make any effort to address the merits of Mattel's showing of relevance, the Omni Parties' sole response is the conclusory statement that "Mattel has failed to articulate the relevance of any of these categories of documents." (Opp. at 13).

Mattel's motion, however, demonstrated -- at length -- the relevance of the discovery sought. As explained in Mattel's motion, the requested documents are relevant to understand MGA's and Larian's financial condition and to significant transactions affecting their condition. (Mot. at 21-22). MGA's and Larian's net worth, financial condition, and ability to pay are also relevant to the punitive damages that will be tried as part of Phase 2 of this case. (Mot. at 21-22). The MGA Parties' actions in manipulating the sources of funding and apparently using single-purpose companies controlled by Larian to purchase Bratz products from MGA for pennies on the dollar and resell them at a profit are relevant to Mattel's Phase 2 criminal copyright infringement claims, affects MGA's and Larian's financial condition, and represents anti-competitive conduct actionable under Mattel's unfair competition claim. (Mot. at 24-25). MGA's mid-trial transactions with non-operating entities bear the classic hallmarks of an attempt to fraudulently transfer assets to its controlling shareholders that, if substantiated, may constitute predicate acts of wire and mail fraud that support Mattel's RICO claims. (Mot. at 18-19). The requested documents are also relevant to the MGA Parties' unclean hands defense. Mattel is entitled to respond to this defense by demonstrating that MGA is precluded from invoking the unclean hands defense because they have not themselves acted with clean hands. (Mot. at 23-24). The information sought by the subpoenas is also highly pertinent to Mattel's pending receivership motion and to defending against MGA's multiple, serial stay motions that place MGA's own financial condition squarely at issue.

Nowhere do the Omni Parties address, let alone contest, Mattel's showing that the information sought is relevant on these grounds.  (Mot. at 18:3-25:4).  The Omni Parties' failure to respond to Mattel's points and their reliance on a bare bones denial is fatal to their relevance objection.  See A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[B]oilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper."); Bible v. Rio Properties, Inc., 246 F.R.D. 614, 618 (C.D. Cal. 2007) (party resisting discovery has the burden of showing discovery should not be allowed).[8]

The Omni Parties' unsubstantiated and erroneous relevance objection should be overruled.

## III. THE OMNI PARTIES HAVE FAILED TO SHOW THAT THE REQUESTS ARE OVERLY BURDENSOME

### A. The Omni Parties Have Not Shown Undue Burden

While asserting that that Mattel's subpoenas are "overbroad, unduly burdensome, oppressive and harassing" (Opp. at 12), the Omni Parties offer no evidence in support of this claim.  There is not even a description, for example, of the volume of documents involved or the time or expense it would take to gather them in order to respond to the subpoenas.  The Omni Parties have completely failed to prove any undue burden, and their objection fails for this reason alone under established law.  Courts consistently hold that the mere allegation of undue burden, without evidentiary support, is insufficient to resist discovery.  See Garber, 234

---

[8] Indeed, the Omni Parties' argument that the discovery is relevant to receivership is necessarily a concession that it is relevant to Phase 2 damages issues.  As the Court observed at the February 11, 2009 hearing, when it said "I can see tremendous overlap between, for example, discovery on financial condition of the company as it relates to damages in the Phase 2 and also issues that the receiver is looking at." February 11, 2009 Hearing Transcript, at 101:4-6, Suppl. Corey Dec., Exh. 31.

F.R.D. at 188 ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper--especially when a party fails to submit any evidentiary declarations supporting such objections.").[9] Indeed, that is the rule that the Discovery Master in this case previously adopted and applied in this litigation.[10]

Furthermore, the reason the Omni Parties failed to make any showing of burden is undoubtedly because they cannot. Both Omni 808 and Vision Capital are single-purpose entities, recently formed during the damages phase of the trial.[11] Given that these entities sprung into existence only months ago, and given their single-purpose nature, any responsive documents in their possession are unlikely to be so voluminous that any burden could be characterized as "undue," especially in light of the importance of the information sought.

The Omni Parties' burden and related objections should be overruled.

---

[9] See also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990) (objections that document requests are overly broad, burdensome and oppressive are insufficient to meet objecting party's burden of explaining why discovery requests are objectionable); Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir. 1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific to demonstrate why requested discovery is objectionable); U.S. E.E.O.C. v. ABM Industries Inc., 2008 WL 5385618, at *8 (E.D. Cal. 2008) ("A bare assertion of undue burden without factual allegations does not suffice."); Residential Constructors, LLC v. Ace Property and Cas. Ins. Co., 2006 WL 3149362, at *9 (D. Nev. 2006) ("In opposing discovery on grounds of burdensomeness, the objecting party is required to demonstrate that the time and expense involved in responding to the requested discovery will, in fact, be unduly burdensome."); Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94, 109 (W.D.N.Y. 2000) (overruling "burdensome" objections because objecting party failed to particularize basis for objection); Fletcher v. Atex, Inc., 156 F.R.D. 45, 54 (S.D.N.Y. 1994) ("If a party resists production on the basis of claimed undue burden, it must establish the factual basis for the assertion through competent evidence.").

[10] See, e.g., May 15, 2007 Order by Discovery Master, at 14:4-6, Suppl. Corey Dec., Exh. 32.

[11] See Omni 808 Investors, LLC Certificate of Status and Articles of Organization, dated August 12, 2008, Declaration of Jon D. Corey submitted in support of Motion to Compel, Exh. 44; Vision Capital, LLC Certificate of Formation, dated August 19, 2008, Declaration of Jon D. Corey submitted in support of Motion to Compel., Exh. 45.

## B. The Omni Parties Are Not Entitled to Heightened Protection

The Omni Parties argue that they are entitled to the protection typically afforded to non-parties. (Opp. at 10-13). The contention is irrelevant, however. Here, there is no showing of burden at all, let alone undue burden, so the Omni Parties' bland resort to its status as an alleged third-party is unavailing.

The Omni Parties' argument is also baseless because they continue to argue strenuously that they should be parties to this litigation. On February 3, 2009, Omni 808 applied *ex parte* for leave to intervene in this case.[12] Touting the superiority of its supposed interests *over Mattel in this case specifically*, Omni 808 has moved to intervene to oppose Mattel's pending application for appointment of a receiver and for "all other issues related to the proposed receiver or Omni's status as secured creditor."[13] At the same time, it refuses to disclose any information about who its unnamed "investors" are, who owns Omni 808, Vision Capital or Lexington Financial, where Omni 808 obtained the funds to acquire the ostensible interests in MGA it touts or even the actual terms of its alleged transactions with MGA, Vision Capital, Lexington or anyone else. Omni 808 cannot have it both ways. To allow Omni 808 to hide behind its so-called "non-party" status to avoid producing highly relevant, discoverable information, while it simultaneously injects itself into this litigation would be fundamentally unfair.[14]

---

[12] See Omni 808 Investors, LLC's *Ex Parte* Application for Leave to Intervene, dated February 3, 2009, Suppl. Corey Dec., Exh. 12. Omni 808's application to intervene has been held in abeyance by the District Court. See 2/11/09 Hearing Tr. at 80:17-18, Suppl. Corey Dec., Exh. 31.

[13] *Ex Parte*, at 11, Suppl. Corey Dec., Exh. 12.

[14] Although only Omni 808 has applied to intervene, OmniNet and Vision Capital are likewise not entitled to any special, heightened protection. According to Omni 808 itself, Omni 808 is a joint venture of OmniNet and its CEO, Neil Kadisha. See Omni 808 Investors, LLC's *Ex Parte* Application for Leave to Intervene, dated February 3, 2009, at 4-5, Suppl. Corey Dec., Exh. 12. According to Mattel's own investigation, Vision Capital apparently owns and provided the funding for Omni 808. See UCC Financing Statement
(footnote continued)

## IV. THE OMNI PARTIES HAVE WAIVED ANY REMAINING OBJECTIONS

Aside from their groundless burden and relevance objections, the Omni Parties have not asserted any other substantive objections in opposition to Mattel's motion to compel. (Opp. at 10-13). Nor did the Omni Parties respond to Mattel's separate statement. Accordingly, the Omni Parties have waived their remaining objections. See DIRECTV, Inc. v. Puccinelli, 224 F.R.D. 677, 681 n.8 (D. Kan. 2004) ("[O]bjections asserted in a party's initial response to discovery requests but not reasserted in response to a motion to compel are waived and deemed abandoned.").

## V. THE OMNI PARTIES' REMAINING ARGUMENTS ARE WITHOUT MERIT AND ARE INTERPOSED ONLY FOR PURPOSES OF DELAY

### A. Mattel Amply Met and Conferred in Good Faith

The Omni Parties argue that the Court should deny Mattel's motion to compel because Mattel failed to meet and confer in good faith. (Opp., 3:25-6:17). They also contend that Mattel "abruptly filed" the motion to compel and that counsel for Mattel had not expressed "any intention to file a Motion to Compel."[15] These arguments are baseless. Mattel met and conferred in good faith with the Omni Parties and indeed did so pursuant to a schedule and in the manner expressly agreed to by all of the parties and third parties, including counsel for the Omni Parties. The Agreement between the parties and third parties, including the Omni

---

dated August 29, 2008, Declaration of Jon D. Corey submitted in support of Motion to Compel, Exh. 46. Moreover, Omni 808, OmniNet and Vision Capital are all represented by the same counsel. As such, Omni 808's application to intervene is effectively on behalf of all three entities.

[15] Declaration of Todd E. Gordinier, submitted in support of the Omni Parties' *Ex Parte* Application to Strike ("Gordinier Dec."), ¶ 4.

Parties, was memorialized in the January 23 letter sent by MGA's counsel to counsel for Mattel and the third parties, including the Omni Parties' counsel.

> I am writing to <u>confirm the agreement</u> regarding the subpoenas issue by Mattel to IGWT 82 Investments, LLC, IGWT Group, LLC, OmiNet Capital, LLC -[sic], Omni 808 Investors, LLC, Vision Capital, LLC and Wachovia Corporation (together "the Subpoenas").  As discussed, all objections to the Subpoenas will be due on Wednesday, January 28, 2009.  Counsel for the parties and third parties will then meet and confer at mutually agreeable times on January 29 and 30, and any motions to quash, for protective order, or to compel will be due on Monday, February 2, 2009.[16]

The Omni Parties were parties to the Agreement.  Their counsel received the letter and did not dispute or complain about the contents of or the representations in the January 23 letter.  Indeed, consistent with the Agreement, Omni 808 and Vision Capital served their objections on January 28, 2009.[17]  And, it was pursuant to this Agreement that counsel for Mattel discussed a further agreement with counsel for the Omni Parties, Mr. Villar, that Mattel did not have to file its motion on February 2, 2009 but instead would file on February 3, 2009, to allow the full completion of the meet and confer process.[18]  Accordingly, the Omni Parties not only knew that Mattel was planning on filing a motion to compel if the

---

[16] January 23, 2008 letter from Robert J. Herrington, to Todd Gordinier, among others, Suppl. Corey Dec., Exh. 2.
[17] Suppl. Corey Dec., ¶ 5.
[18] February 2, 2009 letter from Jon Corey, Corey Dec., Exh. 11; Suppl. Corey Dec., ¶ 13.

parties could not resolve their differences, they knew that Mattel would do so by the (extended) February 3 deadline.[19]

### B. **Mattel and the Omni Parties Met and Conferred Pursuant to the Agreement**

The Omni Parties' contention that Mattel did not meet and confer with them is belied by the undisputed -- and indisputable -- facts and by the written record. The Agreement stated that the parties and third-parties, including the Omni Parties, would meet and confer on January 29 and 30. Counsel for the Omni Parties was unavailable on the 29th and requested a meet and confer teleconference on the afternoon of the 30th.[20] The call lasted approximately 20 minutes, with each side stating their position.[21] Particularly incorrect is the Omni Parties' assertion that counsel for Mattel failed to discuss the January 7, 2009 Order with them. This is flatly mistaken (as well as irrelevant, since the January 7 Order does not limit Phase 2 discovery as discussed above). Counsel for Mattel raised the issue of the Court's January 7, 2009 Order during the first teleconference. At its conclusion, counsel for Mattel actually sent a copy of the January 7 Order -- along with a draft stipulation that was intended to avoid the necessity of a motion to compel -- to counsel for the Omni Parties.[22] Counsel for the Omni Parties <u>acknowledged</u> receiving the draft stipulation and the January 7 Order, but said he would not have any comments until February 2, 2009.[23]

In an additional effort to avoid unnecessary motion practice, Mattel met and conferred further in the afternoon on February 2, which was the earliest time

---

[19] Given this deadline, it is no surprise that Mattel was preparing the motion to compel prior to February 2, as the Omni Parties complain of in their Application and Opposition.
[20] January 29, 2009 e-mail, Suppl. Corey Dec., Exh. 3.
[21] Suppl. Corey Dec., ¶ 9.
[22] Id., ¶¶ 9-10; January 30 e-mail, Suppl. Corey Dec., Exh. 6.
[23] Suppl. Corey Dec., ¶¶ 10-11; Exhs. 7-8.

that the Omni Parties' counsel was next available, regarding the subpoenas. During that teleconference, the parties engaged in additional substantive discussions about the subpoenas.[24] During this further meet and confer, counsel for the Omni Parties backtracked from the proposed stipulation and said that they would be willing to produce only plain vanilla deal documents, and even then only after the MGA Parties' Motion to Quash had been denied. Counsel for the Omni Parties also claimed that the requests would impose an undue burden, but counsel for Mattel pointed out that his understanding that both Omni 808 and Vision Capital were single purpose entities, so that burden did not seem to be a credible objection. Although discussed, at no point in the conversations did the Omni Parties agree to produce any documents related to the formation of Omni 808 or Vision Capital, to the owners or members of Omni 808 or Vision Capital, any correspondence, drafts, or the like of the Omni/Wachovia transaction, any documents showing who ultimately owns or controls Omni 808 or Vision Capital, or the ultimate source of funds for the Omni 808 purchase of the debt from Wachovia for in excess of $100 million. (Indeed, even now, the Omni Parties do not claim that they will produce any of these documents if they are not compelled to produce them.) Thereafter, the parties exchanged letters and e-mails in further efforts to meet and confer, but did not arrive at an agreement.[25]

Although the Omni Parties claim that Mattel did not meet and confer in good faith, they admit -- as they must -- that counsel engaged in two substantive teleconferences pursuant to the Agreement to discuss their differences.[26] Counsel for the Omni Parties also concedes in his declaration that the parties exchanged letters and e-mails regarding their positions, although conspicuously absent from the

---

[24] Suppl. Corey Dec., ¶¶ 15-16.
[25] Suppl. Corey Dec., ¶¶ 16-21; Exhs. 11, 13-19.
[26] Gordinier Dec., ¶¶ 4-5.

declaration is (a) any mention of Mattel's draft stipulation, (b) the Agreement regarding the scheduling of the meet and confer sessions and the motion to compel, or (c) any response identifying how Mattel's February 2, 2009 letter is in error or a counter-proposal.[27]

Mattel amply attempted to resolve this matter before filing its motion and fulfilled its meet and confer obligations. The Omni Parties' argument otherwise is meritless.

## VI. MATTEL COMPLIED WITH THE RULES GOVERNING DISCOVERY DISPUTES IN THIS MATTER

### A. The Court Order Appointing a Discovery Master Applies to this Dispute

The Omni Parties contend that Mattel failed to comply with rules that <u>do not apply</u> to this discovery dispute. (Opp., 7:3-8:12, 9:22-10:11). This purportedly includes Mattel's failure to serve a joint stipulation, failure to abide by the <u>Local Rules</u> page limit, failure to meet "in person," and failure to provide sufficient notice. Each of these contentions is unavailing. As the Omni Parties ignore, the governing Court Order is the Stipulation for Appointment of a Discovery Master and Order ("Discovery Master Order"), entered on December 5, 2006,[28] and Mattel indisputably complied with the Discovery Master Order.

---

[27] <u>Id</u>., ¶¶ 4-7. Having conceded that there were extensive meet and confer discussions, the only evident basis for the Omni Parties' argument that Mattel did not act in good faith is that Mattel did not accept their purported proposal to dramatically limit the subpoenas' scope. (Opp., 2:12-13). The mere fact that Mattel did not agree to the Omni Parties proposal scarcely means that Mattel acted in bad faith; reasonable people may differ. Nor, in any event, did the Omni Parties explained the parameters of their proposal, let alone state that the proposal would result in a fair disclosure of the information Mattel needs and is entitled to.

[28] Stipulation for Appointment of a Discovery Dispute and Order, Suppl. Corey Dec., Exh. 20, which counsel for Mattel has provided to counsel for the Omni Parties.

Although counsel for the Omni Parties have been given both the Discovery Master Order and the Court's prior ruling that third party discovery dispute are heard in the first instance by the Discovery Master, the Omni Parties now unilaterally proclaim to "dispute that they are bound by any agreement." (Opp., 8:18). The Discovery Master Order, however, is not simply an agreement. It is an Order of the Court that mandates "[a]ny and all discovery motions and other discovery disputes in the above captioned action shall be decided by a master ("Discovery Master") pursuant to Federal Rule of Civil Procedure 53."[29] Pursuant to paragraph 15 of the Discovery Master Order, "[a]ll third parties subject to discovery requests or depositions in this litigation shall be bound by the terms of this Stipulation and Order."

Furthermore, Judge Larson has rejected the very same argument made by the Omni Parties here. In response to a motion for clarification related to another third-party's claim that it was not bound by the Discovery Master Order, the Court held that "the Court's order referring to the Discovery Master any and all discovery disputes, <u>including those involving third parties</u>."[30] The appointment of the Discovery Master "was entered as a valid Rule 53(a)(1)(C) order, not requiring the consent of any party or nonparty."[31] Indeed, the <u>Federal Rules of Civil Procedure</u> specify that a Discovery Master's appointment may be -- as here -- to "regulate all proceedings." <u>Fed. R. Civ. Pro</u>. 53(C)(1)(a). Accordingly, the Discovery Master Order -- not the <u>Local Rules</u> or Standing Order regarding brief formats, page length,

---

[29] Stipulation for Appointment of a Discovery Dispute and Order, at 3:12-14, Suppl. Corey Dec., Exh. 20.
[30] January 7, 2008 Order, at 4, Suppl. Corey Dec., Exh. 22.
[31] <u>Id</u>.

joint stipulations and timing -- controls this discovery dispute.[32] The Omni Parties' claims to the contrary are baseless.

Particularly meritless is the Omni Parties' contention that the Court should deny the motion to compel because it is 30 pages long. As just shown, the Discovery Master Order, and not the Local Rules and the Standing Order, govern. That Order does not impose a page limit on discovery motions.[33] In fact, the parties in this action often have -- when the situation warranted -- filed with the Discovery Master motions in excess of 25 pages without objection by the opposing side.[34] Sometimes, especially when dealing with multiple subpoenas or parties, it is more efficient to file a single, longer brief rather than multiple discovery motions. For example, in this circumstance, Mattel moved to compel on five separate subpoenas. Theoretically, if the Local Rule and Standing Order page limits applied, Mattel had the option of filing five separate motions to compel, each of which could have been 25 pages in length. That is hardly a practice that should be encouraged, particularly when Mattel could avoid duplication by filing a 30-page brief instead of multiple briefs. To deny the motion to compel thus would not only be inconsistent with the Discovery Master Order, but would enhance, rather than diminish, the burden on the Discovery Master. Taking steps to reduce the amount of paper and the onus upon the Discovery Master does not violate the Discovery Master Order. Indeed, the Omni Parties have made no showing that Mattel's election to try to reduce the

---

[32] Paragraph 5 of the Discovery Master Order establishes the procedures for the filing of a discovery motion. It establishes a completely different time line for the filing of motions, oppositions, and replies. It also dispenses with the local rules' requirements about briefs. Motions do not even have to be filed as forma motions, but can take the form of letter briefs to the Discovery Master.

[33] The Court's Standing Order applies to discovery disputes that have been assigned to a Magistrate Judge and which are governed by the Local Rules. April 14, 2006 Standing Order, ¶ 3, Suppl. Corey Dec., Exh. 24.

[34] Suppl. Corey Dec., ¶ 30.

burden on the Discovery Master, rather than filing duplicative, multiple briefs, has prejudiced them in any way.

### B. Mattel Complied with the Court Order Appointing a Discovery Master and the Parties' Agreement

The Omni Parties argue that even if the Discovery Master Order controls this dispute, Mattel has still failed to meet its obligations because it did not meet "in person" and failed to identify in writing each dispute, identifying the authority it was relying on in a written letter. (Opp., 8:13-9:2). As discussed above, counsel for Mattel and for the Omni Parties held meet and confers *twice* via teleconference regarding the subpoenas. Moreover, they exchanged several letters and e-mails regarding the relief sought and the relevant authorities. And, pursuant to the Omni Parties' request, Mattel prepared and sent a draft stipulation seeking to resolve the dispute (which the Omni Parties rejected out of hand).[35]

Mattel's actions were proper and indeed were with the agreement of the Omni Parties. By its terms, the Discovery Master Order allows agreement to deviate from its requirements. Immediately after the portions of the Discovery Master Order discussing the in-person meeting of counsel that the Omni Parties rely on, the Discovery Master Order specifically provides that "[t]he foregoing shall not prohibit (i) *the parties from agreeing to alternate procedures*" to resolve discovery disputes.[36] Here, Mattel, MGA and the third parties, including the Omni Parties, did just that by setting a schedule for meeting and conferring and for the filing of relevant motions. The Omni Parties agreed to this, including in particular to

---

[35] January 30, 2009 e-mail from Jon D. Corey, Exh. 6, Suppl. Corey Dec., ¶ 10.
[36] Stipulation for Appointment and Order, ¶ 5:25-26, Suppl. Corey Dec., Exh. 20 (emphasis added).

conducting the conference of counsel telephonically.[37] They cannot now claim that Mattel's compliance with the Agreement that the Omni Parties entered into was procedurally improper. The parties to this discovery dispute entered into the Agreement which established an "alternative procedure" as allowed by the Discovery Master Order. Indeed, for this same reason, the Omni Parties' belated objections here -- objections that are contrary to the Agreement -- were waived.

Finally, as with its other efforts to manufacture procedural hurdles, the Omni Parties do not argue, let alone prove, that it has suffered or will suffer any prejudice or harm to any substantive rights whatsoever. Accordingly, all that would be accomplished here by accepting those arguments -- and all that the Omni Parties appear to seek through these arguments -- would be further, and unwarranted, delay and expense. If anything, the Omni Parties' virtually exclusive resort to procedural wrangling as their basis for resisting discovery only serves to underscore that they lack any substantive basis for their refusals to produce the requested discovery.

### Conclusion

For the reasons set forth above, and for those set forth in the Mattel's Motion to Compel, Mattel respectfully requests that the Discovery Master grant Mattel's motion to compel and order the third parties to produce all non-privileged responsive documents and to log any responsive documents withheld on the basis of privilege.

DATED: February 13, 2009        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Jon D. Corey
  Jon D. Corey
  Attorneys for Mattel, Inc.

---

[37] January 23 letter from Robert J. Herrington, Suppl. Corey Dec., Exh. 2; January 28, 2009 e-mail from Mr. Gordinier, Suppl. Corey Dec., Exh. 3.