Exhibit 31

1

1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3            EASTERN DIVISION

4               - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6               - - -

7  MATTEL, INC.,                )
                                )
8                Plaintiff,      )
                                )
9          vs.                  )   No. CV 04-09049
                                )
10  MGA ENTERTAINMENT, INC., ET. AL.,  )
                                )
11              Defendants.      )
   _____ )   Motions
12  AND CONSOLIDATED ACTIONS,     )
   _____ )

13

14

15       REPORTER'S TRANSCRIPT OF PROCEEDINGS

16           Riverside, California

17         Wednesday, February 11, 2009

18              10:03 A.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR
          Federal Official Court Reporter
24          3470 12th Street, Rm. 134
          Riverside, California  92501
25              951-274-0844
           WWW.THERESALANZA.COM

Exhibit 31
Page 256

2

```
1    APPEARANCES:

2    ON BEHALF OF MATTEL, INC.:

3                         QUINN EMANUEL
                          By:  JOHN QUINN
4                              DYLAN PROCTOR
                               MICHAEL T. ZELLER
5                         865 S. FIGUEROA STREET,
                          10TH FLOOR
6                         LOS ANGELES, California   90017
                          213-624-7707
7

8    ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
     (Outgoing)
9                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:  THOMAS J. NOLAN
10                             JASON RUSSELL
                          300 SOUTH GRAND AVENUE
11                        LOS ANGELES, CALIFORNIA   90071-3144
                          213-687-5000
12

13   ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
     (Incoming)
14                        GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
                          BY:  JOEL KLEVENS
15                        10250 Constellation Boulevard
                          Los Angeles, California   90067
16                        310-553-3000

17                        MITCHELL, SILBERBERG & KNUPP LLP
                          BY:  RUSSELL J. FRACKMAN
18                        11377 West Olympic Boulevard,
                          Los Angeles, California   90064-1683
19                        310-312-2000

20
     ON BEHALF OF DEFENDANT GUSTAVO MACHADO:
21
                          OVERLAND BORENSTEIN SCHEPER & KIM LLP
22                        BY:  ALEXANDER H. COTE
                          601 West Fifth Street,
23                        12th Floor
                          Los Angeles, California   90071
24                        213-613-4660

25   / / /
```

Wednesday, February 11, 2009                    Mattel vs. MGA Entertainment

Exhibit 31
Page 257

3

```
 1                      I N D E X  (Continued)

 2

 3   APPEARANCES (continued):

 4

     On behalf of OMNI 808:
 5

 6                      BINGHAM McCUTCHEN LLP
                        BY:   Todd E. Gordinier
 7                      600 Anton Boulevard
                        Costa Mesa, CA   92626-1924
 8                      714-830-0622

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

ednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

**Exhibit 31**
**Page 258**

4

```
 1                    I N D E X

 2                                              Page

 3   Motions....................................    4

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Wednesday, February 11, 2009

**Exhibit 31**
**Page 259**

Mattel vs. MGA Entertainment

1    Riverside, California; Wednesday, February 11, 2009; 10:03 A.M.

2                              -oOo-

3              THE CLERK:  Calling calendar item one, in the matter

4    of Mattel Incorporated versus MGA Entertainment Incorporated,

5    Case Number CV 04-9049.                                    00:03

6              Counsel, please state your appearances for the

7    record.

8              MR. QUINN:   John Quinn, Mike Zeller, Dylan Proctor

9    for Mattel.

10             MR. NOLAN:   Tom Nolan, Jason Russell,            00:03

11   Jennifer del Castillo on MGA and Isaac Larian's post trial

12   chamber on motions and motion for remittitur on Phase 1.

13             MR. COTE:  Alexander Cote on behalf of

14   Gustavo Machado.  I'll be sitting back in the gallery.

15             MR. KLEVENS:   Joel Klevens of Glaser Weil for the MGA  00:03

16   defendants.

17             MR. FRACKMAN:   Russell Frackman of Mitchell,

18   Silberberg & Knupp for the MGA defendants.

19             MR. GORDINIER:   Todd Gordinier for Omni 808.

20             THE COURT:  Counsel, good morning.               00:04

21             We have several matters on calendar this morning to

22   take up.  I have the judgment as a matter of law by Mattel; I

23   have a motion for judgment as a matter of law from MGA; I have

24   MGA's motion for remittitur; I have the ex-parte application by

25   Omni 808 to intervene for limited purpose; I have MGA's request  00:04

6

1   regarding a briefing schedule related to the forensic audit and

2   appointment of a receiver, which is an ex-parte application

3   submitted by Mattel which the Court has held in abeyance

4   pending the forensic audit.

5           I indicated that I'm going to schedule the Phase 2       00:04

6   matters this morning, and that does raise one concern.  I don't

7   see lead counsel, Patty Glaser, present; but I assume that

8   counsel from Mitchell, Silberberg can speak for MGA on Phase 2.

9           **MR. KLEVENS:**  I'm Patty's partner, and I have her

10  calendar.                                                      00:05

11          **THE COURT:**  Very well.

12          And then I want to take up the issue of whether and

13  to what extent we should enter judgment in Phase 1 before we

14  move into Phase 2.

15          Those are the issues on my list, or my agenda.         00:05

16          Is there anything else, from the parties'

17  perspective, that needs to be addressed today?

18          **MR. QUINN:**  We believe that's it, Your Honor.

19          **THE COURT:**  You think that's enough.  Okay.

20          Mr. Nolan, the same?                                   00:05

21          **MR. NOLAN:**  We believe that's correct, Your Honor.

22          **THE COURT:**  Very well.

23          What I'd like to do is begin -- and this is just in

24  the order that I have them here in my notes -- with Mattel's

25  motion for judgment as a matter of law.                        00:05

ednesday, February 11, 2009                     Mattel vs. MGA Entertainmeı

**Exhibit 31**
**Page 261**

1          Basically, there are three issues here.  Mattel moves

2    for judgment as a matter of law on the issue of the scope of

3    the infringement of the Bratz dolls.  Mattel also moves for

4    judgment as a matter of law on the issue of the sculptor

5    Margaret Leahy's contributions, vis-à-vis independent creation,         00:06

6    which basically is the flip side of a point made by MGA in

7    their motion for judgment as a matter of law.

8          And then, finally, Mattel seeks judgment on the issue

9    of both Isaac Larian and MGA Hong Kong engaging in acts of

10   fraudulent concealment, vis-à-vis Carter Bryant and his role in         00:06

11   the creation of the Bratz product and the timing of his

12   creation; so those are the three issues.

13         I've received the truly voluminous papers, and the

14   Court has certainly reviewed them.  I'll give the moving party

15   the first right to address the Court, if there's anything              00:06

16   further you want to present on these three issues at this time.

17         Mr. Proctor?

18         **MR. PROCTOR:**  Good morning, Your Honor.

19         The Court found on the injunction motion that all of

20   the core Bratz dolls infringed Mattel's designs.  In our view,          00:07

21   based on the evidence that came in at trial, no jury could

22   reasonably find otherwise.  There's really two reasons for

23   that.  The first is the nature of the substantial similarity

24   analysis.

25         In this case, substantial similarity is strictly and             00:07

:dnesday, February 11, 2009                    Mattel vs. MGA Entertainmer

**Exhibit 31**
**Page 262**

8

1   purely a visual question.  It requires a visual analysis.  And

2   the Court made that clear in one of its summary judgment

3   orders, the July 24th order, where it's discussing the

4   extrinsic test, which requires an analysis of the similarity of

5   the objective details in appearance, and the intrinsic test,          00:07

6   which requires an analysis of the similarity in the overall

7   similarity of expression in the two works from the perspective

8   of the ordinary observer.

9        THE COURT:  Counsel, I don't necessarily disagree

10   with you.  It's precisely largely on that basis that I reached      00:07

11   the conclusion that I did in my December 3rd order when I ruled

12   on the equitable claims.

13        My question at this point is, given the Court's

14   earlier rulings, why is this necessary at this juncture?  Is

15   this not -- I don't want to say mooted, but somewhat redundant      00:08

16   with the Court's earlier ruling?

17        MR. PROCTOR:  It provides an alternative ground, is

18   the --

19        THE COURT:  If you would have lost the earlier one, I

20   could see why you'd be pressing the alternative; but you            00:08

21   prevailed on the --

22        MR. PROCTOR:  And MGA has this mootness argument as

23   well, and the Court's concern sounds like it ties in with that

24   to some extent.  The easy answer is, it provides an alternative

25   ground to support the Court's injunction order.  And there's        00:08

:dnesday, February 11, 2009                          Mattel vs. MGA Entertainmeı

**Exhibit 31
Page 263**

1          **MR. GORDINIER:**  We are not intending to hold up or

2     obstruct.  We've moved with the drift of this case as it's gone

3     for the ten days I've been involved in it.  We're not going to

4     hold the case up.  But we do believe we're entitled to be heard

5     on the receiver issue.                                              01:47

6          **THE COURT:**  Very good.

7          We're going to take a very brief five-minute break

8     for the court reporter.  I'll come back and rule on these

9     matters, and then we'll proceed with the hearing.

10         (Whereupon, a brief recess was held.)                          01:47

11         **THE COURT:**  We're back on the record.

12         Regarding the receivership and everything, there's

13    actually three matters that are related.  First of all, there

14    is the ex-parte application for receivership which was being

15    held in abeyance by the Court; I have the ex-parte application    02:07

16    by Omni 808 for intervention for this limited purpose; and then

17    I have a request for a briefing schedule on the appointment of

18    a receiver.

19         For the record, the Court wishes to disclose that

20    last evening, or yesterday afternoon, the Court held a meeting    02:07

21    with the forensic auditor, Mr. Durkin, and his staff, as well

22    as certain judicial officers of the court and certain other

23    nonjudicial individuals assisting the Court.  All have been

24    expressly ordered not to disclose the contents of the interim

25    report pending further order of this Court, and the Court did     02:08

**Exhibit 31**
**Page 264**

1    so for the purpose of basically finding out where the forensic

2    auditor was, to ensure that the audit was proceeding as

3    envisioned by the Court.

4            Based on that meeting last night, the Court was

5    assured by Mr. Durkin that all of the relevant parties are          02:08

6    fully cooperating with Mr. Durkin; that he has obtained so far

7    a voluminous amount of information, although there is still a

8    substantial amount of information that he needs to gather

9    before he's able to complete his accounting.          .

10           At this point, based on the information that            02:09

11   Mr. Durkin has and has been able to relate to the court, there

12   is no basis to appoint a receiver, and the Court declines to do

13   so.   However, the Court will revisit this issue once the

14   forensic audit is done.

15           So what the Court is going to do is continue to hold         02:09

16   in abeyance the application and request for the appointment of

17   receiver.   I will also hold in abeyance the motion for

18   intervention by Omni 808; because to the extent that no

19   receiver is appointed, then there's no purpose for Omni 808's

20   intervention and for the Court to even consider the grounds for     02:09

21   the intervention.

22           If, on the other hand, the Court does envision

23   appointing a permanent receiver, the Court will then take up

24   the issue of Omni 808's intervention.

25           As far as the request for a briefing schedule, as I         02:10

1   think Mr. Zeller points out, the local rules provide for

2   provisions for both the Court's appointment of either an

3   interim or a permanent receiver, the required notice

4   thereunder, et cetera, and the Court would fully comply with

5   that.  I'm not going to set out at this point any briefing          02:10

6   schedule on this, because that would be premature.

7           The Court will continue, on a strictly in-camera

8   basis, to continue to be apprised by the forensic auditor.  The

9   Court will expect all parties to continue to cooperate with the

10  forensic auditor.                                                   02:10

11          Mr. Gordinier, on behalf of nonparty Omni 808, has

12  represented to the Court that his client will cooperate with

13  Mr. Durkin, and I appreciate that.  And I trust that Mr. Durkin

14  will continue to experience the full cooperation that he has

15  experienced up to this point.  And I will leave at that.           02:11

16          Are there any questions from either party with

17  respect to the Court's ruling on matters related to the

18  receivership?

19          **MR. NOLAN:**  On behalf of MGA, no, Your Honor.

20          **THE COURT:**  From Mattel?                                02:11

21          **MR. ZELLER:**  No, Your Honor.

22          There is just one other ex-parte which we believe has

23  been submitted to Your Honor; your name was on it.  It was an

24  additional ex-parte by Omni 808 which was basically asking for

25  a discovery motion we had filed with the Discovery Master to be    02:11

1    striken.  And I believe it was filed with this court.

2           We filed an opposition last night.  I don't know if

3    there's been more briefing or if now is the time, but I did

4    want to alert the Court that it is --

5           **THE COURT:**  Those discovery matters have been                    02:11

6    referred to the Discovery Master and will be litigated before

7    the Discovery Master.

8           **MR. GORDINIER:**  That's what we served Mr. O'Bryan

9    with copies of, so that's our understanding as well.  I didn't

10   want to violate the Court's protocol, so we did both.  But the      02:12

11   application --

12          **THE COURT:**  I appreciate that.  That's been the

13   practice of the parties in this Court, to file with the Court

14   what the parties have done and I'll ask the parties to continue

15   to do.                                                              02:12

16          And Mr. Gordinier, you can do this on discover

17   matters:  Simply put in the caption that it is a discovery

18   matter; that way the Court knows when I receive it that it's

19   not something that I need to deal with at this time; that it

20   will be handled by the Discovery Master.                           02:12

21          All right.  Moving right along.

22          The next issue the Court wants to take up is the

23   potential -- well, not potential, the entry of judgment in this

24   case; whether or not judgment should be entered after the Court

25   has issued its ruling, which it anticipates doing shortly          02:12

1   within the next week, regarding the two judgments, motions for

2   judgment as a matter of law and the motion for the remittitur.

3   The Court will then be in a position of potentially having to

4   issue judgment in this case.

5        The question is under Rule 54-B whether I should

6   enter judgment at this time on Phase 1 or whether we should

7   await the final completion of this case to enter judgment.

8        My sense is that it probably makes sense, just given

9   the way we've structured everything up to this point, to enter

10  judgment, at least on these Phase 1 issues.  I'd like to hear

11  from the parties briefly on their respective positions on that.

12       MR. ZELLER:  I'll be brief, at this point, with

13  respect to Mattel's position.  I can certainly elaborate.  But

14  Mattel actually does not think it's appropriate or really

15  feasible to enter judgment under Rule 54-B at this juncture.

16  Part of it has to do with the fact that I think, as we've all

17  recognized, and certainly Mattel has said in the past, that

18  there are intertwined issues.

19       As we understand the standard, under Rule 54-B there

20  has to be sufficient separateness, real separateness, that

21  would allow for that judgment under 54-B.  And to the extent

22  the Court is seriously considering doing that, we'd like the

23  opportunity to lay this out in some papers and put the

24  appropriate authority.

25       But I can certainly say in terms of where we were in

02:13

02:13

02:14

02:14

02:14

1    our viewpoint as that it would be extremely challenging, at a

2    minimum, and perhaps impossible to meet the Rule 54-B standard.

3    We had not submitted anything to the Court.  I generally seem

4    to recall that there was an opportunity for either party to

5    seek that from the Court in the past.  I don't recall MGA        02:1⁵

6    having in the past affirmatively requested or signaled in some

7    way that it was seeking judgment under Rule 54-B; so we have

8    not had an opportunity to really lay that out and perhaps

9    crystalize our thinking on this particular issue.

10           Certainly, just, I think, in terms of where we are       02:1⁵

11   today, Your Honor, we think it would be very, very difficult to

12   meet that standard.

13           **THE COURT:**  I would have to take up the issue --

14   assuming that I did not enter judgment and the Court rules on

15   the motion for remittitur, there would be some amount of money  02:1⁵

16   that would be eventually part of some judgment.

17           I guess my greater concern is with the injunctive

18   relief, which, the permanent injunction that I issued on

19   December 3rd, I have stayed.  And I've indicated in my later

20   December order that I will certainly stay and preclude Mattel    02:1⁵

21   from removing the 2009 line through the 2009 season.  That

22   would certainly continue to be the Court's indication.

23           But the remainder of the injunction, the constructive

24   trust, for example, and the other elements of that order, the

25   question is, should that take affect or should that await a      02:1⁶

1    final judgment after the end of Phase 2?

2              MR. ZELLER:   I think that independent of a Rule 54-B

3    judgment -- and I'm probably going to talk in too broad of a

4    brush -- there are going to be lots of nuances associated with

5    this -- but I think as a general matter, the entry of a 54-B          02:16

6    judgment will not affect whether or not those orders become

7    final.  At least, certainly, for purposes of appeal or for

8    purposes of whether they are affective in the sense that

9    parties must comply with them and that certain consequences

10   would flow if they are not complied with; so, I mean, certainly      02:17

11   those orders can take affect --

12             THE COURT:   Without the judgment.

13             MR. ZELLER:   Correct.

14             THE COURT:   Because there may very well be

15   consequences beyond the parties for some of those orders.            02:17

16             MR. ZELLER:   Correct.

17             And when I caveat by saying I'm speaking rather

18   broadly at the moment, I mean, certainly -- and I would want an

19   opportunity to go through and parse every aspect of this.  I

20   mean, there may be slightly different answers for a different        02:17

21   order in a particular issue.  But certainly, in general, if one

22   looks at, say, the injunction, that will take affect.  It will

23   become appealable at some point once it reaches the definition

24   of finality.  And that's independent of Rule 54-B.  There's

25   actually a separate provision, of course, under 28 USC that          02:17

Exhibit 31
Page 270

:dnesday, February 11, 2009                          Mattel vs. MGA Entertainme

1    governs whether or not the injunction is appealable.

2           So what I would request, Your Honor, is --

3           **THE COURT:**  For example, if the Court were to lift

4    the stay imposed on December 3rd and basically remodify its

5    permanent injunction so as to permit the injunction to proceed,      02:18

6    striking from the injunction, of course, anything which would

7    interfere with the 2009 season of sales, holding, I would

8    suppose, those sales or the infringing portion of those sales

9    or those sales attributed to infringing portions, in trust for

10   Mattel or require an accounting to Mattel; that is something        02:18

11   which could, once these motions have been resolved, go into

12   affect and be final for purposes of appeal so that MGA can then

13   appeal those to the Ninth Circuit and, in the interim, have

14   affect.  And, of course, the Court would entertain and the

15   Ninth Circuit would entertain any further motions for stays,        02:19

16   but basically to get that ball rolling.

17          **MR. ZELLER:**  Yes.

18          I think, particularly with respect to the permanent

19   injunction, that is all correct.

20          I would say that the way that the issues concerning          02:19

21   conditions would come up in terms of, say, for example, putting

22   money into escrow or the appointment of somebody to oversee the

23   brand, or any of those other number of conditions which we

24   previously asked the Court to impose --

25          **THE COURT:**  Right.  And the Court is definitely          02:19

 1    considering those, and that will be part of the Court's

 2    forthcoming order.

 3         MR. ZELLER:  That, again, too, would not require the

 4    vehicle of a 54-B judgment to deal with.

 5         THE COURT:  Very well.                              02:19

 6         MR. ZELLER:  That's really in terms of the

 7    conditions, and the Court has extremely broad latitude in

 8    imposing conditions on any stay pending appeal, as well as, of

 9    course, just the terms of the injunction in the first instance.

10         THE COURT:  Very well.                              02:20

11         Let me hear from MGA on that point.

12         And I guess the point that I am looking for is

13    whether or not you agree with Mr. Zeller or disagree with

14    Mr. Zeller that the Court can proceed with basically resolving

15    Phase 1 with or without a 54-B judgment being entered.        02:20

16         What is MGA's perspective?

17         MR. NOLAN:  With respect to splitting the question

18    and asking with respect to preliminary injunction/constructive

19    trust, and whether or not that could be put into place before

20    any judgment would be entered on Phase 1, I don't mean to punt,  02:20

21    but I think we would want to address some of the nuances that

22    Mr. Zeller has made reference to in connection with whatever

23    modification, if any, might be made to the terms of the

24    injunction or the constructive trust.

25         So in a sense, I'm almost arguing in a vacuum,        02:20

1   without the ability to consult with appellate counsel or my

2   client; so I'm not in a position right now to say.

3           My gut would be to say, Your Honor, to see the

4   rulings that the Court issues; ask the Court on a short leash,

5   maybe ten days after the entry of the Court's rulings on these          02:21

6   matters, and any indication with respect to how you would

7   adjust, modify the terms of the face of the injunction and/or

8   the constructive trust, if there were going to be any changes,

9   so that we would then be in a position to advise the Court what

10  our position is as to whether or not the two can be separated.         02:21

11          With respect to the judgment on Phase 1 following the

12  Court's entry of order, a similar issue, given Mattel's

13  position, that they think that's inappropriate, given what they

14  contend to be some overlapping issues between Phase 1 and

15  Phase 2.  Again, I'm not shy about coming up with affirmative          02:21

16  positions with respect to our position, but I'd like to do it

17  only when I've had the ability to consult with my clients.

18          Perhaps I should have been prepared to do that today,

19  and I apologize for not being able to.  But I would ask the

20  Court to consider the possibility of asking us to come back           02:22

21  within a limited period of time after the entry of the orders

22  and we'd be in a position to lay out a roadmap as to how we

23  view the substance of that order.

24          It may very well be that with respect to either the

25  preliminary injunction, the stay, the affect of that, the            02:22

1    constructive trust, the affects of the stay, that we would want

2    to raise certain issues with the Court that are not before the

3    Court right now, and that's the only reason why I want to hold

4    back and not to confirm a very firm position right now.

5              THE COURT:   Very well.

6              I will give you until Friday, both sides, until

7    Friday, to submit their respective positions on whether or not

8    the Court should or should not enter a 54-B judgment; and,

9    alternatively, if it does not enter a 54-B judgment, your

10   respective positions on how the Court should enter a final

11   order with respect to Phase 1; and that way you can consult

12   with your client and other counsel.

13             MR. NOLAN:   Right.

14             THE COURT:   But the Court would want to make this as

15   part of its next order that it issues.

16             We have had exhaustive briefing and hearings on the

17   issue of injunctions and all of the rest, and we're not going

18   to revisit that or reopen that, but I'll give you an

19   opportunity to consult with all counsel and your client, of

20   course, and advise the Court of your respective positions so I

21   can address that.

22             MR. NOLAN:   I appreciate that.

23             As the Court knows, with respect to the phasing of

24   counsel in this case and Mr. Zeller's contention there's an

25   overlap with the Phase 2 issues, I do feel the need to consult

02:22

02:23

02:23

02:23

02:23

1  with opposing counsel --

2      **THE COURT:**  I'm somewhat disappointed that the lead

3  counsel is not present here today, because this was the hearing

4  that was designated previously on several occasions as the time

5  that we would be discussing the resolution of Phase 1 and the        02:24

6  scheduling of Phase 2.  But I will give you some latitude on

7  that point.

8      **MR. NOLAN:**  I appreciate that, Your Honor.

9      On Friday we'll have our submissions.

10     Thank you very much.                                             02:24

11     **THE COURT:**  Very well.

12     The last issue I want to take up is the scheduling of

13  Phase 2 at this time, and I had asked counsel previously to

14  come prepared to discuss and to commit to those dates.

15     Essentially, I want to come up with five dates:  A          02:24

16  discovery cutoff date, a dispositive motion cutoff date, a

17  pretrial conference date, a trial date, and a mandatory

18  settlement conference cutoff date; so those are the five dates.

19     I'll hear from either side on this.

20     There's now nobody on the defense counsel table for          02:24

21  MGA.  This is somewhat disconcerting.  Someone is going to have

22  to come forward and pick this up.

23     (Laughter.)

24     **MR. ZELLER:**  One thing, Your Honor, if I may just

25  start with this.  The Court about a month ago lifted the          02:25

1    Phase 2 discovery stay.  Unfortunately, even as to matters that

2    have been compelled, we don't have a single scrap of paper; we

3    don't have a witness; we have not received any further

4    discovery from MGA.  We've already had to file a number of

5    motions.

6            I say that as a preface, not to attack or lambast

7    MGA, but, rather, that we're going to have, obviously, a

8    significant period of time that discovery is going to take to

9    allow the Discovery Master and this Court and the parties to

10   make our way through the remainder of Phase 2 discovery.  There

11   are still a number of witnesses.  In fact, two of the key

12   witnesses, Vargas and another one, who have been stated by MGA

13   in the past to be the ones who run MGA, Mexico, we're told we

14   have to go through the Haigh convention to get them, that a

15   deposition notice is not sufficient; so that's in front of the

16   discovery master currently.

17           So of course if we had to go through the Haigh

18   convention, that is, of course, many months, if not a year.

19           So again, I only say these things not to pick a fight

20   over discovery at this point, but to say that I think what

21   we're looking at is probably a year of discover to try to get

22   that done.

23           So I'm thinking that in terms of attempting to get

24   discovery done, I would say that at some point next spring is

25   frankly what we're looking at.  Then we're going to need a

02:25

02:25

02:26

02:26

02:26

1    briefing schedule on dispositive motions that I would suggest

2    be fairly comparable to what the Court did the last time.

3            And maybe MGA has a different perspective on this,

4    but I think, from our perspective, while certainly the summary

5    judgment briefing schedule and the like was challenging, it          02:27

6    was, nevertheless, entirely workable and something that we

7    could replicate here.  But the other kinds of deadlines, once

8    we figure out the terminus of the discovery period, then we can

9    simply work from a comparable schedule for the other milestones

10   in terms of time.                                                     02:27

11           THE COURT:  How much time post-discovery would you

12   anticipate would be required for dispositive motions?

13           MR. ZELLER:  Well, I think -- and maybe someone can

14   remind me how much time we had the last time; it was about

15   three months, is my sense.  I can go back and double check as         02:27

16   to the exact dates, but my sense, between when it is that we

17   brought those motions and then the completed briefing and then

18   actually having the hearing with the Court and then

19   disposition, I think it was approximately that time period.

20           THE COURT:  Very good.                                        02:28

21           Thank you, Counsel.

22           From MGA?

23           MR. KLEVENS:  Joel Klevens.

24           I would think the proposed ending date of next spring

25   is a bit longer than should be necessary.                            02:28

1          THE COURT:  What's your sense?

2          MR. KLEVENS:  I would hope we could have a trial date

3     in the latter part of November.

4          THE COURT:  Of this year?

5          MR. KLEVENS:  Yes, and work backward from that with          02:28

6     our other deadlines, rather than pushing this all of the way to

7     next spring.  And I'm hoping that we'll find ways to reduce the

8     incredibly exorbitant amount of discovery that took place in

9     Phase 1 and the incredible expense to both parties that was

10    entailed in that and figure out some ways to streamline some of          02:28

11    this in Phase 2 so that we don't have that kind of thing that

12    counsel and parties had in Phase 1.  And I think a tighter

13    schedule will hopefully facilitate that as well.

14         THE COURT:  Very well.

15         So if we had a November trial date, you'd be          02:29

16    suggesting a discovery cutoff, then, in July or August?

17         MR. KLEVENS:  I guess, right, or September.

18         THE COURT:  Because we'd still have to fit in the

19    dispositive motions.

20         MR. KLEVENS:  You're saying the motions would have to          02:29

21    follow the discovery cutoff?

22         THE COURT:  Yes.  I found it helps to have --

23         MR. KLEVENS:  So I guess August would be the

24    discovery cutoff.

25         THE COURT:  Very good.          02:29

1          **MR. KLEVENS:**  I would simply request the latter part

2   of November rather than the early part, because we do have a

3   conflict in the first week of November, the 5th and 13th.

4          (Brief pause. )

5          **THE COURT:**  I think, on the one hand, trying to wrap       02:32

6   up discovery, given my understanding of the Phase 2 issues, by

7   August or even September, I think, is unworkable.

8          At the same time, I do agree that spring of next

9   year, given how much discovery has gone on here and my sincere

10  hopes that we will be able to streamline discovery, is too much    02:33

11  time.

12         I'm going to set a discovery cutoff for the end of

13  this year; December 11, 2009 will be the discovery cutoff.

14         I have just received a note.

15         There's another defendant in this case.                     02:34

16         Counsel, you did not weigh in on this.

17         **MR. COTE:**  Alexander Cote, representing Gustavo

18  Machado.

19         Either plan sounds fine with us, Your Honor.  We

20  don't anticipate a lot of discovery, so we'll defer to counsel.    02:34

21         Would that be for expert and fact discovery?

22         **THE COURT:**  All discovery cutoff, all discovery will

23  be done by this date.

24         **MR. COTE:**  Thank you.

25         **THE COURT:**  We've gone through this before; all          02:34

1    discovery is cut off December 11, 2009.

2              I will schedule dispositive motions for February 1st,

3    2010, at 10:00 A.M.; I'll schedule a pretrial conference for

4    March 1st, 2010, at 11:00 A.M.; and the trial date for Phase 2

5    will be March 23, 2010, at 9:30 A.M.  I will have the cutoff                02:35

6    for the mandatory settlement conference also scheduled for

7    December 11, 2009.

8              My hope would be that we could wrap this case up this

9    year, but, if not, we'll have dispositive motions and the trial

10   in the early part of next year.                                             02:35

11             Are there any conflicts, known conflicts at this

12   point, with any of those dates?

13             From Mattel's perspective?

14             MR. ZELLER:  No.  Not with Mattel, Your Honor.

15             THE COURT:  With MGA?                                             02:35

16             MR. KLEVENS:  I don't believe so, Your Honor.

17             MR. COTE:  None, Your Honor.

18             THE COURT:  Very well.

19             Is there anything else we need to address at this

20   time?                                                                      02:35

21             MR. ZELLER:  Yes, Your Honor.

22             Given these deadlines -- and I regret having to

23   embroil the Court in this, because this is a, quote, "discovery

24   issue," but it involves the Court's orders from January.

25             As I've mentioned, we have received nothing from MGA,            02:35

 1    even as to things that were compelled before the stay. They

 2    have been taking the position that the Court's orders of

 3    January 6th and January 7th effectively stayed our ability to

 4    get financial discovery.

 5            I would ask the Court to make a ruling on this.          02:36

 6            I regret having to raise it, but we are going to lose

 7    at least another month, if not another two months, in getting

 8    financial information which is absolutely critical for our

 9    ability to prepare for this. And this is one reason why I was

10    suggesting as long as I was.                                     02:36

11            THE COURT:  I understand, Counsel.

12            MR. ZELLER:  But, the idea that there's a stay in

13    place is --

14            THE COURT:  I thought I made it clear that I lifted

15    all stays on discovery, but perhaps not.                        02:36

16            MR. KLEVENS:  The system the Court has set up cannot

17    work if counsel are allowed to come to the Court and give some

18    distorted view of what they think the dispute is about and not

19    leave it to the Discovery Master to look at and resolve and

20    give the parties the opportunity to brief.                      02:36

21            I'm not going to respond to what he says.  I don't

22    agree with a word that he said.  But I'm not going to

23    respond to it.

24            THE COURT:  I think you have responded, Counsel, and

25    I take your response at its value.                              02:37

1    For the record, I previously indicated that all stays

2  on discovery have been lifted.  All discovery matters should

3  rightfully be referred to the Discovery Master.  And I'll let

4  it go at that.

5    MR. ZELLER:  And that no discovery issues or no                02:37

6  requests for discovery are premature at this point, because

7  that's the other term they are using on this.

8    THE COURT:  I will instruct the Discovery Master this

9  afternoon, in no uncertain terms, that there is no stay on any

10  discovery related to this case at all.  There's no longer a     02:37

11  Phase 1/Phase 2 distinction.

12    As I indicated, I thought that I made this clear

13  before.  If it's not, it will be expressly set forth in the

14  minutes coming out of today's hearing.

15    There is no stay on discovery.  Period.                       02:37

16    MR. ZELLER:  And we're fully entitled to the

17  financial information that --

18    THE COURT:  Lets leave it at that, Counsel.

19    Thank you, Mr. Zeller.

20    MR. RUSSELL:  Could I say one thing, since                    02:38

21  Mr. Zeller injected this.

22    When he's talking about this stay -- and this is the

23  twilight between Phase 1 and Phase 2 counsel -- they

24  promulgated a series of receiver-related discovery which we

25  contend and run your Honor's orders saying let's talk it out of  02:38

1    discovery, let's let Mr. Durkin handle this.  And that's what

2    he's talking about.

3           There may be other issues, but a major component --

4    and I would not want Your Honor to paint with too broad a

5    brush -- it is MGA's position as to Phase 1 receiver-related

6    issues, that Your Honor appropriately, at our request, took out

7    of discovery the financial discovery issues.

8           **THE COURT:**  Mr. Durkin is acting at the Court's

9    direction to inform the Court of information.  I may or may not

10   release any of the information that Mr. Durkin provides; so no

11   one, neither side, should be relying upon the information that

12   Mr. Durkin is gathering for purposes of litigating this case.

13   That's an entirely separate matter.  And I have not stayed any

14   discovery, and there should be no reliance on that.

15          If that was misunderstood, it's clarified now.

16          **MR. RUSSELL:**  Just so I can make sure I'm clear, Your

17   Honor, because I really, since we were the ones at the hearing

18   when this was discussed, and we asked Your Honor for this

19   precise relief, which is to say the financial discovery, the

20   allegations against Omni and IGWT and the like, and I thought I

21   heard Your Honor to say that it made sense for Mr. Durkin to

22   get to the base of it.  And if, then, there were any merit to

23   it, we could allow this discovery to go forward.

24          **THE COURT:**  Wait a second.

25          You're adding something in there.  I didn't say

02:38
02:38
02:39
02:39
02:39

1    anything about discovery not going forth.  I have not ruled on

2    any discovery issues.  I ruled on the ex-parte application for

3    the appointment of the receiver that before I ruled on that,

4    that I wanted to have Mr. Durkin's report.  That's exactly what

5    I'm doing.  I took an interim report last night.  I'll await

6    the final report.  But that's for the Court's purposes.

7              Depending on how the receivership issue plays out, it

8    may or may not be released to some or all of the attorneys.  It

9    may very well be that at the end of the day, after my final

10   meeting with Mr. Durkin, that it never reaches the light of

11   day.

12             MR. RUSSELL:  Just so we're clear, Your Honor, Mattel

13   attached the very discovery they are now promulgating to other

14   parties to their receiver application and asked for leave to

15   serve it.  Your Honor did not grant that leave.  And then what

16   happened was they said, Well, we can't go down this avenue,

17   we'll launch a series of subpoenas.

18             THE COURT:  Then the question becomes -- and this is

19   a question for the Discovery Master, not for this Court --

20   whether or not the discovery is related to Phase 2.  If it is,

21   it is.  I'm not going to pass any judgment whatsoever.  I'm

22   going to leave that completely up to the Discovery Master.

23             MR. RUSSELL:  That's all we're asking for.  Rather

24   than painting with a broad brush, saying all discovery is

25   permitted, there's some discovery that does fall within the

1    scope of what Your Honor refused to give them.  Let's let the

2    discovery master rule on it.  It can always come back to you.

3            **THE COURT:**  Okay.

4            But I guess, Mr. Russell, I'm not sure of the

5    characterization that you're making.                                    02:41

6            I handled the receivership application and request

7    made thereunder in the way that I'm handling the receivership

8    application; that should not be taken one way or the other as a

9    discovery ruling.

10           **MR. RUSSELL:**  I guess, Your Honor, the question is if   02:41

11   there was, as part of that application, and there's an

12   assumption built in that we'd like to have the Discovery Master

13   resolve, is it just receiver discovery or is it Phase 2?  That

14   seems like a question that Mr. O'Bryan should answer.  But I

15   assume, since you don't have any of the briefs and you don't        02:41

16   have the discovery and this has just been dropped on you,

17   assume for the sake of this discussion, that it is solely

18   related to the receiver; that it is, as we pause it, identical

19   to the discovery submitted.

20           **THE COURT:**  I guess where I would distinguish,          02:41

21   counsel, is this notion of receiver discovery, or that phrase,

22   that's not a phrase the Court has used.  Not that I can recall

23   using.  If I did, I certainly did not intend to.  I'm not

24   designating that as a separate and severable part of the

25   discovery.                                                          02:42

**Exhibit 31**
**Page 285**

Mattel vs. MGA Entertainme:

1           The question for the discovery master will be whether

2     or not the disputed discovery request is related or relevant to

3     the trial that has now been scheduled for March or not.  I can

4     see tremendous overlap between, for example, discovery on

5     financial condition of the company as it relates to damages in          02:42

6     the Phase 2 and also issues that the receiver is looking at.

7     And without making a ruling on any of this, I would not suggest

8     for a moment that these are mutually exclusive categories.

9           MR. RUSSELL:  They may not be, Your Honor.  That's

10    the reason why Mr. O'Bryan in the first instance should deal          02:42

11    with it.  Because if you take it the way we take it, this might

12    not be Phase 2 discovery.

13          THE COURT:  You can make that argument to

14    Mr. O'Bryan.

15          MR. RUSSELL:  Thank you, Your Honor.          02:43

16          MR. ZELLER:  And just so it's clear, what Mr. Russell

17    is articulating is a basis as to why MGA has refused to give us

18    any financial --

19          THE COURT:  Mr. Zeller, I'm going to cut you off

20    here.  Take that up with the Discovery Master.  I don't mean to          02:43

21    cut you off, but I think I made my position as clear as I can

22    today that there is nothing from this Court which is precluding

23    any discovery that is properly sought for the trial that is

24    scheduled.

25          Whatever has happened has happened and we need to          02:43

1    move forward.

2            MR. ZELLER:   Thank you, Your Honor.

3            THE COURT:   Thank you, counsel.

4            MR. FRACKMAN:   I'm last, and I think I'll be the

5    shortest.   On the issue of streamlining discovery, I've read          02:43

6    the Court's prior orders concerning the number of depositions,

7    for example, and I confess, I'm a bit confused.

8            We would request from the Court that there be a

9    reasonable limit placed on Phase 2 depositions.   I don't know

10   whether that comes to Your Honor or whether that goes to the          02:44

11   discover referee.

12           THE COURT:   In the first instance, that would go to

13   the discovery referee.   The limits that were placed were limits

14   that were placed on the earlier discovery phase.

15           To be clear again, I have placed no limits, no            02:44

16   restrictions, other than what is set forth in the rules of

17   civil procedure and in local rule 37 on discovery from this

18   point until March 23rd.

19           If the parties wish to stipulate, they may.   If the

20   parties think that the Court needs to be involved in this in          02:44

21   the first instance, that needs to go to the Discovery Master.

22           MR. FRACKMAN:   I think we're prepared to follow the

23   federal rules, Your Honor.   Thank you.

24           THE COURT:   Very good.

25           MR. ZELLER:   I feel like I'm being more difficult at          02:44

1   the end than I should be.

2          Just so it's clear, because as I understood it,

3   there, of course, are the limits under the Federal Rules of ten

4   depositions.  We, of course, have -- and I thought that the

5   parties --                                                    02:45

6          THE COURT:  You did more than ten depositions.

7          MR. ZELLER:  Correct.  And I think both sides have.

8          THE COURT:  Yes.

9          MR. ZELLER:  Or then there were limits the Court did

10  put on the case, as we understood it; I want to say the number  02:45

11  was 24, but I could be off slightly, that the Court did modify

12  the limits already.

13         THE COURT:  I allowed for additional depositions.

14  But those were all in the context of the first phase.  We now

15  have new counsel coming in.  I'm certainly not going to suggest  02:45

16  you're all done with discovery.

17         MR. ZELLER:  Absolutely.

18         THE COURT:  Maybe I should.  Maybe I should say the

19  limits have all been filled in spades and we're done and let's

20  go to trial.                                                  02:45

21         MR. ZELLER:  That's what I'm trying to understand is

22  is the Court's view on this, because the Court had

23  previously -- and I don't recall the mechanics of how we got

24  there, but the Court essentially increased the limit to, I

25  think, 24.                                                    02:45

1    THE COURT:  Whatever limits I imposed, if I did not

2  use the precise language that I should have, let me make it

3  clear now:  That was applied to the discovery phase.  That's

4  now water under the bridge.  It is over.

5        We are starting with a clean slate, a new discovery        02:46

6  master, new counsel for MGA, and we are going to build this up

7  and we'll go from here.  If there's a discovery dispute, please

8  take it to the Discovery Master.

9        MR. ZELLER:  That helps clarify it quite a bit, Your

10  Honor.        02:46

11        The other component is that at least with respect to

12  Phase 1, when we asked the question of where should we take a

13  request for leave to take additional depositions or serve

14  additional interrogatories and the like, the Court previously

15  directed that the motions be made to Your Honor.  And the Court        02:46

16  may recall that, in fact, in the first phase, Mattel did make

17  such a motion that was granted.

18        THE COURT:  Regarding what, again?

19        MR. ZELLER:  Increasing the limits.

20        THE COURT:  That is something which I am going to        02:46

21  change for this.  I think in the first instance that should be

22  directed to the Discovery Master.  You both have full right to

23  appeal any decision from that, but I think it's best that the

24  Discovery Master function essentially as the Magistrate Judge

25  in this case and handle all of those from the get-go.  And        02:47

1   we'll go from there.

2          MR. ZELLER:   Thank you.

3          THE COURT:   Anything further?

4          Thank you.   Good day.

5

6

7

8

9

10                        CERTIFICATE

11

12   I hereby certify that pursuant to section 753, title 28, United
     States Code, the foregoing is a true and correct transcript of
13   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
14   conformance with the regulations of the Judicial Conference of
     the United States.

15

16   _____          _____
     THERESA A. LANZA, CSR, RPR                      Date
17   Federal Official Court Reporter

18

19

20

21

22

23

24

25

# Exhibit 32

**CONFORMED COPY**
LODGED

FILED

2007 MAY 16  PM 1: 59   2007 MAY 16  PM 2: 00

1   Hon. Edward A. Infante (Ret.)
    JAMS                                CLERK U.S. DISTRICT COURT   CLERK U.S. DISTRICT COURT
2   Two Embarcadero Center                 CENTRAL DIST. OF CALIF.    CENTRAL DIST. OF CALIF.
    Suite 1500                                    RIVERSIDE                  RIVERSIDE
3   San Francisco, California  94111     BY_____        BY_____
    Telephone:    (415) 774-2611
4   Facsimile:     (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

10

11  CARTER BRYANT, an individual,        CASE NO. C 04-09049 SGL (RNBx)
                                         JAMS Reference No. 1100049530
12            Plaintiff,

13        v.                             Consolidated with
                                         Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation, Case No. CV 05-2727

15            Defendant.                 **ORDER GRANTING MATTEL'S
                                         MOTION TO COMPEL PRODUCTION
16                                       OF DOCUMENTS AND
                                         INTERROGATORY RESPONSES BY
17  CONSOLIDATED WITH                    MGA**
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20                              I. INTRODUCTION

21       On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

22  of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

23  20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

24  reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

25  submission pending the parties' submission of a proposed protective order, which was received

26

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                       1

Exhibit 32
Page 291

1  on April 23, 2007.  Having considered the motion papers and comments of counsel at the hearing,

2  Mattel's motion to compel is granted.

3  II.  BACKGROUND

4      A.  Requests for Documents

5      In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6  became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7  categories of documents, to be produced in ten days.  MGA filed a motion to quash, which the

8  court granted because of the short amount of time provided for compliance with the subpoena.

9  The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10  some of Mattel's requests.  In particular, the parties agreed to limit production to the "first

11  generation" Bratz dolls.  On August 12, 2004, MGA produced documents.

12      In 2005, the parties stipulated to supplementing their document productions on May 16,

13  2005.  Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14      In September of 2006, MGA made a supplemental production of documents.  On February

15  5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16  with legibility problems.  On February 20, 2007, MGA produced an additional 224 pages of

17  documents to replace earlier produced documents with legibility problems.

18      Mattel now moves to compel MGA to produce documents responsive to its requests.  As a

19  preliminary matter, Mattel contends that MGA's production is deficient because it contains

20  redactions and cut-off text.  Further, Mattel contends that MGA's production is incomplete with

21  respect to essentially five categories of documents.  First, Mattel contends that MGA is

22  withholding documents relating to the origins of Bratz and Bryant's work for MGA.  Mattel

23  believes that MGA's production is incomplete based upon its review of documents that have been

24  produced by third party Steven Linker.  According to Mattel, Linker's documents from October

25  of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26  previously represented.  Mattel also contends that MGA's responses to the document requests

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

Exhibit 32
Page 292

1  contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2  responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3  show when certain dates relating to Bratz occurred.  Mattel contends that these "carve outs

4  purport to allow MGA to cherry-pick what it will and will not produce to Mattel."  Mattel's

5  Separate Statement at 17:11-13.  Mattel also contends that the carve-outs fail to provide notice of

6  what is or is not being withheld.  Mattel also contends that MGA's objections based upon its

7  confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8  protective order in place.  In addition, Mattel contends that MGA's objection to producing

9  documents relating to activities or conduct in foreign countries is wholly improper because those

10  documents may contain information relevant to Mattel's claims.

11      Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12  such documents relate to the "first generation" Bratz dolls.  Mattel argues that whether the work

13  ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14  discovery purposes.  Mattel contends that the works created by Bryant during his Mattel

15  employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16  a Bratz doll released at a particular time.[1]

17      Mattel next contends that MGA is improperly withholding documents about designs

18  Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19  be derivative of work he did when employed by Mattel.  Mattel contends that it is entitled to

20  explore whether such works and the profits from Bratz dolls other than the "first generation"

21  Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22  and damages.  Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23  improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24  information as well as MGA's unfair competition claims.

25  

26      [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
to compel Bryant to produce documents.

27  

28  

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

Exhibit 32
Page 293

1       Mattel also asserts that MGA is improperly withholding documents relating to products,

2   services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3   Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4   Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5   Inventions Agreement.

6       Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7   payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8   because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9   (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10  damages; and (3) payments may show when and what trade secret information Bryant and other

11  defendants allegedly misappropriated from Mattel.

12      Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13  contends that all agreements between Bryant and MGA are relevant, not just the original

14  September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15  documents relating to MGA and Bryant's alleged joint defense agreement because such

16  information would be relevant to demonstrate bias and lack of credibility.

17      Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18  statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19  information may reveal relevant information about the date of creation of Bryant's Bratz

20  drawings.

21      In response, MGA denies withholding responsive documents and asserts that it has

22  produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23  that it has produced all responsive and relevant documents that it was able to locate in response to

24  request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25  before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26  motion. In particular, MGA represents that it is diligently working to produce documents related

27

28

Exhibit 32
Page 294

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4   have been released on the market.  In addition, MGA represents that it has agreed to produce

5   documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6   specifically, MGA represents that it agreed to review and produce documents provided to it by

7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8   Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9   Therefore, MGA views the motion as unnecessary.

10          MGA next contends that Mattel's motion should be denied for the following additional

11   reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12   unreleased products.  MGA asserts that its product design documents for its unreleased toy

13   concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14   designs and drawings for products currently under development, over six years after Bryant first

15   created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16   documents relating to unreleased products are ordered produced, MGA requests a protective order

17   under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18   than the current protective order provides.  In the alternative, MGA requests that any order

19   compelling production of documents relating to unreleased products should essentially be stayed

20   until after MGA's products are publicly released.

21          Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22   attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23   information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

1 | in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's
2 | Opposition at 24:9-12.[2]

3 |     Third, MGA asserts that Mattel is not entitled to review all non-public witness statements
4 | and litigation documents concerning Bratz for a variety of reasons, including because Mattel has
5 | refused to produce similar types of documents.  More significantly, MGA contends that Mattel's
6 | requests for non-public witness statements are "a blatant attempt to avoid the discovery
7 | limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations
8 | imposed by this Court." MGA's Opposition at 25:6-7.  MGA explains its position as follows.
9 | MGA is involved in litigation against a number of counterfeiters and infringers in Asia.  In 2003,
10 | Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an
11 | attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel
12 | abandoned its claims based upon "Toon Teens" in this court.  Thereafter, those defendants took
13 | the position that MGA did not own, and therefore could not enforce, the rights to Bratz.  MGA
14 | was thus forced to litigate the issue of ownership.  MGA contends that "[i]n effect, by prompting
15 | foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created
16 | a situation in which MGA has been forced to give testimony and provide evidence related to
17 | issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18 |     Fourth, MGA contends that Mattel is not entitled to documents concerning a family
19 | dispute between MGA's chief executive officer and his brother because such documents are in no
20 | way relevant to this lawsuit.  MGA explains that the brothers were involved in an arbitration
21 | proceeding relating to MGA's CEO's purchase of his brother's interest in MGA.  Moreover,
22 | MGA contends that the brothers were bound by a protective order prohibiting the use of any
23 | documents or testimony for any purpose other than the arbitration.

---

26 |    [2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

Exhibit 32
Page 296

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2   files because they contain confidential information and are not relevant to the lawsuit.  Sixth,

3   MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4   in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd.  Lastly,

5   MGA objects to producing documents relating to any testing performed to determine the date that

6   Bratz documents were created.  MGA contends that such discovery is premature and should not

7   proceed until experts are designated.

8        B. Interrogatories

9    On April 28, 2005, Mattel served its Second Set of Interrogatories.  On May 20, 2005,

10   however, the district court stayed the action.  On May 17, 2006, the district court lifted the stay.

11   On May 30, 2006, MGA responded to the interrogatories.

12    Mattel contends that MGA's responses to the interrogatories were untimely.  Further,

13   Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14   because they lack substantive information and consist almost entirely of objections.  MGA

15   responds that the motion is moot because it is prepared to provide supplemental responses to its

16   interrogatories.  MGA does not otherwise assert any additional grounds for opposing Mattel's

17   motion to compel responses to interrogatories.

18                III. DISCUSSION

19        A. Rule 26 of the Federal Rules of Civil Procedure

20    Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22   party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

23   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24   Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25   unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                    7

Exhibit 32
Page 297

1  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4  the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5  26(b)(2).

6      B.  Document Requests

7          1.  Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8              34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9      The requests above seek discoverable information regarding the origins of Bratz and

10  Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11  response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and  69 (MGA's Opposition at 13:4-5), and is

12  "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13  and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14  14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15  products and documents from MGA Hong Kong.

16      As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17  its production to "relevant and responsive non-objectionable documents" or documents

18  "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19  might be excluding documents that are responsive to the request based upon its unilateral

20  determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21  document requests ordered herein without these restrictions.

22                  Design Documents for Unreleased Products

23      MGA's design documents for unreleased products are relevant to Mattel's claims and

24  defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25  parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26  design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                    · 8

Exhibit 32
Page 298

1  to Modify Protective Order; And Proposed Order Thereon ("stipulation").  The parties' stipulation

2  has been approved and entered as an order of the court.  MGA is ordered to produce design

3  documents for unreleased products that are responsive to Mattel's document requests in

4  accordance with the terms of the stipulation and order.

5  <u>Documents from MGA Hong Kong</u>

6      Documents relating to activities or conduct in foreign countries are relevant and

7  discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8  Bratz.  Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9  provides reciprocal discovery from its subsidiaries.

10      Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein.  MGA is ordered to produce

12  documents from MGA Hong Kong.

13      Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15      2. <u>Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,</u>

16  <u>61, 63, 66, 67, 70, 88, 90, 91</u>

17      Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls.  MGA represents, however, that it agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21      As stated previously, design documents for yet unreleased products are relevant and

22  discoverable.  <u>See</u> Order Modifying Protective Order.  Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25  //

26  //

27

28

9

Exhibit 32<br>Page 299

3. <u>MGA's Payments to Bryant (Nos.43, 45)</u>

MGA represents that it has already agreed to produce documents related to Bratz, without limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless, Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's motion is granted with respect to request nos. 43 and 45.

4. <u>MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)</u>

MGA represents that it has already agreed to produce non-privileged documents responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or indemnity agreements between MGA and Bryant .

Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility. Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any responsive documents withheld on the basis of a privilege must be properly identified in a privilege log.

5. <u>Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40, 41,</u>

In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits, and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel anticipates that these documents could provide evidence relating to the conception date for Bratz.

Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

---

[3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

Exhibit 32
Page 300

1  that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2  documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3  protective order that prohibits the use of any documents or testimony for any purpose other than

4  the arbitration.  MGA, however, has not provided any evidence of the protective order.

5  Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6       6. Documents Regarding Date-Testing (Request No. 92)

7       Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8  from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9  testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto."  MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12       The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports.  The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15       C. Interrogatories

16       Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served.  The district court lifted the stay on May 17, 2006.

---

[4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

Exhibit 32
Page 301

1      Neither party has cited to any caselaw governing the calculation of the 30-day period

2  when there is an intervening stay in discovery.  In the absence of any caselaw, MGA's responses

3  will be treated as timely in order to preserve any valid objections MGA may have asserted.

4      Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5  conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6  tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7  before December 31, 2001, including a description of each person's role and the start and end

8  dates of each person's involvement.  In response, MGA asserted numerous objections, but did

9  provide the names of five individuals.

10      The interrogatory clearly seeks information relevant to the claims at issue.  MGA's

11  objections are without merit.  The interrogatory is not vague, ambiguous, compound or overbroad.

12  Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13  for confidential, proprietary or commercially sensitive information, or seeks information

14  protected by the attorney-client privilege.  Furthermore, MGA's response is incomplete insofar as

15  it fails to provide the description of each person's role and the start and end dates of each person's

16  involvement.  Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17  5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18      Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19  embodiment of Angel.  MGA is ordered to provide a complete response to Interrogatory No. 6 for

20  the reasons previously discussed in connection with Interrogatory No. 5.

21      Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22  December 31, 2001.  In response, MGA asserted numerous objections and did not provide any

23  substantive information.

24      MGA's objections are without merit.  The interrogatory clearly seeks information relevant

25  to establishing when Bryant first conceived Bratz.  The interrogatory is not vague, ambiguous,

26  compound or overbroad.  Nor has MGA carried its burden of establishing that the interrogatory is

27

28

Exhibit 32
Page 302

1   unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2   seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3   provide a complete response to Interrogatory No. 7.

4       Interrogatory No.8 asks MGA to identify each and every embodiment of Angel.  MGA is

5   ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6   discussed in connection with Interrogatory No. 7.

7       Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8   or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9   or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10  substantive information.

11      The interrogatory seeks information relevant to establishing when Bryant first conceived

12  Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13  ordered to provide a complete response to Interrogatory No. 9.

14      Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15  was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16  which each such instance occurred, the location of each show or exhibit, and the identity of

17  persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18  objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19  about January 2001 and New York Toy Fair, New York, in or about February 2001.

20      Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21  potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22  incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23  to provide a complete response to Interrogatory No. 10.

24      Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25  including without limitation each office, home and cell phone number, in the name of, for the

26  benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

Exhibit 32
Page 303

1   January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2   limitation any long-distance carrier) for each such number. In response, MGA asserted numerous

3   boiler-plate objections.

4         Once again, MGA has failed to substantiate any of its objections with supporting

5   declarations or legal authorities. Accordingly, all objections are overruled and MGA is ordered to

6   provide a full response to Interrogatory No. 11.

7                         IV. CONCLUSION

8         For the reasons set forth above, Mattel's motion to compel production of documents is

9   granted. MGA shall produce all non-privileged documents that are responsive to the requests

10   identified in this Order. Further, MGA shall produce all documents in un-redacted form, except

11   for redactions that are justified by the attorney-client privilege or work product doctrine. Mattel's

12   motion to compel interrogatory answers is also granted. MGA shall produce documents and

13   provide responses to interrogatories consistent with this Order, and produce a privilege log in

14   compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007. Mattel's request for

15   sanctions is denied.

16         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17   Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21   Dated: May /5, 2007

22                             HON. EDWARD A. INFANTE (Ret.)

23                              Discovery Master

24

25

26

27

28
  Bryant v. Mattel, Inc.,
  CV-04-09049 SGL (RNBx)

14

Exhibit 32
Page 304

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

Exhibit 32
Page 305