# EXHIBIT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                    Date: February 4, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
==============================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

              Jim Holmes                          Theresa Lanza
              Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR CARTER            ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Michael Page                            John Quinn
                                        Jon D. Corey

                                        ATTORNEY PRESENT FOR CARLOS
ATTORNEYS PRESENT FOR MGA:              GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan
Carl A. Roth
Robert J. Harrington

ATTORNEYS PRESENT FOR THIRD-
PARTY WITNESSES

Larry W. McFarland
Scott Gizer
Ramit Mizrahi
Henry H. Gonzalez
Neal A. Potischman
John Patrick Petrullo


Alexander H. Cote


MINUTES FORM 90                                    Initials of Deputy Clerk __jh
CIVIL -- GEN                        1              Time: 1/45

EXHIBIT   1
PAGE      3

PROCEEDINGS:

HEARING ON EX PARTE APPLICATIONS:

**1722 EX PARTE APPLICATION to Compel Deposition of Ana Cabrera, Beatriz Morales, and Maria Salazar and Mel Woods**

**1724 EX PARTE APPLICATION to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc.**

**1538 EX PARTE APPLICATION for Relief from 01-07-2008 Order re Motion Hearing**

**1583 EX PARTE APPLICATION to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow**

**1624 EX PARTE APPLICATION to Enforce Court's Orders Compelling Production of Tangible Items**

**1628 EX PARTE APPLICATION to Stay pending Review of Discovery Master's January 11, 2008 Order Granting MGA's and Bryant's Motion to Compel**

**ORDER TO SHOW CAUSE DIRECTED TO COUNSEL LARRY McFARLAND**

Having considered the documents submitted in support of and opposition to the applications set forth above, and having heard oral argument, the Court issues its rulings on these matters as stated on the record and as follows:

**EX PARTE APPLICATIONS REGARDING DEPOSITIONS
(DOCKET #1722 AND #1724) AND ORDER TO SHOW CAUSE**

These applications are DENIED IN PART, subject to the following rulings:

(1)     The Court's January 7, 2008, Order was intended to grant certain specified relief from the numerical limitations on discovery requests; it was not meant to make definitive rulings on burdensomeness, relevance, privilege, or service of discovery requests.

(2)     The Phase 1 discovery deadline has expired. Any Phase 1 discovery not properly served on or before this deadline may not now be pursued. Based on the representation of counsel that process for the letters rogatory on the Hong Kong witnesses has not been initiated, these witnesses may not be deposed on Phase 1 issues. Notwithstanding this ruling, however, the Court is concerned with the allegations by Mattel in its ex parte application regarding certain actions of Larry

MINUTES FORM 90
CIVIL -- GEN                                    2

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT ___1___
PAGE ___4___

McFarland, who represents certain third-party witnesses. Mattel submits that Mr. McFarland has been deliberately evading service of a notice of deposition on him and his clients – serious allegations when made by an officer of the Court against another officer of the Court. Accordingly, Mr. McFarland is **ORDERED TO SHOW CAUSE** why he and his clients should not be ordered to appear for deposition. A written response to this OSC must be filed no later than February 11, 2008. Other parties may file written replies no later than February 19, 2008. The Court will hear the matter at 10:00 a.m., February 25, 2008, in Courtroom One of the above-referenced Court.

(3)     Phase 1 depositions that have been scheduled past the discovery deadline for the convenience of the witnesses or pursuant to the stipulation of the parties and/or witnesses may proceed as scheduled.

(4)     All discovery related to Phase 2, other than certain individual depositions that may be related to both Phase 1 and Phase 2, is STAYED until further order of the Court.

(5)     As previously ordered and reaffirmed by this Court, all discovery matters shall be presented in the first instance to the Discovery Master. The fact that the Discovery Master's ruling might impact upon the Court's scheduling order does not relieve the parties of following this procedure. For instance, motions to compel, motions to quash, or motions challenging service as to existing discovery requests shall be brought before the Discovery Master. So, too, must objections based on burdensomeness, relevancy, or privilege. In general, and on the matters touched upon herein, the Court expresses no opinion as to these issues, and instead leaves those issues to the Discovery Master to decide in the first instance.

(6)     To the extent that certain challenged depositions are within the scope of the Court's January 7, 2008, Order, and are related to Phase 1 (or to the extent that a given deposition (other than a Rule 30(b)(6) deposition) is related to both Phase 1 and Phase 2), said deposition may proceed subject to the challenges set forth in the previous paragraph. To the extent that the depositions are related to Phase 2, they are STAYED, as set forth above, notwithstanding the January 7, 2008, Order.

(7)     The parties' arguments require the Court to resolve an internal inconsistency in the Court's January 7, 2008, Order. The Court's Order was meant to grant all parts of Mattel's Motion for Leave to Take Additional Discovery (docket #1134) except the relief sought as to the deposition of Carter Bryant. The Court amends its 01.07.08 Order as follows:

> Delete: <Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT ___1___
PAGE ___5___

claims (set forth in the moving papers at 13).>

Replace with: <Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11), relating to the trade secret and RICO claims (set forth in the moving papers at 13), and relating to document preservation (set forth in the moving papers at 14 (Joe Tiongco and Daphne Gronich)).>

(8)     The Court's January 7, 2008, Order granted leave to take additional discovery over and above the previously allocated 24 depositions per side. Nevertheless, as to all other depositions, how to "count" the previously allocated depositions is left to the discretion of the Discovery Master.

(9)     At the hearing, counsel for Christensen, Glaser requested that the Court clarify that its January 7, 2008, ruling granted leave to depose it on only one issue. That is not the case, and the request is DENIED. Mattel has been granted relief from the numerical limitations that previously restricted its ability to depose those individuals and entities addressed by the Court's January 7, 2008, Order, including its ability to depose Christensen, Glaser. Unless otherwise restricted by the Discovery Master upon proper presentation of the issue to him, Mattel may depose Christensen, Glaser on any relevant, non-privileged matter.

## MACHADO GOMEZ'S EX PARTE APPLICATION RE
## JANUARY 7, 2008, ORDER (DOCKET # 1504)

This application is GRANTED. As noted above, Phase 2 discovery is STAYED until further order of the Court. The Court will address Phase 2 discovery, motions, pretrial, and trial dates after the conclusion of Phase 1 of the trial.

## MATTEL'S EX PARTE APPLICATION RE MOTION TO COMPEL PRODUCTION OF
## ELECTRONIC MEDIA FROM THIRD PARTIES (DOCKET #1538)

This application is DENIED. This matter must be addressed in the first instance by the Discovery Master.

## MATTEL'S EX PARTE APPLICATION TO ENFORCE COURT'S ORDERS
## COMPELLING PRODUCTION OF TANGIBLE ITEMS (#1624)

This application is GRANTED IN PART. Counsel for MGA shall employ its best efforts to arrange for shipment of those tangible things located in the Peoples' Republic of China ("PRC") to Hong Kong Special Administrative Region ("Hong Kong") for examination in conjunction with those tangible things already located in Hong Kong. Otherwise, counsel for MGA shall cooperate in the

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT ___1___
PAGE ___6___

arrangements for inspection in both Hong Kong and the PRC. Mattel's request for costs is denied without prejudice.

Counsel are encouraged to meet and confer with the intent of reaching a stipulation regarding the supplementation of expert reports. Absent such stipulation, at the appropriate time, the Court will entertain an ex parte application from any party regarding this issue.

### MATTEL'S EX PARTE APPLICATION TO STAY PENDING REVIEW OF DISCOVERY MASTER'S JANUARY 11, 2008 ORDER (DOCKET # 1628)

This application is GRANTED IN PART. The Court sets the motion for hearing on February 11, 2008. Opposition shall be filed no later than February 6, 2008; any reply shall be filed no later than February 8, 2008. The Discovery Master's January 11, 2008, Order is stayed until the issuance of the Court's minute order regarding the February 11, 2008, hearing.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

5

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT ___1___
PAGE ____1____

## NOTICE PARTY SERVICE LIST

**Case No.**   CV 04-09049 SGL(RNBx)     **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**   Minute Order of February 4, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service -  Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*:  P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

| **JUDGE / MAGISTRATE JUDGE (list below):** |
|---|
| |
| |
| |
| |

**Initials of Deputy Clerk** jh

EXHIBIT ___1___
PAGE ___6___

# NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)     **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of February 4, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service -  Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | ***ADD NEW NOTICE PARTY*** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address *(include suite or floor)*:  Two Embarcadero Center, Suite 1500, San Francisco, CA  94111

*E-mail:

*Fax No.:

\* For CIVIL cases only

| ***JUDGE / MAGISTRATE JUDGE (list below):*** |
|---|
| |
| |
| |
| |

**Initials of Deputy Clerk** jh

EXHIBIT  1
PAGE  7

# EXHIBIT 2

LAW OFFICES

## GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000
FAX (310) 556-2920

DIRECT DIAL NUMBER
(310) 556-7874
EMAIL: CMANKEY@GLASERWEIL.COM

February 6, 2009

₮₮ MERITAS LAW FIRMS WORLDWIDE

## VIA E-MAIL & U.S. MAIL

Michael T. Zeller, Esq.
Quinn, Emanuel, Urquhart,
  Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

> Re:   Motion to Compel RFPs 526 and 528
>       *Bryant v. Mattel, Inc. and Consolidated Actions*
>       U.S.D.C. Eastern Division, Case No. CV04-09049 SJL(RNBx)

Dear Counsel:

We write to inform you that we are renewing MGA's Motion to Compel Mattel to Produce Documents Responsive to Requests for Production 526 and 528 (the "Motion") by filing it with the Court and Discovery Master today. For the Court's convenience, we will also be submitting Mattel's Opposition papers filed previously in response to MGA's Motion. We trust your position has not changed from that taken during the previous efforts to meet and confer as reflected in the previously filed Declarations of Robert J. Herrington, counsel for MGA, and Timothy L. Alger, counsel for Mattel, and that Mattel will not agree to produce the documents responsive to RFPs 526 and 528. However, please advise us immediately if Mattel's position has changed as to render this Motion unnecessary.

Very truly yours,

Caroline Mankey (cre)

Caroline H. Mankey
of GLASER, WEIL, FINK, JACOBS
& SHAPIRO, LLP

cc:   Joel N. Klevens, Esq.
      Jason Russell, Esq.
      Patricia Benson, Esq.

666099

EXHIBIT ___2___
PAGE ___10___

# EXHIBIT 3

1 | Hon. Edward A. Infante (Ret.)
   | JAMS
2 | Two Embarcadero Center
   | Suite 1500
3 | San Francisco, California  94111
   | Telephone:      (415) 774-2611
4 | Facsimile:       (415) 982-5287

5

6

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS BY ISAAC LARIAN;<br>DENYING REQUEST FOR<br>SANCTIONS** |

## I. INTRODUCTION

On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production of Documents by Isaac Larian and for Award of Monetary Sanctions." Specifically, Mattel seeks an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT __3__
PAGE ___11___

1   15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199,

2   207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents

3   withheld based on any claimed privilege.  Mattel also seeks an award of sanctions against Larian

4   in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing

5   this motion.  Larian submitted an opposition on December 5, 2007.[1]  Mattel submitted a reply on

6   December 10, 2007.  The matter was heard on December 14, 2007.  Having considered the

7   motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in

8   part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

9

10      On June 13, 2007, Mattel propounded its First Set of Requests for Production of

    Documents and Things to Larian, the CEO and majority owner of MGA.  On August 6, 2007,

11   Larian filed his initial responses and objections.  The parties met and conferred, and on September

12   25, 2007, Larian served supplemental responses and objections.

13      Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the

14   276 Requests.  The parties met and conferred further, and Larian ultimately agreed to provide

15   further responses to 55 of the disputed 87 Requests.  Specifically, Larian agreed to supplement his

16   responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-

17   76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that

18   have not previously been produced."  MGA's Opposition at pp. 1-2.

19      The remaining 32 Requests at issue can be grouped into ten categories:  (1) personal

20   financial data; (2) communications with Mattel employees; (3) statements to the media; (4)

21   telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market

22   research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's

23   arbitration; and (10) MGA Hong Kong and MGA Mexico.

24   //

25   _____

26      [1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should
    not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim
27   statement of Mattel's position. The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve
    Mattel's motion on the merits.

28                                                                                                    2

    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT   3
PAGE   12

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 3
PAGE 13

1    he will do so. Second, Larian's agreement to produce responsive documents is apparently limited

2    to documents from his so-called "personal files." See Opposition at 2:2-3.

3         Mattel's counsel "never agreed that Larian could limit his response to the above requests

4    to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his

5    response to documents in Larian's 'personal files.'" Supp. Decl. of Scott B. Kidman.·

6    Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,

7    Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding

8    parties' "possession, custody or control." The limitation is also unworkable because, as Mattel

9    points out, it "would create a situation by which responsive and highly relevant documents might

10    never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and

11    Larian, on the other hand, deems [a] document not to be part of his 'personal files.'" Reply at p.6.

12    <u>Market Research for Products Not at Issue:  Request Nos. 79-81</u>

13         In Request No. 79, Mattel seeks all documents relating to any focus groups relating to

14    Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports.  In

15    his supplemental response, Larian agrees to produce the following documents, subject to his

16    general objections:

17       Larian will produce all documents within his possession, custody, or control that
        relate to focus groups for "MGA contested products" and "Mattel contested

18       products," as those terms are defined in Mattel's First Requests for Production
        regarding Claims of Unfair Competition, if any, and that have not already been

19       produced, that he discovers in the course of his reasonable search and diligent
        inquiry, and to which no privilege or other protection applies, including without

20       limitation, the attorney-client privilege or attorney's work product doctrine.

21

22    Mattel's Consolidated Separate Statement at pp. 20-21.

23         In Request No. 80, Mattel seeks all documents relating to any services or work performed

24    by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all

25    videotapes, summaries, notes and reports associated therewith.  In his supplemental response,

26    Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to

27    the request and to which no privilege or other protection applies.

28

                                                            4

EXHIBIT  3
PAGE  14

In Request No. 81, Mattel seeks all documents relating to Alaska Momma. In his supplemental response, Larian agrees to produce all documents relating or referring to Bratz, Angel or Bryant that are responsive to the request and to which no privilege or other protection applies.

Mattel contends that the requests are as narrowly tailored as possible to capture relevant information. More specifically, Mattel contends that Request No. 79 seeks documents that bear directly on the timing of the development of Bratz, as well as MGA's unfair competition claims and Mattel's defense thereto. Mattel contends that the requested documents may demonstrate that MGA is guilty of copying Mattel's Barbie and My Scene products.

Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome. As an example, Larian points to Request No. 80, which requests all documents relating to any services or work performed by L.A. Focus, regardless of whether that work has any relation to the claims and defenses in the action or any of the products at issue. Larian similarly contends that Request Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or defense in this case.

Mattel's motion to compel Larian to produce all documents responsive to Request No. 79 is granted. The request is reasonably limited in subject matter to Bratz and Angel. The requested documents are relevant to several issues in the case, including the origin, conception and creation of Bratz. The requested documents are also relevant to the unfair competition claims. Larian's supplemental response to Request No. 79 is unduly restrictive. Among other things, the definitions of "contested MGA products" encompass only those products that provide a basis for any claim by MGA against Mattel, and not claims by Mattel against MGA.

Mattel's motion to compel Larian to produce all documents responsive to Request Nos. 80-81 is denied. These requests, as drafted, are clearly overbroad because they have no reasonable limitations on subject matter or time. In particular, the requests are directed to L.A. Focus and Alaska Momma without regard to whether the services or work the companies provided has any relation to any product at issue.

Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT  3
PAGE  15

1  documents related to the products at issue: Bratz and Angel. In Mattel's view, Larian's

2  supplemental response is too narrow and "may result in the exclusion of highly relevant

3  documents because the project, concept or design that is the subject of the focus group is deemed

4  not to relate to something then known as Bratz or Angel." However, Larian acknowledges that

5  these types of hypothetical documents would still fall within the narrower scope of production

6  proposed in his supplemental response.

7       Mattel also contends that it is entitled to all of the requested documents called for by

8  Request No. 80 because they are relevant to credibility and bias, particularly if the documents

9  show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A.

10  Focus used. It is, however, not apparent how deviations from standard procedures would impact

    credibility or bias.

11       As to Request No. 81, Mattel contends that the documents showing the relationship

12  between Larian or MGA and Alaska Momma are relevant, even if they do not themselves

13  specifically relate to Bratz, Angel or Bryant. Mattel contends that communications from Larian

14  or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant

15  claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's

16  and Bryant's stories about how and when they came to be introduced. Mattel also contends that

17  documents showing other dealings between Larian or MGA and Alaska Momma are relevant to

18  the issues of bias and credibility. Mattel's supposition about the types of documents that might

19  exist does not justify the type of far-reaching request it has propounded. Request No. 81 is also

20  not limited by either subject matter or time.

21       Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in

22  accordance with his supplemental responses.

23

24  Bryant's Attorney and Niece: Request Nos. 113-115

25       In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne

26  Wang, a lawyer who represented Bryant in his contract negotiations with MGA. In Request No.

27  114, Mattel seeks all documents, including without limitation all communications, between

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT  3
PAGE  16

1   Larian or MGA and Anne Wang. In Request No. 115, Mattel seeks documents relating to Brooke

2   Gilbert, Bryant's niece. In his supplemental responses, Larian agrees to produce documents

3   relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or

4   other protection applies. Thus, the only issue is whether Larian should be required to produce

5   responsive documents that do not relate to Bratz, Angel or Bryant.

6        Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin

7   and conception of Bratz and the timing thereof. Mattel also contends that the documents may

8   disclose relevant information regarding Mattel's claims for breach of contract and inducing

9   breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's

10  contractual obligations with Mattel. Mattel also contends that Larian has failed to carry his

    burden of demonstrating that the requests are overly burdensome.

11       Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114

12  are inadequate because the limitations on scope may eliminate otherwise relevant documents that

13  do not specifically refer to Bratz, Angel or Bryant. For example, Mattel contends that

14  communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or

15  Bryant may be relevant to the issues of credibility and bias.

16       Mattel contends that Request No. 115 seeks documents that are relevant to determine

17  whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software

18  that had been installed and run on the hard drive. Bryant claims to have given his computer to his

19  niece. Mattel also contends that the requested documents are relevant to the issues of credibility

20  and bias. Further, Mattel contends that Larian's supplemental response to Request No. 115 is

21  inadequate, because evidence of any communication between Larian and his niece, regardless of

22  subject matter, is significant.

23       Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome

24  because they lack any subject matter or time constraints. Further, Larian contends that the

25  requests constitute an improper fishing expedition and necessarily sweep in documents that are

26  not relevant to any claim or defense.

27  //

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                    7

EXHIBIT ___3___
PAGE ___17___

1    Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied. The

2  requests are overbroad because they are not focused on relevant subject matter and are untethered

3  to any claim or defense. Although Mattel asserts that responsive documents unrelated to Bratz,

4  Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility

5  is too remote to justify the breadth of Mattel's requests.

6    Larian's supplemental responses are sufficient to provide Mattel with relevant and

7  responsive documents. Larian shall produce documents responsive to Request Nos. 113-115 in

8  accordance with his supplemental responses.

9

10  The Larian Brothers' "Arbitrations and Suits": Request Nos. 123-125

11    In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and

   suits between Larian and his brother, Farhad Larian. In Request No. 124, Mattel seeks all

12  documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad

13  Larian against Larian, including without limitation all declarations, affidavits, transcripts, video

14  and/or audio recordings and sworn testimony given by any person in such suit or arbitration

15  proceedings. In Request No. 125, Mattel seeks all documents relating to any and all settlements,

16  resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad

17  Larian. In his supplemental responses, Larian agrees to produce all documents referring or

18  relating to Bratz that are responsive to the requests and to which no privilege or other protection

19  applies.

20    Mattel contends that the court has already ruled that the arbitration proceedings between

21  Larian and his brother are relevant because they involve, among other matters, the conception and

22  creation date for Bratz. Mattel contends that Larian's supplemental responses improperly limit

23  the requests to the exclusion of potentially relevant documents. For example, Mattel contends

24  that documents that relate to the business, activities and plans of MGA in early 2000 are relevant

25  to the timing of the development of Bratz, whether or not they specifically refer to Bratz.

26  Mattel also contends that the requested documents are relevant to the value of the Bratz brand and

27  the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

28

EXHIBIT  3
PAGE   16

1   example, profits from the sale and licensing of Bratz and other information that would impeach

2   Larian's testimony that he has not made any profits from Bratz. Further, Mattel contends that the

3   requested documents may lead to evidence of the assessments or valuations of the net worth or

4   value of MGA or Larian, regardless of any reference to Bratz specifically. Mattel also contends

5   that settlement documents may contain information that bears on the merit of Farhad Larian's

6   claims and the value of Bratz. Mattel also claims that the requested documents are relevant to

7   motive, intent, bias and credibility.

8        Larian contends the instant requests are overbroad and unduly burdensome. Further,

9   Larian contends that the relationship of the requested documents to any of the claims or defenses

10  in the present action is questionable, and the existence of such documents is conjectural.

11  Moreover, Larian contends that many of the categories of documents of interest to Mattel are

12  already the subject of other requests. Larian also contends that Request Nos. 123-125 impose an

13  undue burden because of the protective orders in place that strictly limit the use of any documents

14  from an arbitration and suit between Larian and his brother. Larian represents that he is currently

15  working with Mattel and his brother in an attempt to achieve suitable modifications to the orders

    that are agreeable to all parties.

16       Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is

17  denied. The requests are clearly overbroad in calling for all documents from the arbitrations and

18  suits between Larian and his brother, without any subject matter limitations. Furthermore, these

19  requests are unduly burdensome to the extent they require production of documents that do not

20  refer or relate to Bratz. Such documents have marginal relevance, at best, to the claims and

21  defenses in the case.

22       Larian's supplemental responses to Request Nos. 123 -125 are sufficient. Larian's

23  agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will

24  enable Mattel to obtain documents relevant to the claims and defenses in the case, including many

25  of the categories of documents of interest to Mattel. For example, under Larian's proposed

26  limitation, documents that relate to the business, activities and plans of MGA in 2000 that also

27  refer or relate to Bratz must be produced. Documents relating to the value of the Bratz brand are

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                    9

EXHIBIT __3__
PAGE __19__

1   also within the scope of Larian's proposed limitation and would have to be produced. Documents

2   relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be

3   produced. Further, Larian's proposed limitation does not necessarily foreclose discovery

4   regarding the appraisal of MGA prepared by Mr. Dutcher. In particular, documents relating to

5   MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue

6   projections must be produced if such documents refer or relate to Bratz. Accordingly, Larian

7   shall produce documents responsive to Request Nos. 123-125 in accordance with his

8   supplemental responses.

9

10   <u>Telephone Records: Request Nos. 178-181</u>

11        In Request No. 178, Mattel seeks all documents relating to, including without limitation

12   phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

13   from January 1, 1998 through January 1, 2001. Larian objects to this request.

14        In Request No. 179, Mattel seeks all documents relating to, including without limitation

15   phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

16   from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel. In his supplemental

17   responses, Larian agrees to produce documents responsive to Request No. 179. In response to

18   this motion, however, Larian contends that he should be permitted to produce documents

19   responsive to Request No. 179 in redacted form as discussed more fully below.

20        In Request No. 180, Mattel seeks all documents relating to, including without limitation

21   phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

22   from April 1, 2004 through June 1, 2004. Larian objects to this request.

23        In Request No. 181, Mattel seeks all documents relating to, including without limitation

24   phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf

25   at any time. In his supplemental response, Larian agrees to produce all documents pertaining to

26   communications made prior to January 1, 2001 that are responsive to the request and to which no

27   privilege or other protection applies.

28   //

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT   3
PAGE   20

1      Mattel contends that Request No. 178 seeks documents relevant to show Larian's

2    communications with Bryant and other Mattel employees while such employees may still have

3    been employed by Mattel and before Larian claims to have known about Bratz. Similarly, Mattel

4    contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and

5    Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them

6    to steal Mattel trade secrets.

7      Further, Mattel contends that the requested documents regarding telephone records are

8    relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show

9    communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent

10   they show communications with current and former Mattel employees, including Machado,

11   Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements

12   Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses. With respect to

13   burden, Mattel contends that it would be more burdensome to attempt to produce the requested

14   records in redacted form, and further, that the protective order in place is sufficient to protect

     Larian's privacy concerns.

15     Larian contends that the requests regarding telephone records are overbroad, completely

16   unbounded as to subject matter, and necessarily sweep in private information that is completely

17   irrelevant to any of the claims or defenses in the case. Larian also points out that the court

18   previously considered similar requests served on Bryant and allowed production of redacted

19   copies of telephone records as long as Bryant provided a signed verification that none of his

20   redactions related to Bratz, MGA or any other project he worked on for MGA. Specifically,

21   Bryant was permitted to produce redacted phone records as long as he provided a "signed

22   verification that none of the telephone records that were redacted relate or refer in any way to

23   MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA."

24   Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production

25   of Documents by Bryant). Larian contends that he should be permitted to redact responsive

26   documents consistent with the court's prior order. During the meet and confer, Larian offered to

27   provide redacted records and a signed verification that none of the redacted information was

28

EXHIBIT    3
PAGE    21

1   relevant to the case, but Mattel did not respond to the offer.

2       Mattel's motion to compel documents responsive to Request Nos. 178 (all documents

3   relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied.  The

4   request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in

5   private information that is completely irrelevant to the case.  Larian should not be subjected to

6   such an intrusion into his private and business affairs when Mattel has made no attempt to tailor

7   the request to the communications, claims, and defenses identified above.

8       In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records

9   for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters

10  (Bratz and/or Angel).  Accordingly, Larian shall abide by his agreement to comply with Request

11  No. 179, as stated in his supplemental response.  Larian's proposal to produce responsive

12  documents in redacted form is appropriate to address his privacy concerns.  More specifically,

13  Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian

14  provides a signed verification that none of the redacted material refers or relates in any way to

15  MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA,

    or that are otherwise relevant to the case.

16      Mattel's motion to compel documents responsive to Request No. 180 (documents relating

17  to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted.  Request No. 180

18  is reasonably tailored to a two month period during which MGA and Larian allegedly recruited

19  employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets.  See

20  Mattel's Second Amended Answer and Counterclaims, ¶¶37-54.  Larian may produce documents

21  responsive to Request No. 180 in redacted form as specified above with respect to Request No.

22  179.

23      Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian)

24  is overbroad as written because it has no time limits.  In his supplemental response, Larian agrees

25  to produce communications prior to January 1, 2001 that are responsive to the request.  Larian's

26  proposed limitation is a reasonable compromise that will provide Mattel with relevant documents

27  without imposing an undue burden.  Accordingly, Larian shall produce documents responsive to

28

EXHIBIT    3
PAGE    22

1   Request No. 181 consistent with his supplemental response, and may produce such documents in

2   redacted form as specified above with respect to Request No. 179.

3

4   Statements to the Media:  Request Nos. 190-192, 194-197 and 199

5       In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6   and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7   Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8   to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9   Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10  regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

11  products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

12  Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

13  also contain admissions regarding the origin and conception of Bratz and statements relevant to

14  damages.

15      Larian contends that the requests are overbroad and unduly burdensome, particularly

16  because several of the requests seek publicly available information.  Further, Larian points out

17  that the court has already considered and rejected as overbroad a nearly identical request served

18  on MGA that called for all documents relating to any communications by MGA with any news

19  organization regarding the contested MGA products or the contested Mattel products.  Larian

20  contends that the same reasoning applies to the instant requests.

21      Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

22  199 is denied.  Although several of the requests encompass potentially relevant documents, the

23  requests are overbroad and encompass documents that have little to no relevance to the claims and

24  defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

25  sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

26  Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

27  or damages.

28  //

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT ___3___
PAGE ___23___

1    Furthermore, many of these overbroad requests seek publicly available information that is
2    readily accessible to Mattel for which Larian should not be burdened. To the extent the requested
3    documents and information are not publicly available, such documents and information are
4    marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm.
5    In either case, the burden and expense of searching for and producing responsive documents are
6    unjustified.

7
8    Communications With Mattel Employees: Request No. 198
9        In Request No. 198, Mattel seeks all communications between Larian and any individual
     while the individual was employed by Mattel. Mattel contends that this request is directly
10   relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported
11   burden of production.
12       Larian contends that the request is overbroad and unduly burdensome because it is
13   unrestricted as to time and subject matter. Larian also points out that the court has previously
14   found a similar request overbroad. Larian further contends that employees in the toy industry are
15   likely to maintain contacts with other toy manufacturers, and that a large corporation such as
16   Mattel is likely to have a high number of employees communicating with MGA or its officers,
17   which makes the request more unduly burdensome and unreasonable than it appears on its face.
18       Unlike other requests regarding communications, Request No. 198 is reasonably tailored
19   to the specific and numerous allegations in the case regarding alleged trade secret theft. Although
20   the request is not limited by subject matter, it is limited in other respects to seek relevant
21   documents without imposing an undue burden. The request is limited to communications
22   between Larian (and not MGA or persons acting on his behalf) and individuals employed at
23   Mattel. The request is also limited to only those communications that took place while the
24   individuals were employed at Mattel.
25       Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's
26   allegations of trade secret theft. The alleged trade secret theft began with Bryant's conduct in
27   1999 and continued to 2005. Accordingly, Larian shall produce documents responsive to Request
28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                                              14

                                                     EXHIBIT   3
                                                     PAGE   24

1  No. 198 that are limited to the time frame 1999 to 2005.

2

3  Personal Financial Data:  Request Nos. 207-209 and 269

4         In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks

5  or financial institutions and other banking relationships since January 1, 1999.  In Request No.

6  208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such

7  income for each year from 1999 to the present.  In Request No. 209, Mattel seeks Larian's federal

8  and state tax returns for each year from 1999 to the present.  In Request No. 269, Mattel seeks

9  documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from

10  1999 to the present.

11         Mattel contends that Request No. 207 seeks information reasonably calculated to lead to

12  information showing the timing of payments to Bryant and others, which in turn is relevant to the

13  timing of the development of Bratz and issues of credibility.  Mattel contends that Request Nos.

14  208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial

15  condition, which in turn is relevant to damages.  Further, Mattel contends that it is entitled to

16  information regarding the sources of Larian's income to determine whether they are attributable

17  to the alleged misconduct and thus subject to disgorgement.

18         Larian contends that the requested personal financial information is not relevant to the

19  claims or defenses at issue.  More specifically, Larian contends that neither the names of his

20  banks nor his gross income have any bearing upon either compensatory or punitive damages or

21  Mattel's claim for disgorgement of profits.  Larian further contends that there is no support for

22  Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

23         Larian also contends that all three of the requests overlap substantially with requests

24  Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or

25  burden posed by these requests to him.  Further, Larian contends that the court has previously

26  found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered

27  no reason why the same result should not apply here.

28         Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted.  The

EXHIBIT  3

PAGE  25

1  requests are reasonably calculated to lead to the discovery of admissible evidence relevant to
2  several issues in the case. For example, the requested information is likely to lead to information
3  regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of
4  the creation of Bratz. The requested information is also likely to show Larian's income and net
5  worth, which are relevant to damages. Further, Larian has failed to establish that the requests are
6  unduly burdensome. Although Mattel has sought and obtained broad discovery of financial
7  information from MGA, Mattel is also entitled to seek financial information directly from Larian.

8      Mattel's motion is denied as to Request No. 209, provided that Larian complies with
9  Request Nos. 207, 208 and 269. In light of the discovery of financial information ordered herein
10 and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax
   returns.

11

12 Storage Devices: Request Nos. 222 and 224

13     In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating
14 to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,
15 delete or modify digital information relating to Bratz, Angel, or Bryant. Mattel contends that a
16 request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in
17 electronic form. Mattel also contends that Rule 34 permits a party to obtain and test computer
18 hard drives and other storage devices.

19     Larian contends that the requests are overbroad, unduly burdensome, duplicative, and
20 ignore his privilege and privacy interests. Larian also objects to an inspection of his actual hard
21 drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which
22 states that the amendment of Rule 34 relating to "electronically stored information is not meant to
23 create a routine right of direct access to a party's electronic information system." See
24 Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes. Larian contends that there is no justification for
25 an inspection of his electronic devices because there is no allegation that he improperly deleted
26 documents.

27     Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT __3__
PAGE __26__

1  With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to

2  authorize the routine production of a party's electronic devices. Mattel attempts to justify

3  Request No. 222 by pointing to various instances of alleged destruction of evidence. See Mattel's

4  Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer

5  laptops; "wiping" information from the hard drives of Larian's computer laptops every six

6  months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and

7  destructive testing of Bryant's original Bratz drawings). However, Mattel fails to explain how

8  these alleged instances of evidence destruction justify Request No. 222, other than to assert that it

9  has a right to inspect Larian's storage devices to ensure that relevant information has not been

10  deleted or permanently destroyed. Mattel's stated purpose suggests instead that Mattel is

11  launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal

12  Rules of Civil Procedure. See e.g. Rivera v. NIBCO, Inc., supra. Furthermore, Mattel's stated

13  purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222.

14  Among other things, Request No. 222 encompasses every storage device that Larian has used to

15  copy digital information relating to Bratz. Mattel does not need every CD and DVD containing

16  copies of Bratz-related video and audio content, but that is what the request seeks.

17          Request No. 222 is also duplicative because it requests information that is sought in

18  numerous other requests served on Larian as well as MGA. Mattel has served hundreds of

19  requests for documents and communications relating to Bratz, Angel, and Bryant. To comply

20  with the requests, Larian was required to search for documents in both hard-copy and electronic

21  form. Under the circumstances, it is unnecessary for Larian to also produce the requested storage

22  devices.

23          Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims

24  and defenses in the case, and therefore do not justify the burden of production on Larian.

25  Bryant's Storage Devices: Request Nos. 225, 227 and 228

26          In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents

27  relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT  3
PAGE  27

1   receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2       Larian contends that the requests are improperly directed to him because he does not have

3   personal possession of Bryant's hard drive or storage devices, or other information about those

4   devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5   requests are overbroad and unduly burdensome for the reasons discussed above in connection

6   with Request Nos. 222 and 224.

7       Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8   denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9

MGA Hong Kong and MGA Mexico:  Request Nos. 272 and 273

10      In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

11  Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

12  Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to

13  produce documents sufficient to show the ownership of these entities.

14      Mattel contends that the requests seek information relevant to refute MGA Mexico's

15  personal jurisdiction defense, and which bear on whether the acts of Larian and others are

16  attributable to the entities. Mattel also contends that Larian's (or MGA's) ownership interest in

17  these companies is relevant to net worth. Mattel contends that Larian's supplemental response is

18  inadequate because it would allow Larian to withhold contradictory information and conceal the

19  true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know

20  the ownership of these entities at times when different allegedly wrongful acts took place and to

21  determine if the ownership structure changed as a means of concealing assets or concealing the

22  payments of commercial bribes.

23      Larian contends that these requests should not be made to him, but to the entities

24  themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

25  Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

26  served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

27  burdensome, and that at most, he should only have to produce a list of owners.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

18

EXHIBIT   3
PAGE   28

1    Mattel contends that Larian cannot avoid his duty to respond to these requests simply by
2  saying that the information is obtainable from another source. Further, Mattel contends that
3  Larian has failed to establish that the requests are unduly burdensome.
4    Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied
5  pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable
6  from another source that is more convenient, less burdensome, or less expensive, namely MGA
7  Mexico and MGA Hong Kong. The requests are also overbroad and unduly burdensome.

IV. CONCLUSION

8
9    For the reasons set forth above, it is hereby ordered as follows:
10    1.    At meet and confer sessions held after the filing of this motion, Larian agreed to
11  produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-
12  146, 213, 221 and 223. Accordingly, Larian shall produce, without limitation, all non-privileged
   documents that are responsive to these Requests.
13    2.    With respect to the remaining requests that are at issue in this motion, Larian shall:
14        A.    produce, without limitation, all non-privileged documents that are
15        responsive to Request Nos. 79, 180, 198 (for the time period 1999-2005), 207, 208 and
16        269; and
17        B.    produce, in accordance with his supplemental responses, non-privileged
18        documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and
19        209.
20        C.    Larian may produce documents responsive to Request Nos. 179, 180 and
21        181 in redacted form as provided herein.
22        D.    Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199,
23        209, 222, 224, 225, 227, 228, 272 and 273.
24    3.    Larian shall produce all non-privileged documents that are required by this Order
25  that are in his possession, custody or control and that have not already been produced no later
26  than January 11, 2008.
27    4.    Larian shall produce a privilege log no later than January 15, 2008.
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

EXHIBIT    3
PAGE    29

1         5.    Mattel's request for sanctions is denied.

2         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3    Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5    Dated: December 31, 2007

6                                  HON. EDWARD A. INFANTE (Ret.)
                                      Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                                          20

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT   3
PAGE   30

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 2, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 2, 2008, at San Francisco, California.

Sandra Chan

EXHIBIT    3
PAGE    31

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc
(RNBx), AO279, DISCOVERY, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered by Proctor, Brett on 1/3/2008 at 10:45 AM PST and filed on 1/3/2008

| | |
|---|---|
| **Case Name:** | Carter Bryant v. Mattel Inc |
| **Case Number:** | 2:04-cv-9049 |
| **Filer:** | Mattel Inc |
| **Document Number:** | 1439 |

**Docket Text:**
Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for Sanctions filed by Defendant Mattel Inc re: MOTION to Compel [1092] (Proctor, Brett)

**2:04-cv-9049 Notice has been electronically mailed to:**

Timothy L Alger    timalger@quinnemanuel.com

Christa M Anderson    canderson@kvn.com

Michelle M Campana    michelle.campana@skadden.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Emil W Herich    eherich@kmwlaw.com

Raoul D Kennedy    rkennedy@skadden.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Nathan Meyer    nmeyer@kayescholer.com, dclow@kayescholer.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com

EXHIBIT ___3___
PAGE ___32___

CM/ECF - California Central Distri·*                                    Page 2 of 2

Mark E Overland    moverland@obsklaw.com

Michael H Page    mhp@kvn.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

John B Quinn    johnquinn@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

John Elliot Trinidad    jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mmv@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

John W Keker
Keker & Van Nest
710 Sansome St
San Francisco, CA 94111-1704

Kenneth A Plevan
Skadden Arps Slate Meagher & Flom
4 Times Sq
New York, NY 10036-6522

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\laurakinsey\Desktop\Larian Order.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/3/2008] [FileNumber=5143390-0]
[5a2187944fc1d22750aedb257eb3d8e53a9b8728f71d46135a28ece1a78d4d01e2732
dde016f334ddcc72b8e691e63a2605761dac19ba72309568688b0698f2c]]

EXHIBIT __3__
PAGE __33__

# EXHIBIT 4

RECEIVED

MAR 2 7 2007

CALENDARED

1   DIANA M. TORRES  (S.B. #162284)
    JAMES P. JENAL  (S.B. #180190)
2   O'MELVENY & MYERS LLP
    400 South Hope Street
3   Los Angeles, California 90071-2899
    Telephone: (213) 430-6000
4   Facsimile: (213) 430-6407
    Email:  dtorres@omm.com
5
    DALE M. CENDALI  (admitted pro hac vice)
6   JOHANNA SCHMITT  (admitted pro hac vice)
    O'MELVENY & MYERS LLP
7   Times Square Tower
    7 Times Square
8   New York, New York 10036
    Telephone: (212) 326-2000
9   Facsimile: (212) 326-2061
    Email: dcendali@omm.com
10
    PATRICIA GLASER (S.B. # 55668)
11  CHRISTENSEN, GLASER, FINK,
    JACOBS, WEIL & SHAPIRO LLP
12  10250 Constellation Boulevard, 19ᵗʰ Floor
    Los Angeles, CA 90067
13  Telephone:  (310) 553-3000
    Facsimile:  (310) 556-2920
14  Email: pglaser@chrisglase.com

15  Attorneys for Plaintiff
    MGA Entertainment, Inc.
16

17                    UNITED STATES DISTRICT COURT

18                    CENTRAL DISTRICT OF CALIFORNIA

19                           EASTERN DIVISION

20
    CARTER BRYANT, an individual,          Case No.  CV 04-09049 SGL (RNBx)
21                                         (Consolidated with CV 04-9059 and
                 Plaintiff,                CV 05-2727)
22
           v.                              **MGA'S SECOND SET OF**
23                                         **REQUESTS FOR THE**
    MATTEL, INC., a Delaware Corporation,  **PRODUCTION OF**
24                                         **DOCUMENTS AND THINGS IN**
                 Defendant                 **CASE NO. 05-2727**
25

26  CONSOLIDATED WITH

27  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v.
28  MATTEL, INC.

                                           MGA'S SECOND SET OF REQUESTS FOR THE
                                           PRODUCTION OF DOCUMENTS AND THINGS
                                           IN CASE NO. 05-2727

EXHIBIT  4
PAGE  34

1   PROPOUNDING PARTY:   MGA ENTERTAINMENT, INC.

2   RESPONDING PARTY:   MATTEL, INC.

3   SET NO.              TWO

4   NOS.                116-181

5

6            **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

7        Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff MGA

8 Entertainment, Inc. ("MGA") requests that defendant Mattel, Inc. ("Mattel")

9 produce all documents and tangible things described, in accordance with the

10 Definitions and Instructions set forth below, on Thursday, April 26, 2007, at the

11 offices of O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles,

12 California 90071.

13                      **DEFINITIONS**

14        As used in these Requests:

15       1.    "BRATZ" means and refers to each image, character, logo, doll, toy,

16 accessory, product, packaging or other thing or matter that is or has ever been

17 manufactured, marketed or sold by MGA, or others under license, as part of a line

18 of goods or merchandise commonly known as, or sold and marketed under the

19 "Bratz" trademark or trade dress.

20       2.    "BRYANT" means Carter Bryant.

21       3.    "MACHADO" means Carlos Gustavo Machado Gomez.

22       4.    "TRUEBA" means Mariana Trueba Alamada.

23       5.    "VARGAS" means Pablo Vargas San Jose.

24       6.    "BRAWER" means Ron Brawer.

25       7.    "BRISBOIS" means Janine Brisbois.

26       8.    "MGA" means MGA Entertainment, Inc. and any of its past or present

27 officers, directors, agents, employees, representatives, consultants, attorneys,

28

- 1 -

MGA'S SECOND SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS
IN CASE NO. 05-2727

EXHIBIT   4

PAGE   35

1    parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-

2    in-interest, entities and persons acting in joint venture or partnership relationships

3    with MGA and any others acting on MGA's behalf, pursuant to its authority or

4    subject to its control.

5          9.     "LARIAN" means MGA's Chief Executive Officer Isaac Larian.

6          10.    "MATTEL," "YOU" or "YOUR" means MATTEL, Inc. and any of

7    its past or present officers, directors, agents, employees, representatives,

8    consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-

9    interest and successors-in-interest, entities and persons acting in joint venture or

10   partnership relationships with YOU and any others acting on YOUR behalf,

11   pursuant to YOUR authority or subject to YOUR control.

12         11.    "COMMUNICATION[S]" means any transmission of information

13   from one person or entity to another, including, without limitation, by personal

14   meeting, conversation, letter, telephone, facsimile or electronic mail. Each request

15   that encompasses information relating in any way to communications to, from or

16   within a business or corporate entity is hereby designated to mean, and should be

17   construed to include, all communications by and between representatives,

18   employees, agents or servants of the business or corporate entity.

19         12.    "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

20   Civil Procedure 34, and shall be construed in the broadest sense to mean any and all

21   writings, tangible things and property, of any kind, that are now or that have been in

22   YOUR actual or constructive possession, custody or control, including, but not

23   limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed,

24   punched, copied, recorded, transcribed, graphic or photographic matter of any kind

25   or nature, in, through, or from which information may be embodied, translated,

26   conveyed or stored, whether an original, a draft or copy, however produced or

27   reproduced, whether sent or received or neither, including, but not limited to, notes,

28   memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports,

- 2 -

MGA'S SECOND SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS
IN CASE NO. 05-2727

EXHIBIT __4__

PAGE __36__

1  inter- and intra-office COMMUNICATIONS, work papers, work sheets, work

2  records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets,

3  estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders,

4  telephone records, telegrams, telexes, literature, invoices, contracts, purchase

5  orders, estimates, recordings, transcriptions of recordings, records, books,

6  pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs, video, audio

7  and digital recordings, television commercials, story boards, website or other spot

8  advertisements, movies, movie trailers, prototypes, products, diaries, calendars,

9  charts, drawings, sketches, messages, photographs and data contained in or

10  accessible through any electronic data processing system, including, but not limited

11  to, computer databases, data sheets, data processing cards, computer files and tapes,

12  computer disks, CD-ROMs, computer meta-data, microfilm, microfiche, electronic

13  mail, website and web pages and transcriptions thereof and all other

14  memorializations of any conversations, meetings and conferences, by telephone or

15  otherwise.  The term DOCUMENT also means every copy of a DOCUMENT,

16  where such copy is not an identical duplicate of the original, whether because of

17  deletions, underlinings, showing of blind copies, initialing, signatures, receipt

18  stamps, comments, notations, differences in stationery or any other difference or

19  modification of any kind.

20      13.   "MARKET RESEARCH" means any type of research, study, survey

21  or analysis of consumers or potential consumers of a product or potential product

22  including, without limitation, focus groups, consumer surveys, market analyses,

23  behavioral analyses and consumer research.

24      14.   "INVESTIGATIVE REPORT[S]" means any type of DOCUMENT

25  REFERRING OR RELATING TO an investigation, examination, research, study,

26  survey or analysis into the truth of the matter conducted by any employees, any

27  contractors or any third parties.

28

- 3 -

MGA'S SECOND SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS
IN CASE NO. 05-2727

EXHIBIT ___4___

PAGE ___37___

1      15.    "MGA PRODUCTS" means any and all products offered for sale by

2   MGA Entertainment, Inc. including, without limitation, "Bratz," "4-Ever Best

3   Friends," "Alien Racers," and "Mommy's Little Patient."

4      16.    "MY SCENE MY BLING BLING" means and refers to each image,

5   character, logo, doll, toy, accessory, product, packaging or other thing or matter that

6   is or has ever been manufactured, marketed or sold by MATTEL, or others under

7   license by MATTEL, as part of a line of goods or merchandise commonly known

8   as, or sold and marketed under the name, "My Scene My Bling Bling."

9      17.    "COMPLAINT" means the complaint filed April 13, 2005 in *MGA*

10   *Entertainment, Inc. v. Mattel, Inc.,* CV 05-02727.

11      18.    "ANSWER" means the answer filed May 13, 2005 in *MGA*

12   *Entertainment, Inc. v. Mattel, Inc.,* CV 05-02727.

13      19.    "AMENDED ANSWER" means line 1, page 3 to line 3, page 27 of

14   *Mattel, Inc.'s Amended Answer in Case No. 05-02727 and Counterclaims for: 1.*

15   *Copyright Infringement; 2. Violation of the Racketeer Influenced and Corrupt*

16   *Organizations Act; 3. Conspiracy to Violate the Racketeer Influenced and Corrupt*

17   *Organizations Act; 4. Misappropriation of Trade Secrets; 5. Breach of Contract; 6.*

18   *Intentional Interference with Contract; 7. Breach of Fiduciary Duty; 8. Aiding and*

19   *Abetting Breach of Fiduciary Duty; 9. Breach of Duty of Loyalty; 10. Aiding and*

20   *Abetting Breach of Duty of Loyalty; 11. Conversion; 12. Unfair Competition; and*

21   *13. Declaratory Relief* filed January 12, 2007 in *Carter Bryant v. Mattel, Inc.,* CV

22   04-09049.

23      20.    "COUNTERCLAIM[S]" means line 4, page 27 to page 74 of *Mattel,*

24   *Inc.'s Amended Answer in Case No. 05-02727 and Counterclaims for: 1. Copyright*

25   *Infringement; 2. Violation of the Racketeer Influenced and Corrupt Organizations*

26   *Act; 3. Conspiracy to Violate the Racketeer Influenced and Corrupt Organizations*

27   *Act; 4. Misappropriation of Trade Secrets; 5. Breach of Contract; 6. Intentional*

28   *Interference with Contract; 7. Breach of Fiduciary Duty; 8. Aiding and Abetting*

MGA'S SECOND SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS
IN CASE NO. 05-2727

EXHIBIT   9

PAGE   38

1    *Breach of Fiduciary Duty; 9. Breach of Duty of Loyalty; 10. Aiding and Abetting*

2    *Breach of Duty of Loyalty; 11. Conversion; 12. Unfair Competition; and 13.*

3    *Declaratory Relief* filed January 12, 2007 in *Carter Bryant v. Mattel, Inc.*, CV 04-

4    09049.

5        21.    "PERSON" or "PERSONS" means all natural persons, partnerships,

6    corporations, joint ventures and any kind of business, legal or public entity or

7    organization, as well as its, his or her agents, representatives, employees, officers

8    and directors and anyone else acting on its, his or her behalf, pursuant to its, his or

9    her authority or subject to its, his or her control.

10       22.    "REFERRING OR RELATING TO" should be construed in the

11   broadest possible sense to mean concerning, consisting of, referring to, relating to,

12   describing, discussing, constituting, evidencing, containing, reflecting, mentioning,

13   pertaining to, citing, summarizing, analyzing or bearing any logical or factual

14   connection with the matter requested or described.

15       23.    The singular form includes the plural and vice versa.

16       24.    The terms "any" and "all" are interchangeable.

17       25.    The terms "and" and "or" shall be construed disjunctively and

18   conjunctively, and each shall include the other whenever such dual construction

19   will serve to bring within the scope of any request, information that would

20   otherwise not be within its scope.

21                                **INSTRUCTIONS**

22       1.    YOU are instructed to produce all non-privileged DOCUMENTS in

23   YOUR possession, custody or control. A document is in YOUR "possession,

24   custody, or control" if it is in YOUR physical possession, or if, as a practical

25   matter, YOU have the right, upon request, to obtain possession of the DOCUMENT

26   or a copy thereof from another person or entity who has physical possession of the

27   DOCUMENT.

28

                                    - 5 -

EXHIBIT __4__

PAGE __39__

1    2.    If any DOCUMENT or category of DOCUMENTS is not produced in
2    full, please state with particularity the reason or reasons it is not being produced in
3    full, and describe, to the best of YOUR knowledge, information and belief, and
4    with as much particularity as possible, the DOCUMENT or portions of the
5    DOCUMENT that are not being produced.

6    3.    Each DOCUMENT is to be produced as it is kept in the usual course
7    of business, including all file folders, binders, notebooks, and other devices by
8    which such DOCUMENTS may be organized or separated.

9    4.    If YOU withhold any DOCUMENT, or portion of a DOCUMENT, on
10   grounds that it is protected from discovery by the attorney-client privilege, work
11   product doctrine, or other privilege, please set forth for each DOCUMENT or
12   portion of a DOCUMENT withheld:

13           (a)    The place, approximate date, and manner of recording, creating
14                  or otherwise preparing the DOCUMENT;
15           (b)    The names and organization position, if any, of each author,
16                  sender, and recipient of the DOCUMENT;
17           (c)    A general description of the subject matter of the DOCUMENT;
18           (d)    The basis of any claim of privilege; and
19           (e)    If work-product is asserted, the proceeding for which the
20                  DOCUMENT was created.

21   5.    For any DOCUMENT or category of DOCUMENTS that was, but no
22   longer is, in YOUR possession, custody or control, please describe each such
23   DOCUMENT as completely as possible and provide the following information:

24           (a)    The reason the DOCUMENT is no longer in YOUR possession,
25                  custody or control;
26           (b)    The person or entity, if any, who has possession, custody or
27                  control or, if unknown, so state;

28

- 6 -

EXHIBIT __4__
PAGE __40__

1         (c)    If the DOCUMENT was destroyed or otherwise disposed of,

2                state (i) the manner of disposal (*i.e.* destruction, loss, discarding

3                or other means of disposal); (ii) the date of disposal; (iii) the

4                reason for disposal; (iv) the person authorizing disposal; (v) the

5                person disposing of the DOCUMENT; and (vi) the name and

6                address of the most recent custodian of the DOCUMENT.

7      6.    These Requests impose a continuing obligation subsequent to YOUR

8 initial production to the full extent provided for in Rule 26(e) of the Federal Rules

9 of Civil Procedure.

10

11                     **REQUESTS FOR PRODUCTION**

12 **REQUEST NO. 116:**

13     All DOCUMENTS REFERRING OR RELATING TO the quality and

14 substance of the work done while working for MATTEL by any the following

15 former MATTEL employees:

16     - Carter Bryant,

17     - Carlos Gustova Machado Gomez,

18     - Mariana Trueba Almada,

19     - Pablo Vargas San Jose,

20     - Ron Brawer, and

21     - Janine Brisbois,

22 including but not limited to personnel files, performance reviews, contracts, job

23 descriptions, and interviews.

24 **REQUEST NO. 117:**

25     All DOCUMENTS containing COMMUNICATIONS regarding the

26 resignations of the following former MATTEL employees:

27     - Carter Bryant,

28     - Carlos Gustova Machado Gomez,

MGA'S SECOND SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS
IN CASE NO. 05-2727

EXHIBIT  4
PAGE  41

1  **REQUEST NO. 134:**

2      All DOCUMENTS REFERRING OR RELATING TO YOUR assertion in

3  paragraph 30 of YOUR COUNTERCLAIMS that MGA Entertainment (HK)

4  Limited has maintained regular and continuous contacts with persons in the County

5  of Los Angeles.

6  **REQUEST NO. 135:**

7      All DOCUMENTS REFERRING OR RELATING TO YOUR assertions in

8  paragraph 35 of YOUR COUNTERCLAIMS regarding BRYANT's alleged acts of

9  concealment, such as tampering or defacing documents, including but not limited to

10  the tampered or defaced documents, reports by employees or third parties, and

11  recordings and DOCUMENTS sufficient to identify the employees or third parties

12  with knowledge of the alleged acts of concealment.

13  **REQUEST NO. 136:**

14      All DOCUMENTS REFERRING OR RELATING TO YOUR assertion in

15  paragraph 41 of YOUR COUNTERCLAIMS regarding alleged copying, taking,

16  accessing or modification of proprietary MATTEL documents by MACHADO,

17  TRUEBA AND VARGAS, including but not limited to INVESTIGATIVE

18  REPORTS.

19  **REQUEST NO. 137:**

20      DOCUMENTS sufficient to identify by name and title PERSONS with

21  knowledge of alleged copying, taking, accessing or modification of proprietary

22  MATTEL DOCUMENTS by MACHADO, TRUEBA AND VARGAS.

23  **REQUEST NO. 138:**

24      DOCUMENTS sufficient to identify by name and title PERSONS the

25  supervisors of MACHADO, TRUEBA AND VARGAS.

26  **REQUEST NO. 139:**

27      All DOCUMENTS REFERRING OR RELATING TO YOUR assertion in

28  paragraph 41 of YOUR COUNTERCLAIMS regarding statements by MACHADO,

EXHIBIT __4__

PAGE __42__

MGA'S SECOND SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS
IN CASE NO. 05-2727

1    TRUEBA AND VARGAS concerning their resignations and concerning the

2    identity of their future employer.

3    **REQUEST NO. 140:**

4         All DOCUMENTS REFERRING OR RELATING TO the resignations of

5    MACHADO, TRUEBA AND VARGAS from MATTEL, including but not limited

6    to COMMUNICATIONS REFERRING OR RELATING TO the circumstances

7    surrounding the resignations of MACHADO, TRUEBA AND VARGAS and the

8    reasons for the resignations of MACHADO, TRUEBA AND VARGAS.

9    **REQUEST NO. 141:**

10        All DOCUMENTS REFERRING OR RELATING TO YOUR assertion in

11   paragraphs 44, 48 and 49 of YOUR COUNTERCLAIMS that MACHADO took

12   MATTEL confidential and proprietary information, including but not limited to the

13   DOCUMENTS MACHADO allegedly copied, took, accessed or modified,

14   INVESTIGATIVE REPORTS of the incident, computer records of the incident and

15   the instruments used in the alleged copying, taking, accessing or modification.

16   **REQUEST NO. 142:**

17        All DOCUMENTS REFERRING OR RELATING TO YOUR assertion in

18   paragraphs 45, 48 and 49 of YOUR COUNTERCLAIMS that VARGAS took

19   MATTEL confidential and proprietary information, including but not limited to the

20   DOCUMENTS VARGAS allegedly copied, took, accessed or modified,

21   INVESTIGATIVE REPORTS of the incident, computer records of the incident and

22   the instruments used in the alleged copying, taking, accessing or modification.

23   **REQUEST NO. 143:**

24        All DOCUMENTS REFERRING OR RELATING TO YOUR assertion in

25   paragraphs 46, 48 and 49 of YOUR COUNTERCLAIMS that TRUEBA took

26   MATTEL confidential and proprietary information, including but not limited to the

27   DOCUMENTS TRUEBA allegedly copied, took, accessed or modified,

28

EXHIBIT $^{12}$ - 4

PAGE ___43___

MGA'S SECOND SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS
IN CASE NO. 05-2727

1   INVESTIGATIVE REPORTS of the incident, computer records of the incident and

2   the instruments used in the alleged copying, taking, accessing or modification.

3   **REQUEST NO. 144:**

4        All DOCUMENTS REFERRING OR RELATING TO YOUR assertion in

5   paragraph 47 of YOUR COUNTERCLAIMS that TRUEBA took steps to increase

6   her access to MATTEL's confidential information, including but not limited to any

7   meeting attendance records around the time of TRUEBA's resignation, any records

8   of available meetings and the subject matter of the meetings, any records of

9   TRUEBA's alleged contact with MATTEL employees or MATTEL contractors to

0   receive confidential information, and any records of what TRUEBA did with

1   MATTEL's confidential information.

2   **REQUEST NO. 145:**

3        All DOCUMENTS REFERRING OR RELATING TO YOUR assertion in

4   paragraph 51 of YOUR COUNTERCLAIMS that MACHADO, VARGAS AND

5   TRUEBA attempted to conceal their alleged theft of MATTEL's proprietary

6   information, INVESTIGATIVE REPORTS of the incidents, computer records of

7   the incidents and the instruments used in the incidents.

8   **REQUEST NO. 146:**

19        All DOCUMENTS REFERRING OR RELATING TO the events described

20   in paragraph 53 of YOUR COUNTERCLAIMS regarding MATTEL's notification

21   of Mexican authorities about the alleged theft of MATTEL's trade secret and

22   confidential information, including but not limited to affidavits, declarations,

23   complaints, and evidence filed with the Mexican authorities.

24   **REQUEST NO. 147:**

25        All DOCUMENTS REFERRING OR RELATING TO the events described

26   in paragraph 53 of YOUR COUNTERCLAIMS regarding the seizure at the

27   facilities of MGAE de Mexico, S.R.L. de C.V. in Mexico City by Mexican

28   authorities, including but not limited to the search warrant, any report of the

- 13 -

MGA'S SECOND SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS
IN CASE NO. 05-2727

EXHIBIT ___4___

PAGE ___44___

seizure, any report regarding the materials seized, any determination by the Mexican authorities regarding the materials seized, and any DOCUMENTS from the facilities of MGAE de Mexico, S.R.L. de C.V., which were taken during the seizure.

**REQUEST NO. 148:**

All DOCUMENTS REFERRING OR RELATING TO MATTEL's involvement in the seizure of materials at the facilities of MGAE de Mexico, S.R.L. de C.V. in Mexico City by Mexican authorities.

**REQUEST NO. 149:**

All DOCUMENTS REFERRING OR RELATING TO whether the items seized by Mexican authorities from the facilities of MGAE de Mexico, S.R.L. de C.V. in Mexico City belonged to MATTEL.

**REQUEST NO. 150:**

All DOCUMENTS REFERRING OR RELATING TO YOUR assertion in paragraph 59 of YOUR COUNTERCLAIMS regarding BRAWER's response to a survey from President of MATTEL Brands, Matt Bousquette, including but not limited to the DOCUMENT containing the survey that was sent to BRAWER, the DOCUMENT containing BRAWER's alleged response, and any compilation of survey responses.

**REQUEST NO. 151:**

All DOCUMENTS REFERRING OR RELATING TO YOUR assertion in paragraph 62 of YOUR COUNTERCLAIMS regarding BRAWER's alleged instruction to his assistant to print MATTEL's 2004 Sales Plan for one of MATTEL's significant customers, including but not limited to the DOCUMENT the assistant was instructed to print, any DOCUMENT containing BRAWER's instruction, and any calendar of meetings that BRAWER was scheduled to attend or was allowed to attend regarding the customer connected to the sales plan referenced in paragraph 62 of YOUR COUNTERCLAIMS.

- 14 -

1    **REQUEST NO. 158:**

2        All DOCUMENTS REFERRING OR RELATING TO BRISBOIS'

3    MATTEL exit interview, including but not limited to reports, memoranda, notes,

4    and recordings from or RELATING TO the exit interview.

5    **REQUEST NO. 159:**

6        All DOCUMENTS REFERRING OR RELATING TO YOUR assertion in

7    paragraph 74 of YOUR COUNTERCLAIMS regarding BRISBOIS' alleged

8    copying, taking, accessing or modification of MATTEL confidential and

9    proprietary information, including but not limited to the DOCUMENTS BRISBOIS

10   allegedly copied, took, accessed or modified, INVESTIGATIVE REPORTS of the

11   incident, computer records of the incident and the instruments used in the alleged

12   copying, taking, accessing or modification.

13   **REQUEST NO. 160:**

14       All DOCUMENTS REFERRING OR RELATING TO the events alleged in

15   paragraph 75 of YOUR COUNTERCLAIMS regarding MATTEL's notification of

16   Canadian law enforcement authorities about BRISBOIS' alleged theft of

17   MATTEL's trade secret and confidential information, including but not limited to

18   affidavits, declarations, complaints, and evidence filed with the Canadian law

19   enforcement authorities.

20   **REQUEST NO. 161:**

21       All DOCUMENTS REFERRING OR RELATING TO the events alleged in

22   paragraph 75 of YOUR COUNTERCLAIMS regarding the seizure by Canadian

23   law enforcement authorities of a thumb drive from BRISBOIS, including but not

24   limited to the search warrant, any report of the seizure, any report regarding the

25   materials seized, any determination by the Canadian law enforcement authorities

26   regarding the materials seized, and any DOCUMENTS taken during the seizure.

27

28

EXHIBIT 16 - 4
PAGE    46

MGA'S SECOND SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS
IN CASE NO. 05-2727

**REQUEST NO. 162:**

All DOCUMENTS REFERRING OR RELATING TO MATTEL's involvement in the seizure by Canadian law enforcement authorities of a thumb drive from BRISBOIS referenced in paragraph 75 of YOUR COUNTERCLAIMS.

**REQUEST NO. 163:**

All DOCUMENTS REFERRING OR RELATING TO what was contained on the thumb drive that the Canadian law enforcement authorities seized from BRISBOIS referenced in paragraph 75 of YOUR COUNTERCLAIMS.

**REQUEST NO. 164:**

All DOCUMENTS REFERRING OR RELATING TO whether the DOCUMENTS contained on the thumb drive that the Canadian law enforcement authorities seized from BRISBOIS, mentioned in paragraph 75 of YOUR COUNTERCLAIMS, belong or belonged to MATTEL.

**REQUEST NO. 165:**

All DOCUMENTS REFERRING OR RELATING TO YOUR assertion in paragraph 75 of YOUR COUNTERCLAIMS regarding BRISBOIS' access or modification of DOCUMENTS on the thumb drive seized by Canadian law enforcement authorities, including but not limited to the DOCUMENTS BRISBOIS allegedly access and modified, INVESTIGATIVE REPORTS of the BRISBOIS' access and modification of the DOCUMENTS, computer records of the alleged access and modification and the instruments used in the alleged access and modification.

**REQUEST NO. 166:**

All DOCUMENTS REFERRING OR RELATING TO or contained in the personnel files of the 25 former MATTEL employees from MATTEL's United States operations referenced in paragraph 77 of YOUR COUNTERCLAIMS, including but not limited to performance reviews, contracts, job descriptions, and interviews.



- 17 -

**REQUEST NO. 167:**

All DOCUMENTS REFERRING OR RELATING TO YOUR assertion in paragraph 77 of YOUR COUNTERCLAIMS regarding the alleged copying, taking, accessing or modification of MATTEL confidential and proprietary information by former MATTEL employees that subsequently became MGA employees, including but not limited to the DOCUMENTS allegedly copied, taken, accessed or modified by former MATTEL employees that subsequently became MGA employees, INVESTIGATIVE REPORTS of these incidents, computer records of these incidents and the instruments used in the alleged copying, taking, accessing or modification.

**REQUEST NO. 168:**

All DOCUMENTS REFERRING OR RELATING TO YOUR COMMUNICATIONS with any third party regarding MY SCENE MY BLING BLING product with real gems, including but not limited to advertisements, announcements, memoranda, conversations, offers for sale, and purchase orders, including but not limited to any such COMMUNICATIONS made before May 12, 2006.

**REQUEST NO. 169:**

All DOCUMENTS REFERRING OR RELATING TO YOUR assertion in paragraph 80 of YOUR COUNTERCLAIMS regarding misrepresentations that LARIAN made to retailers concerning MY SCENE MY BLING BLING.

**REQUEST NO. 170:**

All DOCUMENT REFERRING OR RELATING TO COMMUNICATIONS LARIAN had with third parties concerning any and all products made, sold or offered for sale by MATTEL.

**REQUEST NO. 171:**

All DOCUMENTS, including but not limited to COMMUNICATIONS, REFERRING OR RELATING TO any third party's decision not to buy, license,

- 18 -

EXHIBIT 4
PAGE 48

MGA'S SECOND SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS
IN CASE NO. 05-2727

1    of PERSONS who access confidential information, and procedures for accessing

2    confidential information.

3    **REQUEST NO. 177:**

4       All DOCUMENTS REFERRING OR RELATING TO the steps and

5    procedures that MATTEL takes to keep MATTEL's confidential information

6    confidential.

7    **REQUEST NO. 178:**

8       All DOCUMENTS REFERRING OR RELATING TO any investigation,

9    surveillance, inspection, inquiry, survey or analysis into the activities, including but

10    not limited to electronic and computer related activities, alleged in YOUR

11    COUNTERCLAIMS.

12    **REQUEST NO. 179:**

13       DOCUMENTS sufficient to identify which MATTEL employees have access

14    to confidential or proprietary MATTEL information.

15    **REQUEST NO. 180:**

16       All DOCUMENTS REFERRING OR RELATING TO changes to store

17    layouts or displays for Mattel products in relation to MGA products from January 1,

18    2001 to the present.

19    **REQUEST NO. 181:**

20       All DOCUMENTS tending to support or refute any of the allegations or

21    statements in YOUR COUNTERCLAIMS, not produced in response to another

22    Request.

23

24       Dated:  March 27, 2007         O'MELVENY & MYERS LLP

25

26

27                             B. Jennifer Glad

28                      Attorney for MGA Entertainment, Inc.

EXHIBIT __4__    - 20 -
PAGE __49__

MGA'S SECOND SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS
IN CASE NO. 05-2727

1

## PROOF OF SERVICE

2

I, C. Kelley Canning, declare:

3

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles,

4
California 90071-2899. On March 27, 2007, I served the within document(s):

5
**MGA'S SECOND SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS IN CASE NO. 05-2727**

6

7
☒     by causing to be personally served the document(s) listed above to the person(s) listed below.

8
Michael T. Zeller, Esq.

9
Timothy Alger, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor

10
Los Angeles, CA 90017

11
☒     by placing the document(s) listed above in a sealed envelope with postage thereon

12
fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and

13
processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in

14
the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is

15
more than one day after date of deposit for mailing in affidavit.

16
Keith A. Jacoby, Esq.                      Patricia Glaser, Esq.

17
Littler Mendelson, P.C.                    Christensen, Glaser, Fink, Jacobs,
2049 Century Park East,                    Weil & Shapiro, LLP

18
Fifth Floor                                10250 Constellation Blvd.,
Los Angeles, CA 90067                      19th Floor

19
Los Angeles, CA 90067

20

21
I declare under penalty of perjury under the laws of the United States that the above is true and correct.

22

Executed on March 27, 2007, at Los Angeles, California.

23

24

25
_C. Kelley Canning_
C. Kelley Canning

26
LA2:826706

27

28

EXHIBIT ___4___     - 21 -     MGA'S SECOND SET OF REQUESTS FOR
PAGE ___50___                  THE PRODUCTION OF DOCUMENTS AND
                               THINGS IN CASE NO. 05-2727

1                **PROOF OF PERSONAL SERVICE**

2            I am a citizen of the United States and employed in the County of Los

3   Angeles, State of California, by Nationwide Legal, Inc., whose address is 316 W. 2nd

4   Street, Suite 705, Los Angeles, CA 90012. I am over the age of eighteen years and not a

5   party to the within action. On March 27, 2007, I personally served the following:

6         **MGA'S SECOND SET OF REQUESTS FOR THE**
         **PRODUCTION OF DOCUMENTS AND THINGS IN**
7         **CASE NO. 05-2727**

8   by delivering a copy thereof to the office of the following, and either handing the copy to

9   or leaving it with the _____ of the office thereof:

10

11                  **Service List**

12                **Michael T. Zeller, Esq.**
                **Timothy Alger, Esq.**
13           **QUINN EMANUEL URQUHART**
           **OLIVER & HEDGES, LLP**
14         **865 Figueroa Street, 10th Floor**
        **Los Angeles, California 90017**
15

16

17           I declare under penalty of perjury under the laws of the United States that

18   the above is true and correct. Executed on March 27, 2007, at Los Angeles, California.

19

20          SIGNATURE: _____

21          PRINTED NAME: _____

22   LA2:826708

23

24

25

26

27

28

EXHIBIT __4__
PAGE __5__

MGA'S SECOND SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS AND THINGS
IN CASE NO. 05-2727

# EXHIBIT 5

1 | THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 300 South Grand Avenue
Los Angeles, CA 90071-3144
3 | Telephone: (213) 687-5000
Facsimile: (213) 687-5600
4 | E-mail: tnolan@skadden.com

5 | RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | Four Embarcadero Center, Suite 3800
San Francisco, CA 94111
7 | Telephone: (415) 984-6400
Facsimile: (415) 984-2698
8 | E-mail: rkennedy@skadden.com

9 | Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
10 | (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11 | **UNITED STATES DISTRICT COURT**

12 | **CENTRAL DISTRICT OF CALIFORNIA**

13 | **EASTERN DIVISION**

| | |
|---|---|
| 14 CARTER BRYANT, an individual | ) CASE NO. CV 04-9049 SGL (RNBx) |
| 15 Plaintiff, | ) Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| 16 v. | ) **MGA'S SEVENTH SET OF** |
| 17 MATTEL, INC., a Delaware corporation | ) **REQUESTS FOR THE PRODUCTION OF** |
| 18 Defendant. | ) **DOCUMENTS AND THINGS IN CASE NO. 05-2727** |
| 19 | ) |
| 20 | ) Honorable Stephen G. Larson Courtroom 1 |
| 21 | ) |
| 22 Consolidated with MATTEL, INC. v. BRYANT and MGA | ) |
| 23 ENTERTAINMENT, INC. v. MATTEL, INC. | ) |
| 24 | |

25 | **PROPOUNDING PARTY:**   **MGA ENTERTAINMENT, INC.**

26 | **RESPONDING PARTY:**   **MATTEL, INC.**

27 | **SET NUMBER:**   **SEVEN**

28 | **NOs.:**   **572-766**

11-29

MGA'S SEVENTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS NO. CV 05-2727 SGL (RNBx)

EXHIBIT __5__

PAGE __52__

1     **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2     Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff MGA

3 Entertainment, Inc. ("MGA") requests that defendant Mattel, Inc. ("Mattel") produce

4 all DOCUMENTS and tangible things described, in accordance with the Definitions

5 and Instructions set forth below, at 9:00 a.m. on December __, 2007, at the offices of

6 Skadden, Arps, Slate, Meagher & Flom LLP, 300 South Grand Avenue, Los Angeles,

7 California 90071.

8                        **DEFINITIONS**

9     As used in these Requests:

10     1.    "4-EVER BEST FRIENDS" means and refers to each image, character,

11 logo, doll, toy, accessory, product, packaging, or other thing or matter that is or has

12 ever been manufactured, marketed or sold by MGA, or others under license by MGA,

13 as part of a line of goods or merchandise commonly known as, or sold and marketed

14 under the name "4-Ever Best Friends."

15     2.    "ACTION" shall mean this action now consolidated under Case No. 04-

16 9049 before the Hon. Stephen Larson and formerly <u>Mattel v. Bryant, Inc.</u>, first filed

17 in Los Angeles County Superior Court; <u>Bryant v. Mattel, Inc.</u>; and <u>MGA</u>

18 <u>Entertainment, Inc. v. Mattel, Inc.</u>; and all counterclaims, cross-claims and defenses

19 therein.

20     3.    "ACCELERACERS" means and refers to each image, character, logo,

21 doll, toy, accessory, product, packaging or other thing or matter that is or has ever

22 been manufactured, marketed or sold by MATTEL, or others under license by

23 MATTEL, as part of a line of goods or merchandise commonly known as, or sold

24 and marketed under the name "AcceleRacerS," "Accelleracers," or "Acceleracers."

25     4.    "AMERICAN GREETINGS" means American Greetings Properties

26 and any of its past or present officers, directors, employees, parents, subsidiaries,

27 divisions, affiliates, predecessors-in-interest, and joint venture partners..

28

EXHIBIT   5
PAGE   53

1    5.    "ART ATTACKS" means and refers to Art Attacks Ink, LLC and any
2 of its past or present officers, directors, employees, parents, subsidiaries, divisions,
3 affiliates, predecessors-in-interest, and joint venture partners, and any others acting
4 Art Attacks Ink, LLC's behalf, pursuant to its authority or subject to its control,
5 including but not limited to, JoAnne Mauck and Byron Mauck.
6    6.    "BARBIE" means and refers to each image, character, logo, doll, toy,
7 styling head, plush toy, play set, accessory, product, packaging or any other thing
8 that is or has ever been manufactured, marketed or sold by YOU, or others under
9 licensed by YOU, as part of a line of goods or merchandise commonly known as, or
10 sold and marketed under the name "Barbie."
11    7.    "BRATZ" means and refers to each image, character, logo, doll,
12 fashion doll, plush toy, styling head, toy, accessory, product, packaging, theme, or
13 other thing or matter that is or has ever been manufactured, marketed or sold by
14 MGA, or others under license, as part of a line of goods or merchandise commonly
15 known as, or sold and marketed under the "Bratz" trademark or trade dress.
16    8.    "BRAWER" means Ron Brawer individually.
17    9.    "BRYANT" means Carter Bryant individually.
18    10.   "CITYWORLD" means Cityworld International (HK) Ltd. and any of
19 its past or present officers, directors, employees, parents, subsidiaries, divisions,
20 affiliates, predecessors-in-interest, and joint venture partners.
21    11.   "COLLECTIBLES GROUP" means "Barbie Collectibles" as
22 understood by Lisa S. Freed in her deposition of May 3, 2007, referenced at 128:18-
23 25.
24    12.   "COMMUNICATION[S]" means any transmission of information from
25 one person or entity to another, including, without limitation, by personal meeting,
26 conversation, letter, telephone, facsimile or electronic mail.  Each request that
27 encompasses information relating in any way to communications to, from or within a
28

EXHIBIT  5
PAGE  54

1 | business or corporate entity is hereby designated to mean, and should be construed to
2 | include, all communications by and between representatives, employees, agents or
3 | servants of the business or corporate entity.

4 |   13.   "CONFLICT OF INTEREST QUESTIONNAIRE" shall mean any form
5 | of employment agreement concerning, *inter alia*, relations, if any, between Mattel's
6 | employees, suppliers, and/or competition, whether known by the title "Conflict of
7 | Interest Questionnaire" or any other title, including without limitation the form of
8 | Conflict of Interest Questionnaire entitled "Conflict of Interest Questionnaire"
9 | executed by BRYANT on or about January 4, 1999.

10 |   14.   "CONTESTED MATTEL PRODUCT(S)" means all MATTEL
11 | products at issue in this ACTION, including, but not limited to, MY SCENE female
12 | fashion dolls and their packaging, products in the MY SCENE "Chillin' Out",
13 | "Night on the Town", "Jammin' in Jamaica", and "Bling Bling" themes, MY
14 | SCENE plush pets and their packaging, MY SCENE "Stylin' Heads," MY SCENE
15 | "Sound Lounge" playset and packaging, "Wee 3 Friends" dolls and packaging,
16 | LITTLE MOMMY and ACCELERACERS.

17 |   15.   "COUNTERCLAIMS" or "COUNTERCLAIM" means Mattel, Inc.'s
18 | Second Amended Answer and Counterclaims for: 1. Copyright Infringement; 2.
19 | Violation of the Racketeer Influenced and Corrupt Organizations Act; 3. Conspiracy
20 | to Violate the Racketeer Influenced and Corrupt Organizations Act; 4.
21 | Misappropriation of Trade Secrets; 5. Breach of Contract; 6. Intentional Interference
22 | with Contract; 7. Breach of Fiduciary Duty; 8. Aiding and Abetting Breach of
23 | Fiduciary Duty; 9. Breach of Duty of Loyalty; 10. Aiding and Abetting Breach of
24 | Duty of Loyalty; 11. Conversion; 12. Unfair Competition; and 13. Declaratory Relief
25 | filed July 12, 2007, in MGA v. Mattel, Inc., CV 05-02727, including any amendment
26 | or supplement thereto.

27

28

EXHIBIT  5
PAGE  55

1    16.   "DIVA STARZ" means and refers to each image, character, logo, doll,

2 toy, accessory, product, packaging or any other thing that is or has ever been

3 designed, developed, manufactured, marketed or sold by MATTEL, or others under

4 license by MATTEL, as part of a project or line of goods or merchandise commonly

5 known as, or sold and marketed under the name "Diva Starz."

6    17.   "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

7 Civil Procedure 34, and shall be construed in the broadest sense to mean any and all

8 writings, tangible things and property, of any kind, that are now or that have been in

9 YOUR actual or constructive possession, custody or control, including, but not

10 limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed,

11 punched, copied, recorded, transcribed, graphic or photographic matter of any kind

12 or nature, in, through, or from which information may be embodied, translated,

13 conveyed or stored, whether an original, a draft or copy, however produced or

14 reproduced, whether sent or received or neither, including, but not limited to, notes,

15 memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports,

16 inter- and intra-office COMMUNICATIONS, work papers, work sheets, work

17 records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets,

18 estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders,

19 telephone records, telegrams, telexes, literature, invoices, contracts, purchase orders,

20 estimates, recordings, transcriptions of recordings, records, books, pamphlets,

21 periodicals, publications, papers, tapes, DVDs, video CDs, video, audio and digital

22 recordings, television commercials, story boards, website or other spot

23 advertisements, movies, movie trailers, prototypes, products, diaries, calendars,

24 charts, drawings, sketches, messages, photographs and data contained in or

25 accessible through any electronic data processing system, including, but not limited

26 to, computer databases, data sheets, data processing cards, computer files and tapes,

27 computer disks, CD-ROMs, computer metadata, microfilm, microfiche, electronic

28



EXHIBIT   5

PAGE   56

1   mail, website and web pages and transcriptions thereof and all other

2   memorializations of any conversations, meetings and conference, by telephone or

3   otherwise. The term DOCUMENT also means every copy of a DOCUMENT, where

4   such copy is not an identical duplicate of the original, whether because of deletions,

5   underlinings, showing of blind copies, initialing, signatures, receipt stamps,

6   comments, notations, differences in stationery or any other difference or

7   modification of any kind.

8       18.   "EARLY LIGHT" means the toy manufacturer Early Light Industrial

9   Company Limited and any of its past or present officers, directors, employees,

10   parents, subsidiaries, divisions, affiliates, predecessors-in-interest, and joint venture

11   partners.

12       19.   "EMPLOYEE INVENTIONS AGREEMENT" shall mean any form of

13   Mattel employment agreement concerning, *inter alia*, (i) ownership of inventions,

14   and (ii)(a) trade secrets and/or (iii) conflicts, whether known by the title "Employee

15   Confidential Information and Inventions Agreement" or any other title, including

16   without limitation the form of Employee Inventions Agreement entitled "Employee

17   Confidential Information and Inventions Agreement" executed by BRYANT on or

18   about January 4, 1999.

19       20.   "FACILITIES GROUP" means the "Facilities" as understood by Lisa S.

20   Freed in her deposition of May 3, 2007, referenced at 129:13-130:13.

21       21.   "FISHER-PRICE," means Fisher-Price, Inc. and any of its past or

22   present officers, directors, employees, parents, subsidiaries, divisions, affiliates,

23   predecessors-in-interest, and joint venture partners.

24       22.   "FRED LARIAN" means Fred Larian, also known as Farhad Larian.

25       23.   "GLAMERMAIDS" means and refers to each image, character, logo,

26   toy, doll, fashion doll, accessory, product, packaging or any other thing that is or has

27   ever been designed, developed, manufactured, marketed or sold by MATTEL, or

28

EXHIBIT __5__
PAGE __57__

1 others under license by MATTEL, as part of a project or a line of goods or
2 merchandise commonly known or referred to as, or sold and marketed under the
3 name "Glamermaids," or "Glammermaids."

4     24.    "HASBRO" means Hasbro, Inc. and any of its past or present officers,
5 directors, employees, parents, subsidiaries, divisions, affiliates, predecessors-in-
6 interest, and joint venture partners.

7     25.    "HOLLY HOBBIE" means and refers to each image, character, logo,
8 doll, toy, accessory, product, packaging, or other thing or matter that is or has ever
9 been manufactured, marketed or sold by AMERICAN GREETINGS, or others under
10 license by AMERICAN GREETINGS, as part of a line of goods or merchandise
11 commonly known as, or sold and marketed under the name "Holly Hobbie."

12     26.    "HOT WHEELS" means and refers to each image, character, logo, doll,
13 toy, accessory, product, packaging, or other thing or matter that is or has ever been
14 manufactured, marketed or sold by MATTEL, or others under license by MATTEL,
15 as part of a line of goods or merchandise commonly known as, or sold and marketed
16 under the name "Hot Wheels."

17     27.    "LARIAN" means MGA's Chief Executive Officer Isaac Larian.

18     28.    "LITTLE MOMMY" means and refers to each image, character, logo,
19 doll, toy, accessory, product, packaging, or other thing or matter that is or has ever
20 been manufactured, marketed or sold by MATTEL, or others under license by
21 MATTEL, as part of a line of goods or merchandise commonly known as, or sold
22 and marketed under the name "Little Mommy."

23     29.    "LITTLE TIKES" means and refers to each image, character, logo, doll,
24 toy, accessory, product, packaging, or other thing or matter that is or has ever been
25 manufactured, marketed or sold by MGA, or others under license by MGA, as part of
26 a line of goods or merchandise commonly known as, or sold and marketed under the
27 name "Little Tikes."

28

EXHIBIT   5
PAGE   58

1    30.   "MATTEL," "YOU," or "YOUR" means the party Mattel, Inc. and any

2 of its past or present officers, directors, employees, parents, subsidiaries, divisions,

3 affiliates, predecessors-in-interest, and joint venture partners.

4    31.   "MATTEL LITIGATION" shall mean the action now pending in the

5 U.S. District Court for the Central District of California (Eastern District),

6 consolidated under Case No. 04-9049 SGL (RNBx) before the Hon. Stephen Larson

7 and formerly Mattel v. Bryant, Inc., first filed in Los Angeles County Superior Court;

8 Bryant v. Mattel, Inc.; and MGA Entertainment, Inc. v. Mattel, Inc.; and all

9 counterclaims, cross-claims and defenses therein.

10    32.   "MGA" means MGA Entertainment, Inc. and any of its past or present

11 officers, directors, employees, parents, subsidiaries, divisions, affiliates,

12 predecessors-in-interest, and joint venture partners.

13    33.   "MGA LAWSUIT" means any lawsuit, litigation, arbitration or other

14 legal proceeding to which MGA is or was a party, excluding this ACTION.

15    34.   "MY SCENE" means and refers to each image, character, logo, doll,

16 fashion doll, toy, styling head, plush toy, play set, accessory, product, packaging or

17 any other thing that is or has ever been manufactured, marketed or sold by YOU, or

18 others under licensed by YOU, as part of a line of goods or merchandise commonly

19 known as, or sold and marketed under the name "My Scene."

20    35.   "MY SCENE DOLL" means any fashion doll that is or has ever been

21 distributed, marketed, sold or offered for sale under the name "My Scene" or as part

22 of the "My Scene" line, including separate themes.

23    36.   "MY SCENE LICENSE" means any license that REFERS OR

24 RELATES TO any MY SCENE PRODUCT.

25    37.   "MY SCENE PRODUCT" means any product, whether two-

26 dimensional or three-dimensional, and whether in tangible, digital, electronic or

27 other form: (i) that is or has ever been distributed, marketed or sold under the name

28

EXHIBIT   5
PAGE    59

1 │ "My Scene" or as part of the "My Scene" line; (ii) that depicts, incorporates,
2 │ embodies, consists of or REFERS OR RELATES TO MY SCENE; and/or (iii) that
3 │ is or has ever been distributed, marketed or sold in any packaging that includes the
4 │ name "My Scene" or depicts, incorporates, embodies, consists of or REFERS OR
5 │ RELATES TO MY SCENE.

6 │      38.   "PERSON[S]" means any or all entities, including but not limited to,
7 │ any or all individuals, single proprietorships, associations, companies, firms,
8 │ partnerships, joint ventures, corporations, employees or former employees, or any
9 │ other business, governmental, or labor entity, and any divisions, departments, or
10 │ other units thereof.

11 │      39.   "POLLY POCKET" means and refers to each image, character, logo,
12 │ doll, toy, plush toy, styling head, accessory, product, packaging, or other thing or
13 │ matter that is or has ever been manufactured, marketed or sold by MATTEL, or
14 │ others under license by MATTEL, as part of a line of goods or merchandise
15 │ commonly known as, or sold and marketed under the name "Polly Pocket."

16 │      40.   "REFERRING OR RELATING TO" should be construed in the
17 │ broadest possible sense to mean concerning, consisting of, referring to, relating to,
18 │ describing, discussing, constituting, evidencing, containing, reflecting, mentioning,
19 │ pertaining to, citing, summarizing, analyzing or bearing any logical or factual
20 │ connection with the matter discussed.

21 │      41.   "RELEVANT TIME PERIOD" means the period from January 1, 1998
22 │ through the present.

23 │      42.   "RETAILERS" means any entity which makes any of the
24 │ CONTESTED MATTEL PRODUCTS available for sale to the public, whether in
25 │ brick-and-mortar stores or online, including, but not limited to, Toys "R" Us, Inc.,
26 │ Wal-Mart Stores, Inc., Target Corporation, KB Toys, Inc., or Amazon.com, and any
27 │
28 │

EXHIBIT   5
PAGE    60

1 of their past or present officers, directors, employees parents, subsidiaries, divisions,

2 affiliates, predecessors-in-interest, or joint venture partners.

3       43.     "SKU #" means Stock Keeping Unit number.

4       44.     "S:\MATTEL" means MATTEL's file server(s) on which electronic

5 files are kept, including, but not limited to, pathways such as

6 file://S:\Mattel\Larian\Larian%202000-2002.htm.

7       45.     "THIS ACTION" refers to the MATTEL LITIGATION, including

8 *Mattel, Inc. v. Bryant*, Case No. CV 04-9059 SGL (RNBx), filed on April 27, 2004

9 and all cases consolidated or coordinated therewith.

10      46.     "UBISOFT" means Ubisoft Entertainment and any of its past or present

11 officers, directors, employees, parents, subsidiaries, divisions, affiliates,

12 predecessors-in-interest, and joint venture partners.

13      47.     "UBISOFT LITIGATION" shall mean the action captioned MGA

14 Entertainment, Inc. v. Ubisoft Entertainment, S.A., and related cross-action which

15 was filed with the American Arbitration Association, AAA Claim No. 50 T 133

16 00467, and presided over by Arbitrator John Fellas.

17      48.     "WEE 3 FRIENDS" means and refers to each image, character, logo,

18 doll, toy, accessory, product, packaging, or other thing or matter that is or has ever

19 been manufactured, marketed or sold by MATTEL, or others under license by

20 MATTEL, as part of a line of goods or merchandise commonly known as, or sold

21 and marketed under the name "Wee 3 Friends."

22      49.     The singular form includes the plural, and vice versa.

23      50.     The terms "any" and "all" are interchangeable.

24      51.     The terms "and" and "or" shall be construed disjunctively and

25 conjunctively, and each shall include the other whenever such dual construction will

26 serve to bring within the scope of any Request, DOCUMENTS that would otherwise

27 not be within its scope.

28



EXHIBIT 5
PAGE 61

**REQUEST NO. 656**

DOCUMENTS sufficient to determine total sales, revenues, royalties, costs of goods sold and any other costs attributable to net profits REFERRING TO OR RELATING TO each POLLY POCKET product, broken down by SKU #, from 2001 to the present.

**REQUEST NO. 657**

DOCUMENTS sufficient to determine total sales, revenues, royalties, costs of goods sold and any other costs attributable to net profits REFERRING TO OR RELATING TO each MY SCENE product, broken down by SKU #, from 2001 to the present.

**REQUEST NO. 658**

All documents REFERRING OR RELATING TO YOUR contention in Paragraph 37 of YOUR COUNTERCLAIM that "MGA elected to steal Mattel's plans, strategy and business information for the Mexican market and materials related to Mattel's worldwide business strategies."

**REQUEST NO. 659**

All documents REFERRING OR RELATING TO YOUR contention in Paragraph 37 of YOUR COUNTERCLAIM that "MGA and Larian approached three employees of Mattel's Mexican subsidiary ("Mattel Mexico"), enticed them to steal Mattel's most sensitive business planning materials, and then hired them to assist in establishing and running MGA's new Mexican subsidiary."

EXHIBIT ___5___
PAGE ___42___

**REQUEST NO. 660**

All documents REFERRING OR RELATING TO YOUR contentions in Paragraph 42 of YOUR COUNTERCLAIM that "Mattel discovered that Machado, Trueba and Vargas had been in frequent telephonic and e-mail contact with MGA personnel, including Larian, for over three months prior to their resignations."

**REQUEST NO. 661**

All documents REFERRING OR RELATING TO the American Online e-mail account with the address plot04@aol.com as alleged in Paragraph 42 of YOUR COUNTERCLAIM.

**REQUEST NO. 662**

All documents REFERRING OR RELATING TO YOUR contention in Paragraph 43 of YOUR COUNTERCLAIM that "prior to their resignations, Larian and others at MGA directed Machado, Trueba and Vargas to steal virtually all Mattel confidential and proprietary information that they could access and bring it [sic] with them to MGA."

**REQUEST NO. 663**

All documents REFERRING OR RELATING TO YOUR contentions in Paragraph 44 of YOUR COUNTERCLAIM.

EXHIBIT ___5___
PAGE ___63___

**REQUEST NO. 664**

All documents REFERRING OR RELATING TO YOUR contentions in Paragraph 45 of YOUR COUNTERCLAIM.

**REQUEST NO. 665**

All documents REFERRING OR RELATING TO YOUR contention in Paragraph 46 of YOUR COUNTERCLAIM that "Two days before her resignation, she [Trueba] contacted both a Mattel employee located in El Segundo, California and Mattel's advertising agency to request updated confidential information about advertising plans for BARBIE."

**REQUEST NO. 666**

All documents REFERRING OR RELATING TO YOUR contention in Paragraph 46 of YOUR COUNTERCLAIM that "Trueba acted at the direction of MGA and Larian and did so in order to obtain further information that would allow MGA to obtain unfair competitive advantage over Mattel."

**REQUEST NO. 667**

All documents REFERRING OR RELATING TO YOUR contentions in Paragraph 48 of YOUR Counterclaim.

**REQUEST NO. 668**

All documents REFERRING OR RELATING TO YOUR contentions in Paragraph 49 of YOUR Counterclaim.

EXHIBIT __5__
PAGE __64__

**REQUEST NO. 669**

All documents REFERRING OR RELATING TO YOUR contentions in Paragraph 51 of YOUR Counterclaim.

**REQUEST NO. 670**

All documents REFERRING OR RELATING TO YOUR contention in Paragraph 70 of YOUR Counterclaim that "In an effort to increase its market share and sales in Canada and elsewhere, MGA stole Mattel trade secrets regarding Mattel's customers, sales, projects, advertising and strategy, not only for Canada, but the United States and the rest of the world."

**REQUEST NO. 671**

All documents REFERRING OR RELATING TO YOUR contentions in Paragraph 74 of YOUR Counterclaim.

**REQUEST NO. 672**

To the extent not already requested or produced, ALL DOCUMENTS REFERRING OR RELATING TO the contentions in YOUR COUNTERCLAIMS.

**REQUEST NO. 673**

To the extent not already requested or produced, ALL DOCUMENTS REFERRING OR RELATING TO YOUR contentions in this ACTION.

EXHIBIT 5
PAGE 65

1  MOMMY, Razor Scooter and Vespa Scooter Shannen, or any other product reported
2  to you on January 28, 2003.

3

4  **REQUEST NO. 759**

5
6      All DOCUMENTS REFERRING OR RELATING TO the departure of Jorge
7  Castilla from MATTEL, including but not limited to any MATTEL exit interview
8  forms, surveys, questionnaires, agreements, or other documents Castilla completed
9  on or near the date of his departure from MATTEL.

10
11  **REQUEST NO. 760**

12      All DOCUMENTS REFERRING OR RELATING TO MGA's recruitment or
13  hiring of Jorge Castilla, including but not limited to all employment agreements and
14  any agreements relating to confidentiality or non-disclosure of MATTEL
15  information.

16
17  **REQUEST NO. 761**

18
19      All DOCUMENTS REFERRING OR RELATING TO any taking of
20  confidential or proprietary MATTEL information by Jorge Castilla, including but not
21  limited to forensic reports, Guidance software reports, or computer imaging reports.

22
23  **REQUEST NO. 762**

24      All COMMUNICATIONS between YOU (including YOUR agents and
25  attorneys) and law enforcement authorities, including but not limited to the United
26  States Attorney's Office or other federal, state or local law enforcement agencies,
27  concerning or relating to Jorge Castilla.

28

MGA'S SEVENTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS  NO. CV 05-2727 SGL (RNBx)

EXHIBIT _5_
PAGE _66_

**REQUEST NO. 763**

All DOCUMENTS YOU (including YOUR agents and attorneys) provided to law enforcement authorities, including but not limited to the United States Attorney's Office or other federal, state or local law enforcement agencies, concerning or relating to Jorge Castilla.

**REQUEST NO. 764**

DOCUMENTS sufficient to show the names of all folders under S:\MATTEL that REFER OR RELATE to BRYANT, LARIAN, MGA, BRATZ, or BRAWER.

**REQUEST NO. 765**

All files in the folder S:\Mattel\Larian not previously produced.

EXHIBIT  5
PAGE  67

1  **REQUEST NO. 766**

2

3      To the extent not already produced, all DOCUMENTS IDENTIFIED or

   referenced in any of YOUR interrogatory responses.

4  DATED:      November 29, 2007

5

6

7                                        SKADDEN, ARPS, SLATE, MEAGHER &
                                         FLOM, LLP

8

9

10                                       Robert J. Herrington

11

12                                       Attorneys for Counter-Defendants, MGA
                                         ENTERTAINMENT, INC., ISAAC LARIAN,
                                         MGA ENTERTAINMENT (HK) LIMITED,
13                                       AND MGAE de MEXICO S.R.L. de C.V.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __5__

PAGE __68__