# EXHIBIT 6

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                  EASTERN DIVISION

4

5    ------------------------------          **Certified Copy**

6    CARTER BRYANT, an individual,   )

7                    Plaintiff,      )

8              vs.                    )  No. CV 04-09049

9    MATTEL, INC., a Delaware        )     SGL (RNBx)

10   corporation,                    )  Consolidated with

11                   Defendant.      )  CV 04-9059 & 05-2727

12   -------------------------------)

13   AND RELATED CROSS-ACTION.       )

14   ------------------------------

15

16

17          Transcript of Proceedings before

18          the Honorable Edward A. Infante,

19          via conference call, commencing at

20          9:04 A.M., Thursday, January 25, 2007,

21          before Cathryn L. Baker, CSR No. 7695.

22

23

24

25   PAGES 1 - 32

                                                              1

EXHIBIT  6
PAGE  69

```
 1    APPEARANCES OF COUNSEL:

 2

 3       FOR MATTEL, INC:

 4

 5              QUINN EMANUEL UPQUHART OLIVER & HEDGES

 6              BY:   JOHN COREY, ESQ.

 7                    DYLAN PROCTOR, ESQ.

 8              865 South Figueroa Street

 9              10th Floor

10              Los Angeles, California 90017

11              (213) 443-3000

12

13       FOR MGA ENTERTAINMENT, INC.:

14

15              O'MELVENY & MYERS LLP

16              BY:   JAMES P. JENAL, ESQ.

17              400 South Hope Street

18              Los Angeles, California 90071

19              (213) 430-6000

20

21

22

23

24

25
```

2

PAGE   70

```
 1    APPEARANCES OF COUNSEL (CONTINUED)

 2

 3        FOR CARTER BRYANT

 4

 5             LITTLER MENDELSON

 6             BY:   KEITH A. JACOBY, ESQ.

 7             2049 Century Park East

 8             5th Floor

 9             Los Angeles, California 90067

10             (310) 553-0308

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

                                                                            3

EXHIBIT __6__
PAGE ___71___

```
 1            JUDGE INFANTE:  This is Judge Infante.  I
 2   believe all counsel are probably on the phone.  I will
 3   go on the record now with the court reporter and take
 4   appearances.
 5            First, for the moving parties in this joint
 6   motion, that would be Carter Bryant and MGA, would you
 7   enter your appearances, please.
 8            MR. JACOBY:  Yes, Keith Jacoby for Carter
 9   Bryant.
10            MR. JENAL:  And Jim Jenal for MGA.
11            JUDGE INFANTE:  For Mattel, please.
12            MR. COREY:   John Corey and Dylan Proctor for
13   Mattel.
14            JUDGE INFANTE:  Okay.  Good morning.  I have
15   before me this joint motion.  I want to acknowledge I
16   received the papers, the opposition papers and the reply
17   papers.  Mr. Jacoby, you may proceed.
18            MR. JACOBY:  Sure.  I was going to address the
19   issue of the 2002 investigation.  If it's okay with your
20   Honor, Mr. Jenal was going to address the joint motion
21   issue first, since that's preliminary, why don't we do
22   that first.
23            JUDGE INFANTE:  Okay.
24            MR. JENAL:  I don't know whether the Court has
25   questions on that point or not.  If not, I'm perfectly
```
                                                        4

EXHIBIT  6
PAGE     72

```
 1    willing to pass on this, but if you have -- if you would
 2    like to hear argument on it, I'm prepared to do so as
 3    well.
 4              JUDGE INFANTE:  On which point?
 5              MR. JENAL:  My apologies.  On the question of
 6    whether the motion was properly brought as a joint
 7    motion, and thus whether there is standing to bring the
 8    motion.
 9              JUDGE INFANTE:  My view is, in a joint motion,
10    if either party has standing, it should be heard and
11    determined.
12              MR. JACOBY:  Very well, then, I'll just move
13    on to the 2002 investigation issue.  It seems that --
14    just to set the ground work.  Over two years ago, Mattel
15    produced a single document that was -- has been referred
16    to as "the anonymous letter."  And it was an anonymous
17    letter sent to the CEO of Mattel, Robert Eckert.  It's
18    dated in October of 2002.  And the sum and substance of
19    it is, the accusation that Carter Bryant created the
20    drawings that later led to the manufacture of the
21    product known as Bratz while he was at Mattel.  And that
22    Carter Bryant reached a secret agreement with MGA to
23    have this product created and manufactured while he was
24    still working for Mattel.  They were handwritten notes
25    from Mr. Eckert to the head of HR, Alan Kaye, requesting
```
                                                              5

EXHIBIT  6
PAGE  73

```
 1    that an investigation be initiated regarding these
 2    allegations.  There were also handwritten notes from
 3    Alan Kaye, I believe, to Mr. Deanda, who works for
 4    Mattel's internal security division, suggesting that the
 5    investigation begin with the Mattel vice president Ivy
 6    Ross.
 7               We've made many attempts over the course of
 8    this litigation to, 1, get information about the nature
 9    of that investigation; 2, get all documents surrounding
10    that investigation; and to, 3, get a complete privilege
11    log of documents that were created and were subject to
12    the attorney-client privilege.  Repeatedly at the
13    depositions of Alan Kaye and Ann Driskol, privilege was
14    asserted with respect to the investigation.  And it
15    suggests that virtually the entirety of the
16    investigation would be cloaked in privilege, and there
17    would be no documents logged on a privilege log.
18               As recently last week, Mattel promised in
19    footnote 43 in their reply brief that they would produce
20    a privilege log and they still have not.  What they have
21    done is they have suggested that if they produce a
22    privilege log and identify who participated in the
23    investigation, that all of this should go away.  And
24    that's simply not acceptable from Bryant and MGA's
25    perspective.
```

                                                        6

EXHIBIT ____4____
PAGE ____74____

1          First of all, the obligation to produce a
2     privilege log existed back in 2004 when the document
3     request calling for all documents related to the
4     investigation was originally propounded.  So it seems to
5     me a little overreaching to suggest that they can
6     resolve a discovery dispute by doing something that they
7     were categorically obligated to do back in 2004.

8          Secondly, they should produce all
9     non-privileged documents in connection with the
10    investigation.  They haven't produced any non-privileged
11    documents.  They have suggested in their reply that
12    Judge Larson's ruling on the motion to amend disposes of
13    this issue, and that's simply not true.  Judge Larson
14    simply ruled that Mattel could amend their counter --
15    could file an answer and amended counterclaim.  They
16    originally sought to file an amended complaint in the
17    Bryant action.  And they are suggesting that Judge
18    Larson's order disposes of the statute of limitations
19    defense.  Well, as a matter of procedure, that would be
20    impossible.  Judge Larson simply couldn't summarily
21    adjudicate a defense that hasn't even been asserted yet
22    in the case, it was only raised in the context of
23    whether the amendment would be futile.

24          Irrespective of what Judge Larson ruled on the
25    motion to amend, the anonymous letter is spot-on

7

EXHIBIT __6__
PAGE __75__

1    relevant to Carter Bryant's primary defense in this

2    action, which is laches.  That Mattel has sat on their

3    rights for the better part of four years while Carter

4    Bryant and MGA invested tens of millions of dollars in

5    the development of this product, when they had

6    knowledge, at least as early as 2002, and perhaps

7    earlier, of the allegations that form the basis of this

8    complaint.

9            So we believe that it is incumbent upon Mattel

10   to, 1, produce all non-privileged documents in

11   connection with the investigation; 2, to produce a

12   complete privilege log; and 3, to do something that's

13   going to be subject of a subsequent motion and was the

14   subject of Mr. Proctor's meet and confer with me on

15   December 27, which is, reproduce witness Driskol and

16   Kaye to discuss the 2002 investigation and to stop

17   asserting privilege objections which don't have merit.

18           And Mr. Proctor agreed to produce the

19   privilege log on January 5th, but has not done it to

20   date and has not produced any non-privileged documents

21   in connection with the investigation, nor has he

22   identified the participants in the investigation.

23           And all of this was done, even the offer to do

24   this was all done after the joint motion was filed.  So

25   it's obvious at this point, two years and three months

8

EXHIBIT  6
PAGE  76

```
 1    after the anonymous letter that was produced, that we

 2    need judicial intervention to get the full scope of

 3    discovery that we're entitled to on this subject.  I

 4    don't have anything further, unless you have any

 5    questions.

 6            MR. JENAL:  Your Honor, just so it's clear,

 7    Mr. Jacoby and I are splitting argument.  I will be

 8    discussing the joint moving party, the questions about

 9    the 30(b)(6) witnesses.  And we can go into that now if

10    you'd like, or if you want to hear argument from the

11    other side from this point, whichever is your

12    preference.

13            JUDGE INFANTE:  I will wait -- I'd like to

14    hear from Mattel on this issue first, and then we'll

15    deal with the 30(b)(6) deposition issue later.  I also

16    will permit you to argue it, even though you technically

17    lack standing under Rule 37(a) to bring a motion.  You

18    are operating under a joint defense agreement, and one

19    party who is bringing the motion has standing under Rule

20    37 to bring the motion.  So I'll permit you to be heard

21    when we get to that issue.  But now I'll give Mattel the

22    opportunity to respond to this issue that Mr. Jacoby has

23    just argued.

24            MR. COREY:  Thank you, your Honor.  This is

25    John Corey and I appreciate the Rule 37 clarification.
```

9

EXHIBIT  6
PAGE   77

1  But I think I can short circuit this. My understanding

2  of the relief that Mr. Jacoby seeks, as he's articulated

3  it, is the relief that we had offered to provide in

4  connection with the recent meet and confer, which is to

5  provide a privilege log logging all of those documents

6  that Mattel contends are privileged with respect to the

7  investigation and to produce those non-privileged

8  documents.

9          JUDGE INFANTE: The first issue you've raised

10  is it's all irrelevant.

11          MR. COREY: That's correct. And we do

12  believe that it is irrelevant. We believe that a proper

13  reading of Judge Larson's order resolves this issue, and

14  that they're going to be hard pressed if in fact they

15  try to raise the issue with Judge Larson again. He was

16  making a determination based on facts that were

17  presented before him, he wasn't limiting himself to the

18  pleadings. But that being said, if that's the relief

19  that's being sought, I think we can short circuit this.

20  We've offered to do that and we're more than willing to

21  do that. And we can do that promptly.

22          JUDGE INFANTE: I understand your arguments.

23  And I've read Judge Larson's order. It's a very

24  thorough order, and I read it, and particularly the

25  portion dealing with the futility argument on statute of

10

EXHIBIT __6__
PAGE __78__

```
 1    limitations defense.  I'm afraid that the motion to file
 2    an amended complaint doesn't fully resolve the issue as
 3    to whether or not the statute of limitations defense, or
 4    for that matter the laches defense, ought to be in the
 5    case or not.
 6            Although Judge Larson was outspoken with
 7    respect to the relation-back doctrine, I don't feel that
 8    I, as a discovery judge, can at this time say that those
 9    defenses are out of the case.  They're not, and
10    therefore under Rule 26 I can't really rule them
11    irrelevant.  I can't really rule the discovery, as to
12    when you learned and what you knew back in 2002 or 2003,
13    is irrelevant.  I understand what might occur with
14    respect to those defenses but I -- I'm not going to turn
15    this discovery motion into a case dispositive motion
16    regarding defenses which are still pled and still in the
17    case.  So I'm going to reject your relevancy argument,
18    although I fully understand it.  So you may proceed to
19    your next point.
20            MR. COREY:  With the decision to overrule the
21    relevancy objection, it then, as I understand it,
22    becomes incumbent on us to prepare a privilege log so
23    that the Court is not asked to do what it's been asked
24    to do in this motion, that is to rule on privilege in
25    the abstract.
```

                                                                11

EXHIBIT 6
PAGE 75

1          JUDGE INFANTE:  Yes.  Let me just add one

2    thing I forget to say.  I also feel, regardless of the

3    statute of limitations, relation-back doctrine, in the

4    issue of relevance, on that defense, there is still pled

5    in the case a laches defense, an equitable defense,

6    which also gives Carter Bryant and MGA an independent

7    platform for relevancy.  So I just wanted to complete my

8    remarks on that point.  And, again, for that reason, I

9    overrule your irrelevancy objections.  I'm sorry I left

10   that out.  Okay.

11         Okay.  So now back to the privilege log.  Yes,

12   it is incumbent for you to now comply with Rule 26(b)(5)

13   if you contend that you're withholding documents

14   requested for on the grounds of privilege.  What do you

15   propose in that regard?

16         MR. COREY:  What I understand is that the

17   court permitted Bryant to have 30 days to produce its

18   documents yesterday.  I think it would be reasonable,

19   given that we're dealing with a much smaller universe of

20   documents, to provide a privilege log, and to produce

21   any non-privileged documents within two weeks from

22   today.

23         JUDGE INFANTE:  That seems reasonable.  Let me

24   make a couple of comments on it so that we can be

25   efficient.  I agree with you, Mattel's counsel, that the

                                                    12

EXHIBIT  4
PAGE     80

```
 1    issue of ruling on privilege is premature, that I have
 2    no basis for knowing whether or not any withheld
 3    documents are protected by the attorney-client privilege
 4    or work product, the whole work product immunity at this
 5    time.  So we have to take this one step at a time.  You
 6    need to follow Rule 26(b)(5) and do the privilege log.
 7    You may also serve with that privilege log any
 8    declarations which lay a foundation for the assertion of
 9    privilege.  Indeed I think you have to because the
10    holder of the privilege is a corporation and a
11    corporation acts for many, many people and agents and
12    employees.  And it's not clear whether or not you can
13    carry your burden in asserting the attorney-client
14    privilege without identifying who the declarants were,
15    who the participants to a communication were, why the
16    communication happened.  I mean, just keep your eye on
17    Upjohn, the Upjohn case, when you file your privilege
18    log.  And take the opportunity in carrying your burden
19    to supplement the privilege log with declarations.
20    That's my advice.  That's nothing I'm ordering, just
21    giving you some advice.  So if you can do that within
22    two weeks, that will be fine.
23              MR. COREY:  Mattel will do that, your Honor.
24              JUDGE INFANTE:  Good.  Okay.  The only other
25    issue related to this question is whether
```

                                                        13

EXHIBIT 6
PAGE 91

1    Mr. Anderson -- is it Mr. -- the HRVP, what's his name?

2              MR. COREY:  Mr. Kaye.

3              JUDGE INFANTE:  Mr. Kaye, should be called

4    back to deposition.  And if so, when?  Do you have any

5    comment on that?

6              MR. JACOBY:  Well, your Honor, we were going

7    to raise that issue -- that was part of Mr. Proctor's

8    and mine meet and confer.  If in light of the Court's

9    ruling, they're simply willing to do that, that would

10   dispose of Mr. Bryant's request that Mr. Kaye be

11   reproduced.  Obviously, once we have the non-privileged

12   documents and the privilege log, the scope of the need

13   to reproduce Mr. Kaye may be more focused.

14             JUDGE INFANTE:  Exactly.  You may decide to

15   call him or not, and you certainly don't want to go

16   through that until you have production of documents and

17   a sense of the privilege log.

18             MR. JACOBY:  Well, Mr. Bryant would be willing

19   to defer any ruling on that issue until Mattel makes its

20   production.

21             JUDGE INFANTE:  I think we should.  I think we

22   should defer ruling on the resumption of his deposition,

23   and the parties should again meet and confer on that

24   sole issue after production and serving of a privilege

25   log.  Very good.

                                                        14

EXHIBIT  6
PAGE  82

```
 1              MR. COREY:  Your Honor, we agree with that,
 2    and we will do that.  One thing I do want to make clear,
 3    that the Court is not ruling on specific objections,
 4    specific privilege objections that were made at Mr.
 5    Kaye's prior deposition.
 6              JUDGE INFANTE:  You're absolutely right.  It's
 7    premature.
 8              MR. COREY:   Thank you.  I appreciate that
 9    clarification.
10              JUDGE INFANTE:  Let's move to the remainder of
11    the motion.  And you may present your argument with
12    respect to the 30(b)(6) deposition notice.
13              Okay.  Jim, you're on.
14              MR. JENAL:  Thank you.  Your Honor, I think
15    the simplest way to resolve this is to focus on one
16    exhibit, which is Exhibit E, from Diana Torres'
17    declaration, which is the May 16, 2005 letter that Mr.
18    Corey wrote on behalf of Mattel setting forth in the
19    list of 30(b)(6) witnesses that Mattel agreed to produce
20    in the resolution of the meet-and-confer process that
21    had taken place back, I believe, in March of 2005.  And
22    that's effectively a two-page letter for purposes of
23    this motion.  The first page which refers to electronic
24    information topics, those issues and those designations
25    were resolved before this motion was filed.  So what is
```
                                                          15

EXHIBIT __6__
PAGE __63__

1    the subject of the motion with regard to the 30(b)(6)

2    witnesses, and frankly, this is the only thing that we

3    were moving for in our motion, are those which run to

4    the second page of Exhibit E.  And those are captioned

5    as "Bryant's agreements with Mattel," and there's topics

6    numbered there, 1, 49 and 50.  The second heading is

7    "The Factual Basis for Bryant's Contractual and

8    Non-Contractual Obligations to Mattel and Bryant's

9    Breach Thereof."  And that's listed as topics 2 through

10   6, 7, 22 and 23, a total of eight topics.

11           The next that was open was Mattel's knowledge

12   of the interviews for the 2003 Wall Street Journal

13   article, that was topic 41.  And the last was Bryant's

14   exit interview, and that's topics 54, 55 and 56.  By my

15   count, your Honor, that meant that as of the time we

16   moved on this, there were 15 topics which Mattel had

17   agreed to produce witnesses on, for which we had no

18   designations as of the time of the motion.  Since we

19   filed the motion, in two separate letters from Mattel's

20   counsel, the topics for Mattel's knowledge of interviews

21   for the 2003 Wall Street Journal article, that witness

22   was offered on the 8th of January to be produced

23   sometime in the last two weeks of February.

24           JUDGE INFANTE:  That's on topic 41, yes.

25           MR. JENAL:  And topic 54 through 56, again, in

                                                          16

EXHIBIT  6
PAGE  84

1    the letter dated January the 8th, that witness was

2    offered also for the last two weeks of February.

3           Then in a letter dated January 16th, Ms. Inzer

4    was designated, although the topics for which she was

5    designated were not identified.  But I would simply note

6    that in the prior letter, Exhibit E, those three topics

7    had three separate witnesses set forth against them.  So

8    I am presuming, given that there was no further

9    clarification, that Ms. Inzer is designated to cover one

10   of those three topics.

11          The remaining witness that was identified

12   somewhat in their letter is Ivy Ross, but in point of

13   fact, she's being designated for topic 22.  So even if

14   we assume that that designation is meaningful, and it

15   isn't really, seeing how they're not willing to produce

16   her at this time, and that's subject to a separate

17   motion that we will be filing our opposition on today,

18   so I'll leave that aside for the moment.  But even

19   counting that designation, she was designated as to

20   topic 22.  So that's six designations of 15 topics.  And

21   all of the remaining topics are still at large, if you

22   will, they have not had witnesses assigned to them.

23          JUDGE INFANTE:  You say in your reply brief

24   that there's really nine topics that you're moving on?

25          MR. JENAL:  That's correct, your Honor.  It

                                                        17

EXHIBIT  ✔
PAGE  85

```
1   would be of topics 1, 49 and 50, it's whichever one
2   Ms. Inzer is covering, leave that one out, and it would
3   be the other two.  Of topics 2 through 6, 7, 22 and 23,
4   we'll assume that eventually Ms. Ross will testify on to
5   22, that leaves 2 through 6, 7 and 23 outstanding.  So
6   that's what's still out there, your Honor.  And by my
7   count, that's nine topics for which we have no witnesses
8   designated, even after filing this motion.  So there's a
9   great deal of discussion about other topics, which,
10  frankly, we didn't move on, which has no relevance to
11  the motion that's before the Court.  And the relief we
12  are seeking is to get witnesses and dates certain for
13  those remaining nine topics, preferably by the end of
14  February.
15          JUDGE INFANTE:  I appreciate the clarification
16  on your motion.
17          MR. COREY:  As do I.
18          JUDGE INFANTE:  Let's hear from Mattel.
19          MR. COREY:  I'm looking at the second page of
20  Exhibit E, this May 16, 2005 letter that I wrote to
21  counsel for Carter Bryant and counsel for MGA.  Starting
22  at the top.  With respect to topics 1, 49, and 50, at
23  the time that this letter was written, Bryant had
24  pending claims, counter claims, actually, against Mattel
25  that called into question the -- not only the agreements
```

18

EXHIBIT  6
PAGE  86

```
 1   with -- between Mattel and Bryant, but all of the -- all
 2   of the agreements that Mattel has with its employees.
 3   And Bryant had actually asserted, for reason that they
 4   can articulate, that all of those agreements were void
 5   in violation of some California law.  Topics 49 and 50
 6   in scope relates to all of the agreements that Mattel
 7   may have had with its employees that are similar to the
 8   Bryant agreements.  Judge Larson dismissed those claims
 9   that Bryant had that called into question the entirety
10   of Mattel's agreements with its employees.  And so the
11   scope of the -- of those topics are no longer relevant,
12   they no longer fall within the scope of what the parties
13   are discussing, what the issue in this case.  And this
14   was articulated, both in correspondence, and, I believe,
15   in a motion itself.  Mattel has not designated a witness
16   to testify on those topics simply because they are now
17   no longer in the case.
18             JUDGE INFANTE:  And Ms. Inzer would testify on
19   topic 1?
20             MR. COREY:  That's correct.  And that's what
21   she's been designated on.
22             MR. JACOBY:  Can I address Mr. Corey's point?
23             JUDGE INFANTE:  Sure.
24             MR. JACOBY:  It's completely untrue that those
25   topics are not in the case.  And recently in their new
```

                                                            19

EXHIBIT __6__
PAGE __87__

```
 1    counter claim they continue to reassert claims against
 2    Carter Bryant for breach of contract.  And Mr. Bryant
 3    has individual contract defenses, as you're aware, the
 4    two contracts that are at issue in this case, are Mr.
 5    Bryant, the inventions and assignment agreement, and
 6    conflict of interest questionnaire.  And throughout the
 7    course of discovery, nobody has been allowed to testify
 8    on those subjects.  Now, it is true that Carter Bryant
 9    was seeking more broadly to invalidate these form
10    contracts with respect to all Mattel employees in the
11    context of a 17200 claim.  But there's no question that
12    how Mattel administers these contracts with respect to
13    all employees, is directly relevant to the manner that
14    they are attempting to enforce it against Mr. Bryant.
15    It's relevant to a waiver defense, it's relevant to an
16    estoppel defense.  I'll give you a very simply example.
17    One of the things that they are alleging that Mr. Bryant
18    needed to do was to disclose -- they are alleging that
19    he drew some Bratz drawings while he was at Mattel, and
20    that he needed to essentially turn those over to Mattel
21    before the ink was even dry on them.  How Mattel behaves
22    with respect to all the other employees who signed this
23    exact same form contract is spot-on relevant to whether
24    they can impose that obligation on Mr. Bryant.
25            The same would be true with respect to his
```

EXHIBIT 6
PAGE 88

1    pre-employment disclosures and post-employment exit
2    interviews.  And so it's completely untrue that simply
3    because Mr. Bryant's 17200 claim has been invalidated,
4    that the core issues behind the contract enforcement,
5    and at its core this is a contract case against Mr.
6    Bryant, that those issues are no longer relevant.  So we
7    completely reject that contention.
8                    JUDGE INFANTE:  I understand.
9                    MR. COREY:  If I may, your Honor.  I disagree
10   with what Mr. Jacoby has said.  It is a question about
11   contract interpretation, about the scope of what Mr.
12   Bryant's obligations were to Mattel and how he breached
13   those.  That determination is made based on the
14   interpretation of the contract that Mr. Bryant had with
15   Mattel.  And it's not informed by contracts that any
16   other employee may have had with Mattel.  And if I may,
17   let me just read the breadth of these topics.  "All
18   versions of the employee confidential information and
19   inventions agreement used by Mattel since January 1st,
20   1995, including without limitation, the employee
21   confidential information and inventions agreement
22   produced by Mattel, document control Nos. M1638 through
23   39."
24                    JUDGE INFANTE:  Did you just read 49?
25                    MR. COREY:  I just read 49, and now I'm

21

EXHIBIT  6
PAGE  89

1   reading 50.  And this is -- I'm reading from Exhibit D

2   to the Torres declaration.  "All versions of the

3   conflict of interest agreement used by Mattel since

4   January 1st, 1995, including without limitation, the

5   conflict of interest agreement produced by Mattel with

6   document control Nos. M1636-37," which is -- those two

7   documents that are specifically identified by Bates

8   number are the contracts that Bryant signed with Mattel.

9   To the extent that they believe that someone needs to be

10   produced to testify about the contracts that Bryant had

11   with Mattel, Ms. Inzer has been designated and

12   identified to be that designee.

13          MR. JACOBY:  I'm happy to address that, your

14   Honor.  There is evidence in this case that there have

15   been no fewer than four revisions to the inventions and

16   assignment agreement, several of them subsequent to the

17   version that Mr. Bryant signed.  Now, if Mattel revised

18   the inventions and assignment agreement because they

19   were given advice or because there was some ruling that

20   said that it was overbroad and overreaching and that it

21   was unenforceable and then they changed the language and

22   -- that would be relevant to whether the language that

23   Mr. Bryant signed in his contract was enforceable.  And

24   what they've done in discovery has been clever on their

25   part and frustrating for us.  Mr. Bryant signed this

22

EXHIBIT _6_
PAGE __90__

1    contract the day he started work at Mattel. Besides the
2    person who handed it to him, nobody saw the contract.
3    He signed it and it went into his personnel file. Every
4    time we try to depose people about Mr. Bryant's
5    contract, they say, "Well, I've never seen Mr. Bryant's
6    contract."

7            There is no dispute that every Mattel employee
8    has to sign this form contract to work at Mattel. And
9    so when we ask them about their contract, Mattel objects
10   and says, well, their contract isn't relevant, it's only
11   Mr. Bryant's contract that's relevant. And the net
12   effect of that is that nobody from Mattel is willing to
13   talk about the Bryant contract. And that's simply
14   preposterous. The Bryant contract is a form,
15   boilerplate contract. It was signed by virtually every
16   witness we've deposed in this case. And they have used
17   the clever roose that nobody has seen the Bryant
18   contract to prevent their own witnesses from talking
19   about it. And the reason why they want to do that is
20   extremely simple. The contract is unintelligible to the
21   common person. And they know that if their witnesses
22   have to sit and answer questions from me about what this
23   contract means, they'll fumble it and that will enhance
24   Mr. Bryant's defense that the contract is substantively
25   and procedurally unconscionable, and that it can't be
                                                        23

EXHIBIT  6
PAGE    91

1   enforced. And that's from a discovery perspective.

2   There's absolutely no question that we should get to see

3   the different iterations of this contract and find out

4   why it was changed.

5           MR. COREY: Your Honor?

6           JUDGE INFANTE: I think I've heard enough

7   argument on it.

8           MR. COREY: Actually, I do need to address

9   one thing. Those arguments that Mr. Jacoby just made

10  were made to Judge Larson and he rejected them. He has

11  specifically held that the contract that Mr. Bryant has

12  with Mattel is enforceable. It's not unconscionable and

13  it's not in violation of any California rule or statute.

14          JUDGE INFANTE: Right.

15          MR. COREY: So to the extent that those are

16  the issues and that's the articulation of why these

17  other contracts may be relevant, that issue is not in

18  the case. Judge Larson rejected those arguments.

19          MR. JACOBY: Well, I think once again Mattel

20  --

21          MR. COREY: And I'll provide a copy of that

22  order on the motion to dismiss.

23          MR. JACOBY: I think once again Mattel is

24  taking an overreaching motion of what Mr. Larson said.

25  Judge Larson hasn't dismissed a single affirmative

                                                    24

EXHIBIT 6
PAGE 92

```
 1    defense that Carter Bryant has alleged.  None.

 2              JUDGE INFANTE:  Yeah, I understand.  Okay.

 3    Let's talk to the rest of this -- these nine topics.  Do

 4    you have any other comments on behalf of Mattel?

 5              MR. COREY:  Yes, with respect to -- the only

 6    other outstanding issues, as I see them, is with respect

 7    to topics 2 through 6, 7, 22 and 23.  Ivy Ross, who is

 8    no longer an employee of Mattel, has been designated on

 9    No. 22.  And it is Mattel's intention, as it has always

10    been Mattel's intention, to provide witnesses to testify

11    regarding those other topics.  The timing, however, is a

12    question.  The Court may or may not know this, the

13    mid-January to mid-February time of year is the time

14    known as toy fair, it's the busiest time of year for toy

15    manufacturing companies and for toy companies.  So that

16    the request that all of these witnesses be made

17    available by the end of February is frankly unrealistic,

18    given the pressing business engagements that these

19    people have to attend to.

20              JUDGE INFANTE:  I'm willing to give you a

21    little bit more time than that because Judge Larson has

22    yet to issue a discovery cut-off date.  So because

23    you're not working under the pressure of a discovery

24    cut-off date, Mr. Jacoby, I think I would give them a

25    little bit more time than February 28th.
                                                          25
```

EXHIBIT 6
PAGE 93

```
 1          MR. COREY:  Your Honor, I believe the Court
 2   knows this at this point, we have been offered a date in
 3   mid-March for MGA's designee on most of the 30(b)(6)
 4   topics that Mattel has noticed, I think that pushing the
 5   deadline out to the end of April to get these fairly
 6   substantive topics taken care of, I believe that a
 7   number of people will be testifying on them, is
 8   completely reasonable.
 9          JUDGE INFANTE:  I think that's too long.  I
10   predict that Judge Larson is going to give you a fairly
11   tight discovery period, just because of the age of this
12   case.  And so I'd be willing to give you until the end
13   of March.
14          MR. COREY:  That's acceptable to Mattel, your
15   Honor.
16          JUDGE INFANTE:  Instead of the end of
17   February, the end of March.  So the only outstanding
18   issue, then, is topics 49 and 50, I guess.
19          MR. COREY:  Your Honor, I will provide the
20   Court with a copy of the order dismissing Bryant's
21   claims if the court would find that helpful.
22          JUDGE INFANTE:  I don't think -- I mean, I
23   still think there's other allegations in the answer that
24   Mr. Jacoby made reference to that create a platform for
25   potential relevance.  Now, the real question is, is it
                                                        26
```

EXHIBIT __6__
PAGE ___94___

```
1    relevant within the subject matter under Rule 26 or
2    relevant to a claim or defense that's still in the case.
3    And is it likely to lead to admissible evidence?  I'm
4    not sure it's likely to lead to admissible evidence,
5    that's on contract interpretation, depending upon who
6    the witness is, I'm not sure.
7              MR. COREY:  I think that's fair, your Honor.
8    The interpretation of a contract between -- of a
9    different contract between a different party is not
10   necessarily informative and --
11             JUDGE INFANTE:  Well, what could be
12   informative is a practice course of conduct with respect
13   to a form contract over the course of time, namely, what
14   is Mattel's actions, and can those actions or inactions
15   support an inference, which would be an admission.  I
16   mean, it's tenuous, it's thin, but I can't say it's
17   irrelevant, I can't.
18             MR. JACOBY:  Your Honor, that precise issue
19   comes up routinely, for example, in trade secret
20   cases -- this is at some level a trade secret case --
21   where people leave their employment and they take their
22   contacts with them.  And lots of companies have policies
23   that say -- and even make people sign contracts that say
24   you'll give back all of your company information and
25   materials upon leaving.  But many companies, my law firm
```
27

EXHIBIT  6
PAGE    95

1    has found, don't enforce that practice.  So when people

2    leave with their contact information, they say, hey,

3    everybody does this.  And those type of waiver defenses

4    are just standard gruel in cases like this.

5            JUDGE INFANTE:  Theoretically, you're right.

6            MR. COREY:  Then I'm going to need some

7    guidance from the court.  Because I'm not sure how one

8    would prepare a corporate designee to testify about the

9    things that Mr. Jacoby has requested in these particular

10   topics.

11           JUDGE INFANTE:  I think you can imagine some

12   of Mr. Jacoby's questions.  I mean, he's going to look

13   into whether or not --

14           MR. COREY:  What Mr. Jacoby is asking about,

15   though, is a practice.

16           JUDGE INFANTE:  Of course, whether there's

17   been conduct of enforceability or not.

18           MR. COREY:  But the topics are only asking

19   about specific pieces of paper, specific versions of the

20   agreement.

21           JUDGE INFANTE:  I think -- have you produced

22   the documents?

23           MR. COREY:  To my recollection, Mattel has not

24   produced documents -- has not produced other versions,

25   if any, of the documents that -- excuse me, the

                                                        28

EXHIBIT __6__
PAGE ___96__

1    contracts that Bryant has signed.  We've taken a

2    position that those are irrelevant, and they're not

3    informative for the contract interpretation of the

4    contracts between Bryant and Mattel.

5              JUDGE INFANTE:  Well, I think that counsel

6    would have the right to inquire of a corporate witness

7    whether or not the contracts that Carter Bryant signed

8    are essentially form contracts that all employees are

9    required to sign.  And if there is a commonalty in all

10   those contracts, he has the right to question the

11   corporate witness about whether those contracts are

12   enforced.

13             MR. COREY:  Whether they're enforced in

14   circumstances similar to the allegations in the Bryant

15   case?

16             JUDGE INFANTE:  Yeah.  Therefore, that's how

17   you would prepare your witness.

18             MR. COREY:  Thank you, your Honor, I

19   appreciate that clarification.

20             JUDGE INFANTE:  I can't strike 49 and 50.  I

21   do think they come within the ambit of Rule 26.  And I'm

22   not here to rule on admissibility of evidence at trial.

23   If I were, you might see a much stricter ruling.

24             MR. COREY:  I'll stipulate, if opposing

25   counsel will, that you can rule on admissibility at

                                                          29

EXHIBIT _6_
PAGE _97_

1    trial.

2            JUDGE INFANTE:  All right.  I'm going to

3    require you to deal with these nine topics.

4            MR. COREY:  Thank you, your Honor.

5            JUDGE INFANTE:  Are there any other issues?

6            MR. COREY:  I don't believe so, your Honor.

7            JUDGE INFANTE:  Okay.  Here's what I'd like

8    you to do.  I think this has been a good hearing and I

9    think you've both argued in good faith in trying to

10   resolve this.  I'm going to ask Mr. Jacoby, if you and

11   MGA's counsel would prepare an order that memorializes

12   what I've just ruled on and send it to Mattel and to me.

13   And I will sign it.  I'm trying to be as efficient as

14   possible.  I don't want to bill you for a long opinion.

15   Just prepare an order.  I think the rulings have been

16   quite clear.  And you don't have to address the question

17   that's standing in this order, just let that go.  The

18   record, which has been recorded this morning, deals with

19   that issue.  So could you prepare an order for my

20   signature?

21           MR. JACOBY:  We will do that, your Honor.

22           JUDGE INFANTE:  Okay.  All right.  Then I

23   think this will bring us up to date then.

24           MR. JACOBY:  Thank you very much.

25           MR. COREY:  Thank you for your time, your

                                                          30

EXHIBIT __6__
PAGE __98__

```
 1    Honor.
 2              JUDGE INFANTE:   Good day.
 3              (TIME NOTED:   9:45 A.M.)
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

                                                               31

EXHIBIT  6
PAGE    55

```
 1    STATE OF CALIFORNIA    )    ss
 2    COUNTY OF LOS ANGELES  )
 3
 4            I, CATHRYN L. BAKER, CSR No. 7695, do
 5    hereby certify
 6            That the foregoing transcript of proceedings
 7    was taken before me at the time and place therein set
 8    forth;
 9            That the hearing was recorded stenographically
10    by me, was thereafter transcribed under my direction and
11    supervision and that the foregoing is a true record of
12    same.
13            I further certify that I am neither counsel
14    for nor related to any party to said action, nor in
15    any way interested in the outcome thereof.
16            IN WITNESS WHEREOF, I have subscribed my
17    name this 29th day of January, 2007.
18
19
20
21    _____
22    CATHRYN BAKER, CSR No. 7695
23
24
25
                                                    32
```

EXHIBIT 6
PAGE 100

**W
O
R
D

I
N
D
E
X**

EXHIBIT ___6___
PAGE ___101___

**A**

absolutely 15:6 24:2
abstract 11:25
acceptable 6:24 26:14
accusation 5:19
acknowledge 4:15
action 7:17 8:2 32:14
actions 27:14,14
acts 13:11
add 12:1
address 4:18,20 19:22
22:13 24:8 30:16
adjudicate 7:21
administers 20:12
admissibility 29:22,25
admissible 27:3,4
admission 27:15
advice 13:20,21 22:19
affirmative 24:25
afraid 11:1
age 26:11
agents 13:11
ago 5:14
agree 12:25 15:1
agreed 8:18 15:19
16:17
agreement 5:22 9:18
20:5 21:19,21 22:3,5
22:16,18 28:20
agreements 16:5
18:25 19:2,4,6,8,10
Alan 5:25 6:3,13
allegations 6:2 8:7
26:23 29:14
alleged 25:1
alleging 20:17,18
allowed 20:7
ambit 29:21
amend 7:12,14,25
amended 7:15,16 11:2
amendment 7:23
Anderson 14:1
Angeles 2:10,18 3:9
32:2
Ann 6:13
anonymous 5:16,16
7:25 9:1
answer 7:15 23:22
26:23
apologies 5:5
appearances 2:1 3:1
4:4,7
appreciate 9:25 15:8
18:15 29:19
April 26:5
argue 9:16
argued 9:23 30:9
argument 5:2 9:7,10

10:25 11:17 15:11
24:7
arguments 10:22 24:9
24:18
article 16:13,21
articulate 19:4
articulated 10:2 19:14
articulation 24:16
aside 17:18
asked 11:23,23
asking 28:14,18
asserted 6:14 7:21
19:3
asserting 8:17 13:13
assertion 13:8
assigned 17:22
assignment 20:5 22:16
22:18
assume 17:14 18:4
attempting 20:14
attempts 6:7
attend 25:19
attorney-client 6:12
13:3,13
available 25:17
aware 20:3
A.M 1:20 31:3

**B**

back 7:2,7 11:12
12:11 14:4 15:21
27:24
Baker 1:21 32:4,22
based 10:16 21:13
basis 8:7 13:2 16:7
Bates 22:7
behalf 15:18 25:4
behaves 20:21
believe 4:2 6:3 8:9
10:12,12 15:21
19:14 22:9 26:1,6
30:6
better 8:3
bill 30:14
bit 25:21,25
boilerplate 23:15
Bratz 5:21 20:19
breach 16:9 20:2
breached 21:12
breadth 21:17
brief 6:19 17:23
bring 5:7 9:17,20
30:23
bringing 9:19
broadly 20:9
brought 5:6
Bryant 1:6 3:3 4:6,9
5:19,22 6:24 7:17
8:4 12:6,17 14:18

18:21,23 19:1,3,8,9
20:2,2,5,8,14,17,24
21:6,14 22:8,10,17
22:23,25 23:13,14
23:17 24:11 25:1
29:1,4,7,14
Bryant's 8:1 14:10
16:5,7,8,13 21:3,12
23:4,5,11,24 26:20
burden 13:13,18
busiest 25:14
business 25:18

**C**

California 1:2 2:10,18
3:9 19:5 24:13 32:1
call 1:19 14:15
called 14:3 18:25 19:9
calling 7:3
captioned 16:4
care 26:6
carry 13:13
carrying 13:18
Carter 1:6 3:3 4:6,8
5:19,22 8:1,3 12:6
18:21 20:2,8 25:1
29:7
case 7:22 11:5,9,15,17
12:5 13:17 19:13,17
19:25 20:4 21:5
22:14 23:16 24:18
26:12 27:2,20 29:15
cases 27:20 28:4
categorically 7:7
Cathryn 1:21 32:4,22
CENTRAL 1:2
Century 3:7
CEO 5:17
certain 18:12
certainly 14:15
certify 32:5,13
changed 22:21 24:4
circuit 10:1,19
circumstances 29:14
claim 20:1,11 21:3
27:2
claims 18:24,24 19:8
20:1 26:21
clarification 9:25 15:9
17:9 18:15 29:19
clear 9:6 13:12 15:2
30:16
clever 22:24 23:17
cloaked 6:16
come 29:21
comes 27:19
commencing 1:19
comment 14:5
comments 12:24 25:4

common 23:21
commonalty 29:9
communication 13:15
13:16
companies 25:15,15
27:22,25
company 27:24
complaint 7:16 8:8
11:2
complete 6:10 8:12
12:7
completely 19:24 21:2
21:7 26:8
comply 12:12
conduct 27:12 28:17
confer 8:14 10:4 14:8
14:23
conference 1:19
confidential 21:18,21
conflict 20:6 22:3,5
connection 7:9 8:11
8:21 10:4
Consolidated 1:10
contact 28:2
contacts 27:22
contend 12:13
contends 10:6
contention 21:5
context 7:22 20:11
continue 20:1
CONTINUED 3:1
contract 20:2,3,23
21:4,5,11,14 22:23
23:1,2,5,6,8,9,10,11
23:13,14,15,18,20
23:23,24 24:3,11
27:5,8,9,13 29:3
contracts 20:4,10,12
21:15 22:8,10 24:17
27:23 29:1,4,7,8,10
29:11
Contractual 16:7
control 21:22 22:6
copy 24:21 26:20
core 21:4,5
Corey 2:6 4:12,12
9:24,25 10:11 11:20
12:16 13:23 14:2
15:1,8,18 18:17,19
19:20 21:9,25 24:5,8
24:15,21 25:5 26:1
26:14,19 27:7 28:6
28:14,18,23 29:13
29:18,24 30:4,6,25
Corey's 19:22
corporate 28:8 29:6
29:11
corporation 1:10
13:10,11

correct 10:11 17:25
19:20
correspondence 19:14
counsel 2:1 3:1 4:2
12:25 16:20 18:21
18:21 29:5,25 30:11
32:13
count 16:15 18:7
counter 7:14 18:24
20:1
counterclaim 7:15
counting 17:19
COUNTY 32:2
couple 12:24
course 6:7 20:7 27:12
27:13 28:16
court 1:1 4:3,24 11:23
12:17 15:3 18:11
25:12 26:1,20,21
28:7
Court's 14:8
cover 17:9
covering 18:2
create 26:24
created 5:19,23 6:11
CROSS-ACTION
1:13
CSR 1:21 32:4,22
cut-off 25:22,24
CV 1:8,11

**D**

D 22:1
date 8:20 25:22,24
26:2 30:23
dated 5:18 17:1,3
dates 18:12
day 23:1 31:2 32:17
days 12:17
deadline 26:5
deal 9:15 18:9 30:3
dealing 10:25 12:19
deals 30:18
Deanda 6:3
December 8:15
decide 14:14
decision 11:20
declarants 13:14
declaration 15:17
22:2
declarations 13:8,19
Defendant 1:11
defense 7:19,21 8:1
9:18 11:1,3,4 12:4,5
12:5 20:15,16 23:24
25:1 27:2
defenses 11:9,14,16
20:3 28:3
defer 14:19,22

EXHIBIT   6
PAGE   102

Page 2

**Delaware** 1:9
**depending** 27:5
**depose** 23:4
**deposed** 23:16
**deposition** 9:15 14:4
    14:22 15:5,12
**depositions** 6:13
**designated** 17:4,5,9,13
    17:19 18:8 19:15,21
    22:11 25:8
**designation** 17:14,19
**designations** 15:24
    16:18 17:20
**designee** 22:12 26:3
    28:8
**determination** 10:16
    21:13
**determined** 5:11
**development** 8:5
**Diana** 15:16
**different** 24:3 27:9,9
**direction** 32:10
**directly** 20:13
**disagree** 21:9
**disclose** 20:18
**disclosures** 21:1
**discovery** 7:6 9:3 11:8
    11:11,15 20:7 22:24
    24:1 25:22,23 26:11
**discuss** 8:16
**discussing** 9:8 19:13
**discussion** 18:9
**dismiss** 24:22
**dismissed** 19:8 24:25
**dismissing** 26:20
**dispose** 14:10
**disposes** 7:12,18
**dispositive** 11:15
**dispute** 7:6 23:7
**DISTRICT** 1:1,2
**division** 1:3 6:4
**doctrine** 11:7 12:3
**document** 5:15 7:2
    21:22 22:6
**documents** 6:9,11,17
    7:3,9,11 8:10,20
    10:5,8 12:13,18,20
    12:21 13:3 14:12,16
    22:7 28:22,24,25
**doing** 7:6
**dollars** 8:4
**drawings** 5:20 20:19
**drew** 20:19
**Driskel** 6:13 8:15
**dry** 20:21
**Dylan** 2:7 4:12

————— E —————
**E** 15:16 16:4 17:6

    18:20
**earlier** 8:7
**early** 8:6
**East** 3:7
**EASTERN** 1:3
**Eckert** 5:17,25
**Edward** 1:18
**effect** 23:12
**effectively** 15:22
**efficient** 12:25 30:13
**eight** 16:10
**either** 5:10
**electronic** 15:23
**EMANUEL** 2:5
**employee** 21:16,18,20
    23:7 25:8
**employees** 13:12 19:2
    19:7,10 20:10,13,22
    29:8
**employment** 27:21
**enforce** 20:14 28:1
**enforceability** 28:17
**enforceable** 22:23
    24:12
**enforced** 24:1 29:12
    29:13
**enforcement** 21:4
**engagements** 25:18
**enhance** 23:23
**enter** 4:7
**ENTERTAINMENT**
    2:13
**entirety** 6:15 19:9
**entitled** 9:3
**equitable** 12:5
**ESQ** 2:6,7,16 3:6
**essentially** 20:20 29:8
**estoppel** 20:16
**eventually** 18:4
**everybody** 28:3
**evidence** 22:14 27:3,4
    29:22
**exact** 20:23
**Exactly** 14:14
**example** 20:16 27:19
**excuse** 28:25
**exhibit** 15:16,16 16:4
    17:6 18:20 22:1
**existed** 7:2
**exit** 16:14 21:1
**extent** 22:9 24:15
**extremely** 23:20
**eye** 13:16

————— F —————
**fact** 10:14 17:13
**facts** 10:16
**Factual** 16:7
**fair** 25:14 27:7

**fairly** 26:5,10
**faith** 30:9
**fall** 19:12
**February** 16:23 17:2
    18:14 25:17,25
    26:17
**feel** 11:7 12:2
**fewer** 22:15
**Figueroa** 2:8
**file** 7:15,16 11:1 13:17
    23:3
**filed** 8:24 15:25 16:19
**filing** 17:17 18:8
**find** 24:3 26:21
**fine** 13:22
**firm** 27:25
**first** 4:5,21,22 7:1
    9:14 10:9 15:23
**Floor** 2:9 3:8
**focus** 15:15
**focused** 14:13
**follow** 13:6
**footnote** 6:19
**foregoing** 32:6,11
**forget** 12:2
**form** 8:7 20:9,23 23:8
    23:14 27:13 29:8
**forth** 15:18 17:7 32:8
**found** 28:1
**foundation** 13:8
**four** 8:3 22:15
**frankly** 16:2 18:10
    25:17
**frustrating** 22:25
**full** 9:2
**fully** 11:2,18
**fumble** 23:23
**further** 9:4 17:8 32:13
**futile** 7:23
**futility** 10:25

————— G —————
**give** 9:21 20:16 25:20
    25:24 26:10,12
    27:24
**given** 12:19 17:8
    22:19 25:18
**gives** 12:6
**giving** 13:21
**go** 4:3 6:23 9:9 14:15
    30:17
**going** 4:18,20 8:13
    10:14 11:14,17 14:6
    26:10 28:6,12 30:2
    30:10
**good** 4:14 13:24 14:25
    30:8,9 31:2
**great** 18:9
**ground** 5:14

**grounds** 12:14
**gruel** 28:4
**guess** 26:18
**guidance** 28:7

————— H —————
**handed** 23:2
**handwritten** 5:24 6:2
**happened** 13:16
**happy** 22:13
**hard** 10:14
**head** 5:25
**heading** 16:6
**hear** 5:2 9:10,14 18:18
**heard** 5:10 9:20 24:6
**hearing** 30:8 32:9
**HEDGES** 2:5
**held** 24:11
**helpful** 26:21
**hey** 28:2
**holder** 13:10
**Honor** 4:20 9:6,24
    13:23 14:6 15:1,14
    16:15 17:25 18:6
    21:9 22:14 24:5 26:1
    26:15,19 27:7,18
    29:18 30:4,6,21 31:1
**Honorable** 1:18
**Hope** 2:17
**HR** 5:25
**HRVP** 14:1

————— I —————
**identified** 8:22 17:5,11
    22:7,12
**identify** 6:22
**identifying** 13:14
**imagine** 28:11
**immunity** 13:4
**impose** 20:24
**impossible** 7:20
**inactions** 27:14
**including** 21:20 22:4
**incumbent** 8:9 11:22
    12:12
**independent** 12:6
**individual** 1:6 20:3
**Infante** 1:18 4:1,1,11
    4:14,23 5:4,9 9:13
    10:9,22 12:1,23
    13:24 14:3,14,21
    15:6,10 16:24 17:23
    18:15,18 19:18,23
    21:8,24 24:6,14 25:2
    25:20 26:9,16,22
    27:11 28:5,11,16,21
    29:5,16,20 30:2,5,7
    30:22 31:2
**inference** 27:15

**information** 6:8 15:24
    21:18,21 27:24 28:2
**informative** 27:10,12
    29:3
**informed** 21:15
**initiated** 6:1
**ink** 20:21
**inquire** 29:6
**intention** 25:9,10
**interest** 20:6 22:3,5
**interested** 32:15
**internal** 6:4
**interpretation** 21:11
    21:14 27:5,8 29:3
**intervention** 9:2
**interview** 16:14
**interviews** 16:12,20
    21:2
**invalidate** 20:9
**invalidated** 21:3
**inventions** 20:5 21:19
    21:21 22:15,18
**invested** 8:4
**investigation** 4:19
    5:13 6:1,5,9,10,14
    6:16,23 7:4,10 8:11
    8:16,21,22 10:7
**Inzer** 17:3,9 18:2
    19:18 22:11
**irrelevancy** 12:9
**irrelevant** 10:10,12
    11:11,13 27:17 29:2
**Irrespective** 7:24
**issue** 4:19,21 5:13
    7:13 9:14,15,21,22
    10:9,13,15 11:2 12:4
    13:1,25 14:7,19,24
    19:13 20:4 24:17
    25:22 26:18 27:18
    30:19
**issues** 15:24 21:4,6
    24:16 25:6 30:5
**iterations** 24:3
**Ivy** 6:5 17:12 25:7

————— J —————
**Jacoby** 3:6 4:8,8,17,18
    5:12 9:7,22 10:2
    14:6,18 19:22,24
    21:10 22:13 24:9,19
    24:23 25:24 26:24
    27:18 28:9,14 30:10
    30:21,24
**Jacoby's** 28:12
**JAMES** 2:16
**January** 1:20 8:19
    16:22 17:1,3 21:19
    22:4 32:11
**Jenal** 2:16 4:10,10,20

EXHIBIT  6
PAGE  103

4:24 5:5 9:6 15:14
16:25 17:25
**Jim** 4:10 15:13
**John** 2:6 4:12 9:25
joint 4:5,15,20 5:6,9
8:24 9:8,18
**Journal** 16:12,21
judge 4:1,1,11,14,23
5:4,9 7:12,13,17,20
7:24 9:13 10:9,13,15
10:22,23 11:6,8 12:1
12:23 13:24 14:3,14
14:21 15:6,10 16:24
17:23 18:15,18 19:8
19:18,23 21:8,24
24:6,10,14,18,25
25:2,20,21 26:9,10
26:16,22 27:11 28:5
28:11,16,21 29:5,16
29:20 30:2,5,7,22
31:2
judicial 9:2

**K**

**Kaye** 5:25 6:3,13 8:16
14:2,3,10,13
**Kaye's** 15:5
keep 13:16
**Keith** 3:6 4:8
knew 11:12
know 4:24 23:21
25:12
knowing 13:2
knowledge 8:6 16:11
16:20
known 5:21 25:14
knows 26:2

**L**

**L** 1:21 32:4,22
laches 8:2 11:4 12:5
lack 9:17
language 22:21,22
large 17:21
**Larson** 7:13,20,24
10:15 11:6 19:8
24:10,18,24,25
25:21 26:10
**Larson's** 7:12,18
10:13,23
law 19:5 27:25
lay 13:8
lead 27:3,4
learned 11:12
leave 17:18 18:2 27:21
28:2
leaves 18:5
leaving 27:25
led 5:20

left 12:9
letter 5:16,17 7:25 9:1
15:17,22 17:1,3,6,12
18:20,23
letters 16:19
Let's 15:10 18:18 25:3
level 27:20
light 14:8
limitation 21:20 22:4
limitations 7:18 11:1,3
12:3
limiting 10:17
list 15:19
listed 16:9
litigation 6:8
little 7:5 25:21,25
**LITTLER** 3:5
**LLP** 2:15
log 6:11,17,20,22 7:2
8:12,19 10:5 11:22
12:11,20 13:6,7,18
13:19 14:12,17,25
logged 6:17
logging 10:5
long 26:9 30:14
longer 19:11,12,17
21:6 25:8
look 28:12
looking 18:19
**Los** 2:10,18 3:9 32:2
lots 27:22

**M**

making 10:16
manner 20:13
manufacture 5:20
manufactured 5:23
manufacturing 25:15
**March** 15:21 26:13,17
materials 27:25
**Mattel** 1:9 2:3 4:11,13
5:14,17,21,24 6:5,18
7:14 8:2,9 9:14,21
10:6 13:23 14:19
15:18,19 16:5,8,16
18:18,24 19:1,2,6,15
20:10,12,19,20,21
21:12,15,16,19,22
22:3,5,8,11,17 23:1
23:7,8,9,12 24:12,19
24:23 25:4,8 26:4,14
28:23 29:4 30:12
**Mattel's** 6:4 12:25
16:11,19,20 19:10
25:9,10 27:14
matter 7:19 11:4 27:1
mean 13:16 26:22
27:16 28:12
meaningful 17:14

means 23:23
meant 16:15
meet 8:14 10:4 14:8
14:23
**meet-and-confer**
15:20
memorializes 30:11
**MENDELSON** 3:5
merit 8:17
**MGA** 2:13 4:6,10 5:22
8:4 12:16 18:8
**MGA's** 6:24 26:3
30:11
mid-February 25:13
mid-January 25:13
mid-March 26:3
millions 8:4
mine 14:8
moment 17:18
months 8:25
morning 4:14 30:18
motion 4:6,15,20 5:6,7
5:8,9 7:12,25 8:13
8:24 9:17,19,20 11:1
11:15,15,24 15:11
15:23,25 16:1,3,18
16:19 17:17 18:8,11
18:16 19:15 24:22
24:24
move 5:12 15:10 18:10
13:18
moved 16:16
moving 4:5 9:8 16:3
17:24
**MYERS** 2:15
M1636-37 22:6
M1638 21:22

**N**

name 14:1 32:17
nature 6:8
necessarily 27:10
need 9:2 13:6 14:12
24:8 28:6
needed 20:18,20
needs 22:9
neither 32:13
net 23:11
never 23:5
new 19:25
nine 17:24 18:7,13
25:3 30:3
Non-Contractual 16:8
non-privileged 7:9,10
8:10,20 10:7 12:21
14:11
**Nos** 21:22 22:6
note 17:5
**NOTED** 31:3
notes 5:24 6:1

notice 15:12
noticed 26:4
number 22:8 26:7
numbered 16:6

**O**

objection 11:21
objections 8:17 12:9
15:3,4
objects 23:9
obligated 7:7
obligation 7:1 20:24
obligations 16:8 21:12
obvious 8:25
**Obviously** 14:11
occur 11:13
**October** 5:18
offer 8:23
offered 10:3,20 16:22
17:2 26:2
okay 4:14,19,23 12:10
12:11 13:24 15:13
25:2 30:7,22
**OLIVER** 2:5
once 14:11 24:19,23
open 16:11
operating 9:18
opinion 30:14
opportunity 9:22
13:18
opposing 29:24
opposition 4:16 17:17
order 7:18 10:13,23
10:24 24:22 26:20
30:11,15,17,19
ordering 13:20
originally 7:4,16
ought 11:4
outcome 32:15
outspoken 11:6
outstanding 18:5 25:6
26:17
overboard 22:20
overreaching 7:5
22:20 24:24
overrule 11:20 12:9
**O'MELVENY** 2:15

**P**

P 2:16
page 15:23 16:4 18:19
**PAGES** 1:25
paper 28:19
papers 4:16,16,17
**Park** 3:7
part 8:3 14:7 22:25
participants 8:22
13:15
participated 6:22

particular 28:9
particularly 10:24
parties 4:5 14:23
19:12
party 5:10 9:8,19 27:9
32:14
pass 5:1
pending 18:24
people 13:11 23:4
25:19 26:7 27:21,23
28:1
perfectly 4:25
period 26:11
permit 9:16,20
permitted 12:17
person 23:2,21
personnel 23:3
perspective 6:25 24:1
phone 4:2
pieces 28:19
place 15:21 32:7
**Plaintiff** 1:7
platform 12:7 26:24
pleadings 10:18
please 4:7,11
pled 11:16 12:4
point 4:25 5:4 8:25
9:11 11:19 12:8
17:12 19:22 26:2
policies 27:22
portion 10:25
position 29:2
possible 30:14
post-employment 21:1
potential 26:25
practice 27:12 28:1,15
precise 27:18
predict 26:10
preferably 18:13
preference 9:12
preliminary 4:21
premature 13:1 15:7
prepare 11:22 28:8
29:17 30:11,15,19
prepared 5:2
preposterous 23:14
present 15:11
presented 10:17
president 6:5
pressed 10:14
pressing 25:18
pressure 25:23
presuming 17:8
prevent 23:18
pre-employment 21:1
primary 8:1
prior 15:5 17:6
privilege 6:10,12,13
6:16,17,20,22 7:2

Page 4

8:12,17,19 10:5
11:22,24 12:11,14
12:20 13:1,3,6,7,9
13:10,14,17,19
14:12,17,24 15:4
privileged 10:6
probably 4:2
procedurally 23:25
procedure 7:19
proceed 4:17 11:18
proceedings 1:17 32:6
process 15:20
Proctor 2:7 4:12 8:18
Proctor's 8:14 14:7
produce 6:19,21 7:1,8
8:10,11,18 10:7
12:17,20 15:19
16:17 17:15
produced 5:15 7:10
8:20 9:1 16:22 21:22
22:5,10 28:21,24,24
product 5:21,23 8:5
13:4,4
production 14:16,20
14:24
promised 6:18
promptly 10:21
proper 10:12
properly 5:6
propose 12:15
propounded 7:4
protected 13:3
provide 10:3,5 12:20
24:21 25:10 26:19
purposes 15:22
pushing 26:4

_____ Q _____
question 5:5 13:25
18:25 19:9 20:11
21:10 24:2 25:12
26:25 29:10 30:16
questionnaire 20:6
questions 4:25 9:5,8
23:22 28:12
QUINN 2:5
quite 30:16

_____ R _____
raise 10:15 14:7
raised 7:22 10:9
reached 5:22
read 10:23,24 21:17
21:24,25
reading 10:13 22:1,1
real 26:25
really 11:10,11 17:15
17:24
reason 12:8 19:3

23:19
reasonable 12:18,23
26:8
reassert 20:1
received 4:16
recollection 28:23
record 4:3 30:18
32:11
recorded 30:18 32:9
reference 26:24
referred 5:15
refers 15:23
regard 12:15 16:1
regarding 6:1 11:16
25:11
regardless 12:2
reject 11:17 21:7
rejected 24:10,18
related 1:13 7:3 13:25
32:14
relates 19:6
relation-back 11:7
12:3
relevance 12:4 18:10
26:25
relevancy 11:17,21
12:7
relevant 8:1 19:11
20:13,15,15,23 21:6
22:22 23:10,11
24:17 27:1,2
relief 10:2,3,18 18:11
remainder 15:10
remaining 17:11,21
18:13
remarks 12:8
Repeatedly 6:12
reply 4:16 6:19 7:11
17:23
reporter 4:3
reproduce 8:15 14:13
reproduced 14:11
request 7:3 14:10
25:16
requested 12:14 28:9
requesting 5:25
require 30:3
required 29:9
resolution 15:20
resolve 7:6 11:2 15:15
30:10
resolved 15:25
resolves 10:13
respect 6:14 10:6 11:7
11:14 15:12 18:22
20:10,12,22,25 25:5
25:6 27:12
respond 9:22
rest 25:3

resumption 14:22
revised 22:17
revisions 22:15
right 15:6 24:14 28:5
29:6,10 30:2,22
rights 8:3
RNBx 1:9
Robert 5:17
roose 23:17
Ross 6:6 17:12 18:4
25:7
routinely 27:19
rule 9:17,19,25 11:10
11:10,11,24 12:12
13:6 24:13 27:1
29:21,22,25
ruled 7:14,24 30:12
ruling 7:12 13:1 14:9
14:19,22 15:3 22:19
29:23
rulings 30:15
run 16:3

_____ S _____
sat 8:2
saw 23:2
says 23:10
scope 9:2 14:12 19:6
19:11,12 21:11
second 16:4,6 18:19
Secondly 7:8
secret 5:22 27:19,20
security 6:4
see 24:2 25:6 29:23
seeing 17:15
seeking 18:12 20:9
seeks 10:2
seen 23:5,17
send 30:12
sense 14:17
sent 5:17
separate 16:19 17:7
17:16
serve 13:7
serving 14:24
set 5:14 17:7 32:7
setting 15:18
SGL 1:9
short 10:1,19
side 9:11
sign 23:8 27:23 29:9
30:13
signature 30:20
signed 20:22 22:8,17
22:23,25 23:3,15
29:1,7
similar 19:7 29:14
simple 23:20
simplest 15:15

simply 6:24 7:13,14,20
14:9 17:5 19:16
20:16 21:2 23:13
single 5:15 24:25
sit 23:22
six 17:20
smaller 12:19
sole 14:24
somewhat 17:12
sorry 12:9
sought 7:16 10:19
South 2:8,17
specific 15:3,4 28:19
28:19
specifically 22:7 24:11
splitting 9:7
spot-on 7:25 20:23
ss 32:1
standard 28:4
standing 5:7,10 9:17
9:19 30:17
started 23:1
Starting 18:21
STATE 32:1
STATES 1:1
statute 7:18 10:25
11:3 12:3 24:13
stenographically 32:9
step 13:5
stipulate 29:24
stop 8:16
Street 2:8,17 16:12,21
stricter 29:23
strike 29:20
subject 6:11 8:13,14
9:3 16:1 17:16 27:1
subjects 20:8
subscribed 32:16
subsequent 8:13 22:16
substance 5:18
substantive 26:6
substantively 23:24
suggest 7:5
suggested 6:21 7:11
suggesting 6:4 7:17
suggests 6:15
sum 5:18
summarily 7:20
supervision 32:11
supplement 13:19
support 27:15
sure 4:18 19:23 27:4,6
28:7
surrounding 6:9

_____ T _____
take 4:3 13:5,18 27:21
taken 15:21 26:6 29:1
32:7

talk 23:13 25:3
talking 23:18
technically 9:16
tens 8:4
tenuous 27:16
testify 18:4 19:16,18
20:7 22:10 25:10
28:8
testifying 26:7
Thank 9:24 15:8,14
29:18 30:4,24,25
Theoretically 28:5
thereof 16:9 32:15
thin 27:16
thing 12:2 15:2 16:2
24:9
things 20:17 28:9
think 10:1,19 12:18
13:9 14:21,21 15:14
24:6,19,23 25:24
26:4,9,22,23 27:7
28:11,21 29:5,21
30:8,9,15,23
thorough 10:24
three 8:25 17:6,7,10
Thursday 1:20
tight 26:11
time 11:8 13:5,5 16:15
16:18 17:16 18:23
23:4 25:13,13,14,21
25:25 27:13 30:25
31:3 32:7
timing 25:11
today 12:22 17:17
top 18:22
topic 16:13,24,25
17:13,20 19:19
topics 15:24 16:5,9,10
16:14,16,20 17:4,6
17:10,20,21,24 18:1
18:3,7,9,13,22 19:5
19:11,16,25 21:17
25:3,7,11 26:4,6,18
28:10,18 30:3
Torres 15:16 22:2
total 16:10
toy 25:14,14,15
trade 27:19,20
transcribed 32:10
transcript 1:17 32:6
trial 29:22 30:1
true 7:13 20:8,25
32:11
try 10:15 23:4
trying 30:9,13
turn 11:14 20:20
two 5:14 8:25 12:21
13:22 16:19,23 17:2
18:3 20:4 22:6

EXHIBIT __6__
PAGE __105__

two-page 15:22
type 28:3

_____ U _____

unconscionable 23:25
    24:12
understand 10:22
    11:13,18,21 12:16
    21:8 25:2
understanding 10:1
unenforceable 22:21
unintelligible 23:20
UNITED 1:1
universe 12:19
unrealistic 25:17
untrue 19:24 21:2
Upjohn 13:17,17
UPQUHART 2:5

_____ V _____

version 22:17
versions 21:18 22:2
    28:19,24
vice 6:5
view 5:9
violation 19:5 24:13
virtually 6:15 23:15
void 19:4
vs 1:8

_____ W _____

wait 9:13
waiver 20:15 28:3
Wall 16:12,21
want 4:15 9:10 14:15
    .15:2 23:19 30:14
wanted 12:7
wasn't 10:17
way 15:15 32:15
week 6:18
weeks 12:21 13:22
    16:23 17:2
went 23:3
we'll 9:14 18:4
we're 9:3 10:20 12:19
we've 6:7 10:20 23:16
    29:1
WHEREOF 32:16
whichever 9:11 18:1
willing 5:1 10:20 14:9
    14:18 17:15 23:12
    25:20 26:12
withheld 13:2
withholding 12:13
witness 8:15 16:21
    17:1,11 19:15 23:16
    27:6 29:6,11,17
    32:16
witnesses 9:9 15:19

16:2,17 17:7,22 18:7
    18:12 23:18,21
    25:10,16
work 5:14 13:4,4 23:1
    23:8
working 5:24 25:23
works 6:3
written 18:23
wrote 15:18 18:20

_____ Y _____

Yeah 25:2 29:16
year 25:13,14
years 5:14 8:3,25
yesterday 12:18

_____ 0 _____

04-09049 1:8
04-9059 1:11
05-2727 1:11

_____ 1 _____

1 1:25 6:8 8:10 16:6
    18:1,22 19:19
1st 21:19 22:4
10th 2:9
15 16:16 17:20
16 15:17 18:20
16th 17:3
17200 20:11 21:3
1995 21:20 22:4

_____ 2 _____

2 6:9 8:11 16:9 18:3,5
    25:7
2002 4:19 5:13,18 8:6
    8:16 11:12
2003 11:12 16:12,21
2004 7:2,7
2005 15:17,21 18:20
2007 1:20 32:17
2049 3:7
213 2:11,19
22 16:10 17:13,20 18:3
    18:5 25:7,9
23 16:10 18:3,5 25:7
25 1:20
26 11:10 27:1 29:21
26(b)(5) 12:12 13:6
'27 8:15
28th 25:25
29th 32:17

_____ 3 _____

3 6:10 8:12
30 12:17
30(b)(6) 9:9,15 15:12
    15:19 16:1 26:3
310 3:10

32 1:25
37 9:20,25
37(a) 9:17
39 21:23

_____ 4 _____

400 2:17
41 16:13,24
43 6:19
430-6000 2:19
443-3000 2:11
49 16:6 18:1,22 19:5
    21:24,25 26:18
    29:20

_____ 5 _____

5th 3:8 8:19
50 16:6 18:1,22 19:5
    22:1 26:18 29:20
54 16:14,25
55 16:14
553-0308 3:10
56 16:14,25

_____ 6 _____

6 16:10 18:3,5 25:7

_____ 7 _____

7 16:10 18:3,5 25:7
7695 1:21 32:4,22

_____ 8 _____

8th 16:22 17:1
865 2:8

_____ 9 _____

9:04 1:20
9:45 31:3
90017 2:10
90067 3:9
90071 2:18

EXHIBIT 6
PAGE 10Ⴆ

# EXHIBIT 7

CALENDARED

**RECEIVED**

**JAN 0 8 2009**

O

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
### CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                              Date: January 6, 2009

Title:      MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=====================================================================================
PRESENT: HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

    James Holmes                           None Present
    Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:          ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                               None Present

PROCEEDINGS:    ORDER APPOINTING DISCOVERY MASTER

    As in Phase 1 of this case, the Court intends to appoint a Discovery Master to govern any discovery disputes that might arise in Phase 2 of this case. The appointment of the Discovery Master was made at the joint request of the parties in this case. See Stipulation for Appointment of a Discovery Master and Order, December 6, 2006.

    Pursuant to Federal Rule of Civil Procedure 53(a)(1)(C), the Court continues to believe that a Discovery Master, as opposed to the assigned Magistrate Judge, is necessary to address what MGA has aptly described to the Court as "the massive administrative burdens in time and labor necessary to deal with the enormous complexities, both legal and practical, of the issues in Phase 2" and the "sheer volume of complex civil discovery disputes likely to arise in Phase 2." Based on the Court's experience in this case, there is no question that a Discovery Master is needed to "effectively and timely" address the anticipated discovery matters in this case.

    The Court previously submitted to all counsel of record the names of eight attorneys for consideration by the parties and invited counsel to submit, in camera, any objections to those attorneys to serve as a Discovery Master (or as a Special Master to oversee the implementation of the permanent injunction, if needed). The Court has carefully considered the objections submitted. Two of the individuals named were not the subject of an objection by any party. Of those two, the Court selects Robert C. O'Brien of Arent, Fox to serve as Discovery Master for Phase 2 of this

MINUTES FORM 90                                            Initials of Deputy Clerk: jh
CIVIL -- GEN                              1

01-06

EXHIBIT  7
PAGE  107

case.

The Discovery Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006, the terms and conditions of which were previously agreed to by the parties. The stay on discovery for Phase 2 of this case is hereby VACATED.

Notwithstanding the parties' stated lack of objection to the appointment of Mr. O'Brien as Discovery Master, the Discovery Master is directed to promptly disclose to counsel for all parties any potential grounds for conflict of interest or disqualification, and the parties shall, within three days of receipt of said disclosure, submit any objection to the Court in camera. A failure to object will be deemed by the Court as a waiver of any objections and consent to Mr. O'Brien to serve as Discovery Master. The Discovery Master is further directed to contact counsel for all parties and resolve any and all outstanding discovery motions as expeditiously as possible.

IT IS SO ORDERED.

EXHIBIT __7__
PAGE __108__

Date Transmit. .:        1/6/2009 3:00:50 PM

2:04-cv-9049  Doc: 4640

Melissa  Grant
Quinn Emanuel Urquhart Oliver and Hedges
865 South Figueroa Street, 10th Fl
Los Angeles, CA    90017-2543

Number of Pages:        2

*It is hereby certified that this document was served by first class mail postage prepaid or by fax or e-mail delivery to counsel (or parties) at their respective address or fax number or e-mail address of record.*

EXHIBIT __7__
PAGE __l o s__

MIME-Version:1.0
From:cacd_ecfmail@  cd.uscourts.gov
To:ecfnef@cacd.uscourts.gov
Bcc: johnquinn@quinnemanuel.com , randaosman@quinnemanuel.co
m , amorgenthaler@chrisglase.com , rkennedy@skadden.com , tn
olan@skadden.com , carl.roth@skadden.com , marcus.mumford@sk
adden.com , eherich@kmwlaw.com , timalger@quinnemanuel.com ,
 joncorey@quinnemanuel.com , michaelzeller@quinnemanuel.com
, burrow@caldwell-leslie.com , wilson@caldwell-leslie.com ,
popescu@caldwell-leslie.com , kenneth.plevan@skadden.com , d
rogosa@skadden.com , sumclaug@skadden.com , acote@obsklaw.co
m , feseroma@obsklaw.com , marina.bogorad@skadden.com , dyla
nproctor@quinnemanuel.com , westonreid@quinnemanuel.com , st
ankaras@quinnemanuel.com , gayleduran@quinnemanuel.com , sgi
zer@glaserweil.com , robynaronson@dwt.com , frankromero@dwt.
com , cdowell@kmwlaw.com , cyrusnaim@quinnemanuel.com , leah
@spertuslaw.com , mikelly@skadden.com , sandyweisburst@quinn
emanuel.com , nef@cacd.circ9.dcn , obrien.robert@arentfox.co
m , prosper.pierre@arentfox.com , barbara_north@cacd.uscourt
s.gov , dscheper@obsklaw.com,feseroma@obsklaw.com_sumry,  l
mcfarland@kmwlaw.com, moverland@obsklaw.com,jhibino@obsklaw
.com_sumry,  jrussell@skadden.com,allison.velkes@skadden.com
_sumry,  tholen@caldwell-leslie.com,mejia@caldwell-leslie.co
m,wilson@caldwell-leslie.com,  dwinthrop@howardrice.com,  di
anehutnyan@quinnemanuel.com,andreahoeven@quinnemanuel.com,
dhansen@skadden.com,  alexstolyar@quinnemanuel.com,  crd_blo
ck@cacd.uscourts.gov,crd_block@cacd.uscourts.gov_sumry,  crd
_larson@cacd.uscourts.gov,kathie_pimentel@cacd.uscourts.gov_
sumry,crd_larson@cacd.uscourts.gov_sumry,  crd_larson@cacd.u
scourts.gov,kathie_pimentel@cacd.uscourts.gov_sumry,crd_lars
on@cacd.uscourts.gov_sumry, Prosper.Pierre@Arentfox.com, Bar
bara_North@cacd.uscourts.gov,
Jerome B FalkHoward Rice Nemerovski Canady Falk & Rabkin3 Em
barcadero Ctr  7th FlSan Francisco CA 94111-4024,
Kien C TietStern and Goldberg6345 Balboa Boulevard, Suite 20
0Encino CA 91316,
Lauren E AguiarSkadden Arps Slate Meagher & Flom1440 New Yor
k AveWashington DC 20005-2111,
Melissa  GrantQuinn Emanuel Urquhart Oliver and Hedges865 So
uth Figueroa Street, 10th FlLos Angeles CA 90017-2543,
Cheryl  PlambeckDavis & Gilbert LLP1740 BroadwayNew York NY
10019US,
Amy R SabrinSkadden Arps Slate Meagher & Flom LLP1440 New Yo
rk Avenue NWWashington DC 20005-2111US,
David W FosterSkadden Arps Slate Meagher & Flom LLP1440 New

EXHIBIT    7
PAGE    110

York Avenue NWWashington DC 20005-2111US,
Peter H BonisPeter . Bonis Law Offices1990 N California Bl
vd, 8th FloorWalnut Creek CA 94596US
Message-Id:
Subject:Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant
v. Mattel Inc Order
Content-Type: text/html***NOTE TO PUBLIC ACCESS USERS*** Jud
icial Conference of the United States policy permits attorne
ys of record and parties in a case (including pro se litigan
ts) to receive one free electronic copy of all documents fil
ed electronically, if receipt is required by law or directed
by the filer. PACER access fees apply to all other users.
To avoid later charges, download a copy of each document dur
ing this first viewing. However, if the referenced document
is a transcript, the free copy and 30 page limit do not appl
y.'
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF
CALIFORNIA
Notice of Electronic Filing


The following transaction was entered on 1/6/2009 at 2:31 P
M PST and filed
on 1/6/2009


Case Name:
Carter Bryant v. Mattel Inc
Case Number:2:04-cv-9049

Filer:

Document Number:

<a href=https://ecf.cacd.uscourts.gov/doc1/03107239590?magic
_num=MAGIC&de_seq_num=14130&caseid=167222
>4640


Docket Text:

EXHIBIT  7
PAGE  111

ORDER APPOINTING DISCOVERY MASTER by Judge Stephen G. Larson
: [re Order extend. g
time [4503], Stipulation for Extension of Time to File, [449
0]; the Court
selects Robert C. O&#039;Brien of Arent, Fox to serve as Dis
covery Master
for Phase 2 of this case.  The stay on discovery for Phase 2
of this case
is hereby VACATED.  Notwithstanding the parties&#039; stated
lack of objection
to the appointment of Mr. O&#039;Brien as Discovery Master,
the Discovery
Master is directed to promptly disclose to counsel for all p
arties any potential
grounds for conflict of interest or disqualification, and th
e parties shall,
within three days of receipt of said disclosure, submit any
objection to
the Court in camera.  A failure to object will be deemed by
the Court as
a waiver of any objections and consent to Mr. O&#039;Brien t
o serve as Discovery
Master.  The Discovery Master is further directed to contact
counsel for
all parties and resolve any and all outstanding discovery mo
tions as expeditiously
as possible. See order for complete text.  (jh)


2:04-cv-9049 Notice has been electronically mailed to:


John B Quinn       johnquinn@quinnemanuel.com

Randa A F Osman      randaosman@quinnemanuel.com

David C Scheper      dscheper@obsklaw.com,feseroma@obsklaw.co
m_sumry

EXHIBIT   7
PAGE    112

Alisa Morgenthaler Lever        amorgenthaler@chrisglase.com

Larry W McFarland        lmcfarland@kmwlaw.com

Raoul D Kennedy        rkennedy@skadden.com

Mark E Overland        moverland@obsklaw.com, jhibino@obsklaw.co
m_sumry

Thomas J Nolan        tnolan@skadden.com, carl.roth@skadden.com
, marcus.mumford@skadden.com

Emil W Herich        eherich@kmwlaw.com

Jason D Russell        jrussell@skadden.com, allison.velkes@skad
den.com_sumry

Timothy L Alger        timalger@quinnemanuel.com

Sandra L Tholen        tholen@caldwell-leslie.com, mejia@caldwel
l-leslie.com, wilson@caldwell-leslie.com

Jon D Corey        joncorey@quinnemanuel.com

Douglas Andrew Winthrop        dwinthrop@howardrice.com

Michael T Zeller        michaelzeller@quinnemanuel.com

Linda M Burrow        burrow@caldwell-leslie.com, wilson@caldwe
ll-leslie.com, popescu@caldwell-leslie.com

Diane C Hutnyan        dianehutnyan@quinnemanuel.com, andreahoev
en@quinnemanuel.com

Kenneth A Plevan        kenneth.plevan@skadden.com, drogosa@ska
dden.com, sumclaug@skadden.com

EXHIBIT __7__
PAGE ___113___

Alexander H Cote      acote@obsklaw.com,teseroma@obsklaw.com

Marina Vladimir Bogorad      marina.bogorad@skadden.com

Brett Dylan Proctor      dylanproctor@quinnemanuel.com,westo
nreid@quinnemanuel.com

Stan  Karas      stankaras@quinnemanuel.com,gayleduran@quinn
emanuel.com,westonreid@quinnemanuel.com

Scott E Gizer      sgizer@glaserweil.com

David W Hansen      dhansen@skadden.com

Robyn  Aronson      robynaronson@dwt.com,frankromero@dwt.com

Oleg  Stolyar      alexstolyar@quinnemanuel.com

Christian C Dowell      cdowell@kmwlaw.com

Cyrus S Naim      cyrusnaim@quinnemanuel.com

Leah Chava Gershon      leah@spertuslaw.com

Michael P Kelly      mikelly@skadden.com

Sanford I Weisburst      sandyweisburst@quinnemanuel.com

2:04-cv-9049 Notice has been delivered by First Class U. S.
Mail or by
fax to: :

Jerome B Falk
Howard Rice Nemerovski Canady Falk & Rabkin
3 Embarcadero Ctr   7th Fl
San Francisco CA 94111-4024

EXHIBIT __7__
PAGE ___114___

Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino CA 91316


Lauren E Aguiar
Skadden Arps Slate Meagher & Flom
1440 New York Ave
Washington DC 20005-2111


Melissa  Grant
Quinn Emanuel Urquhart Oliver and Hedges
865 South Figueroa Street, 10th Fl
Los Angeles CA 90017-2543


Cheryl  Plambeck
Davis & Gilbert LLP
1740 Broadway
New York NY 10019
US

Amy R Sabrin
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington DC 20005-2111
US

David W Foster
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington DC 20005-2111
US

Peter H Bonis
Peter H. Bonis Law Offices
1990 N. California Blvd, 8th Floor
Walnut Creek CA 94596
US


EXHIBIT ___7___
PAGE ___115___