1

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

2

3

4

5

6

7 Attorneys for Mattel, Inc.

8                     UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>Hon. Stephen G. Larson<br><br>MEMORANDUM OF MATTEL, INC. REGARDING ENTRY OF JUDGMENT PURSUANT TO RULE 54(B) AND PHASE 1<br><br>[Declaration of Scott B. Kidman filed concurrently]<br><br>Hearing Date:        TBD<br>Time:                    TBD<br>Place:                   TBD<br><br>Phase 2:<br>Discovery Cut-off:      Not set<br>Pre-trial Conference:   Not set<br>Trial Date:               Not set |

07209/2794519.2

1    At the February 11, 2009 hearing, the Court requested the parties to

2  submit their respective positions on: (1) whether the Court should enter judgment

3  under Rule 54(b); and (2) whether the Court's injunctive orders, as finalized after

4  decision of pending motions, could be considered "final" for purposes of appeal, and

5  enforceable, subject to any appropriate stay or modification, in the absence of a

6  Rule 54(b) judgment.[1]  Accordingly, Mattel submits the following memorandum.

7  As stated at argument, Mattel believes that it would not be appropriate for the Court

8  to enter Rule 54(b) judgment because of the substantial overlap between the issues

9  and claims in Phase 1 and Phase 2.  Controlling authority also leaves no doubt that

10  the Court's injunctive orders, once finalized upon resolution of the pending motions,

11  are appealable and enforceable without regard to whether judgment is entered under

12  Rule 54(b).

### Discussion

14    Certification under Rule 54(b) is an extraordinary measure that is not to

15  be granted as a matter of course.  Curtiss-Wright Corp. v. General Electric Co., 446

16  U.S. 1, 5 (1980).  "Judgments under Rule 54(b) must be reserved for the unusual

17  case in which the costs and risks of multiplying the number of proceedings and of

18  overcrowding the appellate docket are outbalanced by pressing needs of the litigants

19  for an early and separate judgment as to some claims or parties."  Morrison-

20  Knudsen Co., Inc. v. J.D. Archer, 655 F.2d 962, 965 (9th Cir. 1981).  "A similarity

21  of legal or factual issues will weigh heavily against entry of judgment, and in such

22  cases a Rule 54(b) order will be proper only where necessary to avoid a harsh and

23  unjust result[.]"  Id.  In this case, there is a clear factual and legal overlap between

24  the adjudicated and pending claims, and any pressing need of the litigants for

25

26

27  [1]  February 11, 2009 Hearing Tr. at 89:6-12, attached as Exhibit 1 to the concurrently filed Declaration of Scott B. Kidman ("Kidman Dec.").

28

1   resolution is fully met by the appealability and enforceability of the Court's

2   injunctive orders, once they are finalized.

3   **I.      RULE 54(b) JUDGMENT IS NOT APPROPRIATE BECAUSE OF THE**

4   **OVERLAP BETWEEN PHASE 1 AND PHASE 2**

5           Rule 54(b) authorizes the Court to "direct entry of a final judgment as

6   to one or more but fewer than all of the claims or parties" where the adjudicated

7   claims are fully resolved and failure to enter judgment would cause an unjust result.

8   See Fed.R.Civ.P. 54(b).  Specifically, Rule 54(b) provides that:

> When an action presents more than one claim for relief . . .
> or when multiple parties are involved, the court may direct
> entry of a final judgment as to one or more, but fewer than
> all, claims or parties only if the court expressly determines
> that there is no just reason for delay.  Otherwise, any order
> or other decision…that adjudicates fewer than all the
> claims or the rights and liabilities of fewer than all the
> parties does not end the action as to any of the claims or
> parties and may be revised at any time before the entry of
> a judgment adjudicating all the claims and all the parties'
> rights and liabilities.

17          Where adjudicated and pending claims are "logically related, both

18  from a factual and legal standpoint . . . it is not proper to direct entry of a separate

19  judgment pursuant to Rule 54(b)."  Morrison-Knudsen Co., Inc. v. Archer, 655 F.2d

20  at 965.  See Wood v. GCC Bend, LLC, 422 F.3d 873, 878 n.2 (9th Cir. 2005)

21  (standard for judgment under Rule 54(b) includes "whether the claims finally

22  adjudicated were separate, distinct, and independent of any other claims"); see also

23  Curtis-Wright Corp. v. General Elec. Co, 446 U.S. at 8 (Rule 54(b) factors include

24  "whether the claims under review were separable from the others remaining to be

25  adjudicated and whether the nature of the claims already determined was such that

26  no appellate court would have to decide the same issues more than once even if

27  there were subsequent appeals."); In re Real Estate Associates Ltd. Partnership

28  Litigation, 2002 WL 31995687, at *2 (C.D. Cal. Dec. 6, 2002) (judgment under

07209/2794519.2

-2-

MATTEL, INC.'S SUBMISSION RE RULE 54(B)

1   <u>Rule</u> 54(b) not proper because "the facts and circumstances of th[e] case are

2   exceedingly complex[,]" and "[t]o separate the litigation into pieces and send each

3   one separately to the Ninth Circuit would result in a waste of judicial resources").

4   **A.**    **<u>Rule 54(b) Judgment Is Impermissible Because There Is</u>**

5   **<u>Substantial Overlap Between Phase 1 and Phase 2</u>**

6   As Mattel's has stated from the outset, there is overlap between Phase 1

7   and Phase 2.  Indeed, it was for this reason that Mattel had opposed bifurcation.[2]

8   The overlap between Phase 1 and Phase 2 is particularly clear with respect to

9   Mattel's RICO claims, as several of the alleged predicate acts are based on the

10  wrongdoing at issue in Phase 1.  For example, Mattel alleges that:

11  •   MGA, Larian and Bryant engaged in witness/evidence tampering,

12      including:

13      -   "[A]ltering Bryant's contract with MGA relating to Bratz to

14          conceal evidence that Bryant faxed the contract from the

            BARBIE COLLECTIBLES department of Mattel, using a fax

15          machine owned by Mattel and while Bryant was employed by

16          Mattel,"

17      -   "[A]ltering numerous original Bratz drawings created by Bryant

18          by adding false and misleading date notations of '8/1998' and

            '©8/1998' to the drawings even though the drawings were not

19          created in August 1998"; and

20

21

22

23  [2]   Transcript of January 8, 2007 Hearing Re Mattel's Motion for Leave to

24  Amend Complaint ("1/8/07 Hr. Tr.") at 8:18-9:17 (Counsel for Mattel argued that

    Mattel's claims regarding MGA's and Bryant's theft of Bratz from Mattel should not

25  be bifurcated from its claims regarding MGA's theft of other Mattel trade secrets,

26  including the theft in Mexico and Canada, because each of these acts evidences a

    pattern of racketeering activity and thus relate to Mattel's RICO claims), Kidman

27  Dec., Exh. 2.

28

1      -      "[D]estroying electronic and other evidence, including by
2             destroying evidence previously contained on Carter Bryant's and
              Isaac Larian's computer hard drives;"[3] and

3   •   MGA, Larian and Bryant willfully infringed Mattel's copyrights for
4       purposes of commercial advantage and financial gain.[4]

5          Furthermore, while the jury found in Phase 1B that MGA's
6   infringement was not willful up to that point in time and based on the evidence it
7   had before it, Mattel has the right and intends to assert in Phase 2 that MGA's
8   ongoing post-verdict infringement -- even after the jury found it liable for copyright
9   infringement -- shows willfulness and are among its RICO predicate acts of criminal
10  copyright infringement.

11         Moreover, one RICO enterprise explicitly alleged in Mattel's operative
12  pleadings is denominated the "Bryant Group," some of the conduct of which was at
13  issue in Phase 1.[5]  Mattel specifically invoked the link between Bryant/Bratz and its
14  RICO claims during the proceedings on phasing:

15         Mattel alleges that all counter-defendants, including
16         Bryant, engaged in and continue to engage in a pattern of
           predicate acts, including mail and wire fraud, witness
17         tampering, travel act violations and criminal copyright
18         infringement in violation of the RICO statute.  Alleged
           misconduct includes fraudulent communications in
19         furtherance of a scheme to defraud Mattel of its rightful
           property that includes not only Bratz, but other
20         misappropriated trade secrets and proprietary information,
21         of Bryant's illegal acceptance of payments from MGA, a
           Mattel competitor while a Mattel employee, and engaging

22

23

24

25     [3]   Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 Counterclaims,
26  dated July 12, 2007 at ¶¶ 93(c)(i)-(iii), Kidman Dec., Exh. 3.
       [4]   Id. at ¶ 93(e).
27     [5]   See id. ¶¶ 99-100.

28

in criminal copyright infringement of Bratz and misappropriated trade secret and proprietary information.[6]

Overlap also exists with respect to Mattel's misappropriation of trade secrets claim.  Mattel is pursuing in Phase 2 a misappropriation of trade secrets claim against MGA based in part on the theft of the Bratz designs.  This clearly overlaps with Phase 1 issues.  Indeed, the Court itself recognized the overlap in granting Mattel leave to amend.[7]

Conversely, there is overlap between Mattel's Phase 1 claims and MGA's pending Phase 2 claims.  In particular, MGA alleges Phase 2 claims based on its alleged trade dress and other rights to Bratz.  Phase 1 determinations that Mattel, and not MGA, owns the rights to Bratz obviate those Phase 2 claims.  As the Court also recognized on Mattel's motion for leave to amend, Phase 1 and Phase 2 overlap in these respects as well.[8]

In cases involving similar overlap, courts have declined to enter judgment under Rule 54(b), even in the face of requests by a party claiming

---

[6] Mattel's Motion to Try Claims Related to Bratz Ownership in Phase One, dated May 8, 2007, at 19:1-9, Kidman Dec., Exh. 4.

[7] See Order Regarding Mattel's Motion for Leave to Amend, dated January 11, 2007 at 21:12-16, Kidman Dec., Exh. 5 ("[I]f Mattel does not own rights to Bratz, then some of the defenses and counterclaims set forth as independent claims…may become moot, including…portions of [Mattel's] remaining RICO [and] misappropriation…claims."); see also id. at 21:22-26 (noting that "upon further questioning by the Court, counsel for Mattel acknowledged that much of [Mattel's copyright and RICO] claims were, like the claims at issue in [Case No.] 05-2727, dependent upon resolution of the ownership issue.").

[8] Id. at 3:7-13 ("[E]ven though the allegations in 05-2727 concern Mattel's alleged efforts at defeating the marketing of BRATZ dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot many of those allegations.  It is hard to imagine how it is unlawful for a company to thwart or otherwise undermine the marketing of a product it owns.  Thus, if Mattel owned the rights to BRATZ dolls, many of the allegations in the 05-2727 complaint would become moot.").

1  hardship in the absence of such an order. See, e.g., Bruce v. Martin, 702 F. Supp.

2  66, 69 (S.D.N.Y. 1988) (entry of judgment for plaintiff's RICO claim under Rule

3  54(b) not proper because the RICO claim and remaining securities claims are

4  "closely related and based upon the same facts and transactions"); Albright v.

5  Attorney's Title Ins. Fund, 2008 WL 376251, at *2 (D. Utah Feb. 11, 2008)

6  (declining to certify judgment pursuant to Rule 54(b) because the remaining

7  "contract, statutory and tort claims" are based on "the same facts that gave rise to the

8  predicate acts of the now dismissed RICO ... claims"). In Albright, the court found

9  that the claims were "inseparable" because plaintiffs would "essentially have to

10 prove the same set of facts." Id. While Mattel's RICO claims are broader than just

11 the Bryant- and Bratz-related facts and issues, those facts and issues are nonetheless

12 an integral part of the RICO claims. Entry of Rule 54(b) judgment would therefore

13 be impermissible.

14     **B.     The MGA Parties Will Not Face A Harsh Or Unjust Result Absent**

15             **A Rule 54(b) Judgment**

16             In this case, there has been no showing, by either party, of the sort of

17 "pressing needs" for an early and separate judgment necessary to support an

18 exception from the usual rules as to finality. The failure of either party to seek such

19 certification is itself powerful evidence that neither would face a "harsh and unjust

20 result" in its absence. See Cherokee Nation of Oklahoma v. U.S., 23 Cl. Ct. 735,

21 739 (Cl. Ct. 1991) (plaintiff failed to make requisite showing of "no just reason for

22 delay" because it filed its Rule 54(b) motion over eight months after the court made

23 its decision for which plaintiff seeks final judgment, demonstrating that there was no

24 urgent need for immediate appeal of adjudicated claims); Schaefer v. First National

25 Bank of Lincolnwood, 465 F.2d 234, 235-36 (7th Cir. 1972) (finding that "the lack

26 of diligence on the part of the plaintiffs in seeking the Rule 54(b) order ... is

27 sufficient, without more, to warrant our dismissal of the present appeal[,]" where

28 plaintiffs waited nearly three months to seek Rule 54(b) certification). In fact, as

07209/2794519.2

-6-

MATTEL, INC.'S SUBMISSION RE RULE 54(B)

1   both parties clearly have recognized, the Court's injunctive orders, once finalized

2   upon decision of the pending motions, are separately appealable and enforceable,

3   thus obviating any "pressing need" for piecemeal appellate review of the case as a

4   whole through a <u>Rule</u> 54(b) judgment.[9]

5   **II.      THE COURT'S FINAL INJUNCTION ORDERS WILL BE**

6          **APPEALABLE AND ENFORCEABLE WITHOUT A RULE 54(b)**

7          **JUDGMENT**

8               An appeal from the Court's final injunction orders does not require

9   entry of a judgment under <u>Rule</u> 54(b).  <u>See</u> <u>Hoonah Indian Ass'n v. Morrison</u>, 170

10  F.3d 1223, 1225 (9th Cir. 1999) (court had jurisdiction to review interlocutory

11  appeal of denial of permanent injunction under 28 U.S.C. § 1292(a)(1) absent <u>Rule</u>

12  54(b) certification); <u>Simmons v. Block</u>, 782 F.2d 1545, 1549 (11th Cir. 1986)

13  (appeal could be taken under § 1292(b)(1) from entry of permanent injunction

14  although other claims remained pending and final judgment had not been entered

15  under <u>Rule</u> 54(b) because "[t]he appealability of an injunction under 28 U.S.C. §

16  1292(a)(1) is not affected by Fed. R. Civ. P. 54(b)"); <u>Gray Line Motor Tours, Inc. v.</u>

17  <u>City of New Orleans</u>, 498 F.2d 293, 295 (5th Cir. 1974) ("appellant need not obtain

18  a certification under 54(b) if the order entered by the district court falls under

19  section 1292(a)(1)" because injunctive orders "are considered to be outside the

20  scope of Rule 54(b)"); <u>Ransburg Electro-Coating Corp. v. Lansdale Finishers, Inc.</u>,

21  484 F.2d 1037, 1038 (3rd. Cir. 1973) (appeal of injunction proper even though there

22  was no final judgment as to all parties because <u>Rule</u> 54(b) "does not affect" the

23  appealability of orders granting injunctions under Section 1292(a)(1)); 16 Wright

24  ───────────────────

25     [9]  Indeed, MGA erroneously attempted to appeal those orders even before they
    were final.  <u>See</u> Notice of Appeal to the United States Court of Appeals for the
26  Ninth Circuit, dated December 11, 2008 (Docket No. 4459), Kidman Dec., Exh. 6;
27     (footnote continued)

28

1  and Miller, Federal Practice and Procedure, § 3921 (2nd ed. 1996) ("The provisions

2  of Rule 54(b), governing the finality of orders that finally dispose of less than all the

3  claims as to all of the parties in multiclaim or multiparty litigation, do not limit

4  appeals under § 1292(a)(1), even as to orders granting or denying permanent

5  injunctions.").

6            U.S. v. Humboldt County, 615 F.2d 1260, 1261 (9th Cir. 1980), is

7  directly on point.  There, the plaintiff sought to enjoin Humboldt County from

8  enforcing certain provisions of its zoning and building codes.  The County filed a

9  counterclaim seeking to enforce the zoning and building code provisions and two

10 additional ordinances.  The trial court entered a "judgment" enjoining the County

11 from enforcing the zoning and building code provisions but did not rule on its right

12 to enforce the two additional ordinances at issue in the counterclaim.  The County

13 appealed the injunction and the plaintiff argued that the Ninth Circuit lacked

14 jurisdiction because the trial court's "judgment" disposed of fewer than all the claims

15 and the court did not make the determination provided for in Rule 54(b).  The Ninth

16 Circuit rejected this argument, noting that it "[o]verlooked . . . the fact that the

17 judgment is an injunction, and is thus appealable under 28 U.S.C. § 1292(a)(1)."

18 Id.[10]

19 _____

20 Ninth Circuit Order, dated January 12, 2009, Kidman Dec., Exh. 7 (dismissing the
   MGA Parties' appeal for lack of jurisdiction).
21     [10]   The court used the term injunction "judgment" though it was clear there was
22 no final judgment within the meaning of Rule 54(b).  "The terminology can be
   confusing because a judgment may be appealable at once even though not 'final'
23 within the meaning of Rule 54(b).  See, e.g., 28 U.S.C. § 1292(a)(1) (injunctions).
24 Yet because such situations are exceptions, it is commonplace to use the phrase
   'final judgment' as a synonym for 'appealable judgment,' even though the concepts
25 are not identical."  Harris v. Rivera Cruz, 20 F.3d 507, 511 n.4 (1st Cir. 1994)
26 (Boudin, J.); see also Balla v. Idaho State Board of Corrections, 869 F.2d 461 466
   (9th Cir. 1988) (The word "judgment" as used in the Federal Rules of Civil
27 Procedure "encompasses final judgments and appealable interlocutory orders").

28

07209/2794519.2

-8-

MATTEL, INC.'S SUBMISSION RE RULE 54(B)

1    Likewise, a <u>Rule</u> 54(b) judgment is not required in order for the final

2  injunction orders to be enforceable.  Enforceability is the hallmark of an appealable

3  injunction.  <u>See</u> 19 James W. Moore et al., <u>Moore's Federal Practice</u> § 203.10[2][c]

4  at 203-16 to 203-17 (3d ed. 2008) ("an injunction that is not enforceable is by its

5  terms is not appealable"); <u>Zucker v. Maxicare Health Plans, Inc.</u>, 14 F.3d 477, 483

6  (9th Cir. 1994) (injunction does not qualify as an appealable injunction under

7  Section 1292(a)(1) unless it is "an enforceable injunction"); <u>Original Great Am.</u>

8  <u>Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.</u>, 970 F.2d 273, 276 (7th

9  Cir. 1992) ("An injunction that has no binding force at all simply cannot be

10  appealed.").  Indeed, if final injunction orders were not enforceable, there would

11  have been no reason for Congress to carve out an exception to the final judgment

12  rule by authorizing interlocutory appeals of such orders under Section 1292(a)(1).[11]

13                                            **Conclusion**

14    For the foregoing reasons, Mattel respectfully submits that a <u>Rule</u> 54(b)

15  judgment is neither appropriate nor required for the Court's injunction orders, once

16  finalized, to be enforceable or appealable.

17

18  DATED:  February 13, 2009          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

19

20                                            By /s/ Michael T. Zeller
                                                 Michael T. Zeller
21                                               Attorneys for Mattel, Inc.

22

23

24  _____

25    [11]  Of course, parties are not required to file an interlocutory appeal of a final
    injunction order.  "Interlocutory appeal of a permanent injunction is not mandatory,
26  as the order remains part of the case and merges with the final judgment, from
    which an appeal can then be taken." <u>Chicago Board of Education v. Substance, Inc.</u>,
27  354 F.3d 624, 626 (7th Cir. 2003) (citation omitted).

28