# EXHIBIT 1

1

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3                         EASTERN DIVISION

4                              - - -

5            HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                              - - -

7    MATTEL, INC.,                  )
                                    )
8                      Plaintiff,   )
                                    )
9              vs.                  )  No. CV 04-09049
                                    )
10   MGA ENTERTAINMENT, INC., ET. AL.,  )
                                    )
11                     Defendants.  )
     _____)  Motions
12   AND CONSOLIDATED ACTIONS,      )
                                    )
13   _____)

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                     Riverside, California

17                 Wednesday, February 11, 2009

18                        10:03 A.M.

19

20

21

22

23                   THERESA A. LANZA, RPR, CSR
                   Federal Official Court Reporter
24                    3470 12th Street, Rm. 134
                     Riverside, California  92501
25                        951-274-0844
                       WWW.THERESALANZA.COM

:dnesday, February 11, 2009  EXHIBIT ____/_____ Mattel vs. MGA Entertainmer

PAGE____3____

```
 1   APPEARANCES:

 2   ON BEHALF OF MATTEL, INC.:

 3                         QUINN EMANUEL
                          By:   JOHN QUINN
 4                              DYLAN PROCTOR
                               MICHAEL T. ZELLER
 5                        865 S. FIGUEROA STREET,
                          10TH FLOOR
 6                        LOS ANGELES, California   90017
                          213-624-7707
 7

 8   ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
         (Outgoing)
 9                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:   THOMAS J. NOLAN
10                              JASON RUSSELL
                          300 SOUTH GRAND AVENUE
11                        LOS ANGELES, CALIFORNIA   90071-3144
                          213-687-5000
12

13   ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
         (Incoming)
14                         GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
                          BY:   JOEL KLEVENS
15                        10250 Constellation Boulevard
                          Los Angeles, California   90067
16                        310-553-3000

17                         MITCHELL, SILBERBERG & KNUPP LLP
                          BY:   RUSSELL J. FRACKMAN
18                        11377 West Olympic Boulevard,
                          Los Angeles, California   90064-1683
19                        310-312-2000

20
     ON BEHALF OF DEFENDANT GUSTAVO MACHADO:
21
                          OVERLAND BORENSTEIN SCHEPER & KIM LLP
22                        BY:   ALEXANDER H. COTE
                          601 West Fifth Street,
23                        12th Floor
                          Los Angeles, California   90071
24                        213-613-4660

25   /  /  /
```

dnesday, February 11, 2009   **EXHIBIT** _____/_____ Mattel vs. MGA Entertainmer

**PAGE** _____4_____

1  without the ability to consult with appellate counsel or my

2  client; so I'm not in a position right now to say.

3          My gut would be to say, Your Honor, to see the

4  rulings that the Court issues; ask the Court on a short leash,

5  maybe ten days after the entry of the Court's rulings on these          02:21

6  matters, and any indication with respect to how you would

7  adjust, modify the terms of the face of the injunction and/or

8  the constructive trust, if there were going to be any changes,

9  so that we would then be in a position to advise the Court what

10  our position is as to whether or not the two can be separated.          02:21

11          With respect to the judgment on Phase 1 following the

12  Court's entry of order, a similar issue, given Mattel's

13  position, that they think that's inappropriate, given what they

14  contend to be some overlapping issues between Phase 1 and

15  Phase 2.  Again, I'm not shy about coming up with affirmative          02:21

16  positions with respect to our position, but I'd like to do it

17  only when I've had the ability to consult with my clients.

18          Perhaps I should have been prepared to do that today,

19  and I apologize for not being able to.  But I would ask the

20  Court to consider the possibility of asking us to come back          02:22

21  within a limited period of time after the entry of the orders

22  and we'd be in a position to lay out a roadmap as to how we

23  view the substance of that order.

24          It may very well be that with respect to either the

25  preliminary injunction, the stay, the affect of that, the          02:22

:dnesday, February 11, 2009   **EXHIBIT** ___1___          Mattel vs. MGA Entertainmer

PAGE ___5___

1   constructive trust, the affects of the stay, that we would want

2   to raise certain issues with the Court that are not before the

3   Court right now, and that's the only reason why I want to hold

4   back and not to confirm a very firm position right now.

5           **THE COURT:**  Very well.                                02:22

6           I will give you until Friday, both sides, until

7   Friday, to submit their respective positions on whether or not

8   the Court should or should not enter a 54-B judgment; and,

9   alternatively, if it does not enter a 54-B judgment, your

10  respective positions on how the Court should enter a final      02:23

11  order with respect to Phase 1; and that way you can consult

12  with your client and other counsel.

13          **MR. NOLAN:**  Right.

14          **THE COURT:**  But the Court would want to make this as

15  part of its next order that it issues.                          02:23

16          We have had exhaustive briefing and hearings on the

17  issue of injunctions and all of the rest, and we're not going

18  to revisit that or reopen that, but I'll give you an

19  opportunity to consult with all counsel and your client, of

20  course, and advise the Court of your respective positions so I  02:23

21  can address that.

22          **MR. NOLAN:**  I appreciate that.

23          As the Court knows, with respect to the phasing of

24  counsel in this case and Mr. Zeller's contention there's an

25  overlap with the Phase 2 issues, I do feel the need to consult  02:23

:dnesday, February 11, 2009   **EXHIBIT** _____/_____Mattel vs. MGA Entertainmer

PAGE _____ 6 _____

1    with opposing counsel --

2           **THE COURT:** I'm somewhat disappointed that the lead

3    counsel is not present here today, because this was the hearing

4    that was designated previously on several occasions as the time

5    that we would be discussing the resolution of Phase 1 and the        02:24

6    scheduling of Phase 2. But I will give you some latitude on

7    that point.

8           **MR. NOLAN:** I appreciate that, Your Honor.

9           On Friday we'll have our submissions.

10          Thank you very much.                                           02:24

11          **THE COURT:** Very well.

12          The last issue I want to take up is the scheduling of

13   Phase 2 at this time, and I had asked counsel previously to

14   come prepared to discuss and to commit to those dates.

15          Essentially, I want to come up with five dates:  A          02:24

16   discovery cutoff date, a dispositive motion cutoff date, a

17   pretrial conference date, a trial date, and a mandatory

18   settlement conference cutoff date; so those are the five dates.

19          I'll hear from either side on this.

20          There's now nobody on the defense counsel table for         02:24

21   MGA.  This is somewhat disconcerting.  Someone is going to have

22   to come forward and pick this up.

23          (Laughter.)

24          **MR. ZELLER:** One thing, Your Honor, if I may just

25   start with this.  The Court about a month ago lifted the          02:25

EXHIBIT ___/___

PAGE ___7___

Mattel vs. MGA Entertainmeɪ



```
 1   we'll go from there.

 2              MR. ZELLER:   Thank you.

 3              THE COURT:   Anything further?

 4              Thank you.   Good day.

 5

 6

 7

 8

 9

10                         CERTIFICATE

11

12   I hereby certify that pursuant to section 753, title 28, United
     States Code, the foregoing is a true and correct transcript of
13   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
14   conformance with the regulations of the Judicial Conference of
     the United States.
15

16   _____          _____
     THERESA A. LANZA, CSR, RPR                      Date
17   Federal Official Court Reporter

18

19

20

21

22

23

24

25
```

ednesday, February 11, 2009    EXHIBIT ____/____    Mattel vs. MGA Entertainmen

PAGE ____8____

# EXHIBIT 2

1

1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3            EASTERN DIVISION

4              - - -

5   HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6              - - -

7   CARTER BRYANT, INDIV,              )
                                       )
8                  PLAINTIFF,          )
                                       )
9        VS.                           )   NO. ED CV 04-09049
                                       )   (LEAD LOW NUMBER)
10  MATTEL, INC.,                      )
                                       )
11                 DEFENDANTS.         )
    _____)
12  AND RELATED ACTIONS,               )
                                       )
13  _____)

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16            RIVERSIDE, CALIFORNIA

17           MONDAY, JANUARY 8, 2007

18              10:26 A.M.

19

20

21

22

23

24

25

**CERTIFIED COPY**

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA  92501
(951) 274-0844
CSR11457@SBCGLOBAL.NET

EXHIBIT ___2___

1-8-07          ___9___          ED CV 04-09049
PAGE

```
 1   APPEARANCES:

 2

 3   ON BEHALF OF PLAINTIFF/COUNTER DEFENDANT MATTEL, INC.:

 4
                         QUINN EMANUEL
 5                       BY:   JOHN B. QUINN
                         BY:   MICHAEL T. ZELLER
 6                       865 S. FIGUEROA STREET,
                         10TH FLOOR
 7                       LOS ANGELES, CALIFORNIA  90017
                         (213) 624-7707
 8

 9
     ON BEHALF OF PLAINTIFF/COUNTER COMPLAINANT/DEFENDANT,
10   CARTER BRYANT:

11                       LITTLER MENDELSON
                         BY:   KEITH A. JACOBY
12                       2049 CENTURY PARK EAST,
                         FIFTH FLOOR
13                       LOS ANGELES, CALIFORNIA  90067
                         (310) 553-0308
14

15
     ON BEHALF OF MGA ENTERTAINMENT:
16
                         O'MELVENY & MYERS LLP
17                       BY:   DALE CENDALI
                         BY:   DIANA M. TORRES
18                       400 SOUTH HOPE STREET
                         LOS ANGELES, CALIFORNIA  90071-2899
19                       (213) 430-6000

20

21

22

23

24

25
```

```
 1   THAT.

 2            BUT HE CREATED THESE DRAWINGS.  HE HAD A CONTRACT

 3   THAT SAID THAT ANY SUCH DESIGNS YOU CREATE, WE OWN.  YOUR

 4   HONOR, OUR POSITION IS THAT THE BRATZ DRAWINGS, THE

 5   THREE-DIMENSIONAL BRATZ PRODUCT, IS A WORK THAT IS DERIVATIVE    10:31

 6   OF THOSE DRAWINGS WHICH WE OWN.

 7            THE COURT:  SO IT'S ALSO INTERTWINED WITH THIS ISSUE

 8   OF THE OWNERSHIP OF BRATZ?

 9            MR. QUINN:  IT'S PART OF THE OWNERSHIP OF BRATZ, TO

10   BE SURE.                                                        10:31

11            BUT ALSO WHAT WE FOUND -- AND A LOT OF THIS RELATES

12   TO EVENTS --

13            THE COURT:  AND WOULDN'T, THEN, IF THE FIRST PHASE,

14   AS I DESCRIBE IT, AS A BIFURCATED TRIAL, ESTABLISHED OWNERSHIP

15   OF BRATZ IN MGA, WOULDN'T THAT UNDERMINE OR RESOLVE THE         10:31

16   COPYRIGHT ISSUES AS WELL?

17            MR. QUINN:  IF THE COURT FOUND THAT THEY WERE -- IF

18   IT WERE DETERMINED THAT HE DID NOT CREATE THESE DRAWINGS WHILE

19   HE WORKED AT MATTEL, THAT MATTEL HAD NO CLAIM TO OWNERSHIP OF

20   THE DRAWINGS, THEN IT WOULD BE HARD FOR ME TO SEE HOW A         10:32

21   COPYRIGHT CLAIM COULD BE PURSUED.

22            THE COURT:  AND CONVERSELY, IF THE COURT WERE TO

23   FIND -- IF WE ULTIMATELY FOUND THAT THEY WERE MATTEL'S, THAT

24   WOULD -- IF NOT RESOLVE, IT WOULD GO A LONG WAY IN RESOLVING

25   THE COPYRIGHT CLAIM AS WELL.                                    10:32
```

8

```
 1            MR. QUINN:  I THINK IT WOULD.  THAT WOULD OBVIOUSLY
 2   BE A KEY ELEMENT OF THE COPYRIGHT CLAIM.
 3            THE COURT:  AGAIN, DOESN'T THIS SUGGEST HOLDING OFF
 4   ON THE COPYRIGHT AND PUTTING THAT IN THAT -2727 CASE?
 5            MR. QUINN:  I THINK THAT WOULD BE VERY DIFFICULT TO    10:32
 6   DO, YOUR HONOR.
 7            THE COURT:  WHY IS THAT?
 8            MR. QUINN:  BECAUSE IT RELATES TO ISSUES THAT ARE
 9   ISSUES IN THE CASE -- I MEAN, THE OWNERSHIP OF BRATZ HAS GOT TO
10   BE DETERMINED; WHEN HE CREATED THAT; WHETHER IT'S A DERIVATIVE  10:32
11   WORK.  THOSE ARE COPYRIGHTS.  THOSE WILL BE GOVERNED BY ISSUES
12   OF COPYRIGHT LAW.  AND IN THE ABSTRACT, DECIDING WHO OWNS
13   BRATZ, FIRST YOU HAVE TO DECIDE, WELL, WHAT'S BRATZ?  ARE WE
14   TALKING ABOUT THESE DRAWINGS, OR ARE WE TALKING ABOUT THE LATER
15   THREE-DIMENSIONAL EMBODIMENT WHICH IS ULTIMATELY SOLD TO THE    10:33
16   PUBLIC AS THE DOLL?
17            I DON'T SEE HOW THAT ISSUE CAN BE BIFURCATED.
18            BUT I GUESS ANOTHER ISSUE, AND PERHAPS A MORE
19   IMPORTANT ISSUE, YOUR HONOR, IS THAT SINCE THE ORIGINAL
20   COMPLAINT WAS FILED, WE HAVE FOUND -- AND THERE HAVE BEEN A     10:33
21   SERIES OF EVENTS THAT ARE SET FORTH IN THE COMPLAINT -- THAT
22   THE WHOLE EPISODE WITH RESPECT TO MR. BRYANT AND THE ORIGINAL
23   CREATION OF BRATZ WAS JUST ONE OF A SERIES OF EVENTS WHICH HAVE
24   HAPPENED.  THE ALLEGATIONS RELATING TO THE EVENTS IN MEXICO,
25   WHERE THERE WAS A WHOLESALE THEFT OF VIRTUALLY ALL OF MATTEL'S  10:34
```

1-8-07 EXHIBIT ___2___ ED CV 04-09049

PAGE ___12___

1    INTELLECTUAL PROPERTY THAT WAS THERE, AND THE INFORMATION COMES

2    BACK TO THE UNITED STATES; THE SITUATION IN CANADA, WHERE AN

3    EMPLOYEE LEFT AND TOOK A THUMB DRIVE AND HAD ALL OF THAT

4    INFORMATION WITH HER; THE SITUATION OF MR. BRAUR, WHO TOOK WITH

5    HIM ALL OF -- VARIOUS TRADE SECRET INFORMATION, CERTAIN CONTACT    10:34

6    -- SENSITIVE CONTACT INFORMATION RELATING TO CUSTOMERS.  ALL OF

7    THAT, YOUR HONOR, IS A PATTERN OF RACKETEERING ACTIVITY.  IT'S

8    A RICO CLAIM.  AND THAT HAS TO BE ADDRESSED IN ONE PROCEEDING.

9             THERE'S A SUGGESTION IN THE OPPOSITION TO THE MOTION

10   BY MR. BRYANT THAT REALLY THIS IS UNFAIR TO HIM, FOR HIS CASE    10:34

11   TO BE PRESENTED AS PART OF THIS LARGER PATTERN OF EVENTS.

12            I THINK THE ANSWER TO THAT IS, IF THERE IS A RICO

13   CLAIM, IF THERE IS A PATTERN OF RACKETEERING ACTIVITY, IT'S NOT

14   AN ANSWER FOR ANY ONE PARTICIPANT IN THE ENTERPRISE TO SAY, I'M

15   PREJUDICED FOR THIS CASE AND MY CASE TO BE PRESENTED AS PART OF    10:35

16   THIS LARGER ENTERPRISE.  THAT'S SORT OF IN THE NATURE OF A RICO

17   CLAIM.  YOU CAN'T BIFURCATE IT.

18            THE COURT:  I UNDERSTAND.  AND I UNDERSTAND THAT

19   THESE ISSUES NEED BE PRESENTED AND LITIGATED.  I GUESS I'M

20   TRYING TO -- WHAT I WANT TO SEGUE INTO ULTIMATELY IS A SENSIBLE    10:35

21   SCHEDULING OF THESE MATTERS.  I DON'T WANT THESE CASES --

22   THEY'VE GONE ON FOR QUITE SOME TIME NOW, AND I KNOW THE COURT

23   HAS APPROVED A SPECIAL MASTER FOR DISCOVERY.  I HAVE A REAL

24   FEAR THAT THIS CASE IS GOING TO DRAG ON LONGER THAN IT SHOULD,

25   AND I'M TRYING TO PUT A CAP ON IT WHILE, AT THE SAME TIME,    10:35

1    CERTAINLY GIVE YOU AN OPPORTUNITY TO LITIGATE ANY ISSUES THAT

2    YOU NEED TO LITIGATE.

3            SO YOU SUGGEST THAT WE BRING THE COPYRIGHT CLAIM IN

4    THE FIRST?

5            MR. QUINN:  IT'S VERY HARD FOR ME TO SEE HOW THAT        10:35

6    GETS BIFURCATED OUT.

7            THE COURT:  HOW DO YOU PROPOSE, THEN -- EXPLAIN TO ME

8    YOUR THEORY OF HOW THESE TWO CASES SHOULD BE LITIGATED.

9            MR. QUINN:  LITIGATED OR TRIED?

10           THE COURT:  TRIED.                                       10:36

11           MR. QUINN:  BECAUSE WE DISCUSSED THIS ISSUE A LITTLE

12   BIT EARLIER --

13           THE COURT:  RIGHT.

14           MR. QUINN:  -- AND THE COURT SUGGESTED WE CAN DEFER

15   THAT TO ANOTHER DAY.                                             10:36

16           THE COURT:  AND MAYBE THAT DAY HAS ARRIVED.

17           MR. QUINN:  YOUR HONOR, ONE THING I'LL SAY IN

18   RESPONSE IS, THE COURT KNOWS THIS CASE WAS STAYED FOR A LITTLE

19   OVER A YEAR WHILE IT WAS UP IN THE NINTH CIRCUIT, AND IT'S BEEN

20   BACK AND DISCOVERY HAS BEEN PROCEEDING, IN SOMEWHAT FITS AND     10:36

21   STARTS.  THERE HAVE BEEN SOME PROBLEMS.

22           JUST, FOR EXAMPLE, THIS LAST WEEKEND, WE GOT INITIAL

23   DISCLOSURES, RULE 26 INITIAL DISCLOSURES, FROM MGA, AND WE

24   EXCHANGED THOSE DISCLOSURES.  SO IN SOME WAYS, IT'S AT AN EARLY

25   STAGE.                                                           10:36

1

2

3                                    CERTIFICATE

4

5    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
6    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
7    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

8

9

10   THERESA A. LANZA, RPR, CSR            7-9-07
     OFFICIAL COURT REPORTER                  DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1-8-07   EXHIBIT   2    ED CV 04-09049

PAGE   15

# EXHIBIT 3

**CONFORMED COPY**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 90378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   Duane R. Lyons (Bar No. 125091)
5  (duanelyons@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9            UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11 | CARTER BRYANT, an individual,          | CASE NO. CV 04-9049 SGL (RNBx)

12 |        Plaintiff,                       | Consolidated With Case No. 04-9059 and
                                              Case No. 05-2727

13 |    v.

14 |                                         | MATTEL, INC.'S SECOND AMENDED
                                              ANSWER IN CASE NO. 05-2727 AND
15 | MATTEL, INC., a Delaware               | COUNTERCLAIMS FOR:
   | corporation,
16 |        Defendant.                       | 1.  COPYRIGHT INFRINGEMENT;
                                              2.  VIOLATION OF THE
17 |                                              RACKETEER INFLUENCED AND
                                                  CORRUPT ORGANIZATIONS
18 |                                              ACT;
   | MGA ENTERTAINMENT, INC. a            | 3.  CONSPIRACY TO VIOLATE THE
19 | California corporation,                     RACKETEER INFLUENCED AND
                                                  CORRUPT ORGANIZATIONS
20 |        Plaintiff,                             ACT;
                                              4.  MISAPPROPRIATION OF TRADE
21 |    v.                                        SECRETS;
                                              5.  BREACH OF CONTRACT;
22 | MATTEL, INC., a Delaware              | 6.  INTENTIONAL INTERFERENCE
   | corporation, and DOES 1-10,                 WITH CONTRACT;
23 |                                         | 7.  BREACH OF FIDUCIARY DUTY;
   |        Defendants.                      | 8.  AIDING AND ABETTING
24 |                                              BREACH OF FIDUCIARY DUTY;
                                              9.  BREACH OF DUTY OF
25 |                                              LOYALTY;

26 |                                         | **PUBLIC REDACTED VERSION**

27 |                                         | **Volume I**

28

2154363.2

EXHIBIT ___3___

PAGE ___16___

C7 12 c7

SECOND AMENDED ANSWER AND COUNTERCLAIMS



1  MATTEL, INC., a Delaware
   corporation,

2                    Counter-claimant,

3

4     v.

5  MGA ENTERTAINMENT, INC., a
   California corporation; ISAAC
   LARIAN, an individual; CARTER
6  BRYANT, an individual; MGA
   ENTERTAINMENT (HK) LIMITED,
7  a Hong Kong Special Administrative
   Region business entity; MGAE DE
8  MÉXICO, S.R.L. DE C.V., a
   Mexico business entity; CARLOS
9  GUSTAVO MACHADO GOMEZ, an
   individual; and DOES 4 through 10,

10

11                 Counter-defendants.

12  AND CONSOLIDATED CASES

10. AIDING AND ABETTING
    BREACH OF DUTY OF
    LOYALTY;
11. CONVERSION;
12. UNFAIR COMPETITION; AND
13. DECLARATORY RELIEF

DEMAND FOR JURY TRIAL

2154363.2

EXHIBIT   3

PAGE   17

2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

### Second Counterclaim

**Violation of the Racketeer Influenced and Corrupt Organizations Act**

**18 U.S.C. §§ 1962(c) and 1964(c)**

**(Against All Counter-defendants)**

88.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 87, above, as though fully set forth at length.

89.   Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas and Brisbois were employed by and associated-in-fact with an enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "MGA Criminal Enterprise"). The MGA Criminal Enterprise is made up of the MGA Group (MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, certain of the Doe Counter-defendants and Brawer), the Bryant Group (Bryant and certain of the Doe Counter-defendants), the Mexican Group (Machado, Trueba and Vargas) and the Canadian Group (Brisbois). In addition, beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, were employed by and associated-in-fact with a second enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "Bratz Criminal Enterprise").

90.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois, and the Other Former Employees, and each of them, for the purpose of executing and attempting to execute the scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information, by

2154363.2

EXHIBIT  3

PAGE  18

-55-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  means of tortious, fraudulent and criminal conduct, did and do unlawfully, willfully
2  and knowingly conduct and participate, directly and indirectly, in the conduct of
3  the MGA Criminal Enterprise's affairs and, in the case of MGA, MGA
4  Entertainment (HK) Limited, Larian, Bryant, and certain of the Doe Counter-
5  defendants, the Bratz Criminal Enterprise's affairs, through a pattern of
6  racketeering activity. Their actions include multiple, related acts in violation of:
7  18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1512
8  (tampering with a witness victim, or informant), 18 U.S.C. § 1952 (interstate and
9  foreign travel to aid racketeering), and 18 U.S.C. § 2319(a) and 17 U.S.C. §
10  506(a)(1)(A) (criminal copyright infringement).

11         91.    MGA, MGA Entertainment (HK) Limited, MGA de Mexico,
12  Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas,
13  Brisbois, and the Other Former Employees, and each of them, shared the common
14  purpose of enabling MGA to obtain confidential, proprietary and otherwise
15  valuable Mattel property through improper means in order to assist MGA in
16  illegally competing with Mattel domestically and throughout the world.

17         92.    The MGA Criminal Enterprise and Bratz Criminal Enterprise as
18  described herein are and have been at all relevant times continuing enterprises
19  because, among other reasons, each is designed to and did unlawfully acquire the
20  confidential business information and property of Mattel and incorporated this
21  information and property into MGA's ongoing business, marketing strategies and
22  business methods, practices and processes. The conduct of each enterprise
23  continues through the date of this Second Amended Answer and Counterclaims and
24  is ongoing by virtue of MGA's continuing use of Mattel's information and property,
25  all to the detriment of Mattel.

26         93.    The pattern of racketeering activity, as defined by 18 U.S.C.
27  §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat
28  of continuing criminal activity. This activity consists of multiple acts of

1 racketeering by each member of the MGA Criminal Enterprise and Bratz Criminal
2 Enterprise, is interrelated, not isolated and is perpetrated for the same or similar
3 purposes by the same persons. This activity extends over a substantial period of
4 time, up to and beyond the date of this Second Amended Answer and
5 Counterclaims. These activities occurred after the effective date of 18 U.S.C.
6 §§ 1961 *et seq.*, and the last such act occurred within 10 years after the commission
7 of a prior act of racketeering activity. These racketeering activities included
8 repeated acts of:

9         (a)   Mail Fraud: Counter-defendants MGA, MGA Entertainment
10               (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and
11               Does 4 through 10, aided and abetted by each other and some or
12               all of the remaining members of the MGA Criminal Enterprise,
13               having devised a scheme or artifice to defraud Mattel of its
14               confidential trade secret information and property by conversion,
15               false representations, concealment and breaches of fiduciary duty,
16               did for the purpose of furthering and executing such a scheme or
17               artifice to defraud, deposited or caused to be deposited matters or
18               things to be sent or delivered by the Postal Service, or any private
19               or commercial interstate carrier, or took or received matters or
20               things therefrom, or knowingly caused matters or things to be
21               delivered by mail or such carrier according to the direction
22               thereon, or at the place at which it is directed to be delivered by
23               the person to whom it is addressed, in violation of 18 U.S.C.
24               § 1341 and 18 U.S.C. § 2, as alleged with greater particularity in
25               the foregoing paragraphs and as evidenced by, among other
26               things, the true and correct copies of communications and other
27               evidence included in Exhibit C;
28

2154363.2

EXHIBIT   **3**     -57-
                         SECOND AMENDED ANSWER AND COUNTERCLAIMS

PAGE   **20**

(b)   Wire Fraud: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, having devised a scheme or artifice to defraud Mattel of its confidential and trade secret information and property by conversion, false representations, concealment and breaches of fiduciary duty, did for the purpose of furthering and executing such a scheme or artifice to defraud, transmit and cause to be transmitted by means of wire communications in interstate or foreign commerce, writing, signs, signals, pictures or sound, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs and as evidenced by, among other things, the true and correct copies of communications and other evidence included in Exhibit C;

(c)   Tampering With a Witness, Victim or Informant: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, did corruptly alter, destroy, mutilate, or conceal more than one record, document, or other object, or attempted to do so, with the intent to impair the object's integrity or availability for use in an official proceeding, including this action, including without limitation by:

  i.   altering Bryant's contract with MGA relating to Bratz to conceal evidence that Bryant faxed the contract from the BARBIE COLLECTIBLES department of Mattel, using a fax

EXHIBIT ___3___

-58-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

PAGE ___21___

2154363.2

machine owned by Mattel and while Bryant was employed by Mattel;

ii.    altering numerous original Bratz drawings created by Bryant by adding false and misleading date notations of "8/1998" and "© 8/1998" to the drawings even though the drawings were not created in August 1998; and

iii.    destroying electronic and other evidence, including by destroying evidence previously contained on Carter Bryant's and Isaac Larian's computer hard drives.

Such actions are in violation of 18 U.S.C. § 1512 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs;

(d)    <u>Interstate and Foreign Travel in Aid of Racketeering Enterprises</u>: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by each other and some or all of the remaining members of the MGA Criminal Enterprise, traveled in interstate and foreign commerce, or used the mail or any facility in interstate or foreign commerce, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of unlawful activity, *i.e.* bribery, in violation of the laws of the State of California, *Cal. Penal Code* § 641.3, all in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 2, as alleged with greater particularity in the foregoing paragraphs;

(e)    <u>Criminal Copyright Infringement</u>: Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and Does 4 through 10, aided and abetted by

2154363.2

EXHIBIT __3__

PAGE __22__

-59-

1          each other and some or all of the remaining members of the MGA

2          Criminal Enterprise, willfully infringed Mattel's copyrights,

3          including with respect to documents containing Mattel trade

4          secret and confidential information, for purposes of commercial

5          advantage and private financial gain, all in violation of 18 U.S.C.

6          § 2319(a) and 17 U.S.C. § 506(a)(1)(A), as alleged with greater

7          particularity in the foregoing paragraphs.

8          94.    The persons alleged herein to have violated 18 U.S.C. § 1962(c)

9    are separate from, though employed by or associated with, MGA, the MGA Group,

10   the Bryant Group, the Mexican Group and the Canadian Group.

11         95.    MGA had a role in the racketeering activity that was distinct

12   from the undertaking of those acting on its behalf.  MGA also attempted to benefit,

13   and did benefit, from the activity of its employees and agents alleged herein, and

14   thus was not a passive victim of racketeering activity, but an active perpetrator.

15         96.    Mattel has been injured in its business or property as a direct

16   and proximate result of the Counter-defendants' and the other enterprise members'

17   violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts

18   constituting the pattern of racketeering activity.

19         97.    As a result of the violations of 18 U.S.C. § 1962(c), by MGA,

20   MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado,

21   Does 4 through 10, Brawer, Trueba, Vargas, Brisbois and the Other Former

22   Employees, Mattel has suffered substantial damages, in an amount to be proved at

23   trial.  Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its

24   general and special compensatory damages, plus interest, costs and attorneys, fees,

25   incurred by reason of Counter-defendants' violations of 18 U.S.C. § 1962(c).

26

27

28

EXHIBIT ___3___
-60-
PAGE ___23___

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

## Third Counterclaim
### Conspiracy To Violate the Racketeer
### Influenced And Corrupt Organizations Act
### (18 U.S.C. §§ 1962(d) and 1964(c))
### (Against All Counter-defendants)

98.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 97, above, as though fully set forth at length.

99.  Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois and the Other Former Employees willfully, knowingly and unlawfully, did conspire, combine, confederate and agree together to violate 18 U.S.C. § 1962(c).

100.  These conspirators were employed by and associated-in-fact with the MGA Criminal Enterprise engaging in, and the activities of which affect, interstate and foreign commerce.  Specifically, the MGA Group, the Bryant Group, the Mexican Group and the Canadian Group, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the MGA Criminal Enterprise's affairs through a pattern of racketeering activity.  In addition, MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, constituting a group of individuals associated-in-fact, did unlawfully, willfully, and knowingly participate in and conduct, directly and indirectly, the Bratz Criminal Enterprise's affairs through a pattern of racketeering activity.

101.  The pattern of racketeering activity, as defined by 18 U.S.C. §§ 1961(1) and (5), including acts of mail fraud in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2; acts of wire fraud in violation of 18 U.S.C. § 1343 and 18

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

EXHIBIT __3__

PAGE __24__

15. That Mattel have such other and further relief as the Court may deem just and proper.

DATED:  July 12, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _John Quinn (BJP)_

John B. Quinn
Attorneys for Defendant and Counter-claimant Mattel, Inc.

EXHIBIT 3

PAGE 25

2154363.2

-78-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

# EXHIBIT 4

CONFORMED COPY

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
6     Los Angeles, California 90017-2543
      Telephone:  (213) 443-3000
7     Facsimile:   (213) 443-3100

8   Attorneys for Plaintiff
    Mattel, Inc.

9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12                          EASTERN DIVISION

13   CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)
                                            Consolidated with: Case Nos. 04-9059
14                   Plaintiff,             and 05-2727

15        vs.                               Honorable Stephen G. Larson

16   MATTEL, INC., a Delaware corporation,  MATTEL INC.'S NOTICE OF
                                            MOTION; MOTION TO TRY ALL
17                   Defendant.             CLAIMS RELATED TO BRATZ
                                            OWNERSHIP IN PHASE ONE; AND
18                                          MEMORANDUM OF POINTS AND
                                            AUTHORITIES
19   AND CONSOLIDATED CASES
                                            Date: June 11, 2007
20                                          Time:  10:00 a.m.
                                            Place:  Courtroom 1
21
                                            Phase 1 Discovery Cut-Off:
22                                          October 22, 2007
                                            Phase 1 Pre-Trial Conference:
23                                          January 14, 2008
                                            Phase 1 Trial Date: February 12, 2008
24
                                            Phase 2 Discovery Cut-Off:
25                                          March 3, 2008
                                            Phase 2 Pre-Trial Conference:
26                                          June 2, 2008
                                            Phase 2 Trial Date:
27                                          July 1, 2008

28   EXHIBIT  4
                                            c5|c8|c7
     PAGE  26
07209/2115530.2          MOTION TO TRY CLAIMS RELATING TO BRATZ OWNERSHIP IN PHASE ONE

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE THAT ON June 11, 2007, at 10:00 a.m. or as soon

3  thereafter as the matter may be heard by the Honorable Stephen G. Larson,

4  Mattel, Inc. will, and hereby does, move this Court pursuant to Rules 16 and 42 of the

5  Federal Rules of Civil Procedure to try all claims and counterclaims related to Bratz

6  ownership in Phase One.  The claims with common facts and evidence include

7  Mattel's claims in the Mattel v. Bryant suit, Case No. 04-9059, and portions of

8  Mattel's Counterclaims 1 and 5-13 in the MGA v. Mattel suit, Case No. 05-2727.

9      This Motion is made on the grounds that these claims and counterclaims all

10  concern the same facts and circumstances.  Trying these related claims together will

11  promote judicial economy and will save time and expense for parties and witnesses.

12      This motion is based upon this Notice of Motion and Motion, the

13  accompanying Memorandum of Points and Authorities, the concurrently filed

14  Declaration of B. Dylan Proctor, the pleadings and other papers on file in this action,

15  such matters of which this Court may take judicial notice, and such further argument

16  and evidence which may be presented at or before the hearing.

17

18  **Certification Of Local 7-3 Compliance**

19      This motion is made following the conference of counsel pursuant to Local

20  Rule 7.3 which took place on February 23, 2007, February 26, 2007 and times

21  thereafter.

22

23  DATED: May 8, 2007            QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
24

25                               By  John B. Quinn /DWP

26                                  John B. Quinn
                                    Attorneys for Plaintiff
27                                  Mattel, Inc.

28      EXHIBIT  4

PAGE  27

-2-

MOTION TO TRY CLAIMS RELATING TO BRATZ OWNERSHIP IN PHASE ONE

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ....................................................................................... 3

ARGUMENT........................................................................................................... 6

I.     THE COURT HAS BROAD AUTHORITY TO TRY CLAIMS IN A
    FAIR AND EFFICIENT MANNER.................................................................. 6

II.    MATTEL'S ORIGINAL CLAIMS, RELATING TO BRYANT'S
    CONDUCT AND MGA'S AND LARIAN'S COMPLICITY IN IT, AND
    THE CORRESPONDING PARTS OF COUNTERCLAIMS 1,  AND 5
    13, ALL BELONG IN PHASE ONE BECAUSE THEY CONCERN
    THE SAME ISSUES........................................................................................ 7

    A.    Counterclaims 1, 5, 7, 9 and 11 Belong In Phase One Insofar As
        They Arise From Bryant's Work For MGA While Employed By
        Mattel ................................................................................................. 7

    B.    Counterclaims 6, 8, 10 and 13 Also Belong In Phase One Insofar
        As They Too Arise From Bryant's Work for MGA While
        Employed By Mattel ........................................................................... 8

    C.    The Facts and Proof Relating To These Claims Are Inextricably
        Intertwined And Should Be Developed And Presented To The
        Jury Together ..................................................................................... 11

CONCLUSION....................................................................................................... 15

EXHIBIT ___4___

PAGE ___28___

MOTION TO TRY CLAIMS RELATING TO BRATZ OWNERSHIP IN PHASE ONE

1  should be consolidated for trial where there is a risk of inconsistent adjudications of

2  common factual and legal issues); <u>Paxonet Communications, Inc. v. TranSwitch</u>

3  <u>Corp.</u>, 303 F. Supp. 2d 1027, 1028-29 (N.D. Cal. 2003) (granting motion to

4  consolidate claims where the actions involved a number of common questions of law

5  and fact).

6  **II.    MATTEL'S ORIGINAL CLAIMS, RELATING TO BRYANT'S**

7       **CONDUCT AND MGA'S AND LARIAN'S COMPLICITY IN IT, AND**

8       **THE CORRESPONDING PARTS OF COUNTERCLAIMS 1, AND 5 13,**

9       **ALL BELONG IN PHASE ONE BECAUSE THEY CONCERN THE**

10      **SAME ISSUES**

11      Mattel's original claims and certain of Mattel's counterclaims arise from (1)

12  Bryant's acts of misconduct during his Mattel employment, with the aid and

13  complicity of MGA and Larian and (2) Bryant's creation, design and development of

14  Bratz during his Mattel employment.  These overlapping claims should all be tried in

15  Phase One.

16      **A.    Counterclaims 1, 5, 7, 9 and 11 Belong In Phase One Insofar As**

17           **They Arise From Bryant's Work For MGA While Employed By**

18           **Mattel**

19      Counterclaims 5, 7, 9 and 11 for breach of contract, breach of fiduciary duty,

20  breach of duty of loyalty, and conversion, insofar as they stem from Bryant's conduct,

21  are fuller statements of claims in Mattel's original complaint.  In fact, they were

22  offered as amended claims that would supersede the corresponding claims in the

23  original complaint.  For example, Mattel learned after the filing of the original

24  complaint that "Bryant enlisted other Mattel employees to perform work on Bratz"

25  and "led them to believe that they were working on a Mattel project;" and that "MGA

26

27  EXHIBIT ___4___

28  PAGE ___29___

07209/2115530.2

MOTION TO TRY CLAIMS RELATING TO BRATZ OWNERSHIP IN PHASE ONE

1  showed Bratz prototypes and/or products to both focus groups and retailers."[16]  The

2  amended complaint sought to add these and other newly-discovered facts regarding

3  Bryant and MGA and Larian's participation in Bryant's activities.

4      Bryant and MGA have not disputed that Counterclaims 5, 7, 9 and 11 against

5  Bryant overlapped the original Bratz ownership claims.[17]  In fact, defendants moved

6  to dismiss them as "duplicative" of those claims.[18]  While they are not duplicative,

7  because they expand on the original allegations of the complaint and name MGA and

8  Larian as additional defendants, they are all properly Phase One claims.

9      Similarly, the claim for copyright infringement should be tried in Phase One to

10  the extent that it relates to Bryant's creation of Bratz.  Copyright infringement

11  requires proof of two elements:  ownership and infringement.  Funky Films, Inc. v.

12  Time Warner Entertainment Co., L.P., 462 F.3d 1072, 1076 (9th Cir. 2006).  Since

13  Bratz ownership is the subject of Phase One, this first element of copyright

14  infringement should be tried in Phase One also.

15      **B.**      **Counterclaims 6, 8, 10 and 13 Also Belong In Phase One Insofar As**

16              **They Too Arise From Bryant's Work for MGA While Employed By**

17              **Mattel**

18      Counterclaims 6, 8, and 10, against MGA and Larian, are for intentional

19  interference with contract, aiding and abetting breach of fiduciary duty, and aiding

20  and abetting breach of duty of loyalty.  These claims, to the extent they stem from

21  Bryant's activities and obligations, arise out of the very same occurrences that form

22  the basis of the original claims in Phase One.  Mattel alleges in these counterclaims

23  _____

24  [16]  Counterclaims, Proctor Dec., Exh. 7 at ¶¶ 27, 29.

25  [17]  Proctor Dec. ¶ 2; Letter from Diana Torres to Dylan Proctor dated March 1,
    2007, Proctor Dec., Exh. 11.

26  [18]  Memorandum of Points and Authorities In Support Of Carter Bryant's Motion

27  to Dismiss Counterclaims, II, III, V, VII, IX, And XI dated February 12, 2007, at 13,
    Proctor Dec., Exh. 12.      EXHIBIT ___4___

28

PAGE __30__

8

1  that MGA and Larian knew that Bryant had a contract with Mattel pursuant to which

2  Mattel owned designs he created while he was a Mattel employee. MGA and Larian

3  also knew that Bryant owed fiduciary duties to Mattel. MGA and Larian paid Bryant

4  to assign Bratz to MGA and to develop Bratz with MGA while Bryant was still a

5  Mattel employee. In so doing, MGA and Larian induced Bryant to breach his

6  contract and fiduciary obligations to Mattel. The proof of these counterclaims -- both

7  their liability and damages elements -- will in large part overlap the proof of the

8  breach of contract, breach of fiduciary duty, breach of duty of loyalty and conversion

9  claims against Bryant.

10      For example, counterclaim 6 for intentional interference with contract requires

11  proof that Bryant breached his contract with Mattel (Claim No. 1 in <u>Mattel v. Bryant</u>

12  and current Counterclaim 5). <u>See</u> <u>Sebastian Intern., Inc. v. Russolillo</u>, 162 F. Supp.

13  2d 1198, 1203 (C.D. Cal. 2001) ("[T]o prove intentional interference with contractual

14  relations, plaintiff must establish . . . actual breach or disruption of the contract").

15  Similarly, Counterclaim 8 for aiding and abetting breach of fiduciary duty requires

16  proof that Bryant breached his fiduciary duty to Mattel (Claim No. 2 in <u>Mattel v.</u>

17  <u>Bryant</u> and current Counterclaim 7). <u>See, e.g.</u>, <u>In re 3Com. Secur. Litig.</u>,

18  761 F. Supp. 1411, 1418 (N.D. Cal. 1990) ("The elements for a claim for aiding and

19  abetting a breach of fiduciary duty [include] . . . a fiduciary duty on the part of the

20  primary wrongdoer . . . [and] breach of that duty"). Liability for Counterclaim 10 for

21  aiding and abetting breach of duty of loyalty requires proof that Bryant breached his

22  duty of loyalty to Mattel (Claim No. 3 in <u>Mattel v. Bryant</u> and current Counterclaim

23  9). <u>See</u> <u>Neilson v. Union Bank of California, N.A.</u>, 290 F. Supp. 2d 1101, 1133 (C.D.

24  Cal. 2003) ("[L]iability may properly be imposed on one who knows that another's

25  conduct constitutes a breach of duty and substantially assists or encourages the

26  breach").

27      MGA and Larian also are subject to joint and several liability with Bryant

28  under counterclaims 6 and 8, for aiding and abetting Bryant's breach of fiduciary duty

EXHIBIT ___4___

9

MOTION TO TRY CLAIMS RELATING TO BRATZ OWNERSHIP IN PHASE ONE

PAGE ___131___

1  and breach of loyalty.[19]  Similarly, MGA and Larian are jointly and severally liable

2  with Bryant on Counterclaim 10 for intentional interference with contract.  "Both the

3  party who breaches the contract and the party who interferes with the contract are

4  jointly and severally liable for the actual damages incurred."  In re Performance

5  Nutrition, Inc., 239 B.R. 93, 114 (Bkrtcy. N.D. Tex. 1999).[20]

6       Mattel's counterclaim 12 alleges several instances of unfair competition.

7  Insofar as this claim relates to Bryant's acts of misconduct and the role MGA and

8  Larian played in that misconduct, it should also be tried in Phase One.  For example,

9  acts of unfair competition alleged against these defendants include Larian's and

10  MGA's payment of money to Bryant while he was an employee of Mattel.

11

12

13  [19] See Pasadena Unified School Dist. v. Pasadena Federation of Teachers, 140 Cal.
    Rptr. 41, 49 (1977) ("All those who aid and abet in the commission of an intentional

14  tort are equally liable with the party directly committing it"), disapproved on other
    grounds by County Sanitation Dist. v. Los Angeles County Employees Ass'n,

15  699 P.2d 835, 849 (Cal. 1985), cert denied, 474 U.S. 995 (1985); People v. Bestline

16  Products, Inc., 61 Cal. App. 3d 879, 919 (1976) (citing Jackson v. Smith, 254 U.S.
    586, 589 (1921)) ("One who knowingly aids and abets a fiduciary to make secret

17  profits may be held liable jointly with the fiduciary for such secret profits.");

18  Howard v. Superior Court, 2 Cal. App. 4th 745, 749 (1992) ("all those who aid and
    abet in the wrongful act [are] responsible as joint tortfeasors for all damages ensuing

19  from the wrong").

20  [20] See also Salton, Inv. v. Philips Domestic Appliances and Personal Care B.V.,

21  391 F.3d 871, 880 (7th Cir. 2004) ("just as in the closely related case of joint
    tortfeasors, there is no rule that you cannot sue the interferer without also suing the

22  party to your contract whom the defendant inveigled into breaking the contract");

23  Wilson & Co. v. United Packinghouse Workers of America, 181 F. Supp. 809, 820
    (D.C. Iowa 1960) ("all persons who unite to induce a breach of contract are jointly

24  and severally liable for the damages to the person injured thereby").  The same is true

25  for Mattel's Counterclaim for unfair competition.  People v. First Federal Credit
    Corp., 104 Cal. App. 4th 721, 734, 128 Cal. Rptr. 2d 542 (Cal. App. 2d 2002)

26  ("parties may be held jointly and severally liable for unfair competition"); People v.

27  Dollar Rent-A-Car Systems, Inc., 211 Cal. App. 3d 119, 132, 259 Cal. Rptr. 191
    (1989) (imposing joint and several liability for violations of §§ 17206 and 17536).

28

1       Finally, Mattel's counterclaim 13 seeks a declaration that "[c]ounter-defendants
2 have no valid or protectable ownership rights or interests in Bratz, and that Mattel is
3 the true owner of the same."[21] That declaration is sought based on the same facts as
4 counterclaims 1 and 5-11 insofar as they relate to Bryant's conduct and obligations.
5 The parties agree that Counterclaim 13 should be tried in Phase One "to the extent it
6 addresses the ownership of the original 'Bratz' creation."[22]

        **C.**    **The Facts and Proof Relating To These Claims Are Inextricably Intertwined And Should Be Developed And Presented To The Jury Together**

10       Much of the proof is relevant to both the claims in the original complaint and
11 the subject counterclaims. For example, many of the witnesses knowledgeable about
12 Bryant's activities also have information about Larian's and/or MGA's involvement in
13 those activities. If the claims are tried separately, the same witnesses will have to
14 testify twice on the same subject: once with regard to Bryant's liability and again
15 with regard to his co-defendants' liability. Several witnesses fall within this category,
16 including:

17 •   <u>Carter Bryant</u>. Mr. Bryant will be called to testify regarding both his own
18     misconduct and the other defendants' complicity therein.[23] Many of the facts
19     underlying Mattel's claims against Bryant directly involve both Bryant and MGA.
20     For example, Bryant and MGA representatives met with third party Steven Linker
21     to discuss Bratz before Bryant left Mattel, and showed (and later gave) Linker a
22     packet of Bratz materials so that Linker could prepare a quote for package art for

---

25   [21]  <u>See</u> Counterclaims at ¶¶ 167 - 170, Proctor Dec., Exh. 7.
26   [22]  <u>See</u> Letter, Proctor Dec., Exh. 11; <u>see also</u> Letter from Dylan Proctor to Diana Torres dated March 21, 2007, Proctor Dec., Exh. 13.
27   [23]  <u>See</u> Counterclaims, at ¶¶ 1-5, 20, 37-77, 88-115, 112-116, Proctor Dec., Exh. 7.

28   EXHIBIT ___4___

1  Larian's complicity in it, and the portion of Mattel Counterclaim 13 relating to

2  ownership of Bryant's Bratz designs, in Phase One.

3

4  DATED:  May 8, 2007                    QUINN EMANUEL URQUHART OLIVER &
                                          HEDGES, LLP

5

6                                         By _John B. Quinn /pb/_

7                                            John B. Quinn
                                             Attorneys for Plaintiff
8                                            Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  EXHIBIT  4

28  PAGE  34

16

MOTION TO TRY CLAIMS RELATING TO BRATZ OWNERSHIP IN PHASE ONE

# EXHIBIT 5

CALENDARED

ENTERED
CLERK, U.S. DISTRICT COURT

JAN 12 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION      BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

                        Plaintiff,

v.

MATTEL, INC.,

                        Defendant.

and related actions.

CASE NO. CV-04-9049-SGL

(Consolidated with cases CV-04-9059 and CV-05-2727)

ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).

This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant. The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire"). Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was whether Bryant had either misappropriated Mattel's intellectual property or

EXHIBIT ___5___

PAGE ___35___

1   resources in creating and/or developing the BRATZ dolls or whether he continued
2   to develop his BRATZ design while still working in Mattel's employ. In either event,
3   the rights to the BRATZ dolls could become the property of Mattel, either through
4   infringement or through operation of the agreements noted above. The case was
5   later removed to this Court and was assigned the case number CV-04-9059. MGA
6   Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to
7   protect its rights to Bratz dolls" that were at stake in the action. Mattel, Inc. v.
8   Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a
9   significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual
10  property, i.e., the Bratz creations, were decided in the absence of MGA").

11      In the interim, Bryant filed a declaratory judgment action in this Court,
12  seeking for the Court to declare that his BRATZ doll creations did not infringe
13  Mattel's copyright in its Toon Teens products. See Court's July 18, 2006, Order at
14  3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel
15  products,' . . . the substance of his allegations all address the product 'Toon
16  Teens'"). The declaratory judgment action was assigned the case number CV-04-
17  9049.

18      MGA then filed an action against Mattel in this Court broadening the scope
19  of the controversy beyond that concerned with the ownership rights to the BRATZ
20  doll line. MGA's complaint asserted various Lanham Act claims and their California
21  state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of
22  competition-by-intimidation and serial copycatting of MGA's products." (Compl.
23  ¶ 7). In essence, although the prior actions were concerned with ownership in the
24  rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there
25  had been unlawful efforts to block the marketing of those rights in the BRATZ dolls.
26  MGA's complaint did make mention of other products that were affected by Mattel's
27  alleged predatory business practices, but by far the largest portion of its complaint
28  concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

EXHIBIT __5__   2

PAGE __36__

1  line of BRATZ dolls.[1]

2      By Order dated June 19, 2006, the Court consolidated all three cases "for all
3  purposes" as they "involve[d] a number of common issues of law and fact." As the
4  Court later noted in its August 10, 2006, Order: "At its heart, this case asks the
5  question: Who owns the rights to the Bratz dolls?" Resolution of this question lies
6  at the heart of or, at the very least, affects many of the other claims set forth in
7  each of the three respective cases. For instance, even though the allegations in
8  05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ
9  dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot
10  many of those allegations. It is hard to imagine how it is unlawful for a company to
11  thwart or otherwise undermine the marketing of a product it owns. Thus, if Mattel
12  owned the rights to the BRATZ dolls, many of the allegations in the 05-2727
13  complaint would become moot. That said, such consolidation did not do away with
14  the distinctions that do exist between the three cases. As the Court highlighted in
15  its consolidation order, when either party files a pleading in the case, "the first
16  paragraph of [that] document . . . shall inform the Court to which case(s) the
17  document relates."

18      On July 18, 2006, the Court dismissed Bryant's declaratory judgment action,
19  04-9049, finding there existed no reasonable apprehension of an imminent
20  copyright infringement claim being filed against him by Mattel based on Mattel's
21  Toon Teen intellectual property. See Court's July 18, 2006, Order at 4. The
22  Court's Order was predicated entirely upon counsel for Mattel's representation
23  during oral argument that it "will not maintain that Bratz infringes the copyright in
24  Toon Teens." Owing to this representation, the Court, in dismissing the declaratory
25  judgment action, made clear that any future "claim by Mattel of copyright

26

27      [1] That the marketing of the BRATZ dolls lies at the heart of the issues
between the rival doll makers in the 05-2727 case is best illustrated by the Court's
28  discussion of those allegations in its August 26, 2005, Order, Granting in Part and
Denying Part Mattel's Motion to Strike portions of MGA's complaint.



EXHIBIT __5__ [3]

PAGE __37__

1   infringement based on the Toon Teens product is barred by counsel's

2   representation." July 18, 2006, Order at 4.

3       Presently before the Court is Mattel's request for leave to file an amended

4   complaint in the 04-9059 action. The complaint broadens considerably the nature

5   of the action from its genesis in state court. Whereas before the complaint simply

6   sought to litigate alleged contractual and fiduciary breaches by Bryant while in the

7   employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay

8   claim to the BRATZ doll line), the amended complaint adds five more defendants

9   and nine new legal claims, alleging a wide range of commercial disputes between

10  the rival doll makers that spans three countries. For instance, the amended

11  complaint now contains RICO claims, a misappropriation of trade secrets claim,

12  and various aiding and abetting claims all stemming from allegations that MGA

13  cherry-picked certain high-ranking Mattel executives in foreign markets (many also

14  named as defendants in the amended complaint) or designers (namely, Bryant),

15  and then enticed or encouraged those same individuals to steal various trade and

16  proprietary secrets (be it sales plans, sales projections, customer profiles, or

17  intellectual property) from Mattel and hand them over to MGA before going to work

18  at MGA.

19      Moreover, the amended complaint expands upon the existing breaches of

20  contract and fiduciary duty claims in the original complaint by expanding the

21  universe of former employees (namely, the cherry-picked executives) to whom

22  those claims now apply.

23      Finally, Mattel now makes plain what was always lurking in its original

24  complaint — a copyright claim, but one directed not only to Bryant but also to MGA,

25  MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian.

26  Moreover, Mattel characterizes its copyright claim somewhat differently from that at

27  issue in Bryant's declaratory relief action: "The Amended Complaint does not

28  include a claim for infringement of copyrights in Toon Teens, but rather

4

EXHIBIT 5

PAGE 38

1   infringement of copyrights in Bratz." (Reply to MGA Opp. at 11). Toward that end,

2   Mattel has recently filed copyright registrations with the U.S. Copyright Office

3   claiming ownership in various BRATZ doll design drawings penned by Bryant.

4   A.   ANALYSIS

5   Federal Rule of Civil Procedure 15(a) provides that, once a responsive

6   pleading has been served, "a party may amend the party's pleading only by leave of

7   court or by written consent of the adverse party; and leave shall be freely given

8   when justice so requires." With no consent to Mattel's proposed filing proffered by

9   MGA and Bryant, determining whether to grant Mattel leave to file an amended

10  complaint is gauged by looking to the familiar formulation of factors set forth by the

11  Supreme Court in Forman v. Davis:

12
13          In the absence of any apparent or declared
            reason—such as undue delay, bad faith or dilatory
            motive on the part of the movant, repeated failure to
14          cure deficiencies by amendments previously allowed,
            undue prejudice to the opposing party by virtue of
15          allowance of the amendment, futility of amendment,
            etc.—the leave sought should, as the rules require, be
16          'freely given.' Of course, the grant or denial of an
            opportunity to amend is within the discretion of the
17          District Court, but outright refusal to grant the leave
            without any justifying reason appearing for the denial is
18          not an exercise of discretion; it is merely abuse of that
            discretion and inconsistent with the spirit of the Federal
19          Rules.

20  371 U.S. 178, 182 (1962).

21  MGA and Bryant offer the following reasons for denying Mattel leave to

22  amend: (1) Mattel has long known of the factual predicates underlying its copyright

23  and intentional interference claims but delayed in asserting them; (2) the proposed

24  amendment to add the copyright claim and the intentional interference claims

25  (against the new defendants) are futile because they are barred by the applicable

26  statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel

27  because of its prior public disavowal of an intent to assert such a claim; and (4)

28  MGA and Bryant would incur undue prejudice were the copyright claim added to the

EXHIBIT 5  5

PAGE 39

1 | suit because of alleged spoilation of evidence issues involving Mattel's ZEUS
2 | computer system used by doll designers at Mattel and its e-mail system. None of
3 | these arguments are persuasive.

4 |     1.    Awareness of Factual Predicate for Copyright and Intentional
5 |            Interference Claims

6 |     MGA argues that Mattel has long known about the factual predicate for its
7 | recently added copyright claim, observing that, "[o]ver four years ago, in August
8 | 2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant
9 | created the project that became the 'Bratz' dolls — and worked with MGA to 'steal'
10 | that project — while still employed at Mattel." (MGA Opp. at 9). Similarly, MGA
11 | argues that Mattel has long known of the factual predicate for its intentional
12 | interference claim with respect to Bryant's contract given that, "[b]y Mattel's own
13 | admission, it learned in November 2003 — more than three years ago — that
14 | Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at
15 | Mattel." (MGA Opp. at 11-12).

16 |     At the outset it must be observed that "[m]ere delay in proffering an
17 | amendment does not justify denying leave to amend." Sierra Club v. Union Oil Co.
18 | of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by,
19 | 485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988). Seizing upon
20 | this point of law, Mattel argues that "only in . . . cases" when "granting leave would
21 | require discovery to be reopened after summary judgment motions have been filed"
22 | has the Ninth Circuit found the denial of leave "justified" based on the passage of
23 | time alone. (Reply to MGA Opp. at 3). That is incorrect. There is a line of cases
24 | from the Ninth Circuit finding that, if a "party seeking amendment knows or should
25 | know of the facts underlying the amendment when the original complaint is filed,
26 | the motion to amend may be denied." Sierra Club, 813 F.2d at 1493 (citing Jordan
27 | v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)). And, recently, the
28 | Ninth Circuit upheld the denial of leave to amend based on the passage of time

EXHIBIT $\underline{\phantom{xx}5\phantom{xx}}$   6

PAGE $\underline{\phantom{xx}40\phantom{xx}}$

1 even though the requested leave to amend was tendered <u>before</u> the time, as set

2 forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired.

3 <u>See AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946 (9th Cir. 2006).

4 The Ninth Circuit observed that, even when a request for leave to amend is timely

5 under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless

6 still deny the request based on any of the <u>Forman</u> factors. <u>Id.</u> at 951-52. The Ninth

7 Circuit then noted that the issue of untimeliness (regardless of whether the

8 amendment is tendered "within the period of time allotted by the district court in a

9 Rule 16 scheduling order") in seeking to amend can constitute a justification for

10 denying leave to amend if "the moving party knew or should have known the facts

11 and theories raised by the amendment in the original pleading." <u>Id.</u> at 953.

12 Toward that end, the Ninth Circuit observed that "an eight month delay between the

13 time of obtaining a relevant fact and seeking a leave to amend is unreasonable."

14 <u>Id.</u> In this regard, the Ninth Circuit in <u>Dialysist</u> was unpersuaded by the fact that,

15 even though the moving party had known of the facts prompting the amendment for

16 a long period of time, there still remained eight more months of discovery for the

17 parties to marshal facts against the allegations raised by the amended pleading:

18 "Even though eight months of discovery remained, requiring the parties to scramble

19 and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was

20 tainted, would have unfairly imposed potentially high, additional litigation costs on

21 Dialysist West that could have easily been avoided had AmerisourceBergen

22 pursued its 'tainted product' theory in its original complaint or reply." <u>Id.</u> Thus,

23 absent "a satisfactory explanation" for the delay in amending the complaint, the

24 Court is well within its rights to deny leave to amend. <u>Id.</u>

25      Mattel proffers the following reasons for taking the time that it did before

26 presenting its amended complaint: (1) Acting out of an abundance of caution to its

27 obligations under Rule 11 to present "factual contentions [that] have evidentiary

28 support," Mattel waited until its claims were better supported by evidence

EXHIBIT $5$ [7]

PAGE $41$

1  uncovered in discovery; and (2) the delay in the proceedings caused by "the year-
2  long stay and the parties' prior jurisdictional disputes" have left the case still in its
3  "nascent stage." (Reply to MGA Opp. at 2, 4).

4      The first reason is not well-founded. Rule 11 specifically allows parties to
5  aver factual allegations that "are likely to have evidentiary support after a
6  reasonable opportunity for further investigation or discovery" so long as the party
7  makes clear in its pleading that its factual contentions on those points are with the
8  caveat that they are based on a good faith belief that further discovery would
9  unearth evidence to support them. See FED. R. CIV. P. 11(b)(3). Simply put, Rule
10  11 did not stand in the way of Mattel averring the factual contentions it now claims it
11  "merely suspected" as being the case based on the limited information before it.
12  Mattel could have gone ahead and made such suspected factual allegations so
13  long as it caveated those claims with the declaration that it reasonably believed that
14  those allegations would be borne out by further discovery. Perhaps the time by
15  which Mattel could have reasonably believed such allegations would be borne out
16  by further discovery occurred after the dates noted by MGA, but it is hard to fathom
17  that such materialization took three or four years to occur.

18      The second reason would have some merit to it but for the fact that the
19  information that alerted (or should have alerted) Mattel to the existence of its now
20  asserted copyright and intentional interference claims was brought to Mattel's
21  attention well before the case was stayed on May 20, 2005. The stay, therefore,
22  did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the
23  stay does not explain why Mattel waited nearly six months after the stay was lifted
24  on May 16, 2006, to present those claims now.

25      All of that being said, the one thing that gives the Court pause in denying
26  leave based on the tardiness in Mattel's presentation is the lack of any evidence
27  that MGA or Bryant have been prejudiced by the delay. Delay unconnected to
28  some showing of prejudice, be it prejudice to the parties or disruption in judicial

8



EXHIBIT __5__

PAGE __42__

1 management of the case, does not suffice to deny granting leave to amend. The

2 Ninth Circuit has noted that, "where a defendant is on notice of the facts contained

3 in an amendment to a complaint, there is no serious prejudice to defendant in

4 allowing the amendment" even if it is made tardily. Sierra Club, 813 F.2d at 1493.

5 Indeed, the denial of leave was proper in the Dialysist case not simply because of

6 the length of the delay, but because the delay itself was "detrimental" in that it

7 would entail the opposing party to have "unfairly" incurred "potentially high,

8 additional litigation costs" that could have been avoided if the moving party had

9 made clear its intentions earlier. 465 F.3d at 953.

10 Here, as well demonstrated in Mattel's papers, it is readily apparent from the

11 pleadings filed by MGA and Bryant in this case that both have been aware for some

12 time of the factual predicates now underlying Mattel's copyright claim and

13 intentional interference claim. (See MGA Opp. at 5 ("As Bryant and MGA

14 suspected at the time of filing — and Mattel now concedes by conduct — those

15 deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all

16 along")(emphasis added)). The parties have engaged in meaningful discovery

17 regarding many of the facts touched upon by these new claims, be it tracking down

18 experts in various forensic fields or taking depositions of various of the key players

19 to those claims. In point of fact, in their papers filed with this Court before this

20 present motion, both Bryant and MGA have made it abundantly clear that they have

21 long suspected that a copyright infringement claim was in the offing as evidenced

22 by Bryant's filing of the declaratory judgment action and MGA's intervention in the

23 05-9059 matter to protect its rights to the BRATZ dolls. Similarly, MGA and Bryant

24 have been on notice to the facts comprising the interference claim concerning

25 Bryant's contract as evidenced by the identity of the individuals who have been

26 deposed by Mattel, as well as the nature of the questions posed and the testimony

27 proffered at those depositions. MGA's argument that, with the amendments, it

28 faces the prospect of defending "against stale claims" owing to faded memories and



EXHIBIT $5$ [9]

PAGE $43$

1   loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),

2   is diminished by the fact that (no doubt owing to the sophistication of all counsel

3   involved) discovery on these very issues have been proceeding apace by both

4   sides long before Mattel filed its proposed amendments. This is simply not a case

5   where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by

6   allowing the proposed amendments; much of those costs have already been borne

7   by the parties for some time.

8       2.    Spoilation of Evidence

9       MGA next argues that Mattel's delay in bringing the amended complaint has

10   caused it prejudice as, in the interim, critical pieces of evidence have been or are

11   suspected of having become lost. For instance, MGA asserts that Mattel's Rule

12   30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,

13   "although Mattel identified and segregated its most relevant backup tapes available

14   for Zeus, Mattel allowed its tape backup system to expire the database for those

15   backup tapes, thereby eliminating all information about what was actually stored on

16   those backup tapes." (MGA Opp. at 9-10). Information on the Zeus computer

17   system is critical because of Mattel's assertion that part of its copyright claim rests

18   on Bryant's exposure to Mattel development programs. (First Am. Compl. ¶ 26(a)).

19   As explained by MGA: "[C]oncept data and drawings created by [Mattel] design

20   center personnel are stored on Zeus. Thus, the electronic documents stored on

21   Zeus – which should include the metadata showing who created, edited and

22   accessed Mattel's concept drawings and designs – during the time Bryant worked

23   in the design center at Mattel is vitally important to defending against Mattel's

24   claims." (MGA Opp. at 14). MGA's argument is neither an accurate

25   characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure

26   claim.

27       Ms. Marine did not testify that the information on the backup tapes (some

28   fifty in total) was lost, but rather that Mattel no longer carried the type of hardware



EXHIBIT 5    10

PAGE 44

10

1   that could restore the information still found on those tapes:

2         Q.    So if you wanted to restore that 2002 backup
              tape[s] then, how would you go about doing that?

3

4         A.    You need the hardware so if we don't have the
              hardware — if [the technology used by the tape
5             is] DLT we don't have the hardware and you've
              got to buy it and – well, first you have to find a
6             place to put it with adequate power which we
              don't have in the design center. You need to
7             have a tape library. You need to have the tape
              drives that carried those tapes. You need a
8             server that has the capability to – that's big
              enough to handle all of the hardware. You need
9             the software – the license for the backup
              software[, Net Backup]. You need the disk space
10            to restore it to and then you have to start reading
              in all those tapes.
11

12        Q.    You said that you don't have that in the design
              center. Do you have that hardware anywhere
13            else in the company?

14        A.    DLT? No, no.

15        Q.    At what point did you get rid of the hardware?

16        A.    Once the last backups — DLT backups expired
              so it would have been a couple years ago
17            probably.

18  (Decl. Diana Torres, Ex. K at 118-119).

19        The above testimony clearly denotes the difficulty in restoring what was on

20  Mattel's Zeus computer system during the relevant time frame, but it certainly does

21  not demonstrate that the information on those backup tapes has been "eliminated"

22  or forever lost. Undoubtedly it will be a costly endeavor to recover that information

23  (not to mention to later search and sort through it); but to argue, as MGA does, that

24  the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its

25  plight. Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the

26  information on the Zeus backup tapes has been present for some time (maybe

27  since 2004 or perhaps even earlier). This is important because it undermines

28  MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

EXHIBIT ___5___   11

PAGE ___45___

1  it to suffer prejudice it otherwise would not have faced if the amendments were
2  brought sooner. Such prejudice has been present for years, and Mattel's failure to
3  bring its amended complaint sooner would not have changed this situation.

4  　　　Similarly, MGA's point that access to what was on the Zeus computer
5  system is vital in demonstrating that Bryant was not exposed to or otherwise did not
6  hack the system to steal other designers work is diminshed to some extent by the
7  fact that Bryant himself testified that he did not use the Zeus computer system and
8  was "pretty much computer illiterate" while employed at Mattel. Admittedly, the
9  ability to point to information on the Zeus system backup tapes to prove that Bryant
10 did not access other designers drawings or to prove the date those drawings were
11 created by those other designers would be useful evidence to negate Mattel's
12 factual claims. Nonetheless, such evidence still would not discount other avenues
13 outside of the Zeus computer system by which Mattel could seek to prove that
14 Bryant was exposed to its copyrighted works, e.g., witness testimony that Bryant
15 saw drawings of the same posted on other designers' cubicles.

16 　　　MGA next surmises that Mattel's e-mail records have disappeared, not
17 because it has any proof on that point, but simply because Mattel has postponed
18 the deposition of the individual most knowledgeable of Mattel's e-mail records until
19 after the hearing on Mattel's motion for leave to amend. (MGA Opp. at 10).
20 Speculation of spoilation does not suffice. That MGA's argumentation on this point
21 is nothing more than speculation is best exhibited by the evidence it has proffered
22 in support of its argument: "[I]f the sole retained backup for Zeus is no longer
23 available, it is not hard to imagine that Mattel's electronic mail archives are similarly
24 out of reach." (MGA Opp. at 15 (emphasis added)). MGA then makes much of a
25 deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his
26 inbox would be automatically deleted if they had remained there for more than a
27 certain time period. (Decl. Diana Torres, Ex. H at 292-93). MGA takes from this
28 acknowledgment that Mattel has an "automatic email deletion system" that has

EXHIBIT __5__  12

PAGE __46__

1   compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14).

2   Noticeably absent from MGA's argument is any evidence that the e-mails so

3   deleted from a Mattel employee's inbox are forever lost or, as is far more likely,

4   whether such information remains or is otherwise archived on some backup file on

5   Mattel's computer system. Absent concrete proof that spoilation has occurred,

6   nothing in MGA's argument forms a basis for denying Mattel its requested leave to

7   amend.

8       3.   Statute of Limitations

9       MGA next argues that Mattel's copyright and intentional interference claims

10  are futile as both are barred by the applicable statute of limitations. This argument

11  was pressed emphatically at oral argument. With respect to the copyright claim,

12  MGA argues that the applicable statute of limitations is three years, with the

13  limitations period accruing from when a party has knowledge of a violation or when

14  a reasonably diligent person would have been put on inquiry of the infringement.

15  (MGA Opp. at 16 (citing Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir.

16  1994)). MGA argues that Mattel was put on notice about its copyright claim in

17  August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant

18  had stolen the idea for BRATZ while working at Mattel. Thus, according to MGA,

19  the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's

20  current copyright claim stale.

21      The problem with MGA's analysis is it fails to take into account the relations-

22  back principles found in Rule 15(c), which provides that "[a]n amendment of a

23  pleading relates back to the date of the original pleading when "the claim . . . in the

24  amended pleading arose out of the conduct, transaction, or occurrence set forth . . .

25  in the original pleading," or if such relation back is otherwise permissible by the

26  state "law that provides the statute of limitations applicable to the action." By

27  MGA's own admission Mattel's copyright claim arises out of the same conduct or

28  transaction contained in the original complaint filed in April, 2004, well within the

EXHIBIT  5        13

PAGE  47

1   applicable limitations period.[2] (MGA Opp. at 12 ("These very same allegations
2   [contained in the original complaint] underlie the copyright infringement and
3   intentional interference contract claims Mattel now seeks to allege against MGA,
4   Mr. Larian and Bryant")).

5       MGA's statute of limitations argument with respect to the intentional
6   interference claims fares no better. According to MGA, the applicable statute of
7   limitations is two years for an intentional interference with contract claim and Mattel
8   was aware of the facts alerting it to this claim (insofar as Bryant's contract is
9   concerned) on November 24, 2003, when it learned "that Bryant worked with MGA
10  to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence,
11  prior to the expiration of his contractual relationship with Mattel."[3] (MGA Opp. at 18
12  (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)) . Such a time line
13  would, according to MGA, mean that the applicable limitations period expired on
14  Mattel's interference with Bryant's contract claim on November 24, 2005, well
15  before Mattel sought leave to file its amended complaint. (Id). The problem again
16  with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional
17  interference claim would relate back to when it filed its original complaint in April,

18
19
20      [2] The same would appear to be true — that the amendments would be timely
21  — if the amendments related back to Mattel's answer (filed on May 13, 2005) to
    MGA's complaint in the 05-2727 case.
22
23      [3] With respect to Mattel's interference with contract claim as to one of its
    former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim
24  on September 17, 2004, when Brawer informed Mattel that he leaving to go to work
    for MGA. (MGA Opp. at 19-20). The problem with this argument is that nothing from
25  that simple event — Brawer's declaration of his intent to leave — in any way would
    apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct
26  (the stealing of proprietary information) causing Brawer to breach his contract with
    Mattel that he would not do anything to help a competitor while working for them.
27  MGA's contention that Mattel must have known of those misdeeds in mid-September
    is nothing more than speculation. Futility cannot be founded on what might or might
28  not be the case; either a claim is futile to bring or it is not.

EXHIBIT __5__   14
PAGE __48__

1  2004, well before the limitations period expired.[4]

2      Accordingly, MGA's futility argument is not well-founded.

3  4.      Prior Disavowals of Asserting a Copyright Claim

4      Finally, MGA takes umbrage with the cageyness to which Mattel has taken in
5  this case as to whether or not it is asserting a copyright infringement claim against
6  it. To MGA, such ducking and weaving on Mattel's part renders its effort to now
7  bring such a copyright claim as one done in bad faith. No doubt the Court itself has
8  been subjected to Mattel's overly vague statements on this point, but in the end
9  nothing in those statements has ever foreclosed the possibility that such a claim
10  may be in the offing. Indeed, during the oral argument on Mattel's motion to
11  dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as
12  to whether it would assert such a copyright claim against Bryant as it is currently
13  seeking to do. The most that Mattel's counsel would proffer was that Mattel would
14  not assert a copyright claim against Bryant based on Mattel's copyright rights in
15  TOON TEENS. At that point, the Court directed the parties to engage in a meet
16  and confer based on counsel for Mattel's representation and to provide a report to
17  the Court based on those discussions. The report submitted to the Court made
18  clear that, although Mattel was willing to accede that it would not bring a copyright
19  claim based on TOON TEENS, it refused to accede to Bryant's broader request
20  that "Bryant 'never copied anything' and that no Mattel product has any 'relevance'
21  to any claim that Mattel has or ever will assert against Bryant." This by itself should
22  have dispelled any illusion either Bryant or MGA was operating under that Mattel's
23  prior statements had foreclosed any potential copyright claim against them.[5]

24

25      [4] Again the relations-back principle would also seem to render its claim timely
26  if it were filed as an amended answer (the original having been filed in May, 2005) in
    the 05-2727 case.

27      [5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac
28  Larian, for the "Doe" defendants listed in its original complaint is improper because
    Mattel knew of their identity when it filed the original complaint. The argument is

EXHIBIT  5      15

PAGE  49

1   That said, Mattel's allegation in the amended complaint as to how it is
2   seeking to lay claim to the copyright in BRATZ is disconcerting. Paragraph 26,
3   subsection a, in the amended complaint alleges that Bryant "misappropriated and
4   misused Mattel property" by "using his exposure to Mattel development programs to
5   create the concept, design and name of Bratz." (First Am. Compl. ¶ 26(a)). Such
6   "exposure" could include Bryant misappropriating the Mattel design concept in
7   TOON TEENS in drawing his inspiration for the BRATZ doll. Were Mattel's
8   copyright claim so predicated it would be barred by this Court's July, 2006, Order,
9   dismissing Bryant's declaratory judgment action. Mattel was pressed on this point
10  during oral argument and conceded that such "exposure" to Mattel "development
11  programs" did not include TOON TEENS. With this representation, nothing in
12  Mattel's proposed copyright claim is barred under the rubric of bad faith.

13      5.      Judicial Economy Considerations

14      In his opposition, Bryant adds an additional reason for denying leave beyond
15  those contained in MGA's papers — the amendment would muddy the waters in the
16  04-9059 by adding "tangential" issues that would only serve to delay resolution of
17  the key issue lying at the heart of the complaint: Who owns the rights to the
18  BRATZ line of dolls. (Bryant Opp. at 2 ). Bryant notes that the case has proceeded
19  apace in moving toward resolving that issue, and the amendment would "transform

20

21  misplaced. As made clear by Mattel, California law allows a plaintiff to substitute in a
22  defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or
    ignorant of the basis for liability at the time the complaint was filed. See Miller v.
23  Thomas, 121 Cal.App.3d 440 (1981). MGA does not dispute this legal contention
24  but at oral argument disputed that Mattel did not know the basis for liability against
    itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in
25  the original complaint and those now proffered against the two in the amended
    complaint. Specifically, MGA notes that the original complaint spoke of Bryant
26  working for one of Mattel's competitiors and of that employee's theft of Mattel's
    intellectual property before leaving to work for that competitior. At most, all this
27  shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr.
28  Larian encouraged Bryant's alleged unlawful behavior recited in the original
    complaint.

EXHIBIT ___5___   16

PAGE ___50___

1    what Mattel has always claimed was a straightforward employment action against
2    an individual defendant into a global commercial dispute against Mattel's primary
3    competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns
4    BRATZ.[6] (Bryant Opp. at 2). Mattel argues that "the law does not deny leave to
5    amend because claims are 'tangential'" and then reiterates its point that some
6    showing of prejudice, namely, seeking leave after expiration of discovery, is
7    necessary. (Reply to Bryant Opp. at 3). That is not entirely correct.

8    As noted previously, the Ninth Circuit recently upheld a denial for leave to
9    amend because the amendment would have "drastically changed" the litigation,
10    even though the leave request was tendered before the time, as set forth in a Rule
11    16(b) pre-trial scheduling order, for filing a motion to amend had expired and well
12    before the discovery cut-off. See AmerisourceBergen Corp. v. Dialysist West, Inc.,
13    465 F.3d 946, 953 (9th Cir. 2006). In justifying its reasoning the Ninth Circuit cited
14    approvingly to the following statement from a well-respected treatise: "If an
15    amendment substantially changes the theory on which the case has been
16    proceeding and is proposed late enough so that the opponent would be required to
17    engage in significant new preparation, the court may deem it prejudicial." Id. at 953
18    n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,
19    FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)). Thus, Dialysist
20    recognized that the introduction of "different legal theories" and/or proof of
21    materially different facts well into the litigation can itself be a basis for finding
22    prejudice regardless of whether the period for discovery has expired (or is even
23    close to expiring) or the parties have already filed summary judgment motions. Id.
24    at 953-54.

25    Although the parties can safely be said to be at this point well into the

26

27       [6] Bryant also brings intricate legal arguments about the sufficiency of the
28    allegations Mattel has averred in building its RICO claims against him. Such
       considerations are best left to be resolved on a properly filed motion to dismiss.

17



EXHIBIT __5__

PAGE __6 1__

1  litigation in this consolidated action (as evidenced by the protracted discovery
2  disputes contained in the docket sheet that the parties have had before the
3  magistrate judge and now the special master, and the litigation of motions to
4  dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel
5  has made painfully clear in its papers, no scheduling order has been entered in this
6  case.[7] This takes away somewhat from the prejudice Dialysist found to exist when
7  a "drastic change [in a party's] litigation theory" takes place mid-stream in the
8  litigation process. Id. at 953. Simply put, without a schedule for the filing of pre-trial
9  motions and other matters (e.g., discovery cutoff), the parties have been given free
10  reign in how to conduct the litigation in this case.

11       That the delay in bringing the proposed amendments and the relative length
12  of time into the litigation when those amendments were brought may not neatly fold
13  into Dialysist's reasoning does not mean that leave must nonetheless be granted.
14  The 04-9059 action, as it is presently constituted, is not a complex one. It asks a
15  rather narrow and straightforward question — Did anything from Bryant's
16  employment at Mattel during the 1999-2000 period give Mattel ownership rights to
17  the BRATZ doll line? The proposed amendments would radically alter the litigation
18  in that case to include far ranging disputes involving multiple parties and concerning
19  events not connected with the BRATZ ownership issue. That the original action
20  was a relatively simple and straight-forward matter raises another point beyond the
21  change in the action's litigation posture — whether entangling the rival doll makers'
22  other commercial disputes into this particular case would serve to muddy the waters
23  and make the matter that much more difficult to manage from the Court's
24  perspective.

25
---
26     [7] Mattel's repeated refrain that the matter is in its nascent stage as evidenced
   by the fact that the parties only just recently exchanged in initial disclosures is
27  misleading. The exchange of initial disclosures referred to by Mattel is in the 05-
   2727 case. With respect to the 04-9059 case it appears that such initial disclosures
28  were completed long ago as evidenced by the fact that discovery disputes appeared
   in that case as far back as January, 2005.

EXHIBIT   5    18

PAGE   52

1      As has long been recognized, equally important in determining whether to

2 grant such leave is what impact such amendments would have on the court's ability

3 to manage the case. See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE

4 § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial

5 economy and its ability to manage the case. . . . The court should also temper the

6 policy favoring freely granting leave to amend with consideration of the ability of the

7 district court to manage the case adequately if amendment is allowed"). As Judge

8 Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule,

9 the court should consider judicial economy and whether the amendments would

10 lead to expeditious disposition of the merits of the litigation. Finally, the court

11 should consider whether the amendment adds substance to the original allegations,

12 and whether it is germane to the original case of action." Chitimacha Tribe of

13 Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also

14 Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.

15 1987)("General considerations of judicial economy also justify allowing the

16 amendments. The violations included in the proposed amendment relate to the

17 same subject matter as the original complaint. Allowing the amendment will further

18 the federal policy of 'wrapping in one bundle all matters concerning the same

19 subject matter.'").

20      Mattel's amendments do not add substance to the claims contained in its

21 original complaint. Rather, they would expand the universe of claims and

22 defendants stretching well-beyond the questions raised in the original complaint

23 over whether Bryant's conduct while in the employ of Mattel subjected his later

24 attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions

25 Agreement or otherwise rendered his creation subject to an infringement action.

26 Nowhere does Mattel seek to reconcile the breadth of its present amendments with

27 the narrowness of the allegations contained in its original complaint. In fact, the

28 precise opposite is true. Mattel acknowledges that its proposed amendments bear

19

EXHIBIT _____5_____

PAGE _____53_____

1 more congruity to the allegations leveled against it in MGA's Lanham Act case than

2 to those in the action to which it seeks to add them:

> [M]any of the matters raised by Mattel's proposed
> Amended Complaint are and will remain at issue
> because of MGA's Complaint, whether or not leave to
> amend is granted. MGA's claims allege that a broad
> array of purported Mattel conduct across the globe,
> starting at least as early as 1999, has violated the
> Lanham Act and unfair competition law. This includes
> Mattel's alleged infringement of Bratz and other MGA
> products. As a result, <u>issues in the proposed Amended
> Complaint are already part and parcel of Mattel's
> defenses to MGA's unfair competition claims</u>, including
> because they show that MGA and Bryant, and not
> Mattel, are ones who stole the products and other
> properties involved.

11 (Reply to Bryant Opp. at 7 (emphasis added)). Mattel apparently finds this

12 discongruity unimportant because "all of these matters have been consolidated with

13 the <u>Bryant</u> case." (<u>Id.</u> at 7). As noted earlier, the fact that the cases have been

14 consolidated does not mean that the parties can ignore the distinctions that still

15 exist between them. If, as Mattel acknowledges, the present amendments are

16 nothing more than re-formulated defenses and counterclaims it presently has to

17 MGA's complaint against it in the 05-2727 case, then such amendments should be

18 brought in the form of an amended answer and counterclaim in that case.

19  Consideration of the distinctions between the two cases is wise as it serves

20 as a useful tool in providing the Court a better means to manage the cases now

21 that they have been consolidated. The proverbial dog (ownership in BRATZ)

22 should be wagging the proverbial tail (the remaining commercial disputes), not the

23 other way around. Admittedly, the dog's tail has grown in size both by MGA's filing

24 of its complaint in the 05-2727 action and Mattel's response thereto through its

25 proposed amendments. Nonetheless, it is readily apparent to the Court that the

26 crown jewel in this action still remains the ownership rights to the BRATZ dolls. The

27 parties have engaged in extensive and undoubtedly expensive discovery on this

28 very issue (from hiring world-renowned experts to test the age of Bryant's design

20



EXHIBIT 5

PAGE 54

1 drawings to technically complex discovery of what is on each other's computers).

2     Indeed the separateness of the two matters is reflected in how the cases are

3 currently structured, namely, the narrowness of the issue involved in 04-9059 and

4 the expansiveness of the facts at issue in 05-2727. In light of this fact, the Court

5 believes a two-track scheduling order wherein the 04-9059 matter's discovery cut

6 off and trial date are set well-ahead of those in 05-2727 makes the most sense. As

7 noted earlier, many of the legal claims being pressed in 05-2727 will be affected by

8 the result of the litigation in 04-9059. If, for instance, Mattel does own the rights to

9 the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's

10 "development programs" or by way of the Inventions Agreement because he

11 continued to work on his designs while at Mattel), then large portions of MGA's

12 Lanham Act infringement claims may become moot. By the same token, if Mattel

13 does not own rights to BRATZ, then some of the defenses and counterclaims set

14 forth as independent claims in the present amended complaint may become moot,

15 including Mattel's copyright infringement claim as well as portions of its remaining

16 RICO, misappropriation, and aiding and abetting claims. If, however, the Court

17 were to allow the amended complaint to be filed in the 04-9059 action, such case

18 management would be difficult, if not impossible as many of the issues being

19 litigated in the 05-2727 case would have been poured into the 04-9059 case by the

20 amendment. Due to this substantial overlap in claims and facts, a two-track

21 scheduling order utilizing the case number distinctions would be impossible to craft.

22 When pressed by the Court at oral argument as to which of its proposed claims it

23 believed would not undermine the BRATZ ownership posture of the 04-9059 case,

24 Mattel cited to its copyright and RICO claims. However, upon further questioning

25 by the Court, counsel for Mattel acknowledged that much of those claims were, like

26 the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

27     In light of the burden allowing Mattel's amendment to proceed would have on

28 this Court's ability to efficiently manage these consolidated matters denial of



21

EXHIBIT 5

PAGE 55

1  Mattel's request to amend its complaint in the 04-9059 matter is justified. <u>See</u>

2  <u>Perrian v. O'Grady</u>, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial

3  system can justify a denial of a motion to amend 'even if the amendment would

4  cause no hardship at all to the opposing party'"). Buttressing the Court's decision is

5  the fact that, even with such a denial, Mattel may file (and the Court provides leave

6  to Mattel to so file) an amended answer and counterclaim in the 05-2727 case

7  raising all the new claims and defendants presently sought to be achieved through

8  amendment of its complaint in the 04-9059 action. None of the substantive

9  concerns raised by MGA and Bryant to the present amended complaint, <u>e.g.</u>,

10  statutes of limitations, would appear to be affected if the new claims and

11  defendants were brought as defenses and counterclaims in the 05-2727 case as

12  opposed to the 04-9059 one.

13       Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed

14  amendments, but only insofar as they are pled in the form of an amended answer

15  and counterclaim in the 05-2727 case.

16       Finally, the lack of a scheduling order in this case is problematic; one should

17  have been entered long ago. <u>See</u> Fed. R. Civ. P. 16(b)(noting that a scheduling

18  "order shall issue as soon as practicable but in any event within 90 days after the

19  appearance of a defendant and within 120 days after the complaint has been

20  served on a defendant"). In light of the fact that entry of a scheduling order is

21  woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b)

22  scheduling conference be held in this consolidated matter on February 12, 2007, at

23  1:30 p.m. in Courtroom One. The parties are directed to file a Joint Rule 26(f)

24  report with the Court by February 5, 2007.

25       IT IS SO ORDERED.

26  DATE: _/- //- o 7_

27

28                                  STEPHEN G. LARSON
                                     UNITED STATES DISTRICT JUDGE

EXHIBIT __5__ [22]

PAGE __56__

# EXHIBIT 6

1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
3 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
4 | Los Angeles, CA 90071-3144
Tel.: (213) 687-5000
5 | Fax: (213) 687-5600
6 |
7 | JEROME B. FALK, JR. (Bar No. 39087)
(jfalk@howardrice.com)
8 | DOUGLAS A. WINTHROP (Bar No. 183532)
(dwinthrop@howardrice.com)
9 | HOWARD RICE NEMEROVSKI CANADY
FALK & RABKIN, A Professional Corporation
10 | Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
11 | Tel: (415) 434-1600
Fax: (415) 217-5910
12 |
13 | Attorneys for MGA Entertainment, Inc., MGA
Entertainment (HK) Limited, and Isaac Larian
14 |

15 |                 UNITED STATES DISTRICT COURT

16 |                 CENTRAL DISTRICT OF CALIFORNIA

17 |                         EASTERN DIVISION

18 |

| 19 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|
| 20 | Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| 21 | vs. | Honorable Stephen G. Larson |
| 22 | MATTEL, INC., a Delaware corporation, | NOTICE OF APPEAL TO THE UNITED STATES COURT OF |
| 23 | Defendant. | APPEALS FOR THE NINTH CIRCUIT |
| 24 | | |
| 25 | | PERMANENT INJUNCTION APPEAL |
| 26 | AND CONSOLIDATED ACTIONS. | |

27 |

28 |

MGA Parties' Notice of Appeal - Case No. CV 04-9049 SGL (RNBx)

EXHIBIT _6_

PAGE _57_

1   Defendants/Appellants MGA Entertainment, Inc., MGA Entertainment (HK)
2   Limited, and Isaac Larian (the "MGA Parties") appeal to the United States Court of
3   Appeals for the Ninth Circuit from the following Orders dated December 3, 2008 by
4   the United States District Court for the Central District of California (collectively,
5   the "December 3 Orders"):

6       (1)   Order Granting Mattel, Inc.'s Motion for Permanent Injunction;

7       (2)   Order Granting Mattel, Inc.'s Motion for Declaratory Judgment;

8       (3)   Order Granting Mattel, Inc.'s Motion for Constructive Trust and For
9             Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof.
10            Code § 17200; and

11      (4)   Order Finding In Favor Of Mattel As To The MGA Parties' Affirmative
12            Defenses; Order Granting Mattel's Motion For Declaratory Judgment;
13            Order Granting Mattel's Motion For Constructive Trust And § 17200
14            Injunctive Relief; Order Granting Mattel's Motion For Permanent
15            Injunction; Order Denying As Moot Motion To Strike Portions Of
16            Hutnyan Declarations And Exhibits Thereto; Order Denying Motion To
17            Strike The Proctor, Keiser, And Hollander Declarations.

18   Copies of these orders are attached as Exhibits A, B, C, and D, respectively.

19      In addition, the MGA Parties appeal any prior interlocutory order to the extent
20   it gave rise to, or decides issues inextricably linked with, the Court's December 3
21   Orders, including, but not limited to, the following orders:

22      (1)   Order Regarding Mattel's Motion For Leave To Amend, Dated January
23            12, 2007;

24      (2)   Order Granting In Part, Denying In Part, And Deferring In Part The
25            Parties' Motions For Partial Summary Judgment, Dated April 25, 2008;

26      (3)   Order re Motion For Reconsideration; Order re The Parties' Motions
27            For Partial Summary Judgment, Dated May 21, 2008;

28      (4)   Order re Statute Of Limitations Defense, Dated May 27, 2008;

EXHIBIT __6__

PAGE __58__

(5)   Further And Final Order re Statute Of Limitations Defense, Dated June 2, 2008;

(6)   Final Jury Instructions As Given, Dated July 10, 2008;

(7)   Final Verdict Form As Given, Dated July 17, 2008;

(8)   Order Denying Motion For Mistrial, Dated August 8, 2008;

(9)   Post-Phase 1A Order re Motion For Partial Summary Judgment On The Issue Of Substantial Similarity, Dated July 24, 2008;

(10)  Order re MGA's Motion For Clarification/Reconsideration, Dated August 15, 2008;

(11)  Court's Phase B Jury Instructions As Given, Dated August 20, 2008; and

(12)  Phase B Verdict Form As Given, Dated August 26, 2008.

Copies of these orders are attached as Exhibits E through P.

The United States Court of Appeals for the Ninth Circuit has jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1) because the Orders are injunctive in nature and/or inextricably bound up with injunctive orders from which the appeal is taken.

DATED: December 11, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN, A Professional Corporation

By:   _____ /s/ Thomas J. Nolan _____
Thomas J. Nolan
Attorneys for the MGA Parties

2

EXHIBIT ___6___

PAGE ___59___

# EXHIBIT 7

CALENDARED

FILED

JAN 1 4 2009

## UNITED STATES COURT OF APPEALS

### FOR THE NINTH CIRCUIT

JAN 12 2009

**MOLLY C. DWYER, CLERK**
**U.S. COURT OF APPEALS**

CARTER BRYANT, an individual,

        Plaintiff - Counter-defendant,

MATTEL, INC., a Delaware corporation,

        Counter-claimant - Defendant
        - Appellee,

  v.

MGA ENTERTAINMENT, INC.,

        Counter-defendant -
        Intervenor - Appellant,

MGA ENTERTAINMENT (HK)
LIMITED; et al.,

        Counter-defendants -
        Appellants.

No. 08-57015

D.C. No. 2:04-cv-09049-SGL
Central District of California,
Los Angeles

ORDER

Before: GOODWIN, CLIFTON and BEA, Circuit Judges.

    The parties' motions to file documents under seal is granted. All motions

and exhibits designated as "filed under seal" shall be filed and maintained under

seal.

KS/MOATT

EXHIBIT  7

PAGE  60

1-12-09

On January 7, 2009, the district court's order modifying the stay found the permanent injunction challenged in this appeal to be non-final. Accordingly, this appeal is dismissed for lack of jurisdiction. *See* 28 U.S.C. §§ 1291, 1292(a); *Miller v. Marriott Int'l, Inc.*, 300 F.3d 1061 (9th Cir. 2002).

Appellants' emergency motion to stay the district court's December 3, 2008 order is denied as moot.

All other pending motions are denied as moot.

The parties shall bear their own costs for this appeal.

**DISMISSED.**

KS/MOATT                                    2                                    08-57015

EXHIBIT __7__

PAGE __61__