QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09039
Case No. CV 05-02727

**DISCOVERY MATTER**

**[To be heard by Discovery Master Robert C. O'Brien pursuant to the Court's orders of December 6, 2006 and January 6, 2009]**

MATTEL, INC.'S REPLY IN SUPPORT OF MATTEL'S RENEWED MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS BY MGA (REQUESTS NO. 87 AND 88)

[Supplemental Declaration of Zachary D. Krug filed concurrently herewith]

Date: March 11, 2009
Time: 10:00 AM
Place: Arent Fox LLP
555 W. 5th St., 48th Floor
Los Angeles, CA 90013

**Phase 2**
Discovery Cut-off: Dec. 11, 2008
Pre-Trial Conference: March 1, 2009
Trial Date: March 23, 2009

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. MGA IGNORES RELEVANT CONTRARY AUTHORITY ........ 2

A. Personnel Records Are Discoverable Pursuant To An Existing Protective Order ........ 2

B. Judge Larson Ruled That State-Created Privileges Do Not Govern This Case ........ 4

C. MGA Fails To Cite Authority Holding That § 1985.3 Of The California Code Of Civil Procedure Applies In Federal Court ........ 6

II. MATTEL'S REQUESTS ARE NOT OVERBROAD ........ 8

III. MGA'S COMPLAINT REGARDING THE MEET AND CONFER PROCESS IS FRIVOLOUS ........ 10

IV. MGA SHOULD BE SANCTIONED ........ 11

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

Page

## Cases

Agster v. Maricopa County, 422 F.3d 836 (9th Cir. 2005) ... 5

CBS, Inc. v. Partee, 198 Ill. App. 3d 936 (1990) ... 4

In re Cal. Pub. Util. Comm., 640 F.2d 778 (9th Cir. 1989) ... 5

Ceramic Corp. of Am. v. Inka Maritime Corp., 163 F.R.D. 584 (C.D. Cal. 1995) ... 3

Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc., 2007 WL 273949 (E.D. Cal. Jan. 29, 2007) ... 7

Horaitis v. Mazur, 2004 WL 524437 (N.D. Ill. Feb. 27, 2004) ... 12

Cimino v. Yale Univ., 638 F. Supp. 952 (D. Conn. Jun. 30, 1986) ... 12

Conn. Gen. Life Ins. v. Zilka, 56 Fed. Appx. 828, 829 (9th Cir. 2003) ... 5

Corser v. County of Merced, 2006 WL 2536622 (E.D. Cal. Aug. 31, 2006) ... 5, 7, 12

Dawson Farms, LLC v. BASF Corp., 2007 WL 141077 (W.D. La. Jan. 17, 2007) ... 10

Dawson v. Cal. Dept. of Corrections, 2006 WL 2067078 (N.D.Cal. Jul. 25, 2006) ... 12

DeMyrick v. Guest Quarters, 1997 WL 177838 (N.D. Ill. Apr. 6, 1997) ... 12

Diaz v. Oakland Trib., 139 Cal. App. 3d (1983) ... 4

Erie R.R. v. Tompkins, 394 U.S. 64 (1938) ... 4, 5

Feldman v. Allstate Ins. Co., 322 F.3d 660 (9th Cir. 2003) ... 5

Folb v. Motion Picture Indus. Pension & Health Plans, 16 F. Supp. 2d 1164 (C.D. Cal. 1998), aff'd, 216 F.3d 1082 (9th Cir. 2000) ........ 5

Fortunato v. Superior Court, 114 Cal. App. 4th 475 (2003) ........ 4

Garden Grove Police Dep't v. Superior Court, 89 Cal. App. 4th 430 (2001) ........ 4

Garrett v. San Francisco, 818 F.2d 1515 (9th Cir. 1987) ........ 6

Gosnell v. Rentokil, Inc., 175 F.R.D. 508 (N.D. Ill. 1997) ........ 12

Grinzi v. Barnes, 2004 WL 2370639 (N.D. Cal. Oct. 20, 2004) ........ 2, 5, 11

Guerra v. Board of Trustees, 567 F.2d 352 (9th Cir. 1977) ........ 6

Harding Lawson Assoc. v. Superior Court, 10 Cal. App. 4th 7 (1992) ........ 4

Hyde & Drath v. Baker, 24 F.3d 1162 (9th Cir. 1994) ........ 11

Keller-McIntyre v. Coll. of Health & Human Servs., 2006 WL 3456672 (N.D. Cal. Nov. 29, 2006) ........ 3

Kerr v. District Court, 511 F.2d 192 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976) ........ 6

Ladson v. Ulltra East Parking Corp., 164 F.R.D. 376 (S.D.N.Y. 1996) ........ 10

Liew v. Breen, 640 F.2d 1046 (9th Cir. 1981) ........ 5

Luna v. Sears Life Ins. Co., 2008 WL 2484596 (S.D. Cal. Jan. 11, 2008) ........ 10

Maldonado v. Cal. Dept. of Corrections & Rehab., 2007 WL 4249811 (E.D. Cal. Nov. 30, 2007) ........ 3

Meadowbrook, LLC v. Flower, 959 P.2d 115 (Utah 1998) ........ 12

Nakagawa v. Regents of Univ. of Cal., 2008 WL 1808902 (N.D. Cal. April 22, 2008) ........ 2, 4

Premium Servs. Co. v. Sperry & Hutchison Co., 511 F.2d 225 (9th Cir. 1975) .................... 4

RTC v. Dabney, 73 F.3d 262 (10th Cir. 1995) .................... 11

Reed v. Williams, 2007 WL 2140506 (E.D. Cal. Jul 25, 2007).................... 7, 12

Rules. Blake By and Through Blake v. National Cas. Co., 607 F. Supp. 189 (C.D. Cal. 1984).................... 5, 12

S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist., 60 F.3d 305 (7th Cir. 1995) .................... 5

Scottsdale Unif. Sch. Dist. v. KPNX, 191 Ariz. 297 (302) .................... 4

ECASH Tech. Inc. v. Guagliardo, 2002 WL 987324 (9th Cir. May 13, 2002).................... 10

Star Editorial, Inc. v. District Court, 7 F.3d 856 (9th Cir 1993) .................... 5

U.S. v. Zolin, 491 U.S. 554 (1989) .................... 5

Valley Bank of Nev. v. Superior Court, 15 Cal. 3d 652 (1975).................... 4

Walton v. K-Mart, Inc., 2007 WL 4219395 (N.D. Cal. Nov. 28, 2007) .................... 3

Wray v. Gregory, 61 F.3d 1414 (9th Cir. 1995) .................... 5

**Statutes**

Fed. R. Civ. Proc. 37(a)(4).................... 11

Fed. R. Evid. 803(7) .................... 10

FRCP 30(b)(6) .................... 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Mattel has alleged that MGA and others have engaged in a pattern of inducing Mattel employees to leave Mattel, steal Mattel's trade secrets, and provide them to MGA. The contents of personnel files, including dates of first contact, terms of hire, reviews, disciplinary actions, as well as what may not be in those files—failure to discipline a theft by a dishonest Mattel employee, for example—are all relevant to prove that pattern. MGA's refusal to produce personnel files of former Mattel employees is completely unjustified.

MGA admits that the personnel files it is withholding are relevant documents, but claims the right not to produce them on privacy grounds. The federal courts recognize and protect the privacy of personnel files by requiring a protective order that limits access to these files and their use, and provides penalties for any violation, before personnel files are produced. Not only does this case have such a protective order in place, but both the Court and the former Discovery Master have ordered the production of private information subject to this protective order.

MGA's claims that this protection is insufficient, and that California's prior notice procedure applies as well. Not so. This is a federal question case, and federal law governs. State privileges and privacy procedures do not apply. MGA offers not one case citation for the proposition that a statutory timing requirement of California's Code of Civil Procedure applies in federal question cases. Mattel asked for such authority. Apparently unable to find any, MGA instead claimed to be aware of "no Federal case . . . that allows an employer to release its employees' private information to a third party without notice, even pursuant to a protective order." In fact, there are several—they reject the very arguments MGA raises here.

MGA's personnel and vendor files contain relevant, discoverable information, which MGA has no basis to withhold. MGA should be compelled to produce this information, and sanctioned for its meritless objection.

## Argument

## I. MGA IGNORES RELEVANT CONTRARY AUTHORITY

In its attempt to justify its continued withholding of relevant personnel files, MGA asserts that California law precludes production of the documents that Mattel seeks. The foundation of MGA's argument is the faulty notion that state-created privileges govern this case. They do not. Judge Larson has already specifically rejected MGA's arguments, as have other federal courts that have held that personnel files are discoverable when produced under a protective order like the one in this case. MGA's suggestion that the status of § 1985.3's application in federal court is "unclear" is wrong. The law could not be more clear.

### A. Personnel Records Are Discoverable Pursuant To An Existing Protective Order

As noted in Mattel's motion, personnel files were held to be discoverable in Phase 1 of this action.[1] When questions of privacy arose—both in the context of personnel files and in broader discovery matters—the prior Discovery Master repeatedly held that the guarantees of the operative protective order fully addressed privacy concerns.[2] These rulings were, and are, consistent with other California district courts holding that where a protective order has been entered, objections based on employee privacy do not bar production. See. e.g., Nakagawa v. Regents of Univ. of Cal., 2008 WL 1808902, at *3 (N.D. Cal. April 22, 2008) (ordering production of personnel files and stating "[a]ny other privacy concerns defendant may have should be addressed by a protective order"); Grinzi v. Barnes, 2004 WL 2370639, at *1 (N.D. Cal. Oct. 20, 2004) ("The proper mechanism for an employer

---

[1] See, e.g., May 15, 2007 Discovery Master Order, at 11 n.4, Krug Decl., Ex. 32

[2] See id.; see also Jan. 25, 2007 Discovery Master Order, at 14 ("The protective order . . . is sufficient to address any confidentiality concerns raised by Bryant), Supp. Krug Decl., Ex. 1; Jan. 9, 2008 Discovery Master Order, at 25 ("The privacy objections are overruled since there is a protective order in place to address Mr. Larian's concerns regarding his personal finances."), Supp. Krug Decl., Ex. 2.

to use to protect an employee's privacy interest in his personnel file is to obtain, either by stipulation or motion, a properly crafted protective order under Rule 26(c).").[3]

MGA ignores these cases. It cites no federal decision precluding discovery of personnel files pursuant to a protective order. Instead, it cites to California cases for the unremarkable proposition that California provides a limited "right to privacy" in certain personal information. (Opp. at 11.) These cases miss the point. The issue is not whether California affords any privacy rights to employees, but whether any such right serves as a bar to discovery in a federal case. It does not. See Ceramic Corp. of Am. v. Inka Maritime Corp., 163 F.R.D. 584, 589 (C.D. Cal. 1995) ("Even if all documents in [the] personnel files are protected by [a] privacy right, that right may, nevertheless, be invaded for litigation purposes."). MGA's "reliance on state court cases interpreting the California right of privacy is somewhat misplaced," as state-created privileges do not bar production in a federal case. Walton, 2007 WL 4219395, at *2 (ordering production of employee information, pursuant to protective order, despite privacy claims under California law).

Moreover, the state court authorities MGA cites did not involve discovery governed by the terms of a protective order. For example, in Valley Bank of Nev. v. Superior Court, the Supreme Court of California did not hold that privacy interests *precluded* otherwise valid discovery; rather, it instructed the trial court to fashion an appropriate remedy—such as a protective order—to *allow* disclosure. See Valley Bank, 15 Cal. 3d 652, 658 (1975) ("[T]he trial court has available certain procedural

[3] See also Maldonado v. Cal. Dept. of Corrections & Rehab., 2007 WL 4249811, at *7 (E.D. Cal. Nov. 30, 2007) ("The court has already analyzed these non-party privacy rights, and the protective order should serve to remedy any concern in this regard."); Walton v. K-Mart, Inc., 2007 WL 4219395, at *2 (N.D. Cal. Nov. 28, 2007) ("In view of the employees' privacy interests, documents shall be produced pursuant to an attorneys' eyes only protective order."); Keller-McIntyre v. Coll. of Health & Human Servs., 2006 WL 3456672, at *1 (N.D. Cal. Nov. 29, 2006) ("The privacy rights of University employees should, as a general matter, be adequately protected by [] a protective order.").

devices which may be useful in fashioning an appropriate order that will, so far as possible, accommodate considerations of both disclosure and confidentiality.").[4] The "right to privacy" recognized in the decisions cited by MGA reflects a "public policy against unnecessary *public* disclosure," Premium Servs. Co. v. Sperry & Hutchison Co., 511 F.2d 225, 229 (9th Cir. 1975) (emphasis added). The protective order here shields the documents from public disclosure. Nowhere does MGA even attempt to explain why the protective order is inadequate to protect these privacy interests.[5]

### B. Judge Larson Ruled That State-Created Privileges Do Not Govern This Case

MGA argues that California's state created privileges[6] govern this case because under the Supreme Court's well-known decision in Erie R.R. v. Tompkins, 394 U.S. 64 (1938), state "procedural rules" that serve "substantive goals" may apply in federal actions. (Opp. at 12.) MGA previously made this argument to Judge Larson. He rejected it.

---

[4] The other state authorities MGA cites are similarly unhelpful: Fortunato v. Superior Court, 114 Cal. App. 4th 475 (2003), dealt with the specific issue of tax-record privilege; Harding Lawson Assoc. v. Superior Court, 10 Cal. App. 4th 7 (1992), did not involve an existing protective order; Garden Grove Police Dep't v. Superior Court, 89 Cal. App. 4th 430 (2001), dealt with the specific procedures for disclosure of police personnel files; Scottsdale Unif. Sch. Dist. v. KPNX, 191 Ariz. 297 (302), presented questions of Arizona public records law and the disclosure of information regarding public school teachers; Diaz v. Oakland Trib., 139 Cal. App. 3d (1983), involved a claim for a newspaper's public disclosure of private information, not whether such information was discoverable subject to a protective order; CBS, Inc. v. Partee, 198 Ill. App. 3d 936 (1990), dealt with public disclosure under Illinois' FOIA statute.

[5] Tellingly, when it has suited its own position in discovery, MGA has taken a contrary stance. For example, when MGA sought Mattel employee documents from Mattel's human resource contractor, MGA pointed to robust guarantees of the protective order and (as Mattel does here) argued that "any objection to production of the requested documents on confidentiality grounds is baseless." See MGA's Reply in Support of Motion to Compel Production of Documents From Third Party Right Management Consulting, Inc., dated Mar. 13, 2008, at 6, Supp. Krug Decl., Ex. 3. (MGA's discovery requests were denied on unrelated grounds.)

[6] "Although the right to privacy is not a recognized privilege, many courts have considered it in discovery disputes." Nakagawa, 2008 WL 1808902 at *2.

Subject-matter jurisdiction in this case is premised on federal questions, not diversity.[7] State law privileges may apply, under Erie, to federal court actions in pure diversity cases. But where, as here, "there are federal question claims and pendent state law claims present, the federal law of privilege applies." Agster v. Maricopa County, 422 F.3d 836, 839 (9th Cir. 2005).[8] This includes issues regarding the scope of the discovery provisions in the Rules, and the application of any privileges to bar disclosure. See Grinzi, 2004 WL 2370639 at *1 ("California law is inapplicable to disclosure and discovery obligations in a federal court action alleging federal causes of action" and ordering production of personnel records).[9]

---

[7] MGA knows this—in fact, MGA itself argued this exact point when it removed this action to federal court. See, e.g., Brief of Appellees Carter Bryant and MGA Entertainment, Inc., dated August 26, 2005, at 3, 22-30, Supp. Krug Decl., Ex. 4 ("Federal-question jurisdiction exists because Mattel's state-law claims are completely preempted by the federal Copyright Act."). Perhaps recognizing this, MGA asserts that the case no longer involves federal questions because "the claims left to be tried in Phase 2 are essentially state law claims." (Opp. at 12.) This hardly warrants a response—Phase 2 involves, among other federal issues, Mattel's two RICO claims, as well as MGA's claims of false designation, dilution and trade dress infringement, and federal unfair competition.

[8] See also U.S. v. Zolin, 491 U.S. 554, 562 (1989) ("Questions of privilege that arise in the course of the adjudication of federal rights are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."); Conn. Gen. Life Ins. v. Zilka, 56 Fed. Appx. 828, 829 (9th Cir. 2003) (although "appellants base their claim of privilege on California law Plaintiffs' RICO claim raised a federal question and therefore federal privilege law applies to the entire action, including pendent state law claims") (unpublished); Folb v. Motion Picture Indus. Pension & Health Plans, 16 F. Supp. 2d 1164, 1169 (C.D. Cal. 1998) (same), aff'd, 216 F.3d 1082 (9th Cir. 2000).

[9] And the authorities MGA cites are not the contrary—they merely stand for the proposition that a federal court, sitting in diversity, may apply state rules determined to be "substantive." See Feldman v. Allstate Ins. Co., 322 F.3d 660, 666 (9th Cir. 2003) ("Pursuant to Erie and its progeny, federal courts sitting in diversity apply state substantive law and federal procedural law."); S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist., 60 F.3d 305, 311 (7th Cir. 1995) (court, sitting in diversity, determined that state rule governed because it was "substantive"); Wray v. Gregory, 61 F.3d 1414, 1417 (9th Cir. 1995) (same); Star Editorial, Inc. v. District Court, 7 F.3d 856, 859 (9th Cir 1993) (diversity action); In re Cal. Pub. Util. Comm., 640 F.2d 778, 781 (9th Cir. 1989) (same); Liew v. Breen, 640 F.2d 1046, 1049 (9th Cir. 1981) (same). In Thomas, the only authority MGA cites that involved a federal question, the Court merely held that it would apply state substantive law "[a]bsent any federal statute or rule." 2006 WL 2868967, at *40 (E.D. Cal. Oct. 6, 2006).

(footnote continued)

Judge Larson—in a controlling decision that MGA does not cite—has already rejected the very argument MGA raises here.[10] In March 2007, MGA appealed to Judge Larson an order of the prior Discovery Master overruling MGA's objection that certain California privilege provisions precluded discovery into MGA's fee agreement with Bryant.[11] Judge Larson rejected the argument MGA now advances: "MGA and Bryant argue that state law applies; however, because the present consolidated actions involve both federal and state-law claims, the federal law of privilege applies."[12] For this same reason, the Ninth Circuit has unequivocally stated that "personnel files are discoverable in federal question cases . . . despite claims of [state-created] privilege," Garrett v. San Francisco, 818 F.2d 1515, 1519 (9th Cir. 1987) (citing Guerra v. Board of Trustees, 567 F.2d 352 (9th Cir. 1977); Kerr v. District Court, 511 F.2d 192, 197 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976)). Simply put, California's state created privileges do not govern the scope of discovery in this action.

**C. MGA Fails To Cite Authority Holding That § 1985.3 Of The California Code Of Civil Procedure Applies In Federal Court**

Despite the fact that this Court has, consistent with all authority, already held that discovery in this case is not governed by California's state-created privileges and that the protective order adequately protects privacy concerns, MGA tries to

However, as set forth Part I.C, even if deemed substantive, § 1985.3 would not apply because it conflicts with the Federal Rules.

[10] On other occasions, MGA raised this same argument with the prior Discovery Master, who, like Judge Larson, rejected it. See MGA's Opposition to Mattel's Motion to Compel MGA to Produce Witnesses Pursuant to FRCP 30(b)(6), dated April 26, 2007, at 6 n.4, Supp. Krug Decl., Ex. 5 (arguing, *inter alia*, that California state privileges barred discovery); May 15, 2007 Hearing Tr. at 21:15-25, Supp. Krug Decl., Ex. 6 (overruling MGA's objections); see also May 16, 2007 Order, Supp. Krug Decl., Ex. 7 (same).

[11] See MGA's Objections to Discovery Master's March 7, 2007 Order, dated Mar. 21, 2007, at 5-7, Supp. Krug Decl., Ex. 8.

[12] See Order re Motions Heard on June 11, 2007, dated June 27, 2007, at 33-34, Supp. Krug Decl., Ex. 9.

justify its continued withholding of relevant personnel files by claiming that it is "presently unclear" whether the notice requirement of California's Code of Civil Procedure § 1985.3 applies in federal court. (Opp. at 11). In the parties meet and confer, MGA claimed it was not aware of any "Federal case . . . that allows an employer to release its employees' private information to a third party without notice, even pursuant to a protective order."[13] There is nothing "unclear" about whether § 1985.3 bars the discovery Mattel seeks. It does not—regardless of whether it is, as MGA suggests, a "substantive" provision or not. MGA's argument has been considered and squarely rejected by two district courts—neither of which MGA cites in its opposition, despite the fact that these are the ***only*** federal decisions on this exact point. See Reed v. Williams, 2007 WL 2140506, at *4 (E.D. Cal. Jul 25, 2007) (holding that requirements of § 1985.3, among others, did not apply in federal question case because "federal law applies in terms of substantive, privilege and discovery law."). As noted by Reed court, § 1985.3's provisions are "inconsistent with the federal privilege" and therefore would not apply even under Erie. See id. at *4. Another district court—sitting only in diversity—has likewise held that § 1985.3 does not govern discovery in federal courts. See Corser v. County of Merced, 2006 WL 2536622, at *2 (E.D. Cal. Aug. 31, 2006) (holding that failure to follow the procedures in § 1985.3 not valid grounds to quash subpoena because, even in diversity, the federal rules apply and to "the extent that Section 1985.3 may provide a California-law privilege [] the privilege does not apply to this litigation.").[14] MGA omits to cite these authorities, which resolve any uncertainty

---

13 Email from A. Kahn to J. Corey et al., dated Feb. 10, 2009, Supp. Krug Decl., Ex. 10. As detailed above, there are several—all of them are contrary to MGA's position.

14 Cf. Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc., 2007 WL 273949, at *2 (E.D. Cal. Jan. 29, 2007) ("[A] district court is not free to legislate new, mandatory discovery procedures under the rubric that the state law does not 'conflict with' the federal rules simply because it thinks state law supplies a better way to
(footnote continued)

about the current status of § 1985.3 in federal actions. It is not applicable, and MGA has no basis to withhold these documents on that ground.

## II. MATTEL'S REQUESTS ARE NOT OVERBROAD

MGA asserts that Mattel's requests are overbroad because they are not limited them to specific products, but rather seeks the personnel files in their entirety.[15] It bases this on the fact that the prior Discovery Master ordered MGA to produce documents in its personnel files (responsive to different document requests) only as pertinent to certain products at issue in Phase 1. (Opp. at 15.) A production of complete files, MGA asserts, would be overbroad and would improperly permit a "fishing expedition" for new claims. (Opp. at 8.)[16]

This argument fundamentally misapprehends the nature of Mattel's Phase 2 claims.[17] Mattel's claims in this Phase, unlike Phase 1, are not focused on any one specific product. Rather, Mattel alleges a pattern of misconduct occurring over the course of many years, including, *inter alia*, MGA's pattern and practice of encouraging Mattel employees, as part of its recruitment efforts, to abscond with Mattel's confidential information and trade secrets—including non-product specific information. The back-and-forth communications documenting the recruitment and hiring process are directly relevant to Mattel's allegations—and yet may not be

---

go.") (holding that timing requirements of Cal. Civ. Proc. § 2019 do not govern in federal actions).

[15] MGA makes the same objection regarding vendor files. (Opp. at 15.) As with personnel files of former Mattel employees, former vendor files are likely to have relevant material—indeed, some former Mattel employees are not employed directly as MGA employees but rather as MGA vendors.

[16] Once again MGA does not provide the whole story. The prior Discovery Master's December 31, 2007 Order, on which MGA relies for the claim that "fishing expeditions" by Mattel have been rejected, was subsequently *reversed* by Judge Larson, who found it was "clearly erroneous and contrary to law." See Order Granting Mattel's Objections, dated Feb. 27, 2008, Supp. Krug Decl., Ex. 11.

[17] The argument also is belied by MGA's own admission that "MGA *agreed* that it would produce the requested files and designate them as confidential provided that Mattel give notice to the employees and obtain their consent." (Opp. at 11 (emphasis added).) MGA's privacy argument fails; by its own admission, it has no basis not to provide the files as it agreed to do.

expressly tied to specific products. For example, information regarding the timing of and terms on which the employees were hired is clearly relevant and likely to be contained in the personnel files, yet may not reference specific products. This is an artificial limitation designed to deprive Mattel of documents that are clearly relevant and probative.[18]

Moreover, not only the information *in* the files but what is *not* in them is relevant. For example, evidence that MGA knew an employee stole Mattel trade secrets and then failed to discipline that employee would unquestionably be relevant; Mattel has alleged that MGA did just with one former Mattel employee in Mexico, Gustavo Machado, who was promoted soon after stealing thousands of pages of documents from Mattel.[19] Only a production of entire files will enable Mattel to discover—and prove—what they do not contain. This is not a "fishing expedition" for new claims. The requests for personnel files are reasonably calculated to obtain information relevant to the pattern of misconduct alleged by Mattel.

That the prior Discovery Master previously ordered personnel files produced in response to *other* requests only where relevant to specific products is of no moment since that was the subject of Phase 1. As Judge Larson recently stated in regard to discovery matters in this Phase: "The question for the Discovery Master will be whether or not the disputed discovery request is related or relevant to the trial that has now been scheduled for March or not"[20]—*i.e.*, whether they are relevant to Mattel's Phase 2 allegations. These requests unquestionably seek documents that are relevant to Phase 2, whether product specific or not. MGA

---

18 Notably, MGA does not even assert that this limitation is justified on burden grounds; it would be more burdensome for MGA to siphon off the information it claims it is willing to produce than it would simply to produce the entire files.

19 See SAAC ¶ 54.

20 See Feb. 11, 2009 Hearing Tr. at 101:1-3, Supp. Krug Decl., Ex. 12.

should be compelled to produce the relevant documents it concedes it is withholding.[21]

## III. MGA'S COMPLAINT REGARDING THE MEET AND CONFER PROCESS IS FRIVOLOUS

MGA complains that Mattel did not satisfy its meet and confer obligations because MGA's newly associated counsel "was not involved in the case and did not participate in the discussions" that occurred prior to the initial motions and stay of Phase 2. MGA cites no authority for the proposition that a party must meet and confer anew each time a party associates in new counsel or where a renewed motion is filed. The law is to the contrary. See ECASH Tech. Inc. v. Guagliardo, 2002 WL 987324, at *2 (9th Cir. May 13, 2002) (original meet and confer provides sufficient notice for renewed motion); Luna v. Sears Life Ins. Co., 2008 WL 2484596, at *3 n.7 (S.D. Cal. Jan. 11, 2008) (same). Nothing prohibited the Glaser firm from talking with the Skadden firm, its co-counsel. Indeed it is exactly this type of shifting of responsibility between the firms that gave Mattel and the Court concerns when MGA sought to associate in two new firms. In any case, despite having no obligation to do so, Mattel obliged MGA's counsel's request for additional time to respond to Mattel's motion, during which time the parties met and conferred on the renewed motions. MGA eventually conceded that many of its prior objections were

---

[21] MGA suggests that a production of complete files will include some irrelevant information. That some non-relevant information may be included in a personnel file does not render a request for the entire file impermissibly overbroad. See Ladson v. Ulltra East Parking Corp., 164 F.R.D. 376, 377 (S.D.N.Y. 1996) (although entire "[personnel] files themselves, [] may, concededly, contain irrelevant material," ordered their production because "[t]he Court is not prepared to allow defendants to determine what information is necessary for the plaintiffs to receive"); see also Dawson Farms, LLC v. BASF Corp., 2007 WL 141077, at *1 (W.D. La. Jan. 17, 2007) ("RFPs are bound to encompass information that is ultimately irrelevant. However, the requests appear reasonably targeted to produce relevant information supporting [a party's claim or defense]"). Moreover, as explained, only a production of entire files will enable Mattel to prove what they do not contain; Mattel also may need files in their entirety to rely on the Fed. R. Evid. 803(7) hearsay exception for absence of entry in business records.

baseless, and the scope of the issues remaining has been narrowed. MGA has no grounds for complaint, nor does it suggest that its position would have changed with further conferences.

## IV. MGA SHOULD BE SANCTIONED

Under the Federal Rules, a party bringing a motion to compel is entitled to the "reasonable expenses incurred in making the motion, including attorney's fees" unless "the opposing party's nondisclosure, response or objection was substantially justified, or that other circumstances make an award of expenses unjust." Fed. R. Civ. Proc. 37(a)(4). The burden of establishing substantial justification is MGA. Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994).[22]

MGA should be sanctioned here because the only justification it has to withhold these documents has been squarely rejected; sanctions may be imposed when a party improperly withholds personnel files based on a misguided claim of privilege under California law. See Grinzi, 2004 WL 2370639, at *1 (imposing sanctions for failure to provide discovery because the "excuse" that "one of their attorneys believed doing so would violate [an employee's] right to privacy under the California Constitution" did not provide "substantial justification").

Here, MGA makes no good faith effort to distinguish these authorities; it simply omits any discussion of them. It may be reasonable to excuse MGA's reliance on rulings that Judge Larson reversed given MGA's Counsel's lack of familiarity with this case. For the same reason, it may be reasonable to assume that Counsel simply did not know that Judge Larson had previously ruled that state privilege law does not govern this case. But there is no excuse for MGA's failure to

[22] Independently, sanctions may be imposed under 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under this section are appropriate "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995) (citation omitted).

even address recent authorities that reject the position that is the crux of MGA's opposition, even while MGA affirmatively suggests the issue is somehow "unclear." MGA would have discovered the fallacy of its position by simply Shephardizing the statute that MGA claims bars Mattel's discovery requests. Mattel did just that when MGA first wrongly stated that no federal court has addressed these issues. Had MGA done so, it would have seen that Reed and Corser squarely reject its position. Cf. Horaitis v. Mazur, 2004 WL 524437, at *1 (N.D. Ill. Feb. 27, 2004) ("[I]f they did not know better to begin with, they should have learned better by the simple act of Shepardizing [the statute] (as every lawyer should do before citing any [authority])."). [23] MGA's failure to engage in this "basic method[] of researching a point of law" does not constitute the "reasonable inquiry" mandated by the Rules. Blake By Blake and Through Blake v. National Cas. Co., 607 F. Supp. 189, 191 (C.D. Cal. 1984) (imposing sanctions for failure to cite authority contrary to position). Either MGA failed to act with the required diligence, or, more problematic, it chose to ignore these directly on-point authorities and knowingly suggested to the Discovery Master that the issue is "unclear" when it is not. Either

---

[23] See also Dawson v. Cal. Dept. of Corrections, 2006 WL 2067078, at *2 (N.D.Cal. Jul. 25, 2006) ("counsel is reminded that [they] must Shepardize or otherwise check the precedential value of cases cited in briefs filed in this court to be sure they are still good law"); DeMyrick v. Guest Quarters, 1997 WL 177838, at *1 (N.D. Ill. Apr. 6, 1997) ("no counsel ought to cite a case . . . without Shepardizing that case (or without conducting the equivalent electronic search via Westlaw or Lexis)"); Cimino v. Yale Univ., 638 F.Supp. 952, 959 (D. Conn. Jun. 30, 1986) ("Counsel is admonished that diligent research, which includes Shepardizing cases, is a professional responsibility, and that officers of the court are obliged to bring to its attention all important cases bearing on the matter at hand, including those which cut against their position") (citation omitted); Gosnell v. Rentokil, Inc., 175 F.R.D. 508, 510 n.1 (N.D. Ill. 1997) ("It is really inexcusable for any lawyer to fail, as a matter of routine, to Shepardize all cited cases (a process that has been made much simpler today than it was in the past, given the facility for doing so under Westlaw or LEXIS)."); Meadowbrook, LLC v. Flower, 959 P.2d 115, 120 n. 11(Utah 1998) ("'Shepardizing' a case is fundamental to legal research and can be completed in a manner of minutes, especially when done with the aid of a computer.").

way, it should be sanctioned in the amount of $1460, for fees incurred in preparing this reply.

**Conclusion**

Mattel respectfully requests that its motion be granted in its entirety, and that sanctions be awarded against MGA and/or its Counsel.

DATED: February 18, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Jon Corey
Jon Corey
Attorneys for Mattel, Inc.