# EXHIBIT 1

CONFORMED COPY

FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111
415-774-2611
415-982-5287 (fax)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS** |

## I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT 1
PAGE 4

1-26

CONFIDENTIAL

EXHIBIT __1__
PAGE __5__

1  considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel

2  Production of Documents is GRANTED.

3  ## II. BACKGROUND

4      At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly

5
6  lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made

7  commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of

8  Bratz dolls now rival Mattel's Barbie doll.

9      A. Mattel's Original Complaint

10
11      On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed

12  suit against its former employee Bryant in state court asserting claims for breach of contract,

13  breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel

14  employed Bryant as a product designer from September 1995 through April 1998, and from

15  January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee
16
17  Confidential Information and Inventions Agreement which required him not to engage in any

18  employment or business other than for Mattel, or invest or assist in any manner any business

19  competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel

20  all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his

21
22  employment.

23      In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that

24  he had not worked for any of Mattel's competitors in the prior twelve months and had not

25  engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of
26
27  any future events raising a conflict of interest.

28      Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for

29  a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT __1__
PAGE __6__

1   provide product design services on a "top priority" basis.[2] The agreement further provided that

2   Bryant would receive royalties and other consideration for sales of products on which he provided

3   aid or assistance; that all work and services furnished by Bryant to MGA under the agreement

4   would be considered "works for hire"; and that all intellectual property rights to preexisting work

5   by Bryant purportedly would be assigned to MGA. Mattel further alleges that Bryant converted,

6

7   misappropriated and misused Mattel property and resources while he was employed at Mattel. In

8   the complaint, Mattel claims ownership of all inventions and works created by Bryant during his

9   Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of

10  duties.

11

12  In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting

13  subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28

14  U.S.C. §1332 (diversity jurisdiction). Mattel filed a motion to remand and submitted a copy of

15  Bryant's agreement with Mattel's competitor, namely MGA. The agreement was dated

16  September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to

17

18  provide MGA with design services for the Bratz dolls. In return, MGA agreed to compensate

19  Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz

20  dolls. In August of 2004, the district court remanded the action.

21

22      B.  Bryant's Cross-complaint

23      In September of 2004, after the case was returned to state court, Bryant filed a cross-

24  complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information

25  and Inventions Agreement. Bryant's cross-complaint included claims for unfair competition,

26  rescission, declaratory relief, and fraud.

27

28  //

29

---

[2] Bryant has already produced his agreement with MGA. Therefore, the existence of the agreement does not appear to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT  1
PAGE  7

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

EXHIBIT 1
PAGE 8

G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

EXHIBIT 1
PAGE 9

1  was not heard before the district court stayed all discovery pending resolution of Mattel's appeal

2  to the Ninth Circuit on subject matter jurisdiction issues.

3       After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at

4  the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to

5  compel. The parties informed the court that they would submit a stipulation and order. See

6

7  Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel

8  Production of Documents, counsel will be submitting a stipulation and order which will be

9  dispositive of all the issues in dispute.").

10      Over the next several months, the parties exchanged draft stipulations and orders to

11

12  memorialize the parties' meet and confer session, but were unable to reach final agreement

13  because Bryant insisted upon including the following sentence in the stipulation: "The stipulation

14  resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's

15  Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and

16

17  motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23.

18  From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel

19  waive its right to all further discovery in connection with its requests. Mattel proposed the

20  following provision as an alternative:

21

22         Except as, and only as set forth in the terms of Paragraph One above, nothing in
           this Stipulation shall preclude or limit Mattel from seeking further discovery on

23         any matter, including as to matter on which the parties could not reach complete
           agreement, or preclude or limit any right of Bryant to object or resist to such

24         discovery.

25  Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was

26  unacceptable to Bryant. At the direction of the Discovery Master, the parties met and

27

28  conferred again in late December 2006, but to no avail.

29      Despite the parties' inability to reach final agreement, Bryant produced approximately

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT  1
PAGE  10

1,600 pages of documents to date. Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3] Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

    J.  Mattel's Motion to Compel Production of Documents

    Mattel's motion has three parts. First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents: (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel. Mattel's Motion at 6. Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

    Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations. According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3] According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear. Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed. Mattel again obtained a court order compelling the deposition and sanctions. To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___1___
PAGE ___11___

1   his earnings from his work for MGA.  Mattel's Motion at 7.  Mattel seeks full production of

2   responsive documents without any of the limitations described above.

3       Third, Mattel contends that the documents Bryant has produced are inadequate for a

4   number of reasons: the financial documents are so heavily redacted they are useless; faxed

5   documents are missing fax header information, including the sending and receiving parties[4]; e-

6

7   mails and other electronic documents that are known to exist have not been produced; Bryant

8   refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used

9   during the relevant period; and Bryant's privilege log is facially incomplete and lists only four

10  documents.

11

12      K. Bryant's Opposition to Mattel's Motion to Compel

13      Bryant opposes Mattel's motion to compel.  He views the motion as nothing more than

14  Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer

15  process which began back in 2004.  Bryant emphasizes that the document requests at issue were

16

17  first propounded at a time when Mattel was attempting to remand the case, making the claim that

18  it did not know whether $75,000 was in controversy and insisting that it was asserting solely state

19  law claims.  Bryant explains that given Mattel's view of the case in 2004, he took the position that

20  discovery should be limited to what occurred in his last days at Mattel and shortly thereafter.  See

21

22  Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later

23  years could have no conceivable relevance to the case because if those activities and earnings

24  were at stake, the case was worth millions, not pennies.").  Accordingly, in the summer and fall of

25  2004, he produced the following categories of documents:  documents evidencing the artwork

26  used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the

27

28  summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

29

---

[4]  There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center.  MGA denies the accusation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    8

EXHIBIT __1__
PAGE __12__

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT __1__
PAGE __13__

requests and that the stipulation controlled to the extent they were inconsistent. Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights. Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

### III. DISCUSSION

A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion. The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute. Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant. It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions. Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT __1__
PAGE __14__

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48:  Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT __1__
PAGE __15__

1  agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel

2  other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c)

3  documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating

4  to this action.

5
6       The Discovery Master finds that the withheld documents are relevant to Mattel's claims.

7  Among other things, the withheld documents could establish the timing, nature and scope of

8  Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In

9  addition, the withheld documents could be used for impeachment purposes. Further, documents

10
11 relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate

12 bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred

13 by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged

14 documents responsive to Request Nos. 2, 13, and 48.

15
16       Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55:  Documents Relating to Bratz's

17       Development and Other Projects that Bryant Worked on for MGA

18       Mattel seeks documents relating to the Bratz project and any other projects Bryant worked

19 on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls.

20
21 Bryant is prepared to produce additional documents relating to work he performed for MGA prior

22 to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant

23 breached his employee agreement by allegedly performing services for Mattel and MGA at the

24 same time. Bryant objects to the requests to the extent they seek any additional documents on

25 relevancy and overbreadth grounds.

26
27       The Discovery Master finds that Mattel's requests seek relevant information and are not

28 overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30,

29 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

EXHIBIT __1__
PAGE __16__

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46: Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

EXHIBIT __1__
PAGE __17__

1   when the payments were actually made. Such payments might also lead to evidence to support

2   Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

3       Second, the payments are relevant to Mattel's recently added claim for copyright

4   infringement. Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the

5   Bratz drawings and works by copying and preparing derivative works from those works. Under

6

7   the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual

8   damages. 17 U.S.C. §504(b). The works that potentially infringe Mattel's copyrights, therefore,

9   include all Bratz doll products that MGA released to the market. For this reason, and for reasons

10

11   already discussed in the previous subsection, Bryant's limited production of documents relating to

12   only the First Generation of Bratz dolls is inadequate.

13       Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret

14   misappropriation. Payments could show when and what trade secret information Bryant and

15   other defendants allegedly misappropriated from Mattel. Any proof of trade secret theft is also

16

17   relevant to Mattel's defense against MGA's unfair competition claims.

18       Lastly, the breakdown of gross royalty payments may be required to prove actual

19   causation of damages.

20       The protective order filed on January 4, 2005, is sufficient to address any confidentiality

21

22   concerns raised by Bryant. Among other things, the protective order provides protection for

23   confidential trade secret information. It has two tiers of protection, allowing a party to designate

24   documents as either "Confidential" or "Confidential – Attorney's Eyes Only." The protective

25   order also requires the parties to use information produced in discovery only for purposes of this

26

27   litigation and not for any other purpose.

28       Accordingly, Bryant is ordered to produce, without redactions, all non-privileged

29   documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46. Bryant,

EXHIBIT   1
PAGE   18

1  however, is not required to produce tax returns, provided that he otherwise fully complies with
2  these requests as ordered.

3      Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

4      Mattel seeks production of Bratz-related communications and communications with
5
6  MGA. More specifically, Mattel seeks production of four categories of documents Bryant has
7  refused to produce: (1) communications between Bryant and MGA or third parties that explicitly
8  relate to designs Bryant created while employed by Mattel; (2) communications between Bryant
9  and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating
10
11  to Bryant's Mattel employment or work Bryant performed for Mattel, except those
12  communications "created" prior to the close of Bryant's Mattel employment; and (4)
13  communications between Bryant and MGA that post-date Bryant's Mattel employment.  Bryant
14  contends that the discovery requests for communications between Bryant and MGA are
15  overbroad.  Bryant asserts that there are many former Mattel employees and friends of his who
16
17  have privacy rights that would be impinged upon if he were to disclose his communications.
18  Bryant also asserts that he has his own confidentiality interest regarding any information that he
19  shared with MGA.  In particular, he objects to Mattel's discovery requests to the extent they
20  would require him to reveal the identity of current Mattel employees seeking employment with
21
22  MGA or Bryant.

23      The Discovery Master finds that Mattel's requests for all communications between Bryant
24  and MGA unquestionably seek information relevant to Mattel's claims:  they will reveal what
25  Mattel information Bryant shared with MGA, if any, and when.  The protective order is sufficient
26  to address Bryant's confidentiality concerns.  It allows parties to designate as "Confidential"
27
28  private information about current or former employees, contractors or vendors (including
29  employee, contractor and personnel records).  Therefore, Bryant is ordered to produce all non-

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

EXHIBIT __1__
PAGE __19__

privileged documents responsive to Request Nos. 20, 23, 27, and 28.  However, Bryant may
continue to redact his telephone records, and shall provide a signed verification that none of the
telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project
that Bryant worked on, with, for, or on behalf of MGA.  Telephone calls that do not relate or refer
in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51:  Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them.
Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9:  Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and
registrations and applications for registration.  Bryant deems the motion moot with respect to
Request No. 9 because he agrees to produce any patent, copyright and trademark applications,
registrations or other non-privileged documents in his possession, custody or control that
constitute or relate to such applications and registrations obtained or applied in connection with
(1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation
Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA
during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz
limitation is improper.  Therefore, Bryant is ordered to produce all non-privileged documents
responsive to Request No. 9.

IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1.  Mattel's motion to compel production of documents responsive to its First Set of
Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT ___1___
PAGE ___20___

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2.  Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3.  Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4.  Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5.  Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6.  Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7.  Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT __1__
PAGE __21__

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25,

2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL

PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjakian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT  1
PAGE  22

# EXHIBIT 2

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California  94111
    Telephone:    (415) 774-2611
4   Facsimile:     (415) 982-5287

5

6

7

8               UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11

12                                          CASE NO. CV 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
13  CARTER BRYANT, an individual,

14          Plaintiff,

15      v.                                  Consolidated with
                                            Case No. CV 04-09059
16  MATTEL, INC., a Delaware corporation,   Case No. CV 05-2727

17          Defendant.                      **ORDER GRANTING IN PART AND
                                            DENYING IN PART MATTEL'S
18                                          MOTION TO ENFORCE COURT'S
                                            DISCOVERY ORDERS AND TO
19                                          COMPEL; TO OVERRULE
                                            PURPORTEDLY IMPROPER
20                                          INSTRUCTIONS; AND FOR
                                            SANCTIONS**
21  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
22  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
23

24

25

26

27

28                                                                    1

    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                            1-9          EXHIBIT __2__
                                         PAGE __23__

# I. INTRODUCTION

On December 5, Mattel, Inc. ("Mattel") submitted a "Motion to (1) Enforce Court's Discovery Orders and to Compel; (2) to Overrule Improper Instructions; and (3) for Sanctions." Mattel's motion challenges the sufficiency of the testimony provided by four of MGA Entertainment Inc.'s Rule 30(b)(6) witnesses, Lisa Tonnu, Kenneth Lockhart, Rebecca Harris, and Spencer Woodman, on sixteen separate topics identified in Mattel's Second Notice of Deposition of MGA. MGA submitted an opposition on December 18, 2007. Mattel submitted a reply on December 26, 2007. The matter was heard on January 3, 2008. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is granted in part.

# II. BACKGROUND

On May 16, 2007, MGA was ordered to produce Rule 30(b)(6) designees for all topics identified in Mattel's Second Notice of Deposition of MGA, except Topic Nos. 25 and 26, on or before June 30, 2007. Mattel's Second Notice of Deposition includes many topics relevant to the case, including, *inter alia*, the development of Bratz before it was made available for purchase; when and whom MGA first offered Bratz for sale; who first manufactured, shipped and distributed Bratz; Bratz revenues and profits; MGA's access to Mattel's earlier DIVA STARZ project that allegedly had elements which subsequently appeared in Bratz; the identity of persons who worked on Bratz and payments made to them; fee and indemnification agreements; MGA's testing and handling of original Bratz drawings; MGA's sworn statements pertaining to Bratz's creation and development; and MGA's evidence preservation and collection. On July 2, 2007, the district court rejected MGA's objections to the May 16, 2007 Order.

MGA designated four different witnesses to testify on the topics identified in Mattel's Second Notice of Deposition of MGA. First, MGA designated Kenneth Lockhart to testify on Topic Nos. 38, 39 and 42. He testified on June 14-15, 2007.

Second, MGA designated Lisa Tonnu to testify on Topic Nos. 24-25, 31, 37, 39 (in part), 40 and 41. She testified on July 19, 2007. In the meantime, Mattel moved for an order compelling MGA to produce witnesses for deposition and sanctions because MGA did not

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT  2
PAGE  24

1   produce witnesses on certain topics as required by the May 16, 2007 Order. On August 14, 2007,

2   Mattel's motion was granted in part and denied in part and MGA was ordered, once again, to

3   produce witnesses to testify on several topics. On September 24-25, 2007, Mattel deposed Ms.

4   Tonnu further on Topic Nos. 21, 24-26, 31, 39, 40 and 41.

5          Third, MGA designated Rebecca Harris to testify on Topic Nos. 11, 13, 14, 19, 22-23 and

6   27-28. Ms. Harris' deposition was scheduled, but unilaterally cancelled by MGA, on two

7   different occasions. MGA ultimately produced Ms. Harris on July 20, 2007.

8          Fourth, MGA designated Spencer Woodman to testify on Topic No. 34. He testified on

9   October 9, 2007.

10         In September of 2007, the parties exchanged several meet and confer letters regarding

11  purported deficiencies in the witnesses' depositions. In mid October, MGA notified Mattel that it

12  had retained new counsel who would be responding to Mattel's letters. After a month-long stay

13  that MGA obtained as a result of its substitution of counsel, the parties met and conferred on

14  November 16, 2007 and again on November 21, 2007. MGA offered to produce Ms. Tonnu

15  again, but only on some of the topics for which she had been designated previously, and only

16  during the second week of January 2008. The parties continued to exchange letters; however,

17  they were apparently unable to resolve any issues before Mattel filed the instant motion on

    December 5, 2007.

18         Mattel essentially contends that MGA's witnesses were not sufficiently knowledgeable to

19  provide complete testimony on the 30(b)(6) topics at issue, and furthermore, that MGA's counsel

20  obstructed the depositions by making improper objections and instructing witnesses not to

21  answer. Accordingly, Mattel seeks the following eight categories of relief: (1) an order enforcing

22  the May 16, 2007 and August 14, 2007 Orders and compelling MGA to comply therewith by

23  designating and producing fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21-25,

24  27, 28, 31, 34 and 39-41 in Mattel's Second Notice of Deposition of MGA on dates of Mattel's

25  selection; (2) an order overruling each of the purportedly improper instructions not to answer

26  questions interposed at the deposition of MGA designees Spencer Woodman and compelling

27  Woodman or other such person selected by MGA as its designee to provide complete testimony

28

EXHIBIT   2
PAGE      25

1   on Topic No. 34; (3) an order compelling MGA to produce documents that MGA designee

2   Kenneth Lockhart identified during his June 14, 2007 deposition as documents which he reviewed

3   and relied upon to refresh his recollection in preparation for his deposition; (4) an order

4   overruling each of the purportedly improper instructions not to answer questions interposed at the

5   deposition of MGA designee Lisa Tonnu; (5) an order reopening the deposition of MGA designee

6   Lisa Tonnu based on a purported "complete reversal of testimony" made through written

7   "changes" to her deposition transcript; (6) an order compelling Rebecca Harris to sit for the

8   completion of her deposition and/or compelling such person selected by MGA as its designee to

9   complete the testimony on topics for which Harris was previously designated; (7) an order

10  imposing monetary sanctions ($10,000) for MGA's alleged willful violations of the May 16, 2007

11  and August 14, 2007 Orders, for MGA's allegedly improper instructions not to answer deposition

12  questions and for MGA's alleged improper coaching, harassing and obstructionist conduct at the

13  September 24-25, 2007 deposition of Lisa Tonnu and at the October 9, 2007 deposition of

14  Spencer Woodman; and (8) a report and recommendation to Judge Stephen G. Larson that

15  recommends the imposition of preclusion sanctions, that certain facts related to the topics

16  compelled be deemed admitted, and/or that MGA be found in contempt for MGA's allegedly

17  willful and repeated violations of the Orders.

18       MGA opposes the motion, contending that it substantially complied with its obligation to

19  produce witnesses knowledgeable on each of the topics at issue and that Mattel has had a full and

20  fair opportunity to conduct its examinations. According to MGA's calculations, the four

21  witnesses testified intelligently for nearly 36 hours over five deposition days. MGA also explains

22  that its counsel instructed witnesses not to answer two types of questions, namely questions that

23  invaded MGA's work product protection or attorney-client privilege, and questions that exceeded

24  the scope of Topic No. 34. MGA also contends that Mattel is not entitled to additional time to

25  depose Ms. Harris in particular because Mattel's counsel wasted time and badgered the witness.

26  MGA acknowledges, however, that Ms. Tonnu did change her testimony and that there are some

27  deficiencies in its witnesses' testimony that justify additional deposition time. Indeed, MGA

28  points out that prior to the filing of the instant motion, MGA agreed to produce witnesses to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT  2
PAGE    25

1  provide additional testimony on Topic Nos. 21, 24, 25, 31, 34 and 40. Further, after the filing of

2  the motion, MGA agreed to produce witnesses to provide additional testimony on Topic No. 39.

3  MGA contends that Mattel's motion to compel additional testimony with respect to topics on

4  which MGA has already agreed to provide additional testimony is premature and should be

5  denied.

6                                   III. STANDARDS

7        Depositions of a corporation are governed by Rule 30(b)(6) of the Federal Rules of Civil

8  Procedure, which provides in pertinent part that:

9          In its notice or subpoena, a party may name as the deponent a public or
   private corporation, a partnership, an association, a governmental agency, or other
   entity and must describe with reasonable particularity the matters for examination.
10  The named organization must then designate one or more officers, directors, or
   managing agents, or designate other persons who consent to testify on its behalf;
11  and it may set out the matters on which each person designated will testify. . . .
   The persons designated must testify about information known or reasonably
12  available to the organization.

13  Fed.R.Civ.P. 30(b)(6) (effective Dec. 1, 2007). Rule 30 also provides that the examination and

14  cross-examination of a deponent proceed as they would at trial under the Federal Rules of

15  Evidence. Fed.R.Civ.P. 30(c)(1). Further, "[a]n objection at the time of the examination--

16  whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking

17  the deposition, or to any other aspect of the deposition--must be noted on the record, but the

18  examination still proceeds; the testimony is taken subject to any objection." Fed.R.Civ.P.

19  30(c)(2). "An objection must be stated concisely in a nonargumentative and nonsuggestive

20  manner. A person may instruct a deponent not to answer only when necessary to preserve a

21  privilege, to enforce a limitation ordered by the court, or to present a motion under Rule

22  30(d)(3)." Id.

23        Rule 30(d)(1), Fed.R.Civ.P., provides that a deposition is limited to one day of seven

24  hours, unless otherwise stipulated or ordered by the court. "The court must allow additional time

25  consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another

26

27

28
                                                              5
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

EXHIBIT   2
PAGE   27

1  person, or any other circumstance impedes or delays the examination."[1]  Fed.R.Civ.P. 30(d)(1).

2  Furthermore, sanctions may be imposed --including the reasonable expenses and attorney's fees

3  incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the

4  deponent.  Fed.R.Civ.P. 30(d)(2).

5                              IV. DISCUSSION

6  A. Mattel's Request for Relief No. 1:  Mattel seeks an order enforcing the May 16, 2007 and

   August 14, 2007 Orders and compelling MGA to comply therewith by designating and producing

7  fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21-25, 27, 28, 31, 34 and 39-41 in

   Mattel's Second Notice of Deposition of MGA on dates of Mattel's selection.

8
9          Mattel contends that MGA's witnesses were inadequately prepared and failed to provide

10  sufficient testimony on sixteen of the topics identified in the Second Notice of Deposition of

11  MGA.  Each of the sixteen 30(b)(6) topics at issue is addressed separately below.

12         **Topic No. 11:**  The exhibition, or proposed, offered, contemplated or requested exhibition,
           of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including
           without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed,
13         offered for sale, pitched, shown or disclosed to, or otherwise discussed with or
           communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that
14         REFER OR RELATE thereto.

15         Mattel contends that Ms. Harris lacked sufficient knowledge on this topic.  In particular,

16  Mattel contends that Ms. Harris could not confirm what form of Bratz or Bratz design ("sculpts")

17  was first exhibited to third parties prior to June 30, 2001.

18         MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

19  this topic.  More specifically, MGA contends that Ms. Harris testified about the first exhibition,

20  sale and distribution of Bratz, including presentations to Target stores, and the first sale,

21  distribution and shipment of Bratz under an agreement with Bandai in Spain.  MGA contends that

22  it is not reasonable to expect MGA to have investigated specifically what type of Bratz "sculpts"

23  were shown at particular exhibitions.

24         [1] Rule 26(b)(2), Fed.R.Civ.P., provides that the court shall limit the frequency or extent of use of the
   discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or
25  is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party
   seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the
26  burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case,
   the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the
27  importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

28                                                                                              6

   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

EXHIBIT  2
PAGE  28

1    Furthermore, MGA points out that Mattel has taken the deposition of MGA HK on the

2    subject of the initial manufacture of Bratz. More specifically, MGA contends that Mattel took the

3    deposition of the head of MGA's Hong Kong operations, Edmond Lee, for two full days, and

4    questioned him about the first manufacture of Bratz by Early Light. Therefore, MGA contends

5    that Mattel has had a full and fair opportunity to examine MGA regarding the first manufacture of

6    Bratz.

7        A review of the transcript confirms that Ms. Harris was not reasonably prepared for her

8    deposition, especially in light of the importance of the timing of the creation of Bratz. For

9    example, she could not specify what was shown to retailers during the year 2000. She testified

10   that MGA used "boards" (i.e. sketched drawings) to show retailers Bratz during the year 2000

11   based upon a telephone conversation she had with Paula Garcia during a break. Mattel is entitled

12   to delve into more detail about these "boards," and such information should be reasonably

13   available to MGA. Ms. Harris testified that Julie Chemo likely attended presentations during the

14   year 2000. Therefore, Mattel is entitled to an order compelling MGA to produce a witness to

15   provide complete testimony on Topic No. 11.

16       **Topic No. 13:** COMMUNICATIONS prior to June 30, 2001 between YOU and any
         manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or potential
17       manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE TO BRATZ or
         any BRATZ DESIGN.

18       Mattel contends that Ms. Harris' testimony was wholly inadequate. In particular, Mattel

19   contends that Ms. Harris had no knowledge concerning early MGA communications with Bandai,

20   which distributed Bratz in the first market in which it was allegedly sold. Ms. Harris did not have

21   any knowledge or information as to when MGA and Bandai first had any type of contact or

22   communication regarding Bratz. Similarly, Ms. Harris did not have any knowledge or

23   information as to when MGA first had contact with a company called J.H.N. regarding the sale of

24   Bratz in Australia.

25       MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

26   Topic No. 13, as described above in connection with Topic No. 11. Accordingly, MGA objects to

27   any further examination on Topic No. 13.

28       A review of the deposition transcript confirms that Ms. Harris provided significant

7

EXHIBIT  2
PAGE  29

1  testimony on Topic No. 13. However, as Mattel points out, her testimony lacked many details

2  relevant to when Bratz was developed. For example, Ms. Harris was unable to testify as to any

3  communications or negotiations between MGA and Bandai leading up to the execution of written

4  agreements. Indeed, Ms. Harris did not know when MGA and Bandia first had any contact

5  regarding Bratz. Furthermore, MGA did not conduct a reasonable investigation to prepare Ms.

6  Harris for Topic No. 13. Among other things, MGA made no effort to determine whether the

7  former MGA HK employee known to have been directly involved in the first discussions with

8  Bandai (Martin Hitch) had retained any documents responsive to this topic. Nor did Ms. Harris

9  speak to Isaac Larian and Jim Olmstead, both of whom authored emails referencing existing

10  distributorship deals in Europe and Australia. Therefore, Ms. Harris did not fulfill MGA's duty to

11  produce a witness to testify on information known or reasonably available to MGA. Mattel is

12  entitled to an order compelling MGA to produce a witness to provide complete testimony on

    Topic No. 13.

13       **Topic No. 14:** When and where BRATZ was first manufactured, shipped, distributed and
14       sold, and the IDENTITIES and roles of PERSONS involved therein.

15       Mattel contends that Ms. Harris did not have any knowledge regarding the identity or role

16  of any person who was involved in the first manufacture of Bratz dolls by Early Light. Mattel

17  also contends that Ms. Harris had no knowledge as to the date when manufacturing began for the

18  first Bratz dolls. Furthermore, Mattel contends that MGA should not be permitted to rely on the

19  testimony given by MGA HK's corporate designee to evade providing testimony on this topic

20  because that designee's testimony was deficient.

21       MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

22  Topic No. 14, as described above in connection with Topic No. 11. Accordingly, MGA objects to

23  any further examination on Topic No. 14.

24       A review of the deposition transcript confirms that Ms. Harris did not have any knowledge

25  regarding the identity or role of any person at MGA who first had contact with Early Light, the

26  first manufacturer of Bratz dolls. Nor did she know the identity of any person at MGA or at Early

27  Light who was involved in the first manufacture of Bratz dolls. Furthermore, Ms. Harris stated

28  that she did not undertake any investigation to uncover these facts. Ms. Harris also had no

8

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __2__

PAGE __30__

1    information or knowledge regarding the date when manufacturing began for the first Bratz dolls.

2    Ms. Harris testified that personnel in MGA's Hong Kong affiliate coordinated with Early Light.

3    Thus, the information sought by Mattel is reasonably available to MGA. That Mattel also seeks

4    testimony from MGA's Hong Kong affiliate does not excuse MGA from producing a witness

5    sufficiently knowledgeable on Topic No. 14. Therefore, Mattel is entitled to an order compelling

6    MGA to produce a witness to provide complete testimony on Topic No. 14.

7    **Topic No. 21**: YOUR knowledge of, and access to, non-public MATTEL DIVA STARZ
       project information and DESIGNS prior to June 30, 2001.

8    Mattel contends that Ms. Tonnu was not sufficiently prepared to provide testimony, as

9    evidenced by the fact that two other MGA employees, Paula Garcia and Margaret Leahy, testified

10   that they had "access" to non-public DIVA STARZ information.

11   MGA contends that Ms. Tonnu prepared for her deposition by speaking with five MGA

12   employees, including Paula Garcia. Based upon that investigation, Ms. Harris testified that the

13   five employees did not work on DIVA STARZ. MGA explains that Ms. Garcia merely testified

14   that when she was at Mattel she often spoke to co-workers at Mattel who happened to work on the

15   DIVA STARZ, that those co-workers may have mentioned the existence of the project and that

16   they told Ms. Garcia it was confidential. MGA contends that Ms. Garcia's testimony does not

17   establish "access to" DIVA STARZ information, but the opposite -- that the employees did not

18   share details with Ms. Garcia and told her the project was confidential. MGA acknowledges,

19   however, that Ms. Garcia testified that on one occasion she saw a sketch of a DIVA STARZ

20   character.

21   Nevertheless, MGA represents that during the meet and confer process MGA designated

22   Ms. Tonnu to provide further testimony on Topic No. 21, and that she will be deposed on January

23   9, 2008. MGA represents that Ms. Tonnu will be prepared to testify whether each former Mattel

24   employee now employed by MGA had "access to" DIVA STARZ information while employed by

25   Mattel.

26   A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

27   prepared to testify on Topic No. 21. Ms. Tonnu did not know what DIVA STARZ was.

28   Furthermore, she was not sufficiently informed of the identities of the MGA employees and

9

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  2

PAGE   31

1   contractors who had access to or worked on DIVA STARZ. For example, Ms. Tonnu was

2   uninformed of Ms. Garcia's and Ms. Leahy's knowledge and access to DIVA STARZ

3   information while employed by Mattel. Such information was known or reasonably available to

4   MGA. Therefore, Mattel is entitled to an order compelling MGA to produce a knowledgeable

5   witness to provide complete testimony on Topic No. 21.

6       **Topic No. 24:** Any indemnification and fee arrangement that YOU and/or BRYANT has

7   sought proposed, requested or obtained in connection with this ACTION.

8       Mattel contends that MGA's designee, Lisa Tonnu, was not sufficiently prepared to

9   testify, despite having been produced twice to testify on this topic. For example, Mattel points

10  out that Ms. Tonnu did not know why MGA agreed to pay Carter Bryant's attorneys' fees or how

11  much MGA had paid or whether Littler Mendelson's fees had been paid in full. Mattel's Motion

12  at pp. 14-15. Furthermore, Mattel points out that Ms. Tonnu did not make any effort to find out

13  the answers to these questions.

14      MGA contends that Ms. Tonnu substantially discharged MGA's obligation to provide

15  testimony in response to this topic. MGA contends that Ms. Tonnu reviewed responsive

16  documents and was able to identify the agreements in her deposition. Further, MGA contends

17  that Ms. Tonnu spoke to MGA's in-house counsel about the agreements and was able to identify

    the individuals involved in the negotiations of those agreements.

18      MGA acknowledges, however, that Ms. Tonnu was not able to testify regarding the

19  specifics of those negotiations or the terms of those agreements. MGA represents that prior to the

20  filing of this motion, it designated in-house counsel Sam Khare to provide additional testimony on

21  this topic and that Mattel will depose him on January 8, 2008.

22      A review of the deposition transcript confirms that Ms. Tonnu was not prepared to testify

23  as to information known or reasonably available to MGA. For example, Ms. Tonnu did not know

24  why MGA agreed to pay Bryant's fees, did not know how much MGA had paid in fees, and did

25  not know whether MGA had paid Littler Mendelson's fees in full. Accordingly, Mattel is entitled

26  to an order compelling MGA to produce a knowledgeable witness to provide complete testimony

27  on Topic No. 24.

28

1       **Topic No. 25:** YOUR revenues and profits from BRATZ, including without limitation,
YOUR gross and net profits, and YOUR costs associated therewith.

2

3       Mattel contends that Ms. Tonnu lacked the most basic information called for by this topic.

For example, Mattel contends that Ms. Tonnu testified that: she did not recall nor could she

4 provide an estimate of how much distribution revenue MGA derived from the Bratz brand

5 between 2001 and the end of 2006; she did not know and could not provide a best estimate for the

6 episodic costs or production costs associated with the distribution revenue; she did not know who

7 in the company could provide this information; she did not know and could not provide a range

8 for how much licensing revenue MGA had received for licensing anything associated with the

9 Bratz brand between 2001 and the end of 2006; she did not know and could not estimate how

10 much revenue the Bratz movie generated; she did not know how much revenue MGA had earned

11 from the Bratz brand; and she did not know how much profit MGA had generated from the Bratz

12 brand.

13       MGA contends that it substantially discharged its obligation to provide testimony on this

14 topic. More specifically, MGA contends that Ms. Tonnu testified with the aid of Exhibit 660, a

15 143-page report summarizing the units sold from 2001 to 2006 organized by "stock-keeping-unit"

16 or "SKU." MGA contends that Ms. Tonnu prepared for her deposition by speaking with MGA's

17 Director of Finance, Anisse Evans, regarding Exhibit 660.

18       In the meet and confer process, MGA's counsel offered to provide Mattel with source

19 information from which the profitability of Bratz products at the SKU level could be derived and

20 to produce Ms. Tonnu for follow-up testimony regarding that source financial information so that

21 Mattel's experts would be in a position to draw their own conclusions and opinions as to MGA's

22 profits from Bratz. MGA represents that Mattel has agreed to depose Tonnu on this topic on

23 January 9, 2008. MGA also represents that it has produced more than 27,700 pages of source

24 financial information that will be the "starting point" from which MGA's and Mattel's experts

25 will analyze the profitability of Bratz products. MGA represents that Ms. Tonnu will be prepared

to discuss the source financial information produced to Mattel at her continued deposition.

26       A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

27 prepared to provide testimony on Topic No. 25. Ms. Tonnu could not identify, generally or by

28

EXHIBIT   **2**

PAGE   **33**

1  product, Bratz revenues, costs, or gross or net profits. Furthermore, MGA has failed to provide

2  any explanation for why Ms. Tonnu was not educated on the source financial information before

3  her deposition. Accordingly, Mattel is entitled to an order compelling MGA to produce a

4  knowledgeable witness to provide complete testimony on Topic No. 25.

5      **Topic No. 27:** The payment of money or anything of value that YOU have made or
       offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought or
6      received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s) and
       reasons therefore.

7

8      Ms. Cloonan was Carter Bryant's roommate at some point. Bryant testified that he

9  showed her early drawings prior to showing them to MGA. She is not and never has been an

10  employee of MGA.

11     Mattel contends that Ms. Harris' testimony was incomplete because she only searched for

12  evidence of payment by reviewing vendor files and MGA's electronic purchase order files, and

13  did not review the individual documents within each account payable vendor file. Mattel also

14  contends that Ms. Harris was not sufficiently prepared because she had no knowledge or

    information as to who was paying her legal fees in this case.

15     MGA contends that it discharged its obligation to testify on Topic No. 27, emphasizing

16  that Ms. Harris unequivocally represented on behalf of MGA that MGA made no payments to,

17  had no agreements with and had no communications with Elise Cloonan. Furthermore, MGA

18  points out that Mattel took the deposition of Elise Cloonan on December 14, 2007, and she

19  confirmed that she had received no payments from and had no communications with MGA.

20     A review of the transcript confirms that Ms. Harris' preparation for and testimony

21  regarding Topic No. 27 was adequate. Furthermore, the burden and expense of conducting a

22  deposition on this topic substantially outweigh the potential relevance of the testimony sought.

23  Mattel's motion is denied with respect to Topic No. 27.

24     **Topic No. 28:** COMMUNICATIONS between YOU and Elise Cloonan that REFER OR
       RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including
25     DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

26     Mattel contends that Ms. Harris's testimony was insufficient because she admitted she did

27  not have any knowledge or information as to what systems or hard drives in MGA were searched

28                                                                              12

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  2
PAGE  34

1   for e-mails referencing Elise Cloonan.

2       MGA contends that Mattel is not entitled to further examination on Topic No. 28 because

3   Ms. Harris substantially discharged MGA's obligation to testify on the topic, as described above

4   in reference to Topic No. 27 above.

5       A review of the transcript confirms that Ms. Harris' preparation for and testimony

6   regarding Topic No. 28 was adequate.  Furthermore, the burden and expense of conducting a

7   deposition on this topic substantially outweigh the potential relevance of the testimony sought.

8   Mattel's motion is denied with respect to Topic No. 28.

9       **Topic No. 31**: The IDENTITY of each PERSON who, at any time since January 1, 1998,
    has performed any work or services for, by or on behalf of YOU while such PERSON was
10  employed by MATTEL, the nature and timing of each such PERSON's work or services
    and the amount(s) paid by YOU to each such PERSON.

11      Mattel contends that the first time MGA produced Ms. Tonnu to testify, she lacked any

12  personal knowledge regarding this topic and that MGA failed to educate her properly on the topic.

13  Ms. Tonnu testified that she spoke to an accounts payable clerk, Ms. Brooks, who had "a list of

14  vendors and the dates in which they were either employed or freelancing with Mattel, and she

15  cross-referenced that in her research." Tonnu Tr. at 147:5-148:20.  Mattel points out, however,

16  that Ms. Tonnu testified that she did not know who prepared the list; did not see the criteria used

17  to prepare the list; did not know who the vendors or freelance people were on the list; and did not

18  know whether the list included all former Mattel employees who were working at MGA.  MGA

19  produced Ms. Tonnu for a second time regarding Topic No. 31, however, Mattel contends that she

20  was still unprepared.

21      MGA contends that it has substantially discharged its obligation to provide testimony on

22  this topic.  MGA explains that Ms. Tonnu testified on this topic based on a review of MGA

23  business records.  MGA explains that to prepare for the deposition, it prepared a list of MGA

24  employees who were former Mattel employees, including the dates each person was employed by

25  Mattel.  Next, Ms. Brooks searched MGA's accounting records reflecting payments to outside

26  vendors for any evidence of a payment to a former Mattel employee on the list during the period

27  of that person's Mattel employment, or with respect to work or services performed during that

28  period.  MGA contends that Ms. Tonnu testified about this search and the results of the search

13

EXHIBIT   2
PAGE   35

1   leading to the identification of three instances of payments to former Mattel employees while the

2   employee was still at Mattel.

3       Nevertheless, MGA represents that prior to the filing of this motion, it designated Ms.

4   Tonnu to provide additional testimony on this topic. Specifically, MGA is prepared to produce

5   Ms. Tonnu to testify regarding whether former Mattel employees may have performed work or

6   services for MGA during their employment with Mattel without being paid for those services.

7   Ms. Tonnu's deposition is scheduled for January 9, 2008.

8       A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

9   prepared to testify on Topic No. 31. Notably, Ms. Tonnu admitted that she did not know whether

10   any person has at any time since 1998 performed work or services for MGA while that person

11   was a Mattel employee. Further, she testified that she did not speak with or ask any of the former

12   Mattel employees who were working at MGA whether they had provided work or services for

13   MGA while they were Mattel employees. Instead, Ms. Tonnu only knew whether or not

14   payments were made to the former Mattel employees while they were still employees of Mattel.

15   Furthermore, the list of former Mattel employees provided by Ms. Brooks was incomplete

16   because it did not include twelve former Mattel employees. Accordingly, Mattel is entitled to an

17   order compelling MGA to produce a witness to provide complete testimony on Topic No. 31.

18       **Topic No. 34:** Other than those previously filed and served in this ACTION or in which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of when such testimony or sworn statement was taken, given, signed, made or filed).

19       Mattel contends that Mr. Woodman had not been adequately prepared for his deposition

20   and lacked the most basic knowledge on the topic. Mattel points out that Mr. Woodman had been

21   employed with MGA for less than one year and that his responsibilities had been limited to the

22   administration of licensing contracts and royalties. Further, Mattel contends that in preparation

23   for his deposition, Mr. Woodman "did no more than review a selection of sworn statements

24   previously made by others, review transcripts of Carter Bryant's deposition testimony, and speak

25   'for a few minutes' with one other person besides counsel." Mattel's Consolidated Separate

26   Statement, p.130.

1    Mattel also contends that Mr. Woodman was not sufficiently prepared to testify regarding

2  "sworn statements in MGA's many submissions to the Copyright Office or Patent and Trademark

3  Office," and sworn testimony from the "Art Attacks" trial. Id. Further, Mattel contends that

4  MGA's counsel improperly instructed Mr. Woodman not to answer certain questions on the basis

5  that Topic No. 34 did not include sworn statements made in connection with the "Art Attacks"

6  matter or statements made in various submissions to the Copyright Office or Patent and

7  Trademark Office. Counsel also instructed Mr. Woodman not to answer certain questions about

8  sworn statements that related to Topic No. 33 and statements that MGA believed did not

9  sufficiently relate to conduct prior to June 30, 2001. Topic No. 33 seeks testimony on

10  applications for registration and the registrations for copyright, patent, trademark or any other

11  right that refer or relate to Bratz or Bratz designs, sought, made or obtained by, for or on behalf of

MGA or Bryant, including communications pertaining thereto.

12    MGA contends that Mattel is not entitled to any further testimony on this topic. MGA

13  explains that Mr. Woodman reviewed 30-50 sworn statements, read the transcript of the

14  depositions of Carter Bryant and Victoria O'Connor, MGA's former Vice President of Licensing,

15  and interviewed Leon Djiguerian in MGA's Product Development. MGA further asserts that Mr.

16  Woodman answered questions as to the completeness or incorrectness of many factual statements

17  contained in the sworn statements placed in front of him by Mattel's counsel. Thus, MGA

18  contends that Mattel obtained exactly the testimony it sought. In MGA's view, Mr. Woodman's

19  testimony regarding the correctness or incorrectness of factual statements identified from the

20  sworn statements is binding on MGA. MGA also contends that Mr. Woodman was not required

21  to investigate the preparation, review and approval of MGA's various sworn statements because

22  such information would be protected from disclosure by the attorney-client privilege and work

23  product doctrine.

24    MGA next contends that most of the documents shown to Mr. Woodman were not "sworn

25  statements," but rather (i) copyright registrations and certificates that include a statement that the

26  application is "correct to the best of my knowledge," (ii) certificates of registration issued by the

27  USPTO, and (iii) an office action summary by the USPTO. Nevertheless, MGA implicitly

28

15

EXHIBIT 2
PAGE 37

1   acknowledges that Mr. Woodman did not provide sufficient testimony as to certain applications

2   for registrations containing declarations by Isaac Larian documents (Exhibits 580-584, 590), a

3   declaration by Bryant (Exhibit 502), and an application and amendment referred to in the Bryant

4   declaration (Exhibits 500, 548), and one additional declaration by Isaac Larian, by agreeing to

5   produce Sam Khare to testify regarding these documents. Mattel is scheduled to depose Mr.

6   Khare on January 8, 2008.

7       MGA contends that prior counsel properly objected to certain questions as outside the

8   scope of Topic No. 34. In particular, MGA contends that questions directed at statements that did

9   not refer or relate to the time period prior to June 30, 2001 are outside the scope of Topic No. 34.

10  Further, MGA contends that where a sworn statement relates in part to the time period before

11  June 30, 2001, and in part to other time periods, the scope of Topic No. 34 is limited by its own

12  terms to that portion of the statement that relates to the specified time period. MGA also contends

13  that sworn testimony taken at the Art Attacks trial is outside the scope of Topic No. 34 because

    Mattel's counsel was present at that trial.

14      MGA represents that its present counsel does not condone the instructions not to answer

15  made by prior counsel, and will not attempt to justify those instructions. Nevertheless, MGA

16  contends that Mattel was not deprived of any discoverable testimony by those instructions

17  because the disputed questions sought information outside the scope of Topic No. 34. More

18  specifically, MGA represents that each exhibit that was excluded from Mr. Woodman's testimony

19  on the grounds that it was not a "sworn statement" was the subject of examination of MGA's

20  designees on Topic No. 33, Bryan Armstrong and Sam Khare. MGA also contends that

21  resumption of a deposition on Topic No. 34 beyond what MGA has agreed to provide is

22  unwarranted because Mattel obtained two full days of 30(b)(6) testimony on Topic No. 33.

23      A review of the deposition transcript confirms that Mr. Woodman was not sufficiently

24  prepared to provide testimony on Topic No. 34. Mr. Woodman did no more than review the

25  sworn statements made by others and the transcripts of Carter Bryant's deposition. For the sworn

26  statements he did review, Mr. Woodman offered little information beyond what was apparent on

27  the face of the documents. For example, Mr. Woodman did not know who authorized submitting

28


EXHIBIT 2
PAGE 38

1   the sworn statement. Ultimately, Mr. Woodman only testified as to whether or not a particular

2   sworn statement was consistent with deposition testimony of Carter Bryant. Furthermore, Mr.

3   Woodman admitted that the testimony he gave had nothing to do with MGA's current beliefs, was

4   not based on any investigation, and had nothing to do with the actual correctness or incorrectness

5   of any of the sworn statements. Mr. Woodman admitted that no matter what inconsistencies

6   existed between Carter Bryant's testimony and MGA's sworn statements, Mr. Woodman always

7   presented Carter Bryant's testimony as to the facts as "true." Thus, Mr. Woodman failed to

8   testify as to information known or reasonably available to MGA. Mr. Woodman's lack of

9   preparedness alone justifies re-opening Topic No. 34. Furthermore, MGA cannot rely on blanket

    claims of privilege to preclude testimony on Topic No. 34.

10         A further deposition on Topic No. 34 is also justified in light of the admittedly improper

11   instructions not to answer, and MGA's acknowledgement that Mr. Woodman did not provide

12   testimony as to Exhibits 500, 502, 548, 580-584, 590. MGA shall abide by its agreement to

13   produce a witness to testify on these exhibits.

14         MGA's interpretation of Topic No. 34 as excluding statements not made under oath or

15   penalty of perjury, and as excluding any portion of a statement under oath that does not refer or

16   relate to the time period prior to June 30, 2001, is overly technical. There is, however, a clear

17   overlap between Topic No. 34 and Topic No. 33, which is not at issue in this motion. When the

18   deposition on Topic No. 34 is resumed, MGA's corporate designee is not required to provide

19   further testimony on statements that were the subject of examination of MGA's designees on

20   Topic No. 33.

21         MGA's interpretation of Topic No. 34 as excluding testimony from the Art Attacks trial is

22   appropriate. Mattel does not contest that its counsel attended the Art Attacks trial. Topic No. 34

23   clearly excludes any proceeding attended by Mattel's counsel. When the deposition on Topic No.

24   34 is resumed, MGA's corporate designee is not required to provide further testimony with

25   respect to the Art Attacks trial.

26         **Topic No. 39**: The preservation, collection, destruction, removal, transfer, loss or
         impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with
27         the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

28                                                                                                17

EXHIBIT   2
PAGE   39

1   MGA designated two individuals to testify on this topic:  Kenneth Lockhart to testify on
2   electronic evidence; and Lisa Tonnu, to testify on documentary evidence.  Mattel contends that
3   both designees were unable to provide substantive testimony.

4       Mattel points out that Mr. Lockhart did not know whether the MGA's "PST files" had
5   been searched; whether e-mails had been deleted from the exchange mailbox between late 2004
6   and the present; whether MGA's "snap servers" had been searched; whether keywords were used
7   to search "PST" files; and what user files were searched.  Further, Mattel contends that Mr.
8   Lockhart was not aware of the location of any hard drive or any image of any hard drive that had
9   been preserved for litigation purposes.

10      MGA contends that Mr. Lockhart substantially discharged MGA's obligation on Topic 39
11  with respect to electronic documents.  MGA represents that Mr. Lockhart prepared extensively for
12  his testimony by speaking with various individuals and that he testified at length about the
13  configuration of MGA's computer systems and MGA's policies, practices and procedures for the
    retention and preservation of electronic documents.

14      Nevertheless, MGA is willing to produce a witness to testify on its behalf regarding the
15  collection of electronic documents in connection with this action in order to shore up the one area
16  of Mr. Lockhart's testimony that MGA agrees was lacking.

17      As for Ms. Tonnu, Mattel contends that MGA made no discernible effort to educate her
18  concerning the topic.  Ms. Tonnu testified that she did not know whether MGA has a document
19  retention policy.  Mattel also contends that MGA's counsel instructed Ms. Tonnu not to answer
20  any questions about MGA's preservation and collection of documents based upon unfounded
21  claims of attorney-client privilege.[2]

22      MGA produced Ms. Tonnu a second time to testify on Topic No. 39, however Mattel
23  contends that her testimony remained deficient.  For example, Ms. Tonnu testified that she
24  prepared for the deposition by speaking with Rich Daniels, MGA's counsel, and by reviewing a
25  //

26

27  _____
    [2] The instructions not to answer are discussed in a separate section of this Order.
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

18

EXHIBIT  2
PAGE  40

1    declaration prepared by Daphne Gronich, MGA's General Counsel on the subject of document
2    preservation. Mattel points out, however, that Ms. Tonnu never spoke with Ms. Gronich, and
3    therefore was unable to provide any information beyond what was stated in the four corners of the
4    declaration. In particular, Mattel contends that Ms. Tonnu did not know whether any documents
5    at the MGA campus had been searched for responsive documents. Nor did Ms. Tonnu know what
6    documents were stored at MGA's three off-site facilities and could not confirm whether they had
7    been searched for documents responsive to Mattel's requests.

8        MGA contends that Ms. Tonnu testified fully and completely regarding MGA's
9    preservation of documents in connection with this action. Indeed, MGA contends that the
10   Gronich declaration, which had already been provided to Mattel, contains detailed information
11   regarding MGA's document preservation efforts. MGA also points out that Tonnu testified,
12   based on her investigation and MGA's general policy (that documents generated by employees in
13   the ordinary course of business should not be destroyed and the wide distribution of document
14   preservation notices to MGA employees), that MGA did not knowingly destroy any documents
     potentially relevant to this action.

15       MGA acknowledges, however, that Ms. Tonnu was not able to testify regarding the actual
16   collection of documents for production in this action. MGA represents that it is willing to
17   produce an additional witness to discuss the collection of hard copy and electronic documents in
18   connection with this action.

19       A review of the deposition transcripts confirms that MGA's witnesses provided a
20   significant amount of testimony on this topic, and in particular regarding document preservation.
21   The one area where they were glaringly deficient was regarding document "collection."
22   Accordingly, MGA is ordered to abide by its agreement to produce a witness to testify further
23   with respect to the "collection" of hard copy and electronic documents. In all other respects,
24   MGA is in substantial compliance with Topic No. 39, and the burden and expense of re-opening a
25   deposition on the entirety of Topic No. 39 outweighs the likely benefit of the testimony Mattel
26   seeks.

27       **Topic No. 40:** The preservation, collection, destruction, removal, transfer, loss or

28                                                                                    19

EXHIBIT   2
PAGE     4l

1  impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 1999 that

2  REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan

3  or information) that YOU received in any manner from any PERSON who was at the time an

4  employee of MATTEL or who had previously been an employee of MATTEL.

5      This topic appears to be based, at least in part, upon Mattel's allegations that former

6  Mattel employee Ron Brawer, former Mattel employees in Mattel's offices in Mexico; and a

7  former Mattel employee located in Canada improperly provided MGA with documents containing

8  Mattel trade secrets.

9      Mattel contends that MGA made no discernible effort to educate Ms. Tonnu on Topic No.

10  40, and therefore she was unable to answer whether MGA has or has had in its possession any (1)

11  Mattel strategic plans, (2) any sales or profit information of Mattel, (3) any documents related to

12  Mattel's advertising strategy, (4) any documents relating to the results of Mattel's advertising, (5)

13  documents related to Mattel's pre-release line lists, and (6) documents related to Mattel's strategy

14  with respect to specific customers.  MGA produced Ms. Tonnu a second time, however, Mattel

15  contends that her testimony remained deficient.  In particular, Mattel complains that MGA spoke

16  with only two former employees about the documents described above, when there are many

17  more former Mattel employees working at MGA.

18      MGA contends that Ms. Tonnu spoke with the three individuals at MGA who would be

19  most knowledgeable about the allegations against MGA and testified as to any documents they

20  brought with them from Mattel: Ron Brawer, Susana Kuemmerle and Janine Brisbois.  MGA

   contends that Ms. Tonnu's preparation to testify on Topic 40 was reasonable.

21      Nevertheless, MGA represents that it has agreed to provide additional testimony through

22  Ms. Tonnu to address Mattel's concerns, and that her deposition will take place on January 9,

23  2008.

24      A review of the deposition transcript indicates that Ms. Tonnu did not prepare sufficiently

25  for her testimony.  Ms. Tonnu spoke to only three individuals.  Clearly, there are far more sources

26  of information reasonably available to MGA, namely the many more former Mattel employees

27  now employed at MGA.  MGA made no effort to determine what Mattel documents, if any, these

28

EXHIBIT __2__
PAGE __42__

1  individuals possess.  Therefore, Mattel is entitled to an order compelling MGA to produce a

2  witness to provide complete testimony on Topic No. 40.

3      **Topic No. 41:** The testing or sampling from DOCUMENTS that REFER OR RELATE
    TO BRATZ or BRYANT, including without limitation such testing or sampling in

4      connection with any ink, paper or chemical analysis performed or attempted to be
    performed to date, any DOCUMENTS that REFER OR RELATE thereto and all results

5      and reports relating thereto.

6      Mattel deposed Ms. Tonnu on this topic on two separate occasions.  Mattel contends that

7  in each instance, she was unprepared to given any meaningful testimony regarding any ink, paper

8  or chemistry testing performed on Bratz documents.  In particular, Mattel contends that Ms.

9  Tonnu's preparation for her deposition was inadequate because she did not speak to the MGA

10  litigation consultant who performed the testing, Mr. Speckin, but merely read his declaration.

11      Furthermore, Mattel contends that MGA's counsel improperly instructed Ms. Tonnu not to

12  answer questions based upon unfounded claims of work product protection.  Mattel explains that

13  it is not seeking information concerning Mr. Speckin's opinions or the results of his test on Bratz

14  documents.  Instead, Mattel contends that it is seeking factual information concerning the

15  handling and shipment of original Bratz documents, as well as the specific documents that were

16  tested.  In Mattel's view, the factual circumstances surrounding Mr. Speckin's testing are not

17  protected from discovery by the work-product doctrine.

18      Moreover, Mattel contends that MGA provided Mattel's counsel with a list identifying the

19  documents that Mr. Speckin tested and allowed Ms. Tonnu to testify about the identification of

20  documents, thereby waiving any work product protection with respect to the identification of

21  documents.  Mattel also contends that Mr. Speckin's declaration, which was submitted in the

22  case, already discloses the types of tests conducted and therefore any privilege that may have

23  applied has been waived with respect to this subject.

24      MGA contends that it complied with this topic and that Mattel is not entitled to any further

25  examination because further questioning about the testing performed by Mr. Speckin would

26  violate MGA's attorney work product protection.  Mr. Speckin is one of MGA's non-testifying

27  experts.  MGA objects to any further questioning regarding Mr. Speckin's selection of which

28  documents to test, how the documents were handled, which tests were performed on the

21

EXHIBIT ___2___
PAGE ___43___

1   documents, how they were shipped and how they were stored. MGA contends that further

2   questioning on these subjects would necessarily reveal the mental impressions, legal theories, and

3   conclusions of MGA's counsel and its non-testifying experts formed in anticipation of litigation

4   with Mattel. Further, MGA contends that Mattel has not carried its heavy burden to demonstrate

5   the "exceptional circumstances" required to invade MGA's work product.

6       A review of the deposition transcript confirms that Ms. Tonnu was not reasonably

7   prepared to testify on Topic No. 41. Ms. Tonnu did not speak with Mr. Speckin or anyone

8   involved in the testing. She had only read Mr. Speckin's declaration. Therefore, she clearly was

9   not in a position to testify as to information known or reasonably available to MGA. On this basis

10  alone, Mattel is entitled to an order compelling MGA to produce a witness to testify fully on

    Topic No. 41.

11      As for MGA's claims of work production protection, Judge Larson has already indicated

12  that questions of privilege regarding the testing of the Bratz documents must be handled on a

13  question-by-question basis. The questions at issue are set forth in Mattel's Separate Statement

14  No. 2, and are discussed below in connection with Mattel's Request for Relief No. 4.

15

16  B. Mattel's Request for Relief No. 2:  Mattel seeks an order overruling each of the purportedly
    improper instructions not to answer questions interposed at the deposition of MGA designees
17  Spencer Woodman (Instruction Nos. 46-57) and compelling Woodman or other such person
    selected by MGA as its designee to provide complete testimony on Topic No. 34.

18      Mattel identifies each instance of allegedly improper instructions in its Separate Statement

19  No. 2. In each instance identified by Mattel, MGA's counsel instructed the witness not to answer

20  questions about matters that counsel believed exceeded the scope of the deposition. The

21  instructions not to answer were not based upon a claim of privilege, and therefore were clearly

22  improper.

23      Furthermore, as stated previously, MGA has acknowledged that some questions fell within

24  the scope of Topic No. 34 and should be answered. To that end, MGA has agreed to produce a

25  corporate designee to provide supplemental testimony as to Exhibits 500, 502, 548, 580-584, 590.

26  MGA shall abide by its agreement to produce a witness to testify on these exhibits.

27      Nevertheless, many of the questions identified in the Separate Statement No. 2 for which

28                                                                              22

EXHIBIT  2
PAGE  44

1  an improper instruction not to answer was given clearly exceeded the scope of the deposition

2  notice. MGA is not required to provide further testimony as to those questions. For example, the

3  question regarding the Art Attacks trial that Mattel's counsel attended (Instruction No. 46) exceed

4  the scope of Topic No. 34, and do not require any further testimony. MGA is also not required to

5  provide further testimony as to documents that have been the subject of questioning during the

6  30(b)(6) deposition on Topic No. 33.[3]

7  C. Mattel's Request for Relief No. 3: Mattel seeks an order compelling MGA to produce documents that MGA designee Kenneth Lockhart identified during his June 14, 2007 deposition

8  as documents which he reviewed and relied upon to refresh his recollection in preparation for his deposition.

9       Mattel seeks an order compelling MGA to produce documents that Mr. Lockhart

10  identified during his deposition as documents which he reviewed and relied upon to refresh his

11  recollection in preparation for his deposition.

12       MGA contends that the documents Mattel seeks are privileged e-mail communications

13  from MGA's General Counsel to MGA employees regarding their document preservation

14  obligations in light of the present action. MGA contends that its privilege log demonstrates that

15  the documents are protected by both the attorney-client privilege and the work product doctrine.

16  Furthermore, MGA contends that Mr. Lockhart was required to review the privileged emails

17  because they related to MGA's preservation of documents in connection with this action and they

18  were reasonably available to MGA.

19       Moreover, MGA contends that waiver of the attorney-client privilege and work product

20  doctrine is not automatic where a witness refreshes his recollection with privileged prior to a

21  deposition. In re Managed Care Litig., 415 F.Supp.2d 1378 (S.D. Fla. 2006); Medtronic Xomed,

    Inc. v. Gyrus ENT LLC, 2006 WL 786425, at *1, 3, 6-7 (M.D. Fla. March 27, 2006).

22       MGA's bare bones privilege log, unaccompanied by any supporting declarations, is

23  insufficient to establish the attorney-client privilege and the work product doctrine. Further,

24  although there appears to be a split in authority, the weight of authority supports a finding of

25

26       [3] MGA represents that virtually all of the questioning quoted in Mattel's Separate Statement No. 2 at

27  Instruction Nos. 47-57 was covered in the deposition on Topic No. 33. However, MGA's representation cannot be confirmed by the excerpts of the deposition transcript submitted in connection with this motion.

28                                                                                           23

EXHIBIT __2__

PAGE __45__

1    waiver.  See e.g. United States ex rel. Bagley v. TRW Inc., 212 F.R.D. 554, 565-566 (C.D. Cal.

2    2003) (requiring disclosure of documents reviewed by relator in preparing for his deposition

3    based upon waiver of work product protection); U.S. v. 22.80 Acres of Land, 107 F.R.D. 25-26

4    (N.D. Cal. 1985) (work product waived where deponents used documents to refresh recollection);

5    Ehrlich v. Howe, 848 F.Supp. 482, 493 (S.D. N.Y. 1994) ("when [c]onfronted with the conflict

6    between the command of Rule 612 to disclose materials used to refresh recollection and the

7    protection afforded by the attorney-client privilege . . . the weight of the authority holds that the

8    privilege is waived."); Marshall v. United States Postal Service, 88 F.R.D. 348, 350 (D. D.C.

9    1980) ("[I]t is apparent that once a document is used to refresh the recollection of a witness,

     privileges as to that document have been waived.").

10        Furthermore, the interests of justice compel production of the e-mail documents used by

11   Mr. Lockhart to refresh his recollection.  MGA acknowledges that Mr. Lockhart was required to

12   review the e-mails because they related to MGA's preservation of documents.  Mr. Lockart

13   testified that the e-mails refreshed his recollection as to what MGA employees had been requested

14   to preserve.  Accordingly, MGA is ordered to produce the e-mails reference in Mr. Lockhart's

15   deposition.

16   D. Mattel's Request for Relief No. 4.  Mattel seeks an order overruling each of the purportedly
     improper instructions not to answer questions interposed at the deposition of MGA designee Lisa
17   Tonnu.

18        In Mattel's Separate Statement No. 2, Mattel identifies each purported instance of

19   improper objections and/or instructions not to answer for which it seeks a ruling.  Each instance

20   of allegedly improper conduct is discussed below.

21

22                              Instruction Nos. 1-5

23        Mattel's counsel posed a series of questions regarding Mr. Larian's trusts.  In each

24   instance, MGA's counsel instructed Ms. Tonnu not to answer.  MGA's counsel objected to the

25   question on privilege and privacy grounds, and objected that the question exceeded the scope of

26   deposition.

27        The privilege objections are overruled because MGA has failed to establish the requisite

28                                                                          24

     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT   2
PAGE   46

1   elements of any applicable privilege.  The privacy objections are overruled since there is a

2   protective order in place to address Mr. Larian's privacy concerns regarding his personal finances.

3   The remaining objections do not justify an instruction not to answer.  See Fed.R.Civ.P. 30(c)(2)

4   (an objection must be noted on the record, but the examination still proceeds and the testimony is

5   taken subject to any objection).  Accordingly, MGA shall produce a knowledgeable 30(b)(6)

6   designee to provide complete responses to the questions identified in Mattel's Separate Statement

7   No. 2 as Instruction Nos. 1-5.

### Instruction No. 6

8        In this excerpt, the witness wanted to clarify her testimony regarding voucher payments,

9   which prompted Mattel's counsel to ask a series of questions about what prompted her make the

10  clarification, including "that's what counsel told you at the break?"; "[h]ow was your recollection

11  refreshed"; and "[d]id Mr. Jenal tell you what the dates were?"  MGA's counsel objected on

12  privilege grounds and instructed the witness not to answer.

13       The objections are overruled.  The attorney-client privilege protects an attorney's

14  communication of legal advice to his client, as well as the client's communication of information

15  to the attorney "to enable him to give sound and informed advice."  Upjohn Co. v. United States,

16  449 U.S. 383, 390 (1981).  In this instance, the question posed did not require the witness to

17  disclose the substance of an attorney-client communication.  Instead, the questions posed called

18  for the disclosure of underlying facts to which Mattel is entitled.  See Upjohn, supra at 395

19  (finding that the attorney-client privilege does not preclude disclosure of factual information and

20  that the privilege does not protect facts communicated to an attorney).

21       Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

22  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 6.

### Instruction Nos. 7-20 and 23

23       In each of these excerpts, Mattel's counsel posed questions regarding testing performed on

24  Bratz drawings.  MGA's counsel objected to the questions based upon the work product doctrine

25  and instructed the witness not to answer.

26       The work product objections are overruled.  The work product doctrine, now codified in

27

28                                                                              25

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT   2
PAGE   47

1   part in Rule 26(b)(3) of the Federal Rules of Civil Procedure, provides qualified protection for

2   materials prepared by or at the behest of counsel in anticipation of litigation or for trial. The party

3   claiming work product immunity has the burden of establishing its elements by competent

4   evidence. In re Kidder Peabody Securities Litigation, 168 F.R.D. 459, 462 (S.D. N.Y. 1996).

5       In the instant case, all of the questions posed to the witness take one of four forms: "do

6   you know whether" or "do you know who" or "do you know what" or "do you know why." The

7   questions thus call for a simple "yes" or "no" response that did not require divulging any

8   information protected by the work product doctrine.

9       Even if the questions are construed to require substantive responses beyond "yes" or "no,"

10  the information sought is factual (what test was conducted, how documents were stored, whether

11  the documents were handled with cotton or latex gloves, who was with the expert when he

12  performed his tests, what precautions he took). The questions do not require the witness to

13  divulge the mental impressions, the legal theories, or conclusions of Mr. Speckin.

14      Moreover, Rule 26(b)(4)(B), Fed.R.Civ.P., provides that a party may discover facts known

15  or opinions held by an non-testifying expert upon a showing of exceptional circumstances under

16  which it is impracticable for the party seeking discovery to obtain facts or opinions on the same

17  subject by other means. In the instant case, there is no other practicable means for Mattel to

18  obtain information about the handling, shipping and testing of original Bratz documents while in

19  Mr. Speckin's possession. Mr. Speckin is a non-testifying expert. The manner in which Mr.

20  Speckin transported, analyzed, tested or otherwise used the original Bratz drawings is uniquely

21  within his knowledge and plainly relevant. The original Bratz drawings are a key piece of

22  evidence in this case. Mattel needs information concerning what, if any, changes, damage, or

23  other alterations were made to the original Bratz drawings. Mattel is not seeking information

24  regarding Mr. Speckin's opinions or the results of his tests. Rather, Mattel is seeking only

25  information regarding the handling of the original Bratz documents and more precise

26  identification information for the specific documents that were handled by Mr. Speckin.

27      MGA objects to providing information concerning Mr. Speckin's testing, the testing

28  conditions, the selection of which drawings to test and other logistics. MGA, however, has

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

26

EXHIBIT __2__
PAGE __48__

1 already disclosed the types of tests performed by Mr. Speckin in a declaration submitted to the

2 court, and has provided Mattel with a list identifying the documents that Mr. Speckin tested,

3 although the list did not identify the documents by Bates numbers. Therefore, MGA has waived

4 any work product protection to which it may have been entitled with respect to the identification

5 of the original Bratz drawings that were subjected to testing and which tests were performed.

6 　　　　Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

7 responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 7-

8 20 and 23.

### Instruction Nos. 21-22

9 　　　　In these excerpts, Mattel's counsel asked Ms. Tonnu whether she could identify or

10 describe any of the documents that were tested by Mr. Speckin. MGA's counsel objected to the

11 questions based upon the work product doctrine and instructed the witness not to answer

12 The objections are overruled. As discussed immediately above, the questions call for factual

13 information that is not protected by the work product doctrine. Even if the work product doctrine

14 applied, the protection has been waived. Furthermore, this case presents exceptional

15 circumstances under which it is impracticable for Mattel to obtain the information sought by other

16 means. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

17 responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 21-

18 22.

### Instruction Nos. 24-26

19 　　　　In these excerpts, Mattel's counsel asked the witness (1) what Ms. Garcia told her about

20 Diva Starz and (2) whether Ms. Garcia told the witness she had access to Diva Starz information

21 while she was at Mattel. MGA's counsel objected to the questions to the extent the witness'

22 conversations with Ms. Garcia occurred in the presence of counsel and instructed the witness not

23 to answer.

24 　　　　The objections are overruled. The questions do not require the witness to divulge the

25 substance of any privileged communication. Instead, the questions call for factual information to

26 which Mattel is entitled.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

27

EXHIBIT ___2___
PAGE ___49___

1   Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete
2   responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 24-
3   26.

### Instruction No. 27

4
5   In this excerpt, Mattel's counsel asked the witness twice whether MGA had access to
6   Mattel internal information regarding Diva Starz prior to February 1st, 2000. MGA's counsel
7   made a speaking objection, which clearly violated Rule 30(c)(2), Fed.R.Civ.P. However, the
8   questions do not need to be repeated because the witness provided responses.

### Instruction No. 28

9
10  In this excerpt, Mattel's counsel asked, "MGA is denying that it had access to internal
11  information about Mattel's Diva Starz project prior to September 1st, 2000?" MGA's counsel
12  objected on the grounds that the question calls for a legal conclusion, calls for the disclosure of
13  privileged information, and exceeds the scope of the deposition. Counsel also instructed the
    witness not to answer.

14  The objections are overruled. The question does not call for a legal conclusion and MGA
15  has failed to establish the elements of the attorney-client privilege.

16  Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete
17  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 28.

18  ### Instruction Nos. 29-34

19  In these excerpts, Mattel's counsel asked as series of questions regarding whether MGA
20  knew Mattel was considering using the name "Brats" and "Boyz" in connection with the Diva
21  Starz project and whether MGA knew Mr. Linker worked on the project. MGA's counsel made
22  several objections including the following: assumes facts not in evidence; misstates the witness'
23  prior testimony; compound; outside the scope of the deposition; improper as to form; lacks
24  foundation; vague and ambiguous; calls for speculation; argumentative; and asked and answered.
25  MGA's counsel objected to one question (Instruction No. 30) on the additional ground that it may
26  call for attorney-client communications. MGA's counsel also instructed the witness not to
27  answer.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

28

EXHIBIT __2__
PAGE __60__


1    The repeated instructions not to answer were clearly improper.  Accordingly, MGA shall

2    produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions

3    identified in Mattel's Separate Statement No. 2 as Instruction Nos. 29-34.

### Instruction No. 35

4

5    In this excerpt, the witness indicated that she did not know whether Mr. Linker worked on

6    the Bratz project. Mattel's counsel then asked, "But you don't know one way or the other?"

7    MGA's counsel objected to the question, asserting that it had been asked and answered and was

8    argumentative. MGA's counsel also instructed the witness not to answer.

9    The instruction not to answer was clearly improper. Accordingly, MGA shall produce a

10   knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in

11   Mattel's Separate Statement No. 2 as Instruction No. 35.

### Instruction No. 36

12   In this excerpt, Mattel's counsel asked, "Did you have a conversation with Mr. Jenal about

13   the net worth or the valuation of the company?" MGA's counsel objected on privilege grounds

14   and instructed the witness not to answer.

15   The objection is overruled. The question calls for a "yes" or "no" answer and does not

16   require the witness to divulge the substance of a privileged communication.

17   Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

18   responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 36.

### Instruction No. 37

19

20   In this excerpt, Mattel's counsel asked, "What did Mr. Daniels tell you about the net worth

21   or valuation of the company?" MGA's counsel objected on privilege grounds.

22   The objection is sustained. As phrased, the question potentially calls for the disclosure of

23   the substance of a privileged communication.

### Instruction Nos. 38-40

24   In these excerpts, MGA's counsel instructed the witness not to answer. The instruction

25   was not based upon a claim of privilege, and therefore was improper. MGA's counsel also made

26   an improper speaking objection. Accordingly, MGA shall produce a knowledgeable 30(b)(6)

27

28                                                                                    29

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  2
PAGE  51

1  designee to provide complete responses to the questions identified in Mattel's Separate Statement
2  No. 2 as Instruction Nos. 38-40.

### Instruction No. 41

4    In this excerpt, Mattel's counsel asked the witness to identify the litigation for which
5  Exhibit 660 was prepared. MGA's counsel objected to the question as calling for work product
6  and instructed the witness not to answer.

7    The work product objection is overruled. The question calls for the disclosure of facts, not
8  work product. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide
9  complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction
   No. 41.

### Instruction Nos. 42-44

11    In these excerpts, Mattel's counsel posed more questions about the litigation for which
12  Exhibit 660 was prepared, including the identity of the parties to the litigation and whether the
13  litigation was ongoing. MGA's counsel objected on privilege and work product grounds.

14    The objections are overruled. The questions call for the disclosure of facts, not work
15  product. Further, MGA has failed to establish that the questions require the witness to disclose
16  the substance of a privileged communication. Accordingly, MGA shall produce a knowledgeable
17  30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate
18  Statement No. 2 as Instruction Nos. 42-44.

### Instruction No. 45

20    In this excerpt, Mattel's counsel asked whether an attorney by the name of Mr. Daniels
21  wrote a document. The work product objection by MGA's counsel is overruled. The "yes" or
22  "no" question calls for the disclosure of facts, not work product. Accordingly, MGA shall
23  produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions
24  identified in Mattel's Separate Statement No. 2 as Instruction No. 45.

25  E. Mattel's Request for Relief No. 5:  Mattel seeks an order reopening the deposition of MGA
    designee Lisa Tonnu based on a purported "complete reversal of testimony" made through written
26  "changes" to her deposition transcript.

27    Ms. Tonnu made changes to her deposition transcript after her deposition was completed.

28
                                                                                      30
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

EXHIBIT  2
PAGE  51

1    Counsel asked Ms. Tonnu whether any documents had been collected from MGA's Filenet

2    storage facility, to which she responded "no"; whether Mr. Daniels told her that he was going to

3    collect documents from Filenet, to which she responded "yes"; and whether the documents at

4    Filenet contained any documents responsive to Mattel's request, to which she responded "no."

5    Later, Ms. Tonnu revised her deposition transcript and reversed each of her answers.

6         Mattel contends that Ms. Tonnu's initial answers in the negative precluded a line of

7    questioning into, for example, who collected documents, which documents were collected and

8    how.

9         MGA contends that the changes Ms. Tonnu made do not justify re-opening a deposition.

10   Nevertheless, MGA has no objection to follow-up questions about Ms. Tonnu's revision when she

11   is deposed again in January.

12        In light of MGA's lack of opposition, MGA shall make Ms. Tonnu available for follow-up

13   questioning regarding the revisions to her deposition testimony.

14   F. Mattel's Request for Relief No. 6:  Mattel seeks an order compelling Rebecca Harris to sit for
     the completion of her deposition and/or compelling such person selected by MGA as its designee
     to complete the testimony on topics for which Harris was previously designated.

15        Mattel seeks an additional day to depose Ms. Harris.  Mattel contends that it needs more

16   than the 7-hours it has already deposed Ms. Harris to complete its questioning on all topics for

17   which she was designated.  Mattel emphasizes that Ms. Harris is designated to testify on nine

18   separate topics, each of which pertains to issues at the heart of the litigation, including the origin,

19   creation, design and development of Bratz prior to June 30, 2001; relevant contracts concerning

20   Carter Bryant and Bratz; payments made to Bryant and other financial information relating to

21   Bratz; and third parties who were involved in or otherwise have knowledge about the creation,

22   design and development of Bratz.

23        In addition to the topics already discussed above in Section "A" to this Order, Mattel

24   contends that it did not have sufficient time to depose Ms. Harris on Topic Nos. 19, 22 and 23,

25   which are set forth below:

26        **Topic No. 19:**  Each agreement or contract between YOU and any PERSON other than
          BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that REFERS
27        OR RELATES to the time period prior to December 31, 2001 (regardless of when such
          agreement or contract was negotiated or executed), including without limitation the timing
28        thereof, the negotiations, drafts and COMMUNICATIONS that REFER OR RELATE

31

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT   2
PAGE   53

1    thereto, and any actual or proposed amendments thereto.

2    **Topic No. 22:**  The payment of money or anything of value by or for YOU or on YOUR behalf that has been made to, for or on behalf of BRYANT (a) for work, services or

3    activities performed by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made), (2) for DESIGNS CREATED by BRYANT prior to January

4    1, 2001 (regardless of when such payment was actually made) or (c) in connection with BRATZ or any BRATZ DESIGN at any time, including amount(s) thereof and the reasons

5    therefore,

6    **Topic No. 23:**  The payment of royalties to, for or on behalf or BRYANT made by or for YOU or on YOUR behalf, including the timing, manner and amounts of such payments

7    and the reasons therefore.

8  MGA contends that Mattel has not made the required showing that additional time is "needed to

9  fairly examine the deponent" or that "the deponent, another person, or any other circumstance

10  impedes or delays the examination." Fed.R.Civ.P. 30(d)(1).  Furthermore, MGA contends that

11  Mattel wasted much of the 7-hours with Ms. Harris by asking questions outside the topics for

12  which she was designated and badgering the witness.

13       As discussed already above, Ms. Harris was not sufficiently prepared to testify on several

14  topics and did not discharge MGA's duty to produce a witness to testify as to information known

15  or reasonably available to MGA. Her lack of preparedness alone justifies additional deposition

16  time. The relatively large number of topics for which Ms. Harris was designated (Topic Nos. 11,

17  13, 14, 19, 21, 22, 23, 27 and 28), also justifies additional deposition time to enable Mattel to

18  fairly examine the deponent.  Many of the topics for which Ms. Harris was designated are highly

19  relevant to the case.  Mattel has identified a few instances where Mattel was inefficient in

20  conducting her deposition; however, the deposition generally proceeded at a reasonable pace.

21  Accordingly, Mattel is granted an additional four hours to complete the deposition of Ms. Harris

22  on all of the topics for which she was designated, except Topic Nos. 27 and 28 which were

    discussed previously.

23  G. Mattel's Request for Relief No. 7:  Mattel seeks an order imposing sanctions for MGA's alleged willful violations of the May 16, 2007 and August 14, 2007 Orders, for MGA's allegedly

24  improper instructions not to answer deposition questions and for MGA's alleged improper coaching, harassing and obstructionist conduct at the September 24-25, 2007 deposition of Lisa

25  Tonnu and at the October 9, 2007 deposition of Spencer Woodman in the amount of $10,000.

26       Sanctions are appropriate based upon MGA's failure to produce 30(b)(6) designees who

27  were reasonably prepared to testify on seven out of the sixteen topics at issue, namely Topic Nos.

28

32

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT   2

PAGE   54

1   21, 24, 25, 31, 34, 39 and 40. By agreeing to provide supplemental testimony on these topics,

2   MGA implicitly acknowledges that the witnesses provided insufficient testimony. Further,

3   MGA's counsel also repeatedly flouted Rule 30(c)(2), Fed.R.Civ.P., and prior orders prohibiting

4   instructions not to answer for reasons other than privilege. Accordingly, pursuant to Rule

5   30(d)(2) and 37(b), Fed.R.Civ.P., sanctions are imposed in the amount of $6,000.

6   H. Mattel's Request for Relief No. 8: Mattel seeks a report and recommendation to Judge
    Stephen G. Larson that recommends the imposition of preclusion sanctions, that certain facts
7   related to the topics compelled be deemed admitted, and/or that MGA be found in contempt for
    MGA's allegedly willful and repeated violations of the Orders.

8         As previously stated at the December 14, 2007 hearing, it is premature to consider

9   preclusion sanctions and contempt at this time. If Mattel intends to pursue such sanctions, it may

10  do so only after the close of Phase 1 discovery.

11                                    V. CONCLUSION

12        For the reasons set forth above, it is hereby ordered as follows:

13        1.      No later than January 30, 2008, MGA shall produce witnesses who are prepared to

14  testify about information known or reasonably available to MGA in accordance with Rule

15  30(b)(6), Fed.R.Civ.P., and to provide complete testimony on the following topics as specified

16  herein: Topic Nos. 11, 13, 14, 19, 21-25, 31, 34 (with limitations noted herein) 39 (with

17  limitations noted herein), 40 and 41. Mattel's motion is denied as to Topic Nos. 27 and 28.

18        2.      MGA's 30(b)(6) designee Spencer Woodman shall provide full and complete

19  responses to each of the questions identified in Mattel's Separate Statement No. 2 that are

20  identified herein as requiring a further response because the objections have been overruled

21  and/or the instructions not to answer have been found improper, and the question seeks relevant

22  and privileged information to which Mattel is entitled.

23        3.      MGA shall produce the e-mails that MGA designee Kenneth Lockhart identified

24  during his June 14, 2007 deposition as documents which he reviewed and relied upon to refresh

25  his recollection in preparation for his deposition. Mattel is also permitted to conduct reasonable

    follow-up questioning regarding those documents.

26        4.      MGA's 30(b)(6) designee Lisa Tonnu shall provide full and complete responses to

27  each of the questions identified in Mattel's Separate Statement No. 2 that are identified herein as

28                                                                                              33

    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT  2
PAGE    55

1   requiring a further response because the objections have been overruled and/or the instructions

2   not to answer have been found improper, and the question seeks relevant information to which

3   Mattel is entitled.

4        5.     In addition to the deposition testimony authorized above, Mattel is granted leave to

5   depose Ms. Tonnu regarding the changes she made to her deposition transcript.

6        6.     Mattel is granted additional time to complete a full and fair examination of Ms.

7   Harris on all of the topics for which she was designated, except Topic Nos. 27 and 28.  The

8   deposition of Ms. Harris shall not exceed four (4) hours.

9        7.     Mattel's request for monetary sanctions is granted in part pursuant to Fed.R.Civ.P.

10   37(b).  MGA shall pay sanctions in the amount of $6,000 no later than February 11, 2008.

11        8.     Mattel's request for preclusion sanctions and/or a finding of contempt is denied

12   without prejudice.

13        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

14   Master, Mattel shall file this Order with the Clerk of Court forthwith.

15   Dated:  January 8, 2008

16        HON. EDWARD A. INFANTE (Ret.)
         Discovery Master

17

18

19

20

21

22

23

24

25

26

27

28

34

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  2
PAGE  56

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 9, 2008, I served

the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO

ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; TO OVERRULE

PURPORTEDLY IMPROPER INSTRUCTIONS; AND FOR SANCTIONS in the within action by

email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above

is true and correct.

Executed on January 9, 2008, at San Francisco, California.

_Sandra Chan_

Sandra Chan

EXHIBIT ___2___
PAGE ___51___

# EXHIBIT 3

1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
3  Los Angeles, CA 90071-3144
   Tel.: (213) 687-5000/Fax: (213) 687-5600
4
   RAOUL D. KENNEDY (Bar No. 40892)
5  (rkennedy@skadden.com)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Embarcadero Center, 38th Floor
   San Francisco, CA 94111-5974
7  Tel.: (415) 984-6400 / Fax: (415) 984-2698

8  Attorneys for MGA Entertainment, Inc.

**RECEIVED**

**MAR 1 8 2008**

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

12  CARTER BRYANT, an individual,        )  CASE NO. CV 04-9049 SGL (RNBx)
                                          )  Consolidated with Case No. 04-9059
13                   Plaintiff,           )  and Case No. 05-2727
                                          )
14          v.                            )  **DISCOVERY MATTER**
                                          )
15  MATTEL, INC., a Delaware              )  MGA'S REPLY TO MATTEL'S
    corporation,                          )  OPPOSITION IN FURTHER
16                                        )  SUPPORT OF MGA'S MOTION TO
                     Defendant.           )  COMPEL PRODUCTION OF
17                                        )  DOCUMENTS FROM THIRD
                                          )  PARTY RIGHT MANAGEMENT
18                                        )  CONSULTANTS, INC.
                                          )
19                                        )  [To be heard by Discovery Master
    AND CONSOLIDATED ACTIONS             )  Hon. Edward Infante (Ret.) Pursuant
20                                        )  to Court Order of December 6, 2006]
                                          )
21                                           Hearing Date: TBD
                                             Time: TBD
22

23

24

25        **CONFIDENTIAL – ATTORNEYS' EYES ONLY**

26     **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

27
                              3/13
28  _____
        MGA'S REPLY TO MATTEL'S OPPOSITION IN FURTHER SUPPORT OF MGA'S
          MOTION TO COMPEL RIGHT MANAGEMENT CONSULTANTS

EXHIBIT  3
PAGE  58

## **INTRODUCTION**

Having served no less than 78 document subpoenas on third parties in this action and received hundreds-of-thousands of pages in third party productions (in addition to the more than 4 million pages from MGA), Mattel now opposes on relevance grounds the production by Right Management Consultants, Inc. ("Right") of an *inch-and-a-half stack* of plainly relevant documents. These documents have already been collected in response to MGA's December 19, 2007 subpoena (the "Subpoena") and need only be copied, redacted (if Right so chooses), and produced. In its moving papers, MGA demonstrated the unquestionable relevance of these documents to Phase I of this action and the absence of any burden to Right in their production. Nothing in Mattel's opposition comes close to overcoming that showing. Rather, Mattel's papers serve to demonstrate that its scorched-earth litigation strategy is unbalanced by any rule of reason or proportionality, particularly since the cost and burden of this briefing exercise far outweighs that of copying and redacting the small handful of documents at issue.

Mattel concedes, as it must, that the scope of MGA's discovery is governed by Rule 26, which grants MGA the right to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim *or defense*..." Fed. R. Civ. P. 26(b)(1) (emphasis added). Here, MGA asserts that Mattel failed to assert its purported ownership interest relating to Bratz in a timely fashion, doing so long after it was aware of the facts underlying its claim, and then only when it had become clear that Bratz was a major threat to Barbie's share of the fashion doll market. Whether Mattel in fact sat on its claims until Bratz emerged as a formidable competitor and Mattel realized its "House [was] on Fire" before seeking to regain a competitive edge through litigation is thus directly relevant to MGA's statute of limitations and laches defenses. (*See* Declaration of L. Etcheverry in Support of Motion to Compel ("Etcheverry Decl."), Ex. 6 at 2.) The requested documents,

1 | which by Mattel's own admission provide insight into one of the company's
2 | reactions to its market share crisis – *i.e.*, systemic cuts to its work force – are relevant
3 | to MGA's defenses in this action.

4 |     Mattel's arguments in opposition stretch credulity. As an initial matter, Mattel
5 | strains to misconstrue MGA's relevancy argument as relating *exclusively* to Mattel's
6 | affirmative claims, rather than MGA's defenses. (Opp. at 1,5.) Although the
7 | information sought by this motion is, in fact, germane to Mattel's affirmative claims,
8 | the Court need not even make that determination. Rather, since the requested
9 | information is unquestionably relevant to MGA's statute of limitations and laches
10 | *defenses*, it satisfies the express relevance requirements of Rule 26 and must be
11 | produced.

12 |     Mattel also misrepresents the record when it claims that MGA's moving
13 | papers somehow leave open the question of whether MGA has retracted its offer to
14 | allow Right to redact certain information in the small stack of papers sought by this
15 | motion. (Opp. at 8.) As Mattel well knows, MGA did *not* retract that offer. MGA
16 | has made clear that Right has the option of redacting employee names from the
17 | computer printouts at issue, provided that it leaves the employee control numbers on
18 | the documents so that employees can be differentiated.

19 |     Finally, in its effort to argue that many of the pages in Right's *inch-and-a-half*
20 | *thick* stack of documents do not contain the information MGA seeks, Mattel in fact
21 | demonstrates, by its page-by-page analysis of these papers, that they contain
22 | information relevant to MGA's defenses (*e.g.*, the total numbers of laid-off Mattel
23 | employees who used Right's services, dates on which the employees were laid-off
24 | and used the services, and the levels and, in some cases, the titles of the former
25 | employees). Aside from its apparent effort simply to obstruct MGA's efforts to
26 | discover relevant information, Mattel offers no credible basis on which to block
27 | production of this small handful of documents.

28 |

MGA'S REPLY TO MATTEL'S OPPOSITION IN FURTHER SUPPORT OF MGA'S
MOTION TO COMPEL RIGHT MANAGEMENT CONSULTANTS
-2-

EXHIBIT __3__

PAGE __60__

1

## ARGUMENT

2

I. **THE COURT SHOULD COMPEL RIGHT TO PRODUCE THE SMALL HANDFUL OF RESPONSIVE DOCUMENTS.**

3

4

    A. **Mattel Cannot Render The Requested Discovery Irrelevant By Misconstruing MGA's Arguments Or By Attempting To Rewrite The Relevance Parameters Of Rule 26.**

5

6

    Without coming to grips with the actual relevance of the requested documents

7

to MGA's defenses in this matter, Mattel's opposition seeks to: (i) mischaracterize

8

MGA's relevancy argument as one relating solely to Mattel's "motive to invent a

9

claim," as opposed to the company's long and improper delay in bringing suit; and

10

(ii) read the words "or defense" out of Rule 26 by insisting that the relevance

11

analysis be confined to Mattel's affirmative claims. (*See* Opp. at 5 (mischaracter-

12

izing MGA's relevance argument as being that "lay-offs may somehow show that

13

Mattel had a motive to invent a claim of Bratz ownership"); *id.* at 1 (arguing that

14

layoffs do not "demonstrate that Mattel doesn't really believe it owns the Bratz

15

designs"); *id.* at 6 (asserting layoffs "have no logical bearing on whether Mattel

16

believes its Bratz ownership claims are valid").) To the contrary, as MGA's moving

17

papers make clear, the requested information regarding Mattel layoffs is germane to

18

MGA's *defenses*, specifically whether Mattel sat on its claims as MGA contends.

19

(*See* Motion at 2, 6.)

20

    MGA contends that Mattel's lawsuit is untimely, and that Mattel's delay in

21

bringing suit is explained by the decline in its business as Bratz took market share

22

from Barbie. The information sought by this motion will shed light on the crisis at

23

Mattel that led to layoffs and help explain why Mattel sat on its purported rights for

24

years before finally bringing suit in the hope of ending that crisis. Information

25

regarding "the numbers and titles of employees who were laid off from Mattel and

26

worked with Right," "the class of the employee," the date of layoff and use of

27

Right's services, and in many instances, the "specific job titles for certain laid-off

28

EXHIBIT __3__
PAGE __61__

1 employees" and/or the department in which they worked (Opp. at 7) will help MGA
2 to understand what happened at Mattel during a critical period when Mattel declined
3 to bring suit. Discovery of this unquestionably relevant information is *expressly*
4 permitted under Rule 26. Fed. R. Civ. P. 26(b)(1).

5      Mattel's reliance on cases articulating a supposed "general rule" that a
6 plaintiff's motive in bringing suit is not discoverable – as if this somehow trumped
7 the relevance analysis under Rule 26 – is misplaced. (Opp. at 5.) Indeed, the
8 principal case Mattel cites for this proposition, *Parsons v. Jefferson-Pilot Corp.*, 141
9 F.R.D. 408 (M.D.N.C. 1992), actually *supports* production of the documents
10 requested here. In *Parsons*, the defendant raised, among others, the defenses of
11 laches and unclean hands, and sought documents from both plaintiff *and several*
12 *third parties* relating to the circumstances under which the lawsuit was brought. *Id.*
13 at 410-12. The court *granted* the requested discovery, *including from third parties*,
14 finding the documents relevant to the defendant's defenses:

15      The equitable defenses in this case are based upon assertions that
     plaintiff has acted in a manipulative manner to further her own
16      interests in contesting for control of Jefferson-Pilot. ... [T]he
     Court can decide this issue at trail only on the basis of a record
17      wherein reasonable discovery has been permitted.

18 *Id.* at 416.

19      Like the defendant in *Parsons*, MGA has raised defenses, including statute of
20 limitations and laches, whereby MGA asserts that Mattel impermissibly sat on its
21 purported rights for years before bringing this lawsuit. The discovery sought with
22 this motion, which will shed light on the extent of Mattel's crisis due to falling
23 market share, will help to reinforce MGA's position that this delay was inappropriate
24 and provide context for Mattel's formulation at the fourteenth hour of its alleged
25 ownership over Bratz. Also worth noting is that the *Parsons* court ordered
26 production of the requested discovery even though the burden on the third parties
27 was manifestly far greater than copying and redacting a small handful of documents
28

EXHIBIT **3**

PAGE **62**

1 from a file folder. *See id.* at 411-12 (summarizing six categories of document
2 requests served on plaintiff and third parties). In short, the very case law on which
3 Mattel relies supports production of the documents requested here.

4      Mattel also claims that the materials now sought are irrelevant to Phase I
5 issues because MGA previously identified the relevance to Phase II of the documents
6 sought by the Subpoena. (Opp. at 7-8.) This argument fails for several reasons.
7 First, as MGA has established, the small stack of documents now sought are relevant
8 to Phase I issues, which in itself is dispositive under Rule 26. Second, when MGA
9 asserted that certain materials sought by the Subpoena are relevant to Phase II issues,
10 MGA never represented that the materials were relevant *only* to Phase II. Mattel's
11 assertion to that effect (Opp. at 8:2), with a citation to MGA's counsel's letter dated
12 January 21, 2008, is false. Since that time, MGA has agreed to limit dramatically the
13 scope of documents sought by the Subpoena by postponing production of any e-mail
14 and other responsive documents (which deal with Mattel's policies for terminating
15 employees) until Phase II. (*See* Motion at 1-2.) Thus, while portions of the
16 Subpoena did request documents relevant to Phase II, other portions of the Subpoena
17 sought information related to Phase I issues – of which there is a *one-and-a-half inch*
18 *stack* of responsive documents that Right has identified, but is refusing to produce.

19      Finally, Mattel's protestations of irrelevance ring hollow in light of the
20 staggering amount of third-party discovery Mattel itself has pursued in this case.
21 Mattel has served some *78 document subpoenas* on third parties and has obtained
22 hundreds-of-thousands of pages in response – in addition to the more than four
23 million pages of documents that MGA has produced to Mattel in this matter.
24 (Supplemental Declaration of Lance A. Etcheverry in Support of Motion to Compel
25 ¶ 1.) The fact that Mattel is nonetheless prepared to spend (and force MGA to incur)
26 thousands of dollars in attorneys' fees litigating the production of a small stack of
27
28

EXHIBIT **3**

PAGE **63**

1 | plainly relevant documents speaks volumes about its war-by-attrition approach to
2 | this litigation.

**B.    Mattel's Confidentiality Argument Misstates the Record And Ignores The Court's Protective Order.**

Mattel next bemoans that the small stack of documents MGA seeks contains "the names and other personal information of former Mattel employees who are non-parties to this litigation." (Opp. at 8.) This argument is founded on two falsehoods. Contrary to Mattel's claim that "MGA does not indicate in its motion that it is still willing to accept redacted documents" (Opp. at 8), MGA's papers clearly reiterate that concession and in no way hint at its retraction. (*See* Motion at 1 ("MGA accommodated Right's concerns, *agreeing to the redaction of any confidential information regarding former Mattel employees* and limiting substantially the scope of the subpoena.") (emphasis added); *id.* at 4 ("*MGA agreed to having the names of such employees redacted*, so long as Right's non-descript control number remained so that the individuals could later be differentiated.") (emphasis added).) MGA stands by its offer of having the names of former Mattel employees redacted from the computer printouts.

Even in the absence of this concession, the Protective Order in this case, which MGA provided to Right on January 21, 2008, permits third parties such as Right to designate documents they produce as confidential. (*See* Etcheverry Decl., Ex. 4 at 2 and attachment.). For both of these reasons, any objection to production of the requested documents on confidentially grounds is baseless.

**C.    Mattel Concedes That The Documents Contain The Information That MGA Seeks.**

Finally, Mattel's catalog of the information contained in the disputed documents (Opp. at 7) establishes the relevance of these papers to MGA's defenses. Mattel's description confirms that this small stack of printouts contains "the numbers and titles of employees who were laid off from Mattel and worked with Right," "the

EXHIBIT __3__

PAGE __64__

1  class of the employee," the approximate date of layoff, and in many instances (26

2  pages by Mattel's count) the "specific job titles for certain laid-off employees"

3  and/or the department in which they worked.  (*Id.*)  This information is plainly

4  germane to MGA's theory that Mattel's declining market share and inner turmoil

5  help explain why it waited to file suit long after it had reason to suspect the basis for

6  its claims.  Moreover, even assuming that Mattel has not in any way underestimated

7  the number of pages that contain relevant information under Rule 26, any suggestion

8  by Mattel that the relevance of "only" 26 pages from a small stack of documents

9  renders the entire file folder immune from production (*id.*) is unsupported and

10  plainly wrong.

11                                 **CONCLUSION**

12         For the foregoing reasons, MGA respectfully requests this Court to issue an

13  order compelling Right to produce documents responsive to MGA's Subpoena

14  relating to Phase I issues, specifically the computer printouts that have previously

15  been collected by Right's counsel.

16

17  DATED:  March 13, 2008

18                                           SKADDEN, ARPS, SLATE, MEAGHER &
                                             FLOM, LLP

19

20                                    By:    _____ (TH)

21                                           Raoul D. Kennedy
                                             Attorneys for MGA Entertainment, Inc.

22

23

24

25

26

27

28

1 | THOMAS J. NOLAN (Bar No. 66992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 300 South Grand Avenue
Los Angeles, CA 90071-3144
3 | Telephone: (213) 687-5000
Facsimile: (213) 687-5600
4 | E-mail: tnolan@skadden.com

5 | RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | Four Embarcadero Center, Suite 3800
San Francisco, CA 94111
7 | Telephone: (415) 984-6400
Facsimile: (415) 984-2698
8 | E-mail: rkennedy@skadden.com

9 | Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
10 | (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11 |

12 | **UNITED STATES DISTRICT COURT**

13 | **CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

14 |

15 | CARTER BRYANT, an individual | CASE NO. CV 04-9049 SGL (RNBx)

16 | Plaintiff, | Consolidated with Case No. 04-9059
and Case No. 05-2727

17 | v. |

18 | MATTEL, INC., a Delaware
corporation | **DISCOVERY MATTER**

19 | Defendant. | **PROOF OF SERVICE**

20 |

21 | Consolidated with MATTEL, INC. v.
BRYANT and MGA | **Phase 1:**
Discovery Cut-Off: January 28, 2008

22 | ENTERTAINMENT, INC. v.
MATTEL, INC. | Pre-Trial Conference: May 5, 2008
Trial Date: May 27, 2008

23 |

24 |

25 |

26 |

27 |

28 |

PROOF OF SERVICE

EXHIBIT __3__

PAGE __66__

NO. CV 04-9049 SGL (RNBx)

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 300 South Grand Avenue, Suite 3400, Los Angeles, California 90071.

On **March 13, 2008,** I served the foregoing documents described as:

### SEE ATTACHED DOCUMENT LIST

on the interested parties in this action addressed as follows:

### SEE ATTACHED SERVICE LIST

(X)   (BY PERSONAL SERVICE)   ☒   By personally delivering copies to the person served. (FEDERAL)

☒   I caused such document to be hand delivered to the above addressees. (FEDERAL)

(X)   (BY FEDERAL EXPRESS)

( )   (BY ELECTRONIC MAIL)

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on **March 13, 2008,** in San Francisco, California.

_____          _____
Matthew Bowman                              SIGNATURE
PRINT NAME

PROOF OF SERVICE

2

NO. CV 04-9049 SGL (RNBx)

EXHIBIT   3
PAGE   67

1

### DOCUMENT LIST

2

3

4

(1)      MGA'S REPLY TO MATTEL'S OPPOSITION IN FURTHER SUPPORT OF MGA'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM THIRD PARTY RIGHT MANAGEMENT CONSULTANTS, INC.;

5

6

(2)      DECLARATION OF LANCE A. ETCHEVERRY IN FURTHER SUPPORT OF MGA'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM THIRD PARTY RIGHT MANAGEMENT CONSULTANTS, INC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

PROOF OF SERVICE                                                NO. CV 04-9049 SGL (RNBx)

EXHIBIT __3__

PAGE __68__

1

## SERVICE LIST

2

3   Jon D. Corey, Esq.
    Michael T. Zeller, Esq.
4   John Quinn, Esq.
    Quinn Emanuel Urquhart Oliver &
5   Hedges, LLP
    865 South Figueroa Street, 10th Floor
6   Los Angeles, CA  90017-2543
    (213)  443-3000
7   (213)  443-3100 (Fax)

8   Attorneys for Mattel, Inc
    [Personal Service]
9

John Trinidad, Esq.
John Keker, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA  94111
(415)  391-5400
(415)  397-7188 (Fax)

Attorneys for Carter Bryant
[Federal Express]

10
    Mark E. Overland, Esq.
11  Alexander H. Cote, Esq.
    David C. Scheper, Esq.
12  Overland Borenstein Scheper & Kim
    300 South Grand Avenue, Suite 2750
13  Los Angeles, CA 90071
    (213) 613-4655
14  (213) 613-4656

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

PROOF OF SERVICE

NO. CV 04-9049 SGL (RNBx)

EXHIBIT  3
PAGE  69