# EXHIBIT 4

No. 05-55696

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

MATTEL, INC.,
*Plaintiff-Appellant,*

v.

CARTER BRYANT,
*Defendant-Appellee*

and

MGA ENTERTAINMENT, INC.,
*Defendant in Intervention-Appellee.*

On Appeal From the United States District Court
for the Central District of California, Hon. Nora M. Manella, Judge
Case No. CV 04-9059 NM (RNBx)

**BRIEF OF APPELLEES CARTER BRYANT AND
MGA ENTERTAINMENT, INC.**

| | | |
|---|---|---|
| O'MELVENY & MYERS LLP | O'MELVENY & MYERS LLP | LITTLER MENDELSON PC |
| DALE M. CENDALI | JONATHAN D. HACKER | ROBERT F. MILLMAN |
| DIANA M. TORRES | 1625 Eye St., N.W. | DOUGLAS A. WICKHAM |
| 400 S. Hope Street | Washington, D.C. 20006 | KEITH A. JACOBY |
| Los Angeles, CA 90071 | Telephone: (202) 383-5300 | 2049 Century Park East |
| Telephone: (213) 430-6000 | Facsimile: (202) 343-1758 | Los Angeles, CA 90067 |
| Facsimile: (213) 430-6407 | | Telephone: (310) 553-0308 |
| *Attorneys for* | *Attorneys for* | Facsimile: (310) 553-5583 |
| *MGA Entertainment, Inc.* | *MGA Entertainment, Inc.* | *Attorneys for Carter Bryant* |

EXHIBIT  4
PAGE  70

# TABLE OF CONTENTS

Page

INTRODUCTION .......................................................................................................... 1

JURISDICTION ............................................................................................................ 3

STATEMENT OF THE ISSUES ................................................................................... 3

STATEMENT OF THE CASE ...................................................................................... 4

STATEMENT OF FACTS ............................................................................................. 6

    Background .............................................................................................................. 6

    Mattel Files Suit ..................................................................................................... 7

    Mattel Pleads Ignorance To Avoid Federal Jurisdiction ...................................... 10

    The Truth Begins To Emerge ............................................................................... 11

    Bryant's Second Removal ...................................................................................... 14

    MGA Intervenes ................................................................................................... 15

    The District Court Denies Mattel's Remand Motion .......................................... 16

SUMMARY OF ARGUMENT ................................................................................... 19

STANDARD OF REVIEW ......................................................................................... 21

ARGUMENT .............................................................................................................. 22

I.    THE DISTRICT COURT HAS FEDERAL-QUESTION
    JURISDICTION .............................................................................................. 22

    A.    Federal-Question Jurisdiction Exists Because Mattel's
        State-Law Claims Are Completely Preempted By The
        Federal Copyright Act ...................................................................... 22

        1.    The Copyright Act Completely Preempts State-
            Law Claims That Involve Copyrightable Works
            And Seek To Vindicate Rights Protected By
            Copyright Law .................................................................. 23

EXHIBIT 4
PAGE 71

**TABLE OF CONTENTS**
(continued)

Page

2.   Mattel's State-Law Claims Are Preempted By
§ 301(a) And Thus Converted To Federal Claims.........25

    a.   The Works At Issue In Mattel's Claims Are
Within The Subject Matter Of Copyright.........26

    b.   Mattel's Claims Seek To Vindicate Rights
Equivalent To Rights Protected By The
Copyright Act.........27

    c.   Mattel's Counter-Arguments Lack Merit.........30

B.   Post-Removal Evidence May Be Considered To Clarify
A Complaint For Purposes Of Establishing Its
Removability.........36

II.   THE DISTRICT COURT HAS DIVERSITY JURISDICTION.........40

A.   MGA's Intervention Did Not Destroy The Court's
Diversity Jurisdiction Because MGA Is Not An
Indispensable Party To Mattel's Claims Against Bryant.........41

B.   Section 1367 Does Not Preclude The Court's Continuing
Exercise Of Diversity Jurisdiction.........51

CONCLUSION.........61

-ii-

EXHIBIT  4
PAGE  72

believe its claims required the naming of MGA as a defendant. Because MGA was not indispensable, the diversity jurisdiction that attached when Bryant removed Mattel's complaint was not affected by the post-removal event of MGA's intervention, and the supplemental jurisdiction statute, 28 U.S.C. § 1367, does nothing to change that result.

The order denying remand should be affirmed.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1332 (diversity), for the reasons explained below. This Court has jurisdiction over the order denying remand under 28 U.S.C. § 1292(b), pursuant to which the Court may consider any issue encompassed by the order. Mattel Br. 7-8.

## STATEMENT OF THE ISSUES

I.   Whether the district court had federal-question jurisdiction over Mattel's state-law claims on the ground that they are completely preempted by the Copyright Act.

II.   Whether the diversity jurisdiction that attached when Bryant removed Mattel's action continued to exist after the post-removal intervention of MGA, against whom Mattel asserts no claim.

3

EXHIBIT   4
PAGE   73

consider post-removal evidence to clarify Mattel's allegations, the court held that it was "constrained" to conclude that federal-question jurisdiction was lacking. If this Court corrects that simple mistake, federal jurisdiction follows as a matter of course. Because it is so straightforward, we begin with this alternative ground for affirming the court's order denying remand.

See *Tanaka v. University of Southern California*, 252 F.3d 1059, 1062 (9th Cir. 2001) (court may affirm on any ground supported by the record).

## I. THE DISTRICT COURT HAS FEDERAL-QUESTION JURISDICTION

### A. Federal-Question Jurisdiction Exists Because Mattel's State-Law Claims Are Completely Preempted By The Federal Copyright Act

Although pled in the language of state law, Mattel's allegations in fact state claims governed exclusively by the Copyright Act. As such, Mattel's complaint effectively states a federal copyright claim and, under settled law, is removable on that basis.

In determining whether a complaint is properly removed to federal court, courts normally do not look beyond the face of the complaint. The "well-pleaded complaint" rule is, however, subject to an important exception: "'[W]hen a federal statute wholly displaces a state-law cause of action through complete preemption,' the state claim can be removed," because when a state-law claim is "completely preempted," it is "'in reality

22

EXHIBIT 4
PAGE 74

based on federal law.'" *Aetna Health Co. v. Davila*, 124 S. Ct. 2488, 2495 (2004) (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)).

As explained below, Mattel's state-law claims are completely preempted by the federal Copyright Act.

1.  *The Copyright Act Completely Preempts State-Law Claims That Involve Copyrightable Works And Seek To Vindicate Rights Protected By Copyright Law*

Section 301(a) of the federal Copyright Act "broadly preempts state-law claims." *Ritchie v. Williams*, 395 F.3d 283, 285 (6th Cir. 2005).

Pursuant to § 301(a), the Copyright Act "exclusively governs a claim when: (1) the particular work to which the claim is being applied is within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004); *accord Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998); *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987).

In addition to the broad, exclusive federal cause of action established by § 301, the Copyright Act also vests federal courts with exclusive jurisdiction over such actions. *See* 28 U.S.C. § 1388(a) (federal-court

EXHIBIT 4
PAGE 75

jurisdiction in copyright cases "shall be exclusive of the courts of the states").

According to every circuit that has addressed the issue, the broadly preemptive force of § 301(a) and the exclusive federal-court jurisdiction established by § 1388(a) combine to give the Copyright Act completely preemptive force, such that any state-law claim satisfying the two-part test for preemption under § 301(a) is effectively converted into a federal claim for removal purposes. *See Ritchie*, 395 F.3d at 285 (6th Cir.); *Briarpatch*, 373 F.3d at 305 (2d Cir.); *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 232 (4th Cir. 1993).[6]  Although this Court has not squarely addressed the question, district courts within this Circuit have uniformly reached this conclusion. *See Chesler/Perlmutter Prods., Inc. v. Fireworks Entm't Inc.*, 177 F. Supp. 2d 1050 (C.D. Cal. 2001); *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1123 (N.D. Cal. 2001); *Metramo v. Fox Broad Co., Inc.*, 2000 U.S. Dist. LEXIS 7662, at *3 (C.D. Cal. April 24, 2000); *Worth v.*

---

[6] *See also Beneficial*, 539 U.S. at 8 (federal statutes completely preempt state-law claims when they "provide[] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action"). Notably, the completely preemptive force of the Copyright Act is beyond doubt under the *Beneficial* test: the Copyright Act not only provides "procedures and remedies" for copyright claims, it confers *exclusive jurisdiction* in the federal courts over such claims. 17 U.S.C. § 1388(a).

EXHIBIT 4
PAGE 76

*Universal Pictures, Inc.*, 5 F. Supp. 2d 816, 821 (C.D. Cal. 1997); *Dielsi v. Falk*, 916 F. Supp. 985, 993 (C.D. Cal. 1996).[7]

Mattel's state-law claims easily satisfy the two-part test for preemption under § 301(a). They are thus completely preempted and subject to removal.

2.      <u>*Mattel's State-Law Claims Are Preempted By § 301(a) And Thus Converted To Federal Claims*</u>

       a.      *The Works At Issue In Mattel's Claims Are Within The Subject Matter Of Copyright*

The "subject matter" prong of § 301(a) preemption "is satisfied if the claim applies to a work of authorship fixed in a tangible medium and falling within the ambit of one of the categories of copyrightable works." *Briarpatch*, 373 F.3d at 305. Mattel's claims easily satisfy that requirement.

Contrary to its representations to the district court, Mattel now concedes on appeal that its claims involve the rights to the drawings that inspired the creation of the "Bratz" dolls, and that this has been true since the day it filed its complaint: "[A]s the parties and the court now understand the matter, the state-law claims contained in Mattel's April 2004 Complaint place in controversy rights to Bratz that MGA held in April 2004." Mattel Br. 38;

---

[7] *Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285 (11th Cir. 2004), appears to recognize complete preemption under the Copyright Act, *id.* at 1295, while holding that the particular work at issue there did not fall within the subject matter of copyright, *id.* at 1295-97.

EXHIBIT 4
PAGE 71

*see also id.* at 30, 32, 35.

The rights to "Bratz"-related drawings at issue in Mattel's complaint plainly are subject to protection under § 102 of the Act, which protects "original works of authorship fixed in any tangible medium of expression," including "pictorial, graphic and sculptural works," 17 U.S.C. § 102, which encompasses both the physical design and three-dimensional structure of children's dolls, *see, e.g., Christian v. Mattel, Inc.*, 286 F.3d 1118, 1123 (9th Cir. 2002). Further, "'effort expended to create tangible works of authorship is within the scope of copyright protection'" as well. *Del Madera*, 820 F.2d at 976.

Accordingly, Mattel's claims involve subject matter within the ambit of the Copyright Act.

b.      *Mattel's Claims Seek To Vindicate Rights Equivalent To Rights Protected By The Copyright Act*

The second prong of § 301(a) is met when a state-law claim seeks to vindicate rights "equivalent to any of the exclusive rights" established by § 106 of the Act. *Del Madera*, 820 F.2d at 976. Thus "the state law claim must involve acts of reproduction ... distribution or display" of the work at issue. *Briarpatch*, 373 F.3d at 305. For such a claim to "survive preemption," it must *also* "protect rights that are qualitatively different from the copyright rights," *i.e.*, it must have an "extra element" that "changes the

EXHIBIT 4
PAGE 78

nature of the action" in a meaningful respect. *Del Madera*, 820 F.2d at 976; *see Ritchie*, 395 F.3d at 287 & n.3 ("extra element" must be "meaningful" not "illusory"); *Briarpatch*, 373 F.3d at 306 ("we take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim").

There is no doubt that Mattel's purported state-law claims seek to vindicate rights equivalent to rights protected by the Copyright Act. Indeed, *Mattel itself admitted as much below*, when it moved to dismiss Bryant's federal suit for a declaration of "noninfringement" of Mattel's copyrights on the grounds that Bryant's suit sought to adjudicate the same issues raised by Mattel's nominally state-law action. SER 46. Similarly, Mattel responded to MGA's own federal action against Mattel involving "Bratz"-related rights by asserting a relation to Mattel's action because both cases "call for a determination of substantially the same or substantially identical questions of law or fact, involve the same or substantially the same parties or property." SER 446-448. [8] These concessions acknowledge that Mattel's state-law claims assert what is, in effect, an infringement action, alleging that the exploitation by others of the drawings underlying the "Bratz" dolls infringes Mattel's exclusive rights to the use of those drawings. As noted

---

[8] MGA's action involves allegations of similarity under the Lanham Act.

EXHIBIT 4
PAGE 79

above, *supra* at 7-8, Mattel's complaint alleges that Bryant "wrongfully converted" Mattel's "intellectual property and intangible property" by "asserting ownership thereto and by appropriating and using" it and "provid[ing] it to others." ER 37-38, 43. Mattel's subsequent statements have established that the "intellectual property and intangible property" identified in the complaint constitute the rights to the "Bratz" drawings. And the damages, royalties and profits Mattel demands from Bryant are the damages, royalties and profits Bryant earned from MGA's use of the "Bratz" drawings. ER 44.

Courts in this Circuit and elsewhere routinely hold that state-law conversion claims seeking damages for the misappropriation and use of intangible intellectual property – as opposed to possession of the tangible work itself – seek to vindicate rights equivalent to those protected by the Copyright Act and have no qualitatively distinguishable elements. *See Idema v. Dreamworks, Inc.,* 162 F. Supp. 2d 1129, 1191 (C.D. Cal. 2001); *Firoozye,* 153 F. Supp. 2d at 1130; *Worth,* 5 F. Supp. 2d at 823; *Dielsi,* 916 F. Supp. at 992; *accord Ehat v. Turner,* 780 F.2d 876, 878 (10th Cir. 1985); *Harper & Row Publishers, Inc. v. Nation Enters.,* 723 F.2d 195, 200-01 (2d Cir. 1983). That rule controls here. Mattel's conversion claim seeks to vindicate and obtain monetary relief for the misappropriation and use of

EXHIBIT 4
PAGE 80

Mattel's alleged rights to the intangible intellectual property underlying the "Bratz" dolls – alleged rights that, if they exist at all, Mattel could vindicate under the Copyright Act.

Mattel's unjust enrichment claim likewise asserts that Bryant "unfairly used and diverted" Mattel's property rights, resulting in Bryant's unjust enrichment, through royalties from the sale of "Bratz" dolls. ER 42; *see supra* at 7-8. That claim is indistinguishable from the unjust enrichment and unfair competition claims held preempted in *Del Madera*. In that case, as here, the plaintiff claimed that the defendant created work in conjunction with the plaintiff and then took the work with her and provided it to a competitor, who used the work in its own business. Plaintiff argued that the unjust enrichment and unfair competition claims arising out of that conduct were qualitatively different from a copyright claim, but this Court held that allegations relating to plaintiff's ownership of the initial copyright in the work, as well as its misappropriation and use by defendants, were "part and parcel" of the rights protected by the Copyright Act. *Del Madera*, 820 F.2d at 977; *see also Firoozye*, 153 F. Supp. 2d at 1128 (plaintiff's "unjust enrichment claim, which at its core alleges that the defendants unfairly benefited from their unauthorized use of [protected work], is equivalent to the rights protected in … the Copyright Act").

EXHIBIT __4__
PAGE __81__

Mattel's breach of fiduciary duty and breach of loyalty claims are also preempted, because they assert that Bryant violated his duties by "using" Mattel's alleged "property" in the "Bratz" drawings for his and MGA's financial benefit. ER 40, 41-42. *See Del Madera*, 829 F.2d at 977 (fiduciary-breach-based state claim premised on duty not to misappropriate intellectual property is preempted); *Idema*, 162 F. Supp. 2d at 1193 (same).

c.       *Mattel's Counter-Arguments Lack Merit*

In sum, it is clear that one or more of Mattel's state-law claims is completely preempted, justifying removal of the entire complaint pursuant to 28 U.S.C. § 1441(c). *See Rosciszewski*, 1 F.3d at 232. The two counter-arguments Mattel suggests are meritless.

*First*, Mattel argues that complete preemption "requires a showing that 'the federal statute *wholly displaces* the state-law cause of action,' such that it is *impossible* to state a claim without ultimately relying on federal law," and that "it is simply inaccurate to say that Mattel could not state a California-law claim for conversion without resting upon a theory that Bryant converted a Mattel *copyright*." Mattel Br. 49 n.19 (quoting *Beneficial Life*, 539 U.S. 8). Because the complaint *also* alleges that Bryant converted "tangible property, vendor information, and the services of his co-workers to assist MGA and himself on the "Bratz" project," Mattel contends,

30

EXHIBIT   4
PAGE   82

## CONCLUSION

For the foregoing reasons, the district court's order denying remand should be affirmed.

Dated: August 26, 2005

O'MELVENY & MYERS LLP                    LITTLER MENDELSON, P.C.

By: _Diana M Torres by own submission_          By: _Keith A Jacoby by own submission_
    Diana M. Torres                                  Keith A. Jacoby
Attorneys for Defendant-Intervenor           Attorneys for Defendant Carter
MGA Entertainment, Inc.                           Bryant

61

EXHIBIT 4
PAGE 83

# EXHIBIT 5

RECEIVED

APR 3 0 2007

DALE M. CENDALI (admitted *pro hac vice*)
DIANA M. TORRES (S.B. #162284)
JAMES P. JENAL (S.B. # 180190)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: jjenal@omm.com

PATRICIA GLASER (S.B. #55668)
CHRISTENSEN, GLASER, FINK, JACOBS,
WEIL & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Telephone: (310) 553-3000
Facsimile: (310) 557-9815

Attorneys for MGA Entertainment, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

v.

MATTEL, INC., a Delaware Corporation,

Defendant.

CONSOLIDATED WITH
MATTEL, INC. v. BRYANT and
MGA ENTERTAINMENT, INC. v.
MATTEL, INC.

Case No.  CV 04-09049 SGL (RNBx)
(consolidated with CV 04-9059 & 05-2727)

DISCOVERY MATTER

MGA ENTERTAINMENT INC.'S
OPPOSITION TO MATTEL, INC.'S
MOTION TO COMPEL MGA TO
PRODUCE WITNESSES FOR
30(B)(6) AND FOR SANCTIONS
DEPOSITION PURSUANT TO RULE

[To be heard by Discovery Master Hon.
Edward Infante (Ret.) Pursuant to the
Court's Order of December 6, 2006]

Hearing Date:  T.B.D.
Time:  T.B.D.
Location:  T.B.D.

1-A2:839382.1

EXHIBIT 5
PAGE 84

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................. 1

II.  FACTUAL BACKGROUND ............................................................. 1

III. ARGUMENT ................................................................................... 3

    A.   Mattel's Motion To Compel Should Be Denied As Moot Because MGA Has Already Designated Or Offered To Designate Witnesses For 46 of Mattel's 54 Topics Of Deposition Testimony ........................................................... 4

    B.   Mattel's Motion To Compel For The Few Remaining Topics Should Also Be Denied ....................................................... 5

        1.   Mattel's Motion to Compel on Topic 24, Regarding Any Fee Agreements Between MGA And Bryant, Seeks Information That is Privileged And Should Be Denied. ......... 5

        2.   Mattel's Motion to Compel on Topic 25, Related to MGA's Revenue And Profit Information, Should Also Be Denied ................................................................. 6

        3.   Mattel's Motion to Compel Testimony on MGA's Net Worth and Expert Analysis (Topics 26 and 41) Should Be Denied As Premature Because It Seeks Testimony That is Properly The Subject of Expert Discovery ........................ 7

        4.   Mattel's Motion to Compel on Topics 31 and 33, Related to Prior Work By Unidentified Individuals and Patents, Should Be Denied Because Such Information is Not Relevant To This Action ........................................... 10

        5.   Mattel's Motion to Compel Testimony on Topic 34, Which Relates to Prior Testimony of Unidentified Individuals, Should Also Be Denied. ........................... 11

    C.   Mattel's Arguments Regarding Application of Section 2019.210 Are Improper As This Issue Is Currently Pending Before Judge Larson. ....................................................................... 12

    D.   Mattel's Requests For Sanctions Should Be Denied. ............. 14

IV.  CONCLUSION ............................................................................. 14

-i-

EXHIBIT 5
PAGE 85

## TABLE OF AUTHORITIES

|  | Page |
|---|---|

### CASES

*Advanced Modular Sputtering, Inc. v. Superior Court,*
  132 Cal. App. 4th 826 (2d Dist. 2005)........................................................ 13

*Cobb v. Superior Court,*
  99 Cal. App. 3d 543 (1980) ......................................................................

*Computer Economics Inc. v. Gartner Group Inc.,*
  50 F. Supp. 2d 980 (S.D. Cal 1999)......................................................... 8

*Covington v. Semones,*
  2007 WL 1052460 (W.D. Va. 2007)...................................................... 13, 14

*Diodes, Inc. v. Franzen et al.,*
  260 Cal. App. 2d 244 (2d Dist. 1968)........................................................ 12

*Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc,*
  2007 WL 273949 (E.D. Cal. 2007)............................................................. 13

*KL Group v. Case, Kay & Lynch*
  829 F.2d 909 (9th Cir. 1987)..................................................................... 13

*Rupe v. Fourman,*
  532 F. Supp. 344 (S.D. Ohio 1981) .......................................................... 6

*Star Editorial, Inc. v. U.S. Dist. Ct. for the Central Dist. of California,*
  7 F. 3d 856 (9th Cir. 1993)......................................................................... 8

*Vermont Microsystems, Inc. v. Autodesk, Inc,*
  88 F.3d 142 (2d Cir. 1996)......................................................................... 6

### STATUTES

Federal Rule of Civil Procedure 26(a)(2)(C).................................................... 9

Cal. Bus. & Prof. Code § 6149 ....................................................................... 6

Cal. Civ. Code § 3295(c)................................................................................. 8

Cal. Code Civ. Proc. § 2019.210.................................................................... 13

### RULES

Federal Rule of Civil Procedure 26(a)(2)(C).................................................. 10

Federal Rule of Evidence 501 ......................................................................... 7

-ii-

EXHIBIT S
PAGE 80

# INTRODUCTION

Mattel, Inc.'s ("Mattel") 80-page motion and approximately 575 pages of accompanying declarations and exhibits, is an attempt to give the misleading impression to the Court, through volume, rather than substance, that MGA Entertainment, Inc. ("MGA") is refusing to offer witnesses in response to Mattel's overreaching 30(b)(6) notices. Contrary to Mattel's insinuation, however, MGA has designated and provided deposition dates for all but a few objectionable topics on which the parties disagree, or where Mattel had agreed to provide additional information so that MGA could designate an appropriate witness. When MGA pointed this out to Mattel and asked Mattel to withdraw its motion as to everything but the few topics on which the parties genuinely disagree, so as to avoid burdening the Court with these issues, however, Mattel refused.

For the reasons discussed herein, Mattel's motion to compel and for sanctions should be denied.

# FACTUAL BACKGROUND

On March 15 and 16, 2007, counsel for MGA met and conferred with Mattel regarding Mattel's First Rule 30(b)(6) Notice ("First Notice") and Second Rule 30(b)(6) Notices ("Second Notice") of Deposition. During the conference of counsel MGA attempted to reach agreement with regard to the topics the parties disagreed on, as well as to seek clarification on issues related to various other topics. (*See* Declaration of Yvonne L. Garcia ("Garcia Decl.") filed concurrently, ¶ 2.) MGA repeatedly requested that Mattel consider the concerns raised by MGA, but Mattel, even with respect to the issues that it had explicitly agreed to contemplate further, never responded. (*Id.* ¶ 6.)

Thereafter, on March 21, 2007, the parties discussed the upcoming deposition of Paula Garcia. In particular, MGA informed Mattel that very few documents had been produced by Mattel related to work Mattel claims Ms. Garcia

LA2-829382.1

- 1 -

EXHIBIT ___5___
PAGE ___87___

1  did while at Mattel in connection with "Diva Starz," and that MGA has not seen

2  any such documents other than a few produced in unrelated litigation. (See

3  Declaration of Diana M. Torres ("Torres Decl.") filed concurrently, ¶ 2.) MGA

4  also stated that although the Protective Order in this case allows the parties to show

5  a witness any document that she would have seen in the ordinary course of

6  business, many of the "Diva Starz" documents produced by Mattel were drawings

7  marked "Attorney's Eyes Only" and did not indicate to whom they were circulated.

8  Thus, MGA could not properly prepare Ms. Garcia for her deposition with regard to

9  this topic. (Id.) Mattel, thus volunteered to produce any "Diva Starz" documents

10 reflecting work by Ms. Garcia and to identify the documents that Mattel contends

11 Ms. Garcia saw or otherwise had access to so that MGA could prepare her for

12 deposition. (Id.)

13     Thereafter, on April 5, 2007, MGA sent a letter to Mattel in follow up to the

14 conversation between the parties on March 21. MGA again inquired as to Mattel's

15 agreement to identify documents it contends Ms. Garcia saw or to which she had

16 access at Mattel related to "Diva Starz," as Mattel had not yet produced or

17 identified such additional documents. (Id. ¶ 3 & Ex. 1.) MGA also requested that

18 the parties move Ms. Garcia's deposition to some time during the week of May 9 -

19 May 17, 2007, because her current deposition date posed a conflict for Bryant's

20 counsel. (Id.) MGA also noted that this would allow Mattel further time to provide

21 the documents or Bates numbers for documents related to "Diva Starz" as it had

22 previously agreed. (Id.) Mattel thereafter disputed that it had agreed to identify the

23 documents it contends Ms. Garcia saw or had access to at Mattel related to "Diva

24 Starz," but on April 12, 2007, the date on which Ms. Garcia's deposition was

25 previously scheduled, Mattel agreed to allow MGA to show Ms. Garcia any of the

26 documents produced by Mattel related to "Diva Starz" in preparing her for

27 deposition. (Id. ¶¶ 4-5 & Exs. 2 & 3.)

28     During the meeting on April 12, MGA and Mattel also conferred regarding

LA2:829382.1

- 2 -

EXHIBIT 5
PAGE 88

1   MGA's designation of witnesses in response to Mattel's First and Second Notices.

2   In particular, MGA's counsel informed Mattel that a letter had already been drafted

3   providing witness designations with respect to the majority of categories in Mattel's

4   Notices. (*Id.* ¶ 6.) MGA thus asked Mattel to notify MGA if the letter sent to

5   Mattel the following morning designating its witnesses was inadequate and Mattel

6   needed a further response before filing a motion. (*Id.*) The following morning,

7   April 13, 2007, MGA provided Mattel with designees on the majority of topics

8   Mattel had noticed for deposition and indicated that it would be designating prior

9   deposition testimony for a few other categories, as the parties agreed. (*Id.* ¶ 7 &

10  Ex. 4.) (Pursuant to the Discovery Master's order, the date for designating prior

11  testimony is not until May 15, 2007). In addition, MGA indicated that it would

12  notify Mattel the following business day of the identities of any remaining

13  designees. (*Id.*) In response, Mattel filed the instant motion, as if none of the meet

14  and confer process had ever occurred.

15      Thereafter, on Monday, April 16, 2007, MGA sent another letter to Mattel,

16  with a small number of additional designations for the topics in Mattel's Second

17  Notice on which the parties agreed, and provided deposition dates for the witnesses

18  for which no dates had previously been offered. (*Id.* ¶ 8 & Ex. 5.) MGA also

19  offered to designate Ms. Garcia as to the remaining topics in Mattel's First Notice

20  and to produce Ms. Garcia for two days of deposition, if Mattel agreed to allow

21  MGA to depose one of its similarly situated 30(b)(6) designees. (*Id.* ¶ 8, Ex. 5.)

22  Believing the matter to now be moot, MGA asked Mattel to withdraw its motion as

23  to the topics for which it had designated a witness, so as to avoid burdening the

24  Court. Mattel refused. (*Id.* ¶ 8 & Ex. 6.)

25  **ARGUMENT**

26      Contrary to Mattel's motion, MGA has already designated witnesses for all

27  but a few topics on which the parties disagree, or on which MGA has been awaiting

28  clarification from Mattel to enable MGA to designate an appropriate witness. For

EXHIBIT ___
PAGE ___

the reasons set forth below, Mattel's motion to compel should be denied.

A. **Mattel's Motion To Compel Should Be Denied Or Offered As Moot Because MGA Has Already Designated Or Offered To Designate Witnesses For 46 Of Mattel's 54 Topics Of Deposition Testimony**

As Mattel is well aware, MGA designated or offered to designate witnesses and provide deposition dates for all eight topics noticed in Mattel's First Notice and all but a few of the 46 topics in Mattel's Second Notice on which the parties disagree or where MGA was waiting for Mattel to provide clarification.

On the Morning of Friday, April 13, 2007, prior to Mattel filing its 80-page motion, MGA provided Mattel with designees on the majority of topics Mattel had noticed for deposition. In particular, MGA designated witnesses on topic numbers: 1-8, 10, 12-15, 22-23, 29-30, 36, 38-40 and 42-46. MGA also stated that it would designate prior testimony as to a variety of topics, including: 9, 11, 16-18, 20 and 35. In addition, MGA stated that it would notify Mattel by Monday, April 16, 2007, who, if anyone, MGA would be designating for the remaining topics, as well as whether Ms. Garcia would be designated on the remaining topics set forth in Mattel's First Notice. (*See* Torres Decl. ¶ 7 & Ex. 4.)

The following Monday, as promised, MGA designated witnesses and provided deposition dates for all of the remaining topics on which the parties agreed. In particular, MGA offered to designate Ms. Garcia on the remaining topics in Mattel's First Notice, subject to an agreement with respect to the amount of time for the deposition, and designated several witnesses on the remaining topics in Mattel's Second Notice, including topics: 19, 21, 25,[1] 27-28, 33,[2] and 37. MGA

LA2:829382.1

- 4 -

---

[1] MGA designated Eric Villete as MGA's 30(b)(6) witness for topic number 25 for revenues and costs from "Bratz" prior to December 31, 2001. With regard to MGA's profits from "Bratz," MGA stated that such information has not yet been calculated and is a subject of expert testimony, not percipient witness testimony. Additionally, with regard to MGA's revenues or costs for "Bratz" after December 31, 2001, MGA stated that this topic is premature and requested to meet and confer to negotiate the timing of questioning as to this subject, which Mattel itself agreed was appropriate during the meet and confer. (*See* Torres Decl., ¶ 8 & Ex. 5).

[2] MGA designated Bryan Armstrong as its 30(b)(6) witness for topic 33 as to trademarks

EXHIBIT 5
PAGE 90

1   further stated that it would be designating prior testimony for topic 32. (*Id.*)

2   Finally, MGA provided deposition dates for the witnesses it had designated for

3   Mattel's First and Second Notices, to the extent they had not been provided

4   previously. (*Id.*)  The only topics on which MGA declined to designate a witness

5   were Topics 24, 26, 31, 34 and 41.

6        Although MGA had already designated witnesses as to the vast majority of

7   Mattel's topics, and had stated that it would provide additional designees the

8   following business day, Mattel nonetheless filed the instant motion, claiming that

9   MGA had refused wholesale to provide witnesses for deposition. Moreover, even

10  though MGA provided additional designations and dates the following business

11  day, Mattel refused to withdraw any portion of its motion.

12       In sum, of the 54 topics noticed by Mattel, the only topics as to which no

13  witness has been designated and no dates have been offered are topics 24, 26, 31,

14  34 and 41.  Accordingly, with respect to the topics for which MGA has designated

15  a witness and provided dates for deposition, Mattel's motion to compel is improper

16  and should be denied as moot.

17  **B.    Mattel's Motion To Compel For The Few Remaining Topics**
18        **Should Also Be Denied**

19       The remaining topics for which MGA has not agreed to provide witnesses

20  seek testimony that is privileged, not relevant to the present litigation, or is properly

21  the subject of expert testimony and is thus premature.  Accordingly, Mattel's

22  motion to compel should be denied.

23            1.    **Mattel's Motion to Compel on Topic 24, Regarding Any Fee**
24                  **Agreements Between MGA And Bryant, Seeks Information**
                    **That is Privileged And Should Be Denied**

25       Mattel's Topic 24 seeks testimony related to any indemnification or fee

26  arrangements between MGA and Bryant.  In support of its request, Mattel argues

27  and copyrights only. (*Id.*)

28

EXHIBIT ___5___
PAGE ___91___

1  that such information is relevant to show bias, and that the Discovery Master

2  already determined such information was relevant.  As this Court is well aware,

3  Bryant was ordered to produce all *non-privileged* documents related to its fee

4  arrangements. [3]  As MGA has repeatedly informed Mattel, the only non-privileged

5  agreement responsive to Topic 24 is the original contract between Bryant and

6  MGA, signed on October 4, 2000, and dated "as of" September 18, 2000.  Notably,

7  MGA has already stated that it intends to designate prior deposition testimony for

8  Topic 18, which relates to Bryant's agreements and contracts with MGA.  Bryant's

9  fee agreements, however, are privileged under California law, which is applicable

10  to this diversity action. [4]  Moreover, such information is not relevant to any claim or

11  defense in this litigation and has no bearing on any potential "bias" because there is

12  no dispute that Bryant's interests in this case are aligned with those of MGA, and

13  that Bryant is "biased" in that sense.  In fact, as MGA previously informed the

14  Discovery Master, MGA and Bryant previously offered to stipulate to that "bias." [5]

15  Accordingly, Mattel's motion to compel as to Topic 24 should be denied.

16          **2.    Mattel's Motion to Compel on Topic 25, Related to MGA's
                    Revenue And Profit Information, Should Also Be Denied**

17

18          Mattel's motion to compel designation of a witness for Topic 25 concerning

19  MGA's revenues and profits is surprising given that Mattel and MGA already

20  agreed to postpone designation for that topic until a later date.  Mattel's instant

21  motion is an attempt to go back on that agreement.  During the conference of

22

23  [3]  *See* Order Granting Mattel's Motion to Compel Production of Documents, dated January
24  25, 2007, at 12.
25  [4]  *See* Cal. Bus. & Prof. Code §6149; *Star Editorial, Inc. v. U.S. Dist. Ct. for the Central
     Dist. of California*, 7 F. 3d 856, 859 (9th Cir. 1993) (citing Federal Rule of Evidence 501
     for the proposition that state law on privilege applied where a state law action was
26  removed to federal court based on diversity of citizenship); *KL Group v. Case Kay &
     Lynch*, 829 F.2d 909, 918 (9th Cir. 1987) ("The availability of the attorney-client privilege
     in a diversity case is governed by state law.")
27  [5]  *See* Declaration of Diana M. Torres filed in Support of MGA's Opposition to Mattel's
     Motion to Compel Production of Documents and Interrogatory Answers, dated February
     20, 2007, ¶ 14.

28

EXHIBIT  S
PAGE  92

1   counsel on March 15 and 16, 2007, MGA explained that it has compiled revenue

2   and profit information regarding first-generation "Bratz," but that it has yet to

3   compile such information regarding the other products at issue in the litigation

4   because MGA does not keep such information in the normal course of business.

5   (*See* Garcia Decl. ¶ 3.) MGA assured Mattel, however, that it is currently in the

6   process of compiling the remaining revenue and profit information. (*Id.*) MGA

7   offered to designate a witness to testify regarding the revenue and profit

8   information for first-generation "Bratz," and then designate a witness to testify

9   regarding the revenue and profit information for subsequent products once that

10  information became available. (*Id.*) Mattel declined MGA's proposal, but agreed

11  instead to allow MGA to designate a witness for Topic 25 at a later date. (*Id.*)

12      Now, after MGA has already relied upon Mattel's representations during the

13  meet and confer, Mattel asks the Discovery Master to compel MGA to designate a

14  witness for Topic 25, while failing to mention the agreement previously reached.

15  Mattel's decision to move on this topic, if granted, would render moot the entire

16  meet and confer process. Mattel should not be rewarded for this tactic and its

17  motion as to Topic 25 should be denied.

18      **3.   Mattel's Motion to Compel Testimony on MGA's Net Worth**
        **and Expert Analysis (Topics 26 and 41) Should Be Denied**
19      **As Premature Because It Seeks Testimony That is Properly**
        **The Subject of Expert Discovery**
20

21      Mattel argues that MGA should be compelled to produce witnesses to testify

22  as to topics that are properly the subject of expert discovery, and on which Mattel

23  has itself refused to provide discovery on the grounds that such discovery is

24  premature. Mattel should not be allowed to have it both ways.

25      Mattel first argues that MGA should be compelled to designate a witness for

26  Topic 26, which seeks testimony as to MGA's net worth. In support of its

27  argument, Mattel claims that information related to MGA's net worth is relevant to

28

L42/829382.1

-7-

EXHIBIT   5
PAGE   93

1    its claim for punitive damages. Mattel's request is clearly premature. As this Court

2    is no doubt aware, the ownership phase of this case is set to go to trial in February

3    2008, the outcome of which the District Court has already indicated will likely

4    affect the contours of this case.[6]  Notably, Mattel has not asserted a claim for

5    punitive damages against MGA for its claims based on Bryant's alleged breach of

6    contract, breach of fiduciary duty and breach of the duty of loyalty. Rather,

7    Mattel's claim for punitive damages is only relevant to the second phase of the

8    litigation between the parties, which is scheduled for trial in July 2008. Similar to

9    cases where a court orders bifurcation, requiring MGA to designate a witness

10   regarding its net worth at this stage of the litigation is premature.[7]  There will be

11   ample time after the determination as to ownership of "Bratz" in the first trial for

12   Mattel to take discovery on MGA's net worth.

13        Moreover, MGA is a private company and has no reporting requirements

14   which would require it to gather and disclose information on its net worth, and does

15   not compile such information in the ordinary course of business.  Because MGA

16   does not calculate its net worth in the ordinary course of business, it does not know

17   its net worth and thus has no percipient witness who can testify on this topic.  *If*

18   MGA decides to calculate its net worth, it will do so *only* in connection with expert

19   discovery, for which the time has not yet arrived. Accordingly, Mattel's motion to

20   compel MGA to produce a witness to testify as to its net worth is premature and

21

22   _____

     [6] Torres Decl., ¶ 9, Ex. 7 (Order Regarding Mattel's Motion For Leave to Amend, dated
23   January 12, 2007, at 3).
     [7] *See Rupe v. Fourman*, 532 F. Supp. 344, 350-51 (S.D. Ohio 1981) (holding that
24   discovery on punitive damages was premature and unnecessary until liability was
     established); *see also Cobb v. Superior Court*, 99 Cal. App. 3d 543, 548-50 (1980)
25   (explaining that "[i]t would seldom seem necessary to the integrity of discovery
     proceedings that extensive discovery be permitted over objection into financial affairs of a
26   defendant ahead of discovery on the merits of the underlying cause of action" and that in
     such cases, the court should "consider the advisability of requiring a prima facie showing
27   into the right to punitive damages."); Cal. Civ. Code § 3295(c) (precluding pretrial
     discovery on a defendant's financial condition unless so ordered by the court after a
28   finding that the plaintiff has established a substantial probability that punitive damages
     will be awarded).

EXHIBIT 5
PAGE 94

1   should be denied.

2       Mattel's motion to compel MGA to produce a witness to testify for Topic 41,

3   regarding testing performed by MGA's expert, is similarly premature. The time for

4   designating experts has not yet arrived, thus MGA cannot be required to disclose at

5   this time whom it will be designating as its testifying experts in this litigation.

6   Under Federal Rule of Civil Procedure 26(a)(2)(C), the deadline for the disclosure

7   of expert testimony is 90 days before the trial date. This case is set for trial on

8   February 12, 2008. Requiring MGA to designate an expert witness at this early

9   stage of the proceedings is premature and inappropriate.

10       In June 2006, Mattel made the belated request that the District Court appoint

11   one document expert to test all documents in this case, to be used jointly by the

12   parties. In support of that argument, Mattel implied in its motion papers that MGA

13   and/or Bryant had destroyed evidence by making holes in certain "Bratz"

14   drawings.[8] Mattel's insinuation in its papers was so strong that Judge Larson issued

15   an order to show cause as to why the Court should not appoint an expert. At

16   argument, however, Mattel's counsel was forced to concede that *no evidence had*

17   *been comprised.*[9] In fact, as Judge Larson later found, MGA and Bryant did the

18   appropriate thing -- very shortly after Mattel filed its complaint, MGA and Bryant

19   date-tested certain original "Bratz" drawings while Mattel waited until the

20   documents were too old to be dated and therefore too old to confirm the merits of

21   MGA and Bryant's defenses.[10]  To convince Judge Larson of the complete

22   inaccuracy of Mattel's accusations, however, MGA and Bryant were forced to

23   explain in general terms the testing procedures they had used.[11] They did not, at

24   

25   _____
    [8] *See* Torres Decl., ¶ 10, Ex. 8 (Order Denying Motion For Appointment of Expert
    Witnesses, dated August 10, 2006).

26   [9] *Id.* (Order Denying Motion For Appointment of Expert Witnesses, at 13).

27   [10] *Id.* (Order Denying Motion For Appointment of Expert Witnesses, at 14).
    [11] *See* Declaration of B. Jennifer Glad filed concurrently, ¶ 2, Ex. 1 (Response of Bryant

28   and MGA to the Order to Show Cause Regarding the Appointment of Expert Witness(es),
    dated July 21, 2006, at 5).

LA2:829382.1

1   that time or at any time since, designate a testifying expert in this area to disclose

2   the results of the expert's work. Mattel should not be allowed to benefit from its

3   false and unsubstantiated accusations that required MGA and Bryant even to

4   acknowledge the fact that they had performed expert analysis on a consulting basis.

5       Contrary to Mattel's suggestion, the issue is not whether the consulting

6   expert's analysis is "reasonably available," as that would be true as to any

7   consulting expert. But rather, unless and until MGA designates a testifying expert,

8   these analyses are protected as MGA's work product and privileged from

9   disclosure. MGA will be prepared to identify its experts, and produce expert

10  reports, as required by the Federal Rules of Civil Procedure, at the appropriate time.

11  In addition, Mattel has itself refused to produce discovery related to its document

12  experts on the grounds that such information is protected from disclosure by the

13  attorney-client privilege, the attorney work product doctrine, and the non-

14  designated expert consultant privilege.[12] Mattel's motion on this topic should be

15  denied.

16      **4.   Mattel's Motion to Compel on Topics 31 and 33, Related to**
17          **Prior Work By Unidentified Individuals and Patents, Should**
18          **Be Denied Because Such Information is Not Relevant To**
            **This Action**

19      Mattel's motion to compel on Topics 31 and 33 should be denied because

20  they seek information not relevant to this litigation. First, Topic 31 seeks testimony

21  related to the identities of persons, to the extent any exist, that have performed work

22  for MGA while the person was employed by Mattel. Because Mattel has asserted

23  no claim of this nature with respect to anyone other than Bryant, such information

24  is not relevant to this litigation, and, as this Court recently noted, discovery is not a

25  fishing expedition for new claims.[13] Indeed, it is impossible to prepare a witness on

26  ──────────────
27  [12] *See* Torres Decl. ¶ 11, Ex. 9 (Objections of Mattel and Timothy James Lider to MGA's
    Subpoena for Production of Documents, Response to Request No. 6).
    [13] *See* Order Granting in Part and Denying in Part Mattel's Motion For Protective Order
28  Regarding "Polly Pocket" Documents, at 5.

EXHIBIT 5
PAGE 96

1  this topic without knowing all of Mattel's past and present employees and their
2  dates of employment.  In an attempt to compromise, however, MGA stated that it
3  would be willing to consider designating a 30(b)(6) witness to testify on this topic if
4  Mattel was willing to narrow it.  (*See* Garcia Decl. ¶ 4.)  Mattel, however, refused.
5  (*Id.*)  Mattel should not now be heard to complain that MGA has failed to meet its
6  discovery obligations by not designating a witness as to this topic.
7       Mattel's motion with regard to Topic 33, which seeks information related to
8  any trademarks, copyrights and patents, similarly seeks irrelevant information.  As
9  discussed herein, MGA designated a witness for Topic 33 with regard to trademarks
10  and copyrights only.  MGA should not be required to provide a witness to testify as
11  to MGA's patents and patent applications, to the extent any exist, as Mattel has
12  asserted no patent claims in this litigation and provided no rationale as to how any
13  MGA patent or patent application is conceivably relevant to the claims or defenses
14  in this litigation.  Accordingly, Mattel's motion to compel should be denied.
15
16       **5.      Mattel's Motion to Compel Testimony on Topic 34, Which
                    Relates to Prior Testimony of Unidentified Individuals,
17                  Should Also Be Denied**
18       Mattel's motion to compel testimony from MGA on Topic 34 seeks to have
19  the Discovery Master require MGA to prepare and produce a corporate witness to
20  testify about prior declarations and deposition testimony of various individuals, all
21  but two of whom are unidentified.[14]  In essence, Mattel seeks to have MGA prepare
22  a witness to testify about statements by other witnesses, rather than simply depose
23  those witnesses from whom it wants testimony.  Mattel has cited no authority for
24  such an inappropriate topic of corporate testimony, and MGA has found none.
25       Such testimony is not only inappropriate for a corporate designee, but it is
26
27  _____
    [14] During the meet and confer, MGA requested that Mattel more adequately define Topic
28  34, which relates to testimony and sworn statements prior to June 30, 2001.  (*See* Garcia
    Decl. ¶ 5.)  With this request still pending, Mattel filed the instant motion, in which it
    identifies for the first time two of the declarations which it apparently had in mind all
    along, but had previously refused to identify for MGA.

LA2:829382.1

EXHIBIT S
PAGE 97

1   impracticable to require MGA to prepare a witness to testify as to the prior

2   testimony of individuals, including individuals who are not employed by MGA.  In

3   *Covington v. Semones*, plaintiffs served a Rule 30(b)(6) notice on one entity, a

4   town, in order to obtain information about another entity, the county attorney's

5   office.  The court held that the town had no duty to inquire into or provide

6   information about the knowledge of the county attorney's office, stating that such a

7   practice would be "neither practicable nor efficient." 2007 WL 1052460, *2 (W.D.

8   Va. 2007) ("[t]here is no duty imposed to inquire into the knowledge of another

9   entity").  It is just as impracticable and inefficient to require MGA to designate a

10  corporate witness to testify about the knowledge of any individuals, let alone

11  witnesses not employed by MGA, especially where Mattel has refused to identify

12  the declarants or deponents and can easily depose individuals it believes to have

13  relevant information.  Moreover, Mattel has cited no authority, and MGA is aware

14  of none, that would permit Mattel to question MGA's 30(b)(6) witness about the

15  prior testimony of other individuals.  Accordingly, Mattel's motion to compel

16  MGA to produce a 30(b)(6) witness to testify as to prior sworn testimony and

17  statements should be denied.

18      **C.**    <u>**Mattel's Arguments Regarding Application of Section 2019.210**</u>
19                <u>**Are Improper As This Issue Is Currently Pending Before Judge**</u>
                  <u>**Larson**</u>

20      Mattel's argument regarding MGA's objections based on Mattel's failure to

21  identify its alleged trade secrets is an attempt to do an end run around MGA's

22  motion to dismiss.  As Mattel is well aware, MGA argued in its motion to dismiss

23  that Mattel should not be allowed to proceed with its claims based on the alleged

24  misappropriation of trade secrets because Mattel has failed to identify its allegedly

25  misappropriated trade secrets with the required specificity.[15]  MGA's motion to

26  

27  

28  

---
[15]  *See* Torres Decl., ¶ 12, Ex. 10 (MGA and Isaac Larian's Joint Motion to Dismiss
Mattel's Amended Answer and Counterclaims, at 15-19).

LA2:829382.1

- 12 -

EXHIBIT  5
PAGE  98

1    dismiss is currently pending before Judge Larson, and is scheduled for oral

2    argument on May 21, 2007.  Mattel's efforts to have the Discovery Master resolve

3    this issue in an attempt to undermine MGA's motion before the District Court is

4    improper and should not be condoned.

5         As discussed in MGA's motion to dismiss, all of Mattel's claims against

6    MGA proceed from the foundational allegation that MGA misappropriated Mattel's

7    purported trade secrets.  Under California law, when a claim is premised on trade

8    secret misappropriation, a plaintiff must disclose the trade secret with "reasonable

9    particularity" before proceeding with discovery on any of those claims. [16]  This rule

10   is not merely procedural, as Mattel suggests, but substantive in that it protects a

11   defendant from spending time, money and effort defending against baseless

12   claims. [17]  Thus, contrary to Mattel's assertion, section 2019.210 applies in federal

13   proceedings. [18]

14        Moreover, Mattel's reliance on the unpublished opinion in *Funcat Leisure*

15   *Craft* [19] is particularly unpersuasive, as it dismisses the substantive nature of

16   California's statutory protection from baseless trade secret claims without even

17   considering the origin and purpose of the law.  *Computer Economics*, cited by

18   MGA in its motion to dismiss, is the more closely reasoned case, and addresses the

19   purpose of section 2019.210, namely to: promote well-investigated claims, dissuade

20   the filing of meritless trade secret complaints, and protect against expending money

21

22

23

24

25

26

27

28

---

[16] *See Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826 (2d
Dist. 2005); Cal. Code Civ. Proc. § 2019.210.

[17] *See Computer Economics Inc. v. Gartner Group Inc.*, 50 F. Supp. 2d 980, 985 (S.D.
Cal. 1999); *see also Diodes, Inc. v. Franzen et al.*, 260 Cal. App. 2d 244, 252 (2d Dist.
1968) (purpose of rule is to substantively protect against having to answer to and defend
against baseless claims).

[18] *See Computer Economics*, 50 F. Supp. 2d at 985 (establishing the applicability of
California's statutory provision to federal cases, including cases where pendant
jurisdiction applies to state law claims, under the *Erie* doctrine); *Vermont Microsystems,
Inc. v. Autodesk, Inc.*, 88 F.3d 142 (2d Cir. 1996) (applying California trade secret law and
specifically this provision without dispute or need for discussion).

[19] *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, 2007 WL 273949 (E.D. Cal.
2007).

LA2.829382.1

- 13 -

EXHIBIT   5
PAGE       99

1    and time on false claims - not just to control the timing of discovery.[20]

2    In any event, until such time as the District Court rules on this issue as part of

3    MGA's motion to dismiss, Mattel should be precluded from pursuing further

4    discovery on this issue.

5    **D.    Mattel's Requests For Sanctions Should Be Denied**

6    Finally, Mattel argues that it is entitled to sanctions. As set forth at length

7    above, and contrary to Mattel's assertions, MGA has designated witnesses for all

8    but the few topics on which the parties disagree, or as to which Mattel agreed to

9    provide further clarification so that MGA could designate the appropriate witness.

10   Moreover, MGA's refusal to provide witnesses as to the remaining topics was in

11   good faith given that the topics sought testimony that was privileged, not relevant to

12   the claims in the litigation, or else was properly the subject of expert testimony and

13   was, thus, premature. Accordingly, Mattel's motion for sanctions should be denied.

14   **CONCLUSION**

15   For the reasons set forth above, the Court should deny Mattel's Motion to

16   Compel and for Sanctions in its entirety.

17

18   Dated: April 26, 2007                           O'MELVENY & MYERS LLP

19

20                                          By: _____
                                            James P. Jenal
21                                          Attorneys for MGA Entertainment, Inc.

22

23

24

25

26

27   _____
     [20] *See Computer Economics*, 50 F. Supp. 2d at 985-88; Torres Decl., ¶ 12, Ex. 10 (MGA
28   and Isaac Larian's Joint Motion to Dismiss Mattel's Amended Answer and
     Counterclaims, at 15-19).

LA2:829382.1                        - 14 -

EXHIBIT 5
PAGE 190