VALLE & ASSOCIATES
JEFFREY B. VALLE (Bar No. 110060)
jvalle@valleassociates.com
11911 San Vicente Blvd., Suite 324
Los Angeles, California 90049
Telephone: (310) 476-0300
Facsimile: (310) 476-0333

Attorneys for Non-Parties
IGWT GROUP, LLC and
IGWT 826 INVESTMENTS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br>            Plaintiff,<br><br>   v.<br><br>MATTEL, INC., a Delaware Corporation<br>            Defendant.<br><br>AND CONSOLIDATED CASES | CASE NO. CV 04-09049 SGL (RNBx)<br><br>Consolidated with Case Nos.<br>CV 04-9059 and CV 05-2727<br><br>OPPOSITION OF NON-PARTIES IGWT GROUP, LLC AND IGWT 826 INVESTMENTS, LLC TO MATTEL'S MOTION TO COMPEL;<br><br>DECLARATIONS OF JEFFREY B. VALLE and BRAD SCHNEIDER (under separate cover) |

i

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

LEGAL ARGUMENT ........................................................................................... 2

I.   MATTEL'S MOTION SHOULD BE DENIED FOR ITS FAILURE TO ENGAGE IN A MEANINGFUL AND GOOD FAITH MEET AND CONFER PROCESS ....................................................... 2

II.  MATEL'S MOTION SHOULD ALSO BE DENIED BECAUSE ITS DOCUMENT REQUESTS ARE PREMATURE ................. 5

III. MATTELS REQUESTS ARE OBJECTIONABLE AND SHOULD BE DENIED ON THIS GROUND AS WELL ............................ 7

   A.   Subpoena to IGWT Group, LLC ......................................................... 8

   B.   Subpoena to IGWT 826 Investments, LLC ......................................... 11

CONCLUSION .................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*Calcor Space Facility, Inc. v. Superior Court,*
   53 Cal. App. 4th 216 (1997) ............................................................. 6

*Cotracom Commodity Trading Co. v. Seaboard Corp.,*
   189 F.R.D. 456 (D. Kan. 1999) ......................................................... 5

*Del Campo v. American Corrective Counseling Services,*
   2008 WL 2038047 (N.D.Cal. May 12, 2008) ................................. 10

*Epstein v. MCA, Inc.,*
   54 F.3d 1422 (9th Cir. 1995) ............................................................. 8

*Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union, AFL-CIO-CLC,*
   103 F.3d 1007 (D.C. Cir. 1997) ........................................................ 8

*Hoelzel v. First Select Corp.,*
   214 F.R.D. 634 (D. Colo. 2003) ....................................................... 5

*IP Co., LLC v. Cellnet Tech., Inc.,*
   2008 WL 3876481 (N.D. Cal. Aug. 8, 2008) ................................ 6, 9

*Kyte v. Progressive Northwestern Ins. Co.,*
   2004 WL 491886 (D. Alaska March 9, 2004) ................................. 4

*Nidec Corp. v. Victor Co. of Japan,*
   249 F.R.D. 575 (N.D. Cal. 2007) .................................................. 6, 8

*Robinson v. Potter,*
   453 F.3d 990 (8th Cir. 2006) ............................................................. 2

*Soto v. City of Concord,*
   162 F.R.D. 603 (N.D. Cal. 1995) .................................................. 3, 4

*Valley Bank of Nevada v. Superior Court,*
   15 Cal. 3d 652 (1975) ..................................................................... 10

*Visto Corp. v. Smartner Information Sys., Ltd.,*
   2007 WL 218771 (N.D. Cal. Jan 29, 2007) ..................................... 8

*Whittall v. Henry Schein, Inc.*,
   2006 WL 902571 (E. D. Cal. Apr. 5, 2006) ...................................................... 10

*Williams v. Bd. of County Com'rs of Unified Gov't of Wyandotte
   County and Kansas City, Kan.*,
   192 F.R.D. 698 (D. Kan. 2000) ...................................................................... 4

<u>RULES</u>

Fed. R. Civ. P. 26(c) ............................................................................................... 8

Fed. R. Civ. P. 37(a) ............................................................................................... 2

Local Rule 37-1 ...................................................................................................... 2

Opposition of Non-Parties IGWT Group, LLC and IGWT 826 Investments, LLC to Mattel's Motion to Compel

## INTRODUCTION

Third parties IGWT Group, LLC ("IGWT Group") and IGWT 826 Investments, LLC ("IGWT 826) (collectively, "IGWT") find themselves caught in the middle of a highly contested litigation between Mattel and MGA. In its quest to purportedly discover information regarding, among other things, the financial worth of MGA and that of its CEO, Isaac Larian, Mattel has served subpoenas on IGWT that include incredibly overbroad and highly intrusive document requests. Mattel's instant motion to compel should be denied on a number of grounds.

First, Mattel's motion should be denied due to its utter failure to engage in any meaningful and good faith meet and confer process. Despite the overbroad and intrusive nature of the document requests, counsel for IGWT made a reasonable offer to produce a subset of documents responsive to a number of the requests. Mattel, however, refused to limit its requests in any way. Moreover, after asking IGWT's counsel to put its latest proposal in writing, Mattel did not even bother to respond, and instead filed its voluminous 30-page motion to compel, accompanied by its 159-page separate statement, the very next day. Such behavior completely fails to satisfy Mattel's meet and confer obligation.

Second, it is clear that Mattel's document requests are premature at this time. As recently as January 7, 2009, the Court appointed a forensic auditor to examine all of MGA's records. There is no reason to believe that, based on a review of MGA's own documents, the auditor will not be able to calculate MGA and Isaac Larian's financial condition, MGA's profits from infringing goods, and determine whether any supposedly fraudulent transfer of assets from MGA to IGWT occurred – all reasons that Mattel claims as justification for its present motion to compel documents from IGWT.

IGWT, as a third party (albeit a related party to MGA and Larian), is entitled to a higher degree of protection against undue burden and invasion of privacy. Courts have therefore refused to compel production of documents from third parties absent a

showing that the information sought cannot be obtained from parties to the action. Here, the completion of the forensic accounting of MGA may well accomplish just that. In the event any additional information is needed from third party IGWT, a limited document request may be appropriate at that time. At this time, however, Mattel's subpoenas are premature.

Finally, apart from the procedural and timing issues, Mattel's motion to compel should be denied because its requests are objectionable on a variety of grounds. Predominantly, the requests are flawed in that they are overbroad, intrusive of privacy rights, and seek information that is irrelevant. This is so because, among other things, many of the requests demand production of "All documents" referring or relating to a given category. For this reason as well, as explained more fully below, Mattel's motion to compel should be denied.

## LEGAL ARGUMENT

### I. MATTEL'S MOTION SHOULD BE DENIED FOR ITS FAULURE TO ENGAGE IN A MEANINGFUL AND GOOD FAITH MEET AND CONFER PROCESS

As an initial matter, this motion should be denied due to Mattel's utter failure to participate in any meaningful and good faith meet and confer process prior to moving to compel production of the discovery at issue. Rule 37(a) of the Federal Rules of Civil Procedure expressly requires that the moving party first meet and confer in "good faith" before bringing any motion to compel discovery. *See also* Local Rule 37-1 ("Prior to the filing of any motion relating to discovery . . ., counsel for the parties shall confer in a good faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible."); *Robinson v. Potter*, 453 F.3d 990, 995 (8th Cir. 2006) (affirming denial of motion to compel where moving party failed to demonstrate a good faith attempt to informally resolve the dispute);

*Soto v. City of Concord*, 162 F.R.D. 603, 623 (N.D. Cal. 1995) (good faith requires an "earnest attempt to 'meet and confer' on the issues").

Mattel initially served subpoenas on both IGWT Group and IGWT 826 on January 12, 2009. The subpoenas were incredibly overbroad and unduly burdensome. For instance, Request number 7 to IGWT Group's subpoena called for "[a]ll communications referring or relating to Vision Capital, LLC, Lexington Financial, LLC, Mattel, MGA, Isaac Larian, and/or Bratz." (Declaration of Jeffrey B. Valle ["Valle Decl."], Ex. 1). As written, this essentially called for every document in IGWT Group's possession. Request number 2 of the same subpoena called for "[a]ll documents referring or relating to the revenue generated by IGWT Group, LLC's sales, licensing, distribution or other transfer of Bratz products and the transfer or disposition of such revenue." *Id.* As such, this request called for documents regardless of whether they related to the sale of infringing Bratz products or not. Naturally, given the tremendous overbreadth of these requests made against third parties to this litigation, IGWT served a number of objections.

Counsel for IGWT participated in a teleconference with counsel for Mattel on January 30, 2009. (Valle Decl. ¶ 6). During this teleconference, IGWT made a meaningful attempt to offer a reasonable subset of the broad categories of materials sought in the requests. (*Id.*) Mattel, in turn, simply reasserted the same exact requests they had propounded in writing. In other words, Mattel refused to narrow its requests in any way, notwithstanding the various overbreadth, relevancy, and privacy concerns raised by IGWT. (*Id.*) Nonetheless, IGWT's attorney represented that he would speak to his client to verify the scope of the documents being requested. (*Id.*). On February 2, 2009, Mattel sent IGWT a letter in which it attempted to memorialize the prior discussion. As the letter demonstrates, Mattel refused to offer any compromises whatsoever. (*Id.* & Ex. 5).

The parties held a second teleconference later that same day on February 2. IGWT's counsel explained that that there were hundreds of sales contracts responsive

to Request number 2 to IGWT Group, and not merely one or two as Mattel's counsel believed to be the case. (*Id.* ¶ 7 & Ex. 5) (Declaration of Brad Schneider ["Schneider Decl."], ¶ 5).[1] Despite this information, Mattel still refused to agree to any limitations on its requests – not even to narrow the request from "all documents" to "documents sufficient to show" the transactions at issue. (*Id.* ¶ 7).

Nevertheless, at the end of this discussion, apparently for the sole purpose of creating a so-called "meet and confer" record, Mattel's counsel requested that IGWT put its most recent proposals in writing. (*Id.* ¶ 7). Believing that Mattel was acting in good faith with an aim to at least attempt an informal resolution, IGWT's counsel complied with the request. (*Id.* ¶ 7 & Ex. 5). However, Mattel never responded to any of the points raised in IGWT's written offer. Instead, without any further notice, Mattel filed its voluminous motion to compel the very next day. (*Id.* ¶ 8).

As the above demonstrates – unwilling to make any concessions whatsoever – Mattel cannot credibly maintain that it attempted to meet and confer in good faith with IGWT regarding the subpoenas at issue. A valid meet and confer requires more that a mere demand to produce the documents requested in the subpoenas; rather, it requires a legitimate attempt to exchange ideas and opinions and be willing to make reasonable compromises. *See, e.g., Soto*, 162 F.R.D. at 623 ("meet and confer" requires "a live exchange of ideas and opinions"); *Kyte v. Progressive Northwestern Ins. Co.*, No. A03-40CV, 2004 WL 491886, at *2 (D. Alaska March 9, 2004) ("A good faith attempt to resolve a dispute necessarily implies communication and some degree of negotiation between the parties."); *Williams v. Bd. of County Com'rs of Unified Gov't of Wyandotte County and Kansas City, Kan.*, 192 F.R.D. 698, 700 (D.

---

[1] Considering the amount of sales contracts, a responsive production would require production of thousands of documents, including documents such as bills of lading, packing slips, remittance advises, and invoices from third party vendors to IGWT – all documents which in no way are relevant to the claims and defenses in the underlying suit. (Schneider Decl. ¶¶ 6, 11).

Kan. 2000) (a good faith effort to confer "requires that counsel converse, confer, compare views, consult and deliberate").

Mattel never engaged in any such good faith attempt. To the contrary, its two "meet and confer" efforts, in light of its refusal to make any concessions, were clearly done simply to permit its counsel to submit a meet and confer compliance certificate. Indeed, Mattel filed a voluminous 30-page motion to compel, accompanied by its 159-page separate statement, a single day after counsel's second teleconference.

However, a court must consider not the number of supposed "meet and confer" exchanges, but the quality of the moving party's genuine efforts to reach a compromise. As explained by one District Court in denying a motion to compel:

> Were the court to only consider the number of attempts it might find that defendant made reasonable efforts to confer. . . . The court, however, looks beyond the sheer quantity of contacts. It examines their quality as well. The duty to confer involves more than making a certain number of contacts with opposing counsel. The quality of the contacts is far more important than the quantity. In this instance the court does not find the efforts of defense counsel constitute reasonable efforts to confer in good faith . . . . Before filing a motion to compel, the movant must make reasonable efforts to confer. That generally requires counsel to "converse, confer, compare views, consult and deliberate."

*Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 635 (D. Colo. 2003); *accord Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999) (same).

For this reason alone, Mattel's present motion to compel should be denied in its entirety.

## II. MATTEL'S MOTION SHOULD ALSO BE DENIED BECAUSE ITS DOCUMENT REQUESTS ARE PREMATURE

Apart from its failure to meet and confer in good faith, Mattel's present motion to compel should further be denied its subpoenas to IGWT are premature at this time.

In its motion, Mattel's primary argument for the supposed relevancy of documents in IGWT's possession is to value the transfer of any assets from MGA to IGWT. However, as recently as January 7, 2009, the Court appointed a forensic auditor to examine all of MGA's records. In a recent hearing before the Court, MGA's counsel argued that such an accounting was essential to ascertain the value of supposed assets being transferred from MGA to IGWT. 1/5/09 Hearing Tr. (Naim Decl., Ex. 1).

Nevertheless, Mattel now takes the position that it cannot and will not wait for this audit to be performed before determining whether they still need any documents from IGWT. (Valle Decl., ¶ 7 & Ex. 5). However, there is no reason to believe that based on a review of MGA's own documents, the auditor will not be able to calculate MGA and Isaac Larian's financial condition (as allegedly needed for Phase 2 damages), to calculate MGA's profits from infringing goods (as allegedly needed to prove Mattel's disgorgement claim), or determine whether any fraudulent transfer of assets from MGA to IGWT occurred (as allegedly needed to prove Mattel's RICO claim).[2]

Where, as here, there is no showing that Mattel cannot obtain all the information it needs directly from MGA, the Court should refrain from burdening a third party, even a related third party, from unnecessary and burdensome document production. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (denying discovery from a nonparty, stating, "there is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."); *IP Co., LLC v. Cellnet Tech., Inc.*, No. C08-80126 MISC MMC, 2008 WL 3876481, at *1 (N.D. Cal. Aug. 8, 2008) ("Rule 45 emphasizes the need to minimize the burden of a subpoena on a nonparty and requiring a party to produce non-relevant documents or documents whose discovery has been stayed is arguably burdensome"); *see also*

---

[2] Additionally, there is currently a stay of the injunction in place, which Mattel is seeking to have lifted. Obviously, if the stay is not lifted, it will affect the relevancy of some of the documents Mattel seeks. However, even if the stay is lifted, the conditions upon which the stay is lifted may still impact the issues in this case and the supposed relevancy of the documents Mattel is seeking.

*Calcor Space Facility, Inc. v. Superior Court*, 53 Cal. App. 4th 216, 225 (1997) ("As between parties to litigation and nonparties, the burden of discovery should be placed on the latter only if the former do not possess the material sought to be discovered.").[3]

In short, there is no justification for Mattel's seeking production of documents from third party IGWT at this time. After the forensic accounting is complete, if Mattel can demonstrate that some essential information could not be obtained from MGA's records, then perhaps a limited production by IGWT might be warranted. However, that question is premature at this time. For this reason as well, Mattel's motion to compel should be denied.

### III. MATTEL'S REQUESTS ARE OBJECTIONABLE AND SHOULD BE DENIED ON THIS GROUND AS WELL

Apart from the procedural and timing issues raised above, Mattel's motion to compel should be denied because its requests are objectionable on a variety of grounds, as set forth in IGWT's written objections. Predominantly, the requests are flawed in that they are overbroad, intrusive of privacy rights, and seek information that is irrelevant. In large part these problems exist due to the fact that virtually all of the requests seek "All" documents in a given category or topic. They are not limited to any discrete time period, nor are they tethered to any factual event, entity, or person directly related to any of the claims or defenses in the underlying suit.

Instead, they simply seek "All" in the hopes of finding the proverbial needle in the haystack. These types of request are improper. "[T]he standard of relevancy is

---

[3] The out-of-circuit cases cited by Mattel (Motion at 25-26) are factually distinguishable. *See In re Bergeson*, 112 F.R.D. 692 (D. Mont. 1986) (compelling production by third party bank because "bank records are uniquely available from the Bank"); *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993 (10th Cir. 1965) (non-party attempting to avoid production by shifting burden to other *non-parties*); *State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.*, No. CV 2007-0051, 2007 WL 2993840 (E.D.N.Y. Oct 10, 2007) (motion to compel granted where critical documents only in possession of third party).

not so liberal as to allow a party to . . . explore [any] matter which does not presently appear germane on the theory that it might conceivably become so." *Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 - 1013 (D.C. Cir. 1997) (vacating trial court's order that nonparty produce documents related to fourth parties who had no relation to the plaintiff or defendant); *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir.1995) (holding that district court abused its discretion in allowing discovery of documents that "would have no bearing on the merits of the case and that therefore were irrelevant").

As a nonparty, IGWT is entitled to much greater protection from intrusive discovery than a party. *See Nidec Corp.*, 249 F.R.D. at 577; *IP Co.*, 2008 WL 3876481, at *1; *Calcor*, 53 Cal. App. 4th at 225; *see also supra* at Section II. While IGWT may be affiliated with MGA and Larian, this in no way negates IGWT's status and protection as a non-party to this action. *See id.*; Fed. R. Civ. P. 26(c)(i) (court must limit discovery if requests "can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *Visto Corp. v. Smartner Information Sys., Ltd.*, 2007 WL 218771, at *2 (N.D. Cal Jan 29, 2007) (denying motion to compel on corporate nonparty, reasoning that "the law permits persons to create entities that each possess separate legal existence, rights, and obligations").

As explained, Mattel has yet to wait for the results from the forensic auditor, which, it has argued to the Court, may well provide all of the information it needs. Given this fact alone, Mattel cannot legitimately claim that its subpoenas to IGWT are not unreasonably cumulative and overly burdensome and expensive on the third parties. Moreover, as demonstrated below, Mattel's requests are unreasonably overbroad and unnecessarily intrusive of third party privacy rights.

### A. Subpoena to IGWT Group, LLC

- <u>Request number 1</u> asks for "All documents referring or relating to any transfer of any item of value between MGA Entertainment, Inc…and IGWT Group…" The Request is not limited to the Bratz products at the heart of this litiga-

1  tion, nor is it limited to the products addressed by the December 3, 2008 injunction.
2  Instead, it seeks "All" items of value. As such, this Request is so expansive that it
3  seeks documents related to items which MGA does not even itself produce, but has
4  purchased from other toy manufacturers (i.e., Marvel Spiderman products).
5  (Schneider Decl. ¶ 3).
6       Moreover, this Request seeks "All" documents related to these transactions,
7  and not merely "documents sufficient to identify" these transactions. Thus, as writ-
8  ten, this Request seeks such inconsequential items such as bills of lading and remit-
9  tance advices. (Schneider Decl. ¶ 6). Last, Mattel has never explained why they
10 can't get these documents from MGA itself. Considering that Mattel is already in
11 possession of the July 7, 2008 contract between MGA and IGWT Group, specifically
12 called for in this Request, this indicates that Mattel has already had success in seeking
13 responsive documents from MGA itself.
14      For these reasons, Request number 1 is clearly objectionable. Notwithstanding
15 these objections, IGWT Group offered to produce "documents sufficient to identify
16 all purchases of Bratz products by IGWT Group." (Valle Decl., Ex. 6). If the Court
17 is inclined to order any production, IGWT Group respectfully requests it be limited as
18 such.
19      •     <u>Request number 2</u> seeks "All documents" related to the sale of Bratz
20 Products by IGWT Group to third parties. IGWT Group offered to provide docu-
21 ments sufficient to identify these sales. (Valle Decl., Ex. 6). Nonetheless, MGA re-
22 quired "All" documents notwithstanding the facts that there have been several hun-
23 dred sales to third parties, and as such, would clearly create an undue burden to pro-
24 duce each and every document "referring or relating" to these sales. (Schneider Decl.
25 ¶¶ 5-13); *IP Co.* 2008 WL 3876481 (N.D. Cal., 2008).
26      For these reasons, Request number 2 is clearly objectionable. However, if the
27 Court is inclined to order any production, it should be limited to documents "suffi-
28 cient" to show such sales.

- <u>Request number 3</u> seeks documents related to the membership and ownership interest in IGWT Group. IGWT Group offered to disclose Larian's interest, if any, but Mattel declined, reasoning that they were entitled to know each and every person's interest. (Valle Decl., ¶ 7). However, this ignores the fact that the other members and owners, if any, have a fundamental right to privacy. *Del Campo v. American Corrective Counseling Services*, No. C 01-21151 JW, 2008 WL 2038047, at *5 (N.D.Cal. May 12, 2008) ("federal courts generally treat financial information as private."); *Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 656 (1975) ("[W]e may safely assume that the right to privacy extends to one's confidential financial affairs…"). Thus, IGWT Group requests the court to deny this request outright, or else limit it to the ownership interest of Larian.

- <u>Request number 4</u> seeks "All documents" related to the funding of IGWT Group. There is no justification of this highly sensitive and private information. *Whittall v. Henry Schein, Inc.*, No. CIVS051629 WBS GGH, at * 3, 2006 WL 902571, *4 (E. D. Cal. Apr. 5, 2006). Mattel's purported reasoning for the need of this information is all speculative at best – i.e., that Larian somehow acted improperly in funding an alternative business, or that there is some grand conspiracy to siphon off money from MGA. Such speculation is insufficient. Moreover, Mattel fails to demonstrate why any alleged improper transfer of funds cannot be ascertained from the pending forensic accounting.

- <u>Request numbers 5 and 6</u> essentially seek "All documents" related to money flowing out of IGWT Group. As such, this would arguably include any payments to third party vendors (i.e., shipping company), employees or agents (i.e., stock room boy), and third party toy manufacturers, other than MGA, who happen to unload their discontinued stock onto IGWT Group. Without question, all of these people and entities have a fundamental right to privacy, which absent a legitimate argument as to relevance (which Mattel cannot articulate), should be protected. *Del Campo*, 2008 WL 2038047, at *5; *Valley Bank of Nevada*, 15 Cal. 3d at 656.

- Request number 7 seeks "All communications referring or relating to Vision Capital, LLC, Lexington Financial, LLC, Mattel, MGA, Isaac Larian and/or Bratz." Due to the various entities and parties listed, the lack of tethering to a claim or defense in this suit, and that conceivably every communication arguably relates to MGA or Larian, this Request is clearly overbroad. In fact, this Request is essentially akin to Mattel asking for every communication that IGWT Group has in its possession.

### B. Subpoena to IGWT 826 Investments, LLC

Mattel's subpoena to IGWT 826 Investments, LLC suffers from the same exact flaws as the subpoena to IGWT Group above. The Requests are equally overbroad, unduly burdensome, irrelevant and intrusive of fundamental privacy rights.

- Additionally, with respect to Request numbers 1, 2, 5, and 6, IGWT 826 offered to stipulate that no such responsive documents existed. Inexplicably, Mattel refused to accept this explanation. (Valle Decl. ¶ 7).

- Request number 3 seeks documents related to the membership and ownership interest in IGWT 826. IGWT 826 offered to disclose Larian's interest, if any, but Mattel declined, reasoning that they were entitled to know each and every person's interest. (Valle Decl., ¶ 7). As explained above in relation to Request number 3 to IGWT Group, Mattel's position is unreasonable.

- Request number 4 seeks "All documents" related to the funding of IGWT. Again, as explained above in relation to Request number 3 to IGWT Group, there is no justification of this highly sensitive and private information. However, IGWT 826 offered to provide all deal documents with respect to the two MGA-related transactions this entity has done. (Valle Decl. ¶ 7 & Ex. 6). Unsurprisingly, Mattel refused this offer. Thus, IGWT 826 requests the court to deny this request outright, or else limit it to deal documents with respect to the two MGA-related transactions this entity has done.

- <u>Request number 7</u> seeks "All communications referring or relating to Vision Capital, LLC, Lexington Financial, LLC, Mattel, MGA, Isaac Larian and/or Bratz." As explained above in relation to Request number 7 to IGWT Group, Mattel's position is unreasonable. Nevertheless, IGWT 826 offered to provide all non-privileged documents. Mattel, however, did not even respond to this offer. (Valle Decl. ¶ 7).

## CONCLUSION

In short, based on the foregoing, including Mattel's unwillingness to meet and confer in good faith, the premature nature of the requests, and the overbroad and their overbroad and intrusive nature, Mattel should not be entitled to obtain any documents from IGWT (at least at this time). Alternatively, if the Court is inclined to grant any of Mattel's motion, IGWT respectfully requests that production be limited as defined in IGWT's prior offer to Mattel.

DATED: February 17, 2009         VALLE & ASSOCIATES

By: _____
Jeffrey B. Valle
Attorneys for Non-Parties
IGWT GROUP, LLC and
IGWT 826 INVESTMENTS, LLC

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 11911 San Vicente Boulevard, Suite 324, Los Angeles, CA 90049.

On February 17, 2009, I served the following document(s) described as follows:

1) OPPOSITION OF NON-PARTIES IGWT GROUP, LLC AND IGWT 826 INVESTMENTS, LLC TO MATTEL'S MOTION TO COMPEL;
2) DECLARATION OF JEFFREY B. VALLE; and
3) DECLARATION OF BRAD SCHNEIDER

on the interested parties in this action by placing a true copy thereon enclosed in a sealed envelope addressed as follows:

Robert J. Herrington
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
300 S. Grand Ave.
Los Angeles, CA 90071

Jon D. Corey
QUINN EMANUEL URQUHART OLIVER
& HEDGES, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
VIA EMAIL AND MAIL

Todd E. Gordinier
BINGHAM & McCUTCHEN
600 Anton Boulevard, 18th Floor
Costa Mesa, CA 92626

Russell J. Frackman
MITCHELL SILBERBERG KNUPP, LLP
11377 W. Olympic Blvd.
Los Angeles, CA 90064

Patricia Glaser
GLASER WEIL FINK JACOBS & SHAPIRO, LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067

/ / (BY FAX) I am readily familiar with the firm's practice of facsimile transmission; on this date the document(s) was transmitted by facsimile transmission and that the transmission was reported as complete and without error and that the attached transmission report was properly issued by the transmitting facsimile machine.

/X/ (BY MAIL) I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service and the fact that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices.

/ / (BY FEDERAL EXPRESS) I am readily familiar with the firm's practice for the daily collection and processing of correspondence for deliveries with the Federal Express delivery service and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced document was placed for deposit at Los Angeles, California and placed for collection and delivery following ordinary business practices.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 17, 2009 at Los Angeles, California.

EMMA NAVARRO