1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2  John B. Quinn (Bar No. 090378)
   (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                     EASTERN DIVISION

11

12  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)
                                         Consolidated with
        Plaintiff,                       Case No. CV 04-09059
13                                       Case No. CV 05-02727

14       vs.                             **DISCOVERY MATTER**

15  MATTEL, INC., a Delaware             **[To Be Heard By Discovery Master**
    corporation,                         **Robert C. O'Brien Pursuant To**
16                                       **Order Of January 6, 2009]**
        Defendant.
17  ─────────────────────────            **SUPPLEMENTAL DECLARATION**
                                         **OF MICHAEL T. ZELLER IN**
18                                       **SUPPORT OF REPLY IN SUPPORT**
    AND CONSOLIDATED ACTIONS             **OF MATTEL INC.'S MOTION TO**
19                                       **COMPEL DEPOSITIONS OF**
                                         **PABLO VARGAS AND MARIANA**
20                                       **TRUEBA; AND REQUEST FOR**
                                         **SANCTIONS**
21
                                         Hearing Date: March 19, 2009
22                                       Time:          10:00 a.m.
                                         Place:         Arent Fox
23                                                      555 West Fifth St.
                                                        Los Angeles, CA 90013
24
                                         **Phase 2**
25                                       Discovery Cutoff:     Dec. 11, 2009
                                         Pre-trial Conference: March 1, 2010
26                                       Trial:                March 23, 2010

27

28

07209/2801657.1

                            SUPPLEMENTAL ZELLER DEC. ISO MATTEL'S REPLY

## SUPPLEMENTAL DECLARATION OF MICHAEL T. ZELLER

I, Michael T. Zeller, declare as follows:

1.      I am a member of the bars of the State of California, New York and Illinois and am a partner with Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc.  I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently hereto.

2.      Attached hereto as Exhibit A is a true and correct copy of the Declaration of Marian Trueba Almada in Support of MGAE de Mexico's Reply in Support of Its Motion to Dismiss Mattel's Amended Answer and Counterclaims, dated April 11, 2007.

3.      Attached hereto as Exhibit B is a true and correct copy of the cover page from the transcript of the deposition of Carlos Gustavo Machado Gomez, dated October 14, 2008.

4.      Attached hereto as Exhibit C is a true and correct copy of the Third Supplemental Declaration of Jon Corey In Support Of Mattel, Inc.'s Motion to Compel Deposition of Carlos Gustavo Machado Gomez, dated January 14, 2008.

5.      Attached hereto as Exhibit D is a true and correct copy of the Court's Order ordering the deposition of Carlos Gustavo Machado, dated September 2, 2008.

6.      Attached hereto as Exhibit E is a true and correct copy of the Proof of Service of Mattel, Inc.'s Notice of Motion and Motion to Compel Depositions of Pablo Vargas and Mariana Trueba; and Request for Sanctions and the Declaration of Michael T. Zeller in Support Thereof, dated February 6, 2009.

7.      Attached hereto as Exhibit F is a true and correct copy of the ECF Notice of Electronic Filing of the Notice of Manual Filing of Mattel, Inc.'s Motion to Compel Depositions of Pablo Vargas and Mariana Trueba; and Request for Sanctions, dated February 9, 2009.

8. Attached hereto as Exhibit G is a true and correct copy of the Court's Order Regarding E-Filing Procedures for Discovery Master and Under Seal Filing (In Chambers), dated January 9, 2008.

9. Attached hereto as Exhibit H is a true and correct copy of the Court's Order Regarding Motions Heard on June 11, 2007, dated June 27, 2007.

10. Prior to January 22, 2008, Mattel had not received proposed deposition dates for Trueba or Vargas, despite multiple requests and reminders by Mattel. In general, as shown on Mattel's motion, MGA either ignored Mattel's requests or else attempted to claim it was the responsibility of the Weil Glaser firm (but that Weil Glaser would not provide dates until after MGA's request to substitute was ruled on). Mr. Russell made the later claim to me during a call on January 21, 2009, to which I responded that MGA's bandying between counsel on Phase 2 issues was not acceptable to Mattel, particularly given that at this time, and ongoing through January 28, 2009, the Skadden firm was counsel of record for the MGA Parties for Phase 1 and Phase 2. Attached hereto as Exhibit I is the Court's Order Granting Association and Withdrawal of Counsel, dated January 28, 2009. At the end of that conversation, Mr. Russell stated he would discuss the matter further with MGA.

11. The next day, and after receiving a letter from Rob Herrington of Skadden asking Mattel to meet and confer on selected Phase 2 issues (even though Mattel could not get a meaningful response on the Phase 2 discovery issue it had raised because of the purported split in responsibility of MGA's counsel), I sent Mr. Russell an email. That email confirmed that, far from telling me that Vargas or Trueba would not be produced, Mr. Russell had "told me that it is the alleged responsibility of other firms to respond to Phase 2 discovery, including with respect to MGA's compliance with discovery that was compelled previously, but that those firms would not or could not respond to our discovery requests or to our meet and

1 | confer letters until the Court decided MGA's purported 'substitution' issues."  A true

2 | and correct copy of my January 22, 2009 email is attached hereto as Exhibit J.

3 |      12.    After I sent the January 22, 2009 email, Mr. Russell called me

4 | later that same day.  In my conversation with him on January 22, 2009, Mr. Russell

5 | committed to MGA's providing dates for the depositions of Pablo Vargas and

6 | Mariana Trueba on January 26, 2009 after the Court's scheduled status hearing to

7 | address the substitution issue.  Mr. Russell's point was that, regardless of which firm

8 | was representing MGA based on the Court's hearing, Mattel would receive proposed

9 | dates.  In fact, as soon as Amman Khan, who was not a participant in my calls with

10 | Mr. Russell, sought to dispute this conversation, I sent an email to Mr. Russell

11 | stating that Mr. Khan's statements about the communications were "simply

12 | false."  A true and correct copy of my e-mail is attached hereto as Exhibit K.  Mr.

13 | Russell did not dispute my e-mail.

14 |

15 |      I declare under penalty of perjury under the laws of the United States of

16 | America that the foregoing is true and correct.

17 |      Executed on February 19, 2009, at Avon, Colorado.

18 |

19 |      /s/  Michael T. Zeller

20 |      Michael T. Zeller

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# EXHIBIT A

1   DALE M. CENDALI (admitted *pro hac vice*)
    dcendali@omm.com
2   DIANA M. TORRES (S.B. #162284)
    dtorres@omm.com
3   JAMES P. JENAL (S.B. # 180190)
    jjenal@omm.com
4   O'MELVENY & MYERS LLP
    400 South Hope Street
5   Los Angeles, CA 90071-2899
    Telephone: (213) 430-6000
6   Facsimile: (213) 430-6407

7   PATRICIA GLASER (S.B. #55668)
    CHRISTENSEN, GLASER, FINK, JACOBS,
8   WEIL & SHAPIRO, LLP
    10250 Constellation Boulevard, 19th Floor
9   Los Angeles, CA 90067
    Telephone: (310) 553-3000
10  Facsimile: (310) 557-9815

11  Attorneys for MGAE de Mexico, S.R.L. de C.V.

12

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15

16  CARTER BRYANT, an individual,         Case No. CV 04-09049 SGL (RNBx)
                                          (consolidated with CV 04-9059 & 05-
17              Plaintiff,                2727)

18        v.                             **DECLARATION OF MARIANA
                                         TRUEBA ALMADA IN SUPPORT
19  MATTEL, INC., a Delaware             OF MGAE DE MEXICO, S.R.L. DE
    Corporation,                         C.V.'S REPLY IN SUPPORT OF ITS
20                                       MOTION TO DISMISS MATTEL'S
                Defendant.               AMENDED ANSWER AND
21                                       COUNTERCLAIMS**

22                                       Hearing Date: April 30, 2007
                                         Time: 10:00 a.m.
23                                       Place: Courtroom 1

24                                       Discovery Cut-off: March 3, 2008
                                         Pre-trial Conference: June 2, 2008
25                                       Trial Date: July 1, 2008

26                                       Judge: Hon. Stephen G. Larson

27

28

EXHIBIT A

PAGE 4

I, MARIANA TRUEBA ALMADA, declare and state as follows:

1.      I am the Director of Marketing for MGAE de Mexico ("MGA Mexico"). I have worked for MGAE Mexico since April 26, 2004. Before joining MGAE Mexico, I worked at Mattel de Mexico ("Mattel Mexico") as the Senior Marketing Manager.

2.      I was first contacted about working for MGAE Mexico when I worked at Mattel by Carlos Gustavo Machado Gomez, who also worked at Mattel Mexico.

3.      I planned to leave Mattel immediately after resigning, rather than provide the customary two weeks notice. This is because I did not want to view Mattel's 2004 Spring line, which was to be unveiled at the end of April 2004.

4.      On April 19, 2004, I resigned from Mattel, effective immediately. Machado and another Mattel employee, Pablo Vargas San Jose, also resigned that day. My employment agreement with MGAE Mexico was finalized April 16, 2004.

5.      Before joining MGAE Mexico, I interviewed for the MGAE Mexico job with Isaac Larian and Tom Park. I also discussed the position with Susana Kuemmerle. No one at or associated with MGA or MGAE Mexico—including Larian, Park, and Kuemmerle—ever asked me to take confidential information from Mattel.

EXHIBIT __A__

PAGE __5__

- 1 -

DECL OF MARIANA TRUEBA ALMADA ISO MGAE
MEXICO'S REPLY CV 04-09049 SGL (RNBX)

6.   When I worked at Mattel Mexico, I did not go out of my way to attend Mattel Mexico meetings or contact an ad agency to get information about Barbie. I only attended Mattel Mexico meetings that I was expected to attend as a regular part of my job at Mattel Mexico.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 11th day of April, 2007, Mexico D.F., Mexico.

Mariana Trueba Almada

DECL OF MARIANA TRUEBA ALMADA ISO MGAE MEXICO'S REPLY CV 04-09049 SGL (RNBX)

**EXHIBIT A**

**PAGE 6**

# EXHIBIT B

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
                                     )
        PLAINTIFF, )
                                     )   CASE NO.
    V.                        )   CV 04-9049 SGL
                                   )   (RNBX)
MATTEL, INC., A DELAWARE      )   [CONSOLIDATED WITH
CORPORATION,                 )   NO. 04-9059 AND CASE NO. 05-2727]
                                   )
        DEFENDANTS. )
                                   )
                                   )
AND CONSOLIDATED ACTION (S). )
                                   )

# C O N F I D E N T I A L

# DEPOSITION OF
# CARLOS GUSTAVO MACHADO GOMEZ

# OCTOBER 14, 2008

REPORTED BY:
PAULA A. PYBURN
CSR NO. 7304
JOB NO. 08AE863-PP

EXHIBIT _____ *B*
PAGE _____ *7*



COURT REPORTERS
515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

```
 1    STATE OF CALIFORNIA )
 2    COUNTY OF RIVERSIDE )  ss.
 3
 4         I, Paula A. Pyburn, CSR No. 7304, R.P.R.,
 5    C.L.R., in and for the State of California, do
 6    hereby certify:
 7         I am the deposition officer that
 8    stenographically recorded the testimony in the
 9    foregoing deposition;
10         Prior to being examined the deponent was first
11    duly sworn by me;
12         The foregoing transcript is a true record of
13    the testimony given.
14         Before completion of the deposition, review of
15    the transcript [xx] was [ ] was not requested.  If
16    requested, any changes made by the deponent (and
17    provided to the reporter) during the period allowed
18    are appended hereto.
19
20    Dated _____10/2a/68_____
21
22
23           _____Paula Pybum_____
             Paula A. Pyburn
24           C.S.R. No. 7304, R.P.R.
             Certified LiveNote Reporter
25           EXHIBIT ____B____

             PAGE ____8____
```

121

# EXHIBIT C



1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 90378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5  (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                   EASTERN DIVISION

13  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

14          Plaintiff,                      Consolidated with
                                            Case No. CV 04-09059
15      vs.                                 Case No. CV 05-02727

16  MATTEL, INC., a Delaware               **DISCOVERY MATTER**
17  corporation,                           **[To Be Heard By Discovery Master
                                           Hon. Edward Infante (Ret.)]**
18          Defendant.
                                           THIRD SUPPLEMENTAL
19                                         DECLARATION OF JON COREY IN
                                           SUPPORT OF MATTEL, INC.'S
20                                         MOTION TO COMPEL DEPOSITION
    AND CONSOLIDATED ACTIONS               OF CARLOS GUSTAVO MACHADO
21                                         GOMEZ

22                                         Date:   January 16, 2008
                                           Time:   9:00 a.m.
23                                         Place:  Telephonic Hearing

24                                         **Phase 1**
25                                         Discovery Cut-Off: January 28, 2008
                                           Pre-Trial Conference:  May 5, 2008
26                                         Trial Date:  May 27, 2008

    EXHIBIT    _C_
27
    PAGE   _9_
28

07209/2351295.1                            _1-14_

                    THIRD SUPPLEMENTAL DECLARATION OF JON COREY

## THIRD SUPPLEMENTAL DECLARATION OF JON COREY

I, Jon Corey, declare as follows:

1.     I am a member of the bar of the State of California and the District of Columbia, am admitted to practice before this Court and am a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.     In paragraph 2 of the Declaration of Carlos Gustavo Machado Gomez submitted with his untimely supplemental Memorandum of Points and Authorities in Opposition to Mattel, Inc.'s Motion to Compel (1) Deposition of Carlos Gustavo Machado Gomez, and (2) Consent to Production of Electronic Mail Messages, he declared: "I am current [sic] restricted from traveling outside Mexico [sic] pursuant to court order."  Mr. Machado, however, can obtain and has obtained leave of court to travel to the United States at MGA's request, including as recently as last month, when he was in the Los Angeles area for approximately one week. Mr. Machado was granted leave the same day that he asked for it.

3.     Late yesterday afternoon, January 15, 2008, I received documents which are submissions made by Mr. Machado's counsel in Mexico to the court in Mexico which sought an order allowing Mr. Machado leave to travel to the United States for MGA marketing meetings—technically leave not to comply with the weekly registration and signing requirements.  It also includes the order of that court granting Mr. Machado leave.  A true and correct copy of those documents is attached as Exhibit A.  A true and correct copy of a translation of those documents (except the photocopy of the air travel ticket), and the certification, is attached as Exhibit B.

4.     Mr. Machado made his request for leave to travel to the United States on December 5, 2007, and it was granted on December 5, 2007 (the day before Mr. Machado's counsel offered to produce him for deposition in Mexico

EXHIBIT _____ C _____

PAGE _____ 10 _____

-2-
THIRD SUPPLEMENTAL DECLARATION OF JON COREY

1   City).  I am informed and believe, based on the copy of the air travel ticket that Mr.

2   Machado submitted to the court in Mexico and the letter from MGA requesting that

3   he attend MGA marketing meetings, that he traveled to the United States on

4   December 5, 2007 and remained in the United States—specifically to attend

5   meetings at the request of MGA—until December 13, 2007.  MGA, a party to these

6   proceedings, can similarly request that Mr. Machado appear for deposition in the

7   United States and apparently can do so on a day or two of notice.

8               I declare under penalty of perjury under the laws of the United States

9   of America that the foregoing is true and correct.

10          Executed on January 14, 2008, at Los Angeles, California.

11

12                              By _____

13                                   Jon Corey

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ____C____

PAGE ____11____

-3-

07209/2351295.1

# EXHIBIT A

EXHIBIT _C_

PAGE _12_

FRANCO & FRANCO
BUFETE JURÍDICO, S.C.

PASEO DE LAS PALMAS 755-1201
LOMAS DE CHAPULTEPEC, 11000, MÉXICO D.F.

TEL. (52-55) 5520-7575
FAX (52-55) 5202-9395

CAUSA PENAL: 130/2007-V

...EZA DÉCIMA DE DISTRITO DE PROCESOS
...LES FEDERALES EN EL DISTRITO FEDERAL

CARLOS GUSTAVO MACHADO GÓMEZ, promuevo en la
...citada al rubro y con todo respeto digo:

En auto de 17 de octubre de 2007, su señoría tuvo por exhibi-
...das las garantías fijadas para cumplir mis obligaciones por la concesión
de la libertad provisional que me otorgó.

En dicho auto me hizo saber diversas prevenciones, entre las
...ales se encuentran: la de firmar en el libro de control de procesados
...s días lunes de cada semana y la de no ausentarme del lugar sin
...ermiso de ese juzgado.

El próximo lunes 3 de diciembre cumpliré con mi obligación de
firmar en el mencionado libro de control de procesados. Con fundamento
...el artículo 411 de Código Federal de Procedimientos Penales, solicito
atentamente permiso para ausentarme de este lugar, y no firmar el ci-
tado libro de control el lunes 10 de diciembre de 2007, por lo que el
lunes 17 de diciembre de 2007, continuaré cumpliendo con todas las
obligaciones impuestas.

Lo anterior significa que el permiso que solicito para ausentar-
me del lugar, no excede del marcado en el párrafo primero del señalado
artículo 411.

Agradezco su comprensión.

México, D.F., a 29 de noviembre de 2007.

CARLOS GUSTAVO MACHADO GÓMEZ

EXHIBIT _____ C _____

PAGE _____ 13 _____





**En veintinueve de noviembre de dos mil siete**, la secretaria da cuenta a la jueza, con el oficio **835/UEIDCSPCAJ/2007**, firmado por la agente del Ministerio Público de la Federación, titular de la Mesa XXX UEIDCSPCAJ, adscrita a la Unidad Especializada en Investigación de Delitos Cometidos por Servidores Públicos y Contra la Administración de Justicia de la Subprocuraduría en Investigación Especializada en Delitos Federales de la Procuraduría General de la República; así como, con el oficio **4832**, firmado por el secretario de acuerdos del Primer Tribunal Unitario en Materia Penal del Primer Circuito y con el escrito firmado por el procesado **CARLOS GUSTAVO MACHADO GÓMEZ**, recibidos en la oficina de correspondencia de este juzgado a las trece horas con cincuenta y dos minutos y catorce horas con diez minutos del día de ayer y a las once horas con cuarenta y ocho minutos del día de la fecha, registrados en el libro respectivo con los folios **12350, 12351 y 12359**, respectivamente. *CONSTE.*

SECRETARIA.

**MÉXICO, DISTRITO FEDERAL, VEINTINUEVE DE NOVIEMBRE DE DOS MIL SIETE.**

Vista la razón de cuenta, se tiene por recibido el oficio **835/UEIDCSPCAJ/2007**, por el cual, la agente del Ministerio Público de la Federación, titular de la Mesa XXX UEIDCSPCAJ, adscrita a la Unidad Especializada en Investigación de Delitos Cometidos por Servidores Públicos y Contra la Administración de Justicia de la Subprocuraduría en Investigación Especializada en Delitos Federales de la Procuraduría General de la República, solicita copia certificada de la presente causa penal, no como parte de la misma, sino como autoridad investigadora de hechos posiblemente constitutivos del delito contra la administración de justicia, cometido por el Magistrado del Primer Tribunal Unitario en Materia Penal, licenciado Jorge Fermín Rivera Quintana; asimismo, señala que sus oficinas se encuentran ubicadas en Insurgentes Sur número 235, onceavo piso, Colonia Roma, Delegación Cuauhtémoc, código postal 06700, en esta ciudad; atento lo anterior, con apoyo en el artículo 41 del Código Federal de Procedimientos Penales, no ha lugar a acordar de conformidad su petición, dado que como bien lo sostiene no es parte en la presente causa penal, por lo que tal petición, en todo caso, deberá realizarse a través del representante social Federal adscrito.

Por otra parte, glósese a los autos el oficio **4832**, por el cual, el secretario de acuerdos del Primer Tribunal Unitario en Materia Penal del Primer Circuito, devuelve el testimonio enviado con motivo del recurso de apelación interpuesto contra el auto de nueve de noviembre del año en curso, a efecto de que sea debidamente integrado el respectivo testimonio de la causa penal, toda vez que aún y cuando les fue informado que se remitieron copias certificadas del expediente, con

EXHIBIT _____ *C*

PAGE _____ *14*



motivo de diverso recurso de apelación, la substanciación de los recursos interpuestos se manejarán por cuerda separada para emitir la resolución correspondiente, sin importar que el mismo tribunal conozca de diverso recurso de apelación relacionado con la misma causa penal; asimismo, refiere que una vez que se integre el testimonio, se envíe nuevamente a esa superioridad, para la debida substanciación de los recursos hechos valer ante esa alzada; atento lo anterior, a la brevedad posible, remítase copia certificada de la presente causa penal a la superioridad, en relación al recurso de apelación de que se trata.

En ese sentido, dado que el veintiséis de noviembre actual fue admitido diverso recurso de apelación interpuesto contra el auto de quince del presente mes y año, en el que se ordenó que únicamente se enviara al Tribunal Unitario en Materia Penal del Primer Circuito en turno, las constancias inherentes al recurso interpuesto, con apoyo en el artículo 41 del Código Federal de Procedimientos Penales, obténganse las copias de la presente causa penal y procédase a su certificación, para estar en aptitud de remitirlas para la substanciación del recurso admitido el veintiséis de los actuales.

En tales condiciones, dado el volumen de la presente causa penal, solicítese al departamento de reproducción del Consejo de la Judicatura Federal, con sede en este edificio, tenga a bien obtener tres copias del expediente constante de once tomos y cinco anexos, a fin de ser remitidos al Primer Tribunal Unitario en Materia Penal del Primer Circuito, y al de turno, para la substanciación de los recursos planteados, así como al representante social de la Federación.

Finalmente, glósese a los autos el escrito por el cual, el procesado **CARLOS GUSTAVO MACHADO GÓMEZ**, solicita permiso para ausentarse de este lugar (sic) y no firmar el libro de control de procesados, el lunes diez de diciembre de dos mil siete; atento lo anterior, con apoyo en el artículo 41 del ordenamiento procesal en cita, no ha lugar a acordar de conformidad su petición, toda vez que no expone los motivos por los cuales solicita tal autorización, ni mucho menos exhibe la documentación que acredite tal circunstancia.

NOTIFÍQUESE Y PERSONALMENTE A CARLOS GUSTAVO MACHADO GÓMEZ.

Así, lo proveyó y firma **VERÓNICA JUDITH SÁNCHEZ VALLE**, jueza Décimo de Distrito de Procesos Penales Federales en el Distrito Federal, asistida la secretaria **Lourdes Rosales Cabrera**, quien autoriza, DOY FE.

JUEZA

SECRETARIA

EXHIBIT _____ C

PAGE _____ 15

FRANCO & FRANCO
BUFETE JURÍDICO, S.C.

PASEO DE LAS PALMAS 755-1201
LOMAS DE CHAPULTEPEC, 11000, MÉXICO D.F.

TEL. (52-55) 5520-7575
FAX. (52-55) 5202-9395

CAUSA PENAL: 130/2007.V

## JUEZA DÉCIMA DE DISTRITO DE PROCESOS PENALES FEDERALES EN EL DISTRITO FEDERAL

**CARLOS GUSTAVO MACHADO GÓMEZ**, promuevo en la causa citada al rubro y con todo respeto digo:

He quedado debidamente notificado del auto de 29 de noviembre de 2007, en el que no acuerda de conformidad mi petición de no firmar el libro de control de procesados, el lunes 10 de diciembre de 2007.

Los motivos por los cuales reitero mi petición y exhibo la documentación correspondiente, son los siguientes:

En carta de 27 de noviembre de 2007, el señor Emilio Menotti, Director de Operaciones de MGAE, Sociedad de Responsabilidad Limitada, me ordenó trasladarme a la ciudad de Los Ángeles, California, Estados Unidos de América, con el fin de asistir a diversas reuniones de la empresa a la que presto mis servicios, del 5 al 13 de diciembre de 2007, que son de gran importancia para la misma, como resulta de la lectura del original de la carta que acompaño como anexo 1.

Así, el 3 del actual adquirí el boleto 5192123600 3 expedido por Aeroméxico, para salir de esta Ciudad de México hacia Los Ángeles el día 5 y regreso el 13, todos del presente diciembre de 2007. Acompaño fotocopia certificada por notario del mencionado boleto como anexo 2.

Expuesto lo anterior, con todo respeto reitero el permiso que solicito para ausentarme de México, por un periodo que no excede del marcado en el párrafo primero del señalado artículo 411 del Código Federal de Procedimientos Penales.

Agradezco anticipadamente su acuerdo favorable.

México, D.F., a 4 de diciembre de 2007.

Carlos Gustavo Machado Gómez

EXHIBIT _____ C

PAGE _____ 16



Corporate Office:
16380 Roscoe Blvd.
Van Nuys, CA 91406 USA
Tel 818.894.2525
Fax 818.892.9060

México, D.F., a 27 de noviembre de 2007

Señor Carlos Gustavo Machado Gómez:
P r e s e n t e

Comunico a usted que el 5 al 13 del próximo diciembre de 2007, se llevarán a cabo en la oficina matriz de MGAE, en la ciudad de Los Ángeles, California, Estados Unidos de América, reuniones internacionales de mercadotecnia, en las que se tratarán los siguientes temas:

Nueva línea de productos para la Temporada de 2008.
Estrategias de posicionamiento de las marcas de mayor importancia.
Diseños de comercialización y planeación para 2008.
Globalización de las estrategias y diseños para 2008.

Lo anterior, por ser de su exclusiva competencia los temas señalados en que participará, deberá trasladarse a Los Ángeles, California, Estados Unidos de América, del 5 al 13 de diciembre de 2007.

Atentamente,

Emilio Menotti Velázquez
Director de Operaciones de MGAE

EXHIBIT ___C___

PAGE ___17___



EXHIBIT _C_

PAGE _18_



MIGUEL ANGEL ZAMORA VALENCIA, NOTARIO NUMERO SETENTA Y OCHO DEL DISTRITO FEDERAL, CERTIFICO: Que la presente copia fotostática en una foja, escrita solo por su frente, que rubrico y sello, concuerda fielmente con su original del que fue sacada, tuve a la vista y con el cual cotejé, y que es un boleto de avión de la línea "Aeromexico", de la Ciudad de México a los Angeles, para el día cinco de diciembre del presente año, a favor del señor CARLOS GUSTAVO MACHADO.- Este cotejo se expide con fundamento y para los efectos exclusivos de lo dispuesto en el artículo ciento sesenta de la Ley del Notariado para el Distrito Federal.- Para constancia levanté hoy el Registro número MIL QUINIENTOS SETENTA Y CINCO del libro de registro número tres de cotejos del protocolo de esta Notaría.- México, Distrito Federal, a cuatro de diciembre del año dos mil siete.- DOY FE.--------------------------------------------------------------





EXHIBIT ___C___

PAGE ___19___




NTA Y
:ostática
e con su
oleto de
a el día
STAVO
os de lo
Distrito
:NTOS
de esta
- DOY

FORMA B-2

En cinco de diciembre de dos mil siete, María de Lourdes Campos Campos, secretaria adscrita al Juzgado Décimo de Distrito de Procesos Penales Federales, **certifica:** que al tener a la vista el libro de control de firmas de procesados en libertad, tomo X, foja 195, se aprecia que el procesado **CARLOS GUSTAVO MACHADO GÓMEZ**, no ha dejado de cumplir con su obligación de presentarse a firmar el libro respectivo, certificación que se hace para los efectos legales a que haya lugar. DOY FE.

SECRETARIA

En la misma fecha, la secretaria da cuenta a la jueza, con el escrito firmado por el procesado **CARLOS GUSTAVO MACHADO GÓMEZ** y anexos, recibido en la oficina de correspondencia de este juzgado a las once horas con cincuenta minutos del día de ayer, registrado en el libro respectivo con el folio 12524, así como con la certificación que antecede. *CONSTE.*

SECRETARIA.

**MÉXICO, DISTRITO FEDERAL, CINCO DE DICIEMBRE DE DOS MIL SIETE.**

Agréguese a los autos el escrito por el cual, el procesado **CARLOS GUSTAVO MACHADO GÓMEZ**, reitera su petición para ausentarse de México del cinco al trece de diciembre del año en curso, por motivos laborales; asimismo, exhibe la documentación que acredita tal circunstancia y copia certificada del boleto 5192123600 3, expedido por Aeroméxico; atento lo solicitado, tomando en consideración la certificación de cuenta, en la que se advierte que hasta la fecha dicho procesado no ha dejado de cumplir con las obligaciones contraídas con este tribunal, al momento de obtener su libertad provisional, y únicamente solicita permiso de ausentarse del país por nueve días, esto es del cinco al trece del mes y año en curso, con fundamento en el artículo 411 del Código Federal de Procedimientos Penales, se concede el permiso solicitado por el procesado, por lo que deberá presentarse a firmar el libro respectivo hasta el diecisiete de los actuales; hágase las anotaciones correspondiente en el libro de firmas de procesados en libertad.

**NOTIFÍQUESE Y PERSONALMENTE A CARLOS GUSTAVO MACHADO GÓMEZ.**

Así, lo proveyó y firma **VERÓNICA JUDITH SÁNCHEZ VALLE**, jueza Décimo de Distrito de Procesos Penales Federales en el Distrito Federal, asistida de **María de Lourdes Campos Campos**, secretaria quien autoriza. DOY FE.

JUEZA

SECRETARIA
Lic. LRC/elrm

EXHIBIT C

PAGE 20

... ... Distr. Federal, a las nueve horas del _Seis_ de _diciembre_ de _2007_ se notificó por lista a las partes, lo que ... ... a Doy fe.

CERTIFICACION

EL SECRETARIO DEL JUZGADO DÉCIMO DE DISTRITO DE PROCESOS PENALES FEDERALES EN EL DISTRITO FEDERAL, C E R T I F I C A QUE LA (S) PRESENTE (S) COPIA (S) FOTOSTÁTICA (S) CONSTANTE (S) DE ___8___, FOJAS ÚTILES SON FIEL Y EXACTAS DE SUS ORIGINALES QUE OBRAN EN LOS AUTOS DEL EXPEDIENTE NÚMERO _130/2007.V_ _Tomo XI_ , INSTRUIDO EN CONTRA DE _Mamani Trusba Almcida y Otros_ POR LA COMISIÓN DEL DELITO DE _Fraude en el art 223 frac V Ley de P.I_ , DEL ÍNDICE DE ESTE JUZGADO, MISMA ... SE EXPIDEN A PETICIÓN DE _la coadyuvancia del Ministerio Publico_

MÉXICO, B.F. A _20_ DE _Diciembre_ DEL _2007_

EL SECRETARIO

_Maria de los Angeles Campos. Campos_

PODER JUDICIAL DE LA FEDERACION

EXHIBIT ___C___

PAGE ___21___

# EXHIBIT B

EXHIBIT _C_

PAGE _22_

[redacted]          *1*

Franco & Franco
Bufete Jurídico, S.C.

Paseo de las Palmas 755-1201
Lomas de Chapultepec, 11000, Mexico, F.D.

Tel. (52-55) 5520-7575
Fax (52-55) 5202-9395

### CRIMINAL CASE: 130/2007-V

**TENTH DISTRICT JUDGE OF FEDERAL
CRIMINAL MATTERS IN THE FEDERAL DISTRICT**

[illegible stamp]

**CARLOS GUSTAVO MACHADO GÓMEZ,** appear in the case mentioned in reference and respectfully state:

In the order of October 17, 2007, Your Honor took note of the posting of the guarantees established in order to comply with my obligations in connection with my release on parole.

[illegible stamp]   In said order, your honor informed me of various obligations, including: to sign in the control book of defendants on the Monday of each week and **not to be absent from the place without the permission of this court.**

Next Monday, December 3, I will comply with my obligation of signing said control book of defendants. Pursuant to article 411 of the Federal Code of Criminal Procedure, I respectfully request permission to be absent from this place and **not to sign said control book on Monday, December 10, 2007,** so that I will continue complying with all obligations imposed on Monday, December 17, 2007.

The above means that the permission I request to be absent from the place does not exceed that indicated in paragraph one of said article 411.

I thank you for your understanding.

Mexico, F.D., November 29, 2007.

[signature]
**CARLOS GUSTAVO MACHADO GÓMEZ**

12359
[illegible]

EXHIBIT ___C___

PAGE ___23___

[stamp and text cut off]

[redacted]
FORM B-2

2

**On the twenty-ninth day of November two thousand seven,** the court office reports to the judge, by letter 835/UEIDCSPCAJ/2007, signed by the Federal Prosecutor, head of Desk XXX UEIDCSPCAJ, of the Unit Specialized in Investigation of Crimes Committed by Public Servants and Against the Administration of Justice of the [illegible stamp]Assistant Prosecutor's Office for Investigation Specialized in Criminal Crimes of the Attorney General's Office, as well as letter 4832, signed by the clerk of the First One-Judge Court in Criminal Matters of the First Circuit and the brief signed by defendant **CARLOS GUSTAVO MACHADO GÓMEZ,** received at the correspondence office of this court at one fifty-two P.M. and two ten P.M. yesterday and at eleven forty-eight A.M. today, recorded in the respective book on folios **12350, 12351** and **12359** respectively. *FOR THE RECORD.*

[illegible stamp]

[signature]
**CLERK.**

### MEXICO, FEDERAL DISTRICT, THE TWENTY-NINTH DAY OF NOVEMBER TWO THOUSAND SEVEN

In light of the above, we take note of the receipt of letter **835/UEIDCSPCAJ/2007,** by which the Prosecutor Head of Desk XXX UEIDCSPCAJ, of the Unit Specialized in Investigation of Crimes Committed by Public Servants and Against the Administration of Justice of the Assistant Prosecutor's Office for Investigation Specialized in Criminal Crimes of the Attorney General's Office, requests a certified copy of said criminal case, not as a party thereto, but as the investigating authority of facts possibly constituting a crime against the administration of justice committed by the Magistrate of the First One Judge Court in Criminal Matters, attorney Jorge Fermin Rivera Quintana; furthermore, he indicates that his offices are located at Insurgentes Sur number 235, eleventh floor, Colonia Roma, Delegacion Cuauhtemoc, zip code 06700, in this city; in light of the above, pursuant to article 41 of the Federal Code of Criminal Procedure, it is not appropriate to grant his request because, as sustained by him, he is not a party to this criminal case so that such request in any case must be made through the appropriate Federal social representative.

On the other hand, note will be made in the file of letter **4832,** by which the clerk of the First One Judge Court in Criminal Matters of the First Circuit returns the certified copy sent in connection with the appeal filed from the decision of November ninth of this year, to be duly integrated in the criminal case, because, even though he was informed that certified copies of the file were delivered, in

EXHIBIT ____C____

PAGE ____24____

[stamp cut off]

connection with a different appeal, the substantiation of the appeals filed will be handled under separate files, in order to issue the corresponding resolution regardless of the fact that the same court hears another appeal related to the same criminal case; furthermore, he indicates that after the inclusion of the certified copy, it should be sent again to this superior court for due substantiation of the appeals filed with this higher court; in light of the above, as soon as possible, a certified copy of this criminal case must be delivered to the higher court in connection with the appeal in question.                                                                                    [illegible]

In this sense, since on November twenty-sixth of this year, a different appeal was admitted, filed from the decision of the fifteenth of this month and year, ordering that the documents of the appeal be sent only to the Criminal One Judge Court of the First Circuit on duty, pursuant to article 41 of the Federal Code of Criminal Procedures, copies of the present criminal case will be obtained and they will be certified in order to be forwarded for substantiation of the file admitted on the twenty-sixth of this month. [illegible stamp]

Under these conditions, given the volume of this criminal case, we are requesting the reproduction department of the Council of the Federal Judicature headquartered in this building to obtain three copies of the file consisting of eleven volumes and five addenda in order to forward them to the First One Judge Court in Criminal Matters of the First Circuit and to the court on duty for the substantiation of the appeals file, as well as to the Federal social representative.

Finally, a note will be made in the documents concerning the brief by which defendant **CARLOS GUSTAVO MACHADO GÓMEZ** requests permission to be absent from this place (sic) and not to sign the control book of defendants on Monday, December 10, 2007; in light of the above, pursuant to article 41 of the procedural code quoted, it is not appropriate to grant his petition because he does not indicate the reasons for which he requests such authorization, nor does he submit any documentation proving such circumstance.

**TO BE PERSONALLY SERVED ON CARLOS GUSTAVO MACHADO GÓMEZ.**

So ordered and signed by **VERÓNICA JUDITH SÁNCHEZ VALLE**, District Judge number Ten of Federal Criminal Matters in the Federal District assisted by clerk **Lourdes Rosales Cabrera** who authorizes. **I CERTIFY.**

**JUDGE**
[Signature]

**SECRETARY**
[Signature]

EXHIBIT ___C___

PAGE ___25___

[redacted]          3

Franco & Franco
Bufete Jurídico, S.C.

Paseo de las Palmas 755-1201                           Tel. (52-55) 5520-7575
Lomas de Chapultepec, 11000, Mexico, F.D.             Fax. (52-55) 5202-9395

CRIMINAL CASE: 130/2007-V

TENTH DISTRICT JUDGE OF FEDERAL
CRIMINAL MATTERS IN THE FEDERAL DISTRICT

*(1/2 attachments) [illegible] 12524*

**CARLOS GUSTAVO MACHADO GÓMEZ,** appearing in the case cited in reference, respectfully states:

I was duly notified of the decision of November 29, 2007, which rejected my request not to sign the control book of defendants on Monday, December 10, 2007.

[illegible stamp]

The reasons for which I repeat my request and produce the corresponding documentation are the following:

In a letter dated November 27, 2007, Mr. Emilio Menotti, Director of Operations of MGAE, Sociedad de Responsabilidad Limitada, ordered me to travel to Los Angeles, California, United States of America, to attend various meetings of the company for which I work, from December 5 to 13, 2007, which are of great importance for the company as arises from reading the original letter, which I enclose as exhibit 1.

Thus, on the 3rd of this month, I purchased ticket 5192123600 3 issued by Aeroméxico, to leave Mexico City going to Los Angeles on the 5th, returning on the 13th, this month of December 2007. I enclose a photocopy certified by notary of said ticket as exhibit 2.

After indicating the above, I respectfully repeat the request for permission to be absent from Mexico for a period not exceeding that indicated in the first paragraph of said article 411 of the Federal Code of Criminal Procedure.

I thank you in advance for your approval.

Mexico, F.D., December 4, 2007

[signature]

Carlos Gustavo Machado Gómez

EXHIBIT ___C___

PAGE ___26___

[redacted]                4

[logo:] [text cut off] GA
ENTERTAINMENT®

Entertainment Products Company

**Corporate Office:**
16380 Roscoe Blvd.
Van Nuys, CA 91406 USA
Tel 818.894.2525
Fax 818.892.9060

Mexico, F.D., November 27, 2007

Mr. Carlos Gustavo Machado Gómez:
By Messenger

I am informing you that next December 5 to 13, 2007, at the headquarters of MGAE in the city of Los Angeles, California, United States of America, international marketing meetings will be held and will discuss the following topics:
1. New product line for the 2008 season.
2. Strategies for positioning the major brands.
3. Designs for marketing and planning for 2008.
4. Globalization of the strategies and designs for 2008.
In light of the above, since the above topics are under your exclusive competence, you must participate and therefore travel to Los Angeles, California, United States of America, from December 5 to 13, 2007.

[illegible stamp]

Sincerely,
[signature]
Emilio Menotti Velázquez
Director of Operations of MGAE

EXHIBIT _C_

PAGE _27_

[illegible stamp]

[redacted]          5

    [photocopy of airplane ticket, bilingual Spanish/English]

    [stamp:]
ATTY. MIGUEL ANGEL ZAMORA VALENCIA
ATTY. MIGUEL ANGEL ZAMORA Y VEGA
DEC. 4, 2007
ASSOCIATED NOTARY OFFICES 78 AND 10 [illegible]
MEXICO, F.D.

[stamp:]
COMPARED

[illegible stamp]

EXHIBIT _____ *C*

PAGE _____ 28

6

[stamp cut off]

**MIGUEL ANGEL ZAMORA VALENCIA, NOTARY NUMBER SEVENTY-EIGHT OF THE FEDERAL DISTRICT, CERTIFY:** That this photocopy on one page, written only on the front which I initial and stamp, is a true copy of its original from which it was made, which I saw and with which I compared it, and that it is an airplane ticket from the "Aeromexico" airline, from Mexico City to Los Angeles for December fifth, this year, issued to mister CARLOS GUSTAVO MACHADO. – This comparison is issued on the grounds and for the exclusive purposes of article one hundred sixty of the Notary Law for the Federal District. – For the record, I made today Registration Number ONE THOUSAND FIVE HUNDRED SEVENTY-FIVE in the registration book number three of comparisons of the protocol of this Notary office. – Mexico, Federal District, December fourth of two thousand seven. – I CERTIFY. - - - - - -

[illegible stamp]                    [signature]                    [illegible stamp]

EXHIBIT _____ C _____

PAGE _____ 29 _____

[redacted]
FORM B-2

7

[stamp cut off]     On **December five, two thousand seven, Maria de Lourdes Campos Campos,** clerk of the Tenth District Court of Federal Criminal Matters, **certifies:** that after seeing the control book of signatures of defendants freed on parole, volume X, page 195, it is found that defendant **CARLOS GUSTAVO MACHADO GÓMEZ,** did not comply with his obligation to come to sign the respective book, which we certify for the applicable legal purposes. **I CERTIFY.**

[illegible stamp]                                                                    [signature]
                                                                                      **CLERK**

On the same date, the clerk reports to the judge the brief signed by defendant **CARLOS GUSTAVO MACHADO GÓMEZ** and exhibits received at the correspondence office of this court at eleven fifty A.M. yesterday, recorded in the respective book folio **12524,** as well as the prior certification. *FOR THE RECORD.*

[illegible stamp]                                                                    [signature]
                                                                                      **CLERK**

**MEXICO, FEDERAL DISTRICT, DECEMBER FIVE, TWO THOUSAND SEVEN.**

Add to the file the brief by which defendant **CARLOS GUSTAVO MACHADO GÓMEZ** repeats his request to be absent from Mexico from December fifth to December thirteenth of this year for work reasons; furthermore, he exhibits the documentation proving such circumstance and certified copy of ticket 5192123600 3, issued by Aeromexico; in light of the request, taking into consideration the certification which shows that to date said defendant has constantly complied with his obligations towards this court, when he obtained at his release on parole, and he only requests permission to be absent from the country for nine days, namely from the fifth to the thirteenth of this month and year, pursuant to article 411 of the Federal Code of Criminal Procedure, we grant the request of the defendant, so that he must appear to sign the respective book by the seventeenth of this month; the corresponding notes will be made in the book of signatures of defendants freed on parole.

**TO BE PERSONALLY SERVED ON CARLOS GUSTAVO MACHADO GÓMEZ.**

So ordered and signed by **VERÓNICA JUDITH SÁNCHEZ VALLE,** District Judge number Ten of Federal Criminal Matters in the Federal District assisted by **Maria de Lourdes Campos Campos,** clerk, who authorizes. **I CERTIFY.**

**JUDGE**
[signature]

**SECRETARY**
[signature] Atty. LRC/airm

EXHIBIT _____ *C*

PAGE _____ *30*

8
[stamp cut

[illegible]

## CERTIFICATION

[illegible stamp]

THE CLERK OF THE TENTH DISTRICT COURT OF FEDERAL CRIMINAL MATTERS IN THE FEDERAL DISTRICT CERTIFIES THAT THIS PHOTOCOPY (THESE PHOTOCOPIES) CONSISTING OF _8_ FULL PAGES ARE A TRUE AND EXACT COPY OF THEIR ORIGINALS FOUND IN THE DOCUMENTS OF FILE [illegible stamp]NUMBER _130/2007 / V, Volume XI_, FILED AGAINST _Mariana Trueba Almada, et al._, FOR COMMITTING THE OFFENSE OF _As described in article 223 section V of the Intellectual Property Law_, ON THE DOCKET OF THIS COURT, ISSUED AT THE REQUEST OF _the Assistant Prosecutor_ MEXICO, F.D. _December 20, 2007._

COURT CLERK

[signature]

[stamp:]
JUDICIAL BRANCH OF THE FEDERATION
UNITED MEXICAN STATES                          [illegible]

EXHIBIT ___C___

PAGE ___31___



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PORTLAND
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Marina Yoffe, hereby certify that the attached translation of "DOC150108" is to the best of my knowledge and belief, a true and accurate translation from Spanish into English.

Marina Yoffe

Sworn to before me this

16th day of January, 2008

Signature, Notary Public

PAUL D. RALSTON
Notary Public, State of New York
No. 01RA6023867
Qualified in Queens County
Commission Expires May 3, 20 ι(

Stamp, Notary Public

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016   T 212.689.5565   F 212.689.1059   WWW.TRANSPERFECT.COM

EXHIBIT _____ C

PAGE _____ 32

# EXHIBIT D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                              Date: September 2, 2008

Title:      MATTEL, INC. -v- MGA, INC.
            AND CONSOLIDATED ACTIONS
==========================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        Jim Holmes                                      None Present
        Courtroom Deputy Clerk                          Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                          None Present

PROCEEDINGS:    ORDER SETTING VARIOUS BRIEFING SCHEDULES

        The Court, having considered the positions of counsel at the hearing herein, as well as the parties' proposed scheduling positions, hereby sets the following scheduling order for further proceedings in this matter:

1.   The case is STAYED from the date of this order through September 19, 2008, <u>except</u> for efforts aimed in good faith at a complete and global settlement.  Principal corporate officers for both plaintiff and defendants (Mr. Eckert and Mr. Larian) are ORDERED to make themselves available, at a mutually agreeable time, to meet with counsel and Ambassador Prosper to discuss a global resolution of this matter.

2.   On September 29, 2008, the parties may file opening briefs and submissions regarding remaining claims and defenses for Phase 1(c) as well as opening briefs and submissions for injunctive relief, constructive trust, and/or other remedial measures.  Response briefs and submissions are due October 13, 2008.  Reply briefs and submissions are due October 20, 2008.  A hearing not to exceed four hours will be conducted before this Court on **Monday, November 10, 2008, at 1:00 p.m.**

MINUTES FORM 90                                    Initials of Deputy Clerk __jh_____
CIVIL -- GEN                          1

EXHIBIT __*D*__

PAGE __33__

3.    Opening briefs for JMOLs (new or renewed), motion(s) for new trial, and/or motion(s) for
remittitur may be filed 10 days following the Court's ruling on Phase 1(c) issues and its
issuance of any injunction(s), constructive trust(s), and/or other remedial measures.
Response briefs are due 14 days following the opening briefs, and reply briefs are due 7
days following the response briefs.  A hearing will be set by the Court after receiving the
response briefs.  Depending on the outcome of the hearing, the Court may address or defer
addressing the following additional issues: (1) Whether or not to issue a judgment or await
completion of Phase 2; (2) the appointment of a discovery master for Phase 2 (the Court will
provide three proposed discovery masters in advance of the hearing to which counsel for
the parties may indicate any objection(s)); and (3) further scheduling for Phase 2.

4.    All discovery related to Phase 2 is STAYED pending the hearing described in paragraph 3,
except as follows:  For good cause shown, the Court ORDERS the deposition of **Carlos
Gustavo Machado** and **Jorge Castillo** to be taken at a mutually convenient date within 30
days of September 19, 2008.  Any disputes concerning the taking of these depositions shall
be presented to this District Judge in the manner prescribed in Local Rule 37.

      **IT IS SO ORDERED.**

EXHIBIT __D___
PAGE __34___

Case 2:04-cv-09049-SGL-RNB     Document 4293     Filed 09/02/2008     Page 3 of 3

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)   **Case Title**  Mattel, Inc. v. MGA ENTERTAINMENT, INC

**Title of Document**  MINUTES OF SEPTEMBER 2, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| ✓ | US Attorneys Office - Civil Division -L.A. |
| ✓ | US Attorneys Office - Civil Division - S.A. |
| ✓ | US Attorneys Office - Criminal Division -L.A. |
| ✓ | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | ***ADD NEW NOTICE PARTY*** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor): P.O. Box 581103

Salt Lake City, UT   84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

\* For CIVIL cases only

| ***JUDGE / MAGISTRATE JUDGE (list below):*** |
|---|
| |
| |
| |
| |

**Initials of Deputy Clerk** jh

G-75   (03/07)     NOTICE PARTY SERVICE LIST

EXHIBIT D

PAGE 35

# EXHIBIT E

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Robert C. O'Brien Pursuant To Order Of January 6, 2009]**<br><br>**PROOF OF SERVICE**<br><br>Hearing Date:    TBD<br>Time:          TBD<br>Place:         TBD<br><br>**Phase 2**<br><br>Discovery Cutoff:    Not Set<br>Pre-trial Conference: Not Set<br>Trial;            Not Set |

EXHIBIT _E_

PAGE _36_

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On February 6, 2009, I served true copies of the following document(s) described as

    **(1) MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITIONS OF PABLO VARGAS AND MARIANA TRUEBA; AND REQUEST FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES;**

    **(2) DECLARATION OF MICHAEL T. ZELLER IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL DEPOSITIONS OF PABLO VARGAS AND MARIANA TRUEBA; AND REQUEST FOR SANCTIONS**

    on the parties in this action as follows:

Robert Herrington, Esq.
Skadden Arps Slate Meagher & Flom
'Robert.Herrington@skadden.com';

Jason Russel, Esq.
Skadden Arps Slate Meagher & Flom
'Jason.Russell@skadden.com';

Patricia Glaser, Esq.
Glaser Weil Fink Jacobs & Shapiro, LLP.
'pglaser@glaserweil.com';

Russell J. Frackman
Mitchell Silberberg & Knupp, LLP.
'rjf@msk.com'

**BY ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission from rachelfiset @quinnemanuel.com on February 6, 2009, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es). The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 6, 2009, at Los Angeles, California.

/s/
RACHEL FISET

EXHIBIT ___E___

PAGE ___37___

# EXHIBIT F

**Rachel Fiset**

| | |
|---|---|
| **From:** | cacd_ecfmail@cacd.uscourts.gov |
| **Sent:** | Monday, February 09, 2009 12:13 PM |
| **To:** | ecfnef@cacd.uscourts.gov |
| **Subject:** | Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc Notice of Manual Filing (G-92) |

This is an automatic e-mail message generated by the CM/ECF system. Please **DO NOT
RESPOND** to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy
permits attorneys of record and parties in a case (including pro se litigants) to receive one free
electronic copy of all documents filed electronically, if receipt is required by law or directed by the
filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each
document during this first viewing. However, if the referenced document is a transcript, the free
copy and 30 page limit do not apply.

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Corey, Jon on 2/9/2009 at 12:12 PM PST and filed on
2/9/2009
**Case Name:**          Carter Bryant v. Mattel Inc
**Case Number:**     2:04-cv-9049
**Filer:**                   Mattel Inc
**Document Number:** 4793

**Docket Text:**
**NOTICE of Manual Filing filed by Defendant Mattel Inc of MATTEL, INC.'S MOTION TO
COMPEL DEPOSITIONS OF PABLO VARGAS AND MARIANA TRUEBA; AND REQUEST
FOR SANCTIONS. (Corey, Jon)**

**2:04-cv-9049 Notice has been electronically mailed to:**

Adil M Khan     amkhan@glaserweil.com

Alexander H Cote     acote@obsklaw.com, feseroma@obsklaw.com

Alisa Morgenthaler Lever     amorgenthaler@chrisglase.com

Amman A Khan     akhan@glaserweil.com

Brett Dylan Proctor     dylanproctor@quinnemanuel.com, westonreid@quinnemanuel.com

Caroline H Mankey     cmankey@glaserweil.com

Christian C Dowell     cdowell@kmwlaw.com

EXHIBIT    _F_

2/18/2009                                        PAGE    _38_

Cyrus S Naim    cyrusnaim@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

David W Hansen    dhansen@skadden.com

Diane C Hutnyan    dianehutnyan@quinnemanuel.com, andreahoeven@quinnemanuel.com

Douglas Andrew Winthrop    dwinthrop@howardrice.com

Emil W Herich    eherich@kmwlaw.com

Jason D Russell    jrussell@skadden.com, allison.velkes@skadden.com

Jennifer A Lopez    jennifer.lopez@bingham.com

Joel N Klevens    jklevens@glaserweil.com

John B Quinn    johnquinn@quinnemanuel.com

Jon D Corey    joncorey@quinnemanuel.com

Kenneth A Plevan    kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

Larry W McFarland    lmcfarland@kmwlaw.com

Leah Chava Gershon    leah@spertuslaw.com

Linda M Burrow    burrow@caldwell-leslie.com, popescu@caldwell-leslie.com, wilson@caldwell-leslie.com

Marina Vladimir Bogorad    marina.bogorad@skadden.com

Mark E Overland    moverland@obsklaw.com, jhibino@obsklaw.com

Matthew C Bousquette    caldwell@caldwell-leslie.com

Michael P Kelly    mikelly@skadden.com

Michael T Zeller    michaelzeller@quinnemanuel.com

Nicole S Pelletier    npelletier@glaserweil.com

Oleg Stolyar    alexstolyar@quinnemanuel.com

Patricia L Glaser    pglaser@glaserweil.com

Peter N Villar    peter.villar@bingham.com

Randa A F Osman    randaosman@quinnemanuel.com

EXHIBIT ___F___

PAGE ___39___

Raoul D Kennedy    rkennedy@skadden.com

Richard Giles Stoll , III    rstoll@glaserweil.com

Robert C O'Brien    obrien.robert@arentfox.com

Robyn Aronson    robynaronson@dwt.com, frankromero@dwt.com

Russell J Frackman    rjf@msk.com, jpn@msk.com, mem@msk.com, nxl@msk.com, phb@msk.com, rbs@msk.com

Sandra L Tholen    tholen@caldwell-leslie.com, mejia@caldwell-leslie.com, wilson@caldwell-leslie.com

Sanford I Weisburst    sandyweisburst@quinnemanuel.com

Scott E Gizer    sgizer@glaserweil.com

Sophia S Lau    slau@glaserweil.com

Stan Karas    stankaras@quinnemanuel.com, gayleduran@quinnemanuel.com, westonreid@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Timothy L Alger    tlalger@gmail.com

Todd E Gordinier    todd.gordinier@bingham.com, julie.valenzuela@bingham.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Amy R Sabrin
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington, DC 20005-2111

Cheryl Plambeck
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019

David W Foster
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington, DC 20005-2111

Jerome B Falk , Jr
Howard Rice Nemerovski Canady Falk & Rabkin
3 Embarcadero Ctr 7th Fl
San Francisco, CA 94111-4024

EXHIBIT _____ *F*

PAGE _____ 40

2/18/2009

Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino, CA 91316

Lauren E Aguiar
Skadden Arps Slate Meagher & Flom
1440 New York Ave
Washington, DC 20005-2111

Peter H Bonis
Peter H. Bonis Law Offices
1990 N. California Blvd, 8th Floor
Walnut Creek, CA 94596

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**\\quinnemanuel.local\DFSR_Network\Users01\rachelfiset\vargas notice of filing 2.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=2/9/2009] [FileNumber=7245700-0]
[bc0461a3e175a001d7de6c6908661782543440992344d88ec6372f8006319cba105e7
370a1f0937a0ad3b9201e6fbf770079c295365c7c6f7531007d52531b58]]

EXHIBIT _____ F _____

PAGE _____ 41 _____

# EXHIBIT G

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL (RNBx)                     Date:  January 9, 2008

and consolidated actions under CV04-9059 & CV05-2727

Title:      CARTER BRYANT -v- MATTEL, INC.
===============================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                                  None Present
Courtroom Deputy Clerk                      Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

None present                                None present

PROCEEDINGS:   ORDER RE E-FILING PROCEDURES FOR DISCOVERY MASTER AND
               UNDER SEAL FILING (IN CHAMBERS)

        In light of the district-wide implementation of mandatory e-filing, the Court clarifies its procedures regarding the submission of paper copies to chambers in these consolidated cases for two types of filings: (1) Matters to be heard by the Discovery Master; and (2) under seal filings.

        Except as set forth below with respect to under seal filings, and only as to matters to be heard by the Discovery Master, counsel need not provide to the Court any paper copies.  Counsel shall continue to follow the Discovery Master's directives as to whether and when paper copies are to be delivered to him.

        For all under seal filings, regardless of whether they are to be heard by the Court or by the Discovery Master, counsel shall (1) manually file an ex parte application to file the documents under seal and concurrently lodge an original and one copy of the documents to be filed under seal; (2) e-file a Notice of Manual Filing; and (3) e-mail a .pdf copy of that ex parte application to the chambers e-mail address together with a WordPerfect or Microsoft Word version of the proposed order for the Court's consideration.

        This order does not alter the e-filing procedures for any other type of documents.  Counsel must continue to provide to the Court a paper courtesy copy of all e-filed documents that are

MINUTES FORM 90                                              Initials of Deputy Clerk: jh
CIVIL -- GEN                    Page 1

EXHIBIT ___G___

PAGE ___42___

Case 2:04-cv-09049-DOC-RNB   Document 4879   Filed 02/19/09   Page 51 of 98   Page ID
#:154523
Case 2:04-cv-09049-SGL-RNB    Document 1522    Filed 01/09/2008    Page 2 of 2

related to motions and other matters to be resolved by the Court.

IT IS SO ORDERED.

EXHIBIT _____ G

PAGE _____ 43

# EXHIBIT H

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority _____ ✓ Send _____
Entered _____ ✓ Closed _____
JS-5/JS-6 _____ JS-2/JS-3 _____
Scan Only_____ Docketed on CM _____
_____ THIS CONSTITUTES NOTICE OF
ENTRY AS REQUIRED BY FRCP 77(d)

JUN 2 7 2007

EASTERN DIVISION
BY _____ DEPUTY

FILED - EASTERN DIVISION
CLERK, U.S. DISTRICT COURT

JUN 2 7 2007

CENTRAL DISTRICT OF CALIFORNIA
BY   JIM HOLMES   DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, | CASE NO. CV 04-09049 SGL |
| Plaintiff, | CONSOLIDATED WITH<br>CV 04-09059 SGL<br>CV 05-02727 SGL |
| v. | |
| MATTEL, INC., | ORDER RE MOTIONS HEARD ON<br>JUNE 11, 2007 |
| Defendant, | |
| AND CONSOLIDATED ACTIONS | |

Presently before the Court is a multitude of motions filed by a number of parties in these consolidated cases. The factual allegations underlying the present actions are expansive and complex. They are set forth below only to the extent necessary for the Court's consideration of the present motions. At their essence, although involving a number of other legal and factual issues, these cases involve the rights to certain fashion dolls.

The present motions, six in total, focus on four basic issues: Two of the motions, filed by certain counter-defendants, address the sufficiency of the allegations made by Mattel, Inc. ("Mattel") in its counterclaims; most notably, these motions challenge the sufficiency of the allegations which underlie Mattel's claims based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.

EXHIBIT ___H___
PAGE ___44___

Docket No. 577
06|27|07

1   §§ 1961-1968 ("RICO").  Another motion challenges the Court's exercise of

2   personal jurisdiction over a foreign corporation, MGAE de México, S.R.L. de C.V.

3   ("MGA Mexico").  Two additional motions seek review of a ruling, issued by a court-

4   appointed discovery master, overruling objections made during a party's deposition

5   that were based on the attorney-client and joint-defense privileges.  A final motion

6   heard on June 11, 2007, addresses the Court's scheduling order that divided the

7   issues to be tried in these consolidated cases into two phases.  This last motion will

8   be addressed in a separate order.

9        The Court has reviewed the parties' filings regarding these motions and held

10  a hearing on June 11, 2007.  For the reasons and in the manner set forth more fully

11  herein, the Court makes the following rulings regarding these motions:

12       1.      Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian

13  ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189):[1]

14  **GRANTED IN PART AND DENIED IN PART.**

15       2.      Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and

16  XI (docket # 191): **GRANTED IN PART AND DENIED IN PART.**

17       3.      Motion of MGA Mexico to Dismiss Mattel's Amended Answer and

18  Counterclaims (docket # 266): **DENIED.**

19       4.      Motion of MGA Objecting to Discovery Master's March 7, 2007, Order

20  (docket # 308): **GRANTED IN PART AND DENIED IN PART.**

21       5.      Motion of Carter Bryant Objecting to Discovery Master's March 7,

22  2007, Order (docket # 306): **GRANTED IN PART AND DENIED IN PART.**

23

24

25

26

27

28

---

[1] Joining in this Motion were MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Carter Bryant ("Bryant"), and MGA Mexico.

2

EXHIBIT ___H___

PAGE ___45___

## I. Factual Allegations

The following allegations appear in the Amended Answer and Counterclaims ("AAC"):

### A.    Bryant's Employment by Mattel

Carter Bryant was hired by Mattel as a Barbie product designer in January 1999. (AAC ¶ 21.) At that time, Bryant signed an "Employee Confidential Information and Inventions Agreement," wherein he agreed not to assist or work for a Mattel competitor while employed by Mattel and that the designs and inventions he created while employed by Mattel were Mattel property. (AAC ¶¶ 22-23.) Bryant also executed a "Conflict of Interest Questionnaire" wherein he certified that, other than as disclosed, he had not worked for a Mattel competitor in the past year, had not engaged in a business transaction with a Mattel competitor that could create a conflict of interest, and that he would inform Mattel immediately if such an event occurred. (AAC ¶¶ 24-25.) While still employed by Mattel, Bryant used Mattel property and resources to develop and design the Bratz concept. (AAC ¶ 26.) Bryant also allegedly enlisted other Mattel employees to perform work on the Bratz line, in some cases, falsely informing those employees that they were working on a Mattel project. (AAC ¶ 27.)

### B.    MGA's Involvement in Bryant's Conduct

MGA knew of and encouraged Bryant's misappropriation of Mattel property and resources. (AAC ¶ 33.) Bryant made affirmative misrepresentations to Mattel, including that he was leaving Mattel for "non-competitive" pursuits. (AAC ¶ 28.) Bryant and MGA concealed from Mattel that Bryant developed Bratz while employed by Mattel, that Bryant worked with MGA during the time he was employed by Mattel, and that Larian and others, not Bryant, were the creators of Bratz. (AAC ¶ 35.) Prior to his departure from MGA, Bryant entered into a contract with MGA to provide design services to MGA on a "top priority" basis. (AAC ¶ 36.) Bryant left Mattel's employ on October 20, 2000; three weeks later, MGA

EXHIBIT _____ H

PAGE _____ 46

1  showed the Bratz prototypes to focus groups and retailers. (AAC ¶ 29.) Soon

2  thereafter, MGA showed the Bratz line to retailers at the Hong Kong Toy Fair in

3  January, 2001, and then began manufacturing and selling the dolls to retailers for

4  an annual revenue in the excess of $500 million. (AAC ¶¶ 31-32.)

5  **C.   Proprietary Information**

6    **1.   Mexico**

7       Counter-defendant Carlos Gustavo Machado Gomez ("Machado"), nonparty

8  Mariana Trueba Almada ("Trueba"), and nonparty Pablo Vargas San Jose

9  ("Vargas") were upper-level employees at Mattel Mexico. (AAC ¶¶ 38-40.) In the

10 three months before all three simultaneously resigned from Mattel Mexico on April

11 19, 2004, they were in contact with MGA via an email account with the address

12 "plot04@aol.com". (AAC ¶ 42.) The three former employees allegedly used this

13 account to supply MGA with confidential and proprietary Mattel information. (AAC

14 ¶ 42.) The three also copied various proprietary Mattel documents onto USB flash

15 drives prior to resigning. (AAC ¶ 44-46.) Shortly before her departure, Trueba

16 increased her access to Mattel's confidential information and attended a meeting at

17 which Mattel personnel analyzed Barbie programs for the United States, Canada,

18 and South America. (AAC ¶ 47.)

19       Among them, Machado, Trueba, and Vargas stole documents containing

20 information regarding Mattel's future products, production and shipping costs, sales

21 information, customer information, marketing information, and strategic research

22 information both in Mexico and worldwide. (AAC ¶ 48.) The stolen data was not

23 limited to the Mexican market; rather, the information stolen had the potential, and

24 in fact did, give MGA an unfair competitive advantage in the United States and

25 around the world. (AAC ¶ 49.)

26       In an attempt to conceal his actions, Machado ran a software program on his

27 Mattel computer in order to erase information pertaining to his contact with MGA.

28 (AAC ¶ 51.) When Mattel alerted Mexican authorities about the theft, they seized

4

EXHIBIT ___H___

PAGE ___47___

1  from MGA's Mexico City offices, pursuant to a search warrant, a large number of

2  documents containing Mattel trade secrets and confidential information. (AAC

3  ¶ 53.)

4        Shortly after the theft, Machado, Trueba, and Vargas traveled to Los

5  Angeles to meet face-to-face with MGA personnel. (AAC ¶ 52.)

6        2.    **Canada**

7        Jane Brisbois was the Director of Sales for the Girls Division in Canada.

8  (AAC ¶ 71.) When she was hired in 1999, she agreed to preserve and not disclose

9  Mattel's proprietary information. (AAC ¶ 71.)  While still employed by Mattel,

10 Brisbois spoke with Larian on September 22, 2005. (AAC ¶ 74.)  That same day,

11 Brisbois copied approximately 45 Mattel documents containing Mattel trade secret

12 information into a USB flash drive that she took from the Mattel Canada office.

13 (AAC ¶ 74.) The files taken by Brisbois included documents regarding Mattel sales,

14 advertising strategies, market analyses, product launch dates, and profit margins in

15 Canada, Mexico, and the United States. (AAC ¶ 74.) Four days later, she resigned

16 from Mattel. (AAC ¶ 74.)

17       When Mattel learned of Brisbois' misappropriation of Mattel documents, it

18 notified Canadian law enforcement officials, who were able to recover the flash

19 drive and the documents from Brisbois. (AAC ¶ 75.)

20       3.    **United States**

21       Ron Brawer was Mattel's Senior Vice President and General Manager.

22 (AAC ¶ 55.) On September 17, 2004, Brawer informed Mattel that he was leaving

23 Mattel to work for MGA. (AAC ¶ 63.) During Brawer's exit interview, he falsely

24 represented that he had returned all proprietary information to Mattel; specifically,

25 Brawer took the information in his contacts file which included contact information

26 for Mattel customers and Mattel employees. (AAC ¶ 68.) Brawer has since used

27 the contact information to induce certain Mattel employees to join MGA and

28 misappropriate Mattel trade secrets. (AAC ¶ 69.)

5

EXHIBIT ____ H

PAGE ____ 48

MGA has also allegedly hired at least 25 other Mattel employees, some of whom have provided MGA with Mattel's confidential information.  (AAC ¶ 77.)

**D.    Larian's Communications Regarding Mattel's New Product Line**

On May 12, 2006, Larian sent an email message to an email distribution list that included a reference to a new Mattel Barbie line ("MY SCENE MY BLING BLING") which Mattel had not yet made public.  (AAC ¶ 79.)  The distribution of the email included members of the media and many of Mattel's most significant customers.  (AAC ¶ 78.)  Soon after sending the email, Larian began calling these significant customers and making false representations about the product; specifically, Larian told each that it was the only retailer to purchase the product and that Mattel would not be supporting the product with television advertising.  (AAC ¶ 80.)

**E.    Exhibit C**

In Exhibit C to the AAC, Mattel references a number of communications, numbering well over one hundred, that it contends constitutes predicate acts of mail fraud or wire fraud.  Exhibit C does not describe the contents of those communications.

**II. Counterclaims Asserted**

Based on these allegations, Mattel asserts the following counterclaims: (1) Copyright Infringement, including willful, vicarious, and contributory infringement, asserted against MGA, MGA Hong Kong, Larian and Bryant; (2) violation of RICO's substantive prohibition, 18 U.S.C. § 1962(c), asserted as authorized by 18 U.S.C. § 1964(c) against all defendants, which alleges predicate acts of, *inter alia*, mail fraud, wire fraud, and criminal copyright infringement; (3) a violation of RICO's prohibition against conspiracies, 18 U.S.C. § 1962(d), asserted against all defendants; (4) state-law misappropriation of trade secrets against MGA, MGA Mexico, Larian, and Machado; (5) breach of contract, asserted against Bryant only and based on certain employment agreements between Bryant and Mattel;

6

EXHIBIT ___H___

PAGE ___49___

1   (6) intentional interference with contract, asserted against MGA and Larian and

2   based on Bryant's employment agreements; (7) breach of fiduciary duty, asserted

3   against Bryant and Machado; (8) aiding and abetting breach of fiduciary duty,

4   asserted against MGA and Larian; (9) breach of the duty of loyalty, asserted

5   against Bryant and Machado; (10) aiding and abetting breach of the duty of loyalty,

6   asserted against MGA and Larian; (11) conversion, asserted against all counter-

7   defendants; (12) violation of California's unfair competition law, Cal. Bus. & Prof.

8   Code § 17200, asserted against all counter-defendants; and finally, (13) a claim for

9   declaratory relief.

10   **III. Counter-Defendants' Motions to Dismiss for Failure to State a Claim**

11          The parties have moved to dismiss a number of Mattel's counterclaims on

12   various grounds.  The Court addresses each claim in turn, considering at all times

13   the standard for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

14   A.     <u>Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)</u>

15          In lieu of an answer, a party may, as the counter-defendants have here, file a

16   motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which provides that such a

17   motion may be made where the pleader has "fail[ed] to state a claim upon which

18   relief can be granted." <u>Id.</u>  In deciding a Rule 12(b)(6) motion, the Court must also

19   consider the requirements of Fed. R. Civ. P. 8(a), which requires only a "short and

20   plain statement of the claim showing that the pleader is entitled to relief" or, when

21   the claim at issue avers fraud or mistake, the motion must be considered in

22   conformity with Fed. R. Civ. P. 9(b), which requires fraud and mistake to be pleaded

23   with particularity.  <u>See</u> 5A Charles A. Wright & Arthur Miller, <u>Federal Practice and</u>

24   <u>Procedure</u>, §1356 (1990); James Wm. Moore, <u>Moore's Federal Practice</u>, Vol. 2

25   § 12.34[1][c].

26          In bringing a motion pursuant to Rule 12(b)(6), the moving party has the

27   burden of persuading the Court that the complaint has failed to state a claim upon

28   which relief can be granted. <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406,

EXHIBIT ___*H*___

PAGE ___50___

1409 (3d Cir.), cert. denied, 501 U.S. 1222 (1991). In considering the motion, "courts must consider the complaint in its entirety," and read it in the light most favorable to the plaintiff, accepting as true all factual allegations in the complaint, as well as reasonable inferences to be drawn therefrom. Tellabs, Inc. v. Makor Issues & Rights, Ltd., __ U.S. __, No. 06-484, 2007 WL 1773208, at *9 (June 21, 2007); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). However, the Court need not accept any unwarranted deductions of fact, or conclusory legal statements cast in the form of factual allegations. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).

Generally, a court cannot consider evidence in deciding a Rule 12(b)(6) motion; however, a court may consider exhibits attached to the complaint as well as documents that are not physically attached to the complaint but "whose contents are alleged in [the] complaint and whose authenticity no party questions." Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), cert. denied, 512 U.S. 1219 (1994). Facts of which a court may take judicial notice pursuant to Fed. R. Evid. 201 are also properly considered. Mir v. Little Company of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988).

**B.    RICO Claims**

The counter-defendants devote most of their motions to the sufficiency of the allegations regarding Mattel's RICO claims. The Court's analysis begins, as it must when considering a federal statute, with the language of that statute. The substantive RICO prohibition at issue is found in 18 U.S.C. § 1962(c):

> It shall be unlawful for any person employed by or associated
> with any enterprise engaged in, or the activities of which affect,
> interstate or foreign commerce, to conduct or participate, directly or
> indirectly, in the conduct of such enterprise's affairs through a pattern
> of racketeering activity or collection of unlawful debt.

Id. Conspiracies to violate this substantive prohibition are themselves prohibited by

8

EXHIBIT _____ *H*

PAGE _____ *51*

1    § 1962(d), which states that "[i]t shall be unlawful for any person to conspire to

2    violate any of the provisions of subsection (a), (b), or (c) of this section." Id. Many

3    of these terms are defined by the statutory language, including "racketeering

4    activity," "enterprise," and "pattern of racketeering activity":

5         (1) "racketeering activity" means . . . (B) any act which is

6         indictable under any of the following provisions of title 18, United

7         States Code: . . . section 1341 (relating to mail fraud), section 1343

8         (relating to wire fraud), . . . section 1512 (relating to tampering with a

9         witness, victim, or an informant), . . . section 1952 (relating to

10        [interstate and foreign travel or transportation in aid of racketeering

11        enterprises]), [and] section 2319 (relating to criminal infringement of a

12        copyright)[.]

13              . . . .

14        (4) "enterprise" includes any individual, partnership,

15        corporation, association, or other legal entity, and any union or group

16        of individuals associated in fact although not a legal entity;

17        (5) "pattern of racketeering activity" requires at least two acts of

18        racketeering activity, one of which occurred after the effective date of

19        this chapter and the last of which occurred within ten years (excluding

20        any period of imprisonment) after the commission of a prior act of

21        racketeering activity[.]

22   18 U.S.C. § 1961.

23        In considering a Rule 12(b)(6) motion seeking to dismiss a RICO claim, the

24   Court measures the sufficiency of alleged predicate acts of wire fraud and mail

25   fraud by the Rule 9(b) "pleading-with-particularity" standard; however, the Court

26   measures the sufficiency of all other predicate acts by the more lenient standard set

27   forth in Rule 8(a). Compare Fed. R. Civ. P. 9(b) ("In all averments of fraud or

28   mistake, the circumstances constituting fraud or mistake shall be stated with

9

EXHIBIT ___ H

PAGE ___ 52

1    particularity.  Malice, intent, knowledge, and other condition of mind of a person

2    may be averred generally.")  with Fed. R. Civ. P. 8(a) ("A pleading which sets forth a

3    claim for relief, . . . shall contain . . . (2) a short and plain statement of the claim

4    showing that the pleader is entitled to relief . . . ."); see Lancaster Community Hosp.

5    v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991) (applying Rule

6    9(b) standard to allegations of mail fraud and noting that "[t]he Ninth Circuit has

7    repeatedly insisted that [Rule 9(b)] be followed in RICO actions alleging the

8    predicate act of mail fraud."), cert. denied, 502 U.S. 1094 (1992).

9            In order to state its claim under § 1962(c), Mattel "must allege (1) conduct

10   (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing

11   injury to [its] business or property."  Ove v. Gwinn,  264 F.3d 817, 825 (9th Cir.

12   2001) (internal quotation marks and citation omitted).  Here, counter-defendants'

13   motions challenge the first, second, fourth, and fifth elements.

14       1.    **"Conduct or Participate"**

15           Bryant contends that his role in any alleged scheme or enterprise is too

16   tenuous to constitute the "conduct" necessary to impose RICO liability.  In order to

17   have RICO liability imposed upon him, a defendant must "conduct or participate,

18   directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of

19   racketeering activity . . . ."  18 U.S.C. § 1962(c).  The United States Supreme Court

20   has elaborated on this statutory language in Reyes v. Ernst & Young, 507 U.S. 170,

21   179 (1993), wherein it noted:

22           [T]he word "participate" makes clear that RICO liability is not limited to

23           those with primary responsibility for the enterprise's affairs, just as the

24           phrase "directly or indirectly" makes clear that RICO liability is not

25           limited to those with a formal position in the enterprise, but some part

26           in directing the enterprise's affairs is required.

27   Id.  Here, Mattel has alleged that Bryant secretly developed Bratz while employed

28   by Mattel and using Mattel's resources and employees, that he concealed that fact

10

EXHIBIT _____ H

PAGE _____ 53

1  when he had a duty to disclose it, and that he did these things in order to facilitate

2  the development of the Bratz concept by Mattel's direct competitor, in violation of,

3  *inter alia*, criminal copyright law.  These allegations, if proven to be true, are

4  sufficient to impose RICO liability on Bryant.

5      2.    **Enterprise**

6        Bryant's motion challenges the sufficiency of the allegations regarding a

7  RICO enterprise.  That enterprise is alleged to be an "association-in-fact" enterprise

8  comprised of the counter-defendants, Brawer, Trueba, Vargas, Brisbois, and

9  others.  (AAC ¶ 89.)  Mattel alleges that counter-defendants participated in or

10  conducted the affairs of the association-in-fact enterprise through a pattern of

11  racketeering activities, including, as detailed in the AAC, predicate acts of mail

12  fraud, wire fraud, evidence tampering, interstate and foreign travel to aid

13  racketeering activities, and criminal copyright infringement.  (AAC ¶ 90.)  The

14  counter-defendants' goal is alleged to have been to "execut[e] or attempt to

15  execut[e] [a] scheme to improperly defraud Mattel and steal its trade secret or

16  otherwise confidential and proprietary information . . . ."  (AAC ¶ 90.)

17        A recent *en banc* decision of the Ninth Circuit sets forth a comprehensive

18  analysis of the sufficiency of allegations regarding a RICO enterprise necessary to

19  state a claim.  See Odom v. Microsoft Corp., 486 F.3d 541, 2007 WL 1297249 (9th

20  Cir. 2007) (designated for publication).  That decision provides the blueprint for the

21  Court's present analysis.

22        Odom involved an alleged scheme involving consumers who purchased

23  computers from Best Buy retail stores.  Id. at 543.  The computers would include a

24  Microsoft compact disc that the cashier would scan; the consumer's credit card was

25  also scanned for purchase.  Id.  The credit card information was transmitted to

26  Microsoft, and Microsoft would, at some point, begin making unauthorized charges

27  to the credit card used to purchase the computer, ostensibly for Microsoft's

28  provision of internet services.  Id.  Odom brought substantive RICO and RICO

EXHIBIT ____ *H*

PAGE ____ *54*

1   conspiracy claims based on these allegations. Id. at 544.

2       The Ninth Circuit first noted the evidenced judicial resistance to RICO in the

3   lower courts, contrasted with the Supreme Court's four reversals of such narrow

4   readings of RICO. Id. at 545-47 (citing United States v. Turkette, 452 U.S. 576

5   (1981) (rejecting notion that RICO prohibited only the infiltration of legitimate

6   businesses by organized crime); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 481

7   (1985) (rejecting notion that RICO could be used to impose civil liability only where

8   the defendant had been criminally convicted and that such liability was limited to a

9   narrow measure of damages); National Organization for Women v. Scheidler, 510

10  U.S. 249 (1994) (rejecting the notion that RICO liability could be imposed only when

11  the acts of a RICO enterprise had an economic motive); and Cedric Kushner

12  Promotions v. King, 533 U.S. 158 (2001) (reversing lower court's ruling that no

13  RICO claim was stated where president and sole shareholder of a corporation was

14  alleged to have associated with his wholly owned corporation as a RICO

15  "enterprise," and relying on fact that person and corporation were separate legal

16  entities). In Odom, the Ninth Circuit understandably viewed these four holdings as

17  a "general instruction that we should not read the statutory terms of RICO

18  narrowly." Odom, 486 F.3d at 547 (internal citation omitted).

19      In Odom, the Ninth Circuit clarified -- and relaxed -- the standard for pleading

20  and proving an "associated-in-fact" enterprise such as the one alleged here:

21          The definition of "enterprise" in the text of RICO is fairly

22      straightforward. In its entirety, the definition is as follows: "'enterprise'

23      includes any individual, partnership, corporation, association, or other

24      legal entity, and any union or group of individuals associated in fact

25      although not a legal entity." 18 U.S.C. § 1961(4). As is evident from

26      the text, this definition is not very demanding. A single "individual" is

27      an enterprise under RICO. Similarly, a single "partnership," a single

28      "corporation," a single "association," and a single "other legal entity"

EXHIBIT _____ _H_

PAGE _____ _55_

are all enterprises.  At issue in this case is the last kind of enterprise listed in the definition -- a "group of individuals associated in fact."  It is undisputed that a corporation can be an "individual" for purposes of an associated-in-fact enterprise.

Id. at 548.

The Ninth Circuit acknowledged that "enterprise" must be something greater than merely a pattern of racketeering activity; however, the court rejected the notion that an enterprise must have a particular ascertainable organizational structure.  Id. at 551 ("We take this opportunity to join the circuits that hold that an associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise.") (citations omitted).  A party need only set forth factual allegations of "a group of persons associated together for a common purpose of engaging in a course of conduct," "evidence of an ongoing organization, formal or informal," and "evidence that the various associates function as a continuing unit."  Id. at 552 (internal citations and quotation marks omitted).

As for the common purpose, it was met in Odom, where the plaintiff had alleged the following:

[D]efendants had the common purpose of increasing the number of people using Microsoft's Internet Service, and doing so by fraudulent means.  Best Buy furthered this common purpose by distributing Microsoft Internet Trial CD's and conveying its customers' debit and credit card information to Microsoft.  Microsoft then used the information to activate customer accounts.

Id.  Here, Mattel has alleged the common purpose of attempting to defraud Mattel and steal its trade secrets.  Mattel's many factual allegations, detailed herein, support this alleged common purpose.

As for the "ongoing organization" requirement, the Ninth Circuit in Odom noted that the plaintiffs had met that element, which was met where the

13

EXHIBIT _____ H

PAGE _____ 56

1  organization was alleged to be "a vehicle for the commission of two or more

2  predicate crimes." Id. (internal quotation marks and citation omitted).  The Ninth

3  Circuit noted the following factual allegations:

4        Microsoft and Best Buy established mechanisms for

5        transferring plaintiffs' personal and financial information from Best Buy

6        to Microsoft. That information then allowed Microsoft to activate

7        plaintiffs' Internet accounts without their knowledge or permission.

8        These mechanisms enabled Microsoft to bill plaintiffs improperly for

9        MSN services in 2001, 2002 and 2003.

10  Id. Here, plaintiffs have alleged that the counter-defendants coordinated their many

11  efforts at depriving Mattel of its proprietary information and its intellectual property.

12  The allegations regarding common use of the "plot04@aol.com" email address to

13  transfer confidential Mattel information to MGA support the finding of an "ongoing

14  organization." So, too, do the allegations regarding the repeated communications

15  between Bryant and MGA.

16      The "continuing unit" requirement does not appear to the Court to mandate

17  that the organization continues to this day;[2] rather, the requirement is related to the

18  notion that RICO was not meant to address discrete instances of fraud or criminal

19  conduct.  "[T]he continuity requirement focuses on whether the associates'

20  behavior was 'ongoing' rather than isolated activity." Id. at 553 (internal quotation

21  marks and citation omitted).  Related to that concern, it is also clear to the Court

22  that this requirement is related to the duration of the racketeering activities. See id.

23  ("An almost two-year time span is far more than adequate to establish that Best

24  Buy and Microsoft functioned as a continuing unit.").  Here, the allegations do not

25  reveal that the conduct complained of was mere isolated activity; rather, Mattel sets

26  forth allegations of racketeering activity that spanned a period of three years.  The

27  ─────────────────

28        [2] Nevertheless, Mattel alleges that the enterprise exists to this day by virtue
     of its continued use of Mattel's information and property.

                    14      EXHIBIT _____ _H_

                            PAGE ____ 57

1   allegations describe a scheme consisting of corporate warfare between competitors

2   that has been waged over a long period of time and waged on a number of fronts,

3   both foreign and domestic. The "continuing unit" requirement is therefore satisfied.

4        Accordingly, the Court finds that Mattel has sufficiently pleaded the existence

5   of a RICO enterprise.

6        **3.   Predicate Acts of Racketeering Activity**

7             **a.   Mail Fraud and Wire Fraud**

8        The criminal prohibition against mail fraud is found at 18 U.S.C. § 1341:

9             Whoever, having devised or intending to devise any scheme or

10            artifice to defraud, . . . for the purpose of executing such scheme or

11            artifice or attempting so to do, places in any post office or authorized

12            depository for mail matter, any matter or thing whatever to be sent or

13            delivered by the Postal Service, or deposits or causes to be deposited

14            any matter or thing whatever to be sent or delivered by any private or

15            commercial interstate carrier, or takes or receives therefrom, any such

16            matter or thing, . . . shall be fined under this title or imprisoned not

17            more than 20 years, or both.

18   Id. The Ninth Circuit has described the elements of mail fraud as "(1) proof of a

19   scheme to defraud; (2) using or causing the use of the mails to further the

20   fraudulent scheme; and (3) specific intent to defraud." United States v. Rogers, 321

21   F.3d 1226, 1229 (9th Cir. 2003) (internal citation omitted).

22        The criminal prohibition against wire fraud is similar:

23            Whoever, having devised or intending to devise any scheme or

24            artifice to defraud, . . . transmits or causes to be transmitted by means

25            of wire, radio, or television communication in interstate or foreign

26            commerce, any writings, signs, signals, pictures, or sounds for the

27            purpose of executing such scheme or artifice, shall be fined under this

28            title or imprisoned not more than 20 years, or both.

15   EXHIBIT _____ *H*

PAGE _____ *58*

1    18 U.S.C. § 1343. The Ninth Circuit has described the elements of wire fraud as
2    "(1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and
3    (3) a specific intent to deceive or defraud." United States v. Shipsey, 363 F.3d 962,
4    971 (9th Cir. 2004) (citations omitted).

5            As all parties acknowledge, the predicate acts of mail fraud and wire fraud
6    must be pleaded with particularity pursuant to Fed. R. Civ. P. 9(b). Specifically,
7    Mattel must detail "the time, place, and manner of each act of fraud, [and it must
8    set forth] the role of each defendant in each scheme." Lancaster Community
9    Hosp., 940 F.2d at 405. This standard applies in RICO actions alleging predicate
10   acts of mail fraud. Id.

11           Here, Mattel sets forth allegations of predicate acts of mail fraud and wire
12   fraud referenced in Exhibit C to the AAC. However, these alleged predicate acts
13   are insufficiently pleaded because they fail to adequately describe the contents of
14   the communications; specifically, they fail to detail time, place and manner of "each
15   act of fraud." The substantive RICO claim is therefore dismissed to the extent it is
16   premised on those communications. Mattel is **GRANTED** leave to amend the RICO
17   claim based on this insufficiency; Mattel must attach to the Second Amended
18   Answer and Counterclaims ("SAAC") copies of the referenced communications.
19   The contents of packages referenced in Exhibit C must be described in order to
20   meet the Rule 9(b) requirements.

21           At oral argument, counsel for MGA argued that the substance of many, if not
22   all of the communications, cannot be read to further a scheme to defraud. That
23   argument will be considered another day, after Mattel files the SAAC. However, the
24   Court takes the opportunity today to note that, given the broad scope of the alleged
25   scheme to defraud, including the criminal copyright infringement allegations,
26   otherwise innocuous and routine communications regarding day-to-day operations
27   and product development may be found to be in furtherance of that scheme. See
28   Tellabs, Inc. v. Makor Issues & Rights, Ltd., __ U.S. __, No. 06-484, 2007 WL

16

EXHIBIT ___H___

PAGE ___59___

1  1773208, at *9 (June 21, 2007) (noting that, in considering a Rule 12(b)(6) motion,

2  "courts must consider the complaint in its entirety").

3      Counter-defendants also argue that Mattel failed to plead each defendant's

4  role in furtherance of the scheme to defraud.  As interpreted by the Ninth Circuit,

5  the Rule 9(b) standard clearly requires that a plaintiff so plead.  Lancaster

6  Community Hosp., 940 F.2d at 405.  However, the Court will view the

7  communications alleged to constitute mail and wire fraud in conjunction with all the

8  allegations set forth regarding the alleged scheme in the counterclaims.  See Flood

9  v. Makowski, No. 3:CV-03-1803, 2004 WL 1908221, at *14 (M.D. Pa., Aug. 24,

10 2004) (applying the principle that reasonable inferences in favor of a plaintiff must

11 be made when considering a Rule 12(b)(6) motion and noting that "[a]lthough

12 Plaintiffs' Complaint does not expressly identify how each particular mail or wire

13 communication furthered the scheme, the Complaint clearly alleges facts which

14 create an unquestionable inference that the alleged communications furthered the

15 scheme.").

16      Counter-defendants also argue that, because the emails alleged to

17 constitute wire fraud were sent among individuals physically located in the same

18 state, Mattel will not be able to establish the interstate nature of the

19 communications.  See 18 U.S.C. § 1343 (setting forth the requirement that

20 communications be transmitted "in interstate or foreign commerce").  Mattel has

21 alleged that the communications were transmitted in interstate or foreign

22 commerce.  (AAC ¶ 93(b).)  This suffices at the pleadings stage; however,

23 eventually Mattel will be called upon to support these allegations with evidence.

24 See First Pacific Bancorp, Inc. v. Bro, 847 F.2d 542, 547 (9th Cir. 1988) (implicitly

25 holding that wire fraud must be supported, at the summary judgment stage, by

26 evidence of interstate wire fraud).

27      The Court dismisses the RICO claim to the extent it is based on the alleged

28 predicate acts of mail fraud and wire fraud because those acts are not pleaded with

17

EXHIBIT ___ _H__

PAGE ___60___

1   particularity as required by Rule 9(b).  Mattel is **GRANTED** ten days' leave to file a

2   SAAC that incorporates and attaches and/or describes the communications and the

3   contents of packages referenced in Exhibit C.

4          **b.**   **Evidence Tampering**

5         Unlike the mail fraud and wire fraud allegations, the allegations regarding the

6   remaining predicate acts are governed by the more lenient pleading standards of

7   Rule 8(a).  See Slade v. Gates, No. 01-8244-RMT, 2002 WL 31387263, at *6 (C.D.

8   Cal., Oct. 11, 2002).  The Court considers the sufficiency of those remaining

9   allegations pursuant to this Rule.

10         The criminal prohibition against tampering with evidence is found at 18

11   U.S.C. § 1512:

12           Whoever corruptly . . . alters, destroys, mutilates, or conceals a

13         record, document, or other object, or attempts to do so, with the intent

14         to impair the object's integrity or availability for use in an official

15         proceeding . . . shall be fined under this title or imprisoned not more

16         than 20 years, or both.

17   Id.  Mattel's opposition makes clear that its evidence tampering allegations are

18   based upon two categories of documents:  The first category of documents,

19   perhaps composed of only one multi-page document, involves the alleged alteration

20   of Bryant's contract with MGA to remove a fax header showing that the date of its

21   execution, which predated the effective date of Bryant's resignation from Mattel.[3]

22   The second category of documents are those filed with the United States Copyright

23   Office, which are alleged to omit the disclosure that certain Bratz drawings were

24   "works for hire," and which are alleged to have had alterations made to certain

25

26       [3] The AAC merely alleges that counter-defendants Bryant and MGA

27   "tamper[ed] with and deface[d] documents which showed that . . . Bryant was a
Mattel employee while he was working for and with MGA . . . ."  (AAC ¶ 35.)

28   However, it is clear from other filings by the parties that, at a minimum, this
allegation refers to MGA's contract with Bryant.

EXHIBIT _____*H*_____

PAGE _____*61*_____

1   relevant dates. (See AAC ¶ 35; Mattel Opp. to MGA's Motion at 9.)

2       As to the first category, a predicate act is sufficiently alleged.  Mattel has

3   alleged that a document was altered in a manner designed to conceal critical

4   evidence, highly relevant to the present official proceeding, regarding the timing of

5   the execution of the document.

6       Conversely, it is unclear whether Mattel has alleged a predicate act with

7   respect to the second category of documents.  The issue of whether submitting

8   fraudulent registrations and "altering relevant dates" on documents submitted to the

9   United States Copyright Office has not been fully briefed by the parties; the issue

10  was framed in this manner only upon the filing of the reply.[4]  Therefore, the Court

11  reserves this issue for a later date, and anticipates that it will be addressed by the

12  parties in a motion to dismiss the SAAC.

13          c.    **Travel Act Violation**

14      Federal criminal law prohibits interstate or foreign travel to aid in

15  racketeering activities.  18 U.S.C. § 1952; see also 18 U.S.C. § 1961 (defining a

16  violation of § 1962 as a RICO predicate act).  In relevant part, the criminal

17  prohibition states:

18          Whoever travels in interstate or foreign commerce or uses the

19          mail or any facility in interstate or foreign commerce, with intent to . . .

20          promote, manage, establish, carry on, or facilitate the promotion,

21          management, establishment, or carrying on, of any unlawful activity,

22          and thereafter performs or attempts to perform . . . [such an act,] shall

23          be fined under this title, imprisoned not more than 5 years, or

24          both . . . .

25                          . . . .

26          As used in this section . . . "unlawful activity" means . . .

27  _____

28      [4]  The Court does not view this failure as the fault of any party.

19      EXHIBIT _____ **H**

        PAGE _____ **62**

1    extortion, bribery, or arson in violation of the laws of the State in which

2    committed or of the United States . . . .

3    Id. Mattel alleges that Bryant and others traveled in interstate commerce to commit

4    commercial bribery in violation of California's prohibition against commercial

5    bribery, which in relevant part provides:

6         (a) Any employee who solicits, accepts, or agrees to accept

7         money or any thing of value from a person other than his or her

8         employer, other than in trust for the employer, corruptly and without

9         the knowledge or consent of the employer, in return for using or

10        agreeing to use his or her position for the benefit of that other person,

11        and any person who offers or gives an employee money or any thing

12        of value under those circumstances, is guilty of commercial bribery.

13   Cal. Penal Code § 641.3. Several allegations support a violation of § 641.3(a),

14   which in turn supports a violation of 18 U.S.C. § 1952. Mattel has alleged that

15   Bryant, while still employed by Mattel, entered into a contract with MGA to provide

16   design services to MGA on a "top priority" basis, and used Mattel property,

17   employees, and resources to develop and design the Bratz concept.

18        Counter-defendants argue that the requirement under California's

19   commercial bribery statute that a violator act "corruptly" is not met because Bryant

20   did not intend to injure Mattel. Such an intent is not required; rather it is sufficient

21   that Bryant is alleged to have intended to defraud Mattel. See Cal. Penal Code

22   § 341.3(d)(3) (defining "corruptly" as involving the intent "to injure *or* defraud")

23   (emphasis added).

24        d.   **Criminal Copyright Violations**

25        The parties dispute the relevant pleading standard that governs the

26   allegations which underlie the criminal copyright violation claim. Counter-

27   defendants would have the Court apply the more exacting Rule 9(b) standards

28   because, in their assessment, the claim "sounds in fraud." Mattel, however,

20

EXHIBIT ___*H*___

PAGE ___*63*___

1   contends that there is no reason to depart from the more lenient Rule 8(a) standard

2   generally applied to copyright claims because, in its assessment, the claims "sound

3   in copying, not fraud." (Mattel Opposition to MGA's Motion at 4.)

4          The recent Ninth Circuit case on this issue, cited by both parties, stands for

5   the unremarkable proposition that, consistent with Rule 9(b), all *averments* of fraud

6   must be pleaded with particularity, regardless of whether fraud is an essential

7   element of the claim to which the averment relates. See Vess v. Ciba-Geigy Corp.

8   USA, 317 F.3d 1097, 1103 (9th Cir. 2003); Fed. R. Civ. P. 9(b) ("In all *averments*

9   of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

10  with particularity.") (emphasis added).

11         Considering Rules 8(a), 9(b), and the teachings of Vess, a spectrum

12  emerges. At the left end of this spectrum are claims that do not involve any

13  allegations of fraud. Those need only satisfy Rule 8(a)'s "short and plain

14  statement" standard. At the opposite end of the spectrum are claims based solely

15  on fraud, and the facts underlying such a claim must be alleged with particularity

16  pursuant to Rule 9(b). Lying closer to the Rule 9(b) end of the spectrum is a

17  category of claims discussed in Vess:

18         In cases where fraud is not a necessary element of a claim, a

19         plaintiff may choose nonetheless to allege in the complaint that the

20         defendant has engaged in fraudulent conduct. In some cases, the

21         plaintiff may allege a unified course of fraudulent conduct and rely

22         entirely on that course of conduct as the basis of a claim. In that

23         event, the claim is said to be "grounded in fraud" or to "sound in

24         fraud," and the pleading of that claim as a whole must satisfy the

25         particularity requirement of Rule 9(b).

26  Vess, 317 F.3d at 1103-04 (internal citations omitted). It is into this category MGA

27  contends that the allegations of criminal copyright claims fit, and MGA therefore

28  contends that all allegations regarding the criminal copyright claims must be

21

EXHIBIT ___H___

PAGE ___64___

1  pleaded with particularity.

2  However, Vess sets up another category, lying closer to the Rule 8(a) part of

3  the spectrum (but nevertheless requiring pleading with some particularity):

4          In other cases, however, a plaintiff may choose not to allege a

5      unified course of fraudulent conduct in support of a claim, but rather

6      to allege some fraudulent and some non-fraudulent conduct.  In such

7      cases, only the allegations of fraud are subject to Rule 9(b)'s

8      heightened pleading requirements. . . . The rule does not require that

9      allegations supporting a claim be stated with particularity when those

10     allegations describe non-fraudulent conduct.

11         [In other words,] in a case where fraud is not an essential

12     element of a claim, only allegations ("averments") of fraudulent

13     conduct must satisfy the heightened pleading requirements of Rule

14     9(b).  Allegations of non-fraudulent conduct need satisfy only the

15     ordinary notice pleading standards of Rule 8(a).

16  Id. at 1104-05.

17         Whether fraud is an essential element of criminal copyright infringement

18  must be determined by reference to the statutory language and any interpretative

19  case law.  In relevant part, the prohibition against criminal copyright infringement

20  provides: "Any person who violates section 506(a) (relating to criminal offenses) of

21  title 17 shall be punished as provided [herein] in and such penalties shall be in

22  addition to any other provisions of title 17 or any other law." 18 U.S.C. § 2319.  In

23  turn, the relevant provision in 17 U.S.C. § 506 states that "[a]ny person who willfully

24  infringes a copyright shall be punished as provided under section 2319 of title 18, if

25  the infringement was committed . . . for purposes of commercial advantage or

26  private financial gain . . . ." 17 U.S.C. § 506(a)(1)(A).  The elements of the offense

27  are easily gleaned from the straightforward statutory language:  "Criminal

28  infringement of copyright has three elements: (1) infringement of a copyright

22

EXHIBIT ___ *H*

PAGE ___ *65*

1  (2) done wilfully (3) for purposes of commercial advantage or private financial gain."

2  United States v. Goss, 803 F.2d 638, 642 (11th Cir. 1986).

3        Clearly, fraud is not an essential element of a criminal copyright claim, taking

4  it out of the category at the far end of the spectrum described above, and

5  necessitating an inquiry into whether Mattel has chosen to incorporate a fraud

6  element into its criminal copyright claim. The AAC at ¶ 93(e) reveals that the

7  criminal copyright claim is premised upon the "willfull[] infringe[ment of] Mattel's

8  copyrights, including with respect to documents containing Mattel trade secret and

9  confidential information . . . ." The Opposition fills in more details regarding this

10  claim, noting that the criminal copyright claim is premised upon the Bratz-related

11  works, Bratz-derivative works, and works contained within Mattel's allegedly

12  purloined trade secrets and confidential information. (Mattel Opposition to MGA's

13  Motion at 5).

14        These allegations do not "allege a unified course of fraudulent conduct and

15  rely entirely on that course of conduct as the basis of a claim" such that the claim

16  could be said to "sound in fraud" and therefore require pleading with particularity as

17  to the entire claim. The allegations establish that much of the conduct complained

18  of consists of simple copying of the Bratz-related works or the creation of Bratz-

19  derivative works. Such allegations are unrelated to allegations of fraud. Therefore,

20  if this claim falls anywhere on the spectrum other than the Rule 8(a) category, it

21  falls in the category described by Vess as those claims in which a claimant chooses

22  to "allege some fraudulent and some non-fraudulent conduct." Id. at 1104.

23        When one considers that the alleged predicate acts of criminal copyright

24  infringement are but a small part of a larger, and singular, claim brought pursuant to

25  RICO, it is evident that the RICO claim falls neatly into the category of claims that

26  are based partly on fraudulent and partly on non-fraudulent conduct. The Court

27  has already found that certain fraudulent conduct -- that supporting the alleged

28  predicate acts of mail fraud and wire fraud -- is insufficiently pleaded. The current

23

EXHIBIT ____ _H_

PAGE ____ _66_

1   focus, however, is whether the allegations supporting the predicate acts of criminal

2   copyright infringement involve fraudulent conduct.

3         Here, there are two types of works allegedly infringed.  The first type is the

4   Bratz-related and Bratz-derivative works.  The second type is Mattel's other trade

5   secrets and confidential information.  Both types are alleged -- with particularity -- to

6   have been procured by MGA through fraudulent conduct, but the criminal copyright

7   infringement predicate acts do not implicate that fraudulent conduct.  Rather, they

8   implicate only questions of whether counter-defendants wilfully infringed Mattel's

9   works for commercial advantage or private financial gain.  Here, Mattel has

10  sufficiently alleged predicate acts of criminal copyright infringement by alleging that

11  MGA and other counter-defendants willfully infringed its copyrights for purposes of

12  gaining commercial advantage and private financial gain.  As Mattel correctly

13  contends, state of mind, in this instance willfulness, may be pleaded generally.  See

14  Ferguson Beauregard/Logic Controls v. Mega systems, LLC, 350 F.3d 1327, 1343

15  (Fed. Cir. 2003).

16        **4.    Injury to Business or Property**

17        "Recovery under RICO is limited to those injuries flowing from predicate

18  acts . . . ."  Resolution Trust Corp. v. Keating, 186 F.3d 1110, 1117 (9th Cir. 1999)

19  (citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497 (1985)).  Here, Mattel

20  has alleged damages flowing from the alleged acts of racketeering activity.  (AAC

21  ¶ 96).  Damages easily flow from theft of trade secrets and confidential information

22  committed by a direct competitor and from infringement of copyrights that are

23  alleged to have been used to make millions -- if not billions -- of dollars.

24        Counter-defendants argue that Mattel lacks standing to sue on behalf of its

25  subsidiaries.  This issue arises because many of the allegations of the thefts of

26  trade secrets involve actions taken in Mexico or Canada by employees of Mattel's

27  foreign subsidiaries.  Mattel argues that it is not attempting to sue for damages

28  incurred by its subsidiaries; rather, Mattel alleges that much of the confidential

24

EXHIBIT ____*H*____

PAGE ____*67*____

1  information stolen by the employees of Mattel's subsidiaries belonged not to

2  Mattel's subsidiaries, but to Mattel itself.  Based on these allegations, Mattel may

3  sue for damages it sustained.  Mattel may not sue for damages incurred by its

4  foreign subsidiaries.

5          **5.     Ruling on Motions to Dismiss**

6          The Motions to Dismiss the RICO claims are **GRANTED** in part.  As set forth

7  herein, the alleged predicate acts of mail fraud and wire fraud are insufficiently

8  alleged, and Mattel is **GRANTED** leave to amend the AAC.

9  **C.    Trade Secrets**

10         MGA contends that Mattel has failed to plead its trade secrets with sufficient

11  particularity to comply with its duties under Cal. Code Civ. P. § 2019.210, which

12  provides:

13              In any action alleging the misappropriation of a trade secret

14         under the Uniform Trade Secrets Act . . . , before commencing

15         discovery relating to the trade secret, the party alleging the

16         misappropriation shall identify the trade secret with reasonable

17         particularity subject to any orders that may be appropriate under

18         Section 3426.5 of the Civil Code [involving in camera reviews and

19         sealing of court documents].

20  Id.  Based on the unambiguous language of the statute, the Court agrees with

21  Mattel's characterization of this requirement as one related to discovery rather than

22  related to pleading.

23         The Court also agrees that, by identifying documents in discovery by Bates-

24  stamp number, Mattel has complied with the dictates of § 2019.210.  See

25  Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal.App.4th 826, 835-36,

26  (2005) (internal quotation marks and citations omitted) ("[Reasonable particularity]

27  means that the plaintiff must make some showing that is reasonable, i.e., fair,

28  proper, just and rational[,] . . . under all of the circumstances to identify its alleged

25

EXHIBIT ____H____

PAGE ____68____

1   trade secret in a manner that will allow the trial court to control the scope of

2   subsequent discovery, protect all parties' proprietary information, and allow them a

3   fair opportunity to prepare and present their best case or defense at a trial on the

4   merits."). MGA's complaints regarding the volume of documents so identified, and

5   their skepticism of Mattel appropriately attaching such an identification to many of

6   those identified documents, are not properly addressed at this stage of the

7   proceedings.

8          The motion to dismiss the trade secrets claim on this basis is therefore

9   **DENIED.**

10  **D.    Duplicative State-Law Claims**

11         Bryant's motion to dismiss Mattel's duplicative state-law claims is **DENIED.**

12  The state-law counterclaims asserted against Bryant in the AAC admittedly overlap

13  with the claims asserted against him in the 04-9059 case, however, the factual

14  allegations underlying the claims asserted in the AAC are broader in scope than

15  those underlying the claims asserted in the 04-9059 case.

16              **IV. Motion to Dismiss for Lack of Personal Jurisdiction**

17         MGA Mexico challenges this Court's exercise of personal jurisdiction over it.

18  As set forth below, the Court concludes that it may, consistent with California law

19  and the federal Due Process Clause, exercise specific personal jurisdiction over

20  this admittedly foreign corporation.

21  **A.    The Constitutional Exercise of Personal Jurisdiction**

22         Where a party moves to dismiss a claim for lack of personal jurisdiction, the

23  party asserting the claim bears the burden of demonstrating that jurisdiction is

24  appropriate. <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir.

25  2004). However, in opposing a motion to dismiss for lack of personal jurisdiction,

26  the party asserting the claim need only make a *prima facie* showing of jurisdictional

27  facts. <u>Id.</u> Disputed facts are to be resolved in favor of the exercise of personal

28  jurisdiction. <u>Id.</u>

EXHIBIT ____*H*____

PAGE ____*69*____

1    Because there is no applicable federal statute governing personal

2    jurisdiction, the Court applies the law of the state in which the district court sits. Id.

3    (citations omitted). "Because California's long-arm jurisdictional statute is

4    coextensive with federal due process requirements, the jurisdictional analyses

5    under state law and federal due process are the same." Id. at 800-01 (citations

6    omitted). In order for a court's exercise of personal jurisdiction over a nonresident

7    defendant to be constitutionally permissible, the defendant must have "minimum

8    contacts" with the forum state "such that the exercise of jurisdiction does not offend

9    traditional notions of fair play and substantial justice." Id. at 801 (internal quotation

10   marks and citation omitted).

11       Personal jurisdiction may be either general or specific. For general personal

12   jurisdiction to apply, a defendant (or here, a counter-defendant) "must engage in

13   continuous and systematic general business contacts . . . that approximate a

14   physical presence in the forum state." Id. (internal quotation marks and citations

15   omitted).

16       To determine whether it has specific personal jurisdiction over a nonresident

17   defendant, the Court employs a three-part test:

18           (1) The non-resident defendant must purposefully direct his

19           activities or consummate some transaction with the forum or resident

20           thereof; or perform some act by which he purposefully avails himself

21           of the privilege of conducting activities in the forum, thereby invoking

22           the benefits and protections of its laws; (2) the claim must be one

23           which arises out of or relates to the defendant's forum-related

24           activities; and (3) the exercise of jurisdiction must comport with fair

25           play and substantial justice, i.e. it must be reasonable.

26   Id. at 802.

27       The party asserting the claim bears the burden of establishing the first two

28   parts of the test. Id. If that party establishes the first two parts, then the burden

EXHIBIT ___H___

PAGE ___70___

1  shifts to the party resisting the Court's exercise of personal jurisdiction "to present a

2  *compelling case* that the exercise of jurisdiction would not be reasonable." Id.

3  (emphasis added).

4       The first part of the test is satisfied by either "purposeful availment" or

5  "purposeful direction." Id. Purposeful availment is shown when a defendant avails

6  itself of the privilege of doing business in a forum state, usually met when the

7  defendant took some action in the forum, such as executing or performing a

8  contract there. Id. By virtue of such actions, a defendant "purposefully avails itself

9  of the privilege of conducting activities within the forum State, thus invoking the

10  benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

11  When taking advantage of these "benefits and protections," a defendant must also

12  "submit to the burdens of litigation in that forum." Burger King Corp. v. Rudzewicz,

13  471 U.S. 462, 476 (1985).

14       By contrast, purposeful direction, involves actions by the defendant outside

15  of the forum state but that are directed at the forum. Schwarzenegger, 374 F.3d at

16  803. The purposeful direction analysis is derived from a three-part "effects test"

17  that finds its roots in the Supreme Court's decision in Calder v. Jones, 465 U.S. 783

18  (1984). Pursuant to this analysis, the defendant must "have (1) committed an

19  intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

20  defendant knows is likely to be suffered in the forum state." Id.; Schwarzenegger,

21  374 F.3d at 803. All three parts of the test must be satisfied. The second part of

22  the effects test is described by the Ninth Circuit as the "express aiming"

23  requirement, and requires that the counter-defendants "expressly aimed" its

24  intentional act at California. See Schwarzenegger, 374 F.3d at 806. Specifically,

25  "express aiming" is found where the defendant is alleged to have engaged in

26  wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident

27  of the forum state." Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082,

28

EXHIBIT ____H____

PAGE ____71____

1087 (9th Cir. 2000).[5]

Assuming that the party asserting a claim can establish that the party resisting the Court's exercise of personal jurisdiction has met either the purposeful availment or express aiming part of the three-part test regarding the exercise of specific personal jurisdiction, courts next consider whether the claim arises out of or relates to the forum-related activities. In making this determination, the Court considers whether the contacts with the forum gave rise to the claims asserted, employing a "but for" standard. See Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001).

Once the purposeful availment/express aiming and relatedness requirements are established, the burden shifts to the party resisting the Court's exercise of jurisdiction to show that exercise of jurisdiction is unreasonable. In determining reasonableness, the Court considers seven factors:

> 1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.

---

[5] What constitutes, or doesn't constitute, "express aiming" is best illustrated by example. For instance, in Pebble Beach Co. v. Caddy, 453 F.3d 1151 (9th Cir. 2006), no express aiming was found where the owner of a bed-and-breakfast in England (overlooking a pebbly beach) used the term "pebblebeach," the name of a famous golf course located in California, on its web site. Id. at 1153, 1156-57. The Ninth Circuit acknowledged that it might be foreseeable that the defendant's use of the web site might have some effect on California, but noted that mere foreseeability of effect in a forum state is not enough to constitute express aiming. Id. at 1157. In contrast to Pebble Beach is the case of Panavision Intem., L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998), in which the Ninth Circuit found that the express aiming requirement was met where the defendant registered plaintiff's marks as Internet domain names in order to force a California plaintiff to pay him money.

29

EXHIBIT ___ H

PAGE ___ 72

1    Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991) (internal citation

2    omitted).  No factor is dispositive and the Court must balance all seven.  Id.

3    (internal citation omitted).

4    **B.    MGA Mexico's Contacts with the Forum State**

5        The AAC alleges that Issac Larian and other MGA officers, while in

6    California, executed a plot to target three high-level employees of Mattel Mexico,

7    and entice them to steal Mattel's trade secrets.  In written offers of employment to

8    these three individuals, Issac Larian held himself out to be the CEO of MGA

9    Mexico.  This plot was facilitated by a number of cross-border communications

10   among the participants as well as travel to the United States by the targeted

11   employees.

12   **C.    The Court May Exercise Personal Jurisdiction over MGA Mexico**

13       The AAC repeatedly alleges that Larian, who held himself out to be MGA

14   Mexico's CEO, and who was designated as MGA Mexico's "legal agent" in Mexican

15   registration document actively sought to induce others to access and steal Mattel's

16   trade secrets while located in the California.  See Velázquez Decl. Exs. A-C; Salem

17   Decl. Ex. B.  This constitutes purposeful availment.

18       To the extent that any of the actions taken in Mexico by the three Mexican

19   employees may be imputed to Mattel Mexico, there is also purposeful direction.

20   The alleged actions taken on behalf of MGA Mexico were specifically engineered to

21   result in the alleged illegal acquisition of trade secrets belonging to Mattel, a

22   California resident.[6]

23       The relatedness requirement is also clearly met.  The contacts with

24   California involve actions allegedly taken in order to further the illegal acquisition of

25   Mattel's trade secrets, leading to the present claims against MGA Mexico for

26   misappropriation of trade secrets and the related RICO claims.

27   _____

28       [6] The AAC alleges the theft of trade secrets belonging not only to Mattel's
     Mexican subsidiary, but also to Mattel itself, which is a California corporation.

                          30     EXHIBIT _____ **H**

                          PAGE _____ **73**

1    The burden, therefore, is on MGA Mexico to show that the exercise of

2 jurisdiction is unreasonable.[7]  As noted previously, the Court considers seven

3 factors. The first factor the Court considers is the defendant's purposeful

4 interjection. For the reasons the Court has found purposeful availment and

5 purposeful direction, this factor favors the exercise of personal jurisdiction.

6    MGA Mexico argues, without elaboration, that the burden of defending itself

7 in California is "significant." However, the assumption underlying this argument is

8 that the present action is more properly litigated by MGA's and Mattel's Mexican

9 subsidiaries. This assumption misses the point of Mattel's claim against MGA

10 Mexico; Mattel, the parent company, was itself injured by MGA's Mexico's alleged

11 misappropriation of its own trade secrets because the alleged misappropriation was

12 not limited to trade secrets belonging to its Mexican subsidiary.  The argument

13 based on this faulty assumption is therefore unconvincing.  In order to show

14 unreasonableness, the burden on the defendant must be great. See Panavision,

15 141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the

16 assessment of reasonableness, but unless the inconvenience is so great as to

17 constitute a deprivation of due process, it will not overcome clear justifications for

18 the exercise of jurisdiction.") (internal quotation marks and citation omitted).

19    As to the third and seventh factors, regarding conflicts of law and the

20    [7] In its reply, MGA Mexico declares that it "made a 'compelling case' in

21 support of its motion to dismiss that it would be unreasonable to force it to litigate
in this forum." MGA Mexico Reply at 10. However, MGA Mexico's motion papers

22 fail to acknowledge that they bear the burden on this issue. See MGA Mexico's
Memorandum of Points and Authorities at 10 ("Finally, Mattel has failed to satisfy

23 the third element required for specific jurisdiction -- that the exercise of jurisdiction
over the defendant would be reasonable."). As Mattel accurately predicted in its

24 opposition papers, MGA Mexico implicitly acknowledged its burden in the reply,

25 and used the occasion to improperly present additional arguments for the first
time. Although the Court ordinarily would not consider such arguments, it does so

26 here because it does not change the Court's ultimate conclusion. See In re Intuit
Privacy Litigation, 138 F.Supp.2d 1272, 1275 n.3 (C.D. Cal. 2001) ("this court

27 does not consider arguments raised anew for the first time in a reply brief as to do

28 so would unfairly deny the non-moving party an opportunity to respond.").

1   existence of an alternative forum, MGA Mexico makes veiled references to the

2   criminal action in Mexico as constituting a choice of forum made by Mattel,

3   apparently implying that Mattel, having chosen to pursue criminal charges in

4   Mexico, should be precluded from invoking the power of this Court. It appears to

5   the Court that MGA Mexico has failed to fully and clearly articulate this argument

6   because it is untenable. Whether Mexican authorities pursue criminal charges

7   based on the same conduct underlying the claims in this action is irrelevant to

8   whether this Court may constitutionally exercise personal jurisdiction over MGA

9   Mexico. Therefore, MGA Mexico's argument on this issue is unpersuasive.

10          The fourth factor, the interest in adjudicating the dispute, weighs in favor of

11   the exercise of personal jurisdiction, as does the sixth, the plaintiff's interest in

12   convenient and effective relief.

13          MGA Mexico argues that the fifth factor weighs in its favor when the Court

14   considers that the site of injury, which it does not believe is California, is the most

15   efficient forum. However, this argument is premised on the rejected assumption

16   that the present action is more properly litigated between MGA's and Mattel's

17   Mexican subsidiaries.

18          On balance, a consideration of the reasonableness factors reveals that MGA

19   Mexico has fallen far short of establishing the "compelling case" necessary to

20   render the Court's exercise of personal jurisdiction unreasonable.

21          The Court concludes that Mattel has established the first two parts of the

22   specific personal jurisdiction test, and that MGA Mexico has failed to establish that

23   the Court's exercise of personal jurisdiction over it is otherwise unreasonable.

24   Accordingly, the Court **DENIES** MGA Mexico's motion to dismiss.

### V. MGA's and Bryant's Motions Regarding

### the Discovery Master's March 7, 2007, Order

27          MGA and Bryant seek review of a decision that resolved discovery disputes

28   that arose during Bryant's deposition, and that was rendered by the Court-

EXHIBIT _____ *H*

PAGE _____ *76*

1   appointed discovery master, Judge Edward A. Infante (Ret.), on March 7, 2007.

2   The Court's order appointing Judge Infante provides that his orders resolving

3   discovery disputes shall be reviewed in the same manner as those made by a

4   magistrate judge of this Court.

5       Pursuant to Fed. R. Civ. P. 72(a), when the parties object to the ruling of a

6   magistrate judge on a non-dispositive manner, such as a discovery dispute, the

7   district judge may modify or set aside only those portions of the magistrate judge's

8   order that are "clearly erroneous or contrary to law." Id.

9       The "clearly erroneous" language refers to factual findings. See e.g.,

10  Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension

11  Trust, 508 U.S. 602, 622 (1993) (discussing the clearly erroneous standard). Here,

12  there were no explicit factual findings or legal conclusions made by Judge Infante

13  regarding the relevant rulings; therefore, the Court reviews the record presented to

14  Judge Infante to determine whether his rulings are contrary to law. See March 7,

15  2007, Order.

16      Questions that do not seek the substance of attorney-client communications

17  generally do not implicate the attorney-client privilege. United States v. Carrillo, 16

18  F.3d 1046, 1050 (9th Cir. 1994) (finding no violation of the attorney-client privilege

19  where prosecutor, who asked whether a criminal defendant had consulted with his

20  attorney during a recess in order to raise an inference of attorney coaching of

21  testimony during the trial, stopped short of asking defendant the substance of

22  defendant's communications with his attorney). Therefore, questions such as the

23  one addressed by objection No. 38, asking whether Bryant talked to counsel for

24  MGA during a break from his deposition, are not subject to objection based on the

25  attorney-client privilege. This conclusion is consistent with Judge Infante's Order.

26      Mattel's question regarding who is paying Bryant's legal fees, addressed by

27  objection No. 42, is likewise not objectionable. MGA and Bryant argue that state

28  law applies; however, because the present consolidated actions involve both

EXHIBIT ____ H

PAGE ____ 76

1   federal and state-law claims, the federal law of privilege applies.  Agster v.

2   Maricopa County, 422 F.3d 836, 839-40 (9th Cir. 2005) ("Where there are federal

3   question claims and pendent state law claims present, the federal law of privilege

4   applies.").  To that end, consistent with federal privilege law, fee-payment

5   arrangements are relevant to credibility and bias, and if asked in discovery, Bryant

6   must disclose who is paying his legal fees.  See United States v. Blackman, 72 F.3d

7   1418, 1424 (9th Cir. 1995) ("As a general rule, client identity and the nature of the

8   fee arrangement between attorney and client are not protected from disclosure by

9   the attorney-client privilege.").  This conclusion is also consistent with Judge

10  Infante's Order.

11          However, in this case, the joint-defense privilege protects from disclosure the

12  substance of certain statements made by Bryant and his attorneys in the presence

13  of attorneys representing MGA.  "The joint defense privilege protects

14  communications between an individual and an attorney for another when the

15  communications are 'part of an on-going and joint effort to set up a common

16  defense strategy.'"  United States v. Bay State Ambulance and Hosp. Rental

17  Service, Inc., 874 F.2d 20, 28 (1st Cir. 1989) (internal quotation marks and citation

18  omitted).  Generally, to rely on the joint-defense privilege, a party must establish

19  three elements: "(1) [T]he communications were made in the course of a joint

20  defense effort, (2) the statements were designed to further the effort, and (3) the

21  privilege has not been waived."  Id.

22          The Court finds the first element was met.  The Court, based on its review of

23  the record pending before Judge Infante, is satisfied that the parties had in place at

24  the time of Bryant's deposition, and have in place today, a valid joint-defense

25  agreement.  The Court also finds that the second element was met.  Mattel cannot

26  seriously contend that MGA's interests are not aligned with Bryant's in this action,

27  or that counsels' thorough preparation of Bryant for his deposition was not designed

28  to further the joint defense effort.  Finally, as for the third element, there is no

34

EXHIBIT ___*H*___

PAGE ___*77*___

suggestion in the record that any party has waived the attorney-client privilege.

Accordingly, the Court holds that Judge Infante's rulings on Objection Nos. 39 and 50 are contrary to law to the extent those rulings require Bryant to divulge the substance of his communications with counsel for MGA.

### VII. Conclusion

In the manner set forth more fully herein, the Court makes the following rulings:

1.    Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189): **GRANTED IN PART AND DENIED IN PART.**

2.    Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and XI (docket # 191): **GRANTED IN PART AND DENIED IN PART.**

3.    Motion of MGA Mexico to Dismiss Mattel's Amended Answer and Counterclaims (docket # 266): **DENIED.**

4.    Motion of MGA Objecting to Discovery Master's March 7, 2007, Order (docket # 308): **GRANTED IN PART AND DENIED IN PART.**

5.    Motion of Carter Bryant Objecting to Discovery Master's March 7, 2007, Order (docket # 306): **GRANTED IN PART AND DENIED IN PART.**

Mattel is **GRANTED** ten days' leave to amend the AAC in conformity with this Order. The Counter-defendants shall answer or otherwise respond to the SAAC no later than thirty days after the filing of the SAAC.

EXHIBIT ___H___

PAGE ___78___

The Motion Re Trial Structure (docket #462) has been the subject of further briefing by the parties and is set for further oral argument on July 2, 2007.  Ruling on that matter is **DEFERRED** pending oral argument.

DATE:  June 27, 2007

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE

EXHIBIT  *H*

PAGE  *79*

36

Received:    6/27/07   3:21PM
RightFAX                     6/27/2007 3:04    PAGE 001/037   Fax Server

RightFAX -> QUINN E  UEL;   Page 1

'om:    Name:          United States District Court
                       312 North Spring Street
                       Los Angeles, CA  90012
       Voice Phone:    (213) 894-5474


:      Name:          Michael Zeller
       Company:

                       865 S Figueroa St, 10th Floor,
       City/State:     Los Angeles, CA 90017-2543
       Fax Number:     213-443-3100

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**



## Automated Document Delivery Service
*Notice pursuant to Rule 77(d) FRCiv.P
The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

x Notes:

se 2:04-CV-09049 : CARTER BRYANT V. MATTEL INC

*rsuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search
larrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents
(Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a
judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail
address for each division is as follows:*

*Western Division: CrimIntakeCourtDocs-LA@cacd.uscourts.gov
Southern Division: CrimIntakeCourtDocs-SA@cacd.uscourts.gov
Eastern Division: CrimIntakeCourtDocs-RS@cacd.uscourts.gov*

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!
To switch, complete and submit
Optical Scanning Enrollment / Update form G-76.
Call 213-894-5474 for help and free technical support.**

*you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case,
a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for
hich you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending
of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

te and time of transmission:          Wednesday, June 27, 2007 3:04:20 PM
mber of pages including this cover sheet:  37

EXHIBIT ___*H*___

PAGE ___*80*___

# EXHIBIT I

1  THOMAS J. NOLAN (Bar No. 66992)
2  (tnolan@skadden.com)
   SKADDEN, ARPS, SLATE, MEAGHER
3  & FLOM LLP
   300 South Grand Avenue, Suite 3400
4  Los Angeles, CA  90071-3144
5  Tel.: (213) 687-5000  Fax: (213) 687-5600

6  PATRICIA L. GLASER (Bar No. 55668)
7  (pglaser@glaserweil.com)
   GLASER WEIL FINK JACOBS & SHAPIRO LLP
8  10250 Constellation Blvd 19th Floor
   Los Angeles, CA, 90067
9  Tel.: (310) 553-3000  Fax: (310) 556-2920

10
   RUSSELL J. FRACKMAN (Bar No. 49087)
11 (rjf@msk.com)
   MITCHELL SILBERBERG & KNUPP LLP
12 11377 W. Olympic Blvd
13 Los Angeles, CA 90064
   Tel.: (310) 312-2000  Fax: (310) 312-3100
14

15 Attorneys for MGA ENTERTAINMENT, INC.,
   ISAAC LARIAN, MGA ENTERTAINMENT (HK)
16 LIMITED, AND MGAE de MEXICO S.R.L. de
17 C.V.

18            UNITED STATED DISTRICT COURT

19            CENTRAL DISTRICT OF CALIFORNIA

20                  EASTERN DIVISION

21 CARTER BRYANT, an individual,     ) CASE NO. CV 04-09049 SGL
                                     ) (RNBx)
22            Plaintiff,             )
                                     ) Consolidated with Case No. 04-9059
23      v.                           ) and Case No. 05-2727
                                     )
24 MATTEL, INC., a Delaware          ) Honorable Stephen G. Larson
   corporation,                      )
25                                   ) ORDER GRANTING
              Defendant.             ) ASSOCIATION AND
26 ─────────────────────────────     ) WITHDRAWAL OF COUNSEL
                                     )
27 AND CONSOLIDATED ACTIONS.         ) [Linking No. 4728]
                                     )
28 ─────────────────────────────     )

─────────────────────────────────────────────────
         [Proposed] Order Granting Association and Withdrawal Of Counsel
                    Case No. CV 04-9049 SGL (RNBx)

EXHIBIT __I__

PAGE __81__

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[Proposed] Order Granting Association and Withdrawal Of Counsel
Case No. CV 04-9049 SGL (RNBx)

EXHIBIT _____I_____

PAGE _____82_____

1     The request of MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA

2 ENTERTAINMENT (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V. to

3 associate Patricia L. Glaser, Glaser Weil Fink Jacobs & Shapiro LLP, 10250

4 Constellation   Blvd   19th   Floor,   Los   Angeles,   CA,   90067,   Email:

5 pglaser@glaserweil.com, Phone: (310) 553-3000, Fax: (310) 556-2920, State Bar

6 Number: 055668, as attorneys of record and as lead counsel for all purposes is

7 hereby GRANTED.

8     The request of MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA

9 ENTERTAINMENT (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V. to

10 associate Russell J. Frackman, Mitchell, Silberberg & Knupp, LLP, 11377 W.

11 Olympic Blvd, Los Angeles, CA 90064, Email: rjf@msk.com, Phone: (310) 312-

12 2000, Fax: (310) 312-3100, State Bar Number: 49087, as attorneys of record is

13 hereby GRANTED.

14     The request of MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA

15 ENTERTAINMENT (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V. to

16 allow Skadden, Arps, Slate, Meagher & Flom, LLP to withdraw as counsel of record

17 upon completion of the Phase 1 proceedings in the above-referenced action before

18 this Court is hereby GRANTED.  Such withdrawal shall be effective upon filing with

19 the Court and service upon all parties by Skadden of a notice of withdrawal at which

20 point Skadden shall no longer be counsel of record for the MGA Parties for any

21 purpose in this Court.

22

23     IT IS SO ORDERED.

24     DATED   January 28, 2009

25

26                     Hon. Stephen G. Larson

                    United States District Court Judge

27

28

EXHIBIT _I_

PAGE _83_

# NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)   **Case Title**  Mattel, Inc. v. MGA ENTERTAINMENT, INC

**Title of Document**  Order Granting Association and Withdrawal of Counsel

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So  Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| ✓ | US Attorneys Office - Civil Division -L.A. |
| ✓ | US Attorneys Office - Civil Division - S.A. |
| ✓ | US Attorneys Office - Criminal Division -L.A. |
| ✓ | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| ✓ | US Marshal Service - Los Angeles (USMLA) |
| ✓ | US Marshal Service -  Riverside (USMED) |
| ✓ | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | ***ADD NEW NOTICE PARTY*** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*:  P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

\* For CIVIL cases only

| ***JUDGE / MAGISTRATE JUDGE (list below):*** |
|---|
| |
| |
| |
| |

**Initials of Deputy Clerk** jh

**EXHIBIT** I

**PAGE** 84

# EXHIBIT J

**Rebecca Ramos**

| | |
|---|---|
| **From:** | Michael T Zeller |
| **Sent:** | Thursday, January 22, 2009 4:51 PM |
| **To:** | 'Russell, Jason D' |
| **Cc:** | Jon Corey; 'Herrington, Robert J (LAC)'; Stephen Hauss |
| **Subject:** | Discovery |

Jason, in light of our conversation yesterday, it was surprising to see Rob Herrington's letter of this afternoon. You told me that it is the alleged responsibility of other firms to respond to Phase 2 discovery, including with respect to MGA's compliance with discovery that was compelled previously, but that those firms would not or could not respond to our discovery requests or to our meet and confer letters until the Court decided MGA's purported "substitution" issues. Nevertheless, today, Rob sent us a letter saying that Skadden wishes to meet and confer on discovery that clearly involves Phase 2 issues. This is precisely the type of finger-pointing and tactical refusals that caused us to raise objections with the Court over the ostensible "substitution." It also is simply not consistent with what you told me yesterday was MGA and Skadden's intentions. This letter is all the more troubling given that Bingham asked us today for an extension on the subpoenas, without disclosing that the effect of any extension would be to create tactical delay on a Mattel motion to compel so that MGA could bring a motion. All of this also causes us to now have serious doubts that MGA would even abide by any stipulation on the purported "substitution" we enter into and instead would simply use it to engender confusion and procedural disputes.

Please let us know when MGA will be meeting and conferring as we have requested and otherwise complying with its outstanding discovery obligations, including the depositions previously authorized by the Court. We will be happy to discuss the issues raised in the letter of today at the same time. Please also be advised that we will contemporaneously be bringing motion to compel against each these entities as well to avoid repetition of MGA's past practice of attempting to force serial rounds of motions.

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  michaelzeller@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT __J__

PAGE __85__

# EXHIBIT K

**Rachel Fiset**

| | |
|---|---|
| **From:** | Michael T Zeller |
| **Sent:** | Wednesday, January 28, 2009 3:20 PM |
| **To:** | 'Jason.Russell@skadden.com' |
| **Subject:** | And you seriously wonder |

why you have no crediblity with us. Here's what Khan wrote to us today:  "Finally, your assertions regarding Jason Russell's alleged representations are mistaken.  I spoke to Mr. Russell and he confirmed that he had absolutely no discussions with you about the deposition notices for Mr. Vargas, Ms. Trueba and Ms. Salemnia.  In fact, he confirmed that his discussions were with Michael Zeller of your firm and that Mr. Zeller was told that no dates could be agreed upon as the Skadden firm did not anticipate being Phase 2 counsel."  As you know, Jason, this is simply false.

Michael Zeller
Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
865 South Figueroa Street, 3rd Floor
Los Angeles, CA    90017

Direct:   (213) 443-3180
Main Phone:   (213) 443-3000
Main Fax:   (213) 443-3100

E-mail:   michaelzeller@quinnemanuel.com
Web:   www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT __K__

PAGE __86__

1