Patricia L. Glaser, State Bar No. 055668
Pglaser@chrisglase.com
Joel N. Klevens, State Bar No. 045446
Jklevens@chrisglase.com
Caroline H. Mankey, State Bar No. 187302
Cmankey@glaserweil.com
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

Attorneys for MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, and MGAE de MEXICO S.R.L. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware Corporation<br><br>Defendant.<br><br>Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-9059<br>Case No. CV 05-2727<br><br>**DISCOVERY MATTER**<br>**[To Be Heard by Discovery Master Robert C. O'Brien Pursuant to Order of January 6, 2009]**<br><br>**MGA ENTERTAINMENT, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION TO COMPEL MATTEL TO PRODUCE DOCUMENTS RESPONSIVE TO REQUESTS FOR PRODUCTION 526 AND 528**<br><br>Date: March 11, 2009<br>Time: 10:00 a.m.<br>Place: Arent Fox LLP<br>555 West Fifth St., 48th Floor<br>Los Angeles, CA 90013<br><br>[Honorable Stephen G. Larson]<br><br>**Phase 2**<br>Discovery Cut-off: December 11, 2009<br>Pre-Trial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Mattel's new opposition papers still fail to establish any cognizable basis for withholding the documents responsive to MGA RFPs 526 and 528.[1] Mattel continues to claim that the requested documents are irrelevant to the present action even though the documents Mattel provided to law enforcement agencies concern the identical alleged misconduct (theft of trade secrets) that underlies Mattel's civil claims. It therefore is hard to imagine how anything could be more relevant than the information Mattel provided to law enforcement agencies about that alleged misconduct.

Mattel strains to avoid production of these documents by invoking the attorney work-product doctrine, the privileges found in Section 47(b) of the California Civil Code and an immunity doctrine recognized by federal antitrust law. None of these is applicable here.

First, as a matter of law, the documents do not constitute work-product because Mattel did not provide them to law enforcement authorities in a proceeding in which it was a party. Moreover, even if the documents somehow qualified as work-product (which they do not), Mattel waived any such protection. Disclosure of information to law enforcement authorities with respect to an adversary's alleged wrongdoing constitutes a waiver of the work product doctrine. Additionally, Mattel provided

---

[1] Mattel's claim that MGA filed its motion to compel within hours of informing Mattel that it was renewing its motion is false. Mattel had known for almost two weeks that MGA planned to renew its motion to compel RFPs 526 and 528 because the parties' January 26, 2009 Joint Report to the Discovery Master identifies the motion as one that MGA planned to renew.
    Nonetheless, Mattel has taken the opportunity to essentially file two sets of opposition papers on this matter: one which was originally filed on January 24, 2008 (attached to MGA's Notice of Motion) and another on February 13, 2009. Although Mattel argued that the second set of papers was necessary "in light of the proceedings over the past year," nothing in their February 13th opposition addresses any recent developments.

these documents to law enforcement agencies knowing that MGA would be entitled to such production in the event of criminal prosecution. Thus, Mattel created an opportunity "for potential adversaries [such as MGA] to obtain the information."

Second, by admittedly having produced some of the documents to MGA, Mattel cannot simultaneously use the work product doctrine as a sword and a shield, unilaterally deciding which pieces of the alleged "work product" are helpful to it and should be produced, and which pieces are not helpful and should remain hidden.

Finally, neither the state law privilege nor the federal antitrust immunity doctrine on which Mattel relies obviates its discovery obligations in this case. Civil Code section 47(b) (the so-called "litigation privilege") and the Noerr-Pennington doctrine shield parties who report certain activities to law enforcement officials from tort and antitrust liability based on the communications, they do not shield a party from complying with its discovery obligations. The issue here is not whether the MGA parties can sue Mattel from communicating with law enforcement agencies. The issue is whether those communications contain information relevant to the claims or defenses in this case – such as facts, documents and witnesses relating to the alleged theft of trades secrets – and clearly they do. Otherwise, Mattel would not have provided the information to law enforcement to instigate and aid in criminal prosecution of the alleged misconduct.

In short, Mattel has no legally cognizable ground for withholding the documents responsive to RFPs 526 and 528, and should be ordered to produce them immediately.

## II.

## ARGUMENT

**A.  Mattel's Relevance and Burdensomeness Objections Are Unwarranted Because the Requests Seek Evidence Directly Relevant to The Claims and Defenses In this Action.**

Under Federal Rule of Civil Procedure 26(b)(1), a party is entitled to discovery of information that is "relevant to the claim or defense of any party." Here, RFPs 526 and 528 seek evidence directly tied to Mattel's claims that MGA took confidential information from Mattel and MGA's defense against those claims.

Mattel's argument that documents constituting communications between Mattel and law enforcement authorities (RFP 526) have no relevance to Mattel's civil claims strain credibility past the breaking point. By way of example only, these documents reflect what Mattel told law enforcement about what was allegedly taken by MGA, the people who have knowledge of what was taken, any other relevant witnesses, and any supposed criminal intent on the part of MGA or the former Mattel employees who supposedly took the information.[2] Indeed, Mattel does not deny that it communicated with law enforcement agencies about the *very same activities and claims* it is now asserting against MGA in this civil action. Not only are these communications relevant to Mattel's RICO and trade secret misappropriation claims, they are relevant to MGA's defense against these claims, and to the credibility of Mattel witnesses. *See* Fed. Rule Civ. Proc. 26(b)(1). In particular, these communications may support MGA's affirmative defense of unclean hands by demonstrating whether Mattel made any misrepresentations to law enforcement agencies. These communications may also reveal whether Mattel's criminal accusations are consistent with the allegations in their civil claims in this action.

---

[2]  Mattel will have to establish criminal intent on the part of the former employees in order to prove the alleged predicate acts that underlie its RICO claims.

1  Accordingly, the Federal Rules of Civil Procedure entitle MGA to conduct discovery
2  to obtain evidence to test and refute Mattel's claims.
3    Mattel does not even attempt to argue that the documents it provided to law
4  enforcement authorities (RFP 528) are irrelevant. Instead, Mattel asserts that it
5  should not have to produce these documents because they have already "produced
6  tens of thousands of documents . . . in response to numerous other MGA documents
7  requests." (Opp. at 5:7-8.) That is not a proper objection.
8    First, Mattel has not proffered any evidence that *any* of these previously
9  produced documents are the exact same documents Mattel provided to law
10 enforcement.[3] Second, Mattel has not proffered any evidence that *all* of the
11 documents provided to law enforcement have been produced. Further, MGA is
12 entitled to production of these documents in the same context in which they were
13 provided to the authorities. MGA is entitled to conduct discovery as it sees fit and
14 Mattel cannot restrict MGA's right to do so by picking and choosing if, when and
15 how it produces relevant documents.
16   Mattel's "overbreadth" objection is equally without merit. RFPs 526 and 528
17 are not overbroad simply because they seek documents concerning any alleged taking
18 of confidential information by MGA, in addition to those alleged in Mattel's
19 counterclaims. These documents may, for example, be significant to MGA's defense
20 of Mattel's counterclaims even if they do not support Mattel's allegations. They may
21 also be highly relevant to challenge the credibility of Mattel's witnesses. Again,
22 Mattel may not control the manner in which MGA obtains relevant evidence to
23 defend against Mattel's claims.
24 **B.   The Work-Product Doctrine Is Inapplicable Or Has Been Waived.**
25   Mattel's assertion that the identity of documents provided to law enforcement
26 agencies constitute protected attorney work-product likewise is untenable. Other than

---

[3] To the extent these documents have been produced previously, Mattel should, but has not, identified the bates numbers of the previously produced documents which are duplicative of the documents responsive to RFPs 526 and 528.

*Hickman v. Taylor*, 329 U.S. 495 (1947), which simply defines work-product in an inapposite context, Mattel cites no authority whatsoever to support its position that the work-product doctrine bars the production of otherwise relevant documents simply because they were provided to law enforcement agencies in criminal investigations involving the same allegedly wrongful conduct.

It is well-settled in the federal courts that work-product protection is inapplicable to documents produced by a litigant in proceedings in which it was not a party. Therefore, documents Mattel chose to provide in connection with a proceeding to which it is not a party clearly cannot be work product. Notably, Mattel does not cite a single case in which prior disclosures to a third-party were protected by the work-product doctrine in subsequent (or different) litigation. To the contrary, federal courts routinely deny application of the work-product doctrine when the invoking party is not a litigant in **both** actions. *See, e.g., United States v. Graham*, 555 F. Supp. 2d 1046, 1049-1050 (N.D. Cal. 2008) (declining to expand the work-product doctrine to cover non-parties); *Doubleday v. Ruh*, 149 F.R.D. 601, 605-607 (E.D. Cal. 1993) (rejecting assertion of work-product protection when invoking entity was not a party to "Both Prior And Subsequent Cases" and stating that policy behind the doctrine is inapplicable "in the context of a former criminal defendant, now plaintiff, seeking information from criminal files of a previous prosecution").

To qualify for work-product protection under Federal Rule of Civil Procedure 26, documents must meet two requirements: (1) they must be "prepared in anticipation of litigation or for trial," and (2) they must be prepared "by or for another party or by or for that other party's representative." *In re Cal. Public Utilities Com'n*, 892 F. 2d 778, 780-781 (9th Cir.1989). In determining whether the doctrine is applicable to a particular document, "the court must consider the ***primary purpose*** of the work product doctrine, which is to 'prevent the exploitation of a party's efforts in ***preparing for litigation***.'" *Johnson v. Finn*, 2007 WL 3232253, *1 (E.D. Cal. 2007) (emphasis added). Mattel's primary purpose in disclosing the disputed documents to

1 various law enforcement officials was *not* to prepare for litigation by it against MGA.
2 Its purpose was to attempt to instigate criminal prosecutions by prosecutorial
3 agencies.[4] Because the documents sought by MGA were not: (1) produced by Mattel
4 in its capacity as a litigant in another separate lawsuit; or (2) produced in anticipation
5 of *this* litigation, the work-product doctrine may not be invoked.

6       Mattel's assertion that disclosure to law enforcement agencies does not
7 constitute a waiver of the work-product doctrine is erroneous. Mattel admits that the
8 work-product doctrine is waived when material is "voluntarily disclosed such that it
9 may become readily accessible to an adversary." (Opp. at 6-7 (citing *Aronson v.
10 McKesson HBOC, Inc.*, 2005 WL 934331, *6 (N.D. Cal. 2005).) In fact, the courts
11 have specifically held that "disclosing information to governmental authorities in the
12 hope that they will attack an adversary…cannot be said to be done 'in the pursuit of
13 trial preparation.' Thus, disclosure in such a situation results ***in a waiver of the work
14 product doctrine***." *Bank of America, N.A. v. Terra Nova Insur. Co.*, 212 F.R.D. 166,
15 172-73 (S.D.N.Y. 2002). Therefore, when a party provides information to law
16 enforcement agencies and "harbor[s] the hope, even if un-communicated, that its
17 disclosures would encourage the Government to prosecute" a third party, this
18 disclosure constitutes waiver because it "substantially increase[s] the potential the
19 information gained during the investigation would be disclosed to [the] adversary."
20 *Id*.

21       Given that Mattel disclosed the documents to these entities with the intention of
22 triggering criminal prosecution of MGA and its representatives, the intended effect of
23 Mattel's disclosure is to make those documents available to MGA under the
24 applicable rules of criminal procedure, which would entitle MGA to the documentary
25 evidence on which any alleged criminal liability is based. Mattel knew when it

---

27 [4] Despite Mattel's machinations, the US Attorneys Office in the Central District of
28 California has advised MGA and Mr. Larian that they are not targets of a criminal prosecution.

666479

6

MGA'S REPLY MEMO IN SUPPORT OF ITS MOTION TO COMPEL RE RFPS 526 AND 528

provided the documents to law enforcement agencies that such production "substantially increased the opportunities for potential adversaries to obtain the information" (Opp. at 7). Thus, Mattel cannot truthfully claim that it had an expectation this material would remain protected (assuming, *arguendo*, that such protection ever existed).

Additionally, the work-product doctrine also has been waived because Mattel admits that it has already produced documents that "reflected communications between Mattel and law enforcement." (Declaration of Timothy L. Alger, dated January 24, 2008, and attached to MGA's Notice of Renewed Motion to Compel, ¶ 16.) Thus, Mattel has knowingly waived the protection of the work-product doctrine by producing some of the documents sought by RFPs 526 and 528. Mattel should not be allowed to use the work-product doctrine as both a sword, by waiving the doctrine, and a shield, by asserting the doctrine. *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1303 (Fed. Cir. 2006) ("When a party seeks greater advantage from its control over work product than the law must provide to maintain a healthy adversary system, then the balance of interests recognized in *Hickman* . . . shifts . . . To the extent the work-product immunity could have such an effect, it is waived.") (citations and internal quotes omitted). Accordingly, any applicable work-product immunity has been waived and Mattel should be compelled to produce ***all*** documents responsive to RFPs 526 and 528.

Indeed, acceptance of Mattel's position would lead to an untenable result. Parties in civil litigation who allege criminal wrongdoing as part of their claims could avoid their discovery obligations by the simple device of giving prosecutorial agencies an entire universe of documents that purportedly evidence criminal activity, and then refusing to produce any documents in discovery based on an assertion of the work-product doctrine. Neither the Federal Rules of Civil Procedure nor the applicable case law sanction such an unjust result.

## C. Mattel's Assertion of a Privilege Based on Section 47(b) of the California Civil Code and the Federal *Noerr-Pennington* Doctrine is Completely Unsupported by Law.

Mattel's assertion that Cal. Civ. Code 47(b) and the *Noerr-Pennington* doctrine provide some sort of "privilege" against providing discovery is completely unsupported by California or federal law. Both section 47(b) and the *Noerr-Pennington* doctrine give parties who communicate with law enforcement immunity from **liability** under state tort law and federal antitrust laws, not from **discovery** in civil suits. Thus, with one inapplicable exception, every single case cited to by Mattel involves a "litigation privilege," not pre-trial discovery.

Thus, in *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350 (2004), the question presented to the court was "whether **tort liability** may be imposed for statements made when a citizen contacts law enforcement personnel to report suspected criminal activity...." 32 Cal. 4th at 364. Mattel's assertion that this case stands for the proposition that a communication to law enforcement officials about suspected criminal activity "enjoys an unqualified privilege" omits the fact that the court was addressing immunity from tort liability, not immunity from discovery obligations.[5] (*See* Opp. at 8) Nothing in the *Hagberg* opinion even addresses the issue of whether communications and documents passed from the reporting party to the law enforcement agency is discoverable in litigation arising out of the same underlying, allegedly criminal, activities.

Every other California case that Mattel cites suffers from the same defect. *See Jacob B. v. County of Shasta*, 40 Cal. 4th 948, 955, 956 (2007) ("We have discussed the basic principles underlying section 47(b)'s **litigation privilege** in many cases....

---

[5] Mattel conveniently fails to quote the following sentence: "These cases explain that a statement urging law enforcement personnel to investigate another person's suspected violation of criminal law...or to report a crime to prosecutorial authorities is **shielded from tort liability**...." *Hagberg*, 32 Cal. 4th at 364 (emphasis added).

1  [P]ublic agencies... must be permitted to provide such information without fear of
2  being harassed by *derivative lawsuits*.") (emphasis added); *Silberg v. Anderson*, 50
3  Cal. 3d 205, 213, 214 (1990) (the "*litigation* privilege" provided by section 47(2)
4  "afford[s] litigants and witnesses... the utmost freedom of access to the courts
5  without fear of being harassed subsequently by *derivative tort actions*") (emphasis
6  added); *Williams v. Taylor*, 129 Cal. App. 3d 745 (1982) (affirming summary
7  judgment against plaintiff's claims for slander and malicious prosecution based on
8  Section 47(b)). Here, MGA does not assert claims against Mattel for its
9  communications with law enforcement. Rather, MGA seeks information about those
10 communications to aid in its defense against civil claims brought by Mattel.

11      Mattel's reliance on the federal *Noerr-Pennington* doctrine is similarly
12 misplaced. *Forro Precisions, Inc. v. Int'l Bus. Mach.* ("*Forro*"), a case cited by
13 Mattel, states, "The Noerr-Pennington doctrine *immunizes from the antitrust laws*
14 anti-competitive conduct undertaken to influence or petition government bodies, or to
15 utilize judicial or quasi-judicial mechanisms." 673 F.2d 1045, 1059 (1982) (emphasis
16 added). In *Forro*, the plaintiff, Forro, brought suit against IBM for assisting a police
17 search of Forro's business premises. Based in part on the *Noerr-Pennington* doctrine,
18 the court held that Forro's antitrust claim could not be based on IBM's solicitation of
19 aid from the police department that resulted in the police investigation and search of
20 Forro's premises, or on IBM's assistance in these activities. *Id.* at 1061. As a result,
21 "IBM's actions in assisting the police...were privileged and could not serve as a basis
22 for *civil liability*." *Id* at 1054 (emphasis added). Clearly, the "privilege" at issue in
23 *Forro* dealt with freedom from antitrust liability, not freedom from discovery. Thus,
24 the *Forro* opinion and the *Noerr-Pennington* doctrine are completely inapposite to the
25 issue presented by MGA's motion.

26      Only one case cited by Mattel actually held that a party was protected from the
27 production of communications made to government agencies regarding suspected
28 criminal activity, and that case is completely inapposite, both because it involved the

666479

9

MGA'S REPLY MEMO IN SUPPORT OF ITS MOTION TO COMPEL RE RFPS 526 AND 528

Annunzio-Wylie Act and because the communications were sought to prove a defamation claim based on those communications. *See Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004). As the *Whitney* court explained, the Annunzio-Wylie Act

> gave the Secretary of the Treasury the power to require banks and other financial institutions to report suspicious transactions to the appropriate authorities and contained other provisions with respect to the mandatory or voluntary disclosure of suspicious activities. In order to encourage financial institutions to report possible criminal activity, the Act gave financial institutions and their officers, employees, and agents immunity from suit based on their having reported or disclosed a possible crime.

*Id.* at 680. In *Whitney*, bank customers asserted defamation claims against a bank and sought discovery of information and documents that it provided to government agencies in its reports. The court held that the applicable statute and regulations expressly created an unqualified discovery and evidentiary privilege that protected a broad range of communications from production. *Id.* at 682. The discovery privilege discussed in *Whitney* has no applicability to this case because the court's statutory analysis was confined to the Annunzio-Wylie Act, and because the MGA Parties are not seeking the discovery for the purpose of asserting that Mattel is liable for the communications it made.

## III.

## CONCLUSION

For the foregoing reasons, MGA respectfully requests that the Court grant its Motion in its entirety and order Mattel to produce all documents responsive to MGA's Request for Production Nos. 526 and 528.

Dated: February 19, 2009          GLASER, WEIL, FINK, JACOBS
                                  & SHAPIRO, LLP

                                  By:  /s/ Caroline H. Mankey
                                       Caroline H. Mankey
                                  Attorneys for Defendants, MGA
                                  ENTERTAINMENT, INC., ISAAC LARIAN,
                                  MGA ENTERTAINMENT (HK) LIMITED,
                                  and MGAE de MEXICO S.R.L. de C.