QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiff Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>              Plaintiff,<br><br>        vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-09059 and CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Robert O'Brien]**<br><br>MATTEL, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS BY MGA ENTERTAINMENT, INC., AND ISAAC LARIAN;<br><br>Date:    March 19, 2009<br>Time:   10:00 a.m.<br>Place:   Arent Fox LLP<br>Gas Company Tower<br>555 West Fifth Street, 48th Floor<br>Los Angeles, CA<br><br>Discovery Cut-off:  December 11, 2009<br>Pre-trial Conference:  March 1, 2010<br>Trial Date:  March 23, 2010 |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT .......................................................................................................... 2

I.   THE COURT SHOULD ORDER MGA AND LARIAN TO
     SUPPLEMENT THEIR PRODUCTION OF FINANCIAL
     INFORMATION ........................................................................................... 2

     A.   The Updated Financial Information Mattel Seeks Is Highly
          Relevant to Phase 2 Claims, Defenses, and Damages .......................... 2

     B.   Mattel Properly Met And Conferred With Defendants Regarding
          These Requests Before It Filed Its Motion ........................................... 4

II.  THE COURT SHOULD ORDER MGA TO SUPPLEMENT ITS
     RESPONSE TO INTERROGATORY NO. 45 OF MATTEL'S SIXTH
     SET OF INTERROGATORIES ..................................................................... 6

     A.   Having Responded To Interrogatory No. 45 Once, MGA Cannot
          Complain That It Would Be Burdensome to Supplement It.................. 6

     B.   Bratz Revenue and Profits Are Relevant to Mattel's and MGA's
          Damages Claims ................................................................................. 7

III. THE COURT SHOULD OVERRULE DEFENDANTS'
     OBJECTIONS AND COMPEL COMPLETE RESPONSES TO
     SUPPLEMENTAL INTERROGATORY NOS. 56-63 AND 67-69 ............... 9

     A.   MGA and Larian Concede That the Bulk of Their Objections
          Should Be Overruled............................................................................. 9

     B.   Mattel Is Entitled to Complete Responses to Supplemental
          Interrogatory Nos. 56-63...................................................................... 10

          1.   Even If Defendants Deny That Documents Were Taken
               From Mattel, They Must Still Respond to Interrogatory
               Nos. 60, 61, and 63 ..................................................................... 10

          2.   Interrogatory Nos. 56-63 Are Not Unduly Burdensome .......... 12

          3.   Interrogatory Nos. 56-63 Are Not Compound ........................ 14

          4.   Interrogatory Nos. 58, 59, and 62 Are Proper Contention
               Interrogatories............................................................................ 16

     C.   Mattel Is Entitled to Complete Responses to Supplemental
          Interrogatory Nos. 67-69...................................................................... 19

CONCLUSION....................................................................................................... 21

1

## TABLE OF AUTHORITIES

2

**Page**

3

## Cases

4

Banks v. Office of Senate Sergeant-at-Arms,
   222 F.R.D. 7 (D.D.C. 2004) ........................................................ 15

5

6

Burton Mechanical Contractors, Inc. v. Foreman,
   148 F.R.D. 230 (N.D. Ind. 1992).............................................. 13

7

Capacchione v. Charlotte-Mecklenburg Schools,
   182 F.R.D. 486 (W.D.N.C. 1998) ...................................... 6, 16

8

9

Chapman v. California Dept. of Education,
   2002 WL 32854376 (N.D. Cal. 2002)...................................... 16, 17

10

Coleman v. Schwarzenegger,
   2008 WL  3843292 (E.D. Cal. August 14, 2008)............................ 2

11

12

Dang v. Cross,
   2002 WL 432197 (C.D. Cal. 2002) .......................................... 18

13

Haworth v. Patel,
   2007 WL 1834696 (E.D. Cal. June 26, 2007).............................. 11

14

15

Jackson v. Montgomery Ward & Co., Inc.,
   173 F.R.D. 524 (D. Nev. 1997) ........................................ 13, 19

16

17

King v. E.F. Hutton & Co., Inc.,
   117 F.R.D. 2 (D.D.C. 1987) ................................................ 7

18

King v. General Power Co.,
   50 F.R.D. 134 (N.D. Ga. 1970) .......................................... 13

19

20

Lawrence v. First Kansas Bank &Trust Co.,
   169 F.R.D. 657 (D. Kan 1996) ...................................... 16, 17, 18, 19

21

Oakes v. Halvorsen Marine Ltd.,
   179 F.R.D. 281, Interrogatory No. 67 .................................... 20

22

23

Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburgh,
   2005 WL 318811 (N.D. Cal. January 5, 2005) ............................ 15

24

Richmark Corp. v. Timber Falling Consultants,
   959 F.2d 1468 (9th Cir.), cert. denied, 506 U.S. 948 (1992) .............. 15

25

26

Seff v. General Outdoor Advertising Co.,
   11 F.R.D. 597 (N.D. Ohio 1951) ........................................ 13

27

28

Southwest Hide Co. v. Goldston,
    127 F.R.D. 481 (N.D. Tex. 1989)........................................................ 7

Swackhammer v. Sprint Corp. PCS,
    225 F.R.D. 658 (D.  Kan. 2004) ........................................................ 14

Tennison v. San Francisco,
    226 F.R.D. 615 (N.D. Cal. 2005) ...................................................... 18

United States v. Abel,
    469 U.S. 45 (1984) ........................................................................... 20

Willingham v. Ashcroft,
    226 F.R.D. 57 (D.D.C. 2005) ..................................................... 14, 15

Zapata v. IBP, Inc.,
    1997 WL 122588 (D. Kan. 1997)...................................................... 18

**Statutes**

Cal. Civ. Code § 3426.3............................................................................. 8

Fed. R. Civ. P. 26(e)(1)............................................................................. 2

Fed. R.Civ. P. 33(b) ................................................................................ 11

**Other Authorities**

7 Moore's Federal Practice § 33.30 ......................................................... 16

8A Wright & Miller, Federal Practice & Procedure: Federal Rules of Civil
    Procedure § 2174 ............................................................................. 13

Wright & Miller, 8A Fed. Prac. & Proc. Civ. 2d § 2168.1 at 261 ........................... 15

## **Preliminary Statement**

Defendants are already under court order to produce financial documents responsive to Request Nos. 4-37 and 40-45 (Second Set to MGA) and Request Nos. 207, 208, and 269 (First Set to Larian).  Yet, Defendants assert that Mattel is not entitled to financial information because it is not relevant to Phase 2. This assertion is without merit, as Defendants' financial information is relevant to Mattel's Phase 2 claims that Defendants stole its confidential information and then used it to compete with Mattel.  Mattel is entitled to show what profits resulted from this theft, including Bratz-related profits.  Defendants should also be ordered to supplement their response to Interrogatory No. 45 (Sixth Set) regarding MGA's Bratz-related profits for the same reason.  Defendants have no basis for excluding Bratz-related discovery.

Defendants also have no basis for refusing to respond to Supplemental Interrogatory Nos. 56-63 and 67-69.  Defendants claim that these interrogatories are unduly burdensome because they seek facts that establish "negative propositions." Defendants provide no authority to support their assertion that interrogatories which seek information regarding the responding party's contentions are *per se* unduly burdensome.  To the contrary, even the cases Defendants cite indicate that Mattel's interrogatories are proper contention interrogatories which Defendants must respond to.  Defendants also complain that each of the interrogatories regarding stolen Mattel documents are unduly burdensome because of the volume of documents involved.   Responding to these interrogatories would only be burdensome if, as Mattel claims, Defendants engaged in a wholesale criminal enterprise to steal Mattel's trade secrets.  Defendants cannot complain of the burden they created by their own wrongdoing.  The Court should compel Defendants to provide full and complete responses to Mattel's Supplemental Interrogatories.

## Argument

**I.     THE COURT SHOULD ORDER MGA AND LARIAN TO SUPPLEMENT THEIR PRODUCTION OF FINANCIAL INFORMATION**

> **A.     The Updated Financial Information Mattel Seeks Is Highly Relevant to Phase 2 Claims, Defenses, and Damages**

Mattel claims, *inter alia*, that Defendants stole its confidential information and then used it to compete with Mattel.  Mattel is entitled to show what profits MGA generated from this theft.  Defendants should be ordered to produce this information.

The prior Discovery Master specifically held that Request Nos. 207, 208, and 269 to Larian are "reasonably calculated to lead to the discovery of admissible evidence relevant to several issues in this case," such as "Larian's income and net worth, which are relevant to damages."[1]  The Discovery Master did not, as Defendants assert, limit his ruling to Phase 1.  At the time of that order, discovery was proceeding as to both phases.  The prior order remains in effect, and Defendants should be ordered to comply with it.

Larian's income and net worth are relevant to the damages Mattel seeks against Larian in Phase 2.  Mattel has asserted RICO, RICO conspiracy, misappropriation of trade secrets, and unfair competition claims against Larian.[2]  Mattel is entitled to discover Larian's profits from his wrongdoing.  Larian has failed to comply with the Discovery Master's prior order, and he has failed to comply with his ongoing obligations under the Federal Rules to supplement his production.  Fed. R. Civ. P. 26(e)(1); Coleman v. Schwarzenegger, 2008 WL

---

[1]   Order Granting in Part and Dying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian, dated December 31, 2007, at 16, Watson Dec., Exh. 8.

1    3843292, at * 1 (E.D. Cal. August 14, 2008).  The Court should compel him to

2    supplement his production forthwith.

3            Request Nos. 4-37 and 40-45 to MGA are also relevant to Mattel's

4    claims against MGA for unfair competition and misappropriation of trade secrets.

5    Mattel alleges that MGA used Mattel trade secrets it obtained from stolen Mattel

6    documents to market and sell Bratz products.[3]  The revenues and profits MGA

7    received for Bratz products are therefore also relevant to Mattel's damages theories.

8    (Mot. at 10).  Defendants also do not dispute that these requests are likewise

9    relevant to MGA's own Phase 2 claims.

10           Defendants' assertion that Mattel is somehow relitigating Phase 1

11   issues by seeking damages regarding MGA's theft of Mattel trade secrets and other

12   misconduct is without merit.  (Opp. at 6).  In Phase 1, Defendants specifically

13   argued to the jury that Mattel was not entitled to Bratz profits attributable to

14   elements other than the appearance of the dolls—including themes, marketing,

15   distribution, etc.[4]  In its remaining counterclaims, Mattel alleges that Defendants

16   stole those things too.[5]  (Mot. at 10, n.45).  In Phase 1, the jury awarded $100

17   million, which was clearly less than all Bratz profits.[6]  Mattel is entitled to seek the

18   remainder of  those profits at trial and thus certainly entitled to discover information

19   relating to them.  Furthermore, as Judge Larson has held—more than once in

20   rejecting MGA's efforts to stymie discovery—Phase 2 discovery has been reopened

---

24   [2]  Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims, Watson Dec., Exh. 23.

25   [3]  Mattel, Inc.'s Second Amended Answer In Case No. 05-2727 and Counter-

26   Claims, at 52-53 (discussing My Scene My Bling Bling), Watson Dec., Exh. 23.
     [4]  See Defendants' Phase 1b Closing Argument, Trial Tr. at 8187:1-9; 8222:7-

27   18, Supplemental Watson Dec., Exh. 1.
     [5]  See e.g. id. (discussing MGA theft of My Scene My Bling Bling theme).

28   [6]  Phase 1b Verdict Form, Khan Decl., Exh. G.

1   without limitation, and MGA's spurious distinctions between Phase 1 and Phase 2

2   are no excuse for refusing discovery.[7]

3           Defendants are in direct defiance of the Discovery Master's prior

4   orders.  They should be ordered to immediately supplement their production of

5   documents responsive to Request Nos. 4-37, and 40-45 to MGA and Request

6   Nos. 207, 208, and 269 to Larian.

7        **B.**     **<u>Mattel Properly Met And Conferred With Defendants Regarding</u>**

8              **<u>These Requests Before It Filed Its Motion</u>**

9           Mattel complied with its meet and confer requirements.  Mattel asked

10  the MGA Parties' counsel to supplement their production of financial documents on

11  January 6, 2009, the day that the Court lifted the stay of Phase 2 discovery.[8]

12  Counsel not only failed to respond to that letter within the five days required, but

13  *never* responded to that letter.  On January 13, 2009, Mattel had the full, unfettered

14  right to move to compel the supplemental production it requested.  <u>See</u> Stipulation

15  for Appointment of Discovery Master, dated December 6, 2006, at 4, Supplemental

16  Watson Dec., Exh. 2 (The parties shall have five court days from the date of service

17  of the meet and confer letter to attempt to resolve the dispute.  "If the dispute has

18  not been resolved within five court days after such service, the moving party may

19  seek relief from the Discovery Master by formal motion"); <u>see also</u> Order No. 1,

---

21     [7]   For example, at the February 11, 2009 hearing, Judge Larson rejected

22  defendants' argument that financial discovery is barred even if it is also relevant to the receiver appointment:  "I can see tremendous overlap between, for example,

23  discovery on financial condition of the company as it relates to damages in the Phase 2 and also issues that the receiver is looking at."  As another example, almost

24  a year ago at a hearing on February 28, 2008, Judge Larson stated:  "What I've tried to avoid in this whole process is precisely this, and that's why I tried to carefully

25  word the Orders *concerning Phase 1, Phase 2, bifurcation, not to apply to discovery.  Because I don't want to be in a position up here having hearings over*

26  *what's a Phase One witness and what's a Phase Two witness, and wasting a tremendous amount of time and resources, not only the Court's, but the parties*,

27  having this kind of dispute."  2/28/2007 Tr. at 9:4-11 (emphasis added.)
   [8]   Letter from Jon Corey to Carl Roth, dated January 6, 2009, Watson Dec.,

28  Exh. 17.

1  Regarding Procedure Governing Motions, dated February 12, 2009, Supplemental
2  Watson Dec., Exh. 10.  Mattel's attempts to resolve the dispute with Defendants
3  without motion practice after the five days had passed was a professional courtesy,
4  not a disabling requirement.

5       When the Glaser Weil firm tried to artificially limit the Phase 2
6  discovery issues that Mattel had raised, Mattel identified the failure to respond as
7  one of the many outstanding issues.[9]  Mattel's counsel again provided a copy of the
8  January 6, 2009 letter and the relevant document requests to counsel for MGA.
9  Notwithstanding Mattel's efforts in this regard, when counsel for Mattel and counsel
10  for MGA met and conferred regarding this issue on February 6, 2009,[10] the MGA
11  parties' counsel professed to be unprepared to discuss them then or later on
12  February 9, 2009.[11]  MGA counsel's failure to be prepared to discuss the substance
13  of three specific requests—a month after Mattel had raised the issue—hardly calls
14  into question Mattel's good faith efforts to meet and confer, particularly when
15  Mattel could have filed its motion on January 13, 2009—nearly a month before it
16  did.

17       In any event, Defendants do not claim they were, in fact, willing to
18  supplement their production in any fashion.  Mattel correctly interpreted their
19  month-long delay for what it is—a refusal to supplement their production.  Further
20  meet and confer would not have resulted in resolution, it would simply have further
21  delayed MGA's compliance with its obligations.

22

23

24

25

---

26  [9]  Email from Jon Corey to Amman Khan, dated February 5, 2009, Watson
    Dec., Exh. 30.
27  [10]  Watson Dec., at ¶ 22.
28  [11]  Id. at ¶ 24.

## II.   THE COURT SHOULD ORDER MGA TO SUPPLEMENT ITS RESPONSE TO INTERROGATORY NO. 45 OF MATTEL'S SIXTH SET OF INTERROGATORIES

### A.   Having Responded To Interrogatory No. 45 Once, MGA Cannot Complain That It Would Be Burdensome to Supplement It.

Interrogatory No. 45 asks MGA to identify each Bratz product that MGA or its licensees have sold, and to identify the profits, costs, and revenue associated with each such product.[12]   In response to this Interrogatory, MGA produced spreadsheets generated from its accounting system that contained this data.[13]   Indeed, Defendants admit that supplementing the response will only take eight days.   See Declaration of Brian Wing, at ¶¶ 3-4.   This is not unduly burdensome in light of the scale of claims in this litigation.   See Capacchione v. Charlotte-Mecklenburg Schools, 182 F.R.D. 486, 491 (W.D.N.C. 1998) ("Requiring a responding party to perform extensive research or to compile substantial amounts of data and information does not automatically constitute an undue burden . . . Imposing such a burden is particularly proper where, as here, the information sought is crucial to the ultimate determination of a crucial issue and where the location of the documents is best known by the responding party.").   That is particularly true, given that this information is directly relevant to MGA's own claims, for which MGA has proclaimed it will be seeking "billions" of dollars from Mattel.[14]   Further, Mr. Wing's declaration that MGA does not maintain the types of reports requested is false.   MGA has regularly maintained reports containing

---

[12]   Mattel, Inc.'s Sixth Set of Interrogatories, dated October 23, 2007, Watson Dec., Exh. 9.

[13]   Deposition of Lisa Tonnu, dated January 17, 2008 ("Tonnu Depo."), at 871:17-874:11, Supp. Watson Dec., Exh. 7; see also Report Re MGA Worldwide Sales by SKU, 2001, Depo Exhibit 1365, Supp. Watson Dec., Exh. 8; Spreadsheet Re Bratz Sales 2001-2006 Profit Center 0100 Accessories by Item, Depo Exhibit 660, Supp. Watson Dec., Exh. 9.

1  revenue, profit, costs and royalty information by product and has previously

2  produced them.[15]   The Court should compel Defendants to supplement their

3  response to Interrogatory No. 45.

4  **B.**   **Bratz Revenue and Profits Are Relevant to Mattel's and MGA's**

5  **Damages Claims**

6  MGA claims that Bratz revenues, costs and profits information is

7  irrelevant for two reasons, neither of which has merit.   First, MGA asserts that

8  Mattel's trade secret damages are somehow limited to 2005 because Janine Brisbois

9  left Mattel in September 2005.   (Opp. at 7).   This limitation is nonsensical and

10  ignores that Mattel has alleged an ongoing conspiracy by Larian and MGA to steal

11  and use Mattel's trade secrets.   MGA cites nothing that indicates Mattel has limited

12  either its damages or its trade secrets theft claim to 2005.   As MGA knows, Mattel

13  has alleged thefts beyond that, such as with Jorge Castilla's theft of inventory and

14  forecasting trade secrets and Mattel's International Strategic Plan in 2006, of MGA's

15  use in 2007 of pattern designers to work on Bratz, and of MGA and Larian's suspect

16  transactions to prejudice Mattel in 2009.   Mattel is entitled to discover information

17  regarding MGA's post-2005 theft.   Southwest Hide Co. v. Goldston,   127 F.R.D.

18  481, 488 (N.D. Tex. 1989) (post-complaint conduct was relevant to establish "proof

19  of a 'pattern' of racketeering activity. It is discoverable."); see also King v. E.F.

20  Hutton & Co., Inc., 117 F.R.D. 2, 7 (D.D.C. 1987) ("The civil RICO cause of action

21  with reference to the 'pattern' requirement, and the punitive damages claim, both

22  _____

23  [14]   Transcript from "Nightline," dated December 22, 2006, at 5, Supp. Watson

24  Decl., Exh. 12.

[15]   Id. at 747:9-15 (in preparation for her deposition, Tonnu reviewed documents
regarding Bratz sales broken down by product SKU numbers generated by MGA
25  employee); 750:2-22 (Tonnu also reviewed reports on cost of sales by product SKU
number generated by MGA employee); 878:19-879:23 (MGA tracks as a matter of
26  course the number of products invoiced to customers by product SKU number);
893:20-894:17 (Tonnu reviewed reports on returns broken down by product SKU
27  number); 900:23-902:1 (MGA calculates cost of sales by product SKU number);
902:21-903:6 (MGA calculates royalty expenses by product SKU number).

28

1    may be proven, in part, by subsequent events and documents."). In fact, contrary to

2    MGA's claims that post-2005 discovery is impermissible, the Court compelled

3    Jorge Castilla to sit for deposition to testify about the theft and use of Mattel trade

4    secrets that occurred in 2006 and later.[16]

5           Information regarding Bratz sales also relates to Mattel's claims that

6    MGA used Mattel trade secrets it obtained from stolen Mattel documents to market

7    and sell Bratz products.[17] For example, Mattel has alleged that Jorge Castilla stole

8    Mattel trade secrets related to inventory management and sales forecasting.

9    (Castilla refused to answer questions about this when asked at his deposition and

10   invoked the Fifth Amendment.) The baseline for one possible measure of damages

11   regarding the value to MGA of those trade secrets, i.e. the profits unjustly obtained

12   that should be disgorged is MGA's revenues, costs and profits for its Bratz products.

13   See Cal. Civ. Code § 3426.3 (providing for damages of both the plaintiff's actual

14   loss and unjust enrichments of defendants due to misappropriation.) Moreover,

15   even if MGA's theft ended in 2005, which it did not, Mattel is entitled to discovery

16   into MGA's post-2005 use of it in subsequent Bratz products.

17          Mattel is clearly entitled to discover this information, and MGA's

18   refusal to provide it is groundless.

19

20

21

22

23

24

25

26   [16]  Order Setting Various Briefing Schedules, dated September 2, 2008, at 2,
     Supp. Watson Dec., Exh. 13.

27   [17]  Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counter-
28   Claims, at 52-53 (discussing My Scene My Bling Bling), Watson Dec., Exh. 23.

## III.   THE COURT SHOULD OVERRULE DEFENDANTS' OBJECTIONS AND COMPEL COMPLETE RESPONSES TO SUPPLEMENTAL INTERROGATORY NOS. 56-63 AND 67-69

### A.   MGA and Larian Concede That the Bulk of Their Objections Should Be Overruled

Defendants do not dispute, and thus concede, that the bulk of their objections to Mattel's Supplemental Interrogatories are improper and should be overruled.  While Mattel participated in two separate meet and confers regarding these requests, defendants' counsel refused to abandon *any* of their objections.  Now, having forced Mattel to move on all of their untenable objections, defendants concede that their relevance,[18] subject of expert testimony,[19] privilege,[20] "information uniquely or better known to Mattel,"[21] legal conclusion,[22] and duplicative of other discovery[23] objections are improper.  (Mot. at 11-13, 16, 20-24).  They also concede that their objections to each of the defined terms "SOLD," "SELL," "SALE," "MGA," "MATTEL," "MACHADO," "TRUEBA," "VARGAS," "BRAWER," "CASTILLA," "COONEY," "BRISBOIS," "CONTRERAS," "ABUNDIS," and "FORMER MATTEL EMPLOYEES" are unfounded and that

---

[18]   MGA and Larian initially asserted that Supplemental Interrogatory Nos. 56, 57, 67, and 69 sought irrelevant information, but they have abandoned those objections.  See MGA's Objections and Responses to Mattel's Supplemental Interrogatories (Nos. 56, 57, 67, 69), Watson Dec., Exh. 14; Larian's Objections and Responses to Mattel's Supplemental Interrogatories (Nos. 57 and 69), Watson Dec., Exh. 15.

[19]   MGA's Objections and Responses to Mattel's Supplemental Interrogatories (Nos. 60-63), Watson Dec., Exh. 14; Larian's Objections and Responses to Mattel's Supplemental Interrogatories (Nos. 60-63), Watson Dec., Exh. 15.

[20]   Id. (Nos. 56-63, 67-69).

[21]   MGA's Objections and Responses to Mattel's Supplemental Interrogatories (Nos. 60), Watson Dec., Exh. 14; Larian's Objections and Responses to Mattel's Supplemental Interrogatories (No. 60), Watson Dec., Exh. 15.

[22]   See MGA's Objections and Responses to Mattel's Supplemental Interrogatories, at 8 (objecting that Defendants have to make a conclusion as to an ultimate issue in the case), Watson Dec., Exh. 14.

[23]   Id. (Nos. 52-53, 69).

1   their unilaterally imposed counter-definitions are improper.[24]  (Mot. at 14-16, 18-

2   19).  The Court should overrule each of these objections and limitations.

3          **B.**      **Mattel Is Entitled to Complete Responses to Supplemental**

4               **Interrogatory Nos. 56-63**

5          Defendants assert that they do not have to provide responses to these

6   interrogatories because they (1) require Defendants to admit facts they deny, (2) are

7   unduly burdensome, (3) are compound, and (4) ask Defendants to establish a

8   "negative proposition."   Each of these assertions is without merit and does not

9   justify Defendants' wholesale refusals to answer.

10             **1.**      **Even If Defendants Deny That Documents Were Taken**

11                  **From Mattel, They Must Still Respond to Interrogatory**

12                  **Nos. 60, 61, and 63**

13         Defendants assert that they cannot respond to Interrogatory Nos. 60,

14  61, and 63 because the interrogatories require them to presuppose that they are "in

15  possession of documents stolen or taken from Mattel by former Mattel

16  employees" - a fact that MGA denies."[25]  (Opp. at 8).

17         First, whatever MGA's denial is, it comes too late and is simply not

18  true.   After being compelled by Court Order to appear, MGA's <u>Rule</u>

19  <u>30(b)(6)</u> designee on the topic of identifying Mattel documents that MGA "received

20  _____

21    [24]  MGA's Objections and Responses to Mattel's Supplemental Interrogatories,
   at 7-14, Watson Dec., Exh. 14; Larian's Objections and Responses to Mattel's

22  Supplemental Interrogatories, at 7-14, Watson Dec., Exh. 15.  Although Defendants
   continue to object to Mattel's definition of "MATTEL DOCUMENTS," they have

23  abandoned the objection that because Mattel has designated some of the documents
   as "Confidential - Attorney's Eyes Only," it is impossible for them to respond.  <u>See</u>

24  Mot, at 17-18.  The Court should overrule this objection as well.
     [25]  These interrogatories seek information regarding "MATTEL

25  DOCUMENTS," which Mattel has defined as being any and all documents stolen,
   obtained, or taken from Mattel by any person, including certain documents Mattel

26  identifies by Bates Numbers.  Mattel's Supplemental Interrogatories at 7, Watson
   Dec., Exh. 13.  The definition says nothing about current possession, nor is it

27  limited to former Mattel employees.  Thus, responding to these interrogatories does
     (footnote continued)

28

in any manner from any person who was at the time an employee of Mattel or who had previously been an employee of Mattel"[26] has already testified that MGA has documents taken from Mattel in its possession.[27]  MGA has produced hard copies of hundreds, if  not thousands of pages of Mattel documents in its possession and a compact disc containing those documents.[28]  And, Ms. Kuemmerle, head of MGA's Mexico subsidiary, testified that defendant Gustavo Machado admitted to taking Mattel documents and storing them at the office of MGA de Mexico where Mexico law enforcement officers discovered them when executing a search warrant.[29]  So, MGA may deny that these and other stolen Mattel documents contain trade secrets, but it may not credibly deny that they are in its possession.

Even if Defendants deny that documents were taken from Mattel (which would be a remarkable position in light of the overwhelming evidence to the contrary), the <u>Federal Rules</u> require that they state so under oath and respond to the remainder of the interrogatories.[30]  <u>Haworth v. Patel</u>, 2007 WL 1834696, at * 2 (E.D. Cal. June 26, 2007) ("<u>Fed. R.Civ. P.</u> 33(b) requires an interrogatory to be answered 'fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable.").   For example, Interrogatory No. 60 asks MGA to:

_____

not require Defendants to admit that they are currently in possession of stolen Mattel documents given to them by former Mattel employees.
   [26]   Tonnu Depo. at 190:7-25, Supp. Watson Dec., Exh. 7.
   [27]   <u>Id.</u> at 31:10-36:4, 662:20-665:9._
   [28]   Watson Dec., at ¶ 12.
   [29]   <u>See</u> Deposition of Susana Kuemmerle, dated January 28, 2008, at 116:7-123:20, Supp. Watson Dec., Exh. 11._____.
   [30]   Defendants' denial of the fact that they induced former Mattel employees to steal Mattel documents is disingenuous, particularly given their objection that the term "MATTEL DOCUMENTS" renders the interrogatories unduly burdensome.  If Defendants never stole or induced others to steal Mattel documents and if Defendants never used information contained in stolen Mattel documents, then answering these interrogatories would not be burdensome at all because Defendants could simply so state.

> State all facts which support YOUR contention, if YOU so contend that any information in the MATTEL DOCUMENTS was known to the public or to PERSONS who can obtain economic value from its disclosure or use, and IDENTIFY all PERSONS with knowledge of the foregoing and all DOCUMENTS that REFER OR RELATE TO the foregoing.[31]

If Defendants deny that documents were taken from Mattel, then they can state that under oath.  But they must also answer the remainder of the interrogatory by stating all facts which support their contention, if they so contend, that the information in the documents MGA identifies by Bates number was known to the public or to persons who can obtain economic value from its disclosure or use—i.e., the basis for any contention by MGA that the information at issue here are not trade secrets.[32] Defendants' refusal to provide any substantive response to these interrogatories is improper.

## 2.   Interrogatory Nos. 56-63 Are Not Unduly Burdensome

MGA's burden objection should be recognized for what it is.  MGA claims that the theft of Mattel's documents is so massive and pervasive that MGA would be unduly burdensome to MGA to respond to interrogatories regarding that

---

[31]  Id. (No. 60).

[32]  As discussed in Mattel's Motion, if Defendants do not deny that documents were taken from Mattel, they cannot limit "MATTEL DOCUMENTS" to include only the documents identified by Bates Numbers in Mattel's Supplemental Interrogatories.  See Mot. at 17; MGA's Objections and Responses to Mattel's Supplemental Interrogatories, at 8-9, Watson Dec., Exh. 14.  Mattel defined "MATTEL DOCUMENTS" to include all documents stolen, obtained or taken from Mattel.  Mattel's Supplemental Interrogatories, at 7, Watson Dec., Exh. 13. Defendants do not dispute that Mattel is entitled to discover information regarding all of the documents taken or obtained from Mattel, not just the ones Mattel currently has knowledge of.  Thus, if Defendants know that additional documents that were taken from Mattel, they cannot withhold that information by substituting their own limited definition of "MATTEL DOCUMENTS."  Defendants' limitation to the term "MATTEL DOCUMENTS" should be overruled.

1 theft.  That cannot be the legitimate basis for a burden objection.  Rather, it is a

2 tactic to prevent Mattel from obtaining discovery regarding that massive theft.

3           Mattel set forth in its Motion, and Defendants have not disputed, that

4 interrogatories which seek information central to a lawsuit are not unduly

5 burdensome simply because preparing responses would be time-consuming and

6 costly.  See Mot. at 25 (citing 8A Wright & Miller, Federal Practice & Procedure:

7 Federal Rules of Civil Procedure § 2174; King v. General Power Co., 50 F.R.D.

8 134, 136 (N.D. Ga. 1970); Seff v. General Outdoor Advertising Co., 11 F.R.D. 597,

9 598 (N.D. Ohio 1951)).   These interrogatories specifically seek information

10 regarding MGA's theft of Mattel's trade secrets.   (See Mot. at 11-12, 25-26).

11 Defendants  never  dispute  this.    Defendants  complain  that  "MATTEL

12 DOCUMENTS" is defined to include at least 8 boxes of stolen documents, which

13 will burden MGA.  But they provide no authority or supporting declaration as to

14 why the burden of explaining their defense to these stolen documents is undue.

15           The prior Discovery Master overruled undue burden objections where

16 Defendants  were  unable  to  substantiate  the  undue  burden  with  a  supporting

17 declaration, and the same result should be reached again here.  See Order Granting

18 Mattel's Motion to Compel Production of Documents and Interrogatory Responses

19 by MGA, dated May 15, 2007, at 14 ("Once again, MGA has failed to substantiate

20 any of its objections with supporting declarations or legal authorities.  Accordingly,

21 all objections are overruled and MGA is ordered to provide a full response to

22 Interrogatory No. 11), Supplemental Watson Dec., Exh. 3; see also Jackson v.

23 Montgomery Ward & Co., Inc., 173 F.R.D. 524, 528-9 (D. Nev. 1997) ("The party

24 claiming that a discovery request is unduly burdensome must allege specific facts

25 which indicate the nature and extent of the burden, usually by affidavit or other

26 reliable evidence.") (citing Burton Mechanical Contractors, Inc. v. Foreman, 148

27 F.R.D. 230, 233 (N.D. Ind. 1992)).

28

In any event, if, as Mattel alleges, Defendants engaged in a widespread practice of stealing Mattel trade secrets, then the burden Defendants must undertake to provide information about their misappropriation is a burden they created. Defendants never deny that they know which documents were stolen from Mattel and who stole them.[33]   If instead Defendants deny that any documents were taken from Mattel then Defendants should say that under oath, and the burden of providing a response would be minimal.  Either way, Mattel's need to discover this information clearly outweighs any efforts Defendants will be required to undertake.

Furthermore, as the prior Discovery Master held, Mattel's trade secret theft claims are themselves defenses to MGA's own claims.[34]  As noted, MGA has asserted that it intends to seek "billions" on its claims against Mattel.  That, too, makes clear that the supposed (and wholly unsubstantiated) burden on MGA in answering this interrogatory that also necessarily is relevant to MGA's own claims pales in comparison to the need for it and its importance to this case.

### 3.     Interrogatory Nos. 56-63 Are Not Compound

Interrogatory Nos. 56-63 are not compound, simply because they contain the term "MATTEL DOCUMENTS," which refers to the category of documents that were stolen from Mattel.  Nor are they compound because they ask MGA to identify witnesses, facts, and documents regarding these documents.  Each refers to one common theme/contention, and thus, counts only as one interrogatory.[35]  See Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658, 664 (D.

---

[33]   Defendants complain that Mattel has not provided evidence that MGA and Larian know which documents they stole from Mattel.  Indeed, that is the purpose of Mattel's interrogatories—to discover the evidence regarding MGA's theft of Mattel trade secrets.

[34]   Order of January 25, 2007, Watson Dec., Exh. 24 ("Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims").

[35]   Defendants' authorities are inapposite.  In Willingham v. Ashcroft, 226 F.R.D. 57 (D.D.C. 2005), the court found that interrogatories, which sought information regarding separate subjects, such as the investigations of employees charged with a criminal offense and the prior disciplinary actions regarding the

(footnote continued)

1   Kan. 2004) ("[A]n interrogatory containing subparts directed at eliciting details

2   concerning a 'common theme' should generally be considered a single question.");

3   <u>Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburgh</u>, 2005 WL

4   318811, at * 7 (N.D. Cal. January 5, 2005) (interrogatory that asked the "same

5   question regarding a common group of people" was not compound) (citing

6   Wright & Miller, 8A Fed. Prac. & Proc. Civ. 2d § 2168.1 at 261).  Indeed, as MGA

7   fails to disclose, the Discovery Master has previously ruled in this case that such

8   interrogatories with "subparts seeking facts supporting a contention, the identity of

9   persons with knowledge, and documents are not counted separately for the purposes

10  of applying the . . . interrogatory limit."[36]

11        Further, Defendants improperly attempt to misrepresent that their

12  compound objections render each of these interrogatories in excess of the limit each

13  side is allotted.  However, Interrogatory No. 63 is the <u>only</u> interrogatory to which

14  Defendants objected that it exceeded the limit each side is allotted.[37]  Thus, they

15  have waived that objection with respect to Interrogatory Nos. 56-62.  <u>Richmark</u>

16  <u>Corp. v. Timber Falling Consultants</u>, 959 F.2d 1468, 1473 (9th Cir.) (stating that

17  "failure to object to discovery requests within the time required constitutes a waiver

18  of any objection."), <u>cert. denied</u>, 506 U.S. 948 (1992).  In any event, Defendants

19  cannot refuse to respond to <i>all</i> of the interrogatories simply because they assert,

---

21  employees, in a single interrogatory were compound.  <u>Willingham</u>, 226 F.R.D. at
22  59.  <u>Banks v. Office of Senate Sergeant-at-Arms</u>, 222 F.R.D. 7 (D.D.C. 2004)
     involved an interrogatory that sought two distinct topics: 1) the determination that
23  plaintiff was not entitled to disability leave and 2) the number of employees in the
     past ten years who were denied disability leave.  <u>Banks</u>, 222 F.R.D. at 10.  Neither
24  of these cases held that interrogatories, such as the ones at issue here, are compound
     when they seek information regarding a common theme or group of
25  people/documents.
     [36]   Order Granting Joint Motion for Protective Order Regarding Mattel's
26  Interrogatories, dated September 5, 2007, at 5-7, Supplemental Watson Dec.,
     Exh. 4.
27  [37]   MGA's Objections and Responses to Mattel's Supplemental Interrogatories
     (No. 63), Watson Dec., Exh. 13; Larian's Objections and Responses to Mattel's
28  Supplemental Interrogatories (No. 63), Watson Dec., Exh. 14.

without any justification or analysis, that *one* of them exceed the limit.   See Cappacchione v. Charlotte-Mecklenburg Schs., 182 F.R.D. 486, 492 (W.D.N.C. 1998) (party objecting to interrogatories because they have exceeded the numerical limit must either seek a protective order and not answer them or answer up to the numerical limit and object to the remaining without answering) (citing 7 Moore's Federal Practice § 33.30).  Indeed, Defendants are even unable to identify which of the interrogatories they assert actually exceed the limit.

### 4.   Interrogatory Nos. 58, 59, and 62 Are Proper Contention Interrogatories

Defendants complain that Interrogatory Nos. 58, 59, and 62 ask Defendants to "establish a negative proposition" and thus are unduly burdensome or oppressive.[38]  (Opp. at 11).  The "negative proposition" is that MGA has no Mattel documents.   Yet, as set forth above, MGA's Rule 30(b)(6) witness has already testified that MGA has these in its possession and MGA has produced at least some of them.[39]   So, having been bound by this testimony, the negative proposition argument is factually false and fails at its premise.

Further, Defendants provide no authority to support their assertion that interrogatories which seek information about specific defenses are *per se* improper.[40]  In Lawrence v. First Kansas Bank &Trust Co., 169 F.R.D. 657 (D. Kan 1996), on which Defendants rely, the interrogatories at issue asked defendant to provide—for each of the many paragraphs in plaintiff's complaint to which

---

[38]   In their objections and responses to Mattel's Supplemental Interrogatories, Defendants also object that Interrogatory No. 61 improperly requires them to establish a negative proposition.  See MGA's Objections and Responses to Mattel's Supplemental Interrogatories (No. 61), Watson Dec., Exh. 14.  Defendants have abandoned this objection with respect to Interrogatory No. 61, and thus the Court should overrule this objection as to that interrogatory.

[39]   Tonnu Depo. at 197:19-198:13; 664:2-9, Supp. Watson Dec., Exh. 7.

[40]   In fact, Chapman v. California Dept. of Education, 2002 WL 32854376 (N.D. Cal. 2002), which Mattel cites in its Motion and which Defendants do not (footnote continued)

defendant denied: (a) all facts which support defendant's denials; (b) all documents which refer to the facts in (a); (c) the identity of each person purporting to have knowledge of the facts in (a); and (d) if any part of the interrogatory is answered on information and belief, to set forth the information believed, the source of the information, when and in what manner the information was obtained, and why it is reasonable to believe the information is correct. <u>Lawrence</u> 169 F.R.D. at 660-661. <u>Lawrence</u> did not hold that these interrogatories were *per se* unduly burdensome simply because they involved denials. Rather, the court in <u>Lawrence</u> found that the interrogatories were unduly burdensome because "[e]xcept for matters admitted in the complaint, which would not be disputed at trial, the interrogatories in question would require defendant to provide the equivalent of a narrative account of its case in defense, addressing each issue and detail raised by its denials. This would include every evidentiary fact, details of testimony by supporting witnesses, contents of supporting documents, and even argumentative justification for its belief of facts beyond the knowledge of defendant." <u>Id.</u> at 662. The Court specifically noted that the "request for 'all' facts, based not only upon knowledge, but also upon simply information and belief, adds a significant and unreasonable burden to the task of the answering party." <u>Id.</u> at 663.

Mattel's Interrogatory Nos. 58, 59, and 62, however, are not nearly that broad. They do not require Defendants to provide facts they have no knowledge of. Nor do they require Defendants to provide facts, witnesses, and documents for *every* denial they made to the allegations in Mattel's complaint. Rather, they are tailored to refer to specific contentions *Defendants* may make regarding the stolen Mattel documents: (i) that MGA did not obtain Mattel documents through improper

---

address, holds that such interrogatories are not *per se* oppressive. <u>See</u> Mot. at 23-24 (citing <u>Chapman</u>, 2002 WL 32854376, at *2).

means;[41] (ii) that the information in the stolen documents did not derive independent economic value,[42] and (iii) that MGA has not benefited by its use of the information in the stolen documents.[43]  These are proper contention interrogatories. See Mot. at 23 (citing Tennison v. San Francisco, 226 F.R.D. 615, 618 (N.D. Cal. 2005); Dang v. Cross, 2002 WL 432197, at *4 (C.D. Cal. 2002); Zapata v. IBP, Inc., 1997 WL 122588, at *1 (D. Kan. 1997)).[44]   Indeed, the Court in Lawrence, cited by Defendants, recognized as much:

> It is altogether different for interrogatories to inquire about specific issues, such as whether the opponent relies on the doctrine of *res ipsa loquitur* and, if so, on what factual basis; whether the opponent contends that an article infringed a patent and, if so, what claims of the patent; whether the opponent claims that the interrogating party acted as an agent or a principal and, if so, on the basis of what facts; or whether the opponent contends that a vessel was unseaworthy, an article was defectively designed, or notice was not given within a reasonable time.  All of these interrogatories technically call for opinions and conclusions, but they properly are calculated to identify and narrow issues and to lead to the discovery of relevant evidence.

---

[41]  Mattel Supplemental Interrogatories (No. 58), Watson Dec., Exh. 13.
[42]  Id. (No. 59).
[43]  Id. (No. 62).
[44]  Defendants' attempt to distinguish Dang v. Cross, 2002 WL 432197 (C.D. Cal. 2002) is unavailing.  (Opp. at 12.)  Even if the size of the litigation in Dang was smaller than the instant litigation, Defendants cannot complain about "size" of discovery involved here in providing Mattel information about the documents they stole from because the volume is entirely due to their own wrongdoing.  Defendants also cannot distinguish Tennison v. City & County of San Francisco, 226 F.R.D. 615 (N.D. Cal. 2005) because they have provided no declaration or other evidence to substantiate their claims of burden, nor have they denied that they have easy access to the documents containing responsive facts.

1   Id. at 663 (internal citations omitted).  Defendants offer no authority or evidentiary
2   support for concluding that these interrogatories, which go directly to critical issues
3   in the case, are unduly burdensome.[45]
4          The Court should overrule defendants' objections and compel full and
5   complete responses.
6   **C.     Mattel Is Entitled to Complete Responses to Supplemental**
7          **Interrogatory Nos. 67-69**
8          Defendants concede that Mattel is entitled to discover information to
9   support its claims that MGA poached Mattel employees for the purposes of stealing
10  its trade secrets.  (Mot. at 12-13).  They also concede that these interrogatories are
11  designed to obtain precisely this information.  Id.  The only objection Defendants
12  have to Interrogatories Nos. 68-69 is that the burden and expense of determining
13  whether a former Mattel employee was ever paid by MGA or whether someone was
14  a former Mattel employee is somehow too great.[46]  (Opp. at 13).  Again, however,
15  Defendants provide no evidence to support their objection, which alone is fatal to
16  their assertion.  See Order Granting Mattel's Motion to Compel Production of
17  Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 14,
18  Supplemental Watson Dec., Exh. 3; Jackson, 173 F.R.D. at 528-9.  Nor do they
19  even argue that MGA cannot readily ascertain the dates on which made payments to
20  such persons or that it does not already have reports regarding the payments they

21  _____

22  [45]   Defendants' objections are disingenuous, as they have propounded far
    broader interrogatories to Mattel.  See, e.g., MGA's Second Set of Interrogatories to
23  Mattel, Inc., dated December 4, 2007 (No. 28) ("Describe in detail the complete
    factual basis for YOUR COUNTERCLAIMS, including, without limitation all
24  facts, DOCUMENTS, and witnesses that REFER OR RELATE TO YOUR
    COUNTERCLAIMS"), Supp. Watson Dec., Exh. 14; see also MGA's First Set of
25  Interrogatories to Mattel, dated February 4, 2005 (No. 1) ("State all facts, with
    particularity, and IDENTIFY all DOCUMENTS that support YOUR contention, if
26  YOU so contend, that YOU have suffered harm as a result of any act or omission of
    MGA."), Supp. Watson Dec., Exh. 15.
27

28

make to various individuals or reports regarding which current MGA employees were former Mattel employees.   Defendants' bald assertions of burden are insufficient to sustain their objections.

In fact, affirmatively refuting Defendants' unproven claims, documents that MGA produced in Phase 1 indicate that MGA routinely generates reports regarding the payments it makes as well as which of its current employees are former Mattel employees from which they could compile responses to these interrogatories.[47]  And, even if Defendants did not maintain information regarding payments made to then-Mattel employees, such information is crucial to Mattel's claims of commercial bribery and other tortious conduct against Defendants,[48] and MGA and Larian are certainly in a better position than Mattel is to provide information about who they secretly paid to provide MGA with Mattel trade secrets. Indeed, they have an obligation to investigate this information.

Defendants' only complaint about Interrogatory No. 67 is that it is overbroad because it is not limited to former Mattel employees.   (Opp. at 13). However, Mattel is also entitled to discover whether MGA and Larian have paid potential witnesses in this case, as that is relevant to issues of bias.  (Mot. at 12-13) (citing United States v. Abel, 469 U.S. 45, 51 (1984); Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal. 1998)).  Interrogatory No. 67 asks Defendants to identify the payments MGA or Larian have made to any person identified in the

_____

[46]   Defendants also contend that Interrogatory Nos. 67-69 are compound.  (Opp. at 10).  However, as discussed above, each of these interrogatories seeks information relating a common theme and is thus, not compound.

[47]   See, e.g., MGA 0014230-14232, Supplemental Watson Dec., Exh. 5; see also TX 1932 (excel spreadsheet produced by MGA listing former Mattel employees), Supplemental Watson Dec., Exh. 6.  Lisa Tonnu also testified that MGA generates reports of payments they make to various individuals.  See Tonnu Depo. at 754:16-755:22, Supp. Watson Dec., Exh. 7.

[48]   See Order of January 25, 2007, at 14:13-17 ("payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation.  Payments could show when and what trade secret information Bryant and other defendants allegedly

(footnote continued)

1   parties' initial disclosures when that person was not an employee of MGA.[49]  The

2   response to this interrogatory will undoubtedly reveal whether the potential

3   witnesses in this case are biased, information which Defendants do not dispute

4   Mattel is entitled to.  Indeed, the prior Discovery Master has ruled that payments

5   made to or on behalf of potential witnesses are relevant and discoverable.[50]

6        The Court should overrule Defendants' objections and compel them to

7   provide complete responses to Supplemental Interrogatory Nos. 56-63 and 67-69.

8                              **Conclusion**

9        For the foregoing reasons, Mattel respectfully requests that the

10  Discovery Master: (1) compel MGA and Larian to supplement their production of

11  financial information responsive to Request Nos. 4-37 and 40-45 in Mattel's Second

12  Set of Requests for Documents and Things to MGA and Request Nos. 207, 208 and

13  269 in Mattel's First Set of Requests for Production of Documents and Things to

14  Isaac Larian; (2) compel MGA to answer Interrogatory No. 45 of Mattel's Sixth Set

15  of Interrogatories, and Interrogatory Nos. 56-63, and 67-69 of Mattel's

16  Supplemental interrogatories, (3) compel Larian to answer Interrogatory Nos. 56-63

17  and 67-69 of Mattel's Supplemental Interrogatories, and (4) to overrule all of

18  Defendants' objections to Mattel's Supplemental Interrogatories.

19  DATED:  February 24, 2009        QUINN EMANUEL URQUHART OLIVER &
20                                   HEDGES, LLP

21

22                              By_____/s/ Scott L. Watson_____
23                                   Scott L. Watson
                                     Attorneys for Mattel, Inc.

24  _____

25  misappropriated from Mattel.  Any proof of trade secret theft is also relevant to
26  Mattel's defense against MGA's unfair competition claims."), Watson Dec., Exh. 24.
    [49]   Mattel's Supplemental Interrogatories (No. 67), Watson Dec., Exh. 13.
    [50]   Order Granting in Part Mattel's Motion to Compel MGA to Produce
27  Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6), dated
28  September 25, 2007 at 11, Watson Dec., Exh. 28.