1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

7   Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| vs. | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Robert O'Brien]** |
| Defendant. | [PUBLIC REDACTED] SUPPLEMENTAL DECLARATION OF SCOTT L. WATSON IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS BY MGA ENTERTAINMENT, INC., AND ISAAC LARIAN |
| AND CONSOLIDATED ACTIONS | Date: March 19, 2009<br>Time: 10:00 a.m.<br>Place: Arent Fox LLP<br>Gas Company Tower<br>555 West Fifth Street, 48th Floor<br>Los Angeles, CA<br><br>Discovery Cut-off: December 11, 2009<br>Pre-trial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |

07975/2805432.2

SUPPLEMENTAL DECLARATION OF SCOTT L. WATSON

## SUPPLEMENTAL DECLARATION OF SCOTT WATSON

I, Scott Watson, declare as follows:

1.    I am a member of the bar of the State of California.  I am a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel").  I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2.    Attached hereto as Exhibit 1 is a true and correct copy of relevant excerpts of the trial transcript.

3.    Attached hereto as Exhibit 2 is a true and correct copy of the Stipulation for Appointment of Discovery Master, dated December 6, 2006.

4.    Attached hereto as Exhibit 3 is a true and correct copy of the Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007.

5.    Attached hereto as Exhibit 4 is a true and correct copy of the Order Granting Joint Motion for Protective Order Regarding Mattel's Interrogatories, dated September 5, 2007.

6.    Attached hereto as Exhibit 5 is a true and correct copy of MGA 0014230-14232, as produced by MGA.

7.    Attached hereto as Exhibit 6 is a true and correct copy of Trial Exhibit 1932.

8.    Attached hereto as Exhibit 7 is a true and correct copy of relevant excerpts of the Deposition of Lisa Tonnu.

9.    Attached hereto as Exhibit 8 is a true and correct copy of relevant excerpts of a Report Regarding MGA Worldwide Sales by S.K.U., 2001, produced by MGA and marked as Deposition Exhibit 1365.

10.    Attached hereto as Exhibit 9 is a true and correct copy of relevant excerpts of a Spreadsheet Regarding Bratz Sales 2001-2006 Profit Center

1   0100 Accessories by Item, produced by MGA and marked as Deposition Exhibit

2   660.

3       11.   Attached hereto as Exhibit 10 is a true and correct copy of Order

4   No. 1, Regarding Procedure Governing Motions, dated February 12, 2009.

5       12.   To date, MGA has produced hard copies of hundreds, if not

6   thousands of pages of Mattel documents in its possession and a compact disc

7   containing those documents.  In fact, MGA's Rule 30(b)(6) designee, Lisa Tonnu,

8   testified that MGA produced to Mattel a compact disc of stolen Mattel documents

9   that was found in MGA Mexico's offices.  See Deposition of Lisa Tonnu, attached

10  hereto as Exhibit 7, at 664:2-665:1.  Among the Mattel documents that MGA has

11  produced to Mattel are MGA0104856-0104973, MGA0110680-0110688,

12  MGA0106065-0110278, MGA0117044-0120325, MGA0122552-MGA0124236,

13  MGA0110279-MGA0110294, MGA0110298-0110299, MGA0139152-0139167,

14  MGA0139168-0139170, and MGA0136084-0136200.

15      13.   Attached hereto as Exhibit 11 is a true and correct copy of

16  relevant excerpts of the Deposition of Susana Kuemmerle, dated January 28, 2008.

17      14.   Attached hereto as Exhibit 12 is a true and correct copy of

18  excerpts from the transcript from an episode of "Nightline," which first aired on

19  December 22, 2006.

20      15.   Attached hereto as Exhibit 13 is a true and correct copy of Order

21  Setting Various Briefing Schedules, dated September 2, 2008.

22      16.   Attached hereto as Exhibit 14 is a true and correct copy of

23  MGA's Second Set of Interrogatories to Mattel, Inc., dated December 4, 2007.

24      17.   Attached hereto as Exhibit 15 is a true and correct copy of

25  MGA's First Set of Interrogatories to Mattel, dated February 4, 2005.

26      18.   Attached hereto as Exhibit 16 is a true and correct copy of a

27  letter from Chris Nguyen, counsel from Mattel, to my colleague, Michael Zeller,

28

1   dated September 7, 2007, producing to Mattel a CD of Mattel documents that were
2   in MGA's possession.
3           I declare under penalty of perjury under the laws of the United States
4   that the foregoing is true and correct.
5           Executed on February 24, 2009 at Los Angeles, California.
6
7                                   /s/ Scott L. Watson
                                    Scott L. Watson
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07975/2805432.2

-4-

# Exhibit 1

8172

1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                              ---

4          HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5                              ---

6   MATTEL, INC.,                    :    PAGES 8172 - 8274
                                     :
7             PLAINTIFF,             :
                                     :
8      VS.                           :    NO. ED CV04-09049-SGL
                                     :    [CONSOLIDATED WITH
9   MGA ENTERTAINMENT, INC.,         :    CV04-9059 & CV05-2727]
    ET AL.,                          :
10                                   :
              DEFENDANTS.            :
11  _____ :

12

13

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                    RIVERSIDE, CALIFORNIA

17               WEDNESDAY, AUGUST 20, 2008

18                  JURY TRIAL - DAY 37

19                   AFTERNOON SESSION

20

21

22                         MARK SCHWEITZER, CSR, RPR, CRR
                           OFFICIAL COURT REPORTER
23                         UNITED STATES DISTRICT COURT
                           181-H ROYBAL FEDERAL BUILDING
24                         255 EAST TEMPLE STREET
                           LOS ANGELES, CALIFORNIA 90012
25                         (213) 663-3494

CERTIFIED
COPY

EXHIBIT     1

PAGE     5

8173

1   **Appearances of Counsel:**

2

3   On Behalf of Mattel:

4       Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
        By John B. Quinn, Esq.
5           B. Dylan Proctor, Esq.
            Michael T. Zeller, Esq.
6           Harry Olivar, Esq.
            John Corey, Esq.
7           Diane Hutnyan, Esq.
            William Price, Esq.
8       855 South Figueroa Street
        10th Floor
9       Los Angeles, CA 90017
        (213) 624-7707

10

11

12   On Behalf of MGA Entertainment:

13       Skadden, Arps, Slate, Meagher & Flom LLP
         By Thomas J. Nolan, Esq.
14           Carl Alan Roth, Esq.
             Jason Russell, Esq.
15           Lauren Aguiar, Esq.
             David Hansen, Esq.
16           Matthew Sloan, Esq.
             Robert Herrington, Esq.
17       300 South Grand Avenue
         Los Angeles, CA 90071-3144
18       (213) 687-5000

19

20

21

22

23

24

25

EXHIBIT ___1___

PAGE ___6___

8174

1                           **I N D E X**

2

3    CLOSING ARGUMENT BY COUNSEL FOR THE DEFENSE............ 8175

4    FURTHER CLOSING ARGUMENT BY COUNSEL FOR THE DEFENSE.... 8209

5    REBUTTAL ARGUMENT BY COUNSEL FOR THE PLAINTIFF......... 8247

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT** 1

**PAGE** 7

1    this.

2            Now, you'd have to compare each one of them to the

3    original concept drawings.  They are not substantially

4    similar.

5            The hairstyles.  Let's go to B 110.  Again, these

6    I'm just comparing for you.  First generation, other dolls.

7    You're going to have to take it back to the concept drawing

8    and say are the hairstyles the same?  Are the fashions the

9    same?

10           Mr. Kilpin testified -- let's go to B 594 with

11   respect to the importance of changing fashions.

12           Question.  Remember Mr. Kilpin, he was the senior

13   vice-president in charge of the girls division.

14           "QUESTION:  And why would you change the

15      fashions all the time?

16           "ANSWER:  Well, one of the things we always

17      wanted to do across a product line generally is to

18      always have it look fresh and different on a shelf

19      so that every time a girl might come to the shelf,

20      they'd see something fresh and different.

21           "QUESTION:  And why did you think that was

22      important?

23           "ANSWER:  Just made it more interesting to

24      shop.  Made it more likely that a girl might buy

25      more than one."

EXHIBIT ___1___

PAGE ___8___

```
 1              Mr. Bryant's concept drawings didn't give us any

 2    ideas about accessories other than a backpack with a bunny

 3    rabbit on it.  You'll have all of the packages back there.

 4    Look at them.  See how many of them have the exact backpack

 5    that he drew in his concept drawings.  If they are

 6    substantially similar, then they infringe the copyrightable

 7    material of the concept drawing.  But if they are different,

 8    if each year theme after theme after theme, Mattel is not

 9    entitled to that in their copyright claim.

10              Packaging.  Mr. Quinn says nobody buys packages.

11    It's true.  We don't sell empty boxes.  We never contended we

12    do.  But they want to disregard the importance of packaging.

13    Mr. Kilpin testified as to the importance of both accessories

14    and then later on on packaging.  Let's just look at B 596.

15    Mr. Kilpin, on the importance of accessories.

16              "QUESTION:  Did you offer at Mattel, while you

17         were there, a product that had accessories in the

18         box?

19              "ANSWER:  Generally, yes.

20              "QUESTION:  And would you ever change the

21         accessory from doll to doll?

22              "ANSWER:  I believe so, yeah.

23              "QUESTION:  From season to season?

24              "ANSWER:  From segment to segment, perhaps, or

25         doll to doll, yes."
```

EXHIBIT     1

PAGE        9

1          Mr. Bryant never gave us a clue on what additional

2     lines to develop, what additional characters to develop, what

3     type of packaging we should use, what type of accessories we

4     should use.  And I told you the test here is that we sold

5     more than one doll.  So they must not have looked

6     substantially similar.  That's the consumer perspective.  But

7     the other thing I want to show you is there was one other

8     test that proved our point that it's just not the concept

9     drawings, and that's B 650 and B 651.  These are the Mattel

10    brand tracking reports produced through Mr. Kilpin.  He

11    received.

12         Go to the next page, please.  Now, these are the

13    attributes being studied on the Bratz products.  No problem

14    with that.  I mean, we're flattered by the fact that they are

15    buying every one of our products and bringing it in and

16    looking at it.  And there's even a jury instruction that says

17    there's nothing wrong with that.  If you but take at face

18    value what they are saying and that all of these dolls are

19    substantially similar, would you please tell me why somebody

20    like Mr. Eckert would say why are we spending so much money

21    on focus groups every month tracking Bratz?  They are

22    substantially the same.  Every month, every product.

23         But every month Mattel was running tests to see are

24    the dolls fun to play with?  Dolls you want to show your

25    friends?  Is it the prettiest doll, the most aspiration

EXHIBIT ___1___

PAGE ___10___

1    the $73 million one.

2            Conversely, in 2007, we had two Cloes released at

3    the same time.  Bratz Hot Summer Days, Bratz Magic Hair.

4    Which did better?  3 million, 18 million.  Box is twice the

5    size, but even if you use that, it doesn't account for a

6    sixfold difference.  And how does that one get to 73 million?

7            I don't have the full answer, but I do know this.

8    I know each of these boxes contains or has on it everything

9    that Mattel could possibly claim is their property.  The doll

10   with the design is in there.  The name Bratz is on the box.

11   The bios and information about who the characters are,

12   anything at all that you can think of that Carter Bryant

13   could have brought over with him is reflected in this box and

14   in this box and in each other box.  But yet we get between a

15   hundred thousand and $73 million.  Something else is going on

16   besides Mattel's property that's contributing to sales.

17           If Carter Bryant's drawings or the name Bratz or

18   the concept of edgy dolls, however you want to design

19   Mattel's property here, is really responsible for all of the

20   profits, sales should just be totally flat.

21           Okay.  There may be some variations.  At a minimum

22   maybe we have a line going slightly up.  But this gross sales

23   ought to be within some very narrow range of each other.

24   Here we're talking about something like 7,300-fold difference

25   between a hundred thousand and 73 million.  And what's

EXHIBIT ___1___

PAGE ___11___

1 happening?  Themes make a difference.

2         We have Mr. Kilpin, who you heard testify, who is

3 from Mattel.  I see he's here with us today.  Remember, he

4 told The Wall Street Journal, it used to be I'd walk into a

5 product meeting and say show me the toy.  Now I begin by

6 saying tell me a story.

7         So it isn't we are claiming that MGA invented the

8 idea of themes.  What we're saying is Carter Bryant didn't

9 invent the idea of themes, and it wasn't Carter Bryant who

10 said after the first generation, the initial four, they are

11 just sold as individuals.  It isn't until 2002 that the

12 themes start coming along.  So Carter's idea of four dolls,

13 $81 million.  Nice as far as it went.

14         After themes come along, we have one theme.  73

15 million.  Almost as much in one theme as in the entire first

16 generation.

17         This is when Bratz skyrockets.  And it's because of

18 smart people other than Carter Bryant.

19         Another factor.  Packaging.  Tokyo a Go-Go.  You've

20 seen that before.  And once again, apparently according to

21 Mattel, somebody over at MGA put the hero shot up on the wall

22 in their office and said hm, think hard, and they just

23 started sketching, inspired by Carter Bryant's drawings, and

24 came up with that box and that concept.

25         That isn't the way it happened.  And that

EXHIBIT  l

PAGE  12

1  packaging, although we've heard it downplayed, it isn't just
2  us that think it's important. Remember the last day of the
3  trial. Remember last Friday afternoon, when we were all just
4  counting because we could see 5:30 coming around and knew it
5  was the last day, one of the last things we did, and if you
6  weren't paying all that much attention, you get a free pass
7  that day.

8          There was a video from Kevin Farr, executive
9  vice-president of something at Mattel. He's a honcho. Trust
10 me. And he's asked what are the factors over at Mattel? And
11 this is what Mattel tells you when they are talking real life
12 rather than when they are trying to extract 100 percent of
13 the profits and destroy a competitor in the process.

14         Packaging: "Yeah, it's part of the element of the
15 product. Yeah. It's important."

16         Themes: "It's an important element of the play
17 pattern."

18         Brand: "Is it possible to have a strong brand but
19 a weak product?"

20         "Yes."

21         So this isn't just MGA thinking up these factors.
22 Mr. Farr agrees with us.

23         That isn't the end of it, though, as far as other
24 bright ideas and other things that contribute to the profit
25 of Bratz. We have characters. Remember we start with four

EXHIBIT    1

PAGE    13

1

2

3

4

5

6

7            **C E R T I F I C A T E**

8

9

10            I hereby certify that pursuant to Title 28,

11   Section 753 United States Code, the foregoing is a true and

12   correct transcript of the stenographically reported

13   proceedings in the above matter.

14            Certified on August 20, 2008.

15

16

17   **MARK SCHWEITZER, CSR, RPR, CRR**
     Official Court Reporter
18   License No. 10514

19

20

21

22

23

24

25

**EXHIBIT** _____

**PAGE** _14_

# Exhibit 2

ORIGINAL

LODGED

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 090378)
     (johnquinn@quinnemanuel.com)
3    Michael T. Zeller (Bar No. 196417)
     (michaelzeller@quinnemanuel.com)
4    Jon D. Corey (Bar No. 185066)
     (joncorey@quinnemnauel.com)
5  865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
6  Telephone:   (213) 443-3000
   Facsimile:   (213) 443-3100
7
   Attorneys for Mattel, Inc.
8
   [Additional counsel listed on following page]
9

10                 UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12  CARTER BRYANT, an individual,          )  Case No. CV 04-09049 SGL (RNBx)
                                           )
13                 Plaintiff,              )  Consolidated with
                                           )  Case No. CV 04-09059
14        v.                               )  Case No. CV 05-02727
                                           )
15  MATTEL, INC., a Delaware               )  STIPULATION FOR APPOINTMENT
    corporation,                           )  OF A DISCOVERY MASTER; AND
16                                         )
                   Defendant.              )  [PROPOSED] ORDER
17                                         )
                                           )  Discovery Cutoff Date:  Not Set
18  ─────────────────────────────         )  Trial Date:  Not Set

19

20

21

22

23

24

25

26

27

28

EXHIBIT  2

PAGE  15

1  LITTLER MENDELSON
       Robert F. Millman (Bar No. 062152)
2      Douglas A. Wickham (Bar No. 127268)
       Keith A. Jacoby (Bar No. 150233)
3  2049 Century Park East, 5th Floor
   Los Angeles, California  90067-3107
4  Telephone:  (310) 553-0308
   Facsimile:  (310) 553-5583
5
   Attorneys for Carter Bryant
6
   O'MELVENY & MYERS LLP
7      Diana M. Torres (Bar No. 162284)
   400 S. Hope Street
8  Los Angeles, California  90017
   Telephone:  (213) 430-6000
9  Facsimile:  (213) 430-6407

10 O'MELVENY & MYERS LLP
       Dale Cendali
11 Times Square Tower
   7 Times Square
12 New York, NY 10036

13 CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
       Patricia Glaser (Bar No. 55668)
14 10250 Constellation Boulevard - 19th Floor
   Los Angeles, CA 90067
15 Telephone:  (310) 553-3000
   Facsimile:  (310) 556-2920
16
   Attorneys for MGA Entertainment, Inc.
17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ___2___

PAGE ___16___

- 2 -

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1   WHEREAS, the parties are in agreement that a discovery master should be
2   appointed in this matter to resolve any discovery disputes and to minimize the
3   burden on the Court; and

4   WHEREAS, the parties have agreed upon a nominee, Hon. Edward A. Infante
5   (Ret.), and he has agreed to serve as a discovery master in this matter;

6   NOW, THEREFORE, to facilitate the fair and efficient completion of pre-
7   trial discovery, the parties Mattel, Inc. and Carter Bryant and MGA Entertainment,
8   Inc., by and through their respective counsel of record, hereby stipulate and agree as
9   follows:

10   1.   The Discovery Master shall be appointed to assure and provide cost-
11   effective discovery and to minimize the burden of discovery disputes upon the
12   Court. Any and all discovery motions and other discovery disputes in the above
13   captioned action shall be decided by a master ("Discovery Master") pursuant to
14   Federal Rule of Civil Procedure 53. Any motions currently pending before
15   Magistrate Judge Block shall be transferred to the Discovery Master. The moving
16   party shall provide to the Discovery Master all papers associated with each pending
17   motion.

18   2.   The Discovery Master shall be Hon. Edward A. Infante (Ret.). His
19   business address is: Two Embarcadero Center, Suite 1500, San Francisco, CA
20   94111.

21   3.   Judge Infante shall serve as the Discovery Master until all issues herein
22   have been finally disposed of or determined, or until he shall withdraw in
23   accordance with applicable law. If at any time he becomes unable to serve as the
24   Discovery Master, the parties shall confer to present an alternative agreed-upon
25   designee to the Court. In the event that the parties cannot agree to an alternate
26   designee, then the Court shall appoint a Discovery Master.

27   4.   The Discovery Master shall have the authority to set the date, time, and
28   place for all hearings determined by the Discovery Master to be necessary; to

EXHIBIT 2
PAGE 17

-3-

STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER AND [PROPOSED] ORDER

1 preside over hearings (whether telephonic or in-person); to take evidence in
2 connection with discovery disputes; to issue orders resolving discovery motions
3 submitted to the Discovery Master; to conduct telephonic conferences to resolve
4 discovery disputes arising during depositions; to issue orders awarding non-
5 contempt sanctions, including, without limitation, the award of attorney's fees, as
6 provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and
7 recommendations, as appropriate.

8     5.     All discovery disputes shall be resolved by motion (except those arising
9 during a deposition which the Discovery Master determines can be resolved by
10 telephonic conference during the deposition).  The moving party shall first identify
11 each dispute, state the relief sought, and identify the authority supporting the
12 requested relief in a meet and confer letter that shall be served on all parties by
13 facsimile or electronic mail.  The parties shall have five court days from the date of
14 service of that letter to conduct an in-person conference to attempt to resolve the
15 dispute.  If the dispute has not been resolved within five court days after such
16 service, the moving party may seek relief from the Discovery Master by formal
17 motion or letter brief, at the moving party's option.  The opposing party shall have
18 five court days from the date of service of the motion or letter brief to submit a
19 formal opposition or response.  Any reply brief or letter brief shall be served within
20 three court days from the date of service of a formal opposition or response.  The
21 hearing on the motion shall take place within five court days of the service of any
22 reply brief or letter unless (a) the parties agree to another hearing date or agree that
23 no hearing is necessary; (b) the Discovery Master determines that no hearing is
24 necessary; or (c) the Discovery Master is not available, in which case the hearing
25 shall take place on the Discovery Master's first available date.  The foregoing shall
26 not prohibit (i) the parties from agreeing to alternate procedures, or (ii) a party from
27 seeking the Discovery Master's immediate resolution of a dispute or resolution of a
28 dispute upon shortened time upon a showing of good cause why a party would be

EXHIBIT __2__

PAGE __18__     - 4 -

1 prejudiced absent prompt resolution.  Service of any document by fax or electronic
2 mail prior to 6:00 p.m. shall constitute service on that day.

3       6.     The Discovery Master's orders resolving discovery disputes, reports, or
4 recommendations pursuant to Rule 53(e) or (f) shall be treated as rulings made by a
5 Magistrate Judge of the United States District Court.  The Discovery Master shall
6 file each order, report, or recommendation pursuant to Rule 53(e) or (f) and serve
7 the parties within five court days of his/her decision on a matter.

8       7.     A court reporter shall transcribe any hearing or other proceeding before
9 the Discovery Master.

10       8.     The cost of any proceeding before the Discovery Master, including the
11 fees of the Discovery Master, the fees of court reporters who transcribe hearings or
12 other proceedings before the Discovery Master, and the fees of any other person
13 necessary to the efficient administration of the proceeding before the Discovery
14 Master, shall be paid one-half by Mattel, Inc., and one-half by MGA Entertainment,
15 Inc. and Carter Bryant unless, consistent with the Federal Rules of Civil Procedure,
16 the Discovery Master Orders otherwise.  By agreeing to share costs among the
17 parties, no party waives its right to seek recovery or reimbursement for such costs
18 from any other party.

19       9.     The Discovery Master shall be compensated according to his regular
20 hourly rate of $750.

21       10.    Pursuant to Federal Rule of Civil Procedure 53(b)(2), the Discovery
22 Master shall proceed with all reasonable diligence.

23       11.    Based on an affidavit filed by Hon. Edward A. Infante pursuant to
24 28 U.S.C. § 455 and Federal Rule of Civil Procedure 53(b)(3), the parties are not
25 aware that he has a relationship to the parties, to counsel, to the action, or to the
26 Court that would require disqualification of a judge under 28 U.S.C. § 455, and
27 based thereon the parties expressly waive any ground for disqualification disclosed
28 therein of Hon. Edward A. Infante to serve as master in these proceedings.

EXHIBIT __2__

PAGE __19__

- 5 -

12.   The Discovery Master shall not have ex parte communications with ~~the~~ ~~Court~~, a party or counsel.

13.   The Discovery Master shall preserve and maintain all documents and materials submitted by the parties as well as all orders, reports, and recommendations issued by the Discovery Master. These documents, materials, orders, reports and recommendations shall be the record of the Discovery Master's activities, and shall be maintained in chronological order until the Discovery Master is informed by the parties that all issues herein have been finally disposed of and determined.

14.   The Discovery Master is hereby authorized to receive and consider information and documents designated "CONFIDENTIAL" and "CONFIDENTIAL-ATTORNEYS EYES ONLY" pursuant to the January 4, 2005 Stipulated Protective Order. The Discovery Master agrees to be bound by the January 4, 2005 Order.

15.   All third parties subject to discovery requests or deposition in this litigation shall be bound by the terms of this Stipulation and Order.

Dated: November 2?, 2006

O'MELVENY & MYERS LLP

By: _____
Diana Torres
Attorneys for MGA Entertainment, Inc.

Dated: November 29, 2006

LITTLER MENDELSON

By: _____
Douglas A. Wickham
Attorneys for Carter Bryant

- 6 -

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

EXHIBIT 2

PAGE 20

1  Dated: ~~November~~ December 4, ~~___~~, 2006

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP

By: _Jon D. Corey_
Jon D. Corey
Attorneys for Mattel, Inc.

## ORDER

The foregoing Stipulation for Appointment of a Discovery Master is SO ORDERED _as modified._

Dated: __12-6-06.__

_S. G. Larson_
Hon. Stephen G. Larson
United States District Court Judge

## CONSENT OF DISCOVERY MASTER

If appointed by the Court, I, the undersigned, consent to serve as Discovery Master in the above referenced proceeding consistent with this Order.

Dated: __12-5-06__

_Edward A. Infante_
Hon. Edward A. Infante (Ret.)

- 7 -

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

EXHIBIT __2__

PAGE __21__

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

1  **STATE OF CALIFORNIA )**
2  **COUNTY OF LOS ANGELES )**

3      I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.
4

5      On December 5, 2006, I served the foregoing document described as **STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND [PROPOSED ORDER** on all interested parties in this action.
6

7  **Keith A. Jacoby, Esq.**                    **Diana M. Torres, Esq.**
   **Douglas Wickham, Esq.**                   **O'Melveney & Meyers**
   **Littler Mendelson**                        400 S. Hope Street
8  **A Professional Corporation**               Los Angeles, CA 90071
   2049 Century Park East, 5th Floor           Phone: 213-430-6000
9  Los Angeles, California 90067-3107          Fax: 213-430-6407
   Phone: 310-553-0308
10 **Fax: 310-553-5583**

11

12 [ ]     By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:
13

14 **[X]    BY MAIL**

15 [ ]     I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

16 [ ]     As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal
17         service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is
18         presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

19 [ ]     **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s)
20         set forth above on this date.

21 [ ]     **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

22 Executed on December 5, 2006, at Los Angeles, California.

23 [ ]     (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

24 [X]     (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.
25

26  Cheri Hatch
27  Print Name                                   Signature
28

EXHIBIT _____2_____

PAGE ___22___

**Exhibit 3**

CONFORMED COPY
LODGED                    FILED

2007 MAY 16  PM 1: 59    2007 MAY 16  PM 2: 00

CLERK U.S. DISTRICT COURT CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.  CENTRAL DIST. OF CALIF.
RIVERSIDE                RIVERSIDE
BY_____    BY_____

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:   (415) 774-2611
4  Facsimile:   (415) 982-5287

5

6

7                  UNITED STATES DISTRICT COURT

8                CENTRAL DISTRICT OF CALIFORNIA

                        EASTERN DIVISION
9

10

11  CARTER BRYANT, an individual,        CASE NO. C 04-09049 SGL (RNBx)
                                         JAMS Reference No. 1100049530
12          Plaintiff,

13       v.                              Consolidated with
                                         Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15          Defendant.                   **ORDER GRANTING MATTEL'S**
                                         **MOTION TO COMPEL PRODUCTION**
16                                       **OF DOCUMENTS AND**
                                         **INTERROGATORY RESPONSES BY**
17  CONSOLIDATED WITH                    **MGA**
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20
                            I.  INTRODUCTION
21

22       On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

23  of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

24  20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

25  reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

26  submission pending the parties' submission of a proposed protective order, which was received

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                              1

EXHIBIT  3

PAGE  23

1 on April 23, 2007. Having considered the motion papers and comments of counsel at the hearing,

2 Mattel's motion to compel is granted.

3 ## II. BACKGROUND

4     A. Requests for Documents

5       In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6 became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7 categories of documents, to be produced in ten days. MGA filed a motion to quash, which the

8 court granted because of the short amount of time provided for compliance with the subpoena.

9 The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10 some of Mattel's requests. In particular, the parties agreed to limit production to the "first

11 generation" Bratz dolls. On August 12, 2004, MGA produced documents.

12       In 2005, the parties stipulated to supplementing their document productions on May 16,

13 2005. Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14       In September of 2006, MGA made a supplemental production of documents. On February

15 5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16 with legibility problems. On February 20, 2007, MGA produced an additional 224 pages of

17 documents to replace earlier produced documents with legibility problems.

18       Mattel now moves to compel MGA to produce documents responsive to its requests. As a

19 preliminary matter, Mattel contends that MGA's production is deficient because it contains

20 redactions and cut-off text. Further, Mattel contends that MGA's production is incomplete with

21 respect to essentially five categories of documents. First, Mattel contends that MGA is

22 withholding documents relating to the origins of Bratz and Bryant's work for MGA. Mattel

23 believes that MGA's production is incomplete based upon its review of documents that have been

24 produced by third party Steven Linker. According to Mattel, Linker's documents from October

25 of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26 previously represented. Mattel also contends that MGA's responses to the document requests

27

28

1   contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2   responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3   show when certain dates relating to Bratz occurred.  Mattel contends that these "carve outs

4   purport to allow MGA to cherry-pick what it will and will not produce to Mattel." Mattel's

5   Separate Statement at 17:11-13. Mattel also contends that the carve-outs fail to provide notice of

6   what is or is not being withheld.  Mattel also contends that MGA's objections based upon its

7   confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8   protective order in place. In addition, Mattel contends that MGA's objection to producing

9   documents relating to activities or conduct in foreign countries is wholly improper because those

10  documents may contain information relevant to Mattel's claims.

11         Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12  such documents relate to the "first generation" Bratz dolls. Mattel argues that whether the work

13  ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14  discovery purposes.  Mattel contends that the works created by Bryant during his Mattel

15  employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16  a Bratz doll released at a particular time.[1]

17         Mattel next contends that MGA is improperly withholding documents about designs

18  Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19  be derivative of work he did when employed by Mattel.  Mattel contends that it is entitled to

20  explore whether such works and the profits from Bratz dolls other than the "first generation"

21  Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22  and damages.  Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23  improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24  information as well as MGA's unfair competition claims.

25  _____

26         [1] Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
    to compel Bryant to produce documents.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                            3

EXHIBIT 3

PAGE 25

1    Mattel also asserts that MGA is improperly withholding documents relating to products,

2    services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3    Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4    Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5    Inventions Agreement.

6    Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7    payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8    because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9    (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10   damages; and (3) payments may show when and what trade secret information Bryant and other

11   defendants allegedly misappropriated from Mattel.

12   Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13   contends that all agreements between Bryant and MGA are relevant, not just the original

14   September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15   documents relating to MGA and Bryant's alleged joint defense agreement because such

16   information would be relevant to demonstrate bias and lack of credibility.

17   Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18   statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19   information may reveal relevant information about the date of creation of Bryant's Bratz

20   drawings.

21   In response, MGA denies withholding responsive documents and asserts that it has

22   produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23   that it has produced all responsive and relevant documents that it was able to locate in response to

24   request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25   before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26   motion. In particular, MGA represents that it is diligently working to produce documents related

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT ___3___

PAGE ___26___

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4   have been released on the market.  In addition, MGA represents that it has agreed to produce

5   documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6   specifically, MGA represents that it agreed to review and produce documents provided to it by

7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8   Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9   Therefore, MGA views the motion as unnecessary.

10         MGA next contends that Mattel's motion should be denied for the following additional

11   reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12   unreleased products.  MGA asserts that its product design documents for its unreleased toy

13   concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14   designs and drawings for products currently under development, over six years after Bryant first

15   created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16   documents relating to unreleased products are ordered produced, MGA requests a protective order

17   under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18   than the current protective order provides.  In the alternative, MGA requests that any order

19   compelling production of documents relating to unreleased products should essentially be stayed

20   until after MGA's products are publicly released.

21         Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22   attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23   information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT ___3___

PAGE___27___

1    in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2    Opposition at 24:9-12.[2]

3        Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4    and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5    refused to produce similar types of documents. More significantly, MGA contends that Mattel's

6    requests for non-public witness statements are "a blatant attempt to avoid the discovery

7    limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8    imposed by this Court." MGA's Opposition at 25:6-7. MGA explains its position as follows.

9    MGA is involved in litigation against a number of counterfeiters and infringers in Asia. In 2003,

10    Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11    attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12    abandoned its claims based upon "Toon Teens" in this court. Thereafter, those defendants took

13    the position that MGA did not own, and therefore could not enforce, the rights to Bratz. MGA

14    was thus forced to litigate the issue of ownership. MGA contends that "[i]n effect, by prompting

15    foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16    a situation in which MGA has been forced to give testimony and provide evidence related to

17    issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18        Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19    dispute between MGA's chief executive officer and his brother because such documents are in no

20    way relevant to this lawsuit. MGA explains that the brothers were involved in an arbitration

21    proceeding relating to MGA's CEO's purchase of his brother's interest in MGA. Moreover,

22    MGA contends that the brothers were bound by a protective order prohibiting the use of any

23    documents or testimony for any purpose other than the arbitration.

24

25

26       [2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT ___3___

PAGE ___28___

1        Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2 files because they contain confidential information and are not relevant to the lawsuit. Sixth,

3 MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4 in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly,

5 MGA objects to producing documents relating to any testing performed to determine the date that

6 Bratz documents were created. MGA contends that such discovery is premature and should not

7 proceed until experts are designated.

8        B. Interrogatories

9        On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005,

10 however, the district court stayed the action. On May 17, 2006, the district court lifted the stay.

11 On May 30, 2006, MGA responded to the interrogatories.

12        Mattel contends that MGA's responses to the interrogatories were untimely. Further,

13 Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14 because they lack substantive information and consist almost entirely of objections. MGA

15 responds that the motion is moot because it is prepared to provide supplemental responses to its

16 interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's

17 motion to compel responses to interrogatories.

18                                III. DISCUSSION

19        A. Rule 26 of the Federal Rules of Civil Procedure

20        Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21 discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22 party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

23 discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24 Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25 unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26 convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 3

PAGE 29

1    opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2    expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3    the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4    the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5    26(b)(2).

6        B.  Document Requests

7            1.  Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8                34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9        The requests above seek discoverable information regarding the origins of Bratz and

10   Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11   response to request nos. 6, 26, 27, 32, 33, 34, 35, 55, and 69 (MGA's Opposition at 13:4-5), and is

12   "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13   and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14   14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15   products and documents from MGA Hong Kong.

16       As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17   its production to "relevant and responsive non-objectionable documents" or documents

18   "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19   might be excluding documents that are responsive to the request based upon its unilateral

20   determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21   document requests ordered herein without these restrictions.

22                              Design Documents for Unreleased Products

23       MGA's design documents for unreleased products are relevant to Mattel's claims and

24   defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25   parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26   design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                            8

EXHIBIT __3__

PAGE __30__

1   to Modify Protective Order; And Proposed Order Thereon ("stipulation").  The parties' stipulation

2   has been approved and entered as an order of the court.  MGA is ordered to produce design

3   documents for unreleased products that are responsive to Mattel's document requests in

4   accordance with the terms of the stipulation and order.

5                              Documents from MGA Hong Kong

6           Documents relating to activities or conduct in foreign countries are relevant and

7   discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8   Bratz.  Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9   provides reciprocal discovery from its subsidiaries.

10          Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein.  MGA is ordered to produce

12  documents from MGA Hong Kong.

13          Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15          2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16             61, 63, 66, 67, 70, 88, 90, 91

17          Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls.  MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21          As stated previously, design documents for yet unreleased products are relevant and

22  discoverable.  See Order Modifying Protective Order.  Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25          //

26          //

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                              9

EXHIBIT ___3___

PAGE ___31___

1           3. <u>MGA's Payments to Bryant (Nos.43, 45)</u>

2        MGA represents that it has already agreed to produce documents related to Bratz, without

3 limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless,

4 Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's

5 motion is granted with respect to request nos. 43 and 45.

6           4. <u>MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)</u>

7        MGA represents that it has already agreed to produce non-privileged documents

8 responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not

9 relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or

10 indemnity agreements between MGA and Bryant .

11        Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility.

12 Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any

13 responsive documents withheld on the basis of a privilege must be properly identified in a

14 privilege log.

15           5. <u>Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40,</u>

16            <u>41,</u>

17        In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits,

18 and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel

19 anticipates that these documents could provide evidence relating to the conception date for Bratz.

20        Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception

21 date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against

22 alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the

23 arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother

24 Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

25

26        [3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                  10

EXHIBIT 3

PAGE 32

1  that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2  documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3  protective order that prohibits the use of any documents or testimony for any purpose other than

4  the arbitration.  MGA, however, has not provided any evidence of the protective order.

5  Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6          6. Documents Regarding Date-Testing (Request No. 92)

7          Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8  from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9  testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto."  MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12          The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports.  The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15          C. Interrogatories

16          Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served.  The district court lifted the stay on May 17, 2006.

22

23

24

25          [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's

26  personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                      11

EXHIBIT _3_

PAGE _33_

1    Neither party has cited to any caselaw governing the calculation of the 30-day period

2    when there is an intervening stay in discovery.  In the absence of any caselaw, MGA's responses

3    will be treated as timely in order to preserve any valid objections MGA may have asserted.

4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5    conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6    tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7    before December 31, 2001, including a description of each person's role and the start and end

8    dates of each person's involvement.  In response, MGA asserted numerous objections, but did

9    provide the names of five individuals.

10   The interrogatory clearly seeks information relevant to the claims at issue.  MGA's

11   objections are without merit.  The interrogatory is not vague, ambiguous, compound or overbroad.

12   Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13   for confidential, proprietary or commercially sensitive information, or seeks information

14   protected by the attorney-client privilege.  Furthermore, MGA's response is incomplete insofar as

15   it fails to provide the description of each person's role and the start and end dates of each person's

16   involvement.  Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17   5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18   Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19   embodiment of Angel.  MGA is ordered to provide a complete response to Interrogatory No. 6 for

20   the reasons previously discussed in connection with Interrogatory No. 5.

21   Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22   December 31, 2001.  In response, MGA asserted numerous objections and did not provide any

23   substantive information.

24   MGA's objections are without merit.  The interrogatory clearly seeks information relevant

25   to establishing when Bryant first conceived Bratz.  The interrogatory is not vague, ambiguous,

26   compound or overbroad.  Nor has MGA carried its burden of establishing that the interrogatory is

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT 3

PAGE 34

1  unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2  seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3  provide a complete response to Interrogatory No. 7.

4       Interrogatory No.8 asks MGA to identify each and every embodiment of Angel.  MGA is

5  ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6  discussed in connection with Interrogatory No. 7.

7       Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8  or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9  or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10  substantive information.

11       The interrogatory seeks information relevant to establishing when Bryant first conceived

12  Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13  ordered to provide a complete response to Interrogatory No. 9.

14       Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15  was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16  which each such instance occurred, the location of each show or exhibit, and the identity of

17  persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18  objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19  about January 2001 and New York Toy Fair, New York, in or about February 2001.

20       Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21  potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22  incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23  to provide a complete response to Interrogatory No. 10.

24       Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25  including without limitation each office, home and cell phone number, in the name of, for the

26  benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                13

EXHIBIT 3
PAGE 35

1   January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2   limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3   boiler-plate objections.

4       Once again, MGA has failed to substantiate any of its objections with supporting

5   declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6   provide a full response to Interrogatory No. 11.

7                                   IV. CONCLUSION

8       For the reasons set forth above, Mattel's motion to compel production of documents is

9   granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10  identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11  for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12  motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13  provide responses to interrogatories consistent with this Order, and produce a privilege log in

14  compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15  sanctions is denied.

16      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17  Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21  Dated: May /5, 2007

22                                          HON. EDWARD A. INFANTE (Ret.)
                                            Discovery Master
23

24

25

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                         14

EXHIBIT _3_

PAGE _36_

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15,

2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL

PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in

the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT ___3___

PAGE ___37___

# Exhibit 4

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:     (415) 774-2611
4   Facsimile:     (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                         EASTERN DIVISION

10

11   CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
12              Plaintiff,

13        v.                                Consolidated with
                                            Case No. CV 04-09059
14   MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15              Defendant.                  **ORDER GRANTING JOINT MOTION
                                            FOR PROTECTIVE ORDER
16                                          REGARDING MATTEL'S
                                            INTERROGATORIES; DENYING
17                                          MATTEL'S MOTION TO COMPEL
                                            INTERROGATORY RESPONSES**
18
     CONSOLIDATED WITH
19   MATTEL, INC. v. BRYANT and
     MGA ENTERTAINMENT, INC. v. MATTEL,
20   INC.

21

22

23                         I. INTRODUCTION

24        Presently pending are two separate motions pertaining to Mattel's Third Set of

25   Interrogatories: (1) MGA Entertainment, Inc., MGA Entertainment (HK) LTD., Isaac Larian, and

26   Carter Bryant's (collectively "Defendants") Joint Motion For Protective Order Regarding Mattel,

27

28   Bryant v. Mattel, Inc.,                                                          1
     CV-04-09049 SGL (RNBx)

                        9-05-07    EXHIBIT    4

                                   PAGE    38

1    Inc.'s ("Mattel") Interrogatories[1]; and (2) Mattel's motion to compel Defendants to answer the

2    Third Set of Interrogatories.[2] Having considered the motion papers and the comments of counsel

3    at the hearing, the joint motion for a protective order is granted, and Mattel's motion to compel

4    interrogatory responses is denied.  MGA's request for sanctions in connection with Mattel's

5    motion to compel interrogatory responses is also denied.[3]

6                                         II. BACKGROUND

7            In December of 2004, Mattel served Carter Bryant ("Bryant") and MGA Entertainment,

8    Inc. ("MGA") with its First Set of Interrogatories, which consisted of a total of six interrogatories.

9    In April of 2005, Mattel served Bryant and MGA with its Second Set of Interrogatories, asking

10   Bryant four questions and MGA seven questions.  Of these, three interrogatories to Bryant were

11   identical to three interrogatories to MGA.  In December of 2006, Mattel served MGA with its

12   First Set of Interrogatories Re Claims of Unfair Competition, which consisted of ten additional

13   interrogatories.

14           During a scheduling conference held on February 12, 2007, the district court imposed a

15   limit on interrogatories of "50 for each side for both cases."  February 27, 2007 Minute Order,

16   Proctor Dec., Ex. 6; Tr. of scheduling conference, Proctor Dec., Ex. 7.  When MGA asked

17   whether all Defendants would count as one "side" under the court's order, the court confirmed

18   that was its intent: "there's one party, essentially, on the other side, and [defendants] have two

19   parties." Tr. of scheduling conference, Proctor Dec., Ex. 7.  After MGA clarified that there were

20   actually six Defendants, the court asked Bryant's counsel if Bryant would need to serve fifty

21

22

23   ─────────────────────

24       [1]  Defendants submitted their joint motion on July 10, 2007.  Mattel submitted its opposition on July 17,
     2007.  Defendants submitted their reply brief on July 20, 2007.

25       [2]  Mattel submitted its motion to compel on July 18, 2007.  Defendants submitted an opposition on August
     1, 2007.  Mattel submitted its reply brief on August 6, 2007.

26
         [3]  The Discovery Master determined that a hearing was not necessary.
27

28   Bryant v. Mattel, Inc.,                                                                                      2
     CV-04-09049 SGL (RNBx)

EXHIBIT  4
PAGE  39

1 | interrogatories on Mattel in addition to MGA's interrogatories. Bryant stated that he probably

2 | would not. The court responded as follows:

3 | > Let's try to work within the confines of the 50 interrogatories, and if you
4 | > need more, again, the court is going to be forthcoming, if there's a need for it.
5 | > And it's the type of order that if you can stipulate amongst yourselves, you're not
   | > going to need an order from the court.

6 | > But if you're not agreeing amongst yourselves, then you're going to have
7 | > to come back to the court before you bust those limits. Unlike every other order
   | > the court issues, where once the court issues an order and you need an order from
8 | > the court to alter that, this is one that I will give you authority amongst yourselves
   | > to stipulate to a greater number. But [let's] be reasonable. I can't imagine you
9 | > can't work this out. I just don't want to have open-ended numbers of
   | > interrogatories and experts.

10 | Id. at 24:5-18. The court also directed the parties to return to court if they were unable to reach

11 | an agreement. Id. at 24:23.

12 | On June 7, 2007, Mattel served its Third Set of Interrogatories on the "other side" –

13 | MGA, MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Isaac Larian ("Larian") and Bryant

14 | – asking each of these four defendants the same nineteen questions. On July 9, 2007, MGA,

15 | MGA Hong Kong, Larian and Bryant each separately served objections to the Third Set of

16 | Interrogatories and no responses. The parties met and conferred on July 10, 2007. Defendants

17 | refused to answer any of the interrogatories, claiming that Mattel had exceeded the fifty

18 | interrogatory limit and that the interrogatories were otherwise objectionable on several grounds.

19 | Defendants contended that Mattel exceeded the 50 interrogatories limit by serving interrogatories

20 | that are compound and by serving interrogatories on multiple responding parties on the "same

21 | side." By Defendants' calculations, when each discrete subpart of each of Mattel's

22 | interrogatories served on each of the responding parties are counted separately, Mattel has

23 | served, at a minimum, 227 separate interrogatories. In contrast, Mattel contended that its

24 | interrogatories are not compound, and that each identical interrogatory it serves should be

25 | counted as one, regardless of how many parties it serves on the "other side." By Mattel's

26 | calculations, it has propounded a total of forty-three non-identical interrogatories. The parties

27 |

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 4

PAGE 40

1    also discussed potentially stipulating to a greater number of interrogatories but apparently did not

2    reach an agreement.

3      Defendants move for a protective order preventing Mattel from serving additional

4    interrogatories and requiring Mattel to serve a revised Third Set of Interrogatories or else identify

5    which interrogatories (or subparts) it wishes to be answered, consistent with the limits imposed

6    by the district court. Mattel opposes the motion, contending that it has not exceeded the 50

7    interrogatory limit set by the district court. In a separate motion, Mattel moves to compel

8    Defendants to provide responses to its Third Set of Interrogatories.

9    <center>III. STANDARDS</center>

10      Under Federal Rules of Civil Procedure 26(c), a court may "make any order which justice

11    requires to protect a party or person from annoyance, embarrassment, oppression, or undue

12    burden or expense," including "that the disclosure or discovery not be had."

13    <center>IV. DISCUSSION</center>

14      Defendants' motion for a protective order raises essentially three issues: (1) whether an

15    identical interrogatory served on several Defendants should be counted as only one interrogatory

16    or counted separately for each Defendant served with the identical interrogatory; (2) whether an

17    interrogatory that requires a Defendant to "state all facts," "identify all persons with knowledge of

18    such facts," and "identify all documents" should be counted as a single interrogatory or three

19    separate interrogatories; and (3) whether an interrogatory that covers multiple claims, legal

20    theories or other subjects should be counted as a single interrogatory or multiple interrogatories.

21    A. The Fifty "Per Side" Limit

22      The district court limited interrogatories to fifty "per side." Although the district court's

23    order does not speak directly to this issue, the most reasonable approach is to count one identical

24    interrogatory served on all six of the Defendants as one interrogatory. Under this approach,

25    Mattel may serve a total of 50 non-identical interrogatories to the "other side," and Defendants

26    collectively may serve a total of 50 non-identical interrogatories on Mattel.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 4
PAGE 41

1    Defendants' alternative approach is not realistic because it would leave Mattel with far

2  fewer interrogatories than the 50 permitted by the district court.  Indeed, Defendants' approach

3  would not even provide Mattel with the presumptive limit of 25 interrogatories permitted under

4  Rule 33(a), Fed.R.Civ.P.  Under Defendants' approach, Mattel would be limited to approximately

5  eight interrogatories for each of the six Defendants, but Defendants would be allowed to serve 50

6  interrogatories on Mattel.  Such an imbalance would be fundamentally unfair.

7    Therefore, for purposes of applying the 50 interrogatory limit, one identical interrogatory

8  served on all six of the Defendants is counted as one interrogatory.

9  B. Interrogatories Requiring Responding Party to:  (1) state all facts; (2) identify all persons with

10  knowledge; and (3) identify all documents

11    Pursuant to Rule 33(a), Fed.R.Civ.P., "discrete subparts" of an interrogatory are to be

12  counted as separate interrogatories for purposes of the statutorily imposed limit on the number of

13  interrogatories a party may serve upon any other party.  Although Rule 33(a) does not define the

14  term "discrete subparts," The Advisory Committee addresses this issue and provides the

15  following guidance as to when subparts should and should not count as separate interrogatories:

16      Each party is allowed to serve 25 interrogatories upon any other party, but must
        secure leave of court (or stipulation from the opposing party) to serve a larger
17      number. Parties cannot evade this presumptive limitation through the device of
        joining as 'subparts' questions that seek information about discrete separate
18      subjects. However, a question asking about communications of a particular type
        should be treated as a single interrogatory even though it requests that the time,
19      place, persons present, and contents be stated separately for each such
        communication.
20

21  Advisory Committee Notes for the 1993 Amendments to Rule 33.  A leading treatise has

22  explained that "it would appear that an interrogatory containing subparts directed at eliciting

23  details concerning the common theme should be considered a single question, although the

24  breadth of an area inquired about may be disputable."  8A Charles A. Wright, Arthur R. Miller &

25  Richard L. Marcus, Federal Practice and Procedure § 2168.1, at 261 (2d ed. 1994).  "Although

26  there is no bright-line test as to whether a subpart should be counted as an interrogatory, the

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                                    5

EXHIBIT ____4____

PAGE ____42____

1    weight of authority interpreting Rule 33(a) requires examining whether the subparts are

2    'logically or factually subsumed within and necessarily related to the primary question.'"

3    Chapman v. California Dept. of Education, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) citing

4    Safeco of America v. Rawstron, 181 F.R.D. 441, 445 (C.D. Cal. 1998), quoting Ginn v. Gemini

5    Inc., 137 F.R.D. 320, 322 (D. Nev. 1991).

6       Cases applying Rule 33(a), Fed.R.Civ.P., however, have not been consistent in addressing

7    whether an interrogatory constitutes one or more interrogatories if it asks the responding party to

8    (1) state all facts, (2) identify all persons with knowledge of such facts, and/or (3) identify all

9    documents referring or relating to such facts. On the one hand, for example, in United States ex

10    rel. Pogue v. Diabetes Treatment Ctrs. of America, Inc., 235 F.R.D. 521, 524 (D.C. Cir. 2006),

11    the court explained that an "interrogatory may properly seek identification of documents and facts

12    supporting a contention, but it may not do so in a single interrogatory." See also Nobles v. Jacobs

13    IMC, 2003 WL 23198817 (D. Virgin Islands 2003) (finding that an interrogatory that asks the

14    responding party to state all facts regarding a particular issue and to identify all persons having

15    knowledge of such information is two separate interrogatories); Chapman v. California Dept. of

16    Education, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) (treating an interrogatory seeking

17    disclosure of facts (including the identity of persons with knowledge) and documents as two

18    separate interrogatories); Kendall v. GES Exposition Services, Inc., 174 F.R.D. 684, 685-86 (D.

19    Nevada 1997) (determining that a subpart asking for documents in addition to facts should be

20    treated as two subparts). On the other hand, for example, in Krawczyc v. City of Dallas, 2004

21    WL 614842 at *3 (N.D. Tex. 2004), the court held that an interrogatory asking a party to state

22    facts supporting a contention and to identify persons with knowledge of those facts counts as one

23    interrogatory because "[w]itnesses and their statements are facts," and hence the subpart is

24    "factually subsumed within and necessarily related to the primary question."

25       In the instant case, most of Mattel's interrogatories follow the same format, asking the

26    responding party to state all facts supporting a contention or contentions, to identity persons with

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT 4

PAGE 43

1    knowledge, and to identify all documents that refer or relate to such acts.  Notwithstanding

2    caselaw to the contrary, these subparts are not discrete.  Rather, the subparts are related and

3    directed to the underlying details of a specifically identified contention (or contentions) in a

4    manner similar to the example given in the Advisory Committee Notes: "a question asking about

5    communications of a particular type should be treated as a single interrogatory even though it

6    requests that the time, place, persons present, and contents be stated separately for each such

7    communication."  Therefore, subparts seeking facts supporting a contention, the identity of

8    persons with knowledge, and documents are not counted separately for purposes of applying the

9    50 interrogatory limit.

10   C. Interrogatories Addressing Several Discrete Issues

11         Notwithstanding the discussion above in Section "B," many of Mattel's interrogatories are

12   compound because they address discrete issues.  For example, Mattel has propounded the

13   following interrogatory:

14              State all facts that support YOUR contention, if YOU so contend, that one
            or more of MATTEL's claims against YOU in THIS ACTION is barred, in whole
15          or in part, by the doctrines of unclean hands, estoppel, waiver, or consent, and
            IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
16          that REFER OR RELATE TO such facts.[4]

17   This interrogatory is directed to four separate and discrete defense theories:  unclean hands,

18   estoppel, waiver and consent.  Therefore, the interrogatory is compound and each of the four

19   discrete subparts should be counted as a separate interrogatory.  See Safeco of America, 181

20   F.R.D. at 446 ("Where the underlying requests for admissions [that are the subject of an

21   interrogatory] concern different, separate, or discrete matters, however, the interrogatory should

22   be viewed as containing a subpart for each request."); see also Sec. Ins Co. v. Trustmark Ins. Co.,

23   2003 WL 22326563 (D. Conn. 2003) (finding that a single interrogatory seeking information

24

25

26         ⁴  Mattel's Third Set of Interrogatories (No. 18), Glad Dec., Ex. 9.

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                        7

EXHIBIT ___4___

PAGE ___44___

1   about all elements of a given claim was compound and explaining that each element of a claim is

2   discrete and constitutes a separate interrogatory).

3        Mattel's next interrogatory is even more expansive, covering multiple legal theories and

4   factual matters:

5          State all facts that support YOUR contention, if YOU so contend, that
         YOU did not intentionally interfere with the INVENTIONS AGREEMENT or
6          any other agreement or contract between MATTEL and BRYANT, or aid or abet
         any breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL,
7          when BRYANT purported to TRANSFER and MGA purported to ACQUIRE
         rights to BRATZ or when BRATZ performed work or services with or for MGA
8          while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with
         knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO
9          such facts.[5]

10   This interrogatory includes three different legal contentions: (1) intentional interference with the

11   Inventions Agreement; (2) intentional interference with any other agreement or contract between

12   Mattel and Bryant; and (3) aiding or abetting any breach of fiduciary duty or duty of loyalty

13   owed by Bryant to Mattel.[6]  In addition, this interrogatory asks the responding party to apply two

14   different sets of factual allegations to the three different legal contentions.  Therefore, the

15   interrogatory consists of six discrete subparts, each of which counts as a separate interrogatory.

16        The following additional interrogatories contain similar types of discrete and separate

17   subparts:  Mattel's First Set of Interrogatories (Unfair Competition), No. 5 (two discrete

18   subparts); No. 10 (two discrete subparts); Mattel's Third Set of Interrogatories, No. 17 (two

19   discrete subparts), No. 22 (two discrete subparts), No. 23 (4 discrete subparts), No. 25 (two

20   discrete subparts), and No. 27 (2 discrete subparts).  When all of these discrete subparts are taken

21   into consideration, it is evident that Mattel exceeded the 50 interrogatory limit when it

22

23

24      [5]  Id. (No. 21).

25

26      [6] The portion of the interrogatory seeking contentions about a potential breach of a fiduciary duty or the duty
  of loyalty could potentially be interpreted as two separate interrogatories, but because these theories are similar and
27   presumably would be based on interrelated facts, this portion of the interrogatory will count as one interrogatory.

28

EXHIBIT 4

PAGE 45

1   propounded its Third Set of Interrogatories.  Therefore, Defendants are entitled to a protective

2   order.

3                                       V. CONCLUSION

4            For the reasons set forth above, Defendants' motion for a protective order is granted, and

5   Mattel's motion to compel responses to the Third Set of Interrogatories is denied.  Mattel may

6   serve a Revised Third Set of Interrogatories that shall not exceed the 50 interrogatory limit

7   imposed by the district court.  MGA's request for sanctions in connection with Mattel's motion to

8   compel interrogatory responses is denied.

9            Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

10  Master, MGA shall file this Order with the Clerk of Court forthwith.

11

12

13  Dated: September 5, 2007

14                                              HON. EDWARD A. INFANTE (Ret.)
15                                                   Discovery Master

16

17

18

19

20

21

22

23

24

25

26

27

28
    Bryant v. Mattel, Inc.,                                                                    9
    CV-04-09049 SGL (RNBx)

EXHIBIT ___4___

PAGE ___46___

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 5,
2007, I served the attached ORDER GRANTING JOINT MOTION FOR PROTECTIVE
ORDER REGARDING MATTEL'S INTERROGATORIES; DENYING MATTEL'S
MOTION TO COMPEL INTERROGATORY RESPONSES in the within action by e-mail
addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on September 5, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 4
PAGE 47

# Exhibit 5

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO THE PROTECTIVE ORDER

# Exhibit 6

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO THE PROTECTIVE ORDER

# Exhibit 7

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO THE PROTECTIVE ORDER

# Exhibit 8

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO THE PROTECTIVE ORDER

# Exhibit 9

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO THE PROTECTIVE ORDER