# Exhibit 10

1   Robert C. O'Brien
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
3   Telephone:  213.629.7400
    Facsimile:   213.629.7401
4
    Discovery Master
5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

12   CARTER BRYANT, an individual,,        Case No.  CV 04-09049 SGL (RNBx)

13              Plaintiff,
                                           **Consolidated with**
14          v.                             **Case No. CV 04-09059**
                                           **Case No. CV 05-2727**
15   MATTEL, INC., a Delaware
     corporation,                          **PHASE II DISCOVERY MATTER**
16
                Defendant.                 **ORDER NO. 1, REGARDING:**
17
                                           **(1) PROCEDURE GOVERNING**
18                                             **DISCOVERY MOTIONS;**
                                           **(2) PENDING DISCOVERY**
19                                             **MATTERS;**
                                               **and**
20                                         **(3) FURTHER/FUTURE**
                                               **DISCOVERY MOTIONS**
21

22   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
23   MGZ ENTERTAINMENT, INC. v.
     MATTEL, INC.
24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES        LA/136065.1

1

EXHIBIT 10

PAGE 120

2-12

## I.   PROCEDURE GOVERNING DISCOVERY MOTIONS

### A.   Meet and Confer Requirements

The parties are reminded of their obligation to comply with the briefing schedule that they agreed to as set forth in the Stipulation For Appointment Of A Discovery Master and Order dated December 6, 2006 (the "Order"). Specifically, before filing any discovery motion, "[t]he moving party shall first identify each dispute, state the relief sought and identify the authority supporting the requested relief in a meet and confer letter that shall be served on all parties by facsimile or electronic mail. The parties shall have five court days from the date of service of that letter to conduct an in-person conference to attempt to resolve the dispute. If the dispute has not been resolved within five court days after such service, the moving party may seek relief from the Discovery Master by formal motion or letter brief, at the moving party's option." *Id.*

### B.   Briefing Schedule

As provided by the Order, once any such motion or letter brief is filed, "[t]he opposing party shall have five court days from the date of service of the motion or letter brief to submit a formal opposition or response. Any reply brief shall be served within three court days from the date of service of a formal opposition or response." *Id.*

### C.   Filing Requirements

All papers submitted, from this date forward, in connection with a discovery motion, opposition or response, or reply brief shall be served on the Discovery Master at Arent Fox LLP, 555 West Fifth Street, 48th Floor Los Angles, California 90013 no later than one business day after they are filed with the Court. The courtesy copies to be provided to the Discovery Master shall include the Court's electronic file-stamp located at the top of each document.

EXHIBIT  10

PAGE  121

### D.   Hearings on Discovery Motions

1.   Unless ordered otherwise, the hearing on any discovery motion shall be set by the Discovery Master on his first available date following the filing of the reply brief, usually within seven (7) court days.  Unless a telephonic hearing is ordered by the Discovery Master, all such hearings shall take place at the offices of Arent Fox LLP located at 555 West Fifth Street, 48th Floor Los Angles, California 90013.  In the event the Discovery Master determines that no hearing is necessary for a specified motion and the matter can be disposed of on the papers, the Discovery Master shall so notify the parties.

2.   At least twenty-four hours prior to any hearing, counsel for the parties shall each provide Ruben Hernandez, a paralegal at Arent Fox LLP, with a list of all individuals who will be attending the hearing so their names can be provided to the Gas Company Tower's building security.  Mr. Hernandez's email address is: hernandez.ruben@arentfox.com.  The parties should also direct any questions they may have regarding the use of technology or other logistics at a hearing to Mr. Hernandez.

## II.   PENDING DISCOVERY MATTERS

### A.   *Ex Parte* Application of Non-Party Entities

1.   On or about February 9, 2009, Omni 808, Investors, LLC, Vision Capital, LLC and Omninet Capital, LLC ("Non-Party Entities") filed an *ex parte* application (the "Application") to strike the Motion to Compel Production of Documents Responsive to Third-Party Subpoenas filed by Mattel, Inc. ("Mattel") on or about February 4, 2009.  The Application is **DENIED** as moot, on the ground that it has been superseded by another pleading filed by the Non-Party Entities. Specifically, one day after filing their Application (i.e., on or about February 10, 2009), the Non-Party Entities filed an opposition (the "Opposition") to a motion to compel by Mattel (the "Motion"), and it contains all of the procedural arguments made in the Application, as well as additional substantive arguments.  The

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/136065.1

EXHIBIT 10

PAGE 122

1   Opposition further states that it was filed "without waiving, and expressly

2   reserving, all arguments raised in [the Non-Party Entities'] ex parte application."

3

4       2.      Although the Application has been superseded by the subsequently-

5   filed Opposition, nothing in this ruling precludes the Non-Party Entities from

6   arguing that the Motion should be denied for the reasons set forth in the

7

8   Application.  Mattel may respond to any such arguments in its reply papers, and the

9   parties shall have the right to address all such arguments at the hearing on the

10  Motion.

11

12      **B.      Hearing Dates**

13      The motions already filed by the parties shall be heard by the Discovery

14  Master in accordance with the schedule set forth below.  Unless the Discovery

15

16  Master notifies the parties otherwise, all discovery hearings shall commence at

17  10:00 a.m. at the offices of Arent Fox, LLP. To the extent any opposition papers

18

19  have previously been filed to any of the motions below, the opposing party shall

20  immediately provide the Discovery Master with a copy of all such documents.

21  Similarly, to the extent any reply papers have previously been filed in connection

22

23  with any of the motions below, the moving party shall immediately provide the

24  Discovery Master with a copy of all such documents.

25  **March 4, 2009:**

26

27      1.      Motion to Compel Production of Documents Responsive to Third-

28  Party Subpoenas filed by Mattel.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/136065.1

-4-

EXHIBIT _10_

PAGE _123_

2.      Motion to Quash Receiver Subpoenas filed by MGA Entertainment, Inc. et al. ("MGA") on or about February 4, 2009.

**March 11, 2009:**

1.      Renewed Motion to Compel Production of Documents and Things from MGA filed by Mattel on or about January 26, 2009.

2.      Renewed Motion to Compel Mattel To Produce Documents Responsive To Requests For Production 526 and 528 filed by MGA on or about February 6, 2009.

**March 19, 2009:**

1.      Motion to Compel Depositions of Pablo Vargas and Marian Trueba filed by Mattel on or about February 9, 2009.

2.      Motion to Compel Responses to Interrogatories and Production of Documents from MGA et al. filed by Mattel on or about February 10, 2009.

3.      Motion to Compel MGA To Produce And File Certain Documents Reviewed In Camera filed by Mattel on or about February 12, 2009.

**III.    FURTHER / FUTURE DISCOVERY MOTIONS**

1.      In the event any party has previously filed any other discovery motion not referenced above that should be set for hearing, the Discovery Master requests that the parties promptly submit a joint report identifying the motion(s), the date such motion(s) were filed and all papers submitted in connection with the motion(s) to date.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/136065.1

- 5 -

EXHIBIT 10

PAGE 124

1        2.      Any motion filed after the date of this order will be set for hearing

2  within a reasonable period of time thereafter by the Discovery Master.

3

4

5  Dated:        February 12, 2009

6

7

8                                                By:_____/s/ Robert C. O'Brien_____
                                                        ROBERT C. O'BRIEN
9                                                       Discovery Master

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ___10___

PAGE ___125___

**PROOF OF SERVICE**
*Bryant v. Mattel Inc. and Consolidated Actions*
USDC, Eastern Division, Case No. CV 04 09049 SGL (RNBx)

I am a citizen of the United States. My business address is Arent Fox LLP, 555 West Fifth Street, 48th Floor, Los Angeles, California 90013-1065. I am employed in the County of Los Angeles where this service occurs. I am over the age of 18 years, and not a party to the within cause.

On the date set forth below, according to ordinary business practice, I served the foregoing document(s) described as:

**ORDER NO. 1, REGARDING: (1) PROCEDURE GOVERNING DISCOVERY MOTIONS; (2) PENDING DISCOVERY MATTERS, and (3) FURTHER/FUTURE DISCOVERY MOTIONS**

☐ (BY FAX) I transmitted via facsimile, from facsimile number (213) 629-7401, the document(s) to the person(s) listed below at the fax number(s) set forth therein, on this date before 5:00 p.m. A statement that this document was successfully transmitted without error is attached to this Proof of Service.

☒ (BY E-MAIL) On this date, I caused the above document(s) to be delivered electronically to the e-mail address (es) of the person(s) on the attached service list.

☒ (BY MAIL) I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business. On this date, I placed the document(s) in envelopes addressed to the person(s) listed below and sealed and placed the envelopes for collection and mailing following ordinary business practices.

☐ **(BY PERSONAL SERVICE)** On this date, I caused the above documents to be delivered by hand delivery to the person(s) listed below.

☐ (BY OVERNIGHT DELIVERY) On this date, I placed the documents in envelope(s) addressed to the person(s) on the within service list, and caused those envelopes to be delivered to an overnight delivery carrier, with delivery fees provided for, for next-business-day delivery to whom it is to be served.

**SEE ATTACHED SERVICE LIST**

☒ (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 12, 2009 at Los Angeles, California.

/s/ Armida Flores
Armida Flores

EXHIBIT 10
PAGE 126

*Bryant v. Mattel Inc. and Consolidated Actions*
USDC, Eastern Division, Case No. CV 04 09049 SGL (RNBx)

SERVICE LIST

| | |
|---|---|
| John B Quinn<br>johnquinn@quinnemanuel.com | Randa A F Osman<br>randaosman@quinnemanuel.com |
| David C Scheper<br>dscheper@obsklaw.com;<br>feseroma@obsklaw.com | Alisa Morgenthaler Lever<br>amorgenthaler@chrisglase.com |
| Larry W McFarland<br>lmcfarland@kmwlaw.com | Raoul D Kennedy<br>rkennedy@skadden.com |
| Mark E Overland<br>moverland@obsklaw.com;<br>jhibino@obsklaw.com | Thomas J Nolan<br>tnolan@skadden.com; carl.roth@skadden.com;<br>marcus.mumford@skadden.com |
| Emil W Herich<br>eherich@kmwlaw.com | Jason D Russell<br>jrussell@skadden.com; allison.velkes@skadden.com |
| Timothy L Alger<br>timalger@quinnemanuel.com | Sandra L Tholen<br>tholen@caldwell-leslie.com; mejia@caldwell-<br>leslie.com; wilson@caldwell-leslie.com |
| Jon D Corey<br>joncorey@quinnemanuel.com | Douglas Andrew Winthrop<br>dwinthrop@howardrice.com |
| Michael T Zeller<br>michaelzeller@quinnemanuel.com | Linda M Burrow<br>burrow@caldwell-leslie.com; wilson@caldwell-<br>leslie.com; popescu@caldwell-leslie.com |
| Diane C Hutnyan<br>dianehutnyan@quinnemanuel.com;<br>reahoeven@quinnemanuel.com | Kenneth A Plevan<br>kenneth.plevan@skadden.com;<br>drogosa@skadden.com; sumclaug@skadden.com |
| Alexander H Cote<br>acote@obsklaw.com;<br>feseroma@obsklaw.com | Marina Vladimir Bogorad<br>marina.bogorad@skadden.com |
| Brett Dylan Proctor<br>dylanproctor@quinnemanuel.com;<br>westonreid@quinnemanuel.com | Stan Karas<br>stankaras@quinnemanuel.com;<br>gayleduran@quinnemanuel.com;<br>westonreid@quinnemanuel.com |
| Scott E Gizer<br>sgizer@glaserweil.com | David W Hansen<br>dhansen@skadden.com |
| Robyn Aronson<br>robynaronson@dwt.com;<br>frankromero@dwt.com | Oleg Stolyar<br>alexstolyar@quinnemanuel.com |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

PROOF OF SERVICE

EXHIBIT ___10___

PAGE ___127___

*Bryant v. Mattel Inc. and Consolidated Actions*
USDC, Eastern Division, Case No. CV 04 09049 SGL (RNBx)

SERVICE LIST

| | |
|---|---|
| Christian C Dowell<br>cdowell@kmwlaw.com | Cyrus S Naim<br>cyrusnaim@quinncmanuel.com |
| Leah Chava Gershon<br>leah@spertuslaw.com | Michael P Kelly<br>mikelly@skadden.com |
| Sanford I Weisburst<br>sandyweisburst@quinnemanuel.com | Hon. Stephen G. Larson<br>stephen_larson@cacd.uscourts.gov |
| Jerome B Falk<br>Howard Rice Nemerovski Canady Falk<br>& Rabkin<br>3 Embarcadero Ctr 7th Fl<br>San Francisco CA 94111-4024 | Kien C Tiet<br>Stern and Goldberg<br>6345 Balboa Boulevard, Suite 200<br>Encino CA 91316 |
| Lauren E Aguiar<br>Skadden Arps Slate Meagher & Flom<br>1440 New York Ave<br>Washington DC 20005-2111 | Melissa Grant<br>Quinn Emanuel Urquhart Oliver and Hedges<br>865 South Figueroa Street, 10th Fl<br>Los Angeles CA 90017-2543 |
| Cheryl Plambeck<br>Davis & Gilbert LLP<br>1740 Broadway<br>New York NY 10019 | Amy R Sabrin<br>Skadden Arps Slate Meagher & Flom LLP<br>1440 New York Avenue NW<br>Washington DC 20005-2111 |
| David W Foster<br>Skadden Arps Slate Meagher<br>& Flom LLP<br>1440 New York Avenue NW<br>Washington DC 20005-2111 | Peter H Bonis<br>Peter H. Bonis Law Offices<br>1990 N. California Blvd, 8th Floor<br>Walnut Creek CA 94596 |

PROOF OF SERVICE

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/136081.1

EXHIBIT __10__

PAGE __128__

# Exhibit 11

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO THE PROTECTIVE ORDER

# Exhibit 12

Westlaw.

NewsRoom

12/23/06 ABCNIGHTLINE (No Page)

Page 1

12/23/06 ABC Nightline (Pg. Unavail. Online)
2006 WLNR 22434503

ABC Nightline
Copyright 2006 American Broadcasting Company

December 23, 2006

NIGHTLINE

[SHOW: ABC Nightline] [AIRDATE: 12/22/06] [AIRTIME: 23:35] [ANCHOR: MARTIN BASHIR]
[ANCHOR LOCATION: NEW YORK, NY USA] [STORY: NIGHTLINE]

TOPIC:

CONTENT:

GRAPHICS: NIGHTLINE

GRAPHICS: BRAWL IN THE DOLLHOUSE

MARTIN BASHIR (ABC NEWS): Tonight on 'Nightline," brawl in the dollhouse.  After
almost 50 years of domination, Barbie is facing brash new competition from the
Bratz dolls.  Billions of dollars are on the line.  It's a toy story where nobody
is playing nice.

GRAPHICS: CHRISTMAS JOURNEY

MARTIN BASHIR (ABC NEWS): A Christmas journey.  Retracing the root historians say
Joseph and Mary would have taken from Nazareth to Bethlehem.  The dangers, the
difficulties, then and today.

GRAPHICS: FANTASY VS REALITY

MARTIN BASHIR (ABC NEWS): Fantasy versus reality.  It seems like the perfect gift
for a romantic holiday season.  So why do so many of us get it wrong?  Tonight, we
take you inside one store that thinks it has the answer.

MATT NEELY (STOCKING FELLA): The 34B should look good.

ANNOUNCER: From the global resources of ABC News, with Terry Moran in Washington,
Martin Bashir and Cynthia McFadden in New York City, this is 'Nightline," December
22nd, 2006.

GRAPHICS: NIGHTLINE: DECEMBER 22, 2006

REPORTER: JOHN BERMAN
REPORTER LOCATION: LOS ANGELES, CA USA

TOPIC:

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 12
PAGE 143

M 0062148

CONTENT: BARBIE, BRATZ, MATTEL, MICRO GAMES OF AMERICA, CHUCK SCOTHON

MARTIN BASHIR (ABC NEWS): (Off-camera)  Good evening.  Many of us have spent at least part of today rushing around the shops looking for that perfect Christmas present particularly for our children.  Toys are now big business.  Almost $11 billion will be spent on them during the holiday season alone.  And nowhere is the business more competitive than in the world of dolls.  Yes.  Barbie has long been the biggest-selling toy doll of all, but now there's a serious challenger.  And in the fight to be number one nobody's backing down.  Here's ABC's John Berman.

JOHN BERMAN (ABC NEWS): (Voiceover)  In this corner, measuring nine inches tall with big eyes and even bigger bling, the challenger, Bratz.  And in this corner, with flowing blond hair and impossibly disproportionate bust, a 47-year undisputed, undefeated champion from Mattel, Barbie.  Now you might think the world of dolls isn't the kind of place for a knock down, drag out brawl but you'd be wrong.

ISAAC LARIAN (CEO: Ken is not gonna save Barbie.  Barbie is not gonna save Barbie. And the leadership that they have at Mattel right now, it's not gonna save Barbie.

JOHN BERMAN (ABC NEWS): (Off-camera)  You sound like a linebacker on a football team.  You're like taunting Mattel.

ISAAC LARIAN (CEO: It's good.  It's good for the business.

JOHN BERMAN (ABC NEWS): (Off-camera)  It's good?  Trash talking in the doll business is good?

ISAAC LARIAN (CEO: I'm not trash talking.  I'm telling - I'm talking about the facts.

JOHN BERMAN (ABC NEWS): (Voiceover)  Meet Isaac Larian.  The seemingly nice man who wants to pummel Barbie.  He is the CEO of Micro Games of America, which makes the Bratz doll.  He might not strike you as the doll kind of guy.  He came to the US from Iran with nothing.

ISAAC LARIAN (CEO: I came here in 1971 with a one-way ticket and $750 in my pocket and a big American dream.  And I have lived the American dream.

JOHN BERMAN (ABC NEWS): (Voiceover)  Larian went from washing dishes to building a toy company to the American dream on steroids.  Largely due to this big-eyed, big-headed cartoonish doll.  When Larian first saw the Bratz design in 2001, he thought they looked like aliens.

JOHN BERMAN (ABC NEWS): (Off-camera)  Do you still they look like aliens?

ISAAC LARIAN (CEO: No.  I think now they look beautiful.  I've grown to like them.

JOHN BERMAN (ABC NEWS): (Voiceover)  Last year's $2 billion in sales can make many things beautiful.  Larian now says Bratz have a 40% market share and is the number two doll in the US market.  Number two for now.  Larian claims his Bratz girls are breathing down the lanky plastic neck of number one.  That would be Barbie.

JOHN BERMAN (ABC NEWS): (Off-camera)  What's wrong with Barbie?

ISAAC LARIAN (CEO: It's time for her to retire.  She's been around for too long.

JOHN BERMAN (ABC NEWS): (Voiceover)  And you want to help Barbie retire?

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT _12_

PAGE _144_

M 0062149

ISAAC LARIAN (CEO: Yes, I would help her retire.  I would throw a party for her.

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL – GIRLS DIVISION): He's welcome to throw a party for Barbie any time he wants, but it won't be a retirement party. She has been and will remain the number one fashion doll in the industry.

JOHN BERMAN (ABC NEWS): (Voiceover)  Meet Chuck Scothon.  A senior Mattel executive and former high school offensive lineman.  His product is the long-legged goliath of the toy business.  Since she was first created in 1959, Barbie has been an icon among icons with almost absurd success.  One study found that 90% of American girls between 3 and 10-years-old owns a Barbie doll.

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL – GIRLS DIVISION): Now, we're traveling through the world of fairytopia.

JOHN BERMAN (ABC NEWS): (Voiceover)  Scothon doesn't like to talk about Bratz.  Let alone the fact that they might pose a challenge.

JOHN BERMAN (ABC NEWS): (Off-camera)  How was it, do you think, this become a story?

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL – GIRLS DIVISION): I think a lot of people like to talk about the underdog and the leadership positions.  I think at the end of the day it's really about making more out of something than there really is.

JOHN BERMAN (ABC NEWS): (Voiceover)  But last year, Barbie might have started to show her age.  Sales dropped 13%, just as Bratz were getting white hot.

JOHN BERMAN (ABC NEWS): (Off-camera)  Is Barbie in danger?

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL – GIRLS DIVISION): Not in the least. Barbie has been and will continue to be the number one fashion doll.

JOHN BERMAN (ABC NEWS): (Voiceover)  Barbie has rebounded a bit this year, but Isaac Larian is not impressed.  He says he has the key to cool.  A multicultural doll with the edgy sassy attitude girls want these days.

ISAAC LARIAN (CEO: The kids look at Bratz dolls and they think they are teenagers. And we ask them how old do you think Bratz dolls are?  They say they are teenagers. And when they look at Barbie doll they think it's old mom.

JOHN BERMAN (ABC NEWS): (Off-camera)  They think mom when they look at Barbie dolls?

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL – GIRLS DIVISION): What I would suggest and say to that is, first of all if Barbie, for some girls, reminds them of their mothers, I would think of nothing better.  The most important job a woman can have in many ways is being a mom.

JOHN BERMAN (ABC NEWS): (Voiceover)  There is no mistaking a Bratz doll for a mom.

JOHN BERMAN (ABC NEWS): (Off-camera)  I look at that Bratz doll.  She's wearing, you know, the leopard skin top, she's got the sequins, she's got the hairs, I mean, you know, people have compared them to street walkers.  They look a little, you know, trashy.

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT    12

PAGE    145                                          M 0062150

12/23/06 ABCNIGHTLINE (No Page)                                          Page 4

ISAAC LARIAN (CEO: They don't look trashy to me. And this is - I think trashy is in the eye of the adults. When we show these to the little girls, and we have done that over and over, everybody said they're beautiful. They never say they look like a streetwalker.

JOHN BERMAN (ABC NEWS): (Voiceover)  Barbie is clearly going for a different image. What image, you ask?

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): First and foremost, I would say the Barbie doll is truly based on some great values for little girls. The courage, inspiration, imaginative play.

JOHN BERMAN (ABC NEWS): (Voiceover)  Whatever that means exactly, Barbie is famous for having careers like Doctor Barbie and Astronaut Barbie. The Bratz dolls? Well, they like...

CARTOON VOICEOVER (GROUP): Shopping.

JOHN BERMAN (ABC NEWS): (Voiceover)  This is their motto.

ISAAC LARIAN (CEO: The girls with the passion for fashion.

JOHN BERMAN (ABC NEWS): (Off-camera)  The girls with the passion for fashion.

ISAAC LARIAN (CEO: Right.

JOHN BERMAN (ABC NEWS): (Off-camera)  What's that about?

ISAAC LARIAN (CEO: They have good fashion. It's okay to look good.  It's okay, who said that you have to, who said that girls don't have to look good?

JOHN BERMAN (ABC NEWS): (Off-camera)  And Barbie doesn't look good?  I could tell you, there are a lot of people who think Barbie looks good.

ISAAC LARIAN (CEO: I don't know.  The consumers who are buying Bratz doll don't think Barbie is good.

JOHN BERMAN (ABC NEWS): (Voiceover)  If all this is true why hasn't Bratz yet overtaken Barbie as number one? According to Larian...

ISAAC LARIAN (CEO: We would have beaten them up this year and year before if they had not engaged in, what I call, really unfair competition.

JOHN BERMAN (ABC NEWS): (Off-camera)  Really unfair competition? Those are fighting words.

ISAAC LARIAN (CEO: They are fighting words.

JOHN BERMAN (ABC NEWS): (Voiceover)  The Barbie-Bratz battle has moved beyond the Barbie dream house to the courthouse.  Round one.  Mattel filed a lawsuit alleging that the designer of the Bratz concept came up with the idea when he was working at Mattel.  Round two, Isaac Larian sued back saying that Mattel tried to corner the market on doll hair, and more seriously that Mattel ripped off the Bratz concept for a new line of Barbie dolls.  The MyScene dolls.

JOHN BERMAN (ABC NEWS): (Off-camera) This is, the MyScene Barbies are what has, to

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT __12__

PAGE __146__                                           M 0062151

Case 2:04-cv-09049-DOC-RNB  Document 4903-3  Filed 02/24/09  Page 18 of 70  Page ID
#:155112

some extent, they're in the center of a little bit of a controversy now because
Bratz says these look just like their dolls.

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): Okay.

JOHN BERMAN (ABC NEWS): (Off-camera)  I mean, don't you see the resemblance between
MyScene Barbie and the Bratz doll?

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): What we see is an
evolution to the Barbie brand.  And again, the Barbie brand is made up of dolls
that target girls of every age because it's really an evolution of where the Barbie
doll has been with a little bit more animated look, but not necessarily something
that's been inspired by the competition at all.

JOHN BERMAN (ABC NEWS): (Voiceover)  The cases are still pending, but both
companies say they are confident they will win the legal battle, though they say it
differently.

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): I'm not really gonna
talk about the legal piece of this.  I have all the confidence in the world that
the justice system and that, that our attorneys can work through those issues.

ISAAC LARIAN (CEO: When we're done with Mattel, we will get them for billions of
dollars, not only for this, but for defamation.

JOHN BERMAN (ABC NEWS): (Voiceover)  Who will prevail in this doll brawl?  It's one
thing to be hot.  Bratz are hot, but another to be iconic.

ISAAC LARIAN (CEO: We're gonna become number one.  I promise you that.

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): I can't speak to his
guarantee.  What I can speak to is I believe that Barbie will continue to be the
number fashion doll around the globe.

JOHN BERMAN (ABC NEWS): (Off-camera)  We're talking about dolls.  I mean, shouldn't
everyone be able to play nice?

ISAAC LARIAN (CEO: They have gotten away too much with bullying everybody around.
And somebody has to stand up to them.  I will.

JOHN BERMAN (ABC NEWS): (Off-camera)  So you're gonna fight them on the schoolyard?

ISAAC LARIAN (CEO: I'm gonna fight, I'm gonna, not in the school schoolyard.  I'm
gonna fight them in the courthouse.

JOHN BERMAN (ABC NEWS): (Off-camera)  And with this thing?

ISAAC LARIAN (CEO: With this thing and many other things.  But all 100% the old
American fashion way.

JOHN BERMAN (ABC NEWS): (Voiceover)  Merry Christmas.  I'm John Berman for
'Nightline" in Los Angeles.

MARTIN BASHIR (ABC NEWS): (Off-camera)  The doll wars in a store near you.

GRAPHICS: ROAD TO BETHLEHEM

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 12

PAGE 147

M 0062152

12/23/06 ABCNIGHTLINE (No Page)                                    Page 6

MARTIN BASHIR (ABC NEWS): (Voiceover)  And just ahead on 'Nightline," retracing the
journey that has inspired millions for centuries.  In the footsteps of Joseph and
Mary.

GRAPHICS: STOCKING FELLAS

MARTIN BASHIR (ABC NEWS): (Voiceover)  And stocking fellas.  One store's solution
to the challenge of buying lingerie.  It's a 'Sign of the times."

ANNOUNCER: ABC News 'Nightline," brought to you by...

COMMERCIAL BREAK

REPORTER: WILF DINNICK
REPORTER LOCATION: NAZARETH, ISRAEL

TOPIC:

CONTENT: CHRISTMAS STORY, CHURCH OF NATIVITY, JESUS, MARY, JOSEPH, ISRAEL

MARTIN BASHIR (ABC NEWS): (Off-camera)  It's easy and commonplace to sentimentalize
the Christmas story.  Mary and Joseph, traveling for days on a donkey from their
home in Nazareth to Bethlehem.  Mary eventually giving birth to Jesus in a stable
because there was no room for them at the inn.  It wasn't an easy journey back
then, but imagine making the same trek today in 2006.  Here's ABC's Wilf Dinnick.

WILF DINNICK (ABC NEWS): (Voiceover)  A heavily pregnant woman, traveling across
deserts, through ancient cities and river crossings.  The story of a trip inspiring
Christians around the world.  The gospel according to Luke says it began in
Nazareth, a city where it's believed an angel told Mary she would have a son named
Jesus.

WILF DINNICK (ABC NEWS): (Off-camera)  Today, Nazareth is a city of about 70,000
people.  But back in Joseph and Mary's day, it was only a small village of about
1,000.  Now, to get to Bethlehem, it's actually only 65 miles, as the crow flies
but Joseph and Mary, they had a complicated route.  We're gonna take the exact same
route.  Well, they had a donkey.  We've got this car.

WILF DINNICK (ABC NEWS): (Voiceover)  The Bible does not have details of the
journey.  But historians told us, Mary and Joseph probably did not take the direct
way to Bethlehem because then, like today, the Middle East was a complicated,
sometimes dangerous, place.  From Nazareth they headed east to the Jordan River to
avoid hostile territory controlled by the Samaritans who hated Jews.  They crossed
the river by foot by the ancient city of Bet She'an.  Then through the Jordan
Valley, land that was controlled by Jewish kings, back into Israel, over the Jordan
River again and through the ancient city of Jericho passed Jerusalem and then on to
Bethlehem.  Steve Pfann sees similarities between today and 2,000 years ago.

STEPHEN PFANN (PRESIDENT: There is an interesting parallel that can be drawn with
border crossings, and police at the border, soldiers at the border, questions of
taxation and other types of things put more into a modern context.

WILF DINNICK (ABC NEWS): (Voiceover)  So, we drove from Nazareth to the Jordan
River.  It was in shallow areas like this where Mary and Joseph simply walked
across the river.

ISRAELI SECURITY PERSONNEL (MALE): But you don't understand.  Hey, I'm telling you,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT __12__

PAGE __148__

M 0062153

there is a problem.

WILF DINNICK (ABC NEWS): (Voiceover)  But today, crossing the Jordan is not so
simple.  We were greeted by Israeli security.

WILF DINNICK (ABC NEWS): (Off-camera)  The security here is so tight in fact that
they won't even let us shoot here, even though we have permission.  This is the
Jordan Valley and this as far as we can come here because this is now an
international border.

WILF DINNICK (ABC NEWS): (Voiceover)  So from here on in, it was hidden cameras
only.  Passport checks, departure tax and duty-free.

WILF DINNICK (ABC NEWS): (Off-camera)  And then we have to get on a bus to make the
very short trip from Israel to Jordan.  This is how you have to do it in 2006.

WILF DINNICK (ABC NEWS): (Voiceover)  I did manage to sneak a few shots as we
crossed the Jordan River.  On the other side, Jordanians were also nervous about
our cameras.

WILF DINNICK (ABC NEWS): (Off-camera)  We face yet another delay here.  This is now
on the Jordanian side and the security here says we can't actually use the camera,
even though we applied for permission weeks ago, they somehow have lost our
permission.  So we're trying to go down to the Jordan Valley now, as quickly as we
can, and then we'll cross over to the Israeli side.

WILF DINNICK (ABC NEWS): (Voiceover)  The Jordan Valley is flat, perfect for
traveling.  In Joseph and Mary's day there would have been hardly anything here.
Today, plenty of busy Arab towns.

WILF DINNICK (ABC NEWS): (Off-camera)  Okay, let's go in.  A lot has changed over
the last 2,000 years but one thing that has remained the same is the type of bread
made almost exactly the same way as when Joseph and Mary made their journey.

WILF DINNICK (ABC NEWS): (Voiceover)  Then back into Israel, just before the border
closes.

WILF DINNICK (ABC NEWS): (Off-camera)  We're now gonna cross the Jordan River for
the second time here, where Mary and Joseph would have waded across on their way to
Bethlehem.

WILF DINNICK (ABC NEWS): (Voiceover)  Then on to the ancient town of Jericho, it is
Palestinian and the Israeli army demands special ID to enter.

WILF DINNICK (ABC NEWS): (Off-camera)  Could I get a falafel with hummus and pita?
Pita, yeah.  Okay.

WILF DINNICK (ABC NEWS): (Voiceover)  This was a chance for Mary and Joseph to rest
before the final, grueling leg of the trip, which was a treacherous road that was
yet again blocked for us by the Israeli army.

WILF DINNICK (ABC NEWS): (Off-camera)  This is the part of the trip we cannot do by
car.  This is the ancient route between Jericho and Bethlehem.  The silence here is
amazing, the view is stunning, but it must have been a daunting part of the journey
for Mary and Joseph.

WILF DINNICK (ABC NEWS): (Voiceover)  The last stretch of the journey that Mary and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT _12_

PAGE _149_

M 0062154

Joseph took into Bethlehem is now impossible.  Blocked by Israel's security wall.
Even Bethlehem itself is cut off by the wall.  We had to drive through this gate
controlled by Israeli soldiers.

WILF DINNICK (ABC NEWS): (Off-camera)  We finally arrive in Bethlehem, and that's
the church of the nativity behind us.  Now our trip took 15 hours, we crossed two
international borders and dozens of military checkpoints.  Joseph and Mary's trip
took about a week.

WILF DINNICK (ABC NEWS): (Voiceover)  But on our trip, we met at least one
historian who believes Joseph and Mary's journey never happened.  The gospel
according to Luke says the couple made the trip to Bethlehem for a Roman census,
but historians now know there was no census at the time.

REVEREND JEROME MURPHY-O'CONNOR (ECOLE BIBLIQUE: I have no problem with the
divinity of Christ.  I have no problem with his birth in Bethlehem.  It's just the
colorful little bits that writers, storytellers, felt inclined to add.  Those, we
can legitimately question.

WILF DINNICK (ABC NEWS): (Voiceover)  He also believes, like many other historians,
the couple already lived in Bethlehem and went to Nazareth later to look for work.
But don't tell that to anyone here.  In the Church of the Nativity, in this small
spot where it's believed Mary gave birth to Jesus.  For the faithful, a miracle,
after such a grueling journey.

REVEREND JEROME MURPHY-O'CONNOR (ECOLE BIBLIQUE: It's an extremely good yarn, and
that's why it has survived because people prefer good yarns to the truth.

WILF DINNICK (ABC NEWS): (Voiceover)  And it is a good story.  And for us, an
amazing journey.  Wilf Dinnick for "Nightline" in Bethlehem.

MARTIN BASHIR (ABC NEWS): (Off-camera)  The Christmas journey then and now.  And
when we come back, Santa's little helpers like you've never seen them before.  It's
a "Sign of the Times."

GRAPHICS: SIGN OF THE TIMES

COMMERCIAL BREAK

ANNOUNCER: 'Nightline" continues from New York City with Martin Bashir.

REPORTER: NICK WATT
REPORTER LOCATION: LONDON, ENGLAND

TOPIC:

CONTENT: LINGERIE, STOCKING FELLA, MARKS AND SPENCER, MYLA

MARTIN BASHIR (ABC NEWS): (Off-camera)  It seems like the perfect gift, the sexy
little outfit for the one we love this Christmas.  If only it were that simple.
According to experts, men are simply hopeless at choosing lingerie.  So now, a
department store in Britain is employing Santa's little helpers to guide men away
from any lingerie land mines and, according to ABC's Nick Watt, it's a "Sign of the
Times."

MATT NEELY (STOCKING FELLA): (Inaudible) nice, actually.  You guys doing okay?
Finding everything you want?  Yeah?

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT _12_

PAGE _150_

M 0062155

CUSTOMER (MALE): Yeah, we're fine.

CUSTOMER (FEMALE): Yes, thank you.

CUSTOMER (MALE): Thank you, sir.

MATT NEELY (STOCKING FELLA): Give me a shout if you need any more help.

NICK WATT (ABC NEWS): (Voiceover)  Here at Marks and Spencer they noticed a lot of lingerie returned by women after Christmas.  The problem?  Men were buying it. Matt Neely is part of the solution.

MATT NEELY (STOCKING FELLA): We were given all sorts of training about the styles of bra and what function it performs in terms pushing it together or lifting up, or squashing it down.

MATT NEELY (STOCKING FELLA): There we are.

NICK WATT (ABC NEWS): (Voiceover)  Two hundred stocking fellas were sent out to help hapless husbands.

MATT NEELY (STOCKING FELLA): That's quite sweet.

CUSTOMER (MALE): Mm-hmm.

MATT NEELY (STOCKING FELLA): Okay?

CUSTOMER (MALE): No.

MATT NEELY (STOCKING FELLA): You know, if the guys are wandering around not really know what they're doing, or kind of skirting around the outside too afraid to step in.

NICK WATT (ABC NEWS): (Voiceover)  He helps the unromantic.

NICK WATT (ABC NEWS): (Off-camera)  Do you always buy underwear for Christmas?

CUSTOMER (MALE): No.

NICK WATT (ABC NEWS): (Off-camera)  So why this year?

CUSTOMER (MALE): Because I've run out of ideas.

MATT NEELY (STOCKING FELLA): Yeah.

NICK WATT (ABC NEWS): (Voiceover)  He helps the clueless.

MATT NEELY (STOCKING FELLA): What color are you looking for?

CUSTOMER (MALE): Well...

NICK WATT (ABC NEWS): (Voiceover)  He even helps those who think they know better.

NICK WATT (ABC NEWS): (Off-camera)  Do you have the right size?

CUSTOMER (MALE): I have the right size, yeah.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT __12__

PAGE __151__

M 0062156

NICK WATT (ABC NEWS): (Off-camera)   Color?

CUSTOMER (MALE): Well, color is my, my choice really, actually.

MATT NEELY (STOCKING FELLA): Hopefully, the presence of another man in the department will put them at ease.

NICK WATT (ABC NEWS): (Off-camera)  Now, this is Myla, an upmarket lingerie boutique where they have a very different philosophy.  Here, they only employ women.

TAMARA DAVIES (MANAGER: I would say 75% of my customers are men.

NICK WATT (ABC NEWS): (Off-camera)  Are men?

TAMARA DAVIES (MANAGER: Are men.  Male.

NICK WATT (ABC NEWS): (Voiceover)  Men, like Anatoly (PH).

TAMARA DAVIES (MANAGER: Do you know what she likes?  Do you know what color?

CUSTOMER (MALE): Colors, yeah, yeah.

TAMARA DAVIES (MANAGER: Size?

CUSTOMER (MALE): Size, yeah.  I think, it's a must if you - you have to know your woman.

NICK WATT (ABC NEWS): (Voiceover)  But even at Myla, some men aren't quite so sure about the size.

TAMARA DAVIES (MANAGER: So they're like this, or, I mean, as a woman, you know, female working here, we have men come in and said, 'She's your size, what size are you?"

NICK WATT (ABC NEWS): (Voiceover)  So, there's one bonus of a female assistant but it's not male bonding.

NICK WATT (ABC NEWS): (Off-camera)  And how do you put them at ease?

TAMARA DAVIES (MANAGER: Smiling, 'Hello, how are you today?"  Talk about the weather.

NICK WATT (ABC NEWS): (Off-camera)  Bit of humor?

TAMARA DAVIES (MANAGER: A bit of humor, yes.  We do that.

NICK WATT (ABC NEWS): (Off-camera)  Do you flirt a little bit?

TAMARA DAVIES (MANAGER: Yes, a little.

NICK WATT (ABC NEWS): (Off-camera)  Apparently a lot of men end up buying two pairs, something safe and something saucy that they're both gonna enjoy.

NICK WATT (ABC NEWS): (Voiceover)  As Bridget Jones found out in the movie, safe can also be sexy.

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT _12_

PAGE _152_                                M 0062157

CLIP FROM "BRIDGET JONES'S DIARY"

HUGH GRANT (ACTOR): Oh, absolutely enormous panties. No, no, don't apologize. I like them. Hello, mommy.

TAMARA DAVIES (MANAGER: Men don't wanna leave here. I got a guy here in yesterday, and he was looking around. He spent about half an hour, and he said to me, 'I just, I just don't wanna leave. I wanna stay here forever."

MATT NEELY (STOCKING FELLA): It's a 34B, which will be no good.

NICK WATT (ABC NEWS): (Voiceover) I wonder if any one's ever said that...

MATT NEELY (STOCKING FELLA): Yeah.

NICK WATT (ABC NEWS): (Voiceover) ...to a stocking fella? I'm Nick Watt for "Nightline" in Lingerie Land.

MARTIN BASHIR (ABC NEWS): (Off-camera) And in case you're wondering, I bought my wife a rather fetching handbag. And when we come back, a special look at the achievements and events of the past year.

COMMERCIAL BREAK

MARTIN BASHIR (ABC NEWS): (Off-camera) Next week on "Nightline," a look at some memorable moments and provocative people we've covered during 2006. The year in entertainment, power, money and love. It's all part of our special series beginning on Christmas Day with the 'Year in Jesus." We hope you'll join us. But that's our report for tonight. I'm Martin Bashir. For Cynthia McFadden, Terry Moran, and all of us at ABC News, good night America and have a very happy and peaceful Christmas.

FOR INFORMATION ON ORDERING A VIDEO OR TRANSCRIPT COPY OF ABC NEWS OR ABC NEWS NOW PROGRAMMING, PLEASE VISIT THE SECURE ONLINE ORDER FORM LOCATED AT WWW.TRANSCRIPTS.TV

---- INDEX REFERENCES ----

COMPANY: MATTEL INC; ABC NEWS; BRATZ F C; REACH TRADE AND MARKETING; ABC

INDUSTRY: (TV (1TV19); Underwear (1UN06); Entertainment (1EN08); Gen Y Entertainment (1GE14); TV Programming (1TV26); Games & Toys (1GA85); Gen Y TV (1GE33); Apparel (1AP19); Consumer Products & Services (1CO62); Children's Apparel (1CH40); Apparel & Textiles (1AP20))

REGION: (Americas (1AM92); North America (1NO39); Mediterranean (1ME20); Middle East (1MI23); USA (1US73); Palestine (1PA37); New York (1NE72); Israel (1IS16); Arab States (1AR46))

Language: EN

OTHER INDEXING: (MARTIN BASHIR (ABC NEWS); MARTIN BASHIR (ABC NEWS); MARTIN BASHIR (ABC NEWS); MATT NEELY (STOCKING FELLA); ANNOUNCER; MARTIN BASHIR (ABC NEWS); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 12

PAGE 153

M 0062158

12/23/06 ABCNIGHTLINE (No Page)

BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); CARTOON VOICEOVER (GROUP); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); MARTIN BASHIR (ABC NEWS); MARTIN BASHIR (ABC NEWS); MARTIN BASHIR (ABC NEWS); ANNOUNCER; MARTIN BASHIR (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); STEPHEN PFANN (PRESIDENT; WILF DINNICK (ABC NEWS); ISRAELI SECURITY PERSONNEL (MALE); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); REVEREND JEROME MURPHY-O'CONNOR (ECOLE BIBLIQUE; WILF DINNICK (ABC NEWS); REVEREND JEROME MURPHY-O'CONNOR (ECOLE BIBLIQUE; WILF DINNICK (ABC NEWS); MARTIN BASHIR (ABC NEWS); ANNOUNCER; MARTIN BASHIR (ABC NEWS); MATT NEELY (STOCKING FELLA); CUSTOMER (MALE); CUSTOMER (FEMALE); CUSTOMER (MALE); MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); MATT NEELY (STOCKING FELLA); MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); MATT NEELY (STOCKING FELLA); CUSTOMER (MALE); MATT NEELY (STOCKING FELLA); CUSTOMER (MALE); MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); NICK WATT (ABC NEWS); CUSTOMER (MALE); NICK WATT (ABC NEWS); CUSTOMER (MALE); MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); MATT NEELY (STOCKING FELLA); CUSTOMER (MALE); NICK WATT (ABC NEWS); NICK WATT (ABC NEWS); CUSTOMER (MALE); NICK WATT (ABC NEWS); CUSTOMER (MALE); MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; CUSTOMER (MALE); TAMARA DAVIES (MANAGER; CUSTOMER (MALE); NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; NICK WATT (ABC NEWS); NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; NICK WATT (ABC NEWS); NICK WATT (ABC NEWS); HUGH GRANT (ACTOR); TAMARA DAVIES (MANAGER; MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); MARTIN BASHIR (ABC NEWS); MARTIN BASHIR (ABC NEWS))   (ABC; ABC NEWS; BASHIR; BETHLEHEM; BIBLE; BRATZ; BRAWL; CHRISTMAS; CHRISTMAS JOURNEY; CHUCK; CONTENT; CONTENT: BARBIE; CONTENT: CHRISTMAS; CONTENT: LINGERIE; CYNTHIA MCFADDEN TERRY MORAN; DIARY; DIVISION; DOLLHOUSE; FANTASY; FELLAS; GRAPHICS; GRAPHICS: BRAWL; GRAPHICS: CHRISTMAS; GRAPHICS: FANTASY; GRAPHICS: SIGN; HUGH; ISAAC; JEWISH; JOSEPH; JOURNEY; KEN; LUKE; MARTIN BASHIR; MARY GRAPHICS: STOCKING; MATT; MATTEL; NICK; NIGHTLINE; NIGHTLINE: DECEMBER; PALESTINIAN; SIGN; STOCKING; TAMARA; TERRY MORAN; TOPIC; USA) (Astronaut Barbie; Barbie; Barbies; BRATZ; BRATZ DOLL WARS; Cynthia McFadden; Doctor Barbie; Finding; Hey; Isaac; Isaac Larian; JOHN BERMAN; Jordanians; Largely; Larian; Mary; Matt Neely; MyScene Barbie; Passport; Round; Steve Pfann)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT __12__

PAGE __154__

M 0062159

12/23/06 ABCNIGHTLINE (No Page)                                          Page 13

Word Count: 5025
12/23/06 ABCNIGHTLINE (No Page)

END OF DOCUMENT

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT __12__

PAGE __155__                    M 0062160

**Exhibit 13**

Case 2:04-cv-09049-SGL-RNB     Document 4293     Filed 09/02/2008     Page 1 of 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                              Date: September 2, 2008

Title:      MATTEL, INC. -v- MGA, INC.
            AND CONSOLIDATED ACTIONS
==========================================================================
=
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes                          None Present
            Courtroom Deputy Clerk              Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                            None Present

PROCEEDINGS:    ORDER SETTING VARIOUS BRIEFING SCHEDULES

        The Court, having considered the positions of counsel at the hearing herein, as well as the
parties' proposed scheduling positions, hereby sets the following scheduling order for further
proceedings in this matter:

1.      The case is STAYED from the date of this order through September 19, 2008, <u>except</u> for
        efforts aimed in good faith at a complete and global settlement.  Principal corporate officers
        for both plaintiff and defendants (Mr. Eckert and Mr. Larian) are ORDERED to make
        themselves available, at a mutually agreeable time, to meet with counsel and Ambassador
        Prosper to discuss a global resolution of this matter.

2.      On September 29, 2008, the parties may file opening briefs and submissions regarding
        remaining claims and defenses for Phase 1(c) as well as opening briefs and submissions for
        injunctive relief, constructive trust, and/or other remedial measures.  Response briefs and
        submissions are due October 13, 2008.  Reply briefs and submissions are due October 20,
        2008.  A hearing not to exceed four hours will be conducted before this Court on **Monday,
        November 10, 2008, at 1:00 p.m.**

MINUTES FORM 90                                     Initials of Deputy Clerk __jh_____
CIVIL -- GEN                          1

EXHIBIT __13__

PAGE __156__

3.  Opening briefs for JMOLs (new or renewed), motion(s) for new trial, and/or motion(s) for remittitur may be filed 10 days following the Court's ruling on Phase 1(c) issues and its issuance of any injunction(s), constructive trust(s), and/or other remedial measures. Response briefs are due 14 days following the opening briefs, and reply briefs are due 7 days following the response briefs. A hearing will be set by the Court after receiving the response briefs. Depending on the outcome of the hearing, the Court may address or defer addressing the following additional issues: (1) Whether or not to issue a judgment or await completion of Phase 2; (2) the appointment of a discovery master for Phase 2 (the Court will provide three proposed discovery masters in advance of the hearing to which counsel for the parties may indicate any objection(s)); and (3) further scheduling for Phase 2.

4.  All discovery related to Phase 2 is STAYED pending the hearing described in paragraph 3, except as follows:  For good cause shown, the Court ORDERS the deposition of **Carlos Gustavo Machado** and **Jorge Castillo** to be taken at a mutually convenient date within 30 days of September 19, 2008. Any disputes concerning the taking of these depositions shall be presented to this District Judge in the manner prescribed in Local Rule 37.

    **IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                                    2                    Initials of Deputy Clerk __jh_____

EXHIBIT __13__

PAGE __157__

Case 2:04-cv-09049-DOC-RNB   Document 4903-3   Filed 02/24/09   Page 30 of 70   Page ID
#:155124
Case 2:04-cv-09049-SGL-RNB      Document 4293      Filed 09/02/2008      Page 3 of 3

## NOTICE PARTY SERVICE LIST

**Case No.**   CV 04-09049 SGL(RNBx)    **Case Title**   Mattel, Inc. v. MGA ENTERTAINMENT, INC

**Title of Document**   MINUTES OF SEPTEMBER 2, 2008

| | |
|---|---|
| Atty Sttlmnt Officer Panel Coordinator | US Attorneys Office - Civil Division -L.A. |
| BAP (Bankruptcy Appellate Panel) | US Attorneys Office - Civil Division - S.A. |
| Beck, Michael J (Clerk, MDL Panel) | US Attorneys Office - Criminal Division -L.A. |
| BOP (Bureau of Prisons) | US Attorneys Office - Criminal Division -S.A. |
| CA St Pub Defender (Calif. State PD) | US Bankruptcy Court |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | US Marshal Service - Los Angeles (USMLA) |
| Case Asgmt Admin (Case Assignment Administrator) | US Marshal Service - Riverside (USMED) |
| Catterson, Cathy (9th Circuit Court of Appeal) | US Marshal Service -Santa Ana (USMSA) |
| Chief Deputy Admin | US Probation Office (USPO) |
| Chief Deputy Ops | US Trustee's Office |
| Clerk of Court | Warden, San Quentin State Prison, CA |
| Death Penalty H/C (Law Clerks) | |
| Dep In Chg E Div | |
| Dep In Chg So Div | |

**ADD NEW NOTICE PARTY** ✓
(if sending by fax, mailing address must also be provided)

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*: P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |
| |

| |
|---|
| Federal Public Defender |
| Fiscal Section |
| Intake Section, Criminal LA |
| Intake Section, Criminal SA |
| Intake Supervisor, Civil |
| PIA Clerk - Los Angeles (PIALA) |
| PIA Clerk - Riverside (PIAED) |
| PIA Clerk - Santa Ana (PIASA) |
| PSA - Los Angeles (PSALA) |
| PSA - Riverside (PSAED) |
| PSA - Santa Ana (PSASA) |
| Schnack, Randall (CJA Supervising Attorney) |
| Statistics Clerk |

**Initials of Deputy Clerk** jh

G-75  (03/07)

EXHIBIT  13

PAGE  158

**Exhibit 14**

THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone:  (213) 687-5000
Facsimile:  (213) 687-5600
E-mail:   tnolan@skadden.com

KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
New York, NY  10036
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000
E-mail:   kplevan@skadden.com

Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | |
| MATTEL, INC., a Delaware corporation | **MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.** |
| Defendant. | |
| | Honorable Stephen G. Larson Courtroom 1 |

12-4

MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.          NO. CV 04-9049 SGL (RNBx)

EXHIBIT _14_

PAGE _159_

1
2  Consolidated with MATTEL, INC. v.
   BRYANT and MGA
3  ENTERTAINMENT, INC. v.
   MATTEL, INC.
4

5  **PROPOUNDING PARTY:**      MGA ENTERTAINMENT, INC.

6  **RESPONDING PARTY:**       MATTEL, INC.

7  **SET NUMBER:**             SECOND

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT  14

PAGE  160

1    MGA Entertainment Inc. ("MGA"), hereby requests that Plaintiff, Mattel Inc.

2  ("Mattel") respond to the following Second Set of Interrogatories separately, fully,

3  and under oath, pursuant to Rule 33 of the Federal Rules of Civil Procedure, within

4  (30) days of service, in accordance with the definitions and instructions set forth

5  herein.

6                **DEFINITIONS**

7     1.   "AFFILIATES" means any and all corporations, proprietorships, d/b/a's,

8  partnerships, joint ventures and business entities of any kind that, directly or

9  indirectly, in whole or in part, own or control, are under common ownership or

10  control with, or are owned or controlled by a PERSON, party or entity, including

11  without limitation each parent, subsidiary and joint venture of such person, party or

12  entity.

13     2.   "ALLEGED COPYRIGHTED WORKS" means the copyrighted works

14  alleged in paragraph 83 of MATTEL'S Second Amended Answer in Case No. 05-

15  2727 and Counterclaim in THIS ACTION.

16     3.   "ALLEGED TRADE SECRETS" means the trade secret material

17  alleged in paragraphs 107 thru 111 of MATTEL'S Second Amended Answer in Case

18  No. 05-2727 and Counterclaim in THIS ACTION.

19     4.   "BARBIE" means and refers to each image, character, logo, doll, toy,

20  styling head, plush toy, play set, accessory, product, packaging or any other thing

21  that is or has ever been manufactured, marketed or sold by YOU, or others under

22  licensed by YOU, as part of a line of goods or merchandise commonly known as, or

23  sold and marketed under the name "Barbie."

24     5.   "BRYANT" means Carter Bryant individually and does not include his

25  agents, representatives, attorneys, experts or any other PERSON acting on his behalf,

26  pursuant to his authority or subject to his control.

27     6.   "BRATZ" means and refers to each image, character, logo, doll, fashion

28  doll, plush toy, styling head, toy, accessory, product, packaging, theme, or other

2      **EXHIBIT** __14__

             **PAGE** __161__

1  thing or matter that is or has ever been manufactured, marketed or sold by MGA, or

2  others under license, as part of a line of goods or merchandise commonly known as,

3  or sold and marketed under the "Bratz" trademark or trade dress.

4        7.    "COLLECT," "COLLECTED" or "COLLECTION" with reference to

5  DOCUMENTS means to collect, review, produce, request, seek, look for, search for,

6  analyze or in any other way collect or review or attempt to collect or review such

7  DOCUMENTS in connection with YOUR search for, review of and/or production of

8  DOCUMENTS in this ACTION."

9        8.    The term "CONFLICT OF INTEREST QUESTIONNAIRE" refers to

10  Mattel's form of employment agreement concerning, inter alia, relations, if any,

11  between Mattel's employees, suppliers, and/or competition, whether known by the

12  title "Conflict of Interest Questionnaire" or any other title, including without

13  limitation the form of Conflict of Interest Questionnaire entitled "Conflict of Interest

14  Questionnaire" executed by Carter Bryant on or about January 4, 1999.

15        9.    "CONTESTED MATTEL PRODUCTS" means:

16        (a) each female fashion doll and its packaging that is or has ever been

17  manufactured, marketed or sold by MATTEL, or others under license by MATTEL,

18  as part of a line of goods or merchandise commonly known as, or sold and marketed

19  under the "My Scene" trademark or trade dress;

20        (b) each image, character, logo, fashion doll, doll, toy, accessory, product,

21  packaging or other thing or matter that is or has ever been manufactured, marketed or

22  sold by MATTEL, or others under license by MATTEL, as part of a line of goods or

23  merchandise commonly known as, or sold and marketed under the "My Scene"

24  "Chillin' Out!" trademark or trade dress, the "My Scene" "Night on the Town"

25  trademark or trade dress, the "My Scene" "My Bling Bling" trademark or trade

26  dress, and/or the "My Scene" "Jammin' in Jamaica" trademark or trade dress;

27        (c) each plush toy and its packaging that is or has ever been manufactured,

28  marketed or sold by MATTEL, or others under license by MATTEL, as part of a line

3

EXHIBIT __14__

PAGE __162__

1   of goods or merchandise commonly known as, or sold and marketed under the "My

2   Scene" trademark or trade dress;

3       (d)  each styling head that is or has ever been manufactured, marketed or sold

4   by MATTEL, or others under license by MATTEL, as part of a line of goods or

5   merchandise commonly known as, or sold and marketed under the "My Scene"

6   trademark or trade dress;

7       (e) the "My Scene Sound Lounge" play set and packaging;

8       (f) each image, character, logo, doll, toy, accessory, product, packaging or any

9   other thing that is or has ever been manufactured, marketed or sold by MATTEL, or

10   others under license by MATTEL, as part of a line of goods or merchandise

11   commonly known as, or sold and marketed under the name "Little Mommy";

12       (g) each image, character, logo, doll, toy, accessory, product, packaging or any

13   other thing that is or has ever been manufactured, marketed or sold by YOU, or

14   others under licensed by YOU, as part of a line of goods or merchandise commonly

15   known as, or sold and marketed under the name "Wee 3 Friends"; and

16       (h) each image, character, logo, toy, accessory, product, packaging or any

17   other thing that is or has ever been manufactured, marketed or sold by MATTEL, or

18   others under license by MATTEL, as part of a line of goods or merchandise

19   commonly known as, or sold and marketed under the name "AcceleRacerS."

20       10.   "COUNTERCLAIMS" means Mattel, Inc.'s Second Amended Answer

21   and Counterclaims for: 1. Copyright Infringement; 2. Violation of the Racketeer

22   Influenced and Corrupt Organizations Act; 3. Conspiracy to Violate the Racketeer

23   Influenced and Corrupt Organizations Act; 4. Misappropriation of Trade Secrets; 5.

24   Breach of Contract; 6. Intentional Interference with Contract; 7. Breach of Fiduciary

25   Duty; 8. Aiding and Abetting Breach of Fiduciary Duty; 9. Breach of Duty of

26   Loyalty; 10. Aiding and Abetting Breach of Duty of Loyalty; 11. Conversion; 12.

27   Unfair Competition; and 13. Declaratory Relief filed July 12, 2007, in MGA v.

28   Mattel, Inc., CV 05-02727, including any amendment or supplement thereto.

4

EXHIBIT 14

PAGE 163

11. "DESCRIBE THE SALES AND PROFITS" means to state fully and separately for each MATTEL PRODUCT by year (a) the number of units of each such MATTEL PRODUCT sold by YOU or YOUR licensees, (b) the gross and net revenue received by YOU from such sales of each such MATTEL PRODUCT, (c) all costs YOU have incurred in connection with each such MATTEL PRODUCT, including but not limited to YOUR cost of goods sold, and (d) YOUR gross and net profits from each such MATTEL PRODUCT.

12. "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blue prints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, development, inventions, or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, which in whole or in part.

13. "DIGITAL INFORMATION" means any information created or stored digitally, including but not limited to electronically, magnetically, or optically.

14. "DOCUMENT[S]" incorporates the full meaning of Federal Rule of Civil Procedure 34, and shall be construed in the broadest sense to mean any and all DIGITAL INFORMATION, STORAGE DEVICE, writings, tangible things and property, of any kind, that are now or that have been in YOUR actual or constructive possession, custody or control, including, but not limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded, transcribed, graphic or photographic matter of any kind or nature, in, through, or from which information may be embodied, translated, conveyed or stored, whether an original, a draft or copy, however produced or reproduced, whether sent or received or neither, including, but not limited to, notes, memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports, inter- and intra-office

5

EXHIBIT 14

PAGE 164

1  COMMUNICATIONS, work papers, work sheets, work records, ledgers, graphs,

2  indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills,

3  bills of lading, bids, time cards, receipts, purchase orders, telephone records,

4  telegrams, telexes, literature, invoices, contracts, purchase orders, estimates,

5  recordings, transcriptions of recordings, records, books, pamphlets, periodicals,

6  publications, papers, tapes, DVDs, video CDs, video, audio and digital recordings,

7  television commercials, story boards, website or other spot advertisements, movies,

8  movie trailers, prototypes, products, diaries, calendars, charts, drawings, sketches,

9  messages, photographs and data contained in or accessible through any electronic

10  data processing system, including, but not limited to, computer databases, data sheets,

11  data processing cards, computer files and tapes, computer disks, CD-ROMs,

12  computer metadata, microfilm, microfiche, electronic mail, website and web pages

13  and transcriptions thereof and all other memorializations of any conversations,

14  meetings and conference, by telephone or otherwise.  The term DOCUMENT also

15  means every copy of a DOCUMENT, where such copy is not an identical duplicate

16  of the original, whether because of deletions, underlinings, showing of blind copies,

17  initialing, signatures, receipt stamps, comments, notations, differences in stationery

18  or any other difference or modification of any kind.

19      15.    The term "EMPLOYEE INVENTIONS AGREEMENT" refers to

20  Mattel's form of employment agreement concerning, inter alia, (i) ownership of

21  inventions, and (ii)(a) trade secrets and/or (iii) conflicts, whether known by the title

22  "Employee Confidential Information and Inventions Agreement" or any other title,

23  including without limitation the form of Employee Inventions Agreement entitled

24  "Employee Confidential Information and Inventions Agreement" executed by Carter

25  Bryant on or about January 4, 1999.

26      16.    "IDENTIFY," "IDENTITY," or "IDENTIFYING" mean the following:

27          •    With reference to an *individual*, means to state fully and

28  separately for each, such individual's full name, any known business title, current or

6

EXHIBIT __14__

PAGE __165__

1  last known business affiliation, current or last known residential address, current or

2  last known business address, current or last known relationship with MATTEL, and

3  current or last known phone number(s).

4        •    With reference to an *entity*, means to state, fully and separately

5  for each, such entity's full name, state (or country) of incorporation or organization,

6  present or last known address, and present or last known telephone number(s).

7        •    With reference to any *DOCUMENT*, means to describe each

8  DOCUMENT by Bates number.  If the DOCUMENT does not have a Bates number,

9  IDENTIFY means to provide a complete description of the DOCUMENT such that it

10  may be the subject of a request for production of documents, including by stating the

11  date, identity of the author, addresses(s), recipient(s), signatories, parties, or other

12  PERSONS identified in the DOCUMENT, its present location or custodian and a

13  description of its contents.

14        •    With reference to any MATTEL or MGA product, means to state

15  fully and separately for each, the full name of the product; the number of the product;

16  the SKU of the product; any other applicable designation of the product; the period

17  of time in which the product has been sold; and IDENTIFY each PERSON who has

18  licensed such product.

19     17.  "MATTEL," "YOU," or "YOUR" means the party Mattel, Inc. and any

20  of its past or present officers, directors, employees, parents, subsidiaries, divisions,

21  affiliates, predecessors-in-interest, and joint venture partners.

22     18.  "MATTEL EMPLOYEE" means any of MATTEL's current or former

23  employees.

24     19.  "MATTEL'S INITIAL DISCLOSURES" means Mattel, Inc.'s

25  Consolidated (1) Initial Disclosures Relating to MGA's Unfair Competition Claims,

26  and (2) Second Supplemental Initial Disclosures Relating to Mattel's Claims Against

27  Bryant and MGA, dated January 5, 2007 and any supplemental or amendment

28  thereto.

EXHIBIT __14__

PAGE __165__

20. "MATTEL PRODUCTS," includes all products sold or offered by sale by MATTEL under or using the name "Barbie," including without limitation, all CONTESTED MATTEL PRODUCTS, all MY SCENE DOLLS, and any doll sold or offered for sale under the name "Diva Starz."

21. "MY SCENE" means and refers to each image, character, logo, doll, fashion doll, toy, styling head, plush toy, play set, accessory, product, packaging or any other thing that is or has ever been manufactured, marketed or sold by YOU, or others under licensed by YOU, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name "My Scene."

22. "MY SCENE DOLL" means any fashion doll that is or has ever been distributed, marketed, sold or offered for sale under the name "My Scene" or as part of the "My Scene" line, including separate themes.

23. "PERSON" or "PERSONS" means all natural persons, partnerships, joint ventures and any kind of business, legal or public entity or organization, as well as its, its or her agents, representatives, employees, officers and directors and any one else acting on its, its or her behalf, pursuant to its, its or her authority or subject or its, its or her control.

24. "REFERRING OR RELATING TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

25. "STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION" means to (i) describe in detail the complete factual for the identified contention; (ii) IDENTIFY all DOCUMENTS that REFER OR RELATE TO that contention; and (iii) IDENTIFY all witnesses who may have information that REFERS OR RELATES TO the contention.

26. "STORAGE DEVICE" means any computer hard drive, memory, USB device, tape, storage array or any other device or medium that allows a user, whether

8

EXHIBIT __14__

PAGE __166__

1  permanently, temporarily or otherwise, to create, generate, transmit, copy, retain,

2  store, or maintain DIGITAL INFORMATION.

3      27.   "SOURCE OF INFORMATION" means any PERSON or medium

4  containing DOCUMENTS, DIGITAL INFORMATION, or other information,

5  whether in paper, electronic or other form, including, but not limited to any

6  STORAGE DEVICE, file, file cabinet, or any other source of information or

7  DOCUMENTS.

8      28.   "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-9059

9  SGL (RNBx), filed on April 27, 2004 and all cases consolidated or coordinated

10 therewith.

11     29.   The singular form of a noun or pronoun includes within its meaning the

12 plural form of the noun or pronoun so used, and vice versa; the use of the masculine

13 form of a pronoun also includes within its meaning the feminine form of the pronoun

14 so used, and vice versa; the use of any tense of any verb includes also within its

15 meaning all other tenses of the verb so used, whenever such construction results in a

16 broader request for information; and "and" includes "or" and vice versa, whenever

17 such construction results in a broader disclosure of documents or information.

18

19                        **INSTRUCTIONS**

20     1.    Mattel is instructed to serve written responses to these Interrogatories on

21 MGA's counsel at Skadden, Arps, Slate, Meagher & Flom, LLP, 300 South Grand

22 Avenue, Los Angeles, California 90071.

23     2.    Pursuant to Federal Rule of Civil Procedure 33, Mattel shall provide its

24 answers under oath within 30 days of service.

25     3.    If, in responding to these Interrogatories, Mattel asserts an ambiguity in

26 either a particular Interrogatory or an Instruction of Definition applicable thereto,

27 Mattel shall identify in the response to such Interrogatory the language it contends is

28 ambiguous and state the interpretation used in responding.

9

EXHIBIT __14__

PAGE __167__

4.      These Interrogatories impose a continuing obligation subsequent to your initial production to the full extent provided for in Rule 26(e) of the Federal Rules of Civil Procedure.

5.      If, in responding to these Interrogatories, any information is not being provided based on an objection or otherwise, IDENTIFY the information not be provided and explain the complete basis supporting YOUR refusal and/or failure to provide that information.

6.      Unless otherwise noted, these Interrogatories seek information from January 1, 1995, to the present.

10

EXHIBIT 14

PAGE 168

## **INTERROGATORIES**

INTERROGATORY NO. 12:

IDENTIFY each version of the EMPLOYEE INVENTIONS AGREEMENT adopted and/or used by or on behalf of MATTEL, including, without limitation, (a) the IDENTITY of all persons who participated in or were consulted concerning the creation, drafting, adoption, and/or use of the EMPLOYEE INVENTIONS AGREEMENT; (b) the date(s) and/or range(s) of dates MATTEL'S used each version of the EMPLOYEE INVENTIONS AGREEMENT; and (c) the reason(s) for the changes between each version.

INTERROGATORY NO. 13:

Describe in detail each instance in which any provision of an EMPLOYEE INVENTIONS AGREEMENT was breached or alleged to be breached by an employee, independent contractor, or any other person with whom MATTEL had entered into an EMPLOYEE INVENTIONS AGREEMENT, including without limitation: (a) a complete description of the conduct comprising said breach; and (b) a complete description of all steps taken by MATTEL in response to said breach or alleged breach (*including, for example, conducting an investigation or arranging that an investigation be conducted on MATTEL'S behalf; issuing a warning, whether written or oral; issuing any other notification, whether written or oral; initiating civil litigation, including the name, case number and court of any such litigation; initiating any other legal proceeding, including but not limited to criminal proceedings, including the name, case number and court of any such proceeding; making an exception, whether written, oral, express, or implied; making a determination that no breach occurred, whether or not such determination was documented; or no action*).

11

EXHIBIT 14
PAGE 169

INTERROGATORY NO. 14:

IDENTIFY each version of the CONFLICT OF INTEREST QUESTIONNAIRE adopted and/or used by or on behalf of MATTEL, including, without limitation, (a) the identity of all persons who participated in or were consulted concerning the creation, drafting, adoption, and/or use of the CONFLICT OF INTEREST QUESTIONNAIRE; (b) the date(s) and/or range(s) of dates MATTEL'S used each version of the CONFLICT OF INTEREST QUESTIONNAIRE; and (c) the reason(s) for the changes between each version.

INTERROGATORY NO. 15:

Describe in detail each instance in which any provision of a CONFLICT OF INTEREST QUESTIONNAIRE was breached or alleged to be breached by an employee, independent contractor, or any other person with whom MATTEL had entered into a CONFLICT OF INTEREST QUESTIONNAIRE, including without limitation: (a) a description of the conduct comprising said breach; and (b) a description of all steps taken by MATTEL in response to said breach or alleged breach (*including, for example, conducting an investigation or arranging that an investigation be conducted on MATTEL'S behalf; issuing a warning, whether written or oral; issuing any other notification, whether written or oral; initiating civil litigation, including the name, case number and court of any such litigation; initiating any other legal proceeding, including but not limited to criminal proceedings, including the name, case number and court of any such proceeding; making an exception, whether written, oral, express, or implied; making a determination that no breach occurred, whether or not such determination was documented; or no action*).

12

EXHIBIT __14__

PAGE __170__

INTERROGATORY NO. 16:

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that MATTEL has a viable affirmative claim for relief against MGA even if the evidence establishes both of the following:  (i) in August and/or September, 1998, Carter Bryant conceived of the line of fashion dolls that he named Bratz, and (ii) the design for the BRATZ dolls sold by MGA in 2001 was reduced to practice after October 20, 2000.

INTERROGATORY NO. 17:

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that MATTEL employees in the Design Center who personally knew Carter Bryant did not know and/or believe, immediately following the launch of MGA's Bratz dolls in 2001, that Carter Bryant was the creator of the concept for the BRATZ line of dolls.

INTERROGATORY NO. 18:

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that any of the fashions and/or accessories for the BRATZ line of dolls sold by MGA violate or infringe any of MATTEL'S intellectual property and/or proprietary rights.

INTERROGATORY NO. 19:

IDENTIFY with specificity each element of each ALLEGED COPYRIGHTED WORK that MATTEL contends is an original element protectable under the United States Copyright Laws.

13

EXHIBIT __14__

PAGE __171__

INTERROGATORY NO. 20:

IDENTIFY with specificity each ALLEGED TRADE SECRET, including the IDENTITY of each DOCUMENT that embodies or REFERS OR RELATES to each ALLEGED TRADE SECRET.

INTERROGATORY NO. 21:

IDENTIFY each PERSON who has had access to each ALLEGED TRADE SECRET, including (a) the ALLEGED TRADE SECRET each PERSON had access to; and (b) the date or dates each PERSON had this access.

INTERROGATORY NO. 22:

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that MGA misappropriated any ALLEGED TRADE SECRET.

INTERROGATORY NO. 23:

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that the ALLEGED TRADE SECRETS are protectable.

INTERROGATORY NO. 24:

DESCRIBE THE SALES AND PROFITS for each MATTEL PRODUCT that has been sold or offered for sale by YOU or YOUR licensees. (The time period applicable to this interrogatory is from January 1, 1990 to the present).

INTERROGATORY NO. 25:

IDENTIFY, fully and separately, each and every PERSON who was involved in the development or marketing of the CONTESTED MATTEL PRODUCTS by stating each PERSON'S name, role, and start/end date. (As used in this Interrogatory, the phrase "development or marketing" means the entire process of

14

EXHIBIT __14__

PAGE __172__

1  creating and selling a new product or design, including without limitation, the
2  marketing, advertising, promotion, licensing, offering for sale, conception, origin,
3  creation, design, development, sculpting, engineering, reduction to practice, tooling
4  or painting of a product or embodiment of a product).
5
6  INTERROGATORY NO. 26:
7      Describe in detail all instances in which a PERSON expressed confusion as to
8  source or sponsorship between any MATTEL products, packaging or advertising
9  (including, but not limited to, the CONTESTED MATTEL PRODUCTS) and any
10 MGA products, packaging or advertising (including, but not limited to, "BRATZ"),
11 by: (i) stating the facts and circumstances of each instance; (ii) IDENTIFYING all
12 DOCUMENTS that REFER OR RELATE TO each instance; and (iii)
13 IDENTIFYING all witnesses who may have information that REFER OR RELATE
14 TO each instance.
15
16 INTERROGATORY NO. 27:
17     For each PERSON listed in MATTEL'S INITIAL DISCLOSURES,
18 IDENTIFY each PERSON and describe in detail each PERSON's alleged
19 knowledge of the subjects or information identified in MATTEL'S INITIAL
20 DISCLOSURES.
21
22 INTERROGATORY NO. 28:
23     Describe in detail the complete factual basis for YOUR COUNTERCLAIMS,
24 including, without limitation all facts, DOCUMENTS, and witnesses that REFER
25 OR RELATE TO YOUR COUNTERCLAIMS.
26
27
28

15

EXHIBIT 14

PAGE 173

INTERROGATORY NO. 29:

Describe in detail any estimate or calculation of damage, loss, injury, or unjust enrichment, by reason of any act or omission alleged in YOUR COUNTERCLAIMS, that YOU have made or that has been made on YOUR behalf or at YOUR request, including all facts, DOCUMENTS or witnesses RELATING TO each estimate or calculation.

INTERROGATORY 30:

IDENTIFY each and every SOURCE OF INFORMATION from which YOU have COLLECTED DOCUMENTS that REFER OR RELATE TO BRATZ.

INTERROGATORY 31:

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that any BRATZ doll is substantially similar to, a copy or a derivative of BRATZ DESIGNS created by Carter Bryant on or before October 19, 2000.

DATED:  December 4, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____

Robert J. Herrington
Attorneys for Counter-Defendants, MGA
ENTERTAINMENT, INC., ISAAC LARIAN,
MGA ENTERTAINMENT (HK) LIMITED,
AND MGAE de MEXICO S.R.L. de C.V.

16

EXHIBIT 14
PAGE 174

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

On December 4, 2007, I served the foregoing document described as:

### MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.

on the interested parties in this action addressed as follows:

### SEE ATTACHED SERVICE LIST

☒   (BY PERSONAL SERVICE)   ☐   By personally delivering copies to the person served. (FEDERAL)

☒   I caused such document to be hand delivered to the office of the addressee. (FEDERAL) [As Noted.]

☒   **(BY MAIL)** I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service and the fact that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices. [As Noted.]

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on December 4, 2007 at Los Angeles, California.

Allison G. Velkes
PRINT NAME                          SIGNATURE

1

EXHIBIT 14

PAGE 175

## SERVICE LIST

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000
(213) 443-3100 (Fax)

Attorneys for Mattel, Inc.
[Personal Service]

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400
(415) 397-7188 (Fax)

Attorneys for Carter Bryant
[Mail]

Mark E. Overland, Esq.
Alexander H. Cote, Esq.
David C. Scheper, Esq.
Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071
(213) 613-4655
(213) 613-4656 (Fax)

Attorneys for Carlos Gustavo Machado
Gomez
[Mail]

2

EXHIBIT 14
PAGE 176

# Exhibit 15

DIANA M. TORRES (S.B. #162284)
PAULA E. AMBROSINI (S.B. #193126)
ALICIA C. MEYER (S.B. #230189)
O'MELVENY & MYERS, LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Attorneys for Defendant-in-Intervention,
MGA Entertainment, Inc.

**RECEIVED**

FEB 0 7 2005

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware
Corporation,

           Plaintiff,

    v.

CARTER BRYANT, an individual,
and MGA ENTERTAINMENT,
INC., a California Corporation

        Defendant and
        Defendant-in-
        Intervention.

Case No.  CV04-9059 NM (RNBx)

**MGA'S FIRST SET OF
INTERROGATORIES TO MATTEL,
INC.**

PROPOUNDING PARTY:  MGA ENTERTAINMENT, INC.

RESPONDING PARTY:  MATTEL, INC.

SET:  ONE

EXHIBIT __15__

PAGE __177__

360
2-4

Defendant-In-Intervention, MGA Entertainment Inc. ("MGA"), hereby requests that Plaintiff, Mattel Inc. ("Mattel") answer the following Interrogatories separately, fully, and under oath, pursuant to Rule 33 of the Federal Rules of Civil Procedure, within thirty (30) days of service, in accordance with the definitions and instructions set forth herein.

## DEFINITIONS

1. "BRATZ" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license, as part of a line of goods or merchandise commonly known as, or sold and marketed under the "Bratz" trademark or trade dress including but not limited to the "BRATZ CONCEPT," "FIRST BRATZ DOLLS," "BRATZ DOLLS," "BRATZ PACK", "LIL' BRATZ," "BRATZ PETZ," "BRATZ BABYZ," and "BRATZ BOYZ.

2. "BRATZ CONCEPT" means and refers to each "BRATZ"-related image, drawing, picture, sculpt, mold, prototype and any other form of artwork predating the FIRST BRATZ DOLLS, examples of which have been the subject of Mr. Bryant's testimony and produced by Mr. Bryant bearing Bates serial numbers Bryant 00175-177; 00179-00182; 00189-00190; 00192-00196; 00198-00216; 00218; 00341; 00972; 01014; and 01116-01118.

3. "FIRST BRATZ DOLLS" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license, as part of a line of goods or merchandise commonly known as, or sold and marketed under the "Bratz" trademark or trade dress and consisting of the following:  "Bratz Cloe", SKU 248521; "Bratz Cloe", SKU 248538; "Bratz Jade", SKU 248545; "Bratz Sasha, SKU 248552; "Bratz Yasmin", SKU 248569; "Bratz Pajama Power Fashion", SKU 248576; "Bratz Study Hall Fashion", SKU 248583; and "Bratz Dynamite Dance Fashion", SKU 248682.

EXHIBIT __15__

PAGE __178__

1

4.  "BRATZ DOLLS" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license, as part of a line of goods or merchandise commonly known as, or sold and marketed under the "Bratz" trademark or trade dress excluding the "FIRST BRATZ DOLLS", "LIL' BRATZ," "BRATZ PETZ," and "BRATZ BABYZ" and including, without limitation, the styling head commonly known as or sold and marketed as the "Bratz Funky Fashion Make Over" styling head, and specifically including, without limitation, the images, characters, dolls, playsets and other products and toys called or referred to as, or named or marketed in association with the names "Cloe", "Jade", "Sasha", "Yasmin", "Meygan", "Dana", "Fianna", "Nevra", "Cameron", "Dylan", "Eitan", "Koby", "Cade", "Ailani", "Nazalia", "Talia", "Zada", "Mikko", "Colin", "Deavon", "Lakin", "Flaunt It", "Beach Party", "Micro Bratz", "Xpress It", "Bratz Boyz", "Funk 'n' Glow", "Funky Fashion Makeover", "Holiday Bratz – Sweetheart", "Holiday Bratz – Spring Fling", "Holiday Bratz – Independence Dance", "Slumber Party", "Strut It", "Spring Break", "Formal Funk", "Bratz Boyz Formal Funk", "Wintertime Wonderland", "Style It!", "Funky Fashion Makeover", "Funk Out!", "Sun-Kissed Summer", "Girls Nite Out!", "Wild Life Safari", and any other released, or yet to be released, BRATZ named character or product theme.

5.  "BRATZ PACK" means and refers to any collection, compilation or grouping of two or more images, characters or dolls that are or have ever been manufactured, marketed or sold by MGA, or others under license, as part of a line of goods or merchandise commonly known as, or sold and marketed under the "Bratz" trademark or trade dress including, without limitation, the collection, compilation or grouping of four female images, characters or dolls individually named, called or referred to as "Bratz Cloe", "Bratz Jade", "Bratz Sasha", and "Bratz Yasmin" and any other similar collection, compilation or grouping of two or more images, characters or dolls, male or female, and specifically including, without limitation, the images,

2

EXHIBIT 15

PAGE 179

1   characters and dolls called or referred to as, or named or marketed in association with

2   the names "Cloe", "Jade", "Sasha", "Yasmin", "Meygan", "Dana", "Fianna",

3   "Nevra", "Cameron", "Dylan", "Eitan", "Koby", "Cade", "Ailani", "Nazalia",

4   "Talia", "Zada", "Mikko", "Colin", "Deavon", "Lakin", and any other released, or yet

5   to be released, BRATZ character.

6       6. "LIL' BRATZ" means and refers to each image, character, logo, doll, toy,

7   accessory, product, packaging or other thing or matter that is or has ever been

8   manufactured, marketed or sold by MGA, or others under license, as part of a line of

9   goods or merchandise commonly known as, or sold and marketed under the "Bratz"

10   trademark or trade dress and commonly labeled, called, referred to, named or

11   identified as "LIL' BRATZ", and specifically including, without limitation, the

12   images, characters, dolls, playsets and other products and toys called or referred to as,

13   or named or marketed in association with the names "Cloe", "Yasmin", "Sasha",

14   "Jade", "Ailani", "Nazalia", "Talia", "Zada", "Lil' Boyz", "Cameron", "Dylan",

15   "Eitan", "Koby", "Mikko", "Colin", "Deavon", "Lakin", "Lil' Bratz Slumber Party",

16   "Lil' Bratz Tote", "Lil' Bratz Spring Break", "Lil Bratz Dancefloor Funk", "Lil' Boyz

17   Dancefloor Funk", and any other released, or yet to be released, LIL' BRATZ

18   character or product theme.

19       7. "BRATZ PETZ" means and refers to each image, character, logo, doll, toy,

20   accessory, product, packaging or other thing or matter that is or has ever been

21   manufactured, marketed or sold by MGA, or others under license, as part of a line of

22   goods or merchandise commonly known as, or sold and marketed under the "Bratz"

23   trademark or trade dress and commonly labeled, called, referred to, named or

24   identified as "BRATZ PETZ", and specifically including, without limitation, the

25   images, characters and toys called or referred to as, or named or marketed in

26   association with the names, "Bratz Catz", "Brigitte", "Jolie", "Kendall", "Daphne",

27   "Bratz Petz Tokyo Catz", "Kyoto", "Cho", "Nami", "Yukiko", "Bratz Petz Foxz",

28   "Carly", "Reilly", "Shayna", "Bree", "Bratz Petz Dogz", "Shae", "Kali", "Pilar",

EXHIBIT __15__

PAGE __180__

"Abby", and any other released, or yet to be released, BRATZ PETZ character or product theme.

8. "BRATZ BABYZ" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license, as part of a line of goods or merchandise commonly known as, or sold and marketed under the "Bratz" trademark or trade dress and commonly labeled, called, referred to, named or identified as "BRATZ BABYZ", and specifically including, without limitation, the images, characters and dolls called or referred to as, or named or marketed in association with the names, "Cloe", "Sasha", "Jade," "Yasmin", and any other released, or yet to be released, BRATZ BABYZ character or product theme.

9. "BRATZ BOYZ" means and refers to each male image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license, as part of a line of goods or merchandise commonly known as, or sold and marketed under the "Bratz" trademark or trade dress and commonly labeled, called, referred to, named or identified as "BRATZ BOYZ", and specifically including, without limitation, the images characters, dolls, playsets and other products and toys called or referred to as, or named or marketed in association with the names "Cameron", "Dylan", "Eitan", "Koby", "Cade", "Mikko", "Colin", "Deavon", "Lakin", "Bratz Boyz Formal Funk", "Boyz Funk Out!", "Boyz Sun-Kissed Summer", and any other released, or yet to be released BRATZ BOYZ character or product theme.

10. "BRATZ INTELLECTUAL PROPERTY" means all intellectual and industrial property rights in and to BRATZ including, without limitation, all copyrights, patents, trademarks, industrial designs, trade secrets, contract and licensing rights, design rights, moral rights and trade dress rights, in any country of the world.

11. "BRYANT" means defendant Carter Bryant.

EXHIBIT __15__

PAGE __181__

4

12.   "COMMUNICATION[S]" means any transmission of information from one person or entity to another, including, without limitation, by personal meeting, conversation, letter, telephone, facsimile or electronic mail.  Each request that encompasses information relating in any way to communications to, from or within a business or corporate entity is hereby designated to mean, and should be construed to include, all communications by and between representatives, employees, agents or servants of the business or corporate entity.

13.   "COMPLAINT" means and refers to the Complaint filed by Mattel Inc. in this matter on April 27, 2004 and now designated as Case No. CV 04-9059 NM (RNBx) in the United States District Court for the Central District of California.

14.   "DOCUMENT[S]" incorporates the full meaning of Federal Rule of Civil Procedure 24, and shall be construed in the broadest sense to mean any and all writings, tangible things and property, of any kind, that are now or that have been in YOUR actual or constructive possession, custody or control, including, but not limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded, transcribed, graphic or photographic matter of any kind or nature, in, through, or from which information may be embodied, translated, conveyed or stored, whether an original, a draft or copy, however produced or reproduced, whether sent or received or neither, including, but not limited to, notes, memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports, inter- and intra-office COMMUNICATIONS, work papers, work sheets, work records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders, telephone records, telegrams, telexes, literature, invoices, contracts, purchase orders, estimates, recordings, transcriptions of recordings, records, books, pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs, video, audio and digital recordings, television commercials, story boards, website or other spot

EXHIBIT __15__

PAGE __182__

advertisements, movies, movie trailers, prototypes, products, diaries, calendars, charts, drawings, sketches, messages, photographs and data contained in or accessible through any electronic data processing system, including, but not limited to, computer databases, data sheets, data processing cards, computer files and tapes, computer disks, CD-ROMs, computer meta-data, microfilm, microfiche, electronic mail, website and web pages and transcriptions thereof and all other memorializations of any conversations, meetings and conference, by telephone or otherwise. The term DOCUMENT also means every copy of a DOCUMENT, where such copy is not an identical duplicate of the original, whether because of deletions, underlinings, showing of blind copies, initialing, signatures, receipt stamps, comments, notations, differences in stationery or any other difference or modification of any kind.

15.   "MARKET RESEARCH" means any type of research, study, survey or analysis of consumers or potential consumers of a product or potential product including, without limitation, focus groups, consumer surveys, market analyses, behavioral analyses and consumer research.

16.   "MATTEL," "PLAINTIFF," "YOU" or "YOUR" means plaintiff MATTEL, Inc. and any of its past or present officers, directors, agents, employees, representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, entities and persons acting in joint venture or partnership relationships with YOU and any others acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

17.   MGA" means MGA Entertainment, Inc. and any of its past or present officers, directors, agents, employees, representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, entities and persons acting in joint venture or partnership relationships with MGA

6

EXHIBIT __15__

PAGE __183__

and any others acting on MGA's behalf, pursuant to its authority or subject to its control.

18.    "MGA PRODUCTS" means any and all products offered for sale by MGA Entertainment, Inc., other than BRATZ, including, without limitation, "4-Ever Best Friends" and "Alien Racers".

19.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

20.    "PROPERTY" or "PROPERTIES" means all ideas, concepts, rights, designs, proprietary and confidential information, and other intellectual and intangible property including, without limitation, copyrights, patents, trademarks, design rights and trade secrets.

21.    The singular form includes the plural, and vice versa.

22.    The terms "any" and "all" are interchangeable.

23.    The terms "and" and "or" shall be construed disjunctively and conjunctively, and each shall include the other whenever such dual construction will serve to bring within the scope of any interrogatory, information that would otherwise not be within its scope.

24.    As used herein, the terms "relating to" and "referring to" should each be construed in the broadest possible sense to mean concerning, consisting of, referring to, describing, discussing, constituting, evidencing, containing, reflecting, mentioning, pertaining to, citing, summarizing, analyzing or bearing any logical or factual connection with the matter discussed.

## INSTRUCTIONS

1.    Mattel is instructed to serve written responses to these Interrogatories

7

EXHIBIT 15
PAGE 184

1  upon MGA's counsel at O'Melveny & Myers LLP, 400 South Hope Street, Los
2  Angeles, California  90071.

3    2.    These Interrogatories are deemed to be continuing in nature.  If, after
4  responding, Mattel discovers additional information responsive to any Interrogatory,
5  or part thereof, MGA requests that Mattel provide such information to MGA within
6  thirty days after acquiring knowledge of its existence or advise MGA in writing as to
7  why such additional information cannot be provided within the specified period.

8    3.    For any information withheld based on any ground, including privilege,
9  provide a written statement setting forth:  (a) the identity of all person(s) from and to
10  whom the information has been communicated; (b) the names and organization
11  position, if any, of each such person; (c) a brief description of the subject matter of the
12  information; and (d) the legal ground upon which you rely in withholding the
13  information; and (e) if work product is asserted, the proceeding for or during which
14  the information was obtained or created.

15    4.    Whenever in these Interrogatories there is a request to "IDENTIFY" a
16  COMMUNICATION, the answering party shall state the date of the
17  COMMUNICATION, the places of origin and reception of the COMMUNICATION,
18  the persons present during any portion of the COMMUNICATION if oral, the type of
19  COMMUNICATION (*i.e.* letter, facsimile, face-to-face conversation, telephone, etc.),
20  the substance of the COMMUNICATION and the DOCUMENT(S), if any, that
21  constitute, record, show or refer to the COMMUNICATION.

22    5.    Whenever in these Interrogatories there is a request to state the
23  "IDENTITY" of a PERSON, the answering party shall set forth the person's name,
24  present or last known business address, residence address and telephone numbers,
25  dates of employment, job capacity, title, status, position, rank or classification or, with
26  respect to a non-natural person, the name and address of the principal office or place
27  of business, all names under which it is doing business or ever has done business, the
28  nature of the venture (*i.e.* sole proprietorship, partnership , corporation, etc.), and the

8

EXHIBIT __15__

PAGE __185__

1    identities of its officers, directors, partners or administrators.

2         6.    Whenever in these Interrogatories there is a request to state the

3    "IDENTITY" of a DOCUMENT, the answering party shall identify, by name, all

4    authors and recipients of the DOCUMENT, the date of the DOCUMENT, the person

5    or entity who currently has possession, custody and control of the DOCUMENT, and

6    describe the DOCUMENT in a manner sufficient for MGA to draft a discovery

7    demand requesting production of the DOCUMENT.

8         7.    Whenever in these Interrogatories there is a request to "IDENTIFY"

9    PROPERTY, the answering party shall describe the PROPERTY as specifically as

10   possible, state the name and current employer, if known, of the author(s), inventor(s),

11   owner(s) and any assignee(s) and licensee(s) of the PROPERTY, state any copyright

12   registration, recordation information relative to a copyright interest, trademark

13   registration and patent numbers of the PROPERTY, if any, and state the dates of

14   conception, authorship, invention and reduction to practice of the PROPERTY.

15

16                                       **INTERROGATORIES**

17   **INTERROGATORY NO. 1.:**

18       State all facts, with particularity, and IDENTIFY all DOCUMENTS that

19   support YOUR contention, if YOU so contend, that YOU have suffered harm as a

20   result of any act or omission of MGA.

21   **INTERROGATORY NO. 2.:**

22       For each fact stated in response to Interrogatory No. 1, IDENTIFY all

23   PERSONS with knowledge of each fact.

24   **INTERROGATORY NO. 3.:**

25       State, with particularity, the nature, amount, cause and calculation of every item

26   of YOUR alleged damages, including, without limitation, general, actual and statutory

27   damages, restitution, disgorgement of unlawful profits, lost profits, lost payments, lost

28

EXHIBIT 15

PAGE 186

revenues, lost monies, lost royalties or license fees, reputational harm, lost relationships, lost business opportunities, interest, attorneys' fees, costs, expenses, and any other form of injury or damage or quantifiable remedy that YOU seek to recover in this lawsuit.

**INTERROGATORY NO. 4.:**

State all facts, with particularity, and IDENTIFY all DOCUMENTS that support YOUR contention, if YOU so contend, that YOU are entitled to exemplary damages, attorneys' fees and costs.

**INTERROGATORY NO. 5.:**

State all facts, with particularity, and IDENTIFY all DOCUMENTS that YOU contend prove, directly or circumstantially, that MGA copied YOUR PROPERTY, including, without limitation, "Toon Teens".

**INTERROGATORY NO. 6.:**

IDENTIFY each COMMUNICATION that YOU have ever made, received, or participated in that referred to, mentioned, or concerned this lawsuit.

**INTERROGATORY NO. 7.:**

IDENTIFY all PERSONS interviewed for the July 18, 2003 Wall Street Journal article.

**INTERROGATORY NO. 8.:**

Describe, with particularity, each error contained in the July 18, 2003 Wall Street Journal article by explaining why and in what way each fact is incorrect.

**INTERROGATORY NO. 9.:**

State, with particularity, when and how MATTEL first learned of BRATZ.

**INTERROGATORY NO. 10.:**

State, with particularity, when and how MATTEL first learned that BRYANT performed work for MGA.

EXHIBIT ___15___

PAGE ___187___

1

## INTERROGATORY NO. 11.:

2        State, with particularity, when and how MATTEL first learned that BRYANT

3   conceived of the BRATZ CONCEPT.

4

5   Dated: February 4, 2005

6                                        DIANA M. TORRES
                                         PAULA E. AMBROSINI
7                                        ALICIA C. MEYER
                                         O'MELVENY & MEYERS LLP
8
9                                        Paula E. Ambrosini,
                                         Attorneys for MGA Entertainment, Inc.
10

11   LA2:746290.2

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                11

EXHIBIT 15

PAGE 188

**PROOF OF SERVICE**

I, Suzanne I. Jimenez, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On February 4, 2005, I served the within document:

**MGA'S FIRST SET OF INTERROGATORIES TO MATTEL, INC.**

☒     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒     by putting a true and correct copy thereof, together with an unsigned copy of this declaration, in a sealed envelope designated by the carrier, with delivery fees paid or provided for, for delivery the same business day to the person(s) listed above. I am readily familiar with this firm's practice for collection and processing of overnight courier correspondence. In the ordinary course of business, such correspondence collected from me would be processed on the same day, with fees thereon fully prepaid.

Michael T. Zeller         **VIA HAND-DELIVERY & MAIL**
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Tel: (213) 443-3000
Fax: (213) 443-3100

Keith Jacoby          **VIA REGULAR MAIL**
Littler Mendelson
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Tel: (310) 553-0308
Fax: (310) 553-5583

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on February 4, 2005, at Los Angeles, California.

*Suzanne I. Jimenez*
Suzanne I. Jimenez

EXHIBIT 15

PAGE 189

**Exhibit 16**

# O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
CENTURY CITY
HONG KONG
LONDON
NEWPORT BEACH

400 South Hope Street
Los Angeles, California 90071-2899

TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407
www.omm.com

NEW YORK
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TOKYO
WASHINGTON, D.C.

OUR FILE NUMBER
0527436-004

September 7, 2007

**VIA HAND DELIVERY**

Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

WRITER'S DIRECT DIAL
(213) 430-6389

WRITER'S E-MAIL ADDRESS
cnguyen@omm.com

Re:   *Bryant v. Mattel, Inc and Consolidated Actions.*
      *Case No. CV 04-09049 SGL (RNBx)*

Dear Mr. Zeller:

Three discs containing Group IV TIFF and JPEG digital files of documents marked with Bates Nos. MGA 0104856 to 0140424, MGA 0868363 to MGA 0868691, and MGA 0868693 to MGA 0868722 are enclosed. As per Mattel's request and pursuant to the agreement between MGA and Mattel, the discs also include Opticon load files.

A disc bearing bates number MGA 0868692 and a disc bearing a replacement image for the image bearing bates number MGA 0863862 are also enclosed.

Pursuant to the January 4, 2005 Protective Order, certain documents have been marked as Confidential - Attorney's Eyes Only. Please do not hesitate to contact me if you have any questions.

Sincerely,

Chris D. Nguyen
for O'MELVENY & MYERS LLP

Enclosures

cc:   Michael Page, Esq. (letter only via facsimile)
      James Spertus, Esq. (letter only via facsimile)

LA2:841350.1

EXHIBIT   16

PAGE   190





EXHIBIT 16

PAGE 191





EXHIBIT 16
PAGE 192



EXHIBIT 16
PAGE 193

# Nationwide Lega., Inc.

**COURT • PROCESS • MESSENGER**

DATE 9/7/07

CONTROL # 18630  021579

www.nationwideasap.com

legal@nationwideasap.com

| | |
|---|---|
| 316 W. 2nd Street, Suite 705   Los Angeles, CA 90012 | (213) 625-9100   (213) 625-9111 |
| 611 Civic Center Drive W.., Suite 204   Santa Ana, CA 92701 | (714) 558-2400   (714) 558-2401 |
| 3637 Ninth Street   Riverside, CA 92501 | (951) 275-0071   (951) 275-0074 |
| 1255 Post Street, Suite 500   San Francisco, CA 94109 | (415) 351-0400   (415) 351-0407 |
| 121 Broadway, Suite 331   San Diego, CA 92101 | (619) 232-7500   (619) 232-7600 |

Firm:

Attorney: C. NGUYEN

Secretary:

Email:

Ref./Billing #: 527436-WY

Telephone:

## SERVICE TYPES

| SPECIAL ☑ | RUSH | HOT | STANDARD/REG | COURT-RUN | SAME DAY ☐ | NEXT DAY ☐ |
|---|---|---|---|---|---|---|

## MESSENGER SERVICES

From: OMM

Address:

City:                    Zip:

Sender:

To: QUINN EMANUEL

Address: 865 S FIGUEROA

City:                    Zip:

Attention:

## COURT SERVICES

Case Number:

Case Name:

Court Address:

☐ Court Filing

☐ Research/Copy

☐ Courtesy Copy

☐ Recording

### DO NOT ADVANCE

Fees Attached  $_____

Advanced Fees $_____

Check Number  _____

## SERVICE OF PROCESS

Company/Person Being Served:

Address:

City:                    Zip:

☐ Office Service

☐ Business

☐ Substituted Service

☐ Residence

Service Deadline

### DO NOT ADVANCE

Fees Attached  $_____

Advanced Fees $_____

Check Number  _____

**TYPE OF DOCUMENTS:**

CV 04-09049 SGL

BRYANT - v - MATTEL

**SPECIAL INSTRUCTIONS:**

Received By:                    Date:        Time:

WHITE-ORIGINAL / YELLOW-BILLING / PINK-TRACKING / GOLD-CLIENT ACCOUNTING FILE

EXHIBIT  16

PAGE  194