**Exhibit 40**

## CONFORMED COPY

FILED

2007 AUG 15  PM 12: 14

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
EASTERN DIVISION

BY: _____

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                         EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12            Plaintiff,

13       v.                                Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15            Defendant.                   **ORDER GRANTING IN PART
                                           MATTEL'S MOTION TO ENFORCE
16                                         THE COURT'S ORDER OF MAY 16,
                                           2007, TO COMPEL MGA TO
17                                         PRODUCE WITNESSES FOR
                                           DEPOSITION PURSUANT TO RULE
18                                         30(b)(6), AND GRANTING REQUEST
                                           FOR SANCTIONS**
19
   CONSOLIDATED WITH
20  MATTEL, INC. v. BRYANT and
   MGA ENTERTAINMENT, INC. v. MATTEL,
21  INC.

22

23

24

25                    I. INTRODUCTION

26       On June 29, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Enforce The Court's

27  Order of May 16, 2007, To Compel MGA To Produce Witnesses For Deposition Pursuant To

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

                                                                        1

8/15                           EXHIBIT __40__

                               PAGE __373__

Rule 30(b)(6), And For Sanctions."[1] On July 9, 2007, MGA Entertainment, Inc. ("MGA") submitted an opposition brief, and on July 12, 2007, Mattel submitted a reply brief. The matter was heard on August 13, 2007. Although the scope of Mattel's motion was broader[2], during the hearing, Mattel requested an order compelling MGA to designate and produce witnesses on Topic Nos. 21, 25, 26, and 34 and imposing sanctions for MGA's alleged non-compliance with the May 16, 2007 Order, particularly with respect to Topic Nos. 25, 26, 34, 39, 40 and 41. Having considered the motion papers and the comments of counsel at the hearing, Mattel's motion is granted in part.

## II. BACKGROUND

On May 16, 2007, the undersigned issued an order granting Mattel's Motion to Compel MGA To Produce Witnesses Pursuant To Rule 30(b)(6) (hereinafter the "May 16, 2007 Order") which provided, in pertinent part:

> 2. MGA shall confirm its designees and the dates of the designees' availability for deposition for all Topics except Topic Nos. 25 and 26 in Mattel's Notice of Deposition of MGA Pursuant to Rule 30(b)(6) dated February 1, 2007 (the "Second Notice") on or before May 22, 2007.

> 3. MGA shall make its designees for all Topics in the Second Notice, except Topics Nos. 25 and 26, available for deposition on or before June 30, 2007.

> 4. The parties shall meet and confer regarding the timing of the depositions on Topic Nos. 25 and 26 of the Second Notice. Such depositions may take place after June 30, 2007.

> 5. All of MGA's objections and/or limitations regarding the Topics in Mattel's Rule 30(b)(6) deposition notices are overruled.

---

[1] Mattel seeks $3,000 in sanctions.

[2] In its opening brief, Mattel focused on Topic Nos. 25, 26, 34, 39, 40 and 41 and requested an order requiring MGA to designate and produce witnesses on all Topics in Mattel's Second Notice of Deposition of MGA. In its reply brief, Mattel requested an order requiring MGA to produce witnesses on Topic Nos. 11, 13, 14, 19, 21-28, 31, 34, 37 and 39-41.

EXHIBIT **40**

PAGE **374**

1    Proctor Decl., Ex. 1. The parties later agreed to extend the May 22, 2007 deadline for designating
2    witnesses to May 29, 2007.

3         After the May 16, 2007 Order was issued MGA designated and offered dates for some
4    Rule 30(b)(6) witnesses. Mattel accepted the dates, however, in the first week of June MGA
5    canceled the depositions of three designees. On June 7 and again on June 15, 2007, Mattel
6    requested that MGA provide new dates for the three designees.

7         The parties met and conferred on June 22, 2007. MGA offered designees and deposition
8    dates for 14 of the outstanding Topics. Although all but one of the dates that MGA proposed
9    were after the June 30, 2007 deadline, Mattel accepted MGA's schedule. MGA did not, however,
10   identify or produce witnesses to testify on Topics 25, 26, 34 and 39-41, which are the subject of
     the instant motion. These Topics are set forth below.

11        Topic 25: YOUR revenues and profits from BRATZ, including without limitation
12            YOUR gross and net profits, and YOUR costs associated therewith.
13        Topic 26: YOUR net worth.
14        Topic 34: Other than those previously filed and served in this ACTION or in
15            which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony,
16            transcripts, declarations, affidavits and other sworn written statements of any
17            other type by or from YOU or made on YOUR behalf that REFER OR RELATE
18            TO BRATZ THAT REFER OR RELATE TO the time period prior to June 30,
19            2001 (regardless of when such testimony or sworn statement was taken, given,
20            signed, made or filed).
21        Topic 39: The preservation, collection, destruction, removal, transfer, loss or
22            impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in
23            connection with the ACTION and/or any DOCUMENTS requested by MATTEL
24            in the ACTION.
25        Topic 40: The preservation, collection, destruction, removal, transfer, loss or
26            impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since
27            January 1, 1999 that REFER OR RELATE TO MATTEL (including without

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 40

PAGE 375

1    limitation any MATTEL product, plan or information) that YOU received in any

2    manner from any PERSON who was at the time an employee of MATTEL or who

3    had previously been an employee of MATTEL.

4    <u>Topic 41</u>:  The testing of or sampling from DOCUMENTS that REFER OR

5    RELATE TO BRATZ or BRYANT, including without limitation such testing or

6    sampling in connection with any ink, paper or chemical analysis performed or

7    attempted to be performed to date, any DOCUMENTS that REFER OR RELATE

8    thereto and all results and reports relating thereto.

9  Mattel's Second Notice of Deposition, dated February 1, 2007, Proctor Decl., Ex. 6.  During the

10  hearing, Mattel also requested an order compelling MGA to designate a witness and schedule a

11  deposition on Topic No. 21, which seeks:

12    <u>Topic No. 21</u>:  YOUR knowledge of, and access to, non-public MATTEL DIVA

13    STARTZ project information and DESIGNS prior to June 30, 2001.

14  Mattel's Second Notice of Deposition, dated February 1, 2007, Proctor Decl., Ex. 6.

15    MGA indicated that Lisa Tonnu would "likely" be its designee on Topic Nos. 25 and 26,

16  but did not offer a date for her deposition because it was awaiting a ruling from Judge Larson

17  regarding the phasing of trials.  MGA also did not designate a witness on Topic Nos. 26, 34 and

18  41 because it was in the process of appealing the May 16, 2007 Order as it pertained to these

19  topics to Judge Larson.[3]  MGA similarly did not designate a witness on Topic No. 40 because it

20  was awaiting a ruling from Judge Larson on its pending motion to dismiss Mattel's counterclaims.

21  MGA's motion to dismiss was based, in part, on Mattel's purported failure to comply with

22  California Code of Civil Procedure §2019.210.  Apparently, MGA thought that the need for

23  discovery on Topic No. 40 might be obviated if it prevailed on its motion to dismiss.

24

25

26    _____

27    [3]  MGA filed its Objection to the May 16, 2007 Order on May 31, 2007.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __40__

PAGE __376__

1     MGA also did not designate a witness on the entirety of Topic No. 39. Earlier in June

2  MGA produced Kenneth Lockhart to testify on Topic No. 39. At the deposition, however,

3  Lockhart testified that he had no knowledge regarding MGA's collection of non-electronic

4  documents, a subject within the scope of Topic No. 39. Mattel asked MGA to identify another

5  witness to testify regarding the collection of non-electronic documents. MGA apparently refused

6  to do so because it believed Mattel had agreed to limit Topic No. 39 to exclude that issue.

7     By the end of June 2007, MGA had made only two Rule 30(b)(6) witnesses available for

8  deposition pursuant to the May 16, 2007 Order: Kenneth Lockhart and Paula Garcia. Mattel's

9  Motion at p.3.[4]

10     On June 26, 2007, Judge Larson issued a Minute Order scheduling MGA's appeal of the

11  May 16, 2007 Order for hearing on July 2, 2007. On June 27, 2007, Judge Larson issued an order

12  denying MGA's motion to dismiss, and Mattel renewed its request that MGA produce a witness

13  to testify on Topic No. 40. The next day MGA responded that it intended to identify a designee

14  and dates for a deposition by the end of the week.

15     On June 29, 2007, Mattel filed the instant motion. On July 5, 2007, Judge Larson issued

16  an order affirming the May 16, 2007 Order. That same day MGA confirmed the date and its

17  designation of a witness on Topic Nos. 39 and 40. MGA also confirmed that it would produce

18  witnesses on Topic Nos. 34 and 41. On July 9, 2007, MGA provided designations and dates for

19  deposition for Topic Nos. 34 and 41.

20     In this motion, Mattel contends that MGA has refused to designate and/or to produce

21  witnesses on Topic Nos. 21, 25, 26, 34, 39, 40 and 41, even though the May 16, 2007 Order

22  required it to make all of its Rule 30(b)(6) witnesses (except on Topic Nos. 25 and 26) available

23  by the end of June. Mattel also contends that MGA has refused to meet and confer in good faith

24

25

26    [4] A third deposition was scheduled for June, however, it did not take place. According to Mattel, MGA unilaterally cancelled the deposition the day before it was scheduled to commence. Mattel Motion at p.4. According to MGA, Mattel agreed to defer the deposition.

27

28

EXHIBIT __40__

PAGE __377__

1  to schedule the deposition of witnesses on Topic Nos. 25 and 26, in violation of the May 16, 2007

2  Order. Lastly, Mattel contends that MGA's stated justifications for refusing to comply with the

3  May 16, 2007 Order all lack merit.

4       MGA contends that Mattel's motion is premature and unnecessary, and is now moot.

5  MGA explains that after the June 22, 2007 meet and confer, there were only four topics open:

6  "one of which (40) was subject to a ruling anticipated to be coming from Judge Larson any day

7  and which was received before Mattel's motion was filed; two of which (34 and 41) were the

8  express subject of an appeal pending before Judge Larson; and the last was simply the result of an

9  honest disagreement between the parties as to the actual intended scope of the topic (39)."

10  MGA's Opposition at p.2. MGA denies ever refusing to provide witnesses on these topics, and

11  instead, asserts that it was entitled to receive Judge Larson's rulings before scheduling

12  depositions. MGA further contends that it identified witnesses and deposition dates soon after

13  Judge Larson issued his orders.

14                                    III. DISCUSSION

15  **Topic Nos. 25 and 26**

16       The May 16, 2007 Order required the parties to meet and confer "regarding the timing of

17  the depositions on Topic Nos. 25 and 26." Proctor Decl., Ex. 1. During the June 22, 2007 meet

18  and confer session, MGA indicated that it was likely to designate Lisa Tonnu for these topics;

19  however, it did not offer a date for the deposition because it was awaiting Judge Larson's ruling

20  on the phasing of trials.

21       Mattel contends that MGA's purported justification for failing to schedule the depositions

22  is without merit because discovery in this case has not been phased. Further, Mattel contends that

23  depositions on these two topics cannot be delayed any longer because under the current schedule,

24  expert reports are due in late August.

25       MGA contends that it fulfilled its meet and confer obligations regarding Topic Nos. 25

26  and 26 and took the position that the depositions shouldn't be scheduled until Judge Larson issued

27  a ruling on the phasing of trials.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT ___40___

PAGE ___378___

MGA is not technically in violation of the May 16, 2007 Order with respect to Topic Nos. 25 and 26 because it fulfilled its obligation to meet and confer regarding the timing of the depositions. Therefore, Mattel's motion to enforce the May 16, 2007 Order and request for sanctions are denied as to Topic Nos. 25 and 26. Nevertheless, MGA's purported justification for delaying scheduling depositions on Topic Nos. 25 and 26 is no longer valid in light of Judge Larson's ruling on the phasing of trials and Mattel is entitled to a date certain for the depositions.

**Topic No. 39**

The May 16, 2007 Order required MGA to designate a witness on Topic No. 39 by May 22, 2007, and to produce its designee for deposition by June 30, 2007. MGA met these deadlines by designating Kenneth Lockhart on Topic No. 39 and producing him for deposition on June 14 and 15, 2007. Mr. Lockhart, however, was unable to testify regarding the collection of non-electronic documents. During the parties' subsequent meet and confer, MGA acknowledged that Mr. Lockhart was not proffered regarding the collection of non-electronic documents, but claimed that Mattel had previously agreed to limit Topic No. 39 to electronic documents.

Mattel denies ever agreeing to so limit Topic No. 39 and contends that "it is preposterous to think that Mattel would agree to such a limitation." Mattel's Motion at p.10. Mattel points out that the Topic clearly encompasses both electronic and non-electronic documents, and that the May 16, 2007 Order compels MGA to produce a witness on the Topic as written.

In contrast, MGA contends that it designated Mr. Lockhart, Chief Information Officer, on Topic No. 39 "based on its good faith belief that the topic was intended to cover the retention of electronic documents and other 'digital information.'" MGA's Opposition at p.6. Nevertheless, on July 5, 2007, MGA designated Lisa Tonnu to testify on Topic No. 39 and indicated that she was available on July 19, 2007.

MGA is in substantial compliance with the May 16, 2007 Order, having produced Mr. Lockhart by the June 30th deadline and by offering Lisa Tonnu to testify regarding the remainder of Topic No. 39 after the apparent misunderstanding came to light. Therefore, Mattel's motion to enforce the May 16, 2007 Order is denied with respect to Topic No. 39.

//

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 40
PAGE 379

**Topic No. 40**

The May 16, 2007 Order required MGA to designate a witness on Topic No. 40 by May 22, 2007, and to make the witness available for deposition no later than June 30, 2007. At the June 22, 2007 meet and confer session, MGA did not designate or produce a witness on Topic No. 40 because it was awaiting the resolution of its motion to dismiss. On June 27, 2007, Judge Larson denied MGA's motion to dismiss and held that Mattel had already complied with §2019.210. The next day MGA notified Mattel that it would identify a witness on Topic No. 40 and potential dates for deposition by the end of the week. On July 5, 2007, MGA confirmed that Lisa Tonnu would testify on Topic No. 40 and would be available for deposition on July 19, 2007.

Mattel contends that MGA violated the May 16, 2007 without any legitimate basis because Topic No. 40 was not the subject of any appeal. In contrast, MGA contends that it completed its designation and provided available dates promptly after Judge Larson issued his order.

MGA clearly violated the May 16, 2007 by failing to identify a witness to testify on Topic No. 40 and to make the witness available for deposition by June 30th. MGA's non-compliance was willful and inexcusable. MGA could have but failed to request any extension of time to designate and produce a witness on Topic No. 40. MGA has not cited any precedent that excuses a litigant from complying with deadlines imposed by a discovery order, without leave of court, simply because the claim to which the discovery is directed is the subject of a pending motion to dismiss. Mattel's motion is granted as to Topic No. 40 and sanctions are warranted pursuant to Rule 37(b)(2), Fed.R.Civ.P.

**Topic Nos. 34 and 41**

The May 16, 2007 Order required MGA to designate a witness on Topic Nos. 34 and 41 by May 22, 2007 and to produce its designee(s) for deposition by June 30, 2007. At the June 22, 2007 meet and confer session, MGA did not offer any designees or deposition dates for Topic Nos. 34 and 41 because it was in the process of appealing the May 16, 2007 Order to Judge Larson with respect to these topics.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT 40

PAGE 380

On May 31, 2007, MGA appealed the May 16, 2007 Order compelling it to produce designees on Topic Nos. 34 and 41.[5]  MGA sought a stay of the May 16, 2007 Order as to these Topics pending appeal.  On June 21, 2007, the Discovery Master denied the requested stay.  On June 22, 2007, MGA filed an "emergency *ex parte*" application with Judge Larson seeking review of the June 21, 2007 Order denying the requested stay.  On June 26, 2007, Judge Larson issued a Minute Order scheduling MGA's appeal of the May 16, 2007 Order for hearing on July 2, 2007.  A few days after the hearing, Judge Larson issued an order upholding the May 16, 2007 Order.  That same day MGA confirmed that it would produce witnesses on Topic Nos. 34 and 41.  On July 9, 2007, MGA identified Renato Dionisio to testify on Topic No. 34 and indicated that the witness was available on any one of the following days:  August 21-23 or 28-30.  MGA identified Lisa Tonnu to testify on Topic No. 41 and indicated that she was available to testify on July 19.

Mattel contends that MGA willfully failed to comply with the May 16, 2007 Order, even after its request for a stay was denied.  MGA contends that the instant motion was unnecessary and a waste of judicial resources because Mattel knew before it filed the motion that Judge Larson had moved up the hearing on MGA's appeals and a ruling would be forthcoming.

MGA violated the May 16, 2007 Order by failing to designate and produce a witness to testify on Topic Nos. 34 and 41 by the June 30th deadline.  The violation was particularly egregious because MGA's request for a stay was denied on June 21, 2007, which still left a few days for MGA to at least designate a witness and propose dates for a deposition, even if the deposition was scheduled beyond the June 30th deadline.  Instead, MGA chose to persist in its refusal to comply with the May 16, 2007 Order and gambled that Judge Larson would grant it "emergency" *ex parte* relief.  MGA's clear and flagrant violation of a court order warrants sanctions under Rule 37(b)(2), Fed.R.Civ.P.

## IV. CONCLUSION

For the reasons set forth above, Mattel's motion is granted in part and denied in part.  To the extent MGA has not already done so, MGA shall promptly confirm its designees on Topic

---

[5] MGA also appealed the May 16, 2007 Order with respect to Topic No. 26.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT __40__

PAGE __381__

1  Nos. 21, 25, 26 and 34 by August 22, 2007, and make them available for deposition no later than

2  September 27, 2007.

3      Mattel's request for sanctions is granted based upon MGA's willful violation of the May

4  16, 2007 Order by failing to identify witnesses and dates for deposition for Topic Nos. 34, 40 and

5  41 by the designated deadlines.  MGA shall reimburse Mattel in the amount of $1,000 in

6  monetary sanctions pursuant to Rule 37(b)(2), Fed.R.Civ.P., no later than August 22, 2007.

7      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

8  Master, Mattel shall file this Order with the Clerk of Court forthwith.

9

10  Dated: August 14, 2007

         HON. EDWARD A. INFANTE (Ret.)

11           Discovery Master

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT __40__

PAGE __382__

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 14, 2007, I served the attached ORDER GRANTING IN PART MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF MAY 16, 2007, TO COMPEL MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(b)(6), AND GRANTING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 14, 2007, at San Francisco, California.

_Sandra Chan_
Sandra Chan

EXHIBIT    40

PAGE    383

# Exhibit 41

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California  94111
Telephone:    (415) 774-2611
Facsimile:    (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>　　　　Defendant. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; TO OVERRULE PURPORTEDLY IMPROPER INSTRUCTIONS; AND FOR SANCTIONS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

1-9

EXHIBIT 41

PAGE 384

## I. INTRODUCTION

On December 5, Mattel, Inc. ("Mattel") submitted a "Motion to (1) Enforce Court's Discovery Orders and to Compel; (2) to Overrule Improper Instructions; and (3) for Sanctions." Mattel's motion challenges the sufficiency of the testimony provided by four of MGA Entertainment Inc.'s Rule 30(b)(6) witnesses, Lisa Tonnu, Kenneth Lockhart, Rebecca Harris, and Spencer Woodman, on sixteen separate topics identified in Mattel's Second Notice of Deposition of MGA. MGA submitted an opposition on December 18, 2007. Mattel submitted a reply on December 26, 2007. The matter was heard on January 3, 2008. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is granted in part.

## II. BACKGROUND

On May 16, 2007, MGA was ordered to produce Rule 30(b)(6) designees for all topics identified in Mattel's Second Notice of Deposition of MGA, except Topic Nos. 25 and 26, on or before June 30, 2007. Mattel's Second Notice of Deposition includes many topics relevant to the case, including, *inter alia*, the development of Bratz before it was made available for purchase; when and whom MGA first offered Bratz for sale; who first manufactured, shipped and distributed Bratz; Bratz revenues and profits; MGA's access to Mattel's earlier DIVA STARZ project that allegedly had elements which subsequently appeared in Bratz; the identity of persons who worked on Bratz and payments made to them; fee and indemnification agreements; MGA's testing and handling of original Bratz drawings; MGA's sworn statements pertaining to Bratz's creation and development; and MGA's evidence preservation and collection. On July 2, 2007, the district court rejected MGA's objections to the May 16, 2007 Order.

MGA designated four different witnesses to testify on the topics identified in Mattel's Second Notice of Deposition of MGA. First, MGA designated Kenneth Lockhart to testify on Topic Nos. 38, 39 and 42. He testified on June 14-15, 2007.

Second, MGA designated Lisa Tonnu to testify on Topic Nos. 24-25, 31, 37, 39 (in part), 40 and 41. She testified on July 19, 2007. In the meantime, Mattel moved for an order compelling MGA to produce witnesses for deposition and sanctions because MGA did not

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 41

PAGE 385

1   produce witnesses on certain topics as required by the May 16, 2007 Order. On August 14, 2007,

2   Mattel's motion was granted in part and denied in part and MGA was ordered, once again, to

3   produce witnesses to testify on several topics. On September 24-25, 2007, Mattel deposed Ms.

4   Tonnu further on Topic Nos. 21, 24-26, 31, 39, 40 and 41.

5          Third, MGA designated Rebecca Harris to testify on Topic Nos. 11, 13, 14, 19, 22-23 and

6   27-28. Ms. Harris' deposition was scheduled, but unilaterally cancelled by MGA, on two

7   different occasions. MGA ultimately produced Ms. Harris on July 20, 2007.

8          Fourth, MGA designated Spencer Woodman to testify on Topic No. 34. He testified on

9   October 9, 2007.

10          In September of 2007, the parties exchanged several meet and confer letters regarding

11   purported deficiencies in the witnesses' depositions. In mid October, MGA notified Mattel that it

12   had retained new counsel who would be responding to Mattel's letters. After a month-long stay

13   that MGA obtained as a result of its substitution of counsel, the parties met and conferred on

14   November 16, 2007 and again on November 21, 2007. MGA offered to produce Ms. Tonnu

15   again, but only on some of the topics for which she had been designated previously, and only

16   during the second week of January 2008. The parties continued to exchange letters; however,

17   they were apparently unable to resolve any issues before Mattel filed the instant motion on

18   December 5, 2007.

19          Mattel essentially contends that MGA's witnesses were not sufficiently knowledgeable to

20   provide complete testimony on the 30(b)(6) topics at issue, and furthermore, that MGA's counsel

21   obstructed the depositions by making improper objections and instructing witnesses not to

22   answer. Accordingly, Mattel seeks the following eight categories of relief: (1) an order enforcing

23   the May 16, 2007 and August 14, 2007 Orders and compelling MGA to comply therewith by

24   designating and producing fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21-25,

25   27, 28, 31, 34 and 39-41 in Mattel's Second Notice of Deposition of MGA on dates of Mattel's

26   selection; (2) an order overruling each of the purportedly improper instructions not to answer

27   questions interposed at the deposition of MGA designees Spencer Woodman and compelling

28   Woodman or other such person selected by MGA as its designee to provide complete testimony

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT __41__

PAGE __386__

1  on Topic No. 34; (3) an order compelling MGA to produce documents that MGA designee

2  Kenneth Lockhart identified during his June 14, 2007 deposition as documents which he reviewed

3  and relied upon to refresh his recollection in preparation for his deposition; (4) an order

4  overruling each of the purportedly improper instructions not to answer questions interposed at the

5  deposition of MGA designee Lisa Tonnu; (5) an order reopening the deposition of MGA designee

6  Lisa Tonnu based on a purported "complete reversal of testimony" made through written

7  "changes" to her deposition transcript; (6) an order compelling Rebecca Harris to sit for the

8  completion of her deposition and/or compelling such person selected by MGA as its designee to

9  complete the testimony on topics for which Harris was previously designated; (7) an order

10  imposing monetary sanctions ($10,000) for MGA's alleged willful violations of the May 16, 2007

11  and August 14, 2007 Orders, for MGA's allegedly improper instructions not to answer deposition

12  questions and for MGA's alleged improper coaching, harassing and obstructionist conduct at the

13  September 24-25, 2007 deposition of Lisa Tonnu and at the October 9, 2007 deposition of

14  Spencer Woodman; and (8) a report and recommendation to Judge Stephen G. Larson that

15  recommends the imposition of preclusion sanctions, that certain facts related to the topics

16  compelled be deemed admitted, and/or that MGA be found in contempt for MGA's allegedly

17  willful and repeated violations of the Orders.

18      MGA opposes the motion, contending that it substantially complied with its obligation to

19  produce witnesses knowledgeable on each of the topics at issue and that Mattel has had a full and

20  fair opportunity to conduct its examinations.  According to MGA's calculations, the four

21  witnesses testified intelligently for nearly 36 hours over five deposition days.  MGA also explains

22  that its counsel instructed witnesses not to answer two types of questions, namely questions that

23  invaded MGA's work product protection or attorney-client privilege, and questions that exceeded

24  the scope of Topic No. 34.  MGA also contends that Mattel is not entitled to additional time to

25  depose Ms. Harris in particular because Mattel's counsel wasted time and badgered the witness.

26  MGA acknowledges, however, that Ms. Tonnu did change her testimony and that there are some

27  deficiencies in its witnesses' testimony that justify additional deposition time.  Indeed, MGA

28  points out that prior to the filing of the instant motion, MGA agreed to produce witnesses to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 41

PAGE 387

provide additional testimony on Topic Nos. 21, 24, 25, 31, 34 and 40. Further, after the filing of the motion, MGA agreed to produce witnesses to provide additional testimony on Topic No. 39. MGA contends that Mattel's motion to compel additional testimony with respect to topics on which MGA has already agreed to provide additional testimony is premature and should be denied.

### III. STANDARDS

Depositions of a corporation are governed by Rule 30(b)(6) of the Federal Rules of Civil Procedure, which provides in pertinent part that:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . . The persons designated must testify about information known or reasonably available to the organization.

Fed.R.Civ.P. 30(b)(6) (effective Dec. 1, 2007). Rule 30 also provides that the examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence. Fed.R.Civ.P. 30(c)(1). Further, "[a]n objection at the time of the examination-- whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition--must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." Fed.R.Civ.P. 30(c)(2). "An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Id.

Rule 30(d)(1), Fed.R.Civ.P., provides that a deposition is limited to one day of seven hours, unless otherwise stipulated or ordered by the court. "The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another

1   person, or any other circumstance impedes or delays the examination."[1]  Fed.R.Civ.P. 30(d)(1).

2   Furthermore, sanctions may be imposed --including the reasonable expenses and attorney's fees

3   incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the

4   deponent.  Fed.R.Civ.P. 30(d)(2).

5                                                     IV. DISCUSSION

6   A. Mattel's Request for Relief No. 1:  Mattel seeks an order enforcing the May 16, 2007 and
    August 14, 2007 Orders and compelling MGA to comply therewith by designating and producing
7   fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21-25, 27, 28, 31, 34 and 39-41 in
    Mattel's Second Notice of Deposition of MGA on dates of Mattel's selection.

8
            Mattel contends that MGA's witnesses were inadequately prepared and failed to provide
9
    sufficient testimony on sixteen of the topics identified in the Second Notice of Deposition of
10
    MGA.  Each of the sixteen 30(b)(6) topics at issue is addressed separately below.
11
            **Topic No. 11:**  The exhibition, or proposed, offered, contemplated or requested exhibition,
12       of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including
         without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed,
13       offered for sale, pitched, shown or disclosed to, or otherwise discussed with or
         communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that
14       REFER OR RELATE thereto.

15          Mattel contends that Ms. Harris lacked sufficient knowledge on this topic.  In particular,

16   Mattel contends that Ms. Harris could not confirm what form of Bratz or Bratz design ("sculpts")

17   was first exhibited to third parties prior to June 30, 2001.

18          MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

19   this topic.  More specifically, MGA contends that Ms. Harris testified about the first exhibition,

20   sale and distribution of Bratz, including presentations to Target stores, and the first sale,

21   distribution and shipment of Bratz under an agreement with Bandai in Spain.  MGA contends that

22   it is not reasonable to expect MGA to have investigated specifically what type of Bratz "sculpts"

23   were shown at particular exhibitions.

24   ───────────────
          [1] Rule 26(b)(2), Fed.R.Civ.P., provides that the court shall limit the frequency or extent of use of the
25   discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or
     is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party
26   seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the
     burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case,
27   the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the
     importance of the proposed discovery in resolving the issues."  Fed.R.Civ.P. 26(b)(2).

28                                                                                                              6

     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                          EXHIBIT __41__

                                                                          PAGE __389__

1    Furthermore, MGA points out that Mattel has taken the deposition of MGA HK on the

2    subject of the initial manufacture of Bratz.  More specifically, MGA contends that Mattel took the

3    deposition of the head of MGA's Hong Kong operations, Edmond Lee, for two full days, and

4    questioned him about the first manufacture of Bratz by Early Light.  Therefore, MGA contends

5    that Mattel has had a full and fair opportunity to examine MGA regarding the first manufacture of

6    Bratz.

7    A review of the transcript confirms that Ms. Harris was not reasonably prepared for her

8    deposition, especially in light of the importance of the timing of the creation of Bratz.  For

9    example, she could not specify what was shown to retailers during the year 2000.  She testified

10   that MGA used "boards" (i.e. sketched drawings) to show retailers Bratz during the year 2000

11   based upon a telephone conversation she had with Paula Garcia during a break.  Mattel is entitled

12   to delve into more detail about these "boards," and such information should be reasonably

13   available to MGA.  Ms. Harris testified that Julie Chemo likely attended presentations during the

14   year 2000.  Therefore, Mattel is entitled to an order compelling MGA to produce a witness to

15   provide complete testimony on Topic No. 11.

16   **Topic No. 13:**  COMMUNICATIONS prior to June 30, 2001 between YOU and any
     manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or potential
17   manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE TO BRATZ or
     any BRATZ DESIGN.

18   Mattel contends that Ms. Harris' testimony was wholly inadequate.  In particular, Mattel

19   contends that Ms. Harris had no knowledge concerning early MGA communications with Bandai,

20   which distributed Bratz in the first market in which it was allegedly sold.  Ms. Harris did not have

21   any knowledge or information as to when MGA and Bandai first had any type of contact or

22   communication regarding Bratz.  Similarly, Ms. Harris did not have any knowledge or

23   information as to when MGA first had contact with a company called J.H.N. regarding the sale of

24   Bratz in Australia.

25   MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

26   Topic No. 13, as described above in connection with Topic No. 11.  Accordingly, MGA objects to

27   any further examination on Topic No. 13.

28   A review of the deposition transcript confirms that Ms. Harris provided significant

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT  41

PAGE  390

testimony on Topic No. 13.  However, as Mattel points out, her testimony lacked many details relevant to when Bratz was developed.  For example, Ms. Harris was unable to testify as to any communications or negotiations between MGA and Bandai leading up to the execution of written agreements.  Indeed, Ms. Harris did not know when MGA and Bandia first had any contact regarding Bratz.  Furthermore, MGA did not conduct a reasonable investigation to prepare Ms. Harris for Topic No. 13.  Among other things, MGA made no effort to determine whether the former MGA HK employee known to have been directly involved in the first discussions with Bandai (Martin Hitch) had retained any documents responsive to this topic.  Nor did Ms. Harris speak to Isaac Larian and Jim Olmstead, both of whom authored emails referencing existing distributorship deals in Europe and Australia.  Therefore, Ms. Harris did not fulfill MGA's duty to produce a witness to testify on information known or reasonably available to MGA.  Mattel is entitled to an order compelling MGA to produce a witness to provide complete testimony on Topic No. 13.

     **Topic No. 14:**  When and where BRATZ was first manufactured, shipped, distributed and sold, and the IDENTITIES and roles of PERSONS involved therein.

     Mattel contends that Ms. Harris did not have any knowledge regarding the identity or role of any person who was involved in the first manufacture of Bratz dolls by Early Light.  Mattel also contends that Ms. Harris had no knowledge as to the date when manufacturing began for the first Bratz dolls.  Furthermore, Mattel contends that MGA should not be permitted to rely on the testimony given by MGA HK's corporate designee to evade providing testimony on this topic because that designee's testimony was deficient.

     MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on Topic No. 14, as described above in connection with Topic No. 11.  Accordingly, MGA objects to any further examination on Topic No. 14.

     A review of the deposition transcript confirms that Ms. Harris did not have any knowledge regarding the identity or role of any person at MGA who first had contact with Early Light, the first manufacturer of Bratz dolls.  Nor did she know the identity of any person at MGA or at Early Light who was involved in the first manufacture of Bratz dolls.  Furthermore, Ms. Harris stated that she did not undertake any investigation to uncover these facts.  Ms. Harris also had no

1   information or knowledge regarding the date when manufacturing began for the first Bratz dolls.

2   Ms. Harris testified that personnel in MGA's Hong Kong affiliate coordinated with Early Light.

3   Thus, the information sought by Mattel is reasonably available to MGA. That Mattel also seeks

4   testimony from MGA's Hong Kong affiliate does not excuse MGA from producing a witness

5   sufficiently knowledgeable on Topic No. 14. Therefore, Mattel is entitled to an order compelling

6   MGA to produce a witness to provide complete testimony on Topic No. 14.

7       **Topic No. 21:** YOUR knowledge of, and access to, non-public MATTEL DIVA STARZ
        project information and DESIGNS prior to June 30, 2001.

8       Mattel contends that Ms. Tonnu was not sufficiently prepared to provide testimony, as

9   evidenced by the fact that two other MGA employees, Paula Garcia and Margaret Leahy, testified

10  that they had "access" to non-public DIVA STARZ information.

11      MGA contends that Ms. Tonnu prepared for her deposition by speaking with five MGA

12  employees, including Paula Garcia. Based upon that investigation, Ms. Harris testified that the

13  five employees did not work on DIVA STARZ. MGA explains that Ms. Garcia merely testified

14  that when she was at Mattel she often spoke to co-workers at Mattel who happened to work on the

15  DIVA STARZ, that those co-workers may have mentioned the existence of the project and that

16  they told Ms. Garcia it was confidential. MGA contends that Ms. Garcia's testimony does not

17  establish "access to" DIVA STARZ information, but the opposite -- that the employees did not

18  share details with Ms. Garcia and told her the project was confidential. MGA acknowledges,

19  however, that Ms. Garcia testified that on one occasion she saw a sketch of a DIVA STARZ

20  character.

21      Nevertheless, MGA represents that during the meet and confer process MGA designated

22  Ms. Tonnu to provide further testimony on Topic No. 21, and that she will be deposed on January

23  9, 2008. MGA represents that Ms. Tonnu will be prepared to testify whether each former Mattel

24  employee now employed by MGA had "access to" DIVA STARZ information while employed by

    Mattel.

25      A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

26  prepared to testify on Topic No. 21. Ms. Tonnu did not know what DIVA STARZ was.

27  Furthermore, she was not sufficiently informed of the identities of the MGA employees and

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                                                    9

EXHIBIT __41__

PAGE __392__

1   contractors who had access to or worked on DIVA STARZ. For example, Ms. Tonnu was
2   uninformed of Ms. Garcia's and Ms. Leahy's knowledge and access to DIVA STARZ
3   information while employed by Mattel. Such information was known or reasonably available to
4   MGA. Therefore, Mattel is entitled to an order compelling MGA to produce a knowledgeable
5   witness to provide complete testimony on Topic No. 21.

6       **Topic No. 24**: Any indemnification and fee arrangement that YOU and/or BRYANT has
7   sought proposed, requested or obtained in connection with this ACTION.

8       Mattel contends that MGA's designee, Lisa Tonnu, was not sufficiently prepared to
9   testify, despite having been produced twice to testify on this topic. For example, Mattel points
10  out that Ms. Tonnu did not know why MGA agreed to pay Carter Bryant's attorneys' fees or how
11  much MGA had paid or whether Littler Mendelson's fees had been paid in full. Mattel's Motion
12  at pp. 14-15. Furthermore, Mattel points out that Ms. Tonnu did not make any effort to find out
13  the answers to these questions.

14      MGA contends that Ms. Tonnu substantially discharged MGA's obligation to provide
15  testimony in response to this topic. MGA contends that Ms. Tonnu reviewed responsive
16  documents and was able to identify the agreements in her deposition. Further, MGA contends
17  that Ms. Tonnu spoke to MGA's in-house counsel about the agreements and was able to identify
18  the individuals involved in the negotiations of those agreements.

19      MGA acknowledges, however, that Ms. Tonnu was not able to testify regarding the
20  specifics of those negotiations or the terms of those agreements. MGA represents that prior to the
21  filing of this motion, it designated in-house counsel Sam Khare to provide additional testimony on
    this topic and that Mattel will depose him on January 8, 2008.

22      A review of the deposition transcript confirms that Ms. Tonnu was not prepared to testify
23  as to information known or reasonably available to MGA. For example, Ms. Tonnu did not know
24  why MGA agreed to pay Bryant's fees, did not know how much MGA had paid in fees, and did
25  not know whether MGA had paid Littler Mendelson's fees in full. Accordingly, Mattel is entitled
26  to an order compelling MGA to produce a knowledgeable witness to provide complete testimony
27  on Topic No. 24.

28

EXHIBIT _41_

PAGE _393_

1    **Topic No. 25:**  YOUR revenues and profits from BRATZ, including without limitation, YOUR gross and net profits, and YOUR costs associated therewith.

2       Mattel contends that Ms. Tonnu lacked the most basic information called for by this topic.

3    For example, Mattel contends that Ms. Tonnu testified that: she did not recall nor could she

4    provide an estimate of how much distribution revenue MGA derived from the Bratz brand

5    between 2001 and the end of 2006; she did not know and could not provide a best estimate for the

6    episodic costs or production costs associated with the distribution revenue; she did not know who

7    in the company could provide this information; she did not know and could not provide a range

8    for how much licensing revenue MGA had received for licensing anything associated with the

9    Bratz brand between 2001 and the end of 2006; she did not know and could not estimate how

10   much revenue the Bratz movie generated; she did not know how much revenue MGA had earned

11   from the Bratz brand; and she did not know how much profit MGA had generated from the Bratz

12   brand.

13      MGA contends that it substantially discharged its obligation to provide testimony on this

14   topic.  More specifically, MGA contends that Ms. Tonnu testified with the aid of Exhibit 660, a

15   143-page report summarizing the units sold from 2001 to 2006 organized by "stock-keeping-unit"

16   or "SKU."  MGA contends that Ms. Tonnu prepared for her deposition by speaking with MGA's

17   Director of Finance, Anisse Evans, regarding Exhibit 660.

18      In the meet and confer process, MGA's counsel offered to provide Mattel with source

19   information from which the profitability of Bratz products at the SKU level could be derived and

20   to produce Ms. Tonnu for follow-up testimony regarding that source financial information so that

21   Mattel's experts would be in a position to draw their own conclusions and opinions as to MGA's

22   profits from Bratz.  MGA represents that Mattel has agreed to depose Tonnu on this topic on

23   January 9, 2008.  MGA also represents that it has produced more than 27,700 pages of source

24   financial information that will be the "starting point" from which MGA's and Mattel's experts

25   will analyze the profitability of Bratz products.  MGA represents that Ms. Tonnu will be prepared

26   to discuss the source financial information produced to Mattel at her continued deposition.

27      A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

28   prepared to provide testimony on Topic No. 25.  Ms. Tonnu could not identify, generally or by

11

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _41_

PAGE _394_

1   product, Bratz revenues, costs, or gross or net profits. Furthermore, MGA has failed to provide

2   any explanation for why Ms. Tonnu was not educated on the source financial information before

3   her deposition. Accordingly, Mattel is entitled to an order compelling MGA to produce a

4   knowledgeable witness to provide complete testimony on Topic No. 25.

5       **Topic No. 27:** The payment of money or anything of value that YOU have made or
        offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought or
6       received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s) and
        reasons therefore.

7

8       Ms. Cloonan was Carter Bryant's roommate at some point. Bryant testified that he

9   showed her early drawings prior to showing them to MGA. She is not and never has been an

10  employee of MGA.

11      Mattel contends that Ms. Harris' testimony was incomplete because she only searched for

12  evidence of payment by reviewing vendor files and MGA's electronic purchase order files, and

13  did not review the individual documents within each account payable vendor file. Mattel also

14  contends that Ms. Harris was not sufficiently prepared because she had no knowledge or

    information as to who was paying her legal fees in this case.

15      MGA contends that it discharged its obligation to testify on Topic No. 27, emphasizing

16  that Ms. Harris unequivocally represented on behalf of MGA that MGA made no payments to,

17  had no agreements with and had no communications with Elise Cloonan. Furthermore, MGA

18  points out that Mattel took the deposition of Elise Cloonan on December 14, 2007, and she

19  confirmed that she had received no payments from and had no communications with MGA.

20      A review of the transcript confirms that Ms. Harris' preparation for and testimony

21  regarding Topic No. 27 was adequate. Furthermore, the burden and expense of conducting a

22  deposition on this topic substantially outweigh the potential relevance of the testimony sought.

23  Mattel's motion is denied with respect to Topic No. 27.

24      **Topic No. 28:** COMMUNICATIONS between YOU and Elise Cloonan that REFER OR
        RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including
25      DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

26      Mattel contends that Ms. Harris's testimony was insufficient because she admitted she did

27  not have any knowledge or information as to what systems or hard drives in MGA were searched

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT __41__

PAGE __395__

1  for e-mails referencing Elise Cloonan.

2  MGA contends that Mattel is not entitled to further examination on Topic No. 28 because

3  Ms. Harris substantially discharged MGA's obligation to testify on the topic, as described above

4  in reference to Topic No. 27 above.

5  A review of the transcript confirms that Ms. Harris' preparation for and testimony

6  regarding Topic No. 28 was adequate. Furthermore, the burden and expense of conducting a

7  deposition on this topic substantially outweigh the potential relevance of the testimony sought.

8  Mattel's motion is denied with respect to Topic No. 28.

9  **Topic No. 31:** The IDENTITY of each PERSON who, at any time since January 1, 1998, has performed any work or services for, by or on behalf of YOU while such PERSON was employed by MATTEL, the nature and timing of each such PERSON's work or services

10  and the amount(s) paid by YOU to each such PERSON.

11  Mattel contends that the first time MGA produced Ms. Tonnu to testify, she lacked any

12  personal knowledge regarding this topic and that MGA failed to educate her properly on the topic.

13  Ms. Tonnu testified that she spoke to an accounts payable clerk, Ms. Brooks, who had "a list of

14  vendors and the dates in which they were either employed or freelancing with Mattel, and she

15  cross-referenced that in her research." Tonnu Tr. at 147:5-148:20. Mattel points out, however,

16  that Ms. Tonnu testified that she did not know who prepared the list; did not see the criteria used

17  to prepare the list; did not know who the vendors or freelance people were on the list; and did not

18  know whether the list included all former Mattel employees who were working at MGA. MGA

19  produced Ms. Tonnu for a second time regarding Topic No. 31, however, Mattel contends that she

20  was still unprepared.

21  MGA contends that it has substantially discharged its obligation to provide testimony on

22  this topic. MGA explains that Ms. Tonnu testified on this topic based on a review of MGA

23  business records. MGA explains that to prepare for the deposition, it prepared a list of MGA

24  employees who were former Mattel employees, including the dates each person was employed by

25  Mattel. Next, Ms. Brooks searched MGA's accounting records reflecting payments to outside

26  vendors for any evidence of a payment to a former Mattel employee on the list during the period

27  of that person's Mattel employment, or with respect to work or services performed during that

28  period. MGA contends that Ms. Tonnu testified about this search and the results of the search

13

EXHIBIT 41

PAGE 396

1   leading to the identification of three instances of payments to former Mattel employees while the
2   employee was still at Mattel.

3   Nevertheless, MGA represents that prior to the filing of this motion, it designated Ms.
4   Tonnu to provide additional testimony on this topic. Specifically, MGA is prepared to produce
5   Ms. Tonnu to testify regarding whether former Mattel employees may have performed work or
6   services for MGA during their employment with Mattel without being paid for those services.
7   Ms. Tonnu's deposition is scheduled for January 9, 2008.

8   A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently
9   prepared to testify on Topic No. 31. Notably, Ms. Tonnu admitted that she did not know whether
10  any person has at any time since 1998 performed work or services for MGA while that person
11  was a Mattel employee. Further, she testified that she did not speak with or ask any of the former
12  Mattel employees who were working at MGA whether they had provided work or services for
13  MGA while they were Mattel employees. Instead, Ms. Tonnu only knew whether or not
14  payments were made to the former Mattel employees while they were still employees of Mattel.
15  Furthermore, the list of former Mattel employees provided by Ms. Brooks was incomplete
16  because it did not include twelve former Mattel employees. Accordingly, Mattel is entitled to an
    order compelling MGA to produce a witness to provide complete testimony on Topic No. 31.

17  **Topic No. 34:** Other than those previously filed and served in this ACTION or in which
    Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony, transcripts,
18  declarations, affidavits and other sworn written statements of any other type by or from
    YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ THAT REFER
19  OR RELATE TO the time period prior to June 30, 2001 (regardless of when such
    testimony or sworn statement was taken, given, signed, made or filed).
20
21  Mattel contends that Mr. Woodman had not been adequately prepared for his deposition
22  and lacked the most basic knowledge on the topic. Mattel points out that Mr. Woodman had been
23  employed with MGA for less than one year and that his responsibilities had been limited to the
24  administration of licensing contracts and royalties. Further, Mattel contends that in preparation
25  for his deposition, Mr. Woodman "did no more than review a selection of sworn statements
26  previously made by others, review transcripts of Carter Bryant's deposition testimony, and speak
27  'for a few minutes' with one other person besides counsel." Mattel's Consolidated Separate
28  Statement, p.130.

1    Mattel also contends that Mr. Woodman was not sufficiently prepared to testify regarding

2    "sworn statements in MGA's many submissions to the Copyright Office or Patent and Trademark

3    Office," and sworn testimony from the "Art Attacks" trial. Id. Further, Mattel contends that

4    MGA's counsel improperly instructed Mr. Woodman not to answer certain questions on the basis

5    that Topic No. 34 did not include sworn statements made in connection with the "Art Attacks"

6    matter or statements made in various submissions to the Copyright Office or Patent and

7    Trademark Office. Counsel also instructed Mr. Woodman not to answer certain questions about

8    sworn statements that related to Topic No. 33 and statements that MGA believed did not

9    sufficiently relate to conduct prior to June 30, 2001. Topic No. 33 seeks testimony on

10   applications for registration and the registrations for copyright, patent, trademark or any other

11   right that refer or relate to Bratz or Bratz designs, sought, made or obtained by, for or on behalf of

     MGA or Bryant, including communications pertaining thereto.

12       MGA contends that Mattel is not entitled to any further testimony on this topic. MGA

13   explains that Mr. Woodman reviewed 30-50 sworn statements, read the transcript of the

14   depositions of Carter Bryant and Victoria O'Connor, MGA's former Vice President of Licensing,

15   and interviewed Leon Djiguerian in MGA's Product Development. MGA further asserts that Mr.

16   Woodman answered questions as to the completeness or incorrectness of many factual statements

17   contained in the sworn statements placed in front of him by Mattel's counsel. Thus, MGA

18   contends that Mattel obtained exactly the testimony it sought. In MGA's view, Mr. Woodman's

19   testimony regarding the correctness or incorrectness of factual statements identified from the

20   sworn statements is binding on MGA. MGA also contends that Mr. Woodman was not required

21   to investigate the preparation, review and approval of MGA's various sworn statements because

22   such information would be protected from disclosure by the attorney-client privilege and work

23   product doctrine.

24       MGA next contends that most of the documents shown to Mr. Woodman were not "sworn

25   statements," but rather (i) copyright registrations and certificates that include a statement that the

26   application is "correct to the best of my knowledge," (ii) certificates of registration issued by the

27   USPTO, and (iii) an office action summary by the USPTO. Nevertheless, MGA implicitly

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

EXHIBIT  41

PAGE  398

1    acknowledges that Mr. Woodman did not provide sufficient testimony as to certain applications

2    for registrations containing declarations by Isaac Larian documents (Exhibits 580-584, 590), a

3    declaration by Bryant (Exhibit 502), and an application and amendment referred to in the Bryant

4    declaration (Exhibits 500, 548), and one additional declaration by Isaac Larian, by agreeing to

5    produce Sam Khare to testify regarding these documents. Mattel is scheduled to depose Mr.

6    Khare on January 8, 2008.

7        MGA contends that prior counsel properly objected to certain questions as outside the

8    scope of Topic No. 34. In particular, MGA contends that questions directed at statements that did

9    not refer or relate to the time period prior to June 30, 2001 are outside the scope of Topic No. 34.

     Further, MGA contends that where a sworn statement relates in part to the time period before

10   June 30, 2001, and in part to other time periods, the scope of Topic No. 34 is limited by its own

11   terms to that portion of the statement that relates to the specified time period. MGA also contends

12   that sworn testimony taken at the Art Attacks trial is outside the scope of Topic No. 34 because

13   Mattel's counsel was present at that trial.

14       MGA represents that its present counsel does not condone the instructions not to answer

15   made by prior counsel, and will not attempt to justify those instructions. Nevertheless, MGA

16   contends that Mattel was not deprived of any discoverable testimony by those instructions

17   because the disputed questions sought information outside the scope of Topic No. 34. More

18   specifically, MGA represents that each exhibit that was excluded from Mr. Woodman's testimony

19   on the grounds that it was not a "sworn statement" was the subject of examination of MGA's

20   designees on Topic No. 33, Bryan Armstrong and Sam Khare. MGA also contends that

21   resumption of a deposition on Topic No. 34 beyond what MGA has agreed to provide is

22   unwarranted because Mattel obtained two full days of 30(b)(6) testimony on Topic No. 33.

23       A review of the deposition transcript confirms that Mr. Woodman was not sufficiently

24   prepared to provide testimony on Topic No. 34. Mr. Woodman did no more than review the

25   sworn statements made by others and the transcripts of Carter Bryant's deposition. For the sworn

26   statements he did review, Mr. Woodman offered little information beyond what was apparent on

27   the face of the documents. For example, Mr. Woodman did not know who authorized submitting

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT **41**

PAGE **399**

the sworn statement. Ultimately, Mr. Woodman only testified as to whether or not a particular sworn statement was consistent with deposition testimony of Carter Bryant. Furthermore, Mr. Woodman admitted that the testimony he gave had nothing to do with MGA's current beliefs, was not based on any investigation, and had nothing to do with the actual correctness or incorrectness of any of the sworn statements. Mr. Woodman admitted that no matter what inconsistencies existed between Carter Bryant's testimony and MGA's sworn statements, Mr. Woodman always presented Carter Bryant's testimony as to the facts as "true." Thus, Mr. Woodman failed to testify as to information known or reasonably available to MGA. Mr. Woodman's lack of preparedness alone justifies re-opening Topic No. 34. Furthermore, MGA cannot rely on blanket claims of privilege to preclude testimony on Topic No. 34.

A further deposition on Topic No. 34 is also justified in light of the admittedly improper instructions not to answer, and MGA's acknowledgement that Mr. Woodman did not provide testimony as to Exhibits 500, 502, 548, 580-584, 590. MGA shall abide by its agreement to produce a witness to testify on these exhibits.

MGA's interpretation of Topic No. 34 as excluding statements not made under oath or penalty of perjury, and as excluding any portion of a statement under oath that does not refer or relate to the time period prior to June 30, 2001, is overly technical. There is, however, a clear overlap between Topic No. 34 and Topic No. 33, which is not at issue in this motion. When the deposition on Topic No. 34 is resumed, MGA's corporate designee is not required to provide further testimony on statements that were the subject of examination of MGA's designees on Topic No. 33.

MGA's interpretation of Topic No. 34 as excluding testimony from the Art Attacks trial is appropriate. Mattel does not contest that its counsel attended the Art Attacks trial. Topic No. 34 clearly excludes any proceeding attended by Mattel's counsel. When the deposition on Topic No. 34 is resumed, MGA's corporate designee is not required to provide further testimony with respect to the Art Attacks trial.

**Topic No. 39:** The preservation, collection, destruction, removal, transfer, loss or impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

17

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __41__

PAGE __400__

MGA designated two individuals to testify on this topic: Kenneth Lockhart to testify on electronic evidence; and Lisa Tonnu, to testify on documentary evidence. Mattel contends that both designees were unable to provide substantive testimony.

Mattel points out that Mr. Lockhart did not know whether the MGA's "PST files" had been searched; whether e-mails had been deleted from the exchange mailbox between late 2004 and the present; whether MGA's "snap servers" had been searched; whether keywords were used to search "PST" files; and what user files were searched. Further, Mattel contends that Mr. Lockhart was not aware of the location of any hard drive or any image of any hard drive that had been preserved for litigation purposes.

MGA contends that Mr. Lockhart substantially discharged MGA's obligation on Topic 39 with respect to electronic documents. MGA represents that Mr. Lockhart prepared extensively for his testimony by speaking with various individuals and that he testified at length about the configuration of MGA's computer systems and MGA's policies, practices and procedures for the retention and preservation of electronic documents.

Nevertheless, MGA is willing to produce a witness to testify on its behalf regarding the collection of electronic documents in connection with this action in order to shore up the one area of Mr. Lockhart's testimony that MGA agrees was lacking.

As for Ms. Tonnu, Mattel contends that MGA made no discernible effort to educate her concerning the topic. Ms. Tonnu testified that she did not know whether MGA has a document retention policy. Mattel also contends that MGA's counsel instructed Ms. Tonnu not to answer any questions about MGA's preservation and collection of documents based upon unfounded claims of attorney-client privilege.[2]

MGA produced Ms. Tonnu a second time to testify on Topic No. 39, however Mattel contends that her testimony remained deficient. For example, Ms. Tonnu testified that she prepared for the deposition by speaking with Rich Daniels, MGA's counsel, and by reviewing a

//

---

[2] The instructions not to answer are discussed in a separate section of this Order.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

18

EXHIBIT  41

PAGE  401

1   declaration prepared by Daphne Gronich, MGA's General Counsel on the subject of document

2   preservation. Mattel points out, however, that Ms. Tonnu never spoke with Ms. Gronich, and

3   therefore was unable to provide any information beyond what was stated in the four corners of the

4   declaration. In particular, Mattel contends that Ms. Tonnu did not know whether any documents

5   at the MGA campus had been searched for responsive documents. Nor did Ms. Tonnu know what

6   documents were stored at MGA's three off-site facilities and could not confirm whether they had

7   been searched for documents responsive to Mattel's requests.

8       MGA contends that Ms. Tonnu testified fully and completely regarding MGA's

9   preservation of documents in connection with this action. Indeed, MGA contends that the

10  Gronich declaration, which had already been provided to Mattel, contains detailed information

11  regarding MGA's document preservation efforts. MGA also points out that Tonnu testified,

12  based on her investigation and MGA's general policy (that documents generated by employees in

13  the ordinary course of business should not be destroyed and the wide distribution of document

14  preservation notices to MGA employees), that MGA did not knowingly destroy any documents

     potentially relevant to this action.

15      MGA acknowledges, however, that Ms. Tonnu was not able to testify regarding the actual

16  collection of documents for production in this action. MGA represents that it is willing to

17  produce an additional witness to discuss the collection of hard copy and electronic documents in

18  connection with this action.

19      A review of the deposition transcripts confirms that MGA's witnesses provided a

20  significant amount of testimony on this topic, and in particular regarding document preservation.

21  The one area where they were glaringly deficient was regarding document "collection."

22  Accordingly, MGA is ordered to abide by its agreement to produce a witness to testify further

23  with respect to the "collection" of hard copy and electronic documents. In all other respects,

24  MGA is in substantial compliance with Topic No. 39, and the burden and expense of re-opening a

25  deposition on the entirety of Topic No. 39 outweighs the likely benefit of the testimony Mattel

26  seeks.

27      **Topic No. 40:** The preservation, collection, destruction, removal, transfer, loss or

28                                                                                              19

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)



EXHIBIT 41

PAGE 402

1   impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 1999 that

2   REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan

3   or information) that YOU received in any manner from any PERSON who was at the time an

4   employee of MATTEL or who had previously been an employee of MATTEL.

5       This topic appears to be based, at least in part, upon Mattel's allegations that former

6   Mattel employee Ron Brawer, former Mattel employees in Mattel's offices in Mexico; and a

7   former Mattel employee located in Canada improperly provided MGA with documents containing

8   Mattel trade secrets.

9       Mattel contends that MGA made no discernible effort to educate Ms. Tonnu on Topic No.

10   40, and therefore she was unable to answer whether MGA has or has had in its possession any (1)

11   Mattel strategic plans, (2) any sales or profit information of Mattel, (3) any documents related to

12   Mattel's advertising strategy, (4) any documents relating to the results of Mattel's advertising, (5)

13   documents related to Mattel's pre-release line lists, and (6) documents related to Mattel's strategy

14   with respect to specific customers.  MGA produced Ms. Tonnu a second time, however, Mattel

15   contends that her testimony remained deficient.  In particular, Mattel complains that MGA spoke

16   with only two former employees about the documents described above, when there are many

17   more former Mattel employees working at MGA.  .

18       MGA contends that Ms. Tonnu spoke with the three individuals at MGA who would be

19   most knowledgeable about the allegations against MGA and testified as to any documents they

20   brought with them from Mattel:  Ron Brawer, Susana Kuemmerle and Janine Brisbois.  MGA

    contends that Ms. Tonnu's preparation to testify on Topic 40 was reasonable.

21       Nevertheless, MGA represents that it has agreed to provide additional testimony through

22   Ms. Tonnu to address Mattel's concerns, and that her deposition will take place on January 9,

23   2008.

24       A review of the deposition transcript indicates that Ms. Tonnu did not prepare sufficiently

25   for her testimony.  Ms. Tonnu spoke to only three individuals.  Clearly, there are far more sources

26   of information reasonably available to MGA, namely the many more former Mattel employees

27   now employed at MGA.  MGA made no effort to determine what Mattel documents, if any, these

28                                                                                      20

1   individuals possess.  Therefore, Mattel is entitled to an order compelling MGA to produce a

2   witness to provide complete testimony on Topic No. 40.

3       **Topic No. 41:** The testing or sampling from DOCUMENTS that REFER OR RELATE
        TO BRATZ or BRYANT, including without limitation such testing or sampling in

4       connection with any ink, paper or chemical analysis performed or attempted to be
        performed to date, any DOCUMENTS that REFER OR RELATE thereto and all results

5       and reports relating thereto.

6       Mattel deposed Ms. Tonnu on this topic on two separate occasions.  Mattel contends that

7   in each instance, she was unprepared to given any meaningful testimony regarding any ink, paper

8   or chemistry testing performed on Bratz documents.  In particular, Mattel contends that Ms.

9   Tonnu's preparation for her deposition was inadequate because she did not speak to the MGA

10  litigation consultant who performed the testing, Mr. Speckin, but merely read his declaration.

11      Furthermore, Mattel contends that MGA's counsel improperly instructed Ms. Tonnu not to

12  answer questions based upon unfounded claims of work product protection.  Mattel explains that

13  it is not seeking information concerning Mr. Speckin's opinions or the results of his test on Bratz

14  documents.  Instead, Mattel contends that it is seeking factual information concerning the

15  handling and shipment of original Bratz documents, as well as the specific documents that were

16  tested.  In Mattel's view, the factual circumstances surrounding Mr. Speckin's testing are not

    protected from discovery by the work-product doctrine.

17      Moreover, Mattel contends that MGA provided Mattel's counsel with a list identifying the

18  documents that Mr. Speckin tested and allowed Ms. Tonnu to testify about the identification of

19  documents, thereby waiving any work product protection with respect to the identification of

20  documents.  Mattel also contends that Mr. Speckin's declaration, which was submitted in the

21  case, already discloses the types of tests conducted and therefore any privilege that may have

22  applied has been waived with respect to this subject.

23      MGA contends that it complied with this topic and that Mattel is not entitled to any further

24  examination because further questioning about the testing performed by Mr. Speckin would

25  violate MGA's attorney work product protection.  Mr. Speckin is one of MGA's non-testifying

26  experts.  MGA objects to any further questioning regarding Mr. Speckin's selection of which

27  documents to test, how the documents were handled, which tests were performed on the

28

EXHIBIT __41__

PAGE __404__

1  documents, how they were shipped and how they were stored. MGA contends that further

2  questioning on these subjects would necessarily reveal the mental impressions, legal theories, and

3  conclusions of MGA's counsel and its non-testifying experts formed in anticipation of litigation

4  with Mattel. Further, MGA contends that Mattel has not carried its heavy burden to demonstrate

5  the "exceptional circumstances" required to invade MGA's work product.

6      A review of the deposition transcript confirms that Ms. Tonnu was not reasonably

7  prepared to testify on Topic No. 41. Ms. Tonnu did not speak with Mr. Speckin or anyone

8  involved in the testing. She had only read Mr. Speckin's declaration. Therefore, she clearly was

9  not in a position to testify as to information known or reasonably available to MGA. On this basis

10  alone, Mattel is entitled to an order compelling MGA to produce a witness to testify fully on

    Topic No. 41.

11      As for MGA's claims of work production protection, Judge Larson has already indicated

12  that questions of privilege regarding the testing of the Bratz documents must be handled on a

13  question-by-question basis. The questions at issue are set forth in Mattel's Separate Statement

14  No. 2, and are discussed below in connection with Mattel's Request for Relief No. 4.

15
16  B. Mattel's Request for Relief No. 2: Mattel seeks an order overruling each of the purportedly improper instructions not to answer questions interposed at the deposition of MGA designees
17  Spencer Woodman (Instruction Nos. 46-57) and compelling Woodman or other such person selected by MGA as its designee to provide complete testimony on Topic No. 34.

18      Mattel identifies each instance of allegedly improper instructions in its Separate Statement

19  No. 2. In each instance identified by Mattel, MGA's counsel instructed the witness not to answer

20  questions about matters that counsel believed exceeded the scope of the deposition. The

21  instructions not to answer were not based upon a claim of privilege, and therefore were clearly

22  improper.

23      Furthermore, as stated previously, MGA has acknowledged that some questions fell within

24  the scope of Topic No. 34 and should be answered. To that end, MGA has agreed to produce a

25  corporate designee to provide supplemental testimony as to Exhibits 500, 502, 548, 580-584, 590.

26  MGA shall abide by its agreement to produce a witness to testify on these exhibits.

27      Nevertheless, many of the questions identified in the Separate Statement No. 2 for which

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  41

PAGE  405

1    an improper instruction not to answer was given clearly exceeded the scope of the deposition

2    notice. MGA is not required to provide further testimony as to those questions. For example, the

3    question regarding the Art Attacks trial that Mattel's counsel attended (Instruction No. 46) exceed

4    the scope of Topic No. 34, and do not require any further testimony. MGA is also not required to

5    provide further testimony as to documents that have been the subject of questioning during the

6    30(b)(6) deposition on Topic No. 33.[3]

7    C. Mattel's Request for Relief No. 3:  Mattel seeks an order compelling MGA to produce
     documents that MGA designee Kenneth Lockhart identified during his June 14, 2007 deposition
     as documents which he reviewed and relied upon to refresh his recollection in preparation for his
8    deposition.

9          Mattel seeks an order compelling MGA to produce documents that Mr. Lockhart

10   identified during his deposition as documents which he reviewed and relied upon to refresh his

11   recollection in preparation for his deposition.

12         MGA contends that the documents Mattel seeks are privileged e-mail communications

13   from MGA's General Counsel to MGA employees regarding their document preservation

14   obligations in light of the present action. MGA contends that its privilege log demonstrates that

15   the documents are protected by both the attorney-client privilege and the work product doctrine.

16   Furthermore, MGA contends that Mr. Lockhart was required to review the privileged emails

17   because they related to MGA's preservation of documents in connection with this action and they

18   were reasonably available to MGA.

19         Moreover, MGA contends that waiver of the attorney-client privilege and work product

20   doctrine is not automatic where a witness refreshes his recollection with privileged prior to a

21   deposition. In re Managed Care Litig., 415 F.Supp.2d 1378 (S.D. Fla. 2006); Medtronic Xomed,

22   Inc. v. Gyrus ENT LLC, 2006 WL 786425, at *1, 3, 6-7 (M.D. Fla. March 27, 2006).

23         MGA's bare bones privilege log, unaccompanied by any supporting declarations, is

24   insufficient to establish the attorney-client privilege and the work product doctrine. Further,

25   although there appears to be a split in authority, the weight of authority supports a finding of

26   ───────────────────────────
          [3] MGA represents that virtually all of the questioning quoted in Mattel's Separate Statement No. 2 at
27   Instruction Nos. 47-57 was covered in the deposition on Topic No. 33. However, MGA's representation cannot be
     confirmed by the excerpts of the deposition transcript submitted in connection with this motion.

28                                                                                              23

     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                            EXHIBIT 41

                                            PAGE 406

1   waiver.  See e.g. United States ex rel. Bagley v. TRW Inc., 212 F.R.D. 554, 565-566 (C.D. Cal.

2   2003) (requiring disclosure of documents reviewed by relator in preparing for his deposition

3   based upon waiver of work product protection); U.S. v. 22.80 Acres of Land, 107 F.R.D. 25-26

4   (N.D. Cal. 1985) (work product waived where deponents used documents to refresh recollection);

5   Ehrlich v. Howe, 848 F.Supp. 482, 493 (S.D. N.Y. 1994) ("when [c]onfronted with the conflict

6   between the command of Rule 612 to disclose materials used to refresh recollection and the

7   protection afforded by the attorney-client privilege . . . the weight of the authority holds that the

8   privilege is waived."); Marshall v. United States Postal Service, 88 F.R.D. 348, 350 (D. D.C.

9   1980) ("[I]t is apparent that once a document is used to refresh the recollection of a witness,

    privileges as to that document have been waived.").

10          Furthermore, the interests of justice compel production of the e-mail documents used by

11  Mr. Lockhart to refresh his recollection.  MGA acknowledges that Mr. Lockhart was required to

12  review the e-mails because they related to MGA's preservation of documents.  Mr. Lockart

13  testified that the e-mails refreshed his recollection as to what MGA employees had been requested

14  to preserve.  Accordingly, MGA is ordered to produce the e-mails reference in Mr. Lockhart's

15  deposition.

16  D. Mattel's Request for Relief No. 4.  Mattel seeks an order overruling each of the purportedly
    improper instructions not to answer questions interposed at the deposition of MGA designee Lisa
17  Tonnu.

18          In Mattel's Separate Statement No. 2, Mattel identifies each purported instance of

19  improper objections and/or instructions not to answer for which it seeks a ruling.  Each instance

20  of allegedly improper conduct is discussed below.

21

22                              Instruction Nos. 1-5

23          Mattel's counsel posed a series of questions regarding Mr. Larian's trusts.  In each

24  instance, MGA's counsel instructed Ms. Tonnu not to answer.  MGA's counsel objected to the

25  question on privilege and privacy grounds, and objected that the question exceeded the scope of

26  deposition.

27          The privilege objections are overruled because MGA has failed to establish the requisite

28                                                                                          24

    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT __41__

PAGE __407__

elements of any applicable privilege. The privacy objections are overruled since there is a protective order in place to address Mr. Larian's privacy concerns regarding his personal finances. The remaining objections do not justify an instruction not to answer. See Fed.R.Civ.P. 30(c)(2) (an objection must be noted on the record, but the examination still proceeds and the testimony is taken subject to any objection). Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 1-5.

### Instruction No. 6

In this excerpt, the witness wanted to clarify her testimony regarding voucher payments, which prompted Mattel's counsel to ask a series of questions about what prompted her make the clarification, including "that's what counsel told you at the break?"; "[h]ow was your recollection refreshed"; and "[d]id Mr. Jenal tell you what the dates were?" MGA's counsel objected on privilege grounds and instructed the witness not to answer.

The objections are overruled. The attorney-client privilege protects an attorney's communication of legal advice to his client, as well as the client's communication of information to the attorney "to enable him to give sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 390 (1981). In this instance, the question posed did not require the witness to disclose the substance of an attorney-client communication. Instead, the questions posed called for the disclosure of underlying facts to which Mattel is entitled. See Upjohn, supra at 395 (finding that the attorney-client privilege does not preclude disclosure of factual information and that the privilege does not protect facts communicated to an attorney).

Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 6.

### Instruction Nos. 7-20 and 23

In each of these excerpts, Mattel's counsel posed questions regarding testing performed on Bratz drawings. MGA's counsel objected to the questions based upon the work product doctrine and instructed the witness not to answer.

The work product objections are overruled. The work product doctrine, now codified in

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

25

EXHIBIT __41__

PAGE __408__

part in Rule 26(b)(3) of the Federal Rules of Civil Procedure, provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial.  The party claiming work product immunity has the burden of establishing its elements by competent evidence.  In re Kidder Peabody Securities Litigation, 168 F.R.D. 459, 462 (S.D. N.Y. 1996).

In the instant case, all of the questions posed to the witness take one of four forms:  "do you know whether" or "do you know who" or "do you know what" or "do you know why."  The questions thus call for a simple "yes" or "no" response that did not require divulging any information protected by the work product doctrine.

Even if the questions are construed to require substantive responses beyond "yes" or "no," the information sought is factual (what test was conducted, how documents were stored, whether the documents were handled with cotton or latex gloves, who was with the expert when he performed his tests, what precautions he took).  The questions do not require the witness to divulge the mental impressions, the legal theories, or conclusions of Mr. Speckin.

Moreover, Rule 26(b)(4)(B), Fed.R.Civ.P., provides that a party may discover facts known or opinions held by an non-testifying expert upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.  In the instant case, there is no other practicable means for Mattel to obtain information about the handling, shipping and testing of original Bratz documents while in Mr. Speckin's possession.  Mr. Speckin is a non-testifying expert.  The manner in which Mr. Speckin transported, analyzed, tested or otherwise used the original Bratz drawings is uniquely within his knowledge and plainly relevant.  The original Bratz drawings are a key piece of evidence in this case.  Mattel needs information concerning what, if any, changes, damage, or other alterations were made to the original Bratz drawings.  Mattel is not seeking information regarding Mr. Speckin's opinions or the results of his tests.  Rather, Mattel is seeking only information regarding the handling of the original Bratz documents and more precise identification information for the specific documents that were handled by Mr. Speckin.

MGA objects to providing information concerning Mr. Speckin's testing, the testing conditions, the selection of which drawings to test and other logistics.  MGA, however, has

1  already disclosed the types of tests performed by Mr. Speckin in a declaration submitted to the

2  court, and has provided Mattel with a list identifying the documents that Mr. Speckin tested,

3  although the list did not identify the documents by Bates numbers.  Therefore, MGA has waived

4  any work product protection to which it may have been entitled with respect to the identification

5  of the original Bratz drawings that were subjected to testing and which tests were performed.

6         Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

7  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 7-

8  20 and 23.

9  <div align="center">Instruction Nos. 21-22</div>

10         In these excerpts, Mattel's counsel asked Ms. Tonnu whether she could identify or

11  describe any of the documents that were tested by Mr. Speckin.  MGA's counsel objected to the

   questions based upon the work product doctrine and instructed the witness not to answer

12  The objections are overruled.  As discussed immediately above, the questions call for factual

13  information that is not protected by the work product doctrine.  Even if the work product doctrine

14  applied, the protection has been waived.  Furthermore, this case presents exceptional

15  circumstances under which it is impracticable for Mattel to obtain the information sought by other

16  means.  Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

17  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 21-

18  22.

19  <div align="center">Instruction Nos. 24-26</div>

20         In these excerpts, Mattel's counsel asked the witness (1) what Ms. Garcia told her about

21  Diva Starz and (2) whether Ms. Garcia told the witness she had access to Diva Starz information

22  while she was at Mattel.  MGA's counsel objected to the questions to the extent the witness'

23  conversations with Ms. Garcia occurred in the presence of counsel and instructed the witness not

24  to answer.

25         The objections are overruled.  The questions do not require the witness to divulge the

26  substance of any privileged communication.  Instead, the questions call for factual information to

27  which Mattel is entitled.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

27

EXHIBIT  41

PAGE  40

1   Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

2   responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 24-

3   26.

### Instruction No. 27

4

5   In this excerpt, Mattel's counsel asked the witness twice whether MGA had access to

6   Mattel internal information regarding Diva Starz prior to February 1st, 2000. MGA's counsel

7   made a speaking objection, which clearly violated Rule 30(c)(2), Fed.R.Civ.P. However, the

8   questions do not need to be repeated because the witness provided responses.

### Instruction No. 28

9

10  In this excerpt, Mattel's counsel asked, "MGA is denying that it had access to internal

11  information about Mattel's Diva Starz project prior to September 1st, 2000?" MGA's counsel

12  objected on the grounds that the question calls for a legal conclusion, calls for the disclosure of

13  privileged information, and exceeds the scope of the deposition. Counsel also instructed the

    witness not to answer.

14  The objections are overruled. The question does not call for a legal conclusion and MGA

15  has failed to establish the elements of the attorney-client privilege.

16  Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

17  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 28.

### Instruction Nos. 29-34

18

19  In these excerpts, Mattel's counsel asked as series of questions regarding whether MGA

20  knew Mattel was considering using the name "Brats" and "Boyz" in connection with the Diva

21  Starz project and whether MGA knew Mr. Linker worked on the project. MGA's counsel made

22  several objections including the following: assumes facts not in evidence; misstates the witness'

23  prior testimony; compound; outside the scope of the deposition; improper as to form; lacks

24  foundation; vague and ambiguous; calls for speculation; argumentative; and asked and answered.

25  MGA's counsel objected to one question (Instruction No. 30) on the additional ground that it may

26  call for attorney-client communications. MGA's counsel also instructed the witness not to

27  answer.

28

The repeated instructions not to answer were clearly improper. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 29-34.

Instruction No. 35

In this excerpt, the witness indicated that she did not know whether Mr. Linker worked on the Bratz project. Mattel's counsel then asked, "But you don't know one way or the other?" MGA's counsel objected to the question, asserting that it had been asked and answered and was argumentative. MGA's counsel also instructed the witness not to answer.

The instruction not to answer was clearly improper. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 35.

Instruction No. 36

In this excerpt, Mattel's counsel asked, "Did you have a conversation with Mr. Jenal about the net worth or the valuation of the company?" MGA's counsel objected on privilege grounds and instructed the witness not to answer.

The objection is overruled. The question calls for a "yes" or "no" answer and does not require the witness to divulge the substance of a privileged communication.

Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 36.

Instruction No. 37

In this excerpt, Mattel's counsel asked, "What did Mr. Daniels tell you about the net worth or valuation of the company?" MGA's counsel objected on privilege grounds.

The objection is sustained. As phrased, the question potentially calls for the disclosure of the substance of a privileged communication.

Instruction Nos. 38-40

In these excerpts, MGA's counsel instructed the witness not to answer. The instruction was not based upon a claim of privilege, and therefore was improper. MGA's counsel also made an improper speaking objection. Accordingly, MGA shall produce a knowledgeable 30(b)(6)

29

EXHIBIT 41

PAGE 412

1  designee to provide complete responses to the questions identified in Mattel's Separate Statement

2  No. 2 as Instruction Nos. 38-40.

3                                    Instruction No. 41

4       In this excerpt, Mattel's counsel asked the witness to identify the litigation for which

5  Exhibit 660 was prepared.  MGA's counsel objected to the question as calling for work product

6  and instructed the witness not to answer.

7       The work product objection is overruled.  The question calls for the disclosure of facts, not

8  work product.  Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide

9  complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction

   No. 41.

10                                 Instruction Nos. 42-44

11      In these excerpts, Mattel's counsel posed more questions about the litigation for which

12  Exhibit 660 was prepared, including the identity of the parties to the litigation and whether the

13  litigation was ongoing.  MGA's counsel objected on privilege and work product grounds.

14      The objections are overruled.  The questions call for the disclosure of facts, not work

15  product.  Further, MGA has failed to establish that the questions require the witness to disclose

16  the substance of a privileged communication.  Accordingly, MGA shall produce a knowledgeable

17  30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate

18  Statement No. 2 as Instruction Nos. 42-44.

19                                    Instruction No. 45

20      In this excerpt, Mattel's counsel asked whether an attorney by the name of Mr. Daniels

21  wrote a document.  The work product objection by MGA's counsel is overruled.  The "yes" or

22  "no" question calls for the disclosure of facts, not work product.  Accordingly, MGA shall

23  produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions

24  identified in Mattel's Separate Statement No. 2 as Instruction No. 45.

25  E. Mattel's Request for Relief No. 5:  Mattel seeks an order reopening the deposition of MGA
    designee Lisa Tonnu based on a purported "complete reversal of testimony" made through written
26  "changes" to her deposition transcript.

27      Ms. Tonnu made changes to her deposition transcript after her deposition was completed.

28                                                                                      30

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __41__

PAGE __413__

1    Counsel asked Ms. Tonnu whether any documents had been collected from MGA's Filenet

2    storage facility, to which she responded "no"; whether Mr. Daniels told her that he was going to

3    collect documents from Filenet, to which she responded "yes"; and whether the documents at

4    Filenet contained any documents responsive to Mattel's request, to which she responded "no."

5    Later, Ms. Tonnu revised her deposition transcript and reversed each of her answers.

6        Mattel contends that Ms. Tonnu's initial answers in the negative precluded a line of

7    questioning into, for example, who collected documents, which documents were collected and

8    how.

9        MGA contends that the changes Ms. Tonnu made do not justify re-opening a deposition.

10   Nevertheless, MGA has no objection to follow-up questions about Ms. Tonnu's revision when she

     is deposed again in January.

11
12       In light of MGA's lack of opposition, MGA shall make Ms. Tonnu available for follow-up

     questioning regarding the revisions to her deposition testimony.

13
     F. Mattel's Request for Relief No. 6:  Mattel seeks an order compelling Rebecca Harris to sit for
14   the completion of her deposition and/or compelling such person selected by MGA as its designee
     to complete the testimony on topics for which Harris was previously designated.
15
         Mattel seeks an additional day to depose Ms. Harris.  Mattel contends that it needs more

16   than the 7-hours it has already deposed Ms. Harris to complete its questioning on all topics for

17   which she was designated.  Mattel emphasizes that Ms. Harris is designated to testify on nine

18   separate topics, each of which pertains to issues at the heart of the litigation, including the origin,

19   creation, design and development of Bratz prior to June 30, 2001; relevant contracts concerning

20   Carter Bryant and Bratz; payments made to Bryant and other financial information relating to

21   Bratz; and third parties who were involved in or otherwise have knowledge about the creation,

22   design and development of Bratz.

23       In addition to the topics already discussed above in Section "A" to this Order, Mattel

24   contends that it did not have sufficient time to depose Ms. Harris on Topic Nos. 19, 22 and 23,

25   which are set forth below:

26       **Topic No. 19:**  Each agreement or contract between YOU and any PERSON other than
         BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that REFERS
27       OR RELATES to the time period prior to December 31, 2001 (regardless of when such
         agreement or contract was negotiated or executed), including without limitation the timing
28       thereof, the negotiations, drafts and COMMUNICATIONS that REFER OR RELATE

                                                                                          31

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __41__

PAGE __414__

1    thereto, and any actual or proposed amendments thereto.

2    **Topic No. 22:** The payment of money or anything of value by or for YOU or on YOUR
     behalf that has been made to, for or on behalf of BRYANT (a) for work, services or
3    activities performed by BRYANT prior to January 1, 2001 (regardless of when such
     payment was actually made), (2) for DESIGNS CREATED by BRYANT prior to January
4    1, 2001 (regardless of when such payment was actually made) or (c) in connection with
     BRATZ or any BRATZ DESIGN at any time, including amount(s) thereof and the reasons
5    therefore,

6    **Topic No. 23:** The payment of royalties to, for or on behalf or BRYANT made by or for
     YOU or on YOUR behalf, including the timing, manner and amounts of such payments
7    and the reasons therefore.

8    MGA contends that Mattel has not made the required showing that additional time is "needed to

9    fairly examine the deponent" or that "the deponent, another person, or any other circumstance

10   impedes or delays the examination." Fed.R.Civ.P. 30(d)(1). Furthermore, MGA contends that

11   Mattel wasted much of the 7-hours with Ms. Harris by asking questions outside the topics for

12   which she was designated and badgering the witness.

13       As discussed already above, Ms. Harris was not sufficiently prepared to testify on several

14   topics and did not discharge MGA's duty to produce a witness to testify as to information known

15   or reasonably available to MGA. Her lack of preparedness alone justifies additional deposition

16   time. The relatively large number of topics for which Ms. Harris was designated (Topic Nos. 11,

17   13, 14, 19, 21, 22, 23, 27 and 28), also justifies additional deposition time to enable Mattel to

18   fairly examine the deponent. Many of the topics for which Ms. Harris was designated are highly

19   relevant to the case. Mattel has identified a few instances where Mattel was inefficient in

20   conducting her deposition; however, the deposition generally proceeded at a reasonable pace.

21   Accordingly, Mattel is granted an additional four hours to complete the deposition of Ms. Harris

22   on all of the topics for which she was designated, except Topic Nos. 27 and 28 which were

     discussed previously.

23   G. Mattel's Request for Relief No. 7: Mattel seeks an order imposing sanctions for MGA's
     alleged willful violations of the May 16, 2007 and August 14, 2007 Orders, for MGA's allegedly
24   improper instructions not to answer deposition questions and for MGA's alleged improper
     coaching, harassing and obstructionist conduct at the September 24-25, 2007 deposition of Lisa
25   Tonnu and at the October 9, 2007 deposition of Spencer Woodman in the amount of $10,000.

26       Sanctions are appropriate based upon MGA's failure to produce 30(b)(6) designees who

27   were reasonably prepared to testify on seven out of the sixteen topics at issue, namely Topic Nos.

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                    32

EXHIBIT ___41___

PAGE ___416___

1  21, 24, 25, 31, 34, 39 and 40.  By agreeing to provide supplemental testimony on these topics,

2  MGA implicitly acknowledges that the witnesses provided insufficient testimony.  Further,

3  MGA's counsel also repeatedly flouted Rule 30(c)(2), Fed.R.Civ.P., and prior orders prohibiting

4  instructions not to answer for reasons other than privilege.  Accordingly, pursuant to Rule

5  30(d)(2) and 37(b), Fed.R.Civ.P., sanctions are imposed in the amount of $6,000.

6  H.  Mattel's Request for Relief No. 8:  Mattel seeks a report and recommendation to Judge
   Stephen G. Larson that recommends the imposition of preclusion sanctions, that certain facts
7  related to the topics compelled be deemed admitted, and/or that MGA be found in contempt for
   MGA's allegedly willful and repeated violations of the Orders.

8      As previously stated at the December 14, 2007 hearing, it is premature to consider

9  preclusion sanctions and contempt at this time.  If Mattel intends to pursue such sanctions, it may

10  do so only after the close of Phase 1 discovery.

11                              V. CONCLUSION

12      For the reasons set forth above, it is hereby ordered as follows:

13      1.      No later than January 30, 2008, MGA shall produce witnesses who are prepared to

14  testify about information known or reasonably available to MGA in accordance with Rule

15  30(b)(6), Fed.R.Civ.P., and to provide complete testimony on the following topics as specified

16  herein: Topic Nos. 11, 13, 14, 19, 21-25, 31, 34 (with limitations noted herein) 39 (with

17  limitations noted herein), 40 and 41.  Mattel's motion is denied as to Topic Nos. 27 and 28.

18      2.      MGA's 30(b)(6) designee Spencer Woodman shall provide full and complete

19  responses to each of the questions identified in Mattel's Separate Statement No. 2 that are

20  identified herein as requiring a further response because the objections have been overruled

21  and/or the instructions not to answer have been found improper, and the question seeks relevant

22  and privileged information to which Mattel is entitled.

23      3.      MGA shall produce the e-mails that MGA designee Kenneth Lockhart identified

24  during his June 14, 2007 deposition as documents which he reviewed and relied upon to refresh

25  his recollection in preparation for his deposition.  Mattel is also permitted to conduct reasonable

26  follow-up questioning regarding those documents.

27      4.      MGA's 30(b)(6) designee Lisa Tonnu shall provide full and complete responses to

28  each of the questions identified in Mattel's Separate Statement No. 2 that are identified herein as

                                                                    33

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)



EXHIBIT  41

PAGE  416

1  requiring a further response because the objections have been overruled and/or the instructions

2  not to answer have been found improper, and the question seeks relevant information to which

3  Mattel is entitled.

4       5.     In addition to the deposition testimony authorized above, Mattel is granted leave to

5  depose Ms. Tonnu regarding the changes she made to her deposition transcript.

6       6.     Mattel is granted additional time to complete a full and fair examination of Ms.

7  Harris on all of the topics for which she was designated, except Topic Nos. 27 and 28.  The

8  deposition of Ms. Harris shall not exceed four (4) hours.

9       7.     Mattel's request for monetary sanctions is granted in part pursuant to Fed.R.Civ.P.

10  37(b).  MGA shall pay sanctions in the amount of $6,000 no later than February 11, 2008.

11       8.     Mattel's request for preclusion sanctions and/or a finding of contempt is denied

12  without prejudice.

13       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

14  Master, Mattel shall file this Order with the Clerk of Court forthwith.

15  Dated:  January 8, 2008

                                 HON. EDWARD A. INFANTE (Ret.)
                                   Discovery Master

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 9, 2008, I served

the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO

ENFORCE COURT'S DISCOVERY ORDERS AND TO COMPEL; TO OVERRULE

PURPORTEDLY IMPROPER INSTRUCTIONS; AND FOR SANCTIONS in the within action by

email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above

is true and correct.

Executed on January 9, 2008, at San Francisco, California.

_Sandra Chan_
Sandra Chan

EXHIBIT 41

PAGE 418

# Exhibit 42

# CONFORMED COPY

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:   (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8

9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

10

11  CARTER BRYANT, an individual,

12          Plaintiff,

13      v.

14  MATTEL, INC., a Delaware corporation,

15          Defendant.

16

17

18  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
19  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.

20

CASE NO. C 04-09049 SGL (RNBx)
JAMS Reference No.1100049530

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA; DENYING REQUEST FOR MONETARY SANCTIONS**

21                      I.  INTRODUCTION

22          On June 26, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production of

23  Documents by MGA Entertainment, Inc. ("MGA") and for Award of Monetary Sanctions.  Mattel

24  seeks an order compelling MGA "to produce documents responsive to Mattel's First Set of

25  Requests for Documents and Things Re Unfair Competition Claims, including, without limitation,

26  Request Nos. 1, 3-10, 12-13, 16-18, 19-20, 26-27, 29-30, 32-40, 42-43, 45, 48-52, 54-56, 58-60,

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

8.14

EXHIBIT  42

PAGE  419

1

1  65-119, 137-140, 157-161, 164 and 166," and for sanctions in the amount of $4,500, which

2  represents a portion of the costs incurred by Mattel in bringing this motion.  Mattel's Motion at

3  p.1.  On July 3, 2007, MGA submitted its opposition brief, and on July 9, 2007, Mattel submitted

4  a reply brief.  The matter was heard via telephonic conference on August 13, 2007.  Having

5  considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel

6  is granted in part and denied in part, and the request for sanctions is denied.

7  <center>II. BACKGROUND</center>

8      This consolidated action includes MGA's claims for unfair competition against Mattel.

9  Among other things, MGA alleges that Mattel has engaged in "serial copycatting" of MGA

10  products, packaging and advertising, including Bratz dolls and other Bratz products, Bratz

11  packaging and Bratz television commercials.  MGA also alleges that Mattel engaged in improper

12  conduct in dealing with retailers, licensees, employees and industry organizations.

13      After MGA filed its claims against Mattel, Mattel sought and was granted leave to file

14  several counterclaims against MGA, including claims for copyright infringement, violation of

15  RICO, conspiracy to violate RICO, misappropriation of trade secrets and unfair competition.

16  Among other things, Mattel alleges that MGA has induced Mattel employees to steal Mattel's

17  trade secrets, confidential information and other property and take it with them to their new

18  employment with MGA.  Mattel also alleges that Bryant conceived, created and developed Bratz

19  designs while he was employed by Mattel as a designer, that he concealed his Bratz work from

20  Mattel, and that he sold Bratz to MGA while he was a Mattel employee.  Mattel alleges that it is

21  the rightful owner of the Bratz designs and that MGA is engaging in copyright infringement of

22  the Bratz designs.

23      On December 18, 2006, Mattel propounded its First Set of Requests for Production of

24  Documents and Things re Claims for Unfair Competition to MGA (the "Requests for

25  Production").  The Requests for Production consist of 166 requests seeking information that

26

27

28

EXHIBIT 42

PAGE 420

2

1   Mattel contends is relevant primarily to MGA's claims for unfair competition and Mattel's

2   defenses thereto.

3        In the meantime, MGA served its initial disclosures related to its unfair competition

4   claims. Mattel immediately filed a motion to compel MGA to provide complete initial

5   disclosures in compliance with Rule 26, Fed.R.Civ.P. Although the initial disclosures were

6   wholly inadequate, the Discovery Master denied the motion to compel, reasoning that it would be

7   more efficient and orderly for the parties to proceed with Mattel's pending Requests for

8   Production.

9        MGA served its responses to Mattel's Requests for Production on January 17, 2007.

10   MGA objected and refused to produce documents responsive to approximately two-thirds of

11   Mattel's requests. As to the remaining requests, MGA agreed to produce "relevant and non-

12   objectionable documents," subject to its General and Specific Objections.

13        Thereafter the parties met and conferred in person and exchanged a few letters. On

14   February 9, 2007, counsel for MGA advised Mattel by letter that MGA, subject to its General and

15   Specific objections, agreed to produce all "relevant and non-objectionable documents" responsive

16   to Request Nos. 1-4, 11, 13-15, 18, 21-26, 28-29, 31-36, 44-51, 53, 61-64, 118, 120-137, 141-156,

17   162-163, 165 and 166. Kidman Decl., Ex. 14. As to Request Nos. 9, 10 and 12, MGA also

18   agreed to produce "documents sufficient to show the timing of, and relevant facts regarding"

19   certain specified products. Id. Counsel for MGA sent another letter on February 16, 2007,

20   advising Mattel that MGA would produce documents responsive to Request Nos. 29 and 30.

21   Bradley Decl., Ex. 1. On May 21, 2007, MGA advised Mattel by letter that it agreed, in essence,

22   to withdraw its restriction to "relevant and non-objectionable documents" in its responses to the

23   Requests For Production. Bradley Decl., Ex. 3. On May 31, 2007, MGA served supplemental

24   responses to Mattel's Requests for Production, which no longer included the phrase "relevant and

25   non-objectionable." Kidman Decl., Exs. 11 and 16.

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 42

PAGE 421

3

1        In its opening brief, Mattel contends that MGA has improperly refused to produce

2  documents relating to:  the creation, origin, timing and ownership of the contested MGA products

3  and packaging, including the contested Bratz products and packaging (Request Nos. 5, 6-8, 16,

4  17, 19, 20, 38, 39, 48); MGA's alleged theft of Mattel's trade secrets and confidential information

5  by, among other things, targeting and recruiting current and former Mattel employees (Request

6  Nos. 42, 59, 60, 65-117, 138-140, 160, 161 and 164); damages (Request Nos. 27, 30 and 157-

7  159); facts MGA contends support its unfair competition claims (Request Nos. 45, 119 and 166).

8  Mattel contends that MGA has no legitimate basis for refusing to produce these categories of

9  documents because they are directly relevant to the claims and defenses in the case.  Mattel also

10  contends that MGA has improperly restricted the scope of its document production in response to

11  Request Nos. 1, 3, 4, 13, 18, 29, 49, 52 and 137.

12        MGA contends that Mattel's motion should be denied in its entirety for three reasons.

13  First, Mattel is seeking documents MGA already agreed to produce as a result of the meet and

14  confer process.  Second, Mattel is seeking documents that may be precluded by other motions

15  pending before the district court.  Third, Mattel is seeking documents that constitute an

16  unreasonable and overbroad fishing expedition.

17        As to the first point, MGA contends that it has already agreed to produce documents

18  responsive to Request Nos. 9, 10, 12, 26, 29, 30, 32-36, 45, 48-51, 118, 137, and 166.  Moreover,

19  MGA represents that it has produced more than 110,000 pages of documents, including

20  documents relating to the origin, infringement, design and tooling of Bratz and has also provided

21  Mattel with access to Bratz molds and sculpts.  MGA also represents that it is continuing to

22  search for and produce documents responsive to Mattel's requests on a rolling basis.

23        MGA also asserts that it "has revisited certain of Mattel's requests, and so as to avoid

24  further burdening the Court, MGA agrees to produce non-privileged documents in its possession,

25  custody or control, subject to its previously stated General and Specific Objections, that are

26

27

28

EXHIBIT  42

PAGE  422

4

1  responsive to the following sixteen requests:  5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and

2  157-159."  MGA's Opposition at p. 3.

3        MGA also represents that it is prepared to produce documents responsive to Mattel's

4  Request Nos. 65-117 and 119 (which seek documents concerning MGA-Mexico and its

5  employees, and other topics relevant to Mattel's counterclaims) now that Judge Larson issued an

6  order denying MGA's motion to dismiss Mattel's trade secret claims.[1]  MGA's Opposition at pp.

7  2 and 6.

8        As to the second point, MGA contends that Mattel's motion to compel is premature with

9  respect to Request Nos. 1, 3, 4, 13 and 18.  MGA explains that these requests seek, among other

10  things, information pertaining to undisclosed and/or unreleased MGA products.  The Discovery

11  Master issued an order compelling MGA to produce such documents in response to other Mattel

12  discovery requests.  MGA appealed the Discovery Master's ruling, which was heard by Judge

13  Larson on July 2, 2007.  MGA contends that it should not be required to produce documents

14  responsive to Request Nos. 1, 3, 4, 13 and 18 until Judge Larson issues a ruling.

15        For the remaining requests, however, MGA stands by its objections.  More specifically,

16  MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160, 161 and 164 are grossly overbroad

17  and unduly burdensome.

18        In its reply brief, Mattel contends that MGA's belated offers to produce responsive

19  documents do not obviate the need for an order compelling production for several reasons.  First,

20  Mattel contends that in many instances, MGA's purported agreements to produce responsive

21  documents are subject to major qualifications.  For example, in response to Request Nos. 9, 10

22  and 12, MGA's meet and confer letter indicates that MGA has limited its production of

23  documents to only "documents sufficient to show the timing of, and relevant facts regarding"

24  certain products.  Kidman Decl., Ex. 14.  Second, Mattel points out that, in some instances, the

25

26  _____

27  [1]   Judge Larson issued the order on June 27, 2007, a day after Mattel submitted its opening brief.

28

EXHIBIT 42

PAGE 423

5

1    representations in MGA's meet and confer letters conflict with MGA's subsequent May 31, 2007

2    supplemental responses.  For example, even though MGA stated earlier in its two meet and confer

3    letters that it would produce documents responsive to Request Nos. 9, 10, 12, 26, 30, 32-36, 45,

4    48, 50, 51, 118 and 166, MGA's May 31, 2007 supplemental responses indicate that MGA

5    objects and refuses to produce documents responsive to these requests.  Third, Mattel contends

6    that MGA has acknowledged its responsibility to produce documents responsive to Request Nos.

7    65-117 and 119 in view of Judge Larson's June 27, 2007 order denying MGA's motion to dismiss

8    Mattel's counterclaims, and yet, MGA has failed to do so.  Fourth, Mattel points out that MGA's

9    opposition brief is internally inconsistent with respect to Request Nos. 55 and 56, stating both that

10   MGA agrees to produce documents responsive to the requests, and that MGA objects to the

11   requests as overbroad and burdensome.  See MGA's Opposition at pp. 3 and 8.

12        Mattel also contends that Request Nos. 1, 3, 4, 13 and 18 are no longer premature because

13   on July 5, 2007, two days after MGA submitted its opposition brief, Judge Larson issued an order

14   upholding the Discovery Master's ruling with respect to undisclosed and/or unreleased MGA

15   products.  Accordingly, Mattel requests an order compelling production of documents all

16   documents responsive to Request Nos. 1, 3, 4, 13 and 18 without any limitations, and overruling

17   any objections thereto.

18        With respect to the remaining requests to which MGA continues to object, Mattel reasserts

19   that the requests seek documents relevant to Mattel's trade secret counterclaims.  Mattel also

20   contends that MGA has failed to establish that complying with the requests would impose an

21   undue burden.

22                               III. DISCUSSION

23        Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

24   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

25   party." Fed.R.Civ.P. 26(b)(1).  Fishing expeditions to discover new claims, however, are not

26   permitted.  See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 42

PAGE 424

6

1  2004) ("District courts need not condone the use of discovery to engage in 'fishing

2  expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

3  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

4  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

5  the phrase "subject matter involved in the pending action," were intended to prevent discovery

6  that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

7  litigate the issues presented by the pleadings but to develop new claims or defenses.).

8         Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

9  extent of use of the discovery methods if the court determines that "(i) the discovery sought is

10  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

11  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

12  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

13  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

14  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

15  the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

16  26(b)(2).

17  **Request Nos. 1, 3, 4, 13 and 18**

18         Request No. 1 seeks "[a] sample of each of the CONTESTED MGA PRODUCTS,

19  together with each such product's packaging, instructions, promotional materials and other

20  associated packaging materials." Request No. 3 seeks "[a] complete copy of each advertisement

21  or promotional statement prepared, produced, printed, broadcast, made available to anyone in any

22  manner via the Internet, or otherwise used or disseminated in any way in connection with the

23  CONTESTED MGA PRODUCTS." Request No. 4 seeks "[a] complete copy of each

24  COMMUNICATION, advertisement, promotional statement that provides a basis for any claim

25  by [MGA] against MATTEL." Request No. 13 seeks "[a]ll DOCUMENTS RELATING TO any

26  revision of any CONTESTED MGA PRODUCTS, including but not limited to any proposed

27

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

7

EXHIBIT 42

PAGE 425

1  alternatives, modifications or changes (whether or not implemented) to such CONTESTED MGA

2  PRODUCTS." Request No. 18 seeks "[a]ll DOCUMENTS RELATING TO the marketing,

3  advertising, promotion, licensing, offering for sale or sale of the CONTESTED MGA

4  PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans,

5  sales forecasts, strategies, surveys and analyses and including but not limited to all catalogs,

6  advertisements, brochures, displays and Internet publications."

7          During the meet and confer process, MGA agreed to produce documents responsive to

8  Request Nos. 1, 3, 4, 13 and 18. Kidman Decl., Ex. 14. In its subsequent supplemental

9  responses, however, MGA responded that it would produce responsive documents "visible to the

10 consuming public at the point of purchase," "made available to the public," or "presented to the

11 consuming public." MGA's Supp. Response, Kidman Decl., Ex. 8 and 16.

12         Mattel contends that the requested documents and items are relevant to MGA's claim of

13 "serial copying," whether or not they are seen by the consuming public. Mattel also contends that

14 the documents it seeks are relevant to any claim by MGA of "post sale confusion." Furthermore,

15 Mattel argues that MGA's restrictions on discovery are unreasonable in light of MGA's own

16 claimed trade dress, which MGA alleges extends to the entirety of MGA's marketing techniques

17 and product appearance. Mattel also contends that Request No. 13 seeks documents that are

18 directly relevant to MGA's claim that Mattel systematically modified its products to increase their

19 similarity to MGA's products over time.

20         In its opposition brief, MGA does not attempt to refute any of Mattel's relevancy

21 arguments above, relying instead on its argument that these requests are premature until Judge

22 Larson issues a ruling. Judge Larson, however, issued an order on July 5, 2007. Accordingly, the

23 requests are no longer premature. The subject requests are relevant and not unduly burdensome.

24 MGA is ordered to produce all non-privileged documents that are responsive to Request Nos. 1,

25 3, 4, 13 and 18.

26 //

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT 42

PAGE 426

1   <u>**Request Nos. 5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159**</u>

2          In its opposition brief, MGA agrees to produce documents responsive to Request Nos. "5-

3   8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159." MGA's Opposition at p. 3. Later in its

4   opposition brief, however, MGA contends that Request Nos. 55 and 56 are overbroad and

5   burdensome. <u>See</u> MGA's Opposition at pp. 3 and 8. Request No. 55 seeks production of "[a]ll

6   periodicals, whether they be magazines, newspapers, newsletters, or any other type of periodical,

7   that mention the CONTESTED MGA PRODUCTS that have been published since January 1,

8   1999." Request No. 56 seeks "[a]ll television or radio broadcasts or cablecasts that mention the

9   CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999." MGA

10   contends that these requests encompass, among other things, every single advertisement MGA

11   ever ran in connection with BRATZ or any of the other products at issue.

12          Mattel contends that Request Nos. 55 and 56 are designed to obtain documents that may

13   contain admissions relevant to various issues in the case, including admissions regarding the

14   origin and timing of the products at issue; the performance of the contested products or MGA as a

15   whole, which may undercut MGA's claims for damages; and statements that might reveal that

16   MGA had access to confidential Mattel information.

17          Although Request Nos. 55 and 56 encompass potentially relevant documents, they are

18   overbroad. They require MGA to produce every single advertisement MGA ever ran in

19   connection with all of the products at issue. The requests are not limited in any respect to the

20   subjects of interest to Mattel, i.e., the origin and timing of the products at issue. Furthermore,

21   Mattel has utilized other document requests and depositions to obtain the type of evidence it now

22   seeks.

23          Accordingly, Mattel's motion is granted as to Request Nos. 5-8, 16-17, 19-20, 27, 37-40,

24   43, 52, and 157-159 to ensure a deadline for production, and denied as to Request Nos. 55 and 56

25   pursuant to Rule 26(b)(2), Fed.R.Civ.P.

26   //

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT ___42___

PAGE ___427___

9

1  **Request Nos. 9, 10, 12**

2        Request Nos. 9, 10 and 12 call for "[a]ll DOCUMENTS RELATING TO the invention,

3  creation, origin, conception, authorship, design, development, production, engineering,

4  manufacture, distribution, sale and ownership of products and packaging" "that YOU contend

5  provide a basis for any claim against MATTEL, whether or not such claim is in the

6  COMPLAINT" (No. 9); "that YOU contend MATTEL copied or infringed" (No. 10); and related

7  "COMMUNICATIONS" (No. 12). During the meet and confer process, MGA agreed to produce

8  "documents sufficient to show the timing of, and relevant facts" regarding the following products

9  on the following topics:

10      • "First generation 'Bratz'" line, including packaging – invention, creation, origin,

11      conception, authorship, design, development, sale and ownership;

12      • "Bratz" "Wintertime Wonderland" line, including packaging – invention, creation,

13      origin, conception, authorship, and first sale;

14      • "Bratz" "Sportz" Cloe, including packaging – invention, creation, origin, conception,

15      authorship and first sale;

16      • "Bratz" "Sun-Kissed Summer" line, including packaging and playset – invention,

17      creation, origin, conception, authorship, and first sale;

18      • "Bratz" "Formal Funk" line –invention, creation, origin, conception, authorship, and first

19      sale;

20      • "Bratz" "Runway Disco," including packaging – invention, creation, origin, conception,

21      authorship, and first sale;

22      • "Bratz" "Funky Fashion Makeover Head," including packaging – invention, creation,

23      origin, conception, authorship, and first sale;

24      • "Bratz" "Petz," including packaging – invention, creation, origin, conception,

25      authorship, and first sale;

26

27

28

1 • "4-Ever Best Friends," including packaging – invention, creation, origin, conception,

2 authorship, and first sale;

3 • "Mommy's Little Patient" – invention, creation, origin, conception, authorship, and first

4 sale;

5 • "AlienRacers," including logo – invention, creation, origin, conception, authorship, and

6 first sale; and

7 • "Bratz" "Diamondz" line – invention, creation, origin, conception, authorship, and first

8 sale.

9 Kidman Decl., Ex. 14. In response to Request No. 9, MGA also agreed to produce documents

10 containing development, production and sales information for the product(s) affected by the hair

11 shortage allegedly caused by Mattel and "sufficient to show the timing of and relevant facts

12 regarding the shortage and its effect on MGA." Id. Thereafter, MGA asserted objections to these

13 requests in its May 31, 2007 supplemental responses. In opposition to Mattel's motion, however,

14 MGA restated that it would produce documents responsive to these requests consistent with its

15 prior meet and confer letter. MGA's Opposition at p. 5.

16 Mattel contends that MGA's agreement to produce documents is insufficient because

17 MGA has limited its production to documents "sufficient to show." MGA's opposition brief fails

18 to address Mattel's argument. Instead, MGA merely asserts that it agreed to produce documents

19 responsive to Request Nos. 9, 10 and 12 during the meet and confer process, and therefore

20 Mattel's motion should be denied as moot.

21 Request Nos. 9, 10 and 12 clearly seek relevant information, and MGA has failed to

22 justify why its production should be limited to documents "sufficient to show." Therefore,

23 Mattel's motion is granted as to Request Nos. 9, 10 and 12.

24 <u>Request Nos. 26, 29, 30, 32, 36, 45, 48-51, 118, 137 and 166</u>

25 In its two meet and confer letters MGA agreed to produce, subject to its General and

26 Specific Objections, documents responsive to Request Nos. 26, 29, 30, 32-36, 45, 48-51, 118, 137

27

28

1    and 166. Kidman Decl., Ex. 14. Mattel points out, however, that MGA's May 31, 2007

2    supplemental responses are inconsistent insofar as the responses indicate that MGA continues to

3    object to some of the requests or otherwise agrees to produce only a limited portion of documents

4    responsive to other requests. Mattel's Reply Brief at p. 7. Nevertheless, in its opposition brief,

5    MGA reaffirms its earlier agreement to produce all responsive documents, and states that it

6    considers Mattel's motion to be moot. See MGA's Opposition at pp. 5-6. Mattel's motion is

7    granted as to this category of requests.

8    **Request Nos. 65-117 and 119**

9        In its opposition brief, MGA agrees to produce documents responsive to Mattel's Request

10   Nos. 65-117 and 119 now that Judge Larson issued an order denying MGA's motion to dismiss

11   Mattel's trade secret claims. MGA's Opposition at pp. 2 and 6. Mattel's motion is granted as to

12   these requests.

13   **Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164**

14       MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164 are overbroad

15   and unduly burdensome. Mattel insists that they are not. More specifically, Mattel contends that

16   the requests seek documents regarding MGA's alleged theft of Mattel's trade secrets, and in

17   particular, the theft of trade secrets through targeting and hiring current and former Mattel

18   employees.

19       Request No. 42 seeks "[a]ll COMMUNICATIONS between [MGA] and any individual

20   while the individual was employed by MATTEL." Although the request may encompass relevant

21   documents, it is overbroad insofar as it requires production of all communications, regardless of

22   subject matter. Furthermore, the request is objectionable to the extent it seeks documents that are

23   equally available to Mattel. Therefore, Mattel's motion is denied as to Request No. 42 pursuant

24   to Rule 26(b)(2), Fed.R.Civ.P.

25       Request No. 54 seeks "[a]ll DOCUMENTS RELATING TO any COMMUNICATION by

26   [MGA] with any news organization regarding the CONTESTED MGA PRODUCTS or the

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 42

PAGE 430

12

1    CONTESTED MATTEL PRODUCTS." Once again, the request encompasses potentially

2    relevant documents, however it is overbroad, seeking all documents relating to any

3    communications by MGA with any news organization. Furthermore, the request seeks documents

4    that are of relatively minimal relevance to the claims and defenses in the case. Therefore,

5    Mattel's motion is denied as to Request No. 54 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

6          Request Nos. 58 seeks "[a]ll DOCUMENTS RELATING TO publicity by [MGA] or

7    about the CONTESTED MGA PRODUCTS since January 1, 1999, including but not limited to

8    advertising, media releases, and public relations material." This request is also overbroad in that

9    it seeks all documents relating to publicity by MGA about its products at issue in the litigation.

10   Mattel's motion is therefore denied as to Request No. 58 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

11         Request No. 59, asks for "[a]ll DOCUMENTS RELATING TO any effort by [MGA] to

12   recruit employees or contractors since January 1, 1999, including but not limited to advertising,

13   media releases, brochures, articles, catalogs, handbooks, and public relations material." The

14   request is overbroad insofar as it requires production of all documents relating to MGA's

15   recruiting, including for instance, recruiting from competitors other than Mattel. Mattel's motion

16   is therefore denied as to Request No. 59 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

17         Request No. 60 seeks "[a]ll DOCUMENTS RELATING TO the hiring, engagement, or

18   retention by [MGA] of any former or current MATTEL employee or contractor since January 1,

19   1999, including but not limited to all employment agreements and agreements RELATING TO

20   confidentiality or the invention, authorship, or ownership of any concept or product." Request

21   No. 138 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON RELATING TO

22   the departure from MATTEL of any current or former MATTEL employee or contractor."

23   Request No. 139 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON

24   RELATING TO the obligations to MATTEL, including the duty of confidentiality, of any current

25   or former MATTEL employee or contractor. Request No. 140 seeks "[a]ll

26   COMMUNICATIONS between [MGA] and any current or former MATTEL employee or

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT 42

PAGE 431

13

1   contractor RELATING TO the ownership of any idea, concept, design, or product. Unlike the

2   previous requests, Request Nos. 60, 138, 139 and 140 are reasonably tailored to seek documents

3   central to Mattel's allegation that MGA stole its trade secrets through targeting and hiring current

4   and former Mattel employees. MGA has not carried its burden of establishing that it would be

5   unduly burdensome to comply with these requests. Accordingly, Mattel's motion is granted as to

6   Request Nos. 60, 138, 139 and 140.

7           Request No. 160 seeks "[a]ll DOCUMENTS received from MATTEL (whether directly

8   or indirectly) by [MGA] at any time since January 1, 1999." Request No. 161 seeks "[a]ll

9   DOCUMENTS that [MGA has] reason to believe were created by or originated from MATTEL,

10  other than MATTEL products that [MGA] purchased at retail." Request No. 164 seeks "[a]ll

11  DOCUMENTS RELATING TO any COMMUNICATIONS with, or inquiry or investigation by,

12  any government entity RELATING TO the CONTESTED MGA PRODUCTS or the

13  CONTESTED MATTEL PRODUCTS." These three requests are also reasonably tailored to seek

14  documents that could support Mattel's allegations of trade secret theft. MGA has failed to

15  establish that it would be unduly burdensome to comply with these requests. Mattel's motion is

16  granted as to Request Nos. 160, 161 and 164.

17                                  IV. CONCLUSION

18          For the reasons set forth above, Mattel's motion is granted as to Request Nos. 1, 3-10, 12,

19  13, 16-20, 26, 27, 29, 30, 32-40, 43, 45, 48-52, 60, 65-117, 118, 119, 137-140, 157-161, 164 and

20  166, and denied as to Request Nos. 42, 54-56, 58, 59. MGA shall produce, without limitation, all

21  non-privileged responsive documents in accordance with this Order no later than August 30,

22  2007. Mattel's request for sanctions is denied.

23          Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

24  Master, Mattel shall file this Order with the Clerk of Court forthwith.

25  Dated: August 13, 2007

26                                          HON. EDWARD A. INFANTE (Ret.)
                                                    Discovery Master

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT 42

PAGE 432

14

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 13, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA; DENYING REQUEST FOR MONETARY SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 13, 2007, at San Francisco, California.

_Sandra Chan_

Sandra Chan

EXHIBIT ___

PAGE __433__

# Exhibit 43

**CONFORMED COPY**

FILED

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2   (johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5   (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:   (213) 443-3100

2007 MAY 18  PM 3: 45

BY

**CALENDARED**

8   Attorneys for Mattel, Inc.

9

UNITED STATES DISTRICT COURT

10

CENTRAL DISTRICT OF CALIFORNIA

11

EASTERN DIVISION

12

| | |
|---|---|
| 13  CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| 14        Plaintiff, | Consolidated with |
|             vs. | Case No. CV 04-09059 |
| 15 | Case No. CV 05-02727 |
| 16  MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 17        Defendant. | Hon. Edward A. Infante (Ret.) |
| | Discovery Master |
| 18  AND CONSOLIDATED CASES | [~~PROPOSED~~] ORDER GRANTING |
| 19 | MATTEL INC.'S MOTION TO |
| | COMPEL MGA TO PRODUCE |
| 20 | WITNESSES FOR DEPOSITION |
| | PURSUANT TO RULE 30(B)(6) |
| 21 | Date:  May 15, 2007 |
| 22 | Time:  8:15 a.m. |
| | Place:  Telephonic |
| 23 | Discovery Cut-Off:  October 22, 2007 |
| 24 | Pre-Trial Conference: January 14, 2008 |
| | Trial Date:  February 12, 2008 |

25

26

27                                    EXHIBIT 43

28                                    PAGE 434

07209/2121176.1

ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

C5/18/07

# ~~[PROPOSED]~~ ORDER

Having considered Mattel, Inc.'s Motion To Compel MGA To Produce Witnesses For Deposition Pursuant To Rule 30(b)(6) (the "Motion"), and all other papers and argument submitted in support of or opposition to the Motion, and finding good cause therefor, Mattel's Motion is GRANTED.

IT IS HEREBY ORDERED that:

1.     MGA shall make Paula Garcia available for deposition on or before June 15, 2007 as a designee on Topics 1-3 and 6-8 of Mattel's Notice of Deposition of MGA Pursuant to Rule 30(b)(6) dated February 16, 2005 and in her individual capacity.

2.     MGA shall confirm its designees and the dates of the designees' availability for deposition for all Topics except Topic Nos. 25 and 26 in Mattel's Notice of Deposition of MGA Pursuant to Rule 30(b)(6) dated February 1, 2007 (the "Second Notice") on or before May 22, 2007.

3.     MGA shall make its designees for all Topics in the Second Notice, except Topic Nos. 25 and 26, available for deposition on or before June 30, 2007.

4.     The parties shall meet and confer regarding the timing of the depositions on Topic Nos. 25 and 26 of the Second Notice.  Such depositions may take place after June 30, 2007.

5.     All of MGA's objections and/or limitations regarding the Topics in Mattel's Rule 30(b)(6) deposition notices are overruled.

//
//
//
//
//
//

EXHIBIT 43

PAGE 435

07209/2121176.1

-1-

ORDER GRANTING MATTEL'S MOTION TO COMPEL ~~DEPOSITION~~ OF MGA

1

2      6.     Mattel's request for sanctions is denied.

3

4    **IT IS SO ORDERED.**

5

6 DATED: May 16, _____, 2007

7

8                              _____

9                             Hon. Edward A. Infante (Ret.)
Discovery Master

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                            EXHIBIT 43

28                                          PAGE 436

-2-
ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 17,

2007, I served the attached ORDER GRANTING MATTEL INC.'S MOTION TO COMPEL

MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(B)(6)

in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 17, 2007, at San Francisco, California

Anthony R. Sales

EXHIBIT 43

PAGE 437