1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

| 11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|----|----|----|
| 12 | Plaintiff, | Consolidated with Case Nos. CV 04-09059 & CV 05-2727 |
| 13 | vs. | **DISCOVERY MATTER** |
| 14 | MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Robert C. O'Brien Pursuant To Order Of January 6, 2009]** |
| 15 | | |
| 16 | Defendant. | MATTEL, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL |
| 17 | AND CONSOLIDATED ACTIONS | PRODUCTION OF DOCUMENTS RESPONSIVE TO THIRD-PARTY |
| 18 | | SUBPOENAS BY IGWT GROUP, LLC AND IGWT 826 INVESTMENTS, LLC |
| 19 | | |
| 20 | | [Supplemental Declaration of Jon D. Corey Submitted Concurrently] |
| 21 | | Hearing Date:   March 4, 2009 |
| 22 | | Time:             10:00 a.m. Place:            Arent Fox, LLP |
| 23 | | **Phase 2:** |
| 24 | | Discovery Cut-off:      Dec. 11, 2009 Pre-trial Conference:   Mar. 1, 2010 |
| 25 | | Trial Date:              Mar. 23, 2010 |
| 26 | | |
| 27 | | |
| 28 | | |

07975/2804771.1

1

# <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ............................................................................................................2

I.      AS THE COURT HAS EXPLICITLY REITERATED, THE COURT
        HAS PLACED NO LIMITATIONS ON PHASE 2 DISCOVERY .................2

II.     MATTEL'S SUBPOENA SEEKS DOCUMENTS RELEVANT TO
        PHASE 2 .............................................................................................................4

III.    IGWT HAS NOT SHOWN THAT MATTEL'S SUBPOENAS ARE
        OVERBROAD OR UNDULY BURDENSOME ...........................................6

        A.     IGWT Has Not Shown Undue Burden..................................................6

        B.     IGWT Is Not Entitled to Heightened Protection .................................9

IV.     IGWT'S PRIVACY CONCERNS ARE ALLEVIATED BY THE
        PROTECTIVE ORDER ................................................................................10

V.      IGWT HAS WAIVED ANY REMAINING OBJECTIONS........................11

VI.     MATTEL AMPLY MET AND CONFERRED IN GOOD FAITH.............12

CONCLUSION ........................................................................................................14

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>Cases</u>

4 | A. Farber and Partners, Inc. v. Garber,
5 | 234 F.R.D. 186 (C.D. Cal. 2006) ............................................................ 5, 7, 11

6 | Atifah v. Union Security Ins. Co.,
   | 2008 WL 2714459 (E.D. Mich. July 8, 2008) ........................................ 5

7 | Bible v. Rio Properties, Inc.,
8 | 246 F.R.D. 614 (C.D. Cal. 2007) ............................................................ 5

9 | Buckinmaster v. Prudential Financial, Inc.,
   | 2008 WL 624532 (D. Neb. March 3, 2008) ............................................ 5

10 | Calcor Space Facility, Inc. v. Superior Court,
11 | 53 Cal. App. 4th 216 (1997) .................................................................... 10

12 | DIRECTV, Inc. v. Puccinelli,
   | 224 F.R.D. 677 (D. Kan. 2004) ............................................................... 11

13 | Fletcher v. Atex, Inc.,
14 | 156 F.R.D. 45 (S.D.N.Y. 1994) ............................................................... 8

15 | Goodman v. U.S.,
   | 369 F.2d 166 (9th Cir. 1966) ................................................................... 6

16 | In re Heritage Bond Litigation,
17 | 2004 WL 1970058 (C.D. Cal. 2004) ....................................................... 11

18 | IP Co., LLC v. Cellnet Tech., Inc.,
   | 2008 WL 3876481 (N.D. Cal. 2008) ....................................................... 10

19 | Keith H. v. Long Beach Unified School District,
20 | 228 F.R.D. 652 (C.D. Cal. 2005) ............................................................ 10

21 | McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,
   | 894 F.2d 1482 (5th Cir. 1990) ................................................................. 8

22 | Nagele v. Electronic Data Systems Corp.,
23 | 193 F.R.D. 94 (W.D.N.Y. 2000) ............................................................. 8

24 | Nidec Corp. v. Victor Co. of Japan,
   | 249 F.R.D. 575 (N.D. Cal. 2007) ............................................................ 10

25 | Panola Land Buyers Ass'n v. Shuman,
26 | 762 F.2d 1550 (11th Cir. 1985) ............................................................... 8

27 | Putnam v. Eli Lilly and Co.,
   | 508 F. Supp. 2d 812 (C.D. Cal. 2007) .................................................... 10

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Residential Constructors, LLC v. Ace Property and Cas. Ins. Co.,</u>
 2006 WL 3149362 (D. Nev. 2006) ..................................................................8

<u>St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.,</u>
 198 F.R.D. 508 (N.D. Iowa 2000) ................................................................5

<u>U.S. E.E.O.C. v. ABM Industries Inc.,</u>
 2008 WL 5385618 (E.D. Cal. 2008) ...............................................................8

<u>Visto Corp. v. Smartner Information Sys., Ltd.,</u>
 2007 WL 218771 (N.D. Cal. 2007).............................................................10

## **Preliminary Statement**

As Mattel demonstrated in its Motion to Compel, serious questions exist about newly formed entities that MGA's CEO and principal shareholder, Isaac Larian, created during trial to transfer Bratz products from MGA for pennies on the dollar.  MGA is selling current product to these newly-formed Larian companies -- named IGWT Group, LLC and IGWT 826 Investments, LLC (hereinafter, collectively "IGWT") -- at a discount of more than 80 percent.

Mattel has been trying, for many weeks, to obtain even the most basic discovery about the nature and terms of these transactions.  Continuing defendants' longstanding practice of discovery obstruction that has resulted in dozens of orders compelling discovery against them, MGA, Larian and the third-parties have all refused to provide a single page of documents relating to these transactions, forcing Mattel to seek relief from the Discovery Master.

The relevance of the information requested is beyond legitimate dispute and relates to numerous aspects of Phase 2, including Mattel's RICO and unfair competition claims, damages, punitive damages and MGA's unclean hands defense.  The information is also directly relevant to issues that MGA itself has raised and unquestionably will continue to raise, including in its requests to stay the Court's injunctive orders based on its assertions about its financial condition.

Unable to dispute that the subpoenas seek relevant, discoverable information, IGWT instead raises baseless arguments.  Thus, IGWT -- like MGA and the Omni Parties before it -- claims that Mattel's third-party discovery is purportedly barred by the Court's January 7, 2009 Order appointing a forensic auditor.  But the Court never banned any Phase 2 discovery; to the contrary, the Court lifted the stay of all Phase 2 discovery.  And, indeed at the February 11, 2009 hearing, Judge Larson rejected the very argument that IGWT makes here and reiterated that his January 7 Order placed no limits on discovery into MGA's finances.

1    IGWT also argues that Mattel's motion should be denied because
2    Mattel failed to meet and confer in good faith.  IGWT's contention, however, is
3    belied by the undisputed facts and by the written record.  As IGWT admits, counsel
4    engaged in two substantive teleconferences to discuss differences on January 30 and
5    February 2, 2009, and Mattel and IGWT exchanged letters and e-mails regarding
6    their positions.  IGWT's procedural complaints are groundless.

7    The Discovery Master should grant Mattel's motion and order the
8    production of responsive documents.

9                                    **Argument**

10   **I.    AS THE COURT HAS EXPLICITLY REITERATED, THE COURT**
11   **HAS PLACED NO LIMITATIONS ON PHASE 2 DISCOVERY**

12   IGWT erroneously invokes the Court's January 7, 2009 Order
13   appointing a forensic auditor to contend that Mattel's subpoenas are "premature at
14   this time."  (Opp. at 5-7).   Specifically, IGWT speculates that the auditor's
15   investigation may provide the information Mattel seeks and argues that Mattel is
16   therefore precluded from taking discovery on MGA's and Larian's finances.  (Opp.
17   at 5-7).  IGWT is wrong.  Nothing in the January 7 Order stays or otherwise limits
18   Phase 2 discovery in any way.[1]  To the contrary, on January 6, 2009 -- just one day
19   before appointing the forensic auditor -- the Court lifted the stay on Phase 2
20   discovery *without limitation*.[2]  Indeed, at a hearing on February 11, 2009, Judge
21   Larson rejected IGWT's supposed reading of the Orders.  Judge Larson reiterated

22

23   _____

24   [1]   Court's January 7, 2009 Order Appointing a Forensic Auditor, attached as Exhibit
25   105 to the Declaration of Jon Corey in Support of Mattel's Motion to Compel Production
     of Documents Responsive to Third Party Subpoenas, dated February 3, 2009 ("Corey
26   Dec.").
     [2]   Court's January 6, 2009 Order Appointing Discovery Master, at 2, Corey Dec., Exh.
27   35.

28

that the appointment of a forensic auditor did not supplant or limit Phase 2
discovery:

> Mr. Durkin [the forensic auditor] is acting at the Court's direction to
> inform the Court of information.  I may or may not release any of the
> information that Mr. Durkin provides; so no one, neither side, should
> be relying upon the information that Mr. Durkin is gathering for
> purposes of litigating this case.  ***That's an entirely separate matter***.
> ***And I have not stayed any discovery***, and there should be no reliance
> on that.[3]

In response to defendants' suggestion at the hearing that the January 7 Order
foreclosed financial discovery, Judge Larson further stated that "there is ***nothing***
from this Court which is precluding any discovery sought for the trial that is
scheduled."[4]   And, in response to defendants' argument that requests seeking
"receiver discovery" were barred by its prior rulings, the Court rejected the
purported distinction (and stated it had made no such distinction) and noted that it
saw "tremendous overlap" between so-called "receiver discovery" and Phase 2
discovery.[5]   After the transcript of the February 11, 2009 hearing was available, in
an effort to narrow the scope of any dispute based on the Court's comments, counsel
for Mattel provided a copy of the relevant pages of the hearing transcript to counsel
for IGWT because he did not attend that hearing.[6]

---

[3]   February 11, 2009 Hearing Transcript, 98:8-15, Declaration of Jennifer K. Del
Castillo ("Castillo Dec."), filed February 17, 2009, Exh. A (emphasis added).

[4]   <u>Id.</u> at 101:22-25.

[5]   <u>Id.</u> at 100:20-101:8.

[6]   <u>See</u> Email from Jon Corey to Jeffrey B. Valle, dated February 12, 2009, attached as
Exhibit 3 to the Supplemental Declaration of Jon D. Corey in Support of Mattel, Inc.'s
Reply in Support of Motion to Compel Production of Documents Responsive to Third-
Party Subpoenas By IGWT Group, LLC and IGWT 826 Investments, LLC, dated February
24, 2009 ("Supp. Corey Dec.").

Thus, at both the hearing and in its Minute Order, the Court ruled that Phase 2 discovery shall proceed and that the forensic auditor's work is an "entirely separate matter" and not something the parties should be "relying on." So whether or not the Court appoints a receiver or discloses the auditor's report, nothing in the Court's rulings forecloses relevant discovery or renders it "premature." IGWT's argument regarding the January 7 Order is without basis and provides no excuse for its refusal to produce responsive documents.

## II.   MATTEL'S SUBPOENA SEEKS DOCUMENTS RELEVANT TO PHASE 2

Rather than make any effort to address the merits of Mattel's showing of relevance, IGWT's sole response is the conclusory statement that Mattel's requests "seek information that is irrelevant." (Opp. at 7).

Mattel's Motion, however, demonstrated -- at length -- the relevance of the discovery sought. As explained in Mattel's Motion, the requested documents are relevant to understand MGA's and Larian's financial condition and to significant transactions affecting their condition. (Mot. at 21-22). MGA's and Larian's net worth, financial condition, and ability to pay are also relevant to the punitive damages that will be tried as part of Phase 2 of this case. (Mot. at 21-22). The MGA Parties' actions in manipulating the sources of funding and apparently using shell companies controlled by Larian to purchase Bratz products from MGA for pennies on the dollar and resell them at a profit -- for Larian and not MGA -- are relevant to Mattel's Phase 2 criminal copyright infringement claims, are relevant to MGA's and Larian's financial condition and represent anti-competitive conduct actionable under Mattel's unfair competition claim. (Mot. at 24-25). MGA's mid-trial transactions with non-operating entities bear the classic hallmarks of an attempt to fraudulently transfer assets to its controlling shareholders that, if substantiated, may constitute predicate acts of wire and mail fraud that support Mattel's RICO claims. (Mot. at 18-19). The requested documents are also relevant to the MGA

Parties' unclean hands defense.  Mattel is entitled to respond to this defense by demonstrating that MGA is precluded from invoking the unclean hands defense because they have not themselves acted with clean hands.  (Mot. at 23-24).  The information sought by the subpoenas is highly pertinent as well to Mattel's pending receivership motion and to defending against MGA's multiple, serial stay motions that place MGA's own financial condition squarely at issue.

Nowhere does IGWT address, let alone contest, Mattel's specific showing that the information sought is relevant on these grounds.  (Mot. at 18:3-25:4).  IGWT's failure to respond to Mattel's points and its reliance on a bare bones denial is fatal to its relevance objection.  See A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[B]oilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper."); Bible v. Rio Properties, Inc., 246 F.R.D. 614, 618 (C.D. Cal. 2007) (party resisting discovery has the burden of showing discovery should not be allowed); see also Buckinmaster v. Prudential Financial, Inc., 2008 WL 624532, *2 (D. Neb. 2008) (overruling relevancy objections and granting motion to compel; "It is insufficient for the party objecting to discovery based on relevance to simply make conclusory allegations that the request is irrelevant."); Atifah v. Union Security Ins. Co., 2008 WL 2714459, * 1 (E.D. Mich. 2008) (vague and conclusory allegations in opposition to a motion to depose were insufficient); St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (objecting party has the burden to substantiate its objections).

IGWT's unsubstantiated and erroneous relevance objection should be overruled.

## III. IGWT HAS NOT SHOWN THAT MATTEL'S SUBPOENAS ARE OVERBROAD OR UNDULY BURDENSOME

### A. IGWT Has Not Shown Undue Burden

IGWT asserts that Mattel's subpoena is overbroad and unduly burdensome and specifically objects to Request Nos. 1, 2 and 7 to IGWT Group and Request No. 7 to IGWT 826 Investments on this basis. (Opp. at 8-12). As the party resisting discovery, IGWT bears the burden of proving undue burden by "specific and compelling" proof; conclusory assertions are insufficient. Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966) ("The party must provide specific and compelling proof that the burden is undue."). IGWT has failed to make the required showing.

The only evidence of burden which IGWT provides is the declaration of Brad Schneider, a claimed IGWT Group employee.[7] In it, Mr. Schneider states that IGWT has entered into "between 400 and 500 sales contracts"; that for each of these sales there is anywhere from 12-20 corresponding documents, such as a purchase order, sales order, packing list, and bill of lading; and that there are therefore more than 10,000 documents potentially responsive to Mattel's requests.[8] IGWT then relies on these statements to argue that Mattel's Request Nos. 1 and 2 to IGWT Group -- seeking documents relating to IGWT's purchases from MGA and Larian, and its sales to third parties -- are unduly burdensome. (Opp. at 8-9).

IGWT's reliance on Mr. Schneider's declaration is misplaced, as Mattel told IGWT's counsel during the meet and confer process that, with respect to Request Nos. 1 and 2, Mattel is interested in documents showing IGWT's purchases and sales of MGA products, and that IGWT need not produce every single document associated with these transactions (such as bills of lading and packing

---

[7] See Declaration of Brad Schneider, dated February 17, 2009.
[8] Id.

slips).[9]  IGWT's representation that Mattel rejected any such limitation is incorrect. Rather, the point of dispute between the parties as to Request Nos. 1 and 2 was IGWT's erroneous contention that it should only be required to produce documents sufficient to show purchases and sales of *those products addressed in the Court's December 3, 2008 injunction orders*.[10]  As Mattel responded to IGWT, any such restriction would be improper, as information pertaining to IGWT's purchases and sales of non-enjoined products -- including non-Bratz products -- is relevant to Phase 2 issues, including to MGA's and Larian's credibility and net worth, to Mattel's RICO claims, and to defendants' unclean hands defense.[11]  Accordingly, Mattel is entitled to documents relating to MGA products other than the single category posited by IGWT.  Nonetheless, IGWT continues to pursue this groundless objection in its present opposition.  (Opp. at 8-9).

IGWT offers no other evidence of burden as to Request Nos. 1 and 2 to IGWT Group, and offers no evidence whatsoever with respect to Request No. 7 to IGWT Group and IGWT 826 Investments.[12]  This is plainly insufficient.  Courts consistently hold that the mere allegation of undue burden, without evidentiary support, is insufficient to resist discovery.  See Garber, 234 F.R.D. at 188

---

[9]  Supp. Corey Dec., ¶ 8.

[10]  See Letter from Jon Corey to Jeffrey B. Valle, dated February 2, 2009, Corey Dec., Exh. 7.

[11]  Id.

[12]  With respect to Request No. 7 to IGWT 826 Investments, IGWT claims in its Opposition that it "offered to provide all non-privileged documents" but that Mattel "did not even respond to this offer." (Opp. at 12).  That is not correct.  IGWT did not offer to produce any such documents, and Mattel certainly would not have rejected any such offer to do so.  To support its claim, IGWT cites to the declaration of its counsel, Jeffrey Valle. (Opp. at 12).  Yet, nowhere in his declaration does Mr. Valle state that he made any such offer.  See Declaration of Jeffrey B. Valle, dated February 17, 2009.  Nor does any such offer appear in Mr. Valle's email memorializing IGWT's "proposal."  See email from Jeffrey B. Valle to Jon Corey, dated February 2, 2009, Corey Dec., Exh. 8.

("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper--especially when a party fails to submit any evidentiary declarations supporting such objections.").[13]   Indeed, that is the rule that the Discovery Master in this case previously adopted and applied in this litigation.[14]

The reason that IGWT fails to make any additional showing of burden is undoubtedly because it cannot.  Both IGWT Group and IGWT 826 Investments are single-purpose entities, recently formed during the Phase 1 trial.[15]   Given that these entities sprung into existence only months ago, and given their single-purpose nature, any responsive documents in their possession are unlikely to be so voluminous that any burden could be characterized as "undue," especially in light of the importance of the information sought.  IGWT's burden and related objections should be overruled.

_____

[13]   See also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990) (objections that document requests are overly broad, burdensome and oppressive are insufficient to meet objecting party's burden of explaining why discovery requests are objectionable); Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir. 1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific to demonstrate why requested discovery is objectionable); U.S. E.E.O.C. v. ABM Industries Inc., 2008 WL 5385618, at *8 (E.D. Cal. 2008) ("A bare assertion of undue burden without factual allegations does not suffice."); Residential Constructors, LLC v. Ace Property and Cas. Ins. Co., 2006 WL 3149362, at *9 (D. Nev. 2006) ("In opposing discovery on grounds of burdensomeness, the objecting party is required to demonstrate that the time and expense involved in responding to the requested discovery will, in fact, be unduly burdensome."); Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94, 109 (W.D.N.Y. 2000) (overruling "burdensome" objections because objecting party failed to particularize basis for objection); Fletcher v. Atex, Inc., 156 F.R.D. 45, 54 (S.D.N.Y. 1994) ("If a party resists production on the basis of claimed undue burden, it must establish the factual basis for the assertion through competent evidence.").

[14]   See, e.g., May 15, 2007 Order by Discovery Master, at 14:4-6, attached as Exhibit 32 to the Supplemental Declaration of Jon Corey filed in response to the Omni Parties Opposition to Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas, dated February 13, 2009.

[15]   See IWGT Group, LLC registration information, Corey Dec., Exh. 50; IWGT 826 Investments, LLC registration information, Corey Dec., Exh. 101.

MATTEL, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL

## B.     IGWT Is Not Entitled to Heightened Protection

IGWT argues that it is entitled to the protection typically afforded to non-parties. (Opp. at 6-8). The contention is irrelevant, however. Here, IGWT has failed to established that Mattel's requests are overbroad or unduly burdensome, so IGWT's resort to its status as an alleged third-party is unavailing. Further, IGWT's contention that it is entitled to non-party protection should be afforded no weight, given that it so closely related to defendant Larian. As Mattel showed in its Motion, Larian created IGWT Group on June 26, 2008 -- during the Phase 1 trial -- and registered its place of business as his home address.[16] IGWT 826 Investments was formed on August 27, 2008 -- the day after the Phase 1 trial ended -- and is registered at the home address of Shirin Makabi (Isaac Larian's sister) and Eli Makabi (Isaac Larian's brother-in-law and the only shareholder of MGA other than Isaac Larian).[17] It thus appears that the IGWT entities are nothing more than single-purpose companies controlled by Larian, which he is using to purchase Bratz products from MGA for pennies on the dollar and resell them at a profit. To permit defendants and IGWT to engage in these types of sham transactions, while IGWT invokes its so-called "non-party" status to avoid producing highly relevant, discoverable information, would be fundamentally unfair and, indeed, incentivize

---

[16]   IWGT Group, LLC registration information, Corey Dec., Exh. 50.

[17]   IWGT 826 Investments, LLC registration information, Corey Dec., Exh. 101.

1    parties such as Larian to thwart discovery by the mere expedient of setting up a shell

2    company and touting its supposed non-party status.[18]

3    **IV.   IGWT'S PRIVACY CONCERNS ARE ALLEVIATED BY THE**

4    **PROTECTIVE ORDER**

5         IGWT objects to Request Nos. 3, 4, 5 and 6 to IGWT Group and

6    Request Nos. 3 and 4 to IGWT 826 Investments, on the grounds that the requests

7    seek information in violation of the right to privacy.[19]  (Opp. at 10-11).  However, as

8    Mattel noted in its Motion, the Court has entered a Protective Order in this case.

9    (Mot. at 28-29).   As such, IGWT's concerns about confidentiality do not justify

10   withholding documents from production.  See, e.g., Putnam v. Eli Lilly and Co., 508

11   F. Supp. 2d 812, 814 (C.D. Cal. 2007) (finding that a protective order "can strike the

12   appropriate balance between the need for the information and the privacy concerns"

13   of the party opposing production's employees); Keith H. v. Long Beach Unified

14   School District, 228 F.R.D. 652, 658 (C.D. Cal. 2005) (compelling production of

15   _____

16        [18]  IGWT's cited authorities are inapposite, as they involve genuine non-parties.  See
17   Nidec Corp. v. Victor Co. of Japan, 249 F.R.D. 575, 577 (N.D. Cal. 2007); IP Co., LLC v.
     Cellnet Tech., Inc., 2008 WL 3876481, at *1 (N.D. Cal. 2008); Calcor Space Facility, Inc.
18   v. Superior Court, 53 Cal. App. 4th 216, 225 (1997).  None of these cases hold that an
     entity which is effectively an arm of a party-defendant is entitled to heightened protection.
19   Nor does Visto Corp. v. Smartner Information Sys., Ltd., 2007 WL 218771 (N.D. Cal.
20   2007), the other case relied on by IGWT, support its position.  There, the Court denied a
     motion to compel because the subpoena had been inadvertently served on the wrong,
21   though admittedly related, entity.  See id. at *2 ("Thus, service of the subpoena on Draper
     Five was insufficient to reach any documents that might exist regarding the participation of
22   Draper Fund Six in the funding.").  By contrast, there is no dispute here that Mattel
23   properly served its subpoenas on IGWT.
          [19]  For Request No. 3 to IGWT Group and to IGWT 826 Investments, which seeks
24   documents related to the membership and ownership of these entities, IGWT argues that to
     the extent it is required to produce anything, it should only have to disclose Larian's
25   ownership interest.  (Opp. at 10-11)  Any such limitation is plainly improper.  Information
26   showing whether any other MGA employee or affiliate or Larian family member or
     associate has an interest in IGWT is indisputably relevant to Phase 2 claims and defenses,
27   as Mattel has shown.

28

07975/2804771.1

student records because of slight redactions and "a protective order to minimize any invasion of the students' privacy rights"); In re Heritage Bond Litigation, 2004 WL 1970058 at *5 n.12 (C.D. Cal. 2004) ("Any privacy concerns . . . defendants have in their bank records and related financial statements are adequately protected by the protective order, and are not sufficient to prevent production in this matter"); A. Farber and Partners, Inc., 234 F.R.D. at 191-92 ("[P]laintiff's need for defendant Garber's financial documents outweighs defendant Garber's claim of privacy, especially when the 'impact' of the disclosure of the information can be protected by a 'carefully drafted' protective order").

Further, IGWT's continued reliance on this objection disregards the former Discovery Master's and the District Court's repeated rulings that the Protective Order alleviates any ostensible privacy concerns.[20]  IGWT has not made any showing as to why the Court's and Discovery Master's previous orders should not apply here or indeed that any privacy interest would be compromised here.

## V.    IGWT HAS WAIVED ANY REMAINING OBJECTIONS

Aside from its groundless overbreath, privacy and relevance objections, IGWT asserts no other substantive objections in opposition to Mattel's motion to compel.  (Opp. at 7-12).  Moreover, like the Omni Parties, IGWT failed to respond to Mattel's separate statement.   Accordingly, IGWT has waived its remaining objections.  See DIRECTV, Inc. v. Puccinelli, 224 F.R.D. 677, 681 n.8 (D. Kan. 2004) ("[O]bjections asserted in a party's initial response to discovery requests but not reasserted in response to a motion to compel are waived and deemed abandoned.").

---

[20]   Order Dated May 15, 2007, at 11, n.4, Corey Dec., Exh. 99; Order Dated July 2, 2007, at 3, Corey Dec., Exh. 23.

## VI.   MATTEL AMPLY MET AND CONFERRED IN GOOD FAITH

IGWT argues that Mattel's Motion should be denied because Mattel failed to meet and confer in good faith.  (Opp. at 2-5).  Yet, IGWT admits -- as it must -- that counsel engaged in two substantive teleconferences to discuss their differences on January 30 and February 2, 2009.[21]  Counsel for IGWT also concedes in his declaration that the parties exchanged letters and e-mails regarding their positions.[22]  Thus, the crux of IGWT's argument is not that Mattel failed to meet and confer, but rather that it was supposedly "unwilling to make any concessions whatsoever."  (Opp. at 4).  IGWT's argument, however, misstates the facts.

Mattel met and conferred in good faith with IGWT and indeed did so pursuant to a schedule and in the manner expressly agreed to by all of the parties and third parties, ***including counsel for IGWT***.  The Agreement between the parties and third parties was memorialized in a January 23, 2009 letter sent by MGA's counsel to counsel for Mattel and the third parties.[23]  IGWT's counsel received the letter and did not dispute or complain about the contents of or the representations in the January 23 letter.  Indeed, consistent with the Agreement, IGWT served its objections on January 28, 2009.[24]

The Agreement stated that the parties and third-parties, including IGWT, would meet and confer on January 29 or 30.[25]  Counsel for Mattel and for IGWT scheduled a meet and confer teleconference on the afternoon of the 30th. The call lasted approximately 20 minutes, with each side stating their position.[26]

---

[21]   Declaration of Jeffrey B. Valle , dated February 17, 2009, ¶¶ 6-7.
[22]   Id.
[23]   See January 23, 2009 letter from Robert Herrington, Supp. Corey Dec., Exh. 1.
[24]    See IGWT Group's Objections to Subpoena, dated January 28, 2009, Corey Dec., Exh. 65; IGWT 826 Investment's Objections to Subpoena, dated January 28, 2009, Corey Dec., Exh. 64.
[25]   See January 23, 2009 letter from Robert Herrington, Supp. Corey Dec., Exh. 1.
[26]   Supp. Corey Dec., ¶ 4.

During that discussion, however, counsel for IGWT indicated that because he had just been retained by IGWT a few days before, his knowledge of IGWT's business and the quantity of documents at issue was limited.[27]  IGWT's counsel requested additional time to discuss these details with his client and requested that the meet and confer be continued until February 2, 2009.[28]  Mattel agreed to this request and, in order to allow the full completion of the meet and confer process, entered into an agreement with MGA and the third parties to extend the deadline for Mattel's motion to compel -- which under the Agreement was due on February 2 -- to February 3, 2009.[29]  Counsel for Mattel and IGWT thereafter met telephonically on February 2, 2009.[30]  The discussion again lasted approximately 20 minutes, and each side stated their position.[31]  At the end of this call, the parties were unable to arrive at an agreement.   Accordingly, Mattel moved to compel the production of documents responsive to its third-party subpoenas on February 3, 2009, in accordance with the Agreement of the parties and third parties, including IGWT.[32]

IGWT represents that during the meet and confer process, it offered to produce "a reasonable subset" of materials, but that Mattel "refused to narrow its requests in any way."  (Opp. at 3).  Not so.  As set forth in Section III(A) above, counsel for Mattel expressly informed IGWT's counsel that Mattel was amenable to *reasonable* agreements on its requests.[33]  For instance, with respect to Request Nos. 1 and 2 to IGWT Group, Mattel indicated that it was interested in documents

[27]   See Letter from Jon Corey to Jeffrey B. Valle, dated February 2, 2009, Corey Dec., Exh. 7.
[28]   See id.
[29]   Email exchange between Jon Corey and Robert Herrington, dated January 30, 2009, Supp. Corey Dec., Exh. 2.
[30]   See Email from Jeffrey B.Valle, dated February 2, 2009, Corey Dec., Exh. 8.
[31]   Supp. Corey Dec., ¶ 7.
[32]    See Mattel's Motion to Compel Production of Documents Responsive to Third-Party Subpoenas, dated February 3, 2009.

Case 2:04-cv-09049-DOC-RNB   Document 4907   Filed 02/24/09   Page 18 of 19   Page ID
#:155759

showing IGWT's purchases and sales of MGA products and that IGWT need not produce every single document associated with these transactions (such as bills of lading and packing slips).[34]   As noted above, however, IGWT sought to impose improper restraints on Mattel's requests, including that it should only be required to provide documents sufficient to show the purchases and sales of those Bratz products addressed in the Court's December 3, 2008 injunction orders.[35]   As Mattel has repeatedly shown, information pertaining to IGWT's purchase of non-enjoined MGA products is relevant to Phase 2 issues, including to MGA's and Larian's credibility and net worth, to Mattel's RICO claims, and to defendants' unclean hands defense.[36]

Mattel amply attempted to resolve this matter before filing its motion and fulfilled its meet and confer obligations.   IGWT's argument otherwise is meritless and serves as no basis for denying Mattel's motino.

## Conclusion

For the reasons set forth above, and for those set forth in the Mattel's Motion to Compel, Mattel respectfully requests that the Discovery Master grant

---

[33]   Supp. Corey Dec., ¶ 8.
[34]   Id.
[35]   See Letter from Jon Corey to Jeffrey B. Valle, dated February 2, 2009, Corey Dec., Exh. 7.
[36]   Id.  IGWT is also incorrect about Mattel's and IGWT's discussion regarding Request Nos. 1, 2, 5 and 6 to IGWT 826 Investments.  IGWT claims that it "offered to stipulate that no such responsive documents existed," but that "Mattel refused to accept this explanation."  (Opp. at 11).  During the meet and confers, counsel for IGWT did express his belief that IGWT 826 Investments would not possess documents responsive to these requests.  Mattel's counsel responded that if that proved to be true, IGWT need only attest to that fact.  However, IGWT did not offer and Mattel did not reject any formal stipulation on this subject, as evidenced by the fact that the email from IGWT's counsel memorializing IGWT's "proposal" makes no mention of any such stipulation.  See Email from Jeffrey B. Valle to Jon Corey, dated February 2, 2009, Corey Dec., Exh. 8; Supp. Corey Dec., Exh. 9.

07975/2804771.1

-14-
MATTEL, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL

1  Mattel's motion to compel and order the third parties to produce all non-privileged

2  responsive documents and to log any responsive documents withheld on the basis of

3  privilege.

4  DATED:  February 24, 2009          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
5

6                                     By /s/ Jon D. Corey
                                         Jon D. Corey
7                                        Attorneys for Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28