1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2     John B. Quinn (Bar No. 090378)
      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                       EASTERN DIVISION

11 | CARTER BRYANT, an individual,      | CASE NO. CV 04-9049 SGL (RNBx)
                                        | Consolidated with
12 |          Plaintiff,                | Case Nos. CV 04-09059 & CV 05-2727
                                        |
13 |     vs.                            | **DISCOVERY MATTER**
                                        |
14 | MATTEL, INC., a Delaware           | **[To Be Heard By Discovery Master**
   | corporation,                       | **Robert C. O'Brien Pursuant To Order Of**
15 |                                    | **January 6, 2009]**
   |          Defendant.                |
16 |                                    | MATTEL, INC.'S REPLY IN RESPONSE
   |                                    | TO THE MGA PARTIES' OPPOSITION
17 | AND CONSOLIDATED ACTIONS           | TO MOTION TO COMPEL
                                        | PRODUCTION OF DOCUMENTS
18 |                                    | RESPONSIVE TO THIRD-PARTY
                                        | SUBPOENAS
19 |     **PUBLIC REDACTED**            |
                                        | [Notice of Lodging and Supplemental
20 |                                    | Declaration of Jon D. Corey Submitted
                                        | Concurrently]
21 |                                    |
                                        | Hearing Date:   March 4, 2009
22 |                                    | Time:           10:00 a.m.
                                        | Place:          Arent Fox, LLP
23 |                                    |
                                        | **Phase 2:**
24 |                                    | Discovery Cut-off:   Dec. 11, 2009
                                        | Pre-trial Conference: Mar. 1, 2010
25 |                                    | Trial Date:         Mar. 23, 2010

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT .................................................................................................................. 4

I.  THE DISCOVERY MASTER SHOULD STRIKE THE OPPOSITION. ................................................................................................... 4

II.  THE COURT'S JANUARY 7, 2009 ORDER APPOINTING A FORENSIC AUDITOR PROHIBITS NO DISCOVERY ................................ 5

III.  MGA MISSTATES ITS FINANCIALS AND TRANSACTIONS ................. 6

    A.  MGA Misrepresents The Omni 808 And IGWT Transactions ............... 7

    B.  MGA's Denials Of Wrongdoing Are Irrelevant To Discovery ............ 10

IV.  THE DOCUMENTS SOUGHT ARE RELEVANT TO PHASE 2 ................ 10

    A.  The Requested Documents Are Relevant to Mattel's RICO Claims ........................................................................................................ 10

    B.  The Requested Documents Are Relevant to Phase 2 Damages ............ 14

        1.  The Court Has Already Ruled that Discovery into the MGA Parties' Financial Condition is Relevant to Phase 2 ......... 14

        2.  The Looting of MGA and Concealing of its Funding Are Relevant to MGA's Financial Condition ................................. 15

        3.  The Requested Documents Are of Heightened Importance Because of the MGA Parties' Financial Misrepresentations ...... 17

            (a)  The MGA Parties Falsely Represented that they are ██████████████████ ..................................... 17

            (b)  The MGA Parties Submitted Conflicting Valuations ...... 19

            (c)  The MGA Parties Made Conflicting Claims About its ██████████████████ ..................................... 19

    C.  The Requested Documents Are Relevant to Disgorgement ................. 20

    D.  The Documents Are Relevant to Unfair Competition ......................... 20

    E.  The Documents Are Relevant to MGA's Unclean Hands Defense ...... 22

    F.  The Documents Are Relevant to the MGA Parties' Credibility ........... 24

V.  MATTEL'S MOTION TO COMPEL IS PROCEDURALLY PROPER ....... 25

1   CONCLUSION.................................................................................................27

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## Cases

02 Micro Int'l Ltd. v. Monolithic Power Systems, Inc.,
  467 F.3d 1355 (Fed. Cir. 2006) ................................................... 21

Analytichem International, Inc. v. Har-Len Assocs.,
  490 F. Supp. 271 (W.D. Penn. 1980) ............................................ 23

In re Bergeson,
  112 F.R.D. 692 (D. Mont. 1986) ................................................. 16

Bible v. Rio Properties, Inc.,
  246 F.R.D. 614 (C.D. Cal. 2007) ................................................. 7

Buckinmaster v. Prudential Financial, Inc.,
  2008 WL 624532 (D. Neb. March 3, 2008) ..................................... 7

Burke v. Dowling,
  944 F. Supp. 1036 (E.D.N.Y. 1995) ............................................ 13

Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.,
  175 F.R.D. 646 (C.D. Cal. 1997) ................................................. 24

Cory v. Aztec Steel Bldg., Inc.,
  225 F.R.D. 667 (D. Kan. 2005) ................................................... 14

Covey Oil Co. v. Continental Oil Co.,
  340 F.2d 993 (10th Cir. 1965) ................................................... 16

Cytosport, Inc.,
  2007 WL 1040993 (E.D. Tenn. Nov. 17, 2008) ........................... 23, 24

Daughtery v. Wilson,
  2008 WL 4748042 (S.D. Cal. 2008) ............................................ 24

Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.,
  890 F.2d 165 (9th Cir. 1989) ..................................................... 23

H.J. Inc. v. Northwestern Bell Tel. Co.,
  492 U.S. 229 (1989) ............................................................... 10

Hilao v. Estate of Marcos,
  103 F.3d 767 (9th Cir. 1996) ..................................................... 15

Jarrow Formulas, Inc. v. Nutrition Now, Inc.,
  304 F.3d 829 (9th Cir. 1989) ..................................................... 23

Jones v. Deutsche Bank AG,
  2006 WL 648369 (N.D. Cal. Mar. 10, 2006) ............................... 10, 14

Key Components, Inc. v. Edge Electronics,
    2008 WL 7937560 (E.D. Tenn. Nov. 17, 2008) .................................. 23

King v. E.F. Hutton & Co., Inc.,
    117 F.R.D. 2 (D.D.C. 1987) ................................................................. 11

Levi Strauss & Co. v. Shilon,
    121 F.3d 1309 (9th Cir. 1997) ............................................................ 23

Lewis v. Wengerd,
    2006 WL 548438 (E.D. Cal. 2006) ..................................................... 24

Martinez v. City of Fresno,
    2009 WL 129946 (E.D. Cal. 2009) ..................................................... 24

Nalco Chemical Co. v. Hydro Techns., Inc.,
    148 F.R.D. 608 (E.D. Wis. 1993) ................................................ 21, 22

Palumbo v. Shulman,
    1998 WL 436367 (S.D.N.Y. July 27, 1998) ...................................... 11

Peskoff v. Faber,
    230 F.R.D. 25 (D.D.C. 2005) ....................................................... 10, 11

Sandres v. Louisiana Div. of Admin.,
    2008 WL 4758635 (M.D. La. 2008) ................................................... 24

Sebago, Inc. v. Beazer East, Inc.,
    18 F. Supp. 2d 70 (D. Mass. 1998) ................................................... 12

Sedima, S.P.R.L. v. Imrex Co., Inc.,
    473 U.S. 479 (1985) ............................................................................ 14

Southern California Housing Rights Center v. Krug,
    2006 WL 4122148 (C.D. Cal. 2006) ................................................... 15

Southwest Hide Co. v. Goldston,
    127 F.R.D. 481 (N.D. Tex. 1989) ....................................................... 11

State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.,
    2007 WL 2993840 (E.D.N.Y. 2007) ................................................... 16

Synopsys v. Nassda Corp.,
    2002 WL 32749136 (N.D. Cal. Sept. 12, 2002) ................................. 23

Teachers' Retirement System of Louisiana v. Hunter,
    477 F.3d 162 (4th Cir. 2007) .............................................................. 21

U.S. v. Sabbeth,
    125 F. Supp. 2d 33 (E.D.N.Y. 2000) ................................................. 13

W.E. Aubuchon Co., Inc. v. Benefirst, LLC,
    245 F.R.D. 38 (D. Mass. 2007) .......................................................... 21

Wallace v. Abramson,
    1988 WL 63065 (D.D.C. June 7, 1988)................................................................10

Wood v. Santa Barbara Chamber of Commerce,
    705 F.2d 1515 (9th Cir. 1983) ................................................................................4

### **Statutes**

18 U.S.C. § 157(7) ....................................................................................................13

Fed. R. Civ. P. 8 .......................................................................................................20

Fed. R. Civ. P. 26 ...............................................................................................16, 20

Fed. R. Civ. P. 37 .....................................................................................................20

## **Preliminary Statement**

Mattel has been seeking, for several weeks since Phase 2 discovery was reopened, to obtain even the most basic discovery about MGA's financial condition, including the true identity and source of funds for Omni 808's alleged mid-trial acquisition of MGA debt and MGA's selling of Bratz product for pennies on the dollar for resale by defendant Isaac Larian's IGWT entities. After MGA, Larian, the Omni Parties, and the IGWT Parties all refused to provide a single page of documents relating to these matters, Mattel moved to compel. The MGA Parties told Mattel that they would file a motion to quash limited to the sole issue of whether Judge Larson's January 7, 2009 Order precluded Phase 2 financial discovery but would not file a separate opposition to Mattel's motion to compel. Nevertheless, after Judge Larson rejected their argument that his Orders had foreclosed financial discovery -- and a full week after any opposition was due -- the MGA Parties filed an Opposition. They offer no explanation or justification for their failure to comply with the Court-ordered deadline or their own promise. The Discovery Master should strike the Opposition as untimely and improper.

Even if considered, the Opposition fails to offer any legitimate grounds for denying Mattel's motion. The MGA Parties argue that the Court's denial of Mattel's request for a receiver forecloses discovery into MGA's finances. As with their earlier mischaracterizations of the Court's rulings, however, the MGA Parties misstate the Court's rulings on this subject as well. In fact, the Court's Minute Order explicitly states that Mattel's receivership motion remains pending before the Court. As the hearing transcript also makes clear, only an "interim report" by the auditor has been submitted, and the Court stated that the auditor's investigation is ongoing and that the Court will decide whether to appoint a receiver only after receiving the final report. Moreover, whether or not a receiver is appointed, the requested documents are relevant to many Phase 2 issues, including to multiple liability and damages issues that are central to the Phase 2 trial. As the Court directed at the

1  February 11 hearing, the appointment of a receiver is a "separate matter" from

2  discovery and Phase 2 discovery should proceed apace without limitation.

3      The MGA Parties purport to "correct Mattel's false charges" regarding their

4  interaction and relationships with the third-parties.  While baldly asserting that the

5  transactions were appropriate, the MGA Parties have never offered -- and fail to do

6  so now -- any evidentiary support for their claims that the transactions were arms-

7  length and above board.  In any event, the MGA Parties' assertions are unavailing

8  here.  The way to ascertain the veracity of their pronouncements is through

9  discovery, which they and their associates conspicuously refuse to provide.  Denials

10  of wrongdoing scarcely can cut off Mattel's discovery rights.  Quite the opposite.

11  The MGA Parties make clear that the issues here are disputed, and a key purpose of

12  discovery is to allow for such denials to be tested and cross-examined.

13      Also unavailing is the MGA Parties' claim that they can evade discovery by

14  deeming these to be "receiver subpoenas" that are only relevant to Phase 1.  Indeed,

15  the Court already noted that this supposed distinction is insupportable.  At the

16  February 11 hearing, Judge Larson rejected defendants' argument that financial

17  discovery is barred even if it is also relevant to the receiver appointment: "I can see

18  tremendous overlap between, for example, discovery on financial condition of the

19  company as it relates to damages in the Phase 2 and also issues that the receiver is

20  looking at."[1]  And here, the requested documents are highly relevant to critical

21

22

---

23  [1]  Nor was this the first time that the Court rejected MGA's efforts to avoid obvious

24  discovery by rejecting its untenable Phase 1/Phase 2 distinctions in discovery.  For example, almost a year ago at a hearing on February 28, 2008, Judge Larson stated: "What

25  I've tried to avoid in this whole process is precisely this, and that's why I tried to carefully

26  word the Orders *concerning Phase 1, Phase 2, bifurcation, not to apply to discovery. Because I don't want to be in a position up here having hearings over what's a Phase One*

27  *witness and what's a Phase Two witness, and wasting a tremendous amount of time and resources, not only the Court's, but the parties*, having this kind of dispute."  2/25/2008

28      (footnote continued)

1  Phase 2 issues.  As evidence of apparent fraudulent activities designed to conceal
2  their ill-gotten gains, the documents are unquestionably relevant to Mattel's RICO
3  claims.  The MGA Parties argue that these specific acts were not plead in the
4  counterclaims.  But there is no such requirement, as post-filing conduct may be
5  relevant to a plaintiffs' RICO claim and the fact that it is not -- and could not have
6  been -- specified in the complaint is irrelevant.

7          The requested documents are also relevant to Phase 2 damages, including
8  Mattel's claims for punitive damages and disgorgement.  The MGA Parties'
9  argument that Mattel should be limited only to documents they choose to produce is
10 frivolous.  MGA has already been found liable by a jury for fraudulently concealing
11 its misconduct and has a long track record of obstruction, conflicting claims and
12 misrepresentations related to its finances.  In any event, parties to a lawsuit have a
13 right to third-party discovery pursuant to the <u>Federal Rules</u>.  The same is true for
14 Mattel's entitlement to discovery to defeat MGA's unclean hands defense.  The
15 apparently fraudulent activities that Mattel has uncovered -- which constitute unfair
16 competition -- are relevant to MGA's and Larian's unclean hands defense, which
17 itself rests on unfair competition allegations.  Finally, because there is evidence that
18 MGA and Larian engaged in further fraudulent acts and made false statements under
19 oath, as the evidence suggests, the requested documents are relevant to credibility.

20         Mattel's motion to compel should be granted.

21

22

23

24

25

26

27 Hearing Tr. at 9:4-11, Supplemental Declaration of Jon D. Corey, filed February 24, 2009,
   ("Suppl. Corey Dec."), Exh. N (emphasis added.)

28

## Argument

## I.   THE DISCOVERY MASTER SHOULD STRIKE THE OPPOSITION

Pursuant to the agreement of the parties and the third-parties, Mattel filed its motion to compel with the Discovery Master on February 3, 2009.[2]   Under the December 6, 2006 Discovery Master Order, any opposition was due five court days thereafter, on February 10, 2009.[3]   Mattel did not expect an MGA opposition, since MGA's counsel had told counsel for Mattel that MGA would not be opposing Mattel's motion to compel.[4]

MGA nevertheless filed a belated opposition on February 17, 2009, a full week after it was due under the Discovery Master Order (which was reiterated on February 12, 2009).[5]   In it, MGA offers no explanation or justification for its disregard of the Court-ordered filing deadline or its change of position that no such opposition would be submitted.   Accordingly, the opposition should be stricken. See Wood v. Santa Barbara Chamber of Commerce, 705 F.2d 1515, 1519 (9th Cir. 1983) (affirming decision to strike untimely opposition).

---

[2]   January 23, 2009 letter from Robert J. Herrington, confirming agreement of parties and third parties that Mattel's motion to compel and MGA's motion to quash would be filed on February 2, 2009, Declaration of Jon D. Corey, filed February 3, 2009 ("Corey Dec."), Exh. 6; January 30, 2009 e-mail from Robert J. Herrington to Jon Corey, confirming agreement to extend deadline for filing Mattel's motion to compel and MGA's motion to quash to February 3, 2009, Suppl. Corey Dec., Exh. B.

[3]   See Discovery Master Order, dated December 6, 2006, at ¶ 5 ("The opposing party shall have five court days from the date of service of the motion or letter brief to submit a formal opposition or response."), Suppl. Corey Dec., Exh. F.

[4]   See Suppl. Corey Dec. ¶ 4.

[5]   See MGA Parties' Opposition to Mattel's Motion to Compel Documents Responsive to Third Party Subpoenas, dated February 17, 2009; February 12, 2009 Discovery Master Order, Suppl. Corey Dec., Exh. G.

## II.   THE COURT'S JANUARY 7, 2009 ORDER APPOINTING A FORENSIC AUDITOR PROHIBITS NO DISCOVERY

In their Motion to Quash these same subpoenas, the MGA Parties first argued that the Court had foreclosed any financial discovery -- even if relevant to Phase 2 -- by its January 7 Order.[6]  The January 7 Order, however, did not stay or limit Phase 2 discovery in any way.  To the contrary, in an Order issued just the day before, the Court had reopened Phase 2 discovery <u>without limitation</u>.[7]  The January 7 Order contained no language that limited Phase 2 discovery.  Then, at a hearing on February 11, 2009, Judge Larson rejected MGA's supposed reading of the Orders and reiterated that the appointment of a forensic auditor did not supplant or limit Phase 2 discovery:

> Mr. Durkin [the forensic auditor] is acting at the Court's direction to inform the Court of information.  I may or may not release any of the information that Mr. Durkin provides; so no one, neither side, should be relying upon the information that Mr. Durkin is gathering for purposes of litigating this case. <u>That's an entirely separate matter</u>.  <u>And I have not stayed any discovery</u>, and there should be no reliance on that.[8]

In response to the MGA Parties' specific argument that the January 7 Order foreclosed financial discovery, the Court further ruled that "there is *nothing* from this Court which is precluding any discovery sought for the trial that is scheduled."[9]

---

[6]   The MGA Parties' Motion to Quash, filed February 3, 2009, 5:19-23.
[7]   Court's January 6, 2009 Order Appointing Discovery Master, at 2, Suppl. Corey Dec., Exh. A.
[8]   February 11, 2009 Hearing Transcript, 98:8-15, Declaration of Jennifer K. Del Castillo ("Castillo Dec."), filed February 17, 2009, Exh. A (emphasis added).
[9]   Id., 101:22-25 (emphasis added).

1   Their distorted interpretations of the Court's Orders having been
2   unambiguously rejected by the Court, the MGA Parties now attempt a new, belated
3   tact by asking the Discovery Master to draw an inference from the Court's
4   comments that contradict the Court's specific rulings, including as embodied in an
5   Order.[10]   The MGA Parties now urge that Mattel's allegations about MGA's
6   manipulation of its finances "rings hollow" because the Court allegedly "denied"
7   Mattel's receivership motion after the Forensic Auditor's **interim** report.   (Opp.
8   6:13-15.)  In fact, the Judge Larson has not denied the motion.  To the contrary, the
9   Court has stated, more than once, that Mattel's motion is still being held in abeyance
10  pending the completion of the Forensic Auditor's work and the completion of his
11  final report.[11]  In addition to being factually wrong, the MGA Parties' argument fails
12  to provide any basis for refusing discovery.  At both the hearing and in its Minute
13  Order, the Court ruled that Phase 2 discovery shall proceed and that the forensic
14  auditor's work is an "entirely separate matter" and not something the parties should
15  be "relying on."  So even if the Court declines to appoint a receiver or disclose the
16  auditor's report, nothing in the Court's rulings foreclose any discovery.  To the
17  contrary, the Court stated that it saw "tremendous overlap" between so-called
18  "receiver discovery" and Phase 2 discovery.[12]

19  **III.   MGA MISSTATES ITS FINANCIALS AND TRANSACTIONS**

20      The MGA Parties insist, without any evidentiary support, that their financial
21  dealings with the third parties were routine business transactions.  (Opp. at 4-6.)
22  Yet, MGA's refusal to produce -- or to allow the third parties to produce -- and

23  _____

24  [10]  February 11, 2009 Minute Order, at 2, Suppl. Corey Dec., Exh. H.
    [11]  Id.; February 11, 2009 Hearing Transcript, 80:15-17, Castillo Dec., Exh. A.
25  [12]  As this also makes evident, the MGA Parties' evolving, mistaken claims about the
26  Court's rulings are conflicting.  Originally, they claimed that because the receivership
    motion was pending, Mattel was not entitled to financial discovery.  Now, equally without
27      (footnote continued)

28

1  willingness to spend tens, if not hundreds, of thousands of dollars to prevent Mattel

2  from learning the true nature of those transactions all speak far more loudly.  The

3  information that Mattel has obtained regarding who was actually behind the

4  transactions, the source of the funding or the terms of the transactions suggests that

5  they were anything but "arm's length."  Offering no justification for its continued

6  obstruction, MGA urges that Mattel has not established that it is "entitled to have the

7  history of all funding for MGA's creditors."  (Opp. at 6).  However, as the party

8  resisting discovery, MGA has the burden of showing that Mattel's requests are

9  improper.  See Bible v. Rio Properties, Inc., 246 F.R.D. 614, 618 (C.D. Cal. 2007)

10  (party resisting discovery has the burden of showing discovery should not be

11  allowed).   Bare bones denials that a party has engaged in any wrongdoing are

12  irrelevant to a determination of relevance for purposes of discovery.   "It is

13  insufficient for the party objecting to discovery based on relevance to simply make

14  conclusory allegations that the request is irrelevant." Buckinmaster v. Prudential

15  Financial, Inc., 2008 WL 624532, *2 (D. Neb. March 3, 2008) (overruling relevancy

16  objections and granting motion to compel).  MGA has made no such showing, nor

17  can it.

18  ## A.   MGA Misrepresents The Omni 808 And IGWT Transactions

19  MGA does not dispute that Omni 808 is a single purpose entity formed during

20  the Phase 1(b) damages trial to allegedly purchase MGA debt at a steep discount.

21  MGA also admits that Omni 808 is owned and funded by another shell corporation,

22  Vision Capital, which in turn borrowed money from Lexington, an off-shore entity

23  incorporated in the nation of Nevis, notorious for its secrecy laws.  (Opp. at 5.)  As

24  Mattel demonstrated, and MGA does not refute, the structure of the transactions and

25  the use of these entities not only conceal the true owners and the true source of

26  _____

27  basis, they claim that because the receivership motion is supposedly not pending, Mattel is

28  (footnote continued)

1  funds, but bear the classic hallmarks of attempts to improperly mask capital
2  contributions as debt. (Mot. at 8-11.)

3      This conclusion is reinforced by the evident involvement of Mr. Larian and
4  his relatives in the supposedly "arms length" acquisition of the Wachovia debt by
5  Omni 808. On January 12, 2009, Mattel attempted to serve a subpoena on Vision
6  Capital at 1525 South Broadway in Los Angeles—the address provided in an
7  August 29, 2008 UCC financing statement relating to this transaction.[13]   No
8  functioning entity called Vision Capital is located at that address; in fact, the
9  receptionist at the building said she had never heard of the company.[14]  Rather, 1525
10 South Broadway is the address of Neman Brothers & Associates.[15]  Leon Neman is
11 a principal of Neman Brothers & Associates and owns the building at 1525
12 Broadway, where Vision Capital is ostensibly located.[16]  Leon Neman is Isaac
13 Larian's brother-in-law and has served as a director of MGA.[17]  Mr. Mashian, the
14 agent for Lexington Financial, is the listed agent for several entities that Leon
15 Neman owns.[18]  Indeed, Rock-Hill Holdings, LLC, a Leon Neman entity that lists
16 Mashian as its registered agent, also has a Delaware address that is the same as
17 Vision Capital's alleged Delaware address.[19]

18     Further, the MGA Parties do not deny that Omni 808 is nothing more than a
19 sham creditor whose sole purpose is to enable Larian to claim priority over Mattel's

20 _____

21 not entitled to financial discovery.
22 [13]   See Declaration of David Antolin, dated February 4, 2009, lodged concurrently herewith.
23 [14]   Id.
   [15]   Id.
24 [16]   See Declaration of Michael T. Zeller in Support of Mattel's Opposition to Omni 808
25 Investors, LLC's *Ex Parte* Application to Intervene, dated February 5, 2009, at ¶ 6 ("Zeller Dec."), lodged concurrently herewith.
26 [17]   See Zeller Dec. ¶ 4.
27 [18]   See Zeller Dec. ¶ 11.
   [19]   See Zeller Dec. ¶ 12.
28

interests in the event of MGA's bankruptcy.[20]   Instead, the MGA Parties merely contend that Mattel's concern is "premature" and argues that Mattel can raise this issue "[i]n the event MGA declares bankruptcy." (Opp. at 6).  MGA is wrong.  As set forth in Section IV below, MGA's apparent use of sham and fraudulent financial transactions is directly relevant to numerous Phase 2 issues, including Mattel's RICO claims, Phase 2 damages, MGA's and Larian's credibility and defendants' unclean hands defense.

In its Motion, Mattel also showed that MGA and Larian are using entities called IGWT Group and IGWT 826 Investments, which were created during trial, to purchase Bratz products from MGA for pennies on the dollar.  (Mot. at 11-12). MGA is selling product to these newly-formed Larian companies at a discount of more than 80 percent.[21]   MGA responds that these were overstocked and obsolete inventory. (Opp. at 6).  A schedule of the inventory MGA sold to IGWT shows that it was comprised of ███████████████████████████████████

████████████████████████████████████████████████████

███████████████[22]

---

[20]   Nor does MGA deny that a Los Angeles Superior Court found its new business partner, Neil Kadisha, liable for stealing millions of dollars as part of a decade-long pattern of fraudulent conduct.  See In re Uzyel Irrevocable Trust, No. BP 058 898 (Los Angeles Sup. Ct. October 24, 2006), Corey Dec., Exh. 43.  MGA's only response is that the litigation against Kadisha is "as-yet-unresolved," (Opp. at 5 n.3), as though this fact somehow undermines the Superior Court's unambiguous, final determinations that Kadisha is "no more than a common thief."  See id. at 13:19.  It does not.  Indeed, Judge Larson has noted that the Superior Court decision contains a "most damning statement" and that it "is enough . . . to raise a question that needs to be answered."  1/5/09 Hearing Tr. at 30:9-31:1, Suppl. Corey Dec., Exh. I.  Tellingly, neither the MGA Parties nor the third parties have even attempted to provide that answer.

[21]   See Declaration of Cyrus Naim in Support of Mattel's Ex Parte Application For Appointment of a Receiver, dated January 2, 2009, at ¶ 2, Corey Dec., Exh. 51.

[22]   IGWT Purchase Schedule of Products, Suppl. Corey Dec., Exh. K.

**B.** **MGA's Denials Of Wrongdoing Are Irrelevant To Discovery.**

While neither supported nor consistent with the evidence that is available, the MGA Parties' denials of wrongdoing are immaterial in any event. Mattel is seeking discovery on this motion. No party can avoid discovery by simply disputing claims of wrongdoing. The purpose of discovery, after all, is to test the allegations and claims of a complaint. See Jones v. Deutsche Bank AG, 2006 WL 648369, at *2 (N.D. Cal. Mar. 10, 2006) (ordering production of documents related to defendant's transactions with third parties because "[e]ven if [defendant] thinks [plaintiff's RICO] allegations are wrong, discovery to test the truth of [plaintiff's] allegations is appropriate").

**IV.** **THE DOCUMENTS SOUGHT ARE RELEVANT TO PHASE 2**

**A.** **The Requested Documents Are Relevant to Mattel's RICO Claims**

MGA argues that because the requested documents did not have any role in the direct misappropriation of Mattel's trade secrets, they are irrelevant. (Opp. at 12.) Mattel's RICO claims, however, are not so limited. The Supreme Court has held that Congress intended RICO to have broad application and has construed it accordingly: "[C]onduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989). Thus, a plaintiff alleging RICO violations may inquire into a defendant's racketeering conduct with third parties even if that conduct was not the direct cause of plaintiff's injury. See Wallace v. Abramson, 1988 WL 63065, at *4 (D.D.C. June 7, 1988) (plaintiff was entitled to discovery regarding defendant's loan with third party lender because "it may well be that the $1 million bank loan, even though causing no injury to plaintiff, may represent another of the series of acts which plaintiff charges as part of a continuing pattern of racketeering activity."); see also Peskoff v.

1 Faber, 230 F.R.D. 25, 31 (D.D.C. 2005) (permitting discovery from third parties
2 because it might allow "plaintiff to show a pattern of racketeering activity").[23]

3    Likewise, that these events occurred "after the complaint was filed" (Opp. at
4 12) does not foreclose discovery.  Post-complaint conduct is relevant to establish
5 "proof of a 'pattern' of racketeering activity. It is discoverable."  Southwest Hide
6 Co. v. Goldston,   127 F.R.D. 481, 488 (N.D. Tex. 1989) (defendant's post-filing
7 conduct with third party was relevant to plaintiff's RICO claim); see also King v.
8 E.F. Hutton & Co., Inc., 117 F.R.D. 2, 7 (D.D.C. 1987) ("The civil RICO cause of
9 action with reference to the 'pattern' requirement, and the punitive damages claim,
10 both may be proven, in part, by subsequent events and documents.").

11    For this reason, MGA's claim that discovery should be denied because the
12 complaint "makes no mention of improper transfer of funds or any other predicate
13 act even remotely similar to MGA's purported business transactions" (Opp. at 11),
14 should be rejected for the tautology that it is.  As the Southwest Hide court
15 recognized, post-filing conduct with even unrelated third parties may be relevant to
16 a plaintiffs' RICO claim, and the fact that it is not -- and indeed could not have been
17 -- alleged in the complaint does not render it irrelevant.  See Southwest Hide, 127
18 F.R.D. at 487 ("The Defendants' argument attempts to define relevance in terms of a

19
20
21
22   [23]   MGA's reliance on the unpublished decision Palumbo v. Shulman, 1998 WL
23 436367, at *5 (S.D.N.Y. July 27, 1998), in which the court denied third-party discovery is
24 misplaced because there—unlike this case—the plaintiffs had not alleged a RICO claim.
   Rather, it is much more akin to Peskoff v. Faber, 2006 WL 1933483, at *3 (D. D.C. Jul.
25 11, 2006), wherein the court permitted discovery into the ownership structure of non-party
26 defendant-affiliated company where plaintiff alleged that self-dealing transactions
   constituted RICO predicates and rejected defendant's argument that discovery was merely
27 "a fishing expedition designed to harass and intimidate [defendant] and the businesses with
   which he is affiliated."
28

prima facie case, which is not supportable.").[24]   The RICO statute permits a complaint to be filed before the conspiracy is complete, allowing a plaintiff to allege, as Mattel did here, that the conspiracy is "open-ended."[25]   If the MGA Parties' analysis were correct, then there could be no discovery into "open-ended" RICO conspiracies, and Mattel would have to wait for the conspiracy and all predicate acts to conclude before filing its complaint.

Moreover, there is a direct relationship between Mattel's RICO allegations and the requested documents.  The RICO allegations rest on a pattern of criminal activity that MGA has engaged in involving, *inter alia*, MGA's misappropriation of trade secrets and theft of Mattel's confidential information.  But the pattern does not end with the theft.  Rather, as alleged in Mattel's Complaint, the criminal enterprise "is designed to and did unlawfully acquire the confidential business information and property of Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and business methods, practices and process."[26]   For example, as determined by the jury in Phase 1, MGA stole Bratz from Mattel, and then unlawfully profited from that theft.  The use of these ill-gotten proceeds in furtherance of the criminal enterprise -- such as their use to commit new acts of interference or misappropriation -- is unquestionably relevant, and Mattel is entitled to discovery on them.[27]   Furthermore, where, as here, it appears that Larian

---

[24]   Cf. Sebago, Inc. v. Beazer East, Inc., 18 F. Supp. 2d 70, 80 (D. Mass. 1998) (where party adequately pled two predicate acts, they are entitled to more discovery which may reveal more).

[25]   See SAAC ¶ 93, Corey Dec., Exh. 19 (alleging that MGA's racketeering activity threatens "continuing criminal activity" and includes conduct "up to and beyond the date of this [SAAC]").

[26]   See SAAC ¶ 92, Corey Dec., Exh. 19.

[27]   MGA incorrectly asserts that Mattel may not base its RICO claim on criminal copyright infringement.  (Opp. at 13.)  Again, however, MGA is not entitled to refuse to produce discovery just because it disagrees with the merits of Mattel's claims.  After all, MGA falsely denied that it stole Bratz too -- a claim rejected by both the jury and the

(footnote continued)

is using funds, laundered through sham corporations, to purchase MGA inventory for pennies on the dollar or to obtain priority over Mattel's claims against MGA in any subsequent bankruptcy filing by MGA, these issues are relevant.[28]   It is no answer to say that Mattel's concern regarding these transactions is "premature" because it has not entered bankruptcy.  MGA has repeatedly claimed to be on the verge of insolvency, and 18 U.S.C. § 157(7) (a RICO predicate) prohibits such transfers "in contemplation" of bankruptcy—even if bankruptcy never occurs.  See Burke v. Dowling, 944 F. Supp. 1036, 1065 (E.D.N.Y. 1995) ("Unlike the other provisions of § 152, it does not appear to require that a Title 11 case actually be pending.  All that it requires is that the defendant transfer assets with the ultimate intent to defraud a bankruptcy court, whether or not such proceedings ever actually commence."); see also U.S. v. Sabbeth, 125 F. Supp. 2d 33, 39 (E.D.N.Y. 2000) (stating conduct could violate § 152(7) even "if the corporation somehow managed to escape bankruptcy").

Rather than explain these transactions, MGA asserts that "only related activities can support a claim under RICO." (Opp. at 11.)  While potentially true as

Court.  Further, MGA misreads the Phase 1 verdict, because while the jury did not find that MGA's infringement was willful, that finding was obviously limited to the specific items before the jury in Phase 1 and to the specific evidence relating to Phase 1 that was introduced.  As MGA does not and cannot deny, Mattel has evidence that it can introduce in Phase 2 that was not admissible in Phase 1.  Most notably, infringement is not limited to products—MGA may have engaged in many instances of willful infringement every time it induced a Mattel employee to copy documents or other trade secrets.  Indeed, in Phase 1, the jury only addressed MGA's conduct as it related to Carter Bryant; in Phase 2, *many* other MGA executives' and MGA employees' acts of infringement are and will be litigated. Mattel's Phase 2 allegations also involve other products besides Bratz as well as Bratz products sold and produced that were not introduced at Phase 1 trial because MGA failed to produce them.  As to those, MGA likewise does not and cannot dispute that MGA's willfulness has yet to be determined.

[28]   In addition to being potentially relevant as independent predicate acts, MGA's conduct is relevant to show continuity and to refute any purported statute of limitations defense.

1  an abstract proposition, MGA again confuses its denials of the merits of Mattel's

2  claims with its discovery obligations and the proper scope of discovery under the

3  Federal Rules.  The appropriate venue for MGA to challenge Mattel's allegations

4  that MGA violated RICO is by summary judgment, not by its discovery objections.

5  See Jones v. Deutsche Bank AG, 2006 WL 648369, at *2 (N.D. Cal. Mar. 10, 2006)

6  (ordering production of documents related to defendant's transactions with third

7  parties because "[e]ven if [defendant] thinks [plaintiff's RICO] allegations are

8  wrong, discovery to test the truth of [plaintiff's] allegations is appropriate").  The

9  MGA Parties' approach to RICO claims also has been rejected by the Supreme

10  Court, which has directed the lower courts that "RICO is to be read broadly."

11  Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497 (1985).  Like RICO,

12  "relevancy is 'broadly construed,' and a discovery request should be considered

13  relevant if there is 'any possibility' that the information sought may be relevant to

14  the claim or defense of any party."  Cory v. Aztec Steel Bldg., Inc., 225 F.R.D. 667,

15  672 (D. Kan. 2005) (citation omitted).  MGA's contrary arguments are groundless.

16          **B.**    **The Requested Documents Are Relevant to Phase 2 Damages**

17                  **1.**    **The Court Has Already Ruled that Discovery into the MGA**

18                  **Parties' Financial Condition is Relevant to Phase 2**

19       The MGA Parties fail to inform the Discovery Master that the Court has

20  already rejected their relevancy arguments.  When defendants argued that financial

21  discovery was barred because it was "solely related to the receiver," the Court

22  rejected their argument and stated that discovery into MGA's finances is a proper

23  subject of Phase 2.  "I can see <u>tremendous overlap between, for example, discovery</u>

24  <u>on financial condition of the company as it relates to damages in the Phase 2</u> and

25

26

27

28

1   also issues that the receiver is looking at."[29]   The Discovery Master should compel
2   production of the requested documents.

3   **2.   The Looting of MGA and Concealing of its Funding Are**
4   **Relevant to MGA's Financial Condition**

5       The MGA Parties do not -- because they cannot -- dispute that a defendants'
6   financial condition and ability to pay a damages award are proper subjects of
7   discovery.  (Motion, 21:18-22:3.)[30]   Nevertheless, they contend that information
8   about the MGA Parties' possible fraudulent manipulation of their net worth --
9   including through their funding sources and the looting of assets by selling products
10   for pennies on the dollar (and letting their "front" corporations rake in the profits) --
11   does not "shed any light on this matter."  (Opp. 14:2.)  The frivolousness of the
12   MGA Parties' argument is obvious.  Whether and how the MGA Parties are using
13   the Omni Parties and the IGWT Parties to smuggle assets out of MGA to prejudice
14   Mattel and to distort the MGA Parties' financial condition and ability to pay a
15   damages award is of the highest relevance.  See, e.g., Hilao v. Estate of Marcos, 103
16   F.3d 767, 781-82 & n. 7 (9th Cir. 1996) (financial condition a relevant factor in
17   awarding punitive damages); Southern California Housing Rights Center v. Krug,
18   2006 WL 4122148, *4 (C.D. Cal. 2006) ("When a punitive damages claim has been
19   asserted, a majority of federal courts permit pretrial discovery of financial
20   information about defendants.").

21       Further, contrary to the MGA Parties' assertion, it is not just documents
22   directly related to their expenditures that is relevant.  Documents related to the
23   identity of the investors and shareholders in the Omni Parties and IGWT Parties are
24   also relevant.  Mattel expects that the requested documents will show -- as the

---

26   [29]   February 11, 2009 Hearing Transcript, 100:20-101:8, Castillo Dec., Exh. A.
27   (emphasis added).
   [30]   SAAC, ¶ 11 (seeking exemplary damages), Corey Dec., Exh. 19.

present evidence suggests -- that the transactions at issue were not arms-length but fraudulent schemes designed to conceal the true financial condition of the MGA Parties. Another, independent basis for compelling this information is that it will identify potentially knowledgeable witnesses. Fed. R. Civ. P. 26 ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense -- including the . . . identity and location of persons who know of any discoverable matter.").

Even less persuasive is the MGA Parties' argument that "Mattel had no problem assessing the MGA Parties' profits in Phase 1 . . . and Phase 2 should be no different" (Opp. 13:23-25.) and is limited only to the information "received from the MGA Parties". (Opp. 15:1-2.) The MGA Parties ignore that the information that Mattel was able to present in Phase 1 was the product of substantial third-party discovery, just like the subpoenas at issue here, and that whatever information Mattel obtained during Phase 1 was the result of prevailing on literally dozens of discovery motions that the MGA Parties forced Mattel to bring because of their usual practice of producing nothing unless compelled to do so (and often not even then, until after Mattel is forced to obtain further orders enforcing the first one).

The MGA parties also ignore federal law -- cited in Mattel's Motion -- on this issue. See e.g., Covey Oil Co. v. Continental Oil Co., 340 F.2d 993, 998 (10th Cir. 1965) (overruled on other grounds) ("[A] person may not avoid a subpoena by saying that the evidence sought from him is obtainable from another."); State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840, at *1 (E.D.N.Y. 2007) ("[N]othing in the Federal Rules of Civil Procedure requires a litigant to rely solely on discovery obtained from an adversary instead of utilizing subpoenas." ); In re Bergeson, 112 F.R.D. 692, 695 (D. Mont. 1986) (compelling production from third parties despite assertions that documents sought are available from others).

### 3.   The Requested Documents Are of Heightened Importance Because of the MGA Parties' Financial Misrepresentations

Although the above arguments alone clearly demonstrate Mattel's right to the discovery requested, production is all the more compelling because of the MGA Parties' evolving and conflicting representations about its financial condition.

### (a)   The MGA Parties Falsely Represented that they are ███████████

The MGA Parties falsely represented to the District Court and to the Ninth Circuit in December 2008 that MGA ████████████████████████████████ ████████████████████████.[31]   The MGA Parties claim that the mistake about MGA's status was supposedly a self-corrected, "inadvertent error," caused by the "time pressure" that MGA purportedly faced in responding to Mattel's application for a receiver. (Opp. at 3-4.) The explanation is without merit. MGA's false statements regarding ████████████████████ were not made in association with Mattel's December 29, 2008 receivership application. Rather, the false statement was made in connection with MGA's own applications for an order staying the December 3, 2008 injunctive orders -- made weeks *before* Mattel even applied for the appointment of a receiver.[32]

A brief recounting of the sequence of events illustrates the point. ████ ████████████████████████.[33]

- On December 11, 2008, MGA submitted a declaration by Brian Wing stating that ████████████████████████████████████

---

[31]   See Declaration of Brian Wing in Support of the MGA Parties' Request for a Stay, dated December 11, 2008, at ¶ 13, Corey Dec., Exh. 36.

[32]   Id.

[33]   Declaration of Brian Wing in Support of MGA's Correction to the Opposition to Mattel's *Ex Parte* Application for a Receiver, dated December 31, 2008, ¶ 3, Corey Dec., Exh. 42.

1 ████████████████████████████████████████████████

2 ███████████████████████████[34]

3   • Over two weeks later, on December 29, 2008 Mattel filed its <u>Ex Parte</u>

4 Application for Appointment of a Receiver, in which Mattel revealed that its own

5 investigation had turned up facts showing that MGA had in fact obtained additional

6 funding and that its prior representations otherwise were false.[35]

7   • On December 31, 2008, only after having thus been exposed by Mattel,

8 MGA submitted a corrected declaration from Mr. Wing admitting that ████████████

9 █████████████████████████[36]

10   Further, the misrepresentation was made not just by counsel, but by MGA's

11 Executive Vice President, Brian Wing.[37] ████████████████████████

12 ████████████████████████████████████[38]   It is therefore

13 beyond question that Mr. Wing made his false statements on December 11, ████████

14 ████████████████████████████████████████████[39]

15 Indeed, it was Mr. Wing himself who ultimately disclosed ██████████████████,

16 once it was revealed by Mattel's investigation.[40]

17

18

19

20   [34]   <u>Id.</u> (emphasis added).

21   [35]   The MGA Parties filed their Opposition on December 30, 2008, Corey Dec., Exh. 39.

22   [36]   <u>See</u> Declaration of Brian Wing in Support of MGA's Correction to the Opposition

23 to Mattel's <i>Ex Parte</i> Application for a Receiver, dated December 31, 2008, Corey Dec., Exh. 42.

24   [37]   <u>See</u> Declaration of Brian Wing in Support of the MGA Parties' Request for a Stay, dated December 11, 2008, at ¶ 13, Corey Dec., Exh. 36.

25   [38]   <u>Id.</u> at ¶ 2.

26   [39]   <u>See</u> Declaration of Brian Wing in Support of MGA's Correction to the Opposition to Mattel's <i>Ex Parte</i> Application for a Receiver, dated December 31, 2008, Corey Dec.,

27 Exh. 42.
   [40]   <u>Id.</u>

28

(b)   **The MGA Parties Submitted Conflicting Valuations**

The MGA Parties also have misrepresented their financial condition by obscuring discovery into their net worth and submitting conflicting valuations of their worth.  The MGA Parties respond that the valuations merely ebbed and flowed because of the "enormous expenses and burdens imposed on MGA due to this litigation." (Opp. 8:28.) This explanations falls far short.  It fails to explain why the MGA Parties concealed an October 12, 2007 valuation of MGA by Moss Adams -- refusing to produce the requested document until the middle of trial -- that MGA and Larian <u>had claimed did not exist</u>.[41] ████████████████████████ ████████████████████████████████████████████████ ██████████████████████████.[42]  The MGA Parties offer no explanation for the shift of over ████████████████ over three months, nor is there any -- except that when it came time to mitigate any possible damages award the MGA Parties came up with a lower number.  As this also makes clear, the MGA Parties' arguments are wholly irrelevant to discovery in any event.   Mattel is certainly entitled to explore MGA's net worth, MGA's explanations notwithstanding. If anything, the fact that MGA has proclaimed that it intends to proffer these arguments about its net worth only underscores how critical full and complete transparency through discovery is at this juncture.

(c)   **The MGA Parties Made Conflicting Claims About its** ████████████████████████

The MGA Parties devote paragraphs of their Opposition attempting to prove that Mattel's ownership of Bratz will place it in ████████████████. (Opp. 6:7-8:9.)  Yet, as Mattel has shown, this is only the latest in a string of conflicting

---

[41]   Moss Adams's Valuation Analysis of MGA Entertainment, Inc. as of June 30, 2007, Cover Letter to MGA dated October 12, 2007, Corey Dec., Exh. 76.
[42]   <u>Compare</u> <u>id.</u> <u>with</u> TX 4947, Corey Dec., Exh. 69.

claims over the past two years about MGA's financial condition and deserves no weight here. Indeed, this very same string of conflicting claims by MGA about its financial condition led Judge Larson to observe that MGA's finances were still a "mystery."[43] MGA's latest pronouncement also misses the point. Mattel is entitled to discovery into the issue of MGA's financial condition, as the Discovery Master and the Court have previously ruled, and Mattel -- and ultimately the Court and the jury -- are entitled to test MGA's *ipse dixit* claims about that financial condition.

### C.   The Requested Documents Are Relevant to Disgorgement

The MGA Parties do not explain why evidence that they are looting MGA's corporate assets into sham corporations and may have acquired fraudulent priority debt position in MGA is irrelevant to disgorgement. Nor do they dispute that it would be proper to impose a constructive trust to recover the ill-gotten gains of MGA and Larian that have been transferred to other parties. Thus, if any of the funds used by the MGA Parties to fund these possibly illicit transactions derived from ill-gotten gains related to Mattel's claims against the MGA Parties, Mattel would be entitled to discover -- and seek imposition of a constructive trust to re-acquire -- them.

### D.   The Documents Are Relevant to Unfair Competition

The MGA Parties do not dispute that fraudulently manipulating the sources of funding and using single-purpose companies to loot Bratz products for pennies on the dollar for resale through sham entities constitute unfair competition. Rather, the MGA Parties contend that no discovery can be taken regarding activities that constitute unfair competition because the underlying facts are not specifically alleged in Mattel's Counterclaims. This argument is contrary to federal law and would upend the <u>Federal Rules</u>' commitment to notice pleading, see Fed. R. Civ. P.

---

[43]   12/30/08 Hearing Tr. at 57:11-18, Corey Dec., Exh. 78.

8, and broad discovery, see Fed. R. Civ. P. 26, 37.  Mattel has pleaded a claim for unfair competition and alleged facts "without limitation."[44]  It was not required to plead every possible fact related to that claim, nor could it have.  Discovery was not complete and the alleged unfair competition was -- and is -- ongoing.  Mattel has since discovered new factual predicates supporting its claim and is attempting to investigate them further.  That is how the system is supposed to work:

> The Federal Rules replaced a system in which the issues had to be conclusively defined at the outset of litigation through the pleadings, with a system that relied on discovery and pretrial hearings to gradually identify the precise issues in dispute as more information is available.

02 Micro Int'l Ltd. v. Monolithic Power Systems, Inc., 467 F. 3d 1355, 1366 (Fed. Cir. 2006) (emphasis added).  Notice pleading requirements "allows the plaintiff to develop facts to support the theory of the complaint."  Id. at 1355.  See also Teachers' Retirement System of Louisiana v. Hunter, 477 F.3d 162, 170 (4th Cir. 2007) ("under this scheme of notice pleading and broad discovery" a party should be given the opportunity to develop the "necessary facts" to support a noticed claim).

Finally, plaintiffs' argument ignores the fundamental test for relevancy in federal discovery is "an extremely broad one."  Id. at 615.  See also W.E. Aubuchon Co., Inc. v. Benefirst, LLC, 245 F.R.D. 38, 41 (D. Mass. 2007) ("[B]road discovery is a cornerstone of the litigation process contemplated by the Federal Rules of Civil Procedure").  "It is well settled that to be discoverable documents need only be relevant to the subject matter involved in the pending litigation and not the issues raised by the pleadings."  Nalco Chemical Co. v. Hydro Techns., Inc., 148 F.R.D. 608, 616 (E.D. Wis. 1993) (emphasis added).  "A request for discovery should be

---

[44]   SAAC, ¶ 165, Corey Dec., Exh. 19.

1  considered relevant if there is <u>any possibility</u> that the information sought may be
2  relevant to the subject matter of the action." <u>Id.</u>, at 615 (emphasis added).

3      Nor is the MGA Parties' claims about post-complaint discovery consistent
4  with prior rulings in this case or the MGA Parties' own discovery practices.   For
5  example, reversing the prior Discovery Master, Judge Larson ordered Larian to
6  produce hard drives containing information that post-dated Mattel's complaint.[45]
7  Other Orders previously issued in this case likewise compelled post-complaint
8  discovery.[46]

9      **E.**    **The Documents Are Relevant to MGA's Unclean Hands Defense**

10      The MGA Parties claim that the discovery requested is irrelevant to their
11  unclean hands defense because it seeks discovery about events "wholly removed in
12  time and subject matter from the transactions at issue in Phase 2."  (Opp. 17:3-6.)
13  The MGA Parties' efforts to hamstring Mattel's ability to defeat their unclean hands
14  defense is unavailing.  Mattel has asserted claims based on MGA's hiring of former
15  Mattel executives and using them to acquire Mattel trade secrets.  The MGA Parties'
16  misconduct is ongoing, as MGA continues to exploit the trade secrets it stole from
17  Mattel.   MGA and Larian likewise do not set a time limitation on their unclean
18  hands defense.  Indeed, they list a wide range of generalized conduct in their August
19  and September 2007 Answers that is not limited by time.  MGA and Larian also
20  expressly note in their Answer that they have only articulated the basis for their
21  unclean hands defense "in part."[47]    In short, nowhere do the MGA Parties

22

23

24      [45]   Supp. Corey Dec., ¶ 6; February 27, 2008 Order, Suppl. Corey Dec., Exh. C.
25      [46]   Supp. Corey Dec., ¶ 6; May 16, 2007 Order, Suppl. Core Dec., Exh. D; May 29,
        2008 Order, Suppl. Core Dec., Exh. E.
26      [47]   MGA's Amended Answer and Affirmative Defenses, at 20-21, Corey Dec.,
27  Exh. 103; Larian's Amended Answer and Affirmative Defenses, at 16-18, Corey Dec.,
        Exh. 104.

28

1    demonstrate that Mattel's Phase 2 claims, and MGA's and Larian's unclean hands

2    defenses, do not encompass events occurring in 2008 or thereafter.

3        In any event, the standard for application of the unclean hands doctrine is not

4    temporal association, but whether the inequitable conduct "relates to the subject

5    matter of its claims." <u>Levi Strauss & Co. v. Shilon</u>, 121 F.3d 1309, 1313 (9th Cir.

6    1997).[48] Federal courts regularly permit broad discovery in support of a party's

7    unclean hands theory. <u>See, e.g.</u>, <u>Synopsys v. Nassda Corp.</u>, 2002 WL 32749136, *1

8    (N.D. Cal. Sept. 12, 2002) (compelling documents that "could lead to the discovery

9    of evidence relevant to . . . unclean hands" defense); <u>Analytichem</u>

10    <u>International, Inc. v. Har-Len Assocs.</u>, 490 F. Supp. 271 (W.D. Penn. 1980)

11    (compelling discovery related to unclean hands defense although it was "a prior

12    improbable"). Here, the third-party subpoenas seek information regarding facts that

13    the MGA Parties do not dispute would constitute unfair competition (the fraudulent

14    manipulation of funding and use of sham corporations to loot MGA). Similarly,

15    MGA's and Larian's unclean hands defense is premised on accusations that Mattel

16    purportedly engaged in "acts of unfair competition against MGA".[49] <u>See</u> <u>Key</u>

17    <u>Components, Inc. v. Edge Electronics</u>, 2008 WL 7937560, *6 (E.D. Tenn. Nov. 17,

18    2008) (advertising practices of plaintiff who brought false advertising claim were

19    relevant to defendants' unclean hands defense); <u>Cytosport, Inc.</u>, 2007 WL 1040993,

20

---

21    [48]   <u>Jarrow Formulas, Inc. v. Nutrition Now, Inc.</u>, relied on by the MGA Parties,

22    articulates the same standard. 304 F.3d 829, 841 (9th Cir. 1989) (question is whether the "inequitableness or bad faith" is "relative to the matter in which he seeks relief"). In <u>Dollar</u>

23    <u>Systems, Inc. v. Avcar Leasing Systems, Inc.</u>, the court found that a trial court did not

24    abuse its discretion by failing to apply the unclean hands defense to a claim for rescission of a contract based on failure to perform the contract because performance on the contract

25    was not related to the execution of the contract. Even so, the court found that even though unclean hands was not a complete bar to the claim, "the district court appropriately

26    considered [the party's] misconduct in reducing its damages." 890 F.2d 165, 173-174 (9th

27    Cir. 1989).
   [49]   See <u>infra</u>, footnote 47.

28

1  *4 (same).   Indeed, MGA itself has asserted in this case that acts of unfair
2  competition against it constitute unclean hands by Mattel.[50]

3      **F.   The Documents Are Relevant to the MGA Parties' Credibility**

4      The MGA Parties' contention that Mattel is not entitled to discovery which is
5  directly pertinent to MGA's and Larian's credibility is meritless.   _See Cable &_
6  _Computer Tech., Inc. v. Lockheed Sanders, Inc._, 175 F.R.D. 646, 650 (C.D. Cal.
7  1997) (information is relevant for discovery purposes if it relates to the credibility of
8  any witness); _Sandres v. Louisiana Div. of Admin._, 2008 WL 4758635, at *1 (M.D.
9  La. 2008) (denying motion to quash subpoena because requested discovery was
10 "relevant to the plaintiff's credibility").   Judge Larson and the previous Discovery
11 Master have already held, over MGA's objections, that materials relevant to
12 credibility is properly discoverable.[51]

13     Thus, MGA's cited authorities are too little, too late, and do not permit it to
14 relitigate an issue it previously lost.   They are also inapposite, since they simply
15 hold that evidence which is otherwise unrelated to the suit's subject matter is not
16 made relevant by "merely alleging" that a party's credibility is at issue.[52]   Mattel has
17 amply demonstrated in its Motion and above that MGA and Larian made false

18

19 _____

20  [50]   MGA's Opposition to Mattel's Motion to Strike Affirmative Defenses, 1:18-2:6;
    12:9-13:6, Suppl. Corey Dec., Exh. O.
21  [51]   _See, e.g._, Discovery Master's Order Granting Mattel's Motion to Compel Production
22 of Documents, dated January 25, 2007, at 12 (holding that documents relating to fee or
    indemnity agreements between MGA and Bryant are relevant to show "lack of
23 credibility"), Suppl. Corey Dec., Exh. P; Court's Order re Motions Heard on June 11, 2007,
    dated June 27, 2007, at 34 (holding that fee payment arrangements are relevant to
24 credibility and must be disclosed), Suppl. Corey Dec., Exh. L.
25  [52]   _See Martinez v. City of Fresno_, 2009 WL 129946, at *4 (E.D. Cal. 2009) (stating
    there was no indication that information was otherwise relevant); _Daughtery v. Wilson_,
26 2008 WL 4748042, at *2 (S.D. Cal. 2008) ("Defendants have not provided the Court with
    any arguments establishing the relevance of the challenged records."); _Lewis v. Wengerd_,
27 2006 WL 548438, at *3 (E.D. Cal. 2006) (plaintiff failed to show relevancy).

28

1   statements under oath about their financial condition as well as about the role of

2   Omni 808 and the other non-operating entities in providing MGA with funding.[53]

3       MGA's argument that the Phase 1 jury purportedly found Larian "blameless in

4   the face of similar Mattel accusations of untrustworthiness" likewise fails.  (Opp. at

5   15-16).    In fact, far from finding Larian "blameless" or trustworthy, the jury

6   concluded that Larian and MGA had engaged in intentional misconduct, including

7   conversion, tortious interference with contract, aiding and abetting breach of

8   fiduciary duty and aiding and abetting breach of duty of loyalty.[54]   Further, the

9   subpoenas are relevant to Larian's *and MGA's* credibility, and the jury found that

10  MGA fraudulently concealed the bases for Mattel's claims for years.[55]   In any event,

11  the wrongful acts that MGA and Larian are accused of in Phase 2 go beyond those at

12  issue in Phase 1, and Mattel is entitled to discovery relating to further fraudulent

13  acts by MGA and Larian related to this matter.

14  **V.   MATTEL'S MOTION TO COMPEL IS PROCEDURALLY PROPER**

15      The MGA Parties' contention that the Court should deny the motion to

16  compel because it is 30 pages long is meritless.  The Discovery Master Order, and

17  not the <u>Local Rules</u> and the Standing Order, govern.  That Order does not impose a

18  page limit on discovery motions.[56]    Sometimes, especially when dealing with

19  multiple subpoenas or parties, it is more efficient to file a single, longer brief rather

20  than multiple discovery motions.  For example, in this circumstance, Mattel moved

21

22  ---

[53]  <u>See</u> Section (IV)(B)(3), <u>infra</u>.

23  [54]  Final Verdict Form as Given – Phase 1(a), dated July 17, 2008, Corey Dec.,

24  Exh. 13.; Verdict Form – Phase 1(b), dated August 26, 2008, Corey Dec., Exh. 16.

    [55]  Verdict Form – Phase 1(b), dated August 26, 2008, at 8, Corey Dec., Exh. 16.

25  [56]  The Court's Standing Order applies to discovery disputes that have been assigned to

26  a Magistrate Judge and which are governed by the Local Rules.  April 14, 2006 Standing

    Order, ¶ 3, Suppl. Corey Dec., Exh. M.  Further, Local Rule 11-6 does not even apply to

27  discovery disputes.  Discovery disputes that are not subject to a stipulation appointing a

    discovery master are governed by Local Rule 37.

28

1    to compel on five separate subpoenas.  Theoretically, if the <u>Local Rule</u> and Standing

2    Order page limits applied, Mattel had the option of filing five separate motions to

3    compel, each of which could have been 25 pages in length.  That is hardly a practice

4    that should be encouraged, particularly when Mattel could avoid duplication by

5    filing a 30-page brief instead of multiple briefs.  To deny the motion to compel thus

6    would not only be inconsistent with the Discovery Master Order, but would

7    enhance, rather than diminish, the burden on the Discovery Master.  Taking steps to

8    reduce the amount of paper and the onus upon the Discovery Master does not violate

9    the Discovery Master Order.  Indeed, the MGA Parties have made no showing that

10   Mattel's election to try to reduce the burden on the Discovery Master -- instead of

11   filing duplicative, multiple briefs -- has prejudiced them in any way.

12          Finally, the MGA Parties' complaint that the length of the motion is part of a

13   "history of disregarding the rules" (MGA Opp., 18:25-19:2) is not only without

14   basis, but refuted by the MGA Parties' own practices.  That history shows that

15   Mattel, in fact, prevailed on well over 50 discovery motions against defendants in

16   this case to date, which would scarcely have occurred had Mattel violated the rules

17   as the MGA parties claim (or been necessary had defendants complied with basic

18   discovery obligations).[57]  Further, as they fail to disclose here, the MGA Parties

19   have repeatedly filed discovery-related briefs in excess of 25 pages,[58] further

20   confirming that they know well that their procedural arguments are without merit.[59]

21

22   [57] Suppl. Corey Dec., ¶ 9.

23   [58] Suppl. Corey Dec., ¶ 7.

24   [59] Similarly, the MGA Parties attack Mattel for submitting a separate statement to the Discovery Master so he could track the arguments request-by-request, claiming it "is

25   another classic example of Mattel's inefficiency and disregard for this Court's limited time and resources." (Opp., 19:8-9.)  Nothing in the Discovery Stipulation precludes the filing

26   of a separate statement, and the prior Discovery Master likewise accepted separate statements on discovery motions.  Indeed, ***both parties*** in this matter -- ***including MGA*** --

27   have submitted separate statements in support of their discovery motions to assist the

28        (footnote continued)

1

## <u>Conclusion</u>

2       Mattel respectfully requests that the Discovery Master grant Mattel's motion

3   to compel and order the third parties to produce all non-privileged responsive

4   documents and to log any responsive documents withheld on the basis of privilege.

5

6   DATED:  February 24, 2009        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

7

8                          By /s/ Jon D. Corey

9                            Jon D. Corey
                         Attorneys for Mattel, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____

27   Discovery Master in tracking the requests at issue on a given motion.  Suppl. Corey Dec.,
¶ 8.

28