1087 (9th Cir. 2000).[5]

Assuming that the party asserting a claim can establish that the party resisting the Court's exercise of personal jurisdiction has met either the purposeful availment or express aiming part of the three-part test regarding the exercise of specific personal jurisdiction, courts next consider whether the claim arises out of or relates to the forum-related activities. In making this determination, the Court considers whether the contacts with the forum gave rise to the claims asserted, employing a "but for" standard. See Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001).

Once the purposeful availment/express aiming and relatedness requirements are established, the burden shifts to the party resisting the Court's exercise of jurisdiction to show that exercise of jurisdiction is unreasonable. In determining reasonableness, the Court considers seven factors:

> 1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.

---

[5] What constitutes, or doesn't constitute, "express aiming" is best illustrated by example. For instance, in Pebble Beach Co. v. Caddy, 453 F.3d 1151 (9th Cir. 2006), no express aiming was found where the owner of a bed-and-breakfast in England (overlooking a pebbly beach) used the term "pebblebeach," the name of a famous golf course located in California, on its web site. Id. at 1153, 1156-57. The Ninth Circuit acknowledged that it might be foreseeable that the defendant's use of the web site might have some effect on California, but noted that mere foreseeability of effect in a forum state is not enough to constitute express aiming. Id. at 1157. In contrast to Pebble Beach is the case of Panavision Intern., L.P. v. Toeppen,141 F.3d 1316, 1321 (9th Cir. 1998), in which the Ninth Circuit found that the express aiming requirement was met where the defendant registered plaintiff's marks as Internet domain names in order to force a California plaintiff to pay him money.

EXHIBIT  L
PAGE _____ 108

1   Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991) (internal citation

2   omitted).  No factor is dispositive and the Court must balance all seven.  Id.

3   (internal citation omitted).

4   **B.   MGA Mexico's Contacts with the Forum State**

5       The AAC alleges that Issac Larian and other MGA officers, while in

6   California, executed a plot to target three high-level employees of Mattel Mexico,

7   and entice them to steal Mattel's trade secrets.  In written offers of employment to

8   these three individuals, Issac Larian held himself out to be the CEO of MGA

9   Mexico.  This plot was facilitated by a number of cross-border communications

10  among the participants as well as travel to the United States by the targeted

11  employees.

12  **C.   The Court May Exercise Personal Jurisdiction over MGA Mexico**

13      The AAC repeatedly alleges that Larian, who held himself out to be MGA

14  Mexico's CEO, and who was designated as MGA Mexico's "legal agent" in Mexican

15  registration document actively sought to induce others to access and steal Mattel's

16  trade secrets while located in the California.  See Velázquez Decl. Exs. A-C; Salem

17  Decl. Ex. B.  This constitutes purposeful availment.

18      To the extent that any of the actions taken in Mexico by the three Mexican

19  employees may be imputed to Mattel Mexico, there is also purposeful direction.

20  The alleged actions taken on behalf of MGA Mexico were specifically engineered to

21  result in the alleged illegal acquisition of trade secrets belonging to Mattel, a

22  California resident.[6]

23      The relatedness requirement is also clearly met.  The contacts with

24  California involve actions allegedly taken in order to further the illegal acquisition of

25  Mattel's trade secrets, leading to the present claims against MGA Mexico for

26  misappropriation of trade secrets and the related RICO claims.

27

28      [6] The AAC alleges the theft of trade secrets belonging not only to Mattel's
    Mexican subsidiary, but also to Mattel itself, which is a California corporation.

30

1   The burden, therefore, is on MGA Mexico to show that the exercise of

2   jurisdiction is unreasonable.[7] As noted previously, the Court considers seven

3   factors. The first factor the Court considers is the defendant's purposeful

4   interjection. For the reasons the Court has found purposeful availment and

5   purposeful direction, this factor favors the exercise of personal jurisdiction.

6   MGA Mexico argues, without elaboration, that the burden of defending itself

7   in California is "significant." However, the assumption underlying this argument is

8   that the present action is more properly litigated by MGA's and Mattel's Mexican

9   subsidiaries. This assumption misses the point of Mattel's claim against MGA

10  Mexico; Mattel, the parent company, was itself injured by MGA's Mexico's alleged

11  misappropriation of its own trade secrets because the alleged misappropriation was

12  not limited to trade secrets belonging to its Mexican subsidiary. The argument

13  based on this faulty assumption is therefore unconvincing. In order to show

14  unreasonableness, the burden on the defendant must be great. See Panavision,

15  141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the

16  assessment of reasonableness, but unless the inconvenience is so great as to

17  constitute a deprivation of due process, it will not overcome clear justifications for

18  the exercise of jurisdiction.") (internal quotation marks and citation omitted).

19  As to the third and seventh factors, regarding conflicts of law and the

20

21      [7] In its reply, MGA Mexico declares that it "made a 'compelling case' in
    support of its motion to dismiss that it would be unreasonable to force it to litigate
22  in this forum." MGA Mexico Reply at 10. However, MGA Mexico's motion papers
    fail to acknowledge that they bear the burden on this issue. See MGA Mexico's
23  Memorandum of Points and Authorities at 10 ("Finally, Mattel has failed to satisfy
    the third element required for specific jurisdiction -- that the exercise of jurisdiction
24  over the defendant would be reasonable."). As Mattel accurately predicted in its
    opposition papers, MGA Mexico implicitly acknowledged its burden in the reply,
25  and used the occasion to improperly present additional arguments for the first
    time. Although the Court ordinarily would not consider such arguments, it does so
26  here because it does not change the Court's ultimate conclusion. See In re Intuit
    Privacy Litigation, 138 F.Supp.2d 1272, 1275 n.3 (C.D. Cal. 2001) ("this court
27  does not consider arguments raised anew for the first time in a reply brief as to do
28  so would unfairly deny the non-moving party an opportunity to respond.").

31

EXHIBIT  L

PAGE  110

1   existence of an alternative forum, MGA Mexico makes veiled references to the

2   criminal action in Mexico as constituting a choice of forum made by Mattel,

3   apparently implying that Mattel, having chosen to pursue criminal charges in

4   Mexico, should be precluded from invoking the power of this Court. It appears to

5   the Court that MGA Mexico has failed to fully and clearly articulate this argument

6   because it is untenable. Whether Mexican authorities pursue criminal charges

7   based on the same conduct underlying the claims in this action is irrelevant to

8   whether this Court may constitutionally exercise personal jurisdiction over MGA

9   Mexico. Therefore, MGA Mexico's argument on this issue is unpersuasive.

10      The fourth factor, the interest in adjudicating the dispute, weighs in favor of

11   the exercise of personal jurisdiction, as does the sixth, the plaintiff's interest in

12   convenient and effective relief.

13      MGA Mexico argues that the fifth factor weighs in its favor when the Court

14   considers that the site of injury, which it does not believe is California, is the most

15   efficient forum. However, this argument is premised on the rejected assumption

16   that the present action is more properly litigated between MGA's and Mattel's

17   Mexican subsidiaries.

18      On balance, a consideration of the reasonableness factors reveals that MGA

19   Mexico has fallen far short of establishing the "compelling case" necessary to

20   render the Court's exercise of personal jurisdiction unreasonable.

21      The Court concludes that Mattel has established the first two parts of the

22   specific personal jurisdiction test, and that MGA Mexico has failed to establish that

23   the Court's exercise of personal jurisdiction over it is otherwise unreasonable.

24   Accordingly, the Court **DENIES** MGA Mexico's motion to dismiss.

### V. MGA's and Bryant's Motions Regarding

### the Discovery Master's March 7, 2007, Order

27      MGA and Bryant seek review of a decision that resolved discovery disputes

28   that arose during Bryant's deposition, and that was rendered by the Court-

32

EXHIBIT __L__

PAGE ___lll___

1  appointed discovery master, Judge Edward A. Infante (Ret.), on March 7, 2007.
2  The Court's order appointing Judge Infante provides that his orders resolving
3  discovery disputes shall be reviewed in the same manner as those made by a
4  magistrate judge of this Court.

5       Pursuant to Fed. R. Civ. P. 72(a), when the parties object to the ruling of a
6  magistrate judge on a non-dispositive manner, such as a discovery dispute, the
7  district judge may modify or set aside only those portions of the magistrate judge's
8  order that are "clearly erroneous or contrary to law." Id.

9       The "clearly erroneous" language refers to factual findings. See e.g.,
10 Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension
11 Trust, 508 U.S. 602, 622 (1993) (discussing the clearly erroneous standard). Here,
12 there were no explicit factual findings or legal conclusions made by Judge Infante
13 regarding the relevant rulings; therefore, the Court reviews the record presented to
14 Judge Infante to determine whether his rulings are contrary to law. See March 7,
15 2007, Order.

16      Questions that do not seek the substance of attorney-client communications
17 generally do not implicate the attorney-client privilege. United States v. Carrillo,16
18 F.3d 1046, 1050 (9th Cir. 1994) (finding no violation of the attorney-client privilege
19 where prosecutor, who asked whether a criminal defendant had consulted with his
20 attorney during a recess in order to raise an inference of attorney coaching of
21 testimony during the trial, stopped short of asking defendant the substance of
22 defendant's communications with his attorney). Therefore, questions such as the
23 one addressed by objection No. 38, asking whether Bryant talked to counsel for
24 MGA during a break from his deposition, are not subject to objection based on the
25 attorney-client privilege. This conclusion is consistent with Judge Infante's Order.

26      Mattel's question regarding who is paying Bryant's legal fees, addressed by
27 objection No. 42, is likewise not objectionable. MGA and Bryant argue that state
28 law applies; however, because the present consolidated actions involve both



EXHIBIT __L__
33
PAGE ___I2___

1   federal and state-law claims, the federal law of privilege applies. Agster v.

2   Maricopa County, 422 F.3d 836, 839-40 (9th Cir. 2005) ("Where there are federal

3   question claims and pendent state law claims present, the federal law of privilege

4   applies."). To that end, consistent with federal privilege law, fee-payment

5   arrangements are relevant to credibility and bias, and if asked in discovery, Bryant

6   must disclose who is paying his legal fees. See United States v. Blackman, 72 F.3d

7   1418, 1424 (9th Cir. 1995) ("As a general rule, client identity and the nature of the

8   fee arrangement between attorney and client are not protected from disclosure by

9   the attorney-client privilege."). This conclusion is also consistent with Judge

10  Infante's Order.

11        However, in this case, the joint-defense privilege protects from disclosure the

12  substance of certain statements made by Bryant and his attorneys in the presence

13  of attorneys representing MGA. "The joint defense privilege protects

14  communications between an individual and an attorney for another when the

15  communications are 'part of an on-going and joint effort to set up a common

16  defense strategy.'" United States v. Bay State Ambulance and Hosp. Rental

17  Service, Inc., 874 F.2d 20, 28 (1st Cir. 1989) (internal quotation marks and citation

18  omitted). Generally, to rely on the joint-defense privilege, a party must establish

19  three elements: "(1) [T]he communications were made in the course of a joint

20  defense effort, (2) the statements were designed to further the effort, and (3) the

21  privilege has not been waived." Id.

22        The Court finds the first element was met. The Court, based on its review of

23  the record pending before Judge Infante, is satisfied that the parties had in place at

24  the time of Bryant's deposition, and have in place today, a valid joint-defense

25  agreement. The Court also finds that the second element was met. Mattel cannot

26  seriously contend that MGA's interests are not aligned with Bryant's in this action,

27  or that counsels' thorough preparation of Bryant for his deposition was not designed

28  to further the joint defense effort. Finally, as for the third element, there is no

EXHIBIT ___L
PAGE ___1B

1   suggestion in the record that any party has waived the attorney-client privilege.

2         Accordingly, the Court holds that Judge Infante's rulings on Objection Nos.

3   39 and 50 are contrary to law to the extent those rulings require Bryant to divulge

4   the substance of his communications with counsel for MGA.

5                              **VII. Conclusion**

6         In the manner set forth more fully herein, the Court makes the following

7   rulings:

8         1.     Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian

9   ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189):

10  **GRANTED IN PART AND DENIED IN PART.**

11        2.     Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and

12  XI (docket # 191): **GRANTED IN PART AND DENIED IN PART.**

13        3.     Motion of MGA Mexico to Dismiss Mattel's Amended Answer and

14  Counterclaims (docket # 266): **DENIED.**

15        4.     Motion of MGA Objecting to Discovery Master's March 7, 2007, Order

16  (docket # 308): **GRANTED IN PART AND DENIED IN PART.**

17        5.     Motion of Carter Bryant Objecting to Discovery Master's March 7,

18  2007, Order (docket # 306): **GRANTED IN PART AND DENIED IN PART.**

19        Mattel is **GRANTED** ten days' leave to amend the AAC in conformity with

20  this Order. The Counter-defendants shall answer or otherwise respond to the

21  SAAC no later than thirty days after the filing of the SAAC.

22

23

24

25

26

27

28


EXHIBIT L
PAGE 114

1    The Motion Re Trial Structure (docket #462) has been the subject of further

2  briefing by the parties and is set for further oral argument on July 2, 2007.  Ruling

3  on that matter is **DEFERRED** pending oral argument.

4         DATE:  June 27, 2007

5

6                                    STEPHEN G. LARSON
                                    UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _L_

PAGE _115_

Received:     6/27/07   3:21PM         #:155607Fax -> QUINN E′ ¹UEL;   Page 1
RightFAX              6/27/2007 3:04     PAGE 001/037    Fax Server

'om:      Name:         United States District Court
                        312 North Spring Street
                        Los Angeles, CA 90012
          Voice Phone:  (213) 894-5474

ͻ:        Name:         Michael Zeller
          Company:

                        865 S Figueroa St, 10th Floor,
          City/State:   Los Angeles, CA 90017-2543
          Fax Number:   213-443-3100

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA



## Automated Document Delivery Service
*Notice pursuant to Rule 77(d) FRCiv.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

x Notes:

se 2:04-CV-09049 : CARTER BRYANT V. MATTEL INC

*rsuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search
/arrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents
(Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a
judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail
address for each division is as follows:*

Western Division:  CrimIntakeCourtDocs-LA@cacd.uscourts.gov
Southern Division:  CrimIntakeCourtDocs-SA@cacd.uscourts.gov
Eastern Division:  CrimIntakeCourtDocs-RS@cacd.uscourts.gov

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!**
**To switch, complete and submit**
**Optical Scanning Enrollment / Update form G-76.**
**Call 213-894-5474 for help and free technical support.**

*you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case,
a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for
hich you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending
of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

te and time of transmission:         Wednesday, June 27, 2007 3:04:20 PM
mber of pages including this cover sheet:  37

EXHIBIT  L
PAGE  116

# EXHIBIT M

Received: 4/14/06 3:54PM; RightFAX -> JetFax M920; Page 2

RightFAX 4/1 2006 3:55 PAGE 002/011 Fax Server

· FILED

SEND

'2006 APR 14  AM 11: 35

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY_____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, | Case No. CV 04-09049 SGL(RNBx) |
| Plaintiff, | STANDING ORDER |
| v. | |
| MATTEL, INC., | |
| Defendant. | |

**READ THIS ORDER CAREFULLY. IT CONTROLS THE CASE
AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.**

This action has been assigned to the calendar of Judge Stephen G. Larson. Both the Court and the attorneys bear responsibility for the progress of litigation in the Federal Courts. To secure the just, speedy, and inexpensive determination of every action, Fed. R. Civ. P. 1, all counsel of record are ordered to familiarize themselves with the Federal Rules of Civil Procedure and the Local Rules of the Central District of California.

IT IS HEREBY ORDERED:

1.     **Service of the Complaint:** The Plaintiff shall promptly serve the Complaint in accordance with Fed. R. Civ. P. 4 and file the proofs of service pursuant to Local Rule 5-3.1

EXHIBIT ___M___
PAGE ___11___   4-14

DOCKETED ON CM
APR 14 2006

(23)

1      **2.      Presence of Lead Counsel:** Lead trial counsel shall attend all

2   proceedings before this Court, including all status and settlement conferences.

3   Failure of lead trial counsel to appear for those proceedings without express leave of

4   court is a basis for sanctions.

5      **3.      Discovery:** All discovery matters have been referred to a United States

6   Magistrate Judge (see initial designation following the case number) to hear all

7   discovery disputes. The words "DISCOVERY MATTER" shall appear in the caption

8   of all documents relating to discovery to insure proper routing. Counsel are directed

9   to contact the Magistrate Judge Courtroom Deputy Clerk for the assigned Magistrate

10   Judge to schedule matters for hearing.

11         The decision of the Magistrate Judge shall be final, subject to modification by

12   the District Court only where it has been shown that the Magistrate Judge's order is

13   clearly erroneous or contrary to law.

14         Any party may file and serve a motion for review and reconsideration before

15   this Court. The party seeking review must do so within ten (10) days of service upon

16   the party of a written ruling or within ten (10) days of an oral ruling that the

17   Magistrate Judge states will not be followed by a written ruling. The motion must

18   specify which portions of the text are clearly erroneous or contrary to law and the

19   claim must be supported by points and authorities. A copy of the moving papers and

20   responses shall be delivered to the Magistrate Judge's clerk for review upon the filing

21   of the required documents.

22         Unless there is a likelihood that upon motion by a party the court would order

23   that any or all discovery is premature, it is advisable for counsel to begin to conduct

24   discovery actively before the Scheduling Conference. At the very least, the parties

25   shall comply fully with the letter and spirit of Fed. R. Civ. P. 26(a) and thereby obtain

26   and produce most of what would be produced in the early stage of discovery, because

27

28

2

EXHIBIT __M__

PAGE __118__

1 the Court will impose tight deadlines to complete discovery at the Scheduling

2 Conference.

3     If expert witnesses are to be called at trial, the parties shall designate experts to

4 be called at trial and provide reports required by Fed. R. Civ. P. 26(a)(2)(B) not later

5 than eight (8) weeks prior to the discovery cutoff date. Rebuttal expert witnesses

6 shall be designated and reports provided as required by Fed. R. Civ. P. 26(a)(2)(B)

7 not later than five (5) weeks prior to the discovery cutoff date. Failure to timely

8 comply with this deadline may result in the expert being excluded at trial as a

9 witness.

10     **4.**   **Motions:**

11     **(a)**   **Time for Filing and Hearing Motions:** Motions shall be filed in

12 accordance with Local Rules 6-1 and 7-2, etc.[1] This Court hears motions on

13 Mondays, commencing at 10:00 a.m. No supplemental brief shall be filed without

14 prior leave of Court. Conformed courtesy copies of opposition and reply papers shall

15 be delivered to the courtesy box on the wall outside the entrance to Courtroom No.

16 One, located on the Second Floor of the U.S. Courthouse, 3470 Twelfth Street,

17 Riverside, California, **by 4:00 p.m. on the date due.** Many motions to dismiss or to

18 strike could be avoided if the parties confer in good faith (as they are required to do

19 under L.R. 7-3), especially for perceived defects in a complaint, answer, or

20 counterclaim which could be corrected by amendment. See Chang v. Chen, 80 F.3d

21 1293, 1296 (9th Cir. 1996) (where a motion to dismiss is granted, a district court

22 should provide leave to amend unless it is clear that the complaint could not be saved

23 by *any* amendment). Moreover, a party has the right to amend its complaint "once as

24

25     [1] Among other things, Local Rule 7-3 requires counsel to engage in a pre-filing

26 conference "to discuss thoroughly . . . the substance of the contemplated motion and any
potential resolution." Counsel should discuss the issues sufficiently so that if a motion is

27 still necessary, the briefing may be directed to those substantive issues requiring resolution
by the Court. Counsel should resolve minor procedural or other nonsubstantive matters

28 during the conference.

EXHIBIT __M__

PAGE __119__

3

1  a matter of course at any time before a responsive pleading is served." Fed. R. Civ.

2  15(a).  A 12(b)(6) motion is not a responsive pleading for purposes of Rule 15(a) an

3  therefore plaintiff might have a right to amend.  See Nolen v. Fitzharris, 450 F.2d

4  958, 958-59 (9th Cir. 1971); St. Michael's Convalescent Hospital v. California, 643

5  F.2d 1369, 1374 (9th Cir. 1981).  Even where a party has amended its Complaint

6  once, or where a responsive pleading  has been served, the Federal Rules provide th

7  leave to amend should be "freely given when justice so requires." Fed.R.Civ.P.

8  15(a).  The Ninth Circuit requires that this policy favoring amendment be applied

9  with "extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 107

10  1079 (9th Cir. 1990).  These principles require that counsel for the plaintiff should

11  carefully evaluate the defendant's contentions as to the deficiencies in the complain

12  and, in many instances, the moving party should agree to any amendment that woul

13  cure a curable defect.

14       In the unlikely event that motions under Fed. R. Civ. P. 12 challenging

15  pleadings are filed after the Rule 16 Scheduling Conference, the moving party shall

16  attach a copy of the challenged pleading to the Memorandum of Points and

17  Authorities in support of the motion.

18       The foregoing provisions apply as well to motions to dismiss a counterclaim,

19  answer, or  affirmative defense that a plaintiff might file.

20       **(b)    Length and Format of Motion Papers:  Memoranda of Poin**

21  **and Authorities in support of or in opposition to motions shall not exceed 25**

22  **pages.  Replies shall not exceed 12 pages.**  Only in rare instances and for good cau

23  shown will the Court grant an application to extend these page limitations.

24       Typeface shall comply with Local Rule 11-3.1.1. If Times Roman font is use

25  the size must be no less than 14; if Courier is used, the size must be no less than 12.

26  Footnotes shall be in typeface no less than one size smaller than text size

27

28

EXHIBIT M

PAGE 120

4

1   and shall be used sparingly.

2       Filings that do not conform to the Local Rules and this Order will not be
3   considered.

4           **(c)    Citations to Case Law:** Citations to case law **must** identify not
5   only the case being cited, but the specific page being referenced. Certain kinds of
6   authority are considered more useful - or authoritative - than others. If more than one
7   authority is cited in support of a proposition, these supporting authorities are to be
8   listed such that the more authoritative ones appear first.

9           **(d)    Citations to Statutory Sources:** Counsel are reminded that the
10  basic purpose of a legal citation is to allow the reader to locate a cited source
11  accurately and efficiently. Accordingly, statutory references should identify, with
12  specificity, which sections and subsections are being referenced (e.g., Jurisdiction
13  over this cause of action may appropriately be found in 47 U.S.C. § 33, which grants
14  the district courts jurisdiction over all offenses of the Submarine Cable Act, whether
15  the infraction occurred within the territorial waters of the United States or on board a
16  vessel of the United States outside said waters). Statutory references which do not
17  indicate specifically which section and subsection are being referred to (e.g.,
18  Plaintiffs allege conduct in violation of the Federal Electronic Communication
19  Privacy Act, 18 U.S.C. § 2511, et seq.) are to be **avoided.** Citations to treatises,
20  manuals, and other materials should similarly include the volume and the section
21  being referenced.

22          **(e)    Citations to Other Sources:** Parties offering evidence in support
23  of, or in opposition to, a motion (notably a Rule 56 motion) must cite to specific page
24  and line numbers in depositions and paragraph numbers in affidavits. Furthermore,
25  such evidence must be authenticated properly. The Court directs the parties to
26  become familiar with Orr v. Bank of America, NT & SA, 285 F.3d 764 (9th Cir.
27  2002).

28

EXHIBIT M
PAGE 12

5

1    **(f)    Courtesy Copies:** Counsel shall deliver a conformed courtesy

2    copy of all opposition and reply papers in motion matters to the courtesy box on the

3    wall outside the entrance to Courtroom No. One, located on the Second Floor of the

4    U.S. Courthouse, 3470 Twelfth Street, Riverside, California, **by 4:00 p.m. on the**

5    **date due.**

6             **(g)    Limits on Motions**

7                 **(1) Motions for Summary Judgement or Partial Summary**

8    **Judgement:** No party may file more than one motion pursuant to

9    Fed. R. Civ. P. 56 regardless of whether such motion is denominated as a motion for

10    summary judgment or summary adjudication.

11                 **(2) Motions in Limine:** No party may file more than five

12    motions in limine.

13    **5.    Proposed Orders:** Each party filing or opposing a motion or seeking

14    the determination of any matter shall serve and lodge a Proposed Order setting forth

15    the relief or action sought and a brief statement of the rationale for the decision with

16    appropriate citations. If the Proposed Order exceeds two pages, the proposing party

17    shall also submit the document on a 3½-inch diskette compatible with WordPerfect

18    7.0 or higher.

19    **6.    Ex Parte Applications:** Counsel are reminded that ex parte applications

20    are solely for extraordinary relief. See Mission Power Engineering Co. v. Continental

21    Casualty Co., 883 F. Supp. 488 (C.D. Cal. 1995). Applications which fail to conform

22    with Local Rules 7-19 and 7-19.1, **including a statement of opposing counsel's**

23    **position,** will not be considered. Any opposition must be filed not later than 24 hours

24    after service. If counsel do not intend to oppose the ex parte application, counsel

25    must inform the court clerk by telephone. The Court considers ex parte applications

26    on the papers and usually does not set these matters for hearing.

27

28

6

EXHIBIT _M_
PAGE __12__

1   Counsel shall deliver a conformed courtesy copy of moving, opposition, or notice o
2   non-opposition papers to the courtesy box outside the entrance to Courtroom No. 1,
3   located on the Second floor of the U.S. Courthouse, 3470 Twelfth Street, Riverside,
4   California. The courtroom deputy clerk will notify counsel of the Court's ruling or
5   hearing date and time, if the Court determines a hearing is necessary.

6       **7.**   **Applications or Stipulations to Extend the Time to File any**
7   **Required Document or to Continue any Pretrial or Trial Date:** No stipulations
8   extending scheduling requirements or modifying applicable rules are effective until
9   and unless the Court approves them. Both applications and stipulations must be file
10  in advance of the date due and set forth:

11      **(a)**   the existing due date or hearing date as well as the discovery
12  cutoff date, the last date for hearing motions, the pre-trial conference date and the
13  trial date;

14      **(b)**   specific, concrete reasons supporting good cause for granting the
15  extension; and

16      **(c)**   whether there have been prior requests for extensions, and
17  whether these were granted or denied by the Court.

18      **8.**   **TROs and Injunctions:** Parties seeking emergency or provisional reli
19  shall comply with Fed. R. Civ. P. 65 and Local Rule 65. The Court will not rule on
20  any application for such relief for at least 24 hours after the party subject to the
21  requested order has been served; such party may file opposing or responding papers
22  in the interim. [2]   The parties shall lodge a courtesy copy, conformed to reflect that i
23  has been filed, of all papers relating to TROs and injunctions. The courtesy copy
24  shall be placed in the courtesy box outside the entrance to Courtroom No. One,

EXHIBIT ___ M

PAGE ___ 123

26      [2]   Local Rule 7-19.2 - Waiver of Notice. If the Judge to whom the application is
27  made finds that the interest of justice requires that the ex parte application be heard withou
    notice (which in the instance of a TRO means that the requisite showing under Fed.R.Civ.I
28  65(b) has been made) the judge may waive the notice requirement of L.R. 7-19.1.

7

Received:   4/14/06   3:57PM;                        #155916 -> JetFax MF^O;   Page 9
RightFAX                    4/1v,2006 3:55    PAGE 009/011    Fax Server

1   located on the Second floor of the U.S. Courthouse, 3470 Twelfth Street, Riverside,

2   California.  All such papers shall be filed "loose" - - i.e., not inside envelopes.

3       **9.**   **Cases Removed From State Court**:  All documents filed in state court,

4   including documents appended to the complaint, answers, and motions, must be

5   refiled in this Court as a supplement to the Notice of Removal, if not already

6   included.  See 28 U.S.C. § 1447(a)(b).  If the defendant has not yet responded, the

7   answer or responsive pleading filed in this Court must comply with the Federal Rules

8   of Civil Procedure and the Local Rules of the Central District.  If a motion was

9   pending in state court before the case was removed, it must be re-noticed in

10  accordance with Local Rule 6-1.

11      **10.**   **ERISA Cases:**  Absent an agreed upon statement of facts, the court will

12  not hear motions for summary judgment, but will hear motions to determine the

13  standard of review and the scope of the administrative record.  See Kearney v.

14  Standard Insurance Co., 175 F.3d 1084 (9th Cir. 1999).  There will be a court trial

15  (usually confined to oral argument) on the administrative record.

16      **11.**   **Status of Fictitiously Named Defendants**:  This Court intends to

17  adhere to the following procedures where a matter is removed to this Court on

18  diversity grounds with fictitiously named defendants referred to in the complaint.

19  (See 28 U.S.C. §§ 1441(a) and 1447.)

20          (a)   Plaintiff is normally expected to ascertain the identity of and serve

21  any fictitiously named defendants within 120 days of the removal of the action to this

22  Court.

23          (b)   If plaintiff believes (by reason of the necessity for discovery or

24  otherwise) that fictitiously named defendants cannot be fully identified within the

25  120-day period, an ex parte application requesting permission to extend that period to

26  effectuate service may be filed with this Court.  Such application shall state the

27  reasons therefor, and may be granted upon a showing of good cause.  The ex parte

28

8

EXHIBIT M
PAGE 124

1  application shall be served upon all appearing parties, and shall state that appearing
2  parties may comment within seven (7) days of the filing of the <u>ex parte</u> application.

3         (c)    If plaintiff desires to substitute a named defendant for one of the
4  fictitiously named parties, plaintiff first shall seek to obtain consent from counsel for
5  the previously-identified defendants (and counsel for the fictitiously named party, if
6  that party has separate counsel).  If consent is withheld or denied, plaintiff may apply
7  <u>ex parte</u> requesting such amendment, with notice to all appearing parties.  Each party
8  shall have seven calendar days to respond.  The <u>ex parte</u> application and any response
9  should comment not only on the substitution of the named party for a fictitiously
10 named defendant, but on the question of whether the matter should thereafter be
11 remanded to the Superior Court if diversity of citizenship is destroyed by the addition
12 of the new substituted party.  <u>See</u> 28 U.S.C. § 1447(c)(d).

13     **12.**    **Communications with Chambers:**  Counsel shall not attempt to contact
14 the Court or its chambers staff by telephone or by any other <u>ex parte</u> means, although
15 counsel may contact the courtroom deputy, at (951) 328-4464, with appropriate
16 inquiries.  To facilitate communication with the courtroom deputy, counsel should list
17 their facsimile transmission numbers along with their telephone numbers on all
18 papers.

19     **13.**    **Notice of this Order:**  Counsel for plaintiff shall immediately serve this
20 Order on all parties, including any new parties to the action.  If this case came to the
21 Court by noticed removal, defendant shall serve this Order on all other parties.

22
23
24
25
26
27
28

9



EXHIBIT M
PAGE 125

**14.  Internet Site:** Counsel are encouraged to review the Central District's Website for additional information.[3]  The address is "http://www.cacd.uscourts.gov."

IT IS SO ORDERED.

Dated: April 14, 2006

_S G Larson_

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE

---

[3] Copies of the Local Rules are available on our website at "http://www.cacd.uscourts.gov" or they may be purchased from one of the following:

Los Angeles Daily Journal
915 East 1st Street
Los Angeles, California 90012

West Publishing Company
610 Opperman Drive
Post Office Box 64526
St. Paul, Minnesota 55164-0526

Metropolitan News
210 South Spring Street
Los Angeles, California 90012

EXHIBIT _M_
PAGE _126_

10

EXHIBIT N

1           UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3              EASTERN DIVISION

4                 - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                 - - -

7  CARTER BRYANT, ET. AL.,        )
                                  )
8               PLAINTIFFS,       )
                                  )
9        VS.                      )  NO. ED CV 04-09049
                                  )  (LEAD LOW NUMBER)
10  MATTEL, INC., ET. AL.,        )
                                  )
11             DEFENDANTS.   )  MOTION; OSC HEARING
                                  )
12  AND CONSOLIDATED ACTIONS,     )
                                  )

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16             RIVERSIDE, CALIFORNIA

17          MONDAY, FEBRUARY 25, 2008

18                11:24 A.M.

19

20

21

22

23           THERESA A. LANZA, RPR, CSR
           FEDERAL OFFICIAL COURT REPORTER
24            3470 12TH STREET, RM. 134
           RIVERSIDE, CALIFORNIA  92501
25               951-274-0844
           WWW.THERESALANZA.COM

CERTIFIED COPY

EXHIBIT  V
PAGE  127

FEBRUARY 25, 2008                    BRYANT V. MATTEL

1          **THE COURT:**  THAT'S FINE.

2          **MR. COREY:**  IT WAS CANCELLED FOR THE REASON THAT IT'S

3    A PHASE TWO DEPOSITION.

4          **THE COURT:**  THAT'S NOT YOUR CALL TO MAKE.  THAT'S

5    MR. NOLAN'S CALL TO MAKE.  I'M NOT GOING TO HAVE MR. NOLAN

6    DECIDING YOUR WITNESS LIST OR WITNESS ORDER, AND I'M NOT GOING

7    TO HAVE YOU DECIDING HIS.

8          HOW COULD YOU KNOW WHAT HE'S GOING TO BE DOING IN

9    PHASE ONE?

10          **MR. COREY:**  IF I MAY, BECAUSE HE'S TOLD ME WHAT HE'S

11    GOING TO DO -- LET ME TAKE A STEP BACK.

12          BECAUSE I KNOW FROM HIS INITIAL DISCLOSURES EXACTLY

13    WHAT HE IDENTIFIED WITH RESPECT TO MR. BOUSQUETTE.

14          IF I MAY READ, YOUR HONOR.

15          "MGA BELIEVES MR. BOUSQUETTE IS A FORMER PRESIDENT OF

16    MATTEL BRANDS.  MR. BOUSQUETTE MAY POSSESS KNOWLEDGE OF

17    MATTEL'S SERIAL COPYING OF MGA'S DISTINCTIVE TRADE DRESS,

18    TRADEMARKS, PRODUCT PACKAGING, THEMES, IDEAS AND ADVERTISING.

19    MATTEL'S DELUSION OF MGA'S FAMOUS MARKS; MATTEL'S INTERFERENCE

20    WITH MGA'S ADVERTISING EFFORTS; MATTEL'S THREATS AND

21    INTIMIDATION OF RETAILERS, SUPPLIERS, LICENSEES, DISTRIBUTORS,

22    MANUFACTURERS AND FORMER EMPLOYEES AND FREELANCERS; MATTEL'S

23    IMPROPER INFLUENCE OF STANDARD SETTING AND INDUSTRY

24    ORGANIZATIONS; MATTEL'S MANIPULATION OF MGA'S RETAIL DISPLAYS

25    AND OTHER ASPECTS OF MATTEL'S UNCLEAN HANDS."

EXHIBIT  *N*

PAGE  128

1        **THE COURT:**  I THINK I CAN SEE HOW A GOOD NUMBER OF

2    THOSE ISSUES GO TO PHASE TWO.  BUT I CAN ALSO SEE HOW SOME OF

3    THOSE MIGHT BE RELATED TO PHASE ONE.

4        WHAT I'VE TRY TO AVOID IN THIS WHOLE PROCESS IS

5    PRECISELY THIS, AND THAT'S WHY I TRIED TO CAREFULLY WORD THE

6    ORDERS CONCERNING PHASE ONE, PHASE TWO, BIFURCATION, NOT TO

7    APPLY TO DISCOVERY.  BECAUSE I DON'T WANT TO BE IN A POSITION

8    UP HERE HAVING HEARINGS OVER WHAT'S A PHASE ONE WITNESS AND

9    WHAT'S A PHASE TWO WITNESS, AND WASTING A TREMENDOUS AMOUNT OF

10   TIME AND RESOURCES, NOT ONLY THE COURT'S, BUT THE PARTIES,

11   HAVING THIS KIND OF DISPUTE.  I REALLY WANT TO DEFER THIS

12   ISSUE, AND I'VE TRIED TO DEFER THIS ISSUE, TO THE PARTIES TO

13   EITHER WORK OUT, OR, IF YOU CAN'T WORK IT OUT, JUST TAKE THE

14   DEPOSITION AND WE'LL MOVE FORWARD.

15       **MR. COREY:**  I THINK IF YOU CAN'T WORK IT OUT, THEN

16   IT'S PHASE TWO, IT'S STAYED, AND THEN NO DEPOSITION IS TAKEN.

17   AND IF THERE'S AN ISSUE, THEN IT SHOULD GO TO THE DISCOVERY

18   MASTER, AS WAS PROPERLY POINTED OUT.

19       BUT WHAT CAN HAPPEN -- AND THIS IS WHAT'S BEEN

20   HAPPENING, AND THIS HAS BEEN MATTEL'S CONCERN FROM DAY ONE --

21   IS FROM THE TIME THAT NEW COUNSEL HAS ENTERED THE CASE, THEY

22   HAVE ASKED FOR A STAY OF PHASE TWO DISCOVERY.  THEY FINALLY

23   HAVE IT, AND NOW THE ISSUES THAT THEY SEEK TO DEPOSE

24   MR. BOUSQUETTE ABOUT ARE ISSUES THAT, UP UNTIL NOW, LITERALLY

25   UP UNTIL THE DAY OF THE EXPERT REPORTS, WERE PHASE TWO ISSUES.

EXHIBIT __M__

PAGE __129__

FEBRUARY 25, 2008                    BRYANT V. MATTEL

```
 1   AND NOW THEY ARE SAYING "WE THEY WANT TO DEPOSE MR. BOUSQUETTE
 2   AND MS. PATEL ABOUT WHAT MATTEL DID YEARS AFTER CARTER BRYANT
 3   LEFT, YEARS AFTER BRATZ WAS CREATED."
 4           I'VE LISTENED VERY CAREFULLY, AND I DIDN'T HEAR A
 5   REFERENCE TO CARTER BRYANT OR A REFERENCE TO THE CREATION OF
 6   BRATZ, WHICH THIS COURT HAS DECIDED ARE WHAT'S GOING TO BE
 7   DECIDED IN PHASE ONE. SO FOR THEM TO COME BACK -- IT'S VERY
 8   LATE IN THE DAY -- AND SAY, 'WE WANT TO TAKE DISCOVERY, WE WANT
 9   TO ASK PEOPLE ABOUT WHAT MATTEL'S COMPETITIVE RESPONSE TO BRATZ
10   WAS.'
11           THAT'S THE WHOLE REASON WE AGREED, ESSENTIALLY, TO
12   BIFURCATE PHASE ONE AND PHASE TWO. BECAUSE WHATEVER MATTEL'S
13   RESPONSE MAY BE, IT DOESN'T MATTER UNTIL THERE'S A
14   DETERMINATION OF THE OWNERSHIP.
15           THE COURT: MR. NOLAN, WOULD YOU CARE TO RESPOND?
16           MR. NOLAN: YES.
17           I WANT TO RESPOND, FIRST OF ALL, THAT THE -- AND I'M
18   REALLY SURPRISED THAT THIS WAS DONE -- THE STATEMENT THAT
19   MR. COREY JUST READ TO YOU AND SAID THAT WAS FROM OUR INITIAL
20   DISCLOSURES, IN THEIR BRIEF AT PAGE 10, IT'S FOOTNOTE 33, IT
21   SAYS THAT WAS FILED DECEMBER 21ST OF 2007.
22           IN FACT, YOUR HONOR, IF YOU LOOK AT THEIR SUBMISSION,
23   IT'S EXHIBIT 12 -- IT'S HARD TO FIND BECAUSE THEY DON'T NUMBER
24   THE PAGES -- BUT IT IS, IN FACT, FILED SEPTEMBER 21ST, 2007.
25           NOW, WHAT HAS HAPPENED SINCE SEPTEMBER OF 2007?
```

EXHIBIT _N_
PAGE _130_

FEBRUARY 25, 2008                     BRYANT V. MATTEL

1           **MR. COREY:**  I TOLD HIM, YEAH, I TOLD HIM HE DIDN'T

2      HAVE TO APPEAR BECAUSE HE WAS PHASE TWO AND THE COURT HAD

3      STAYED IT.

4           **THE COURT:**  LET'S BE CAREFUL ON THIS, COUNSEL.

5           **MR. COREY:**  THE LAST POINT IS THAT I BELIEVE

6      MR. NOLAN REFERRED TO AN AGREEMENT THAT MR. BOUSQUETTE HAS WITH

7      MATTEL THAT'S ATTACHED AS AN EXHIBIT TO MR. HERRINGTON'S

8      SUPPLEMENTAL DECLARATION.

9           THAT AGREEMENT HAS EXPIRED.

10          THANK YOU, YOUR HONOR.

11          **THE COURT:**  ALL RIGHT.  I'LL BE ISSUING AN ORDER.

12     THIS IS ONE OF THOSE ORDERS THAT YOU'LL BE LOOKING FOR THAT

13     WILL ACTUALLY BE OF SUBSTANCE AND NOT JUST A SEALING, COUNSEL.

14          YOU'RE GOING TO TURN IN A PROPOSED ORDER?

15          **MR. QUINN:**  YES, YOUR HONOR.

16          **THE COURT:**  ANYTHING FURTHER?

17          **MR. COREY:**  NO, YOUR HONOR.

18                          CERTIFICATE

19

20     I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
       STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21     THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
       ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22     CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
       THE UNITED STATES.

23

24

25     THERESA A. LANZA, RPR, CSR
       FEDERAL OFFICIAL COURT REPORTER

                                              2-29-08
                                              DATE
                                              EXHIBIT ___ ✓
                                              PAGE ___ 191

              FEBRUARY 25, 2008              BRYANT V. MATTEL

# EXHIBIT O

CALENDARED
RECEIVED
NOV 0 7 2007

1  THOMAS J. NOLAN (Bar No. 66992)
   HARRIET S. POSNER (Bar No. 116097)
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
3  Los Angeles, California 90071-3144
   Telephone: (213) 687-5000
4  Facsimile: (213) 687-5600
   E-mail: tnolan@skadden.com
5          hposner@skadden.com

6  RAOUL D. KENNEDY (Bar No. 40892)
   TIMOTHY A. MILLER (Bar No. 154744)
7  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   4 Embarcadero Center, 38th Floor
8  San Francisco, CA 94111-5974
   Telephone: (415) 984-6400
9  Facsimile: (415) 984-2698
   Email: rkennedy@skadden.com
10         tmiller@skadden.com

11 AMY S. PARK (Bar No. 208204)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
12 525 University Avenue
   Palo Alto, CA 94301
13 Telephone: (650) 470-4500
   Facsimile: (650) 470-4570
14 Email: apark@skadden.com

15 Attorneys for Counter-Defendants,
   MGA ENTERTAINMENT, INC., ISAAC LARIAN,
16 MGA ENTERTAINMENT (HK) LIMITED, AND
   MGAE de MEXICO S.R.L. de C.V.
17

18            UNITED STATES DISTRICT COURT

19            CENTRAL DISTRICT OF CALIFORNIA

20

21 CARTER BRYANT, an individual          )  CASE NO. CV 04-9049 SGL (RNBx)
                                         )
22            Plaintiff,                 )  Consolidated with Case No. 04-9059
                                         )  and Case No. 05-2727
23      v.                               )
                                         )  MGA ENTERTAINMENT, INC.,
24 MATTEL, INC., a Delaware              )  MGA ENTERTAINMENT (HK)
   corporation                          )  LIMITED AND MGAE DE
25                                       )  MEXICO S.R.L. DE C.V.'S
              Defendant.                 )  OPPOSITION TO MATTEL'S
26                                       )  MOTION TO STRIKE
   EXHIBIT __O__                         )  AFFIRMATIVE DEFENSES
27                                       )
   PAGE __192__                          )  Honorable Stephen G. Larson
28                                       )
                      11-5-07

1 | Consolidated with MATTEL, INC. v.   )   Date:  November 19, 2007
2 | BRYANT and MGA   )   Time:  10:00 a.m.
  | ENTERTAINMENT, INC. v.   )   Place:  Courtroom 1
3 | MATTEL, INC.   )
4 | )
5 |
6 |
7 |
8 |
9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 | EXHIBIT _____O_____
27 | PAGE _____132_____
28 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................. 1

PROCEDURAL BACKGROUND............................................................. 3

ARGUMENT ........................................................................................... 7

I.   MATTEL CANNOT PROVE THAT ANY OF MGA'S AFFIRMATIVE DEFENSES ARE INSUFFICIENT, IMMATERIAL OR IMPROPERLY PLEADED. ...................................................... 7

    A.   Motions to Strike Are A Disfavored, Drastic Remedy That Is Rarely Granted................................................................................. 7

    B.   Mattel Cannot Establish That Its Inequitable Conduct Is Legally Insufficient To Support MGA's "Unclean Hands" Defense................ 9

        1.   Mattel's Attack On MGA's "Unclean Hands" Defense Raises Disputed Factual Questions That May Not Be Resolved At This Stage. ................................................... 9

        2.   The Pleadings Demonstrate Sufficient Connection Between Mattel's Misconduct And Its Counterclaims Against MGA.... 11

        3.   Mattel Mischaracterizes Judge Infante's Orders. ..................... 14

        4.   The Balance of Mattel's Legal Arguments Should Be Rejected. ............................................................................... 15

II.  MGA HAS PROVIDED FAIR NOTICE OF ALL AFFIRMATIVE DEFENSES CONSISTENT WITH THE FEDERAL RULES. ................... 19

III. MATTEL'S ATTACK ON MGA'S WAIVER, ESTOPPEL AND ACQUIESCENCE DEFENSES REQUIRE THE COURT TO RESOLVE FACTUAL DISPUTES BASED ON AN UNDEVELOPED RECORD. ........................................................................................... 22

IV.  MATTEL'S ALTERATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT IS PREMATURE AND FAILS TO DEMONSTRATE AN ABSENCE OF TRIABLE ISSUES OF FACT...................................... 23

CONCLUSION ...................................................................................... 25

EXHIBIT _____
PAGE _____

i

MGA PARTIES' OPP'N TO MATTEL'S MOT. TO STRIKE AFFIRMATIVE DEFENSES.

1

## **TABLE OF AUTHORITIES**

2
**Page**

3

**Cases**

4

Adler v. The Fed. Republic of Nigeria, 219 F.3d 869 (9th Cir. 2000) ........................ 9

5

6

Bieter Co. v. Blomquist, 848 F. Supp. 1446 (D. Minn. 1994).................................... 19

7

Board of Trustees of the San Diego Electrical Pension Trust v. Bigley Electric, Inc.,
No. 07-CV-634-IEG (LSP), 2007 WL 2070355 (S.D. Cal. July 12, 2007) .... 19, 21

8

9

California Department of Toxic Substances Control v. Alco Pacific, Inc.,
217 F. Supp. 2d 1028 (C.D. Cal. 2002)........................................................ 7, 14, 16

10

California Satellite Sys., Inc. v. Nichols, 170 Cal. App. 3d 56 (1985)........................ 9

11

12

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .............................................................................................. 25

13

Contest Association, Inc. v. Staley, 434 F. Supp. 2d 650 (N.D. Iowa 2006) ............ 18

14

Dangerfield Island Protective Society v. Babbitt, 40 F.3d 442 (D.C. Cir. 1994)...... 20

15

16

De Garmo v. Goldman, 19 Cal. 2d 755 (1942)........................................................ 15

17

DeRosa v. Transamerica Title Ins. Co., 213 Cal. App. 3d 1390 (Cal. Ct. App. 1989)
.................................................................................................................................. 15

18

19

Federal Trade Commision v. Medicor, No. CV011896CBMEX, 2001 WL 765628
(C.D. Cal. June 26, 2001)................................................................................... 8, 16

20

21

Fibreboard Paper Prods. Corp. v. E. Bay Union of Machinists, 227 Cal. App. 2d 675
(1964) ...................................................................................................................... 11

22

Fuhrman v. California Satellite Systems, 179 Cal. App. 3d 408 (1986) ................... 16

23

24

Gallagher v. England, No. CIVR 050750 AWI SMS, 2005 WL 3299509 (E.D. Cal.
Dec. 5, 2005) ............................................................................................................ 7

25

Geraghty and Miller, Inc. v. Conoco, Inc., 234 F.3d 917 (5th Cir. 2000)................ 20

26

In re National Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig., 636 F.
Supp 1138 (C.D. Cal. 1986)....................................................................................

27

28

Insurance Co. of North America v. Liberty Mutual Insurance Co.,
128 Cal. App. 3d 297 (Cal. Ct. App. 1982) ........................................................ 1, 9

ii

Kendall-Jackson Winery, Ltd. v. Superior Court,
  76 Cal. App. 4th 970 (Cal. Ct. App. 1999) ................................... 2, 9, 10, 11, 12, 15

Kimes v. Stone,
  84 F.3d 1121 (9th Cir. 1996) ................................................................................ 16

Lazar v. Trans Union LLC, 195 F.R.D. 665 (C.D. al. 2000) ....................................... 7

Lirtzman v. Spiegel, Inc., 493 F. Supp. 1029 (N.D. Ill. 1980) ................................... 8

Magnesystems, Inc. v. Nikken, Inc.,
  933 F. Supp. 944 (C.D. Cal. 1996) ................................................................. 10, 13

Martinez v. California,
  444 U.S. 277 100 S. Ct. 553 (1980) ....................................................................... 16

McCormick v. Cohn, 1992 WL 687291 (S.D. Cal. July 31, 1992), affirmed 17 F.3d
  395 (9th Cir. 1994) ........................................................................................... 2, 18

Mesnick v. Caton, 183 Cal. App. 3d 1248 (1986) ..................................................... 17

Morongo Band of Mission Indians v. Rose,
  893 F.2d 1074 (9th Cir. 1990) .............................................................................. 21

In re National Mortgage Equity Corp. Mortgage Pool Certificates, 636 F. Supp. 1138
  (C.D. Cal. 1986) .................................................................................................. 18

Nissan Fire & Marine Insurance Co. v. Fritz Cos.,
  210 F.3d 1099 (9th Cir. 2000) ........................................................................... 3, 25

Ocean Atlantic Woodland Corp. v. DRH CambrId.ge Homes, Inc.,
  No. 02 C 2523, 2003 WL 1720073 (N.D. Ill. Mar. 31, 2003) ................................ 8

Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP, 133 Cal. App.
  4th 658 (2005) .................................................................................................... 11

Piscioneri v. City of Ontario, 95 Cal. App. 4th 1037 (2002) ................................. 1, 10

Precision Instrument Mfg. Co. v. Automative Maint. Mach. Co.,
  324 U.S. 806 (1945) .......................................................................................... 9, 15

Sagana v. Tenorio,
  384 F.3d 731 (9th Cir. 2004) ................................................................................ 20

San Bernardino Public Employees Association v. Stout, 946 F. Supp. 790 (C.D. Cal.
  1996) ..................................................................................................................... 8

EXHIBIT
PAGE ___ 136

Sec. & Exch. Comm'n v. Toomey, 866 F. Supp. 719 (S.D.N.Y. 1992) ....................... 7

Secs. & Exch. Comm'n v. McCaskey,
    56 F. Supp. 2d 323 (S.D.N.Y. 1999).................................................. 1, 10

SecuriMetrics, Inc. v. Hartford Casualty Insurance Co.,No. C 05-00917 CW, 2005
    WL 2463749 at *4 (N.D. Cal. Oct. 4, 2005)................................. 2, 20, 23

Securities & Exchange Communication v. Sands,
    902 F. Supp. 1149 1165 (C.D. Cal. 1995)....................................... passim

Unilogic, Inc. v. Burroughs Corp., 10 Cal. App. 4th 612 (Cal. Ct. App. 1992).......... 9

Williams v. Ashland Eng. Co., Inc., 45 F.3d 588, 593 (1st Cir. 1995) ..................... 20

Wong v. United States, 373 F.3d 952 (9th Cir. 2004) ................................................ 19

Woodfield v. Bowman, 193 F.3d 354 (5th Cir. 1999)........................................... 2, 20

Wyshak v. City National Bank,
    607 F.2d 824 (1979) ................................................................. 19, 21

**Statutes**

Fed. R. Civ. Proc. 12(f) .......................................................................... 7

Fed. R. Civ. Proc. 15(a)........................................................................ 21

Fed. R. Civ. Proc. 26(a)(1) .................................................................... 24

Fed. R. Civ. Proc. 8(b) ......................................................................... 19

Fed. R. Civ. Proc. 8(c)........................................................................... 17

**Other Authorities**

30 California Jurisprudence 3d Equity § 27 (2007).................................... 15

5 Wright & Miller, supra § 1274, at 616-17 (2004)................................... 19

5 Wright & Miller, supra §1273, at 614-15 (2004)..................................... 17

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure § 1380 (3d ed. 2004) ........................................................ 7, 8

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure § 1381 (3d ed. 2004) ........................................................ 8

EXHIBIT O
PAGE 137

1   California Practice Guide: Federal Civil Procedure Before Trial § 9:376 (2007)... 7, 8

2   Federal Civil Procedure Before Trial, at ¶ 9:403 ......................................................... 8

3   Federal Civil Procedure Before Trial, at ¶ 9:412 ...................................................... 21

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT ___
PAGE ___ 13 ୮

v

1      MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE De

2 Mexico S.R.L. de C.V. (collectively "MGA") submit this opposition to Mattel, Inc.'s

3 ("Mattel's") Motion to Strike MGA's affirmative defenses.

4                   **PRELIMINARY STATEMENT**

5      Courts generally view motions to strike as drastic remedies often pursued for

6 harassment or dilatory purposes. See 5C Charles Alan Wright & Arthur R. Miller,

7 Federal Practice and Procedure § 1380, at 394 (3d ed. 2004). Mattel's motion is no

8 exception to that rule. It should be rejected for several reasons:

9      First, Mattels attempt to strike MGAs unclean hands defense fails because "the

10 application of the doctrine of unclean hands is primarily a question of fact," Insur.

11 Co. of No. Am. v. Liberty Mut. Insur. Co., 128 Cal. App. 3d 297, 306 (1982), and, as

12 such, is unfit for resolution on a motion to strike. See Sec. & Exch. Comm'n v.

13 Sands, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995). Given the fact-dependent inquiry

14 that is required in resolving an unclean hands defense, MGA is entitled to a full

15 opportunity to develop the facts underlying its defense. See Piscioneri v. City of

16 Ontario, 95 Cal. App. 4th 1037, 1049-50 (2002); Secs. & Exch. Comm'n v.

17 McCaskey, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999).

18      Second, Mattel's argument that the allegations that support MGA's unclean

19 hands defense are insufficiently linked to Mattel's claims is simply blind to the

20 pleadings. Most obviously, many of the parties' respective allegations relate to the

21 ownership, commercialization and marketing of the same intellectual property – the

22 BRATZ doll collection. As background to this specific dispute, the balance of

23 MGA's unclean hands defense allegations and Mattel's counterclaims arise from a

24 wide-ranging commercial battle between the competitors in which each side claims

25 the other is engaging in unlawful business practices. For example, Mattel alleges

26 that "[f]or years MGA Entertainment, Inc. has engaged in a pattern of stealing and

27 using Mattel, Inc.'s property and trade secrets." (Mattel's 2d Am. Answer at 29.)

28

EXHIBIT   **6**

PAGE   **139**

1  Similarly, MGA alleges that its unclean hands "affirmed defense is based, in part, on
2  Mattel's efforts to undermine MGA's business and to 'kill' BRATZ at any cost."
3  (MGA's Am. Answer at 20.)  Indeed, each side accuses the other of remarkably
4  similar misconduct, including interfering in dealings with customers, meddling in
5  relations with employees, disparaging the others' products, stealing trade secrets, and
6  falsely inflating performance figures.

7       Third, Mattel improperly attempts to impose undue restrictions on MGA's
8  unclean hands defense.  Contrary to Mattel's assertion, MGA need not show that any
9  of Mattel's inequitable conduct is tortious or otherwise actionable to support an
10  unclean hands defense.  See Kendall-Jackson Winery, Ltd. v. Superior Court, 76 Cal.
11  App. 4th 970, 974 (1999).  Nor is MGA barred, as a matter of law, from raising
12  unclean hands as a defense to Mattel's RICO or copyright claims  Unclean hands
13  constitutes a viable defense against copyright claims.  See McCormick v. Cohn, 1992
14  WL 687291, at *3 (S.D. Cal. July 31, 1992), aff'd 17 F.3d 395 (9th Cir. 1994).  In
15  addition, none of the cases cited by Mattel supports Mattel's proposition that
16  "[u]nclean hands is not a recognized defense to a RICO claim." (Mot. at 13.)

17       Fourth, Mattel's argument that certain of MGA's defenses do not provide "fair
18  notice" ignores the liberal pleading standard applied to affirmative defenses and is
19  undermined by Mattel's assertion of many of the identical affirmative defenses.
20  MGA is only required to provide Mattel fair notice of its defenses, not plead
21  allegations supporting every element of its affirmative defenses.  See SecuriMetrics,
22  Inc. v. Hartford Cas. Ins. Co., No. C 05-00917 CW, 2005 WL 2463749, at *4 (N.D.
23  Cal. Oct. 4, 2005).  Indeed, in some instances, courts have found that merely
24  pleading the name of the defense affords sufficient fair notice.  See Woodfield v.
25  Bowman, 193 F.3d 354, 362 (5th Cir. 1999).  Here, Mattel has been adequately
26  apprised as to what defenses MGA intends to pursue, including its defenses of
27  waiver, estoppel and acquiescence.  Moreover, Mattel's attacks on MGA's
28

EXHIBIT  O
PAGE  140

1 | affirmative defenses are disingenuous because Mattel pleaded many of the same
2 | affirmative defenses using <u>precisely the same</u> language as MGA did or, in some
3 | instances, using far less descriptive language.

4 |     Apparently seeking at all costs to avoid litigating the merits of MGA's
5 | affirmative defenses, Mattel moves, in the alternative, for partial summary judgment
6 | on MGA's defenses on the ground that MGA's Rule 26(a)(1) disclosures do not
7 | specifically identify a witness or document for every particular allegation set forth in
8 | MGA's answer. But, contrary to Mattel's assertion, MGA's Rule 26(a)(1) disclosures
9 | do, in fact, identify many witnesses and documents that support its affirmative
10 | defenses, including its unclean hands defense. That Mattel may desire greater
11 | specificity in MGA's Rule 26 disclosures is neither required by the Federal Rules nor
12 | a sufficient basis for partial summary judgment.

13 |     Mattel's argument that MGA lacks sufficient evidence to support its defenses
14 | is further inapt in light of the stage of discovery in this case. (Mot. at 25.) As the
15 | Ninth Circuit made clear in <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d
16 | 1099, 1102 (9th Cir. 2000), motions grounded on the theory of "insufficient"
17 | evidence should be denied when brought before discovery has concluded.

18 | **PROCEDURAL BACKGROUND**

19 |     For nearly 40 years, Mattel, Inc. ("Mattel") and its "Barbie" line of dolls
20 | dominated the fashion doll market. (MGA Compl. ¶ 10.) But in the late 1990s,
21 | Mattel's long dominance began to wane, as consumer tastes modernized and Mattel
22 | placed its faith in antiquated products. (MGA Compl. ¶ 20.) A few years later, in
23 | June 2001, MGA Entertainment, Inc. ("MGA") unveiled its BRATZ line of fashion
24 | dolls, which included innovative, "hip" product design, packaging and marketing.
25 | (MGA Compl. ¶¶ 23-28.) Rather than "respond ... with a new creative product of its
26 | own," Mattel retaliated by "wag[ing] war against MGA using a wide-array of
27 | tortuous, unfair and anti-competitive practices including systematic, serial

28 |

EXHIBIT _C_
PAGE _141_

1  copycatting and intellectual property infringement...[.]" (MGA Compl. ¶ 32; MGA
2  Am. Answer at 21.)  Mattel also wielded its extraordinary market power to threaten
3  MGA's suppliers, distributors, retailers, licensees, and employees.  (Id. ¶¶ 74-79.)

4       The parties' pleadings reflect this escalating corporate battle between the rival
5  doll makers.  Mattel initiated this matter when, on April 27, 2004, it sued Carter
6  Bryant, alleging that Mattel was the true owner of the BRATZ line of fashion dolls.
7  On December 3, 2004, MGA intervened in Mattel's lawsuit against Mr. Bryant to
8  protect MGA's rights to the BRATZ properties.  (See MGA's Answer in Intervention
9  to Pl.'s Unverified Compl.)  Five months later, on April 13, 2005, MGA sued Mattel
10 regarding a broad range of illegal business practices, including false designation,
11 dilution, unjust enrichment, "habitual and unfair tactics of competition-by-
12 intimidation," and "serial copycatting of MGA's products." (Proctor Decl. Ex. 10
13 (MGA Compl. ¶ 7).)

14      On July 12, 2007, Mattel filed its Second Amended Answer and
15 Counterclaims, asserting counterclaims for copyright infringement, violation of
16 RICO, conspiracy to violate RICO, misappropriation of trade secrets, intentional
17 interference with contract, aiding and abetting breach of fiduciary duty, aiding and
18 abetting breach of duty of loyalty, conversion and unfair competition.  (Proctor Decl.
19 Ex. 13 (Mattel's 2d Am. Answer).)  Mattel also alleged, for the first time, that MGA's
20 CEO made misrepresentations to nonparty retailers about Mattel's products.  (See,
21 e.g., Mattel's 2d Am. Answer at 80.)[1]

22      Finally, on August 13, 2007, MGA answered Mattel's counterclaims, which
23 MGA amended on September 19, 2007.  (Proctor Decl. Ex. 14 (MGA's Answer).)

24 ───────────────

25      [1] As the Court observed, "[w]hereas before [Mattel's] complaint simply sought
   to litigate alleged contractual and fiduciary breaches by Bryant while in the employ
26 of Mattel ..., the amended complaint adds five more defendants and nine new legal
   claims, alleging a wide range of commercial disputes between the rival doll makers
27 that spans three countries." (Proctor Decl. Ex. 12 (Jan. 11, 2007 Order at 4)
   (emphasis added).)

28

MGA's amended answer pleaded 22 affirmative defenses, including an "unclean hands" defense. (MGA's Am. Answer at 20-21.) To support its "unclean hands" defense, MGA asserted allegations detailing the unfair and unethical business practices that Mattel was engaged in relating to its battle against MGA. (Id.)

As the chart below illustrates, MGA's allegations are directed at the same set of transactions and matters that are the subject of Mattel's counterclaims.

| Subject Matter | Mattel's Counterclaims | MGA's "Unclean Hands" Allegations |
|---|---|---|
| BRATZ | • MGA infringed Mattel's rights to the BRATZ dolls. (2d Am. Answer & Counterclaims ¶¶ 21 – 36.) | • Mattel infringed and diluted MGA's trade dress, and copied designs, packaging and advertising related to BRATZ. (Am. Answer at 21.)<br><br>• Mattel improperly delayed in asserting infringement. (Id.) |
| Customers, Suppliers, Retailers & Other Business Partners | • MGA tried to gain an unfair competitive advantage for MGA products vis-a-vis Mattel products by misrepresenting sales and market share figures in press releases and making false representations to retailers about BARBIE products. (2d Am. Answer & Counterclaims ¶ 79-81.) | • Mattel tried to gain an unfair competitive advantage for Mattel products vis-a-vis MGA products by, inter alia, misrepresenting sales figures to retailers and customers, created negative publicity or press about MGA, and interfering with MGA's acquisition of Zapf Creation AG. (Am. Answer at 20-21.) |

EXHIBIT ___O___

PAGE ___143___

| Subject Matter | Mattel's Counterclaims | MGA's "Unclean Hands" Allegations |
|---|---|---|
| Employees | • MGA persuaded Mattel employees to leave Mattel to join MGA (2d Am. Answer & Counterclaims ¶ 77). | • Mattel prevented prospective MGA employees from accepting offers with MGA. (Am. Answer at 21.)<br><br>• Mattel covertly investigated MGA, its officers, employees and family members. (Am. Answer at 20.)<br><br>• Mattel contacted employees under false pretenses to interrogate them (Id.) |
| Information | • MGA persuaded Mattel employees to breach confidentiality agreements and misappropriate trade secrets for MGA's benefit. (2d Am. Answer & Counterclaims ¶¶ 55-69, 70-76, 77.) | • Mattel used coercive tactics on its employees to improperly limit their disclosure of information (Id.)<br><br>• Mattel induced non-parties to breach confidentiality agreements with MGA and divulge non-public information. (Id.)<br><br>• Mattel spied and wrongfully acquired MGA's trade secrets, sales and costs data. (Id.) |

Taken together, the parties' allegations reflect a tightly drawn battle over the creation of the BRATZ dolls by Mr. Bryant and MGA and a more generalized but plainly interconnected battle between Mattel and Barbie, on the one hand, and MGA and BRATZ on the other.

EXHIBIT _O_
PAGE ___ 149

1

## ARGUMENT

2  **I.  MATTEL CANNOT PROVE THAT ANY OF MGA'S AFFIRMATIVE**
3  **DEFENSES ARE INSUFFICIENT, IMMATERIAL OR IMPROPERLY**
4  **PLEADED.**

5  **A.  Motions to Strike Are A Disfavored, Drastic Remedy That Is**
**Rarely Granted.**

6

7      Motions to strike are generally regarded with disfavor. <u>Cal. Dep't of Toxic</u>

8  <u>Substances Control v. Alco Pac., Inc.</u>, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)

9  (citing <u>Lazar v. Trans Union LLC</u>, 195 F.R.D. 665, 669 (C.D. Cal. 2000).  Indeed,

10  courts view such motions as drastic remedies often pursued for harassment or

11  dilatory purposes.  <u>See</u> <u>Federal Practice and Procedure</u> § 1380, at 394..

12      Reflecting this disfavor, most motions to strike are denied. <u>California Practice</u>

13  <u>Guide: Federal Civil Procedure Before Trial</u> § 9:376 (2007); <u>accord</u> Federal Practice

14  and Procedure, <u>supra</u> § 1380, at 394.  As one court explained, "[a] motion to strike

15  defenses will not be granted unless it appears to a certainty that plaintiffs would

16  succeed despite any state of the facts which could be proved in support of the

17  defense." <u>Sec. & Exch. Comm'n v. Toomey</u>, 866 F. Supp. 719, 722 (S.D.N.Y. 1992)

18  (internal quotes omitted); <u>accord</u> <u>Gallagher v. England</u>, No. CIVR 050750 AWI

19  SMS, 2005 WL 3299509, at *2 (E.D. Cal. Dec. 5, 2005) ("A defendant should be

20  given the opportunity to prove his allegations if there is any possibility that the

21  defense might succeed after full hearing on the merits.")

22      In evaluating a motion to strike, courts must view affirmative defenses in a

23  light most favorable to the defendant and resolve any doubts about the sufficiency of

24  a defense in the defendant's favor. <u>Alco Pac., Inc.</u>, 217 F. Supp. at 1033.  Thus, to

25  succeed on a motion to strike an affirmative defense, the moving party must first

26  convince the court "that under no set of circumstances could the defense succeed."

27  <u>Alco Pac., Inc.</u>, 217 F. Supp. 2d at 1032-1033 (citing <u>Sands</u>, 902 F. Supp. at 1165);

28

EXHIBIT ___8___

PAGE ___143___

-7-

1 | accord Fed. Civ. Proc Before Trial, supra § 9:381 (same); see also Fed. Trade
2 | Comm'n v. Medicor, No. CV011896CBMEX, 2001 WL 765628, at *1 (C.D. Cal.
3 | June 26, 2001) ("A motion to strike will not be granted if the insufficiency of the
4 | defense is not clearly apparent, or if it raises factual issues that should be determined
5 | by a hearing on the merits.")

6 |      Similarly, a motion to strike immaterial matter from a pleading "should not be
7 | granted unless it is clear that the matter to be stricken can have no possible bearing
8 | on the subject matter of the litigation." San Bernardino Pub. Employees Ass'n v.
9 | Stout, 946 F. Supp. 790, 803 (C.D. Cal. 1996) (emphasis added); see also 5C Wright
10 | & Miller, supra § 1380, at 397 ("[I]t must be shown that the allegations being
11 | challenged are so unrelated to the plaintiff's claims as to be unworthy of any
12 | consideration as a defense and that their presence in the pleading will be prejudicial
13 | to the moving party.")

14 |      Significantly for the present motion, courts may not resolve questions of fact
15 | or law on a motion to strike. See Sands, 902 F. Supp. at 1165; see also, 5C Wright &
16 | Miller, supra, § 1381, at 426 Accordingly, the "grounds for the motion must appear
17 | on the face of the pleading under attack or from matter which the court may
18 | judicially notice." Sands, 902 F. Supp. at 1165 (citing Fed. Civ. Proc. Before Trial §
19 | 9:403 (1995)).  Courts will therefore deny motions to strike that involve unresolved
20 | issues of law or fact. See, e.g., Medicor, 2001 WL 765628 at *3 (denying motion to
21 | strike unclean hands defense because defendant may be able to prove facts
22 | supporting its allegations); see also Lirtzman v. Spiegel, Inc., 493 F. Supp. 1029,
23 | 1031-32 (N.D. Ill. 1980) (denying motion to strike defense because it required
24 | resolution of a factual dispute); Ocean Atl. Woodland Corp. v. DRH Cambridge
25 | Homes, Inc., No. 02 C 2523, 2003 WL 1720073, at *8 (N.D. Ill. Mar. 31, 2003)
26 | (same).

EXHIBIT __O__

PAGE __146__

**B.  Mattel Cannot Establish That Its Inequitable Conduct Is Legally Insufficient To Support MGA's "Unclean Hands" Defense.**

 1.  **Mattel's Attack On MGA's "Unclean Hands" Defense Raises Disputed Factual Questions That May Not Be Resolved At This Stage.**

The doctrine of unclean hands bars recovery by a plaintiff "'tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" Adler v. The Fed. Republic of Nigeria, 219 F.3d 869, 877 (9th Cir. 2000), quoting Precision Instr. Mfg. Co. v. Automative Maint. Mach. Co., 324 U.S. 806, 814 (1945). The doctrine applies "'if the inequitable conduct occurred in a transaction directly related to the matter before the court and affects the equitable relationship between the litigants.'" Unilogic, Inc. v. Burroughs Corp., 10 Cal. App. 4th 612, 621 (1992), quoting Cal. Satellite Sys., Inc. v. Nichols, 170 Cal. App. 3d 56, 70 (1985). See also Kendall-Jackson, 76 Cal. App. 4th at 974 (1999) (holding that unclean hands conduct must "connect[] to the subject matter of the litigation" and "affect[] the equitable relations between the litigants").

It is well settled that "the application of the doctrine of unclean hands is primarily a question of fact." Insur. Co. of N. Am., 128 Cal. App. 3d at 306 (1982); Piscioneri, 95 Cal. App. 4th at 1053 (2002) (holding that unclean hands is "heavily fact dependent"); Kendall-Jackson, 76 Cal. App. 4th at 978 ("Whether the doctrine of unclean hands applies is a question of fact."). As such, application of the unclean hands defense is unfit for resolution on a motion to strike. See Sands, 902 F. Supp. at 1165 ("To strike an affirmative defense, the moving party must convince the court that there are no questions of fact …[.]").

It is not surprising, then, that Mattel has not cited a single case in which an unclean hands defense raised against a private plaintiff was stricken pursuant to

EXHIBIT **C**

PAGE **147**

1 motion. Indeed, the two cases cited by Mattel do not involve motions to strike at all.

2 See Kendall-Jackson, 76 Cal. App. 4th at 989 (reversing trial court's grant of

3 summary adjudication); Magnesystems, Inc. v. Nikken, Inc., 933 F. Supp. 944, 954

4 (C.D. Cal. 1996) (denying motion for leave to file amended answer).[2]

5     Here, the connection between MGA's unclean hands allegations and Mattel's

6 claims is plain on the face of the pleadings. What appears from the pleadings is a

7 tightly drawn battle over the creation of the BRATZ dolls by Mr. Bryant and MGA

8 and a more generalized but plainly interconnected battle between Mattel and Barbie,

9 on the one hand, and MGA and BRATZ on the other. In any event, the completion

10 of discovery is required to determine precisely how intertwined the parties'

11 respective conduct has been.

12     Given the fact-dependent inquiry that is required in resolving an unclean

13 hands defense, MGA is entitled to a full opportunity to develop the facts underlying

14 its defense. See Piscioneri, 95 Cal. App. 4th at 1049-50 (affirming trial court's

15 decision not to hear merits of unclean hands defense until after it had been "factually

16 developed"); Secs. & Exch. Comm'n v. McCaskey, 56 F. Supp. 2d 323, 326

17 (S.D.N.Y. 1999) ("[I]n evaluating such [motions to strike], the Court construes the

18 pleadings liberally to give the defendant full opportunity to support its claims at trial,

19 after full discovery has been made."). For this reason, Mattel's motion to strike

20 MGA's unclean hands defense should be denied.[3]

21 _____

22     [2] Successful motions to strike "unclean hands" defenses arise most often in the context of litigation involving governmental entities, where different standards apply.

23 See, e.g., Sands, 902 F. Supp. at 1166 (noting that some courts will not apply the unclean hands doctrine "against a governmental agency acting in the public interest"

24 while others require the government's conduct to be "so outrageous as to cause constitutional injury.")

25     [3] Given the advanced state of the case at which Mattel filed its motion to strike,

26 it will not come as a surprise to the Court to learn that much of the discovery necessary to support MGA's unclean hands allegations has in fact been taken.

27 Nevertheless, as made clear in Sands, "grounds for the motion must appear on the face of the pleading under attack or from matter which the court may judicially

28                                                                                   *(cont'd)*

EXHIBIT O
PAGE 148

1
2
### 2. The Pleadings Demonstrate Sufficient Connection Between Mattel's Misconduct And Its Counterclaims Against MGA.

3   If the Court is inclined to evaluate the connection between the parties' conduct
4   from the face of the pleadings, the pleadings plainly establish that MGA's unclean
5   hands allegations are sufficiently related to the matters raised by Mattel's claims to
6   support MGA's defense. To support an unclean hands defense, the asserted
7   misconduct need not "directly relate to the plaintiffs' causes of action," but only to
8   the "subject matter involved." Peregrine Funding, Inc. v. Sheppard Mullin Richter &
9   Hampton LLP, 133 Cal. App. 4th 658, 680-81 (2005) (citing Fibreboard Paper Prods.
10  Corp. v. E. Bay Union of Machinists, 227 Cal. App. 2d 675, 728 (1964).

11  Mattel does not dispute that unclean hands allegations only need to relate to
12  the subject matter of the asserted claims to be sufficient: "The doctrine of unclean
13  hands 'demands that a plaintiff act fairly *in the matter for which he seeks a remedy*.'"
14  (Mot. at 6, quoting Kendall-Jackson, 76 Cal. App. 4th at 978 (emphasis added by
15  Mattel).) Indeed, the court in Kendall-Jackson declined to apply a narrower standard
16  of relatedness when it reversed a grant of partial summary judgment for the plaintiff
17  on the defendant's unclean hands defense. 76 Cal. App. 4th at 989.

18  There, rival winery Gallo had sued Kendall-Jackson for malicious prosecution.
19  Id. at 975. Kendall-Jackson raised an unclean hands defense based on, *inter alia*,
20  Gallo's undue influence over retailer merchandising activity and other unfair
21  business practices. Id. Despite Gallo's urging to adopt a "narrow rule" in evaluating
22  the connection between the parties' respective allegations, the Court of Appeal held
23  that "<u>any</u> evidence of a plaintiff's unclean hands <u>in relation</u> to the transaction before
24  the court or which affects the equitable relations between the litigants in the matter

EXHIBIT ____ C____

PAGE ____ 149____

25
26  (cont'd from previous page)
    notice." Sands, 902 F. Supp. at 1165. Accordingly, the record supporting MGA's
27  unclean hands defenses has not and cannot be placed before the Court in the context
    of this motion.
28

1 before the court should be available to enable the court to effect a fair result in the
2 litigation." Id. at 985 (emphasis added). The liberal construction of the rule, viz,
3 "any evidence in relation to the transaction," owes to its purpose: namely, "to protect
4 the court from having its powers used to bring about an inequitable result in the
5 litigation before it." Id. Applying this broad rule, the court found that Gallo had
6 failed to "establish that its unclean hands conduct is not directly related to the
7 transaction concerning which the complaint is made or does not affect the equitable
8 relations between the parties as a matter of law." Id. at 988-89.

9        Here, the misconduct that supports MGA's unclean hands defense relates
10 directly to the subject matters of Mattel's counterclaims against MGA. Most
11 obviously, much of the parties' disputes relate to the same piece of intellectual
12 property – the BRATZ line of dolls. For example, Mattel asserts that MGA
13 "misrepresented BRATZ's sales, BRATZ's market share, BRATZ's position vis-a-vis
14 Mattel's BARBIE products, sales of Mattel's BARBIE products, and the market share
15 of Mattel's BARBIE products." (Mattel's 2d Am. Answer ¶ 81.) MGA counters in
16 its unclean hands defense that it is Mattel that is making false statements about its
17 Barbie products vis-a-vis MGA's BRATZ products. (MGA's Am. Answer at 20
18 (basing MGA's unclean hands defense on, inter alia, "Mattel's efforts to create
19 negative publicity or press about MGA [and] MGA products," "Mattel's efforts to
20 include negative references to MGA or BRATZ on Mattel's 'We Believe in Girls'
21 website," and "Mattel's falsely inflating its Barbie sales figures in an effort to
22 mislead the public and retailers").) Similarly, MGA alleges that its unclean hands
23 "affirmative defense is based, in part, on Mattel's efforts to undermine MGA's
24 business and to 'kill' BRATZ at any cost." (MGA's Am Answer at 20.)

25        The background to this dispute over BRATZ is allegations from both sides
26 that the other is engaging in a wide range of unlawful and unfair business practices.
27 For example, Mattel alleges that "[f]or years MGA Entertainment, Inc. has engaged
28

- 12 -

EXHIBIT 6
PAGE 156

1 | in a pattern of stealing and using Mattel, Inc.'s property and trade secrets." (Mattel's
2 | 2d Am Answer at 29.) MGA makes similar allegations. Indeed, each side accuses
3 | the other of remarkably similar misconduct, including interfering in dealings with
4 | customers, meddling in relations with employees and employment agreements,
5 | disparaging the others' products, stealing trade secrets, and falsely inflating
6 | performance figures. (Compare MGA's AM. Answer at 21 (charging Mattel with
7 | interfering in MGA's dealings with retailers, fueling negative press about MGA, and
8 | falsely inflating sales figures to mislead customers) with (Mattel's 2d Am. Answer ¶¶
9 | 78-81) (alleging that MGA interfered in dealings with Mattel's customers, created
10 | false impressions of Mattel in the media, and issued press releases that inflated MGA
11 | sales, market share and position vis-à-vis Mattel).)

12 |      Mattel attempts to distance MGA's allegations from Mattel's counterclaims by
13 | analogizing this case to the circumstances in Magnesystems. But Magnesystems is
14 | inapposite. In that case, the district court denied the defendant's motion for leave to
15 | file an amended answer to the plaintiff's patent infringement complaint in order to
16 | add an unclean hands defense based on the plaintiff's own infringement of two of the
17 | defendant's patents. 933 F. Supp. at 953. Because the unclean hands defense had
18 | nothing to do with the patent-in-suit, the court found that the defense was not related
19 | to the matters at issue in the case. Id. In contrast, MGA's unclean hands relates
20 | specifically to the various matters raised in Mattel's counterclaims (e.g., the
21 | enforceability of Mattel's purported rights to BRATZ, representations to retailers,
22 | customers and others regarding Mattel's Barbie products vis-a-vis MGA's BRATZ
23 | products, and the rights and obligations of Mattel's former employees).

24 |      The relationship between Mattel's misconduct and the matters raised in its
25 | counterclaims is an issue of fact unfit for resolution at the pleading stage.
26 | Nonetheless, even a cursory examination of the pleadings shows a sufficient
27 | connection between the two to survive a motion to strike. This is especially true
28 |

EXHIBIT __O__
PAGE __151__

MGA PARTIES' OPP'N TO MATTEL'S MOT. TO STRIKE AFFIRMATIVE DEFENSES

1  when the pleadings are viewed in the requisite "light most favorable" to MGA. See
2  Alco Pac., 217 F. Supp. 2d at 1033.

3  ### 3.   Mattel Mischaracterizes Judge Infante's Orders.

4
5      Mattel claims that the discovery master, Judge Infante, determined that MGA's
6  "unclean hands" allegations "have nothing to do with Mattel's counterclaims." (Mot.
7  at 8.) This argument is false. As Mattel knows, the two discovery rulings it cites
8  were issued well before Mattel asserted its counterclaims.[4] Moreover, as this Court
9  observed, Mattel's later-filed counterclaims broadened the scope of the litigation,
10  "add[ing] five more defendants, and nine new legal claims, alleging a wide range of
11  commercial disputes between the rival doll makers that spans three countries." (Jan.
12  11, 2007 Order at 4.) By contrast, Judge Infante considered the relevance of certain
13  discovery to MGA's complaint alone. (See Proctor Exs. 15 & 16 (Judge Infante's
14  4/19/07 and 5/22/07 discovery orders).) Judge Infante did not consider Mattel's
15  wide-ranging counterclaims or MGA's affirmative defenses because neither existed
16  at the time.
17      Judge Infante has never ruled on the issue before this Court: namely, whether
18  the inequitable conduct alleged by MGA in its answer sufficiently relates to the

19      ---

[4] Discovery in this case has resulted in a variety of discovery disputes,
20  including two disputes relevant here. First, on March 30, 2007, Mattel moved for a
   protective order to limit discovery related to a particular line of products, called
21  "Polly Pocket." (See Proctor Ex. 15 (Order Granting in Part and Den. in Part
   Mattel's Mot. for Protective Order Regarding "Polly Pocket" Docs., Apr. 19, 2007, at
22  1).) On April 19, 2007, Judge Infante granted the motion in part, finding that certain
   document requests were not relevant to MGA's complaint. (Id. at 5-7.) Second, on
23  April 13, 2007, MGA moved to compel production of certain documents pertaining
   to MGA's Lanham Act and unfair competition claims. (Proctor Ex. 16 (Order
24  Granting in Part and Den. in Part MGA's Mot. to Compel Docs. Responsive to First
   Set of Reqs. for Prod. of Docs. Dated Nov. 22, 2006, May 22, 2007, at 1).) On May
25  22, 2007, Judge Infante granted the motion in part, compelling Mattel to produce
   documents related to "Mattel's communications with any buyers, merchandisers,
26  general merchandisers or retailers about MGA providing below-market pricing or
   discontinuing a product line." (Id. at 16.) Significantly, Judge Infante issued the
27  above orders before Mattel asserted its counterclaims, and before MGA pleaded its
   affirmative defenses.

28
EXHIBIT ___C___
PAGE ___151___

1  subject matter of Mattel's counterclaims.  Because Judge Infante's rulings do not bear

2  on the sufficiency of MGA's defenses, they are irrelevant to the present motion.

### 4.    The Balance of Mattel's Legal Arguments Should Be Rejected.

5    Finally, Mattel throws up a "virtual grab bag" of legal arguments in the hope

6  that one will stick to the wall and result in a premature dismissal of MGA's defenses.

7  As shown below, each of these arguments should be rejected.

8    First, contrary to Mattel's assertion (Mot. at 10-11), Mattel's inequitable

9  conduct need not be actionable to support an unclean hands defense.  See Kendall-

10  Jackson, 76 Cal. App. 4th at 978 ("[T]he misconduct need not be a crime or an

11  actionable tort.  Any conduct that violates conscience, or good faith, or other

12  equitable standards of conduct is sufficient cause to invoke the [unclean hands]

13  doctrine.") (citing DeRosa v. Transamerica Title Ins. Co., 213 Cal. App. 3d 1390,

14  1395-1396 (Cal. 1989); cf. Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,

15  324 U.S. 806, 815, 65 S. Ct. 993,997-98 (1945) ("[O]ne's misconduct need not

16  necessarily have been of such a nature as to be punishable as a crime or as to justify

17  legal proceedings of any character.  Any willful act concerning the cause of action

18  which rightfully can be said to transgress equitable standards of conduct is sufficient

19  cause for the invocation of the maxim[.]"); See also 30 California Jurisprudence 3d

20  Equity § 27 (2007) ("A plaintiff's improper conduct need not be of a criminal

21  character, or even of a nature sufficient to constitute the basis of a cause of action

22  against him.")  Indeed, "as the very foundation of an equity forum is good

23  conscience, any really unconscientious conduct connected with the controversy to

24  which he is a party is sufficient justification for the court to close its doors to him."

25  De Garmo v. Goldman, 19 Cal. 2d 755, 765 (1942).  Thus, whether certain of

26  Mattel's misconduct constitutes an actionable tort is irrelevant for purposes of

27  evaluating the sufficiency of MGA's "unclean hands" defense.

28

1    Second, Mattel's arguments regarding purportedly "protected" conduct require

2    resolution of mixed questions of law and fact. As such, the questions are improperly

3    resolved at this stage. See Sands, 902 F. Supp. at 1165; Alco Pac., Inc., 217 F. Supp.

4    at 1032 (citing Sands); Medicor, 2001 WL 765628 at *1 ("A motion to strike will not

5    be granted if the insufficiency of the defense is not clearly apparent, or if it raises

6    factual issues that should be determined by a hearing on the merits."). For example,

7    Mattel suggests that its disparaging remarks were true and therefore protected by the

8    First Amendment. (Mot. at 10-11.) But the factual accuracy of Mattel's statements

9    has been and continues to be disputed by the parties. ((See, e.g., MGA Compl. ¶ 79)

10   (alleging knowingly false statements made by Mattel concerning MGA's business).)

11        Likewise, Mattel's argument (Mot. at 11-12) that the California litigation

12   privilege shields its alleged misconduct requires resolution of factual issues. Indeed,

13   Mattel here rehashes an old argument, already rejected by the Court, that the

14   litigation privilege immunizes its questionable tactics as a matter of law. (Order and

15   Op. Granting in Part and Den. in Part Def.'s Mot. to Dismiss and Strike Portions of

16   the Compl., Aug. 26, 2005, at 23.)  In ruling on Mattel's earlier motion to strike, the

17   Court held that "neither the litigation privilege nor the Noerr-Pennington doctrine

18   provide a basis for striking" allegations of "bad-faith conduct" because whether

19   Mattel acted in good faith is a factual question. ((Id. at 23-24) (citing Fuhrman v.

20   Cal. Satellite Sys., 179 Cal. App. 3d 408, 420-21 (1986).)  The same reasoning

21   applies with equal force here:  whether Mattel's litigation "assistance" to MGA's

22   adversaries was undertaken in good faith is a factual question and therefore

23   inappropriate for resolution on a motion to strike. [5]

24

EXHIBIT __D__

PAGE __54__

25        [5] Moreover, state litigation privileges cannot immunize violations of federal

26   law, such as those MGA has alleged against Mattel. See Martinez v. California, 444
     U.S. 277, 284, 100 S. Ct. 553 (1980) ("It is clear that the California immunity statute

27   does not control this claim even though the federal cause of action is being asserted
     in the state courts."); see also, Kimes v. Stone, 84 F.3d 1121, 1127 (9th Cir. 1996)

28                                                                          (cont'd)

1   Third, Mattel's claim that certain of MGA's unclean hands allegations should

2   be stricken because it involves misconduct toward nonparties mischaracterizes both

3   MGA's allegations and the law. (See Mot. at 12-13.) As MGA has alleged, Mattel's

4   conduct involved third parties but was aimed at undermining Mattel's business.

5   ((See, e.g., MGA Compl. ¶ 9) (alleging that "Mattel has intimidated, coerced and

6   threatened retailers, licensees, suppliers and others in the industry … in order to

7   inhibit and stifle MGA's ability to compete with Mattel and to prevent MGA from

8   obtaining licensees, contracts and supplies for its products").) [6] Unlike this case, the

9   case cited by Mattel involved an unclean hands allegation that had nothing to do with

10   the adverse party. In Mesnick v. Caton, the plaintiff landowner sued his neighbor for

11   trespass after the neighbor installed a fence that extended onto the plaintiff's property.

12   183 Cal. App. 3d 1248, 1253 (1986). The defendant then attempted to raise an

13   "unclean hands" defense based on the plaintiff's encroachment upon another

14   neighbor's property, which had no connection to the defendant's land. Id. at 1262.

15   Fourth, Mattel's argument that its misconduct cannot, as a matter of law, bar

16   recovery on its RICO or copyright claims rests on similarly shaky legal ground. (See

17   Mot. at 13-15.) As an initial matter, MGA's "unclean hands" defense cannot be

18   stricken simply because it may not constitute a complete defense to all of MGA's

19   claims. See 5 Wright & Miller, supra §1273, at 614-15 (2004) ("the obligation to

20   plead affirmative defenses is not limited to complete defenses" and "partial defenses

21   should be pleaded affirmatively") (citing Fed. R. Civ. Proc. 8(c)).

22   Moreover, contrary to Mattel's suggestion (Mot. at 14), "unclean hands"

23   constitutes a viable defense against copyright claims. See McCormick v. Cohn,

24   (cont'd from previous page)

25   (holding that the California litigation privilege did not bar plaintiff's federal claim, due to Supremacy Clause).

26   [6] Mattel accused MGA of remarkably similar conduct involving third parties,

27   but affecting Mattel's operations. (Compare MGA Compl. ¶ 9 with Mattel 2d Am. Answer at ¶¶ 78-81, 163-66.)

EXHIBIT   **6**

PAGE   **155**

1  No. CV 90-0323H 1992 WL 687291, at *3 (S.D. Cal. July 31, 1992), aff'd, 17 F.3d
2  395 (9th Cir. 1994) ("The equitable defense of unclean hands applies in copyright
3  cases to prevent a plaintiff from gaining equitable relief, such as a permanent
4  injunction … [and] from recovering the legal remedy of damages for a copyright
5  claim…"); Contest Ass'n, Inc. v. Staley, 434 F. Supp. 2d 650, 666 (N.D. Iowa 2006)
6  (concluding that "'unclean hands' is also a viable defense to a copyright infringement
7  action…[.]"). The defense also is not limited to the "rare" situations identified by
8  Mattel, but applies whenever "the plaintiff's wrongful acts directly relate to the
9  merits of the controversy." McCormick, 1992 WL 687291 at *4 (finding that
10  unclean hands defense barred recovery on copyright claims because plaintiffs had
11  misstated their ownership of the copyright and had violated a court order requiring
12  the production of documents which would have had an impact on the defense of the
13  copyright claims). Here, MGA's unclean hands defense includes allegations that
14  directly relate to the merits of Mattel's copyright infringement claim. (MGA's Am.
15  Answer at 21 (alleging that Mattel engaged in "the willful non-retention and
16  destruction of documents" and "waited years to bring suit").)

17      With respect to its civil RICO claims, Mattel has not cited a single case
18  holding that "[u]nclean hands is not a recognized defense to a RICO claim." (Mot.
19  at 13.) Although Mattel suggests that there is authority to support its argument, the
20  two cases offered by Mattel are plainly inapposite. In National Mortgage Equity, the
21  district court did not consider a motion to strike an "unclean hands" defense but
22  rather whether a plaintiff could assign RICO claims against a fellow wrongdoer
23  under the in pari delicto doctrine. In re Nat'l Mortgage Equity Corp. Mortgage Pool
24  Certificates, Sec. Litig. 636 F. Supp 1138, 1156 (C.D. Cal. 1986). Similarly, in
25  Bieter Company, a Minnesota federal court addressed the defendant's in pari delicto
26  defense on plaintiff's motion for summary judgment. Only after evaluating the
27  factual record did the Court conclude that the plaintiff was not "at least substantially
28

EXHIBIT O
PAGE 156

1  equal[ly] respons[ible] for the violations it [sought] to redress." Bieter Co. v.

2  Blomquist, 848 F. Supp. 1446, 1449-50 (D. Minn. 1994). Contrary to Mattel's

3  contention, the court declined to endorse the far broader proposition that unclean

4  hands cannot bar RICO claims as a matter of law.

## II.   MGA HAS PROVIDED FAIR NOTICE OF ALL AFFIRMATIVE DEFENSES CONSISTENT WITH THE FEDERAL RULES.

7       Mattel contends that certain of MGA's defenses do not provide fair notice

8  either because they fail to include facts supporting all elements of the defense (Mot.

9  at 16, 19) or because the defenses are "conclusory" (Mot. at 19-22). Both arguments

10  are incorrect as a matter of law, and the latter argument is disingenuous.

11       The Federal Rules require only that a party "state in short and plain terms the

12  party's defenses to each claim asserted." Fed. R. Civ. Proc. 8(b). See also 5 Wright

13  & Miller, supra § 1274, at 616-17 (2004) ("As numerous federal courts have held, an

14  affirmative defense may be pleaded in general terms and will be held to be sufficient,

15  and therefore invulnerable to a motion to strike, as long as it gives plaintiff fair

16  notice of the nature of the defense.") (emphasis added).

17       The Ninth Circuit has made clear that "[t]he key to determining the sufficiency

18  of pleading an affirmative defense is whether it gives plaintiff fair notice of the

19  defense." Wyshak v. City Nat'l. Bank, 607 F.2d 824, 827 (9th Cir. 1979) (holding

20  that plaintiff had fair notice of defendant's statute of limitations defense because

21  defendant's answer pleaded the name of the defense and defendant's motion for leave

22  identified the specific statute on which defendant was relying) (emphasis added).

23  The Ninth Circuit has further held that "fair notice" does not require that a party

24  "plead all the elements of a prima facie case." Wong v. United States, 373 F.3d 952,

25  969 (9th Cir. 2004). Rather, the plaintiff need only have "'fair warning that a

26  particular line of defense will be pursued.'" Bd. of Trs. of the San Diego Elec.

27  Pension Trust v. Bigley Elec., Inc., No. 07-CV-634-IEG (LSP), 2007 WL 2070355,

28

EXHIBIT 6

PAGE 157

1 | at *2 (S.D. Cal. July 12, 2007), quoting <u>Williams v. Ashland Eng. Co., Inc.</u>, 45 F.3d
2 | 588, 593 (1st Cir. 1995).

3 |     In <u>SecuriMetrics, Inc. v. Hartford Cas. Ins. Co.</u>, No. C05-00917 CW, 2005
4 | WL 2463749 (N.D. Cal. Oct. 4, 2005), the district court specifically rejected the
5 | argument that "an affirmative defense must plead allegations supporting all material
6 | elements of the asserted defense." <u>Id.</u> at *5. As the court recognized, "that is <u>not</u> the
7 | standard that this Court must follow." <u>Id.</u> (emphasis added). Applying the "fair
8 | notice" standard, the court therefore rejected plaintiff's argument that it should strike
9 | certain defenses that failed to plead all elements constituting the defense. <u>Id.</u>

10 |     Indeed, in some instances, courts have found that merely pleading *the name of*
11 | *the defense* affords sufficient fair notice. <u>See</u> <u>Woodfield v. Bowman</u>, 193 F.3d 354,
12 | 362 (5th Cir. 1999) ("We acknowledge that in some cases, merely pleading the name
13 | of the affirmative defense … may be sufficient."); see also <u>Geraghty and Miller, Inc.</u>
14 | <u>v. Conoco, Inc.</u>, 234 F.3d 917, 925 (5th Cir. 2000) ("a mere assertion of the defense
15 | satisfies the pleading requirements of Rule 8 of the Federal Rules of Civil
16 | Procedure"); <u>Dangerfield Island Protective Soc'y v. Babbitt</u>, 40 F.3d 442, 444-45
17 | (D.C. Cir. 1994) (same); <u>SecuriMetrics</u>, 2005 WL 2463749, at *6 (declining to
18 | strike "boilerplate" contributory negligence and intervening causes defenses because
19 | plaintiff did not establish that a third party's acts or omissions "could not possibly
20 | have contributed" to plaintiff's losses); <u>cf.</u> <u>Sagana v. Tenorio</u>, 384 F.3d 731, 737 (9th
21 | Cir. 2004) ("A party need not plead specific legal theories in the complaint, so long
22 | as the other side receives notice as to what is at issue in the case.").

23 |     Here, MGA has pleaded sufficient information to give Mattel fair notice as to
24 | the defenses it intends to pursue, and in some instances has provided multiple pages
25 | of factual detail. (<u>See</u>, <u>e.g.</u>, MGA's Am. Answer at 20-21.) [7] Indeed, Mattel's

26 | ————————————

27 |     [7] MGA believes it has provided Mattel with fair notice of its affirmative
defenses. If the Court nonetheless concludes that MGA did not afford Mattel with
28 | *(cont'd)*

EXHIBIT O
PAGE 158

1  complaints about MGA's affirmative defenses are not directed at any purported

2  failure to notify Mattel of the defenses, but are focused on Mattel's desire to obtain

3  information about the facts underlying those defenses. For example, Mattel argues

4  that MGA's Eleventh Affirmative Defense of "failure to mitigate" is inadequate

5  because it does not identify the mitigating measures that Mattel failed to take. (Mot.

6  at 21.) Courts, however, have held that such factual details are not required to

7  adequately plead a "failure to mitigate" defense. See Bigley, 2007 WL 2070355 at

8  *3 ("A handful of courts have been confronted with the issue of whether a

9  defendant's mere allegation that 'plaintiff failed to mitigate damages' is sufficient

10  under the pleading requirements of Rule 8. These courts have typically held that a

11  generalized statement ... meets defendant's pleading burden with respect to the

12  affirmative defense of damage mitigation.") (citing cases).

13        Mattel's argument that MGA's affirmative defenses are conclusory and

14  therefore deprive Mattel of fair notice is also disingenuous: MGA's affirmative

15  defenses often employed precisely the same language that Mattel used in its own

16  answer, and, in other instances, far exceeded the level of detail Mattel offered MGA

17  on the very same defenses. As the chart below shows, there are striking similarities

18  between the parties' respective allegations of the same affirmative defenses:

19

20

21

22

23  (cont'd from previous page)

24  fair notice, MGA respectfully requests leave to amend its answer. Such requests are freely granted. See Fed. R. Civ. Proc. 15(a) ("[L]eave shall be freely given when

25  justice so requires."); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (the policy of favoring amendments to pleadings is to be

26  "applied with extreme liberality"); Wyshak v. City National Bank, 607 F.2d 824, 826-27 (1979).(" In the absence of prejudice to the opposing party, leave to amend

27  should be freely given."); Fed. Civ. Proc. Before Trial, supra, at ¶ 9:412 ("Leave to amend is [freely] granted" if a portion of an affirmative defense is stricken.)

28

| Defense | MGA's Am. Answer | Mattel's 2d Am. Answer |
|---|---|---|
| Acts or Omissions of Others | "Mattel's damages, if any, were not caused by the MGA Defendants and are not attributable to any acts of omissions of MGA Defendants." (At 23.) | "Plaintiff's damages, if any, were not caused by Mattel and are not attributable to the acts or omissions of Mattel." (At 28.) |
| Failure to Mitigate | "MGA Defendants deny that Mattel suffered any damages, but even if it did, Mattel failed to take reasonable steps to mitigate those purported damages." (At 24.) | "Plaintiff failed to mitigate its damages, if any." (At. 28.) |
| Good Faith | "Mattel's counterclaims are barred in whole or in part because the MGA Defendants acted in good faith." (At. 25.) | "Plaintiff's requested relief, including plaintiff's requests for punitive and/or enhanced damages, are barred in whole or in part because all of Mattel's actions were in good faith." (At. 28.) |
| Lack of Standing | "Mattel's counterclaims are barred in whole or in part by its lack of standing." (At 25.) | "Plaintiff's claims are barred in whole or in part by its lack of standing." (At. 27.) |

Having employed nearly identical language in pleading the same affirmative defenses that are the subject of its motion to strike, Mattel cannot credibly argue that MGA failed to provide fair notice of its defenses.

## III. MATTEL'S ATTACK ON MGA'S WAIVER, ESTOPPEL AND ACQUIESCENCE DEFENSES REQUIRE THE COURT TO RESOLVE FACTUAL DISPUTES BASED ON AN UNDEVELOPED RECORD.

Mattel argues that MGA "cannot show" certain elements constituting waiver, estoppel and acquiescence, and advances arguments regarding the probative value of disputed facts. (Mot. at 15-19.) As an initial matter, when MGA intervened in this action, MGA asserted these same defenses in its Answer in Intervention. (See MGA's Answer in Intervention to Pl.'s Unverified Compl. at 8.) Although MGA included no specific factual allegations in pleading these defenses in its Answer in

EXHIBIT
PAGE 160

1 | Intervention, Mattel did not file any motion to strike or otherwise complain that
2 | MGA had deprived Mattel of fair notice. It is unclear how Mattel now has suddenly
3 | become unable to discern the same defenses in MGA's answer to Mattel's
4 | counterclaim, particularly since MGA's answer to Mattel's counterclaim includes
5 | specific allegations to support its waiver, estoppel and acquiescence defenses.

6 | MGA has properly pleaded these defenses because, as discussed above, MGA
7 | need only provide Mattel fair notice of its defenses, not plead allegations supporting
8 | every element of its affirmative defenses. See SecuriMetrics, Inc. v. Hartford Cas.
9 | Ins. Co., No. C 05-00917 CW, 2005 WL 2463749, at *4 (N.D. Cal. Oct. 4, 2005)
10 | MGA has complied with its obligations by not only identifying the defenses by name,
11 | but also detailing some of the factual averments supporting them. (MGA's Am.
12 | Answer at 23-24.) Notably, although Mattel also asserted the same three defenses in
13 | its answer to MGA's claims, Mattel simply identified the defenses by name without
14 | providing a single factual allegation to support them. (Mattel's 2d Am. Answer at 27,
15 | Eighth Affirmative Defense ("Plaintiff's claims are barred in whole or in part by the
16 | doctrines of waiver, estoppel and acquiescence").)

17 | IV. **MATTEL'S ALTERATIVE MOTION FOR PARTIAL SUMMARY**
18 | **JUDGMENT IS PREMATURE AND FAILS TO DEMONSTRATE AN**
19 | **ABSENCE OF TRIABLE ISSUES OF FACT.**

20 | Desperate to avoid litigating the merits of MGA's affirmative defenses, Mattel
21 | alternatively moves for partial summary judgment on MGA's defenses solely on the
22 | ground that MGA's Rule 26(a)(1) disclosures do not specifically identify a witness or
23 | document for every particular allegation set forth in MGA's answer. Given the many
24 | important issues that must be addressed by the parties and the Court in the coming
25 | months, litigating such a clearly unfounded and ill-conceived motion is truly a waste
26 | of the parties' and the Court's valuable time and resources.

27 |
28 |

1    First, contrary to Mattel's assertion, MGA's Rule 26(a)(1) disclosures do, in
2  fact, identify many witnesses and documents that support its affirmative defenses,
3  including its unclean hands defense. (MGA's Supp. Discls. at 1-19.) MGA's
4  disclosures identify numerous persons who may know of facts "in support of MGA's
5  defenses to Mattel's counterclaims" including Mattel's RICO and trade secret
6  counterclaims. (Id. at 1-16.) MGA's disclosures also list persons who "may possess
7  information relevant to Mattel's unfair competition and unclean hands." (See, e.g., Id.
8  at 2, 4 & 13 (emphasis added).) In addition, MGA's disclosures identify persons
9  with knowledge about many of the specific allegations set forth in MGA's answer.
10  MGA's disclosures also identify documents relevant to its affirmative defenses,
11  including "[d]ocuments showing the hiring and employment practices and policies of
12  Mattel, including but not limited to contracts employees are asked to sign," and
13  "[d]ocuments reflecting or evidencing Mattel's interference with MGA's advertising
14  efforts; Mattel's threats to and intimidation of retailers, suppliers, licensees,
15  distributors, manufacturers, and former employees and freelancers; [and] Mattel's
16  improper influence of standard-setting and industry organization…" (Id. at 18.)
17    That Mattel may desire greater specificity in MGA's Rule 26 disclosures is
18  neither required by the Federal Rules nor a sufficient basis for partial summary
19  judgment. Under Rule 26, a party's initial disclosure obligations are limited to
20  information "reasonably available to it at the time of disclosure." Fed. R. Civ. Proc.
21  26(a)(1), last sent. The rule does not demand an overly exhaustive investigation, but
22  one that is reasonable under the circumstances. Id., 1993 Adv. Comm. Notes.
23  Further, contrary to Mattel's contention, MGA need only identify the "subject
24  matter" of the information known by particular witnesses, not each affirmative
25  defense or each specific allegation to which the subject matter may pertain. Fed. R.
26  Civ. Proc. 26(a)(1)(A). Thus, any inference regarding extant evidence based on
27
28

EXHIBIT ____O____
PAGE ____162____

-24-

1 MGA's disclosures is improper in view of both what Rule 26 requires be disclosed

2 and the substantial disclosures that MGA has actually made in this case.[8]

3     Mattel's argument that MGA lacks sufficient evidence to support its defenses

4 is further inapt given the stage of discovery in this case. (Mot. at 25.) As the Ninth

5 Circuit made clear in Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099,

6 1102 (9th Cir. 2000), motions grounded on the theory of "insufficient" evidence

7 should be denied when brought before discovery has concluded. Indeed, "before a

8 moving party will be permitted to carry its initial burden of production, the

9 nonmoving party must first be given sufficient opportunity for discovery." Id. at

10 1105-06 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986)) (emphasis

11 added). Given that discovery is still months from closing and MGA has not yet

12 concluded discovery regarding its recently-filed affirmative defenses, there is simply

13 no reason for the Court to take up this issue now.

14 ## CONCLUSION

15     For the foregoing reasons, Mattel's Motion to Strike Affirmative Defenses or,

16 in the alternative, For Partial Summary Judgment, should be DENIED.

17

18 DATED: November 5, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

19

20 By: _Thomas J. Nolan/RHW_

21 Thomas J. Nolan

---

22     [8] Mattel's purported "Statement of Uncontroverted Facts" identifies

23 approximately 30 allegations from MGA's Answer and asserts with respect to each that MGA has failed to identify witnesses or documents. First, as shown above,

24 Mattel's assertion that MGA failed to identify witnesses or documents to support its allegations is false. To that extent, each of MGA's purported "uncontroverted facts"

25 is controverted. Second, Mattel's "uncontroverted facts" are not statements of fact at all, but rather improper arguments in which Mattel seeks to inaccurately characterize

26 MGA's initial disclosures. Third, Mattel's entire presentation of "uncontroverted facts" is premised upon the ungrounded assertion that a "insufficiency of evidence"

27 argument can be based upon a party's Rule 26 disclosures. See Nissan Fire, 210 F.3d at 1102.

28

EXHIBIT __O__

PAGE __169__

MGA PARTIES' OPP'N TO MATTEL'S MOT. TO STRIKE AFFIRMATIVE DEFENSES

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

On **November 5, 2007**, I served the foregoing documents described as:

### MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT (HK) LIMITED AND MGAE DE MEXICO S.R.L. DE C.V.'S OPPOSITION TO MATTEL'S MOTION TO STRIKE AFFIRMATIVE DEFENSES

on the interested parties in this action addressed as follows:

### SEE ATTACHED SERVICE LIST

☒     **(BY MAIL)** I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service and the fact that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices.

☒     **(VIA FACSIMILE)** By transmitting the document listed above to the fax numbers on the attached service list.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on November 5, 2007 at Los Angeles, California.

Becky Isomoto
PRINT NAME                              SIGNATURE

EXHIBIT O
PAGE 164

*Carter Bryant vs. Mattel, Inc.*
CV 04-9049 SGL (RNBx)
Consolidated with CV 04-09059 and CV 05-02727

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000
(213) 443-3100 (Fax)

*Attorneys for Mattel, Inc.*

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415)391-5400
(415) 397-7188 (Fax)

*Attorneys for Carter Bryant*

2

EXHIBIT ___O___
PAGE ___165___

# EXHIBIT P

CONFORMED COPY

FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111
415-774-2611
415-982-5287 (fax)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | |

## I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT __P__
PAGE __144__

1-26

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel Production of Documents is GRANTED.

## II. BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of Bratz dolls now rival Mattel's Barbie doll.

### A. Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed suit against its former employee Bryant in state court asserting claims for breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel employed Bryant as a product designer from September 1995 through April 1998, and from January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee Confidential Information and Inventions Agreement which required him not to engage in any employment or business other than for Mattel, or invest or assist in any manner any business competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that he had not worked for any of Mattel's competitors in the prior twelve months and had not engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2



EXHIBIT P
PAGE 167

provide product design services on a "top priority" basis.[2]  The agreement further provided that

Bryant would receive royalties and other consideration for sales of products on which he provided

aid or assistance; that all work and services furnished by Bryant to MGA under the agreement

would be considered "works for hire"; and that all intellectual property rights to preexisting work

by Bryant purportedly would be assigned to MGA.  Mattel further alleges that Bryant converted,

misappropriated and misused Mattel property and resources while he was employed at Mattel.  In

the complaint, Mattel claims ownership of all inventions and works created by Bryant during his

Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of

duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting

subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28

U.S.C. §1332 (diversity jurisdiction).  Mattel filed a motion to remand and submitted a copy of

Bryant's agreement with Mattel's competitor, namely MGA.  The agreement was dated

September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to

provide MGA with design services for the Bratz dolls.  In return, MGA agreed to compensate

Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz

dolls.  In August of 2004, the district court remanded the action.

B. Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-

complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information

and Inventions Agreement.  Bryant's cross-complaint included claims for unfair competition,

rescission, declaratory relief, and fraud.

//

---

[2]  Bryant has already produced his agreement with MGA.  Therefore, the existence of the agreement does not appear
to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3


EXHIBIT 1
PAGE 168

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT P
PAGE 169

G.  Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted.  The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H.  Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes.  For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA.  Mattel also sought leave to add a copyright infringement claim.  Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727.  The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I.  Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004.  Bryant served objections and responses on July 16, 2004.  The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005.  That motion, however,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5


EXHIBIT _P_
PAGE ___170___

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. See Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately



1,600 pages of documents to date. Mattel contends, however, that the production is inadequate

and consistent with a pattern of stonewalling.[3] Accordingly, Mattel filed the instant motion to

compel responsive documents, which includes a request for sanctions in the amount of $7,805.

J.  Mattel's Motion to Compel Production of Documents

Mattel's motion has three parts. First, Mattel seeks an order compelling Bryant to produce

the following categories of requested documents: (a) documents relating to Bratz designs created

by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for

Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-

related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA

that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was

exposed to while working at Mattel. Mattel's Motion at 6. Mattel asserts that these categories of

documents are relevant to establish Bryant's liability and would reveal works rightfully owned by

Mattel.

Second, as to other categories of documents which Bryant has agreed to produce, Mattel

contends that Bryant has imposed unjustified limitations. According to Mattel, Bryant will not

produce any responsive documents that were created after the suit was filed; Bryant will not

produce any communications with MGA "created" after the end of his Mattel employment;

Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view,

"resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known

contracts between him and MGA and refuses to produce non-privileged communications relating

to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]  According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear. Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed. Mattel again obtained a court order compelling the deposition and sanctions. To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7



EXHIBIT P
PAGE 172

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

### K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents: documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4]  There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8



EXHIBIT P

PAGE 173

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery



EXHIBIT __P__
PAGE __174__

requests and that the stipulation controlled to the extent they were inconsistent. Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights. Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

### III. DISCUSSION

A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion. The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute. Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant. It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions. Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT P
PAGE 175

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related


EXHIBIT P
PAGE 126

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

EXHIBIT __P__
PAGE ___137___

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

> Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46:  Documents Relating to Bryant's
> Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of



EXHIBIT _P_
PAGE _13 8_

when the payments were actually made.  Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement.  Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works.  Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages.  17 U.S.C. §504(b).  The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market.  For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation.  Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel.  Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant.  Among other things, the protective order provides protection for confidential trade secret information.  It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only."  The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.  Bryant,



EXHIBIT P
PAGE 199