Exhibit A

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 90378)
     (johnquinn@quinnemanuel.com)
3    Michael T. Zeller (Bar No. 196417)
     (michaelzeller@quinnemanuel.com)
4    Jon D. Corey (Bar No. 185066)
     (joncorey@quinnemanuel.com)
5  865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
6  Telephone: (213) 443-3000
   Facsimile: (213) 443-3100

**RECEIVED**

FEB 12 2009

**BINGHAM**
ORANGE COUNTY

7  Attorneys for Mattel, Inc.

8
9                   UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

12  CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)

13              Plaintiff,                 Consolidated with Case Nos. CV 04-
                                           9059 and CV 05-2727
14        v.
                                           NOTICE OF SUBPOENA ISSUED TO
15  MATTEL, INC., a Delaware               BINGHAM MCCUTCHEN LLP
    Corporation,
16
                Defendant,
17

18  AND CONSOLIDATED CASES

19
20
21
22
23
24
25
26
27
28

EXHIBIT _A_
PAGE _3_

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that, pursuant to Rule 45 of the <u>Federal Rules of</u>

3   <u>Civil Procedure</u>, Mattel, Inc., has issued a subpoena attached as Exhibit 1 requesting

4   the production of specified documents to the following witness:

5    Bingham McCutchen LLP, 355 South Grand Avenue, Suite 4400, Los

6   Angeles, CA 90071-3106.

7

8   DATED: February 12, 2009          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
9

10

11                                     By /s/ Michael T. Zeller
                                          Michael T. Zeller
12                                        Attorneys for Mattel, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/2794934.1

EXHIBIT _A_
PAGE _4_

NOTICE OF SUBPOENA

# EXHIBIT 1

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

CENTRAL       CALIFORNIA

CARTER BRYANT, an individual,

               V.

**SUBPOENA IN A CIVIL CASE**

MATTEL, INC., a Delaware corporation,

Case Number: [1] CV 04-9049 SGL (RNBx)
Consolidated with cases 04-9059 and 05-2727

TO: Bingham McCutchen, LLP
    355 South Grand Avenue, Suite 4400
    Los Angeles, CA 90071-3106

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017 | February 26, 2009<br>9:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Michael T. Zeller /SW*<br>Attorney for Plaintiff, Mattel, Inc. | February 12, 2009 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Michael T. Zeller, QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017  (213) 443-3000

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] f action is pending in district other than district of issuance, state district under case number.

AO-88

EXHIBIT _A_
PAGE _6_

AO88  (Rev.  12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | | PLACE | |
|---|---|---|---|---|
| SERVED | | | | |

| SERVED ON (PRINT NAME) | | MANNER OF SERVICE | |
|---|---|---|---|

| SERVED BY (PRINT NAME) | | TITLE | |
|---|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                         DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

## Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

EXHIBIT _A_

PAGE _7_

# ATTACHMENT A

1.     All documents referring or relating to any fee agreement or fee arrangement referring or relating to Bingham McCutchen LLP's ("Bingham") representation of Vision Capital, LLC ("Vision Capital") and/or Omni 808 Investors, LLC ("Omni 808"), and any amendments or modifications thereto, and any communications referring or relating to any such agreements or arrangements.

2.     Documents sufficient to identify each and every person or entity billed for, liable to pay, responsible for payment of, or who has paid or promised to pay, whether directly or indirectly, Bingham's fees in connection with Bingham's representation of Omni 808 or Vision Capital.

3.     All documents referring or relating to the formation, governance, ownership, capitalization and/or funding of, or credit for, Omni 808, Vision Capital and/or Lexington Financial Limited ("Lexington"), including the source(s) and terms of such capitalization, funding and/or credit.

4.     All documents identifying any member, managing member, shareholder, holder of any ownership interest in, officer, director, employee and/or agent of, or investor in, Omni 808, Vision Capital and/or Lexington.

5.     All contracts and agreements, and proposed or offered contracts or agreements, referring or relating to Omni 808, Vision Capital and/or Lexington, including without limitation all drafts thereof disclosed to, shared with, exchanged with or received from Wachovia, MGA Entertainment, Inc., Fred Mashian, Leon Neman, Isaac Larian and/or any other person or entity other than Omni 808.

6.     All communications referring or relating to Omni 808, Vision Capital and/or Lexington. For purposes of this Request, Bingham may exclude (a) privileged communications with its client Omni 808 after its attorney-client relationship arose; (b) privileged communications with its client Vision Capital after its attorney-client relationship arose; and (c) communications with Mattel's counsel or the Court in the matter of <u>Carter Bryant v. Mattel</u>, No. CV 04-9059, and consolidated cases.

7.     Documents sufficient to identify any instances in which Bingham has represented MGA Entertainment, Inc., any affiliate of MGA Entertainment, Inc., Fred Mashian, Leon Neman, any entity associated with Leon Neman, Yoel Neman, Monia Neman (aka Monia Mashian), Angela Larian, Farhad Larian, Isaac Larian and/or any entity associated with Isaac Larian at any time since June 1, 2001.

EXHIBIT _A_
PAGE_ _8_

RECEIVED

FEB 12 2009

BINGHAM
ORANGE COUNTY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2  John B. Quinn (Bar No. 090378)
   (johnquinn@quinnemanuel.com)
3  Michael T. Zeller (Bar No. 196417)
   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Plaintiff and Cross-
   Defendant Mattel, Inc.

8

9                UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

12 | CARTER BRYANT, an          | CASE NO. CV 04-9049 SGL (RNBx)
   | individual,                |
13 |                            | Consolidated with Case Nos. CV 04-09059
   |         Plaintiff,         | and CV 05-02727
14 |                            |
   |     vs.                    | PROOF OF SERVICE
15 |                            |
   | MATTEL, INC., a Delaware   | Date:  TBA
16 | corporation,               | Time:  TBA
   |                            | Place: TBA
17 |         Defendant.         |
18 |                            |
   | AND CONSOLIDATED           |
19 | ACTIONS                    |
20

21

22

23

24

25

26

27

28

07209/2736943.1

EXHIBIT _A_
PAGE _9_

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa St., 10th Floor, Los Angeles, CA 90017.

On February 12, 2009, I served true copies of the following documents described as: **NOTICE OF SUBPOENA ISSUED TO BINGHAM MCCUTCHEN LLP**, on the parties in this action as follows:

Thomas J. Nolan, Esq.
Jason Russell, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave., Ste. 3400
Los Angeles, CA 90071
*Attorneys for the MGA Parties*

Patricia L. Glaser, Esq.
Glaser Weil Fink Jacobs & Shapiro LLP
10250 Constellation Blvd., 19th floor
Los Angeles, CA 90067
*Attorneys for the MGA Parties*

Russell J. Frackman, Esq.
Mitchell Silberberg & Knupp LLP
11377 W. Olympic Blvd.
Los Angeles, CA 90064
*Attorneys for the MGA Parties*

Todd Gordinier, Esq.
Peter Villar, Esq.
Bingham McCutchen LLP
600 Anton Boulevard, 18th Floor
Costa Mesa, CA 92626
*Attorneys for Omni 808 Investors, LLC,*
*OmniNet Capital, LLC and Vision Capital,*
*LLC*

[√]   **[PERSONAL]** by personally delivering the documents listed below to the person(s) at the address(es) set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 12, 2009, at Los Angeles, California.

David Quintana

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On February 12, 2009, I served true copies of the following document(s) described as:

**NOTICE OF SUBPOENA ISSUED TO BINGHAM MCCUTCHEN LLP**, on interested

parties in this action as follows:

Mark E. Overland, Esq.                          Peter Bonis, Esq.
Alexander H. Cote, Esq.                         Peter H. Bonis Law Offices
Overland Borenstein Scheper & Kim LLP          1990 N. California Blvd., 8th Floor
601 W. 5th St., 12th Floor                     Walnut Creek, CA 94596
Los Angeles, CA 90017                          *Attorney for Carter Bryant*
*Attorneys for Carlos Gustavo Machado*
*Gomez*

[ X ]  **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

[ ]     **BY FACSIMILE:**  On February 12, 2009, I caused said document(s) to be transmitted by facsimile pursuant to Rule 2008 of the California Rules of Court.  The telephone number of the sending facsimile machine was (213) 443-3100.  The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list.  The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 12, 2009, at Los Angeles, California.

Lupe Espinoza

**EXHIBIT** *A*
**PAGE** *11*

-3-

Exhibit B

# BINGHAM

Peter N. Villar
Direct Phone: 714.830.0640
Direct Fax:    714.830.0719
peter.villar@bingham.com
Our File No.: 0000337036

February 20, 2009

**Via Email**

Jon D. Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543

Re:   **Carter Bryant v. Mattel, Inc., Case No. CV 04-9049 SGL**

Dear Mr. Corey:

We are in receipt of the Subpoena issued by Mattel, Inc. to our firm, Bingham McCutchen LLP, in the above-referenced matter.  The Subpoena is objectionable on many grounds including, *inter alia*, that: it seeks information protected by the attorney-client privilege and attorney work product doctrine; it seeks private, confidential and proprietary information of our firm and our clients; it invades our firm's and our clients' rights of privacy; it is overly broad, unduly burdensome, oppressive and harassing; it seeks information that is irrelevant to Phase 2 of the proceedings; and the burden, expense and intrusiveness of the discovery outweighs any purported relevance of the information.

We hereby demand that Mattel immediately withdraw the Subpoena.  If Mattel refuses to withdraw the Subpoena, we will file a motion to quash the Subpoena, and each document request therein, pursuant to Federal Rules of Civil Procedure 45(c)(3).  Before doing so, however, we would like an opportunity to discuss and try to resolve these issues with you in person at our office.  We are available any time on Tuesday, February 24 or Wednesday, February 25.  If you are willing to meet with us, please let us know which date and time works for you.

Sincerely,

Peter N. Villar

cc:   Thomas J. Nolan, Esq.
       Patricia L. Glaser, Esq.
       Russell J. Frackman, Esq.

Boston
Hartford
Hong Kong
. London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Plaza Tower, 18th Floor
600 Anton Boulevard
Costa Mesa, CA
92626-1924

T 714.830.0600
F 714.830.0700
bingham.com

A/72852289.1

Exhibit C

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

February 23, 2009

<u>VIA FACSIMILE AND U.S. MAIL</u>

Peter N. Villar, Esq.
Bingham McCutchen LLP
600 Anton Boulevard 18th Floor
Costa Mesa, California 92626-1924

Re:   <u>Mattel, Inc. v. MGA Entertainment, Inc. et al.</u>

Dear Peter:

I write in response to your February 20, 2009 letter regarding Mattel's subpoena to Bingham McCutchen, LLP and, pursuant to paragraph 5 of the Discovery Master Order, to request a meet and confer in advance of a contemplated motion to compel and for sanctions.

Bingham's objection that Mattel's subpoena seeks information protected by the attorney-client privilege and work product doctrine is without basis. To the extent the subpoena asks Bingham to produce communications, it expressly excludes "(a) privileged communications with its client Omni 808 after its attorney-client relationship arose; [and] (b) privileged communications with its client Vision Capital after its attorney-client relationship arose." <u>See</u> Exhibit A to Subpoena Issued to Bingham McCutchen, LLP, at ¶ 6. In addition, as explained further below, the Court previously rejected defendants' assertions in this case that fee information is privileged.

Bingham incorrectly contends that Mattel's subpoena is not relevant to Phase 2. Mattel's requests are narrowly tailored to discover who is paying Omni 808's and Vision's Capital's legal fees, as well as to discover who was involved in the formation and operation of these entities. Among other things, this information is directly relevant to MGA's, Larian's and the third parties' credibility. Judge Larson and the previous Discovery Master have repeatedly held that documents and information relating to payment of legal fees are relevant to bias and credibility and are discoverable. <u>See, e.g.,</u> Discovery Master's Order Granting Mattel's Motion to Compel

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

EXHIBIT _C_
PAGE _13_

Production of Documents, dated January 25, 2007, at 12 (holding that documents relating to fee or indemnity agreements between MGA and Bryant are relevant to show "lack of credibility"); Court's Order re Motions Heard on June 11, 2007, dated June 27, 2007, at 34 (holding that fee payment arrangements are relevant to credibility and must be disclosed). Copies of these Orders are attached for your reference.

Bingham's remaining objections are likewise without merit. Contrary to your assertion, Mattel's requests are neither overbroad nor unduly burdensome. Any burden involved in responding to the requests is also plainly outweighed by the relevance of the requested information. Finally, as Mattel has previously informed you, the previous Discovery Master and Judge Larson have held that the protective order in this case is sufficient to alleviate any purported privacy concerns.

Mattel's requests are proper. Mattel therefore will not withdraw its subpoena to Bingham McCutchen, LLP. Further, if Bingham refuses to produce documents responsive to the subpoena, Mattel intends to file a motion to compel and potentially to seek sanctions if Bingham persists in its frivolous objections. Mattel hereby requests a meet and confer regarding its anticipated motion within the next five days pursuant to paragraph 5 of the Order for the Appointment of a Discovery Master.

We are available tomorrow afternoon to meet and confer in person at your Los Angeles office, which was a date you suggested in your letter. Please let us know what time.

I look forward to hearing from you.

Best regards,

Jon Corey /SH

Jon Corey

EXHIBIT _C_
PAGE _14_

CONFORMED COPY

FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA  94111
415-774-2611
415-982-5287 (fax)

2007 JAN 25  P 12: 25

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | |

## I.  INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1]  Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

1 - 26

EXHIBIT  C
PAGE   15

CAL EXHIBIT 1271

EXHIBIT _C_
PAGE _16_

1  considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel

2  Production of Documents is GRANTED.

3                              II.  BACKGROUND

4       At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls.  This highly

5  lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made

6

7  commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of

8  Bratz dolls now rival Mattel's Barbie doll.

9       A.  Mattel's Original Complaint

10      On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed

11

12  suit against its former employee Bryant in state court asserting claims for breach of contract,

13  breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion.  Mattel

14  employed Bryant as a product designer from September 1995 through April 1998, and from

15

16  January 1999 through October 2000.  Upon starting his second term, Bryant signed an Employee

17  Confidential Information and Inventions Agreement which required him not to engage in any

18  employment or business other than for Mattel, or invest or assist in any manner any business

19  competitive with the business or future business plans of Mattel.  Bryant also assigned to Mattel

20  all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his

21

22  employment.

23      In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that

24  he had not worked for any of Mattel's competitors in the prior twelve months and had not

25  engaged in any business dealings creating a conflict of interest.  Bryant agreed to notify Mattel of

26  any future events raising a conflict of interest.

27

28      Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for

29  a Mattel competitor (later identified as MGA).  Bryant entered into an agreement with MGA to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                    2

EXHIBIT   *C*
PAGE   *17*

provide product design services on a "top priority" basis.[2]  The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA.  Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel.  In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction).  Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA.  The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls.  In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls.  In August of 2004, the district court remanded the action.

B.  Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement.  Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2]  Bryant has already produced his agreement with MGA.  Therefore, the existence of the agreement does not appear to be in dispute.

EXHIBIT  C
PAGE  18

### C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction.  Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act.  Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake.  After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

### D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

### E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims.  MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

### F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant.  In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review.  Mattel filed an appeal, and the district court stayed discovery in May of 2005.  Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling.  After the stay was lifted the district court consolidated all three actions for all purposes.  There is no scheduling order currently in place.

EXHIBIT _C_
PAGE _19_

G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

EXHIBIT _C_
PAGE _20_

1   was not heard before the district court stayed all discovery pending resolution of Mattel's appeal

2   to the Ninth Circuit on subject matter jurisdiction issues.

3        After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at

4   the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to

5   compel. The parties informed the court that they would submit a stipulation and order. See

6   Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel

7   Production of Documents, counsel will be submitting a stipulation and order which will be

8   dispositive of all the issues in dispute.").

9

10        Over the next several months, the parties exchanged draft stipulations and orders to

11   memorialize the parties' meet and confer session, but were unable to reach final agreement

12   because Bryant insisted upon including the following sentence in the stipulation: "The stipulation

13   resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's

14   Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and

15   motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23.

16   From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel

17   waive its right to all further discovery in connection with its requests. Mattel proposed the

18   following provision as an alternative:

19

20        Except as, and only as set forth in the terms of Paragraph One above, nothing in
         this Stipulation shall preclude or limit Mattel from seeking further discovery on
21        any matter, including as to matter on which the parties could not reach complete
         agreement, or preclude or limit any right of Bryant to object or resist to such
22        discovery.

23   Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was

24   unacceptable to Bryant. At the direction of the Discovery Master, the parties met and

25   conferred again in late December 2006, but to no avail.

26        Despite the parties' inability to reach final agreement, Bryant produced approximately

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    6

EXHIBIT   C
PAGE   21

1,600 pages of documents to date.  Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3]  Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

    J.   Mattel's Motion to Compel Production of Documents

    Mattel's motion has three parts.  First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents:  (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel.  Mattel's Motion at 6.  Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

    Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations.  According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]   According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear.  Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed.  Mattel again obtained a court order compelling the deposition and sanctions.  To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                                    7

EXHIBIT  C
PAGE   22

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

## K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents: documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4]  There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

EXHIBIT  C
PAGE  23

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT _c_
PAGE _24_

1   requests and that the stipulation controlled to the extent they were inconsistent.  Bryant's

2   Opposition at 5:22-6:21.

3       Bryant emphasizes that the parties have engaged in an extensive meet and confer process

4   and asks the Discovery Master to order the disposition of this motion in a manner consistent with

5   the parties' draft stipulation.  If the draft stipulation is not adopted, Bryant fears the parties will

6   have no incentive to compromise in the future.  Bryant's Opposition at 1:24-2:3.  Bryant also asks

7

8   the Discovery Master to order Mattel not to revisit any of the requests that were the subject of

9   Mattel's original motion to compel or the instant motion to compel.  Id. at 2:11-13 and 10:9-10.

10      Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects.  In

11  particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to

12  Mattel employees.  Bryant also asserts that Mattel is not entitled to unredacted personal phone

13  records and financial information because these records are protected by privacy rights.  Lastly,

14

15  Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit

16  was filed.

17

18                        III.  DISCUSSION

19      A.  The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

20      The parties' extensive submissions make it clear that the parties did not resolve the issues

21  raised in the instant motion.  The parties met and conferred extensively and in good faith,

22

23  reaching compromises on virtually all categories of documents in dispute.  Despite their efforts,

24  however, the parties were ultimately unable to execute a binding stipulation because they were

25  unable to agree on any provision to govern Mattel's future right to pursue additional discovery

26  from Bryant.  It is clear that the parties deemed it necessary to include such a provision in the

27  draft stipulation in order to protect their respective positions.  Because the parties did not execute

28

29  a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

EXHIBIT _C_
PAGE _25_

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

**B. Rule 26 of the Federal Rules of Civil Procedure**

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

**C. Mattel's Requests for Production**

**Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA**

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT _C_
PAGE _26_

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

EXHIBIT __c__
PAGE __27__

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46:  Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

EXHIBIT  C
PAGE  28

when the payments were actually made.  Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement.  Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works.  Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages.  17 U.S.C. §504(b).  The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market.  For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation.  Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel.  Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant.  Among other things, the protective order provides protection for confidential trade secret information.  It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only."  The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.  Bryant,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT__*c*__
PAGE__*29*__

1  however, is not required to produce tax returns, provided that he otherwise fully complies with

2  these requests as ordered.

3      Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

4

5      Mattel seeks production of Bratz-related communications and communications with

6  MGA. More specifically, Mattel seeks production of four categories of documents Bryant has

7  refused to produce: (1) communications between Bryant and MGA or third parties that explicitly

8  relate to designs Bryant created while employed by Mattel; (2) communications between Bryant

9  and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating

10 to Bryant's Mattel employment or work Bryant performed for Mattel, except those

11 communications "created" prior to the close of Bryant's Mattel employment; and (4)

12 communications between Bryant and MGA that post-date Bryant's Mattel employment.  Bryant

13 contends that the discovery requests for communications between Bryant and MGA are

14 overbroad.  Bryant asserts that there are many former Mattel employees and friends of his who

15 have privacy rights that would be impinged upon if he were to disclose his communications.

16

17 Bryant also asserts that he has his own confidentiality interest regarding any information that he

18 shared with MGA.  In particular, he objects to Mattel's discovery requests to the extent they

19 would require him to reveal the identity of current Mattel employees seeking employment with

20

21 MGA or Bryant.

22

23     The Discovery Master finds that Mattel's requests for all communications between Bryant

24 and MGA unquestionably seek information relevant to Mattel's claims:  they will reveal what

25 Mattel information Bryant shared with MGA, if any, and when.  The protective order is sufficient

26 to address Bryant's confidentiality concerns.  It allows parties to designate as "Confidential"

27 private information about current or former employees, contractors or vendors (including

28 employee, contractor and personnel records).  Therefore, Bryant is ordered to produce all non-

EXHIBIT _C_
PAGE _30_

privileged documents responsive to Request Nos. 20, 23, 27, and 28.  However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA.  Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

　　　　Request Nos. 49, 51:  Mattel-Related Documents

　　　　Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

　　　　Request No. 9:  Documents re Registrations and Applications for Registrations

　　　　Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration.  Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

　　　　As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper.  Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

IV. CONCLUSION

　　　　For the reasons set forth above, the Discovery Master orders as follows:

　　　　1.  Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT  C
PAGE  31

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2.  Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3.  Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4.  Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5.  Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6.  Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7.  Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT _C_
PAGE _32_

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ____ Send ____
Entered ____ Closed ____
JS-5/JS-6 ____ JS-2/JS-3 ____
Scan Only____ Docketed on CM ____
THIS CONSTITUTES NOTICE OF
ENTRY AS REQUIRED BY FRCP 77(d)

JUN 27 2007

EASTERN DIVISION
BY ____ DEPUTY

FILED - EASTERN DIVISION
CLERK, U.S. DISTRICT COURT

JUN 27 2007

CENTRAL DISTRICT OF CALIFORNIA
BY JIM HOLMES        DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

            Plaintiff,

v.

MATTEL, INC.,

            Defendant,

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-09049 SGL

CONSOLIDATED WITH
CV 04-09059 SGL
CV 05-02727 SGL

ORDER RE MOTIONS HEARD ON
JUNE 11, 2007

Presently before the Court is a multitude of motions filed by a number of parties in these consolidated cases. The factual allegations underlying the present actions are expansive and complex. They are set forth below only to the extent necessary for the Court's consideration of the present motions. At their essence, although involving a number of other legal and factual issues, these cases involve the rights to certain fashion dolls.

The present motions, six in total, focus on four basic issues: Two of the motions, filed by certain counter-defendants, address the sufficiency of the allegations made by Mattel, Inc. ("Mattel") in its counterclaims; most notably, these motions challenge the sufficiency of the allegations which underlie Mattel's claims based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.

Docket No. 577

06/27/07

EXHIBIT c
PAGE 33

§§ 1961-1968 ("RICO"). Another motion challenges the Court's exercise of personal jurisdiction over a foreign corporation, MGAE de México, S.R.L. de C.V. ("MGA Mexico"). Two additional motions seek review of a ruling, issued by a court-appointed discovery master, overruling objections made during a party's deposition that were based on the attorney-client and joint-defense privileges. A final motion heard on June 11, 2007, addresses the Court's scheduling order that divided the issues to be tried in these consolidated cases into two phases. This last motion will be addressed in a separate order.

The Court has reviewed the parties' filings regarding these motions and held a hearing on June 11, 2007. For the reasons and in the manner set forth more fully herein, the Court makes the following rulings regarding these motions:

1.    Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189):[1] **GRANTED IN PART AND DENIED IN PART.**

2.    Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and XI (docket # 191): **GRANTED IN PART AND DENIED IN PART.**

3.    Motion of MGA Mexico to Dismiss Mattel's Amended Answer and Counterclaims (docket # 266): **DENIED.**

4.    Motion of MGA Objecting to Discovery Master's March 7, 2007, Order (docket # 308): **GRANTED IN PART AND DENIED IN PART.**

5.    Motion of Carter Bryant Objecting to Discovery Master's March 7, 2007, Order (docket # 306): **GRANTED IN PART AND DENIED IN PART.**

---

[1] Joining in this Motion were MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Carter Bryant ("Bryant"), and MGA Mexico.

2

EXHIBIT _C_
PAGE _34_

### I. Factual Allegations

The following allegations appear in the Amended Answer and Counterclaims ("AAC"):

**A.    Bryant's Employment by Mattel**

Carter Bryant was hired by Mattel as a Barbie product designer in January 1999. (AAC ¶ 21.) At that time, Bryant signed an "Employee Confidential Information and Inventions Agreement," wherein he agreed not to assist or work for a Mattel competitor while employed by Mattel and that the designs and inventions he created while employed by Mattel were Mattel property. (AAC ¶¶ 22-23.) Bryant also executed a "Conflict of Interest Questionnaire" wherein he certified that, other than as disclosed, he had not worked for a Mattel competitor in the past year, had not engaged in a business transaction with a Mattel competitor that could create a conflict of interest, and that he would inform Mattel immediately if such an event occurred. (AAC ¶¶ 24-25.) While still employed by Mattel, Bryant used Mattel property and resources to develop and design the Bratz concept. (AAC ¶ 26.) Bryant also allegedly enlisted other Mattel employees to perform work on the Bratz line, in some cases, falsely informing those employees that they were working on a Mattel project. (AAC ¶ 27.)

**B.    MGA's Involvement in Bryant's Conduct**

MGA knew of and encouraged Bryant's misappropriation of Mattel property and resources. (AAC ¶ 33). Bryant made affirmative misrepresentations to Mattel, including that he was leaving Mattel for "non-competitive" pursuits. (AAC ¶ 28.) Bryant and MGA concealed from Mattel that Bryant developed Bratz while employed by Mattel, that Bryant worked with MGA during the time he was employed by Mattel, and that Larian and others, not Bryant, were the creators of Bratz. (AAC ¶ 35.) Prior to his departure from MGA, Bryant entered into a contract with MGA to provide design services to MGA on a "top priority" basis. (AAC ¶ 36.) Bryant left Mattel's employ on October 20, 2000; three weeks later, MGA

3

EXHIBIT  C
PAGE  35

1    showed the Bratz prototypes to focus groups and retailers. (AAC ¶ 29.) Soon

2    thereafter, MGA showed the Bratz line to retailers at the Hong Kong Toy Fair in

3    January, 2001, and then began manufacturing and selling the dolls to retailers for

4    an annual revenue in the excess of $500 million. (AAC ¶¶ 31-32.)

5    **C.**     **Proprietary Information**

6          **1.**     **Mexico**

7          Counter-defendant Carlos Gustavo Machado Gomez ("Machado"), nonparty

8    Mariana Trueba Almada ("Trueba"), and nonparty Pablo Vargas San Jose

9    ("Vargas") were upper-level employees at Mattel Mexico. (AAC ¶¶ 38-40.) In the

10   three months before all three simultaneously resigned from Mattel Mexico on April

11   19, 2004, they were in contact with MGA via an email account with the address

12   "plot04@aol.com". (AAC ¶ 42.) The three former employees allegedly used this

13   account to supply MGA with confidential and proprietary Mattel information. (AAC

14   ¶ 42.) The three also copied various proprietary Mattel documents onto USB flash

15   drives prior to resigning. (AAC ¶ 44-46.) Shortly before her departure, Trueba

16   increased her access to Mattel's confidential information and attended a meeting at

17   which Mattel personnel analyzed Barbie programs for the United States, Canada,

18   and South America. (AAC ¶ 47.)

19         Among them, Machado, Trueba, and Vargas stole documents containing

20   information regarding Mattel's future products, production and shipping costs, sales

21   information, customer information, marketing information, and strategic research

22   information both in Mexico and worldwide. (AAC ¶ 48.) The stolen data was not

23   limited to the Mexican market; rather, the information stolen had the potential, and

24   in fact did, give MGA an unfair competitive advantage in the United States and

25   around the world. (AAC ¶ 49.)

26         In an attempt to conceal his actions, Machado ran a software program on his

27   Mattel computer in order to erase information pertaining to his contact with MGA.

28   (AAC ¶ 51.) When Mattel alerted Mexican authorities about the theft, they seized

EXHIBIT  C
PAGE   36

from MGA's Mexico City offices, pursuant to a search warrant, a large number of documents containing Mattel trade secrets and confidential information.  (AAC ¶ 53.)

Shortly after the theft, Machado, Trueba, and Vargas traveled to Los Angeles to meet face-to-face with MGA personnel.  (AAC ¶ 52.)

### 2.   Canada

Jane Brisbois was the Director of Sales for the Girls Division in Canada. (AAC ¶ 71.)  When she was hired in 1999, she agreed to preserve and not disclose Mattel's proprietary information.  (AAC ¶ 71.)   While still employed by Mattel, Brisbois spoke with Larian on September 22, 2005.  (AAC ¶ 74.)  That same day, Brisbois copied approximately 45 Mattel documents containing Mattel trade secret information into a USB flash drive that she took from the Mattel Canada office. (AAC ¶ 74.)  The files taken by Brisbois included documents regarding Mattel sales, advertising strategies, market analyses, product launch dates, and profit margins in Canada, Mexico, and the United States.  (AAC ¶ 74.)  Four days later, she resigned from Mattel.  (AAC ¶ 74.)

When Mattel learned of Brisbois' misappropriation of Mattel documents, it notified Canadian law enforcement officials, who were able to recover the flash drive and the documents from Brisbois.  (AAC ¶ 75.)

### 3.   United States

Ron Brawer was Mattel's Senior Vice President and General Manager. (AAC ¶ 55.)  On September 17, 2004, Brawer informed Mattel that he was leaving Mattel to work for MGA.  (AAC ¶ 63.)  During Brawer's exit interview, he falsely represented that he had returned all proprietary information to Mattel; specifically, Brawer took the information in his contacts file which included contact information for Mattel customers and Mattel employees.  (AAC ¶ 68.)  Brawer has since used the contact information to induce certain Mattel employees to join MGA and misappropriate Mattel trade secrets.  (AAC ¶ 69.)

EXHIBIT  C
PAGE  37

1   MGA has also allegedly hired at least 25 other Mattel employees, some of

2   whom have provided MGA with Mattel's confidential information.  (AAC ¶ 77.)

3   **D.    Larian's Communications Regarding Mattel's New Product Line**

4        On May 12, 2006, Larian sent an email message to an email distribution list

5   that included a reference to a new Mattel Barbie line ("MY SCENE MY BLING

6   BLING") which Mattel had not yet made public.  (AAC ¶ 79.)  The distribution of the

7   email included members of the media and many of Mattel's most significant

8   customers.  (AAC ¶ 78.)  Soon after sending the email, Larian began calling these

9   significant customers and making false representations about the product;

10  specifically, Larian told each that it was the only retailer to purchase the product

11  and that Mattel would not be supporting the product with television advertising.

12  (AAC ¶ 80.)

13  **E.    Exhibit C**

14       In Exhibit C to the AAC, Mattel references a number of communications,

15  numbering well over one hundred, that it contends constitutes predicate acts of mail

16  fraud or wire fraud.  Exhibit C does not describe the contents of those

17  communications.

18                        **II. Counterclaims Asserted**

19       Based on these allegations, Mattel asserts the following counterclaims:

20  (1) Copyright Infringement, including willful, vicarious, and contributory

21  infringement, asserted against MGA, MGA Hong Kong, Larian and Bryant;

22  (2) violation of RICO's substantive prohibition, 18 U.S.C. § 1962(c), asserted as

23  authorized by 18 U.S.C. § 1964(c) against all defendants, which alleges predicate

24  acts of, *inter alia*, mail fraud, wire fraud, and criminal copyright infringement; (3) a

25  violation of RICO's prohibition against conspiracies, 18 U.S.C. § 1962(d), asserted

26  against all defendants; (4) state-law misappropriation of trade secrets against MGA,

27  MGA Mexico, Larian, and Machado; (5) breach of contract, asserted against Bryant

28  only and based on certain employment agreements between Bryant and Mattel;

6

EXHIBIT _C_
PAGE ___38___

1   (6) intentional interference with contract, asserted against MGA and Larian and

2   based on Bryant's employment agreements; (7) breach of fiduciary duty, asserted

3   against Bryant and Machado; (8) aiding and abetting breach of fiduciary duty,

4   asserted against MGA and Larian; (9) breach of the duty of loyalty, asserted

5   against Bryant and Machado; (10) aiding and abetting breach of the duty of loyalty,

6   asserted against MGA and Larian; (11) conversion, asserted against all counter-

7   defendants; (12) violation of California's unfair competition law, Cal. Bus. & Prof.

8   Code § 17200, asserted against all counter-defendants; and finally, (13) a claim for

9   declaratory relief.

10   **III. Counter-Defendants' Motions to Dismiss for Failure to State a Claim**

11       The parties have moved to dismiss a number of Mattel's counterclaims on

12   various grounds.  The Court addresses each claim in turn, considering at all times

13   the standard for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

14   **A.**   <u>**Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**</u>

15       In lieu of an answer, a party may, as the counter-defendants have here, file a

16   motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which provides that such a

17   motion may be made where the pleader has "fail[ed] to state a claim upon which

18   relief can be granted."  <u>Id.</u>  In deciding a Rule 12(b)(6) motion, the Court must also

19   consider the requirements of Fed. R. Civ. P. 8(a), which requires only a "short and

20   plain statement of the claim showing that the pleader is entitled to relief" or, when

21   the claim at issue avers fraud or mistake, the motion must be considered in

22   conformity with Fed. R. Civ. P. 9(b), which requires fraud and mistake to be pleaded

23   with particularity.  <u>See</u> 5A Charles A. Wright & Arthur Miller, <u>Federal Practice and</u>

24   <u>Procedure</u>, §1356 (1990); James Wm. Moore, <u>Moore's Federal Practice</u>, Vol. 2

25   § 12.34[1][c].

26       In bringing a motion pursuant to Rule 12(b)(6), the moving party has the

27   burden of persuading the Court that the complaint has failed to state a claim upon

28   which relief can be granted.  <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406,

7

EXHIBIT  C
PAGE  39

1    1409 (3d Cir.), cert. denied, 501 U.S. 1222 (1991).  In considering the motion,

2    "courts must consider the complaint in its entirety," and read it in the light most

3    favorable to the plaintiff, accepting as true all factual allegations in the complaint, as

4    well as reasonable inferences to be drawn therefrom.  Tellabs, Inc. v. Makor Issues

5    & Rights, Ltd., __ U.S. __, No. 06-484,  2007 WL 1773208, at *9 (June 21, 2007);

6    Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  However, the Court need not

7    accept any unwarranted deductions of fact, or conclusory legal statements cast in

8    the form of factual allegations.  See Western Mining Council v. Watt, 643 F.2d 618,

9    624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).

10       Generally, a court cannot consider evidence in deciding a Rule 12(b)(6)

11   motion; however, a court may consider exhibits attached to the complaint as well as

12   documents that are not physically attached to the complaint but "whose contents

13   are alleged in [the] complaint and whose authenticity no party questions."  Branch v.

14   Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), cert. denied, 512 U.S. 1219 (1994).

15   Facts of which a court may take judicial notice pursuant to Fed. R. Evid. 201 are

16   also properly considered.  Mir v. Little Company of Mary Hospital, 844 F.2d 646,

17   649 (9th Cir. 1988).

18   B.    RICO Claims

19       The counter-defendants devote most of their motions to the sufficiency of the

20   allegations regarding Mattel's RICO claims.  The Court's analysis begins, as it must

21   when considering a federal statute, with the language of that statute.  The

22   substantive RICO prohibition at issue is found in 18 U.S.C. § 1962(c):

23            It shall be unlawful for any person employed by or associated

24            with any enterprise engaged in, or the activities of which affect,

25            interstate or foreign commerce, to conduct or participate, directly or

26            indirectly, in the conduct of such enterprise's affairs through a pattern

27            of racketeering activity or collection of unlawful debt.

28   Id.  Conspiracies to violate this substantive prohibition are themselves prohibited by

8

EXHIBIT__c_
PAGE__40_

§ 1962(d), which states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  Id.  Many of these terms are defined by the statutory language, including "racketeering activity," "enterprise," and "pattern of racketeering activity":

>     (1) "racketeering activity" means . . . (B) any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), . . . section 1512 (relating to tampering with a witness, victim, or an informant), . . . section 1952 (relating to [interstate and foreign travel or transportation in aid of racketeering enterprises]), [and] section 2319 (relating to criminal infringement of a copyright)[.]

>     . . . .

>     (4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;

>     (5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.]

18 U.S.C. § 1961.

In considering a Rule 12(b)(6) motion seeking to dismiss a RICO claim, the Court measures the sufficiency of alleged predicate acts of wire fraud and mail fraud by the Rule 9(b) "pleading-with-particularity" standard; however, the Court measures the sufficiency of all other predicate acts by the more lenient standard set forth in Rule 8(a).  Compare Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

9

EXHIBIT  C
PAGE  41

1   particularity.  Malice, intent, knowledge, and other condition of mind of a person

2   may be averred generally.") with Fed. R. Civ. P. 8(a) ("A pleading which sets forth a

3   claim for relief, . . . shall contain . . . (2) a short and plain statement of the claim

4   showing that the pleader is entitled to relief . . . ."); see Lancaster Community Hosp.

5   v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991) (applying Rule

6   9(b) standard to allegations of mail fraud and noting that "[t]he Ninth Circuit has

7   repeatedly insisted that [Rule 9(b)] be followed in RICO actions alleging the

8   predicate act of mail fraud."), cert. denied, 502 U.S. 1094 (1992).

9        In order to state its claim under § 1962(c), Mattel "must allege (1) conduct

10   (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing

11   injury to [its] business or property."  Ove v. Gwinn,  264 F.3d 817, 825 (9th Cir.

12   2001) (internal quotation marks and citation omitted).  Here, counter-defendants'

13   motions challenge the first, second, fourth, and fifth elements.

14        1.   "Conduct or Participate"

15        Bryant contends that his role in any alleged scheme or enterprise is too

16   tenuous to constitute the "conduct" necessary to impose RICO liability.  In order to

17   have RICO liability imposed upon him, a defendant must "conduct or participate,

18   directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of

19   racketeering activity . . . ." 18 U.S.C. § 1962(c).  The United States Supreme Court

20   has elaborated on this statutory language in Reves v. Ernst & Young, 507 U.S. 170,

21   179 (1993), wherein it noted:

22        [T]he word "participate" makes clear that RICO liability is not limited to

23        those with primary responsibility for the enterprise's affairs, just as the

24        phrase "directly or indirectly" makes clear that RICO liability is not

25        limited to those with a formal position in the enterprise, but some part

26        in directing the enterprise's affairs is required.

27   Id.  Here, Mattel has alleged that Bryant secretly developed Bratz while employed

28   by Mattel and using Mattel's resources and employees, that he concealed that fact

EXHIBIT  C
PAGE  42

1   when he had a duty to disclose it, and that he did these things in order to facilitate

2   the development of the Bratz concept by Mattel's direct competitor, in violation of,

3   *inter alia*, criminal copyright law.  These allegations, if proven to be true, are

4   sufficient to impose RICO liability on Bryant.

5        2.    **Enterprise**

6        Bryant's motion challenges the sufficiency of the allegations regarding a

7   RICO enterprise.  That enterprise is alleged to be an "association-in-fact" enterprise

8   comprised of the counter-defendants, Brawer, Trueba, Vargas, Brisbois, and

9   others.  (AAC ¶ 89.)  Mattel alleges that counter-defendants participated in or

10  conducted the affairs of the association-in-fact enterprise through a pattern of

11  racketeering activities, including, as detailed in the AAC, predicate acts of mail

12  fraud, wire fraud, evidence tampering, interstate and foreign travel to aid

13  racketeering activities, and criminal copyright infringement.  (AAC ¶ 90.)  The

14  counter-defendants' goal is alleged to have been to "execut[e] or attempt to

15  execut[e] [a] scheme to improperly defraud Mattel and steal its trade secret or

16  otherwise confidential and proprietary information . . . ."  (AAC ¶ 90.)

17      A recent *en banc* decision of the Ninth Circuit sets forth a comprehensive

18  analysis of the sufficiency of allegations regarding a RICO enterprise necessary to

19  state a claim.  See Odom v. Microsoft Corp., 486 F.3d 541, 2007 WL 1297249 (9th

20  Cir. 2007) (designated for publication).  That decision provides the blueprint for the

21  Court's present analysis.

22      Odom involved an alleged scheme involving consumers who purchased

23  computers from Best Buy retail stores.  Id. at 543.  The computers would include a

24  Microsoft compact disc that the cashier would scan; the consumer's credit card was

25  also scanned for purchase.  Id.  The credit card information was transmitted to

26  Microsoft, and Microsoft would, at some point, begin making unauthorized charges

27  to the credit card used to purchase the computer, ostensibly for Microsoft's

28  provision of Internet services.  Id.  Odom brought substantive RICO and RICO

11

EXHIBIT C
PAGE 43

1    conspiracy claims based on these allegations. Id. at 544.

2         The Ninth Circuit first noted the evidenced judicial resistance to RICO in the

3    lower courts, contrasted with the Supreme Court's four reversals of such narrow

4    readings of RICO. Id. at 545-47 (citing United States v. Turkette, 452 U.S. 576

5    (1981) (rejecting notion that RICO prohibited only the infiltration of legitimate

6    businesses by organized crime); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 481

7    (1985) (rejecting notion that RICO could be used to impose civil liability only where

8    the defendant had been criminally convicted and that such liability was limited to a

9    narrow measure of damages); National Organization for Women v. Scheidler, 510

10   U.S. 249 (1994) (rejecting the notion that RICO liability could be imposed only when

11   the acts of a RICO enterprise had an economic motive); and Cedric Kushner

12   Promotions v. King, 533 U.S. 158 (2001) (reversing lower court's ruling that no

13   RICO claim was stated where president and sole shareholder of a corporation was

14   alleged to have associated with his wholly owned corporation as a RICO

15   "enterprise," and relying on fact that person and corporation were separate legal

16   entities).  In Odom, the Ninth Circuit understandably viewed these four holdings as

17   a "general instruction that we should not read the statutory terms of RICO

18   narrowly."  Odom, 486 F.3d at 547 (internal citation omitted).

19        In Odom, the Ninth Circuit clarified — and relaxed -- the standard for pleading

20   and proving an "associated-in-fact" enterprise such as the one alleged here:

21        The definition of "enterprise" in the text of RICO is fairly

22   straightforward.  In its entirety, the definition is as follows:  "'enterprise'

23   includes any individual, partnership, corporation, association, or other

24   legal entity, and any union or group of individuals associated in fact

25   although not a legal entity." 18 U.S.C. § 1961(4).  As is evident from

26   the text, this definition is not very demanding.  A single "individual" is

27   an enterprise under RICO.  Similarly, a single "partnership," a single

28   "corporation," a single "association," and a single "other legal entity"

12

EXHIBIT _c_
PAGE _44_

1     are all enterprises.  At issue in this case is the last kind of enterprise

2     listed in the definition -- a "group of individuals associated in fact."  It is

3     undisputed that a corporation can be an "individual" for purposes of

4     an associated-in-fact enterprise.

5    Id. at 548.

6        The Ninth Circuit acknowledged that "enterprise" must be something greater

7    than merely a pattern of racketeering activity; however, the court rejected the notion

8    that an enterprise must have a particular ascertainable organizational structure.  Id.

9    at 551 ("We take this opportunity to join the circuits that hold that an

10   associated-in-fact enterprise under RICO does not require any particular

11   organizational structure, separate or otherwise.") (citations omitted).  A party need

12   only set forth factual allegations of "a group of persons associated together for a

13   common purpose of engaging in a course of conduct," "evidence of an ongoing

14   organization, formal or informal," and "evidence that the various associates function

15   as a continuing unit."  Id. at 552 (internal citations and quotation marks omitted).

16       As for the common purpose, it was met in Odom, where the plaintiff had

17   alleged the following:

18        [D]efendants had the common purpose of increasing the

19      number of people using Microsoft's Internet Service, and doing so by

20      fraudulent means.  Best Buy furthered this common purpose by

21      distributing Microsoft Internet Trial CD's and conveying its customers'

22      debit and credit card information to Microsoft.  Microsoft then used the

23      information to activate customer accounts.

24   Id.  Here, Mattel has alleged the common purpose of attempting to defraud Mattel

25   and steal its trade secrets.  Mattel's many factual allegations, detailed herein,

26   support this alleged common purpose.

27       As for the "ongoing organization" requirement, the Ninth Circuit in Odom

28   noted that the plaintiffs had met that element, which was met where the

EXHIBIT   C
PAGE   45

1  organization was alleged to be "a vehicle for the commission of two or more

2  predicate crimes." Id. (internal quotation marks and citation omitted).  The Ninth

3  Circuit noted the following factual allegations:

4         Microsoft and Best Buy established mechanisms for

5         transferring plaintiffs' personal and financial information from Best Buy

6         to Microsoft. That information then allowed Microsoft to activate

7         plaintiffs' Internet accounts without their knowledge or permission.

8         These mechanisms enabled Microsoft to bill plaintiffs improperly for

9         MSN services in 2001, 2002 and 2003.

10  Id. Here, plaintiffs have alleged that the counter-defendants coordinated their many

11  efforts at depriving Mattel of its proprietary information and its intellectual property.

12  The allegations regarding common use of the "plot04@aol.com" email address to

13  transfer confidential Mattel information to MGA support the finding of an "ongoing

14  organization."  So, too, do the allegations regarding the repeated communications

15  between Bryant and MGA.

16         The "continuing unit" requirement does not appear to the Court to mandate

17  that the organization continues to this day;[2] rather, the requirement is related to the

18  notion that RICO was not meant to address discrete instances of fraud or criminal

19  conduct.  "[T]he continuity requirement focuses on whether the associates'

20  behavior was 'ongoing' rather than isolated activity." Id. at 553 (internal quotation

21  marks and citation omitted).  Related to that concern, it is also clear to the Court

22  that this requirement is related to the duration of the racketeering activities. See id.

23  ("An almost two-year time span is far more than adequate to establish that Best

24  Buy and Microsoft functioned as a continuing unit.").  Here, the allegations do not

25  reveal that the conduct complained of was mere isolated activity; rather, Mattel sets

26  forth allegations of racketeering activity that spanned a period of three years.  The

27

28         [2] Nevertheless, Mattel alleges that the enterprise exists to this day by virtue
   of its continued use of Mattel's information and property.

14

EXHIBIT  c
PAGE  46

1  allegations describe a scheme consisting of corporate warfare between competitors

2  that has been waged over a long period of time and waged on a number of fronts,

3  both foreign and domestic. The "continuing unit" requirement is therefore satisfied.

4      Accordingly, the Court finds that Mattel has sufficiently pleaded the existence

5  of a RICO enterprise.

6      3.   **Predicate Acts of Racketeering Activity**

7          a.   **Mail Fraud and Wire Fraud**

8      The criminal prohibition against mail fraud is found at 18 U.S.C. § 1341:

9              Whoever, having devised or intending to devise any scheme or

10  artifice to defraud, . . . for the purpose of executing such scheme or

11  artifice or attempting so to do, places in any post office or authorized

12  depository for mail matter, any matter or thing whatever to be sent or

13  delivered by the Postal Service, or deposits or causes to be deposited

14  any matter or thing whatever to be sent or delivered by any private or

15  commercial interstate carrier, or takes or receives therefrom, any such

16  matter or thing, . . . shall be fined under this title or imprisoned not

17  more than 20 years, or both.

18  Id. The Ninth Circuit has described the elements of mail fraud as "(1) proof of a

19  scheme to defraud; (2) using or causing the use of the mails to further the

20  fraudulent scheme; and (3) specific intent to defraud." United States v. Rogers, 321

21  F.3d 1226, 1229 (9th Cir. 2003) (internal citation omitted).

22      The criminal prohibition against wire fraud is similar:

23              Whoever, having devised or intending to devise any scheme or

24  artifice to defraud, . . . transmits or causes to be transmitted by means

25  of wire, radio, or television communication in interstate or foreign

26  commerce, any writings, signs, signals, pictures, or sounds for the

27  purpose of executing such scheme or artifice, shall be fined under this

28  title or imprisoned not more than 20 years, or both.

15

EXHIBIT  _c_
PAGE _4 7_

1  18 U.S.C. § 1343. The Ninth Circuit has described the elements of wire fraud as

2  "(1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and

3  (3) a specific intent to deceive or defraud." United States v. Shipsey, 363 F.3d 962,

4  971 (9th Cir. 2004) (citations omitted).

5        As all parties acknowledge, the predicate acts of mail fraud and wire fraud

6  must be pleaded with particularity pursuant to Fed. R. Civ. P. 9(b). Specifically,

7  Mattel must detail "the time, place, and manner of each act of fraud, [and it must

8  set forth] the role of each defendant in each scheme." Lancaster Community

9  Hosp., 940 F.2d at 405. This standard applies in RICO actions alleging predicate

10  acts of mail fraud. Id.

11        Here, Mattel sets forth allegations of predicate acts of mail fraud and wire

12  fraud referenced in Exhibit C to the AAC. However, these alleged predicate acts

13  are insufficiently pleaded because they fail to adequately describe the contents of

14  the communications; specifically, they fail to detail time, place and manner of "each

15  act of fraud." The substantive RICO claim is therefore dismissed to the extent it is

16  premised on those communications. Mattel is **GRANTED** leave to amend the RICO

17  claim based on this insufficiency; Mattel must attach to the Second Amended

18  Answer and Counterclaims ("SAAC") copies of the referenced communications.

19  The contents of packages referenced in Exhibit C must be described in order to

20  meet the Rule 9(b) requirements.

21        At oral argument, counsel for MGA argued that the substance of many, if not

22  all of the communications, cannot be read to further a scheme to defraud. That

23  argument will be considered another day, after Mattel files the SAAC. However, the

24  Court takes the opportunity today to note that, given the broad scope of the alleged

25  scheme to defraud, including the criminal copyright infringement allegations,

26  otherwise innocuous and routine communications regarding day-to-day operations

27  and product development may be found to be in furtherance of that scheme. See

28  Tellabs, Inc. v. Makor Issues & Rights, Ltd., __ U.S. __, No. 06-484, 2007 WL

EXHIBIT _c_
PAGE _48_

1773208, at *9 (June 21, 2007) (noting that, in considering a Rule 12(b)(6) motion,
"courts must consider the complaint in its entirety").

Counter-defendants also argue that Mattel failed to plead each defendant's
role in furtherance of the scheme to defraud. As interpreted by the Ninth Circuit,
the Rule 9(b) standard clearly requires that a plaintiff so plead. Lancaster
Community Hosp., 940 F.2d at 405. However, the Court will view the
communications alleged to constitute mail and wire fraud in conjunction with all the
allegations set forth regarding the alleged scheme in the counterclaims. See Flood
v. Makowski, No. 3:CV-03-1803, 2004 WL 1908221, at *14 (M.D. Pa., Aug. 24,
2004) (applying the principle that reasonable inferences in favor of a plaintiff must
be made when considering a Rule 12(b)(6) motion and noting that "[a]lthough
Plaintiffs' Complaint does not expressly identify how each particular mail or wire
communication furthered the scheme, the Complaint clearly alleges facts which
create an unquestionable inference that the alleged communications furthered the
scheme.").

Counter-defendants also argue that, because the emails alleged to
constitute wire fraud were sent among individuals physically located in the same
state, Mattel will not be able to establish the interstate nature of the
communications. See 18 U.S.C. § 1343 (setting forth the requirement that
communications be transmitted "in interstate or foreign commerce"). Mattel has
alleged that the communications were transmitted in interstate or foreign
commerce. (AAC ¶ 93(b).) This suffices at the pleadings stage; however,
eventually Mattel will be called upon to support these allegations with evidence.
See First Pacific Bancorp, Inc. v. Bro, 847 F.2d 542, 547 (9th Cir. 1988) (implicitly
holding that wire fraud must be supported, at the summary judgment stage, by
evidence of interstate wire fraud).

The Court dismisses the RICO claim to the extent it is based on the alleged
predicate acts of mail fraud and wire fraud because those acts are not pleaded with

EXHIBIT _C_
PAGE _49_

1    particularity as required by Rule 9(b).  Mattel is **GRANTED** ten days' leave to file a

2    SAAC that incorporates and attaches and/or describes the communications and the

3    contents of packages referenced in Exhibit C.

4              b.    **Evidence Tampering**

5          Unlike the mail fraud and wire fraud allegations, the allegations regarding the

6    remaining predicate acts are governed by the more lenient pleading standards of

7    Rule 8(a).  See Slade v. Gates, No. 01-8244-RMT, 2002 WL 31387263, at *6 (C.D.

8    Cal., Oct. 11, 2002).  The Court considers the sufficiency of those remaining

9    allegations pursuant to this Rule.

10         The criminal prohibition against tampering with evidence is found at 18

11   U.S.C. § 1512:

12              Whoever corruptly . . . alters, destroys, mutilates, or conceals a

13         record, document, or other object, or attempts to do so, with the intent

14         to impair the object's integrity or availability for use in an official

15         proceeding . . . shall be fined under this title or imprisoned not more

16         than 20 years, or both.

17   Id.  Mattel's opposition makes clear that its evidence tampering allegations are

18   based upon two categories of documents:  The first category of documents,

19   perhaps composed of only one multi-page document, involves the alleged alteration

20   of Bryant's contract with MGA to remove a fax header showing that the date of its

21   execution, which predated the effective date of Bryant's resignation from Mattel.[3]

22   The second category of documents are those filed with the United States Copyright

23   Office, which are alleged to omit the disclosure that certain Bratz drawings were

24   "works for hire," and which are alleged to have had alterations made to certain

25

26         [3]  The AAC merely alleges that counter-defendants Bryant and MGA

27   "tamper[ed] with and deface[ed] documents which showed that . . . Bryant was a
     Mattel employee while he was working for and with MGA . . . ."  (AAC ¶ 35.)

28   However, it is clear from other filings by the parties that, at a minimum, this
     allegation refers to MGA's contract with Bryant.

EXHIBIT _C_
PAGE _50_

1   relevant dates.  (See AAC ¶ 35; Mattel Opp. to MGA's Motion at 9.)

2         As to the first category, a predicate act is sufficiently alleged.  Mattel has

3   alleged that a document was altered in a manner designed to conceal critical

4   evidence, highly relevant to the present official proceeding, regarding the timing of

5   the execution of the document.

6         Conversely, it is unclear whether Mattel has alleged a predicate act with

7   respect to the second category of documents.  The issue of whether submitting

8   fraudulent registrations and "altering relevant dates" on documents submitted to the

9   United States Copyright Office has not been fully briefed by the parties; the issue

10  was framed in this manner only upon the filing of the reply.[4]  Therefore, the Court

11  reserves this issue for a later date, and anticipates that it will be addressed by the

12  parties in a motion to dismiss the SAAC.

13        c.    **Travel Act Violation**

14        Federal criminal law prohibits interstate or foreign travel to aid in

15  racketeering activities.  18 U.S.C. § 1952; see also 18 U.S.C. § 1961 (defining a

16  violation of § 1962 as a RICO predicate act).  In relevant part, the criminal

17  prohibition states:

18        Whoever travels in interstate or foreign commerce or uses the

19        mail or any facility in interstate or foreign commerce, with intent to . . .

20        promote, manage, establish, carry on, or facilitate the promotion,

21        management, establishment, or carrying on, of any unlawful activity,

22        and thereafter performs or attempts to perform . . . [such an act,] shall

23        be fined under this title, imprisoned not more than 5 years, or

24        both . . . .

25                                    . . . .

26        As used in this section . . . "unlawful activity" means . . .

27  _____

28        [4]  The Court does not view this failure as the fault of any party.

19

EXHIBIT  C
PAGE  51

1   extortion, bribery, or arson in violation of the laws of the State in which

2   committed or of the United States . . . .

3   Id. Mattel alleges that Bryant and others traveled in interstate commerce to commit

4   commercial bribery in violation of California's prohibition against commercial

5   bribery, which in relevant part provides:

6       (a) Any employee who solicits, accepts, or agrees to accept

7   money or any thing of value from a person other than his or her

8   employer, other than in trust for the employer, corruptly and without

9   the knowledge or consent of the employer, in return for using or

10   agreeing to use his or her position for the benefit of that other person,

11   and any person who offers or gives an employee money or any thing

12   of value under those circumstances, is guilty of commercial bribery.

13   Cal. Penal Code § 641.3. Several allegations support a violation of § 641.3(a),

14   which in turn supports a violation of 18 U.S.C. § 1952. Mattel has alleged that

15   Bryant, while still employed by Mattel, entered into a contract with MGA to provide

16   design services to MGA on a "top priority" basis, and used Mattel property,

17   employees, and resources to develop and design the Bratz concept.

18       Counter-defendants argue that the requirement under California's

19   commercial bribery statute that a violator act "corruptly" is not met because Bryant

20   did not intend to injure Mattel. Such an intent is not required; rather it is sufficient

21   that Bryant is alleged to have intended to defraud Mattel. See Cal. Penal Code

22   § 341.3(d)(3) (defining "corruptly" as involving the intent "to injure or defraud")

23   (emphasis added).

24       d.   **Criminal Copyright Violations**

25       The parties dispute the relevant pleading standard that governs the

26   allegations which underlie the criminal copyright violation claim. Counter-

27   defendants would have the Court apply the more exacting Rule 9(b) standards

28   because, in their assessment, the claim "sounds in fraud." Mattel, however,

EXHIBIT  C
PAGE  52

1  contends that there is no reason to depart from the more lenient Rule 8(a) standard

2  generally applied to copyright claims because, in its assessment, the claims "sound

3  in copying, not fraud." (Mattel Opposition to MGA's Motion at 4.)

4        The recent Ninth Circuit case on this issue, cited by both parties, stands for

5  the unremarkable proposition that, consistent with Rule 9(b), all *averments* of fraud

6  must be pleaded with particularity, regardless of whether fraud is an essential

7  element of the claim to which the averment relates. See Vess v. Ciba-Geigy Corp.

8  USA, 317 F.3d 1097, 1103 (9th Cir. 2003); Fed. R. Civ. P. 9(b) ("In all *averments*

9  of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

10 with particularity.") (emphasis added).

11       Considering Rules 8(a), 9(b), and the teachings of Vess, a spectrum

12 emerges.  At the left end of this spectrum are claims that do not involve any

13 allegations of fraud.  Those need only satisfy Rule 8(a)'s "short and plain

14 statement" standard.  At the opposite end of the spectrum are claims based solely

15 on fraud, and the facts underlying such a claim must be alleged with particularity

16 pursuant to Rule 9(b).  Lying closer to the Rule 9(b) end of the spectrum is a

17 category of claims discussed in Vess:

18            In cases where fraud is not a necessary element of a claim, a

19       plaintiff may choose nonetheless to allege in the complaint that the

20       defendant has engaged in fraudulent conduct.  In some cases, the

21       plaintiff may allege a unified course of fraudulent conduct and rely

22       entirely on that course of conduct as the basis of a claim.  In that

23       event, the claim is said to be "grounded in fraud" or to "sound in

24       fraud," and the pleading of that claim as a whole must satisfy the

25       particularity requirement of Rule 9(b).

26 Vess, 317 F.3d at 1103-04 (internal citations omitted).  It is into this category MGA

27 contends that the allegations of criminal copyright claims fit, and MGA therefore

28 contends that all allegations regarding the criminal copyright claims must be

21

EXHIBIT C
PAGE 53

1   pleaded with particularity.

2        However, <u>Vess</u> sets up another category, lying closer to the Rule 8(a) part of

3   the spectrum (but nevertheless requiring pleading with some particularity):

4        In other cases, however, a plaintiff may choose not to allege a

5        unified course of fraudulent conduct in support of a claim, but rather

6        to allege some fraudulent and some non-fraudulent conduct.  In such

7        cases, only the allegations of fraud are subject to Rule 9(b)'s

8        heightened pleading requirements. . . . The rule does not require that

9        allegations supporting a claim be stated with particularity when those

10       allegations describe non-fraudulent conduct.

11       [In other words,] in a case where fraud is not an essential

12       element of a claim, only allegations ("averments") of fraudulent

13       conduct must satisfy the heightened pleading requirements of Rule

14       9(b).  Allegations of non-fraudulent conduct need satisfy only the

15       ordinary notice pleading standards of Rule 8(a).

16  <u>Id.</u> at 1104-05.

17       Whether fraud is an essential element of criminal copyright infringement

18  must be determined by reference to the statutory language and any interpretative

19  case law.  In relevant part, the prohibition against criminal copyright infringement

20  provides: "Any person who violates section 506(a) (relating to criminal offenses) of

21  title 17 shall be punished as provided [herein] in and such penalties shall be in

22  addition to any other provisions of title 17 or any other law."  18 U.S.C. § 2319.  In

23  turn, the relevant provision in 17 U.S.C. § 506 states that "[a]ny person who willfully

24  infringes a copyright shall be punished as provided under section 2319 of title 18, if

25  the infringement was committed . . . for purposes of commercial advantage or

26  private financial gain . . . ."  17 U.S.C. § 506(a)(1)(A).  The elements of the offense

27  are easily gleaned from the straightforward statutory language:  "Criminal

28  infringement of copyright has three elements: (1) infringement of a copyright

22

EXHIBIT  C
PAGE   54

1    (2) done wilfully (3) for purposes of commercial advantage or private financial gain."

2    United States v. Goss, 803 F.2d 638, 642 (11th Cir. 1986).

3        Clearly, fraud is not an essential element of a criminal copyright claim, taking

4    it out of the category at the far end of the spectrum described above, and

5    necessitating an inquiry into whether Mattel has chosen to incorporate a fraud

6    element into its criminal copyright claim. The AAC at ¶ 93(e) reveals that the

7    criminal copyright claim is premised upon the "willfull[] infringe[ment of] Mattel's

8    copyrights, including with respect to documents containing Mattel trade secret and

9    confidential information . . . ." The Opposition fills in more details regarding this

10   claim, noting that the criminal copyright claim is premised upon the Bratz-related

11   works, Bratz-derivative works, and works contained within Mattel's allegedly

12   purloined trade secrets and confidential information. (Mattel Opposition to MGA's

13   Motion at 5).

14       These allegations do not "allege a unified course of fraudulent conduct and

15   rely entirely on that course of conduct as the basis of a claim" such that the claim

16   could be said to "sound in fraud" and therefore require pleading with particularity as

17   to the entire claim. The allegations establish that much of the conduct complained

18   of consists of simple copying of the Bratz-related works or the creation of Bratz-

19   derivative works. Such allegations are unrelated to allegations of fraud. Therefore,

20   if this claim falls anywhere on the spectrum other than the Rule 8(a) category, it

21   falls in the category described by Vess as those claims in which a claimant chooses

22   to "allege some fraudulent and some non-fraudulent conduct." Id. at 1104.

23       When one considers that the alleged predicate acts of criminal copyright

24   infringement are but a small part of a larger, and singular, claim brought pursuant to

25   RICO, it is evident that the RICO claim falls neatly into the category of claims that

26   are based partly on fraudulent and partly on non-fraudulent conduct. The Court

27   has already found that certain fraudulent conduct -- that supporting the alleged

28   predicate acts of mail fraud and wire fraud -- is insufficiently pleaded. The current

EXHIBIT  c
PAGE  55

1   focus, however, is whether the allegations supporting the predicate acts of criminal

2   copyright infringement involve fraudulent conduct.

3         Here, there are two types of works allegedly infringed.  The first type is the

4   Bratz-related and Bratz-derivative works.  The second type is Mattel's other trade

5   secrets and confidential information.  Both types are alleged -- with particularity -- to

6   have been procured by MGA through fraudulent conduct, but the criminal copyright

7   infringement predicate acts do not implicate that fraudulent conduct.  Rather, they

8   implicate only questions of whether counter-defendants wilfully infringed Mattel's

9   works for commercial advantage or private financial gain.  Here, Mattel has

10  sufficiently alleged predicate acts of criminal copyright infringement by alleging that

11  MGA and other counter-defendants willfully infringed its copyrights for purposes of

12  gaining commercial advantage and private financial gain.  As Mattel correctly

13  contends, state of mind, in this instance willfulness, may be pleaded generally.  See

14  Ferguson Beauregard/Logic Controls v. Mega systems, LLC, 350 F.3d 1327, 1343

15  (Fed. Cir. 2003).

16        4.     Injury to Business or Property

17        "Recovery under RICO is limited to those injuries flowing from predicate

18  acts . . . ." Resolution Trust Corp. v. Keating, 186 F.3d 1110, 1117 (9th Cir. 1999)

19  (citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497 (1985)).  Here, Mattel

20  has alleged damages flowing from the alleged acts of racketeering activity.  (AAC

21  ¶ 96).  Damages easily flow from theft of trade secrets and confidential information

22  committed by a direct competitor and from infringement of copyrights that are

23  alleged to have been used to make millions -- if not billions -- of dollars.

24        Counter-defendants argue that Mattel lacks standing to sue on behalf of its

25  subsidiaries.  This issue arises because many of the allegations of the thefts of

26  trade secrets involve actions taken in Mexico or Canada by employees of Mattel's

27  foreign subsidiaries.  Mattel argues that it is not attempting to sue for damages

28  incurred by its subsidiaries; rather, Mattel alleges that much of the confidential

24

EXHIBIT  C
PAGE  56

1    information stolen by the employees of Mattel's subsidiaries belonged not to

2    Mattel's subsidiaries, but to Mattel itself.  Based on these allegations, Mattel may

3    sue for damages it sustained.  Mattel may not sue for damages incurred by its

4    foreign subsidiaries.

5         5.    **Ruling on Motions to Dismiss**

6         The Motions to Dismiss the RICO claims are **GRANTED** in part.  As set forth

7    herein, the alleged predicate acts of mail fraud and wire fraud are insufficiently

8    alleged, and Mattel is **GRANTED** leave to amend the AAC.

9    **C.    Trade Secrets**

10        MGA contends that Mattel has failed to plead its trade secrets with sufficient

11   particularity to comply with its duties under Cal. Code Civ. P. § 2019.210, which

12   provides:

13            In any action alleging the misappropriation of a trade secret

14        under the Uniform Trade Secrets Act . . . , before commencing

15        discovery relating to the trade secret, the party alleging the

16        misappropriation shall identify the trade secret with reasonable

17        particularity subject to any orders that may be appropriate under

18        Section 3426.5 of the Civil Code [involving in camera reviews and

19        sealing of court documents].

20   Id.  Based on the unambiguous language of the statute, the Court agrees with

21   Mattel's characterization of this requirement as one related to discovery rather than

22   related to pleading.

23        The Court also agrees that, by identifying documents in discovery by Bates-

24   stamp number, Mattel has complied with the dictates of § 2019.210.  See

25   Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal.App.4th 826, 835-36,

26   (2005) (internal quotation marks and citations omitted) ("[Reasonable particularity]

27   means that the plaintiff must make some showing that is reasonable, i.e., fair,

28   proper, just and rational[,] . . . under all of the circumstances to identify its alleged

                                        25

EXHIBIT  C
PAGE  57

1  trade secret in a manner that will allow the trial court to control the scope of

2  subsequent discovery, protect all parties' proprietary information, and allow them a

3  fair opportunity to prepare and present their best case or defense at a trial on the

4  merits.").  MGA's complaints regarding the volume of documents so identified, and

5  their skepticism of Mattel appropriately attaching such an identification to many of

6  those identified documents, are not properly addressed at this stage of the

7  proceedings.

8       The motion to dismiss the trade secrets claim on this basis is therefore

9  DENIED.

10  D.    **Duplicative State-Law Claims**

11      Bryant's motion to dismiss Mattel's duplicative state-law claims is **DENIED**.

12  The state-law counterclaims asserted against Bryant in the AAC admittedly overlap

13  with the claims asserted against him in the 04-9059 case, however, the factual

14  allegations underlying the claims asserted in the AAC are broader in scope than

15  those underlying the claims asserted in the 04-9059 case.

16                **IV. Motion to Dismiss for Lack of Personal Jurisdiction**

17      MGA Mexico challenges this Court's exercise of personal jurisdiction over it.

18  As set forth below, the Court concludes that it may, consistent with California law

19  and the federal Due Process Clause, exercise specific personal jurisdiction over

20  this admittedly foreign corporation.

21  A.    **The Constitutional Exercise of Personal Jurisdiction**

22      Where a party moves to dismiss a claim for lack of personal jurisdiction, the

23  party asserting the claim bears the burden of demonstrating that jurisdiction is

24  appropriate.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir.

25  2004).  However, in opposing a motion to dismiss for lack of personal jurisdiction,

26  the party asserting the claim need only make a *prima facie* showing of jurisdictional

27  facts.  Id.  Disputed facts are to be resolved in favor of the exercise of personal

28  jurisdiction.  Id.

                                        26

EXHIBIT _c_

PAGE _58_

1    Because there is no applicable federal statute governing personal

2    jurisdiction, the Court applies the law of the state in which the district court sits. Id.

3    (citations omitted). "Because California's long-arm jurisdictional statute is

4    coextensive with federal due process requirements, the jurisdictional analyses

5    under state law and federal due process are the same." Id. at 800-01 (citations

6    omitted).  In order for a court's exercise of personal jurisdiction over a nonresident

7    defendant to be constitutionally permissible, the defendant must have "minimum

8    contacts" with the forum state "such that the exercise of jurisdiction does not offend

9    traditional notions of fair play and substantial justice." Id. at 801 (internal quotation

10   marks and citation omitted).

11       Personal jurisdiction may be either general or specific.  For general personal

12   jurisdiction to apply, a defendant (or here, a counter-defendant) "must engage in

13   continuous and systematic general business contacts . . . that approximate a

14   physical presence in the forum state." Id. (internal quotation marks and citations

15   omitted).

16       To determine whether it has specific personal jurisdiction over a nonresident

17   defendant, the Court employs a three-part test:

18              (1) The non-resident defendant must purposefully direct his

19          activities or consummate some transaction with the forum or resident

20          thereof; or perform some act by which he purposefully avails himself

21          of the privilege of conducting activities in the forum, thereby invoking

22          the benefits and protections of its laws; (2) the claim must be one

23          which arises out of or relates to the defendant's forum-related

24          activities; and (3) the exercise of jurisdiction must comport with fair

25          play and substantial justice, i.e. it must be reasonable.

26   Id. at 802.

27       The party asserting the claim bears the burden of establishing the first two

28   parts of the test. Id.  If that party establishes the first two parts, then the burden

27

EXHIBIT C
PAGE 59

1   shifts to the party resisting the Court's exercise of personal jurisdiction "to present a

2   *compelling case* that the exercise of jurisdiction would not be reasonable." Id.

3   (emphasis added).

4        The first part of the test is satisfied by either "purposeful availment" or

5   "purposeful direction." Id. Purposeful availment is shown when a defendant avails

6   itself of the privilege of doing business in a forum state, usually met when the

7   defendant took some action in the forum, such as executing or performing a

8   contract there. Id. By virtue of such actions, a defendant "purposefully avails itself

9   of the privilege of conducting activities within the forum State, thus invoking the

10  benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

11  When taking advantage of these "benefits and protections," a defendant must also

12  "submit to the burdens of litigation in that forum." Burger King Corp. v. Rudzewicz,

13  471 U.S. 462, 476 (1985).

14        By contrast, purposeful direction, involves actions by the defendant outside

15  of the forum state but that are directed at the forum. Schwarzenegger, 374 F.3d at

16  803. The purposeful direction analysis is derived from a three-part "effects test"

17  that finds its roots in the Supreme Court's decision in Calder v. Jones, 465 U.S. 783

18  (1984). Pursuant to this analysis, the defendant must "have (1) committed an

19  intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

20  defendant knows is likely to be suffered in the forum state." Id.; Schwarzenegger,

21  374 F.3d at 803. All three parts of the test must be satisfied. The second part of

22  the effects test is described by the Ninth Circuit as the "express aiming"

23  requirement, and requires that the counter-defendants "expressly aimed" its

24  intentional act at California. See Schwarzenegger, 374 F.3d at 806. Specifically,

25  "express aiming" is found where the defendant is alleged to have engaged in

26  wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident

27  of the forum state." Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082,

28

EXHIBIT  c
PAGE  60

1087 (9th Cir. 2000).[5]

Assuming that the party asserting a claim can establish that the party resisting the Court's exercise of personal jurisdiction has met either the purposeful availment or express aiming part of the three-part test regarding the exercise of specific personal jurisdiction, courts next consider whether the claim arises out of or relates to the forum-related activities. In making this determination, the Court considers whether the contacts with the forum gave rise to the claims asserted, employing a "but for" standard. See Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001).

Once the purposeful availment/express aiming and relatedness requirements are established, the burden shifts to the party resisting the Court's exercise of jurisdiction to show that exercise of jurisdiction is unreasonable. In determining reasonableness, the Court considers seven factors:

1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.

---

[5] What constitutes, or doesn't constitute, "express aiming" is best illustrated by example. For instance, in Pebble Beach Co. v. Caddy, 453 F.3d 1151 (9th Cir. 2006), no express aiming was found where the owner of a bed-and-breakfast in England (overlooking a pebbly beach) used the term "pebblebeach," the name of a famous golf course located in California, on its web site. Id. at 1153, 1156-57. The Ninth Circuit acknowledged that it might be foreseeable that the defendant's use of the web site might have some effect on California, but noted that mere foreseeability of effect in a forum state is not enough to constitute express aiming. Id. at 1157. In contrast to Pebble Beach is the case of Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998), in which the Ninth Circuit found that the express aiming requirement was met where the defendant registered plaintiff's marks as Internet domain names in order to force a California plaintiff to pay him money.

29

EXHIBIT C
PAGE 61

1   Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991) (internal citation

2   omitted).  No factor is dispositive and the Court must balance all seven.  Id.

3   (internal citation omitted).

4   **B.**   **MGA Mexico's Contacts with the Forum State**

5         The AAC alleges that Issac Larian and other MGA officers, while in

6   California, executed a plot to target three high-level employees of Mattel Mexico,

7   and entice them to steal Mattel's trade secrets.  In written offers of employment to

8   these three individuals, Issac Larian held himself out to be the CEO of MGA

9   Mexico.  This plot was facilitated by a number of cross-border communications

10   among the participants as well as travel to the United States by the targeted

11   employees.

12   **C.**   **The Court May Exercise Personal Jurisdiction over MGA Mexico**

13         The AAC repeatedly alleges that Larian, who held himself out to be MGA

14   Mexico's CEO, and who was designated as MGA Mexico's "legal agent" in Mexican

15   registration document actively sought to induce others to access and steal Mattel's

16   trade secrets while located in the California.  See Velázquez Decl. Exs. A-C; Salem

17   Decl. Ex. B.  This constitutes purposeful availment.

18         To the extent that any of the actions taken in Mexico by the three Mexican

19   employees may be imputed to Mattel Mexico, there is also purposeful direction.

20   The alleged actions taken on behalf of MGA Mexico were specifically engineered to

21   result in the alleged illegal acquisition of trade secrets belonging to Mattel, a

22   California resident.[6]

23         The relatedness requirement is also clearly met.  The contacts with

24   California involve actions allegedly taken in order to further the illegal acquisition of

25   Mattel's trade secrets, leading to the present claims against MGA Mexico for

26   misappropriation of trade secrets and the related RICO claims.

27

28         [6] The AAC alleges the theft of trade secrets belonging not only to Mattel's Mexican subsidiary, but also to Mattel itself, which is a California corporation.

EXHIBIT _C_

PAGE _62_

1   The burden, therefore, is on MGA Mexico to show that the exercise of

2   jurisdiction is unreasonable.[7] As noted previously, the Court considers seven

3   factors. The first factor the Court considers is the defendant's purposeful

4   interjection. For the reasons the Court has found purposeful availment and

5   purposeful direction, this factor favors the exercise of personal jurisdiction.

6       MGA Mexico argues, without elaboration, that the burden of defending itself

7   in California is "significant." However, the assumption underlying this argument is

8   that the present action is more properly litigated by MGA's and Mattel's Mexican

9   subsidiaries. This assumption misses the point of Mattel's claim against MGA

10  Mexico; Mattel, the parent company, was itself injured by MGA's Mexico's alleged

11  misappropriation of its own trade secrets because the alleged misappropriation was

12  not limited to trade secrets belonging to its Mexican subsidiary. The argument

13  based on this faulty assumption is therefore unconvincing. In order to show

14  unreasonableness, the burden on the defendant must be great. See Panavision,

15  141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the

16  assessment of reasonableness, but unless the inconvenience is so great as to

17  constitute a deprivation of due process, it will not overcome clear justifications for

18  the exercise of jurisdiction.") (internal quotation marks and citation omitted).

19      As to the third and seventh factors, regarding conflicts of law and the

---

20      [7] In its reply, MGA Mexico declares that it "made a 'compelling case' in

21  support of its motion to dismiss that it would be unreasonable to force it to litigate

22  in this forum." MGA Mexico Reply at 10. However, MGA Mexico's motion papers

    fail to acknowledge that they bear the burden on this issue. See MGA Mexico's

23  Memorandum of Points and Authorities at 10 ("Finally, Mattel has failed to satisfy

    the third element required for specific jurisdiction — that the exercise of jurisdiction

24  over the defendant would be reasonable."). As Mattel accurately predicted in its

    opposition papers, MGA Mexico implicitly acknowledged its burden in the reply,

25  and used the occasion to improperly present additional arguments for the first

    time. Although the Court ordinarily would not consider such arguments, it does so

26  here because it does not change the Court's ultimate conclusion. See In re Intuit

    Privacy Litigation, 138 F.Supp.2d 1272, 1275 n.3 (C.D. Cal. 2001) ("this court

27  does not consider arguments raised anew for the first time in a reply brief as to do

28  so would unfairly deny the non-moving party an opportunity to respond.").

31

EXHIBIT _c_
PAGE _63_

1   existence of an alternative forum, MGA Mexico makes veiled references to the

2   criminal action in Mexico as constituting a choice of forum made by Mattel,

3   apparently implying that Mattel, having chosen to pursue criminal charges in

4   Mexico, should be precluded from invoking the power of this Court.  It appears to

5   the Court that MGA Mexico has failed to fully and clearly articulate this argument

6   because it is untenable.  Whether Mexican authorities pursue criminal charges

7   based on the same conduct underlying the claims in this action is irrelevant to

8   whether this Court may constitutionally exercise personal jurisdiction over MGA

9   Mexico.  Therefore, MGA Mexico's argument on this issue is unpersuasive.

10      The fourth factor, the interest in adjudicating the dispute, weighs in favor of

11  the exercise of personal jurisdiction, as does the sixth, the plaintiff's interest in

12  convenient and effective relief.

13      MGA Mexico argues that the fifth factor weighs in its favor when the Court

14  considers that the site of injury, which it does not believe is California, is the most

15  efficient forum.  However, this argument is premised on the rejected assumption

16  that the present action is more properly litigated between MGA's and Mattel's

17  Mexican subsidiaries.

18      On balance, a consideration of the reasonableness factors reveals that MGA

19  Mexico has fallen far short of establishing the "compelling case" necessary to

20  render the Court's exercise of personal jurisdiction unreasonable.

21      The Court concludes that Mattel has established the first two parts of the

22  specific personal jurisdiction test, and that MGA Mexico has failed to establish that

23  the Court's exercise of personal jurisdiction over it is otherwise unreasonable.

24  Accordingly, the Court **DENIES** MGA Mexico's motion to dismiss.

25                  **V. MGA's and Bryant's Motions Regarding**

26                  **the Discovery Master's March 7, 2007, Order**

27      MGA and Bryant seek review of a decision that resolved discovery disputes

28  that arose during Bryant's deposition, and that was rendered by the Court-

EXHIBIT _c_
PAGE _64_

1  appointed discovery master, Judge Edward A. Infante (Ret.), on March 7, 2007.

2  The Court's order appointing Judge Infante provides that his orders resolving

3  discovery disputes shall be reviewed in the same manner as those made by a

4  magistrate judge of this Court.

5       Pursuant to Fed. R. Civ. P. 72(a), when the parties object to the ruling of a

6  magistrate judge on a non-dispositive manner, such as a discovery dispute, the

7  district judge may modify or set aside only those portions of the magistrate judge's

8  order that are "clearly erroneous or contrary to law." Id.

9       The "clearly erroneous" language refers to factual findings. See e.g.,

10  Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension

11  Trust, 508 U.S. 602, 622 (1993) (discussing the clearly erroneous standard).  Here,

12  there were no explicit factual findings or legal conclusions made by Judge Infante

13  regarding the relevant rulings; therefore, the Court reviews the record presented to

14  Judge Infante to determine whether his rulings are contrary to law.  See March 7,

15  2007, Order.

16       Questions that do not seek the substance of attorney-client communications

17  generally do not implicate the attorney-client privilege.  United States v. Carrillo,16

18  F.3d 1046, 1050 (9th Cir. 1994) (finding no violation of the attorney-client privilege

19  where prosecutor, who asked whether a criminal defendant had consulted with his

20  attorney during a recess in order to raise an inference of attorney coaching of

21  testimony during the trial, stopped short of asking defendant the substance of

22  defendant's communications with his attorney).  Therefore, questions such as the

23  one addressed by objection No. 38, asking whether Bryant talked to counsel for

24  MGA during a break from his deposition, are not subject to objection based on the

25  attorney-client privilege.  This conclusion is consistent with Judge Infante's Order.

26       Mattel's question regarding who is paying Bryant's legal fees, addressed by

27  objection No. 42, is likewise not objectionable.  MGA and Bryant argue that state

28  law applies; however, because the present consolidated actions involve both

33

EXHIBIT C
PAGE 65

RightFAX          6/2  2007 3:04    PAGE 035/037   ax Server

1   federal and state-law claims, the federal law of privilege applies. Agster v.

2   Maricopa County, 422 F.3d 836, 839-40 (9th Cir. 2005) ("Where there are federal

3   question claims and pendent state law claims present, the federal law of privilege

4   applies."). To that end, consistent with federal privilege law, fee-payment

5   arrangements are relevant to credibility and bias, and if asked in discovery, Bryant

6   must disclose who is paying his legal fees. See United States v. Blackman, 72 F.3d

7   1418, 1424 (9th Cir. 1995) ("As a general rule, client identity and the nature of the

8   fee arrangement between attorney and client are not protected from disclosure by

9   the attorney-client privilege."). This conclusion is also consistent with Judge

10  Infante's Order.

11      However, in this case, the joint-defense privilege protects from disclosure the

12  substance of certain statements made by Bryant and his attorneys in the presence

13  of attorneys representing MGA. "The joint defense privilege protects

14  communications between an individual and an attorney for another when the

15  communications are 'part of an on-going and joint effort to set up a common

16  defense strategy.'" United States v. Bay State Ambulance and Hosp. Rental

17  Service, Inc., 874 F.2d 20, 28 (1st Cir. 1989) (internal quotation marks and citation

18  omitted). Generally, to rely on the joint-defense privilege, a party must establish

19  three elements: "(1) [T]he communications were made in the course of a joint

20  defense effort, (2) the statements were designed to further the effort, and (3) the

21  privilege has not been waived." Id.

22      The Court finds the first element was met. The Court, based on its review of

23  the record pending before Judge Infante, is satisfied that the parties had in place at

24  the time of Bryant's deposition, and have in place today, a valid joint-defense

25  agreement. The Court also finds that the second element was met. Mattel cannot

26  seriously contend that MGA's interests are not aligned with Bryant's in this action,

27  or that counsels' thorough preparation of Bryant for his deposition was not designed

28  to further the joint defense effort. Finally, as for the third element, there is no

34

EXHIBIT  c
PAGE 66

suggestion in the record that any party has waived the attorney-client privilege.

Accordingly, the Court holds that Judge Infante's rulings on Objection Nos. 39 and 50 are contrary to law to the extent those rulings require Bryant to divulge the substance of his communications with counsel for MGA.

### VII. Conclusion

In the manner set forth more fully herein, the Court makes the following rulings:

1.      Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189): **GRANTED IN PART AND DENIED IN PART.**

2.      Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and XI (docket # 191): **GRANTED IN PART AND DENIED IN PART.**

3.      Motion of MGA Mexico to Dismiss Mattel's Amended Answer and Counterclaims (docket # 266): **DENIED.**

4.      Motion of MGA Objecting to Discovery Master's March 7, 2007, Order (docket # 308): **GRANTED IN PART AND DENIED IN PART.**

5.      Motion of Carter Bryant Objecting to Discovery Master's March 7, 2007, Order (docket # 306): **GRANTED IN PART AND DENIED IN PART.**

Mattel is **GRANTED** ten days' leave to amend the AAC in conformity with this Order. The Counter-defendants shall answer or otherwise respond to the SAAC no later than thirty days after the filing of the SAAC.

EXHIBIT _C_
PAGE _67_

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Motion Re Trial Structure (docket #462) has been the subject of further briefing by the parties and is set for further oral argument on July 2, 2007. Ruling on that matter is **DEFERRED** pending oral argument.

DATE: June 27, 2007

*S G Larson*

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE

36

EXHIBIT __C__
PAGE __68__

Exhibit D

# BINGHΛM

Peter N. Villar
Direct Phone: 714.830.0640
Direct Fax:   714.830.0719
peter.villar@bingham.com
Our File No.:  0000337036

February 24, 2009

**Via U.S. Mail and Email**

Jon D. Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543

**Re:   Carter Bryant v. Mattel, Inc., Case No. CV 04-9049 SGL**

Dear Jon:

I am in receipt of your February 23 letter and your subsequent email correspondence in response to my February 20 letter concerning the subpoena issued by Mattel, Inc. to our law firm, Bingham McCutchen LLP.

We clearly have different views regarding the appropriateness of your subpoena and your approach to third party discovery.  Since you have refused to withdraw your subpoena, I asked if you would be willing to meet with us in person at our office in Costa Mesa either today or tomorrow to discuss and try to resolve these issues prior to filing a motion to quash the subpoena.  Rather than accepting my invitation, you have asked us to meet and confer "in advance of a contemplated motion to compel and for sanctions" in Los Angeles.

We have several problems with your approach.  First, your anticipated motion to compel is premature as our response to the subpoena is not due until February 26.  It makes no sense to meet and confer regarding a motion to compel before we respond to the subpoena.  The purpose of my letter was to meet in an attempt to obviate a motion to quash which must be filed on or before the due date.  Second, we asked you to meet with us at our office located in Costa Mesa.  Your proposal that we meet with one of your partners (who has had no prior involvement in the discovery disputes involving our firm or our clients) in Los Angeles is unacceptable.  Given that you issued the subpoena, we are a non-party, and we asked for the meeting in our office, we expect that you would show us the courtesy to accept our invitation without conditions.  If you and/or Mr. Zeller are not available today or tomorrow, we can extend the subpoena response date and set up a meeting at your convenience.

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Plaza Tower, 18th Floor
600 Anton Boulevard
Costa Mesa, CA
92626-1924

T 714.830.0600
F 714.830.0700
bingham.com

A/72854975.1

EXHIBIT _D_
PAGE _69_

Jon D. Corey, Esq.
February 24, 2009
Page 2

Please let us know as soon as possible when and if you are willing to meet with us at our office regarding the subpoena.

Sincerely,

Peter N. Villar

PNV/bjn

cc:     Todd E. Gordinier, Esq.

EXHIBIT  _D_
PAGE _70_

Exhibit E

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8               UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

12  CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
13              Plaintiff,

14        v.                               Consolidated with
                                           Case No. CV 04-09059
15  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16              Defendant.                 ORDER GRANTING MGA'S MOTION
                                           TO QUASH MATTEL'S SUBPOENA
17                                         TO BANK OF AMERICA

18  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
19  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
20

21                     I. INTRODUCTION

22        On January 29, 2008, MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK)

23  Limited, and MGAE de Mexico S.R.L. de C.V. (collectively "MGA") submitted a "Motion to

24  Quash Subpoena to Bank of America or, in the Alternative, For Protective Order." On February

25  7, 2008, Mattel, Inc. ("Mattel") submitted an opposition, and on February 15, 2008, MGA

26  submitted a reply. The parties were directed to meet and confer further regarding the motion,

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                              1

1  which has been completed. See Joint Report dated March 28, 2008. Pursuant to Paragraph 5 of

2  the Stipulation and Order for Appointment of a Discovery Master, the Discovery Master finds it

3  appropriate to take the motion under submission for decision without oral argument.

II. BACKGROUND

5      On January 18, 2008, Mattel served a subpoena for documents on Bank of America. The

6  return date was January 28, 2008–the Phase I discovery cut-off. The subpoena contained four

7  requests:

8      (1) All DOCUMENTS REFERRING OR RELATING TO ISAAC LARIAN from

9      January 1, 1999 to the present, inclusive.

10     (2) All DOCUMENTS REFERRING OR RELATING TO any ACCOUNTS

11     maintained by YOU that are in the name of, for the benefit of or concern ISAAC

12     LARIAN, including but not limited to statements, monthly statements, annual

13     statements, daily transaction history reports, monthly transaction history reports,

14     deposit reports, deposit slips, canceled checks, signature cards, and

15     COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNTS,

16     created between January 1, 1999 and the present, inclusive.

17     (3) DOCUMENTS sufficient to show the account number of all ACCOUNTS

18     maintained by YOU in the name of, for the benefit of or concerning ISAAC

19     LARIAN between January 1, 1999 and the present, inclusive.

20     (4) All DOCUMENTS showing or relating to any ACCOUNTS held by ISAAC

21     LARIAN or any ACCOUNTS on which ISAAC LARIAN has signatory authority

22     at any other financial institution.

23  Miller Decl., Ex. 1. The subpoena defines "ISAAC LARIAN" to include Mr. Larian and "all of

24  his . . . relatives (whether by blood or by marriage)." Id.

25      On the evening of Thursday, January 24, 2008, Mattel served notice of the subpoena on

26  MGA. MGA served objections on Mattel and Bank of America on January 27, 2008. MGA also

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

1    attempted to contact Bank of America, but was unable to speak with the Bank representative

2    responsible for handling the subpoena until the afternoon of January 28, 2008.

3         MGA contends that the subpoena to Bank of America should be quashed for two reasons.

4    First, MGA contends that the subpoena is overly broad and seeks documents that are irrelevant or

5    are unreasonably duplicative or cumulative of discovery already obtained by Mattel.  Second,

6    MGA contends that Mattel failed to give notice of the subpoena prior to its service, in violation of

7    Rule 45(b)(1), Fed.R.Civ.P.

8         Mattel contends that the documents it seeks are relevant to several issues including, *inter*

9    *alia*, Mattel's entitlement to the remedy of disgorgement, to assess Mr. Larian's net worth for

10   purposes of punitive damages, as well as to support Mattel's claims for commercial bribery and to

11   show bias.  Mattel also contends that it is entitled to the subpoenaed documents because of

12   legitimate concerns of spoliation and document tampering.  Mattel further contends that the

13   subpoenaed documents are not cumulative of other discovery because neither MGA nor Mr.

14   Larian has produced the financial records Mattel presently seeks from Bank of America.

15        Mattel also contends that MGA's burden and overbreadth objections are meritless because

16   Bank of America has not made any objections to the subpoena, and instead has represented that it

17   is prepared to produce responsive documents.  Lastly, Mattel contends that MGA's lack of notice

18   objection is disingenuous because MGA has repeatedly subpoenaed third parties without

19   providing notice, and that moreover, MGA has not been prejudiced.

20                                  III. STANDARDS

21        Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

22   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

23   party."  Fed.R.Civ.P. 26(b)(1).  The court shall, however, limit the frequency or extent of use of

24   the discovery methods if the court determines that (i) the discovery sought is unreasonably

25   cumulative or duplicative, or is obtainable from some other source that is more convenient, less

26   burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by

27

28
     Bryant v. Mattel, Inc.,                                          3
     CV-04-09049 SGL (RNBx)

1   discovery in the action to obtain the information sought; or (iii) the burden or expense of the

2   proposed discovery outweighs its likely benefit, taking into account the needs of the case, the

3   amount in controversy, the parties' resources, the importance of the issues at stake in the

4   litigation, and the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P.

5   26(b)(2)(C).

6          Rule 45 of the Federal Rules of Civil Procedure governs the use of subpoenas. "If the

7   subpoena commands the production of documents, electronically stored information, or tangible

8   things or the inspection of premises before trial, then before it is served, a notice must be served

9   on each party." Fed.R.Civ.P. 45(b)(1). A third party served with a subpoena for documents must

10  produce documents (and reasonably accessible electronically stored information) that are

11  responsive to the subpoena. Fed.R.Civ.P. 45 (b), (d). If the subpoenaed documents are relevant

12  and there is good cause for their production, the subpoena is enforced unless the documents are

13  privileged or the subpoena is unreasonable, oppressive, annoying or embarrassing. U.S. v.

14  American Optical Co., 39 F.R.D. 580, 583 (N.D. Cal. 1966).

15         Rule 45(c)(1), Fed.R.Civ.P., provides that "[a] party or attorney responsible for issuing

16  and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on

17  a person subject to the subpoena." Furthermore, "[t]he issuing court must enforce this duty and

18  impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--

19  on a party or attorney who fails to comply." Id.

20         Rule 45 also provides that the issuing court must quash or modify a subpoena under

21  certain circumstances, including among others, when the subpoena requires the disclosure of

22  privileged or other protected matter or subjects a person to undue burden. Fed.R.Civ.P.

23  45(c)(3)(A)(iii) and (iv). A motion to quash a subpoena or for a protective order as to that

24  subpoena may be made by a party-opponent. See Moon v. SCP Pool Corp., 232 F.R.D. 633, 636

25  (C.D. Cal. 2005) (granting defendants' motion to quash subpoena).

26

27

28

1    In evaluating whether a subpoena imposes an undue burden, Rule 45(c)(3)(A),

2    Fed.R.Civ.P., "'requires the court to weigh the burden to the subpoenaed party against the value of

3    the information to the serving party,' . . . and in particular requires the court to consider: 'such

4    factors as relevance, the need of the party for the documents, the breadth of the document request,

5    the time period covered by it, the particularity with which the documents are described and the

6    burden imposed.'" Moon, 232 F.R.D. at 637, quoting Travelers Indem. Co. v. Metropolitan Life

7    Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005). Another important factor in evaluating burden is

8    whether the subpoenaing party "can more easily and inexpensively obtain the documents from

9    [another party], rather than from [the] nonparty." Moon, 232 F.R.D. at 638. See also Lectrolarm

10   Custom Sys. v. Pelco Sales, 212 F.R.D. 567, 573 (E.D. Cal. 2002) (protective order granted where

11   plaintiff subpoenaed non-party for documents that plaintiff had sought from defendant because

12   the "burden and harassing nature of the requests clearly outweigh[ed] the minimal need for the

13   very limited amount of information that could be discovered under the subpoenas.").

## IV. DISCUSSION

15   Although the Bank of America subpoena encompasses documents that are potentially

16   relevant to Mattel's claims and several issues in the case, the subpoena is nevertheless

17   unreasonable because it is overbroad. The requests are not limited by subject matter to Bratz,

18   MGA or any other relevant issue in the case. Rather, the subpoena calls for nine years' worth of

19   financial documents, including statements, monthly statements, annual statements, daily

20   transaction history reports, monthly transaction history reports, deposit reports, deposit slips,

21   canceled checks and signature cards. The production of documents responsive to such overly

22   broad requests would likely sweep in many sensitive and personal financial documents having

23   little to no relevance to the case.

24   Furthermore, the subpoena intrudes upon Mr. Larian's privacy rights as recognized under

25   the California Constitution. Mattel has not adequately demonstrated the relevance of all of the

26

27

28

1    documents falling within the scope of its expansive subpoena to overcome the privacy protections

2    afforded to Mr. Larian's personal financial information.

3         The subpoena is also overbroad in seeking financial information regarding all of Mr.

4    Larian's relatives. Mattel has broadly defined "ISAAC LARIAN" to include Mr. Larian and "all

5    of his . . . relatives (whether by blood or marriage)." Miller Decl., Ex. 1. Thus, Mattel's subpoena

6    essentially requires production of every document from 1999 to the present that Bank of America

7    possesses relating to Mr. Larian, his wife, his children, and every other family member, in-law or

8    other relative.

9         Mattel's subpoena is also objectionable insofar as it seeks financial information that Mattel

10   has already sought and received in this case. MGA represents that Mr. Larian recently produced

11   nearly 50,000 pages of documents, which included, among other things, documents showing his

12   net worth; his gross income, wages, dividend income, interest income, and other income; his

13   banks and bank accounts; and various other financial documents. Miller Decl., ¶10[1]; see also

14   Park Decl. Mattel has also had an opportunity to depose Mr. Larian and MGA about relevant

15   financial information. In light of the financial information Mattel has already sought and obtained

16   throughout the course of this litigation, the subpoena to Bank of America is unjustified, taking

17   into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

18        In addition to the reasons discussed above, the subpoena is also objectionable because

19   Mattel failed to comply with Rule 45(b)(1), Fed.R.Civ.P. Mattel served the subpoena on Bank of

20   America on January 18, 2008, but failed to serve notice of the subpoena on MGA until Thursday,

21   January 24, 2008. Thus, Mattel clearly violated the notice requirement of Rule 45(b)(1),

22   Fed.R.Civ.P.

23        Mattel attempts to defend its subpoena by pointing out that MGA has repeatedly

24   subpoenaed parties without providing prior notice to Mattel. Even if that is true, it does not

25

26        [1] Mattel's Evidentiary Objections to the Miller Declaration based upon lack of personal knowledge and
     hearsay are overruled.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

1   excuse Mattel from complying with the notice requirement of Rule 45(b)(1).  Moreover, Mattel

2   has never sought redress for MGA's alleged violations of Rule 45(b)(1).  Mattel also contends that

3   the lack of prior notice did not prejudice MGA, as evidenced by MGA's ability to bring the instant

4   motion, and therefore there is no basis to quash the subpoena.  Contrary to Mattel's assertion,

5   however, the lack of notice obviously hindered MGA's ability to communicate with Bank of

6   America before the return date of the subpoena, and prevented any opportunity for the parties to

7   meet and confer in order to reach a resolution.

8                               V. CONCLUSION

9          For the reasons set forth above, MGA's motion is granted.  Pursuant to Paragraph 6 of the

10  Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the

11  Clerk of Court forthwith.

12

13  Dated: May 6, 2008                              /S/

14                                     HON. EDWARD A. INFANTE (Ret.)
                                            Discovery Master

15

16

17

18

19

20

21

22

23

24

25

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                                        7

EXHIBIT *E*
PAGE 77

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 7, 2008, I served the attached ORDER GRANTING MGA's MOTION TO QUASH MATTEL'S SUBPOENA TO BANK OF AMERICA in the within action by email addressed as follows:

| Name | Firm | Email |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on  May 7, 2008, at San Francisco, California.

Anthony Sales

**EXHIBIT** _E_

**PAGE** _78_

Exhibit F

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8                UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

12                                    CASE NO. CV 04-09049 SGL (RNBx)
   CARTER BRYANT, an individual,      JAMS Reference No. 1100049530
13
                Plaintiff,
14
          v.                          Consolidated with
15                                    Case No. CV 04-09059
   MATTEL, INC., a Delaware corporation,   Case No. CV 05-2727
16
                Defendant.             ORDER GRANTING IN PART AND
17                                     DENYING IN PART MGA PARTIES'
                                       MOTION TO QUASH SUBPOENAS;
18                                     GRANTING IN PART AND DENYING
                                       IN PART MATTEL'S COUNTER
19                                     MOTION TO COMPEL
   CONSOLIDATED WITH
20 MATTEL, INC. v. BRYANT and
   MGA ENTERTAINMENT, INC. v. MATTEL,
21 INC.

22

23                       I. INTRODUCTION

24      On December 21, 2007, MGA Entertainment, Inc. ("MGA"), Isaac Larian, MGA

25 Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively, the "MGA

26 Parties") submitted their motion for an order quashing subpoenas issued by Mattel, Inc.

27 ("Mattel") to non-parties ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and

28
   Bryant v. Mattel, Inc.,                                                    1
   CV-04-09049 SGL (RNBx)

EXHIBIT _F_
PAGE _79_

1   Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells

2   Fargo, or in the alternative, a protective order limiting the scope of those subpoenas. On

3   December 27, 2007, the MGA Parties submitted a supplemental brief to add to their motion to

4   quash three more subpoenas Mattel served on the Isaac E. Larian Qualified Annuity Trust 2004,

5   the Isaac and Angela Larian Family Trust, and the Isaac and Angela Larian Trust. On January 18,

6   2008, Mattel submitted an opposition and counter motion to compel production of documents

7   responsive to the subpoenas and a privilege log. On February 7, 2008, the MGA Parties

8   submitted a reply, and on February 15, 2008, Mattel submitted a reply in support of its counter

9   motion. The parties were directed to meet and confer further regarding the motions, which has

10   been completed. See Joint Report dated March 28, 2008. Despite the additional meet and confer

11   sessions, the parties were unable to resolve or narrow their disputes regarding the instant motions.

12   Pursuant to Paragraph 5 of the Stipulation and Order for Appointment of a Discovery Master, the

13   Discovery Master finds it appropriate to take the motions under submission for decision without

14   oral argument.

15                                   II. BACKGROUND

16        Ernst & Young and Deloitte & Touche are MGA's auditors. Mattel's subpoenas to MGA's

17   auditors seek production of documents: (1) relating to MGA's annual audits and the identity of

18   other auditors; (2) indicating or calculating MGA's net worth and the value of MGA's goodwill

19   and intellectual property; (3) relating to Bratz; and (4) relating to the legal dispute between Isaac

20   and Farhad Larian.

21        Wachovia lent money to MGA to fund the creation and/or development of Bratz and to

22   acquire Little Tikes. Mattel's subpoena to Wachovia seeks documents related to: (1) the loans

23   Wachovia extended to MGA; (2) the legal dispute between Isaac and Farhad Larian; (3) MGA's

24   net worth, goodwill, and intellectual property; (4) Bratz; and (5) this action.

25        ConsumerQuest is a marketing research firm that performed market research and analysis

26   for MGA products, including Bratz. Mattel's subpoena to ConsumerQuest seeks documents

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                                2

1  related to: (1) Bratz and other products involved in this action; (2) consumer research and

2  marketing work done regarding other MGA products underlying the parties' claims; and (3)

3  communications with MGA, Isaac Larian, and other parties relevant to this action, such as Carter

4  Bryant or other former Mattel employees and vendors.

5       Wells Fargo is and has been MGA's bank during periods relevant to this action. Mattel's

6  subpoena to Wells Fargo contains five requests, seeking MGA's banking and financial documents,

7  including account information, cancelled checks, monthly and daily transactional history, and

8  bank statements.

9       Moss Adams is and has been Isaac Larian's accountant during the relevant period. The

10  subpoena to Moss Adams seeks: (1) accounting records, tax records, and schedules for MGA,

11  Isaac Larian, Isaac Larian's trusts and Farhad Larian; (2) documents indicating or calculating

12  MGA's and Isaac Larian's net worth; (3) documents relating to the value of MGA's intellectual

13  property and goodwill; (4) documents relating to Bratz and this action; (5) evidence of payments

14  from MGA or Isaac Larian to Bryant and other Mattel employees; and (6) Isaac Larian's

15  involvement with other trust or institutions in which he has an interest.

16       Mattel also served subpoenas on several of Isaac Larian's trusts. Mattel's subpoenas to

17  Isaac Larian's trusts seek: (1) documents related to the trusts' organization, including the

18  identities of its trustees and beneficiaries; (2) the trusts' tax records; (3) documents indicating the

19  trusts' assets; and (4) information related to other trusts in which Larian has an interest.

20       All of the non-parties objected to Mattel's subpoenas on the grounds that, *inter alia*, they

21  are overly broad, unduly burdensome and seek irrelevant and/or duplicative information. Park

22  Decl., Exs. 15-26.

23       The MGA Parties contend that Mattel's subpoenas are overly broad, unduly burdensome,

24  and cumulative and duplicative of discovery Mattel has already sought and received. More

25  specifically, the MGA Parties raise the following objections to each of the four categories of

26  documents Mattel seeks. First, the MGA Parties contend that Mattel's subpoenas essentially seek

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

1   unfettered access to MGA and Isaac Larian's financial histories for a nine-year period from 1999

2   to the present, and that there is no claim or defense at issue that could possibly justify the breadth

3   and intrusiveness of the subpoenas.  Further, the MGA parties contend that they have already

4   produced vast amounts of relevant financial documents in response to Mattel's discovery requests.

5   To make their point, the MGA Parties prepared a detailed chart that identifies Mattel's subpoenas

6   requests to the non-parties and for each such request, identifies an exemplary list of duplicative

7   document requests and/or interrogatories that Mattel served on Carter Bryant and/or the MGA

8   Parties.  See Decl. of Amy Park in Support of MGA Defendants' Motion to Quash, Ex. 28.

9          Second, the MGA Parties contend that Mattel's subpoenas are overbroad in that they call

10  for production of the financial records of every person who ever did any work for MGA or Isaac

11  Larian, and every conceivable relative of Isaac Larian.  The MGA Parties contend that the private

12  financial records of these non-parties are not relevant to the case, and that Mattel's subpoenas

13  constitute an abuse of the non-party discovery process.

14         Third, the MGA Parties contend that Mattel has already sought and received documents

15  relating to the litigation between Isaac Larian and his brother Farhad Larian from multiple

16  sources.  More specifically, the MGA Parties contend that Mattel has sought and received

17  relevant documents from Isaac and Farhad Larian, as well as MGA and at least two law firms

18  involved in the litigation between the Larian brothers.

19         Fourth, the MGA Parties object to the various requests for all documents obtained from

20  MGA or Isaac Larian relating to Bratz, other MGA products or Carter Bryant.  Although the

21  MGA Parties acknowledge that some of the requested documents may be relevant, the MGA

22  Parties contend that the document requests are objectionable because Mattel has already requested

23  and received well over three million pages of relevant documents from the MGA Parties.  The

24  MGA Parties also contend that Mattel's requests are so overly broad that it is impossible to

25  discern what specific, relevant, non-duplicative documents Mattel is requesting from the non-

26  parties.

27

28

1    In contrast, Mattel contends that all of the subpoenas seek documents that are relevant to

2    several issues in the case, including, but not limited to, the creation and development of Bratz,

3    Mattel's damages claim (including Mattel's claims for punitive damages and disgorgement),

4    Mattel's claim against MGA for commercial bribery, MGA's damages claims, the value of MGA's

5    goodwill and intellectual property, and the credibility and bias of MGA and Isaac Larian, as well

6    as other potential witnesses.  Mattel contends that it should be permitted to pursue discovery from

7    non-parties, and not have to rely upon the good faith of MGA and Isaac Larian to comply with

8    their discovery obligations.  Mattel also contends that it should be permitted to pursue discovery

9    from the non-parties in order to guard against the possibility of spoliation of evidence and/or

10   document tampering.

11    Furthermore, Mattel contends that the MGA Parties have not shown that they possess,

12   much less have produced, all of the documents Mattel is seeking from the non-parties.  More

13   specifically, Mattel contends that the MGA Parties have failed to produce the following

14   documents that Mattel has requested from the various non-parties:  documents related to Isaac

15   Larian's net worth and the value of MGA's intellectual property and goodwill; MGA's tax records;

16   Wells Fargo banking records for MGA; documents related to payments to by MGA, Larian, or the

17   Larian trusts to Bryant and other Mattel employees and vendors; documents from the Larian v.

18   Larian litigation; documents related to the Larian trusts, including any documents showing Isaac

19   Larian's interest in, payments received from, or transfer to those trusts; and documents regarding

20   the 1999-2000 and 2006 loans MGA received from Wachovia, including what documents MGA

21   and Larian gave to Wachovia to justify the loans.  Furthermore, Mattel contends that MGA's

22   descriptions of the documents it has produced are vague, inaccurate or misleading.

23    Mattel also contends that the MGA Parties' burden objection is unsubstantiated in that

24   none of the subpoenaed parties has filed a declaration in opposition to the motion or offered any

25   specific evidence that the subpoenas impose an undue burden.  Rather, Mattel represents that

26   some of the subpoenaed parties were already in the process of preparing documents for

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

1   production or meeting and conferring with Mattel when MGA filed the instant motion.  Corey

2   Decl., ¶¶7-9.  Furthermore, Mattel points out that it has offered to reimburse the non-parties for

3   copying costs and to have its own paralegal and counsel inspect documents gathered.

4                                    III. STANDARDS

5         Rule 26, Fed.R.Civ.P., provides that "[p]arties may obtain discovery regarding any matter,

6   not privileged, that is relevant to the claim or defense of any party."  Fed.R.Civ.P. 26(b)(1).  The

7   court shall, however, limit the frequency or extent of use of the discovery methods if the court

8   determines that (i) the discovery sought is unreasonably cumulative or duplicative, or is

9   obtainable from some other source that is more convenient, less burdensome, or less expensive;

10  (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

11  information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

12  benefit, taking into account the needs of the case, the amount in controversy, the parties'

13  resources, the importance of the issues at stake in the litigation, and the importance of the

14  proposed discovery in resolving the issues.  Fed.R.Civ.P. 26(b)(2)(C).

15        Rule 45, Fed.R.Civ.P., requires third parties to produce documents (and reasonably

16  accessible electronically stored information) that are responsive to a subpoena that a party serves

17  on them.  Fed.R.Civ.P. 45(b), (d).  If the subpoenaed documents are relevant and there is good

18  cause for their production, the subpoena is enforced unless the documents are privileged or the

19  subpoena is unreasonable, oppressive, annoying or embarrassing.  U.S. v. American Optical Co.,

20  39 F.R.D. 580, 583 (N.D. Cal. 1966).

21        Rule 45(c)(1), Fed.R.Civ.P., requires a party serving a subpoena to take reasonable steps

22  to avoid imposing undue burden or expense on a person subject to the subpoena.  Furthermore,

23  "[t]he issuing court must enforce this duty and impose an appropriate sanction--which may

24  include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply."

25  Id.  Rule 45 also provides that the issuing court must quash or modify a subpoena under certain

26  circumstances, including among others, when the subpoena requires the disclosure of privileged

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                          6

1   or other protected matter or subjects a person to undue burden.  Fed.R.Civ.P. 45(c)(3)(A)(iii) and

2   (iv).  A motion to quash a subpoena or for a protective order as to that subpoena may be made by

3   a party-opponent.  See Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C. D. Cal. 2005) (granting

4   defendants' motion to quash subpoena).

5           In evaluating whether a subpoena imposes an undue burden, Rule 45(c)(3)(A),

6   Fed.R.Civ.P., "'requires the court to weigh the burden to the subpoenaed party against the value of

7   the information to the serving party,' . . . and in particular requires the court to consider: 'such

8   factors as relevance, the need of the party for the documents, the breadth of the document request,

9   the time period covered by it, the particularity with which the documents are described and the

10  burden imposed.'"  Moon, 232 F.R.D. at 637, quoting Travelers Indem. Co. v. Metropolitan Life

11  Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005).  Another important factor in evaluating burden is

12  whether the subpoenaing party can more easily and inexpensively obtain the documents from

13  another party, rather than from the nonparty.  Moon, 232 F.R.D. at 638.

14                              IV. DISCUSSION

15  A. Financial Information re MGA and Isaac Larian

16          Mattel has subpoenaed five different entities that perform financial services for MGA or

17  Isaac Larian:  Wells Fargo, Wachovia, Ernst & Young, Deloitte & Touche and Moss Adams.

18  Although Mattel's requests encompass documents that are relevant to several issues in the case,

19  the requests are unduly burdensome, exceedingly overbroad and unreasonably cumulative of

20  other discovery Mattel has already sought and received in this case.

21          For example, the subpoena to Wells Fargo demands production of the following broad

22  categories of financial documents: (1) "[a]ll DOCUMENTS REFERRING OR RELATING TO

23  MGA from January 1, 1999 to the present, inclusive"; (2) "[a]ll DOCUMENTS REFERRING OR

24  RELATING TO the ACCOUNT maintained by YOU numbered 9600112551, including but not

25  limited to statements, monthly statements, annual statements, daily transaction history reports,

26  monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature

27

28

EXHIBIT  E
PAGE  85

1   cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNT, created

2   between January 1, 1999 and the present, inclusive"; (3) "[a]ll DOCUMENTS REFERRING OR

3   RELATING TO" any other accounts created between January 1, 1999 and the present, inclusive;

4   (4) DOCUMENTS sufficient to show the account number for all accounts maintained in the name

5   of, for the benefit of or concerning MGA between January 1, 1999 and the present, inclusive; (5)

6   and "[a]ll DOCUMENTS showing or relating to any account(s) held by MGA or any account(s)

7   on which MGA has signatory authority at any other financial institution."

8          The breadth of the requests to Wells Fargo is compounded by the fact that "MGA" is

9   defined to include MGA Entertainment Inc., any of its current or former employees, officers,

10  directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates,

11  predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf.

12  Furthermore, the phrase "REFERRING OR RELATING TO" is defined expansively as

13  "reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing

14  or indicating in any way." Park Decl., Ex. 11.

15         The subpoena to Isaac Larian's tax accounting firm, Moss Adams, is similarly overbroad.

16  For example, Mattel seeks "[a]ll DOCUMENTS RELATING TO MGA [and] ISAAC LARIAN,

17  including without limitation, accounting records, tax returns and schedules . . . and drafts thereof,

18  W-2s, work papers, worksheets, payroll records, financial statements (audited and unaudited), pro

19  formas, budgets, account information and account statements." Park Decl., Ex. 12.  The phrase

20  "RELATING TO" in the subpoena to Moss Adams is drafted in the broadest possible manner to

21  include "referencing, referring to, constituting, evidencing, pertaining to, mentioning, supporting,

22  contradicting, negating, bearing on, touching on, containing, embodying, reflecting, identifying,

23  stating, dealing with, concerning, commenting on, summarizing, responding to, relating to,

24  describing or discussing in any way." Id.  As another example, Mattel's subpoena to Moss Adams

25  includes a request for all documents relating to any non-payroll payment or transfer of value from

26  MGA or Isaac Larian to any "FORMER MATTEL EMPLOYEE."  Mattel does not identify any

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT _F_
PAGE _86_

1   of these "FORMER MATTEL EMPLOYEES" or otherwise limit the request to any specific time

2   period.

3         The subpoenas to Deloitte & Touch and Ernst & Young are similarly unrestrained in

4   scope, seeking the following categories of financial documents:  all documents constituting or

5   relating to MGA's annual audits, including without limitation accounting records, audit programs,

6   audit reports and drafts thereof, tax returns, work papers, worksheets, payroll records, financial

7   projections, pro formas and budgets, from the period beginning January 1, 1999 to the present; all

8   documents indicating or calculating MGA's net worth; and all documents indicating the value of

9   MGA's intellectual property or goodwill.  Park Decl., Exs. 7-8.

10         With respect to Wachovia, Mattel seeks the following categories of financial documents:

11   all documents relating to any loan agreement that Wachovia entered into with MGA since January

12   1, 1999, including drafts of any agreements; all documents that MGA or any other person

13   provided to Wachovia for purposes of entering into any loan agreement between Wachovia and

14   MGA; all documents that were in the "three (3) boxes of loan documents" that Wachovia referred

15   to in a November 15, 2005 letter to Robert G. Wilson, Esq.; all documents relating to any loan

16   agreement entered into by MGA, or sought or requested by MGA, during the time period January

17   1, 1999 and December 31, 2000, inclusive; all communications between Wachovia and MGA

18   during the time period January 1, 1999 and December 31, 2000, inclusive; all documents

19   indicating or showing a calculation of MGA's net worth or value; all documents indicating or

20   calculating the value of MGA's intellectual property or goodwill; all documents relating to Bratz,

21   including without limitation those obtained from MGA, since January 1, 1999; and documents

22   sufficient to identify any other MGA lender or person who extended or was requested to extend a

23   line of credit to MGA since January 1, 1998.  Park Decl., Ex. 9.  Mattel contends that the loan

24   documents will contain information about the timing and creation of Bratz.  However, all of the

25   requests for financial documents, except for portions of Request Nos. 4 and 5, are much broader,

26

27

28

1    seeking everything relating to any loan between MGA and Wachovia from 1999 through the

2    present.

3           Furthermore, to the extent any of Mattel's requests for financial information encompass

4    relevant materials, the requests remain unreasonably duplicative and cumulative of discovery

5    Mattel has already sought and obtained from MGA and Isaac Larian (with the exception of

6    Request Nos. 4 and 5 in the Wachovia subpoena).  MGA has produced the following:  audited and

7    unaudited quarterly and annual profit and loss statements; audited and unaudited quarterly and

8    annual statements; annual reports; various MGA financial reports; various financial documents

9    relating to Veronica Marlow; documents showing royalty payments to Carter Bryant; documents

10   showing MGA's sales, returns and costs of goods sold for each month, by SKU, since 2001;

11   documents showing MGA's promotional advertising and media expenditures, including MGA's

12   internal allocation of those expenditures by brand and/or product; documents showing MGA's

13   amortization and depreciation of certain capital assets and expenditures; documents showing

14   MGA's monthly general ledger entries aggregated by account, including income and expense

15   accounts, reserves and liabilities; and documents sufficient to explain MGA's various accounts as

16   presently and historically maintained in MGA's books and records.  Park Decl., ¶3.

17          The MGA Parties also represent that Isaac Larian recently produced over 50,000 pages of

18   documents which included, among other things, documents showing his net worth; his gross

19   income, wages, dividend income, interest income, and other income; his banks and bank

20   accounts; and various other financial documents.  Park Decl., ¶2.  Thus, Mattel has received

21   ample financial documents.  Mattel has also deposed MGA, Isaac Larian, and other witnesses

22   regarding relevant financial information.  In view of the discovery Mattel has already sought and

23   received, Mattel's over-reaching, broad subpoenas to the various non-parties seeking more

24   financial information regarding MGA and Isaac Larian are unjustified under Rule 26(b)(2),

25   Fed.R.Civ.P.

26   //

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)
                                                                                              10

1    B. Financial Information re Non-Parties

2          Mattel's subpoenas also seek financial documents regarding numerous non-parties,

3    including everyone who has ever worked for or represented MGA or Isaac Larian, and every

4    relative of Isaac Larian.  Once again, although the subpoenas encompass documents that are

5    potentially relevant to Mattel's claims and defenses, the subpoenas are overly broad, sweeping in

6    vast amounts of documents that have little to no relevance.  For example, Mattel's subpoenas to

7    Moss Adams and the various trusts include requests for all formation documents, all tax returns,

8    any other tax-related documents from 1999 to the present, and documents relating to the operation

9    of the trust, including every trustee and beneficiary of each trust, every disbursement by each

10   trust, every asset owned by each trust, and every liability of each trust.  Mattel has not shown that

11   all of the requested documents are relevant to the claims and defenses in the case.

12         Mattel's subpoenas to the non-parties are also unreasonably duplicative and cumulative of

13   discovery Mattel has already sought and received in this case.  Furthermore, to the extent Mattel's

14   subpoenas might include requests that are not unreasonably duplicative and/or cumulative of

15   other discovery requests, the probative value of the information Mattel seeks is substantially

16   outweighed by the burden of production, especially in light of the privacy interests of the many

17   non-parties who would be affected.[1]

18   C. Information re Litigation Between Isaac and Farhad Larian

19         All of Mattel's subpoenas to the non-parties, except Wells Fargo, include a request for all

20   documents relating to any litigation between Isaac Larian and Farhad Larian.  These requests are

21   unreasonably duplicative and cumulative of many requests Mattel previously served on Isaac

22   Larian, MGA, Farhad Larian, Stern & Goldberg and Kaye Scholer.  Mattel has sought and

23   received substantial discovery regarding the litigation between Isaac and Farhad Larian.  See

24   _____

25         [1]  In its reply brief, Mattel contends that Isaac Larian is the trustee of all of the trusts that Mattel has
      subpoenaed, and therefore he was required, but purportedly failed, to search for and produce trust documents when
26   responding to the discovery requests directed to him.  These issues are beyond the scope of the present motion and
      will not be addressed herein.

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                                                                    11

1  Order Re Mattel's Motions to Compel Farhad Larian, Kaye Scholer and Stern & Goldberg to

2  Produce Documents dated January 25, 2008.  Mattel has not shown that the non-parties possess

3  any relevant, non-privileged materials beyond what Mattel has already sought and received from

4  other sources.  Furthermore, the burden and expense of complying with the non-party subpoenas

5  substantially outweigh their likely benefit under Rule 26(b)(2), Fed.R.Civ.P.

6  D. Documents re MGA's Products or Carter Bryant

7      Mattel's subpoenas to the non-parties include requests for documents relating to Carter

8  Bryant, Bratz and other MGA products or work performed for MGA.  Although this category of

9  requests encompasses documents that are potentially relevant to the claims and defenses in the

10  case. the requests are nevertheless objectionable because they are overly broad and not tailored to

11  exclude irrelevant, duplicative or unreasonably cumulative information.  Mattel has taken vast

12  amounts of discovery regarding Carter Bryant, Bratz, and other MGA products from several

13  different sources.  Mattel has not shown that the non-parties possess any relevant, non-privileged

14  materials beyond what Mattel has already sought and received from other sources.  Furthermore,

15  the burden and expense of complying with the non-party subpoenas substantially outweigh their

16  likely benefit under Rule 26(b)(2), Fed.R.Civ.P.

17                              V. CONCLUSION

18      For the reasons set forth above, the MGA Parties' motion to quash, or in the alternative for

19  a protective order, is granted, except with respect to the following requests:

20      •   Wachovia subpoena, Request No. 4, limited to "all documents relating to any loan

21          agreement entered into by MGA, or sought or requested by MGA, during the time

22          period January 1, 1999 and December 31, 2000, inclusive"; and Request No. 5,

23          limited to "all communications between YOU and MGA during the time period

24          January 1, 1999 and December 31, 2000, inclusive" regarding any loan agreement

25          entered into by MGA, or sought or requested by MGA, during the time period

26          January 1, 1999 and December 31, 2000, inclusive.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT _F_
PAGE _90_

1   Mattel's counter motion to compel is granted in part and denied in part in accordance with the

2   Court's ruling on the MGA Parties' motion to quash, or in the alternative for a protective order, as

3   set forth immediately above.  Wachovia shall produce documents responsive to Request Nos. 4

4   and 5 as set forth above on or before May 16, 2008.

5          Nothing in this Order is intended to authorize or preclude Mattel from seeking documents

6   from the non-parties identified herein as part of Phase 2 discovery, if appropriate.

7          Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

8   Master, the MGA Parties shall file this Order with the Clerk of Court forthwith.

9

10  Dated: May 7, 2008                                    /S/

11                                         HON. EDWARD A. INFANTE (Ret.)
                                                Discovery Master
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _F_
PAGE_ 91_

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 7, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MGA PARTIES' MOTION TO QUASH SUBPOENAS; GRANTING IN PART AND DENYING IN PART MATTEL'S COUNTER MOTION TO COMPEL in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on  May 7, 2008, at San Francisco, California.

Anthony Sales

EXHIBIT _F_
PAGE _92_