1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
5   865 South Figueroa Street, 10th Floor
    Los Angeles, California  90017-2543
    Telephone:   (213) 443-3000
6   Facsimile:   (213) 443-3100

7   Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

                          EASTERN DIVISION

10  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)
                                           Consolidated with
11              Plaintiff,                 Case Nos. CV 04-09059 & CV 05-2727

12       vs.                               **DISCOVERY MATTER**

13  MATTEL, INC., a Delaware               **[To Be Heard By Discovery Master
    corporation,                           Robert C. O'Brien]**
14
                Defendant.                 [PUBLIC REDACTED] MATTEL,
15                                         INC.'S *EX PARTE* APPLICATION FOR
                                           AN ORDER DEEMING LEXINGTON
16  AND CONSOLIDATED ACTIONS               FINANCIAL, LLC SERVED, OR IN
                                           THE ALTERNATIVE, TO (1)
17                                         COMPEL AN AUTHORIZED
                                           REPRESENTATIVE OF LEXINGTON
18                                         FINANCIAL, LLC TO APPEAR TO
                                           ACCEPT SERVICE OF SUBPOENA,
19                                         OR (2) ISSUE AN ORDER
                                           AUTHORIZING LEXINGTON
20                                         FINANCIAL, LLC TO BE SERVED
                                           THROUGH THE CALIFORNIA
21                                         SECRETARY OF STATE; AND

22                                         MEMORANDUM OF POINTS AND
                                           AUTHORITIES
23
                                           [Declarations of Jon D. Corey and Mark
24                                         Shurlock, Notice of Lodging and
                                           Proposed Order filed concurrently]
25
                                           **Phase 2:**
26                                         Discovery Cut-off:      Dec. 11, 2009
                                           Pre-trial Conference:   Mar. 1, 2010
27                                         Trial Date:             Mar. 23, 2010

28

07975/2809649.1

-i-

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND ................................................................................. 2

ARGUMENT ........................................................................................................ 8

I.  THE DISCOVERY MASTER SHOULD DEEM LEXINGTON TO HAVE BEEN SERVED WITH MATTEL'S SUBPOENA. ........................... 8

    A.  Mattel Personally Served Lexington's Agent. ...................................... 8

    B.  Mattel's Electronic Transmission Of  The Subpoena To Lexington, Done At Lexington's Request, Was Sufficient As Service.............................................................................................. 9

II.  ALTERNATIVELY, AN AUTHORIZED REPRESENTATIVE OF LEXINGTON SHOULD BE COMPELLED TO APPEAR AND ACCEPT SERVICE. ................................................................................ 11

III.  AS ANOTHER ALTERNATIVE, THIS COURT SHOULD ORDER THAT MATTEL MAY SERVE LEXINGTON VIA THE CALIFORNIA SECRETARY OF STATE. .................................................. 12

CONCLUSION ................................................................................................... 13

1

## TABLE OF AUTHORITIES

2

**Page**

3

### Cases

4

Doe v. Qi,
5
   349 F. Supp. 2d 1258 (N.D. Cal. 2004) ................................................................. 9

6
E.A. Renfroe & Company, Inc. v. Moran,
   2008 WL. 1806200 (D. Colo. 2008) ................................................................. 10

7
Errion v. Connell,
8
   236 F.2d 447 (9th Cir. 1956) ................................................................. 9

9
Green v. Baca,
   2005 WL. 283361 (C.D. Cal. 2005) ................................................................. 9
10

11
Hall v. Sullivan,
   229 F.R.D. 501 (D. Md. 2005) ................................................................. 9, 10

12
King v. Crown Plastering Corp.,
13
   170 F.R.D. 355 (E.D.N.Y. 1997) ................................................................. 10

14
In re Motorsports Merchandise Antitrust Litigation,
15
   186 F.R.D. 344 (W.D. Va. 1999) ................................................................. 8

16
Rio Properties, Inc. v. Rio Int'l Interlink,
   284 F.3d 1007 (9th Cir. 2002) ................................................................. 12

17
Seafirst Corp. v. Boyd,
18
   1985 WL. 188558 (W.D. Wash. 1985) ................................................................. 8

19

### Statutes

20
Cal. Corp. Code § 2105(a)(5) ................................................................. 12

21
Cal. Corp. Code § 2111 ................................................................. 12

22
Fed. R. Civ. P. 4 ................................................................. 8

23
Fed. R. Civ. P. 4(f)(3) ................................................................. 12

24
Fed. R. Civ. P. 4(h) ................................................................. 8

25
Fed. R. Civ. P. 45 ................................................................. 9, 10

26
Fed. R. Civ. P. 45(b) ................................................................. 10

27
Fed. R. Civ. P. 45(b)(1) ................................................................. 8

28

Fed. R. Civ. P. 45(c)(2)(B) ........................................................... 10

Fed. R. Civ. P. 5(b) ........................................................................ 9

Fed. R. Civ. P. 5(b)(2) ................................................................. 10

Mattel, Inc. ("Mattel") hereby respectfully applies *ex parte*, pursuant to Local Rule 7-19, for an order deeming third-party Lexington Financial, LLC ("Lexington") to have been served with Mattel's subpoena to Lexington, or in the alternative, to compel an authorized representative of Lexington to appear at the United States District Court, 312 North Spring Street, Los Angeles, CA 90012, or at such other place deemed appropriate by the Discovery Master, on a date certain to accept service of the subpoena, or for an order authorizing Lexington to be served via the California Secretary of State.

Mattel makes this Application on the grounds that Mattel personally served its subpoena on Lexington's agent, Fred Mashian, on January 31, 2009. Yet, Lexington subsequently has denied that such service was proper and, despite Mattel's requests, Lexington's counsel in this case has refused to identify any agent that it considers an authorized agent for service. Accordingly, given Lexington's purposeful evasion of Mattel's diligent attempts to effectuate service, Lexington should be deemed to have been served with Mattel's subpoena. Alternatively, Lexington should be compelled to produce an authorized representative on a date certain to accept service of the subpoena, or should be ordered served through the California Secretary of State.

Good cause exists to seek this relief on an *ex parte* basis, given the schedule for Phase 2 discovery and trial set by Judge Larson at the February 11, 2009 hearing, given that Mattel has pending motions seeking the appointment of a receiver and given that MGA likely will seek another stay that relies on claims about its financial condition, as its prior stay motions have. Lexington's purposeful, repeated evasion of Mattel's subpoena threatens to delay Mattel's ability to obtain critical discovery and to pursue any necessary follow-up discovery.

Pursuant to Local Rule 7-19 and paragraph 5 of the Discovery Master Order, Mattel's counsel sent a letter to counsel for Lexington, Peter Villar of Bingham McCutchen, LLP (telephone: 714-830-0640; address: 600 Anton

07975/2809649.1

MATTEL, INC.'S EX PARTE APPLICATION

Boulevard, 18th Floor, Costa Mesa, California 92626-1924) on February 24, 2009,
giving notice of this Application and the relief being sought, and seeking to resolve
the issues set forth herein.   To date, Lexington's counsel has not responded to
Mattel's letter, and thus, Mattel therefore does not know Lexington's position
regarding this Application.

This Application is based on this Notice of Application, the
accompanying Memorandum of Points and Authorities, the Declarations of Jon D.
Corey and Mark Shurlock (and their respective exhibits) filed concurrently
herewith, the Notice of Lodging filed concurrently herewith, the records and files of
this Court, and all other matters of which the Court may take judicial notice.

DATED: March 3, 2009                QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP


                                    By /s/ Michael T. Zeller
                                       Michael T. Zeller
                                       Attorneys for Mattel, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

As the Discovery Master is aware, following the jury's Phase 1B trial verdict in Mattel's favor last summer, Mattel learned that MGA had a new alleged business partner, Omni 808, that purportedly replaced Wachovia as MGA's largest creditor. Omni 808 is a shell corporation that was formed during Mattel's trial against MGA and is owned and funded by Vision Capital, which is another shell corporation that is in turn owned by Lexington Financial ("Lexington"). Lexington was incorporated off-shore in the Caribbean secrecy haven of Nevis and lists a fictional London address as its purported headquarters.

For the past several weeks, Mattel has been attempting to obtain basic discovery about this apparent use of shell companies and offshore vehicles to allegedly acquire the vast majority of MGA's debt at a steep discount, while simultaneously concealing the sources of funding. As part of that effort, Mattel served subpoenas upon various third-parties, including Lexington. Lexington however, has consistently obstructed Mattel's discovery efforts. More specifically, Fred Mashian filed a UCC Financing Statement on behalf of Lexington. Mattel personally served Mr. Mashian, as Lexington's agent, with the subpoena. Mattel also sent a copy of it to Lexington's counsel in this case—*at Lexington's counsel's request*. Nevertheless, Lexington now is claiming that service was not properly effectuated. Ignoring Mattel's requests, Lexington (through its counsel) also has refused to tell Mattel who (if not Mashian) Lexington considers to be Lexington's proper agent for service.

Lexington should not be permitted to engage in such obstructionist tactics. Mattel "delivered" its subpoena to Lexington in a manner reasonably calculated to ensure receipt and notice of the subpoena, and indeed Lexington has received actual notice of the subpoena. Accordingly, the Discovery Master should issue an order deeming Lexington to have been served with Mattel's subpoena. In

the alternative, the Discovery Master should compel Lexington to produce an authorized agent to appear on a date certain, at the Federal Courthouse in Los Angeles or at such other location deemed appropriate by the Discovery Master, to accept service of the subpoena.  As another alternative, the Discovery Master should issue an order permitting Mattel to serve Lexington via the California Secretary of State.

## Factual Background

**MGA Misrepresents Its Financial Condition.**  In connection with MGA's applications for an order staying the December 3, 2008 injunctive orders, MGA represented to the District Court and to the Ninth Circuit that, as a result of this case, ████████████████████████.[1]  Yet, financing statements filed regarding MGA suggested that this was potentially false.  Since the Phase 1B verdict, a new alleged creditor, Omni 808 Investors, LLC ("Omni 808") has purported to take a security interest in the bulk of MGA's assets,[2] which facially would suggest the possibility that new funding had been extended to MGA.  Only after Mattel brought the Omni 808 transaction to the Court's attention, and contrary to MGA's earlier, sworn representations to the Court and to the Ninth Circuit that ██ ████████████████████, ██████████████████ ████████████████.[3]

The transaction revealed in the financing statements also appears to be structured to conceal the ultimate source of funds for the Omni 808/MGA

---

[1]  See Declaration of Brian Wing in Support of the MGA Parties' Request for a Stay, dated December 11, 2008, at ¶ 13, attached as Exhibit 16 to the Declaration of Jon D. Corey, dated March 2, 2009, ("Corey Dec."), filed concurrently herewith.

[2]  See UCC Financing Statement Amendment dated September 9, 2008, amending prior UCC Financing Statement to add Omni 808 Investors, LLC as a creditor to MGA with co-priority with Wachovia Bank, N.A., Corey Dec., Exh. 17.

[3]  See MGA Parties' Corrections to the Opposition to Mattel, Inc.'s *Ex Parte* Application for Appointment of a Receiver or for Alternative Relief, dated December 31, 2008, at 1-2, Corey Dec., Exh. 18.

transaction.  The company purporting to hold the security interest, Omni 808, is a single purpose entity which was formed on August 12, 2008, during the damages phase of trial and after MGA and its CEO had been found liable in the first phase of trial.[4]  Omni 808 appears to be owned and funded by a company called Vision Capital, LLC ("Vision Capital") that, like Omni 808, was formed during the damages phase of the trial.[5]

According to an August 29, 2008 UCC financing statement, Vision Capital obtained the money used to fund Omni 808 (and presumably MGA) from a company called Lexington Financial, LLC ("Lexington").  Lexington is an offshore company registered in the Caribbean island of Nevis, a country notorious for its corporate and banking secrecy laws.[6]  Indeed, the official corporate records for Lexington from Nevis flatly declare that Nevis does not ask—and therefore will not disclose—any information about Lexington, including even the bare identities of its principals.[7]  Lexington also has a purported address in London, but no offices of Lexington are in fact located there.  Rather, it is nothing more than a company called OfficeFront that provides "virtual office" services, i.e., mail drop and answering service.[8]

---

[4]    See Omni 808 Investors, LLC Certificate of Status and Articles of Organization, Corey Dec., Exh. 19.

[5]    See Vision Capital, LLC Certificate of Formation dated August 19, 2008, Corey Dec. Exh. 20.

[6]    See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 1 (with Lexington taking a security interest in Vision Capital's ownership interest in Omni 808 Investors LLC); "Offshore-Based Limited Liability Company (LLC)" at www.offshore-protection.com/nevisLLC.html, Corey Dec., Exh. 2.

[7]    See December 12, 2008 letter from Registrar Clevelan Williams, Corey Dec., Exh. 3.

[8]    See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 1; December 12, 2008 letter from Registrar Clevelan Williams, Corey Dec., Exh. 3.  Office Front "Home" (offering website by Office Front allowing a person to obtain a "virtual office" for as little as £10 a month), Corey Dec., Exh. 5.

Fred Mashian, a Sunset Boulevard "estate-planning" attorney, is identified as the Lexington contact on the UCC financing statement showing that Vision Capital secured its alleged loan from Lexington with its ownership interest in Omni 808.[9]  Lexington perfected its purported security interest in Vision Capital's ownership interest in Omni 808 on August 29, 2008—three days after the jury's damages verdict issued against MGA and Larian.[10]  The public records Mattel has obtained thus far do not disclose who provided Lexington with the funds that it ostensibly provided to Vision Capital—and that Vision Capital supposedly contributed to Omni 808 for the ostensible loan/debt purchase related to MGA.  Nor has MGA been able to explain why it is using shell companies and offshore vehicles, which may be used to conceal the flow of funds, and a sole-practitioner estate planning attorney to process UCC financing statements.

Only adding to the questions surrounding MGA's finances is the evident involvement of MGA CEO Isaac Larian and his relatives in the supposedly "arms length" acquisition of MGA's debt by Omni 808.  On January 12, 2009, Mattel attempted to serve a subpoena on Vision Capital at 1525 South Broadway in Los Angeles—the address provided in the August 29, 2008 UCC financing statement.[11]  However, Vision Capital was not at that address, and the receptionist at the building said she had never heard of the company.[12]  Rather, 1525 South Broadway is the address of Neman Brothers & Associates.[13]  Leon Neman is a principal of Neman Brothers & Associates and owns the building at 1525

---

[9]   See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 1.
[10]   See August 29, 2008 Lexington Financial UCC financing statement, Corey Dec., Exh. 1.
[11]   See Declaration of David Antolin, dated February 4, 2009, lodged concurrently herewith.
[12]   Id.
[13]   Id.

Broadway, where Vision Capital is ostensibly located.[14]  Leon Neman is also Isaac Larian's brother-in-law, and has served as a director of MGA.[15]  Mr. Mashian, the agent for Lexington named in the UCC Financing Statement, is the listed agent for several entities that Leon Neman owns.[16]  Indeed, Rock-Hill Holdings, LLC, a Leon Neman entity that lists Mashian as its registered agent, also has a Delaware address that is the same as Vision Capital's alleged Delaware address.[17]

**Mattel Subpoenas Relevant Documents From Lexington and the Other Third Parties.**  After the Court lifted the Phase 2 discovery stay, in an effort to get to the bottom of MGA's finances, Mattel issued subpoenas to Lexington and others, seeking the production of documents relevant to Phase 2 claims and defenses as well as MGA's representations in its stay petitions.  Because Lexington is registered in the corporate secrecy haven of Nevis,[18] however, even such basic information as the identities of its principals is unavailable.[19]  The only information Mattel currently has for Lexington is an address in London—where Lexington in fact is not physically located.  Instead, a company that provides "virtual office" services is at that address.[20]  Even though Lexington purported to file a UCC financing statement in California, no corporate registration for Lexington appears on

---

[14]  See Declaration of Michael T. Zeller in Support of Mattel's Opposition to Omni 808 Investors, LLC's *Ex Parte* Application to Intervene, dated February 5, 2009, at ¶ 6 ("Zeller Dec."), lodged concurrently herewith.

[15]  See Zeller Dec. ¶ 4.

[16]  See Zeller Dec. ¶ 11.

[17]  See Zeller Dec. ¶ 12.

[18]  See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 1 (with Lexington Capital taking a security interest in Vision Capital's ownership interest in Omni 808 Investors LLC); "Offshore-Based Limited Liability Company (LLC)" at www.offshore-protection.com/nevisLLC.html, Corey Dec., Exh. 2.

[19]  See December 12, 2008 letter from Registrar Clevelan Williams, Corey Dec., Exh. 3.

[20]  See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 1; December 12, 2008 letter from Registrar Clevelan Williams, Corey Dec., Exh. 3.  Office Front "Home" (offering website by Office Front allowing a person to obtain a "virtual office" for as little as £10 a month), Corey Dec., Exh. 5.

the California Secretary of State website.[21]  On January 23, 2009, Mattel attempted to serve the subpoena upon Mr. Mashian—the Lexington agent identified on the August 29, 2008 UCC financing statement[22]—as Lexington's agent.[23]  Mattel also sought to serve Mr. Mashian with a personal subpoena at the same time.[24]  From January 23 through 26, 2009, Mattel made repeated attempts to serve the Mashian and Lexington subpoenas at 9255 West Sunset Boulevard, Suite 630, Los Angeles, CA 90026, the contact address listed for Mr. Mashian on the UCC financing statement.[25]  On each occasion, the process server found the office closed or was told that Mr. Mashian was "not in."[26]

Mattel thereafter issued new subpoenas to Lexington and Mr. Mashian.[27]  On January 31, 2009, a process server located Mr. Mashian at his residence and hand served both subpoenas to him.[28]  After accepting the subpoenas, Mr. Mashian declared that Lexington "no longer exists" and then threw the Lexington subpoena on his front lawn.[29]  The process server photographed the subpoena and then departed, leaving the subpoena with Mr. Mashian on the lawn.[30]

**<u>Lexington Belatedly Claims Mattel's Service of the Subpoena Was Defective.</u>**  On February 12, 2009, Peter Villar of Bingham McCutchen LLP ("Bingham") informed Mattel's counsel that Bingham would be representing Mr.

---

[21]  <u>See</u> Corey Dec., ¶ 8.
[22]  <u>See</u> UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 1.
[23]  Lexington Financial, LLC subpoena, dated January 23, 2009, Corey Dec., Exh. 4.
[24]  Fred Mashian subpoena, dated January 23, 2009, Corey Dec., Exh. 7.
[25]  <u>See</u> UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 1.
[26]  <u>See</u> Not Found Returns of Service for Fred Mashian and Lexington, dated January 30, 2009, Corey Dec., Exh. 8.
[27]  Lexington Financial, LLC subpoena, dated January 30, 2009, Corey Dec., Exh. 9; Fred Mashian subpoena, dated January 30, 2009, Corey Dec., Exh. 10.
[28]  <u>See</u> Declaration of John Shurlock, dated February 26, 2009, at ¶ 2-3 ("Shurlock Dec."), filed concurrently herewith.
[29]  <u>Id.</u>
[30]  <u>Id.</u>

Mashian and Lexington in this case.[31]   Mr. Villar noted his understanding that Mattel had "*served* Mr. Mashian *and Lexington Financial* with subpoenas," but indicated that the copies which his clients had forwarded to him were missing the attachments and therefore requested that Mattel's counsel send him additional copies of the subpoenas and provide a one-week extension to respond.[32]   Later that day, Mattel's counsel forwarded the Lexington and Mashian subpoenas to Mr. Villar, with the proofs of service, and agreed to the requested extension of time.[33]

On February 23, 2009, Mr. Mashian, through his counsel, served objections to Mattel's subpoenas.[34]   Lexington did not object or otherwise respond to its subpoena.[35]   Instead, Lexington's counsel suggested, for the first time, that Mattel had not properly served Lexington, stating that "Mr. Mashian advised us that he is not the agent for service for any such entity."[36]   Mattel sent Lexington's counsel a response letter on February 24, 2009, expressing Mattel's view that it had properly served Lexington through Mr. Mashian.[37]   In that same letter, to avoid any unnecessary dispute over service, Mattel also requested that Lexington's counsel agree to accept service on Lexington's behalf or to identify Lexington's current authorized agent for service of process (if in fact Mr. Mashian was not so authorized).[38]   To date, Mattel has received no response to its letter.[39]

---

[31]   See E-mail from Peter Villar to Jon Corey, dated February 12, 2009, Corey Dec., Exh. 11.

[32]   Id.

[33]   See E-mail from Jon Corey to Peter Villar, dated February 12, 2009, Corey Dec., Exh. 12.

[34]   See Fred Mashian's Objections to Mattel, Inc.'s Subpoena for the Production of Documents, dated February 23, 2009, Corey Dec., Exh. 14.

[35]   Corey Dec., ¶ 16.

[36]   See E-mail from Peter Villar to Jon Corey, dated February 23, 2009, Corey Dec., Exh. 13.

[37]   See Letter from Jon Corey to Peter Villar, dated February 24, 2009, Corey Dec., Exh. 15.

[38]   Id.

<u>**Argument**</u>

**I.    THE  DISCOVERY  MASTER  SHOULD  DEEM  LEXINGTON  TO**
<u>**HAVE BEEN SERVED WITH MATTEL'S SUBPOENA.**</u>

Mattel properly served its subpoena on Lexington by (1) personally serving a copy of the subpoena on Lexington's agent, Fred Mashian, and (2) electronically transmitting a copy of the subpoena to Lexington's counsel, at Lexington's counsel's request.   Accordingly, the Discovery Master should reject Lexington's attempt to further stonewall the discovery process and deem it to have been served with Mattel's subpoena in the manner indicated.

**A.    <u>Mattel Personally Served Lexington's Agent.</u>**

<u>Federal Rule of Civil Procedure</u> 45(b)(1) "requires delivering a copy [of the subpoena] to the named person."   The <u>Rule</u> is silent, however, with regard to what constitutes proper service of a subpoena on a corporation.   "Consequently, the courts have looked to <u>Rule</u> 4 for guidance."   <u>In re Motorsports Merchandise Antitrust Litigation</u>, 186 F.R.D. 344, 348 (W.D. Va. 1999).   <u>Rule</u> 4(h) provides that a corporation may be served through "an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process."   <u>See also</u> <u>Seafirst Corp. v. Boyd</u>, 1985 WL 188558, at *2 n.1 (W.D. Wash. 1985) ("It is generally recognized, however, that service of a subpoena on a general agent of a corporation is effective as to the corporation.").

Here, Mattel effected service on Lexington when it personally served a copy of the subpoena on Lexington's agent, Fred Mashian.[40]   Indeed, in its February 12, 2009 letter to Mattel's counsel, Lexington's counsel acknowledged that

---

[39]    Corey Dec., ¶ 19.

[40]    Mattel does not know Mr. Mashian's specific position at Lexington.   However, this is due to no fault of Mattel's.   Mattel has repeatedly sought information regarding, *inter alia*, the formation and operation of Lexington, to no avail.   Further, Mattel has specifically requested the identity of Lexington's authorized agent for service.   Again, Lexington (through its counsel) has refused to provide this basic information.

Mattel had served Lexington.  Lexington's counsel also stated that its client had sent him copies of the Lexington subpoena (albeit without attachments) and even requested an extension of time to respond on Lexington's behalf.[41]   Further, Mashian's attempt to evade service by claiming that Lexington "no longer exists" and throwing the Lexington subpoena on his front lawn does not negate Mattel's service.  See, e.g., Errion v. Connell, 236 F.2d 447, 457 (9th Cir. 1956) (service sufficient when sheriff pitched the papers through a hole in defendant's screen door after she spoke with him and ducked behind a door to avoid service); Doe v. Qi, 349 F.Supp.2d 1258, 1275 n.5 (N.D. Cal. 2004) ("Where a defendant attempts to avoid service e.g. by refusing to take the papers, it is sufficient if the server is in close proximity to the defendant, clearly communicates intent to serve court documents, and makes reasonable efforts to leave the papers with the defendant.").  Accordingly, the Discovery Master should deem Mattel's hand service to be sufficient.

**B.**    **Mattel's Electronic Transmission Of  The Subpoena To Lexington, Done At Lexington's Request, Was Sufficient As Service.**

In addition to personally serving the subpoena on Lexington's agent Fred Mashian (which by itself constitutes proper service), Mattel also electronically transmitted a copy of the subpoena to Lexington, at Lexington's counsel's request.[42] While Rule 45 has traditionally been interpreted to require personal service, several recent cases have held that personal service of a subpoena is not required in every instance.  See, e.g., Green v. Baca, 2005 WL 283361, at *1 n.1 (C.D. Cal. 2005) (holding that leaving a subpoena at various witnesses' offices pursuant to Rule 5(b) was sufficient for service under Rule 45); Hall v. Sullivan, 229 F.R.D. 501, 506 (D.

---

[41]   See E-mail from Peter Villar to Jon Corey, dated February 12, 2009, Corey Dec., Exh. 11.

[42]   See E-mail from Jon Corey to Peter Villar, dated February 12, 2009, Corey Dec., Exh. 12.

Md. 2005) (holding that "delivery of the subpoena via Federal Express comported with the service requirements of <u>Rule</u> 45"); <u>King v. Crown Plastering Corp.</u>, 170 F.R.D. 355, 356 (E.D.N.Y. 1997) ("Accordingly, the court sees no reason for requiring in hand delivery for subpoenas served under Rule 45, so long as service is made in a manner that reasonably insures actual receipt of the subpoena by the witness.").

These cases base their holdings on the grounds that (1) <u>Rule</u> 45 does not explicitly use the term "personal service;" (2) there is no apparent policy distinction between <u>Rules</u> 4 and 5—which do not require personal service—and <u>Rule</u> 45; and (3) the "obvious purpose of Rule 45(b) is to mandate *effective notice* to the subpoenaed party, rather than 'slavishly adhere to one particular type of service.'" <u>E.A. Renfroe & Company, Inc. v. Moran</u>, 2008 WL 1806200, at *5 (D. Colo. 2008) (emphasis added). Thus, "[t]he courts that have upheld service by alternative means have uniformly held that what is mandated is that service be made in a manner which reasonably insures actual receipt of the subpoena by the witness." <u>Id.</u>; <u>see also</u> <u>Hall</u> 229 F.R.D. at 505 ("So long as it actually receives the subpoena, it is just as able to avail itself of the procedural protections of <u>Rule</u> 45(c)(2)(B) as they would be if personally served.").

Here, Mattel "delivered" the subpoena by e-mailing a copy to Lexington, at Lexington's counsel's written request. It is undisputed that Lexington has received actual notice of the subpoena and therefore is able to "avail itself of the procedural protections of <u>Rule</u> 45(c)(2)(B)." <u>Hall</u>, 229 F.R.D. at 505. Furthermore, and independently, <u>Rule</u> 5(b)(2) expressly permits service of post-complaint papers by "sending it by electronic means if the person consented in writing." That, too, is what Mattel did here, at Lexington's counsel's written request. Accordingly, the Discovery Master should deem Mattel's service via electronic transmission to be sufficient.

## II.   **ALTERNATIVELY, AN AUTHORIZED REPRESENTATIVE OF LEXINGTON SHOULD BE COMPELLED TO APPEAR AND ACCEPT SERVICE.**

As Mattel has demonstrated in its recently-filed motion to compel and in its opposition to MGA's motion to quash, Mattel's subpoena to Lexington seeks information that is relevant to Phase 2 claims and defenses, including Mattel's RICO and unfair competition claims, damages, punitive damages and MGA's unclean hands defense.[43]  Mattel has diligently sought to serve its subpoena on Lexington by personally serving Lexington's agent and by emailing a copy of the subpoena to Lexington's counsel.  Taking a page from MGA's obstructionist playbook, however, Lexington has sought to evade service of the subpoena.

Specifically, and contrary to its counsel's prior acknowledgement that Mattel had served Lexington, Lexington is now supposedly contending that Mattel's service on Mashian was not valid, while simultaneously refusing to identify its authorized agent for service.   Lexington's stonewalling should be not be countenanced.  In the event the Discovery Master concludes that Mattel's personal and email service of the Lexington subpoena was not sufficient, and that personal service on Lexington's designated agent is still required, Mattel respectfully requests that the Discovery Master compel Lexington to produce an authorized representative to appear on a date certain at the Federal Courthouse in Los Angeles (or at such other location as the Discovery Master deems appropriate) to accept service of the subpoena on Lexington's behalf.

---

[43]   See Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas, dated February 3, 2009, Corey Dec., Exh. 21; Mattel's Opposition to the MGA Parties' Motion to Quash Subpoenas Issued by Mattel, dated February 10, 2009, Corey Dec., Exh. 22.   Rather than repeat the lengthy relevancy discussions here, Mattel respectfully directs the Discovery Master's attention to those briefs and incorporates them herein by this reference.

**III.   AS ANOTHER ALTERNATIVE, THIS COURT SHOULD ORDER THAT MATTEL MAY SERVE LEXINGTON VIA THE CALIFORNIA SECRETARY OF STATE.**

California law requires a foreign corporation engaging in intrastate business to designate an agent for service of process and give its consent to service on the California Secretary of State if its agent cannot be found.  See Cal. Corp. Code § 2105(a)(5).  Here, Lexington purports to own the entirety of Vision Capital, which supposedly has an office at 1525 South Broadway in Los Angeles, and which in turn supposedly owns another California limited liability company, Omni 808.[44] Lexington also filed a UCC financing statement in California.[45]  Yet, no corporate registration for Lexington appears on the California Secretary of State website.[46] Despite Mattel's diligent efforts, Mr. Mashian is the only individual associated with Lexington that Mattel has been able to identify.[47]

Where, as Lexington itself has asserted is the case here, a foreign corporation's designated agent cannot be found with due diligence, the court may issue an order permitting the corporation to be served by personal delivery to the California Secretary of State.  See Cal. Corp. Code § 2111.  Accordingly, Mattel respectfully requests, as another alternative, that the Discovery Master issue an order that Lexington may be served via the California Secretary of State.[48]

---

[44] See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 1.
[45] See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 1.
[46] See Corey Dec., ¶ 8.
[47] Id.
[48] To the extent Lexington denies that it has conducted intrastate transactions or is otherwise subject to service in California, Mattel respectfully requests that the Discovery Master (1) order that Lexington, as a foreign corporation located outside of the United States, may be served via e-mail, and (2) compel Lexington to disclose a valid e-mail address for service purposes.  See Fed. R. Civ. P. 4(f)(3) (permitting service in a foreign country "by other means not prohibited by international agreement, as the court orders"); Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1015 (9th Cir. 2002) (permitting service by e-mail).

## **Conclusion**

For the foregoing reasons, Mattel respectfully requests that the Discovery Master issue an order deeming Lexington to have been served with Mattel's subpoena, via personal service upon its agent Fred Mashian, and/or via electronic service upon its counsel.  In the alternative, Mattel respectfully requests that the Discovery Master (1) compel an authorized representative of Lexington to appear on a date certain to accept service of the subpoena, or (2) order that Mattel may serve Lexington via the California Secretary of State.


DATED:  March 3, 2009              QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                   By /s/ Michael T. Zeller
                                      Michael T. Zeller
                                      Attorneys for Mattel, Inc.

-13-