QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| Defendant. | **[To Be Heard By Discovery Master Robert C. O'Brien]** |
| AND CONSOLIDATED ACTIONS | [PUBLIC REDACTED] MATTEL, INC.'S NOTICE OF RENEWED MOTION AND RENEWED MOTION FOR RECONSIDERATION OF PORTIONS OF DISCOVERY MASTER'S DECEMBER 31, 2007 ORDER; AND |
| | MEMORANDUM OF POINTS AND AUTHORITIES |
| | [Declarations of Scott B. Kidman and Jon D. Corey filed concurrently] |
| | Hearing Date:      TBD<br>Time:                 TBD<br>Place:                TBD |
| | **Phase 2**<br>Discovery Cut-off:      December 11, 2009<br>Pre-trial Conference:  March 1, 2010<br>Trial Date:              March 23, 2010 |

07975/2819614.1

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that at a conference before Discovery Master

3  Robert C. O'Brien at a date and at a time to be determined by the Discovery Master,

4  plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court to reconsider

5  portions of the December 31, 2007 Order Granting in Part and Denying in Part

6  Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying

7  Request for Sanctions.

8          This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 26

9  and 54(b) and <u>Local Rule</u> 7-18 on the grounds that the prior Discovery Master in

10  this matter, the Hon. Edward Infante (Ret.), *sua sponte* limited a request seeking

11  communications between Isaac Larian and Mattel employees to the time period

12  from 1999 to 2005 based on the misapprehension that this is the only time frame for

13  which Mattel has alleged the theft of trade secrets by MGA, or that Mattel had

14  alleged a closed-ended RICO conspiracy, when in fact, Mattel has alleged that the

15  MGA defendants, including Larian, are engaged in an ongoing, open-ended

16  conspiracy that includes the theft of Mattel's trade secrets and continues to this day.

17          This Motion is based on this Notice of Motion and Motion, the

18  accompanying Memorandum of Points and Authorities, the Declaration of Scott B.

19  Kidman filed concurrently herewith, and all other matters of which the Court may

20  take judicial notice.

21

22

23

24

25

26

27

28

1

## **Statement of Rule 37-1 Compliance**

2          The parties met and conferred regarding the relief sought in this motion

3 on January 10, 2008 and on dates thereafter.

4

5 DATED:  March 4, 2009                    QUINN EMANUEL URQUHART OLIVER &
                                          HEDGES, LLP
6

7                                         By /s/ Scott B. Kidman
8                                            Scott B. Kidman
                                             Attorneys for Mattel, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2

**Page**

3

4

PRELIMINARY STATEMENT .................................................................................. 1

5

FACTUAL BACKGROUND ..................................................................................... 2

6

ARGUMENT .............................................................................................................. 7

7

I.      RECONSIDERATION OF THE DISCOVERY MASTER'S ORDER
        IS APPROPRIATE HERE ........................................................................... 7

8

9

II.     THE COURT SHOULD AMEND THE ORDER TO INCLUDE
        LARIAN'S POST-2005 COMMUNICATIONS WITH MATTEL
        EMPLOYEES ............................................................................................... 8

10

CONCLUSION ........................................................................................................ 10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/2819614.1

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

In re Boland,
 79 F.R.D. 665 (D.D.C. 1978) .................................................................9

Elwonger v. Career Acad., Inc.,
 54 F.R.D. 514 (E.D. Wis. 1972) ..............................................................9

Gonzalez v. City of Fresno,
 2007 WL 2781149 (E.D. Cal. September 21, 2007) .................................9

Roberts v. Acres,
 495 F.2d 57 (7th Cir. 1974) .....................................................................9

Smith v. Massachusetts,
 543 U.S. 462 (2005) .................................................................................7

## **Statutes**

Fed. R. Civ. P. 26 ...............................................................................................9

Fed. R. Civ. P. 26(b)(1) ...................................................................................10

Fed. R. Civ. P. 54(b) ..........................................................................................8

Local Rule 7-18(a) ..............................................................................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The jury already found at the Phase 1 trial that Isaac Larian interfered with Carter Bryant's employment contract with Mattel and aided and abetted Bryant's breach of fiduciary duty and duty of loyalty to Mattel.  Larian did so by, among other actions, inducing him to disclose and purportedly assign to MGA Bratz-related inventions Bryant had created during his employment with Mattel. Larian's misconduct did not end there.  Relevant to Phase 2 of this case, Larian has engaged in a pattern of communications with other Mattel employees—in the United States, Canada, Mexico and elsewhere—who went to work for MGA and took Mattel's trade secrets and confidential information with them.  There is no question that those Mattel trade secret documents ended up at MGA.  Mexican criminal authorities found and seized thousands of pages of them when they executed a search warrant on MGA's offices in Mexico City.  MGA also produced them in this case, after being compelled to produce them by Court Order in response to Mattel's discovery requests.

To obtain evidence of MGA's role, knowledge and complicity in the trade secret thefts and other misconduct expressly alleged as part of Phase 2 of this case, Mattel also has requested communications between Larian and any individual while the individual was employed by Mattel.  Larian refused to produce any responsive documents.  The Discovery Master granted Mattel's motion to compel all such communications, but *sua sponte* limited the request to the time period from 1999 through 2005 based on the misapprehension that this was the only relevant time period.  In fact, Mattel has alleged that the MGA defendants, including Larian, are engaged in an ongoing, open-ended conspiracy, including the theft of Mattel's trade secrets, that continues to this day.  Even since the filing of the original motion to compel, Mattel has continued to develop evidence of Mattel employees who—

*after 2005*—left for MGA and took Mattel's trade secrets and confidential information with them.

Post-2005 communications between Larian and Mattel employees are clearly relevant to the allegations in Mattel's counterclaims.   Larian effectively conceded as much when he agreed to produce such communications in an attempt to avoid this motion and a court order.   Tellingly, however, Larian refused to stipulate to amend the Court's prior order to reflect this agreement.   MGA and Larian have engaged in a pattern of not producing discoverable information after promising to do so and, on many occasions, even after the Court has ordered them to do so.   If anything, Larian's refusal to enter into such a stipulation further demonstrates the need for the order Mattel now seeks.   Mattel respectfully submits that the Discovery Master should reconsider and order the production of Larian's post-2005 communications with Mattel employees forthwith.

## **Factual Background**

Mattel's First Set of Document Requests to Larian.   On June 13, 2007, Mattel propounded its First Set of Requests for Production of Documents and Things to Isaac Larian.[1]   Among other things, Mattel requested all communications between Larian and any individual while the individual was employed by Mattel.[2] Larian refused to produce any documents in response to this request.[3]   During meet and confer discussions, Larian continued his flat refusal to produce any responsive documents and never proposed any limitation on the scope of the request.[4]   Mattel moved to compel the production of documents responsive to this request and others

---

[1]  Declaration of Scott B. Kidman dated March 4, 2009 ("Kidman Dec.") at ¶ 2.
[2]   Request No. 198, found in the excerpts of Mattel, Inc.'s Consolidated Separate Statement in Support of Motion to Compel Production of Documents by Isaac Larian (public redacted version) at p. 166, Kidman Dec., Exh. 1.
[3]   Id.
[4]   Kidman Dec., ¶ 4.

07975/2819614.1

-2-

1   on October 11, 2007.  Neither party proposed or briefed any temporal limit on the

2   request for Larian's communications with Mattel employees.[5]

3   The Discovery Master's Order.  The Discovery Master ruled on Mattel's

4   motion in an order dated December 31, 2007.  Regarding the request for Larian's

5   communications with Mattel employees, Judge Infante found that the request "is

6   reasonably tailored to the specific and numerous allegations in the case regarding

7   alleged trade secret theft."[6]  At the same time, however, he *sua sponte* limited the

8   request to the time period of 1999 through 2005 based on his understanding that this

9   was the only time period during which Mattel had alleged trade secret theft by

10  MGA.  "Nevertheless, an additional temporal limitation is appropriate to tailor the

11  request to Mattel's allegations of trade secret theft.  The alleged trade secret theft

12  began with Bryant's conduct in 1999 and continued to 2005.  Accordingly, Larian

13  shall produce documents responsive to Request No. 198 that are limited to the time

14  frame 1999 to 2005."[7]

15  Mattel's Counterclaims.  While Mattel's counterclaims allege a number

16  of specific instances of trade secret misappropriation through 2005,[8] Mattel's

17  allegations are not limited to that time period.  For example, in connection with its

18  RICO claims, Mattel alleged that the MGA defendants, including Larian, are

19  engaged in an ongoing, open-ended conspiracy that includes the theft of Mattel's

20  trade secrets.[9]  In addition to the RICO allegations, Mattel also alleged that in recent

21  _____

22  [5]   Kidman Dec., ¶ 3, Exh. 1.

23  [6]   Discovery Master's Order Granting in Part and Denying in Part Mattel's
    Motion to Compel Production of Documents by Isaac Larian dated December 31,
24  2007 at 14, Kidman Dec., Exh. 2.

25  [7]   Id. at 14-15, Kidman Dec., Exh. 2.
    [8]   Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and
26  Counterclaims (Public Redacted Version; exhibits omitted), dated July 12, 2007,
    ¶¶ 37-76, Kidman Dec., Exh. 3.
27  [9]   Id. at ¶¶ 89-93; 99-102, Kidman Dec., Exh. 3.

28

years MGA and Larian have engaged in a pattern of targeting and recruiting Mattel employees with access to Mattel's trade secret, confidential and proprietary information and that certain of these employees copied and took with them from Mattel information and disclosed it to MGA.[10]

Mattel continues to develop evidence of misconduct. Not only did Mattel's counterclaims include allegations of trade secret theft and other on-going misconduct by MGA and Larian through the present, but Mattel has developed and disclosed additional evidence of specific instances of such wrongdoing. For example, on December 7, 2007, Mattel served Supplemental Responses to MGA's First Set of Interrogatories to Mattel, Inc.[11] In its supplemental responses, Mattel listed a host of instances in which MGA stole trade secrets from Mattel, including MGA's hiring of a Mattel employee, Jorge Castilla, who in March 2006 stole trade secret information and took it with him to MGA.[12] When Castilla was asked about this at his Court-ordered deposition, ███████████████████████████ ████████████████████████████.[13]

Another employee, Dan Cooney, left Mattel in April 2006 and also took Mattel's confidential information with him to MGA. At his deposition in January 2008, Mr. Cooney ███████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████.[14] Mattel has continued to uncover additional evidence

---

[10]  Id. at ¶ 77, Kidman Dec., Exh. 3.
[11]  Kidman Dec., Exh. 4.
[12]  Id. at pp. 38-44, Kidman Dec., Exh. 4.
[13]  Transcript of Deposition of Jorge Castilla dated October 22, 2008 at 290:5-292:8, 299:2-319:20, 322:5-324;13, Kidman Dec., Exh. 5.
[14]  Transcript of Deposition of Daniel Cooney dated January 28, 2008 at 77:24-80:14, 101:11-103:10, 124:24-125:3, 237:4-238:16, Kidman Dec., Exh. 6.

-4-

as discovery proceeds.  For example, at the deposition of Veronica Marlowe on December 28, 2007, Mattel learned for the first time that three Mattel employees— Ana Cabrara, Beatriz Morales, and Maria Salazar—had been working on Bratz for years while employed by Mattel, including work for MGA.[15]

Procedural history.  On January 16, 2008, Mattel filed a motion for reconsideration seeking to amend the Discovery Master's December 31, 2008 to include Larian's post-2005 communications with Mattel employees.[16]  The motion was stayed with other Phase 2 discovery,[17] then denied without prejudice by a September 23, 2008 order in which the Court denied all pending motions without prejudice for reasons of administrative convenience.[18]  On January 28, 2009, Mattel sent a letter to Mr. Larian's counsel requesting a further meet and confer before filing this renewed motion for reconsideration.[19]  Larian eventually agreed to produce his post-2005 communications with Mattel employees.[20]  However, despite repeated requests by Mattel, Larian refused to stipulate to amend the Court's prior order excusing him from producing such communications.[21]

The MGA Parties' history of breaking promises to produce discoverable information.  The record is replete with instances of the MGA Parties making--and then breaking--promises to produce discoverable information.  For example, when Mattel was forced in February 2007 to compel MGA to produce

---

[15]  Transcript of Deposition of Veronica Marlow dated December 28, 2007 at 305:11-308:1, 363:15-365:17, Kidman Dec., Exh. 7.

[16]  Kidman Dec., ¶ 11.

[17]  Order dated February 4, 2008 at 3, Kidman Dec., Exh. 8.

[18]  Order dated September 23, 2008, Kidman Dec., Exh. 9.

[19]  Letter from Scott B. Kidman to Thomas J. Nolan and Jason Russell with cc to Amman Khan, dated January 28, 2009, attached to Declaration of Jon D. Corey ("Corey Dec.") as Exh. 1.

[20]  Corey Dec., ¶ 3.

[21]  Corey Dec., ¶¶ 4-9, Exhs. 2-5.

obviously discoverable documents about the origins of Bratz, MGA argued that it "has already cured many of the alleged 'deficiencies' in its production and will have resolved any remaining deficiencies before this matter is heard" and, therefore, that "the majority of Mattel's motion to compel is unnecessary and should be denied on that basis alone."[22]   Even by the time of the hearing, and then even by the time of the Discovery Master's Order in May 2007, however, MGA had still not produced the purportedly promised documents and, indeed, instead went on to appeal the Order compelling production and ask the Discovery Master for more time for compliance.[23]   When that was denied, MGA moved *ex parte* before Judge Larson objecting to the Order requiring production and seeking additional time.[24]   Judge Larson ordered the documents to be produced.[25]

In June 2007, Mattel served requests for production of financial documents necessary to calculate damages in connection with the claims to be tried in the Phase 1 trial, including documents sufficient to show MGA's revenue, costs and profits from the sale and licensing of Bratz dolls and other Bratz products.[26] After months of stonewalling,[27] MGA finally agreed to produce the requested

---

[22]   MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to Compel Production of Documents and Interrogatory Answers, dated February 20, 2007, at 10-11, Kidman Dec., Exh. 10.

[23]   MGA Entertainment Inc.'s Notice of Motion Objecting to Portions of the Discovery Master's May 15, 2007 Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Reponses By MGA, dated May 30, 2007, Kidman Dec., Exh. 11.

[24]   MGA's Emergency Ex Parte Application for Review of Special Master Infante's Order Denying MGA's Motion For Stay or Extension, dated June 22, 2007, Kidman Dec., Exh. 12.

[25]   Order dated July 2, 2007, Kidman Dec., Exh. 13.

[26]   Exhibit 1 to the Declaration of Scott B. Kidman dated November 26, 2007 ("November 2007 Kidman Dec."), attached to Kidman Dec. as Exh. 14.

[27]   See November 2007 Kidman Dec., ¶¶ 5-6, Exh. 2.  In response to nearly every request, for example, MGA objected and refused to produce documents or
(footnote continued)

financial documents by agreed upon dates in September 2007.[28]   In reliance on MGA's promise, Mattel did not move to compel.  MGA failed, however, to produce the documents as promised.[29]  When Mattel moved to compel in November 2007,[30] MGA made the same argument to the Court that it made to Mattel in an attempt to avoid the present motion to compel -- that there was no need to go forward with the motion to compel because it "anticipate[d]" that it would be able to produce the promised documents before the motion was heard.[31]  The Discovery Master rejected that argument and ordered MGA to produce the requested documents.[32]

## Argument

## I.   RECONSIDERATION OF THE DISCOVERY MASTER'S ORDER IS APPROPRIATE HERE

The Discovery Master is empowered by the District Court to decide matters falling within the Stipulation for Appointment of a Discovery Master, and therefore may reconsider or modify the December 31, 2007 Order.  See Smith v. Massachusetts, 543 U.S. 462, 475 (2005) ("'[A] district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment.'")

---

stated that it would produce only "relevant and responsive non-objectionable documents" (see November 2007 Kidman Dec., Exh. 2), an essentially meaningless response that the Discovery Master had already rejected as improper in connection with another motion to compel Mattel had to bring against MGA to obtain discoverable information (see Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA dated May 15, 2007 at 8, attached to November 2007 Kidman Dec. as Exh. 3).

[28]   See November 2007 Kidman Dec., ¶¶ 7-8, Exhs. 5 and 6.

[29]   See November 2007 Kidman Dec., ¶¶ 10-14 and Exhs. 7 and 8.

[30]   Mattel, Inc.'s Notice of Motion and Motion to Compel Production of Documents, dated November 26, 2007, Kidman Dec., Exh. 15.

[31]   MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to Compel Production of Documents, dated December 3, 2007 at 8, Kidman Dec., Exh. 16.

[32]   Order Granting Mattel, Inc.'s Motion to Compel Production of Documents By MGA Entertainment, Inc., dated December 28, 2007, Kidman Dec., Exh. 17.

1    (quotations omitted); <u>see also</u> <u>Fed. R. Civ. P.</u> 54(b) ("any order or other form of
2    decision . . . is subject to revision at any time before the entry of judgment
3    adjudicating all the claims and the rights and liabilities of all parties"); <u>Local Rule</u> 7-
4    18(a).

5              Reconsideration is appropriate here.  Because the Discovery Master
6    limited Mattel's request *sua sponte*, Mattel had no opportunity to respond.  Had it
7    been given such an opportunity, Mattel would have been able to direct the
8    Discovery Master to its allegations regarding the MGA defendants' ongoing course
9    of conduct and would have been able to provide legal authority demonstrating the
10   proper scope of discovery in such circumstances.  Moreover, because Mattel served
11   its supplemental responses alleging Jorge Castilla's theft of Mattel's trade secrets for
12   MGA's benefit in 2006 after Mattel filed its motion to compel, this and other
13   specific examples of post-2005 misconduct were not before the Discovery Master
14   when he ruled.

15   **II.   THE COURT SHOULD AMEND THE ORDER TO INCLUDE**
16   **LARIAN'S POST-2005 COMMUNICATIONS WITH MATTEL**
17   **EMPLOYEES**

18             Larian's communications with Mattel employees are clearly relevant.
19   The former Discovery Master found that such communications were relevant to
20   Mattel's allegations of trade secret misappropriation.  The only issue is the time
21   period that should be covered by the Court's Order.  Under the former Discovery
22   Master's limitation, Larian would be permitted to withhold communications with
23   Mattel employees that go directly to Mattel's allegation that the MGA defendants
24   are engaged in an ongoing, open-ended conspiracy that includes the theft of Mattel's
25   trade secrets.  This would include, for example, e-mails to Jorge Castilla in March
26   2006 directing him take Mattel's confidential information and bring it with him to
27   MGA.  Having alleged a continuing, open-ended conspiracy to steal Mattel's trade
28   secrets, Mattel is entitled to discovery through the present, not just through 2005.

1    See Gonzalez v. City of Fresno, 2007 WL 2781149, *4, *6 (E.D. Cal. September 21,
2    2007) (documents reflecting misconduct post-dating alleged torts were discoverable
3    where plaintiff alleged a "continuing pattern of wrongful misconduct").   The
4    evidence of additional, post-2005 instances of misconduct, including Castilla's theft
5    of trade secrets in 2006, that Mattel has been able to develop since the filing of its
6    counterclaims reinforces the relevance of and need for the communications sought
7    here.

8          Any argument by Larian that the time period covered by Mattel's
9    request should be limited to only the specific instances of misconduct Mattel has
10   alleged to date—Castilla's theft in 2006 for example—should be rejected.   The
11   premise of notice pleading and discovery under Rule 26 is that a party is entitled to
12   take discovery to support its claims.   See, e.g., Roberts v. Acres, 495 F.2d 57, 58-59
13   (7th Cir. 1974) ("The complaint is designed to apprise the defendant of the incident
14   out of which a cause of action arose and the general nature of the action.   The
15   relevant facts may be determined by discovery . . . ."); In re Boland, 79 F.R.D. 665,
16   668 (D.D.C. 1978) ("Under the liberal pleading requirements of the Federal Rules of
17   Civil Procedure a complaint need contain only the most basic grounds upon which
18   the court's jurisdiction is based and a short statement of the claim and the relief
19   sought.   Concomitantly liberal discovery rules permit parties to flesh out their
20   respective claims, defenses, and counterclaims, in due course after issue has been
21   joined.") (internal citations omitted); Elwonger v. Career Acad., Inc., 54 F.R.D.
22   514, 515 (E.D. Wis. 1972) ("[A] party is not required to set out in detail the facts
23   upon which his claims are based.   Such details may be obtained through the use of
24   the discovery techniques authorized by Rules 26-37.") (internal citations omitted).
25   Larian cannot shield from discovery additional instances of misconduct that may be
26   unknown to Mattel by pointing out that Mattel does not yet know of them.

27          Indeed, even as to instances not yet alleged or known and even if
28   Mattel had not alleged an ongoing course of conduct, it would still be entitled to

1  Larian's post-2005 communications with Mattel employees because such evidence is

2  "reasonably calculated to lead to the discovery of admissible evidence."  <u>Fed. R.</u>

3  <u>Civ. P.</u> 26(b)(1).   For example, communications between Larian and Mattel

4  employees in 2006, 2007 and 2008 would certainly be relevant to further

5  demonstrate that Larian engaged in a pattern of contacts with Mattel employees who

6  had access to and stole Mattel trade secrets.  This would be directly relevant not

7  only to Larian and MGA's liability itself, but also to relevant to proving that his

8  conduct was deliberate and knowing, not merely accidental or inadvertent, and to

9  impeach Larian's bland denials of knowledge of the trade secret thefts.

10         Larian has never disputed that post-2005 communications with Mattel

11  employees exist and has at least tacitly conceded their relevance.  If Larian truly

12  intends to produce all such communications, he could have had no legitimate basis

13  for refusing to stipulate to amend the existing court order.  His refusal to do so,

14  along with the MGA Parties' history of broken promises to produce discoverable

15  information, demonstrates the need for the order Mattel now seeks.

17                    <u>**Conclusion**</u>

18         For the foregoing reasons, Mattel respectfully requests that its motion

19  be granted in its entirety.

21  DATED:  March 4, 2009          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

23                    By /s/ Scott B. Kidman
24                         Scott B. Kidman
                          Attorneys for Mattel, Inc.