# EXHIBIT 1

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

12        Plaintiff,                     Consolidated with
                                         Case No. CV 04-09059
13     vs.                               Case No. CV 05-02727

14  MATTEL, INC., a Delaware             [PUBLIC REDACTED] MATTEL, INC.'S
    corporation,                         CONSOLIDATED SEPARATE
15                                        STATEMENT IN SUPPORT OF MOTION
          Defendant.                     TO COMPEL PRODUCTION OF
16                                        DOCUMENTS BY ISAAC LARIAN

17  AND CONSOLIDATED ACTIONS            DISCOVERY MATTER

18                                       [To Be Heard By Discovery Master
                                         Hon. Edward Infante (Ret.) Pursuant To
19                                       The Court's Order Of December 6, 2006]

20                                       Hearing Date:  December 14, 2007
                                         Time:           9:30 a.m.
21                                       Place:          JAMS S.F. Office

22

23

24

25

26          CONFIDENTIAL – ATTORNEYS' EYES ONLY

27     FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

28

7209/2320027.1

EXHIBIT ____
PAGE ____

1  (C.D. Cal. 2006) ("plaintiff's need for defendant Garber's financial documents

2  outweighs defendant Garber's claim of privacy, especially when the 'impact' of the

3  disclosure of the information can be protected by a 'carefully drafted' protective

4  order"); <u>Gohler v. Wood</u>, 162 F.R.D. 691, 697 (D. Utah 1995) ("Because the

5  protective order limits disclosure of confidential material to those who are

6  necessarily involved in the case, and these parties may use this information only for

7  purposes of litigating this case, excluding any business purpose, the court concludes

8  Deloitte's confidentiality concerns have been addressed adequately.").

9          Larian should be compelled to produce his phone records unredacted.

10  **B.**      **The Court Should Compel Larian to Produce Documents Relating**

11          **to His Communications with Mattel Employees (Request No. 198)**

12          **1.**      **Mattel's Requests and Larian's Responses**

13  **REQUEST FOR PRODUCTION NO. 198:**

14          All COMMUNICATIONS between YOU and any individual while the

15  individual was employed by MATTEL.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 198:**

17          Larian incorporates by reference the above-stated general objections as if

18  fully set forth herein.  Larian also specifically objects to this request on the grounds

19  that it is overbroad and seeks information not relevant to the subject matter of this

20  lawsuit or reasonably calculated to lead to the discovery of admissible evidence and

21  is, thus, overbroad, unduly burdensome and oppressive, including, without

22  limitation, in that it is not limited as to the individuals who participated in the

23  communications or as to time.  Larian also objects to this request on the grounds that

24  it seeks information in violation of the right of privacy.  Larian also objects to this

25  request on the grounds that it seeks confidential, proprietary or commercially

26  sensitive information, the disclosure of which would be inimical to the business

27  

to Bratz or Angel.  It is hard to imagine which telephone records responsive to this

28  (footnote continued)

EXHIBIT ___

PAGE  4

7209/2320027.1

1   interests of Larian and one or more third parties.  Larian further objects to this

2   request to the extent it seeks information the disclosure of which would implicate

3   the rights of third parties to protect private, confidential, proprietary or trade secret

4   information.  Larian also objects to this request to the extent it calls for the

5   disclosure of attorney-client privileged information or information protected from

6   disclosure by the work-product doctrine, joint defense or common interest privilege,

7   or other privilege.

8           **2.     Mattel's Statement of Position, Larian's Response, and**

9                   **Mattel's Reply**

10                  **(a)     Mattel's Statement of Position**

11          Larian's recruitment of Mattel employees has been squarely put at issue in this

12   case.  As such, Request No. 198 is directly relevant to the explicit allegations

13   underlying those claims by Mattel and its claims of trade secret theft.  To quote only

14   a few of the dozens of paragraphs in Mattel's pleadings detailing Larian's explicit

15   role in this misconduct:

16   •     "Counter-defendants have engaged in an ongoing, widespread pattern of
           illegal acts, consisting of inducing Mattel employees to steal Mattel's
17         confidential information or other property and take it with them to MGA to
           further MGA's business interests and to harm Mattel."[96]
18

19   •     "As detailed below, MGA and Larian approached three employees of Mattel's
           Mexican subsidiary ("Mattel Mexico"), enticed them to steal Mattel's most
20         sensitive business planning materials, and then hired them to assist in
           establishing and running MGA's new Mexican subsidiary."[97]
21

22   •     "In March 2004, Machado, Trueba and Vargas were making plans to travel
           from Mexico to Los Angeles to meet with MGA personnel in person prior to
23         resigning their positions at Mattel.  Also, by at least March 3, 2004, Machado,
           Trueba and Vargas were discussing with MGA personnel, including Larian,
24         specific details regarding setting up MGA offices in Mexico City.  On
           information and belief, prior to their resignations, Larian and others at MGA
25

26   request Mr. Larian believes he has a right to redact.

27   [96]  Mattel's Second Amended Answer and Counterclaims, ¶ 5, Kidman Dec.,
     Exh. 14.

28   [97]  Id., ¶ 37.

EXHIBIT _____ **1**

PAGE _____ **5**

1   directed Machado, Trueba and Vargas to steal virtually all Mattel confidential
    and proprietary information that they could access and bring it with them to
2   MGA.  This was reflected in, among things, e-mail messages that Mattel had
    discovered after Machado, Trueba and Vargas had resigned."[98]
3

4   •   Beginning on April 12, 2004, a week before his resignation and after
        numerous communications and meetings with Larian and other MGA
5       personnel, Machado began transferring additional Mattel confidential and
        proprietary information to a portable USB storage device (also know as a
6       "thumb drive") that he connected to his Mattel computer.  On Friday,
        April 16, 2004, the last business day before he gave notice, Machado copied
7       at least 70 sensitive documents to the portable USB storage device."[99]

8
    •   Mattel is informed and believes that Brisbois spoke with Isaac Larian, MGA's
9       CEO, on September 22, 2005 at approximately 8:30 p.m., when he called
        Ms. Brisbois at her home.  Mattel subsequently learned that on the same day
10      that she spoke with Mr. Larian and four days before she resigned, Brisbois
        copied approximately 45 Mattel documents on to a USB or "thumb" drive
11      with the volume label "BACKPACK."  On information and belief, Brisbois
        removed the thumb drive from Mattel Canada's office by concealing it in her
12      backpack or gym bag the last time that she left that office.  These documents
        contained Mattel trade secret and proprietary information".[100]
13

14  •   "In the past few years, MGA has hired directly from Mattel's United States
        operations at least 25 employees, from Senior Vice-President level to lower
15      level employees.  On information and belief, many of these employees were
        specifically targeted and recruited by MGA, including by Larian and Brawer,
16      based on the Mattel confidential and proprietary information they could
        access.  Many of these employees had access to information that Mattel
17      considers to be highly proprietary and confidential.  Mattel believes that some
        of those former Mattel employees may be observing their obligations not to
18      misappropriate, disclose or use Mattel's confidential and proprietary
        information.  Mattel is informed and believes, however, that certain additional
19      employees accessed, copied and took from Mattel confidential and
        proprietary information, including Mattel's strategic plans; business
20      operations, methods and systems; marketing and advertising strategies and
        plans; future product lines; product profit margins; and customer
21      requirements.  The misappropriated confidential and proprietary information
        included information that these Mattel employees were not authorized to
22      access.  On information and belief, the misappropriated confidential and
        proprietary information taken from Mattel is being disclosed to and used by
23      MGA for the benefit of MGA and to the detriment of Mattel."[101]

24

25

26  [98]  Id., ¶ 43.
27  [99]  Id., ¶ 44.
    [100]  Id., ¶ 74.
28  [101]  Id., ¶ 77.

7209/2320027.1

EXHIBIT _____1_____

PAGE _____6_____

1      Nor is the request overbroad.  It is limited to communications with Isaac

2  Larian who, as shown above, is a central figure the conduct that forms Mattel's trade

3  secret claims.  Any such communication by Larian -- the CEO of MGA -- is highly

4  relevant and clearly outweighs any purported burden, which would be minimal in

5  any event.  Larian should be compelled to produce all responsive communications.

6              **(b)    Larian's Argument in Response**

7      This Court should reject Mattel's attempts to compel production on its

8  overbroad and unduly burdensome request for all documents relating to Mr. Larian's

9  communications with Mattel employees.  Request No. 198 is totally unrestricted as

10  to time and subject matter and is, therefore, unreasonable on its face.  This Court has

11  already considered and rejected a substantially identical request[102] from Mattel

12  seeking all communications between MGA and any Mattel employee because, as the

13  Court found, "[a]lthough the request may encompass relevant documents, it is

14  overbroad insofar as it requires production of all communications, regardless of

15  subject matter."[103]  The same rationale applies to Request No. 198 to Mr. Larian.

16      Moreover, in a finite toy industry, where employees would have limited

17  options for continued employment within the industry after leaving an employer

18  such as Mattel,[104] employees are likely to maintain business contacts with

19  individuals at other toy manufacturers like MGA, whether or not they actually seek

20  employment with those manufacturers.  For a large corporation such as Mattel, the

21  sheer number of employees who may seek to maintain such contact by

22

23      [102]   "All COMMUNICATIONS between YOU and any individual while the

24  individual was employed by MATTEL." (Kennedy Decl. Ex. 7 (Mattel, Inc.'s First

25  Set of Requests for Documents and Things re Claims of Unfair Competition to

    MGA Entertainment, Inc.) at 22, Request No. 42.)

26      [103]   Kennedy Decl. Ex. 2 (August 13, 2007 Order Granting in Part and Denying

27  in Part Mattel's Motion to Compel Production by MGA) at 12:20-22.

      [104]   Mattel touts its 25,000 worldwide employees on its Web site:

28  http://www.mattel.com/about_us/default.asp. (Kennedy Decl. EXHIBIT 10.)

1  communicating with MGA or its officers is likely high, making this request even

2  more unduly burdensome and unreasonable than it appears on its face.

3      Finally, because Mattel's request seeks information regarding its own

4  employees while employed at Mattel, it is Mattel--and not Mr. Larian--who is in the

5  best position to determine activities of those employees during their employment.

6  In other words, in addition to the heavy and undue burden imposed by this omnibus

7  request, Mattel seeks information that is likely more readily available to Mattel than

8  to Mr. Larian, regardless of how "relevant" Mattel argues the information is.

9      For all of these reasons, the Court should reject this request, just as it did

10  when it previously considered Mattel's substantially identical request to MGA.

11              **(c)   Mattel's Reply**

12      Request No. 198 asks for communications between Larian and any

13  individual while the individual was employed by Mattel. Mattel knows such

14  documents exist, because it currently has several in its possession that it has

15  produced but that Larian has not produced.[105] Larian argues that this Request is

16  overbroad because it is similar to a Request to MGA that the Discovery Master

17  rejected. The comparison is faulty.

18      Obviously, a request for communications between **Larian** and any

19  individual while the individual was employed by Mattel is much narrower than a

20  request for such communications by any MGA employee. Because this request is

21  limited to communications from Larian, MGA's arguments about the number of

22  Mattel employees who seek to communicate with "MGA or its officers" are beside

23  the point.  As set forth in detail in Mattel's motion, Larian's recruitment of Mattel

24  employee's has been squarely put at issue in this case and is at the heart of Mattel's

25  misappropriation of trade secrets claim. Larian's communications with Mattel

26

27  [105]  See Albán Dec., Exhs. 37, 38, 39, 40 (communications involving Isaac
Larian and Mattel employees Carlos Gustavo Machado Gomez, Mariana Trueba

28  Almada, and Pablo Vargas San José).                EXHIBIT ____

-170-                              PAGE

1   employees while they were employed by Mattel are highly relevant to that claim

2   whether or not they specifically reference an offer of employment at MGA.

3            Larian's argument that Mattel has better access to documents regarding

4   Larian's communications with Mattel employees than Larian does makes no sense.

5   Larian could have had any number of communications with Mattel employees,

6   including those specifically identified in Mattel's counterclaim, through home

7   computers and telephones, cell phones and any number of other means that Mattel

8   has no access to at all and indeed that Mattel does not even know about.  Similarly,

9   Larian may have diaries and other documents referencing meetings with Mattel

10  employees that Mattel would have no record of.

11           Finally, Larian has offered only conclusory statements as to burden.  He states

12  that there may conceivably be some large number of communications, but this is not

13  enough.  Larian must make some showing that either (a) there is large quantity of

14  documents; or (b) he has some difficulty locating, gathering, or searching them.  He

15  has done neither.  Yet it was his burden to show why Mattel's requests are unduly

16  burdensome. Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966); Flatow v. The

17  Islamic Republic of Iran, 202 F.R.D. 35, 36 (D.D.C. 2001); Northrop Corp. v.

18  McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984).

19           For these reasons, Mattel's motion should be granted as to this Request.

20     **C.      The Court Should Compel Larian to Produce Documents Relating**

21              **to His Communications With the Press and Financial Institutions**

22              **Regarding Bratz, Bryant, Mattel of This Lawsuit (Request**

23              **Nos. 190-192, 194-197 and 199)**

24           **1.     Mattel's Requests and Larian's Responses**

25  **REQUEST FOR PRODUCTION NO. 190:**

26           All COMMUNICATIONS between YOU and any stock analyst, investment

27  analyst, investment bank, institutional lender, or venture capital fund RELATING

28  TO BRYANT, this ACTION OR MATTEL since January 1, 1999.

EXHIBIT _____ /

PAGE _____ 9

1
2

      **(g)**    <u>**Mattel's Reply Regarding Request Nos. 225, 227, and 228**</u>

3          These Requests ask for hard drives and related documents that belong

4 to Carter Bryant.  Mr. Larian makes the same objections that he did in response to

5 Request Nos. 222 and 224, above, and the same response applies.  Namely, Mattel

6 has evidence of spoliation, and is entitled to learn if other data has been destroyed.

7 Indeed, it was Carter Bryant's hard drive on which Mattel has learned that the

8 "Evidence Eliminator" software was installed.  If Larian is in possession of other

9 Carter Bryant hard drives, Mattel is entitled to know about it.

10          In addition to those arguments, Larian also objects that he is being

11 asked to produce hard drives and documents he does not possess.  This is a curious

12 objection.  If he does not possess these documents, he will not be producing them.

13 The Requests are designed to find out, for example, if Carter Bryant transferred a

14 hard drive of his to Isaac Larian, or if Mr. Larian is in possession of an MGA drive

15 that Carter Bryant used for work on Bratz.  If either is the case, Mattel is entitled to

16 know about it.  If not, Mattel is entitled to know that too.

17          Indeed, if Larian does not possess such drives, that only means that the

18 burden of producing them is completely absent, because there is nothing to produce.

19 For these reasons, Larian should be ordered to produce drives and documents in

20 response to Request Nos. 225, 227, and 228.

21

22 DATED:  December 10, 2007      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

23

24

25                         By /s/ Scott B. Kidman
                             Scott B. Kidman

26                             Attorneys for Mattel, Inc.

27

28

EXHIBIT _____ 1 _____

PAGE _____ 10 _____

7209/2320027.1

-207-

# EXHIBIT 2

1 | Hon. Edward A. Infante (Ret.)
JAMS
2 | Two Embarcadero Center
Suite 1500
3 | San Francisco, California 94111
Telephone:    (415) 774-2611
4 | Facsimile:    (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

12 | CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
13
              Plaintiff,
14                                          Consolidated with
       v.                                   Case No. CV 04-09059
15                                          Case No. CV 05-2727
   MATTEL, INC., a Delaware corporation,
16                                          **ORDER GRANTING IN PART AND**
              Defendant.                    **DENYING IN PART MATTEL'S**
17                                          **MOTION TO COMPEL PRODUCTION**
                                            **OF DOCUMENTS BY ISAAC LARIAN;**
18                                          **DENYING REQUEST FOR**
                                            **SANCTIONS**
19
20 | CONSOLIDATED WITH
   MATTEL, INC. v. BRYANT and
21 | MGA ENTERTAINMENT, INC. v. MATTEL,
   INC.
22

23

24                        I. INTRODUCTION

25       On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production

26 of Documents by Isaac Larian and for Award of Monetary Sanctions." Specifically, Mattel seeks

27 an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First

28 Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ **2**
PAGE _____ **11**

15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199, 207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents withheld based on any claimed privilege. Mattel also seeks an award of sanctions against Larian in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing this motion. Larian submitted an opposition on December 5, 2007.[1] Mattel submitted a reply on December 10, 2007. The matter was heard on December 14, 2007. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On June 13, 2007, Mattel propounded its First Set of Requests for Production of Documents and Things to Larian, the CEO and majority owner of MGA. On August 6, 2007, Larian filed his initial responses and objections. The parties met and conferred, and on September 25, 2007, Larian served supplemental responses and objections.

Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the 276 Requests. The parties met and conferred further, and Larian ultimately agreed to provide further responses to 55 of the disputed 87 Requests. Specifically, Larian agreed to supplement his responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that have not previously been produced." MGA's Opposition at pp. 1-2.

The remaining 32 Requests at issue can be grouped into ten categories: (1) personal financial data; (2) communications with Mattel employees; (3) statements to the media; (4) telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's arbitration; and (10) MGA Hong Kong and MGA Mexico.

//

---

[1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim statement of Mattel's position. The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve Mattel's motion on the merits.

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT _____ 2

PAGE _____ 13

1    he will do so.  Second, Larian's agreement to produce responsive documents is apparently limited

2    to documents from his so-called "personal files."  See Opposition at 2:2-3.

3          Mattel's counsel "never agreed that Larian could limit his response to the above requests

4    to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his

5    response to documents in Larian's 'personal files.'"  Supp. Decl. of Scott B. Kidman.

6    Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,

7    Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding

8    parties' "possession, custody or control."  The limitation is also unworkable because, as Mattel

9    points out, it "would create a situation by which responsive and highly relevant documents might

10   never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and

11   Larian, on the other hand, deems [a] document not to be part of his 'personal files.'"  Reply at p.6.

12   Market Research for Products Not at Issue:  Request Nos. 79-81

13         In Request No. 79, Mattel seeks all documents relating to any focus groups relating to

14   Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports.  In

15   his supplemental response, Larian agrees to produce the following documents, subject to his

16   general objections:

17          Larian will produce all documents within his possession, custody, or control that
            relate to focus groups for "MGA contested products" and "Mattel contested
18          products," as those terms are defined in Mattel's First Requests for Production
            regarding Claims of Unfair Competition, if any, and that have not already been
19          produced, that he discovers in the course of his reasonable search and diligent
            inquiry, and to which no privilege or other protection applies, including without
20          limitation, the attorney-client privilege or attorney's work product doctrine.

21
22   Mattel's Consolidated Separate Statement at pp. 20-21.

23         In Request No. 80, Mattel seeks all documents relating to any services or work performed

24   by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all

25   videotapes, summaries, notes and reports associated therewith.  In his supplemental response,

26   Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to

27   the request and to which no privilege or other protection applies.

28

EXHIBIT ___2___

PAGE ___14___

In Request No. 81, Mattel seeks all documents relating to Alaska Momma. In his supplemental response, Larian agrees to produce all documents relating or referring to Bratz, Angel or Bryant that are responsive to the request and to which no privilege or other protection applies.

Mattel contends that the requests are as narrowly tailored as possible to capture relevant information. More specifically, Mattel contends that Request No. 79 seeks documents that bear directly on the timing of the development of Bratz, as well as MGA's unfair competition claims and Mattel's defense thereto. Mattel contends that the requested documents may demonstrate that MGA is guilty of copying Mattel's Barbie and My Scene products.

Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome. As an example, Larian points to Request No. 80, which requests all documents relating to any services or work performed by L.A. Focus, regardless of whether that work has any relation to the claims and defenses in the action or any of the products at issue. Larian similarly contends that Request Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or defense in this case.

Mattel's motion to compel Larian to produce all documents responsive to Request No. 79 is granted. The request is reasonably limited in subject matter to Bratz and Angel. The requested documents are relevant to several issues in the case, including the origin, conception and creation of Bratz. The requested documents are also relevant to the unfair competition claims. Larian's supplemental response to Request No. 79 is unduly restrictive. Among other things, the definitions of "contested MGA products" encompass only those products that provide a basis for any claim by MGA against Mattel, and not claims by Mattel against MGA.

Mattel's motion to compel Larian to produce all documents responsive to Request Nos. 80-81 is denied. These requests, as drafted, are clearly overbroad because they have no reasonable limitations on subject matter or time. In particular, the requests are directed to L.A. Focus and Alaska Momma without regard to whether the services or work the companies provided has any relation to any product at issue.

Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

5

EXHIBIT ___2___

PAGE ___15___

documents related to the products at issue:  Bratz and Angel.  In Mattel's view, Larian's supplemental response is too narrow and "may result in the exclusion of highly relevant documents because the project, concept or design that is the subject of the focus group is deemed not to relate to something then known as Bratz or Angel."  However, Larian acknowledges that these types of hypothetical documents would still fall within the narrower scope of production proposed in his supplemental response.

Mattel also contends that it is entitled to all of the requested documents called for by Request No. 80 because they are relevant to credibility and bias, particularly if the documents show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A. Focus used.  It is, however, not apparent how deviations from standard procedures would impact credibility or bias.

As to Request No. 81, Mattel contends that the documents showing the relationship between Larian or MGA and Alaska Momma are relevant, even if they do not themselves specifically relate to Bratz, Angel or Bryant.  Mattel contends that communications from Larian or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's and Bryant's stories about how and when they came to be introduced.  Mattel also contends that documents showing other dealings between Larian or MGA and Alaska Momma are relevant to the issues of bias and credibility.  Mattel's supposition about the types of documents that might exist does not justify the type of far-reaching request it has propounded.  Request No. 81 is also not limited by either subject matter or time.

Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in accordance with his supplemental responses.

Bryant's Attorney and Niece:  Request Nos. 113-115

In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne Wang, a lawyer who represented Bryant in his contract negotiations with MGA.  In Request No. 114, Mattel seeks all documents, including without limitation all communications, between

EXHIBIT _____ **2**   6

PAGE _____ **16**

1   Larian or MGA and Anne Wang. In Request No. 115, Mattel seeks documents relating to Brooke

2   Gilbert, Bryant's niece. In his supplemental responses, Larian agrees to produce documents

3   relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or

4   other protection applies. Thus, the only issue is whether Larian should be required to produce

5   responsive documents that do not relate to Bratz, Angel or Bryant.

6       Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin

7   and conception of Bratz and the timing thereof. Mattel also contends that the documents may

8   disclose relevant information regarding Mattel's claims for breach of contract and inducing

9   breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's

10  contractual obligations with Mattel. Mattel also contends that Larian has failed to carry his

11  burden of demonstrating that the requests are overly burdensome.

12      Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114

13  are inadequate because the limitations on scope may eliminate otherwise relevant documents that

14  do not specifically refer to Bratz, Angel or Bryant. For example, Mattel contends that

15  communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or

16  Bryant may be relevant to the issues of credibility and bias.

17      Mattel contends that Request No. 115 seeks documents that are relevant to determine

18  whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software

19  that had been installed and run on the hard drive. Bryant claims to have given his computer to his

20  niece. Mattel also contends that the requested documents are relevant to the issues of credibility

21  and bias. Further, Mattel contends that Larian's supplemental response to Request No. 115 is

22  inadequate, because evidence of any communication between Larian and his niece, regardless of

23  subject matter, is significant.

24      Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome

25  because they lack any subject matter or time constraints. Further, Larian contends that the

26  requests constitute an improper fishing expedition and necessarily sweep in documents that are

27  not relevant to any claim or defense.

28  //

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 2 _____ 7

PAGE _____ 17

1    Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied.  The

2  requests are overbroad because they are not focused on relevant subject matter and are untethered

3  to any claim or defense.  Although Mattel asserts that responsive documents unrelated to Bratz,

4  Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility

5  is too remote to justify the breadth of Mattel's requests.

6    Larian's supplemental responses are sufficient to provide Mattel with relevant and

7  responsive documents.  Larian shall produce documents responsive to Request Nos. 113-115 in

8  accordance with his supplemental responses.

9

10  <u>The Larian Brothers' "Arbitrations and Suits":  Request Nos. 123-125</u>

11    In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and

12  suits between Larian and his brother, Farhad Larian.  In Request No. 124, Mattel seeks all

13  documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad

14  Larian against Larian, including without limitation all declarations, affidavits, transcripts, video

15  and/or audio recordings and sworn testimony given by any person in such suit or arbitration

16  proceedings.  In Request No. 125, Mattel seeks all documents relating to any and all settlements,

17  resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad

18  Larian.  In his supplemental responses, Larian agrees to produce all documents referring or

19  relating to Bratz that are responsive to the requests and to which no privilege or other protection

20  applies.

21    Mattel contends that the court has already ruled that the arbitration proceedings between

22  Larian and his brother are relevant because they involve, among other matters, the conception and

23  creation date for Bratz.  Mattel contends that Larian's supplemental responses improperly limit

24  the requests to the exclusion of potentially relevant documents.  For example, Mattel contends

25  that documents that relate to the business, activities and plans of MGA in early 2000 are relevant

26  to the timing of the development of Bratz, whether or not they specifically refer to Bratz.

27  Mattel also contends that the requested documents are relevant to the value of the Bratz brand and

28  the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

EXHIBIT _____ 2

PAGE _____ 18

1   example, profits from the sale and licensing of Bratz and other information that would impeach

2   Larian's testimony that he has not made any profits from Bratz. Further, Mattel contends that the

3   requested documents may lead to evidence of the assessments or valuations of the net worth or

4   value of MGA or Larian, regardless of any reference to Bratz specifically. Mattel also contends

5   that settlement documents may contain information that bears on the merit of Farhad Larian's

6   claims and the value of Bratz. Mattel also claims that the requested documents are relevant to

7   motive, intent, bias and credibility.

8       Larian contends the instant requests are overbroad and unduly burdensome. Further,

9   Larian contends that the relationship of the requested documents to any of the claims or defenses

10  in the present action is questionable, and the existence of such documents is conjectural.

11  Moreover, Larian contends that many of the categories of documents of interest to Mattel are

12  already the subject of other requests. Larian also contends that Request Nos. 123-125 impose an

13  undue burden because of the protective orders in place that strictly limit the use of any documents

14  from an arbitration and suit between Larian and his brother. Larian represents that he is currently

15  working with Mattel and his brother in an attempt to achieve suitable modifications to the orders

16  that are agreeable to all parties.

17      Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is

18  denied. The requests are clearly overbroad in calling for all documents from the arbitrations and

19  suits between Larian and his brother, without any subject matter limitations. Furthermore, these

20  requests are unduly burdensome to the extent they require production of documents that do not

21  refer or relate to Bratz. Such documents have marginal relevance, at best, to the claims and

    defenses in the case.

22      Larian's supplemental responses to Request Nos. 123 -125 are sufficient. Larian's

23  agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will

24  enable Mattel to obtain documents relevant to the claims and defenses in the case, including many

25  of the categories of documents of interest to Mattel. For example, under Larian's proposed

26  limitation, documents that relate to the business, activities and plans of MGA in 2000 that also

27  refer or relate to Bratz must be produced. Documents relating to the value of the Bratz brand are

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 2     9

PAGE _____ 17

1   also within the scope of Larian's proposed limitation and would have to be produced.  Documents

2   relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be

3   produced.  Further, Larian's proposed limitation does not necessarily foreclose discovery

4   regarding the appraisal of MGA prepared by Mr. Dutcher.  In particular, documents relating to

5   MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue

6   projections must be produced if such documents refer or relate to Bratz.  Accordingly, Larian

7   shall produce documents responsive to Request Nos. 123-125 in accordance with his

8   supplemental responses.

9

Telephone Records:  Request Nos. 178-181

10          In Request No. 178, Mattel seeks all documents relating to, including without limitation

11  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

12  from January 1, 1998 through January 1, 2001.  Larian objects to this request.

13          In Request No. 179, Mattel seeks all documents relating to, including without limitation

14  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

15  from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel.  In his supplemental

16  responses, Larian agrees to produce documents responsive to Request No. 179.  In response to

17  this motion, however, Larian contends that he should be permitted to produce documents

18  responsive to Request No. 179 in redacted form as discussed more fully below.

19          In Request No. 180, Mattel seeks all documents relating to, including without limitation

20  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

21  from April 1, 2004 through June 1, 2004.  Larian objects to this request.

22          In Request No. 181, Mattel seeks all documents relating to, including without limitation

23  phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf

24  at any time.  In his supplemental response, Larian agrees to produce all documents pertaining to

25  communications made prior to January 1, 2001 that are responsive to the request and to which no

26  privilege or other protection applies.

27  //

28

EXHIBIT ___2___   10

PAGE ___20___

1   Mattel contends that Request No. 178 seeks documents relevant to show Larian's

2   communications with Bryant and other Mattel employees while such employees may still have

3   been employed by Mattel and before Larian claims to have known about Bratz. Similarly, Mattel

4   contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and

5   Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them

6   to steal Mattel trade secrets.

7       Further, Mattel contends that the requested documents regarding telephone records are

8   relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show

9   communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent

10  they show communications with current and former Mattel employees, including Machado,

11  Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements

12  Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses. With respect to

13  burden, Mattel contends that it would be more burdensome to attempt to produce the requested

14  records in redacted form, and further, that the protective order in place is sufficient to protect

    Larian's privacy concerns.

15      Larian contends that the requests regarding telephone records are overbroad, completely

16  unbounded as to subject matter, and necessarily sweep in private information that is completely

17  irrelevant to any of the claims or defenses in the case. Larian also points out that the court

18  previously considered similar requests served on Bryant and allowed production of redacted

19  copies of telephone records as long as Bryant provided a signed verification that none of his

20  redactions related to Bratz, MGA or any other project he worked on for MGA. Specifically,

21  Bryant was permitted to produce redacted phone records as long as he provided a "signed

22  verification that none of the telephone records that were redacted relate or refer in any way to

23  MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA."

24  Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production

25  of Documents by Bryant). Larian contends that he should be permitted to redact responsive

26  documents consistent with the court's prior order. During the meet and confer, Larian offered to

27  provide redacted records and a signed verification that none of the redacted information was

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___2___  11

PAGE ___21___

1   relevant to the case, but Mattel did not respond to the offer.

2       Mattel's motion to compel documents responsive to Request Nos. 178 (all documents

3   relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied.  The

4   request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in

5   private information that is completely irrelevant to the case.  Larian should not be subjected to

6   such an intrusion into his private and business affairs when Mattel has made no attempt to tailor

7   the request to the communications, claims, and defenses identified above.

8       In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records

9   for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters

10  (Bratz and/or Angel).  Accordingly, Larian shall abide by his agreement to comply with Request

11  No. 179, as stated in his supplemental response.  Larian's proposal to produce responsive

12  documents in redacted form is appropriate to address his privacy concerns.  More specifically,

13  Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian

14  provides a signed verification that none of the redacted material refers or relates in any way to

15  MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA,

16  or that are otherwise relevant to the case.

17      Mattel's motion to compel documents responsive to Request No. 180 (documents relating

18  to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted.  Request No. 180

19  is reasonably tailored to a two month period during which MGA and Larian allegedly recruited

20  employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets.  See

21  Mattel's Second Amended Answer and Counterclaims, ¶¶37-54.  Larian may produce documents

22  responsive to Request No. 180 in redacted form as specified above with respect to Request No.

23  179.

24      Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian)

25  is overbroad as written because it has no time limits.  In his supplemental response, Larian agrees

26  to produce communications prior to January 1, 2001 that are responsive to the request.  Larian's

27  proposed limitation is a reasonable compromise that will provide Mattel with relevant documents

28  without imposing an undue burden.  Accordingly, Larian shall produce documents responsive to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___2___   12

PAGE ___22___

1 | Request No. 181 consistent with his supplemental response, and may produce such documents in

2 | redacted form as specified above with respect to Request No. 179.

3

4 | Statements to the Media:  Request Nos. 190-192, 194-197 and 199

5 | In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6 | and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7 | Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8 | to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9 | Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10 | regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

11 | products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

12 | Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

13 | also contain admissions regarding the origin and conception of Bratz and statements relevant to

14 | damages.

15 | Larian contends that the requests are overbroad and unduly burdensome, particularly

16 | because several of the requests seek publicly available information.  Further, Larian points out

17 | that the court has already considered and rejected as overbroad a nearly identical request served

18 | on MGA that called for all documents relating to any communications by MGA with any news

19 | organization regarding the contested MGA products or the contested Mattel products.  Larian

20 | contends that the same reasoning applies to the instant requests.

21 | Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

22 | 199 is denied.  Although several of the requests encompass potentially relevant documents, the

23 | requests are overbroad and encompass documents that have little to no relevance to the claims and

24 | defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

25 | sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

26 | Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

27 | or damages.

28 | //

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ____2____    13

PAGE ____23____

1    Furthermore, many of these overbroad requests seek publicly available information that is

2    readily accessible to Mattel for which Larian should not be burdened. To the extent the requested

3    documents and information are not publicly available, such documents and information are

4    marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm.

5    In either case, the burden and expense of searching for and producing responsive documents are

6    unjustified.

7

8    Communications With Mattel Employees: Request No. 198

9        In Request No. 198, Mattel seeks all communications between Larian and any individual

10   while the individual was employed by Mattel. Mattel contends that this request is directly

11   relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported

     burden of production.

12   Larian contends that the request is overbroad and unduly burdensome because it is

13   unrestricted as to time and subject matter. Larian also points out that the court has previously

14   found a similar request overbroad. Larian further contends that employees in the toy industry are

15   likely to maintain contacts with other toy manufacturers, and that a large corporation such as

16   Mattel is likely to have a high number of employees communicating with MGA or its officers,

17   which makes the request more unduly burdensome and unreasonable than it appears on its face.

18       Unlike other requests regarding communications, Request No. 198 is reasonably tailored

19   to the specific and numerous allegations in the case regarding alleged trade secret theft. Although

20   the request is not limited by subject matter, it is limited in other respects to seek relevant

21   documents without imposing an undue burden. The request is limited to communications

22   between Larian (and not MGA or persons acting on his behalf) and individuals employed at

23   Mattel. The request is also limited to only those communications that took place while the

24   individuals were employed at Mattel.

25       Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's

26   allegations of trade secret theft. The alleged trade secret theft began with Bryant's conduct in

27   1999 and continued to 2005. Accordingly, Larian shall produce documents responsive to Request

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____2_____ 14

PAGE _____24_____

1    No. 198 that are limited to the time frame 1999 to 2005.

2

3    Personal Financial Data:  Request Nos. 207-209 and 269

4         In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks

5    or financial institutions and other banking relationships since January 1, 1999.  In Request No.

6    208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such

7    income for each year from 1999 to the present.  In Request No. 209, Mattel seeks Larian's federal

8    and state tax returns for each year from 1999 to the present.  In Request No. 269, Mattel seeks

9    documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from

10   1999 to the present.

11        Mattel contends that Request No. 207 seeks information reasonably calculated to lead to

12   information showing the timing of payments to Bryant and others, which in turn is relevant to the

13   timing of the development of Bratz and issues of credibility.  Mattel contends that Request Nos.

14   208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial

15   condition, which in turn is relevant to damages.  Further, Mattel contends that it is entitled to

16   information regarding the sources of Larian's income to determine whether they are attributable

17   to the alleged misconduct and thus subject to disgorgement.

18        Larian contends that the requested personal financial information is not relevant to the

19   claims or defenses at issue.  More specifically, Larian contends that neither the names of his

20   banks nor his gross income have any bearing upon either compensatory or punitive damages or

21   Mattel's claim for disgorgement of profits.  Larian further contends that there is no support for

22   Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

23        Larian also contends that all three of the requests overlap substantially with requests

24   Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or

25   burden posed by these requests to him.  Further, Larian contends that the court has previously

26   found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered

27   no reason why the same result should not apply here.

28        Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted.  The

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __2__  15

PAGE __25__

1    requests are reasonably calculated to lead to the discovery of admissible evidence relevant to

2    several issues in the case.  For example, the requested information is likely to lead to information

3    regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of

4    the creation of Bratz.  The requested information is also likely to show Larian's income and net

5    worth, which are relevant to damages.  Further, Larian has failed to establish that the requests are

6    unduly burdensome.  Although Mattel has sought and obtained broad discovery of financial

7    information from MGA, Mattel is also entitled to seek financial information directly from Larian.

8         Mattel's motion is denied as to Request No. 209, provided that Larian complies with

9    Request Nos. 207, 208 and 269.  In light of the discovery of financial information ordered herein

10   and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax

11   returns.

12   Storage Devices:  Request Nos. 222 and 224

13        In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating

14   to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,

15   delete or modify digital information relating to Bratz, Angel, or Bryant.  Mattel contends that a

16   request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in

17   electronic form.  Mattel also contends that Rule 34 permits a party to obtain and test computer

18   hard drives and other storage devices.

19        Larian contends that the requests are overbroad, unduly burdensome, duplicative, and

20   ignore his privilege and privacy interests.  Larian also objects to an inspection of his actual hard

21   drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which

22   states that the amendment of Rule 34 relating to "electronically stored information is not meant to

23   create a routine right of direct access to a party's electronic information system."  See

24   Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes.  Larian contends that there is no justification for

25   an inspection of his electronic devices because there is no allegation that he improperly deleted

26   documents.

27        Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  2

PAGE  26

With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to
authorize the routine production of a party's electronic devices.  Mattel attempts to justify
Request No. 222 by pointing to various instances of alleged destruction of evidence.  See Mattel's
Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer
laptops; "wiping" information from the hard drives of Larian's computer laptops every six
months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and
destructive testing of Bryant's original Bratz drawings).  However, Mattel fails to explain how
these alleged instances of evidence destruction justify Request No. 222, other than to assert that it
has a right to inspect Larian's storage devices to ensure that relevant information has not been
deleted or permanently destroyed.  Mattel's stated purpose suggests instead that Mattel is
launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal
Rules of Civil Procedure.  See e.g. Rivera v. NIBCO, Inc., supra.  Furthermore, Mattel's stated
purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222.
Among other things, Request No. 222 encompasses every storage device that Larian has used to
copy digital information relating to Bratz.  Mattel does not need every CD and DVD containing
copies of Bratz-related video and audio content, but that is what the request seeks.

     Request No. 222 is also duplicative because it requests information that is sought in
numerous other requests served on Larian as well as MGA.  Mattel has served hundreds of
requests for documents and communications relating to Bratz, Angel, and Bryant.  To comply
with the requests, Larian was required to search for documents in both hard-copy and electronic
form.  Under the circumstances, it is unnecessary for Larian to also produce the requested storage
devices.

     Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims
and defenses in the case, and therefore do not justify the burden of production on Larian.

Bryant's Storage Devices:  Request Nos. 225, 227 and 228

     In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents
relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 2 _____ 17

PAGE _____ 27 _____

1   receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2   Larian contends that the requests are improperly directed to him because he does not have

3   personal possession of Bryant's hard drive or storage devices, or other information about those

4   devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5   requests are overbroad and unduly burdensome for the reasons discussed above in connection

6   with Request Nos. 222 and 224.

7   Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8   denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9

    MGA Hong Kong and MGA Mexico: Request Nos. 272 and 273
10
    In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA
11
    Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA
12
    Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to
13
    produce documents sufficient to show the ownership of these entities.
14
    Mattel contends that the requests seek information relevant to refute MGA Mexico's
15
    personal jurisdiction defense, and which bear on whether the acts of Larian and others are
16
    attributable to the entities. Mattel also contends that Larian's (or MGA's) ownership interest in
17
    these companies is relevant to net worth. Mattel contends that Larian's supplemental response is
18
    inadequate because it would allow Larian to withhold contradictory information and conceal the
19
    true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know
20
    the ownership of these entities at times when different allegedly wrongful acts took place and to
21
    determine if the ownership structure changed as a means of concealing assets or concealing the
22
    payments of commercial bribes.

23  Larian contends that these requests should not be made to him, but to the entities

24  themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

25  Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

26  served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

27  burdensome, and that at most, he should only have to produce a list of owners.

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

    EXHIBIT ____2____

    PAGE ____28____

Mattel contends that Larian cannot avoid his duty to respond to these requests simply by saying that the information is obtainable from another source.  Further, Mattel contends that Larian has failed to establish that the requests are unduly burdensome.

Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable from another source that is more convenient, less burdensome, or less expensive, namely MGA Mexico and MGA Hong Kong.  The requests are also overbroad and unduly burdensome.

## IV. CONCLUSION

For the reasons set forth above, it is hereby ordered as follows:

1.       At meet and confer sessions held after the filing of this motion, Larian agreed to produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-146, 213, 221 and 223.  Accordingly, Larian shall produce, without limitation, all non-privileged documents that are responsive to these Requests.

2.       With respect to the remaining requests that are at issue in this motion, Larian shall:

A.       produce, without limitation, all non-privileged documents that are responsive to Request Nos.  79, 180, 198 (for the time period 1999-2005), 207, 208 and 269; and

B.       produce, in accordance with his supplemental responses, non-privileged documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and 209.

C.       Larian may produce documents responsive to Request Nos. 179, 180 and 181 in redacted form as provided herein.

D.       Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199, 209, 222, 224, 225, 227, 228, 272 and 273.

3.       Larian shall produce all non-privileged documents that are required by this Order that are in his possession, custody or control and that have not already been produced no later than January 11, 2008.

4.       Larian shall produce a privilege log no later than January 15, 2008.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____2_____

PAGE _____29_____

1    5.    Mattel's request for sanctions is denied.

2    Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3    Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5    Dated: December 31, 2007

6                                              HON. EDWARD A. INFANTE (Ret.)
                                               Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

     EXHIBIT ___2___    20

     PAGE ___30___