QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Robert O'Brien]**<br><br>REPLY IN SUPPORT OF MATTEL, INC.'S RENEWED MOTION TO COMPEL CONSENT TO PRODUCTION OF ELECTRONIC MAIL MESSAGES<br><br>[Supplemental Declaration of Jon D. Corey filed concurrently]<br><br>Hearing Date:   TBA<br>Time:           TBA<br>Place:          Telephonic Hearing<br><br>**Phase 2**<br>Discovery Cut-off:    Dec. 11, 2009<br>Pre-trial Conference: Mar. 1, 2010<br>Trial Date:           Mar. 23, 2010 |

00505.07975/2816481.3

REPLY ISO RENEWED MOTION TO COMPEL RE MACHADO

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT ................................................................................................................ 3

I. THE DISCOVERY MASTER SHOULD COMPEL MACHADO TO CONSENT TO ALLOW THIRD-PARTY E-MAIL SERVICE PROVIDERS TO DISCLOSE COMMUNICATIONS RESPONSIVE TO MATTEL'S SUBPOENAS ............................................................................ 3

    A. THE DISCOVERY MASTER HAS THE POWER TO COMPEL MACHADO TO PROVIDE HIS CONSENT ...................... 3

    B. MATTEL HAS SHOWN GOOD CAUSE FOR REQUIRING MACHADO'S CONSENT ............................................................... 4

II. BECAUSE THE CONSENT IS NEITHER TESTIMONIAL NOR INCRIMINATING, THE FIFTH AMENDMENT DOES NOT PREVENT THE COURT FROM ORDERING THE CONSENT ................... 4

    A. The Bona Fides of Any Fifth Amendment Claim are Questionable ................................................................................... 5

    B. Compelling Machado's Consent Is Permitted Under the Fifth Amendment .......................................................................... 6

III. MATTEL IS ENTITLED TO RESPONSIVE E-MAIL MESSAGESS FROM YAHOO! ......................................................................................... 9

    A. Machado Waived All Objections To The Yahoo! Subpoena ................. 9

IV. MACHADO HAS WAIVED HIS RIGHT TO WITHHOLD DOCUMENTS ON THE BASIS OF PRIVILEGE ........................................ 10

V. THE IMPOSITION OF SANCTIONS AGAINST MATTEL IS UNWARRANTED ............................................................................................ 13

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

### Cases

Armstrong v. Church of Scientology Intern.,
  2000 WL 1681044 (9th Cir. 2000) ............................................................... 14

Bankston v. Vallejo City Unified School Dist.,
  2 Fed.Appx. 817 (9th Cir. 2001) .................................................................. 14

Barnd v. City of Tacoma,
  664 F.2d 1339 (9th Cir. 1982) ..................................................................... 14

Doe v. United States,
  487 U.S. 201 (1988) ....................................................................................... 6

In re Legato Systems, Inc. Sec. Litig.,
  204 F.R.D. 167 (N.D. Cal. 2001) ................................................................... 3

O'Grady v. Superior Court,
  139 Cal. App. 4th 1423 (2006) ...................................................................... 3

Theofel v. Farey-Jones,
  359 F.3d 1066 (9th Cir. 2004) ................................................................... 5, 9

U.S. v. Hempfling,
  2008 WL 703809 (E.D.Cal.) .......................................................................... 5

United States v. Austin,
  749 F.2d 1407 (9th Cir. 1984) ..................................................................... 14

United States v. Browne,
  624 F. Supp. 245 (N.D.N.Y. 1985) ....................................................... 6, 7, 8

United States v. Hubbell,
  530 U.S. 27 (2000) ......................................................................................... 8

United States v. Pierce,
  561 F.2d 735 (9th Cir. 1977) ..................................................................... 5, 8

United States v. Quigg,
  Crim. No. 80-41-1 (D. Vt. Jan. 5, 1981) ....................................................... 8

Viacom Intern., Inc. v. YouTube, Inc.,
  2008 WL 3876142 (N.D. Cal. Aug. 18, 2008) .............................................. 4

Wilson v. PFS, LLC,
  2008 WL 789898 (S.D. Cal. 2008) .............................................................. 14

**Statutes**

28 U.S.C. § 1927 ............................................................................................... 14

18 U.S.C. § 2702(b)(3) ........................................................................................ 3

Fed. R. Civ. P. 37 .............................................................................................. 13

Fed. R. Civ. P. 37(a)(5) ..................................................................................... 13

Fed. R. Civ. P. 45(c)(2)(B) .................................................................................. 1

**Other Authorities**

U.S. Internet Service Provider Assn., Electronic Evidence Compliance -- A Guide For Internet Service Providers, 18 Berkeley Tech. L.J. 945, 965 .......................... 3

**Preliminary Statement**

The Discovery Master should compel defendant Carlos Gustavo Machado Gomez ("Machado") to consent to the production of relevant email messages and find that Machado waived any claim of privilege by failing to produce a privilege log.

Machado spends much of his Opposition arguing about the scope of Mattel's subpoena to Yahoo!. This is a non-issue for this Motion, however, given that Machado has waived all such objections to Mattel's subpoena by failing to serve objections. See Fed. R. Civ. P. 45(c)(2)(B) (objections must be served before the earlier of the time specified for compliance in the subpoena or 14 days after the subpoena is served). He further claims that Mattel does not need to collect emails from a third party because Machado has reviewed his emails for all responsive emails and found none that are not privileged. Also in violation of the Rules, however, Machado has never produced a privilege log in this case, from which Mattel could assess the validity of any privilege claims. Nor is there any basis for his suggestion that he has in his possession all of the same emails that Yahoo! has. At his deposition, Machado testified that he does not have a practice of preserving emails from personal email accounts that he may have used for work or business. Thus responsive emails may have been destroyed by Machado that can be retrieved by Yahoo!.[1]

Aside from arguing about the breadth of Mattel's subpoena, Machado argues that Mattel's motion was brought in bad faith. Not so. Machado bases this bad faith argument, in part, on the claim that Mattel moved for the first time in its renewed motion for Machado "to provide written consent to the production of relevant emails from any email account (and to identify each email account) he has used for the past

---

[1] Transcript of the Deposition of Carlos Gustavo Machado Gomez ("Machado Tr."), dated October 14, 2008, at 101:2-12, attached as Exhibit D to the Declaration of Alexander H. Cote ("Cote Dec."), dated February 27, 2009.

five years."[2] That premise if false. Mattel requested the same relief *verbatim* in its original motion to compel.

Machado also accuses Mattel of making false statements in support of its motion. However, Machado's first example of an allegedly "false statement" shows the hollowness of that accusation. Machado accuses Mattel of misquoting his counsel when Mattel states that Machado's counsel originally represented that "Machado has already produced documents from his Yahoo! email account."[3] Machado claims that the unredacted sentence does not support this proposition: "Subject to his objections, Mr. Machado has already produced documents from his Yahoo! email account that are responsive to Mattel's document requests."[4] Machado argues that it is "clear" that what this sentence actually means is that "any responsive Yahoo! emails were withheld due to Mr. Machado's objections."[5] Needless to say, Mattel stands by its original quote.

Mattel renewed this motion in good faith, just as it brought its original motion in good faith nearly 16 months ago. Mattel simply seeks the discovery to which it is entitled and that it first sought a year-and-a-half ago. The Court should grant Mattel's motion and deny Machado's unsupported cross-request for sanctions.[6]

---

[2] Machado's Opposition to Mattel's Renewed Motion ("Opposition") at 8:3-6.
[3] Opposition at 2:16-25.
[4] Id.
[5] Opposition at 2:23-25.
[6] Machado requests sanctions in the conclusion to his opposition, but no where in his opposition does he provide authority for his request or evidentiary support for the amount claimed.

**Argument**

**I.  THE DISCOVERY MASTER SHOULD COMPEL MACHADO TO CONSENT TO ALLOW THIRD-PARTY E-MAIL SERVICE PROVIDERS TO DISCLOSE COMMUNICATIONS RESPONSIVE TO MATTEL'S SUBPOENAS**

**A.  THE DISCOVERY MASTER HAS THE POWER TO COMPEL MACHADO TO PROVIDE HIS CONSENT**

Machado is obligated to direct Yahoo! to produce documents within its possession. A party who by statute or contract has the exclusive right to command release of property held by another may be deemed in "control" thereof and ordered to produce the property. See In re Legato Systems, Inc. Sec. Litig. 204 F.R.D. 167, 170 (N.D. Cal. 2001) (party had "control" of transcript of his deposition in other proceedings because he had statutory right to obtain copy). Machado should be compelled to consent to the disclosure of e-mail communications by Yahoo! and other e-mail service providers. The Stored Communications Act ("SCA") allows service providers to produce communications with the consent of a party to the communication. See 18 U.S.C. § 2702(b)(3). If Machado fails to give his consent to the release of these documents, he should be sanctioned. See O'Grady v. Superior Court, 139 Cal. App. 4th 1423, 1446 (2006) (stating that where a party to an email communication being sought is also a party to the litigation it is within the court's power to require the party's consent to disclosure of the communication on pain of discovery sanctions); see also U.S. Internet Service Provider Assn., Electronic Evidence Compliance -- A Guide For Internet Service Providers, 18 Berkeley Tech. L.J. 945, 965 (courts have ordered Internet service providers' subscribers to give consent to the disclosure of the contents of their e-mail where the subscribers are subject to the court's jurisdiction).

### B. MATTEL HAS SHOWN GOOD CAUSE FOR REQUIRING MACHADO'S CONSENT

Machado claims that his consent is not necessary because he has reviewed all Yahoo! emails in his possession for emails responsive to Mattel's document requests and found none but privileged communications.[7]  Notably, Machado has not commented on other e-mail accounts that he may have used during the relevant time period, which alone makes apparent that his claim provides no assurance that complete discovery can be obtained unless Mattel's motion is granted.  Further, at his deposition, Machado testified that he does not have a practice of preserving emails from personal email accounts that he may have used for work or business; thus responsive emails may have been destroyed that are accessible from email providers.[8]  Finally, Machado's arguments are legally irrelevant since "there is no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession," particularly given that Machado has not produced the emails himself.  See Viacom Intern., Inc. v. YouTube, Inc., 2008 WL 3876142, *3 (N.D. Cal. Aug. 18, 2008).

### II. BECAUSE THE CONSENT IS NEITHER TESTIMONIAL NOR INCRIMINATING, THE FIFTH AMENDMENT DOES NOT PREVENT THE COURT FROM ORDERING THE CONSENT

Contrary to Machado's claim, Mattel's request for a consent is not an attempt to make an end run around Machado's claimed constitutional rights.  As shown below, Mattel's requested relief does not infringe Machado's Fifth Amendment right in any respect.  To the contrary, if the Discovery Master were to grant this motion on Fifth Amendment grounds, that would be an improper blanket assertion of the privilege preventing Mattel from even testing whether particular documents are or are not subject

---

[7] Opposition at 2:23-25, 4:19-24.

[8] Transcript of the Deposition of Carlos Gustavo Machado Gomez ("Machado Tr."), dated October 14, 2008, at 101:2-12, Cote Dec., Exh. D.

to the privilege. See United States v. Pierce, 561 F.2d 735, 741 (9th Cir. 1977) (party cannot invoke a blanket Fifth Amendment claim). Rather, the consent must be compelled, and any Fifth Amendment claim must be tested on a document-by-document basis. The only plausible Fifth Amendment question on this Motion is whether ordering the consent itself is a compelled testimonial act that will tend to incriminate Mr. Machado. Since it is not, Machado's Fifth Amendment contentions fail.

### A. The Bona Fides of Any Fifth Amendment Claim are Questionable

#### 1. Machado Waived Any Claim To Object to the Consent on Fifth Amendment Grounds

As an initial matter, Mattel served the Yahoo! subpoena and notice to Machado nearly a year-and-a-half ago.[9] Machado waived any objections to the Yahoo! subpoena when he failed to serve objections to Mattel's subpoena. See Fed. R. Civ. P. 45(c)(2)(B) (objections must be served before the earlier of the time specified for compliance in the subpoena or 14 days after the subpoena is served).[10] Machado's waiver included any objection on Fifth Amendment grounds. A party can waive its Fifth Amendment privilege by failing to timely respond to discovery requests. See U.S. v. Hempfling, 2008 WL 703809 (E.D.Cal.) at *4-5, *9 (magistrate judge found waiver of Fifth Amendment privilege where defendant failed to object or respond to discovery

---

[9] Yahoo! Subpoena, dated October 29, 2007, Corey Dec., Exh. 8; see also Notice of Subpoena Issued to Yahoo!, dated October 29, 2007, Supp. Corey Dec., Exh. 2.

[10] Machado's inaction stands in contrast to the Theofel v. Farey-Jones on which case he relies to argue that the Stored Communications Act prohibits the Court from enforcing the Yahoo! subpoena. In the Theofel case, the parties filed a motion to quash. See Theofel v. Farey-Jones, 359 F.3d 1066, 1071 (9th Cir. 2004) ("[w]hen [the parties] found out what had happened, they asked the court to quash the subpoena"). Machado has long since waived any objections to the Yahoo! subpoena.

requests, and district court entered default judgment against defendant for pattern of discovery abuse).

Furthermore, in response to Mattel's original Motion seeking a consent, Machado did not raise the Fifth Amendment issue in either of his two previous oppositions.[11]  In fact, Machado raised *no* substantive arguments in his original opposition.[12]  Machado did not provide any substantive arguments to Mattel's motion until two months after Mattel filed its initial motion.[13]  Even then, Machado failed to object on Fifth Amendment grounds.[14]  Instead, he raised the issue for the first time a week ago.  No new facts have been introduced, and the relief requested by Mattel is not new.

Machado waived his purported Fifth Amendment objection, and the Discovery Master may properly disregard his eleventh-hour argument.

### B. Compelling Machado's Consent Is Permitted Under the Fifth Amendment

The Fifth Amendment "protects a person only against being incriminated by his own compelled testimonial communications." Doe v. United States, 487 U.S. 201, 207 (1988) (court order compelling target of grand jury investigation to authorize foreign banks to disclose records of his accounts does not violate target's Fifth Amendment privilege against self-incrimination).  The privilege protects an individual from being "*compelled* to make a *testimonial* communication that is *incriminating*." United States v. Browne, 624 F. Supp. 245, 248 (N.D.N.Y. 1985) (emphasis in original) (internal cites omitted) (holding that defendant could not refuse to execute release of

---

[11] First Opp., Corey Dec., Exh. 13; see also Supp. Opp., Corey Dec., Exh. 15.

[12] See Supp. Opp., Corey Dec., Exh. 15.

[13] Original Motion, Corey Dec., Exh. 12; see also Supp. Opp., Corey Dec., Exh. 15.

[14] Id.

bank records on basis of Fifth Amendment). To find that the consent is prohibited by the Fifth Amendment, the Discovery Master must find all three factors in Machado's consent for production of email communications: compelled, incriminating and testimonial. Id.

Machado's consent would be testimonial if, by signing the form, Machado was thereby attesting to the accounts' existence, authenticity, or his control over the records. Id. (internal cites omitted) ("The consent form would be deemed testimonial if the defendant, by signing the form, was thereby attesting to the bank records' existence, authenticity, or defendant's control over the records"). In this case, however, the contents of the consent are mandated by statute and require that Machado state the name of the email account and that he sent or received communications from that address. See 18 U.S.C. § 2702(b)(3) (A provider may divulge the contents of a communication with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service). The consent does not require Machado to attest that he has control over the communications, that the communications are authentic, or that any responsive documents exist therein. The communications are in the control of the Internet service provider. Nor is the consent a testimonial act that has Machado attesting to the authenticity of any emails that may be produced. Here, Machado arguably has not authenticated any emails or attachments.[15] Any emails are not in his possession or control, but that of a third party, and he will be consenting to their release without actually having inspected them.

Nor is the element of incrimination present here. Courts recognize documents as incriminating if they are a "link in the chain" leading to prosecution. Browne, 624 F. Supp. at 249. While compelling Machado to sign the consent may lead

---

[15] Attachment to Letter from Corey to Cote, dated October 29, 2007, Corey Dec., Exh. 9.

to the production of records relevant to Mattel's trade secret claims, it is not self-incrimination. "[A] person may be required to produce specific documents even though they may contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege."[16] United States v. Hubbell, 530 U.S. 27, 35-36 (2000). "A determination of incrimination" is confined to whether the compelled communication itself is "incriminating or testimonial." See Browne, 624 F. Supp. at 249. Because the consent form is the only communication at issue on this motion -- not the content of any produced documents -- that is not incriminatory. In similar circumstances, courts have found that such consents "merely operate to 'remove an obstacle' to the production" of the documents," and not self-incrimination. Id. (quoting United States v. Quigg, Crim. No. 80-41-1, slip op. at 5 (D. Vt. Jan. 5, 1981); see also Browne, 624 F. Supp. at 249 (defendant could be compelled to sign a broadly-worded consent form authorizing the release of records from foreign national banks).

Machado should be compelled to sign the consent form required by statute. Indeed, any other outcome would lead to a perverse result: by failing to preserve his own emails such that certain emails exist only in the custody and control of a third-party Internet service provider, Machado will have effectively shielded potentially relevant documents from production. If the documents were in his own possession and control, he unquestionably would be obligated to produce them. As he acknowledges, the emails in question are very likely responsive to the document requests propounded on Machado personally. But because they are in the custody and control of an Internet

---

[16] In addition, Machado cannot assert a blanket Fifth Amendment privilege over any emails produced in response to the subpoenas. See United States v. Pierce, 561 F.2d 735, 741 (9th Cir. 1977) (a party cannot invoke a blanket Fifth Amendment claim). Rather, the claim with respect to any given document must be resolved individually.

service provider, Machado argues that they are immunized from disclosure. Neither the law nor logic supports such a conclusion.[17]

### III. MATTEL IS ENTITLED TO RESPONSIVE E-MAIL MESSAGESS FROM YAHOO!

#### A. Machado Waived All Objections To The Yahoo! Subpoena

Machado spends much of his opposition arguing his objections to the specific requests in Mattel's subpoena to Yahoo!, including asking the Discovery Master to deny Mattel's Motion because the requests are "overbroad."[18] As noted, however, because he served no objections to the Yahoo! subpoena, those objections have been waived.

Not only has Machado's overbreadth contention been waived, it is without merit. The Yahoo! subpoena is narrowly tailored to gather documents relevant to the claims in this case.[19] In fact, if Machado's representations that he opened the Yahoo! account in 2005 are to be believed, no emails should turn up for six categories of requests because these requests seek only communications either pre-dating April 20, 2004[20] or October 2, 2004.[21] In addition, three of the categories simply seek

---

[17] There also are far less drastic means available here to protect any asserted Fifth Amendment right, short of immunizing plainly non-protected communications from discovery as Machado essentially urges. For example, if the Discovery Master finds that the consent would amount to self-incrimination, the Discovery Master could order Machado's consent compelled, but issue a protective order providing that the consent cannot be relied upon as a testimonial document in any litigation.

[18] Opposition at 4:17-18.

[19] The breadth of Mattel's subpoena further distinguishes the facts here from those in the Theofel case, in which the Court found the subpoena to be invalid. The Theofel court found that "[the subpoena] was not merely technically deficient, nor a borderline case over which reasonable legal minds might disagree. It 'transparently and egregiously' violated the Federal Rules, and defendants acted in bad faith and with gross negligence in drafting and deploying it." Theofel, 359 F.3d at 1074.

[20] Yahoo! Subpoena at Request Nos. 7, 11-14, Corey Dec., Exh. 8.

information regarding Yahoo! email policies and procedures.[22] Two of the categories seek documents "sufficient to identify" other Yahoo! email accounts used by Machado.[23] Finally, the remaining categories are also narrowly tailored to the claims in the case. For instance, Request Nos. 2 and 3 seek all emails sent to or from any email address including "mattel.com" -- the suffix for Mattel email addresses. As Machado acknowledges, all of the emails from his Yahoo! account post-date his employment with Mattel, and such emails are relevant to Mattel's Phase 2 trade secret and unfair competition claims.

## IV. MACHADO HAS WAIVED HIS RIGHT TO WITHHOLD DOCUMENTS ON THE BASIS OF PRIVILEGE

Machado accuses Mattel of "concealing" an order of the previous discovery master and then relies on this order to conclude that Machado has no obligation to log any Yahoo! emails withheld on the basis of privilege.[24] Machado is wrong on both counts. Mattel did not refer to the order in question because the order does not apply here. The order addressed whether a plaintiff that had been party since the suit's inception, Mattel, was obligated to log privileged communications pre-dating the complaint or only those pre-dating when it learned of its claims against Bryant.[25] The Discovery Master found that Mattel should log privileged communications pre-dating the complaint.[26] In contrast, Machado was not a party at this case's inception. In fact, Machado was still a Mattel de Mexico employee until just a week before

---

[21] Id. at Request No. 16.

[22] Id. at Request Nos. 20-22.

[23] Id. at Request Nos. 18 & 19.

[24] Opposition at 5:8-11.

[25] Discovery Master's Order, dated May 6, 2008, at 1:22-2:5, Cote Dec., Exh. A.

[26] 5/6/08 Order at 3:25-4:1, Cote Dec., Exh. A.

Mattel's suit against Carter Bryant was filed.[27]  Two-and-a-half-years after the inception of the suit, on November 20, 2006, Mattel moved for leave to file an Amended Complaint against Bryant, MGA and related entities and individuals, including Machado.[28]  Thus, Machado did not become a party to the suit until, after avoiding service for weeks, Mattel was ultimately able to serve him by mail on March 26, 2007.[29]

Machado cannot legitimately avoid logging allegedly privileged documents that pre-date his involvement in the suit by two-and-a-half years, and nothing in the Discovery Master's Order supports his position otherwise.  Machado acknowledges that he set up his Yahoo! account in June 2005,[30] thus any allegedly privileged communications between June 2005 and November 20, 2006 should have been logged on a privilege log.  Machado also asserts that Machado's Yahoo! emails are "responsive only because Mr. Machado is discussing this case with the undersigned

---

[27]   Motion at 3:9-10.

[28]   The Amended Complaint ultimately became Mattel's Second Amended Answer and Counterclaims in the case that MGA filed against Mattel on April 13, 2005.

[29]   Mattel sought MGA's and Machado's agreement that it be allowed to amend its pleadings, but they refused and forced motion practice.  After the Court granted Mattel leave, Mattel attempted to serve Machado with process, but he evaded service repeatedly and then, once served, refused to appear in the action and eventually had to be defaulted.  Declaration of Donald Moon Regarding Attempts to Personally Serve Counter-Defendant Carlos Gustavo Machado Gomez with Process, dated March 27, 2007, Supp. Corey Dec., Exh. 6.; Default by Clerk of Carlos Gustavo Machado Gomez, dated May 11, 2007, Supp. Corey Dec., Exh. 7.

[30]   Declaration of Carlos Gustavo Machado Gomez ("Machado Dec."), dated February 27, 2009, at ¶ 3.

attorneys."[31] However, Machado's present counsel did not substitute into this case until September of 2007[32] -- more than two years *after* Machado opened his Yahoo! account.

Machado also accuses Mattel of "deliberately misquoting" Machado's counsel to support Mattel's waiver argument.[33] Again, Machado is wrong. Specifically, Machado accuses Mattel of misquoting his counsel when Mattel states that Machado's counsel originally represented that "Machado has already produced documents from his Yahoo! email account."[34] Machado claims that the sentence does not support this proposition: "Subject to his objections, Mr. Machado has already produced documents from his Yahoo! email account that are responsive to Mattel's document requests."[35] According to Machado's tortured interpretation, this sentence means "any responsive Yahoo! emails were withheld due to Mr. Machado's objections."[36] Unlike Machado, however, Mattel quoted counsel verbatim, and the entire sentence says exactly what Mattel said it did.[37]

Machado also accuses Mattel of misrepresenting the number of pages produced by Machado. Mattel will stipulate that Machado has produced about 200

---

[31] Opposition at 5:11-12.

[32] Notice of Substitution, dated September 28, 2007, Supp. Corey. Dec., Exh. 8.

[33] Opposition at 7:22-24.

[34] Opposition at 2:16-25.

[35] Id.

[36] Opposition at 2:23-25.

[37] Mattel has discovered one unintentional oversight that it should clarify. Upon receiving Machado's opposition, Mattel double-checked whether or not Yahoo! had ever responded substantively to the subpoena. It appears that Yahoo! sent a letter attaching a custodian declaration and a one-page summary of Machado's email account. The letter and attachments are attached as Exhibit 1 to the Supplemental Declaration of Jon D. Corey ("Supp. Corey Dec."), dated March 4, 2009 and filed concurrently herewith.

pages as opposed to 100 pages.[38] However, this does not change the analysis under Ninth Circuit law. The number he quibbles over -- 200 versus 100 pages -- is still a trivial number of documents, and Machado has had ample time to collect, review and determine whether he will claim privilege as to these documents.

Machado's opposition to Mattel's motion fails. For the reasons set forth above and in Mattel's original motion, the Court should find that Machado waived his privilege claims with respect to the communications he has failed to log on a privilege log.

## V. THE IMPOSITION OF SANCTIONS AGAINST MATTEL IS UNWARRANTED

Machado urges that the Discovery Master should sanction Mattel for its "bad faith" and for its "frivolous motion."[39] Sanctions against Mattel are not justified under any standard. Fed. R. Civ. P. 37 provides for monetary sanctions only if (1) the movant has not made a good faith effort to obtain the disclosure or discovery without court action; (2) the losing party was not substantially justified in making or opposing the motion; (3) other circumstances do not make an award of expenses unjust. See Fed. R. Civ. P. 37(a)(5).

Machado makes no showing here that any of these factors justify sanctions. In fact, these factors favor Mattel. Mattel is substantially justified in making this motion. Machado has admitted that he does not have a practice of preserving emails from personal email accounts that he may have used for work or business. Therefore, relevant emails may only be available from third party Internet service

---

[38] Based on Machado's representation in his opposition papers, Mattel reviewed Machado's Initial Disclosures and found that Machado attached 122 pages of documents to his Initial Disclosures. The 83 pages referenced in Mattel's motion were produced in response to Mattel's Requests for Production and begin with Bates number MACH0000001.

[39] Opposition at 1 & 10.

providers. The subpoena served on Yahoo! is narrowly tailored to capture documents relevant to Mattel's claims and defenses in this case. Notably, Mattel filed its original motion in November 2007, and Machado did not accuse Mattel's motion of being frivolous then.[40]

Sanctions must also be denied under 28 U.S.C. § 1927, which authorizes sanctions only where there is "a finding that counsel has acted in 'subjective bad faith,' that is, has knowingly or recklessly raised a frivolous argument or has raised a meritorious argument solely to harass the opposing party." Armstrong v. Church of Scientology Intern., 2000 WL 1681044, at *1 (9th Cir. 2000) (citations omitted). "Unreasonably and vexatiously" require a showing of intent, recklessness, or bad faith. Barnd v. City of Tacoma, 664 F.2d 1339, 1343 (9th Cir. 1982); see also United States v. Austin, 749 F.2d 1407, 1408 (9th Cir. 1984); Bankston v. Vallejo City Unified School Dist., 2 Fed.Appx. 817, 818 (9th Cir. 2001) ("Because a frivolous argument is insufficient to support an award of sanctions under 28 U.S.C. § 1927, we deny defendants' request.").[41] Here, Machado has not, and cannot, show that Mattel acted "knowingly or recklessly raised a frivolous argument or has raised a meritorious argument solely to harass the opposing party." To the contrary, as discussed above, Mattel was justified in bringing this motion.

Machado's request for sanctions must be denied.

---

[40] First Opp., Corey Dec., Exh. 13; see also Supp. Opp., Corey Dec., Exh. 15.

[41] Moreover, the court's inherent power to award sanctions for bad faith are only justified where the lawyer or party "acted in bad faith, vexatiously, wantonly or for oppressive reasons." Wilson v. PFS, LLC, 2008 WL 789898, at *5 (S.D. Cal. 2008). Machado makes no showing that Mattel's acted "vexatiously, wantonly or for oppressive reasons."

## Conclusion

For the reasons set forth above, and for those set forth in the Mattel's Motion to Compel, Mattel respectfully requests that the Discovery Master grant Mattel's motion.

DATED: March 5, 2009　　　　QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Jon D. Corey
　　Jon D. Corey
　　Attorney for Mattel, Inc.