EXHIBIT 4

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
                              )
            PLAINTIFF,        )
                              )     CASE NO.
        V.                    )     CV 04-9049 SGL
                              )     (RNBX)
MATTEL, INC., A DELAWARE      )     [CONSOLIDATED WITH
CORPORATION,                  )     NO. 04-9059 AND CASE NO. 05-2727]
                              )
            DEFENDANTS.       )
_____)
                              )
AND CONSOLIDATED ACTION (S).  )
_____)

# CONFIDENTIAL

# DEPOSITION OF
# CARLOS GUSTAVO MACHADO GOMEZ

# OCTOBER 14, 2008



REPORTED BY:
PAULA A. PYBURN
CSR NO. 7304
JOB NO. 08AE863-PP

COURT REPORTERS
515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT 4
PAGE 89

```
 1    EXHIBITS FOR IDENTIFICATION:  (Continued)
 2    Number:
 3    6483    Untitled Document, 18 pages        87
 4    6484    3/30/06 Letter from Linda Whaley   94
              to Gustavo Machado Gomez,
 5            2 pages
 6    6485    Spanish Document with             95
              Translation, 4 pages
 7
      6486    Spanish Document with             95
 8            Translation, 21 pages
 9    6487    Confidentiality and Inventions    96
              Assignment Agreement, 3 pages
10
      6488    Proprietary Information           97
11            Agreement, 5 pages
12    6489    M.G.A. Entertainment, Inc.,       98
              Nondisclosure Agreement, 2 pages
13
      6490    Acknowledgement and Agreement,    98
14            1 page
15    6491    Email Chain, with Translation, 7  107
              pages
16
17
18
19.
20
21
22
23
24
25
```

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT **4**
PAGE **90**

```
 1    QUESTIONS UNANSWERED BY WITNESS:
 2    PAGE   LINE        PAGE   LINE        PAGE   LINE
 3     37      2          62      4          91     20
       38     23          62     17          92      2
 4     39     17          62     23          92      9
       40     17          63      9          94      5
 5     43     21          65      7          95      5
       44     12          65     14          95     21
 6     45     10          65     20          97     25
       46     10          66      2         100     12
 7     46     15          66      7         100     20
       47      9          66     12         101     13
 8     47     13          66     21         101     25
       47     18          67      2         104      7
 9     47     23          67     22         106      5
       48      5          68      3         106     22
10     48     22          68     15         107      4
       49      3          68     21         108     15
11     49      9          69      2         108     22
       50      7          72     18         109     10
12     51     19          73      3         109     17
       52      5          73     10         109     23
13     52     10          73     19         110      7
       52     16          74      2         110     14
14     52     23          74      9         110     25
       53      5          74     16         111      7
15     53     10          80     21         111     18
       53     16          82     25         112      6
16     53     25          83      7         112     13
       54      6          83     23         112     22
17     56     19          88     23         113      6
       58     16          89      2         113     16
18     58     22          90      9         113     23
       59      3          90     13         114      7
19     59      9          90     17         114     13
       60      8          90     22         114     21
20     60     25          91      2         115      2
       61     18          91     10         116     21
21     61     23          91     15         117      5
22
23
24
25
```

EXHIBIT 4
PAGE 91

```
 1      LOS ANGELES, CALIFORNIA; FRIDAY, OCTOBER 14, 2008

 2                         10:45 A.M.

 3

 4            THE VIDEO TECHNICIAN:  Good morning.  We

 5      are on record at 10:45 a.m.  Today's date is

 6      October 14th, 2008; my name is Steven Togami, I am

 7      the video technician employed by J.T.V. Litigation

 8      Services, Inc., located in Los Angeles, California.

 9      We are taping these proceedings at 865 South

10      Figueroa Street in Los Angeles, California, 90017.

11            This is tape No. 1 for the videotaped

12      deposition of Carlos Gustavo Machado Gomez in the

13      action entitled "Carter Bryant v. Mattel, Inc.," and

14      related cross-actions.  This deposition is being

15      taken on behalf of the defendant.  The case number

16      is CV 04-9049 SGL.

17            May we please have introductions for the

18      record, beginning with the witness.

19            THE WITNESS:  Carlos Gustavo Machado Gomez.

20            MR. OVERLAND:  Mark Overland on behalf of

21      Mr. Machado.

22            MR. COTE:  Alexander Cote on behalf of the

23      witness.

24            MS. AGUIAR:  Lauren Aguiar from Skadden

25      Arps on behalf of the M.G.A. parties.
```

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT **4**
PAGE **92**

```
 1    STATE OF CALIFORNIA )
 2    COUNTY OF RIVERSIDE )  ss.

 3

 4         I, Paula A. Pyburn, CSR No. 7304, R.P.R.,
 5    C.L.R., in and for the State of California, do
 6    hereby certify:
 7         I am the deposition officer that
 8    stenographically recorded the testimony in the
 9    foregoing deposition;
10         Prior to being examined the deponent was first
11    duly sworn by me;
12         The foregoing transcript is a true record of
13    the testimony given.
14         Before completion of the deposition, review of
15    the transcript [xx] was [ ] was not requested.  If
16    requested, any changes made by the deponent (and
17    provided to the reporter) during the period allowed
18    are appended hereto.
19
20    Dated ____10/2a/68_____
21
22
23    _____Paula Pyburn_____
          Paula A. Pyburn
24        C.S.R. No. 7304, R.P.R.
          Certified LiveNote Reporter
25
```

121

EXHIBIT 4
PAGE 93

EXHIBIT 5

**COPY**

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiff
Mattel, Inc.

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

APR 2 7 2004

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
      SUE GABB

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | CASE NO. __BC314398__<br><br>COMPLAINT FOR:<br><br>(1)  BREACH OF CONTRACT;<br>(2)  BREACH OF FIDUCIARY DUTY;<br>(3)  BREACH OF DUTY OF LOYALTY;<br>(4)  UNJUST ENRICHMENT; AND<br>(5)  CONVERSION |

EXHIBIT __5__
PAGE __94__

07209/579342.1

COMPLAINT

1            Plaintiff Mattel, Inc. ("Mattel") brings this action against defendants Carter

2    Bryant ("Bryant") and Does 1 through 10 (all defendants being collectively referred to as

3    "defendants") and alleges as follows:

4

5                                Parties

6

7           1.    Mattel is a corporation organized and existing under the laws of the

8    State of Delaware and has its principal place of business in El Segundo, California.

9           2.    Mattel is informed and believes, and on that basis alleges, that defendant

10   Bryant is an individual currently residing in Springfield, Missouri.

11          3.    The true names and capacities of defendants sued herein as Does 1

12   through 10, inclusive, are unknown to Mattel, which therefore sues said defendants by such

13   fictitious names. Mattel will amend this Complaint to allege their true names and capacities

14   when the same are ascertained.

15          4.    Mattel is informed and believes, and on that basis alleges, that at all

16   times relevant herein, defendants, and each of them, were acting in concert and active

17   participation with each other in committing the wrongful acts alleged herein, and were the

18   agents of each other, and in doing the things alleged herein, each defendant was acting

19   within the course and scope of his, her or its agency and was subject to and under the

20   supervision of, and was acting with the knowledge of, his, her or its co-defendants.

21

22                     Jurisdiction and Venue

23

24          5.    During the time of the acts complained of herein, Bryant was employed

25   by Mattel in, and was a resident of, Los Angeles County. Bryant's contracts with Mattel that

26   are at issue in this action were executed, performed and breached by Bryant in Los Angeles

27   County. In addition, defendants committed the tortious conduct alleged herein while

28   physically located in Los Angeles County, and Mattel felt the effects of Bryant's breach and

-2-

EXHIBIT __5__

PAGE __95__

COMPLAINT

1  defendants' other wrongful acts in Los Angeles County.   Accordingly, this Court has
2  personal jurisdiction over defendants.

3        6.    Venue is proper pursuant to <u>Code of Civil Procedure</u> §§ 393 and 395(a),
4  as the causes of action arose in Los Angeles County, the contractual obligations at issue were
5  incurred, were to be performed and were breached by Bryant in Los Angeles County, and
6  Bryant does not currently reside in California.

7

8  <u>Factual Background</u>

9

10        7.    Mattel is a long standing and successful independent manufacturer and
11  marketer of toys, dolls, games and stuffed toys and animals.  Mattel was founded in 1945 by
12  Elliot and Ruth Handler and Harold "Matt" Mattson.  The name of the company was created
13  by incorporating the names of two of its founders, "MATT-son" and "EL-liot."  Originating
14  from the Handlers' garage in Southern California, the company greatly expanded its
15  operations following World War II and soon began to thrive as its reputation for producing
16  high-quality toys spread.  During the next several decades, Mattel became world famous for
17  producing high-quality products at reasonable prices.  Today, some of Mattel's most famous
18  brands include BARBIE, HOT WHEELS, MATCHBOX and FISHER-PRICE.

19        8.    Critical to Mattel's success, and to the livelihood of its employees, is
20  Mattel's ability to design and develop new products.  Mattel invests many millions of dollars
21  in product design and development annually, and it introduces hundreds of new products
22  each year.  In El Segundo, California alone, Mattel maintains a 180,000 square-foot design
23  center that houses more than 850 designers, sculptors, painters and other artists, whom
24  Mattel pays to work exclusively and full-time to create the products that Mattel sells and on
25  which Mattel's business depends.

26        9.    Defendant Bryant was employed by Mattel from September 1995
27  through April 1998, and then again from January 1999 through October 2000, as a product
28  designer at Mattel's design center in El Segundo, California.

**EXHIBIT 5**
**PAGE 96**

-3-

COMPLAINT

10.   On January 4, 1999, upon starting his second term of employment by Mattel, and as a condition of and in consideration for his employment, Bryant executed an Employee Confidential Information and Inventions Agreement (the "Employee Agreement"). Among other things, Bryant agreed that he would not, without Mattel's express written consent, "engage in any employment or business other than for [Mattel], or invest in or assist (in any manner) any business competitive with the business or future business plans of [Mattel]." Bryant further acknowledged that he held a position of trust with Mattel. In addition, Bryant assigned to Mattel all rights, title and interest in "inventions," including without limitation "designs," that he conceived or reduced to practice during his employment by Mattel. A true and correct copy of Bryant's Employee Agreement with Mattel is attached as Exhibit A.

11.   Also on January 4, 1999, Bryant executed Mattel's Conflict of Interest Questionnaire (the "Conflict Questionnaire"). Among other things, Bryant certified in the Conflict Questionnaire that, other than as disclosed, he had not worked for any competitor of Mattel in the prior twelve months and had not engaged in any business venture or transaction involving a Mattel competitor that could be construed as a conflict of interest. Bryant specifically agreed that he would immediately notify his supervisor of any change in his situation that would cause him to change any of the foregoing certifications. The only conflict disclosure that Bryant made on the Conflict Questionnaire (or at any time subsequently) concerned freelance work that is unrelated to the conduct alleged herein. A true and correct copy of the Conflict Questionnaire executed by Bryant is attached as Exhibit B.

12.   In late November 2003, Mattel learned that Bryant had secretly aided, assisted and worked for a Mattel competitor, including without limitation by entering into an agreement with the competitor, during the time Bryant was employed by Mattel pursuant to the above-referenced agreements and was being paid by Mattel as a product designer. Bryant's agreement with the competitor obligated Bryant to provide product design services to the competitor on a "top priority" basis. Bryant's agreement also provided, among other

07209/579342.1

-4-

EXHIBIT __5__
PAGE __97__

COMPLAINT

1  things, that Bryant would receive royalties and other consideration for sales of products on

2  which Bryant provided aid or assistance; that all work and services furnished by Bryant to

3  the competitor under the agreement purportedly would be considered "works for hire"; and

4  that all intellectual property rights to preexisting work by Bryant purportedly would be

5  assigned to the competitor.  In addition, while Bryant was employed by Mattel, Bryant and

6  the other defendants converted, misappropriated and misused Mattel property and resources

7  for the benefit of, and to aid and assist, Bryant personally and Mattel's competitor.

8          13.     During the time that he was employed by Mattel and thereafter, Bryant

9  concealed these actions from Mattel, including without limitation by failing to notify his

10  supervisor of his conflict of interest regarding the competitor and by making affirmative

11  misrepresentations to Mattel management upon his departure from Mattel.  Because of

12  Bryant's acts of concealment and his misrepresentations to Mattel, Mattel had no reason to

13  suspect that Bryant had worked for the competitor while still employed by Mattel until late

14  November 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's

15  agreement with the competitor and saw that the date of the agreement predated Bryant's

16  departure from Mattel.

17          14.     As a consequence, Bryant breached his contracts with Mattel and

18  violated his duty of loyalty and his fiduciary duties to Mattel; the other defendants have

19  unlawfully aided and abetted his violation of such duties; and each of the defendants has

20  been unjustly enriched and engaged in acts of conversion.

21

22                          FIRST CLAIM FOR RELIEF

23                              (Breach of Contract)

24

25          15.     Mattel repeats and realleges each and every allegation set forth in

26  paragraphs 1 through 14, above, as though fully set forth at length.

27          16.     Pursuant to his Mattel Employment Agreement, and for good and

28  valuable consideration, Bryant agreed that he would not, without Mattel's express written

07209/579342.1

-5-

EXHIBIT ___5___

PAGE ___98___

COMPLAINT

1   consent, engage in any employment or business other than for Mattel or assist in any manner
2   any business competitive with the business or future business plans of Mattel during his
3   employment with Mattel.  Pursuant to his Mattel Employment Agreement, Bryant further
4   assigned to Mattel all right, title and interest in "inventions," including without limitation
5   "designs," that he conceived or reduced to practice during his employment by Mattel.  In
6   addition, pursuant to the Conflict Questionnaire, Bryant certified that, other than as
7   disclosed, he had not worked for any competitor of Mattel and had not engaged in any
8   business venture or transaction involving a Mattel competitor that could be construed as a
9   conflict of interest.  Bryant further promised that he would notify his superior immediately
10  of any change in his situation that would cause him to change any of the foregoing
11  certifications or representations.

12          17.     The Employment Agreement and the Conflict Questionnaire are valid,
13  enforceable contracts, and Mattel has performed each and every term and condition of the
14  Employment Agreement and Conflict Questionnaire required to be performed by Mattel.

15          18.     Bryant materially breached the foregoing contracts with Mattel, in that,
16  among other things, he secretly aided, assisted and worked for a Mattel competitor during
17  his employment with Mattel, without the express written consent of Mattel.

18          19.     As a consequence of Bryant's breach, Mattel has suffered and will in
19  the future continue to suffer damages in an amount to be proven at trial.  Such damages
20  include, without limitation, the amounts paid by the competitor to Bryant during his Mattel
21  employment; the amounts paid by the competitor to Bryant as a result of the work he
22  performed for the competitor during his Mattel employment; the amount that Mattel paid
23  Bryant during the time he wrongfully worked for the competitor; the value of information
24  and intellectual property owned by Mattel which Bryant provided to the competitor; the
25  value of the benefits the competitor obtained from Bryant during the time he was employed
26  by Mattel; and the value of the benefits the competitor obtained from Bryant as a result of
27  the work he performed for the competitor during his Mattel employment.
28

EXHIBIT **5**
PAGE **99**

COMPLAINT

20. Furthermore, Bryant's conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Bryant specifically acknowledged in his Employment Agreement that his breach of the Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies." Accordingly, Mattel is entitled to orders mandating Bryant's specific performance of his contracts with Mattel and restraining Bryant from further breach.

## SECOND CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

21. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 20, above, as though fully set forth at length.

22. Bryant held a position of trust and confidence with Mattel. In his position, Bryant had access to and was entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of his job assignments and duties. In his position, Bryant also represented Mattel in its dealings with third parties and, in his actions in the course and scope of his employment with Mattel, was an agent of Mattel. Bryant confirmed his relationship of trust with Mattel in the Employee Agreement. Bryant thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests or that would deprive Mattel of any opportunities, profit or advantage which Bryant might bring to Mattel.

23. Bryant breached his fiduciary duty to Mattel in that, while employed by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into an agreement with a Mattel competitor. As alleged

EXHIBIT __5__

PAGE __100__

-7-

COMPLAINT

1  above, Bryant also breached the aforementioned duty by using Mattel property and resources
2  for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3        24.    The other defendants, acting with full knowledge of Bryant's obligations
4  to Mattel, aided and abetted Bryant in such conduct.

5        25.    As a direct and proximate result of defendants' wrongful conduct,
6  Mattel has incurred damages in an amount to be determined at trial.

7        26.    Defendants acted with malice, fraud and oppression, and in conscious
8  disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages
9  against defendants in an amount to be determined at trial.

10       27.    Furthermore, defendants' conduct has caused, and unless enjoined will
11  continue to cause, irreparable injury to Mattel that cannot be adequately compensated by
12  money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel
13  is entitled to an order restraining further breach of Bryant's fiduciary duty to Mattel and/or
14  restraining defendants from continuing to benefit from such breach.

15

16                        THIRD CLAIM FOR RELIEF

17                        (Breach of Duty of Loyalty)

18

19       28.    Mattel repeats and realleges each and every allegation set forth in
20  paragraphs 1 through 27, above, as though fully set forth at length.

21       29.    As an employee of Mattel, Bryant owed a duty of undivided loyalty to
22  Mattel, his employer. Pursuant to this duty, Bryant could not compete with Mattel or assist
23  a competitor of Mattel during his employment with Mattel. Pursuant to this duty, Bryant
24  was required to always give preference to Mattel's business over his own, similar interests
25  during the course of his employment with Mattel.

26       30.    Bryant breached his duty of loyalty to Mattel in that, while employed
27  by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including
28  without limitation by entering into an agreement with a Mattel competitor. As alleged

EXHIBIT __5__
PAGE __101__

07209/579342.1

-8-

COMPLAINT

1   above, Bryant also breached the aforementioned duty by using Mattel property and resources

2   for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3        31.   The other defendants, acting with full knowledge of Bryant's obligations

4   to Mattel, aided and abetted Bryant in such wrongful conduct.

5        32.   As a direct and proximate result of defendants' wrongful conduct,

6   Mattel has incurred damages in an amount to be determined at trial.

7        33.   Defendants acted with malice, fraud and oppression, and in conscious

8   disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

9   against defendants in an amount to be determined at trial.

10       34.   Furthermore, defendants' conduct has caused, and unless enjoined will

11  continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12  money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

13  is entitled to an order restraining further breach of Bryant's duty of loyalty to Mattel and/or

14  restraining defendants from continuing to benefit from such breach.

15

16                    FOURTH CLAIM FOR RELIEF

17                       (Unjust Enrichment)

18

19       35.   Mattel repeats and realleges each and every allegation set forth in

20  paragraphs 1 through 34, above, as though fully set forth at length.

21       36.   Defendants, by the aforementioned conduct, unfairly used and diverted

22  Mattel property, resources and opportunities for the benefit of, and to aid and assist,

23  themselves, all without authorization by or payment to Mattel for the same. Defendants have

24  been unjustly enriched as a result.

25       37.   Mattel is entitled to an award of all such amounts by which defendants

26  have been unjustly enriched in an amount to be determined at trial.

27

28

EXHIBIT **5**
PAGE **102**

COMPLAINT

38.    Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

39.    Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining defendants from any further unjust enrichment.

### FIFTH CLAIM FOR RELIEF

(Conversion)

40.    Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 39, above, as though fully set forth at length.

41.    Mattel was entitled to, inter alia, Bryant's exclusive services and the exclusive ownership of his inventions as a Mattel product designer.  However, Bryant provided such services, and purported to grant rights to such inventions, to a competitor during the time of his exclusive Mattel employment.  All such services and the inventions and work product resulting from such services, including without limitation ideas, concepts, rights, designs, proprietary information, and other intellectual property and intangible property created by Bryant during the term of the aforesaid agreements, were the property of Mattel.  Such services and property were provided by Bryant to others, including defendants, and used by them.

42.    Defendants wrongfully converted Mattel property and resources by asserting ownership thereto and by appropriating and using Mattel's property and resources for their own benefit and gain and for the benefit and gain of others, without the permission of Mattel.

EXHIBIT __5__
PAGE __103__

07209/579342.1

-10-

COMPLAINT

43.     As a direct and proximate result of defendants' wrongful conversion of Mattel's property and resources, Mattel has incurred damages.  Mattel is entitled to recover compensatory damages against defendants in an amount to be determined at trial.

44.     Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

45.     Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining defendants from further conversion of Mattel property and resources and/or restraining defendants from continuing to benefit from such conversion.

## PRAYER FOR RELIEF

WHEREFORE, Mattel hereby respectfully requests that this Court:

A.     Award Mattel its damages;

B.     Order defendants to disgorge to Mattel all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by defendants as a result of the conduct described herein;

C.     Order specific performance by Bryant to comply with and satisfy Bryant's contractual obligations to Mattel;

D.     Enter an injunction restraining defendants, and all those acting in concert or participation with them, from engaging in further wrongful conduct and/or from continuing to benefit from their wrongful conduct;

E.     Order defendants to pay Mattel the full cost of this action and Mattel's reasonable attorneys' fees;

F.     Award Mattel punitive damages in an amount sufficient to punish defendants and deter such misconduct in the future; and

EXHIBIT __5__
PAGE __104__

-11-

COMPLAINT

1          G.    Award such other and further relief as this Court deems just and proper.

2

3  DATED:  April 27, 2004          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

4

5

6                      By _____
                         Michael T. Zeller

7                         Attorneys for Plaintiff
                         Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT **5**
PAGE **105**

-12-

COMPLAINT

Exhibit A

EXHIBIT 5
PAGE 106

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates, I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will insure to the benefit of and be binding upon the successors and assigns of the of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment for any term, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature: *Carter H. Bryant*

Employee Name (print): CARTER H. BRYANT

Date: 01/04/99

MATTEL, INC.
By: *Teresa Newcomb*
Signature

TERESA NEWCOMB
Name of Witness (print)

EXHIBIT **A** PAGE **13**

EXHIBIT **5**
PAGE **107**

Exhibit B

EXHIBIT 5
PAGE 108

## CONFLICT OF INTEREST QUESTIONNAIRE

BRYANT CARTER H.     PROJECT DESIGNER
Name (Last, First, M.I.)                    Job Title                               Department

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

○ YES ● NO   1. Have you owned, directly or indirectly, any interest in a Mattel supplier?

○ YES ● NO   2. Have you owned, directly or indirectly, and interest in a Mattel competitor?

○ YES ● NO   3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?

● YES ○ NO   4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?

● YES ○ NO   5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?

○ YES ● NO   6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?

○ YES ● NO   7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?

○ YES ● NO   8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?

○ YES ● NO   9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

4, 5, freelance design & artwork in 1998,
from appx. 5/98 - 11/98 for the Ashton Drake
galleries.

I certify that I have read Mattel's policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

Signature                                              01/04/98
                                                         Date

## EXHIBIT B PAGE 14

## EXHIBIT 5
## PAGE 109

EXHIBIT 6

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 090378)
    johnquinn@quinnemanuel.com
3    Michael T. Zeller (Bar No. 196417)
    (michaelzeller@quinnemanuel.com)
4    Jon D. Corey (Bar No. 185066)
    (joncorey@quinnemanuel.com)
5    Timothy L. Alger (Bar No. 160303)
    (timalger@quinnemanuel.com)
6   865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
7   Telephone: (213) 443-3000
   Facsimile: (213) 443-3100

8   Attorneys for Mattel, Inc.

9

10            UNITED STATES DISTRICT COURT

           CENTRAL DISTRICT OF CALIFORNIA

11              EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | DECLARATION OF DONALD MOON REGARDING ATTEMPTS TO PERSONALLY SERVE COUNTERDEFENDANT CARLOS GUSTAVO MUCHADO GOMEZ WITH PROCESS |
| Defendant. | |
| AND CONSOLIDATED ACTIONS. | |

FILED
2007 MAR 30 PM 3:29
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY ___

EXHIBIT 6
PAGE 110

7209/2090854.1

 

1    I, Donald Moon, declare as follows:

2        1.    I am a licensed Private Investigator in the State of California,

3    Private Investigator Number 22017. I make this declaration of personal, firsthand

4    knowledge and, if called and sworn as a witness, I could and would testify

5    competently thereto.

6        2.  ·   On or about January 26, 2007, I was asked to effect service of

7    the following documents in the above-captioned matter on Carlos Gustavo Machado

8    Gomez: Summons, Mattel, Inc.'s Amended Answer in Case No. 05-2727 and

9    Counterclaims and Standing Order dated April 14, 2006.

10       3.    On Sunday, January 28, 2007, at approximately 8:00 a.m., I

11   made my first attempt to serve the Mr. Machado at his residence at 13700 Marina

12   Pointe Dr., unit 916, Marina Del Rey, California. This location is a high-rise

13   security condominium complex with both vehicle and pedestrian restricted access. I

14   went to the security desk in the lobby of the building, exhibited my private

15   investigator credentials to the guard at the security desk and informed him that I was

16   there to serve legal process on Mr. Machado. The guard indicated that I would be

17   allowed access to the area where the Mr. Machado's unit is located, but that I would

18   have to be escorted by a security guard. Another guard escorted me to

19   Mr. Machado's unit. I knocked on the door and asked for Mr. Machado by name,

20   but there was no response. The security guard remained with me at all times and

21   escorted me back to the lobby. I then left the complex.

22       4.    On January 28, 2007, at approximately 8:00 p.m., I returned to

23   the Mr. Machado's residence and repeated the same process with the guard at the

24   security desk in the lobby of the building. I was escorted by a security guard to

25   Mr. Machado's unit and attempted to contact him by knocking on the door of his

26   unit and calling out his name. Once again, there was no response. As before, the

27   security guard remained with me at all times and escorted me back to the lobby.

28

EXHIBIT **l**

PAGE **lll**

07209/2090854.1

-1-

DECLARATION OF DONALD MOON REGARDING ATTEMPTS TO PERSONALLY SERVE
COUNTERDEFENDANT CARLOS GUSTAVO MUCHADO GOMEZ WITH PROCESS

1           5.      On Monday, January 29, 2007, at approximately 7:00 p.m., I

2  returned to Mr. Machado's residence and repeated the same process with the guard

3  the security desk. I was again escorted to Mr. Machado's unit by a security guard

4  where I knocked on the door and called out his name. As on the prior occasions,

5  there was no response to my repeated knocks on the door of Mr. Machado's unit.

6  The security guard escorted me back to the lobby of the building and I left.

7           6.      On Wednesday, January 31, 2007, at approximately 9:45 p.m., I

8  returned to Mr. Machado's residence and asked the guard at the security desk to

9  contact Mr. Machado by telephone to get permission for me to see him. The

10  security guard called Mr. Machado's unit and spoke to a person who the guard

11  addressed as Mr. Machado. The guard informed me that Mr. Machado asked that I

12  identify myself and the purpose of my visit. I informed the guard that I was Donald

13  Moon and that I wanted to see Mr. Machado to serve him with legal process. The

14  guard relayed this message to Mr. Machado. The guard then advised me that Mr.

15  Machado had instructed him not to allow me access to his unit and that he was not

16  receiving anyone that day. I asked the guard if I could speak to Mr. Machado on the

17  telephone, but the guard said that it was against building policy to allow me to do so.

18  I then asked the guard to allow me to go to Mr. Machado's unit. The guard escorted

19  me to Mr. Machado's unit where I knocked on the door and called his name. There

20  was no response from the other side of the door. I left the service copies of the

21  Summons, Mattel's Amended Answer and Counterclaims, and Standing Order at

22  Mr. Machado's door and was escorted by the security guard back to the lobby.

23           7.      On March 19, 2007, I contacted the management of

24  Mr. Machado's condominium complex and asked to be allowed to remain inside the

25  complex near Mr. Machado's unit so that I could personally serve him as he was

26  leaving or going to his unit. The management refused my request and suggested

27  that I contact the complex's attorney. I left message for the attorney and received no

28  response.

**EXHIBIT V**

**PAGE 112**

)7209/2090854.1

-2-

DECLARATION OF DONALD MOON REGARDING ATTEMPTS TO PERSONALLY SERVE
COUNTERDEFENDANT CARLOS GUSTAVO MUCHADO GOMEZ WITH PROCESS

8.      On March 22, 2007, I attempted to serve Mr. Machado at the offices of MGA Entertainment, Inc. at 16380 Roscoe Blvd., Van Nuys, California where I am informed Mr. Machado works. I informed the receptionist in the lobby of the building that I would like to speak with Mr. Machado, but was told that no one by that name worked there.

9.      On Monday, March 26, 2007, at approximately 8:30 p.m., I arrived at Mr. Machado's residence in order to again attempt to serve him. I informed the guard at the security desk that I wanted to contact Mr. Machado in unit 916 and to serve him with legal process. The guard stated that he would provide me with an escort to the Mr. Machado's unit. I asked the guard to call Mr. Machado first to see if he was home. The guard refused, stating that it was against the policy of the building to do so, but that I could be escorted to the unit to attempt service.

10.     Another security guard escorted me to unit 916 where I again attempt to serve the Mr. Machado. I knocked on the door several times but there was no response. The security guard stated that I was allowed only three knocks on the door and that it was now time for me to leave. As the security guard escorted me back to the lobby, he informed me that residents of the building are instructed by the Home Owners' Association never to open the door unless the visitor has been identified at the security desk in the lobby and the purpose of the visit has been made known to the resident. When I returned to the security desk, I again asked the guard to call Mr. Machado's unit to confirm if he was home. The guard refused and stated that I had my chance to serve Mr. Machado. I then left the Summons, Amended Answer and Counterclaims and Standing Order with the guard and informed him that I was substitute serving him with legal process and that he should contact Mr. Machado and have him pick up the documents. I asked for the guard's name, but he refused to give it to me.

EXHIBIT __6__
PAGE __113__



1    11.    That same night, on March 26, 2007, I mailed a copy of the

2  Summons, Amended Answer and Counterclaims and Standing Order to Mr.

3  Machado at this residence address.

4    12.    I have served process upon litigants in the State of California for

5  the past six years for both state and federal courts as well as out of state

6  jurisdictions.  I have also served arrest warrants for criminal defendants who are

7  fugitives from justice.  From this experience, I have formed the opinion that

8  Machado has engaged in a deliberate evasion of service of process.

9

10    I declare under penalty of perjury under the laws of the United States of

11  America that the foregoing is true and correct.

12    Executed on March 29, 2007, at Los Angeles, California.

13

14    _____

15    Donald Moon

16

17

18

19

20

21

22

23

24

25

26

27

28

08932/2090484.1                                      -4-

EXHIBIT 6
PAGE 14




## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On March 30, 2007, I served true copies of the following document(s) described as **DECLARATION OF DONALD MOON REGARDING ATTEMPTS TO PERSONALLY SERVE COUNTERDEFENDANT CARLOS GUSTAVO MACHADO GOMEZ WITH PROCESS** on the parties in this action as follows:

| | |
|---|---|
| Diana M. Torres, Esq. | Keith Jacoby, Esq. |
| **O'MELVENY & MYERS, LLP** | **LITTLER MENDELSON** |
| 400 S. Hope Street | 2049 Century Park East, 5th Floor |
| Los Angeles, CA 90071 | Los Angeles, CA 90067 |

**BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 30, 2007, at Los Angeles, California.

Candy Liao

07209/2064364.1

EXHIBIT __6__
PAGE __115__

EXHIBIT 7

Received:   5/24/07  3:21PM·
RightFAX                   5. 1/2007 3:09   PAGE 002/002   Fax Server
RightFAX -> QUINN FMANUEL;  Page 2

SEND

FILED
CLERK, U.S. DISTRICT COURT

MAY 1 1 ⁓⁓

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION       BY DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**Mattel Inc**

COUNTER-CLAIMANT(S)

v.

**Carlos Gustavo Machado Gomez**

COUNTER- DEFENDANT(S)

CASE NUMBER:

**CV04-09049 SGL(RNBx)**

DEFAULT BY CLERK
F.R.Civ.P. 55(a)

It appearing from the records in the above-entitled action that summons has been served upon the counter-defendant(s) named below, and it further appearing from the affidavit of counsel for counter-claimant(s), and other evidence as required by F.R.Civ.P. 55(a), that each of the below counter-defendants have failed to plead or otherwise defend in said action as directed in said Summons and as provided in the Federal Rules of Civil Procedure:

Now, therefore, on request of counsel, the DEFAULT of each of the following named counter- defendant(s) is hereby entered

**Carlos Gustavo Machado Gomez**

DOCKETED ON CM
MAY 2 3 2007

Clerk, U. S. District Court

Dated: May 11, 2007

EXHIBIT 7
PAGE 116

By _____ A. Morris_____

Deputy Clerk

CV-37 (10/01)         DEFAULT BY CLERK F.R.Civ.55(a)         CS|11|c7

EXHIBIT 8

RECEIVED

SEP 2 8 2007

Law Offices of James W. Spertus
James W. Spertus (State Bar No. 159825)
12100 Wilshire Blvd., Suite 620
Los Angeles, CA 90025
Tel (310) 826-4700 Fax (310) 826-4711

Attorneys for Carlos Gustavo Machado Gomez

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| CARTER BRYANT | CASE NUMBER   CV 04-9049 SGL (RNBx) |
| Plaintiff(s) | Consolidated With Nos. 04-9059 &05-2727 |
| v. | |
| MATTEL, INC. | REQUEST FOR APPROVAL OF |
| Defendant(s). | SUBSTITUTION OF ATTORNEY |

<u>Carlos Gustavo Machado Gomez</u>   ☐ Plaintiff   ☐ Defendant   ■ Other   Counter-defendant
<u>Name of Party</u>

hereby request the Court approve the substitution of <u>Mark Overland, Overland Borenstein Scheper & Kim LLP</u>
<u>New Attorney</u>
as attorney of record in place and stead of <u>James Spertus, Law Offices of James W. Spertus</u>
<u>Present Attorney</u>

Dated   9 /23/ 07

_____
Signature of Party/Authorized Representative of Party

I have given proper notice pursuant to Local Rule 83-2.9 and further consent to the above substitution.

Dated   9-25-07

_____
Signature of Present Attorney

I am duly admitted to practice in this District pursuant to Local Rule 83-2.

Dated   9/21/17

_____
Signature of New Attorney
038375

_____
State Bar Number

If party requesting to appear Pro Se:

Dated   _____

_____
Signature of Requesting Party

**NOTE: COUNSEL AND PARTIES ARE REMINDED TO SUBMIT A COMPLETED *ORDER ON REQUEST FOR APPROVAL OF SUBSTITUTION OF ATTORNEY* (G-01 ORDER) ALONG WITH THIS REQUEST.**

EXHIBIT   **B**
PAGE   **117**

## Proof of Service

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 12100 Wilshire Blvd., Suite 620, Los Angeles, CA 90025.

On the date indicated below, I served the foregoing documents described as:

**Order on Request for Approval of Substitution of Attorney**

on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, and mailing such envelope of the offices of the addressee:

### SEE ATTACHED SERVICE LIST

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 26, 2007, at Los Angeles, California.

Tierza Ace

EXHIBIT __8__
PAGE __118__

## SERVICE LIST

| | |
|---|---|
| Dale M. Cendali (admitted pro hac vice)<br>Diana M. Torres<br>William J. Charron<br>O'Melveny & Myers, LLP<br>400 South Hope Street<br>Los Angeles, CA 90071-2899 | Attorneys for MGA |
| Michael T. Zeller, Esq.<br>Timothy Alger, Esq.<br>Quinn Emanuel Urquhart Oliver & Hedges, LLP<br>865 South Figueroa Street, 19th Floor<br>Los Angeles, CA 90017 | Attorneys for Mattel |
| Michael H. Page, Esq.<br>Keker & Van Nest, LLP<br>710 Sansome Street<br>San Francisco, CA 94111 | Attorneys for<br>Carter Bryant |
| Patricia Glaser, Esq.<br>Christensen, Glaser, Fink, Jacobs,<br>Weil & Shapiro, LLP<br>10250 Constellation Blvd., 19th Floor<br>Los Angeles, CA 90067 | Attorneys for MGA |

EXHIBIT __8__
PAGE __119__