1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
   Telephone:   (213) 443-3000
6   Facsimile:   (213) 443-3100

7   Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)
                                         Consolidated with Case Nos. CV 04-09059
12              Plaintiff,               and CV 05-02727

13        vs.                            **DISCOVERY MATTER**

14  MATTEL, INC., a Delaware             **[To Be Heard By Discovery Master**
    corporation,                         **Robert C. O'Brien]**
15
                Defendant.               **[PUBLIC REDACTED] MATTEL,**
16  _____     **INC.'S OPPOSITION TO MOTION TO**
                                         **QUASH SUBPOENA ISSUED BY**
17  AND CONSOLIDATED ACTIONS             **MATTEL, INC. TO BINGHAM**
                                         **MCCUTCHEN LLP**
18
                                         [Declaration of James J. Webster and
19                                       Notice of Lodging filed concurrently
                                         herewith]
20
                                         Hearing Date:   April 14, 2009
21                                       Time:           10:00 a.m.
                                         Place:          Arent Fox, LLP
22                                                       555 West Fifth Street
                                                         48th Floor
23                                                       Los Angeles, CA 90013

24                                       **Phase 2:**
                                         Disc. Cut-off:    December 11, 2009
25                                       Pre-trial Conf.:  March 1, 2010
                                         Trial Date:       March 23, 2010
26

27

28

07975/2814725.2

# **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

PRELIMINARY STATEMENT ...............................................................1

STATEMENT OF FACTS ......................................................................2

ARGUMENT ......................................................................................7

I.    THE COURT HAS MADE CLEAR THAT ITS JANUARY 7, 2009 ORDER APPOINTING A FORENSIC AUDITOR DOES NOT PROHIBIT ANY DISCOVERY SOUGHT FOR TRIAL .............................7

II.    BINGHAM DISREGARDS THE COURT'S AND DISCOVERY MASTER'S REPEATED RULINGS THAT FEE AGREEMENTS ARE NOT PRIVILEGED ....................................................................9

    A.    Federal Privilege Law Applies In This Case .........................9

    B.    Contrary to Bingham's Assertions, the Fee Agreements Are Not Privileged ...................................................................10

III.    BINGHAM'S RELEVANCE OBJECTION IS WITHOUT MERIT .............11

    A.    Fee Information Is Relevant to Bias and Credibility ...........12

    B.    The Documents Sought Are Relevant to the Merits ...........13

IV.    BINGHAM HAS FAILED TO SHOW THAT MATTEL'S SUBPOENA IS UNDULY BURDENSOME ................................................16

V.    BINGHAM HAS FAILED TO SHOW THAT MATTEL'S SUBPOENA IS OVERBROAD ...................................................................17

VI.    BINGHAM'S PRIVACY OBJECTION IS UNWARRANTED ...................18

VII.    BINGHAM, NOT MATTEL, SHOULD BE SANCTIONED ......................19

CONCLUSION .................................................................................20

OPPOSITION TO MOTION TO QUASH

# TABLE OF AUTHORITIES

**Page**

## Cases

<u>A. Farber and Partners, Inc. v. Garber,</u>
234 F.R.D. 186 (C.D. Cal. 2006) ................................................................ 11, 18

<u>Agster v. Maricopa County,</u>
422 F.3d 836 (9th Cir. 2005) ..................................................................... 9

<u>Bible v. Rio Properties, Inc.,</u>
246 F.R.D. 614 (C.D. Cal. 2007) ............................................................. 11

<u>Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.,</u>
175 F.R.D. 646 (C.D. Cal. 1997) ............................................................. 12

<u>Clarke v. American Commerce Nat'l Bank,</u>
974 F.2d 127 (9th Cir. 1992) ..................................................................... 10

<u>Fletcher v. Atex, Inc.,</u>
156 F.R.D. 45 (S.D.N.Y. 1994) ............................................................... 17

<u>Folb v. Motion  Picture Indus. Pension & Health Plans,</u>
16 F. Supp. 2d 1164 (C.D. Cal. 1998), <u>aff'd</u>, 216 F.3d 1082 (9th Cir. 2000) ........ 9

<u>Goodman v. U.S.,</u>
369 F.2d 166 (9th Cir. 1966) ..................................................................... 16

<u>In re Grand Jury Subpoenas,</u>
803 F.2d 493 (9th Cir. 1986) ..................................................................... 10

<u>In re Heritage Bond Litigation,</u>
2004 WL 1970058 (C.D. Cal. 2004) ........................................................ 18

<u>JZ Buckingham Investments, LLC v. United States,</u>
78 Fed. Cl. 15 (Fed. Cl. 2007) .................................................................. 16

<u>Keith H. v. Long Beach Unified School District,</u>
228 F.R.D. 652 (C.D. Cal. 2005) ............................................................. 18

<u>Mattel, Inc. v. Walking Mountain Productions,</u>
353 F.3d 792 (9th Cir. 2003) ..................................................................... 17

<u>McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,</u>
894 F.2d 1482 (5th Cir. 1990) ................................................................... 16

<u>Nagele v. Electronic Data Systems Corp.,</u>
193 F.R.D. 94 (W.D.N.Y. 2000)............................................................... 17

Northrop Corp. v. McDonnell Douglas Corp.,
    751 F.2d 395 (D.C. Cir. 1984) .................................................................. 16

Panola Land Buyers Ass'n v. Shuman,
    762 F.2d 1550 (11th Cir. 1985) ................................................................ 16

Putnam v. Eli Lilly and Co.,
    508 F. Supp. 2d 812 (C.D. Cal. 2007).................................................... 18

Religious Tech. Ctr. v. Wollersheim,
    971 F.2d 364 (9th Cir. 1992) ..................................................................... 9

Residential Constructors, LLC v. Ace Property and Cas. Ins. Co.,
    2006 WL 3149362 (D. Nev. 2006) .......................................................... 16

U.S. E.E.O.C. v. ABM Industries Inc.,
    2008 WL 5385618 (E.D. Cal. 2008) ....................................................... 16

U.S. v. Landon,
    2006  WL 3377894 (N.D. Cal. 2006)...................................................... 10

U.S. v. Zolin,
    491 U.S. 554 (1989) ................................................................................ 10

United States v. Abel,
    469 U.S. 45 (1984) .................................................................................. 12

United States v. Blackman,
    72 F.3d 1418 (9th Cir. 1995) .................................................................. 10

**Statutes**

15 U.S.C. § 1125(a)..................................................................................... 9

Fed. R. Evid. 501 ....................................................................................... 10

**Other Authorities**

23 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice And Procedure:
    Evidence § 5434 at 862 (1980) ............................................................... 10

Wright & Young, Federal Practice & Procedure: Federal Rules of Evidence § 6095,
    at 641 (2007) ........................................................................................... 12

# **Preliminary Statement**

As explained in Mattel's concurrently filed Motion to Compel, Mattel has been denied even the most basic discovery regarding (i) the true identity and source of funds for Omni 808's alleged mid-trial acquisition of MGA debt and (ii) whether it was in fact a related-party transaction. Because MGA, Larian, Omni 808 and their affiliates have all refused to produce a single document relating to the transaction in question— or even disclose who owns Omni, Vision Capital or Lexington—Mattel has filed a separate motion to compel before the Discovery Master. This information is indisputably relevant to Mattel's RICO and unfair competition claims, damages and MGA's own unclean hands defense.

To obtain information relevant to issues of bias and credibility and to the identity of witnesses, Mattel served limited requests for documents from Bingham, the firm that represents several of the third-party entities, including Omni 808, Vision Capital and Lexington. Indeed, Omni 808's registered address with the California Secretary of State is listed as Bingham's Los Angeles office. Nevertheless, in the latest effort to thwart Mattel and the Court from getting to the truth of the Omni 808 transaction and the identities of persons behind it, Bingham has refused to produce any documents and moved to quash Mattel's subpoena to it. It also has refused to stipulate that it will produce documents if that Motion is denied -- and therefore necessitated Mattel's separate Motion to Compel.

Bingham's objections to the subpoena should be overruled and its Motion to Quash denied. First, Mattel's requests to Bingham seek fee agreements and related documents. Ninth Circuit law and repeated rulings by Judge Larson and the previous Discovery Master in this case have held that such fee information and the identity of persons responsible for fees are not privileged. Bingham makes no showing why its claims of privilege should not be rejected under binding Ninth Circuit precedent and this Court's Orders. Mattel's other requests seek unquestionably non-privileged

-1-

documents such as corporate formation materials.  Bingham's privilege objections are meritless.

Second, the moving papers make conclusory assertions that the subpoena seeks documents irrelevant to Phase 2, but that is insufficient to meet Bingham's burden.  Mattel's subpoena seeks fee agreements and related documents in connection with Bingham's representation of the third party entities.  As both the Court and previous Discovery Master have repeatedly ruled, such non-privileged documents are discoverable and are relevant to bias and credibility.  Furthermore, Mattel's requests are directly relevant to numerous aspects of Phase 2, including Mattel's RICO and unfair competition claims, damages, punitive damages and MGA's unclean hands defense.

Third, as the party resisting discovery, Bingham bears the burden of showing that the burden involved in responding to Mattel's subpoena is "undue." Yet, it offers no evidence in support of its claim of undue burden; no description of the volume of documents involved, nor of any time or expense required to respond to the subpoenas.  Nor could Bingham make any such showing, given that its clients, Omni 808 and Vision Capital, are recently-formed, single-purpose entities.   Nor does Bingham make any showing whatsoever to substantiate its rhetoric that Mattel's requests are overbroad.

Finally, Bingham's privacy objection is unwarranted.  As Judge Larson and the former Discovery Master previously ruled, the Protective Order in this action is sufficient to alleviate any privacy concerns concerning Bingham or its clients.

Accordingly, Mattel respectfully requests that the Discovery Master deny Bingham's Motion to Quash, and compel Bingham to produce documents responsive to Mattel's subpoena.

## Statement of Facts

**MGA Misrepresents Its Financial Condition** MGA's applications for an order staying the December 3, 2008 injunctive orders represented to the District Court and to the Ninth Circuit that, ██████████████████████████████

07975/2814725.2

-2-

OPPOSITION TO MOTION TO QUASH

1 ████.[1]  Mattel's subsequent review of the financing statements filed regarding MGA

2 indicated that MGA's representation was false.  Since the Phase 1B verdict, a new

3 alleged creditor of MGA, Omni 808 Investors, LLC ("Omni 808") purported to take a

4 security interest in the bulk of MGA's assets,[2] which facially indicates that new credit

5 had been extended to MGA.  Mattel brought the Omni 808 transaction to the Court's

6 attention in its application for appointment of a receiver.  MGA then ████████

7 ████████████████████████████████████████████

8 ████████████████████.[3]

9          The transaction revealed in the financing statements also appears to be

10 structured to conceal the ultimate source of funds for the Omni 808/MGA transaction.

11 The company purporting to hold the security interest, Omni 808, is a single purpose

12 entity formed on August 12, 2008, <u>during the damages phase of trial</u> and after MGA

13 and its CEO had been found liable in the first phase of trial.[4]  Omni 808 appears to be

14 owned and funded by a company called Vision Capital, LLC ("Vision Capital") that,

15 like Omni 808, was formed during the damages phase of the trial.[5]

16          According to an August 29, 2008 UCC financing statement, Vision Capital

17 obtained the money used to fund Omni 808 (and presumably MGA) from a company

18 called Lexington Financial, LLC ("Lexington").  Lexington is an offshore company

19 registered in the Caribbean island of Nevis, a country notorious for its corporate and

20 _____

21 [1] <u>See</u> Declaration of Brian Wing in Support of the MGA Parties' Request for a Stay, dated December 11, 2008, at ¶ 13, attached as Exhibit 36 to the Declaration of Jon Corey in Support

22 of Mattel, Inc.'s Motion to Compel Production of Documents Responsive to Third Party Subpoenas, dated February 3, 2009, ("Corey Dec."), which has been concurrently lodged with

23 the Discovery Master.
[2] <u>See</u> UCC Financing Statement Amendment dated September 9, 2008, amending prior

24 UCC Financing Statement to add Omni 808 Investors, LLC as a creditor to MGA with co-priority with Wachovia Bank, N.A., Corey Dec., Exh. 37.

25 [3] <u>See</u> MGA Parties Corrections to the Opposition to Mattel, Inc.'s <i>Ex Parte</i> Application for Appointment of a Receiver or for Alternative Relief, dated December 31, 2008, at 1-2,

26 Corey Dec., Exh. 38.
[4] <u>See</u> Omni 808 Investors, LLC Certificate of Status and Articles of Organization, Corey

27 Dec., Exh. 44.
[5] <u>See</u> Vision Capital, LLC Certificate of Formation dated August 19, 2008, Corey Dec.

28 Exh. 45.

07975/2814725.2

OPPOSITION TO MOTION TO QUASH

1  banking secrecy laws.[6]  Indeed, the official corporate records for Lexington from Nevis
2  flatly declare that Nevis does not ask—and therefore will not disclose—any
3  information about Lexington, including even the bare identities of its principals.[7]
4  Lexington also has a purported address in London, but no Lexington office can actually
5  be found there.  Rather, it is nothing more than a company called OfficeFront that
6  provides "virtual office" services, i.e., mail drop and answering service.[8]

7          Fred Mashian, a Sunset Boulevard "estate-planning" attorney, is identified
8  as the Lexington contact on the UCC financing statement showing that Vision Capital
9  secured its alleged loan from Lexington with its ownership interest in Omni 808.[9]
10 Lexington perfected its purported security interest in Vision Capital's ownership
11 interest in Omni 808 on August 29, 2008—three days after the jury's damages verdict
12 issued against MGA and Larian.[10]  The public records Mattel has obtained thus far do
13 not disclose the source of Lexington's funding that it ostensibly provided to Vision
14 Capital—and that Vision Capital supposedly contributed to Omni 808 for the loan/debt
15 purchase related to MGA.  Nor has MGA been able to explain its use of shell
16 companies and offshore vehicles—which conceal the flow of funds—and a sole-
17 practitioner estate planning attorney to process UCC financing statements.

18         These questions surrounding MGA's finances are underscored by the
19 evident involvement of MGA CEO Isaac Larian and his relatives in the supposedly
20 "arms length" acquisition of MGA's debt by Omni 808.  On January 12, 2009, Mattel
21 attempted to serve a subpoena on Vision Capital at 1525 South Broadway in Los

22
23     [6]    See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 46 (with Lexington Capital taking a security interest in Vision Capital's ownership interest in Omni 808 Investors LLC); "Offshore-Based Limited Liability Company (LLC)" at www.offshore-protection.com/nevisLLC.html, Corey Dec., Exh. 47.
24
       [7]    See December 12, 2008 letter from Registrar Clevelan Williams, Corey Dec., Exh. 49.
25     [8]    See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 46; December 12, 2008 letter from Registrar Clevelan Williams, Corey Dec., Exh. 49.  Office Front "Home" (offering website by Office Front allowing a person to obtain a "virtual office" for as little as £10 a month), Corey Dec., Exh. 48.
26
27     [9]    See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 46.
28

OPPOSITION TO MOTION TO QUASH

Angeles—the address provided in the August 29, 2008 UCC financing statement.[11] However, Vision Capital could not be found at that address, with the building receptionist having never heard of the company.[12] Rather, 1525 South Broadway is the address of Neman Brothers & Associates.[13]   Leon Neman is a principal of Neman Brothers & Associates and owns the building at 1525 Broadway, where Vision Capital claims to be located.[14]   Leon Neman is also Isaac Larian's brother-in-law, and has served as a MGA director of MGA.[15]   Mr. Mashian, the agent for Lexington named in the UCC Financing Statement, is the listed agent for several entities that Leon Neman owns.[16]   In fact, Rock-Hill Holdings, LLC, a Leon Neman entity that lists Mashian as its registered agent, also has a Delaware address that is the same as Vision Capital's alleged Delaware address.[17]

**Mattel Subpoenas Relevant Documents From Bingham**   The Court lifted the Phase 2 discovery stay on January 6, 2009.   Mattel issued subpoenas in January 2009 to various third-party entities—including Omni 808, Vision Capital and Lexington, among others—seeking the production of documents relevant to Phase 2 claims and defenses as well as to MGA's representations in its stay petitions.   To date, MGA, Larian and the third-party entities have refused to produce a single document in response to Mattel's subpoenas.   Mattel moved to compel on February 3, 2009.[18]   That

---

[10]   See August 29, 2008 Lexington Financial UCC financing statement, Corey Dec., Exh. 46.

[11]   See Declaration of David Antolin, dated February 4, 2009, lodged concurrently herewith.

[12]   Id.

[13]   Id.

[14]   See Declaration of Michael T. Zeller in Support of Mattel's Opposition to Omni 808 Investors, LLC's Ex Parte Application to Intervene, dated February 5, 2009, at ¶ 6 ("Zeller Dec."), lodged concurrently herewith.

[15]   See Zeller Dec. ¶ 4.

[16]   See Zeller Dec. ¶ 11.

[17]   See Zeller Dec. ¶ 12.

[18]   See Mattel's Motion to Compel Production of Documents Responsive to Third-Party Subpoenas, dated February 3, 2009, attached as Exhibit 6 to the Declaration of James J. Webster, dated March 3, 2009 ("Webster Dec.") and filed concurrently herewith.

-5-

1   same day, MGA also filed a motion to quash, which Mattel opposed on February 10,

2   2009.[19]

3        On February 12, 2009, Mattel served a subpoena on Bingham McCutchen

4   LLP ("Bingham"), a law firm which represents certain of the third-party entities,

5   including Omni 808, Vision Capital and Lexington.[20]   Indeed, Omni 808's registered

6   address with the California Secretary of State is listed as Bingham's Los Angeles office,

7   355 South Grand Avenue, Suite 4400, Los Angeles, CA 90071.[21]   Mattel's subpoena to

8   Bingham requests the production of fee agreements and related documents—

9   information which the Court and the former Discovery Master have repeatedly held to

10  be non-privileged and relevant to bias and credibility[22]—as well as documents related

11  to the formation and governance of the third-party entities.

12        In a letter dated February 20, 2009 Bingham demanded that Mattel

13  withdraw the subpoena, and requested a meet and confer to discuss an anticipated

14  motion to quash.[23]   In a letter of February 23, 2009, Mattel requested a meet and confer

15  in advance of Mattel's contemplated motion to compel.[24]   Mattel informed Bingham

16  that the Court and Discovery Master have repeatedly held documents and information

17  relating to payment of legal fees to be relevant to bias and credibility and thus

18

19   [19]   See Mattel's Opposition to the MGA Parties' Motion to Quash, dated February 10,
20   2009, Webster Dec., Exh. 7.
        [20]   See Mattel's Subpoena to Bingham McCutchen LLP, dated February 12, 2009, with
21   proof of service, Webster Dec., Exh. 1.
        [21]   See Omni 808 Investors, LLC's Registration Information (available at
22   <http://kepler.sos.ca.gov/corpdata/ShowLpllcAllList?QueryLpllcNumber=200822610026&printer=yes>) as accessed on March 1, 2009, Webster Dec., Exh. 2.
        [22]   See, e.g., Order Granting Mattel's Motion to Compel Documents, dated January 25,
23   2007, at 11-12, Webster Dec., Exh. 8; Order Granting Mattel's Motion to Compel Production
24   of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10, Webster
     Dec., Exh. 9; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the
25   Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and
     for Sanctions, dated June 19, 2007, at 2-4, Webster Dec., Exh. 10; Order Re Motions Heard on
26   June 11, 2007, dated June 27, 2007, at 33-34, Webster Dec., Exh. 11.
        [23]   See Letter from Peter Villar to Jon Corey, dated February 20, 2009, Webster Dec., Exh.
27   3.
        [24]   See Letter from Jon Corey to Peter Villar, dated February 23, 2009, Webster Dec., Exh.
28   4.

1 | discoverable.[25]   Mattel also provided Bingham with copies of the Court's and the
2 | Discovery Master's Orders.[26]

3 | Counsel for Mattel and Bingham met and conferred in-person on February
4 | 25, 2009.[27]   Bingham refused to substantively discuss Mattel's requests or Mattel's
5 | contemplated motion to compel, contending that any such discussion was
6 | "premature."[28]  Additionally, in an attempt to force serial motion practice and further
7 | delay Mattel's discovery efforts, Bingham refused to stipulate that, in the event its
8 | motion to quash is denied by the Discovery Master, it will produce the requested non-
9 | privileged documents accompanied by a privilege log.[29]  Following the conference of
10 | counsel, Mattel renewed its request that Bingham so stipulate.[30]  To date, Mattel has
11 | received no response to that request.[31]

12 | Bingham filed its Motion to Quash Mattel's subpoena on February 25,
13 | 2009.  To date, Bingham has not served objections or otherwise responded to the
14 | subpoena.[32]

15 | **Argument**

16 | **I.**   **THE COURT HAS MADE CLEAR THAT ITS JANUARY 7, 2009 ORDER**
17 | **APPOINTING A FORENSIC AUDITOR DOES NOT PROHIBIT ANY**
18 | **DISCOVERY SOUGHT FOR TRIAL**

19 | Like MGA and the third-party entities before it, Bingham erroneously
20 | invokes the Court's January 7, 2009 Order appointing a forensic auditor to contend that
21 | Mattel is foreclosed from seeking discovery into MGA's financial dealings with the
22 | third-party entities.  (Mot. at 3-4.)  The January 7 Order, however, did not stay or limit

---

[25] See id.
[26] See id.
[27] Webster Dec., ¶ 6.
[28] Webster Dec., ¶ 6.
[29] Webster Dec., ¶ 6.
[30] See Letter from James J. Webster to Peter Villar, dated February 26, 2009, Webster Dec., Exh. 5.
[31] Webster Dec., ¶ 8.
[32] Webster Dec., ¶ 9.

-7-

Phase 2 discovery in any way.  To the contrary, in an Order issued just the day before, the Court had reopened Phase 2 discovery *without limitation*.[33]  The January 7 Order contained no language that limited Phase 2 discovery.  Then, at a hearing on February 11, 2009, Judge Larson rejected Bingham's supposed reading of the Orders and reiterated that the appointment of a forensic auditor did not supplant or limit Phase 2 discovery:

> Mr. Durkin [the forensic auditor] is acting at the Court's direction to inform the Court of information.  I may or may not release any of the information that Mr. Durkin provides; so no one, neither side, should be relying upon the information that Mr. Durkin is gathering for purposes of litigating this case. ***That's an entirely separate matter***.  ***And I have not stayed any discovery***, and there should be no reliance on that.[34]

In response to the specific argument that the January 7 Order foreclosed financial discovery, the Court further ruled that "there is ***nothing*** from this Court which is precluding any discovery sought for the trial that is scheduled."[35]

Bingham also suggests that the Court has conclusively found no basis to appoint a receiver.  The Court made no such finding and has not denied the application for a receiver.  To the contrary, the Court has made clear that Mattel's application is still being held in abeyance pending the completion of the forensic auditor's work and the completion of his final report.[36]

Bingham's argument also fails to provide any basis for refusing discovery.  At both the hearing and in its Minute Order, the Court ruled that Phase 2 discovery shall proceed and that the forensic auditor's work is an "entirely separate matter" and

---

[33] Court's January 6, 2009 Order Appointing Discovery Master, at 2, Webster Dec., Exh. 15.
[34] February 11, 2009 Hearing Transcript, 98:8-15 (emphasis added), Webster Dec., Exh. 14.
[35] Id., 101:22-25 (emphasis added).
[36] See February 11, 2009 Hearing Transcript, 80:15-17, Webster Dec., Exh. 14; February 11, 2009 Minute Order, Webster Dec., Exh. 16.

-8-

1  not something the parties should be "relying on."  Thus, even if the Court declines to

2  appoint a receiver or disclose the auditor's report, the auditor's activities do not

3  foreclose any discovery.  To the contrary, the Court stated that it saw "tremendous

4  overlap" between so-called "receiver discovery" and Phase 2 discovery.

5  **II.  BINGHAM DISREGARDS THE COURT'S AND DISCOVERY**

6  **MASTER'S REPEATED RULINGS THAT FEE AGREEMENTS ARE**

7  **NOT PRIVILEGED**

8  The Motion asserts, without citing a single case or statute in support, that

9  Mattel's subpoena seeks information protected by the attorney-client privilege and

10  attorney work product doctrine.  (Mot. at 8-9).  Mattel furnished Bingham with the

11  Court's and the previous Discovery Master's repeated Orders holding that documents

12  related to fee agreements are <u>not</u> privileged and compelling the production of

13  documents in response to comparable requests.[37]  The Motion nevertheless elects to

14  ignore this Court's Orders, and Bingham refuses to produce the non-privileged,

15  responsive documents.  Bingham's assertions of privilege are without merit.

16  **A.  Federal Privilege Law Applies In This Case**

17  Mattel asserts federal RICO claims against MGA.  In addition, MGA

18  asserts federal claims against Mattel, including claims for false designation of origin

19  and unfair competition under 15 U.S.C. § 1125(a).  "Where there are federal question

20  claims and pendent state law claims present, the federal law of privilege applies."

21  <u>Agster v. Maricopa County</u>, 422 F.3d 836, 839 (9th Cir. 2005); <u>see</u> <u>Religious Tech. Ctr.</u>

22  <u>v. Wollersheim</u>, 971 F.2d 364, 367 n.10 (9th Cir. 1992) (refusing to apply California

23  litigation privilege in copyright action with pendent state law claims); <u>Folb v. Motion</u>

24

---

25  [37]  <u>See, e.g.</u>, Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 11-12, Webster Dec., Exh. 8; Order Granting Mattel's Motion to Compel Production

26  of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10, Webster Dec., Exh. 9; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the

27  Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4, Webster Dec., Exh. 10; Order Re Motions Heard on

28  June 11, 2007, dated June 27, 2007, at 33-34, Webster Dec., Exh. 11.

OPPOSITION TO MOTION TO QUASH

Picture Indus. Pension & Health Plans, 16 F. Supp. 2d 1164, 1169-70 (C.D. Cal. 1998) (stating that federal common law of privileges governs both federal and pendent state law claims in federal question cases), aff'd, 216 F.3d 1082 (9th Cir. 2000); U.S. v. Zolin, 491 U.S. 554, 562 (1989) ("Questions of privilege that arise in the course of the adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'"); see also Fed. R. Evid. 501.

The information Mattel seeks regarding bias and credibility here (as discussed below) is also relevant to the entire litigation, including the federal claims.[38] Federal privilege law therefore applies.  See 23 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice And Procedure: Evidence § 5434 at 862 (1980) ("courts should always follow the federal rule when the same evidence is relevant to both a state and federal claim.").

**B.      Contrary to Bingham's Assertions, the Fee Agreements Are Not Privileged**

Fee agreements are not privileged under Ninth Circuit law.  See United States v. Blackman, 72 F.3d 1418, 1424 (9th Cir. 1995) ("[a]s a general rule, client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege"); Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("Our decisions have recognized that the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege."); In re Grand Jury Subpoenas, 803 F.2d 493, 499 (9th Cir. 1986) (reversing order quashing a subpoena and requiring attorneys to identify third parties paying their fees); U.S. v. Landon, 2006

---

[38]  As Mattel has previously shown, its discovery regarding the MGA financing at issue is calculated to lead to evidence of acts of wire and mail fraud, and may also reveal additional, distinct predicate acts in support of Mattel's RICO allegations.  See Section III(B) infra.

OPPOSITION TO MOTION TO QUASH

WL 3377894, at *2 (N.D. Cal. 2006) ("The attorney-client privilege does not protect communications such as fee arrangements that do not convey the substance of confidential professional communications.").  Under these authorities, agreements relating to the payment of legal fees in this case clearly are not privileged.

As Bingham is aware, this Court has ruled in this case that fee and indemnity agreements are not privileged and are relevant to bias and credibility.  <u>See</u> Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 11-12; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4; Order Re Motions Heard on June 11, 2007, dated June 27, 2007, at 33-34.

Under Ninth Circuit precedent and this Court's unequivocal Orders, Bingham's privilege claims are without basis, and Bingham makes no showing otherwise.  The Discovery Master accordingly should overrule Bingham's privilege objection and compel it to produce its fee agreements and related documents.

## III.    BINGHAM'S RELEVANCE OBJECTION IS WITHOUT MERIT

Failing to make any showing that Mattel's subpoena is irrelevant, Bingham merely relies on conclusory statements (Mot. at 9-10), which are insufficient to meet its burden in resisting this discovery.  <u>See</u> <u>A. Farber and Partners, Inc. v. Garber</u>, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[B]oilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper."); <u>Bible v. Rio Properties, Inc.</u>, 246 F.R.D. 614, 618 (C.D. Cal. 2007) (party resisting discovery has the burden of showing discovery should not be allowed).

That Mattel's discovery seeks relevant information is beyond legitimate dispute.  As the Court and previous Discovery Master have already recognized, Mattel's requests for fee agreements and related documents are relevant to bias and credibility.  Additionally, the requested information—particularly information leading to the

-11-

discovery of who is actually behind the third-party entities—is relevant to Phase 2 claims and defenses, including to the identification of witnesses and to Mattel's RICO claims, Phase 2 damages, MGA's and Larian's credibility, MGA's unclean hands defense and Mattel's unfair competition claim.

## A.   Fee Information Is Relevant to Bias and Credibility

In this action, MGA has a history of paying legal fees on behalf of third-party witnesses.[39]  The existence of a fee agreement between a witnes and MGA, any MGA employee, Larian or any Larian family member or associate relates to the bias and credibility of the witness.[40]  Information is relevant and discoverable if it relates to "the credibility of any witness."  Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc., 175 F.R.D. 646, 650 (C.D. Cal. 1997).  Evidence of bias is also relevant and discoverable.  United States v. Abel, 469 U.S. 45, 50-51 (1984); see also Wright & Young, Federal Practice & Procedure: Federal Rules of Evidence § 6095, at 641 (2007) (bias is a "particularly favored basis for attacking witness credibility.").  Both Judge Larson and the former Discovery Master have so ruled in this case as well.  The previous Discovery Master ruled repeatedly that "[f]ee or indemnity agreements are relevant to demonstrate bias and lack of credibility."  Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10.[41]  The Court has held the same, stating that "fee payment arrangements are relevant to credibility and bias."  Order Re Motions Heard on June 11, 2007, dated June 27, 2007, at 33-34.

---

[39]   See Deposition of Lisa Tonnu, Volume 5, dated January 24, 2008, at 1174:24-1175:21 (payment of Farhad Larian's legal fees), 1181:6-9 (Lucy Arant), 1182:3-6 (Margaret Hatch-Leahy), 1182:13-16 (Sarah Halpern), 1183:23-1184:6 (Veronica Marlow), 1187:23-1188:1 (Janine Brisbois), Webster Dec., Exh. 12.

[40]   Mattel's Request No. 7 to Bingham, which seeks documents sufficient to identify any instances in which Bingham has previously represented MGA, any affiliate of MGA, Issac Larian or Larian's family members or associates, is relevant for the same reason.

[41]   See also Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 11-12, Webster Dec., Exh. 8; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4, Webster Dec., Exh. 10.

OPPOSITION TO MOTION TO QUASH

Here, as Mattel has shown in its Motion to Compel Production of Documents Responsive to Third-Party Subpoenas[42] and in Section III(B) below, MGA's mid-trial transactions with non-operating entities are relevant to issues for the Phase 2 trial.  Witnesses associated with Omni 808, Vision Capital and the other third-party entities, including Leon Neman, Fred Mashian and Neil Kadisha, will likely be called upon to testify (and indeed are the subject of deposition subpoenas served by Mattel).  The payment of Bingham's legal fees in connection with its representation of the third-parties is directly relevant to the credibility and bias of percipient witnesses in this action.

The information is relevant not only to the credibility and bias of witnesses associated with the third-parties, but also to the credibility of MGA and Larian.  As the Discovery Master is aware, MGA and Larian made statements under oath about their financial condition as well as about the role of Omni 808 and the other non-operating entities in providing MGA with additional funding.[43]  Mattel is therefore entitled to discovery to determine the true state of these matters—information which is directly relevant to MGA's and Larian's credibility.

### B.   The Documents Sought Are Relevant to the Merits

Further, information related to Bingham's fee arrangements in connection with the third-party entities is directly relevant to the merits of this case.  Such information, for example, may provide evidence as to who is actually behind the third-party entities and identify witnesses with knowledge of the Omni 808 transaction.  As Mattel has now repeatedly demonstrated, evidence that Omni 808's mid-trial acquisition

---

[42]  See Mattel's Motion to Compel Production of Documents Responsive to Third-Party Subpoenas, dated February 3, 2009, Webster Dec., Exh. 6.

[43]  Compare Declaration of Brian Wing in support of the MGA Parties' Request for a Stay, dated December 11, 2008, at ¶ 13, Corey Dec., Exh. 36 with MGA Parties' Corrections to the Opposition to Mattel's Ex Parte Application for Appointment of a Receiver, dated December 31, 2008, at 1, Corey Dec., Exh. 38.

-13-

of MGA's debt was in fact a related-party transaction is relevant to Phase 2 issues, including in the following respects:[44]

- Mattel's requests are directly relevant to its RICO claims. Mattel alleges that the counter-defendants have operated a widespread criminal enterprise that has engaged in numerous acts of mail and wire fraud and other predicate acts in violation of the RICO statute.[45] The requests are calculated to lead to evidence of acts of wire and mail fraud.[46] The discovery sought by Mattel's subpoena may also reveal additional, distinct predicate acts in support of Mattel's RICO allegations.

- Mattel seeks disgorgement of all amounts wrongfully obtained by the counter defendants. Mattel may also be entitled to damages for lost profits pursuant to its disgorgement theory of damages. For purposes of establishing disgorgement, monies transferred from MGA and Isaac Larian must be accounted for, regardless of the manner in which they were was transferred. Mattel is entitled to discovery that shows all assets siphoned from MGA or Isaac Larian for which there was no compensation during the period of the alleged wrongful conduct.

- Mattel also seeks documents relevant to the MGA parties' financial condition based on its relevance to Mattel's Phase 2 damages claims. The Court and the former Discovery Master have ruled already that Mattel is entitled to

---

[44] See Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas, dated February 3, 2009, Webster Dec., Exh. 6; Mattel's Opposition to the MGA Parties' Motion to Quash Subpoenas Issued by Mattel, dated February 10, 2009, Webster Dec., Exh. 7. Mattel respectfully directs the Discovery Master's attention to those briefs and incorporates them herein by this reference.

[45] Mattel's Second Am. Complaint and Counter-Claims, dated July 12, 2007, at ¶¶ 88-105, Corey Dec., Exh. 19.

07975/2814725.2

OPPOSITION TO MOTION TO QUASH

evidence related to MGA's net worth.  Omni 808 and Vision Capital are directly involved in providing funding to MGA in exchange for a security interest.  Such funding, and security interests, are in and of themselves directly relevant to the financial condition of the MGA Parties, including the amount of the security interests, the terms and conditions of the funding, and the rate of the funding. The true identity of the persons and entities providing the funding and obtaining a security interest in MGA are likewise relevant to that issue.

• Mattel's subpoena also seeks documents relevant to the MGA Parties' defense of unclean hands.[47]  Mattel is entitled to respond to this defense by demonstrating that the MGA Parties are precluded from invoking the unclean hands defense because they have not themselves acted with clean hands.  As set forth above, MGA and Larian appear to have engaged in sham and fraudulent financial transactions, thereby acting with unclean hands, and warranting the preclusion of their asserted unclean hands defense.

• The MGA Parties' actions in fraudulently manipulating and concealing their sources of funding likely constitute anti-competitive actions encompassed by California's unfair competition laws.   Accordingly, the documents sought are reasonably calculated to lead to the discovery of admissible evidence relating to Mattel's unfair competition claim.

Mattel's requests are reasonably calculated to lead to the discovery of admissible evidence.

---

[46] See id. at ¶ 93(a) & (b).
[47] MGA's Amended Answer and Affirmative Defenses, dated September 19, 2007, at 20-21, Corey Dec., Exh. 103; Isaac Larian's Amended Answer and Affirmative Defenses, dated November 8, 2007, at 16-18, Corey Dec., Exh. 104.

-15-

## IV.   <u>BINGHAM HAS FAILED TO SHOW THAT MATTEL'S SUBPOENA IS UNDULY BURDENSOME</u>

As the party resisting discovery, Bingham bears the burden of proving undue burden by "specific and compelling" proof; conclusory assertions are insufficient.   See <u>Goodman v. U.S.</u>, 369 F.2d 166, 169 (9th Cir. 1966) (reversing district court's quashing of subpoena); <u>see</u> <u>JZ Buckingham Investments, LLC v. United States</u>, 78 Fed. Cl. 15, 25 (Fed. Cl. 2007) ("The party must provide specific and compelling proof that the burden is undue."); <u>Northrop Corp. v. McDonnell Douglas Corp.</u>, 751 F.2d 395, 403 (D.C. Cir. 1984) (reversing district court's decision quashing subpoena).   Bingham makes no such showing.

While asserting that that Mattel's subpoenas are "intended to annoy, burden and harass Bingham and its clients" (Mot. at 1), Bingham offers no apposite evidence in support of this claim.   There is not even a description, for example, of the volume of documents involved or the time or expense it would take to gather them in order to respond to the subpoenas.   Bingham has completely failed to prove any undue burden, and its objection fails for this reason alone under established law.   Courts consistently hold that the mere allegation of undue burden, without evidentiary support, is insufficient to resist discovery.   See <u>Garber</u>, 234 F.R.D. at 188 ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper--especially when a party fails to submit any evidentiary declarations supporting such objections.").[48]   This is, indeed, the rule that the Discovery Master in this case previously adopted and applied in this litigation.[49]

---

[48]   See also <u>McLeod, Alexander, Powel & Apffel, P.C. v. Quarles</u>, 894 F.2d 1482, 1485 (5th Cir. 1990) (objections that document requests are overly broad, burdensome and oppressive are insufficient to meet objecting party's burden of explaining why discovery requests are objectionable); <u>Panola Land Buyers Ass'n v. Shuman</u>, 762 F.2d 1550, 1559 (11th Cir. 1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific to demonstrate why requested discovery is objectionable); <u>U.S. E.E.O.C. v. ABM Industries Inc.</u>, 2008 WL 5385618, at *8 (E.D. Cal. 2008) ("A bare assertion of undue burden without factual allegations does not suffice."); <u>Residential Constructors, LLC v. Ace Property and Cas. Ins. Co.</u>, 2006 WL 3149362, at *9 (D. Nev. 2006) ("In opposing discovery on grounds of (footnote continued)

OPPOSITION TO MOTION TO QUASH

1       Bingham undoubtedly fails to show burden because it cannot.   For

2   example, its clients, Omni 808 and Vision Capital, are single-purpose entities, recently

3   formed during the damages phase of the trial.[50]   Given that these entities sprang into

4   existence only months ago, and given their single-purpose nature, any responsive

5   documents are hardly so voluminous that any burden could be characterized as

6   "undue," especially in light of the importance of the information sought.   Bingham's

7   burden and related objections should be overruled.

8   **V.   BINGHAM HAS FAILED TO SHOW THAT MATTEL'S SUBPOENA**

9       **IS OVERBROAD**

10       Bingham argues that Mattel's subpoena is overbroad because it

11   "encompasses both privileged and irrelevant communications."  (Mot. at 11).   As

12   Mattel has demonstrated at length above, Bingham's privilege and relevance objections

13   are without merit.[51]   Unable to support its overbreadth objection to the actual Mattel

14   subpoena to Bingham at issue here (Mot. at 11-12), Bingham again relies on the

15   completely unrelated case of Mattel, Inc. v. Walking Mountain Productions, 353 F.3d

16   792 (9th Cir. 2003).   In doing so, Bingham rehashes a failed tactic.   At the March 4,

17   2009 hearing when Bingham sought to interject this same case -- based on its wholly

18   erroneous claim that the decision requires party discovery before third-party discovery

19   can be taken -- the Discovery Master noted the impropriety of *ad hominem* attacks.

20   And, during Phase 1 of this case, MGA and its affiliated third parties cited this case to

21

---

22   burdensomeness, the objecting party is required to demonstrate that the time and expense
involved in responding to the requested discovery will, in fact, be unduly burdensome.");

23   Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94, 109 (W.D.N.Y. 2000) (overruling
"burdensome" objections because objecting party failed to particularize basis for objection);

24   Fletcher v. Atex, Inc., 156 F.R.D. 45, 54 (S.D.N.Y. 1994) ("If a party resists production on the
basis of claimed undue burden, it must establish the factual basis for the assertion through

25   competent evidence.").
   [49]   See, e.g., May 15, 2007 Order by Discovery Master, at 14:4-6, Webster Dec., Exh. 9.

26      [50]   See Omni 808 Investors, LLC Certificate of Status and Articles of Organization, dated
August 12, 2008, Declaration of Jon D. Corey submitted in support of Motion to Compel,

27   Exh. 44; Vision Capital, LLC Certificate of Formation, dated August 19, 2008, Corey Dec.,
Exh. 45.

28      [51]   See Sections II and III infra.

-17-

OPPOSITION TO MOTION TO QUASH

1    Judge Larson, to no avail.  Bingham's latest resort to this tactic is equally baseless here.

2    <u>Walking Mountain</u> involved no requests that even resemble the requests at issue on this

3    motion.   Bingham's reliance on an unrelated case regarding completely different

4    subpoenas is particularly unpersuasive, given Bingham's disregard for ***this*** Court's

5    repeated Orders ***in this litigation*** rejecting the arguments that Bingham makes here and

6    compelling production in response to comparable discovery requests.[52]

7    ## VI.    BINGHAM'S PRIVACY OBJECTION IS UNWARRANTED

8              The Motion argues that Mattel seeks documents containing confidential

9    information or otherwise protected by a right of privacy.  (Mot. at 8).  Because the

10   Court has entered a Protective Order in this action, which Bingham has signed,[53]

11   confidentiality concerns do not justify withholding documents.  <u>See, e.g.</u>, <u>Putnam v. Eli</u>

12   <u>Lilly and Co.</u>, 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007) (finding that a protective

13   order "can strike the appropriate balance between the need for the information and the

14   privacy concerns" of the party opposing production of employee data); <u>Keith H. v.</u>

15   <u>Long Beach Unified School District</u>, 228 F.R.D. 652, 658 (C.D. Cal. 2005) (compelling

16   production of student records because of slight redactions and "a protective order to

17   minimize any invasion of the students' privacy rights"); <u>In re Heritage Bond Litigation</u>,

18   2004 WL 1970058 at *5, n.12 (C.D. Cal. 2004) ("Any privacy concerns . . . defendants

19   have in their bank records and related financial statements are adequately protected by

20   the protective order, and are not sufficient to prevent production in this matter"); <u>A.</u>

21   <u>Farber and Partners, Inc.</u>, 234 F.R.D. at 191-92 ("P]laintiff's need for defendant

22   Garber's financial documents outweighs defendant Garber's claim of privacy, especially

23

24   _____

         [52]  <u>See</u> Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at
25   11-12, Webster Dec., Exh. 8; Order Granting Mattel's Motion to Compel Production of
     Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10, Webster Dec.,
26   Exh. 9; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's
     Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for
27   Sanctions, dated June 19, 2007, at 2-4, Webster Dec., Exh. 10; Order Re Motions Heard on
     June 11, 2007, dated June 27, 2007, at 33-34, Webster Dec., Exh. 11.
28       [53]  Corey Dec., ¶ 3.

when the 'impact' of the disclosure of the information can be protected by a 'carefully drafted' protective order").

The former Discovery Master repeatedly ruled that the Protective Order is sufficient to alleviate any privacy concerns concerning third-party witnesses.[54] Although MGA objected to that ruling, the Court approved the Discovery Master's order, finding that the entry of a protective order justified compelling production of even "sensitive documents" to MGA's "fierce competitor."[55]  Bingham's unproven confidentiality and privacy objections must be overruled.

## VII.   BINGHAM, NOT MATTEL, SHOULD BE SANCTIONED

Bingham grounds its sanctions request on Mattel's supposed failure "to take any reasonable steps to avoid imposing undue burden and expense on Bingham." (Mot. at 14).  As set forth in Section IV above, however, Bingham has not shown that any burden in responding to Mattel's subpoena could be found at all, let alone characterized as "undue," especially in light of the importance of the information sought.[56]  In contrast, Bingham's conduct has required Court intervention where none should have been necessary.  Mattel provided Bingham with this Court's Orders holding that fee agreements are not privileged and are relevant.  Still, Bingham refused to produce such agreements.  Bingham has also refused to produce a privilege log, which is clearly required under the Federal Rules.  Most troubling, Bingham has forced Mattel to bring a separate motion to compel through its refusals to agree that it would produce if the present Motion to Quash is denied and sought to force multiple rounds of serial motion practice.  Thus, it is Bingham, not Mattel, that should be sanctioned here.

---

[54]   Order Dated May 15, 2007, at 11, n.4, Corey Dec., Exh. 99.
[55]   Order Dated July 2, 2007, at 3, Corey Dec., Exh. 23.
[56]   In arguing for sanctions, Bingham relies yet again on Walking Mountain.  (Mot. at 14-15).  The Discovery Master should reject Bingham's repeated citation to this unrelated case for the red herring that it is.  In fact, if anything, Bingham's heavy reliance on it only serves to underscore that Bingham's refusals to provide discovery lack substance.

OPPOSITION TO MOTION TO QUASH

1

## __Conclusion__

2      For the reasons set forth above, Mattel respectfully requests that the

3  Discovery Master deny Bingham McCutchen LLP's Motion to Quash.

4

5  DATED:  March 5, 2009              QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
6

7                                     By /s/ Michael T. Zeller
                                         Michael T. Zeller
8                                        Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28