1 | THOMAS J. NOLAN (Bar No. 66992)
   | (tnolan@skadden.com)
2 | RAOUL D. KENNEDY (Bar No. 40892)
   | (rkennedy@skadden.com)
3 | JASON D. RUSSELL (Bar No. 169219)
   | (jrussell@skadden.com)
4 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   | 300 South Grand Avenue, Suite 3400
5 | Los Angeles, CA  90071-3144
   | Tel.: (213) 687-5000
6 | Fax: (213) 687-5600

7 | Attorneys for The MGA Parties

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11 | CARTER BRYANT, an individual,

12 | Plaintiff,

13 | v.

14 | MATTEL, INC., a Delaware corporation,

15 | Defendant.

16 |

17 | AND CONSOLIDATED ACTIONS.

18 |

19 | **CONFIDENTIAL – ATTORNEYS' EYES ONLY**

20 |

21 | **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with Case No. 04-9059 and Case No. 05-2727

Honorable Stephen G. Larson

(1)   MGA PARTIES' CORRECTIONS TO THE OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION FOR APPOINTMENT OF A RECEIVER OR FOR ALTERNATIVE RELIEF;

**FILED UNDER SEPARATE COVER**:

(2)   DECLARATION OF BRIAN WING IN SUPPORT THEREOF [under seal].

Hearing Date:   January 5, 2008
Time:   10:00 AM

EXHIBIT _18_

PAGE _91_

12/31

---

MGA Parties' Corrections to the Opp'n To Mattel's *Ex Parte* Appl. For Appointment Of A Receiver
Case No. CV 04-9049 SGL (RNBx)

## PRELIMINARY STATEMENT

The MGA Parties respectfully submit this memorandum to correct an unintended erroneous factual assertion made in their opposition to Mattel's *ex parte* application seeking appointment of a receiver or alternative relief, filed early yesterday morning with this Court. The MGA Parties also wish to modify their position concerning Mattel's request for expedited discovery in light of the Court's comments at the December 30 hearing. In all other respects, the MGA Parties stand behind their opposition brief and maintain that the imposition of a receiver is not warranted and Mattel's *ex parte* application should be denied.

At page 2, lines 23 to 24 of their Opposition, the MGA Parties asserted that a third party creditor called Omni 808 International, LLC ("Omni") "did nothing more than step into the shoes of Wachovia by purchasing its security interest. This entity did *not* extend any new credit to MGA." (Opp'n at 2:23-24 (emphasis in original).) It made similar statements at page 3, lines 1 to 2, at page 7, lines 24 to 25, and at page 9, lines 23 to 24. Since the filing of this Opposition, counsel has learned that after the jury's verdict in Phase 1b but before the Court granted a permanent injunction, constructive trust and declaratory relief on December 3rd, Omni did in fact enter into a Secured Delayed Draw Demand Note as of October 16, 2008 (the "Note"). (See Declaration of Brian Wing ¶ 3.) Under the terms of the Note, if MGA satisfied certain terms and obligations, $40 million was available to draw upon. (Id.) MGA drew down $6 million under the Note on October 17, 2008. (Id. ¶ 4.) At some point thereafter, MGA was declared in default under the Note and Omni has not extended and will not extend further credit to MGA. (Id. ¶ 5.)[1]

As soon as MGA's counsel learned of this inadvertent error, it contacted counsel for

---

[1] As the Court is aware, Mattel filed its *ex parte* at 4:10 a.m. the day before the hearing on MGA's motion to stay. Given the serious allegations made, the exigent circumstances, and the fact that MGA was still finalizing its voluminous submissions in support of its motion to stay, MGA sought leave of Court to file its opposition on the afternoon of December 30th. The Court's clerk called to inform MGA at 4:20 p.m. that an opposition had to be filed within 24 hours of Mattel's filing (or 4:10 a.m. on December 30th) so that the issue would be briefed in time for the 10:00 a.m. hearing on MGA's motion for a stay. Despite at that point having less than 12 hours to do so, MGA's counsel prepared and timely filed an opposition to Mattel's *ex parte* application.

1

EXHIBIT 18

PAGE 92

1   Mattel to alert them to the error and stipulated to allow Mattel additional time to prepare its

2   reply in support of the *ex parte* application.  (See Dkt. Nos. 4596 (Stipulation) and 4596-2

3   ([Proposed] Order.)  Despite this error, the fundamental point made in the MGA Parties'

4   opposition remains correct, a receiver is an extraordinary remedy that should not be

5   imposed here for the reasons stated in MGA's Opposition. (Opp'n at 3-4, 13-17.)  Moreover,

6   MGA's position concerning Omni also remains correct; due to the entry of the Court's

7   December 3rd Orders and the threat that they will be enforced soon, MGA cannot obtain

8   new credit and its existing creditors are threatening to rescind their credit arrangements with

9   MGA.  (See, e.g., Wing Decl. Ex. B at 4 (discussing impact of Court's Orders on MGA).)

10      In opposing Mattel's *ex parte*, the MGA Parties took the position that no discovery

11  was needed or appropriate. They continue to believe that is true. However, at the December

12  30th hearing, in response to arguments made by Mattel, the Court expressed the view that:

13      . . . the finances of MGA, [] at this point, quite frankly, are a mystery to the Court.

14      And that mystery was compounded in part by what I read on appeal, what I've

15      heard from counsel, what I've seen in other papers. I just don't know what

16      exactly is going on with all of that, and I want to explore that at Monday's

17      hearing on that motion.

18  (12/30 Hearing Transcript at 57:11-18.)

19      Although the MGA Parties respectfully submit that, for the reasons they set forth in

20  their *ex parte* opposition, Mattel did not come close to showing that MGA's finances were

21  such that the limited assets as to which Mattel has a legal entitlement (the Bratz intellectual

22  property and the damages award after remittitur) are at risk, MGA wishes to assuage the

23  Court's concerns and remove any "mystery" so that Mattel's charges can be shown to be

24  groundless.  Moreover, MGA wishes to remove this "mystery" because Mattel is using

25  MGA's legitimate right to confidentiality of its financial status to harm MGA in the

26  community by re-publishing the charges made in Mattel's *ex parte* application, which has

27  caused vendors, retailers, suppliers, and creditors to express concern about MGA's viability

28  even if the Court's December 3rd Orders are stayed for the entirety of 2009.

EXHIBIT *18*

PAGE *93*

1  Consequently, the MGA Parties wish to modify their position on the discovery sought
2  in Mattel's *ex parte* application as follows.   First, MGA proposes that a reputable third-
3  party independent auditor be appointed by this Court to evaluate and audit MGA's financial
4  status, the contours and timing of which can be discussed at the hearing on January 5th but
5  the findings of which would have to remain Attorneys' Eyes Only.   In the interest of
6  reducing expense and effort to both parties, MGA proposes that auditor be Ernst & Young,
7  the accounting firm currently retained by MGA to prepare its financial statements because
8  those accountants are obviously very familiar with MGA's finances. In making this
9  proposal, MGA emphatically deny that such action is merited by any prior bad acts or
10  fraudulent conduct on the part of MGA Parties – and, to be clear, there is no such conduct.
11  The only reason that MGA is making this proposal is to lay to rest any uncertainty this
12  Court may have without resorting to expensive and invasive discovery and to put to an end,
13  once and for all, Mattel's groundless accusations concerning MGA's financial status.

14  Second, to eliminate any suggestion of financial impropriety during the pendency of
15  the audit, MGA is willing to agree to a temporary order prohibiting MGA or Isaac Larian
16  from taking any action to make any sizeable distributions of MGA's revenues and/or assets
17  or engaging in any transactions resulting in the dissipation of said assets or revenues while
18  the third-party audit is being conducted.  Again, the precise contours of this proposal can be
19  discussed at the January 5th hearing; the only absolutely critical component is that the terms
20  of that order be confidential because the very knowledge of such an order will dramatically
21  harm MGA's status in the market place and upset the status quo that the Court was trying to
22  maintain when it acted as it did at the December 30th hearing.  This order would give both
23  Mattel and the Court comfort that Mattel's interests in enforcing its monetary judgments
24  will be protected without the extraordinary (and MGA, would maintain, completely
25  unjustified) appointment of a receiver.

26  Third, no depositions or document discovery of any kind should be permitted to be
27  taken by Mattel concerning the finances of MGA during the pendency of the audit.  If, after
28  the accountants complete their report, there are issues that Mattel has with that report or any

EXHIBIT  *18*

PAGE  *94*

1 | findings therein, the parties can revisit the issue. To allow otherwise would impose

2 | duplicative and, more importantly, very costly discovery burdens on MGA at a time when it

3 | is faced with financial difficulties arising out of the existence of the December 3rd Orders.

### CONCLUSION

5 |     The MGA Parties respectfully submit the above corrections and proposals and

6 | reiterate their request that Mattel's *ex parte* request for appointment of a receiver and

7 | alternative request for expedited discovery be denied.

8 | DATED: December 31, 2008    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

9 |            By: _Thomas Nolan / ls_

10 |                       Thomas J. Nolan

                  Attorneys for the MGA Parties

EXHIBIT _18_

PAGE _95_

# State of California
## Secretary of State

### CERTIFICATE OF STATUS

**ENTITY NAME:**   OMNI 808 INVESTORS LLC

**FILE NUMBER:**          200822610026
**FORMATION DATE:**    08/12/2008
**TYPE:**                        DOMESTIC LIMITED LIABILITY COMPANY
**JURISDICTION:**          CALIFORNIA
**STATUS:**                    ACTIVE (GOOD STANDING)

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

The records of this office indicate the entity is authorized to exercise all of its powers, rights and privileges in the State of California.

No information is available from this office regarding the financial condition, business activities or practices of the entity.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of December 13, 2008.

**DEBRA BOWEN**
**Secretary of State**

EXHIBIT _19_

PAGE _96_

MMS

OSP 08 99731

NP-25 (REV 1/2007)

## State of California
### Secretary of State



I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

That the attached transcript of _____ page(s) was prepared by and in this office from the record on file, of which it purports to be a copy, and that it is full, true and correct.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of

DEC 1 3 2008

*Debra Bowen*

**DEBRA BOWEN**
Secretary of State

EXHIBIT *19*

PAGE *97*

2 0 0 8 2 2 6 1 0 0 2 6

| LLC-1 | File # |

### State of California
### Secretary of State

**FILED**
In the office of the Secretary of State
of the State of California

AUG 1 2 2008

## LIMITED LIABILITY COMPANY
## ARTICLES OF ORGANIZATION

A $70.00 filing fee must accompany this form.

**IMPORTANT – Read instructions before completing this form.**

This Space For Filing Use Only

**ENTITY NAME** (End the name with the words "Limited Liability Company," or the abbreviations "LLC" or "L.L.C." The words "Limited" and "Company" may be abbreviated to "Ltd." and "Co.," respectively.)

1.  NAME OF LIMITED LIABILITY COMPANY

    OMNI 808 Investors LLC

**PURPOSE** (The following statement is required by statute and should not be altered.)

2.  THE PURPOSE OF THE LIMITED LIABILITY COMPANY IS TO ENGAGE IN ANY LAWFUL ACT OR ACTIVITY FOR WHICH A LIMITED LIABILITY COMPANY MAY BE ORGANIZED UNDER THE BEVERLY-KILLEA LIMITED LIABILITY COMPANY ACT.

**INITIAL AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and both items 3 and 4 must be completed. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and item 3 must be completed (leave item 4 blank).

3.  NAME OF INITIAL AGENT FOR SERVICE OF PROCESS

    Corporation Service Company which will do business in California as CSC-Lawyers Incorporating Service

4.  IF AN INDIVIDUAL, ADDRESS OF INITIAL AGENT FOR SERVICE OF PROCESS IN CALIFORNIA   CITY   STATE   ZIP CODE

    CA

**MANAGEMENT** (Check only one)

5.  THE LIMITED LIABILITY COMPANY WILL BE MANAGED BY:

    [ ] ONE MANAGER

    [✓] MORE THAN ONE MANAGER

    [ ] ALL LIMITED LIABILITY COMPANY MEMBER(S)

**ADDITIONAL INFORMATION**

6.  ADDITIONAL INFORMATION SET FORTH ON THE ATTACHED PAGES, IF ANY, IS INCORPORATED HEREIN BY THIS REFERENCE AND MADE A PART OF THIS CERTIFICATE.

**EXECUTION**

7.  I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

August 12, 2008
DATE

*Tricia Chev—*
SIGNATURE OF ORGANIZER

Tricia A. Church
TYPE OR PRINT NAME OF ORGANIZER

APPROVED BY SECRETARY OF STATE

LLC-1 (REV 04/2007)

EXHIBIT 19
PAGE 98

# Delaware

PAGE 1

## The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS ON FILE OF "VISION CAPITAL, LLC" AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

CERTIFICATE OF FORMATION, FILED THE NINETEENTH DAY OF AUGUST, A.D. 2008, AT 12:36 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID LIMITED LIABILITY COMPANY, "VISION CAPITAL, LLC".

4589295   8100H

081207227

You may verify this certificate online
at corp.delaware.gov/authver.shtml

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 7032931

DATE: 12-17-08

EXHIBIT 20

PAGE 99

08/19/2008 11:39 FAX 3026528597          DELAWARE CORP          → SECY OF STATE      ☑002

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 12:41 PM 08/19/2008*
*FILED 12:36 PM 08/19/2008*
*SRV 080883130 – 4589295 FILE*

## CERTIFICATE OF FORMATION

### OF

### VISION CAPITAL, LLC

This Certificate of Formation of **VISION CAPITAL, LLC** the ("Company"), is being executed by the undersigned for the purpose of forming a limited liability company pursuant to the Delaware Limited Liability Company Act.

1. The name of the Company is **VISION CAPITAL, LLC**.

2. The address of the registered office of the Company in Delaware is 800 Delaware Avenue, City of Wilmington, New Castle County, 19801. The Company's registered agent at that address is Delaware Corporations LLC.

**IN WITNESS WHEREOF**, the undersigned, an authorized person, has caused this Certificate of Formation to be duly executed as of the 19th day of August, 2008.

DELAWARE CORPORATIONS LLC,
Authorized Person

By:  _Robin G. Brooks_

Robin G. Brooks, Vice President

EXHIBIT 20
PAGE 100

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10             EASTERN DIVISION

11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx)
12 |              Plaintiff, | Consolidated with
   |                         | Case No. CV 04-09059
13 |        vs. | Case No. CV 05-02727
14 | MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER**
15 |                         | **[To Be Heard By Discovery Master Robert C. O'Brien Pursuant To Order Of January 6, 2009]**
   |              Defendant. |
16 |              |
17 | AND CONSOLIDATED ACTIONS | MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO THIRD-PARTY SUBPOENAS; AND
18 |                         |
19 | **CONFIDENTIAL -- ATTORNEY'S EYES ONLY** |
20 | **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** | MEMORANDUM OF POINTS AND AUTHORITIES
21 |                         | [Mattel, Inc.'s Separate Statement and Declaration of Jon D. Corey filed concurrently herewith]
22 |                         |
23 |                         |
24 |                         | Hearing Date:        TBD
   |                         | Time:                TBD
   |                         | Place:               TBD
25 |                         |
26 |                         | Phase 2:
   |                         | Discovery Cut-off:       Not set
27 |                         | Pre-trial Conference:    Not set
   |                         | Trial Date:              Not set
28 |                         |

1  TO ALL PARTIES, NON-PARTIES IGWT GROUP, LLC, IGWT 826
2  INVESTMENTS, LLC, VISION CAPITAL, LLC, OMNI 808 INVESTORS, LLC
3  AND OMNINET CAPITAL, LLC, AND THEIR RESPECTIVE ATTORNEYS OF
4  RECORD:

5       Please take notice that at a hearing before Discovery Master Robert C. O'Brien
6  that will occur on a date and at a time to be determined by the Discovery Master,
7  plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court for an order
8  overruling objections by IGWT Group, LLC, IGWT 826 Investments, LLC, Vision
9  Capital, LLC, Omni 808 Investors, LLC and OmniNet Capital, LLC and the MGA
10 Parties related to Mattel's subpoenas and for an order compelling IGWT Group, LLC,
11 IGWT 826 Investments, LLC, Vision Capital, LLC, Omni 808 Investors, LLC and
12 OmniNet Capital, LLC to produce documents responsive to their respective subpoenas
13 and, to the extent any subpoenaed party is withholding documents on the basis of
14 privilege, to provide a privilege log.

15      This Motion is made pursuant to Federal Rules of Civil Procedure 37 and 45 on
16 the grounds that the subpoenas seek discoverable information and that the MGA
17 Parties' objections and the third-parties' objections, to the extent asserted, should be
18 overruled.

19      This Motion is based on this Notice of Motion and Motion, the accompanying
20 Memorandum of Points and Authorities, the Declaration of Jon D. Corey filed
21 concurrently herewith, the records and files of this Court, and all other matters of which
22 the Court may take judicial notice.

23            **Certificate Of Compliance With Local Rule 37-1**

24      Mattel, MGA and the third-parties met and conferred regarding the production of
25 documents responsive to the third-party subpoenas on January 28, 2009 and thereafter,

26
27
28

07209/2783835.1

-1-

MOTION TO COMPEL
EXHIBIT *21*

PAGE *102*

1 | but were unable to reach agreement regarding the issues raised in this motion.

2

3 | DATED:  February 3, 2009          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

4

5 | By /s/ Jon Corey

6 | Jon Corey
Attorneys for Mattel, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO COMPEL

EXHIBIT 21

PAGE 103

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT................................................................1

CASE BACKGROUND ........................................................................3

STATEMENT OF FACTS .....................................................................8

ARGUMENT ......................................................................................14

I.   MGA HAS A HISTORY OF UNTRUSTWORTHY STATEMENTS ABOUT ITS FINANCES .............................................................14

II.  MATTEL'S SUBPOENAS SEEK DOCUMENTS THAT ARE UNQUESTIONABLY RELEVANT ..............................................18

    A.   The Documents Sought Are Relevant to Mattel's RICO Claims .........18

    B.   The Documents Sought Are Relevant to Mattel's Disgorgement Claim........................................................................................19

    C.   The Documents Sought Are Relevant to Phase 2 Damages ................21

    D.   The Documents Sought Are Relevant to Defendants' Credibility........23

    E.   The Documents Sought are Relevant to the MGA Parties' Unclean Hands Defense................................................................23

    F.   The Documents Sought Are Relevant to Mattel's Unfair Competition Claim ....................................................................24

III. THE REMAINING OBJECTIONS ARE BOILERPLATE AND SHOULD BE OVERRULED ........................................................25

    A.   The Boilerplate Objections Are Improper.............................................25

    B.   That Documents May be Available from Other Parties Does Not Excuse Compliance ...................................................................25

    C.   The Objection Based Upon the Accountant-Client Privilege Is Unfounded.................................................................................26

    D.   Mattel's Requests Do Not Impose an Undue Burden .........................27

    E.   Mattel's Requests Do Not Violate the Discovery Master's May 7, 2008 Order ..............................................................................27

    F.   Concerns Over Confidentiality Are Alleviated by the Protective Order ........................................................................................28

IV.  EACH OF THE SUBPOENAED PARTIES MUST PRODUCE ADEQUATE PRIVILEGE LOGS...............................................29

07209/2783835.1

-i-

MOTION TO COMPEL

EXHIBIT **21**

PAGE **104**

1  CONCLUSION .......................................................................................................30

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2783835.1

-ii-

MOTION TO COMPEL

EXHIBIT 21

PAGE 105

# TABLE OF AUTHORITIES

**Page**

## Cases

A. Farber and Partners, Inc. v. Garber,
234 F.R.D. 186 (C.D. Cal. 2006) ........................................................ 25, 28

Asdourian v. Konstantin,
77 F. Supp. 2d 349 (E.D.N.Y. 1999) ................................................... 18, 19

In re Bergeson,
112 F.R.D. 692 (D. Mont. 1986) ............................................................. 24

Blain v. Doctor's Co.,
222 Cal. App. 3d 1048 (1990) ............................................................... 24

Burlesci v. Petersen,
68 Cal. App. 4th 1062 (1998) ................................................................ 21

Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.,
408 F.3d 1142 (9th Cir. 2005) ............................................................... 28

Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.,
175 F.R.D. 646 (C.D. Cal. 1997) ........................................................... 23

Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,
20 Cal. 4th 163 (1999) ......................................................................... 25

Clark v. Bunker,
453 F.2d 1006 (9th Cir. 1972) ............................................................... 20

Couch v. United States,
409 U.S. 322 (1972) ............................................................................. 26

Covey Oil Co. v. Continental Oil Co.,
340 F.2d 993 (10th Cir. 1965) ............................................................... 25

Cramer v. Biddison,
257 Cal. App. 2d 720 (1968) ................................................................ 20

Eastman Kodak Co. v. Camarata,
238 F.R.D. 372 (W.D.N.Y. 2006) ........................................................... 19

Farmer Ins. Exchange v. Zerin,
53 Cal. App. 4th 445 (1997) ................................................................ 21

GoTo.com, Inc. v. Walt Disney Co.,
202 F.3d 1199 (9th Cir. 2000) ............................................................... 23

Goodman v. U.S.,
369 F.2d 166 (9th Cir. 1966) ............................................................ 25, 27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-iii-

MOTION TO COMPEL

EXHIBIT _____

Granberry v. Islay Investments,
  9 Cal. 4th 738 (1995)..............................................................24

Heat and Control, Inc. v. Hester Indus., Inc.,
  785 F.2d 1017 (Fed. Cir. 1986).............................................18

Hilao v. Estate of Marcos,
  103 F.3d 767 (9th Cir. 1996) ...............................................21

In re Heritage Bond Litigation,
  2004 WL 1970058 (C.D. Cal. 2004)....................................28

In re Imperial Corp. of Am.,
  174 F.R.D. 475 (S.D. Cal. 1997)..........................................28

In re Lifschultz Fast Freight,
  132 F.3d 339 (7th Cir. 1996) ...............................................11

In re McKesson HBOC, Inc. Erisa Litigation,
  391 F. Supp. 2d 812 (N.D. Cal. 2005) .................................23

In re Mobile Steel,
  563 F.2d 692 (5th Cir. 1977) ...............................................11

JZ Buckingham Investments, LLC v. United States,
  78 Fed. Cl. 15 (Fed. Cl. Ct. 2007).......................................27

Korea Supply Co. v. Lockheed Martin Corp.,,
  29 Cal. 4th 1134 (2003) ......................................................20

Keith H. v. Long Beach Unified School District,
  228 F.R.D. 652 (C.D. Cal. 2005).........................................28

Kraus v. Trinity Management Servs., Inc.,
  23 Cal. 4th 116 (2000)...:....................................................20

Kraus v. Willow Park Public Golf Course,
  73 Cal. App. 3d 354 (1977) .................................................21

Nelmida v. Shelly Eurocars, Inc.,
  112 F.3d 380 (9th Cir. 1997)................................................24

Northrop Corp. v. McDonnell Douglas Corp.,
  751 F.2d 395 (D.C. Cir. 1984)..............................................27

Panola Land Buyers Ass'n v. Shuman,
  762 F.2d 1550 (11th Cir. 1985) ...........................................25

Putnam v. Eli Lilly and Co.,
  508 F. Supp. 2d 812 (C.D. Cal. 2007)..................................28

Robert L. Cloud & Associates v. Mikesell,
  69 Cal. App. 4th 1141 (1999) ..............................................21

07209/2783835.1

MOTION TO COMPEL
EXHIBIT 21
PAGE 107

Rubin v. Green,
4 Cal. 4th 1187 (1993) ...................................................................... 24

Southern California Housing Rights Center v. Krug,
2006 WL 4122148 (C.D. Cal. 2006) .................................................. 21

State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.,
2007 WL 2993840 (E.D.N.Y. 2007) ................................................. 25

Taylor v. Polackwich,
145 Cal. App. 3d 1014, 1022 (1983) .................................................. 20

U.S. v. American Optical Co.,
39 F.R.D. 580 (N.D. Cal. 1966) ......................................................... 18

Weiss v. Marchus,
Weiss v. Marchus 51 Cal. App. 3d 590 (1975) ................................. 20

**Statutes**

11 U.S.C. § 510(c) ................................................................................ 11

18 U.S.C. § 1956 .................................................................................. 19

18 U.S.C. § 1957 .................................................................................. 19

18 U.S.C. § 2314 .................................................................................. 19

Fed. R. Civ. P. 45 ................................................................................ 28

Fed. R. Civ. P. 45 ................................................................................ 18

Fed. R. Civ. P. 45(b) ........................................................................... 18

**Other Authorities**

Business and Professions Code § 17200 ............................................. 24

Cal. Civ. Code § 2223 .................................................................. 20, 21

Cal. Civ. Code § 2224 .................................................................. 20, 21

Local Rule 30(b)(6)  ..................................................................... 16, 20

Local Rule 45(d)(2) .............................................................................. 28

07209/2783835.1

-v-

MOTION TO COMPEL

EXHIBIT 21

PAGE 108

## Preliminary Statement

Throughout this litigation, MGA has obstructed Mattel's -- and the Court's -- attempts to obtain an accurate, complete understanding of MGA's and Isaac Larian's finances. This ultimately led the District Court to comment, only a month ago, that "the finances of MGA, []at this point, quite frankly, are a mystery to the Court." (12/30/08 Hearing Tr. at 57:11-18).

MGA's recent financial dealings only add to that mystery. Following the jury's Phase 1B trial verdict in Mattel's favor this past summer, Mattel learned that MGA had a new alleged creditor, Omni 808, that replaced Wachovia as MGA's apparently largest creditor. Omni 808 is a shell corporation that was formed during trial and is owned and funded by other shell corporations -- Vision Capital and Lexington Financial. Lexington Financial, in turn, was incorporated off-shore in the Caribbean banking secrecy haven of Nevis and lists a fictional London address as its purported headquarters. Intentionally or not, the structure of the transactions and the use of these entities serve to obscure MGA's finances. And, only serving to heighten the concern about the integrity and completeness of MGA's financial information, a Los Angeles Superior Judge found that the CEO of Omni 808, MGA's newest business partner, to be "no more than a common thief" for his embezzlement of millions of dollars, his fabrication of financial records and his perjury. Similarly, serious questions exist about yet more, also newly minted entities that MGA's CEO and principal shareholder, Isaac Larian, created during trial to purchase Bratz products from MGA for pennies on the dollar. MGA is selling current product to these newly-formed Larian companies -- named IGWT -- at a discount of more than 80 percent.

In an effort to get to the bottom of MGA's finances, Mattel served subpoenas on the third-party entities involved. Continuing MGA's pattern of concealment and obstructionism as found in numerous Court Orders and the jury's verdict, however, MGA and the third parties associated with MGA flatly refuse to produce discoverable, highly-relevant information. Indeed, they refuse to produce any discovery on these

-1-

MOTION TO COMPEL
EXHIBIT _____ *2*

PAGE *109*

1  crucial subjects.  This is plainly improper, as the requested discovery is relevant to

2  Phase 2 claims and defenses, as well as to other issues that both MGA and Mattel have

3  raised before the Court, such as in Mattel's pending application for a receiver and in

4  MGA's repeated stay requests.

5      More specifically, over the past six months alone, MGA has repeatedly sought

6  stays from the District Court and the Ninth Circuit based on representations about its

7  alleged financial condition, including its purported inability to secure credit.  Given that

8  its appeal has been dismissed and its requests for a stay pending appeal have been

9  denied, MGA undoubtedly will try again once the District Court's injunctive orders

10 actually become final.  Mattel also has a pending request that the Court appoint a

11 receiver.    Indeed, in opposing Mattel's receivership motion, MGA initially

12 misrepresented to the Court -- under oath --that it was unable to secure credit from any

13 source.  MGA then had to confess that it had, in fact, received credit from Omni 808

14 after it was revealed by Mattel's investigation (and not from any facts disclosed by

15 MGA) that Omni, Vision Capital and Lexington Financial had entered into purported

16 credit transactions with MGA.   Similarly, despite its repeated claims of financial

17 distress to the District Court and to the Ninth Circuit, MGA made no disclosure that it

18 had been off-loading tens of millions of dollars' worth of product to Larian companies

19 for pennies on the dollar.  The discovery sought by the subpoenas is directly pertinent

20 to all of these transactions and thus to matters that both MGA and Mattel have raised.

21 And, the discovery is relevant because it is reasonably calculated to lead to admissible

22 evidence that will impeach MGA's and Larian's sworn statements.

23     Not only did MGA itself make its financial condition relevant by interjecting

24 these issues into the case, but MGA's financial condition is relevant to Mattel's claims

25 in Phase 2 of this case.  The subpoenaed documents are reasonably calculated to

26 understand MGA's and Larian's financial condition and to significant transactions

27 affecting their condition.  MGA's and Larian's net worth, financial condition, and ability

28 to pay are also relevant to the punitive damages that will be tried as part of Phase 2 of

MOTION TO COMPEL
EXHIBIT *21*

PAGE *110*

1    this case. Further, the MGA Parties' actions in manipulating the sources of funding and

2    apparently using single-purpose companies controlled by Larian to purchase Bratz

3    products from MGA for pennies on the dollar and resell them at a profit are relevant to

4    Mattel's Phase 2 criminal copyright infringement claims, affects MGA's and Larian's

5    financial condition, and represents anti-competitive conduct actionable under Mattel's

6    unfair competition claim. MGA's mid-trial transactions with non-operating entities

7    bear the classic hallmarks of an attempt to fraudulently transfer assets to its controlling

8    shareholders that, if substantiated, may constitute predicate acts of wire and mail fraud

9    that support Mattel's RICO claims. The requested documents are also to relevant to the

10    MGA Parties' unclean hands defense. Mattel is entitled to respond to this defense by

11    demonstrating that MGA is precluded from invoking the unclean hands because they

12    have not themselves acted with clean hands.

13        The Discovery Master should grant Mattel's motion, overrule the objections of

14    MGA and the third parties and compel IGWT Group, LLC, IGWT 826 Investments,

15    LLC, Vision Capital, LLC, Omni 808 Investors, LLC and OmniNet Capital, LLC to

16    produce documents responsive to their respective subpoenas.

17                             **Case Background**

18      **Phase 1.** Mattel first asserted claims relating to this dispute when it sued Carter

19    Bryant in April 2004, and MGA intervened as a defendant later that same year. After

20    Bryant and MGA brought their own reactive countersuits in 2004 and 2005,

21    respectively, Judge Larson consolidated the three cases, and then, on February 21,

22    2007, bifurcated these consolidated cases into two phases.[1]

23        Phase 1 focused on ownership of Bratz, Mattel's claims of copyright

24    infringement stemming from that ownership and Bryant's work with MGA while he

25

26    [1]   See Scheduling Orders in <u>Mattel v. Bryant</u>, Case No. CV 04-09059 ("Phase 1") and

27    <u>MGA v. Mattel</u>, Case No. CV 05-02727 ("Phase 2"), dated February 21, 2007. The Scheduling Orders are attached as Exhibit 10 to the concurrently filed Declaration of Jon D. Corey ("Corey Dec."). The District Court ultimately dismissed Bryant's suit for failure to state

28    a claim. <u>See</u> Order Granting Motions to Dismiss, dated July 17, 2006, Corey Dec., Exh. 11.

MOTION TO COMPEL

EXHIBIT *21*

PAGE *111*

1  was a Mattel employee, including the illegal payments MGA made or offered to him

2  while he was a Mattel employee.[2] It was the Phase 1 claims that the parties tried before

3  Judge Larson during the summer of 2008, resulting in jury verdicts in Mattel's favor.

4      Phase 1 trial proceeded in three stages. On July 17, 2008, after hearing six weeks

5  of evidence, the jury returned a unanimous verdict for Mattel in Phase 1A.[3] The jury

6  found that Carter Bryant conceived or created the Bratz characters, the Bratz name and

7  virtually all of the Bratz drawings, sculpts and prototypes at issue during the time he

8  was a Mattel employee.[4] As a consequence, the Court ruled that Mattel, and not MGA

9  or Bryant, owned the Bratz-related inventions under Bryant's Inventions Agreement

10  with Mattel.[5] The jury also unanimously found MGA and Larian liable for tortious

11  interference with contract, conversion, aiding and abetting breach of fiduciary duty, and

12  aiding and abetting breach of duty of loyalty.[6]

13      In Phase 1B trial, after hearing additional testimony and evidence, the jury

14  unanimously found MGA liable for infringing Mattel's copyrights in the Bratz works

15  that Mattel owned.[7] The jury also found that MGA fraudulently concealed the bases for

16  Mattel's claims of intentional interference and conversion.[8] The jury awarded Mattel in

17  excess of $100 million for all its claims.

18      ·Phase 1C, addressing non-jury and remedial issues, is proceeding before the

19  district court. On December 3, 2008, the Court found that Mattel was entitled to an

20  order enjoining MGA's further manufacture, distribution and sale of infringing Bratz

21  dolls and its further use of the "Bratz" name.[9] The Court also ruled that Mattel was

---

[2]  See July 2, 2007 Minute Order, at 2, Corey Dec., Exh. 12.
[3]  See Final Verdict Form as Given – Phase 1(a) ("Phase 1(a) Verdict"), dated July 17, 2008, Corey Dec., Exh. 13.
[4]  See Phase 1(a) Verdict, at 1-5, Corey Dec., Exh. 13.
[5]  See April 25 Order re Parties' Motions for Partial Summary Judgment, at 4-5, Corey Dec., Exh. 14; Final Jury Instructions as Given – Phase 1(a), Instruction No. 21, dated July 10, 2008, at 22-23, Corey Dec., Exh. 15.
[6]  Phase 1(a) Verdict, Corey Dec., Exh. 12.
[7]  Final Verdict Form as Given – Phase 1(b), dated August 26, 2008, Corey Dec., Exh. 16.
[8]  Id. at 8.
[9]  December 3, 2008 Minute Order, at 6-15, Corey Dec., Exh. 17.

MOTION TO COMPEL
EXHIBIT *21*

PAGE *112*

entitled to a declaration of ownership of its Bratz-related properties and a constructive trust.[10] The Court stayed its orders pending further order of the Court so as to allow the Court to rule on the parties' remaining post-trial motions,[11] which are currently scheduled for hearing on February 11, 2009.  On December 3, 2008, the Court also rejected MGA's equitable defenses, such as laches, to Mattel's Phase 1 claims.[12]

**Phase 2.**    Phase 2 involves the remainder of the parties' claims and counterclaims.  Mattel's Phase 2 claims include allegations that:

• Over the course of several years, MGA stole massive amounts of Mattel trade secrets in the U.S., Mexico and Canada, including Mattel's forward-looking, international business plans that MGA then used illegally to damage Mattel in the U.S. and global marketplaces.[13]  In 2005, the Office of the Mexican Attorney General obtained a search warrant from the Mexican Federal Courts for MGA's facilities in Mexico City.[14]  In the search, Mexican criminal authorities found and seized from MGA's offices both electronic and hard copies of hundreds of pages of documents containing Mattel's trade secrets.[15]  As MGA Vice President Susana Kuemmerle testified at deposition, Gustavo Machado, another MGA executive and a named defendant in this suit, admitted to her when they discussed the search that he had in his MGA office a CD of documents from Mattel.[16]

Despite knowing this, Larian and MGA promoted Machado to Vice President of Worldwide Marketing and transferred him to MGA's headquarters in the U.S.[17] Subsequently, when deposed in this case, Machado and another MGA manager directly involved in MGA's thefts of Mattel's trade secrets from Mattel's El Segundo

---

[10]  Id.
[11]  Id. at 16.
[12]  Id. at 3-5.
[13]  See Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims ("SAAC"), dated July 12, 2007, at ¶¶ 37-77, Corey Dec., Exh. 19.
[14]  See SAAC ¶ 53.
[15]  See id.
[16]  See Deposition Transcript of Susana Kuemmerle, dated January 28, 2008 ("Kuemmerle Depo. Tr."), at 140:20-144:10, Corey Dec., Exh. 20.

MOTION TO COMPEL

EXHIBIT _____ 21

PAGE 113

1   headquarters, refused to answer questions based on their claimed Fifth Amendment

2   rights.[18]

3          •      MGA bribed then-Mattel employees even beyond Bryant to secretly

4   provide services to MGA while they were still employed by Mattel, in violation of

5   contractual and fiduciary obligations and in violation of duties of loyalty, and otherwise

6   interfered with Mattel's contractual relationships.[19] These included, for example, three

7   Mattel sample makers who worked in Mattel's El Segundo Design Center and who

8   secretly worked on hundreds of Bratz products over the span of five years.[20] MGA

9   engaged in this misconduct through its vendors, Veronica and Peter Marlow, who paid

10  these Mattel employees in cash and prepared bogus documentation using false names

11  and false social security numbers in order to conceal their work for MGA.[21]

12         •      MGA has participated in an enterprise that has engaged in numerous acts

13  of mail and wire fraud, including conspiracy to commit perjury, and numerous acts of

14  commercial bribery, trade secret theft and criminal copyright infringement in violation

15  of the RICO statute.[22]

16         The predicate acts of MGA's RICO violations also include MGA's tampering

17  with evidence through its repeated alteration of documents and spoliation of evidence.

18  To cite a few examples, as noted above, MGA utilized fabricated documentation to

19  conceal the secret work of Mattel employees with MGA.  Furthermore, while still a

20  Mattel employee, Bryant sent his signed MGA contract using a Mattel fax machine.

21  Larian instructed another MGA executive to white-out the fax header showing it came

22

23  [17]  See SAAC ¶ 54, Corey Dec., Exh. 19.
    [18]  See, e.g., Deposition Transcript of Carlos Gustavo Machado Gòmez, dated October 14,
24  2008 ("Machado Depo. Tr."), at 53:10-14, 61:23-63:3, 68:21-69:6, 110:13-113:21, Corey
    Dec., Exh. 21; Deposition Transcript of Jorge Castilla, Vol. 1, dated October 28, 2008
25  ("Castilla Depo. Tr. Vol. 1") , at 51:15-22, 80:9-20, 84:19-85:6, 112:11-23. 113:11-114:22,
    Corey Dec., Exh. 22.
26  [19]  See SAAC ¶¶ 55-69, Corey Dec., Exh. 19.
    [20]  See Deposition Transcript of Peter Marlow Vol. 2, dated June 16, 2008 ("P. Marlow
27  Depo. Tr. Vol. 2"), at 409:19-410:5, 420:14-421:7, Corey Dec., Exh. 23.
    [21]  See id. at 448:15-19, 453:3-454:9.
28  [22]  See SAAC ¶¶ 88-105, Corey Dec., Exh. 19.

07209/2783835.1

-6-

EXHIBIT *21*

PAGE *114*

1 | from Mattel before sending it to an MGA lawyer.[23]  That copy also had the contract's

2 | date of September 18, 2000 whited-out.[24]  After Bryant began working with MGA,

3 | Bryant also put "1998" dates on Bratz drawings—dates that Bryant later admitted were

4 | wrong.[25]  MGA nevertheless used the false dates on those drawings in filings with the

5 | U.S. Copyright Office.[26]  And, in 2005, after he knew this suit had been filed, Farhad

6 | Larian, Isaac Larian's brother and a former MGA executive and director who was still

7 | working as a paid consultant for MGA at the time, destroyed ten to twelve boxes of

8 | documents and numerous emails and computer files containing information about

9 | Bratz.[27]  He intentionally did so to keep the documents from Mattel in this case.[28]

10 | Further showing that the Larian's' attempts to subvert the judicial process is part of a

11 | deliberate pattern, Farhad Larian had confirmed in an earlier email that Isaac Larian had

12 | instructed him (Farhad) to tell attorneys—falsely—that certain original documents

13 | could not be found in an insurance claim suit involving MGA.[29]

14 |         •       MGA and its CEO, Isaac Larian, made deliberately false statements about

15 | Mattel and its products in order to damage Mattel's reputation and to garner an unfair

16 | advantage in the marketplace.[30]

17 |

18 |

19 | [23]   See Trial Transcript in Phase 1 ("Trial Tr.") at 1327:23-1329:11 (O'Connor, June 4, 2008), Corey Dec., Exh. 18.

20 | [24]   See July 3, 2001 Fax from V. O'Connor to P. Glaser, Trial Exhibit ("TX") 13383, Corey Dec., Exh. 24.

21 | [25]   See Carter Bryant's Responses to Mattel's Fifth Set of Requests for Admission, dated July 9, 2007, Response Nos. 27 and 29, at 24-28, Corey Dec., Exh. 25.

22 | [26]   See Certificate of Registration VA 1-218-491 (Yasmin drawing), TX 511; Certificate

23 | of Registration VA 1-218-488 (Sasha drawing), TX 507; Certificate of Registration VA 1-218-487 (Jade drawing), TX 505; Certificate of Registration VA 1-218-490 (Cloe drawing),

24 | TX 509; Certificate of Registration VA 1-218-489 (Bratz group drawing), TX 513, Corey Dec., Exhs. 26-30.

25 | [27]   See Deposition Transcript of Farhad Larian, Vol. 1 ("F. Larian Depo. Tr. Vol. 1"),

26 | dated February 4, 2008, at 53:10-16, 56:9-57:5, 65:25-67:2, Corey Dec., Exh. 32.
[28]   See id. at 56:12-57:2.

27 | [29]   See Trial Tr. at 3785:19-24 (F. Larian, July 1, 2008), Corey Dec., Exh. 31; May 25, 2000 E-mail from F. Larian to I. Larian, TX 13380, Corey Dec., Exh. 33.

28 | [30]   See SAAC ¶¶ 78-81, Corey Dec., Exh. 19.

-7-

MOTION TO COMPEL
EXHIBIT *21*

PAGE *115*

1    In short, Mattel's Phase 2 claims are based on allegations that MGA has engaged

2 in a pattern of illegal conduct which goes well beyond its original theft of Bratz.

3 Although some Phase 2 discovery has occurred, the Court stayed Phase 2 discovery in

4 an order dated February 4, 2008, lifting it on January 6, 2009.[31]

5                               **Statement of Facts**

6    **MGA Misrepresents Its Financial Condition.**  In connection with applications

7 for an order staying the December 3, 2008 injunctive orders, MGA represented to this

8 Court and to the Ninth Circuit that, as a result of this case, it has been unable to obtain

9 credit.[32]  Mattel reviewed the financing statements filed regarding MGA and learned

10 that this was apparently false.  Since the Phase 1B verdict, a new creditor, Omni 808

11 International, LLC ("Omni 808") has taken a security interest in the bulk of MGA's

12 assets,[33] which facially suggested that new credit had been extended to MGA.  After

13 Mattel brought the Omni 808 transaction to the Court's attention, and contrary to

14 MGA's earlier, sworn representations to the Court and to the Ninth Circuit that it had

15 been unable to obtain new credit, MGA then admitted that Omni 808 had in fact

16 extended it additional credit.[34]

17    The transaction revealed in the financing statements also appears to be structured

18 to conceal the ultimate source of funds for the Omni 808/MGA transaction.  MGA

19 claims that this transaction is with the venerable OmniNet Capital private equity firm.[35]

20 That does not appear to be accurate, nor should the association with OmniNet be a basis

21 to assuage concerns.  Far from it.  OmniNet Capital is a private equity firm owned and

22
23 [31]    See Court's Minute Order, dated February 4, 2008, Corey Dec., Exh. 34; Court's Minute Order, dated January 6, 2009, Corey Dec., Exh. 35.
24 [32]    See Declaration of Brian Wing in Support of the MGA Parties' Request for a Stay, dated December 11, 2008, at ¶ 13, Corey Dec., Exh. 36.
25 [33]    UCC Financing Statement Amendment dated September 9, 2008, amending prior UCC Financing Statement to add Omni 808 Investors LLC as a creditor to MGA with co-priority with Wachovia Bank, N.A., Corey Dec., Exh. 37.
26 [34]    MGA Parties Corrections to the Opposition to Mattel, Inc.'s Ex Parte Application for
27 Appointment of a Receiver or for Alternative Relief, dated December 31, 2008, at 1-2, Corey Dec., Exh. 38.

28

MOTION TO COMPEL
EXHIBIT ___ 2

PAGE ___ 116

1  controlled by the Nazarian family, including Nazarian family brother-in-law Neil

2  Kadisha.[36]  Mr. Kadisha is also the alleged CEO of Omni 808, MGA's new business

3  partner.[37]  In a 2006 Los Angeles Superior Court decision, Mr. Kadisha was found to be

4  "no more than a common thief" for his embezzlement of millions (including for

5  OmniNet), his fabrication of financial records and his perjury.[38]  In that decision, the

6  Los Angeles Superior Court found Kadisha liable for stealing millions of dollars as part

7  of a decade-long pattern of fraudulent conduct that included perjury, subordination of

8  perjury, fabrication of financial records, sham transactions, preparation of back-dated

9  documents, fraudulent accountings, acts of looting, embezzlement and other

10  misappropriations of funds, breaches of fiduciary duty, conflicts of interest and illegal

11  self-dealing.[39]

12       Equally significantly, if the transaction were a straightforward purchase of

13  Wachovia's debt by OmniNet, then MGA, Larian, OmniNet and others would have no

14  incentive to conceal the ultimate source of funds, as apparently happened here.

15  OmniNet is not the secured party, and thus presumably not the actual debt

16  purchaser/lender.  Rather, the company holding the security interest is Omni 808, **a**

17  **single purpose entity** which was formed on August 12, 2008, near the end of the Phase

18

19

20  [35]   See MGA Parties' Opposition to Mattel's *Ex Parte* Application for Appointment of a

21  Receiver, dated December 30, 2008, at 8-9 n.4, Corey Dec., Exh. 39.
       [36]   Compare Omni 808 registration information (with address of 9420 Wilshire Boulevard,

22  4th Floor, Beverly Hills, CA 90212), Corey Dec., Exh. 37 at UCC Financing Statement
    Amendment ¶ 7(c) with OmniNet Capital address (with address of 9420 Wilshire Boulevard,

23  4th Floor, Beverly Hills, CA 90212), OmniNet "Contact Us", Corey Dec., Exh. 40; see also
    OmniNet "About Us", Corey Dec., Exh. 41.

24  [37]   See December 31, 2008 Letter from Omni 808 Investors, LLC, attached as Exhibit B to
    the Declaration of Brian Wing in Support of MGA's Correction to the Opposition to Mattel's

25  *Ex Parte* Application for a Receiver, dated December 31, 2008, Corey Dec., Exh. 42.
       [38]   In re Uzyel Irrevocable Trust, No. BP 058 898 (Los Angeles Sup. Ct. October 24,

26  2006), at 13:19, Corey Dec., Exh. 43.
       [39]   E.g., id., at 2:13-25, 4:13-18, 26:3-11; 31:22-24, 34:6-7, 41:23-24, 45:25-27, 48:25-28,

27  50-51 n. 12, 62:24-63:2, 71:7-9, 72:15-16, 102:1-20, 111:24-27, 112:10-13, 117:17-23,
    118:23, 120:1-2, 121:1, 125:1-27, 126:16, 141:27-28, 152:17-22, 153:1-6, 155:13-14, 156:1-

28  157:24, 158:23-28, 166:11-22, 168:1-5, 175:10-13, 181:13, 183:11-21.

07209/2783835.1

-9-

1    1B trial.[40] Nor does it appear that OmniNet owns Omni 808. Omni 808 appears to be

2    owned and funded by a company called Vision Capital, LLC that, like Omni 808, was

3    formed during the damages phase of the trial.[41]

4         Vision Capital, LLC ("Vision Capital") borrowed the money used to fund Omni

5    808, and presumably MGA, from a company called Lexington Financial Limited

6    ("Lexington"). Lexington is an offshore company registered in the Caribbean island of

7    Nevis, a country notorious for its corporate and banking secrecy laws.[42] Indeed, the

8    official corporate records for Lexington from Nevis declare that Nevis does not ask --

9    and therefore will not disclose -- any information about Lexington, such as even the

10   bare identifies of its principals.[43] Lexington also has an address in London at the same

11   location as a company that provides "virtual office" services, i.e., mail drop and

12   answering service.[44] Fred Mashian, a Sunset Boulevard "estate-planning" attorney, is

13   identified as the Lexington contact on a UCC financing statement showing that Vision

14   Capital secured its loan from Lexington with its ownership interest in Omni 808.[45]

15   Lexington perfected its purported security interest in Vision Capital's ownership

16   interest in Omni 808 on August 29, 2008--three days after the Phase 1B jury verdict.[46]

17   The public records Mattel has obtained thus far do not disclose who provided

18   Lexington Financial with the funds that it loaned to Vision Capital, that it contributed to

19

20   [40]  Omni 808 Investors LLC Certificate of Status and Articles of Organization, Corey
Dec., Exh. 44.

21   [41]  Vision Capital, LLC Certificate of Formation dated August 19, 2008, Corey Dec. Exh.
45.

22   [42]  UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 46 (with
Lexington Capital taking a security interest in Vision Capital's ownership interest in Omni 808

23   Investors LLC); "Offshore-Based Limited Liability Company (LLC)" at www.offshore-
protection.com/nevisLLC.html, Corey Dec., Exh. 47.

24   [43]  Corey Dec., Exh. 49.

25   [44]  UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 46; December 12,
2008 letter from Registrar Clevelan Williams, Corey Dec., Exh. 49. Office Front "Home"

26   (offering website by Office Front allowing a person to obtain a "virtual office" for as little as
£10 a month), Corey Dec., Exh. 48.

27   [45]  UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 46.

28   [46]  August 29, 2008 Lexington Financial UCC financing statement, Corey Dec., Exh. 46.

MOTION TO COMPEL
EXHIBIT 21

PAGE 113

1    Omni 808 for the loan/debt purchase related to MGA.  Nor has MGA been able to

2    explain why, if OmniNet is truly on the other side of this transaction, it is using shell

3    companies and offshore vehicles, which may be used to conceal the flow of funds, and

4    a sole-practitioner estate planning attorney to process UCC Financing Statements.

5         There may be an innocent explanation for the mid-damages-trial transaction in

6    which MGA's largest creditor became a newly formed shell corporation owned and

7    funded by another newly formed shell corporation that obtained its funding from an

8    offshore corporation registered in the corporate secrecy haven of Nevis and using a

9    fictional London address.  But such an explanation has yet to be provided.  And, it is a

10   common (but unlawful) tactic for shareholders of a company to create the impression of

11   an arms-length loan to a troubled corporation (rather than a proper capital contribution)

12   while concealing that the shareholder is the source of the funds.[47]

13   **Mattel Discovers that Larian is Setting Up New Companies to Purchase**

14   **Bratz Product from MGA for Pennies on the Dollar**.  In addition to its questionable

15   financial dealings, Larian appears to be transferring assets from MGA as well.  Larian,

16   through a company called IGWT Group (apparently an abbreviation of "In God We

17   Trust"), is purchasing Bratz product for pennies on the dollar and reselling it.  Larian

18   created this company on June 26, 2008 -- during the Phase 1 trial -- and registered its

19   place of business as his home address.[48]  Larian also created an affiliated company

20   called IGWT 826 Investments on August 27, 2008 -- the day after the Phase 1 trial

21   ended.[49]  IGWT 826 is registered at the home address of Shirin Makabi (Isaac Larian's

22

23   [47]   For example, one reason this is done is so that a shareholder's sham creditor can
     claim priority over unsecured or secured creditors with lower priority, rather than being
24   last in line as an owner.  In re Lifschultz Fast Freight, 132 F.3d 339, 343 (7th Cir. 1996)
     (noting that "[e]quityholders come last in bankruptcy, which generally means they get
25   nothing at liquidation. To avoid this, an owner might disguise her equity claim as debt.
     The doctrine of equitable subordination empowers a bankruptcy court to foil this queue-
26   jumping.");  see generally In re Mobile Steel, 563 F.2d 692 (5th Cir. 1977); 11 U.S.C.
     section 510(c) (authorizing equitable subordination).
27   [48]   IWGT Group, LLC registration information, Corey Dec., Exh. 50.

28   [49]   IWGT 826 Investments, LLC registration information, Corey Dec., Exh. 101.

MOTION TO COMPEL
EXHIBIT
PAGE

1  sister) and Eli Makabi (Isaac Larian's brother-in-law and the only shareholder of MGA

2  other than Isaac Larian).[50]

3  In a spate of "emergency" filings which MGA recently submitted to the District

4  Court and the Ninth Circuit, MGA has relied on claims about Bratz inventory, but made

5  no mention of these entities nor disclosed on what terms IGWT is obtaining Bratz

6  inventory.  After Mattel (and not MGA) brought IGWT to the Court's attention, MGA

7  admitted that it sold tens of millions of dollars in Bratz inventory to Larian through

8  IGWT at a "substantial discount."[51]  The few pages of documents that MGA then self-

9  selected and provided to the Court showed that it was actually a discount of more than

10  80 percent.[52]

11  **Mattel Subpoenas Relevant Documents From Third Parties**.  After the Court

12  lifted the Phase 2 discovery stay, Mattel served subpoenas on the following:

13  • Omni 808 Investors, LLC.  Mattel served these subpoenas on January 9,

14  2009.[53]  As noted above, Omni 808 is a non-operating entity, formed on August 12,

15  2008, during trial.  It has recently provided new credit to MGA, in addition to taking a

16  security interest in the bulk of MGA's assets.  Omni 808 Investors, LLC served

17  objections to the subpoena on January 28, 2009.[54]  The MGA parties also served

18  purported objections on that date.[55]

19  • OmniNet Capital, LLC.  Mattel served this subpoena on January 9,

20  2009.[56]  OmniNet shares a registered address with Omni 808.  The MGA parties served

21  purported objections to the subpoena on January 28, 2008.[57]

22

23  [50] Id.
   [51] See MGA Parties' Opposition to Mattel, Inc.'s *Ex Parte* Application For Appointment
24  of a Receiver, dated December 30, 2008, at 10, Corey Dec., Exh. 39.
   [52] See Declaration of Cyrus Naim in Support of Mattel's *Ex Parte* Application For
25  Appointment of a Receiver, dated January 2, 2009, at ¶ 2, Corey Dec., Exh. 51.
   [53] Omni 808 Investors, LLC (Beverly Hills) and Omni 808 Investors, LLC (Los Angeles)
26  subpoenas, dated January 9, 2009, Corey Dec., Exh. 56.
   [54] Omni 808 Objections to Subpoena, Corey Dec., Exh. 67.
27  [55] The MGA Parties Objections to Subpoena, Corey Dec., Exh. 64.
   [56] OmniNet Capital, LLC subpoena, dated January 9, 2009, Corey Dec., Exh. 55.
28  [57] The MGA Parties Objections to Subpoena, Corey Dec., Exh. 62.

07209/2783835.1

-12-

MOTION TO COMPEL
EXHIBIT ___
PAGE ___

1       • <u>Vision Capital, LLC</u>.  Mattel served this subpoena on January 13,

2 2009.[58] Vision Capital owns and presumably funds Omni 808.  Further, like Omni 808,

3 Vision Capital is a non-operating entity which was formed during the course of the

4 Phase 1 trial in this case.  Vision Capital served objections to the subpoena on January

5 28, 2009.[59]  The MGA parties also served purported objections on the same day.[60]

6       • <u>IGWT Group, LLC</u>.  Mattel served this subpoena on January 12, 2009.[61]

7 As set forth above, IGWT Group is a company that Larian formed during trial and

8 appears to be selling Bratz products and conducting Bratz business in lieu of MGA.[62]

9 IGWT Group served objections to the subpoena on January 28, 2009.[63]   The MGA

10 parties served purported objections on the same day.[64]

11       • <u>IGWT 826 Investments, LLC</u>.  Mattel served this subpoena on January

12 12, 2009.[65]  IGWT 826 is likewise a company recently created and registered at the

13 home address of MGA's other shareholders, Eli Makabi.[66]  IGWT 826 Investments

14 served objections to the subpoena on January 28, 2009.[67]  The MGA parties also served

15 purported objection on the same day.[68]

16

17

18

19    [58]  Vision Capital, LLC subpoena, dated January 13, 2009, Corey Dec., Exh. 54.

20    [59]  Vision Capital Objections to Subpoena, Corey Dec., Exh. 68.
   [60]  The MGA Parties Objections to Subpoena, Corey Dec., Exh. 63.

21    [61]  IGWT Group, LLC subpoena, dated January 12, 2009, Corey Dec., Exh. 52.
   [62]  <u>See</u> IWGT Group, LLC registration information, Corey Dec., Exh. 50.

22    [63]  IGWT Group Objections to Subpoena, Corey Dec., Exh. 65.
   [64]  The MGA Parties Objections to Subpoena, Corey Decl., Exh. 60.

23    [65]  IGWT 826 Investments, LLC subpoena, dated January 12, 2009, Corey Dec., Exh. 53.
   [66]  <u>See</u> IWGT 826 Investments, LLC registration information, Corey Dec., Exh. 101.

24    [67]  IGWT 826 Objections to Subpoena, Corey Dec., Exh. 64.
   [68]  The MGA Parties Objections to Subpoena, Corey Decl., Exh. 59. Mattel also served a

25 subpoena on Wachovia on January 12, 2009.  Wachovia Corporation subpoena, dated January

26 12, 2009, Corey Dec., Exh. 57.  Wachovia was previously MGA's largest lender.  With
Wachovia's consent, Omni 808 has recently taken over the bulk of MGA's debt.  Wachovia

27 Corp. served objections to the subpoena on January 28, 2009. Wachovia Corp. Objections to
Subpoena, Corey Dec., Exh. 66.  The MGA parties also served purported objections on the

28 same day.  The MGA Parties Objections to Subpoena, Corey Dec., Exh. 58.  The Wachovia
subpoena is not at issue in this motion.

07209/2783835.1

-13-

EXHIBIT

PAGE

1

## Argument

2  **I.    MGA HAS A HISTORY OF UNTRUSTWORTHY STATEMENTS**

3      **ABOUT ITS FINANCES**

4        Throughout Phase 1, MGA hindered Mattel and the Court's attempts to obtain an

5  accurate understanding of MGA's and Larian's finances, notwithstanding the

6  indisputable importance of such information to a host of issues.  After trial, Mattel

7  learned that MGA was once again engaging in questionable financial activities,

8  including possibly using newly created entities to sell Bratz products "off the books."

9  Mattel served subpoenas to learn more, gain information relevant to Phase 2 and protect

10  its interests in the Bratz product line as found by the Court.  Now, once again, ignoring

11  the Court's repeated orders and actions designed to obtain clear financial information --

12  as attested most recently by its appointment of a financial auditor -- and the potential

13  prejudice to Mattel, MGA has moved to quash all of the subpoenas in their entirety.

14  Not one of the third-parties at issue here has produced a single document nor have they

15  agreed to do so.

16        In representations to Mattel, the Court, and the Ninth Circuit, MGA and Larian

17  have proved that their representations about their finances are not trustworthy.  They

18  have repeatedly and drastically changed their statements of their own respective net

19  worth and financial condition.  In such circumstances, it is imperative that Mattel be

20  permitted to obtain full and complete information related to MGA's financial condition

21  from third parties.

22        In January 2008, Larian produced summary spreadsheets, dated as recently as

23  October 2007,[69] that showed his personal net worth to be in excess of $1.9 billion, and

24  MGA's net worth as more than $2 billion.[70]  Five months later, MGA produced

25  "Supplemental" documents that placed Larian's net worth at $723.3 million, with MGA

26  _____

    [69]   Trial Exhibit ("TX") 4947, Isaac and Angela Larian Net Worth as of March 14, 2006,

27  Corey Dec., Exh. 69.

28

-14-

1  valued at $540.5 million -- downward revisions of nearly $1.2 billion and $1.5 billion

2  respectively.[71]  On August 7, 2008, when asked at trial whether the original, higher

3  valuations were accurate, Larian -- who had previously testified at his deposition that he

4  had no knowledge regarding the net worth calculations[72] -- stated unequivocally that

5  they were not.[73]

6       Following the return of the Phase 1A verdict, and at a time when it was in

7  MGA's interest to understate its financial standing, MGA produced documents from

8  Moss Adams, Larian's accountants,[74] purporting to value the company at $475 million

9  as of June 2007[75] -- three months *before* defendants' previously-produced spreadsheet

10 indicating a net worth of $2 billion.[76]  The document says on its face that MGA

11 received it from Moss Adams on October 12, 2007.[77]  The mid-trial production of this

12 document also contradicted MGA's and Larian's previous position that no such

13 valuation existed.[78]  During Phase 1B of the trial, MGA went a step further, claiming

14 that as a result of the Phase 1A verdict, it could not place any value on the company.[79]

15 _____

16  [70]  See id.; Trial Tr. at 6375:21-6376:21 (August 7, 2008, afternoon session), Corey Dec., Exh. 70.

17  [71]  See id.; Trial Tr. at 6375:21-6378:19 (August 7, 2008, afternoon session), Corey Dec., Exh. 70; TX 13969, Corey Dec., Exh. 71; Corey Dec., ¶¶ 72-73.

    [72]  See Deposition Tr. of Isaac Larian, Volume 2, dated March 26, 2008, at 502:13-509:11,
18  Corey Dec., Exh. 74.  See also TX 13909, Corey Dec., Exh. _.

19  [73]  See Trial Tr. at 6280:17-20 (August 7, 2008, morning session), Corey Dec., Exh. 73.
    To the extent Larian offered any estimate of the net worth figures at his deposition, he placed
20  his personal worth at something more than $100 million or $200 million, and MGA's value at
    more than $500 million.  See Deposition Tr. of Isaac Larian, Volume 2, dated March 26, 2008,
21  at 504:23-505:5, 508:17-23, Corey Dec., Exh. 74.  These numbers are entirely inconsistent
    with the amounts reflected in the financial records produced by MGA, and further
22  demonstrates the conflicting and misleading nature of MGA's financial claims.

    [74]  Moss Adams's Valuation Analysis of MGA Entertainment, Inc. as of June 30, 2007,
23  Cover Letter to MGA dated October 12, 2007, Corey Dec., Exh. 76.

    [75]  See id.
24  [76]  Compare id. with TX 4947, Corey Dec., Exh. 69.
    [77]  Moss Adams's Valuation Analysis of MGA Entertainment, Inc. as of June 30, 2007,
25  Cover Letter to MGA dated October 12, 2007, Corey Dec., Exh. 76.

    [78]  Mattel had subpoenaed information from Moss Adams related to Larian's net worth in
26  November 2007.  MGA moved to quash the subpoena on the grounds that the subpoena was
    "duplicative" of documents that Defendants has previously produced.  Based on that
27  representation, the Court quashed the subpoena.  May 7, 2008 Order, at 3, 10, 13; Corey Dec..
    Exh. 7, Corey Dec.¶ 78.  Moreover, at her September 24, 2007 deposition, MGA's Rule
28  30(b)(6) designee, Lisa Tonnu, testified that she did not know MGA's net worth, and didn't
    (footnote continued)

MOTION TO COMPEL
EXHIBIT _21_
PAGE _123_

1    MGA has also made self-serving claims of impending bankruptcy in an attempt
2  to avoid the Phase 1B trial -- only to later renounce that claim when it became more
3  helpful to its legal position to assert that it was perfectly solvent.  Thus, during trial,
4  when MGA filed a Petition for Writ of Mandamus seeking to overturn the Court's order
5  denying a mistrial, it was in MGA's interest to claim that without Ninth Circuit
6  intervention, it would be destroyed.  As a result, MGA represented to the Ninth Circuit
7  in August 2008: "Unless the order denying a mistrial is overturned (and the trial stayed
8  in the interim), the MGA Parties will be financially ruined and MGA will be unable to
9  carry on what had been a successful business employing 1700 people."

10    Subsequently, when opposing Mattel's Motion for Permanent Injunction, it was
11  in MGA's interest to proclaim its financial viability -- and that is what MGA did.  In
12  seeking a permanent injunction, Mattel urged that an injunction was appropriate
13  because MGA's claims of impending insolvency meant it could not satisfy any money
14  judgment.  On October 13, 2008, in its Opposition to Motion for Permanent Injunction,
15  MGA submitted the declaration of a financial expert proclaiming that MGA could pay
16  damages and argued that "Mattel submitted no evidence—because it could not—that
17  MGA cannot satisfy the money judgment that follows from the Phase 1(b) verdict."[80]

18    After the Court's December 3 Orders granting Mattel's requests for injunctive
19  relief, MGA did another about-face.  As shown previously, at that point MGA
20  represented to the District Court and the Ninth Circuit that was, in fact, in financial
21  extremis.

22

23

24  "deal with net worth valuations and net worth calculations."  Deposition Tr. of Lisa Tonnu,
   Volume 2, dated September 24, 2007, 333:3-334:21, Corey Dec., Exh. 77.  However, the
25  Moss Adams valuation references prior valuations that Moss Adams had done, and Ms. Tonnu
   herself was the person who had been dealing with Moss Adams and had requested the
26  valuation.  Moss Adams's Valuation Analysis of MGA Entertainment, Inc. as of June 30,
   2007, Cover Letter to MGA dated October 12, 2007, Corey Dec., Exh. 76.
27    [79]  Trial Tr. at 7760:1-17 (August 15, 2008, afternoon session), Corey Dec., Exh. 79.
     [80]  Petition for Writ of Mandamus, dated August 7, 2008, at 34, Corey Dec., Exh. 83;
28  MGA Parties' Opp. to Motion for Permanent Injunction, at 13:12-15, Corey Dec., Exh. 84.

07209/2783835.1

-16-

MOTION TO COMPEL
EXHIBIT 21

PAGE 129

1    Additionally, as discussed above, MGA further clouded its financial condition by

2    making conflicting claims about the status of its debt obligations. In August 2008,

3    during the trial damages phase when it suited MGA to claim financial distress, MGA

4    represented that its lender, Wachovia, had declared MGA to be in default of its loan

5    covenants, accelerated those loans and invoked the lock-box provision of the

6    agreements to take control of certain MGA bank accounts.[81] However, MGA now

7    represents that those loans are not due until December 2009.[82]

8    In short, MGA has made repeated, conclusory and conflicting claims about its

9    financial status, including on motions MGA itself has brought. Indeed, the

10   inconsistencies in MGA's assertions are what prompted the District Court to observe

11   that MGA's finances were a "mystery."[83] And, there is no reason to doubt that, once the

12   Court's December 3 Orders become final, MGA will once again argue to the District

13   Court and the Ninth Circuit that its financial condition supports the imposition of a stay

14   of those Orders pending appeal. Discovery on MGA's financials is amply warranted by

15   MGA's own statements alone.

16

17

18

19

---

20   [81] See Letter from Thomas M. Cambern, Managing Director of Wachovia Securities, to
     MGA, dated July 21, 2008, which is identified by Bates No. MGA 3896745-46, Corey Dec.,
21   Exh. 85; Letter from Thomas M. Cambern, Managing Director of Wachovia Securities, to
     MGA, dated July 21, 2008, which is identified by Bates No. MGA 3896747-48, Corey Dec.,
22   Exh. 86; Letter from Thomas M. Cambern, Managing Director of Wachovia Securities, to
     MGA, dated July 21, 2008, which is identified by Bates No. MGA 3896749-50, Corey Dec.,
23   Exh. 87.
     At the time, MGA's counsel, Mr. Nolan, stated: "The financial condition of MGA, I'll
24   represent to you, has been deteriorating throughout this case." Trial Tr. at 5587:9-15 (Sealed
     in Camera Conference. dated July 24, 2008), Corey Dec., Exh. 88. "And all I'm saying is that
25   we have a prize that everyone is chasing that may not be of value, of any significant value at
     the end of the day if the disruption and the consumer relationships disrupt the banks." Trial
26   Tr. at 5588:20-5589:9 (Sealed in Camera Conference, dated July 24, 2008), Corey Dec.,
     Exh. 88.
27   [82] See Declaration of Brian Wing in Support of the MGA Parties' Request for a Stay,
     dated December 11, 2009, at ¶ 9, Corey Dec., Exh. 36.
28   [83] 12/30/08 Hearing Tr. at 57:11-18, Corey Dec., Exh. 78.

07209/2783835.1

-17-

MOTION TO COMPEL
EXHIBIT
PAGE

## II.   MATTEL'S SUBPOENAS SEEK DOCUMENTS THAT ARE UNQUESTIONABLY RELEVANT

Federal Rule of Civil Procedure 45 obligates third parties to produce documents responsive to a subpoena that a party serves on them. Fed. R. Civ. P. 45(b), (d). If the documents are relevant and there is good cause for their production, the subpoena is enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying, or embarrassing. U.S. v. American Optical Co., 39 F.R.D. 580, 583 (N.D. Cal. 1966); accord Heat and Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986) ("the factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.").

### A.   The Documents Sought Are Relevant to Mattel's RICO Claims

Mattel's requests are directly relevant to its RICO claims. In its counterclaims, Mattel alleges that the counter-defendants have operated a widespread criminal enterprise that has engaged in numerous acts of mail and wire fraud and other predicate acts in violation of the RICO statute.[84] MGA's mid-trial transactions with Omni 808 and the other non-operating entities, which bear the classic hallmarks of an effort to fraudulently transfer assets to its controlling shareholders, are just a continuation of that pattern of racketeering activity in which MGA and Larian have long been engaged. See, e.g., Asdourian v. Konstantin, 77 F. Supp. 2d 349, 355, 359 (E.D.N.Y. 1999) (allegations that defendant "siphoned away" corporation's assets through "systematic looting" accomplished through fraudulent mortgages constitute predicate acts for RICO). At a minimum, then, the requests are likely calculated to lead to evidence of acts of wire and mail fraud.[85] As such, they are unquestionably relevant, because a

---

[84]   Mattel's Second Am. Complaint and Counter-Claims, dated July 12, 2007, at ¶¶ 88-105, Corey Dec., Exh. 19.
[85]   See id. at ¶ 93(a) & (b).

07209/2783835.1

-18-

1   plaintiff alleging RICO violations should be permitted discovery <u>into each instance of a</u>

2   <u>predicate act</u>, even where further discovery is "unnecessary" to establish the category of

3   predicate act.  <u>See Eastman Kodak Co. v. Camarata</u>, 238 F.R.D. 372, 376 (W.D.N.Y.

4   2006).[86]

5       The discovery sought by the subpoenas may also reveal additional, distinct

6   predicate acts in support of Mattel's RICO allegations.  Mattel's requests seek to

7   unravel the true nature of these "financing" transactions, which involve various shell

8   and off-shore companies and appear to be deliberately structured to conceal the

9   ultimate source of funding.  It may be intended to "conceal or disguise the nature,

10  the location, the source, the ownership, or the control of the proceeds" derived from

11  defendants' unlawful activity—here, among other things, their infringement of

12  Mattel's intellectual property.  18 U.S.C. § 1956.  Whatever the reason, MGA's

13  recent "financing" raises a host of potential predicate RICO violations, regarding

14  which Mattel is entitled to discovery.  <u>See, e.g.</u>, 18 U.S.C. § 1957 (use of unlawful

15  funds), 18 U.S.C. § 2314 (transportation of converted funds).  Likewise, the sales by

16  the IGWT entities of infringing Bratz product may constitute predicate acts of

17  criminal copyright infringement by MGA -- predicate acts that Mattel has alleged

18  against MGA in Phase 2.[87]  Thus, the discovery sought is plainly proper.

19      **B.**    <u>**The Documents Sought Are Also Relevant to Mattel's Disgorgement**</u>

20            <u>**Claim**</u>

21      One remedy Mattel seeks is disgorgement of all amounts wrongfully

22  obtained.  Mattel may also be entitled to damages for lost profits pursuant to its

23  disgorgement theory of damages.  The disgorgement remedy also provides for the

24  imposition of constructive trusts to recover the ill-gotten gains of MGA and Isaac

25           [86]  Moreover, even the terms of the loans are themselves relevant.  MGA has paid

26  hundreds of millions of dollars to Larian and his family or associates throughout this litigation.

27  See Corey Dec., ¶ 92 and reference exhibits therein.  That is directly relevant to Larian's personal liability for RICO violations and evidence of his association with and control over

28  the enterprise.

-19-

1  Larian that have been transferred to other parties. For purposes of establishing

2  disgorgement, Mattel must take into account money transferred from MGA and

3  Isaac Larian, regardless of the manner in which it was transferred. Mattel is entitled

4  to discovery that shows all assets siphoned from MGA or Isaac Larian for which

5  there was no compensation during the period of the alleged wrongful conduct.

6       It is undisputed that disgorgement is an available remedy for Mattel's claims

7  against MGA and Larian, including Mattel's claim for trade secret misappropriation.

8  See 4 Callmann, Unfair Competition and Monopolies § 14.45 (4th ed.) and Clark v.

9  Bunker, 453 F.2d 1006, 1011 (9th Cir. 1972). The scope of the disgorgement

10  remedy is set forth in two recent California Supreme Court decisions. See Kraus v.

11  Trinity Management Servs., Inc., 23 Cal. 4th 116 (2000); Korea Supply Co. v.

12  Lockheed Martin Corp., 29 Cal. 4th 1134 (2003). The court indicated that:

13
14  "disgorgement" is a broader remedy than restitution. . . .
   [A]n order for disgorgement "may compel a defendant to
   surrender *all* money obtained through an unfair business
15  practice even though not all is to be restored to the persons
   from whom it was obtained or those claiming under those
16  persons. It has also been used to refer to surrender of *all*
   profits earned as a result of an unfair business practice
17  regardless of whether those profits represent money taken
   directly from persons who were victims of the unfair
18  practice."

19
20  Korea Supply, 29 Cal. 4th at 1145 (quoting Kraus, 23 Cal. 4th at 127) (emphasis

   added). Moreover, an important part of disgorgement is the imposition of a
21
   constructive trust to recover ill-gotten gains that have been transferred to others by the
22
   defendant. A constructive trust is intended to prevent unjust enrichment, with equity
23
   compelling the restoration to another of property to which the holder thereof is not
24
   justly entitled. Taylor v. Polackwich, 145 Cal. App. 3d 1014, 1022 (1983); Cal. Civ.
25
   Code §§ 2223, 2224. See also Weiss v. Marchus, 51 Cal. App. 3d 590, 600 (1975)
26
   (constructive trust may be imposed in case of fraud, mishandling, or almost any case of
27

28  [87] SAAC, ¶ 93, Corey Dec., Exh. 19.

-20-

MOTION TO COMPEL
EXHIBIT
PAGE

1  wrongful acquisition or detention of property to which another is entitled).  When

2  personal property is in dispute, the legislature has allowed plaintiffs to invoke the

3  remedy of constructive trust.  Cal Civ. Code §§ 2223, 2224.  To create a constructive or

4  involuntary trust only three conditions are necessary: existence of a res, i.e. property or

5  some interest in property, plaintiff's right to that res and defendant's gain of the res by

6  fraud, accident, mistake, undue influence, violation of the trust or other wrongful act.

7  Kraus v. Willow Park Public Golf Course, 73 Cal. App. 3d 354 (1977); see Cramer v.

8  Biddison, 65 Cal. Rptr. 624, 257 Cal. App. 2d 720 (1968).  See Burlesci v. Petersen, 68

9  Cal. App. 4th 1062, 1067 (1998) (constructive trust); Farmers Ins. Exchange v. Zerin,

10  53 Cal. App. 4th 445, 454-55 (1997) (equitable lien is proper if unjust enrichment and

11  detrimental reliance are implicated)

12      By these subpoenas, Mattel seeks evidence to prove the amount the defendants

13  must disgorge.  Money that properly belonged to Mattel was transferred from MGA or

14  Isaac Larian to an entity controlled by them.  Mattel should be able to understand how

15  that money was used because MGA and Isaac Larian have no right to whatever

16  additional gains realized with Mattel's money.  Rather, the right to those additional

17  gains vests solely in Mattel.

18      **C.    The Documents Sought Are Relevant to Phase 2 Damages**

19      The requests also seek documents relevant to the MGA parties' financial

20  condition, which is relevant to Mattel's Phase 2 damages claims.  A defendant's net

21  worth, financial condition, and ability to pay any award are all factors relevant to an

22  award of punitive damages.  See, e.g., Hilao v. Estate of Marcos, 103 F.3d 767, 781-82

23  & n. 7 (9th Cir. 1996) (financial condition a relevant factor in awarding punitive

24  damages); Southern California Housing Rights Center v. Krug, 2006 WL 4122148, *4

25  (C.D. Cal. 2006) ("When a punitive damages claim has been asserted, a majority of

26  federal courts permit pretrial discovery of financial information about defendants

27  without requiring the plaintiff to establish a prima facie case on the issue of punitive

28  damages."); Robert L. Cloud & Associates v. Mikesell, 69 Cal. App. 4th 1141, 148-

07209/2783835.1

-21-

1   1152 (1999) (defendant's "ability to pay damages award" and "financial condition" were relevant to determining award of punitive damages for misappropriation of trade secrets).

4   Judge Larson and the former Discovery Master have ruled that Mattel is entitled to evidence related to MGA's net worth. For example, Mattel moved to compel MGA to produce a Rule 30(b)(6) witness on issues related to MGA's net worth after MGA claimed such evidence was irrelevant and should be left to expert testimony. The Discovery Master agreed with Mattel and ordered the deposition to proceed on the issue of net worth, among others. MGA objected and appealed to Judge Larson, who affirmed the Discovery Master and held "[t]hat net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6)."[88]

13   Omni 808 and Vision Capital are directly involved in providing funding to MGA in exchange for a security interest. Such funding, and security interests, are in and of themselves directly relevant to the financial condition of the MGA Parties, including the amount of the security interests, the terms and conditions of the funding, and the rate of the funding. The true identity of the persons and entities providing the funding and obtaining a security interest in MGA are likewise relevant to that issue. Moreover, given the level of financing, the parties must have engaged in evaluations of the past, present, and future value of the MGA parties. It is just such documents that the third-party subpoenas at issue seek.

22   Finally, as noted above, MGA is using IGWT to sell Bratz products and conduct Bratz business. Obviously, this kind of evasion is directly relevant to the claims at issue, as well as to the net worth and financial condition of the MGA Parties. Mattel is entitled to the information sought by the subpoenas for these additional reasons.

---

[88]   July 2, 2007 Order, at 5, Corey Dec., Exh. 12.

MOTION TO COMPEL
EXHIBIT    21

PAGE    130

1

**D.    The Documents Sought Are Relevant to the MGA Parties'**
2           **Credibility**

3           Information is also relevant and discoverable if it relates to "the credibility of any

4    witness." Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc., 175 F.R.D. 646,

5    650 (C.D. Cal. 1997). As set forth below, in Section II *infra*, MGA and Larian made

6    statements under oath about their financial condition as well as about the role of Omni

7    808 and the other non-operating entities in providing MGA with additional funding.[89]

8    Mattel is therefore entitled to discovery to determine the true state of these matters --

9    information which is directly relevant to MGA's and Larian's credibility.

10          **E.    The Documents Sought are Relevant to the MGA Parties' Unclean**
11                **Hands Defense**

12          The subpoenas also seek documents relevant to the MGA Parties' defense of

13   unclean hands. In their answers to Mattel's cross-claims, MGA and Larian asserted that

14   "Mattel's counterclaims are barred in whole or in part by Mattel's unclean hands."[90]

15   The alleged basis for their unclean hands defense is wide ranging, touching on every

16   aspect of Phases 1 and 2 of this case, including the alleged infringement of MGA's

17   trade dress and Bratz products as well as allegedly interfering with MGA's efforts to

18   hire Mattel employees.[91]

19          Mattel is entitled to respond to these allegations by demonstrating that the MGA

20   Parties are precluded from invoking the unclean hands defense because they have not

21   themselves acted with clean hands. The invocation of "unclean hands" is an equitable

22   defense. GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1209-10 (9th Cir. 2000)

23   (discussing "equitable defense" of "unclean hands"); In re McKesson HBOC, Inc. Erisa

24   _____

25      [89]   Compare Declaration of Brian Wing in support of the MGA Parties' Request for a Stay, dated December 11, 2008, at ¶ 13, Corey Dec., Exh. 36 with MGA Parties' Corrections to the Opposition to Mattel's *Ex Parte* Application for Appointment of a Receiver, dated December

26   31, 2008, at 1, Corey Dec., Exh. 38.
        [90]   MGA's Amended Answer and Affirmative Defenses, dated September 19, 2007, at 20-

27   21, Corey Dec., Exh. 103; Isaac Larian's Amended Answer and Affirmative Defenses, dated November 8, 2007, at 16-18, Corey Dec., Exh. 104.

28

MOTION TO COMPEL
EXHIBIT

PAGE ___131___

1   Litigation, 391 F.Supp.2d 812, 842 (N.D. Cal. 2005) ("[U]nclean hands is an equitable

2   defense."). A party asserting an equitable defense, however, must itself have "clean

3   hands." Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 385 (9th Cir. 1997) (("A

4   cardinal maxim of equity jurisprudence is that he who comes into equity must come

5   with clean hands.") (quoting Banks v. Rockwell Intern. North American Aircraft

6   Operations, 855 F.2d 324, 327 (6th Cir. 1988)); Granberry v. Islay Investments, 9 Cal.

7   4th 738, 743-744, 750 (1995) (equitable defense may be "barred by any of the generally

8   applicable equitable affirmative defenses, including . . . unclean hands"); Blain v.

9   Doctor's Co., 222 Cal. App. 3d 1048, 1059 (1990) ("He who comes into Equity must

10  come with clean hands."). As discussed above, MGA may be engaging in sham and

11  financial fraudulent transactions such as concealing profits and sales of Bratz and other

12  products "off the books" through newly created single purpose companies. If true,

13  MGA and Larian would be acting with unclean hands and thus precluded from

14  invoking the unclean hands defense themselves.

15      **F.**     **The Documents Sought Are Relevant to Mattel's Unfair**

16              **Competition Claim**

17      The subpoenas seek documents related to Mattel's claim for unfair competition.

18  The MGA Parties' actions in manipulating the sources of funding and apparently using

19  single-purpose companies to unload Bratz products for pennies on the dollar and resell

20  them may be anti-competitive actions that are encompassed by California's unfair

21  competition laws. Under Business and Professions Code § 17200, "unfair competition"

22  includes "any unlawful, unfair or fraudulent business act or practice...." Section

23  17200's scope is "sweeping, embracing anything that can properly be called a business

24  practice and that at the same time is forbidden by law." Rubin v. Green, 4 Cal. 4th

25  1187, 1200 (1993) (internal quotation marks and citation omitted). It encompasses

26  "anti-competitive business practices as well as injuries to consumers, and has as a major

27

28  [91] Id.

07209/2783835.1

-24-

1  purpose the preservation of fair business competition." <u>Cel-Tech Communications, Inc.</u>

2  <u>v. Los Angeles Cellular Telephone Co.</u>, 20 Cal. 4th 163, 180 (1999). Accordingly, the

3  documents sought are reasonably calculated to lead to the discovery of admissible

4  evidence relating to Mattel's unfair competition claim.

5  **III.   THE REMAINING OBJECTIONS ARE BOILERPLATE AND**

6  **SHOULD BE OVERRULED**

7      **A.   The Boilerplate Objections Are Improper**

8      The third parties assert a host of boilerplate general objections, which they repeat

9  in their specific objections.   Through these objections, they generally assert that

10  Mattel's document requests (including Mattel's definitions) are irrelevant, overbroad,

11  ambiguous, harassing, cumulative, and unduly burdensome.   Such objections are the

12  hallmark of boilerplate objections that are improper under the Federal Rules of Civil

13  Procedure.   <u>A. Farber and Partners, Inc. v. Garber</u>, 234 F.R.D. 186, 188 (C.D. Cal.

14  2006) (overruling defendant's boilerplate objections as improper and ordering

15  production of documents).   <u>See Panola Land Buyers Ass'n v. Shuman</u>, 762 F.2d 1550,

16  1559 (11th Cir. 1985) (holding that court did not have discretion to limit discovery on

17  basis of boilerplate objections).

18      **B.   That Documents May be Available from Other Parties Does Not**

19      **Excuse Compliance**

20      MGA and the third-parties suggest that they are excused from compliance with

21  the third-party subpoenas because some of the documents purportedly may be available

22  from MGA or other sources.   However, because documents may be available from

23  other sources is not grounds to refuse production.   "[A] person may not avoid a

24  subpoena by saying that the evidence sought from him is obtainable from another."

25  <u>Covey Oil Co. v. Continental Oil Co.</u>, 340 F.2d 993, 998 (10th Cir. 1965) (overruled on

26  other grounds); <u>State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.</u>, 2007 WL

27  2993840, at *1 (E.D.N.Y. 2007) (compelling production of documents third-party

28  claimed were in possession of party to litigation); <u>In re Bergeson</u>, 112 F.R.D. 692, 695

07209/2783835.1

MOTION TO COMPEL

EXHIBIT *21*

PAGE *133*

1  (D. Mont. 1986) (conclusory assertions that documents sought are available from others

2  more economically "does not constitute a showing of unreasonableness or

3  oppressiveness."). Moreover, no party has demonstrated that all of the documents

4  requested are available from another party. Nor does this seem likely. As held by the

5  State Farm court, "nothing in the Federal Rules of Civil Procedure requires a litigant to

6  rely solely on discovery obtained from an adversary instead of utilizing subpoenas." Id.

7  at *1.

8      Furthermore, Mattel should not be forced to rely solely on MGA in obtaining

9  discovery related to their financial condition or illegal activities. As the jury

10  unanimously found at trial, MGA fraudulently concealed its illegal activities in this

11  case. It engaged in a pattern of misrepresentations about its financial condition,

12  including concealing valuations, providing valuations within months of each other that

13  fluctuated by hundreds of millions of dollars, and claiming near insolvency when it

14  suited its legal arguments and then denying it when their needs shifted. There also is

15  evidence, described above, of concealment, spoliation and alteration of documents by

16  MGA, Isaac Larian and other MGA executives and MGA-affiliated parties. The truth-

17  finding function in this case is not served by entrusting MGA itself to produce

18  evidence, including evidence of its own wrongdoing. As MGA's pattern of misconduct

19  amply shows, quite the opposite is the case here.

20  **C.   The Objection Based Upon the Accountant-Client Privilege Is**

21      **Unfounded**

22      MGA and the IGWT parties' objection that the requests seek documents

23  protected from disclosure by the accountant-client privilege is without basis. The

24  United States Supreme Court has recognized that there is "no confidential accountant-

25  client privilege [that] exists under federal law, and no state created privilege has been

26  recognized in federal cases." Couch v. United States, 409 U.S. 322, 335 (1972)

27  (collecting cases). Therefore, the objection is frivolous. Nevertheless, even if there

28  was such a privilege, IGWT offers no foundation for its application to the documents

MOTION TO COMPEL
EXHIBIT _____
PAGE _____

1   requested.  IGWT does not contend that it provides accounting services, much less that

2   it has acted as an accounting firm or agency in relation to MGA (or Larian).

3       **D.**    **Mattel's Requests Do Not Impose an Undue Burden**

4          The third parties object that the requests are unduly burdensome and that the

5   burden and expense outweighs the documents relevance.  These subpoenaed parties

6   bear the burden of proving undue burden by "specific and compelling" proof;

7   conclusory assertions are insufficient.  Goodman v. U.S., 369 F.2d 166, 169 (9th Cir.

8   1966) ("The party must provide specific and compelling proof that the burden is

9   undue.");  see JZ Buckingham Investments, LLC v. United States, 78 Fed. Cl. 15, 25

10  (Fed. Cl. Ct. 2007) (denying motion to quash); Northrop Corp. v. McDonnell Douglas

11  Corp., 751 F.2d 395, 403 (D.C. Cir. 1984) (reversing district court's decision quashing

12  subpoena).  Here, third parties have not demonstrated the time, cost, or burden involved

13  in responding to Mattel's subpoenas is undue.  Nor could they.  Virtually all of the third

14  parties here are single purpose entities that have existed only a few months.  It is

15  dubious at best that they should have such voluminous records, let alone voluminous

16  records of the type requested by Mattel in the subpoenas, that any burden could be

17  considered undue.

18         The MGA Parties' complaints about alleged burden are wholly irrelevant -- it

19  lacks any standing to even make such an argument -- and simply serve to underscore

20  that MGA seeks to obstruct.  "The burden of showing that a subpoena is unreasonable

21  and oppressive *is upon the party to whom it is directed.*"  Goodman, 369 F.2d at 169

22  (emphasis added).

23      **E.**    **Mattel's Requests Do Not Violate the Discovery Master's May 7,**

24            **2008 Order**

25         MGA and the IGWT Parties object, claiming that the subpoenas violate Judge

26  Infante's May 7, 2008 Order in which he allegedly found that "similarly phrased

27  requests to third parties" were overly burdensome and improper.  This objection should

28  be overruled.  First, the subpoenas at issue in the May 7, 2008 Order sought different

MOTION TO COMPEL

EXHIBIT _____ **21**

PAGE **135**

1   information and went to different issues than the present requests.   Second, Judge

2   Infante was clear that "[n]othing in this Order is intended to authorize or preclude

3   Mattel from seeking documents from the non-parties identified herein as part of Phase 2

4   discovery, if appropriate."[92]   So, the objection is without merit.

5   **F.**   **Concerns Over Confidentiality Are Alleviated by the Protective**

6   **Order**

7   The third parties object on the grounds that Mattel seeks documents containing

8   trade secrets, confidential information or otherwise protected by a right of privacy.

9   Because the Court has entered a Protective Order in this action, which Mattel has

10   provided to the subpoenaed parties,[93] the subpoenaed party's concerns about

11   confidentiality do not justify withholding documents from production.   See, e.g.,

12   Putnam v. Eli Lilly and Co., 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007) (finding that a

13   protective order "can strike the appropriate balance between the need for the

14   information and the privacy concerns" of the party opposing production's employees);

15   Keith H. v. Long Beach Unified School District, 228 F.R.D. 652, 658 (C.D. Cal. 2005)

16   (compelling production of student records because of slight redactions and "a protective

17   order to minimize any invasion of the students' privacy rights"); In re Heritage Bond

18   Litigation, 2004 WL 1970058 at *5, n.12 (C.D. Cal. 2004) ("Any privacy concerns . . .

19   defendants have in their bank records and related financial statements are adequately

20   protected by the protective order, and are not sufficient to prevent production in this

21   matter"); A. Farber and Partners, Inc., 234 F.R.D. at 191-92 ("P]laintiff's need for

22   defendant Garber's financial documents outweighs defendant Garber's claim of privacy,

23   especially when the 'impact' of the disclosure of the information can be protected by a

24   'carefully drafted' protective order").

25

26

27   [92]   May 7, 2008 Order, at 13, Corey Dec., Exh. 75.

28   [93]   Corey Dec., ¶ 3.

MOTION TO COMPEL
**EXHIBIT** **21**

PAGE **136**

1    Indeed, the former Discovery Master previously and repeatedly ruled that the

2  Protective Order is sufficient to alleviate any privacy concerns.[94]  Although MGA

3  objected to that ruling, the District Court approved the Discovery Master's order,

4  finding that the entry of a protective order justified compelling production of even

5  "sensitive documents" to MGA's "fierce competitor."[95]  Therefore, the confidential,

6  privacy and trade secret objections must be overruled.

7  **IV.    EACH OF THE SUBPOENAED PARTIES MUST PRODUCE**

8         **ADEQUATE PRIVILEGE LOGS**

9    To the extent the subpoenaed parties are withholding documents on the basis of

10  privilege, they must provide a timely privilege log. Fed. R. Civ. P. 45; see Burlington

11  N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142, 1148-50

12  (9th Cir. 2005) (affirming district court's holding that party waived privilege objections

13  by failing to provide privilege log within thirty days of serving its responses); In re

14  Imperial Corp. of Am., 174 F.R.D. 475, 477 (S.D. Cal. 1997) (waiver rule for failure to

15  provide privilege log applies to subpoenas to third parties).  Accordingly, the Discovery

16  Master should order the subpoenaed parties to produce privilege logs as required by

17  Rule 45(d)(2).

18

19

20

21

22

23

24

25

26

27  [94]  Order Dated May 15, 2007, at 11, n.4, Corey Dec., Exh. 99.
28  [95]  Order Dated July 2, 2007, at 3, Corey Dec., Exh. 23.

07209/2783835.1

-29-

1                          <u>**Conclusion**</u>

2          For the reasons set forth above, and for those set forth in the Mattel's Separate

3    Statement, Mattel respectfully requests that the objections to the subpoenas be

4    overruled and that IGWT Group, LLC, IGWT 826 Investments, LLC, Vision Capital,

5    LLC, OmniNet Capital, LLC, and Omni 808 Investors, LLC be compelled to produce

6    all documents sought by Mattel's subpoenas as well as to produce a privilege log for

7    any documents withheld on the basis of privilege.

8

9    DATED:  February 3, 2009          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
10

11                                     By /s/ Jon D. Corey
                                          Jon D. Corey
12                                        Attorneys for Mattel, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2783835.1

-30-

MOTION TO COMPEL
EXHIBIT  21

PAGE  738

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12  Plaintiff, | Consolidated with Case No. CV 04-09059 |
| 13  vs. | Case No. CV 05-2727 |
| 14  MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 15  Defendant. | **[To Be Heard By Discovery Master Robert C. O'Brien Pursuant To Order Of January 6, 2009]** |
| 16 | |
| 17  AND CONSOLIDATED ACTIONS | MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION TO QUASH SUBPOENAS ISSUED BY MATTEL TO |
| 18 | OMNI 808 INVESTORS, LLC, OMNINET |
| 19  **CONFIDENTIAL -- ATTORNEY'S EYES ONLY** | CAPITAL, LLC, IGWT GROUP, LLC, IGWT 826 INVESTMENTS, LLC AND VISION CAPITAL, LLC |
| 20 | |
| 21  **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** | [Declaration of Stephen Hauss and Notice of Lodging filed concurrently herewith] |
| 22 | |
| 23 | Hearing Date:      TBD<br>Time:              TBD<br>Place:             TBD |
| 24 | |
| 25 | Phase 2:<br>Discovery Cut-off:     Not set |
| 26 | Pre-trial Conference:  Not set<br>Trial Date:            Not set |
| 27 | |
| 28 | |

07975/2789634.6

OPPOSITION TO MOTION TO QUASH

EXHIBIT 22

PAGE 1392

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT.................................................................................1

STATEMENT OF FACTS ....................................................................................3

ARGUMENT .......................................................................................................11

I.   MATTEL'S SUBPOENAS DO NOT VIOLATE THE COURT'S ORDERS .................................................................................................11

    A.   The Plain Language of the Janaury 7, 2009 Order Imposes No Limit on Phase 2 Discovery....................................................................11

    B.   MGA's Implied Discovery Limitation Argument Similarly Fails........12

II.  MATTEL'S SUBPOENAS SEEK RELEVANT DISCOVERY...................13

    A.   The Documents Sought Are Relevant to Mattel's Phase 2 RICO Claims ......................................................................................14

    B.   The Documents Sought Are Also Relevant to Mattel's Phase 2 Disgorgement Claim........................................................................16

    C.   The Documents Sought Are Relevant to Phase 2 Damages ................18

    D.   The Documents Sought Are Relevant to the MGA Parties' Credibility In Phase 2 ....................................................................19

    E.   The Documents Sought are Relevant to the MGA Parties' Unclean Hands Defense In Phase 2 ....................................................20

    F.   The Documents Sought Are Relevant to Mattel's Phase 2 Unfair Competition Claim ..........................................................................21

CONCLUSION .......................................................................................................21

07975/2789634.6

-i-

EXHIBIT 22

PAGE 140

1

## TABLE OF AUTHORITIES

2
**Page**

3

### Cases

4
Asdourian v. Konstantin,
   77 F. Supp. 2d 349 (E.D.N.Y. 1999) ....................................................... 15

5

6
Blain v. Doctor's Co.,
   222 Cal. App. 3d 1048 (1990) ............................................................... 20

7
Burlesci v. Petersen,
   68 Cal. App. 4th 1062 (1998) ................................................................ 17

8

9
Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.,
   175 F.R.D. 646 (C.D. Cal. 1997) ........................................................... 19

10
Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,
   20 Cal. 4th 163 (1999) .......................................................................... 21

11

12
Clark v. Bunker,
   453 F.2d 1006 (9th Cir. 1972) ............................................................... 16

13
Cramer v. Biddison,
   65 Cal. Rptr. 624, 257 Cal. App. 2d 720 (1968) .................................... 17

14

15
Eastman Kodak Co. v. Camarata,
   238 F.R.D. 372 (W.D.N.Y. 2006) .......................................................... 15

16
Farmers Ins. Exchange v. Zerin,
   53 Cal. App. 4th 445 (1997) ................................................................. 17

17

18
GoTo.com, Inc. v. Walt Disney Co.,
   202 F.3d 1199 (9th Cir. 2000) ............................................................... 20

19
Granberry v. Islay Investments,
   9 Cal. 4th 738 (1995) ........................................................................... 20

20

21
Hilao v. Estate of Marcos,
   103 F.3d 767 (9th Cir. 1996) ................................................................. 18

22
Korea Supply Co. v. Lockheed Martin Corp.,
   29 Cal. 4th 1134 (2003) ................................................................... 16, 17

23

24
Kraus v. Trinity Management Servs., Inc.,
   23 Cal. 4th 116 (2000) ......................................................................... 16

25
Kraus v. Willow Park Public Golf Course,
   73 Cal. App. 3d 354 (1977) .................................................................. 17

26

27
In re Lifschultz Fast Freight,
   132 F.3d 339 (7th Cir. 1996) ................................................................... 7

28

-ii-

In re McKesson HBOC, Inc. Erisa Litigation,
    391 F. Supp. 2d 812 (N.D. Cal. 2005) ..................................................... 20

In re Mobile Steel,
    563 F.2d 692 (5th Cir. 1977) ...................................................................... 8

Nelmida v. Shelly Eurocars, Inc.,
    112 F.3d 380 (9th Cir. 1997) .................................................................... 20

Robert L. Cloud & Associates v. Mikesell,
    69 Cal. App. 4th 1141 (1999) ................................................................... 18

Rubin v. Green,
    4 Cal. 4th 1187 (1993) ............................................................................. 21

Southern California Housing Rights Center v. Krug,
    2006 WL 4122148 (C.D. Cal. 2006) ........................................................ 18

Taylor v. Polackwich,
    145 Cal. App. 3d 1014 (1983) .................................................................. 17

In re Uzyel Irrevocable Trust, No. BP 058 898 (Los Angeles Sup. Ct. October 24,
    2006), at 13:19 ............................................................................................ 5

Weiss v. Marchus,
    51 Cal. App. 3d 590 (1975) ...................................................................... 17

**Statutes**

11 U.S.C. § 510(c) .......................................................................................... 8

18 U.S.C. § 1956 ........................................................................................... 15

18 U.S.C. § 1957 ........................................................................................... 16

18 U.S.C. § 2314 ........................................................................................... 16

Cal. Civ. Code §§ 2223 ................................................................................. 17

Cal. Civ. Code §§ 2224 ................................................................................. 17

**Miscellaneous**

4 Callmann, Unfair Competition and Monopolies § 14.45 (4th ed.) ........................ 16

Business and Professions Code § 17200 ............................................................. 21

-iii-

OPPOSITION TO MOTION TO QUASH

EXHIBIT

PAGE

## **Preliminary Statement**

MGA claims that snippets during the colloquy of counsel and the Court during the January 5, 2009 hearing regarding Mattel's request for *expedited* discovery show the Court's intent to prevent all discovery into MGA's or Larian's finances, and as a result, Mattel's subpoenas to find out this information should be quashed.  MGA is wrong.  The Court issued no Order limiting discovery in any way.  To the contrary, the day after the January 5, 2009 hearing, the Court issued an order lifting *in its entirety* the stay on Phase 2 discovery without limitation.  Nor did the Court's January 7, 2009 Order appointing a forensic auditor change that.  Not a single word in that Order bars *all* discovery relating to MGA's or Larian's finances from *any* source.  Not a single word in that Order limits, suspends or otherwise affects, much less overrules, the Court's January 6, 2009 Order allowing Phase 2 discovery to proceed without limitation.  Because the text of the Orders does not support MGA's suggested limitation.  the motion should be denied.

MGA does not dispute that Mattel's subpoenas here[1] seek relevant, discoverable information.  Nor could it.  Omni 808 is a shell entity that was formed during the Phase 1B damages trial and that now claims MGA owes it more than $300 million in unpaid loans.  According to UCC financing statements, Omni 808's alleged acquisition of that MGA debt – which also occurred during trial – was funded by another shell entity called Vision Capital.  Vision Capital, which owns Omni 808, was formed mid-trial as well.  Vision Capital's funds, in turn, came from Lexington Financial, an offshore shell entity with a London mail drop.

In papers filed with the District Court, MGA itself affirmatively relied on this transaction as supposed evidence of its financial viability but offered no evidence or specifics as to who owned its new purported business partners, who was actually

---

[1]   These subpoenas are to Omni 808 Investors, LLC, OmniNet Capital, LLC, IGWT Group, LLC, IGWT 826 Investments, LLC, Wachovia Corporation, Vision Capital, LLC, Lexington Financial, LLC, Fred Mashian and Neil Kadisha

OPPOSITION TO MOTION TO QUASH

**EXHIBIT** *22*

**PAGE** *143*

behind these transactions, the source of the alleged funding or even the transactions' true terms. What little MGA did disclose about the facts was false – as MGA had to concede when confronted with evidence Mattel's investigation had turned up about these entities and the transactions. MGA also admitted, belatedly after Mattel had exposed it through its own investigation, that Isaac Larian had formed the IGWT companies mid-trial that he used to buy tens of millions of dollars of MGA's Bratz inventory at a drastic discount.

All of this was troubling enough, especially given that MGA was already found to have engaged in fraudulent concealment during trial, and alone would amply justify the discovery Mattel seeks. But even since then, Omni 808 has repeatedly touted the superiority of its supposed interests – devised during the damages phase of trial – over Mattel and represented to the Court that these financial transactions were purportedly "arms-length." Like MGA, however, Omni 808 refuses to disclose who its alleged unnamed "investors" are, who owns Omni 808, Vision Capital or Lexington Financial, where Omni 808 obtained over $100 million in funds to acquire the ostensible interests in MGA it touts or even the actual terms of its alleged transactions with MGA, Vision Capital, Lexington or anyone else.

Mattel has learned through investigation, but neither MGA nor Omni 808 disclosed, that Vision Capital and Lexington Financial are anything but arms-length actors. In fact, both Vision Capital and Lexington Financial – the alleged source of funding for Omni 808 and thus for MGA – are directly tied to Isaac Larian's brother-in-law, Leon Neman. Thus, for example, Vision Capital purports to have an address of 1525 South Broadway in Los Angeles. No company called Vision Capital is located there; in fact, the receptionist at the building said she had never heard of it. Rather, Leon Neman owns the property at 1525 South Broadway and runs his businesses from there. Multiple Leon Neman entities list as their agent Fred Mashian. Mr. Mashian purports to be Lexington Financial's agent in the UCC financing statement. And,

OPPOSITION TO MOTION TO QUASH

EXHIBIT __22__

PAGE __144__

1  Vision Capital's Delaware address is the same address as a Neman entity that lists Mr.
2  Mashian as its agent.

3  As this makes evident, the discovery sought by the subpoenas is
4  reasonably calculated to lead to the discovery of evidence relevant to multiple Phase 2
5  claims and defenses and to other matters pending before the Court.  The requested
6  documents are relevant to understand MGA's and Larian's financial condition and to
7  significant transactions affecting their condition.  MGA's and Larian's net worth,
8  financial condition, and ability to pay are also relevant to the punitive damages that will
9  be tried as part of Phase 2 of this case.  The MGA Parties' actions in manipulating the
10  sources of funding and apparently using single-purpose companies controlled by Larian
11  to purchase Bratz products from MGA for pennies on the dollar and resell them at a
12  profit are relevant to Mattel's Phase 2 criminal copyright infringement claims, affects
13  MGA's and Larian's financial condition, and represents anti-competitive conduct
14  actionable under Mattel's unfair competition claim.  MGA's mid-trial transactions with
15  non-operating entities bear the classic hallmarks of an attempt to fraudulently transfer
16  assets to its controlling shareholders that, if substantiated, may constitute predicate acts
17  of wire and mail fraud that support Mattel's RICO claims.  The requested documents
18  are also to relevant to the MGA Parties' unclean hands defense.  Mattel is entitled to
19  respond to this defense by demonstrating that MGA is precluded from invoking the
20  unclean hands defense because they have not themselves acted with clean hands.  The
21  information sought by the subpoenas is also highly pertinent to Mattel's pending
22  receivership motion and to defending against MGA's multiple, serial stay motions that
23  place MGA's own financial condition squarely at issue.

24  The Discovery Master should deny the MGA Parties' motion to quash
25  Mattel's third-party subpoenas.

26  **Statement of Facts**

27  **MGA Misrepresents Its Financial Condition.**   In connection with
28  MGA's applications for an order staying the December 3, 2008 injunctive orders, MGA

EXHIBIT **22**

PAGE **145**

1  represented to the District Court and to the Ninth Circuit that, as a result of this case, it

2  has been unable to obtain credit.[2]  Mattel reviewed the financing statements filed

3  regarding MGA and learned that this was apparently false.  Since the Phase 1B verdict,

4  a new alleged creditor, Omni 808 Investors, LLC ("Omni 808") has purported to take a

5  security interest in the bulk of MGA's assets,[3] which facially would suggest the

6  possibility that new credit had been extended to MGA.  After Mattel brought the Omni

7  808 transaction to the Court's attention, and contrary to MGA's earlier, sworn

8  representations to the Court and to the Ninth Circuit that it had been unable to obtain

9  new credit, MGA then admitted that Omni 808 had in fact extended it additional

10  funding.[4]

11          The transaction revealed in the financing statements also appears to be

12  structured to conceal the ultimate source of funds for the Omni 808/MGA transaction.

13  MGA claims that this transaction is with the venerable OmniNet Capital private equity

14  firm.[5]  That does not appear to be accurate, nor should any association with OmniNet

15  be a basis to assuage concerns.  Far from it.  OmniNet Capital is a private equity firm

16  owned and controlled by the Nazarian family, including Nazarian family brother-in-law

17  Neil Kadisha.[6]  Mr. Kadisha is also the alleged CEO of Omni 808, MGA's new

18

19          [2]  See Declaration of Brian Wing in Support of the MGA Parties' Request for a Stay, dated

20  December 11, 2008, at ¶ 13, attached as Exhibit 36 to the Declaration of Jon Corey in Support
    of Mattel, Inc.'s Motion to Compel Production of Documents Responsive to Third Party

21  Subpoenas, dated February 3, 2009, ("Corey Dec."), which has been concurrently lodged with
    the Discovery Master.

22          [3]  See UCC Financing Statement Amendment dated September 9, 2008, amending prior
    UCC Financing Statement to add Omni 808 Investors, LLC as a creditor to MGA with co-

23  priority with Wachovia Bank, N.A., Corey Dec., Exh. 37.
            [4]  See MGA Parties Corrections to the Opposition to Mattel, Inc.'s Ex Parte Application

24  for Appointment of a Receiver or for Alternative Relief, dated December 31, 2008, at 1-2,
    Corey Dec., Exh. 38.

25          [5]  See MGA Parties' Opposition to Mattel's Ex Parte Application for Appointment of a
    Receiver, dated December 30, 2008, at 8-9 n.4, Corey Dec., Exh. 39.

26          [6]  Compare Omni 808 registration information (with address of 9420 Wilshire Boulevard,
    4th Floor, Beverly Hills, CA 90212), Corey Dec., Exh. 37 at UCC Financing Statement

27  Amendment ¶ 7(c) with OmniNet Capital address (with address of 9420 Wilshire Boulevard,
    4th Floor, Beverly Hills, CA 90212), OmniNet "Contact Us", Corey Dec., Exh. 40; see also

28  OmniNet "About Us", Corey Dec., Exh. 41.

07975/2789634.6

-4-

1  business partner.[7]  In a 2006 Los Angeles Superior Court decision, Mr. Kadisha was

2  found to be "no more than a common thief" for his embezzlement of millions (including

3  for OmniNet), his fabrication of financial records and his perjury.[8]  In that decision, the

4  Los Angeles Superior Court found Kadisha liable for stealing millions of dollars as part

5  of a decade-long pattern of fraudulent conduct that included perjury, subordination of

6  perjury, fabrication of financial records, sham transactions, preparation of back-dated

7  documents, fraudulent accountings, acts of looting, embezzlement and other

8  misappropriations of funds, breaches of fiduciary duty, conflicts of interest and illegal

9  self-dealing.[9]

10         Equally significantly, if the transaction were a straightforward purchase of

11  Wachovia's debt by OmniNet, then MGA, Larian, OmniNet and others would have no

12  incentive to conceal the ultimate source of funds, as apparently happened here.

13  OmniNet is not the secured party, and thus presumably not an actual debt

14  purchaser/lender.  Rather, the company purporting to hold the security interest is Omni

15  808, a single purpose entity which was formed on August 12, 2008, during the damages

16  phase of trial.[10]  Nor does it appear that OmniNet owns Omni 808.  Omni 808 appears

17  to be owned and funded by a company called Vision Capital, LLC that, like Omni 808,

18  was formed during the damages phase of the trial.[11]

19         According to the UCC financing statement, Vision Capital, LLC ("Vision

20  Capital") obtained the money used to fund Omni 808, and presumably MGA, from a

21

22  [7]  See December 31, 2008 Letter from Omni 808 Investors, LLC, attached as Exhibit B to
    the Declaration of Brian Wing in Support of MGA's Correction to the Opposition to Mattel's
23  Ex Parte Application for a Receiver, dated December 31, 2008, Corey Dec., Exh. 42.
    [8]  See In re Uzyel Irrevocable Trust, No. BP 058 898 (Los Angeles Sup. Ct. October 24,
24  2006), at 13:19, Corey Dec., Exh. 43.
    [9]  E.g., id., at 2:13-25, 4:13-18, 26:3-11; 31:22-24, 34:6-7, 41:23-24, 45:25-27, 48:25-28,
25  50-51 n. 12, 62:24-63:2, 71:7-9, 72:15-16, 102:1-20, 111:24-27, 112:10-13, 117:17-23,
    118:23, 120:1-2, 121:1, 125:1-27, 126:16, 141:27-28, 152:17-22, 153:1-6, 155:13-14, 156:1-
26  157:24, 158:23-28, 166:11-22, 168:1-5, 175:10-13, 181:13, 183:11-21.
    [10]  See Omni 808 Investors, LLC Certificate of Status and Articles of Organization, Corey
27  Dec., Exh. 44.
    [11]  See Vision Capital, LLC Certificate of Formation dated August 19, 2008, Corey Dec.
28  Exh. 45.

07975/2789634.6

-5-

OPPOSITION TO MOTION TO QUASH

EXHIBIT 22

PAGE 142

company called Lexington Financial, LLC ("Lexington").  Lexington is an offshore company registered in the Caribbean island of Nevis, a country notorious for its corporate and banking secrecy laws.[12]  Indeed, the official corporate records for Lexington from Nevis declare that Nevis does not ask – and therefore will not disclose – any information about Lexington, including even the bare identities of its principals.[13] Lexington also has an address in London at the same location as a company that provides "virtual office" services, i.e., mail drop and answering service.[14]

Fred Mashian, a Sunset Boulevard "estate-planning" attorney, is identified as the Lexington contact on a UCC financing statement showing that Vision Capital secured its alleged loan from Lexington with its ownership interest in Omni 808.[15] Lexington perfected its purported security interest in Vision Capital's ownership interest in Omni 808 on August 29, 2008–three days after the jury's damages verdict.[16] The public records Mattel has obtained thus far do not disclose who provided Lexington with the funds that it ostensibly provided to Vision Capital and that Vision Capital supposedly contributed to Omni 808 for the loan/debt purchase related to MGA. Nor has MGA been able to explain why, if OmniNet is truly on the other side of this transaction, it is using shell companies and offshore vehicles, which may be used to conceal the flow of funds, and a sole-practitioner estate planning attorney to process UCC Financing Statements.

On January 12, 2009, Mattel attempted to serve a subpoena on Vision Capital at 1525 South Broadway in Los Angeles—the address provided in the August

---

[12]   See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 46 (with Lexington Capital taking a security interest in Vision Capital's ownership interest in Omni 808 Investors LLC); "Offshore-Based Limited Liability Company (LLC)" at www.offshore-protection.com/nevisLLC.html, Corey Dec., Exh. 47.

[13]   See December 12, 2008 letter from Registrar Clevelan Williams, Corey Dec., Exh. 49.

[14]   See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 46; December 12, 2008 letter from Registrar Clevelan Williams, Corey Dec., Exh. 49.  Office Front "Home" (offering website by Office Front allowing a person to obtain a "virtual office" for as little as £10 a month), Corey Dec., Exh. 48.

[15]   See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 46.

OPPOSITION TO MOTION TO QUASH

EXHIBIT 22

PAGE 148

29, 2008 UCC financing statement.[17]  Vision Capital was not located at that address; in fact, the receptionist at the building said she had never heard of the company.[18]  Rather, 1525 South Broadway is the address of Neman Brothers & Associates.[19]  Leon Neman is a principal of Neman Brothers & Associates and owns the building at 1525 Broadway, where Vision Capital is ostensibly located.[20]  Leon Neman is Isaac Larian's brother-in-law and has served as a director of MGA.[21]  Mr. Mashian, the agent for Lexington Financial, is the listed agent for several entities that Leon Neman owns.[22]  Indeed, Rock-Hill Holdings, LLC, a Leon Neman entity that lists Mashian as its registered agent, also has a Delaware address that is the same as Vision Capital's alleged Delaware address.[23]

There may be an innocent explanation for the mid-damages-trial transaction in which MGA's largest creditor became a newly formed shell corporation owned and funded by another newly formed shell corporation that obtained its funding from an offshore corporation registered in the corporate secrecy haven of Nevis and using a fictional London address.  But such an explanation has yet to be provided.  And, it is a common (but unlawful) tactic for shareholders of a company to create the impression of an arms-length loan to a questionable corporation (rather than a proper capital contribution) while concealing that the shareholder is the source of the funds.[24]

---

[16]  See August 29, 2008 Lexington Financial UCC financing statement, Corey Dec., Exh. 46.

[17]  See Declaration of David Antolin, dated February 4, 2009, lodged concurrently herewith.

[18]  Id.

[19]  Id.

[20]  See Declaration of Michael T. Zeller in Support of Mattel's Opposition to Omni 808 Investors, LLC's Ex Parte Application to Intervene, dated February 5, 2009, at ¶ 6 ("Zeller Dec."), lodged concurrently herewith.

[21]  See Zeller Dec. ¶ 4.

[22]  See Zeller Dec. ¶ 11.

[23]  See Zeller Dec. ¶ 12.

[24]  For example, one reason this is done is so that a shareholder's sham creditor can claim priority over unsecured or secured creditors with lower priority, rather than being last in line as an owner.  In re Lifschultz Fast Freight, 132 F.3d 339, 343 (7th Cir. 1996) (noting that "[e]quityholders come last in bankruptcy, which generally means they get nothing at liquidation. To avoid this, an owner might disguise her equity claim as debt. The doctrine of (footnote continued)

OPPOSITION TO MOTION TO QUASH

EXHIBIT  22

PAGE  149

1    **Mattel Discovers that Larian is Setting Up New Companies to**
2    **Purchase Bratz Product from MGA for Pennies on the Dollar.**  In addition to
3    MGA's other questionable financial dealings, Larian appears to be transferring assets
4    from MGA as well.  Larian, through a company called IGWT Group (apparently an
5    abbreviation of "In God We Trust"), is purchasing Bratz product for pennies on the
6    dollar and reselling it.  Larian created this company on June 26, 2008 – during the
7    Phase 1 trial – and registered its place of business as his home address.[25]  Larian also
8    created an affiliated company called IGWT 826 Investments on August 27, 2008 – the
9    day after the Phase 1 trial ended.[26]  IGWT 826 is registered at the home address of
10   Shirin Makabi (Isaac Larian's sister) and Eli Makabi (Isaac Larian's brother-in-law and
11   the only shareholder of MGA other than Isaac Larian).[27]

12        In a spate of "emergency" filings which MGA submitted to the District
13   Court and the Ninth Circuit, MGA relied on claims about Bratz inventory, but made no
14   mention of these entities nor disclosed on what terms IGWT is obtaining Bratz
15   inventory.  After Mattel (and not MGA) brought IGWT to the Court's attention, MGA
16   admitted that it sold tens of millions of dollars in Bratz inventory to Larian through
17   IGWT at a "substantial discount."[28]  The few pages of documents that MGA then self-
18   selected and provided to the Court showed that it was actually a discount of more than
19   80 percent.[29]  Tellingly, although Larian now purports to own this inventory, the

---

equitable subordination empowers a bankruptcy court to foil this queue-jumping."); <u>see generally</u> <u>In re Mobile Steel</u>, 563 F.2d 692 (5th Cir. 1977); 11 U.S.C. section 510(c) (authorizing equitable subordination).  It is presumably therefore no coincidence that Omni 808 now repeatedly has proclaimed that the transactions at issue here -- but for which no one will provide any actual discovery -- give it supposed priority over Mattel.

[25]  <u>See</u> IWGT Group, LLC registration information, Corey Dec., Exh. 50.
[26]  <u>See</u> IWGT 826 Investments, LLC registration information, Corey Dec., Exh. 101.
[27]  <u>See id.</u>
[28]  <u>See</u> MGA Parties' Opposition to Mattel, Inc.'s *Ex Parte* Application For Appointment of a Receiver, dated December 30, 2008, at 10, Corey Dec., Exh. 39.
[29]  <u>See</u> Declaration of Cyrus Naim in Support of Mattel's *Ex Parte* Application For Appointment of a Receiver, dated January 2, 2009, at ¶ 2, Corey Dec., Exh. 51.

-8-

OPPOSITION TO MOTION TO QUASH

EXHIBIT *22*

PAGE *150*

1  IGWT-MGA agreement that MGA and Larian belatedly provided to the Court requires

2  MGA, at MGA's expense, to store the inventory for Larian.[30]

3  **The Court Appoints a Forensic Auditor to Investigate MGA's**

4  **Finances and Lifts the Phase 2 Discovery Stay.**  After MGA applied, both in the

5  District Court and in the Ninth Circuit, to stay the December 3, 2008 injunctive orders

6  based on claims of its imminent financial insolvency, including for reasons that MGA

7  admitted were unrelated to the prospect of injunctive relief, Mattel applied *ex parte* for

8  the appointment of a receiver.[31]  Given MGA's conflicting assertions about its financial

9  condition, Mattel believes a receiver is justified, as there are serious doubts about

10  MGA's ability to (a) pay the Phase 1 trial damages award and any award rendered in

11  Phase 2 trial to Mattel and (b) maintain and preserve the Bratz intellectual property that

12  the jury and the District Court determined are Mattel's.  Further, a receiver is

13  appropriate given the mounting evidence, set forth above, that MGA and Larian have

14  engaged in questionable business arrangements and failed to disclose to the Court and

15  Mattel significant financial information.  Indeed, in setting a hearing on Mattel's *ex*

16  *parte*, the Court remarked that "the finances of MGA, []at this point, quite frankly, are a

17  mystery to the Court."[32]

18  The Court heard arguments on Mattel's *Ex Parte* Application for

19  Appointment of a Receiver on January 5, 2009. At the hearing, the Court indicated that

20  before appointing a receiver, it was inclined to first order an independent audit of

21  MGA.[33]  During that hearing, Mattel presented to the Court a listing of proposed

22  expedited discovery.[34]  One day after the hearing and before ruling on the application

23

24  [30]  See 2008 Inventory Purchase Agreement Between MGA and IGWT Group, LLC, Corey Dec,. Exh. 106.

25  [31]  See Mattel, Inc.'s *Ex Parte* Application for Appointment of a Receiver, dated December 28, 2008, attached as Exhibit 1 to the Declaration of Stephen Hauss, dated February 10, 2009 ("Hauss Dec.") and filed concurrently herewith.

26  [32]  See 12/30/08 Hearing Tr. at 57:11-18, Corey Dec., Exh. 78.

27  [33]  See 1/5/09 Hearing Tr. at 19:21-24, Hauss Dec., Exh. 2.

28  [34]  See Notice of Lodging Expedited Discovery Requested in Connection With Mattel, Inc.'s *Ex Parte* Application for Receiver, dated January 4, 2009, Hauss Dec., Exh. 3.

-9-

OPPOSITION TO MOTION TO QUASH

**EXHIBIT _22_**

PAGE _151_

1 for the receiver, the Court lifted the stay on Phase 2 discovery without limitation,

2 writing, in bold-face type that "The stay on discovery for Phase 2 of this case is hereby

3 VACATED."[35] On the following day, January 7, 2009, the Court issued a written order

4 holding Mattel's *ex parte* application in abeyance and appointing a forensic auditor to

5 investigate MGA's finances.[36] Nothing in the Court's January 7 Order narrowed the

6 scope of Phase 2 discovery which the Court had expressly authorized the previous

7 day.[37]

8 **Mattel Subpoenas Relevant Documents From Third Parties.** After the

9 Court lifted the Phase 2 discovery stay, Mattel served subpoenas seeking the production

10 of documents relevant to Phase 2 claims and defenses on Omni 808 Investors, LLC,[38]

11 OmniNet Capital, LLC,[39] Vision Capital, LLC,[40] IGWT Group, LLC,[41] IGWT 826

12 Investments, LLC,[42] Wachovia Corporation,[43] Lexington Financial, LLC[44] and Fred

13 Mashian.[45] Mattel has been attempting to serve a document subpoena on Neil Kadisha

14 since January 23, 2009.[46] On each occasion that Mattel has attempted service,

15 however, service has been refused because Mr. Kadisha has allegedly been "out of

16 town" over this entire time period.[47]

17 In addition to serving subpoenas, Mattel also sought documents relating to

18 MGA's and Larian's involvement with the Omni/Wachovia transaction and their

19 dealings with the IGWT entities. On Friday, February 6, 2009, Mattel received MGA's

20

21 [35] Court's January 6, 2009 Order Appointing Discovery Master, at 2, Corey Dec., Exh. 35.
[36] Court's January 7, 2009 Order Appointing Forensic Auditor, at 2, Corey Dec., Exh.

22 105.
[37] See id.

23 [38] Omni 808 Investors, LLC (Beverly Hills) and Omni 808 Investors, LLC (Los Angeles) subpoenas, dated January 9, 2009, Corey Dec., Exh. 56.

24 [39] OmniNet Capital, LLC subpoena, dated January 9, 2009, Corey Dec., Exh. 55.
[40] Vision Capital, LLC subpoena, dated January 13, 2009, Corey Dec., Exh. 54.

25 [41] IGWT Group, LLC subpoena, dated January 12, 2009, Corey Dec., Exh. 52.
[42] IGWT 826 Investments, LLC subpoena, dated January 12, 2009, Corey Dec., Exh. 53.

26 [43] Wachovia Corporation subpoena, dated January 12, 2009, Corey Dec., Exh. 57.
[44] Lexington Financial, LLC subpoena, dated January 30, 2009, Hauss Dec., Exh. 4.

27 [45] Fred Mashian subpoena, dated January 30, 2009, Hauss Dec., Exh. 5.
[46] See Hauss Dec. ¶ 7.

28 [47] See id.

07975/2789634.6

OPPOSITION TO MOTION TO QUASH

**EXHIBIT** *22*

PAGE *152*

1    and Larian's responses to these requests.[48]    MGA and Larian only objected,[49] and

2    neither agreed to produce a single document in responses to the requests that Mattel

3    served.[50]

### Argument

5    **I.    MATTEL'S SUBPOENAS DO NOT VIOLATE THE COURT'S ORDERS**

6            Making no effort to dispute that Mattel's subpoenas seek relevant,

7    discoverable information, MGA's sole argument for an order quashing the subpoenas is

8    that they violate the Court's January 7, 2009 Order appointing a forensic auditor, and

9    are therefore premature.  (Mot. at 4-6).  According to MGA's interpretation of the

10   January 7 Order, the Court barred Mattel from seeking *any* discovery relating to MGA's

11   finances from *any* source when it appointed a forensic auditor.  (Mot. at 4-6).  The

12   January 7, 2009 Order does not say that, and MGA's argument by implication ignores

13   the January 6, 2009 Order allowing Phase 2 discovery to proceed without limitation.

14   **A.    The Plain Language of the Janaury 7, 2009 Order Imposes No Limit**

15   **on Phase 2 Discovery**

16           MGA does not, and cannot, point to any language in the Court's January 7,

17   2009 Order that supports its erroneous reading.  No such language exists.[51]  The Court

18   found "good cause" to appoint a forensic auditor to review MGA's financial records.

19   Not a single word or phrase in that January 7, 2009 Order reconsiders, overrules or

20   limits the January 6, 2009 Order lifting the Phase 2 discovery stay.  Nor does a single

21   word or phrase in the January 7, 2009 Order preclude Mattel from seeking relevant

22   information from any source.[52]  Without support for a discovery limitation in the

---

[48]    See Responses to Requests for Documents and Things to MGA Entertainment, Inc. (Phase 2), dated February 6, 2009, Hauss Dec., Exh. 8; Responses to Requests for Documents and Things to Isaac Larian (Phase 2), dated February 6, 2009, Hauss Dec., Exh. 9.
[49]    See id.
[50]    See id.
[51]    Court's January 7, 2009 Order Appointing Forensic Auditor, Corey Dec., Exh. 105.
[52]    See id.

07975/2789634.6

-11-

1  January 7, 2009, the discovery is not premature or otherwise improper and must be

2  denied.

3      **B.**    **MGA's Implied Discovery Limitation Argument Similarly Fails**

4          Tacitly conceding that its argument is unsupported by any language in the

5  January 7 Order, MGA relies on comments made by the Court at the January 5, 2009

6  hearing on Mattel's application.  It is true that the Court discussed an incremental

7  approach to the process of deciding whether or not to appoint a receiver.  (Mot. at 3).

8  As the Court stated:

9          . . . then I can get a true assessment of whether or not the concerns that

10          you have raised are, in fact, legitimate, or, if they are not, if they can be

11          addressed through some less restrictive alternative.  If they are legitimate,

12          I think the appointment of a receiver might be in order.

13  (1/5/09 Hearing Tr. at 11:19-24).  The Court's comments thus reflect its preference to

14  appoint an independent auditor to uncover the "mystery" surrounding MGA's finances,

15  before appointing a receiver.

16          The Court did not discuss an incremental approach with respect to Phase 2

17  discovery.  Mattel submitted to the Court a listing of proposed expedited discovery.[53]

18  MGA argues that the appointment of a receiver is an implicit rejection of any effort by

19  Mattel to seek discovery into MGA's or Larian's finances.  Of course, if the District

20  Court meant to block Mattel's ability to obtain discovery, it could have and would have

21  said so.  The timing of the orders and the hearing also do not support the implication

22  that MGA attempts to draw.  If anything, they refute it.  The hearing at which the

23  statements that MGA relies upon were made, and at which Mattel's request for

24  expedited discovery was made, was January 5, 2009.  Mattel had made that request for

25  expedited discovery because at the time of the hearing, and prior to the January 6, 2009

26

27

28

---

[53]  See Notice of Lodging Expedited Discovery Requested in Connection With Mattel, Inc.'s *Ex Parte* Application for Receiver, dated January 4, 2009, Hauss Dec., Exh. 3.

-12-

OPPOSITION TO MOTION TO QUASH

**EXHIBIT** *22*

PAGE *154*

1  Order, all Phase 2 discovery had been stayed.[54]  The very next day, with Mattel's

2  expedited requests in hand, the Court lifted the Phase 2 discovery stay without

3  limitation.[55]  While the Court knows what its intent was, the only fair implication from

4  a reading of the circumstances and the language of the Orders is that the Court did not

5  wish to administer expedited, narrow discovery, but instead chose to allow discovery to

6  proceed on these and all other Phase 2 topics.  Once the Court issued the order lifting

7  the Phase 2 discovery stay, that Order governs until vacated or otherwise altered.  The

8  January 7, 2009 Order does neither.

9  　　　　　Notwithstanding the post-hearing Order allowing all discovery to proceed,

10  MGA argues that the Court essentially intended to issue two, conflicting orders.  But

11  that makes no sense.  MGA cannot credibly argue that the Court implicitly intended its

12  January 7, 2009 Order to limit discovery based on colloquy about staging or staggering

13  the decision to appoint a receiver, when between colloquy and order, the Court issued

14  an order allowing all Phase 2 discovery to proceed.  If, as MGA contends, the Court

15  had intended to narrow the scope of permissible Phase 2 discovery, it would have so

16  stated in its Order.  It did not.

17  **II.**　　**MATTEL'S SUBPOENAS SEEK RELEVANT DISCOVERY**

18  　　　　　Mattel's third-party subpoenas are relevant to Phase 2 claims and defenses.

19  They are thus expressly authorized by the Court's January 6, 2009 Order, which lifted

20  the Phase 2 discovery stay and permitted Phase 2 discovery to proceed without

21  limitation.[56]  MGA does not even attempt to show otherwise.  Instead, MGA points to a

22  list of proposed, expedited discovery requests that Mattel lodged in support of its

23  application for a receiver, and notes that Mattel's notice of lodging is marked "Phase

24  1C" on its cover page.[57]  MGA argues that this fact establishes that the third-party

25

26  [54]  February 4, 2008 Order, at 3 (staying Phase 2 discovery), Hauss Dec., Exh. 11.
　　[55]  Court's January 6, 2009 Order Appointing Discovery Master, at 2, Corey Dec., Exh. 35.

27  [56]  Id.
　　[57]  See Notice of Lodging Expedited Discovery Requested in Connection With Mattel,

28  Inc.'s *Ex Parte* Application for Receiver, dated January 4, 2009, Hauss Dec., Exh. 3.

-13-

OPPOSITION TO MOTION TO QUASH

**EXHIBIT** *22*

PAGE *155*

1   subpoenas at issue here cannot possibly relate to Phase 2.  (Mot. at 5).  The Discovery

2   Master should reject this illogical, unsupported argument for the red herring that it is.

3            That Mattel lodged a list of proposed, expedited discovery requests to

4   assist the Court in assessing whether to appoint a receiver–requests which sought

5   different information *and which were directed at MGA*, rather than the third-parties at

6   issue here–simply has no bearing on the relevance of Mattel's third-party subpoenas.

7   Further, the "Phase 1C" marking, which appears on the cover of Mattel's notice of

8   lodging (and not on the discovery requests themselves), is unremarkable.  It merely

9   reflects that this proposed discovery was lodged in support of Mattel's application for a

10  receiver–nothing more.

11           In any event, MGA's arguments necessarily concede that Mattel's

12  subpoenas seek information relevant to issues that are currently before the Court or

13  undoubtedly will be raised again before the Court, such as in Mattel's pending

14  application for a receiver and in MGA's repeated stay requests.  That alone justifies the

15  discovery sought here.  But contrary to MGA's thesis, merely because the documents

16  are relevant to such issues scarcely precludes the subpoenaed documents from *also*

17  relating to Phase 2.[58]  As shown below, Mattel's subpoenas seek information that is

18  indisputably relevant to Phase 2 issues and therefore properly seek discoverable

19  information for these independent reasons.

20  A.    **The Documents Sought Are Relevant to Mattel's Phase 2 RICO**

21        **Claims**

22           Mattel's requests are directly relevant to its RICO claims.  In its

23  counterclaims, Mattel alleges that the counter-defendants have operated a widespread

24  criminal enterprise that has engaged in numerous acts of mail and wire fraud and other

---

25      [58]  Indeed, the Court has previously recognized that discovery can be relevant to both

26  Phase 1 and Phase 2, which is precisely why the Court permitted Phase 1 and 2 discovery to
      proceed simultaneously through February 4, 2008.  See October 31, 2007 Order, at 2 (denying

27  MGA's request to stay or otherwise bifurcate discovery regarding Phase 2 issues), Hauss Dec.,
      (footnote continued)

28

07975/2789634.6

OPPOSITION TO MOTION TO QUASH

EXHIBIT *22*

PAGE *156*

1  predicate acts in violation of the RICO statute.[59]  MGA's mid-trial transactions with

2  Omni 808 and the other non-operating entities, which bear the classic hallmarks of an

3  effort to fraudulently transfer assets to its controlling shareholders, are a continuation of

4  that pattern of racketeering activity in which MGA and Larian have long been engaged.

5  See, e.g., Asdourian v. Konstantin, 77 F. Supp. 2d 349, 355, 359 (E.D.N.Y. 1999)

6  (allegations that defendant "siphoned away" corporation's assets through "systematic

7  looting" accomplished through fraudulent mortgages constitute predicate acts for

8  RICO).  At a minimum, then, the requests are likely calculated to lead to evidence of

9  additional acts of wire and mail fraud.[60]  As such, they are unquestionably relevant,

10  because a plaintiff alleging RICO violations should be permitted discovery into each

11  instance of a predicate act, even where further discovery is "unnecessary" to establish

12  the category of predicate act.  See Eastman Kodak Co. v. Camarata, 238 F.R.D. 372,

13  376 (W.D.N.Y. 2006).[61]

14          The discovery sought by the subpoenas may also reveal additional, distinct

15  predicate acts in support of Mattel's RICO allegations.  Mattel's requests seek to

16  unravel the true nature of these "financing" transactions, which involve various shell

17  and off-shore companies and appear to be deliberately structured to conceal the ultimate

18  source of funding.  It may be intended to "conceal or disguise the nature, the location,

19  the source, the ownership, or the control of the proceeds" derived from defendants'

20  unlawful activity—here, among other things, their infringement of Mattel's intellectual

21  property.  18 U.S.C. § 1956.  Whatever the reason, MGA's recent "financing" raises a

22  host of potential predicate RICO violations, regarding which Mattel is entitled to

23  _____

24  Exh. 10; February 4, 2008 Order, at 3 (staying Phase 2 discovery, but expressly excepting certain depositions "that may be related to both Phase 1 and Phase 2"), Hauss Dec., Exh. 11.
    [59]  Mattel's Second Am. Complaint and Counter-Claims, dated July 12, 2007, at ¶¶ 88-

25  105, Corey Dec., Exh. 19.
    [60]  See id. at ¶ 93(a) & (b).

26  [61]  Moreover, even the terms of the loans are themselves relevant.  MGA has paid

27  hundreds of millions of dollars to Larian and his family or associates throughout this litigation.  See Corey Dec., ¶ 92 and reference exhibits therein.  That is directly relevant to Larian's

28  (footnote continued)

OPPOSITION TO MOTION TO QUASH

EXHIBIT 22

PAGE 157

1  discovery.  See, e.g., 18 U.S.C. § 1957 (use of unlawful funds), 18 U.S.C. § 2314

2  (transportation of converted funds).  Likewise, the sales by the IGWT entities of

3  infringing Bratz product may constitute predicate acts of criminal copyright

4  infringement by MGA – predicate acts that Mattel has alleged against MGA in Phase

5  2.[62]  Thus, the discovery sought is plainly proper.

       **B.**    **The Documents Sought Are Also Relevant to Mattel's Phase 2**

6

7          **Disgorgement Claim**

8        One remedy Mattel seeks is disgorgement of all amounts wrongfully

9  obtained.  Mattel may also be entitled to damages for lost profits pursuant to its

10 disgorgement theory of damages.  The disgorgement remedy further provides for the

11 imposition of constructive trusts to recover the ill-gotten gains of MGA and Isaac

12 Larian that have been transferred to other parties.  For purposes of establishing

13 disgorgement, Mattel is entitled to take into account money transferred from MGA and

14 Isaac Larian, regardless of the manner in which it was transferred. Mattel is entitled to

15 discovery that shows assets siphoned from MGA or Isaac Larian during the period of

16 the alleged wrongful conduct.

17       Disgorgement is an available remedy for Mattel's claims against MGA and

18 Larian, including Mattel's claim for trade secret misappropriation.  See 4 Callmann,

19 Unfair Competition and Monopolies § 14.45 (4th ed.); Clark v. Bunker, 453 F.2d 1006,

20 1011 (9th Cir. 1972).  The scope of the disgorgement remedy is set forth in two recent

21 California Supreme Court decisions.  See Kraus v. Trinity Management Servs., Inc., 23

22 Cal. 4th 116 (2000); Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134

23 (2003).  The court indicated that:

24       "disgorgement" is a broader remedy than restitution. . . .

25       [A]n order for disgorgement "may compel a defendant to

26 _____

27 personal liability for RICO violations and evidence of his association with and control over the enterprise.

28   [62]  SAAC, ¶ 93.

                  -16-

OPPOSITION TO MOTION TO QUASH

**EXHIBIT** *22*

PAGE *158*

> surrender *all* money obtained through an unfair business practice even though not all is to be restored to the persons from whom it was obtained or those claiming under those persons. It has also been used to refer to surrender of *all* profits earned as a result of an unfair business practice regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice."

Korea Supply, 29 Cal. 4th at 1145 (quoting Kraus, 23 Cal. 4th at 127) (emphasis added).

Moreover, an important part of disgorgement is the imposition of a constructive trust to recover ill-gotten gains that have been transferred to others by the defendant. A constructive trust is intended to prevent unjust enrichment, with equity compelling the restoration to another of property to which the holder thereof is not justly entitled. Taylor v. Polackwich, 145 Cal. App. 3d 1014, 1022 (1983); Cal. Civ. Code §§ 2223, 2224. See also Weiss v. Marchus, 51 Cal. App. 3d 590, 600 (1975) (constructive trust may be imposed in case of fraud, mishandling, or almost any case of wrongful acquisition or detention of property to which another is entitled). When personal property is in dispute, the legislature has allowed plaintiffs to invoke the remedy of constructive trust. Cal. Civ. Code §§ 2223, 2224. To create a constructive or involuntary trust only three conditions are necessary: existence of a res, i.e. property or some interest in property, plaintiff's right to that res and defendant's gain of the res by fraud, accident, mistake, undue influence, violation of the trust or other wrongful act. Kraus v. Willow Park Public Golf Course, 73 Cal. App. 3d 354 (1977); see Cramer v. Biddison, 65 Cal. Rptr. 624, 257 Cal. App. 2d 720 (1968). See Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1067 (1998) (constructive trust); Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445, 454-55 (1997) (equitable lien is proper if unjust enrichment and detrimental reliance are implicated)

07975/2789634.6

OPPOSITION TO MOTION TO QUASH

EXHIBIT *32*

PAGE *159*

1    By these subpoenas, Mattel seeks evidence to prove the amount the

2 defendants must disgorge. Money that properly belonged to Mattel was transferred

3 from MGA or Isaac Larian to an entity controlled by them. Mattel should be able to

4 understand how that money was used because MGA and Isaac Larian have no right to

5 whatever additional gains realized with Mattel's money. Rather, the right to those

6 additional gains vests solely in Mattel.

7    **C.    The Documents Sought Are Relevant to Phase 2 Damages**

8    The subpoenas also seek documents relevant to the MGA parties' financial

9 condition, which is relevant to Mattel's Phase 2 damages claims. A defendant's net

10 worth, financial condition, and ability to pay any award are all factors relevant to an

11 award of punitive damages. See, e.g., Hilao v. Estate of Marcos, 103 F.3d 767, 781-82

12 & n. 7 (9th Cir. 1996) (financial condition a relevant factor in awarding punitive

13 damages); Southern California Housing Rights Center v. Krug, 2006 WL 4122148, *4

14 (C.D. Cal. 2006) ("When a punitive damages claim has been asserted, a majority of

15 federal courts permit pretrial discovery of financial information about defendants

16 without requiring the plaintiff to establish a prima facie case on the issue of punitive

17 damages."); Robert L. Cloud & Associates v. Mikesell, 69 Cal. App. 4th 1141,148-

18 1152 (1999) (defendant's "ability to pay damages award" and "financial condition"

19 were relevant to determining award of punitive damages for misappropriation of trade

20 secrets).

21    Judge Larson and the former Discovery Master have ruled that Mattel is

22 entitled to evidence related to MGA's net worth. For example, Mattel moved to compel

23 MGA to produce a Rule 30(b)(6) witness on issues related to MGA's net worth after

24 MGA claimed such evidence was irrelevant and should be left to expert testimony. The

25 Discovery Master agreed with Mattel and ordered the deposition to proceed on the issue

26 of net worth, among others. MGA objected and appealed to Judge Larson, who

27 affirmed the Discovery Master and held "[t]hat net worth is generally the subject of

28

07975/2789634.6

-18-

OPPOSITION TO MOTION TO QUASH

**EXHIBIT** _22_

PAGE _160_

1  expert testimony at trial – a proposition disputed by neither Mattel nor the Court – does

2  not render it an improper subject for a Rule 30(b)(6)."[63]

3       Omni 808 and Vision Capital are directly involved in providing funding to

4  MGA in exchange for a purported security interest.  Such funding, and ostensible

5  security interests, are in and of themselves directly relevant to the financial condition of

6  the MGA Parties, including the amount of the security interests, the terms and

7  conditions of the funding, and the rate of the funding.  The true identity of the persons

8  and entities providing the funding and obtaining a security interest in MGA are likewise

9  relevant to that issue.  Moreover, given the level of financing, the parties must have

10  engaged in evaluations of the past, present, and future value of the MGA parties.  It is

11  just such documents that the third-party subpoenas at issue seek.

12       Finally, as noted above, MGA is using IGWT to sell Bratz products and

13  conduct Bratz business.  Obviously, these sales and this kind of evasion is directly

14  relevant to the claims at issue, as well as to the net worth and financial condition of the

15  MGA Parties.  Mattel is entitled to the information sought by the subpoenas for these

16  additional reasons.

17  **D.**    **The Documents Sought Are Relevant to the MGA Parties' Credibility**

18       **In Phase 2**

19       Information is also relevant and discoverable if it relates to "the credibility

20  of any witness." Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc., 175 F.R.D.

21  646, 650 (C.D. Cal. 1997).  MGA and Larian have made repeated statements under oath

22  about their financial condition as well as about the role of Omni 808 and the other non-

23  operating entities in providing MGA with additional funding.[64]  Mattel is therefore

24

25

---

[63]  July 2, 2007 Order, at 5, Corey Dec., Exh. 12.

[64]  Compare Declaration of Brian Wing in support of the MGA Parties' Request for a Stay,
dated December 11, 2008, at ¶ 13, Corey Dec., Exh. 36 <u>with</u> MGA Parties' Corrections to the
Opposition to Mattel's *Ex Parte* Application for Appointment of a Receiver, dated December
31, 2008, at 1, Corey Dec., Exh. 38.

OPPOSITION TO MOTION TO QUASH

**EXHIBIT** 32

PAGE *161*

1 | entitled to discovery to determine the true state of these matters – information which is

2 | directly relevant to MGA's and Larian's credibility.

3 | **E.     The Documents Sought are Relevant to the MGA Parties' Unclean**

4 | **Hands Defense In Phase 2**

5 | The subpoenas also seek documents relevant to the MGA Parties' defense

6 | of unclean hands.  In their answers to Mattel's cross-claims, MGA and Larian asserted

7 | that "Mattel's counterclaims are barred in whole or in part by Mattel's unclean hands."[65]

8 | The alleged basis for their unclean hands defense is wide ranging, touching on every

9 | aspect of Phases 1 and 2 of this case, including the alleged infringement of MGA's

10 | trade dress and Bratz products as well as allegedly interfering with MGA's efforts to

11 | hire Mattel employees.[66]

12 | Mattel is entitled to respond to these allegations by demonstrating that the

13 | MGA Parties are precluded from invoking the unclean hands defense because they have

14 | not themselves acted with clean hands.  The invocation of "unclean hands" is an

15 | equitable defense.  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1209-10 (9th

16 | Cir. 2000) (discussing "equitable defense" of "unclean hands"); In re McKesson HBOC,

17 | Inc. Erisa Litigation, 391 F.Supp.2d 812, 842 (N.D. Cal. 2005) ("[U]nclean hands is an

18 | equitable defense.").  A party asserting an equitable defense, however, must itself have

19 | "clean hands." Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380, 385 (9th Cir. 1997)

20 | (("A cardinal maxim of equity jurisprudence is that he who comes into equity must

21 | come with clean hands.") (quoting Banks v. Rockwell Intern. North American Aircraft

22 | Operations, 855 F.2d 324, 327 (6th Cir. 1988)); Granberry v. Islay Investments, 9 Cal.

23 | 4th 738, 743-744, 750 (1995) (equitable defense may be "barred by any of the generally

24 | applicable equitable affirmative defenses, including . . . unclean hands"); Blain v.

25 | Doctor's Co., 222 Cal. App. 3d 1048, 1059 (1990) ("He who comes into Equity must

26

---

27 | [65]   MGA's Amended Answer and Affirmative Defenses, dated September 19, 2007, at 20-21, Corey Dec., Exh. 103; Isaac Larian's Amended Answer and Affirmative Defenses, dated November 8, 2007, at 16-18, Corey Dec., Exh. 104.

28

-20-

OPPOSITION TO MOTION TO QUASH

EXHIBIT **22**

PAGE **162**

1   come with clean hands."). As discussed above, MGA may be engaging in sham and

2   fraudulent financial transactions such as concealing profits and sales of Bratz and other

3   products "off the books" through newly created single purpose companies. If true,

4   MGA and Larian would be acting with unclean hands and thus precluded from

5   invoking the unclean hands defense themselves.

6         F.   **The Documents Sought Are Relevant to Mattel's Phase 2 Unfair**

7                **Competition Claim**

8         The subpoenas seek documents related to Mattel's claim for unfair

9   competition. The MGA Parties' actions in manipulating the sources of funding and

10   apparently using single-purpose companies to unload Bratz products for pennies on the

11   dollar and resell them may be anti-competitive actions that are encompassed by

12   California's unfair competition laws. Under Business and Professions Code § 17200,

13   "unfair competition" includes "any unlawful, unfair or fraudulent business act or

14   practice...." Section 17200's scope is "sweeping, embracing anything that can properly

15   be called a business practice and that at the same time is forbidden by law." Rubin v.

16   Green, 4 Cal. 4th 1187, 1200 (1993) (internal quotation marks and citation omitted). It

17   encompasses "anti-competitive business practices as well as injuries to consumers, and

18   has as a major purpose the preservation of fair business competition." Cel-Tech

19   Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 180

20   (1999). Accordingly, the documents sought are reasonably calculated to lead to the

21   discovery of admissible evidence relating to Mattel's unfair competition claim.

22                  **Conclusion**

23         For the foregoing reasons, Mattel respectfully requests that the Discovery

24   Master deny the MGA Parties' motion to quash Mattel's third-party subpoenas.[67]

25

26       [66]  Id.

27   [67]  In the event the Discovery Master decides to grant MGA's motion to quash, Mattel respectfully submits that it should be permitted to revive its third-party subpoenas upon

28   written notice to counsel, and should not be required to re-serve them.

07975/2789634.6

OPPOSITION TO MOTION TO QUASH

EXHIBIT **22**

PAGE **163**

1

2  DATED:  February 10, 2009          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

3

4                                     By  /s/ Jon D. Corey
                                        Jon D. Corey
5                                       Attorney for Mattel, Inc.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO QUASH

**EXHIBIT** *22*

PAGE  *164*