# EXHIBIT 26

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 27

1   Patricia L. Glaser, State Bar No. 055668
    Pglaser@glaserweil.com
2   Joel N. Klevens, State Bar No. 045446
    Jklevens@ glaserweil.com
3   GLASER, WEIL, FINK, JACOBS
    & SHAPIRO, LLP
4   10250 Constellation Boulevard, 19th Floor
5   Los Angeles, California 90067
    Telephone:  310-553-3000
6   Facsimile:  310-556-2920

7   Russell J. Frackman, State Bar No. 049087
    rjf@msk.com
8   MITCHELL, SILBERBERG & KNUPP, LLP
    11377 West Olympic Boulevard
9   Los Angeles, California 90064
    Telephone:  310-312-2000
10  Facsimile:  310-312-3100

11  Attorneys for the MGA Parties For Phase Two

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                     EASTERN DIVISION

15

16  CARTER BRYANT, an individual      )  Case No. CV 04-9049 SGL (RNBx)
                                      )
17              Plaintiff,            )  Consolidated with
                                      )  Case No. 04-09059
18  v.                                )  Case No. 05-02727
                                      )
19  MATTEL, INC., a Delaware          )  **DISCOVERY MATTER**
    Corporation                       )
20                                    )  **MGA ENTERTAINMENT, INC. AND
                Defendant.            )  ISAAC LARIAN'S OPPOSITION TO
21                                    )  MATTEL, INC.'S 2/10/09 MOTION
                                      )  TO COMPEL RESPONSES TO
22  _____       )  INTERROGATORIES AND
                                      )  PRODUCTION OF DOCUMENTS**
23  AND CONSOLIDATED ACTIONS          )
                                      )  **[Declaration of Amman Khan;
24                                    )  Declaration of Brian Wing;
                                      )  Opposition to Separate Statement
25                                    )  filed concurrently herewith]**
                                      )
26                                    )  **Date:    To be set
                                      )  Time:    To be set
27                                    )  Place:   To be set**
                                      )
28

EXHIBIT 21
PAGE 461

**TABLE OF CONTENTS**

Page

Preliminary Statement.................................................................. 2

Argument .................................................................................. 3

I.    MATTEL'S REQUESTS FOR SUPPLEMENTAL FINANCIAL INFORMATION FROM MGA AND LARIAN (RFP NOS. 4-37 AND 40-45 (SECOND SET TO MGA); AND RFP NOS. 207, 208 AND 269 (FIRST SET TO LARIAN)) MUST BE DENIED ............................................. 3

      A.   The Motion Violates Local Rule 37-1 Because Mattel Breached Its Own Agreement To Further Meet And Confer. ................................. 3

      B.   The Updated Financial Information Sought Is Beyond The Scope Of Phase 2 Discovery. ...................................................................... 5

II.   MATTEL IS NOT ENTITLED TO A SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 45 (SIXTH SET)............................................ 7

III.  MATTEL IS NOT ENTITLED TO RESPONSES TO SUPPLEMENTAL INTERROGATORY NOS. 56-63 AND 67-69............................................ 8

      A.   The Interrogatories Presuppose Facts That Are Not True. ....... 8

      B.   The Interrogatories Are Unduly Burdensome........................... 8

      C.   The Interrogatories Are Impermissibly Compound. ............... 10

      D.   The Interrogatories Improperly Ask MGA to Establish A Negative Proposition ............................................................................ 11

      E.   Interrogatory Nos. 67-69 Are Overly Broad........................... 12

Conclusion ................................................................................ 14

EXHIBIT _27_

PAGE _462_

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

667320

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Banks v. Office of Senate Sergeant-at-Arms,*
    222 F.R.D. 7 (D.D.C. 2004) ............................................................... 11

*Lawrence v. First Kansas Bank & Trust Co.,*
    169 F.R.D. 657 (D. Kan. 1996) ....................................................... 11

*Safeco of America v. Rawstron,*
    181 F.R.D. 441 (C.D. Cal. 1998) .................................................... 11

*Tennison v. City & County of San Francisco,*
    226 F.R.D. 615 (N.D. Cal. 2005) .................................................... 12

*Willingham v. Ashcroft,*
    226 F.R.D. 57 (2005) ....................................................................... 11

## STATE CASES

*Dang v. Cross,*
    2002 WL 432197 (C.D. Cal. 2002) ............................................... 11

## STATUTES

Federal Rules of Civil Procedure
    26(b)(1) ............................................................................................. 2
    Rule 33 ............................................................................................ 11

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

EXHIBIT ___27___

PAGE ___463___

ii

## OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL

### Preliminary Statement

Mattel, Inc.'s 2/10/09 "Motion to Compel Responses to Interrogatories and Production of Documents By MGA Entertainment, Inc., and Isaac Larian" (the "Motion"), is procedurally improper and substantively without merit.

First, the Discovery Master should not even consider Mattel's Motion to compel MGA and Isaac Larian to provide supplemental financial information pursuant to Request Nos. 4-37 and 40-45 (Second Set to MGA), and Request Nos. 207, 208 and 269 (First Set to Larian) because Mattel ignored its own agreement to meet and confer further about this issue, and blatantly violated Local Rule 37-1 by filing its Motion the day before the parties were supposed to discuss the matter. If Mattel is permitted to flout its meet and confer obligations with impunity, there will be no stopping it from harassing the MGA Parties, and continuing to run up attorneys fees into the stratosphere, by filing discovery motions that might have been avoided.

Even if the Motion as to these discovery requests were procedurally proper (which it is not), it still should be denied as to these requests. The requests seek information related to the sales, revenues and profits of Bratz dolls. This was a Phase 1 issue. The jury has already determined damages related to the Bratz products, and Mattel is not entitled to relitigate that issue or seek double recovery. Revenues and profits derived from the Bratz products have no bearing on any Phase 2 issue. Moreover, Mattel does not even attempt to show how Mr. Larian's gross income and net worth are relevant to Phase 2.

Federal Rule of Civil Procedure 26(b)(1) limits discovery to matters relevant to a party's claim or defense or that are reasonably calculated to lead to the discovery of admissible evidence. The financial information sought by Mattel is relevant only to Phase 1, so Mattel's Motion should be denied. Also, under FRCP 26(b)(2)(C), the Court must limit discovery where the party seeking has had ample opportunity by discovery in the action to obtain the information sought. Mattel admits that it

EXHIBIT 27

PAGE 464

1  obtained all the financial information it sought relevant to Phase 1, thus there is no

2  basis for requiring Larian or MGA to provide updated financial information.

3     For the same reason (lack of relevance to Phase 2), MGA should not be

4  required to provide supplemental information identifying each Bratz product that

5  MGA or MGA's licensees have sold, or provide other Bratz related financial

6  information in response to Interrogatory No. 45 (Sixth Set).  Such information relates

7  solely to Phase 1, and Judge Larson made it abundantly clear at the February 11, 2009

8  hearing that discovery on Phase 1 issues is over.

9     Finally, Mattel's supplemental interrogatories Nos. 56-63 and 67-69 to both

10  MGA and Larian are improper for a variety of reasons.  First, they are worded in such

11  a way that, in order to answer them, the MGA Parties must acknowledge the existence

12  of facts that the MGA Parties flatly deny.  Second, the interrogatories are

13  impermissibly compound, thereby violating the limitation on the number of

14  interrogatories Mattel is allowed to propound.  Third, the interrogatories ask MGA

15  and Larian to provide facts that establish a negative proposition, thereby making the

16  interrogatories logically unanswerable and legally improper.

17     For the reasons set forth below, the MGA Parties' objections should be

18  sustained and Mattel's Motion should be denied in its entirety.

19                         **Argument**

20  **I.    MATTEL'S REQUESTS FOR SUPPLEMENTAL FINANCIAL**

21  **INFORMATION FROM MGA AND LARIAN (RFP NOS. 4-37 AND 40-45**

22  **(SECOND SET TO MGA); AND RFP NOS. 207, 208 AND 269 (FIRST SET TO**

23  **LARIAN)) MUST BE DENIED**

24  **A.    The Motion Violates Local Rule 37-1 Because Mattel Breached Its**

25  **Own Agreement To Further Meet And Confer.**

26     On February 9, 2009, Mattel sent a meet and confer letter inviting MGA to

27  further meet and confer *on February 11, 2009* concerning RFPs 4-37 and 40-45 to

28  MGA, and RFPs 207, 208 and 269 to Mr. Larian.  (Declaration of Amman Khan filed

LAW OFFICES

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

concurrently herewith ("Khan Decl."), Ex. H [Letter dated February 9, 2009 from Jon Corey to Amman Khan].) But on February 10, 2009, the day before the proposed meet and confer session, Mattel sandbagged the MGA Parties by filing the instant Motion.

Local Rule 37-1 requires, in clear and unambiguous terms, that the parties fully meet and confer in good faith *before* filing discovery motions. Mattel's blatant violation of the meet and confer rule and rush to the Discovery Master should not be condoned. If Mattel (or any party for that matter) is allowed to file motions to compel while the parties are still attempting to informally resolve discovery issues, Local Rule 37 will not be worth the proverbial paper on which it is written, virtually assuring that every single discovery dispute will end up before the Discovery Master.

Mattel's strategy from the inception of this litigation has been to make it as expensive as possible for its much smaller competitor, MGA, and for MGA's founder, obviously hoping to cripple them financially. To this end, Mattel has propounded a staggering number of discovery requests[1] and has filed motions to compel with respect to almost all of them. By the time Phase 1 discovery ended, the former Discovery Master not only repeatedly had found that Mattel's relentless discovery barrage was "unreasonably duplicative," "cumulative," and "unduly burdensome,"[2] but he also castigated Mattel for making "highly exaggerated" and

---

[1] By the end of Phase 1, Mattel had propounded *four thousand six hundred and forty-seven (4,647)* Requests for Admissions, *two thousand eight hundred and eighty-nine (2,889)* Requests for Production, and *seventy-one (71) interrogatories*; Mattel had taken 30(b)(6) Depositions covering *two hundred ninety-two (292)* topics and *over sixty (60)* non-expert depositions (some for multiple days); Mattel also had served *seventy-five (75)* Third Party Subpoenas; and the MGA Defendants produced *four million, two hundred thousand (4,200,000)* pages of documents.

[2] *See, e.g.* 4/29/08 Order Granting MGA's Motion to Quash Larry McFarland's Deposition Subpoena Or For Protective Order at 5:22, Ex. A to Khan Decl. (*"McFarland's deposition is duplicative and cumulative"*); 4/14/08 Order Denying Mattel's Motion To Compel Production Of Documents By MGA In Response To Fifth Set Of Requests For Documents And Things at 4:5-6, Ex. B to Khan Decl. (Requests 4-7 of Fifth Set were *"cumulative, duplicative and unduly burdensome because they seek documents previously requested and received by Mattel."*); 4/22/08 Order Denying Mattel's Motion To Compel Additional Deposition Testimony of Veronica Marlow, Ex. C to Khan Decl. at 2:8-14 (noting that "Mattel has already deposed Marlow for approximately

---

1   "largely unjustified" assertions about the MGA Parties' supposed non-compliance

2   with their discovery obligations.[3]  To allow Mattel to flout with impunity its

3   obligation to meet and confer in good faith simply encourages Mattel to continue to

4   engage in its bad faith, scorched earth discovery tactics, in which the endgame is not

5   to obtain information, but to harass, burden and oppress.  The Motion should be

6   denied as to Request Nos. 4-37 and 40-45 (Second Set), and Request Nos. 207, 208

7   and 269 (First Set) on this ground alone.

8   **B.   The Updated Financial Information Sought Is Beyond The Scope Of**

9   **Phase 2 Discovery.**

10   **1.   Request Nos. 4-37 and 40-45 (Second Set) Are Not Relevant To**

11   **Phase 2.**

12   Request Nos. 4-37 and 40-45 directed to MGA (Second Set) seek financial

13   information related to the sales, revenues and profits related to Bratz dolls – which, as

14   stated above, was a Phase 1 issue.  Mattel admits in its Motion that MGA produced

15   documents responsive to these Requests when it was appropriate to do so – *during*

16   *Phase 1*.  As Judge Larson made perfectly clear at the February 11, 2009 hearing, the

17   only discovery that is now allowed is "the discovery related to Phase 2."  (Khan

18   Decl., Ex. F at 99:8-22 [February 11, 2009 Hearing Transcript].)

19   In a disturbingly disingenuous effort to establish relevance where none exists,

20   Mattel cites an excerpt from the May 27, 2008 *Trial* Transcript for the proposition

21   that "[a]s the Discovery Master [sic] previously found, the compelled financial

---

23   seven and a half hours" and holding that *none of the arguments proffered by Mattel, "either alone or in combination, justifies the burden and expense of having Marlow appear for further examination."*); 5/7/08 Order Granting In Part And Denying In Part MGA Parties' Motion To

24   Quash Subpoenas etc., Ex. D to Khan Decl. at 11:5-6 ("*the subpoenas are overly broad, sweeping in vast amounts of documents that have little to no relevance*"), 11:12-13 ("*Mattel's subpoenas to*

25   *the non-parties are also unreasonably duplicative and cumulative of discovery Mattel has already sought and received in this case.*").

26

27   [3] 4/28/08 Order Denying Mattel's Motion To Compel Further Deposition Of Margaret Hatch-Leahy,

28   Ex. E to Khan Decl. at 3:21-22).

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

MGA PARTIES' OPPOSITION TO MATTEL, INC.'S 2/10/09 MOTION TO COMPEL

EXHIBIT ___27___

PAGE ___467___

1  information . . . is relevant to the damages Mattel seek[.]" (Motion at 9:4-6.)

2  However, the May 27, 2008 transcript merely reflects that Judge Larson partially

3  granted and partially denied Mattel's motion to compel Mr. Larian's response to a

4  trial subpoena, and that the Court found that documents showing the revenue and

5  profits of Bratz products were relevant to Phase 1. (See Ex. 27 attached to Motion at

6  13-25.) Mattel makes absolutely no effort to explain how this discovery is relevant to

7  its Phase 2 claims (and it cannot sandbag the MGA parties by adding new arguments

8  in its Reply). Thus, its motion should be denied.

9      Any claim by Mattel that it needs this Bratz-related financial information in

10 order to establish its Phase 2 damages ignores the jury's Phase 1 damages award, and

11 must fail. Mattel sought disgorgement of all Bratz profits during Phase 1 and the jury

12 made its award. Mattel may not relitigate this issue in Phase 2. Further, the jury

13 expressly rejected Mattel's claim for damages based on Bratz' related future damages,

14 so Mattel's demand for post-verdict financial information is particularly unwarranted.

15 (Khan Decl., Ex. G at ¶ 11 [Verdict Form].)

16      **2.  Request Nos. 207, 208 and 269 (First Set) Are Not Relevant to**

17          **Phase 2.**

18      Mattel does not even attempt to show that Isaac Larian's personal financial

19 records, sought by RFP Nos. 207, 208 and 269 are relevant to Phase 2 issues.

20 Contrary to Mattel's assertions, the former Discovery Master found Request No. 207

21 to be relevant to Phase 1, *not* Phase 2: "Request No. 207 seeks information

22 reasonably calculated to lead to information showing the timing of payments *to*

23 *Bryant and others, which in turn is relevant to the timing of the development of*

24 *Bratz and issues of credibility*." (See December 31, 2007 Ruling, Exhibit 8 attached

25 to Motion at 15:10-12, 16:2-4) (emphasis added.) Further, with respect to Request

26 Nos. 208 and 269, Mattel simply has not made any showing that the Requests, which

27 seek Mr. Larian's gross income and net worth, are related to Phase 2. Mattel cannot

28

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1   sandbag MGA or Larian now by citing evidence in Reply.  Accordingly, Mattel is not

2   entitled to supplemental responses to these Requests.

3   **II.    MATTEL IS NOT ENTITLED TO A SUPPLEMENTAL RESPONSE TO**

4   **INTERROGATORY NO. 45 (SIXTH SET)**

5        Interrogatory No. 45 asks MGA to identify each Bratz product that MGA or its

6   licensees have sold, and to identify the revenue, costs, and profits associated with

7   each such product.  Once again, Mattel's entitlement to gross and net profits from

8   sales of Bratz products was an issue adjudicated in Phase 1, and Mattel fails to

9   explain how this discovery is relevant to or proper in Phase 2.  Mattel claims that this

10  information might be relevant to Mattel's alleged theft of trade secret damages, but

11  that argument is specious.  Among other things, the putative "trade secrets" pertained

12  to information about **Mattel's** pricing, sales and marketing plans and the like for

13  **Barbie** dolls no later than **2005,** when the last of the employees who are claimed to

14  have "stolen" such trade secrets left Mattel for MGA.[4]  Mattel does not, because it

15  cannot, explain how long-outdated "trade secrets" about Mattel's pricing and costs

16  four to five years ago entitle it to information about Bratz sales in 2008.

17       Further, MGA has already provided information that is current through the

18  second fiscal quarter of 2008.  As Mattel acknowledges in its Motion, MGA produced

19  **over 36,000 pages of documents** (and identified them as responsive to Interrogatory

20  No. 45) in December 2007.  (Motion at 5:11-13.)  Because MGA does not calculate or

21  keep records of a product-by-product profit breakdown in the normal course of

22  business, providing this information entailed considerable expense and consumption

23  of time on MGA's behalf.  Indeed it would take approximately 320 worker hours to

24  provide this supplemental information.  (See Declaration of Brian Wing filed

25  concurrently herewith at ¶¶ 3-4.)  To force the MGA parties to expend such a great

26  amount of effort and resources **again,** for information covering such a truncated

27  [4] According to Mattel's Second Amended Answer and Counterclaims, the three former employees of Mattel Mexico left
in April 2004, former Mattel Senior Vice President Ron Brawer left in October 2004, and Mattel's Canadian Director of
28  Sales for the Girls Division, Janine Brisbois, left in September 2005. (SAAC at 40:23-27, 45:5-6, 50:3-4.)

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

7

667320

EXHIBIT 27

PAGE 469

1  period (*i.e.*, two fiscal quarters), would be overly burdensome and costly to MGA
2  when weighed against any possible benefit to Mattel.

3  **III.   MATTEL IS NOT ENTITLED TO RESPONSES TO SUPPLEMENTAL**
4  **INTERROGATORY NOS. 56-63 AND 67-69**

5      These Interrogatories incorporate Mattel's definition of "MATTEL
6  DOCUMENTS" which have been defined as "all DOCUMENTS stolen, obtained or
7  taken from MATTEL by any PERSON , including but not limited to the documents
8  identified as Bates Numbers . . . ."  (Ex. 13 to Mattel's Motion at 7:3-5.)  This list of
9  specific documents identified by Bates Number is 2 ½ pages long and has the
10 appearance of a data printout.  Indeed, Mattel admits in its Motion that these allegedly
11 "stolen" documents consist of "at least 8 banker boxes of documents."  (Motion at
12 25:6.)

13      As discussed below, the interrogatories are objectionable because they (1) ask
14 MGA to establish a negative proposition, (2) require MGA and Larian to admit facts
15 they deny, as the interrogatories presuppose documents were stolen or taken by
16 former Mattel employees and given to MGA, and (3) are overly broad and unduly
17 burdensome as the definition is compound and contains multiple subparts.

18      **A.    The Interrogatories Presuppose Facts That Are Not True.**

19      Interrogatory Nos. 60, 61 and 63 are each improper because they
20 cannot be answered unless MGA accepts a definition that assumes it is in
21 possession of documents stolen or taken from Mattel by former Mattel
22 employees – a fact that MGA denies.[5]

23

24

25

26 [5] For example, Interrogatory No. 60 asks MGA to:
27 State all facts which support YOUR contention, if YOU so contend, that any information in the MATTEL DOCUMENTS was known to the public or to PERSONS who can obtain economic value from its disclosure or use, and IDENTIFY all PERSONS with knowledge of the foregoing and all DOCUMENTS that REFER OR RELATE TO the
28 foregoing.

MGA PARTIES' OPPOSITION TO MATTEL, INC.'S 2/10/09 MOTION TO COMPEL

667320

EXHIBIT _____

470

PAGE

**B.    The Interrogatories Are Unduly Burdensome.**

Moreover, when read in conjunction with the definition of "MATTEL
DOCUMENTS," the burden imposed by these interrogatories is evident.  As
discussed above, "MATTEL DOCUMENTS" is defined to include *at least* **8 boxes of**
**documents.**  Requiring MGA to state all facts, identify all documents and identify all
witnesses relating to those facts, supporting contentions for over 8 boxes of
documents is patently unduly burdensome, harassing and oppressive.

Mattel improperly justifies its use of the defined term "MATTEL
DOCUMENTS" based on three unfounded assertions.  Mattel first asserts
"MGA/Larian know which documents they improperly obtained from Mattel and who
improperly obtained them." (Mattel Motion p. 17:19-20).  Mattel asserts second,
"Defendants have produced document after document containing Mattel trade secrets
and, in fact, some of these were marked as exhibits at the deposition of Mr.
Machado." (Mattel Motion p. 18:2-4.).  Mattel asserts third, "MGA/Larian are
certainly in a position to determine which Mattel employees other than those
specifically identified have provided them with Mattel trade secrets.  (Mattel Motion
p.19:8-10.)  Mattel fails to cite any document, testimony or declaration to support
these allegations in its moving papers.  Mattel cannot sandbag MGA or Larian now
by citing evidence in Reply.  Even worse, each of the interrogatories using the term
"MATTEL DOCUMENTS" requires MGA to assume these unfounded assertions are
true, which makes the interrogatories unanswerable and incomprehensible.  Since
Mattel's arguments are not supported by evidence, Mattel's Motion must be denied.

Furthermore, Mattel seeks verified answers to the questions it did not ask.
Specifically, Mattel insists that Interrogatory No. 56 asks MGA/Larian to "identify
the Mattel documents MGA has obtained since January 1, 1999, identify persons with
knowledge of MGA obtaining Mattel documents, and identify documents that refer
relate to <u>obtaining Mattel documents</u>.  (Mattel Motion, p. 11: 14-17.)  This was not

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310/553-3000

the question Mattel asked.  Mattel asked a incomprehensible jumble of a question that states as follows:

> IDENTIFY all MATTEL DOCUMENTS that MGA has obtained, received, reviewed, copied, reproduced, transmitted, requested or used at any time since January 1, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such MATTEL DOCUMENTS.

(Ex. 13 attached to Mattel's Motion at 14.)

This interrogatory, however, does not ask for documents that refer or relate to obtaining Mattel Documents, it asks for all documents that refer or relate to any one of the thousands upon thousands of documents contained in the *eight banker's boxes of documents* that Mattel included in its definition of "MATTEL DOCUMENTS." This is harassing, unduly burdensome and oppressive.

### C.   The Interrogatories Are Impermissibly Compound.

The Interrogatories are also improper because they are compound and contain impermissible sub-parts.  Interrogatory Nos. 56-63 contain innumerable sub-parts because they contain the term "MATTEL DOCUMENTS" which requires MGA to gather facts, and identify witnesses as well as documents concerning each and every one of the thousands of documents included in the eight banker's boxes of documents included in the definition.  Similarly, Interrogatory Nos. 67-69 contain innumerable sub-parts because they ask MGA to identify payments, agreements, and anything of value given to hundreds of MGA employees, vendors and former employees identified in the parties' initial disclosures, among others.

Likewise, Interrogatory No. 56 asks MGA to "IDENTIFY all MATTEL DOCUMENTS that MGA has *obtained, received, reviewed, copied, reproduced, transmitted, requested or used* at anytime since January 1, 1999, and IDENTIFY all

1   PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR

2   RELATE TO such MATTEL DOCUMENTS."[6]

3       This is improper. Under Rule 33, "a party may serve on any other party no

4   more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ.

5   Proc. 33; see also Willingham v. Ashcroft, 226 F.R.D. 57 (2005) (interrogatory

6   subpart that introduces a new line of inquiry is considered a separate interrogatory

7   under Rule 33; responding party not obligated to answer more than 25 interrogatories,

8   including subparts); Banks v. Office of Senate Sergeant-at-Arms, 222 F.R.D. 7

9   (D.D.C. 2004) (number of interrogatories, including subparts, exceeded Rule 33

10   numerical restriction).

11     **D.**    **The Interrogatories Improperly Ask MGA to Establish A Negative**

12   **Proposition.**

13       Interrogatory Nos. 58, 59, and 62 concern MGA's contention that it did not

14   obtain any Mattel documents through improper means and the potential value these

15   documents might have in being kept private. These Interrogatories effectively ask

16   MGA to establish a negative proposition, and thus are unduly burdensome and

17   oppressive. For example, Interrogatory No. 58 asks for MGA to identify all facts that

18   MGA *did not obtain any MATTEL DOCUMENTS through improper means*, and to

19   identify any individuals with knowledge of, or documents referring to, the negative

20   proposition that it did not obtain Mattel documents. This is tantamount to asking the

21   MGA parties for witnesses to and documentary evidence of something that did not

22   occur. Courts have consistently recognized that such requests are unanswerable and

23   improper. See Safeco of America v. Rawstron, 181 F.R.D. 441, 447-48 (C.D. Cal.

24   1998) (citing Lawrence v. First Kansas Bank & Trust Co., 169 F.R.D. 657, 662-63

[6] Likewise, Interrogatory No. 58 asks MGA to "state all facts . . . that *YOU and/or MGA* did not obtain any MATTEL
DOCUMENTS through improper means, and IDENTIFY all PERSONS with knowledge of such facts and all
DOCUMENTS that REFER OR RELATE TO such facts." (See Ex. 13 at p. 14, attached to Motion [Supp.
Interrogatories]) (emphasis added.)

1  (D. Kan. 1996) (holding that interrogatories asking for facts in support of a negative

2  proposition were unduly burdensome and oppressive)).

3      The cases cited by Mattel in its Motion are inapposite.  Mattel's reliance on

4  Dang v. Cross, 2002 WL 432197 (C.D. Cal. 2002) is misplaced and misleading.  In

5  Dang, plaintiff brought an action against the City of Compton and police officers who

6  allegedly used excessive force to arrest him.  Id. at *1.  However, Dang was a case

7  that had an exponentially smaller universe of facts, allegations, and discovery than the

8  ongoing complex litigation between MGA and Mattel, a fact recognized by the court

9  when it explicitly limited its ruling to the facts of the case.  Id. at *4.  Mattel now

10  improperly seeks to extend this inapposite ruling to the case at hand.

11      Mattel's reliance on Tennison v. City & County of San Francisco, 226 F.R.D.

12  615 (N.D. Cal. 2005), is equally inapplicable.  In Tennison, the plaintiff was asked to

13  state all facts supporting his previous denials.  Importantly, the interrogatory at issue

14  in Tennison was found by the court to be not burdensome because *the plaintiff there*

15  *had already told the defendant that he had easy access to documents* containing

16  responsive facts.  That is certainly not the case here.

17      E.    **Interrogatory Nos. 67-69 Are Overly Broad**

18      Mattel insists it is only trying to get at information to support its claims that

19  MGA "poached" Mattel employees for the purposes of stealing its trade secrets.

20  Mattel states that "knowing when MGA paid employees and how much will yield

21  evidence showing MGA's access to Mattel's internal information and additionally

22  bear on critical issues of timing which company was developing which product or

23  product element at issue first." (Mattel Motion 13:12-15.)  But Mattel did not ask

24  these questions or limit its questions to current of former Mattel employees.  Instead it

25  asked for personal, financial information concerning hundreds of people.

26  Specifically, Interrogatory No. 67 asks MGA to:

27          IDENTIFY fully and separately each and every payment of

28          money or other item of value that YOU have made or given, or

LAW OFFICES

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1  any promise, agreement, proposal or offer by YOU to pay

2  money or give any item of value, to or on behalf

3  of any PERSON identified in any of the parties' initial

4  disclosures in this ACTION at any time when such PERSON

5  was not an employee of MGA, including without limitation

6  with respect to legal fees incurred by or on behalf of such

7  PERSON."

8  (Ex. 13 to Mattel's Motion at pp. 16-17.)

9    Further, this interrogatory is overbroad to the extent it requires MGA to

10 tabulate all payments ever made to *"any PERSON identified in any of the parties'*

11 *initial disclosures in this ACTION at any time,"* and to produce a report after

12 determining whether any of these individuals ever worked for Mattel in the past.

13    Interrogatory No. 69 seeks the same information, but with respect *"to or on*

14 *behalf of any PERSON who has been employed by MATTEL."*  Both interrogatories

15 are overbroad.  The burden and expense of determining whether each individual

16 contemplated by these interrogatories was ever paid by MGA, somehow determining

17 whether they ever worked for Mattel in the past, and then generating reports of every

18 payment for each individual far outweighs the interrogatories' likely benefit.

19    The definition of "FORMER MATTEL EMPLOYEES" incorporated in RFP

20 No. 68 is also overly broad, to the extent it identifies ten specific individuals, as well

21 as each individual's "current or former employees, agents, representatives, attorneys

22 accountants, vendors, consultants, independent contractors, predecessors-in-interest

23 and successors-in-interest, and any other Person acting on [his or her] behalf, pursuant

24 to [his or her] authority or subject to [his or her] control."  It is impossible for MGA

25 to know whether a particular person or entity comes within these overly broad

26 definitions.  This definition is further overbroad as it encompasses "any other former

27 Mattel employee or contractor who misappropriated Mattel trade secrets or violated

28

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

13

667320

EXHIBIT _____

PAGE _____ 475

1   his or her obligations to maintain the confidentiality of Mattel's trade secrets." (See

2   Ex. 13 attached to Mattel's Motion at p. 6.)

3       Interrogatory No. 68 asks MGA to identify each and every payment of money

4   MGA made to "FORMER MATTEL EMPLOYEES." Because of the overbreadth of

5   this definition, it would be unduly burdensome for MGA to comply given the

6   enormous number of potential individuals implicated.

7   ### Conclusion

8       Based on the foregoing, the MGA Parties respectfully request that Mattel's

9   February 10, 2009 Motion be denied in its entirety.

10

11

12   Dated: February 18, 2009          Patricia L. Glaser
                            Joel N. Klevens

13                               GLASER, WEIL, FINK, JACOBS
                             & SHAPIRO, LLP

14                               Russell J. Frackman

15                               MITCHELL, SILBERBERG & KNUPP, LLP

16

17                   By: _____
                            Amman Khan

18                               Attorneys for the MGA Parties
                            for Phase Two

19

20

21

22

23

24

25

26

27   EXHIBIT 27

28   PAGE 476

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

14

667320

**PROOF OF SERVICE**

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, Nineteenth Floor, Los Angeles, California 90067.

On February 18, 2009, I served the foregoing document described as:

**MGA ENTERTAINMENT, INC. AND ISAAC LARIAN'S OPPOSITION TO MATTEL, INC.'S 2/10/09 MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS**

on the interested parties to this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

**PLEASE SEE ATTACHED SERVICE LIST**

☐   (BY MAIL) I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐   (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows. I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☐   (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the above named addressee.

☒   (BY EMAIL) I caused such documents to be delivered via email to the addressee(s).

☐   (BY FACSIMILE) I caused such documents to be delivered via facsimile to the offices of the addressee(s) at the following facsimile number:

Executed this 18th day of February, 2009, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_Yumi Chung_
YUMI CHUNG

EXHIBIT __27__

PAGE __477__    15

667320

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

SERVICE LIST

Robert C. O'Brien
Discovery Master
Arent Fox LLP
555 West 5th St., Suite 4800
Los Angeles, CA 90013
**[By Personal Service]**

John Quinn, Esq.
(johnquinn@quinnemanuel.com)
Jon D. Corey, Esq.
(joncorey@quinnemanuel.com)
Michael T. Zeller, Esq.
(michaelzeller@quinnemanuel.com)
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
**[By Email Service]**

Russell J. Frackman, Esq.
(rjf@msk.com)
Patricia H. Benson, Esq.
(phb@msk.com)
Mitchell, Silberberg & Knupp, LLP
11377 W. Olympic Blvd.
Los Angeles, CA 90067
(310) 312-2000
**[By Email Service]**

Thomas J. Nolan, Esq.
(tnolan@skadden.com)
Raoul D. Kennedy, Esq.
(rkennedy@skadden.com)
Jason D. Russell, Esq.
(Jason.russell@skadden.com)
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
(213) 687-5000
**[By Email Service]**

EXHIBIT __27__

PAGE __478__

MGA PARTIES' OPPOSITION TO MATTEL, INC.'S 2/10/09 MOTION TO COMPEL

667320

# EXHIBIT 28

1 │ QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2 │   John B. Quinn (Bar No. 090378)
   │   johnquinn@quinnemanuel.com
   │   Michael T. Zeller (Bar No. 196417)
3 │   (michaelzeller@quinnemanuel.com)
   │   Jon D. Corey (Bar No. 185066)
4 │   (joncorey@quinnemanuel.com)
   │   Timothy L. Alger (Bar No. 160303)
5 │   (timalger@quinnemanuel.com)
   │ 865 South Figueroa Street, 10th Floor
6 │ Los Angeles, California 90017-2543
   │ Telephone: (213) 443-3000
7 │ Facsimile: (213) 443-3100

8 │ Attorneys for Mattel, Inc.

9 │ UNITED STATES DISTRICT COURT

10 │ CENTRAL DISTRICT OF CALIFORNIA

11 │ EASTERN DIVISION

| 12 | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
|---|---|---|
| 13 | Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-2727 |
| 14 | vs. | |
| 15 | MATTEL, INC., a Delaware | MATTEL, INC.'S SIXTH SET OF INTERROGATORIES |
| 16 | corporation, | [INTERROGATORY NO. 45 TO REPLACE PRIOR, AND |
| 17 | Defendant. | WITHDRAWN, INTERROGATORY NO. 45 IN MATTEL, INC.'S FOURTH |
| 18 | AND CONSOLIDATED ACTIONS | SET OF INTERROGATORIES] |
| 19 | | Discovery Cut-off: January 14, 2008 |
| 20 | | Pre-trial Conference: April 7, 2008<br>Trial Date: April 29, 2008 |
| 21 | | Discovery Cutoff: March 3, 2008 |
| 22 | | Final Pretrial Conf.: June 2, 2008<br>Trial Date: July 1, 2008 |
| 23 | | |

24 │ PROPOUNDING PARTY:      Mattel, Inc.

25 │ RESPONDING PARTIES:     MGA Entertainment, Inc., Isaac Larian, Carter

26 │                         Bryant, MGA Entertainment (HK) Limited, MGAE

27 │                         de Mexico S.R.L. de C.V., and Carlos Gustavo

28 │                         Machado Gomez

07209/2263699.1

EXHIBIT 28 10-23

PAGE 479

MATTEL'S SIXTH SET OF INTERROGATORIES

1  Pursuant to <u>Federal Rule of Civil Procedure</u> 33, plaintiff Mattel, Inc.
2  ("Mattel") hereby requests that MGA Entertainment, Inc., Isaac Larian, Carter
3  Bryant, MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V., and
4  Carlos Gustavo Machado Gomez (collectively, "the Responding Parties")
5  individually answer the following Interrogatories separately and fully, in writing and
6  under oath, within 30 days after service hereof.  The Responding Parties shall be
7  obligated to supplement their responses to the Interrogatories at such times and to
8  the extent required by the <u>Federal Rules of Civil Procedure.</u>
9
10  **Definitions**
11  1.  "YOU" and "YOUR" mean each of the Responding Parties.
12  2.  "MGA" means MGA Entertainment, Inc., any of its current or
13  former employees, officers, directors, agents, representatives, attorneys, experts,
14  divisions, AFFILIATES (including without limitation MGA Entertainment (HK)
15  Limited and MGAE de Mexico S.R.L. de C.V.), predecessors-in-interest and
16  successors-in-interest, and any other PERSON acting on its behalf, pursuant to its
17  authority or subject to its control.  Without limiting the foregoing, "MGA" includes the
18  entities known as ABC International Traders or ABC International Traders, Inc.  For
19  purposes of the these Interrogatories, "MGA" does not include BRYANT.
20  3.  "AFFILIATES" means any and all corporations, proprietorships,
21  d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or
22  indirectly, in whole or in part, own or control, are under common ownership or control
23  with, or are owned or controlled by a PERSON, party or entity, including without
24  limitation each parent, subsidiary and joint venture of such PERSON, party or entity.
25  4.  "PERSON" or "PERSONS" means all natural persons, partnerships,
26  corporations, joint ventures and any kind of business, legal or public entity or
27  organization, as well as its, his or her agents, representatives, employees, officers and
28

1 directors and any one else acting on its, his or her behalf, pursuant to its, his or her

2 authority or subject to its, his or her control.

3      5.   "DESIGN" or "DESIGNS" means any and all representations,

4 whether two-dimensional or three-dimensional, and whether in tangible, digital,

5 electronic or other form, including but not limited to all works, designs, artwork,

6 sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

7 diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

8 practice, developments, inventions and/or improvements, as well as all other items,

9 things and DOCUMENTS in which any of the foregoing are or have been expressed,

10 embodied, contained, fixed or reflected in any manner, whether in whole or in part.

11      6.   "BRATZ" means any project, product, doll or DESIGN ever known

12 by that name (whether in whole or in part and regardless of what such project, product

13 or doll is or has been also, previously or subsequently called) and any product, doll or

14 DESIGN or any portion thereof that is now or has ever been known as, or sold or

15 marketed under, the name or term "Bratz" (whether in whole or in part and regardless

16 of what such product, doll or DESIGN or portion thereof is or has been also, previously

17 or subsequently called) or that is now or has ever been sold or marketed as part of the

18 "Bratz" line, and each version or iteration of such product, doll or DESIGN or any

19 portion thereof. As used herein, "product, doll or DESIGN or any portion thereof" also

20 includes without limitation any names, fashions, accessories, artwork, packaging or any

21 other works, materials, matters or items included or associated therewith. Without

22 limiting the generality of the foregoing, and contrary to MGA's recent assertions in

23 connection with other Mattel discovery requests, the term "BRATZ" does not and shall

24 not require that there be a doll existing at the time of the event, incident or occurrence

25 that is the subject of, or otherwise relevant or responsive to, the Interrogatories.

26      7.   "SOLD," "SELL" or "SALE" means to distribute, market, license,

27 sell, offer to sell, or convey or transfer in any way for compensation.

28

1          8.      "BRATZ PRODUCT" means any product, whether two-dimensional
2    or three-dimensional, and whether in tangible, digital, electronic or other form, that is
3    or has ever been SOLD that, in whole or in part, REFERS OR RELATES TO BRATZ,
4    including but not limited to any BRATZ DOLL, BRATZ MOVIE, or BRATZ
5    TELEVISION SHOW, and including but not limited to any product that is or has ever
6    been SOLD in any packaging that includes the name "Bratz" or REFERS OR
7    RELATES TO BRATZ.

8          9.      "BRATZ DOLL" means any doll that is or has ever been SOLD
9    that REFERS OR RELATES TO BRATZ.

10         10.     "BRATZ MOVIE" means any motion picture or film that is or has
11   ever been SOLD that REFERS OR RELATES TO BRATZ.

12         11.     "BRATZ TELEVISION SHOW" means any production exhibited
13   on television that is or has ever been SOLD that REFERS OR RELATES TO BRATZ.

14         12.     "DOCUMENT" or "DOCUMENTS" means all "writings" and
15   "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil
16   Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited
17   to, all writings and records of every type and description including, but not limited to,
18   contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail
19   ("e-mail"), records of telephone conversations, handwritten and typewritten notes of
20   any kind, statements, reports, minutes, recordings, transcripts and summaries of
21   meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes,
22   discs, printouts and records of all types, studies, instruction manuals, policy manuals
23   and statements, books, pamphlets, invoices, canceled checks and every other device or
24   medium by which or through which information of any type is transmitted, recorded or
25   preserved.  Without any limitation on the foregoing, the term "DOCUMENT" shall
26   include all copies that differ in any respect from the original or other versions of the
27   DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or
28

1 | originals containing initials, comments, notations, insertions, corrections, marginal
2 | notes, amendments or any other variation of any kind.

3 |       13.   "COMMUNICATION" or "COMMUNICATIONS" means and
4 | includes any disclosure, transfer or exchange of information between two or more
5 | PERSONS, whether orally or in writing, including without limitation, any conversation
6 | or discussion by means of meeting, letter, telephone, note, memorandum, telegraph,
7 | telex, telecopier, electronic mail, or any other electronic or other medium, including
8 | without limitation in written, audio or video form.

9 |       14.   "IDENTIFY" or "IDENTITY" means the following:

10 |       (a)   with reference to an individual or individuals, means to state,
11 | fully and separately as to each, such individual's full name, any known business title,
12 | current or last known business affiliation, current or last known residential address,
13 | current or last known business address, current or last known relationship to MGA, and
14 | current or last known telephone number.

15 |       (b)   with reference to an entity or entities, means to state, fully and
16 | separately as to each, such entity's full name, state (or country) of incorporation or
17 | organization, present or last known address, and present or last known telephone
18 | number.

19 |       (c)   with reference to a BRATZ PRODUCT, means to state, fully
20 | and separately as to each, the full name of the product; the number of the product; the
21 | SKU of the product; any other applicable designation of the product useful for
22 | identification; the period of time during which the product was, has been or will be
23 | SOLD; and the IDENTITY of each PERSON who has licensed from YOU the right to
24 | SELL such BRATZ PRODUCT.

25 |       (d)   with reference to any other DOCUMENT or DOCUMENTS,
26 | means to describe each DOCUMENT by Bates number.   In the event that a
27 | DOCUMENT does not have a Bates number, IDENTIFY means, with respect to each
28 | such DOCUMENT, to provide a complete description of it such that it may be the

-5-

EXHIBIT _____ 28 _____

PAGE _____ 483 _____

MATTEL'S SIXTH SET OF INTERROGATORIES

1  subject of a request for the production of documents, including by stating the date,

2  identity of the author, addressee(s), signatories, parties, or other PERSONS identified

3  therein, its present location or custodian and a description of its contents.

4        15.    "Any" as used in these interrogatories includes the word "all," and

5  the word "all" as used in these interrogatories includes the word "any."

6        16.    The singular form of a noun or pronoun includes within its meaning

7  the plural form of the noun or pronoun so used, and vice versa; the use of the masculine

8  form of a pronoun also includes within its meaning the feminine form of the pronoun so

9  used, and vice versa; the use of any tense of any verb includes also within its meaning

10  all other tenses of the verb so used, whenever such construction results in a broader

11  request for information; and "and" includes "or" and vice versa, whenever such

12  construction results in a broader disclosure of documents or information.

13

14                         **Instructions**

15

16        A.    When    an    interrogatory    requests    disclosure    of    a

17  COMMUNICATION or other information as to which YOU claim any privilege or

18  protection as a ground for nondisclosure, identify each PERSON who participated in or

19  had knowledge of the COMMUNICATION or other information and provide the

20  following:

21            (i)     the privilege or protection that YOU claim precludes disclosure;

22           (ii)    the subject matter of the COMMUNICATION or information

23                    (without revealing the content as to which the privilege is claimed);

24                    and

25           (iii)   any additional facts or grounds on which YOU base YOUR claim

26                    of privilege or protection.

27        B.    When an interrogatory requests that YOU provide information,

28  YOU are required to supply all information known by or available to YOU or

1   YOUR employees, officers, directors, agents, representatives, attorneys and experts.

2   If YOU cannot completely answer the interrogatory after making diligent efforts to

3   do so, please so state.  Then describe in detail all efforts made to answer the

4   interrogatory; identify every PERSON involved in such efforts; and state the

5   additional information YOU need, if any, to respond completely to the interrogatory.

6

7                                            **Interrogatory**

8

9   INTERROGATORY NO. 45:

10              IDENTIFY each BRATZ PRODUCT that has been SOLD by YOU or

11   YOUR licensees and, for each such BRATZ PRODUCT, state fully and separately (a)

12   the number of units of each such BRATZ PRODUCT SOLD by YOU or YOUR

13   licensees, (b) the gross and net revenue received by YOU from such SALES of each

14   such BRATZ PRODUCT, (c) all costs YOU have incurred in connection with each

15   such BRATZ PRODUCT, including but not limited to YOUR cost of goods sold, and

16   (d) YOUR gross and net profits from each such BRATZ PRODUCT.

17

18   DATED:  October 23, 2007        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

19

20                                  By Michael T. Zeller

21                                     Michael T. Zeller
                                       Attorneys for Plaintiff
22                                     Mattel, Inc.

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2     I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service,

3   1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4     On October 23, 2007, I served true copies of the following document(s) described as

5   **1.**     **MATTEL, INC.'S SIXTH SET OF INTERROGATORIES [INTERROGATORY NO. 45 TO REPLACE PRIOR, AND WITHDRAWN,**

6         **INTERROGATORY NO. 45 IN MATTEL, INC.'S FOURTH SET OF INTERROGATORIES]**

7

8     on the parties in this action as follows:

9   Thomas Nolan, Esq.                  Mark E. Overland, Esq.
    **SKADDEN ARPS SLATE MEAGHER**     David C. Scheper, Esq.

10   **& FLOM, LLP**                     Alexander H. Cote
    300 South Grand Avenue, Suite 3400     **OVERLAND BORENSTEIN**

11   Los Angeles, CA 90071            **SCHEPER & KIM LLP**
                           300 South Grand Avenue, Suite 2750

12                            Los Angeles, CA 90071-3144

13

14

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s)

15  being served.

16     I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

17

    Executed on October 23, 2007, at Los Angeles, California.

18

19

20                           NOW LEGAL -- Dave Quintana

21

22

23

24

25

26

27

28              EXHIBIT _28_

             PAGE _486_

07209/2263102.1                  -1-

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On October 23, 2007, I served true copies of the following document(s) described as

1.      **MATTEL, INC.'S SIXTH SET OF INTERROGATORIES [INTERROGATORY NO. 45 TO REPLACE PRIOR, AND WITHDRAWN, INTERROGATORY NO. 45 IN MATTEL, INC.'S FOURTH SET OF INTERROGATORIES]**

on the parties in this action as follows:

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
**KEKER & VAN NEST, LLP**
710 Sansome Street
San Francisco, CA 94111

**BY FEDEX:** I deposited such document(s) in a box or other facility regularly maintained by FedEx, or delivered such document(s) to a courier or driver authorized by FedEx to receive documents, in sealed envelope(s) or package(s) designated by FedEx with delivery fees paid or provided for, addressed to the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 23, 2007, at Los Angeles, California.

Charlene Ho

EXHIBIT _28_

PAGE _487_

07209/2241940.1

-1-

# EXHIBIT 29

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 30

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 31

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 32

**Attachments:** MGA 3896247.xls; MGA 3896248.xls; MGA 3896249.xls; MGA 3896250.xls; MGA
3896239.xls; MGA 3896240.xls; MGA 3896241.xls; MGA 3896242.xls; MGA 3896243.xls;
MGA 3896244.xls; MGA 3896245.xls; MGA 3896246.xls

## REDACTED

**From:** Weinstein, Ryan [mailto:Ryan.Weinstein@skadden.com]

EXHIBIT ___32___
___514___
PAGE

**Sent:** Tuesday, July 22, 2008 10:14 PM
**To:** Jon Corey
**Cc:** Roth, Carl A (LAC)
**Subject:** RE: Mattel v. MGA -- Part 2 of 3

Production Part 2 of 3.

All documents are designated "Attorneys' Eyes Only"

---

**From:** Jon Corey [mailto:joncorey@quinnemanuel.com]
**Sent:** Thursday, July 17, 2008 11:22 PM
**To:** Roth, Carl A (LAC)
**Cc:** Aguiar, Lauren E (NYC); Nolan, Thomas J (LAC); Herrington, Robert J (LAC); Michael T Zeller; Dylan Proctor
**Subject:** Mattel v. MGA

Carl,

With the verdict in Phase 1A, I write to follow up on two outstanding matters regarding MGA and Larian financial information.

First, as you will recall, the Court compelled Isaac Larian to provide Mattel with current financial information relating to his net worth. We expect to call Mr. Larian early on in Mattel's case. Please confirm that Mr. Larian will provide complete financial information as of year end 2007 and as of June 30, 2008 no later than next Wednesday, July 23, 2008 so that Mattel's experts may take that information into account. Please further confirm that said financial information will include (a) any and all assets owned or controlled by him or by any entity in which he or any of his trusts has a controlling interest, and (b) any distributions received by him or any Larian-affiliated trusts since June 2007.

Second, Mattel again asks MGA to provide financial information (audited financial statements, operating statements, revenues and costs by product, etc., distributions, etc.) through June 2008. Please be advised that Mattel has projected MGA financial results for MGA through June 2008. Unless MGA agrees to produce updated financial information, which MGA surely possesses, then Mattel will seek to preclude MGA from introducing any actual information not identified on the current exhibit list to challenge Mattel's projections or the assumptions upon which those projections are based.

Best regards,

---
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof.

EXHIBIT  32

PAGE  545

Further information about the firm, a list of the Partners and their professional qualifications will be
provided upon request.
************************************************

EXHIBIT ___32___

PAGE ___546___

# EXHIBIT 33

**RECEIVED**

JUL 3 1 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
213.687.5526
DIRECT FAX
213.621.5526
EMAIL ADDRESS
RYAN.WEINSTEIN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEWARK
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

July 31, 2008

Jon Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

RE:   Mattel v. MGA

Dear Jon:

Enclosed please find a CD containing documents Bates numbered MGA 3896237 - MGA 3896256, MGA 3896257R, MGA 3896500 - MGA 3896502 and MGA 3896565. All of the above documents were previously produced to Mattel via e-mail.

Additionally, all documents on the CD have been designated "Confidential-Attorneys' Eyes Only" under the stipulated Protective Order.

Sincerely,

Ryan Weinstein   by sw

Ryan Weinstein

cc:   Carl Roth, Esq.

EXHIBIT 33
PAGE 547



EXHIBIT ___33___

PAGE ___548___

RECEIVED

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP   JUL 3 1 2008

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
213.687.5526
DIRECT FAX
213.621.5526
EMAIL ADDRESS
RYAN.WEINSTEIN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEWARK
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

July 31, 2008

Jon Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

RE:    Mattel v. MGA

Dear Jon:

    Enclosed please find a CD containing one document Bates numbered MGA
3896566.  This document is hereby designated "Confidential- Attorneys' Eyes Only"
under the stipulated Protective Order.

Sincerely,

Ryan Weinstein    by MMC

Ryan Weinstein

cc:    Carl Roth, Esq.

523275.01-Los Angeles Server 2A

EXHIBIT ___33___

PAGE ___547___

MSW - Draft July 31, 2008 - 4:05 PM



EXHIBIT 33

PAGE 550

RECEIVED

JUL 3 1 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
213.687.5526
DIRECT FAX
213.621.5526
EMAIL ADDRESS
RYAN.WEINSTEIN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEWARK
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

July 31, 2008

Jon Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

RE:   Mattel v. MGA

Dear Jon:

Pursuant to the parties' Stipulated Agreement Re Expert Discovery for Phase 1, please find enclosed a CD containing documents produced on behalf of Paul K. Meyer, Bates labeled PKM 07498 through PKM 10497. All documents are hereby designated "Confidential- Attorneys' Eyes Only" under the stipulated Protective Order.

Sincerely,

Ryan Weinstein   by soc

Ryan Weinstein

cc:   Carl Roth, Esq.

EXHIBIT __33__

PAGE __551__

523277.01-Los Angeles Server 2A

MSW - Draft July 31, 2008 - 4:07 PM



EXHIBIT 33

PAGE 552

# EXHIBIT 34

**CONFORMED COPY**

FILED

BY:

2007 AUG 21  PM 2:00

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

10

11 CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                          JAMS Reference No. 1100049530
12            Plaintiff,

13      v.                                Consolidated with
                                          Case No. CV 04-09059
14 MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15            Defendant.                  **ORDER GRANTING MATTEL'S
                                          MOTION TO COMPEL MGA TO**
16                                        **ANSWER REQUESTS FOR
                                          ADMISSION**
17 CONSOLIDATED WITH
   MATTEL, INC. v. BRYANT and
18 MGA ENTERTAINMENT, INC. v. MATTEL,
   INC.
19

20

21

22

23                    I. INTRODUCTION

24      On May 25, 2007, Mattel filed a "Motion To Compel MGA To Answer Requests For

25 Admission And To Compel Amended Answers Or Order Requests Admitted And For Monetary

26 Sanctions." On June 5, 2007, MGA filed an opposition, and on June 12, 2007, Mattel filed a

27 reply. Thereafter the motion was deferred pending the resolution of MGA's motion to dismiss

28
   Bryant v. Mattel, Inc.,                                                          1
   CV-04-09049 SGL (RNBx)

EXHIBIT 34

PAGE 553

and completion of the meet and confer process. <u>See</u> Order Deferring Mattel's Motion to Compel MGA to Answer Requests for Admission. On June 27, 2007, Judge Larson entered an order denying MGA's motion to dismiss Mattel's trade secret claims, and on August 9, 2007, Mattel submitted an updated Statement of Rule 37-1 Compliance. Also on August 9, 2007, the parties submitted a joint statement indicating that they were able to resolve substantially all of the issues raised in Mattel's motion. As a result of the parties' meet and confer efforts, only the following requests for admission remain in dispute: Nos. 186-190, 192, 193, 199, 200, 206, 207, 213, 214, 222-224, 226, 228, 230, 232, 234, 236, 238 and 240 of Mattel's Third Set of Requests for Admission. Mattel also continues to seek monetary sanctions with respect to the requests for admission identified above.

For the reasons set forth below, Mattel's motion to compel is granted and the motion for sanctions is denied.

II. BACKGROUND

On February 28, 2007, Mattel propounded its Third Set of Requests for Admission to MGA (the "Requests for Admission"). Among other things, the requests for admission ask MGA to admit that certain copyrighted works are derivative of other Bratz works and that certain copyrighted works are "substantially similar" to other Bratz works (Nos. 192, 193, 199, 200, 206, 207, 213, 214, 222-224, 226, 228, 230, 232, 234, 236, 238, and 240).[1] Other requests ask MGA to admit certain facts pertaining to statements MGA made to the press about MGA's and Mattel's labor practices (Nos. 186-190). The National Labor Committee issued a report titled "Made in China: The Sweatshop Behind the Bratz" documenting "sweatshop" conditions and labor abuses at the Hua Tai 4K factory in China where Bratz dolls are manufactured. According to Mattel, MGA stated in a press release that "it is not familiar with the company named in the report," that "MGA uses first rate factories in the orient to make its goods," and that "[t]he same factories make products for the world's biggest toy manufacturers including Mattel." Associated Press

---

[1]  Hereinafter, these requests are collectively referred to as the "requests for admission regarding copyright registrations."

EXHIBIT _34_
PAGE _554_

2

1   article dated December 22, 2006, Kidman Decl., Ex. 21. Mattel's requests for admission ask

2   MGA to admit that the Hua Tai 4k factory is one of the factories used by MGA to manufacture

3   Bratz dolls (No. 186), that MGA made the above-reference statements to the media (Nos. 187-

4   188), that as of the date of those statements, the Hua Tai 4K factory did not manufacture products

5   for Mattel (No. 189), and that MGA knew the Hua Tai 4K factory did not manufacture products

6   for Mattel (No. 190).

7        On March 30, 2007, MGA served its Responses objecting to the requests for admission

8   regarding copyright registrations on the grounds that they called for "a legal conclusion" and "the

9   disclosure of attorney-client privileged information or information protected from disclosure by

10  the work-product doctrine, joint defense or common interests privilege or other privilege."

11  Kidman Decl., Ex. 11. As for the remainder of the requests for admission at issue (Nos. 186-

12  190), MGA objected that the requests were "vague and ambiguous" and sought information that

    was not relevant to any claim or defense in the suit. The instant motion ensued.

13       With respect to the requests for admission regarding copyright registrations, Mattel

14  contends that Rule 36, Fed.R.Civ.P., authorizes requests that call for a legal conclusion so long as

15  the legal conclusion relates to the facts of the case. Mattel contends that it has sued MGA for

16  copyright infringement, and therefore the requests for admission regarding copyright registrations

17  clearly relate to the facts of the case. Further, Mattel contends that MGA's privilege and work

18  product objections are without merit. Mattel argues that a party cannot avoid answering requests

19  for admission that involve the application of law to fact by claiming that it needs to confer with

20  counsel in order to do so. Mattel contends that to hold otherwise would effectively gut the

21  provision of Rule 36 authorizing such requests.

22       As to the remaining requests for admission, Mattel contends that they seek admissions that

23  are clearly relevant to its claim that MGA has engaged in unfair competition by, among other

24  things, "repeatedly issu[ing] false and misleading press releases" about Mattel. Mattel's

25  Counterclaim, ¶¶81 and 165, Kidman Decl., Ex. 7. Mattel also contends that the requests for

26  admission seek information relevant to Mattel's defenses to MGA's unfair competition claims

27  and causation of alleged damages on those claims. For example, Mattel contends that the requests

28

1   for admission could show that any decline in sales, lost profits or loss of goodwill and reputation

2   MGA seeks to attribute to Mattel's conduct was caused or contributed to the public's negative

3   reaction to MGA's alleged "sweatshop" labor practices.

4        In opposition, MGA stands by its objections that the requests for admission regarding

5   copyright registrations are improper because they call for a legal conclusion and require the

6   disclosure of information protected by the attorney-client privilege and work product doctrine.

7   MGA reasons that any knowledge it could have regarding whether copyright works are

8   "derivative" or "substantially similar" to other works must necessarily come from the opinions of

9   its counsel.

10       MGA contends that the remaining requests regarding its comments to the press are

11  irrelevant to any claim or defense. MGA points out that Mattel's counterclaims do not mention

12  any comments regarding the Hua Tai 4K factory or MGA's or Mattel's labor practices. Rather,

13  Mattel's counterclaims are based upon alleged comments by Isaac Larian regarding Mattel's

14  MyScene My Bling Bling dolls with real gems. Furthermore, MGA contends that the Request

15  Nos. 186-190 cannot support any defense against MGA's unfair competition claims because those

16  claims were filed well before the alleged press statements were made.

### III. DISCUSSION

17       Rule 36 of the Federal Rules of Civil Procedure governs requests for admission and

18  provides, in pertinent part, that "[a] party may serve upon any other party a written request for the

19  admission, for purposes of the pending action only, of the truth of any matters within the scope of

20  Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the

21  application of law to fact, including the genuineness of any documents described in the request."

22  Fed.R.Civ.P. 36(a). Further, "[a] party who considers that a matter of which an admission has

23  been requested presents a genuine issue for trial may not, on that ground alone, object to the

24  request; the party may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons

25  why the party cannot admit or deny it." Id.

26       "Rule 36 serves two vital purposes, both of which are designed to reduce trial time.

27  Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 34

PAGE 556

4

1   from the case, and secondly, to narrow the issues by eliminating those that can be." The Advisory

2   Committee Notes to the 1970 Amendment to Rule 36; see also Asea, Inc. v. Southern Pac.

3   Transp. Co., 669 F.2d 1242, 1245 (9th Cir. 1981) ("The purpose of Rule 36(a) is to expedite trial

4   by establishing certain material facts as true and thus narrowing the range of issues for trial.").

5       The Advisory Committee Notes to the 1970 Amendment to Rule 36 provide the following

6   additional guidance:

> As revised, the subdivision provides that a request may be made to admit
> any matters within the scope of Rule 26(b) that relate to statements or opinions of
> fact or of the application of law to fact. It thereby eliminates the requirement that
> the matters be "of fact." This change resolves conflicts in the court decisions as
> to whether a request to admit matters of "opinion" and matters involving "mixed
> law and fact" is proper under the rule. . . .
>
>      *   *   *
>
> Not only is it difficult as a practical matter to separate "fact" from
> "opinion," see 4 *Moore's Federal Practice* ¶36.04 (2d ed. 1966); cf. 2A Barron &
> Holtzoff, *Federal Practice and Procedure* 317 (Wright ed. 1961), but an
> admission on a matter of opinion may facilitate proof or narrow the issues or both.
> An admission of a matter involving the application of law to fact may, in a given
> case, even more clearly narrow the issues. For example, an admission that an
> employee acted in the scope of his employment may remove a major issue from
> the trial. In *McSparran v Hanigan*, [225 F. Supp. 628 (E.D. Pa. 1963)], plaintiff
> admitted that "the premises on which said accident occurred, were occupied or
> under the control" of one of the defendants, 225 F.Supp. at 636. This admission,
> involving law as well as fact, removed one of the issues from the lawsuit and
> thereby reduced the proof required at trial. The amended provision does not
> authorize requests for admissions of law unrelated to the facts of the case.

1970 Advisory Committee Notes to Rule 36, Fed.R.Civ.P.

<u>Requests For Admission re Copyright Registrations (Nos. 192, 193, 199,</u>

<u>200, 206, 207, 213, 214, 222-224, 226, 228, 230, 232, 234, 236, 238, and 240)</u>

    Mattel's requests for admission regarding copyright registrations are written in essentially

the same format. For example, Request No. 192 asks MGA to "[a]dmit that the work registered

as VA 1-090-287 is a derivative of the work registered as VA 1-218-487." Kidman Decl., Ex. 11.

Request No. 193 asks MGA to "[a]dmit that the work registered as VA 1-090-287 is substantially

similar to the work registered as VA 1-218-487." Id.

    Rule 36 plainly states that requests for admission may "relate to statements or opinions of

fact or the application of law to fact." Mattel's requests for admission fall within this permissible

category. Courts have required parties to answer requests for admission similar to Mattel's requests. For example, in McSparran, supra, the plaintiff admitted that "the premises on which said accident occurred, were occupied or under the control" of one of the defendants. In Marchand v. Mercy Med. Ctr., 22 F.3d 933, 937 (9th Cir. 1994), the Ninth Circuit found that a request to admit that defendant's care and treatment of plaintiff failed to comply with the "applicable standards of care" was permissible. In First Options of Chicago, Inc. v. Wallenstein, 1996 WL 729816 (E.D. Pa. 1996), the court ordered defendants to answer requests to admit that they "owed a fiduciary duty" to certain creditors to preserve corporate assets. Id. at *3. In Treister v. PNC Bank, 2007 WL 521935 (S.D. Fla. 2007), the court found that a request for defendant to admit that it was not required to provide plaintiffs with copies of cancelled checks drawn on their accounts "clearly calls for an application of law to fact." Id. at *2.

Despite the stated purpose of the 1970 amendments to Rule 36 to "resolve conflicts in the court decisions as to whether a request to admit matters of 'opinion' and matters involving 'mixed law and fact' is proper under the rule, there apparently continues to exist a split of authority. MGA cites several cases for the proposition that a request for admission calling for legal conclusion is improper. See e.g., Playboy Enterprises, Inc. v. Welles, 60 F.Supp.2d 1050 (S.D. Cal. 1999) (defendant allowed to object to requests asking her to admit she was a public figure and admit that a contract provision required her to obtain permission from plaintiff before using "Playmate of the Year" because the requests asked for a conclusion of law); Tulip Computers Int'l. B.V. v. Dell Computer Corp., 210 F.R.D. 100, 108 (D. Del. 2002) ("Moreover, requests that seek legal conclusions are not allowed under Rule 36."); Border Collie Rescue, Inc. v. Ryan, 418 F.Supp.2d 1330, n. 12 (M.D. Fla. 2006) (requests asking defendant to admit that he defamed plaintiffs and "knowingly and maliciously published false statements of fact" concerning plaintiffs deemed improper); Tuvalu v. Woodford, 2006 WL 3201096, at *7 (E.D. Cal. 2006) ("[R]equests for admission should not be used . . . to demand that the other party admit the truth of a legal conclusion, even if the conclusion is attached to operative facts. . ." ) (quotations omitted); and Fuentes v. Knowles, 2007 WL 1946619, at *2 (E.D. Cal. 2007) (requests asking defendant to admit that prisoners should be provided access to medical care, that defendant should

EXHIBIT ___34___

PAGE ___558___

1   not delay access to care, and that defendant was aware of his responsibilities under certain

2   caselaw and statute were held improper as seeking "interpretations of law which is outside the

3   scope of defendant's knowledge" and legal conclusions). None of these cases are binding

4   authority, however. Furthermore, without knowing all of the factual circumstances that led to the

5   decisions in each of the cases cited above, it appears that most of them are inconsistent with the

6   plain language of Rule 36 and the guidelines set forth in the Advisory Committee Notes. See e.g.,

7   Playboy Enterprises, Inc., supra; Tulip, supra, Border Collie Rescue, Inc., supra. Rule 36

8   expressly allows requests for admission relating to "the application of law to fact." Fed.R.Civ.P.

9   36(a). Furthermore, the Advisory Committee Notes provide two examples of such requests: an

10  admission that an employee acted in the scope of his employment; and an admission that the

11  premises on which an accident occurred were occupied or under the control of a defendant. The

12  Advisory Committee Notes make it clear that these types of requests calling for legal conclusions

13  are permissible, and in doing so, distinguish the requests that call for admissions of law unrelated

14  to the facts of the case, which are not authorized.

15          Mattel's requests for admission regarding copyright registrations do not ask for pure

16  conclusions of law unrelated to the facts of the case, and MGA does not contend otherwise. Each

17  of Mattel's requests relates to the copyrighted works allegedly owned by MGA. Furthermore,

18  these requests are clearly designed to help narrow the issues for trial, which is a major purpose of

19  Rule 36. See 1970 Advisory Committee Notes to Rule 36, Fed.R.Civ.P. Therefore, MGA's

20  "legal conclusion" objection is overruled.

21          MGA's privilege and work product objections are also without merit. The fact that MGA

22  may need to consult with counsel to respond to the requests does not make the response

23  privileged. To hold otherwise would effectively gut the provision of Rule 36 authorizing requests

24  that call for the application of law to fact. See also Convergent Business Systems, Inc. v.

25  Diamond Reporting, Inc., 1989 WL 92038, at *1 (E.D.N.Y. 1988) ("Seeking the facts and

26  documents which support a particular allegation in a complaint violates neither the attorney-client

27  or work product privileges.").

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __34__

PAGE __559__

7

1    Mattel's motion is granted as to the requests for admission regarding copyright

2   registrations.

3

4    ### Requests for Admission re MGA's Alleged Statements To The Press (Nos. 186-190)

5    The requests for admission regarding MGA's alleged statements to the press seek relevant

6   information within the scope of Rule 26(b)(1), Fed.R.Civ.P.  In its counterclaims, Mattel alleges

7   that MGA made false statements about Mattel's MyScene My Bling Bling products.  Mattel

8   further alleges that "[s]uch conduct is not an isolated incident.  MGA and Larian, in an effort to

9   gain an unfair advantage, repeatedly issued false and misleading press releases."  Mattel's

10  Counterclaims, ¶81, Kidman Decl. Ex. 7.  Request Nos. 186-190 are directly relevant to MGA

11  and Larian's allegedly ongoing conduct.  These requests for admission are also relevant to support

12  Mattel's defense against MGA's unfair competition claim.  Mattel intends to show that the public

13  report regarding MGA's alleged "sweatshop" labor practices may have caused or contributed to

14  the decline in sales, profits, and dilution of goodwill and reputation allegedly caused by Mattel's

    anticompetitive conduct.

15   Therefore, MGA's objection based upon relevancy is overruled and MGA is ordered to

16  admit or deny Request Nos. 186-190 consistent with Rule 36(a), Fed.R.Civ.P.

17                              ### IV. CONCLUSION

18   For the reasons set forth above, Mattel's motion to compel is granted.  MGA shall provide

19  responses to the requests for admission no later than August 30, 2007.  Mattel's motion for

20  sanctions is denied.

21   Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

22  Master, Mattel shall file this Order with the Clerk of Court forthwith.

23

24  Dated:  August 20 , 2007

25

26                                   HON. EDWARD A. INFANTE (Ret.)
                                     Discovery Master

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                        8

EXHIBIT ___34___

PAGE ___560___

## **PROOF OF SERVICE BY E-MAIL**

I, Sandra Chan, not a party to the within action, hereby declare that on August 20, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL MGA TO ANSWER REQUESTS FOR ADMISSION in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 20, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT __34__

PAGE __561__

# EXHIBIT 35

1    DIANA M. TORRES (S.B. #162284)
      PAULA E. AMBROSINI (S.B. #193126)
2    ALICIA C. MEYER (S.B. #230189)
      O'MELVENY & MYERS, LLP
3    400 South Hope Street
      Los Angeles, California 90071-2899
4    Telephone: (213) 430-6000
      Facsimile: (213) 430-6407

5

6    Attorneys for Defendant-in-Intervention,
      MGA Entertainment, Inc.

**RECEIVED**

FEB 0 7 2005

7

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10    MATTEL, INC., a Delaware        Case No. CV04-9059 NM (RNBx)
      Corporation,
11                        **MGA'S FIRST SET OF**
                             **INTERROGATORIES TO MATTEL,**
12            Plaintiff,             **INC.**

13       v.

14    CARTER BRYANT, an individual,
      and MGA ENTERTAINMENT,
15    INC., a California Corporation

16           Defendant and
            Defendant-in-
17           Intervention.

18

19    PROPOUNDING PARTY:    MGA ENTERTAINMENT, INC.

20    RESPONDING PARTY:      MATTEL, INC.

21    SET:                     ONE

22

23

24

25

26

27

28

EXHIBIT _35_

PAGE _562_

1     Defendant-In-Intervention, MGA Entertainment Inc. ("MGA"), hereby

2   requests that Plaintiff, Mattel Inc. ("Mattel") answer the following Interrogatories

3   separately, fully, and under oath, pursuant to Rule 33 of the Federal Rules of Civil

4   Procedure, within thirty (30) days of service, in accordance with the definitions and

5   instructions set forth herein.

6                           **DEFINITIONS**

7     1. "BRATZ" means and refers to each image, character, logo, doll, toy,

8   accessory, product, packaging or other thing or matter that is or has ever been

9   manufactured, marketed or sold by MGA, or others under license, as part of a line of

10  goods or merchandise commonly known as, or sold and marketed under the "Bratz"

11  trademark or trade dress including but not limited to the "BRATZ CONCEPT,"

12  "FIRST BRATZ DOLLS," "BRATZ DOLLS," "BRATZ PACK", "LIL' BRATZ,"

13  "BRATZ PETZ," "BRATZ BABYZ," and "BRATZ BOYZ.

14    2. "BRATZ CONCEPT" means and refers to each "BRATZ"-related image,

15  drawing, picture, sculpt, mold, prototype and any other form of artwork predating the

16  FIRST BRATZ DOLLS, examples of which have been the subject of Mr. Bryant's

17  testimony and produced by Mr. Bryant bearing Bates serial numbers Bryant 00175-

18  177; 00179-00182; 00189-00190; 00192-00196; 00198-00216; 00218; 00341; 00972;

19  01014; and 01116-01118.

20    3. "FIRST BRATZ DOLLS" means and refers to each image, character, logo,

21  doll, toy, accessory, product, packaging or other thing or matter that is or has ever

22  been manufactured, marketed or sold by MGA, or others under license, as part of a

23  line of goods or merchandise commonly known as, or sold and marketed under the

24  "Bratz" trademark or trade dress and consisting of the following:  "Bratz Cloe", SKU

25  248521; "Bratz Cloe", SKU 248538; "Bratz Jade", SKU 248545; "Bratz Sasha, SKU

26  248552; "Bratz Yasmin", SKU 248569; "Bratz Pajama Power Fashion", SKU

27  248576; "Bratz Study Hall Fashion", SKU 248583; and "Bratz Dynamite Dance

28  Fashion", SKU 248682.

EXHIBIT _35_

1     PAGE _563_

1    4. "BRATZ DOLLS" means and refers to each image, character, logo, doll,

2    toy, accessory, product, packaging or other thing or matter that is or has ever been

3    manufactured, marketed or sold by MGA, or others under license, as part of a line of

4    goods or merchandise commonly known as, or sold and marketed under the "Bratz"

5    trademark or trade dress excluding the "FIRST BRATZ DOLLS", "LIL' BRATZ,"

6    "BRATZ PETZ," and "BRATZ BABYZ" and including, without limitation, the

7    styling head commonly known as or sold and marketed as the "Bratz Funky Fashion

8    Make Over" styling head, and specifically including, without limitation, the images,

9    characters, dolls, playsets and other products and toys called or referred to as, or

10   named or marketed in association with the names "Cloe", "Jade", "Sasha", "Yasmin",

11   "Meygan", "Dana", "Fianna", "Nevra", "Cameron", "Dylan", "Eitan", "Koby",

12   "Cade", "Ailani", "Nazalia", "Talia", "Zada", "Mikko", "Colin", "Deavon", "Lakin",

13   "Flaunt It," "Beach Party", "Micro Bratz", "Xpress It", "Bratz Boyz", "Funk 'n'

14   Glow", "Funky Fashion Makeover", "Holiday Bratz – Sweetheart", "Holiday Bratz –

15   Spring Fling", "Holiday Bratz – Independence Dance", "Slumber Party", "Strut It",

16   "Spring Break", "Formal Funk", "Bratz Boyz Formal Funk", "Wintertime

17   Wonderland", "Style It!", "Funky Fashion Makeover", "Funk Out!", "Sun-Kissed

18   Summer", "Girls Nite Out!", "Wild Life Safari", and any other released, or yet to be

19   released, BRATZ named character or product theme.

20   5. "BRATZ PACK" means and refers to any collection, compilation or

21   grouping of two or more images, characters or dolls that are or have ever been

22   manufactured, marketed or sold by MGA, or others under license, as part of a line of

23   goods or merchandise commonly known as, or sold and marketed under the "Bratz"

24   trademark or trade dress including, without limitation, the collection, compilation or

25   grouping of four female images, characters or dolls individually named, called or

26   referred to as "Bratz Cloe", "Bratz Jade", "Bratz Sasha", and "Bratz Yasmin" and any

27   other similar collection, compilation or grouping of two or more images, characters or

28   dolls, male or female, and specifically including, without limitation, the images,

EXHIBIT ___35___

PAGE ___564___

2

1  characters and dolls called or referred to as, or named or marketed in association with

2  the names "Cloe", "Jade", "Sasha", "Yasmin", "Meygan", "Dana", "Fianna",

3  "Nevra", "Cameron", "Dylan", "Eitan", "Koby", "Cade", "Ailani", "Nazalia",

4  "Talia", "Zada", "Mikko", "Colin", "Deavon", "Lakin", and any other released, or yet

5  to be released, BRATZ character.

6      6.  "LIL' BRATZ" means and refers to each image, character, logo, doll, toy,

7  accessory, product, packaging or other thing or matter that is or has ever been

8  manufactured, marketed or sold by MGA, or others under license, as part of a line of

9  goods or merchandise commonly known as, or sold and marketed under the "Bratz"

10  trademark or trade dress and commonly labeled, called, referred to, named or

11  identified as "LIL' BRATZ", and specifically including, without limitation, the

12  images, characters, dolls, playsets and other products and toys called or referred to as,

13  or named or marketed in association with the names "Cloe", "Yasmin", "Sasha",

14  "Jade", "Ailani", "Nazalia", "Talia", "Zada", "Lil' Boyz", "Cameron", "Dylan",

15  "Eitan", "Koby", "Mikko", "Colin", "Deavon", "Lakin", "Lil' Bratz Slumber Party",

16  "Lil' Bratz Tote", "Lil' Bratz Spring Break", "Lil Bratz Dancefloor Funk", "Lil' Boyz

17  Dancefloor Funk", and any other released, or yet to be released, LIL' BRATZ

18  character or product theme.

19      7.  "BRATZ PETZ" means and refers to each image, character, logo, doll, toy,

20  accessory, product, packaging or other thing or matter that is or has ever been

21  manufactured, marketed or sold by MGA, or others under license, as part of a line of

22  goods or merchandise commonly known as, or sold and marketed under the "Bratz"

23  trademark or trade dress and commonly labeled, called, referred to, named or

24  identified as "BRATZ PETZ", and specifically including, without limitation, the

25  images, characters and toys called or referred to as, or named or marketed in

26  association with the names, "Bratz Catz", "Brigitte", "Jolie", "Kendall", "Daphne",

27  "Bratz Petz Tokyo Catz", "Kyoto", "Cho", "Nami", "Yukiko", "Bratz Petz Foxz",

28  "Carly", "Reilly", "Shayna", "Bree", "Bratz Petz Dogz", "Shae", "Kali", "Pilar",

EXHIBIT __35__

3       PAGE __565__

"Abby", and any other released, or yet to be released, BRATZ PETZ character or product theme.

8. "BRATZ BABYZ" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license, as part of a line of goods or merchandise commonly known as, or sold and marketed under the "Bratz" trademark or trade dress and commonly labeled, called, referred to, named or identified as "BRATZ BABYZ", and specifically including, without limitation, the images, characters and dolls called or referred to as, or named or marketed in association with the names, "Cloe", "Sasha", "Jade," "Yasmin", and any other released, or yet to be released, BRATZ BABYZ character or product theme.

9. "BRATZ BOYZ" means and refers to each male image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license, as part of a line of goods or merchandise commonly known as, or sold and marketed under the "Bratz" trademark or trade dress and commonly labeled, called, referred to, named or identified as "BRATZ BOYZ", and specifically including, without limitation, the images characters, dolls, playsets and other products and toys called or referred to as, or named or marketed in association with the names "Cameron", "Dylan", "Eitan", "Koby", "Cade", "Mikko", "Colin", "Deavon", "Lakin", "Bratz Boyz Formal Funk", "Boyz Funk Out!", "Boyz Sun-Kissed Summer", and any other released, or yet to be released BRATZ BOYZ character or product theme.

10. "BRATZ INTELLECTUAL PROPERTY" means all intellectual and industrial property rights in and to BRATZ including, without limitation, all copyrights, patents, trademarks, industrial designs, trade secrets, contract and licensing rights, design rights, moral rights and trade dress rights, in any country of the world.

11. "BRYANT" means defendant Carter Bryant.

EXHIBIT __35__

4      PAGE __566__

12. "COMMUNICATION[S]" means any transmission of information from one person or entity to another, including, without limitation, by personal meeting, conversation, letter, telephone, facsimile or electronic mail. Each request that encompasses information relating in any way to communications to, from or within a business or corporate entity is hereby designated to mean, and should be construed to include, all communications by and between representatives, employees, agents or servants of the business or corporate entity.

13. "COMPLAINT" means and refers to the Complaint filed by Mattel Inc. in this matter on April 27, 2004 and now designated as Case No. CV 04-9059 NM (RNBx) in the United States District Court for the Central District of California.

14. "DOCUMENT[S]" incorporates the full meaning of Federal Rule of Civil Procedure 24, and shall be construed in the broadest sense to mean any and all writings, tangible things and property, of any kind, that are now or that have been in YOUR actual or constructive possession, custody or control, including, but not limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded, transcribed, graphic or photographic matter of any kind or nature, in, through, or from which information may be embodied, translated, conveyed or stored, whether an original, a draft or copy, however produced or reproduced, whether sent or received or neither, including, but not limited to, notes, memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports, inter- and intra-office COMMUNICATIONS, work papers, work sheets, work records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders, telephone records, telegrams, telexes, literature, invoices, contracts, purchase orders, estimates, recordings, transcriptions of recordings, records, books, pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs, video, audio and digital recordings, television commercials, story boards, website or other spot

EXHIBIT _35_

5

PAGE _567_

advertisements, movies, movie trailers, prototypes, products, diaries, calendars, charts, drawings, sketches, messages, photographs and data contained in or accessible through any electronic data processing system, including, but not limited to, computer databases, data sheets, data processing cards, computer files and tapes, computer disks, CD-ROMs, computer meta-data, microfilm, microfiche, electronic mail, website and web pages and transcriptions thereof and all other memorializations of any conversations, meetings and conference, by telephone or otherwise.  The term DOCUMENT also means every copy of a DOCUMENT, where such copy is not an identical duplicate of the original, whether because of deletions, underlinings, showing of blind copies, initialing, signatures, receipt stamps, comments, notations, differences in stationery or any other difference or modification of any kind.

15.    "MARKET RESEARCH" means any type of research, study, survey or analysis of consumers or potential consumers of a product or potential product including, without limitation, focus groups, consumer surveys, market analyses, behavioral analyses and consumer research.

16.    "MATTEL," "PLAINTIFF," "YOU" or "YOUR" means plaintiff MATTEL, Inc. and any of its past or present officers, directors, agents, employees, representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, entities and persons acting in joint venture or partnership relationships with YOU and any others acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

17.    MGA" means MGA Entertainment, Inc. and any of its past or present officers, directors, agents, employees, representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, entities and persons acting in joint venture or partnership relationships with MGA

EXHIBIT _35_

6    PAGE _568_

and any others acting on MGA's behalf, pursuant to its authority or subject to its control.

18.   "MGA PRODUCTS" means any and all products offered for sale by MGA Entertainment, Inc., other than BRATZ, including, without limitation, "4-Ever Best Friends" and "Alien Racers".

19.   "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

20.   "PROPERTY" or "PROPERTIES" means all ideas, concepts, rights, designs, proprietary and confidential information, and other intellectual and intangible property including, without limitation, copyrights, patents, trademarks, design rights and trade secrets.

21.   The singular form includes the plural, and vice versa.

22.   The terms "any" and "all" are interchangeable.

23.   The terms "and" and "or" shall be construed disjunctively and conjunctively, and each shall include the other whenever such dual construction will serve to bring within the scope of any interrogatory, information that would otherwise not be within its scope.

24.   As used herein, the terms "relating to" and "referring to" should each be construed in the broadest possible sense to mean concerning, consisting of, referring to, describing, discussing, constituting, evidencing, containing, reflecting, mentioning, pertaining to, citing, summarizing, analyzing or bearing any logical or factual connection with the matter discussed.

## INSTRUCTIONS

1.   Mattel is instructed to serve written responses to these Interrogatories

7

EXHIBIT _35_

PAGE _569_

1  upon MGA's counsel at O'Melveny & Myers LLP, 400 South Hope Street, Los
2  Angeles, California 90071.

3      2.    These Interrogatories are deemed to be continuing in nature. If, after
4  responding, Mattel discovers additional information responsive to any Interrogatory,
5  or part thereof, MGA requests that Mattel provide such information to MGA within
6  thirty days after acquiring knowledge of its existence or advise MGA in writing as to
7  why such additional information cannot be provided within the specified period.

8      3.    For any information withheld based on any ground, including privilege,
9  provide a written statement setting forth: (a) the identity of all person(s) from and to
10  whom the information has been communicated; (b) the names and organization
11  position, if any, of each such person; (c) a brief description of the subject matter of the
12  information; and (d) the legal ground upon which you rely in withholding the
13  information; and (e) if work product is asserted, the proceeding for or during which
14  the information was obtained or created.

15      4.    Whenever in these Interrogatories there is a request to "IDENTIFY" a
16  COMMUNICATION, the answering party shall state the date of the
17  COMMUNICATION, the places of origin and reception of the COMMUNICATION,
18  the persons present during any portion of the COMMUNICATION if oral, the type of
19  COMMUNICATION (*i.e.* letter, facsimile, face-to-face conversation, telephone, etc.),
20  the substance of the COMMUNICATION and the DOCUMENT(S), if any, that
21  constitute, record, show or refer to the COMMUNICATION.

22      5.    Whenever in these Interrogatories there is a request to state the
23  "IDENTITY" of a PERSON, the answering party shall set forth the person's name,
24  present or last known business address, residence address and telephone numbers,
25  dates of employment, job capacity, title, status, position, rank or classification or, with
26  respect to a non-natural person, the name and address of the principal office or place
27  of business, all names under which it is doing business or ever has done business, the
28  nature of the venture (*i.e.* sole proprietorship, partnership , corporation, etc.), and the

8

EXHIBIT 35

PAGE 570

identities of its officers, directors, partners or administrators.

6.     Whenever in these Interrogatories there is a request to state the "IDENTITY" of a DOCUMENT, the answering party shall identify, by name, all authors and recipients of the DOCUMENT, the date of the DOCUMENT, the person or entity who currently has possession, custody and control of the DOCUMENT, and describe the DOCUMENT in a manner sufficient for MGA to draft a discovery demand requesting production of the DOCUMENT.

7.     Whenever in these Interrogatories there is a request to "IDENTIFY" PROPERTY, the answering party shall describe the PROPERTY as specifically as possible, state the name and current employer, if known, of the author(s), inventor(s), owner(s) and any assignee(s) and licensee(s) of the PROPERTY, state any copyright registration, recordation information relative to a copyright interest, trademark registration and patent numbers of the PROPERTY, if any, and state the dates of conception, authorship, invention and reduction to practice of the PROPERTY.

## INTERROGATORIES

### INTERROGATORY NO. 1.:

State all facts, with particularity, and IDENTIFY all DOCUMENTS that support YOUR contention, if YOU so contend, that YOU have suffered harm as a result of any act or omission of MGA.

### INTERROGATORY NO. 2.:

For each fact stated in response to Interrogatory No. 1, IDENTIFY all PERSONS with knowledge of each fact.

### INTERROGATORY NO. 3.:

State, with particularity, the nature, amount, cause and calculation of every item of YOUR alleged damages, including, without limitation, general, actual and statutory damages, restitution, disgorgement of unlawful profits, lost profits, lost payments, lost

9

EXHIBIT 35
PAGE 571

revenues, lost monies, lost royalties or license fees, reputational harm, lost relationships, lost business opportunities, interest, attorneys' fees, costs, expenses, and any other form of injury or damage or quantifiable remedy that YOU seek to recover in this lawsuit.

**INTERROGATORY NO. 4.:**

State all facts, with particularity, and IDENTIFY all DOCUMENTS that support YOUR contention, if YOU so contend, that YOU are entitled to exemplary damages, attorneys' fees and costs.

**INTERROGATORY NO. 5.:**

State all facts, with particularity, and IDENTIFY all DOCUMENTS that YOU contend prove, directly or circumstantially, that MGA copied YOUR PROPERTY, including, without limitation, "Toon Teens".

**INTERROGATORY NO. 6.:**

IDENTIFY each COMMUNICATION that YOU have ever made, received, or participated in that referred to, mentioned, or concerned this lawsuit.

**INTERROGATORY NO. 7.:**

IDENTIFY all PERSONS interviewed for the July 18, 2003 Wall Street Journal article.

**INTERROGATORY NO. 8.:**

Describe, with particularity, each error contained in the July 18, 2003 Wall Street Journal article by explaining why and in what way each fact is incorrect.

**INTERROGATORY NO. 9.:**

State, with particularity, when and how MATTEL first learned of BRATZ.

**INTERROGATORY NO. 10.:**

State, with particularity, when and how MATTEL first learned that BRYANT performed work for MGA.

EXHIBIT ___35___

PAGE ___572___

**INTERROGATORY NO. 11.:**

State, with particularity, when and how MATTEL first learned that BRYANT conceived of the BRATZ CONCEPT.

Dated: February 4, 2005

DIANA M. TORRES
PAULA E. AMBROSINI
ALICIA C. MEYER
O'MELVENY & MEYERS LLP

Paula E. Ambrosini,
Attorneys for MGA Entertainment, Inc.

LA2:746290.2

EXHIBIT 35

PAGE 573

11

## PROOF OF SERVICE

I, Suzanne I. Jimenez, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On February 4, 2005, I served the within document:

### MGA'S FIRST SET OF INTERROGATORIES TO MATTEL, INC.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒    by putting a true and correct copy thereof, together with an unsigned copy of this declaration, in a sealed envelope designated by the carrier, with delivery fees paid or provided for, for delivery the same business day to the person(s) listed above. I am readily familiar with this firm's practice for collection and processing of overnight courier correspondence. In the ordinary course of business, such correspondence collected from me would be processed on the same day, with fees thereon fully prepaid.

Michael T. Zeller            **VIA HAND-DELIVERY & MAIL**
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Tel: (213) 443-3000
Fax: (213) 443-3100

Keith Jacoby                **VIA REGULAR MAIL**
Littler Mendelson
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Tel: (310) 553-0308
Fax: (310) 553-5583

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on February 4, 2005, at Los Angeles, California.

_Suzanne I. Jimenez_
Suzanne I. Jimenez

EXHIBIT 35
PAGE 574

# EXHIBIT 36

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**