QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>              Plaintiff,<br><br>        vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Robert C. O'Brien Pursuant To Order Of January 6, 2009]**<br><br>MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION FOR PROTECTIVE ORDER STAYING DISCOVERY ON TRADE DRESS CLAIMS<br><br>[Declarations of Bridget A. Hauler and Scott Watson filed concurrently herewith]<br><br>Hearing Date:     April 14, 2009<br>Time:                  10:00 a.m.<br>Place:                 Arent Fox, LLP<br><br>**Phase 2**<br>Discovery Cut-off:     Dec. 11, 2009<br>Pre-trial Conference:  Mar. 1, 2010<br>Trial Date:                Mar. 23, 2010 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

STATEMENT OF FACTS ......................................................................................3

ARGUMENT ......................................................................................................12

I.      THE MGA PARTIES' MOTION IS CONTRARY TO THE DISTRICT
        COURT'S DIRECTIVES AND NOT PROPERLY ADDRESSED TO
        THE DISCOVERY MASTER....................................................................12

II.     THE MGA PARTIES' STAY REQUEST LACKS MERIT AND IS
        UNWORKABLE........................................................................................13

III.    MATTEL WOULD BE PREJUDICED BY A DISCOVERY STAY. ..........16

        A.      The Discovery Stay Would Be Unfair To And Burden Mattel...........16

        B.      MGA's Claims Of Purported Burden Have Been Rejected By
                The Prior Discovery Master And Are Contradicted By MGA's
                Own Evidence ...................................................................................18

CONCLUSION ...................................................................................................20

-i-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

## Cases

Capacchione v. Charlotte-Mecklenburg Schools,
  182 F.R.D. 486 (W.D.N.C. 1998) .................................................... 20

Jackson v. Montgomery Ward & Co., Inc.,
  173 F.R.D. 524 (D. Nev. 1997) ...................................................... 18

King v. Georgia Power Co.,
  50 F.R.D. 134 (N.D. Ga. 1970) ...................................................... 19

Seff v. General Outdoor Advertising Co.,
  11 F.R.D. 597 (N.D. Ohio 1951) .................................................... 20

## Statutes

Rule 30(b)(6)  .................................................................................... 5, 18

## Other Authorities

7 MOORE'S FEDERAL PRACTICE § 33.03 (Matthew Bender 3d ed.)

## **Preliminary Statement**

The MGA Parties' Motion for Protective Order Staying Discovery on Trade Dress Claims should be denied for several reasons.

First, the Motion is an inappropriate effort to thwart the District Court's Phase 2 Scheduling Order as well as the Court's repeated directives that there is no discovery stay and that Phase 2 discovery is to proceed.[1]  Indeed, as of the time of the February 11, 2009 scheduling hearing before Judge Larson when he set dates for discovery cut-off and trial, MGA was fully aware of the grounds that it now claims warrant a discovery stay.   Nevertheless, MGA made no argument that those circumstances should have any effect on the schedule, let alone that they justified any stay.  To the contrary, MGA insisted that Phase 2 discovery and trial be completed in a matter of a few months.  And, at the March 4, 2009 hearing, the Discovery Master made clear that there is no discovery stay and that discovery stay motions are not properly directed to the Discovery Master.  The MGA Parties' latest effort to delay and hinder discovery through serial stay requests -- coming on the heels of Judge Larson's directives that discovery proceed -- should be rejected.

Second, even assuming the MGA Parties present an issue appropriate for resolution by the Discovery Master (which they have not), their purported grounds for seeking a discovery stay—that Mattel will at some point in the future bring a dispositive motion directed to MGA's trade dress and other Bratz-related claims—fails. In nearly every case, a party will bring a dispositive motion prior to trial.   The unremarkable fact that Mattel intends to exercise its right to so move at some point in the future does not justify a stay.  Not only has no summary judgment motion even been filed by Mattel, but MGA's sweeping stay request goes far beyond even Mattel's contemplated motion.  Thus, for example, MGA's claims are based on products -- such

---

[1]   Hearing Transcript, dated February 11, 2009, at 97:9-11, attached as Exhibit 11 to the Declaration of Bridget A. Hauler ("Hauler Dec."), dated March 6, 2009 and filed concurrently herewith.

-1-

as "4-Ever-Best-Friends" dolls, "Mommy's Little Patient" and "AlienRacers" -- and raise other issues that Mattel does not contemplate that its motion will cover. As a result, MGA demands a stay that extends to matters that have nothing to do with Mattel's as-of-yet-unfiled motion and literally lacks even any claimed basis.

Third, in addition to being unjustified, the stay request is unworkable and threatens serious prejudice to Mattel. The interrogatories at issue here are plainly relevant to the Phase 2 trial. Nowhere in their Motion do the MGA Parties dispute the relevance of these interrogatories, and by refusing to answer them MGA is flouting a prior Discovery Master Order.[2] Not only do the interrogatories seek information about products and matters relevant to MGA's Phase 2 claims which are not the subject of Mattel's anticipated summary judgment motion, but they seek information critical to *Mattel's* Phase 2 claims and damages as well. As the Discovery Master has recognized, the parties' Phase 2 claims and defenses are intertwined. Thus, imposing the stay sought by the MGA Parties would inevitably will lead to a host of discovery disputes requiring the parties, the Discovery Master and Court to parse wholly artificial, unworkable distinctions between which discovery requests relate *solely* to Mattel's anticipated motion, and which do not (since not even MGA argues that it has a basis for refusing to answer the latter category of Phase 2 discovery). This is plainly an unacceptable construct, and Judge Larson previously rejected similar partial stay requests by MGA for these same types of reasons.

A stay would seriously prejudice Mattel. The MGA Parties are requesting a several-month discovery stay when just nine months remain until the Phase 2 discovery period closes for good. And, given that MGA refuses to provide any discovery unless compelled by Orders to do so (and often not even then), the few

---

[2]   The prior Discovery Master ordered MGA to answer two of the Interrogatories at issue -- interrogatories which Mattel propounded more than 16 months ago. The other six interrogatories were propounded 14 months ago, and MGA has yet to provide even arguably substantive responses to these six requests. All eight of the interrogatories go to claims at the heart of both MGA's and Mattel's Phase 2 claims.

OPPOSITION TO MOTION FOR PROTECTIVE ORDER

months that would remain undoubtedly would be consumed by discovery motion practice -- leaving Mattel with little or no meaningful discovery period in advance of the Phase 2 trial.  In contrast, the MGA Parties' claims that they will be unduly burdened if they are forced to (1) comply with the Discovery Master's prior Order and (2) answer interrogatories propounded more than a year ago, ring hollow.  This is especially true considering that as recently as three weeks ago, and knowing the circumstances that it now raises in its stay request, *MGA* advocated that Phase 2 discovery and trial be completed in short order.[3]

Accordingly, Mattel respectfully requests that the Discovery Master deny the MGA Parties' Motion for discovery stay.  In addition, for the reasons set forth in Mattel's concurrently filed motion to enforce and compel, Mattel respectfully requests that the Discovery Master order the MGA Parties to provide full, complete and substantive responses to Interrogatory Nos. 43, 44, 51 through 55 and 64 without further delay.

## Statement of Facts

MGA's Complaint.  In April 2005, over a year after Mattel had sued Carter Bryant and MGA for their Bratz theft, MGA filed a lawsuit against Mattel alleging unfair competition claims.[4]  In its complaint, MGA asserts that Mattel has engaged in "serial copycatting" of numerous products, including Bratz dolls, Bratz Petz and other Bratz products, Bratz television commercials, Bratz packaging, MGA's "4-Ever-Best-Friends" dolls, MGA's "Mommy's Little Patient" dolls and MGA's "AlienRacers" toy racing vehicles.[5]  MGA's complaint also asserted various other unfair competition claims, including trade dress dilution, and alleges unjust

---

[3]  2/11/08 Hearing Tr. at 92:22-93:7, Hauler Dec., Exh. 11.
[4]  MGA Entertainment, Inc.'s Complaint ("MGA Complaint"), filed April 13, 2005, attached as Exhibit 1 to the Declaration of Jean Pierre Nogues ("Nogues Dec."), dated February 27, 2009.
[5]  Id. at, e.g., ¶¶ 7, 33, 41, 59.

enrichment.[6]  MGA has since identified hundreds of products that it accuses Mattel of copying.[7]  MGA's CEO, Isaac Larian, has claimed publicly that MGA will be seeking "billions" of dollars from Mattel in this litigation.[8]

            Mattel's Second Amended Answer.  In July 2007, Mattel filed its Second Amended Answer and Counterclaims.[9]  Mattel alleges in its Second Amended Answer, among other claims, that Bryant's theft of Bratz and other properties (and purported assignment of those properties to MGA)[10] is just one of a series of thefts orchestrated by MGA and that MGA has engaged in a course of conduct designed to systematically steal Mattel's trade secrets and other property.  By encouraging Mattel employees to join MGA and steal Mattel's protected information on their way out, MGA has unlawfully obtained trade secrets relating to Mattel's business in the United States and worldwide.[11]   These allegations also comprise part of Mattel's defense to MGA's claims.  Although MGA alleges that Mattel has imitated aspects of MGA products, such as MGA's alleged "themes,"[12] many MGA product attributes allegedly "imitated" by Mattel were in fact first conceived by Mattel and stolen from Mattel by MGA.  As the Discovery Master has recognized in the past, the parties' Phase 2 claims and defenses thus include overlapping, interrelated facts and issues.[13]

---

[6]  Id. at ¶¶ 101-125.

[7]  See MGA Entertainment, Inc.'s Supplemental Response to Interrogatory No. 2 of Mattel, Inc.'s First Set of Interrogatories re Claims of Unfair Competition, dated June 20, 2002, at 5:13-19:9, Nogues Dec., Exh. 2.

[8]  Transcript of ABC Nightline, dated December 23, 2006, at 5, Hauler Dec., Exh. 19.

[9]  Mattel, Inc.'s Second Amended Answer In Case No. 05-2727 and Counter-Claims, dated July 12, 2007, Hauler Dec., Exh. 14.

[10]  Bryant's theft -- and MGA's role in that theft -- was the subject of the Phase 1(a) verdict.

[12]  Second Amended Answer at ¶¶ 37-77, Hauler Dec., Exh. 14.

[12]  MGA Complaint at, e.g., ¶¶ 33-73, Nogues Dec. Exh. 1.

[13]  E.g., Order of January 25, 2007, at 14:13-17, ("Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims."), Watson Dec., Exh. 4.

-4-

1    <u>Mattel's Amended Fourth Set of Interrogatories</u>.  On October 23, 2007,

2  Mattel served its Amended Fourth Set of Interrogatories on MGA,[14] which included

3  Interrogatory Nos. 43 and 44:

4         **Interrogatory No. 43:**  For each concept, design, product, product packaging or

5         other matter that YOU contend MATTEL copied or infringed, including but not

6         limited to those identified in MGA's Responses To Mattel, Inc.'s First Set Of

7         Interrogatories Re Claims Of Unfair Competition, Response To Interrogatory

8         No. 2 (and any Supplemental Responses to such Interrogatory),[15] state the date

9         that each such concept, design, product, product packaging or other matter was

10        conceived, and IDENTIFY all PERSONS with knowledge of, and all

11        DOCUMENTS that REFER OR RELATE TO, the foregoing.

12        **Interrogatory No. 44:**  For each concept, design, product, product packaging or

13        other matter that YOU contend MATTEL copied or infringed, including but not

14  ───────────────────

15  [14]   Without an evidentiary cite, the MGA Parties rehash an argument they have
made before in this case about the number of Requests for Admission, Requests for
16  Production, Interrogatories, depositions and subpoenas propounded and taken by
Mattel in Phase 1.  Motion for Stay of Discovery at 5, n. 2.  At the outset, MGA
17  made virtually identical claims to Judge Larson in opposing Mattel's discovery
efforts in Phase 1, to no avail.  Indeed, Mattel won, and MGA lost, Phase 1 trial, so
18  MGA's apparent suggestion here that it is an innocent party which was unfairly
burdened and mistreated in Phase 1 misses the mark.  Furthermore, MGA's numbers
19  are incorrect and misleading.  Because there are multiple defendants (but only one
plaintiff), Mattel is required to serve the same discovery on each defendant
20  separately.  Thus, in the numbers presented here, MGA overstates -- by at least a
factor of *five* -- the number of written discovery requests propounded by Mattel.
21  When the fact that there are multiple defendants is accounted for, the number of
discovery requests propounded by defendants in most categories is either equal to or
22  even greater than the number of Mattel requests.  In order to inflate their numbers
further, the MGA Parties also appear to count each deposition of a <u>Rule 30(b)(6)</u>
23  designee towards Mattel's "individual depositions" total -- a tallying method that is
contrary to Court Order.  <u>See</u> Court's Civil Minutes, dated January 7, 2008, at 5
24  ("The testimony of all Rule 30(b)(6) witnesses 'count' as only one deposition for
purposes of determining the total number of depositions conducted by each side."),
25  Hauler Dec., Exh. 13.  Indeed, Judge Larson specifically granted Mattel leave, over
MGA's objections, to take many of the depositions and propound other discovery
26  that MGA complains of here.
[15]   MGA identified hundreds of MGA products in its Supplemental Response to
27  Interrogatory No. 2.  <u>See</u> MGA Entertainment, Inc.'s Supplemental Response to
Interrogatory No. 2 of Mattel, Inc.'s First Set of Interrogatories re Claims of Unfair
28  Competition, dated June 20, 2002, at 5:13-19:9, Nogues Dec., Exh. 2.

00505.07975/2823457.4

-5-

OPPOSITION TO MOTION FOR PROTECTIVE ORDER

limited to those identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any Supplemental Responses to such Interrogatory), state the date that each such concept, design, product, product packaging or other matter was first fixed in any tangible medium of expression (if ever), and IDENTIFY all PERSONS with knowledge of, and all DOCUMENTS that REFER OR RELATE TO, the foregoing.[16]

On November 15, 2007, MGA responded to Mattel's Interrogatories by providing only objections and a statement that MGA was willing to meet and confer with Mattel regarding the interrogatories.[17]  MGA supplemented its responses on November 30, 2007, January 7, 2008 and January 28, 2008.[18]

Nonetheless, MGA's responses remained inadequate, and Mattel moved to compel.  On February 15, 2008, the prior Discovery Master granted Mattel's motion to compel Interrogatory responses and ordered the MGA Parties to provide further responses to Interrogatory Nos. 43 and 44 because the "requested information is relevant to Mattel's defense against the MGA parties' claims that their products have been copied or infringed by certain Mattel products."[19]  The Discovery Master ruled that the MGA Parties' existing supplemental _and_ second supplemental responses were insufficient: "Although the MGA parties served supplemental responses after filing their opposition brief, the supplemental responses do not include the requested

---

[16]   Mattel, Inc.'s Amended Fourth Set of Interrogatories, dated October 23, 2007, at Interrogatory Nos. 43 & 44, Hauler Dec., Exh. 1.

[17]   MGA Entertainment Inc.'s Objections and Responses to Mattel Inc's Amended Fourth Set of Interrogatories, dated November 15, 2007, Hauler Dec., Exh. 2.

[18]   MGA Entertainment Inc.'s Supplemental Responses to Mattel Inc.'s Amended Fourth Set of Interrogatories, dated November 30, 2007, Hauler Dec., Exh. 3; see also MGA's Second Supplemental Responses to Mattel Inc.'s Amended Fourth Set of Interrogatories, dated January 7, 2008, Hauler Dec., Exh. 4; MGA Entertainment, Inc.'s Third Supplemental Responses to Mattel, Inc.'s Amended Fourth Set of Interrogatories, dated January 28, 2008, Hauler Dec., Exh. 5.

[19]   Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties, dated (footnote continued)

1   information.  The MGA parties have failed to establish that the interrogatories are

2   unduly burdensome."[20]

3           On March 3, 2008, after the Discovery Master's Order, MGA

4   supplemented its responses for a fourth time.[21]  However, MGA refused once again to

5   respond substantively to the interrogatories, objecting that they related to Phase 2 and

6   were therefore stayed pursuant to the Phase 2 discovery stay[22] entered on February 4,

7   2008.[23]  On April 22, 2008, the Discovery Master stayed the MGA Parties' obligation to

8   supplement their responses to Interrogatory Nos. 43 and 44, while the Phase 2

9   discovery stay was in place.[24]

10          Mattel's Supplemental Interrogatories.  On January 9, 2008, Mattel served

11  Supplemental Interrogatories on all defendants, including Interrogatory Nos. 51 through

12  55, and 64:

13      **Interrogatory No. 51:**  For each concept, design, product, product packaging or

14          other matter that YOU contend MATTEL has copied, infringed or diluted,

15          including but not limited to those identified in MGA's Responses to Mattel, Inc.'s

16          First Set of Interrogatories Re Claims of Unfair Competition, Response to

17          Interrogatory No. 2 (and any Supplemental Responses to such Interrogatory),

18          describe, fully and separately, each and every concept, design, product, product

19          packaging or other matter of or by MATTEL that YOU contend is a copy of,

20          infringes or dilutes YOUR alleged concept(s), design(s), product(s), product

21          packaging or other matter.  Your answer should describe the Mattel concept,

22

23  February 15, 2008, at 11-12, attached as Exhibit 5 to the Declaration of Jean Pierre
    Nogues ("Nogues Dec."), dated February 27, 2009.
        [20]   Id. at 12.
24      [21]   MGA Entertainment, Inc.'s Fourth Supplemental Responses to Interrogatory
    Nos. 43-44 of Mattel, Inc.'s Amended Fourth Set of Interrogatories, dated March 3,
25  2008, Nogues Dec., Exh. 3.
        [22]   Id.
26      [23]   Court's Order dated February 4, 2008, at 3, Nogues Dec., Exh. 4.
        [24]   Order Granting MGA Parties' Motion for Clarification Regarding Portions of
27  February 15, 2008 Order Granting in Part and Denying in Part Mattel's Motion to
    (footnote continued)

28

                                                OPPOSITION TO MOTION FOR PROTECTIVE ORDER

design, product, product packaging or other matter with specificity and in detail (including without limitation by product name, product number, SKU, or bar code number), and specify those elements or attributes of YOUR claimed concept, design, product, product packaging or other matter that YOU contend were copied, infringed or diluted by MATTEL.

**Interrogatory No. 52:**  For each trade dress that YOU contend MATTEL copied, infringed or diluted, separately IDENTIFY each product sold by YOU or YOUR licensees that incorporates such trade dress and, for each such product, separately state (a) the number of units, by year, of each such product sold by YOU or YOUR licensees; (b) revenue received by YOU from such SALES of each such product; (c) all costs YOU have incurred in connection with each product, including but not limited to YOUR cost of good sold, and (d) YOUR gross and net profits from each such product.

**Interrogatory No. 53:**  For each MATTEL concept, design, product, product packaging or other matter that YOU contend is likely to cause confusion, to cause mistake, or to deceive as to affiliation, connection, or association, or as to origin, sponsorship, or approval, separately state all facts that support YOUR contention of such, including but not limited to all facts that support YOUR contention, if YOU so contend, that any of the SLEEKCRAFT FACTORS weighs against MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 54:**  For each concept, design, product, product packaging or other matter that YOU contend MATTEL copied, infringed or diluted, state all facts that support contention, if YOU so contend, that such copying or infringement was intentional or willful, and IDENTIFY all PERSONS with

---

Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties, dated April 22, 2008, Hauler Dec., Exh. 15.

-8-

OPPOSITION TO MOTION FOR PROTECTIVE ORDER

knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 55:**  State all facts which support the allegation in Paragraph 120 of YOUR COMPLAINT that MATTEL has "caused and continues to cause blurring and dilution of the distinctive look of MGA's products and trade dress," and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**Interrogatory No. 64:**  To the extent YOU have not previously disclosed such information in a prior interrogatory response YOU provided to Mattel, state all facts which support YOUR claims against Mattel in THIS ACTION, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.[25]

These interrogatories seek basic discovery regarding MGA's allegations that Mattel copied, infringed, or diluted MGA products.[26]  MGA responded on February 8, 2008, providing only objections to the Supplemental Interrogatories on the grounds that Phase 2 discovery was stayed four days earlier, on February 4, 2008.[27]

The Court Lifts The Phase 2 Discovery Stay.  On January 6, 2009, the Court vacated the stay on Phase 2 discovery.[28]  On January 20, 2009, Mattel wrote to MGA to ask when MGA planned to serve the supplemental responses ordered by the

---

[25]   Mattel's Supplemental Interrogatories, dated January 9, 2008, at 12-14 (Nos. 51-55, 64)Hauler Dec., Exh. 6.
[26]   Id.
[27]   MGA's Objections and Responses to Mattel's Supplemental Set of Interrogatories, dated February 8, 2008 (Nos. 51-55, 64) ("Pursuant to Judge Larson's February 4, 2008 Order, Phase Two discovery is stayed until further order of the Court.  Accordingly, MGA will not respond to this interrogatory until the stay of Phase Two discovery is lifted by the Court"), Hauler Dec., Exh. 7; Larian's Objections and Responses to Mattel's Supplemental Set of Interrogatories, dated February 8, 2008 (Nos. 51-55, 64), Hauler Dec., Exh. 8.
[28]   Order Appointing Discovery Master, dated January 6, 2009, at 2, Nogues Dec., Exh. 7.

-9-

Discovery Master eleven months earlier.[29]  On January 28, 2009, Mattel wrote to MGA and Larian requesting that the parties meet and confer regarding MGA's response to Mattel's Interrogatory No. 45 and MGA's and Larian's responses to Interrogatory Nos. 51-64, 67-69.[30]

<u>Mattel's Anticipated Motion for Summary Judgment.</u>  On January 8, 2009, Mattel informed the MGA Parties of its intent to file a summary judgment motion on MGA's claims relating to Bratz.[31]  In short, a key basis for the anticipated motion is that MGA does not and cannot own trade dress in Bratz or any other rights in Bratz as a matter of law, since Bratz is Mattel's intellectual property as a result of the Phase 1 proceedings (once they are completed and finalized by the Court).[32]

<u>The Parties Meet and Confer</u>.  On February 6, 2009, the parties met and conferred regarding Mattel's discovery requests.[33]  During the conference, MGA acknowledged that its objections based on the Phase 2 discovery stay were no longer viable.[34]  MGA proposed providing further responses to Mattel's Interrogatories 43, 44, 51 through 55, and 64, "not later than 30 days after the Court decides the trade dress summary judgment motion which Mattel has indicated it will be bringing."[35]  Counsel for Mattel did not agree.[36]

<u>The Court Sets The Phase 2 Trial Schedule And Reiterates That There Is No Stay On Discovery.</u>  On February 11, 2009, the Court set December 11, 2009 as the

---

[29]   Letter from Jon Corey to Jason Russell and Robert J. Herrington, dated January 20, 2009, Nogues Dec., Exh. 9.

[30]   Letter from Scott Watson to Thomas Nolan and Jason Russell, dated January 28, 2009, Nogues Dec., Exh. 10.

[31]   Letter from Michael T. Zeller to Thomas Nolan, dated January 8, 2009, Nogues Dec., Exh. 8.

[32]   Id.

[33]   Declaration of Scott L. Watson ("Watson Dec."), dated March 6, 2009 and filed concurrently herewith, at ¶ 3; <u>see also</u> Letter from Scott Watson to Amman Khan, dated February 6, 2009, Watson Dec., Exh. 2.

[34]   Id.

[35]   Letter from Jean Pierre Nogues to Jon Corey, dated February 6, 2009, Nogues Dec., Exh. 11.

[36]   Letter from Jon Corey to Amman Khan, dated February 8, 2009, Hauler Dec., Exh. 10.

OPPOSITION TO MOTION FOR PROTECTIVE ORDER

1   Phase 2 discovery cut-off and March 23, 2010 as the Phase 2 trial date.[37]  The Court

2   scheduled these dates after hearing from counsel for all the parties.  In addition, the

3   Court stated:

4         **I will instruct the Discovery Master this afternoon, in no uncertain**

5         **terms, that there is no stay on any discovery related to this case at all.**

6         There's no longer a Phase 1/Phase 2 distinction.

7         As I indicated, I thought that I made this clear before.  If it's not, it will be

8         expressly set forth in the minutes coming out of today's hearing.

9         **There is no stay on discovery.  Period.**[38]

10        ***

11        I think I made my position as clear as I can today that there is nothing

12        from this Court which is precluding any discovery that is properly sought

13        for the trial that is scheduled.[39]

14        ***

15        The question for the Discovery Master will be whether or not the disputed

16        discovery request is related or relevant to the trial that has now been set

17        for March [2010] or not.[40]

18              MGA Stands On Its Position That Discovery Is "Premature."  On February

19   12, 2009, in light of the Court's statements on the record, Mattel asked MGA to

20   confirm whether MGA would provide complete responses to Mattel's interrogatories.[41]

21   The next day, counsel for MGA responded that it was premature to respond to the

22

23

24

25   [37]   Hearing Transcript, dated February 11, 2009, at 94:25-95:7, Hauler Dec., Exh. 11.

26   [38]   Id. at 97:8-14.
     [39]   Id. at 101:21-24.

27   [40]   Id. at 101:1-3.
     [41]   Letter from Jon Corey to Jean Pierre Nogues, dated February 12, 2009,

28   Nogues Dec., Exh. 12.

OPPOSITION TO MOTION FOR PROTECTIVE ORDER

February 12 letter until after the scheduled February 18, 2009 meet and confer concerning Mattel's contemplated motion for summary judgment.[42]

On February 18, the parties met and conferred regarding Mattel's contemplated motion for summary judgment and the interrogatories.[43] The next day, MGA informed Mattel that it would not agree to provide supplemental responses to Interrogatory Nos. 43 and 44 or respond to Interrogatory Nos. 51 through 55 and 64 by February 27, 2009.[44] Instead, MGA stated that it would only respond to these interrogatories: (1) if MGA's planned motion for protective order is denied; or (2) if their motion for protective order is granted, 21 days after the Court decides Mattel's summary judgment motion, to the extent any trade dress claims remain after that decision.[45]

## Argument

## I. THE MGA PARTIES' MOTION IS CONTRARY TO THE DISTRICT COURT'S DIRECTIVES AND NOT PROPERLY ADDRESSED TO THE DISCOVERY MASTER.

The MGA Parties' Motion for Discovery Stay improperly asks the Discovery Master to vacate the District Court' ruling lifting the Phase 2 discovery stay. This is inappropriate. The District Court vacated the Phase 2 discovery stay on January 6, 2009 and, in rejecting MGA's arguments that some discovery nevertheless was stayed, reiterated that discovery is to proceed and that "there is no stay on any discovery related to this case at all."[46] As the result of a February 11, 2009 hearing, the Court further has entered a Scheduling Order for Phase 2 discovery and trial. By the time of that hearing, MGA's counsel knew of Mattel's contemplated summary judgment

---

[42]   Letter from Jean Pierre Nogues to Jon Corey, dated February 13, 2009, Nogues Dec., Exh. 13.
[43]   See Letter from Jean Pierre Nogues to Jon Corey, dated February 19, 2009, Nogues Dec., Exh. 14.
[44]   Id.
[45]   Id.
[46]   2/11/2009 Hearing Tr. at 97:9-11, Hauler Dec., Exh. 11.

00505.07975/2823457.4

-12-

1  motion.  Far from claiming that the anticipated motion warranted any stay or should

2  influence the Scheduling Order in any way, however, MGA advocated to Judge Larson

3  that discovery and trial be completed within a few months.

4  The orders regarding the appointment of a Discovery Master in this case

5  do not make the Discovery Master responsible for modifying the case schedule to stay

6  discovery.[47]  Rather, the District Court is responsible for setting the case schedule,

7  including discovery cut-offs and stays.[48]  That, too, has been the practice in this case,

8  where in the past MGA brought every one of its stay requests to Judge Larson, not to

9  the Discovery Master.  At the March 4, 2009 hearing, the Discovery Master also made

10  clear that there was no stay and that, indeed, stay requests were not properly directed to

11  the Discovery Master.

12  The MGA Parties' motion is improper and on that basis should be denied.

13  **II.   THE MGA PARTIES' STAY REQUEST LACKS MERIT AND IS**

14  **UNWORKABLE.**

15  Even assuming the MGA Parties had presented an issue appropriate for

16  resolution by the Discovery Master (which they have not), their purported basis for

17  seeking a discovery stay—that Mattel will at some point in the future bring a

18  dispositive motion directed to MGA's trade dress claims—fails.  Nowhere in their

19  Motion do the MGA Parties dispute the relevance of the interrogatories they refuse to

20  answer.  Nor could they.  At least two of the Interrogatories at issue here were

21  propounded more than 16 months ago, and the Discovery Master already ordered MGA

22  to answer them long ago.  The other six interrogatories were propounded 14 months

23  ───────────────

24  [47]   See Order Appointing Discovery Master, dated December 6, 2007, Hauler Dec., Exh. 16; see also Order Appointing Discovery Master, dated January 6, 2009, Nogues Dec., Exh. 6.

25  [48]   For instance, the District Court has stayed discovery in this case on at least

26  two separate occasions: on May 20, 2005 and on February 4, 2008 with respect to Phase 2 discovery.  See Court's Civil Minutes, dated May 20, 2005, Hauler Dec., Exh. 17; see also 2/4/08 Court's Civil Minutes, Nogues Dec., Exh. 4.  In addition,

27  the Court has scheduled -- and when necessary, rescheduled -- the discovery cut-off (footnote continued)

28

1   ago, and MGA has yet to provide even arguably substantive responses to these six

2   requests.  Despite their plain relevance here to the parties' Phase 2 claims, MGA argues

3   that Mattel's contemplated summary judgment motion justifies its refusals to provide

4   discovery -- even in outright defiance of the former Discovery Master's Order

5   compelling MGA to answer.  It is of course commonplace for a party to bring

6   dispositive motions prior to trial, and the unremarkable fact that Mattel intends to

7   exercise its right to so move at some point in the future does not justify a stay.  MGA

8   itself necessarily recognized this obvious point when it was before Judge Larson on

9   Phase 2 scheduling given that it urged prompt discovery and trial, despite knowing of

10  Mattel's contemplated motion.

11          In fact, MGA sweepingly seeks a stay of discovery matters that go far

12  beyond even the contemplated summary judgment motion and thus is -- literally --

13  unsupported by any argument at all.  For instance, Interrogatory No. 52 asks MGA to

14  identify, for each trade dress that MGA contends Mattel copied, the number of units of

15  each product and the profits for each product that incorporates such trade dress.[49]  This

16  interrogatory relates to Mattel's claims as well as its defenses against MGA's trade dress

17  claims.  Mattel alleges, among other things, that MGA stole and used Mattel trade

18  secrets to market and sell MGA's products.[50]  Accordingly, this interrogatory also

19  relates to Mattel's claims against MGA for unfair competition and misappropriation of

20  trade secrets, including Mattel's damages theories (i.e. the revenues and profits MGA

21  received for its products).  Mattel's anticipated motion for partial summary judgment

22  concerns MGA's Bratz-related claims, not Mattel's claims or Mattel's damages theories.

23

24

25  for both Phase 1 and Phase 2.  See, e.g., 2/11/07 Hearing Tr. at 94:25-95:7, Hauler
    Dec., Exh. 11.
26      [49]  Mattel's Supplemental Interrogatories (No. 52), Nogues Dec., Exh. 6.
        [50]  E.g., Mattel, Inc.'s Second Amended Answer In Case No. 05-2727 and
27  Counter-Claims, at 52-53 (discussing My Scene My Bling Bling), Hauler Dec., Exh.
    14.
28

Similarly, MGA's trade dress claims concern products and other matters that will not be the subject of Mattel's contemplated motion,[51] including products wholly unrelated to Bratz.[52] MGA claims Mattel has copied or infringed, among other things, "4-Ever-Best-Friends" fashion dolls and packaging, "Mommy's Little…" line of dolls and "Alien Racers" toy racing vehicles.[53] MGA refuses to substantively answer the interrogatories with respect to <u>any</u> products, even as to those that have nothing to do with Mattel's anticipated motion.

As this also makes evident, the requested stay is unworkable for all practical purposes. Specifically, the MGA Parties seek a stay of trade dress claims that are intertwined with Mattel's Phase 2 claims. The same facts that support or refute MGA's claims that Mattel has serially copied MGA's products and the like support or refute Mattel's Phase 2 claims that, in fact, MGA stole properties from Mattel, not the other way around. It was for such reasons that the former Discovery Master recognized that the parties' Phase 2 claims and defenses are intertwined.

The District Court has previously rejected similar MGA requests for partial stays or bifurcations of discovery because they are "fraught with the potential of unnecessarily compounding discovery disputes in a case already predisposed to such disputes."[54] That is exactly what will happen here if the stay proposed by MGA is adopted. The parties, the Discovery Master and the Court will be embroiled in endless disputes over the parsing of artificial distinctions about which discovery requests relate to MGA's trade dress claims, versus which requests relate to Mattel's trade secret claims, and which discovery requests relate *solely* to Mattel's anticipated motion for

---

[51] 1/8/09 Zeller Letter, Nogues Dec., Exh. 8; <u>see also</u> 2/23/09 Webster Letter, Nogues Dec., Exh. 15.

[52] MGA's Supplemental Response to Interrogatory No. 2 at 14:1-19:9, Nogues Dec., Exh. 2.

[53] Id.

[54] 1/7/08 Court's Civil Minutes at 3, Hauler Dec., Exh. 13. Prior to the discovery cutoff in Phase 1, MGA repeatedly requested bifurcated discovery of Phase 1 and Phase 2. Mattel opposed MGA's request on every occasion. After (footnote continued)

OPPOSITION TO MOTION FOR PROTECTIVE ORDER

1  partial summary judgment, versus which do not (with MGA having no claimed basis at
2  all for refusing to answer the latter category of Phase 2 discovery).  Even if this type of
3  hair-splitting were possible, the parties are certainly not going to agree on such esoteric,
4  and likely illusory, distinctions, which will create unnecessary burdens and multiply the
5  discovery disputes in this suit.

6         The MGA Parties' proposed stay should be rejected as meritless and
7  unworkable.

8  **III.   MATTEL WOULD BE PREJUDICED BY A DISCOVERY STAY.**

9         Finally, the MGA Parties' Motion should be denied because the relief they
10 request—a several-month discovery stay when just nine months remain until the Phase
11 2 discovery period closes for good—will unduly prejudice Mattel.  In contrast, the
12 MGA Parties' claim, that they will be unduly burdened if they are forced to (1) comply
13 with the Discovery Master's prior Order and (2) answer interrogatories propounded
14 more than a year ago, is unpersuasive.

15        **A.     The Discovery Stay Would Be Unfair To And Burden Mattel**

16        In its January 6 Order appointing the Discovery Master, the Court quoted
17 MGA verbatim regarding the "enormous complexities, both legal and practical, of the
18 issues in Phase 2."[55]  Yet now, MGA proposes to essentially strip Mattel of the bulk of
19 the Phase 2 discovery period -- a period that Mattel is entitled to under the District
20 Court's Scheduling Order -- to investigate and defend against MGA's claims.  Mattel
21 has not yet filed its contemplated Phase 2 motion for summary judgment relating to
22 MGA's Bratz claims.[56]  In Phase 1, it took some three months for the parties to brief
23 and for the Court to dispose of the parties' respective summary judgment motions.[57]
24 Here, in their requested stay, the MGA Parties asked to be excused from discovery until

25 ─────────────────
   considering the parties' positions, the Court ruled that discovery should not be
26 bifurcated.
   [55]  1/6/09 Court's Order, Nogues Dec., Exh. 7.
27 [56]  Motion to Stay Discovery at 4.

28

OPPOSITION TO MOTION FOR PROTECTIVE ORDER

three weeks after a ruling on Mattel's anticipated motion.  Thus, even were Mattel to file its anticipated motion next week (which it is not in a position to do, given that the Phase 1 Orders are not yet final), the MGA Parties' proposed stay would deny Mattel discovery through at least July 2009.  This would leave Mattel with only a few short months of discovery into MGA claims that involve hundreds of products and that MGA asserts it is seeking "billions" of dollars for.  And, given that MGA refuses to provide any discovery unless compelled by Orders to do so (and often not even then), the few months that would remain undoubtedly would be consumed by discovery motion practice -- leaving Mattel with little or no meaningful discovery in preparation for the Phase 2 trial as currently scheduled.

The discovery requests at issue here are critical and should be answered in full without further delay.  All eight interrogatories address facts at the heart of both MGA's and Mattel's Phase 2 claims.  The purpose of interrogatories is to narrow the issues and thus help determine what evidence will be needed at trial.  <u>See</u> 7 Moore's Federal Practice § 33.03 (Matthew Bender 3d ed.).  Mattel needs substantive responses to Interrogatory Nos. 43, 44, 51 through 55 and 64 to develop targeted further discovery, to narrow the issues for trial, to prepare and prosecute its trade dress claims, and to defend against MGA's trade dress claims.  MGA's request for a discovery stay would thwart these efforts and unduly prejudice Mattel.

---

[57]  Court's Order, dated June 2, 2008, Hauler Dec., Exh. 20; <u>see also</u> Mattel's Motion for Summary Judgment, dated March 7, 2008, Docket No. 2504.

-17-

OPPOSITION TO MOTION FOR PROTECTIVE ORDER

**B.** **MGA's Claims Of Purported Burden Have Been Rejected By The Prior Discovery Master And Are Contradicted By MGA's Own Evidence**

In contrast to the substantial threat of prejudice to Mattel from the proposed stay, MGA can muster no legitimate complaint about having to produce discovery, particularly in light of its own status as a claimant. MGA argues that the interrogatories are unduly burdensome, citing the declaration of Brian Wing. Mr. Wing's declaration makes no such demonstration, and MGA's burden arguments are unavailing in any event.

MGA is obligated to provide particularized evidence to support its assertion that this information is not "reasonably available" to it, as the prior Discovery Master required. See Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 14 ("Once again, MGA has failed to substantiate any of its objections with supporting declarations or legal authorities. Accordingly, all objections are overruled and MGA is ordered to provide a full response to Interrogatory No. 11"), Hauler Dec., Exh. 20; see also Jackson v. Montgomery Ward & Co., Inc., 173 F.R.D. 524, 528-9 (D. Nev. 1997) ("The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.") (citing Burton Mechanical Contractors, Inc. v. Foreman, 148 F.R.D. 230, 233 (N.D. Ind. 1992)).

Mr. Wing's declaration, however, discusses only one issue—the provision of financial data, on a product-by-product or SKU basis, including sales, revenues, cost and profit figures. Mr. Wing's declaration does not address, let alone prove, any purported burden in providing the other information called for in Interrogatory Nos. 43, 44, 51 through 55 and 64. Nor could it as to Interrogatory Nos. 43 and 44 in particular, since the former Discovery Master already rejected any claim that answering them was unduly burdensome and long ago compelled MGA to respond.

Even as to the issue Mr. Wing's declaration attempts to raise, his statements are contradicted by MGA's <u>Rule</u> 30(b)(6) witness and by documents produced by MGA in this action.  MGA's <u>Rule</u> 30(b)(6) designee has previously testified that MGA regularly maintains reports containing revenue, profit, and cost information on a product-by-product basis,[58] and MGA has previously produced such reports.  In fact, in the midst of Phase 1 trial, MGA produced this type of information for June 2008 in July 2008.[59]  Of course, all of this confirms the obvious:  Like most companies, MGA routinely tracks its product sales and other financial data, and MGA's own financial information *is* readily accessible to MGA, contrary to Mr. Wing's implausible claims otherwise.

Furthermore, even if MGA did not have the financial information readily available, its relative unavailability does not render the interrogatories at issue unduly burdensome.  Only one of the eight interrogatories at issue calls for the specific financial information Wing discusses in his Declaration.[60]  The requested financial information is highly relevant to Mattel's Phase 2 claims and defenses against MGA.  Thus, any burden of compiling it is not undue in light of the scope and complexity of claims in this litigation, the stakes involved -- given that MGA claims it is seeking "billions"[61] of dollars relating to hundreds of products[62] -- and the importance this

---

[58]   Deposition of Lisa Tonnu, dated January 17, 2008 ("Tonnu Depo."), Hauler Dec., Exh. 21, at 747:9-15 (in preparation for her deposition, Tonnu reviewed documents regarding Bratz sales broken down by product SKU numbers generated by MGA employee), 871:17-874:11 (sales information on a product-by-product basis can be obtained from MGA's accounting system); 750:2-22 (Tonnu reviewed reports on cost of sales by product SKU number generated by MGA employee); 878:19-879:23 (MGA tracks as a matter of course the number of products invoiced to customers by product SKU number); 893:20-894:17 (Tonnu reviewed reports on returns broken down by product SKU number); 900:23-902:1 (MGA calculates cost of sales by product SKU number); 902:21-903:6 (MGA calculates royalty expenses by product SKU number).

[59]   See E-mail from Ryan Weinstein to Jon Corey, dated July 22, 2008, Hauler Dec., Exh. 22; see also MGA 3896239, Hauler Dec., Exh. 23.

[60]   See Supplemental Interrogatories at Interrogatory No. 52, Hauler Dec., Exh. 6.

[61]   Transcript of ABC Nightline, dated December 23, 2006, at 5, Hauler Dec., Exh. 19.

-19-

1   information for Phase 2.  See King v. Georgia Power Co., 50 F.R.D. 134, 136 (N.D. Ga.

2   1970) (overruling defendant's objection that interrogatory was burdensome and

3   oppressive, even though preparation of answer would be time-consuming and costly,

4   because information was crucial to the issues of the suit and in exclusive custody of

5   defendant); Seff v. General Outdoor Advertising Co., 11 F.R.D. 597, 598 (N.D. Ohio

6   1951) (overruling "overly burdensome" objection because value of information to

7   plaintiff clearly outweighed any annoyance or expense involved in disclosure by

8   defendant); Capacchione v. Charlotte-Mecklenburg Schools, 182 F.R.D. 486, 491

9   (W.D.N.C. 1998) ("Requiring a responding party to perform extensive research or to

10  compile substantial amounts of data and information does not automatically constitute

11  an undue burden . . . Imposing such a burden is particularly proper where, as here, the

12  information sought is crucial to the ultimate determination of a crucial issue and where

13  the location of the documents is best known by the responding party.").

14       MGA's protests of undue burden in having to (1) comply with the

15  Discovery Master's prior Order and (2) answer interrogatories propounded more than a

16  year ago, are without merit.

17                              **Conclusion**

18       For the foregoing reasons, Mattel respectfully requests that the Discovery

19  Master deny the MGA Parties' motion for stay of discovery.

20

21  DATED:  March 6, 2009          QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP
22

23                                 By /s/ Michael T. Zeller
                                      Michael T. Zeller
24                                    Attorney for Mattel, Inc.

25

26

_____

27  [62]   MGA Entertainment, Inc.'s Supplemental Response to Interrogatory No. 2 of
    Mattel, Inc.'s First Set of Interrogatories re Claims of Unfair Competition, dated
28  June 20, 2002, at 5:13-19:9, Nogues Dec., Exh. 2.