EXHIBIT 15

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:   (415) 774-2611
4   Facsimile:     (415) 982-5287

5

6

7

8                 UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11

| | |
|---|---|
| 12   CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| 13 | JAMS Reference No. 1100049530 |
|           Plaintiff, | |
| 14 | |
|       v. | Consolidated with |
| 15 | Case No. CV 04-09059 |
|   MATTEL, INC., a Delaware corporation, | Case No. CV 05-2727 |
| 16 | |
|           Defendant. | **ORDER GRANTING MGA PARTIES'** |
| 17 | **MOTION FOR CLARIFICATION** |
| | **REGARDING PORTIONS OF** |
| 18 | **FEBRUARY 15, 2008 ORDER** |
| | **GRANTING IN PART AND DENYING** |
| 19 | **IN PART MATTEL'S MOTION TO** |
| | **COMPEL RESPONSES TO** |
| 20 | **INTERROGATORY NOS. 27-44 AND** |
| | **46-50 BY THE MGA PARTIES** |
| 21   CONSOLIDATED WITH | |
| 22   MATTEL, INC. v. BRYANT and | |
|   MGA ENTERTAINMENT, INC. v. MATTEL, | |
| 23   INC. | |

24

25         On March 3, 2008, MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE

26 De Mexico, S.R.L. de C.V. ("MGA Mexico") and Isaac Larian (collectively "MGA Parties")

27 submitted a Motion for Clarification Regarding Portions of February 15, 2008 Order Granting in

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                1

EXHIBIT 15
PAGE 188

1  Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and

2  46-50 by the MGA Parties.  On March 10, 2008, Mattel, Inc. ("Mattel") submitted an opposition,

3  and on March 13, 2008, the MGA Parties submitted a reply.  Pursuant to Paragraph 5 of the

4  Stipulation and Order for Appointment of a Discovery Master, the Discovery Master finds it

5  appropriate to decide the motion without oral argument.

6        The purpose of the MGA Parties' motion is to confirm the MGA Parties' understanding

7  that any obligation under the February 15, 2008 Order to provide supplemental responses to

8  certain interrogatories is stayed by the operation of the February 4, 2008 Minute Order of the

9  district court staying Phase 2 discovery.  In particular, the MGA Parties seek an order confirming

10  that (i) any obligation of the MGA Parties under the February 15, 2008 Order to respond to

11  Interrogatory Nos. 41 (other than as to Carter Bryant), 43 and 44 is stayed on the grounds that

12  these interrogatories seek Phase 2 discovery; and (2) any obligation of MGA Mexico under the

13  February 15, 2008 Order to provide supplemental interrogatory responses is stayed on the

14  grounds that discovery directed to MGA Mexico, which was formed in April 2004, constitutes

15  Phase 2 discovery.

16        As a threshold matter, the MGA Parties' Motion for Clarification is procedurally

17  appropriate in view of the district court's stay on Phase 2 discovery, notwithstanding Mattel's

18  assertion to the contrary.  The district court imposed the stay on Phase 2 discovery after the close

19  of briefing on Mattel's motion to compel.  The parties did not address in their papers which

20  interrogatories related solely to Phase 2.  Nor was the stay on Phase 2 discovery the principal

21  focus of the February 11, 2008 hearing, although the stay was mentioned.

22        Having reviewed the interrogatories at issue in this Motion for a second time, it is

23  apparent that the interrogatories are relevant primarily, if not exclusively, to Phase 2.  To the

24  extent the interrogatories at issue encompass information that may be relevant to any Phase 1

25  issue, the potential relevance of the information sought is substantially outweighed by the burden

26  and expense of requiring the MGA Parties to provide supplemental responses in the few

27  remaining weeks before the Phase 1 trial.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 15
PAGE 189

1    Accordingly, the MGA Parties' motion is granted.  The MGA Parties' obligation to

2  supplement their responses to Interrogatory Nos. 41 (other than as to Carter Bryant), 43 and 44,

3  and MGA Mexico's obligation to supplement any of the interrogatories directed to it, are hereby

4  stayed until further order of the district court lifting the stay on Phase 2 discovery.

5    Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

6  Master, Mattel shall file this Order with the Clerk of Court forthwith.

7

8  Dated: April 22, 2008

9                                      HON. EDWARD A. INFANTE (Ret.)
                                            Discovery Master
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                   3

EXHIBIT ___15___
PAGE ___190___

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 22, 2008, I served the
attached: (1) ORDER DENYING MATTEL'S MOTION TO COMPEL ADDITIONAL DEPOSITION
TESTIMONY OF VERONICA MARLOW; (2) ORDER GRANTING THIRD-PARTY MATTHEW
BOUSQUETTE'S MOTION TO QUASH SUBPOENA; DEEMING MOOT MATTEL'S MOTION FOR
PROTECTIVE ORDER RE: MATTHEW BOUSQUETTE; and (3) ORDER GRANTING MGA PARTIES'
MOTION FOR CLARIFICATION REGARDING PORTIONS OF FEBRUARY 15, 2008 ORDER
GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL RESPONSES TO
INTERROGATORY NOS. 27-44 AND 46-50 BY THE MGA PARTIES in the within action by email
addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Larry W. McFarland | Keats, McFarland & Wilson | lmcfarland@kmwlaw.com |
| Christian Dowell | Keats, McFarland & Wilson | cdowell@kmwlaw.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |
| Christopher G. Caldwell | Caldwell Leslie & Proctor, PC | caldwell@caldwell-leslie.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true
and correct.

Executed on April 22, 2008, at San Francisco, California.

_Sandra Chan_
Sandra Chan

EXHIBIT 15
PAGE 191

EXHIBIT 16

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemnauel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Mattel, Inc.

[Additional counsel listed on following page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| v. | |
| MATTEL, INC., a Delaware corporation, | STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND |
| Defendant. | [PROPOSED] ORDER |
| | Discovery Cutoff Date:  Not Set<br>Trial Date:  Not Set |

EXHIBIT 16
PAGE 192

1  LITTLER MENDELSON
      Robert F. Millman (Bar No. 062152)
2     Douglas A. Wickham (Bar No. 127268)
      Keith A. Jacoby (Bar No. 150233)
3  2049 Century Park East, 5th Floor
   Los Angeles, California 90067-3107
4  Telephone:  (310) 553-0308
   Facsimile:   (310) 553-5583
5
   Attorneys for Carter Bryant
6
   O'MELVENY & MYERS LLP
7     Diana M. Torres (Bar No. 162284)
   400 S. Hope Street
8  Los Angeles, California 90017
   Telephone:  (213) 430-6000
9  Facsimile:   (213) 430-6407

10 O'MELVENY & MYERS LLP
      Dale Cendali
11 Times Square Tower
   7 Times Square
12 New York, NY 10036

13 CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
      Patricia Glaser (Bar No. 55668)
14 10250 Constellation Boulevard - 19th Floor
   Los Angeles, CA 90067
15 Telephone:  (310) 553-3000
   Facsimile:  (310) 556-2920
16
   Attorneys for MGA Entertainment, Inc.
17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __16__
PAGE __193__

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

- 2 -

1    WHEREAS, the parties are in agreement that a discovery master should be
2    appointed in this matter to resolve any discovery disputes and to minimize the
3    burden on the Court; and

4    WHEREAS, the parties have agreed upon a nominee, Hon. Edward A. Infante
5    (Ret.), and he has agreed to serve as a discovery master in this matter;

6    NOW, THEREFORE, to facilitate the fair and efficient completion of pre-
7    trial discovery, the parties Mattel, Inc. and Carter Bryant and MGA Entertainment,
8    Inc., by and through their respective counsel of record, hereby stipulate and agree as
9    follows:

10   1.    The Discovery Master shall be appointed to assure and provide cost-
11   effective discovery and to minimize the burden of discovery disputes upon the
12   Court.  Any and all discovery motions and other discovery disputes in the above
13   captioned action shall be decided by a master ("Discovery Master") pursuant to
14   Federal Rule of Civil Procedure 53.  Any motions currently pending before
15   Magistrate Judge Block shall be transferred to the Discovery Master.  The moving
16   party shall provide to the Discovery Master all papers associated with each pending
17   motion.

18   2.    The Discovery Master shall be Hon. Edward A. Infante (Ret.).  His
19   business address is: Two Embarcadero Center, Suite 1500, San Francisco, CA
20   94111.

21   3.    Judge Infante shall serve as the Discovery Master until all issues herein
22   have been finally disposed of or determined, or until he shall withdraw in
23   accordance with applicable law.  If at any time he becomes unable to serve as the
24   Discovery Master, the parties shall confer to present an alternative agreed-upon
25   designee to the Court.  In the event that the parties cannot agree to an alternate
26   designee, then the Court shall appoint a Discovery Master.

27   4.    The Discovery Master shall have the authority to set the date, time, and
28   place for all hearings determined by the Discovery Master to be necessary; to

EXHIBIT ___16___        -3-        STIPULATION FOR APPOINTMENT OF A DISCOVERY
PAGE ___194___                              MASTER AND [PROPOSED] ORDER

1 | preside over hearings (whether telephonic or in-person); to take evidence in
2 | connection with discovery disputes; to issue orders resolving discovery motions
3 | submitted to the Discovery Master; to conduct telephonic conferences to resolve
4 | discovery disputes arising during depositions; to issue orders awarding non-
5 | contempt sanctions, including, without limitation, the award of attorney's fees, as
6 | provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and
7 | recommendations, as appropriate.

8       5.     All discovery disputes shall be resolved by motion (except those arising
9 | during a deposition which the Discovery Master determines can be resolved by
10 | telephonic conference during the deposition). The moving party shall first identify
11 | each dispute, state the relief sought, and identify the authority supporting the
12 | requested relief in a meet and confer letter that shall be served on all parties by
13 | facsimile or electronic mail. The parties shall have five court days from the date of
14 | service of that letter to conduct an in-person conference to attempt to resolve the
15 | dispute. If the dispute has not been resolved within five court days after such
16 | service, the moving party may seek relief from the Discovery Master by formal
17 | motion or letter brief, at the moving party's option. The opposing party shall have
18 | five court days from the date of service of the motion or letter brief to submit a
19 | formal opposition or response. Any reply brief or letter brief shall be served within
20 | three court days from the date of service of a formal opposition or response. The
21 | hearing on the motion shall take place within five court days of the service of any
22 | reply brief or letter unless (a) the parties agree to another hearing date or agree that
23 | no hearing is necessary; (b) the Discovery Master determines that no hearing is
24 | necessary; or (c) the Discovery Master is not available, in which case the hearing
25 | shall take place on the Discovery Master's first available date. The foregoing shall
26 | not prohibit (i) the parties from agreeing to alternate procedures, or (ii) a party from
27 | seeking the Discovery Master's immediate resolution of a dispute or resolution of a
28 | dispute upon shortened time upon a showing of good cause why a party would be

EXHIBIT   16
PAGE    195     - 4 -

1   prejudiced absent prompt resolution.  Service of any document by fax or electronic
2   mail prior to 6:00 p.m. shall constitute service on that day.
3       6.      The Discovery Master's orders resolving discovery disputes, reports, or
4   recommendations pursuant to Rule 53(e) or (f) shall be treated as rulings made by a
5   Magistrate Judge of the United States District Court.  The Discovery Master shall
6   file each order, report, or recommendation pursuant to Rule 53(e) or (f) and serve
7   the parties within five court days of his/her decision on a matter.
8       7.      A court reporter shall transcribe any hearing or other proceeding before
9   the Discovery Master.
10      8.      The cost of any proceeding before the Discovery Master, including the
11  fees of the Discovery Master, the fees of court reporters who transcribe hearings or
12  other proceedings before the Discovery Master, and the fees of any other person
13  necessary to the efficient administration of the proceeding before the Discovery
14  Master, shall be paid one-half by Mattel, Inc., and one-half by MGA Entertainment,
15  Inc. and Carter Bryant unless, consistent with the Federal Rules of Civil Procedure,
16  the Discovery Master Orders otherwise.  By agreeing to share costs among the
17  parties, no party waives its right to seek recovery or reimbursement for such costs
18  from any other party.
19      9.      The Discovery Master shall be compensated according to his regular
20  hourly rate of $750.
21      10.     Pursuant to Federal Rule of Civil Procedure 53(b)(2), the Discovery
22  Master shall proceed with all reasonable diligence.
23      11.     Based on an affidavit filed by Hon. Edward A. Infante pursuant to
24  28 U.S.C. § 455 and Federal Rule of Civil Procedure 53(b)(3), the parties are not
25  aware that he has a relationship to the parties, to counsel, to the action, or to the
26  Court that would require disqualification of a judge under 28 U.S.C. § 455, and
27  based thereon the parties expressly waive any ground for disqualification disclosed
28  therein of Hon. Edward A. Infante to serve as master in these proceedings.

EXHIBIT ___ \6
PAGE ___ 196            - 5 -

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1     12.    The Discovery Master shall not have ex parte communications with ~~the~~
2 ~~Court,~~ a party or counsel.

3     13.    The Discovery Master shall preserve and maintain all documents and
4 materials submitted by the parties as well as all orders, reports, and
5 recommendations issued by the Discovery Master.  These documents, materials,
6 orders, reports and recommendations shall be the record of the Discovery Master's
7 activities, and shall be maintained in chronological order until the Discovery Master
8 is informed by the parties that all issues herein have been finally disposed of and
9 determined.

10    14.    The Discovery Master is hereby authorized to receive and consider
11 information and documents designated "CONFIDENTIAL" and "CONFIDENTIAL-
12 ATTORNEYS EYES ONLY" pursuant to the January 4, 2005 Stipulated Protective
13 Order.  The Discovery Master agrees to be bound by the January 4, 2005 Order.

14    15.    All third parties subject to discovery requests or deposition in this
15 litigation shall be bound by the terms of this Stipulation and Order.

16

17 Dated: November 22, 2006                    O'MELVENY & MYERS LLP
18
19
20                                            By: _____
                                                 Diana Torres
21                                               Attorneys for MGA Entertainment, Inc.

22 Dated: November 29, 2006                    LITTLER MENDELSON
23
24
25                                            By: _____
                                                 Douglas A. Wickham
26                                               Attorneys for Carter Bryant
27
28

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

EXHIBIT 10
PAGE 199

1   Dated: December 4, November ___, 2006

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP

3

4   By: _Jon D. Corey_____
    Jon D. Corey
    Attorneys for Mattel, Inc.

5

6                        **ORDER**

7   The foregoing Stipulation for Appointment of a Discovery Master is SO

8   ORDERED, *as modified.*

9

10  Dated: _12-6-06._          _S G Larson_____

11                             Hon. Stephen G. Larson
                               United States District Court Judge

12

13

14              **CONSENT OF DISCOVERY MASTER**

15  If appointed by the Court, I, the undersigned, consent to serve as Discovery

16  Master in the above referenced proceeding consistent with this Order.

17

18  Dated: _12-5-06_____    _Edward A. Infante_____

19                             Hon. Edward A. Infante (Ret.)

20

21

22

23

24

25

26

27

28

-7-

EXHIBIT ___16___
PAGE ___198___

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

1  STATE OF CALIFORNIA )
2  COUNTY OF LOS ANGELES )

3      I am employed in the county of Los Angeles  State of California.  I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

4

5      On December 5, 2006, I served the foregoing document described as **STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND [PROPOSED ORDER** on all interested parties in this action.

6

7  **Keith A. Jacoby, Esq.**                    **Diana M. Torres, Esq.**
   **Douglas Wickham, Esq.**                   **O'Melveny & Meyers**
   **Littler Mendelson**                        400 S. Hope Street
8  **A Professional Corporation**               Los Angeles, CA 90071
   2049 Century Park East, 5th Floor            Phone: 213-430-6000
9  Los Angeles, California 90067-3107           **Fax: 213-430-6407**
   Phone: 310-553-0308
10 **Fax: 310-553-5583**

11

12 [ ]   By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed
13       as follows:

14 [X]   **BY MAIL**

15 [ ]   I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

16 [ ]   As follows:  I am "readily familiar" with the firm's practice of collection and processing
17       correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is
18       presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

19 [ ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s)
20       set forth above on this date.

21 [ ]   **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

22 Executed on December 5, 2006, at Los Angeles, California.

23 [ ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

24 [X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at
25       whose direction the service was made.

26

27    Cheri Hatch                              Signature _____
      Print Name

28

EXHIBIT 16
PAGE 199

EXHIBIT 17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES-GENERAL

CV04-09059-NM(RNBx)
CASE NO.  CV05-02727-NM(RNBx)        DATE:  5/20/05

TITLE:  Mattel Inc. -v- Carter Bryant, et al
        MGA Entertainment Inc. -v- Mattel, Inc.

PRESENT:        HON. NORA M. MANELLA, JUDGE

Judith Hurley            N/A
Deputy Clerk             Court Reporter

ATTORNEY FOR PLAINTIFF        ATTORNEY FOR DEFENDANT

    N/A                          N/A

PROCEEDINGS:  IN CHAMBERS

    Now that the Ninth Circuit has granted Mattel's petition for permission to file an interlocutory appeal, all discovery in these actions is stayed pending the determination of the appeal.  The stay of discovery also applies to pending & prospective discovery motions.

___ Priority
___ Send
___ Clsd
___ Enter
___ JS-5/JS-6
___ JS-2/JS-3

cc: Counsel
CIVIL MINUTES 11

Initials of Deputy Clerk

EXHIBIT  17
PAGE  200

EXHIBIT 17
PAGE 201

EXHIBIT 18

CONFORMED COPY
LODGED                    FILED

2007 MAY 16  PM 1:59  2007 MAY 16  PM 2:00

CLERK U.S. DISTRICT COURT  CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.    CENTRAL DIST. OF CALIF.
        RIVERSIDE                  RIVERSIDE
BY _____     BY _____

1 | Hon. Edward A. Infante (Ret.)
  | JAMS
2 | Two Embarcadero Center
  | Suite 1500
3 | San Francisco, California  94111
  | Telephone:   (415) 774-2611
4 | Facsimile:   (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                         EASTERN DIVISION

10

11 | CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
   |                                        JAMS Reference No. 1100049530
12 |          Plaintiff,

13 |      v.                                Consolidated with
   |                                        Case No. CV 04-09059
14 | MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15 |          Defendant.                    **ORDER GRANTING MATTEL'S**
   |                                        **MOTION TO COMPEL PRODUCTION**
16 |                                        **OF DOCUMENTS AND**
   |                                        **INTERROGATORY RESPONSES BY**
17 | CONSOLIDATED WITH                      **MGA**
   | MATTEL, INC. v. BRYANT and
18 | MGA ENTERTAINMENT, INC. v. MATTEL,
   | INC.
19 |
20

21                         I.  INTRODUCTION

22        On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

23 of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

24 20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

25 reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

26 submission pending the parties' submission of a proposed protective order, which was received

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              1

EXHIBIT 18
PAGE 202

1  on April 23, 2007.  Having considered the motion papers and comments of counsel at the hearing,

2  Mattel's motion to compel is granted.

3  ## II.  BACKGROUND

4  ### A.  Requests for Documents

5  In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6  became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7  categories of documents, to be produced in ten days.  MGA filed a motion to quash, which the

8  court granted because of the short amount of time provided for compliance with the subpoena.

9  The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10  some of Mattel's requests.  In particular, the parties agreed to limit production to the "first

11  generation" Bratz dolls.  On August 12, 2004, MGA produced documents.

12  In 2005, the parties stipulated to supplementing their document productions on May 16,

13  2005.  Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14  In September of 2006, MGA made a supplemental production of documents.  On February

15  5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16  with legibility problems.  On February 20, 2007, MGA produced an additional 224 pages of

17  documents to replace earlier produced documents with legibility problems.

18  Mattel now moves to compel MGA to produce documents responsive to its requests.  As a

19  preliminary matter, Mattel contends that MGA's production is deficient because it contains

20  redactions and cut-off text.  Further, Mattel contends that MGA's production is incomplete with

21  respect to essentially five categories of documents.  First, Mattel contends that MGA is

22  withholding documents relating to the origins of Bratz and Bryant's work for MGA.  Mattel

23  believes that MGA's production is incomplete based upon its review of documents that have been

24  produced by third party Steven Linker.  According to Mattel, Linker's documents from October

25  of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26  previously represented.  Mattel also contends that MGA's responses to the document requests

27

28

EXHIBIT __18__
PAGE __203__

1   contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2   responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3   show when certain dates relating to Bratz occurred.  Mattel contends that these "carve outs

4   purport to allow MGA to cherry-pick what it will and will not produce to Mattel."  Mattel's

5   Separate Statement at 17:11-13.  Mattel also contends that the carve-outs fail to provide notice of

6   what is or is not being withheld.  Mattel also contends that MGA's objections based upon its

7   confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8   protective order in place.  In addition, Mattel contends that MGA's objection to producing

9   documents relating to activities or conduct in foreign countries is wholly improper because those

10  documents may contain information relevant to Mattel's claims.

11          Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12  such documents relate to the "first generation" Bratz dolls.  Mattel argues that whether the work

13  ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14  discovery purposes.  Mattel contends that the works created by Bryant during his Mattel

15  employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16  a Bratz doll released at a particular time.[1]

17          Mattel next contends that MGA is improperly withholding documents about designs

18  Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19  be derivative of work he did when employed by Mattel.  Mattel contends that it is entitled to

20  explore whether such works and the profits from Bratz dolls other than the "first generation"

21  Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22  and damages.  Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23  improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24  information as well as MGA's unfair competition claims.

25  _____

26          [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
    to compel Bryant to produce documents.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                          3

EXHIBIT 18
PAGE   204

1    Mattel also asserts that MGA is improperly withholding documents relating to products,

2    services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3    Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4    Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5    Inventions Agreement.

6    Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7    payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8    because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9    (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10   damages; and (3) payments may show when and what trade secret information Bryant and other

11   defendants allegedly misappropriated from Mattel.

12   Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13   contends that all agreements between Bryant and MGA are relevant, not just the original

14   September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15   documents relating to MGA and Bryant's alleged joint defense agreement because such

16   information would be relevant to demonstrate bias and lack of credibility.

17   Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18   statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19   information may reveal relevant information about the date of creation of Bryant's Bratz

20   drawings.

21   In response, MGA denies withholding responsive documents and asserts that it has

22   produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23   that it has produced all responsive and relevant documents that it was able to locate in response to

24   request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25   before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26   motion. In particular, MGA represents that it is diligently working to produce documents related

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT __18__
PAGE __205__

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,
2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed
3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that
4   have been released on the market.  In addition, MGA represents that it has agreed to produce
5   documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More
6   specifically, MGA represents that it agreed to review and produce documents provided to it by
7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for
8   Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.
9   Therefore, MGA views the motion as unnecessary.

10          MGA next contends that Mattel's motion should be denied for the following additional
11   reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for
12   unreleased products.  MGA asserts that its product design documents for its unreleased toy
13   concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that
14   designs and drawings for products currently under development, over six years after Bryant first
15   created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that
16   documents relating to unreleased products are ordered produced, MGA requests a protective order
17   under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically
18   than the current protective order provides.  In the alternative, MGA requests that any order
19   compelling production of documents relating to unreleased products should essentially be stayed
20   until after MGA's products are publicly released.

21          Second, MGA contends that Mattel is not entitled to information concerning Bryant's
22   attorneys' fees because the information is privileged.  Furthermore, MGA contends that the
23   information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24
25
26
27
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 18
PAGE 206

1   in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2   Opposition at 24:9-12.[2]

3          Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4   and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5   refused to produce similar types of documents.  More significantly, MGA contends that Mattel's

6   requests for non-public witness statements are "a blatant attempt to avoid the discovery

7   limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8   imposed by this Court."  MGA's Opposition at 25:6-7.  MGA explains its position as follows.

9   MGA is involved in litigation against a number of counterfeiters and infringers in Asia.  In 2003,

10  Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11  attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12  abandoned its claims based upon "Toon Teens" in this court.  Thereafter, those defendants took

13  the position that MGA did not own, and therefore could not enforce, the rights to Bratz.  MGA

14  was thus forced to litigate the issue of ownership.  MGA contends that "[i]n effect, by prompting

15  foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16  a situation in which MGA has been forced to give testimony and provide evidence related to

17  issues in this case that Mattel now seeks to obtain wholesale."  MGA's Opposition at 25:5-24.

18         Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19  dispute between MGA's chief executive officer and his brother because such documents are in no

20  way relevant to this lawsuit.  MGA explains that the brothers were involved in an arbitration

21  proceeding relating to MGA's CEO's purchase of his brother's interest in MGA.  Moreover,

22  MGA contends that the brothers were bound by a protective order prohibiting the use of any

23  documents or testimony for any purpose other than the arbitration.

24

25  _____

26      [2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

27

28

Bryant v. Mattel, Inc.,                                                                                    6
CV-04-09049 SGL (RNBx)

EXHIBIT __18__
PAGE ___207___

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel
2    files because they contain confidential information and are not relevant to the lawsuit. Sixth,
3    MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are
4    in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly,
5    MGA objects to producing documents relating to any testing performed to determine the date that
6    Bratz documents were created. MGA contends that such discovery is premature and should not
7    proceed until experts are designated.

8        B. <u>Interrogatories</u>

9    On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005,
10    however, the district court stayed the action. On May 17, 2006, the district court lifted the stay.
11    On May 30, 2006, MGA responded to the interrogatories.

12    Mattel contends that MGA's responses to the interrogatories were untimely. Further,
13    Mattel contends that the interrogatory responses to numbers five through eleven are deficient
14    because they lack substantive information and consist almost entirely of objections. MGA
15    responds that the motion is moot because it is prepared to provide supplemental responses to its
16    interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's
17    motion to compel responses to interrogatories.

18    <u>III. DISCUSSION</u>

19        A. <u>Rule 26 of the Federal Rules of Civil Procedure</u>

20    Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain
21    discovery regarding any matter, not privileged, that is relevant to the claim or defense of any
22    party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the
23    discovery appears reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u>
24    Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is
25    unreasonably cumulative or duplicative, or is obtainable from some other source that is more
26    convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample
27
28

EXHIBIT 18
PAGE 208

1   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4   the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5   26(b)(2).

6         **B.**  <u>Document Requests</u>

7            1.  <u>Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,</u>

8               <u>34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100</u>

9         The requests above seek discoverable information regarding the origins of Bratz and

10  Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11  response to request nos. 6, 26, 27, 32, 33, 34, 35, 55, and 69 (MGA's Opposition at 13:4-5), and is

12  "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13  and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14  14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15  products and documents from MGA Hong Kong.

16        As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17  its production to "relevant and responsive non-objectionable documents" or documents

18  "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19  might be excluding documents that are responsive to the request based upon its unilateral

20  determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21  document requests ordered herein without these restrictions.

22                 <u>Design Documents for Unreleased Products</u>

23        MGA's design documents for unreleased products are relevant to Mattel's claims and

24  defenses and must be produced.  <u>See</u> Order Modifying Protective Order.  On April 23, 2007, the

25  parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26  design documents for unreleased products that constitute trade secret information.  <u>See</u> Stipulation

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                        8

EXHIBIT 18
PAGE 209

1   to Modify Protective Order; And Proposed Order Thereon ("stipulation"). The parties' stipulation

2   has been approved and entered as an order of the court. MGA is ordered to produce design

3   documents for unreleased products that are responsive to Mattel's document requests in

4   accordance with the terms of the stipulation and order.

5                       <u>Documents from MGA Hong Kong</u>

6         Documents relating to activities or conduct in foreign countries are relevant and

7   discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8   Bratz. Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9   provides reciprocal discovery from its subsidiaries.

10        Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein. MGA is ordered to produce

12  documents from MGA Hong Kong.

13        Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15        2. <u>Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16        61, 63, 66, 67, 70, 88, 90, 91</u>

17        Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls. MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21        As stated previously, design documents for yet unreleased products are relevant and

22  discoverable. <u>See</u> Order Modifying Protective Order. Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25        //

26        //

27

28

EXHIBIT __18__
PAGE ____210____

1       3. <u>MGA's Payments to Bryant (Nos.43, 45)</u>

2       MGA represents that it has already agreed to produce documents related to Bratz, without

3 limiting its production to "first generation" Bratz.  MGA's motion at 13:7-14:3.  Nevertheless,

4 Mattel is entitled to an order compelling production of such documents by a date certain.  Mattel's

5 motion is granted with respect to request nos. 43 and 45.

6       4. <u>MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)</u>

7       MGA represents that it has already agreed to produce non-privileged documents

8 responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not

9 relevant (MGA's motion at 13:7-14:3).  These requests seek documents relating to fee or

10 indemnity agreements between MGA and Bryant .

11       Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility.

12 Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50.  Any

13 responsive documents withheld on the basis of a privilege must be properly identified in a

14 privilege log.

15       5. <u>Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40,</u>

16       <u>41.</u>

17       In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits,

18 and other sworn written statements from cases that refer or relate to Bratz or Angel.  Mattel

19 anticipates that these documents could provide evidence relating to the conception date for Bratz.

20       Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception

21 date for Bratz.  MGA admits in its opposition brief that this issue was litigated in its suits against

22 alleged counterfeiters and infringers.[3]  The issue also appears to have been raised in the

23 arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother

24 Farhad Larian.  In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

25

26    [3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)        10

EXHIBIT 18
PAGE 211

1    that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2    documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3    protective order that prohibits the use of any documents or testimony for any purpose other than

4    the arbitration.  MGA, however, has not provided any evidence of the protective order.

5    Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6            6. Documents Regarding Date-Testing (Request No. 92)

7            Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8    from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9    testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10   and including without limitation all results and reports relating thereto."  MGA contends that the

11   request is premature, and should proceed in the course of expert discovery.

12           The request calls for relevant discovery and there is no basis for delaying production of

13   responsive documents, other than expert reports.  The timing of expert reports is governed by

14   Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15           C. Interrogatories

16           Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17   MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18   responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19   interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20   court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21   served.  The district court lifted the stay on May 17, 2006.

22

23

24

25        [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's

26   personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore

     should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28

EXHIBIT ___18___
PAGE ___712___

1    Neither party has cited to any caselaw governing the calculation of the 30-day period
2    when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses
3    will be treated as timely in order to preserve any valid objections MGA may have asserted.
4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the
5    conception, origin, creation, design, development, sculpting, engineering, reduction to practice,
6    tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz
7    before December 31, 2001, including a description of each person's role and the start and end
8    dates of each person's involvement. In response, MGA asserted numerous objections, but did
9    provide the names of five individuals.
10    The interrogatory clearly seeks information relevant to the claims at issue. MGA's
11    objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad.
12    Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls
13    for confidential, proprietary or commercially sensitive information, or seeks information
14    protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as
15    it fails to provide the description of each person's role and the start and end dates of each person's
16    involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No.
17    5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.
18    Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any
19    embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for
20    the reasons previously discussed in connection with Interrogatory No. 5.
21    Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to
22    December 31, 2001. In response, MGA asserted numerous objections and did not provide any
23    substantive information.
24    MGA's objections are without merit. The interrogatory clearly seeks information relevant
25    to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous,
26    compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is
27
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT 18
PAGE 213

1    unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2    seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3    provide a complete response to Interrogatory No. 7.

4         Interrogatory No.8 asks MGA to identify each and every embodiment of Angel.  MGA is

5    ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6    discussed in connection with Interrogatory No. 7.

7         Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8    or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9    or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10   substantive information.

11       The interrogatory seeks information relevant to establishing when Bryant first conceived

12   Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13   ordered to provide a complete response to Interrogatory No. 9.

14       Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15   was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16   which each such instance occurred, the location of each show or exhibit, and the identity of

17   persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18   objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19   about January 2001 and New York Toy Fair, New York, in or about February 2001.

20       Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21   potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22   incomplete insofar it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23   to provide a complete response to Interrogatory No. 10.

24       Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25   including without limitation each office, home and cell phone number, in the name of, for the

26   benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                        13

EXHIBIT ___18

PAGE ___214

1  January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2  limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3  boiler-plate objections.

4          Once again, MGA has failed to substantiate any of its objections with supporting

5  declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6  provide a full response to Interrogatory No. 11.

7                                    IV. CONCLUSION

8          For the reasons set forth above, Mattel's motion to compel production of documents is

9  granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10 identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11 for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12 motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13 provide responses to interrogatories consistent with this Order, and produce a privilege log in

14 compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15 sanctions is denied.

16         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17 Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21 Dated: May 15, 2007

22                                    HON. EDWARD A. INFANTE (Ret.)
                                      Discovery Master
23

24

25

26

27

28

Bryant v. Mattel, Inc.,                                                    14
CV-04-09049 SGL (RNBx)

EXHIBIT    1B
PAGE        215

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT    18
PAGE    216

EXHIBIT 19

Westlaw.

12/23/06 ABCNIGHTLINE (No Page)

12/23/06 ABC Nightline (Pg. Unavail. Online)
2006 WLNR 22434503

ABC Nightline
Copyright 2006 American Broadcasting Company

December 23, 2006

NIGHTLINE

[SHOW: ABC Nightline] [AIRDATE: 12/22/06] [AIRTIME: 23:35] [ANCHOR: MARTIN BASHIR]
[ANCHOR LOCATION: NEW YORK, NY USA] [STORY: NIGHTLINE]

TOPIC:

CONTENT:

GRAPHICS: NIGHTLINE

GRAPHICS: BRAWL IN THE DOLLHOUSE

MARTIN BASHIR (ABC NEWS): Tonight on 'Nightline," brawl in the dollhouse.  After
almost 50 years of domination, Barbie is facing brash new competition from the
Bratz dolls.  Billions of dollars are on the line.  It's a toy story where nobody
is playing nice.

GRAPHICS: CHRISTMAS JOURNEY

MARTIN BASHIR (ABC NEWS): A Christmas journey.  Retracing the root historians say
Joseph and Mary would have taken from Nazareth to Bethlehem.  The dangers, the
difficulties, then and today.

GRAPHICS: FANTASY VS REALITY

MARTIN BASHIR (ABC NEWS): Fantasy versus reality.  It seems like the perfect gift
for a romantic holiday season.  So why do so many of us get it wrong?  Tonight, we
take you inside one store that thinks it has the answer.

MATT NEELY (STOCKING FELLA): The 34B should look good.

ANNOUNCER: From the global resources of ABC News, with Terry Moran in Washington,
Martin Bashir and Cynthia McFadden in New York City, this is 'Nightline," December
22nd, 2006.

GRAPHICS: NIGHTLINE: DECEMBER 22, 2006

REPORTER: JOHN BERMAN
REPORTER LOCATION: LOS ANGELES, CA USA

TOPIC:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 19
PAGE 217          M 0062148

CONTENT: BARBIE, BRATZ, MATTEL, MICRO GAMES OF AMERICA, CHUCK SCOTHON

MARTIN BASHIR (ABC NEWS): (Off-camera)  Good evening.  Many of us have spent at least part of today rushing around the shops looking for that perfect Christmas present particularly for our children.  Toys are now big business.  Almost $11 billion will be spent on them during the holiday season alone.  And nowhere is the business more competitive than in the world of dolls.  Yes.  Barbie has long been the biggest-selling toy doll of all, but now there's a serious challenger.  And in the fight to be number one nobody's backing down.  Here's ABC's John Berman.

JOHN BERMAN (ABC NEWS): (Voiceover)  In this corner, measuring nine inches tall with big eyes and even bigger bling, the challenger, Bratz.  And in this corner, with flowing blond hair and impossibly disproportionate bust, a 47-year undisputed, undefeated champion from Mattel, Barbie.  Now you might think the world of dolls isn't the kind of place for a knock down, drag out brawl but you'd be wrong.

ISAAC LARIAN (CEO: Ken is not gonna save Barbie.  Barbie is not gonna save Barbie.  And the leadership that they have at Mattel right now, it's not gonna save Barbie.

JOHN BERMAN (ABC NEWS): (Off-camera)  You sound like a linebacker on a football team.  You're like taunting Mattel.

ISAAC LARIAN (CEO: It's good.  It's good for the business.

JOHN BERMAN (ABC NEWS): (Off-camera)  It's good?  Trash talking in the doll business is good?

ISAAC LARIAN (CEO: I'm not trash talking.  I'm telling - I'm talking about the facts.

JOHN BERMAN (ABC NEWS): (Voiceover)  Meet Isaac Larian.  The seemingly nice man who wants to pummel Barbie.  He is the CEO of Micro Games of America, which makes the Bratz doll.  He might not strike you as the doll kind of guy.  He came to the US from Iran with nothing.

ISAAC LARIAN (CEO: I came here in 1971 with a one-way ticket and $750 in my pocket and a big American dream.  And I have lived the American dream.

JOHN BERMAN (ABC NEWS): (Voiceover)  Larian went from washing dishes to building a toy company to the American dream on steroids.  Largely due to this big-eyed, big-headed cartoonish doll.  When Larian first saw the Bratz design in 2001, he thought they looked like aliens.

JOHN BERMAN (ABC NEWS): (Off-camera)  Do you still they look like aliens?

ISAAC LARIAN (CEO: No.  I think now they look beautiful.  I've grown to like them.

JOHN BERMAN (ABC NEWS): (Voiceover)  Last year's $2 billion in sales can make many things beautiful.  Larian now says Bratz has a 40% market share and is the number two doll in the US market.  Number two for now.  Larian claims his Bratz girls are breathing down the lanky plastic neck of number one.  That would be Barbie.

JOHN BERMAN (ABC NEWS): (Off-camera)  What's wrong with Barbie?

ISAAC LARIAN (CEO: It's time for her to retire.  She's been around for too long.

JOHN BERMAN (ABC NEWS): (Voiceover)  And you want to help Barbie retire?

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT __19__
PAGE ____78____          M 0062149

12/23/06 ABCNIGHTLINE (No Page)                                        Page 3

ISAAC LARIAN (CEO: Yes, I would help her retire.  I would throw a party for her.

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): He's welcome to
throw a party for Barbie any time he wants, but it won't be a retirement party.
She has been and will remain the number one fashion doll in the industry.

JOHN BERMAN (ABC NEWS): (Voiceover)  Meet Chuck Scothon.  A senior Mattel executive
and former high school offensive lineman.  His product is the long-legged goliath
of the toy business.  Since she was first created in 1959, Barbie has been an icon
among icons with almost absurd success.  One study found that 90% of American girls
between 3 and 10-years-old owns a Barbie doll.

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): Now, we're traveling
through the world of fairytopia.

JOHN BERMAN (ABC NEWS): (Voiceover)  Scothon doesn't like to talk about Bratz.  Let
alone the fact that they might pose a challenge.

JOHN BERMAN (ABC NEWS): (Off-camera)  How was it, do you think, this become a
story?

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): I think a lot of
people like to talk about the underdog and the leadership positions.  I think at
the end of the day it's really about making more out of something than there really
is.

JOHN BERMAN (ABC NEWS): (Voiceover)  But last year, Barbie might have started to
show her age.  Sales dropped 13%, just as Bratz were getting white hot.

JOHN BERMAN (ABC NEWS): (Off-camera)  Is Barbie in danger?

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): Not in the least.
Barbie has been and will continue to be the number one fashion doll.

JOHN BERMAN (ABC NEWS): (Voiceover)  Barbie has rebounded a bit this year, but
Isaac Larian is not impressed.  He says he has the key to cool.  A multicultural
doll with the edgy sassy attitude girls want these days.

ISAAC LARIAN (CEO: The kids look at Bratz dolls and they think they are teenagers.
And we ask them how old do you think Bratz dolls are?  They say they are teenagers.
And when they look at Barbie doll they think it's old mom.

JOHN BERMAN (ABC NEWS): (Off-camera)  They think mom when they look at Barbie
dolls?

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): What I would suggest
and say to that is, first of all if Barbie, for some girls, reminds them of their
mothers, I would think of nothing better.  The most important job a woman can have
in many ways is being a mom.

JOHN BERMAN (ABC NEWS): (Voiceover)  There is no mistaking a Bratz doll for a mom.

JOHN BERMAN (ABC NEWS): (Off-camera)  I look at that Bratz doll.  She's wearing,
you know, the leopard skin top, she's got the sequins, she's got the hairs, I mean,
you know, people have compared them to street walkers.  They look a little, you
know, trashy.

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 19
PAGE 219

M 0062150

ISAAC LARIAN (CEO: They don't look trashy to me.  And this is - I think trashy is in the eye of the adults.  When we show these to the little girls, and we have done that over and over, everybody said they're beautiful.  They never say they look like a streetwalker.

JOHN BERMAN (ABC NEWS): (Voiceover)  Barbie is clearly going for a different image. What image, you ask?

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): First and foremost, I would say the Barbie doll is truly based on some great values for little girls. The courage, inspiration, imaginative play.

JOHN BERMAN (ABC NEWS): (Voiceover)  Whatever that means exactly, Barbie is famous for having careers like Doctor Barbie and Astronaut Barbie.  The Bratz dolls? Well, they like...

CARTOON VOICEOVER (GROUP): Shopping.

JOHN BERMAN (ABC NEWS): (Voiceover)  This is their motto.

ISAAC LARIAN (CEO: The girls with the passion for fashion.

JOHN BERMAN (ABC NEWS): (Off-camera)  The girls with the passion for fashion.

ISAAC LARIAN (CEO: Right.

JOHN BERMAN (ABC NEWS): (Off-camera)  What's that about?

ISAAC LARIAN (CEO: They have good fashion.  It's okay to look good.  It's okay, who said that you have to, who said that girls don't have to look good?

JOHN BERMAN (ABC NEWS): (Off-camera)  And Barbie doesn't look good?  I could tell you, there are a lot of people who think Barbie looks good.

ISAAC LARIAN (CEO: I don't know.  The consumers who are buying Bratz doll don't think Barbie is good.

JOHN BERMAN (ABC NEWS): (Voiceover)  If all this is true why hasn't Bratz yet overtaken Barbie as number one?  According to Larian...

ISAAC LARIAN (CEO: We would have beaten them up this year and year before if they had not engaged in, what I call, really unfair competition.

JOHN BERMAN (ABC NEWS): (Off-camera)  Really unfair competition?  Those are fighting words.

ISAAC LARIAN (CEO: They are fighting words.

JOHN BERMAN (ABC NEWS): (Voiceover)  The Barbie-Bratz battle has moved beyond the Barbie dream house to the courthouse.  Round one.  Mattel filed a lawsuit alleging that the designer of the Bratz concept came up with the idea when he was working at Mattel.  Round two, Isaac Larian sued back saying that Mattel tried to corner the market on doll hair, and more seriously that Mattel ripped off the Bratz concept for a new line of Barbie dolls.  The MyScene dolls.

JOHN BERMAN (ABC NEWS): (Off-camera) This is, the MyScene Barbies are what has, to

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 19
PAGE 220

M 0062151

some extent, they're in the center of a little bit of a controversy now because Bratz says these look just like their dolls.

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): Okay.

JOHN BERMAN (ABC NEWS): (Off-camera)  I mean, don't you see the resemblance between MyScene Barbie and the Bratz doll?

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): What we see is an evolution to the Barbie brand.  And again, the Barbie brand is made up of dolls that target girls of every age because it's really an evolution of where the Barbie doll has been with a little bit more animated look, but not necessarily something that's been inspired by the competition at all.

JOHN BERMAN (ABC NEWS): (Voiceover)  The cases are still pending, but both companies say they are confident they will win the legal battle, though they say it differently.

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): I'm not really gonna talk about the legal piece of this.  I have all the confidence in the world that the justice system and that, that our attorneys can work through those issues.

ISAAC LARIAN (CEO: When we're done with Mattel, we will get them for billions of dollars, not only for this, but for defamation.

JOHN BERMAN (ABC NEWS): (Voiceover)  Who will prevail in this doll brawl?  It's one thing to be hot.  Bratz are hot, but another to be iconic.

ISAAC LARIAN (CEO: We're gonna become number one.  I promise you that.

CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION): I can't speak to his guarantee.  What I can speak to is I believe that Barbie will continue to be the number fashion doll around the globe.

JOHN BERMAN (ABC NEWS): (Off-camera)  We're talking about dolls.  I mean, shouldn't everyone be able to play nice?

ISAAC LARIAN (CEO: They have gotten away too much with bullying everybody around. And somebody has to stand up to them.  I will.

JOHN BERMAN (ABC NEWS): (Off-camera)  So you're gonna fight them on the schoolyard?

ISAAC LARIAN (CEO: I'm gonna fight, I'm gonna, not in the school schoolyard.  I'm gonna fight them in the courthouse.

JOHN BERMAN (ABC NEWS): (Off-camera)  And with this thing?

ISAAC LARIAN (CEO: With this thing and many other things.  But all 100% the old American fashion way.

JOHN BERMAN (ABC NEWS): (Voiceover)  Merry Christmas.  I'm John Berman for 'Nightline" in Los Angeles.

MARTIN BASHIR (ABC NEWS): (Off-camera)  The doll wars in a store near you.

GRAPHICS: ROAD TO BETHLEHEM

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 19
PAGE 221

M 0062152

12/23/06 ABCNIGHTLINE (No Page)                                    Page 6

MARTIN BASHIR (ABC NEWS): (Voiceover)  And just ahead on 'Nightline," retracing the
journey that has inspired millions for centuries.  In the footsteps of Joseph and
Mary.

GRAPHICS: STOCKING FELLAS

MARTIN BASHIR (ABC NEWS): (Voiceover)  And stocking fellas.  One store's solution
to the challenge of buying lingerie.  It's a 'Sign of the times."

ANNOUNCER: ABC News 'Nightline," brought to you by...

COMMERCIAL BREAK

REPORTER: WILF DINNICK
REPORTER LOCATION: NAZARETH, ISRAEL

TOPIC:

CONTENT: CHRISTMAS STORY, CHURCH OF NATIVITY, JESUS, MARY, JOSEPH, ISRAEL

MARTIN BASHIR (ABC NEWS): (Off-camera)  It's easy and commonplace to sentimentalize
the Christmas story.  Mary and Joseph, traveling for days on a donkey from their
home in Nazareth to Bethlehem.  Mary eventually giving birth to Jesus in a stable
because there was no room for them at the inn.  It wasn't an easy journey back
then, but imagine making the same trek today in 2006.  Here's ABC's Wilf Dinnick.

WILF DINNICK (ABC NEWS): (Voiceover)  A heavily pregnant woman, traveling across
deserts, through ancient cities and river crossings.  The story of a trip inspiring
Christians around the world.  The gospel according to Luke says it began in
Nazareth, a city where it's believed an angel told Mary she would have a son named
Jesus.

WILF DINNICK (ABC NEWS): (Off-camera)  Today, Nazareth is a city of about 70,000
people.  But back in Joseph and Mary's day, it was only a small village of about
1,000.  Now, to get to Bethlehem, it's actually only 65 miles, as the crow flies
but Joseph and Mary, they had a complicated route.  We're gonna take the exact same
route.  Well, they had a donkey.  We've got this car.

WILF DINNICK (ABC NEWS): (Voiceover)  The Bible does not have details of the
journey.  But historians told us, Mary and Joseph probably did not take the direct
way to Bethlehem because then, like today, the Middle East was a complicated,
sometimes dangerous, place.  From Nazareth they headed east to the Jordan River to
avoid hostile territory controlled by the Samaritans who hated Jews.  They crossed
the river by foot by the ancient city of Bet She'an.  Then through the Jordan
Valley, land that was controlled by Jewish kings, back into Israel, over the Jordan
River again and through the ancient city of Jericho passed Jerusalem and then on to
Bethlehem.  Steve Pfann sees similarities between today and 2,000 years ago.

STEPHEN PFANN (PRESIDENT: There is an interesting parallel that can be drawn with
border crossings, and police at the border, soldiers at the border, questions of
taxation and other types of things put more into a modern context.

WILF DINNICK (ABC NEWS): (Voiceover)  So, we drove from Nazareth to the Jordan
River.  It was in shallow areas like this where Mary and Joseph simply walked
across the river.

ISRAELI SECURITY PERSONNEL (MALE): But you don't understand.  Hey, I'm telling you,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT __19__
PAGE ___222___          M 0062153

12/23/06 ABCNIGHTLINE (No Page)                                    Page 7

there is a problem.

WILF DINNICK (ABC NEWS): (Voiceover)  But today, crossing the Jordan is not so
simple.  We were greeted by Israeli security.

WILF DINNICK (ABC NEWS): (Off-camera)  The security here is so tight in fact that
they won't even let us shoot here, even though we have permission.  This is the
Jordan Valley and this as far as we can come here because this is now an
international border.

WILF DINNICK (ABC NEWS): (Voiceover)  So from here on in, it was hidden cameras
only.  Passport checks, departure tax and duty-free.

WILF DINNICK (ABC NEWS): (Off-camera)  And then we have to get on a bus to make the
very short trip from Israel to Jordan.  This is how you have to do it in 2006.

WILF DINNICK (ABC NEWS): (Voiceover)  I did manage to sneak a few shots as we
crossed the Jordan River.  On the other side, Jordanians were also nervous about
our cameras.

WILF DINNICK (ABC NEWS): (Off-camera)  We face yet another delay here.  This is now
on the Jordanian side and the security here says we can't actually use the camera,
even though we applied for permission weeks ago, they somehow have lost our
permission.  So we're trying to go down to the Jordan Valley now, as quickly as we
can, and then we'll cross over to the Israeli side.

WILF DINNICK (ABC NEWS): (Voiceover)  The Jordan Valley is flat, perfect for
traveling.  In Joseph and Mary's day there would have been hardly anything here.
Today, plenty of busy Arab towns.

WILF DINNICK (ABC NEWS): (Off-camera)  Okay, let's go in.  A lot has changed over
the last 2,000 years but one thing that has remained the same is the type of bread
made almost exactly the same way as when Joseph and Mary made their journey.

WILF DINNICK (ABC NEWS): (Voiceover)  Then back into Israel, just before the border
closes.

WILF DINNICK (ABC NEWS): (Off-camera)  We're now gonna cross the Jordan River for
the second time here, where Mary and Joseph would have waded across on their way to
Bethlehem.

WILF DINNICK (ABC NEWS): (Voiceover)  Then on to the ancient town of Jericho, it is
Palestinian and the Israeli army demands special ID to enter.

WILF DINNICK (ABC NEWS): (Off-camera)  Could I get a falafel with hummus and pita?
Pita, yeah.  Okay.

WILF DINNICK (ABC NEWS): (Voiceover)  This was a chance for Mary and Joseph to rest
before the final, grueling leg of the trip, which was a treacherous road that was
yet again blocked for us by the Israeli army.

WILF DINNICK (ABC NEWS): (Off-camera)  This is the part of the trip we cannot do by
car.  This is the ancient route between Jericho and Bethlehem.  The silence here is
amazing, the view is stunning, but it must have been a daunting part of the journey
for Mary and Joseph.

WILF DINNICK (ABC NEWS): (Voiceover)  The last stretch of the journey that Mary and

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT __19__
PAGE __223__          M 0062154

Joseph took into Bethlehem is now impossible.  Blocked by Israel's security wall.  Even Bethlehem itself is cut off by the wall.  We had to drive through this gate controlled by Israeli soldiers.

WILF DINNICK (ABC NEWS): (Off-camera)  We finally arrive in Bethlehem, and that's the church of the nativity behind us.  Now our trip took 15 hours, we crossed two international borders and dozens of military checkpoints.  Joseph and Mary's trip took about a week.

WILF DINNICK (ABC NEWS): (Voiceover)  But on our trip, we met at least one historian who believes Joseph and Mary's journey never happened.  The gospel according to Luke says the couple made the trip to Bethlehem for a Roman census, but historians now know there was no census at the time.

REVEREND JEROME MURPHY-O'CONNOR (ECOLE BIBLIQUE: I have no problem with the divinity of Christ.  I have no problem with his birth in Bethlehem.  It's just the colorful little bits that writers, storytellers, felt inclined to add.  Those, we can legitimately question.

WILF DINNICK (ABC NEWS): (Voiceover)  He also believes, like many other historians, the couple already lived in Bethlehem and went to Nazareth later to look for work.  But don't tell that to anyone here.  In the Church of the Nativity, in this small spot where it's believed Mary gave birth to Jesus.  For the faithful, a miracle, after such a grueling journey.

REVEREND JEROME MURPHY-O'CONNOR (ECOLE BIBLIQUE: It's an extremely good yarn, and that's why it has survived because people prefer good yarns to the truth.

WILF DINNICK (ABC NEWS): (Voiceover)  And it is a good story.  And for us, an amazing journey.  Wilf Dinnick for "Nightline" in Bethlehem.

MARTIN BASHIR (ABC NEWS): (Off-camera)  The Christmas journey then and now.  And when we come back, Santa's little helpers like you've never seen them before.  It's a "Sign of the Times."

GRAPHICS: SIGN OF THE TIMES

COMMERCIAL BREAK

ANNOUNCER: 'Nightline" continues from New York City with Martin Bashir.

REPORTER: NICK WATT
REPORTER LOCATION: LONDON, ENGLAND

TOPIC:

CONTENT: LINGERIE, STOCKING FELLA, MARKS AND SPENCER, MYLA

MARTIN BASHIR (ABC NEWS): (Off-camera)  It seems like the perfect gift, the sexy little outfit for the one we love this Christmas.  If only it were that simple.  According to experts, men are simply hopeless at choosing lingerie.  So now, a department store in Britain is employing Santa's little helpers to guide men away from any lingerie land mines and, according to ABC's Nick Watt, it's a "Sign of the Times."

MATT NEELY (STOCKING FELLA): (Inaudible) nice, actually.  You guys doing okay?  Finding everything you want?  Yeah?

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT __19__
PAGE ____224____                    M 0062155

12/23/06 ABCNIGHTLINE (No Page)                                    Page 9

CUSTOMER (MALE): Yeah, we're fine.

CUSTOMER (FEMALE): Yes, thank you.

CUSTOMER (MALE): Thank you, sir.

MATT NEELY (STOCKING FELLA): Give me a shout if you need any more help.

NICK WATT (ABC NEWS): (Voiceover)  Here at Marks and Spencer they noticed a lot of lingerie returned by women after Christmas.  The problem?  Men were buying it. Matt Neely is part of the solution.

MATT NEELY (STOCKING FELLA): We were given all sorts of training about the styles of bra and what function it performs in terms pushing it together or lifting up, or squashing it down.

MATT NEELY (STOCKING FELLA): There we are.

NICK WATT (ABC NEWS): (Voiceover)  Two hundred stocking fellas were sent out to help hapless husbands.

MATT NEELY (STOCKING FELLA): That's quite sweet.

CUSTOMER (MALE): Mm-hmm.

MATT NEELY (STOCKING FELLA): Okay?

CUSTOMER (MALE): No.

MATT NEELY (STOCKING FELLA): You know, if the guys are wandering around not really know what they're doing, or kind of skirting around the outside too afraid to step in.

NICK WATT (ABC NEWS): (Voiceover)  He helps the unromantic.

NICK WATT (ABC NEWS): (Off-camera)  Do you always buy underwear for Christmas?

CUSTOMER (MALE): No.

NICK WATT (ABC NEWS): (Off-camera)  So why this year?

CUSTOMER (MALE): Because I've run out of ideas.

MATT NEELY (STOCKING FELLA): Yeah.

NICK WATT (ABC NEWS): (Voiceover)  He helps the clueless.

MATT NEELY (STOCKING FELLA): What color are you looking for?

CUSTOMER (MALE): Well...

NICK WATT (ABC NEWS): (Voiceover)  He even helps those who think they know better.

NICK WATT (ABC NEWS): (Off-camera)  Do you have the right size?

CUSTOMER (MALE): I have the right size, yeah.

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT  19
PAGE  225                    M 0062156

NICK WATT (ABC NEWS): (Off-camera)  Color?

CUSTOMER (MALE): Well, color is my, my choice really, actually.

MATT NEELY (STOCKING FELLA): Hopefully, the presence of another man in the department will put them at ease.

NICK WATT (ABC NEWS): (Off-camera)  Now, this is Myla, an upmarket lingerie boutique where they have a very different philosophy.  Here, they only employ women.

TAMARA DAVIES (MANAGER: I would say 75% of my customers are men.

NICK WATT (ABC NEWS): (Off-camera)  Are men?

TAMARA DAVIES (MANAGER: Are men.  Male.

NICK WATT (ABC NEWS): (Voiceover)  Men, like Anatoly (PH).

TAMARA DAVIES (MANAGER: Do you know what she likes?  Do you know what color?

CUSTOMER (MALE): Colors, yeah, yeah.

TAMARA DAVIES (MANAGER: Size?

CUSTOMER (MALE): Size, yeah.  I think, it's a must if you - you have to know your woman.

NICK WATT (ABC NEWS): (Voiceover)  But even at Myla, some men aren't quite so sure about the size.

TAMARA DAVIES (MANAGER: So they're like this, or, I mean, as a woman, you know, female working here, we have men come in and said, 'She's your size, what size are you?"

NICK WATT (ABC NEWS): (Voiceover)  So, there's one bonus of a female assistant but it's not male bonding.

NICK WATT (ABC NEWS): (Off-camera)  And how do you put them at ease?

TAMARA DAVIES (MANAGER: Smiling, 'Hello, how are you today?"  Talk about the weather.

NICK WATT (ABC NEWS): (Off-camera)  Bit of humor?

TAMARA DAVIES (MANAGER: A bit of humor, yes.  We do that.

NICK WATT (ABC NEWS): (Off-camera)  Do you flirt a little bit?

TAMARA DAVIES (MANAGER: Yes, a little.

NICK WATT (ABC NEWS): (Off-camera)  Apparently a lot of men end up buying two pairs, something safe and something saucy that they're both gonna enjoy.

NICK WATT (ABC NEWS): (Voiceover)  As Bridget Jones found out in the movie, safe can also be sexy.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 14
PAGE 206

M 0062157

CLIP FROM "BRIDGET JONES'S DIARY"

HUGH GRANT (ACTOR): Oh, absolutely enormous panties.  No, no, don't apologize.  I like them.  Hello, mommy.

TAMARA DAVIES (MANAGER: Men don't wanna leave here.  I got a guy here in yesterday, and he was looking around.  He spent about half an hour, and he said to me, 'I just, I just don't wanna leave.  I wanna stay here forever."

MATT NEELY (STOCKING FELLA): It's a 34B, which will be no good.

NICK WATT (ABC NEWS): (Voiceover)  I wonder if any one's ever said that...

MATT NEELY (STOCKING FELLA): Yeah.

NICK WATT (ABC NEWS): (Voiceover)  ...to a stocking fella?  I'm Nick Watt for "Nightline" in Lingerie Land.

MARTIN BASHIR (ABC NEWS): (Off-camera)  And in case you're wondering, I bought my wife a rather fetching handbag.  And when we come back, a special look at the achievements and events of the past year.

COMMERCIAL BREAK

MARTIN BASHIR (ABC NEWS): (Off-camera)  Next week on "Nightline," a look at some memorable moments and provocative people we've covered during 2006.  The year in entertainment, power, money and love.  It's all part of our special series beginning on Christmas Day with the 'Year in Jesus."  We hope you'll join us.  But that's our report for tonight.  I'm Martin Bashir.  For Cynthia McFadden, Terry Moran, and all of us at ABC News, good night America and have a very happy and peaceful Christmas.

FOR INFORMATION ON ORDERING A VIDEO OR TRANSCRIPT COPY OF ABC NEWS OR ABC NEWS NOW PROGRAMMING, PLEASE VISIT THE SECURE ONLINE ORDER FORM LOCATED AT WWW.TRANSCRIPTS.TV

             ---- INDEX REFERENCES ----

COMPANY: MATTEL INC; ABC NEWS; BRATZ F C; REACH TRADE AND MARKETING; ABC

INDUSTRY:  (TV (1TV19); Underwear (1UN06); Entertainment (1EN08); Gen Y Entertainment (1GE14); TV Programming (1TV26); Games & Toys (1GA85); Gen Y TV (1GE33); Apparel (1AP19); Consumer Products & Services (1CO62); Children's Apparel (1CH40); Apparel & Textiles (1AP20))

REGION:  (Americas (1AM92); North America (1NO39); Mediterranean (1ME20); Middle East (1MI23); USA (1US73); Palestine (1PA37); New York (1NE72); Israel (1IS16); Arab States (1AR46))

Language:  EN

OTHER INDEXING:  (MARTIN BASHIR (ABC NEWS); MARTIN BASHIR (ABC NEWS); MARTIN BASHIR (ABC NEWS); MATT NEELY (STOCKING FELLA); ANNOUNCER; MARTIN BASHIR (ABC NEWS); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 19
PAGE   221        M 0062158

BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); CARTOON VOICEOVER (GROUP); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); JOHN BERMAN (ABC NEWS); CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; CHUCK SCOTHON (SENIOR VICE PRESIDENT MATTEL - GIRLS DIVISION); JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); ISAAC LARIAN (CEO; JOHN BERMAN (ABC NEWS); MARTIN BASHIR (ABC NEWS); MARTIN BASHIR (ABC NEWS); MARTIN BASHIR (ABC NEWS); ANNOUNCER; MARTIN BASHIR (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); STEPHEN PFANN (PRESIDENT; WILF DINNICK (ABC NEWS); ISRAELI SECURITY PERSONNEL (MALE); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); WILF DINNICK (ABC NEWS); REVEREND JEROME MURPHY-O'CONNOR (ECOLE BIBLIQUE; WILF DINNICK (ABC NEWS); REVEREND JEROME MURPHY-O'CONNOR (ECOLE BIBLIQUE; WILF DINNICK (ABC NEWS); MARTIN BASHIR (ABC NEWS); ANNOUNCER; MARTIN BASHIR (ABC NEWS); MATT NEELY (STOCKING FELLA); CUSTOMER (MALE); CUSTOMER (FEMALE); CUSTOMER (MALE); MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); MATT NEELY (STOCKING FELLA); MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); MATT NEELY (STOCKING FELLA); CUSTOMER (MALE); MATT NEELY (STOCKING FELLA); CUSTOMER (MALE); MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); NICK WATT (ABC NEWS); CUSTOMER (MALE); NICK WATT (ABC NEWS); CUSTOMER (MALE); MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); MATT NEELY (STOCKING FELLA); CUSTOMER (MALE); NICK WATT (ABC NEWS); NICK WATT (ABC NEWS); CUSTOMER (MALE); NICK WATT (ABC NEWS); CUSTOMER (MALE); MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; CUSTOMER (MALE); TAMARA DAVIES (MANAGER; CUSTOMER (MALE); NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; NICK WATT (ABC NEWS); NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; NICK WATT (ABC NEWS); TAMARA DAVIES (MANAGER; NICK WATT (ABC NEWS); NICK WATT (ABC NEWS); HUGH GRANT (ACTOR); TAMARA DAVIES (MANAGER; MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); MATT NEELY (STOCKING FELLA); NICK WATT (ABC NEWS); MARTIN BASHIR (ABC NEWS); MARTIN BASHIR (ABC NEWS)) (ABC; ABC NEWS; BASHIR; BETHLEHEM; BIBLE; BRATZ; BRAWL; CHRISTMAS; CHRISTMAS JOURNEY; CHUCK; CONTENT; CONTENT: BARBIE; CONTENT: CHRISTMAS; CONTENT: LINGERIE; CYNTHIA MCFADDEN TERRY MORAN; DIARY; DIVISION; DOLLHOUSE; FANTASY; FELLAS; GRAPHICS; GRAPHICS: BRAWL; GRAPHICS: CHRISTMAS; GRAPHICS: FANTASY; GRAPHICS: SIGN; HUGH; ISAAC; JEWISH; JOSEPH; JOURNEY; KEN; LUKE; MARTIN BASHIR; MARY GRAPHICS: STOCKING; MATT; MATTEL; NICK; NIGHTLINE; NIGHTLINE: DECEMBER; PALESTINIAN; SIGN; STOCKING; TAMARA; TERRY MORAN; TOPIC; USA) (Astronaut Barbie; Barbie; Barbies; BRATZ; BRATZ DOLL WARS; Cynthia McFadden; Doctor Barbie; Finding; Hey; Isaac; Isaac Larian; JOHN BERMAN; Jordanians; Largely; Larian; Mary; Matt Neely; MyScene Barbie; Passport; Round; Steve Pfann)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT ___19___
PAGE ___228___        M 0062159

12/23/06 ABCNIGHTLINE (No Page)                                    Page 13

Word Count: 5025
12/23/06 ABCNIGHTLINE (No Page)

END OF DOCUMENT

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT __19__
PAGE __229__                    M 0062160

EXHIBIT 20

Case 2:04-cv-09049-SGL-RNB   Document 3902   Filed 06/02/2008   Page 1 of 4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                            Date: June 2, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.

<u>Consolidated With Related Actions</u>:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC. v. CARTER BRYANT
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC. v. MATTEL, INC.
==================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes
          Courtroom Deputy Clerk

<u>ATTORNEYS PRESENT FOR CARTER BRYANT</u>:     <u>ATTORNEYS PRESENT FOR MATTEL</u>:

None Present                                    None Present


<u>ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN</u>:

None Present

PROCEEDINGS:   **FURTHER AND FINAL ORDER RE STATUTE OF LIMITATIONS DEFENSE
               (IN CHAMBERS)**

     In an order dated May 27, 2008, the Court made several rulings regarding the timeliness of
Mattel's claims ("SOL Order").  At that time, the Court invited further, limited briefing from the
parties regarding "what further conclusions regarding the timeliness of each claim should be
drawn" in light of the Court's rulings.  The parties filed further briefing in conformity with the Court's
Order, which the Court has reviewed.

     As a result of the briefing, the Court discusses the following issues:  (1) Clarification of the
Court's Ruling Regarding the August 2002 Anonymous Letter; (2) Clarification of the Court's
Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with
Contractual Relations and Conversion; and (3) Accrual of Mattel's Copyright Claim.

MINUTES FORM 90                                        Initials of Deputy Clerk: jh
CIVIL -- GEN                          1

EXHIBIT 20
PAGE 730

## I. Clarification of the Court's Ruling Regarding the August 2002 Anonymous Letter

The parties differ on their interpretation of the Court's holding as to the earliest accrual date of Mattel's claims. Although the Court's SOL Order, read as a whole, is most reasonably interpreted as clarified herein, MGA, quite understandably, interprets the Court's Order in a manner more favorable to its position regarding the statute of limitations defense. Accordingly, the Court clarifies its Order as set forth below.

In a key paragraph of the SOL Order, the Court articulates the four possible accrual dates of those state-law claims, asserted by Mattel against Carter Bryant, that are subject to the discovery rule:[1]

> MGA has raised triable issues of fact precluding summary judgment on the statute of limitations issue. Any of the following could be the date upon which MGA claims against Carter Bryant accrued: The July 18, 2003, Wall Street Journal article; the September 23, 2003, date of receipt of the City World "claim"; the October 17, 2003, date of counsel's letter to Mattel regarding the City World litigation; or the November 24, 2003, date of receipt of the MGA-Bryant agreement that pre-dated Bryant's resignation of his employment.

SOL Order at 7-8. This portion of the Court's Order implicitly rejects MGA's contention that the August, 2002, letter could give rise to Mattel's claims against Bryant.

As set forth in the SOL Order, a claim accrues where a plaintiff has **_knowledge_** of at least one of the three generic elements of wrongdoing, causation, and harm. Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807 (Cal. 2005) (citation omitted). The SOL Order did not explicitly state, as the Court does now, that there is no evidence that Mattel had any **_knowledge_** of any one of the three generic elements of its claims, and thus no claim accrued, prior to the earliest date identified by the Court, which is July 18, 2003.

MGA's argument that Mattel's claims against Carter Bryant could have accrued in August 2002, is based on a statement made by the Court's regarding when the claims against MGA Entertainment, Inc., accrued:

> The Court rejects the proposition, however, that the claims against both MGA entities did not arise until the date of Carter Bryant's deposition. Whatever the date on which the claims against Carter Bryant arose is ultimately found to be, the August 2002 anonymous letter should have given Mattel a suspicion of that MGA Entertainment, Inc., participated in any wrongdoing by Carter Bryant. See Zeller Decl. Ex. 63

---

[1]     This portion of the Court's Order does not apply to Mattel's claims for intentional interference with contractual relations and conversion, which are addressed infra, in Section II.

EXHIBIT   20
PAGE    231

(alleging that Carter Bryant "worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls").

SOL Order at 9. Mattel's understanding of this part of the SOL Order, that the claims against MGA Entertainment, Inc., accrued on the same date as did the claims against Carter Bryant, is correct. See Mattel Supp. Brief at 6 n.4.

## II. Clarification of the Court's Ruling Regarding Fraudulent Concealment and Mattel's Claims for Intentional Interference with Contractual Relations and Conversion

The Court's statute of limitations analysis regarding Mattel's claims for intentional interference with contractual relations and conversion was rather inartfully articulated. The Court's ruling was meant to convey that although the remainder of the state-law claims asserted by Mattel are subject to the discovery rule, these two claims are not. Therefore, the conclusions drawn by the Court regarding the possible accrual dates for the remaining state-law claims do not apply to Mattel's claims for intentional interference with contractual relations and conversion. Instead, these claims, having arisen around the time Bryant resigned from Mattel, are time-barred unless the relevant limitations periods have been extended by a period of fraudulent concealment.

Whether a period of fraudulent concealment exists, as well as the duration of any such period, cannot be determined on the undisputed record and are therefore questions of fact for the jury.

## III. Accrual of Copyright Claim

The supplemental briefing brings into focus an issue not addressed by the SOL Order: The accrual date of Mattel's copyright claim.

MGA refers to two arguments it made in its partial summary judgment papers regarding the statute of limitations and Mattel's copyright claim. First, MGA argues that the date Mattel registered its copyrights impacts upon the Court's application of the relation-back doctrine; second, MGA argues that the "rolling" statute of limitations regarding copyright claims is inapplicable when the gravamen of the claim is a claim of ownership rather than infringement.

Mattel did not address this issue in its supplemental briefing, which was filed concurrently with MGA's supplemental briefing. In its partial summary judgment papers, however, Mattel had responded to these arguments.

In reviewing the supplemental briefs, as well as the relevant portions of the partial summary judgment papers, and reflecting upon the hearings held on this matter, the Court concludes that it need not resolve MGA's two arguments.

In the SOL Order, the Court's analysis equated the accrual of Mattel's copyright claim with

EXHIBIT ___20___
PAGE ___232___

the accrual with certain of Mattel's state-law claims; as explained below, this analysis overlooks important concepts of copyright law.

As noted by the Court in its order regarding summary judgment, in order to establish copyright infringement, a plaintiff must establish three elements:  (1) ownership of a valid copyright, (2) the defendant's access to the original, and (3) substantial similarity between the copyrighted work and the allegedly infringing work.  Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003).  Here, although the date Mattel received details regarding the City World litigation is in dispute, it is uncontroverted that Mattel did not receive copies of the Bratz drawings prior to November 23, 2003.  Without the drawings, Mattel could not assess the substantial similarity factor to determine whether it could assert a claim that the Bratz dolls infringed Mattel's rights to them.  Accordingly, on the undisputed record, the Court concludes that Mattel's copyright claim did not accrue prior to November 23, 2003.

Therefore, when first asserted on November 20, 2006, Mattel's copyright claim was timely in its own right, and the Court need not resolve MGA's two arguments regarding relation back and the rolling statute of limitations.[2]

**IT IS SO ORDERED.**

---

[2]  In accordance with the foregoing, the Court VACATES the following language from the SOL Order:

The accrual of a copyright claim, as the parties recognize, approximates the state-law standard discussed herein.  See Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) ("Thus, . . . the statute of limitations does not prohibit recovery of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances.").  Accordingly, the Court makes the same conclusion regarding the accrual date of Mattel's copyright claim against Carter Bryant as it does regarding the accrual date of Bryant's state-law claims.

SOL Order at 8.

MINUTES FORM 90
CIVIL – GEN                                    4                         Initials of Deputy Clerk: jh

EXHIBIT 20
PAGE 233

EXHIBIT 21

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 22

**Attachments:** MGA 3896247.xls; MGA 3896248.xls; MGA 3896249.xls; MGA 3896250.xls; MGA
3896239.xls; MGA 3896240.xls; MGA 3896241.xls; MGA 3896242.xls; MGA 3896243.xls;
MGA 3896244.xls; MGA 3896245.xls; MGA 3896246.xls

REDACTED

**From:** Weinstein, Ryan [mailto:Ryan.Weinstein@skadden.com]

EXHIBIT ___22___
PAGE ___260___

**Sent:** Tuesday, July 22, 2008 10:14 PM
**To:** Jon Corey
**Cc:** Roth, Carl A (LAC)
**Subject:** RE: Mattel v. MGA -- Part 2 of 3

Production Part 2 of 3.

All documents are designated "Attorneys' Eyes Only"

---

**From:** Jon Corey [mailto:joncorey@quinnemanuel.com]
**Sent:** Thursday, July 17, 2008 11:22 PM
**To:** Roth, Carl A (LAC)
**Cc:** Aguiar, Lauren E (NYC); Nolan, Thomas J (LAC); Herrington, Robert J (LAC); Michael T Zeller; Dylan Proctor
**Subject:** Mattel v. MGA

Carl,

With the verdict in Phase 1A, I write to follow up on two outstanding matters regarding MGA and Larian financial information.

First, as you will recall, the Court compelled Isaac Larian to provide Mattel with current financial information relating to his net worth. We expect to call Mr. Larian early on in Mattel's case. Please confirm that Mr. Larian will provide complete financial information as of year end 2007 and as of June 30, 2008 no later than next Wednesday, July 23, 2008 so that Mattel's experts may take that information into account. Please further confirm that said financial information will include (a) any and all assets owned or controlled by him or by any entity in which he or any of his trusts has a controlling interest, and (b) any distributions received by him or any Larian-affiliated trusts since June 2007.

Second, Mattel again asks MGA to provide financial information (audited financial statements, operating statements, revenues and costs by product, etc., distributions, etc.) through June 2008. Please be advised that Mattel has projected MGA financial results for MGA through June 2008. Unless MGA agrees to produce updated financial information, which MGA surely possesses, then Mattel will seek to preclude MGA from introducing any actual information not identified on the current exhibit list to challenge Mattel's projections or the assumptions upon which those projections are based.

Best regards,

---

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof.

EXHIBIT ___22___
PAGE ___261___

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
*************************************************

EXHIBIT _____ 22
PAGE _____ 202

3/5/2009

EXHIBIT 23

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER