1  Bingham McCutchen LLP
   TODD E. GORDINIER (SBN 82200)
2  todd.gordinier@bingham.com
   PETER N. VILLAR (SBN 204038)
3  peter.villar@bingham.com
   CRAIG A. TAGGART (SBN 239168)
4  craig.taggart@bingham.com
   600 Anton Boulevard, 18th Floor
5  Costa Mesa, CA  92626-1924
   Telephone:  714.830.0600
6  Facsimile:  714.830.0700

7  Attorneys For Specially Appearing Non-party
   LEXINGTON FINANCIAL LIMITED
8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  Carter Bryant, an individual, | Case No. CV 04-9049 SGL (RNBx) |
| 12          Plaintiff, | **[To Be Heard By Discovery Master Robert C. O'Brien]** |
| 13              v. | |
| 14  Mattel, Inc., a Delaware Corporation, | **SPECIALLY APPEARING NON-PARTY LEXINGTON FINANCIAL LIMITED'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL, INC.'S EX PARTE APPLICATION FOR AN ORDER DEEMING LEXINGTON FINANCIAL, LLC SERVED, OR IN THE ALTERNATIVE, TO (1) COMPEL AN AUTHORIZED REPRESENTATIVE OF LEXINGTON FINANCIAL, LLC TO APPEAR TO ACCEPT SERVICE OF SUBPOENA, OR (2) ISSUE AN ORDER AUTHORIZING LEXINGTON FINANCIAL, LLC TO BE SERVED THROUGH THE CALIFORNIA SECRETARY OF STATE** |
| 15          Defendant. | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24  AND CONSOLIDATED ACTIONS. | **Phase 2:** |
| 25 | Discovery Cut-off:        Dec. 11, 2009 |
|    | Pre-trial Conference:     March 1, 2010 |
|    | Trial Date:               March 23, 2010 |

26

27

28

## TABLE OF CONTENTS

Page

I.     INTRODUCTION .......................................................................................... 1

II.    STATEMENT OF FACTS.............................................................................. 4

       A.   Lexington Is An Overseas Entity With No Affiliation With
            MGA Entertainment, Inc. Or Issac Larian............................................ 4

       B.   Fred Mashian Is Not Lexington's Agent And Is Not Authorized
            To Accept Service On Behalf Of Lexington........................................... 4

       C.   Bingham Did Not Agree To Accept Service On Behalf Of
            Lexington ............................................................................................. 5

III.   THERE IS NO LEGAL BASIS FOR EX PARTE RELIEF........................... 6

       A.   Mattel's Ex Parte Application Should Be Denied Because
            There Is No Good Cause Or Exigent Circumstances ........................... 6

       B.   Mattel's Ex Parte Should Be Denied Because It Failed To
            Provide Notice Under Local Rules 7-19 And 7-19.1 And Judge
            Larson's Standing Order ..................................................................... 9

       C.   Lexington Will Be Unfairly Prejudiced If This Court Decides
            These Issues On An Ex Parte Basis ................................................... 11

IV.    THE SUBPOENA WAS NOT PROPERLY ISSUED OR SERVED ......... 12

       A.   Mattel's Subpoena Was Not Properly Issued ..................................... 12

       B.   Mattel Has Not Effected Service On Lexington ................................. 12

            1.   Mattel's Purported Service On Mr. Mashian Is A Nullity ...... 13

            2.   Mattel's Email Transmission Of The Subpoena To
                 Bingham Is Also Insufficient To Effect Service ..................... 15

       C.   The Court Should Deny Mattel The Alternative Relief
            Requested In Its Ex Parte Application ............................................... 16

-i-

TABLE OF CONTENTS
(continued)

Page

1. This Court Does Not Have Authority To Compel An Overseas Entity To Appear And Accept Service In California ................................................................................. 16

2. This Court Does Not Have Authority To Permit Mattel To Serve Lexington Via The California Secretary Of State .......................................................................................... 17

V. CONCLUSION ........................................................................................ 19

-ii-

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Ellis v. Johnston,*
    No. CV 07-508-PHX-MHM, 2008 WL 508642 (D. Ariz. Feb. 21, 2008) ..13, 15

*GMA Accessories, Inc. v. BOP, LLC,*
    No. 07 Civ. 3219(LTS)(DF), 2008 WL 4974430 (S.D.N.Y. Nov. 19,
    2008) .................................................................................................... 14, 17

*Grandbouche v. Lovell,*
    913 F.2d 835 (10th Cir. 1990) ................................................................ 14, 15

*Harrison v. Prather,*
    404 F.2d 267 (5th Cir. 1968) ........................................................................ 13

*In re Dennis,*
    330 F.3d 696 (5th Cir. 2003) ........................................................................ 16

*Jamdat Mobile, Inc. v. Jamster Int'l Sarl Ltd.,*
    No. CV 05-3945 PA (FMOx), 2005 WL 5960924, at *1 (C.D. Cal. Oct.
    4, 2005) ........................................................................................................... 6

*Lehman v. Kornblau,*
    206 F.R.D. 345 (E.D.N.Y. 2001) .................................................................. 13

*LeVecke v. Griesedieck Western Brewery Co.,*
    233 F.2d 772 (9th Cir. 1956) ........................................................................ 18

*Mid-Continent Wood Products, Inc. v. Harris,*
    936 F.2d 297 (7th Cir. 1991) ........................................................................ 13

*Mission Power Engineering Co. v. Continental Cas. Co.,*
    883 F. Supp. 488 (C.D. Cal 1995) ......................................................... 1, 7, 8, 11

*Ransom v. Brennan,*
    437 F.2d 513 (5th Cir. 1971) ........................................................................ 13

*Roofers Local 149 Sec. Benefit Trust Fund v. Milbrand Roofing Group, Inc.,*
    2007 WL 2421479 (E.D. Mich. Aug. 22, 2007) .......................................... 14

*Samsung SDI Co. v. Matsushita Electric Indust. Co.,*
   No. 05-8493 PA (SHx), 2006 WL 5097404 (C.D. Cal. June 15, 2006) ...............7

*United States v. Ziegler Bolt & Parts Co.,*
   111 F.3d 878 (Fed. Cir. 1997) .............................................................................13

**STATE STATUTES**

Cal. Corp. Code § 2015 ............................................................................................18

Cal. Corp. Code § 2100 ............................................................................................18

Cal. Corp. Code § 2105 ............................................................................................18

Cal. Corp. Code § 2111 ............................................................................................18

**RULES**

Fed. R. Civ. P. 4(f) ...........................................................................................12, 17

Fed. R. Civ. P. 45 ............................................................................................13, 16

Fed. R. Civ. P. 45(a)(2) ...................................................................................12, 17

Fed. R. Civ. P. 45(b)(1) ...........................................................................................14

Fed. R. Civ. P. 45(b)(2) ...........................................................................................17

Fed. R. Civ. P. 45(b) ................................................................................................12

Local Rule 7-19 .............................................................................................6, 9, 10

Local Rule 7-19.1 ..........................................................................................6, 9, 10

A/72862811.3

## I.   INTRODUCTION

Mattel, Inc.'s *ex parte* application asks this Court to rubber stamp a subpoena that was not properly issued or served, in manifest disregard of the federal rules and procedures and international laws governing subpoenas directed at overseas entities.  Mattel also seeks this unprecedented and unauthorized relief on an *ex parte* basis, in violation of the Central District Local Rules and established Ninth Circuit precedent governing *ex parte* applications. LEXINGTON FINANCIAL LIMITED ("Lexington") hereby specially appears for the limited purpose of responding to Mattel's *ex parte* application, but does not consent to the jurisdiction of this Court.

"[F]iling an ex parte motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!'  There had better be a fire." *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal 1995).  It is evident from Mattel's *ex parte* application that there is no smoke, let alone fire.  Mattel has not shown any emergency, nor any other legitimate basis for ignoring the applicable notice requirements and seeking *ex parte* relief.  Indeed, if Mattel's stated reasons justify *ex parte* relief, it is difficult to envision a scenario under which a party would ever have to file a noticed motion.

The only purported grounds upon which Mattel seeks *ex parte* relief are: (1) that Judge Larson recently set the Phase 2 discovery cut-off for December 11, 2009 (*more than nine months away*); (2) that Mattel has pending motions seeking the appointment of a receiver (*which Judge Larson declined to grant at the February 11, 2009 hearing and has no relation to the Lexington subpoena*); and (3) that MGA "likely" will seek a stay of discovery (*which is pure speculation and does not justify ex parte relief in any event*).  (*See* Mattel's Ex Parte at 1.)  None of these alleged circumstances come close to necessitating *ex parte* relief.

1          Notably, when the Discovery Master asked Mattel's counsel to explain the

2    exigent circumstances at the March 4, 2009 hearing, Mattel's counsel did not cite

3    any of the alleged circumstances set forth in Mattel's application but instead

4    offered an off-the-cuff concern about the "preservation" of documents. This

5    excuse was not included in Mattel's papers and has no factual support. The reality

6    is that Mattel strategically waited until the night of March 3, 2009 to file its *ex*

7    *parte* application because Lexington's counsel would be unavailable to respond

8    due to the March 4 hearing -- not because of any purported exigency or irreparable

9    harm. In all events, Mattel has made no showing of any emergency and has failed

10   to follow the Central District Local Rules governing *ex parte* applications as

11   explained in detail below. Therefore, the *ex parte* application should be denied *ab*

12   *initio*.

13          Although the Court need not and should not consider the substance of

14   Mattel's *ex parte* application, it also fails on the merits at every level. As a

15   threshold matter, Mattel's subpoena is invalid because it was erroneously issued to

16   "Lexington Financial, LLC" (*which does not exist*) and was improperly issued by

17   Mattel's counsel from the Central District Court of California (*which has no*

18   *jurisdiction over an overseas entity with no offices in the United States or*

19   *California*).

20          Moreover, in addition to the issuance problems, there is no genuine dispute

21   that Mattel has failed to properly serve Lexington with a subpoena. Mattel

22   attempted to serve the subpoena on Fred Mashian, a business attorney who has on

23   occasion provided outside legal services to Lexington. Mr. Mashian is not an

24   employee or agent of Lexington and was not authorized to accept the subpoena on

25   its behalf -- as confirmed by both the declaration of Mr. Mashian and Mattel's

26   process server Mr. Shurlock. Mattel also contends that its email of the subpoena to

27   Lexington's outside counsel in connection with this action, Bingham McCutchen,

28   constitutes service. Bingham never agreed to accept service and is not authorized

-2-

A/72862811.3

1   to accept service -- as confirmed by the Declaration of Peter Villar.  As Mattel and

2   its counsel no doubt know, delivering a copy of a subpoena to a non-party entity's

3   outside attorney is not sufficient to effect service as a matter of law.

4         Faced with the fact that it has not properly issued or served the subpoena,

5   Mattel asks this Court for unprecedented relief -- to ignore settled federal and

6   international rules and procedures for serving non-party overseas entities and to

7   simply declare that Lexington has been served.  Alternatively, Mattel, without a

8   shred of legal support, asks this Court to issue an order requiring a Lexington

9   representative (a non-United States and non-California citizen) to fly more than

10   5,000 miles to appear at the footsteps of the Federal Courthouse in Los Angeles so

11   that Mattel can personally serve the subpoena.  There is absolutely *no authority*

12   that supports this requested relief, and in fact granting any part of it would violate

13   the Federal Rules of Civil Procedure as well as international law and treaties.

14   Lastly, as the final alternative, Mattel requests that this Court permit it to serve

15   Lexington via the California Secretary of State which, of course, is impermissible

16   because Lexington is not a California company and is not registered to conduct

17   business in California.

18         The Federal Rules of Civil Procedure and international law set forth specific

19   requirements and procedures for serving non-party overseas entities that Mattel

20   and its counsel must adhere to.  It is abundantly apparent by this point that Mattel

21   feels entirely unconstrained by any applicable rules of procedure developed

22   precisely to protect the rights of both parties and non-parties.  It is incumbent on

23   this Court to enforce and apply these rules and Mattel should be told, in no

24   uncertain terms, that this behavior needs to stop.  Because Mattel's *ex parte*

25   application is procedurally and substantively deficient, Lexington respectfully

26   requests that the Court deny Mattel's application and all relief requested therein.

27

28

## II.   STATEMENT OF FACTS

### A.   Lexington Is An Overseas Entity With No Affiliation With MGA Entertainment, Inc. Or Issac Larian

LEXINGTON FINANCIAL LIMITED ("Lexington") was formed under the laws of Nevis on or about March 3, 2006 and is in good standing. (Mashian Decl., ¶ 5.) Lexington's business address is located in London, England. (*Id.*) It has no offices in the United States or in California. (*Id.*) In 2008, Lexington made a loan to Vision Capital, LLC, a Delaware Limited Liability Company. (Mashian Decl., ¶ 6.) Lexington has no affiliation with or relationship to MGA Entertainment, Inc. or Isaac Larian. (Mashian Decl., ¶ 7.)

### B.   Fred Mashian Is Not Lexington's Agent And Is Not Authorized To Accept Service On Behalf Of Lexington

Fred Mashian is a tax and estate planning attorney in Los Angeles that has no affiliation with or relationship to MGA Entertainment, Inc. or Isaac Larian. (Mashian Decl., ¶¶ 2, 7.) Mr. Mashian has been retained from time to time to provide legal services for Lexington. (Mashian Decl., ¶ 3.) However, Mr. Mashian is not, and never has been, an officer, director, partner, member, employee or agent of Lexington. (*Id.*) Mr. Mashian has never been an agent for service of process for Lexington, and he has never been authorized to accept service on behalf of Lexington. (*Id.*)

Additionally, Mr. Mashian has no knowledge of, affiliation with, or relationship to the entity referenced on the Subpoena, "Lexington Financial, LLC." (Mashian Decl., ¶ 4.) He also has never been authorized to accept service of the Subpoena on behalf of any such entity and does not believe any such entity exists. (*Id.*)

On the morning of Saturday, January 31, 2009, a man came to Mr. Mashian's door and handed him two subpoenas. (Mashian Decl., ¶ 8.) One of the subpoenas was addressed to Mr. Mashian personally and the other was addressed

-4-

1  to "Lexington Financial, LLC." (*Id.*) Mr. Mashian told the man that he was not an

2  agent for service of process for Lexington Financial, LLC and that he did not

3  believe that any such entity even existed. (*Id.*) Mr. Mashian refused to accept

4  service of the subpoena to Lexington Financial, LLC. (*Id.*) In fact, the Declaration

5  of Mark Shurlock filed in support of Mattel's ex parte application even confirms

6  Mr. Mashian's refusal to accept service of the Lexington subpoena (though Mr.

7  Shurlock does not provide a complete or accurate account of all of the facts). (*Id.*)

8      **C.**     **Bingham Did Not Agree To Accept Service On Behalf Of**

9           **Lexington**

10       On or about February 6, 2009, Mr. Mashian informed attorneys at Bingham

11  McCutchen LLP ("Bingham") that he received a subpoena addressed to him

12  personally and another subpoena addressed to Lexington Financial, LLC. (Villar

13  Decl., ¶ 2.) Mr. Mashian sent copies of the subpoenas to Bingham, which were

14  incomplete and contained no proofs of service. (*Id.*)

15       After receiving copies of the subpoena, Bingham attorney Peter Villar sent

16  an email to Mattel's counsel, Jon Corey, indicating that Bingham would be

17  representing Mr. Mashian and Lexington. (Villar Decl., ¶ 3.) In that email, Mr.

18  Villar asked Mr. Corey to send him the documents "you believe were served on

19  Mr. Mashian and Lexington Financial" and for a brief extension of time to respond

20  to the subpoenas to determine whether the subpoenas were properly issued and

21  served. (*Id.*)

22       After receiving the subpoenas and proofs of service from Mr. Corey, and

23  after having discussions with Mr. Mashian, Mr. Villar learned that the name of the

24  entity appearing on the subpoena "Lexington Financial, LLC" did not exist and

25  that Mr. Mashian was not the agent for service of process for Lexington Financial,

26  LLC or Lexington Financial Limited. (Villar Decl., ¶ 4.) Mr. Villar never

27  assumed nor indicated to Mattel's counsel that service of the Lexington Financial,

28  LLC subpoena upon Mr. Mashian was proper or effective. (Villar Decl., ¶ 5.) In

1  fact, when Mr. Villar first contacted Mr. Corey he did not have a complete copy of

2  the subpoenas or the proofs of service and had not yet discussed the issues with

3  Bingham's clients -- which is precisely why he specifically requested that Mr.

4  Corey send him the documents "you believe were served on Mr. Mashian and

5  Lexington Financial" in his initial February 12 email. (*Id.*) It was not until a

6  subsequent investigation that Bingham learned that the Lexington subpoena was

7  improperly issued and served. (*Id.*)

8       Neither Mr. Villar nor any other attorney at Bingham agreed to accept

9  service on behalf of Lexington Financial Limited because they are not authorized

10  to do so. (Villar Decl., ¶ 6.) Indeed, on or about February 23, 2009, Bingham

11  served objections to the subpoena addressed to Mr. Mashian personally and sent an

12  email to Mattel's counsel stating that Mr. Mashian was not the agent for service of

13  process for Lexington Financial, LLC. (Villar Decl., ¶ 7.)

14       Subsequently, on or about February 24, 2009, Mr. Corey sent Mr. Villar an

15  email in response to his February 23 email. (Villar Decl., ¶ 8.) In that email, Mr.

16  Corey erroneously "assumed" that Mr. Villar's initial February 12 email somehow

17  suggested that service of the Lexington subpoena upon Mr. Mashian was effective.

18  (*Id.*) Again, Mr. Corey's assumption was incorrect. After learning that the

19  subpoena was not properly issued or served, Mr. Villar notified Mr. Corey. (*Id.*)

20       Rather than serve Lexington pursuant to the applicable rules and procedures,

21  Mattel filed this ex parte application, which is both procedurally and substantively

22  meritless. (Villar Decl., ¶¶ 8-9.) Mattel's counsel also failed to provide the notice

23  required under Local Rules 7-19 and 7-19.1. (*Id.*)

24  **III.   THERE IS NO LEGAL BASIS FOR EX PARTE RELIEF**

25       **A.   Mattel's *Ex Parte* Application Should Be Denied Because There Is**

26            **No Good Cause Or Exigent Circumstances**

27       "An *ex parte* application is solely for extraordinary relief." *Jamdat Mobile,*

28  *Inc. v. Jamster Int'l Sarl Ltd.*, No. CV 05-3945 PA (FMOx), 2005 WL 5960924, at

1   *1 (C.D. Cal. Oct. 4, 2005); *see also Mission Power Engineering Co. v.*

2   *Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal 1995) ("Ex parte motions

3   are rarely justified . . . ."). Under well established precedent in this district, *ex*

4   *parte* relief will only be granted upon a showing that:

5         (1) the 'moving party's cause will be irreparably prejudiced if the

6         underlying motion is heard according to regular noticed motion

7         procedures;' (2) 'the moving party is without fault in creating the

8         crisis that requires ex parte relief;' and (3) that the proposed motion

9         has a likelihood of success on the merits.

10   *Samsung SDI Co. v. Matsushita Electric Indust. Co.*, No. 05-8493 PA (SHx), 2006

11   WL 5097404, at *1 (C.D. Cal. June 15, 2006).  None of these factors are satisfied

12   in this case.

13         <u>First,</u> Mattel does not even purport to show that it will be irreparably

14   prejudiced if it is forced to follow the regular noticed motion procedures.  Mattel

15   merely claims that good cause exists to seek the relief on an *ex parte* basis given

16   the schedule for Phase 2 discovery and trial set by Judge Larson at the February

17   11, 2009 hearing, given that Mattel has pending motions seeking the appointment

18   of a receiver and given that MGA likely will seek another stay that relies on claims

19   about its financial condition, as its prior stay motions have. [1]  (Mattel Ex Parte

20   at 1.)  None of these issues independently or collectively amount to evidence that

21   Mattel will suffer irreparable prejudice.  Judge Larson set the discovery cut-off for

22   Phase 2 for December 11, 2009, more than nine months from now, and the trial

23   date for March 23, 2010, approximately twelve months from now.  Setting aside

24

25   [1] Notably, when pressed by the Court at the March 4, 2009 hearing as to the
    exigent circumstances warranting use of the ex parte procedures, Mattel did not
26   cite any of these reasons.  Instead, Mattel made an vague, unsupported assertion
    relating to the need to ensure the preservation of documents.  However, this
27   concern, which has no factual basis, was not even set forth in Mattel's moving
    papers.

28

-7-

1    the fact that discovery sought from Lexington has nothing to do with Phase 2 of

2    this action, there is absolutely no need to obtain the relief requested on an

3    emergency basis considering that discovery for Phase 2 will be open for nine more

4    months.  Further, the Court recently declined to appoint a receiver at the February

5    11, 2009 hearing.  Thus, even assuming there were some relation between the

6    appointment of a receiver and Lexington (which is inconceivable), the receiver

7    issues present no emergency requiring the abandonment of the regular noticed

8    motion procedures.  Additionally, Mattel cannot establish prejudice by speculating

9    about a possible future discovery stay that MGA has not requested and may never

10   request.  Indeed, it is entirely unclear why Mattel believes that the mere possibility

11   of a future discovery stay allows Mattel to ignore the notice requirements for

12   present discovery disputes.

13        <u>Second</u>, in addition to the fact that it has not established irreparable

14   prejudice, Mattel cannot show that it is without fault in creating this situation.  "To

15   show that the moving party is without fault, or guilty only of excusable neglect,

16   requires more than a showing that the other party is the sole wrongdoer." *Mission*

17   *Power*, 883 F. Supp. at 493.  "[M]erely showing that the trial is fast approaching

18   and that the opposing party still has not answered crucial interrogatories is

19   insufficient to justify ex parte relief." *Id.*  Here, Mattel has not only failed to

20   identify any crisis, but Mattel's own misconduct caused this situation by failing to

21   properly issue or serve the subpoena.  Moreover, Mattel should not have tried to

22   issue or serve the subponea in the first place because -- like the other non-party

23   subpoenas served by Mattel -- it is grossly overbroad, unduly burdensome and

24   seeks privileged and irrelevant documents that have no bearing on the Phase 2

25   proceedings.  If Mattel had complied with the Federal Rules of Civil Procedure and

26   other applicable rules, there would be no need to seek *ex parte* relief.

27        <u>Third</u>, the proposed motion and relief sought are wholly without merit. *See*

28   *Mission Power*, 883 F. Supp. at 492 ("if [the proposed motion] is meritless, failure

-8-

1    to hear it cannot be prejudicial."). Mattel has not properly issued or served

2    Lexington with a subpoena, and thus there is no basis for this Court to deem the

3    subpoena effective. Similarly, Mattel has not provided any authority for the

4    proposition that this Court has the authority to compel an authorized representative

5    for an overseas entity to appear and accept service. Finally, Mattel sets forth no

6    authority for the proposition that it may serve Lexington via the California

7    Secretary of State.

8          Accordingly, because Mattel has not demonstrated any exigent

9    circumstances or irreparable harm to relieve it from following the regularly notice

10   motion procedures, this Court should deny Mattel's *ex parte* application.

11         **B.     Mattel's Ex Parte Should Be Denied Because It Failed To Provide**

12                 **Notice Under Local Rules 7-19 And 7-19.1 And Judge Larson's**

13                 **Standing Order**

14   Judge Larson's Standing Order is explicit: "[*Ex parte*] Applications which

15   fail to conform with Local Rules 7-19 and 7-19.1, **including a statement of**

16   **opposing counsel's position**, will not be considered." (Judge Larson's Standing

17   Order, Dkt. No. 33) (emphasis in original). Local Rule 7-19.1 provides, in

18   pertinent part:

19         It shall be the duty of the attorney so applying (a) to make a good faith

20         effort to advise counsel for all other parties, if known, of the date,

21         time and substance of the proposed ex parte application and (b) the

22         advise the Court in writing of efforts to contact other counsel and

23         whether any other counsel, after such advice, opposes the application

24         or has requested to be present when the application is presented to the

25         Court.

26   Consistent with their pattern and practice, Mattel completely disregarded the

27   Local Rules and the Standing Order in bringing Mattel's request for *ex parte* relief.

28   Rather than comply with the Local Rules and provide the requisite notice, Mattel

-9-

1    attempted to blitzkrieg Lexington and its counsel by filing this baseless *ex parte*

2    application on the night of March 3, 2009, knowing full well that Lexington's

3    counsel would be in Los Angeles the next day attending a hearing before the

4    Discovery Master.  This is precisely the reason that Judge Larson and the Central

5    District of California require strict compliance with the notice requirements of

6    Local Rule 7-19 and 7-19.1.

7        Mattel did not advise Lexington's attorneys "of the date, time and substance

8    of the proposed ex parte application."  Indeed, Mattel does not even claim to have

9    done so.  Mattel merely states that it sent a letter to counsel for Lexington on

10   February 24, 2009, seven days before filing its Application, advising Lexington's

11   counsel of a "contemplated" future ex parte application after a proposed future

12   meeting of counsel which does not provide sufficient notice or the requisite detail

13   required under Local Rule 7-19.1.  Mattel's letter merely states, in pertinent part:

14           Mattel reserves all rights and requests that, pursuant to paragraph 5 of

15           the Discovery Master Order, you meet and confer in our offices

16           regarding a contemplated *ex parte* application to compel an authorized

17           representative of Lexington Financial to appear at the offices of Quinn

18           Emanuel or at the Federal Courthouse on 312 North Spring Street in

19           Los Angeles to accept service of the subpoena.

20   This letter does not set forth the time, date and substance of Mattel's *ex parte*

21   application.  Mattel never called or otherwise informed Lexington or its counsel

22   that it would be filing this *ex parte* application on March 3, 2009, and it never

23   asked them whether or not they opposed the application.

24       Mattel's repeated flouting of the Local Rules and Judge Larson's Standing

25   Order are growing tiresome.  This Court should deny Mattel's *ex parte* application

26   on the grounds that it failed to provide the requisite notice under Local Rules 7-19

27   and 7-19.1 and Judge Larson's Standing Order.

28

**C.** **Lexington Will Be Unfairly Prejudiced If This Court Decides These Issues On An *Ex Parte* Basis**

Lexington is neither a party to this action, nor has it been properly issued or served a subpoena under the applicable rules or procedures. Despite these facts, Mattel filed its application requesting that this Court decide significant issues relating to the sufficiency of service against Lexington on an *ex parte* basis. To require Lexington, a non-party overseas entity, to respond to this *ex parte* application on an expedited basis is an abuse of process and will result in substantial prejudice to Lexington.

The *Mission Power* court explained the significant problems that *ex parte* motions create:

> Though the adversary does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced. Often, the moving party's papers reflect days, even weeks of investigation and preparation; the opposing party has perhaps a day or two. This is due primarily to gamesmanship.
>
> ...
>
> All of this detracts from a fundamental purpose of the adversary system, namely, to give the court the best possible presentation of the merits and demerits of the case on each side. The opposing party can rarely make its best presentation on such short notice.

883 F. Supp. at 490-91.

The *Mission Power* court's analysis is particularly instructive in this instance considering that Lexington is a non-party and that Mattel did not even bother to comply with the ex parte notice requirements under the Central District Local Rules.

-11-

1  IV.   THE SUBPOENA WAS NOT PROPERLY ISSUED OR SERVED

2          In addition to the dispositive procedural problems with Mattel's *ex parte*

3  application, it also fails on its merits because the Lexington subpoena was not

4  properly issued or served.  Each of these reasons requires denial of Mattel's

5  application.

6          **A.    Mattel's Subpoena Was Not Properly Issued**

7          Mattel's subpoena is invalid on its face because it is directed to "Lexington

8  Financial, LLC," not Lexington Financial Limited, A Nevis Company.  Lexington

9  Financial, LLC does not exist.  (Mashian Decl., ¶ 4.)  Thus, Mattel's subpoena was

10  directed to the wrong entity, and therefore is not valid against Lexington Financial

11  Limited.  Indeed, Mattel's *ex parte* application is directed to Lexington Financial,

12  LLC, which is another reason to deny it.

13          Additionally, Mattel's subpoena is invalid because it was not issued out of

14  the correct district court.  Rule 45 of the Federal Rules of Civil Procedure set forth

15  specific requirements regarding the issuance of subpoenas.  For instance, Rule

16  45(a)(2), requires that a subpoena be issued "from the court for the district where

17  the deposition is to be taken . . . ."  Fed. R. Civ. P. 45(a)(2).  Furthermore, there are

18  specific limitations set forth in the Federal Rules of Civil Procedure for serving

19  individuals or entities located outside the subpoena power of a district court.  *See*

20  Fed. R. Civ. P. 45(b) & 4(f).

21          Here, Mattel purported to issue the subpoena out of the United States

22  District Court for the Central District of California.  However, Lexington has no

23  offices in the California or the United States, let alone the Central District.

24  Lexington was formed under the laws of Nevis, and its business address is located

25  in London, England.  (Mashian Decl., ¶ 5.)  Thus, Mattel's subpoena was not

26  properly issued.

27          **B.    Mattel Has Not Effected Service On Lexington**

28          In addition to the issuance problems, Mattel failed to properly serve the

-12-

1   Lexington subpoena.  Mattel erroneously and misleadingly asserts that it served

2   Lexington by "(1) personally serving a copy of the subpoena on Lexington's agent,

3   Fred Mashian, and (2) electronically transmitting a copy of the subpoena to

4   Lexington's counsel, at Lexington's counsel's request."  (Mattel Ex Parte at 8.)

5   However, neither of these actions are sufficient under the law to effect service on

6   Lexington.  Thus, this Court should deny Mattel's request for an order deeming

7   Lexington served.

8          1.    Mattel's Purported Service On Mr. Mashian Is A Nullity

9          Contrary to Mattel's unsupported assertions to this Court, handing a copy of

10  the Lexington subpoena to Mr. Mashian does not constitute valid service.  Mr.

11  Mashian is a business attorney who on occasion has provided outside legal services

12  to Lexington.  He is *not* Lexington's agent for service of process, does *not* qualify

13  as an agent for purposes of service of process, and he did *not* agree to accept

14  service on behalf of Lexington.  (Mashian Decl., ¶¶ 2-4, 8.)

15         It is well established that service of a subpoena *duces tecum* on counsel, as

16  opposed to the party itself, is a nullity.  *Lehman v. Kornblau*, 206 F.R.D. 345, 346-

17  47 (E.D.N.Y. 2001) (holding that plaintiff's service of subpoenas by certified mail

18  on counsel of non-parties was improper); *Ransom v. Brennan*, 437 F.2d 513, 518-

19  19 (5th Cir. 1971) ("service of process is not effectual on an attorney solely by

20  reason of his capacity as attorney"); *Ellis v. Johnston*, No. CV 07-508-PHX-MHM,

21  2008 WL 508642, at *1 (D. Ariz. Feb. 21, 2008) (denying motion to compel

22  attorney to accept service of process); *United States v. Ziegler Bolt & Parts Co.*,

23  111 F.3d 878, 881 (Fed. Cir. 1997) ("The mere relationship between a defendant

24  and his attorney does not, in itself, convey authority to accept service."); *Mid-*

25  *Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991) (actual

26  notice through party's counsel is not sufficient to confer personal jurisdiction);

27  *Harrison v. Prather*, 404 F.2d 267, 273 (5th Cir. 1968) (service of Rule 45

28  subpoena on counsel, as opposed to the party himself, renders such service a

1   nullity); *GMA Accessories, Inc. v. BOP, LLC*, No. 07 Civ. 3219(LTS)(DF), 2008

2   WL 4974430, at *2 (S.D.N.Y. Nov. 19, 2008) (denying motion to permit service of

3   subpoena on attorney of non-party witness residing abroad). "For an attorney to be

4   considered an agent for process, he or she must have been appointed for that

5   precise task." *Grandbouche v. Lovell*, 913 F.2d 835 (10th Cir. 1990) (holding that

6   the mere relationship between a defendant and his attorney does not, by itself,

7   convey authority to accept service of process); *see also Roofers Local 149 Sec.*

8   *Benefit Trust Fund v. Milbrand Roofing Group, Inc.*, 2007 WL 2421479, at *1

9   (E.D. Mich. Aug. 22, 2007) (subpoena on non-party witness was not effectual

10   when mailed to witness's attorney because "Rule 45(b)(1) specifically requires

11   personal service on a non-party"); 4A Wright & Miller § 1097, at 85-86

12   ("[D]efendant's attorney probably will not be deemed an agent appointed to

13   receive process absent a factual basis for believing that an appointment of this type

14   has taken place.").

15        Given the undisputed facts and law, Mattel's assertion that it has effected

16   service against Lexington through its attempt to serve Mr. Mashian is without

17   merit.  Notably, Mattel is well-aware that Mr. Mashian is not the agent for service

18   of process because the name of Lexington's Registered Agent is set forth in its

19   incorporation statement, which is attached as an exhibit to Mattel's *ex parte*

20   application. (*See* Ex. 3. to Corey Decl.)  Further, Mattel's assertion that

21   Lexington's UCC Financing Statement identifies Mr. Mashian as "Lexington's

22   agent" (Corey Decl. ¶ 8) is patently false as the UCC Financing Statement nowhere

23   states that Mr. Mashian is Lexington's agent, let alone agent for service of process.

24   (*See* Ex. 3. to Corey Decl.)  Moreover, as both Mr. Mashian and the process server

25   have stated, Mr. Mashian explicitly rejected service of the Lexington subpoena.

26   (*See* Mashian Decl., ¶ 8; Shurlock Decl., ¶ 3.)  Therefore, Mattel's attempt to serve

27   Mr. Mashian was not only improper but in bad faith -- and Mattel's representations

28   in its *ex parte* application to the contrary are inexcusable.

-14-

1   Accordingly, because Mr. Mashian is not an authorized agent for service of

2   process and did not agree to accept service on behalf of Lexington, Mattel's

3   purported service on Mr. Mashian was not sufficient to effect service on

4   Lexington.

5               2.    Mattel's Email Transmission Of The Subpoena To Bingham Is

6                     Also Insufficient To Effect Service

7   Mattel's assertion that it effected service on Lexington by emailing a copy of

8   the subpoena to Bingham is equally absurd.  Bingham was retained to provide

9   outside legal services to Lexington in connection with the subpoena.  As discussed

10  above, service of a subpoena on a non-party's attorney does not effect service on

11  the non-party unless the attorney is the authorized agent for service of process or

12  agrees to accept service on behalf of the entity.  *See, e.g., Ellis v. Johnston*, No. CV

13  07-508-PHX-MHM, 2008 WL 508642, at *1 (D. Ariz. Feb. 21, 2008);

14  *Grandbouche v. Lovell*, 913 F.2d 835 (10th Cir. 1990).

15  Contrary to Mattel's misrepresentations to this Court, Bingham is not

16  Lexington's agent for service of process, never agreed to accept service on behalf

17  of Lexington, and is not authorized to accept service of the subpoena.  (Villar Decl.

18  ¶¶ 1-8.)  In fact, when Bingham first learned that Mattel attempted to serve Mr.

19  Mashian with subpoenas, Bingham asked Mattel's counsel to "email . . . the

20  documents *you believe* were served on Mr. Mashian and Lexington Financial . . . ."

21  (Ex. 11 to Corey Decl.) (emphasis added).  Bingham never "assumed" nor

22  expressed that service of the Lexington subpoena upon Mr. Mashian or Bingham

23  was proper or effective.  (Villar Decl., ¶¶ 5-6.)

24  Moreover, once Bingham discovered that the Lexington subpoena was not

25  properly issued or served, Bingham explicitly told Mattel's counsel that service of

26  the Lexington subpoena on Mr. Mashian was invalid:  "We understand that you

27  also attempted to serve Mr. Mashian with a subpoena to Lexington Financial, LLC.

28  Mr. Mashian advised us that he is not the agent for service for any such entity."

-15-

A/72862811.3

1 (Ex. 13 to Corey Decl.) Indeed, after receiving Bingham's email explaining that

2 service was ineffective, Mattel requested that Bingham "agree to accept service on

3 behalf of Lexington, as its counsel, or to identify who the authorized agent for

4 service of process currently is." (Ex. 15 to Corey Decl.) This further undermines

5 Mattel's claims that its purported service of the Lexington subpoena upon Mr.

6 Mashian or Bingham was effective.

7      Accordingly, because Bingham is not an authorized agent for service of

8 process and did not agree to accept service on behalf of Lexington, Mattel's

9 purported service on Bingham was not sufficient to effect service on Lexington as

10 a matter of law.[2]

11      **C.**     **The Court Should Deny Mattel The Alternative Relief Requested**

12          **In Its _Ex Parte_ Application**

13          1.    This Court Does Not Have Authority To Compel An Overseas

14               Entity To Appear And Accept Service In California

15      Faced with the fact that it has failed to effect service on Lexington, Mattel

16 asks this Court, without any legal basis, to "compel Lexington to produce an

17 authorized representative to appear on a date certain at the Federal Courthouse in

18 Los Angeles (or at such other location as the Discovery Master deems appropriate)

19 to accept service of the subpoena on Lexington's behalf." (Mattel Ex Parte at 11.)

20 This request for unprecedented and unauthorized relief would violate all

21 jurisdictional and service requirements in the Federal Rules of Civil Procedure and

22 international laws, is without legal support and must be denied.

23

24    [2] Notably, because Bingham has not agreed, and is not authorized, to accept service

25 of the Lexington subpoena, no manner of service on Bingham is effective.
However, in all events, Mattel's email transmission of the subpoena to Bingham

26 would not satisfy the personal service requirements under Rule 45. _See, e.g., In re
Dennis_, 330 F.3d 696, 704-05 (5th Cir. 2003) ("The conjunctive form of the rule

27 indicates that proper service requires not only personal delivery of the subpoena,
but also tendering of the witness fee and a reasonable mileage allowance.").

28

1   The Federal Rules of Civil Procedure set forth the requirements for serving a

2   non-party subpoena.  For instance, Rule 45(a)(2) requires a subpoena to be issued

3   out of the district court where the production of documents will be made or the

4   deposition will take place.  Furthermore, Rule 45(b)(2) sets forth specific service

5   requirements and protections that limit the ability of litigants to subpoena

6   nonparties.  Moreover, to respect the sovereignty of foreign countries, there are

7   specific procedures and requirements set forth in the Federal Rules of Civil

8   Procedure for serving overseas entities.  Fed. R. Civ. P. 4(f); *see also GMA*

9   *Accessories, Inc. v. BOP, LLC*, No. 07 Civ. 3219(LTS)(DF), 2008 WL 4974430, at

10  *2 (S.D.N.Y. Nov. 19, 2008) (denying motion to permit service of subpoena on

11  non-party witness's attorney on the grounds that subpoena on witness residing

12  abroad must be in compliance with Fed. R. Civ. P. 4(f)).

13  Mattel has not cited a single case or statute for the proposition that this Court

14  may permit Mattel to bypass the governing service rules and procedures.  Nor is

15  there any legal authority for the proposition that this Court has the authority to

16  command a non-party overseas entity to appear at the footsteps of the Federal

17  courthouse in Los Angeles so that it may be served with one of Mattel's abusively

18  drawn subpoenas.  Mattel must adhere to the federal and international laws

19  governing service of subpoenas on non-party overseas entities.  The mere fact that

20  the protections, procedures and requirements of the Federal Rules of Civil

21  Procedure and international laws and treaties may be "inconvenient" to Mattel does

22  not justify its complete disregard for them.

23  Accordingly, because Mattel has cited no authority to support its request for

24  this alternative relief, this Court should deny Mattel's *ex parte* application.

25          2.    This Court Does Not Have Authority To Permit Mattel To

26              Serve Lexington Via The California Secretary Of State

27  Mattel's last-ditch request that it be permitted to serve Lexington via the

28  California Secretary of State is equally misguided.  (Mattel Ex Parte at 12.)  The

-17-

1   applicable sections of the California Corporations Code that Mattel cites apply *only*

2   to foreign corporations registered to transact business in California. *See* Cal. Corp.

3   Code §§ 2100, 2015, 2111. Corporation Code section 2105 requires foreign

4   corporations transacting business within California to register with the California

5   Secretary of State and designate an agent for service of process. Cal. Corp. Code §

6   2105. Section 2111 sets forth certain mechanisms for effectuating service on

7   registered foreign corporations that transact intrastate business, when the

8   designated agent for service of process cannot be found, resigned, is unknown or

9   was never designated. Cal. Corp. Code § 2111. Mattel, however, did not, and

10  cannot, provide any authority in support of its argument that a court may order

11  service upon an unregistered foreign corporation, which does not transact business

12  within the state, by serving the California Secretary of State. (Mattel Ex Parte

13  at 12.)

14      The Corporations Code sections cited by Mattel are inapplicable because

15  Lexington is not registered to transact business in California and, in fact, does not

16  transact business in California. "'Transact intrastate business' means entering into

17  repeated and successive transactions of its business in the state, other than

18  interstate or foreign commerce." *See LeVecke v. Griesedieck Western Brewery*

19  *Co.*, 233 F.2d 772, 777 (9th Cir. 1956) (affirming a motion to quash service of

20  summons and complaint served upon foreign corporation by service on the

21  California Secretary of State). Mattel has not set forth any facts to establish that

22  Lexington has entered into "repeated and successive transactions of its business" in

23  California. Accordingly, Corporations Code sections 2100 et. seq. is inapplicable

24

25

26

27

28

-18-

1    and the Court has no authority to order service upon Lexington by effecting service

2    upon the California Secretary of State.[3]

3

4    **V.     CONCLUSION**

5         For the foregoing reasons, Lexington respectfully requests that the Court

6    deny Mattel's *ex parte* application and all relief requested therein.

7

8    DATED:  March 9, 2009          Bingham McCutchen LLP

9

10                                 By:

11                                      Todd E. Gordinier
                                        Attorneys for Specially Appearing Non-party
12                                      LEXINGTON FINANCIAL LIMITED

13

14

15

16

17

18

19

20

21

22  _____

23  [3] Mattel makes a final plea in the last footnote on the last page of its *ex parte*
     application, that the Court "(1) order that Lexington, as a foreign corporation
24  located outside of the United States, may be served by e-mail, and (2) "compel
     Lexington to disclose a valid e-mail address for service purposes. " (Mattel Ex
25  Parte at 12, fn 48.)  This request conflicts with Mattel's prior assertions regarding
     Lexington's purported "contacts" with California and undermines Mattel's request
26  that Lexington be served via the California Secretary of State.  Suffice it to say, the
     authority purportedly relied upon by Mattel is inapplicable and any such order
27  would conflict with the Federal Rules of Civil Procedure and the applicable
     international laws and treaties.

28

-19-

A/72862811.3