# Exhibit 5

1  THOMAS J. NOLAN (Bar No. 66992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
4  E-mail:     tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  Four Embarcadero Center, 38th Floor
   San Francisco, California 94111-5974
7  Telephone:  (415) 984-6400
   Facsimile:  (415) 984-2698
8  E-mail:     rkennedy@skadden.com

9  Attorneys for Cross-Defendants
   MGA Entertainment, Inc., MGAEntertainment (HK) Limited,
10 MGAE De Mexico, S.R.L. De C.V., and ISAAC LARIAN

11             UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13                  EASTERN DIVISION

| | |
|---|---|
| 14  CARTER BRYANT, an individual | CASE NO. CV 04-9049 SGL (RNBx) |
| 15  Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| 16  v. | **DISCOVERY MATTER** |
| 17  MATTEL, INC., a Delaware corporation | **[To be heard by Discovery Master Hon. Edward A. Infante (Ret.)]** |
| 18 | |
| 19  Defendant. | **MGA ENTERTAINMENT, INC.'S OPPOSITION TO MATTEL, INC.'S** |
| 20  Consolidated with MATTEL, INC. v. BRYANT and MGA | **MOTION TO COMPEL RESPONSES TO INTERROGATORIES (NOS. 27, 28,** |
| 21  ENTERTAINMENT, INC. v. MATTEL, INC. | **29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 47, 48, 49 AND** |
| 22 | **50) BY THE MGA PARTIES** |
| 23  **CONFIDENTIAL – ATTORNEYS' EYES ONLY** | **[Declaration of Timothy A. Miller filed concurrently herewith]** |
| 24 | |
| 25 | Hearing Date: TBD<br>Time:      TBD<br>Place:     TBD |
| 26 | |
| 27 | **Phase 1:**<br>Discovery Cut-Off:    January 28, 2008 |
| 28  **Filed Under Seal Pursuant to Protective Order** | Pre-Trial Conference: May 5, 2008<br>Trial Date:           May 27, 2008 |

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL

12-31

EXHIBIT 5

PAGE 95

## **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES .................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

I.  PRELIMINARY STATEMENT ........................................................... 1

II.  STATEMENT OF FACTS ................................................................... 4

    A.  Mattel's Interrogatories and MGA's Timely Initial and Supplemental Responses ...................................................... 4

    B.  Mattel's Misrepresentations Regarding the Parties' "Meet and Confer" ....................................................................... 5

    C.  Mattel "Jumps the Gun" On Another Motion to Compel .......... 7

III.  INTERROGATORY NO. 46 IMPROPERLY INVADES MGA'S ATTORNEY-CLIENT RELATIONSHIP WITH PRIOR COUNSEL. ....................................................................................... 8

IV.  INTERROGATORY NO. 39 IS AN IMPROPER ATTEMPT TO OBTAIN BANK ACCOUNT INFORMATION TO ISSUE MORE ABUSIVELY DRAWN AND HARASSING SUBPOENAS ....................................................................................... 10

V.  MATTEL'S CONTENTION INTERROGATORIES DIRECTED TO THE "INVENTION" OF BRATZ ARE DESIGNED TO CONFUSE THE JURY, CIRCUMVENT THE 50 INTERROGATORY LIMIT AND IMPOSE UNDUE BURDEN AND EXPENSE ON MGA. ............................................................. 13

    A.  Mattel's Misleading Defined Terms Are Designed To Confuse The Jury ........................................................... 13

        1.  Mattel's Definition of "Bratz Invention" ........................ 14

        2.  Mattel's Definition of "Design" .................................... 15

    B.  The Component Parts Of Mattel's Defined Terms Multiply The Interrogatories Beyond The 50-Interrogatory Limit ......... 17

    C.  Mattel's Interpretation Of Its Contention Interrogatories Renders Them Unduly Burdensome And Expensive .............. 19

VI.  MGA'S RESPONSES TO MATTEL'S CONTENTION INTERROGATORIES ARE FULL AND COMPLETE BECAUSE THEY PROVIDE MATTEL WITH THE PRINCIPAL FACTS SUPPORTING MGA'S CONTENTIONS ..... 21

    A.  Rule 33 Requires MGA To State The Principal Or Material Facts Supporting Its Contentions In Response To Mattel's Contention Interrogatories ......................................................... 21

i

EXHIBIT ___5___

PAGE ___96___

B.   MGA's Responses to Mattel's Contention Interrogatories
     Comply With Its Obligations Under Rule 33 ............................ 24

     1.   Interrogatories Regarding Bratz Inventions and
          Designs (Nos. 27-30 and 42) ........................................ 24

     2.   Interrogatories That Assume The Truth Of Mattel's
          Allegations And Ask MGA For Facts Proving The
          Negative. .................................................................. 26

     3.   Interrogatories Seeking Dates On Which The
          Products That Mattel Copied and Infringed
          Originated (Nos. 43 and 44) ........................................ 28

     4.   Trade Dress Infringement Interrogatories (Nos. 48-
          50) ........................................................................... 29

VII.  MGA HAS IDENTIFIED THE FORMER MATTEL
      EMPLOYEES WHO CAME TO WORK AT MGA (NO. 41).......... 31

VIII. MGA HAS IDENTIFIED THE COMPUTERS FROM WHICH
      EARLY BRATZ-RELATED DOCUMENTS COULD HAVE
      BEEN COLLECTED (INTERROGATORIES NOS. 40 AND 47)... 31

IX.   CONCLUSION ................................................................. 33

ii

EXHIBIT ___5___

PAGE ___97___

1

## **TABLE OF AUTHORITIES**

2
**PAGE(S)**

3 <u>CASES</u>

4 *Auto Meter Prods., Inc. v. Maxima Techs. & Sys., LLC,*
    No. 05 C 4587, 2006 WL 3253636 (N.D. Ill. Nov. 6, 2006)........................ 22

5

6 *Autotext Commc'n Network v. US Telecom, Inc.,*
    Civ. A. No. 94-2395-GTV, 1995 WL 625953
    (D. Kansas Oct. 5, 1995).................................................... 23

7

8 *Blowers v. Lawyers Coop. Publ'g,*
    Civil Action No. CIV-73-47, 1982 WL 221
    (W.D.N.Y. Jan. 16, 1982)................................................... 10

9

10 *Clean Earth Remediation & Constr. Servs. v. America Int'l Group,*
    245 F.R.D. 137 (S.D.N.Y. 2007) ...................................... 3, 19

11 *Dang v. Cross,*
    No. CV 00 13001 GAF(RZX), 2002 WL 432197
    (C.D. Cal. March 18, 2002)................................................ 22, 23

12

13 *Desny v. Billy Wilder,*
    46 Cal. 2d 715 (1956) ..................................................... 14

14

15 *Feshbach v. Securities & Exchange Commission,*
    5 F. Supp. 2d 774 (N.D. Cal. 1997) ................................... 8

16 *Flynn v. Church of Scientology Int'l,*
    116 F.R.D. 1 (D. Mass. 1986)............................................ 8

17

18 *George v. Siemens Indus. Automation, Inc.,*
    182 F.R.D. 134 (D.N.J. 1998)............................................ 9

19 *In re Grand Jury Subpoena To Kansas City Board of Public Utils.,*
    No. 07-MC-212KHV/JPO, 2007 WL 4150974 (D. Kan. Nov. 19,
    2007) ......................................................................... 9

20

21 *Grosso v. Miramax Film Corp.,*
    383 F.3d 965 (9th Cir. 2004) ............................................ 14

22

23 *Grynberg v. Total S.A.,*
    No. 03-cv-01280-WYD-BNB, 2006 WL 1186836
    (D. Col. May 3, 2006)...................................... 2, 3, 19, 21

24

25 *Hickman v. Taylor,*
    329 U.S. 495 (1947)........................................................ 8

26 *Hiskett v. Wal-Mart Stores, Inc.,*
    180 F.R.D. 403 (D. Kan. 1998) ....................................... 3, 22, 23

27

28 *IBP, Inc. v. Mercantile Bank of Topeka,*
    179 F.R.D. 316 (D. Kan. 1998) ....................................... 3, 21, 22

iii

EXHIBIT __5__

PAGE __98__

*J & M Turner, Inc. v. Applied Bolting Tech. Prods.,*
Civil Action No. 95-2179, Civil Action No. 96-5819, 1997 U.S. Dist.
LEXIS 4447 (E.D. Pa. Apr. 2, 1997) ........................................................ 11

*Lawrence v. First Kansas Bank & Trust Co.,*
169 F.R.D. 657 (D. Kan. 1996) ........................................................ 20, 21, 27

*Lectrolarm Custom Sys. v. Pelco Sales,*
212 F.R.D. 567 (E.D. Cal. 2002) ........................................................ 11

*Mattel, Inc. v. Walking Mountain Prods.,*
353 F.3d 792 (9th Cir. 2003) ........................................................ 12

*Moon v. SCP Pool Corp.,*
232 F.R.D. 633 (C.D. Cal. 2005) ........................................................ 11

*Moses v. Halstead,*
236 F.R.D. 667 (D. Kan. 2006) ........................................................ 2, 3, 19, 21, 23

*In re Napster, Inc. Copyright Litig.,*
479 F.3d 1078 (9th Cir. 2007) ........................................................ 9

*Pension Benefit Guaranty Corp. v. Ziffer,*
No. 91 C 7762, 1994 WL 11654 (N.D. Ill. Jan. 6, 1994) ........................... 24

*Safeco of America v. Rawstron,*
181 F.R.D. 441 (C.D. Cal. 1998) ........................................................ 20, 27

*Stoldt v. Centurion Indus.,*
No. 03-2634-CM-DJW, 2005 WL 375667 (D. Kan. Feb. 3, 2005) ....... 21, 27

*Tennison v. San Francisco,*
226 F.R.D. 615 (N.D. Cal. 2005) ........................................................ 22

*Twigg v. Pilgrim's Pride Corp.,*
Civil Action No. 3:05-CV-40, 2007 WL 676208
(N.D. W. Va. Mar. 1, 2007) ........................................................ 23

*Upjohn Co. v. United States,*
449 U.S. 383 (1981) ........................................................ 8

*Williams v. The Art Inst. Of Atlanta,*
Civil Action File No. 1:06-CV-0285-CC/AJB, 2006 WL 3694649
(N.D. Ga. Sept. 1, 2006) ........................................................ 23

*Wilson v. Thompson/Center Arms Co.,*
Civil Action No. 05-6493-KDE-SS, 2006 WL 3524250
(E.D. La. Dec. 5, 2006) ........................................................ 23

*Zapata v. IBP, Inc.,*
Civil Action No. 93-2366-EEO, 1997 WL 122588
(D. Kan. 1997) ........................................................ 24

///

///

iv

EXHIBIT 5

PAGE 99

1 ///

2 **STATUTES**

3 17 U.S.C. § 101 ................................................................. 14, 16

4 17 U.S.C. § 102(b) ................................................................. 14

5 35 U.S.C. § 102(g) ................................................................. 16

6 35 U.S.C. § 171 ................................................................. 16

7 Cal. Civ. Code § 3426.1 ................................................................. 16

8 Fed. R. Civ. Proc. 26(b)(1)................................................................. 8

9 Fed. R. Civ. Proc. 26(b)(3)................................................................. 8

10

11 **OTHER AUTHORITIES**

12 1-23 *Chisum on Patents* § 23.01 ................................................................. 16

13 1-GLOS *Chisum on Patents* (2007)................................................................. 14, 16

14 4-13 *Nimmer on Copyright §13.03 (2007)*................................................................. 17

15

16

17

18

19

20

21

22

23

24

25

26

27

28

v

EXHIBIT ___5___

PAGE ___100___

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   PRELIMINARY STATEMENT**

Although Mattel Inc.'s ("Mattel's") Motion to Compel Responses to Interrogatories (the "Motion") is addressed to twenty-three interrogatories, there are really only four areas of dispute.

First, does Interrogatory No. 46, which concerns an imagined "dispute" between MGA and its prior counsel of record, seek information that is protected by either the work product doctrine or attorney-client privilege?  The answer is "Yes," and Mattel's request for that information should be denied.  If Mattel's rank speculation that there was a "dispute" between MGA and its prior counsel (a fact that is assumed by Interrogatory No. 46 but not supported in Mattel's Motion) were correct, either (i) the dispute does not relate to the claims and defenses in this action, so it is irrelevant and outside the proper scope of discovery, or (ii) it does relate to the claims or defenses in this action, such that revelation of the substance of the dispute would necessarily reveal the thought processes of MGA's trial counsel and the communication of those thought processes from prior trial counsel to MGA.

Second, is Mattel entitled to the sweeping financial data sought in Interrogatory No. 39:  every bank account that MGA, MGA Hong Kong, MGA Mexico and Isaac Larian have had at any time since January 1, 1999?  The answer is "No," and Mattel's request should be denied.  Mattel readily admits that it wants this information so that it can launch another series of third-party subpoenas seeking a broad array of private financial information about the defendants and various third parties.  Mattel's abusive third party discovery practice in this action is the subject of MGA's separate motion to quash subpoenas issued by Mattel to ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells Fargo (filed December 21, 2007).

1    Third, do Mattel's contention interrogatories attempt to use misleading and

2 unfair definitions to create jury confusion or to circumvent Judge Larson's 50-

3 interrogatory limit?  The answer is "Yes" on both counts.  For example, Mattel's

4 definition of "BRATZ INVENTION" contains ten separate component parts

5 ("representation, idea, concept, work, process, procedure, plan, improvement,

6 DESIGN or other development").  The incorporation of the defined term "DESIGN"

7 adds at least another 21 elements ("all works, designs, artwork, sketches, drawings,

8 illustrations, representations, depictions, blueprints, schematics, diagrams, images,

9 sculptures, prototypes, models, samples, rotocasts, reductions to practice,

10 developments, inventions and/or improvements").  The inclusion of these disparate

11 concepts in the term "invention" improperly conflates distinct issues of patent law,

12 copyright protection, trade secret law and the common law protecting original ideas,

13 many of which have no place in the ordinary usage of the term "invention."  These

14 distinctions are especially important here because Mattel lays claim to Bratz under a

15 January 4, 1999, "Employee Confidential Information and Inventions Agreement."

16    Mattel is not seeking legitimate discovery designed to assist in the prosecution

17 or defense of claims.  Rather, Mattel is looking for a misleading "sound bite" it can

18 read to the jury to argue that MGA concedes that Bryant "invented" Bratz while

19 employed by Mattel, or to force MGA to answer 30 plus interrogatories in one, thus

20 circumventing the 50-interrogatory limit.  MGA has answered the interrogatories

21 using the common and ordinary meaning of the term "invention."  Any further

22 response would only reward Mattel's attempted misuse of the discovery process.

23    Fourth, does Rule 33 require a response to a contention interrogatory to set

24 forth more than the principal factual and legal bases for the response, as MGA has

25 already done?  The answer is clearly "No."  *See Moses v. Halstead*, 236 F.R.D. 667,

26 674 (D. Kan. 2006); *Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL

27 1186836, at *7 (D. Col. May 3, 2006) ("It is proper, of course, to inquire about the

28 material facts supporting specific factual matters raised in the pleadings."); *IBP, Inc.*

EXHIBIT __5__

PAGE __102__

1  *v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998) ("An

2  interrogatory may reasonably ask for the material or principal facts which support a

3  contention."); *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D. Kan.

4  1998) ("Interrogatories may, however, properly ask for the 'principal or material'

5  facts which support an allegation or defense.").  Mattel's attempt to compel MGA to

6  provide a narrative account of every stitch of evidence supporting its defense of this

7  action would render Mattel's contention interrogatories unduly burdensome and

8  "inherently improper."  *See, e.g., Clean Earth Remediation & Constr. Servs. v. Am.*

9  *Int'l Group*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007) ("[A] number of cases have held

10  that interrogatories seeking identification of all facts supporting a particular

11  allegation are *inherently improper*.") (emphasis added) (collecting cases); *Moses*,

12  236 F.R.D. at 674 ('[C]ontention interrogatories' are overly broad and unduly

13  burdensome on their face if they seek 'all facts' supporting a claim or defense, such

14  that the answering party is required to provide a narrative account of its case.");

15  *Grynberg*, 2006 WL 1186836, at *6-*7; *Hiskett*, 180 F.R.D. at 404-05

16  ("Interrogatories should not require the answering party to provide a narrative

17  account of its case."); *IBP, Inc.*, 179 F.R.D. at 321 ("[t]o require specifically 'each

18  and every' fact and application of law to fact . . . would too often require a laborious,

19  time-consuming analysis, search, and description of incidental, secondary, and

20  perhaps irrelevant and trivial details").

21       Finally, as Mattel acknowledges, during the meet and confer process, MGA

22  agreed to supplement a number of its responses.  MGA did so on the understanding

23  that Mattel would defer filing a motion to compel until after it received and reviewed

24  the supplemental responses.  Mattel then went ahead and filed the present Motion.

25  In light of that unexpected development, MGA is reevaluating whether voluntary

26  supplementation will serve any purpose.[1]

27  _____

[1]       Parenthetically, MGA's offer to supplement its interrogatory responses was
28  not, as Mattel would suggest, a concession that MGA's prior responses were
deficient or incomplete.  As MGA told Mattel, two events in the litigation
*(cont'd)*

3

EXHIBIT __5__

PAGE __103__

## II.   STATEMENT OF FACTS

### A.   Mattel's Interrogatories and MGA's Timely Initial and Supplemental Responses

Since late September 2007, Mattel has served five sets of interrogatories, each of which was propounded to MGA, MGA Hong Kong, MGA Mexico and Isaac Larian, for a total of 20 sets containing 88 interrogatories:  (i) Mattel's Revised Third Set of Interrogatories (containing Interrogatories Nos. 27-41); (ii) Mattel's Fourth, and later "Amended" Fourth Set of Interrogatories (containing Interrogatories Nos. 42-44); (iii) Mattel's Fifth Set of Interrogatories (Nos. 46-47); (iv) Mattel's Sixth Set of Interrogatories (propounding Interrogatory No. 45, which had been withdrawn from the Fourth Set) (the sole interrogatory of these five sets not at issue in this Motion); and (v) Mattel's Seventh Set of Interrogatories (Nos. 48-50). (*See* Proctor Decl. Exhs. 7-12.) As with Mattel's Motion, this opposition will focus on the responses of MGA. Each argument herein applies equally to the responses of each of the MGA entities and Mr. Larian.

MGA timely responded to each set of interrogatories, preserving its objections. (Miller Decl. ¶ 2.) However, given that MGA's new counsel was in the process of familiarizing itself with the case, MGA did not provide substantive responses to the interrogatories in its initial response. (*Id.*) The day after the stay was lifted, MGA met with Mattel's counsel to discuss a number of open discovery issues. (*Id.* ¶ 3.) It was pointed out to Mattel's counsel that Mattel had longstanding obligations to

*(cont'd from previous page)*
prompted MGA's decision to serve supplemental responses: (i) on December 10, 2007, Mattel served 117 pages of supplemental responses to MGA's February 2005 First Set of Interrogatories; and (ii) on December 12, 2007, Margaret Leahy, a key third-party witness involved in the early development of Bratz, was deposed. Mattel's long overdue supplemental interrogatory responses (and over 500 pages of supplemental responses to Carter Bryant's June 2004 First Set of Interrogatories) provided MGA with a better understanding of Mattel's contentions in this action and enabled MGA to respond more directly to those contentions. Margaret Leahy's deposition testimony provided additional facts supporting MGA's position. In addition, MGA was aware that key third party witnesses Elisa Cloonan and Veronica Marlow would be deposed prior to January 7. (Miller Decl. ¶ 13.)

4

EXHIBIT 5

PAGE 104

1   provide supplemental responses to requests for admission and interrogatories that

2   had been propounded by MGA and Carter Bryant on Mattel. (*Id.*)  In that meeting,

3   MGA's counsel and Mattel's counsel agreed to exchange supplemental responses to

4   interrogatories and requests for admission on November 30, 2007. (*Id.*)  MGA met

5   the deadline, but Mattel did not. (*Id.* ¶¶ 4-5.)

6       **B.**    <u>**Mattel's Misrepresentations Regarding the Parties' "Meet and**</u>

7           <u>**Confer"**</u>

8         Although MGA's counsel had agreed on November 16, 2007, to supplement

9   its responses by November 30, 2007, Mattel's counsel began sending "meet and

10  confer" letters about MGA's initial responses prior to November 30. (Miller Decl. ¶

11  6.)  It later became clear that this was an effort to "start the clock" on Mattel's *pro*

12  *forma* "meet and confer" obligations under the Discovery Master Stipulation so that

13  Mattel could file a motion to compel as soon as possible.  Indeed, after MGA served

14  supplemental responses on November 30, 2007, as promised, Mattel's counsel

15  refused to send a follow up letter addressing MGA's supplemental responses, but

16  instead insisted on going forward with a meet and confer based on the letters that had

17  been sent before MGA's supplemental responses had been served. (*Id.* ¶ 6, Ex. 1 at

18  2 - 3)

19        Counsel for Mattel and counsel for MGA conferred about MGA's

20  supplemental responses on December 10 and 12, 2007. (Miller Decl. ¶ 7)  In its

21  Motion, Mattel makes several statements about this meet and confer process that are

22  not accurate.  First, it is important to note that the "record" upon which Mattel relies

23  is a self-serving, one-sided letter dated December 13, 2007, sent by Mattel's counsel

24  following the parties' meet and confer. (Proctor Decl. Ex. 5.)  Counsel for Mattel

25  sent this letter at a time when, as Mattel's counsel knew, counsel for MGA was

26  primarily focused on the preparation of papers opposing an extremely voluminous

27

28

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL

EXHIBIT ___5___

PAGE ___105___

1   motion to compel filed by Mattel.[2]  (Miller Decl. ¶ 7.)  MGA's counsel sent an email
2   to Mattel's counsel acknowledging receipt of the letter and saying that a response
3   would be sent.  (*Id.* ¶ 8.)  Mattel filed this Motion before MGA's counsel could send
4   a response.  (*Id.*)  Mattel's counsel's attempt to create a meet and confer "record" by
5   sending a self-serving letter and then rushing to file a motion before a responsive
6   letter could be sent should not be construed as agreement by MGA with anything
7   contained in that letter.

8           Second, Mattel asserts that "during the meet and confer process, counsel for
9   MGA represented to Mattel that MGA is not refusing to respond to any of Mattel's
10  interrogatories based on" the objection that the interrogatories exceed the 50-
11  interrogatory limit.  (Motion at 3-4, n.12; *id.* at 20:6-8.)  This is true, as stated, but
12  leaves out a *proviso* important to this Motion.  MGA has not refused to answer the
13  interrogatories based on the 50-interrogatory limit.  Rather, MGA has refused to use
14  the compound and misleading defined terms that permeate Mattel's interrogatories,
15  such as the terms "BRATZ INVENTION" and "DESIGN," but instead used the
16  word "invention" in its ordinary usage.  (Miller Decl. ¶ 9.)  During the meet and
17  confer process, Mattel's counsel objected to these answers, and argued that MGA
18  must either use Mattel's distorted definitions or respond to each of the many
19  component parts of Mattel's definition.  (*Id.* ¶ 10.)  Counsel for MGA made clear that
20  if Mattel asserted that interpretation of its interrogatories, MGA would reserve the
21  right to contend that Mattel's interrogatories are compound and exceed the 50-
22  interrogatory limit.  (*Id.*)[3]  *See* Section V, *infra.*

23  _____
    [2]    As counsel for Mattel well knew, at that time MGA's counsel was focused on
24  the preparation of papers in opposition to another premature motion to compel
    that had been filed by Mattel which included a 76-page brief, more than 130
25  pages of separate statements, and more than 1,000 pages of supporting
    documents, and for which Mattel had refused to grant more than a 6-day
26  extension of the one week response time.  (Miller Decl. ¶7.)

27  [3]    In support of its assertion, Mattel points to a letter from Mattel's counsel to
    MGA's counsel dated December 13, 2007.  (Mot. at 4 n.12.)  As noted above,
28  Mattel's counsel did not give MGA's counsel an opportunity to correct this
    misstatement.

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL

EXHIBIT  5

PAGE  106

1  Third, Mattel refers to "MGA's assurance in its Supplemental Responses to

2  Mattel Inc.'s Revised Third Set of Interrogatories that MGA '[would] respond using

3  words contained within the Mattel definition in their normal accepted

4  meaning."" (Motion at 20-21.) Mattel seizes upon this language to argue that MGA

5  "contradicted" this assurance by refusing to use the defined term "BRATZ

6  INVENTION" or to respond to each of the component parts of that term. (Id.)

7  Mattel's counsel fails to mention that it raised this issue during the meet and confer,

8  and MGA's counsel clarified this language by explaining that the response was

9  inartfully drafted and that it should be read to say that MGA would respond using the

10  *words contained* in the *defined term* in their ordinary usage (*i.e.*, the words "Bratz"

11  and "invention"), not that MGA was committing to a response using each of the

12  several words used in Mattel's definition of "BRATZ INVENTION." (Miller Decl.

13  ¶ 11.)[4] As discussed below, to require MGA to respond to each component part of

14  each defined term in Mattel's interrogatories would violate the 50-interrogatory limit.

15  **C.  Mattel "Jumps the Gun" On Another Motion to Compel**

16  As Mattel acknowledges in its Motion, MGA offered in a conference of

17  counsel on December 12, 2007, to further supplement its responses. (Motion at 8.)

18  MGA's counsel did so with the understanding that Mattel would consider MGA's

19  supplemental responses before filing a motion to compel. (Miller Decl. ¶ 13.)

20  Mattel's counsel did not wait for a response to its December 13, 2007, letter, or any

21  supplemental interrogatory responses, but instead filed this Motion, based in large

22  part on the self-serving misrepresentations made in its counsel's December 13 letter.

23  Mattel moves to compel further responses to all but Interrogatory 45. As discussed

24  below, MGA's current responses comply with its obligations under Rule 33 of the

25  Federal Rules of Civil Procedure.

---

26  [4]  Again, Mattel points to the December 13, 2007, letter from its counsel to

27  MGA's counsel to support this contention. As noted in the previous footnote, this Motion was filed before MGA's counsel had an opportunity to correct the

28  record on this and other misstatements in Mattel's counsel's December 13 letter. (Miller Decl. ¶ 8.)

EXHIBIT __5__

PAGE __107__

**III.   INTERROGATORY NO. 46 IMPROPERLY INVADES MGA'S ATTORNEY-CLIENT RELATIONSHIP WITH PRIOR COUNSEL.**

Mattel has failed to demonstrate how Interrogatory No. 46 could lead to the discovery of relevant non-privileged evidence.  If the imagined "dispute" between MGA and its prior counsel does not relate to the claims or defenses in this action, then it is not relevant and is not subject to discovery.  Fed. R. Civ. Proc. 26(b)(1).  If the dispute does relate to the claims or defenses in the action, then it necessarily involves prior counsel's mental impressions as to how this action should or should not be litigated.  Such mental impressions are protected by the attorney work product doctrine.  *See Feshbach v. Sec. & Exch. Comm'n*, 5 F. Supp. 2d 774, 781-82 (N.D. Cal. 1997) (work product doctrine protects from disclosure "'the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation' as well as documents 'prepared in anticipation of litigation'") (citing Fed. R. Civ. P. 26(b)(3)); *see also Hickman v. Taylor*, 329 U.S. 495 (1947).  Moreover, for there to be a "dispute," there must have been communication between attorney and client as to their differing views.  Thus, Interrogatory No. 46 seeks to invade the attorney-client privilege by requiring MGA to disclose the nature of any such dispute, which would require MGA to disclose the content of attorney-client communications regarding the dispute.  *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981).

But this entire debate is academic, because Mattel has not introduced a shred of evidence supporting its supposition that there was a "dispute" between MGA and its prior counsel.  In addition, other than for its utterly baseless conspiracy theories involving imagined misconduct, Mattel has failed to offer any justification for its inquiry into MGA's relationship with its previous attorneys.  Interrogatory No. 46 intrudes upon the attorney-client privilege and work product doctrine, notwithstanding Mattel's representation that it only seeks non-privileged information.  *See Flynn v. Church of Scientology Int'l*, 116 F.R.D. 1, 4 (D. Mass. 1986) (quashing

1  subpoena served on former attorney on privilege and relevance grounds). Moreover,

2  Mattel's mere speculation that MGA discussed wrongdoing with its attorneys is not

3  enough to invade the attorney-client privilege or work product doctrine, particularly

4  where Mattel does not allege any wrongdoing actually occurred. For example, as the

5  Ninth Circuit recently held, a party seeking to vitiate the attorney-client privilege or

6  work-product doctrine based on the crime-fraud exception must demonstrate the

7  applicability of the exception by a preponderance of evidence. *In re Napster, Inc.*

8  *Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007). Mattel's rank speculation

9  does not provide a basis to invade the privilege.

10       Nor is Mattel correct that MGA waived the attorney-client privilege or work

11  product doctrine by commenting to the press regarding its decision to change counsel.

12  There can be no waiver of protected material because none of the statements

13  disclosed the substance of any of confidential legal advice. *See, e.g., In re Grand*

14  *Jury Subpoena To Kan. City Bd. of Public Utilities*, No. 07-MC-212KHV/JPO, 2007

15  WL 4150974, at * 6 (D. Kan. Nov. 19, 2007) (no waiver resulting from interview

16  about report where "[a]ll that was discussed during the interview were non-

17  privileged matters"). Rather, the statements at issue merely acknowledged the

18  change in counsel and discussed the reasons for it generally.

19       In addition, the authority Mattel does cite to support its contention that this is

20  an "appropriate case" for disclosure have no bearing on whether a party can be

21  forced to answer an interrogatory about its relationship with its former attorneys. In

22  *George v. Siemens Industrial Automation, Inc.*, 182 F.R.D. 134 (D.N.J. 1998), the

23  court allowed disclosure of one paragraph of plaintiff's declaration that described her

24  mental condition after the court found the defendants' need for the information

25  "compelling" and concluded that "anything short of disclosing the information to

26  Defendants will result in the Court being a party to the perpetration of a fraud." *Id.*

27  at 142-43. Mattel's wild conspiracy theories fail to demonstrate any fraud or actual

28  need for the information, much less the "compelling" need discussed in *George*.

9

EXHIBIT __5__

PAGE __109__

1  Similarly, in *Blowers v. Lawyers Cooperative Publishing*, Civil Action No. CIV-73-

2  47, 1982 WL 221 (W.D.N.Y. Jan. 16, 1982), the court ruled that the information

3  sought – related to a fee agreement in a dispute over attorneys fees – was not

4  privileged to begin with. *Id.* at *5. Mattel makes no claim that MGA's fee

5  agreement with O'Melveny is relevant to this dispute and the case has no other

6  relevance here.

7  **IV.   INTERROGATORY NO. 39 IS AN IMPROPER ATTEMPT TO
   OBTAIN BANK ACCOUNT INFORMATION TO ISSUE MORE**

8  **ABUSIVELY DRAWN AND HARASSING SUBPOENAS**

9         Mattel's Interrogatory No. 39 requests MGA, MGA HK, MGA Mexico and

10  Isaac Larian to identify every bank or financial institution account that "refers or

11  relates" to them since January 1, 1999. As Mattel admits in its Motion, Mattel seeks

12  this information so that it can subpoena a broad array of financial information from

13  these banks and financial institutions. (Mot. at 25-27.) The Court should deny

14  Mattel's request to compel a response to Interrogatory No. 39 because Mattel has not

15  shown good cause for the invasive and burdensome third party discovery to which a

16  response will inevitably lead.

17         Mattel claims that it needs information concerning MGA's financial condition

18  to establish MGA's net worth in connection with Mattel's punitive damage claims.

19  (Mot. at 26-27.) But Mattel has already received substantial financial information

20  from MGA directly, and has not shown how that information is insufficient. MGA

21  has already produced more than 37,000 pages of financial information to Mattel,

22  including:

23       •   Audited and unaudited quarterly and annual profit and loss statements;

24       •   Audited and unaudited quarterly and annual statements;

25       •   Annual reports;

26       •   Various MGA financial reports;

27       •   Various financial documents relating to Veronica Marlow;

28       •   Documents showing royalty payments to Carter Bryant;

---

10

EXHIBIT ___5___

PAGE ___110___

1   •     Documents showing MGA's sales, returns and costs of good sold for
2        each month, by SKU, since 2001;

3   •     Documents showing MGA's promotional, advertising and media
4        expenditures, including MGA's internal allocation of those expenditures
     by brand and/or product;

5   •     Documents showing MGA's amortization and depreciation of certain
     capital assets and expenditures;

6   •     Documents showing MGA's monthly general ledger entries aggregated
7        by account, including income and expense accounts, reserves and
     liabilities; and

8   •     Documents sufficient to explicate MGA's various accounts as presently
9        and historically maintained in MGA's books and records, as well as
     various nomenclature assigned to items, products, brands, sub-brands,
10       and profit centers.

11  (Miller Decl. ¶ 14.) Mattel has not shown how this financial information is

12  insufficient for its financial experts to determine MGA's net worth, or how

13  additional discovery from MGA's banks and financial institutions will assist that

14  analysis.

15       A subpoena is unduly burdensome where the subpoenaing party "can more

16  easily and inexpensively obtain the documents from [another party], rather than from

17  [the] nonparty." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005).

18  *See also Lectrolarm Custom Sys. v. Pelco Sales*, 212 F.R.D. 567, 573 (E.D. Cal.

19  2002) (issuing protective order where plaintiff subpoenaed non-party for documents

20  that plaintiff had sought from defendant because the "burdensome and harassing

21  nature of the requests clearly outweigh[ed] the minimal need for the very limited

22  amount of information that could be discovered under the subpoenas"); *J & M*

23  *Turner, Inc. v. Applied Bolting Tech. Prods.*, Civil Action No. 95-2179, Civil Action

24  No. 96-5819, 1997 U.S. Dist. LEXIS 4447, at * 3 (E.D. Pa. Apr. 2, 1997) (granting

25  non-party bank's motion to quash subpoena seeking financial information already

26  sought and obtained from another party).

27       Mattel claims that the "bank account information may lead to direct evidence

28  of liability regarding Mattel's allegations of commercial bribery." (Mot. at 25.)

---

11

EXHIBIT 5

PAGE 191

1     These are nothing but unsubstantiated allegations that do not justify the type of

2     abusive non-party discovery that Interrogatory No. 39 is designed to facilitate.

3     Mattel's "bribery" allegations consist solely of Mattel's allegation that MGA

4     financed Bryant's development of Bratz while he was still employed at Mattel.

5     (Proctor Decl. Ex. 41, Mattel's Second Am. Answer & Counterclaim at 37 (¶ 33), 59

6     (¶ 93(d)), 74 (¶ 165).)  Thus, the only financial documents that could possibly be

7     relevant to this allegation are documents showing payments by MGA to Bryant

8     during the time he was a Mattel employee.  MGA witness Lisa Tonnu has already

9     testified regarding payments to Mr. Bryant.  (Miller Decl. ¶ 15, Ex. 2 at 9-14 and 20 )

10    The financial records produced by MGA would also reflect those payments.  This

11    Court should not permit Mattel to engage in a fishing expedition through the private

12    banking records of the MGA entities and Isaac Larian on a quest to substantiate its

13    speculation about "commercial bribery."[5]

14       If Mattel is permitted to obtain the identity of every bank at which MGA,

15    MGA HK, MGA Mexico and Isaac Larian hold accounts and detailed, private

16    account information for those banks, more abusively drawn subpoenas are sure to

17    follow.  Indeed, as detailed in MGA's motion to quash subpoenas issued by Mattel to

18    ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and Angela Larian

19    Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells

20    Fargo (filed December 21, 2007), Mattel has already subpoenaed these entities for

21    the *entirety* of MGA and Mr. Larian's financial records, from tax returns to canceled

22    checks, for a nine-year period from 1999 to the present, and has demanded that these

23    entities produce vast amounts of private financial records for a host of other *non-*

24    *parties*, including every person who ever did any work for MGA or Mr. Larian, and

25    every conceivable relative of Mr. Larian.

26

27    [5]    As the Court is aware, Mattel and its counsel of record in this action have

28       previously been sanctioned for their third party discovery tactics.  *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813-814 (9th Cir. 2003).

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL

EXHIBIT _____ 5

PAGE _____ 112

V.   **MATTEL'S CONTENTION INTERROGATORIES DIRECTED TO THE "INVENTION" OF BRATZ ARE DESIGNED TO CONFUSE THE JURY, CIRCUMVENT THE 50 INTERROGATORY LIMIT AND IMPOSE UNDUE BURDEN AND EXPENSE ON MGA.**

Mattel's defined terms – including key terms such as "BRATZ INVENTION" and "DESIGN" – include disparate concepts under intellectual property law that have no place in the term "invention" and are obviously designed to confuse the jury and multiply Mattel's interrogatories beyond the 50-interrogatory limit, not to obtain legitimate discovery.

A.   **Mattel's Misleading Defined Terms Are Designed To Confuse The Jury**

Mattel improperly crams multiple, disparate concepts of intellectual property law into key definitions – such as the defined term "BRATZ INVENTION" – in hopes of forcing MGA to provide Mattel with a misleading "sound bite" for the jury. MGA responded using the ordinary meaning of the term "invention." (Miller Decl. ¶ 9.)   In meet and confer, Mattel's counsel said that it will not consider MGA's responses to be "full and complete" unless MGA either uses Mattel's misleading defined terms in its responses or addresses each component part of each defined term in each response.   Mattel is seeking to force MGA either to provide the misleading sound bite that Mattel will use to mislead the jury, or answer many more than the 50 interrogatories permitted by Judge Larson.   The Court should not permit such abuse of the interrogatory device.

Mattel's distorted definitions render the interrogatories directed to the "invention" of Bratz unworkable and improper for a number of reasons.   First, they make responding hopelessly complicated, and the answers confusing, which will inevitably lead to numerous arguments over the scope and meaning of each and every response.   Second, they allow Mattel to purport to ask one question while actually asking multiple questions on independent issues in the same interrogatory.   Third, Mattel's improper definitions seek to force MGA to respond in such a way

13

EXHIBIT ___5___

PAGE ___113___

1 | that risks creating a misleading "sound bite" for the jury. These points are illustrated
2 | in the discussion below.

3 |         1.    Mattel's Definition of "Bratz Invention"

4 |      Although "invention" may have different meanings in different contexts, the
5 | term invariably relates to patent law. *See* 1-GLOS *Chisum on Patents* (2007)
6 | (describing the various uses of "invention" in patent law). Mattel, however, defines
7 | the term to include several other categories of intellectual property rights and
8 | doctrines in addition to patent law:

9 |
10 |
11 |
12 |         BRATZ INVENTION means any representation, idea, concept, work, process, procedure, plan, improvement, DESIGN or other development, whether fixed in tangible form or not, that REFERS OR RELATES TO BRATZ, including but not limited to any DESIGN that REFERS OR RELATES TO BRATZ.

13 | *See* Mattel, Inc.'s Revised Third Set of Interrogatories at 4 (Proctor Decl. Ex. 7 at
14 | 31).

15 |      "Work" and "fixed in a tangible medium" are copyright law, not patent law,
16 | terms. *See* 17 U.S.C. § 101 (setting forth the rule that a "work is 'fixed' in a tangible
17 | medium of expression when its embodiment in a copy or phonorecord, by or under
18 | the authority of the author, is sufficiently permanent or stable to permit it to be
19 | perceived, reproduced, or otherwise communicated for a period of more than
20 | transitory duration"). In addition, by including the terms "idea" and "concept,"
21 | Mattel has also incorporated rights protected, not by patent law, but by California's
22 | idea-protection principles. *See Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967
23 | (9th Cir. 2004); *Desny v. Billy Wilder*, 46 Cal. 2d 715, 738-739 (1956).

24 |      Thus Mattel's proffered definition of "BRATZ INVENTION" includes within
25 | its scope at least three distinct areas of intellectual property law. These definitions
26 | are all the more confusing and complicated because while some "ideas" can be
27 | protected under the *Desny* doctrine and others could lead to a patented invention,
28 | "ideas" are not protected under copyright law. *See* 17 U.S.C. § 102(b).

EXHIBIT 5

PAGE 114

1    The risk of a misleading "sound bite" is readily apparent when one considers
2 that the critical document at issue in this lawsuit with respect to Mattel's affirmative
3 claims is the "Employee Confidential Information and Inventions Agreement" signed
4 by Carter Bryant on or about January 4, 1999.  Mattel seeks to have MGA admit that
5 Carter Bryant was responsible for creating an "invention," even though he in fact did
6 not create an "invention" as that term is used by everyone on the planet except for
7 Mattel, if what he did was create a novel idea protectible under *Desny*, but not
8 eligible for patent protection.

9    By way of example, Mattel's Interrogatories 27-29 ask MGA to "IDENTIFY
10 each and every BRATZ INVENTION that was CREATED" before or after certain
11 dates relating to Carter Bryant's employment at Mattel.  *See* Mattel, Inc.'s Revised
12 Third Set of Interrogatories at 9-10 (Proctor Decl. Ex. 7 at 36-37).  Mattel has known
13 since as early as 2005, when it took Carter Bryant's deposition, that Bryant made
14 minor changes to his Bratz-concept drawings in 1999 and/or 2000.  By defining
15 "CREATED" to include "altered," *see* Mattel, Inc.'s Revised Third Set of
16 Interrogatories at 6 (*id.* at 33) , Mattel is hoping that MGA will admit that Carter
17 Bryant made an "invention" during his employment with Mattel, even though the
18 minor changes he made to the drawings were not "inventions" as the term is used in
19 patent law, nor were they meaningful from a copyright point of view.  If successful,
20 Mattel's gambit would allow it to parade before the jury its "Inventions Agreement"
21 and then argue to the jury that in response to an interrogatory, MGA admitted that
22 Carter Bryant had indeed made an "invention" while working at Mattel in 1999/2000.

23        2.    Mattel's Definition of "Design"
24    Mattel defines "DESIGN" or "DESIGNS" as:

25        any and all representations, whether two-dimensional or
        three-dimensional, and whether in tangible, digital,
26        electronic or other form, including but not limited to all
        works, designs, artwork, sketches, drawings, illustrations,
27        representations, depictions, blueprints, schematics,
        diagrams, images, sculptures, prototypes, models, samples,
28        rotocasts, reductions to practice, developments, inventions
        and/or improvements, as well as all other items, things and

15

1            DOCUMENTS in which any of the foregoing are or have
been expressed embodied, contained, fixed or reflected in

2            any manner, whether in whole or in part.

3   *See* Mattel, Inc.'s Revised Third Set of Interrogatories at 3 (Proctor Decl. Ex. 7 at

4   30); Mattel, Inc.'s Amended Fourth Set of Interrogatories at 3 (Proctor Decl. Ex. 9 at

5   53).

6       This definition combines at least three or four disparate intellectual property

7   concepts. In addition to invoking copyright principles ("artwork, sketches, drawings,

8   illustrations, . . . depictions, blueprints, diagrams, images, sculptures, . . . models . . .

9   fixed . . ."), *see* 17 U.S.C. § 101, the definition also includes patent law terms, such

10   as "designs," "reductions to practice" and "improvements." *See* 35 U.S.C. § 102(g);

11   35 U.S.C. § 171; 1- GLOS *Chisum on Patents* (2007). In addition, the definition

12   makes no distinction between design and utility patents. *See* 1-23 *Chisum on Patents*

13   § 23.01 (highlighting the distinctions between the two).

14       Moreover, under Mattel's definition, a "DESIGN" could also be a trade secret

15   under California's Uniform Trade Secrets Act. *See* Cal. Civ. Code § 3426.1

16   (defining "Trade secret" as "information, including a formula, pattern, compilation,

17   program, device, method, technique, or process that: (1) Derives independent

18   economic value, actual or potential, from not being generally known to the

19   public . . ."). This is yet another critical distinction, because under the express terms

20   of Mattel's own "Inventions Agreement," trade secrets are treated differently than

21   are "inventions."

22       Using these terms, Mattel's Interrogatory 42 asks MGA to "State all facts that

23   support YOUR contention . . . that any BRATZ DOLLS are not BASED ON

24   BRATZ DESIGNS created by BRYANT on or before October 19, 2000." *See*

25   Mattel, Inc.'s Amended Fourth Set of Interrogatories at 7 (Proctor Decl. Ex. 9 at 57).

26   To understand this, of course, one first has to consult the definition of "BASED

27   ON," defined by Mattel to mean "substantially similar to, a copy of or a derivative

28   of," which are all copyright terms. *See* Mattel, Inc.'s Amended Fourth Set of

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL

EXHIBIT __5__

PAGE __116__

1 │ Interrogatories at 4 (*Id.* at 54); 4-13 Nimmer on Copyright § 13.03 (2007). By

2 │ defining "BASED ON" in terms of copyright law, but then using the term in

3 │ conjunction with the broad-scope definition of "BRATZ DESIGNS" (which invokes

4 │ patent law and trade secret principles), Mattel is attempting to gloss over the

5 │ important distinctions between these separate areas of intellectual property law.

6 │ These distinctions are extremely important here, because there is a hotly contested

7 │ dispute over whether Mattel's "Inventions Agreement" even covered design patents

8 │ and/or copyrights.

9 │ We will not belabor the point further with a detailed discussion of each

10 │ definition -- -- it is not MGA's responsibility to rewrite Mattel's deficient

11 │ interrogatories. As the examples discussed above illustrate, these interrogatories are

12 │ not seeking reasonable and fair discovery; they are seeking jury "sound bites" that

13 │ would inaccurately and misleadingly portray the facts of the dispute and distort the

14 │ applicable legal principles.

15 │ **B.    The Component Parts Of Mattel's Defined Terms Multiply The**
16 │ **Interrogatories Beyond The 50-Interrogatory Limit**

17 │ During the meet and confer, Mattel's counsel demanded that, if MGA did not

18 │ respond to the interrogatories using Mattel's misleading defined terms, then MGA

19 │ must respond to each of the words contained in each defined term. (Miller Decl. ¶

20 │ 10.) This demand clearly circumvents the 50-interrogatory limit.[6]

21 │ This Court previously found that Mattel had exceeded the 50-interrogatory

22 │ limit by attempting to address discrete issues and cover multiple legal theories and

23 │ _____
   │ [6]    As noted above, contrary to the misrepresentations of Mattel's counsel, MGA
24 │ did not abandon its argument that Mattel had exceeded the 50-interrogatory
   │ limit in propounding these interrogatories. MGA's counsel told Mattel's
25 │ counsel in the meet and confer process that MGA was not relying on the 50-
   │ interrogatory limit in its responses to the interrogatories, but instead was
26 │ answering the interrogatories without use of Mattel's defined terms. (Miller
   │ Decl. ¶ 9.) When Mattel's counsel contended that MGA must respond to each
27 │ component part of each defined term in order to fully respond to the
   │ interrogatories, MGA's counsel made clear to Mattel's counsel that if Mattel
28 │ took that position, MGA would reserve the right to object to the multiplication
   │ of Mattel's interrogatories as violative of the 50-interrogatory limit. (*Id.* ¶ 10.)

---

17

EXHIBIT ___5___

PAGE ___11 7___

1 | factual matters in a single interrogatory. (Order Granting Joint Motion for Protective
2 | Order at 7-8, Proctor Decl., Ex. 33.) Mattel's use of defined terms that include
3 | distinct and separate legal issues and theories violates that ruling.[7]
4 |   As discussed above, by combining the defined terms "BRATZ INVENTION,"
5 | "DESIGNS," "CREATED" and "BASED ON" in its interrogatories, Mattel attempts
6 | to force MGA to address discrete issues of patent, trade secret, copyright and
7 | California common law. In doing so, Mattel includes multiple legal issues in several
8 | of the interrogatories. For example, in responding to Interrogatory Nos. 27-29, to
9 | avoid making an untrue admission that Bryant "CREATED" a "BRATZ
10 | INVENTION" while employed by Mattel, MGA cannot use Mattel's definition of
11 | "BRATZ INVENTION," which includes concepts that do not properly belong within
12 | any recognized use of the term "invention." Mattel would have this Court compel
13 | MGA to answer the interrogatory by responding to each of the component parts of
14 | that defined term, which includes 9 different concepts plus the defined term
15 | "DESIGN," which contains more than 21 additional component parts. And these
16 | disparate subparts do not relate to a single legal theory. To answer each of the
17 | components of the term "BRATZ INVENTION," including its use of the term
18 | "DESIGN," MGA would be required to address issues of patent law, copyright law,
19 | trade secret law, contract law and California common law protecting original ideas
20 | that go to the heart of this case. Under the Court's September 5, 2007, order, these
21 | interrogatories are compound and exceed the 50-interrogatory limit. (*See* Order
22 | Granting Joint Motion for Protective Order at 7-8 (Proctor Decl. Ex. 33)

---

[7] Mattel suggests that this Court previously approved these interrogatories. (Mot. at 5.) Mattel is wrong. As Mattel concedes, in its prior ruling, the Court held that a request to state supporting facts, identify persons with information and identify relevant documents constituted a single interrogatory so long as the subject matter of the interrogatory focused on a single issue, and also held that an interrogatory "that covers multiple claims, legal theories or other subjects" counts as multiple interrogatories. (*Id.* at 5; Order Granting Joint Motion for Protective Order at 7-8, Proctor Decl., Ex. 33.) As demonstrated herein, Mattel's misleading use of compound defined terms violates the Court's rule. The Court did not previously address the compound nature of these defined terms.

---

18

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL

EXHIBIT __5__

PAGE __118__

**C.**   **Mattel's Interpretation Of Its Contention Interrogatories Renders Them Unduly Burdensome And Expensive**

In responding to Mattel's contention interrogatories, MGA provided Mattel with the *principal* facts supporting the contentions identified in the interrogatories, identified persons with knowledge of those facts based on its current investigation and the incomplete state of discovery (including significant document and deposition discovery that has not yet been provided by Mattel), and identified the principal documents or categories of documents that support each contention. In this Motion, Mattel seeks (i) to force MGA to "state all facts" that support its contentions, (ii) to identify every person who might know about those facts, and (iii) to compel MGA to review the nearly 4 million pages of documents produced in this action to identify all documents that supports its contentions. Mattel's interpretation of its contention interrogatories would impose an undue burden on MGA. Indeed, many courts reject out of hand this type of contention interrogatory as overly broad, unduly burdensome and therefore "inherently improper". *Clean Earth Remediation & Constr. Servs.*, 245 F.R.D. at 141 ("[A] number of cases have held that interrogatories seeking identification of all facts supporting a particular allegation are *inherently improper*.") (emphasis added) (collecting cases); *see, e.g., Moses*, 236 F.R.D. at 674 ('[C]ontention interrogatories' are overly broad and unduly burdensome on their face if they seek 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case."); *Grynberg*, 2006 WL 1186836, at *6-*7.

The undue burden of Mattel's contention interrogatories is exacerbated by the fact that they ask MGA, as the defendant in this case, to "prove the negative" by, in effect, requiring MGA to support its denial of Mattel's contention in this case that Bryant invented Bratz while employed by Mattel (*e.g.* Interrogatories Nos. 27-29) and to explain why it should not be punished with injunctive relief and punitive damages (*e.g.* Interrogatories Nos. 32-33). For example, in *Lawrence v. First*

19

EXHIBIT __5__

PAGE __119__

1  *Kansas Bank & Trust Co.*, 169 F.R.D. 657 (D. Kan. 1996), the court held that

2  plaintiff's contention interrogatories requiring defendant to "state all facts"

3  supporting its denial of allegations made in plaintiff's complaint were overly broad

4  and placed an unreasonable burden on the defendant. *Id* at 662-663.  The district

5  court recognized that this type of contention interrogatory, where a plaintiff seeks to

6  compel the defendant to prove the negative, is particularly burdensome:

> Part of that burden arises in this case by the characteristic common to these interrogatories for asking defendant to provide "all" facts in support of its denials of allegations pled by plaintiff. To state "all" facts in support of a negative proposition, of course, includes an inventory of evidence which defendant itself would offer at trial to refute the claims of plaintiff. Beyond that, however, it would further require defendant to provide essentially a review of facts and commentary to support its evaluation, if any, that the anticipated evidence of plaintiff as to each disputed paragraph of the complaint simply lacks weight or credibility. The request for "all" facts, based not only upon knowledge, but also upon simply information and belief, adds a significant and unreasonable burden to the task of the answering party.

15  *Id.* at 663.  In finding the interrogatories to be unduly burdensome, the district court

16  anticipated just the type of abusive contention interrogatories that Mattel seeks to

17  compel MGA to answer here:

> the interrogatories in question would require defendant to provide the equivalent of a narrative account of its case in defense, addressing each issue and detail raised by its denials. This would include every evidentiary fact, details of testimony by supporting witnesses, contents of supporting documents, and even argumentative justification for its belief of facts beyond the knowledge of defendant. The Court can hardly construe the intent of plaintiff as anything less, given her requests for "all facts" and her repeated emphasis in her memoranda upon the word "all."

24  *Id.* at 662; *see also Safeco of America v. Rawstron*, 181 F.R.D. 441, 447-448 (C.D.

25  Cal. 1998) (following *Lawrence* and holding that interrogatories that sought to

26  require the answering party to state all facts supporting the denial of statements made

27  in requests for admission were unduly burdensome; finding with respect to the

28

EXHIBIT ___5___

PAGE ___170___

1 "identification of facts" that "as the court suggested in *Lawrence*, the universe of
2 potentially responsive information is almost endless").

3     Similarly, Mattel argues that a "full and complete" response, under Mattel's
4 interpretation, must include a statement of "all facts" supporting the contentions of
5 MGA that Mattel's allegations in the complaint are not true.  Under this
6 interpretation, MGA would be required to review the nearly 4 million pages of
7 documents produced in this action and more than 50 days of deposition testimony to
8 state "every evidentiary fact, details of testimony by supporting witnesses, [and the]
9 contents of supporting documents." *Lawrence*, 169 F.R.D. at 662.  Such an
10 interpretation renders the interrogatories unduly burdensome and expensive.

11     As discussed below, Rule 33 of the Federal Rules of Civil Procedure does not
12 require this type of response to properly framed contention interrogatories.

13 **VI.**   **MGA'S RESPONSES TO MATTEL'S CONTENTION**
**INTERROGATORIES ARE FULL AND COMPLETE BECAUSE**
14 **THEY PROVIDE MATTEL WITH THE PRINCIPAL FACTS**
**SUPPORTING MGA'S CONTENTIONS**
15

16     MGA has complied with its obligation to respond to Mattel's contention
17 interrogatories under any reasonable interpretation of those interrogatories.

18     **A.**   **Rule 33 Requires MGA To State The Principal Or Material Facts**
**Supporting Its Contentions In Response To Mattel's Contention**
19 **Interrogatories**

20     Those courts that permit the type of contention interrogatories propounded by
21 Mattel have held that the duty to respond is limited to an identification of the
22 "'principal or material' facts which support" the contention.  *Moses*, 236 F.R.D. at
23 674 (quoting *Stoldt v. Centurion Indus.*, No. 03-2634-CM-DJW, 2005 WL 375667,
24 at *5 (D. Kan. Feb. 3, 2005)).  *See also Grynberg*, 2006 WL 1186836, at *7 ("It is
25 proper, of course, to inquire about the material facts supporting specific factual
26 matters raised in the pleadings."); *IBP, Inc.*, 179 F.R.D. at 321 ("An interrogatory
27 may reasonably ask for the material or principal facts which support a contention.").
28 As one court explained, "to require specifically 'each and every' fact and application

EXHIBIT **5**

PAGE **121**

1  of law to fact . . . would too often require a laborious, time-consuming analysis,

2  search, and description of incidental, secondary, and perhaps irrelevant and trivial

3  details." *Id.* at 321. Courts recognize that contention interrogatories should not

4  require the responding party to lay out a narrative account of every factual detail

5  supporting their case:

> 6  Interrogatories should not require the answering party to
> provide a narrative account of its case. They should not
> 7  duplicate initial disclosures. The court will generally find
> them overly broad and unduly burdensome on their face to
> 8  the extent they ask for every fact which supports identified
> allegations or defenses. Interrogatories may, however,
> 9  properly ask for the principal or material facts which
> support an allegation or defense.
> 10

11  *Hiskett*, 180 F.R.D. at 404-05 (citations and internal quotation marks omitted).

12      Mattel's cases do not support Mattel's overly broad and unduly burdensome

13  interpretation. In *Auto Meter Products, Inc. v. Maxima Technologies & Systems,*

14  *LLC*, No. 05 C 4587, 2006 WL 3253636 (N.D. Ill. Nov. 6, 2006), the answering

15  party was forced to respond to "all facts" interrogatories after it added new

16  contentions following the close of fact discovery. *Id.* at *2. Here, fact discovery

17  remains open, Mattel is the party that has failed to produce documents and

18  deposition witnesses, and in these interrogatories Mattel asks MGA to support its

19  denial of Mattel's unsupported allegations. *Tennison v. San Francisco*, 226 F.R.D.

20  615 (N.D. Cal. 2005), is likewise inapposite because the interrogatory responses at

21  issue there merely referred to various pleadings and papers in response to a request

22  for facts supporting claims at issue, leaving the court to conclude that further

23  responses were necessary because the defendant "should not have to guess" the

24  plaintiff's position. *Id.* at 618. As discussed below, MGA has not simply referred to

25  a mass of pleadings or documents, but has set forth the principal facts supporting its

26  contentions in this action. *Dang v. Cross*, No. CV 00 13001 GAF(RZX), 2002 WL

27  432197 (C.D. Cal. March 18, 2002), primarily addressed whether the definition of

28  the term "identify" in that case rendered the interrogatories compound and in excess

---

22

EXHIBIT __5__

PAGE __122__

1  of the 25 interrogatory limit. *Id.* at *2-3. Applying a "clearly erroneous" standard to

2  the recommendation of the magistrate and without analysis of the specific

3  interrogatories, the district court affirmed the magistrate's ruling that the "state all

4  facts" contention interrogatories at issue there were distinguishable from the

5  improper interrogatories struck down in *Lawrence* and its progeny, recognizing that

6  "reasonable people (or Magistrate Judges) might disagree about the burden imposed

7  by these interrogatories. . . ." *Id.* at *3-4. *Dang* does not support the unduly

8  burdensome interrogatories pressed by Mattel here.

9      The court in *Autotext Communications Network v. US Telecom, Inc.*, Civ. A.

10  No. 94-2395-GTV, 1995 WL 625953 (D. Kansas Oct. 5, 1995), rejected an argument

11  that "all facts" interrogatories are "necessarily improper," but found such

12  interrogatories to be "unnecessary and unreasonable" where they require

13  identification of thousands of company employees "no matter how small or

14  insignificant [their] involvement" in the events at issue in the litigation. *Id.* at *1-*2.

15  More recent decisions from the same district court reaffirmed that "'[c]ontention

16  interrogatories' are overly broad and unduly burdensome on their face if they seek

17  'all facts' supporting a claim or defense, such that the answering party is required to

18  provide a narrative account of its case." *Moses*, 236 F.R.D. at 674; *see also Hiskett*,

19  180 F.R.D. at 404-05 ("Interrogatories should not require the answering party to

20  provide a narrative account of its case.").[8]

21      [8]  The other authorities cited by Mattel also fail to demonstrate that "all facts"

22  interrogatories are proper here. *See Twigg v. Pilgrim's Pride Corp.*, Civil
   Action No. 3:05-CV-40, 2007 WL 676208, at *11-12 (N.D. W. Va. Mar. 1,

23  2007) (deciding, for purposes of fee motion, that objections were not
   substantially justified; the court "emphasize[d]" that its discussion "is not

24  about how the Court would have ruled had specific objections been
   presented"); *Wilson v. Thompson/Center Arms Co.*, Civil Action No. 05-6493-

25  KDE-SS, 2006 WL 3524250, at * 1 (E.D. La. Dec. 5, 2006) (compelling
   further responses where interrogatory recipients argued that they were not

26  obligated to provide any information other than their Rule 26 initial
   disclosures); *Williams v. The Art Inst. Of Atlanta*, Civil Action File No. 1:06-

27  CV-0285-CC/AJB, 2006 WL 3694649, at *6-*7 (N.D. Ga. Sept. 1, 2006)
   (party provided no substantive responses to contention interrogatories served

28  two weeks before discovery cut-off even though no discovery was needed to
   respond); *Zapata v. IBP, Inc.*, Civil Action No. 93-2366-EEO, 1997 WL

                                                                   *(cont'd)*

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL

EXHIBIT ___5___

PAGE ___123___

B. **MGA's Responses to Mattel's Contention Interrogatories Comply With Its Obligations Under Rule 33**

1. Interrogatories Regarding Bratz Inventions and Designs (Nos. 27-30 and 42)

Interrogatories Nos. 27-30 and 42 all relate to the origination and ownership of the Bratz line of fashion dolls:

Interrogatory No. 27: IDENTIFY each and every BRATZ INVENTION YOU contend was CREATED, in whole or in part, prior to January 4, 1999, and for each BRATZ INVENTION so identified state all facts that support YOUR contention that such BRATZ INVENTION (or aspects or portions thereof) was CREATED prior to January 4, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

Interrogatory No. 28: IDENTIFY each and every BRATZ INVENTION YOU contend was CREATED, in whole or in part, after October 19, 2000, and before June 1, 2001, and for each BRATZ INVENTION so identified state all FACTS that support YOUR contention that such BRATZ INVENTION (or aspects or portions thereof) was CREATED after October 19, 2000 and before June 1, 2001, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

Interrogatory No. 29: IDENTIFY each and every BRATZ INVENTION that was CREATED, in whole or in part, after January 3, 1999 and before October 21, 2000, and for each BRATZ INVENTION so identified state all FACTS that REFER OR RELATE TO the timing of the creation of such BRATZ INVENTION and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

Interrogatory No. 30: State all facts that support YOUR contention, if YOU so contend, that, assuming BRYANT assigned rights in any BRATZ INVENTION to MATTEL pursuant to the INVENTIONS AGREEMENT, MGA is entitled to priority over and/or has superior rights to MATTEL as to such BRATZ INVENTION, and

*(cont'd from previous page)*
122588, at * 1 (D. Kan. 1997) (responding party required to supplement where initial response did not respond to request; interrogatory sought "factual basis" for affirmative defenses rather than "all facts" or "each and every fact"); *Pension Benefit Guaranty Corp. v. Ziffer*, No. 91 C 7762, 1994 WL 11654, at * 1 (N.D. Ill. Jan. 6, 1994) (authorizing seven "all facts" interrogatories but noting that in other circumstances such interrogatories "may be vague and open-ended").

24

EXHIBIT 5

PAGE 124

1          IDENTIFY all PERSONS with knowledge of such facts

2          and all DOCUMENTS that REFER OR RELATE TO such facts. ( Proctor Decl. Ex. 7 at 36-37)

3          Interrogatory No. 42: State all facts that support YOUR

4          contention, if YOU so contend, that any BRATZ DOLLS are not BASED ON BRATZ DESIGNS created by BRYANT on or before October 19, 2000, and IDENTIFY

5          all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

6          ( *Id.*, Ex. 8 at 48)

7       MGA's responses to Interrogatories Nos. 27-30 and 42 satisfy MGA's

8 obligations under Rule 33. They set forth MGA's principal factual and legal

9 contentions with respect to the origination of Bratz. MGA's principal contention in

10 this case with respect to the origination of Bratz is that in August or September of

11 1998, when Carter Bryant was not employed by Mattel, Bryant, inspired by images,

12 including in the August 1998 issue of Seventeen Magazine, the appearance of

13 teenagers, as well as other images in the public domain, conceived of an idea for a

14 line of dolls he named Bratz. (*See* MGA's Suppl. Responses to Interrogatories Nos.

15 27-29, Proctor Decl. Ex. 21 at 229-30, 235-36 and 241.) At the same time, Bryant

16 sketched a series of drawings to illustrate his idea. (*Id.*) Bryant did not create any

17 invention or original idea related to Bratz during the period of his employment by

18 Mattel. (*Id.*)

19       MGA further contends that, to the extent that the Bratz line of dolls first

20 marketed by MGA in 2001 contained features covered by design patent law, those

21 "inventions" were "reduced to practice" after October 20, 2000 and before June 1,

22 2001, after Bryant had assigned all rights in Bratz to MGA and after Carter Bryant's

23 employment by Mattel had been terminated. (MGA's Suppl. Response to

24 Interrogatory No. 28, Proctor Decl. Ex. 21 at 235-36.) Neither the first generation of

25 Bratz dolls nor any subsequent Bratz products were "based on" any Carter Bryant

26 designs created on or before October 19, 2000, but instead the first generation of

27 Bratz dolls (and subsequent Bratz products) were "conceived of" and "reduced to

28 practice" for purposes of design patent law, and first expressed in a tangible medium

EXHIBIT __5__

PAGE __125__

1  for purposes of copyright law, after October 20, 2000, as a result of efforts of artists
2  employed by, or working on behalf of, MGA.  (MGA's Suppl. Responses to Mattel's
3  Amended Fourth Set of Interrogatories, No. 42, Proctor Decl. Ex. 25 at 504-505.)
4         In its supplemental responses, MGA has provided Mattel with its principal
5  factual and legal contentions with respect to the "invention" of Bratz under both
6  utility patent law and design patent law.  MGA's responses to Interrogatories Nos.
7  27-30 and 42, which are set forth in full in MGA's Response to Mattel's Separate
8  Statement, comply with MGA's obligations under Rule 33 to provide the principal
9  facts supporting its contentions regarding the "invention" of Bratz.

10             2.    Interrogatories That Assume The Truth Of Mattel's Allegations
11                   And Ask MGA For Facts Proving The Negative.

12        Interrogatories Nos. 31-38 assume that Mattel owns Bryant's original idea for
13  Bratz and ask MGA to explain why it should not be punished for developing
14  Bryant's idea into one of the most successful fashion dolls on the market:

15        Interrogatory No. 31:  State all facts that support YOUR
16        contention, if YOU so contend, that the INVENTIONS
          AGREEMENT is not valid and enforceable, and
17        IDENTIFY all PERSONS with knowledge of such facts
          and all DOCUMENTS that REFER OR RELATE TO such
18        facts.

19        Interrogatory No. 32:  State all facts that support YOUR
          contention, if YOU so contend, that MATTEL is not or
20        would not be entitled to injunctive relief as requested in its
          COMPLAINT and/or COUNTERCLAIMS if it is
21        ultimately determined that MATTEL owns one or more
          BRATZ INVENTIONS, and IDENTIFY all PERSONS
22        with knowledge of such facts and all DOCUMENTS that
          REFER OR RELATE TO such facts.

23        Interrogatory No. 33:  State all facts that support YOUR
24        contention, if YOU so contend, that MATTEL is not
          entitled to an award of punitive or exemplary damages
25        against YOU, and IDENTIFY all PERSONS with
          knowledge of such facts and all DOCUMENTS that
26        REFER OR RELATE TO such facts.

27        Interrogatory No. 34:  State all facts that support YOUR
          contention, if YOU so contend, that YOU did not
28        intentionally interfere with the INVENTIONS
          AGREEMENT when BRYANT purported to TRANSFER
          and MGA purported to ACQUIRE rights to BRATZ, and

                                        26

EXHIBIT ___5___

PAGE __126__

IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

Interrogatory No. 35: State all facts that support YOUR contention, if YOU so contend, that YOU did not aid or abet any breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL when BRYANT performed work or services with or for MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

Interrogatory No. 36: State all facts that support YOUR contention, if YOU so contend, that YOU acted with an innocent state of mind or reasonably believed that MATTEL did not own any rights in any BRATZ INVENTION when BRYANT purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

Interrogatory No. 37: State all facts that support YOUR contention, if YOU so contend, that BRYANT did not breach the INVENTIONS AGREEMENT when BRYANT purported to TRANSFER rights to BRATZ to MGA, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

Interrogatory No. 38: State all facts that support YOUR contention, if YOU so contend, that BRYANT did not breach BRYANT's duty of loyalty or fiduciary duties to MATTEL when BRYANT performed work or services with or for MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

(Proctor Decl. Ex. 7 at 37-39.)

These contention interrogatories improperly assume that Mattel has already prevailed in this action and ask MGA to explain why it should not be punished for wrongdoing that Mattel has yet to establish. *See Lawrence*, 169 F.R.D. at 662; *Safeco of America v. Rawstron*, 181 F.R.D. at 447-448. Mattel is the plaintiff in this action with the burden of proof on these issues. Yet Mattel demands that MGA set forth its defenses before Mattel had proven a single fact in support of its affirmative

EXHIBIT ___5___

PAGE ___127___

1  claims.  Nevertheless, MGA answered the interrogatories in good faith by providing

2  the principal facts supporting its contentions.

3       For example, MGA explained the principal factual and legal bases for its

4  contentions that (i) even assuming Mattel could show that it owned some rights to

5  ideas conceived by Bryant prior to his assignment to MGA, Mattel would not be

6  entitled to injunctive relief or punitive damages (Nos. 32, 33 and 36), (ii) Bryant's

7  inventions agreement with MGA is invalid an unenforceable due to Mattel's own

8  conduct (No. 31), and (iii) that the transfer of all rights to Bratz from Bryant to MGA

9  did not constitute an intentional interference with any contract between Bryant and

10  Mattel or a breach of any fiduciary duties owed by Bryant to Mattel (Nos. 34-35 and

11  37-38).  (Proctor Decl. Ex. 21 at 244 - 274.)  These responses, which are set forth in

12  full in MGA's Response to Mattel's Separate Statement, more than comply with

13  MGA's obligations under Rule 33.

14            3.    Interrogatories Seeking Dates On Which The Products That
                    Mattel Copied and Infringed Originated (Nos. 43 and 44)
15

16       In Interrogatories Nos. 43 and 44, Mattel asks when the intellectual property

17  that MGA contends has been infringed by Mattel was conceived and first fixed in

18  any tangible medium of expression:

19            Interrogatory No. 43:  For each concept, design, product,
              product packaging or other matter that YOU contend
20            MATTEL copied or infringed, including but not limited to
              those identified in MGA's Responses To Mattel, Inc.'s
21            First Set Of Interrogatories Re Claims Of Unfair
              Competition, Response To Interrogatory No. 2 (and any
22            Supplemental Responses to such Interrogatory), state the
              date that each such concept, design, product, product
23            packaging or other matter was conceived, and IDENTIFY
              all PERSONS with knowledge of, and all DOCUMENTS
24            that REFER OR RELATE TO, the foregoing.

25            Interrogatory No. 44:  For each concept, design, product,
              product packaging or other matter that YOU contend
26            MATTEL copied or infringed, including but not limited to
              those identified in MGA's Responses To Mattel, Inc.'s
27            First Set Of Interrogatories Re Claims Of Unfair
              Competition, Response To Interrogatory No. 2 (and any
28            Supplemental Responses to such Interrogatory), state the
              date that each such concept, design, product, product

EXHIBIT ___5___

PAGE __128__

1    packaging or other matter was first fixed in any tangible
     medium of expression (if ever), and IDENTIFY all
2    PERSONS with knowledge of, and all DOCUMENTS that
     REFER OR RELATE TO, the foregoing.
3

4    (Proctor Decl. Ex. 9 at 57-58.)  In response, MGA incorporated prior responses in

5    which MGA had identified the date that the relevant MGA products were first

6    available for sale and noted that "in general, at MGA, product development is

7    completed 7-8 months before the first invoice date, although that time period could

8    be reduced in certain situations to 5-6 months."  (Proctor Decl. Ex. 25 at 508.)  This

9    provides Mattel with an approximate first date of conception and expression in a

10   tangible medium for each product.

11          MGA is assessing whether more definite dates can be determined.  If more

12   specific information as to the date these products were first conceived and first fixed

13   in a tangible medium can be determined without undue burden to MGA, it will

14   provide that information in supplemental responses.

15          4.      Trade Dress Infringement Interrogatories (Nos. 48-50)

16          Interrogatories Nos. 48 through 50 ask MGA to identify each trade dress that

17   has been infringed by Mattel and the Mattel product that infringes that trade dress,

18   and to explain how that trade dress is protectible:

19          Interrogatory No. 48:  Separately IDENTIFY each trade
            dress that YOU contend MATTEL has copied, infringed or
20          diluted or that is otherwise the subject of YOUR claims,
            defenses or allegations in THIS ACTION.
21
            Interrogatory No. 49:  For each trade dress identified in
22          response to Interrogatory No. 48, separately and fully
            IDENTIFY each and every MATTEL product, packaging
23          or other matter that YOU contend copies, infringes or
            dilutes such trade dress, including without limitation by
24          describing fully and separately, for each such MATTEL
            product, packaging or other matter, each and every element
25          of the claimed trade dress that YOU contend MATTEL has
            copied, infringed or diluted.
26
            Interrogatory No. 50:  For each trade dress identified in
27          response to Interrogatory No. 48, separately and
            completely IDENTIFY all facts that support YOUR
28          contention that such trade dress is protectible, all

                                          29
─────────────────────────────────────────────────────────────
MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL

EXHIBIT _____5_____

PAGE __129__

DOCUMENTS that REFER OR RELATE to the foregoing and all PERSONS with knowledge of the foregoing.

(Proctor Decl. Ex. 12 at 87.)

First, MGA notes that this is a Phase 2 issue that is not subject to the January 28, 2008, Phase 1 discovery cutoff.  Just as Mattel has done in its interrogatory responses, MGA has reserved the right to supplement its responses as discovery progresses.  (Proctor Decl. Ex. 29 at 574)  MGA will supplement these responses in the course of Phase 2 discovery.

Second, MGA's responses provide Mattel with the principal facts supporting its contentions regarding Mattel's trade dress infringement, in compliance with its Rule 33 obligations under the authorities discussed *supra*.  MGA identified the elements of its trade dress that Mattel has infringed.  (Proctor Decl. Ex. 29 at 583-84.) MGA identified Mattel's "My Scene" fashion dolls and pet dolls as the Mattel products that infringed this trade dress.  (*Id.* at 589.)  MGA also identified the principal facts supporting its contention that its trade dress was protectible under applicable trade dress legal principles, including that the trade dress is aesthetic and non-functional, inherently distinctive, and has acquired secondary meaning.  (*Id.* at 593-94.)  These responses are sufficient to apprise Mattel of MGA's contentions on this Phase 2 issue.

Mattel contends that it is improper to reserve the right to supplement this interrogatory during expert discovery.  (Mot. at 25.)  Mattel is wrong.  Indeed, Mattel has stated in many of its interrogatory responses that the response may be supplemented in the course of expert discovery.  (Miller Decl. ¶ 16.)  Mattel does not contest that the identification of the elements and products subject to trade dress infringement will be a subject of expert testimony.  MGA is not required to serve its Phase 1 expert reports until February 11, 2008, and all dates for Phase 2 expert discovery have been vacated by Judge Larson.  If, in the course of their analysis, MGA's experts identify other MGA products or elements of MGA products that

30

EXHIBIT   5

PAGE   130

1   have been infringed by Mattel, MGA will supplement its interrogatory responses to

2   identify those products or elements.

**VII.   MGA HAS IDENTIFIED THE FORMER MATTEL EMPLOYEES WHO CAME TO WORK AT MGA (NO. 41)**

5         Interrogatory No. 41 asks MGA to identify former Mattel employees who

6   came to work at MGA:

> Interrogatory No. 41: IDENTIFY all PERSONS who at any time have been employed by or under contract with MATTEL who are now or have been employed by or under contract with YOU since January 1, 1999, and, for each such PERSON, state his or her name, date of hire or effective date of contract, the date on which YOU first had contact with such PERSON regarding potential employment or contracting, the date(s) on which such PERSON was interviewed for possible employment or contracting, each title (if any) such PERSON has held while employed by or under contract with YOU, and the date of termination (if applicable).

14   (Proctor Decl. Ex. 7 at 40.)  MGA did so.  In response, MGA provided a chart that

15   listed former Mattel employees, their position at MGA and each such employee's

16   dates of employment at MGA.  (*Id.*, Ex. 21 at 281-286.)

17       Mattel requested during the meet and confer that MGA also provide the date

18   when MGA "first had contact" with each such person and the date that MGA

19   interviewed that person, and repeats that request here.  (Mot. at 22.)  MGA agreed to

20   determine whether such information was reasonably available to MGA.  Mattel says

21   that MGA "never responded" (Mot. at 22:16), but leaves out the fact that Mattel did

22   not wait for a response, but instead filed this Motion.  (Miller Decl. ¶ 8.)  MGA is

23   looking for the requested information, and if it is reasonably available without undue

24   burden to MGA, it will supplement its response to Interrogatory No. 41 to provide it.

**VIII.   MGA HAS IDENTIFIED THE COMPUTERS FROM WHICH EARLY BRATZ-RELATED DOCUMENTS COULD HAVE BEEN COLLECTED (INTERROGATORIES NOS. 40 AND 47)**

27       In its Motion, Mattel argues that Interrogatories Nos. 40 and 47 ask MGA to

28   identify the sources of certain early documents related to Bratz:

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL

EXHIBIT ___5___

PAGE ___131___

1  Interrogatory No. 40: IDENTIFY each and every
2  STORAGE DEVICE that YOU have used for any purpose
   which contains or contained DIGITAL INFORMATION
3  that REFERS OR RELATES TO BRATZ prior to January
   1, 2002. (Proctor Decl. Ex. 7 at 40.)

4  Interrogatory No. 47: IDENTIFY each and every
   SOURCE OF INFORMATION from which YOU have
5  COLLECTED DOCUMENTS in THIS ACTION that
   REFER OR RELATE TO BRATZ and that also REFER
6  OR RELATE TO the time period prior to February 28,
   2001 (regardless of when such DOCUMENT was, in whole
7  or part created, drafted, generated, sent, received or
   transmitted). (Proctor Decl. Ex. 10 at 69.)
8

9       In response to Interrogatory No. 40, MGA described the computer systems

10  that existed worldwide at MGA prior to January 1, 2002. (Proctor Decl. Ex. 21 at

11  279-79.) As Mattel recognizes in its Motion, in the meet and confer process, MGA

12  offered to exchange with Mattel a log listing source information for documents that

13  have been produced.[9] (Mot. at 35.) With this information, Mattel would have

14  known where Bratz related documents could have been stored during the time period

15  prior to January 1, 2002 (from MGA's response to Interrogatory No. 40), and where

16  MGA located the documents it produced (from the source log). Mattel rejected the

17  offer. (Proctor Decl. Ex. 5 at 21.)

18       Mattel argues that such information "would not reveal sources that contain

19  early Bratz documents that MGA has not produced documents from" or "where

20  MGA looked for documents, as well as where MGA failed to look." (Mot. at 35-36.)

21  Mattel's demand assumes that MGA is aware of the existence of Bratz documents on

22  [9]  Mattel's description of the "source log" proposed by MGA was not exactly
    accurate. Mattel says in its Motion that MGA proposed to produce a "source
23  log" for the "entirety of their productions" which "would provide certain
    information for every document provided by MGA, including each document's
24  Bates number, the identify of the individual who created the document and the
    location where the document was located by MGA." (Mot. at 35.) In fact,
25  MGA's counsel told Mattel's counsel that, at the time of the meet and confer,
    MGA believed that it could provide source information with respect to more
26  than 90 percent of its production, and that the information would include the
    bates number of the documents, the location where the document was found,
27  and the person associated with or who maintained that source of the
    information (not the person who "created" the document). (Miller Decl. ¶ 12.)
28  But the point is moot because Mattel rejected this offer.

---

32

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL

EXHIBIT ___5___

PAGE ___132___

1 | its computer systems that relate to the time period prior to January 1, 2002, and has

2 | not produced those documents.  Mattel has made no such showing.  Indeed, MGA

3 | has already produced more than 3.7 million pages of documents in this case.  Mattel,

4 | on the other hand, has produced only a few hundred thousand pages of documents

5 | and still has not produced documents from its ZEUS computer system, but instead

6 | has delayed any meaningful meet and confer on a search of that system.  Mattel's

7 | speculation is not a basis to compel further responses to Interrogatories 40 and 47.

8 | Mattel claims that its interrogatories seek "to discover what sources MGA has

9 | examined to produce the key documents in this case, and perhaps more important,

10 | the source MGA has not examined." (Mot. at 34.)  The Court should require Mattel

11 | to identify the "key documents" to which it refers, and MGA will identify for Mattel

12 | the sources of information from which those documents were obtained (to the extent

13 | that information is reasonably available to MGA).

14 | Finally, these interrogatories are cumulative.  Mattel has propounded a Rule

15 | 30(b)(6) deposition topic regarding the collection of documents produced in this

16 | action.  (Proctor Decl. Ex. 42 at 835 (Topic 39).)  MGA has agreed to provide

17 | additional testimony on this topic.  (Miller Decl. ¶ 15.)  Therefore, there is no need to

18 | compel further response to Interrogatories Nos. 40 and 47.

19 | **IX.   CONCLUSION**

20 | · For the foregoing reasons, Mattel's motion to compel responses to

21 | interrogatories should be denied.

22 | DATED:  December 31, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____
RAOUL D. KENNEDY

Attorneys for Cross-Defendants
MGA Entertainment, Inc., MGA
Entertainment (HK) Limited,
MGAE De Mexico, S.R.L. De C.V.,
and ISAAC LARIAN

33

EXHIBIT __5__

PAGE __133__

**Exhibit 6**

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO THE PROTECTIVE ORDER

# Exhibit 7

# THIS EXHIBIT IS FILED UNDER SEAL

# PURSUANT TO THE PROTECTIVE ORDER

# Exhibit 8

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:   (415) 774-2611
4   Facsimile:   (415) 982-5287

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

| 12 | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
|----|---|---|
| 13 | | JAMS Reference No. 1100049530 |
| 14 | Plaintiff, | |
| 15 | v. | Consolidated with |
| | | Case No. CV 04-09059 |
| 16 | MATTEL, INC., a Delaware corporation, | Case No. CV 05-2727 |
| 17 | Defendant. | **ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL RESPONSES TO INTERROGATORY NOS. 27-44 AND 46-50 BY THE MGA PARTIES** |
| 18 | | |

19

20   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
21   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.

22                        I. INTRODUCTION

23        On December 20, 2007, Mattel, Inc. ("Mattel") submitted a Motion to Compel Responses

24   to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties.  MGA Entertainment, Inc., MGA

25   Entertainment (HK) Limited, MGAE De Mexico, S.R.L. De C.V., and Isaac Larian (collectively

26   referred to as "MGA parties") submitted an opposition on December 31, 2007.  Mattel submitted

27   a reply on January 7, 2008.  On February 8, 2008, the MGA parties submitted their second

28
     Bryant v. Mattel, Inc.,                                                    1
     CV-04-09049 SGL (RNBx)

2 15 08

EXHIBIT 8
PAGE 163

1    supplemental responses and third supplemental responses to the interrogatories at issue. The

2    matter was heard on February 11, 2008.

3                              II. BACKGROUND

4           Mattel served its Revised Third Set of Interrogatories on the MGA parties on September

5    21, 2007, asking each of them the same fifteen questions (Nos. 27-41). Mattel served its Fourth

6    Set of Interrogatories on the MGA parties on October 12, 2007, propounding four additional

7    interrogatories (Nos. 42-45). Mattel served an Amended Fourth Set on October 23, 2007,

8    removing No. 45, but retaining Nos. 42-44. Mattel served its Fifth Set of Interrogatories on

9    October 19, 2007, which consisted of two additional questions (Nos. 46-47). On October 23,

10   2007, Mattel served its Sixth Set of Interrogatories, which consisted of Interrogatory No. 45 to

11   replace the previously withdrawn interrogatory. On October 25, 2007, Mattel served its Seventh

12   Set of Interrogatories, which consisted of Nos. 48-50.

13          In November of 2007, the MGA parties served responses and objections to Mattel's

14   interrogatories, and in some instances supplemental responses. For the most part, the answers of

15   each of the MGA parties are substantially similar. However, in several instances where MGA

16   Entertainment, Inc. provides a response, either MGA Entertainment (HK), MGAE de Mexico

17   S.R.L. de C.V. and/or Larian do not, asserting that the interrogatory "appears directed at another

18   party."

19          The parties met and conferred on December 10 and 12, 2007 regarding the supplemental

20   responses. The MGA parties offered to provide supplemental responses by January 7, 2008.

21   Mattel contends, however, that the scope of the MGA parties' proposed supplemental responses

22   was inadequate. Therefore, Mattel filed the instant motion on December 20, 2007.[1]

23          Mattel contends that the interrogatories at issue seek information relevant to central issues

24   in the case, such as: MGA's contentions regarding which Bratz inventions were created before,

25

26   _____

27   [1] One of the issues raised in the motions papers –whether the interrogatories exceed the 50 interrogatory per side limit -- has been rendered moot by Judge Larson's Order Granting in Part and Denying in Part Mattel's Motion for Leave to Take Additional Discovery, dated January 7, 2008.

28
     Bryant v. Mattel, Inc.,                                                              2.
     CV-04-09049 SOL (RNBx)

EXHIBIT _8_

PAGE _164_

1    during and after Carter Bryant's ("Bryant") employment with Mattel; the identity of electronic

2    storage devices MGA used prior to 2002 for digital information related to Bratz; the identity of

3    the sources of information from which MGA has collected documents in this litigation which

4    relate to Bratz and the time period prior to February 28, 2001; the facts allegedly supporting

5    MGA's contention that the Bratz dolls are not based on designs Bryant created while employed

6    by Mattel; MGA's contentions regarding Mattel's claims against MGA, Bryant and others,

7    including how Bryant's Inventions Agreement with Mattel and his assignment of rights to Bratz

8    inventions to MGA and services with or for MGA while employed by Mattel affect who owns the

9    rights to Bratz inventions, and the alleged basis for MGA's claims that it purportedly acted with

10   innocent intent; the identity of MGA's bank or financial accounts; the identity of former Mattel

11   employees that have been employed by MGA; non-privileged facts concerning the dispute

12   leading to the withdrawal of MGA's prior counsel that relate to MGA's handling of discovery in

13   this case; the facts supporting MGA's claims against Mattel, including MGA's contentions that

14   Mattel has copied, infringed or diluted MGA's trade dress; and the relevant dates regarding the

15   products MGA asserts MGA has copied or infringed.  Mattel's Motion at pp. 2-3.

16           Mattel contends that although it has received responses to all of the interrogatories except

17   Nos. 39, 46 and 47, all of the responses are deficient.  As an initial matter, Mattel contends that

18   the MGA parties' "boilerplate" objections – that the interrogatories are vague and ambiguous,

19   overbroad, unduly burdensome and oppressive, seek information not in the possession, custody or

20   control of MGA, seek information protected by the attorney-client privilege, work product or joint

21   defense privileges, and call for a legal conclusion – are without merit.  Mattel contends that the

22   MGA parties fail to specify how the questions are overbroad, unduly burdensome or oppressive.

23   Mattel also contends that its interrogatories do not require the disclosure of privileged information

24   or work product, but rather require the MGA parties to state their contentions about facts or the

25   application of law to facts.

26           Mattel further contends that some of the MGA parties' responses are deficient in that they

27   merely lay out the "basic facts" (instead of "all facts") on which they intend to rely, without any

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 8

PAGE 165

1    details. Mattel contends that its contention interrogatories, including the purportedly "negative"

2    interrogatories asking for every fact which supports the denial of a statement or allegation, are

3    commonly used and well accepted to elucidate facts regarding a party's contentions, absent a

4    showing of undue burden. Indeed, Mattel points to decisions by the district judge which it

5    contends supports its use of the contention interrogatories at issue. Mattel also points out that it

6    provided the MGA parties with the details supporting its contentions in a one hundred-ten page

7    supplemental interrogatory response, and contends that the MGA parties ought to provide

8    comparable details to Mattel.

9           Mattel also contends that the MGA parties have unilaterally limited many of their

10   responses by disregarding Mattel's definitions of terms and phrases used in the interrogatories.

11   Further, Mattel contends that the MGA parties have failed to identify with specificity documents

12   they intend to rely upon, as requested by some of the interrogatories.

13          Mattel acknowledges that fully responding to the interrogatories will require some effort.

14   However, Mattel contends that the interrogatories are not unduly burdensome in this high stakes

15   litigation. Mattel contends that its need to discover MGA's key contentions outweighs any effort

16   the MGA parties will be required to undertake to disclose the requested information.

17   Accordingly, Mattel seeks an order overruling all of the MGA parties' objections and compelling

18   the MGA parties to provide complete responses to Interrogatory Nos. 27-44 and 46-50.

19          The MGA parties contend that their current responses comply with Rule 33 of the Federal

20   Rules of Civil Procedure and that Mattel is not entitled to any additional information for a number

21   of reasons. The MGA parties raise four main arguments in opposition to Mattel's motion. First,

22   the MGA parties contend that Mattel is not entitled to information about MGA's substitution of

23   counsel because such information is protected by the attorney-client privilege or the work product

24   doctrine. Second, the MGA parties contend that Mattel is not entitled to the sweeping financial

25   data that has been requested. Third, the MGA parties contend that Mattel's contention

26   interrogatories contain misleading and unfair definitions and are unduly burdensome in that they

27   require a recitation of all facts supporting the MGA parties' contentions. Fourth, the MGA parties

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                              4

EXHIBIT __8__

PAGE __166__

1  contend that Rule 33 does not require a response to a contention interrogatory to set forth more

2  than the principal factual and legal bases for the response.

### III. STANDARDS

4  Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

5  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

6  party." Fed.R.Civ.P. 26(b)(1).  Fishing expeditions to discover new claims, however, are not

7  permitted.  See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

8  2004) ("District courts need not condone the use of discovery to engage in 'fishing

9  expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

10  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

11  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

12  the phrase "subject matter involved in the pending action," were intended to prevent discovery

13  that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

14  litigate the issues presented by the pleadings but to develop new claims or defenses.).

15  Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

16  extent of use of the discovery methods if the court determines that (i) the discovery sought is

17  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

18  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

19  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

20  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

21  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

22  the litigation, and the importance of the proposed discovery in resolving the issues.  Fed.R.Civ.P.

23  26(b)(2)(C).

24  Rule 33 of the Federal Rules of Civil Procedure allows a party to propound

25  interrogatories, for which the responding party is required to furnish such information as is

26  available to the party after conducting a reasonable inquiry.  "Each interrogatory must, to the

27  extent it is not objected to, be answered separately and fully in writing under oath."  Fed.R.Civ.P.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT  8

PAGE  167

1   33(b)(3).  "The grounds for objecting to an interrogatory must be stated with specificity."

2   Fed.R.Civ.P. 33(b)(4).

3                            IV. DISCUSSION

4   A. Interrogatories About the Identity of Bratz Inventions (Nos. 27, 28 and 29)

5         Interrogatory Nos. 27-29 request information relating to Bratz inventions created during

6   three different time periods, namely before, during and after Bryant's employment with Mattel:

7       **Interrogatory No. 27:** IDENTIFY each and every BRATZ INVENTION YOU
8       contend was CREATED, in whole or in part, prior to January 4, 1999, and for
        each BRATZ INVENTION so identified state all FACTS that support YOUR
9       contention that such BRATZ INVENTION (or aspects or portions thereof) was
        CREATED prior to January 4, 1999, and IDENTIFY all PERSONS with
10      knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO
        such facts.

11

12       **Interrogatory No. 28:** IDENTIFY each and every BRATZ INVENTION YOU
        contend was CREATED, in whole or in part, after October 19, 2000 and before
13       June 1, 2001, and for each BRATZ INVENTION so identified state all FACTS
        that support YOUR contention that such BRATZ INVENTION (or aspects or
14       portions thereof) was CREATED after October 19, 2000 and before June 1, 2001,
        and IDENTIFY all PERSONS with knowledge of such facts and all
15       DOCUMENTS which REFER OR RELATE TO such facts.

16

17       **Interrogatory No. 29:** IDENTIFY each and every BRATZ INVENTION that
        was CREATED, in whole or in part, after January 3, 1999 and before October 21,
18       2000, and for each BRATZ INVENTION so identified state all FACTS that
        REFER OR RELATE TO the timing of the creating of such BRATZ
19       INVENTION and IDENTIFY all PERSONS with knowledge of such facts and all
        DOCUMENTS which REFER OR RELATE TO such facts.

20

21   Mattel contends that these interrogatories seek information that is plainly relevant and

22   discoverable, and that the MGA parties do not contend otherwise.  Mattel further contends that

23   the partial response given using the MGA parties' definition, not Mattel's definition, of BRATZ

24   INVENTION is inadequate.  Mattel also contends that the MGA parties have failed to carry their

25   burden of showing that the interrogatories are burdensome or oppressive, particularly given the

26   importance of the information sought.  Mattel emphasizes that the information sought will prove

27   liability as to a number of its claims.  Moreover, Mattel contends that knowing which inventions

28

EXHIBIT 8

PAGE 168

1   MGA claims were created before and just after Bryant's second period of employment at Mattel

2   is essential so that Mattel can avoid unfair surprise at trial and impeach the defendants'

3   chronology of Bratz design and development.

4          The MGA parties contend that Mattel is using misleading and unfair definitions to create

5   jury confusion.  In particular, the MGA parties object to Mattel's definition of "BRATZ

6   INVENTION," which they contend contains separate component parts ("representation, idea,

7   concept, work, process, procedure, plan, improvement, DESIGN or other development"), and

8   Mattel's definition of "DESIGN," which they contend adds at least another 21 elements ("all

9   works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints,

10  schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

11  practice, developments, inventions and/or improvements").  The MGA parties contend that

12  including all of these concepts in the definition "improperly conflates distinct issues of patent law,

13  copyright protection, trade secret law and the common law protecting original ideas, many of

14  which have no place in the ordinary usage of the term 'invention.'"  MGA Parties' Opposition at

15  2:11-13.  The MGA parties emphasize that these distinctions are important because Mattel lays

16  claim to Bratz under a January 4, 1999 "Employee Confidential Information and Inventions

17  Agreement."  Further, the MGA parties accuse Mattel of using the contention interrogatories to

18  elicit a misleading "sound bite" it can read to the jury to argue that the MGA parties concede that

19  Bryant "invented" Bratz while employed by Mattel.  The MGA parties contend that they have

20  provided adequate responses to the interrogatories using the common and ordinary meaning of the

21  term "invention," and should not be required to provide anything further.

22          Next, the MGA parties contend that they have given Mattel the principal factual and legal

23  bases for their contentions, and Rule 33 does not require them to provide anything further.  The

24  MGA parties contend that requiring a narrative response setting forth all evidence in support of

25  their contentions would render the interrogatories unduly burdensome and "inherently improper."

26  See e.g. Clean Earth Remediation & Constr. Servs. v. Am. Int'l Group, 245 F.R.D. 137, 141 (S.D.

27  N.Y. 2007) ("[A] number of cases have held that interrogatories seeking identification of all facts

28

EXHIBIT _____ 8

PAGE _____ 169

1   supporting a particular allegation are *inherently improper*.").

2       Mattel's motion to compel further responses to Interrogatory Nos. 27-29 is denied because

3   the interrogatories are overbroad and unduly burdensome.  The definition of "Bratz Invention" is

4   extremely broad, encompassing numerous intellectual property concepts.  Mattel has not shown

5   how each and every concept embedded in its multi-faceted definition of "Bratz Invention" is

6   relevant to interpreting the term "invention" for purposes of enforcing the "Employee

7   Confidential Information and Inventions Agreement," signed by Bryant.  The breadth and undue

8   burden of Interrogatory Nos. 27-29 are also compounded by the fact that Mattel is employing an

9   extremely broad definition of "Bratz Invention" in a contention interrogatory seeking all facts

10  supporting the MGA parties' contentions, the identities of all persons knowledgeable, and all

11  supporting documents.  Not all contention interrogatories requiring a recitation of all facts,

12  documents and witness are objectionable.  See e.g. Tatum v. Schwartz, 2007 WL 2220977 at *1

13  (E.D. Cal. Aug. 2, 2007) (noting that contention interrogatories can impose undue burdens, but

14  that "courts have otherwise approved of them when they are limited to discrete, narrow factual

15  events"); Roberts v. Heim, 130 F.R.D. 424, 427 (N.D. Cal. 1989) (recognizing a broad spectrum

16  of contention interrogatories, and noting that it is not possible to announce a hard and fast rule as

17  to the exact amount of detail a party has to supply in response to a contention interrogatory).  In

18  the instant case, however, Mattel's contention interrogatories would force the MGA parties to

19  review the nearly 4 million pages of documents produced in this action and more than 50 days of

20  deposition testimony in search of information relating to "any representation, idea, concept, work,

21  process, procedure, plan, improvement, design or other development" that refers or relates to

22  Bratz, including "all works, designs, artwork, sketches, drawings, illustrations, representations,

23  depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples,

24  rotocasts, reductions to practice, developments, inventions and/or improvements" that refer or

25  relate to Bratz.  It is not the MGA parties' responsibility to re-write the interrogatories in a

26  manner that will yield Mattel the most amount of information to support Mattel's claims and

27  defenses.  On balance, the burden of responding further to Interrogatory Nos. 27-29, as written,

28



EXHIBIT    *8*

PAGE   *170*

1  outweighs the likely benefit of the interrogatories, taking into account the needs of the case, the

2  amount in controversy, the parties' resources, the importance of the issues at stake in the

3  litigation, and the importance of the proposed discovery in resolving the issues.

4        In any event, the MGA parties' responses are adequate under the circumstances.  Faced

5  with overbroad and unduly burdensome interrogatories, the MGA parties provide facts supporting

6  the contentions identified in the interrogatories, identify persons with knowledge of those facts,

7  and identify the principal documents or categories of documents that support each contention.

8  See e.g. Moses v. Halstead, 236 F.R.D. 667, 674 (D. Kan. 2006).  For example, in response to

9  Interrogatory No. 27, the MGA parties set forth their contention that the concept for a new line of

10  fashion dolls envisioned by Bryant in August and/or September of 1998 could not have been

11  patented as a utility patent because fashion dolls were in the public domain for the purposes of

12  utility patent protection.  However, the MGA parties contend that Bryant's idea of a line of

13  fashion dolls he called Bratz was sufficiently novel and original to be protected under California

14  law as a confidential novel idea under Desny v. Wilder, 46 Cal.2d 715 (1956) and its progeny.

15        The MGA parties' supplemental responses to Interrogatory No. 27 also include the MGA

16  parties' contention that Bryant's pre-1999 drawings were never reduced to practice; that design

17  patents are not available for drawings or two-dimensional flat art of the sort that Bryant sketched

18  in 1998; that Bryant was not a sculptor and any effort to translate his pre-1999 two-dimensional

19  flat art into a three-dimensional form for use as a fashion doll sculpt would have produced shapes

20  that were different from the actual shape of the final three-dimensional Bratz sculpt used in

21  manufacturing the first generation of Bratz dolls released on the market by MGA in or about June

22  2001; that the final physical shape of the first generation of Bratz dolls released on the market by

23  MGA in or about June 2001 was conceived by Margaret Leahy; and that Bryant's drawings used

24  standard fashion model poses, and thus were not novel or original.  Further, the MGA parties'

25  supplemental responses to Interrogatory No. 27 include the MGA parties' contention that the

26  drawings Bryant completed in August and September of 1998 contained original expression

27  covered by copyright, but that subsequent modifications and versions of the drawings made by

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT 8

PAGE 171

1   Bryant in 1999 and 2000 did not contain original expression. The MGA parties also identify

2   numerous individuals having knowledge of the facts supporting their contentions, and identify

3   documents that are relevant to the MGA parties' contentions.

4   B. Interrogatory About the Identity of Former Mattel Employees Hired by MGA (No. 41)

5          Interrogatory No. 41 asks the MGA parties to "IDENTIFY" all former Mattel employees

6   "who are now or have been employed" by MGA since January 1, 1999. More specifically,

7   Interrogatory No. 41 asks the MGA parties to:

8          IDENTIFY all PERSONS who at any time have been employed by or under
           contract with MATTEL who are now or have been employed by or under contract
9          with YOU since January 1, 1999, and, for each such PERSON, state his or her
           name, date of hire or effective date of contract, the date on which YOU first had
10         contact with such PERSON regarding potential employment or contracting, the
           date(s) on which such PERSON was interviewed for possible employment or
11         contracting, each title (if any) such PERSON has held while employed by or
           under contract with YOU, and the date of termination (if applicable).
12
13  In their supplemental response, the MGA parties assert numerous objections, but also provide a

14  list of well over a hundred individuals with their position title and employment dates.

15         Mattel contends that the MGA parties' response is incomplete because it does not contain

16  the date of first contact regarding potential employment or contracting, as well as the interview

17  date for potential employment or contracting.

18         The MGA parties contend that during the meet and confer process, they agreed to

19  investigate whether the additional requested information was reasonably available. The MGA

20  parties represent that they are in the process of looking for the requested information, and that

21  they will supplement their response if the information is reasonably available without undue

22  burden.

23         Mattel's motion to compel a further response to Interrogatory No. 41 is granted in part.

24  The requested information is clearly relevant to Mattel's claims, and the MGA parties do not

25  contend otherwise. In particular, the date of first contact, interview date, start date and end date

26  for Bryant's employment are highly relevant, but are conspicuously absent from the MGA

27  parties' response. The MGA parties shall provide the missing information for Bryant. In

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    10



1   addition, the MGA parties shall provide the interview dates for each of the individuals identified

2   in their supplemental responses. The interview dates are potentially relevant to Mattel's claim

3   that the MGA parties induced former Mattel employees to abscond with Mattel's trade secrets.

4   However, the MGA parties are not required to provide the date of first contact for each individual

5   because the burden of producing such information outweighs its likely benefit, taking into

6   account the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

7   C. Interrogatories re Allegedly Copied or Infringed Products (Nos. 43-44)

8       Interrogatory Nos. 43 and 44 request dates on which each "concept, design, product,

9   product packaging or other matter that YOU contend Mattel copied or infringed" was (1)

10  "conceived" and (2) "first fixed in any tangible medium of expression," and the identity of

11  persons with knowledge and documents that refer or relate to the foregoing. In the responses, the

12  MGA parties state numerous objections, but also refer Mattel to MGA's response to Interrogatory

13  No. 3 of Mattel's First Set of Interrogatories re Claims of Unfair Competition. The MGA parties

14  also respond that, in general, at MGA, product development is completed 7-8 months before the

15  first invoice date, although that time period could be reduced in certain situations to 5-6 months.

16      Mattel contends that the information it seeks is relevant to its defense against MGA's

17  claims that Mattel copied or infringed MGA's products. One of Mattel's defenses is that "Mattel

18  was the one who came up with relevant matters first – before MGA – and that MGA was the one

19  who copied or stole from Mattel." Mattel's Motion at p.23. Mattel contends that the MGA

20  parties' responses to Interrogatory Nos. 43 and 44 are inadequate because the referenced

21  Interrogatory No. 3 requested different information, namely the dates on which the products were

22  first "disclosed to any PERSON not employed by MGA" and first "made available for sale."

23      In response to the instant motion to compel, the MGA parties represent that they are

24  assessing whether they can provide more specific information without undue hardship, and will

25  supplement their responses if such information is available. MGA's Opposition at p.29.

26      Mattel's motion to compel further responses to Interrogatory Nos. 43 and 44 is granted.

27  The requested information is relevant to Mattel's defense against the MGA parties' claims that

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT 8

PAGE 173

1   their products have been copied or infringed by certain Mattel products.  Although the MGA

2   parties served supplemental responses after filing their opposition brief, the supplemental

3   responses do not include the requested information.  The MGA parties have failed to establish

4   that the interrogatories are unduly burdensome.

5   D. Interrogatories About the Trade Dress MGA Claims Mattel Products Infringe (Nos. 48-50)

6           Interrogatory Nos. 48-50 are directed to the MGA parties' trade dress claims:

7           **Interrogatory No. 48:**  Separately IDENTIFY each trade dress that YOU
            contend MATTEL has copied, infringed or diluted or that is otherwise the
8           subject of YOUR claims, defenses or allegations in THIS ACTION.

9           **Interrogatory No. 49:**  For each trade dress identified in response to
            Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL
10          product, packaging or other matter that YOU contend copies, infringes or dilutes
            such trade dress, including without limitation by describing fully and separately,
11          for each such MATTEL product, packaging or other matter, each and every
            element of the claimed trade dress that YOU contend MATTEL has copied,
12          infringed or diluted.

13          **Interrogatory No. 50:**  For each trade dress identified in response to
            Interrogatory No. 48, separately and completely IDENTIFY all facts that support
14          YOUR contention that such trade dress is protectible, all DOCUMENTS that
            REFER OR RELATE to the foregoing and all PERSONS with knowledge of the
15          foregoing.

16          Mattel contends that these interrogatories seek core contentions underlying the MGA

17  parties' trade dress infringement claims and that the partial responses provided are inadequate

18  because they set forth only the "basic facts" without identifying a single product that MGA

19  alleges was infringed or any other details.  Mattel also contends that the responses are improper

20  insofar as the MGA parties state that their responses "may be incomplete" as the subject matter of

21  this interrogatory will be the source of expert testimony and an expert may identify additional

22  facts that support MGA's contentions.  Mattel contends that such a limitation would allow MGA

23  to sandbag Mattel by introducing new products into the litigation after fact discovery has closed.

24          As a preliminary matter, the MGA parties contend that Interrogatory Nos. 48-50 are

25  directed to a Phase 2 issue, and therefore, they reserve their right to supplement the responses in

26  Phase 2.  Nevertheless, the MGA parties contend that their responses provide Mattel with the

27  principal facts supporting their contentions in compliance with Rule 33.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT   8

PAGE   174

1   Mattel's motion to compel further responses to Interrogatory Nos. 48-50 is denied. The

2 MGA parties are in substantial compliance with Rule 33, having identified numerous elements of

3 trade dress they contend Mattel has infringed. More specifically, the MGA parties' responses

4 identify Mattel's "My Scene" fashion dolls and pet dolls as the Mattel products that infringe their

5 trade dress. The MGA parties also set forth the principal facts supporting their contention that

6 their trade dress is protectible under the applicable trade dress legal principles, including that the

7 trade dress is aesthetic and non-functional, inherently distinctive, and has acquired secondary

8 meaning. That the interrogatory responses include a reservation of rights to supplement during

9 expert discovery does not render the responses inherently improper or inadequate. Mattel does

10 not contest that the identification of the elements and products subject to trade dress infringement

11 will be a subject of expert testimony.

12 E. Interrogatory About the Identity of MGA's Bank Accounts (No. 39)

13   Interrogatory No. 39 asks MGA to "IDENTIFY each and every bank or financial

14 institution account that REFERS OR RELATES TO YOU, including accounts in YOUR name or

15 for YOUR benefit, since January 1, 1999." The MGA parties objected to this interrogatory as

16 seeking information "not relevant to the claims or defenses of any party to the action and not

17 reasonably calculated to lead to the discovery of admissible evidence.

18   Mattel contends that the information sought is discoverable because it may lead to direct

19 evidence of liability regarding Mattel's allegations of commercial bribery against MGA and

20 Larian. More specifically, Mattel contends that the timing and amounts of payments made to

21 Bryant and to other then-Mattel employees from MGA's bank accounts would establish

22 commercial bribery and other tortious conduct. Mattel also contends that the timing of such

23 payments would also be indicative of the timing of Bryant's first involvement with MGA.

24 Further, Mattel contends that the requested information is relevant to establish net worth for

25 purposes of calculating punitive damages. Mattel also contends that the MGA parties' objection

26 based upon Rule 69(a), Fed.R.Civ.P., is without merit because the requested information is

27 independently relevant to many issues in the liability phase of trial, and is not just directed at

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT __8__

PAGE __175__

1 | seeking discovery in aid of a judgment or execution.

2 |     The MGA parties contend that Mattel is not entitled to the sweeping financial data sought

3 | in Interrogatory No. 39. The MGA parties are particularly concerned that Mattel will use the

4 | information it obtains pursuant to Interrogatory No. 39 to launch abusive third-party discovery for

5 | even more private financial information. Further, the MGA parties contend that Mattel has

6 | already received substantial financial information from MGA Entertainment, Inc. directly, and

7 | has not shown how that information is insufficient. More specifically, the MGA parties point out

8 | that Mattel already has audited and unaudited quarterly and annual profit and loss statements;

9 | audited and unaudited quarterly and annual statements; annual reports; various MGA financial

10 | reports; various financial documents relating to Veronica Marlow; documents showing royalty

11 | payments to Bryant; documents showing MGA's sales, returns and costs of good sold for each

12 | month, by SKU, since 2001; documents showing MGA's promotional advertising and media

13 | expenditures, including MGA's internal allocation of those expenditures by brand and/or product;

14 | documents showing MGA's amortization and depreciation of certain capital assets and

15 | expenditures; documents showing MGA's monthly general ledger entries aggregated by account,

16 | including income and expense accounts, reserves and liabilities; and documents sufficient to

17 | explain MGA's various accounts as presently and historically maintained in MGA's books and

18 | records, as well as various nomenclature assigned to items, products, brands, sub-brands, and

19 | profit centers. MGA's Opposition at pp. 10-11. Further, the MGA parties contend that MGA's

20 | witness, Lisa Tonnu, has testified regarding payments to Mr. Bryant.

21 |     Mattel's motion to compel a further response to Interrogatory No. 39 is denied on the

22 | grounds that the financial information sought is cumulative of other discovery already sought and

23 | obtained by Mattel, as outlined above by the MGA parties. Mattel has also sought and obtained

24 | documents sufficient to identify each of Mr. Larian's bank accounts or financial institutions and

25 | other banking relationships since January 1, 1999. See Order Granting in Part and Denying in

26 | Part Mattel's Motion to Compel Production of Documents by Isaac Larian; Denying Request for

27 | Sanctions (Document Request No. 207). Further, as Mattel acknowledges, Mattel has sought and

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT 8

PAGE 176

1    obtained deposition testimony regarding payments to Mr. Larian, including the account to which

2    such payments were made. See Order Granting in Part and Denying in Part Mattel's Motion to

3    Compel MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6).

4    In light of the financial information discovery Mattel has already obtained, Interrogatory No. 39 is

5    unjustified, taking into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

6    F. Contention Interrogatories (Nos. 30-38 and 42)

7         Mattel served several contention interrogatories on several additional topics. The

8    remaining contention interrogatories at issue are set forth below.

9         **Interrogatory No. 30:** State all facts that support YOUR contention, if YOU so
     contend, that, assuming BRYANT assigned rights in any BRATZ INVENTION
10   to MATTEL pursuant to the INVENTIONS AGREEMENT, MGA is entitled to
     priority over and/or has superior rights to MATTEL as to such BRATZ
11   INVENTION, and IDENTIFY all PERSONS with knowledge of such facts and
     all DOCUMENTS that REFER OR RELATE TO such facts.

12
          **Interrogatory No. 31:** State all facts that support YOUR contention, if YOU so
13   contend, that the INVENTIONS AGREEMENT is not valid and enforceable, and
     IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
14   that REFER OR RELATE TO such facts.

15        **Interrogatory No. 32:** State all facts that support YOUR contention, if YOU so
     contend, that MATTEL is not or would not be entitled to injunctive relief as
16   requested in its COMPLAINT and/or COUNTERCLAIMS if it is not ultimately
     determined that MATTEL owns one or more BRATZ INVENTIONS, and
17   IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
     that REFER OR RELATE TO such facts.

18
          **Interrogatory No. 33:** State all facts that support YOUR contention, if YOU so
19   contend, that MATTEL is not entitled to an award of punitive or exemplary
     damages against YOU, and IDENTIFY all PERSONS with knowledge of such
20   facts and all DOCUMENTS that REFER OR RELATE TO such facts.

21        **Interrogatory No. 34:** State all facts that support YOUR contention, if YOU so
     contend, that YOU did not intentionally interfere with the INVENTIONS
22   AGREEMENT when BRYANT purported to TRANSFER and MGA purported
     to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge
23   of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

24        **Interrogatory No. 35:** State all facts that support YOUR contention, if YOU so
     contend, that YOU did not aid or abet any breach of fiduciary duty or duty of
25   loyalty owed by BRYANT to MATTEL when BRYANT performed work or
     services with or for MGA while BRYANT was employed by MATTEL, and
26   IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
     that REFER OR RELATE TO such facts.

27
          **Interrogatory No. 36:** State all facts that support YOUR contention, if YOU so
28

     Bryant v. Mattel, Inc.,                                                              15
     CV-04-09049 SGL (RNBx)

EXHIBIT  8

PAGE  177

1    contend, that YOU acted with an innocent state of mind or reasonably believed that MATTEL did not own any rights in any BRATZ INVENTION when Bryant
2    purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all
3    DOCUMENTS that REFER OR RELATE TO such facts.

4    **Interrogatory No. 37:** State all facts that support YOUR contention, if YOU so contend, that BRYANT did not breach the INVENTIONS AGREEMENT when
5    BRYANT purported to TRANSFER right to BRATZ to MGA, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER
6    OR RELATE TO such facts.

7    **Interrogatory No. 38:** State all facts that support YOUR contention, if YOU so contend, that BRYANT did not breach BRYANT's duty of loyalty or fiduciary
8    duties to MATTEL when BRYANT performed work or services with or for MGA while BRYANT was employed by MATTEL, and IDENTIFY all
9    PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

10

11   **Interrogatory No. 42:** State all facts that support YOUR contention, if YOU so contend, that any BRATZ DOLLS are not BASED ON BRATZ DESIGNS
12   created by BRYANT on or before October 19, 2000, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
     RELATE TO such facts.

13

14   Mattel contends that each of these interrogatories seeks facts relating to key issues in this case,

15   including MGA's contentions, if any, regarding the priority of Mattel's rights in Bratz vis-à-vis

16   MGA; how Bryant's Inventions Agreement with Mattel, Bryant's assignment of rights to Bratz

17   inventions to MGA, and Bryant's services with or for MGA while employed by Mattel affect who

18   owns the rights to Bratz inventions; Mattel's alleged entitlement to punitive damages and other

19   relief; MGA's purported innocent state of mind; MGA's alleged intentional interference with the

20   Inventions Agreement; MGA's alleged aiding and abetting of Bryant's breach of fiduciary duty

21   and duty of loyalty to Mattel; why the Bratz dolls purportedly are not based on designs Bryant

22   created during his Mattel employment; and why the trade dress MGA contends Mattel infringed is

23   protectible. Mattel contends that the MGA parties cannot show burden sufficient to outweigh

24   Mattel's need for the information sought.

25        In addition to the objections discussed in connection with Interrogatory Nos. 27-29, the

26   MGA parties contend that they have given sufficient responses to Interrogatory Nos. 30 and 42.

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                              16



1    As for Interrogatory Nos. 31-38, the MGA parties contend that the interrogatories improperly

2    assume that Mattel owns Bryant's original idea for Bratz and ask the MGA parties to explain why

3    they should not be punished for developing Bryant's ideas.  Nevertheless, the MGA parties

4    represent that they responded to the interrogatories in good faith by providing the principal facts

5    supporting their contentions, and therefore are in compliance with Rule 33.

6          Mattel's motion to compel a further response to Interrogatory No. 30 is denied.  Like

7    Interrogatory Nos. 27-29, the definition of "Bratz Invention" in No. 30, combined with the

8    request for all facts, the identity of all persons and all supporting documents, render the

9    interrogatory overbroad and unduly burdensome.  In any event, the MGA parties have provided a

10   reasonably sufficient response.  The MGA parties' supplemental response includes their

11   contention that the "Inventions Agreement" did not apply to design patent rights.  Further, the

12   MGA parties contend that (a) the pre-October 21, 2000 drawings of characters that Bryant named

13   Bratz were never reduced to practice; (b) under 35 U.S.C. §171, design patents are available for

14   three-dimensional objections, not drawings or two-dimensional flat art of the sort that Bryant

15   sketched in 1998; (c) Bryant was not a sculptor, and any direct translation of his pre-October 21,

16   2000 two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt would

17   have produced shapes that were different from the actual shape of the final three-dimensional

18   Bratz sculpt used in manufacturing the first generation of Bratz dolls released on the market by

19   MGA in or about June 2001; (d) the final physical shape of the first generation of Bratz dolls,

20   released on the market by MGA in or about June 2001 was "conceived of" and "reduced to

21   practice" by Margaret Leahy, working on behalf of MGA, after October 20, 2000 and before June

22   1, 2001, along with other MGA agents and employees; (e) Bryant's drawings used standard

23   fashion model poses, and thus were not novel or original; and (f) the "dummy" brought by Bryant

24   to his meeting with MGA on September 1, 2000, was merely an assemblage of random pre-

25   existing doll parts that was never intended to, and did not, provide an accurate representation of

26   what became the Bratz sculpt.  Based on the foregoing, the MGA parties contend that, assuming

27   arguendo that both Bryant assigned his 1998 drawings to Mattel and that such drawings were the

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT 8

PAGE 178

1   conception of what could have been developed into a tangible item that would have qualified for

2   protection under a design patent, such conception would not have covered the shape of the final

3   Bratz sculpt utilized in the first generation of Bratz dolls released to market in or about June 2001,

4   nor any subsequent three-dimensional Bratz shape. The MGA parties' supplemental responses to

5   Interrogatory No. 30 also address copyright protection and trademark protection, and identify

6   persons with knowledge and documents relevant to the MGA parties' contentions.

7          Mattel's motion to compel further responses to Interrogatory Nos. 31-37 and 42 is denied.

8   The MGA parties are in substantial compliance with Rule 33, having set forth sufficient facts,

9   identified persons with knowledge, and identified documents to support their contentions.  To

10  require any further information would be unduly burdensome, taking into consideration all of the

11  factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

12         Mattel's motion to compel a further response to Interrogatory No. 38 is granted, however,

13  because the supplemental response does not identify supporting documents.

14  G. Interrogatories About MGA's Searches for Documents (40 and 47)

15         Mattel has propounded two interrogatories to the MGA parties about their searches for

16  documents and storage devices containing evidence of early work on Bratz:

17         **Interrogatory No. 40**:  IDENTIFY each and every STORAGE DEVICE that
           YOU have used for any purpose which contains or contained DIGITAL
18         INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL prior
           to January 1, 2002.
·19
           **Interrogatory No. 47**:  IDENTIFY each and every SOURCE OF
20         INFORMATION from which YOU have COLLECTED DOCUMENTS in THIS
           ACTION that REFER OR RELATE TO BRATZ and that also REFER OR
21         RELATE TO the time period prior to February 28, 2001 (regardless of when such
           DOCUMENT was, in whole or part, created, drafted, generated, sent, received or
22         transmitted).

23  In response to Interrogatory No. 40, the MGA parties described the computer systems that existed

24  worldwide at MGA prior to January 1, 2002.  The MGA parties did not provide any substantive

25  response to No. 47.

26         Mattel contends that the interrogatories are designed to test MGA's productions in this

27  litigation and obtain additional responsive documents and information.  Further, Mattel contends

28

EXHIBIT _8_

PAGE _180_


1  that there is legal precedent allowing access to a party's information storage systems where the

2  party is shown to have improperly withheld relevant documents or information. Mattel contends

3  that Interrogatory No. 40 seeks legitimate discovery regarding the identification of MGA's

4  storage devices because Mattel may have a right to access such storage devices. In particular,

5  Mattel contends that it is entitled to, but the MGA parties have failed to provide, an identification

6  of specific storage devices, the individuals who have used them, the persons who currently

7  possess them, and the dates on which they were destroyed or copied, if any. Mattel contends that

8  the information requested in Interrogatory No. 40 is necessary to determine whether MGA has

9  withheld responsive documents and to enable Mattel to obtain such documents.

10        Similarly, Mattel contends that Interrogatory No. 47 seeks relevant information regarding

11  the sources of information – i.e. the media – from which the MGA parties have collected

12  documents relating to Bratz and the period prior to February 28, 2001. Mattel contends that the

13  information it seeks will enable it to determine what sources the MGA parties have examined and

14  have not examined to produce documents in the case.

15        During the meet and confer process, the MGA parties proposed that the parties exchange

16  "source logs" regarding the entirety of their productions in lieu of MGA's responses to Nos. 40

17  and 47. The "source logs" would provide each document's Bates number, the identity of the

18  individual associated with or who maintained the document and the location where the document

19  was found. Mattel contends that the "source log" proposal is unnecessary because Mattel is only

20  seeking information about key early Bratz documents, not every document produced in the case.

21  Mattel also contends that the "source log" proposal is unacceptable because the "source log,"

22  would not reveal sources that contain early Bratz documents that MGA has not produced

23  documents from, or where MGA looked for documents, as well as where MGA failed to look.

24        The MGA parties contend that the interrogatories assume, without any factual support,

25  that the MGA parties are aware of the existence of Bratz documents on their computer systems

26  that relate to the time period prior to January 1, 2002, and have not produced those documents.

27  The MGA parties contend that Mattel's speculation is not a basis to compel further responses to

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

EXHIBIT  8

PAGE  181

1  Interrogatory Nos. 40 and 47.  The MGA parties emphasize that they have already produced more

2  than 3.7 million pages of documents, whereas Mattel has only produced a few hundred thousand

3  pages of documents.  Furthermore, the MGA parties contend that these interrogatories are

4  cumulative of deposition testimony Mattel has previously sought and obtained regarding the

5  collection of documents produced in this action.  The MGA parties also represent that they have

6  agreed to provide additional testimony on this topic.

7        Mattel's motion to compel further responses to Interrogatory Nos. 40 and 47 is granted.

8  The interrogatories seek relevant information about the identity of each storage device that

9  contains or contained information referring or relating to Bratz prior to January 1, 2002, and other

10  sources of information from which the MGA parties collected documents in this action that refer

11  or relate to Bratz and the time period prior to February 28, 2001.  The "source log" information is

12  not a reasonable substitute for the information requested in the interrogatories because it would

13  not necessarily identify all storage devices used by the MGA parties during the relevant period.

14  The interrogatories are narrowly tailored to a key subject, namely early Bratz documents and

15  other information.  The MGA parties have failed to establish that the interrogatories are unduly

16  burdensome.  Nor are the interrogatories cumulative of other discovery propounded by Mattel.

17  Interrogatory Nos. 40 and 47 have the potential of imparting more detailed information than a

18  witness might be able to recall in the course of a deposition.  Furthermore, the information sought

19  in Interrogatory Nos. 40 and 47 will enable Mattel to question MGA's witnesses more effectively.

20  H. Interrogatory Regarding MGA's Substitution of Counsel (No. 46)

21        Interrogatory No. 46 seeks facts regarding MGA's substitution of counsel as follows:

22      **Interrogatory No. 46:**  Without disclosing the content of communications which
        are protected by the attorney-client privilege, state fully and in detail all facts
23      which REFER OR RELATE TO any dispute regarding THIS ACTION, between,
        on the one hand, MGA, LARIAN, BRYANT and/or MACHADO, and, on the
24      other hand, O'MELVENY and/or CHRISTENSEN, including but not limited to
        any and all disputes which were or have been asserted as a basis for, or which
25      underlie, contributed to or were a factor in, the withdrawal, termination and/or
        substitution of O'MELVENY and/or CHRISTENSEN as counsel of record in this
26      ACTION, and IDENTIFY all PERSONS with knowledge of such facts and all
        DOCUMENTS that REFER OR RELATE TO such facts.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              20

EXHIBIT  8

PAGE  182

1   Mattel contends that the interrogatory is limited to facts, and does not require the disclosure of

2   information protected by either the attorney-client privilege or the work product doctrine.

3   Further, Mattel contends that the requested facts are relevant and discoverable.  Mattel reasons

4   that O'Melveny cited to California Rule of Professional Conduct 3-700(c) as the basis for its

5   motion to withdraw, and that Rule 3-700(c) sets forth several grounds for withdrawal that could

6   be relevant to the case.  For example, Mattel contends that O'Melveny may have withdrawn

7   because MGA sought to provide false testimony, or was seeking "to pursue an illegal course of

8   conduct" or "insist[ed] that counsel pursue a course of conduct that is illegal or prohibited under

9   the State Bar Act."  Mattel's Motion at p. 38.

10          The MGA parties contend that Interrogatory No. 46 is predicated upon an imagined

11   "dispute" with former counsel, and moreover, that the information sought is protected by the

12   work product doctrine and/or attorney-client privilege.  The MGA parties reason that even if

13   Mattel is correct that there was some sort of dispute, either (1) the dispute does not relate to the

14   claims and defenses in this action, and therefore the requested information is irrelevant and

15   outside the proper scope of discovery, or (2) the dispute does relate to the claims or defenses in

16   this action, such that revelation of the substance of the dispute would necessarily reveal the

17   thought processes of trial counsel and the communication of those thought processes to the MGA

18   parties.

19          Mattel's motion to compel is denied as to Request No. 46.  The interrogatory is not

20   tethered to any particular claim or defense.  Nor is the interrogatory directed at uncovering the

21   factual events giving rise to any claim or defense.  Instead, the interrogatory assumes that there

22   was a "dispute" with former counsel involving false testimony, illegal conduct, or attorney

23   misconduct; that this "dispute" led to the withdrawal, termination and/or substitution of counsel;

24   and that this "dispute" potentially relates to a claim or defense in this suit.  There is no evidence,

25   however, to substantiate such a series of assumptions.  Although the publicly available

26   information suggests that there was a breakdown of the attorney-client relationship, this evidence,

27   without more, is insufficient to justify Interrogatory No. 46 because the burden or expense of the

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

21

EXHIBIT ___8___

PAGE ___183___

1 │ proposed discovery outweighs its likely benefit under Rule 26(b)(2)(C), Fed.R.Civ.P.

2 │ Furthermore, the interrogatory is grossly overbroad in seeking information about "any and all

3 │ disputes" with former counsel, regardless of whether such disputes relate to a claim or defense in

4 │ the case.

5 │    The interrogatory is also objectionable because it intrudes upon MGA's relationship with

6 │ former counsel, and thus necessarily intrudes upon the protections afforded by the attorney-client

7 │ privilege and work product doctrine. Mattel's rank speculation that there were attorney-client

8 │ discussions of wrongdoing is insufficient to vitiate the attorney-client privilege. See e.g. In re

9 │ Napster, Inc. Copyright Litig., 479 F.3d 1078, 1090 (9th Cir. 2007). Nor have the MGA parties

10 │ waived the attorney-client privilege. Although the MGA parties discussed the reasons for their

11 │ substitution of counsel with the press, there has been no showing that the information they

12 │ disclosed revealed the substance of an attorney-client privileged communication.

13 │                                    V. CONCLUSION

14 │    For the reasons set forth above, it is hereby ordered as follows:

15 │    1. Mattel's motion to compel is granted as to Interrogatory Nos. 38, 40, 41 (as narrowed),

16 │ 43-44 and 47. The MGA parties shall serve supplemental responses to said interrogatories no

17 │ later than February 26, 2008.

18 │    2. Mattel's motion to compel is denied as to Interrogatory Nos. 27-37, 39, 42, 46 and 48-

19 │ 50.

20 │ Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

21 │ Mattel shall file this Order with the Clerk of Court forthwith.

22 │

23 │ Dated: February 15, 2008

24 │                                    HON. EDWARD A. INFANTE (Ret.)
                                        Discovery Master

25 │

26 │

27 │

28 │
   │ Bryant v. Mattel, Inc.,
   │ CV-04-09049 SGL (RNBx)                                              22

EXHIBIT 8
PAGE 184

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 15, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL RESPONSES TO INTERROGATORY NOS. 27-44 AND 46-50 BY THE MGA PARTIES in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on February 15, 2008, at San Francisco, California.

Sandra Chan

EXHIBIT 8

PAGE 185

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc
(RNBx), AO279, DISCOVERY, PROTORD, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Proctor, Brett on 2/19/2008 at 2:56 PM PST and filed on 2/19/2008

**Case Name:**      Carter Bryant v. Mattel Inc
**Case Number:**   2:04-cv-9049
**Filer:**               Mattel Inc
**Document Number:** 2266

**Docket Text:**
Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties filed by Defendant Mattel Inc re: MOTION to Compel Responses to Interrogatories by the MGA Parties *(Nos. 27-44 and 46-50)*[1317] (Proctor, Brett)

### 2:04-cv-9049 Notice has been electronically mailed to:

Juan Pablo Alban    juanpabloalban@quinnemanuel.com

Timothy L Alger    timalger@quinnemanuel.com

Christa M Anderson    canderson@kvn.com

Linda M Burrow    burrow@caldwell-leslie.com

Michelle M Campana    michelle.campana@skadden.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Alan Neil Goldberg    agoldberg@sgattys.com

Melissa Grant    melissagrant@quinnemanuel.com

Emil W Herich    eherich@kmwlaw.com

Diane C Hutnyan    dianehutnyan@quinnemanuel.com, andreahoeven@quinnemanuel.com

2/19/2008

EXHIBIT 8

PAGE 186

John W Keker    jkeker@kvn.com, DRoberts@kvn.com, efiling@kvn.com

Raoul D Kennedy    rkennedy@skadden.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Larry W McFarland    lmcfarland@kmwlaw.com

Nathan Meyer    nmeyer@kayescholer.com, dclow@kayescholer.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Mark E Overland    moverland@obsklaw.com

Michael H Page    mhp@kvn.com

Kenneth A Plevan    kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

John B Quinn    johnquinn@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

Oleg Stolyar    alexstolyar@quinnemanuel.com

John Elliot Trinidad    jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mmw@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino, CA 91316

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\laurakinsey\Desktop\Order re Motion to Compel.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=2/19/2008] [FileNumber=5381686-0]
[643f3427701adad1bfb3880576efb3c91150eb5f693240ae485529023da3f2864add
e9800830a44a4c86425534ead16e2d9b58cbceeb1aba019aa1836347bcbd]]

2/19/2008

EXHIBIT ___8___

PAGE ___187___