# Exhibit 25

CONFORMED COPY

FILED

2007 MAY 18  PM 3: 45

CALENDARED

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

12

13  CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)

           Plaintiff,                    Consolidated with
14                                       Case No. CV 04-09059
        vs.                              Case No. CV 05-02727
15
   MATTEL, INC., a Delaware corporation, **DISCOVERY MATTER**
16
           Defendant.                    Hon. Edward A. Infante (Ret.)
17                                       Discovery Master

18  _____         [PROPOSED] ORDER GRANTING
   AND CONSOLIDATED CASES                MATTEL INC.'S MOTION TO
19                                       COMPEL MGA TO PRODUCE
                                         WITNESSES FOR DEPOSITION
20                                       PURSUANT TO RULE 30(B)(6)

21                                       Date: May 15, 2007
                                         Time: 8:15 a.m.
22                                       Place: Telephonic

23                                       Discovery Cut-Off: October 22, 2007
                                         Pre-Trial Conference: January 14, 2008
24                                       Trial Date: February 12, 2008

25

26

27                                       EXHIBIT 25

28                                       PAGE 284

07209/2121176:1

ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

CS/18/07

*Ed*

# ~~[PROPOSED]~~ ORDER

Having considered Mattel, Inc.'s Motion To Compel MGA To Produce Witnesses For Deposition Pursuant To <u>Rule</u> 30(b)(6) (the "Motion"), and all other papers and argument submitted in support of or opposition to the Motion, and finding good cause therefor, Mattel's Motion is GRANTED.

IT IS HEREBY ORDERED that:

1.    MGA shall make Paula Garcia available for deposition on or before June 15, 2007 as a designee on Topics 1-3 and 6-8 of Mattel's Notice of Deposition of MGA Pursuant to <u>Rule</u> 30(b)(6) dated February 16, 2005 and in her individual capacity.

2.    MGA shall confirm its designees and the dates of the designees' availability for deposition for all Topics except Topic Nos. 25 and 26 in Mattel's Notice of Deposition of MGA Pursuant to <u>Rule</u> 30(b)(6) dated February 1, 2007 (the "Second Notice") on or before May 22, 2007.

3.    MGA shall make its designees for all Topics in the Second Notice, except Topic Nos. 25 and 26, available for deposition on or before June 30, 2007.

4.    The parties shall meet and confer regarding the timing of the depositions on Topic Nos. 25 and 26 of the Second Notice. Such depositions may take place after June 30, 2007.

5.    All of MGA's objections and/or limitations regarding the Topics in Mattel's <u>Rule</u> 30(b)(6) deposition notices are overruled.

//
//
//
//
//
//

EXHIBIT 25

PAGE 285

1

2      6.     Mattel's request for sanctions is denied.

3

4    **IT IS SO ORDERED.**

5

6    DATED: _May 16,____, 2007

7

8                                    _Edward A. Infante_
                                     Hon. Edward A. Infante (Ret.)
9                                    Discovery Master

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                      EXHIBIT __25__

28                                      PAGE __286__

07209/2121176.1
                              -2-
              ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

# Exhibit 26

CONFORMED COPY

FILED

BY:
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
EASTERN DIVISION
2007 AUG 14  PM 4:18

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:   (415) 774-2611
4   Facsimile:   (415) 982-5287

5

6

7                   UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                         EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No.1100049530
12           Plaintiff,

13      v.                                 Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15           Defendant.                    **ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
16                                         MOTION TO COMPEL PRODUCTION
                                           OF DOCUMENTS BY MGA;
17                                         DENYING REQUEST FOR
                                           MONETARY SANCTIONS**
18  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
19  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
20

21                         I. INTRODUCTION

22          On June 26, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production of

23  Documents by MGA Entertainment, Inc. ("MGA") and for Award of Monetary Sanctions.  Mattel

24  seeks an order compelling MGA "to produce documents responsive to Mattel's First Set of

25  Requests for Documents and Things Re Unfair Competition Claims, including, without limitation,

26  Request Nos. 1, 3-10, 12-13, 16-18, 19-20, 26-27, 29-30, 32-40, 42-43, 45, 48-52, 54-56, 58-60,

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

    R.14

    EXHIBIT _26_

    PAGE _287_

1    65-119, 137-140, 157-161, 164 and 166," and for sanctions in the amount of $4,500, which

2    represents a portion of the costs incurred by Mattel in bringing this motion. Mattel's Motion at

3    p.1. On July 3, 2007, MGA submitted its opposition brief, and on July 9, 2007, Mattel submitted

4    a reply brief. The matter was heard via telephonic conference on August 13, 2007. Having

5    considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel

6    is granted in part and denied in part, and the request for sanctions is denied.

7                                   II. BACKGROUND

8         This consolidated action includes MGA's claims for unfair competition against Mattel.

9    Among other things, MGA alleges that Mattel has engaged in "serial copycatting" of MGA

10   products, packaging and advertising, including Bratz dolls and other Bratz products, Bratz

11   packaging and Bratz television commercials. MGA also alleges that Mattel engaged in improper

12   conduct in dealing with retailers, licensees, employees and industry organizations.

13        After MGA filed its claims against Mattel, Mattel sought and was granted leave to file

14   several counterclaims against MGA, including claims for copyright infringement, violation of

15   RICO, conspiracy to violate RICO, misappropriation of trade secrets and unfair competition.

16   Among other things, Mattel alleges that MGA has induced Mattel employees to steal Mattel's

17   trade secrets, confidential information and other property and take it with them to their new

18   employment with MGA. Mattel also alleges that Bryant conceived, created and developed Bratz

19   designs while he was employed by Mattel as a designer, that he concealed his Bratz work from

20   Mattel, and that he sold Bratz to MGA while he was a Mattel employee. Mattel alleges that it is

21   the rightful owner of the Bratz designs and that MGA is engaging in copyright infringement of

22   the Bratz designs.

23        On December 18, 2006, Mattel propounded its First Set of Requests for Production of

24   Documents and Things re Claims for Unfair Competition to MGA (the "Requests for

25   Production"). The Requests for Production consist of 166 requests seeking information that

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT __26__

PAGE __288__                    2

1  Mattel contends is relevant primarily to MGA's claims for unfair competition and Mattel's

2  defenses thereto.

3       In the meantime, MGA served its initial disclosures related to its unfair competition

4  claims. Mattel immediately filed a motion to compel MGA to provide complete initial

5  disclosures in compliance with Rule 26, Fed.R.Civ.P. Although the initial disclosures were

6  wholly inadequate, the Discovery Master denied the motion to compel, reasoning that it would be

7  more efficient and orderly for the parties to proceed with Mattel's pending Requests for

8  Production.

9       MGA served its responses to Mattel's Requests for Production on January 17, 2007.

10  MGA objected and refused to produce documents responsive to approximately two-thirds of

11  Mattel's requests. As to the remaining requests, MGA agreed to produce "relevant and non-

12  objectionable documents," subject to its General and Specific Objections.

13       Thereafter the parties met and conferred in person and exchanged a few letters. On

14  February 9, 2007, counsel for MGA advised Mattel by letter that MGA, subject to its General and

15  Specific objections, agreed to produce all "relevant and non-objectionable documents" responsive

16  to Request Nos. 1-4, 11, 13-15, 18, 21-26, 28-29, 31-36, 44-51, 53, 61-64, 118, 120-137, 141-156,

17  162-163, 165 and 166. Kidman Decl., Ex. 14. As to Request Nos. 9, 10 and 12, MGA also

18  agreed to produce "documents sufficient to show the timing of, and relevant facts regarding"

19  certain specified products. Id. Counsel for MGA sent another letter on February 16, 2007,

20  advising Mattel that MGA would produce documents responsive to Request Nos. 29 and 30.

21  Bradley Decl., Ex. 1. On May 21, 2007, MGA advised Mattel by letter that it agreed, in essence,

22  to withdraw its restriction to "relevant and non-objectionable documents" in its responses to the

23  Requests For Production. Bradley Decl., Ex. 3. On May 31, 2007, MGA served supplemental

24  responses to Mattel's Requests for Production, which no longer included the phrase "relevant and

25  non-objectionable." Kidman Decl., Exs. 11 and 16.

26

27

28

EXHIBIT 26

PAGE 289

3

1    In its opening brief, Mattel contends that MGA has improperly refused to produce

2  documents relating to: the creation, origin, timing and ownership of the contested MGA products

3  and packaging, including the contested Bratz products and packaging (Request Nos. 5, 6-8, 16,

4  17, 19, 20, 38, 39, 48); MGA's alleged theft of Mattel's trade secrets and confidential information

5  by, among other things, targeting and recruiting current and former Mattel employees (Request

6  Nos. 42, 59, 60, 65-117, 138-140, 160, 161 and 164); damages (Request Nos. 27, 30 and 157-

7  159); facts MGA contends support its unfair competition claims (Request Nos. 45, 119 and 166).

8  Mattel contends that MGA has no legitimate basis for refusing to produce these categories of

9  documents because they are directly relevant to the claims and defenses in the case. Mattel also

10  contends that MGA has improperly restricted the scope of its document production in response to

11  Request Nos. 1, 3, 4, 13, 18, 29, 49, 52 and 137.

12    MGA contends that Mattel's motion should be denied in its entirety for three reasons.

13  First, Mattel is seeking documents MGA already agreed to produce as a result of the meet and

14  confer process. Second, Mattel is seeking documents that may be precluded by other motions

15  pending before the district court. Third, Mattel is seeking documents that constitute an

16  unreasonable and overbroad fishing expedition.

17    As to the first point, MGA contends that it has already agreed to produce documents

18  responsive to Request Nos. 9, 10, 12, 26, 29, 30, 32-36, 45, 48-51, 118, 137, and 166. Moreover,

19  MGA represents that it has produced more than 110,000 pages of documents, including

20  documents relating to the origin, infringement, design and tooling of Bratz and has also provided

21  Mattel with access to Bratz molds and sculpts. MGA also represents that it is continuing to

22  search for and produce documents responsive to Mattel's requests on a rolling basis.

23    MGA also asserts that it "has revisited certain of Mattel's requests, and so as to avoid

24  further burdening the Court, MGA agrees to produce non-privileged documents in its possession,

25  custody or control, subject to its previously stated General and Specific Objections, that are

26

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __26__

PAGE __290__

4

responsive to the following sixteen requests:  5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159."  MGA's Opposition at p. 3.

MGA also represents that it is prepared to produce documents responsive to Mattel's Request Nos. 65-117 and 119 (which seek documents concerning MGA-Mexico and its employees, and other topics relevant to Mattel's counterclaims) now that Judge Larson issued an order denying MGA's motion to dismiss Mattel's trade secret claims.[1]  MGA's Opposition at pp. 2 and 6.

As to the second point, MGA contends that Mattel's motion to compel is premature with respect to Request Nos. 1, 3, 4, 13 and 18.  MGA explains that these requests seek, among other things, information pertaining to undisclosed and/or unreleased MGA products.  The Discovery Master issued an order compelling MGA to produce such documents in response to other Mattel discovery requests.  MGA appealed the Discovery Master's ruling, which was heard by Judge Larson on July 2, 2007.  MGA contends that it should not be required to produce documents responsive to Request Nos. 1, 3, 4, 13 and 18 until Judge Larson issues a ruling.

For the remaining requests, however, MGA stands by its objections.  More specifically, MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160, 161 and 164 are grossly overbroad and unduly burdensome.

In its reply brief, Mattel contends that MGA's belated offers to produce responsive documents do not obviate the need for an order compelling production for several reasons.  First, Mattel contends that in many instances, MGA's purported agreements to produce responsive documents are subject to major qualifications.  For example, in response to Request Nos. 9, 10 and 12, MGA's meet and confer letter indicates that MGA has limited its production of documents to only "documents sufficient to show the timing of, and relevant facts regarding" certain products.  Kidman Decl., Ex. 14.  Second, Mattel points out that, in some instances, the

---

[1] Judge Larson issued the order on June 27, 2007, a day after Mattel submitted its opening brief.

1   representations in MGA's meet and confer letters conflict with MGA's subsequent May 31, 2007

2   supplemental responses.  For example, even though MGA stated earlier in its two meet and confer

3   letters that it would produce documents responsive to Request Nos. 9, 10, 12, 26, 30, 32-36, 45,

4   48, 50, 51, 118 and 166, MGA's May 31, 2007 supplemental responses indicate that MGA

5   objects and refuses to produce documents responsive to these requests.  Third, Mattel contends

6   that MGA has acknowledged its responsibility to produce documents responsive to Request Nos.

7   65-117 and 119 in view of Judge Larson's June 27, 2007 order denying MGA's motion to dismiss

8   Mattel's counterclaims, and yet, MGA has failed to do so.  Fourth, Mattel points out that MGA's

9   opposition brief is internally inconsistent with respect to Request Nos. 55 and 56, stating both that

10   MGA agrees to produce documents responsive to the requests, and that MGA objects to the

11   requests as overbroad and burdensome.  <u>See</u> MGA's Opposition at pp. 3 and 8.

12        Mattel also contends that Request Nos. 1, 3, 4, 13 and 18 are no longer premature because

13   on July 5, 2007, two days after MGA submitted its opposition brief, Judge Larson issued an order

14   upholding the Discovery Master's ruling with respect to undisclosed and/or unreleased MGA

15   products.  Accordingly, Mattel requests an order compelling production of documents all

16   documents responsive to Request Nos. 1, 3, 4, 13 and 18 without any limitations, and overruling

17   any objections thereto.

18        With respect to the remaining requests to which MGA continues to object, Mattel reasserts

19   that the requests seek documents relevant to Mattel's trade secret counterclaims.  Mattel also

20   contends that MGA has failed to establish that complying with the requests would impose an

21   undue burden.

22                     <u>III. DISCUSSION</u>

23        Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

24   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

25   party." Fed.R.Civ.P. 26(b)(1).  Fishing expeditions to discover new claims, however, are not

26   permitted.  <u>See</u> Fed.R.Civ.P. 26(b)(1); <u>Rivera v. NIBCO, Inc.</u>, 364 F.3d 1057, 1072 (9th Cir.

27

28   

EXHIBIT 26

PAGE 292

6

1   2004) ("District courts need not condone the use of discovery to engage in 'fishing

2   expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

3   (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

4   (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

5   the phrase "subject matter involved in the pending action," were intended to prevent discovery

6   that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

7   litigate the issues presented by the pleadings but to develop new claims or defenses.).

8          Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

9   extent of use of the discovery methods if the court determines that "(i) the discovery sought is

10  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

11  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

12  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

13  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

14  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

15  the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

16  26(b)(2).

17  **Request Nos. 1, 3, 4, 13 and 18**

18         Request No. 1 seeks "[a] sample of each of the CONTESTED MGA PRODUCTS,

19  together with each such product's packaging, instructions, promotional materials and other

20  associated packaging materials." Request No. 3 seeks "[a] complete copy of each advertisement

21  or promotional statement prepared, produced, printed, broadcast, made available to anyone in any

22  manner via the Internet, or otherwise used or disseminated in any way in connection with the

23  CONTESTED MGA PRODUCTS." Request No. 4 seeks "[a] complete copy of each

24  COMMUNICATION, advertisement, promotional statement that provides a basis for any claim

25  by [MGA] against MATTEL." Request No. 13 seeks "[a]ll DOCUMENTS RELATING TO any

26  revision of any CONTESTED MGA PRODUCTS, including but not limited to any proposed

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 26

PAGE 293

7

1   alternatives, modifications or changes (whether or not implemented) to such CONTESTED MGA

2   PRODUCTS." Request No. 18 seeks "[a]ll DOCUMENTS RELATING TO the marketing,

3   advertising, promotion, licensing, offering for sale or sale of the CONTESTED MGA

4   PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans,

5   sales forecasts, strategies, surveys and analyses and including but not limited to all catalogs,

6   advertisements, brochures, displays and Internet publications."

7       During the meet and confer process, MGA agreed to produce documents responsive to

8   Request Nos. 1, 3, 4, 13 and 18. Kidman Decl., Ex. 14. In its subsequent supplemental

9   responses, however, MGA responded that it would produce responsive documents "visible to the

10  consuming public at the point of purchase," "made available to the public," or "presented to the

11  consuming public." MGA's Supp. Response, Kidman Decl., Ex. 8 and 16.

12      Mattel contends that the requested documents and items are relevant to MGA's claim of

13  "serial copying," whether or not they are seen by the consuming public. Mattel also contends that

14  the documents it seeks are relevant to any claim by MGA of "post sale confusion." Furthermore,

15  Mattel argues that MGA's restrictions on discovery are unreasonable in light of MGA's own

16  claimed trade dress, which MGA alleges extends to the entirety of MGA's marketing techniques

17  and product appearance. Mattel also contends that Request No. 13 seeks documents that are

18  directly relevant to MGA's claim that Mattel systematically modified its products to increase their

19  similarity to MGA's products over time.

20      In its opposition brief, MGA does not attempt to refute any of Mattel's relevancy

21  arguments above, relying instead on its argument that these requests are premature until Judge

22  Larson issues a ruling. Judge Larson, however, issued an order on July 5, 2007. Accordingly, the

23  requests are no longer premature. The subject requests are relevant and not unduly burdensome.

24  MGA is ordered to produce all non-privileged documents that are responsive to Request Nos. 1,

25  3, 4, 13 and 18.

26  //

27

28

EXHIBIT   26
PAGE   294

8

1    **Request Nos. 5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159**

2        In its opposition brief, MGA agrees to produce documents responsive to Request Nos. "5-

3    8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159." MGA's Opposition at p. 3. Later in its

4    opposition brief, however, MGA contends that Request Nos. 55 and 56 are overbroad and

5    burdensome. See MGA's Opposition at pp. 3 and 8. Request No. 55 seeks production of "[a]ll

6    periodicals, whether they be magazines, newspapers, newsletters, or any other type of periodical,

7    that mention the CONTESTED MGA PRODUCTS that have been published since January 1,

8    1999." Request No. 56 seeks "[a]ll television or radio broadcasts or cablecasts that mention the

9    CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999." MGA

10   contends that these requests encompass, among other things, every single advertisement MGA

11   ever ran in connection with BRATZ or any of the other products at issue.

12       Mattel contends that Request Nos. 55 and 56 are designed to obtain documents that may

13   contain admissions relevant to various issues in the case, including admissions regarding the

14   origin and timing of the products at issue; the performance of the contested products or MGA as a

15   whole, which may undercut MGA's claims for damages; and statements that might reveal that

16   MGA had access to confidential Mattel information.

17       Although Request Nos. 55 and 56 encompass potentially relevant documents, they are

18   overbroad. They require MGA to produce every single advertisement MGA ever ran in

19   connection with all of the products at issue. The requests are not limited in any respect to the

20   subjects of interest to Mattel, i.e., the origin and timing of the products at issue. Furthermore,

21   Mattel has utilized other document requests and depositions to obtain the type of evidence it now

22   seeks.

23       Accordingly, Mattel's motion is granted as to Request Nos. 5-8, 16-17, 19-20, 27, 37-40,

24   43, 52, and 157-159 to ensure a deadline for production, and denied as to Request Nos. 55 and 56

25   pursuant to Rule 26(b)(2), Fed.R.Civ.P.

26   //

27

28

EXHIBIT 26

PAGE 295

9

1    **Request Nos. 9, 10, 12**

2       Request Nos. 9, 10 and 12 call for "[a]ll DOCUMENTS RELATING TO the invention,

3    creation, origin, conception, authorship, design, development, production, engineering,

4    manufacture, distribution, sale and ownership of products and packaging" "that YOU contend

5    provide a basis for any claim against MATTEL, whether or not such claim is in the

6    COMPLAINT" (No. 9); "that YOU contend MATTEL copied or infringed" (No. 10); and related

7    "COMMUNICATIONS" (No. 12).  During the meet and confer process, MGA agreed to produce

8    "documents sufficient to show the timing of, and relevant facts" regarding the following products

9    on the following topics:

10       • "First generation 'Bratz'" line, including packaging – invention, creation, origin,

11       conception, authorship, design, development, sale and ownership;

12       • "Bratz" "Wintertime Wonderland" line, including packaging – invention, creation,

13       origin, conception, authorship, and first sale;

14       • "Bratz" "Sportz" Cloe, including packaging – invention, creation, origin, conception,

15       authorship and first sale;

16       • "Bratz" "Sun-Kissed Summer" line, including packaging and playset – invention,

17       creation, origin, conception, authorship, and first sale;

18       • "Bratz" "Formal Funk" line –invention, creation, origin, conception, authorship, and first

19       sale;

20       • "Bratz" "Runway Disco," including packaging – invention, creation, origin, conception,

21       authorship, and first sale;

22       • "Bratz" "Funky Fashion Makeover Head," including packaging – invention, creation,

23       origin, conception, authorship, and first sale;

24       • "Bratz" "Petz," including packaging – invention, creation, origin, conception,

25       authorship, and first sale;

26

27

28    Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT 26     10

PAGE 296

1    • "4-Ever Best Friends," including packaging – invention, creation, origin, conception,

2    authorship, and first sale;

3    • "Mommy's Little Patient" – invention, creation, origin, conception, authorship, and first

4    sale;

5    • "AlienRacers," including logo – invention, creation, origin, conception, authorship, and

6    first sale; and

7    • "Bratz" "Diamondz" line – invention, creation, origin, conception, authorship, and first

8    sale.

9    Kidman Decl., Ex. 14. In response to Request No. 9, MGA also agreed to produce documents

10   containing development, production and sales information for the product(s) affected by the hair

11   shortage allegedly caused by Mattel and "sufficient to show the timing of and relevant facts

12   regarding the shortage and its effect on MGA." Id. Thereafter, MGA asserted objections to these

13   requests in its May 31, 2007 supplemental responses. In opposition to Mattel's motion, however,

14   MGA restated that it would produce documents responsive to these requests consistent with its

15   prior meet and confer letter. MGA's Opposition at p. 5.

16         Mattel contends that MGA's agreement to produce documents is insufficient because

17   MGA has limited its production to documents "sufficient to show." MGA's opposition brief fails

18   to address Mattel's argument. Instead, MGA merely asserts that it agreed to produce documents

19   responsive to Request Nos. 9, 10 and 12 during the meet and confer process, and therefore

20   Mattel's motion should be denied as moot.

21         Request Nos. 9, 10 and 12 clearly seek relevant information, and MGA has failed to

22   justify why its production should be limited to documents "sufficient to show." Therefore,

23   Mattel's motion is granted as to Request Nos. 9, 10 and 12.

24   <u>Request Nos. 26, 29, 30, 32, 36, 45, 48-51, 118, 137 and 166</u>

25         In its two meet and confer letters MGA agreed to produce, subject to its General and

26   Specific Objections, documents responsive to Request Nos. 26, 29, 30, 32-36, 45, 48-51, 118, 137

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 26

PAGE 297

11

1   and 166. Kidman Decl., Ex. 14. Mattel points out, however, that MGA's May 31, 2007

2   supplemental responses are inconsistent insofar as the responses indicate that MGA continues to

3   object to some of the requests or otherwise agrees to produce only a limited portion of documents

4   responsive to other requests. Mattel's Reply Brief at p. 7. Nevertheless, in its opposition brief,

5   MGA reaffirms its earlier agreement to produce all responsive documents, and states that it

6   considers Mattel's motion to be moot. See MGA's Opposition at pp. 5-6. Mattel's motion is

7   granted as to this category of requests.

8   **Request Nos. 65-117 and 119**

9       In its opposition brief, MGA agrees to produce documents responsive to Mattel's Request

10  Nos. 65-117 and 119 now that Judge Larson issued an order denying MGA's motion to dismiss

11  Mattel's trade secret claims. MGA's Opposition at pp. 2 and 6. Mattel's motion is granted as to

12  these requests.

13  **Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164**

14      MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164 are overbroad

15  and unduly burdensome. Mattel insists that they are not. More specifically, Mattel contends that

16  the requests seek documents regarding MGA's alleged theft of Mattel's trade secrets, and in

17  particular, the theft of trade secrets through targeting and hiring current and former Mattel

18  employees.

19      Request No. 42 seeks "[a]ll COMMUNICATIONS between [MGA] and any individual

20  while the individual was employed by MATTEL." Although the request may encompass relevant

21  documents, it is overbroad insofar as it requires production of all communications, regardless of

22  subject matter. Furthermore, the request is objectionable to the extent it seeks documents that are

23  equally available to Mattel. Therefore, Mattel's motion is denied as to Request No. 42 pursuant

24  to Rule 26(b)(2), Fed.R.Civ.P.

25      Request No. 54 seeks "[a]ll DOCUMENTS RELATING TO any COMMUNICATION by

26  [MGA] with any news organization regarding the CONTESTED MGA PRODUCTS or the

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT __26__

PAGE __298__

12

1  CONTESTED MATTEL PRODUCTS." Once again, the request encompasses potentially

2  relevant documents, however it is overbroad, seeking all documents relating to any

3  communications by MGA with any news organization. Furthermore, the request seeks documents

4  that are of relatively minimal relevance to the claims and defenses in the case. Therefore,

5  Mattel's motion is denied as to Request No. 54 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

6        Request Nos. 58 seeks "[a]ll DOCUMENTS RELATING TO publicity by [MGA] or

7  about the CONTESTED MGA PRODUCTS since January 1, 1999, including but not limited to

8  advertising, media releases, and public relations material." This request is also overbroad in that

9  it seeks all documents relating to publicity by MGA about its products at issue in the litigation.

10  Mattel's motion is therefore denied as to Request No. 58 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

11        Request No. 59, asks for "[a]ll DOCUMENTS RELATING TO any effort by [MGA] to

12  recruit employees or contractors since January 1, 1999, including but not limited to advertising,

13  media releases, brochures, articles, catalogs, handbooks, and public relations material." The

14  request is overbroad insofar as it requires production of all documents relating to MGA's

15  recruiting, including for instance, recruiting from competitors other than Mattel. Mattel's motion

16  is therefore denied as to Request No. 59 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

17        Request No. 60 seeks "[a]ll DOCUMENTS RELATING TO the hiring, engagement, or

18  retention by [MGA] of any former or current MATTEL employee or contractor since January 1,

19  1999, including but not limited to all employment agreements and agreements RELATING TO

20  confidentiality or the invention, authorship, or ownership of any concept or product." Request

21  No. 138 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON RELATING TO

22  the departure from MATTEL of any current or former MATTEL employee or contractor."

23  Request No. 139 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON

24  RELATING TO the obligations to MATTEL, including the duty of confidentiality, of any current

25  or former MATTEL employee or contractor. Request No. 140 seeks "[a]ll

26  COMMUNICATIONS between [MGA] and any current or former MATTEL employee or

27

28

EXHIBIT 26

PAGE 299

13

1    contractor RELATING TO the ownership of any idea, concept, design, or product.  Unlike the

2    previous requests, Request Nos. 60, 138, 139 and 140 are reasonably tailored to seek documents

3    central to Mattel's allegation that MGA stole its trade secrets through targeting and hiring current

4    and former Mattel employees.  MGA has not carried its burden of establishing that it would be

5    unduly burdensome to comply with these requests.  Accordingly, Mattel's motion is granted as to

6    Request Nos. 60, 138, 139 and 140.

7          Request No. 160 seeks "[a]ll DOCUMENTS received from MATTEL (whether directly

8    or indirectly) by [MGA] at any time since January 1, 1999."  Request No. 161 seeks "[a]ll

9    DOCUMENTS that [MGA has] reason to believe were created by or originated from MATTEL,

10   other than MATTEL products that [MGA] purchased at retail."  Request No. 164 seeks "[a]ll

11   DOCUMENTS RELATING TO any COMMUNICATIONS with, or inquiry or investigation by,

12   any government entity RELATING TO the CONTESTED MGA PRODUCTS or the

13   CONTESTED MATTEL PRODUCTS."  These three requests are also reasonably tailored to seek

14   documents that could support Mattel's allegations of trade secret theft.  MGA has failed to

15   establish that it would be unduly burdensome to comply with these requests.  Mattel's motion is

16   granted as to Request Nos. 160, 161 and 164.

17                                    IV. CONCLUSION

18          For the reasons set forth above, Mattel's motion is granted as to Request Nos. 1, 3-10, 12,

19   13, 16-20, 26, 27, 29, 30, 32-40, 43, 45, 48-52, 60, 65-117, 118, 119, 137-140, 157-161, 164 and

20   166, and denied as to Request Nos. 42, 54-56, 58, 59.  MGA shall produce, without limitation, all

21   non-privileged responsive documents in accordance with this Order no later than August 30,

22   2007.  Mattel's request for sanctions is denied.

23          Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

24   Master, Mattel shall file this Order with the Clerk of Court forthwith.

25   Dated: August 13, 2007

26                                          HON. EDWARD A. INFANTE (Ret.)
                                                Discovery Master

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT 26                    14

PAGE 300

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 13, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA; DENYING REQUEST FOR MONETARY SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 13, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 26

PAGE 301

# Exhibit 27

CONFORMED COPY

1   Hon. Edward A. Infante (Ret.)
2   JAMS
    Two Embarcadero Center
3   Suite 1500
    San Francisco, California 94111
4   Telephone:   (415) 774-2611
    Facsimile:    (415) 982-5287

FILED

2007 AUG 15  PM 12: 14

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
EASTERN DIVISION

BY: _____

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

|  |  |
|---|---|
| CARTER BRYANT, an individual,<br><br>      Plaintiff,<br><br>  v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>      Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF MAY 16, 2007, TO COMPEL MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(b)(6), AND GRANTING REQUEST FOR SANCTIONS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On June 29, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Enforce The Court's Order of May 16, 2007, To Compel MGA To Produce Witnesses For Deposition Pursuant To

Rule 30(b)(6), And For Sanctions."[1]  On July 9, 2007, MGA Entertainment, Inc. ("MGA") submitted an opposition brief, and on July 12, 2007, Mattel submitted a reply brief.  The matter was heard on August 13, 2007.  Although the scope of Mattel's motion was broader[2], during the hearing, Mattel requested an order compelling MGA to designate and produce witnesses on Topic Nos. 21, 25, 26, and 34 and imposing sanctions for MGA's alleged non-compliance with the May 16, 2007 Order, particularly with respect to Topic Nos. 25, 26, 34, 39, 40 and 41.  Having considered the motion papers and the comments of counsel at the hearing, Mattel's motion is granted in part.

## II. BACKGROUND

On May 16, 2007, the undersigned issued an order granting Mattel's Motion to Compel MGA To Produce Witnesses Pursuant To Rule 30(b)(6) (hereinafter the "May 16, 2007 Order") which provided, in pertinent part:

2.   MGA shall confirm its designees and the dates of the designees' availability for deposition for all Topics except Topic Nos. 25 and 26 in Mattel's Notice of Deposition of MGA Pursuant to Rule 30(b)(6) dated February 1, 2007 (the "Second Notice") on or before May 22, 2007.

3.   MGA shall make its designees for all Topics in the Second Notice, except Topics Nos. 25 and 26, available for deposition on or before June 30, 2007.

4.   The parties shall meet and confer regarding the timing of the depositions on Topic Nos. 25 and 26 of the Second Notice.  Such depositions may take place after June 30, 2007.

5.   All of MGA's objections and/or limitations regarding the Topics in Mattel's Rule 30(b)(6) deposition notices are overruled.

---

[1]  Mattel seeks $3,000 in sanctions.

[2]  In its opening brief, Mattel focused on Topic Nos. 25, 26, 34, 39, 40 and 41 and requested an order requiring MGA to designate and produce witnesses on all Topics in Mattel's Second Notice of Deposition of MGA. In its reply brief, Mattel requested an order requiring MGA to produce witnesses on Topic Nos. 11, 13, 14, 19, 21-28, 31, 34, 37 and 39-41.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 27
PAGE 303

1   Proctor Decl., Ex. 1.  The parties later agreed to extend the May 22, 2007 deadline for designating
2   witnesses to May 29, 2007.

3       After the May 16, 2007 Order was issued MGA designated and offered dates for some
4   Rule 30(b)(6) witnesses.  Mattel accepted the dates, however, in the first week of June MGA
5   canceled the depositions of three designees.  On June 7 and again on June 15, 2007, Mattel
6   requested that MGA provide new dates for the three designees.

7       The parties met and conferred on June 22, 2007.  MGA offered designees and deposition
8   dates for 14 of the outstanding Topics.  Although all but one of the dates that MGA proposed
9   were after the June 30, 2007 deadline, Mattel accepted MGA's schedule.  MGA did not, however,
10  identify or produce witnesses to testify on Topics 25, 26, 34 and 39-41, which are the subject of
    the instant motion.  These Topics are set forth below.

11
12  Topic 25:  YOUR revenues and profits from BRATZ, including without limitation
    YOUR gross and net profits, and YOUR costs associated therewith.
13
14  Topic 26:  YOUR net worth.

    Topic 34:  Other than those previously filed and served in this ACTION or in
15
    which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony,
16
    transcripts, declarations, affidavits and other sworn written statements of any
17
    other type by or from YOU or made on YOUR behalf that REFER OR RELATE
18
    TO BRATZ THAT REFER OR RELATE TO the time period prior to June 30,
19
    2001 (regardless of when such testimony or sworn statement was taken, given,
20
    signed, made or filed).
21
    Topic 39:  The preservation, collection, destruction, removal, transfer, loss or
22
    impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in
23
    connection with the ACTION and/or any DOCUMENTS requested by MATTEL
24
    in the ACTION.
25
    Topic 40:  The preservation, collection, destruction, removal, transfer, loss or
26
    impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since
27
    January 1, 1999 that REFER OR RELATE TO MATTEL (including without
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT _27_

PAGE _304_

1   limitation any MATTEL product, plan or information) that YOU received in any

2   manner from any PERSON who was at the time an employee of MATTEL or who

3   had previously been an employee of MATTEL.

4   Topic 41:  The testing of or sampling from DOCUMENTS that REFER OR

5   RELATE TO BRATZ or BRYANT, including without limitation such testing or

6   sampling in connection with any ink, paper or chemical analysis performed or

7   attempted to be performed to date, any DOCUMENTS that REFER OR RELATE

8   thereto and all results and reports relating thereto.

9   Mattel's Second Notice of Deposition, dated February 1, 2007, Proctor Decl., Ex. 6.  During the

10   hearing, Mattel also requested an order compelling MGA to designate a witness and schedule a

11   deposition on Topic No. 21, which seeks:

12   Topic No. 21:  YOUR knowledge of, and access to, non-public MATTEL DIVA

13   STARTZ project information and DESIGNS prior to June 30, 2001.

14   Mattel's Second Notice of Deposition, dated February 1, 2007, Proctor Decl., Ex. 6.

15   MGA indicated that Lisa Tonnu would "likely" be its designee on Topic Nos. 25 and 26,

16   but did not offer a date for her deposition because it was awaiting a ruling from Judge Larson

17   regarding the phasing of trials.  MGA also did not designate a witness on Topic Nos. 26, 34 and

18   41 because it was in the process of appealing the May 16, 2007 Order as it pertained to these

19   topics to Judge Larson.[3]  MGA similarly did not designate a witness on Topic No. 40 because it

20   was awaiting a ruling from Judge Larson on its pending motion to dismiss Mattel's counterclaims.

21   MGA's motion to dismiss was based, in part, on Mattel's purported failure to comply with

22   California Code of Civil Procedure §2019.210.  Apparently, MGA thought that the need for

23   discovery on Topic No. 40 might be obviated if it prevailed on its motion to dismiss.

24

25

26   _____

27   [3]  MGA filed its Objection to the May 16, 2007 Order on May 31, 2007.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT  27

PAGE  305

1    MGA also did not designate a witness on the entirety of Topic No. 39. Earlier in June

2    MGA produced Kenneth Lockhart to testify on Topic No. 39. At the deposition, however,

3    Lockhart testified that he had no knowledge regarding MGA's collection of non-electronic

4    documents, a subject within the scope of Topic No. 39. Mattel asked MGA to identify another

5    witness to testify regarding the collection of non-electronic documents. MGA apparently refused

6    to do so because it believed Mattel had agreed to limit Topic No. 39 to exclude that issue.

7        By the end of June 2007, MGA had made only two Rule 30(b)(6) witnesses available for

8    deposition pursuant to the May 16, 2007 Order: Kenneth Lockhart and Paula Garcia. Mattel's

9    Motion at p.3.[4]

10    On June 26, 2007, Judge Larson issued a Minute Order scheduling MGA's appeal of the

11    May 16, 2007 Order for hearing on July 2, 2007. On June 27, 2007, Judge Larson issued an order

12    denying MGA's motion to dismiss, and Mattel renewed its request that MGA produce a witness

13    to testify on Topic No. 40. The next day MGA responded that it intended to identify a designee

14    and dates for a deposition by the end of the week.

15    On June 29, 2007, Mattel filed the instant motion. On July 5, 2007, Judge Larson issued

16    an order affirming the May 16, 2007 Order. That same day MGA confirmed the date and its

17    designation of a witness on Topic Nos. 39 and 40. MGA also confirmed that it would produce

18    witnesses on Topic Nos. 34 and 41. On July 9, 2007, MGA provided designations and dates for

19    deposition for Topic Nos. 34 and 41.

20    In this motion, Mattel contends that MGA has refused to designate and/or to produce

21    witnesses on Topic Nos. 21, 25, 26, 34, 39, 40 and 41, even though the May 16, 2007 Order

22    required it to make all of its Rule 30(b)(6) witnesses (except on Topic Nos. 25 and 26) available

23    by the end of June. Mattel also contends that MGA has refused to meet and confer in good faith

24

25        [4] A third deposition was scheduled for June, however, it did not take place. According to Mattel, MGA

26    unilaterally cancelled the deposition the day before it was scheduled to commence. Mattel Motion at p.4. According to MGA, Mattel agreed to defer the deposition.

27

28    Bryant v. Mattel, Inc.,
      CV-04-09049 SGL (RNBx)                                                                          5

EXHIBIT ___27___

PAGE ___306___

1   to schedule the deposition of witnesses on Topic Nos. 25 and 26, in violation of the May 16, 2007

2   Order. Lastly, Mattel contends that MGA's stated justifications for refusing to comply with the

3   May 16, 2007 Order all lack merit.

4        MGA contends that Mattel's motion is premature and unnecessary, and is now moot.

5   MGA explains that after the June 22, 2007 meet and confer, there were only four topics open:

6   "one of which (40) was subject to a ruling anticipated to be coming from Judge Larson any day

7   and which was received before Mattel's motion was filed; two of which (34 and 41) were the

8   express subject of an appeal pending before Judge Larson; and the last was simply the result of an

9   honest disagreement between the parties as to the actual intended scope of the topic (39)."

10   MGA's Opposition at p.2. MGA denies ever refusing to provide witnesses on these topics, and

11   instead, asserts that it was entitled to receive Judge Larson's rulings before scheduling

12   depositions. MGA further contends that it identified witnesses and deposition dates soon after

13   Judge Larson issued his orders.

14                           III. DISCUSSION

15   **Topic Nos. 25 and 26**

16        The May 16, 2007 Order required the parties to meet and confer "regarding the timing of

17   the depositions on Topic Nos. 25 and 26." Proctor Decl., Ex. 1. During the June 22, 2007 meet

18   and confer session, MGA indicated that it was likely to designate Lisa Tonnu for these topics;

19   however, it did not offer a date for the deposition because it was awaiting Judge Larson's ruling

20   on the phasing of trials.

21        Mattel contends that MGA's purported justification for failing to schedule the depositions

22   is without merit because discovery in this case has not been phased. Further, Mattel contends that

23   depositions on these two topics cannot be delayed any longer because under the current schedule,

24   expert reports are due in late August.

25        MGA contends that it fulfilled its meet and confer obligations regarding Topic Nos. 25

26   and 26 and took the position that the depositions shouldn't be scheduled until Judge Larson issued

27   a ruling on the phasing of trials.

28

MGA is not technically in violation of the May 16, 2007 Order with respect to Topic Nos. 25 and 26 because it fulfilled its obligation to meet and confer regarding the timing of the depositions. Therefore, Mattel's motion to enforce the May 16, 2007 Order and request for sanctions are denied as to Topic Nos. 25 and 26. Nevertheless, MGA's purported justification for delaying scheduling depositions on Topic Nos. 25 and 26 is no longer valid in light of Judge Larson's ruling on the phasing of trials and Mattel is entitled to a date certain for the depositions.

**Topic No. 39**

The May 16, 2007 Order required MGA to designate a witness on Topic No. 39 by May 22, 2007, and to produce its designee for deposition by June 30, 2007. MGA met these deadlines by designating Kenneth Lockhart on Topic No. 39 and producing him for deposition on June 14 and 15, 2007. Mr. Lockhart, however, was unable to testify regarding the collection of non-electronic documents. During the parties' subsequent meet and confer, MGA acknowledged that Mr. Lockhart was not proffered regarding the collection of non-electronic documents, but claimed that Mattel had previously agreed to limit Topic No. 39 to electronic documents.

Mattel denies ever agreeing to so limit Topic No. 39 and contends that "it is preposterous to think that Mattel would agree to such a limitation." Mattel's Motion at p.10. Mattel points out that the Topic clearly encompasses both electronic and non-electronic documents, and that the May 16, 2007 Order compels MGA to produce a witness on the Topic as written.

In contrast, MGA contends that it designated Mr. Lockhart, Chief Information Officer, on Topic No. 39 "based on its good faith belief that the topic was intended to cover the retention of electronic documents and other 'digital information.'" MGA's Opposition at p.6. Nevertheless, on July 5, 2007, MGA designated Lisa Tonnu to testify on Topic No. 39 and indicated that she was available on July 19, 2007.

MGA is in substantial compliance with the May 16, 2007 Order, having produced Mr. Lockhart by the June 30th deadline and by offering Lisa Tonnu to testify regarding the remainder of Topic No. 39 after the apparent misunderstanding came to light. Therefore, Mattel's motion to enforce the May 16, 2007 Order is denied with respect to Topic No. 39.

//

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT ___27___

PAGE ___308___

**Topic No. 40**

The May 16, 2007 Order required MGA to designate a witness on Topic No. 40 by May 22, 2007, and to make the witness available for deposition no later than June 30, 2007.  At the June 22, 2007 meet and confer session, MGA did not designate or produce a witness on Topic No. 40 because it was awaiting the resolution of its motion to dismiss.  On June 27, 2007, Judge Larson denied MGA's motion to dismiss and held that Mattel had already complied with §2019.210.  The next day MGA notified Mattel that it would identify a witness on Topic No. 40 and potential dates for deposition by the end of the week.  On July 5, 2007, MGA confirmed that Lisa Tonnu would testify on Topic No. 40 and would be available for deposition on July 19, 2007.

Mattel contends that MGA violated the May 16, 2007 without any legitimate basis because Topic No. 40 was not the subject of any appeal.  In contrast, MGA contends that it completed its designation and provided available dates promptly after Judge Larson issued his order.

MGA clearly violated the May 16, 2007 by failing to identify a witness to testify on Topic No. 40 and to make the witness available for deposition by June 30th.  MGA's non-compliance was willful and inexcusable.  MGA could have but failed to request any extension of time to designate and produce a witness on Topic No. 40.  MGA has not cited any precedent that excuses a litigant from complying with deadlines imposed by a discovery order, without leave of court, simply because the claim to which the discovery is directed is the subject of a pending motion to dismiss.  Mattel's motion is granted as to Topic No. 40 and sanctions are warranted pursuant to Rule 37(b)(2), Fed.R.Civ.P.

**Topic Nos. 34 and 41**

The May 16, 2007 Order required MGA to designate a witness on Topic Nos. 34 and 41 by May 22, 2007 and to produce its designee(s) for deposition by June 30, 2007.  At the June 22, 2007 meet and confer session, MGA did not offer any designees or deposition dates for Topic Nos. 34 and 41 because it was in the process of appealing the May 16, 2007 Order to Judge Larson with respect to these topics.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT 27

PAGE 309

On May 31, 2007, MGA appealed the May 16, 2007 Order compelling it to produce designees on Topic Nos. 34 and 41.[5]  MGA sought a stay of the May 16, 2007 Order as to these Topics pending appeal.  On June 21, 2007, the Discovery Master denied the requested stay.  On June 22, 2007, MGA filed an "emergency *ex parte*" application with Judge Larson seeking review of the June 21, 2007 Order denying the requested stay.  On June 26, 2007, Judge Larson issued a Minute Order scheduling MGA's appeal of the May 16, 2007 Order for hearing on July 2, 2007. A few days after the hearing, Judge Larson issued an order upholding the May 16, 2007 Order. That same day MGA confirmed that it would produce witnesses on Topic Nos. 34 and 41.  On July 9, 2007, MGA identified Renato Dionisio to testify on Topic No. 34 and indicated that the witness was available on any one of the following days:  August 21-23 or 28-30.  MGA identified Lisa Tonnu to testify on Topic No. 41 and indicated that she was available to testify on July 19.

Mattel contends that MGA willfully failed to comply with the May 16, 2007 Order, even after its request for a stay was denied.  MGA contends that the instant motion was unnecessary and a waste of judicial resources because Mattel knew before it filed the motion that Judge Larson had moved up the hearing on MGA's appeals and a ruling would be forthcoming.

MGA violated the May 16, 2007 Order by failing to designate and produce a witness to testify on Topic Nos. 34 and 41 by the June 30th deadline.  The violation was particularly egregious because MGA's request for a stay was denied on June 21, 2007, which still left a few days for MGA to at least designate a witness and propose dates for a deposition, even if the deposition was scheduled beyond the June 30th deadline.  Instead, MGA chose to persist in its refusal to comply with the May 16, 2007 Order and gambled that Judge Larson would grant it "emergency" *ex parte* relief.  MGA's clear and flagrant violation of a court order warrants sanctions under Rule 37(b)(2), Fed.R.Civ.P.

## IV. CONCLUSION

For the reasons set forth above, Mattel's motion is granted in part and denied in part.  To the extent MGA has not already done so, MGA shall promptly confirm its designees on Topic

---

[5]  MGA also appealed the May 16, 2007 Order with respect to Topic No. 26.

1    Nos. 21, 25, 26 and 34 by August 22, 2007, and make them available for deposition no later than

2    September 27, 2007.

3        Mattel's request for sanctions is granted based upon MGA's willful violation of the May

4    16, 2007 Order by failing to identify witnesses and dates for deposition for Topic Nos. 34, 40 and

5    41 by the designated deadlines. MGA shall reimburse Mattel in the amount of $1,000 in

6    monetary sanctions pursuant to Rule 37(b)(2), Fed.R.Civ.P., no later than August 22, 2007.

7        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

8    Master, Mattel shall file this Order with the Clerk of Court forthwith.

9

10   Dated: August *14*, 2007

        HON. EDWARD A. INFANTE (Ret.)
11                          Discovery Master

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT 27

PAGE 31

# Exhibit 28

**CONFORMED COPY**

2007 AUG 21  PM 2:00

BY: ___

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
EASTERN DIVISION

FILED

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California  94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                  UNITED STATES DISTRICT COURT

8                  CENTRAL DISTRICT OF CALIFORNIA

9                       EASTERN DIVISION

10

11  CARTER BRYANT, an individual,              CASE NO. C 04-09049 SGL (RNBx)
                                               JAMS Reference No. 1100049530
12          Plaintiff,

13      v.                                     Consolidated with
                                               Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,      Case No. CV 05-2727

15          Defendant.                         **ORDER GRANTING MATTEL'S**
                                               **MOTION TO COMPEL MGA TO**
16                                             **ANSWER REQUESTS FOR**
                                               **ADMISSION**
17  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20

21

22

23                    I. INTRODUCTION

24         On May 25, 2007, Mattel filed a "Motion To Compel MGA To Answer Requests For

25  Admission And To Compel Amended Answers Or Order Requests Admitted And For Monetary

26  Sanctions."  On June 5, 2007, MGA filed an opposition, and on June 12, 2007, Mattel filed a

27  reply.  Thereafter the motion was deferred pending the resolution of MGA's motion to dismiss

28  Bryant v. Mattel, Inc.,                                          1
    CV-04-09049 SGL (RNBx)

EXHIBIT 28

PAGE 312

1   and completion of the meet and confer process.  See Order Deferring Mattel's Motion to Compel

2   MGA to Answer Requests for Admission.  On June 27, 2007, Judge Larson entered an order

3   denying MGA's motion to dismiss Mattel's trade secret claims, and on August 9, 2007, Mattel

4   submitted an updated Statement of Rule 37-1 Compliance.  Also on August 9, 2007, the parties

5   submitted a joint statement indicating that they were able to resolve substantially all of the issues

6   raised in Mattel's motion.  As a result of the parties' meet and confer efforts, only the following

7   requests for admission remain in dispute: Nos. 186-190, 192, 193, 199, 200, 206, 207, 213, 214,

8   222-224, 226, 228, 230, 232, 234, 236, 238 and 240 of Mattel's Third Set of Requests for

9   Admission.  Mattel also continues to seek monetary sanctions with respect to the requests for

10  admission identified above.

11      For the reasons set forth below, Mattel's motion to compel is granted and the motion for

    sanctions is denied.

12                              II. BACKGROUND

13      On February 28, 2007, Mattel propounded its Third Set of Requests for Admission

14  to MGA (the "Requests for Admission").  Among other things, the requests for admission ask

15  MGA to admit that certain copyrighted works are derivative of other Bratz works and that certain

16  copyrighted works are "substantially similar" to other Bratz works (Nos. 192, 193, 199, 200, 206,

17  207, 213, 214, 222-224, 226, 228, 230, 232, 234, 236, 238, and 240).[1]  Other requests ask MGA

18  to admit certain facts pertaining to statements MGA made to the press about MGA's and Mattel's

19  labor practices (Nos. 186-190).  The National Labor Committee issued a report titled "Made in

20  China: The Sweatshop Behind the Bratz" documenting "sweatshop" conditions and labor abuses

21  at the Hua Tai 4K factory in China where Bratz dolls are manufactured.  According to Mattel,

22  MGA stated in a press release that "it is not familiar with the company named in the report," that

23  "MGA uses first rate factories in the orient to make its goods," and that "[t]he same factories

24  make products for the world's biggest toy manufacturers including Mattel."  Associated Press

25

26      [1] Hereinafter, these requests are collectively referred to as the "requests for admission regarding copyright
    registrations."

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                              2

EXHIBIT 28

PAGE 313

1   article dated December 22, 2006, Kidman Decl., Ex. 21. Mattel's requests for admission ask

2   MGA to admit that the Hua Tai 4k factory is one of the factories used by MGA to manufacture

3   Bratz dolls (No. 186), that MGA made the above-reference statements to the media (Nos. 187-

4   188), that as of the date of those statements, the Hua Tai 4K factory did not manufacture products

5   for Mattel (No. 189), and that MGA knew the Hua Tai 4K factory did not manufacture products

6   for Mattel (No. 190).

7          On March 30, 2007, MGA served its Responses objecting to the requests for admission

8   regarding copyright registrations on the grounds that they called for "a legal conclusion" and "the

9   disclosure of attorney-client privileged information or information protected from disclosure by

10  the work-product doctrine, joint defense or common interests privilege or other privilege."

11  Kidman Decl., Ex. 11. As for the remainder of the requests for admission at issue (Nos. 186-

12  190), MGA objected that the requests were "vague and ambiguous" and sought information that

13  was not relevant to any claim or defense in the suit. The instant motion ensued.

14         With respect to the requests for admission regarding copyright registrations, Mattel

15  contends that Rule 36, Fed.R.Civ.P., authorizes requests that call for a legal conclusion so long as

16  the legal conclusion relates to the facts of the case. Mattel contends that it has sued MGA for

17  copyright infringement, and therefore the requests for admission regarding copyright registrations

18  clearly relate to the facts of the case. Further, Mattel contends that MGA's privilege and work

19  product objections are without merit. Mattel argues that a party cannot avoid answering requests

20  for admission that involve the application of law to fact by claiming that it needs to confer with

21  counsel in order to do so. Mattel contends that to hold otherwise would effectively gut the

22  provision of Rule 36 authorizing such requests.

23         As to the remaining requests for admission, Mattel contends that they seek admissions that

24  are clearly relevant to its claim that MGA has engaged in unfair competition by, among other

25  things, "repeatedly issu[ing] false and misleading press releases" about Mattel. Mattel's

26  Counterclaim, ¶¶81 and 165, Kidman Decl., Ex. 7. Mattel also contends that the requests for

27  admission seek information relevant to Mattel's defenses to MGA's unfair competition claims

28  and causation of alleged damages on those claims. For example, Mattel contends that the requests

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT ___2⁸___

PAGE ___314___

1   for admission could show that any decline in sales, lost profits or loss of goodwill and reputation

2   MGA seeks to attribute to Mattel's conduct was caused or contributed to the public's negative

3   reaction to MGA's alleged "sweatshop" labor practices.

4           In opposition, MGA stands by its objections that the requests for admission regarding

5   copyright registrations are improper because they call for a legal conclusion and require the

6   disclosure of information protected by the attorney-client privilege and work product doctrine.

7   MGA reasons that any knowledge it could have regarding whether copyright works are

8   "derivative" or "substantially similar" to other works must necessarily come from the opinions of

9   its counsel.

10          MGA contends that the remaining requests regarding its comments to the press are

11  irrelevant to any claim or defense.  MGA points out that Mattel's counterclaims do not mention

12  any comments regarding the Hua Tai 4K factory or MGA's or Mattel's labor practices.  Rather,

13  Mattel's counterclaims are based upon alleged comments by Isaac Larian regarding Mattel's

14  MyScene My Bling Bling dolls with real gems.  Furthermore, MGA contends that the Request

15  Nos. 186-190 cannot support any defense against MGA's unfair competition claims because those

    claims were filed well before the alleged press statements were made.

16                                    III. DISCUSSION

17          Rule 36 of the Federal Rules of Civil Procedure governs requests for admission and

18  provides, in pertinent part, that "[a] party may serve upon any other party a written request for the

19  admission, for purposes of the pending action only, of the truth of any matters within the scope of

20  Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the

21  application of law to fact, including the genuineness of any documents described in the request."

22  Fed.R.Civ.P. 36(a).  Further, "[a] party who considers that a matter of which an admission has

23  been requested presents a genuine issue for trial may not, on that ground alone, object to the

24  request; the party may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons

25  why the party cannot admit or deny it." Id.

26          "Rule 36 serves two vital purposes, both of which are designed to reduce trial time.

27  Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT 28      4

PAGE 315

1    from the case, and secondly, to narrow the issues by eliminating those that can be." The Advisory

2    Committee Notes to the 1970 Amendment to Rule 36; <u>see also</u> <u>Asea, Inc. v. Southern Pac.</u>

3    <u>Transp. Co.</u>, 669 F.2d 1242, 1245 (9th Cir. 1981) ("The purpose of Rule 36(a) is to expedite trial

4    by establishing certain material facts as true and thus narrowing the range of issues for trial.").

5        The Advisory Committee Notes to the 1970 Amendment to Rule 36 provide the following

6    additional guidance:

> As revised, the subdivision provides that a request may be made to admit
> any matters within the scope of Rule 26(b) that relate to statements or opinions of
> fact or of the application of law to fact. It thereby eliminates the requirement that
> the matters be "of fact." This change resolves conflicts in the court decisions as
> to whether a request to admit matters of "opinion" and matters involving "mixed
> law and fact" is proper under the rule. . . .
>
> *        *        *
>
> Not only is it difficult as a practical matter to separate "fact" from
> "opinion," see 4 *Moore's Federal Practice* ¶36.04 (2d ed. 1966); cf. 2A Barron &
> Holtzoff, *Federal Practice and Procedure* 317 (Wright ed. 1961), but an
> admission on a matter of opinion may facilitate proof or narrow the issues or both.
> An admission of a matter involving the application of law to fact may, in a given
> case, even more clearly narrow the issues. For example, an admission that an
> employee acted in the scope of his employment may remove a major issue from
> the trial. In *McSparran v Hanigan*, [225 F. Supp. 628 (E.D. Pa. 1963)], plaintiff
> admitted that "the premises on which said accident occurred, were occupied or
> under the control" of one of the defendants, 225 F.Supp. at 636. This admission,
> involving law as well as fact, removed one of the issues from the lawsuit and
> thereby reduced the proof required at trial. The amended provision does not
> authorize requests for admissions of law unrelated to the facts of the case.

17   1970 Advisory Committee Notes to Rule 36, Fed.R.Civ.P.

18          <u>Requests For Admission re Copyright Registrations (Nos. 192, 193, 199,</u>

19       <u>200, 206, 207, 213, 214, 222-224, 226, 228, 230, 232, 234, 236, 238, and 240)</u>

20       Mattel's requests for admission regarding copyright registrations are written in essentially

21   the same format. For example, Request No. 192 asks MGA to "[a]dmit that the work registered

22   as VA 1-090-287 is a derivative of the work registered as VA 1-218-487." Kidman Decl., Ex. 11.

23   Request No. 193 asks MGA to "[a]dmit that the work registered as VA 1-090-287 is substantially

24   similar to the work registered as VA 1-218-487." <u>Id.</u>

25       Rule 36 plainly states that requests for admission may "relate to statements or opinions of

26   fact or the application of law to fact." Mattel's requests for admission fall within this permissible

27

28

EXHIBIT 28

PAGE 316

5

1    category. Courts have required parties to answer requests for admission similar to Mattel's

2    requests. For example, in <u>McSparran</u>, <u>supra</u>, the plaintiff admitted that "the premises on which

3    said accident occurred, were occupied or under the control" of one of the defendants.  In

4    <u>Marchand v. Mercy Med. Ctr.</u>, 22 F.3d 933, 937 (9th Cir. 1994), the Ninth Circuit found that a

5    request to admit that defendant's care and treatment of plaintiff failed to comply with the

6    "applicable standards of care" was permissible.  In <u>First Options of Chicago, Inc. v. Wallenstein</u>,

7    1996 WL 729816 (E.D. Pa. 1996), the court ordered defendants to answer requests to admit that

8    they "owed a fiduciary duty" to certain creditors to preserve corporate assets. <u>Id.</u> at *3.  In

9    <u>Treister v. PNC Bank</u>, 2007 WL 521935 (S.D. Fla. 2007), the court found that a request for

10   defendant to admit that it was not required to provide plaintiffs with copies of cancelled checks

     drawn on their accounts "clearly calls for an application of law to fact." <u>Id.</u> at *2.

11          Despite the stated purpose of the 1970 amendments to Rule 36  to "resolve conflicts in the

12   court decisions as to whether a request to admit matters of 'opinion' and matters involving 'mixed

13   law and fact' is proper under the rule, there apparently continues to exist a split of authority.

14   MGA cites to several cases for the proposition that a request for admission calling for legal

15   conclusion is improper.  See <u>e.g.</u>, <u>Playboy Enterprises, Inc. v. Welles</u>, 60 F.Supp.2d 1050 (S.D.

16   Cal. 1999) (defendant allowed to object to requests asking her to admit she was a public figure

17   and admit that a contract provision required her to obtain permission from plaintiff before using

18   "Playmate of the Year" because the requests asked for a conclusion of law); <u>Tulip Computers</u>

19   <u>Int'l. B.V. v. Dell Computer Corp.</u>, 210 F.R.D. 100, 108 (D. Del. 2002) ("Moreover, requests that

20   seek legal conclusions are not allowed under Rule 36."); <u>Border Collie Rescue, Inc. v. Ryan</u>, 418

21   F.Supp.2d 1330, n. 12 (M.D. Fla. 2006) (requests asking defendant to admit that he defamed

22   plaintiffs and "knowingly and maliciously published false statements of fact" concerning

23   plaintiffs deemed improper); <u>Tuvalu v. Woodford</u>, 2006 WL 3201096, at *7 (E.D. Cal. 2006)

24   ("[R]equests for admission should not be used . . . to demand that the other party admit the truth

25   of a legal conclusion, even if the conclusion is attached to operative facts. . ." ) (*quotations*

26   *omitted*); and <u>Fuentes v. Knowles</u>, 2007 WL 1946619, at *2 (E.D. Cal. 2007) (requests asking

27   defendant to admit that prisoners should be provided access to medical care, that defendant should

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT   28

PAGE   317

6

1  not delay access to care, and that defendant was aware of his responsibilities under certain

2  caselaw and statute were held improper as seeking "interpretations of law which is outside the

3  scope of defendant's knowledge" and legal conclusions).  None of these cases are binding

4  authority, however.  Furthermore, without knowing all of the factual circumstances that led to the

5  decisions in each of the cases cited above, it appears that most of them are inconsistent with the

6  plain language of Rule 36 and the guidelines set forth in the Advisory Committee Notes.  See e.g.,

7  Playboy Enterprises, Inc., supra; Tulip, supra, Border Collie Rescue, Inc., supra.  Rule 36

8  expressly allows requests for admission relating to "the application of law to fact."  Fed.R.Civ.P.

9  36(a).  Furthermore, the Advisory Committee Notes provide two examples of such requests:  an

10  admission that an employee acted in the scope of his employment; and an admission that the

11  premises on which an accident occurred were occupied or under the control of a defendant.  The

12  Advisory Committee Notes make it clear that these types of requests calling for legal conclusions

13  are permissible, and in doing so, distinguish the requests that call for admissions of law unrelated

    to the facts of the case, which are not authorized.

14       Mattel's requests for admission regarding copyright registrations do not ask for pure

15  conclusions of law unrelated to the facts of the case, and MGA does not contend otherwise.  Each

16  of Mattel's requests relates to the copyrighted works allegedly owned by MGA.  Furthermore,

17  these requests are clearly designed to help narrow the issues for trial, which is a major purpose of

18  Rule 36.  See 1970 Advisory Committee Notes to Rule 36, Fed.R.Civ.P.  Therefore, MGA's

19  "legal conclusion" objection is overruled.

20       MGA's privilege and work product objections are also without merit.  The fact that MGA

21  may need to consult with counsel to respond to the requests does not make the response

22  privileged.  To hold otherwise would effectively gut the provision of Rule 36 authorizing requests

23  that call for the application of law to fact.  See also Convergent Business Systems, Inc. v.

24  Diamond Reporting, Inc., 1989 WL 92038, at *1 (E.D.N.Y. 1988) ("Seeking the facts and

25  documents which support a particular allegation in a complaint violates neither the attorney-client

26  or work product privileges.").

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 28

PAGE 318

7

1        Mattel's motion is granted as to the requests for admission regarding copyright

2   registrations.

3

4        Requests for Admission re MGA's Alleged Statements To The Press (Nos. 186-190)

5        The requests for admission regarding MGA's alleged statements to the press seek relevant

6   information within the scope of Rule 26(b)(1), Fed.R.Civ.P.  In its counterclaims, Mattel alleges

7   that MGA made false statements about Mattel's MyScene My Bling Bling products.  Mattel

8   further alleges that "[s]uch conduct is not an isolated incident.  MGA and Larian, in an effort to

9   gain an unfair advantage, repeatedly issued false and misleading press releases."  Mattel's

10  Counterclaims, ¶81, Kidman Decl. Ex. 7.  Request Nos. 186-190 are directly relevant to MGA

11  and Larian's allegedly ongoing conduct.  These requests for admission are also relevant to support

12  Mattel's defense against MGA's unfair competition claim.  Mattel intends to show that the public

13  report regarding MGA's alleged "sweatshop" labor practices may have caused or contributed to

14  the decline in sales, profits, and dilution of goodwill and reputation allegedly caused by Mattel's

    anticompetitive conduct.

15       Therefore, MGA's objection based upon relevancy is overruled and MGA is ordered to

16  admit or deny Request Nos. 186-190 consistent with Rule 36(a), Fed.R.Civ.P.

17                                IV. CONCLUSION

18       For the reasons set forth above, Mattel's motion to compel is granted.  MGA shall provide

19  responses to the requests for admission no later than August 30, 2007.  Mattel's motion for

20  sanctions is denied.

21       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

22  Master, Mattel shall file this Order with the Clerk of Court forthwith.

23

24  Dated:  August 20 , 2007

25

26                                        HON. EDWARD A. INFANTE (Ret.)
                                          Discovery Master
27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT 28                                                    8

PAGE 319

# Exhibit 29

## CONFORMED COPY

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

10

11  CARTER BRYANT, an individual,         CASE NO. C 04-09049 SGL (RNBx)
                                          JAMS Reference No. 1100049530
12        Plaintiff,

13     v.                                 Consolidated with
                                          Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation, Case No. CV 05-2727

15        Defendant.                      **ORDER GRANTING IN PART AND
                                          DENYING IN PART MATTEL'S
16                                        MOTION TO COMPEL MGA TO
                                          PRODUCE WITNESSES PURSUANT
17                                        TO THIRD NOTICE OF DEPOSITION
                                          UNDER RULE 30(b)(6); DENYING
18                                        REQUEST FOR SANCTIONS**

19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22

23                         I. INTRODUCTION

24        On July 13, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Compel MGA to

25  Produce Witnesses Pursuant to Mattel's Third Notice of Deposition Under Rule 30(b)(6) and for

26  Sanctions." Specifically, Mattel seeks an order compelling MGA Entertainment, Inc. ("MGA")

27  to produce witnesses on Topics 1-3, 6-8, 9 and 11-13 of Mattel's Third Rule 30(b)(6) Notice. On

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                    1

FILED
2007 SEP 26  PM 2:28
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

EXHIBIT 29

PAGE 320

1  July 31, 2007, MGA submitted an opposition brief.  On August 6, 2007, Mattel submitted a reply

2  brief.  The matter was heard on September 24, 2007.  Having considered the motion papers and

3  the comments of counsel, Mattel's motion is granted in part and denied in part, and the request for

4  sanctions is denied.

5                                           II. BACKGROUND

6          Mattel first served a Rule 30(b)(6) Notice of Deposition of MGA in February of 2005,

7  which specified eight topics for deposition.  Mattel served a Second Notice of Deposition of

8  MGA in February of 2007, which specified forty-six topics for deposition.  On June 5, 2007,

9  Mattel served a Third Notice of Deposition of MGA (the "Third Notice"), which is the subject of

10  the present motion to compel.  The Third Notice specifies sixteen topics for deposition.  On June

11  29, 2007, MGA served objections to the Third Notice, and on July 5, 2007, the parties met and

12  conferred.  The parties were not able to resolve their disputes regarding four subject matters: hard

13  drives and other storage devices (Topics 1-3); prior inconsistent statements to the press (Topics 6-

14  8); "test projects" for MGA (Topic 9); and payments MGA made to Isaac Larian, Farhad Larian

15  and Morad Zarabi (Topic 11-13).  The topics at issue are set forth below.

16                                  Hard Drives and Other Storage Devices

17          1.      The IDENTITY, current or last known location, and disposition of

18          each STORAGE DEVICE that each of the following PERSONS has used to

19          create, generate, prepare, draft, send and/or receive any DOCUMENT or

20          DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or

21          ANGEL at any time since January 1, 1999, including without limitation the date

22          of acquisition and the date of disposition of each STORAGE DEVICE:  Isaac

23          Larian, Farhad Larian, Paula Garcia, BRYANT, Kami Gillmour, Veronica

24          Marlow, Mercedeh Ward, Margaret Hatch-Leahy, Jennifer Maurus, Judy Rich,

25          Ninette Pembleton, Kerrie Brode, Victoria O'Connor, Aileen Storer, Charles

26          O'Connor, Helene Bartels, Colleen O'Higgins, Vivian Matt, Maureen Mullen,

27          Rachel Harris, Barbara Malcolm, David Dees, Ben Ton, Dave Malacrida.

28

1       2.     The IDENTITY, current or last known location, and disposition of

2   each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of

3   this Notice, including without limitation the date of creation and the date of

4   disposition of each such backup or copy.

5       3.     YOUR search for and production of DOCUMENTS and DIGITAL

6   INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this

7   Notice.

8   <center>Prior Inconsistent Statements to the Press</center>

9       6.     YOUR statements to Christopher Palmeri in connection with the

10  Business Week article entitled "To Really Be A Player, Mattel Needs Hotter

11  Toys," published on or about July 28, 2003, including without limitation in

12  connection with the statement that Isaac Larian "got the idea for Bratz after seeing

13  his own kids run around in navel-bearing tops and hip-huggers."

14      7.     YOUR statements to Denise I. O'Neal in connection with the

15  Chicago Sun-Times article entitled "Bratz Packers Are What's Cool in Doll

16  World," published on or about March 5, 2004, including without limitation in

17  connection with the statements that MGA's "creative team decided the name

18  should be catchy and not have more than six letters. Keeping with today's trend

19  of making names more 'cool' by changing the spelling, MGA executives decided

20  to replace the 's' with a 'z'"

21      8.     YOUR statements to Jeff Weiss in connection with the San

22  Fernando Valley Business Journal article entitled "Immigrant's Creative

23  Company Shakes Up Toy Industry," published on or about March 29, 2004,

24  including without limitation in connection with the statement that "[i]t was

25  Jason's idea for Bratz."

26  <center>"Test Projects" for MGA</center>

27      9.     The IDENTITY of each PERSON who YOU had perform, or who

28

1   YOU requested, asked or solicited to perform, any "test project" in advance of or

2   in consideration of employment by YOU since January 1, 1995, including without

3   limitation the IDENTITY of each such PERSON who was a MATTEL employee

4   at the time.

5       Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi

6          11.     Payments of money or any other item of value that YOU have

7   made to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac

8   Larian since January 1, 1999, including without limitation (a) the amounts of such

9   payment and the equivalent dollar value of each of item of value, (b) the dates of

10   such payment, (c) the IDENTITY of each recipient of such payment, (d) the

11   IDENTITY of each bank or financial institution account to which such payment

12   was made and (e) the reasons for each such payment.

13          12.     Payments of money or any other item of value that YOU have

14   made to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad

15   Larian since January 1, 1999, including without limitation (a) the amounts of each

16   such payment and the equivalent dollar value of each of item of value, (b) the

17   timing of each such payment, (c) the IDENTITY of each recipient of each such

18   payment, (d) the IDENTITY of each bank or financial institution account to

19   which such payment was made and (e) the reasons for each such payment.

20          13.     Payments of money or any other item of value that YOU have

21   made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad

22   Zarabi since January 1, 1999, including without limitation (a) the amounts of each

23   such payment and the equivalent dollar value of each item of value, (b) the timing

24   of each such payment, (c) the IDENTITY of each recipient of such payment,

25   (d) the IDENTITY of each bank or financial institution account to which such

26   payment was made and (e) the reasons for each such payment.

27   Zeller Decl., Ex. 23.

28

EXHIBIT   29

PAGE   32.3

4

1    Mattel seeks an order compelling MGA to produce witnesses to testify on Topics 1-3, 6-8,

2    9 and 11-13, and overruling all of MGA's objections and limitations.  Mattel contends that the

3    testimony it seeks is relevant, not unduly burdensome, and not otherwise objectionable as

4    cumulative or duplicative of any other deposition testimony already given in the case.

5    MGA contends that Mattel's Third Notice is invalid because Mattel failed to obtain leave

6    of court to take MGA's deposition after having previously deposed several 30(b)(6) designees.

7    MGA contends that Rule 30(a)(2)(B), Fed.R.Civ.P., requires Mattel to establish good cause for

8    examining MGA any further.  MGA further contends that Mattel has not established the requisite

9    good cause, and instead improperly has attempted to shift the burden of proof to MGA to justify

10   its objections to the Third Notice.  Lastly, MGA contends that Mattel has had many opportunities

11   to obtain, and in many cases has already obtained, the information it now moves to compel.

## III. STANDARDS

13   Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

14   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

15   party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

16   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

17   Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court shall limit the frequency or extent of

18   use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably

19   cumulative or duplicative, or is obtainable from some other source that is more convenient, less

20   burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by

21   discovery in the action to obtain the information sought; or (iii) the burden or expense of the

22   proposed discovery outweighs its likely benefit, taking into account the needs of the case, the

23   amount in controversy, the parties' resources, the importance of the issues at stake in the

24   litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

25   26(b)(2)(C).

26   Pursuant to Rule 30, Fed.R.Civ.P., a party may take the testimony of any person, including

27   a party, by deposition upon oral examination without leave of court, except as provided in Rule

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 29      5

PAGE 324

1  30(a)(2), Fed.R.Civ.P.  In particular, Rule 30(a)(2) specifies that a party must obtain leave of

2  court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2),

3  Fed.R.Civ.P., if "the person to be examined already has been deposed in the case."  Fed.R.Civ.P.

4  30(a)(2)(B).

5                                    IV. DISCUSSION

6          As a threshold matter, the parties dispute whether Rule 30(a)(2)(B), Fed.R.Civ.P., applies

7  to depositions taken pursuant Rule 30(b)(6), Fed.R.Civ.P.  There is caselaw to support each

8  party's position.  See e.g. Ameristar Jet Starter, Inc. v. Signal Composites, Inc., 244 F.3d 189 (1st

9  Cir. 2001) (second Rule 30(b)(6) subpoena issued without leave of court was invalid); In re

10  Sulfuric Acid Antitrust Litig., 2005 WL 1994105 (D. Ill. Aug. 19, 2005) (holding that second

11  Rule 30(b)(6) subpoena issued without leave of court was invalid); Innomed Labs, LLC v. Alza

12  Corp., 211 F.R.D. 237 (S.D. N.Y. 2002) (quashing overbroad 30(b)(6) subpoena issued without

13  leave of court); Quality Aero Tech., Inc. v. Telemetrie Elektronik, 212 F.R.D. 313, 319 (E.D.

14  N.C. 2002) (holding that Rule 30(a)(2)(B) does not apply to Rule 30(b)(6) depositions).  For

15  purposes of the present motion, however, it is unnecessary to resolve this conflict in the law

16  because the debate is purely academic and inconsequential.  As Mattel has requested, Mattel's

17  motion is treated herein as a motion for leave to serve an additional 30(b)(6) notice with

18  additional topics.  In evaluating the appropriateness of the topics, it is Mattel's burden to

19  demonstrate that there is good cause for such discovery (see e.g. Boston Scientific Corp. v. Cordis

20  Corp., 2004 WL 1945643 (N.D.Cal. 2004)), applying the principles stated in Rule 26(b)(2),

21  Fed.R.Civ.P.

22                      Hard Drives and Other Storage Devices (Topics 1-3)

23          Topic 1 seeks information regarding the location and disposition of computer hard drives

24  or other storage devices used by specified MGA employees or contractors that contain or

25  contained documents related to the Bratz or Angel projects.  Topic 2 seeks the identification and

26  last known location of any backup, copy or image of the hard drives or storage devices identified

27  in Topic 1.  Topic 3 seeks information regarding MGA's search for and production of documents

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT __29__

PAGE __325__

1   and digital information from the hard drives and storage devices referenced in Topic 1.

2         MGA objected to Topics 1-3 as overbroad, unduly burdensome, vague, ambiguous,

3   irrelevant, and not reasonably calculated to lead to admissible evidence.  MGA also objected to

4   Topics 1-3 to the extent that the information sought is obtainable through other more convenient,

5   less burdensome and less expensive means.  Lastly, MGA objected to Topics 1-3 as unreasonably

6   cumulative and duplicative of information already provided by Ken Lockhart, Vice President and

7   Chief Information Officer for MGA.

8         Topics 1-3 unquestionably seek information that is relevant within the meaning of Rule

9   26(b)(1), Fed.R.Civ.P., which specifically authorizes discovery regarding any matter, not

10  privileged, that is relevant to the claim or defense of any party, including "the existence,

11  description, nature, custody, condition, and location of any books, documents or other things."  A

12  portion of the discovery sought, however, is unreasonably cumulative and duplicative of

13  information already provided by Mr. Lockhart.  MGA designated Mr. Lockhart as a 30(b)(6)

14  witness to testify about MGA's retention, destruction and data back-up policies, MGA's digital

15  information systems and application software, employees' electronic messaging systems, and

16  MGA's policies regarding the use of transportable media.  Mr. Lockhart testified about the

17  location and disposition of MGA employees' hard drives and storage devices in general.

18        Mattel contends that Topics 1-3 differ from the topics in the Second Notice and the

19  testimony previously given by Mr. Lockhart in that Mattel now seeks information about the

20  locations and dispositions of hard drives used by 24 named individuals.  Mattel contends that the

21  testimony it seeks will enable it to assess MGA's production, including whether any documents

22  requested or compelled by the Court were destroyed, not collected or otherwise made unavailable

23  to Mattel.  Mattel's Reply at p.7.

24        Although Mattel's stated objective for seeking testimony regarding Topics 1-3 may be

25  legitimate, the burden and expense of a Rule 30(b)(6) deposition is not justified under the

26  circumstances of this case.  Mattel has accused MGA of obstructing discovery, and in particular

27  withholding Bryant's computer.  There is no evidence, however, to suggest that MGA has refused

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 29

PAGE 326

1  or failed to search for and produce responsive documents located on the hard drives of the other

2  individuals named in Topic 1.  It is burdensome and expensive to prepare a witness to testify

3  about the locations and dispositions of hard drives used for 24 different individuals. The likely

4  benefit of undergoing such a burden and expense is doubtful.  Furthermore, there are other less

5  burdensome and less expensive means of assessing whether MGA has complied with its

6  discovery obligations, including for example, document requests and interrogatories.  Therefore,

7  Mattel's motion is denied as to Topics 1-3.

8  <u>Prior Inconsistent Statements to the Press (Topics 6-8)</u>

9      Topics 6-8 seek testimony regarding three public statements made by Isaac Larian

10  regarding who conceived of Bratz.  MGA objected to Topics 6-8 as irrelevant and not reasonably

11  calculated to lead to admissible evidence.  MGA also objected to Topics 6-8 to the extent that the

12  information sought is obtainable through other more convenient, less burdensome and less

13  expensive means.  Further, MGA objected to Topics 6-8 as unreasonably cumulative and

14  duplicative of information already provided by MGA and/or Carter Bryant.  MGA also objected

15  to a deposition on these Topics "to the extent that the statements referenced above were not made

16  by MGA as a corporate actor and thus they are not the appropriate subject of a 30(b)(6)

17  designation." Zeller Decl., Ex. 24.

18      Mattel contends that Topics 6-8 are the proper subject of a Rule 30(b)(6) deposition

19  because each of the statements identified therein was made by MGA's Chief Executive Officer,

20  Isaac Larian.  Mattel acknowledges that it already deposed Isaac Larian regarding one of the

21  articles identified in Topics 6-8, but contends that it is not attempting to re-depose him.  Rather,

22  Mattel contends that it is entitled to elicit testimony that will bind the corporation so that it will

23  not be "sandbagged" at trial.  Mattel's Reply at p.6.

24      MGA accuses Mattel of misusing the 30(b)(6) procedure when Mattel knows that Isaac

25  Larian is the person who should be, and already has been, deposed about the statements identified

26  in Topics 6-8.  MGA also contends that Mattel opted to limit its examination of Isaac Larian to

27  one article, and that Mattel's failure to fully question Isaac Larian in no way justifies deposing

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT  29

PAGE  327

1   MGA now. MGA also contends that Mattel could avail itself of other discovery methods, such as

2   interrogatories or requests for admission, to obtain further information about the publications

3   identified in Topics 6-8.

4        Topics 6-8 seek information relevant to the central issue in the case: who conceived of

5   Bratz. Mattel's use of the 30(b)(6) procedure is justified in order to obtain testimony that will

6   bind the corporation. The testimony Mattel now seeks is not unreasonably cumulative or

7   duplicative of testimony it has already sought from Isaac Larian because Mattel previously

8   questioned Isaac Larian about only one of the articles identified in Topics 6-8. Further, the likely

9   benefit to Mattel of testimony from Isaac Larian (or another corporate designee) regarding Topics

10  6-8 outweighs the burden and expense to MGA, given the importance of the testimony Mattel

11  seeks. Mattel's motion is granted as to Topics 6-8.

12                          "Test Projects" for MGA (Topic 9)

13       In Topic 9, Mattel seeks the identity of each person MGA had perform or who MGA

14  requested, asked or solicited to perform, any "test project" in advance of or in consideration of

15  employment by MGA since January 1, 1995. MGA objected to Topic 9 as irrelevant, not

16  reasonably calculated to lead to the discovery of admissible evidence, overbroad, unduly

17  burdensome, and unreasonably cumulative and duplicative. MGA also objected to Topic 9 as

18  vague and ambiguous, particularly with respect to the term "test project." MGA also objected to

19  Topic 9 to the extent that the information sought is obtainable through other, more convenient,

20  less burdensome and less expensive means. MGA also objected to Topic 9 as seeking

21  confidential, proprietary, and commercially sensitive information with no relevance to the

22  litigation.

23       When Carter Bryant was deposed by Mattel, he testified that he "did sort of a tryout kind

24  of a project for" MGA. Zeller Decl., Ex. 29 at 9:19-20. He also referred to this "tryout" project

25  as a "test assignment." Id. at 515-516. In light of Bryant's testimony, Mattel's stated purpose of

26  Topic 9 is to "obtain information that will refute MGA and Bryant's assertions that Bryant's

27  working for MGA while employed by Mattel was no different than a supposedly standard

28

1   industry practice of having candidates for creative positions make artwork as part of the job

2   interview." Mattel's Motion at p.22.

3       MGA acknowledges that Mattel provided a definition for the phrase "test assignment" in

4   its motion papers. MGA's Opposition at p.10. MGA nevertheless contends that Topic 9 remains

5   objectionable as overbroad, reasoning that it would require MGA to provide information "with

6   regard to how it proceeded with hiring virtually every single employee hired since 1995."

7   MGA's Opposition at p.9. MGA also contends that it would be unduly burdensome to require

8   MGA to have a designee review and potentially memorize information about every single person

9   who has applied for a job at MGA since 1995, particularly when Bryant only began working for

10  MGA in 2000. MGA contends that a contention interrogatory is more appropriate than a 30(b)(6)

11  deposition to obtain the information called for in Topic 9.

12      Topic 9 seeks information relevant to one of MGA and Bryant's defenses, namely their

13  claim that Bryant's work for MGA while employed by Mattel was no different than a standard

14  industry practice of having candidates for creative positions make artwork as part of the job

15  interview. Topic 9, however, is objectionable because it is overbroad and burdensome. In

16  particular, Topic 9 is overbroad in terms of the specified time frame because Bryant did not begin

17  working at MGA until the year 2000. Topic 9 is also objectionable because the information

18  sought is more appropriately obtained through a contention interrogatory, which would be

19  significantly less burdensome and less expensive than a 30(b)(6) deposition. Therefore, Mattel's

20  motion is denied as to Topic 9. In lieu of taking a 30(b)(6) deposition on Topic 9, Mattel is

21  granted leave to serve a contention interrogatory regarding Topic 9 limited to the years 1998

22  through 2004.

23  Payments MGA Made to Isaac Larian, Farhad Larian and Morad Zarabi (Topics 11-13)

24      In Topics 11-13, Mattel seeks information regarding payments made by MGA to Isaac

25  Larian (Topic 11), Farhad Larian (Topic 12), and Morad Zarabi (Topic 13). MGA objected to

26  these Topics as irrelevant, not reasonably calculated to lead to the discovery of admissible

27  evidence, overbroad, unduly burdensome, and unreasonably cumulative and duplicative. MGA

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT 29
PAGE 329

1    also objected to Topics 11-13 to the extent that the information sought is obtainable through

2    other, more convenient, less burdensome and less expensive means.  MGA also objected to

3    Topics 11-13 as seeking confidential, proprietary, and commercially sensitive information with no

4    relevance to the litigation.

5         Mattel explains that Morad Zarabi arbitrated a dispute between Isaac Larian and Farhad

6    Larian that involved the timing of the creation of Bratz.  More specifically, Farhad Larian claimed

7    that Isaac Larian concealed from him MGA's development with Carter Bryant of Bratz dolls and

8    alleged that Bryant began working with MGA during a time Bryant was employed by Mattel.

9    Mattel considers all three individuals involved in the arbitration as witnesses in this litigation, and

10   therefore seeks information that may establish their bias.  Mattel also emphasizes that Isaac

11   Larian is a party to the litigation, and that payments made by MGA to him are relevant to Mattel's

12   claim for punitive damages, and may be used as impeachment evidence.  Lastly, although Mattel

13   acknowledges that it deposed Isaac Larian regarding payments he received from MGA, Mattel

14   contends that it is entitled to testimony from MGA to corroborate or refute his testimony.

15        MGA contends that Topics 11-13 are not relevant to this lawsuit.  In particular, MGA

16   objects to Topics 12 and 13 as seeking "private financial records of persons who are neither

17   parties nor witnesses in this action, and whose only connection is knowing people involved in the

18   lawsuit."  MGA's Opposition at p. 13.  With regard to payments to Isaac Larian, MGA contends

19   that Mattel already had the opportunity to ask him about payments during his deposition.  MGA

20   also contends that Mattel is not entitled to conduct discovery regarding Isaac Larian's net worth at

21   this time.  Even if Mattel is entitled to conduct such discovery, MGA contends that payments

22   made to him would not establish his net worth because they represent only one of many sources

23   of income and do not account for his other assets and liabilities.

24        MGA's payments to Isaac Larian and Farhad Larian are relevant to the claims and

25   defenses in the case.  Payments to Isaac Larian and Farhad Larian may also show possible bias

26   and be used for impeachment purposes.  Moreover, MGA's payments to Isaac Larian may be

27   relevant to Mattel's claim for punitive damages.  Payments to Isaac Larian are a component of his

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                    11

EXHIBIT ___29___

PAGE ___330___

1  net worth, even if they represent one source of income. The burden of producing such information

2  does not outweigh its relevance, taking into consideration the circumstances of this case.

3  Furthermore, there is no stay on discovery pertaining to punitive damages. Accordingly, Mattel's

4  motion is granted as to Topics 11 and 12.

5       In contrast, MGA's payments to Morad Zarabi are irrelevant. His only connection to this

6  litigation appears to be with the arbitration proceedings. Any potential relevance of MGA's

7  payments to Morad Zarabi is outweighed by the burden and the intrusion into his private financial

8  affairs. Mattel's motion is denied as to Topic 13.

9                          V. CONCLUSION

10      For the reasons set forth above, it is hereby ordered as follows:

11      1.     Mattel's motion to compel is granted as to Topics 6-8, 11 and 12.

12      2.     Mattel's motion to compel is denied as to Topics 1-3, 9 and 13. In lieu of taking a

13  deposition on Topic 9, Mattel is hereby granted leave to serve a contention interrogatory

14  regarding Topic 9 that is limited to the years 1998 through 2004.

15      3. Mattel's request for sanctions is denied.

16  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

17  Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20  Dated: September _25_, 2007

21                                    HON. EDWARD A. INFANTE (Ret.)
                                      Discovery Master
22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT __29__

PAGE __331__

# Exhibit 30



1 | THOMAS J. NOLAN (Bar No. 66992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 300 South Grand Avenue
Los Angeles, California 90071-3144
3 | Telephone:  (213) 687-5000
Facsimile:  (213) 687-5600
4 | E-mail:   tnolan@skadden.com

5 | RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | 4 Embarcadero Center, 38th Floor
San Francisco, California  94111-5974
7 | Telephone:  (415) 984-6400
Facsimile:  (415) 984-2698
8 | Email:      rkennedy@skadden.com

9 | Attorneys for MGA Entertainment, Inc.,
MGA Entertainment (HK) Limited,
10 | MGAE De Mexico, S.R.L. DE C.V., and
Isaac Larian

11 |

12 | **UNITED STATES DISTRICT COURT**

13 | **CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

14 |

15 | CARTER BRYANT, an individual    ) | CASE NO. CV 04-9049 SGL (RNBx)

16 |            Plaintiff,    ) | Consolidated with Case No. 04-9059 and
Case No. 05-2727

17 |     v.    ) | **DISCOVERY MATTER**

18 | MATTEL, INC., a Delaware    ) | **[To be heard by Discovery Master**
corporation    ) | **Hon. Edward A. Infante (Ret.)]**

19 |

20 |            Defendant.    ) | **[PROPOSED] ORDER RE**
**MATTEL, INC.'S MOTION TO**

21 | Consolidated with MATTEL, INC. v.    ) | **ENFORCE THE COURT'S ORDER**
BRYANT and MGA    ) | **OF MAY 15, 2007 TO COMPEL**

22 | ENTERTAINMENT, INC. v.    ) | **MGA TO PRODUCE COMPELLED**
MATTEL, INC.    ) | **DOCUMENTS IN UNREDACTED**

23 |    ) | **FORM AND FOR SANCTIONS**

24 |

25 |

26 |

27 |

28 |

12-19

EXHIBIT 30

PAGE 332

1     Mattel, Inc.'s Motion to Enforce the Court's Order of May 15, 2007 to Compel

2   MGA to Produce Compelled Documents in Un-Redacted Form, and for Sanctions

3   came on for hearing before me on December 14, 2007. The matter having been fully

4   briefed and argued, and good cause appearing, IT IS HEREBY ORDERED THAT:

5     The motion is granted in part and denied in part. The Court finds that MGA

6   violated the May 15 Order by producing documents containing information redacted

7   for reasons other than privilege, and that MGA's failure to comply with the May 15

8   Order was not justified. MGA, or its prior counsel, is to pay Mattel monetary

9   sanctions in the amount of $3,500 on or before December 31, 2007. The Court

10   further finds that MGA has now achieved substantial compliance with the May 15

11   Order's requirement that it produce its documents in unredacted form. MGA's

12   proposal that when Mattel's counsel finds a redacted document, Mattel should so

13   inform MGA's counsel, who will then advise whether the redactions are proper

14   because they are based on a claim of privilege or, if they are not, promptly produce a

15   properly redacted copy of the document, is reasonable and shall be followed. The

16   motion is denied in all other respects.

17     IT IS SO ORDERED.

18

19   Dated: _12-19-2007_, 2007

20                                    Hon. Edward A. Infante (Ret.)

21                                    Discovery Master

22

23

24

25

26

27

28

<div align="center">1</div>

[PROPOSED] ORDER RE MATTEL'S MOT. TO ENFORCE COURT'S ORDER OF MAY 15, 2007
202387.02-San Francisco Server 1A - MSW

EXHIBIT ___30___

PAGE ___333___

# Exhibit 31

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12                                          CASE NO. C 04-09049 SGL (RNBx)
     CARTER BRYANT, an individual,           JAMS Reference No. 1100049450
13
                  Plaintiff,
14                                          Consolidated with
          v.                                Case No. CV 04-09059
15                                          Case No. CV 05-2727
     MATTEL, INC., a Delaware corporation,
16                                          **ORDER GRANTING MATTEL'S**
                  Defendant.                **MOTION TO COMPEL MGA TO**
17                                          **PRODUCE DOCUMENTS BEARING**
                                            **BATES NOS. MGA 0800973-0800974**
18                                          **AND MGA 0829296-0829305**

19   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
20   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
21

22

23

24                        I. INTRODUCTION

25        Mattel, Inc. ("Mattel") submitted a "Motion to Compel Withheld MGA Documents That

26   Prove MGA Was Developing Bratz as Early as June 2000." Specifically, Mattel seeks an order

27   compelling MGA to produce documents bearing Bates Nos. MGA 0800973-0800974 and MGA

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                    12-10

EXHIBIT   31
PAGE   334

0829296 – 0829305, which Mattel characterizes as "smoking gun" documents that prove MGA was developing Bratz as early as June 2000.  MGA contends that the disputed documents were inadvertently produced and are protected by the attorney-client privilege.  At MGA's request, Mattel destroyed the disputed documents.  Mattel, however, disputes MGA's claims of privilege and presently seeks an order compelling production of the disputed documents.  MGA submitted an opposition together with a supporting declaration, and lodged the disputed documents for an *in camera* review.  Mattel submitted a reply.  The matter was heard on December 14, 2007.

## II. BACKGROUND

Mattel's claims in this case include allegations that "Carter Bryant [hereinafter "Bryant"] conceived, created and developed Bratz designs while he was employed by Mattel as a doll designer."  Mattel alleges that "using Mattel resources and while employed by Mattel, Bryant took steps to assist MGA to produce dolls," and that he "concealed his Bratz work from Mattel and wrongfully sold Bratz to MGA while he was a Mattel employee."  Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, ¶¶2, 26, attached as Ex. 3 to Proctor Decl.  Mattel alleges that "as a result of the efforts of Bryant and other Mattel employees working on Bratz (which was done without Mattel's knowledge), the Bratz dolls had been designed and were far along in development during the time that Bryant was employed by Mattel and prior to the time that Bryant left Mattel on October 20, 2000."  Id. at Counterclaims, ¶36.  Mattel claims ownership of Bratz works created by Bryant while he was employed by Mattel, asserts that Bryant breached his duties of loyalty and fiduciary duties to Mattel, and claims that MGA aided and abetted Bryant.  Defendants dispute these allegations.

The timing of Bryant's creation and development of Bratz is a central issue in the case, and thus has been the focus of a substantial amount of discovery.  Bryant testified at his deposition that he first pitched the Bratz concept to MGA when he met Paula Garcia in August of 2000.  According to the deposition testimony of Bryant and MGA's Isaac Larian ("Larian"), Bryant met Larian for the first time in September 2000.  Larian testified that at the time of the September meeting, Bryant had names for each Bratz doll character.  Larian also testified, however, that one of the Bratz dolls, "Yasmin," was subsequently named after his daughter

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  31

PAGE  335

2

1  Jasmine.

2      Another witness, Anna Rhee, testified that Bryant asked her to paint Bratz doll heads in

3  June 2000.  Bryant, however, testified that he did not ask Ms. Rhee to paint faces for Bratz dolls

4  until November 2000.

5      In the course of discovery, MGA produced documents bearing Bates Nos. MGA 0800973-

6  0800974 and MGA 0829296-0829305 to Mattel.  On August 7, 2007, however, MGA sent Mattel

7  a letter asserting that the documents are protected by the attorney-client privilege and were

8  inadvertently produced.  Accordingly, Mattel destroyed its copies of the disputed documents and

9  so confirmed to MGA.

10      The first document in question, marked as MGA 0800973-0800974, is an internal

11  document sheet (the "Docket Sheet") from Russ, August, Kabat & Kent, trademark prosecution

12.  counsel for MGA, regarding MGA's trademark application for "Bratz."  The Docket Sheet

13  includes such information as the name of the mark, the country, the name of the registrant, the

14  application number, the application date (December 11, 2000), the registration number, the

15  registration date (December 2, 2003), the term, the date the renewal is due (December 2, 2013),

16  and the type of goods/services the mark is used for ("Dolls").  Mattel is particularly interested in

17  the notation "Dates of Use: 6-15-2000," which appears in a box entitled "Remarks" on the

18  second page of the Docket Sheet.

19      The second document in question, marked as MGA 0829296-0829305, is a facsimile

20  dated December 7, 2000 (the "Fax") from Lucy B. Arant, trademark counsel at Russ, August,

21  Kabat & Kent to Paula Garcia (then known as Paula Traentafellas) at MGA.  The first page of the

22  Fax includes a written message from Ms. Arant to Ms. Garcia stating that the Fax attaches four

23  trademark applications for Isaac Larian's review and signature.  The message also includes the

24  following remarks by Ms. Arant to Ms. Garcia:  "You indicated that all four of the applications

25  have a date of first use of June 15, 2000. Please confirm that this is correct."  The remainder of

26  the Fax consists of the "intent to use" trademark applications for "Jade," "Yasmin," "Sasha," and

27  "Bratz."  These "intent to use" trademark applications do not include any information regarding

28  "dates of use."

1    Mr. Larian executed MGA's trademark applications for "Jade," "Yasmin," "Sasha," and

2    "Bratz" on the day the Fax was sent, December 7, 2000, and the applications were filed with the

3    Patent and Trademark Office ("PTO"). MGA subsequently filed a statement of use for each of

4    the four marks that specified dates in May of 2001 for the "date of first use" and a "date of first

5    use in commerce," which are significantly different from the June 15, 2000 date noted in the

6    Docket Sheet and the Fax.

7    Mattel contends that the disputed documents, and in particular the June 15, 2000 date

8    noted therein, are relevant to its claim that Bryant secretly worked with MGA on Bratz while he

9    was employed by Mattel. Bryant was employed at Mattel from January 4, 1999 until October 20,

10   2000. Mattel also contends that the disputed documents are relevant to challenge the credibility

     of defendants' key witnesses, and to substantiate the testimony of Ms. Rhee.

11   Furthermore, Mattel contends that neither of the disputed documents are protected by the

12   attorney-client privilege. Mattel contends that the Docket Sheet is not a communication, much

13   less a communication from MGA to counsel for the purpose of obtaining legal advice. Rather, in

14   Mattel's view, the Docket Sheet is an internal law firm document that contains basic facts that are

15   not privileged.

16   Mattel also contends that even if the Docket Sheet were a privileged communication, the

17   information contained within it, including the date of first use information, is not privileged

18   because MGA did not communicate the information for the purpose of keeping it confidential.

19   Rather, Mattel contends that MGA communicated the date of first use and other information listed

20   on the Docket Sheet to its trademark attorneys so that they could use the information to register

21   MGA's marks with the PTO. Indeed, Mattel points out that after MGA submitted its "intent to

22   use" trademark applications, MGA submitted a "statement of use" for each of its marks to the

23   PTO that specified a "date of first use," although the specified "date of first use" was not June 15,

24   2000.

25   Moreover, Mattel contends that applicants for trademarks must disclose to the PTO a date

26   of first use of the mark. Mattel explains that an applicant may initially apply to register a

27   trademark by filing an application for use of a trademark or by filing an application for bona fide

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT ___3/___

PAGE ___33?___

intention to use a trademark (see 15 U.S.C. §1051(a) and (b)), but in either case the applicant must eventually disclose a "date of first use" of the mark.  A use-based application must include the date of first use of the mark at the outset.  See 15 U.S.C. §1051(a)(1).  In contrast, an "intent to use" applicant must, within six month of the PTO's issuance of notice of allowance, file a "statement that verifies the mark is in use in commerce, the date of first use in commerce, the goods and services in connection with the mark are used in commerce, and the manner in which the mark is being used."  Eastman V. Kodak Co. v. Bell & Howell Document Management Products Co., 994 F.2d 1569, 1570 (C.A. Fed. 1993).  Mattel reasons that because MGA was required to submit information about the date of first use to the PTO in order for MGA to obtain a trademark registration, MGA could not have provided the information to trademark counsel with any reasonable expectation or intention that such information would remain confidential.

Mattel contends that the Fax is not privileged because it is a communication from counsel to MGA, not vice versa, and that the attachments are non-privileged trademark applications. Mattel also contends that the Fax is not privileged because it does not reveal any confidential communication for the purpose of rendering legal advice.  Rather, Mattel reiterates that MGA was required to submit information about the date of first use to the PTO in order for MGA to obtain a trademark registration, and therefore MGA could not have expected or intended that such information remain confidential.

MGA contends that the declaration of MGA employee Paula Garcia demonstrates that the communications by MGA to its counsel regarding date of first use for the Bratz doll marks were intended to be confidential attorney-client communications for the purpose of obtaining legal advice for trademark applications.  Accordingly, MGA contends that the references to the date of first use in the Docket Sheet and the Fax are protected because the references reflect a client confidence transmitted as part of a privileged communication.

MGA contends that Ms. Arant's role was not as a "mere conduit of data" or transcriber. See e.g., Knogo Corp. v. United States, 213 U.S.P.Q. 936, 940, 1980 WL 39083 (Ct. Cl. Trial Div. 1980) (rejecting the characterization of patent attorneys as mere "conduits" to the PTO). Instead, MGA describes her role as providing what information should be included in the

EXHIBIT  31

PAGE  338

5

1   trademark applications and how it should be sent out.  MGA contends that Ms. Arant requested

2   "dates of first use" information from Ms. Garcia in connection with advising MGA regarding

3   "intent to use" trademark applications.  MGA's Opposition, pp. 5-6.  According to MGA, "dates

4   of first use" information has significance to "intent to use" applications for two reasons:  first, an

5   "intent to use" application is only appropriate for marks not already in use; and second, an

6   applicant has six months from the "date of first use" to use the mark before it is abandoned.

7   MGA emphasizes, however, that "dates of first use" are not among the facts disclosed to the PTO

8   as part of an "intent to use" application.  MGA reasons, therefore, that it is incorrect for Mattel to

9   assume that Ms. Garcia intended her communications regarding date of first use to be made

10  public.

11          MGA also contends that Mattel erroneously relies on MGA's later filings of the

12  "statement of use" documents to argue that Ms. Garcia conveyed "dates of first use" to Ms. Arant

13  with the intent that those dates would be publicly disclosed.  MGA contends that Mattel has no

14  evidentiary support for such a conclusion, and that indeed, Mattel's submissions show that

15  different attorneys from two different law firms prepared the "statement of use" filings for MGA

16  and specified different "dates of first use" for each mark than the June 15, 2000 date that Ms.

17  Garcia allegedly communicated to Ms. Arant.

18          MGA contends further that "[e]ven as to information that made its way into the 'intent to

19  use applications,' the documents generated in the preparation and drafting of applications that

20  reflect attorney-client discourse are shielded by the attorney-client privilege."  MGA's Opposition

21  at p.7.  Borrowing the reasoning in McCook Metals L.L.C. v. Alcoa Inc., 192 F.R.D. 242, 252

22  (N.D. Ill. 2000), MGA asserts that drafts "necessarily reflect the communications between a client

23  and his attorney as the attorney attempts to put forth the invention in the best light possible to

24  protect a client's legal right."  MGA also contends that attorney-client protection extends to

25  factual information provided to counsel for the purpose of providing legal advice.  See e.g. In re

26  Spalding Sports Worldwide, Inc., 203 F.3d 800 (Fed. Cir. 2000) (invention record submitted to

27  legal counsel for the purpose of obtaining legal advice was privileged); TeKnowledge Corp. v.

28  Akamai Techs., Inc., 2004 U.S. Dist. LEXIS 19109, at *6 (N.D. Cal. Aug. 10, 2004) ("technical

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT  31

PAGE  339

1    information communicated to a patent attorney does not warrant different treatment than any

2    other information communicated to an attorney in the process of obtaining legal services.").

3         As for Mattel's argument that the documents in question are "smoking gun" evidence,

4    MGA responds that the Bratz launch occurred in June 2001, at which time the marks were first

5    used. MGA asserts that "[a]ny contrary information contained in the documents in question was

6    an error that should have no bearing on whether the information is privileged." MGA's

7    Opposition, p.2. Ms. Garcia explains in her declaration that the June 15, 2000 date was

8    erroneous. MGA also contends that there could have been no "date of first use" of Bratz in June

9    2000 within the meaning of trademark law. MGA reasons that the Lanham Act requires that "first

10   use" be "actual use in commerce," or "bona fide use [] in the ordinary course of trade," (Fila

11   Sport S.p.A. v. Diadora America, Inc., 141 F.R.D. 75, 78 (D. Ill. 1991), and that Bratz was not

     being used in commerce in June 2000.

12                                  III. DISCUSSION

13        The essential elements of the attorney-client privilege are: "(1) When legal advice of any

14   kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the

15   communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the

16   client's instance, permanently protected (7) from disclosure by the client or by the legal adviser

17   (8) unless the protection be waived." United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002).

18   The burden is on the party asserting the privilege to establish all the elements of the privilege.

19   United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000). "Because the attorney-client

20   privilege has the effect of withholding relevant information from the factfinder, it is applied only

21   when necessary to achieve its limited purpose of encouraging full and frank disclosure by the

22   client to his or her attorney." Clark v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir.

23   1992).

24                  MGA has Failed to Establish that the Docket Sheet is Privileged

25        MGA argues that the attorney-client privilege extends to the Docket Sheet because it was

26   a "paper [] prepared by an attorney or at an attorney's request for the purpose of advising the

27   client, [which was] based on and would tend to reveal the client's confidential communications."

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                          EXHIBIT  3/

                                          PAGE  340

                                                                                              7

1   MGA's Opposition at p.9 (citing In re Fischel, 557 F. 2d 209,211 (9th Cir. 1977)). MGA's

2   argument, however, is unsupported by evidence.

3       The declaration of Paula Garcia fails to specifically address the Docket Sheet. Instead,

4   Ms. Garcia generalizes as follows:

5           Prior to the launch of Bratz, I communicated with outside lawyers for

6       MGA in connection with protecting MGA's trademarks for the "Bratz" line of

7       products it hoped to launch in June 2001. These communications were for the

8       purpose of obtaining legal advice from MGA's trademark counsel, including

        communications in or about December 2000 with Lucy Arant of Russ, August,

9       Kabat & Kent LLP. In general, I intended and expected my communications with

10      counsel in connection with MGA's trademark filings to be confidential, including

11      communications regarding the anticipated date of MGA's first use of the "Bratz"

12      marks.

13  Garcia Decl. In Support of MGA's Opposition, ¶3.

14      Nowhere in the evidentiary record submitted by MGA does MGA explain why or how the

15  Docket Sheet was created or maintained. MGA does not explain who created the Docket Sheet or

16  provide the source of the information contained therein. MGA has not established the requisite

17  elements of the attorney-client privilege for this specific document. See e.g. Automated

18  Technologies, Inc. v. Knapp Logistics & Automation, Inc., 382 F.Supp.2d 1372, 1375 (N.D. Ga.

19  2005) (party invoking privilege has the burden of proving "that the particular communications

20  were confidential"); Kodish v. Oakbrook Terrace Fire Protection Dist., 235 F.R.D. 447, 453

21  ("The party seeking to assert the privilege must show that the particular communication was part

22  of a request for advice or part of the advice, and that the communication was intended to be and

23  was kept confidential."). MGA has failed to carry its burden of establishing that the Docket Sheet

24  is protected by the attorney-client privilege.

                    MGA has Failed to Establish That the Fax is Privileged

25      An in camera review of the Fax confirms that the document constitutes a communication

26  between MGA and counsel regarding MGA's trademark applications. That the Fax constitutes a

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                            EXHIBIT ___31___
                                                    8
                                                            PAGE ___341___

communication between MGA and counsel, however, is insufficient without more to establish that the Fax is privileged. MGA must also establish that the Fax is a confidential communication for the purpose of rendering legal advice. See e.g. Automated Technologies, Inc. v. Knapp Logistics & Automation, Inc., supra; Kodish v. Oakbrook Terrace Fire Protection Dist., supra. MGA has failed to do so. Ms. Garcia's declaration does not even mention the Fax, much less specify that the information contained therein was intended to be confidential for the purpose of rendering legal advice. Instead, Ms. Garcia speaks in generalities about communications regarding MGA's trademark applications. In fact, the Fax does not contain any legal opinions or advice. The only attorney-client communication reflected in the Fax is the statement regarding the "date of first use."

MGA could not have had a reasonable expectation that the June 15, 2000 "date of first use" stated in the Fax would be kept confidential. As Mattel points out, in order to obtain a full trademark registration, an applicant must disclose the "dates of first use" to the PTO. This is true regardless of whether the applicant initially files an "intent to use" application or a use-based application. See 15 U.S.C. §1051(a)(2) (use-based application must include the date of first use of the mark); Eastman V. Kodak Co. v. Bell & Howell Document Management Products Co., 994 F.2d at 1570 (an "intent to use" applicant must file a "statement that verifies . . . the date of first use in commerce).

MGA relies on Ms. Garcia's declaration that she generally expected her communications with trademark counsel to be confidential. However, a client's subjective belief as to whether a communication is privileged must be reasonable in order for the attorney-client privilege to attach. Speaker ex rel. Speaker v. County of San Bernadino, 82 F.Supp.2d 1105, 1112-1113 (C.D. Cal. 2000) (client's subjective belief "should be reasonable in order to lay claim to the protections of the privilege"); Griffith v. Davis, 161 F.R.D. 687, 696 (C.D. Cal. 1995) (attorney-client privilege not applicable to information communicated to attorney where client knew information would be used in his employer's administrative investigation). Although a client's subjective belief of confidentiality is necessary for the attorney-client privilege to attach, it is not sufficient. See In re Grand Jury Subpoena Duces Tecum, 112 F.3d 910, 923 (8th Cir. 1997)

1  ("[W]e know of no authority . . . holding that a client's beliefs, subjective or objective, about the

2  law of privilege can transform an otherwise unprivileged conversation into a privileged one.").

3        Nevertheless, MGA attempts to identify confidential reasons why Ms. Garcia might have

4  communicated "date of first use" information to Ms. Arant. According to MGA, the only reason

5  Ms. Arant solicited "date of first use" information from Ms. Garcia was (i) to determine whether

6  an "intent to use" application would be proper and (ii) to determine when MGA should file its

7  applications. MGA asserts that "these legal considerations led Ms. Arant to request 'dates of first

8  use' from Ms. Garcia." MGA's Opposition at p.6. However, there is no evidence of record to

9  substantiate MGA's contentions.

10       MGA's failure to provide evidence to substantiate its claim that the Fax reveals the

11 substance of a confidential communication is fatal to its claim of privilege. Because a mark's

12 date of first use is factual information that must be conveyed to the PTO to secure a trademark

13 application, communication of this information is not privileged. Weil Ceramics & Glass, Inc. v.

14 Work, 110 F.R.D. 5000, 504 (E.D. N.Y. 1986) ("The party claiming the privilege must clearly

15 show that a document renders legal advice and does not, for example, merely contain facts later

16 disclosed in a patent or trademark application"); see also United States v. White, 950 F.2d 426,

17 430 (7th Cir. 1991) ("when information is disclosed for the purpose of assembly into a bankruptcy

18 petition and supporting schedules, there is no intent for the information to be held in confidence

19 because the information is to be disclosed on documents publicly filed").

20       MGA contends, however, that the June 15, 2000 date was not actually disclosed to the

21 PTO and points out that Mattel's own submissions show that different attorneys from two

22 different law firms prepared the "statement of use" filings for MGA and specified different "dates

23 of first use" for each mark than the June 15, 2000 date that Ms. Garcia allegedly communicated to

24 Ms. Arant. That the June 15, 2000 date was not actually disclosed is irrelevant. What is relevant

25 is whether Ms. Garcia actually and reasonably intended and expected the "dates of first use"

26 information she provided to Ms. Arant to remain confidential when she made the communication,

27 not whether the information was actually conveyed to the public. See In re Grand Jury

28 Proceedings, 727 F.2d 1352, 1358 (4th Cir. 1984) (information given to attorney to prepare

prospectus was not protected by attorney-client privilege, even though no prospectus was ever actually issued); United States v. Lawless, 709 F.2d 485, 487 (7th Cir. 1983) ("[I]f the client transmitted the information so that it might be used on the tax return, such a transmission destroys any expectation of confidentiality.").

Lastly, MGA's reliance on McCook, supra, and other related caselaw[1] is misplaced. In McCook, the court held that draft patent applications were privileged because they "contain[ed] the legal opinion and advice of the attorney regarding the wording of technical specifications, claims, and prior art, and whether an item is included, all of which are necessary to secure a legal claim for the client." McCook, 192 F.R.D. at 252-253. In contrast, the Fax at issue in this case reflects no such attorney opinions or advice. Indeed, the only attorney-client communication reflected in the Fax is the statement regarding the "date of first use." The cases cited by MGA are inapplicable to communications conveying date of first use information in the trademark context because, as discussed previously, a trademark attorney does not have discretion regarding whether to disclose the "date of first use" information to the PTO.[2]

### IV. CONCLUSION

For the reasons set forth above, Mattel's motion to compel MGA to produce documents bearing Bates Nos. MGA 0800973-0800974 and MGA 0829296-0829305 is granted. MGA shall produce said documents on or before December 28, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: December 17, 2007

_Edward A. Infante_
HON. EDWARD A. INFANTE (Ret.)
Discovery Master

---

[1] See Rohm v. Haas Co. v. Brotech Corp., 815 F.Supp. 793, 797 (D. Del..1993); Hyuk Suh v. Choon Sik Yang, 1997 U.S. Dist. LEXIS 20077 (N.D. Cal. No. 18, 1977); Conner Peripherals, Inc. v. Western Digital Corp., 1993 U.S. Dist. LEXIS 20149 (N.D. Cal. June 8, 1993); TeKnowledge Corp. v. Akamai Techs. Inc., 2004 U.S. Dist. LEXIS 19109 (N.D. Cal. Aug. 10, 2004).

[2] Mattel argues in the alternative that even if the disputed documents were privileged, MGA has waived the privilege. Because MGA has failed to establish the requisite elements of the attorney-client privilege as to the disputed documents, it is unnecessary to address Mattel's waiver argument herein.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT 31
PAGE 344

# Exhibit 32

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:   (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11

12  | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530 |
13
14  Plaintiff,
    v.                              Consolidated with
15                                  Case No. CV 04-09059
    MATTEL, INC., a Delaware corporation,   Case No. CV 05-2727
16
    Defendant.                      **ORDER GRANTING IN PART AND**
17                                  **DENYING IN PART MATTEL'S**
                                    **MOTION TO ENFORCE COURT'S**
18                                  **DISCOVERY ORDERS AND TO**
                                    **COMPEL; TO OVERRULE**
19                                  **PURPORTEDLY IMPROPER**
                                    **INSTRUCTIONS; AND FOR**
20                                  **SANCTIONS**

21  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
22  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
23

24

25

26

27

28
                                                                    1
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT 32
PAGE 345

1-9

## I. INTRODUCTION

On December 5, Mattel, Inc. ("Mattel") submitted a "Motion to (1) Enforce Court's Discovery Orders and to Compel; (2) to Overrule Improper Instructions; and (3) for Sanctions." Mattel's motion challenges the sufficiency of the testimony provided by four of MGA Entertainment Inc.'s Rule 30(b)(6) witnesses, Lisa Tonnu, Kenneth Lockhart, Rebecca Harris, and Spencer Woodman, on sixteen separate topics identified in Mattel's Second Notice of Deposition of MGA. MGA submitted an opposition on December 18, 2007. Mattel submitted a reply on December 26, 2007. The matter was heard on January 3, 2008. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in part and denied in part, and the request for sanctions is granted in part.

## II. BACKGROUND

On May 16, 2007, MGA was ordered to produce Rule 30(b)(6) designees for all topics identified in Mattel's Second Notice of Deposition of MGA, except Topic Nos. 25 and 26, on or before June 30, 2007. Mattel's Second Notice of Deposition includes many topics relevant to the case, including, *inter alia*, the development of Bratz before it was made available for purchase; when and whom MGA first offered Bratz for sale; who first manufactured, shipped and distributed Bratz; Bratz revenues and profits; MGA's access to Mattel's earlier DIVA STARZ project that allegedly had elements which subsequently appeared in Bratz; the identity of persons who worked on Bratz and payments made to them; fee and indemnification agreements; MGA's testing and handling of original Bratz drawings; MGA's sworn statements pertaining to Bratz's creation and development; and MGA's evidence preservation and collection. On July 2, 2007, the district court rejected MGA's objections to the May 16, 2007 Order.

MGA designated four different witnesses to testify on the topics identified in Mattel's Second Notice of Deposition of MGA. First, MGA designated Kenneth Lockhart to testify on Topic Nos. 38, 39 and 42. He testified on June 14-15, 2007.

Second, MGA designated Lisa Tonnu to testify on Topic Nos. 24-25, 31, 37, 39 (in part), 40 and 41. She testified on July 19, 2007. In the meantime, Mattel moved for an order compelling MGA to produce witnesses for deposition and sanctions because MGA did not

1   produce witnesses on certain topics as required by the May 16, 2007 Order. On August 14, 2007,

2   Mattel's motion was granted in part and denied in part and MGA was ordered, once again, to

3   produce witnesses to testify on several topics. On September 24-25, 2007, Mattel deposed Ms.

4   Tonnu further on Topic Nos. 21, 24-26, 31, 39, 40 and 41.

5        Third, MGA designated Rebecca Harris to testify on Topic Nos. 11, 13, 14, 19, 22-23 and

6   27-28. Ms. Harris' deposition was scheduled, but unilaterally cancelled by MGA, on two

7   different occasions. MGA ultimately produced Ms. Harris on July 20, 2007.

8        Fourth, MGA designated Spencer Woodman to testify on Topic No. 34. He testified on

9   October 9, 2007.

10       In September of 2007, the parties exchanged several meet and confer letters regarding

11   purported deficiencies in the witnesses' depositions. In mid October, MGA notified Mattel that it

12   had retained new counsel who would be responding to Mattel's letters. After a month-long stay

13   that MGA obtained as a result of its substitution of counsel, the parties met and conferred on

14   November 16, 2007 and again on November 21, 2007. MGA offered to produce Ms. Tonnu

15   again, but only on some of the topics for which she had been designated previously, and only

16   during the second week of January 2008. The parties continued to exchange letters; however,

17   they were apparently unable to resolve any issues before Mattel filed the instant motion on

18   December 5, 2007.

19       Mattel essentially contends that MGA's witnesses were not sufficiently knowledgeable to

20   provide complete testimony on the 30(b)(6) topics at issue, and furthermore, that MGA's counsel

21   obstructed the depositions by making improper objections and instructing witnesses not to

22   answer. Accordingly, Mattel seeks the following eight categories of relief: (1) an order enforcing

23   the May 16, 2007 and August 14, 2007 Orders and compelling MGA to comply therewith by

24   designating and producing fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21-25,

25   27, 28, 31, 34 and 39-41 in Mattel's Second Notice of Deposition of MGA on dates of Mattel's

26   selection; (2) an order overruling each of the purportedly improper instructions not to answer

27   questions interposed at the deposition of MGA designees Spencer Woodman and compelling

28   Woodman or other such person selected by MGA as its designee to provide complete testimony

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 3⟋

PAGE 3⟋⟋

1  on Topic No. 34; (3) an order compelling MGA to produce documents that MGA designee

2  Kenneth Lockhart identified during his June 14, 2007 deposition as documents which he reviewed

3  and relied upon to refresh his recollection in preparation for his deposition; (4) an order

4  overruling each of the purportedly improper instructions not to answer questions interposed at the

5  deposition of MGA designee Lisa Tonnu; (5) an order reopening the deposition of MGA designee

6  Lisa Tonnu based on a purported "complete reversal of testimony" made through written

7  "changes" to her deposition transcript; (6) an order compelling Rebecca Harris to sit for the

8  completion of her deposition and/or compelling such person selected by MGA as its designee to

9  complete the testimony on topics for which Harris was previously designated; (7) an order

10  imposing monetary sanctions ($10,000) for MGA's alleged willful violations of the May 16, 2007

11  and August 14, 2007 Orders, for MGA's allegedly improper instructions not to answer deposition

12  questions and for MGA's alleged improper coaching, harassing and obstructionist conduct at the

13  September 24-25, 2007 deposition of Lisa Tonnu and at the October 9, 2007 deposition of

14  Spencer Woodman; and (8) a report and recommendation to Judge Stephen G. Larson that

15  recommends the imposition of preclusion sanctions, that certain facts related to the topics

16  compelled be deemed admitted, and/or that MGA be found in contempt for MGA's allegedly

    willful and repeated violations of the Orders.

17        MGA opposes the motion, contending that it substantially complied with its obligation to

18  produce witnesses knowledgeable on each of the topics at issue and that Mattel has had a full and

19  fair opportunity to conduct its examinations. According to MGA's calculations, the four

20  witnesses testified intelligently for nearly 36 hours over five deposition days. MGA also explains

21  that its counsel instructed witnesses not to answer two types of questions, namely questions that

22  invaded MGA's work product protection or attorney-client privilege, and questions that exceeded

23  the scope of Topic No. 34. MGA also contends that Mattel is not entitled to additional time to

24  depose Ms. Harris in particular because Mattel's counsel wasted time and badgered the witness.

25  MGA acknowledges, however, that Ms. Tonnu did change her testimony and that there are some

26  deficiencies in its witnesses' testimony that justify additional deposition time. Indeed, MGA

27  points out that prior to the filing of the instant motion, MGA agreed to produce witnesses to

28

1    provide additional testimony on Topic Nos. 21, 24, 25, 31, 34 and 40.  Further, after the filing of

2    the motion, MGA agreed to produce witnesses to provide additional testimony on Topic No. 39.

3    MGA contends that Mattel's motion to compel additional testimony with respect to topics on

4    which MGA has already agreed to provide additional testimony is premature and should be

5    denied.

6                                            III. STANDARDS

7            Depositions of a corporation are governed by Rule 30(b)(6) of the Federal Rules of Civil

8    Procedure, which provides in pertinent part that:

9            In its notice or subpoena, a party may name as the deponent a public or
     private corporation, a partnership, an association, a governmental agency, or other
10   entity and must describe with reasonable particularity the matters for examination.
     The named organization must then designate one or more officers, directors, or
11   managing agents, or designate other persons who consent to testify on its behalf;
     and it may set out the matters on which each person designated will testify. . . .
12   The persons designated must testify about information known or reasonably
     available to the organization.

13

14   Fed.R.Civ.P. 30(b)(6) (effective Dec. 1, 2007).  Rule 30 also provides that the examination and

15   cross-examination of a deponent proceed as they would at trial under the Federal Rules of

16   Evidence. Fed.R.Civ.P. 30(c)(1).  Further, "[a]n objection at the time of the examination--

17   whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking

18   the deposition, or to any other aspect of the deposition--must be noted on the record, but the

19   examination still proceeds; the testimony is taken subject to any objection." Fed.R.Civ.P.

20   30(c)(2). "An objection must be stated concisely in a nonargumentative and nonsuggestive

21   manner. A person may instruct a deponent not to answer only when necessary to preserve a

22   privilege, to enforce a limitation ordered by the court, or to present a motion under Rule

23   30(d)(3)." Id.

24           Rule 30(d)(1), Fed.R.Civ.P., provides that a deposition is limited to one day of seven

25   hours, unless otherwise stipulated or ordered by the court.  "The court must allow additional time

26   consistent with Rule 26(b)(2) if needed to fairly examine the deponent or if the deponent, another

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 32

PAGE 349

1    person, or any other circumstance impedes or delays the examination."[1]  Fed.R.Civ.P. 30(d)(1).

2    Furthermore, sanctions may be imposed --including the reasonable expenses and attorney's fees

3    incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the

4    deponent. Fed.R.Civ.P. 30(d)(2).

5                                    IV. DISCUSSION

6    A. Mattel's Request for Relief No. 1:  Mattel seeks an order enforcing the May 16, 2007 and
     August 14, 2007 Orders and compelling MGA to comply therewith by designating and producing
7    fully prepared witnesses to testify on Topic Nos. 11, 13, 14, 19, 21-25, 27, 28, 31, 34 and 39-41 in
     Mattel's Second Notice of Deposition of MGA on dates of Mattel's selection.

8
9          Mattel contends that MGA's witnesses were inadequately prepared and failed to provide

     sufficient testimony on sixteen of the topics identified in the Second Notice of Deposition of
10
     MGA.  Each of the sixteen 30(b)(6) topics at issue is addressed separately below.
11
           **Topic No. 11:**  The exhibition, or proposed, offered, contemplated or requested exhibition,
12         of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including
           without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed,
13         offered for sale, pitched, shown or disclosed to, or otherwise discussed with or
           communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that
14         REFER OR RELATE thereto.

15         Mattel contends that Ms. Harris lacked sufficient knowledge on this topic.  In particular,

16   Mattel contends that Ms. Harris could not confirm what form of Bratz or Bratz design ("sculpts")

17   was first exhibited to third parties prior to June 30, 2001.

18         MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

19   this topic.  More specifically, MGA contends that Ms. Harris testified about the first exhibition,

20   sale and distribution of Bratz, including presentations to Target stores, and the first sale,

21   distribution and shipment of Bratz under an agreement with Bandai in Spain.  MGA contends that

22   it is not reasonable to expect MGA to have investigated specifically what type of Bratz "sculpts"

23   were shown at particular exhibitions.

24   _____

25          [1] Rule 26(b)(2), Fed.R.Civ.P., provides that the court shall limit the frequency or extent of use of the
     discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or
26   is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party
     seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the
     burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case,
27   the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the
     importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

28

                                                                                    6
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                            EXHIBIT _32_

                                                       PAGE _350_

1    Furthermore, MGA points out that Mattel has taken the deposition of MGA HK on the

2    subject of the initial manufacture of Bratz.  More specifically, MGA contends that Mattel took the

3    deposition of the head of MGA's Hong Kong operations, Edmond Lee, for two full days, and

4    questioned him about the first manufacture of Bratz by Early Light.  Therefore, MGA contends

5    that Mattel has had a full and fair opportunity to examine MGA regarding the first manufacture of

6    Bratz.

7        A review of the transcript confirms that Ms. Harris was not reasonably prepared for her

8    deposition, especially in light of the importance of the timing of the creation of Bratz.  For

9    example, she could not specify what was shown to retailers during the year 2000.  She testified

10   that MGA used "boards" (i.e. sketched drawings) to show retailers Bratz during the year 2000

11   based upon a telephone conversation she had with Paula Garcia during a break.  Mattel is entitled

12   to delve into more detail about these "boards," and such information should be reasonably

13   available to MGA.  Ms. Harris testified that Julie Chemo likely attended presentations during the

14   year 2000.  Therefore, Mattel is entitled to an order compelling MGA to produce a witness to

15   provide complete testimony on Topic No. 11.

16        **Topic No. 13**:  COMMUNICATIONS prior to June 30, 2001 between YOU and any
     manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or potential
17   manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE TO BRATZ or
     any BRATZ DESIGN.

18        Mattel contends that Ms. Harris' testimony was wholly inadequate.  In particular, Mattel

19   contends that Ms. Harris had no knowledge concerning early MGA communications with Bandai,

20   which distributed Bratz in the first market in which it was allegedly sold.  Ms. Harris did not have

21   any knowledge or information as to when MGA and Bandai first had any type of contact or

22   communication regarding Bratz.  Similarly, Ms. Harris did not have any knowledge or

23   information as to when MGA first had contact with a company called J.H.N. regarding the sale of

     Bratz in Australia.

24        MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

25   Topic No. 13, as described above in connection with Topic No. 11.  Accordingly, MGA objects to

26   any further examination on Topic No. 13.

27        A review of the deposition transcript confirms that Ms. Harris provided significant

28

EXHIBIT 3.2

PAGE 35.1

1   testimony on Topic No. 13. However, as Mattel points out, her testimony lacked many details

2   relevant to when Bratz was developed. For example, Ms. Harris was unable to testify as to any

3   communications or negotiations between MGA and Bandai leading up to the execution of written

4   agreements. Indeed, Ms. Harris did not know when MGA and Bandia first had any contact

5   regarding Bratz. Furthermore, MGA did not conduct a reasonable investigation to prepare Ms.

6   Harris for Topic No. 13. Among other things, MGA made no effort to determine whether the

7   former MGA HK employee known to have been directly involved in the first discussions with

8   Bandai (Martin Hitch) had retained any documents responsive to this topic. Nor did Ms. Harris

9   speak to Isaac Larian and Jim Olmstead, both of whom authored emails referencing existing

10  distributorship deals in Europe and Australia. Therefore, Ms. Harris did not fulfill MGA's duty to

11  produce a witness to testify on information known or reasonably available to MGA. Mattel is

12  entitled to an order compelling MGA to produce a witness to provide complete testimony on

    Topic No. 13.

13       **Topic No. 14:** When and where BRATZ was first manufactured, shipped, distributed and
14       sold, and the IDENTITIES and roles of PERSONS involved therein.

15       Mattel contends that Ms. Harris did not have any knowledge regarding the identity or role

16  of any person who was involved in the first manufacture of Bratz dolls by Early Light. Mattel

17  also contends that Ms. Harris had no knowledge as to the date when manufacturing began for the

18  first Bratz dolls. Furthermore, Mattel contends that MGA should not be permitted to rely on the

19  testimony given by MGA HK's corporate designee to evade providing testimony on this topic

20  because that designee's testimony was deficient.

21       MGA contends that Ms. Harris substantially discharged MGA's obligation to testify on

22  Topic No. 14, as described above in connection with Topic No. 11. Accordingly, MGA objects to

23  any further examination on Topic No. 14.

24       A review of the deposition transcript confirms that Ms. Harris did not have any knowledge

25  regarding the identity or role of any person at MGA who first had contact with Early Light, the

26  first manufacturer of Bratz dolls. Nor did she know the identity of any person at MGA or at Early

27  Light who was involved in the first manufacture of Bratz dolls. Furthermore, Ms. Harris stated

28  that she did not undertake any investigation to uncover these facts. Ms. Harris also had no

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT 32

PAGE 352

1    information or knowledge regarding the date when manufacturing began for the first Bratz dolls.

2    Ms. Harris testified that personnel in MGA's Hong Kong affiliate coordinated with Early Light.

3    Thus, the information sought by Mattel is reasonably available to MGA. That Mattel also seeks

4    testimony from MGA's Hong Kong affiliate does not excuse MGA from producing a witness

5    sufficiently knowledgeable on Topic No. 14. Therefore, Mattel is entitled to an order compelling

6    MGA to produce a witness to provide complete testimony on Topic No. 14.

7        **Topic No. 21**: YOUR knowledge of, and access to, non-public MATTEL DIVA STARZ
         project information and DESIGNS prior to June 30, 2001.

8        Mattel contends that Ms. Tonnu was not sufficiently prepared to provide testimony, as

9    evidenced by the fact that two other MGA employees, Paula Garcia and Margaret Leahy, testified

10   that they had "access" to non-public DIVA STARZ information.

11       MGA contends that Ms. Tonnu prepared for her deposition by speaking with five MGA

12   employees, including Paula Garcia. Based upon that investigation, Ms. Harris testified that the

13   five employees did not work on DIVA STARZ. MGA explains that Ms. Garcia merely testified

14   that when she was at Mattel she often spoke to co-workers at Mattel who happened to work on the

15   DIVA STARZ, that those co-workers may have mentioned the existence of the project and that

16   they told Ms. Garcia it was confidential. MGA contends that Ms. Garcia's testimony does not

17   establish "access to" DIVA STARZ information, but the opposite – that the employees did not

18   share details with Ms. Garcia and told her the project was confidential. MGA acknowledges,

19   however, that Ms. Garcia testified that on one occasion she saw a sketch of a DIVA STARZ

20   character.

21       Nevertheless, MGA represents that during the meet and confer process MGA designated

22   Ms. Tonnu to provide further testimony on Topic No. 21, and that she will be deposed on January

23   9, 2008. MGA represents that Ms. Tonnu will be prepared to testify whether each former Mattel

24   employee now employed by MGA had "access to" DIVA STARZ information while employed by

25   Mattel.

26       A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

27   prepared to testify on Topic No. 21. Ms. Tonnu did not know what DIVA STARZ was.

28   Furthermore, she was not sufficiently informed of the identities of the MGA employees and

9

EXHIBIT __52__

PAGE __353__

1  contractors who had access to or worked on DIVA STARZ. For example, Ms. Tonnu was

2  uninformed of Ms. Garcia's and Ms. Leahy's knowledge and access to DIVA STARZ

3  information while employed by Mattel. Such information was known or reasonably available to

4  MGA. Therefore, Mattel is entitled to an order compelling MGA to produce a knowledgeable

5  witness to provide complete testimony on Topic No. 21.

6      **Topic No. 24**: Any indemnification and fee arrangement that YOU and/or BRYANT has

7  sought proposed, requested or obtained in connection with this ACTION.

8      Mattel contends that MGA's designee, Lisa Tonnu, was not sufficiently prepared to

9  testify, despite having been produced twice to testify on this topic. For example, Mattel points

10  out that Ms. Tonnu did not know why MGA agreed to pay Carter Bryant's attorneys' fees or how

11  much MGA had paid or whether Littler Mendelson's fees had been paid in full. Mattel's Motion

12  at pp. 14-15. Furthermore, Mattel points out that Ms. Tonnu did not make any effort to find out

13  the answers to these questions.

14      MGA contends that Ms. Tonnu substantially discharged MGA's obligation to provide

15  testimony in response to this topic. MGA contends that Ms. Tonnu reviewed responsive

16  documents and was able to identify the agreements in her deposition. Further, MGA contends

17  that Ms. Tonnu spoke to MGA's in-house counsel about the agreements and was able to identify

the individuals involved in the negotiations of those agreements.

18      MGA acknowledges, however, that Ms. Tonnu was not able to testify regarding the

19  specifics of those negotiations or the terms of those agreements. MGA represents that prior to the

20  filing of this motion, it designated in-house counsel Sam Khare to provide additional testimony on

21  this topic and that Mattel will depose him on January 8, 2008.

22      A review of the deposition transcript confirms that Ms. Tonnu was not prepared to testify

23  as to information known or reasonably available to MGA. For example, Ms. Tonnu did not know

24  why MGA agreed to pay Bryant's fees, did not know how much MGA had paid in fees, and did

25  not know whether MGA had paid Littler Mendelson's fees in full. Accordingly, Mattel is entitled

26  to an order compelling MGA to produce a knowledgeable witness to provide complete testimony

27  on Topic No. 24.

28

EXHIBIT 32

PAGE 354

**Topic No. 25:**  YOUR revenues and profits from BRATZ, including without limitation, YOUR gross and net profits, and YOUR costs associated therewith.

Mattel contends that Ms. Tonnu lacked the most basic information called for by this topic. For example, Mattel contends that Ms. Tonnu testified that: she did not recall nor could she provide an estimate of how much distribution revenue MGA derived from the Bratz brand between 2001 and the end of 2006; she did not know and could not provide a best estimate for the episodic costs or production costs associated with the distribution revenue; she did not know who in the company could provide this information; she did not know and could not provide a range for how much licensing revenue MGA had received for licensing anything associated with the Bratz brand between 2001 and the end of 2006; she did not know and could not estimate how much revenue the Bratz movie generated; she did not know how much revenue MGA had earned from the Bratz brand; and she did not know how much profit MGA had generated from the Bratz brand.

MGA contends that it substantially discharged its obligation to provide testimony on this topic.  More specifically, MGA contends that Ms. Tonnu testified with the aid of Exhibit 660, a 143-page report summarizing the units sold from 2001 to 2006 organized by "stock-keeping-unit" or "SKU."  MGA contends that Ms. Tonnu prepared for her deposition by speaking with MGA's Director of Finance, Anisse Evans, regarding Exhibit 660.

In the meet and confer process, MGA's counsel offered to provide Mattel with source information from which the profitability of Bratz products at the SKU level could be derived and to produce Ms. Tonnu for follow-up testimony regarding that source financial information so that Mattel's experts would be in a position to draw their own conclusions and opinions as to MGA's profits from Bratz.  MGA represents that Mattel has agreed to depose Tonnu on this topic on January 9, 2008.  MGA also represents that it has produced more than 27,700 pages of source financial information that will be the "starting point" from which MGA's and Mattel's experts will analyze the profitability of Bratz products.  MGA represents that Ms. Tonnu will be prepared to discuss the source financial information produced to Mattel at her continued deposition.

A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently prepared to provide testimony on Topic No. 25.  Ms. Tonnu could not identify, generally or by

EXHIBIT 3

PAGE 3

1   product, Bratz revenues, costs, or gross or net profits.  Furthermore, MGA has failed to provide

2   any explanation for why Ms. Tonnu was not educated on the source financial information before

3   her deposition.  Accordingly, Mattel is entitled to an order compelling MGA to produce a

4   knowledgeable witness to provide complete testimony on Topic No. 25.

5   **Topic No. 27:**  The payment of money or anything of value that YOU have made or
    offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought or
6   received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s) and
    reasons therefore.

7

8   Ms. Cloonan was Carter Bryant's roommate at some point.  Bryant testified that he

9   showed her early drawings prior to showing them to MGA.  She is not and never has been an

10  employee of MGA.

11  Mattel contends that Ms. Harris' testimony was incomplete because she only searched for

12  evidence of payment by reviewing vendor files and MGA's electronic purchase order files, and

13  did not review the individual documents within each account payable vendor file.  Mattel also

14  contends that Ms. Harris was not sufficiently prepared because she had no knowledge or

    information as to who was paying her legal fees in this case.

15  MGA contends that it discharged its obligation to testify on Topic No. 27, emphasizing

16  that Ms. Harris unequivocally represented on behalf of MGA that MGA made no payments to,

17  had no agreements with and had no communications with Elise Cloonan.  Furthermore, MGA

18  points out that Mattel took the deposition of Elise Cloonan on December 14, 2007, and she

19  confirmed that she had received no payments from and had no communications with MGA.

20  A review of the transcript confirms that Ms. Harris' preparation for and testimony

21  regarding Topic No. 27 was adequate.  Furthermore, the burden and expense of conducting a

22  deposition on this topic substantially outweigh the potential relevance of the testimony sought.

23  Mattel's motion is denied with respect to Topic No. 27.

24  **Topic No. 28:**  COMMUNICATIONS between YOU and Elise Cloonan that REFER OR
    RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including
25  DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

26  Mattel contends that Ms. Harris's testimony was insufficient because she admitted she did

27  not have any knowledge or information as to what systems or hard drives in MGA were searched

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 32

PAGE 355

12

1    for e-mails referencing Elise Cloonan.

2        MGA contends that Mattel is not entitled to further examination on Topic No. 28 because

3    Ms. Harris substantially discharged MGA's obligation to testify on the topic, as described above

4    in reference to Topic No. 27 above.

5        A review of the transcript confirms that Ms. Harris' preparation for and testimony

6    regarding Topic No. 28 was adequate.  Furthermore, the burden and expense of conducting a

7    deposition on this topic substantially outweigh the potential relevance of the testimony sought.

8    Mattel's motion is denied with respect to Topic No. 28.

9        **Topic No. 31**: The IDENTITY of each PERSON who, at any time since January 1, 1998,
     has performed any work or services for, by or on behalf of YOU while such PERSON was
     employed by MATTEL, the nature and timing of each such PERSON's work or services

10   and the amount(s) paid by YOU to each such PERSON.

11       Mattel contends that the first time MGA produced Ms. Tonnu to testify, she lacked any

12   personal knowledge regarding this topic and that MGA failed to educate her properly on the topic.

13   Ms. Tonnu testified that she spoke to an accounts payable clerk, Ms. Brooks, who had "a list of

14   vendors and the dates in which they were either employed or freelancing with Mattel, and she

15   cross-referenced that in her research."  Tonnu Tr. at 147:5-148:20.  Mattel points out, however,

16   that Ms. Tonnu testified that she did not know who prepared the list; did not see the criteria used

17   to prepare the list; did not know who the vendors or freelance people were on the list; and did not

18   know whether the list included all former Mattel employees who were working at MGA.  MGA

19   produced Ms. Tonnu for a second time regarding Topic No. 31, however, Mattel contends that she

20   was still unprepared.

21       MGA contends that it has substantially discharged its obligation to provide testimony on

22   this topic.  MGA explains that Ms. Tonnu testified on this topic based on a review of MGA

23   business records.  MGA explains that to prepare for the deposition, it prepared a list of MGA

24   employees who were former Mattel employees, including the dates each person was employed by

25   Mattel.  Next, Ms. Brooks searched MGA's accounting records reflecting payments to outside

26   vendors for any evidence of a payment to a former Mattel employee on the list during the period

27   of that person's Mattel employment, or with respect to work or services performed during that

28   period.  MGA contends that Ms. Tonnu testified about this search and the results of the search

EXHIBIT _32_

PAGE _356_

1   leading to the identification of three instances of payments to former Mattel employees while the

2   employee was still at Mattel.

3       Nevertheless, MGA represents that prior to the filing of this motion, it designated Ms.

4   Tonnu to provide additional testimony on this topic.  Specifically, MGA is prepared to produce

5   Ms. Tonnu to testify regarding whether former Mattel employees may have performed work or

6   services for MGA during their employment with Mattel without being paid for those services.

7   Ms. Tonnu's deposition is scheduled for January 9, 2008.

8       A review of the deposition transcript confirms that Ms. Tonnu was not sufficiently

9   prepared to testify on Topic No. 31.  Notably, Ms. Tonnu admitted that she did not know whether

10  any person has at any time since 1998 performed work or services for MGA while that person

11  was a Mattel employee.  Further, she testified that she did not speak with or ask any of the former

12  Mattel employees who were working at MGA whether they had provided work or services for

13  MGA while they were Mattel employees.  Instead, Ms. Tonnu only knew whether or not

14  payments were made to the former Mattel employees while they were still employees of Mattel.

15  Furthermore, the list of former Mattel employees provided by Ms. Brooks was incomplete

16  because it did not include twelve former Mattel employees.  Accordingly, Mattel is entitled to an

17  order compelling MGA to produce a witness to provide complete testimony on Topic No. 31.

> **Topic No. 34:** Other than those previously filed and served in this ACTION or in which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of when such testimony or sworn statement was taken, given, signed, made or filed).

Mattel contends that Mr. Woodman had not been adequately prepared for his deposition

and lacked the most basic knowledge on the topic.  Mattel points out that Mr. Woodman had been

employed with MGA for less than one year and that his responsibilities had been limited to the

administration of licensing contracts and royalties.  Further, Mattel contends that in preparation

for his deposition, Mr. Woodman "did no more than review a selection of sworn statements

previously made by others, review transcripts of Carter Bryant's deposition testimony, and speak

'for a few minutes' with one other person besides counsel."  Mattel's Consolidated Separate

Statement, p.130.

1        Mattel also contends that Mr. Woodman was not sufficiently prepared to testify regarding

2 "sworn statements in MGA's many submissions to the Copyright Office or Patent and Trademark

3 Office," and sworn testimony from the "Art Attacks" trial. Id. Further, Mattel contends that

4 MGA's counsel improperly instructed Mr. Woodman not to answer certain questions on the basis

5 that Topic No. 34 did not include sworn statements made in connection with the "Art Attacks"

6 matter or statements made in various submissions to the Copyright Office or Patent and

7 Trademark Office.  Counsel also instructed Mr. Woodman not to answer certain questions about

8 sworn statements that related to Topic No. 33 and statements that MGA believed did not

9 sufficiently relate to conduct prior to June 30, 2001.  Topic No. 33 seeks testimony on

10 applications for registration and the registrations for copyright, patent, trademark or any other

11 right that refer or relate to Bratz or Bratz designs, sought, made or obtained by, for or on behalf of

12 MGA or Bryant, including communications pertaining thereto.

13        MGA contends that Mattel is not entitled to any further testimony on this topic.  MGA

14 explains that Mr. Woodman reviewed 30-50 sworn statements, read the transcript of the

15 depositions of Carter Bryant and Victoria O'Connor, MGA's former Vice President of Licensing,

16 and interviewed Leon Djiguerian in MGA's Product Development.  MGA further asserts that Mr.

17 Woodman answered questions as to the completeness or incorrectness of many factual statements

18 contained in the sworn statements placed in front of him by Mattel's counsel.  Thus, MGA

19 contends that Mattel obtained exactly the testimony it sought.  In MGA's view, Mr. Woodman's

20 testimony regarding the correctness or incorrectness of factual statements identified from the

21 sworn statements is binding on MGA.  MGA also contends that Mr. Woodman was not required

22 to investigate the preparation, review and approval of MGA's various sworn statements because

23 such information would be protected from disclosure by the attorney-client privilege and work

24 product doctrine.

25        MGA next contends that most of the documents shown to Mr. Woodman were not "sworn

26 statements," but rather (i) copyright registrations and certificates that include a statement that the

27 application is "correct to the best of my knowledge," (ii) certificates of registration issued by the

28 USPTO, and (iii) an office action summary by the USPTO.  Nevertheless, MGA implicitly

15

EXHIBIT __32__

PAGE __358__

1    acknowledges that Mr. Woodman did not provide sufficient testimony as to certain applications

2    for registrations containing declarations by Isaac Larian documents (Exhibits 580-584, 590), a

3    declaration by Bryant (Exhibit 502), and an application and amendment referred to in the Bryant

4    declaration (Exhibits 500, 548), and one additional declaration by Isaac Larian, by agreeing to

5    produce Sam Khare to testify regarding these documents. Mattel is scheduled to depose Mr.

6    Khare on January 8, 2008.

7           MGA contends that prior counsel properly objected to certain questions as outside the

8    scope of Topic No. 34. In particular, MGA contends that questions directed at statements that did

9    not refer or relate to the time period prior to June 30, 2001 are outside the scope of Topic No. 34.

10    Further, MGA contends that where a sworn statement relates in part to the time period before

11    June 30, 2001, and in part to other time periods, the scope of Topic No. 34 is limited by its own

12    terms to that portion of the statement that relates to the specified time period. MGA also contends

13    that sworn testimony taken at the Art Attacks trial is outside the scope of Topic No. 34 because

14    Mattel's counsel was present at that trial.

15           MGA represents that its present counsel does not condone the instructions not to answer

16    made by prior counsel, and will not attempt to justify those instructions. Nevertheless, MGA

17    contends that Mattel was not deprived of any discoverable testimony by those instructions

18    because the disputed questions sought information outside the scope of Topic No. 34. More

19    specifically, MGA represents that each exhibit that was excluded from Mr. Woodman's testimony

20    on the grounds that it was not a "sworn statement" was the subject of examination of MGA's

21    designees on Topic No. 33, Bryan Armstrong and Sam Khare. MGA also contends that

22    resumption of a deposition on Topic No. 34 beyond what MGA has agreed to provide is

23    unwarranted because Mattel obtained two full days of 30(b)(6) testimony on Topic No. 33.

24           A review of the deposition transcript confirms that Mr. Woodman was not sufficiently

25    prepared to provide testimony on Topic No. 34. Mr. Woodman did no more than review the

26    sworn statements made by others and the transcripts of Carter Bryant's deposition. For the sworn

27    statements he did review, Mr. Woodman offered little information beyond what was apparent on

28    the face of the documents. For example, Mr. Woodman did not know who authorized submitting

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT 32

PAGE 359

1   the sworn statement.  Ultimately, Mr. Woodman only testified as to whether or not a particular

2   sworn statement was consistent with deposition testimony of Carter Bryant.  Furthermore, Mr.

3   Woodman admitted that the testimony he gave had nothing to do with MGA's current beliefs, was

4   not based on any investigation, and had nothing to do with the actual correctness or incorrectness

5   of any of the sworn statements.  Mr. Woodman admitted that no matter what inconsistencies

6   existed between Carter Bryant's testimony and MGA's sworn statements, Mr. Woodman always

7   presented Carter Bryant's testimony as to the facts as "true."  Thus, Mr. Woodman failed to

8   testify as to information known or reasonably available to MGA.  Mr. Woodman's lack of

9   preparedness alone justifies re-opening Topic No. 34.  Furthermore, MGA cannot rely on blanket

10   claims of privilege to preclude testimony on Topic No. 34.

11        A further deposition on Topic No. 34 is also justified in light of the admittedly improper

12   instructions not to answer, and MGA's acknowledgement that Mr. Woodman did not provide

13   testimony as to Exhibits 500, 502, 548, 580-584, 590.  MGA shall abide by its agreement to

     produce a witness to testify on these exhibits.

14        MGA's interpretation of Topic No. 34 as excluding statements not made under oath or

15   penalty of perjury, and as excluding any portion of a statement under oath that does not refer or

16   relate to the time period prior to June 30, 2001, is overly technical.  There is, however, a clear

17   overlap between Topic No. 34 and Topic No. 33, which is not at issue in this motion.  When the

18   deposition on Topic No. 34 is resumed, MGA's corporate designee is not required to provide

19   further testimony on statements that were the subject of examination of MGA's designees on

20   Topic No. 33.

21        MGA's interpretation of Topic No. 34 as excluding testimony from the Art Attacks trial is

22   appropriate.  Mattel does not contest that its counsel attended the Art Attacks trial.  Topic No. 34

23   clearly excludes any proceeding attended by Mattel's counsel.  When the deposition on Topic No.

24   34 is resumed, MGA's corporate designee is not required to provide further testimony with

25   respect to the Art Attacks trial.

26        **Topic No. 39:** The preservation, collection, destruction, removal, transfer, loss or
27   impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection with
     the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

28

1   MGA designated two individuals to testify on this topic:  Kenneth Lockhart to testify on

2   electronic evidence; and Lisa Tonnu, to testify on documentary evidence.  Mattel contends that

3   both designees were unable to provide substantive testimony.

4   Mattel points out that Mr. Lockhart did not know whether the MGA's "PST files" had

5   been searched; whether e-mails had been deleted from the exchange mailbox between late 2004

6   and the present; whether MGA's "snap servers" had been searched; whether keywords were used

7   to search "PST" files; and what user files were searched.  Further, Mattel contends that Mr.

8   Lockhart was not aware of the location of any hard drive or any image of any hard drive that had

9   been preserved for litigation purposes.

10  MGA contends that Mr. Lockhart substantially discharged MGA's obligation on Topic 39

11  with respect to electronic documents.  MGA represents that Mr. Lockhart prepared extensively for

12  his testimony by speaking with various individuals and that he testified at length about the

13  configuration of MGA's computer systems and MGA's policies, practices and procedures for the

14  retention and preservation of electronic documents.

15  Nevertheless, MGA is willing to produce a witness to testify on its behalf regarding the

16  collection of electronic documents in connection with this action in order to shore up the one area

17  of Mr. Lockhart's testimony that MGA agrees was lacking.

18  As for Ms. Tonnu, Mattel contends that MGA made no discernible effort to educate her

19  concerning the topic.  Ms. Tonnu testified that she did not know whether MGA has a document

20  retention policy.  Mattel also contends that MGA's counsel instructed Ms. Tonnu not to answer

21  any questions about MGA's preservation and collection of documents based upon unfounded

22  claims of attorney-client privilege.[2]

23  MGA produced Ms. Tonnu a second time to testify on Topic No. 39, however Mattel

24  contends that her testimony remained deficient.  For example, Ms. Tonnu testified that she

25  prepared for the deposition by speaking with Rich Daniels, MGA's counsel, and by reviewing a

26  //

27  _____

28  [2] The instructions not to answer are discussed in a separate section of this Order.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___3:2___

PAGE ___36 1___

1    declaration prepared by Daphne Gronich, MGA's General Counsel on the subject of document

2    preservation. Mattel points out, however, that Ms. Tonnu never spoke with Ms. Gronich, and

3    therefore was unable to provide any information beyond what was stated in the four corners of the

4    declaration. In particular, Mattel contends that Ms. Tonnu did not know whether any documents

5    at the MGA campus had been searched for responsive documents. Nor did Ms. Tonnu know what

6    documents were stored at MGA's three off-site facilities and could not confirm whether they had

7    been searched for documents responsive to Mattel's requests.

8         MGA contends that Ms. Tonnu testified fully and completely regarding MGA's

9    preservation of documents in connection with this action. Indeed, MGA contends that the

10   Gronich declaration, which had already been provided to Mattel, contains detailed information

11   regarding MGA's document preservation efforts. MGA also points out that Tonnu testified,

12   based on her investigation and MGA's general policy (that documents generated by employees in

13   the ordinary course of business should not be destroyed and the wide distribution of document

14   preservation notices to MGA employees), that MGA did not knowingly destroy any documents

     potentially relevant to this action.

15        MGA acknowledges, however, that Ms. Tonnu was not able to testify regarding the actual

16   collection of documents for production in this action. MGA represents that it is willing to

17   produce an additional witness to discuss the collection of hard copy and electronic documents in

18   connection with this action.

19        A review of the deposition transcripts confirms that MGA's witnesses provided a

20   significant amount of testimony on this topic, and in particular regarding document preservation.

21   The one area where they were glaringly deficient was regarding document "collection."

22   Accordingly, MGA is ordered to abide by its agreement to produce a witness to testify further

23   with respect to the "collection" of hard copy and electronic documents. In all other respects,

24   MGA is in substantial compliance with Topic No. 39, and the burden and expense of re-opening a

25   deposition on the entirety of Topic No. 39 outweighs the likely benefit of the testimony Mattel

26   seeks.

27        **Topic No. 40:** The preservation, collection, destruction, removal, transfer, loss or

28

1    impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1, 1999 that

2    REFER OR RELATE TO MATTEL (including without limitation to any MATTEL product, plan

3    or information) that YOU received in any manner from any PERSON who was at the time an

4    employee of MATTEL or who had previously been an employee of MATTEL.

5          This topic appears to be based, at least in part, upon Mattel's allegations that former

6    Mattel employee Ron Brawer, former Mattel employees in Mattel's offices in Mexico; and a

7    former Mattel employee located in Canada improperly provided MGA with documents containing

8    Mattel trade secrets.

9          Mattel contends that MGA made no discernible effort to educate Ms. Tonnu on Topic No.

10   40, and therefore she was unable to answer whether MGA has or has had in its possession any (1)

11   Mattel strategic plans, (2) any sales or profit information of Mattel, (3) any documents related to

12   Mattel's advertising strategy, (4) any documents relating to the results of Mattel's advertising, (5)

13   documents related to Mattel's pre-release line lists, and (6) documents related to Mattel's strategy

14   with respect to specific customers.  MGA produced Ms. Tonnu a second time, however, Mattel

15   contends that her testimony remained deficient.  In particular, Mattel complains that MGA spoke

16   with only two former employees about the documents described above, when there are many

17   more former Mattel employees working at MGA.

18         MGA contends that Ms. Tonnu spoke with the three individuals at MGA who would be

19   most knowledgeable about the allegations against MGA and testified as to any documents they

20   brought with them from Mattel:  Ron Brawer, Susana Kuemmerle and Janine Brisbois.  MGA

21   contends that Ms. Tonnu's preparation to testify on Topic 40 was reasonable.

22         Nevertheless, MGA represents that it has agreed to provide additional testimony through

23   Ms. Tonnu to address Mattel's concerns, and that her deposition will take place on January 9,

24   2008.

25         A review of the deposition transcript indicates that Ms. Tonnu did not prepare sufficiently

26   for her testimony.  Ms. Tonnu spoke to only three individuals.  Clearly, there are far more sources

27   of information reasonably available to MGA, namely the many more former Mattel employees

28   now employed at MGA.  MGA made no effort to determine what Mattel documents, if any, these

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

20

EXHIBIT 32

PAGE 363

1    individuals possess.  Therefore, Mattel is entitled to an order compelling MGA to produce a

2    witness to provide complete testimony on Topic No. 40.

3    **Topic No. 41:** The testing or sampling from DOCUMENTS that REFER OR RELATE
     TO BRATZ or BRYANT, including without limitation such testing or sampling in
4    connection with any ink, paper or chemical analysis performed or attempted to be
     performed to date, any DOCUMENTS that REFER OR RELATE thereto and all results
5    and reports relating thereto.

6    Mattel deposed Ms. Tonnu on this topic on two separate occasions.  Mattel contends that

7    in each instance, she was unprepared to given any meaningful testimony regarding any ink, paper

8    or chemistry testing performed on Bratz documents.  In particular, Mattel contends that Ms.

9    Tonnu's preparation for her deposition was inadequate because she did not speak to the MGA

10   litigation consultant who performed the testing, Mr. Speckin, but merely read his declaration.

11   Furthermore, Mattel contends that MGA's counsel improperly instructed Ms. Tonnu not to

12   answer questions based upon unfounded claims of work product protection.  Mattel explains that

13   it is not seeking information concerning Mr. Speckin's opinions or the results of his test on Bratz

14   documents.  Instead, Mattel contends that it is seeking factual information concerning the

15   handling and shipment of original Bratz documents, as well as the specific documents that were

16   tested.  In Mattel's view, the factual circumstances surrounding Mr. Speckin's testing are not

17   protected from discovery by the work-product doctrine.

18   Moreover, Mattel contends that MGA provided Mattel's counsel with a list identifying the

19   documents that Mr. Speckin tested and allowed Ms. Tonnu to testify about the identification of

20   documents, thereby waiving any work product protection with respect to the identification of

21   documents.  Mattel also contends that Mr. Speckin's declaration, which was submitted in the

22   case, already discloses the types of tests conducted and therefore any privilege that may have

23   applied has been waived with respect to this subject.

24   MGA contends that it complied with this topic and that Mattel is not entitled to any further

25   examination because further questioning about the testing performed by Mr. Speckin would

26   violate MGA's attorney work product protection.  Mr. Speckin is one of MGA's non-testifying

27   experts.  MGA objects to any further questioning regarding Mr. Speckin's selection of which

28   documents to test, how the documents were handled, which tests were performed on the

21

EXHIBIT _32_

PAGE _364_

1   documents, how they were shipped and how they were stored. MGA contends that further

2   questioning on these subjects would necessarily reveal the mental impressions, legal theories, and

3   conclusions of MGA's counsel and its non-testifying experts formed in anticipation of litigation

4   with Mattel. Further, MGA contends that Mattel has not carried its heavy burden to demonstrate

5   the "exceptional circumstances" required to invade MGA's work product.

6        A review of the deposition transcript confirms that Ms. Tonnu was not reasonably

7   prepared to testify on Topic No. 41. Ms. Tonnu did not speak with Mr. Speckin or anyone

8   involved in the testing. She had only read Mr. Speckin's declaration. Therefore, she clearly was

9   not in a position to testify as to information known or reasonably available to MGA. On this basis

10   alone, Mattel is entitled to an order compelling MGA to produce a witness to testify fully on

11   Topic No. 41.

12        As for MGA's claims of work production protection, Judge Larson has already indicated

13   that questions of privilege regarding the testing of the Bratz documents must be handled on a

14   question-by-question basis. The questions at issue are set forth in Mattel's Separate Statement

15   No. 2, and are discussed below in connection with Mattel's Request for Relief No. 4.

16   B. Mattel's Request for Relief No. 2: Mattel seeks an order overruling each of the purportedly
improper instructions not to answer questions interposed at the deposition of MGA designees

17   Spencer Woodman (Instruction Nos. 46-57) and compelling Woodman or other such person
selected by MGA as its designee to provide complete testimony on Topic No. 34.

18        Mattel identifies each instance of allegedly improper instructions in its Separate Statement

19   No. 2. In each instance identified by Mattel, MGA's counsel instructed the witness not to answer

20   questions about matters that counsel believed exceeded the scope of the deposition. The

21   instructions not to answer were not based upon a claim of privilege, and therefore were clearly

22   improper.

23        Furthermore, as stated previously, MGA has acknowledged that some questions fell within

24   the scope of Topic No. 34 and should be answered. To that end, MGA has agreed to produce a

25   corporate designee to provide supplemental testimony as to Exhibits 500, 502, 548, 580-584, 590.

26   MGA shall abide by its agreement to produce a witness to testify on these exhibits.

27        Nevertheless, many of the questions identified in the Separate Statement No. 2 for which

28

EXHIBIT __3.2__

PAGE __365__

1  an improper instruction not to answer was given clearly exceeded the scope of the deposition

2  notice.  MGA is not required to provide further testimony as to those questions.  For example, the

3  question regarding the Art Attacks trial that Mattel's counsel attended (Instruction No. 46) exceed

4  the scope of Topic No. 34, and do not require any further testimony.  MGA is also not required to

5  provide further testimony as to documents that have been the subject of questioning during the

6  30(b)(6) deposition on Topic No. 33.[3]

7  C. Mattel's Request for Relief No. 3:  Mattel seeks an order compelling MGA to produce
   documents that MGA designee Kenneth Lockhart identified during his June 14, 2007 deposition
8  as documents which he reviewed and relied upon to refresh his recollection in preparation for his
   deposition.

9         Mattel seeks an order compelling MGA to produce documents that Mr. Lockhart

10  identified during his deposition as documents which he reviewed and relied upon to refresh his

11  recollection in preparation for his deposition.

12         MGA contends that the documents Mattel seeks are privileged e-mail communications

13  from MGA's General Counsel to MGA employees regarding their document preservation

14  obligations in light of the present action.  MGA contends that its privilege log demonstrates that

15  the documents are protected by both the attorney-client privilege and the work product doctrine.

16  Furthermore, MGA contends that Mr. Lockhart was required to review the privileged emails

17  because they related to MGA's preservation of documents in connection with this action and they

18  were reasonably available to MGA.

19         Moreover, MGA contends that waiver of the attorney-client privilege and work product

20  doctrine is not automatic where a witness refreshes his recollection with privileged prior to a

21  deposition.  In re Managed Care Litig., 415 F.Supp.2d 1378 (S.D. Fla. 2006); Medtronic Xomed,

22  Inc. v. Gyrus ENT LLC, 2006 WL 786425, at *1, 3, 6-7 (M.D. Fla. March 27, 2006).

23         MGA's bare bones privilege log, unaccompanied by any supporting declarations, is

24  insufficient to establish the attorney-client privilege and the work product doctrine.  Further,

25  although there appears to be a split in authority, the weight of authority supports a finding of

26  ────────────────────

27  [3] MGA represents that virtually all of the questioning quoted in Mattel's Separate Statement No. 2 at
    Instruction Nos. 47-57 was covered in the deposition on Topic No. 33. However, MGA's representation cannot be
    confirmed by the excerpts of the deposition transcript submitted in connection with this motion.

28                                                                                                    23

EXHIBIT 32
PAGE 366

1   waiver. See e.g. United States ex rel. Bagley v. TRW Inc., 212 F.R.D. 554, 565-566 (C.D. Cal.

2   2003) (requiring disclosure of documents reviewed by relator in preparing for his deposition

3   based upon waiver of work product protection); U.S. v. 22.80 Acres of Land, 107 F.R.D. 25-26

4   (N.D. Cal. 1985) (work product waived where deponents used documents to refresh recollection);

5   Ehrlich v. Howe, 848 F.Supp. 482, 493 (S.D.N.Y. 1994) ("when [c]onfronted with the conflict

6   between the command of Rule 612 to disclose materials used to refresh recollection and the

7   protection afforded by the attorney-client privilege . . . the weight of the authority holds that the

8   privilege is waived."); Marshall v. United States Postal Service, 88 F.R.D. 348, 350 (D. D.C.

9   1980) ("[I]t is apparent that once a document is used to refresh the recollection of a witness,

    privileges as to that document have been waived.").

10        Furthermore, the interests of justice compel production of the e-mail documents used by

11  Mr. Lockhart to refresh his recollection. MGA acknowledges that Mr. Lockhart was required to

12  review the e-mails because they related to MGA's preservation of documents. Mr. Lockart

13  testified that the e-mails refreshed his recollection as to what MGA employees had been requested

14  to preserve. Accordingly, MGA is ordered to produce the e-mails reference in Mr. Lockhart's

15  deposition.

16  D. Mattel's Request for Relief No. 4. Mattel seeks an order overruling each of the purportedly
    improper instructions not to answer questions interposed at the deposition of MGA designee Lisa
17  Tonnu.

18        In Mattel's Separate Statement No. 2, Mattel identifies each purported instance of

19  improper objections and/or instructions not to answer for which it seeks a ruling. Each instance

20  of allegedly improper conduct is discussed below.

21

22                                    Instruction Nos. 1-5

23        Mattel's counsel posed a series of questions regarding Mr. Larian's trusts. In each

24  instance, MGA's counsel instructed Ms. Tonnu not to answer. MGA's counsel objected to the

25  question on privilege and privacy grounds, and objected that the question exceeded the scope of

26  deposition.

27        The privilege objections are overruled because MGA has failed to establish the requisite

28

elements of any applicable privilege.  The privacy objections are overruled since there is a protective order in place to address Mr. Larian's privacy concerns regarding his personal finances. The remaining objections do not justify an instruction not to answer.  See Fed.R.Civ.P. 30(c)(2) (an objection must be noted on the record, but the examination still proceeds and the testimony is taken subject to any objection).  Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 1-5.

### Instruction No. 6

In this excerpt, the witness wanted to clarify her testimony regarding voucher payments, which prompted Mattel's counsel to ask a series of questions about what prompted her make the clarification, including "that's what counsel told you at the break?"; "[h]ow was your recollection refreshed"; and "[d]id Mr. Jenal tell you what the dates were?"  MGA's counsel objected on privilege grounds and instructed the witness not to answer.

The objections are overruled.  The attorney-client privilege protects an attorney's communication of legal advice to his client, as well as the client's communication of information to the attorney "to enable him to give sound and informed advice."  Upjohn Co. v. United States, 449 U.S. 383, 390 (1981).  In this instance, the question posed did not require the witness to disclose the substance of an attorney-client communication.  Instead, the questions posed called for the disclosure of underlying facts to which Mattel is entitled.  See Upjohn, supra at 395 (finding that the attorney-client privilege does not preclude disclosure of factual information and that the privilege does not protect facts communicated to an attorney).

Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 6.

### Instruction Nos. 7-20 and 23

In each of these excerpts, Mattel's counsel posed questions regarding testing performed on Bratz drawings.  MGA's counsel objected to the questions based upon the work product doctrine and instructed the witness not to answer.

The work product objections are overruled.  The work product doctrine, now codified in

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

25

EXHIBIT 32

PAGE 368

1    part in Rule 26(b)(3) of the Federal Rules of Civil Procedure, provides qualified protection for

2    materials prepared by or at the behest of counsel in anticipation of litigation or for trial. The party

3    claiming work product immunity has the burden of establishing its elements by competent

4    evidence. In re Kidder Peabody Securities Litigation, 168 F.R.D. 459, 462 (S.D. N.Y. 1996).

5         In the instant case, all of the questions posed to the witness take one of four forms: "do

6    you know whether" or "do you know who" or "do you know what" or "do you know why." The

7    questions thus call for a simple "yes" or "no" response that did not require divulging any

8    information protected by the work product doctrine.

9         Even if the questions are construed to require substantive responses beyond "yes" or "no,"

10   the information sought is factual (what test was conducted, how documents were stored, whether

11   the documents were handled with cotton or latex gloves, who was with the expert when he

12   performed his tests, what precautions he took). The questions do not require the witness to

     divulge the mental impressions, the legal theories, or conclusions of Mr. Speckin.

13        Moreover, Rule 26(b)(4)(B), Fed.R.Civ.P., provides that a party may discover facts known

14   or opinions held by an non-testifying expert upon a showing of exceptional circumstances under

15   which it is impracticable for the party seeking discovery to obtain facts or opinions on the same

16   subject by other means. In the instant case, there is no other practicable means for Mattel to

17   obtain information about the handling, shipping and testing of original Bratz documents while in

18   Mr. Speckin's possession. Mr. Speckin is a non-testifying expert. The manner in which Mr.

19   Speckin transported, analyzed, tested or otherwise used the original Bratz drawings is uniquely

20   within his knowledge and plainly relevant. The original Bratz drawings are a key piece of

21   evidence in this case. Mattel needs information concerning what, if any, changes, damage, or

22   other alterations were made to the original Bratz drawings. Mattel is not seeking information

23   regarding Mr. Speckin's opinions or the results of his tests. Rather, Mattel is seeking only

24   information regarding the handling of the original Bratz documents and more precise

25   identification information for the specific documents that were handled by Mr. Speckin.

26        MGA objects to providing information concerning Mr. Speckin's testing, the testing

27   conditions, the selection of which drawings to test and other logistics. MGA, however, has

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 32
PAGE 369

1    already disclosed the types of tests performed by Mr. Speckin in a declaration submitted to the

2    court, and has provided Mattel with a list identifying the documents that Mr. Speckin tested,

3    although the list did not identify the documents by Bates numbers. Therefore, MGA has waived

4    any work product protection to which it may have been entitled with respect to the identification

5    of the original Bratz drawings that were subjected to testing and which tests were performed.

6         Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

7    responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 7-

8    20 and 23.

9                              Instruction Nos. 21-22

10        In these excerpts, Mattel's counsel asked Ms. Tonnu whether she could identify or

11   describe any of the documents that were tested by Mr. Speckin. MGA's counsel objected to the

12   questions based upon the work product doctrine and instructed the witness not to answer

13   The objections are overruled. As discussed immediately above, the questions call for factual

14   information that is not protected by the work product doctrine. Even if the work product doctrine

15   applied, the protection has been waived. Furthermore, this case presents exceptional

16   circumstances under which it is impracticable for Mattel to obtain the information sought by other

17   means. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

18   responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 21-

19   22.

20                              Instruction Nos. 24-26

21        In these excerpts, Mattel's counsel asked the witness (1) what Ms. Garcia told her about

22   Diva Starz and (2) whether Ms. Garcia told the witness she had access to Diva Starz information

23   while she was at Mattel. MGA's counsel objected to the questions to the extent the witness'

24   conversations with Ms. Garcia occurred in the presence of counsel and instructed the witness not

25   to answer.

26        The objections are overruled. The questions do not require the witness to divulge the

27   substance of any privileged communication. Instead, the questions call for factual information to

28   which Mattel is entitled.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

27

EXHIBIT 32

PAGE 370

Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 24-26.

### Instruction No. 27

In this excerpt, Mattel's counsel asked the witness twice whether MGA had access to Mattel internal information regarding Diva Starz prior to February 1st, 2000. MGA's counsel made a speaking objection, which clearly violated Rule 30(c)(2), Fed.R.Civ.P. However, the questions do not need to be repeated because the witness provided responses.

### Instruction No. 28

In this excerpt, Mattel's counsel asked, "MGA is denying that it had access to internal information about Mattel's Diva Starz project prior to September 1st, 2000?" MGA's counsel objected on the grounds that the question calls for a legal conclusion, calls for the disclosure of privileged information, and exceeds the scope of the deposition. Counsel also instructed the witness not to answer.

The objections are overruled. The question does not call for a legal conclusion and MGA has failed to establish the elements of the attorney-client privilege.

Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction Nos. 28.

### Instruction Nos. 29-34

In these excerpts, Mattel's counsel asked as series of questions regarding whether MGA knew Mattel was considering using the name "Brats" and "Boyz" in connection with the Diva Starz project and whether MGA knew Mr. Linker worked on the project. MGA's counsel made several objections including the following: assumes facts not in evidence; misstates the witness' prior testimony; compound; outside the scope of the deposition; improper as to form; lacks foundation; vague and ambiguous; calls for speculation; argumentative; and asked and answered. MGA's counsel objected to one question (Instruction No. 30) on the additional ground that it may call for attorney-client communications. MGA's counsel also instructed the witness not to answer.



EXHIBIT 32

PAGE 371

1  The repeated instructions not to answer were clearly improper. Accordingly, MGA shall

2  produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions

3  identified in Mattel's Separate Statement No. 2 as Instruction Nos. 29-34.

4  ### Instruction No. 35

5  In this excerpt, the witness indicated that she did not know whether Mr. Linker worked on

6  the Bratz project. Mattel's counsel then asked, "But you don't know one way or the other?"

7  MGA's counsel objected to the question, asserting that it had been asked and answered and was

8  argumentative. MGA's counsel also instructed the witness not to answer.

9  The instruction not to answer was clearly improper. Accordingly, MGA shall produce a

10  knowledgeable 30(b)(6) designee to provide complete responses to the questions identified in

Mattel's Separate Statement No. 2 as Instruction No. 35.

11  ### Instruction No. 36

12  In this excerpt, Mattel's counsel asked, "Did you have a conversation with Mr. Jenal about

13  the net worth or the valuation of the company?" MGA's counsel objected on privilege grounds

14  and instructed the witness not to answer.

15  The objection is overruled. The question calls for a "yes" or "no" answer and does not

16  require the witness to divulge the substance of a privileged communication.

17  Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide complete

18  responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction No. 36.

19  ### Instruction No. 37

20  In this excerpt, Mattel's counsel asked, "What did Mr. Daniels tell you about the net worth

21  or valuation of the company?" MGA's counsel objected on privilege grounds.

22  The objection is sustained. As phrased, the question potentially calls for the disclosure of

23  the substance of a privileged communication.

24  ### Instruction Nos. 38-40

25  In these excerpts, MGA's counsel instructed the witness not to answer. The instruction

26  was not based upon a claim of privilege, and therefore was improper. MGA's counsel also made

an improper speaking objection. Accordingly, MGA shall produce a knowledgeable 30(b)(6)

27

28

29

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  32

PAGE  372

1   designee to provide complete responses to the questions identified in Mattel's Separate Statement

2   No. 2 as Instruction Nos. 38-40.

### Instruction No. 41

3

4          In this excerpt, Mattel's counsel asked the witness to identify the litigation for which

5   Exhibit 660 was prepared. MGA's counsel objected to the question as calling for work product

6   and instructed the witness not to answer.

7          The work product objection is overruled. The question calls for the disclosure of facts, not

8   work product. Accordingly, MGA shall produce a knowledgeable 30(b)(6) designee to provide

9   complete responses to the questions identified in Mattel's Separate Statement No. 2 as Instruction

    No. 41.

10
### Instruction Nos. 42-44

11

12         In these excerpts, Mattel's counsel posed more questions about the litigation for which

13   Exhibit 660 was prepared, including the identity of the parties to the litigation and whether the

     litigation was ongoing. MGA's counsel objected on privilege and work product grounds.

14
           The objections are overruled. The questions call for the disclosure of facts, not work

15   product. Further, MGA has failed to establish that the questions require the witness to disclose

16   the substance of a privileged communication. Accordingly, MGA shall produce a knowledgeable

17   30(b)(6) designee to provide complete responses to the questions identified in Mattel's Separate

18   Statement No. 2 as Instruction Nos. 42-44.

### Instruction No. 45

19

20         In this excerpt, Mattel's counsel asked whether an attorney by the name of Mr. Daniels

21   wrote a document. The work product objection by MGA's counsel is overruled. The "yes" or

22   "no" question calls for the disclosure of facts, not work product. Accordingly, MGA shall

23   produce a knowledgeable 30(b)(6) designee to provide complete responses to the questions

24   identified in Mattel's Separate Statement No. 2 as Instruction No. 45.

25   E. Mattel's Request for Relief No. 5: Mattel seeks an order reopening the deposition of MGA
     designee Lisa Tonnu based on a purported "complete reversal of testimony" made through written
26   "changes" to her deposition transcript.

27         Ms. Tonnu made changes to her deposition transcript after her deposition was completed.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

30

EXHIBIT 32

PAGE 373

1    Counsel asked Ms. Tonnu whether any documents had been collected from MGA's Filenet

2    storage facility, to which she responded "no"; whether Mr. Daniels told her that he was going to

3    collect documents from Filenet, to which she responded "yes"; and whether the documents at

4    Filenet contained any documents responsive to Mattel's request, to which she responded "no."

5    Later, Ms. Tonnu revised her deposition transcript and reversed each of her answers.

6        Mattel contends that Ms. Tonnu's initial answers in the negative precluded a line of

7    questioning into, for example, who collected documents, which documents were collected and

8    how.

9        MGA contends that the changes Ms. Tonnu made do not justify re-opening a deposition.

10   Nevertheless, MGA has no objection to follow-up questions about Ms. Tonnu's revision when she

11   is deposed again in January.

12       In light of MGA's lack of opposition, MGA shall make Ms. Tonnu available for follow-up

13   questioning regarding the revisions to her deposition testimony.

14   F. Mattel's Request for Relief No. 6:  Mattel seeks an order compelling Rebecca Harris to sit for
     the completion of her deposition and/or compelling such person selected by MGA as its designee
     to complete the testimony on topics for which Harris was previously designated.

15       Mattel seeks an additional day to depose Ms. Harris.  Mattel contends that it needs more

16   than the 7-hours it has already deposed Ms. Harris to complete its questioning on all topics for

17   which she was designated.  Mattel emphasizes that Ms. Harris is designated to testify on nine

18   separate topics, each of which pertains to issues at the heart of the litigation, including the origin,

19   creation, design and development of Bratz prior to June 30, 2001; relevant contracts concerning

20   Carter Bryant and Bratz; payments made to Bryant and other financial information relating to

21   Bratz; and third parties who were involved in or otherwise have knowledge about the creation,

22   design and development of Bratz.

23       In addition to the topics already discussed above in Section "A" to this Order, Mattel

24   contends that it did not have sufficient time to depose Ms. Harris on Topic Nos. 19, 22 and 23,

25   which are set forth below:

26       **Topic No. 19:**  Each agreement or contract between YOU and any PERSON other than
         BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that REFERS
27       OR RELATES to the time period prior to December 31, 2001 (regardless of when such
         agreement or contract was negotiated or executed), including without limitation the timing
28       thereof, the negotiations, drafts and COMMUNICATIONS that REFER OR RELATE

                                                                                              31

EXHIBIT 32

PAGE 374

thereto, and any actual or proposed amendments thereto.

**Topic No. 22:** The payment of money or anything of value by or for YOU or on YOUR behalf that has been made to, for or on behalf of BRYANT (a) for work, services or activities performed by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made), (2) for DESIGNS CREATED by BRYANT prior to January 1, 2001 (regardless of when such payment was actually made) or (c) in connection with BRATZ or any BRATZ DESIGN at any time, including amount(s) thereof and the reasons therefore,

**Topic No. 23:** The payment of royalties to, for or on behalf or BRYANT made by or for YOU or on YOUR behalf, including the timing, manner and amounts of such payments and the reasons therefore.

MGA contends that Mattel has not made the required showing that additional time is "needed to fairly examine the deponent" or that "the deponent, another person, or any other circumstance impedes or delays the examination." Fed.R.Civ.P. 30(d)(1). Furthermore, MGA contends that Mattel wasted much of the 7-hours with Ms. Harris by asking questions outside the topics for which she was designated and badgering the witness.

As discussed already above, Ms. Harris was not sufficiently prepared to testify on several topics and did not discharge MGA's duty to produce a witness to testify as to information known or reasonably available to MGA. Her lack of preparedness alone justifies additional deposition time. The relatively large number of topics for which Ms. Harris was designated (Topic Nos. 11, 13, 14, 19, 21, 22, 23, 27 and 28), also justifies additional deposition time to enable Mattel to fairly examine the deponent. Many of the topics for which Ms. Harris was designated are highly relevant to the case. Mattel has identified a few instances where Mattel was inefficient in conducting her deposition; however, the deposition generally proceeded at a reasonable pace. Accordingly, Mattel is granted an additional four hours to complete the deposition of Ms. Harris on all of the topics for which she was designated, except Topic Nos. 27 and 28 which were discussed previously.

G. Mattel's Request for Relief No. 7: Mattel seeks an order imposing sanctions for MGA's alleged willful violations of the May 16, 2007 and August 14, 2007 Orders, for MGA's allegedly improper instructions not to answer deposition questions and for MGA's alleged improper coaching, harassing and obstructionist conduct at the September 24-25, 2007 deposition of Lisa Tonnu and at the October 9, 2007 deposition of Spencer Woodman in the amount of $10,000.

Sanctions are appropriate based upon MGA's failure to produce 30(b)(6) designees who were reasonably prepared to testify on seven out of the sixteen topics at issue, namely Topic Nos.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _32_

PAGE _375_

1    21, 24, 25, 31, 34, 39 and 40.  By agreeing to provide supplemental testimony on these topics,

2    MGA implicitly acknowledges that the witnesses provided insufficient testimony.  Further,

3    MGA's counsel also repeatedly flouted Rule 30(c)(2), Fed.R.Civ.P., and prior orders prohibiting

4    instructions not to answer for reasons other than privilege.  Accordingly, pursuant to Rule

5    30(d)(2) and 37(b), Fed.R.Civ.P., sanctions are imposed in the amount of $6,000.

6    H.  Mattel's Request for Relief No. 8:  Mattel seeks a report and recommendation to Judge
     Stephen G. Larson that recommends the imposition of preclusion sanctions, that certain facts
7    related to the topics compelled be deemed admitted, and/or that MGA be found in contempt for
     MGA's allegedly willful and repeated violations of the Orders.

8         As previously stated at the December 14, 2007 hearing, it is premature to consider

9    preclusion sanctions and contempt at this time.  If Mattel intends to pursue such sanctions, it may

10   do so only after the close of Phase 1 discovery.

11                                  V. CONCLUSION

12        For the reasons set forth above, it is hereby ordered as follows:

13        1.    No later than January 30, 2008, MGA shall produce witnesses who are prepared to

14   testify about information known or reasonably available to MGA in accordance with Rule

15   30(b)(6), Fed.R.Civ.P., and to provide complete testimony on the following topics as specified

16   herein:  Topic Nos. 11, 13, 14, 19, 21-25, 31, 34 (with limitations noted herein) 39 (with

17   limitations noted herein), 40 and 41.  Mattel's motion is denied as to Topic Nos. 27 and 28.

18        2.    MGA's 30(b)(6) designee Spencer Woodman shall provide full and complete

19   responses to each of the questions identified in Mattel's Separate Statement No. 2 that are

20   identified herein as requiring a further response because the objections have been overruled

21   and/or the instructions not to answer have been found improper, and the question seeks relevant

22   and privileged information to which Mattel is entitled.

23        3.    MGA shall produce the e-mails that MGA designee Kenneth Lockhart identified

24   during his June 14, 2007 deposition as documents which he reviewed and relied upon to refresh

25   his recollection in preparation for his deposition.  Mattel is also permitted to conduct reasonable

     follow-up questioning regarding those documents.

26        4.    MGA's 30(b)(6) designee Lisa Tonnu shall provide full and complete responses to

27   each of the questions identified in Mattel's Separate Statement No. 2 that are identified herein as

28

33

EXHIBIT 32

PAGE 376

1    requiring a further response because the objections have been overruled and/or the instructions

2    not to answer have been found improper, and the question seeks relevant information to which

3    Mattel is entitled.

4         5.    In addition to the deposition testimony authorized above, Mattel is granted leave to

5    depose Ms. Tonnu regarding the changes she made to her deposition transcript.

6         6.    Mattel is granted additional time to complete a full and fair examination of Ms.

7    Harris on all of the topics for which she was designated, except Topic Nos. 27 and 28.  The

     deposition of Ms. Harris shall not exceed four (4) hours.

8         7.    Mattel's request for monetary sanctions is granted in part pursuant to Fed.R.Civ.P.

9    37(b).  MGA shall pay sanctions in the amount of $6,000 no later than February 11, 2008.

10        8.    Mattel's request for preclusion sanctions and/or a finding of contempt is denied

11   without prejudice.

12        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

13   Master, Mattel shall file this Order with the Clerk of Court forthwith.

14

15   Dated:  January 8, 2008                    _____

16                                              HON. EDWARD A. INFANTE (Ret.)
                                                Discovery Master

17

18

19

20

21

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  3 2    34

PAGE  3 7 7

# Exhibit 33

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
6    Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
7    Facsimile:  (213) 443-3100

8  Attorneys for Plaintiff Mattel, Inc.

9

10                    UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12                         EASTERN DIVISION

13  CARTER BRYANT, an                  CASE NO. CV 04-9049 SGL (RNBx)
     individual,
14                                      Consolidated with Case Nos. CV 04-09059
               Plaintiff,               and CV 05-02727
15
          vs.                           **DISCOVERY MATTER**
16
     MATTEL, INC., a Delaware           **[To Be Heard By Discovery Master Hon.**
17   corporation,                       **Edward Infante (Ret.) Pursuant To The**
                                        **Court's Order of December 6, 2006]**
18             Defendant.
                                        [~~PROPOSED~~] ORDER REGARDING
19                                      MATTEL, INC.'S MOTION TO COMPEL
     AND CONSOLIDATED                   PRODUCTION OF METADATA
20   ACTIONS

21

22

23

24

25

26

27                                      EXHIBIT _33_

28                                      PAGE _378_

07209/2345470.29/234417
2.1                            1-9

                                        [PROPOSED] ORDER

1                                 [~~Proposed~~] Order

2         The Court having received the motion of Mattel, Inc. ("Mattel") to compel the

3   production of metadata for specified emails by MGA Entertainment, Inc. ("MGA"),

4   which was filed and served on November 21, 2007 (the "Motion"), and having

5   considered the Motion and all papers in support and opposition thereto, the Court

6   hereby ORDERS:

7         1.    The Motion is GRANTED IN PART.  MGA shall produce to Mattel,

8   on or before January 10, 2008, the approximately 80 native format emails requested

9   by Mattel in its Motion and identified by MGA at argument on January 3, 2008 as

10  the emails MGA's vendors have been able to locate in native electronic format to

11  date.  The emails shall be produced in their native electronic format sufficient to

12  show from where the email was sent and to where the email traveled.

13        2.    Mattel's Motion as to the remaining emails is DENIED WITHOUT

14  PREJUDICE because Mattel need not prove that each and every email

15  communication crossed commerce lines.

16        3.    The Court finds that monetary sanctions against MGA are appropriate

17  and that some shifting of the costs of this production is also appropriate.  However,

18  in lieu of awarding monetary sanctions against MGA, the Court ORDERS that there

19  shall be no cost shifting associated with this Motion and/or the production that is

20  ordered herein.

21        IT IS SO ORDERED.

22

23

24  DATED: January 9, 2008      By

25                                Hon. Edward A. Infante (Ret.)

                                      Special Discovery Master

26

27

28

EXHIBIT 33

PAGE 379

[PROPOSED] ORDER