1   Robert C. O'Brien (SBN 154372)
     ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
     Los Angeles, CA  90013-1065
3   Telephone:   213.629.7400
     Facsimile:   213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8            UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10            EASTERN DIVISION

11

| | |
|---|---|
| 12   CARTER BRYANT, an individual, | Case No.  CV 04-09049 SGL (RNBx) |
| 13         Plaintiff, | |
| 14         v. | **Consolidated with** **Case No. CV 04-09059** **Case No. CV 05-2727** |
| 15   MATTEL, INC., a Delaware corporation, | **PHASE II DISCOVERY MATTER** |
| 16         Defendant. | **ORDER NO. 3, REGARDING:** |
| 17 | |
| 18 | **(1)  MOTION OF MGA ENTERNTAINMENT, INC., ISAAC LARIAN AND MGA ENTERTAINMENT (HK) LIMITED TO QUASH NON-PARTY SUBPOENAS; and** |
| 21 | **(2)  MOTION OF MATTEL, INC. TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO THE SAME NON-PARTY SUBPOENAS** |

24
25   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
26   MGZ ENTERTAINMENT, INC. v.
     MATTEL, INC.
27

28

This Order sets forth the Discovery Master's ruling on: (1) the motion of MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Limited (collectively "MGA") to quash certain non-party subpoenas [Docket Number 4779] and (2) the corresponding motion of Mattel, Inc. ("Mattel") to compel production of documents responsive to the same non-party subpoenas [Docket Numbers 4769 and 4788] (collectively, the "Motions").

The Motions came on regularly for hearing before the Discovery Master on March 4, 2009.  All interested parties were represented by counsel and afforded the opportunity to present oral argument on the Motions.  The Discovery Master, having considered the papers filed in support of and in opposition to the Motions, and having heard oral argument thereon, rules as set forth below.

I.    **INTRODUCTION**

A.    **The Court's February 11, 2009 Ruling**

On February 11, 2009, the Court heard oral argument on various motions filed by the parties.  During the proceedings, counsel took the opportunity to orally request clarification by the Court regarding whether the parties' respective motions relating to the subpoenas served by Mattel on various entities allegedly related to MGA (the "Subpoenas") are in any way stayed or precluded by any of the Court's prior orders.

In response, the Court stated: "I will instruct the Discovery Master this afternoon, in no uncertain terms, that there is no stay on any discovery related to this case at all."  (Reporter's Transcript of Proceedings, February 11, 2009 ["Tr."], 99:8 – 10).  Counsel for MGA then referred to the fact that the Court had previously declined to allow Mattel to serve certain discovery accompanying Mattel's motion for a receiver and characterized the third-party subpoenas as an attempt to circumvent the Court's ruling.  (Tr., 101:12 – 17).  In response, the Court stated:

1

2
3
4
5
6
7

> Then the question becomes – and this is a question for the Discovery Master, not for this Court – whether or not the discovery is related to Phase 2.  If it is, it is.  I'm not going to pass any judgment whatsoever.  I'm going to leave that completely up to the Discovery Master. … The question for the [D]iscovery [M]aster will be whether or not the disputed discovery request is related or relevant to the trial that has now been scheduled for March [2010] or not.

(Tr., 101:18 – 22; 103:1 – 3).

8
9
10
11
12
13
14
15
16

The Discovery Master understands the Court's ruling as indicating that, in deciding the motions relating to the Subpoenas, the Discovery Master should consider whether there is a nexus between the information sought by the Subpoenas, on the one hand, and the Phase 2 claims and counterclaims set for trial in March 2010, on the other hand.  If the information sought by the Subpoenas is, to use the Court's words, "related to Phase 2" or "related or relevant to the [Phase 2] trial," then that information could potentially be the subject of appropriate discovery requests by Mattel.[1]

17

### B.  Information Sought By The Subpoenas

18
19
20
21
22

The information sought by Mattel's Subpoenas falls into two broad categories.  First, Mattel seeks documents from third parties Omni 808 Investors, LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively, the "Financing Entities") involving, among other things, their internal ownership and operations and their role in providing financing to MGA during the summer of 2008 (the

23
24
25
26
27
28

---

[1] Even prior to the Court's February 11, 2009 ruling, Mattel acknowledged that it had the burden of demonstrating a nexus between the information sought by the Subpoenas and the Phase 2 issues, as demonstrated by Mattel's inclusion of a section in its Motion to Compel summarizing the claims to be adjudicated in Phase 2, (Motion, pp. 5 – 8), and a section arguing that the information sought by the third-party subpoenas is relevant to Mattel's Phase 2 claims, (*Id.*, pp. 18 - 24 and 24 – 25).  However, Mattel also argued that the information sought might be appropriate regardless of any nexus to Phase 2.  (*See id.*, pp. 14 – 17 [arguing that MGA's prior statements regarding its finances in Phase 1 "opened the door" to discovery on this issue] and *id.*, p. 23 [arguing that the information sought is relevant to MGA's credibility]).  Based on the Court's subsequent ruling on February 11, 2009, as well as the Discovery Master's own independent evaluation of those arguments, the Discovery Master concludes, as discussed more fully below, that these arguments are insufficient, standing alone, to justify the non-party discovery Mattel seeks.  Rather, Mattel must demonstrate some link between the information sought and the issues to be adjudicated by the Court at the Phase 2 trial.

1   "Financing Discovery").  Based on the information presented at the February 11,
2   2009 hearing and in connection with the pending motions, it does not appear that
3   either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have
4   an ownership interest in the Financing Entities.[2]  (*See* Tr., 70:22 – 72:5; 78:9 -25).

5       Second, Mattel seeks documents from third parties IGWT Group, LLC and
6   IGWT 826 Investments, LLC (collectively, the "Transferee Entities") regarding
7   MGA's sale to them of infringing MGA inventory, namely Bratz dolls (the
8   "Transferee Discovery").  MGA does not dispute that the Transferee Entities are
9   owned and/or controlled by Larian.  (*See*, *e.g.*, MGA's Reply in support of its
10  Motion to Quash, at p. 5, fn. 6, where MGA refers to the purchase of Bratz
11  inventory by the Transferee Entities as "Larian's purchase of those . . .
12  products . . . .").[3]

13  **II.    MGA's Motion To Quash**

14      Because it could dispose of all outstanding discovery issues related to the
15  Subpoenas, the Discovery Master first addresses MGA's Motion to Quash filed on
16  February 3, 2009.

17      **A.    Legal Standard**

18      As the party moving to quash the Subpoenas, MGA bears the burden of
19  satisfying the standard set forth in Rule 45(b), which provides that the court may
20  "quash or modify the subpoena if it is unreasonable and oppressive."   (Fed. R. Civ.
21  P. 45(b); *see also Wiwa v. Royal Dutch Petroleum Co*., 392 F.3d 812, 818 (5th Cir.
22  2004) ["The moving party has the burden of proof to demonstrate that compliance

23

_____

24  [2] Of course, this is one of the facts Mattel seeks to investigate through the Subpoenas to the Financing Entities. The
    Discovery Master's ruling denying Mattel's Motion to Compel the Financing Parties to comply with the Subpoenas
25  does not address – and should not be construed as deciding – whether Mattel could, upon establishing a nexus to a
    legitimate Phase 2 issue, seek to obtain this information from MGA.
26
    [3] Moreover, MGA does not dispute the assertions made by Mattel in its Motion to Compel at pp. 11– 12, including
27  that Larian created IGWT Group during the Phase 1 trial and registered its place of business as his home address, and
    that Larian created IGWT 826 Investments the day after the Phase 1 trial ended and registered it at the home address
28  of his sister.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

with the subpoena would be unreasonable and oppressive" (internal quotations omitted)]; *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) [The burden of proving that a subpoena is oppressive is on the party moving to quash]; *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) [the burden is on the movant to establish that a subpoena duces tecum should be quashed]).  "The burden is particularly heavy to support a 'motion to quash as contrasted to some more limited protection.'"  (*Westinghouse Electric Corp. v. City of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965) [denying a motion to quash supported by two affidavits]).

## B.    Arguments Made By MGA In Support Of Its Motion To Quash

The sole argument set forth in MGA's Motion to Quash is that the Court's January 7, 2009 order appointing a forensic auditor bars Mattel from seeking the information sought by the Subpoenas.  (*See* MGA's Motion to Quash, pp. 1 - 6). But that argument fails for the reasons set forth above.  The Court made it clear at the hearing on February 11, 2009 that:

> There is no stay on discovery.  Period. . . . . [The forensic auditor appointed by the Court] is acting at the Court's discretion to inform the Court of information. . . . That's an entirely separate matter.  And I have not stayed any discovery and there should be no reliance on that.  If that was misunderstood, it's clarified now.

(Tr., 97:15, 98:8 - 9, and 98:13 - 15).

Recognizing that its only argument has been rejected by the Court, MGA argues for the first time in its Reply that its Motion to Quash should be granted because the Subpoenas are not relevant to any of Mattel's Phase 2 claims.  (*See* MGA's Reply Brief in Support of the Motion to Quash, pp. 1 and 5 - 12). However, MGA did not make this argument in its opening brief.  It instead declared in its moving papers that whether the Subpoenas are related to any "Phase 2 issues is beside the point."  (*Id.*, p. 5).  Because MGA did not address the relevance of the subject discovery until the filing of its Reply, the Discovery Master declines to

1   consider the argument in connection with the Motion to Quash.

2       The Discovery Master, like the Court,[4] disfavors the insertion of new

3   arguments at the reply stage that could have been raised in the moving papers.  A

4   party filing a motion is required to raise all of its arguments in its opening brief to

5   prevent "sandbagging" of the non-moving party and to provide opposing counsel

6   the chance to respond.  This rule is routinely adhered to by courts in the Ninth

7   Circuit.  (*See*, *e.g.*, *United States v. Boyce*, 148 F.Supp .2d 1069, 1085

8   (S.D.Cal.2001); *Leick v. Hartford Life and Acc. Ins. Co.,* 2007 WL 1847635 at *1,

9   n. 1 (E.D.Cal. 2007); *Stewart v. Wachowski,* 2004 WL 2980783, at *11 (C.D.Cal.

10  Sept. 28, 2004); *Hamilton v. Willms,* 2007 WL 2558615, *11 (E.D.Cal.2007); *see*

11  *also United States v. Cox,* 7 F.3d 1458, 1463 (9th Cir.1993); *United States v.*

12  *Wright,* 215 F.3d 1020, 1030 n. 3 (9th Cir.2000)).

13      Furthermore, MGA will not suffer any prejudice from this decision because

14  the issue it raised in its Reply (i.e., are the Subpoenas seeking information related to

15  any Phase 2 claims) has been fully briefed by the parties and is ruled upon by the

16  Discovery Master in connection with Mattel's Motion to Compel.[5]  (*See* Section III

17  below).

18      Accordingly, MGA's Motion to Quash is **DENIED**.

19  //

20  //

21  //

22  //

23

24  [4] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

25

26  [5] That the arguments raised in the Reply are the same as those in MGA's Opposition to the Motion to Compel is conceded by Mattel.  Indeed, Mattel admitted in its Request to Consolidate MGA's Motion to Quash and Motion to Compel (which was denied as untimely by the Discovery Master at the hearing on March 4, 2009) that the "MGA Parties' Opposition to Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas . . . makes the same arguments as the MGA Parties' Reply in support of their Motion to Quash."   (Mattel's Request to Consolidate MGA's Motion to Quash and Mattel's Motion to Compel, p. 2).

27

28

### III.   Mattel's Motions To Compel

#### A.   The Purported Procedural Defects Barring Mattel's Motions To Compel

MGA, the Financing Entities, and the Transferee Entities all argue that that Mattel's Motion to Compel should be denied on several different procedural grounds.

#### 1.   The Court's January 7, 2009 Order

As an initial matter, the Transferee Entities and the Financing Entities repeat the argument made by MGA in its Motion to Quash that the Court's January 7, 2009 Order appointing a forensic auditor barred Mattel from seeking the discovery sought by the Subpoenas.  (Financing Entities' Opposition to Mattel's Motion to Compel at p. 3; Transferee Entities' Opposition to Mattel's Motion to Compel at pp. 5 - 7).  But that argument fares no better here than it did with respect to MGA's Motion to Quash and is rejected for the reasons discussed in Section II above.

#### 2.   Local Rule 37

The Financing Entities and the Transferee Entities also argue that Mattel's Motion to Compel should be denied because Mattel failed to comply with Local Rule 37 by, among other things, failing to meet and confer and failing to file a joint stipulation.  (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 1 and 7 - 10; Transferee Entities' Opposition to Mattel's Motion to Compel, p. 2 [referencing Local Rule 37 in passing]).  However, Local Rule 37 (as distinguished from Federal Rule 37, which is discussed in subsection 7a, below) does not apply to discovery disputes in this case.  Rather, the applicable procedure is the one adopted by the Court in its order appointing a discovery master dated December 6, 2006 ("Discovery Master Order").[6]  Because the Discovery Master Order provides that

---

[6] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a discovery master for Phase 2 of this litigation.  (*See* Court's Order dated January 6, 2009, p. 2 ["The Discovery Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]).

"all third parties subject to discovery requests . . . in this litigation shall be bound by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that order applies to the Financing Entities as well as the Transferee Entities, and its procedures replace those set forth in Local Rule 37.  (*Id.*, p. 4).

### 3.   Local Rule 11-6 And Paragraph 4(b) Of The Court's Standing Order

The Financing Entities and MGA further argue that Mattel's Motion to Compel should be denied because it exceeds the page limitations set forth in Local Rule 11-6 and Paragraph 4(b) of the Court's Standing Order.  (*See* Financing Entities' Opposition to Mattel's Motion to Compel, p. 9; MGA's Opposition to Mattel's Motion to Compel, pp. 18 - 19).  Each of these contentions is unavailing. The Discovery Master Order (not the Local Rules or the Court's Standing Order) governs discovery disputes in this case, and it does not impose any page limit on such motions.[7]  In fact, the Discovery Master Order dispenses with the formatting requirements of the Local Rules in certain ways, such as allowing letter briefs, and even permits the parties to agree to alternative procedures, including, presumably, filing briefs that are more than 25 pages in length.  (*See* Discovery Master Order, p. 4).  Thus, while the Discovery Master encourages the parties to be as efficient as possible in their briefing, he recognizes that briefs in excess of 25 pages are either directly permitted under the Discovery Master Order (since no page limitation was imposed by the Court) or implicitly allowed (since the parties may agree to alternate procedures).  He further recognizes that the complex nature of this case may periodically necessitate the filing of briefs that exceed 25 pages.[8]  For all of

---

[7] Even assuming the 25 page limitation for briefs did apply, Mattel had the option of filing separate motions to compel for each of the subpoenas at issue and could have easily extended the page limitation well beyond the 30 pages it filed in connection with its combined motion that addressed multiple subpoenas propounded on the Transferee Entities and the Financing Entities.

[8] In fact, the parties to this lawsuit have filed multiple discovery motions in this case that contained more than 25 pages.  (*See* Supplemental Declaration of Jon D. Corey in Support of Mattel, Inc.'s Reply in Response to The MGA Parties' Opposition to Motion to Compel, ¶ 7).

1   these reasons, filings in excess of 25 pages are permitted.[9]

2   ### 4.   Local Rule 6-1

3   The Financing Entities argue in passing that Mattel's motion to compel

4   should be denied because it violates Local Rule 6-1. (Financing Entities'

5   Opposition to Mattel's Motion to Compel, p. 6).   However, the Discovery Master

6   Order adopts a completely different set of deadlines than the Local Rules for the

7   filing of motions, oppositions and replies, and a different schedule for noticing

8   hearing dates.  (Discovery Master Order, p. 4).  Therefore, Local Rule 6-1 has no

9   applicability here.

10   ### 5.   Failure To Name MGA In The Motion To Compel

11   MGA next argues that Mattel's motion to compel is procedurally improper

12   because MGA was not named in the Motion to Compel and Mattel should not be

13   allowed to respond to MGA's objections.   (MGA's Opposition to Mattel's Motion

14   to Compel, p. 18).  But MGA has cited no legal authority, and the Discovery

15   Master has found none, standing for the proposition that a party must name in its

16   motion to compel all parties who have objected to an underlying subpoena even if

17   they are not actually the target of the subpoena.  In fact, the contention that Mattel's

18   Motion to Compel should have been brought against MGA makes no sense given

19   that it could not possibly comply with any order compelling a response to the

20   Subpoenas.

21   ### 6.   Mattel's Separate Statement

22   MGA also contends that Mattel's Motion to Compel should be denied

23   because its' separate statement "is another classic example of . . . inefficiency."

24   (*Id.*, p. 19).  Once again, nothing in the Discovery Master Order prevents a party

25   from filing a separate statement that first identifies the request in dispute and then

26

27   _____

28   [9] In the event the length of briefs ever becomes excessive, the Discovery Master will issue an order setting a specific page limitation.

sets forth the various contentions of the parties, even if the information regarding the various requests happens to be repetitive.  Regardless, MGA has not cited any legal authority in support of its position and the Discovery Master finds no reason to dispose of Mattel's Motion to Compel merely because it filed a separate statement that contains duplicative arguments.[10]

### 7.    Meeting And Conferring

As their final procedural argument in opposition to the Motion to Compel, the Transferee Entities and the Financing Entities assert that the motion should be denied because Mattel failed to adequately meet and confer prior to filing the motion.  (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 7 - 8; Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).

### a.    Applicable Procedure

Prior to filing its motion to compel, Mattel had an obligation to comply with both the Federal Rules of Civil Procedure and the Discovery Master Order.  Federal Rule of Civil Procedure 37(a) expressly requires that a party filing a motion to compel discovery first meet and confer in "good faith."  (Fed. R. Civ. Proc. 37(a)).  Similarly, the Discovery Master Order states that unless an "alternative procedure" is agreed upon or otherwise ordered by the Discovery Master, the

> moving party shall first identify each dispute, state the relief sought, and identify the authority supporting the requested relief in a meet and confer letter that shall be served on all parties by facsimile or electronic mail.  The parties shall have five court days from the date of service of that letter to conduct an in-person conference to attempt to resolve the dispute.  If the dispute has not been resolved within five court days after such service, the moving party may seek relief from the Discovery Master by formal motion or letter brief . . .

(Discovery Master Order, p. 4).

//

---

[10] The Discovery Master notes that where there are numerous discovery requests in dispute he would prefer for a separate statement to be submitted by the moving party.

**b.**     **Mattel's Meet And Confer Regarding The Financing Entities**

In challenging Mattel's meet and confer effort, the Financing Entities first claim that Mattel violated the Discovery Master Order because no "in-person meeting occurred."   (Financing Entities' Opposition to Mattel's Motion to Compel, p. 8).  But that argument is without merit, since Mattel and the Financing Entities agreed to an alternative procedure that disposed of the in-person meet and confer requirement.[11]  Indeed, MGA's counsel sent counsel for Mattel, counsel for the Transferee Entities and counsel for the *Financing Entities* a letter on January 23, 2009 memorializing the parties' agreement and establishing a schedule whereby the parties would "meet and confer on January 29 and 30 . . ."  (Mattel's Reply in Support of its Motion to Compel filed on February 13, 2009, pp. 9 - 10; Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply to the Motion to Compel filed on February 13, 2009, ¶ 4 and Ex. 2).  That the Financing Entities' counsel received this letter and acted in accordance with its terms is evidenced by, among other things, the fact that they served objections to the Subpoenas on January 28, 2009 (which was the deadline specified in the January 23 letter) and started meeting and conferring with Mattel's counsel telephonically on January 30.  (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 3 and 4).  Accordingly, Mattel did not have any obligation to meet with the Financing Entities in person since the parties had agreed to waive that obligation.

Nevertheless, Mattel still had an obligation to meet and confer with the Financing Entities in good faith.  Good faith cannot be shown merely through perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a genuine attempt to resolve the discovery dispute through non-judicial means.  (Fed. R. Civ.

---

[11] To promote efficiency and minimize the necessity for counsel to travel between their respective offices, the Discovery Master shall deem Paragraph 5 of the Discovery Master Order (mandating that the parties have an in person conference to attempt to resolve discovery disputes) to be sufficiently satisfied if the parties and non-parties involved in a discovery dispute meet and confer telephonically or by video conference.  However, the Discovery Master emphasizes that this accommodation in no way lessens the parties' obligation to meet and confer in good faith.

1  Proc. 37(a)(1)).

2       Because the evidence and declarations submitted by Mattel and the Financing

3  Entities are in conflict regarding what transpired during their respective meet and

4  confer communications, (*Cf.* Financing Entities' Opposition to Mattel's Motion to

5  Compel, pp. 3 – 5; Mattel's Reply Brief in Support of its Motion to Compel filed on

6  February 13, 2009, pp. 9-10), the Discovery Master gives Mattel the benefit of the

7  doubt and concludes that it adequately met and conferred with respect to Omni 808

8  Investors, LLC and Vision Capital, LLC.

9       By contrast, Mattel arguably did not even begin the meet and confer process

10 with OmniNet Capital, LLC prior to filing its motion to compel, because counsel

11 for the Financing Entities informed Mattel that they did not receive that Subpoena

12 until the afternoon of February 2, 2009 and filed objections to the Subpoena on that

13 date.  (Financing Entities' Opposition to Mattel's Motion to Compel at p. 5).  No

14 "good faith" meeting could therefore have taken place.

15      Although the meet and confer with respect to OmniNet Capital, LLC was

16 inadequate, the Discovery Master will nonetheless address the merits of Mattel's

17 Motion to Compel in all respects, including concerning the Subpoena served on

18 OmniNet Capital, LLC.  The Discovery Master does so for purposes of efficiency

19 (i.e., the issues to be decided regarding the subpoena served on OmniNet Capital,

20 LLC are essentially identical to those that must be addressed in connection with the

21 subpoenas served on Omni 808 Investors, LLC and Vision Capital, LLC) and

22 because addressing the merits of the motion does not alter the outcome.[12]

23      c.    **Mattel's Efforts To Meet And Confer Regarding The**

24            **Transferee Entities**

25      Like the Financing Entities, the Transferee Entities contend that Mattel's

26 motion to compel should be denied because it did not meet and confer in good faith.

27

28 ___
[12]  As noted above, the parties are admonished to abide by the provisions of the Discovery Master Order requiring a good faith attempt to meet and confer regarding discovery disputes prior to the filing of any discovery motion.

(Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).  Yet, the Transferee Entities concede that their counsel engaged in multiple meet and confer teleconferences.  (*Id.* at pp. 3 - 4).  Several emails and letters were also exchanged between the parties as part of the meet and confer process.  (*Id.*).  In light of these interactions, the Discovery Master again gives Mattel the benefit of the doubt in favor of resolving the issues on the merits and concludes that it adequately met and conferred with the Transferee Entities.

### B.   Legal Standard Governing Enforcement Of The Subpoenas

Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil actions of "any matter, not privileged, which is relevant to the subject matter involved . . .. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."  Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence; but the discoverable information need not be admissible at the trial.  (*Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D.Kan.1993)).

The broad scope of discovery described in subsection (b)(1) is tempered by provisions protecting the responding party from undue burden.  Rule 26(b)(2) provides that the frequency or extent of discovery otherwise allowed by the Rules must be limited if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

Moreover, the Federal Rules distinguish between discovery from non-parties to a lawsuit (governed under Rule 45) and discovery from parties (governed generally by Rule 26), based in part on the recognition that the former is inherently more burdensome and less convenient than the latter.  (*See*, *e.g.*, *Solarex v. Arco Solar, Inc*., 121 F.R.D. 163, 179 (E.D.N.Y. 1988) [The status of a non-party is significant when determining whether compliance with a discovery demand would constitute an undue burden]; *Katz v. Batvia Marine and Sporting Supplies, Inc*., 984 F.2d 422, 424 (Fed. Cir. 1993) [The fact that discovery is sought from a non-party is one factor that the Court may weigh in determining whether the discovery requested is necessary, relevant, or burdensome].  Courts applying Rules 26 and 45 have interpreted these rules to afford non-parties special heightened protection against burdensome discovery.  (*See*, *e.g.*, *Exxon Shipping Co. v. U.S. Dept of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

Accordingly, requests for documents that pertain to a party and that can be more easily and inexpensively obtained from that party also impose an undue burden.  (*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)).  Further, if the documents sought are neither relevant nor calculated to lead to the discovery of admissible evidence, "then any burden whatsoever imposed upon the non-party would be by definition undue."  (*Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 335-336 (N.D.Cal. 1995)).

Each of the moving parties bears the burden of establishing the basis for the relief it seeks.  As the party moving to compel compliance with the Subpoenas, Mattel bears the burden of "establishing that the information sought is relevant and necessary to its lawsuit."  (*Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.,* 216 F.R.D. 533, 534 (M.D.Fla. 2003)).

Finally, in deciding whether to enforce a subpoena, the Discovery Master must balance "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena."  (*Heat & Control,*

1  *Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986) citing

2  *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560, 564 (7th Cir.1984)).

3       **C.**     **Mattel's Contention That MGA Has Placed Its Finances At Issue**

4       As its first ground for moving to compel production of the documents sought

5  by the Subpoenas, Mattel argues that MGA has misrepresented its finances, thereby

6  making it necessary and appropriate for Mattel "to obtain an accurate understanding

7  of MGA's and Larian's finances."  (Motion to Compel, p. 14).  According to

8  Mattel, MGA's supposed misrepresentations have placed its financial condition at

9  issue, and have opened the door to discovery of any information bearing on MGA's

10 finances.  (*Id.* ["Discovery on MGA's financials is amply warranted by MGA's

11 own statements *alone.*"] (emphasis added)).

12      However, after Mattel filed its Motion, the Court made it clear that the

13 validity of the Subpoenas must be evaluated with reference to whether they relate to

14 the matters to be adjudicated in Phase 2.   As the Discovery Master understands the

15 Court's ruling, the Subpoenas cannot be justified merely because they seek

16 information regarding some contention made during Phase 1, without regard to

17 Phase 2.  In other words, putting a fact at issue in Phase 1, cannot, standing alone,

18 suffice to render that fact the proper subject of discovery in Phase 2.

19      Thus, to the extent Mattel's first argument asserts that MGA's statements,

20 standing alone, warrant discovery from the Subpoena recipients, that argument is

21 rejected.  Rather, the Discovery Master will evaluate whether discovery of MGA's

22 finances is warranted in light of the issues to be adjudicated in Phase 2.

23      Further, even if Mattel were not required to demonstrate some nexus between

24 the Subpoenas and the issues to be adjudicated in Phase 2, the argument that the

25 Subpoenas are justified because MGA placed its financial condition at issue would

26 still fail for the simple reason that Mattel is not seeking discovery from MGA but

27 rather *non- parties*.  Mattel does not cite any statements or conduct by the

28 //

1    Financing Entities putting their financial affairs at issue in this litigation.[13]

2    Rather, Mattel argues that the statements and conduct of *MGA* should be attributed

3    to the Financing Entities and construed as their consent to discovery of their

4    internal financial affairs.  Such an assumption is unwarranted.

### D.    Mattel's Contention That The Subject Discovery Is Relevant To Phase 2

#### 1.    Subpoenas To The Financing Entities

8    Mattel next argues that the Subpoenas to the Financing Entities seek

9    information relevant to a variety of Phase 2 issues.[14]

#### a.    Mattel's RICO Counterclaim

11    Mattel first asserts in its Motion to Compel that the discovery it seeks is

12    relevant to its RICO counterclaim because "Mattel alleges that the counter-

13    defendants have operated a widespread criminal enterprise that has engaged in

14    numerous acts of mail and wire fraud and other predicate acts in violation of the

15    RICO statute" and that "MGA's mid-trial transactions with Omni 808 and the other

16    non-operating entities" is "a continuation of that pattern of racketeering activity."

17    (Motion, p. 18).

---

[13] In its Reply to the Financing Entities' Opposition to its Motion to Compel, Mattel argues that the Financing Entities (referred to by Mattel as the "Omni Parties") have injected themselves into the litigation because one of them, Omni 808 Investors, LLC, applied to intervene.  (Reply, p. 8).  However, a decision on that application has been deferred by the Court, (Tr., 80:15 – 17), and therefore Omni 808 Investors, LLC and the other Financing Entities remain outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-parties.

[14] Mattel argues in one of its reply briefs filed on February 25, 2009 that the Discovery Master should strike MGA's Opposition to the Motion to Compel because: (1) MGA indicated that it would not be filing an Opposition and (2) the Opposition was filed a week late.  (*See* Mattel's Reply in Response to MGA's Opposition to the Motion to Compel, p. 4).  The Discovery Master declines that request.  The assertion that MGA would not file an Opposition is based on an alleged oral conversation which counsel for Mattel apparently did not confirm in writing.  (*See* Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply in Response to MGA's Opposition to the Motion to Compel, ¶ 4).  Even assuming such a statement had been made, MGA was entitled to change its mind.  As for Mattel's argument that the Opposition was untimely, the Discovery Master notes that he was only recently appointed.  This fact combined with the backlog of discovery motions may have resulted in some confusion as to when various briefs were due to be filed.  The Discovery Master prefers to address issues on the merits and declines to strike the Opposition as untimely.  Notwithstanding the foregoing, the Discovery Master urges the parties to strictly comply with the briefing schedule set forth under the Discover Master Order for all future discovery motions unless an alternative procedure is agreed upon by the parties and approved by the Discovery Master or the Court.

1    But Mattel's allegations in support of its RICO counterclaim turn on

2    misappropriation of trade secrets and confidential information, and make no

3    mention of improper transfers of funds or any other predicate act similar to MGA's

4    purported business transactions with any of the Financing Entities.[15]  Accordingly,

5    these financial transactions are not a "continuation" of the "pattern" of conduct

6    Mattel alleges in very precise detail in its RICO counterclaim.  (*Asdourian v.*

7    *Konstantin*, 77 F. Supp. 2d 349, 358 (E.D.N.Y. 1999) [cited by Mattel and stating

8    RICO claimant must show "[a]n interrelationship between acts, suggesting the

9    existence of a pattern, [which] may be established...[by] proof of their temporal

10   proximity, or common goals, or similarity of methods, or repetitions' (citation

11   omitted)]; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989) [RICO claims

12   must be supported by a "pattern" of activity and "the mere fact that there are a

13   number of predicates is no guarantee that they fall into any arrangement or order.

14   A pattern is not formed by sporadic activity ...  Instead, the term 'pattern' itself

15   requires the showing of a relationship between the predicates" (quotations and

16   internal citations omitted)]).

17        At this stage, Mattel has failed to demonstrate a relationship between the

18   predicate acts alleged by Mattel in its Counterclaims – which were bound together

19   by a purported scheme to misappropriate Mattel's trade secrets – and the

20   //

21   //

22   //

23   ─────────────
     [15] *See* Mattel's Second Amended Answer and Counterclaims ("Counterclaims"), p. 55-62, ¶ 90 [alleging the MGA

24   Parties and other counter-defendants "for the purpose of executing and attempting to execute the scheme to
     improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information" committed

25   various predicate acts], ¶ 91 [alleging the MGA Parties and other counter-defendants "shared the common purpose of
     enabling MGA to obtain confidential, proprietary and otherwise valuable Mattel property through improper means in

26   order to assist MGA in illegally competing with Mattel"], ¶ 92 [alleging the enterprises are continuing enterprises
     because they are "designed to and did unlawfully acquire the confidential business information and property of

27   Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and
     business methods, practices, and processes"], ¶ 93(a) [alleging mail fraud committed in furtherance of scheme to

28   "defraud Mattel of its confidential trade secret information and property"], ¶ 93(b) [alleging wire fraud "defraud
     Mattel of its confidential and trade secret information and property"], and ¶ 102 [the MGA Parties and other counter-
     defendants "schemed to defraud Mattel and steal its property and trade secret information"].

transactions Mattel seeks to investigate here.[16]

Also, the RICO counterclaim (like the other counterclaims to be adjudicated in Phase 2) was asserted in July, 2007 – more than a year before either Omni 808 Investors, LLC or Vision Capital, LLC came into existence – and therefore apparently did not encompass the activities of those entities or the transactions which are the subject of the Financing Discovery.  While that fact might be overcome by a showing that the Financing Entities were created or used to further a scheme to carry on misconduct that is the subject of Phase 2, Mattel did not demonstrate that such is the case in its briefs and supporting evidence.

In sum, absent some argument or evidence demonstrating a nexus between the predicate activities alleged in the RICO counterclaim, on the one hand, and the transactions and other matters which are the subject of the Financing Discovery, on the other hand, there has been no showing by Mattel that the Subpoenas to the Financing Entities are reasonably calculated to lead to the discovery of admissible evidence regarding the RICO counterclaim.

### b.    Mattel's Disgorgement Remedy

Next, Mattel asserts that the Subpoenas to the Financing Entities seek information relevant to its remedy of disgorgement, which is an available remedy for Mattel's Phase 2 counterclaim for misappropriation of trade secrets.  Mattel argues:

---

[16] This conclusion is consistent with the case cited by Mattel – *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372 (W.D.N.Y. 2006).  There, the plaintiffs "asserted broad civil RICO claims against the Nicolo defendants predicated, among other violations, upon alleged money  laundering violations.  Specifically, the Complaint alleges that the Nicolo defendants and the other named defendants constituted an enterprise as defined in the RICO statute that was engaged in a pattern of racketeering activity, including mail and wire fraud and, more importantly for purposes  of this motion, money laundering."  (*Id.*, at 375).  "The alleged money laundering consisted of repeated deposits into various financial institutions in order both to promote and carry on the unlawful activity – that is, by paying and depositing kickbacks to certain members of the enterprise – and to conceal and attempt to conceal the proceeds, their nature, source and location – that is, by transferring funds between defendants and between various accounts maintained by those defendants."  (*Id.* [emphasis added]).  Thus, inquiry into the defendants' finances was appropriate as it was likely to reveal activity related to the alleged predicate acts.  Here, on the other hand, Mattel has not alleged any sort of financial scheme which would support inquiry into the MGA Parties' financial transactions with third parties.

1
2
3
4
5
6

> For purposes of establishing disgorgement, Mattel must take into account money transferred from MGA and Isaac Larian, regardless of the manner in which it was transferred.  Mattel is entitled to discovery that shows all assets siphoned from MGA or Isaac Larian . . . .  By these subpoenas, Mattel seeks evidence to prove the amount the defendants must disgorge.  Money that properly belonged to Mattel was transferred from MGA or Isaac Larian to an entity controlled by them.

7

(Motion, pp. 20:1 – 4, 21:12 – 14).

8

   While the foregoing statements may be true as a general proposition, none of

9

the Financing Entities is alleged to have "received money that properly belonged to

10

Mattel."  To the contrary, Mattel asserts that the Financing Entities are creditors of

11

MGA.  Therefore, Mattel has not demonstrated how any of the categories of

12

documents sought from the Financing Entities would aid it in ascertaining the

13

amount defendants must disgorge.

14

### c.      Phase 2 Damages

15

   Mattel's third argument in favor of enforcement of the Subpoenas is that they

16

"seek documents relevant to MGA's financial condition" and other "factors

17

relevant to an award of punitive damages."  (Motion to Compel, p. 21:19 – 22).

18

Depending on the particular scope of the document request, such discovery from

19

Omni 808 Investors, LLC may be appropriate in connection with Phase 2 because

20

any information evidencing MGA's indebtedness to Omni 808 Investors, LLC from

21

the purchase of the alleged Wachovia debt or direct loans to MGA is relevant to

22

MGA's net worth (and hence punitive damages).[17]  As the Court noted in its

23

February 11, 2009 ruling:

24

> I can see tremendous overlap between, for example, discovery on

25
26
27
28

---

[17] The Discovery Master's analysis is fundamentally different for OmniNet Capital, LLC and Vision Capital, LLC because neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc.  (Motion to Compel, pp. 9 and 10).  To the contrary, Mattel concedes that "OmniNet [Capital, LLC] is not the secured party, and thus presumably not the actual debt purchase/lender.  Rather, the company holding the security interest is Omni 808 [Investors, LLC] . . . [which] appears to be owned funded by a company called Vision Capital, LLC."  (Id.)  Because it admits that OmniNet Capital, LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to show that the information sought from those entities has any bearing on MGA's financial condition.

1          financial condition of the company as it relates to damages in the
2          Phase 2 and also issues that the receiver is looking at.  And without making a ruling on any of this, I would not suggest for a moment that these are mutually exclusive categories.

3 (Tr., 101:3 - 8)

4       Mattel argues that the necessary connection between the Financing

5 Discovery and Phase 2 damages exists because the Financing Entities have acquired

6 a security interest in MGA's assets, which, in turn, affects MGA's financial

7 condition.  Specifically, Mattel argues that Omni 808 Investors, LLC is:

8
9          directly involved in providing funding to MGA in exchange for a security interest.  Such funding, and security interests, are in and
10          of themselves directly relevant to the financial condition of the MGA Parties, including the amount of the security interests, the
11          terms and conditions of the funding, and the rate of funding. . . .

12 (Motion to Compel, p. 22: 13 – 17).

13       The Discovery Master agrees that such limited information, as it relates to

14 the purchase by Omni 808 Investors, LLC of the debt obligation previously held by

15 Wachovia Bank, is reasonably calculated to lead to the discovery of admissible

16 evidence concerning Phase 2 issues, including the calculation of MGA's net worth

17 for purposes of calculating punitive damages.[18]  Accordingly, Mattel's motion to

18 compel responses from Omni 808 Investors, LLC is granted with respect to

19 documents relating to (1) the existence of any debt owed by MGA Entertainment,

20 Inc. to Omni 808 Investors, LLC and (2) any communications between Omni 808

21 Investors, LLC and the MGA parties regarding any such indebtedness.

22       The problem, however, is the vast majority of the document requests set forth

23 in the Subpoena propounded on Omni 808 Investors, LLC are not narrowly tailored

24 to obtain information demonstrating the amount and nature of MGA's indebtedness

25 (and hence net worth) or communications regarding any such debt,[19] but instead

26 ───────────────

[18] During oral argument, counsel for MGA represented (and counsel for Mattel seemed to agree) that the Court
27 deferred discovery regarding the Wachovia debt until the middle of the Phase I trial.  (Reporter's Transcript of Proceedings, March 4, 2009, pp. 72, 85 and 86).  The extent to which that damages information was obtained directly from Wachovia, as opposed to MGA, is not clear from the record provided to the Discovery Master.

28 [19] Nor did Mattel move to compel MGA to produce this information in the first instance.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

would require the Financing Entities to produce virtually every document in their possession regarding their formation, operations, and history of transactions. Among other things, the Subpoenas to the Financing Entities seek:

- All records that "substantiate transfers of assets" by the Financing Entities "to other entities, individuals, and/or parties, within the U.S. and outside of the U.S." (Exhibits 27-29 to Supplemental Declaration of Jon D. Corey In Support Of Mattel, Inc.'s Reply In Support Of Motion To Compel Production of Documents Responsive to Third-Party Subpoenas, Attachment A, ¶ 16);

- All documents "detailing or setting forth the relationship" between each of the Financing Entities and other non-parties (*Id.* at ¶¶ 6-10);

- All documents referring or relating to the "all contributions, loans and any sources of funding" for the Financing Entities (*Id.* at ¶ 13);

- All documents referring or relating to the "source of funding" of other non-parties (*Id.* at ¶ 16);

- All documents showing detail of "all loan facilities" referring or relating to the Financing Entities and other non-parties (*Id.* at ¶ 14);

- All documents referring or relating to "transactions involving any compensation, loans, advances, payments, fees or any other form of consideration" paid to other non-parties (*Id.* at ¶ 15);

- All "communications" referring or relating to the Financing Entities and other non-parties (*Id.* at ¶ 17).

Accordingly, the Discovery Master concludes that most of the categories of documents in the Subpoenas are overbroad and not reasonably calculated to lead to the discovery of admissible evidence with respect to Phase 2 issues, as detailed in Section IV below (entitled "Disposition").

//

#### d.     Credibility Of MGA Witnesses

Mattel's fourth argument consists of a single, conclusory paragraph asserting that it is entitled to its discovery in order to determine the credibility of MGA's witnesses.  To support this argument, Mattel first states that information is discoverable "if it relates to 'the credibility of any witness.'"  (Motion to Compel, p. 23 (citing *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.,* 175 F.R.D. 646, 650 (C.D. Cal. 1997)).[20]  Next, Mattel asserts that "MGA and Larian made statements under oath about their financial condition as well as about the role of Omni 808 and the other non-operating entities in providing MGA with additional funding."  (*Id.*)  But that is the full extent of Mattel's argument.  Mattel does not attempt to show that the specific discovery that it has propounded is reasonably calculated to lead to the discovery of the evidence that it contends would be admissible.

Discoverable information generally includes evidence relevant to the credibility of a party or a key witness.  (See *Paulsen v. Case Corp.*, 168 F.R.D. 285, 287-288 (C.D. Cal. 1996); see also *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 603-604 (C.D. Cal. 1995); *U.S. v. City of Torrance*, 164 F.R.D. 493, 495 (C.D. Cal. 1995)).  If Mattel's discovery were reasonably calculated to lead to the discovery of such information, then it might be permissible.  (*Id.* ["Rule 26 is liberally interpreted to permit wide ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence."])  But Mattel has not taken any steps to connect its discovery to such evidence.  As discussed above, Mattel bears the burden of demonstrating that its discovery is reasonably calculated to lead to the discovery of admissible evidence.  Here, Mattel has only stated that credibility evidence can be admissible and that credibility is at issue in this case – without referring at all to specific categories of documents in the Subpoenas or

---

[20] The Discovery Master notes that the case cited by Mattel does not actually discuss or apply this proposition.

1   linking those categories of documents to prior or anticipated testimony of MGA's

2   witnesses.  Simply stating that credibility evidence is discoverable does nothing

3   toward meeting Mattel's burden to demonstrate that the particular discovery at issue

4   here is reasonably calculated to lead to the discovery of such evidence.

5                    **e.      MGA's Unclean Hands**

6           Mattel next argues in its Motion to Compel that MGA has asserted an

7   unclean hands defense in response to Mattel's Phase 2 claims, and consequently

8   Mattel is entitled to discover whether the MGA Parties are currently "engaging in

9   sham and fraudulent financial transactions such as concealing profits" to preclude

10  MGA "from invoking the unclean hands defense themselves."  (Motion, pp. 23 -

11  24.)  But this argument does not apply to the Financing Entities because, as

12  discussed above, Mattel does not claim that the Financing Entities have "received

13  money that properly belonged to Mattel" or otherwise used those entities to conceal

14  profits.  To the contrary, Mattel asserts that the Financing Entities are creditors of

15  MGA.

16          Regardless, Mattel's theory is that, even if Mattel has unclean hands, MGA

17  may not assert that defense unless MGA itself is blameless.  (*Id.*, at 24 [a "party

18  asserting an equitable defense, however, must itself have 'clean hands.'"]).

19  Mattel's statement of the law is correct as far as it goes.  But, as the Ninth Circuit

20  has stated, "'unclean hands does not constitute 'misconduct in the abstract,

21  unrelated to the claim to which it is asserted as a defense.'"  (*Jarrow Formulas, Inc.*

22  *v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)).  "It is fundamental to

23  [the] operation of the doctrine that the alleged misconduct . . . relate directly to the

24  transaction concerning which the complaint is made."  (*Dollar Sys., Inc. v. Avcar*

25  *Leasing Sys., Inc.* 13 F.2d 165, 173 (9th Cir. 1989)).  Accordingly, courts will not

26  allow discovery based on an unclean hands defense where the "allegations of

27  misconduct do not relate to the transactions... forming the basis for the

28  []complaint."  (*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D.Cal.

1   1996)).

2          Here, Mattel does not link any of the categories of documents referenced in

3   the Subpoenas (which involve the creation and operation of the Financing Entities

4   beginning with their formation in the summer of 2008) to any of the conduct at

5   issue in Phase 2 (which involves such matters as the alleged theft of trade secrets in

6   Mexico in 2004 and other conduct unrelated to the relationship between the

7   Financing Entities and MGA).  Accordingly, the Financing Discovery is not

8   reasonably calculated to lead to the discovery of admissible evidence regarding

9   MGA's alleged unclean hands in connection with the matters to be adjudicated in

10  Phase 2.

11          **f.      Mattel's Unfair Competition Counterclaim**

12          As Mattel acknowledges, California's Unfair Competition Law, Business &

13  Professions Code §§ 17200 et seq. (the "Unfair Competition Law") encompasses

14  "'anti–competitive business practices as well as injuries to consumers, and has as a

15  major purpose the preservation of fair business competition.'"   (Opp. at 24:25 –

16  25:2, quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone

17  Co.* (1999) 20 Cal.4th 163, 180)).  However, Mattel's papers do not sufficiently

18  demonstrate that the documents sought from the Financing Entities involve "anti-

19  competitive business practices," "injuries to consumers," or anything affecting

20  consumers or the public at all.  Instead, Mattel simply asserts, without any

21  supporting analysis, that MGA has violated the Unfair Competition Law by

22  "manipulating the sources of [its own] funding" (presumably the Financing

23  Entities).  That allegation, even if true, does not appear to involve the "unlawful,

24  unfair or fraudulent" marketing or sale of anything and therefore does not fall

25  within the ambit of the Unfair Competition Law.

26  //

27  //

28  //

### g.     Summary Of The Discovery Master's Findings With Respect To The Subpoenas Directed To The Financing Entities

For the foregoing reasons, the Discovery Master finds that, based on the record before him, Mattel has failed to sufficiently articulate the necessary connection between most of the Financing Discovery and any Phase 2 issue. Moreover, while there is a connection between the Financing Discovery and some of the Phase 2 issues referenced (i.e., MGA's financial condition and its bearing on Mattel's claim for punitive damages), Mattel has failed to demonstrate that the Subpoenas meet the standard set forth in Rule 26(b)(2) and that all of the requested discovery is permissible in light of  the case law interpreting Rules 26 and 45.

Accordingly, Mattel's motion to compel the Financing Entities to comply with the Subpoenas is **GRANTED** in part and **DENIED** in part.

### 2.     Subpoenas To The Transferee Entities

In their briefs regarding the enforceability of the Subpoenas, Mattel and MGA do not, as a general rule, make a distinction between the Financing Entities and the Transferee Entities, but rather direct the same arguments to both groups collectively.  However, there are important distinctions between the two groups, including, without limitation, that: (1) the Transferee Entities appear to be affiliated with – if not wholly owned by – Larian; (2) the Transferee Discovery involves the sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest pursuant to the Court's December 3, 2008 ruling; and (3) the Subpoenas seek some documents relevant to Phase 2 issues which presumably cannot be obtained from MGA, namely the Transferee Entities' contracts with, and records of sales to, third parties purchasing the Bratz products.  Accordingly, in ruling on the Subpoenas directed to the Transferee Entities, the Discovery Master's analysis of certain of the parties' above-referenced arguments differs, as follows.

//

### a.     Non-Party Considerations

To begin with, the distinction between a party and non-party here is less compelling given the MGA parties' apparent admission that the Transferee Entities are single purpose entities created and controlled by Larian (who is, of course, himself a party) to dispose of inventory that is the subject of this litigation.  Further, the MGA parties presumably do not have custody of the sales contracts whereby IGWT Group LLC sold Bratz products to third parties.  The Discovery Master also notes that counsel for the Transferee Entities has submitted a declaration stating that there are "hundreds of sales contracts at issue, and as such, thousands of documents responsive to Mattel's requests."  (Declaration of Jeffrey B. Valle dated February 17, 2009 ["Valle Decl."], ¶ 7).  The unavailability of these relevant documents from any other source weighs heavily in favor of enforcing the Subpoena to IGWT Group LLC.

### b.     Relevance To Phase 2 Issues

### 1.     Phase 2 Damages

As mentioned above, Mattel argues that the Subpoenas "seek documents relevant to MGA and Larian's financial condition, net worth, and ability to pay" on the ground that such information is relevant to Mattel's Phase 2 damages claims, including Mattel's claim for punitive damages.

For the reasons previously discussed, the Discovery Master finds that, with respect to the Financing Entities, the discovery requests were, for the most part overbroad, and/or not sufficiently linked to Phase 2 issues.  However, the Discovery Master's analysis is necessarily different with respect to entities which were created and apparently wholly owned and/or controlled by Larian (a defendant in Phase 2), and which are admittedly selling inventory which generate revenues in which Mattel has an interest.  Specifically, Mattel contends that Larian has caused MGA to sell the inventory at a deep (80%) discount to the Transferee Entities.  This practice, if true, limits MGA's profits (which go to MGA's balance sheet, and ultimately

affects MGA's net worth) while at the same time allowing Larian to capture additional profits which otherwise would have been realized by MGA and reflected on MGA's balance sheet).  Accordingly, the Discovery Master finds that most of the documents Mattel seeks to subpoena from the Transferee Entities properly relate to Phase 2 issues, as specified in Section IV below.[21]

### 2.      Mattel's Unfair Competition Counterclaim

Given MGA's admissions regarding Larian's ownership/control of the Transferee Entities, coupled with their sale of inventory purchased from MGA, the Discovery Master finds that many of the documents requested from the Transferee Entities are also arguably related to a "fraudulent," "unlawful," or "unfair" business practice within the meaning of the Unfair Competition Law and the scope of Mattel's Counterclaims.  Among other things, the Court's December 3, 2008 order imposes a constructive trust on the proceeds of MGA's sale of the subject inventory.  If, as Mattel argues, MGA's sale of that inventory to the Transferee Entities constitutes a scheme on the part of Larian to enrich himself by depriving Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then such conduct would constitute an unlawful attempt to circumvent the Court's order and arguably render the transaction between MGA and the Transferee Entities an anti-competitive business practice that is unlawful, unfair or fraudulent to other toy manufacturers, including Mattel.  Therefore, such alleged misconduct, if proven, could violate the Unfair Competition Law.

Moreover, although Mattel asserted its counterclaim for violation of the Unfair Competition Law prior to the alleged misconduct (and long before the Transferee Entities came into existence), Mattel phrased its allegations broadly

---

[21] The Discovery Master notes that IGWT 826 Investments is registered at the home address of Larian's sister and brother-in-law, indicating that some of Larian's relatives may be involved in the ownership or operation of the Transferee Entities.  Accordingly, the Discovery Master has specified in some instances that the production of documents shall include those referencing not only Larian, but also his spouse, his children, his siblings, or their spouses, or any entity or person affiliated with them.  However, the Discovery Master has stopped short of ordering the production of documents relating to any other entities, individuals "within the U.S. and outside the U.S.," as requested in Category 6 of each of the Subpoenas directed to the Transferee Entities.

1    enough to potentially encompass subsequent acts of unfair competition which

2    perpetuate or extend the misconduct alleged in the Counterclaims.  Unlike Mattel's

3    RICO counterclaim, Mattel's Twelfth Counterclaim for Unfair Competition does

4    not purport to rest on a list of enumerated, factually detailed and carefully defined

5    acts, but rather is phrased broadly to cover "unlawful, unfair and/or fraudulent acts

6    of unfair competition" which include, "without limitation" certain illustrative

7    examples.  (Counterclaims, p. 74, ¶ 165).

8         Of course, the Discovery Master cannot predict whether the Court will

9    ultimately deem Mattel's unfair competition counterclaim to be sufficiently elastic

10   to encompass MGA's alleged misuse of the Transferee Entities or whether Mattel

11   will seek (and the Court permit) amendment of the counterclaim to expressly

12   reference such alleged misconduct.  Nevertheless, in light of the fact that the

13   discovery need only appear reasonably calculated to lead to the discovery of

14   admissible evidence, the Discovery Master finds that certain aspects of the

15   Subpoenas are sufficiently related to Mattel's Phase 2 unfair competition claim.

16                c.    **Summary Of The Discovery Master's Findings With**

17                      **Respect To The Subpoenas Directed To The**

18                      **Transferee Entities**

19        As set forth above, the Discovery Master finds that Mattel has sufficiently

20   articulated a connection between some of the Transferee Discovery and its Phase 2

21   claims.  Accordingly, Mattel's motion to compel the Transferee Entities to comply

22   with the Subpoenas is **GRANTED** in part and **DENIED** in part.

23   **IV.   <u>Disposition</u>**

24        1.    The Motion to Quash filed by MGA is **DENIED**.

25        2.    Mattel's Motion to Compel the Financing Entities to produce

26   documents responsive to the Subpoenas is **DENIED** with respect to OmniNet

27   Capital, LLC and Vision Capital, LLC.

28        3.    Mattel's Motion to Compel Omni 808 Investors, LLC to produce

documents responsive to the Subpoena propounded on it is **GRANTED** in part and **DENIED** in part**,** as follows:

       a.      Requests 1 through 3, 13, 15, and 17:  The Motion is granted with respect to documents relating to (1) the existence of any debt owed by MGA Entertainment, Inc. to Omni 808 Investors, LLC, including any debt purchased from Wachovia Bank, and (2) any communications between Omni 808 Investors, LLC and the MGA parties regarding any such indebtedness.  The motion is denied regarding any other documents sought by these requests.

       b.      Requests 4 through 12, 14 and 18:  The Motion is denied.

    4.      Mattel's Motion to Compel the Transferee Entities to produce documents responsive to the Subpoenas is **DENIED** as to Request 6 propounded to IGWT Group LLC and Request 6 propounded to IGWT 826 Investments, LLC.

    5.      Mattel's Motion to Compel the Transferee Entities to produce documents responsive to the Subpoenas is **GRANTED,** as follows:

### **Subpoena To IGWT Group LLC**

       a.      Request 1:  The Motion is granted with respect to documents relating to the purchase by, or transfer to, IGWT Group LLC of any items of value, including Bratz products, from MGA, Larian, his spouse, his children, his siblings, or their spouses, or any entity or person affiliated with them.

       b.      Request 2:  The Motion is granted

       c.      Request 3:  The Motion is granted with respect to documents relating to any ownership interest by Larian, his spouse, his children, his siblings, or their spouses, or any entity or person affiliated with them.

       d.      Request 4:  The Motion is granted with respect to documents relating to any sources of funding by Larian, his spouse, his children, his siblings, or their spouses, or any entity or person affiliated with them.

       e.      Request 5:  The Motion is granted with respect to documents relating to any compensation, loans, advances, payments, fees or any other form of

1 consideration paid by IGWT Group LLC to Larian, his spouse, his children, his

2 siblings, or their spouses, or any entity or person affiliated with them.

3           f.     Request 7:  The Motion is granted.

4           **<u>Subpoena To IGWT 826 Investments LLC</u>**

5           a.     Request 1: The Motion is granted with respect to documents

6 relating to the purchase by, or transfer to, IGWT 826 Investments LLC of any items

7 of value, including Bratz products, from MGA, Larian, his spouse, his children, his

8 siblings, or their spouses, or any entity or person affiliated with them.

9           b.     Request 2:  The Motion is granted

10           c.     Request 3:  The Motion is granted with respect to documents

11 relating to any ownership interest by Larian, his spouse, his children, his siblings,

12 or their spouses, or any entity or person affiliated with them.

13           d.     Request 4:  The Motion is granted with respect to documents

14 relating to any sources of funding by Larian, his spouse, his children, his siblings,

15 or their spouses, or any entity or person affiliated with them.

16           e.     Request 5:  The Motion is granted with respect to documents

17 relating to any compensation, loans, advances, payments, fees or any other form of

18 consideration paid by IGWT 826 Investments LLC to Larian, his spouse, his

19 children, his siblings, or their spouses, or any entity or person affiliated with them.

20           f.     Request 7:  The Motion is granted.

21      5.     All non-privileged documents referenced in Paragraphs 3 and 5, above,

22 shall be produced within 30 days of this Order, subject to any applicable

23 confidentiality designations available under the Protective Order.

24      6.     Nothing in this Order should be deemed to prevent Mattel from

25 seeking discovery from the MGA parties of documents encompassed by the

26 Subpoenas upon the showing of a sufficient nexus between the particular discovery

27 requests and legitimate Phase 2 issues, and subject to any applicable objections.

28 //

1    Dated:  March 10, 2009

2

3

4                                              By:        /s/ Robert C. O'Brien

5                                                         ROBERT C. O'BRIEN
                                                          Discovery Master
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28