1  Bingham McCutchen LLP
   TODD E. GORDINIER (SBN 82200)
2  todd.gordinier@bingham.com
   PETER N. VILLAR (SBN 204038)
3  peter.villar@bingham.com
   JENNIFER A. LOPEZ (SBN 232320)
4  jennifer.lopez@bingham.com
   600 Anton Boulevard
5  18th Floor
   Costa Mesa, CA 92626-1924
6  Telephone: 714.830.0600
   Facsimile: 714.830.0700
7
8  Attorneys for Non-party
   BINGHAM McCUTCHEN LLP
9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                   EASTERN DIVISION

13

| | |
|---|---|
| 14  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 15       Plaintiff, | Consolidated with Case No. CV 04-09059 and Case No. CV 05-2727 |
| 16       v. | **DISCOVERY MATTER** **To be heard by Discovery Master Robert C. O'Brien** |
| 17  MATTEL, INC., a Delaware Corporation, | |
| 18 | |
| 19       Defendant. | **NON-PARTY BINGHAM McCUTCHEN LLP'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH SUBPOENA ISSUED BY MATTEL, INC. TO BINGHAM McCUTCHEN LLP** |
| 20 | |
| 21 | |
| 22 | |
| 23 | Date:    April 14, 2009 |
| 24 | Time:    10:00 a.m. Place:   Arent Fox LLP |
| 25 | 555 West Fifth Street 48th Floor |
| 26 | Los Angeles, CA 90013 |
| 27  AND CONSOLIDATED ACTIONS. | |
| 28 | |

A/72865247.3/3009108-0000337036

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ......................................................................................... 1

II.   MATTEL DOES NOT REFUTE THAT THE SUBPOENA SEEKS
      PRIVILEGED INFORMATION ................................................................... 4

III.  THE FEE ARRANGEMENTS BETWEEN BINGHAM AND ITS
      NON-PARTY CLIENTS ARE NOT DISCOVERABLE ............................. 6

      A.    Mattel Misrepresents This Court's Prior Orders Regarding The
            Discoverability Of Fee Agreements...................................................... 6

      B.    Mattel Also Misstates Ninth Circuit Precedent ................................... 7

IV.   MATTEL HAS FAILED TO ARTICULATE HOW THESE
      DOCUMENTS ARE RELEVANT TO PHASE 2 ......................................... 9

      A.    Bingham's Fee Agreements With Its Non-Party Entity Clients
            Are Not Relevant To Phase 2.............................................................. 10

      B.    Mattel Fails To Show How Any Of The Other Requests Are
            Relevant To The Merits Of Phase 2 .................................................... 11

V.    MATTEL FAILS TO REFUTE BINGHAM'S OVERBREADTH
      ARGUMENT, WHICH MANDATES QUASHING THE
      SUBOPENA EVEN IF MATTEL COULD SHOW THAT SOME
      DOCUMENTS WERE RELEVANT........................................................... 12

VI.   MATTEL MISCONSTRUES THE CASE LAW REGARDING
      UNDUE BURDEN..................................................................................... 14

VII.  THE COURT SHOULD SANCTION MATTEL FOR ITS
      DISCOVERY MISCONDUCT IN ISSUING THIS ABUSIVE
      SUBPOENA TO NON-PARTY BINGHAM ............................................. 16

VIII. CONCLUSION .......................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Beinin v. Center for Study of Popular Culture,*
   No. C 06-2298 JW (RS), 2007 WL 832962 (N.D. Cal. 2007)............................ 15

*Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.,*
   175 F.R.D. 646 (C.D. Cal. 1997)........................................................................... 9

*Clark v. American Commerce National Bank,*
   974 F.2d 127 (9th Cir. 1992) ................................................................................. 7

*Exxon Shipping Co. v. U.S. Dept. of Interior, et al.,*
   34 F.3d 774 (9th Cir.1994) ................................................................................... 16

*Fairview Development Corp. v. Aztex Custom Homebuilders, LLC,*
   No. CV-07-0337-PHX-SMM, 2008 WL 2113492 (D. Ariz. May 16,
   2008) ................................................................................................................ 5, 16

*Gonzales v. Google, Inc.,*
   234 F.R.D. 674 (N.D. Cal. 2006) .................................................... 10, 12, 13, 14

*In Re Grand Jury Subpoena (Horn)*
   976 F.2d 1314 (9th Cir. 1992) (amended November 25, 1992, reported at
   1992 U.S. App. LEXIS 30917) ......................................................................... 8, 9

*In re Grand Jury Subpoenas (Hirsch),*
   803 F.2d 493 (9th Cir. 1986) ................................................................................ 8

*Mattel, Inc. v. Walking Mountain Productions,*
   353 F.3d 792 (9th Cir. 2003) ....................................................................... passim

*Moon v. SCP Pool Corp.,*
   232 F.R.D. 633 (C.D. Cal. 2005)......................................................... 10, 12, 15

*Televisa, S.A. v. Univision Communications, Inc.,*
   No. CV 05-3444 PSG (MANx), 2008 WL 4951213, at *2 (C.D. Cal.
   Nov. 17, 2008) ..................................................................................................... 14

*U.S. v. Abel,*
   469 U.S. 45 (1984) ................................................................................................ 9

*U.S. v. Landon,*
  2006 No. 06-3434 JFC (PUT) WL 3377894 (N.D. Cal Oct. 30, 2006)...............8

*United States v. Blackman,*
  72 F.3d 1418 (9th Cir. 2005) ................................................................7

**RULES**

Fed. R. Civ. P. 26........................................................................................15

Fed. R. Civ. P. 26(b)(2)(iii) ......................................................................15

Fed. R. Civ. P. 26(c) .................................................................................16

Fed. R. Civ. P. 45.................................................................................14, 16

Fed. R. Civ. P. 45(c)(3)...............................................................................16

Fed. R. Civ. P. 45(c)(3)(A) ..........................................................................5

1    **I.    INTRODUCTION**

2          Mattel's opposition to Bingham's motion to quash ignores the relevant case

3    history and Ninth Circuit precedent governing third party subpoenas and is replete

4    with inaccurate and misleading representations regarding the facts, applicable law

5    and the Court's prior discovery orders in this case.  It also fails to refute any of the

6    points made in Bingham's motion and, indeed, underscores the impropriety and

7    abusiveness of the subpoena.

8          Mattel misleadingly asserts in its opposition that it is entitled to all

9    documents referring or relating to Bingham's fee agreements with its non-party

10   clients Omni 808, Vision Capital and Lexington Financial (what the Discovery

11   Master has referred to as the "finance entities") because it claims that this Court

12   has made "repeated Orders" requiring the production of "comparable" fee

13   information.  This could not be further from the truth.

14         Neither Judge Larson nor the previous Discovery Master in this case have

15   ever held that the fee agreements between non-party entities and their attorneys are

16   discoverable.  In fact, to support its contention regarding such "repeated Orders" in

17   this case, Mattel identifies four prior Orders (attached as Exhibits 8-11 of Webster

18   Declaration).  However, all four Orders relate to a single issue -- whether Mattel

19   could obtain information regarding fee agreements between Carter Bryant, *the*

20   *plaintiff*, and MGA Entertainment, Inc., *also a party and Bryant's employer*.  The

21 . Court reasoned that whether MGA was paying Bryant's legal fees was relevant to

22   Bryant's credibility and bias as the plaintiff.  These Orders have nothing

23   whatsoever to do with the fee agreements between non-parties and their counsel in

24   connection with document subpoenas.

25         Ironically, in addition to its misleading assertions regarding this Court's

26   prior discovery Orders pertaining to plaintiff Carter Bryant's legal fees in this case,

27   Mattel all but ignores the *relevant Court Orders in this case* and the *relevant*

28   *Ninth Circuit precedent* relating to *third party subpoenas*.  This Court has

A/72865247.3/3009108-0000337036                          -1-

1    repeatedly quashed similarly abusive and overreaching subpoenas issued by Mattel
2    to non-parties including, *inter alia*, Bank of America, ConsumerQuest, Deloitte &
3    Touche, Ernst & Young, Wachovia Bank, Wells Fargo and others.  Mattel does not
4    contest this point.  In fact, Mattel has not identified a ***single instance*** in this case
5    where the Court has compelled a non-party to produce its fee agreements with its
6    counsel or to otherwise respond to a similar subpoena.

7          Moreover, Mattel also all but ignores the relevant Ninth Circuit Court of
8    Appeals opinion concerning similarly abusive and overbroad subpoenas served by
9    Mattel and Quinn Emanuel under similar, *albeit less egregious*, circumstances.
10   *See Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir. 2003).
11   Mattel tries to discount the import of this leading Ninth Circuit case by describing
12   Bingham's citation to the opinion as an "*ad hominem* attack."  This is a classic
13   instance of the perpetrator blaming the victim.

14         Indeed, any perceived "personal attack" against Mattel and Quinn Emanuel
15   came from the Central District Court and the Ninth Circuit Court of Appeals -- not
16   from Bingham.  The Courts -- not Bingham -- found that Mattel and Quinn
17   Emanuel issued non-party subpoenas that were "way too broad for the explanation
18   given by [Mattel's counsel]," "abusively drawn," and that "no attempt had been
19   made to try to tailor the information request to the immediate needs of the case."
20   *Id.* at 813.  The Courts -- not Bingham -- found that Mattel and Quinn Emanuel
21   served the subpoenas to "exert pressure" on non-party witnesses and that "a pattern
22   is clear in this case that [Mattel's counsel] files these oppressive subpoena requests
23   ... for the purpose of annoying and harassment and not really for the purpose of
24   getting information."  *Id.* at 814.  And, it was the Courts that sanctioned Mattel and
25   its counsel for engaging in such abuses of the discovery process.  *Id.*

26         Notably, Mattel's unsupported assertion that MGA and other non-parties
27   have previously cited to the *Walking Mountain Productions* case "to no avail" is
28   belied by the Court's prior Orders.  Indeed, the Court's Orders quashing the other

A/72865247.3/3009108-0000337036                    -2-

1    third party subpoenas followed this very precedent.  For example, this Court ruled

2    that "[a]lthough the Bank of America subpoena encompasses documents that are

3    potentially relevant to Mattel's claims and several issues in this case, the subpoena

4    is nevertheless unreasonable because it is overbroad."  The Bingham subpoena,

5    however, is more abusive in that it seeks clearly privileged information from a

6    non-party law firm relating to its non-party clients that is not even remotely

7    relevant to the Phase 2 proceedings.

8         The problems with Mattel's subpoena stretch far beyond the discoverability

9    of Bingham's fee agreements, which seems to be the focal point of Mattel's

10   opposition.  Mattel fails to refute that *virtually every request* impermissibly seeks

11   the production of information protected by the attorney-client privilege and

12   attorney work product doctrine.  Mattel also fails to articulate how any -- let alone

13   all -- of the requests are relevant to Phase 2.  The notion that Bingham's fee

14   agreements, payment information, and other documents relating to Bingham's

15   representation of the non-party finance entities is in any way relevant to Mattel's

16   RICO and other claims against MGA in Phase 2 is creative but intellectually

17   dishonest.

18        Moreover, even if the Court were to suspend disbelief and imagine that

19   certain documents encompassed within the requests could be potentially relevant,

20   Mattel cannot refute that the requests are still grossly overbroad.  Indeed, Mattel's

21   subpoena to Bingham requests *every single document* in Bingham's files referring

22   or relating to its non-party clients and its relationship to those clients including

23   attorney client privileged information and work product.  For example, Mattel

24   requests that Bingham produce:  **"All documents identifying any member,**

25   **managing member, shareholder, holder of any ownership interest in, officer,**

26   **director, employee and/or agent of, or investor in, Omni 808, Vision Capital**

27   **and/or Lexington."**  (Request No. 4) (emphasis added).  This request alone

28   encompasses every single document that Bingham has received from its non-party

1   clients, every single document Bingham has prepared on behalf of its non-party

2   clients, every single communication between Bingham and its non-party clients,

3   and every single document referencing Bingham's work product on behalf of its

4   non-party clients.  The Federal Rules of Civil Procedure and Ninth Circuit require

5   that such overbroad subpoenas be quashed -- just as this Court has repeatedly done.

6          Finally, the overarching theme of Mattel's opposition purports to be that

7   Mattel seeks documents from Bingham that it has not been able to obtain from

8   MGA or from Bingham's non-party clients.  Mattel should not be permitted to

9   obtain these documents from anyone.  However, whether or not Mattel is entitled

10  to obtain these documents from MGA or Bingham's non-party clients is an issue

11  currently before the Discovery Master.  If the Court deems any such documents

12  discoverable, they will be produced by MGA and/or the non-parties; if the Court

13  deems such documents not discoverable, then Mattel certainly is not entitled to

14  obtain such documents from Bingham.  Therefore, under either scenario, the

15  Bingham subpoena is invalid.

16         For all of these reasons, Bingham respectfully requests that the Court grant

17  this motion, quash the subpoena, and sanction Mattel and its counsel.

18

19  **II.    MATTEL DOES NOT REFUTE THAT THE SUBPOENA**

20          **SEEKS PRIVILEGED INFORMATION**

21         As explained in Bingham's motion, Mattel's subpoena to Bingham

22  impermissibly requests the production of information protected by the attorney-

23  client privilege and attorney work product doctrine.  In fact, each of the requests in

24  the subpoena is so broad as to encompass attorney-client communications and/or

25  attorney work product.  For example, Mattel requests that Bingham produce:

26         **All documents identifying any member, managing member,**

27         **shareholder, holder of any ownership interest in, officer, director,**

28         **employee and/or agent of, or investor in, Omni 808, Vision**

1  **Capital and/or Lexington**.

2  (Request No. 4) (emphasis added).  This request not only encompasses *all*

3  *privileged attorney-client communications between Bingham and its non-party*

4  *clients*, but it includes every single document in Bingham's possession, custody or

5  control reflecting, referring or relating to Bingham's non-party clients and

6  Bingham's work performed for its non-party clients.

7  The other requests are also so broadly formulated (*see, e.g.*, Request Nos. 1

8  and 3) as to include privileged attorney-client communications and attorney work

9  product.  Indeed, only one of the requests (Request No. 6) excludes certain

10  attorney-client communications.  However, even that request is broadly crafted to

11  include attorney work product and other confidential information.

12  Moreover, Request No. 7 seeks to invade the attorney-client privilege even

13  beyond the confines of Bingham's instant representation of the non-party finance

14  entities in connection with the subpoenas.  In that request, Mattel seeks documents

15  identifying "**any instances in which Bingham has represented MGA**

16  **Entertainment, Inc. any affiliate of MGA Entertainment, Inc., Fred Mashian**

17  [a current Bingham client], **Leon Neman** [a current Bingham client]**, any entity**

18  **associated with Leon Neman** [including current Bingham clients]**, Yoel Neman,**

19  **Monia Neman (aka Monia Neman), Angela Larian, Farhad Larian, Isaac**

20  **Larian and/or any entity associated with Isaac Larian at any time since June**

21  **1, 2001.**"  (Request No. 7) (emphasis added).  There can be no legitimate dispute

22  that such information is privileged, irrelevant, and not discoverable.

23  Mattel completely ignores these dispositive points in its opposition and,

24  instead, only addresses privilege with respect to fee agreements subsumed in

25  Request No. 1 (which itself is an erroneous argument as discussed below).

26  Because it is undisputed that Mattel's subpoena broadly seeks privileged

27  information, the Court "must" quash the subpoena pursuant to the Federal Rules of

28  Civil Procedure.  Fed. R. Civ. P. 45(c)(3)(A); *see also Fairview Development*

A/72865247.3/3009108-0000337036                                    -5-

1  *Corp. v. Aztex Custom Homebuilders, LLC*, No. CV-07-0337-PHX-SMM, 2008

2  WL 2113492, at *1 (D. Ariz. May 16, 2008) (A court "must quash a subpoena that

3  requires disclosure of privileged or other protected matter, if no exception or

4  waiver applies.").

5

6  **III.   THE FEE ARRANGEMENTS BETWEEN BINGHAM AND ITS**

7  **NON-PARTY CLIENTS ARE NOT DISCOVERABLE**

8  **A.   Mattel Misrepresents This Court's Prior Orders Regarding The**

9  **Discoverability Of Fee Agreements**

10  In support of its argument to compel Bingham to produce "all documents

11  referring or relating to any fee agreement or fee arrangement" between Bingham

12  and its non-party clients Omni 808, Vision Capital and Lexington Financial, Mattel

13  asserts that this Court has made "repeated Orders holding that documents related to

14  fee agreements are not privileged and compelling the production of documents in

15  response to comparable requests." (Mattel Opp. at 9:11-13.) That assertion is

16  false and misleading.

17  Mattel purports to rely on four prior Orders of the Court during Phase 1.

18  (Webster Decl. Exs. 8-11.) However, *all four Orders relate to a single and*

19  *entirely different issue* -- whether Mattel was entitled to fee agreements between

20  Carter Bryant, *the plaintiff,* and MGA Entertainment, Inc., *also a party and*

21  *Bryant's employer.*  In permitting Mattel to obtain discovery on that issue, the

22  Court reasoned that whether MGA was paying Bryant's legal fees was relevant to

23  the Bryant's credibility and bias as the *plaintiff* and key percipient witness.  These

24  orders have nothing to do with a non-party law firm's fee arrangements with its

25  non-party entity clients. Mattel has failed to identify a single instance in which this

26  Court has compelled a non-party law firm to disclose its fee agreements with its

27  non-party clients -- let alone "all documents referring or relating to any fee

28  agreement or fee arrangement" and "any communications referring or relating to

1    any such agreements or arrangements." (*See* Request No. 1.)  Suffice it to say,

2    Bingham, Omni 808, Vision Capital and Lexington are not percipient witnesses to

3    anything related to Phase 2, will not be testifying at trial, and their purported

4    credibility or bias is not at issue.

5         Ironically, while making these false and misleading assertions regarding

6    discrete discovery Orders pertaining only to *the parties* in this case, Mattel ignores

7    the *relevant third party discovery Orders in this case attached to Bingham's*

8    *motion*.  This Court has repeatedly quashed similarly abusive subpoenas issued by

9    Mattel to non-parties including, *inter alia*, Bank of America, ConsumerQuest,

10   Deloitte & Touche, Ernst & Young, Wachovia Bank, Wells Fargo and others.  In

11   fact, Mattel has not identified a *single instance* in this case where the Court has

12   actually compelled a non-party to produce similar categories of documents.

13        **B.    Mattel Also Misstates Ninth Circuit Precedent**

14        In its motion, Bingham acknowledged that courts have permitted, under

15   certain limited circumstances, discovery of information reflecting fees paid by a

16   party to an action and testifying witnesses.  However, such limited circumstances

17   do not exist here.  Bingham is a law firm that is neither a party to this action, nor

18   represents a party to this action.  Mattel has failed to cite a single case where a

19   court ordered an attorney for a non-party, non-testifying witness, to disclose

20   confidential fee information wholly irrelevant to the claims before the court.

21        The cases on which Mattel relies to support its argument that it may discover

22   fee information are inapplicable.  Each case cited by Mattel involves fee

23   agreements regarding *parties to the litigation*.  For example, in *United States v.*

24   *Blackman*, 72 F.3d 1418 (9th Cir. 2005), the court ordered the **defendant attorney**

25   to disclose identities of clients to the Internal Revenue Service to comply with

26   certain tax law requirements.  In *Clark v. American Commerce National Bank*, 974

27   F.2d 127, 128 (9th Cir. 1992), pursuant to an investigation commenced by the

28   Office of the Comptroller of Currency into whether the defendant, American

1    Commerce National Bank, was paying the personal legal expenses of its chairman,

2    the court ordered the **defendant bank** to disclose to the federal government all

3    requested billing statements from outside legal counsel.  In *In re Grand Jury*

4    *Subpoenas (Hirsch)*, 803 F.2d 493, 494 (9th Cir. 1986), the court ordered

5    **attorneys representing several criminal defendants** convicted of drug

6    possession to disclose to the grand jury records regarding the person paying the

7    defendants' legal fees, as such information related to the defendants' sentences.  In

8    *U.S. v. Landon*, 2006 No. 06-3434 JFC (PUT) WL 3377894 (N.D. Cal Oct. 30,

9    2006),[1] the court permitted the Internal Revenue Service to discover from the

10   **defendant attorney**, who had represented his deceased father in establishing a

11   family trust, redacted billing statements but did not permit discovery of any

12   "correspondence, bills, ledgers, statements and time records which also reveal the

13   motive of the client in seeking representation, litigation strategy, or the specific

14   nature of the services provided, such as researching particular areas of law." *Id.* at

15   *17.  Thus, the question considered in each case cited by Mattel was not whether a

16   party may discover the fee arrangement between a non-party and its attorney, but

17   rather the fee arrangement of an actual party to the case and *only* when such

18   information is directly relevant to an issue in the case.

19        Moreover, even in the limited circumstances where a court finds discovery

20   of an attorney-client fee arrangement to be permissible, a court will nevertheless

21   quash an overly broad subpoena.  *See In Re Grand Jury Subpoena (Horn)* 976 F.2d

22   1314, 1317-18 (9th Cir. 1992) (amended November 25, 1992, reported at 1992

23   U.S. App. LEXIS 30917).  In *Horn*, a federal grand jury involved in an ongoing

24   federal investigation of sixteen criminal suspects subpoenaed all of a criminal

25   defense attorney's records that related in any way to several of the individuals

26

27        [1] The *Landon* opinion purportedly relied upon by Mattel specifically states
     that is not designated for publication and may not be cited.

28

1  under investigation. The Ninth Circuit affirmed the district court's order quashing

2  the subpoena on the grounds that the subpoena, "is specifically not limited to

3  transactions relating to legal fees . . . [o]n its face [it] clearly encompasses

4  information protected by the attorney-client privilege." *Id.* Mattel's subpoena is

5  substantially less meritorious than the subpoenas quashed in *Horn* because

6  Bingham does not represent any party in this matter and the information requested

7  does not pertain to any issues in this matter. Further, like the subpoena in *Horn*,

8  Mattel's subpoena to Bingham was not limited solely to discovering the source and

9  amount of legal fees paid by Bingham's non-party, non-witness clients - it

10 requested "an unlimited amount of information." *Id.* Thus, as with the subpoena

11 in *Horn,* Mattel's subpoena is invalid and should be quashed.

12         Mattel also argues that Bingham's fee arrangement with its non-party clients

13 is somehow relevant to bias and credibility. However, the two cases to which

14 Mattel cites have absolutely nothing to do with the facts in this case. Mattel cites

15 to *Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D.

16 646, 650 (C.D. Cal. 1997) and *U.S. v. Abel*, 469 U.S. 45, 50-51 (1984). *Cable &*

17 *Computer Technology* involved a motion to compel responses to contention

18 interrogatories served on one corporation by another, not discovery of irrelevant,

19 privileged information served on a non-party's attorney. *U.S. v. Abel*, involved the

20 admissibility of rebuttal testimony of one convicted bank robber against another,

21 for purposes of demonstrating bias. Mattel has failed to cite any authority where

22 the fee arrangement between a non-party, non-testifying witness, and its attorney is

23 found to be relevant to bias or credibility.

24

25 **IV.    MATTEL HAS FAILED TO ARTICULATE HOW THESE**

26 **        DOCUMENTS ARE RELEVANT TO PHASE 2**

27         "Any information sought by means of a subpoena must be relevant to the

28 claims and defenses in the underlying case. More precisely, the information

A/72865247.3/3009108-0000337036                    -9-

1    sought must be 'reasonably calculated to lead to admissible evidence.'" *Gonzales*

2    *v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006); *see also Moon v. SCP Pool*

3    *Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).

4        In its opposition, Mattel makes blanket unsupported assertions that

5    Bingham's fee agreements with its non-party clients (Request No. 1) are relevant

6    to "credibility and bias" and that the other unspecified categories of documents

7    (presumably Requests Nos. 2-7) are relevant to "the merits" of Mattel's Phase 2

8    claims and defenses. Mattel's Phase 2 claims focus on alleged misappropriation of

9    trade secrets by former Mattel employees for MGA's benefit, and MGA's claims

10   are based on allegations that Mattel serially copy-catted its products and

11   blackmailed suppliers and vendors and market organizations to stop working with

12   MGA. Both sets of claims are premised on alleged conduct that occurred before

13   the respective complaints were filed in 2004 and 2005. None of the information

14   sought in the subpoena to Bingham bears any relevance to the Phase 2

15   proceedings.

16      **A.**     **Bingham's Fee Agreements With Its Non-Party Entity Clients Are**

17              **Not Relevant To Phase 2**

18       In its opposition, Mattel vaguely asserts that Bingham's fee agreements with

19   its non-party entity clients are relevant to "bias and credibility." In making this

20   assertion, Mattel again misleadingly relies on the inapplicable prior Court ruling

21   that the fee agreements between Carter Bryant, *the plaintiff*, and MGA

22   Entertainment, Inc., *also a party and Bryant's employer* are relevant to Bryant's

23   credibility and bias as the *plaintiff* and key percipient witness. Again, that ruling

24   has nothing whatsoever to do with *a non-party law firm's fee arrangements with*

25   *its non-party entity clients*. Mattel has failed to identify a single instance in which

26   this Court has compelled a non-party law firm to disclose its fee agreements with

27   its non-party clients -- let alone "all documents referring or relating to any fee

28   agreement or fee arrangement" and "any communications referring or relating to

A/72865247.3/3009108-0000337036            -10-

1   any such agreements or arrangements.  (*See* Request No. 1.)  Mattel also has failed

2   to explain why Bingham's or its clients' credibility is possibly at issue given that

3   none are percipient witnesses to anything related to Phase 2,and thus, none will

4   testify at trial.

5        Significantly, Mattel was unsuccessful in asserting this same baseless

6   "credibility" theory to defend an abusively drawn subpoena in *Mattel, Inc. v.*

7   *Walking Mountain Productions*, 353 F.3d at 813 (affirming district court's order

8   quashing "abusively drawn" subpoena and rejecting Mattel's assertion that it was

9   merely seeking information to impeach the defendant's expert witness).

10   Accordingly, none of the information sought from Bingham is relevant to the

11   Phase 2 proceedings and the subpoena should be quashed in its entirety.

12        **B.    Mattel Fails To Show How Any Of The Other Requests Are**

13        **Relevant To The Merits Of Phase 2**

14        Faced with the fact that Judge Larson limited the scope of discovery to only

15   Phase 2 issues, Mattel, in its opposition, unsuccessfully tries to force a square peg

16   (the Bingham subpoena) into a round hole (Phase 2).  Mattel amorphously asserts

17   that "Mattel's requests are directly relevant to its RICO claims" and "are calculated

18   to lead to evidence of acts of wire and mail fraud."  Mattel, however, fails to tie

19   any particular request to Bingham to any particular claim against MGA in its

20   complaint.  Bingham's fee agreement with Omni 808, Vision Capital and

21   Lexington clearly are not evidence of a "predicate act" upon which Mattel bases its

22   RICO claims against MGA.  Documents identifying "the formation, governance,

23   ownership, capitalization and/or funding" of Bingham's non-party clients" are in

24   no way evidence of instances of "mail and wire fraud" upon which Mattel bases its

25   RICO claims.  Moreover, the notion that Mattel's Phase 2 claims against MGA

26   (first alleged in 2004) are premised on any non-party transactions in 2008, let alone

27   Bingham's representation of those third parties, defies logic.

28        Mattel also asserts that "for purposes of establishing disgorgement, monies

1   transferred from MGA and Isaac Larian must be accounted for . . . ."  However,

2   none of the requests seek monies transferred from MGA or Isaac Larian to the non-

3   party entities.  In fact, as the Discovery Master noted at the March 4 hearing, Omni

4   808 purchased a *loan to MGA* from Wachovia.  No monies are alleged to have

5   been transferred from MGA to these finance entities.

6          Mattel also asserts that it seeks documents relevant to MGA's "financial

7   condition."  Even assuming MGA's financial condition were relevant to Phase 2,

8   none of the requests seek such documents.  Bingham's fee arrangements with its

9   non-party entity clients are in no way probative of MGA's financial condition.

10   Documents relating "the formation, governance, ownership, capitalization and/or

11   funding" of Bingham's non-party clients are clearly not relevant to MGA's

12   financial condidtion.  "[A]ny instances in which Bingham has represented MGA

13   Entertainment, Inc. any affiliate of MGA Entertainment, Inc., Fred Mashian [a

14   current Bingham client], Leon Neman [a current Bingham client], any entity

15   associated with Leon Neman [including current Bingham clients], Yoel Neman,

16   Monia Neman (aka Monia Neman), Angela Larian, Farhad Larian, Isaac Larian

17   and/or any entity associated with Isaac Larian at any time since June 1, 2001" is

18   undoubtedly irrelevant to MGA's financial condition.

19          Because Mattel has failed to show, and cannot show, how any -- let alone all

20   -- of the requests are relevant to any of its Phase 2 claims or defenses, the subpoena

21   must be quashed.  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006);

22   *see also Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).

23

24   V.   **MATTEL FAILS TO REFUTE BINGHAM'S OVERBREADTH**

25        **ARGUMENT, WHICH MANDATES QUASHING THE**

26        **SUBOPENA EVEN IF MATTEL COULD SHOW THAT SOME**

27        **DOCUMENTS WERE RELEVANT**

28          In addition to the significant privilege and relevance issues, Mattel's

1   subpoena should be quashed because it is grossly overbroad. *See Gonzales,* 234

2   F.R.D. at 680 ("Overbroad subpoenas seeking irrelevant information may be

3   quashed or modified."). There is no question that the subpoena encompasses both

4   privileged communications and irrelevant documents and is therefore

5   impermissibly overbroad.

6         As explained in Bingham's motion, in *Mattel, Inc. v. Walking Mountain*

7   *Productions*, Mattel and its counsel Quinn Emanuel issued a subpoena to one of

8   the defendant's expert's employers in a purported attempt to obtain information to

9   impeach the expert's testimony. *Id.* at 813. Although the court in that case

10  acknowledged that some of the requested information admittedly related to the

11  litigation and the expert report and testimony, the court also noted that the

12  subpoena requested information that had no "bearing on the litigation or on [the

13  expert witness]." *Id.* Thus, even though the district court acknowledged that some

14  of the requests sought relevant information, the subpoena, as a whole, was

15  overbroad, abusive and served for an improper purpose, and thus the district court

16  quashed it entirely. The Ninth Circuit affirmed the district court's order quashing

17  the subpoena and issuing sanctions against Mattel. *Id.* at 814.

18        Even if this Court determines that there may be documents responsive to the

19  subpoena that might be remotely relevant to Phase 2, this Court should still quash

20  the subpoena because, as in *Mattel, Inc. v. Walking Mountain Productions*, the

21  subpoena is "abusively drawn" and overreaching. *Id.* at 813 (acknowledging that

22  some of the categories of documents were relevant, but nonetheless affirming the

23  district court's order quashing the subpoena in its entirety on the grounds that it

24  was overly burdensome and served for an improper purpose). Indeed, unlike

25  *Mattel, Inc. v. Walking Mountain Productions*, where the subpoena was served on

26  an expert witness' employer, the instant subpoena is served on a law firm that does

27  not represent any party to the action. Moreover, unlike the subpoena in *Mattel,*

28  *Inc. v. Walking Mountain Productions* there are significant privilege issues relating

1    to subpoenaing a law firm for communications with its clients.  Mattel has not even

2    attempted to make a showing that such information is in any way relevant to Phase

3    2.

4         Moreover, multiple subpoenas issued by Mattel in this case have already

5    been quashed for these specific reasons.  For instance, in quashing a Rule 45

6    subpoena to Bank of America, the Court held that "[a]lthough the Bank of America

7    subpoena encompasses documents that are potentially relevant to Mattel's claims

8    and several issues in this case, the subpoena is nevertheless unreasonable because

9    it is overbroad." (*See* Ex. D to Villar Decl. [Order Granting MGA's Motion to

10   Quash Mattel's Subpoena to Bank of America]; *see also* Ex. E to Villar Decl.

11   [Order Granting in Part and Denying in Part MGA Parties' Motion to Quash

12   Subpoenas; Granting in Part and Denying in Part Mattel's Counter Motion to

13   Compel].)

14        Therefore, because Mattel has not even attempted to argue the relevance of

15   all categories covered by the Bingham subpoena, this Court should quash Mattel's

16   subpoena on the grounds that it is grossly overbroad. *See Gonzales,* 234 F.R.D. at

17   680.

18

19   **VI.   MATTEL MISCONSTRUES THE CASE LAW REGARDING**

20   **       UNDUE BURDEN**

21        Contrary to Mattel's opposition, analysis of whether an undue burden exists

22   encompasses more than sheer volume of documents.  (Mattel Opp. at 16).  As

23   Bingham established in its motion, courts analyze six factors to determine whether

24   a subpoena imposes an undue burden: (1) relevance of the information requested;

25   (2) the requesting party's need for production; (3) breadth of the requests; (4) time

26   period covered by the subpoena; (5) the specificity of the requested information;

27   and (6) the burden imposed thereby.  (Mot. at 7); *see also Televisa, S.A. v.*

28   *Univision Communications, Inc.,* No. CV 05-3444 PSG (MANx), 2008 WL

A/72865247.3/3009108-0000337036                    -14-

1   4951213, at *2 (C.D. Cal. Nov. 17, 2008) (citing Moore's Federal Practice §45.32

2   (3d ed. 2008)). Analyzing the undue burden factors, Bingham established that the

3   subpoena (1) requires disclosure of attorney-client privileged information; (2) seek

4   information that is irrelevant to the Phase 2 proceedings between Mattel and MGA;

5   (3) is grossly overbroad; and (4) the burden and intrusiveness of compliance far

6   outweighs any conceivable relevance. (Bingham Mot. at 8-14).

7        Moreover, Rule 26 of the Federal Rules of Civil Procedure requires the

8   Court to "limit the frequency or extent of discovery otherwise allowed" where "the

9   burden or expense of the proposed discovery outweighs its likely benefit, taking

10  into account the needs of the case, the amount in controversy, the parties'

11  resources, the importance of the issues at stake in the litigation, and the importance

12  of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(iii).

13  An "evaluation of undue burden requires the court to weigh the burden to the

14  subpoenaed party against the value of the information to the serving party." *Moon

15  v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). The "status of the

16  person as a nonparty is a factor that weighs against disclosure." *Beinin v. Center

17  for Study of Popular Culture*, No. C 06-2298 JW (RS), 2007 WL 832962, *5 (N.D.

18  Cal. 2007).

19       Here, there is no benefit to the discovery sought. Mattel has not identified

20  any relevance between the categories of documents sought and the claims or

21  defenses in the Phase 2 proceedings. Furthermore, even if Mattel could draw some

22  tenuous connection between some of the documents sought and the Phase 2

23  proceedings, this Court must weigh the benefit of those documents against

24  imposing the burden on a non-party to produce them. The burden in this case is

25  significant considering the fact that a substantial portion of the documents are

26  privileged and relate to Bingham's representation of non-parties. Moreover,

27  Mattel has already requested from other parties the same document that it

28  requested from Bingham, making its requests to Bingham necessarily duplicative.

1    Because the subpoena subjects Bingham to an undue burden, and because

2    any purported relevance of any of the documents is substantially outweighed by

3    the undue burden, the Court must quash the subpoena.   (emphasis added); *see also*

4    *Fairview Development Corp. v. Aztec Custom Homebuilders, LLC*, No. CV-07-

5    0337-PHX-SMM, 2008 WL 2113492, at *1 (D. Ariz. May 16, 2008) ("'A court

6    ***must*** quash or modify a subpoena that subjects a person to undue burden.'")

7    (emphasis added); *Exxon Shipping Co. v. U.S. Dept. of Interior, et al.,* 34 F.3d 774,

8    779 (9th Cir.1994) ("Rule 26(c) and Rule 45(c)(3) give ample discretion to district

9    courts to quash or modify subpoenas causing 'undue burden.'").

10

11   **VII.   THE COURT SHOULD SANCTION MATTEL FOR ITS**

12   **DISCOVERY MISCONDUCT IN ISSUING THIS ABUSIVE**

13   **SUBPOENA TO NON-PARTY BINGHAM**

14   Rule 45 of the Federal Rules of Civil Procedure requires attorneys and

15   parties who are responsible for issuing and serving a subpoena to take reasonable

16   steps to avoid imposing undue burden or expense on a person subject to the

17   subpoena.  *See* Fed. R. Civ. P. 45(c)(1).  Rule 45 also requires a court issuing the

18   subpoena to "impose an appropriate sanction - which may include lost earnings

19   and reasonable attorney's fees - on a party or attorney who fails to comply" with

20   Rule 45. *Id.*

21   Here, Mattel and its counsel failed to take any reasonable steps to avoid

22   imposing undue burden and expense on Bingham.  In fact, it is abundantly clear

23   that the subpoena was designed to impose an undue burden on Bingham.  Just as in

24   the *Mattel, Inc. v. Walking Mountain Productions* case, Mattel and its counsel

25   Quinn Emanuel issued to Bingham as subpoena that is "way too broad for the

26   explanation given by Mattel's counsel," "abusively drawn," and that "no attempt

27   had been made to try to tailor the information request to the immediate needs of the

28   case." 353 F.3d at 813.  The subpoena similarly was issued upon Bingham to

1    "exert pressure" on, "annoy" and "harass" Bingham and its non-party clients and

2    "not really for the purpose of getting information." *Id.* at 814.

3         Indeed, the subpoena issued by Mattel and Quinn Emanuel to Bingham in

4    this case is even more abusive than the subpoenas issued by Mattel and Quinn

5    Emanuel in *Mattel, Inc. v. Walking Mountain Productions,* because the Bingham

6    subpoena seeks clearly privileged information from a non-party law firm relating

7    to its non-party clients that is not even remotely relevant to the Phase 2

8    proceedings.  Accordingly, this Court should award sanctions in an amount to

9    compensate Bingham for its expenses incurred in connection with the subpoena

10   and sufficient to dissuade Mattel and Quinn Emanuel from further oppressive and

11   harassing conduct.

12

13   **VIII.  CONCLUSION**

14        For the foregoing reasons, Bingham respectfully requests that the Court

15   grant this motion, quash the subpoena, and sanction Mattel and its counsel.

16

17   DATED: March 10, 2009               Bingham McCutchen LLP

18

19                                       By:

20                                          Todd E. Gordinier

21

22

23

24

25

26

27

28