1  PATRICIA L. GLASER (Bar No. 055668)
   pglaser@glaserweil.com
2  GLASER WEIL FINK JACOBS & SHAPIRO
   10250 Constellation Blvd., 19th Floor
3  Los Angeles, California  90067
   Telephone:  (310) 553-3000
4  Facsimile:  (310) 557-9815

5  RUSSELL J. FRACKMAN (Bar No. 49087)
   rjf@msk.com
6  PATRICIA H. BENSON (Bar No. 60565)
   phb@msk.com
7  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
8  Los Angeles, California 90064-1683
   Telephone: (310) 312-2000
9  Facsimile: (310) 312-3100

10 Attorneys for Defendants
   MGA Entertainment, Inc., MGA Entertainment
11 HK, Ltd., MGAE De Mexico S.R.L. De C.V and
   Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED CASES | CASE NO.  CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No.  CV 04-09059<br>Case No.  CV 05-02727<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES OF MGA ENTERTAINMENT, INC. IN OPPOSITION TO *EX PARTE* APPLICATION FOR AN ORDER TO SHOW CAUSE RE: FAILURE TO COMPLY WITH COURT ORDER**<br><br>[Declaration of Marc E. Mayer filed concurrently herewith]<br><br>Phase 2<br>Discovery Cut-off:       Dec. 11, 2009<br>Pre-Trial Conference:   March 1, 2010<br>Trial Date:                    March 23, 2010 |

# TABLE OF CONTENTS

**Page(s)**

Introduction .................................................................................................................. 1

I.   STATEMENT OF FACTS. ................................................................................ 4

II.  THERE IS NO BASIS FOR EMERGENCY, *EX PARTE* RELIEF. ................................................................................................................ 9

III. MATTEL'S *EX PARTE* APPLICATION IS AN IMPROPER END-RUN AROUND THE DISCOVERY MASTER ................................ 11

IV.  MGA HAS NOT VIOLATED THE FEBRUARY ORDER. ........................ 12

Conclusion ................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Donovan v. Mazzola*,
  716 F.2d 1226 (9th Cir. 1983) .................................................................... 13

*Dual Deck Video Cassette Recorder Antitrust Litigation*,
  10 F.3d 693 (9th Cir. 1993) ........................................................................ 14

*Eichenlaub v. Baca*,
  No. CV 06-6979-GHK, 2007 WL 1223897 (C.D. Cal. Mar. 30, 2007) ................................................................................................ 2, 12, 14

*In re Gustafson*,
  619 F.2d 1354 (9th Cir. 1980) .................................................................... 10

*In re Netflix Antitrust Litig.*,
  506 F. Supp. 2d 308 (N.D. Cal. 2007) ......................................................... 3

*Jamdat Mobile, Inc. v. Jamster Int'l Sarl Ltd.*,
  No CV 05-3945 PA (FMOx), 2005 WL 5960924 (C.D. Cal. Oct. 4, 2005) ................................................................................................... 9

*Little v. City of Seattle*,
  863 F.2d 681 (9th Cir. 1988) ........................................................................ 3

*Lucero v. Martinez*,
  2006 WL 1304945 (D. N.M. Mar. 11, 2006) ............................................. 13

*Mission Power Eng'g v. Co. Cont'l Cas. Co.*,
  883 F. Supp. 488 (C.D. Cal. 1995) ......................................................... 9, 11

*Orchid Biosciences, Inc. v. St. Louis Univ.*,
  198 F.R.D. 670 (S.D. Cal. 2001) .................................................................. 4

*Redman v. U. S.*,
  77 F.2d 126 (9th Cir. 1935) ........................................................................ 14

*Sunbeam Corp. v. Black & Decker (U.S.) Inc.*,
  151 F.R.D. 11 (D. R.I. 1993) ...................................................................... 14

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*,
  689 F.2d 885 (9th Cir. 1982) ...................................................................... 14

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Yates v. U.S.*,
   227 F.2d 848 (9th Cir. 1955) .................................................................................. 10


## OTHER AUTHORITIES

7 Moore's Federal Practice, Motions to Compel and Sanctions,
   § 37.43[2] (3rd ed. 2007) ..................................................................................... 10

Federal Rule of Civil Procedure
   33(b)(2) ................................................................................................................ 14
   34(b)(2)(A) ........................................................................................................... 14
   53 ............................................................................................................... 2, 11, 12

## Introduction

Mattel's *Ex Parte* Application for Contempt Sanctions (the "Application") is procedurally improper, legally baseless, and a cynical attempt to do an end-run around the Discovery Master, before whom ***two*** discovery motions currently are pending on the ***exact issues*** presented here. These discovery motions (MGA's February 27, 2009, Motion for Protective Order and Mattel's March 6, 2009, Motion to Compel) are scheduled for hearing before the Discovery Master on April 14 and 21, 2009, respectively, and their resolution will completely dispose of both issues raised in Mattel's *ex parte* Application: when MGA will further respond to two interrogatories, and whether it has violated the Discovery Master's February 15, 2008, Order (the "February Order"), which MGA most assuredly has ***not***.

Mattel's Application concerns two interrogatories that are directed exclusively to MGA's affirmative claims of trade dress infringement (the "Interrogatories"). The February Order required MGA to provide supplemental responses to those Interrogatories, but no extant order sets a deadline to respond. Immediately after the Phase 2 discovery stay was lifted, Mattel advised MGA that, as soon as the Court ruled on the pending post-trial motions, Mattel intended to move for summary judgment on MGA's trade dress claims on the ground that the Phase 1 verdicts precluded those claims as a matter of law. ***After*** Mattel informed MGA that this summary judgment motion was going to be filed, and after Mattel rejected MGA's suggestion of a timetable to respond based on the outcome of that motion, MGA moved for a protective order, asking the Discovery Master to defer MGA's obligation to respond to the Interrogatories until 21 days after the Court decided Mattel's summary judgment motion (or until 21 days after the Discovery Master denied the protective order motion, if he did so). MGA reasoned that it made no sense to respond to discovery that Mattel admittedly did not need for its summary judgment motion until that motion was decided by the Court.

One week after MGA filed its Motion for Protective Order, Mattel filed a motion to compel, asking the Discovery Master to order MGA to respond to the Interrogatories, and for sanctions. Two court days after Mattel filed its Motion to Compel, Mattel filed this *ex parte* Application, which is largely a copy of the Motion to Compel.

Mattel's *ex parte* Application should be denied for a host of reasons, any one of which is alone sufficient to warrant denial. First, Mattel's Application should be summarily denied because this Court's Order for Appointment of Discovery Master ("Discovery Master Order") requires that "*[a]ny and all* discovery motions and other discovery disputes in the above-captioned action *shall* be decided by a master ('Discovery Master') pursuant to Federal Rule of Civil Procedure 53." Ex. 1 to Declaration of Marc E. Mayer ("Mayer Decl."), ¶ 1 (emphasis added). Both the Court and the Discovery Master have made it clear that this provision means what its says and that anything even "remotely related to discovery" must go to the Discovery Master first. See Mayer Decl., Ex. 13. Cutting through Mattel's inflammatory rhetoric and unbridled mudslinging, this Application boils down to a single, unremarkable discovery issue: In the absence of any extant order containing a deadline to supplement the Interrogatories, did MGA nonetheless violate the February Order because instead of providing supplemental responses, it sought a Protective Order deferring its time to respond until either the Court decided Mattel's summary judgment motion, or the Discovery Master denied MGA's protective order motion, whichever occurred first? Mattel cannot circumvent the Discovery Master by re-characterizing this garden-variety discovery dispute as "contempt." See Eichenlaub v. Baca, No. CV 06-6979-GHK, 2007 WL 1223897 (C.D. Cal. Mar. 30, 2007). Nor can it justify this Application on the ground that "contempt sanctions are outside the bounds of the Discovery Master's authority," a "rationale" so lacking in merit that Mattel buries it in a footnote. See Application at i, n. 1. The Discovery Master has the authority to

recommend contempt sanctions, Fed. R. Civ. P. 53(c)(2), and the Discovery Order expressly requires "any and all" discovery matters to be brought to the Discovery Master first.

Second, it is abundantly clear that extraordinary, *ex parte* relief is not needed here and, tellingly, Mattel does not even *try* to argue that it is. The Discovery Master will shortly decide when MGA should answer the two Interrogatories, the discovery cut-off is nine months away, and thus there is more than ample time for the Discovery Master to consider and rule on the parties' pending motions. Even if it were otherwise proper to bring this matter before this Court (which it is not), there is more than enough time to have this Application heard by this Court as a regularly noticed motion, rather than on an emergency, *ex parte* basis.

Finally, should the Court choose to consider the putative merits of Mattel's Application notwithstanding the Discovery Master Order and the absence of any exigency, there is no basis to find that MGA has violated the February Order, far less in a manner warranting the draconian contempt sanctions sought by Mattel. To begin with, there cannot have been any violation (intentional or otherwise) of the February Order because the only deadline for compliance with that Order was vacated by the Discovery Master and has never been re-set. Moreover, MGA has never "refused" to comply with or "disobeyed" the Discovery Order, as Mattel incorrectly asserts. To the contrary, MGA repeatedly has stated, orally and in writing, that it *will* comply with the Discovery Order, and has even proposed a time when it will do so. It would be twisted logic indeed to characterize as "contempt" MGA's request that the Discovery Master temporarily defer discovery that is irrelevant to resolution of Mattel's impending summary judgment motion and the scope of which will depend on the result of that motion. See, e.g., Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir. 1988) (affirming stay of discovery pending resolution of dispositive immunity issue because it "furthers the goal of efficiency for the court and litigants"); In re Netflix Antitrust Litig., 506 F. Supp.

Case 2:04-cv-09049-DOC-RNB   Document 5002   Filed 03/11/09   Page 8 of 20   Page ID #:159728

2d 308, 321 (N.D. Cal. 2007) ("courts have broad discretion to stay discovery pending the resolution of a potentially dispositive motion"); <u>Orchid Biosciences, Inc. v. St. Louis Univ.</u>, 198 F.R.D. 670, 672 (S.D. Cal. 2001) ("court has broad discretion to stay discovery in a case while a dispositive motion is pending").

In short, Mattel's Application does not belong in this Court on an *ex parte* basis or otherwise, it is substantively without merit, and it should be denied.

## I. STATEMENT OF FACTS.[1]

**The Interrogatories.** At issue in this Application are two Interrogatories (Nos. 43 and 44) propounded by Mattel on October 23, 2007 (the "Interrogatories"), only a few months before the end of the then-extant discovery cut off date. Declaration of Scott L. Watson In Supp. of *Ex Parte* Application ("Watson Decl."), Ex. 1. Both sought information concerning MGA's claims that Mattel had wrongfully copied the trade dress of MGA products. Specifically, the Interrogatories sought (1) the dates on which the "concept, design, product, product packaging" of the infringed products was "conceived" or "first fixed in a tangible medium of expression," and (2) the identity of all persons with knowledge

---

[1] Mattel devotes much of its brief to reciting purported "prior discovery misconduct" by MGA on matters having nothing to do with its *ex parte* Application. MGA will not respond to Mattel's characterization of the putative "misconduct," other than to note that, by the time Phase 1 discovery ended, the prior Discovery Master recognized Mattel's penchant for making "highly exaggerated" and "largely unjustified" assertions about the MGA Parties' supposed non-compliance with their discovery obligations (4/28/08 Order Denying Mattel's Motion To Compel Further Deposition Of Margaret Hatch-Leahy). To the extent the Court believes that discovery conduct unrelated to the present dispute is relevant, MGA requests permission to file supplemental papers demonstrating that (1) Mattel's discovery motions were denied, in whole or in part, as often as they were granted; (2) Mattel itself was sanctioned for discovery abuse on several occasions, including twice because "Mattel's counsel impeded, delayed, and frustrated fair examination" of key witnesses (May 4, 2007 Orders regarding motions to overrule objections to depositions), and also because Mattel repeatedly violated an order to produce properly educated and prepared 30(b)(6) witnesses (see this Court's February 11, 2008 order overruling Mattel objection to the Discovery Master's January 11, 2008 order re Bandying of Witnesses); and (3) Mattel itself was the subject of ***multiple*** discovery orders, including for conduct of precisely the sort it cites as evidence of MGA's "misconduct."

2157550.2

4

OPPOSITION TO EX PARTE APPLICATION FOR OSC RE SANCTIONS

of, and all documents that refer or relate to, the foregoing. Id. MGA initially objected to the Interrogatories on November 15, 2007, and then supplemented its responses on November 30, 2007. Id., Ex. 2.[2]

**The February 15, 2008, Order.** Mattel filed a motion to compel further responses to the Interrogatories. Watson Decl., Ex. 4. On February 15, 2008, the former Discovery Master (Hon. Edward Infante), issued a lengthy order addressing five separate discovery issues, including the Interrogatories (the "February Order"). Id., Ex. 8. In the February Order, Judge Infante granted Mattel's motion as to the Interrogatories, requiring that further supplemental responses be provided by February 26, 2008. Id.

**The Phase 2 Discovery Stay And The Clarification Order.** On February 4, 2008, the Court stayed all Phase 2 discovery. Believing that the February Order, insofar as it required responses to the Interrogatories by February 26, 2008, was in conflict with the February 4, 2008, Stay of Phase 2 discovery, MGA moved for clarification to Judge Infante. Judge Infante granted the Motion for Clarification and stayed MGA's obligation to respond to the Interrogatories:

> "Having reviewed the interrogatories at issue in this Motion for a second time, it is apparent that the interrogatories are relevant primarily, if not exclusively, to Phase 2…. Accordingly, the MGA Parties' motion is granted. The MGA Parties' obligation to supplement their responses to Interrogatory Nos. 41, 43, and 44… are hereby stayed until further order of the district court lifting the stay on Phase 2 discovery."

---

[2] It bears noting that MGA already has provided millions of pages of documents and voluminous pages of interrogatory responses, not to mention hours of deposition testimony, concerning its trade dress claims. See, e.g., February Order [Watson Decl., 8], at 13:1-8 (denying Mattel's Motion to Compel further responses to Interrogatory Nos. 48-50: "[T]he MGA parties' responses identify Mattel's 'My Scene' fashion dolls and pet dolls as the Mattel products that infringe their trade dress. The MGA parties also set forth the principal facts supporting their contention that their trade dress is protectable under the applicable trade dress legal principles…")

April 22, 2008, Order re: Clarification (the "Clarification Order") at 2-3 (Watson Decl., Ex. 10, pp. 206-07).

**The Stay is Lifted But No New Response Date Is Ordered.** On January 6, 2009, the Court lifted the discovery stay and appointed Robert O'Brien as Discovery Master. Watson Decl., Ex. 11. Neither the Court nor the new Discovery Master set a new deadline for compliance with the February Order, nor did Mattel request either the Court or the Discovery Master to do so. Thus, there is no extant order requiring MGA to provide supplemental responses to the Interrogatories by any specific date.

**Mattel Advises MGA That It Intends Immediately To Move For Summary Judgment On MGA's Trade Dress Claims.** The first meet and confer letter Mattel sent after the Phase 2 stay was lifted did *not* pertain to discovery, but to Mattel's intent to file a motion for summary judgment on MGA's trade dress claims. On January 8, 2009 (less than 48 hours after the stay had been lifted), Mattel sent a letter to counsel for MGA announcing that it planned to move for summary judgment on MGA's trade dress claims on the theory that the Phase 1 verdicts precluded MGA from claiming trade dress rights in Bratz products as a matter of law. Watson Decl., Ex. 14. On February 18, 2009, Mattel's counsel stated that the summary judgment motion would be filed within a week after the Court ruled on pending post-trial motions.[3]

**Mattel Demands that MGA Provide Supplemental Responses to the Interrogatories; The Parties Meet and Confer.** In late January, 2009, Mattel sent a letter to MGA's counsel inquiring when MGA would provide supplemental

---

[3] The parties disagree about whether Mattel's counsel stated that its summary judgment motion would be filed within a week or within weeks of the Court's decision on the pending Phase 1 matters. Compare Watson Decl., Ex. 21 with Mayer Decl. Ex. 11. Either way, it is clear that Mattel plans to file the motion quite promptly, and that with the current December 11, 2009, discovery cut-off, there will be ample time to deal with trade dress discovery after the Court rules on that motion.

responses to the Interrogatories (thereby acknowledging that there was no order requiring that responses be provided by a specific date). Watson Decl., Ex. 12.

Thereafter, counsel met and conferred about the issue. Reasoning that it did not make sense for MGA to provide detailed discovery that Mattel did not need for its summary judgment motion, and whose relevance would depend on the outcome of that motion, MGA proposed that the parties agree that supplemental responses to the Interrogatories be provided within 30 days after the Court decided Mattel's summary judgment motion. Watson Decl., Ex. 16. MGA's counsel said that if Mattel were unwilling to agree, MGA would seek a protective order staying any obligation to provide further responses to the Interrogatories until after a ruling on the motion for summary judgment. Id. Mattel's counsel said they would "consider" MGA's proposal. Id., Ex. 17. On February 12, 2009, Mattel rejected MGA's proposal, and demanded that MGA provide its supplemental responses by February 27. Watson Decl., Ex. 19.

MGA then proposed that it respond to the Interrogatories (a) if its protective order motion were denied, within 21 days after that denial, or (b) if the motion were granted, within 21 days after the Court's decided Mattel's summary judgment motion. Watson Decl., Ex. 21. Mattel did not respond to that proposal.

**MGA's Motion For Protective Order and Mattel's Motion To Compel.** On February 27, 2009, MGA filed its Motion for a Protective Order, requesting that the Discovery Master issue an order staying MGA's obligation to provide further responses to the Interrogatories until 21 days after the Court decided Mattel's motion for summary judgment or, if the Discovery Master denied the Protective Order, 21 days after such denial. Mayer Decl., Ex. 3. The Discovery Master set MGA's Motion for a hearing on April 14, 2009. Id., Ex. 4.

Mattel filed its opposition to MGA's Motion on March 6, 2009. Mayer Decl., Ex. 5. That same day, Mattel also filed a motion to compel further responses to the Interrogatories. Id., Ex. 6. In the Motion to Compel, Mattel

argued that MGA had violated the February Order by failing to supplement its responses to the Interrogatories and "refusing" to do so. Id., Ex. 6, at 10. Mattel also sought sanctions in the amount of $4,515 "as partial reimbursement for the fees and costs that Mattel has incurred in bringing this motion." Id., Ex. 6, at 11. That motion is set for hearing on April 21, 2009. Id., Ex. 12.

**Mattel's *Ex Parte* Application.** Notwithstanding the pending motions before the Discovery Master (which will resolve the issues of when MGA must respond to the Interrogatories and whether it violated the February Order), on March 9, 2009, Mattel's counsel informed MGA (for the first time) that Mattel would be filing an *ex parte* application with the Court "relating to MGA's continuing refusals and failures to comply with the Discovery Master's Order of February 15, 2008." Mayer Decl., Ex. 7. Mattel further demanded that MGA "let us know by the end of ***today*** whether MGA will stipulate to immediately bring itself into full and complete compliance with the Order. Otherwise, we will proceed with our *ex parte* application." Id. (emphasis added).

Because Mattel's letter failed to specify the basis for its *ex parte* application or the specific "refusals and failures" it was referring to, MGA asked Mattel explain the basis for its application, pointing out that an *ex parte* application was inappropriate in light of the many months remaining until the discovery cut-off, and that any dispute about the Interrogatories was already was pending before the Discovery Master. Mayer Decl., Ex. 8.[4] At approximately 9:30 p.m. that evening, Mattel wrote a curt response confirming that its *ex parte* Application would concern the Interrogatories and stating that "unless MGA immediately stipulates to fully and completely supplement its responses as ordered, Mattel will file its *ex parte* application tomorrow." Id., Ex. 9. Mattel manually filed its *ex parte* Application at approximately 12:30 p.m. on Tuesday, March 10, 2009, but did not

---

[4] Mattel did not attach MGA's letter to its massive set of exhibits.

1 | send it to MGA's counsel (via e-mail) until a few minutes before 5:00 p.m. Mayer
2 | Decl., Ex. 10.

## II. THERE IS NO BASIS FOR EMERGENCY, *EX PARTE* RELIEF.

As a threshold matter, Mattel's request for *ex parte* relief should be summarily denied as an unwarranted and procedurally improper use of the *ex parte* process. The Court's standing order is clear on this point: *ex parte* applications are "***solely*** for extraordinary relief" (emphasis added). See also Jamdat Mobile, Inc. v. Jamster Int'l Sarl Ltd., No CV 05-3945 PA (FMOx), 2005 WL 5960924, at *1 (C.D. Cal. Oct. 4, 2005) (same). There is good reason for this rule: "The fact that opposing parties are usually given an opportunity to argue or file opposing papers does not mask the plain truth: these hybrid *ex parte* motions are inherently unfair, and they pose a threat to the administration of justice." Mission Power Eng'g v. Co. Cont'l Cas. Co., 883 F. Supp. 488, 490 (C.D. Cal. 1995).

Mattel does not even attempt to demonstrate, because it cannot, that it will be "irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures . . . [and] that the moving party is without fault in creating the crisis that requires *ex parte* relief . . . ." Id. at 492. To the contrary, the discovery cut-off is many months away (i.e. December 11, 2009), and trial is more than a year away. Even Mattel does not contend that there is not ample time for the discovery issues raised in its Application to be resolved by the Discovery Master, or, if the Court were to entertain the matter, for the Application to be heard after regular notice and an opportunity for MGA to be fully heard.

Mattel's attempted use of the *ex parte* procedure to obtain **contempt sanctions** against MGA – especially the draconian sanctions requested by Mattel – is especially problematic. As the Ninth Circuit has noted:

> "The due process guarantees of notice and hearing are fundamental to our system of justice. 'Indeed, we have stated time and again that reasonable notice of a charge

> and an opportunity to be heard in defense before punishment is imposed are 'basic in our system of jurisprudence.'' The importance of the due process guarantees dictates that courts dispense with notice and hearing only where the protection of the judicial institution itself so requires. It is for this reason, and because of the possibility of abuse, that courts have strictly adhered to the principle that the power to punish for contempt is limited to '(t)he least possible power adequate to the end proposed.'"

In re Gustafson, 619 F.2d 1354, 1361 (9th Cir. 1980) (citations omitted); Yates v. U.S., 227 F.2d 848, 850 (9th Cir. 1955) (in contempt cases, "[b]oth [trial and reviewing] courts must be meticulously careful to observe the safeguards, procedural and substantive"). Indeed, even with respect to requests for ordinary (non-contempt) sanctions for discovery violations, the proper procedure is to proceed by noticed motion, and not via *ex parte* request. See 7 Moore's Federal Practice, Motions to Compel and Sanctions, § 37.43[2] (3rd ed. 2007) ("Absent a contrary local rule, standing order, or case specific directive from the assigned judge, a motion for sanctions predicated upon a party's failure to comply with a discovery order must be by motion, and notice of the hearing must be served....").

Notwithstanding the seriousness of the allegations contained in Mattel's Application and the severity of the sanctions sought (coercive sanctions of $5,000 ***per day*** for the first five days, and $10,000 per day thereafter, plus compensatory sanctions of $7,000, without even a window for compliance), Mattel filed its Application in a manner designed to maximize the prejudice to MGA. Mattel gave MGA less than 24 hours notice of its intent to seek an *ex parte* contempt order, without any substantive explanation of the grounds for the Application. Mattel then waited to deliver its massive papers to MGA until minutes before 5:00 p.m. on March 10, notwithstanding that MGA had received notice that the papers had been manually filed hours earlier. Mayer Decl., ¶ 11. Such conduct can only be explained as an attempt to force MGA to respond to voluminous papers, seeking

draconian relief, under an unreasonable and unnecessarily abbreviated timetable. Such gamesmanship is inappropriate, and Mattel's *ex parte* Application should be rejected. Mission Power, 883 F. Supp. at 490-91 ("[t]hough the adversary does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced. Often, the moving party's papers reflect days, even weeks of investigation and preparation; the opposing party has perhaps a day or two. This is due primarily to gamesmanship…. [¶] All of this detracts from a fundamental purpose of the adversary system, namely, to give the court the best possible presentation of the merits and demerits of the case on each side. The opposing party can rarely make its best presentation on such short notice.").[5]

### III. MATTEL'S *EX PARTE* APPLICATION IS AN IMPROPER END-RUN AROUND THE DISCOVERY MASTER

During proceedings on February 11, 2009, this Court made absolutely clear, repeatedly, that "[a]ll discovery matters should rightfully be referred to the Discovery Master." Hearing Transcript at 97:2-4. See also id. at 104:5-8 ("If there's a discovery dispute, please take it to the Discovery Master."), 104:23-25 ("I think it's best that the Discovery Master function essentially as the Magistrate Judge in this case and handle all of those [disputes] from the get-go."). That also is consistent with the parties' Stipulated Order appointing a discovery master. See Stipulation and Order re: Discovery Master, ¶ 4 [Mayer Decl., Ex. 1] ("***Any and all*** discovery motions and other discovery disputes in the above captioned action shall be decided by a master ('Discovery Master') pursuant to Federal Rule of Civil Procedure 53.") (emphasis added). To emphasize the point, the Discovery Master

---

[5] Mattel's papers exemplify the imbalance as to which the Misson Power court expressed concern. Mattel's papers apparently reflect more than 30 hours of work, and were prepared by two Quinn Emanuel partners (who collectively spent "in excess" of 9 hours) and two associates (each of whom spent "in excess" of 10 hours). See Watson Decl., ¶ 48.

expressly informed all counsel as recently as March 4, 2009, that he had spoken to the Court and that the Court "wants all of the discovery issues coming to me in the first instance…if you think they are remotely related to discovery, bring them to me." Mayer Decl., Ex. 12.

Mattel cannot evade the reference to the Discovery Master merely by characterizing its application as one for "contempt," or by filing it on an *ex parte* basis. See Eichenlaub, 2007 WL 1223897, *1 (denying request for contempt sanctions based on purported failure to timely respond to a discovery order: "this appears to be a discovery dispute, and we are thus uncertain why this matter cannot be adequately resolved under the relevant discovery procedures provided in the Federal Rules of Civil Procedure."). Mattel's Application is particularly unwarranted because Fed. R. Civ. P. 53(c)(2) empowers the Discovery Master to "recommend a contempt sanction against a party." That power of recommendation, coupled with this Court's and the Master's respective directives to bring anything "remotely related to discovery" to the Discovery Master in the first instance, mandates denial of Mattel's *ex parte* Application.

### IV. MGA HAS NOT VIOLATED THE FEBRUARY ORDER.

Even if there were some arguable basis for the Court (rather than the Discovery Master) to now entertain Mattel's Application for an Order to Show Cause and Contempt (there is not), ***and*** to do so on an expedited, *ex parte* basis (there is not), Mattel's Application nevertheless should be denied because Mattel has not met its burden of demonstrating that MGA violated the February Order.

Mattel makes the self-serving assertion that "under any possible reading or scenario, the deadline for compliance is long past." (Application at 15). Tellingly, however, Mattel never says what the deadline was, or when it expired. If MGA were to risk contempt for failing to comply with a deadline, it had the right to know what the deadline was, so that it could have applied to the Discovery Master

for temporary relief *before* this supposed deadline expired. The truth of the matter is that the only deadline *ever* provided by the Discovery Master (or anyone else) for MGA's supplementation of the Interrogatories was vacated by Judge Infante on April 22, 2008. At that time, Judge Infante specifically *stayed* MGA's obligation to supplement the Interrogatories. After the Court lifted the stay on Phase 2 discovery, neither the Court nor the Discovery Master ever set a new deadline. Nor did Mattel ever seek one.

Mattel's position that some *unspecified* "deadline" has passed also is inconsistent with its own tacit admissions. In its initial post-stay communication on the subject of Interrogatory Nos. 43 and 44, Mattel's counsel did not claim that MGA was in "violation" of the February Order because it had not immediately answered them. Rather, Mattel's counsel wrote:

> "On February 15, 2008, Judge Infante issued an order compelling further responses to certain interrogatories that Mattel had served. By order dated April 22, 2008, Judge Infante clarified that the obligations of MGA and MGA Mexico to respond to certain interrogatories were stayed, as part of Phase 2 discovery. Now that the Phase 2 discovery stay has been lifted, please let me know *when* we can expect the ordered supplemental responses."

Jan. 20, 2009 letter from J. Corey to J. Russell [Watson Decl., Ex. 12] (emphasis added). Mattel's counsel did not even intimate that there was a specific deadline for responding. Absent a specific deadline, it was entirely proper for MGA to seek an Order from the Discovery Master deferring the response deadline until after Mattel's summary judgment motion was decided or until the Discovery Master denied the Protective Order motion.[6]

---

[6] The two cases cited by Mattel (Application at 13), Lucero v. Martinez, 2006 WL 1304945, *2 (D. N.M. Mar. 11, 2006), and Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Cir. 1983), are inapposite. Neither case had anything whatsoever to do with the timing or manner of compliance with a discovery order whose operation
(…continued)

At a minimum, the ambiguity created by the absence of any specific deadline precludes any contempt sanctions against MGA. <u>Eichenlaub</u>, 2007 WL 1223897, at *2 (contempt not appropriate or available for purported failure to respond substantively to discovery requests where the discovery order "was neither clear nor definite" and was "at least ambiguous"); <u>Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.</u>, 689 F.2d 885, 892 (9th Cir. 1982) (affirming district court's denial of applications to hold defendants in contempt for violating terms of consent judgment where, among other things, certain "language of the judgment was ambiguous"); <u>Sunbeam Corp. v. Black & Decker (U.S.) Inc.</u>, 151 F.R.D. 11, 15 (D. R.I. 1993) (denying motion for contempt and for sanctions where the discovery at issue was open to interpretation: "Any ambiguities or uncertainties in the court order must be read in a light favorable to the person charged with contempt. ... Contempt power should not be used where there is uncertainty"); <u>Redman v. U. S.</u>, 77 F.2d 126, 127 (9th Cir. 1935) ("[T]he power of the court to punish for contempt should be used with caution and deliberation.").[7]

Mattel's contention that MGA "refuses" to supplement its responses to the Interrogatories (Application at 15) is absolutely false. MGA consistently has said, orally and in writing, that it *would* provide supplemental responses to the

---

(…continued) was stayed pending a broader discovery stay. <u>Donovan</u> stands merely for the basic proposition that orders are valid in the absence of a stay. In <u>Lucero</u>, the court found only that, after a stay was lifted, the failure to serve *any* responses (or objections) to interrogatories and document requests within the 30-day period expressly set forth in Fed. R. Civ. P. 33(b)(2) and 34(b)(2)(A) waived the responding party's objections. That is far different from the situation here, in which the date of compliance with the February Order is not subject to statute or federal rule, and was left open by the Clarification Order. Moreover, there was no request for (or even suggestion of) *contempt sanctions* against the responding party.

[7] Although the Court need not reach the issue, the ambiguity in the Clarification Order (and absence of a firm deadline to supplement) also precludes Mattel from establishing that any purported violation was not based on a "good faith and reasonable interpretation" of the February Order. <u>Dual Deck Video Cassette Recorder Antitrust Litigation</u>, 10 F.3d 693, 695 (9th Cir. 1993).

1  Interrogatories. See Watson Decl., Ex. 16 ("This will confirm MGA's proposal
2  during our meet-and-confer-session today that MGA *would* provide further
3  responses to Mattel's Interrogatories 43, 44, 51 through 55, and 64, all of which
4  deal with MGA's trade dress claims, not later than 30 days after the Court decides
5  the trade dress summary judgment motion which Mattel has indicated it will be
6  bringing….") (emphasis added); Ex. 21 ("[The MGA Parties] *offer to provide their*
7  *supplemental responses* either: (1) if the protective order motion is denied, 21 days
8  after its denial; or (2) if the protective order motion is granted, 21 days after the
9  Court decides Mattel's summary judgment motion, to the extent any trade dress
10 claims remain after that decision."). See also id., ¶ 16 ("MGA proposed that it
11 *would* provide responses to these interrogatories no earlier than 21 days after the
12 Court decides Mattel's contemplated partial summary judgment motion."). In
13 short, this is a dispute about the timing of the supplemental responses; it is *not* a
14 dispute about whether they will be provided.

15     Mattel's attempt to analogize MGA's motion to an appeal, motion for
16 reconsideration, or "collateral attack" on the February Order falls of its own
17 weight. MGA has not appealed, challenged or otherwise refused to obey the
18 February Order. Nor has it attempted to attack the factual or legal basis for that
19 order as an excuse for noncompliance. All MGA has done is to request that the
20 Discovery Master temporarily defer the time to respond. MGA's request is based
21 upon the new, intervening circumstances that arose between the issuance of that
22 order and the lifting of the discovery stay – the Phase 1 verdicts and Mattel's
23 announcement of an imminent summary judgment motion based solely on those
24 verdicts.

25     In sum, there simply is no basis to find MGA in contempt of the February
26 Order, and absolutely no basis for any of the contempt sanctions sought by Mattel.[8]

---

[8] Even assuming, *arguendo*, that MGA had violated the February Order by not supplementing the Interrogatories prior to a ruling on its Protective Order Motion,
(…continued)

**Conclusion**

For the foregoing reasons, the Court should deny Mattel's Application.

DATED: March 11, 2009

RUSSELL J. FRACKMAN
PATRICIA H. BENSON
MITCHELL SILBERBERG & KNUPP LLP

By:  /s/ Patricia H. Benson
PATRICIA H. BENSON
Attorneys for Defendants
MGA Entertainment, Inc., MGA Entertainment HK, Ltd., MGAE De Mexico S.R.L. De C.V, and Isaac Larian

---

(…continued)
the sanctions sought by Mattel ($5,000 a day for the first five days, and $10,000 per day thereafter, plus $7,000 in attorneys' fees) are unsupported and completely disproportionate to the alleged violation. In the event the Court issues an Order to Show Cause, MGA respectfully requests and opportunity to separately address the amount and nature of the requested sanctions.