PATRICIA L. GLASER (Bar No. 055668)
pglaser@glaserweil.com
GLASER WEIL FINK JACOBS & SHAPIRO
10250 Constellation Blvd., 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 557-9815

RUSSELL J. FRACKMAN (Bar No. 49087)
rjf@msk.com
PATRICIA H. BENSON (Bar No. 60565)
phb@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendants
MGA Entertainment, Inc., MGA Entertainment HK, Ltd.,
MGAE De Mexico, S.R.L. De C.V., and Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA -- EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED CASES | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br>**[TO BE HEARD BY DISCOVERY MASTER ROBERT O'BRIEN PURSUANT TO ORDER OF JANUARY 6, 2009]**<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MGA'S MOTION FOR PROTECTIVE ORDER**<br>**[SUPPLEMENTAL DECLARATION OF JEAN PIERRE NOGUES, DECLARATION OF LISA TONNU AND EVIDENTIARY OBJECTIONS FILED CONCURRENTLY]**<br><br>Date: April 14, 2009<br>Time: 10:00 a.m.<br>Place: Arent Fox LLP<br>**Phase 2**<br>Discovery Cut-off: Dec. 11, 2009<br>Pre-Trial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |

# TABLE OF CONTENTS

**Page(s)**

Preliminary Statement .................................................................................................. 2

I.   The Motion for Protective Order Is Properly Addressed to the Discovery Master ................................................................................................ 5

II.  Mattel's Assertions that the Trade Dress Interrogatories Seek Information Relevant to Its Affirmative Phase 2 Claims Is Meritless ......................................................................................................................... 8

III. A Short Delay in Discovery that May Prove Unnecessary Is Warranted ........................................................................................................ 10

IV. Mattel's Undue Burden Argument Misstates the Relevant Law ................... 11

Conclusion ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Netflix Antitrust Litigation,*
   506 F. Supp. 2d 308 (N.D. Cal. 2007) .................................................................. 10

*Landry v. Air Pilots Ass'n Intern. AFL-CIO,*
   901 F.2d 404 (5th Cir. 1990) ............................................................................ 4, 5, 11

*Little v. City of Seattle,*
   863 F.2d 681 (9th Cir. 1988) .................................................................................. 4, 10

*Orchid Biosciences, Inc. v. St. Louis University,*
   198 F.R.D. 670 (S.D. Cal. 2001) ............................................................................ 4, 10

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 26(b)(1)(C) ............................................................... 7

Federal Rule of Civil Procedure 53 ........................................................................... 3, 5

Federal Rules of Civil Procedure 26(c)(1)(B) ............................................................ 6

## Preliminary Statement

Mattel makes four groups of arguments in opposition to MGA's motion for a protective order staying responses to the Trade Dress Interrogatories and other discovery directed to MGA's trade dress claims until Mattel's threatened summary judgment motion is decided. Each of Mattel's contentions is without merit.

First, in a confusing jumble of arguments apparently intended to articulate the untenable position that the Discovery Master does not have authority to consider this Motion for Protective Order, Mattel contends (1) that MGA is attempting to "thwart" the District Court's Phase 2 Scheduling Order and "repeated directives" at a February 11, 2009 hearing that "there is no stay and that Phase 2 discovery is to proceed," (2) that even though MGA "was fully aware of" the grounds of this Motion on February 11, it failed to argue at the February 11 hearing that the circumstances presented by this Motion "should have an[] effect on the schedule," and (3) that stay motions may not be properly directed to the Discovery Master. Opp. at 1:4-16 . Mattel's arguments intentionally confuse apples with oranges, gratuitously attribute to MGA a motivation that is as false as it is nonsensical, and simply are wrong.

To start with, the stay here requested is for a limited and defined duration, covers a limited subject matter (MGA's affirmative trade dress claims) within a much broader array of Phase 2 subject matters to which Mattel can direct (and has directed) its discovery efforts, and will not affect the Phase 2 Scheduling Order. The District Court's ruling on post trial motions is expected momentarily, and Mattel has announced its intent to move for summary judgment on MGA's trade dress claims within a week or so thereafter.[1] Whether and to what extent MGA's

---

[1] Indeed, the *very first* meet and confer letter Mattel sent after the Phase 2 Discovery Stay was lifted was not about *discovery*, but about *Mattel's intent to file a summary judgment motion on MGA's trade dress claims.* That letter was sent less than 48 hours after the stay had been lifted.

2

REPLY MEMORANDUM IN SUPPORT OF MGA's MOTION FOR PROTECTIVE ORDER

trade dress claims will survive will be decided by motion. MGA has offered to provide its responses to the Trade Dress Interrogatories 21 days after the Court rules on the summary judgment motion. Thus, Mattel will have plenty of time to discover whatever additional information it does not already have on MGA's affirmative claims.[2]

Moreover, the Court's comments at the February 11 hearing about there no longer being a stay in place were made in a completely different context, and about completely different subject matters, than the issue here presented. Similarly, Mattel's accusation that MGA failed to raise the instant issue at the February 11 hearing is disingenuous at best. As of February 11, Mattel was still considering (or at least giving lip service to considering) the MGA Parties' request that Mattel agree to such a stay pending resolution of its summary judgment motion, so there was as yet no reason for MGA to raise the issue with the Court. Indeed, if Mattel thought this was an issue that should have been brought to the Court's attention on February 11, it was within Mattel's ability to do so. Most important, however, the Stipulated Court Order appointing a Discovery Master in this case explicitly states that "*[a]ny and all* discovery motions and other discovery disputes in the above-captioned action shall be decided by a master ('Discovery Master') pursuant to Federal Rule of Civil Procedure 53." Ex. 16 to Hauler Decl. at 194:12-13 (emphasis added). Both the Court and the Discovery Master have made it clear that this provision means what its says, and that anything "remotely related to discovery" must go to the Discovery Master first. *See* Exs. 16 and 17 to Nogues Supp. Decl. Accordingly, this motion is properly brought before the Discovery Master.[3]

---

[2] Mattel accuses MGA of "inflating" the number of discovery requests Mattel has propounded, but carefully refrains from setting forth what it contends is the "accurate" number of discovery requests.

[3] Mattel contends, without any supporting evidence, that the Discovery Master indicated on March 4, 2009 that "discovery stay motions are not properly directed (…continued)

Mitchell Silberberg & Knupp LLP
2155096.2

Mattel's second argument--that the Trade Dress Interrogatories are relevant to Mattel's claims that MGA took things from Mattel, even though each of them specifically asks about concepts, designs, products, and packaging ***that MGA contends Mattel copied from MGA***--is meritless. As discussed hereafter, this contention makes no sense, and appears to be *post hoc* rationalization in an attempt to circumvent the logical conclusion that the discovery sought is only relevant if and to the extent that Mattel's imminent summary judgment motion is denied.

Mattel's third argument is that its anticipated summary judgment motion is not a reason for staying any discovery because "[i]n nearly every case, a party will bring a dispositive motion prior to trial." Mattel Opp. at 1. This argument ignores the facts that it is Mattel who has announced that it will file its summary judgment motion imminently, not at some far-off, unspecified date, and has made it clear that the discovery at issue is irrelevant to resolution of Mattel's motion and may never be needed should Mattel succeed on its motion. In these circumstances, cases like *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) and *Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 672 (S.D. Cal. 2001), make it clear that a stay is warranted.

Finally, Mattel argues that MGA has not proved that the requests in question are unduly burdensome. Mattel again misses the point. As cases like *Landry v. Air Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404 (5th Cir. 1990), make clear, when discovery is not necessary to an imminent dispositive motion and, if that motion is granted, may never be necessary, that discovery is presumptively and by definition unduly burdensome. In such circumstances, it is Mattel which has the burden "to

---

(...continued)
to" him. Counsel for the MGA Parties has reviewed the transcript of that hearing, and finds no such statement. Indeed, the Discovery Master made it clear that all matters "remotely related to discovery" were to be first brought to him. Ex. 17 to Nogues Supp. Decl. at 16:18-17:4.

4
REPLY MEMORANDUM IN SUPPORT OF MGA's MOTION FOR PROTECTIVE ORDER

show a need for the [discovery] such that their burden and expense would not be 'undue.'" *Id.* at 436. And it is Mattel which has failed to carry this burden.

Accordingly, the Court should grant the protective order motion and stay the MGA Parties' obligations to further respond to the Trade Dress Interrogatories and other trade dress discovery.

### I. The Motion for Protective Order Is Properly Addressed to the Discovery Master

On December 6, 2006, the Court entered a stipulated order appointing a Discovery Master in this case. Ex. 16 to Hauler Decl. Under the terms of that order "*[a]ny and all* discovery motions and other discovery disputes in [this] action shall be decided by a master (the 'Discovery Master') pursuant to Federal Rule of Civil Procedure 53." *Id.* at 194:12-13 (emphasis added). That Order does not contain any exception for motions seeking a protective order affecting the timing or sequence of discovery, such as the motion presented here. The January 6, 2009 order appointing the current Discovery Master did not change the broad scope of matters referred to the Discovery Master. Ex. 9 to Hauler Decl. at 75-76.

On February 4, 2008, as the trial date for Phase 1 of this case drew near, the Court stayed all discovery relating to Phase 2 (Ex. 4 to Nogues Decl.), and on January 6, 2009, it vacated that stay. Ex. 7 to Nogues Decl. Based on selective quotation from the transcript of the February 11, 2009 proceedings before the Court, Mattel argues that the Court has effectively ruled that no protective orders controlling the timing or order of discovery can be issued in this case. Quite to the contrary, the Court directed that *all* issues relating to discovery should be first directed to the Discovery Master. *See, e.g.*, Ex. 11 to Hauler Decl. at 94:2-3 ("All discovery matters rightfully should be referred to the Discovery Master."). Thus, when the issue arose as to whether or not discovery related to financial condition

1 could be sought, the Court simply reiterated that the Phase 2 discovery stay had
2 been lifted and that it had not imposed any other stay of discovery, but left the
3 propriety of the discovery sought "completely up to the Discovery Master"
4 (Ex. 16 to Nogues Supp. Decl. at 9:21-22). The Court did not prejudge any future
5 motions for protective orders or stays; nor did it in any way curtail the prior
6 reference of all discovery matters to the Discovery Matter. Instead, the Court
7 merely made it clear that the **Phase 2 discovery stay** was lifted in its entirety, and
8 that *all* discovery matters should be first directed to the Discovery Master. There
9 is and can be no question that MGA's Motion for Protective Order, which relates
10 to trade dress discovery, is a discovery matter that must be, and properly was,
11 directed to the Discovery Master.

12 Mattel's assertion that the MGA Parties should have raised this issue during
13 the February 11 hearing before the District Court is equally meritless. First, as
14 noted above, the Court made it clear on February 11 that discovery matters were to
15 go to the Discovery Master, not the Court. *See, e.g.,* Ex. 11 to Hauler Decl. at
16 94:2-3 ("All discovery matters rightfully should be referred to the Discovery
17 Master."); 98:15-21 (when asked about reasonable limits on number of Phase 2
18 depos, Court responded "in the first instance, that needs to go to the Discovery
19 Master."); Ex. 16 to Nogues Supp. Decl. at 5:5-7, 8:12-22, 10:16-20, 11:4-21,
20 12:5-28. The protective order sought by the MGA Parties is indisputably a
21 discovery matter. *See, e.g.,* Fed. R. Civ. P. 26(c)(1)(B) (party may seek protective
22 order "specifying terms, including time and place, for the disclosure or
23 discovery"). This simply was not a matter that should have been taken up with the
24 District Court on February 11, but one for the Discovery Master under the Court's
25 prior orders and pursuant to its statements on February 11.

26 Moreover, as of February 11, Mattel had not yet responded to the MGA
27 Parties' proposal that their responses to the Trade Dress Interrogatories be deferred
28 until after Mattel's anticipated summary judgment motion. Mattel did not

1  unequivocally reject that proposal until February 12, 2009, the day after the
2  hearing. Ex. 12 to Nogues Decl.[4] And it was not until February 18 that Mattel
3  confirmed that it planned to file its summary judgment motion within a week or
4  weeks of the Court issuing its rulings on the Phase 1 post-trial motions.[5] Exs. 14
5  and 15 to Nogues Decl. Since the meet and confer process had not yet been
6  completed, it is obvious that matter was not briefed or ready for discussion on
7  February 11. Thus, even had it been appropriate to take this discovery matter up
8  with the Court rather than the Discovery Master (which it was not), there was no
9  basis to do so on February 11.

Nor is true, as Mattel asserts, that the Discovery Master himself has "made clear . . . that discovery stay motions are not properly directed to him." Mattel Opp. at 1. The transcript of the March 4 hearing at which Mattel claims this statement was made does not in any way support this contention, and such a statement would be contrary to the reference order and to Federal Rule of Civil Procedure 26(b)(1)(C) in any event. Indeed, the Discovery Master made it clear that he had spoken to Judge Larson and "he wants all of the discovery issues coming to me in the first instance . . .at least in the initial instance on your discovery issues, and if you think they're remotely related to discovery, please bring them here first." Ex. 17 to Nogues Decl. at 16:18-17:7.

---

[4] In its opposition, Mattel suggests that it rejected MGA's proposal on February 8, 2009. *See* Mattel Opp. at 10:16-17 and n.36. However, Ex. 10 to the Hauler Decl. does not support this contention. In that letter, Mr. Corey merely confirms that he "would discuss your proposal with our client, but . . . did not expect them to agree."

[5] During a telephonic meet and confer on the summary judgment issue, Mattel's counsel said they intended to file the summary judgment motion within a week of the Court's rulings on the post-trial motions argued on February 11, 2009. However, when MGA's counsel memorialized that statement in a letter subsequently written in connection with MGA's Protective Order motion, other Mattel counsel apparently realized that the "one week" time table would not help Mattel in opposing the Protective Order Motion, and Mattel quickly claimed the summary judgment motion would be filed within "weeks" rather than "a" week. In any event, MGA's motion is well-taken whether a "week" or "weeks" are involved.

## II. Mattel's Assertions that the Trade Dress Interrogatories Seek Information Relevant to Its Affirmative Phase 2 Claims Is Meritless

Mattel admits, as it must, that the Trade Secret Interrogatories seek "discovery regarding MGA's allegations that Mattel copied, infringed or diluted MGA products." Mattel Opp. at 9:13-14. Each of the requests specifically asks about concepts, designs, products and product packaging which *MGA contends Mattel copied, infringed or diluted*. None of the interrogatories asks MGA to provide information about any trade secrets which *Mattel contends MGA misappropriated*, or anything about any of Mattel's other Phase 2 claims.

Nevertheless, in opposition to this motion Mattel, for the first time, makes the conclusory and unexplained assertion that the Trade Dress Interrogatories seek information relevant to its trade secrets claims. For this proposition, it cites inapposite general statements made by the Court in the context of requests to bifurcate Phase 1 and Phase 2 discovery, a matter that is significantly different from the issue presented by this motion. The reason for the omission of any explanation is simple: Mattel *cannot* rationally explain how the information sought in the Trade Dress Interrogatories has relevance to Mattel's trade secret and other Phase 2 claims.

A review of the Interrogatories themselves makes this clear. Interrogatories 43 and 44 seek dates that each concept, design product and packaging that *MGA contends Mattel infringed or copied* was "conceived" and was "first fixed in any tangible medium of expression." While Mattel has argued that this information is relevant to Mattel's defense against MGA's trade dress claims, Mattel never argued, and the Discovery Master never found, that the interrogatories were relevant to Mattel's affirmative Phase 2 claims against MGA. *See* Ex. 5 to Nogues Decl. at 98:7-99:4. It is therefore not surprising that Mattel does not even attempt to show how the interrogatories are relevant to its own, affirmative claims.

Nor are any of the other interrogatories at issue relevant to Mattel's affirmative claims. Interrogatory No. 51 asks for a listing of those Mattel products which *MGA contends copied MGA's trade dress.* Interrogatory No. 53 seeks revenues, costs and profits on trade dress items which *MGA contends Mattel infringed.* Interrogatory No. 53 is addressed to MGA's analysis of *Sleekcraft* factors demonstrating that Mattel's actions are likely to cause confusion as to MGA's products, and has nothing whatsoever to do with any of Mattel's claims against MGA. And Interrogatory Nos. 54, 55 and 64 seek facts, witnesses and documents supporting *MGA's* infringement and dilution claims.

Mattel's assertion that somehow these interrogatories will disclose information relevant to *its* claims, as opposed to *MGA's* trade dress claims, is an unsupported and *post hoc* attempt to find some reason why this sensible request for a Protective Order should not be granted. The fact that Mattel itself cannot come up with any rational explanation for how these requests will yield information relevant to its affirmative claims is the most telling evidence that every one of these interrogatories is aimed at MGA's trade dress claims.

### III. A Short Delay in Discovery that May Prove Unnecessary Is Warranted

Mattel's assertion that its imminent summary judgment motion is not a reason to postpone or stay trade dress discovery flies in the face of the authorities cited by MGA. Mattel does not deny that its anticipated summary judgment motion will not rely on any of the pending Trade Dress Interrogatories or any future trade dress discovery. Mattel does not contest the obvious fact that if its summary judgment motion is granted (in whole or in part), the scope of MGA's trade dress claims, and the need for discovery related to those claims, could dramatically change. In such circumstances, cases like those cited in the MGA's moving papers make it clear that a protective order staying discovery until resolution of such motions is warranted. *See, e.g., Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (affirming stay of discovery pending resolution of dispositive immunity issue because it "furthers the goal of efficiency for the court and litigants."); *In re Netflix Antitrust Litigation*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007) (courts have broad discretion to stay discovery pending resolution of a potentially dispositive motion); *Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 672 (S.D. Cal. 2001) ("court has broad discretion to stay discovery in a case while a dispositive motion is pending").

Mattel speculates that a motion it is prepared to file immediately after the Court's ruling on the Phase 1 post-trial motions may not get decided until June or July, thereby pushing responses to the Trade Dress Interrogatories into July. Such speculation is not a legitimate basis for denial of a protective order here. But even, were there such a delay, Mattel would have ample time to conduct any necessary further discovery on MGA's trade dress claims.

## IV. Mattel's Undue Burden Argument Misstates the Relevant Law

Mattel acknowledges it does not need any of the Trade Dress Interrogatory responses to support its anticipated summary judgment motion. It implicitly concedes that if and to the extent that motion is granted, it may never need that information.[6]

What Mattel refuses to accept, despite these explicit or implied admissions, is that under these circumstances, requiring MGA to now respond to the Trade Dress Interrogatories presumptively and by definition puts an "undue" burden on MGA. That is precisely what *Landry v. Air Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404 (5th Cir. 1990), and cases like it hold. Indeed, under *Landry* and its kin, this showing—that Mattel does not need the requested discovery for its summary judgment motion and may never need it if that motion is granted--shifted the burden to Mattel "to show a need for the [discovery responses] such that their burden and expense would not be 'undue.'" Id. at 436. Mattel has failed to carry its burden.[7]

Mattel's attack on the Wing Declaration is thus unavailing. That declaration indeed demonstrates that efforts to respond to Mattel's interrogatories would pose a significant burden on MGA. Mattel tries to quibble about just how much of a

---

[6] Mattel also complains that there are certain products unrelated to the Bratz lines as to which MGA has made trade dress claims. Given the amount of work necessary to try to answer the Trade Dress Interrogatories, *see* Wing Decl. at ¶¶ 3-5, it would make far more sense for MGA to compile responsive information once the summary judgment motion is decided and the full scope of the trade dress claims is settled. In other words, it would be much more efficient and cost effective to gather and compile such information once, not several times. However, should the Discovery Master so direct, MGA will respond to the Trade Dress Interrogatories as to the 4-Ever-Best-Friends, Mommy's Little and Alien Racers lines of products that Mattel now concedes will not be part of its motion.

[7] None of the cases cited in Mattel's opposition deal with circumstances where a dispositive motion may obviate the need for discovery.

burden would be entailed, but its caviling misses the point -- if the discovery is not needed, *any* burden is undue.[8]

### Conclusion

For all of the reasons set forth in the MGA Parties' moving papers and in this reply brief, the MGA Parties respectfully request that the Discovery Master issue a protective order staying and postponing any further obligation of the MGA Parties to the Trade Dress Interrogatories and other trade dress claims until 21 days after the Court rules on Mattel's anticipated summary judgment motion.

DATED: March 11, 2009

RUSSELL J. FRACKMAN
PATRICIA H. BENSON
MITCHELL SILBERBERG & KNUPP LLP

By: _____

Attorneys for Defendants
MGA Entertainment, Inc., MGA Entertainment HK, Ltd., MGAE De Mexico, S.R.L. De C.V., and Isaac Larian

---

[8] Mattel cites the deposition of Lisa Tonnu and one exhibit thereto as establishing that MGA "regularly maintains" reports tracking revenues, costs and profits on a product by product basis. Mattel Opp. at 19. The transcripts pages cited by Mattel do not support this assertion. In fact, the documents shown to Ms. Tonnu were specifically generated for this litigation in consultation with outside consultants. Tonnu Decl. ¶ 2. These documents do not refute anything in Mr. Wing's declaration, but confirm what he said: The information would have to be specifically generated at significant burden and expense to MGA.