Bingham McCutchen LLP
TODD E. GORDINIER (SBN 82200)
todd.gordinier@bingham.com
PETER N. VILLAR (SBN 204038)
peter.villar@bingham.com
CRAIG A. TAGGART (SBN 239168)
craig.taggart@bingham.com
600 Anton Boulevard
18th Floor
Costa Mesa, CA 92626-1924
Telephone: 714.830.0600
Facsimile: 714.830.0700

Attorneys for Non-party
BINGHAM McCUTCHEN LLP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>    Plaintiff,<br><br>        v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>    Defendant.<br><br><br><br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. CV 04-09059 and Case No. CV 05-2727<br><br>**DISCOVERY MATTER**<br>**To be heard by Discovery Master Robert C. O'Brien**<br><br>**NON-PARTY BINGHAM McCUTCHEN LLP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL BINGHAM McCUTCHEN LLP TO PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENA**<br><br>Date:       April 14, 2009<br>Time:      10:00 a.m.<br>Place:      Arent Fox LLP<br>             555 West Fifth Street<br>             48th Floor<br>             Los Angeles, CA 90013 |

A/72869192.2/3009108-0000337036

## TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................1

II.  STATEMENT OF FACTS ....................................................................5

    A.   Bingham Represents Various Non-Parties In This Case ...................5

    B.   Mattel Issues A Subpoena To Bingham ...............................................6

    C.   Mattel Refused To Withdraw The Subpoena......................................7

    D.   Bingham Filed Its Motion to Quash Mattel's Subpoena And
         Mattel Responded By Filing This Motion to Compel.........................8

    E.   The Discovery Master Denied Mattel's Motion to Compel
         Information Relating to the Non-party Finance Entities......................8

III.  MATTEL SUBPOENA SEEKS PRIVILEGED INFORMATION...............9

IV.  THE FEE ARRANGEMENTS BETWEEN BINGHAM AND ITS
    NON-PARTY CLIENTS ARE NOT DISCOVERABLE............................11

    A.   Mattel Misrepresents This Court's Prior Orders Regarding The
         Discoverability Of Fee Agreements......................................,.............11

    B.   Mattel Also Misstates Ninth Circuit Precedent..................................12

V.   MATTEL HAS FAILED TO ARTICULATE HOW ITS REQUESTS
    SEEK INFORMATION THAT IS RELEVANT TO PHASE 2.................13

    A.   Bingham's Fee Agreements With Its Non-Party Entity Clients
         Are Not Relevant To Phase 2............................................................14

    B.   Mattel Fails To Show How Any Of The Other Requests Are
         Relevant To The Merits Of Phase 2....................................................15

VI.  MATTEL SUBPOENA IS OVERLY BROAD........................................17

VII. MATTEL'S SUBPOENA CREATES AN UNDUE BURDEN.................18

VIII. THE COURT SHOULD SANCTION MATTEL FOR FILING THIS
    UNJUSTIFIED MOTION TO COMPEL ..............................................20

IX.  CONCLUSION..................................................................................21

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Beinin v. Center for Study of Popular Culture*,
   No. C 06-2298 JW (RS), 2007 WL 832962 (N.D. Cal. 2007) ..........................19

*Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.*,
   175 F.R.D. 646 (C.D. Cal. 1997)........................................................................12

*Cram v. Electronic Data Systems Corp.*,
   2008 U.S. Dist. Case No. 07cv1842-LAB (NLS) .......................................20, 21

*Exxon Shipping Co. v. U.S. Dept. of Interior, et al.*,
   34 F.3d 774 (9th Cir.1994) ................................................................................20

*Fairview Development Corp. v. Aztex Custom Homebuilders, LLC*,
   No. CV-07-0337-PHX-SMM, 2008 WL 2113492 (D. Ariz. May 16,
   2008) ............................................................................................................10, 20

*Gonzales v. Google, Inc.*,
   234 F.R.D. 674 (N.D. Cal. 2006)..........................................................13, 17, 18

*In Re Grand Jury Subpoena (Horn)*
   976 F.2d 1314 (9th Cir. 1992) (amended November 25, 1992, reported at
   1992 U.S. App. LEXIS 30917)..........................................................................13

*Mattel, Inc. v. Walking Mountain Productions*,
   353 F. 3d 792 (9th Cir. 2003) ....................................................................passim

*Moon v. SCP Pool Corp.*,
   232 F.R.D. 633 (C.D. Cal. 2005)..................................................................13, 19

*Theofel v. Farey-Jones*,
   341 F.3d 978 (9th Cir. 2003) ...............................................................................5

*Televisa, S.A. v. Univision Communications, Inc.*, No. CV 05-3444 PSG
   (MANx), 2008 WL 4951213, at *2 (C.D. Cal. Nov. 17, 2008) ........................19

*U.S. v. Abel*,
   469 U.S. 45 (1984).............................................................................................12

**RULES**

Fed. R. Civ. P. 26 ..............................................................................................19

Fed. R. Civ. P. 26(b)(2)(iii) ...............................................................................19

Fed. R. Civ. P. 26(c) ..........................................................................................20

Fed. R. Civ. P. 37 ..............................................................................................20

Fed. R. Civ. P. 37(a)(5)(B) ................................................................................20

Fed. R. Civ. P. 45(c)(3) ......................................................................................20

Fed. R. Civ. P. 45(c)(3)(A) ................................................................................10

## I.     INTRODUCTION

Bingham McCutchen LLP ("Bingham") represents several non-parties including, *inter alia*, Omni 808 Investors, LLC, Vision Capital, LLC and Omninet Capital LLC (the "Non-party Finance Entities"), who have been served by Mattel, Inc. ("Mattel") with subpoenas in connection with this matter.  On March 10, 2009, the Discovery Master denied Mattel's motion to compel the Non-party Finance Entities' compliance with the subpoenas (except for a limited category of documents from Omni 808 Investors, LLC) on the ground that the documents are not relevant to the issues in this case.

Despite the fact that the subpoenas to the Non-party Finance Entities seek documents that are not remotely relevant to this litigation (as confirmed by the Discovery Master's March 10, 2009 Order), Mattel issued an abusively drawn subpoena to Bingham seeking the same irrelevant and overly broad categories of documents.  Indeed, the Bingham subpoena is even more abusive in that it seeks *every single document* in Bingham's possession, custody or control relating to Bingham's clients including, without limitation, all documents referring or relating to Bingham's "fee agreements" and "fee arrangements" with its clients, all privileged attorney-client communications and work product.  It is evident that Mattel issued the subpoena to annoy, harass and exert pressure on Bingham and its clients, and not for the purposes of obtaining relevant information.  Therefore, Bingham filed a motion to quash the subpoena which is set for hearing before the Discovery Master on April 14.

In response to Bingham's motion to quash the Bingham subpoena, Mattel filed a motion to compel despite Bingham's repeated requests to Mattel's counsel that it refrain from filing a motion to compel until after the Discovery Master decided Mattel's motion to compel the subpoenas to the Non-party Finance Entities and Bingham's motion to quash the Bingham subpoena.  Mattel's counsel rejected this request.  Mattel's motion to compel is not only meritless, it is now

A/72869192.2/3009108-0000337036                              -1-

1    effectively mooted by the Discovery Master's March 10 Order finding the same

2    documents Mattel seeks from Bingham to be irrelevant and not discoverable.

3    Moreover, Mattel's motion to compel ignores the relevant case history and Ninth

4    Circuit precedent governing third party subpoenas and is replete with inaccurate

5    and misleading representations regarding the facts, applicable law and the Court's

6    prior discovery orders in this case.

7        Mattel misleadingly asserts in its motion that it is entitled to all documents

8    referring or relating to Bingham's fee agreements with the Non-party Finance

9    Entities because it claims that this Court has made "repeated Orders" requiring the

10   production of "comparable" fee information.  This could not be further from the

11   truth.  Neither Judge Larson nor the previous Discovery Master in this case have

12   ever held that the fee agreements between Non-party Financing Entities and their

13   attorneys are discoverable.  In fact, to support its contention regarding such

14   "repeated Orders" in this case, Mattel identifies four prior Orders (attached as

15   Exhibits 8-11 of Webster Declaration).  However, all four Orders relate to a single

16   issue -- whether Mattel could obtain information regarding fee agreements between

17   Carter Bryant, *the plaintiff*, and MGA Entertainment, Inc., *also a party and*

18   *Bryant's employer*.  The Court reasoned that whether MGA was paying Bryant's

19   legal fees was relevant to Bryant's credibility and bias as the plaintiff.  These

20   Orders have nothing whatsoever to do with the fee agreements between non-parties

21   and their counsel in connection with document subpoenas.

22       Ironically, in addition to its misleading assertions regarding this Court's

23   prior discovery Orders pertaining to plaintiff Carter Bryant's legal fees in this case,

24   Mattel all but ignores the *relevant Court Orders in this case* and the *relevant*

25   *Ninth Circuit precedent* relating to *third party subpoenas*.  In fact, Mattel has not

26   identified a *single instance* in this case where the Court has compelled a non-party

27   to produce its fee agreements with its counsel or to otherwise respond to a similar

28   subpoena.

A/72869192.2/3009108-0000337036                      -2-

1        Mattel and its counsel have a well known pattern and practice -- both in this

2   case and others -- of propounding similar types of abusive subpoenas on non-

3   parties.  This Court and others have repeatedly quashed such subpoenas and

4   sanctioned Mattel and its counsel for their misconduct. This Court has granted

5   motions to quash subpoenas that Mattel served on non-parties Bank of America,

6   ConsumerQuest, Deloitte & Touche, Ernst & Young, Wachovia Bank, Wells Fargo

7   and others.  Further, the leading Ninth Circuit Court of Appeals opinion

8   concerning abusive non-party discovery involves subpoenas served by Mattel and

9   Quinn Emanuel under similar (though less egregious) circumstances.  See *Mattel,*

10  *Inc. v. Walking Mountain Productions*, 353 F. 3d 792 (9th Cir. 2003) . In that case,

11  the Central District of California found that Mattel's subpoenas were "way too

12  broad for the explanation given by [Mattel's counsel]," "abusively drawn," and

13  that "no attempt had been made to try to tailor the information request to the

14  immediate needs of the case." *Id.* at 813.  The Court found that Mattel served the

15  subpoenas to "exert pressure" on non-party witnesses and that "a pattern is clear in

16  this case that [Mattel's counsel] files these oppressive subpoena requests ... for the

17  purpose of annoying and harassment and not really for the purpose of getting

18  information." *Id.* at 814.  Consequently, the Court quashed the subpoenas and

19  sanctioned Mattel for its abuse of the discovery process. *Id.*  The Ninth Circuit

20  affirmed. *Id.* at 816.

21       Here, the problems with Mattel's subpoena stretch far beyond the

22  discoverability of Bingham's fee agreements, which seems to be the focal point of

23  Mattel's motion to compel.  Mattel fails to establish how *virtually every request* is

24  discoverable in light of the fact that each seeks the production of information

25  protected by the attorney-client privilege and attorney work product doctrine.

26  Mattel also fails to articulate how any -- let alone all -- of its requests are relevant

27  to Phase 2.  The notion that Bingham's fee agreements, payment information, and

28  other documents relating to Bingham's representation of the non-party finance

1  entities is in any way relevant to Mattel's RICO and other claims against MGA in

2  Phase 2 is preposterous.  Moreover, the requests Mattel seeks to compel Bingham

3  to respond to are grossly overbroad and unduly burdensome.  Indeed, Mattel's

4  subpoena to Bingham requests *every single document* in Bingham's files referring

5  or relating to its non-party clients and its relationship to those clients including

6  attorney client privileged information and work product.

7       The Discovery Master has already ruled in his March 10 Order that Mattel's

8  requests impermissibly seek information that is not relevant to the issues in Phase

9  2.  "The problem … is the vast majority of the document requests set forth in the

10  Subpoena[s] … are not narrowly tailored to obtain [relevant information], but

11  instead would require the Financing Entities to produce virtually every document

12  in their possession regarding their formation, operations, and history of

13  transactions." (Or. No. 3 at 20-21).  The Discovery Master further held, "[i]f

14  Mattel's discovery were reasonably calculated to lead to the discovery of such

15  information, then it might be permissible … [b]ut Mattel has not taken any steps to

16  connect its discovery to such evidence." (Id. at 22).  The Discovery Master thus

17  denied Mattel's motion to compel Bingham's non-party clients to produce nearly

18  all of the information Mattel improperly sought. (Id. at 28-29).

19       Finally, the overarching theme of Mattel's motion purports to be that Mattel

20  seeks documents from Bingham that it has not been able to obtain from MGA or

21  from Bingham's non-party clients.  As noted above, the Discovery Master rejected

22  Mattel's argument that it is entitled to discover every document that it requested,

23  and instead, limited Mattel to a specific set of documents from Omni 808

24  Investors, LLC.  (Or. at 28.)  Accordingly, because the only information that

25  Mattel is permitted to obtain may be discovered from Omni 808 Investors, its

26  subpoena to Bingham is invalid and this motion to compel is moot.

27       The Ninth Circuit has warned that "the subpoena power is a substantial

28  delegation of authority to private parties, and those who invoke it have a grave

A/72869192.2/3009108-0000337036                    -4-

1  responsibility to ensure it is not abused." *Theofel v. Farey-Jones*, 341 F.3d 978,

2  984 (9th Cir. 2003).  Mattel and its counsel Quinn Emanuel have shirked their

3  responsibility by abusing this power yet again.  Thus, the Court should deny

4  Mattel's motion to compel and counsel should be sanctioned to compensate

5  Bingham for its expenses incurred in connection with opposing Mattel's

6  unjustified motion.

7

8  **II.  STATEMENT OF FACTS**

9      **A.  Bingham Represents Various Non-Parties In This Case**

10      On December 29, 2008 Mattel filed an *ex parte* application for the

11  appointment of a receiver for MGA Entertainment, Inc. ("MGA") and requested

12  leave to conduct discovery into MGA's financial dealings with, *inter alia*, Omni

13  808 Investors, LLC, Vision Capital, LLC, and Omninet Capital, LLC, (together

14  with Lexington Financial, Limited the "Non-party Financing Entities").  During

15  the hearing held on January 5, 2009, the Court did not grant Mattel leave to open

16  such discovery, indicating that to open discovery on this issue was not the correct

17  course of action.  (Hr'g Tr. 20:5-6.)  The Court also indicated that before any

18  information would be provided to Mattel, there would have to be a certain

19  threshold showing to satisfy the Court that further examination was warranted.

20  (*Id.*, at 14:1-2.)  On January 7, 2009, the Court issued its written Order appointing

21  a forensic auditor and deferring Mattel's request for leave to take discovery.

22      On January 9, 2009, Mattel issued subpoenas to the Non-party Financing

23  Entities.  Mattel's subpoenas requested that the Non-party Financing Entities

24  produce all of their business records including, without limitation, all documents

25  relating to their formation, governance, members, finances, business relationships

26  and transactions, which necessarily include highly-sensitive and confidential

27  information that in no way relates to the parties or issues in this litigation.

28      Bingham was retained to represent the Non-party Financing Entities in

1    connection with subpoenas issued by Mattel. At a February 11 hearing, the Court
2    found that that there is presently no basis to appoint a receiver at MGA: "At this
3    point, based on the information that Mr. Durkin [the forensic auditor] has and has
4    been able to relate to the court, there is no basis to appoint a receiver, and the Court
5    declines to do so." (Feb. 11 Transcript, 80:10-13.) Further, the Court indicated
6    that Mattel's receiver-related allegations are insufficient to justify the discovery
7    sought in the subpoenas unless Mattel can show the discovery is relevant to Phase
8    2 of the trial. Judge Larson stated: "Then the question becomes -- and this is a
9    question for the Discovery Master, not for this Court -- whether or not the
10   discovery is related to Phase 2. If it is, it is. I'm not going to pass any judgment
11   whatsoever. I'm going to leave that completely up to the Discovery Master."
12   (Feb. 11 Transcript, 99:18-22.)

**B.     Mattel Issues A Subpoena To Bingham**

14   The day after the February 11 court hearing, Mattel issued a subpoena to
15   Bingham -- which is largely duplicative of, and more invasive than, the subpoenas
16   issued to Bingham's non-party clients. (Declaration of Peter Villar in Support of
17   Bingham's Motion to Quash ("Villar Decl."), Ex. A.) The subpoena includes
18   seven broad categories, most of which are not confined to any time or subject
19   matter, including the following:

20   1.     All documents referring or relating to any fee agreement or fee
21   arrangement referring or relating to Bingham McCutchen LLP's ("Bingham")
22   representation of Vision Capital, LLC ("Vision Capital") and/or Omni 808
23   Investors, LLC ("Omni 808"), and any amendments or modifications thereto, and
24   any communications referring or relating to any such agreement or arrangements.

25   2.     Documents sufficient to identify each and every person or entity billed
26   for, liable to pay, responsible for payment of, or who has paid or promised to pay,
27   whether directly or indirectly, Bingham's fees in connection with Bingham's
28   representation of Omni 808 or Vision Capital.

A/72869192.2/3009108-0000337036                                    -6-

3.      All documents referring or relating to the formation, governance, ownership, capitalization and/or funding of, or credit for, Omni 808, Vision Capital and/or Lexington Financial Limited ("Lexington"), including the source(s) and terms of such capitalization, funding and/or credit.

4.      All documents identifying any member, managing member, shareholder, holder of any ownership interest in, officer, director, employee and/or agent of, or investor in, Omni 808, Vision Capital and/or Lexington.

5.      All contracts and agreements, and proposed or offered contracts or agreement, referring or relating to Omni 808, Vision Capital and/or Lexington, including without limitation all drafts thereof disclosed to, shared with, exchanged with or received from Wachovia, MGA Entertainment, Inc., Fred Mashian, Leon Neman, Isaac Larian and/or any other person or entity other than Omni 808.

6.      All communications referring or relating to Omni 808, Vision Capital and/or Lexington.  For purposes of this Request, Bingham may exclude (a) privileged communications with its client Omni 808 after its attorney-client arose; (b) privileged communications with its client Vision Capital after its attorney-client relationship arose; and (c) communications with Mattel's counsel or the Court in the matter of Carter Bryant v. Mattel, No. CV 04-9059, and consolidated cases.

7.      Documents sufficient to identify any instances in which Bingham has represented MGA Entertainment, Inc., any affiliate of MGA Entertainment, Inc., Fred Mashian, Leon Neman, any entity associated with Leon Neman, Yoel Neman, Monia Neman (aka Monia Mashian), Angela Larian, Farhad Larian, Isaac Larian and/or any entity associated with Isaac Larian any time since June 1, 2001.

**C.      Mattel Refused To Withdraw The Subpoena**

Bingham informed Mattel's counsel that the subpoena is improper and objectionable, and asked that it be withdrawn.  (Villar Decl. ¶ 4, Ex. B.)  Mattel's counsel refused to withdraw the subpoena.  (Villar Decl. ¶ 5, Ex. C.)  Bingham

1    arranged an in-person meeting to further discuss and try to resolve the dispute

2    concerning the subpoena and Bingham's contemplated motion to quash. (Villar

3    Decl. ¶ 6-7, Ex. D.)  Bingham and Mattel were unable to resolve their differences.

4    (Villar Decl. ¶ 7.)  Therefore, Bingham had no alternative but to file a motion to

5    quash.

6         **D.**    **Bingham Filed Its Motion to Quash Mattel's Subpoena And**

7              **Mattel Responded By Filing This Motion to Compel**

8          Mattel's refusal to withdraw its invalid and improper subpoena to Bingham

9    caused Bingham to file a motion to quash.  In response, Mattel prematurely filed

10   this motion to compel, requesting that the Court order Bingham to produce

11   documents responsive to the requests that are the subject of Bingham's motion to

12   quash.  The Discovery Master is set to hear Bingham's motion to quash on April

13   14, 2009.

14        **E.**    **The Discovery Master Denied Mattel's Motion to Compel**

15             **Information Relating to the Non-party Finance Entities**

16         On March 10, 2009, the Discovery Master issued Order No. 3 that

17   summarily denied Mattel's motion to compel production of documents responsive

18   to the subpoenas, virtually identical to the one it served on Bingham, that it served

19   on Vision Capital, LLC and Omninet Capital, LLC.  Mattel's Motion to Compel

20   the Financing Entities to produce documents responsive to the Subpoenas is

21   **DENIED** with respect to OmniNet Capital, LLC and Vision Capital, LLC."  (Or.

22   at 28, emphasis in original).  The Discovery Master also limited Mattel's discovery

23   of information from Omni 808 Investors, LLC to "documents relating to (1) the

24   existence of any debt owed by MGA Entertainment, Inc. to Omni 808 Investors,

25   LLC, including any debt purchased from Wachovia Bank, and (2) any

26   communications between Omni 808 Investors, LLC and the MGA parties

27   regarding any such indebtedness.  The motion is denied regarding any other

28   documents sought by these requests." (Or. at 29).  Importantly, this is the very

1    same information that Bingham offered to produce to Mattel, on behalf of Omni

2    808 Investors, LLC, well before Mattel chose to drag Bingham and its non-party

3    clients into expensive and unnecessary motion practice and burden this Court with

4    this frivolous motion to compel.  Mattel, as Bingham has consistently argued, can

5    discover the limited information permitted by the Discovery Master directly from

6    either MGA Entertainment, Inc. or Omni 808 Investors, LLC.  (Or. at 28-29).

7    Accordingly, Mattel's ability to discover the permitted documents directly from

8    MGA Entertainment, Inc. or Omni 808 Investors, LLC, renders Mattel's motion to

9    compel Bingham to produce the same information moot.

10

11   **III.   MATTEL SUBPOENA SEEKS PRIVILEGED INFORMATION**

12            As explained in Bingham's motion to quash, Mattel's subpoena to Bingham

13   impermissibly requests the production of information protected by the attorney-

14   client privilege and attorney work product doctrine.  In fact, each of the requests in

15   the subpoena is so broad as to encompass attorney-client communications and/or

16   attorney work product.  For example, Mattel requests that Bingham produce:

17            **All documents identifying any member, managing member,**

18            **shareholder, holder of any ownership interest in, officer, director,**

19            **employee and/or agent of, or investor in, Omni 808, Vision**

20            **Capital and/or Lexington.**

21   (Request No. 4) (emphasis added).  This request not only encompasses *all*

22   *privileged attorney-client communications between Bingham and its non-party*

23   *clients,* but it includes every single document in Bingham's possession, custody or

24   control reflecting, referring or relating to Bingham's non-party clients and

25   Bingham's work performed for its non-party clients.

26            The other requests are also so broadly formulated (*see, e.g.,* Request Nos. 1

27   and 3) as to include privileged attorney-client communications and attorney work

28   product.  Indeed, only one of the requests (Request No. 6) excludes certain

1    attorney-client communications.  However, even that request is broadly crafted to

2    include attorney work product and other confidential information.

3            Moreover, Request No. 7 seeks to invade the attorney-client privilege even

4    beyond the confines of Bingham's instant representation of the non-party finance

5    entities in connection with the subpoenas.  In that request, Mattel seeks documents

6    identifying "**any instances in which Bingham has represented MGA**

7    **Entertainment, Inc. any affiliate of MGA Entertainment, Inc., Fred Mashian**

8    [a current Bingham client]**, Leon Neman** [a current Bingham client]**, any entity**

9    **associated with Leon Neman** [including current Bingham clients]**, Yoel Neman,**

10   **Monia Neman (aka Monia Neman), Angela Larian, Farhad Larian, Isaac**

11   **Larian and/or any entity associated with Isaac Larian at any time since June**

12   **1, 2001.**"  (Request No. 7) (emphasis added).  There can be no legitimate dispute

13   that such information is privileged, irrelevant, and not discoverable.

14           Mattel fails to address any of these dispositive points in its motion and,

15   instead, only addresses privilege with respect to fee agreements subsumed in

16   Request No. 1 (which itself is an erroneous argument as discussed below).

17   Because it is undisputed that Mattel's subpoena broadly seeks privileged

18   information, the Court is likely to quash the subpoena pursuant to the Federal

19   Rules of Civil Procedure.  Fed. R. Civ. P. 45(c)(3)(A); *see also Fairview*

20   *Development Corp. v. Aztex Custom Homebuilders, LLC*, No. CV-07-0337-PHX-

21   SMM, 2008 WL 2113492, at *1 (D. Ariz. May 16, 2008) (A court "must quash a

22   subpoena that requires disclosure of privileged or other protected matter, if no

23   exception or waiver applies.").  Accordingly, the Court should deny Mattel's

24   motion to compel.

25

26

27

28

**IV.   THE FEE ARRANGEMENTS BETWEEN BINGHAM AND ITS NON-PARTY CLIENTS ARE NOT DISCOVERABLE**

      **A.   Mattel Misrepresents This Court's Prior Orders Regarding The Discoverability Of Fee Agreements**

In support of its argument to compel Bingham to produce "all documents referring or relating to any fee agreement or fee arrangement" between Bingham and the Non-party Financing Entities, Mattel asserts that this Court and the Discovery Master "ruled repeatedly that fee agreements are not privileged and that it has compelled the production of documents in response to comparable requests. (Mattel Mot. at 8:12-17.)  That assertion is false and misleading.

Mattel purports to rely on four prior Orders of the Court during Phase 1. (Webster Decl. Exs. 8-11.)  However, *all four Orders relate to a single and entirely different issue* -- whether Mattel was entitled to fee agreements between Carter Bryant, *the plaintiff,* and MGA Entertainment, Inc., *also a party and Bryant's employer*.  In permitting Mattel to obtain discovery on that issue, the Court reasoned that whether MGA was paying Bryant's legal fees was relevant to the Bryant's credibility and bias as the *plaintiff* and key percipient witness.  These orders have nothing to do with a non-party law firm's fee arrangements with its non-party entity clients.  Mattel has failed to identify a single instance in which this Court has compelled a non-party law firm to disclose its fee agreements with its non-party clients -- let alone "all documents referring or relating to any fee agreement or fee arrangement" and "any communications referring or relating to any such agreements or arrangements."  (*See* Request No. 1.)  Suffice it to say, Bingham, Omni 808, Vision Capital and Lexington are not percipient witnesses to anything related to Phase 2, will not be testifying at trial, and their purported credibility or bias is not at issue.

Ironically, while making these false and misleading assertions regarding discrete discovery Orders pertaining only to *the parties* in this case, Mattel ignores

1   the *relevant third party discovery Orders in this case attached to Bingham's*

2   *motion to quash*.  This Court has repeatedly quashed similarly abusive subpoenas

3   issued by Mattel to non-parties including, *inter alia*, Bank of America,

4   ConsumerQuest, Deloitte & Touche, Ernst & Young, Wachovia Bank, Wells Fargo

5   and others.  In fact, Mattel has not identified a *single instance* in this case where

6   the Court has actually compelled a non-party to produce similar categories of

7   documents.

8       **B.    Mattel Also Misstates Ninth Circuit Precedent**

9           In its motion to quash, Bingham acknowledged that courts have permitted,

10   under certain limited circumstances, discovery of information reflecting fees paid

11   by a party to an action and testifying witnesses.  However, such limited

12   circumstances do not exist here.  Bingham is a law firm that is neither a party to

13   this action, nor represents a party to this action.  Mattel has failed to cite a single

14   case where a court ordered an attorney for a non-party, non-testifying witness, to

15   disclose confidential fee information wholly irrelevant to the claims before the

16   court.

17           Mattel argues that Bingham's fee arrangement with its non-party clients is

18   somehow relevant to bias and credibility.  However, the two cases to which Mattel

19   cites have absolutely nothing to do with the facts in this case.  Mattel cites to *Cable*

20   *& Computer Technology, Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650

21   (C.D. Cal. 1997) and *U.S. v. Abel*, 469 U.S. 45, 50-51 (1984).  *Cable & Computer*

22   *Technology* involved a motion to compel responses to contention interrogatories

23   served on one corporation by another, not discovery of irrelevant, privileged

24   information served on a non-party's attorney.  *U.S. v. Abel*, involved the

25   admissibility of rebuttal testimony of one convicted bank robber against another,

26   for purposes of demonstrating bias.  Mattel has failed to cite any authority where

27   the fee arrangement between a non-party, non-testifying witness, and its attorney is

28   found to be relevant to bias or credibility.

A/72869192.2/3009108-0000337036                                    -12-

1    Moreover, in the limited circumstances where a court finds discovery of an

2    attorney-client fee arrangement to be permissible, a court will nevertheless quash

3    an overly broad subpoena. *See In Re Grand Jury Subpoena (Horn)* 976 F.2d 1314,

4    1317-18 (9th Cir. 1992) (amended November 25, 1992, reported at 1992 U.S. App.

5    LEXIS 30917). In *Horn*, a federal grand jury involved in an ongoing federal

6    investigation of sixteen criminal suspects subpoenaed all of a criminal defense

7    attorney's records that related in any way to several of the individuals under

8    investigation. The Ninth Circuit affirmed the district court's order quashing the

9    subpoena on the grounds that the subpoena, "is specifically not limited to

10   transactions relating to legal fees . . . [o]n its face [it] clearly encompasses

11   information protected by the attorney-client privilege." *Id*. Mattel's subpoena is

12   substantially less meritorious than the subpoenas quashed in *Horn* because

13   Bingham does not represent any party in this matter and the information requested

14   does not pertain to any issues in this matter. Further, like the subpoena in *Horn*,

15   Mattel's subpoena to Bingham was not limited solely to discovering the source and

16   amount of legal fees paid by Bingham's non-party, non-witness clients - it

17   requested "an unlimited amount of information." *Id*. Thus, as with the subpoena

18   in *Horn*, Mattel's subpoena is invalid, and accordingly, the Court should deny

19   Mattel's motion to compel Bingham's compliance therewith.

20

21   **V.    MATTEL HAS FAILED TO ARTICULATE HOW ITS**

22   **REQUESTS SEEK INFORMATION THAT IS RELEVANT TO**

23   **PHASE 2**

24   "Any information sought by means of a subpoena must be relevant to the

25   claims and defenses in the underlying case. More precisely, the information

26   sought must be 'reasonably calculated to lead to admissible evidence.'" *Gonzales*

27   *v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006); *see also Moon v. SCP Pool*

28   *Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).

A/72869192.2/3009108-0000337036                    -13-

1    In its motion to compel, Mattel makes blanket unsupported assertions that

2    Bingham's fee agreements with its non-party clients (Request No. 1) are relevant

3    to "credibility and bias" and that the other unspecified categories of documents

4    (presumably Requests Nos. 2-7) are relevant to "the merits" of Mattel's Phase 2

5    claims and defenses. Mattel's Phase 2 claims focus on alleged misappropriation of

6    trade secrets by former Mattel employees for MGA's benefit, and MGA's claims

7    are based on allegations that Mattel serially copy-catted its products and

8    blackmailed suppliers and vendors and market organizations to stop working with

9    MGA. Both sets of claims are premised on alleged conduct that occurred before

10   the respective complaints were filed in 2004 and 2005. Indeed, the Discovery

11   Master, in his March 10 Order, rejected this same argument. (Or. at 22). "Simply

12   stating that credibility evidence is discoverable does nothing toward meeting

13   Mattel's burden to demonstrate that the particular discovery at issue here is

14   reasonably calculated to lead to the discovery of such evidence." (Or. at 23).

15   **A.    Bingham's Fee Agreements With Its Non-Party Entity Clients Are**

16   **Not Relevant To Phase 2**

17   In its motion, Mattel vaguely asserts that Bingham's fee agreements with its

18   non-party entity clients are relevant to "bias and credibility." In making this

19   assertion, Mattel again misleadingly relies on the inapplicable prior Court ruling

20   that the fee agreements between Carter Bryant, *the plaintiff*, and MGA

21   Entertainment, Inc., *also a party and Bryant's employer* are relevant to Bryant's

22   credibility and bias as the *plaintiff* and key percipient witness. Again, that ruling

23   has nothing whatsoever to do with *a non-party law firm's fee arrangements with*

24   *its non-party entity clients*. Mattel has failed to identify a single instance in which

25   this Court has compelled a non-party law firm to disclose its fee agreements with

26   its non-party clients -- let alone "all documents referring or relating to any fee

27   agreement or fee arrangement" and "any communications referring or relating to

28   any such agreements or arrangements. (*See* Request No. 1.) Mattel also has failed

A/72869192.2/3009108-0000337036                    -14-

1   to explain why Bingham's or its clients' credibility is possibly at issue given that

2   none are percipient witnesses to anything related to Phase 2, and thus, none will

3   testify at trial.

4        The Discovery Master rejected this same argument from Mattel in his March

5   10 Order:

> "Mattel has not taken any steps to connect its discovery
> to such evidence.  Here, Mattel has only stated that
> credibility evidence can be admissible and that
> credibility is at issue in this case - without referring at all
> to specific categories of documents in the Subpoenas or
> linking those categories of documents to prior
> anticipated testimony of MGA's witnesses. Simply
> stating that credibility evidence is discoverable does
> nothing toward meeting Mattel's burden to demonstrate
> that the particular discovery at issue here is reasonably
> calculated to lead to the discovery of such evidence."

13   (Or. at 22-23).

15        Mattel was also unsuccessful in asserting this same baseless "credibility"

16   theory to defend an abusively drawn subpoena in *Mattel, Inc. v. Walking Mountain*

17   *Productions*, 353 F.3d at 813 (rejecting Mattel's assertion that it was merely

18   seeking information to impeach the defendant's expert witness and sanctioning

19   Mattel).  Accordingly, none of the information sought from Bingham is relevant to

20   the Phase 2 proceedings and Mattel's motion to compel should be denied.

21   **B.    Mattel Fails To Show How Any Of The Other Requests Are**

22   **Relevant To The Merits Of Phase 2**

23        Faced with the fact that Judge Larson limited the scope of discovery to only

24   Phase 2 issues, Mattel, in its motion, unsuccessfully tries to force a square peg (the

25   Bingham subpoena) into a round hole (Phase 2).  Mattel amorphously asserts that

26   "Mattel's requests are directly relevant to its RICO claims" and "are calculated to

27   lead to evidence of acts of wire and mail fraud." (Mattel Mot. at 10:4-10).  Mattel,

28   however, fails to tie any particular request to Bingham to any particular claim

A/72869192.2/3009108-0000337036        -15-

1    against MGA in its complaint. Bingham's fee agreement with Omni 808, Vision

2    Capital and Lexington clearly are not evidence of a "predicate act" upon which

3    Mattel bases its RICO claims against MGA. Documents identifying "the

4    formation, governance, ownership, capitalization and/or funding" of Bingham's

5    non-party clients" are in no way evidence of instances of "mail and wire fraud"

6    upon which Mattel bases its RICO claims. Moreover, the notion that Mattel's

7    Phase 2 claims against MGA (first alleged in 2004) are premised on any non-party

8    transactions in 2008, let alone Bingham's representation of those third parties,

9    defies logic.

10        Mattel also asserts that "for purposes of establishing disgorgement, monies

11    transferred from MGA and Isaac Larian must be accounted for . . . ." However,

12    none of the requests seek monies transferred from MGA or Isaac Larian to the

13    Non-party Financing Entities. In fact, as the Discovery Master noted at the March

14    4 hearing, Omni 808 purchased a *loan to MGA* from Wachovia. No monies are

15    alleged to have been transferred from MGA to these entities.

16        Mattel also asserts that it seeks documents relevant to MGA's "financial

17    condition." Even assuming MGA's financial condition were relevant to Phase 2,

18    none of the requests seek such documents. Bingham's fee arrangements with its

19    non-party entity clients are in no way probative of MGA's financial condition.

20    Documents relating "the formation, governance, ownership, capitalization and/or

21    funding" of Bingham's non-party clients are clearly not relevant to MGA's

22    financial condition. "[A]ny instances in which Bingham has represented MGA

23    Entertainment, Inc. any affiliate of MGA Entertainment, Inc., Fred Mashian [a

24    current Bingham client], Leon Neman [a current Bingham client], any entity

25    associated with Leon Neman [including current Bingham clients], Yoel Neman,

26    Monia Neman (aka Monia Neman), Angela Larian, Farhad Larian, Isaac Larian

27    and/or any entity associated with Isaac Larian at any time since June 1, 2001" is

28    undoubtedly irrelevant to MGA's financial condition.

A/72869192.2/3009108-0000337036                    -16-

1    Indeed, the Discovery Master rejected Mattel's contention that virtually

2  identical requests are "relevant to the merits" of Phase 2.  In the March 10 Order,

3  the Discovery Master held "Mattel has failed to sufficiently articulate the necessary

4  connection between most of the Financing Discovery and **any Phase 2 issue**."

5  (Or. at 25).  The Discovery Master, therefore, denied Mattel's motion to compel

6  the Non-party Finance Entities' compliance with the subpoenas (except for a

7  limited category of documents from Omni 808 Investors, LLC) on the ground that

8  the documents sought were not relevant to the issues in this case.  Accordingly the

9  Court should deny Mattel's motion to compel these same documents for the same

10  reasons.

11

12  **VI.    MATTEL SUBPOENA IS OVERLY BROAD**

13    In addition to the significant privilege and relevance issues, Mattel's motion

14  to compel should be denied because its subpoena is grossly overbroad.  *See*

15  *Gonzales,* 234 F.R.D. at 680 ("Overbroad subpoenas seeking irrelevant

16  information may be quashed or modified.").  There is no question that the

17  subpoena encompasses both privileged communications and irrelevant documents

18  and is therefore impermissibly overbroad.

19    In *Mattel, Inc. v. Walking Mountain Productions*, Mattel and its counsel

20  Quinn Emanuel issued a subpoena to one of the defendant's expert's employers in

21  a purported attempt to obtain information to impeach the expert's testimony.  *Id*. at

22  813.  Although the court in that case acknowledged that some of the requested

23  information admittedly related to the litigation and the expert report and testimony,

24  the court also noted that the subpoena requested information that had no "bearing

25  on the litigation or on [the expert witness]."  *Id*.  Thus, even though the district

26  court acknowledged that some of the requests sought relevant information, the

27  subpoena, as a whole, was overbroad, abusive and served for an improper purpose,

28  and thus the district court quashed it entirely.  The Ninth Circuit affirmed the

1    district court's order quashing the subpoena and issuing sanctions against Mattel.

2    *Id.* at 814.

3           Even if this Court determines that there may be documents responsive to the

4    subpoena that might be remotely relevant to Phase 2, this Court should still deny

5    Mattel's motion to compel because, as in *Mattel, Inc. v. Walking Mountain*

6    *Productions*, the subpoena was "abusively drawn" and overreaching. *Id.* at 813

7    (acknowledging that some of the categories of documents were relevant, but

8    nonetheless affirming the district court's order quashing the subpoena in its

9    entirety on the grounds that it was overly burdensome and served for an improper

10   purpose).  Indeed, unlike *Mattel, Inc. v. Walking Mountain Productions*, where the

11   subpoena was served on an expert witness' employer, the instant subpoena is

12   served on a law firm that does not represent any party to the action.  Moreover,

13   unlike the subpoena in *Mattel, Inc. v. Walking Mountain Productions* there are

14   significant privilege issues relating to subpoenaing a law firm for communications

15   with its clients.  Mattel has not even attempted to make a showing that such

16   information is in any way relevant to Phase 2.

17          As the Discovery Master held, "Mattel has failed to sufficiently articulate

18   the necessary connection between most of the Financing Discovery and any Phase

19   2 issue." (Or. at 25).  Moreover, this Court has quashed numerous Subpoenas

20   issued by Mattel for these specific reasons.  Therefore, because Mattel has not even

21   attempted to argue the relevance of all categories covered by the Bingham

22   subpoena, this Court deny Mattel's motion to compel.

23

24   **VII.   MATTEL'S SUBPOENA CREATES AN UNDUE BURDEN**

25          As Bingham established in its motion to quash, courts analyze six factors to

26   determine whether a subpoena imposes an undue burden: (1) relevance of the

27   information requested; (2) the requesting party's need for production; (3) breadth

28   of the requests; (4) time period covered by the subpoena; (5) the specificity of the

A/72869192.2/3009108-0000337036                    -18-

1   requested information; and (6) the burden imposed thereby. (Mot. at 7); *see also*

2   *Televisa, S.A. v. Univision Communications, Inc.*, No. CV 05-3444 PSG (MANx),

3   2008 WL 4951213, at *2 (C.D. Cal. Nov. 17, 2008) (citing Moore's Federal

4   Practice §45.32 (3d ed. 2008)). Analyzing the undue burden factors, Bingham

5   established that the subpoena (1) requires disclosure of attorney-client privileged

6   information; (2) seek information that is irrelevant to the Phase 2 proceedings

7   between Mattel and MGA; (3) is grossly overbroad; and (4) the burden and

8   intrusiveness of compliance far outweighs any conceivable relevance. (Bingham

9   Mot. at 8-14).

10          Moreover, Rule 26 of the Federal Rules of Civil Procedure requires the

11  Court to "limit the frequency or extent of discovery otherwise allowed" where "the

12  burden or expense of the proposed discovery outweighs its likely benefit, taking

13  into account the needs of the case, the amount in controversy, the parties'

14  resources, the importance of the issues at stake in the litigation, and the importance

15  of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(iii).

16  An "evaluation of undue burden requires the court to weigh the burden to the

17  subpoenaed party against the value of the information to the serving party." *Moon*

18  *v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). The "status of the

19  person as a nonparty is a factor that weighs against disclosure." *Beinin v. Center*

20  *for Study of Popular Culture*, No. C 06-2298 JW (RS), 2007 WL 832962, *5 (N.D.

21  Cal. 2007).

22          Here, there is no benefit to the discovery sought. Mattel has not identified

23  any relevance between the categories of documents sought and the claims or

24  defenses in the Phase 2 proceedings. he Discovery Master largely agreed and

25  denied Mattel's motion to compel production of documents from the Non-party

26  Financing Entities. (See Or. at 25). Furthermore, even if Mattel could draw some

27  tenuous connection between some of the documents sought and the Phase 2

28  proceedings, this Court must weigh the benefit of those documents against

1   imposing the burden on a non-party to produce them.  The burden in this case is

2   significant considering the fact that a substantial portion of the documents are

3   privileged and relate to Bingham's representation of non-parties.  Moreover,

4   Mattel has already requested from other parties the same document that it

5   requested from Bingham, making its requests to Bingham necessarily duplicative.

6   Because the subpoena subjects Bingham to an undue burden, and because any

7   purported relevance of any of the documents is substantially outweighed by the

8   undue burden, the Court must quash the subpoena.   (emphasis added); *see also*

9   *Fairview Development Corp. v. Aztec Custom Homebuilders, LLC*, No. CV-07-

10   0337-PHX-SMM, 2008 WL 2113492, at *1 (D. Ariz. May 16, 2008) ("'A court

11   **must** quash or modify a subpoena that subjects a person to undue burden.'")

12   (emphasis added); *Exxon Shipping Co. v. U.S. Dept. of Interior, et al.*, 34 F.3d 774,

13   779 (9th Cir.1994) ("Rule 26(c) and Rule 45(c)(3) give ample discretion to district

14   courts to quash or modify subpoenas causing 'undue burden.'").

15

16   **VIII.  THE COURT SHOULD SANCTION MATTEL FOR FILING**

17          **THIS UNJUSTIFIED MOTION TO COMPEL**

18        Should the court deny Mattel's motion to compel, the court "must" order

19   Mattel and/or Quinn Emmanuel to pay Bingham's expenses and attorneys fees for

20   successfully opposing Mattel's premature and invalid motion pursuant to Rule 37

21   of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 37(a)(5)(B).  "An

22   award of expenses to a party successfully opposing a motion to compel discovery

23   is thus **mandatory** in the absence of 'substantial justification' for bringing the

24   motion."  *Cram v. Electronic Data Systems Corp.*, 2008 U.S. Dist. Case No.

25   07cv1842-LAB (NLS) LEXIS 5703, *5 (Jan. 25, 2008) (emphasis added) (ordering

26   the party who brought an unsuccessful motion to compel to pay the opposing

27   party's attorneys fees and costs) .

28        Mattel has failed to show that this motion to compel is substantially

A/72869192.2/3009108-0000337036       -20-

1  justified.  Mattel filed this motion to compel while Bingham and other non-parties'

2  motions to quash were pending.  Mattel refused to withdraw this motion even after

3  the Discovery Master ruled that it cannot discover information related to Omninet

4  Capital, LLC or Vision Capital, LLC and may only discover limited information

5  from Omni 808 Investors, LLC - thus obviating the necessity of discovering any

6  information from Bingham.  In light of its ability to discover the requested

7  information directly from parties to this action or directly from Bingham's clients,

8  Mattel is entirely without justification for moving to compel Bingham to produce

9  information that is privileged, not relevant to the issues at bar and to which the

10  Discovery Master ruled Mattel is not entitled to discover.  "Absent substantial

11  justification or some special circumstance, an Order for the recovery of costs

12  incurred to oppose an unnecessary discovery motion is appropriate, and **is in fact**

13  **mandated... .**"  *Id.* at *8; (citing *Reygo Pacific Corp. v. Johnston Pump Co.*, 680

14  F.2d 647, 649 (9th Cir. 1982)).

15      Accordingly, should the court deny Mattel's motion to compel, the court

16  must order Mattel and its counsel to pay Bingham's expenses, including attorney's

17  fees, in successfully opposing this improper and unjustified motion to compel.

18

19  **IX.    CONCLUSION**

20      For the foregoing reasons, Bingham respectfully requests that the Court deny

21  Mattel's motion to compel, and sanction Mattel and its counsel.

22

23  DATED:  March 12, 2009                 Bingham McCutchen LLP

24

25                                          By:

26                                          Todd E. Gordinier

27

28

A/72869192.2/3009108-0000337036                           -21-