1   PATRICIA L. GLASER (Bar No. 055668)
    pglaser@glaserweil.com
2   GLASER WEIL FINK JACOBS & SHAPIRO
    10250 Constellation Blvd., 19th Floor
3   Los Angeles, California  90067
    Telephone: (310) 553-3000
4   Facsimile: (310) 557-9815

5   RUSSELL J. FRACKMAN (Bar No. 49087)
    rjf@msk.com
6   PATRICIA H. BENSON (Bar No. 60565)
    phb@msk.com
7   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
8   Los Angeles, California 90064-1683
    Telephone: (310) 312-2000
9   Facsimile: (310) 312-3100

10  Attorneys for Defendants
    MGA Entertainment, Inc., MGA Entertainment
11  HK, Ltd., MGAE De Mexico, S.R.L. De C.V., and
    Isaac Larian

12              UNITED STATES DISTRICT COURT

13      CENTRAL DISTRICT OF CALIFORNIA  -- EASTERN DIVISION

14  CARTER BRYANT, an individual,          CASE NO.  CV 04-9049 SGL (RNBx)

15            Plaintiff,                    Consolidated with
                                           Case No.  CV 04-09059
16        v.                               Case No.  CV 05-02727
                                           **DISCOVERY MATTER**
17  MATTEL, INC., a Delaware               **[TO BE HEARD BY DISCOVERY**
    corporation,                           **MASTER ROBERT O'BRIEN**
18                                         **PURSUANT TO ORDER OF**
                                           **JANUARY 6, 2009]**
19            Defendant.                   **MGA'S OPPOSITION TO MATTEL'S**
                                           **MOTION TO ENFORCE AND**
20  AND CONSOLIDATED CASES                 **COMPEL RE TRADE DRESS**
                                           **INTERROGATORIES**
21
                                           **[DECLARATION OF JEAN PIERRE**
22                                         **NOGUES AND EVIDENTIARY**
                                           **OBJECTIONS FILED**
23                                         **CONCURRENTLY]**
                                           Date:    April 21, 2009
24                                         Time:    10:00 a.m.
                                           Place:   Arent Fox LLP
25                                         **Phase 2**
                                           Discovery Cut-off:      Dec. 11, 2009
26                                         Pre-Trial Conference:   March 1, 2010
                                           Trial Date:             March 23, 2010
27

Mitchell
Silberberg &   28
Knupp LLP

2159926.1

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ................................................................. 2

II.    STATEMENT OF RELEVANT FACTS ...................................... 5

III.   MATTEL HAS MISREPRESENTED THE PRIOR ORDER
       REGARDING INTERROGATORIES 43 AND 44, HAS
       MISREPRESENTED THAT MGA HAS "REFUSED" TO
       ANSWER THOSE INTERROGATORIES, HAS FILED AN
       UNNECESSARY MOTION, AND SHOULD BE
       SANCTIONED. ................................................................. 9

       A.    MGA Is Not In Violation Of Judge Infante's Order ........... 9

       B.    MGA Has Not "Refused" To Answer Interrogatory Nos.
             43-44 ...................................................................... 11

       C.    Sanctions And An Award Of Attorneys Fees Should Be
             Imposed On Mattel, Not MGA. ....................................... 13

IV.    MATTEL'S MOTION TO COMPEL RESPONSES TO
       INTERROGATORY NOS. 51-55 AND 64 IS
       PROCEDURALLY IMPROPER AND SUBSTANTIVELY
       WITHOUT MERIT, AND SHOULD BE DENIED. ....................... 16

       A.    Mattel's Motion To Overrule MGA's Objection Must Be
             Denied Because Mattel Failed To Comply With The
             Requirement To Meet and Confer In Good Faith ............... 16

       B.    Each Of The Newly-Challenged Objections Is Valid And
             Proper ..................................................................... 18

             1.    The Definitions Of "SOLD," "SELL," SALE" and
                   "MATTEL" ......................................................... 19

             2.    The Expert Witness Analysis Objection In
                   Interrogatory Nos. 51 and 53 Is Proper ................. 20

             3.    Information Better Known to Mattel ....................... 21

             4.    Interrogatory Nos. 51-53 Are Compound ............... 22

             5.    Some of the Interrogatories Are Duplicative of
                   Others Previously Asked and Answered ................. 23

             6.    MGA's Undue Burden Objections Are Well-Taken .... 24

             7.    MGA's Privilege Objections Should Not Be
                   Overruled .......................................................... 25

Conclusion ................................................................................ 26

Mitchell
Silberberg &
Knupp LLP

2159926.1

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*1st Technology LLC v. Bodog Entertainment Group S.A.*,
 2009 WL 426605 (W.D. Wash. Feb. 19, 2009)............................................ 14

*AMF Inc. v. Sleekcraft Boats*,
 599 F.2d 341 (9th Cir. 1979)...................................................... 5, 25

*Coastal States Gas Corp. v. Department of Energy*,
 84 F.R.D. 278 (D. Del., 1979)............................................................ 13

*Collaboration Properties, Inc. v. Polycom, Inc.*,
 224 F.R.D. 473 (N.D. Cal. 2004)....................................................... 23

*Durney v. Wave Crest Laboratories LLC*,
 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005) .................................... 22

*In re Netflix Antitrust Litigation*,
 506 F. Supp. 2d 308 (N.D. Cal. 2007) ............................................... 13

*Jada Toys v. Mattel, Inc.*,
 518 F.3d 628 (9th Cir. 2008)............................................................. 22

*Little v. City of Seattle*,
 863 F.2d 681 (9th Cir. 1989)............................................................. 13

*Naviant Marketing Solutions v. Larry Tucker, Inc.*,
 339 F.3d 180 (3d Cir. 2003) ............................................................. 18

*Orchid Biosciences, Inc. v. St. Louis University*,
 198 F.R.D. 670 (S.D. Cal. 2001)....................................................... 13

*Robinson v. Potter*,
 453 F.3d 990 (8th Cir. 2006)............................................................. 18

## STATUTES

28 U.S.C. § 1927.................................................................................. 15

Mitchell
Silberberg &
Knupp LLP

2159926.1

ii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Federal Rules of Civil Procedure
    26(c)...........................................................................................................13, 14
    37(a)...........................................................................................................16, 17
    37(B).........................................................................................................15
    53(c)(2).........................................................................................................15

## OTHER AUTHORITIES

Kendall et al., Matthew Bender Federal Practice Guide: Federal Civil
    Procedure in California § 22.40(4)(a) .............................................................. 13

Schwarzer, Tashima & Wagstaff, Federal Civil Procedure Before
    Trial (Rutter Group 2008 ¶ 11:2386................................................................. 14

Mitchell
Silberberg &
Knupp LLP

2159926.1

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

## I.      INTRODUCTION

Mattel attempts to bury beneath a vitriolic brief and almost 700 pages of "exhibits" the real issue here:  Does it make any sense to require MGA to provide massive amounts of information about trade dress claims that, if Mattel is correct, will very shortly be dismissed on summary judgment *as a matter of law?*  Clearly, the answer is "no."

Despite Mattel's egregious distortions[1] and outright misrepresentations, MGA is *not* in violation of the prior Discovery Master's Order, nor has it "refused" to comply with that Order.  The prior Discovery Master never specified a date or time period after the Phase 2 discovery stay was lifted upon which MGA was supposed to provide further responses to Interrogatory Nos. 43 and 44.  MGA has *expressly* has represented that it *will* answer those interrogatories (as well as Interrogatory Nos. 51-55 and 64), and MGA has even proposed dates on which it will do so.

MGA's proposed response dates are the subject of a currently pending Motion for Protective Order that MGA filed one week *before* Mattel filed its Motion to Compel.  MGA's Motion for Protective Order asks the Discovery Master, among other things, to stay MGA's obligation to provide responses to Interrogatory Nos. 43, 44, 51-55 and 64 (the "Trade Dress Interrogatories") until the earlier of (1) 21 days after the Court decides Mattel's summary judgment motion, to the extent any trade dress claims remain, or (2) if the Discovery Master

---

[1] For example, Mattel begins its motion by suggesting that MGA has delayed providing answers to the subject interrogatories for "[a]lmost four years." *See* Mattel Memo. of Points & Authorities at 1:5-7 ("Almost four years later, MGA still has yet to respond to Mattel's interrogatories...")  That is simply not true. There are two sets of interrogatories at issue – one served approximately *four months before the then-applicable  discovery cut-off date* (March 3, 2008) and the other served *less than three months before that cut-off date*. *See* Watson Decl. in Support of Mattel's Motion, Ex. 1 at 17 (Mattel's Amended Fourth Set of Interrogatories was served October 23, 2007), Ex. 11 at 225-26 (Mattel's Supplemental Interrogatories were served January 9, 2008).

1 denies MGA's request for such a Protective Order, 21 days after denial of the

2 Motion for Protective Order.

3    Given the pendency of MGA's Motion for Protective Order, it was

4 completely unnecessary for Mattel to move to compel responses to the Trade Dress

5 Interrogatories. *Whether* MGA will provide responses is not an issue. The

6 question of *when* MGA will do so will be decided when the present Discovery

7 Master rules on MGA's Motion for Protective Order. Accordingly, Mattel's

8 Motion is without any justification whatsoever, let alone the "substantial

9 justification" that the Federal Rules of Civil Procedure demand. Mattel should be

10 sanctioned not only for filing an utterly unnecessary motion, but also for blatantly

11 misrepresenting that MGA has "violated" a prior Order and "refused" to answer

12 Interrogatories 43 and 44.[2]

13    Mattel also should be sanctioned for filing this Motion insofar as it asks the

14 Discovery Master to overrule certain objections MGA made to Interrogatory Nos.

15 51-55 and 64, because Mattel *never* met and conferred with MGA about the

16 objections it now challenges Mattel makes yet another flagrant misrepresentation

17 when it contends that "MGA refused to discuss its specific objections to these

18 interrogatories or whether it would be standing on its remaining objections when it

19 did provide responses." Not surprisingly, Mattel does not (because it cannot)

20 proffer an iota of admissible evidence to support this assertion.[3] Mattel did not

21

22 [2] Mattel also attempted an end-run around the Discovery Master and *both* MGA's
Motion for Protective Order *and* its own Motion to Compel. Two (court) days

23 after filing its Motion to Compel, Mattel filed an improper *ex parte* application
asking Judge Larson to hold MGA in contempt for supposedly violating the prior

24 Discovery Master's Order regarding Interrogatory Nos. 43 and 44 – thus seeking to
preempt the Discovery Master's ruling on the very same issue Mattel had already

25 raised in the instant Motion to Compel. The Court declined to hear the matter,
instead referring it to the Discovery Master, to whom, the Court ruled, the matter

26 should have been addressed. *See* Declaration of Jean Pierre Nogues in Opposition
to Motion to Compel ("Nogues Decl."), Exs. A and K.

27 [3] *See* MGA's Objections to Declaration of Declaration of Scott L. Watson In Supp.
of Mattel's Motion ("Watson Decl."). Indeed, the exhibits attached to Mr.

28 (...continued)

Mitchell
Silberberg &
Knupp LLP

2159926.1

3

1   raise the subject of the objections it now challenges either in its initial meet and

2   confer letter[4] or thereafter.  Nor did Mattel's counsel even attempt to discuss those,

3   or any other, objections with MGA's counsel when the parties had their telephonic

4   meet and confer discussions about the Trade Dress Interrogatories.  Watson Decl.,

5   Ex. 15.  MGA's counsel did not "refuse" to discuss MGA's objections to

6   Interrogatories 51-55 and 64 because the topic *was never broached* by Mattel's

7   counsel after MGA responded to Mattel's request for a response date by proposing

8   a stay of trade dress discovery pending resolution of Mattel's summary judgment

9   motion.  *See* Nogues Decl., ¶ 7; Watson Decl., Exs. 17-19.

10       Failure to sanction Mattel and its counsel under the circumstances present

11  here will simply encourage them to continue bombarding MGA (and the Discovery

12  Master) with unnecessary discovery motions[5], to continue shading the truth, and to

13  continue flouting their obligation to meet and confer in good faith.  MGA

14  respectfully requests the Discovery Master to make it clear to Mattel and its

15  counsel that this type of behavior is simply not acceptable.

16

17

18

---

19  (...continued)
    Watson's Declaration summarizing the February 6 meet and confer session  never

20  mention any alleged refusal to discuss objections to the Trade Dress
    Interrogatories.

21  [4] *Compare* Ex. 12 to Watson Decl. *with* Mattel Memorandum of Points and
    Authorities at 12:1-26:4.

22  [5] Indeed, one (court) day after filing *this*  unnecessary Motion to Compel, Mattel
    advised MGA that was going to (and did) file a *third* motion on the *identical*

23  interrogatories -- an *ex parte* application to the *District Court* seeking to hold
    MGA in contempt for "violating" the prior Master's order to answer Interrogatory

24  Nos. 43 and 44 –*precisely* the argument it has made in this Motion. Nogues Decl.,
    Ex. A. The Court declined to rule on the matter, and referred it to the Discovery

25  Master, holding that it should have been filed with the Discovery Master to begin
    with.  Nogues Decl. Ex. K.

26

27

Mitchell
Silberberg &
Knupp LLP

2159926.1

4

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

28

## II.    STATEMENT OF RELEVANT FACTS[6]

**The Interrogatories.**  At issue in this Application are eight Interrogatories, two (Nos. 43 and 44) propounded by Mattel on October 23, 2007, and six (Nos. 51 through 55 and 64) propounded on January 9, 2008.  Watson Decl., Exs. 1 and 12. All of these interrogatories (the "Trade Dress Interrogatories") sought information concerning MGA's claims that Mattel had wrongfully copied and diluted the trade dress of MGA products.  Specifically, they sought: dates of conception of the designs and products as to which MGA claims trade dress protection (Interrogatory No. 43); dates the items MGA claims are protected were first "fixed" in tangible form (Interrogatory No. 44); listings of Mattel products that infringed or diluted MGA's products, designs, concepts and packaging (Interrogatory No. 51); units of infringed products and items sold, and revenues, costs and profits relating to those sales (Interrogatory No. 52); facts relating to application of *Sleekcraft* factors[7] (Interrogatory No. 53); facts supporting allegations of willful copying and infringement by Mattel (Interrogatory No. 54); and facts supporting MGA's dilution allegations (Interrogatory No. 55)  *Id.*  MGA initially objected to Interrogatories 43 and 44 on November 15, 2007, and then supplemented its responses on November 30, 2007 and January 8, 2008.  *Id.*, Exs. 3 and 7.[8]  MGA

---

[6] In order to avoid burdening the Discovery Master with duplicative paperwork, this Opposition will, whenever possible, cite to exhibits to the Watson Declaration filed in support of Mattel's Motion to Compel.

[7] In *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), the Court listed eight factors that should be considered in assessing the likelihood of confusion between two marks:  strength of mark, proximity of goods, similarity of marks, evidence of actual confusion, marketing channels used, degree of care exercised by purchaser, defendant's intent and likelihood of expansion of product line.  *Id.* at 348-49.

[8] It bears noting that MGA already has provided millions of pages of documents and voluminous pages of interrogatory responses, not to mention hours of deposition testimony, concerning its trade dress claims.  *See, e.g.*, February Order Watson Decl., Ex. 8, at 174:1-8 (denying Mattel's Motion to Compel further responses to Interrogatory Nos. 48-50: "[T]he MGA parties' responses identify Mattel's 'My Scene' fashion dolls and pet dolls as the Mattel products that infringe their trade dress.  The MGA parties also set forth the principal facts supporting
(...continued)

Mitchell
Silberberg &
Knupp LLP

2159926.1

1    served objections to Interrogatories 51-55 and 64 on February 8, 2008, after the

2    Court stayed all Phase 2 discovery.  Watson Decl., Ex. 12.

3        **The February 15, 2008, Order.**  In December 2007, Mattel filed a motion

4    to compel further responses to twenty-three interrogatories, including

5    Interrogatories 43 and 44.  Watson Decl., Ex. 4.  On February 15, 2008, the former

6    Discovery Master (Hon. Edward Infante), issued a lengthy order in which he

7    denied Mattel's motion as to seventeen interrogatories, and granted it as to six

8    (after narrowing one of them) (the "February Order").  *Id.*, Ex. 8.  Among the six

9    interrogatories as to which Judge Infante ordered supplemental responses were

10   Interrogatories 43 and 44.  The February Order directed that further supplemental

11   responses be provided by February 26, 2008.  *Id.*

12       **The Phase 2 Discovery Stay And The Clarification Order.**  On

13   February 4, 2008, the Court stayed all Phase 2 discovery.  Believing that the

14   February Order, insofar as it required responses by February 26, 2008 to certain

15   Interrogatories, including Nos. 43 and 44, was in conflict with the February 4,

16   2008 Stay of Phase 2 discovery, MGA moved for clarification to Judge Infante.

17   Judge Infante granted the Motion for Clarification and stayed MGA's obligation to

18   respond to those Interrogatories:

19         "Having reviewed the interrogatories at issue in this
     Motion for a second time, it is apparent that the
20         interrogatories are relevant primarily, if not exclusively,
     to Phase 2.... Accordingly, the MGA Parties' motion is
21         granted.  The MGA Parties' obligation to supplement
     their responses to Interrogatory Nos. 41, 43, and 44... are
22         hereby stayed until further order of the district court
     lifting the stay on Phase 2 discovery."
23

24

25

26   ――――――――――――――――――――――

27   (...continued)
     their contention that their trade dress is protectable under the applicable trade dress
     legal principles...")

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

6

1    April 22, 2008, Order re: Clarification (the "Clarification Order") (Watson Decl.,

2    Ex. 10, pp. 206-07).

3         **The Stay is Lifted But No New Response Date Is Ordered.**  On January 6,

4    2009, the Court lifted the discovery stay and appointed Robert O'Brien as

5    Discovery Master.  Watson Decl., Ex. 13.  Neither the Court nor the new

6    Discovery Master set a new deadline for compliance with the February Order, nor

7    did Mattel request either the Court or the Discovery Master to do so.  Thus, there is

8    no extant order requiring MGA to provide supplemental responses to the

9    Interrogatories by any specific date.

10        **Mattel Advises MGA That It Intends Immediately To Move For**

11   **Summary Judgment On MGA's Trade Dress Claims.**  The first meet and confer

12   letter Mattel sent after the Phase 2 stay was lifted did ***not*** pertain to discovery, but

13   to Mattel's intent to file a motion for summary judgment on MGA's trade dress

14   claims.  On January 8, 2009 (less than 48 hours after the stay had been lifted),

15   Mattel sent a letter to counsel for MGA announcing that it planned to move for

16   summary judgment on MGA's trade dress claims on the theory that the Phase 1

17   verdicts precluded MGA from claiming trade dress rights in Bratz products as a

18   matter of law.  Watson Decl., Ex. 16.  On February 18, 2009, Mattel's counsel

19   stated that the summary judgment motion would be filed within a week after the

20   Court ruled on pending post-trial motions.[9]

21        **Mattel Demands that MGA Provide Supplemental Responses to the**

22   **Trade Dress Interrogatories; The Parties Meet and Confer.**  In late January,

23   2009, Mattel sent letters to MGA's counsel inquiring when MGA would provide

24

25   9  The parties disagree about whether Mattel's counsel stated that its summary
     judgment motion would be filed within a week or within weeks of the Court's
26   decision on the pending Phase 1 matters.  *Compare* Watson Decl., Ex. 23 *with*
     Nogues Decl., Ex. D.  Either way, it is clear that Mattel plans to file the motion
27   quite promptly, and that with the current December 11, 2009, discovery cut-off,
     there will be ample time to deal with trade dress discovery after the Court rules on
28   that motion.

Mitchell
Silberberg &
Knupp LLP

2159926.1

7

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

1   supplemental responses to the Trade Dress Interrogatories (thereby acknowledging

2   that there was no order requiring that responses to Interrogatories 43 and 44 be

3   provided by a specific date).  Watson Decl., Exs. 14 and 15.

4          Thereafter, counsel met and conferred about the issue.  Reasoning that it did

5   not make sense for MGA to provide detailed discovery that Mattel did not need for

6   its summary judgment motion, and whose relevance would depend on the outcome

7   of that motion, MGA proposed that the parties agree that supplemental responses

8   to the Interrogatories be provided within 30 days after the Court decided Mattel's

9   summary judgment motion.  Watson Decl., Ex. 18.  MGA's counsel said that if

10  Mattel were unwilling to agree, MGA would seek a protective order staying any

11  obligation to provide further responses to the Interrogatories until after a ruling on

12  the motion for summary judgment.  *Id.*  Mattel's counsel said they would

13  "consider" MGA's proposal.  *Id.*, Ex. 19.  On February 12, 2009, Mattel rejected

14  MGA's proposal, and demanded that MGA provide its supplemental responses by

15  February 27.  *Id.*, Ex. 21.

16         MGA then proposed that it respond to the Interrogatories (a) if its protective

17  order motion were denied, within 21 days after that denial, or (b) if the motion

18  were granted, within 21 days after the Court's decided Mattel's summary judgment

19  motion.  *Id.*, Ex. 23.  Mattel did not respond to that proposal.  Nogues Decl. ¶ 8.

20         **MGA's Motion For Protective Order and Mattel's Motion To Compel.**

21  On February 27, 2009, MGA filed its Motion for a Protective Order, requesting

22  that the Discovery Master issue an order staying MGA's obligation to provide

23  further responses to the Trade Dress Interrogatories until 21 days after the Court

24  decided  Mattel's motion for summary judgment or, if the Discovery Master denied

25  the Protective Order, 21 days after such denial.  Nogues Decl. ¶ 9.  The Discovery

26  Master set MGA's Motion for a hearing on April 14, 2009.  Id., Ex. E.

27

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

1   Mattel filed its opposition to MGA's Motion on March 6, 2009.  Nogues

2   Decl. ¶ 11.  That same day, Mattel also filed its motion to compel further responses

3   to the Trade Dress Interrogatories.  *Id.* ¶ 12.[10]

4   **III.**   **MATTEL HAS MISREPRESENTED THE PRIOR ORDER**

5         **REGARDING INTERROGATORIES 43 AND 44, HAS**

6         **MISREPRESENTED THAT MGA HAS "REFUSED" TO ANSWER**

7         **THOSE INTERROGATORIES, HAS FILED AN UNNECESSARY**

8         **MOTION, AND SHOULD BE SANCTIONED.**

9

10   **A.**   **MGA Is Not In Violation Of Judge Infante's Order**

11   Judge Infante's Order directing MGA to provide supplemental responses to

12   Interrogatories 43 and 44 (Ex. 8 to Watson Decl.) was issued on February 15,

13   2008, eleven days after Judge Larson had stayed Phase 2 discovery.  The

14   February 15, 2008 Order did direct MGA to supplement those responses by

15   February 26, 2008.  *Id.*  ***However***, Judge Infante subsequently ***stayed*** his own

16   Order, after "[h]aving reviewed the Interrogatories at issue for a second time," and

17   having concluded that Interrogatory Nos. 43 and 44 "are relevant primarily, if not

18

19   [10] Notwithstanding the pending motions before the Discovery Master, on March 9,

20   2009, Mattel's counsel informed MGA (for the first time) that Mattel would be filing an *ex parte* application with the Court "relating to MGA's continuing refusals and failures to comply with the Discovery Master's Order of February 15,

21   2008."  Nogues Decl., Ex. F.  Because Mattel's letter did not specify what "refusals and failures" it was referring to,  MGA's counsel asked for an

22   explanation, pointing out that an ex parte application was inappropriate in light of the many months remaining until the discovery cut-off, and that any dispute about

23   Interrogatory Nos. 43 and 44 was already was pending before the Discovery Master.  Nogues Decl., Ex. G.  At approximately 9:30 p.m. that evening, Mattel

24   wrote a curt response confirming that its *ex parte* Application would be directed to Interrogatory Nos. 43 and 44, and that "unless MGA immediately stipulates to

25   fully and completely supplement its responses as ordered, Mattel will file its ex parte application tomorrow."  *Id.*, Ex. H.  Mattel manually filed its ex parte

26   Application at approximately 12:30 p.m. on Tuesday, March 10, 2009, but did not send it to MGA's counsel (via e-mail) until a few minutes before 5:00 p.m.  *Id.*,

27   Exs. B and C.  The Court declined to hear Mattel's ex parte application, referring it, instead, to the Discovery Master.  *Id.* Ex. K.

1   exclusively, to Phase 2." Ex. 10 to Watson Decl. at 205:22-23 and 206:1-4. The

2   former Discovery Master's Clarification Order expressly provided that "[t]he

3   MGA Parties' obligation to supplement their responses to Interrogatory Nos....43

4   and 44...[is] hereby stayed until further order of the district court lifting the stay on

5   Phase 2 discovery." *Id.* at 206:1-4. The former Discovery Master did not include

6   any specific date, or time period, after the Phase 2 stay was lifted within which

7   MGA had to provide supplemental responses.

8         Mattel itself recognizes that there is no extant order setting a date by which

9   MGA must respond. Thus, in its initial post-stay communication on the subject of

10   Interrogatory Nos. 43 and 44, Mattel's counsel wrote:

11         "On February 15, 2008, Judge Infante issued an order

12         compelling further responses to certain interrogatories

13         that Mattel had served. By order dated April 22, 2008,

14         Judge Infante clarified that the obligations of MGA and

15         MGA Mexico to respond to certain interrogatories were

16         stayed, as part of Phase 2 discovery. Now that the Phase

17         2 discovery stay has been lifted, please let me know

18         ***when*** we can expect the ordered supplemental

19         responses."

20   Ex. 14 to Watson Decl.)[11] Mattel's counsel did not even intimate there was a

21   specific deadline for responding, and they certainly have never been shy about

22   demanding compliance with orders, or threatening MGA for alleged violations of

23   orders. Absent an order ***expressly mandating*** an express response date, MGA is

24

25

26   [11] Despite these admissions and Judge Infante's ruling, Mattel has recently
invented a theory that MGA was in contempt of Judge Infante's February Order

27   before he issue his Clarification Order. *See* Mattel Brief in Support of its *Ex Parte*
Application 9. Clearly, Judge Infante did not think so.

Mitchell
Silberberg &
Knupp LLP

2159926.1

10

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

1    not in "violation" of anything, contrary to Mattel's repeated assertions. *See, e.g.*,

2    Mattel Motion at 1:11, 9:17, 10:2.[12]

3        **B.**    **MGA Has Not "Refused" To Answer Interrogatory Nos. 43-44**

4          Mattel's contention that MGA has "refused" to supplement its responses to

5    Interrogatory Nos. 43 and 44 is belied by the very exhibits it proffers in support of

6    its Motion.  In his February 6, 2009 letter to Mattel's counsel, MGA's counsel,

7    Jean Pierre Nogues, confirmed what he had said during the telephonic meet and

8    confer discussion earlier that day:

9          "This will ***confirm*** MGA's proposal during our meet-

10          and-confer-session today that MGA ***would*** *provide*

11          ***further responses to Mattel's Interrogatories 43, 44,*** 51

12          through 55, and 64, all of which deal with MGA's trade

13          dress claims, ***not later than 30 days after the Court***

14          ***decides the trade dress summary judgment motion***

15          which Mattel has indicated it will be bringing...."

16          [¶] I also advised that if Mattel did not agree to this

17          proposal, MGA would make a motion for a protective

18          order that would defer its obligation to respond until after

19          the Mattel summary judgment motion is heard."

20

21

22    [12] In its *ex parte* Application to the District Court, Mattel made the astonishing argument that "[u]nder any possible reading or scenario, the deadline for

23    compliance is long past," but it carefully refrained from identifying what that deadline was, or when it had expired.  More important, at no time during the

24    parties' meet and confer conversations about MGA's proposal to defer responses until Mattel's summary judgment motion was decided did Mattel *ever* intimate that

25    there was a "deadline" that Mattel either had violated or was about to "violate."  If Mattel ***had*** told MGA that it believed that a deadline for response was about to

26    expire, MGA would have sought *ex parte* relief from the Master.  Instead, Mattel chose to sandbag MGA by filing a motion to compel in which, ***for the very first***

27    ***time***, it accused MGA of violating the February 15 Order.

Mitchell
Silberberg &
Knupp LLP    28

2159926.1

1    Ex. 18 to Watson Decl. (emphasis added).  Mattel rejected this proposal by letter

2    dated February 12, 2009, in which its counsel demanded that MGA provide

3    supplemental responses on or before February 27, 2009.  (Ex. 21 to Watson Decl.).

4         Mr. Nogues then made an alternative proposal:

5              "[The MGA Parties] *offer to provide their supplemental*

6              *responses either:* (1) if the protective order motion is

7              denied, *21 days after its denial; or* (2) if the protective

8              order motion is granted, *21 days after the Court decides*

9              *Mattel's summary judgment motion*, to the extent any

10             trade dress claims remain after that decision."

11   (Ex. 23 to Watson Decl.) (emphasis added)[13]  In short, this is a dispute about the

12   timing of the supplemental responses; it is *not* a dispute about whether they will be

13   provided.[14]

14        Because Mattel has already (over) burdened the Discovery Master with

15   pounds of paper, MGA will not repeat here the arguments set forth at length in its

16   opening and reply briefs in support of its Motion for Protective Order, which

17   address MGA's position on the "when" question.  Instead, MGA incorporates

18   those briefs (and the supporting declaration and exhibits) by reference, and based

19   thereon respectfully submits that the Discovery Master should deny Mattel's

20   Motion to Compel.

21

22

23

24

25   [13] Mattel never responded to this proposal.  Nogues Decl. ¶ 8.

26   [14] Mattel attempts to twist a dispute over timing that into a "refusal to respond" by
     sleight-of-hand references to objections made by Phase 1 counsel almost a year
     *before* Mr. Nogues expressly stated that MGA *would* respond.  *See* Mattel Memo

27   of Points and Authorities at 10:10-11 and n. 54 (citing relevance objections
     prepared by Phase 1 counsel on March 3, *2008*).

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

1     **C.     Sanctions And An Award Of Attorneys Fees Should Be Imposed**

2            **On Mattel, Not MGA.**

3            With almost unbelievable chutzpah, Mattel argues that is entitled to

4     sanctions because MGA "forced" it to file a motion to compel responses to

5     Interrogatories.  Nothing of the sort occurred.  As discussed above, there is no

6     dispute about whether MGA will respond to Interrogatories 43 and 44, only when,

7     and MGA had already brought the "when" question to the Discovery Master one

8     week *before* Mattel filed the instant motion to compel.  Mattel's motion to compel,

9     was entirely unnecessary.

10           Significantly, the "when" question only arose after Mattel announced that it

11    was imminently moving for summary judgment on MGA's trade dress claims

12    (based on the Phase 1 verdicts) but *simultaneously* demanded that MGA provide

13    detailed factual information about the very causes of action Mattel contends

14    *cannot exist as a matter of law* because of the Phase 1 verdicts.  When Mattel

15    rejected MGA's informal request to defer the responses until after the summary

16    judgment motion was decided, MGA took the legally appropriate step of moving

17    for a Protective Order.  *See* Fed. R. Civ. Proc. 26(c) ( "[t]he court may, for good

18    cause, issue an order to protect a party or person from annoyance, embarrassment,

19    oppression, or undue burden or expense [by]. . . (B) specifying terms, including

20    time and place, for the disclosure or discovery."

21           Cases are legion that recognize the propriety of staying discovery when, as

22    here, a dispositive motion, such as a summary judgment motion, "would obviate

23    the need for discovery."  Kendall et al., Matthew Bender Federal Practice Guide:

24    Federal Civil Procedure in California § 22.40(4)(a).  *See, e.g.,  Little v. City of*

25    *Seattle,* 863 F.2d 681, 685 (9th Cir. 1989) (as amended) (stay of discovery pending

26    resolution of dispositive immunity issue appropriate because it "furthers the goal of

27    efficiency for the court and litigants."); *In re Netflix Antitrust Litigation*, 506 F.

Mitchell
Silberberg &
Knupp LLP    28

2159926.1

1   Supp. 2d 308, 321 (N.D. Cal. 2007) (courts have broad discretion to stay discovery

2   pending the resolution of a potentially dispositive motion); *Orchid Biosciences,*

3   *Inc. v. St. Louis University*, 198 F.R.D. 670, 672 (S.D. Cal. 2001) ("court has broad

4   discretion to stay discovery in a case while a dispositive motion is pending");

5   *Coastal States Gas Corp. v. Dept. of Energy*, 84 F.R.D. 278, 282 (D. Del. 1979)

6   ("It is within the sound discretion of the Court to postpone discovery of issues

7   relating to the merits of a case pending resolution of potentially dispositive

8   motions. [Citations]. Indeed, such a procedure is an eminently logical means to

9   prevent wasting the time and effort of all concerned, and to make the most efficient

10  use of judicial resources. [Citation]").

11      It would be a perversion of every conceivable notion of economy and

12  efficiency, not to mention fairness and Rule 26(c) itself, if a motion to compel

13  could be used to sanction a party for exercising its legal right to seek a protective

14  order. *See, e.g.*, Schwarzer, Tashima & Wagstaff, Federal Civil Procedure Before

15  Trial (Rutter Group 2008 ¶ 11:2386 ("[W]here there is legitimate difference of

16  opinion, an award of expenses is usually improper.); *1st Technology LLC v. Bodog*

17  *Entm't Group S.A.*, 2009 WL 426605, at *2 (W.D. Wash. Feb. 19, 2009) (where

18  issues presented "were legitimate and relatively complicated," Defendants' delay

19  in responding to the Discovery Requests until the Court ruled on the Motion to

20  Dismiss was substantially justified; the Court declined to impose sanctions.)

21      We anticipate Mattel will argue, as it did in its *ex parte* Application to the

22  District Court, that "[i]t has…been ruled in this case that it is improper and

23  sanctionable to disobey an Order while appealing or collaterally attacking an order

24  absent an actual stay," and that "MGA was previously sanctioned for disobeying a

25  discovery Order while 'gambling' that it would be granted a stay." *Ex parte*

26  Application at 16. These arguments are specious. First, MGA has not appealed,

27  challenged or otherwise refused to obey the February Order. Nor has it attempted

Mitchell
Silberberg &
Knupp LLP

2159926.1

14

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

28

1   to attack the factual or legal basis for that order as an excuse for noncompliance.

2   All MGA has done is to request that the Discovery Master temporarily defer the

3   time to respond.  MGA's request is based upon the new, intervening circumstances

4   that arose between the issuance of that order and the lifting of the discovery stay –

5   *i.e.,* the Phase 1 verdicts and Mattel's announcement of an imminent summary

6   judgment motion based solely on those verdicts.  Second, the previous sanction

7   ruling to which Mattel refers pertained to MGA's failure to designate and propose

8   dates for a 30(b)(6) *by a specific date set forth in a Discovery Master order* after

9   Judge Larson had denied an emergency request for a stay a few days before the

10  date *specified* in the underlying order.[15]

11       In fact, the party that should be sanctioned is Mattel and its counsel, not

12  MGA.  Sanctions against Mattel are appropriate under both  Fed. R. Civ.

13  Proc. 37(B) and 28 U.S.C. § 1927.  Rule 37(B) provides that a party opposing a

14  motion to compel is entitled to the cost of opposing the motion where, as here, the

15  motion is filed without substantial justification.  Sanctions also are more than

16  warranted under 28 U.S.C. § 1927 which, as Mattel admits, provides that "[a]ny

17  attorney who…so multiplies the proceedings in any case unreasonably and

18  vexatiously may be required by the court to satisfy personally the excess costs,

19  expenses and attorneys fees reasonably incurred because of such conduct."

20       Here, Mattel not only has unreasonably and vexatiously filed a Motion to

21  Compel that was unnecessary because the issue of when MGA should supplement

22  its responses to Interrogatory Nos. 43 and 44 was already before the Discovery

23  Master, but it then *further* multiplied the proceedings and attempted to do an end-

24  run around the Discovery Master by filing an *ex parte* application asking the

25

26

27  _____
    [15] It also bears noting that Mattel itself was sanctioned for failing to produce a
    properly educated 30(b)(6) deposition witness as previously ordered.

Mitchell
Silberberg &
Knupp LLP

2159926.1

28

15

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

1   District Court to hold MGA in contempt for "refusing" to answer these same

2   interrogatories.[16]

3

4   **IV.   MATTEL'S MOTION TO COMPEL RESPONSES TO**

5         **INTERROGATORY NOS. 51-55 AND 64 IS PROCEDURALLY**

6         **IMPROPER AND SUBSTANTIVELY WITHOUT MERIT, AND**

7         **SHOULD BE DENIED**

8         As with Interrogatory Nos. 43 and 44, the parties' dispute is not about

9   whether MGA will respond to Interrogatory Nos. 51-55 and 64, but when.[17]  And,

10  as with Interrogatory Nos. 43 and 44, the "when" question was already before the

11  Discovery Master when Mattel filed this utterly unnecessary Motion to Compel.

12  Thus, MGA again incorporates by reference the arguments in its briefs in support

13  of its Motion for Protective Order.

14        **A.**   **Mattel's Motion To Overrule MGA's Objection Must Be Denied**

15             **Because Mattel Failed To Comply With The Requirement To**

16             **Meet and Confer In Good Faith**

17        Mattel asks the Discovery Master to overrule objections to Interrogatory

18  Nos. 51-55 and 64 ***that Mattel never met and conferred with counsel about,*** and

19  some of which were not made with respect to these interrogatories in any event.

20  Fed. R. Civ. Proc. 37(a)  requires a party to "meet and confer in good faith" before

21

22

23  [16] In an argument so lacking in merit that Mattel hid it in a footnote, Mattel tried to

24  justify its *ex parte* application on the ground that "contempt sanctions are outside
the bounds of the Discovery Master's authority." *See* Nogues Decl., Ex. A at I, n.1.

25  That argument ignores the facts that the Discovery Master has the authority to
recommend contempt sanctions (Fed. R. Civ. P. 53(c)(2)), and the Discovery Order

26  expressly requires "any and all" discovery matters to be brought to the Discovery
Master first.

27  [17] *See*  J. Nogues letters to J. Corey dated February 6, 2009 and February 19, 2009,
Exs. 18 and 23 to Watson Decl. and quoted in relevant part in Section III B, *supra.*

Mitchell
Silberberg &
Knupp LLP

2159926.1

16

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

1  filing a discovery motion.  The Discovery Master Order similarly provides, in clear

2  and unambiguous terms:

3             "The moving party *shall* first identify *each* dispute, state

4             the relief sough, and identify the authority supporting the

5             requested relief in a meet and confer letter...."

6  Discovery Master Order, ¶ 5.

7            Mattel's meet and confer letter concerning these interrogatories is utterly

8  devoid of any reference whatsoever to the putative impropriety of the objections it

9  now challenges – objections (1) to the definitions of "SOLD," "SELL," SALE"

10  and "MATTEL" (Mattel Memo. of Points & Authorities at 13:18); (2) that the

11  information sought may be the subject of expert testimony or analysis (*id.* at 16);

12  (3) that some of the information is better known to Mattel (*id.* at 17); (4) that the

13  interrogatories are compound (*id.* at 18); (5) that the interrogatories are duplicative

14  (*id.* at 19); (6) that the interrogatories are unduly burdensome (*id.* at 20); and

15  (7) that information subject to any privilege will not be provided (*id.* at 25).  *See*

16  Ex. 15 to Watson Decl.  The *only* objections with which Mattel took issue in its

17  meet and confer letter were MGA's objections to the definition of "Former Mattel

18  Employees," and "Mattel Documents" – objections that Mattel does not even

19  mention in the instant motion (presumably because the terms "Former Mattel

20  Employees" and "Mattel Documents" do not appear in any of Interrogatory Nos.

21  51-55 or 64).  *Id.*

22            Mattel not only failed to address the now-challenged objections in its meet

23  and confer letter, but it has not proffered an iota of admissible evidence

24  establishing that it ever raised these issues orally.  *See* MGA Objections to

25  Declaration of Scott Watson, including objection to ¶ 18 thereof.  The absence of

26  evidence is hardly surprising, since none of these objections (or any others) were

27  raised by Mattel's counsel in any meet and confer conversation about Interrogatory

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

17

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

1   Nos. 51-55 or 64.  *See* Nogues Decl. ¶ 7.  Mattel's claim that "MGA refused to

2   discuss specific objections" to these interrogatories (Mattel Memo of Points &

3   Authorities at 7:16-17) is simply another fabrication.

4          The meet and confer requirement is not some meaningless edict to which

5   counsel need only give a perfunctory nod.  It is intended to encourage the parties to

6   have productive interchanges in the hope they can resolve their disputes without

7   the necessity of court intervention.  Thus, unless a moving party demonstrates it

8   made a good faith attempt to resolve an issue before asking the court of assistance,

9   a motion to compel should be denied.  *See, e.g., Robinson v. Potter*, 453 F.3d 990,

10  995 (8th Cir. 2006) (affirming denial of motion to compel where moving party

11  failed to show parties met and conferred in good faith); *Naviant Marketing*

12  *Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 186-87 (3d Cir. 2003) (district

13  court properly denied motion to compel where movant's counsel "failed to make a

14  good faith effort to resolve discovery disputes prior to invoking court

15  intervention.").  Here, Mattel did not meet and confer at all on the objections, let

16  alone do so in good faith.

17         While the parties did meet and confer about the ***timing*** of MGA's response

18  to Interrogatory Nos. 51-55 and 64, that does not give Mattel *carte blanche* to run

19  to the Discovery Master with ***other*** complaints it purportedly has about MGA's

20  response to these interrogatories – complaints that it neither shared with MGA, nor

21  tried to resolve informally.  Accordingly, to the extent Mattel's motion seeks an

22  order "overruling" the objections at issue, the motion must be denied.

23         **B.     Each Of The Newly-Challenged Objections Is Valid And Proper**

24         Although MGA strongly believes that the Discovery Master should not

25  consider Mattel's arguments about MGA's objections because Mattel never met

26  and conferred with MGA, MGA is concerned that its failure to address Mattel's

27  arguments might be deemed a waiver of its right to rebut Mattel's specious

Mitchell
Silberberg &
Knupp LLP

2159926.1

28

1  contentions.  Accordingly, and without waiving its position that Mattel's

2  arguments are not properly before the Discovery Master, MGA will address each

3  of the objections to which Mattel belatedly has taken umbrage.

4       **1.**     **The Definitions Of "SOLD," "SELL," SALE" and**

5                 **"MATTEL"**

6       Mattel's request that the Discovery Master overrule MGA's objections to

7  the definitions of "SOLD," "SELL," SALE" and "MATTEL"  can be dismissed

8  out of hand.  None of Interrogatory Nos. 51, 53, 54, 55 or 64 uses any of those

9  capitalized terms.  Interrogatory No. 52 does use the term "SALES," but in a

10  context that can only mean one thing – the transfer of title for compensation.  That

11  is because Interrogatory No. 52 first asks about products "sold" (*without* that term

12  being capitalized) by MGA or its licensees, and then asks for revenues received by

13  MGA from "*such*" "SALES."  The question thus simultaneously refers back to

14  sales (an undefined term that must be understood in the ordinary sense of the word)

15  of products by MGA or its Licensees, and then uses a term of much broader

16  definition that is not employed in the earlier part of the question.  As such, MGA

17  quite properly incorporated its general objection that the definition rendered the

18  interrogatory ambiguous, since that definition includes concepts such as

19  "marketing" and "distribution" that cannot be squared with the questions posed in

20  Interrogatory No. 52.

21       MGA's objection to Mattel's definition of "MATTEL" also is entirely

22  proper.  Mattel sweeps within that definition "its current employees, officers,

23  directors, agents representatives, attorneys, parents, subsidiaries, divisions,

24  AFFILIATES, predecessors-in-interest, successors-in-interest, and any other

25  PERSON acting on its behalf, pursuant to its authority or subject to its control."[18]

26

27  [18] "AFFILIATE" and "PERSON" are also broadly defined terms, which add extra layers of complexity and confusion to Mattel's definition of "MATTEL."

28

Mitchell
Silberberg &
Knupp LLP

2159926.I

19

1   This broad definition of Mattel makes each of the interrogatories vague,

2   ambiguous and incomprehensible to the MGA Parties.  MGA simply has no idea

3   who or what is included in this definition of MATTEL, and fully suspects that even

4   Mattel and its counsel would be hard pressed accurately to list everyone and every

5   entity included.  Moreover, MGA suspects that this definition, read literally, would

6   encompasses thousands of entities and individuals, rendering the Trade Dress

7   Interrogatories vastly more compound and unduly burdensome than they already

8   are.  *See* discussion *infra*.  Thus, MGA's objection to Mattel's overbroad, vague

9   and incomprehensible definition of MATTEL is spot on, and should be sustained.

10          **2.      The Expert Witness Analysis Objection In Interrogatory**

11                      **Nos. 51 and 53 Is Proper**

12          As the prior Discovery Master already has held, "[t]hat the interrogatory

13   responses include a reservation of rights to supplement during expert discovery

14   does not render the responses inherently improper or objectionable."  Watson

15   Decl., Ex. 8 at 174:8-9.[19]  Interrogatory No. 51 seeks identification of elements and

16   products subject to trade dress infringement and dilution.  As the prior Discovery

17   Master observed in denying Mattel's earlier effort to have the "expert analysis"

18   objection overruled, "Mattel does not contest that the identification of the elements

19   and products subject to trade dress infringement will be a subject of expert

20   analysis."  *Id.* at 174:10-11.  Nor does Mattel dispute that the subject of

21

22

23   [19] Mattel's discussion of this objection conveniently omits that it was made in
       conjunction with MGA's General Objections, which state, among other things,

24   (1) "MGA objects to these Interrogatories to the extent that they may unfairly seek
       to restrict the facts on which MGA may rely at trial... MGA reserves the right to

25   supplement of amend these responses at a future date;" and (2) "MGA objects to
       these Interrogatories to the extent that they seek information that will be the subject

26   of expert witness testimony and that is therefore premature.  MGA further objects
       to these Interrogatories to the extent that they seek to circumvent the expert

27   disclosure provisions of the Federal and Local Rules."  Watson Decl., Ex. 12
       at 230:18-231:2.

Mitchell
Silberberg &
Knupp LLP

2159926.1

28

20

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

1  Interrogatory No. 53 – likelihood of confusion – will be the subject of expert

2  testimony.

3      Mattel's assertion that Judge Larson held "this very objection…was not a

4  proper basis for withholding discovery" is disingenuous at best.  Judge Larson's

5  July 2, 2007 order merely *upheld* Judge Infante's ruling that the fact that net worth

6  is generally the subject of expert testimony "does not render it an improper subject

7  *for a Rule 30(b) (6) deposition.*"  Ex. 41 to Watson Decl. at 5.  MGA has not

8  objected to the subject matter of Interrogatory Nos. 51 and 53; it has simply

9  interposed an objection that preserves MGA's right to rely on expert testimony.

10  That Mattel's reliance on Judge Larson's Order is an exercise in substituting apples

11  for oranges is evident from the fact that, seven months *after* Judge Larson upheld

12  Judge Infante's order requiring MGA to designate a 30(b)(6) witness on a topic

13  that might also be the subject of expert testimony, Judge Infante ruled that for

14  *interrogatory* purposes, it was proper for MGA to preserve its right to later rely on

15  expert testimony.

16      **3.     Information Better Known to Mattel**

17      Mattel challenges this objection to Interrogatory Nos. 51 and 54.  Mattel is

18  wrong.  Interrogatory No. 51 demands that MGA identify *Mattel* products "by

19  SKU [Stock Keeping Unit] or bar code number."  If the SKUs or bar codes Mattel

20  assigns to its products are not uniquely known to Mattel, or better known to it than

21  to MGA, it is difficult to know what type of information would be.

22      Interrogatory No. 54 asks MGA, among other things, to identify all persons

23  with knowledge of the facts that Mattel copied MGA concepts, designs, products,

24  packaging, or "other matter."  Obviously, there are persons within Mattel

25  responsible for or knowledgeable about Mattel's copying, and to the extent MGA

26  has not yet identified such persons or Mattel's obstructionist tactics have prevented

27  it from doing so, MGA cannot provide the information.  That is not to say that

Mitchell
Silberberg &
Knupp LLP
28

2159926.1

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

1  MGA will not provide whatever information it has (it has already said it will

2  further respond to this Interrogatory, subject to whatever timing order results from

3  its request for a Protective Order).  However, MGA is entitled to preserve its

4  objection to providing information that Mattel has and MGA does not.

### 4.   Interrogatory Nos. 51-53 Are Compound

6        MGA objected to Interrogatories 51, 52 and 53 as compound.  Mattel takes

7  issue with those objections as to Interrogatories 51 and 52, but ***not*** with respect to

8  Interrogatory 53, thereby conceding that Interrogatory No. 53 is objectionable on

9  this ground.

10       Mattel argues that Interrogatory Nos. 51 and 52 ask the same question about

11  a "common group."  That is not true.  Interrogatory 51 asks about "every [Mattel]

12  concept, design, product, product packaging or other matter" that MGA contends

13  "is a copy of, infringes or dilute" MGA's concepts, designs, products, product

14  packaging or other matters.  Just stopping there, Interrogatory 51 deals with ten

15  very different tangible ***and*** intangible things (concepts, designs, products, product

16  packaging and "other matters" of MGA, and concepts, designs, products, product

17  packaging and "other matters" of Mattel) and at least two very different legal

18  concepts (copying/infringement and dilution).[20]  The interrogatory then goes on to

19  add more subparts by purporting to require that MGA provide the product name,

20  SKU number or bar code number for each Mattel concept, design, product, product

21  packaging or other matter identified, and then to specify those "elements or

22  attributes that [MGA] contend[s] were copies, infringed and diluted."  MGA's

23  compound objection is more than well-taken.

24       Interrogatory 52 is equally compound.  There, Mattel once again asks

25  questions about multiple categories of different things (concepts, designs, products,

26

27  [20] *See, e.g., Jada Toys v. Mattel, Inc.*, 518 F.3d 628, 634, 636-37 (9th Cir. 2008); *Durney v. WaveCrest Laboratories, LLC*, 441 F. Supp. 2d 1055, 1062 (N.D. Cal. 2005).

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

22

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

1   product packaging or other matters), and two separate legal concepts

2   (copying/infringement and dilution).  It then asks for four categories of information

3   (units sold, revenues, costs and profits) about each of the five things as to which

4   MGA makes one of two contentions.  Once again, MGA's objection is well-

5   founded.[21]

6         **5.**      **Some of the Interrogatories Are Duplicative of Others**

7                     **Previously Asked and Answered**

8         MGA objected to Interrogatories 51 and 52 as duplicative of earlier

9   interrogatories.  Mattel disagrees with MGA's assertions as to Interrogatory 52, but

10   does not take issue with MGA's duplication objection to Interrogatory 51.

11         Interrogatory 52 asks that MGA provide units sold, revenue, cost and profit

12   information for all products it contends Mattel copied, infringed or diluted.  Mattel

13   concedes that its Interrogatory 45 asked MGA to provide units sold, revenues, cost

14   and profit information for Bratz products sold.  In a lame attempt to get around this

15   duplication, Mattel argues that MGA has to do it all over again because now Mattel

16   is asking about all infringed and diluted products, not all Bratz products.  MGA has

17   *already* told Mattel in great detail which of its products it contends Mattel

18   copied/infringed or diluted.  *See* MGA's Fourth Supplemental Response to

19   Interrogatory 2 (Ex. J to Nogues Decl.).  MGA should not now have to go back and

20   re-sort and recompile the information which Mattel was already provided when

21   Mattel can just as easily as cost-effectively do it for itself.

22         Mattel *now* argues that the Interrogatory is not duplicative because it covers

23   three non-Bratz products, but that the Interrogatory is not so limited, and Mattel

24   has never offered to so limit it.  As Judge Infante previously noted, "[i]t is not the

25

26   [21] *Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 475 (N.D. Cal. 2004) (denying motion to compel where single interrogatory seeking information

27   about 26 separate products in a patent case held to contain 26 discrete subparts and therefore would have violated maximum number of interrogatories allowed).

28

1   MGA parties' responsibility to re-write the interrogatories[.]"  Ex. 8 to Watson

2   Decl. at 169:25-27.

3         **6.    MGA's Undue Burden Objections Are Well-Taken**

4         Mattel's incredibly broad definitions and multi-faceted questions are

5   overbroad.  The former Discovery Master's rulings on Mattel's motion to compel

6   similarly broad Interrogatories 27 through 29 are instructive in this regard.  In

7   denying Mattel's motion to compel with respect to those interrogatories, Judge

8   Infante noted:

9           "Mattel's motion to compel further responses to

10          Interrogatory Nos. 27-29 is denied because the

11          interrogatories are overbroad and unduly burdensome.

12          The definition of "Bratz Invention" is extremely broad,

13          encompassing numerous intellectual property concepts.

14          . . . Not all contention interrogatories requiring a

15          recitation of all facts, documents and witnesses are

16          objectionable.  In the instant case, however, Mattel's

17          contention interrogatories would force the MGA parties

18          to review nearly 4 million pages of documents produced

19          in this action and more than 50 days of deposition

20          testimony in search of [the requested] information . . . ."

21          Watson Decl. Ex. 8 at 169:2-170:3 (citations omitted).

22        Much the same can be said here.  In the Trade Dress Interrogatories, Mattel

23  has conflated many kinds of tangible and intangible "property," ranging from

24  products to designs to packaging to concepts, and has asked about copying,

25  infringement and dilution.  Mattel has compounded this extraordinary burden

26  further by, for example, purporting to require that MGA identify Mattel's

27  offending products by name or SKU or code number, and "specify" those

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

24

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES

1   "elements or attributes" of each product, design, packaging or concept that MGA

2   claims each Mattel product infringes, copies or dilutes (Interrogatory 51); identify

3   *Sleekcraft* factors for each concept, product, design or packaging infringed, copied

4   or diluted (Interrogatory 52); and identify all facts, witnesses and documents

5   pertaining to any of its claims in this case (Interrogatory 64).  These requests are at

6   least as overbroad and unduly burdensome as those previously rejected by the prior

7   Discovery Master.  MGA's objections should be similarly upheld here.

8              **7.    MGA's Privilege Objections Should Not Be Overruled**

9        Mattel also complains about MGA's privilege objections.  Those objections

10  were made to preserve MGA's ability to protect privileged documents and

11  information in the face of broad-ranging interrogatories that, among other things,

12  require MGA to identify documents and persons with knowledge of various things.

13  MGA is fully aware of its obligation to provide privilege logs when privileged

14  documents and information are responsive to discovery.  But given some of the

15  assertions and arguments made in this case to date, it cautiously and properly made

16  it clear that it was not waiving the attorney-client privilege and would not produce

17  any privileged information or documents responsive to Mattel's requests.

18       Once again, the prior Discovery Master's February 2008 rulings are

19  instructive in this regard.  In the motion that was the subject of that order, Mattel

20  had asserted that various MGA objections, including a privilege objection, were

21  improper boilerplate.  Watson Decl., Ex. 8 at 184:16-25.  The Discovery Master

22  did not overrule MGA's privilege objections.  Indeed, the only privilege ruling in

23  the February Order sustained MGA's privilege objections to Interrogatory 46.  *Id.*

24  at 182:10-183:12.

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

2159926.1

## **Conclusion**

For all the reasons set forth herein the Discovery Master should deny Mattel's motion to compel and award sanctions in favor of the MGA Parties and against Mattel for this baseless and unnecessary motion.

DATED:  March 13, 2009

> RUSSELL J. FRACKMAN
> PATRICIA H. BENSON
> MITCHELL SILBERBERG & KNUPP LLP


> By:_____/s/_____.
>      Patricia H. Benson
>      Attorneys for Defendants
>      MGA Entertainment, Inc., MGA
>      Entertainment HK, Ltd., MGAE De
>      Mexico, S.R.L. De C.V., and Isaac Larian

Mitchell
Silberberg &
Knupp LLP

2159926.1

26

MGA'S OPPOSITION TO MATTEL'S MOTION TO ENFORCE AND COMPEL RE
TRADE DRESS INTERROGATORIES