# EXHIBIT 1

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 2

7548



1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3        EASTERN DIVISION

4        - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6        - - -        CERTIFIED COPY

7   MATTEL, INC.,                    )
                                     )
8               Plaintiff,           )
                                     )
9        vs.                         )   No. CV 04-09049
                                     )
10   MGA ENTERTAINMENT, inc., et. Al.,  )   Trial Day 36
                                     )   MORNING session
11               Defendants.         )   Pages 7548-7627
                                     )
12   AND CONSOLIDATED ACTIONS,       )
     _____    )

13

14

15        REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16        RIVERSIDE, CALIFORNIA

17        FRIDAY, AUGUST 15, 2008

18        8:36 A.M.

19

20

21

22

23        THERESA A. LANZA, RPR, CSR
          Federal Official Court Reporter
24        3470 12th Street, Rm. 134
          RIVERSIDE, CALIFORNIA  92501
25        951-274-0844
          WWW.THERESALANZA.COM

EXHIBIT 2 PAGE 40

7549

```
 1   APPEARANCES:

 2
     On behalf of MATTEL, INC.:
 3
                          QUINN EMANUEL
 4                        By:  JOHN QUINN
                               JON COREY
 5                              MICHAEL T. ZELLER
                               HARRY OLIVAR
 6                              TIMOTHY ALGER
                               WILLIAM PRICE
 7                        865 S. FIGUEROA STREET,
                          10TH FLOOR
 8                        LOS ANGELES, California  90017
                          213-624-7707
 9


10
     ON BEHALF OF MGA ENTERTAINMENT:
11
                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
12                        BY:  THOMAS J. NOLAN
                               JASON RUSSELL
13                              RAOUL KENNEDY
                               LAUREN AGUIAR
14                              CARL ROTH
                          300 SOUTH GRAND AVENUE
15                        LOS ANGELES, CALIFORNIA  90071-3144
                          213-687-5000
16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 2
PAGE 41

Friday, August 15, 2008            Trial Day 36, morning session

7550

1                          I N D E X

2

3    DEFENSE
     WITNESS          DIRECT        CROSS       REDIRECT      RECROSS
4    **ISAAC LARIAN**

5    BY MR. NOLAN       7581                     7617
     BY MR. PRICE                  7611
6

7

8
              EXHIBITS            RECEIVED
9
                18819              7597
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Friday, August 15, 2008                    Trial Day 36, morning session

7580

1          MR. COREY:  Mr. Meyer.

2          MR. ROTH:  It is likely that he'll go this afternoon.

3          THE COURT:  Excellent.  We'll do that during

4    lunchtime.

5          MR. COREY:  Thank you, Your Honor.

6          THE COURT:  I've got the disks.

7          We'll take a brief recess now.

8          (Brief recess taken.)

9          (Whereupon, jurors enter courtroom.)

10          THE CLERK:  Calling Case Number CV04-09049-SGL,

11   Mattel, Inc., v. MGA, Inc., et al.

12          Counsel, please state your appearances for the

13   record.

14          MR. QUINN:  John Quinn, Bill Price, Mike Zeller for

15   Mattel.

16          MR. NOLAN:  Tom Nolan, Lauren Aguiar, Raoul Kennedy

17   on behalf of MGA and Isaac Larian.

18          THE COURT:  Counsel, good morning.

19          We're going to try to keep the lights a little down

20   for the entire day.

21          Counsel, you may proceed.

22          MR. NOLAN:  Thank you, Your Honor.

23          MGA calls Isaac Larian.

24

25

EXHIBIT 2
PAGE 243

Friday, August 15, 2008                    Trial Day 36, morning session

```
 1              THE CLERK:   Mr. Larian, please be advised that you're

 2    still under oath.

 3              THE COURT:   You may proceed.

 4                      DIRECT EXAMINATION

 5    BY MR. NOLAN:

 6    Q    Good morning, Mr. Larian.  I want to turn to a document

 7    that Mr. Price showed you.

 8              Could you turn to 13520; that is the business plan.

 9              MR. NOLAN:   This is in evidence, Your Honor.

10              THE COURT:   Very well.  Yes, it is.

11    BY MR. NOLAN:

12    Q    Mr. Larian, I'd like to direct your attention to

13    Exhibit 13520.

14              First of all, do you see the date, March 2001?

15    A    I do.

16    Q    And this is "Business plan, copy number one"; correct?

17    A    Correct.

18    Q    And it's for MGA?

19    A    Yes.  ABC International, which was MGA.

20    Q    Now, Mr. Price asked you whether or not this business plan

21    had been prepared before you even sold the Bratz doll to the

22    public.

23              Do you recall that?

24    A    I do.

25    Q    I want to ask you a different question.
```

EXHIBIT
PAGE _____

Friday, August 15, 2008                    Trial Day 36, morning session

```
 1              By March of 2001, had you presented prototypes of
 2   dolls to retailers?
 3   A    Yes.
 4   Q    Had you presented prototypes of the 3-D rendition of the
 5   3-D dolls at toy fairs?
 6   A    Yes, we did.
 7   Q    All by March of 2001?
 8   A    Sorry?
 9   Q    All before March of 2001?
10   A    Yes.
11   Q    Could you tell the jury which toy shows you had already
12   presented the prototype doll to.
13   A    We first showed it in January of 2001 in Hong Kong; then
14   in February 2001, in New York.  And also our distributor told
15   me he showed that in Tokyo toy show in February.  I don't
16   remember the exact date.
17   Q    By March of 2001, had you already met with retailers?
18   A    Yes, we had.
19   Q    Let me ask you, does MGA sell Bratz dolls directly to the
20   public?
21   A    At what time?  Now?
22   Q    Yes.
23   A    Now we do so, yes.
24   Q    But in 2001, did you?
25   A    We did not.
```

EXHIBIT 2
PAGE 965

Friday, August 15, 2008                    Trial Day 36, morning session

7583

1   Q    Were you selling any out of the back of your offices?

2   A    I'm sorry?

3   Q    Were you selling Bratz to the public outside of the

4   offices of MGA?

5   A    We were only selling it to retailers and distributors in

6   other countries.

7   Q    By March of 2001, had you already received orders from

8   retailers?

9   A    Yes, we had.

10  Q    I'm going to ask you to turn to Page 14 of the business

11  plan, market analysis.

12        Do you see that, sir?

13  A    Yes.

14  Q    I want to read the first sentence to you:   "The target

15  audience for the Bratz are tween girls from 7 to 11 years old."

16        Do you see that?

17  A    I do.

18  Q    Was that Carter Bryant's idea?

19  A    No, it was not.

20  Q    Whose idea was that?

21  A    MGA Entertainment.

22  Q    It goes on to say, "Tweens consist of three markets in

23  one:   The primary market, spending money on their own wants and

24  needs; the influence market, directing the spending of the

25  parents' money on their wants and needs; and the future market,

EXHIBIT 2 PAGE 266

Friday, August 15, 2008                    Trial Day 36, morning session

7584

```
 1    for all goods and services who have all of their purchases

 2    ahead of them.  All three markets combined, tweens have more

 3    market potential than any other demographic group."

 4            Did I read that right?

 5    A    Yes, you did.

 6    Q    Sir, did you ever discuss with Carter Bryant the potential

 7    of these three primary market opportunities available for a

 8    doll?

 9    A    No.

10    Q    Prior to meeting Carter Bryant, had you identified any

11    business opportunities in the fashion doll industry as

12    presenting an opportunity for a new doll entrant?

13    A    Yes.

14    Q    And how did you go about doing that, sir?

15    A    By, frankly, looking at my own family; my daughter

16    Jasmine, who at the time was about 11, and her friends; looking

17    at information available publicly.  Girls and kids were more

18    and more on the computer at that age, 7 to 11.  They did not

19    want to play with the ordinary fashion dolls that were out at

20    that time.

21    Q    I want to turn to Page 15 for a moment and look at

22    "strengths."

23            It says, "In terms of product strength, Bratz" -- and

24    it has a TM on that.

25            What does that stand for?
```

EXHIBIT 2
PAGE 47

Friday, August 15, 2008                    Trial Day 36, morning session

7585

```
 1            MR. PRICE:  Objection.  Irrelevant, Your Honor.
 2            MR. NOLAN:  I'll withdraw the question.
 3            THE COURT:  Very well.
 4   BY MR. NOLAN:
 5   Q    "In terms of product strength, Bratz has several distinct
 6   advantages over the competition."
 7            First of all, when you're referring to Bratz, are you
 8   referring to the doll or the drawings?
 9   A    We were referring to the trademark, the brand.
10            MR. PRICE:  Move to strike "trademark."  It's
11   irrelevant.
12            THE COURT:  Sustained.
13            "Trademark" is stricken, but "brand" is not stricken.
14   BY MR. NOLAN:
15   Q    Were you referring to the 2-D drawings?
16   A    No, we were not.
17   Q    "First, it is marketed advancement in the physical
18   appearance of the dolls."
19            Do you see that?
20   A    Yes.
21   Q    Then it goes on, "The Bratz are unique in many ways.
22   Their eyes are big, with a hint of anime style.  Their lips are
23   more pronounced.  Their feet and heads are oversized."
24            Did I read that correctly?
25   A    You did.
```

EXHIBIT 2
PAGE 578

Friday, August 15, 2008                    Trial Day 36, morning session

7586

1  Q    Was Bratz the first doll that you had ever seen that had

2  big eyes with a hint of anime style, lips that were more

3  pronounced, and feet and heads that were oversized?

4          MR. PRICE:  Objection.  Irrelevant.

5          MR. NOLAN:  We can have a quick side-bar, if

6  necessary.

7          THE COURT:  You can impeach your own witness.

8          You're calling into question what was stated there;

9  correct?

10         MR. NOLAN:  Not at all, Your Honor.

11         THE COURT:  Well, then, I need to have a side-bar.

12         MR. NOLAN:  Okay.

13         (Whereupon, the following proceedings were held at

14  side-bar:)

15         THE COURT:  Maybe I misunderstood, because Mr. Larian

16  indicated that these are unique elements.  "Unique" meaning

17  unique.

18         MR. NOLAN:  Right.  To the doll.  I was then going to

19  go back and ask him whether or not he believed --

20         THE COURT:  Oh, okay.  I thought you were then going

21  to get him to say, No, that's not a true statement; they are

22  not unique.

23         You can impeach your own witness, but if that's not

24  what you're doing --

25         MR. NOLAN:  I'm not.  But I --

EXHIBIT 2
PAGE 49

Friday, August 15, 2008                Trial Day 36, morning session

1      Respectfully -- and this is the first time I've ever

2  done it -- I thought the Court's comment about impeaching my

3  own witness in front of the jury was prejudicial.

4      I was not in any way attempting to try to impeach my

5  own witness.

6      **THE COURT:**  I completely misunderstood what you were

7  doing.  There's a statement that he previously testified to

8  that they were unique, and when you said "you've seen it

9  before" suggested that they are not unique.  That's fine to do.

10     And I mean "impeachment" in the legal sense.

11     I'll make it clear to the jury.

12     **MR. NOLAN:**  I appreciate that.  Thank you.

13     **THE COURT:**  I'll make it abundantly clear to the

14  jury.

15     **MR. NOLAN:**  I'm worried about the impression.

16     **THE COURT:**  Right.  Very well.

17     But then I'm going to sustain the objection.  You

18  have to rephrase the question.  I'll make it clear that you

19  were not --

20     **MR. PRICE:**  After the next question, I think, in

21  effect, that he's trying to get Mr. Larian to say there were

22  other dolls out there with these features, which then he begins

23  to do --

24     **MR. NOLAN:**  No.  Let's not anticipate where I'm

25  going.

EXHIBIT 30
PAGE 2

Friday, August 15, 2008                Trial Day 36, morning session

1          (Whereupon, side-bar proceedings were concluded.)

2          **THE COURT:**  Just to be clear to the jury, the jury

3     should disregard, obviously, any comments that counsel or the

4     Court makes when we're having our discussions.  The impeachment

5     reference was a misinterpretation of Mr. Nolan's last question.

6     Completely disregard that exchange.

7          Counsel, you may proceed.

8          **MR. NOLAN:**  Thank you, Your Honor.

9          Let me rephrase.

10    BY MR. NOLAN:

11    Q    Mr. Larian, in the sentence that you say "The Bratz are

12    unique in many ways.  Their eyes are big with the hint of anime

13    style.  Their lips are more pronounced.  Their feet and heads

14    are oversized" -- do you see that?

15    A    Yeah.

16    Q    You were referring to the dolls?

17    A    I'm sorry?

18    Q    Were you referring to the Bratz dolls?

19    A    Yes.

20    Q    Were you referring to Carter Bryant's drawings?

21    A    No.

22    Q    As the CEO of MGA, did you have an understanding as to

23    whether or not differences were made and imputed into the doll

24    that did not exist in the drawings?

25    A    Yes.  Many.

EXHIBIT 2
PAGE 57

. Friday, August 15, 2008                    Trial Day 36, morning session

7589

1  Q    If you look for a moment under "strengths," do you see

2  anywhere a mention that Carter Bryant's drawings were the

3  driving force of the Bratz doll?

4  A    I do not.

5  Q    Did you believe, sir, when you saw Carter Bryant's

6  drawings, the concept drawings, that those drawings were

7  appropriate for the tween market?

8  A    The way they were drawn by itself, they were not.  We had

9  to make many changes to them.

10  Q    I want to look at Page 17 for a moment, under "elements of

11  risk."

12       Sir, there's been a lot of references to your early

13  enthusiasm about the Bratz dolls.

14       Do you remember that testimony?

15  A    Yes.

16  Q    And your projections of making millions of dollars?

17  A    Yes.

18  Q    Millions of sales?

19  A    And sales, yes.

20  Q    Even in the first year?

21  A    Yes.

22  Q    Even though you had never achieved those kind of sales on

23  any other product that you had ever made?

24  A    To the best of my recollection, we had not.

25  Q    But you still --

EXHIBIT 2
PAGE 52

Friday, August 15, 2008                    Trial Day 36, morning session

1  A    You know what?  I'm sorry.  I think we had made those kind

2  of sales on other products.

3  Q    In any event, Mr. Larian, did you understand that there

4  were risks in introducing Bratz into the marketplace?

5  A    Yes.  Absolutely.

6  Q    I want to turn to Page 17.  It says, "Since the initial

7  introduction of ABC International Traders, Inc., into the

8  fashion doll market, ABC runs the risk of failure from trade

9  acceptance by retailers."

10         Do you see that?

11  A    I do.

12  Q    And it says, "This is being overcome already by the orders

13  placed from the top five major retailers."

14         Correct.

15  A    I do.

16  Q    And then on Page 18, you start talking about the marketing

17  plan.

18         Do you see that?

19  A    Yes, I do.

20  Q    And then you talk about sales strategy.

21  A    Yes.

22  Q    And I see here under "sales strategy," there's some bullet

23  points.  It says, "The Bratz should be treated as a long-term

24  brand with future line extensions."

25  A    Yes, I do see that.

EXHIBIT 2
PAGE 53

Friday, August 15, 2008                    Trial Day 36, morning session

1   Q    Was there a reason why, in March of 2001, you were already

2   thinking about line extensions for the next year?

3   A    We wanted to build Bratz as a brand, and in order to do

4   that, you had to do many steps; one of them was to build line

5   extensions just for dolls.

6   Q    And then under "sales strategy," there's bullets point of

7   "securing end caps," "free-standing inserts, "floor minders,"

8   "point-of-purchase displays."

9        Do you see that?

10  A    Yes.

11  Q    And then you have "positioning."

12       You're talking about positioning there; is that

13  correct?

14  A    Yes.

15  Q    Then on Page 19, you talk about direct sales.  And I want

16  to go to the third paragraph there.

17       It says, "We have chosen to use a direct sales force

18  because our products require considerable customer education

19  and post-sales support directly from the company.  Our

20  price-point pricing structure and profits are such that our

21  costs of sales warrants person-to-person selling strategy."

22       Do you see that?

23  A    I do.

24  Q    Mr. Larian, why was it necessary to engage in all of this

25  to try to sell Bratz?

EXHIBIT G-2
PAGE

7592

1   A    We used to have what we call manufacturer reps, who go and

2   sell to customers, many, many products.  And since we wanted to

3   build this brand, we believed that we should have our own sales

4   force, rather than having a manufacturer rep sales force, to go

5   to retailers to explain why it's important for them to buy the

6   product, what are we going to do with it, what kind of

7   advertising we're going to send, et cetera.

8   Q    I want to go back to Page 15 for just a moment, under

9   "strengths."  It says here in the last paragraph, "The

10  Bratz will be offered to retailers at a price point close to

11  that of Barbie's.  ABC is confident that girls will purchase

12  the Bratz over Barbie because they are not defined by race or

13  ethnicity.  This was a conscious decision, so the consumer can

14  choose the doll that reflects their own fashion, style, or

15  appearance."

16  A    Yes.

17  Q    Whose idea was it to make Bratz dolls not defined by race

18  or ethnicity?

19  A    It was MGA's, because we didn't want to have divisions.

20  We didn't want somebody to say, This is an African-American

21  doll, or this is a Brazilian doll, or have any religious or any

22  race attached to it.  It was a conscious decision that we made

23  as a company.

24  Q    Did Carter Bryant come up with that idea?

25  A    He did not.

EXHIBIT 2
PAGE 33

Friday, August 15, 2008                    Trial Day 36, morning session

```
 1    Q    Was that decision based on your own experiences in

 2    America?

 3    A    America; and where I came from, yes.

 4    Q    Yesterday, we had a branding expert testify.

 5         Were you here then?

 6    A    I was.

 7    Q    Mr. Larian, did you attend Harvard University?

 8    A    I'm sorry.

 9    Q    Did you attend Harvard University?

10    A    I have not.

11    Q    Do you have a degree in branding?

12    A    I do not.

13    Q    Has Bratz won awards for branding?

14    A    Yes, it has.

15         MR. PRICE:  Objection.  Irrelevant.

16         THE COURT:  It's already been covered.

17         Oh, for branding?

18.        MR. NOLAN:  Yes.

19         THE COURT:  Overruled.

20         MR. NOLAN:  Thank you.

21         May I approach?

22         THE COURT:  You may.

23    BY MR. NOLAN:

24    Q    Mr. Larian, I've placed in front of you a large book.

25         Do you recognize that book?
```

EXHIBIT 2
PAGE 54

Friday, August 15, 2008                    Trial Day 36, morning session

1   A    I do.

2   Q    What is it?

3   A    This is a publication called *Superbrands, 10th Anniversary*

4   *Edition*.  This is a publication that looks at brands worldwide

5   and what is their essence and how they were built, and they

6   identify them as Superbrands.  And we got the -- we won the --

7   this is the year.  For year 2005, we were on the cover of the

8   *Superbrand*.

9        **MR. NOLAN:**  Your Honor, we'd offer Exhibit 18819 into

10  evidence.

11       **MR. PRICE:**  Objection.  First, it's irrelevant.

12  Second, I've only seen the first cover page.  That's all I

13  have.

14       **THE COURT:**  Counsel, what portion of this do you want

15  to introduce?

16       **MR. NOLAN:**  The cover, as well as the page on Bratz,

17  as well as the back cover, which shows the listing of just the

18  names of the other brands.

19       **THE COURT:**  What is the page on Bratz?

20       **MR. NOLAN:**  Page 34 through 35, Your Honor.

21       And I can respond to one of the objections at

22  side-bar, if necessary.

23       **THE COURT:**  Let's do that.

24       (Whereupon, the following proceedings

25       Were held at side-bar:)

EXHIBIT 2
PAGE 57

Friday, August 15, 2008            Trial Day 36, morning session

1     **THE COURT:**  The cover, the back cover, and these two

2     pages?

3          **MR. NOLAN:**  Yes.

4          **THE COURT:**  The concern I have -- I'm just reading

5     this for first time -- but there's information that is going to

6     be problematic.

7          I agree with you that, I mean, winning the award

8     shows strength of the brand or the importance of -- it's

9     relevant, I think.  But I'm concerned --

10          **MR. NOLAN:**  How about just the front and the back

11    covers?

12          **THE COURT:**  That may be the easiest thing to do.

13          Is it 7 to 12 years old?  You've taken the position

14    it's 8 to 12; they have taken the position that it's 6 to 12;

15    and then --

16          **MR. NOLAN:**  It's sometimes defined a little

17    differently.

18          **THE COURT:**  I have to give a jury instruction on

19    this.

20          **MR. NOLAN:**  I think the range is 6 to 12.

21          **THE COURT:**  You're saying 8 to 12.

22          **MR. PRICE:**  Their instruction said --

23          **THE COURT:**  I thought it was the other way.

24          **MR. NOLAN:**  It changes.  I'll go back to the jury

25    instruction.

EXHIBIT 2
PAGE 58

1          THE COURT:  In your substantial similarity

2   instruction, one side said -- I see this is 7 to 12.

3          MR. PRICE:  The document just used said 7 to 11.

4          THE COURT:  It's a minor point.

5          MR. PRICE:  My objection is, one, I don't know if

6   this is an award or if it's just articles about a strong brand,

7   "Britain's strongest brand, 2005."  It seems to be of minimal

8   relevance, talking about "Britain's strongest brand," because

9   it sounds like it's an award.  And I've never even seen the

10  book.

11         MR. NOLAN:  Your Honor, this book was made --

12         THE COURT:  "Superbrand investigates over 90 of the

13  strongest brands to establish how they managed to achieve such

14  phenomenal success."

15         I mean, it is what it is.

16         MR. NOLAN:  Mr. Price may not have seen it.  It was

17  available to Mattel.  I'll represent to you that they took

18  pictures of it --

19         MR. PRICE:  This is what I got today in my exhibit

20  book.  We're supposed to be given exhibits.

21         THE COURT:  The front and back cover can come in.

22  That's fine.

23         MR. NOLAN:  Thank you.

24         (Whereupon, side-bar proceedings were concluded.)

25         MR. NOLAN:  Your Honor, we'd offer Exhibit 18819, the

EXHIBIT 2
PAGE 59

Friday, August 15, 2008                    Trial Day 36, morning session

1    front and back cover.

2            THE COURT:  Very well.

3            It's in evidence.

4            (Exhibit 18819 received.)

5            MR. NOLAN:  Let's put that on the screen.

6    BY MR. NOLAN:

7    Q    Mr. Larian, are those Carter Bryant's concept drawings?

8            MR. PRICE:  I object.  This on the screen doesn't

9    show the entire cover.  You can't read --

10           THE COURT:  What's the objection?

11           MR. PRICE:  The picture doesn't show everything on

12   the cover, so I object to that display.

13           THE COURT:  Can we enhance that at all?

14           MR. NOLAN:  I think it's just a reproduction copy.  I

15   apologize for the poor quality.

16           THE COURT:  Let's proceed, Counsel.

17           MR. NOLAN:  Thank you.

18   BY MR. NOLAN:

19   Q    I want to turn to the name *Bratz*.

20   A    I don't think I answered your last question.

21   Q    Were Carter Bryant's concept drawings on the cover?

22   A    These are not Carter Bryant's concept drawings.

23   Q    Mr. Larian, I want to turn to the name *Bratz*.

24           You understand that the jury has found that Carter

25   Bryant conceived of the idea of Bratz while employed at Mattel?

EXHIBIT 2
PAGE 40

7598

```
 1   Do you understand that?

 2   A    Yes.

 3   Q    Mr. Larian, at some point in time, were you sued for the

 4   use of the name Bratz?

 5            MR. PRICE:  Objection.  Relevance; move to strike.

 6            THE COURT:  What does this go to, Counsel?

 7            MR. NOLAN:  It goes to intentional acts, conduct.

 8            THE COURT:  You're asking if --

 9            MR. NOLAN:  And in the ultimate acquisition of the

10   name rights.

11            THE COURT:  Let's lay a foundation for that.  I'm

12   going to sustain it for the time being.

13            MR. NOLAN:  Lay a foundation, you said?

14            THE COURT:  Yes.  I guess I'm not seeing how this

15   goes to -- I'm going to sustain the objection for the time

16   being.

17   BY MR. NOLAN:

18   Q    Mr. Larian, when you started to use the name Bratz, did

19   you know that Carter Bryant had come up with the name Bratz

20   while employed at Mattel?

21   A    No.

22   Q    Did you have any reason to believe the name Bratz was

23   confidential to Mattel?

24   A    No.

25   Q    Sometime after launching the name Bratz, associated with
```

EXHIBIT 2 PAGE 61

Friday, August 15, 2008                    Trial Day 36, morning session

1    the 3-D dolls, did you come to learn that the name *Bratz* was

2    actually owned by another person?

3              MR. PRICE:  Objection.  Move to strike; irrelevant.

4              THE COURT:  As phrased.

5              Sustained.

6    BY MR. NOLAN:

7    Q    At some point in time, Mr. Larian, did you acquire,

8    through the purchase of money, the right to use the name *Bratz*?

9              MR. PRICE:  Objection.  Irrelevant.  Move to strike.

10             THE COURT:  Counsel, side-bar on this.

11             (Whereupon, the following proceedings

12             Were held at side-bar:)

13             THE COURT:  Where are we going with this?

14             Who sued who for the name *Bratz*?

15             MR. NOLAN:  Curt Loven, trademark owner of the name

16   *Bratz*, sued Mr. Larian in a lawsuit by using the name Bratz.

17   Mr. Larian had to acquire and purchase the name.  Curt Loven

18   worked out a deal with Mr. Larian where Mr. Loven actually uses

19   the name Bratz -- they are available at Costco.

20             THE COURT:  Who's Loven?

21             MR. NOLAN:  A third party.

22             THE COURT:  So this is not Mattel?

23             MR. NOLAN:  No.  Clearly not Mattel, your Honor.

24             And they are asking for punitive damages on

25   intentional conduct on the part of Mr. Larian.  This goes to

EXHIBIT ___
PAGE ___

1    his good faith.

2            THE COURT:   It seems to, Mr. Price.

3            MR. PRICE:   Your Honor, just because you enter into a

4    settlement with someone to get rid of a pesky allegation, which

5    has nothing do with whether or not Carter Bryant came up with

6    the name Bratz.  That's the issue.  He was using Mattel's

7    confidential information.

8            THE COURT:   Mr. Larian is certainly able to testify,

9    "I did not get it from Carter Bryant, and I did not get it

10   from..."

11           MR. PRICE:   That's not what he's saying.  Bratz was

12   presented to him, that's undisputed, in September.  This is

13   after Carter Bryant gave him the Bratz concept.

14           THE COURT:   Then somebody else came along and sued

15   him for --

16           MR. PRICE:   Yes.

17           THE COURT:   How is that irrelevant?

18           MR. NOLAN:   It goes to his good faith belief he was

19   using confidential information at Mattel or whether or not it

20   was even proprietary.  Mattel could have no claim -- could not

21   be harmed by the use of the name *Bratz*, because it wasn't even

22   available to the public, to Mattel.

23           THE COURT:   That's a different argument.

24           But getting back to the one you just made, let's

25   assume Mr. Larian stole the name *Bratz* from Mattel by getting

EXHIBIT 2
PAGE 63

7601

1    it from Carter Bryant; somebody else sues; he settles with

2    them.  How does that show that he did or did not steal it from

3    Mattel to begin with, given the time frame that has now been

4    exchanged.

5            MR. NOLAN:  It goes to whether or not he was acting

6    intentionally.

7            THE COURT:  How?  What's the argument?  How do you

8    make that argument?

9            MR. NOLAN:  If you have damages -- the purpose is if

10   it injured Mattel, and how could it be --

11           THE COURT:  That's a separate argument.  We'll get to

12   that.  Go back to this.  It doesn't explain the damages.

13           MR. NOLAN:  It now goes to the question of whether or

14   not he should be punished for use of the name *Bratz* when he

15   didn't know that it was being claimed -- some proprietary

16   information.  It couldn't be proprietary to Mattel because they

17   didn't own it.  They did not have a right to that name at that

18   time.

19           THE COURT:  That Mattel did not have a right to that

20   name?

21           MR. NOLAN:  They could not have used the name without

22   acquiring the rights from Curt Loven.

23           THE COURT:  That's a separate issue.

24           You can ask Mr. Larian all you want about whether he

25   obtained this from Carter Bryant, whether he took this from

EXHIBIT 2
PAGE 464

Friday, August 15, 2008                    Trial Day 36, morning session

1  Mattel, when he intentionally took it from Mattel.  But I'll

2  sustain the objection on this lawsuit.

3         **MR. ZELLER:**  One thing to also clarify in terms of

4  the Loven suit, there's also 403 problems because of the fact

5  there's no showing.  And as far as I know about that case from

6  the public file, they are not comparable products.  As

7  Mr. Nolan alluded to, we're talking about bed clothing, or

8  pajamas; that's what is at issue as to what MGA was sued over.

9  The circumstances of it, all that is going to cause multiple

10  layers of confusion.

11         **THE COURT:**  I'll sustain the objection.

12         **MR. NOLAN:**  The clock is running, Your Honor.  I want

13  to get back to the question.

14         **MR. PRICE:**  Move to strike the answer.

15         **THE COURT:**  Yes.

16         (Whereupon, side-bar proceedings were concluded.)

17         **THE COURT:**  Members of the jury, please disregard the

18  testimony about the trademark lawsuit.

19  **BY MR. NOLAN:**

20  Q    Mr. Larian, did you ever, before the return of the jury's

21  verdict, ever know that Carter Bryant conceived the name *Bratz*

22  while an employee at Mattel?

23  A    No.

24  Q    If you had known that, would you have ever used the name

25  *Bratz*?

EXHIBIT 2
PAGE 45

1    A    No.

2    Q    Please turn to Exhibit 18844 through 45, 001 through 045.

3    A    I have it.

4    Q    Do you recognize these?

5    A    Yes.

6    Q    What are they, sir?

7    A    These are checks that we paid for taxes to I.R.S.

8    Q    Is MGA an "S" corporation?

9    A    Yes.

10   Q    Are these the checks that were paid and distributed to you

11   in order to pay U.S. taxes?

12   A    That's correct.

13           MR. NOLAN:  Your Honor, we'd offer Exhibits 18844

14   -001 through 045.

15           THE COURT:  Any objection?

16           MR. PRICE:  Yes, Your Honor.  Transparency.

17           THE COURT:  I'm sorry?

18           MR. PRICE:  I'm trying to use a code word, so as not

19   to use a speaking objection.

20           THE COURT:  I assume you'll address those later,

21   Counsel?

22           MR. PRICE:  Objection.  Production issue.

23           THE COURT:  What exhibit number?

24           THE WITNESS:  18844.

25           MR. PRICE:  18844.

EXHIBIT 66 PAGE 2

1          **THE COURT:**  Let me see you all at side-bar, Counsel.

2          (Whereupon, the following proceedings

3          Were held at side-bar:)

4          **THE COURT:**  What's your concern?

5          **MR. PRICE:**  My concern is, these were produced to us

6    after opening statements of 1-B, tax returns.  Any examination

7    in the case of discovery on those documents, they weren't

8    produced until after we both sat down; so it's sandbagging.

9          **MR. ROTH:**  These documents are confirmatory of

10   payments that are set out in the schedule that was produced

11   from Mattel.

12         **THE COURT:**  So you produced the schedule which has

13   all these documents; these are just the checks that back that

14   up?

15         **MR. ROTH:**  These checks back that up, yes, the

16   payments.

17         **MR. PRICE:**  We're not disputing that the schedule

18   shows the payments --

19         **MR. ZELLER:**  The Court will recall we had issues over

20   their production of tax credit.  They refused to provide it.

21   We did not have any opportunity for discovery on these things.

22   They produced it late.  Our position was at that time, and it

23   still remains, that having failed to produce it, they should

24   not get credit for it now.  And we have had no opportunity to

25   test any of this in discovery.  That was the choice they made,

EXHIBIT 67
PAGE 2

1  and we made that point even at the time, that if they were not

2  going to produce that tax information, then they should not

3  be --

4          **THE COURT:**  Did you produce the documents they

5  requested?

6          **MR. ROTH:**  We produced the schedules which show

7  disbursements made to Mr. Larian for purposes of paying his

8  taxes.

9          **MR. NOLAN:**  The motion practice for production

10  regarding production of the tax returns, I think was both

11  before you and an appeal from the magistrate judge.

12          **THE COURT:**  Judge Infante.

13          **MR. NOLAN:**  Yes.  With respect to the actual tax

14  returns, some summaries were provided that -- they all add up

15  to the same payments; these are just the actual checks.

16          **THE COURT:**  So your position is you can't test any of

17  this?

18          **MR. ZELLER:**  That's right.  And it was produced

19  after -- I don't think there's any dispute about that -- if I'm

20  wrong about the timing of the production, certainly I would

21  take a different viewpoint; but as far as I know, as of the

22  time when the court had that motion in front of it --

23          **THE COURT:**  What is the dispute?

24          The taxes were paid.  Unless they found willful

25  infringement, the taxes could offset the damages.

EXHIBIT 48
PAGE 2

7606

1    **MR. ZELLER:**  Our point is they were taking their
2  chances by not putting that cost information in.  They
3  shouldn't get to produce it now.

4    **THE COURT:**  I understand.  What is the dispute?  Is
5  there any question that he paid these taxes?

6    **MR. ZELLER:**  We can't raise questions about it
7  because we were denied the discovery in the first instance.  We
8  put those in front of him and asked him questions:  "Are these
9  the complete..."

10    To use Mr. Price's words, there's no transparency.

11    I don't want to make it sound like we have an
12  investigation that has uncovered some activity.  The problem
13  is, they were obligated to provide discovery and allow us to
14  take discovery, and we just were not ever given that
15  opportunity.

16    **THE COURT:**  I don't have presently in mind the
17  rulings of Judge Infante on tax records, so I can't say
18  really -- you're disputing that?

19    **MR. NOLAN:**  Your Honor --

20    **THE COURT:**  What are you saying about the rules of
21  Judge Infante?

22    **MR. NOLAN:**  That our tax returns -- his tax returns,
23  his personal tax returns were not ever required to be turned
24  over.

25    We provided summaries of the relevant information

Friday, August 15, 2008                    Trial Day 36, morning session

1   from those tax returns in the form of the amount of money that

2   was being paid.  We now are just introducing the checks to

3   avoid any issue with respect to them saying that the summaries

4   are inaccurate.  Here are the checks; it adds up to the amount

5   of the summaries.

6           THE COURT:  You're saying there's something in

7   Judge Infante's ruling or this Court's ruling which suggests

8   that if he didn't turn over the tax returns, that you weren't

9   going to get the tax payments in?

10          MR. ZELLER:  No.  I was stating what our position was

11  in that we made it very clear that we were not being given that

12  transparency.

13          THE COURT:  That's not part of any ruling at this

14  point.

15          MR. ZELLER:  What I'm saying is, all of that is post

16  all of that, post-discovery.  We were not given the opportunity

17  to take discovery on it.  That's our point.

18          MR. ROTH:  They were given the opportunity.  They had

19  the schedules with the distribution amounts.  Their expert

20  relied on that.  They had taxation in the deposition.

21          THE COURT:  You're representing the amounts here are

22  consistent with the amounts that were submitted through his

23  expert?

24          MR. ROTH:  Yes.  They are consistent with those

25  amounts.

EXHIBIT
PAGE 20

2

Friday, August 15, 2008                    Trial Day 36, morning session

1      **THE COURT:**  Is there any reason why we can't just use

2  what was produced already?

3      **MR. NOLAN:**  We were concerned they would be arguing

4  that we didn't put the actual checks in.

5      **THE COURT:**  Your expert did take this into account in

6  the tax payments; that's in evidence already.

7      **MR. PRICE:**  I think our expert said as a matter of

8  law the tax payments should not be deducted because it's a tax

9  credit.

10      **THE COURT:**  But you didn't do that calculation.

11      **MR. PRICE:**  Right.  But we're not --

12      **THE COURT:**  If the jury finds it's willful, it comes

13  out anyway; if they don't find it's willful, it's relevant.

14  It's been produced.  Come up with a stipulation.  Let's do it

15  by stipulation on the total amount.  Otherwise, they come in.

16      (Whereupon, side-bar proceedings were concluded.)

17      **THE COURT:**  Ladies and gentlemen of the jury, the way

18  we're going to deal with these tax payments is, the parties are

19  going to work on a stipulation on the amount, instead of

20  getting into the actual documents themselves; that will avoid a

21  lot of problems.  So we'll see how that all works out.

22      Counsel, you may proceed.

23  BY MR. NOLAN:

24  Q    Mr. Larian, the last document I want to show you is

25  Exhibit 18837.

EXHIBIT 2
PAGE 21

Friday, August 15, 2008          Trial Day 36, morning session

7609

```
 1              Do you have that, sir?
 2  A    Yes, I do.
 3  Q    Do you know what these are?
 4  A    Yes, I do.
 5  Q    What are they?
 6  A    This is a projection income statement for the year 2008.
 7  Q    For whom?
 8  A    For our company, MGA Entertainment.
 9  Q    And when are they done?
10  A    These were done in March of this year.
11  Q    Now, in the lower right-hand corner, there's a print date
12  of August.
13              Do you see that?
14  A    Yes, I do.
15  Q    That print date is just a date that is put on
16  automatically when you print it off of the electronic version;
17  correct?
18  A    Every time you print something from the computer, it gives
19  a time stamp on the bottom when it was printed.
20  Q    So these projections were done in March?
21  A    Correct.
22  Q    Of 2008; correct?
23  A    2008.
24       MR. NOLAN:   Your Honor, we'd offer 18837.
25       MR. PRICE:   Objection.  Lacks foundation; relevance.
```

EXHIBIT 2
PAGE 72

Friday, August 15, 2008                Trial Day 36, morning session

1        **THE COURT:** Lay a further foundation, Counsel.

2        **MR. NOLAN:** Your Honor, in light of the time, I'm

3  going to move on and see if we can just handle it by

4  stipulation.

5        **THE COURT:** Very well.

6        **MR. NOLAN:** Thank you.

7  BY MR. NOLAN:

8  Q    Mr. Larian, do you understand that Mattel is asking this

9  jury to award punitive damages against you individually?

10  A    I do.

11  Q    And do you understand that Mattel is arguing that you

12  acted with malice and oppression and fraud?

13        Do you understand that?

14  A    I understand that's what they contend, yes.

15  Q    Sir, when you met with Carter Bryant on September 1, 2000,

16  through the time that he left Mattel in October 20th, did you

17  ever intend to harm Mattel in meeting with Mr. Bryant?

18  A    Absolutely not.

19  Q    Did you ever intend to cause injury to Mattel in meeting

20  with Carter Bryant during that period of time?

21  A    Absolutely not.

22  Q    Did you ever intend to prevent Mattel from introducing

23  into the marketplace fashion dolls that could compete with

24  Bratz?

25  A    No.

EXHIBIT
PAGE 73

7611

```
 1              MR. PRICE:  Objection.  Irrelevant.  Move to strike.
 2              MR. NOLAN:  Element of harm.
 3              THE COURT:  Overruled.
 4         You may answer.
 5              THE WITNESS:  No.
 6    BY MR. NOLAN:
 7    Q    Did Mattel come out with a fashion doll called My Scene?
 8    A    They did.
 9    Q    Did you compete with My Scene?
10              MR. PRICE:  Objection.  Irrelevant.
11              THE COURT:  Sustained.
12    BY MR. NOLAN:
13    Q    Mr. Larian, when you were meeting with Carter Bryant, did
14    you believe that he was presenting to you confidential
15    information belonging to Mattel?
16    A    Absolutely not.
17    Q    If you knew that, sir, would we be sitting here in court
18    today?
19    A    No.
20              MR. NOLAN:  No further questions.
21              THE COURT:  Cross-examination.
22              CROSS-EXAMINATION
23    BY MR. PRICE:
24    Q    Mr. Larian, is it your testimony today that you did not
25    knowingly induce Carter Bryant to share Mattel's confidential
```

EXHIBIT 2
PAGE 74

1  information with MGA?  Is that your testimony?

2  A    I don't understand your question.  Can you please rephrase

3  it.

4  Q    Is it your testimony you did not knowingly cause Carter

5  Bryant to share Mattel's confidential information with MGA?  Is

6  that your testimony?

7  A    Yes.

8  Q    So again, I think Mr. Nolan said you --

9        Do you understand there's a punitive damages element

10  of this phase?

11        Do you understand that?

12  A    I'm sorry.

13  Q    You understand there is a punitive damages issue in this

14  phase of the trial; correct?

15  A    Yes.

16  Q    And you understand that one of the issues is whether or

17  not you have sort of learned that you'll behave differently as

18  a result of the jury's verdict?  Do you understand that?

19  A    I don't understand your question.

20  Q    Do you understand one of the issues of punitive damages is

21  whether or not you will be deterred in the future from the

22  conduct which the jury has found has taken place?

23  A    Yes.

24  Q    And so despite the jury's verdict, you still maintain that

25  you did not knowingly cause Carter Bryant to share confidential

EXHIBIT
PAGE 25 2

Friday, August 15, 2008                    Trial Day 36, morning session

1  information with you and MGA; correct?

2  A    In 2000, when he came to show us those drawings, we did

3  not know that he had done those at Mattel, and we went further

4  to verify, through his lawyer and our lawyers, that he had not

5  done that.

6         Had I known what I know now, I would have never let

7  him in my office.

8  Q    So you're maintaining that same position despite the

9  jury's verdict; correct?

10 A    I respect the jury's verdict.

11 Q    And you recall that in phase -- first, do you recall the

12 following testimony -- and I'll put it up -- trial testimony at

13 page 2251, Line 23 to 2252, line six.  "Would it have been a

14 problem if Carter Bryant had created or made any of his

15 drawings while employed by Mattel, in your view?"

16         ANSWER:   "No."

17         QUESTION:   "That was your testimony under oath as of

18 the date of your deposition; correct?"

19         ANSWER:   "As it is today, yes."

20         **THE WITNESS:**   Yes.  But you did not show me the

21 previous five pages of that deposition.

22 **BY MR. PRICE:**

23 Q    You told the jury that you did not know Carter Bryant came

24 up with the name *Bratz* while he was at Mattel; correct?

25 A    Correct.

EXHIBIT 2 PAGE 24

7614

1  Q    And if you would look at the first page of Exhibit 302,

2  which the jury has seen.

3         This is a presentation Mr. Bryant made to you when he

4  met with you; correct?

5  A    Correct.

6  Q    You also said that prior to Mr. Bryant, you had already

7  begun investigating the tween market.

8         Do you recall that testimony?

9  A    I did.

10 Q    But you have not presented any documentation, any e-mail,

11 any note, anything, to support that statement, have you, sir?

12 A    We tried, but you objected.

13 Q    Prior to meeting with Carter Bryant in September, you had

14 not found an idea that you liked for a fashion doll; is that

15 true?

16 A    True.

17 Q    Sir, after Carter Bryant met with you, from that point on,

18 MGA was focused just on Bratz; right?

19 A    I'm sorry?

20 Q    The focus of MGA was just on Bratz?

21 A    No.

22 Q    MGA didn't really attempt to diversify, did it?

23 A    It did.

24 Q    You mean MGA spent some significant efforts trying to

25 produce products that were not related to Bratz?

EXHIBIT 2
PAGE 22

Friday, August 15, 2008                    Trial Day 36, morning session

1   A     Yes.

2   Q     Significant effort?

3         Come on, how much of MGA's time was spent on products

4   that did not relate to Bratz in any way?

5         MR. NOLAN:  Objection, Your Honor.  Relevance.

6         THE COURT:  Rephrase, Counsel.

7   BY MR. PRICE:

8   Q     After you met with Carter Bryant, going forward, what

9   percentage of MGA's efforts were focused on anything other than

10  Bratz?

11  A     I cannot put a percentage on it because it was fluid; it

12  was from 2001 until now, so you have to tell me an exact date,

13  and I can tell you.

14  Q     Okay.

15        Year 2001.

16  A     Yes.

17  Q     What percentage was nonBratz effort?

18  A     I would say 50 percent.

19  Q     50 percent.

20        In 2002, what percentage was nonBratz effort?

21  A     About at least 50 percent.

22  Q     50?

23  A     Yes.

24        I'm estimating these numbers.

25  Q     2003, how much of MGA's efforts was not related to Bratz

EXHIBIT 2
PAGE 78

7616

1  in any way?

2  A    I cannot judge -- I cannot just put a number.  I don't

3  remember.

4  Q    Estimate.

5  A    30, 40, 50 percent.

6  Q    2004?

7  A    Probably the same.

8  Q    30, 40, 50 percent?

9  A    Yes.

10  Q    2005?

11  A    Same.

12  Q    30, 40, 50 percent?

13  A    Yes.

14  Q    Closer to 50 or closer to 30?

15  A    Somewhere in that range.

16  Q    2006?

17  A    2006, we put more effort in other brands.

18  Q    So in 2006, how much of MGA's efforts was in products

19  totally unrelated to Bratz?

20  A    I would say about 60, 70 percent.

21  Q    So 60, 70 percent of time and effort went to products

22  other than Bratz, you're saying.

23  A    Yes.

24  Q    Okay.

25        How about 2007?

EXHIBIT 2
PAGE 79

Friday, August 15, 2008                    Trial Day 36, morning session

```
 1  A     Again, a lot of time went into nonBratz.

 2  Q     About how much?

 3  A     About 50, 60 percent.

 4  Q     You realize, of course, that your damages expert has

 5  assumed that only 20 percent of MGA's overhead costs should go

 6  to nonBratz products?  You understand that, don't you?

 7  A     I have not read the damage expert report.

 8  Q     Anyway, that would be wrong, because what you've just told

 9  us is that for every year, between 30 and 70 percent of MGA's

10  general overhead costs should be allocated to nonBratz

11  products; right?

12  A     That was not your question, and that was not my testimony.

13  Q     Well, that's how much MGA's effort went, you say, to

14  nonBratz products; 50 percent some years; 30 to 50 percent some

15  years; up to 60 percent other years; right?

16  A     Up to 60 or 70 in other years in other brands, such as

17  Little Tikes, such as Rescue Petz; other products that we have.

18  Q     I said totally nonBratz related.

19        You understood my question, didn't you?

20  A     Little Tikes and Rescue Petz are not Bratz related.

21        MR. PRICE:  No further questions.

22                   REDIRECT EXAMINATION

23  BY MR. NOLAN:

24  Q     Mr. Larian, on this last series of questions, have you

25  undertaken a study of the allocation of expenses between the
```

EXHIBIT
PAGE
82

1  various product lines that were being manufactured at the same

2  time Bratz was being manufactured?

3  A    No.

4  Q    Is it true that during the time you were working on Bratz

5  at MGA, there were other products also being manufactured at

6  MGA?

7  A    Yes.

8  Q    And the production and the support of those other products

9  also caused expenses to be attached to those efforts; correct?

10  A    Absolutely.

11  Q    Mr. Larian, Mr. Price has showed a deposition portion, and

12  I want to ask you --

13       **MR. NOLAN:**  Can we have that up, Aaron.

14  **BY MR. NOLAN:**

15  Q    QUESTION:  "So would it have been a problem if Carter

16  Bryant had created or made any of these drawings while employed

17  by Mattel, in your view?"

18       ANSWER:  "No."

19       QUESTION:  "Why not?"

20       ANSWER:  "Because I don't think, whether it's MGA or

21  Mattel, that we own the people, especially the creative people,

22  forever."

23       What did you mean by that answer, sir?

24  A    What I meant is that if somebody has said to you that they

25  came up with something in 1998, which is what Carter Bryant

EXHIBIT
PAGE
2
87

Friday, August 15, 2008                Trial Day 36, morning session

1    said, and then later on, he was working on the weekends and in

2    the evenings enhancing what he was doing, I didn't see anything

3    wrong with it.

4          And that's what we believed when he came to us, that

5    he had done these in 1998.  He represented that.  His lawyers

6    confirmed that in writing, and that's what we believed.

7          So after that -- maybe Mattel is different, but I

8    don't think I own people's evenings and nights when they are

9    not on my payroll.

10   Q    Mr. Larian, did you believe Carter Bryant when he told you

11   that he did the concept for Bratz in 1998?

12   A    Can you repeat that?

13   Q    Did you believe Carter Bryant when he told you that he did

14   the concept drawings in 1998?

15   A    I believed him, but we went further and looked into it to

16   make sure that he was telling the truth.

17   Q    Now, just prior to the portion of the deposition that they

18   showed you -- I want to put up from Page 445, Line 25 through

19   446, Line 9.

20   A    I don't have that deposition here.

21   Q    Can you see it on the screen?

22   A    Yes.  Go ahead.

23          **MR. PRICE:**  I object to this.  This is not in

24   evidence.  This was not played in Phase 1-A.

25          **MR. NOLAN:**  We're offering it now for completeness,

EXHIBIT PAGE 82

1    in light of the portions he just played.

2              THE COURT:   What page, Counsel?

3              MR. NOLAN:   Page 445, Line 25.

4              THE COURT:   Do I have the deposition here someplace?

5              Let's have a side-bar, counsel.

6              (Whereupon, the following proceedings

7              Were held at side-bar:)

8              THE COURT:   Counsel?

9              MR. NOLAN:   This is just before the portion they've

10   now played when MGA entered into the agreement with

11   Carter Bryant relating to Bratz:

12              QUESTION:   "Did you think it possible that Mattel

13   might have rights to the Carter Bryant drawings?

14              ANSWER:   "That Mattel might have -- I think we did."

15              THE COURT:   This is the part that you played?

16              MR. PRICE:   What I showed him was a transcript of the

17   prior phase of trial.  We didn't play anything new.  What I

18   showed was a transcript of the trial, when at that time they

19   played what they thought was different; so all I was saying in

20   my examination was that "you still believe what you said in the

21   first phase of the trial?"

22              I'm not playing the testimony.  I'm playing what he

23   already said at trial.

24              THE COURT:   Fair enough.  It needs to be

25   characterized properly.

EXHIBIT 2
PAGE 83

1      Is there any reason why he can't play this, from your

2   perspective?

3          MR. PRICE:  If it was going to be played in context,

4   it should have been done in the first phase of the trial.  And

5   the jury already decided this issue.  The issue is --

6          MR. NOLAN:  This goes to the willfulness

7   characterization, and that's what they were using it for.  The

8   testimony they are referring to was actually deposition

9   testimony that was imported into 1-A.  This is a different

10  issue.  These are different elements.

11         MR. PRICE:  Plus, in 1-A, he played --

12         THE COURT:  As long as it's being characterized

13  accurately, I don't have a problem with either side bringing in

14  from 1-A; it's all the same product.  As long as it's not going

15  to unseat the jury's decision.

16         MR. PRICE:  And this is.

17         THE COURT:  All you have is liability -- I think I

18  made reference to this the other day.  Some of these issues

19  were brought up again on punitive damages, and I don't think

20  it's proper for the Court to find findings of intentional acts

21  that were required for the tort to serve as a basis for the

22  punitive damages.  It is separate.  This is not like the

23  copyright or the findings on the timing of the drawings; so I'm

24  going to give you latitude to do that.

25         I'm concerned about how this is being characterized,

EXHIBIT 2
PAGE 84

1   whether it was a transcript from 1-A or a deposition; so just

2   make that clear.   The objection is overruled.

3               (Whereupon, side-bar proceedings were concluded.)

4               **THE COURT:**   Okay, Counsel, the objection is

5.  overruled.

6               You may proceed; but why don't you clarify for the

7   record what we discussed.

8               **MR. NOLAN:**   Your Honor, I'm now displaying from the

9   same deposition transcript conducted March 26, 2008, at

10  Page 445, Line 25, running over to Line 9, on Page 446.

11  **BY MR. NOLAN:**

12  Q    Mr. Larian, you recall that your testimony was taken on

13  days in depositions; correct?

14  A    Yes.

15  Q    And this portion of the deposition is in the same session

16  where the testimony that Mr. Price showed you earlier; is that

17  correct?

18  A    Yes.

19  Q    That question was asked of you, and that was your answer

20  given in the deposition on March 26, 2008.

21  A    Correct.

22  Q    Mr. Larian, has the jury verdict had an impact on you?

23  A    Yes, it has.

24  Q    Has it had an impact on MGA?

25  A    Yes, it has.

EXHIBIT 2
PAGE 85

Friday, August 15, 2008                    Trial Day 36, morning session

1          **MR. NOLAN:**   Nothing further.

2          **THE COURT:**   We're going to take a break at this time,

3     and we'll resume with further examination after the break.

4          (Whereupon, jurors depart courtroom.)

5          **THE COURT:**   Mr. Price, you said you had another

6     objection to take up; or Mr. Zeller, or somebody.

7          Mr. Quinn?

8          You weren't at the side-bar.

9          **MR. QUINN:**   Your Honor, we've now gotten back into

10    what the lawyers told the lawyers and the representations that

11    were made; that subject has now been opened up.

12          In 1-A, that issue was always paired, from my

13    understanding, with the e-mails to Ms. Glazier about nine

14    months later, where Mr. Larian makes the statements that he

15    makes.

16          Now the one has been opened up, and we had multiple

17    emphatic denials from the stand from Mr. Larian that he ever

18    knew that Mr. Bryant did this work at Mattel.   In fairness now,

19    we should be able to use that e-mail to Ms. Glazier.

20          There's been a waiver here.

21          Your Honor, those two were always paired.   And the

22    Court cautioned --

23          **THE COURT:**   Let me look at the actual testimony.

24          Let me see what was displayed.

25          This is Page 445, Line 25, through Line 9 at

EXHIBIT 2
PAGE 86

1    Page 446.

2              Could I see that again.

3         **MR. NOLAN:**  Your Honor, this is the same testimony

4    that was given in 1-A repeatedly.

5         **THE COURT:**  Can you compare it to the testimony in

6    1-A?

7              That's what I asked you to clarify at side-bar.

8              Do we have that?

9         **MR. NOLAN:**  He testified on numerous occasions with

10   respect to receiving information through --

11        **THE COURT:**  It's not that I don't believe your

12   recollection, but it's been a long time for all of us.  I want

13   to see what was actually stated from 1-A.

14        **MR. NOLAN:**  Your Honor, I believe we have it on the

15   screen.  This is what -- in 1-A -- if I could play from 459,

16   Line 12, through 460, Line 3.  And then I said we would ask

17   that we continue through to Line 20.

18              "Absolutely.  Very well."

19              So we played it.

20        **THE COURT:**  That's 459, then.

21              Was 445 and 446 not played?

22        **MR. NOLAN:**  Not in the first phase of the trial.  But

23   now the issue comes up here, Your Honor, that -- the next

24   question comes up, and we asked the same thing.

25        **THE COURT:**  Let me see.

EXHIBIT 2
PAGE 87

1     **MR. NOLAN:**  The question was, "Does the fact that

2  Carter Bryant's lawyer represented to MGA that Carter Bryant

3  had done the drawings in 1998 in Missouri when he was not a

4  Mattel employee have any significance to you at that time?"

5           ANSWER:  "It confirmed what Carter Bryant had told

6  us."

7           QUESTION:  "Did you find some comfort in this?"

8           ANSWER:  "Of course."

9           QUESTION:  "And why was that?"

10          ANSWER:  "Because, you know, I hoped the lawyers in

11  court, in your profession, tell the truth."

12          We did not make reference --

13     **THE COURT:**  That came in in 1-A; is that accurate?

14     **MR. NOLAN:**  Yes.  And there was no objection to it at

15  the time, Your Honor.

16     **THE COURT:**  I'm going to take a recess here.  I'm

17  going to make sure we have a clear record before us.  I'll give

18  you some time amongst yourselves.

19          Ms. Aguiar, you had something entirely unrelated to

20  any of this?

21     **MS. AGUIAR:**  If Your Honor wouldn't mind giving us a

22  few minutes before the jury comes back in.  I think in terms of

23  an efficient use of the jury's time, our next witness is going

24  to be the custodian of records.  And if we could deal with some

25  of those issues regarding those documents, because I know

EXHIBIT 2
PAGE 88

1  there's going to be a series of objections regarding relevance

2  and whatnot.  If we could do that prior to --

3          **THE COURT:**  Could you hand those documents up to the

4  Court, so I can look at them during the recess?

5          **MS. AGUIAR:**  We can give you that binder, Your Honor;

6  and Mr. Nolan and I will talk about whether it's the next

7  witness or the one after that.  But we do just want to make

8  sure that the issues are dealt with, rather than having the

9  jury sit there for 20 minutes while we go through the

10  documents.

11          **THE COURT:**  I agree.

12          **MS. AGUIAR:**  Okay.  Thank you.

13          **THE COURT:**  These are the documents?

14          **MS. AGUIAR:**  Yes.

15          **THE COURT:**  I'll take a look at this.

16          Let's figure out what came in in 1-A, because I do

17  recall the issue and how we -- based on what came in in 1-A,

18  the Court was unprepared to go to the e-mail.

19          I understand your argument now, Mr. Quinn, is that

20  we've gone further and that we've now --

21          **MR. QUINN:**  Exactly.  The testimony that prior to the

22  jury's verdict in 1-A, Mr. Larian says, "I don't -- punitive

23  damages don't need to be imposed.  I did not know prior to the

24  jury's verdict in 1-A that Mr. Bryant had done this at Mattel."

25          That's his testimony.

1        The e-mail to Ms. Glazier says what it says.

2        **THE COURT:**   I still want to see what was precisely

3   before the jury in 1-A and what the Court's previous ruling

4   was.

5            Let me take a break here.

6        **MS. AGUIAR:**   In your binder, I just want you to know

7   that the "A" documents are the ones that we redacted; so I

8   didn't want you to see the unredacted one and get upset.

9        **THE COURT:**   Thank you, Counsel.

10           (Whereupon, a brief recess was held.)

11           (Morning session is concluded; subsequent

12            further morning proceedings are sealed.)

13

14

15

16

17                          CERTIFICATE

18

19   I hereby certify that pursuant to section 753, title 28, united
     states code, the foregoing is a true and correct transcript of
20   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
21   conformance with the regulations of the judicial conference of
     the united states.

22

23   _____          _____
     THERESA A. LANZA, CSR, RPR                          Date
24   FEDERAL Official Court Reporter

25

EXHIBIT 2
PAGE 90

# EXHIBIT 3



LIBRARY OF CONGRESS

*Copyright Office*
*of the United States*
WASHINGTON, D.C.

**THIS IS TO CERTIFY** that the attached additional certificate is a claim of copyright for the work entitled **YASMIN DRAWING** registered under number **VA 1-218-491**.

**THIS IS TO CERTIFY ALSO** that the attached photocopies are a true representation of the work entitled **YASMIN DRAWING** deposited in the Copyright Office on December 22, 2003 registered under number **VA 1-218-491**.

**IN WITNESS WHEREOF**, the seal of this Office is affixed hereto on May 17, 2004.

Marybeth Peters
Register of Copyrights

By:   Tracie M. Coleman
      Head
      Certifications and Documents
      Section
      Information and Reference
      Division

Use of this material is governed by the U.S. copyright law 17 U.S.C. 101 et seq.



(N)π EXHIBIT 5/1
Deponent ARMSTRONG
Date 7/18/07 Rptr ACC
www.DEPOBOOK.COM

M 0110198

EXHIBIT 3
PAGE 91

Additional Certificate (17 U.S.C. 706)
## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

**VA 1-218-491**

EFFECTIVE DATE OF REGISTRATION

**DEC 22 2003**
Month        Day        Year

---

**DO NOT WRITE ABOVE THIS LINE  IF YOU NEED MORE SPACE  USE A SEPARATE CONTINUATION SHEET**

**1**
Title of This Work ▼

YASMIN Drawing

NATURE OF THIS WORK ▼ See instructions

color drawing

Previous or Alternative Titles ▼

Publication as a Contribution  If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared  Title of Collective Work ▼

If published in a periodical or serial give  Volume ▼        Number ▼        Issue Date ▼        On Pages ▼

---

**2**
NAME OF AUTHOR ▼

**a** Carter Bryant

DATES OF BIRTH AND DEATH
Year Born ▼        Year Died ▼

**NOTE**

Under the law, the author of a "work made for hire" is generally the employer, not the employee (see instructions) For any part of this work that was "made for hire" check "Yes" in the space provided give the employer (or other person for whom the work was prepared) as "Author" of that part and leave the space for dates of birth and death blank

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of    U S A
     Domiciled in

Was This Author's Contribution to the Work
Anonymous?      ☐ Yes   ☑ No
Pseudonymous?   ☐ Yes   ☑ No
If the answer to either of these questions is "Yes," see detailed instructions

Nature of Authorship  Check appropriate box(es)  See instructions
☐ 3 Dimensional sculpture        ☐ Map                  ☐ Technical drawing
☑ 2 Dimensional artwork          ☐ Photograph           ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design       ☐ Architectural work

**b** Name of Author ▼

Dates of Birth and Death
Year Born ▼        Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of
     Domiciled in

Was This Author's Contribution to the Work
Anonymous?      ☐ Yes   ☐ No
Pseudonymous?   ☐ Yes   ☐ No
If the answer to either of these questions is "Yes," see detailed instructions

Nature of Authorship  Check appropriate box(es)  See instructions
☐ 3 Dimensional sculpture        ☐ Map                  ☐ Technical drawing
☐ 2 Dimensional artwork          ☐ Photograph           ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design       ☐ Architectural work

---

**3**
**a** Year in Which Creation of This Work Was Completed
1998
This information must be given in all cases
Year in all cases

**b** Date and Nation of First Publication of This Particular Work
Complete this information ONLY if this work has been published
Month February   Day 12   Year 2001
Nation U.S.A.

---

**4**
COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼

MGA Entertainment Inc  16730 Schoenborn Street
North Hills CA 91343 6122

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2 give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

Assignment

APPLICATION RECEIVED
**DEC 22 2003**
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
**DEC 22 2003**
FUNDS RECEIVED

---

**MORE ON BACK ▶**   Complete all applicable spaces (numbers 5-9) on the reverse side of this page
See detailed instructions   Sign the form at line 8

DO NOT WRITE HERE
Page 1 of 2 pages

M 0110199

EXHIBIT 3
PAGE 92



| EXAMINED BY | | FORM VA |
|---|---|---|
| CHECKED BY | | |
| ☐ CORRESPONDENCE Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE   IF YOU NEED MORE SPACE   USE A SEPARATE CONTINUATION SHEET**

**PREVIOUS REGISTRATION** Has registration for this work or for an earlier version of this work already been made in the Copyright Office?

☐ Yes ☑ No If your answer is Yes why is another registration being sought? (Check appropriate box) ▼

a ☐ This is the first published edition of a work previously registered in unpublished form

b ☐ This is the first application submitted by this author as copyright claimant

c ☐ This is a changed version of the work as shown by space 6 on this application

If your answer is Yes give Previous Registration Number ▼        Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work complete only 6b for a compilation

a **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates ▼

**6**

a
See instructions before completing this space

b **Material Added to This Work** Give a brief general statement of the material that has been added to this work and in which copyright is claimed ▼

b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office give name and number of Account

Name ▼        Account Number ▼

**7**

a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent Name/Address/Apt/City/State/ZIP ▼

Larry W McFarland  Keats McFarland & Wilson LLP
9720 Wilshire Boulevard Penthouse Suite
Beverly Hills California 90212

b

Area code and daytime telephone number     ( 310 ) 248 3830        Fax number     ( 310 ) 860 0363

Email   lmcfarland@kmwlaw com

**CERTIFICATION\*** I the undersigned hereby certify that I am the

check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of   MGA Entertainment Inc
Name of author or other copyright claimant or owner of exclusive right(s) ▲

**8**

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge

Typed or printed name and date ▼ If this application gives a date of publication in space 3 do not sign and submit it before that date

Larry W McFarland        Date   December 16 2003

Handwritten signature (X) ▼

X _[signature]_

| Certificate will be mailed in window envelope to this address | Name ▼ Larry W McFarland  Keats McFarland & Wilson LLP |
|---|---|
| | Number/Street/Apt ▼ 9720 Wilshire Boulevard Penthouse Suite |
| | City/State/ZIP ▼ Beverly Hills California 90212 |

**9**

Complete all necessary spaces
Sign your application in space 8

• Application form
• Nonrefundable filing fee in check or money order payable to Register of Copyrights
• Deposit material

MAIL TO
Library of Congress
Copyright Office
101 Independence Avenue  S E
Washington D C  20559-6000

17 U S C § 506(e) Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409 or in any written statement filed in connection with the application shall be fined not more than $2,500

Rev June 2002—20 000  Web Rev June 2002  ⊕ Printed on recycled paper        U S Government Printing Office 2000-461 113/20 021

M 0110200

EXHIBIT 3
PAGE 93

VA 1-218-491

M 0110201

EXHIBIT 3
PAGE 94





M 0110202

EXHIBIT 3
PAGE 95



LIBRARY OF CONGRESS

*Copyright Office*
*of the United States*

WASHINGTON, D.C.

**THIS IS TO CERTIFY** that the attached additional certificate is a claim of copyright for the work entitled **SASHA DRAWING** registered under number **VA 1-218-488**.

**THIS IS TO CERTIFY ALSO**, that the attached photocopies are a true representation of the work entitled **SASHA DRAWING** deposited in the Copyright Office on December 22, 2003 registered under number **VA 1-218-488**.

**IN WITNESS WHEREOF**, the seal of this Office is affixed hereto on May 17, 2004.

Marybeth Peters
Register of Copyrights

*Tracie M. Coleman*

By:   Tracie M. Coleman
Head
Certifications and Documents
Section
Information and Reference
Division

Use of this material is governed by the U. S. copyright law 17 U.S.C. 101 et seq.



M 0110184

EXHIBIT **3**
PAGE **96**

Additional Certificate (17 U.S.C. 706)
## Certificate of Registration



This certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

**VA 1-218-488**

EFFECTIVE DATE OF REGISTRATION

DEC 22 2003

Month    Day    Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**
Title of This Work ▼
SASHA Drawing

NATURE OF THIS WORK ▼ See Instructions
color drawing

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

**2**

NAME OF AUTHOR ▼
a    Carter Bryant

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of ___ U.S.A.
     Domiciled in ___

Was This Author's Contribution to the Work
Anonymous?    ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture    ☐ Map           ☐ Technical drawing
☑ 2-Dimensional artwork      ☐ Photograph    ☐ Text
☐ Reproduction of work of art ☐ Jewelry design ☐ Architectural work

NAME OF AUTHOR ▼
b

Dates of Birth and Death
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of ___
     Domiciled in ___

Was This Author's Contribution to the Work
Anonymous?    ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture    ☐ Map           ☐ Technical drawing
☐ 2-Dimensional artwork      ☐ Photograph    ☐ Text
☐ Reproduction of work of art ☐ Jewelry design ☐ Architectural work

NOTE
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was made for hire, check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**3**
a    Year in Which Creation of This Work Was Completed    1998
This information must be given in all cases.

b    Date and Nation of First Publication of This Particular Work
Complete this information ONLY if this work has been published.
Month February    Day 12    Year 2001
U.S.A.    Nation

**4**
COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼
MGA Entertainment Inc   16730 Schoenborn Street
North Hills CA 91343-6122

APPLICATION RECEIVED
DEC 22 2003
ONE DEPOSIT RECEIVED
TWO DEPOSITS RECEIVED
DEC 22 2003
FUNDS RECEIVED

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼
Assignment

See instructions before completing this space.

DO NOT WRITE HERE
OFFICE USE ONLY

---

MORE ON BACK ▶  Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
See detailed instructions.    Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

M 0110185

EXHIBIT  3
PAGE  97

VA 1-218-488



M 0110186

EXHIBIT 3

PAGE 96



M 0110187
EXHIBIT 3
PAGE 99



LIBRARY OF CONGRESS

*Copyright Office*
*of the United States*

WASHINGTON, D.C.

**THIS IS TO CERTIFY** that the attached additional certificate is a claim of copyright for the work entitled **JADE DRAWING** registered under number **VA 1-218-487**.

**THIS IS TO CERTIFY ALSO** that the attached photocopies are a true representation of the work entitled **JADE DRAWING** deposited in the Copyright Office on December 22, 2003 registered under number **VA 1-218-487**.

**IN WITNESS WHEREOF**, the seal of this Office is affixed hereto on May 17, 2004.

Marybeth Peters
Register of Copyrights

By:   Tracie M. Coleman
Head
Certifications and Documents
Section
Information and Reference
Division

Use of this material is governed by the U. S. copyright law 17 U.S.C. 101 et seq.

Δ π EXHIBIT _505_
Deponent _ARMSTRONG_
Date _7/16/07_ Rptr. _ACC_
WWW.DEPOBOOK.COM

EXHIBIT **3**
PAGE **100**

M 0110179

Additional Certificate (17 U.S.C. 706)
## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

VA 1-218-487

EFFECTIVE DATE OF REGISTRATION

DEC 22 2003

Month       Day       Year

---

DO NOT WRITE ABOVE THIS LINE IF YOU NEED MORE SPACE USE A SEPARATE CONTINUATION SHEET

**1**

Title of This Work ▼

JADE Drawing

NATURE OF THIS WORK ▼ See instructions

color drawing

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical serial or collection give information about the collective work in which the contribution appeared Title of Collective Work ▼

If published in a periodical or serial give Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

**2**

**NOTE**

Under the law the author of a work made for hire is generally the employer not the employee (see instructions) For any part of this work that was made for hire check Yes in the space provided give the employer (or other person for whom the work was prepared) as Author of that part and leave the space for dates of birth and death blank

**a** NAME OF AUTHOR ▼

Carter Bryant

Was this contribution to the work a work made for hire?
☐ Yes
☑ No

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Author's Nationality or Domicile
Name of Country
OR { Citizen of __U.S.A.__
Domiciled in _____

Was This Author's Contribution to the Work
Anonymous?      ☐ Yes  ☑ No
Pseudonymous?   ☐ Yes  ☑ No
If the answer to either of these questions is Yes see detailed instructions

Nature of Authorship Check appropriate boxes See Instructions
☐ 3 Dimensional sculpture       ☐ Map           ☐ Technical drawing
☑ 2 Dimensional artwork         ☐ Photograph    ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design ☐ Architectural work

**b** Name of Author ▼

Was this contribution to the work a work made for hire?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of _____
Domiciled in _____

Dates of Birth and Death
Year Born ▼    Year Died ▼

Was This Author's Contribution to the Work
Anonymous?      ☐ Yes  ☐ No
Pseudonymous?   ☐ Yes  ☐ No
If the answer to either of these questions is Yes see detailed instructions

Nature of Authorship Check appropriate boxes See Instructions
☐ 3 Dimensional sculpture       ☐ Map           ☐ Technical drawing
☐ 2 Dimensional artwork         ☐ Photograph    ☐ Text
☐ Reproduction of work of art   ☐ Jewelry design ☐ Architectural work

**3**

**a** Year in Which Creation of This Work Was Completed
1998
This information must be given Year in all cases

**b** Date and Nation of First Publication of This Particular Work
Complete this information ONLY if this work has been published
Month __February__  Day __12__  Year __2001__
U.S.A.    Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼

MGA Entertainment Inc  16730 Schoenborn Street
North Hills  CA  91343 6122

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2 give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

Assignment

APPLICATION RECEIVED
DEC 22 2003
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
DEC 22 2003
FUNDS RECEIVED

---

MORE ON BACK ▶   Complete all applicable spaces (numbers 5-9) on the reverse side of this page
See detailed instructions      Sign the form at line 8

DO NOT WRITE HERE
Page 1 of ___ pages

M 0110180

EXHIBIT 3
PAGE 101

EXAMINED BY

CHECKED BY

☐ CORRESPONDENCE
   ☐ Yes

FORM VA

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☐ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**6**

a

See instructions
before completing
this space.

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

**Name** ▼                                              **Account Number** ▼

**7**

a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/ZIP ▼

Larry W McFarland   Keats McFarland & Wilson LLP
9720 Wilshire Boulevard Penthouse Suite
Beverly Hills  California  90212

b

Area code and daytime telephone number   ( 310 ) 248 3830          Fax number  ( 310 ) 860 0363

Email   lmcfarland@kmwlaw.com

**CERTIFICATION** I, the undersigned, hereby certify that I am the

Check only one ▶   ☐ author
                    ☐ other copyright claimant
                    ☐ owner of exclusive right(s)
                    ☑ authorized agent of  **MGA Entertainment, Inc.**
                       Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Larry W. McFarland                                              Date  December 16, 2003

Handwritten signature (X) ▼
X

**9**

Certificate will be mailed in window envelope to this address

**Name** ▼
Larry W McFarland   Keats McFarland & Wilson LLP

**Number/Street/Apt** ▼
9720 Wilshire Boulevard  Penthouse Suite

**City/State/ZIP** ▼
Beverly Hills  California  90212

YOU MUST
Complete all necessary spaces
Sign your application in space 8

SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE
1 Application form
2 Nonrefundable filing fee in check or money order payable to Register of Copyrights
3 Deposit material

MAIL TO
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

M 0110181

EXHIBIT 3
PAGE 108

VA 1-218-487



M 0110182

EXHIBIT 3

PAGE 103



M 0110183

EXHIBIT 3
PAGE 104



LIBRARY OF CONGRESS

*Copyright Office*
*of the United States*

WASHINGTON, D.C.

**THIS IS TO CERTIFY** that the attached additional certificate is a claim of copyright for the work entitled CLOE DRAWING registered under number VA 1-218-490.

**THIS IS TO CERTIFY ALSO**   that  the attached photocopies are a true representation of the work entitled CLOE DRAWING deposited in the Copyright Office on December 22, 2003 registered under number VA 1-218-490.

**IN WITNESS WHEREOF**, the seal of this Office is affixed hereto on May 17  2004.

Marybeth Peters
Register of Copyrights

By:   Tracie M. Coleman
Head
Certifications and Documents
Section
Information and Reference
Division

Use of this material is governed by the U. S. copyright law 17 U.S.C. 101 et seq.

4968

M 0110193

EXHIBIT 3
PAGE 105

Additional Certificate (17 U.S.C. 706)
## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

VA 1-218-490

EFFECTIVE DATE OF REGISTRATION

DEC 22 2003

Month          Day          Year

---

DO NOT WRITE ABOVE THIS LINE IF YOU NEED MORE SPACE USE A SEPARATE CONTINUATION SHEET

**1** Title of This Work ▼

CLOE Drawing

NATURE OF THIS WORK ▼ See instructions

color drawing

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical serial or collection give information about the collective work in which the contribution appeared Title of Collective Work ▼

If published in a periodical or serial give   Volume ▼      Number ▼          Issue Date ▼          On Pages ▼

---

**2** NAME OF AUTHOR ▼

**a** Carter Bryant

DATES OF BIRTH AND DEATH
Year Born ▼          Year Died ▼

**NOTE**

Under the law the author of a work made for hire is generally the employer not the employee (see instructions) For any part of this work that was made for hire check Yes in the space provided give the employer (or other person for whom the work was prepared) as Author of that part and leave the space for dates of birth and death blank

Was this contribution to the work a work made for hire?
☐ Yes
☒ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of U.S.A.
     Domiciled in

Was This Author a Contribution to the Work
Anonymous?     ☐ Yes  ☒ No
Pseudonymous?  ☐ Yes  ☒ No
If the answer to either of these questions is Yes see detailed instructions

Nature of Authorship Check appropriate box(es) See Instructions
☐ 3 Dimensional sculpture      ☐ Map              ☐ Technical drawing
☒ 2 Dimensional artwork        ☐ Photograph       ☐ Text
☐ Reproduction of work of art  ☐ Jewelry design   ☐ Architectural work

Name of Author ▼

Dates of Birth and Death
Year Born ▼          Year Died ▼

Was this contribution to the work a work made for hire?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of
     Domiciled in

Was This Author a Contribution to the Work
Anonymous?     ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is Yes see detailed instructions

Nature of Authorship Check appropriate box(es) See Instructions
☐ 3 Dimensional sculpture      ☐ Map              ☐ Technical drawing
☐ 2 Dimensional artwork        ☐ Photograph       ☐ Text
☐ Reproduction of work of art  ☐ Jewelry design   ☐ Architectural work

---

**3** **a** Year in Which Creation of This Work Was Completed 1998
This information must be given Year in all cases

**b** Date and Nation of First Publication of This Particular Work
Complete this information Month February Day 12 Year 2001
ONLY if this work has been published U.S.A.          Nation

---

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼

MGA Entertainment Inc  16730 Schoenborn Street
North Hills CA 91343 6122

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2 give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

Assignment

See instructions before completing this space

APPLICATION RECEIVED
DEC 22 2003
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
DEC 22 2003
FUNDS RECEIVED

---

MORE ON BACK ▶   Complete all applicable spaces (numbers 5-9) on the reverse side of this page
See detailed instructions       Sign the form at line 8

DO NOT WRITE HERE

Page 1 of ___ pages

M 0110194

EXHIBIT 3
PAGE 106

EXAMINED BY _____   FORM VA

CHECKED BY

☐ CORRESPONDENCE
    Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☐ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼          Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

a

b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼                          Account Number ▼

**7**

a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

Larry W. McFarland  Keats  McFarland & Wilson  LLP
9720 Wilshire Boulevard  Penthouse Suite
Beverly Hills  California  90212

Area code and daytime telephone number  (310)  248-3830          Fax number  (310)  860-0363

Email  lmcfarland@kmwlaw.com

b

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of  MGA Entertainment, Inc
    Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Larry W. McFarland                          Date  December 16, 2003

Handwritten signature (X) ▼

X _____

**8**

| Certificate will be mailed in window envelope to this address | Name ▼ |
|---|---|
| | Larry W. McFarland  Keats McFarland & Wilson LLP |
| | Number/Street/Apt ▼ |
| | 9720 Wilshire Boulevard  Penthouse Suite |
| | City/State/ZIP ▼ |
| | Beverly Hills  California  90212 |

**9**

17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Rev: June 2002—20,000  Web Rev: June 2002  ⊕ Printed on recycled paper          U.S. Government Printing Office: 2000-461-113/20,021

VA 1-218-490


LIBRARY OF CONGRESS
DEC 2 3 2003
COPYRIGHT OFFICE

M 0110196

EXHIBIT 3
PAGE 108



M 0110197

EXHIBIT __3__

PAGE __109__



LIBRARY OF CONGRESS

*Copyright Office*
*of the United States*

WASHINGTON, D.C.

**THIS IS TO CERTIFY** that the attached additional certificate is a claim of copyright for the work entitled **BRATZ GROUP DRAWING** registered under number **VA 1-218-489.**

**THIS IS TO CERTIFY ALSO** that the attached photocopies are a true representation of the work entitled **BRATZ GROUP DRAWING** deposited in the Copyright Office on December 22 2003 registered under number **VA 1-218-489.**

**IN WITNESS WHEREOF** the seal of this Office is affixed hereto on May 17, 2004.

Marybeth Peters
Register of Copyrights

By        Tracie M. Coleman
Head
Certifications and Documents
Section
Information and Reference
Division

Use of this material is governed by the U. S. copyright law 17 U.S.C. 101 et seq.

△ π EXHIBIT 513
Deponent ARMSTRONG
Date 7/18/07 Rptr. AC(C
WWW.DEPOBOOK.COM

M 0110188
EXHIBIT 3
PAGE 110

Additional Certificate (17 U.S.C. 706)
## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

**VA 1-218-489**

EFFECTIVE DATE OF REGISTRATION

**DEC 22 2003**
Month    Day    Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

Title of This Work ▼
BRATZ Group Drawing

NATURE OF THIS WORK ▼ See instructions
color drawing

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give  Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

---

**2**

**NOTE**

Under the law, the author of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**a** NAME OF AUTHOR ▼
Carter Bryant

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of __U.S.A__
Domiciled in _____

Was This Author's Contribution to the Work
Anonymous?  ☐ Yes  ☑ No
Pseudonymous?  ☐ Yes  ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship  Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☑ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

**b** Name of Author ▼

Dates of Birth and Death
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR { Citizen of _____
Domiciled in _____

Was This Author's Contribution to the Work
Anonymous?  ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

Nature of Authorship  Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

---

**3**

**a** Year in Which Creation of This Work Was Completed
1998
This information must be given in all cases.

**b** Date and Nation of First Publication of This Particular Work
Complete this information ONLY if this work has been published.
Month February  Day 12  Year 2001
Nation U.S.A.

---

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼
MGA Entertainment Inc  16730 Schoenborn Street
North Hills CA 91343 6122

APPLICATION RECEIVED
DEC 22 2003
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
DEC 22 2003
FUNDS RECEIVED

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright ▼
Assignment

---

MORE ON BACK ▶  Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
See detailed instructions.    Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

M 0110189

EXHIBIT 3
PAGE 111

| EXAMINED BY | | FORM VA |
| --- | --- | --- |
| CHECKED BY | | |
| CORRESPONDENCE ☐ Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☐ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: **Previous Registration Number** ▼          **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**6**

a

See instructions before completing this space.

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

b

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name** ▼                                   **Account Number** ▼

**7**

a

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

Larry W. McFarland   Keats McFarland & Wilson  LLP
9720 Wilshire Boulevard  Penthouse Suite
Beverly Hills  California  90212

b

Area code and daytime telephone number   ( 310 ) 248-3830                      Fax number   ( 310 ) 860-0363
Email   lmcfarland@kmwlaw.com

**CERTIFICATION** I, the undersigned, hereby certify that I am the
check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☑ authorized agent of  MGA Entertainment  Inc
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**Typed or printed name and date** ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Larry W. McFarland                                                    Date  December 16  2003

Handwritten signature (X) ▼
X

| Certificate will be mailed in window envelope to this address | **Name** ▼ Larry W. McFarland   Keats McFarland & Wilson  LLP | |
| --- | --- | --- |
| | **Number/Street/Apt** ▼ 9720 Wilshire Boulevard  Penthouse Suite | |
| | **City/State/ZIP** ▼ Beverly Hills  California  90212 | |

**YOU MUST:**
Complete all necessary spaces
Sign your application in space 8
**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material
**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

**9**

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.*

Rev. June 2002—20,000   Web Rev. June 2002   ⊕ Printed on recycled paper                    U.S. Government Printing Office: 2000-461-113/20,021

M 0110190

EXHIBIT  3
PAGE  112

VA 1-218-489



EXHIBIT **3**

PAGE 113

M 0110191



M 0110192

EXHIBIT 3
PAGE 114