**EXHIBIT 4**

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 5**

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 6**

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 7**

1   DALE M. CENDALI (admitted pro hac vice)
    DIANA M. TORRES (S.B. #162284)
2   STEVEN J. OLSON (S.B. #182240)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, California 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5   Email: dtorres@omm.com

6   PATRICIA GLASER (S.B. # 55668)
    CHRISTENSEN, GLASER, FINK,
7   JACOBS, WEIL & SHAPIRO LLP
    10250 Constellation Boulevard, 19th Floor
8   Los Angeles, California  90067
    Telephone:  (310) 553-3000
9   Facsimile:  (310) 556-2920
    Email: pglaser@chrisglase.com
10
    Attorneys for Counter-defendants MGA
11  Entertainment, Inc., Isaac Larian, MGA
    Entertainment (HK) Limited, and MGAE de
12  Mexico S.R.L. de C.V.

13

14

15              UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17                  EASTERN DIVISION

18  CARTER BRYANT, an individual,        Case No. CV 05-2727 SGL (RNBx)
                                         (Consolidated with CV 04-09049 and
19              Plaintiff,               CV 04-9059)

20      v.                               ANSWER AND AFFIRMATIVE
                                         DEFENSES OF MGA
21  MATTEL, INC., a Delaware Corporation, ENTERTAINMENT INC., MGA
                                         ENTERTAINMENT (HK)
22              Defendant                LIMITED, AND MGAE DE
                                         MEXICO S.R.L. DE C.V. TO
23                                       MATTEL, INC.'S SECOND
                                         AMENDED ANSWER AND
24                                       COUNTERCLAIMS

25
    CONSOLIDATED WITH
26                                       Judge:    Hon. Stephen G. Larson
    MATTEL, INC. v. BRYANT and           Courtroom: 1
27  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
28

EXHIBIT   7
PAGE   146

167.   MGA Defendants repeat their responses contained in paragraphs 1 through 166 f this Answer and incorporate them by reference as though fully and completely set forth herein.

168.   MGA Defendants deny the allegations set forth in paragraph 168.

169.   Paragraph 169 is a statement of Mattel's legal position, to which no response is necessary.  To the extent a response is required, MGA Defendants deny the allegations set forth in the paragraph 169.

170.   Paragraph 170 is a statement of Mattel's legal position, to which no response is necessary.  To the extent a response is required, MGA Defendants deny the allegations set forth in the paragraph 170.

## AFFIRMATIVE DEFENSES

Without admitting any wrongful conduct on the part of MGA Defendants or any Counter-Defendant, and without admitting that Mattel suffered any loss, damage, or injury, MGA Defendants allege the following affirmative defenses to the Counterclaims.  By designating the following as affirmative defenses, MGA Defendants do not in any way waive or limit any defenses which are or may be raised by their denials, allegations, and averments set forth herein.  MGA Defendants also do not, by alleging any affirmative defense, admit that Mattel does not have the burden of proof for any or all facts underlying any of those defenses. These defenses are pled in the alternative, and are raised to preserve the rights of MGA Defendants to assert such defenses, and are without prejudice to their ability to raise other and further defenses.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Mattel's counterclaims fail to state a claim against MGA Defendants upon which relief can be granted.

EXHIBIT 7
PAGE 147

**SECOND AFFIRMATIVE DEFENSE**

(Lack of Standing)

Mattel's counterclaims are barred in whole or in part by its lack of standing.

**THIRD AFFIRMATIVE DEFENSE**

(Unclean Hands)

Mattel's counterclaims are barred in whole or in part by Mattel's unclean hands. This affirmative defense is based, in part, on Mattel's efforts to undermine MGA's business and to "kill" Bratz at any cost which include, but are not limited to, Mattel's: efforts to infringe and dilute MGA's trade dress, copy MGA's products, packaging, themes, and advertising (including for Mattel products My Scene, Diva Starz, Wee 3 Friends, Acceleracers, and Polly Pocket, to name a few), and engage in other acts of unfair competition against MGA as alleged in MGA's complaint against Mattel; efforts to create negative publicity or press about MGA, MGA products, Bryant, Larian, or MGA employees; efforts to fund or commission market research or studies that portray Bratz or MGA products negatively; efforts to interfere with MGA's acquisition of or investment in Zapf Creation AG; efforts to include negative references to MGA or Bratz on Mattel's "We Believe in Girls" website; efforts or intent to interfere with business dealings or contractual relations between MGA and Smoby Group; influencing Nickelodeon to reject MGA advertisements or to limit time slots for advertisements; assisting parties in lawsuits against MGA; monitoring, "spying on" or gaining knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and product development; gaining access, or attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false pretenses; wrongfully obtaining MGA's costs and sales information through Mattel-employed category managers at retailers; inducing non-party customers to breach confidentiality agreements with MGA and divulge non-public information about MGA's unreleased products; covertly investigating MGA, its officers and

- 20 -

EXHIBIT 7
PAGE 148

1   employees, and their family members; contacting persons under false pretense in

2   order to interrogate them about Bratz and this litigation; coercing Mattel employees

3   to accept restrictive covenants (right before massive layoff) and non-compete

4   clauses and other efforts to prevent prospective MGA employees from accepting

5   offers of employment; delay in suing Carter Bryant because, *inter alia*, Mattel

6   wanted Bryant to testify in an unrelated Mattel case; falsely inflating its Barbie

7   sales figures in an effort to mislead the public and retailers; and taking all measures

8   to conceal its bad acts, including the willful non-retention and destruction of

9   documents.  These averments are made on information and belief except where

10  MGA Defendants have knowledge thereof.

### FOURTH AFFIRMATIVE DEFENSE

#### (Laches)

13  Mattel's counterclaims are barred by the equitable doctrine of laches.  MGA

14  Defendants avers that Mattel was on notice no later than March 2002 as to Bryant's

15  involvement with MGA and the creation of the original Bratz dolls.

### FIFTH AFFIRMATIVE DEFENSE

#### (Statute of Limitations)

18  Mattel's counterclaims are barred by the applicable statutes of limitations.

### SIXTH AFFIRMATIVE DEFENSE

#### (Good Faith)

21  Mattel cannot maintain its counterclaims against MGA Defendants because

22  MGA Defendants acted in good faith and in conformity with applicable laws, and

23  did not directly or indirectly induce the act or acts constituting the alleged causes of

24  actions.

### SEVENTH AFFIRMATIVE DEFENSE

#### (Information Readily Ascertainable)

- 21 -

EXHIBIT 7
PAGE 149

1  MGA Defendants cannot be liable for misappropriation of information that
2  was readily ascertainable by proper means at the time of the alleged acquisition or
3  use.

### EIGHTH AFFIRMATIVE DEFENSE

#### (Acts or Omissions of Others)

6  Mattel's damages, if any, were not caused by MGA Defendants and are not
7  attributable to any acts or omissions of MGA Defendants.

### NINTH AFFIRMATIVE DEFENSE

#### (Res Judicata)

10  Mattel's counterclaims are barred in whole or in part by res judicata.

### TENTH AFFIRMATIVE DEFENSE

#### (Estoppel)

13  Mattel's counterclaims are barred in whole or in part by estoppel.

### ELEVENTH AFFIRMATIVE DEFENSE

#### (Acquiescence)

16  Mattel's counterclaims are barred in whole or in part by acquiescence.

### TWELFTH AFFIRMATIVE DEFENSE

#### (Lack of Ownership)

19  Mattel is neither the legal nor beneficial owner in the copyrights purportedly
20  at issue.

### THIRTEENTH AFFIRMATIVE DEFENSE

#### (Invalid Copyrights)

23  Mattel's purported copyrights have expired or are otherwise invalid.

### FOURTEENTH AFFIRMATIVE DEFENSE

#### (Failure to Mitigate)

26  MGA Defendants deny that Mattel suffered any damages, but even if it did,
27  Mattel failed to take reasonable steps to mitigate those purported damages.

28

- 22 -

EXHIBIT 7
PAGE 150

1    ## FIFTEENTH AFFIRMATIVE DEFENSE

2    ### (No Statutory Damages or Attorneys' Fees)

3    Mattel is barred from recovering statutory damages and/or attorneys' fees

4    because it failed to register the copyrights that are purportedly at issue within the

5    time required by 17 U.S.C. § 412.

6    ## SIXTEENTH AFFIRMATIVE DEFENSE

7    ### (Innocent Intent)

8    MGA Defendants deny that Mattel owns any copyright interest in the alleged

9    works, but even if MGA Defendants infringed any copyright interest held by

10   Mattel, MGA Defendants did so without knowledge or intent.

11   ## SEVENTEENTH AFFIRMATIVE DEFENSE

12   ### (Waiver)

13   Mattel's counterclaims are barred in whole or in part by waiver.

14   ## EIGHTEENTH AFFIRMATIVE DEFENSE

15   ### (Abandonment)

16   Mattel has abandoned any interest it may have had in the alleged copyrighted

17   works.

18   ## NINETEENTH AFFIRMATIVE DEFENSE

19   ### (*De Minimus* Use)

20   MGA Defendants deny that Mattel owns any copyright interest in the alleged

21   works, but even if Mattel could craft a claim that the Bratz dolls incorporate an

22   aspect of a Mattel copyrighted work, such use would be *de minimus* and non-

23   infringing.

24

25

26

27

28

EXHIBIT 7
PAGE 151

## TWENTIETH AFFIRMATIVE DEFENSE

### (Joint Authorship)

MGA Defendants deny that Mattel owns any copyright interest in the alleged works, but even if it did, any liability would be eliminated or greatly diminished by the doctrine of joint authorship.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Undiscovered Defenses)

MGA Defendants have insufficient knowledge or information upon which to form a belief as to whether additional defenses are available.  MGA Defendants reserve the right to assert any further or additional defenses upon receiving more complete information regarding the matters alleged in the Counterclaims, through discovery or otherwise.

WHEREFORE, MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V., pray for relief as follows:

    a.    that the Counterclaims be dismissed with prejudice;

    b.    that judgment be entered in favor of counter-defendants and against counterclaimant;

    c.    that counter-defendants recover their costs and attorneys' fees; and

    d.    that the Court award such other and further relief as is just and proper.

Dated:  August 13, 2007

O'MELVENY & MYERS LLP



Steven J. Olson
Attorneys for Counter-defendants
MGA Entertainment, Inc., Isaac Larian,
MGA Entertainment (HK) Limited, and
MGAE de Mexico S.R.L. de C.V.

LA2:837754.6

- 24 -

EXHIBIT 7
PAGE 152

**EXHIBIT 8**

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 9**

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: [a] I will maintain the confidentiality of the Company's trade secrets; [b] I will use those trade secrets for the exclusive benefit of the Company; [c] inventions that I create will be owned by the Company; [d] my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and [e] when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

**1. Provisions Related to Trade Secrets**

[a] I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information [as defined below], including Information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

[b] As used in this Agreement, "Proprietary Information" means any Information (including formulas, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes Information on the Company: its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

[c] I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

[d] Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

**2. Ownership of Inventions**

[a] I agree to communicate to the Company as promptly and fully as practicable all Inventions [as defined below] conceived or reduced to practice by me [alone or jointly by others] at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such Inventions, and at my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

[b] As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

[c] Any provision in this agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an Invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those Inventions that either [1] relate at the time of conception or reduction to practice of the Invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or [2] result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

[d] I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

**3. Conflicts with Other Activities**

[a] My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

**4. Miscellaneous**

[a] My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

[b] Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

[c] My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will insure to the benefit of and be binding upon the successors and assigns of of the Company.

[d] I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continued employment by the Company; or to my employment for any particular term.

[e] Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

[f] This agreement will be governed by and interpreted in accordance with the laws of the State of California.

[g] This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employees' employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature

Employee Name (print)   CARTER H. BRYANT

Date   01/04/99

MATTEL, INC.

Signature

Name of Witness (print)   TERESA NEWCOMB

M 0001622

EXHIBIT 9

PAGE 171

**EXHIBIT 10**

Case 2:04-cv-09049-SGL-RNB    Document 3286    Filed 04/25/2008    Page 1 of 11

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CARTER BRYANT, | | **CASE NUMBER** |
| | PLAINTIFF(S), | CV 04-09049 SGL (RNBx) |
| MATTEL, INC., et al., v. | | |
| | DEFENDANT(S), | **NOTICE OF CLERICAL ERROR** |

TO:    U. S. District Judge(s)
       U. S. Magistrate Judge(s)
       Counsel of Record

You are hereby notified that due to a clerical error ☐ documents associated with the filing of the new action ☐ the following scanned document ☑ docket entry   have/has been corrected as indicated below.

Title of Scanned Document:  <u>Minute Order of 4-25-08, Granting in part, Denying in part, and Deferring in Part the Parties' MSJ</u>

Filed Date:  <u>4-25-08</u>                    Document Number:  <u>3285</u>

☐   Incorrect case number _____ was assigned to this ☐ action ☐ document.

☐   Case number has been corrected.  The correct case number is _____

☐   Incorrect judge's initials were indicated on this ☐ action ☐ document.  The correct judge's initials are _____

☐   Incorrect magistrate judge's initials were indicated on this ☐ action ☐ document.  The correct  magistrate judge's initials are _____

☐   Case has been reassigned from ☐ Judge ☐ Magistrate Judge _____ to
     ☐ Judge ☐ Magistrate Judge _____.  The initials of the new judge(s) are _____

☐   Case was assigned  to ☐ Western ☐ Southern ☐ Eastern division. Pursuant to General Order ☐ 349, ☐ 98-3 ☐ 02-06,
     the case has been reassigned to the ☐ Western ☐ Southern ☐ Eastern division. The former case number _____ has been reassigned to new case number _____

☐   Subsequent documents must be filed at the ☐ Western ☐ Southern ☐ Eastern division. Failure to file at the proper location will result in your documents being returned to you.

☐   Case title is corrected from _____ to _____

☐   Document has been re-numbered as document number _____

☐   Incorrect ☐ Filed Date ☐ Date of Document ☐ ENTERED Date ☐ DATE ENTERED ON CM/ICMS was stamped on document.  The correct date is _____

☑   Document is missing page number(s):  <u>7 and 8</u>

☐   To ensure proper routing of documents, all documents filed  with the court must reflect the following case number and judge's initials: _____

☑   Other: a complete copy with missing pages are re-scanned for service on the parties.

CLERK, U.S. DISTRICT COURT

Date <u>4-25-08</u>                    By: _____
                                        Jim Holmes, CRD
                                        Deputy Clerk

*cc: Intake Supervisor / Deputy In Charge*

G-11 (06/05)                    NOTICE OF CLERICAL ERROR

EXHIBIT 10
PAGE 172


UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                    Date: April 25, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
==================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes
           Courtroom Deputy Clerk

ATTORNEYS PRESENT FOR CARTER BRYANT:        ATTORNEYS PRESENT FOR MATTEL:

None Present                                None Present


ATTORNEYS PRESENT FOR MGA AND
ISAAC LARIAN:

None Present

PROCEEDINGS:   ORDER GRANTING IN PART, DENYING IN PART, AND DEFERRING IN
               PART THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT
               (IN CHAMBERS)

        This matter is before the Court on the parties' motions for partial summary judgment. The
motions were heard on April 22, 2008, and the Court has set the motions for further hearing on
May 19, 2008, at 1:30 p.m. As set forth below, the Court rules on a number of issues presented
by the motions for partial summary judgment and reserves ruling on other issues until after further
hearing on the motions for partial summary judgment and, in the case of MGA's affirmative
defenses, until after the Phase 1 trial.

        The parties have made hundreds of objections to evidence offered in support of and in
opposition to the motions for partial summary judgment. Although counsel for Bryant requested

MINUTES FORM 90                                              Initials of Deputy Clerk:  jh
CIVIL -- GEN                    Page 1

EXHIBIT 10
PAGE 173

explicit rulings on the objections raised by Bryant, the Court declines to do so. To the extent that this Order necessarily relies on evidence subject to any party's objections, the objections are implicitly overruled.

## PREEMPTION

MGA and Bryant seek summary judgment in their favor as to Mattel's claims for intentional interference with contractual relations, conversion, and unfair competition, arguing that these claims are preempted by the Copyright Act. They are partially correct.

A state law is preempted by the Copyright Act where (1) the work at issue comes within the subject matter of copyright, and (2) the state law rights are "equivalent to rights within the general scope of copyright[.]" Del Madera Properties v. Rhodes and Gardner, Inc., 820 F.2d 973, 977 (9th Cir.1987). "If a state law claim includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claim is not preempted by the Copyright Act." Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1089 (9th Cir. 2005). Generally the Copyright Act does not preempt the enforcement of contractual rights. Id.

As to the first element, the intentional interference with contractual relations claim addresses generally an issue within the subject matter of copyright -- the underlying wrong upon which the claim is premised is Mattel's deprivation of rights to intellectual property.

As to the second element, it is clear that the tort of intentional interference with contractual relations is neither categorically preempted or categorically saved from preemption; rather, the Court must engage in a determination of whether the substance of the tort claim differs qualitatively from the copyright claim at issue. Compare Altera, 424 F.3d at 1089 (holding that a intentional interference claim was not preempted because it was based not on copyrights but on a contractual provision) with Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1144 (9th Cir. 2006) (holding preempted a singer's voice misappropriation claim was not qualitatively different from her copyright claim).

Here, to the extent that the tortious interference is premised upon MGA's alleged interference with any copyrights that Mattel may have under the Inventions Agreement, it is preempted. Such a claim is not qualitatively different from Mattel's copyright claim. However, to the extent that the claim is based on MGA's acts that may be found to have aided and abetted the breach or induced the breach of Bryant's fiduciary duty, the claim is not preempted. That claim is qualitatively different from Mattel's copyright claim.

Therefore, the tortious interference with contractual relations is preempted to the extent that it is based on Mattel's rights to Bratz. It is not preempted as to Mattel's claims for breach of fiduciary duty.

The parties' arguments regarding the conversion claim address two distinct issues: Conversion of ideas and conversion of tangible things. The Court addresses each in turn.

MINUTES FORM 90

CIVIL -- GEN                                    Page 2                                    Initials of Deputy Clerk: jh



EXHIBIT  10
PAGE  174

Both sides acknowledge, as this Court certainly agrees, that one cannot copyright an idea. Thus, it would seem, a claim for conversion of ideas is not subject to preemption because it is not "within the subject matter of copyright." Del Madera, 820 F.2d at 977. MGA argues that ideas are not subject to a claim of conversion, to which Mattel responds that such rights in ideas may be created by contract. Mattel relies on Desny v. Wilder, 46 Cal.2d 715, 733 (1956) which, remarkably, so holds. However, that case does not support the proposition that a breach of such rights may be remedied by the tort claim of conversion rather than a breach of contract claim. The law in California regarding the tort of conversion's applicability to ideas remains the same today as in 1956: "The tort of conversion does not apply to ideas." Melchior v. New Line Productions, Inc., 106 Cal.App.4th 779 (2003). Therefore, although this claim is not preempted, it is not actionable as a tort claim. Accordingly, summary judgment in favor of MGA and Bryant is granted as to this particular claim.

Mattel also argues that its conversion claim is not preempted to the extent that it seeks the return of tangible things, most notably the original Bratz drawings. This claim is "within the subject matter of copyright," but the state rights go beyond the rights protected by the Copyright Act by allowing for the return of property.

At oral argument, counsel for MGA argued that Mattel seeks the rights that the drawings represent, not the "paper and ink" of which those drawings are comprised. Mattel disagreed with that interpretation, noting that it seeks the return of the original drawings and certain sculpts to which it may have rights under the Inventions Agreement.

The items to which Mattel lays claim are not like the manuscript at issue in Dielsi v. Falk, 916 F.Supp. 985, 992 (C.D. Cal. 1996), or the government documents at issue in Idema v. Dreamworks, Inc., 162 F.Supp.2d 1129, 1192-93 (C.D. Cal. 2001), both of which had value merely for their ability to hold and convey their contents. Rather, the materials Mattel seeks are works of art that may have value apart from the copyrights they represent or the "paper and ink" and other materials of which they are comprised. Given the role of the drawings and sculpts in developing a new, commercially successful line of fashion dolls, and given the role of these items in the present litigation, the Court discerns a possible inherent value to the materials themselves.

MGA and Bryant also pressed at oral argument that Mattel had not advanced such a claim for return of tangible items. The Court disagrees. Citing to its Complaint at ¶ 157, Mattel contends it has long sought the return of tangible items.[1] An examination of Mattel's claim for conversion reveals that it encompasses such a claim. Therefore, the conversion claim seeking the return of tangible items is not preempted. MGA and Bryant's motions for summary judgment on this issue are therefore denied.

To the extent that Mattel's statutory unfair competition claim, discussed more fully below, is

---

[1]  From a review of the record, it is clear to the Court that Mattel intended to cite ¶ 157 of its Amended Answer and Counterclaims, not its Complaint.


EXHIBIT 10
PAGE 175

based on copyright infringement, it is preempted, and the Court grants summary judgment in favor
of MGA on this issue.

## STATUTE OF LIMITATIONS

The Court heard argument at length on the statute of limitations issue.  Although it is not
entirely clear, it appears to the Court from the hearing and from MGA's Rule 56(f) affidavit, that
there remain outstanding discovery matters that may have the potential, if resolved in MGA's
favor, to factor into the inquiry into the determination of the date of the accrual of any claims
against Bryant and/or MGA.  Accordingly, the Court defers ruling on the issue of statute of
limitations at this time.

## INVENTIONS AGREEMENT

The Court addressed many issues of the enforceability of the Employee Confidentiality and
Inventions Agreement in its July 17, 2006, Order.  The Court finds no good reason to revisit or
revise that Order.

Bryant argues that the Inventions Agreement is ambiguous on the issue of whether it
covered anything other than "inventions" as that term is used in patent law.  Here, Bryant was a
fashion designer.  He signed an agreement that assigned his "inventions" to Mattel.  "Inventions"
is defined by the agreement to include "designs," which was undeniably the focus of Bryant's
employment with Mattel.  In addition to assigning all rights to Bryant's "inventions" (i.e., "designs")
to Mattel, the agreement also assigned to Mattel "all [Bryant's] right, title, and interest in any . . .
copyrights . . . and copyright applications based [on those inventions]".

In order to conclude that the Inventions Agreement is ambiguous on the issue of whether it
would include any copyrightable drawings or doll designs developed by an employee, the Court
would have to read out of the agreement explicit terms assigning to the employer the rights to
"designs," "copyrights," and "copyright applications."  The Court is required to read the contract as
a whole and, where possible, give effect to all its terms.  Cal. Civ. Code § 1641 ("The whole of a
contract is to be taken together, so as to give effect to every part, if reasonably practicable, each
clause helping to interpret the other.").  To accept the interpretation advanced by Bryant, the Court
would have to disregard this bedrock principle of contract construction by ignoring an explicit
assignment by the employee to the employer of copyrights.  The interpretation advanced by
Bryant is therefore not reasonable, and the Court finds that the Inventions Agreement is not
ambiguous on the issue of its scope with respect to copyrightable materials.

The Inventions Agreement explicitly conveys to Mattel an employee's interest in any
copyrights or copyright applications.  Assuming copyrightability and the resolution of certain (as
yet unresolved) issues of timing of creation and/or alteration in Mattel's favor, the original Bratz
drawings clearly fall within the scope of the Inventions Agreement.

Moreover, the Inventions Agreement incorporates, and therefore does not violate, Cal.

EXHIBIT 10
PAGE 174

Labor Code § 2870.  Pursuant to that statute (and its incorporation in the Inventions Agreement),
because the subject matter at issue -- the Bratz dolls -- relate to Mattel's business of marketing
fashion dolls, the factual question of whether Bryant worked on them on his own time, rather
during his working hours at Mattel, is not relevant.

    MGA argues that contracts of adhesion are unenforceable if they are either outside the
scope of the parties' expectations or they are substantively unconscionable.  The Court previously
determined that the Inventions Agreement was not substantively unconscionable, and now
determines that it is not outside the scope of the parties' expectations.  As noted above, Bryant
was a designer, and the plain language of the Inventions Agreement assigns his "designs" to his
employer.  Objectively, therefore, it would not be surprising that Mattel would lay claim to Bryant's
rights to any doll or doll fashions he designed during the period of his employment with Mattel.
Moreover, undisputed evidence establishes that Bryant's subjective understanding of the contract
was that it transferred at least some of his rights to Mattel.

    Bryant also argues that his actions went no further than lawful preparations to compete with
his employer.  The undisputed facts, however, tell a different story:  Bryant directly competed with
Mattel by entering into a contract with its competitor to produce a competing product while still
employed by Mattel.

    The Court grants summary judgment in favor of Mattel on the issue of the enforceability of
the Inventions Agreement and the issue of applicability of the Inventions Agreement to any Bratz-
related "inventions" (including any designs, improvements, ideas, concepts, and copyrightable
subject matter) that he is found to have created during the period of his employment with Mattel.

### DUTY OF LOYALTY AND FIDUCIARY DUTY

    Carter Bryant, like all other California employees, owed a duty of loyalty to Mattel while
employed there.  See Cal. Labor Code § 2863.  The undisputed facts establish that he breached
this duty by entering into a contract with Mattel's competitor, while still employed by Mattel, to
produce a line of fashion dolls to be marketed in direct competition with Mattel's products.  See
Huong Que, Inc. v. Luu, 150 Cal.App.4th 400, 414 (2007) ("The duty of loyalty is breached, and
the breach may give rise to a cause of action in the employer, when the employee takes action
which is inimical to the best interests of the employer.") (internal quotation marks and citation
omitted).

    Bryant also owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of
the Inventions Agreement.  Id. ("The value of the Proprietary Information depends on it remaining
confidential.  The Company depends on me to maintain that confidentiality, and I accept that
position of trust.").  Under California law, a confidential relationship that gives rise to a fiduciary
duty is created "where a confidence is reposed by one person in the integrity of another, and . . .
the party in whom the confidence is reposed . . .  voluntarily accepts or assumes to accept the
confidence . . . ."  City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d
1048, 1050-51 (N.D. Cal. 2002).  The Inventions Agreement imposed such a duty on Bryant.



EXHIBIT ___10___
PAGE ___177___

At the hearing on this matter, counsel contended that a required element for imposing a fiduciary duty -- that the party with the duty be in a superior position to the party to whom the duty is owed -- was missing.  That element is described as follows:  "[T]he essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party."  City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050 (N.D. Cal. 2002) (internal quotation marks and citation omitted).  The "superior position" to which California courts refer in this context is not superior bargaining power -- a position on which Mattel would apparently have the edge -- but rather it refers to a superior position vis-à-vis the duty imposed.  Here, because the duty imposed upon Bryant was essentially to police his own actions by maintaining Mattel's confidentiality and communicating his own "inventions" to Mattel, Bryant was "in a superior position to exert unique influence over" Mattel because he was in the best position, arguably the only one in a position, to know of and police his actions.

As with the duty of loyalty, the undisputed facts establish that Bryant breached his fiduciary duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.

Accordingly, the Court grants Mattel's motion for summary judgment on the issues of the existence and breach of the duty of loyalty.  The Court grants Mattel's motion for summary judgment and denies Bryant's motion for summary judgment on the issue of the existence and breach of a fiduciary duty.

In its motion, MGA argued that there can be no liability for aiding and abetting a breach of fiduciary duty in the absence of a fiduciary duty.  Because the Court has rejected this argument, the Court denies MGA's motion for summary judgment on this issue.

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with contractual relations.

The elements of a claim for intentional interference with contractual relations are stated as (1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.  Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50 Cal.3d 1118, 1126 (1990)).

The undisputed facts show that the first, third, and fifth elements are met.  Mattel has raised a triable issue of fact as to the second.  The fourth element may be resolved after the


EXHIBIT 10
PAGE 178

Court's further hearing on the motions for partial summary judgment.  The Court therefore defers ruling on this issue.

## UNFAIR COMPETITION

MGA and Bryant's motions are granted in part and denied in part as to Mattel's unfair competition claims.

Mattel's statutory unfair competition claim, brought pursuant to Cal. Bus. & Profs. Code § 17200, survives summary judgment because Mattel has raised a triable issue of fact as to whether MGA tortiously interfered with Bryant and Mattel's contractual relationship and whether MGA engaged in commercial bribery.

However, two bases for this claim are foreclosed at this time.  To the extent that the § 17200 claim is based on copyright infringement, it is preempted.  To the extent that it is based on unfair conduct, summary judgment in favor of MGA is granted because the articulated unfair conduct does not approximate an antitrust violation that threatens competition.  See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 186-87 (1999).

As to Mattel's common law unfair competition claim, summary judgment in favor of MGA and Bryant is granted.  This claim is not, as it must be, based on the act of passing off another's goods as one's own.  See Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1153 (9th Cir. 2008) (citing Bank of the W. v. Superior Court, 2 Cal.4th 1254 (1992)).

## UNJUST ENRICHMENT

Because Mattel failed to oppose this portion of Bryant's motion, the Court grants Bryant's motion for partial summary judgment on the issue of unjust enrichment.

## AFFIRMATIVE DEFENSES

Mattel seeks summary judgment as to many of the affirmative defenses asserted by the MGA entities and Carter Bryant.  Most of these defenses are essentially equitable in nature, and therefore the Court **DEFERS RULING** on them until after trial.  Specifically, the Court **DEFERS RULING** on the affirmative defenses of abandonment, acts and omissions of others, acquiescence, consent, estoppel, failure to mitigate, laches, unclean hands, and waiver until after trial.

For the reason set forth above in a separate section, the Court defers ruling on Mattel's motion as to the statute of limitations defense.

The final affirmative defense is based on 17 U.S.C. § 205(d).  With this affirmative defense, MGA essentially contends that it is a bona fide purchaser for value of the Bratz copyrights which


EXHIBIT 10
PAGE 179

took the rights in good faith and without notice of any prior transfer of the rights therein to Mattel. As the issue is argued by the parties, the Court would be required to determine the legal issue of whether MGA's registration of the copyrights as an "assignment" constitutes "constructive notice" in the manner required to give MGA the protection of 17 U.S.C. § 205(d). In the Court's view, this is a complex legal issue that is not thoroughly addressed by the parties' briefs. Moreover, the Court notes that a trial on the merits is likely to resolve the less complex factual issue of whether MGA acted in good faith and without notice of an earlier assignment of rights. Accordingly, the Court **DEFERS RULING** on this issue until after the Phase 1 trial.

* * * *

The Court will consider a number of remaining issues at the further hearing on these motions, set for May 19, 2008. Specifically, referencing the parties' Notices of Motion, the Court will consider the following issues:

Mattel's motion: Issue (2)(c), whether there is a factual dispute regarding the timing of certain drawings and a dummy model; issue (3), whether the first-generation Bratz dolls are substantially similar to seventeen drawings and a doll sculpt drawing or blueprint created by Bryant and whether those are original, protectable works of expression; issue (5), whether MGA and Larian are liable for aiding and abetting Bryant's breaches of the duty of loyalty and fiduciary duty; and issue (6)(a) whether Mattel is entitled to summary judgment as to the affirmative defense of statute of limitations.

Bryant's motion: Whether Bryant is entitled to summary judgment as to Mattel's claim for copyright infringement; whether Bryant is entitled to summary judgment as to Mattel's breach of contract claim; and whether Bryant is entitled to summary judgment on any portion of his claim for declaratory relief.

MGA's motion: Whether Mattel's claims are time barred; and whether the fourth element of intentional interference with contractual relations -- actual breach or disruption of the contractual relationship -- can be resolved on summary judgment.

Except for any updates from any party regarding the outstanding discovery matters that may be relevant to the statute of limitations, these issues are considered by the Court to be fully briefed. Any supplemental briefs by the parties on any issue other than the statute of limitations will be stricken by the Court. Any supplemental filings regarding the statute of limitations issue shall be limited to addressing the status of outstanding discovery issues and/or recently produced evidence.

**IT IS SO ORDERED.**



EXHIBIT  10
PAGE  180

## NOTICE PARTY SERVICE LIST

Case No.  CV 04-09049 SGL(RNBx)   Case Title  Carter Bryant v. Mattel, Inc.

Title of Document   Minute Order of April 25, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

✓ **ADD NEW NOTICE PARTY**
**(if sending by fax, mailing address must also be provided)**

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor): P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:
* For CIVIL cases only

**JUDGE / MAGISTRATE JUDGE (list below):**

Initials of Deputy Clerk   jh

EXHIBIT  10
PAGE  181



**NOTICE PARTY SERVICE LIST**

Case No. CV 04-09049 SGL(RNBx)   Case Title Carter Bryant v. Mattel, Inc.

Title of Document Minute Order of April 25, 2008

| | |
|---|---|
| Atty Sttlmnt Officer Panel Coordinator | |
| BAP (Bankruptcy Appellate Panel) | |
| Beck, Michael J (Clerk, MDL Panel) | |
| BOP (Bureau of Prisons) | |
| CA St Pub Defender (Calif. State PD) | |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | |
| Case Asgmt Admin (Case Assignment Administrator) | |
| Catterson, Cathy (9th Circuit Court of Appeal) | |
| Chief Deputy Admin | |
| Chief Deputy Ops | |
| Clerk of Court | |
| Death Penalty H/C (Law Clerks) | |
| Dep In Chg E Div | |
| Dep In Chg So Div | |
| Federal Public Defender | |
| Fiscal Section | |
| Intake Section, Criminal LA | |
| Intake Section, Criminal SA | |
| Intake Supervisor, Civil | |
| PIA Clerk - Los Angeles (PIALA) | |
| PIA Clerk - Riverside (PIAED) | |
| PIA Clerk - Santa Ana (PIASA) | |
| PSA - Los Angeles (PSALA) | |
| PSA - Riverside (PSAED) | |
| PSA - Santa Ana (PSASA) | |
| Schnack, Randall (CJA Supervising Attorney) | |
| Statistics Clerk | |

US Attorneys Office - Civil Division -L.A.
US Attorneys Office - Civil Division - S.A.
US Attorneys Office - Criminal Division -L.A.
US Attorneys Office - Criminal Division -S.A.
US Bankruptcy Court
US Marshal Service - Los Angeles (USMLA)
US Marshal Service - Riverside (USMED)
US Marshal Service -Santa Ana (USMSA)
US Probation Office (USPO)
US Trustee's Office
Warden, San Quentin State Prison, CA

✓ **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided)

Name: Hon. Edward A. Infante (Ret.)
Firm:
Address (include suite or floor): Two Embarcadero Center, Suite 1500, San Francisco, CA 94111
*E-mail:
*Fax No.:
* For CIVIL cases only

**JUDGE / MAGISTRATE JUDGE (list below):**

Initials of Deputy Clerk jh


EXHIBIT 10
PAGE 182