# EXHIBIT 11

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 12

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
### CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                              Date: December 3, 2008
Title:       MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=======================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

        James Holmes                            None Present
        Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                            None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200 INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

EXHIBIT 12

PAGE 196

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties. After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C of the trial) and enters the following Order.  Filed concurrently herewith are:  (1) Mattel's Proposed Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian ("Larian"), as "the MGA parties".  MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and equitable arguments, authorities, and evidence concerning the motions identified above.  In its final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that Carter Bryant ("Bryant") created and developed the name, the concept, and, together with Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

EXHIBIT 12
PAGE 197

dolls while working as an employee of Mattel and while bound by the terms of an Inventions Agreement, which provided that all rights to such property, and the property itself, belong to Mattel. Moreover, the Court further finds, as did the jury, that the preponderance of the evidence establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel. Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion dolls, are liable to Mattel for copyright infringement.

## I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel, and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as to these three remaining affirmative defenses.[1]

### A.      Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1) lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004). The MGA parties establish neither element.

Because the Court has already found that all the claims asserted against the MGA parties were filed within the applicable limitations periods, the Court starts with the presumption that laches is inapplicable. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).

Mattel has not delayed in bringing its claims against the MGA parties. The Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004. See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a significantly protectable interest relating to the subject matter of the action, . . . and that MGA's interest is not adequately represented by the existing parties."). Thereafter, the parties briefed Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1] By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase 1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses that they have not already expressly waived.

Initials of Deputy Clerk: jh

EXHIBIT 12

PAGE 108

interlocutory appeal.  After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005.  The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006.  Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties.  On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice.  MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights.  The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner).  Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

### B.    Estoppel

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them.  To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

MINUTES FORM 90
CIVIL -- GEN                          4                          Initials of Deputy Clerk: jh



EXHIBIT 12
PAGE 199

Case 2:04-cv-09049-DOC-RNB   Document 5021-4   Filed 03/13/09   Page 8 of 66   Page ID
#:160507
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 5 of 17

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

### C.    Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

## II. Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

---

[2]   The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

MINUTES FORM 90
CIVIL -- GEN                                    5                    Initials of Deputy Clerk: jh

EXHIBIT 12
PAGE 200

Case 2:04-cv-09049-DOC-RNB   Document 5021-4   Filed 03/13/09   Page 9 of 66   Page ID
#:160508
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 6 of 17

constructive trust as to MGA's copyright registrations in certain Bratz drawings. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket #4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be granted because it is preempted by the Copyright Act. The Court rejects this argument. The Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the declaratory relief sought by Mattel is appropriate.[3] Concurrently herewith, the Court has entered, as modified, Mattel's proposed order for declaratory relief.

### III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition of a constructive trust over the trademarks "Bratz" and "Jade." Mattel also seeks, pursuant to its twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty. Pursuant to this finding, and in addition to imposition of a constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA parties from using these marks. As detailed in the concurrently filed Order, the Court **GRANTS** Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A.    Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Cal. Civ. Code § 2224 explicitly addresses things gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The parties agree on the resulting elements, which may be stated as

---

[3]  The appropriateness of the constructive trust remedy is discussed below, in a separate section, but applies equally here.


EXHIBIT 12
PAGE 201

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4] In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)). However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

## B.    § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4] Bryant's other characters were re-named before they were marketed: Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

MINUTES FORM 90
CIVIL -- GEN                                           7                         Initials of Deputy Clerk: jh

EXHIBIT 12
PAGE 202

Case 2:04-cv-09049-DOC-RNB   Document 5021-4   Filed 03/13/09   Page 11 of 66   Page ID
#:160510
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 8 of 17

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion). The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding. Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act. The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

### C.   § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may
> be enjoined in any court of competent jurisdiction. The court may make
> such orders or judgments, . . . as may be necessary to prevent the use
> or employment by any person of any practice which [either] constitutes
> unfair competition, . . . or as may be necessary to restore to any person
> in interest any money or property, real or personal, which may have
> been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

### IV. Motion for Permanent Injunction (docket #4306)

### A.   Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.



EXHIBIT 12
PAGE 203

Case 2:04-cv-09049-DOC-RNB   Document 5021-4   Filed 03/13/09   Page 12 of 66   Page ID
#:160511
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 9 of 17

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

EXHIBIT 12
PAGE 204

Case 2:04-cv-09049-DOC-RNB   Document 5021-4   Filed 03/13/09   Page 13 of 66   Page ID
#:160512
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 10 of 17

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5]  Counsel likened the jury's damage award to a rug that, no matter which way one moved it, simply would not cover the floor. See Nov. 10, 2008, Tr. at 100-101.  Counsel explained that the jury's findings led to one conclusion or the other and, regardless of which conclusion was chosen, the jury's finding did not support an injunction:

> The rug is too small for an injunction, regardless of how you allocate that money.  You either come up with a vanishingly small subset of infringing products, or you come up with a vanishingly small percentage of infringement by all of the products.  And the jury has put that cap for us.

Id.  Although colorful, counsel's metaphor is not helpful.  Assuming that the Court would be bound by a jury's factual finding in a case where only two possible inferences -- both of which would lead the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an expert report, the Court will infer the factual findings that necessarily flow from it.  But where, as here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and 6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15, 2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2.  In doing so, the Court has first examined the specific expressive elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]   This argument was not raised in the opposition papers filed by the MGA parties, and is rejected for that reason as well.  See Opp. at 21 ("Here, the circumstances clearly show that the only reasonable conclusion to draw is that the jury's infringement finding was limited to a small universe of products, specifically the first generation Bratz dolls as clothed and packaged.") (emphasis added).

[6]   The MGA parties hazard such a guess in their opposition, wherein they attempt to explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total copyright infringement award:  "The jury's decision to award $6 million against MGA[E] (and $10 million total) rather than simply the $4 million] argued by MGA as profits for the first generation may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million revenue was a bit low."  Opp. at 21 n.30.  This guessing game illustrates why no factual findings can be inferred from the jury's copyright infringement award and why the Court is obligated to make its own factual findings.

MINUTES FORM 90
CIVIL -- GEN

10

Initials of Deputy Clerk: jh


EXHIBIT 12
PAGE 205

Case 2:04-cv-09049-DOC-RNB   Document 5021-4   Filed 03/13/09   Page 14 of 66   Page ID
#:160513
Case 2:04-cv-09049-SGL-RNB     Document 4439     Filed 12/03/2008     Page 11 of 17

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer. Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported by both analytical and market analysis. Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

### B.    Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.    Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90
CIVIL -- GEN                                                          Initials of Deputy Clerk: jh

EXHIBIT 12
PAGE 200

that hundreds of the MGA parties' products -- including all the currently available core female fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties have evinced an intention to continue marketing those dolls. This represents a wholesale inability on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to irreparable harm.   Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005).

    MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.).  The Grokster case holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not permitted in light of eBay.  In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right to control the use of its copyrighted materials, . . . irreparable harm inescapably flows from the denial of that right."  In substance, such language is nothing more than a disguised presumption, particularly with the use of the word "inescapably." After eBay, Plaintiffs cannot rely on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13.  Judge Wilson's point is well-taken. Although the Taylor court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably" in this phrase certainly could indicate that it was merely presuming irreparable harm.  However, a review of the Taylor case makes clear that the Eighth Circuit considered the implications of allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a request for injunctive relief could otherwise "amount to a forced license to use the creative work of another." Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the application of a "disguised presumption" of irreparable harm and closer to an actual finding of irreparable harm.

    At least one district court within the Ninth Circuit is in accord with the Court's decision today, as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of future infringement amounts to irreparable harm.  Designer Skin, LLC v. S & L Vitamins, Inc., 2008 WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.).  Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds that past infringement plus the threat of future infringement equals irreparable harm, it seems clear to this Court that such a rule would not run afoul of eBay's directives. First of all, the eBay Court did not address the showing necessary to establish "irreparable harm."  It merely held that the plaintiff has the burden of proving it.  Second, this two-part test does not resurrect the presumption of irreparable harm impliedly laid to rest by the eBay court.  It simply recognizes that a



EXHIBIT 12
PAGE 201

Case 2:04-cv-09049-DOC-RNB   Document 5021-4   Filed 03/13/09   Page 16 of 66   Page ID
#:160515
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 13 of 17

> plaintiff meets the burden of proving irreparable harm by making this
> two-part showing. And finally, the two-part test does not represent a
> rule [prohibited by eBay] that an injunction automatically follows a
> determination that a copyright has been infringed. . . . In exercising
> their equitable discretion, courts would still have the freedom to deny
> injunctive relief when the public interest or the balance of hardships
> weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The
statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under
this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable
**to prevent or restrain infringement of a copyright."** 17 U.S.C. § 502 (emphasis added). The
Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record
shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to
his employer (and keep confidential from all others) all copyrightable works he creates during the
term of his employment, not only fails to so communicate but actually secretly purports to convey
the rights thereto to a direct competitor of his employer. The rights to those works are actively
concealed from their true owner (by both the employee and the competitor) for years while the
competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars.
After millions of pages of discovery are produced, thousands of filings are submitted, scores and
scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor
of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing
products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA
parties' past infringement and the high probability of continued acts of infringement.

### 2.    Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop
the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See
Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

### 3.    Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has
expressed its concerns in this regard on the record. The evidence at trial showed that, at least
historically, Bratz is the brand that has made MGA profitable. And the proposed injunction
addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the
cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if
any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995)
("Where the only hardship that the defendant will suffer is lost profits from an activity which has

MINUTES FORM 90
CIVIL -- GEN                              13                          Initials of Deputy Clerk: jh


EXHIBIT 12
PAGE 208

been shown likely to be infringing, such an argument in defense merits little equitable consideration . . . .") (internal quotation marks and citations omitted), accord, Cadence Design Systems, Inc. v. Avant! Corp., 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases).  The balance of equities favor Mattel.

### 4.    Public Interest

There is a strong economic interest, especially in these troubled economic times, in maintaining a profitable enterprise as a going concern.  However, there is also a strong public interest in enforcing copyright laws in a uniform manner.  Indeed, nothing is more essential to long-term economic prosperity than the stability provided by the rule of law.  Although the MGA parties raise excellent points in their opposition, in the end, the public interest is served by precluding defendants from engaging in copyright infringement.  The injunction issued by the Court does no more than that.

## C.    Scope of Injunction

The scope of the permanent injunction is set forth in a separate order.  Four issues raised in the parties' papers warrant the brief discussion that follows.

### 1.    Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and destruction of the specialized plates, molds, and matrices used to make them.  Impoundment of existing infringing products and the destruction of the means to make those products are clearly remedies contemplated by the Copyright Act.  See 17 U.S.C. § 503(a).  The MGA parties argue that these remedies are inappropriate because there is no ongoing infringement or, at the very least, its products infringe very little.  In its findings supporting the issuance of a permanent injunction, the Court has rejected this premise, and the Court finds that the requested impoundment and destruction is an appropriate remedy.[7]

### 2.    Recall

In light of the scope of infringement found by the Court, and in light of the fact that the injunction addresses products that directly compete with Mattel's products, the Court has ordered the recall of infringing products from retailers.  See CyberMedia, Inc. v. Symantec Corp., 19 F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7]   No party shall destroy any of the implements used to make the Bratz dolls that are the subject of the permanent injunction absent a specific order of this Court authorizing such destruction.


EXHIBIT 12
PAGE 209

### 3.    Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4.    Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

### V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

### VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

MINUTES FORM 90
CIVIL -- GEN                                    15                        Initials of Deputy Clerk: jh



EXHIBIT 12
PAGE 210

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

### VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

### VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

### IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

### X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.



EXHIBIT 12
PAGE 211

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA  90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA  90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA  92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA  92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA  90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA  90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

·   The Court is in possession of a jointly lodged laptop computer used to access the Phases
1A and 1B trial transcripts maintained by the parties.  The Court will retain possession of the laptop
computer until after its ruling on the motions referred to in section IX, above, and the parties are
directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-
filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges
given the limited resources of the Court.  The permanent injunction, for reasons explained by
Mattel on the record, attaches to it approximately 900 color copies.  Accordingly, although the
Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs
Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent
injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**

EXHIBIT 12
PAGE 212

# EXHIBIT 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>MGA ENTERTAINMENT,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>**FINAL VERDICT FORM AS GIVEN** |

07209/2554627.7

7-17

EXHIBIT _13_
PAGE _213_

1
2

# VERDICT FORM

3

We answer the questions submitted to us as follows:

4
5

## Timing of Tangible Items

6
7        1.      For each of the items listed below, has Mattel proven by a
8    preponderance of the evidence that the item was "conceived or reduced to practice"
9    — that is, created — by Carter Bryant, alone or jointly with others, during the
10   period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?
11

12

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 5-52, 62-1, 624/5-74, 62-11, 10537, 15180/5-75, 62-12, 10538, 15181/5-111, 708/5-112, 62-13/5-113./5-114/62-14/ 62-15, 1152-1, 1152-2, 10613/1328/10033-3/10033-4 |
| ☒ | ☐ | TX 5-88, 35-1, 35-3, 5-101/1327, 10153-3/10153-4 |
| ☒ | ☐ | TX 5-35, 757 |
| ☒ | ☐ | TX 5-36, 701, 702 |
| ☒ | ☐ | TX 5-37, 703 |
| ☒ | ☐ | TX 5-38, 762 |
| ☐ | ☐ | TX 5-39, 523, 752 |
| ☐ | ☐ | TX 5-40, 753, 754, 13583 |
| ☐ | ☐ | TX 751-2, 751-3, 5-41, 755 |
| ☐ | ☐ | TX 5-42, 756 |
| ☒ | ☐ | TX 5-43, 709 |
| ☒ | ☐ | TX 5-46, 710 |
| ☒ | ☐ | TX 5-49, 704 |
| ☒ | ☐ | TX 5-50, 705 |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2554627.7

-1-

EXHIBIT __13__

PAGE __214__

| | Yes | No | |
|---|---|---|---|
| 1 | | | |
| 2 | ☒ | ☐ | TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| 3 | ☒ | ☐ | TX 5-54, 62-2, 620, 774, 775 |
| 4 | ☒ | ☐ | TX 5-55, 62-3, 785, 1152-9 |
| 5 | ☒ | ☐ | TX 5-56, 764, 15176 |
| 6 | ☒ | ☐ | TX 5-57, 776, 777 |
| 7 | ☒ | ☐ | TX 5-58, 765, 15177 |
| 8 | ☒ | ☐ | TX 5-59, 739, 740 |
| 9 | ☒ | ☐ | TX 5-60, 761 |
| 10 | ☒ | ☐ | TX 5-61, 62-4, 782, 796-1, 1748 |
| 11 | ☒ | ☐ | TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| 12 | ☒ | ☐ | TX 5-63, 758, 759, 760 |
| 13 | ☒ | ☐ | TX 5-64, 62-6, 795, 1152-14, 1750 |
| 14 | ☒ | ☐ | TX 5-65, 1152-7, 1152-8, 11789 |
| 15 | ☒ | ☐ | TX 5-66, 794, 1152-13 |
| 16 | ☒ | ☐ | TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| 17 | ☒ | ☐ | TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| 18 | ☒ | ☐ | TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| 19 | ☒ | ☐ | TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| 20 | ☒ | ☐ | TX 5-73, 741, 742 |
| 21 | ☒ | ☐ | TX 5-76, 706 |
| 22 | ☒ | ☐ | TX 5-77, 707 |
| 23 | ☒ | ☐ | TX 5-78, 10539, 18501 |
| 24 | ☒ | ☐ | TX 5-136, 711 |
| 25 | ☒ | ☐ | TX 10579, 18281 |
| 26 | ☒ | ☐ | TX 15172 |
| 27 | | | |
| 28 | | | |

07209/2554627.7

-2-

EXHIBIT 13
PAGE 215

2.    For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 3-1, 779, 780, 1-1, 2-1, 778 |
| ☒ | ☐ | TX 3-2, 726, 727, 728, 1-4, 2-5 |
| ☒ | ☐ | TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| ☒ | ☐ | TX 3-5, 791, 1-8, 2-2 |
| ☒ | ☐ | TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| ☒ | ☐ | TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| ☒ | ☐ | TX 3-9, 788, 1-10, 2-6, 746, 5-103, 10543 |
| ☒ | ☐ | TX 3-10, 735, 736 |
| ☒ | ☐ | TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| ☒ | ☐ | TX 3-13, 793, 1-5, 2-3, 10-3 |
| ☒ | ☐ | TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| ☒ | ☐ | TX 1-2 |
| ☒ | ☐ | TX 3-11 |
| ☒ | ☐ | TX 5-26, 712 |
| ☒ | ☐ | TX 5-27, 713 |
| ☒ | ☐ | TX 5-81, 720 |
| ☒ | ☐ | TX 5-82, 715 |
| ☒ | ☐ | TX 5-83, 723 |
| ☒ | ☐ | TX 3-4, 5-84, 716, 717 |
| ☒ | ☐ | TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| ☒ | ☐ | TX 5-80, 721, 722, 5-86 |
| ☒ | ☐ | TX 5-87, 5-108, 724, 725 |
| ☒ | ☐ | TX 5-34 |

EXHIBIT _13_
PAGE _216_

1        3.      For each of the items listed below, has Mattel proven by a

2   preponderance of the evidence that the item was "conceived or reduced to practice"

3   — that is, created — by Carter Bryant, alone or jointly with others, during the

4   period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

5

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 5-89, 35-2, 323-32, 323-33 |
| ☒ | ☐ | TX 1107, 10638 |
| ☒ | ☐ | TX 1108, 10639 |
| ☒ | ☐ | TX 1109, 771 |
| ☒ | ☐ | TX 1110, 773 |
| ☒ | ☐ | TX 5-14, 10515 |
| ☒ | ☐ | TX 5-18, 10518 |
| ☒ | ☐ | TX 5-19, 10519 |
| ☒ | ☐ | TX 5-28, 10526 |
| ☒ | ☐ | TX 5-30 |
| ☒ | ☐ | TX 5-95 |
| ☒ | ☐ | TX 5-96 |
| ☒ | ☐ | TX 5-99 |
| ☒ | ☐ | TX 323-18 |
| ☒ | ☐ | TX 323-19 |
| ☒ | ☐ | TX 323-26 |

EXHIBIT 13
PAGE 217

1   4.   For each of the items listed below, has Mattel proven by a

2   preponderance of the evidence that the item was "conceived or reduced to practice"

3   — that is, created — by Carter Bryant, alone or jointly with others, during the

4   period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

5

6   **Trial Exhibit No.**          YES     NO

7   The Three Dimensional Item Presented at Pitch     X     _____

8   Meeting

9

10   Trial Exhibit 1136     X     _____

11

12   **Timing of Ideas**

13

14   5.   Has Mattel proven by a preponderance of the evidence that Carter

15   Bryant conceived the "Bratz" characters while employed by Mattel?

16   Yes   X

17   No   _____

18

19

20   6.   Has Mattel proven by a preponderance of the evidence that Carter

21   Bryant conceived the name "Bratz" while employed by Mattel?

22   Yes   X

23   No   _____

24

25

26

27

28

07209/2554627.7

-5-

Case No. CV 04-9049 SGL (RNBx)
FINAL PROPOSED VERDICT FORM FOR PHASE 1A

EXHIBIT 13
PAGE 218

1     **Intentional Interference with Contractual Relations**.

2       7.      Is MGA Entertainment, Inc. ("MGA") liable to Mattel for intentional

3 interference with contractual relations?

4         Yes    _X_

5         No    ___

6

7       8.      Is Isaac Larian liable to Mattel for intentional interference with

8 contractual relations?

9         Yes    _X_

10        No    ___

11

12     **Aiding and Abetting Breach of Fiduciary Duty**

13       9.      Is MGA liable to Mattel for aiding and abetting breach of fiduciary

14 duty?

15         Yes    _X_

16        No    ___

17

18      10. ·     Is Isaac Larian liable to Mattel for aiding and abetting breach of

19 fiduciary duty?

20        Yes    _X_

21        No    ___

22

23     **Aiding and Abetting Breach of the Duty of Loyalty**

24      11.     Is MGA liable to Mattel for aiding and abetting breach of the duty of

25 loyalty?

26        Yes    _X_

27        No    ___

28

EXHIBIT 13
PAGE 219

1      12.  Is Isaac Larian liable to Mattel for aiding and abetting breach of the

2  duty of loyalty?

3         Yes   _X_

4         No   ____

5

6                     **Conversion**

7    13.  Is MGA liable to Mattel for conversion?

8         Yes   _X_

9         No   ____

10

11    14.  Is Isaac Larian liable to Mattel for conversion?

12        Yes   _X_

13        No   ____

14

15    15.  Is MGA Entertainment (HK) Limited liable to Mattel for conversion?

16        Yes   _X_

17        No   ____

18

19

20      Once this verdict form is completed, the foreperson of the jury should sign

21  and date on the lines below.

22  DATED: _July 17_____, 2008

23

24

25                _____
                            Presiding Juror

26

27

28

EXHIBIT _13_

PAGE _210_

# EXHIBIT 14

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Duane R. Lyons (Bar No. 125091)
(duanelyons@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated With Case No. 04-9059 and Case No. 05-2727 |
| v. | MATTEL, INC.'S SECOND AMENDED ANSWER IN CASE NO. 05-2727 AND COUNTERCLAIMS FOR: |
| MATTEL, INC., a Delaware corporation, | |
| Defendant. | 1.  COPYRIGHT INFRINGEMENT; |
| | 2.  VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT; |
| MGA ENTERTAINMENT, INC. a California corporation, | 3.  CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT; |
| Plaintiff, | 4.  MISAPPROPRIATION OF TRADE SECRETS; |
| v. | 5.  BREACH OF CONTRACT; |
| MATTEL, INC., a Delaware corporation, and DOES 1-10, | 6.  INTENTIONAL INTERFERENCE WITH CONTRACT; |
| Defendants. | 7.  BREACH OF FIDUCIARY DUTY; |
| | 8.  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY; |
| | 9.  BREACH OF DUTY OF LOYALTY; |
| | **CONFIDENTIAL FILED UNDER SEAL, PURSUANT TO PROTECTIVE ORDER** |
| | **Volume I** |

CONFORMED COPY

CLERK, U.S. DISTRICT COURT

JUL 12 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

07209/2154363.3

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 12
PAGE 221

1   MATTEL, INC., a Delaware
    corporation,
2
                        Counter-claimant,
3
          v.
4
    MGA ENTERTAINMENT, INC., a
5   California corporation; ISAAC
    LARIAN, an individual; CARTER
6   BRYANT, an individual; MGA
    ENTERTAINMENT (HK) LIMITED,
7   a Hong Kong Special Administrative
    Region business entity; MGAE DE
8   MEXICO, S.R.L. DE C.V., a
    Mexico business entity; CARLOS
9   GUSTAVO MACHADO GOMEZ, an
    individual; and DOES 4 through 10,
10
                        Counter-defendants.
11

12  AND CONSOLIDATED CASES

13

14

10. AIDING AND ABETTING
    BREACH OF DUTY OF
    LOYALTY;
11. CONVERSION;
12. UNFAIR COMPETITION; AND
13. DECLARATORY RELIEF.

DEMAND FOR JURY TRIAL

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _14_
PAGE _222_

-2-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1   Answer and Counterclaims, Mattel is aware that Larian represented to each retailer

2   that each was the only retailer to purchase the product and that Mattel would not be

3   supporting the product with television advertising.  At the time that Larian made

4   these statements, he knew them to be false.  As a result of Larian's

5   misrepresentations, at least one retailer cancelled its order for 75,000 units of the

6   MY SCENE MY BLING BLING product with real gems.  Only after Mattel

7   learned of Larian's misrepresentations and was able to correct them was Mattel able

8   to assure the retailer that Larian's representations were false and to persuade the

9   retailer to reinstate the order.

10          81.   Such conduct is not an isolated incident.  MGA and Larian, in an

11  effort to gain an unfair competitive advantage, repeatedly issued false and

12  misleading press releases.  In these press releases, MGA and Larian have

13  misrepresented Bratz's sales, Bratz's market share, Bratz's position vis-à-vis

14  Mattel's BARBIE products, sales of Mattel's BARBIE products, and the market

15  share of Mattel's BARBIE products.

**CLAIMS FOR RELIEF**

**First Counterclaim**

**Copyright Infringement**

**(Against MGA, MGA Entertainment (HK) Limited,**

**Larian, Bryant and Does 4 through 10)**

21          82.   Mattel repeats and realleges each and every allegation set forth in

22  paragraphs 1 through 81, above, as though fully set forth at length.

23          83.   Mattel is the owner of copyrights in works that are fixed in

24  tangible media of expression and that are the subject of valid, and subsisting,

25  copyright registrations owned by Mattel. These include, without limitation, the

26  works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-

27  378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-

28

21 54363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT C/

PAGE 223

1   378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-

2   378-660, VAu 715-270, VAu 715-271 and VAu 715-273.

3         84.   Counter-defendants have reproduced, created derivative works

4   from and otherwise infringed upon the exclusive rights of Mattel in its protected

5   works without Mattel's authorization.  Counter-defendants' acts violate Mattel's

6   exclusive rights under the Copyright Act, including without limitation Mattel's

7   exclusive rights to reproduce its copyrighted works and to create derivative works

8   from its copyrighted works, as set forth in 17 U.S.C. §§ 106 and 501.

9         85.   Counter-defendants' infringement (and substantial contributions

10  to the infringement) of Mattel's copyrighted works is and has been knowingly made

11  without Mattel's consent and for commercial purposes and the direct financial

12  benefit of Counter-defendants.  Counter-defendants, moreover, have deliberately

13  failed to exercise their right and ability to supervise the infringing activities of

14  others within their control to refrain from infringing Mattel's copyrighted works

15  and have failed to do so in order to deliberately further their significant financial

16  interest in the infringement of Mattel's copyrighted works.  Accordingly, Counter-

17  defendants have engaged in direct, contributory and vicarious infringement of

18  Mattel's copyrighted works.

19        86.   By virtue of defendants' infringing acts, Mattel is entitled to

20  recover Mattel's actual damages plus Counter-defendants' profits, Mattel's costs of

21  suit and attorneys' fees, and all other relief permitted under the Copyright Act.

22        87.   Counter-defendants' actions described above have caused and

23  will continue to cause irreparable damage to Mattel, for which Mattel has no

24  remedy at law.  Unless Counter-defendants are restrained by this Court from

25  continuing their infringement of Mattel's copyrights, these injuries will continue to

26  occur in the future.  Mattel is accordingly entitled to injunctive relief restraining

27  Counter-defendants from further infringement.

28

2154363.2

-54-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT __ C/
PAGE 224

### Second Counterclaim

**Violation of the Racketeer Influenced and Corrupt Organizations Act**

**18 U.S.C. §§ 1962(c) and 1964(c)**

**(Against All Counter-defendants)**

88.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 87, above, as though fully set forth at length.

89.  Beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas and Brisbois were employed by and associated-in-fact with an enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "MGA Criminal Enterprise").  The MGA Criminal Enterprise is made up of the MGA Group (MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, certain of the Doe Counter-defendants and Brawer), the Bryant Group (Bryant and certain of the Doe Counter-defendants), the Mexican Group (Machado, Trueba and Vargas) and the Canadian Group (Brisbois).  In addition, beginning at various times from approximately 1999 through the filing of this Second Amended Answer and Counterclaims, in the Central District of California and elsewhere, Counter-defendants MGA, MGA Entertainment (HK) Limited, Larian and Bryant, and certain of the Doe Counter-defendants, were employed by and associated-in-fact with a second enterprise engaging in, and the activities of which affect, interstate and foreign commerce (the "Bratz Criminal Enterprise").

90.  MGA, MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas, Brisbois, and the Other Former Employees, and each of them, for the purpose of executing and attempting to execute the scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information, by

SECOND AMENDED ANSWER AND COUNTERCLAIMS

!154363.2

1  means of tortious, fraudulent and criminal conduct, did and do unlawfully, willfully

2  and knowingly conduct and participate, directly and indirectly, in the conduct of

3  the MGA Criminal Enterprise's affairs and, in the case of MGA, MGA

4  Entertainment (HK) Limited, Larian, Bryant, and certain of the Doe Counter-

5  defendants, the Bratz Criminal Enterprise's affairs, through a pattern of

6  racketeering activity.  Their actions include multiple, related acts in violation of:

7  18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1512

8  (tampering with a witness victim, or informant), 18 U.S.C. § 1952 (interstate and

9  foreign travel to aid racketeering), and 18 U.S.C. § 2319(a) and 17 U.S.C. §

10  506(a)(1)(A) (criminal copyright infringement).

11           91.   MGA, MGA Entertainment (HK) Limited, MGA de Mexico,

12  Larian, Bryant, Machado, Does 4 through 10, and Brawer, Trueba, Vargas,

13  Brisbois, and the Other Former Employees, and each of them, shared the common

14  purpose of enabling MGA to obtain confidential, proprietary and otherwise

15  valuable Mattel property through improper means in order to assist MGA in

16  illegally competing with Mattel domestically and throughout the world.

17           92.   The MGA Criminal Enterprise and Bratz Criminal Enterprise as

18  described herein are and have been at all relevant times continuing enterprises

19  because, among other reasons, each is designed to and did unlawfully acquire the

20  confidential business information and property of Mattel and incorporated this

21  information and property into MGA's ongoing business, marketing strategies and

22  business methods, practices and processes.  The conduct of each enterprise

23  continues through the date of this Second Amended Answer and Counterclaims and

24  is ongoing by virtue of MGA's continuing use of Mattel's information and property,

25  all to the detriment of Mattel.

26           93.   The pattern of racketeering activity, as defined by 18 U.S.C.

27  §§ 1961(1) and (5), presents both a history of criminal conduct and a distinct threat

28  of continuing criminal activity.  This activity consists of multiple acts of

2154363.2

-56-

EXHIBIT

PAGE 226

1    racketeering by each member of the MGA Criminal Enterprise and Bratz Criminal
2    Enterprise, is interrelated, not isolated and is perpetrated for the same or similar
3    purposes by the same persons.  This activity extends over a substantial period of
4    time, up to and beyond the date of this Second Amended Answer and
5    Counterclaims.  These activities occurred after the effective date of 18 U.S.C.
6    §§ 1961 *et seq.,* and the last such act occurred within 10 years after the commission
7    of a prior act of racketeering activity.  These racketeering activities included
8    repeated acts of:

9          (a)   Mail Fraud:  Counter-defendants MGA, MGA Entertainment
10             (HK) Limited, MGA de Mexico, Larian, Bryant, Machado and
11             Does 4 through 10, aided and abetted by each other and some or
12             all of the remaining members of the MGA Criminal Enterprise,
13             having devised a scheme or artifice to defraud Mattel of its
14             confidential trade secret information and property by conversion,
15             false representations, concealment and breaches of fiduciary duty,
16             did for the purpose of furthering and executing such a scheme or
17             artifice to defraud, deposited or caused to be deposited matters or
18             things to be sent or delivered by the Postal Service, or any private
19             or commercial interstate carrier, or took or received matters or
20             things therefrom, or knowingly caused matters or things to be
21             delivered by mail or such carrier according to the direction
22             thereon, or at the place at which it is directed to be delivered by
23             the person to whom it is addressed, in violation of 18 U.S.C.
24             § 1341 and 18 U.S.C. § 2, as alleged with greater particularity in
25             the foregoing paragraphs and as evidenced by, among other
26             things, the true and correct copies of communications and other
27             evidence included in Exhibit C;
28

EXHIBIT 14

PAGE 227

(b)   Wire Fraud:  Counter-defendants MGA, MGA Entertainment
(HK) Limited, MGA de Mexico, Larian, Bryant, Machado and
Does 4 through 10, aided and abetted by each other and some or
all of the remaining members of the MGA Criminal Enterprise,
having devised a scheme or artifice to defraud Mattel of its
confidential and trade secret information and property by
conversion, false representations, concealment and breaches of
fiduciary duty, did for the purpose of furthering and executing
such a scheme or artifice to defraud, transmit and cause to be
transmitted by means of wire communications in interstate or
foreign commerce, writing, signs, signals, pictures or sound, in
violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2, as alleged with·
greater particularity in the foregoing paragraphs and as evidenced
by, among other things, the true and correct copies of
communications and other evidence included in Exhibit C;

(c)   Tampering With a Witness, Victim or Informant:  Counter-
defendants MGA, MGA Entertainment (HK) Limited, MGA de
Mexico, Larian, Bryant, Machado and Does 4 through 10, aided
and abetted by each other and some or all of the remaining
members of the MGA Criminal Enterprise, did corruptly alter,
destroy, mutilate, or conceal more than one record, document, or
other object, or attempted to do so, with the intent to impair the
object's integrity or availability for use in an official proceeding,
including this action, including without limitation by:

i.     altering Bryant's contract with MGA relating to
Bratz to conceal evidence that Bryant faxed the contract from the
BARBIE COLLECTIBLES department of Mattel, using a fax

-58-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _____
PAGE 228

1   machine owned by Mattel and while Bryant was employed by

2   Mattel;

3         ii.    altering numerous original Bratz drawings created

4   by Bryant by adding false and misleading date notations of

5   "8/1998" and "© 8/1998" to the drawings even though the

6   drawings were not created in August 1998; and

7         iii.   destroying electronic and other evidence, including

8   by destroying evidence previously contained on Carter Bryant's

9   and Isaac Larian's computer hard drives.

10       Such actions are in violation of 18 U.S.C. § 1512 and 18

11   U.S.C. § 2, as alleged with greater particularity in the foregoing

12   paragraphs;

13       (d)   Interstate and Foreign Travel in Aid of Racketeering Enterprises:

14   Counter-defendants MGA, MGA Entertainment (HK) Limited,

15   MGA de Mexico, Larian, Bryant, Machado and Does 4 through

16   10, aided and abetted by each other and some or all of the

17   remaining members of the MGA Criminal Enterprise, traveled in

18   interstate and foreign commerce, or used the mail or any facility

19   in interstate or foreign commerce, with the intent to promote,

20   manage, establish, carry on and facilitate the promotion,

21   management, establishment and carrying on of unlawful activity,

22   *i.e.* bribery, in violation of the laws of the State of California,

23   *Cal. Penal Code* § 641.3, all in violation of 18 U.S.C. § 1952 and

24   18 U.S.C. § 2, as alleged with greater particularity in the

25   foregoing paragraphs;

26       (e)   Criminal Copyright Infringement: Counter-defendants MGA,

27   MGA Entertainment (HK) Limited, MGA de Mexico, Larian,

28   Bryant, Machado and Does 4 through 10, aided and abetted by

2154363.2

-59-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

PAGE 229

1         each other and some or all of the remaining members of the MGA

2         Criminal Enterprise, willfully infringed Mattel's copyrights,

3         including with respect to documents containing Mattel trade

4         secret and confidential information, for purposes of commercial

5         advantage and private financial gain, all in violation of 18 U.S.C.

6         § 2319(a) and 17 U.S.C. § 506(a)(1)(A), as alleged with greater

7         particularity in the foregoing paragraphs.

8         94.   The persons alleged herein to have violated 18 U.S.C. § 1962(c)

9 are separate from, though employed by or associated with, MGA, the MGA Group,

10 the Bryant Group, the Mexican Group and the Canadian Group.

11         95.   MGA had a role in the racketeering activity that was distinct

12 from the undertaking of those acting on its behalf. MGA also attempted to benefit,

13 and did benefit, from the activity of its employees and agents alleged herein, and

14 thus was not a passive victim of racketeering activity, but an active perpetrator.

15         96.   Mattel has been injured in its business or property as a direct

16 and proximate result of the Counter-defendants' and the other enterprise members'

17 violations of 18 U.S.C. § 1962(c), including injury by reason of the predicate acts

18 constituting the pattern of racketeering activity.

19         97.   As a result of the violations of 18 U.S.C. § 1962(c), by MGA,

20 MGA Entertainment (HK) Limited, MGA de Mexico, Larian, Bryant, Machado,

21 Does 4 through 10, Brawer, Trueba, Vargas, Brisbois and the Other Former

22 Employees, Mattel has suffered substantial damages, in an amount to be proved at

23 trial. Pursuant to 18 U.S.C. § 1964(c), Mattel is entitled to recover treble its

24 general and special compensatory damages, plus interest, costs and attorneys, fees,

25 incurred by reason of Counter-defendants' violations of 18 U.S.C. § 1962(c).

26

27

28

2154363.2

1        15.   That Mattel have such other and further relief as the Court may

2  deem just and proper.

3

4  DATED:  July 12, 2007        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6                  By _____

7                     John B. Quinn
                        Attorneys for Defendant and Counter-

8                        claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

154363.2

EXHIBIT 14
PAGE 231

# EXHIBIT 15

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 16

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Mattel, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

12   CARTER BRYANT, an individual,       CASE NO. CV 04-9049 SGL (RNBx)

13          Plaintiff,                    Consolidated with Case No. CV 04-
                                          09059 and Case No. CV 05-02727
14       vs.
                                          **DISCOVERY MATTER**
15   MATTEL, INC., a Delaware
     corporation,                         **[To Be Heard By Discovery Master
16                                        Hon. Edward Infante (Ret.) Pursuant
            Defendant.                    To The Court's Order of December 6,
17                                        2006]**

18   AND CONSOLIDATED ACTIONS             NOTICE OF MOTION AND MOTION
                                          OF PLAINTIFF MATTEL, INC. FOR
19                                        ORDER FINDING WAIVER AND TO
                                          COMPEL PRODUCTION OF
20                                        DOCUMENTS WITHHELD AS
                                          PRIVILEGED; AND
21
                                          MEMORANDUM OF POINTS AND
22                                        AUTHORITIES

23                                        [Declaration of Bernard B. Smyth filed
                                          concurrently]
24
                                          Date:   February 8, 2008
25                                        Time:   9:30 a.m.
                                          Place:  TBA
26
                                          **Phase 1**
27                                        Discovery Cut-Off:    January 28, 2008
                                          Pre-Trial Conference: May 5, 2008
28                                        Trial Date:           May 27, 2008

07209/2356870.1

MATTEL'S MOTION FOR ORDER FINDING IMPLIED WAIVER AND TO COMPEL DOCUMENTS

EXHIBIT 14
PAGE 239

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that, at a conference before Discovery Master
3  Hon. Edward Infante (Ret.) that will occur on February 8, 2008 at 9:30 a.m., or at
4  another date and time to be set by Judge Infante, plaintiff Mattel, Inc. ("Mattel") will,
5  and hereby does, move the Court pursuant to <u>Federal Rules of Civil Procedure</u> 26 and
6  37 to compel MGA Entertainment, Inc. ("MGA") and Isaac Larian to produce all
7  documents, communications and information related to advice they sought and/or
8  received prior to April 27, 2004, regarding the legal propriety of MGA's contracting
9  with Bryant regarding Bratz, MGA's subsequent copying, development, production
10 and sales of Bratz, and MGA's or Bryant's obligations to Mattel, including without
11 limitation (1) Entry Nos. 655-657 and 660 on MGA's August 14, 2007 Supplemental
12 Privilege Log, (2) Entry Nos. 12-19 and 21-27 on MGA's Supplemental Revised
13 Privilege and Redaction Log for MGA's 2005 Document Production, (3) Entry Nos.
14 89 and 90 on Isaac Larian's Privilege Log, and (4) testimony in response to questions
15 that MGA's counsel instructed Isaac Larian not to answer at his deposition (<u>see</u>
16 Larian Depo. Tr. at 47:22-48:1).

17     This Motion is made on the grounds that MGA and Isaac Larian have
18 waived any claimed privilege as to these materials because they have affirmatively
19 asserted good faith affirmative defenses, putting protected information relevant to
20 those defenses at issue, and because the application of the attorney-client privilege or
21 work product doctrine would deny Mattel information vital to responding to MGA
22 and Larian's affirmative defenses.

23     This Motion is based on this Notice of Motion and Motion, the
24 accompanying Memorandum of Points and Authorities, the Declaration of Bernard B.
25 Smyth filed concurrently herewith, the records and files of this Court, and all other
26 matters of which the Court may take judicial notice.

27

28

07209/2356870.1

-2-

1  **Statement of Rule 37-1 Compliance**

2      The parties met and conferred regarding MGA and Larian's implied

3  waiver of privilege on January 23, 2008.

4

5  DATED: January 23, 2008      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6

7                          By _____

8                            Bernard B. Smyth

9                            Attorneys for Plaintiff
                          Mattel, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS .................................................................................... 2

ARGUMENT........................................................................................................ 8

I.   FAIRNESS DEMANDS THAT MGA AND LARIAN PRODUCE PROTECTED INFORMATION........................................................................ 8

II.   MGA AND LARIAN HAVE IMPLIEDLY WAIVED PRIVILEGE.............. 11

CONCLUSION..................................................................................................... 15

07209/2356870.1

i

EXHIBIT LL

PAGE 242

1

## **TABLE OF AUTHORITIES**

2
                                                                                        **Page**

3

### **Cases**

4

Bittaker v. Woodford,
5   331 F.3d 715 (9th Cir. 2003) .................................................................................... 10

6   Chevron Corp. v. Pennzoil Corp.,
     974 F.2d 1156 (9th Cir. 1992) ..................................................................................... 8
7
    Cox v. Administrator U.S. Steel & Carnegie,
8     17 F.3d 1386 (11th Cir. 1994), cert denied, 513 U.S. 1110 (1995) ............. 9, 12, 14

9   Hearn v. Rhay,
     68 F.R.D. 574 (E.D. Wash. 1975) ............................................................. 11, 12, 13
10
    United States v. Amlani,
11    169 F.3d 1189 (9th Cir. 1999) ........................................................................... 11, 12

12  United States v. Blizerian,
     926 F.2d 1285 (2d Cir. 1991), cert denied, 502 U.S. 813 (1991) .................... 12, 13
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT

PAGE 243

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The lynchpin of a number of MGA's and Isaac Larian's affirmative defenses is their allegation that they "acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA . . . was valid and permissible."  MGA claims it "did not believe that Mattel owned any of the materials Carter Bryant presented to it" and, in fact, "took steps to confirm the timing of Bryant's work prior to executing the agreement" with him.  Yet MGA and Larian have refused to produce any information showing what those steps were and what advice they sought and received regarding (i) the propriety of contracting with Bryant and (ii) the subsequent copying, development, production and sales of Bratz.  They have consistently shielded that information behind the attorney-client privilege.

Thus, MGA and Larian are withholding substantial evidence showing what they were told regarding the propriety of their actions, while at the same time baldly professing their good faith.  For example, as evidence of his good faith, Larian testified that he instructed an MGA executive to consult with MGA's attorneys concerning Bryant's contract obligations with Mattel before he contracted with Bryant and that she did so.  However, MGA's counsel instructed Larian not to go beyond that partial disclosure.  MGA is thus trying to rely on the consultation with counsel -- and the implication that it was advised that MGA could properly contract with Bryant -- as evidence of its good faith, but at the same time withhold the actual substance of the advice.  MGA and Larian are likewise withholding dozens of emails from the dates leading up to the execution of MGA's agreement with Bryant that show what MGA asked its lawyers and what its lawyers told it regarding the propriety of contracting with Bryant.

MGA is also withholding several emails to and from its attorneys after MGA first unveiled Bratz.  Those emails are described as seeking and receiving legal

1   advice regarding Bryant's contract and licensing. They likely show what MGA was

2   told about the propriety of further copying and sales of Bratz. Further, MGA is

3   withholding communications with its litigation counsel from June 2001 -- nearly

4   three years before Mattel filed suit -- which are described as "requesting legal advice

5   regarding Mattel litigation" and "seeking legal advice regarding Bratz."

6          Fairness demands that MGA and Larian produce those documents and

7   any other information they are withholding regarding advice they sought and/or

8   received regarding the legal propriety of MGA's contract with Bryant and subsequent

9   copying and sales of Bratz. The case law is clear that in asserting their good faith as

10   affirmative defenses, MGA and Larian have put in issue otherwise privileged

11   information showing their true state of mind regarding the legal propriety of their

12   actions. In order to fairly respond to MGA's asserted "good faith," Mattel needs

13   access to the documents that would show what advice MGA and Larian were

14   provided, and what steps they took (and asked their lawyers to take) to do "due

15   diligence" about Bryant's representations and Bryant's relationship with Mattel. The

16   only actual evidence necessary to test MGA's "good faith" defenses in this case is

17   privileged communications that MGA and Larian refuse to produce. MGA and

18   Larian cannot use the privilege as both a sword -- in baldly proclaiming their good

19   faith -- and as a shield.

20                    **Statement of Facts**

21          <u>Mattel's Counterclaims and MGA's "Good Faith" Affirmative Defenses.</u>

22   Mattel filed its Second Amended Answer and Counterclaims on July 12, 2007.[1]

23   Mattel alleges, among other things, that MGA and Larian (collectively, "MGA")

24   encouraged, aided and paid Carter Bryant to develop Bratz designs while Bryant was

25

26   _____

27   [1]   Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims,
      dated July 12, 2007, attached as Exhibit 3 to the concurrently filed Declaration of

28   Bernard B. Smyth ("Smyth Dec.").

1  a Mattel employee, knowing that such conduct was a breach of Bryant's contractual

2  duties to Mattel;[2] that MGA and Bryant intentionally concealed these facts from

3  Mattel;[3] that Mattel is the rightful owner of Bratz drawings; and that MGA's

4  infringement of Mattel copyrights in those drawings harmed, and continues to harm,

5  Mattel.[4]  Mattel claims that MGA and Larian are liable for, among other things,

6  aiding and abetting Bryant's breaches of duty to Mattel, copyright infringement, and

7  willful copyright infringement.[5]

8        MGA asserted 22 affirmative defenses in response to Mattel's

9  counterclaims.  Central to a number of those defenses is MGA's claim that it "acted

10  with a good faith belief that Bryant owned the rights to his original Bratz drawings

11  and that his assignment of such rights to MGA . . . was valid and permissible."[6]

12  MGA also separately asserts the defense of "good faith" to Mattel's counterclaims.[7]

13  Thus, MGA has affirmatively put its state of mind at issue and done so repeatedly.

14        <u>MGA's Discovery Responses Demonstrate Continued Reliance on Its</u>

15  <u>Alleged "Good Faith."</u>  Discovery in this case also has demonstrated that MGA

16  clearly intends to rely on its alleged "good faith" in defending Mattel's counterclaims.

17  In response to requests for admissions, MGA acknowledged that "it contends it

18  believed at the time it entered into its agreement with Bryant and at all times

19  thereafter" that:

---

2  <u>Id.</u>, ¶ 33.

3  <u>Id.</u>, ¶ 35.

4  <u>Id.</u>, ¶¶ 83-87.

5  <u>Id.</u>, ¶¶ 83-87, 136-141, 149-154.

6  <u>See, e.g.</u>, MGA's Fifth and Sixth Affirmative Defenses, Amended Answer and
Affirmative Defenses of MGA Entertainment Inc., MGA Entertainment (HK)
Limited, and MGAE de Mexico S.R.L. de C.V. to Mattel, Inc.'s Second Amended
Answer and Counterclaims, dated September 19, 2007, at p. 22, Smyth Dec., Exh. 4.

7  MGA's Eighteenth Affirmative Defense, <u>Id.</u> at p. 25.

07209/2356870.1

-3-

1  • "[I]t had the right to market products developed as a result of its agreement with Bryant;"[8]

2  • "[I]t would have the lawful right to fully exploit the drawings drawn and presented by Bryant prior to the execution of MGA's agreement with Bryant;"[9]

4

5  • "[I]t had the right to fully exploit products developed as a result of its agreement with Bryant;"[10] and

6  • "[I]t had the lawful right to fully exploit the drawings drawn and presented by Bryant prior to the execution of its agreement with Bryant."[11]

7

8  In addition, as recently as January 7, 2008, MGA served interrogatory

9  responses in which it contended that "MGA acted in good faith when Bryant

10  transferred and MGA acquired all rights to the Bratz concept,"[12] and that MGA "acted

11  with a good faith belief that Bryant owned the rights to his original Bratz drawings

12  and that his assignment of such rights to MGA [] was valid and permissible."[13]  MGA

13  contends that, "despite [its] fair inquiry" it did not know that Carter Bryant entered

14  into an inventions agreement with Mattel.[14]  According to MGA, these contentions

15  support its affirmative defenses.[15]

16  <u>MGA Shields the Only Evidence that Could Rebut Its Alleged "Good</u>

17  <u>Faith" Behind the Attorney-Client Privilege.</u>  Although MGA has repeatedly injected

18  its alleged "good faith" as to the central events in this case, it refuses to produce the

19  ────────────────────

20  [8]  MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set

21  of Requests for Admission, dated August 21, 2007, at p. 4, Smyth Dec., Exh. 5.
   [9]  <u>Id.</u> at p. 5.

22  [10]  <u>Id.</u> at p. 6.
   [11]  <u>Id.</u> at p. 8.

23  [12]  MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory

24  Regarding Defendants' Affirmative Defenses, dated January 7, 2008, at p. 35, Smyth

25  Dec., Exh. 6.
   [13]  <u>Id.</u> at p. 32.

26  [14]  MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s

27  Revised Third Set of Interrogatories, dated January 7, 2008, at pp. 79-80, Smyth
   Dec., Exh. 7.

28  [15]  <u>Id.</u>

07209/2356870.1

1   communications with its attorneys that are the only evidence of (1) what it actually
2   thought, and was advised about, the legal propriety of contracting with Bryant and the
3   subsequent copying and sales of Bratz, and (2) what inquiry, if any, it asked its
4   lawyers to conduct.  MGA has withheld those communications as privileged.

5       According to MGA, Isaac Larian and other MGA personnel, including
6   Victoria O'Connor, first met with Bryant on September 1, 2000.  MGA admits that
7   "Bryant told them . . . that he was employed by Mattel at that time."[16]  MGA claims
8   that despite some undisclosed "fair inquiry," it did not know Bryant had signed an
9   inventions agreement with Mattel.  However, MGA produced a fax from the same
10  time period (September 14, 2000) from Bryant to David Rosenbaum, who both
11  Larian and O'Connor testified was the attorney MGA hired to assist with the Bryant
12  contract,[17] in which Bryant encloses his offer letter with Mattel.  That offer letter
13  expressly calls attention to his Confidential Information and Inventions Agreement.[18]
14  In the fax, Bryant advised MGA's lawyer that he was "unable to look into this too
15  much . . . without risking suspicion" on Mattel's part.[19]

16      MGA claims that "Bryant and his counsel . . . represented and warranted
17  to MGA that Bryant was the exclusive originator and owner of his Bratz ideas and
18  drawing and that no third party had any interest or rights in the drawings or ideas
19  reflected in the drawings."[20]  Despite Bryant's alleged representations, Larian testified
20  that in entering into a contract with Bryant he "wanted to make sure . . . that this idea

21

22  [16]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set
23  of Requests for Admission, dated August 21, 2007, at p. 21, Smyth Dec., Exh. 5.
    [17]   Deposition Transcript of Victoria O'Connor, dated December 6, 2004
24  ("O'Connor Depo. Tr."), at 226:24-227:7, Smyth Dec., Exh. 10; Larian Depo. Tr. at
25  50:25-51:6, 140:18-140:21, Smyth Dec., Exh. 9.
    [18]   See Smyth Dec., Exh. 8.
26  [19]   Id.
27  [20]   MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory
    Regarding Defendants' Affirmative Defenses, dated January 7, 2008, at p. 35, 76-77,
28  Smyth Dec., Exh. 6.

07209/2356870.1

EXHIBIT 16

PAGE 248

1    that he was showing us was nothing that was at Mattel or Mattel had done."[21]  In fact,

2    MGA has stated that "[b]ased on the information provided to it, MGA did not believe

3    that Mattel owned any of the materials Carter Bryant presented to it, *but nonetheless*

4    *took steps to confirm the timing of Mr. Bryant's work prior to executing the*

5    *agreement*, as Mr. Larian testified to at his deposition."[22]  At his deposition, Larian

6    testified that, as evidence of his good faith, he asked Victoria O'Connor to make sure

7    to check with MGA's attorney regarding whether Bryant had a contract with Mattel.[23]

8          However, MGA has refused to disclose what its attorneys told it

9    regarding the legal propriety of contracting with Bryant.  MGA's counsel instructed

10    Larian not to answer, on attorney-client privilege grounds, questions regarding what

11    MGA asked its attorneys about the propriety of contracting with Bryant and what its

12    attorneys told MGA.[24]  MGA is also withholding more than a dozen emails between

13    O'Connor and Rosenbaum that were sent between September 1, 2000, the date of the

14    claimed meeting with Bryant, and October 4, 2000, the date Bryant's contract was

15    executed.[25]  Those emails are all described as messages "rendering [or requesting]

16    legal advice regarding Carter Bryant contract."[26]  Many emails between O'Connor

17    and Rosenbaum from the same time period were withheld by Rosenbaum as well.[27]

---

[21]    Deposition Transcript of Isaac Larian, dated July 18, 2006 ("Larian Depo. Tr."), at 46:16-19, Smyth Dec., Exh. 9.

[22]    MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at p. 12 (emphasis added), Smyth Dec., Exh. 5.

[23]    Larian Depo. Tr. at 47:16-23, Smyth Dec., Exh. 9.

[24]    Id. at 47:22-48:1.

[25]    Supplemental Revised Privilege and Redaction Log for MGA's 2005 Document Production, Entry Nos. 12-19, 21-27, Smyth Dec., Exh. 11.

[26]    Id.

[27]    David Rosenbaum's Privilege Log, Entry Nos. 9-17, 19-25, Smyth Dec., Exh. 12.

1   Those emails may include advice regarding the propriety of MGA contracting with
2   Bryant and MGA's or Bryant's obligations to Mattel.

3        MGA alleges that it first unveiled Bratz at the Hong Kong Toy Fair in
4   January 2001.[28]  The next month, on February 10, 2001, Isaac Larian emailed David
5   Rosenbaum, noting that "Bratz are very hot."[29]  MGA redacted the rest of that email
6   as privileged, describing it as "requesting legal advice regarding Carter Bryant
7   contract and licensing."[30]  That email apparently started a series of communications --
8   first between Larian and Rosenbaum and then between O'Connor and Rosenbaum --
9   all described as "requesting [or rendering] legal advice regarding Carter Bryant
10  contract and licensing."[31]  MGA is withholding all of those communications.

11       MGA is thus withholding dozens of emails between MGA and its
12  counsel that, based on their description, evidence legal advice MGA requested and
13  received regarding the legal propriety of contracting with Bryant, both before the
14  contract with him was executed and once it became apparent that MGA would begin
15  significant efforts copying, developing, producing and selling Bratz.

16       Isaac Larian is also personally withholding on privilege grounds
17  documents that appear to evidence what he knew regarding the legal propriety of
18  MGA's contract with Bryant and subsequent development of Bratz.  Larian's privilege
19  log, which the Discovery Master ordered Larian to provide and which was served last
20  week, includes a June 30, 2001 email from Larian to Patricia Glaser, Larian's
21  litigation counsel.  The email is described as a "message requesting legal advice
22
23

---

24  [28]   MGA's Complaint in Case No. 05-2727, dated April 13, 2005, ¶ 23, Smyth
25  Dec., Exh. 13.
    [29]   See Smyth Dec., Exh. 14.
26  [30]   Supplemental Revised Privilege and Redaction Log for MGA's 2005 Document
27  Production, Entry No. 8, Smyth Dec., Exh. 11.
    [31]   Id., Entry Nos. 3-6, 8-11.
28

07209/2356870.1

1   regarding Mattel litigation,"[32] and was sent approximately when the Bratz dolls were
2   first put on sale,[33] well before Mattel filed suit in April 2004.  Additional emails from
3   Larian to Glaser between June 29, 2001 and July 2, 2001, are listed on MGA's logs as
4   well,[34] including one described as an email "seeking legal advice regarding Bratz."[35]
5   These 2001 communications between Larian and Glaser are particularly suspicious in
6   light of Victoria O'Connor's testimony.  She testified that the executed agreement
7   between Bryant and MGA was faxed to her by Bryant with a heading at the top
8   stating "Barbie Collectibles."[36]   She acknowledged that the heading caused her
9   concern "because [Bryant] was still at Mattel at the time the contract was executed."[37]
10  She expressed that concern to Isaac Larian.[38]   Larian then asked her to whiteout
11  "Barbie Collectibles" from the faxed agreement and send it to Patricia Glaser.[39]

12                                **Argument**

13  **I.     FAIRNESS DEMANDS THAT MGA AND LARIAN PRODUCE**
14  **        PROTECTED INFORMATION**

15              In the Ninth Circuit as elsewhere, "[t]he privilege which protects
16  attorney-client communications may not be used both as a sword and a shield.  When
17  a party raises a claim which in fairness requires disclosure of the protected
18  communication, the privilege may be implicitly waived." <u>Chevron Corp. v. Pennzoil</u>
19  <u>Corp.</u>, 974 F.2d 1156, 1162 (9th Cir. 1992) (citation omitted).

20  _____

21  [32]  Larian Privilege Log, Entry No. 89, Smyth Dec., Exh. 15.  Entry No. 90 on
22  Larian's log is another communication from Larian to Glaser, dated June 29, 2001.
23  [33]  MGA's Complaint in Case No. 05-2727, dated April 13, 2005, ¶ 23 ("MGA
    introduced [Bratz] to consumers in June 2001."), Smyth Dec., Exh. 13.
24  [34]  MGA's August 14, 2007 Supplemental Privilege Log, Entry Nos. 655-657, 660,
    Smyth Dec., Exh. 16.
25  [35]  <u>Id.</u>, Entry No. 660.
26  [36]  O'Connor Depo. Tr. at 18:13-18, Smyth Dec., Exh. 10.
27  [37]  <u>Id.</u> at 20:8-20.
    [38]  <u>Id.</u> at 20:8-21:20.
28  [39]  <u>Id.</u> at 18:13-18.

EXHIBIT 10

1    It is unfair for MGA to argue that it should be absolved of liability
2  because it supposedly had a good faith belief that its actions were lawful, while at the
3  same time withholding from production communications with its attorneys bearing on
4  that very subject. The withheld communications reflect the "steps [MGA took] to
5  confirm the timing of Mr. Bryant's work prior to executing the agreement" and the
6  "fair inquiry" MGA claims it conducted, and apparently form the basis of MGA's
7  claim that "at the time it entered into its agreement with Bryant . . . it had the lawful
8  right to fully exploit the drawings drawn and presented by Bryant."[40]   Such
9  communications may show that MGA was, in truth, aware that Mattel had or may
10  have legal rights to Bratz and are critical evidence regarding the merits of MGA's
11  "good faith" defenses and are the only way for Mattel to test its claim of good faith.

12    Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1418-20
13  (11th Cir. 1994), cert denied, 513 U.S. 1110 (1995), is instructive. In that case, the
14  defendant claimed that at the time it revised the leave-of-absence policy at issue in
15  the case it "believed the policy to be lawful." Id. at 1418. Thus, defendant's alleged
16  "good faith" was at issue. Although the defendant did not claim that its belief was
17  based on communications with attorneys, the court upheld a finding of implied
18  waiver because defendant's claimed belief "necessarily implicates all of the
19  information at its disposal when it made the decision to change the leave of absence
20  policy." Id. The court ordered the defendant to produce communications with its
21  lawyers about the lawfulness of its policy, holding that defendant's allegation of
22  "good faith" injected "into the case an issue that in fairness requires an examination
23  of otherwise protected communications." Id. at 1419.

24

25

---

26    [40]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set
27  of Requests for Admission, dated August 21, 2007, at p. 8, 12, Smyth Dec., Exh. 5;
MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s Revised
28  Third Set of Interrogatories, at pp. 79-80, dated January 7, 2008, Smyth Dec., Exh. 7.

1       Similarly here, MGA has injected into this litigation what advice it
2   received from its lawyers regarding the legality of its contract with Bryant and its
3   rights to copy and sell Bratz. MGA cannot obtain the benefit of invoking the advice
4   of counsel as establishing good faith -- including the clear implication that Bryant
5   was legally free to contract with MGA -- but withhold the rest of the communication.
6   Fairness requires that Mattel be permitted to examine that information. That is
7   especially true here because the *only* evidence of what MGA knew regarding the
8   lawfulness of its actions has been withheld as privileged. By "assert[ing] claims the
9   opposing party cannot adequately dispute unless it has access to the privilege
10  materials," Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003), MGA has
11  waived the privilege.

12      It is clear that MGA sought and obtained legal advice regarding the
13  propriety of entering into a contract with Bryant, who it knew to be employed by
14  Mattel as a doll designer, to acquire Bratz, and subsequent copying of Bratz. Larian
15  testified that in entering into a contract with Bryant he "wanted to make sure . . . that
16  this idea that he was showing us was nothing that was at Mattel or Mattel had
17  done."[41]   MGA has stated that it "took steps to confirm the timing of Mr. Bryant's
18  work prior to executing the agreement."[42]   MGA claims to have conducted a "fair
19  inquiry."[43]  This is a partial disclosure, for MGA's benefit, of its communications with
20  counsel. And MGA concedes that it affirmatively has put its alleged good faith at
21  issue.[44]   Yet MGA has refused to provide testimony or produce documents that

22

---

23      [41]  Larian Depo. Tr. at 46:16-19, Smyth Dec., Exh. 9.
24      [42]  MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set
25  of Requests for Admission, dated August 21, 2007, at p. 12, Smyth Dec., Exh. 5.
        [43]  MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s
26  Revised Third Set of Interrogatories, at pp. 79-80, dated January 7, 2008, Smyth
27  Dec., Exh. 7.
        [44]  MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set
28  of Requests for Admission, dated August 21, 2007, at pp. 4-8, Smyth Dec., Exh. 5.

-10-

1  demonstrate what those steps were or what MGA learned in taking those steps. The

2  closest MGA has come to providing that information is when Larian testified that he

3  asked Victoria O'Connor to make sure to check with MGA's attorney regarding

4  whether Bryant had a contract with Mattel, but he was then promptly interrupted by

5  his counsel and instructed not to divulge any attorney-client communications.[45] Such

6  partial "lifting of the veil" to gain an advantage is clearly improper.

7          MGA and Larian are withholding dozens of documents that, based on

8  privilege log descriptions, appear to involve legal advice regarding the propriety of

9  MGA's actions. Those include emails from Larian to Patricia Glaser seeking legal

10 advice regarding "Bratz" and "Mattel litigation" even as Bratz was first being released

11 and no litigation was pending. Fairness demands that MGA produce those

12 documents and any other information that MGA is withholding as privileged

13 regarding advice it sought and/or obtained regarding the propriety of contracting with

14 Bryant, MGA's or Bryant's obligations to Mattel, and the propriety of MGA's

15 copying, development, production and/or sales of Bratz.

16 **II.    MGA AND LARIAN HAVE IMPLIEDLY WAIVED PRIVILEGE**

17          As MGA has recognized,[46] the Ninth Circuit applies the three-part test

18 set forth in Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975), to determine

19 whether a party has impliedly waived privilege: "(1) assertion of the privilege was a

20 result of some affirmative act, such as filing suit, by the asserting party; (2) through

21 this affirmative act, the asserting party put the protected information at issue by

22 making it relevant to the case; and (3) application of the privilege would have denied

23 the opposing party access to information vital to his defense." See also United States

24

25

---

26  [45]   Larian Depo. Tr. at 47:16-23, Smyth Dec., Exh. 9.

27  [46]   See MGA's Notice of Motion and Motion to Compel Regarding Mattel's
    Privilege Waiver by Claim Assertion, dated December 18, 2007, at pp. 15-16, Smyth

28  Dec., Exh. 17.

07209/2356870.1

-11-

1  v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999) (applying the Hearn test for implied

2  waiver).

3  Under the Hearn test, which MGA heavily relies on in its recently filed

4  motion for implied waiver against Mattel, MGA and Larian have waived the privilege

5  by asserting their "good faith" affirmative defenses.  The facts here are closely

6  analogous to those in Hearn, where the court found implied waiver.  In Hearn,

7  defendants asserted as a defense "in their answer that they 'have acted in good faith.'"

8  Hearn, 68 F.R.D. at 578.  The court found that all the elements of its three-part test

9  were satisfied because:

> [D]efendants invoked the privilege in furtherance of an
> affirmative defense they asserted for their own benefit;
> through this affirmative act they placed the privileged
> information at issue, for the legal advice they received is
> germane to the qualified immunity defense they raised; and
> one result of asserting the privilege has been to deprive
> plaintiff of information necessary to 'defend' against
> defendants' affirmative defenses, for the protected information
> is also germane to plaintiff's burden of proving malice or
> unreasonable disregard of his clearly established
> constitutional rights.

18  Id. at 581.

19  The same is true here.  First, as in Hearn, MGA has asserted the privilege

20  by alleging the affirmative defense of "good faith."  The assertion of an affirmative

21  defense based on good faith is a particularly common grounds for finding implied

22  waiver.  See, e.g., Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1419

23  (11th Cir. 1994), cert denied, 513 U.S. 1110 (1995) ("Having gone beyond mere

24  denial, affirmatively to assert good faith, USX injected the issue of its knowledge of

25  the law into the case and thereby waived the attorney-client privilege."); United

26  States v. Blizerian, 926 F.2d 1285, 1293 (2d Cir. 1991), cert denied, 502 U.S. 813

27  (1991) (defendant's good faith assertion that his actions were lawful waived attorney-

28  client privilege).

1    Second, MGA's "good faith" defenses have affirmatively put privileged

2   information at issue.  In Hearn, the court found that privileged information was put at

3   issue because the legal advice defendants received was "germane" to the defense they

4   raised.  Here, MGA acknowledges that it "took steps to confirm the timing of Mr.

5   Bryant's work prior to executing the agreement."[47]  It also contends that it conducted

6   a "fair inquiry" into Bryant's representations about his creation and ownership of

7   Bratz.[48]  Larian testified that he told Victoria O'Connor to talk to MGA's lawyers.[49]

8   MGA's privilege log includes a number of emails between MGA and its lawyers

9   regarding Bryant's contract, Mattel litigation and the like.   Not only are such

10   communications "germane" to MGA's "good faith" defenses, they are the *only*

11   evidence of the steps MGA took to determine the propriety of its actions.  MGA has

12   shielded everything in this regard by asserting the privilege.

13    Third, as in Hearn, the result of MGA's privilege assertions has been to

14   deprive Mattel of information "necessary to 'defend' against [MGA's] affirmative

15   defenses."   The information MGA is withholding is critical to Mattel's ability to

16   respond to MGA's purported "good faith" defenses because, as discussed in Section I

17   above, it is the *only* evidence of what advice MGA solicited and received regarding

18   the propriety of its actions and the steps it claims it took to ensure that Bryant could

19   and did lawfully assign rights to Bratz and that no Mattel rights were infringed.

20    In short, MGA contends that its actions in contracting with Bryant and

21   subsequent acts of copying, developing, producing and selling Bratz were in good

22   faith because it believed they were lawful.  And MGA contends that it cannot be

23

24   _____

25   [47]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set
of Requests for Admission, dated August 21, 2007, at p. 12, Smyth Dec., Exh. 5.

26   [48]   MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s
27   Revised Third Set of Interrogatories, at pp. 79-80, dated January 7, 2008, Smyth
Dec., Exh. 7.

28   [49]   Larian Depo. Tr. at 47:16-23, Smyth Dec., Exh. 9.

1 liable to Mattel because of its good faith.[50]  These contentions have placed at issue
2 numerous otherwise protected attorney-client communications, including relevant
3 documents listed on MGA's and Larian's privilege logs.  Those communications are
4 the only evidence of what MGA asked and was told about the legal propriety of its
5 actions.  Mattel needs the information withheld to fairly respond to MGA's "good
6 faith" defenses.

7          Those facts are in marked contrast to the facts MGA relies on to claim
8 that Mattel impliedly waived the privilege in MGA's currently pending motion.
9 MGA argues that Mattel waived the privilege because Mattel alleges that MGA and
10 Bryant concealed their wrongful acts.  But Mattel has produced substantial non-
11 privileged information regarding when Mattel learned of Bryant's wrongful conduct.
12 MGA thus already has sufficient information to litigate its statute of limitations and
13 laches defenses.  Here, MGA and Larian have produced *no* information regarding
14 what they asked or were told about the propriety of their actions -- information that is
15 necessary to assess their "good faith" defenses.  Moreover, Mattel has not raised its
16 alleged good intent as an affirmative defense or claim as MGA has.  Rather, Mattel
17 simply denies *MGA's* contentions that Mattel's claims are time barred.  See, e.g., Cox
18 v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1419 (11th Cir. 1994), cert
19 denied, 513 U.S. 1110 (1995) ("*Having gone beyond mere denial, affirmatively to*
20 *assert good faith*, USX injected the issue of its knowledge of the law into the case
21 and thereby waived the attorney-client privilege." (emphasis added)).  MGA has
22 impliedly waived the privilege; Mattel has not.

23

24

25     [50]   MGA's Fifth, Sixth and Eighteenth Affirmative Defenses, Amended Answer
26 and Affirmative Defenses of MGA Entertainment Inc., MGA Entertainment (HK)
27 Limited, and MGAE de Mexico S.R.L. de C.V. to Mattel, Inc.'s Second Amended
   Answer and Counterclaims, dated September 19, 2007, at pp. 22, 25, Smyth Dec.,
28 Exh. 4.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court enter an Order (1) finding that MGA and Isaac Larian have impliedly waived the attorney-client and work product privileges as to all documents, communications, and information related to advice they sought and/or received prior to April 27, 2004, regarding the legal propriety of MGA's contracting with Bryant, MGA's or Bryant's obligations to Mattel, and their subsequent copying, development, production and sales of Bratz, and (2) compelling MGA to produce the documents specified herein and overruling the instructions not to answer specified herein.

DATED:  January 23, 2008            QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP

                                     By_____
                                         B. Dylan Proctor
                                         Attorneys for Plaintiff
                                         Mattel, Inc.

EXHIBIT 10

PAGE 258

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543.

On January 23, 2008, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION OF PLAINTIFF MATTEL, INC. FOR ORDER FINDING WAIVER AND TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED; AND MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this action as follows:

John W. Keker, Esq.
Michael H. Page, Esq.
Christa M. Anderson, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA  94111

**BY FEDEX:**  I deposited such document(s) in a box or other facility regularly maintained by FedEx, or delivered such document(s) to a courier or driver authorized by FedEx to receive documents, in sealed envelope(s) or package(s) designated by FedEx with delivery fees paid or provided for, addressed to the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 23, 2008, at Los Angeles, California.

_Rita Turner_
Rita Turner

EXHIBIT 11

PROOFS OF SERVICE

PAGE 259

1

## PROOF OF SERVICE

2      I am employed in the County of Los Angeles, State of California.  I am over
the age of eighteen years and not a party to the within action,  My business address
3   is Apex Attorney Services, 1055 West Seventh Street, Suite 250, Los Angeles, CA
90017.

4

5      On January 23, 2008, I served true copies of the following document(s)
described as **NOTICE OF MOTION AND MOTION OF PLAINTIFF
6   MATTEL, INC. FOR ORDER FINDING WAIVER AND TO COMPEL
PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED; AND
7   MEMORANDUM OF POINTS AND AUTHORITIES**
on the parties in this action as follows:

8   Thomas J. Nolan, Esq.                    Mark E. Overland, Esq.
Skadden, Arps, Slate, Meagher & Flom      David C. Scheper, Esq.
9   LLP                                      Alexander H. Cote, Esq.
300 So. Grand Ave.                        Overland, Borenstein, Scheper &
10  Suite 3400                                & Kim, LLP
Los Angeles CA  90071                     300 S. Grand Avenue, Suite 2750
11                                           Los Angeles, CA  90071

12

13  **BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of
the person(s) being served.
14

15      I declare that I am employed in the office of a member of the bar of this Court
at whose direction the service was made.

16      Executed on January 23, 2008, at Los Angeles, California.

17

18

19

20

21

22

23

24

25

26

27

28

07209/2190147.1

EXHIBIT 14
PAGE 260

PROOFS OF SERVICE