# EXHIBIT 17

CALENDARED

RECEIVED

JAN 3 1 2008

1  THOMAS J. NOLAN (Bar No. 66992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California  90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
4  E-mail:     tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  Four Embarcadero Center, 38th Floor
   San Francisco, California  94111-5974
7  Telephone:  (415) 984-6400
   Facsimile:  (415) 984-2698
8  E-mail:     rkennedy@skadden.com

9  Attorneys for Cross-Defendants
   MGA Entertainment, Inc., MGA
10 Entertainment (HK) Limited,
   MGAE De Mexico, S.R.L. De C.V.,
11 and ISAAC LARIAN

12              UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

14                  EASTERN DIVISION

15  CARTER BRYANT, an individual      )  CASE NO. CV 04-9049 SGL (RNBx)
                                      )
16              Plaintiff,            )  Consolidated with Case No. 04-9059
                                      )  and Case No. 05-2727
17     v.                             )
                                      )  **DISCOVERY MATTER**
18  MATTEL, INC., a Delaware          )
    corporation                       )  **[To be heard by Discovery Master
19                                    )  Hon. Edward A. Infante (Ret.)]**
                Defendant.            )
20  _____ )  **MGA ENTERTAINMENT, INC.'S
                                      )  OPPOSITION TO MOTION OF
21  Consolidated with MATTEL, INC. v. )  PLAINTIFF MATTEL, INC. FOR
    BRYANT and MGA                    )  ORDER FINDING WAIVER AND
22  ENTERTAINMENT, INC. v.            )  TO COMPEL PRODUCTION OF
    MATTEL, INC.                      )  DOCUMENTS WITHHELD AS
23                                    )  PRIVILEGED**
                                      )
24  **CONFIDENTIAL – ATTORNEYS'       )  Hearing Date: February 11, 2008
    EYES ONLY**                       )  Time:         8:30 a.m.
25                                    )  Place:        Telephonic
    **FILED UNDER SEAL PURSUANT       )
26  TO PROTECTIVE ORDER**             )  **Phase 1:**
                                      )  Discovery Cut-Off:    January 28, 2008
27                                    )  Pre-Trial Conference: May 5, 2008
                                      )  Trial Date:           May 27, 2008
28

_____
MGA'S OPP. TO MATTEL'S MOTION FOR ORDER FINDING WAIVER      Case No. CV 04-9049 SGL

1-31          EXHIBIT 17

PAGE 261

# **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ............................................................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES ....................................... 1

I.    INTRODUCTION ................................................................................. 1

II.   PERTINENT FACTUAL AND PROCEDURAL BACKGROUND ............ 1

    A.   MGA's "Good Faith" Affirmative Defenses ......................................... 1

    B.   MGA's Partial Waiver Offers .............................................................. 2

    C.   MGA's Original Implied Waiver Motion ........................................... 5

    D.   MGA's Renewed Waiver Motion ....................................................... 6

    E.   The Present Motion .......................................................................... 6

    F.   Mattel's Lame Attempts To Distinguish MGA's Renewed Motion ..... 8

III.  ARGUMENT ...................................................................................... 9

    A.   Fairness Concerns Apply With Equal Force To Mattel's And MGA's Claims Of Privilege ............................................................. 9

    B.   Production Should Be Limited To The Documents Specified In The Motion That Relate To MGA's Acquisition Of Bratz ................ 11

IV.  CONCLUSION ................................................................................. 13

-i-

EXHIBIT 17

PAGE 202

1

# TABLE OF AUTHORITIES

2

**PAGE(S)**

3

4

## CASES

5 *Aloe Vera of America, Inc. v. United States,*
6   No. CV 99-1794-PHX-JAT, 2003 WL 22429082 (D. Ariz. Sept. 23, 2003),
    *aff'd* 376 F.3d 960 (9th Cir. 2004) ......................................................................... 12

7 *Bittaker v. Woodford,*
8   331 F.3d 715 (9th Cir. 2003)..................................................................... 10, 11, 13

*Cox v. Administrator United States Steel & Carnegie,*
9   17 F.3d 1386 (11th Cir. 1994),
10   *cert. denied,* 513 U.S. 1110 (1995) .......................................................................... 9

*Rambus Inc. v. Samsung Electronics Co.,*
11   Nos. C-05-02298, C-05-00334,
12   2007 WL 3444376 (N.D. Cal. Nov. 13, 2007)...................................... 10, 11, 12, 13

*Titan Corp. v. M/A-Com, Inc.,*
13   No. 93-CV-335, 1994 WL 16001739 (S.D. Cal. June 22, 1994)........................... 13

14 ## RULES

15 Local Rule 37-2.1 ..................................................................................... 7, 11

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA'S OPP. TO MATTEL'S MOTION FOR ORDER FINDING WAIVER
EXHIBIT *17*
Case No. CV 04-9049 SGL

PAGE 263

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In mirror image motions, Mattel, Inc. ("Mattel") and MGA Entertainment, Inc. ("MGA"), each claim that fairness dictates that the Court should find a partial waiver of the attorney-client and work product privileges. Otherwise, Mattel and MGA will not be able to fully contest issues that the other has asserted i.e., Mattel's claim that the statute of limitations and laches should be tolled and MGA's claim that it had a "good faith" believe that Carter Bryant owned the original Bratz drawings in 2000 when MGA obtained an assignment of his rights in those drawings.

Mattel cannot, however, resist attempting to "have its cake and eat it too" and advances a totally incongruous argument that MGA should be found to have impliedly waived the privileges but that Mattel has not. There is no principled basis for distinguishing the two motions.

## II.   PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

### A.   MGA's "Good Faith" Affirmative Defenses

In the Amended Answer and Affirmative Defenses of MGA Entertainment Inc., MGA Entertainment (HK) Limited, and MGAE De Mexico S.R.L. De C.V. to Mattel, Inc.'s Second Amended Answer and Counterclaims, dated September 19, 2007,[1] MGA[2] raised three affirmative defenses in which it asserted that, when MGA acquired Bryant's "original Bratz drawings" in 2000, MGA had a "good faith belief that Bryant owned the rights" to those drawings:

### FIFTH AFFIRMATIVE DEFENSE

#### (Bona Fide Purchaser for Value)

Mattel cannot maintain its counterclaims against MGA
Defendants because MGA Defendants paid valuable

---

[1]   A copy of which is Exhibit 4 to the Declaration of Bernard B. Smyth in Support of Motion of Plaintiff Mattel, Inc. for Order Finding Waiver and to Compel Production of Documents Withheld as Privileged ("Smyth Decl.").

[2]   For ease of reference, these entities will sometimes be referred to herein collectively as "MGA."

-1-

EXHIBIT 17

PAGE 264



1  consideration for Bryant's assignment of his rights in the
2  original Bratz drawings to MGA Defendants, and MGA
   Defendants acted with a good faith belief that Bryant
3  owned the rights to his original Bratz drawings and that his
   assignment of such rights to MGA Defendants was valid
4  and permissible.

5                    SIXTH AFFIRMATIVE DEFENSE

6                       (17 U.S.C. § 205(d))

7  Mattel cannot maintain its counterclaims against MGA
   Defendants because, among other things, MGA Defendants
8  acted with a good faith belief that Bryant owned the rights
   to his original Bratz drawings and that his assignment of
9  such rights to MGA Defendants was valid and permissible.

10                   *      *      *      *

11              EIGHTEENTH AFFIRMATIVE DEFENSE

12                        (Good Faith)

13  Mattel's counterclaims are barred in whole or in part
    because the MGA Defendants acted in good faith.

14

15  [Smyth Decl., Ex. 4, 22:8-21; 25:12-15.]  MGA confirmed that belief in response to

16  those discovery requests but objected to those requests insofar as they sought

17  attorney-client or work product privileged materials.  Motion of Plaintiff Mattel, Inc.

18  For Order Finding Waiver And To Compel Production Of Documents Withheld As

19  Privileged ("Motion" or "Present Motion").  Mot. at 3:14-4:15.

20      **B.    MGA's Partial Waiver Offers**

21      The Present Motion could have been obviated had Mattel accepted MGA's

22  prior, limited waiver offers.  Back on November 29, 2004, when Mattel had noticed

23  the deposition of Victoria O'Connor, a former MGA employee, MGA's counsel

24  wrote to Mattel's lawyers offering:

25          To facilitate the deposition [of Ms. O'Connor], however,
            MGA would be willing to agree to a limited waiver of the
26          attorney client privilege, in which MGA would waive the
            attorney client privilege solely with respect to
27          communications that occurred between MGA and its
            counsel in and before October 2000 regarding the
28          MGA/Bryant negotiations under certain conditions.  First,
            both Mattel and Bryant must agree that MGA's disclosure

-2-

MGA'S OPP. TO MATTEL'S MOTION FOR ORDER FINDING WAIVER        Case No. CV 04-9049 SGL

1    would not waive any other privileges with respect to any
communications at any other time between MGA and its

2    counsel concerning the MGA-Bryant negotiations or
agreement.  Second, both Mattel and Bryant must agree

3    that MGA's disclosure would not waive the attorney client
privilege or work product protections with respect to any

4    other subject made at any time, whether or not such matters
involved the same counsel that represented MGA in

5    connection with the Bryant negotiations.  Finally, MGA
would insist that Mattel and Bryant agree that any

6    information disclosed pursuant to such waiver be
designated "Attorney's Eyes Only," which designation

7    could not be challenged by the parties.  If this is acceptable
to Mattel, please let me know and we will draft the

8    appropriate documentation.  If not, please be advised that
MGA will not waive either the attorney client privilege or

9    the protection of the work product doctrine with respect to
any issue [Miller Decl., Ex. E].

10

11         Mattel did not accept that offer.  Similarly, during the O'Connor deposition on

12  December 6, 2004, MGA offered, and Mattel rejected, a limited waiver:

13        Q.    Ms. O'Connor, did you deal with David Rosenbaum
[an outside lawyer for MGA] in connection with the Carter

14        Bryant negotiations?

15

16        A.    Yes.

17        Q.    And when I -- let me ask you more specifically.  Did
you have conversations with him about those negotiations?

18

19        A.    Yes.

20

21        Ms. Torres:  We have offered you guys a transactional
waiver; you have -- I think you declined earlier and haven't

22        gotten back to me on our most recent offer.

23        I have no further questions at this time, but we may raise
the issue with the Court, and therefore I'm going to leave

24        the deposition open.

25

26        Mr. Quinn:  Well, I don't know what that means about
"transactional waiver," but I mean – if you're saying you

27        might want to bring Ms. O'Connor back, we oppose that.  I
mean, today's the day for her deposition, and we see no

28        basis for continuing it at some future date.

-3-

1   Ms. Torres: Well, we -- we put our position in the letter, we can agree to disagree.

2

3   Mr. Quinn: Your position about whether her deposition will be done today?

4

5   Ms. Torres: No, our position about whether or not we could question her about communications with MGA's
6   counsel without waiving the privilege beyond the scope of the subject of those discussions. And until -- unless and
7   until the court rules on that, if -- we're not in agreement then, and we're --

8

9   Mr. Quinn: You're free to ask her about those, but it does constitute a waiver of the privilege, so that's your choice.

10

11   Ms. Torres: I understand, but there's a -- a -- we obviously have a difference of opinion as to the breadth of that waiver.

12

13   Mr. Quinn: Well, I don't know, until I hear your questions I guess I wouldn't know, but I think that the deposition is
14   going to conclude today, I only have a few more things.

15

16   Ms. Torres: We're --

17   Mr. Jacoby: Just so our position is clear, with respect to Carter Bryant and Ann Wang and with respect to MGA and
18   David Rosenbaum, my understanding is that both Carter Bryant and MGA have offered Mattel a transactional
19   waiver of the privilege whereby we are -- Carter Bryant is willing to waive the privilege with regard Ann Wang with
20   respect to the subject of the negotiation of the contract that's in Exhibit 15.

21

22   My understanding is that MGA has made a settlement offer with respect to David Rosenbaum, but my understanding of
23   Mattel's position is that if we -- if Ms. Torres was to begin to embark on questions that were privileged, that Mattel
24   would take the position that all conversations between MGA and Mr. Rosenbaum would be subject to disclosure
25   beyond the subject of the Bryant negotiation.

26

27   My understanding is Mattel's taking the exact same position with respect to Mr. Bryant and Ann Wang, and
   given that that's true, we can't question her about those
28   because then that would open up questions that you would have about subjects beyond the negotiation. As you made

-4-

1  clear in this deposition, we can't instruct her not to answer,
2  or at least we can't enforce it, so I don't think that counsel
   for Mr. Bryant or counsel for MGA has any choice but to
3  not ask those questions but seek relief from the court that
   this transactional waiver is the correct statement of the law,
4  which I believe it is.

5  Mr. Quinn: I have never heard of a "transactional waiver,"
   and I -- I don't think you can selectively waive the privilege.
6  So I guess to that extent we do have a disagreement on that.
   I mean, you could have sought a ruling before.  In our view,
7  the deposition is concluded today.

8  Miller Decl., Ex. F at 167:10-170:13.

9  ## C.   MGA's Original Implied Waiver Motion

10  The subject of implied waiver arose again in December of 2007 when the

11  parties met and conferred regarding the implied waiver implications of Mattel's claim.

12  MGA's contention that Mattel's claim that the statute of limitations for its claims

13  against MGA and Carter Bryant was tolled because it was not until November of

14  2003 that Mattel first knew or suspected the alleged misconduct now in issue.

15  More specifically, in paragraphs 35 and 36 of the counterclaims that Mattel

16  filed together with its Second Amended Answer on July 12, 2007, Mattel alleged:

17  Bryant and MGA deliberately and intentionally concealed
   facts sufficient for Mattel to suspect or to know that it was
18  the true owner of Bratz.  Their acts of concealment include,
   but are not limited to, concealing the fact that Bryant
19  conceived, created, designed and developed Bratz while
   employed by Mattel . . . .
20
   Because of Bryant's and MGA's acts of concealment and
21  Bryant's misrepresentations to Mattel, Mattel had no reason
   to suspect that Bryant had worked with MGA, or assisted
22  MGA, while he still employed by Mattel until
   approximately November 24, 2003, when Mattel received,
23  through an unrelated legal action, a copy of Bryant's
   agreement with MGA which showed that the date of
24  Bryant's agreement with MGA predated Bryant's departure
   from Mattel.  It was then, as a result, that Mattel learned for
25  the first time that Bryant had secretly aided, assisted and
   worked for and with MGA while employed at Mattel and
26  in violation of his Mattel Employment Agreement.

27

28  [3]  See Declaration of Marcus R. Mumford in Support of MGA's Motion to
    Compel Discovery As To Issues As To Which Mattel Has Waived The
    *(cont'd)*

-5-

1    In addition, in opposing a motion by MGA and Bryant for Terminating

2  Sanctions, in August of 2007 Mattel argued that it did not first learn "of the

3  misconduct at issue in this case" until late November of 2003 when Mattel "obtained

4  a copy of the agreement MGA and Bryant signed while he worked for Mattel."[4]

5    The failure of this meet and confer led to the filing of MGA's Motion to

6  Compel Regarding Mattel's Privilege Waiver by Claim Assertion ("Original Waiver

7  Motion") on December 18, 2007.  Miller Decl., Ex. A.

8    On December 27, Mattel filed an opposition to MGA's Original Waiver

9  Motion in which Mattel cited 25 cases as supposedly providing authority for the

10  proposition that there had been no implied waiver.  *Id.*, Ex. B.

11    MGA's Original Implied Waiver Motion was noticed for hearing on January 3

12  but the press of other matters prevented its being heard on that day.  However, on

13  January 3, the Court did hear and grant MGA's and Bryant's Motion to Overrule

14  Mattel's Relevance Objection and to Compel Discovery Related to Statute of

15  Limitations and Laches Defenses ("Relevance Motion").  Miller Decl., Ex. D.

16    **D.    MGA's Renewed Waiver Motion**

17    MGA then withdrew its Original Implied Waiver Motion and, on January 18

18  filed its Motion to Compel Discovery As To Issues As To Which Mattel Has Waived

19  The Attorney-Client And Work Product Privileges By Claims Assertion ("MGA's

20  Renewed Motion"), to address the impact of the Court's ruling on the Relevance

21  Motion.  MGA's Renewed Waiver Motion is one of the matters that the parties have

22  asked the Court to hear on February 11.

23    **E.    The Present Motion**

24    On January 23, Mattel filed the present Motion, seeking a determination that

25  MGA's "good faith" defenses effected a partial, implied waiver and seeking all

26  _____

(cont'd from previous page)
27  Attorney-Client Privilege And Work Product Privileges By Claims Assertion
(1/18/08) ("Mumford Decl."), Ex. 1 at 42:1-8; 42:16-24.

28  [4]    Mumford Decl., Ex. 32 at 393:21; 394:10-11.

MGA'S OPP. TO MATTEL'S MOTION FOR ORDER FINDING WAIVER      Case No. CV 04-9049 SGL

PAGE 269

1   documents regarding the propriety of MGA's contracting with Bryant "including

2   without limitation" 21 specific documents that MGA either withheld or produced in

3   redacted form, which Mattel seeks to produce in unredacted form.  Notice of Mot. at

4   2:10-14.[5]  The Notice also identifies specific questions that were asked during Isaac

5   Larian's deposition as to which Mattel seeks responses or further responses.  *Id.*

6   2:14-16.

7        MGA believes that production of 17 of those documents, which were

8   generated in 2000, is warranted for the same reason that MGA is entitled to discover

9   privileged material concerning Mattel's tolling claims.  MGA believes that an *in*

10  *camera* examination of the other four documents, which were generated in 2002, will

11  disclose that their production is not warranted.[6]

12       MGA objects to the "including without limitation" portion of Mattel's demand

13  as violative of Local Rule 37-2.1.  As Mattel explained in its December 27, 2007

14  Opposition to MGA's Original Implied Waiver Motion:

15           The Local Rules mandate that all discovery motions should
             be supported by a document setting forth either the specific
16           requests or the specific question, and any specific
             objections, so that the Court will have both precision and
17           context for its rulings.  Local Rule 37-2.1; U.S. ex. rel.
             O'Connell v. Chapman University, 245 F.R.D. 646, 648
18           (C.D. Cal. 2007) (entering order to show cause for failure
             to comply with Local Rule 37-2.1); Estate of Gonzalez v.
19           Hickman, 2007 WL 3238725, at *2 (C.D. Cal. 2007)
             (refusing to hear motion because of party's failure to
20           comply with Local Rule 37-2.1).  MGA's motion utterly
             fails to do this.
21
             MGA provides no basis upon which to seek an order
22           compelling further responses to discovery "in general,"
             rather than as to specific discovery requests.  A motion
23           seeking an order compelling "further responses" to
             unspecified discovery requests does not give fair notice.
24

25  [5]   "(1) Entry Nos. 655-657 and 660 on MGA's August 14, 2007 Supplemental
         Privilege Log, (2) Entry Nos. 12-19 and 21-27 on MGA's Supplemental
26       Revised Privileged and Redaction Log for MGA's 2005 Document Production,
         (3) Entry Nos. 89 and 90 on Isaac Larian's Privilege Log, . . . ."
27  [6]   MGA suggests that Mattel's request for a further deposition of Mr. Larian be
         deferred until Mattel has had an opportunity to review the requested
28       documents and can specify whether and why further examination is needed.

-7-

1

2   The Discovery Master has consistently rejected the parties' request that he lay down general discovery guidelines not tied to specific discovery requests. MGA's request for vague discovery rulings without identification of the specific discovery requests or information at issue should likewise be rejected here. [Miller Decl., Ex. B at 3:4-19].

3

4

5  The same limitation should apply here.

6  **F.**  **Mattel's Lame Attempts To Distinguish MGA's Renewed Motion**

7   The first thirteen and one-half pages of Mattel's Memorandum of Points and

8 Authorities reads almost like a plagiarization of MGA's Original and Renewed

9 Motions. This is in marked contrast to the position Mattel took in its December 2007

10 Opposition to MGA's Original Waiver Motion.

11   Then, on page 14, Mattel claims that an implied waiver finding is warranted as

12 to MGA, because MGA has not produced any non-privileged support for its "good

13 faith" claims but not as to Mattel which "has produced substantial non-privileged

14 information regarding when Mattel learned of Bryant's wrongful conduct." Mot. at

15 14:10-11. In fact, the record already contains substantial non-privileged evidence of

16 MGA's good faith, including recent deposition testimony of David Rosenbaum and

17 Anne Wang evidencing the representations made by Carter Bryant to MGA in

18 connection with MGA's acquisition of Bratz. (See Miller Decl., Exhs. G and H). In

19 contrast, Mattel fails to offer any examples of this "substantial non-privileged

20 information."

21   In addition, Mattel does not dispute that the record is replete with indicia that

22 Mattel suspected Bryant of wrongdoing well before November 2003; by late 2001, or

23 2002 at the latest, Mattel had its lawyers investigating whether Bryant had worked

24 on Bratz while employed at Mattel. Miller Decl., Ex. C at 2:7-3:22. In short, even if

25 Mattel has produced non-privileged information to support its claim that it did not

26 have reason to suspect wrongdoing before November 2003, Mattel has used the

27 attorney-client and work product privileges to block MGA's efforts to support its

28

-8-

1   competing claim that Mattel suspected or had reason to suspect the alleged

2   wrongdoing well before that date.

3       Mattel also makes a throwaway argument that it "simply denies" that its

4   claims are time-barred and did not affirmatively inject them into the case. Mot. at

5   14:15-21. Mattel fails to explain how paragraphs 35 and 36 of its Counterclaims, in

6   which Mattel seeks affirmative relief are mere "denials." Similarly, Mattel fails to

7   explain how its assertion in its opposition to the Motion for Terminating Sanctions

8   that it did not have cause to suspect any of the alleged wrongdoing until November

9   of 2003 is a mere "denial."

10      Moreover, *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386,

11  1419 (11th Cir. 1994), *cert. denied*, 513 U.S. 1110 (1995), the sole authority that

12  Mattel relies upon for its "simply denies" argument, makes clear a claim that the

13  statute of limitations was tolled because of lack of knowledge is exactly the kind of

14  claim that warrants an implied waiver. As explained in *Cox*:

15          USX waives the privilege if it injects into the case an issue

16  that in fairness requires an examination of otherwise protected communications. In *Conkling v. Turner*, 883

17  F.2d 431, 434-35 (5th Cir. 1989), the plaintiff claimed that the RICO statute of limitations period was tolled because

18  he did not know that a statement made by the defendants was false until told by his attorney 18 years after the fact.

19  The Fifth Circuit held that by doing so, he waived the privilege as to communications from his attorney about the

20  statement; "the attorney-client privilege is waived when a litigant 'place[s] information protected by it in issue

21  through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such

22  information would be manifestly unfair to the opposing party.'" *Id.* at 434 (quoting *Hearn v. Rhay*, 68 F.R.D. 574,

23  581 (E.D. Wash. 1975)) (alteration in original). [17 F.3d at 1419].

24  **III.   ARGUMENT**

25      **A.   Fairness Concerns Apply With Equal Force To Mattel's And MGA's Claims Of Privilege**

26

27      "[F]airness, not relevance, is the touchstone of the scope of the implied waiver

28  doctrine." *Rambus Inc. v. Samsung Elecs. Co.*, Nos. C-05-02298, C-05-00334, 2007

-9-



1  WL 3444376, at *6 (N.D. Cal. Nov. 13, 2007). As Mattel argues, "parties in

2  litigation may not abuse the privilege by asserting claims the opposing party cannot

3  adequately dispute unless it has access to the privileged materials." *Bittaker v.*

4  *Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ; Mot. at 10:8-11. As the Ninth Circuit

5  explained the underpinning of the implied waiver doctrine:  "The court thus gives the

6  holder of the privilege a choice:  If you want to litigate this claim, then you must

7  waive your privilege to the extent necessary to give your opponent a fair opportunity

8  to defend against it." *Bittaker*, 331 F.3d at 720. These fairness principles apply with

9  equal force to Mattel's tolling claims and to MGA's "good faith" affirmative defenses.

10  MGA submits that the Court should find a limited waiver by Mattel and order

11  Mattel to produce the additional discovery specifically identified and requested in

12  MGA's Renewed Motion and, similarly, order MGA to produce the September 2000

13  communications concerning MGA's acquisition of the original Bratz drawings from

14  Bryant.[7]

15  MGA further urges that the Court conduct an in-camera inspection of the 2001

16  exchanges between Isaac Larian and Patricia Glaser, a lawyer with what was then the

17  Christensen firm.[8]  MGA submits that this exchange is either totally irrelevant to

18  MGA's "good faith" when it acquired the Bratz drawings from Mr. Bryant nearly a

19  year before.  Alternatively, it is of marginal relevance and its production is

20  substantially outweighed by the danger of unfair prejudice, confusion of the issues,

21  undue delay or waste of time.

22  An *in camera* review will confirm that the 2001 exchange is fully-consistent

23  with MGA's assertion of "good faith." On the other hand, the exchange is about

24  potential litigation and is between Mr. Larian and one of his eventual trial counsel,

25

26  [7]  "Entry Nos. 12-19 and 21-27 on MGA's Supplemental Revised Privileged and Redaction Log for MGA's 2005 Document Production, and Entry Nos. 89 and

27  90 on Isaac Larian's Privilege Log, . . . ."

28  [8]  "Entry Nos. 655-657 and 660 on MGA's August 14, 2007 Supplemental Privilege Log."

-10-

1  Ms. Glaser. Production of these documents would, undoubtedly, lead to Mattel's

2  demanding to depose both Mr. Larian and Ms. Glaser and would, inevitably, lead to

3  squabbling and motion practice over the appropriate limits of that examination.

4      **B.**    **Production Should Be Limited To The Documents Specified In The Motion That Relate To MGA's Acquisition Of Bratz.**

5

6      In its Notice of Motion Mattel identifies 21 specific documents that it seeks to

7  compel on the grounds that MGA has waived the privilege protecting those

8  documents from production, but adds that the relief it seeks is "including without

9  limitation" these documents. Notice of Mot. at 2:10-11. As Mattel contended in its

10  December 27, 2007, Opposition Brief at page 3, such non-specific demands are

11  improper under Local Rule 37-2.1, which, as Mattel put it, "mandate[s] that all

12  discovery motions be supported by a document setting forth either the specific

13  requests or the specific question, and any specific objections, so that the Court will

14  have both precision and context for its rulings." Miller Decl., Ex. B at 3:4-7.

15      Mattel's argument is fully consistent with the rule that the Court "must impose

16  a waiver no broader than needed to ensure the fairness of the proceedings before it."

17  *Bittaker*, 331 F.3d at 720 ("Because a waiver is required so as to be fair to the

18  opposing side, the rationale only supports a waiver broad enough to serve that

19  purpose.") "[A] court finding an implied waiver and ordering production must

20  define the contours of the production and the privilege waiver." *Rambus*, 2007 WL

21  3444376, at *6. The Ninth Circuit recognizes that "[c]ourts, including ours, that

22  have imposed waivers under the fairness principle have therefore closely tailored the

23  scope of the waiver to the needs of the opposing party in litigating the claim in

24  question." *Bittaker*, 331 F.3d at 720. Thus, while relevance is a prerequisite to a

25  finding of implied waiver, the proper *scope* of the waiver is driven not by relevance,

26  but by fairness. *Rambus*, 2007 WL 3444376, at *6. (reversing portion of magistrate's

27  order compelling "any and all documents . . . that discuss, refer, or relate to" the

28  issue on which privilege was waived; "Such an order produces all relevant materials,

-11-

EXHIBIT 17

PAGE 274

1  but fairness, not relevance, is the touchstone of the scope of the implied waiver

2  doctrine.").

3       Accordingly, in *Rambus*, having approved the ruling of the Special Master that

4  Samsung had impliedly waived the privilege by asserting the discovery rule and

5  equitable tolling to overcome the statute of limitations, the Judge directed the Special

6  Master to conduct an *in camera* review of the particular documents at issue in the

7  motion and to closely tailor the production by limiting it to "documents

8  demonstrating Samsung's subjective knowledge of Steinberg's work for Rambus, or

9  the objective circumstances relating to Steinberg's work for Rambus, prior to the

10  critical date(s) for Samsung's tolling allegations." *Id.* at *7.

11       MGA urges that, if this Court finds an implied waiver by MGA and Mattel,

12  the Court should follow a procedure similar to that the Judge ordered in *Rambus*, i.e.,

13  conduct an *in camera* review of documents being requested by each side and

14  determine:

> 1.      With respect to the Mattel documents at issue in
> MGA's Motion, whether the documents demonstrate
> Mattel's subjective knowledge of, or facts demonstrating
> that it had reason to suspect that, prior to November 2003,
> (a) Carter Bryant was involved in Bratz, (b) any belief or
> suspicion that Carter Bryant may have breached his
> contract with Mattel, (c) that Carter Bryant was working
> for MGA, and/or (d) any belief or suspicion in an alleged
> basis to assert that Mattel was alleged true owner of Bratz;
> and
>
> 2.      With respect to the MGA and Rosenbaum
> documents at issue in this Motion, whether the documents
> demonstrate advice to MGA, prior to October 4, 2000 (the
> date MGA entered into its agreement with Bryant) that its
> acquisition of Bratz from Bryant was unlawful.

24  So as to narrowly tailor the scope of both implied waivers, only those documents

25  falling within these criteria should be ordered produced. *See also Aloe Vera of Am.,*

26  *Inc. v. United States,* No. CV 99-1794-PHX-JAT, 2003 WL 22429082, at *5 (D.

27  Ariz. Sept. 23, 2003), *aff'd* 376 F.3d 960 (9th Cir. 2004) (ordering production of

28  "documents containing information relating to when [p]laintiffs' counsel may have

-12-

1 advised [p]laintiffs that a cause of action may have accrued [...] if [such information]

2 exists"); *Titan Corp. v. M/A-Com, Inc.*, No. 93-CV-335, 1994 WL 16001739, at *4

3 (S.D. Cal. June 22, 1994) (ordering production of "the following additional

4 information: 1) specifically when plaintiff's counsel informed plaintiff or gave

5 plaintiff reason to believe that it had been defrauded by defendant; 2) whether

6 plaintiff or its agents supplied any information relevant to that determination; 3) the

7 specifics of that information; and 4) when each item of information was supplied to

8 plaintiff's counsel").[9]

9     MGA will make the documents identified by Mattel in its Notice of Motion

10 available for *in camera* review at the request of the Court, before, during or after the

11 February 11 hearing.

12 **IV.  CONCLUSION**

13     MGA urges that the Court enter orders finding that fairness dictates that partial

14 privilege waivers be found for both Mattel and MGA, that Mattel be required to

15 produce the documents and make the additional discovery specified in MGA's

16 Renewed Motion and order MGA to produce the documents listed in Mattel's Notice

17 of Motion for the present motion, except for entries 655-657 and 660 on MGA's

18 August 14, 2000 Supplemental Privilege Log.

19

20

21

22

23

24 [9]  In accordance with the process prescribed by the Ninth Circuit in *Bittaker* and

25 employed by Judge Whyte in *Rambus*, should the Court find that there has

25 been an implied waiver as to any document, in accordance with Ninth Circuit

26 procedure the Court must give the holder of the privilege the option "to

26 preserve the confidentiality of the privileged communications by choosing to

26 abandon the claim that gives rise to the waiver condition. *Bittaker*, 331 F.3d

27 at 721. *See also, Rambus*, 2007 WL 3444376, at *7 (following *Bittaker*, court

27 directed special master to "first give Samsung the option of declining to

28 proceed with its claims," and that only if Samsung chooses to proceed should

28 the *in camera* inspection proceed).

-13-



EXHIBIT *17*

PAGE *226*

1    Alternatively, in the highly unlikely event the Court should accept Mattel's

2  arguments as to why MGA's Renewed Waiver Motion should be denied, the Court

3  should also deny the Present Motion.

4

5  DATED:  January 31, 2008          SKADDEN, ARPS, SLATE, MEAGHER &
                                     FLOM, LLP
6

7
                                     By: _____
8                                         RAOUL D. KENNEDY

9                                    Attorneys for Cross-Defendants
                                     MGA Entertainment, Inc., MGA
10                                   Entertainment (HK) Limited,
                                     MGAE De Mexico, S.R.L. De C.V.,
11                                   and ISAAC LARIAN

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-14-

EXHIBIT 17

PAGE 277

# EXHIBIT 18

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 19

ATTORNEYS' EYES ONLY

10: Gary S.



Corporate Office:

16730 Schoenborn Street
North Hills, CA 91343
Phone: 818/894-2525
Fax:     818/894-1267

**Fax To:**   Patty Glaser
             Christensen, Miller et al.

**Date:** July 3, 2001

**Fax #:**   (310) 557-9815

**From:**   Victoria O'Connor

**# of Pages:** 7
(including cover)

**Re:**   CARTER BRYANT

---

### CONFIDENTIAL - ATTORNEY/CLIENT PRIVILEGE

Isaac asked that I fax you our contract with Carter Bryant (see attached).

CG 0018.1

EXHIBIT 19
PAGE 284

EX 13383-0001

ATTORNEYS' EYES ONLY

*Final*

**MGA ENTERTAINMENT**
**16730 Schoenborn Street**
**North Hills, California 91343**

Mr. Carter Bryant
1319 West 160th Street
Gardena, California 90247

Dear Mr. Bryant:

Set forth below are the terms and conditions upon which we (hereinafter "MGA") are retaining you ("Bryant") to consult and advise MGA in the design and development of certain products which MGA wishes to manufacture and distribute (hereinafter our agreement is sometimes referred to as the "MGA Consulting Agreement"). The parties' agreement is as follows:

1.    **Retention as Consultant/Services:** MGA retains Bryant to provide his services to consult with MGA and advise MGA on the design and development by MGA in a line of dolls presently known as "Bratz" (the "MGA Products"). Bryant will render his services at such locations and times as may be reasonably be designated by MGA. It is understood and agreed that Bryant shall provide his services on a "top priority" basis as his services pertain to other clients of Bryant. In addition, Bryant and all other Bryant staff will take direction from and be under the supervision of such person(s) as may be reasonably designated by MGA from time to time notice to Bryant. It is understood and agreed that, subject to MGA's prior written consent, Bryant may retain third party contractors ("Contractors") to assist at his direction in the services to be rendered hereunder. Such third parties shall be compensated in a manner ("Contractor Fees") to be determined between Bryant and such third parties and shall be subject to the terms of this Agreement, including without limitation, paragraphs 3, 4, and 7, below. Bryant shall enter into agreements with all Contractors on a form approved by MGA as conforming to the terms of this Agreement and confirming MGA's ownership of all results and proceeds of the services provided by any such Contractors; such form is attached a Exhibit "A" to this Agreement, and is incorporated herein by reference.

2.    **Term/Exclusivity:** The Term shall commence on the date of this Agreement.   MGA shall have the right to terminate this Agreement on not less than forty-five (45) days prior written notice to Bryant. During the Term of this Agreement, Bryant will not provide consulting services to any person, firm or corporation engaged in the design, development and manufacture and sale of dolls or similar products.

3.    **Ownership:**

(a)    All results and proceeds of the services provided by Bryant hereunder and any Contractor, including without limitation, any inventions, and any documentation related thereto, and any other material, whether written or oral (collectively, the  "Bryant Work Product") shall be considered "work made for hire" and shall be owned exclusively, throughout the world, in perpetuity by MGA (including all copyrights and patents therein and thereto, and all renewals and extensions thereof). MGA shall have the sole and exclusive right to use the Bryant Work Product, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify the Bryant Work Product and the results of Bryant's services hereunder and the Contractors' services, and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised.  MGA shall have the sole and exclusive right to copyright or patent the Bryant Work Product in MGA's name, as the owner and author thereof, and to secure any and all registrations, renewals and extensions of such copyrights and

{00006662.DOC/2 / 10/04/2000  03:05 PM}

1.

CG 0019

EX 13383-0002

ATTORNEYS' EYES ONLY

patents in MGA's name or Bryant's name or the Contractors' names, as permitted pursuant to applicable statute. Bryant expressly waives, and shall cause all Contractors to waive, any "moral rights" (as such term is commonly understood around the world) in and to the Bryant Work Product prepared by Bryant and/or the Contractors pursuant to the Agreement. Bryant shall, upon request, execute, acknowledge and deliver, and shall cause each Contractor to execute, acknowledge and deliver, to MGA such additional documents as MGA may deem necessary to evidence and effectuate MGA's rights hereunder, and Bryant hereby grants to MGA the right as Bryant's attorney-in-fact to execute, acknowledge, deliver and record in the U.S. Copyright Office, the U.S. Patent Office or elsewhere any and all such documents. If, whether by statutory amendment to the U.S. Copyright and/or Patent Laws, or a decision by a court of competent jurisdiction interpreting such laws, MGA shall not be deemed to be the author or owner of the Bryant Work Product, this Agreement and each agreement with a Contractor shall, nevertheless, constitute an irrevocable assignment by Bryant and each Contractor, as applicable, to MGA of any and all of Bryant's and each Contractors' right, title and interest, including copyright and patent (and all renewals and extensions thereof), in and to the Bryant Work Product. Bryant acknowledges and agrees, and shall cause each Contractor to acknowledge and agree, that he and they have no interest in and shall not, by virtue of this Agreement or any services rendered by Bryant and/or each Contractor to MGA acquire any interest in the MGA Products and that MGA may exploit the MGA Products and any derivative works thereto, without obligation to Bryant and/or the Contractors, except as provided in Paragraph 4, below.

(b)   . Without limiting the generality of the provisions of Paragraph 3(a), above, with respect only to any inventions, and any documentation related thereto, and any other material, whether written or oral, created by or for Bryant relating to the MGA Products prior to the commencement of the term of this Agreement, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Bryant, Bryant hereby irrevocably grants, conveys, transfers, sets over and assigns to MGA in perpetuity all of Bryant's right, title and interest, in an to the such material, including, without limiting the generality of the foregoing, all rights under copyright and patent (and all renewals and extensions thereof) including the right to produce and authorize the production of any and all derivative works, and all proprietary rights of any kind therein, now known or hereafter created throughout the world. MGA shall have the sole and exclusive right to use such material, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify such materials and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised or refrain from doing so as MGA may determine. Bryant expressly waives any "moral rights" (as such term is commonly understood around the world) in and to such materials.

4.    **Compensation/Costs:**

(a)    For the first six (6) months of the Term of this Agreement, MGA shall pay Bryant for his services at the rate of five thousand five hundred dollars ($5,500.00) per month; for the next three (3) months of the Term, MGA shall pay Bryant for his services at the rate of five thousand dollars ($5,000.00) per month. All sums paid to Bryant as monthly fees shall be deemed to be non-refundable, fully-recoupable advances against any royalties that may be payable to Bryant pursuant to paragraph 4(b), below.

(b)    MGA shall pay to Bryant a royalty of three percent (3%) of the Net Sales Receipts from the sales by MGA of any of the MGA Products developed by MGA on which Bryant provided his consulting services. As used herein, the term "Net Sales Receipts" means all monies actually received by MGA from its customers on sales of MGA Products less (i) any and all excise, sales, value added or comparable or similar taxes; (ii) freight and similar third party handling charges paid or payable by MGA; and (iii) returns, discounts, allowances or credits (inclusive of co-op and trade discounts and allowances). MGA shall account to Bryant on a calendar quarterly basis within thirty (30) days after the end of each quarter. All statements of royalties rendered by MGA hereunder shall be conclusive, final,

{00008662.DOC/2 / 10/04/2000  03:05 PM}

2

CG 0020

ATTORNEYS' EYES ONLY

and binding on Bryant, shall constitute an account stated, and shall not be subject to any question for any reason whatsoever unless specific written objection, stating the basis thereof, is given by Bryant to MGA within two (2) years after the date rendered. No action, suit, or proceeding of any nature in respect of any royalty statement or other accounting rendered by MGA hereunder may be maintained against MGA unless such action, suit, or proceeding is commenced against MGA in a court of competent jurisdiction within one (1) year after the date of MGA's notice rejecting such objection. Bryant or his representatives shall have the right, not more than once per year and not more than once per statement of royalties, to examine MGA's books and records relating to the sales of such MGA Products, such examination to be conducted during MGA's normal business hours and upon reasonable prior written notice.

(c)    All costs and expenses incurred by Bryant in connection with the performance of his obligations hereunder shall be borne solely by Bryant, except as otherwise agreed and incurred with MGA's prior written consent. In the event MGA requests Bryant to travel to the Orient on MGA's behalf in connection with his services hereunder, MGA will reimburse Bryant for all travel expenses incurred in connection therewith, such as parking, airfare (economy class), auto rental, meals and hotel accommodations. Reimbursement shall be at the actual cost of such item without any mark-up.

(d)    Bryant shall submit invoices to MGA for his monthly fees (and reimbursable expenses, if and as agreed) on a monthly basis. Each invoice shall provide sufficient detail to support the monthly fee charges and hours rendered (and shall include satisfactory copies of bills and/or payments for reimbursable expenses, as applicable). MGA shall pay each such invoice within fifteen (15) days after receipt of such invoice, provided, however, MGA reserves the right to request further explanation or documentation before paying any invoice submitted by Bryant.

(e)    MGA shall use its reasonable business efforts, consistent with its business judgment, to market, promote, distribute, sell and/or exploit the MGA Products and to collect on all monies due from sales. MGA has not made and does not hereby make any representation or warranty with respect to the quantity of sales (if any) of MGA Products embodying the Property which MGA may sell. Bryant recognizes and acknowledges that the sale of MGA Products is speculative and agrees that MGA's judgment and the judgment of its subsidiaries and affiliated companies with regard to the sales of any of its MGA Products and with regard to the marketing, promotion, advertising and exploitation of the MGA Products shall be binding and conclusive upon Bryant. Bryant warrants and agrees that Bryant will not make any claim, nor shall any liability be imposed upon MGA based upon any claim, that more sales could have been made or that better business could have been done than what was actually made or done by MGA or any of MGA's subsidiaries or its affiliated companies, or that better prices or terms could have been obtained.

5.    Warranties and Indemnity:  Bryant represents, warrants and agrees that:

(a)    he has the right and is free to execute this Agreement, to grant the rights granted by him to MGA hereunder, and to perform each and every term and provision hereof;

(b)    neither the execution and delivery of this Agreement nor the performance by Bryant of any of his obligations hereunder will constitute a violation, breach or default under any agreement, arrangement or understanding, or any other restriction of any kind, to which Bryant is a party or by which Bryant is bound;

(c)    the Bryant Work Product shall be free of all liens and encumbrances and there will be no claims, demands or actions pending or threatened with respect thereto; and that the Bryant Work Product is original and no part thereof infringes or shall infringe upon any common law or statutory rights or intellectual property rights of any third party including, without limitation, contractual rights,

{00006662.DOC/2 / 10/04/2000  03:05 PM}

3

CG 0021

EXHIBIT 19

PAGE 287

EX 13383-0004

ATTORNEYS' EYES ONLY

patents, copyrights, mask-work rights, trade secrets, rights of privacy and other intellectual property rights;

(d)     he shall comply with all applicable laws and regulations in force during the Term of this Agreement with respect to the services to be rendered hereunder; and

(e)     he shall indemnify and hold MGA harmless from and against any and all claims, losses, costs, judgments, settlements, damages and expenses (including reasonable counsel fees) arising from any breach by him of any of the warranties, representations and agreements made by him hereunder.

6.     **Default/Termination:**

(a)     In the event either Party fails to perform any of its material obligations hereunder, or breaches any representation, warranty or agreement contained herein, the other Party may terminate this Agreement on thirty (30) days prior written notice, provided the breaching Party shall not have remedied such failure within such thirty (30) day period.

(b)     Upon the termination of this Agreement Bryant shall turn over to MGA all materials relating to the MGA Products furnished by MGA to Bryant or shall give MGA satisfactory evidence of their destruction.

7.     **Confidentiality:**

(a)     Bryant shall keep in confidence and not disclose to any third party, without the written permission of MGA, the Confidential Information made known to him under this Agreement. As used herein, the term "Confidential Information" means information relating to MGA's products (whether current or projected), product titles, customers, employees, tools and techniques, designs, drawings, schematics and other documentation relating thereto and other confidential and proprietary business information of MGA and which is expressly labeled or identified to Bryant in writing as "confidential" or which, under the circumstances of such disclosure, Bryant knows, or reasonably should know, are treated by MGA as confidential. This requirement of confidentiality shall not apply to any information that is (i) in the public domain through no wrongful act of Bryant; (ii) rightfully received by the Bryant from a third party who is not bound by a restriction of nondisclosure; (iii) already in the Bryant's possession without restriction as to disclosure; or (iv) required to be disclosed by operation of law or by order of a court or administrative body of competent jurisdiction, (provided that prior to such disclosure, MGA shall first receive notice thereof from Bryant and have the opportunity to contest such order or requirement of disclosure or seek appropriate protective order).

(b)     Bryant agrees and acknowledges that all Confidential Information disclosed to him shall be and remain the sole property of MGA. Nothing contained in this Agreement shall be construed as granting to Bryant any right, title or interest of any kind, by license or otherwise, to the Confidential Information disclosed by MGA, the intellectual property therein or any part or copy thereof. Bryant further acknowledges and agrees that nothing contained herein shall be construed as granting Bryant any right to create, manufacture, produce and/or distribute any product(s) derived from or which otherwise uses any of the Confidential Information disclosed by MGA, or authorize or in any way assist others to do so. Bryant may not make, sell, license or distribute copies of the Confidential Information disclosed by MGA and may not sublicense, transfer or assign in any manner whatsoever this Agreement or any of Bryant's rights or obligations under this Agreement.

(c)     Bryant acknowledges that his failure to perform any of the terms or conditions of this Agreement shall result in immediate and irreparable damage to MGA. Bryant also acknowledges that there may be no adequate remedy at law for such failures and that in the event thereof MGA shall be

{00006662.DOC/2 / 10/04/2000  03:05 PM}

4

CG 0022

EXHIBIT 19

PAGE 288

EX 13383-0005

ATTORNEYS' EYES ONLY

entitled to equitable relief in the nature of injunction and to all other available relief, at law and/or in equity.

8.     **Notices:** All notices, statements and/or payments to be given to the parties hereunder shall be addressed to the parties at the addresses set forth on the first page hereof or at such other address as the parties shall designate in writing from time to time. All notices shall be in writing and shall either be served by personal delivery, mail, or facsimile (if confirmed by mail or personal delivery of the hard copy), all charges prepaid. Except as otherwise provided herein, such notices shall be deemed given when personally delivered, all charges prepaid, or on the date five (5) days following the date of mailing, except that notices of change of address shall be effective only after the actual receipt thereof. Copies of all notices to MGA shall be sent to Fischbach, Perlstein & Lieberman LLP, 1875 Century Park East, Suite 850, Los Angeles, California 90067, Attention: David S. Rosenbaum, Esq. Copies of all notices to Bryant shall be sent to Carter Bryant 1319 West 160th Street, Gardena, California 90247.

9.     **Independent Contractor/No Partnership/Third Party Beneficiary:** Bryant's relationship with MGA is that of an independent contractor. Bryant does not have, and will not represent that he has, any power, right or authority to bind MGA, or to assume or create any obligation or responsibility, express or implied, on behalf of MGA in MGA's name. Nothing stated in the Agreement shall be construed as constituting a partnership or as creating the relationships of employer/employee or principal/agent between the parties. In all matters relating to the Agreement, Bryant shall not act as MGA's employee within the meaning or application of any federal or state unemployment insurance laws, or any other laws or regulations which may impute any obligations or liabilities to MGA by reason of an employment relationship. Bryant will be solely responsible for all taxes, including without limitation, employee and employer, and that he carries all of his own insurance. Neither of the parties hereto shall hold itself out contrary to the terms of this provision by advertising or otherwise. This Agreement shall not be construed to be for the benefit of any third party.

10.     **Services Rendered Deemed Special, etc.:** Bryant acknowledges that the services to be rendered by him hereunder are of a special, unique, extraordinary and intellectual character which gives them peculiar value, the loss of which cannot be adequately compensated for in an action at law and that a breach of any term, condition or covenant hereof will cause irreparable harm and injury to MGA and in addition to any other available relief MGA will be entitled to seek injunctive relief.

11.     **General Provisions:**

        (a)     This Agreement may not be assigned by either Party hereto either voluntarily or by operation of law. Any such assignment shall not relieve such Party of its obligations hereunder.

        (b)     The titles of the paragraphs of this Agreement are for convenience only and shall not in any way affect the interpretation of any paragraph of this Agreement or the Agreement itself.

        (c)     A waiver by either Party of the terms or conditions of this Agreement in any instance shall not be deemed or construed to be a waiver of such terms or conditions for the future or of any subsequent breach thereof. All remedies, rights, undertakings, obligations and agreements contained herein shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either Party.

        (d)     Neither Party hereto shall be liable to the other for any incidental, consequential, special or punitive damages of any nature or kind, arising out of in connection with a breach by such Party of this Agreement, whether such liability is asserted on the basis of contract, tort (including negligence or strict liability), or otherwise, even if such Party has been warned of the possibility of any such loss or damage.

{00005662.DOC/2 / 10/04/2000 03:05 PM}

CG 0023

EXHIBIT 19

PAGE 289

EX 13383-0006

ATTORNEYS' EYES ONLY

(e)     This Agreement shall be construed and interpreted pursuant to the laws of the State of California, applicable to agreements made and to be performed entirely therein, and the parties hereto submit and consent to the jurisdiction of the courts of the State of California, including Federal Courts located therein, should Federal jurisdiction requirements exist, in any action brought to enforce (or otherwise relating to) this contract.

(f)     This Agreement constitutes the entire Agreement between the parties hereto and supersedes all prior agreements, whether written or oral, with respect to the subject matter herein contained. No provision of this Agreement shall be deemed waived, amended or modified by either Party unless such waiver, amendment or modification shall be in writing and signed by a duly authorized officer of the Party against whom the waiver, amendment or modification is to be enforced.

(g)     Nothing contained in this Agreement shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision of this Agreement and any material statute, law, ordinance, order or regulation contrary to which the parties hereto have no legal right to contract, the latter shall prevail, but in such event any provision of this Agreement so affected shall be curtailed and limited only to the extent necessary to bring it within the legal requirements.

Kindly indicate your agreement with the foregoing by signing in the space provided below.

Very truly yours,

MGA ENTERTAINMENT

By: _____

Its: _____

AGREED TO AND ACCEPTED:

_____
CARTER BRYANT

569-31 6 324
Social Security Number

{00008652.DOC/2 / 10/04/2000  03:05 PM)

6

CG 0024

EXHIBIT 19

PAGE 240

EX 13383-0007

# EXHIBIT 20

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 21

MAR-17-08   09:27AM   FROM-KayeSchola                              +                    T-828   P.001/002   F-114

# KAYE SCHOLER LLP

## FAX COVER SHEET

1999 Avenue of the Stars, Suite 1700
Los Angeles, California 90067-6048
310 788-1000
Fax 310 788-1200

| | | | |
|---|---|---|---|
| Date: | March 17, 2008 | Client No.: | 36037-0007 |
| To: | Juan Pablo Alban | Phone No.: | (213) 443-3000 |
| | | Fax No.: | (213) 443-3100 |
| From: | Bryant Delgadillo | Direct Dial No.: | (310) 788-1341 |
| | bdelgadillo@kayescholer.com | Direct Fax No.: | (310) 788-1205 |
| Re: | Bryant v. Mattel, Case No. CV 04-9049 | | |

Number of Pages: _2_ (Including Cover Sheet)

**Message:**

IF ALL PAGES ARE NOT RECEIVED, CALL (310) 788-1230
(or Call Direct Dial Number Listed Above)

*NOTE: This facsimile transmission contains confidential and/or legally privileged information from the law firm Kaye Scholer LLP intended only for the use of the individual(s) named on the transmission sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this facsimile transmission is strictly prohibited. If you have received this transmission in error, please notify us by telephone immediately so that we can arrange for the return of the documents to us at no cost to you.*

NEW YORK    CHICAGO    LOS ANGELES    WASHINGTON, D.C.    WEST PALM BEACH    FRANKFURT    LONDON    SHANGHAI

23230076.WPD

EXHIBIT 21
PAGE 298

RECEIVED

MAR 1 8 2008

**KAYE SCHOLER** LLP

1999 Avenue of the Stars, Suite 1700
Los Angeles, California 90067-6048
310 788-1000
Fax 310 788-1200
www.kayescholer.com

Bryant S. Delgadillo
310 788-1341
Fax 310 788-1200
bdelgadillo@kayescholer.com

March 17, 2008

**VIA OVERNIGHT MAIL**
Juan Pablo Alban
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:     **Mattel v. Bryant, et al. Case No.: CV 04-9049-SGL(RNBx)**

Dear Mr. Alban:

        We have recently discovered that a document bearing bates number KS07831 was inadvertently included in our initial production in this case. This document contains confidential attorney-client privileged communications and should have been included on the privilege log we provided to you. Pursuant to paragraph 13 of the Stipulated Protective Order, please immediately destroy or return to us all copies of this document, and delete all electronic copies of this document in your or Mattel's possession, custody or control.

        Please confirm in writing when you have complied with this request.

                                        Sincerely yours,

                                        Bryant S. Delgadillo

BSD:vjh

cc:  Jose R. Allen (w/out enclosures)

EXHIBIT 21
PAGE 290

23241350.DOC

# EXHIBIT 22

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**