# EXHIBIT 23

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 24

Case 2:04-cv-09049-SGL-RNB     Document 4014     Filed 06/20/2008     Page 1 of 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES -- GENERAL

Case No.     CV 04-09049 SGL(RNBx)                          Date:  June 20, 2008

Title:       CARTER BRYANT -v- MATTEL, INC.
             AND CONSOLIDATED ACTIONS
========================================================================
=

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

             Jim Holmes                            None Present
             Courtroom Deputy Clerk                Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

None present                            None present

PROCEEDINGS:     (IN CHAMBERS) ORDER RE MOTION TO COMPEL PRODUCTION OF
                 COMMUNICATIONS MADE IN FURTHERANCE OF CRIMES AND FRAUDS

        On June 20, 2008, the Court ordered MGA to submit documents, detailed on the record, for
in camera inspection.  MGA did so, and the Court conducted its in camera review.  Based on its
review of the clawed-back document, as well as the document submitted for in camera review, the
preponderance of the evidence does not support a finding that the sought legal advice in order to
further a crime or fraud.  Accordingly, the Court does not order the production of the privileged
documents identified on the record.

        Nevertheless, the Court's review revealed that an email from Carter Bryant to Isaac Larian
was withheld from production as privileged.  As acknowledged by counsel for MGA, this document,
identified as privilege log number 0548, is not privileged and is to be produced to Mattel forthwith.

        IT IS SO ORDERED.

MINUTES FORM 90                                    Initials of Deputy Clerk: jh
CIVIL -- GEN

EXHIBIT 24
PAGE 349

# EXHIBIT 25

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2   (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9                UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                      EASTERN DIVISION

12  CARTER BRYANT, an individual,        | CASE NO. CV 04-9049 SGL (RNBx)

13             Plaintiff,                | Consolidated with Case No. CV 04-
                                         | 09059 and Case No. CV 05-02727
14        vs.
                                         | Hon. Stephen G. Larson
15  MATTEL, INC., a Delaware
    corporation,                         | NOTICE OF MOTION AND MOTION
16                                       | IN LIMINE NO. 7 OF MATTEL, INC.,
             Defendant.                  | TO PRECLUDE THE MGA
17                                       | DEFENDANTS FROM ASSERTING
                                         | OR RELYING ON AN ADVICE OF
18  AND CONSOLIDATED ACTIONS            | COUNSEL DEFENSE; AND

19                                       | MEMORANDUM OF POINTS AND
                                         | AUTHORITIES
20
                                         | [Declarations of B. Dylan Proctor and
21                                       | Jon D. Corey and Notice of Lodging
                                         | filed concurrently herewith]
22
                                         | Date:  May 21, 2008
23                                       | Time:  1:00 p.m.
                                         | Place: Courtroom 1
24
                                         | **Phase 1**
25                                       | Pre-Trial Conference: May 5, 2008
                                         | Trial Date:          May 27, 2008
26

27            **CONFIDENTIAL -- ATTORNEYS' EYES ONLY**

28         **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

07209/2423372.3

-1-

(stamp: LODGED 2008 APR 14 PM 3: 44 CLERK, U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. RIVERSIDE BY___)

CONFORMED COPY

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that, on May 21, 2008 at 1:00 p.m., or as soon
3  thereafter as this matter may be heard, in the Courtroom of the Honorable Stephen G.
4  Larson, located at Courtroom 1 of the above-entitled Court, 3470 Twelfth Street,
5  Riverside, CA 92501, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move in
6  limine for an order precluding MGA Entertainment, Inc., MGA Entertainment (HK)
7  Limited and Isaac Larian from asserting, relying on, or introducing any evidence in
8  support of, or making any argument or any reference to, an advice of counsel defense,
9  assurances received from counsel or consultations with counsel concerning the legal
10 propriety of MGA's contracting with Bryant regarding Bratz, MGA's subsequent
11 copying, development, production and sales of Bratz, and/or MGA's or Bryant's
12 obligations to Mattel.

13     This Motion is made pursuant to Rule 403 of the <u>Federal Rules of</u>
14 <u>Evidence</u>, and is made on the grounds that it would be unduly prejudicial to Mattel if
15 MGA, MGA Hong Kong and Isaac Larian were permitted to assert or rely on an
16 advice of counsel defense after they failed to produce documents or permit testimony
17 related to that defense in discovery.

18     This Motion is based on this Notice of Motion and Motion, the
19 accompanying Memorandum of Points and Authorities, the Declarations of B. Dylan
20 Proctor and Jon D. Corey and Notice of Lodging filed concurrently herewith, the
21 records and files of this Court, and all other matters of which the Court may take
22 judicial notice.

23

24

25

26

27

28

MATTEL'S MOTION IN LIMINE NO. 7

EXHIBIT 25

PAGE 351

1    **Statement of Local Rule 7-3 Compliance**

2    　　　　The parties met and conferred regarding this matter on March 25, 2008

3    and times thereafter.

4

5    DATED:  April 14, 2008　　　　QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6

7    　　　　　　　　　　　　　　By　John B. Quinn / RAO

8    　　　　　　　　　　　　　　John B. Quinn
　　　　　　　　　　　　　　Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17209/2423372.3

-3-

MATTEL'S MOTION IN LIMINE NO. 7

EXHIBIT 25

PAGE 352

1

## **TABLE OF CONTENTS**

2                                                                                          **Page**

3
PRELIMINARY STATEMENT ................................................................................... 1
4
5
STATEMENT OF FACTS ......................................................................................... 2
6
ARGUMENT............................................................................................................. 10
7   I.   FAIRNESS DEMANDS THAT MGA BE PRECLUDED FROM
         ASSERTING OR OTHERWISE RELYING ON AN ADVICE OF
8        COUNSEL DEFENSE................................................................................ 10
9
    II.  IT IS OF NO MOMENT THAT MGA PREVIOUSLY OFFERED TO
10       PRODUCE ONLY A SMALL SUBSET OF PRIVILEGED
11       DOCUMENTS .......................................................................................... 12
12  CONCLUSION........................................................................................................ 14

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2423372.3

i

MATTEL'S MOTION IN LIMINE NO. 7

EXHIBIT 25

PAGE 353

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

Page

### Cases

Chevron Corp. v. Pennzoil Corp.,
   974 F.2d 1156 (9th Cir. 1992).................................................................. 14

Chiron Corp. v. Genentech, Inc.,
   179 F. Supp. 2d 1182 (E.D. Cal. 2001)..................................................... 14

Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.,
   259 F.3d 1186 (9th Cir. 2001)................................................................... 10

Permian Corp. v. U.S.,
   665 F.2d 1214 (D.C. Cir. 1981) ................................................................ 13

Trouble v. West Seal, Inc.,
   179 F. Supp. 2d 291 (S.D.N.Y. 2001)....................................................... 10

U.S. v. Reyes,
   239 F.R.D. 591 (N.D. Cal. 2006) .............................................................. 13

Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, L.P.,
   266 F. Supp. 2d 1144 (C.D. Cal. 2003)..................................................... 13

Vicinanzo v. Brunschwig & fils, Inc.,
   739 F. Supp. 891 (S.D.N.Y. 1990)............................................................ 10

### Statutes

Fed. R. of Evid. 403................................................................................... 10, 12

ii

MATTEL'S MOTION IN LIMINE NO. 7

EXHIBIT 25

PAGE 354

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

An important issue which may be resolved at trial is the extent to which the MGA defendants acted intentionally when they encouraged Bryant to violate his duties to Mattel. Mattel anticipates that the MGA defendants will attempt to argue that they had a good faith belief that: (1) Bryant owned the rights to the original Bratz drawings; (2) Bryant could properly assign those rights to MGA; and (3) Mattel did not own any of the materials that Bryant presented to MGA relating to Bratz, based in whole or part on the advice they sought and received from counsel prior to entering into an agreement with Bryant. The MGA defendants should not be permitted to present any evidence or argument that they acted in good faith based on advice of counsel, or solicited the advice of counsel to ensure they were acting lawfully, because they did not produce documents reflecting such advice during discovery, nor did they permit their witnesses to disclose such communications and advice during deposition.

For example, as evidence of his purported good faith, Larian testified that he instructed an MGA executive to consult with MGA's attorneys concerning Bryant's contract obligations with Mattel before MGA contracted with Bryant, and that she did so. However, MGA's counsel instructed Larian not to go beyond that partial disclosure and not to disclose the substance of counsel's advice. MGA is thus trying to rely on the consultation with counsel -- and the implication that it was advised that MGA could properly contract with Bryant -- as evidence of its good faith, while at the same time withholding the actual substance of the advice. MGA has also withheld several emails to and from its attorneys around the time when MGA first unveiled Bratz, which are described as seeking and receiving legal advice regarding Bryant's contract and licensing. Further, MGA has withheld communications with its litigation counsel from June 2001 -- nearly three years before Mattel filed suit -- which are described as "requesting legal advice regarding

-1-



EXHIBIT 25

PAGE 355

1  Mattel litigation" and "seeking legal advice regarding Bratz." None of this has been
2  produced. Thus, while communications with lawyers about Mattel obviously
3  occurred, MGA has shielded the substance of them.

4        Having made the tactical decision not to produce documents or
5  testimony showing the advice they actually received from counsel, the MGA
6  defendants should not now be permitted to rely upon at trial, to Mattel's prejudice,
7  their consultations with lawyers in support of their "good faith" defenses. Nor should
8  they be permitted to introduce at trial the documents and testimony they shielded
9  during discovery. Any suggestion or evidence that MGA relied on the advice of
10 counsel in support of its denials of knowledge or intent should be excluded.

11       **Statement of Facts**

12       <u>Mattel's Counterclaims and MGA's "Good Faith" Affirmative Defenses.</u>
13 Mattel filed its Second Amended Answer and Counterclaims on July 12, 2007.[1]
14 Mattel alleges, among other things, that the MGA defendants encouraged, aided and
15 paid Carter Bryant to develop Bratz designs while Bryant was a Mattel employee,
16 knowing that such conduct was a breach of Bryant's contractual duties to Mattel;[2] that
17 MGA and Bryant intentionally concealed these facts from Mattel;[3] that Mattel is the
18 rightful owner of Bratz drawings; and that MGA's infringement of Mattel copyrights
19 in those drawings harmed, and continues to harm, Mattel.[4] Mattel claims that the
20 MGA defendants are liable for, among other things, aiding and abetting Bryant's
21 breaches of duty to Mattel, copyright infringement, and willful copyright
22 infringement.[5]

23

24     [1]  Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, attached as Exhibit 12 to the concurrently filed Declaration of B.
25 Dylan Proctor ("Proctor Dec.").
26     [2]  <u>Id.,</u> ¶ 33.
    [3]  <u>Id.,</u> ¶ 35.
27     [4]  <u>Id.,</u> ¶¶ 83-87.
28     [5]  <u>Id.,</u> ¶¶ 83-87, 136-141, 149-154.

-2-

MATTEL'S MOTION IN LIMINE NO. 7



EXHIBIT 25

PAGE 356

1    MGA asserted 22 affirmative defenses in response to Mattel's

2  counterclaims. Central to a number of those defenses is MGA's claim that it "acted

3  with a good faith belief that Bryant owned the rights to his original Bratz drawings

4  and that his assignment of such rights to MGA . . . was valid and permissible."[6]

5  MGA also separately asserts the defense of "good faith" to Mattel's counterclaims.[7]

6    <u>Larian Suggests MGA Obtained Legal Advice Justifying Its Actions</u>.

7  MGA claims that "Bryant and his counsel . . . represented and warranted to MGA that

8  Bryant was the exclusive originator and owner of his Bratz ideas and drawing and

9  that no third party had any interest or rights in the drawings or ideas reflected in the

10  drawings."[8]  At his deposition, Larian offered reasoning in support of his claimed

11  good faith defense.  Despite Bryant's alleged representations, Larian testified that in

12  entering into a contract with Bryant he "wanted to make sure . . . that this idea that he

13  was showing us was nothing that was at Mattel or Mattel had done."[9]  Similarly,

14  MGA has stated that "[b]ased on the information provided to it, MGA did not believe

15  that Mattel owned any of the materials Carter Bryant presented to it, *but nonetheless*

16  *took steps to confirm the timing of Mr. Bryant's work prior to executing the*

17  *agreement*, as Mr. Larian testified to at his deposition."[10]  Larian testified that, as

18  evidence of his good faith, he asked Victoria O'Connor to make sure to check with

19

20  [6]  See, e.g., MGA's Fifth and Sixth Affirmative Defenses, Amended Answer and

21  Affirmative Defenses of MGA Entertainment Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. to Mattel, Inc.'s Second Amended

22  Answer and Counterclaims, dated September 19, 2007, at 22, Proctor Dec., Exh. 29.

   [7]  Id., MGA's Eighteenth Affirmative Defense, at 25.

23  [8]  MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory

24  Regarding Defendants' Affirmative Defenses, dated January 7, 2008, at 35, 76-77, Proctor Dec., Exh. 25.

25  [9]  Deposition Transcript of Isaac Larian, dated July 18, 2006 ("Larian Depo. Tr."),

26  at 46:16-19, attached as Exhibit 6 to the concurrently filed Declaration of Jon D. Corey ("Corey Dec.").

27  [10]  MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set

28  of Requests for Admission, dated August 21, 2007, at 12 (emphasis added), Proctor Dec., Exh. 43.

-3-

EXHIBIT 25

PAGE 357

1  MGA's attorney regarding whether Bryant had a contract with Mattel.[11]   Although

2  Larian testified that he saw an email from David Rosenbaum, outside counsel for

3  MGA, to O'Connor, indicating that they confirmed that Bryant created the Bratz

4  drawings in 1998 in Missouri,[12] MGA's counsel did not allow Larian to answer any

5  other questions concerning this email absent a stipulation that the attorney client

6  privilege would not be waived.[13]   Larian was also instructed not to disclose any

7  information he received from counsel about what was done to confirm that what

8  Bryant said about the date of creation was accurate.[14]

9         <u>MGA's Discovery Responses Demonstrate Continued Reliance on Its</u>

10  <u>Alleged "Good Faith."</u>   Written discovery in this case also has demonstrated that

11  MGA clearly intends to rely on its alleged "good faith" in defending Mattel's

12  counterclaims.   In response to requests for admissions, MGA acknowledged that "it

13  contends it believed at the time it entered into its agreement with Bryant and at all

14  times thereafter" that:

15       •   "[I]t had the right to market products developed as a result of its agreement with Bryant;"[15]

16

17       •   "[I]t would have the lawful right to fully exploit the drawings drawn and presented by Bryant prior to the execution of MGA's agreement with Bryant;"[16]

18

19       •   "[I]t had the right to fully exploit products developed as a result of its agreement with Bryant;"[17] and

20       •   "[I]t had the lawful right to fully exploit the drawings drawn and presented by Bryant prior to the execution of its agreement with Bryant."[18]

21

22

23  [11]   Larian Depo. Tr. at 47:16-23, Corey Dec., Exh. 6.

24  [12]   Larian Depo. Tr. at 91:13-92:6, Corey Dec., Exh. 6.

    [13]   Larian Depo. Tr. at 92:8-94:2, Corey Dec., Ex. 6.

25  [14]   Larian Depo. Tr. at 91:13-24; 96:1-11, Corey Dec., Ex. 6.

26  [15]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at 4, Proctor Dec., Exh. 43.

27  [16]   <u>Id.</u> at 5.

28  [17]   <u>Id.</u> at 6.

-4-

1    As recently as January 7, 2008, MGA served interrogatory responses in

2    which it contended that "MGA acted in good faith when Bryant transferred and MGA

3    acquired all rights to the Bratz concept,"[19] and that MGA "acted with a good faith

4    belief that Bryant owned the rights to his original Bratz drawings and that his

5    assignment of such rights to MGA [] was valid and permissible."[20]  MGA contends

6    that, "despite [its] fair inquiry" it did not know that Carter Bryant entered into an

7    inventions agreement with Mattel.[21]

8        MGA's Outside Counsel Refuses to Answer Questions At Deposition.

9    David Rosenbaum, outside counsel for MGA from 1996 until 2003,[22] was instructed

10   repeatedly during his deposition not to answer questions on the grounds of the

11   attorney-client privilege.  For example:

12       Q    Okay.  I'm going to ask you a series of questions
         about the scope of instructions that you may have been
13       given, if any, for MGA relating to the Bryant agreement.

14       Based on what's transpired today, I assume that counsel for
         you and MGA will believe that this information is
15       privileged and instruct you not to answer, but I just want to
         go ahead and confirm that.
16
         At any point when you were working on the Bryant
17       agreement that we've been discussing, did any
         representative of MGA ask you to confirm that Bryant
18       created his Bratz designs in 1998 before working for
         Mattel?
19
         Mr. Russell: Yes, I would instruct you that that invades the
20       attorney-client privilege.

21

22    [18]  Id. at 8.

23    [19]  MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory
      Regarding Defendants' Affirmative Defenses, dated January 7, 2008, at 35, Proctor
24    Dec., Exh. 25.

25    [20]  Id. at 32.

26    [21]   MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s
      Revised Third Set of Interrogatories, dated January 7, 2008, at 79-80, Proctor Dec.,
      Exh. 44.

27    [22]   Deposition Transcript of David Rosenbaum, dated January 25, 2008
28    ("Rosenbaum Tr."), at 13:11-14:4, 17:15-18:10, Corey Dec., Exh. 7.

EXHIBIT 25

PAGE 359

1     By Mr. Morgan:

2     Q    You'll accept that instruction?

3     A    I'll accept that instruction.

4     Q    Did MGA ask you to confirm when Bryant worked at Mattel?

5

6     Mr. Russell: Same objection.  Same instruction.

      The witness: Same acceptance.

7

8     By Mr. Morgan:

9     Q    Did MGA ask you to do any due diligence or investigation concerning the time that -- timing of Bryant's creation of Bratz?

10

11     Mr. Russell: Same objection.  Same instruction.

      The witness: Same answer.

12

13     By Mr. Morgan:

14     Q    Did MGA ask  you to provide advice as to the legal propriety of its acquisition of the Bratz product line?

15     Mr. Russell: Same objection.  Same instruction.

16     The witness: Same answer.[23]

17  Rosenbaum was also instructed not to answer questions concerning: whether or not

18  MGA asked him to provide legal advice regarding Mattel's potential ownership of

19  Bratz;[24] whether or not Rosenbaum offered legal advice to MGA concerning Bryant's

20  obligations to Mattel relating to his employment;[25] whether or not Rosenbaum

21  advised MGA that if Bryant had created the Bratz drawings, or any other design, idea

22  or concept, while an employee of Mattel, that Mattel may have an ownership interest

23  in those drawings, designs, ideas and/or concepts;[26] and whether or not Rosenbaum

24

25    [23]  Rosenbaum Tr., at 242:1-243:12, Corey Dec., Exh. 7.

26    [24]  Rosenbaum Tr., at 243:20-24, Corey Dec., Exh. 7.

27    [25]  Rosenbaum Tr., at 244:1-11, Corey Dec., Exh. 7.

28    [26]  Rosenbaum Tr., at 244:19-245:6, Corey Dec., Exh. 7.

-6-

MATTEL'S MOTION IN LIMINE NO. 7

EXHIBIT 25

PAGE 360

1   advised MGA that he believed, based on communications with Bryant, that Bryant
2   had a confidential information and inventions agreement with Mattel.[27]

3          <u>MGA Asserts the Attorney Client Privilege.</u>   Although MGA has
4   repeatedly injected its alleged "good faith" as to the central events in this case, it
5   refused to produce the communications with its attorneys that are the only evidence
6   of (1) what it actually thought, and was advised about, the legal propriety of
7   contracting with Bryant and the subsequent copying and sales of Bratz, and (2) what
8   inquiry, if any, it asked its lawyers to conduct.   MGA has withheld those
9   communications as privileged.

10          There is ample reason to doubt MGA's claims of good faith, as set forth
11  in detail in Mattel's Motion for Partial Summary Judgment.   According to MGA,
12  MGA first met with Bryant in late August or early September 2000.  MGA admits
13  that "Bryant told them . . . that he was employed by Mattel at that time."[28]   MGA
14  claims that despite some undisclosed "fair inquiry," it did not know Bryant had
15  signed an inventions agreement with Mattel.  However, MGA produced a fax from
16  the same time period (September 14, 2000) from Bryant to David Rosenbaum, who
17  was the attorney MGA hired to assist with the Bryant contract,[29] in which Bryant
18  encloses his offer letter with Mattel.  That offer letter expressly calls attention to his
19  Confidential Information and Inventions Agreement.[30]   In the fax, Bryant advised
20  MGA's lawyer that he was "unable to look into this too much . . . without risking
21  suspicion" on Mattel's part.[31]

22

23   ─────────────
     [27]   Rosenbaum Tr., at 245:18-24, Corey Dec., Exh. 7.
24   [28]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set
     of Requests for Admission, dated August 21, 2007, at 21, Proctor Dec., Exh. 43.
25   [29] Deposition Transcript of Victoria O'Connor, dated December 6, 2004
26   ("O'Connor Depo. Tr."), at 226:24-227:7, Corey Dec., Exh. 8; Larian Depo. Tr., at
     50:25-51:6; 140:18-140:21, Corey Dec., Exh. 6.
27   [30]   <u>See</u> Proctor Dec., Exh. 6.
     [31]   <u>Id.</u>
28

07209/2423372.3                              -7-

EXHIBIT 25

PAGE 361

1      However, when Mattel attempted to probe this matter, MGA would not
2  disclose what its attorneys told it, or what it asked them.  MGA's counsel instructed
3  Larian not to answer, on attorney-client privilege grounds, questions regarding what
4  MGA asked its attorneys about the propriety of contracting with Bryant and what its
5  attorneys told MGA.[32]   MGA also withheld more than a dozen emails between
6  O'Connor and Rosenbaum that were sent between September 1, 2000, the date of the
7  claimed meeting with Bryant, and October 4, 2000, the date Bryant's contract was
8  executed.[33]   Those emails are all described as messages "rendering [or requesting]
9  legal advice regarding Carter Bryant contract."[34]   Many emails between O'Connor
10  and Rosenbaum from the same time period were withheld by Rosenbaum as well.[35]
11  Those emails may include advice regarding the propriety of MGA contracting with
12  Bryant and MGA's or Bryant's obligations to Mattel.
13      MGA alleges that it first unveiled Bratz at the Hong Kong Toy Fair in
14  January 2001.[36]   The next month, on February 10, 2001, Isaac Larian emailed David
15  Rosenbaum, noting that "Bratz are very hot."[37]   MGA redacted the rest of that email
16  as privileged, describing it as "requesting legal advice regarding Carter Bryant
17  contract and licensing."[38]   That email apparently started a series of communications --
18  first between Larian and Rosenbaum and then between O'Connor and Rosenbaum --
19
20

21    [32]  Larian Depo Tr., at 47:19-48:1, Corey Dec., Exh. 6.
22    [33]  Supplemental Revised Privilege and Redaction Log for MGA's 2005 Document
      Production, Entry Nos. 12-18, 21-27, Proctor Dec., Exh. 46.
23    [34]  Id.
24    [35]  Privilege Log of David Rosenbaum, dated October 26, 2007, Entry Nos. 9, 12-
      17, 19-25, Proctor Dec., Exh. 47.
25    [36]  MGA's Complaint in Case No. 05-2727, dated April 13, 2005, ¶ 23, Proctor
      Dec., Exh. 15.
26    [37]  See Email from Isaac Larian to David Rosenbaum, dated February 10, 2001,
      Proctor Dec., Exh. 48.
27    [38]  Supplemental Revised Privilege and Redaction Log for MGA's 2005 Document
28    Production, Entry No. 8, Proctor Dec., Exh. 46.

07209/2423372.3

-8-

MATTEL'S MOTION IN LIMINE NO. 7



EXHIBIT 25

PAGE 362

1 all described as "requesting [or rendering] legal advice regarding Carter Bryant
2 contract and licensing."[39] MGA withheld all of those communications.

3      MGA has thus withheld dozens of emails between MGA and its counsel
4 that, based on their description, evidence legal advice MGA requested and received
5 regarding the legal propriety of contracting with Bryant, both before the contract with
6 him was executed and once it became apparent that MGA would begin significant
7 efforts copying, developing, producing and selling Bratz.

8      Isaac Larian has also personally withheld on privilege grounds
9 documents that appear to evidence what he knew regarding the legal propriety of
10 MGA's contract with Bryant and subsequent development of Bratz. Larian's privilege
11 log, which the Discovery Master ordered Larian to provide and which was served in
12 January 2008, includes a June 30, 2001 email from Larian to Patricia Glaser, Larian's
13 litigation counsel. The email is described as a "message requesting legal advice
14 regarding Mattel litigation,"[40] and was sent approximately when the Bratz dolls were
15 first put on sale,[41] well before Mattel filed suit in April 2004. Additional emails from
16 Larian to Glaser between June 29, 2001 and July 2, 2001, are listed on MGA's logs as
17 well,[42] including one described as an email "seeking legal advice regarding Bratz."[43]
18 These 2001 communications between Larian and Glaser are particularly suspicious in
19 light of Victoria O'Connor's testimony. She testified that the executed agreement
20 between Bryant and MGA was faxed to her by Bryant with a heading at the top
21
22

[39] Id., Entry Nos. 3-6, 8-11.
[40] Larian Privilege Log, dated January 15, 2008, Entry No. 89. Entry No. 90 on Larian's log is another communication from Larian to Glaser, dated June 29, 2001, Proctor Dec., Exh. 49.
[41] MGA's Complaint in Case No. 05-2727, dated April 13, 2005, ¶ 23 ("MGA introduced [Bratz] to consumers in June 2001."), Proctor Dec., Exh. 15.
[42] MGA's Supplemental Privilege Log, dated August 14, 2007, Entry Nos. 655-657, 660, Proctor Dec., Exh. 50.
[43] Id., Entry No. 660.

-9-

MATTEL'S MOTION IN LIMINE NO. 7

EXHIBIT 25
PAGE 363

1  stating "Barbie Collectibles."[44]   She acknowledged that the heading caused her

2  concern "because [Bryant] was still employed at Mattel at the time the contract was

3  executed."[45]   She expressed that concern to Isaac Larian.[46]   Larian then asked her to

4  whiteout "Barbie Collectibles" from the faxed agreement and send it to Patricia

5  Glaser.[47]

6                                    **Argument**

7  **I.     FAIRNESS DEMANDS THAT MGA BE PRECLUDED FROM**

8  **ASSERTING OR OTHERWISE RELYING ON AN ADVICE OF**

9  **COUNSEL DEFENSE**

10            "A party who intends to rely at trial on the advice of counsel must make

11  a full disclosure during discovery; 'failure to do so constitutes a waiver of the advice-

12  of-counsel defense.'"   Trouble v. West Seal, Inc., 179 F.Supp.2d 291, 304 (S.D.N.Y.

13  2001), quoting Vicinanzo v. Brunschwig & fils, Inc., 739 F. Supp. 891, 894

14  (S.D.N.Y. 1990).     See also Columbia Pictures Television, Inc. v. Krypton

15  Broadcasting of Birmingham, Inc., 259 F.3d 1186 (9th Cir. 2001) (district court

16  properly prohibited defendant from relying on advice of counsel defense at trial

17  where defendant refused to answer questions regarding the advice of counsel during

18  deposition).   Here, MGA argues that it should be absolved of liability because it

19  supposedly had a good faith belief that its actions were lawful, but it has withheld

20  from production communications with its attorneys bearing on that very subject.

21  Thus, it has waived any right it had to assert an advice of counsel defense, and all

22  such evidence and argument should be excluded under Rule 403 of the Federal Rules

23  of Evidence.

24

25  _____

    [44]  O'Connor Depo. Tr., at 18:13-18, Corey Dec., Exh. 8.

26  [45]  Id. at 20:8-20.

27  [46]  Id. at 20:8-21:20.

28  [47]  Id. at 18:13-18.

07209/2423372.3

-10-

MATTEL'S MOTION IN LIMINE NO. 7


EXHIBIT 25

PAGE 364

1    Nor should MGA be permitted to only half-assert this defense.   MGA
2  clearly intends to attempt to prejudice Mattel by <u>referring to</u> its attempts to obtain
3  legal advice regarding the propriety of its actions -- including the clear implication
4  that MGA was advised all along that Bryant was legally free to contract with MGA
5  and that MGA was free to copy, develop and market Bratz -- while withholding the
6  actual communications.   It would be unfair to permit MGA to make such an
7  implication.

8    Larian testified that in entering into a contract with Bryant he "wanted to
9  make sure . . . that this idea that he was showing us was nothing that was at Mattel or
10 Mattel had done."[48]  MGA has stated that it "took steps to confirm the timing of Mr.
11 Bryant's work prior to executing the agreement."[49]  MGA claims to have conducted a
12 "fair inquiry."[50]  Yet MGA has refused to provide testimony or produce documents
13 that demonstrate what those steps were or what MGA learned in taking those steps.
14 The closest MGA has come to providing that information is when Larian testified that
15 he asked Victoria O'Connor to make sure to check with MGA's attorney regarding
16 whether Bryant had a contract with Mattel, but he was then promptly interrupted by
17 his counsel and instructed not to divulge any attorney-client communications.[51]

18    Such partial "lifting of the veil" to gain an advantage is clearly improper.
19 MGA should not be permitted to create implications before the jury it has not
20 permitted Mattel to test in discovery.   Having failed to produce evidence of any
21 "advice of counsel" during discovery, the MGA defendants should be precluded from
22 introducing any evidence or argument in support of an advice of counsel defense at
23

24    [48]   Larian Depo. Tr., at 46:16-19, Corey Dec., Exh. 6.
25    [49]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set
       of Requests for Admission, dated August 21, 2007, at 12, Proctor Dec., Exh. 43.
26    [50]   MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s
27    Revised Third Set of Interrogatories, at 79-80, dated January 7, 2008, Proctor Dec.,
       Exh. 44.
28    [51]   Larian Depo. Tr., at 47:16-48:1, Corey Dec., Exh. 6.

EXHIBIT 25

PAGE 365



1 | trial, and likewise should be precluded from referring to consultations with counsel
2 | for the purpose of ensuring compliance with the law. Any such evidence, argument
3 | or suggestion would be unduly prejudicial and should be excluded under Rule 403 of
4 | the Federal Rules of Evidence.

5 | **II.    IT IS OF NO MOMENT THAT MGA PREVIOUSLY OFFERED TO**
6 | **PRODUCE ONLY A SMALL SUBSET OF PRIVILEGED**
7 | **DOCUMENTS**

8 | Mattel anticipates that the MGA defendants will argue that they should
9 | not be precluded from asserting an advice of counsel defense or referring to the legal
10 | advice they sought to ensure their compliance with law because they previously
11 | offered to produce some documents reflecting the advice of counsel. Specifically,
12 | MGA has at various times in the past proposed a narrow "transactional" waiver as to
13 | only one aspect of its claimed "good faith" -- its purported good faith prior to
14 | contracting with Bryant. However, MGA's proposal was improper and not supported
15 | by law as it would have allowed MGA to unilaterally pick and choose which
16 | privileged information it would disclose and which it would not.

17 | MGA previously argued that its waiver of the privilege, and any
18 | corresponding document production or testimony, should be limited to documents
19 | showing advice to MGA, prior to October 4, 2000 (when MGA entered into its
20 | agreement with Bryant), that its acquisition of Bratz from Bryant was unlawful.[52]
21 | This proposal was woefully inadequate, particularly in light of MGA's own
22 | allegations, which belie such a narrow waiver. MGA has alleged that:

23 |
24 |
25 |
26 | [52] MGA Entertainment, Inc.'s Opposition to Motion of Plaintiff Mattel, Inc for Order
27 | Finding Waiver and to Compel Production of Documents Withheld as Privileged,
date January 31, 2008, at 12, Proctor Dec., Exh. 51.
28 |

MATTEL'S MOTION IN LIMINE NO. 7

EXHIBIT **25**

PAGE **366**

- "[I]t believed at the time it entered into its agreement with Bryant *and at all times thereafter* that it had the right to market products developed as a result of its agreement with Bryant;"[53]

- "[I]t believed at the time it entered into its agreement with Bryant *and at all times thereafter* that it would have the lawful right to fully exploit the drawings drawn and presented by Bryant prior to the execution of MGA's agreement with Bryant;"[54]

- "[I]t believed at the time it entered into its agreement with Bryant *(and at all times thereafter)* that it had the right to fully exploit products developed as a result of its agreement with Bryant;"[55] and

- "[I]t believed at the time it entered into its agreement with Bryant *(and at all times thereafter)* that it had the lawful right to fully exploit the drawings drawn and presented by Bryant prior to the execution of its agreement with Bryant."[56]

Moreover, MGA's "good faith" defenses and its intent more generally are relevant to a number of Mattel's claims, including its civil and willful copyright infringement claims, which apply to *ongoing* conduct. As this Court has previously explained, "[b]ecause infringement is a continuing activity, the requirement to exercise due care and seek and receive advice is a continuing duty. Therefore, once a party asserts the defense of advice of counsel, this *opens to inspection the advice received during the entire course of the alleged infringement*." Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, L.P., 266 F. Supp. 2d 1144, 1148 (C.D. Cal. 2003) (emphasis added); see also U.S. v. Reyes, 239 F.R.D. 591, 603 (N.D. Cal. 2006) ("[p]arties 'cannot be permitted to pick and choose' in their disclosure of protected communications, 'waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others.'") (quoting Permian Corp. v. U.S., 665 F.2d 1214, 1221 (D.C. Cir. 1981)).

---

[53]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at 4 (emphasis added), Proctor Dec., Exh. 43.

[54]   Id. at 5 (emphasis added).

[55]   Id. at 6 (emphasis added).

[56]   Id. at 8 (emphasis added).

MATTEL'S MOTION IN LIMINE NO. 7

EXHIBIT 25

PAGE 347

1          Accordingly, Mattel properly rejected MGA's request that Mattel agree

2  to a limited "transactional" waiver by which MGA could disclose only the selected

3  communications it wishes to, while concealing the remainder.[57]  Allowing MGA to

4  pick and choose which communications to produce and which to withhold would

5  unfairly prejudice Mattel.  Because MGA chose to stand on its prior claims and shield

6  the advice it sought and received, MGA should not be permitted to refer to legal

7  advice it obtained at trial to attempt to create the impression that its conduct was

8  sanctioned by counsel.

9                        **Conclusion**

10          For the foregoing reasons, Mattel respectfully requests that the Court

11  enter an Order precluding the MGA defendants from asserting, relying on, or

12  introducing any evidence in support of, or making any argument or any reference to

13  an advice of counsel defense, assurances received from counsel or consultations with

14  counsel regarding the legal propriety of MGA's contracting with Bryant regarding

15  Bratz, MGA's subsequent copying, development, production and sales of Bratz, and

16  MGA's or Bryant's obligations to Mattel.

17  DATED:  April 14, 2008       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

18

19                     By _____

20                      John B. Quinn
                         Attorneys for Mattel, Inc.

21

22

23

---

24   [57]  As other courts have made clear, waiver of the privilege as to communications

25  acts as "a waiver of all communications on the same subject matter."  Chiron Corp. v. Genentech, Inc., 179 F. Supp. 2d 1182, 1186 (E.D. Cal. 2001) (citation omitted).  The "subject matter" is defined by the subject, not the date.  MGA efforts to limit the

26  scope of its waiver only to "pre-October 4, 2000" information that presumably supports its defenses, while shielding information that undermines its defenses

27  contravenes Ninth Circuit law.  See Chevron Corp. v. Pennzoil Corp., 974 F.2d 1156, 1162 (9th Cir. 1992) ("[t]he privilege which protects attorney-client communications

28  may not be used both as a sword and a shield.") (citation omitted).

MATTEL'S MOTION IN LIMINE NO. 7

EXHIBIT **25**

PAGE **368**

1

**PROOF OF SERVICE**

2      I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service,
3  1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4      On April 14, 2008, I served true copies of the following document(s) described as

5  **NOTICE OF MOTION AND MOTION IN LIMINE NO. 7 OF MATTEL, INC., TO PRECLUDE THE MGA DEFENDANTS FROM ASSERTING OR
6  RELYING ON AN ADVICE OF COUNSEL DEFENSE; AND MEMORANDUM OF POINTS AND AUTHORITIES**

7

8    on the parties in this action as follows:

9    Thomas J. Nolan                Mark E. Overland
      **Skadden, Arps, Slate, Meagher & Flom**  David C. Scheper
      **LLP**                      Alexander H. Cote
10    300 South Grand Ave., Ste. 3400     **Overland Borenstein Scheper & Kim**
      Los Angeles, CA 90071          **LLP**
11                                 601 West Fifth Street, 12th Floor
                                 Los Angeles, CA 90017
12

13    John W. Keker, Esq.
      Michael H. Page, Esq.
14    Christina M. Anderson, Esq.
      **Keker & Van Nest, LLP**
15    710 Sansome Street
      San Francisco, CA 94111
16

    **BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s)
17  being served.

18      I declare that I am employed in the office of a member of the bar of this Court at whose
    direction the service was made.
19

20      Executed on April 14, 2008, at Los Angeles, California.

21

22                                NOW LEGAL -- Dave Quintana

23

24

25

26

27

28

07209/2442344.1

EXHIBIT **25**

PAGE **369**

# EXHIBIT 26

RECEIVED

APR 2 8 2008

1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  JASON D. RUSSELL (Bar No. 169219)
   (jrussell@skadden.com)
3  MARINA V. BOGORAD (Bar No. 217524)
   (mbogorad@skadden.com)
4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Ste. 3400, Los Angeles, CA  90071-3144
5  Tel.:  (213) 687-5000 / Fax:  (213) 687-5600

6  RAOUL D. KENNEDY (Bar No. 40892)
   (rkennedy@skadden.com)
7  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   4 Embarcadero Center, Suite 3800
8  San Francisco, CA  94111-5974
   Tel.: (415) 984-2698 / Fax: (415) 984-2626
9
   Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
10 MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13                  EASTERN DIVISION

14 CARTER BRYANT, an individual,        )  CASE NO. CV 04-9049 SGL (RNBx)
                                        )
15                   Plaintiff,         )  Consolidated with Case No. 04-9059
                                        )  and Case No. 05-2727
16          v.                          )
                                        )  Honorable Stephen G. Larson
17 MATTEL, INC., a Delaware             )
   corporation,                         )  (1)   MGA PARTIES' MEMORANDUM OF
18                                       )        POINTS AND AUTHORITIES IN
                     Defendant.         )        OPPOSITION TO MATTEL, INC.'S
19                                       )        MOTION *IN LIMINE* NO.7 TO
                                        )        PREVENT MGA FROM ASSERTING
20 AND CONSOLIDATED ACTIONS.           )        OR RELYING ON AN ADVICE OF
                                        )        COUNSEL DEFENSE;
21
                                           **FILED UNDER SEPARATE COVER:**
22
   **FILED UNDER SEAL PURSUANT**          (2)   DECLARATION OF THOMAS J.
23 **TO PROTECTIVE ORDER**                      NOLAN IN SUPPORT THEREOF;
                                                 and
24
                                           (3)   PROOF OF SERVICE.
25
                                           Hearing/Time:  TBD
26

27

28

MGA Parties' Opposition to Mattel's Motion *In Limine* No. 7 - Case No. CV 04-9049 SGL (RNBx)

EXHIBIT 24

PAGE 370

# **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS ................................................................... 2

ARGUMENT ................................................................................ 9

    I.    MATTEL IS ESTOPPED FROM ASSERTING MGA CANNOT RELY ON ITS GOOD FAITH DEFENSE BASED ON EXISTING EVIDENCE ................................................................... 9

    II.    SUFFICIENT NON-PRIVILEGED INFORMATION FROM OTHER SOURCES EXISTS TO SUPPORT MGA'S GOOD FAITH DEFENSE ... 11

    III.    MATTEL'S MOTION *IN LIMINE* MUST BE DENIED EVEN IF THE COURT DETERMINES THAT THE MGA PARTIES ARE ASSERTING AN ADVICE OF COUNSEL DEFENSE ......................... 14

    IV.    THE EVIDENCE REGARDING THE ROSENBAUM ADVICE ON THE BRATZ OWNERSHIP ISSUE IS LIMITED TO THE TIME OF THE CONTRACT NEGOTIATIONS WITH BRYANT ......................... 16

CONCLUSION ............................................................................ 18

EXHIBIT 26

PAGE 371

1

## TABLE OF AUTHORITIES

2

PAGE(S)

3 CASES

4

1st Security Bank of Washington v. Eriksen,
5   No. CV06-1004RSL,
   2007 WL 188881 (W.D. Wash. Jan. 22, 2007) ................................................ 12

6

A&L Technology v. Resound Corporation,
7   No. C 93-00107 CW,
   1995 WL 415146 (N.D. Cal. June 29, 1995) ................................................. 15

8

Abbe v. City of San Diego,
9   Nos. 05cv1629 DMS (JMA), 06cv0538 DMS (JMA),
   2007 WL 4146696 (S.D. Cal. Nov. 9, 2007) ................................................ 11

10

Aetna Casualty & Surety Company v. Superior Court,
11   153 Cal. App. 3d 467 (1984) ...................................................................... 12

12

Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.,
   131 Cal. App. 4th 802 (2005) ..................................................................... 16

13

In re Broadcom Corporation Securities Litigation,
14   Nos. SACV01275-GLT (MLGx), SACV 02301 GLT (ANx),
   2005 WL 1403516 (C.D. Cal. Feb. 10, 2005) .............................................. 14

15

In re Broadcom Corporation Securities Litigation,
16   No. SACV 01275-GLT (MLGx),
   2005 WL 1403513 (C.D. Cal. Apr. 7, 2005) ............................................... 14

17

Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.,
18   259 F.3d 1186 (9th Cir. 2001) .................................................................... 15

19

Dey, L.P. v. Ivax Pharmaceuticals, Inc.,
   233 F.R.D. 567 (C.D. Cal. 2005) ............................................................... 14

20

In re Geothermal Resources International, Inc.,
21   93 F.3d 648 (9th Cir. 1996) ....................................................................... 11

22

Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith Inc.,
   No. 96 CIV 7874 (RWS),
23   2002 WL 737482 (S.D.N.Y Apr. 26, 2002) ................................................ 15

24

Hill v. Eddie Bauer,
   242 F.R.D. 556 (C.D. Cal. 2007) ............................................................... 10

25

Home Indemnity Company v. Lane Powell Moss and Miller,
26   43 F.3d 1322 (9th Cir. 1995) ..................................................................... 12

27

Insurance Company of State of Pa. v. City of San Diego,
   Civil No. 02cv693 BEN (CAB),
28   2008 WL 926558 (S.D. Cal. Apr. 4, 2008) ................................................. 12

EXHIBIT 26

PAGE 372

Laguna Beach County Water District v. Superior Court,
124 Cal. App. 4th 1453 (2004) ................................................................................ 17

Minder Music Limited, v. Mellow Smoke Music Co.,
No. 98 Civ. 4496 (AGS),
1999 WL 820575 (S.D.N.Y Oct. 14, 1999) ........................................................... 17

New Hampshire v. Maine,
532 U.S. 742 (2001)...................................................................................................... 9

Transamerica Title Ins. Co. v. Superior Court,
188 Cal. App. 3d 1047 (1987) ................................................................................ 13

Tuchscher Development Enterprises Inc. v. San Diego Unified Port District,
106 Cal. App. 4th 1219 (2003) ................................................................................ 16

Verizon California Inc. v. Ronald A. Katz Technology Licensing, L.P.,
266 F. Supp. 2d 1144 (C.D. Cal. 2003) .............................................................. 16

Whaley v. Belleque,
___ F.3d ___, No. 06-35759,
2008 WL 763774 (9th Cir. Mar. 24, 2008).......................................................... 10

Williams v. Sprint/United Management Co.,
No. 03-2200-JWL-DJW,
2006 WL 1867478 (D. Kan. July 1, 2006) ......................................................... 11

Zuill v. Shanahan,
80 F.3d 1366 (9th Cir. 1996).................................................................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 26
PAGE 323

## PRELIMINARY STATEMENT

In seeking to preclude the MGA Parties from asserting defenses wholly fatal to a number of Mattel's claims, Mattel's Motion *in limine* No. 7 ("Mattel MIL No. 7") creates from whole cloth an "advice of counsel" defense that the MGA Parties never asserted, hoping that this Court will disregard the overwhelming non-privileged evidence demonstrating that the MGA Parties took numerous steps to verify their good faith belief that Carter Bryant – not Mattel – owned the rights to the BRATZ concept that Bryant was pitching to MGA in September of 2000. The MGA Parties do not need to use privileged information to establish their good faith belief that Mattel had no right to the BRATZ concept – and Mattel has already *conceded* to Judge Infante that *Mattel does not need it for its arguments either.*[1]

Mattel hopes the Court will overlook the fact that when Mattel filed a nearly identical Motion to Compel before Judge Infante, the MGA Parties offered to engage in a limited waiver of their privilege and produce the exact documents and testimony that Mattel accuses the MGA Parties of shielding, *and in response Mattel withdrew its Motion as "unnecessary" because "the requested information … is not 'vital' to Mattel's rebuttal to such defenses."* (Ex. 84 (Mattel Inc.'s Notice of Withdrawal Without Prejudice of Motion for Order Finding Waiver and to Compel Production of Documents Withheld as Privileged, dated February 5, 2008) at 1.)[2] The unstated reason for Mattel's withdrawal of its Motion to Compel was obvious – in the face of the MGA Parties' offer, Mattel no longer had grounds for its continued abuse of the attorney-client privilege and would be forced to disclose information about its internal investigations of Isaac Larian, Carter Bryant and MGA prior to November 2003 – effectively rebutting Mattel's claims of fraudulent concealment on the

---

[1]    Although the MGA Parties' prior counsel, in an abundance of caution, asserted good faith as an affirmative defense, in fact it is not. Rather, evidence of the MGA Parties' good faith is relevant and admissible to negate any claim of Mattel that involves the MGA Parties' scienter or intent. (See MGA Parties' Opp'n to Mattel's Motion for Partial Summary Judgment at IV.C.)

[2]    All "Ex.   " references herein are to documents submitted with Declaration of Thomas J. Nolan dated April 28, 2008 unless otherwise noted.

EXHIBIT 26
PAGE 374

1 part of the MGA Parties. Now Mattel tries another tack – characterizing the fact that MGA
2 offered a limited waiver as somehow demonstrative of an intent on MGA's part to rely on
3 the advice of counsel in showing its good faith belief that Mattel had no claims to the
4 BRATZ. Unfortunately for Mattel, the MGA Parties have no need to rely on the advice of
5 counsel to establish their good faith, because the record is replete with more than sufficient
6 non-privileged evidence of MGA's good faith. Specifically, the actions the MGA Parties
7 took to confirm their belief that Carter Bryant was telling the truth when he represented that
8 he, not Mattel, was the sole owner of the BRATZ concept are confirmed through the
9 unprivileged deposition testimony of, among others, MGA's outside counsel David
10 Rosenbaum, Bryant's patent counsel Anne Wang, as well as testimony from Isaac Larian
11 and Bryant himself and non-privileged documents such as the warranties in the MGA's
12 contract with Bryant. Thus, the MGA Parties did not plead, and do not intend to rely upon,
13 the advice of counsel defense. Most importantly, after reviewing MGA's evidence described
14 above, Mattel **admitted** to this Court that the privileged documents and testimony it
15 complains of here are not "vital" to its rebuttal of that good faith belief. Mattel's Motion *in*
16 *limine* is thus both unfounded and inconsistent, and should be denied.

17                              <u>STATEMENT OF FACTS</u>

18        At trial, the MGA Parties will show that they verified Bryant's ownership of BRATZ
19 to negate the elements of several of Mattel's claims; specifically, tortious interference with
20 contract, aiding and abetting breach of fiduciary duty, aiding and abetting breach of duty of
21 loyalty, conversion, unfair competition, and copyright infringement. To demonstrate that
22 the MGA Parties had no reason to "know" that they were potentially interfering with or
23 aiding and abetting a breach of Bryant's agreements with Mattel or potentially challenging
24 any copyright ownership of Mattel's, the MGA Parties will introduce testimony from David
25 Rosenbaum, MGA's outside counsel at the time of the negotiations with Carter Bryant in
26 September and October 2000, and Anne Wang, Bryant's counsel at the same time period,
27 concerning Wang's representations to Rosenbaum that Bryant owned the rights to the

28

EXHIBIT 2 ✔

PAGE 375

1  BRATZ concept.  The MGA Parties also intend to rely on the testimony of Carter Bryant,

2  Isaac Larian and Victoria O'Connor, as well as relevant correspondence.  ***None of this***

3  ***evidence is privileged and there is no reliance on the advice of counsel therein.***  This non-

4  privileged information includes:

5  • Testimony establishing that at the September 1, 2000 pitch meeting, MGA

6     asked Bryant whether Mattel had any rights to the BRATZ concept that Bryant

7     presented.  (See Ex. 76 (Larian) at 46:16-19 (Larian testimony that he "wanted

8     to make sure when we w[ere] there that this idea that he was showing us was

9     nothing that was at Mattel or Mattel had done"), 77:22-78:1 ("So he showed us

10    some drawings, and they looked interesting.  **I asked him if this was**

11    **something that he was doing at Mattel or had done at Mattel, and he said,**

12    'no.' And I said, 'okay.'"); Ex. 77 (O'Connor) at 219:2-15, 224:24-225:5

13    (MGA sought representation from Bryant "that he was the sole owner of the

14    drawings that he was licensing to MGA").)

15  • Testimony establishing that Bryant informed MGA that he owned the rights to

16    BRATZ.  (See Ex. 76 (Larian) at 82:24-83:5, 87:13-14, 91:19-21 (Larian

17    testimony that Bryant "told us – and we verified this later on – that he had

18    done this in Missouri in 1998, when he was not working for anybody"), 99:23-

19    100:2 ("Q. Can you recall anything else that Carter Bryant said at this meeting?

20    I mean, you told me that he said, 'I created these during this period when I

21    wasn't working for Mattel'; right? A. Yes."); Ex. 78 (Bryant) at 22:2-3 (Bryant

22    testimony confirming he "told MGA … that BRATZ were my creation"),

23    24:9-12 ("I owned the rights to the BRATZ and felt perfectly comfortable

24    assigning them to MGA"), 111:14-17 (Bryant thought that the BRATZ was "a

25    project that I had created while I was not employed with Mattel, so I didn't

26    think there would be a problem"), 267:11-268:10 (Bryant testimony that he

27    confirmed he owned the BRATZ when asked when he had developed the

28

EXHIBIT 24

PAGE 376

1    idea).)

2    • Testimony establishing that Isaac Larian and MGA believed Bryant's

3    representations to them.  (See Ex. 76 (Larian) at 445:25-446:9 ("Q. When

4    M.G.A. entered into its agreement with Carter Bryant relating to BRATZ, did

5    you think it was possible that Mattel might have rights to any of Carter

6    Bryant's drawings or ideas that he was conveying to you? A.  That he might –

7    that Mattel might have? I – I think we did; that's why I asked our lawyers and

8    Victoria O'Connor to look into it, and they did and they got assurances that

9    Mattel has no rights to it."), 448:3-13 ("I just want[ed] to make sure that

10   whether he's telling us truth and he actually has the rights to those drawings,

11   and I instructed Victoria O'Connor to deal with our lawyers and make sure that

12   we have crossed all the T's. Q. *Was there some question in your mind as to*

13   *whether or not Carter Bryant had the rights*? A. *No.* As a prudent

14   businessman I just want[ed] to make sure. *I believed him.*") (emphasis added).)

15   • Testimony establishing that Bryant's patent attorney Anne Wang told

16   Rosenbaum that Bryant had created the BRATZ concept at a time period

17   separate from his employment at Mattel and that it was his own separate

18   creation.  (See Ex. 79 (Wang) at 47:23-48:18 (Wang testimony that she called

19   Rosenbaum within two days after the "doll ownership" inquiry by Rosenbaum,

20   and told him "that Mr. Carter was the creator and the owner" and "that [Bryant]

21   had created the doll at a time period separate from his employment and that it

22   was his own separate creation"), 53:21-54:1 (Wang testimony agreeing with

23   characterization of Rosenbaum's testimony regarding the ownership

24   conversation "that no specific dates of creation were discussed, but that it was

25   all discussed in terms of relative to [Bryant's] employment at Mattel in a sense

26   that [Wang] represent[ed] that [Wang] w[as] satisfied that it had been created

27   before that employment"); Ex. 80 (Rosenbaum) at 80:3-12 (Rosenbaum

28

EXHIBIT 26

PAGE 377

1    testimony that Wang "advised me that the work that Mr. Bryant had done in

2    developing … 'the concept' was done outside the scope of his employment

3    with Mattel and had been done prior to his employment with Mattel"), 82:15-

4    18, 84:24-85:2 (Rosenbaum testimony that Wang told Rosenbaum "that she

5    had reviewed the chronology of his development of the work product and was

6    satisfied that it fell outside the scope of any employment obligations to

7    Mattel"); Ex. 76 (Larian) at 459:6-18 ("Q. Do you know what assurances

8    Carter Bryant's lawyer gave? A. In general I remember that saying yes, that he

9    did these in 1998 in Missouri, when he was not working at Mattel, and that he

10   indeed himself did it. Q. Was the fact that Carter Bryant's lawyer represented

11   to M.G.A. that Carter Bryant had done the drawings in 1998 in Missouri when

12   he was not a Mattel employee have any significance to you at that time? A. *It*

13   *– [s]he confirmed what Carter Bryant had told us.*") (emphasis added).)

14   • Evidence establishing that Bryant represented, in writing, to MGA that his

15   contracting with MGA did not violate or breach any existing contract with a

16   third party, that the concept and drawings were "original," did not infringe on

17   any third party's contractual or intellectual property rights, were the exclusive

18   property of MGA, and indemnified MGA should a third party claim ownership

19   of the BRATZ concept or drawings. (See Ex. 81 at 5 (a)-(c), (e) (Bryant

20   Deposition Exhibit 15) (MGA Agreement with Bryant dated October 4, 2000);

21   Ex. 78 (Bryant) at 22:6-8, 11, 23:16-20 (Bryant testimony confirming he

22   signed agreement "promising MGA [he] owned the rights to BRATZ").)

23   • Testimony and evidence establishing that during the contract negotiations,

24   Bryant was communicating with MGA independent of Rosenbaum and Wang.

25   (See Ex. 82 (Deposition Exhibit 2213) (email from Rosenbaum to Wang

26   stating that "I understand that my client has discussed these issues with Carter

27   directly and he has agreed to withdraw most of the proposed changes [in the

28



EXHIBIT 26

PAGE 378

draft MGA agreement].”); Ex. 83 (Deposition Exhibit 2204) (email from O'Connor to Rosenbaum stating that "I spoke with Carter this morning, who is meeting with counsel on Wednesday. He hopes to execute the agreement by Friday."); Ex. 80 (Rosenbaum) at 207:2-18 ("Q. And do you recall what day he actually signed the agreement? A. No. Q. Did he send back his signature page directly to you or to somebody else? A. *I believe he returned the signed copies directly to MGA.* Q. Okay. Did you ever receive a fully executed copy by both parties? A. For my files? No. Q. Yes. A. No, I did not. Q. Did you ever see the faxed signature page that Mr. Bryant sent to MGA? A. No. Q. Do you know who he sent that to at MGA? A. Not specifically.") (emphasis added).)

Given the overwhelming non-privileged testimony and evidence establishing their good faith, the MGA Parties are not asserting, or even "half-assert[ing]", an advice of counsel defense, contrary to Mattel's suggestion. (Mattel MIL No. 7 at 11.) In any event, Mattel can hardly claim that it would be prejudiced by such an assertion, since Mattel has already been offered – and *rejected as "unnecessary"* for rebutting the MGA Parties' defenses – the limited universe of relevant documents and testimony it complains of here. (Ex. 84 (Mattel Inc.'s Notice of Withdrawal Without Prejudice of Motion for Order Finding Waiver and to Compel Production of Documents Withheld as Privileged, dated February 5, 2008) at 1.)

As described at length in the MGA Parties' Opposition To Motion Of Plaintiff Mattel, Inc. For Order Finding Waiver And To Compel Production Of Documents Withheld As Privileged, MGA made written and verbal offers, beginning in December 2004, to make a transactional waiver of privilege as to the attorney-client communications relating to the MGA's verification that the BRATZ concept Carter Bryant offered to MGA in September 2000 did not infringe any contractual obligations Bryant owed Mattel. Those offers were rejected by Mattel. (*See* Ex. 85 (Opposition To Motion Of Plaintiff Mattel, Inc. For Order

EXHIBIT 2 6
PAGE 379

1 | Finding Waiver And To Compel Production Of Documents Withheld As Privileged) at 2-5.)
2 | In December 2007, the parties began rounds of briefing before Judge Infante on the implied
3 | waiver implications of *Mattel's* claim that the statute of limitations for its claims against
4 | MGA and Carter Bryant was tolled because it was not until November of 2003 that Mattel
5 | first knew or had reason to suspect the alleged misconduct now in issue – a claim hinging
6 | on Mattel's continued assertion of privilege as to its pre-November 2003 internal
7 | investigations of MGA, Larian and BRATZ. (Id. at 5-6.)

8      On January 23, 2008, Mattel filed the above-described Motion Of Plaintiff Mattel,
9 | Inc. For Order Finding Waiver And To Compel Production Of Documents Withheld As
10 | Privileged ("Mattel Motion to Compel"), seeking a determination that MGA's "good faith"
11 | defenses effected a partial, implied waiver and seeking all documents regarding the
12 | propriety of MGA's contracting with Bryant, specifically pointing to 21 documents that
13 | MGA either withheld or produced in redacted form, which Mattel sought in unredacted
14 | form, and responses to specific questions in the Larian deposition. (Ex. 86 (Mattel Motion
15 | to Compel) at 2.)

16      In response, the MGA Parties suggested Judge Infante "order MGA to produce the
17 | September 2000 communications concerning MGA's acquisition of the original Bratz
18 | drawings from Bryant"[3] as "warranted for the same reason that MGA is entitled to discover
19 | privileged material concerning Mattel's tolling claims." (See Ex. 85 (Opposition To Motion
20 | Of Plaintiff Mattel, Inc. For Order Finding Waiver And To Compel Production Of
21 | Documents Withheld As Privileged) at 7, 10.) The MGA Parties "further urge[d] that the
22 | Court conduct an in-camera inspection of the 2001 exchanges between Isaac Larian and
23 | Patricia Glaser"[4] to confirm the MGA Parties' belief that those emails are "totally irrelevant
24 | to MGA's 'good faith' when it acquired the Bratz drawings from Mr. Bryant nearly a year
25 | before[.]" (Id. at 10.) Finally, the MGA Parties "suggest[ed] that Mattel's request for a
26 |

_____

27 | [3]   These exact documents are described in Mattel MIL No. 7 at nn.33 & 40.
28 | [4]   These documents are described in Mattel MIL No. 7 at nn.42 & 43.

MGA Parties' Opposition to Mattel's Motion *In Limine* No. 7 - Case No. CV 04-9049 SGL (RNBx)



EXHIBIT 24

PAGE 380

1  further deposition [of Mr. Larian] be deferred until Mattel has had an opportunity to review
2  the requested documents and can specify whether and why further examination is needed."
3  (Id. at n.6.)

4      The MGA Parties argued that Mattel should likewise be directed by Judge Infante to
5  produce its privileged information, allowing the MGA Parties to contest Mattel's fraudulent
6  concealment allegations that it was unaware of any potential wrongdoing by the MGA
7  Parties before November 2003 because "Mattel has used the attorney-client and work
8  product privileges to block MGA's efforts to discover whether Mattel had reason, as the
9  record suggests, to suspect the alleged wrongdoing well before that date." (Id. at 8-9.)  In
10 response, as noted above, Mattel promptly *withdrew* its Motion to Compel on February 5,
11 2008, purportedly because, in light of the testimony of MGA attorney David Rosenbaum
12 and Bryant's counsel Anne Wang, *"the evidence thus establishes there is no support for*
13 *MGA's purported good faith defenses, [and] Mattel has now concluded that its motion*
14 *seeking waiver of the privilege as to information relating to these defenses is unnecessary*
15 *at this time and the requested information is … not 'vital' to Mattel's rebuttal to such*
16 *defenses."*  (Ex. 84 (Mattel Inc.'s Notice of Withdrawal Without Prejudice of Motion for
17 Order Finding Waiver and to Compel Production of Documents Withheld as Privileged,
18 dated February 5, 2008), at 1 (emphasis added).)

19     Despite conceding less than three months ago that the evidence at issue here is
20 "unnecessary" to rebut the MGA Parties' good faith evidence, Mattel now brings the instant
21 Motion, more than half of which is "cut-and-pasted" verbatim from Mattel's abandoned
22 Motion to Compel.  (Compare Mattel MIL No. 7 at 1:16-2:3, 2:11-3:5, 3:6-4:1, 4:9-5:7,
23 5:16-7:1, 7:3-21, 8:1-10:5, with Ex. 86 (Mattel Motion to Compel) at 1:14-2:5, 2:20-3:12,
24 3:14-4:14, 4:16-5:15, 6:8-8:11.)  As noted above, Mattel's Motion complains of the MGA
25 Parties' "shielding" of the same 21 documents Mattel previously sought and abandoned in
26 Mattel's Motion to Compel – seventeen of which MGA was willing to produce as a limited
27 waiver of its privilege, and four of which MGA suggested would be deemed irrelevant by *in*
28



EXHIBIT 26

PAGE 381

1   *camera* review.  (See Ex. 85 (Opposition To Motion Of Plaintiff Mattel, Inc. For Order

2   Finding Waiver And To Compel Production Of Documents Withheld As Privileged) at 7,

3   10.)[5] Despite the fact that Mattel *was offered access* to the same documents, Mattel brashly

4   asserts that it will be prejudiced if MGA "create[s] implications before the jury it has not

5   permitted Mattel to test in discovery[.]"   (Mattel MIL No. 7 at 11.)    Instead, Mattel

6   incredibly dismisses its own rejection of access to the documents as "of no moment" (id. at

7   12). Mattel also challenges the assertion of privilege in the Rosenbaum and Larian

8   depositions (id. at 3-4, 5-6) – but neglects to mention that these depositions were completed

9   *before* Mattel withdrew its Motion to Compel as "unnecessary" in February; in fact,

10  Mattel's withdrawal papers *specifically reference* the Rosenbaum deposition.   (Ex. 84

11  (Mattel Inc.'s Notice of Withdrawal Without Prejudice of Motion for Order Finding Waiver

12  and to Compel Production of Documents Withheld as Privileged, dated February 5, 2008).)

13  Finally, Mattel makes no attempt to challenge the non-privileged information at its disposal

14  – likely because Mattel has already represented to the Court that this evidence is sufficient

15  to rebut the MGA Parties' evidence of good faith. (Id.)

16                                    **ARGUMENT**

17  I.   **MATTEL IS ESTOPPED FROM ASSERTING MGA CANNOT RELY ON**
18       **EVIDENCE OF ITS GOOD FAITH BASED ON EXISTING EVIDENCE**

19       Judicial estoppel is an equitable doctrine that "generally prevents a party from

20  prevailing in one phase of a case on an argument and then relying on a contradictory

21  argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001).

22  Courts will apply the doctrine where (1) a party's position in the second instance is "clearly

---

23  [5]   Mattel's characterization of the withholding of "dozens of emails between MGA and its
24  counsel" (Mattel MIL No. 7 at 9) is more than a little misleading, since Mattel appears to be
    counting redacted email chains appearing on both the Rosenbaum and MGA privilege lists as
25  individual withheld documents – despite the fact that, as Mattel well knows, these documents are
    identical. (Compare, e.g., Ex. 87 (redacted version of Entry Nos. 12, 16, 18, 19 and 21 on MGA's
26  Supplemental Revised Privileged and Redaction Log for MGA's 2005 Document Production), with
27  Ex. 88 (redacted version of Entry Nos. 12, 14, 16, 17 and 19 on Privilege Log of David Rosenbaum
    dated October 26, 2007); see also Mattel MIL No. 7 at nn.33 & 35.)
28

EXHIBIT 20
PAGE 382

1  inconsistent" with its position in the first matter; (2) a court accepted the party's earlier
2  position "so that judicial acceptance of an inconsistent position in a later proceeding would
3  create the perception that either the first or the second court was misled"; and (3) the party
4  asserting the inconsistent position "would derive an unfair advantage or impose an unfair
5  detriment on the opposing party if not estopped." Id. at 750-51.  See also Whaley v.
6  Belleque, __ F.3d. __ , 2008 WL 763774, at *4 (9th Cir. Mar. 24, 2008) (noting that "the
7  state cannot now reverse its position in order to suit its current objectives" because
8  "[j]udicial estoppel is an equitable doctrine that is intended to protect the integrity of the
9  judicial process by preventing a litigant from playing fast and loose with the courts"); Hill v.
10 Eddie Bauer, 242 F.R.D. 556, 559 (C.D. Cal. 2007) (judicial estoppel appropriate where "it
11 appears plaintiff has taken an inconsistent legal position regarding the date by which
12 defendant's responses are due, and the Court does not view favorably such a change in
13 position").
14      Here, Mattel asserts that the MGA Parties "should not now be permitted to rely upon
15 at trial, *to Mattel's prejudice*, their consultations with lawyers in support of their 'good
16 faith' defenses," that "MGA should not be permitted to create implications before the jury *it*
17 *has not permitted Mattel to test in discovery*", and that "[a]llowing MGA to pick and
18 choose which communications to produce and which to withhold *would unfairly prejudice*
19 *Mattel*." (Mattel MIL No. 7 at 2, 11, 14 (emphasis added).)  But as described above, Mattel
20 withdrew its Motion to Compel and represented to Judge Infante that, in light of the
21 testimony of MGA attorney David Rosenbaum and Bryant's counsel Anne Wang, "Mattel
22 has now concluded that its motion seeking waiver of the privilege as to information relating
23 to these defenses is *unnecessary ... and the requested information is ... not 'vital' to*
24 *Mattel's rebuttal to such defenses*." (Ex. 84 (Mattel Inc.'s Notice of Withdrawal Without
25 Prejudice of Motion for Order Finding Waiver and to Compel Production of Documents
26 Withheld as Privileged, dated February 5, 2008), at 1 (emphasis added).)  Mattel's current
27 position that the MGA Parties should be precluded from asserting a good faith defense
28


EXHIBIT 26
PAGE 383

1 | because allowing the MGA Parties to do so would unfairly prejudice Mattel is wholly
2 | contradicted by its position *nearly three months ago* that the exact information it now
3 | complains was withheld was neither necessary nor "'vital' to Mattel's rebuttal to such
4 | defenses." (Id.) Mattel withdrew its Motion to Compel without protest from Judge Infante,
5 | and thus misled this Court that further action on the alleged waiver by the MGA Parties was
6 | not necessary, and that sufficient non-privileged information exists to allow the MGA
7 | Parties to proceed with its good faith defenses. Finally, Mattel's newly minted insistence
8 | that the MGA Parties cannot assert their good faith, while Mattel blithely proceeds to shield
9 | its own investigation documents to prevent the MGA Parties from rebutting Mattel's
10 | fraudulent concealment allegations to establish their laches and statute of limitations
11 | defenses, clearly gives Mattel an "unfair advantage" and "impose[s] an unfair detriment" on
12 | the MGA Parties. Thus, Mattel must be estopped from asserting that the MGA Parties are
13 | not permitted to introduce evidence of their good faith here.

14 | II.   **SUFFICIENT NON-PRIVILEGED INFORMATION FROM OTHER SOURCES EXISTS TO SUPPORT MGA'S GOOD FAITH**
15 |

16 |        Mattel assumes that the MGA Parties must automatically waive their attorney-client
17 | privilege because in asserting a good faith defense, the MGA Parties placed the privileged
18 | communications "at issue." This is incorrect. As a threshold matter, as noted above, "good
19 | faith" is not an affirmative defense at all, so Mattel's entire argument fails on this fact alone.
20 | In any event, courts have found that where, as here, the plaintiff alleges an intentional act by
21 | the defendants, "it is Plaintiffs who introduced into this lawsuit the issue of whether
22 | Defendant acted in 'good faith.' *Thus, it is Plaintiffs who bear the burden of proof on that*
23 | *subject.* Defendant's affirmative assertion of good faith in answer to the Complaint does not
24 | alter these facts." Williams v. Sprint/United Mgmt. Co., 2006 WL 1867478, at *11 (D. Kan.
25 | July 1, 2006) (noting that "asserting an affirmative defense of good faith does not
26 | automatically place advice of counsel at issue") (emphasis added); accord Abbe v. City of
27 | San Diego, 2007 WL 4146696, at *17 (S.D. Cal. Nov. 9, 2007) (good faith defense may not
28 | "be presumed" to rely on a defense of advice of counsel). Moreover, even if the MGA

EXHIBIT 26

PAGE 384

1 Parties' privileged communications were at issue, as the Ninth Circuit recognizes, "[t]he
2 privilege is waived, however, only when the client tenders an issue touching directly upon
3 the substance or content of an attorney-client communication – *not when the testimony*
4 *sought would be only 'one of several forms of indirect evidence' about an issue*." In re
5 Geothermal Res. Int'l, Inc., 93 F.3d 648, 652-53 (9th Cir. 1996) (because counsel's advice
6 on "the propriety of the employment agreements" at issue in the dispute was "only one form
7 of indirect evidence regarding appellants' good faith, [defendant] did not waive the
8 privilege" by filing counterclaim for breach of fiduciary duty) (emphasis added).  See also
9 Home Indem. Co. v. Lane Powell Moss and Miller, 43 F.3d 1322, 1327 (9th Cir. 1995)
10 (finding no implied waiver of attorney client privilege where reasonableness of settlement
11 payment was at issue; even though attorney advised company on settlement amount,
12 company officer "prove[d] the reasonableness of the settlement amount without relying on
13 privileged communications" by testifying that *he believed it to be reasonable* based on
14 other non-privileged evidence of pending judgment against the company); Insurance Co. of
15 State of Pa. v. City of San Diego, 2008 WL 926558, at **1-2 (S.D. Cal. Apr. 4, 2008)
16 (denying defendant's motion to compel production of privileged documents despite
17 testimony that plaintiff's good faith was based on its attorney's recommendations, where
18 plaintiff repeatedly asserted its intent to rely on extrinsic non-privileged evidence to defend
19 against claim of bad faith; plaintiff acknowledged it retained and received advice from
20 counsel but that "'*it acted as it did not because it was advised to do so, but because the*
21 *advice was, in its view, correct; and it is prepared to defend itself on the basis of that*
22 *asserted correctness rather than the mere fact of the advice. Such a defense does not*
23 *waive the attorney-client privilege*'"), quoting Aetna Cas. & Surety Co. v. Superior Court,
24 153 Cal. App. 3d 467, 475 (1984); 1st Security Bank of Washington v. Eriksen, 2007 WL
25 188881, *3 (W.D. Wash. Jan. 22, 2007) (refusing to order production of privileged
26 documents sought by defendant because "as long as plaintiff seeks to justify [its actions] *on*
27 *objective terms apart from the advice of counsel*, the attorney-client privilege should
28

EXHIBIT 26
PAGE 385

1  remain protected."); <u>accord</u> <u>Transamerica Title Ins. Co. v. Superior Court</u>, 188 Cal. App. 3d
2  1047, 1053-1054 (1987) (where defendant asserted a limited advice of counsel defense, the
3  court, while acknowledging plaintiff's "contention that it needs the documents to verify the
4  degree to which [defendant] relied and is continuing to rely on the advice of its counsel",
5  noted that "the privilege is not to be set aside when one party seeks verification of the
6  authenticity of its adversary's position" and that "the issue about whether [defendant]
7  continues to decline to pay the claim and is maintaining the litigation in bad faith *is a*
8  *question only about the state of mind of [defendant's] corporate decision makers*" and
9  thus "the sought for communications bear only an indirect relevance to the lawsuit, and their
10 disclosure would significantly burden the privilege accorded to [defendant] and its
11 attorneys") (emphasis added).

12       Here, as described above, there is ample unprivileged testimony that Carter Bryant
13 himself represented to MGA and Larian that he owned the rights to BRATZ.  Isaac Larian
14 testified that he "believed him" and that there was "no question in [his] mind" that Mattel
15 had no rights in Carter Bryant's BRATZ concept, but that he "just want[ed] to make sure."
16 (Ex. 76 (Larian) at 448:3-13.)  Wang testified that she provided assurances "that Carter was
17 the creator and the owner" and "that [Bryant] had created the doll at a time period separate
18 from his employment and that it was his own separate creation" which fell outside the scope
19 of his agreement with Mattel.  (Ex. 79 (Wang) at 47:23-48:18.)  The documents and
20 testimony show that Bryant and MGA were negotiating independently of their counsel;
21 indeed, Rosenbaum never even got a copy of the signed MGA contract.  (<u>See</u> <u>supra</u> at 5-6.)
22 Finally, and most importantly, in the MGA contract itself, Bryant warranted that his
23 contracting with MGA did not violate or breach any existing contract with a third party, that
24 the concept and drawings were "original," did not infringe on any third party's contractual
25 or intellectual property rights, were the exclusive property of MGA, and indemnified MGA
26 should a third party claim ownership of the BRATZ concept or drawings.  (Ex. 81 (Bryant
27 Deposition Exhibit 15) at 5 (a)-(c), (e)) (MGA Agreement with Bryant dated October 4,
28

EXHIBIT 2*b*

PAGE 386

1 | 2000).)

2 |     Thus, regardless of any advice Rosenbaum may have given to MGA, it is clear that

3 | Larian and MGA acted based on their good faith belief Mattel had no rights to BRATZ due

4 | to representations *from Bryant himself and from his attorney*, and any "advice" from

5 | Rosenbaum (which the MGA Parties have never asserted that they relied upon) merely

6 | confirmed that belief. Consequently, there are no grounds for preclusion here.

7 | **III.   MATTEL'S MOTION *IN LIMINE* MUST BE DENIED EVEN IF THE COURT**

8 | **DETERMINES THAT THE MGA PARTIES ARE ASSERTING AN ADVICE OF COUNSEL DEFENSE**

9 |     Even if this Court determines that the MGA Parties must rely on (and therefore

10 | produce) privileged information to assert their good faith, Mattel's MIL No. 7 should be

11 | denied and the MGA Parties should be permitted to engage in the limited waiver they

12 | offered in January. <u>See</u> <u>In re Broadcom Corp. Sec. Litig.</u>, 2005 WL 1403516, at *3 (C.D.

13 | Cal. Feb. 10, 2005) (denying plaintiff's motion *in limine* to exclude evidence relating to

14 | defendants' communications with their attorney in support of good faith defense and

15 | ordering "renewed discovery"); <u>see also</u> <u>In re Broadcom Corp. Sec. Litig.</u>, 2005 WL

16 | 1403513, at *2 (C.D. Cal. Apr. 7, 2005) (limiting scope of production because "since the

17 | purported reliance on counsel extends only to the issue of the Defendants' knowledge of the

18 | legality and accuracy of Broadcom's public statements, the waiver should be deemed to

19 | extend only to those communications relating to the public statements at issue. *Plaintiffs*

20 | *are entitled to no more*.") (emphasis added); <u>accord</u> <u>Dey, L.P. v. Ivax Pharm., Inc.</u>, 233

21 | F.R.D. 567, 571-72 (C.D. Cal. 2005) (refusing to preclude plaintiff's limited waiver of

22 | privilege to assert advice-of-counsel defense to counterclaim where waiving party informed

23 | the defendant that it intended to waive the privilege "relating to specific issues raised by"

24 | the counterclaim, "offered 'immediately [to] produce the currently privileged documents'

25 | and to 'cooperate in scheduling any additional discovery'" and "therefore, [defendant] knew

26 | that [plaintiff] wished to waive the attorney-client privilege as to certain documents, and

27 | still had approximately one month of discovery left in which to take new depositions, re-

28 |

EXHIBIT 20

PAGE 387

1  take old depositions, and/or view previously-privileged documents based on the new

2  waiver"); cf. A&L Tech. v. Resound Corp., 1995 WL 415146, at *3 (N.D. Cal. June 29,

3  1995) (defendant precluded from relying on evidence in support of its advice of counsel

4  defense due to its "intransigence during discovery," consisting of a "stubborn refusal to

5  produce documents related to its advice of counsel defense, even in the face of court orders

6  to produce them and the imposition of sanctions").

7       Mattel will no doubt analogize the MGA Parties' suggested limited waiver here to the

8  "eleventh hour" offering of deposition testimony rejected by the court in Columbia Pictures

9  Television, Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1196 (9th Cir.

10 2001), but the record is clear that the MGA Parties have been offering to engage in a limited

11 waiver of the privilege for *more than three years*, and indeed, offered to produce the *exact*

12 *documents* Mattel complains of back in January -- an offer Mattel rejected as "unnecessary"

13 for rebutting the MGA Parties' good faith defense. (See supra at 6.) Moreover, given that

14 Mattel has already deposed Rosenbaum, Bryant, and Larian, and only 17 privileged

15 documents are relevant to the issue, even if the Court were to order a limited waiver of

16 privilege, Mattel would have "ample time" before trial to conduct the narrow discovery

17 required. Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 2002 WL

18 737482, at **3-4 (S.D.N.Y. Apr. 26, 2002) (rejecting plaintiff's request for preclusion of

19 defendant's evidence as to advice of counsel defense; plaintiff relied on Columbia Pictures

20 to argue two weeks before trial is "too late for discovery" but court permitted limited

21 discovery of privileged communications, noting that "[f]ourteen days should provide ample

22 time to depose [in-house counsel and two employees] on the limited issue of advice given

23 with regard to the liquidations and whether it was taken"). Here, if necessary, Mattel could

24 depose the necessary witnesses before trial (or at worst, days before any of these witnesses

25 testified). Thus, Mattel's MIL No. 7 should be denied.

26

27

28

EXHIBIT 26

PAGE 388

## IV. THE EVIDENCE REGARDING THE ROSENBAUM ADVICE ON THE BRATZ OWNERSHIP ISSUE IS LIMITED TO THE TIME OF THE CONTRACT NEGOTIATIONS WITH BRYANT

Mattel acknowledges that the MGA Parties' evidence of good faith arises in demonstrating their "denials of knowledge or intent" in the aiding and abetting Bryant's breaches of duties and intentional interference with contract claims (Mattel MIL No. 7 at 2.), which, of course, relate only to the time of the contract negotiations and signing – when the breaches allegedly occurred. Mattel adopts the nonsensical position that because MGA represented that it maintained its belief that Bryant owned and appropriately assigned MGA the rights to BRATZ "at the time it entered into its agreement with Bryant and at all times thereafter," that Mattel is entitled to discovery of privileged communications beyond the scope of the contract negotiations in September and October 2000. (Id. at 12-13.) But Mattel points to no authority – because there is none – suggesting that the knowledge and intent prongs of those torts have anything whatever to do with the defendant's beliefs *after* the alleged aiding and abetting or interference occurred. Compare id., with Berg & Berg Enters., LLC v. Sherwood Partners, Inc., 131 Cal. App. 4th 802, 823 n.10 (2005) (establishing intent element under aiding and abetting claims "necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another *in performing* a wrongful act."), and Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist., 106 Cal. App. 4th 1219, 1239 (2003) (to demonstrate actual knowledge and intent to interfere with contract, plaintiff must show defendant knew that "the interference is certain or substantially certain *to occur* as a result of his action) (emphasis added). Mattel's argument for additional discovery on whether MGA believed in Bryant's ownership rights after September and October 2000 have no basis in law or fact.

Mattel also asserts that copyright infringement claims "apply to ongoing conduct" and thus it is entitled to all "the advice received during the entire course of the alleged infringement." (Mattel MIL No. 7 at 13, citing Verizon Cal., Inc. v. Ronald A. Katz Tech. Licensing, L.P., 266 F. Supp. 2d 1144, 1148-49 (C.D. Cal. 2003).) But in doing so, Mattel misconstrues its own claims. The central copyright issue here is whether Bryant's creation

EXHIBIT 2 ?
PAGE 389

1 | of the BRATZ dolls belongs to Mattel, based on whether or not he <u>created</u> it while in the
2 | course of his employment at Mattel – this is a question of copyright *ownership*, not
3 | infringement. <u>See</u> <u>Minder Music Ltd. v. Mellow Smoke Music Co.</u>, 1999 WL 820575, at *2
4 | (S.D.N.Y. Oct. 14, 1999) (rejecting "plaintiff['s] attempts to portray its [ownership] claim as
5 | one for an ongoing infringement"). Thus, the only applicable period of interest is MGA's
6 | good faith belief at the time it acquired the BRATZ that Bryant created them outside the
7 | scope of his employment. Mattel has no interest or right to discovery of the "ongoing"
8 | advice provided by MGA's counsel. "An infringement occurs every time the copyrighted
9 | work is published, *but creation does not*." <u>Zuill v. Shanahan</u>, 80 F.3d 1366, 1371 (9th Cir.
10 | 1996) (where "creation, rather than infringement, was the gravamen of plaintiffs' co-
11 | ownership claim," subsequent publication did not affect statute of limitations analysis)
12 | (emphasis added).

13 |      Thus, because the MGA Parties' reliance on the advice of counsel relates <u>only</u> to the
14 | three week period where MGA was verifying its belief in Carter Bryant's ownership of the
15 | BRATZ concept and that no rights of Mattel were infringed by the MGA contract with
16 | Bryant, Mattel is not entitled to anything other than the documents contemporaneous with
17 | that time period. <u>See</u> <u>Laguna Beach County Water Dist. v. Superior Court</u>, 124 Cal. App.
18 | 4th 1453, 1458 (2004) (rejecting plaintiff's request for privileged documents relating to
19 | defendant's post-construction investigation to rebut an advice-of-counsel defense based on a
20 | pre-construction investigation, because they had "nothing to do with the affirmative
21 | defenses that raise defendant's knowledge about the property and the project *prior to and at*
22 | *the time* of the construction") (emphasis added).

23
24
25
26
27
28

EXHIBIT 24

PAGE 390

1

## **CONCLUSION**

2      For the foregoing reasons, the MGA Parties respectfully request that the Court deny

3  Mattel's Motion *in limine* seeking to exclude any and all evidence relating to the MGA

4  Parties' reliance on advice of counsel in asserting their good faith defenses.

5  DATED: April 28, 2008        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

6

7              By: _____

8                    Jason D. Russell

                 Attorneys for the MGA Parties

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' Opposition to Mattel's Motion *In Limine* No. 7 - Case No. CV 04-9049 SGL (RNBx)
18

503066.02-Los Angeles Server 1A - MSW

EXHIBIT 26

PAGE 391