# EXHIBIT 27

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301

TEL: (650) 470-4500
FAX: (650) 470-4570
www.skadden.com

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

June 3, 2008

**By Email and Personal Service**

Jon D. Corey, Esq.
B. Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

RE:    *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
       Case No. CV 04-9049 SGL (RNBx) (consolidated with
       Cases Nos. CV 04-09059 and CV 05-02727)

Dear Jon and Dylan:

Further to the Court's order of yesterday afternoon and in connection with Mattel's motion to compel the production of certain documents from David Rosenbaum (Docket #1731), enclosed please find documents bearing the following Bates numbers: DR 00006R - 00007R, DR 00008R - 00009R, DR 00015R - 00016R, DR 00106R - 00107R, DR 00123R, DR 00141R - 00142R, DR 06190R - 06202R and DR 06203 - 06222.  We will deliver a CD containing corresponding Concordance load files.

Sincerely,

*Amy S. Park /DD.*

Amy S. Park

Enclosures

274084-Palo Alto Server 1A - MSW

EXHIBIT 27

PAGE 392

# EXHIBIT 28

David Rosenbaum

Sent:                    Thursday, September 28, 2000 4:04 PM
To:                      'Victoria O'Connor'
Cc:                      'Isaac Larian'
Subject:                 RE: Carter Bryant

No she did not, but I will call her tomorrow afternoon to follow up.

Regards,
David S. Rosenbaum
Fischbach, Perlstein & Lieberman, LLP
1875 Century Park East, Suite 850
Los Angeles, California 90067
Tel:310-556-1956
Fax:310-556-4617
e-mail: drosenbaum@fpllaw.com


This message is intended for the use of the individual or entity to
which it is addressed and may contain information that is privileged,
confidential and exempt from disclosure under applicable law. If the
reader of this message is not the intended recipient, or the employee or
agent responsible for delivering the message to the intended recipient,
you are hereby notified that any dissemination, distribution or copying
of this communication is strictly prohibited. If you have received this
communication in error, please notify us immediately and return the
original message to us at the above address. Thank you.

-----Original Message-----
From: Victoria O'Connor [mailto:VOConnor@mgae.com]
Sent: Thursday, September 28, 2000 3:32 PM
To: David Rosenbaum
Cc: Isaac Larian
Subject: RE: Carter Bryant


Did she give you an indication on when you would receive comments?

-----Original Message-----
From: David Rosenbaum [mailto:drosenbaum@fpllaw.com]
Sent: Thursday, September 28, 2000 11:55 AM
To: Victoria O'Connor (E-mail)
Subject: Carter Bryant


PRIVILEGED AND CONFIDENTIAL
ATTORNEY - CLIENT COMMUNICATION

Victoria:

I spoke with Carter's lawyer this AM and e-mailed her a copy of the draft
agreement for her review.  I asked her specifically about the Mattel issue
and she said she has reviewed the chronology of the creation of this design

1

EXHIBIT 28
PAGE 393

DR 00008R

and is satisfied that Carter created this outside the scope of his employment at Mattel. She says she understands the concerns here. Apparently, he conceived this product in 1998 so I recommend that your patent attorney(s) review this project as soon as possible to avoid any time limitations in the patent laws.

I will let you know her comments on the draft as soon as I receive same.

Regards,
David S. Rosenbaum
Fischbach, Perlstein & Lieberman, LLP
1875 Century Park East, Suite 850
Los Angeles, California 90067
Tel:310-556-1956
Fax:310-556-4617
e-mail: drosenbaum@fpllaw.com


This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately and return the original message to us at the above address. Thank you.

2

EXHIBIT 28

PAGE 394

DR 00009R

# EXHIBIT 29

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 30

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 31

1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

| 12 | MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
|----|---------------|-------------------------------|
| 13 | Plaintiff, | Consolidated with Case No. CV 04-09059 SGL (RNBx) |
| 14 | vs. | Case No. CV 05-02727 SGL (RNBx) |
| 15 | MGA ENTERTAINMENT, INC., et al., | Honorable Stephen G. Larson |
| 16 | Defendant. | **PHASE B VERDICT FORM AS GIVEN** |
| 17 | AND CONSOLIDATED ACTIONS | |

18

19

20

21

22

23

24

25

26

27

28

07209/2609529.2209/2600
584.2

EXHIBIT _3/_

PAGE _432_

# VERDICT FORM - PHASE B

We answer the questions submitted to us as follows:

## I.  Damages for Phase A Claims

(Answer all four questions in this section.)

### Intentional Interference With Contractual Relations

1.      In Phase A of this trial, you found that MGA Entertainment, Inc. ("MGA") and Isaac Larian are liable to Mattel for intentional interference with contractual relations.  What amount of damages, if any, should be awarded to Mattel?

      As to MGA:          $   _20 MILLION_

      As to Mr. Larian:  $   _10 MILLION_

### Aiding and Abetting Breach of Fiduciary Duty

2.      In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty.  What amount of damages, if any, should be awarded to Mattel?

      As to MGA:          $   _20 MILLION_

      As to Mr. Larian:  $   _10 MILLION_

### Aiding and Abetting Breach of the Duty of Loyalty

3.      In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.  What amount of damages, if any, should be awarded to Mattel?

      As to MGA:          $   _20 MILLION_

      As to Mr. Larian:  $   _10 MILLION_

PHASE B VERDICT FORM AS GIVEN

EXHIBIT 31

PAGE 433

## Conversion

4.    In Phase A of this trial, you found that MGA, Isaac Larian and MGA Entertainment (HK) Limited ("MGA Hong Kong") are liable to Mattel for conversion.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:              $ _31,500 PLUS 7% INTEREST_

As to Mr. Larian:       $ _0_        CALCULATED FROM

As to MGA Hong Kong: $ _0_        THE DATE MATTEL'S

PROPERTY WAS

CONVERTED.

-3-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT _5_

PAGE _434_

## II.  Copyright Infringement

1

2     5.    Has Mattel proven by a preponderance of the evidence that MGA is

3  liable to Mattel for copyright infringement?

4            Yes     X

5            No     ____

6    If your answer is "yes," then answer Question 6.

7    If your answer is "no," then answer Question 7.

8

9     6.    Was MGA's copyright infringement willful?

10          Yes   ____

11          No   X

12  Answer Question 7.

13

14     7.    Has Mattel proven by a preponderance of the evidence that Isaac Larian

15  is liable to Mattel for copyright infringement?

16          Yes  X

17          No   ____

18    If your answer is "yes," then answer Question 8.

19    If your answer is "no," then answer Question 9.

20

21     8.    Was Mr. Larian's copyright infringement willful?

22          Yes   ____

23          No   X

24  Answer Question 9.

25

26     9.    Has Mattel proven by a preponderance of the evidence that MGA Hong

27  Kong is liable to Mattel for copyright infringement?

28          Yes  X

-4-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT 31

PAGE 435

1           No  ____

2   If your answer is "yes," then answer Question 10.

3   If your answer is "no," then answer Question 11.

4

5       10.   Was MGA Hong Kong's copyright infringement willful?

6            Yes  ____

7            No   X

8   Answer Question 11.

9

10      11.   What amount of damages, if any, should be awarded to Mattel for the

11  defendants' copyright infringement?

12      (a)   Copyright Infringement by MGA

13            $   6 Million

14      (b)   Copyright Infringement by Isaac Larian

15            Distributions Mr. Larian received from MGA attributable to Bratz-

16            related works:

17            $   3 Million

18            Value of Mr. Larian's ownership percentage of MGA attributable to

19            Bratz-related works:

20            $   0

21      (c)   Copyright Infringement by MGA Hong Kong:

22            $   1 Million

23

24

25

26

27

28

07209/2609529.2608584

-5-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT 31

PAGE 436

### III. Punitive Damages

12.   Has Mattel proven by clear and convincing evidence that MGA acted with malice, oppression, or fraud?

      Yes   ____

      No   X

If your answer is "yes," then answer Question 13.

If your answer is "no," then answer Question 14.

13.   What amount of punitive damages, if any, should be awarded against MGA?

      $_____

Answer Question 14.

14.   Has Mattel proven by clear and convincing evidence that Isaac Larian acted with malice, oppression, or fraud?

      Yes   ____

      No   X

If your answer is "yes," then answer Question 15.

If your answer is "no," then answer Question 16.

15.   What amount of punitive damages, if any, should be awarded against Mr. Larian?

      $_____

Answer Question 16.

16.   Has Mattel proven by clear and convincing evidence that MGA Hong Kong acted with malice, oppression, or fraud?

      Yes   ____

07209/2609529.2608584

PHASE B VERDICT FORM AS GIVEN

EXHIBIT 31

PAGE 437

1            No     X

2      If your answer is "yes," then answer Question 17.

3      If your answer is "no," then answer Question 18.

4

5      17.   What amount of punitive damages, if any, should be awarded against

6  MGA Hong Kong?

7            $_____

8      Answer Question 18.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2609529.2608584.2

PHASE B VERDICT FORM AS GIVEN

EXHIBIT 31

PAGE 438

## IV.  Fraudulent Concealment

(Answer all five questions in this section.)

18.   Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of intentional interference with contract against it until at least April 27, 2002?

      Yes    _X_

      No    ____

19.   Has Mattel proven by a preponderance of the evidence that Isaac Larian fraudulently concealed the bases for Mattel's claim of intentional interference with contract against him until at least April 27, 2002?

      Yes    ____

      No    _X_

20.   Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of conversion against it until at least April 27, 2001?

      Yes    _X_

      No    ____

21.   Has Mattel proven by a preponderance of the evidence that Mr. Larian fraudulently concealed the bases for Mattel's claim of conversion against him until at least April 27, 2001?

      Yes    ____

      No    _X_

07209/2609529.2608584

PHASE B VERDICT FORM AS GIVEN

EXHIBIT 31

PAGE 439

Case 2:04-cv-09049-SGL-RNB    Document 4279    Filed 08/26/2008    Page 9 of 9

1    22.   Has Mattel proven by a preponderance of the evidence that MGA Hong

2  Kong fraudulently concealed the bases for Mattel's claim of conversion against it

3  until at least April 27, 2001?

4           Yes   ____

5           No    X

6

7       Once this verdict form is completed, the foreperson of the jury should sign

8  and date on the lines below.

9

10  DATED: *August 26, 2008*          /s/

                                  Jury Foreperson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2609529.2608584

-9-

PHASE B VERDICT FORM AS GIVEN

EXHIBIT 31
PAGE 440

# EXHIBIT 32

FILED
CLERK, U.S. DISTRICT COURT

JUL 10 2008

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| vs. | Hon. Stephen G. Larson |
| MGA ENTERTAINMENT, INC., | |
| Defendant. | **FINAL JURY INSTRUCTIONS AS GIVEN** |
| AND CONSOLIDATED ACTIONS | |

EXHIBIT **32**

PAGE **441**

## JURY INSTRUCTION NO. 29

In its final claim, Mattel contends that MGA, MGA Entertainment (HK) Limited, and Isaac Larian wrongfully exercised control over Mattel's property, including tangible Bratz-related works such as Mr. Bryant's drawings. To establish this claim for conversion, Mattel must prove the following by a preponderance of the evidence:

1.      That tangible property was "conceived or reduced to practice" --- that is, created --- by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000);

2.      That any of the defendants intentionally took possession of such property for a significant period of time;

3.      That Mattel did not consent;

4.      That Mattel was harmed; and

5.      That any one of the defendant's conduct was a substantial factor in causing Mattel's harm..

EXHIBIT 32
PAGE 442

# EXHIBIT 33

1255

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    EASTERN DIVISION

4    - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6    - - -

7    MATTEL, INC.,                          )

8                      PLAINTIFF,           )
                                            )
9            VS.                            )   NO. CV 04-09049
                                            )
10   MGA ENTERTAINMENT, INC., ET. AL.,      )
                                            )
11                     DEFENDANTS.          )   TRIAL DAY 7
                                            )   PAGES 1255-1390
12   AND CONSOLIDATED ACTIONS,              )
                                            )
13

14

15            REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16                      RIVERSIDE, CALIFORNIA

17                   WEDNESDAY, JUNE 4TH, 2008

18                         8:28 A.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
           FEDERAL OFFICIAL COURT REPORTER
24            3470 12TH STREET, RM. 134
           RIVERSIDE, CALIFORNIA   92501
25               951-274-0844
             WWW.THERESALANZA.COM

**CERTIFIED COPY**

EXHIBIT **33**
PAGE **443**

EXHIBIT PAGE ___

1   ON MONDAY, THAT MGA WAS MAKING ANOTHER RUN AGAIN AT THIS VERY

2   LIMITED INAPPROPRIATE PARTIAL WAIVER.  AND THE COURT MADE IT

3   VERY CLEAR THAT THE ONLY THING THAT WAS BEING ORDERED WAS THAT

4   PARTICULAR DOCUMENT.  AND NOW THEY HAVE PRODUCED A BUNCH OF

5   E-MAILS, WHICH WE SPECIFICALLY STATED AT THE HEARING WE WERE          08:46

6   NOT MOVING ON.  SO THE ORDER COMPELLING THEM TO PRODUCE THESE

7   DOCUMENTS DOESN'T HAVE ANYTHING TO DO WITH THIS BELATED

8   PRODUCTION.

9           **THE COURT:**  MR. NOLAN, THE ISSUE ON MONDAY WAS THE

10  RETENTION OF MR. ROSENBAUM'S NOTES ON THAT.                          08:46

11          **MR. NOLAN:**  I'M SORRY?

12          **THE COURT:**  MR. ROSENBAUM'S NOTES ON THIS AGREEMENT.

13          IT WAS A PARTICULAR DOCUMENT.  IT WAS A DOCUMENT THAT

14  WAS ON MR. LARIAN'S PRIVILEGE LOG.  IT WAS A DOCUMENT ON

15  MR. ROSENBAUM'S PRIVILEGE LOG.  AND THEN THERE WERE INDIVIDUAL       08:47

16  PAGES ON SOMEBODY ELSE'S PRIVILEGE LOG.

17          WHO WAS THAT?

18          **MR. PROCTOR:**  MGA'S PRIVILEGE LOG.

19          **THE COURT:**  IT WAS A SINGULAR DOCUMENT.  SO DON'T BE

20  RELYING ON MONDAY'S RULING.                                         08:47

21          **MR. NOLAN:**  BUT, YOUR HONOR, MY RECOLLECTION IS --

22  AND, OF COURSE --

23          **THE COURT:**  AND YOU WEREN'T HERE ON MONDAY.

24          **MR. NOLAN:**  AND THAT'S WHY I SAID, I'M JUST LOOKING

25  AT THE TRANSCRIPT.

EXHIBIT PAGE __

WEDNESDAY, JUNE 4, 2008          EXHIBIT 33          TRIAL DAY 7

                                 PAGE 444

1    I RECALL THE ISSUE ALSO COMING UP AS TO THE

2    REDACTIONS, IN LIGHT OF THE COURT'S RECENT REDACTIONS OF

3    DOCUMENTS WITH RESPECT TO HOW YOU WERE VIEWING FACTUAL

4    STATEMENTS VERSUS LEGAL ADVICE.  AND THERE WAS AN EXCHANGE

5    BETWEEN MR. RUSSELL AND YOURSELF WITH RESPECT TO, 'WE'RE GOING    08:47

6    TO TAKE THAT AND ALSO REVIEW THESE DOCUMENTS AND PRODUCE THEM.'

7    AND I THINK THEY WERE CLEARLY ON NOTICE ON THAT.

8         WHAT WE DID IS -- YOU'LL SEE ON SOME OF THE EARLIER

9    RULINGS, WHEN YOU WERE LOOKING AT CLAWBACK DOCUMENTS, IN

10   PARTICULAR THE ONE DEALING WITH THE DAVID DEES THINGS, WHERE    08:48

11   YOU WERE TAKING OUT OF THE SENTENCE WHAT WAS ACTUALLY

12   ATTRIBUTED --

13        THE COURT:  RIGHT.  THAT WAS CONSIDERING A PARTICULAR

14   DOCUMENT THAT WAS SUBJECT TO A CHALLENGE.

15        THIS DOESN'T SEEM APPROPRIATE, MR. NOLAN.    08:48

16        THESE DOCUMENTS HAVE BEEN ON A PRIVILEGE LOG, I TAKE

17   IT, UP UNTIL THIS LAST EVENING?

18        MR. NOLAN:  YES, YOUR HONOR.

19        THE COURT:  THERE IS NOTHING IN EITHER THE MONDAY

20   ORDER OR ANY OTHER ORDER ADDRESSING A PARTICULAR DOCUMENT THAT    08:48

21   ADDRESSES THESE DOCUMENTS.  IT DOES SEEM RATHER UNFAIR IN THE

22   MIDDLE OF TRIAL TO BE PRODUCING DOCUMENTS THAT HAVE BEEN

23   WITHHELD THAT HAVE BEEN THE SUBJECT OF DEPOSITIONS.

24        MR. NOLAN:  BUT, YOUR HONOR, THROUGHOUT THIS CASE,

25   THROUGHOUT THE TRIAL, MATTEL HAS BEEN PRODUCING TO US    08:48

EXHIBIT PAGE

1  ADDITIONAL DOCUMENTS DURING THE COURSE OF THE TRIAL.  WE GET

2  THEM ALMOST ON A REGULAR BASIS FOR EACH WITNESS.

3         THERE'S NO DISPUTE ABOUT THAT, YOUR HONOR.  WE'RE

4  GETTING ADDITIONAL EXHIBITS BEING ADDED ALL OF THE TIME.  WE'VE

5  NOT OBJECTED TO A SINGLE ONE OF THEM.                          08:49

6         THEY ARE OBJECTING BECAUSE THEY DON'T LIKE THESE

7  DOCUMENTS.

8         THE COURT:  MR. ZELLER, IF THAT'S THE CASE -- I MEAN,

9  THAT SHOULDN'T BE THE CASE ON EITHER SIDE.  I'M SYMPATHETIC TO

10  YOUR ARGUMENT THAT THIS SEEMS TO BE UNTIMELY.  MR. NOLAN SAYS   08:49

11  YOU'RE DOING THE SAME THING.

12         IS THAT TRUE?

13         MR. ZELLER:  THAT IS NOT CORRECT.

14         WHAT WE'VE DONE IS, THE DOCUMENTS THAT ARE INCLUDED

15  ON THE TRIAL EXHIBIT LIST DO CHANGE AS ISSUES IN THE CASE       08:49

16  CHANGE.  CERTAIN THINGS NO LONGER BECOME RELEVANT.  CERTAIN

17  THINGS BECOME RELEVANT.  WE HAVE DIFFERENT WITNESSES, OBVIOUSLY

18  DIFFERENT ORDER.  THINGS ARE CHANGING.  AND BOTH SIDES HAVE

19  BEEN CHANGING WHAT'S DESIGNATED ON THE TRIAL EXHIBIT LIST.

20         THE COURT:  HAVE YOU TO-DATE USED ANY DOCUMENTS IN      08:49

21  THIS TRIAL THAT WERE NOT PRODUCED BEFORE THE START OF THIS

22  TRIAL?

23         MR. ZELLER:  NOT THAT I'M AWARE OF, YOUR HONOR.

24         MR. QUINN:  EXCUSE ME.

25         I ACTUALLY DON'T THINK THAT'S CORRECT.  FOR EXAMPLE,    08:50

1   'I KNOW THAT THE PHOTOGRAPHS OF THE DESIGN CENTER THAT WERE USED

2   WITH AN EARLY WITNESS WERE NOT EXCHANGED IN DISCOVERY.  THERE

3   MAY WELL HAVE BEEN A COUPLE OF OTHER THINGS.

4           THE QUESTION I WOULD HAVE, YOUR HONOR, IS WHETHER ANY

5   OF THOSE DOCUMENTS THAT WE'VE USED WERE EVER THE SUBJECT OR       08:50

6   RESPONSIVE TO DISCOVERY REQUESTS.  BUT BOTH SIDES --

7           THE COURT:  I ASSUME THEY WOULD BE, COUNSEL.  I CAN'T

8   IMAGINE, WITH THE NUMBER OF DISCOVERY REQUESTS THAT HAVE BEEN

9   MADE IN THIS CASE, THAT ANYTHING POTENTIALLY RELATED TO ANY OF

10  THIS STUFF HAS NOT BEEN THE SUBJECT OF SOME DISCOVERY REQUEST.    08:50

11          MR. QUINN:  I UNDERSTAND, YOUR HONOR.  BUT THEN THOSE

12  GO THROUGH MOTIONS TO COMPEL AND THERE ARE ORDERS THAT ARE

13  ENTERED.

14          THE COURT:  I UNDERSTAND THAT.

15          MR. QUINN:  BOTH SIDES HAVE DONE THAT SORT OF THING.      08:50

16  THERE HAVE BEEN A HANDFUL -- AND NEITHER SIDE HAS MADE A FUSS

17  ABOUT THOSE KINDS OF ADDITIONS.

18          THE COURT:  YOU'RE MAKING A FUSS NOW.

19          MR. QUINN:  WELL, THOSE KINDS OF ADDITIONS.

20          HERE IS SOMETHING THAT'S BEEN A HOT ISSUE, HOTLY          08:51

21  CONTESTED ISSUE, FOR MONTHS, WHERE THEY HAVE SOUGHT A SELECTIVE

22  WAIVER OF THE PRIVILEGE.  THEY WANTED TO GIVE US SOME DOCUMENTS

23  IN DISCOVERY AND WITHHOLD OTHERS.  AND THIS HAS BEEN LITIGATED

24  BEFORE JUDGE INFANTE MORE THAN ONCE, AND I BELIEVE BEFORE THIS

25  COURT; AND CONSISTENTLY, THE RULING HAS BEEN, NO, YOU CAN'T DO    08:51

EXHIBIT —
PAGE —

WEDNESDAY, JUNE 4, 2008        EXHIBIT 33        TRIAL DAY 7

PAGE 447

1275

1   THAT.

2           SO NOW, PRETEXTUALLY, THE DAY BEFORE MS. O'CONNOR IS

3   GOING TO TESTIFY, SEIZING ON THE PRETEXT OF AN ORDER ON MONDAY,

4   IN COME THESE DOCUMENTS.

5           **THE COURT:**  THE ORDER ON MONDAY WAS CLEARLY DIRECTED          08:51

6   TOWARDS A PARTICULAR DOCUMENT, SO THAT DOES NOT PROVIDE A BASIS

7   TO DO IT.

8           SO IF THERE'S A BASIS TO DO THIS -- WELL, FIRST OF

9   ALL, IS THIS EVERYTHING?  IT'S NOT A SELECTIVE WAIVER AT THIS

10  POINT; YOU'RE GIVING UP EVERYTHING; CORRECT?                          08:51

11          **MR. NOLAN:**  THAT'S EVERYTHING; THE E-MAILS THAT WE'RE

12  PRODUCING, THAT CONTAINS THE FACTUAL REPRESENTATIONS, YOUR

13  HONOR.

14          AND I POINT OUT, YOUR HONOR, I HAVE A LETTER OF

15  JUNE 3, 2008, WHERE THEY ARE ENCLOSING FOR THE FIRST TIME           08:51

16  MATTEL DOCUMENT PRODUCTION NUMBER M0920041 THROUGH M0920045.

17  AND IN ADVANCE OF SOME OF THE WITNESSES THAT HAVE GONE ON,

18  WE'VE BEEN HANDED DOCUMENTS.  THERE'S NOT A FUSS ON THIS.

19          THESE DOCUMENTS, YOUR HONOR, THESE ARE THE FACTUAL

20  ASSERTIONS FROM MR. ROSENBAUM.  HE'S GOING TO BE A WITNESS AS        08:52

21  WELL.  HE'LL BE CROSS-EXAMINED ON THESE DOCUMENTS.  THESE ARE

22  DOCUMENTS THAT THEY HAVE KNOWN ABOUT AND WE HAVE DISCUSSED.

23          AND THE FACT THAT JUDGE INFANTE -- THEY SAY HE RULED

24  ON THIS.  THAT'S NOT TRUE, YOUR HONOR.  THEY WITHDREW A MOTION

25  WHERE WE WERE TRYING TO GIVE THIS TO THEM.  THEY DON'T WANT          08:52

EXHIBIT ___
PAGE ___

WEDNESDAY, JUNE 4, 2008        EXHIBIT 33        TRIAL DAY 7

PAGE 448

1  THESE DOCUMENTS, YOUR HONOR.  EVERY TIME WE WANT TO GIVE THEM

2  TO THEM, THEY'RE REFUSING.  THESE ARE NOT PRIVILEGED DOCUMENTS.

3  WE'VE PRODUCED THEM, JUST LIKE THEY'RE PRODUCING NONPRIVILEGED

4  DOCUMENTS TO US.

5        THE COURT:  YOU'RE SAYING THESE WERE NEVER PRIVILEGED    08:52

6  DOCUMENTS?

7        MR. NOLAN:  YOUR HONOR, IN LIGHT OF --

8        THE COURT:  WHY WEREN'T THESE PRODUCED EARLIER, THEN?

9        MR. NOLAN:  BECAUSE OF THE COURT'S PREVIOUS RULINGS

10 IN TERMS OF WHAT WAS PRIVILEGED IN FRONT OF JUDGE INFANTE.    08:52

11 APPLYING THE SAME STANDARD AS TO WHAT THE FACTS WERE, THERE WAS

12 GOING TO BE A MOTION IN FRONT OF JUDGE INFANTE.  THEY WITHDREW

13 THE MOTION.  WE MADE AN OFFER TO THEM.  THEY DIDN'T TAKE US UP

14 ON THAT OFFER.  WE THEN RAISED IT IN THE SENSE OF --

15       THE COURT:  MR. NOLAN, MAYBE I WAS UP TOO LATE LAST    08:53

16 NIGHT.  I'M NOT FOLLOWING YOU.  YOU JUST TOLD ME THESE ARE NOT

17 PRIVILEGED DOCUMENTS.

18       MR. NOLAN:  THESE ARE NOT.

19       THE COURT:  THEN WHY WEREN'T THEY PRODUCED MONTHS

20 AGO?    08:53

21       MR. NOLAN:  THE PORTIONS OF THESE DOCUMENTS THAT ARE

22 BEING PRODUCED ARE NOT PRIVILEGED DOCUMENTS.

23       THE COURT:  WHY WEREN'T THOSE PORTIONS PRODUCED

24 MONTHS AGO?

25       MR. NOLAN:  BECAUSE MATTEL WAS NOT AGREEING THAT THEY    08:53

EXHIBIT __
PAGE __

WEDNESDAY, JUNE 4, 2008    EXHIBIT 33    TRIAL DAY 7

PAGE 449

1324

1    "PLEASE LET ME KNOW HOW MANY HOURS CARTER HAS WORKED AND THE

2    DAY HE STARTED MEETINGS WITH YOU."  AND SHE RESPONDS, "I WOULD

3    SAY THAT CARTER HAS WORKED AN AVERAGE OF ABOUT FOUR HOURS A

4    DAY, AND WE BEGAN WORKING ON THIS LINE THE FIRST PART OF

5    SEPTEMBER."                                                    09:55

6           DO YOU RECALL RECEIVING THIS E-MAIL FROM

7    MS. TREANTAFELLES?

8    A    NO.

9    Q    IS THAT CONSISTENT WITH YOUR OBSERVATION THAT HE WAS

10   WORKING FOUR HOURS A DAY?                                      09:55

11          MR. NOLAN:  OBJECTION.  LACKS FOUNDATION; ALSO CALLS

12   FOR SPECULATION.

13          THE COURT:  LAY FOUNDATION AS TO HOW SHE WOULD KNOW

14   HOW MUCH HE WAS WORKING.

15   BY MR. QUINN:                                                  09:55

16   Q    DID YOU SEE MR. BRYANT IN MGA'S OFFICES?

17   A    I DID.

18   Q    ONCE OR MORE THAN ONCE?

19   A    MORE THAN ONCE.

20   Q    DID HE ATTEND DEVELOPMENT MEETINGS WITH MS. TREANTAFELLES? 09:55

21   A    I DON'T KNOW WHAT BUSINESS WAS CONDUCTED.  I WASN'T

22   INVOLVED IN THOSE MEETINGS.

23   Q    DO YOU KNOW WHAT HE WAS DOING WHEN HE WAS COMING TO THE

24   OFFICE MGA OFFICES IN SEPTEMBER?

25   A    I KNOW HE WAS MEETING WITH PAULA TO DISCUSS DOLL          09:56

EXHIBIT PAGE

WEDNESDAY, JUNE 4, 2008     EXHIBIT 33          TRIAL DAY 7

PAGE 450

1325

1    DEVELOPMENT.

2    Q    I TAKE IT YOU'RE NOT IN A POSITION TO CONFIRM OR DENY HOW

3    MANY HOURS HE WAS WORKING.

4    A    THAT'S CORRECT.

5    Q    THE CONTRACT WAS SIGNED UP WITH MR. BRYANT, EVENTUALLY.        09:56

6    A    YES.

7    Q    DID YOU RECEIVE THAT SIGNED CONTRACT FROM MR. BRYANT?

8    A    I DID.

9    Q    HOW DID YOU RECEIVE THAT SIGNED CONTRACT?

10   A    VIA FAX.                                                       09:56

11   Q    DID HE FAX IT TO YOU?

12   A    HE DID.

13   Q    AND SO FAR AS YOU KNOW, WERE YOU THE FIRST PERSON AT MGA

14   TO RECEIVE THAT FAX?

15   A    YES.                                                          09:56

16   Q    WHEN YOU GOT THAT FAX OF THE SIGNED CONTRACT, DID IT HAVE

17   A FAX HEADER ON THE TOP?

18   A    YES.

19   Q    WHAT DID THAT FAX HEADER SAY?

20   A    IT SAID "MATTEL, BARBIE COLLECTIBLES," AND IT HAD THE FAX     09:57

21   NUMBER FROM WHERE IT WAS SENT.

22   Q    WERE YOU CONCERNED ABOUT THE FACT THAT YOU HAD RECEIVED A

23   SIGNED CONTRACT FROM MR. BRYANT WHICH HAD THIS FAX HEADER AT

24   THE TOP THAT SAID "BARBIE COLLECTIBLES"?

25   A    YES.                                                          09:57

WEDNESDAY, JUNE 4, 2008    EXHIBIT 33    TRIAL DAY 7

PAGE 451

EXHIBIT PAGE

1326

1    Q    WERE YOU STILL UNCOMFORTABLE THAT MR. BRYANT WAS STILL

2    WORKING FOR A MATTEL COMPETITOR?

3    A    YES.

4    Q    DID YOU SPEAK WITH MR. LARIAN OR MS. TREANTAFELLES OR

5    ANYONE ELSE ABOUT THAT FACT?                                    09:57

6    A    YES.

7    Q    WHO DID YOU SPEAK TO?

8    A    FOR CERTAIN, I SPOKE TO ISAAC LARIAN, AND I'M SURE I SPOKE

9    TO PAULA AS WELL.

10   Q    DID YOU CALL ATTENTION TO THE FACT THAT YOU RECEIVED THIS   09:57

11   SIGNED CONTRACT AND IT HAD THIS FAX HEADER ON THE TOP?

12   A    I DID.

13   Q    IF YOU COULD LOOK AT EXHIBIT 15.

14        I'M GOING TO ASK YOU IF YOU CAN IDENTIFY THAT

15   DOCUMENT.                                                        09:58

16   A    OKAY.

17   Q    CAN YOU IDENTIFY IT?

18   A    YES.

19   Q    WHAT IS IT?

20   A    IT'S THE LICENSE AGREEMENT BETWEEN MGA AND CARTER BRYANT.   09:58

21   Q    AND IS THAT THE FINAL SIGNED AGREEMENT?

22   A    YES, IT APPEARS TO BE.

23        MR. QUINN:  I'D OFFER EXHIBIT 15, YOUR HONOR.

24        MR. NOLAN:  NO OBJECTION, YOUR HONOR.

25        THE COURT:  IT'S ADMITTED.  YOU MAY PUBLISH.               09:58

EXHIBIT PAGE

WEDNESDAY, JUNE 4, 2008     EXHIBIT 33

PAGE 462                    TRIAL DAY 7

1327

BY MR. QUINN:

1   BY MR. QUINN:

2   Q    AND THIS IS THE AGREEMENT THAT YOU RECEIVED FROM

3   MR. BRYANT BY FAX.

4   A    I BELIEVE SO.

5   Q    IT SHOWS THERE, IN THE UPPER RIGHT, THAT IT'S DATED AS OF          09:58

6   SEPTEMBER 18, 2000.

7           DO YOU SEE THAT?

8   A    YES.

9   Q    WAS THAT DATE THERE WHEN YOU RECEIVED THIS DOCUMENT FROM

10  MR. BRYANT?                                                            09:59

11  A    I BELIEVE SO, BUT I COULDN'T SAY FOR CERTAIN.

12  Q    BUT YOU DID NOTICE THAT A DATE WAS MISSING THERE.

13          THIS APPEARS TO BE THE DOCUMENT YOU GOT FROM

14  MR. BRYANT.

15  A    YES.                                                             09:59

16  Q    AND YOU UNDERSTOOD THAT MR. BRYANT WAS STILL WORKING FOR

17  MATTEL AT THE TIME.

18  A    CORRECT.

19  Q    AND DID YOU RECEIVE THIS AROUND OR ABOUT SEPTEMBER 18,

20  2000?                                                                 09:59

21  A    I BELIEVE SO, BUT IT WAS A LONG TIME AGO.

22  Q    SURE.

23          I'D LIKE YOU TO JUMP FORWARD NOW TO SOME TIME LATER

24  IN THE NEXT YEAR, IN 2001, WERE YOU EVER ASKED TO SEND THIS

25  CONTRACT TO ANYONE?                                                   09:59

EXHIBIT
PAGE

1328

1   A    YES.

2   Q    WHO WERE YOU ASKED TO SEND IT TO?

3   A    PATTIE GLASER.

4   Q    WHO'S PATTIE GLASER?

5   A    OUTSIDE COUNSEL FOR MGA ENTERTAINMENT.                    10:00

6   Q    SHE'S A LAWYER WHO DID WORK FOR MGA?

7   A    YES.

8   Q    WHO ASKED YOU TO SEND THAT AGREEMENT TO MS. GLASER?

9   A    ISAAC LARIAN.

10  Q    WHEN HE ASKED YOU TO SEND THAT AGREEMENT TO HIS OUTSIDE    10:00

11  LAWYER, DID HE GIVE YOU ANY PARTICULAR INSTRUCTIONS?

12  A    NO; NOT THAT I REMEMBER; JUST TO FAX IT TO HER.

13  Q    DID HE GIVE YOU ANY INSTRUCTIONS WITH RESPECT TO THE FAX

14  HEADER?

15  A    I WAS ASKED TO WHITE OUT THE FAX HEADER AT SOME POINT, AND  10:00

16  I DON'T RECALL IF THAT WAS UPON RECEIVING THE EXECUTED CONTRACT

17  OR AT THE TIME I SENT THE FAX TO PATTIE GLASER.

18  Q    I MAY HAVE GOTTEN THAT WRONG.  LET ME BACK UP.

19         AT SOME POINT YOU WERE ASKED TO WHITE OUT THE FAX

20  HEADER THAT SAID "BARBIE COLLECTIBLES"?                         10:00

21  A    YES.

22  Q    YOU'RE JUST NOT SURE WHEN THAT WAS.

23  A    CORRECT.

24  Q    ARE THERE A COUPLE OF POSSIBILITIES YOU'RE THINKING OF AS

25  TO WHAT THAT WAS?                                               10:01

WEDNESDAY, JUNE 4, 2008      EXHIBIT 33      TRIAL DAY 7

PAGE 454

EXHIBIT
PAGE

1329

1      **MR. NOLAN:**  I THINK IT'S LEADING; AND IT'S ALSO

2   TESTIFYING.

3          **THE COURT:**  SUSTAINED.

4   BY MR. QUINN:

5   Q    WHAT'S YOUR BEST RECOLLECTION AS TO WHEN IT WAS YOU WERE          10:01

6   ASKED TO WHITE OUT THAT FAX HEADER?

7   A    I BELIEVE IT WAS UPON FIRST RECEIVING IT.

8   Q    AND WHO WAS IT THAT ASKED YOU TO DO THAT?

9   A    ISAAC LARIAN.

10  Q    DID HE DO THAT AFTER YOU CALLED HIS ATTENTION TO IT?          10:01

11  A    YES.

12  Q    DO YOU RECALL WHEN IT WAS THAT HE LATER ASKED YOU TO SEND

13  IT TO HIS OUTSIDE LAWYER?

14  A    IT WAS SOME TIME IN 2001.

15  Q    DID HE TELL YOU WHY HE WANTED YOU TO SEND IT TO HIS          10:01

16  OUTSIDE LAWYER?

17  A    NOT THAT I RECALL.

18  Q    PUTTING ASIDE THE ISSUE OF THE HEADER, DID HE TELL YOU TO

19  MAKE ANY OTHER CHANGES BEFORE FAXING THIS TO MS. GLASER?

20  A    NOT THAT I RECALL.          10:02

21  Q    WHEN YOU SENT IT TO MS. GLASER, DID YOU HAVE A COPY OF THE

22  CONTRACT OR DID YOU HAVE TO GET A COPY OF THE CONTRACT?

23  A    I BELIEVE THE CONTRACT WAS HANDED TO ME AND TOLD TO FAX IT

24  TO HER.

25  Q    WHO HANDED IT TO YOU AND TOLD YOU TO FAX IT TO HER?          10:02

EXHIBIT PAGE

WEDNESDAY, JUNE 4, 2008          EXHIBIT 33          TRIAL DAY 7

PAGE 455

1390

1    THE COURT HAS NOT RULED ON.

2            **THE COURT:** OKAY. THANK YOU.

3

4

5

6

7

8

9

10

11                          CERTIFICATE

12

13   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
14   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
15   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.
16

17                                                    6-4-08
18   THERESA A. LANZA, CSR, RPR                        DATE
     FEDERAL OFFICIAL COURT REPORTER
19

20

21

22

23

24

25

EXHIBIT
PAGE

# EXHIBIT 34

3191

1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                              - - -

4          HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5                              - - -

6   MATTEL, INC.,                    :   PAGES 3191 - 3319
                                     :
7            PLAINTIFF,              :
                                     :
8       VS.                         :   NO. ED CV04-09049-SGL
                                     :   [CONSOLIDATED WITH
9   MGA ENTERTAINMENT, INC.,        :   CV04-9059 & CV05-2727]
    ET AL.,                         :
10                                   :
             DEFENDANTS.            :
11   _____:

12

13                     .

14

15           REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                  RIVERSIDE, CALIFORNIA

17                 FRIDAY, JUNE 20, 2008

18                 JURY TRIAL - DAY 16

19                  MORNING SESSION

20

21

22                                MARK SCHWEITZER, CSR, RPR, CRR
                                 OFFICIAL COURT REPORTER
23                               UNITED STATES DISTRICT COURT
                                 181-H ROYBAL FEDERAL BUILDING
24                               255 EAST TEMPLE STREET
                                 LOS ANGELES, CALIFORNIA 90012
25                               (213) 663-3494

CERTIFIED
COPY

EXHIBIT 34/
PAGE 457

1   their documents, and Mr. Larian, Fred Larian was sent a copy

2   of that, and again, what I'm saying is this carom shot of

3   trying to use this e-mail to prove that he must have done

4   something notorious in this case and then have it relate to

5   Isaac Larian's credibility.  That's the prejudicial part.

6           THE COURT:  Very well.  Briefly.

7           MR. ZELLER:  Briefly, your Honor.  Mr. Fred Larian

8   testified specifically that he had destroyed this evidence

9   about Bratz in 2000 to keep it from Mattel in this case.

10  There is a direct nexus with respect to it.  Certainly the

11  issue of -- I won't call it spoilation because from our

12  perspective, this goes back to, for more than anything else

13  as to Fred Larian.

14          But also, with the Fireman's Fund litigation, I

15  don't think it's true that we have to get into the details of

16  what the case was about.  What matters was there was an

17  instruction according to Mr. Fred Larian to withhold those

18  documents.

19          THE COURT:  What about counsel's arguments that the

20  significance of that instruction can only be tested by having

21  some understanding of what role those originals, as opposed

22  to the copies, played.  My reading of this, it seems to be

23  that there were copies of these very same documents that were

24  produced.  There were some legibility questions with them.

25  Someone came up with the originals, and apparently there was

EXHIBIT 34
PAGE 468

1    an instruction not to turn over the originals.  That's my

2    reading of the initial e-mail here.

3              MR. ZELLER:  Sure.  And there's no question that,

4    you know, one could try and argue about the nexus of what we

5    were holding and why.  But the fact is that it's quite clear

6    that Fred Larian is saying he was told to withhold

7    information.  Regardless.

8              And one thing that the jury could infer from that

9    evidence and the evidence that Mr. Fred Larian will testify

10   about, the circumstances of what he did, is in fact he is

11   withholding this evidence, not just simply that he destroyed

12   it, but that he is withholding it.  The circumstances under

13   which he describes his destruction of evidence, you know, I

14   think a jury may very well find doesn't mean he actually got

15   rid of it.  He's just holding it and withholding it from us.

16             THE COURT:  Thank you, Counsel.

17             MR. ZELLER:  Thank you.

18             THE COURT:  All right.  This is what I'm going to

19   do on all three of these.  I'm going to make my rulings at

20   this point.

21             With respect to the documents, the privileged

22   documents, including Bates KS 07831 and the other documents

23   in that series that have been designated, based on what's

24   before me right now, the Court does not find that there is

25   sufficient evidence to order the documents to be produced to

EXHIBIT 34
PAGE 459

1   Mattel; however, I do believe that there is a sufficient

2   showing for the Court to examine the documents in camera.

3          So I'm going to order MGA to turn the series of

4   documents over to the Court.  Perhaps once the Court looks at

5   it, when that is combined with the evidence that is before

6   the Court, there may be sufficient evidence to produce them,

7   but I at this point don't think there's sufficient evidence

8   without knowing more about the documents themselves.

9          And, Counsel, I'm going to ask that you have

10  someone on your team do that and provide those to Mr. Holmes

11  as soon as possible, because I'd like to do this during

12  breaks or lunch today and get this done.

13         With respect to Exhibit 13381, I'm going to find on

14  402 and 403 grounds that that is precluded from Mattel's case

15  in chief based on the witnesses being called at this point.

16         As far as 13380, we are definitely going to redact

17  the line in the e-mail from Mr. Fred Larian to Isaac Larian,

18  the second sentence of that first e-mail on May 25th:   I

19  doubt you will swear on any your children's lives," through

20  the end of that sentence.  That has been redacted.  And

21  before counsel could seek to introduce this before the jury,

22  the Court will consider the testimony of Mr. Fred Larian to

23  that point and whether or not a sufficient foundation has

24  been laid for even getting into this issue, let alone into

25  this document.

EXHIBIT 34
PAGE 460

1          So I'm going to reserve ruling on that until

2   Mr. Larian has testified.  But in any event, let's have the

3   line completely redacted, and let's do it in such a way as

4   though it appears that that line was never there.  Let's just

5   have that blanked out, because there's certainly no point in

6   getting into that.

7          So that's those three documents.

8          I do have rulings to make on all of transcripts,

9   but since we're not going to be doing that until Tuesday at

10  the earliest, I'll probably reserve those in the end of the

11  day.

12         I was just handed a note that we have all jurors

13  present.  It's two minutes before nine o'clock.  Let's have

14  Mr. Bryant up on the stand and ready to go at nine o'clock

15  unless there are other issues.

16         MR. PRICE:  There's an issue we need to take up at

17  sidebar.  It concerns a transcript.

18         THE COURT:  Very well.

19         (SIDEBAR CONFERENCE HELD.)

20         MR. PRICE:  Your Honor, you mentioned that if we

21  were going to use the in camera hearing transcript to

22  impeach, that we should request a sidebar conference first.

23         THE COURT:  What?

24         MR. PRICE:  From Mr. Bryant on the Evidence

25  Eliminator.



EXHIBIT 34
PAGE 461

3319

7                      C E R T I F I C A T E

10          I hereby certify that pursuant to Title 28,

11   Section 753 United States Code, the foregoing is a true and

12   correct transcript of the stenographically reported

13   proceedings in the above matter.

14          Certified on June 20, 2008.


     _____
17   MARK SCHWEITZER, CSR, RPR, CRR
     Official Court Reporter
18   License No. 10514

EXHIBIT 34
PAGE 462