# EXHIBIT 1

CONFORMED COPY

FILED

2007 JAN 23  PM 12: 05

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA  94111
415-774-2611
415-982-5287 (fax)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>        Defendant.<br><br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S**<br>**MOTION TO COMPEL PRODUCTION**<br>**OF DOCUMENTS** |

## I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1]  Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT ___1___

PAGE ___2A___

1-26

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel Production of Documents is GRANTED.

## II. BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of Bratz dolls now rival Mattel's Barbie doll.

A. Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed suit against its former employee Bryant in state court asserting claims for breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel employed Bryant as a product designer from September 1995 through April 1998, and from January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee Confidential Information and Inventions Agreement which required him not to engage in any employment or business other than for Mattel, or invest or assist in any manner any business competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that he had not worked for any of Mattel's competitors in the prior twelve months and had not engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

EXHIBIT __1__

PAGE __3__

provide product design services on a "top priority" basis.[2] The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA. Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel. In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction). Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA. The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls. In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls. In August of 2004, the district court remanded the action.

B. Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement. Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2] Bryant has already produced his agreement with MGA. Therefore, the existence of the agreement does not appear to be in dispute.

EXHIBIT 1

PAGE 4

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT _____1_____

PAGE _____5_____

G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

EXHIBIT _____1_____

PAGE _____6_____

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. See Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

EXHIBIT _____1_____

PAGE _____7_____

1,600 pages of documents to date. Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3] Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

J.   Mattel's Motion to Compel Production of Documents

Mattel's motion has three parts. First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents: (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel. Mattel's Motion at 6. Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations. According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]  According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear. Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed. Mattel again obtained a court order compelling the deposition and sanctions. To date, only Bryant and Larian have been deposed.

EXHIBIT _____ / _____

PAGE _____ 8 _____

1  his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of

2  responsive documents without any of the limitations described above.

3      Third, Mattel contends that the documents Bryant has produced are inadequate for a

4  number of reasons: the financial documents are so heavily redacted they are useless; faxed

5  documents are missing fax header information, including the sending and receiving parties[4]; e-

6

7  mails and other electronic documents that are known to exist have not been produced; Bryant

8  refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used

9  during the relevant period; and Bryant's privilege log is facially incomplete and lists only four

10  documents.

11

12      K. Bryant's Opposition to Mattel's Motion to Compel

13      Bryant opposes Mattel's motion to compel. He views the motion as nothing more than

14  Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer

15  process which began back in 2004. Bryant emphasizes that the document requests at issue were

16

17  first propounded at a time when Mattel was attempting to remand the case, making the claim that

18  it did not know whether $75,000 was in controversy and insisting that it was asserting solely state

19  law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that

20  discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See

21

22  Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later

23  years could have no conceivable relevance to the case because if those activities and earnings

24  were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of

25  2004, he produced the following categories of documents: documents evidencing the artwork

26  used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the

27

28  summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

29

---

[4] There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                              8

EXHIBIT _____1_____

PAGE _____9_____

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT _____1_____

PAGE _____10_____

requests and that the stipulation controlled to the extent they were inconsistent. Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights. Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

## III. DISCUSSION

### A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion. The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute. Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant. It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions. Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

EXHIBIT _____1_____

PAGE _____11_____

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT ___1___

PAGE ___12___

1   agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel

2   other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c)

3   documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating

4   to this action.

5
6   The Discovery Master finds that the withheld documents are relevant to Mattel's claims.

7   Among other things, the withheld documents could establish the timing, nature and scope of

8   Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In

9   addition, the withheld documents could be used for impeachment purposes. Further, documents

10
11   relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate

12   bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred

13   by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged

14   documents responsive to Request Nos. 2, 13, and 48.

15
16   Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's

17   Development and Other Projects that Bryant Worked on for MGA

18   Mattel seeks documents relating to the Bratz project and any other projects Bryant worked

19   on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls.

20
21   Bryant is prepared to produce additional documents relating to work he performed for MGA prior

22   to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant

23   breached his employee agreement by allegedly performing services for Mattel and MGA at the

24   same time. Bryant objects to the requests to the extent they seek any additional documents on

25   relevancy and overbreadth grounds.

26
27   The Discovery Master finds that Mattel's requests seek relevant information and are not

28   overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30,

29   2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

Bryant v. Mattel, Inc.,                                                                        12
CV-04-09049 SGL (RNBx)

EXHIBIT ____/____

PAGE ____/3____

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel

also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's

confidential and proprietary information, not just information relating to the Bratz dolls released

in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz

works – works that are allegedly owned by Mattel because they were created while Bryant was

employed by Mattel – through his ongoing conduct of reproducing and creating derivative works.

Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request

Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46:  Documents Relating to Bryant's
Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges

that Mattel is entitled to know how much money Bryant has earned from MGA, and represents

that he has produced, in redacted form, all royalty statements he has received related to the First

Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are

justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product,

which information Bryant believes constitutes MGA's trade secret information. Bryant also

objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the

returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant,

including royalty statements and other payment information, are relevant to several Mattel claims.

First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach

of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant

received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA

and others might be traceable to work Bryant performed while employed by Mattel, regardless of

EXHIBIT ___/___

PAGE ___/4/___

when the payments were actually made. Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement. Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works. Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages. 17 U.S.C. §504(b). The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market. For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation. Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel. Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant. Among other things, the protective order provides protection for confidential trade secret information. It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only." The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46. Bryant,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT ____1____

PAGE ____15____

1  however, is not required to produce tax returns, provided that he otherwise fully complies with

2  these requests as ordered.

3       Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

4       Mattel seeks production of Bratz-related communications and communications with

5  MGA. More specifically, Mattel seeks production of four categories of documents Bryant has

6

7  refused to produce: (1) communications between Bryant and MGA or third parties that explicitly

8  relate to designs Bryant created while employed by Mattel; (2) communications between Bryant

9  and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating

10  to Bryant's Mattel employment or work Bryant performed for Mattel, except those

11

12  communications "created" prior to the close of Bryant's Mattel employment; and (4)

13  communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant

14  contends that the discovery requests for communications between Bryant and MGA are

15  overbroad. Bryant asserts that there are many former Mattel employees and friends of his who

16

17  have privacy rights that would be impinged upon if he were to disclose his communications.

18  Bryant also asserts that he has his own confidentiality interest regarding any information that he

19  shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they

20  would require him to reveal the identity of current Mattel employees seeking employment with

21

22  MGA or Bryant.

23       The Discovery Master finds that Mattel's requests for all communications between Bryant

24  and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what

25  Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient

26  to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential"

27

28  private information about current or former employees, contractors or vendors (including

29  employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                      15

EXHIBIT _____1_____

PAGE _____16_____

privileged documents responsive to Request Nos. 20, 23, 27, and 28. However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA. Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51: Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9: Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration. Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper. Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

## IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1. Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT ___/___

PAGE ___/ 7___

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2.  Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3.  Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4.  Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5.  Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6.  Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7.  Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.


IT IS SO ORDERED.


Dated: January 25, 2007

_____
HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT _____1_____

PAGE _____18_____

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25,

2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL

PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjaklian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjaklian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Well & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT ____1____

PAGE ____19____

# EXHIBIT 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES – GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date: January 7, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.
            AND CONSOLIDATED ACTIONS
=================================================================
=

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes                               Theresa Lanza
            Courtroom Deputy Clerk                   Court Reporter

ATTORNEYS PRESENT FOR CARTER              ATTORNEYS PRESENT FOR MATTEL:
BRYANT:  **Christa Martine Anderson**        **John B. Quinn and Michael T. Zeller**

ATTORNEYS PRESENT FOR MGA:                 ATTORNEY PRESENT FOR CARLOS
**Thomas J. Nolan**                            GUSTAVO MACHADO GOMEZ:
**Carl A. Roth**                               **Mark E. Overland**
**Anna Park**
                                           ATTORNEY PRESENT FOR NON-PARTY
ATTORNEY PRESENT FOR NON-                  STERN & GOLDBERG: **Kien C. Tiet**
PARTIES ANA ELISE CLOONAN,
MARGARET HATCH-LEHY, AND                   ATTORNEY PRESENT FOR NON-PARTY
VERONICA MARLOW: **Larry W.**                  KAYE SCHOLER, LLP: **Bryant S. Delgadillo**
**McFarland**

PROCEEDINGS:   **ORDER GRANTING IN PART AND DENYING IN PART
                MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL
                DISCOVERY (DOCKET #1134)**

                **ORDER GRANTING MOTION TO ENFORCE THE COURT'S
                ORDER OF AUGUST 27, 2007, AND DENYING REQUEST FOR
                SANCTIONS  (DOCKET #1143)**

MINUTES FORM 90                                        Initials of Deputy Clerk: jh
CIVIL -- GEN                          1                Time: 1/30

EXHIBIT _____2_____
PAGE _____20_____

## ORDER GRANTING MATTEL'S MOTION CLARIFYING COURT'S ORDER APPOINTING DISCOVERY MASTER (DOCKET #1244)

## ORDER GRANTING CARTER BRYANT AND MGA DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

These matters were heard on January 7, 2008.  The Court rules as set forth below.

To the extent that this Order decides issues more properly decided by the Discovery Master and/or preempts issues currently pending before the Discovery Master, it does so only to resolve those issues in the most expeditious manner possible.  As the Court's order appointing the Discovery Master requires, any and all discovery disputes must be presented to the Discovery Master for his resolution.

## MATTEL'S MOTION FOR LEAVE TO TAKE ADDITIONAL DISCOVERY (DOCKET #1134)

This motion is **GRANTED IN PART.**  Leave to take additional depositions and propound additional interrogatories are granted to the extent they are consistent with Fed. R. Civ. P. 26(b)(2).  See Fed. R. Civ. P. 30(a)(2)(A) (depositions), 33(a) (interrogatories).  Rule 26(b)(2) requires a Court to limit discovery where it is unreasonably cumulative or duplicative; where it can be obtained from a more convenient, less burdensome, or less expensive source; where a party has already had ample opportunity to obtain information from discovery; where the burden or the expense of the requested discovery outweighs its likely benefit, taking into account the factors of the parties' resources, the importance of the issues at stake, and the importance of the requested discovery in resolving these issues.  Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Considering this standard, the Court concludes that Mattel has shown good cause to grant additional discovery given the complexity of this case, the number of parties, recent developments related to the substitution of counsel, the concerns regarding retention and spoliation of evidence, and the delay in receiving paper

MINUTES FORM 90
CIVIL -- GEN                                    2

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT _____2_____

PAGE _____21_____

discovery caused by numerous discovery disputes and a Court-imposed stay requested by MGA upon substitution of counsel. Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11) and relating to the trade secret and RICO claims (set forth in the moving papers at 13). Mattel may serve the notices of deposition and propound the interrogatories attached to the moving papers as Exs. A - C. Additionally, the parties must answer Mattel's previously propounded interrogatories to which the sole objection raised was that those interrogatories exceeded the allowable number of interrogatories.

The Court has heretofore refrained from bifurcating discovery relating to Phase 1 and Phase 2, believing that such an action is fraught with the potential of unnecessarily compounding discovery disputes in a case already predisposed to such disputes. Nevertheless, in light of the additional discovery permitted by this Order, and to the extent that counsel for the parties who are asserting or defending against claims to be tried in Phase 2 of the trial are in agreement, the Court will consider a stipulation of those parties that designates certain depositions as "Phase 2" depositions that may be conducted during the month of February, if counsel can assure the Court that such depositions can be so conducted without altering the Court's pretrial schedule regarding Phase 1.

Conversely, in light of the standard of review employed regarding the Discovery Master's orders, the Court **DENIES** that portion of Mattel's motion that seeks additional time in which to depose Carter Bryant. The Court cannot say that the Discovery Master's order allowing an additional nine hours to depose Carter Bryant is contrary to law based on the Discovery Master's unchallenged factual findings.

## MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF AUGUST 27, 2007 AND REQUEST FOR SANCTIONS (DOCKET #1143)

This motion is **GRANTED**. The Court's order clearly applied to "all parties." No party sought relief therefrom or clarification of the Court's order.

As prepared in purported compliance with the Court's order, the affidavit of Carlos Gustavo Machado Gomez is inadequate as it lacks facts and relies instead on conclusory language. Machado must file an affidavit that complies with the

MINUTES FORM 90
CIVIL -- GEN                                3

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT ___2___
PAGE ___22___

Court's order as set forth below.

Carter Bryant has refused to comply with the Court's order and has not filed
the required affidavit.

Both these parties must file, on or before January 15, 2008, an affidavit setting
forth a factual description of their preservation efforts, policies, customs, and/or
practices with respect to potentially discoverable documents related to the present
litigation. The failure of these parties to comply with this Order will result in the
imposition of contempt sanctions to coerce their compliance.

The Court **DENIES** Mattel's request for costs and sanctions.

### MATTEL'S MOTION CLARIFYING COURT'S ORDER
### APPOINTING DISCOVERY MASTER (DOCKET #1244)

This motion is **DENIED**.  The Court's order referred to the Discovery Master
any and all discovery disputes, including those involving third parties.

Although the parties stipulated to the Discovery Master, that stipulation was
entered as the Court's order, and as such, all parties are subject to that order unless
relieved from it upon proper motion.

The order was entered as a valid Rule 53(a)(1)(C) order, not requiring the
consent of any party or nonparty.  Machado has not convinced the Court that, as a
subsequently added party, he was required to be given the opportunity to object to
the order before it could be applied to him.  See Fed. R. Civ. P. 53(b)(1) (requiring
notice and opportunity to be heard prior to the appointment of a special master).
Importantly, Machado could have, but did not, seek relief from this order within a
reasonable amount of time after he became a party to this case.  Furthermore, the
Court does not find any basis to exclude Machado from the reach of the Court's
order appointing the Discovery Master pursuant to his present objections.

### DEFENDANTS' EX PARTE APPLICATION TO COMPEL DEPOSITIONS (DOCKET #1462)

Carter Bryant and the MGA defendants may depose the ten individuals set

MINUTES FORM 90
CIVIL -- GEN                                        4

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT ____2____

PAGE ____23____

forth in their moving papers.  The testimony of all Rule 30(b)(6) witnesses "count" as only one deposition for purposes of determining the total number of depositions conducted by each side.

Carter Bryant and the MGA defendants are not relieved of the requirement that they serve subpoenas on all these deponents other than the current officers of Mattel (represented to the Court to be Tim Kilpin, Kevin Farr, and Evelyn Viohl).  To the extent that Mattel has made prior written agreements to produce deponents who are under its control, it is expected to do so.

As to all the depositions permitted by this Order, all counsel are expected to coordinate their schedules with those of the deponents such that the depositions are held prior to the discovery cutoff date of January 28, 2008.  However, as set forth above in connection with Mattel's motion to take additional discovery, Phase 2 depositions may be taken in February pursuant to a Court-approved stipulation.

IT IS SO ORDERED.

Initials of Deputy Clerk: jh
Time: 1/30

EXHIBIT ___2___
PAGE ___24___

# EXHIBIT 3

**ⓒCOPY**

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
2 | johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
5 | (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
6 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
7 | Facsimile: (213) 443-3100

8 | Attorneys for Mattel, Inc.

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

| | |
|---|---|
| 12 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13 | Plaintiff, | Consolidated with |
| 14 | vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 15 | MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| 16 | | AMENDED NOTICE OF MOTION AND MOTION OF MATTEL, INC. FOR LEAVE TO TAKE ADDITIONAL DISCOVERY AND OBJECTIONS TO DISCOVERY MASTER ORDER OF SEPTEMBER 28, 2007; AND |
| 17 | Defendant. | |
| 18 | AND CONSOLIDATED ACTIONS | |
| 19 | | |
| 20 | | MEMORANDUM OF POINTS AND AUTHORITIES |
| 21 | | [Declaration of B. Dylan Proctor filed previously] |
| 22 | | |
| 23 | | Hearing Date: January 7, 2008<br>Time: 10:00 a.m.<br>Courtroom: 1 |
| 24 | | |
| 25 | | **Phase 1:**<br>Discovery Cut-off: January 28, 2008 |
| 26 | | Pre-trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |
| 27 | | |
| 28 | | |

07209/2300969.107209/2
00969.107209/2300302.1

-i-   11-19

EXHIBIT __3__

PAGE __25__

1    Further, many of these same witnesses are also knowledgeable as to MGA's
2  claims of unfair competition and Mattel's trade secret and RICO claims, as they
3  continued to work with MGA in later years. For example, MGA has already identified
4  Halpern, Kwok, Leahy, Marlow, Lee, Ward and Yip as individuals involved with the
5  products at issue.[37] Likewise, Ramirez continued working on molds for subsequent
6  Bratz dolls through at least 2005,[38] while  Kamarck,[39] Witschell,[40] Arant, and
7  McFarland[41] were involved in subsequent Bratz-related intellectual property matters.
8  As such, testimony from these witnesses is essential for both phases of trial.

9            2.    **Mattel's Trade Secret and RICO Claims and MGA's Unfair**
10               **Competition Claims Require Additional Depositions**

11    Mattel has sued MGA for misappropriating Mattel trade secrets and RICO
12  violations by, among other things, stealing thousands of pages of Mattel confidential
13  information in the United States, Canada and Mexico.[42] Mattel identified Ron Brawer,
14  Janine Brisbois, Gustavo Machado, Mariana Trueba Almada and Pablo Vargas as
15  individuals who misappropriated Mattel trade secrets. The only person Mattel has been
16  able to depose on its counterclaims is Ms. Bacon, who coordinated MGA's recruiting of

17

18

19

20  _____
21    [37]   See MGA's Fourth Supp. Response to Interrogatory No. 1 of Mattel's First Set of
    Interrogatories Re Claims of Unfair Competition, at 10-12, 18, 19, Proctor Dec., Ex. 27.
22    [38]   See, e.g., Proctor Dec., Ex. 69 (showing various Bratz-related work in 2005).
      [39]   See, e.g., Armstrong Tr. 26:5-23, Proctor Dec., Ex. 62 (discussing involvement in
23  Bratz-related patent applications through 2004).
      [40]   See, e.g., Proctor Dec., Ex. 70 (discussing involvement with Bratz registrations).
24    [41]   See, e.g., Proctor Dec., Ex. 71 (discussing involvement with Bratz licensing).
25    [42]   Mattel's Counterclaims ¶¶ 37-54, 70-76, Proctor Dec., Ex 16.

26

27

28

-12-
MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT _____3_____

PAGE _____26_____

1   Mattel employees.[43] Accordingly, Mattel seeks leave to take the depositions of the
2   following witnesses on such claims:[44]

3     • Ron Brawer – has knowledge of stolen Mattel trade secrets in the U.S.

4     • Janine Brisbois – former Mattel employee who stole Mattel trade secrets

5     • Gustavo Machado – former Mattel employee who stole Mattel trade secrets

6     • Mariana Trueba – former Mattel employee who stole Mattel trade secrets

7     • Pablo Vargas – former Mattel employee who stole Mattel trade secrets

8     • Ricardo Abundis – has knowledge of stolen Mattel trade secrets in Mexico

9     • Jorge Castilla – believed to have stolen Mattel trade secrets in the U.S.

10     • Nic Contreras – believed to have knowledge of stolen Mattel trade secrets

11     • Dan Cooney – believed to have knowledge of stolen Mattel trade secrets

12     • Susan Kuemmerle – believed to have knowledge regarding stolen Mattel
13       trade secrets in Mexico

14     • Shirin Salemnia – believed to have knowledge of stolen Mattel trade secrets

15     • MGAE de Mexico – defendant to trade secret theft and RICO claims

16     • MGA Entertainment, Inc. – defendant

17     Further, MGA has accused Mattel of trade dress infringement and dilution and
18   unfair competition in connection with more than 440 products.[45] MGA has identified

19

20   [43]  Bacon Dep. Tr. at 12:12-13, 51:22-52:17, 86:8-12, and 114:19-116:9, Proctor Dec.,
21   Ex. 28. And even with respect to Ms. Bacon's deposition, MGA attempted to prevent her
from testifying on the grounds that Mattel had not noticed her deposition individually, but
22   only as a Rule 30(b)(6) designee. See Proctor Dec., Ex. 29.
  [44]  These are those who Mattel has identified to date. Mattel anticipates that there may
23   be more who will need to be deposed in connection with MGA's unfair competition claims
and Mattel's counterclaims because (a) it continues to review the over one-and-a-half
24   million pages of documents that MGA produced in the past month and (b) MGA, to date,
25   has failed to identify how it anticipates defending Mattel's counterclaims or which
documents or witnesses it will rely upon to do so, including by its ongoing failures to
26   answer Mattel contention interrogatories related to its defenses to Mattel's counterclaims.
27   [45]  MGA's Supp. Response to Interrogatory No. 2 Of Mattel, Inc.'s First Set of
Interrogatories Re Claims of Unfair Competition, at 5-19, Proctor Dec., Ex. 26.

28

EXHIBIT ____3____

PAGE ____27____

1 | 117 witnesses with knowledge of the creation or promotion of those products,[46]
2 | including many of the persons listed above. Mattel has taken the depositions of only
3 | six of those 117 named individuals, and has not yet been able to depose two of them,
4 | Bryant or Larian, regarding the unfair competition allegations.

5 | **B.    Mattel Needs Additional Depositions Because the Integrity of MGA's**
6 | **and Bryant's Preservation of Documents Is At Issue**

7 | Mattel also is entitled to inquire about MGA's and Bryant's preservation and
8 | production of evidence. For example, as MGA's designee on document preservation
9 | testified, MGA had only obtained off-site documents as of the summer of 2007 and had
10 | searched none of these documents for responsive documents, even though the Court
11 | had ordered MGA to produce them and MGA had previously represented that its
12 | production was complete.[47] Further, MGA's designee on MGA's electronic document
13 | preservation and collection testified that MGA's only search of such information was a
14 | single search of Isaac Larian's e-mails in 2005, nothing more.[48]   MGA's designee
15 | repeatedly testified that Joe Tiongco, who Mattel seeks to depose, has more
16 | knowledge.[49] In the same vein, Mattel seeks to depose Daphne Gronich, who provided
17 | the preservation declaration on MGA's behalf.[50]   In addition, there are serious issues
18 | about Bryant's hard drives, including because of Bryant's prior counsel's conflicting
19 | representations about their collection and preservation – and indeed even their
20 | existence. Mattel therefore seeks testimony on these subjects.[51]   Bryant's belated
21 | revelation that he installed and used the "Evidence Eliminator" program on these drives

22 | 
23 | [46]   MGA's Fourth Supp. Resp. Unfair Comp. No. 1, at 5-16, Proctor Dec., Ex. 27.
      [47]   9/24/07 Stip. and Order, Proctor Dec., Ex. 30; Tonnu Dep. Tr. at 612:13-612:15,
24 | 620:14-621:21, Proctor Dec., Ex. 31; 8/13/07 Order, at 14:18-22, Proctor Dec., Ex. 32.
      [48]   See Lockhart Deposition Tr. at 265:1-11, Proctor Dec., Ex. 33.
25 | [49]   Id. at 116:2-14, 150:25-151:5, 158:10-15. 258:17-259:9, 265:1-11, 266:12-267:5.
      [50]   See Dec. of Daphne Gronich in Response to Court's Request for Information
26 | Regarding Document Preservation, dated September 10, 2007, Proctor Dec., Ex. 34.
      [51]   Notice of Deposition of Littler Mendelson Pursuant to Federal Rule of Procedure
27 | 30(b)(6), dated September 6, 2007, Proctor Dec., Ex. 35.
28 | 

-14-



EXHIBIT 3

PAGE 28

1

**Conclusion**

2      For the foregoing reasons, Mattel respectfully requests that the Court grant

3  Mattel's motion for leave.

4  DATED:  November 19, 2007      QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES, LLP

5

6                             By Jon Corey /s/

7                              Jon Corey
                              Attorneys for Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-25-

MATTEL'S MOTION FOR ADDITIONAL INTERROGATORIES AND DEPOSITIONS

EXHIBIT ___3___

PAGE ___29___

# EXHIBIT 4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                     Date: September 2, 2008

Title:    MATTEL, INC. -v- MGA, INC.
          AND CONSOLIDATED ACTIONS
=========================================================================
=
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                         None Present
          Courtroom Deputy Clerk             Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                           None Present

PROCEEDINGS:    ORDER SETTING VARIOUS BRIEFING SCHEDULES

        The Court, having considered the positions of counsel at the hearing herein, as well as the parties' proposed scheduling positions, hereby sets the following scheduling order for further proceedings in this matter:

1.      The case is STAYED from the date of this order through September 19, 2008, except for efforts aimed in good faith at a complete and global settlement. Principal corporate officers for both plaintiff and defendants (Mr. Eckert and Mr. Larian) are ORDERED to make themselves available, at a mutually agreeable time, to meet with counsel and Ambassador Prosper to discuss a global resolution of this matter.

2.      On September 29, 2008, the parties may file opening briefs and submissions regarding remaining claims and defenses for Phase 1(c) as well as opening briefs and submissions for injunctive relief, constructive trust, and/or other remedial measures. Response briefs and submissions are due October 13, 2008. Reply briefs and submissions are due October 20, 2008. A hearing not to exceed four hours will be conducted before this Court on **Monday, November 10, 2008, at 1:00 p.m.**

MINUTES FORM 90                                    Initials of Deputy Clerk __jh_____
CIVIL -- GEN                        1

EXHIBIT ____4/____

PAGE ____30____

3.  Opening briefs for JMOLs (new or renewed), motion(s) for new trial, and/or motion(s) for remittitur may be filed 10 days following the Court's ruling on Phase 1(c) issues and its issuance of any injunction(s), constructive trust(s), and/or other remedial measures. Response briefs are due 14 days following the opening briefs, and reply briefs are due 7 days following the response briefs. A hearing will be set by the Court after receiving the response briefs. Depending on the outcome of the hearing, the Court may address or defer addressing the following additional issues: (1) Whether or not to issue a judgment or await completion of Phase 2; (2) the appointment of a discovery master for Phase 2 (the Court will provide three proposed discovery masters in advance of the hearing to which counsel for the parties may indicate any objection(s)); and (3) further scheduling for Phase 2.

4.  All discovery related to Phase 2 is STAYED pending the hearing described in paragraph 3, except as follows: For good cause shown, the Court ORDERS the deposition of **Carlos Gustavo Machado** and **Jorge Castillo** to be taken at a mutually convenient date within 30 days of September 19, 2008. Any disputes concerning the taking of these depositions shall be presented to this District Judge in the manner prescribed in Local Rule 37.

**IT IS SO ORDERED.**

MINUTES FORM 90                                              Initials of Deputy Clerk __jh_____
CIVIL -- GEN
                                   2

EXHIBIT ___4___

PAGE ___3I___

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)   **Case Title**  Mattel, Inc. v. MGA ENTERTAINMENT, INC

**Title of Document**  MINUTES OF SEPTEMBER 2, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| | |
|---|---|
| ✓ | **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor):  P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

\* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |
| |

**Initials of Deputy Clerk** jh

EXHIBIT _____4_____

# EXHIBIT 5



1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA 90013-1065
3  Telephone: 213.629.7400
   Facsimile: 213.629.7401
4  obrien.robert@arentfox.com

5

6  Discovery Master

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                       EASTERN DIVISION

11

12  CARTER BRYANT, an individual,,       Case No. CV 04-09049 SGL (RNBx)

13                Plaintiff,             Consolidated with
                                         Case No. CV 04-09059
14         v.                            Case No. CV 05-2727

15  MATTEL, INC., a Delaware            **PHASE 2 DISCOVERY MATTER**
    corporation,
16                                       **ORDER NO. 6, REGARDING:**
               Defendant.
17                                           **(1) MOTION OF MATTEL, INC.
                                             TO COMPEL PRODUCTION OF
18                                           DOCUMENTS RESPONSIVE
                                             TO ITS FIRST AND THIRD
19                                           SETS OF REQUESTS FOR
                                             PRODUCTION; and**
20
                                             **(2) MOTION OF MGA TO
21                                           COMPEL PRODUCTION OF
                                             DOCUMENTS RESPONSIVE TO
22                                           THE DOCUMENT REQUEST
                                             NOS. 526 AND 528**
23

24  ┌─────────────────────────────────┐
25  │ CONSOLIDATED WITH               │
    │ MATTEL, INC. v. BRYANT and      │
26  │ MGA ENTERTAINMENT, INC. v.      │
    │ MATTEL, INC.                    │
27  └─────────────────────────────────┘

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                              ORDER NO. 6
                                   [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____5_____

PAGE _____33_____

I.   **INTRODUCTION**

This Order sets forth the Discovery Master's ruling on: (1) the motion of Mattel, Inc. ("Mattel") to compel production of documents by MGA Entertainment, Inc. ("MGA Entertainment") responsive to Mattel's First Set of Requests for Production No. 48 and Third Set of Requests for Production Nos. 43 through 75, 87 and 88 [Docket No. 4741] (the "Mattel Motion"), and (2) the motion of MGA Entertainment, Isaac Larian, MGA Entertainment HK Limited, and MGAE De Mexico SRL De Cv (collectively "MGA") to compel Mattel to produce documents responsive to MGA's Requests for Production 526 and 528 [Docket Number 4782] (the "MGA Motion") (collectively, the "Motions").

The Motions came on regularly for hearing before the Discovery Master on March 11, 2009. All interested parties were represented by counsel and afforded the opportunity to present oral argument on the Motions. The Discovery Master, having considered the papers filed in support of and in opposition to the Motions, and having heard oral argument thereon, rules as set forth below.

II.   **THE MATTEL MOTION**

Mattel seeks to compel MGA Entertainment to produce documents responsive to 36 separate document requests. (Mattel Motion, pp. 9 – 15). However, MGA Entertainment subsequently agreed to produce all non-privileged documents responsive to 34 of the document requests identified by Mattel. (MGA Opposition, p. 6). Therefore, the only document requests that remain at issue are Mattel's Third Set of Requests for Production Nos. 87 and 88. (*Id.*, p. 7).

A.   **The Discovery Sought**

Document Request No. 87 seeks "all personnel and vendor files for each person identified in Exhibit 664." (Mattel's Sep. Stmt., p. 3).

Document Request No. 88 seeks "all personnel and vendor files for each person who has worked as an employee of or vendor for [MGA Entertainment] and who also has been at any time an employee or vendor for Mattel." (*Id.*, p. 5).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

EXHIBIT __5__

PAGE __34__

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

## B.   **Phase 1 Ruling**

This is not the first time that Mattel has moved to compel responses to Document Request Nos. 87 and 88.  Mattel previously moved to compel responses to these requests as part of Phase 1, but its motion was denied because "Request Nos. 87 and 88 (files for former Mattel employees) . . . relate[d] primarily to Phase 2 issues."  (Disc. Master Order, Apr. 14, 2008, p. 7).  The former discovery master's April 14, 2008 Order denying Mattel's original motion to compel further held that "[i]n view of the stay on Phase 2 discovery . . . . [n]othing in this Order is intended to authorize or preclude Mattel from seeking further production of documents in response to Request Nos. 1 – 88 during Phase 2 discovery."  (*Id.*, pp.7 - 8).

## C.   **Objections of MGA Entertainment**

In its Opposition, MGA Entertainment relies on three basic grounds for refusing to produce the requested documents.  First, MGA Entertainment argues that Mattel failed to meet and confer.  Second, MGA Entertainment argues that the requests are overbroad.  Finally, MGA Entertainment argues that California's privacy laws prevent it from producing the requested documents.

### 1.   **Purported Failure To Meet And Confer**

As indicated above, MGA Entertainment first asserts that Mattel's Motion to Compel should be denied because Mattel failed to adequately meet and confer.  (MGA Opposition, pp. 9 - 10).  However, MGA Entertainment admits that Mattel did meet and confer regarding the two requests at issue prior to filing its original motion to compel in Phase 1.  (*Id.*, p. 2 ["The Renewed Motion is in fact based on meet and confer discussions held over one year ago with MGA's prior lead counsel."]; *see also id.*, p. 9 n.2 [Mattel "met and conferred over a year ago"].)  MGA further provides no legal authority, and the Discovery Master has found none, supporting the proposition that a party must meet and confer again before renewing a motion to compel that was denied merely because the case had been

EXHIBIT   5

PAGE   35

1   divided into phases and where the order denying the motion expressly noted that

2   nothing in the ruling was intended to "preclude Mattel from seeking further

3   production of documents in response" to the requests as part of Phase 2 discovery.[1]

4   (Order Apr. 14, 2008, pp. 7 - 8).

5          Even assuming such a requirement did exist, Mattel in fact met and conferred

6   with MGA Entertainment for a second time following the filing of its current

7   motion and resolved 34 of the 36 document requests in dispute. (MGA Opposition,

8   pp. 1, 6.) However, the parties were still unable to resolve their differences relating

9   to Document Requests Nos. 87 and 88. (*Id.*, 7–9.) It is, therefore, unclear what

10  could have been accomplished by an additional meet and confer on these issues

11  prior to the filing of the motion. Regardless, Mattel met and conferred once before

12  filing its current motion to compel and that is all that is required by the Federal

13  Rules of Civil Procedure and the discovery procedures governing this case.

14               **2.     Overbreadth Objection**

15         MGA Entertainment's second argument in opposition to Mattel's Motion is

16  that Document Requests Nos. 87 and 88 are "grossly overbroad." (MGA

17  Opposition, pp. 14 – 15). Specifically, MGA Entertainment argues that the requests

18  are improper because they are not tied "to any product(s) that Mattel alleged that

19  MGA [Entertainment] stole from Mattel." (*Id.*,14.) Without citing any legal

20  authority in support of this position, MGA Entertainment asserts that the current

21  Discovery Master should find that the requests are overbroad because the prior

22  discovery master merely compelled it to produce portions of personnel and vendor

23  files related to the Bratz products as part of Phase 1 discovery. (*Id.*; *see also* Order

24  Apr.14, 2008, pp. 7 - 8). But MGA Entertainment's argument fails to recognize

25  //

26

27  _____

28  [1] The arguments of MGA Entertainment that (1) it has new lead counsel and (2) the case has "changed dramatically" since the initial meet and confer took place in 2008 are not supported by any legal authority, (MGA Opposition, p. 9), and do nothing to alter the fact that Mattel met and conferred on these issues previously.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -                    ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    5

PAGE    36

1   the differences between Mattel's Phase 1 and Phase 2 claims.[2]

2        The touchstone for determining whether a particular discovery request is

3   reasonably calculated to lead to the discovery of admissible evidence in this case is

4   whether the request bears some relation to the issues to be tried in Phase 2.

5   Whereas Phase 1 of this case primarily addressed whether Mattel or MGA

6   Entertainment owned the rights to the Bratz products, Mattel's Phase 2 claims are

7   not linked to a single discrete product or even multiple products.  Instead, the issues

8   to be litigated in Phase 2 include, among other things, Mattel's claim that MGA

9   Entertainment stole "a vast array of trade secrets and other confidential information

10   that comprise Mattel's intellectual infrastructure," including, among other things,

11   stealing "Mattel's proprietary business methods, practices and information."

12   (Second Amended Answer and Counterclaims ["SAAC"], ¶ 20).  Mattel alleges in

13   its Counterclaims, which are to be litigated in Phase 2, that MGA Entertainment :

14     • "engaged in a pattern of stealing and using [Mattel's] property and trade

15       secrets," (*Id.*,   ¶ 1);

16     • "repeated—and even expanded—its pattern of theft [regarding the Bratz

17       dolls] on numerous occasions," including by hiring away three key Mattel

18       employees in Mexico who "stole virtually every category of Mattel's

19       sensitive and trade secret business plans and information for the Mexican

20       market as well as a significant quantity of sensitive and trade secrete

21       information for Mattel's U.S. and worldwide businesses," (*Id.*, ¶ 3);

22     • "stole Mattel trade secrets regarding Mattel's customers, sales, projects,

23       advertising and strategy, not only for Canada, but the United States and the

24       rest of the world," (*Id.*, ¶ 70);

25   //

26

27   ―――――――――――――――――――
[2] MGA Entertainment's claim that the document requests are overbroad is also inconsistent with its statement that it

28   would "produce all requested personnel files in their entirety (except for any medical or health related documents) if
Mattel gave notice to the employees and obtained their consent for such disclosure." (MGA Opposition, pp. 8 – 9).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  5

PAGE  37

1    • "took from Mattel documents containing proprietary advertising, project,

2        sales, customer and strategy information for not only Canada, but for the

3        United States," (*Id.*, ¶ 4);

4    • "engaged in an ongoing, widespread pattern of . . . inducing Mattel

5        employees to steal Mattel's confidential information or other property and

6        take it with them to MGA [Entertainment]," (*Id.*, ¶ 5);

7    • stole "Mattel's plans, strategy and business information for the Mexican

8        market and materials related to Mattel's worldwide business strategies," (*Id.*,

9        ¶ 37);

10   • "enticed [Mattel's employees] to steal Mattel's most sensitive business

11       planning materials, and then hired them to assist in establishing and running

12       MGA's new Mexican subsidiary," (*Id.*, ¶ 37);

13   • "directed [certain Mattel employees'] to steal virtually all Mattel confidential

14       and proprietary information that they could access and bring it with them to

15       MGA," (*Id.*, ¶ 43), including "virtually every type of document a competitor

16       would need to enter the Mexican market, and to unlawfully compete with

17       Mattel in Mexico, in the United States and elsewhere," such as "global

18       internal future line lists that detailed anticipated future products; production

19       and shipping costs for Mattel products, daily sales data for Mattel products;

20       customer data; sales estimates and projections; marketing projections;

21       documents analyzing changes in sales performance from 2003 to 2004;

22       budgets for advertising and promotional expenses; strategic research

23       reflecting consumer responses to products in development; media plans;

24       consumer comments regarding existing Mattel products customer discounts

25       and terms of sale; customer inventory level data; assessments of promotional

26       campaign success; market size historical data and projections; marketing

27       plans and strategies, merchandising plans; retail pricing and marketing

28       strategies; and other similar materials," (*Id.*, ¶ 48);

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____5_____

PAGE _____38_____

1  • "targeted certain Mattel employees who have broad access to Mattel

2  proprietary information in an effort to induce and encourage them to join

3  MGA [Entertainment] and to steal or otherwise wrongfully misappropriate

4  Mattel confidential information and trade secrets," including by "promising

5  these employees salaries 25 percent or more higher than they earn at Mattel

6  and stating to them that they should not be concerned by legal action taken

7  by Mattel to protect its trade secrets and its rights because such claims are

8  hard to prove and easy to defeat," (*Id.*, ¶ 69); and

9  • "hired directly from Mattel's United States operations at least 25 employees,

10  from Senior Vice-President level to lower level employees," and that some of

11  these individuals misappropriated "Mattel confidential and proprietary

12  information, including Mattel's strategic plans; business operations; methods

13  and systems; marketing and advertising strategies and plans; future product

14  lines; product profit margins, and customer requirements." (*Id.*, ¶ 77).

15  In light of the foregoing allegations, the documents requested by Mattel fall

16  within the purview of permissible discovery allowed by Federal Rule of Civil

17  Procedure 26. Rule 26 permits the discovery of information that is "relevant to the

18  claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Accordingly, Mattel's

19  request for "all personnel and vendor files" of individuals who either (1) work at

20  MGA Entertainment and previously used to work for Mattel or (2) who are vendors

21  of MGA Entertainment and used to work with or had contact with Mattel appears to

22  be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

23  ### 3.  Privacy Rights Objection

24  MGA Entertainment's final argument is that the records sought by Mattel

25  (i.e., personnel and vendor files) invade the privacy rights of non-parties and cannot

26  be produced under *California law* unless the individuals affected are given advance

27  notice of the requests and afforded an opportunity to object to the production.

28  (MGA's Opposition, pp. 10 – 14). Specifically, MGA Entertainment argues that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-6-

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  5

PAGE  39

1    the California Constitution and California Code of Civil Procedure § 1985.3

2    together constitute a fundamental public policy in California that do not allow

3    MGA Entertainment to "place its employees privacy rights at risk." (*Id.*). But each

4    of these contentions is unavailing.

5        As an initial matter, a protective order has been entered in this case. (Mattel

6    Reply, p. 2). This fact is crucial to analyzing the privacy concerns raised by MGA

7    Entertainment, because courts within the Ninth Circuit have repeatedly held that,

8    where such an order has been (or will be) entered, state-based privacy laws do not

9    bar production of personnel files.[3] *See, e.g., Nakagawa v. Regents of Univ. of Cal.,*

10   2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) (ordering production of

11   personnel files and stating "[a]ny other privacy concerns defendant may have

12   should be addressed by a protective order"); *Grinzi v. Barnes,* 2004 WL 2370639,

13   *1 (N.D. Cal. Oct. 20, 2004) ("The proper mechanism for an employer to use to

14   protect an employee's privacy interest in his personnel file is to obtain, either by

15   stipulation or motion, a properly crafted protective order under Rule 26(c)");

16   *Maldonado v. Cal. Dep't of Corr. & Rehab.,* 2007 WL 4249811, *7 (E.D. Cal. Nov.

17   30, 2007) ("The court has already analyzed these non-party privacy rights, and the

18   protective order should serve to remedy any concern in this regard."); *Walton v. K-*

19   *Mart, Inc.,* 2007 WL 4219395, *2 (N.D. Cal. November 28, 2007) ("In view of the

20   employees' privacy interests, documents shall be produced pursuant to an

21   attorneys' eyes only protective order."); *Keller-McIntrye v. Coll. Of Health &*

22   *Human Servs.,* 2006 WL 3456672, *1-*2 (N.D. Cal. November 29, 2006) (ordering

23   production of employee information, pursuant to a protective order, despite privacy

24   claims under California law).

25       Further, contrary to MGA Entertainment's assertions, the Ninth Circuit has

---

26   [3] In fact, some of the California authority relied on by MGA Entertainment contemplates that confidential
information may be appropriately disclosed if a protective order is in place. (*See, e.g., Valley Bank of Nev. v.*
27   *Superior Court,* 15 Cal. 3d 652, 658 (1975) ["[T]he trial court has available certain procedural devices which may be
useful in fashioning an appropriate order that will, so far as possible, accommodate considerations of both disclosure
28   and confidentiality."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                                  - 7 -                    ORDER NO. 6
                                                                               [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___

PAGE ___40___

1   held that "personnel files are discoverable in federal question cases . . . despite

2   claims of [state-created] privilege,"[4] (*Garrett v. San Francisco*, 818 F.2d 1515,

3   1519 n. 6 (9th Cir. 1987); *see also Kerr v. District Court*, 511 F.2d 192, 197 (9th

4   Cir. 1975)), and this includes any claim of privilege resulting from California Code

5   of Civil Procedure § 1985.3,[5] (*see Reed v. Williams*, 2007 WL 2140506, *4 (E.D.

6   Cal. July 25, 2007) [holding that the requirements of California Code of Civil

7   Procedure § 1985.3 do not apply in federal question cases because "federal law

8   applies in terms of substantive, privilege and discovery law."]).  Accordingly, the

9   privacy concerns raised by MGA Entertainment have no applicability here.

10       Despite the foregoing, and notwithstanding the existence of the protective

11   order as a safeguard, the Discovery Master finds that the requested documents

12   should exclude "health care specific information," because Mattel's counsel

13   conceded that Mattel is not seeking such information in its discussions with counsel

14   for MGA Entertainment.  (*See* Decl. of Amman Khan, Ex. G, 2).  Counsel for

15   Mattel restated this position at the hearing.

16       The Discovery Master further orders MGA Entertainment to redact any

17   social security numbers, tax identification numbers, dates of birth, indication of

18   sexual orientation, bank account numbers, and checking account numbers that may

19   be included within the requested documents prior to production, as Mattel has not

20   made a showing at this time that such discrete personal information is reasonably

21   calculated to lead to the discovery of admissible evidence.

22   **D.   Conclusion**

23       The documents sought by Mattel's Request Nos. 87 and 88 are reasonably

24   calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

---

25  [4] Mattel's SAAC includes, among other things, claims for alleged RICO violations under U.S.C. §§ 1962(c), 1962(d)

26  and 1964(c), (SAAC at ¶¶ 88 – 105) and MGA Entertainment removed this action to federal court on federal question grounds, (Mattel Reply, p. 5).

27  [5] The same rule may even apply in diversity cases, (see *Corser v. County of Merced*, 2006 WL 2536622, *2 (E.D.

28  Cal. August 31, 2006) [holding that "the extent that Section 1985.3 may provide a California-law privilege [] the privilege does not apply to this litigation"], but the Discovery Master need not resolve that issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___

PAGE ___41___

1    2 claims, and are not protected from disclosure on the grounds of third-party

2    privacy rights or any other ground cited by MGA Entertainment.

3    **III.    MATTEL'S REQUEST FOR SANCTIONS**

4        In its Reply, Mattel also seeks $1,460 in sanctions relating to the attorneys'

5    fees and costs it incurred in drafting the reply.  (Mattel's Reply, pp. 11 – 13; *see*

6    *also* Decl. of Zachary Krug, ¶ 14).  As the Discovery Master has previously stated,

7    however, he, like the Court,[6] disfavors the insertion of new arguments at the reply

8    stage that could have been raised in the moving papers.[7]  This rule is routinely

9    adhered to by courts in the Ninth Circuit.  *See, e.g., United States v. Boyce*, 148

10   F.Supp .2d 1069, 1085 (S.D. Cal. 2001); *Leick v. Hartford Life & Accident Ins. Co.*,

11   2007 WL 1847635, at *1, n. 1 (E.D. Cal. June 27, 2007); *Stewart v. Wachowski*,

12   2004 WL 2980783, at *11 (C.D. Cal. Sept. 28, 2004); *Hamilton v. Willms*, 2007

13   WL 2558615, at *11 (E.D. Cal.2007); *see also United States v. Cox*, 7 F.3d 1458,

14   1463 (9th Cir.1993); *United States v. Wright*, 215 F.3d 1020, 1030 n. 3 (9th

15   Cir.2000).

16       Accordingly, the Discovery Master therefore declines to award sanctions

17   against MGA Entertainment.

18   **IV.    MGA'S MOTION TO COMPEL RESPONSES TO DOCUMENT**

19          **REQUEST NOS. 526 AND 528**

20       In its motion, MGA seeks an order compelling Mattel to produce documents

21   responsive to two document requests (the "Requests") included in MGA's Fifth Set

22   of Requests for Production of Documents and Things dated August 3, 2007.

23   //

24

25   [6] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

26

27   [7] Mattel was apparently aware of MGA Entertainment's grounds for opposing the motion before it filed its moving papers, since Mattel met and conferred with MGA Entertainment prior to bringing its motion.  Mattel nevertheless failed to request a sanctions award in its moving papers, thereby depriving opposing counsel and MGA Entertainment of the chance to oppose the request in the Opposition brief.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-9-

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___

PAGE ___42___

## A.     The Discovery Sought

The Requests seek copies of Mattel's communications with law enforcement authorities (Request No. 526) and copies of any documents that it has provided to law enforcement authorities (Request No. 528).  The complete text of the Requests is as follows:

- **Request No 526**:  All DOCUMENTS that constitute COMMUNICATIONS between YOU (including YOUR agents and attorneys) and law enforcement authorities in Mexico, Canada, or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities, concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

- **Request No. 528**:  All DOCUMENTS that you (including YOUR agents and attorneys) provided to law enforcement authorities in Mexico, Canada [*sic*] or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

## B.     Mattel's Objections

In its Opposition, Mattel relies on three basic grounds for refusing to produce the requested documents.  First, Mattel argues that the Requests are overbroad and encompass information not reasonably calculated to lead to the discovery of admissible evidence.  Second, Mattel argues that the documents are protected by the work product doctrine.  Finally, Mattel argues that the documents are

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5
PAGE 43

1   privileged.

2   **1.   Overbreadth Objection**

3   Among the issues to be adjudicated in Phase 2 are Mattel's counterclaims for

4   RICO violations, misappropriation of trade secrets and unfair competition. Mattel's

5   SAAC alleges that "Mattel notified Mexican authorities about the [alleged] theft of

6   its trade secret and confidential information." (SAAC, ¶ 53). The SAAC further

7   details Mattel's knowledge of the Mexican authorities' activities related to MGAE

8   de Mexico and suggests that Mattel communicated with the authorities regarding

9   their seizure of certain documents from MGA's office. (*Id.*, ¶ 53). Mattel also

10   alleges that "Mattel notified Canadian law enforcement authorities" about its belief

11   that Janine Brisbois copied documents onto a thumb drive when she left Mattel.

12   (*Id.*, ¶ 75). Further, Mattel states that it communicated with Canadian authorities

13   regarding the information allegedly recovered from Brisbois' thumb drive. (*Id.*, ¶

14   75).

15   Mattel has also acknowledged that at least some of the documents responsive

16   to Request No. 526 relate to Mattel's claims by producing to MGA "the judicial file

17   in criminal proceedings in Mexico, relating to the trade secret thefts in that country,

18   *and some of those materials reflected communications between Mattel and law*

19   *enforcement*." (Declaration of Timothy L. Alger dated January 24, 2008 ["Alger

20   Decl."], ¶ 16 (emphasis added).)

21   Given Mattel's allegations regarding the theft of its trade secrets, its

22   communications with law enforcement officials, and the overlap between the civil

23   and criminal claims Mattel is pursuing, the Discovery Master concludes that, as a

24   threshold matter, MGA has made a prima facie case that the Requests seeking the

25   documents Mattel provided to law enforcement officials, as well as Mattel's

26   communications with those officials, are reasonably calculated to lead to the

27   discovery of admissible evidence regarding the claims to be adjudicated in Phase 2.

28   Although the Requests on their face relate to Phase 2 issues, Mattel

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -                ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5
PAGE 44

1  nonetheless argues in its Opposition that Request No. 526 is overbroad because

2  Mattel's civil claims are wholly separate and independent from any criminal relief

3  it is seeking. (Mattel Opposition, p. 4 ["The civil claims stand or fall based on

4  MGA's actions, not Mattel's subsequent communications with law enforcement."]).

5       In so arguing, Mattel misses the point. The issue is not whether Mattel's

6  communications with law enforcement officials constitute the basis of Mattel's

7  claims. Rather, the issue is whether those communications are reasonably

8  calculated to lead to the discovery of admissible evidence regarding what Mattel

9  itself characterizes as the basis of its claims, namely MGA's alleged acts of trade

10  secret misappropriation. Mattel does not dispute that its subsequent

11  communications with law enforcement involve the same conduct that is the basis of

12  the civil claims. On the contrary, Mattel has alleged in its SACC that it is

13  concurrently seeking relief through the criminal justice system and this civil action

14  based on the same documents allegedly stolen by MGA and confirmed that fact

15  during the meet and confer process. (See, e.g., Alger Decl., ¶ 16 [asserting that "the

16  judicial file in the criminal proceedings in Mexico" are among the "documents

17  *relating to Mattel's Counterclaims*."] [emphasis added].)

18       Mattel's communications with law enforcement may, among other things,

19  disclose what Mattel told the investigating authorities about what information was

20  taken, the people who have knowledge of the thefts, and any supposed criminal

21  intent on the part of MGA or the former Mattel employees who supposedly took the

22  information. Given this admitted overlap in subject matter, the communications

23  between Mattel and law enforcement agencies are discoverable. (*See, e.g., In re*

24  *Qwest Commc'ns Intl., Inc.*, 450 F.3d 1179, 1181-82, 1201 (10th Cir. 2006) [private

25  plaintiff permitted discovery of materials provided to law enforcement authorities

26  concerning the same underlying facts]).

27       With respect to Request No. 528 (seeking documents Mattel provided to law

28  enforcement agencies), Mattel argues that it has already provided to MGA tens of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____5_____

PAGE _____45_____

Case 2:04-cv-09049-DOC-RNB   Document 5029-3   Filed 03/16/09   Page 50 of 63   Page ID
#:160986
Case 2:04-cv-09049-SGL-RNB      Document 5018      Filed 03/13/2009      Page 14 of 20

1   thousands of documents that pertain to the underlying facts of Mattel's

2   counterclaims. (Mattel Opposition p, 5). But, as Mattel admits, that production

3   does not satisfy Request No. 528 which, in Mattel's words "seeks something more

4   and different." (*Id.*). According to Mattel, the "different" information sought by

5   Request No. 528 is information that would enable "MGA's executives to defend

6   against actual or potential criminal charges . . ." (*Id.*). However, since those

7   possible criminal charges are based on the same conduct as Mattel's civil claims, it

8   would be inappropriate to bar MGA from obtaining that information for use in this

9   lawsuit, simply because that same information might also relate to possible future

10  criminal cases (which may or may not ever be filed). Put another way, the

11  information sought by MGA to defend the civil claims does not become

12  "irrelevant" simply because it might have the ancillary effect of facilitating MGA's

13  defense of possible criminal claims.

14      Lastly, Mattel argues that both Requests are overbroad because they are not

15  limited to misconduct expressly alleged in the SAAC but also seek "documents

16  'concerning . . . any other alleged taking of confidential MATTEL information by

17  MGA . . .'" (Mattel Opposition, pp. 5 -6). In response, MGA points out that the

18  SAAC includes a catch-all allegation stating that unidentified "additional

19  employees accessed, copied and took from Mattel confidential and proprietary

20  information." (SAAC, ¶ 77). Mattel's apparent purpose in including such an

21  allegation was to preserve its right to allege and prove other acts of

22  misappropriation besides those expressly alleged in the SAAC. Accordingly, since

23  Mattel reserves the right to seek relief regarding additional, un-alleged acts, MGA

24  should likewise be entitled to conduct discovery to identify those additional acts

25  and to determine what evidence Mattel may have to prove them.

26          **2.     Work Product Objection**

27      Next, Mattel argues that production of Mattel's communications with law

28  enforcement agencies, together with the documents Mattel chose to provide to those

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___

PAGE ___46___

1   agencies, would violate the attorney work-product doctrine by revealing counsel's

2   strategy and mental processes. (Mattel Opposition, p. 6).

3          To qualify for work-product protection under Federal Rule Civil Procedure

4   26, documents must meet two requirements: (1) they must be "prepared in

5   anticipation of litigation or for trial," and (2) they must be prepared "by or for

6   another party or by or for that other party's representative." *In re Cal. Pub. Utils.*

7   *Comm'n*, 892 F.2d 778, 780-781 (9th Cir. 1989). In determining whether the

8   doctrine is applicable to a particular document, "the court must consider the

9   *primary purpose* of the work product doctrine, which is to 'prevent exploitation of a

10  party's efforts in *preparing for litigation*.'" *Johnson v. Finn*, 2007 WL 3232253,

11  *1 (E.D. Cal. Oct. 31, 2007) (emphasis added). The authorities Mattel cites agree

12  that the purpose of the work product doctrine is "to establish a zone of privacy for

13  *strategic litigation planning*." (Opposition, p. 6 quoting *United States v. Adlman*,

14  68 F.3d 1495, 1501 (2d Cir. 1995) [emphasis added].)

15         Here, Mattel does not demonstrate any connection between its

16  communications with law enforcement officials, on the one hand, and its litigation

17  strategy in the present civil case, on the other hand. Rather, it appears that Mattel's

18  primary purpose in communicating with, and disclosing the disputed documents to,

19  various law enforcement officials was to instigate criminal prosecutions by

20  prosecutorial agencies, not pursue its civil claims against MGA. Thus, to the extent

21  the selection of particular documents by Mattel's counsel reveals counsel's

22  impressions and mental processes, the window into counsel's thinking relates to

23  counsel's strategy of encouraging *criminal prosecution* by the relevant authorities.

24  There is no showing that counsel's thinking regarding how best to achieve *that*

25  purpose would also reveal counsel's strategies and impressions in any matter

26  related to the current civil litigation. In short, Mattel has made an insufficient

27  showing that the communications and documents at issue constitute work product

28  in *this* litigation. Accordingly, the work-product doctrine is inapplicable.

- 14 -                    ORDER NO. 6
                                   [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___

PAGE ___47___

1       Further, even if the work-product doctrine somehow applied to Mattel's

2 communications with law enforcement agencies, Mattel waived it, in at least two

3 ways. First, Mattel admits that it has already produced some of those

4 communications to MGA. (See Alger Decl., ¶ 16.)

5       Second, to the extent Mattel's communications with law enforcement

6 officials disclose its conclusions and theories to law enforcement officials, such a

7 disclosure also constitutes a waiver. Mattel admits that the work-product doctrine

8 is waived when material is "voluntarily disclosed such that it may become readily

9 accessible to an adversary." (Mattel Opposition, pp. 6 - 7 (citing *Aronson v.*

10 *McKesson HBOC, Inc.*, 2005 WL 934331, *6 (N.D. Cal. Mar. 31, 2005)). In fact,

11 the courts have specifically held that "disclosing information to governmental

12 authorities in the hope that they will attack an adversary . . . cannot be said to be

13 done 'in the pursuit of . . . trial preparation.' Thus, disclosure in such a situation

14 results in a waiver of the work product protection." *Bank of America, NA. v. Terra*

15 *Nova Insur. Co.*, 212 F.R.D. 166, 172-73 (S.D.N.Y. 2002). Therefore, when a party

16 provides information to law enforcement agencies and "harbor[s] the hope, even if

17 un-communicated, that its disclosures would encourage the Government to

18 prosecute" a third party, this disclosure constitutes waiver because it "substantially

19 increase[s] the potential that the information gained during the investigation would

20 be disclosed to [the] adversary." *Id.*

21       Given that Mattel disclosed the documents to these entities with the intention

22 of triggering criminal prosecution of MGA and its representatives, the intended

23 effect of Mattel's disclosure is to make those documents available to MGA under

24 the applicable rules of criminal procedure, which would entitle MGA to the

25 documentary evidence on which any alleged criminal liability is based. Mattel

26 itself concedes this fact when it acknowledges that MGA can request disclosure of

27 the information provided to law enforcement officials "in accordance with the

28 applicable law in the countries involved." (Mattel Opposition, p. 5). Mattel knew

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT   5
PAGE   48

- 15 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

1    when it provided the documents to law enforcement agencies that such production

2    "substantially increased the opportunities for potential adversaries to obtain the

3    information." (Mattel Opposition, p. 7). Thus, Mattel cannot demonstrate a

4    reasonable expectation this material would remain protected.

5                      **3.    Privilege Objections**

6            Lastly, Mattel asserts that the litigation privilege codified in Cal. Civ. Code §

7    47(b) and/or the *Noerr-Pennington* doctrine bar MGA from seeking any affirmative

8    relief from Mattel based on the latter's communications with law enforcement

9    authorities. Consequently (Mattel reasons), those communications "are not

10   properly discoverable" in this action. (Mattel Opposition, p. 8).

11           That argument is based on a premise for which there is no support in the

12   record, namely that MGA seeks the subject documents in order to assert a claim

13   against Mattel arising from Mattel's allegedly privileged communications.

14   Proceeding from this unsupported assumption, Mattel then argues that such a non-

15   existent claim would be barred.

16           However, that speculative foray is entirely non-responsive to the MGA

17   Motion. The MGA Motion asserts that the documents should be produced not

18   because MGA intends to sue Mattel for communicating with law enforcement

19   authorities, but rather because Mattel itself injected the issue of the criminal

20   proceedings *into this lawsuit* by asserting in its SAAC that Mattel has

21   communicated with criminal authorities in various countries regarding the conduct

22   of MGA upon which Mattel bases its counterclaims. *That* is the reason MGA

23   offers for seeking the subject documents.

24           Accordingly, Mattel's attempt to rely on privilege fails to address the actual

25   position taken by MGA in its Motion or the issues raised in the pleadings. Further,

26   the cases cited by Mattel demonstrate on their face that the subject privileges are

27   restricted to situations not present here. Those cases stand for the proposition that

28   parties who communicate with law enforcement officials may be immune from

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____5____

PAGE ____49____

- 16 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

1   *liability* under California tort law and federal anti-trust law, respectively – not that

2   such parties are immune from *discovery* in civil suits.

3                            **a.    The Litigation Privilege**

4           The California Supreme Court described the scope of the litigation privilege

5   in a case cited by Mattel, *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350 (2004).

6   According to Mattel, *Hagberg* stands for the proposition that a communication to

7   law enforcement officials about suspected criminal activity "enjoys an unqualified

8   privilege." (Mattel's Opp'n, 8.) However, nothing in the *Hagberg* opinion

9   addresses the issue presented here, namely whether communications and documents

10  passed from the reporting party to the law enforcement agency is discoverable in

11  litigation arising out of the same underlying, allegedly criminal, activities. Rather,

12  in *Hagberg* the question presented was "whether *tort liability* may be imposed for

13  statements made when a citizen contacts law enforcement personnel to report

14  suspected criminal activity...." 32 Cal. 4th at 355 (emphasis added). The Court

15  answered that question in the affirmative. *Id.*

16          The other California cases cited by Mattel are in accord. See *Jacob B. v.*

17  *County of Shasta*, 40 Cal. 4th 948, 955, 956 (2007) ("We have discussed the basic

18  principles underlying section 47(b)'s litigation privilege in many cases.... [P]ublic

19  agencies... must be permitted to provide such information without fear of being

20  harassed by *derivative lawsuits*.") (emphasis added); *Silberg v. Anderson*, 50 Cal.

21  3d 205, 213, 214 (1990) (the "*litigation* privilege" provided by section 47(2)

22  "afford[s] litigants and witnesses... the utmost freedom of access to the courts

23  without fear of being harassed subsequently by *derivative tort actions*") (emphasis

24  added); *Williams v. Taylor*, 129 Cal, App. 3d 745 (1982) (affirming summary

25  judgment against plaintiff's claims for slander and malicious prosecution based on

26  Section 47(b)).

27                          **b.    The *Noerr-Pennington* Doctrine**

28          "The Noerr-Pennington doctrine *immunizes from the antitrust laws* anti-

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 5

PAGE 50

1   competitive conduct undertaken to influence or petition government bodies, or to

2   utilize judicial or quasi-judicial mechanisms." (*Forro Precisions, Inc. v. Intl Bus.*

3   *Mach.* 673 F.2d 1045, 1059 (1982) [emphasis added]). In *Forro*, the plaintiff

4   brought suit against IBM for assisting a police search of his business premises.

5   Based in part on the *Noerr-Pennington* doctrine, the court held that the plaintiff's

6   antitrust claim could not be based on IBM's solicitation of aid from the police

7   department that resulted in the police investigation and search of his premises, or on

8   IBM's assistance in these activities. (*Id.* at 1053 ["IBM's actions in assisting the

9   police...were privileged and could not serve as a basis for *civil liability*."] [emphasis

10  added]) . In short, the "privilege" at issue in *Forro* dealt with freedom from

11  antitrust liability, not freedom from discovery.[8]

12                      **c.      Application To The Present Case**

13           Here, MGA has not yet asserted any affirmative claim against Mattel arising

14  out of Mattel's communication with law enforcement officials. If and when MGA

15  attempts to do so, it may well be appropriate for Mattel to assert the privileges

16  discussed above in an attempt to defeat any such claims on the merits. In the

17  meantime, MGA is simply defending Mattel's civil claims in the present action, and

18  no privilege cited by counsel prevents MGA from conducting discovery regarding

19  the basis for those claims.

20           **C.    Conclusion**

21           The documents sought by MGA's Request Nos. 526 and 528 are reasonably

22  calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

23  2 claims, and are not protected from disclosure under any of the privileges or

24  doctrines cited by Mattel.

25  //

26

27  [8] Mattel cites only one case in which the Court actually held that a party was protected from the production of communications made to government agencies regarding suspected criminal activity. However, in that case (which

28  arose under the Annunzio-Wylie Act) the communications were sought to prove a defamation claim based on those communications. *See Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -                              ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   _5_

PAGE   _51_

## V.   **DISPOSITION**

1.     The Mattel Motion is **GRANTED**, with the exception of health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers.

2.     Mattel's request for sanctions is **DENIED**.

3.     The MGA Motion is **GRANTED**.

4.     All non-privileged documents shall be produced within 30 days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

5.     All documents to be produced pursuant to this Order, including employee personnel files and records of communications between Mattel and law enforcement officials, shall be produced in the same format and order as they are maintained in the original files of the parties as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i).

6.     The documents reflecting Mattel's communications with law enforcement officials shall include any and all enclosures, and documents transmitted as a group shall be marked in a manner that permits MGA to ascertain which pages constitute each individual transmittal.

7.     All personnel or vendor documents redacted by MGA in accordance with this Order shall, whenever applicable, retain any letterhead, title, or other header that permits Mattel to ascertain the general nature and source of the document redacted and shall be marked in a manner that permits Mattel to ascertain which pages comprise a single document.

Dated:       March 13, 2009

By:_____     /s/ Robert C. O'Brien
ROBERT C. O'BRIEN
Discovery Master

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___5___

PAGE ___5ᵃ___

# EXHIBIT 6

RECEIVED

JAN 23 2007

1   DALE M. CENDALI (admitted *pro hac vice*)
    DIANA M. TORRES (S.B. #162284)
2   JAMES P. JENAL (S.B. # 180190)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, CA 90071-2899
4   Telephone:  (213) 430-6000
    Facsimile:  (213) 430-6407
5   Email:      jjenal@omm.com

6   PATRICIA GLASER (S.B. #55668)
    CHRISTENSEN, GLASER, FINK,
7   JACOBS, WEIL & SHAPIRO, LLP
    10250 Constellation Boulevard, 19th Floor
8   Los Angeles, CA 90067
    Telephone:  (310) 553-3000
9   Facsimile:  (310) 557-9815

10  Attorneys for MGA Entertainment, Inc.

11  DOUGLAS A. WICKHAM (S.B. #127268)
    KEITH A. JACOBY (S.B. #150233)
12  LITTLER MENDELSON
    A Professional Corporation
13  2049 Century Park East, 5th Floor
    Los Angeles, CA 90067.3107
14  Telephone:  (310) 553-0308
    Facsimile:  (310) 553-5583

15  Attorneys for Carter Bryant

16              UNITED STATES DISTRICT COURT

17            CENTRAL DISTRICT OF CALIFORNIA

18                    EASTERN DIVISION

19  CARTER BRYANT, an individual,      Case No. CV 04-09049 SGL (RNBx)
                                        (consolidated with CV 04-9059 & 05-2727)
            Plaintiff,
20                                      DISCOVERY MATTER
        v.
21                                      MGA AND BRYANT'S REPLY IN
    MATTEL, INC., a Delaware            SUPPORT OF THEIR JOINT MOTION
    Corporation,                        TO COMPEL THE PRODUCTION OF
22                                      DOCUMENTS AND THE DEPOSITION
            Defendant.                  OF 30(B)(6) WITNESSES
23

24  CONSOLIDATED WITH                   Hearing date:    January 25, 2007
    MATTEL, INC. v. BRYANT and          Hearing time:    9:00 a.m.
25  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
26

27
                                                        1-22
28

EXHIBIT __6__

PAGE __53__

MGA AND BRYANT'S REPLY
TO JOINT MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1    Alan Kaye.

2          3.    **Mattel Rejected Bryant's Proposal Regarding the 2002**
3                **Anonymous Letter and Investigation**

4          .    MGA and Bryant's motion was not brought in bad faith because Mattel

5    rejected their proposal and refused to provide discovery to which MGA and Bryant

6    are entitled. In an attempt to avoid unnecessary motion practice, MGA and Bryant

7    proposed during the meet and confer on December 27, 2006, that Mattel agree to:

8    1) provide an updated privilege log reflecting documents related to the 2002

9    Anonymous Letter and investigation that Mattel is withholding based on its claim

10   that such documents are privileged; 2) supply a list of names of the individuals

11   involved in the investigation of the allegations in the 2002 Anonymous Letter; *and*

12   3) allow the re-examination of witnesses, in particular Alan Kaye, regarding the

13   2002 Anonymous Letter investigation. (*See* Jacoby Decl. ¶¶ 7-8.) Mattel thereafter

14   contacted counsel for MGA and Bryant and offered a comprise agreement. In

15   particular, Mattel agreed to update its privilege log and to provide a list of names of

16   persons involved in the investigation of the allegations in the 2002 Anonymous

17   Letter, but rejected MGA and Bryant's request to allow the re-examination of

18   witnesses with regard to the investigation. (*See* Jacoby Decl. ¶ 10.) That

19   "compromise" – requiring MGA and Bryant to give up discovery to which they

20   were entitled in exchange for a privilege log that Mattel was already obligated to

21   produce – was unacceptable. (*See* Jacoby Decl. ¶¶ 10-11.)

22         Mattel cannot now rely on the fact that it belatedly agreed to update its

23   privilege log and to supply names of persons involved with the investigation to

24   claim that the present motion was brought in bad faith.[3] MGA and Bryant are

25   entitled to examine Mattel's witnesses regarding its investigation of the allegations

26   _____

27   [3] Although Mattel stated that it "intends to serve an amended privilege log that lists all withheld documents relating to the anonymous letter 'investigation' expeditiously as a showing of good faith," (Opp'n at n. 43), as of the date of this Reply, Mattel has not produced any such amended
28   privilege log.

                                    - 6 -                    MGA AND BRYANT'S REPLY
                                                             TO JOINT MOTION TO COMPEL
                                                             CV 04-09049 SGL (RNBX)

EXHIBIT  6

PAGE  54

1  contained in the 2002 Anonymous Letter.  Mattel should not be allowed to withhold

2  discovery it is obligated to produce as a means of handling a discovery dispute.

### C.   Mattel Should Be Compelled to Produce Its 30(b)(6) Witnesses

As set forth in Bryant and MGA's moving papers, the parties communicated at length regarding Mattel's failure to respond to MGA's repeated requests for deposition dates.  In an attempt to bring closure to the issue, on January 3, 2007, MGA proposed the parties enter into a joint stipulation, whereby MGA and Mattel would each provide the names and available dates for depositions of the parties' remaining 30(b)(6) witnesses on Friday, January 5, 2007.  (*See* Declaration of James P. Jenal, filed January 5, 2007 ("Jenal Decl."), ¶ 13 & Ex. R.)  That offer required Mattel to finally comply by noon on Friday, January 5, 2007, and Mattel's counsel confirmed its understanding of that offer.  (Jenal Decl. ¶ 13.)  By late afternoon on Friday, despite not having received any response from Mattel regarding the offered joint stipulation, or any indication that Mattel intended to provide witnesses or dates for their depositions in response to the 30(b)(6) notices, MGA nevertheless provided Mattel with the list of its designated 30(b)(6) witnesses and the dates those witnesses were available for deposition.[4]  Even then, Mattel failed to respond and Bryant and MGA filed the instant Motion.

Tellingly, Mattel admits that it did not offer additional dates for deponents to testify in response to Bryant's 30(b)(6) notices until *after* MGA and Bryant filed their motion to compel.  (Opp'n at 21, referencing letters of January 8 and 16.)

---

[4] Mattel disingenuously claims that MGA refused to disclose why Paula Garcia, MGA's witness designated to testify regarding the majority of topics in Mattel's 30(b)(6) notice, is not available prior to mid-March.  Contrary to Mattel's assertion, MGA informed Mattel at the time it offered dates for its 30(b)(6) witnesses to testify that Ms. Garcia is currently working out of the country.  (*See* Supplemental Declaration of James P. Jenal ("Supp. Jenal Decl."), filed concurrently herewith, ¶ 3, Ex. A.)  Moreover, Kerri Brode, the second of MGA's two designated 30(b)(6) witnesses, was produced for her deposition on the designated topics on January 19, 2007, but counsel for Mattel terminated the deposition without having asked Ms. Brode a single question regarding the two topics for which she had been designated.  (*See* Supp. Jenal Decl., ¶ 4.)

- 7 -

MGA AND BRYANT'S REPLY
TO JOINT MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

EXHIBIT ___6___

PAGE ___55___

1    Thus, Mattel's claim that MGA and Bryant filed the instant motion in bad faith

2    knowing that Mattel was going to designate witnesses and dates for deposition is

3    baseless. Having witnessed months of delay, combined with Mattel's refusal to

4    enter into a binding stipulation that would have prevented any further delay, Bryant

5    and MGA rightly believed that at the very least, the threat of a court order was

6    necessary to secure firm dates for these depositions. And the record bears that out –

7    only since filing this motion has Mattel grudgingly offered dates for depositions on

8    six of the remaining fifteen 30(b)(6) topics. (Supp. Jenal Decl. ¶ 2.) As there is no

9    dispute about the relevance or appropriateness of these remaining 30(b)(6) topics

10   (as evidenced by Mattel's 2005 agreement to produce them), Mattel's continued

11   refusal to provide deposition dates for these witnesses should not be permitted, and

12   an Order compelling their testimony by the end of February is still appropriate.

13

14          **D.     Sanctions Are Not Warranted Because MGA and Bryant Did Not
               File The Instant Motion in Bad Faith**

15

16          Finally, Mattel argues that it is entitled to sanctions because MGA and

17   Bryant allegedly brought the instant motion in bad faith. As set forth at length

18   above, and contrary to Mattel's assertions, the joint motion was brought to resolve

19   legitimate disputes between the parties. To the contrary, if anyone should be

20   required to pay sanctions, it should be Mattel for refusing for years to provide

21   MGA and Bryant with discovery to which they are properly entitled and for

22   attempting to turn this simple discovery dispute into something incomprehensible.

23

24   **III.   CONCLUSION**

25

26          For the reasons stated in MGA and Bryant's joint motion to compel, as well

27   as those detailed herein, the Court should grant MGA and Bryant's Joint Motion to

28   Compel Mattel to produce documents related to the 2002 Anonymous Letter and

                                          - 8 -                    MGA AND BRYANT'S REPLY
                                                                  TO JOINT MOTION TO COMPEL
                                                                  CV 04-09049 SGL (RNBX)

EXHIBIT ____6____

PAGE ____56____

1   investigation, to permit the re-examination of Mr. Kaye, to require Mattel to log
2   any documents withheld on the grounds of privilege and to produce its 30(b)(6)
3   witnesses for deposition by the end of February.

4

5   Dated: January 22, 2007                O'MELVENY & MYERS LLP

6

7                                          By: James P. Jenal
                                           Attorneys for MGA Entertainment, Inc.
8                                          LITTLER MENDELSON

9

10                                         By: Keith A. Jacoby
                                           Attorneys for Carter Bryant
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 9 -

                                                   MGA AND BRYANT'S REPLY
                                                   TO JOINT MOTION TO COMPEL
                                                   CV 04-09049 SGL (RNBX)

EXHIBIT  6
PAGE  57

1

## PROOF OF SERVICE

2

I, Mila D. Sucgang, declare:

3

4

5

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On January 22, 2007, I served the within document:

6

7

8

9

MGA & BRYANT'S REPLY IN SUPPORT OF THEIR JOINT MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND THE DEPOSITION OF 30(B)(6) WITNESSES;

10

☒   by causing to be personally served and by sending an electronic mail the document(s) listed above to the person(s) listed below.

11

12

13

Jon D. Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
michaelzeller@quinnemanuel.com

14

15

16

17

Douglas A. Wickham, Esq.        Patricia Glaser, Esq.
Keith A. Jacoby, Esq.           Christensen, Glaser, Fink, Jacol
Littler Mendelson, P.C.         Weil & Shapiro, LLP
2049 Century Park East          10250 Constellation Blvd.
Fifth Floor                     19th Floor
Los Angeles, CA 90067           Los Angeles, CA 90067

18

19

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

20

Executed on January 22, 2007, at Los Angeles, California.

21

22

23

_____
Mila D. Sucgang

24

25

26

27

28

EXHIBIT ___6___

PAGE ___58___

PROOF OF SERVICE