1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
3   Telephone:   213.629.7400
    Facsimile:    213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

12   CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)

13              Plaintiff,

14         v.                             Consolidated with
                                          Case No. CV 04-09059
15   MATTEL, INC., a Delaware             Case No. CV 05-2727
     corporation,
16                                        **PHASE 2 DISCOVERY MATTER**
                Defendant.
17                                        **ORDER NO. 8, REGARDING:**

18                                        ***EX PARTE* APPLICATION OF
                                          MATTEL, INC. FOR AN ORDER
19                                        DEEMING LEXINGTON
                                          FINANCIAL, LLC SERVED OR,
20                                        IN THE ALTERNATIVE, TO:
                                          (1)  COMPEL AN AUTHORIZED
21                                        REPRESENTATIVE OF
                                          LEXINGTON FINANCIAL, LLC
22                                        TO APPEAR TO ACCEPT
                                          SERVICE OF THE SUBPOENA;
23   CONSOLIDATED WITH                    OR (2)  ISSUE AN ORDER
     MATTEL, INC. v. BRYANT and           AUTHORIZING LEXINGTON
24   MGA ENTERTAINMENT, INC. v.           FINANCIAL, LLC TO BE
     MATTEL, INC.                         SERVED THROUGH THE
25                                        SECRETARY OF STATE

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                   ORDER NO. 8
                                          [Case No. CV 04-09049 SGL (RNBx)]

1    This Order sets forth the Discovery Master's ruling on the *ex parte*

2    application of Mattel, Inc. ("Mattel") filed on or about March 3, 2009 (the

3    "Application") [Docket Number 4945].

4        The Discovery Master determines that it is not necessary to conduct a hearing

5    prior to issuing his ruling, and notes that the interested parties have provided

6    voluminous written submissions, including an Opposition brief and a Reply brief,

7    together with declarations attaching various items of documentary evidence.

8    Having considered all of the submitted papers, the Discovery Master rules as

9    follows.

10   **I.    RELIEF SOUGHT BY MATTEL**

11       In the Application, Mattel seeks an order deeming Lexington Financial, LLC

12   to have been validly served with a subpoena on the grounds that Mattel "personally

13   served a copy of the subpoena on [its] agent," (Application, p. 8), and "transmitted

14   a copy of the subpoena to Lexington, at Lexington's counsel's request," (*Id.*, p. 9).

15       In the event such service is deemed insufficient for any reason, Mattel

16   alternatively seeks an order (1) compelling "Lexington to produce an authorized

17   representative to appear on a date certain at the Federal Courthouse in Los Angeles

18   . . . to accept service of the subpoena on Lexington's behalf," (*Id.*, p. 11), or

19   (2) allowing Mattel to serve "Lexington via the California Secretary of State," (*Id.*,

20   p. 12).

21       Finally, Mattel argues in footnote 48 of the Application (and again in its

22   Reply) that if all of the foregoing requests are denied, then the Discovery Master

23   should order "Lexington to disclose a valid e-mail address for service purposes"

24   and permit service via email under Federal Rule of Civil Procedure 4(f)(3).  (*Id.*,

25   p. 12; Reply, pp. 12 – 14).

26   **II.   OPPOSITION OF LEXINGTON FINANCIAL LIMITED**

27       In its Opposition, Lexington Financial Limited ("Lexington Limited") asserts

28   that the Application should be denied on various grounds.  First, Lexington Limited

1   argues that Mattel "failed to provide the requisite notice [of the Application] under

2   Local Rules 7-19 and 7-19.1 and [the Court's] Standing Order."  (Opposition, p.

3   10).  Second, Lexington Limited argues that there is no "good cause" justifying a

4   departure from the regular noticed motion procedures.  (*Id.*, pp. 6 – 9).  Third,

5   Lexington Limited argues that the subpoena served by Mattel is invalid because it

6   is directed to "Lexington Financial, LLC" as opposed to Lexington Financial

7   Limited.  (*Id.*, p. 12).  Fourth, Lexington Limited argues that Mattel has not effected

8   service of the subpoena because the individual whom it claims to have personally

9   served (i.e., Fred Mashian) is not an authorized agent for service of process, and

10  Mattel's email transmission of the subpoena to Lexington Limited's counsel (i.e.,

11  Bingham McCutchen LLP) does not constitute proper service.  (*Id.*, pp. 13 – 16).

12  Fifth, Lexington Limited argues that the alternative relief requested in the

13  Application should be denied because the Discovery Master does not have authority

14  to (1) compel an overseas entity to appear and accept service in California or

15  (2) permit Mattel to serve Lexington Limited via the California Secretary of State.

16  (*Id.*, pp. 16-19).  Finally, Lexington Limited argues that Mattel's request that the

17  Discovery Master authorize service of the subpoena via e-mail is inconsistent with

18  the Federal Rules of Civil Procedure and conflicts with "the applicable international

19  laws and treaties."  (*Id.*, p. 19 n. 3).

20  **III.   DISCUSSION**

21       **A.   Mattel's Compliance With The Applicable Procedures**

22       Because Lexington Limited's procedural arguments could dispose of all

23  outstanding issues, the Discovery Master addresses those arguments first.

24            **1.   Local Rule 7-19 And The Court's Standing Order**

25       Lexington Limited argues that Mattel failed to comply with Local Rule 7-19

26  and the Court's Standing Order by, among other things, failing to advise Lexington

27  Limited of the date, time and substance of the Application.  (Opposition, pp. 9 –

28  10).  However, Local Rule 7-19 and the Court's Standing Order do not apply to

1  discovery disputes in this case.  As the Discovery Master has previously ruled, the

2  applicable procedure is the one adopted by the Court in its order appointing a

3  discovery master dated December 6, 2006 ("Discovery Master Order").[1]  Because

4  the Discovery Master Order provides, in relevant part, that a party[2] may seek

5  immediate "resolution of a dispute upon shortened time upon a showing of good

6  cause why a party would be prejudiced absent prompt resolution," (Discovery

7  Master Order, pp. 4 – 5), its procedures replace those set forth for *ex parte*

8  applications in Local Rule 7-19 and the Court's Standing Order.[3]  (*Id.*, p. 4).

9              **2.      The Discovery Master Order's Good Cause Requirement**

10             Under the Discovery Master Order, Mattel had an affirmative obligation to

11  demonstrate that "good cause" exists for hearing the pending matter "on shortened

12  time" and that it will "be prejudiced absent prompt resolution" of the issue.  (*Id.*,

13  pp. 4 – 5).  No such showing has been made here.

14             In the introductory section of its Application preceding the Memorandum of

15  Points and Authorities, Mattel states in a single paragraph that "good cause exists to

16  seek . . . relief on an ex parte basis" for three reasons.  (Application, p. 1 of the

17  notice section).  First, Mattel argues that emergency relief is necessary in light of

18  the "Phase 2 discovery [schedule] and trial [date] set by" the Court.  (*Id.*).  Second,

19  Mattel argues that exigent circumstances exist because it "has pending motions

20  seeking the appointment of a receiver."  (*Id.*).  Finally, Mattel claims that good

21  cause exists to seek the requested relief because "MGA will likely seek another

22  stay" of this case.  (*Id.*).

23  _____

[1] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a
24  discovery master for Phase 2 of this litigation.  (*See* Court's Order dated January 6, 2009, p. 2 ["The Discovery
Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]).

25  [2] Because the Discovery Master Order provides that "[a]ll third parties subject to discovery requests . . . in this
litigation shall be bound by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that order
26  applies to Lexington Financial Limited.  (*Id.*, p. 4).

27  [3] The Discovery Master reaches this conclusion even though Mattel also apparently believed that Local Rule 7-19
applies to discovery disputes to be heard by the Discovery Master.  (Application, p. 1of the notice section [stating
28  that Mattel "respectfully applies *ex parte*, pursuant to Local Rule 7-19, for an order . . ."]).

1    That is the full extent of Mattel's attempt to satisfy its burden to establish

2    good cause.  The Memorandum of Points and Authorities contains no argument,

3    authority, or citation to evidence supporting these three grounds.

4    With respect to the first ground, Mattel does not adequately demonstrate why

5    a discovery cut-off date that looms 8 months away or a trial date that is more than

6    12 months in the future gives rise to an emergency requiring immediate resolution.

7    Mattel merely argues in its Reply that if it "is forced to go through the Hague

8    Convention to serve Lexington, that process could take months or longer."  (Reply,

9    p. 8).  But the eight months between now and the discovery cut-off should provide

10   Mattel ample time to properly serve Lexington Limited in compliance with any

11   applicable international law.  Accordingly, there is no immediate concern — at

12   least at this stage of the litigation — that Lexington Limited may "run out" the

13   discovery clock.  (*Cf. Mission Power Engineering Co. v. Continental Cas. Co.*, 883

14   F. Supp. 488, 492 (C.D. Cal. 1995).

15   Further, Mattel does not demonstrate any exigency that makes it imperative

16   for Mattel to obtain the information sought in the subpoena on an expedited basis.

17   For instance, Mattel does not explain how the information sought bears on its

18   pending motion for the appointment of a receiver, or the possibility that MGA may

19   seek a stay at some unknown point in the future.

20   In its Reply, Mattel argues for the first time that "ex parte relief is necessary

21   to prevent the destruction of documents."  (*Id.*, p. 6 – 7).  However, Mattel submits

22   no evidence warranting such an assertion.  That *MGA-affiliated entities* may have

23   previously destroyed evidence in this case is an insufficient basis to conclude at this

24   point and on this record that *Lexington Limited* has engaged or may engage in

25   wrongdoing that necessitates emergency action now.  Central District of California

26   courts have held the reasons for filing an *ex parte* application "must be supported

27   by . . . affidavits or declarations whose contents would be admissible if the

28   deponents, affiants, or declarants were testifying in court."  (*Mission Power*

1   *Engineering Co.*, 883 F. Supp. at 492).

2       The Discovery Master, like the Court,[4] is not disposed to grant relief based

3   on new arguments raised for the first time at the reply stage, particularly when those

4   arguments could have been raised in the moving papers.  Accordingly, Mattel's

5   "destruction of evidence" argument is also barred procedurally.[5]  (*See*, *e.g.*, *United*

6   *States v. Boyce*, 148 F.Supp.2d 1069, 1085 (S.D.Cal.2001); *Leick v. Hartford Life*

7   *and Acc. Ins. Co.,* 2007 WL 1847635 at *1, n. 1 (E.D.Cal. 2007); *Stewart v.*

8   *Wachowski,* 2004 WL 2980783, at *11 (C.D.Cal. Sept. 28, 2004); *Hamilton v.*

9   *Willms,* 2007 WL 2558615, *11 (E.D.Cal.2007); *see also United States v. Cox,* 7

10  F.3d 1458, 1463 (9th Cir.1993); *United States v. Wright,* 215 F.3d 1020, 1030 n. 3

11  (9th Cir.2000)).[6]

12      **B.**   **Defects On The Face Of The Subpoena**

13      Mattel's Application must be denied on the additional ground that the

14  subpoena Mattel seeks to enforce was not directed to the correct entity:  Lexington

15  Financial Limited.  Rather, the subpoena is addressed to *Lexington Financial, LLC*.

16  According to Lexington Limited, there is no entity by that name.  (Opposition, p.

17  12).

18      The UCC Financing Statement Mattel cites throughout its brief (and which it

19

20  [4] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not

21  change [its] ultimate conclusion."

22  [5] The Discovery Master acknowledges that Mattel raised its destruction of evidence argument when the good cause issue was briefly discussed at the hearing before him on March 4, 2009.  However, that argument still came after

23  Mattel filed its Ex Parte Application.

24  [6] Although the Discovery Master could deny the Application on the ground that no good cause exists, this ruling also addresses the merits of the application, for three reasons.  First, the distinction between a regular noticed motion and

25  an *ex parte* application is diminished in this case, because the Discovery Master Order only gives a party opposing a regular noticed motion five court days to respond, (Discovery Master Order, p. 4), and Lexington Limited was

26  afforded four court days to file its Opposition to the Application, (Reply, p. 9).  Thus, as a practical matter, Lexington Limited had only one less day to respond to the Application than it would have had in the event the motion been

27  brought on a noticed basis.  Second, denying the Application on procedural grounds would likely result in another application seeking the same relief, requiring the parties to re-state their positions in a new round of briefing on what

28  is essentially the same subject matter.  Third, addressing the merits of the Application does not alter the outcome of the ruling.

apparently used to locate Fred Mashian) states that the organization's name is "Lexington Financial Limited, a Nevis company." (Declaration of Jon Corey, Ex. 1). On that basis, Mattel knew or should have known the correct entity at the time Mattel filled out the subpoena.

This defect is sufficient grounds for denying the Application. (See Fed. R. Civ. P. 45(a)(1)(A)(iii) ["Every subpoena must . . . (iii) command each person to whom it is directed . . ."]).

## C.   Defects In The Service Of The Subpoena

### 1.   Mattel's Attempted Service Of The Subpoena On Fred Mashian.

In its Application, Mattel argues that it properly served Lexington Limited's agent, Fred Mashian. (Application, pp. 8 – 9). But delivering a copy of the subpoena to Mr. Mashian could not effect service on Lexington Limited unless he were "an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . ." Fed. R. Civ. P. 4(h).

Here, Mattel concedes that it "does not know Mr. Mashian's specific position at Lexington." (Application, p. 8). Mr. Mashian has submitted a declaration in which he testifies as follows:

- "I am not, and never have been, an officer, director, partner, member employee or agent of LEXINGTON FINANCIAL LIMITED," (Declaration of Fred Mashian, ¶ 3);

- "I am not, and never have been, the agent for service of process for LEXINGTON FINANCIAL LIMITED," (*Id*.); and

- I was not authorized to accept service of the Subpoena on behalf of LEXINGTON FINANCIAL LIMITED, nor have I ever been authorized to accept service of a subpoena on behalf of LEXINGTON

//

//

1   FINANCIAL LIMITED,"[7] (Id.)

2       In light of the foregoing testimony, which Mattel does not at this time

3   dispute, there is no showing that Mr. Mashian was (or is) an agent of Lexington

4   Limited authorized to accept service on its behalf.[8]

5       **2.    Mattel's Purported Service Of The Subpoena On Bingham**

6       **McCutchen LLP.**

7       Mattel also argues that it effectuated service by electronically transmitting a

8   copy of the subpoena to Lexington Limited's counsel in this matter, Bingham

9   McCutchen LLP.  (Application, pp. 9 – 10).  Specifically, Mattel claims that, on or

10  about February 12, 2009, Peter "Villar noted his understanding that Mattel had

11  'served Mr. Mashian and Lexington Financial with subpoenas.'"  However,

12  Mr. Villar "indicated that the copies which his clients had forwarded to him were

13  missing the attachments and therefore requested that Mattel's counsel send him

14  additional copies of the subpoenas."  (*Id.*, p. 7 [emphasis omitted]).  Because

15  Mr. Villar requested and received copies of the subpoenas (*Id.*), Mattel argues that

16  his conduct should be construed as an admission that his client, Lexington Limited,

17  had been properly served.

18      There are two problems with this argument.  First, contrary to Mattel's

19  assertions, Mr. Villar did not specifically admit in his February 12, 2009 e-mail that

20  service had been effectuated on Lexington Limited.  Rather, in that e-mail, he stated

21  that he "*believe*[*d*] [Mattel's counsel] served Lexington Financial with subpoenas."

22  (Declaration of Jon Corey in Support of Ex Parte Application, Ex. 11 [emphasis

23  added]).  Mr. Villar's February 12, 2009 e-mail to Mattel's counsel further clarified

24  that he was not conceding service had been accomplished on Lexington Limited

25

26  [7] Mr. Mashian further declared that he has "no knowledge of . . . Lexington Financial, LLC" and has "never been authorized to accept service [on behalf of] . . . any such entity."  (*Id.*, ¶ 4).

27  [8] Mattel filed evidentiary objections to two statements included in the Declaration of Fred Mashian.  (*See* Objections to Declaration of Fred Mashian, p. 2).  Because the disputed statements alone are unnecessary to the Discovery Master's analysis, it is unnecessary to rule on the objections.

28

1    since he requested, as the part of the final sentence of his e-mail, all "documents

2    you [i.e., Mattel's counsel] believe were served on Mr. Mashian and Lexington

3    Financial . . ."   (*Id.*).   Thus, Mr. Villar's request could reasonably be construed to

4    be seeking all of the relevant information from Mattel so that he could assess

5    whether service had in fact taken place.  Mr. Villar subsequently advised Mattel's

6    counsel, on or about February 23, 2009, that the service of the subpoena on

7    Mr. Mashian was invalid to effectuate service on Lexington Limited.  (*Id.*, Ex. 13

8    ["We understand that you also attempted to serve Mr. Mashian with a subpoena to

9    Lexington Financial, LLC.  Mr. Mashian advised us that he is not the agent for

10   service of process for any such entity."]).

11   Based on the current record, it further appears that neither Bingham

12   McCutchen LLP nor Mr. Villar, in his individual capacity, is Lexington Limited's

13   authorized agent for service of process.  Nor were they ever authorized to accept

14   service of the subpoena.  (Declaration of Peter Villar, ¶ 6).   Because these facts are

15   undisputed, sending the subpoena to Lexington Limited's attorneys could not, by

16   itself, effect service.  (See, e.g., *Roofers Local 149 Sec. Benefit Trust Fund v.*

17   *Milbrand Roofing Group, Inc.*, 2007 WL 2421479, *1 ["Regarding the Rule 45

18   subpoena on [a] non-party . . . it was not properly served by mailing of the

19   subpoena to the person believed to be her attorney."]).

20   **D.    Alternative Relief Sought By Mattel**

21   **1.    Order Compelling Lexington Limited To Accept Service.**

22   Mattel argues that, in the event the Discovery Master finds that the subpoena

23   was not properly served on Lexington Limited, he should order an authorized

24   representative of Lexington Limited to appear in a Los Angeles courthouse at a

25   specified time and accept service.  (Application, p. 11).

26   Mattel cites no authority supporting the proposition that a discovery master

27   can issue orders requiring foreign non-parties to appear in the United States and

28   accept service of process.  Nor does Mattel establish that, under the facts and

1   circumstances here, the requested relief complies with Constitutional due process
2   protections afforded to foreign entities and individuals.  Accordingly, the request is
3   denied.

**2.      Service of Lexington Limited Via The California Secretary Of State.**

6        Mattel next requests an order permitting it to serve Lexington Limited via the
7   California Secretary of State.  (*Id.*, p. 12).  In support of that request, Mattel cites
8   various sections of the California Corporations Code which apply to foreign
9   corporations which transact intrastate business in California.  However, Mattel fails
10  to show that Lexington Limited engages in such business activity.[9]

11       The only evidence in the record that Lexington Limited is transacting
12  intrastate business in California is a one-page UCC Financing Statement and the
13  Declaration of Fred Mashian.  (Reply, pp. 11 – 12; Declaration of Fred Mashian,
14  ¶ 6).  Relying on this evidence, Mattel claims that Lexington Limited:

> has (1) agreed to do business with and extended a loan to Vision
> Capital, LLC—a company purporting to have a Los Angeles
> business address and is tied to Larian family members here in
> California; (2) took collateral in the assets of Vision Capital (a
> [Delaware] company with an ostensible California address) that
> [h]as ownership in another California company, Omni 808; (3)
> filed a UCC financing statement in California, purporting to
> perfect its secured interest in Omni 808 and thereby availing itself
> of the protections of the California Commercial Code; (4) had the
> loan documents drafted and prepared in California; and (5) hired
> California attorneys [i.e., Fred Mashian] [f]rom 'time to time' to
> conduct business beyond merely resisting jurisdiction in this case.

(Reply, p. 11 [footnotes and citations omitted]).

       As the quoted passage demonstrates, all of the purported evidence cited by
Mattel relates to a single business transaction (i.e., a loan from Lexington Limited
to Vision Capital, LLC).  A single transaction, standing alone, is insufficient as a

---

[9] Mattel notes that Lexington Limited is not registered to transact business in California.

matter of law to establish that Lexington Limited transacts intrastate business in California. Rather, as both Mattel and Lexington Limited acknowledge in their respective papers, a company only transacts intrastate business if it enters into "repeated and successive transactions" in this state. (Opposition, p. 18; Reply, pp. 11 – 12). Indeed, the parties cite the same case for this proposition (i.e., *LeVecke v. Griesedieck Western Brewery Co.*, 233 F.2d 772 (9th Cir. 1956)), which holds that:

> Sporadic and transient sales promotional activities of a corporate officer such as occurred here do not constitute the conducting of intrastate business. . . . [T]he solicitation of orders can only be sufficient to meet the requirements of 'doing business' where there is a continuing and substantial course of business.

(*Id.*, at 776).

Because Mattel has not demonstrated that Lexington Limited has entered into "repeated and successive transactions" of business in California,[10] California Corporations Code § 2100 does not apply. Consequently, the Discovery Master declines to order service upon Lexington Limited by effecting service upon the California Secretary of State.

### 3. Service Of Lexington Limited Via E-mail.

Mattel contends that Lexington Limited should be ordered to provide an e-mail address for the purpose of allowing Mattel to serve Lexington Limited with the subpoena electronically. (Application, p. 12; Reply, pp. 12 – 14). Mattel supports this argument by citing Federal Rule of Civil Procedure 4(f)(3) and asserting that it permits service of a subpoena in a foreign country "by other means not prohibited by international agreement, as the court orders." (Application, p. 12, n. 48; Reply, p. 12).

On its face, however, Rule 4(f)(3) requires that Mattel demonstrate that the "other means" of service is "not prohibited by international agreement." Fed. R.

---

[10] Lexington Limited denies that it regularly transacts business in California. (Opposition, p. 18).

1    Civ. P. 4(f)(3).   This Mattel has not done.  In fact, Mattel's Reply suggests that

2    Mattel could have an obligation "to go through the Hague Convention."  (Reply,

3    p. 8).  Accordingly, this case is unlike the case Mattel relies upon (i.e., *Rio*

4    *Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1014 (9th Cir.2002),

5    and is instead analogous to the situation present in *Agha v. Jacobs*, 2008 WL

6    2051061, *1-*2 (N.D.Cal. May 13, 2008) (holding that "Agha has failed to meet his

7    burden of showing that the 'other means' of service he proposes to utilize are

8    permissible under an applicable 'international agreement'-- the Hague

9    Convention.").

10       Because Mattel does not demonstrate that service by e-mail is not prohibited

11   by international law in this instance, Mattel's request to pursue service by e-mail

12   under Rule 4(f)(3) is denied.

13   **IV.   <u>DISPOSITION</u>**

14       For all of the foregoing reasons, Mattel's *Ex Parte* Application is **DENIED**.

15

16   Dated:  March 16, 2009

17

18

19                                        By:          /s/ Robert C. O'Brien

20                                                 ROBERT C. O'BRIEN
                                                 Discovery Master
21

22

23

24

25

26

27

28