1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                         EASTERN DIVISION

11

12 CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

13          Plaintiff,                     Consolidated with Case Nos. CV 04-
                                           09059 and CV 05-02727
14     vs.
                                           **DISCOVERY MATTER**
15
   MATTEL, INC., a Delaware               **[To Be Heard By Discovery Master
16 corporation,                            Robert O'Brien]**

17          Defendant.                     SUPPLEMENTAL DECLARATION
                                           OF SCOTT WATSON IN SUPPORT
18                                         OF MATTEL, INC.'S MOTION TO
                                           COMPEL RESPONSES TO
19 ────────────────────────               CONTENTION INTERROGATORIES
                                           BY MGA ENTERTAINMENT, INC.
20 AND CONSOLIDATED ACTIONS                AND FOR SANCTIONS

21                                         Date:
                                           Time:
22                                         Place:

23                                         **Phase 2**
                                           Discovery December 11: 2009
24                                         Pre-trial Conference: March 1, 2010
                                           Trial Date: March 23, 2010
25

26

27

28

# **DECLARATION OF SCOTT WATSON**

I, Scott Watson, declare as follows:

1. I am a member of the bar of the State of California. I am a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2. Attached hereto as Exhibit 1 is a true and correct copy of the Motion Of MGA Parties For Clarification Regarding Portions Of February 15, 2008 Order Granting In Part And Denying In Part Mattel's Motion To Compel Response To Interrogatory Nos 27-44 And 46-50 By MGA Parties, dated March 3, 2008.

3. Attached hereto as Exhibit 2 is a true and correct copy of the Civil Minutes - General Re: Mattel's Motion to Enforce the Court's Order on March 23, 2005 and for Sanctions, dated June 16, 2006.

4. Attached hereto as Exhibit 3 is a true and correct copy of Order No. 1, Regarding Procedure Governing Motions, dated February 12, 2009.

5. Attached hereto as Exhibit 4 is a true and correct copy of the Order Granting Joint Motion for Protective Order Regarding Mattel's Interrogatories, dated September 5, 2007.

6. Attached hereto as Exhibit 5 is a true and correct copy of Order Granting Mattel's Motion to Compel Production of Documents, dated January 25, 2007.

1         7.    Attached hereto as Exhibit 6 is a true and correct copy of MGA's

2    First Set of Interrogatories to Mattel, Inc., dated February 4, 2005.

3

4         8.    Attached hereto as Exhibit 7 is a true and correct copy of MGA's

5    Second Set of Interrogatories to Mattel, Inc., dated December 4, 2007.

6

7        I declare under penalty of perjury under the laws of the United States that

8    the foregoing is true and correct.

9        Executed on March 18, 2009 at Los Angeles, California.

10

11           /s/ Scott L. Watson
        Scott L. Watson

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

1   THOMAS J. NOLAN (Bar No. 66992)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2   300 South Grand Avenue
    Los Angeles, California 90071-3144
3   Telephone: (213) 687-5000
    Facsimile: (213) 687-5600
4   E-mail:    tnolan@skadden.com

5   RAOUL D. KENNEDY (Bar No. 40892)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6   Four Embarcadero Center, 38th Floor
    San Francisco, California 94111-5974
7   Telephone: (415) 984-6400
    Facsimile: (415) 984-2698
8   E-mail:    rkennedy@skadden.com

9   Attorneys for Cross-Defendants
    MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
10  MGAE De Mexico, S.R.L. De C.V., and ISAAC LARIAN

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13                    EASTERN DIVISION

14  CARTER BRYANT, an individual          )  CASE NO. CV 04-9049 SGL (RNBx)
                                          )  Consolidated with Case No. 04-9059
15                Plaintiff,              )  and Case No. 05-2727
                                          )
16        v.                              )  DISCOVERY MATTER
                                          )  [To be heard by Discovery Master
17  MATTEL, INC., a Delaware              )  Hon. Edward A. Infante (Ret.)]
    corporation                           )
18                                        )  NOTICE OF MOTION AND
                  Defendant.              )  MOTION OF MGA PARTIES FOR
19                                        )  CLARIFICATION REGARDING
                                          )  PORTIONS OF FEBRUARY 15,
20  Consolidated with MATTEL, INC. v.     )  2008, ORDER GRANTING IN PART
    BRYANT and MGA                        )  AND DENYING IN PART
21  ENTERTAINMENT, INC. v.                )  MATTEL'S MOTION TO COMPEL
    MATTEL, INC.                          )  RESPONSES TO
22                                        )  INTERROGATORY NOS. 27-44
                                          )  AND 46-50 BY THE MGA PARTIES
23
                                             Date: TBD
24                                           Time: TBD
                                             Place: JAMS
25                                           Phase 1:
                                             Discovery Cut-Off:      January 28, 2008
26                                           Pre-Trial Conference: May 5, 2008
                                             Trial Date:             May 27, 2008
27

28

MGA PARTIES' MOTION FOR CLARIFICATION OF FEB. 15, 2008, ORDER

EXHIBIT ___1___
PAGE ___3___

1

## NOTICE OF MOTION

2

3 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

4 |    PLEASE TAKE NOTICE that MGA Entertainment, Inc. ("MGA"), MGA

5 | Entertainment (HK) Limited ("MGA HK"), MGAE De Mexico, S.R.L. De C.V.

6 | ("MGA Mexico") and Isaac Larian (collectively, the "MGA Parties") hereby move

7 | the Court for an order clarifying it's February 15, 2008, Order Granting in Part and

8 | Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44

9 | and 46-50 by the MGA Parties (the "February 15, 2008, Order") to confirm that any

10 | obligation under the Court's February 15, 2008, Order to provide supplemental

11 | responses to interrogatories that seek discovery regarding Phase 2 issues is stayed by

12 | operation of the February 4, 2008, Minute Order of the Honorable Stephen Larson in

13 | this action staying Phase 2 discovery. In particular, the MGA Parties seek an order

14 | confirming that (i) any obligation of the MGA Parties under the February 15, 2008,

15 | Order to respond to Interrogatories Nos. 41 (other than as to Carter Bryant), 43 and

16 | 44 is stayed by Judge Larson's February 4, 2008, Minute Order on the ground that

17 | these interrogatories seek Phase 2 discovery, and (ii) any obligation of MGA Mexico

18 | under the February 15, 2008, Order to provide supplemental interrogatory responses

19 | is stayed by operation of Judge Larson's February 4, 2008, Minute Order on the

20 | ground that discovery directed to MGA Mexcio, which was formed in April 2004,

21 | constitutes Phase 2 discovery.

22 |    This Motion is based upon this Notice of Motion and accompanying

23 | memorandum of points and authorities; the accompanying Declaration of Timothy A.

24 | Miller filed concurrently herewith; the records and files of this Court; and any other

25 | matter of which the Court may take judicial notice. Discovery Master Hon. Edward

26 | Infante (Ret.) will preside over the hearing on this Motion, which will occur on a

27 | date and at a time and manner to be determined by the Discovery Master.

28

- i -

EXHIBIT __1__
PAGE __4__

1    Statement of Rule 37-1 Compliance.  Counsel for the MGA Parties met and

2   conferred with counsel for Mattel on February 25, 27 and 29, 2008, but were unable

3   to reach agreement on the issue addressed in this motion.  (Miller Decl. ¶¶ 11-13 and

4   Exs. J & K.)

5

6   DATED:  March 3, 2008              SKADDEN, ARPS, SLATE, MEAGHER &
                                       FLOM, LLP
7

8                                      By: _____
                                              RAOUL D. KENNEDY
9
                                       Attorneys for Cross-Defendants
10                                     MGA Entertainment, Inc., MGA
                                       Entertainment (HK) Limited,
11                                     MGAE De Mexico, S.R.L. De C.V.,
                                       and ISAAC LARIAN
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- ii -
MGA PARTIES' MOTION FOR CLARIFICATION OF FEB. 15, 2008, ORDER

EXHIBIT __1__
PAGE __5__

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **INTRODUCTION**

3        On February 15, 2008, this Court issued its Order Granting in Part and

4    Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44

5    and 46-50 by the MGA Parties[1] (the "February 15, 2008, Order").  In that order, the

6    Court denied Mattel's motion to compel, in part, and compelled the MGA Parties to

7    provide supplemental responses to Interrogatories Nos. 38, 40, 41 (as limited by the

8    Court), 43-44, and 47.  (February 15, 2008, Order at 10-12, 18-20, Miller Decl. Ex.

9    C.)  The MGA Parties respectfully request that the Court clarify its February 15,

10   2008, Order to make clear that (i) any obligation of the MGA Parties under the

11   February 15, 2008, Order to respond to Interrogatories Nos. 41 (other than as to

12   Carter Bryant), 43 and 44 is stayed by Judge Larson's February 4, 2008, Minute

13   Order staying Phase 2 discovery, and (ii) any obligation of MGA Mexico under the

14   February 15, 2008, Order to provide supplemental interrogatory responses is also

15   stayed because discovery directed to MGA Mexcio, which was formed in April 2004,

16   constitutes Phase 2 discovery.

17   **PERTINENT FACTUAL BACKGROUND**

18       On December 20, 2007 Mattel filed its Motion to Compel Responses to

19   Interrogatory Nos. 27-44 and 46-50 By the MGA Parties (the "Motion to Compel").

20   The Motion to Compel was fully briefed by January 7, 2008.  (Miller Decl. ¶ 2.)

21       On February 4, 2008, Judge Larson issued a Minute Order which provided, in

22   part, that: "All discovery related to Phase 2 . . . is STAYED until further order of the

23   Court."  (Feb. 4, 2008, Minute Order at 3, ¶ 4, Miller Decl. Ex. A.)

24       At a February 25, 2008, hearing, Judge Larson reconfirmed his commitment to

25   the stay of Phase 2 discovery:

26   _____

27   [1]     The "MGA Parties" are MGA Entertainment, Inc. ("MGA"), MGA
     Entertainment (HK) Limited ("MGA HK"), MGAE de Mexico, S.R.L. de C.V.
28   ("MGA Mexico") and Isaac Larian.

                                    -1-

EXHIBIT ___1___
PAGE ___6___

1  MR. COREY, IF I LIFT THE STAY ON PHASE TWO
   DISCOVERY, I CAN'T IMAGINE WHAT THAT
2  WOULD DO. I MEAN, POOR JUDGE INFANTE. I
   JUST COULDN'T DO THAT TO HIM. I JUST
3  COULDN'T. THAT WOULD DERAIL THIS
   LITIGATION. BASED ON HOW -- AND I'M NOT
4  POINTING ANY FINGERS HERE, THIS IS JUST
   ACROSS THE BOARD -- HOW DISCOVERY HAS
5  BEEN CONDUCTED, THE MILLIONS OF
   DOCUMENTS; THE, I DON'T KNOW, UNTOLD
6  NUMBER OF DEPOSITIONS AND THE
   INTERROGATORIES AND RFA'S; TO LIFT STAY
7  TWO DISCOVERY DURING THIS CRITICAL PERIOD
   AS WE'RE TRYING TO DO THE MOTIONS, THE
8  PRETRIAL ORDERS, AND GET READY FOR THE
   FIRST TRIAL IN MAY, WHICH IS GOING FORWARD
9  IN MAY, TO START IN ON FULL SCALE PHASE
   TWO DISCOVERY, THAT'S UNFATHOMABLE.

10 (Reporter's Tr. of Proceedings, Feb. 25, 2008, at 30:7-19, Miller Decl. Ex. D).

11     Meanwhile, on February 11, 2008, this Court held a hearing on the Motion to

12 Compel along with 10 other pending motions. (Miller Decl. ¶ 4.) At the February

13 11, 2008, hearing, counsel for the MGA Parties informed the Court of the stay of

14 Phase 2 discovery:

15     ON A PROCEDURAL FRONT ALSO, ON FEBRUARY
16     4, JUDGE LARSON CLARIFIED, AND THAT
       CLARIFICATION WAS NEEDED, THAT PHASE II
17     DISCOVERY IS BIFURCATED. AND I SUBMIT, AT
       LEAST AS TO QUESTIONS 43, 44, 48, 49, 50, ARE
18     CLEARLY ALL PHASE II, AND THERE MAY BE
       PORTIONS OF SOME OF THE OTHERS THAT ARE
19     AS WELL.

20 (Telephonic Tr. of Proceedings, Feb. 11, 2008, at 34:6-12, Miller Decl. Ex. B.)

21     As mentioned above, on February 15, 2008, this Court issued its Order

22 Granting in Part and Denying in Part Mattel's Motion to Compel Responses to

23 Interrogatory Nos. 27-44 and 46-50 by the MGA Parties. That order does not

24 expressly address the effect of Judge Larson's stay of Phase 2 discovery.

25     As discussed in more detail below, Interrogatory Nos. 41 (except with respect

26 to Carter Bryant), 43 and 44 seek discovery related to Phase 2 and, therefore, any

27 further obligation to respond to those interrogatories has been stayed by Judge

28 Larson. Interrogatory No. 41 seeks information about former Mattel employees

-2-

EXHIBIT ___1___
PAGE ___7___

1 | hired by MGA to support Mattel's claims of trade secret misappropriation, and

2 | Interrogatories Nos. 43-44 relate to MGA's Phase 2 claims of copying and

3 | infringement by Mattel. The February 15, 2008, Order also compels additional

4 | responses from MGA Mexico. That entity did not come into existence until April

5 | 2004 and thus all claims against that entity relate to Phase 2.

6 |     As Mattel argued in a recent filing, Judge Larson "clarified what was in Phase

7 | 1 and Phase 2 in [his] July 2, 2007 Minute Order." (Mattel Inc.'s Opp'n to MGA

8 | Defendants' Ex Parte Application to Compel the Depositions of Matthew Bousquette

9 | and Tina Patel at 9:7-8, Miller Decl. Ex. E.) Mattel quoted the following passage

10 | from Judge Larson's order:

11 |         Phase 1(a) would be limited to issues surrounding Carter
Bryant's employment with Mattel, and how those issues
12 |         impact the ownership of certain original Bratz drawings,
while Phase 1(b) would address approximately two-
13 |         hundred Bratz products that are potentially derivative of
the original drawings. This approach has the appeal of
14 |         limiting Phase 1(a) to discrete issue of the ownership of the
original Bratz drawings. A finding that Bryant owns these
15 |         original drawings in Phase 1(a) has the potential to
eliminate the need for Phase 1(b).

16 |

17 | (July 2, 2007 Minute Order at 2, Miller Decl. Ex. F.)

18 |     The information sought by Mattel in Interrogatory Nos. 41 (except with

19 | respect to Carter Bryant), 43 and 44 has nothing to do with Carter Bryant's

20 | employment with Mattel or the ownership of Carter Bryant's Bratz drawings. Mattel

21 | named MGA Mexico as a defendant in its counterclaims of trade secret

22 | misappropriation, clearly a Phase 2 claim. Accordingly, the MGA Parties

23 | respectfully request an order clarifying the February 15, 2008, Order to make clear

24 | that any obligation of the MGA Parties' under that order to supplement their

25 | responses to Interrogatory Nos. 41 (except with respect to Carter Bryant) and 43-44,

26 | and MGA Mexico's obligation to further respond to any of Mattel's interrogatories,

27 | is stayed pursuant Judge Larson's February 4, 2008, Minute Order.

28 |

MGA PARTIES' MOTION FOR CLARIFICATION OF FEB. 15, 2008, ORDER

EXHIBIT   1
PAGE   8

## ARGUMENT

I.  **THE COURT SHOULD CLARIFY ITS FEBRUARY 15, 2008, ORDER TO CONFIRM THAT ANY OBLIGATION IN THAT ORDER TO PROVIDE DISCOVERY RELATED TO PHASE 2 IS STAYED UNDER JUDGE LARSON'S FEBRUARY 4, 2008, MINUTE ORDER**

The MGA Parties respectfully submit that Interrogatories Nos. 41 (except with respect to Carter Bryant), 43 and 44, and all interrogatories to the extent they are directed to MGA Mexico, relate to Phase 2 and, therefore, any further response to those interrogatories has been stayed by Judge Larson.

### A.  Interrogatory No. 41

Interrogatory No. 41 seeks information concerning MGA's hiring of former Mattel employees, as follows:

> IDENTIFY all PERSONS who at any time have been employed by or under contract with MATTEL who are now or have been employed by or under contract with YOU since January 1, 1999, and, for each such PERSON, state his or her name, date of hire or effective date of contract, the date on which YOU first had contact with such PERSON regarding potential employment or contracting, the date(s) on which such PERSON was interviewed for possible employment or contracting, each title (if any) such PERSON has held while employed by or under contract with YOU, and the date of termination (if applicable).

Prior to the stay of Phase 2 discovery, the MGA Parties provided "a list of well over a hundred individuals with their position title and employment dates." (Feb. 15, 2008, Order at 10:13-14, Miller Decl. Ex. C.) The Court compelled supplemental responses to this interrogatory, in part, ordering the MGA Parties to "provide the interview dates for each of the individuals identified in their supplemental responses." (*Id.* at 11:1-2, Miller Decl. Ex. C.)

The Court based it order compelling further response to Interrogatory No. 41 on its conclusion that "[t]he interview dates are potentially relevant to Mattel's claim that the MGA parties induced former Mattel employees to abscond with Mattel's trade secrets." (*Id.* at 11:2-3, Miller Decl. Ex. C.) With the exception of Mattel's

-4-

EXHIBIT ___1___
PAGE ___9___

1 | claims that MGA misappropriated Bratz when it acquired Bratz from Carter Bryant,

2 | Mattel's claims of trade secret theft through the hiring of former Mattel employees

3 | relate to Phase 2 in that they relate to Mattel's counterclaims against the MGA

4 | Parties for trade secret misappropriation. (*See* July 2, 2007, Minute Order at 2

5 | (adopting chart of Phase 1 and Phase 2 claims proposed by Mattel at pages 8-9 of

6 | Mattel's Memorandum Regarding Trial Structure), Miller Decl. Exs. F & G.)

7 | Therefore, any further response to Interrogatory No. 41 (other than with respect to

8 | Carter Bryant) is stayed under Judge Larson's February 4, 2008, Minute Order. (The

9 | MGA Parties will provide the ordered supplemental response with respect to Carter

10 | Bryant.)

11 | **B.    Interrogatories 43 and 44.**

12 | As the Court summarized in its February 15, 2008, Order, "Interrogatory Nos.

13 | 43 and 44 request dates on which each 'concept, design, product, product packaging

14 | or other matter that [the MGA Parties] contend Mattel copied or infringed' was (1)

15 | 'conceived' and (2) 'first fixed in any tangible medium of expression' . . . ."

16 | (Feb. 15, 2008, Order at 11:8-11, Miller Decl. Ex. C.)[2] Thus, by definition,

17 |

[2]    Interrogatories Nos. 43 and 44 read, in full, as follows:

For each concept, design, product, product packaging or other matter that YOU contend MATTEL copied or infringed, including but not limited to those identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any Supplemental Responses to such Interrogatory), state the date that each such concept, design, product, product packaging or other matter was conceived, and IDENTIFY all PERSONS with knowledge of, and all DOCUMENTS that REFER OR RELATE TO, the foregoing.

For each concept, design, product, product packaging or other matter that YOU contend MATTEL copied or infringed, including but not limited to those identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any Supplemental Responses to such Interrogatory), state the date that each such concept, design, product, product packaging or other

*(cont'd)*

-5-

EXHIBIT ___1___
PAGE ___10___

1   Interrogatories Nos. 43 and 44 relate to Phase 2 because they relate to MGA's claims

2   of copying or infringement against Mattel. (*See* MGA's Complaint for False

3   Designation of Origin, Affiliation, Associate or Sponsorship (15 U.S.C. § 1125(a));

4   Unfair Competition (15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200 *et seq.*

5   and California Common Law); Dilution (15 U.S.C. § 1125(c), Cal. Bus. & Prof.

6   Code § 14330 and California Common Law); and Unjust Enrichment, at 10-26,

7   Miller Decl. Ex. H.) Judge Larson deferred all of MGA's affirmative claims against

8   Mattel to Phase 2. (July 2, 2007, Minute Order at 2 (adopting chart of Phase 1 and

9   Phase 2 claims proposed by Mattel at pages 8-9 of Mattel's Memorandum Regarding

10  Trial Structure), Miller Decl. Exs. F & G.) Therefore, any further response to

11  Interrogatory Nos. 43 and 44, which relate solely to MGA's claims against Mattel, is

12  stayed under Judge Larson's February 4, 2008, Minute Order.

13      **C.      Interrogatories to MGA Mexico**

14      Mattel does not contend that MGA Mexico was involved in the acquisition or

15  early development of Bratz, nor could it. MGA Mexico was not formed until April

16  2004, and thus was not in existence when MGA acquired Bratz in 2000 and launched

17  the first generation of Bratz in 2001. (Mattel's Counterclaim ¶ 37, Miller Decl. Ex.

18  I.) Mattel claims that MGA Mexico misappropriated Mattel trade secrets through the

19  hiring of former Mattel employees in Mexico. (*Id.*) Claims related to MGA Mexico

20  have nothing to do with the ownership of Carter Bryant's original Bratz drawings.

21  Mattel's claims of trade secret misappropriation with respect to the formation of

22  MGA Mexico have been deferred to Phase 2. (July 2, 2007, Minute Order at 2

23  (adopting chart of Phase 1 and Phase 2 claims proposed by Mattel at pages 8-9 of

24  _____

25  *(cont'd from previous page)*
        matter was first fixed in any tangible medium of expression
26      (if ever), and IDENTIFY all PERSONS with knowledge of,
        and all DOCUMENTS that REFER OR RELATE TO, the
27      foregoing.

28  (Mattel's Amended Fourth Set of Interrogatories, Miller Decl. Ex. L.)

EXHIBIT ___1___
PAGE ___11___

1 | Mattel's Memorandum Regarding Trial Structure), Miller Decl. Exs. F & G.)   Thus,

2 | discovery directed to MGA Mexico is stayed.

3 | **CONCLUSION**

4 |     For the foregoing reasons, the MGA Parties respectfully request the Court to

5 | clarify its February 15, 2008, Order to make clear that the MGA Parties' obligation

6 | to supplement their responses to Interrogatory Nos. 41 (except with respect to Carter

7 | Bryant) and 43-44, and MGA Mexico's obligation to supplement any of the

8 | interrogatories directed to it, is stayed until further order of Judge Larson lifting his

9 | stay on Phase 2 discovery.

10 |

11 | DATED: March 3, 2008

         SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

12 |

13 | By: _____
              RAOUL D. KENNEDY

14 |

15 |         Attorneys for Cross-Defendants
        MGA Entertainment, Inc., MGA

16 |          Entertainment (HK) Limited,
       MGAE De Mexico, S.R.L. De C.V.,

17 |           and ISAAC LARIAN

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

-7-

MGA PARTIES' MOTION FOR CLARIFICATION OF FEB. 15, 2008, ORDER

204355-San Francisco Server 1A - MSW

EXHIBIT ____1____

PAGE ____12____

# EXHIBIT 2

Case 2:04-cv-09059-S●●RNB    Document 230    Filed 06/●●/2006    Page 1 of 3

I hereby certify that this document was faxed
to all counsel (or parties) at their respective,
most recent fax number of record, in this action,
on this date.

DATED: 6-16-06

_____
DEPUTY CLERK

Priority ___
Send ___
Enter ___
Closed ___
JS-6 / JS-5 ___
Scan Only ✗

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES–GENERAL

Case No.  **CV 04-9059-SGL (RNBx)**                    Date: **June 16, 2006**

Title: **Mattel, Inc. v. Carter Bryant, et al.**

DOCKETED ON CM

JUN 19 2006

BY _____ 024

## DOCKET ENTRY

PRESENT:

HON. **ROBERT N. BLOCK**, UNITED STATES MAGISTRATE JUDGE

Trina DeBose                         n/a
Deputy Clerk                      Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:
None present                             None present

PROCEEDINGS:  (IN CHAMBERS)

### Mattel's Motion to Enforce the Court's Order of March 23, 2005 and for Sanctions

After reviewing the parties' respective contentions in the Joint Stipulation, the Court has concluded that neither further briefing nor oral argument will be of material assistance in determining this Motion. Accordingly, the hearing currently set for July 11, 2006 is ORDERED off calendar (see Local Rule 7-15), and the Court now rules as follows.

The consequence of Mattel not insisting on the Larian deposition going forward within 20 days of the Court's March 23, 2005 ruling is that the Court's order that MGA produce Mr. Larian for a deposition on a date mutually convenient to the parties within 20 days of the date of the ruling became subject to Judge Manella's May 20, 2005 order staying all discovery.

However, once the stay was lifted by Judge Larson on May 16, 2006, and Mattel's counsel sent his May 24, 2006 letter expressing Mattel's desire to proceed with the deposition in accordance with the terms of the Court's March 23, 2005 ruling, it again became incumbent on MGA to comply with that ruling. While it would not have been unreasonable for MGA's counsel to respond with alternative proposed dates within the 20-day time frame from receipt of Mattel's counsel's May 24, 2006 letter, insisting that Mr. Larian would not be available until July 25-26 (and not even committing to those dates as firm dates) was neither reasonable nor in compliance with the Court's original

MINUTES FORM 11
CIVIL-GEN

EXHIBIT   2
PAGE     13

Initials of Deputy Clerk _____

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

#### CIVIL MINUTES--GENERAL

Case No.:    **CV 04-9059-SGL (RNBx)**                                    **June 16, 2006**
            **Mattel, Inc. v. Carter Bryant, et al.**                        **Page 2**

------------------------------------------------------------------------------------------------

ruling.  Accordingly, Mattel's Motion is GRANTED as follows.  MGA is ORDERED
to produce Mr. Larian for a deposition either (a) on a mutually convenient date agreed
upon by the parties, or (b) if the parties are unable to agree on a mutually convenient
deposition date, then on any date noticed by Mattel provided that 10 days' notice is
given.  MGA and Mr. Larian are forewarned in advance that the Court will not tolerate
any further delaying tactics.

With respect to the sanctions issue, the Court finds that Mattel did make a good
faith effort to obtain the discovery sought without court action.  Moreover, the Court
declines to find that MGA's opposition to the motion was substantially justified or that
other circumstances here make an award of Mattel's reasonable expenses unjust.  The
Court also notes that, contrary to MGA's contention, there is no requirement under Fed.
R. Civ. P. 37(a)(4) that the prevailing party in a discovery motion show prejudice before
sanctions can be imposed on the party whose conduct necessitated the motion, the
attorney advising such conduct, or both of them.  Accordingly, the Court finds pursuant
to Fed. R. Civ. P. 37(a)(4)(A) that Mattel is entitled to an award of its reasonable
expenses incurred in making this Motion.  However, the $3,800 in expenses sought by
Mattel appears to the Court to be unreasonable and excessive.  In the Court's view, it
should not have taken more than 3 hours of associate time and 1 hour of partner time to
prepare this relatively straightforward motion, in compliance with Local Rule 37-2.  It
therefore is ORDERED that, within 10 days of this ruling, MGA's counsel pay Mattel
the sum of **$1,360**, which the Court finds to be Mattel's reasonable expenses incurred
in making this Motion.

The clerk is directed to fax courtesy copies of this Minute Order to counsel, and
to confirm telephonically their receipt of it.


cc:    Judge Larson


MINUTES FORM 11
CIVIL-GEN

EXHIBIT ___2___
PAGE ___14___

Initials of Deputy Clerk _____

# EXHIBIT 3

1    Robert C. O'Brien
     ARENT FOX LLP
2    555 West Fifth Street, 48th Floor
     Los Angeles, CA  90013-1065
3    Telephone:  213.629.7400
     Facsimile:   213.629.7401
4
     Discovery Master
5

6

7

8                    UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                      EASTERN DIVISION

11

12   CARTER BRYANT, an individual,,        Case No.  CV 04-09049 SGL (RNBx)

13                  Plaintiff,
                                           **Consolidated with**
14          v.                             **Case No. CV 04-09059**
                                           **Case No. CV 05-2727**
15   MATTEL, INC., a Delaware
     corporation,                          **PHASE II DISCOVERY MATTER**
16
                    Defendant..            **ORDER NO. 1, REGARDING:**
17
                                           **(1) PROCEDURE GOVERNING**
18                                         **    DISCOVERY MOTIONS;**
                                           **(2) PENDING DISCOVERY**
19                                         **    MATTERS;**
                                           **    and**
20                                         **(3) FURTHER/FUTURE**
                                           **    DISCOVERY MOTIONS**
21

22   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
23   MGZ ENTERTAINMENT, INC. v.
     MATTEL, INC.
24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES          LA/136065.1

                                    1

EXHIBIT __3__
PAGE __15__

1  **I.   PROCEDURE GOVERNING DISCOVERY MOTIONS**

2       **A.   Meet and Confer Requirements**

3            The parties are reminded of their obligation to comply with the briefing

4  schedule that they agreed to as set forth in the Stipulation For Appointment Of A

5  Discovery Master and Order dated December 6, 2006 (the "Order"). Specifically,

6  before filing any discovery motion, "[t]he moving party shall first identify each

7  dispute, state the relief sought and identify the authority supporting the requested

8  relief in a meet and confer letter that shall be served on all parties by facsimile or

9  electronic mail. The parties shall have five court days from the date of service of

10 that letter to conduct an in-person conference to attempt to resolve the dispute. If

11 the dispute has not been resolved within five court days after such service, the

12 moving party may seek relief from the Discovery Master by formal motion or letter

13 brief, at the moving party's option." *Id.*

14      **B.   Briefing Schedule**

15           As provided by the Order, once any such motion or letter brief is filed, "[t]he

16 opposing party shall have five court days from the date of service of the motion or

17 letter brief to submit a formal opposition or response. Any reply brief shall be

18 served within three court days from the date of service of a formal opposition or

19 response." *Id.*

20      **C.   Filing Requirements**

21           All papers submitted, from this date forward, in connection with a discovery

22 motion, opposition or response, or reply brief shall be served on the Discovery

23 Master at Arent Fox LLP, 555 West Fifth Street, 48th Floor Los Angles, California

24 90013 no later than one business day after they are filed with the Court. The

25 courtesy copies to be provided to the Discovery Master shall include the Court's

26 electronic file-stamp located at the top of each document.

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/136065.1

- 2 -

EXHIBIT ___3___

PAGE ___14___

1       **D.      Hearings on Discovery Motions**

2           1.      Unless ordered otherwise, the hearing on any discovery motion shall

3    be set by the Discovery Master on his first available date following the filing of the

4    reply brief, usually within seven (7) court days.  Unless a telephonic hearing is

5    ordered by the Discovery Master, all such hearings shall take place at the offices of

6    Arent Fox LLP located at 555 West Fifth Street, 48th Floor Los Angles, California

7    90013.  In the event the Discovery Master determines that no hearing is necessary

8    for a specified motion and the matter can be disposed of on the papers, the

9    Discovery Master shall so notify the parties.

10          2.      At least twenty-four hours prior to any hearing, counsel for the parties

11   shall each provide Ruben Hernandez, a paralegal at Arent Fox LLP, with a list of all

12   individuals who will be attending the hearing so their names can be provided to the

13   Gas Company Tower's building security.  Mr. Hernandez's email address is:

14   hernandez.ruben@arentfox.com.  The parties should also direct any questions they

15   may have regarding the use of technology or other logistics at a hearing to Mr.

16   Hernandez.

17   **II.     PENDING DISCOVERY MATTERS**

18          **A.      *Ex Parte* Application of Non-Party Entities**

19          1.      On or about February 9, 2009, Omni 808, Investors, LLC, Vision

20   Capital, LLC and Omninet Capital, LLC ("Non-Party Entities") filed an *ex parte*

21   application (the "Application") to strike the Motion to Compel Production of

22   Documents Responsive to Third-Party Subpoenas filed by Mattel, Inc. ("Mattel")

23   on or about February 4, 2009.  The Application is **DENIED** as moot, on the ground

24   that it has been superseded by another pleading filed by the Non-Party Entities.

25   Specifically, one day after filing their Application (i.e., on or about February 10,

26   2009), the Non-Party Entities filed an opposition (the "Opposition") to a motion to

27   compel by Mattel (the "Motion"), and it contains all of the procedural arguments

28   made in the Application, as well as additional substantive arguments.  The

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

LA/136065.1

EXHIBIT 3
PAGE 17

Case 2:04-cv-09049-DOC-RNB   Document 5039-2   Filed 03/18/09   Page 22 of 92   Page ID
#:161118
Case 2:04-cv-09049-SGL-RNB      Document 5027      Filed 03/16/2009      Page 4 of 9

1   Opposition further states that it was filed "without waiving, and expressly

2   reserving, all arguments raised in [the Non-Party Entities'] ex parte application."

3

4        2.      Although the Application has been superseded by the subsequently-

5   filed Opposition, nothing in this ruling precludes the Non-Party Entities from

6   arguing that the Motion should be denied for the reasons set forth in the

7

8   Application. Mattel may respond to any such arguments in its reply papers, and the

9   parties shall have the right to address all such arguments at the hearing on the

10  Motion.

11

12       **B.      Hearing Dates**

13       The motions already filed by the parties shall be heard by the Discovery

14  Master in accordance with the schedule set forth below. Unless the Discovery

15

16  Master notifies the parties otherwise, all discovery hearings shall commence at

17  10:00 a.m. at the offices of Arent Fox, LLP. To the extent any opposition papers

18  have previously been filed to any of the motions below, the opposing party shall

19

20  immediately provide the Discovery Master with a copy of all such documents.

21  Similarly, to the extent any reply papers have previously been filed in connection

22  with any of the motions below, the moving party shall immediately provide the

23

24  Discovery Master with a copy of all such documents.

25  **March 4, 2009:**

26

27       1.      Motion to Compel Production of Documents Responsive to Third-

28  Party Subpoenas filed by Mattel.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

LA/136065.1

EXHIBIT __3__
PAGE ___18___

2.    Motion to Quash Receiver Subpoenas filed by MGA Entertainment, Inc. et al. ("MGA") on or about February 4, 2009.

**March 11, 2009:**

1.    Renewed Motion to Compel Production of Documents and Things from MGA filed by Mattel on or about January 26, 2009.

2.    Renewed Motion to Compel Mattel To Produce Documents Responsive To Requests For Production 526 and 528 filed by MGA on or about February 6, 2009.

**March 19, 2009:**

1.    Motion to Compel Depositions of Pablo Vargas and Marian Trueba filed by Mattel on or about February 9, 2009.

2.    Motion to Compel Responses to Interrogatories and Production of Documents from MGA et al. filed by Mattel on or about February 10, 2009.

3.    Motion to Compel MGA To Produce And File Certain Documents Reviewed In Camera filed by Mattel on or about February 12, 2009.

**III.    FURTHER / FUTURE DISCOVERY MOTIONS**

1.    In the event any party has previously filed any other discovery motion not referenced above that should be set for hearing, the Discovery Master requests that the parties promptly submit a joint report identifying the motion(s), the date such motion(s) were filed and all papers submitted in connection with the motion(s) to date.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

LA/136065.1

EXHIBIT 3
PAGE 19

1        2.      Any motion filed after the date of this order will be set for hearing

2   within a reasonable period of time thereafter by the Discovery Master.

3

4

5   Dated:        February 12, 2009

6

7

8                                         By:_____ /s/ Robert C. O'Brien
                                                 ROBERT C. O'BRIEN
9                                                Discovery Master

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

LA/136065.1

- 6 -

EXHIBIT __3__
PAGE ____20____

**PROOF OF SERVICE**
*Bryant v. Mattel Inc. and Consolidated Actions*
USDC, Eastern Division, Case No. CV 04 09049 SGL (RNBx)

I am a citizen of the United States. My business address is Arent Fox LLP, 555 West Fifth Street, 48th Floor, Los Angeles, California 90013-1065. I am employed in the County of Los Angeles where this service occurs. I am over the age of 18 years, and not a party to the within cause.

On the date set forth below, according to ordinary business practice, I served the foregoing document(s) described as:

**ORDER NO. 1, REGARDING: (1) PROCEDURE GOVERNING DISCOVERY MOTIONS; (2) PENDING DISCOVERY MATTERS, and (3) FURTHER/FUTURE DISCOVERY MOTIONS**

☐    (BY FAX) I transmitted via facsimile, from facsimile number (213) 629-7401, the document(s) to the person(s) listed below at the fax number(s) set forth therein, on this date before 5:00 p.m. A statement that this document was successfully transmitted without error is attached to this Proof of Service.

☒    (BY E-MAIL) On this date, I caused the above document(s) to be delivered electronically to the e-mail address (es) of the person(s) on the attached service list.

☒    (BY MAIL) I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business. On this date, I placed the document(s) in envelopes addressed to the person(s) listed below and sealed and placed the envelopes for collection and mailing following ordinary business practices.

☐    **(BY PERSONAL SERVICE)** On this date, I caused the above documents to be delivered by hand delivery to the person(s) listed below.

☐    (BY OVERNIGHT DELIVERY) On this date, I placed the documents in envelope(s) addressed to the person(s) on the within service list, and caused those envelopes to be delivered to an overnight delivery carrier, with delivery fees provided for, for next-business-day delivery to whom it is to be served.

**SEE ATTACHED SERVICE LIST**

☒    (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 12, 2009 at Los Angeles, California.

_/s/ Armida Flores_____
Armida Flores

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

EXHIBIT __3__
PAGE ___21__

*Bryant v. Mattel Inc. and Consolidated Actions*
USDC, Eastern Division, Case No. CV 04 09049 SGL (RNBx)

**SERVICE LIST**

| | |
|---|---|
| John B Quinn<br>johnquinn@quinnemanuel.com | Randa A F Osman<br>randaosman@quinnemanuel.com |
| David C Scheper<br>dscheper@obsklaw.com;<br>feseroma@obsklaw.com | Alisa Morgenthaler Lever<br>amorgenthaler@chrisglase.com |
| Larry W McFarland<br>lmcfarland@kmwlaw.com | Raoul D Kennedy<br>rkennedy@skadden.com |
| Mark E Overland<br>moverland@obsklaw.com;<br>jhibino@obsklaw.com | Thomas J Nolan<br>tnolan@skadden.com; carl.roth@skadden.com;<br>marcus.mumford@skadden.com |
| Emil W Herich<br>eherich@kmwlaw.com | Jason D Russell<br>jrussell@skadden.com; allison.velkes@skadden.com |
| Timothy L Alger<br>timalger@quinnemanuel.com | Sandra L Tholen<br>tholen@caldwell-leslie.com; mejia@caldwell-<br>leslie.com; wilson@caldwell-leslie.com |
| Jon D Corey<br>joncorey@quinnemanuel.com | Douglas Andrew Winthrop<br>dwinthrop@howardrice.com |
| Michael T Zeller<br>michaelzeller@quinnemanuel.com | Linda M Burrow<br>burrow@caldwell-leslie.com; wilson@caldwell-<br>leslie.com; popescu@caldwell-leslie.com |
| Diane C Hutnyan<br>dianehutnyan@quinnemanuel.com;<br>reahoeven@quinnemanuel.com | Kenneth A Plevan<br>kenneth.plevan@skadden.com;<br>drogosa@skadden.com; sumclaug@skadden.com |
| Alexander H Cote<br>acote@obsklaw.com;<br>feseroma@obsklaw.com | Marina Vladimir Bogorad<br>marina.bogorad@skadden.com |
| Brett Dylan Proctor<br>dylanproctor@quinnemanuel.com;<br>westonreid@quinnemanuel.com | Stan Karas<br>stankaras@quinnemanuel.com;<br>gayleduran@quinnemanuel.com;<br>westonreid@quinnemanuel.com |
| Scott E Gizer<br>sgizer@glaserweil.com | David W Hansen<br>dhansen@skadden.com |
| Robyn Aronson<br>robynaronson@dwt.com;<br>frankromero@dwt.com | Oleg Stolyar<br>alexstolyar@quinnemanuel.com |

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

**PROOF OF SERVICE**

EXHIBIT   3
PAGE    22

| 1 | *Bryant v. Mattel Inc. and Consolidated Actions* |
|---|---|
| 2 | USDC, Eastern Division, Case No. CV 04 09049 SGL (RNBx) |

**SERVICE LIST**

| Christian C Dowell | Cyrus S Naim |
|---|---|
| cdowell@kmwlaw.com | cyrusnaim@quinnemanuel.com |
| Leah Chava Gershon | Michael P Kelly |
| leah@spertuslaw.com | mikelly@skadden.com |
| Sanford I Weisburst | Hon. Stephen G. Larson |
| sandyweisburst@quinnemanuel.com | stephen_larson@cacd.uscourts.gov |
| Jerome B Falk<br>Howard Rice Nemerovski Canady Falk & Rabkin<br>3 Embarcadero Ctr 7th Fl<br>San Francisco CA 94111-4024 | Kien C Tiet<br>Stern and Goldberg<br>6345 Balboa Boulevard, Suite 200<br>Encino CA 91316 |
| Lauren E Aguiar<br>Skadden Arps Slate Meagher & Flom<br>1440 New York Ave<br>Washington DC 20005-2111 | Melissa Grant<br>Quinn Emanuel Urquhart Oliver and Hedges<br>865 South Figueroa Street, 10th Fl<br>Los Angeles CA 90017-2543 |
| Cheryl Plambeck<br>Davis & Gilbert LLP<br>1740 Broadway<br>New York NY 10019 | Amy R Sabrin<br>Skadden Arps Slate Meagher & Flom LLP<br>1440 New York Avenue NW<br>Washington DC 20005-2111 |
| David W Foster<br>Skadden Arps Slate Meagher & Flom LLP<br>1440 New York Avenue NW<br>Washington DC 20005-2111 | Peter H Bonis<br>Peter H. Bonis Law Offices<br>1990 N. California Blvd, 8th Floor<br>Walnut Creek CA 94596 |

- 3 -
**PROOF OF SERVICE**

LA/136081.1

EXHIBIT __3__
PAGE __23__

# EXHIBIT 4

1  | Hon. Edward A. Infante (Ret.)
   | JAMS
2  | Two Embarcadero Center
   | Suite 1500
3  | San Francisco, California 94111
   | Telephone:     (415) 774-2611
4  | Facsimile:      (415) 982-5287

5

6

UNITED STATES DISTRICT COURT

7

CENTRAL DISTRICT OF CALIFORNIA

8

EASTERN DIVISION

9

10

11 | CARTER BRYANT, an individual,

12 |      Plaintiff,

13 |     v.

14 | MATTEL, INC., a Delaware corporation,

15 |     Defendant.

16

17

18

19 | CONSOLIDATED WITH
   | MATTEL, INC. v. BRYANT and
20 | MGA ENTERTAINMENT, INC. v. MATTEL,
   | INC.

21

CASE NO. C 04-09049 SGL (RNBx)
JAMS Reference No. 1100049530

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER REGARDING MATTEL'S INTERROGATORIES; DENYING MATTEL'S MOTION TO COMPEL INTERROGATORY RESPONSES**

22

23

## I. INTRODUCTION

24

Presently pending are two separate motions pertaining to Mattel's Third Set of

25 Interrogatories: (1) MGA Entertainment, Inc., MGA Entertainment (HK) LTD., Isaac Larian, and

26 Carter Bryant's (collectively "Defendants") Joint Motion For Protective Order Regarding Mattel,

27

28

1

9-05-07

EXHIBIT ___4___
PAGE ___24___

1   Inc.'s ("Mattel") Interrogatories[1]; and (2) Mattel's motion to compel Defendants to answer the

2   Third Set of Interrogatories.[2] Having considered the motion papers and the comments of counsel

3   at the hearing, the joint motion for a protective order is granted, and Mattel's motion to compel

4   interrogatory responses is denied. MGA's request for sanctions in connection with Mattel's

5   motion to compel interrogatory responses is also denied.[3]

6                              II. BACKGROUND

7          In December of 2004, Mattel served Carter Bryant ("Bryant") and MGA Entertainment,

8   Inc. ("MGA") with its First Set of Interrogatories, which consisted of a total of six interrogatories.

9   In April of 2005, Mattel served Bryant and MGA with its Second Set of Interrogatories, asking

10  Bryant four questions and MGA seven questions. Of these, three interrogatories to Bryant were

11  identical to three interrogatories to MGA. In December of 2006, Mattel served MGA with its

12  First Set of Interrogatories Re Claims of Unfair Competition, which consisted of ten additional

13  interrogatories.

14         During a scheduling conference held on February 12, 2007, the district court imposed a

15  limit on interrogatories of "50 for each side for both cases." February 27, 2007 Minute Order,

16  Proctor Dec., Ex. 6; Tr. of scheduling conference, Proctor Dec., Ex. 7. When MGA asked

17  whether all Defendants would count as one "side" under the court's order, the court confirmed

18  that was its intent: "there's one party, essentially, on the other side, and [defendants] have two

19  parties." Tr. of scheduling conference, Proctor Dec., Ex. 7. After MGA clarified that there were

20  actually six Defendants, the court asked Bryant's counsel if Bryant would need to serve fifty

21

22

23         [1] Defendants submitted their joint motion on July 10, 2007. Mattel submitted its opposition on July 17,

24  2007. Defendants submitted their reply brief on July 20, 2007.

25         [2] Mattel submitted its motion to compel on July 18, 2007. Defendants submitted an opposition on August
    1, 2007. Mattel submitted its reply brief on August 6, 2007.

26

27         [3] The Discovery Master determined that a hearing was not necessary.

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                              2

EXHIBIT __4__
PAGE __25__

1    interrogatories on Mattel in addition to MGA's interrogatories.  Bryant stated that he probably

2    would not.  The court responded as follows:

        Let's try to work within the confines of the 50 interrogatories, and if you
3       need more, again, the court is going to be forthcoming, if there's a need for it.
4       And it's the type of order that if you can stipulate amongst yourselves, you're not
        going to need an order from the court.
5
        But if you're not agreeing amongst yourselves, then you're going to have
6       to come back to the court before you bust those limits.  Unlike every other order
7       the court issues, where once the court issues an order and you need an order from
        the court to alter that, this is one that I will give you authority amongst yourselves
8       to stipulate to a greater number.  But [let's] be reasonable.  I can't imagine you
        can't work this out.  I just don't want to have open-ended numbers of
9       interrogatories and experts.

10   Id. at 24:5-18.  The court also directed the parties to return to court if they were unable to reach

11   an agreement.  Id. at 24:23.

12        On June 7, 2007, Mattel served its Third Set of Interrogatories on the "other side" –

13   MGA, MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Isaac Larian ("Larian") and Bryant

14   – asking each of these four defendants the same nineteen questions.  On July 9, 2007, MGA,

15   MGA Hong Kong, Larian and Bryant each separately served objections to the Third Set of

16   Interrogatories and no responses.  The parties met and conferred on July 10, 2007.  Defendants

17   refused to answer any of the interrogatories, claiming that Mattel had exceeded the fifty

18   interrogatory limit and that the interrogatories were otherwise objectionable on several grounds.

19   Defendants contended that Mattel exceeded the 50 interrogatories limit by serving interrogatories

20   that are compound and by serving interrogatories on multiple responding parties on the "same

21   side."  By Defendants' calculations, when each discrete subpart of each of Mattel's

22   interrogatories served on each of the responding parties are counted separately, Mattel has

23   served, at a minimum, 227 separate interrogatories.  In contrast, Mattel contended that its

24   interrogatories are not compound, and that each identical interrogatory it serves should be

25   counted as one, regardless of how many parties it serves on the "other side."  By Mattel's

26   calculations, it has propounded a total of forty-three non-identical interrogatories.  The parties

27

28
     Bryant v. Mattel, Inc.,                                                              3
     CV-04-09049 SGL (RNBx)


EXHIBIT  4
PAGE  26

1  | also discussed potentially stipulating to a greater number of interrogatories but apparently did not
2  | reach an agreement.
3  |     Defendants move for a protective order preventing Mattel from serving additional
4  | interrogatories and requiring Mattel to serve a revised Third Set of Interrogatories or else identify
5  | which interrogatories (or subparts) it wishes to be answered, consistent with the limits imposed
6  | by the district court.  Mattel opposes the motion, contending that it has not exceeded the 50
7  | interrogatory limit set by the district court.  In a separate motion, Mattel moves to compel
8  | Defendants to provide responses to its Third Set of Interrogatories.

III. STANDARDS

10 |     Under Federal Rules of Civil Procedure 26(c), a court may "make any order which justice
11 | requires to protect a party or person from annoyance, embarrassment, oppression, or undue
12 | burden or expense," including "that the disclosure or discovery not be had."

IV. DISCUSSION

14 |     Defendants' motion for a protective order raises essentially three issues:  (1) whether an
15 | identical interrogatory served on several Defendants should be counted as only one interrogatory
16 | or counted separately for each Defendant served with the identical interrogatory; (2) whether an
17 | interrogatory that requires a Defendant to "state all facts," "identify all persons with knowledge of
18 | such facts," and "identify all documents" should be counted as a single interrogatory or three
19 | separate interrogatories; and (3) whether an interrogatory that covers multiple claims, legal
20 | theories or other subjects should be counted as a single interrogatory or multiple interrogatories.

A. The Fifty "Per Side" Limit

22 |     The district court limited interrogatories to fifty "per side."  Although the district court's
23 | order does not speak directly to this issue, the most reasonable approach is to count one identical
24 | interrogatory served on all six of the Defendants as one interrogatory.  Under this approach,
25 | Mattel may serve a total of 50 non-identical interrogatories to the "other side," and Defendants
26 | collectively may serve a total of 50 non-identical interrogatories on Mattel.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT ___4___
PAGE ___27___

1         Defendants' alternative approach is not realistic because it would leave Mattel with far

2    fewer interrogatories than the 50 permitted by the district court. Indeed, Defendants' approach

3    would not even provide Mattel with the presumptive limit of 25 interrogatories permitted under

4    Rule 33(a), Fed.R.Civ.P. Under Defendants' approach, Mattel would be limited to approximately

5    eight interrogatories for each of the six Defendants, but Defendants would be allowed to serve 50

6    interrogatories on Mattel. Such an imbalance would be fundamentally unfair.

7         Therefore, for purposes of applying the 50 interrogatory limit, one identical interrogatory

8    served on all six of the Defendants is counted as one interrogatory.

9    B. Interrogatories Requiring Responding Party to: (1) state all facts; (2) identify all persons with

10   knowledge; and (3) identify all documents

11        Pursuant to Rule 33(a), Fed.R.Civ.P., "discrete subparts" of an interrogatory are to be

12   counted as separate interrogatories for purposes of the statutorily imposed limit on the number of

13   interrogatories a party may serve upon any other party. Although Rule 33(a) does not define the

14   term "discrete subparts," The Advisory Committee addresses this issue and provides the

15   following guidance as to when subparts should and should not count as separate interrogatories:

16           Each party is allowed to serve 25 interrogatories upon any other party, but must
          secure leave of court (or stipulation from the opposing party) to serve a larger

17           number. Parties cannot evade this presumptive limitation through the device of
          joining as 'subparts' questions that seek information about discrete separate

18           subjects. However, a question asking about communications of a particular type
          should be treated as a single interrogatory even though it requests that the time,

19           place, persons present, and contents be stated separately for each such
          communication.

20

21   Advisory Committee Notes for the 1993 Amendments to Rule 33. A leading treatise has

22   explained that "it would appear that an interrogatory containing subparts directed at eliciting

23   details concerning the common theme should be considered a single question, although the

24   breadth of an area inquired about may be disputable." 8A Charles A. Wright, Arthur R. Miller &

25   Richard L. Marcus, Federal Practice and Procedure § 2168.1, at 261 (2d ed. 1994). "Although

26   there is no bright-line test as to whether a subpart should be counted as an interrogatory, the

27

28   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

                                              5

EXHIBIT   4
PAGE   28

1    weight of authority interpreting <u>Rule 33(a)</u> requires examining whether the subparts are

2    'logically or factually subsumed within and necessarily related to the primary question.'"

3    <u>Chapman v. California Dept. of Education</u>, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) citing

4    <u>Safeco of America v. Rawstron</u>, 181 F.R.D. 441, 445 (C.D. Cal. 1998), quoting <u>Ginn v. Gemini</u>

5    <u>Inc.</u>, 137 F.R.D. 320, 322 (D. Nev. 1991).

6       Cases applying Rule 33(a), Fed.R.Civ.P., however, have not been consistent in addressing

7    whether an interrogatory constitutes one or more interrogatories if it asks the responding party to

8    (1) state all facts, (2) identify all persons with knowledge of such facts, and/or (3) identify all

9    documents referring or relating to such facts. On the one hand, for example, in <u>United States ex</u>

10    <u>rel. Pogue v. Diabetes Treatment Ctrs. of America, Inc.</u>, 235 F.R.D. 521, 524 (D.C. Cir. 2006),

11    the court explained that an "interrogatory may properly seek identification of documents and facts

12    supporting a contention, but it may not do so in a single interrogatory." <u>See also</u> <u>Nobles v. Jacobs</u>

13    <u>IMC</u>, 2003 WL 23198817 (D. Virgin Islands 2003) (finding that an interrogatory that asks the

14    responding party to state all facts regarding a particular issue and to identify all persons having

15    knowledge of such information is two separate interrogatories); <u>Chapman v. California Dept. of</u>

16    <u>Education</u>, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) (treating an interrogatory seeking

17    disclosure of facts (including the identity of persons with knowledge) and documents as two

18    separate interrogatories); <u>Kendall v. GES Exposition Services, Inc.</u>, 174 F.R.D. 684, 685-86 (D.

19    Nevada 1997) (determining that a subpart asking for documents in addition to facts should be

20    treated as two subparts). On the other hand, for example, in <u>Krawczyc v. City of Dallas</u>, 2004

21    WL 614842 at *3 (N.D. Tex. 2004), the court held that an interrogatory asking a party to state

22    facts supporting a contention and to identify persons with knowledge of those facts counts as one

23    interrogatory because "[w]itnesses and their statements are facts," and hence the subpart is

24    "factually subsumed within and necessarily related to the primary question."

25       In the instant case, most of Mattel's interrogatories follow the same format, asking the

26    responding party to state all facts supporting a contention or contentions, to identity persons with

27

28

EXHIBIT ___4___

PAGE ___29___

1    knowledge, and to identify all documents that refer or relate to such acts. Notwithstanding

2    caselaw to the contrary, these subparts are not discrete. Rather, the subparts are related and

3    directed to the underlying details of a specifically identified contention (or contentions) in a

4    manner similar to the example given in the Advisory Committee Notes: "a question asking about

5    communications of a particular type should be treated as a single interrogatory even though it

6    requests that the time, place, persons present, and contents be stated separately for each such

7    communication." Therefore, subparts seeking facts supporting a contention, the identity of

8    persons with knowledge, and documents are not counted separately for purposes of applying the

9    50 interrogatory limit.

10   C. Interrogatories Addressing Several Discrete Issues

11          Notwithstanding the discussion above in Section "B," many of Mattel's interrogatories are

12   compound because they address discrete issues. For example, Mattel has propounded the

13   following interrogatory:

14          State all facts that support YOUR contention, if YOU so contend, that one
             or more of MATTEL's claims against YOU in THIS ACTION is barred, in whole
15          or in part, by the doctrines of unclean hands, estoppel, waiver, or consent, and
             IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
16          that REFER OR RELATE TO such facts.[4]

17   This interrogatory is directed to four separate and discrete defense theories: unclean hands,

18   estoppel, waiver and consent. Therefore, the interrogatory is compound and each of the four

19   discrete subparts should be counted as a separate interrogatory. See Safeco of America, 181

20   F.R.D. at 446 ("Where the underlying requests for admissions [that are the subject of an

21   interrogatory] concern different, separate, or discrete matters, however, the interrogatory should

22   be viewed as containing a subpart for each request."); see also Sec. Ins Co. v. Trustmark Ins. Co.,

23   2003 WL 22326563 (D. Conn. 2003) (finding that a single interrogatory seeking information

24

25

26          [4] Mattel's Third Set of Interrogatories (No. 18), Glad Dec., Ex. 9.

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                              7

EXHIBIT ___4___
PAGE ___3ᴅ___

1   about all elements of a given claim was compound and explaining that each element of a claim is

2   discrete and constitutes a separate interrogatory).

3        Mattel's next interrogatory is even more expansive, covering multiple legal theories and

4   factual matters:

5            State all facts that support YOUR contention, if YOU so contend, that
            YOU did not intentionally interfere with the INVENTIONS AGREEMENT or
6            any other agreement or contract between MATTEL and BRYANT, or aid or abet
            any breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL,
7            when BRYANT purported to TRANSFER and MGA purported to ACQUIRE
            rights to BRATZ or when BRATZ performed work or services with or for MGA
8            while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with
            knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO
9            such facts.[5]

10   This interrogatory includes three different legal contentions: (1) intentional interference with the

11   Inventions Agreement; (2) intentional interference with any other agreement or contract between

12   Mattel and Bryant; and (3) aiding or abetting any breach of fiduciary duty or duty of loyalty

13   owed by Bryant to Mattel.[6]  In addition, this interrogatory asks the responding party to apply two

14   different sets of factual allegations to the three different legal contentions.  Therefore, the

15   interrogatory consists of six discrete subparts, each of which counts as a separate interrogatory.

16        The following additional interrogatories contain similar types of discrete and separate

17   subparts:  Mattel's First Set of Interrogatories (Unfair Competition), No. 5 (two discrete

18   subparts); No. 10 (two discrete subparts); Mattel's Third Set of Interrogatories, No. 17 (two

19   discrete subparts), No. 22 (two discrete subparts), No. 23 (4 discrete subparts), No. 25 (two

20   discrete subparts), and No. 27 (2 discrete subparts).  When all of these discrete subparts are taken

21   into consideration, it is evident that Mattel exceeded the 50 interrogatory limit when it

22

23

24        [5]  Id. (No. 21).

25        [6]  The portion of the interrogatory seeking contentions about a potential breach of a fiduciary duty or the duty
26   of loyalty could potentially be interpreted as two separate interrogatories, but because these theories are similar and
     presumably would be based on interrelated facts, this portion of the interrogatory will count as one interrogatory.
27

28   Bryant v. Mattel, Inc.,                                                                                    8
     CV-04-09049 SGL (RNBx)

EXHIBIT ___4___
PAGE ___31___

1  propounded its Third Set of Interrogatories.  Therefore, Defendants are entitled to a protective

2  order.

3  V. CONCLUSION

4       For the reasons set forth above, Defendants' motion for a protective order is granted, and

5  Mattel's motion to compel responses to the Third Set of Interrogatories is denied.  Mattel may

6  serve a Revised Third Set of Interrogatories that shall not exceed the 50 interrogatory limit

7  imposed by the district court.  MGA's request for sanctions in connection with Mattel's motion to

8  compel interrogatory responses is denied.

9       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

10  Master, MGA shall file this Order with the Clerk of Court forthwith.

11

12

13  Dated: September 5, 2007

14                            HON. EDWARD A. INFANTE (Ret.)

15                            Discovery Master

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT ___4___

PAGE ___32___

### PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 5, 2007, I served the attached ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER REGARDING MATTEL'S INTERROGATORIES; DENYING MATTEL'S MOTION TO COMPEL INTERROGATORY RESPONSES in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 5, 2007, at San Francisco, California.

_____
Sandra Chan

EXHIBIT   4
PAGE   33

# EXHIBIT 5

CONFORMED COPY

FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111
415-774-2611
415-982-5287 (fax)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>     Plaintiff,<br><br>     v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>     Defendant.<br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | CASE NO. C 04-09049 SGL (RNBx) .<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS** |

I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of

Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter

Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a

reply brief. The matter was heard via telephonic conference call on January 24, 2007. Having

---

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT 5
PAGE 34

1-26

EXHIBIT __5__
PAGE __36__

1  considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel
2  Production of Documents is GRANTED.

3  ## II. BACKGROUND

4  At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly
5
6  lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made
7  commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of
8  Bratz dolls now rival Mattel's Barbie doll.

9  A. Mattel's Original Complaint

10  On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed
11
12  suit against its former employee Bryant in state court asserting claims for breach of contract,
13  breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel
14  employed Bryant as a product designer from September 1995 through April 1998, and from
15
16  January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee
17  Confidential Information and Inventions Agreement which required him not to engage in any
18  employment or business other than for Mattel, or invest or assist in any manner any business
19  competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel
20  all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his
21
22  employment.

23  In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that
24  he had not worked for any of Mattel's competitors in the prior twelve months and had not
25  engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of
26  any future events raising a conflict of interest.
27
28  Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for
29  a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              2

EXHIBIT ___5___
PAGE ___36___

provide product design services on a "top priority" basis.[2]  The agreement further provided that

Bryant would receive royalties and other consideration for sales of products on which he provided

aid or assistance; that all work and services furnished by Bryant to MGA under the agreement

would be considered "works for hire"; and that all intellectual property rights to preexisting work

by Bryant purportedly would be assigned to MGA.  Mattel further alleges that Bryant converted,

misappropriated and misused Mattel property and resources while he was employed at Mattel.  In

the complaint, Mattel claims ownership of all inventions and works created by Bryant during his

Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of

duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting

subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28

U.S.C. §1332 (diversity jurisdiction).  Mattel filed a motion to remand and submitted a copy of

Bryant's agreement with Mattel's competitor, namely MGA.  The agreement was dated

September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to

provide MGA with design services for the Bratz dolls.  In return, MGA agreed to compensate

Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz

dolls.  In August of 2004, the district court remanded the action.

B. Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-

complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information

and Inventions Agreement.  Bryant's cross-complaint included claims for unfair competition,

rescission, declaratory relief, and fraud.

//

---

[2]  Bryant has already produced his agreement with MGA.  Therefore, the existence of the agreement does not appear
to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT ___6___
PAGE ___37___

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT ___5___
PAGE ___36___

G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT    5
PAGE    39

1    was not heard before the district court stayed all discovery pending resolution of Mattel's appeal

2    to the Ninth Circuit on subject matter jurisdiction issues.

3        After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at

4    the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to

5    compel. The parties informed the court that they would submit a stipulation and order. See

6

7    Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel

8    Production of Documents, counsel will be submitting a stipulation and order which will be

9    dispositive of all the issues in dispute.").

10       Over the next several months, the parties exchanged draft stipulations and orders to

11

12   memorialize the parties' meet and confer session, but were unable to reach final agreement

13   because Bryant insisted upon including the following sentence in the stipulation: "The stipulation

14   resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's

15   Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and

16   motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23.

17

18   From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel

19   waive its right to all further discovery in connection with its requests. Mattel proposed the

20   following provision as an alternative:

21

22       Except as, and only as set forth in the terms of Paragraph One above, nothing in
         this Stipulation shall preclude or limit Mattel from seeking further discovery on
23       any matter, including as to matter on which the parties could not reach complete
         agreement, or preclude or limit any right of Bryant to object or resist to such
24       discovery.

25   Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was

26   unacceptable to Bryant. At the direction of the Discovery Master, the parties met and

27

28   conferred again in late December 2006, but to no avail.

29       Despite the parties' inability to reach final agreement, Bryant produced approximately

EXHIBIT ___5___
PAGE ___4D___

1,600 pages of documents to date. Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3]  Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

J.   Mattel's Motion to Compel Production of Documents

Mattel's motion has three parts.  First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents:  (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel.  Mattel's Motion at 6.  Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations.  According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]  According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear. Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed.  Mattel again obtained a court order compelling the deposition and sanctions.  To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT  5
PAGE  41

1   his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of

2   responsive documents without any of the limitations described above.

3       Third, Mattel contends that the documents Bryant has produced are inadequate for a

4   number of reasons: the financial documents are so heavily redacted they are useless; faxed

5   documents are missing fax header information, including the sending and receiving parties[4]; e-

6   mails and other electronic documents that are known to exist have not been produced; Bryant

7   refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used

8   during the relevant period; and Bryant's privilege log is facially incomplete and lists only four

9   documents.

10
11
12      K. Bryant's Opposition to Mattel's Motion to Compel

13      Bryant opposes Mattel's motion to compel. He views the motion as nothing more than

14  Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer

15  process which began back in 2004. Bryant emphasizes that the document requests at issue were

16  first propounded at a time when Mattel was attempting to remand the case, making the claim that

17  it did not know whether $75,000 was in controversy and insisting that it was asserting solely state

18  law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that

19  discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See

20  Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later

21  years could have no conceivable relevance to the case because if those activities and earnings

22  were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of

23  2004, he produced the following categories of documents: documents evidencing the artwork

24  used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the

25  summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

26
27
28
29  ────────────────────────
    [4]  There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to
    MGA from Mattel's Design Center. MGA denies the accusation.

    Bryant v. Mattel, Inc.,                                                                                    8
    CV-04-09049 SGL (RNBx)

EXHIBIT ___5___

PAGE ___42___

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT  5
PAGE  43

requests and that the stipulation controlled to the extent they were inconsistent. Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights. Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

### III. DISCUSSION

A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion. The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute. Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant. It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions. Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT 5
PAGE 44

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT __5__
PAGE __46__

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

EXHIBIT  5
PAGE  46

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46: Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

EXHIBIT 5
PAGE 47

when the payments were actually made. Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement. Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works. Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages. 17 U.S.C. §504(b). The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market. For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation. Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel. Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant. Among other things, the protective order provides protection for confidential trade secret information. It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only." The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46. Bryant,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT ___5___
PAGE ___48___

however, is not required to produce tax returns, provided that he otherwise fully complies with these requests as ordered.

Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

Mattel seeks production of Bratz-related communications and communications with MGA. More specifically, Mattel seeks production of four categories of documents Bryant has refused to produce: (1) communications between Bryant and MGA or third parties that explicitly relate to designs Bryant created while employed by Mattel; (2) communications between Bryant and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment; and (4) communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant contends that the discovery requests for communications between Bryant and MGA are overbroad. Bryant asserts that there are many former Mattel employees and friends of his who have privacy rights that would be impinged upon if he were to disclose his communications. Bryant also asserts that he has his own confidentiality interest regarding any information that he shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they would require him to reveal the identity of current Mattel employees seeking employment with MGA or Bryant.

The Discovery Master finds that Mattel's requests for all communications between Bryant and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential" private information about current or former employees, contractors or vendors (including employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

EXHIBIT    5
PAGE    49

1    privileged documents responsive to Request Nos. 20, 23, 27, and 28. However, Bryant may

2    continue to redact his telephone records, and shall provide a signed verification that none of the

3    telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project

4    that Bryant worked on, with, for, or on behalf of MGA. Telephone calls that do not relate or refer

5    in any way to MGA or Bratz are irrelevant.

6

7         Request Nos. 49, 51: Mattel-Related Documents

8         Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them.

9    Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

10

11         Request No. 9: Documents re Registrations and Applications for Registrations

12         Lastly, in Request No. 9 Mattel seeks production of documents registrations and

13    registrations and applications for registration. Bryant deems the motion moot with respect to

14    Request No. 9 because he agrees to produce any patent, copyright and trademark applications,

15    registrations or other non-privileged documents in his possession, custody or control that

16

17    constitute or relate to such applications and registrations obtained or applied in connection with

18    (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation

19    Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA

20    during the term of Bryant's employment with Mattel.

21

22         As discussed previously, the Discovery Master finds that the First Generation Bratz

23    limitation is improper. Therefore, Bryant is ordered to produce all non-privileged documents

24    responsive to Request No. 9.

25                              IV. CONCLUSION

26         For the reasons set forth above, the Discovery Master orders as follows:

27

28         1. Mattel's motion to compel production of documents responsive to its First Set of

29    Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT    5

PAGE    50

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant

need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30,

31, 32, 33, 34, 35, 36, 45, and 46.

    2.  Bryant shall produce all redacted documents in un-redacted form, except for redactions

that are justified by the attorney-client privilege or work product doctrine or his telephone records

pursuant to the terms of this Order.

    3.  Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5),

Fed.R.Civ.P.

    4.  Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his

computers for forensic imaging.

    5.  Bryant shall complete his production by producing missing attachments, fax cover

pages and all other missing responsive documents.

    6.  Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

    7.  Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master,

Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

    HON. EDWARD A. INFANTE (Ret.)
    Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT ___5___
PAGE ___5\___

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25,

2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL

PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjakian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT ___5___
PAGE ___62___

# EXHIBIT 6

1  DIANA M. TORRES (S.B. #162284)
   PAULA E. AMBROSINI (S.B. #193126)
2  ALICIA C. MEYER (S.B. #230189)
   O'MELVENY & MYERS, LLP
3  400 South Hope Street
   Los Angeles, California 90071-2899
4  Telephone: (213) 430-6000
   Facsimile: (213) 430-6407
5
   Attorneys for Defendant-in-Intervention,
6  MGA Entertainment, Inc.

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10 MATTEL, INC., a Delaware              Case No. CV04-9059 NM (RNBx)
   Corporation,
11                                        **MGA'S FIRST SET OF**
                    Plaintiff,            **INTERROGATORIES TO MATTEL,**
12                                        **INC.**
             v.
13
   CARTER BRYANT, an individual,
14 and MGA ENTERTAINMENT,
   INC., a California Corporation
15
             Defendant and
16           Defendant-in-
             Intervention.
17

18

19 PROPOUNDING PARTY:      MGA ENTERTAINMENT, INC.

20 RESPONDING PARTY:       MATTEL, INC.

21 SET:                    ONE

22

23

24

25

26

27

28

RECEIVED

FEB 0 7 2005

EXHIBIT ___6___
PAGE ___53___

1    Defendant-In-Intervention, MGA Entertainment Inc. ("MGA"), hereby

2    requests that Plaintiff, Mattel Inc. ("Mattel") answer the following Interrogatories

3    separately, fully, and under oath, pursuant to Rule 33 of the Federal Rules of Civil

4    Procedure, within thirty (30) days of service, in accordance with the definitions and

5    instructions set forth herein.

6                               **DEFINITIONS**

7         1. "BRATZ" means and refers to each image, character, logo, doll, toy,

8    accessory, product, packaging or other thing or matter that is or has ever been

9    manufactured, marketed or sold by MGA, or others under license, as part of a line of

10   goods or merchandise commonly known as, or sold and marketed under the "Bratz"

11   trademark or trade dress including but not limited to the "BRATZ CONCEPT,"

12   "FIRST BRATZ DOLLS," "BRATZ DOLLS," "BRATZ PACK", "LIL' BRATZ,"

13   "BRATZ PETZ," "BRATZ BABYZ," and "BRATZ BOYZ.

14        2. "BRATZ CONCEPT" means and refers to each "BRATZ"-related image,

15   drawing, picture, sculpt, mold, prototype and any other form of artwork predating the

16   FIRST BRATZ DOLLS, examples of which have been the subject of Mr. Bryant's

17   testimony and produced by Mr. Bryant bearing Bates serial numbers Bryant 00175-

18   177; 00179-00182; 00189-00190; 00192-00196; 00198-00216; 00218; 00341; 00972;

19   01014; and 01116-01118.

20        3. "FIRST BRATZ DOLLS" means and refers to each image, character, logo,

21   doll, toy, accessory, product, packaging or other thing or matter that is or has ever

22   been manufactured, marketed or sold by MGA, or others under license, as part of a

23   line of goods or merchandise commonly known as, or sold and marketed under the

24   "Bratz" trademark or trade dress and consisting of the following: "Bratz Cloe", SKU

25   248521; "Bratz Cloe", SKU 248538; "Bratz Jade", SKU 248545; "Bratz Sasha, SKU

26   248552; "Bratz Yasmin", SKU 248569; "Bratz Pajama Power Fashion", SKU

27   248576; "Bratz Study Hall Fashion", SKU 248583; and "Bratz Dynamite Dance

28   Fashion", SKU 248682.

1

EXHIBIT __U__
PAGE __5Y__

1    4. "BRATZ DOLLS" means and refers to each image, character, logo, doll,
2    toy, accessory, product, packaging or other thing or matter that is or has ever been
3    manufactured, marketed or sold by MGA, or others under license, as part of a line of
4    goods or merchandise commonly known as, or sold and marketed under the "Bratz"
5    trademark or trade dress excluding the "FIRST BRATZ DOLLS", "LIL' BRATZ,"
6    "BRATZ PETZ," and "BRATZ BABYZ" and including, without limitation, the
7    styling head commonly known as or sold and marketed as the "Bratz Funky Fashion
8    Make Over" styling head, and specifically including, without limitation, the images,
9    characters, dolls, playsets and other products and toys called or referred to as, or
10   named or marketed in association with the names "Cloe", "Jade", "Sasha", "Yasmin",
11   "Meygan", "Dana", "Fianna", "Nevra", "Cameron", "Dylan", "Eitan", "Koby",
12   "Cade", "Ailani", "Nazalia", "Talia", "Zada", "Mikko", "Colin", "Deavon", "Lakin",
13   "Flaunt It," "Beach Party", "Micro Bratz", "Xpress It", "Bratz Boyz", "Funk 'n'
14   Glow", "Funky Fashion Makeover", "Holiday Bratz – Sweetheart", "Holiday Bratz –
15   Spring Fling", "Holiday Bratz – Independence Dance", "Slumber Party", "Strut It",
16   "Spring Break", "Formal Funk", "Bratz Boyz Formal Funk", "Wintertime
17   Wonderland", "Style It!", "Funky Fashion Makeover", "Funk Out!", "Sun-Kissed
18   Summer", "Girls Nite Out!", "Wild Life Safari", and any other released, or yet to be
19   released, BRATZ named character or product theme.
20   5. "BRATZ PACK" means and refers to any collection, compilation or
21   grouping of two or more images, characters or dolls that are or have ever been
22   manufactured, marketed or sold by MGA, or others under license, as part of a line of
23   goods or merchandise commonly known as, or sold and marketed under the "Bratz"
24   trademark or trade dress including, without limitation, the collection, compilation or
25   grouping of four female images, characters or dolls individually named, called or
26   referred to as "Bratz Cloe", "Bratz Jade", "Bratz Sasha", and "Bratz Yasmin" and any
27   other similar collection, compilation or grouping of two or more images, characters or
28   dolls, male or female, and specifically including, without limitation, the images,

EXHIBIT 6
PAGE 55

1   characters and dolls called or referred to as, or named or marketed in association with
2   the names "Cloe", "Jade", "Sasha", "Yasmin", "Meygan", "Dana", "Fianna",
3   "Nevra", "Cameron", "Dylan", "Eitan", "Koby", "Cade", "Ailani", "Nazalia",
4   "Talia", "Zada", "Mikko", "Colin", "Deavon", "Lakin", and any other released, or yet
5   to be released, BRATZ character.

6       6. "LIL' BRATZ" means and refers to each image, character, logo, doll, toy,
7   accessory, product, packaging or other thing or matter that is or has ever been
8   manufactured, marketed or sold by MGA, or others under license, as part of a line of
9   goods or merchandise commonly known as, or sold and marketed under the "Bratz"
10  trademark or trade dress and commonly labeled, called, referred to, named or
11  identified as "LIL' BRATZ", and specifically including, without limitation, the
12  images, characters, dolls, playsets and other products and toys called or referred to as,
13  or named or marketed in association with the names "Cloe", "Yasmin", "Sasha",
14  "Jade", "Ailani", "Nazalia", "Talia", "Zada", "Lil' Boyz", "Cameron", "Dylan",
15  "Eitan", "Koby", "Mikko", "Colin", "Deavon", "Lakin", "Lil' Bratz Slumber Party",
16  "Lil' Bratz Tote", "Lil' Bratz Spring Break", "Lil Bratz Dancefloor Funk", "Lil' Boyz
17  Dancefloor Funk", and any other released, or yet to be released, LIL' BRATZ
18  character or product theme.

19      7. "BRATZ PETZ" means and refers to each image, character, logo, doll, toy,
20  accessory, product, packaging or other thing or matter that is or has ever been
21  manufactured, marketed or sold by MGA, or others under license, as part of a line of
22  goods or merchandise commonly known as, or sold and marketed under the "Bratz"
23  trademark or trade dress and commonly labeled, called, referred to, named or
24  identified as "BRATZ PETZ", and specifically including, without limitation, the
25  images, characters and toys called or referred to as, or named or marketed in
26  association with the names, "Bratz Catz", "Brigitte", "Jolie", "Kendall", "Daphne",
27  "Bratz Petz Tokyo Catz", "Kyoto", "Cho", "Nami", "Yukiko", "Bratz Petz Foxz",
28  "Carly", "Reilly", "Shayna", "Bree", "Bratz Petz Dogz", "Shae", "Kali", "Pilar",

3

EXHIBIT __U__
PAGE __6U__

1    "Abby", and any other released, or yet to be released, BRATZ PETZ character or

2    product theme.

3       8. "BRATZ BABYZ" means and refers to each image, character, logo, doll,

4    toy, accessory, product, packaging or other thing or matter that is or has ever been

5    manufactured, marketed or sold by MGA, or others under license, as part of a line of

6    goods or merchandise commonly known as, or sold and marketed under the "Bratz"

7    trademark or trade dress and commonly labeled, called, referred to, named or

8    identified as "BRATZ BABYZ", and specifically including, without limitation, the

9    images, characters and dolls called or referred to as, or named or marketed in

10   association with the names, "Cloe", "Sasha", "Jade," "Yasmin", and any other

11   released, or yet to be released, BRATZ BABYZ character or product theme.

12      9. "BRATZ BOYZ" means and refers to each male image, character, logo, doll,

13   toy, accessory, product, packaging or other thing or matter that is or has ever been

14   manufactured, marketed or sold by MGA, or others under license, as part of a line of

15   goods or merchandise commonly known as, or sold and marketed under the "Bratz"

16   trademark or trade dress and commonly labeled, called, referred to, named or

17   identified as "BRATZ BOYZ", and specifically including, without limitation, the

18   images characters, dolls, playsets and other products and toys called or referred to as,

19   or named or marketed in association with the names "Cameron", "Dylan", "Eitan",

20   "Koby", "Cade", "Mikko", "Colin", "Deavon", "Lakin", "Bratz Boyz Formal Funk",

21   "Boyz Funk Out!", "Boyz Sun-Kissed Summer", and any other released, or yet to be

22   released BRATZ BOYZ character or product theme.

23      10. "BRATZ INTELLECTUAL PROPERTY" means all intellectual and

24   industrial property rights in and to BRATZ including, without limitation, all

25   copyrights, patents, trademarks, industrial designs, trade secrets, contract and

26   licensing rights, design rights, moral rights and trade dress rights, in any country of

27   the world.

28      11. "BRYANT" means defendant Carter Bryant.

4

EXHIBIT \_\_\_\_ ᴄ

PAGE \_\_\_\_ 57

1    12.    "COMMUNICATION[S]" means any transmission of information from

2  one person or entity to another, including, without limitation, by personal meeting,

3  conversation, letter, telephone, facsimile or electronic mail.  Each request that

4  encompasses information relating in any way to communications to, from or within a

5  business or corporate entity is hereby designated to mean, and should be construed to

6  include, all communications by and between representatives, employees, agents or

7  servants of the business or corporate entity.

8    13.    "COMPLAINT" means and refers to the Complaint filed by Mattel Inc.

9  in this matter on April 27, 2004 and now designated as Case No. CV 04-9059 NM

10  (RNBx) in the United States District Court for the Central District of California.

11    14.    "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

12  Civil Procedure 24, and shall be construed in the broadest sense to mean any and all

13  writings, tangible things and property, of any kind, that are now or that have been in

14  YOUR actual or constructive possession, custody or control, including, but not

15  limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed,

16  punched, copied, recorded, transcribed, graphic or photographic matter of any kind

17  or nature, in, through, or from which information may be embodied, translated,

18  conveyed or stored, whether an original, a draft or copy, however produced or

19  reproduced, whether sent or received or neither, including, but not limited to, notes,

20  memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports,

21  inter- and intra-office COMMUNICATIONS, work papers, work sheets, work

22  records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets,

23  estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders,

24  telephone records, telegrams, telexes, literature, invoices, contracts, purchase orders,

25  estimates, recordings, transcriptions of recordings, records, books, pamphlets,

26  periodicals, publications, papers, tapes, DVDs, video CDs, video, audio and digital

27  recordings, television commercials, story boards, website or other spot

28

EXHIBIT ___6___
PAGE ___68___

1   advertisements, movies, movie trailers, prototypes, products, diaries, calendars,

2   charts, drawings, sketches, messages, photographs and data contained in or

3   accessible through any electronic data processing system, including, but not limited

4   to, computer databases, data sheets, data processing cards, computer files and tapes,

5   computer disks, CD-ROMs, computer meta-data, microfilm, microfiche, electronic

6   mail, website and web pages and transcriptions thereof and all other

7   memorializations of any conversations, meetings and conference, by telephone or

8   otherwise. The term DOCUMENT also means every copy of a DOCUMENT, where

9   such copy is not an identical duplicate of the original, whether because of deletions,

10  underlinings, showing of blind copies, initialing, signatures, receipt stamps,

11  comments, notations, differences in stationery or any other difference or

12  modification of any kind.

13      15.    "MARKET RESEARCH" means any type of research, study, survey or

14  analysis of consumers or potential consumers of a product or potential product

15  including, without limitation, focus groups, consumer surveys, market analyses,

16  behavioral analyses and consumer research.

17      16.    "MATTEL," "PLAINTIFF," "YOU" or "YOUR" means plaintiff

18  MATTEL, Inc. and any of its past or present officers, directors, agents, employees,

19  representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates,

20  predecessors-in-interest and successors-in-interest, entities and persons acting in joint

21  venture or partnership relationships with YOU and any others acting on YOUR

22  behalf, pursuant to YOUR authority or subject to YOUR control.

23      17.    MGA" means MGA Entertainment, Inc. and any of its past or present

24  officers, directors, agents, employees, representatives, consultants, attorneys, parents,

25  subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest,

26  entities and persons acting in joint venture or partnership relationships with MGA

27

28

6

EXHIBIT    6
PAGE    59

1   and any others acting on MGA's behalf, pursuant to its authority or subject to its
2   control.

3      18.   "MGA PRODUCTS" means any and all products offered for sale by
4   MGA Entertainment, Inc., other than BRATZ, including, without limitation, "4-Ever
5   Best Friends" and "Alien Racers".

6      19.   "PERSON" or "PERSONS" means all natural persons, partnerships,
7   corporations, joint ventures and any kind of business, legal or public entity or
8   organization, as well as its, his or her agents, representatives, employees, officers and
9   directors and any one else acting on its, his or her behalf, pursuant to its, his or her
10   authority or subject to its, his or her control.

11      20.   "PROPERTY" or "PROPERTIES" means all ideas, concepts, rights,
12   designs, proprietary and confidential information, and other intellectual and
13   intangible property including, without limitation, copyrights, patents, trademarks,
14   design rights and trade secrets.

15      21.   The singular form includes the plural, and vice versa.

16      22.   The terms "any" and "all" are interchangeable.

17      23.   The terms "and" and "or" shall be construed disjunctively and
18   conjunctively, and each shall include the other whenever such dual construction will
19   serve to bring within the scope of any interrogatory, information that would
20   otherwise not be within its scope.

21      24.   As used herein, the terms "relating to" and "referring to" should each be
22   construed in the broadest possible sense to mean concerning, consisting of, referring
23   to, describing, discussing, constituting, evidencing, containing, reflecting,
24   mentioning, pertaining to, citing, summarizing, analyzing or bearing any logical or
25   factual connection with the matter discussed.

## INSTRUCTIONS

26

27      1.   Mattel is instructed to serve written responses to these Interrogatories
28

7

EXHIBIT __6__
PAGE ___60___

1     upon MGA's counsel at O'Melveny & Myers LLP, 400 South Hope Street, Los

2     Angeles, California 90071.

3         2.      These Interrogatories are deemed to be continuing in nature. If, after

4     responding, Mattel discovers additional information responsive to any Interrogatory,

5     or part thereof, MGA requests that Mattel provide such information to MGA within

6     thirty days after acquiring knowledge of its existence or advise MGA in writing as to

7     why such additional information cannot be provided within the specified period.

8         3.      For any information withheld based on any ground, including privilege,

9     provide a written statement setting forth: (a) the identity of all person(s) from and to

10    whom the information has been communicated; (b) the names and organization

11    position, if any, of each such person; (c) a brief description of the subject matter of the

12    information; and (d) the legal ground upon which you rely in withholding the

13    information; and (e) if work product is asserted, the proceeding for or during which

14    the information was obtained or created.

15         4.      Whenever in these Interrogatories there is a request to "IDENTIFY" a

16    COMMUNICATION, the answering party shall state the date of the

17    COMMUNICATION, the places of origin and reception of the COMMUNICATION,

18    the persons present during any portion of the COMMUNICATION if oral, the type of

19    COMMUNICATION (*i.e.* letter, facsimile, face-to-face conversation, telephone, etc.),

20    the substance of the COMMUNICATION and the DOCUMENT(S), if any, that

21    constitute, record, show or refer to the COMMUNICATION.

22         5.      Whenever in these Interrogatories there is a request to state the

23    "IDENTITY" of a PERSON, the answering party shall set forth the person's name,

24    present or last known business address, residence address and telephone numbers,

25    dates of employment, job capacity, title, status, position, rank or classification or, with

26    respect to a non-natural person, the name and address of the principal office or place

27    of business, all names under which it is doing business or ever has done business, the

28    nature of the venture (*i.e.* sole proprietorship, partnership , corporation, etc.), and the

8

EXHIBIT __6__
PAGE __6l__

1  identities of its officers, directors, partners or administrators.

2       6.     Whenever in these Interrogatories there is a request to state the

3  "IDENTITY" of a DOCUMENT, the answering party shall identify, by name, all

4  authors and recipients of the DOCUMENT, the date of the DOCUMENT, the person

5  or entity who currently has possession, custody and control of the DOCUMENT, and

6  describe the DOCUMENT in a manner sufficient for MGA to draft a discovery

7  demand requesting production of the DOCUMENT.

8       7.     Whenever in these Interrogatories there is a request to "IDENTIFY"

9  PROPERTY, the answering party shall describe the PROPERTY as specifically as

10  possible, state the name and current employer, if known, of the author(s), inventor(s),

11  owner(s) and any assignee(s) and licensee(s) of the PROPERTY, state any copyright

12  registration, recordation information relative to a copyright interest, trademark

13  registration and patent numbers of the PROPERTY, if any, and state the dates of

14  conception, authorship, invention and reduction to practice of the PROPERTY.

15

16                          **INTERROGATORIES**

17  **INTERROGATORY NO. 1.:**

18       State all facts, with particularity, and IDENTIFY all DOCUMENTS that

19  support YOUR contention, if YOU so contend, that YOU have suffered harm as a

20  result of any act or omission of MGA.

21  **INTERROGATORY NO. 2.:**

22       For each fact stated in response to Interrogatory No. 1, IDENTIFY all

23  PERSONS with knowledge of each fact.

24  **INTERROGATORY NO. 3.:**

25       State, with particularity, the nature, amount, cause and calculation of every item

26  of YOUR alleged damages, including, without limitation, general, actual and statutory

27  damages, restitution, disgorgement of unlawful profits, lost profits, lost payments, lost

28

9

EXHIBIT ___6___
PAGE ___62___

1    revenues, lost monies, lost royalties or license fees, reputational harm, lost

2    relationships, lost business opportunities, interest, attorneys' fees, costs, expenses, and

3    any other form of injury or damage or quantifiable remedy that YOU seek to recover

4    in this lawsuit.

5    **INTERROGATORY NO. 4.:**

6       State all facts, with particularity, and IDENTIFY all DOCUMENTS that

7    support YOUR contention, if YOU so contend, that YOU are entitled to exemplary

8    damages, attorneys' fees and costs.

9    **INTERROGATORY NO. 5.:**

10

11       State all facts, with particularity, and IDENTIFY all DOCUMENTS that YOU

12    contend prove, directly or circumstantially, that MGA copied YOUR PROPERTY,

13    including, without limitation, "Toon Teens".

14    **INTERROGATORY NO. 6.:**

15       IDENTIFY each COMMUNICATION that YOU have ever made, received, or

16    participated in that referred to, mentioned, or concerned this lawsuit.

17    **INTERROGATORY NO. 7.:**

18       IDENTIFY all PERSONS interviewed for the July 18, 2003 Wall Street Journal

19    article.

20    **INTERROGATORY NO. 8.:**

21

22       Describe, with particularity, each error contained in the July 18, 2003 Wall

23    Street Journal article by explaining why and in what way each fact is incorrect.

24    **INTERROGATORY NO. 9.:**

25       State, with particularity, when and how MATTEL first learned of BRATZ.

26    **INTERROGATORY NO. 10.:**

27       State, with particularity, when and how MATTEL first learned that BRYANT

28    performed work for MGA.

10

EXHIBIT ___6___

PAGE ___63___

1    **INTERROGATORY NO. 11.:**

2        State, with particularity, when and how MATTEL first learned that BRYANT

3    conceived of the BRATZ CONCEPT.

4

5    Dated:  February 4, 2005               DIANA M. TORRES

6                                           PAULA E. AMBROSINI
                                            ALICIA C. MEYER
7                                           O'MELVENY & MEYERS LLP

8

9                                           Paula E. Ambrosini,
                                            Attorneys for MGA Entertainment, Inc.
10

11   LA2:746290.2

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    11

EXHIBIT   6
PAGE      64

1

## PROOF OF SERVICE

2

I, Suzanne I. Jimenez, declare:

3

I am a resident of the State of California and over the age of eighteen years, and

4

not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899.  On February 4, 2005, I served the within document:

5

### MGA'S FIRST SET OF INTERROGATORIES TO MATTEL, INC.

6

7

☒   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles addressed as set forth below.  I am

8

readily familiar with the firm's practice of collecting and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that

9

same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if the postal

10

cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

11

☒   by putting a true and correct copy thereof, together with an unsigned copy of this

12

declaration, in a sealed envelope designated by the carrier, with delivery fees paid or provided for, for delivery the same business day to the person(s) listed above.  I am readily

13

familiar with this firm's practice for collection and processing of overnight courier correspondence.  In the ordinary course of business, such correspondence collected from

14

me would be processed on the same day, with fees thereon fully prepaid.

15

Michael T. Zeller                           **VIA HAND-DELIVERY & MAIL**

16

Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor

17

Los Angeles, California 90017-2543
Tel: (213) 443-3000

18

Fax: (213) 443-3100

19

Keith Jacoby                                **VIA REGULAR MAIL**

20

Littler Mendelson
A Professional Corporation

21

2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107

22

Tel: (310) 553-0308
Fax: (310) 553-5583

23

24

I declare under penalty of perjury under the laws of the United States that the

25

above is true and correct.

26

Executed on February 4, 2005, at Los Angeles, California.

27

28

_Suzanne I. Jimenez_
Suzanne I. Jimenez

EXHIBIT ___6___
PAGE ___65___

# EXHIBIT 7



1   THOMAS J. NOLAN (Bar No. 066992)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2   300 South Grand Avenue
    Los Angeles, California 90071-3144
3   Telephone:  (213) 687-5000
    Facsimile:   (213) 687-5600
4   E-mail:    tnolan@skadden.com

5
    KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
6   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    4 Times Square
7   New York, NY  10036
    Telephone:  (212) 735-3000
8   Facsimile:   (212) 735-2000
    E-mail:     kplevan@skadden.com
9
    Attorneys for Counter-Defendants,
10  MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
    (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.
11
                    UNITED STATES DISTRICT COURT
12
                   CENTRAL DISTRICT OF CALIFORNIA
13
                        EASTERN DIVISION
14  CARTER BRYANT, an individual          )   CASE NO. CV 04-9049 SGL (RNBx)
                                          )
15                Plaintiff,              )   Consolidated with Case No. 04-9059
                                          )   and Case No. 05-2727
16       v.                               )
                                          )   **MGA'S SECOND SET OF**
17  MATTEL, INC., a Delaware              )   **INTERROGATORIES TO**
    corporation                           )   **MATTEL, INC.**
18                                        )
                  Defendant.              )
19                                        )
                                          )
20                                        )   Honorable Stephen G. Larson
                                          )   Courtroom 1
21                                        )
                                          )
22                                        )

23

24

25

26

27

28
                                   12-4
    MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.          NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___7___
PAGE ___66___

1

2   Consolidated with MATTEL, INC. v.
    BRYANT and MGA
3   ENTERTAINMENT, INC. v.
    MATTEL, INC.

4

5   **PROPOUNDING PARTY:**     **MGA ENTERTAINMENT, INC.**

6   **RESPONDING PARTY:**      **MATTEL, INC.**

7   **SET NUMBER:**            **SECOND**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.                    NO. CV 04-9049 SGL (RNBx)

EXHIBIT 7
PAGE 67

1     MGA Entertainment Inc. ("MGA"), hereby requests that Plaintiff, Mattel Inc.

2 ("Mattel") respond to the following Second Set of Interrogatories separately, fully,

3 and under oath, pursuant to Rule 33 of the Federal Rules of Civil Procedure, within

4 (30) days of service, in accordance with the definitions and instructions set forth

5 herein.

6                     **DEFINITIONS**

7     1.    "AFFILIATES" means any and all corporations, proprietorships, d/b/a's,

8 partnerships, joint ventures and business entities of any kind that, directly or

9 indirectly, in whole or in part, own or control, are under common ownership or

10 control with, or are owned or controlled by a PERSON, party or entity, including

11 without limitation each parent, subsidiary and joint venture of such person, party or

12 entity.

13     2.    "ALLEGED COPYRIGHTED WORKS" means the copyrighted works

14 alleged in paragraph 83 of MATTEL'S Second Amended Answer in Case No. 05-

15 2727 and Counterclaim in THIS ACTION.

16     3.    "ALLEGED TRADE SECRETS" means the trade secret material

17 alleged in paragraphs 107 thru 111 of MATTEL'S Second Amended Answer in Case

18 No. 05-2727 and Counterclaim in THIS ACTION.

19     4.    "BARBIE" means and refers to each image, character, logo, doll, toy,

20 styling head, plush toy, play set, accessory, product, packaging or any other thing

21 that is or has ever been manufactured, marketed or sold by YOU, or others under

22 licensed by YOU, as part of a line of goods or merchandise commonly known as, or

23 sold and marketed under the name "Barbie."

24     5.    "BRYANT" means Carter Bryant individually and does not include his

25 agents, representatives, attorneys, experts or any other PERSON acting on his behalf,

26 pursuant to his authority or subject to his control.

27     6.    "BRATZ" means and refers to each image, character, logo, doll, fashion

28 doll, plush toy, styling head, toy, accessory, product, packaging, theme, or other

2

EXHIBIT 7
PAGE 68

1  thing or matter that is or has ever been manufactured, marketed or sold by MGA, or

2  others under license, as part of a line of goods or merchandise commonly known as,

3  or sold and marketed under the "Bratz" trademark or trade dress.

4      7.    "COLLECT," "COLLECTED" or "COLLECTION" with reference to

5  DOCUMENTS means to collect, review, produce, request, seek, look for, search for,

6  analyze or in any other way collect or review or attempt to collect or review such

7  DOCUMENTS in connection with YOUR search for, review of and/or production of

8  DOCUMENTS in this ACTION."

9      8.    The term "CONFLICT OF INTEREST QUESTIONNAIRE" refers to

10 Mattel's form of employment agreement concerning, inter alia, relations, if any,

11 between Mattel's employees, suppliers, and/or competition, whether known by the

12 title "Conflict of Interest Questionnaire" or any other title, including without

13 limitation the form of Conflict of Interest Questionnaire entitled "Conflict of Interest

14 Questionnaire" executed by Carter Bryant on or about January 4, 1999.

15     9.    "CONTESTED MATTEL PRODUCTS" means:

16     (a) each female fashion doll and its packaging that is or has ever been

17 manufactured, marketed or sold by MATTEL, or others under license by MATTEL,

18 as part of a line of goods or merchandise commonly known as, or sold and marketed

19 under the "My Scene" trademark or trade dress;

20     (b) each image, character, logo, fashion doll, doll, toy, accessory, product,

21 packaging or other thing or matter that is or has ever been manufactured, marketed or

22 sold by MATTEL, or others under license by MATTEL, as part of a line of goods or

23 merchandise commonly known as, or sold and marketed under the "My Scene"

24 "Chillin' Out!" trademark or trade dress, the "My Scene" "Night on the Town"

25 trademark or trade dress, the "My Scene" "My Bling Bling" trademark or trade

26 dress, and/or the "My Scene" "Jammin' in Jamaica" trademark or trade dress;

27     (c) each plush toy and its packaging that is or has ever been manufactured,

28 marketed or sold by MATTEL, or others under license by MATTEL, as part of a line

3

EXHIBIT ___7___
PAGE ___69___

1  of goods or merchandise commonly known as, or sold and marketed under the "My
2  Scene" trademark or trade dress;

3      (d) each styling head that is or has ever been manufactured, marketed or sold
4  by MATTEL, or others under license by MATTEL, as part of a line of goods or
5  merchandise commonly known as, or sold and marketed under the "My Scene"
6  trademark or trade dress;

7      (e) the "My Scene Sound Lounge" play set and packaging;

8      (f) each image, character, logo, doll, toy, accessory, product, packaging or any
9  other thing that is or has ever been manufactured, marketed or sold by MATTEL, or
10  others under license by MATTEL, as part of a line of goods or merchandise
11  commonly known as, or sold and marketed under the name "Little Mommy";

12      (g) each image, character, logo, doll, toy, accessory, product, packaging or any
13  other thing that is or has ever been manufactured, marketed or sold by YOU, or
14  others under licensed by YOU, as part of a line of goods or merchandise commonly
15  known as, or sold and marketed under the name "Wee 3 Friends"; and

16      (h) each image, character, logo, toy, accessory, product, packaging or any
17  other thing that is or has ever been manufactured, marketed or sold by MATTEL, or
18  others under license by MATTEL, as part of a line of goods or merchandise
19  commonly known as, or sold and marketed under the name "AcceleRacerS."

20      10.   "COUNTERCLAIMS" means Mattel, Inc.'s Second Amended Answer
21  and Counterclaims for: 1. Copyright Infringement; 2. Violation of the Racketeer
22  Influenced and Corrupt Organizations Act; 3. Conspiracy to Violate the Racketeer
23  Influenced and Corrupt Organizations Act; 4. Misappropriation of Trade Secrets; 5.
24  Breach of Contract; 6. Intentional Interference with Contract; 7. Breach of Fiduciary
25  Duty; 8. Aiding and Abetting Breach of Fiduciary Duty; 9. Breach of Duty of
26  Loyalty; 10. Aiding and Abetting Breach of Duty of Loyalty; 11. Conversion; 12.
27  Unfair Competition; and 13. Declaratory Relief filed July 12, 2007, in MGA v.
28  Mattel, Inc., CV 05-02727, including any amendment or supplement thereto.

4

EXHIBIT ___7___
PAGE ___7o___

1    11.   "DESCRIBE THE SALES AND PROFITS" means to state fully and
2  separately for each MATTEL PRODUCT by year (a) the number of units of each
3  such MATTEL PRODUCT sold by YOU or YOUR licensees, (b) the gross and net
4  revenue received by YOU from such sales of each such MATTEL PRODUCT, (c)
5  all costs YOU have incurred in connection with each such MATTEL PRODUCT,
6  including but not limited to YOUR cost of goods sold, and (d) YOUR gross and net
7  profits from each such MATTEL PRODUCT.

8    12.   "DESIGN" or "DESIGNS" means any and all representations, whether
9  two-dimensional or three dimensional, and whether in tangible, digital, electronic or
10  other form, including but not limited to all works, designs, artwork, sketches,
11  drawings, illustrations, representations, depictions, blue prints, schematics, diagrams,
12  images, sculptures, prototypes, models, samples, rotocasts, reductions to practice,
13  development, inventions, or improvements, as well as all other items, things and
14  DOCUMENTS in which any of the foregoing are or have been expressed, embodied,
15  contained, fixed or reflected in any manner, which in whole or in part.

16    13.   "DIGITAL INFORMATION" means any information created or stored
17  digitally, including but not limited to electronically, magnetically, or optically.

18    14.   "DOCUMENT[S]" incorporates the full meaning of Federal Rule of
19  Civil Procedure 34, and shall be construed in the broadest sense to mean any and all
20  DIGITAL INFORMATION, STORAGE DEVICE, writings, tangible things and
21  property, of any kind, that are now or that have been in YOUR actual or constructive
22  possession, custody or control, including, but not limited to, any handwritten,
23  typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded,
24  transcribed, graphic or photographic matter of any kind or nature, in, through, or
25  from which information may be embodied, translated, conveyed or stored, whether
26  an original, a draft or copy, however produced or reproduced, whether sent or
27  received or neither, including, but not limited to, notes, memoranda, correspondence,
28  letters, facsimiles and facsimile transmittals, reports, inter- and intra-office

EXHIBIT  7
PAGE  71

1 COMMUNICATIONS, work papers, work sheets, work records, ledgers, graphs,

2 indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills,

3 bills of lading, bids, time cards, receipts, purchase orders, telephone records,

4 telegrams, telexes, literature, invoices, contracts, purchase orders, estimates,

5 recordings, transcriptions of recordings, records, books, pamphlets, periodicals,

6 publications, papers, tapes, DVDs, video CDs, video, audio and digital recordings,

7 television commercials, story boards, website or other spot advertisements, movies,

8 movie trailers, prototypes, products, diaries, calendars, charts, drawings, sketches,

9 messages, photographs and data contained in or accessible through any electronic

10 data processing system, including, but not limited to, computer databases, data sheets,

11 data processing cards, computer files and tapes, computer disks, CD-ROMs,

12 computer metadata, microfilm, microfiche, electronic mail, website and web pages

13 and transcriptions thereof and all other memorializations of any conversations,

14 meetings and conference, by telephone or otherwise.  The term DOCUMENT also

15 means every copy of a DOCUMENT, where such copy is not an identical duplicate

16 of the original, whether because of deletions, underlinings, showing of blind copies,

17 initialing, signatures, receipt stamps, comments, notations, differences in stationery

18 or any other difference or modification of any kind.

19     15.     The term "EMPLOYEE INVENTIONS AGREEMENT" refers to

20 Mattel's form of employment agreement concerning, *inter alia*, (i) ownership of

21 inventions, and (ii)(a) trade secrets and/or (iii) conflicts, whether known by the title

22 "Employee Confidential Information and Inventions Agreement" or any other title,

23 including without limitation the form of Employee Inventions Agreement entitled

24 "Employee Confidential Information and Inventions Agreement" executed by Carter

25 Bryant on or about January 4, 1999.

26     16.     "IDENTIFY," "IDENTITY," or "IDENTIFYING" mean the following:

27         •     With reference to an *individual*, means to state fully and

28 separately for each, such individual's full name, any known business title, current or

6

EXHIBIT ___7___
PAGE ___72___

1  last known business affiliation, current or last known residential address, current or

2  last known business address, current or last known relationship with MATTEL, and

3  current or last known phone number(s).

4          •  With reference to an *entity*, means to state, fully and separately

5  for each, such entity's full name, state (or country) of incorporation or organization,

6  present or last known address, and present or last known telephone number(s).

7          •  With reference to any *DOCUMENT*, means to describe each

8  DOCUMENT by Bates number.  If the DOCUMENT does not have a Bates number,

9  IDENTIFY means to provide a complete description of the DOCUMENT such that it

10  may be the subject of a request for production of documents, including by stating the

11  date, identity of the author, addresses(s), recipient(s), signatories, parties, or other

12  PERSONS identified in the DOCUMENT, its present location or custodian and a

13  description of its contents.

14          •  With reference to any MATTEL or MGA product, means to state

15  fully and separately for each, the full name of the product; the number of the product;

16  the SKU of the product; any other applicable designation of the product; the period

17  of time in which the product has been sold; and IDENTIFY each PERSON who has

18  licensed such product.

19      17.  "MATTEL," "YOU," or "YOUR" means the party Mattel, Inc. and any

20  of its past or present officers, directors, employees, parents, subsidiaries, divisions,

21  affiliates, predecessors-in-interest, and joint venture partners.

22      18.  "MATTEL EMPLOYEE" means any of MATTEL's current or former

23  employees.

24      19.  "MATTEL'S INITIAL DISCLOSURES" means Mattel, Inc.'s

25  Consolidated (1) Initial Disclosures Relating to MGA's Unfair Competition Claims,

26  and (2) Second Supplemental Initial Disclosures Relating to Mattel's Claims Against

27  Bryant and MGA, dated January 5, 2007 and any supplemental or amendment

28  thereto.

7

EXHIBIT __7__
PAGE __73__

20. "MATTEL PRODUCTS," includes all products sold or offered by sale by MATTEL under or using the name "Barbie," including without limitation, all CONTESTED MATTEL PRODUCTS, all MY SCENE DOLLS, and any doll sold or offered for sale under the name "Diva Starz."

21. "MY SCENE" means and refers to each image, character, logo, doll, fashion doll, toy, styling head, plush toy, play set, accessory, product, packaging or any other thing that is or has ever been manufactured, marketed or sold by YOU, or others under licensed by YOU, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name "My Scene."

22. "MY SCENE DOLL" means any fashion doll that is or has ever been distributed, marketed, sold or offered for sale under the name "My Scene" or as part of the "My Scene" line, including separate themes.

23. "PERSON" or "PERSONS" means all natural persons, partnerships, joint ventures and any kind of business, legal or public entity or organization, as well as its, its or her agents, representatives, employees, officers and directors and any one else acting on its, its or her behalf, pursuant to its, its or her authority or subject or its, its or her control.

24. "REFERRING OR RELATING TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

25. "STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION" means to (i) describe in detail the complete factual for the identified contention; (ii) IDENTIFY all DOCUMENTS that REFER OR RELATE TO that contention; and (iii) IDENTIFY all witnesses who may have information that REFERS OR RELATES TO the contention.

26. "STORAGE DEVICE" means any computer hard drive, memory, USB device, tape, storage array or any other device or medium that allows a user, whether

8

EXHIBIT ___7___
PAGE ___74___

1  permanently, temporarily or otherwise, to create, generate, transmit, copy, retain,
2  store, or maintain DIGITAL INFORMATION.

3       27.   "SOURCE OF INFORMATION" means any PERSON or medium
4  containing DOCUMENTS, DIGITAL INFORMATION, or other information,
5  whether in paper, electronic or other form, including, but not limited to any
6  STORAGE DEVICE, file, file cabinet, or any other source of information or
7  DOCUMENTS.

8       28.   "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-9059
9  SGL (RNBx), filed on April 27, 2004 and all cases consolidated or coordinated
10 therewith.

11      29.   The singular form of a noun or pronoun includes within its meaning the
12 plural form of the noun or pronoun so used, and vice versa; the use of the masculine
13 form of a pronoun also includes within its meaning the feminine form of the pronoun
14 so used, and vice versa; the use of any tense of any verb includes also within its
15 meaning all other tenses of the verb so used, whenever such construction results in a
16 broader request for information; and "and" includes "or" and vice versa, whenever
17 such construction results in a broader disclosure of documents or information.

18
19                          **INSTRUCTIONS**

20      1.    Mattel is instructed to serve written responses to these Interrogatories on
21 MGA's counsel at Skadden, Arps, Slate, Meagher & Flom, LLP, 300 South Grand
22 Avenue, Los Angeles, California 90071.

23      2.    Pursuant to Federal Rule of Civil Procedure 33, Mattel shall provide its
24 answers under oath within 30 days of service.

25      3.    If, in responding to these Interrogatories, Mattel asserts an ambiguity in
26 either a particular Interrogatory or an Instruction of Definition applicable thereto,
27 Mattel shall identify in the response to such Interrogatory the language it contends is
28 ambiguous and state the interpretation used in responding.

9

EXHIBIT ___7___
PAGE ___95___

1    4.    These Interrogatories impose a continuing obligation subsequent to your
2  initial production to the full extent provided for in Rule 26(e) of the Federal Rules of
3  Civil Procedure.

4    5.    If, in responding to these Interrogatories, any information is not being
5  provided based on an objection or otherwise, IDENTIFY the information not be
6  provided and explain the complete basis supporting YOUR refusal and/or failure to
7  provide that information.

8    6.    Unless otherwise noted, these Interrogatories seek information from
9  January 1, 1995, to the present.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

10

EXHIBIT  7
PAGE  76

1
2                                    **INTERROGATORIES**
3   INTERROGATORY NO. 12:
4          IDENTIFY each version of the EMPLOYEE INVENTIONS AGREEMENT
5   adopted and/or used by or on behalf of MATTEL, including, without limitation,
6   (a) the IDENTITY of all persons who participated in or were consulted concerning
7   the creation, drafting, adoption, and/or use of the EMPLOYEE INVENTIONS
8   AGREEMENT; (b) the date(s) and/or range(s) of dates MATTEL'S used each
9   version of the EMPLOYEE INVENTIONS AGREEMENT; and (c) the reason(s) for
10  the changes between each version.
11
12  INTERROGATORY NO. 13:
13         Describe in detail each instance in which any provision of an EMPLOYEE
14  INVENTIONS AGREEMENT was breached or alleged to be breached by an
15  employee, independent contractor, or any other person with whom MATTEL had
16  entered into an EMPLOYEE INVENTIONS AGREEMENT, including without
17  limitation: (a) a complete description of the conduct comprising said breach; and (b)
18  a complete description of all steps taken by MATTEL in response to said breach or
19  alleged breach (*including, for example, conducting an investigation or arranging*
20  *that an investigation be conducted on MATTEL'S behalf; issuing a warning, whether*
21  *written or oral; issuing any other notification, whether written or oral; initiating*
22  *civil litigation, including the name, case number and court of any such litigation;*
23  *initiating any other legal proceeding, including but not limited to criminal*
24  *proceedings, including the name, case number and court of any such proceeding;*
25  *making an exception, whether written, oral, express, or implied; making a*
26  *determination that no breach occurred, whether or not such determination was*
27  *documented; or no action*).
28

                                         11

EXHIBIT ___7___
PAGE ___77___

1 INTERROGATORY NO. 14:

2      IDENTIFY each version of the CONFLICT OF INTEREST

3 QUESTIONNAIRE adopted and/or used by or on behalf of MATTEL, including,

4 without limitation, (a) the identity of all persons who participated in or were

5 consulted concerning the creation, drafting, adoption, and/or use of the CONFLICT

6 OF INTEREST QUESTIONNAIRE; (b) the date(s) and/or range(s) of dates

7 MATTEL'S used each version of the CONFLICT OF INTEREST

8 QUESTIONNAIRE; and (c) the reason(s) for the changes between each version.

9

10 INTERROGATORY NO. 15:

11      Describe in detail each instance in which any provision of a CONFLICT OF

12 INTEREST QUESTIONNAIRE was breached or alleged to be breached by an

13 employee, independent contractor, or any other person with whom MATTEL had

14 entered into a CONFLICT OF INTEREST QUESTIONNAIRE, including without

15 limitation: (a) a description of the conduct comprising said breach; and (b) a

16 description of all steps taken by MATTEL in response to said breach or alleged

17 breach *(including, for example, conducting an investigation or arranging that an*

18 *investigation be conducted on MATTEL'S behalf; issuing a warning, whether written*

19 *or oral; issuing any other notification, whether written or oral; initiating civil*

20 *litigation, including the name, case number and court of any such litigation;*

21 *initiating any other legal proceeding, including but not limited to criminal*

22 *proceedings, including the name, case number and court of any such proceeding;*

23 *making an exception, whether written, oral, express, or implied; making a*

24 *determination that no breach occurred, whether or not such determination was*

25 *documented; or no action).*

26

27

28

12

EXHIBIT  7
PAGE  76

1 INTERROGATORY NO. 16:

2 STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION
3 that MATTEL has a viable affirmative claim for relief against MGA even if the
4 evidence establishes both of the following: (i) in August and/or September, 1998,
5 Carter Bryant conceived of the line of fashion dolls that he named Bratz, and (ii) the
6 design for the BRATZ dolls sold by MGA in 2001 was reduced to practice after
7 October 20, 2000.

8

9 INTERROGATORY NO. 17:

10 STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION
11 that MATTEL employees in the Design Center who personally knew Carter Bryant
12 did not know and/or believe, immediately following the launch of MGA's Bratz
13 dolls in 2001, that Carter Bryant was the creator of the concept for the BRATZ line
14 of dolls.

15

16 INTERROGATORY NO. 18:

17 STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION
18 that any of the fashions and/or accessories for the BRATZ line of dolls sold by MGA
19 violate or infringe any of MATTEL'S intellectual property and/or proprietary rights.
20

21 INTERROGATORY NO. 19:

22 IDENTIFY with specificity each element of each ALLEGED
23 COPYRIGHTED WORK that MATTEL contends is an original element protectable
24 under the United States Copyright Laws.

25

26

27

28

13

EXHIBIT 7
PAGE 79

1 | INTERROGATORY NO. 20:

2 |      IDENTIFY with specificity each ALLEGED TRADE SECRET, including the
3 | IDENTITY of each DOCUMENT that embodies or REFERS OR RELATES to each
4 | ALLEGED TRADE SECRET.

5 |

6 | INTERROGATORY NO. 21:

7 |      IDENTIFY each PERSON who has had access to each ALLEGED TRADE
8 | SECRET, including (a) the ALLEGED TRADE SECRET each PERSON had access
9 | to; and (b) the date or dates each PERSON had this access.

10 |

11 | INTERROGATORY NO. 22:

12 |      STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION
13 | that MGA misappropriated any ALLEGED TRADE SECRET.

14 |

15 | INTERROGATORY NO. 23:

16 |      STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION
17 | that the ALLEGED TRADE SECRETS are protectable.

18 |

19 | INTERROGATORY NO. 24:

20 |      DESCRIBE THE SALES AND PROFITS for each MATTEL PRODUCT that
21 | has been sold or offered for sale by YOU or YOUR licensees. (The time period
22 | applicable to this interrogatory is from January 1, 1990 to the present).

23 |

24 | INTERROGATORY NO. 25:

25 |      IDENTIFY, fully and separately, each and every PERSON who was involved
26 | in the development or marketing of the CONTESTED MATTEL PRODUCTS by
27 | stating each PERSON'S name, role, and start/end date. (As used in this
28 | Interrogatory, the phrase "development or marketing" means the entire process of

14

EXHIBIT 7
PAGE 80

1  creating and selling a new product or design, including without limitation, the

2  marketing, advertising, promotion, licensing, offering for sale, conception, origin,

3  creation, design, development, sculpting, engineering, reduction to practice, tooling

4  or painting of a product or embodiment of a product).

5

6  INTERROGATORY NO. 26:

7       Describe in detail all instances in which a PERSON expressed confusion as to

8  source or sponsorship between any MATTEL products, packaging or advertising

9  (including, but not limited to, the CONTESTED MATTEL PRODUCTS) and any

10  MGA products, packaging or advertising (including, but not limited to, "BRATZ"),

11  by: (i) stating the facts and circumstances of each instance; (ii) IDENTIFYING all

12  DOCUMENTS that REFER OR RELATE TO each instance; and (iii)

13  IDENTIFYING all witnesses who may have information that REFER OR RELATE

14  TO each instance.

15

16  INTERROGATORY NO. 27:

17       For each PERSON listed in MATTEL'S INITIAL DISCLOSURES,

18  IDENTIFY each PERSON and describe in detail each PERSON's alleged

19  knowledge of the subjects or information identified in MATTEL'S INITIAL

20  DISCLOSURES.

21

22  INTERROGATORY NO. 28:

23       Describe in detail the complete factual basis for YOUR COUNTERCLAIMS,

24  including, without limitation all facts, DOCUMENTS, and witnesses that REFER

25  OR RELATE TO YOUR COUNTERCLAIMS.

26

27

28

15

EXHIBIT __7__

PAGE __8 1__

1 INTERROGATORY NO. 29:

2     Describe in detail any estimate or calculation of damage, loss, injury, or unjust

3 enrichment, by reason of any act or omission alleged in YOUR COUNTERCLAIMS,

4 that YOU have made or that has been made on YOUR behalf or at YOUR request,

5 including all facts, DOCUMENTS or witnesses RELATING TO each estimate or

6 calculation.

7

8 INTERROGATORY 30:

9     IDENTIFY each and every SOURCE OF INFORMATION from which YOU

10 have COLLECTED DOCUMENTS that REFER OR RELATE TO BRATZ.

11

12 INTERROGATORY 31:

13     STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION

14 that any BRATZ doll is substantially similar to, a copy or a derivative of BRATZ

15 DESIGNS created by Carter Bryant on or before October 19, 2000.

16

17

18 DATED: December 4, 2007

19                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

20                          By: _____

21                            Robert J. Herrington

                           Attorneys for Counter-Defendants, MGA

22                          ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED,

23                          AND MGAE de MEXICO S.R.L. de C.V.

24

25

26

27

28

EXHIBIT 7
PAGE 82

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

On December 4, 2007, I served the foregoing document described as:

### MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.

on the interested parties in this action addressed as follows:

### SEE ATTACHED SERVICE LIST

☒   (BY PERSONAL SERVICE)   ☐   By personally delivering copies to the person served. (FEDERAL)

☒   I caused such document to be hand delivered to the office of the addressee. (FEDERAL) [As Noted.]

☒   **(BY MAIL)** I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service and the fact that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices. [As Noted.]

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on December 4, 2007 at Los Angeles, California.

Allison G. Velkes
PRINT NAME                          SIGNATURE

1

EXHIBIT __7__
PAGE __83__

## SERVICE LIST

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
(213) 443-3000
(213) 443-3100 (Fax)

Attorneys for Mattel, Inc.
[Personal Service]

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400
(415) 397-7188 (Fax)

Attorneys for Carter Bryant
[Mail]

Mark E. Overland, Esq.
Alexander H. Cote, Esq.
David C. Scheper, Esq.
Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071
(213) 613-4655
(213) 613-4656 (Fax)

Attorneys for Carlos Gustavo Machado
Gomez
[Mail]

2

EXHIBIT __7__
PAGE __84__