1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11 CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)
                                        Consolidated with Case Nos. CV 04-09059
12            Plaintiff,                and CV 05-02727

13       vs.                            **DISCOVERY MATTER**

14 MATTEL, INC., a Delaware             **[To Be Heard By Discovery Master
   corporation,                         Robert C. O'Brien]**
15
              Defendant.                **[PUBLIC REDACTED] REPLY IN
16                                       SUPPORT OF MATTEL, INC.'S
                                         MOTION TO COMPEL BINGHAM
17 AND CONSOLIDATED ACTIONS              MCCUTCHEN LLP TO PRODUCE
                                         DOCUMENTS RESPONSIVE TO
18                                       SUBPOENA**

19                                      [Declaration of Stephen Hauss filed
                                        concurrently herewith]
20
                                        Hearing Date:   April 14, 2009
21                                      Time:           10:00 a.m.
                                        Place:          Arent Fox, LLP
22                                                      555 West Fifth Street
                                                        48th Floor
23                                                      Los Angeles, CA 90013

24                                      **Phase 2:**
                                        Disc. Cut-off:   December 11, 2009
25                                      Pre-trial Conf.: March 1, 2010
                                        Trial Date:      March 23, 2010
26

27

28

07975/2841049.1

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ...................................................................................................... 4

I.   MATTEL HAS SHOWN ITS REQUESTS ARE RELEVANT TO PHASE 2 ................................................................................................ 4

    A.   Fee Agreements Between MGA and Third-Party Witnesses Are Relevant to Bias and Credibility .............................................. 4

    B.   The Opposition Ignores Mattel's Showing That The Documents Sought Are Relevant to MGA's and Larian's Net Worth and Financial Condition ......................................................................... 6

    C.   Bingham's Overbreadth Objection Is Without Merit ........................... 10

II.   BINGHAM HAS FAILED TO SHOW THAT THE REQUESTED INFORMATION IS PRIVILEGED ................................................................ 14

    A.   Contrary to Bingham's Assertions, The Fee Agreements Sought By Mattel Are Not Privileged ................................................ 14

    B.   The Opposition Fails To Show That Any Other Mattel Request Seeks Privileged Information ........................................... 16

III.   THE OPPOSITION FAILS TO PROVE UNDUE BURDEN ........................ 17

IV.   BINGHAM, NOT MATTEL, SHOULD BE SANCTIONED ....................... 19

CONCLUSION ................................................................................................ 20

REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL BINGHAM MCCUTCHEN LLP TO PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENA

# TABLE OF AUTHORITIES

**Page**

## Cases

A. Farber and Partners, Inc. v. Garber,
  234 F.R.D. 186 (C.D. Cal. 2006)................................................................17

Agster v. Maricopa County,
  422 F.3d 836 (9th Cir. 2005) ...................................................................14

Berger v. Seyfarth Shaw, LLP,
  2008 WL 4570687 (N.D. Cal. 2008) ........................................................15

Carter Bryant v. Mattel
  No. CV 04-9059...................................................................................13, 16

Clarke v. American Commerce Nat'l Bank,
  974 F.2d 127 (9th Cir. 1992) .........................................................15, 16, 17

Fletcher v. Atex, Inc.,
  156 F.R.D. 45 (S.D.N.Y. 1994).................................................................17

Folb v. Motion Picture Indus. Pension & Health Plans,
  16 F. Supp. 2d 1164 (C.D. Cal. 1998), aff'd, 216 F.3d 1082 (9th Cir. 2000) ......14

Goodman v. U.S.,
  369 F.2d 166 (9th Cir. 1966) ....................................................................17

In re Grand Jury Subpoenas,
  803 F.2d 493 (9th Cir. 1986) ...............................................................15, 16

JZ Buckingham Investments, LLC v. United States,
  78 Fed. Cl. 15 (Fed. Cl. 2007)..................................................................17

Mattel, Inc. v. Walking Mountain Productions,
  353 F.3d 792 (9th Cir. 2003) ....................................................................11

McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,
  894 F.2d 1482 (5th Cir. 1990) ..................................................................17

Nagele v. Electronic Data Systems Corp.,
  193 F.R.D. 94 (W.D.N.Y. 2000) ...............................................................17

Northrop Corp. v. McDonnell Douglas Corp.,
  751 F.2d 395 (D.C. Cir. 1984)..................................................................17

Panola Land Buyers Ass'n v. Shuman,
  762 F.2d 1550 (11th Cir. 1985) ................................................................17

Paulsen v. Case Corp.,
  168 F.R.D. 285 (C.D. Cal. 1996)................................................................4

Ragge v. MCA/Universal Studios,
 165 F.R.D. 601 (C.D. Cal. 1995)..................................................................4

Religious Tech. Ctr. v. Wollersheim,
 971 F.2d 364 (9th Cir. 1992) ...................................................................14

Residential Constructors, LLC v. Ace Property and Cas. Ins. Co.,
 2006 WL 3149362 (D. Nev. 2006)...........................................................17

S.E.C. v. First Jersey Securities, Inc.,
 1990 WL 209246 ................................................................................5, 16

Televisa, S.A. v. Univision Communications, Inc.,
 2008 WL 4951213 (C.D. Cal. 2008) .........................................................18

Tornay v. United States,
 840 F.2d 1424 (1988) ............................................................................16

U.S. E.E.O.C. v. ABM Industries Inc.,
 2008 WL 5385618 (E.D. Cal. 2008) .........................................................17

U.S. v. City of Torrance,
 164 F.R.D. 493 (C.D. Cal. 1995)................................................................4

U.S. v. Landon,
 2006 WL 3377894 (N.D. Cal. 2006) .........................................................15

United States v. Abel,
 469 U.S. 45 (1984)..................................................................................5

United States v. Blackman,
 72 F.3d 1418 (9th Cir. 1995) ...................................................................15

**Other Authorities**

Wright & Young, Federal Practice & Procedure: Federal Rules of Evidence § 6095,
 at 641 (2007).........................................................................................5

07975/2841049.1

## Preliminary Statement

The moving papers cited both Ninth Circuit precedent and prior Orders in this case holding that fee information and the identity of persons responsible for fees are (1) relevant to bias and credibility, and (2) not privileged.  In its Opposition, Bingham McCutchen LLP ("Bingham") does not dispute that the exact information would be contained in documents responsive to the subpoena now at issue.  Bingham tries to distinguish this authority because Omni 808, Vision Capital and Lexington Financial Limited (the "Entities") are purportedly non-party witnesses and that the prior Orders concern the payment of fees for a former party, namely, Carter Bryant.  That ostensible distinction is unavailing.  The payment of fees of a witness—whether a party or non-party witness—is discoverable, and the Discovery Master has already ruled that the alleged purchase of the Wachovia debt by Omni 808 is discoverable, rendering not only the Entities, but their actors, such as Neil Kadisha, Fred Mashian and Peter Carson, witnesses with relevant information

Mattel is unquestionably entitled to discover whether MGA, any MGA employee, Larian or any Larian family member or associate is paying the Entities' legal fees.  The Discovery Master expressly recognized in his March 10, 2009 Order that "any information evidencing MGA's indebtedness to Omni 808 Investors, LLC from the purchase of the alleged Wachovia debt or direct loans to MGA is relevant to MGA's net worth (and hence punitive damages)."[1]  As such, Omni 808 and its principal, Neil Kadisha, will be called upon to testify.  Other witnesses associated with Omni 808, including Vision Capital, Lexington Financial Limited, the other third-party entities, Leon Neman, Fred Mashian and Peter Carson will also be called upon to testify.  The source of payment of these third-party witnesses' legal fees is directly relevant to the credibility and bias of such percipient witnesses.

---

[1]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 19, attached as Exhibit 1 to the Declaration of Stephen Hauss in Support of Mattel's Reply in Support of Its (footnote continued)

07975/2841049.1

-1-
REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL BINGHAM MCCUTCHEN LLP TO PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENA

1          The Opposition also ignores Mattel's showing that the subpoena is relevant

2    to MGA's and Larian's net worth, arguing that Mattel's requests "are in no way

3    probative of MGA's financial condition." As Mattel demonstrated in its moving papers,

4    the requests are reasonably calculated to discover (1) who is paying the Entities' legal

5    fees, and (2) who is actually behind the Entities. This information is directly relevant to

6    determining whether the Entities' acquisition of the majority of MGA's claimed debt

7    was arm's length or, as Mattel believes may be the case, a mid-trial sham transaction

8    carried out by Larian to manipulate MGA's finances. The question of whether MGA is

9    under an *actual* obligation to repay the more than $300 million in debt that it claims to

10   owe to the Entities is indisputably relevant—and indeed critically important—to

11   MGA's and Larian's net worth and financial condition.

12         This information is all the more relevant in light of the new evidence—

13   produced by Wachovia but not by MGA, Larian, any of the Entities or Bingham—

14   showing that the Entities' representations that Isaac Larian was not involved in the

15   Entities' purported acquisition of the debt are neither truthful nor candid. Among the

16   documents produced by Wachovia Bank on March 16, 2009 is a copy of OmniNet's

17   offer letter to Wachovia, dated July 29, 2008. In that letter, OmniNet notes that ██████

18   ████████████████████████████████████████████████████████████████

19   ████████████████████████████████████[2]

20         Equally troubling in light of the Entities on-the-record representations to

21   Judge Larson and the Discovery Master, Wachovia also produced copies of contracts

22   that belie the Entities' and Bingham's contentions. Wachovia produced a copy of the

23   "Secured Delayed Draw Demand Note" between MGA and Omni 808.[3] Paragraph 3 of

24   that agreement expressly reveals that ***Omni 808's funding to MGA originated from***

25   

26   Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to Subpoena, dated March 18, 2009 ("Hauss Dec.") and filed concurrently herewith.

27      [2]   OmniNet Capital, LLC's offer letter to Wachovia Bank, dated July 29, 2008, Hauss Dec., Exh. 3 (emphasis added).

28      [3]   See Secured Delayed Draw Demand Note, Hauss Dec., Exh. 5.

1   *IGWT 826 Investments*—an entity which, as the Discovery Master has recognized, is

2   "affiliated with—if not wholly owned by—Larian."[4]  It thus appears that Omni 808 and

3   IGWT 826 Investments are merely shells that Larian is using to mask his own capital

4   contributions to MGA that both he and the Entities are misrepresenting as debt.

5   Wachovia also produced another agreement to which MGA is a party that specifically

6   identifies and treats Omni as an ██████████ of MGA.[5]  Plainly, Mattel is entitled to

7   further investigate Isaac Larian's and MGA's role in the Entities' acquisition of the

8   supposed debt, including to show that it was a sham transaction that should not be

9   counted as debt in assessing MGA's or Larian's net worth.

10          Bingham's burden and overbreadth objections to the subpoena should be

11   overruled.  As the party resisting discovery, Bingham must show with evidence that the

12   burden involved in responding to Mattel's subpoena is "undue."  Yet, it offers no

13   evidence in support of its claim of undue burden; no description of the volume of

14   documents involved, nor of any time or expense required to respond to the subpoenas.

15   Nor could Bingham make any such showing, given that its clients, Omni 808 and

16   Vision Capital, are recently-formed, single-purpose entities.  Indeed, just last week

17   MGA's counsel dismissed as "hogwash" any claim that it is burdensome to search

18   through lawyer files.[6]  Nor does Bingham make any showing whatsoever to substantiate

19   its rhetoric that Mattel's requests are overbroad.

20          Accordingly, Mattel respectfully requests that the Discovery Master grant

21   Mattel's Motion to Compel.

---

24   [4]  See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 25, Hauss Dec.,
25   Exh. 1.
     [5]  See Senior Promissory Note, dated September 3, 2008, Hauss Dec. 7 (section 9(b) states
26   that ████████████████████████████ of MGA under the terms of the Note); see
     also September 8, 2008 Wachovia Memo. at WACHOVIA_001886, Hauss Dec. 8,
27   (summarizing terms of Wachovia's Senior Note and stating that ██████
     ████████).
28   [6]  See March 11, 2009 Hearing Transcript, at 65:11-24, Hauss Dec. Exh. 9.

1           **Argument**

2  **I.    MATTEL HAS SHOWN ITS REQUESTS ARE RELEVANT TO PHASE 2**

3           In the moving papers, Mattel demonstrated that the information sought in

4  its subpoena is relevant.  The Opposition fails to refute that showing.  First, the Court

5  and previous Discovery Master have previously recognized that fee agreements and

6  related documents are relevant to bias and credibility.  Second, Mattel's requests

7  seeking discovery of the real parties behind the newly-formed third-party entities is

8  relevant to MGA's and Larian's financial condition and net worth; both are

9  unquestionably at issue in the Phase 2 trial.[7]

10      **A.    Fee Agreements Between MGA and Third-Party Witnesses Are**

11             **Relevant to Bias and Credibility**

12          The moving papers showed that MGA has a record of paying legal fees for

13  third-party witnesses in this action.[8]  The existence of a fee agreement or payments

14  between a witness and MGA, any MGA employee, Larian or any Larian family

15  member or associate bears upon the bias and credibility of the witness.[9]

16          Information is relevant and discoverable if it relates to the credibility of

17  any witness.  See Paulsen v. Case Corp., 168 F.R.D. 285, 287-88 (C.D. Cal. 1996);

18  Ragge v. MCA/Universal Studios, 165 F.R.D. 601, 603-04 (C.D. Cal. 1995); U.S. v.

19  City of Torrance, 164 F.R.D. 493, 495 (C.D. Cal. 1995).  Evidence of bias is also

20

21      [7]  As Mattel demonstrated in its Motion, Mattel's requests are relevant also to numerous
other Phase 2 issues, including Mattel's RICO claims, disgorgement, MGA's unclean hands

22  defense and Mattel's unfair competition claim.  (See Mot. at 9-11).  Mattel recognizes that the
Discovery Master rejected these arguments in connection with Mattel's requests to the Entities

23  in his March 10, 2009 Order.  Mattel, however, respectfully submits that the Discovery
Master's Order is unduly narrow and reserves its objections thereto.

24      [8]  See Deposition of Lisa Tonnu, Volume 5, dated January 24, 2008, at 1174:24-1175:21
(payment of Farhad Larian's legal fees), 1181:6-9 (Lucy Arant), 1182:3-6 (Margaret Hatch-

25  Leahy), 1182:13-16 (Sarah Halpern), 1183:23-1184:6 (Veronica Marlow), 1187:23-1188:1
(Janine Brisbois), attached as Exhibit 12 to the Declaration of James J. Webster in Support of

26  Mattel's Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to
Subpoena, dated March 5, 2009 ("Webster Dec.").

27      [9]  Mattel's Request No. 7 to Bingham, which seeks documents sufficient to identify any
instances in which Bingham has previously represented MGA, any affiliate of MGA, Issac

28  Larian or Larian's family members or associates, is relevant for the same reason.

1 │ relevant and discoverable. United States v. Abel, 469 U.S. 45, 50-51 (1984); see also

2 │ Wright & Young, Federal Practice & Procedure: Federal Rules of Evidence § 6095, at

3 │ 641 (2007) (bias is a "particularly favored basis for attacking witness credibility.").

4 │ Both Judge Larson and the former Discovery Master have so ruled in this case.  The

5 │ prior Discovery Master ruled repeatedly that "[f]ee or indemnity agreements are

6 │ relevant to demonstrate bias and lack of credibility." Order Granting Mattel's Motion to

7 │ Compel Production of Documents and Interrogatory Responses by MGA, dated May

8 │ 15, 2007, at 10.[10] The Court has held the same, stating that "fee payment arrangements

9 │ are relevant to credibility and bias." Order Re Motions Heard on June 11, 2007, dated

10 │ June 27, 2007, at 33-34.

11 │         In its Opposition, Bingham argues that the Orders of the Court and

12 │ Discovery Master should be disregarded because they concern fee agreements between

13 │ MGA and other (then) parties, such as Carter Bryant. Bingham argues that the present

14 │ requests seek information regarding the payment of non-parties' fees. (Opp. at 14-15).

15 │ This distinction is illogical and unsupported.  First, nothing in the Court's or the

16 │ Discovery Master's Orders supports such a distinction.[11]  Nor does Bingham cite a

17 │ single case holding that fee agreements are only relevant and discoverable if they

18 │ concern payment of a party's, rather than a non-party witness's fees. Bingham's failure

19 │ to identify a single authority in support of its position is not surprising, as courts hold

20 │ that non-parties' fee arrangements with their non-party lawyers are relevant to

21 │ credibility and bias. See, e.g., S.E.C. v. First Jersey Securities, Inc., 1990 WL 209246,

22 │

23 │ [10]  See also Order Granting Mattel's Motion to Compel Documents, dated January 25,
24 │ 2007, at 11-12, Webster Dec., Exh. 8; Order Granting in Part and Denying in Part Mattel's
    │ Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents
    │ by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4, Webster Dec., Exh. 10.
25 │ [11]  See Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at
    │ 11-12, Webster Dec., Exh. 8; Order Granting Mattel's Motion to Compel Production of
26 │ Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10, Webster Dec.,
    │ Exh. 9; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's
27 │ Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for
    │ Sanctions, dated June 19, 2007, at 2-4, Webster Dec., Exh. 10; Order Re Motions Heard on
28 │ June 11, 2007, dated June 27, 2007, at 33-34, Webster Dec., Exh. 11.

REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL BINGHAM MCCUTCHEN LLP TO
PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENA

1  at *1 (granting motion to compel disclosure of non-party's fee agreements with his non-

2  party lawyer, because "[i]nformation regarding a witnesses fee arrangement with an

3  attorney is relevant as potentially revealing bias, an interest in the outcome of the

4  litigation, or other common interests with parties to the litigation").

5      The Opposition also argues that "none [of the Entities] are percipient

6  witnesses to anything related to Phase 2, and thus, none will testify at trial." (See Opp.

7  at 15). Not so. As set forth below, the Entities' supposed acquisition of the majority of

8  MGA's alleged debt—and the question of whether MGA is under an actual obligation

9  to repay that ostensible debt or whether it is just a sham—is critically important to

10  accurately determining MGA's and Larian's net worth and financial condition.  Indeed,

11  the Discovery Master expressly recognized in his March 10, 2009 Order that "any

12  information evidencing MGA's indebtedness to Omni 808 Investors, LLC from the

13  purchase of the alleged Wachovia debt or direct loans to MGA is relevant to MGA's net

14  worth (and hence punitive damages)."[12]  Witnesses associated with Omni 808, Vision

15  Capital and the other third-party entities, including Leon Neman, Fred Mashian, Neil

16  Kadisha and Peter Carson, will be called upon to testify (and indeed are the subject of

17  deposition subpoenas served by Mattel) about the purported debt's terms, nature,

18  amount and legitimacy (or lack thereof). The identity of the payor of these third-party

19  witnesses' legal fees is directly relevant to the credibility and bias of percipient

20  witnesses and a well-settled basis to question their testimony.

21  **B.   The Opposition Ignores Mattel's Showing That The Documents**

22  **Sought Are Relevant to MGA's and Larian's Net Worth and**

23  **Financial Condition**

24      The Opposition does not dispute, and indeed the Discovery Master's

25  March 10, 2009 Order expressly recognizes, that Isaac Larian's and MGA's net worth

26

27  _____

[12]  See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 19, Hauss Dec., Exh. 1.

28

1   and financial condition are at issue in Phase 2 of this case.[13]  The Opposition argues,
2   however, that Mattel's requests "are in no way probative of MGA's financial condition."
3   (Opp. at 16).  This is incorrect.  As Mattel has repeatedly shown, its requests are
4   reasonably calculated to discover (1) who is paying the Entities' legal fees, and (2) who
5   is actually behind the Entities.[14]  Information showing that MGA, any MGA employee,
6   Larian or any Larian family member or associate is paying the Entities' legal fees, or is
7   otherwise involved in the operation of the Entities, is directly relevant to determining
8   whether the acquisition of this debt was a sham or related-party transaction.  Whether
9   or not MGA is in fact under an obligation to pay back some or none of the more than
10  $300 million in debt that it claims to owe to the Entities—and if so, how much and on
11  what purported terms—is a question that goes directly to the net worth of both MGA
12  and Isaac Larian, and is thus squarely within the scope of permissible discovery.

13          Evidence newly produced by Wachova—but withheld by MGA, Larian
14  and the Entities—further demonstrates the obvious relevance of this information.
15  Bingham has represented to the Court and to the Discovery Master that MGA and
16  Larian did not have an interest in the purported debt and, most certainly, has never
17  disclosed that he in fact does have such an interest despite repeated questioning on the
18  subject.  For example, at the February 11, 2009 hearing on the parties' post-trial
19  motions, when Judge Larson directly inquired whether the funds for the transaction had
20  come from MGA or Larian, Bingham indicated that they had not:

21          THE COURT:  You're representing to the Court, though,
22          that this was not MGA's money; that this was -- from wherever
23          it came from, it came from someplace else.
24          MR. GORDINIER:  Your Honor, two things.  I've never
25          met Mr. Larian, and I know less about MGA than almost everybody

26  _____
27  [13]  See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 19-21, Hauss Dec., Exh. 1.

28

1   else.

2   THE COURT: I'm not asking about what you know from

3   MGA but of what you know from your client.

4   MR. GORDINIER: What I know from my client is, he put

5   in many millions of dollars. He had a couple of investors with

6   him to put in many millions of dollars.

7   THE COURT: Those investors and that money did not

8   come from MGA?

9   MR. GORDINIER: That's the best of my understanding,

10  Your Honor. That's true.[15]

11  * * *

12  THE COURT: Your representation, then, is that based

13  on your information and belief, the proceeds for that were not

14  proceeds -- I said MGA, but MGA, Isaac Larian, any other MGA

15  entity.

16  MR. GORDINIER: As far as I know, Your Honor, this

17  was structured by Mr. Kadisha and the monies went to Wachovia.

18  THE COURT: I know that part. The question is where

19  the monies came from.

20  MR. GORDINIER: I know at least $50 million came from

21  Mr. Kadisha and his immediate -- that's -- it's serious money,

22  Your Honor. This was an arm's length transaction.[16]

23  Subsequently, at the March 4, 2009 Discovery Master hearing, Bingham

24  again represented that MGA and Larian did not contribute funds to the supposed

25  acquisition of the Wachovia debt:

26  _____

[14] See Mattel's Subpoena to Bingham McCutchen LLP, dated February 12, 2009, Webster
27  Dec., Exh. 1.
[15] See February 11, 2009 Hearing Transcript, at 71:16-72:5, Hauss Dec., Exh. 4.

28

1          MR. GORDINIER:  What documents do we have that

2          show that either Mr. Larian or MGA paid money into this to

3          purchase this debt?  I can tell you there are none.  This

4          is a ready, fire, aim situation.  The allegations that

5          were made and were made publicly are unconscionable and

6          can't be undone.[17]

7        It is beyond dispute that Bingham's representations led the Court and the

8 Discovery Master to believe that the Entities are independent of MGA and Larian.  As

9 the Discovery Master's March 10, 2009 Order notes:  "Based on the information

10 presented at the February 11, 2009 hearing and in connection with the pending motions,

11 it does not appear that either MGA Entertainment, Inc., MGA Entertainment (HK)

12 Limited, or Larian have an ownership interest in the Financing Entities."[18]

13        However, documents produced by Wachovia Bank on March 16, 2009

14 suggest that the Entities are not being candid or truthful.  Among the newly-produced

15 evidence is a copy of OmniNet's offer letter to Wachovia, dated July 29, 2008, relating

16 to the ostensible loan acquisition.  In that letter, OmniNet states that ███████████

17 ████████████████████████████████████████████████████████

18 ████████████████████████████████[19]

19        At least two contracts produced by Wachovia further show this.  Wachovia

20 produced a copy of the "Secured Delayed Draw Demand Note" between MGA and

21 Omni 808.[20]  Paragraph 3 of this agreement reveals that Omni 808's funding to MGA

22 comes from IGWT 826 Investments—an entity which, as the Discovery Master has

23

24

25   [16] See id. at 78:9-19.
       [17] See March 4, 2009 Discovery Master Hearing Transcript at 51:3-8, Hauss Dec., Exh. 2.

26   [18] See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 4, Hauss Dec., Exh. 1.

27   [19] OmniNet Capital, LLC's offer letter to Wachovia Bank, dated July 29, 2008, Hauss Dec., Exh. 3 (emphasis added).

28   [20] See Secured Delayed Draw Demand Note, Hauss Dec., Exh. 5.

REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL BINGHAM MCCUTCHEN LLP TO PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENA

1    recognized, is "affiliated with—if not wholly owned by—Larian."[21] It thus appears that

2    Omni 808 and IGWT 826 Investments are merely shells that Larian is using to mask

3    capital contributions to MGA. Another agreement to which MGA was a party

4    specifically identifies and treats Omni as an ▮▮▮▮▮▮ of MGA.[22]

5        Plainly, Mattel is entitled to discovery into Isaac Larian's and MGA's role

6    in the Entities' acquisition of the alleged debt in order to show that it was a non-arm's-

7    length transaction between related or affiliated parties and therefore should not be

8    considered actual debt for purposes of MGA's and Larian's net worth. Moreover,

9    Mattel is entitled to obtain this information from Bingham. Peter Carson, a partner in

10    Bingham's San Francisco office, appears to have been personally involved in the Omni

11    808 transaction from the start and is identified as notice counsel on the deal

12    documents.[23] Indeed, as Mattel indicated in its Motion, Omni 808's registered address

13    with the California Secretary of State is listed as Bingham's Los Angeles office, 355

14    South Grand Avenue, Suite 4400, Los Angeles, CA 90071.[24]

15        **C.**    **Bingham's Overbreadth Objection Is Without Merit**

16        Bingham argues that Mattel's subpoena is overbroad because it

17    "encompasses both privileged communications and irrelevant documents." (Opp. at

18    17).[25] As Mattel has demonstrated at length in its Motion,[26] its Opposition to

19

20    ───────────────

     [21]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 25, Hauss Dec.,

21    Exh. 1.
     [22]   See Senior Promissory Note, dated September 3, 2008, Hauss Dec. 7 (section 9(b)

22    states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of MGA under the Note); see also
     September 8, 2008 Wachovia Memo. at WACHOVIA 001886, Hauss Dec. 8 (summarizing

23    terms of Wachovia's Senior Note and stating that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
     ▮▮▮▮▮▮▮▮▮▮▮▮).

24      [23]   See, e.g., Master Assignment and Exchange Agreement, at 10, Hauss Dec., Exh. 6.
     [24]   See Omni 808 Investors, LLC's Registration Information (available at

25    <http://kepler.sos.ca.gov/corpdata/ShowLpllcAllList?QueryLpllcNumber=200822610026&pri
     nter=yes>) as accessed on March 1, 2009, Webster Dec., Exh. 2.

26      [25]   Bingham argues that Mattel's Request No. 4 is so broad as to encompass "every single
     document in Bingham's possession, custody or control reflecting, referring or relating to

27    Bingham's non-party clients and Bingham's work performed for its non-party clients." (Opp.
     at 9). Bingham's contention is without merit. However, to alleviate Bingham's concerns,

28    Mattel is willing to limit this request to those documents sufficient to identify any member,
     (footnote continued)

1  Bingham's Motion to Quash,[27] and above,[28] Bingham's privilege and relevance

2  objections are without merit.  Moreover, even if Mattel's subpoena encompasses some

3  privileged materials, that fact would not excuse Bingham's refusal to produce non-

4  privileged documents.

5         Unable to support its overbreadth objection to the subpoena now at issue

6  here (Opp. at 17-18), Bingham continues to talk about <u>Mattel, Inc. v. Walking</u>

7  <u>Mountain Productions</u>, 353 F.3d 792 (9th Cir. 2003).  The Discovery Master will recall

8  rejecting Bingham's efforts to interject this unrelated case at the March 4, 2009 hearing,

9  correctly noting that "we're not litigating that case" and cautioning Bingham regarding

10  the impropriety of *ad hominem* attacks.[29]  Indeed, during Phase 1 of this case, MGA

11  and its affiliated third parties also cited that case to Judge Larson with the same intent,

12  and again to no avail.  Bingham's latest resort to this tactic is equally meritless here.

13  <u>Walking Mountain</u> involved no requests that even resemble the requests at issue on this

14  motion.  Bingham's reliance is particularly unpersuasive, given that ***this*** Court has

15  issued repeated Orders ***in this litigation*** rejecting the arguments that Bingham makes

16  here and compelling production in response to comparable discovery requests.[30]

17         Contrary to Bingham's assertion, Mattel's requests are narrowly drawn to

18  obtain relevant, discoverable information.  Specifically, Mattel's Request Nos. 1, 2 and

19  7 are reasonably calculated to lead to the discovery of admissible evidence relevant to

20

21  managing member, shareholder, holder of any ownership interest in, officer, director, employee and/or agent of, or investor in, Omni 808, Vision Capital and/or Lexington.

22  [26]    <u>See</u> Mattel's Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to Subpoena, dated March 5, 2009 at 7-13.

23  [27]    <u>See</u> Mattel's Opposition to Motion to Quash Subpoena by Mattel, Inc. to Bingham McCutchen LLP, dated March 5, 2009 at 9-15.

24  [28]    <u>See</u> Sections I(A), I(B) and II <u>infra</u>.
   [29]    <u>See</u> March 4, 2009 Hearing Transcript at 56:20-58:4, Hauss Dec., Exh. 2.

25  [30]    <u>See</u> Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 11-12, Webster Dec., Exh. 8; Order Granting Mattel's Motion to Compel Production of

26  Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10, Webster Dec., Exh. 9; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's

27  Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4, Webster Dec., Exh. 10; Order Re Motions Heard on

28  June 11, 2007, dated June 27, 2007, at 33-34, Webster Dec., Exh. 11.

07975/2841049.1

-11-
REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL BINGHAM MCCUTCHEN LLP TO
PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENA

the credibility and bias of percipient witnesses and to show that the supposed debt relevant to MGA's and Larian's net worth is not actual debt:

- Request No. 1 seeks "documents referring or relating to any fee agreement or fee arrangement referring or relating to Bingham McCutchen LLP's ("Bingham") representation of Vision Capital, LLC ("Vision Capital") and/or Omni 808 Investors, LLC ("Omni 808"), and any amendments or modifications thereto, and any communications referring or relating to any such agreements or arrangements."

- Request No. 2 seeks documents "sufficient to identify each and every person or entity billed for, liable to pay, responsible for payment of, or who has paid or promised to pay, whether directly or indirectly, Bingham's fees in connection with Bingham's representation of Omni 808 or Vision Capital."

- Request No. 7 seeks documents "sufficient to identify any instances in which Bingham has represented MGA Entertainment, Inc., any affiliate of MGA Entertainment, Inc., Fred Mashian, Leon Neman, any entity associated with Leon Neman, Yoel Neman, Monia Neman (aka Monia Mashian), Angela Larian, Farhad Larian, Isaac Larian and/or any entity associated with Isaac Larian at any time since June 1, 2001."

Likewise, Request Nos. 3 through 6 are narrowly tailored to obtain information regarding the real parties behind the Entities—information which is uniquely indicative of MGA's and Larian's net worth, as demonstrated above:

- Request No. 3 seeks "documents referring or relating to the formation, governance, ownership, capitalization and/or funding of, or credit for, Omni 808, Vision Capital and/or Lexington Financial Limited, A Nevis Company ("Lexington Financial Limited"),

1      including the source(s) and terms of such capitalization, funding

2      and/or credit."

3   • Request No. 4 asks Bingham to produce "documents identifying

4      any member, managing member, shareholder, holder of any

5      ownership interest in, officer, director, employee and/or agent of, or

6      investor in, Omni 808, Vision Capital and/or Lexington Financial

7      Limited."[31]

8   • Request No. 5 seeks "contracts and agreements, and proposed or

9      offered contracts or agreements, referring or relating to Omni 808,

10     Vision Capital and/or Lexington Financial Limited, including

11     without limitation all drafts thereof disclosed to, shared with,

12     exchanged with or received from Wachovia, MGA Entertainment,

13     Inc., Fred Mashian, Leon Neman, Isaac Larian and/or any other

14     person or entity other than Omni 808."

15  • Request No. 6 seeks "communications referring or relating to Omni

16     808, Vision Capital and/or Lexington Financial Limited.   For

17     purposes of this Request, Bingham may exclude (a) privileged

18     communications with its client Omni 808 after its attorney-client

19     relationship arose; (b) privileged communications with its client

20     Vision Capital after its attorney-client relationship arose; and (c)

21     communications with Mattel's counsel or the Court in the matter of

22     <u>Carter Bryant v. Mattel</u>, No. CV 04-9059, and consolidated cases."

23  Bingham's overbreadth objection is without merit and should be overruled

24  by the Discovery Master.

25

26  _____

[31] As noted above, Mattel is willing to limit this request to those documents sufficient to
27  identify any member, managing member, shareholder, holder of any ownership interest in,
    officer, director, employee and/or agent of, or investor in, Omni 808, Vision Capital and/or
28  Lexington. <u>See</u> footnote 27, <u>infra</u>.

07975/2841049.1

-13-
REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL BINGHAM MCCUTCHEN LLP TO
PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENA

## II.   BINGHAM HAS FAILED TO SHOW THAT THE REQUESTED INFORMATION IS PRIVILEGED

The Opposition asserts, without specifying a single document and without citing any authority in support, that Mattel's subpoena seeks information protected by the attorney-client privilege and attorney work product doctrine. (Opp. at 9-10). Mattel provided Bingham with the Court's and the previous Discovery Master's repeated Orders holding that documents related to fee agreements are <u>not</u> privileged and compelling the production of documents in response to comparable requests.[32] Yet, flying in the face of the Court's previous, unambiguous Orders—and binding Ninth Circuit precedent—Bingham continues to rely on an unsupportable assertion of privilege.

### A.   Contrary to Bingham's Assertions, The Fee Agreements Sought By Mattel Are Not Privileged

In the Opposition, Bingham does not dispute that federal privilege law applies in this case. <u>See</u> <u>Agster v. Maricopa County</u>, 422 F.3d 836, 839 (9th Cir. 2005) ("Where there are federal question claims and pendent state law claims present, the federal law of privilege applies."); <u>Religious Tech. Ctr. v. Wollersheim</u>, 971 F.2d 364, 367 n.10 (9th Cir. 1992) (refusing to apply California litigation privilege in copyright action with pendent state law claims); <u>Folb v. Motion Picture Indus. Pension & Health Plans</u>, 16 F. Supp. 2d 1164, 1169-70 (C.D. Cal. 1998) (stating that federal common law of privileges governs both federal and pendent state law claims in federal question cases), <u>aff'd</u>, 216 F.3d 1082 (9th Cir. 2000).

---

[32]   <u>See, e.g.</u>, Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 11-12, Webster Dec., Exh. 8; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10, Webster Dec., Exh. 9; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4, Webster Dec., Exh. 10; Order Re Motions Heard on June 11, 2007, dated June 27, 2007, at 33-34, Webster Dec., Exh. 11.

07975/2841049.1

-14-

1       As Mattel has shown, fee agreements are not privileged under Ninth

2 Circuit law.[33] The Opposition fails to come to terms with the Court's and Discovery

3 Master's rulings that fee and indemnity agreements are not privileged and are relevant

4 to bias and credibility.[34] Instead, Bingham argues that the Orders pertain only to Carter

5 Bryant—a former party—and thus do not bear upon the issue of whether a non-party's

6 fee agreement is privileged. (Opp. at 11-12). Bingham cites no authority to support its

7 position that privilege claims may be so distinguished. Nor could it. Courts in this

8 Circuit clearly hold that non-parties' fee arrangements—like parties' fee arrangements—

9 are not attorney-client privileged. See, e.g., Blackman, 72 F.3d at 1426 (holding that

10 fee arrangements of non-party clients were not protected by the attorney-client

11 privilege);[35] Berger v. Seyfarth Shaw, LLP, 2008 WL 4570687, at *1 (N.D. Cal. 2008)

12 (reversing and remanding Magistrate Judge's order denying discovery of non-party's fee

13

---

14   [33] See Opp. to Bingham's Motion to Quash, dated March 5, 2009, at 10-11 (citing United States v. Blackman, 72 F.3d 1418, 1424 (9th Cir. 1995) ("[a]s a general rule, client identity

15 and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege"); Clarke v. American Commerce Nat'l Bank, 974

16 F.2d 127, 129 (9th Cir. 1992) ("Our decisions have recognized that the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose

17 of the work performed are usually not protected from disclosure by the attorney-client privilege."); In re Grand Jury Subpoenas, 803 F.2d 493, 499 (9th Cir. 1986) (reversing order

18 quashing a subpoena and requiring attorneys to identify third parties paying their fees); U.S. v. Landon, 2006 WL 3377894, at *2 (N.D. Cal. 2006) ("The attorney-client privilege does not

19 protect communications such as fee arrangements that do not convey the substance of confidential professional communications.")).

20   [34] See Order Granting Mattel's Motion to Compel Documents, dated January 25, 2007, at 11-12; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory

21 Responses by MGA, dated May 15, 2007, at 10; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of

22 Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4; Order Re Motions Heard on June 11, 2007, dated June 27, 2007, at 33-34.

23   [35] In its Reply in support of its Motion to Quash, Bingham attempts to distinguish Blackman on the grounds that "the court ordered the **defendant attorney** to disclose identities

24 of clients." See Bingham McCutchen LLP's Reply in Support of Motion to Quash Subpoena Issued by Mattel, Inc., dated March 10, 2009, at 7 (emphasis in original). Bingham's

25 contention is without basis. The attorney in Blackman had been subpoenaed to provide information concerning the identity of the fee-payer who had retained the attorney to defend a

26 non-party. Blackman, 72 F.3d at 1425. The attorney's status as a party to the litigation is of no moment, as "the attorney-client privilege protects the **client, not the attorney**." Id. at 1424

27 (citing United States v. Abrahams, 905 F.2d 1276, 1283 n.9 (9th Cir. 1990)). Thus, the court's holding that information regarding the **non-party client's** fee arrangement was not privileged

28 is directly on point here.

1  arrangement, because "*[c]onsistent with federal privilege law*, fee-payment

2  arrangements are relevant to credibility and bias, and discoverable") (emphasis added);

3  S.E.C. v. First Jersey Securities, Inc., 1990 WL 209246, at *2 (holding that non-party's

4  argument that his fee agreements with non-party lawyer are subject to the attorney-

5  client privilege "is flatly contradicted by the established Ninth Circuit rule").

6       Bingham's privilege objection should be overruled and the production of

7  fee agreements and related documents compelled.

8  **B.    The Opposition Fails To Show That Any Other Mattel Request Seeks**

9       **Privileged Information**

10       Bingham's contention that Mattel's remaining requests are privileged is

11  likewise without merit.  (Opp. at 9-10).  "The attorney-client privilege protects

12  confidential disclosures made by a client to an attorney in order to obtain legal advice."

13  In re Grand Jury Subpoenas, 803 F.2d at 496.  Here, Mattel's requests do not seek

14  attorney-client communications.  Instead, they seek factual information regarding the

15  Entities' formation and governance, and in particular the identities of the real parties

16  behind the Entities.[36]  To the extent the requests seek communications at all,

17  communications subject to the attorney-client privilege are expressly excluded.[37]

18       As the party asserting the attorney-client privilege, Bingham bears the

19  burden of establishing that the privilege applies.  See Clarke, 974 F.2d at 129 ("The

20  burden of establishing that the attorney-client privilege applies to the documents in

21  question rests with the party asserting the privilege.") (citing Tornay v. United States,

22  840 F.2d 1424, 1426 (1988)).  Bingham makes no such showing.  Instead, it merely

23  offers a blanket assertion "that Mattel's subpoena broadly seeks privileged

24  _____

25  [36]  See Mattel's Subpoena to Bingham McCutchen LLP, dated February 12, 2009, at Request Nos. 3-6, Webster Dec., Exh. 1.

26  [37]  See Mattel's Subpoena to Bingham McCutchen LLP, dated February 12, 2009, at Request No. 6 ("For purposes of this Request, Bingham may exclude (a) privileged communications with its client Omni 808 after its attorney-client relationship arose; (b)

27  privileged communications with its client Vision Capital after its attorney-client relationship (footnote continued)

28

REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL BINGHAM MCCUTCHEN LLP TO
PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENA

1  information." (See Opp. at 10). This is plainly insufficient. See Clarke, 974 F.2d at
2  129 ("[B]lanket assertions of the privilege are 'extremely disfavored.' The privilege
3  must ordinarily be raised as to each record sought to allow the court to rule with
4  specificity.").

5  **III.   THE OPPOSITION FAILS TO PROVE UNDUE BURDEN**

6          As the party resisting discovery, Bingham bears the burden of proving
7  undue burden by "specific and compelling" proof; conclusory assertions are
8  insufficient. See Goodman v. U.S., 369 F.2d 166, 169 (9th Cir. 1966) (reversing
9  district court's quashing of subpoena); see JZ Buckingham Investments, LLC v. United
10 States, 78 Fed. Cl. 15, 25 (Fed. Cl. 2007) ("The party must provide specific and
11 compelling proof that the burden is undue."); Northrop Corp. v. McDonnell Douglas
12 Corp., 751 F.2d 395, 403 (D.C. Cir. 1984) (reversing district court's decision quashing
13 subpoena). Bingham's Opposition makes no such showing.

14         Courts consistently hold that the merely reciting burden, without
15 evidentiary support, is insufficient to resist discovery. See A. Farber and Partners, Inc.
16 v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or boilerplate objections
17 such as 'overly burdensome and harassing' are improper—especially when a party fails
18 to submit any evidentiary declarations supporting such objections.").[38] The Opposition
19
20 _____
21 arose; and (c) communications with Mattel's counsel or the Court in the matter of Carter
   Bryant v. Mattel, Inc., No. CV 04-9059, and consolidated cases."), Webster Dec., Exh. 1.
   [38]   See also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485
22 (5th Cir. 1990) (objections that document requests are overly broad, burdensome and
   oppressive are insufficient to meet objecting party's burden of explaining why discovery
23 requests are objectionable); Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th
   Cir. 1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific
24 to demonstrate why requested discovery is objectionable); U.S. E.E.O.C. v. ABM Industries
   Inc., 2008 WL 5385618, at *8 (E.D. Cal. 2008) ("A bare assertion of undue burden without
25 factual allegations does not suffice."); Residential Constructors, LLC v. Ace Property and Cas.
   Ins. Co., 2006 WL 3149362, at *9 (D. Nev. 2006) ("In opposing discovery on grounds of
26 burdensomeness, the objecting party is required to demonstrate that the time and expense
   involved in responding to the requested discovery will, in fact, be unduly burdensome.");
27 Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94, 109 (W.D.N.Y. 2000) (overruling
   "burdensome" objections because objecting party failed to particularize basis for objection);
28 Fletcher v. Atex, Inc., 156 F.R.D. 45, 54 (S.D.N.Y. 1994) ("If a party resists production on the
   (footnote continued)

1   argues that Mattel's subpoena "subjects Bingham to an undue burden." (Opp. at 20).
2   Yet, Bingham offers no evidence in support of this claim. Bingham does not describe
3   the volume of documents, or of the time or expense to gather them. Bingham thus
4   shows no burden, let alone undue burden, and its objection fails for this reason under
5   established law. This calls for the continuing adoption of the rule that the Discovery
6   Master has already adopted and applied in this litigation.[39]

7           Further, even applying the factors Bingham advances, Mattel's requests
8   impose no undue burden.[40]  Just last week MGA's counsel labeled claims that it is too
9   burdensome to search attorney files as "hogwash."[41]   Indeed, it is particularly
10  groundless to suggest, as Bingham apparently does, that it is too difficult for it to
11  collect information relating to who is paying or is obligated to pay Bingham for its legal
12  services. As Mattel also has shown in its Motion and in its Opposition to Bingham's
13  Motion to Quash, its requests:

14          • seek non-privileged fee agreement information which the Court has
15            repeatedly held relevant to bias and credibility;

16          • seek other information that is directly relevant to numerous aspects
17            of Phase 2, including MGA's and Larian's financial condition and
18            net worth;

19          • are narrowly tailored to obtain information regarding the Entities'
20            fee arrangements and to determine who is actually behind the
21            Entities;

22

23  _____
    basis of claimed undue burden, it must establish the factual basis for the assertion through
24  competent evidence.").
        [39]   See, e.g., May 15, 2007 Order by Discovery Master, at 14:4-6, Webster Dec., Exh. 9.
25      [40]   See Opp. at 18-19 (citing Televisa, S.A. v. Univision Communications, Inc., 2008 WL
    4951213, at *2 (C.D. Cal. 2008) ("[C]ourts analyze six factors to determine whether a
26  subpoena imposes an undue burden:  (1) relevance of the information requested; (2) the
    requesting party's need for production; (3) breadth of the requests; (4) time period covered by
27  the subpoena; (5) the specificity of the requested information; and (6) the burden imposed
    thereby.")).
28      [41]   See March 11, 2009 Hearing Transcript, at 65:11-24, Hauss Dec., Exh. 9.

- cover a limited time period, as Bingham's clients, Omni 808 and Vision Capital, are claimed single-purpose entities, recently formed during the damages phase of the trial; and

- seek documents that are unlikely to be voluminous, given the fact that the Entities did not exist until months ago, and given their claimed single-purpose nature.[42]

Accordingly, Bingham has failed to establish that any burden involved in responding to Mattel's subpoena could be characterized as "undue," especially in light of the importance of the information sought. Bingham's burden and related objections should be overruled.

## IV.   BINGHAM, NOT MATTEL, SHOULD BE SANCTIONED

In the Opposition, Bingham argues for sanctions based on Mattel's supposed failure "to show that this motion to compel is substantially justified." (Opp. at 20-21). As set forth above, however, Mattel's subpoena seeks non-privileged information which is directly relevant to (1) the bias and credibility of percipient witnesses in this action, and (2) determining who is actually behind the Entities, which goes directly to the net worth of both MGA and Isaac Larian, and is thus squarely within the scope of discovery.

In contrast, Bingham's conduct has required Court intervention where none was necessary. Mattel provided Bingham with this Court's Orders holding that fee agreements are relevant and not privileged. Bingham refused to produce the agreements. Bingham refused to produce a privilege log, which is clearly required under the Federal Rules. Bingham then refused to agree to produce if its Motion to Quash is denied, thus forcing Mattel to file a parallel Motion to Compel to avoid sequential rounds of duplicative motion practice. And, as the Wachovia production

---

[42]   See Mattel's Motion to Compel Bingham McCutchen LLP to Produce Documents Responsive to Subpoena, dated March 5, 2009 at 7-13; Mattel's Opposition to Motion to Quash Subpoena by Mattel, Inc. to Bingham McCutchen LLP, dated March 5, 2009 at 11-18.

1   shows, Bingham has not been candid about Larian's and MGA's affiliation with the

2   Entities.  Thus, it is Bingham, not Mattel, that should be sanctioned here.

3                                    **Conclusion**

4           For the reasons set forth above, Mattel respectfully requests that the

5   Discovery Master grant Mattel's Motion and compel Bingham to produce all documents

6   sought by Mattel's subpoena as well as to produce a privilege log for any documents

7   withheld on the basis of privilege.

8

9   DATED:  March 18, 2009          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
10

11                                  By /s/ Michael T. Zeller
                                        Michael T. Zeller
12                                      Attorneys for Mattel, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/2841049.1

-20-
REPLY IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL BINGHAM MCCUTCHEN LLP TO
PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENA