# EXHIBIT 1

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
3  Telephone:  213.629.7400
   Facsimile:   213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

12  CARTER BRYANT, an individual,       Case No.  CV 04-09049 SGL (RNBx)

13            Plaintiff,
                                        Consolidated with
14       v.                             Case No. CV 04-09059
                                        Case No. CV 05-2727
15  MATTEL, INC., a Delaware
    corporation,                        PHASE II DISCOVERY MATTER
16
              Defendant.                ORDER NO. 3, REGARDING:
17
                                        (1)  MOTION OF MGA
18                                       ENTERTNAINMENT, INC.,
                                         ISAAC LARIAN AND MGA
19                                       ENTERTAINMENT (HK)
                                         LIMITED TO QUASH
20                                       NON-PARTY SUBPOENAS; and

21                                       (2)  MOTION OF MATTEL, INC.
                                         TO COMPEL PRODUCTION OF
22                                       DOCUMENTS RESPONSIVE TO
                                         THE SAME NON-PARTY
23                                       SUBPOENAS

24  CONSOLIDATED WITH
25  MATTEL, INC. v. BRYANT and
    MGZ ENTERTAINMENT, INC. v.
26  MATTEL, INC.

27

28
ARENT FOX LLP                        1                    ORDER NO. 3
ATTORNEYS AT LAW                           [Case No. CV 04-09049 SGL (RNBx)]
LOS ANGELES

EXHIBIT 1
PAGE 3

1    This Order sets forth the Discovery Master's ruling on: (1) the motion of

2    MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Limited

3    (collectively "MGA") to quash certain non-party subpoenas [Docket Number 4779]

4    and (2) the corresponding motion of Mattel, Inc. ("Mattel") to compel production of

5    documents responsive to the same non-party subpoenas [Docket Numbers 4769 and

6    4788] (collectively, the "Motions").

7    The Motions came on regularly for hearing before the Discovery Master on

8    March 4, 2009. All interested parties were represented by counsel and afforded the

9    opportunity to present oral argument on the Motions. The Discovery Master,

10   having considered the papers filed in support of and in opposition to the Motions,

11   and having heard oral argument thereon, rules as set forth below.

12   **I.      INTRODUCTION**

13

14           **A.      The Court's February 11, 2009 Ruling**

15   On February 11, 2009, the Court heard oral argument on various motions

16   filed by the parties. During the proceedings, counsel took the opportunity to orally

17   request clarification by the Court regarding whether the parties' respective motions

18   relating to the subpoenas served by Mattel on various entities allegedly related to

19   MGA (the "Subpoenas") are in any way stayed or precluded by any of the Court's

20   prior orders.

21   In response, the Court stated: "I will instruct the Discovery Master this

22   afternoon, in no uncertain terms, that there is no stay on any discovery related to

23   this case at all." (Reporter's Transcript of Proceedings, February 11, 2009 ["Tr."],

24   99:8 – 10). Counsel for MGA then referred to the fact that the Court had

25   previously declined to allow Mattel to serve certain discovery accompanying

26   Mattel's motion for a receiver and characterized the third-party subpoenas as an

27   attempt to circumvent the Court's ruling. (Tr., 101:12 – 17). In response, the Court

28   stated:

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ /

PAGE _____ 4

> Then the question becomes – and this is a question for the
> Discovery Master, not for this Court – whether or not the
> discovery is related to Phase 2. If it is, it is. I'm not going to
> pass any judgment whatsoever. I'm going to leave that
> completely up to the Discovery Master. ... The question for the
> [D]iscovery [M]aster will be whether or not the disputed
> discovery request is related or relevant to the trial that has now
> been scheduled for March [2010] or not.

(Tr., 101:18 – 22; 103:1 – 3).

The Discovery Master understands the Court's ruling as indicating that, in

deciding the motions relating to the Subpoenas, the Discovery Master should

consider whether there is a nexus between the information sought by the

Subpoenas, on the one hand, and the Phase 2 claims and counterclaims set for trial

in March 2010, on the other hand. If the information sought by the Subpoenas is, to

use the Court's words, "related to Phase 2" or "related or relevant to the [Phase 2]

trial," then that information could potentially be the subject of appropriate

discovery requests by Mattel.[1]

**B.      Information Sought By The Subpoenas**

The information sought by Mattel's Subpoenas falls into two broad

categories. First, Mattel seeks documents from third parties Omni 808 Investors,

LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively, the "Financing

Entities") involving, among other things, their internal ownership and operations

and their role in providing financing to MGA during the summer of 2008 (the

---

[1] Even prior to the Court's February 11, 2009 ruling, Mattel acknowledged that it had the burden of demonstrating a
nexus between the information sought by the Subpoenas and the Phase 2 issues, as demonstrated by Mattel's
inclusion of a section in its Motion to Compel summarizing the claims to be adjudicated in Phase 2, (Motion, pp. 5 –
8), and a section arguing that the information sought by the third-party subpoenas is relevant to Mattel's Phase 2
claims, (Id., pp. 18 - 24 and 24 – 25). However, Mattel also argued that the information sought might be appropriate
regardless of any nexus to Phase 2. (See id., pp. 14 – 17 [arguing that MGA's prior statements regarding its finances
in Phase 1 "opened the door" to discovery on this issue] and id., p. 23 [arguing that the information sought is relevant
to MGA's credibility]). Based on the Court's subsequent ruling on February 11, 2009, as well as the Discovery
Master's own independent evaluation of those arguments, the Discovery Master concludes, as discussed more fully
below, that these arguments are insufficient, standing alone, to justify the non-party discovery Mattel seeks. Rather,
Mattel must demonstrate some link between the information sought and the issues to be adjudicated by the Court at
the Phase 2 trial.

EXHIBIT

1    "Financing Discovery"). Based on the information presented at the February 11,

2    2009 hearing and in connection with the pending motions, it does not appear that

3    either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have

4    an ownership interest in the Financing Entities.[2] (See Tr., 70:22 – 72:5; 78:9 -25).

5         Second, Mattel seeks documents from third parties IGWT Group, LLC and

6    IGWT 826 Investments, LLC (collectively, the "Transferee Entities") regarding

7    MGA's sale to them of infringing MGA inventory, namely Bratz dolls (the

8    "Transferee Discovery"). MGA does not dispute that the Transferee Entities are

9    owned and/or controlled by Larian. (See, e.g., MGA's Reply in support of its

10   Motion to Quash, at p. 5, fn. 6, where MGA refers to the purchase of Bratz

11   inventory by the Transferee Entities as "Larian's purchase of those . . .

12   products . . . .").[3]

13   **II.     MGA's Motion To Quash**

14        Because it could dispose of all outstanding discovery issues related to the

15   Subpoenas, the Discovery Master first addresses MGA's Motion to Quash filed on

16   February 3, 2009.

17        **A.     Legal Standard**

18        As the party moving to quash the Subpoenas, MGA bears the burden of

19   satisfying the standard set forth in Rule 45(b), which provides that the court may

20   "quash or modify the subpoena if it is unreasonable and oppressive." (Fed. R. Civ.

21   P. 45(b); see also Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir.

22   2004) ["The moving party has the burden of proof to demonstrate that compliance

23

---

24   [2] Of course, this is one of the facts Mattel seeks to investigate through the Subpoenas to the Financing Entities. The
25   Discovery Master's ruling denying Mattel's Motion to Compel the Financing Parties to comply with the Subpoenas
     does not address – and should not be construed as deciding – whether Mattel could, upon establishing a nexus to a
26   legitimate Phase 2 issue, seek to obtain this information from MGA.

     [3] Moreover, MGA does not dispute the assertions made by Mattel in its Motion to Compel at pp. 11– 12, including
27   that Larian created IGWT Group during the Phase 1 trial and registered its place of business as his home address, and
     that Larian created IGWT 826 Investments the day after the Phase 1 trial ended and registered it at the home address
28   of his sister.

EXHIBIT 1
PAGE 6

1    with the subpoena would be unreasonable and oppressive" (internal quotations

2    omitted)]; *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) [The

3    burden of proving that a subpoena is oppressive is on the party moving to quash];

4    *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) [the

5    burden is on the movant to establish that a subpoena duces tecum should be

6    quashed]). "The burden is particularly heavy to support a 'motion to quash as

7    contrasted to some more limited protection.'" (*Westinghouse Electric Corp. v. City*

8    *of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965) [denying a motion to quash

9    supported by two affidavits]).

10           **B.      Arguments Made By MGA In Support Of Its Motion To Quash**

11           The sole argument set forth in MGA's Motion to Quash is that the Court's

12   January 7, 2009 order appointing a forensic auditor bars Mattel from seeking the

13   information sought by the Subpoenas. (*See* MGA's Motion to Quash, pp. 1 - 6).

14   But that argument fails for the reasons set forth above. The Court made it clear at

15   the hearing on February 11, 2009 that:

16              There is no stay on discovery. Period. . . . . [The forensic auditor
17              appointed by the Court] is acting at the Court's discretion to
                inform the Court of information. . . . That's an entirely separate
18              matter. And I have not stayed any discovery and there should be
19              no reliance on that. If that was misunderstood, it's clarified now.

20   (Tr., 97:15, 98:8 - 9, and 98:13 - 15).

21           Recognizing that its only argument has been rejected by the Court, MGA

22   argues for the first time in its Reply that its Motion to Quash should be granted

23   because the Subpoenas are not relevant to any of Mattel's Phase 2 claims. (*See*

24   MGA's Reply Brief in Support of the Motion to Quash, pp. 1 and 5 - 12).

25   However, MGA did not make this argument in its opening brief. It instead declared

26   in its moving papers that whether the Subpoenas are related to any "Phase 2 issues

27   is beside the point." (*Id.*, p. 5). Because MGA did not address the relevance of the

28   subject discovery until the filing of its Reply, the Discovery Master declines to

ATTORNEYS AT LAW
LOS ANGELES

                                      - 5 -              ORDER NO. 3
                                                [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _1_

PAGE _7_

1    consider the argument in connection with the Motion to Quash.

2         The Discovery Master, like the Court,[4] disfavors the insertion of new

3    arguments at the reply stage that could have been raised in the moving papers. A

4    party filing a motion is required to raise all of its arguments in its opening brief to

5    prevent "sandbagging" of the non-moving party and to provide opposing counsel

6    the chance to respond.  This rule is routinely adhered to by courts in the Ninth

7    Circuit. (*See, e.g., United States v. Boyce*, 148 F.Supp .2d 1069, 1085

8    (S.D.Cal.2001); *Leick v. Hartford Life and Acc. Ins. Co.*, 2007 WL 1847635 at *1,

9    n. 1 (E.D.Cal. 2007); *Stewart v. Wachowski*, 2004 WL 2980783, at *11 (C.D.Cal.

10   Sept. 28, 2004); *Hamilton v. Willms*, 2007 WL 2558615, *11 (E.D.Cal.2007); *see

11   also United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir.1993); *United States v.

12   Wright*, 215 F.3d 1020, 1030 n. 3 (9th Cir.2000)).

13        Furthermore, MGA will not suffer any prejudice from this decision because

14   the issue it raised in its Reply (i.e., are the Subpoenas seeking information related to

15   any Phase 2 claims) has been fully briefed by the parties and is ruled upon by the

16   Discovery Master in connection with Mattel's Motion to Compel.[5]  (*See* Section III

17   below).

18        Accordingly, MGA's Motion to Quash is **DENIED**.

19   //

20   //

21   //

22   //

23

24   [4] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not

25   change [its] ultimate conclusion."

26   [5] That the arguments raised in the Reply are the same as those in MGA's Opposition to the Motion to Compel is conceded by Mattel. Indeed, Mattel admitted in its Request to Consolidate MGA's Motion to Quash and Motion to

27   Compel (which was denied as untimely by the Discovery Master at the hearing on March 4, 2009) that the "MGA Parties' Opposition to Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas

28   . . makes the same arguments as the MGA Parties' Reply in support of their Motion to Quash." (Mattel's Request to Consolidate MGA's Motion to Quash and Mattel's Motion to Compel, p. 2).

EXHIBIT __*1*__

PAGE __*8*__

## III.    Mattel's Motions To Compel

### A.    The Purported Procedural Defects Barring Mattel's Motions To Compel

MGA, the Financing Entities, and the Transferee Entities all argue that that Mattel's Motion to Compel should be denied on several different procedural grounds.

#### 1.    The Court's January 7, 2009 Order

As an initial matter, the Transferee Entities and the Financing Entities repeat the argument made by MGA in its Motion to Quash that the Court's January 7, 2009 Order appointing a forensic auditor barred Mattel from seeking the discovery sought by the Subpoenas. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 3; Transferee Entities' Opposition to Mattel's Motion to Compel at pp. 5 - 7). But that argument fares no better here than it did with respect to MGA's Motion to Quash and is rejected for the reasons discussed in Section II above.

#### 2.    Local Rule 37

The Financing Entities and the Transferee Entities also argue that Mattel's Motion to Compel should be denied because Mattel failed to comply with Local Rule 37 by, among other things, failing to meet and confer and failing to file a joint stipulation. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 1 and 7 - 10; Transferee Entities' Opposition to Mattel's Motion to Compel, p. 2 [referencing Local Rule 37 in passing]). However, Local Rule 37 (as distinguished from Federal Rule 37, which is discussed in subsection 7a, below) does not apply to discovery disputes in this case. Rather, the applicable procedure is the one adopted by the Court in its order appointing a discovery master dated December 6, 2006 ("Discovery Master Order").[6]  Because the Discovery Master Order provides that

---

[6] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a discovery master for Phase 2 of this litigation. (*See* Court's Order dated January 6, 2009, p. 2 ["The Discovery Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___1___

PAGE ___9___

1  "all third parties subject to discovery requests . . . in this litigation shall be bound
2  by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that
3  order applies to the Financing Entities as well as the Transferee Entities, and its
4  procedures replace those set forth in Local Rule 37.  (*Id.*, p. 4).

### 3. Local Rule 11-6 And Paragraph 4(b) Of The Court's Standing Order

7       The Financing Entities and MGA further argue that Mattel's Motion to
8  Compel should be denied because it exceeds the page limitations set forth in Local
9  Rule 11-6 and Paragraph 4(b) of the Court's Standing Order.  (*See* Financing
10  Entities' Opposition to Mattel's Motion to Compel, p. 9; MGA's Opposition to
11  Mattel's Motion to Compel, pp. 18 - 19).  Each of these contentions is unavailing.
12  The Discovery Master Order (not the Local Rules or the Court's Standing Order)
13  governs discovery disputes in this case, and it does not impose any page limit on
14  such motions.[7]  In fact, the Discovery Master Order dispenses with the formatting
15  requirements of the Local Rules in certain ways, such as allowing letter briefs, and
16  even permits the parties to agree to alternative procedures, including, presumably,
17  filing briefs that are more than 25 pages in length.  (*See* Discovery Master Order, p.
18  4).  Thus, while the Discovery Master encourages the parties to be as efficient as
19  possible in their briefing, he recognizes that briefs in excess of 25 pages are either
20  directly permitted under the Discovery Master Order (since no page limitation was
21  imposed by the Court) or implicitly allowed (since the parties may agree to
22  alternate procedures).  He further recognizes that the complex nature of this case
23  may periodically necessitate the filing of briefs that exceed 25 pages.[8]  For all of

---

24

[7] Even assuming the 25 page limitation for briefs did apply, Mattel had the option of filing separate motions to
25  compel for each of the subpoenas at issue and could have easily extended the page limitation well beyond the 30
   pages it filed in connection with its combined motion that addressed multiple subpoenas propounded on the
26  Transferee Entities and the Financing Entities.

27  [8] In fact, the parties to this lawsuit have filed multiple discovery motions in this case that contained more than 25
   pages.  (*See* Supplemental Declaration of Jon D. Corey in Support of Mattel, Inc.'s Reply in Response to The MGA
28  Parties' Opposition to Motion to Compel, ¶ 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT_____

1    these reasons, filings in excess of 25 pages are permitted.[9]

2           **4.**    **Local Rule 6-1**

3        The Financing Entities argue in passing that Mattel's motion to compel

4    should be denied because it violates Local Rule 6-1. (Financing Entities'

5    Opposition to Mattel's Motion to Compel, p. 6).    However, the Discovery Master

6    Order adopts a completely different set of deadlines than the Local Rules for the

7    filing of motions, oppositions and replies, and a different schedule for noticing

8    hearing dates. (Discovery Master Order, p. 4). Therefore, Local Rule 6-1 has no

9    applicability here.

10          **5.**    **Failure To Name MGA In The Motion To Compel**

11        MGA next argues that Mattel's motion to compel is procedurally improper

12    because MGA was not named in the Motion to Compel and Mattel should not be

13    allowed to respond to MGA's objections.    (MGA's Opposition to Mattel's Motion

14    to Compel, p. 18). But MGA has cited no legal authority, and the Discovery

15    Master has found none, standing for the proposition that a party must name in its

16    motion to compel all parties who have objected to an underlying subpoena even if

17    they are not actually the target of the subpoena. In fact, the contention that Mattel's

18    Motion to Compel should have been brought against MGA makes no sense given

19    that it could not possibly comply with any order compelling a response to the

20    Subpoenas.

21          **6.**    **Mattel's Separate Statement**

22        MGA also contends that Mattel's Motion to Compel should be denied

23    because its' separate statement "is another classic example of . . . inefficiency."

24    (Id., p. 19). Once again, nothing in the Discovery Master Order prevents a party

25    from filing a separate statement that first identifies the request in dispute and then

26

27    ──────────────────

28    [9] In the event the length of briefs ever becomes excessive, the Discovery Master will issue an order setting a specific page limitation.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___

1    sets forth the various contentions of the parties, even if the information regarding

2    the various requests happens to be repetitive.  Regardless, MGA has not cited any

3    legal authority in support of its position and the Discovery Master finds no reason

4    to dispose of Mattel's Motion to Compel merely because it filed a separate

5    statement that contains duplicative arguments.[10]

6            **7.    Meeting And Conferring**

7            As their final procedural argument in opposition to the Motion to Compel,

8    the Transferee Entities and the Financing Entities assert that the motion should be

9    denied because Mattel failed to adequately meet and confer prior to filing the

10   motion.  (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 7 - 8;

11   Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).

12           **a.    Applicable Procedure**

13           Prior to filing its motion to compel, Mattel had an obligation to comply with

14   both the Federal Rules of Civil Procedure and the Discovery Master Order.  Federal

15   Rule of Civil Procedure 37(a) expressly requires that a party filing a motion to

16   compel discovery first meet and confer in "good faith."  (Fed. R. Civ. Proc. 37(a)).

17   Similarly, the Discovery Master Order states that unless an "alternative procedure"

18   is agreed upon or otherwise ordered by the Discovery Master, the

19           moving party shall first identify each dispute, state the relief
             sought, and identify the authority supporting the requested relief
20           in a meet and confer letter that shall be served on all parties by
             facsimile or electronic mail.  The parties shall have five court
21           days from the date of service of that letter to conduct an in-person
             conference to attempt to resolve the dispute.  If the dispute has
22           not been resolved within five court days after such service, the
             moving party may seek relief from the Discovery Master by
23           formal motion or letter brief . . .

24   (Discovery Master Order, p. 4).

25   //

26

27   ───────────────
     [10] The Discovery Master notes that where there are numerous discovery requests in dispute he would prefer for a
28   separate statement to be submitted by the moving party.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                          - 10 -          ORDER NO. 3
                                                   [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___1___

PAGE __12__

1          **b.    Mattel's Meet And Confer Regarding The Financing**

2                **Entities**

3       In challenging Mattel's meet and confer effort, the Financing Entities first

4 claim that Mattel violated the Discovery Master Order because no "in-person

5 meeting occurred." (Financing Entities' Opposition to Mattel's Motion to Compel,

6 p. 8). But that argument is without merit, since Mattel and the Financing Entities

7 agreed to an alternative procedure that disposed of the in-person meet and confer

8 requirement.[11] Indeed, MGA's counsel sent counsel for Mattel, counsel for the

9 Transferee Entities and counsel for the *Financing Entities* a letter on January 23,

10 2009 memorializing the parties' agreement and establishing a schedule whereby the

11 parties would "meet and confer on January 29 and 30 . . ." (Mattel's Reply in

12 Support of its Motion to Compel filed on February 13, 2009, pp. 9 - 10;

13 Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply to the

14 Motion to Compel filed on February 13, 2009, ¶ 4 and Ex. 2). That the Financing

15 Entities' counsel received this letter and acted in accordance with its terms is

16 evidenced by, among other things, the fact that they served objections to the

17 Subpoenas on January 28, 2009 (which was the deadline specified in the January 23

18 letter) and started meeting and conferring with Mattel's counsel telephonically on

19 January 30. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 3

20 and 4). Accordingly, Mattel did not have any obligation to meet with the Financing

21 Entities in person since the parties had agreed to waive that obligation.

22       Nevertheless, Mattel still had an obligation to meet and confer with the

23 Financing Entities in good faith. Good faith cannot be shown merely through

24 perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a genuine

25 attempt to resolve the discovery dispute through non-judicial means. (Fed. R. Civ.

26 ---

[11] To promote efficiency and minimize the necessity for counsel to travel between their respective offices, the Discovery Master shall deem Paragraph 5 of the Discovery Master Order (mandating that the parties have an in
27 person conference to attempt to resolve discovery disputes) to be sufficiently satisfied if the parties and non-parties involved in a discovery dispute meet and confer telephonically or by video conference. However, the Discovery
28 Master emphasizes that this accommodation in no way lessens the parties' obligation to meet and confer in good faith.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __/__

PAGE /3

1   Proc. 37(a)(1)).

2        Because the evidence and declarations submitted by Mattel and the Financing

3   Entities are in conflict regarding what transpired during their respective meet and

4   confer communications, (*Cf.* Financing Entities' Opposition to Mattel's Motion to

5   Compel, pp. 3 – 5; Mattel's Reply Brief in Support of its Motion to Compel filed on

6   February 13, 2009, pp. 9-10), the Discovery Master gives Mattel the benefit of the

7   doubt and concludes that it adequately met and conferred with respect to Omni 808

8   Investors, LLC and Vision Capital, LLC.

9        By contrast, Mattel arguably did not even begin the meet and confer process

10  with OmniNet Capital, LLC prior to filing its motion to compel, because counsel

11  for the Financing Entities informed Mattel that they did not receive that Subpoena

12  until the afternoon of February 2, 2009 and filed objections to the Subpoena on that

13  date. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 5). No

14  "good faith" meeting could therefore have taken place.

15       Although the meet and confer with respect to OmniNet Capital, LLC was

16  inadequate, the Discovery Master will nonetheless address the merits of Mattel's

17  Motion to Compel in all respects, including concerning the Subpoena served on

18  OmniNet Capital, LLC. The Discovery Master does so for purposes of efficiency

19  (i.e., the issues to be decided regarding the subpoena served on OmniNet Capital,

20  LLC are essentially identical to those that must be addressed in connection with the

21  subpoenas served on Omni 808 Investors, LLC and Vision Capital, LLC) and

22  because addressing the merits of the motion does not alter the outcome.[12]

23              **c.    Mattel's Efforts To Meet And Confer Regarding The**

24                       **Transferee Entities**

25       Like the Financing Entities, the Transferee Entities contend that Mattel's

26  motion to compel should be denied because it did not meet and confer in good faith.

27

28  [12] As noted above, the parties are admonished to abide by the provisions of the Discovery Master Order requiring a good faith attempt to meet and confer regarding discovery disputes prior to the filing of any discovery motion.

EXHIBIT ___1___

PAGE __14__

1   (Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5). Yet, the

2   Transferee Entities concede that their counsel engaged in multiple meet and confer

3   teleconferences.  (*Id.* at pp. 3 - 4).  Several emails and letters were also exchanged

4   between the parties as part of the meet and confer process.  (*Id.*).  In light of these

5   interactions, the Discovery Master again gives Mattel the benefit of the doubt in

6   favor of resolving the issues on the merits and concludes that it adequately met and

7   conferred with the Transferee Entities.

8       **B.     Legal Standard Governing Enforcement Of The Subpoenas**

9          Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil

10   actions of "any matter, not privileged, which is relevant to the subject matter

11   involved . . .. The information sought need not be admissible at the trial if the

12   information sought appears reasonably calculated to lead to the discovery of

13   admissible evidence."  Rule 26(b) is liberally interpreted to permit wide-ranging

14   discovery of all information reasonably calculated to lead to discovery

15   of admissible evidence; but the discoverable information need not be admissible at

16   the trial. (*Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248,

17   250 (D.Kan.1993)).

18       The broad scope of discovery described in subsection (b)(1) is tempered by

19   provisions protecting the responding party from undue burden.  Rule 26(b)(2)

20   provides that the frequency or extent of discovery otherwise allowed by the Rules

21   must be limited if the court determines that "(i) the discovery sought is

22   unreasonably cumulative or duplicative, or is obtainable from some other source

23   that is more convenient, less burdensome, or less expensive; (ii) the party seeking

24   discovery has had ample opportunity by discovery in the action to obtain the

25   information sought; or (iii) the burden or expense of the proposed discovery

26   outweighs its likely benefit, taking into account the needs of the case, the amount in

27   controversy, the parties' resources, the importance of the issues at stake in the

28   litigation, and the importance of the proposed discovery in resolving the issues."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    1

PAGE    15

1       Moreover, the Federal Rules distinguish between discovery from non-parties
2   to a lawsuit (governed under Rule 45) and discovery from parties (governed
3   generally by Rule 26), based in part on the recognition that the former is inherently
4   more burdensome and less convenient than the latter. (*See, e.g., Solarex v. Arco*
5   *Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) [The status of a non-party is
6   significant when determining whether compliance with a discovery demand would
7   constitute an undue burden]; *Katz v. Batvia Marine and Sporting Supplies, Inc.*, 984
8   F.2d 422, 424 (Fed. Cir. 1993) [The fact that discovery is sought from a non-party
9   is one factor that the Court may weigh in determining whether the discovery
10  requested is necessary, relevant, or burdensome]. Courts applying Rules 26 and 45
11  have interpreted these rules to afford non-parties special heightened protection
12  against burdensome discovery. (*See, e.g., Exxon Shipping Co. v. U.S. Dept of*
13  *Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).
14      Accordingly, requests for documents that pertain to a party and that can be
15  more easily and inexpensively obtained from that party also impose an undue
16  burden. (*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)).
17  Further, if the documents sought are neither relevant nor calculated to lead to the
18  discovery of admissible evidence, "then any burden whatsoever imposed upon the
19  non-party would be by definition undue." (*Compaq Computer Corp. v. Packard*
20  *Bell Electronics, Inc.*, 163 F.R.D. 329, 335-336 (N.D.Cal. 1995)).
21      Each of the moving parties bears the burden of establishing the basis for the
22  relief it seeks. As the party moving to compel compliance with the Subpoenas,
23  Mattel bears the burden of "establishing that the information sought is relevant and
24  necessary to its lawsuit." (*Cytodyne Technologies, Inc. v. Biogenic Technologies,*
25  *Inc.*, 216 F.R.D. 533, 534 (M.D.Fla. 2003)).
26      Finally, in deciding whether to enforce a subpoena, the Discovery Master
27  must balance "the relevance of the discovery sought, the requesting party's need,
28  and the potential hardship to the party subject to the subpoena." (*Heat & Control,*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __1__

1  *Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986) citing

2  *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560, 564 (7th Cir.1984)).

3      **C.**    **Mattel's Contention That MGA Has Placed Its Finances At Issue**

4      As its first ground for moving to compel production of the documents sought

5  by the Subpoenas, Mattel argues that MGA has misrepresented its finances, thereby

6  making it necessary and appropriate for Mattel "to obtain an accurate understanding

7  of MGA's and Larian's finances." (Motion to Compel, p. 14). According to

8  Mattel, MGA's supposed misrepresentations have placed its financial condition at

9  issue, and have opened the door to discovery of any information bearing on MGA's

10  finances. (*Id.* ["Discovery on MGA's financials is amply warranted by MGA's

11  own statements *alone*."] (emphasis added)).

12      However, after Mattel filed its Motion, the Court made it clear that the

13  validity of the Subpoenas must be evaluated with reference to whether they relate to

14  the matters to be adjudicated in Phase 2.  As the Discovery Master understands the

15  Court's ruling, the Subpoenas cannot be justified merely because they seek

16  information regarding some contention made during Phase 1, without regard to

17  Phase 2. In other words, putting a fact at issue in Phase 1, cannot, standing alone,

18  suffice to render that fact the proper subject of discovery in Phase 2.

19      Thus, to the extent Mattel's first argument asserts that MGA's statements,

20  standing alone, warrant discovery from the Subpoena recipients, that argument is

21  rejected.  Rather, the Discovery Master will evaluate whether discovery of MGA's

22  finances is warranted in light of the issues to be adjudicated in Phase 2.

23      Further, even if Mattel were not required to demonstrate some nexus between

24  the Subpoenas and the issues to be adjudicated in Phase 2, the argument that the

25  Subpoenas are justified because MGA placed its financial condition at issue would

26  still fail for the simple reason that Mattel is not seeking discovery from MGA but

27  rather *non- parties*.  Mattel does not cite any statements or conduct by the

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___

1      Financing Entities putting their financial affairs at issue in this litigation.[13]

2   Rather, Mattel argues that the statements and conduct of *MGA* should be attributed

3   to the Financing Entities and construed as their consent to discovery of their

4   internal financial affairs.  Such an assumption is unwarranted.

5          **D.    Mattel's Contention That The Subject Discovery Is Relevant To**

6                 **Phase 2**

7                 **1.    Subpoenas To The Financing Entities**

8      Mattel next argues that the Subpoenas to the Financing Entities seek

9   information relevant to a variety of Phase 2 issues.[14]

10                **a.    Mattel's RICO Counterclaim**

11     Mattel first asserts in its Motion to Compel that the discovery it seeks is

12   relevant to its RICO counterclaim because "Mattel alleges that the counter-

13   defendants have operated a widespread criminal enterprise that has engaged in

14   numerous acts of mail and wire fraud and other predicate acts in violation of the

15   RICO statute" and that "MGA's mid-trial transactions with Omni 808 and the other

16   non-operating entities" is "a continuation of that pattern of racketeering activity."

17   (Motion, p. 18).

18

19   [13] In its Reply to the Financing Entities' Opposition to its Motion to Compel, Mattel argues that the Financing
20   Entities (referred to by Mattel as the "Omni Parties") have injected themselves into the litigation because one of
     them, Omni 808 Investors, LLC, applied to intervene. (Reply, p. 8).  However, a decision on that application has
21   been deferred by the Court, (Tr., 80:15 – 17), and therefore Omni 808 Investors, LLC and the other Financing
     Entities remain outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-
     parties.

22   [14] Mattel argues in one of its reply briefs filed on February 25, 2009 that the Discovery Master should strike MGA's
23   Opposition to the Motion to Compel because: (1) MGA indicated that it would not be filing an Opposition and
     (2) the Opposition was filed a week late.  (*See* Mattel's Reply in Response to MGA's Opposition to the Motion to
24   Compel, p. 4).  The Discovery Master declines that request.  The assertion that MGA would not file an Opposition is
     based on an alleged oral conversation which counsel for Mattel apparently did not confirm in writing.  (*See*
25   Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply in Response to MGA's Opposition to the
     Motion to Compel, ¶ 4).  Even assuming such a statement had been made, MGA was entitled to change its mind.  As
26   for Mattel's argument that the Opposition was untimely, the Discovery Master notes that he was only recently
     appointed.  This fact combined with the backlog of discovery motions may have resulted in some confusion as to
27   when various briefs were due to be filed.  The Discovery Master prefers to address issues on the merits and declines
     to strike the Opposition as untimely.  Notwithstanding the foregoing, the Discovery Master urges the parties to
28   strictly comply with the briefing schedule set forth under the Discover Master Order for all future discovery motions
     unless an alternative procedure is agreed upon by the parties and approved by the Discovery Master or the Court.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
                                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __1__

1    But Mattel's allegations in support of its RICO counterclaim turn on

2    misappropriation of trade secrets and confidential information, and make no

3    mention of improper transfers of funds or any other predicate act similar to MGA's

4    purported business transactions with any of the Financing Entities.[15]  Accordingly,

5    these financial transactions are not a "continuation" of the "pattern" of conduct

6    Mattel alleges in very precise detail in its RICO counterclaim.  (*Asdourian v.*

7    *Konstantin*, 77 F. Supp. 2d 349, 358 (E.D.N.Y. 1999) [cited by Mattel and stating

8    RICO claimant must show "[a]n interrelationship between acts, suggesting the

9    existence of a pattern, [which] may be established...[by] proof of their temporal

10   proximity, or common goals, or similarity of methods, or repetitions' (citation

11   omitted)]; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989) [RICO claims

12   must be supported by a "pattern" of activity and "the mere fact that there are a

13   number of predicates is no guarantee that they fall into any arrangement or order.

14   A pattern is not formed by sporadic activity ...  Instead, the term 'pattern' itself

15   requires the showing of a relationship between the predicates" (quotations and

16   internal citations omitted)]).

17      At this stage, Mattel has failed to demonstrate a relationship between the

18   predicate acts alleged by Mattel in its Counterclaims – which were bound together

19   by a purported scheme to misappropriate Mattel's trade secrets – and the

20   //

21   //

22   //

23   [15] *See* Mattel's Second Amended Answer and Counterclaims ("Counterclaims"), p. 55-62, ¶ 90 [alleging the MGA
24   Parties and other counter-defendants "for the purpose of executing and attempting to execute the scheme to improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information" committed
25   various predicate acts], ¶ 91 [alleging the MGA Parties and other counter-defendants "shared the common purpose of enabling MGA to obtain confidential, proprietary and otherwise valuable Mattel property through improper means in
     order to assist MGA in illegally competing with Mattel"], ¶ 92 [alleging the enterprises are continuing enterprises
26   because they are "designed to and did unlawfully acquire the confidential business information and property of
     Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and
27   business methods, practices, and processes"], ¶ 93(a) [alleging mail fraud committed in furtherance of scheme to
     "defraud Mattel of its confidential trade secret information and property"], ¶ 93(b) [alleging wire fraud "defraud
28   Mattel of its confidential and trade secret information and property"], and ¶ 102 [the MGA Parties and other counter-defendants "schemed to defraud Mattel and steal its property and trade secret information"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                    - 17 -            ORDER NO. 3
                                         [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT


1   transactions Mattel seeks to investigate here.[16]

2        Also, the RICO counterclaim (like the other counterclaims to be adjudicated

3   in Phase 2) was asserted in July, 2007 – more than a year before either Omni 808

4   Investors, LLC or Vision Capital, LLC came into existence – and therefore

5   apparently did not encompass the activities of those entities or the transactions

6   which are the subject of the Financing Discovery.  While that fact might be

7   overcome by a showing that the Financing Entities were created or used to further a

8   scheme to carry on misconduct that is the subject of Phase 2, Mattel did not

9   demonstrate that such is the case in its briefs and supporting evidence.

10       In sum, absent some argument or evidence demonstrating a nexus between

11  the predicate activities alleged in the RICO counterclaim, on the one hand, and the

12  transactions and other matters which are the subject of the Financing Discovery, on

13  the other hand, there has been no showing by Mattel that the Subpoenas to the

14  Financing Entities are reasonably calculated to lead to the discovery of admissible

15  evidence regarding the RICO counterclaim.

16           **b.    Mattel's Disgorgement Remedy**

17       Next, Mattel asserts that the Subpoenas to the Financing Entities seek

18  information relevant to its remedy of disgorgement, which is an available remedy

19  for Mattel's Phase 2 counterclaim for misappropriation of trade secrets.  Mattel

20  argues:

21

22  [16] This conclusion is consistent with the case cited by Mattel – *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372
23  (W.D.N.Y. 2006).  There, the plaintiffs "asserted broad civil RICO claims against the Nicolo defendants predicated,
    among other violations, upon alleged money laundering violations.  Specifically, the Complaint alleges that the
24  Nicolo defendants and the other named defendants constituted an enterprise as defined in the RICO statute that was
    engaged in a pattern of racketeering activity, including mail and wire fraud and, more importantly for purposes of
25  this motion, money laundering." (*Id.*, at 375).  "The alleged money laundering consisted of repeated deposits into
    various financial institutions in order both to promote and carry on the unlawful activity – that is, by paying and
26  depositing kickbacks to certain members of the enterprise – and to conceal and attempt to conceal the proceeds, their
    nature, source and location – that is, by transferring funds between defendants and between various accounts
    maintained by those defendants." (*Id.* [emphasis added]).  Thus, inquiry into the defendants' finances was
27  appropriate as it was likely to reveal activity related to the alleged predicate acts.  Here, on the other hand, Mattel has
    not alleged any sort of financial scheme which would support inquiry into the MGA Parties' financial transactions
28  with third parties.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
- 18 -
ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT

1  |  For purposes of establishing disgorgement, Mattel must take into
2  |  account money transferred from MGA and Isaac Larian,
regardless of the manner in which it was transferred. Mattel is
3  |  entitled to discovery that shows all assets siphoned from MGA or
Isaac Larian . . . . By these subpoenas, Mattel seeks evidence to
4  |  prove the amount the defendants must disgorge. Money that
properly belonged to Mattel was transferred from MGA or Isaac
5  |  Larian to an entity controlled by them.
6
7  (Motion, pp. 20:1 – 4, 21:12 – 14).

8      While the foregoing statements may be true as a general proposition, none of

9  the Financing Entities is alleged to have "received money that properly belonged to

10  Mattel." To the contrary, Mattel asserts that the Financing Entities are creditors of

11  MGA. Therefore, Mattel has not demonstrated how any of the categories of

12  documents sought from the Financing Entities would aid it in ascertaining the

13  amount defendants must disgorge.

14                   **c.    Phase 2 Damages**

15      Mattel's third argument in favor of enforcement of the Subpoenas is that they

16  "seek documents relevant to MGA's financial condition" and other "factors

17  relevant to an award of punitive damages." (Motion to Compel, p. 21:19 – 22).

18  Depending on the particular scope of the document request, such discovery from

19  Omni 808 Investors, LLC may be appropriate in connection with Phase 2 because

20  any information evidencing MGA's indebtedness to Omni 808 Investors, LLC from

21  the purchase of the alleged Wachovia debt or direct loans to MGA is relevant to

22  MGA's net worth (and hence punitive damages).[17] As the Court noted in its

23  February 11, 2009 ruling:

24      I can see tremendous overlap between, for example, discovery on

---

25  [17] The Discovery Master's analysis is fundamentally different for OmniNet Capital, LLC and Vision Capital, LLC
because neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc. (Motion to Compel, pp. 9
26  and 10). To the contrary, Mattel concedes that "OmniNet [Capital, LLC] is not the secured party, and thus
presumably not the actual debt purchase/lender. Rather, the company holding the security interest is Omni 808
27  [Investors, LLC] . . . [which] appears to be owned funded by a company called Vision Capital, LLC." (Id.) Because
it admits that OmniNet Capital, LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to show
28  that the information sought from those entities has any bearing on MGA's financial condition.

EXHIBIT
PAGE 

1
2
3

> financial condition of the company as it relates to damages in the
> Phase 2 and also issues that the receiver is looking at. And
> without making a ruling on any of this, I would not suggest for a
> moment that these are mutually exclusive categories.

(Tr., 101:3 - 8)

4

5

6

7

8

Mattel argues that the necessary connection between the Financing

Discovery and Phase 2 damages exists because the Financing Entities have acquired

a security interest in MGA's assets, which, in turn, affects MGA's financial

condition. Specifically, Mattel argues that Omni 808 Investors, LLC is:

9

10

11

> directly involved in providing funding to MGA in exchange for a
> security interest. Such funding, and security interests, are in and
> of themselves directly relevant to the financial condition of the
> MGA Parties, including the amount of the security interests, the
> terms and conditions of the funding, and the rate of funding. . . .

12

(Motion to Compel, p. 22: 13 – 17).

13   The Discovery Master agrees that such limited information, as it relates to

14   the purchase by Omni 808 Investors, LLC of the debt obligation previously held by

15   Wachovia Bank, is reasonably calculated to lead to the discovery of admissible

16   evidence concerning Phase 2 issues, including the calculation of MGA's net worth

17   for purposes of calculating punitive damages.[18]  Accordingly, Mattel's motion to

18   compel responses from Omni 808 Investors, LLC is granted with respect to

19   documents relating to (1) the existence of any debt owed by MGA Entertainment,

20   Inc. to Omni 808 Investors, LLC and (2) any communications between Omni 808

21   Investors, LLC and the MGA parties regarding any such indebtedness.

22   The problem, however, is the vast majority of the document requests set forth

23   in the Subpoena propounded on Omni 808 Investors, LLC are not narrowly tailored

24   to obtain information demonstrating the amount and nature of MGA's indebtedness

25   (and hence net worth) or communications regarding any such debt,[19] but instead

26

27

28

---

[18] During oral argument, counsel for MGA represented (and counsel for Mattel seemed to agree) that the Court
deferred discovery regarding the Wachovia debt until the middle of the Phase I trial. (Reporter's Transcript of
Proceedings, March 4, 2009, pp. 72, 85 and 86). The extent to which that damages information was obtained directly
from Wachovia, as opposed to MGA, is not clear from the record provided to the Discovery Master.

[19] Nor did Mattel move to compel MGA to produce this information in the first instance.

EXHIBIT ___

1    would require the Financing Entities to produce virtually every document in their

2    possession regarding their formation, operations, and history of transactions.

3    Among other things, the Subpoenas to the Financing Entities seek:

4    •    All records that "substantiate transfers of assets" by the Financing

5         Entities "to other entities, individuals, and/or parties, within the U.S.

6         and outside of the U.S." (Exhibits 27-29 to Supplemental Declaration

7         of Jon D. Corey In Support Of Mattel, Inc.'s Reply In Support Of

8         Motion To Compel Production of Documents Responsive to Third-

9         Party Subpoenas, Attachment A, ¶ 16);

10   •    All documents "detailing or setting forth the relationship" between

11        each of the Financing Entities and other non-parties (*Id.* at ¶¶ 6-10);

12   •    All documents referring or relating to the "all contributions, loans and

13        any sources of funding" for the Financing Entities (*Id.* at ¶ 13);

14   •    All documents referring or relating to the "source of funding" of other

15        non-parties (*Id.* at ¶ 16);

16   •    All documents showing detail of "all loan facilities" referring or

17        relating to the Financing Entities and other non-parties (*Id.* at ¶ 14);

18   •    All documents referring or relating to "transactions involving any

19        compensation, loans, advances, payments, fees or any other form of

20        consideration" paid to other non-parties (*Id.* at ¶ 15);

21   •    All "communications" referring or relating to the Financing Entities

22        and other non-parties (*Id.* at ¶ 17).

23        Accordingly, the Discovery Master concludes that most of the categories of

24   documents in the Subpoenas are overbroad and not reasonably calculated to lead to

25   the discovery of admissible evidence with respect to Phase 2 issues, as detailed in

26   Section IV below (entitled "Disposition").

27   //

28

EXHIBIT _____

### d.   Credibility Of MGA Witnesses

Mattel's fourth argument consists of a single, conclusory paragraph asserting that it is entitled to its discovery in order to determine the credibility of MGA's witnesses. To support this argument, Mattel first states that information is discoverable "if it relates to 'the credibility of any witness.'" (Motion to Compel, p. 23 (citing *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.,* 175 F.R.D. 646, 650 (C.D. Cal. 1997)).[20] Next, Mattel asserts that "MGA and Larian made statements under oath about their financial condition as well as about the role of Omni 808 and the other non-operating entities in providing MGA with additional funding." (*Id.*) But that is the full extent of Mattel's argument. Mattel does not attempt to show that the specific discovery that it has propounded is reasonably calculated to lead to the discovery of the evidence that it contends would be admissible.

Discoverable information generally includes evidence relevant to the credibility of a party or a key witness. (See *Paulsen v. Case Corp.,* 168 F.R.D. 285, 287-288 (C.D. Cal. 1996); see also *Ragge v. MCA/Universal Studios,* 165 F.R.D. 601, 603-604 (C.D. Cal. 1995); *U.S. v. City of Torrance,* 164 F.R.D. 493, 495 (C.D. Cal. 1995)). If Mattel's discovery were reasonably calculated to lead to the discovery of such information, then it might be permissible. (*Id.* ["Rule 26 is liberally interpreted to permit wide ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence."]) But Mattel has not taken any steps to connect its discovery to such evidence. As discussed above, Mattel bears the burden of demonstrating that its discovery is reasonably calculated to lead to the discovery of admissible evidence. Here, Mattel has only stated that credibility evidence can be admissible and that credibility is at issue in this case – without referring at all to specific categories of documents in the Subpoenas or

---

[20] The Discovery Master notes that the case cited by Mattel does not actually discuss or apply this proposition.

EXHIBIT _____

1    linking those categories of documents to prior or anticipated testimony of MGA's

2    witnesses.  Simply stating that credibility evidence is discoverable does nothing

3    toward meeting Mattel's burden to demonstrate that the particular discovery at issue

4    here is reasonably calculated to lead to the discovery of such evidence.

5                    e.    **MGA's Unclean Hands**

6            Mattel next argues in its Motion to Compel that MGA has asserted an

7    unclean hands defense in response to Mattel's Phase 2 claims, and consequently

8    Mattel is entitled to discover whether the MGA Parties are currently "engaging in

9    sham and fraudulent financial transactions such as concealing profits" to preclude

10   MGA "from invoking the unclean hands defense themselves." (Motion, pp. 23 -

11   24.)  But this argument does not apply to the Financing Entities because, as

12   discussed above, Mattel does not claim that the Financing Entities have "received

13   money that properly belonged to Mattel" or otherwise used those entities to conceal

14   profits.  To the contrary, Mattel asserts that the Financing Entities are creditors of

15   MGA.

16           Regardless, Mattel's theory is that, even if Mattel has unclean hands, MGA

17   may not assert that defense unless MGA itself is blameless.  (*Id.*, at 24 [a "party

18   asserting an equitable defense, however, must itself have 'clean hands.'"]).

19   Mattel's statement of the law is correct as far as it goes.  But, as the Ninth Circuit

20   has stated, "'unclean hands does not constitute 'misconduct in the abstract,

21   unrelated to the claim to which it is asserted as a defense.'" (*Jarrow Formulas, Inc.

22   v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)).  "It is fundamental to

23   [the] operation of the doctrine that the alleged misconduct . . . relate directly to the

24   transaction concerning which the complaint is made." (*Dollar Sys., Inc. v. Avcar

25   Leasing Sys., Inc.* 13 F.2d 165, 173 (9th Cir. 1989)).  Accordingly, courts will not

26   allow discovery based on an unclean hands defense where the "allegations of

27   misconduct do not relate to the transactions... forming the basis for the

28   []complaint." (*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D.Cal.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                - 23 -                    ORDER NO. 3
                                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____/

PAGE ____28

1    1996)).

2           Here, Mattel does not link any of the categories of documents referenced in

3    the Subpoenas (which involve the creation and operation of the Financing Entities

4    beginning with their formation in the summer of 2008) to any of the conduct at

5    issue in Phase 2 (which involves such matters as the alleged theft of trade secrets in

6    Mexico in 2004 and other conduct unrelated to the relationship between the

7    Financing Entities and MGA). Accordingly, the Financing Discovery is not

8    reasonably calculated to lead to the discovery of admissible evidence regarding

9    MGA's alleged unclean hands in connection with the matters to be adjudicated in

10   Phase 2.

11              f.      **Mattel's Unfair Competition Counterclaim**

12          As Mattel acknowledges, California's Unfair Competition Law, Business &

13   Professions Code §§ 17200 et seq. (the "Unfair Competition Law") encompasses

14   "'anti–competitive business practices as well as injuries to consumers, and has as a

15   major purpose the preservation of fair business competition.'"  (Opp. at 24:25 –

16   25:2, quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone*

17   *Co.* (1999) 20 Cal.4th 163, 180)). However, Mattel's papers do not sufficiently

18   demonstrate that the documents sought from the Financing Entities involve "anti-

19   competitive business practices," "injuries to consumers," or anything affecting

20   consumers or the public at all.  Instead, Mattel simply asserts, without any

21   supporting analysis, that MGA has violated the Unfair Competition Law by

22   "manipulating the sources of [its own] funding" (presumably the Financing

23   Entities).  That allegation, even if true, does not appear to involve the "unlawful,

24   unfair or fraudulent" marketing or sale of anything and therefore does not fall

25   within the ambit of the Unfair Competition Law.

26   //

27   //

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____
PAGE ____

1            **g.**    **Summary Of The Discovery Master's Findings With**

2                     **Respect To The Subpoenas Directed To The Financing**

3                     **Entities**

4        For the foregoing reasons, the Discovery Master finds that, based on the

5   record before him, Mattel has failed to sufficiently articulate the necessary

6   connection between most of the Financing Discovery and any Phase 2 issue.

7   Moreover, while there is a connection between the Financing Discovery and some

8   of the Phase 2 issues referenced (i.e., MGA's financial condition and its bearing on

9   Mattel's claim for punitive damages), Mattel has failed to demonstrate that the

10   Subpoenas meet the standard set forth in Rule 26(b)(2) and that all of the requested

11   discovery is permissible in light of the case law interpreting Rules 26 and 45.

12        Accordingly, Mattel's motion to compel the Financing Entities to comply

13   with the Subpoenas is **GRANTED** in part and **DENIED** in part.

14        **2.**    **Subpoenas To The Transferee Entities**

15        In their briefs regarding the enforceability of the Subpoenas, Mattel and

16   MGA do not, as a general rule, make a distinction between the Financing Entities

17   and the Transferee Entities, but rather direct the same arguments to both groups

18   collectively.  However, there are important distinctions between the two groups,

19   including, without limitation, that: (1) the Transferee Entities appear to be affiliated

20   with – if not wholly owned by – Larian; (2) the Transferee Discovery involves the

21   sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest

22   pursuant to the Court's December 3, 2008 ruling; and (3) the Subpoenas seek some

23   documents relevant to Phase 2 issues which presumably cannot be obtained from

24   MGA, namely the Transferee Entities' contracts with, and records of sales to, third

25   parties purchasing the Bratz products.  Accordingly, in ruling on the Subpoenas

26   directed to the Transferee Entities, the Discovery Master's analysis of certain of the

27   parties' above-referenced arguments differs, as follows.

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____

PAGE _ **27**

### a.   Non-Party Considerations

To begin with, the distinction between a party and non-party here is less
compelling given the MGA parties' apparent admission that the Transferee Entities
are single purpose entities created and controlled by Larian (who is, of course,
himself a party) to dispose of inventory that is the subject of this litigation.  Further,
the MGA parties presumably do not have custody of the sales contracts whereby
IGWT Group LLC sold Bratz products to third parties.  The Discovery Master also
notes that counsel for the Transferee Entities has submitted a declaration stating
that there are "hundreds of sales contracts at issue, and as such, thousands of
documents responsive to Mattel's requests."  (Declaration of Jeffrey B. Valle dated
February 17, 2009 ["Valle Decl."], ¶ 7).  The unavailability of these relevant
documents from any other source weighs heavily in favor of enforcing the
Subpoena to IGWT Group LLC.

### b.   Relevance To Phase 2 Issues

#### 1.   Phase 2 Damages

As mentioned above, Mattel argues that the Subpoenas "seek documents
relevant to MGA and Larian's financial condition, net worth, and ability to pay" on
the ground that such information is relevant to Mattel's Phase 2 damages claims,
including Mattel's claim for punitive damages.
For the reasons previously discussed, the Discovery Master finds that, with respect
to the Financing Entities, the discovery requests were, for the most part overbroad,
and/or not sufficiently linked to Phase 2 issues.  However, the Discovery Master's
analysis is necessarily different with respect to entities which were created and
apparently wholly owned and/or controlled by Larian (a defendant in Phase 2), and
which are admittedly selling inventory which generate revenues in which Mattel
has an interest.  Specifically, Mattel contends that Larian has caused MGA to sell
the inventory at a deep (80%) discount to the Transferee Entities.  This practice, if
true, limits MGA's profits (which go to MGA's balance sheet, and ultimately

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT        1

PAGE    28

1   affects MGA's net worth) while at the same time allowing Larian to capture

2   additional profits which otherwise would have been realized by MGA and reflected

3   on MGA's balance sheet). Accordingly, the Discovery Master finds that most of

4   the documents Mattel seeks to subpoena from the Transferee Entities properly

5   relate to Phase 2 issues, as specified in Section IV below.[21]

6                   **2.    Mattel's Unfair Competition Counterclaim**

7           Given MGA's admissions regarding Larian's ownership/control of the

8   Transferee Entities, coupled with their sale of inventory purchased from MGA, the

9   Discovery Master finds that many of the documents requested from the Transferee

10  Entities are also arguably related to a "fraudulent," "unlawful," or "unfair" business

11  practice within the meaning of the Unfair Competition Law and the scope of

12  Mattel's Counterclaims. Among other things, the Court's December 3, 2008 order

13  imposes a constructive trust on the proceeds of MGA's sale of the subject

14  inventory. If, as Mattel argues, MGA's sale of that inventory to the Transferee

15  Entities constitutes a scheme on the part of Larian to enrich himself by depriving

16  Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then

17  such conduct would constitute an unlawful attempt to circumvent the Court's order

18  and arguably render the transaction between MGA and the Transferee Entities an

19  anti-competitive business practice that is unlawful, unfair or fraudulent to other toy

20  manufacturers, including Mattel. Therefore, such alleged misconduct, if proven,

21  could violate the Unfair Competition Law.

22          Moreover, although Mattel asserted its counterclaim for violation of the

23  Unfair Competition Law prior to the alleged misconduct (and long before the

24  Transferee Entities came into existence), Mattel phrased its allegations broadly

25

26  [21] The Discovery Master notes that IGWT 826 Investments is registered at the home address of Larian's sister and brother-in-law, indicating that some of Larian's relatives may be involved in the ownership or operation of the Transferee Entities. Accordingly, the Discovery Master has specified in some instances that the production of

27  documents shall include those referencing not only Larian, but also his spouse, his children, his siblings, or their spouses, or any entity or person affiliated with them. However, the Discovery Master has stopped short of ordering

28  the production of documents relating to any other entities, individuals "within the U.S. and outside the U.S.," as requested in Category 6 of each of the Subpoenas directed to the Transferee Entities.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                            - 27 -                    ORDER NO. 3
                                                            [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___1___

PAGE **29**

1  enough to potentially encompass subsequent acts of unfair competition which

2  perpetuate or extend the misconduct alleged in the Counterclaims.  Unlike Mattel's

3  RICO counterclaim, Mattel's Twelfth Counterclaim for Unfair Competition does

4  not purport to rest on a list of enumerated, factually detailed and carefully defined

5  acts, but rather is phrased broadly to cover "unlawful, unfair and/or fraudulent acts

6  of unfair competition" which include, "without limitation" certain illustrative

7  examples. (Counterclaims, p. 74, ¶ 165).

8       Of course, the Discovery Master cannot predict whether the Court will

9  ultimately deem Mattel's unfair competition counterclaim to be sufficiently elastic

10  to encompass MGA's alleged misuse of the Transferee Entities or whether Mattel

11  will seek (and the Court permit) amendment of the counterclaim to expressly

12  reference such alleged misconduct.  Nevertheless, in light of the fact that the

13  discovery need only appear reasonably calculated to lead to the discovery of

14  admissible evidence, the Discovery Master finds that certain aspects of the

15  Subpoenas are sufficiently related to Mattel's Phase 2 unfair competition claim.

16            **c.    Summary Of The Discovery Master's Findings With**

17                 **Respect To The Subpoenas Directed To The**

18                 **Transferee Entities**

19       As set forth above, the Discovery Master finds that Mattel has sufficiently

20  articulated a connection between some of the Transferee Discovery and its Phase 2

21  claims.  Accordingly, Mattel's motion to compel the Transferee Entities to comply

22  with the Subpoenas is **GRANTED** in part and **DENIED** in part.

23  **IV.   Disposition**

24       1.    The Motion to Quash filed by MGA is **DENIED.**

25       2.    Mattel's Motion to Compel the Financing Entities to produce

26  documents responsive to the Subpoenas is **DENIED** with respect to OmniNet

27  Capital, LLC and Vision Capital, LLC.

28       3.    Mattel's Motion to Compel Omni 808 Investors, LLC to produce

EXHIBIT ___/

PAGE **30**

1   documents responsive to the Subpoena propounded on it is **GRANTED** in part and

2   **DENIED** in part, as follows:

3           a.     Requests 1 through 3, 13, 15, and 17:  The Motion is granted

4   with respect to documents relating to (1) the existence of any debt owed by MGA

5   Entertainment, Inc. to Omni 808 Investors, LLC, including any debt purchased

6   from Wachovia Bank, and (2) any communications between Omni 808 Investors,

7   LLC and the MGA parties regarding any such indebtedness.  The motion is denied

8   regarding any other documents sought by these requests.

9           b.     Requests 4 through 12, 14 and 18:  The Motion is denied.

10      4.    Mattel's Motion to Compel the Transferee Entities to produce

11  documents responsive to the Subpoenas is **DENIED** as to Request 6 propounded to

12  IGWT Group LLC and Request 6 propounded to IGWT 826 Investments, LLC.

13      5.    Mattel's Motion to Compel the Transferee Entities to produce

14  documents responsive to the Subpoenas is **GRANTED,** as follows:

15                        **Subpoena To IGWT Group LLC**

16          a.     Request 1:  The Motion is granted with respect to documents

17  relating to the purchase by, or transfer to, IGWT Group LLC of any items of value,

18  including Bratz products, from MGA, Larian, his spouse, his children, his siblings,

19  or their spouses, or any entity or person affiliated with them.

20          b.     Request 2:  The Motion is granted

21          c.     Request 3:  The Motion is granted with respect to documents

22  relating to any ownership interest by Larian, his spouse, his children, his siblings,

23  or their spouses, or any entity or person affiliated with them.

24          d.     Request 4:  The Motion is granted with respect to documents

25  relating to any sources of funding by Larian, his spouse, his children, his siblings,

26  or their spouses, or any entity or person affiliated with them.

27          e.     Request 5:  The Motion is granted with respect to documents

28  relating to any compensation, loans, advances, payments, fees or any other form of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ /

PAGF **3 /**

1   consideration paid by  IGWT Group LLC to Larian, his spouse, his children, his

2   siblings, or their spouses, or any entity or person affiliated with them.

3          f.      Request 7:  The Motion is granted.

4              **Subpoena To IGWT 826 Investments LLC**

5          a.      Request 1:  The Motion is granted with respect to documents

6   relating to the purchase by, or transfer to, IGWT 826 Investments LLC of any items

7   of value, including Bratz products, from MGA, Larian, his spouse, his children, his

8   siblings, or their spouses, or any entity or person affiliated with them.

9          b.      Request 2:  The Motion is granted

10         c.      Request 3:  The Motion is granted with respect to documents

11  relating to any ownership interest by Larian, his spouse, his children, his siblings,

12  or their spouses, or any entity or person affiliated with them.

13         d.      Request 4:  The Motion is granted with respect to documents

14  relating to any sources of funding by Larian, his spouse, his children, his siblings,

15  or their spouses, or any entity or person affiliated with them.

16         e.      Request 5:  The Motion is granted with respect to documents

17  relating to any compensation, loans, advances, payments, fees or any other form of

18  consideration paid by  IGWT 826 Investments LLC to Larian, his spouse, his

19  children, his siblings, or their spouses, or any entity or person affiliated with them.

20         f.      Request 7:  The Motion is granted.

21     5.     All non-privileged documents referenced in Paragraphs 3 and 5, above,

22  shall be produced within 30 days of this Order, subject to any applicable

23  confidentiality designations available under the Protective Order.

24     6.     Nothing in this Order should be deemed to prevent Mattel from

25  seeking discovery from the MGA parties of documents encompassed by the

26  Subpoenas upon the showing of a sufficient nexus between the particular discovery

27  requests and legitimate Phase 2 issues, and subject to any applicable objections.

28  //

EXHIBIT ___1___

PAGE  32

1   Dated:  March 10, 2009

2

3

4                                          By:        /s/ Robert C. O'Brien

5                                                     ROBERT C. O'BRIEN
                                                      Discovery Master
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ___1___

PAGE _33_

# EXHIBIT 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

    Plaintiff,

    vs.

MATTEL, INC., a Delaware
corporation,

        Defendants.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. CV 04-9405 and
05-2727

**CERTIFIED**
**COPY**

AND CONSOLIDATED ACTIONS.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Wednesday, March 4, 2009

Volume 1

Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 106479

EXHIBIT **2**

PAGE **34**

877.955.3855
www.sarnoffcourtreporters.com

IRVINE ▫ LOS ANGELES ▫ SAN FRANCISCO ▫ LAS VEGAS ▫ SAN DIEGO

**SARNOFF**
*Court Reporters and*
*Legal Technologies*

```
 1              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
 2                    EASTERN DIVISION

 3

 4   CARTER BRYANT, an individual,

 5       vs.                        No. CV 04-9049 SGL (RNBx)
                                    Consolidated with
 6   MATTEL, INC., a Delaware       Nos. CV 04-9405 and
     corporation,                   05-2727
 7
             Defendants.
 8

 9

10

11   _____

     AND CONSOLIDATED ACTIONS.
12   _____

13

14

15

16        REPORTER'S TRANSCRIPT OF PROCEEDINGS, Volume 1,

17   taken at 555 West Fifth Street, 48th Floor, Los Angeles,

18   California, beginning at 10:08 a.m. and ending at

19   12:12 p.m. on Wednesday, March 4, 2009, before

20   CHERYL R. KAMALSKI, Certified Shorthand Reporter No. 7113.

21

22

23

24

25
```

EXHIBIT 2 2

PAGE 35

TRANSCRIPT OF PROCEEDINGS                03/04/09

```
 1    APPEARANCES:
 2
 3    Discovery Master:
 4         ROBERT C. O'BRIEN
           Attorney at Law
 5         555 West Fifth Street, Suite 4800
           Los Angeles, California  90013-1065
 6         (213) 629-7400
 7    For Defendant Mattel, Inc.:
 8         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
           BY:  MICHAEL T. ZELLER
 9         BY:  JON COREY
           Attorneys at Law
10         865 South Figueroa Street, 10th Floor
           Los Angeles, California 90017
11         (213) 624-7707
12         MATTEL, INC.
           BY:  JILL E. THOMAS
13         Assistant General Counsel
           333 Continental Boulevard
14         El Segundo, California 90245-5012
           (310) 252-2000
15
      For Defendants MGA and Isaac Larian:
16
17         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
           BY:  JASON D. RUSSELL
           BY:  JENNIFER K. DEL CASTILLO
18         Attorneys at Law
           300 South Grand Avenue
19         Los Angeles, California 90071
           (213) 687-5000
20
      For Defendant IGWT Group and IGWT 826 Investments:
21
           VALLE & ASSOCIATES
22         BY:  JEFFREY B. VALLE
           BY:  ILAN WISNIA
23         Attorneys at Law
           11911 San Vicente Boulevard, Suite 324
24         Los Angeles, California 90049
           (310) 476-0300
25
```

EXHIBIT __3 2__

PAGE __36__

TRANSCRIPT OF PROCEEDINGS          03/04/09

```
 1   APPEARANCES (Continued):

 2

 3   For 808 Investors, LLC, Vision Capital, LLC, and OmniNet
     Capital, LLC:
 4
         BINGHAM McCUTCHEN LLP
 5       BY:   TODD E. GORDINIER
         BY:   PETER VILLAR
 6       Attorneys at Law
         600 Anton Boulevard, 18th Floor
 7       Costa Mesa, California 92626-1924
         (714) 830-0622
 8
     Also Present:
 9
         STEPHEN HAUSS
10       CRAIG HOLDEN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    compel is improper and should be denied for both serious

2    substantive and procedural reasons.  If we're going to

3    have these rules, they have a purpose, they have to be

4    followed.  And the Court's very order, the Court's

5    standing order says if this isn't done, it won't be

6    considered.  They now are walking away from these other

7    orders and they want to rely on the discovery stipulation

8    and order which, of course, I had no knowledge of when we

9    were having this discussion.  As you're well aware of,

10   they didn't even comply with that.  Perhaps if they had,

11   and set out, as they're required to do in writing, what it

12   is they want, why they want it, let's talk about it, let's

13   sit down and discuss it; we could, perhaps, have narrowed

14   it.   In fact, both I and my colleague told Mr. Corey we

15   were pretty sure we could satisfy himself with respect to

16   the bona fides of the transaction.  That was rejected.

17          MR. O'BRIEN:  Let me ask you this question.

18   You've said the discovery's overbroad.  What narrow

19   request could Mattel make that you believe would be proper

20   under the circumstances here?  In other words, what kind

21   of request do you think would be, as a third party?  I

22   mean, I understand you don't want to respond to anything,

23   it's a burden.  But assuming there's always a burden in

24   responding to discovery, what narrow request, based on

25   your understanding of the issues in phase 2, would be

```
 1    proper for your -- that you wouldn't come in here and file
 2    a motion to quash?
 3              MR. GORDINIER:  What documents do we have that
 4    show that either Mr. Larian or MGA paid money into this to
 5    purchase this debt?  I can tell you there are none.  This
 6    is a ready, fire, aim situation.  The allegations that
 7    were made and were made publicly are unconscionable and
 8    can't be undone.
 9              MR. O'BRIEN:  What other areas?  For example,
10    would the payment history with respect to the debt from
11    MGA to 808, assuming there is one, I don't know if this is
12    a balloon payment or that sort of thing --
13              MR. GORDINIER:  I assume that's in MGA's
14    financial statements, but -- I mean, I assume that they've
15    made payments.  I don't know the answer to that, that's
16    reflected on their financial statements, which I'm
17    assuming have been exchanged, but I don't know that.
18              MR. O'BRIEN:  Mr. Russell said that there was
19    discovery that was taken of Wachovia in phase 1.  I was
20    not involved in the case.  I don't know what discovery was
21    taken of Wachovia.  But, presumably -- but it sounds like,
22    and I'll let Mr. Zeller answer this and Mr. Russell
23    address it as well, but if there was discovery in phase 1
24    that was proper as to Wachovia in establishing the debt
25    and looking at the payment terms, and all that sort of
```

EXHIBIT ___51__

PAGE ___39__

1    thing, would that same sort of discovery be proper

2    vis-a-vis 808 --

3           MR. GORDINIER:  We absolutely offered -- we

4    offered, without knowing any of this, to give them the

5    deal documents.  Absolutely.  I don't know that it's

6    proper.  I think it's overbroad and I think it's

7    premature, but I'll just tell you, we offered to give them

8    the deal documents.  There's no secret there.  We did buy

9    the debt at a discount.  You've read the transcript.  I

10   told Judge Larson my client wants to make money at this,

11   and so he made a business decision that -- you know,

12   Wachovia has its own reasons for doing what it's doing

13   that we all can kind of guess -- but I don't know.  My

14   client had his own reasons for doing what he's doing.  The

15   only thing that seems to relate to all this is do they

16   have -- are there any documents that show the disgorgement

17   thing, or whatever he's trying to argue, and I'm not

18   familiar with the phase 2 -- but I have no problem

19   conceptually giving them the deal documents.  None at all.

20   But that doesn't entitle them to look at all records that

21   reflect all my nonparty entities, all documents detailing

22   or setting forth.  Read through them; they're overbroad

23   and they're improper.

24          MR. O'BRIEN:  What about performance, the

25   performance of the loan.

1    abusive fishing expedition, which is what we've got going

2    on.

3         MR. O'BRIEN:  And I understand your position.

4    I'm not negotiating with you on MGA's behalf and I'm not

5    suggesting that you -- I'm just trying to get an idea of

6    where you think the law -- what the parameters of

7    discovery are with respect to your client.  So I'm not

8    telling you you should, on the record or otherwise, offer

9    to give them documents if you don't think they're due.

10   I'm not trying to push you into that position and hold

11   it -- the point of this isn't to meet and confer.  I'm

12   just trying to get an idea of where you see the contours

13   of the law with respect to your client as to what

14   discovery might or might not be proper.

15        And I understand your position that on this

16   record you don't think any of the current discovery is

17   proper, but --

18        MR. GORDINIER:  Right.  Assuming they can't get,

19   from MGA, the payments from MGA on the loan, I have no

20   problem with that.  I have no problem with the loan

21   documents.

22        Now, it's true MGA was not a party directly to

23   the transaction between Omni 808 and Wachovia.  They had

24   to sign some guarantees, I think, or some

25   indemnifications, I'm not sure exactly, I'm not a

EXHIBIT ____ 2
PAGE 41
55

1  corporate guy. But that deal was negotiated between

2  Omni 808 and Wachovia. And so -- let's make sure that I'm

3  communicating with you, and that is on this record they're

4  not entitled to anything. However, what I want more than

5  anything out of today is efficiency and economy and peace

6  and you guys in the front of this table go on and do your

7  thing leading to the trial between all the MGA entities

8  and the Mattel entities and leave me and my clients alone.

9  And if that will cut it off, I'd be happy to do that.

10 That's my position. Do you see what I'm saying?

11         MR. O'BRIEN: I do. I understand. Mr. Zeller

12 took the position that in the Ninth Circuit the law that

13 we're dealing with here, unlike New York, a party isn't

14 required to go to their adversary before going to a third

15 party to seek discovery. Do you have a -- you seem to be

16 taking a different position --

17         MR. GORDINIER: It's ironic --

18         MR. O'BRIEN: -- as a practical matter. Is there

19 a case cite or.

20         MR. GORDINIER: Absolutely. It's ironic that

21 Mr. Zeller would cite the Ninth Circuit. Google

22 Mr. Zeller and Mattel and read the Ninth Circuit's opinion

23 on why a subpoena like this should be quashed, and why

24 sanctions against an attorney can be granted. The case

25 name is Mattel versus Walking Mountain Productions. So

1    that's the case I'd cite to you.

2            MR. O'BRIEN:  All right.

3            MR. GORDINIER:  Here it is, it's 353 F 3rd 792.

4    If you want, I can hand it up to you.

5            MR. O'BRIEN:  I can take a look at it.  One --

6            MR. GORDINIER:  Most of it is not related.  Go to

7    the end where they're upholding -- Judge Lew found that

8    what Mr. Zeller was doing was improper, and sanctioned

9    him, and the Ninth Circuit affirmed it.  So if you want

10   the authority I'm relying on, that's it.

11           MR. O'BRIEN:  Okay.  I'll take it -- if that's

12   the authority you're relying on for that position, I'll

13   take it.

14           The one thing that I do want to caution here is

15   that we're not litigating that case.  I don't know what

16   the discovery issues were in that case.  We're going to be

17   together for a fair amount of time.  I know you may not --

18           MR. GORDINIER:  Hopefully not me.

19           MR. O'BRIEN:  I understand that.

20           MR. GORDINIER:  No offense, Mr. O'Brien.

21           MR. O'BRIEN:  None taken.  But I do -- I don't

22   want to have, unless it's directly relevant, and I'm

23   sure you weren't intending to do so, but I don't want any

24   sort of ad hominum attacks on counsel and question their

25   motives and that sort of thing.  My feeling here is that

1    everybody comes to this table in good faith.  We've got

2    excellent lawyers here.  And so I just caution that.  I

3    don't think you were attacking Mr. Zeller personally.

4    I'll certainly take a look at the case.

5            The point that I was trying to get to is this

6    issue in the Ninth Circuit, do you have to go first, is it

7    a requirement that you go first to the party to obtain the

8    discovery, and then to the third party.  It may make

9    practical sense from a litigation standpoint, but is

10   that -- is it your position that that is not the law?

11           MR. GORDINIER:  No.  You, trial courts, you, as

12   Discovery Master, trial courts have discretion.  However,

13   it is a higher burden when you're going to a third party.

14   And if it's cumulative and duplicative of what can be and

15   should be and already has been sought from a party,

16   there's no reason to -- and the court should quash the

17   subpoena to the third party.  But I'm not telling you that

18   it's a requirement under the Ninth Circuit.  I'm not

19   telling you that.

20           MR. O'BRIEN:  Okay.

21           MR. GORDINIER:  I don't have anything else on the

22   substance, since you don't want to hear about the

23   procedure, other than to say the lack of procedure here so

24   colored the substance, we didn't have a chance to properly

25   present this to you.  And I was optimistic, as I am

1    sitting here, that with the appropriate guidance, this

2    could be tailored, but at this point, this motion needs to

3    be denied and the subpoenas need to be quashed.  And if

4    they want to tailor subpoenas, if they want to tailor

5    requests along the lines that they've set out here today,

6    they should be instructed to do so.

7              MR. O'BRIEN:  All right.  Thank you.  Mr. Valle.

8              MR. VALLE:  I represent two nonparties, and we

9    find ourselves in the middle of this, obviously

10   contentious, dispute.

11             We were served with a document request that is

12   extremely broad, as Mr. Russell points out, essentially

13   asked for every document relating to the company, is in no

14   way limited to the financial condition of Mattel -- I

15   mean, of MGA, which Mr. Zeller indicated was the purpose

16   of the discovery.

17             And let me pick up on the legal issue of whether

18   it's appropriate to start with nonparties rather than with

19   parties.

20             At page 6 of our brief we cite very recent case

21   law coming out of the Ninth Circuit, the NIDEK case,

22   Northern District of California, 2007, denied discovery

23   from a nonparty, stating, quoting now,

24                  "There is typically no reason to

25                  burden nonparties when the documents

1          I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4   before me at the time and place herein set forth; that

5   any witnesses in the foregoing proceedings, prior to

6   testifying, were duly sworn; that a record of the

7   proceedings was made by me using machine shorthand

8   which was thereafter transcribed under my direction;

9   that the foregoing transcript is a true record of the

10  testimony given.

11         Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript [  ] was [  ] was not requested.

15         I further certify I am neither financially

16  interested in the action nor a relative or employee

17  of any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20

21  Dated: ___MAR 0 9 2009_____

22

23         _____Cheryl R. Kamalski_____
           CHERYL R. KAMALSKI
24         CSR No. 7113

25

EXHIBIT __2__

PAGE __46__

# EXHIBIT 3

# EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 4

1

1      UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA

3      EASTERN DIVISION

4      - - -

5      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6      - - -

7   MATTEL, INC.,                    )
                                     )
8                  Plaintiff,        )
                                     )
9          vs.                       )   No. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, INC., ET. AL.,)
                                     )
11                 Defendants.       )
                                     )   Motions
12  AND CONSOLIDATED ACTIONS,        )
                                     )
13

14

15      REPORTER'S TRANSCRIPT OF PROCEEDINGS

16      Riverside, California

17      Wednesday, February 11, 2009

18      10:03 A.M.

19

20

21

22

23      THERESA A. LANZA, RPR, CSR
        Federal Official Court Reporter
24      3470 12th Street, Rm. 134
        Riverside, California  92501
25      951-274-0844
        WWW.THERESALANZA.COM

EXHIBIT 4
PAGE 52

2

```
 1   APPEARANCES:

 2   ON BEHALF OF MATTEL, INC.:

 3                          QUINN EMANUEL
                       By:  JOHN QUINN
 4                          DYLAN PROCTOR
                            MICHAEL T. ZELLER
 5                     865 S. FIGUEROA STREET,
                       10TH FLOOR
 6                     LOS ANGELES, California  90017
                       213-624-7707
 7

 8   ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
     (Outgoing)
 9                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                       By:  THOMAS J. NOLAN
·10                         JASON RUSSELL
                       300 SOUTH GRAND AVENUE
11                     LOS ANGELES, CALIFORNIA  90071-3144
                       213-687-5000
12

13   ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
     (Incoming)
14                     GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
                       BY:  JOEL KLEVENS
15                     10250 Constellation Boulevard
                       Los Angeles, California  90067
16                     310-553-3000

17                     MITCHELL, SILBERBERG & KNUPP LLP
                       BY:  RUSSELL J. FRACKMAN
18                     11377 West Olympic Boulevard,
                       Los Angeles, California  90064-1683
19                     310-312-2000

20
     ON BEHALF OF DEFENDANT GUSTAVO MACHADO:
21
                       OVERLAND BORENSTEIN SCHEPER & KIM LLP
22                     BY:  ALEXANDER H. COTE
                       601 West Fifth Street,
23                     12th Floor
                       Los Angeles, California  90071
24                     213-613-4660

25   / / /
```

EXHIBIT __4__

PAGE __53__

3

```
 1                    I N D E X (Continued)

 2

 3    APPEARANCES (continued):

 4
      On behalf of OMNI 808:
 5

 6                         BINGHAM McCUTCHEN LLP
                           BY:   Todd E. Gordinier
 7                         600 Anton Boulevard
                           Costa Mesa, CA  92626-1924
 8                         714-830-0622

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                              EXHIBIT   4

25                                              PAGE   54
```

70

1    follow the logical reason, their full amount of damages, based

2    on the instructions that they were provided and the evidence

3    that they were given, comes out to a consistent verdict.

4            THE COURT:   I do understand your argument.   Thank

5    you, Counsel.

6            MR. ZELLER:   Your Honor --

7            THE COURT:   No.   I've allowed the moving party to

8    speak first and last, and let's stick to that.   You have well

9    briefed these things.

10           I next want to take up Omni 808's ex-parte                01:34

11   application to intervene for limited purposes.

12           Mr. Gordinier.

13           MR. GORDINIER:   Thank you for offering me the

14   opportunity to address the Court.

15           We've set out in our papers, really, what we're          01:34

16   looking for here.   The transaction by which Omni 808 acquired

17   its interest and stepped into the shoes of Wachovia was

18   straightforward and it was at arm's length.   And I, frankly,

19   although naively, believed that if we would get stipulated to

20   be a party to the proceeding going forward, to the extent the    01:35

21   Court --

22           THE COURT:   Where do those funds come from?

23           MR. GORDINIER:   Mr. Kadisha, Your Honor, is a very

24   substantial individual.   Mr. Kadisha, Neil Kadisha, who is the

25   president and CEO of Omni 808, was one of the founders of

EXHIBIT __4__

PAGE __55__

1    Qualcomm.  With everything that's gone on in the market in the

2    last six or seven months, I don't want to make any

3    representations, but Mr. Kadisha has from time to time appeared

4    on the Forbes 400 list.  I don't know what his net worth is.

5         What happened, Your Honor, is, Wachovia called the      01:35

6    note.  I don't know why.  I've been involved in these cases

7    where everybody feels like the world revolves around what's

8    happening in this courtroom.  As the Court knows, Wachovia had

9    other issues.

10         Wachovia and its syndicate wanted it off its balance     01:35

11   sheet, and MGA needed relief from the immediate need to pay

12   money they did not have.  And my client was approached and put

13   together people and bought the indebtedness and assumed the

14   debt at a discount, at a substantial discount; and he expects

15   to make money.                                                 01:36

16         THE COURT:  You're representing to the Court, though,

17   that this was not MGA's money; that this was -- from wherever

18   it came from, it came from someplace else.

19         MR. GORDINIER:  Your Honor, two things.  I've never

20   met Mr. Larian, and I know less about MGA than almost everybody   01:36

21   else.

22         THE COURT:  I'm not asking about what you know from

23   MGA but of what you know from your client.

24         MR. GORDINIER:  What I know from my client is, he put

25   in many millions of dollars.  He had a couple of investors with

EXHIBIT ___ 4

PAGE ___ 56

72

```
 1   him to put in many millions of dollars.
 2             THE COURT:  Those investors and that money did not
 3   come from MGA?
 4             MR. GORDINIER:  That's the best of my understanding,
 5   Your Honor.  That's true.
 6             And the best way to resolve that is what the Court
 7   has already done.  The Court did exactly the right thing and
 8   set up Mr. Durkin, who's very accomplished, to look at MGA's
 9   books.  Step number one, he can tell the Court what their
10   balance sheet is, what their income statement is, and also the
11   sources and uses of cash.
12             And if there are any issues -- and, by the way, I'm
13   happy to talk to Mr. Durkin or have Mr. Durkin talk to my
14   client.  This is not intended to be -- this wasn't a fraudulent
15   transaction, Your Honor.  We negotiated -- we -- I didn't do
16   it -- Omni 808 negotiated with Davis Polk on behalf of Wachovia
17   and bought at a discount; and Omni 808 expects to and would
18   like to make money on its investment, and will not be able to
19   do so, obviously, if MGA goes out of business.  So our interest
20   here is in protecting Omni 808's investment.  And part of that
21   is wanting a say in how MGA's business on this receiver issue
22   is dealt with.
23             THE COURT:  The interest to intervene is focused, as
24   you indicate in your papers, on the receivership issue?
25             MR. GORDINIER:  That's correct, Your Honor.  That's
```

EXHIBIT 4

PAGE 57

73

1   correct.

2           THE COURT:  Very well.

3           Does anyone wish to be heard in opposition to the

4   ex-parte application?

5           MR. ZELLER:  Yes, Your Honor.                        01:38

6           I don't know that we've been -- and maybe the Court

7   heard it differently, but I still do not hear anything that

8   certainly approaches evidence that this was, in fact, an arm's

9   length transaction.

10          THE COURT:  I have a representation from respected     01:38

11  counsel.

12          MR. ZELLER:  Well, he said -- Your Honor, the

13  Court -- all he said was to the best of his knowledge.  He

14  didn't say it didn't come from it.

15          Second, the Court asked MGA; it didn't ask from        01:39

16  Larian, Larian's brother-in-law, his wife -- there are other

17  family members involved in this, and their fingerprints are on

18  this.  So, certainly, I want to be very clear, Your Honor, we

19  have not gone so far as to say, this is a fraud, this is a

20  sham, or so on.  The fact is that there are substantial        01:39

21  questions here as to the bona fides of this transaction and

22  whether or not this has been papered in a way to basically

23  create debt and credit, where, in fact, it would simply be

24  treated by the tax code, by the bankruptcy code, by the courts,

25  for every other purpose, as, in fact, being nothing but a loan,  01:39

EXHIBIT **4**

**58**

1   Because, otherwise, the Court is creating, I mean, truly very,

2   very pragmatic problems.  And that's just even on the

3   settlement front.  There are others I can talk about, in terms

4   of the complication of the proceedings.

5          If we now have yet another party, and particularly          01:44

6   one who we do not really know who it is, floating around in

7   this case, asserting rights -- and whatever it is that Omni 808

8   claims to have, namely this credit interest, can be fully

9   protected by Local Rule 66 procedures.

10         In fact, if that's all they're really trying to do,          01:44

11  to intervene on that basis, that's coextensive with Local Rule

12  66.  So there is nothing to be gained, and huge amounts to be

13  potentially lost, by allowing them in.

14         **THE COURT:**  Thank you, Counsel.

15         Mr. Gordinier, do you wish to respond?                       01:44

16         **MR. GORDINIER:**  Yes.  The last point first.

17         The last thing I want to do is sit at a settlement

18  table with these gentlemen, no offense to either of them, who I

19  know well.  We are entitled as a matter of right to intervene,

20  to protect our interests.  These unprovoked and unwarranted      01:44

21  personal attacks are just inappropriate.

22         I said as far as I know because I wasn't involved in

23  the actual funding of the deal.  But it's my understanding that

24  many millions of dollars went to Wachovia, for which Wachovia

25  transferred its interest in the debt.  And that was an arm's      01:45

EXHIBIT _____ _4_

PAGE
_59_

78

```
 1    length deal, and it was a straightforward negotiation, and

 2    Davis Polk represented Wachovia.  There is no reason for the

 3    kind of repeated personal --

 4              THE COURT:  And who represented --

 5              MR. GORDINIER:  My partner in San Francisco, Bingham.    01:45

 6              THE COURT:  Bingham.

 7              MR. GORDINIER:  It's a fine firm, Your Honor.

 8              Bingham represented Omni 808 in this transaction.

 9              THE COURT:  Your representation, then, is that based

10    on your information and belief, the proceeds for that were not    01:45

11    proceeds -- I said MGA, but MGA, Isaac Larian, any other MGA

12    entity.

13              MR. GORDINIER:  As far as I know, Your Honor, this

14    was structured by Mr. Kadisha and the monies went to Wachovia.

15              THE COURT:  I know that part.  The question is where    01:46

16    the monies came from.

17              MR. GORDINIER:  I know at least $50 million came from

18    Mr. Kadisha and his immediate -- that's -- it's serious money,

19    Your Honor.  This was an arm's length transaction.

20              The focus of the receiver motion should be, and I       01:46

21    know is, from the Court's perspective, on MGA.  And Mr. Durkin,

22    when he finishes his process, or in the middle of his

23    process -- I'd be happy to talk to him about how this

24    transaction was structured.

25              THE COURT:  Very good.
```

EXHIBIT **4**

PAGE **60**

79

1          MR. GORDINIER:  We are not intending to hold up or

2     obstruct.  We've moved with the drift of this case as it's gone

3     for the ten days I've been involved in it.  We're not going to

4     hold the case up.  But we do believe we're entitled to be heard

5     on the receiver issue.                                        01:47

6          THE COURT:  Very good.

7          We're going to take a very brief five-minute break

8     for the court reporter.  I'll come back and rule on these

9     matters, and then we'll proceed with the hearing.

10          (Whereupon, a brief recess was held.)                   01:47

11          THE COURT:  We're back on the record.

12          Regarding the receivership and everything, there's

13     actually three matters that are related.  First of all, there

14     is the ex-parte application for receivership which was being

15     held in abeyance by the Court; I have the ex-parte application  02:07

16     by Omni 808 for intervention for this limited purpose; and then

17     I have a request for a briefing schedule on the appointment of

18     a receiver.

19          For the record, the Court wishes to disclose that

20     last evening, or yesterday afternoon, the Court held a meeting  02:07

21     with the forensic auditor, Mr. Durkin, and his staff, as well

22     as certain judicial officers of the court and certain other

23     nonjudicial individuals assisting the Court.  All have been

24     expressly ordered not to disclose the contents of the interim

25     report pending further order of this Court, and the Court did  02:08

EXHIBIT **4**

PAGE **61**

105

1   we'll go from there.

2                 MR. ZELLER:   Thank you.

3                 THE COURT:   Anything further?

4                 Thank you.   Good day.

5

6

7

8

9

10                            CERTIFICATE

11

12   I hereby certify that pursuant to section 753, title 28, United
     States Code, the foregoing is a true and correct transcript of
13   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
14   conformance with the regulations of the Judicial Conference of
     the United States.

15

16   _____        _2-13-09_____
     THERESA A. LANZA, CSR, RPR                 Date
17   Federal Official Court Reporter

18

19

20

21

22

23

24

25
                                                EXHIBIT  4

                                                PAGE  62

dnesday, February 11, 2009                 Mattel vs. MGA Entertainme)

# EXHIBIT 5

# EXHIBIT FILED UNDER
# SEAL PURSUANT TO
# PROTECTIVE ORDER

# EXHIBIT 6

# EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 7

# EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 8

# EXHIBIT FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

     Plaintiff,

    vs.

MATTEL, INC., a Delaware
corporation,

     Defendants.

AND CONSOLIDATED ACTIONS.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. CV 04-9405 and
05-2727

**CERTIFIED**
**COPY**

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Wednesday, March 11, 2009

Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 106486

EXHIBIT **9**

PAGE **124**

Case 2:04-cv-09049-DOC-RNB   Document 5041-3   Filed 03/18/09   Page 71 of 76   Page ID #:161313

```
 1                 UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
 2                       EASTERN DIVISION

 3

 4   CARTER BRYANT, an individual,

 5          Plaintiff,

 6      vs.                          No. CV 04-9049 SGL (RNBx)
                                     Consolidated with
 7   MATTEL, INC., a Delaware        Nos. CV 04-9405 and
     corporation,                    05-2727
 8
            Defendants.
 9   _____

10   AND CONSOLIDATED ACTIONS.

11

12   _____

13

14

15

16        REPORTER'S TRANSCRIPT OF PROCEEDINGS, taken at

17   555 West Fifth Street, 48th Floor, Los Angeles,

18   California, beginning at 10:18 a.m. and ending at

19   11:53 a.m. on Wednesday, March 11, 2009, before

20   CHERYL R. KAMALSKI, Certified Shorthand Reporter No. 7113.

21

22

23

24

25
```

EXHIBIT  2 9
125

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES

```
 1    APPEARANCES:

 2

 3    Discovery Master:

 4         ROBERT C. O'BRIEN
           Attorney at Law
 5         555 West Fifth Street, Suite 4800
           Los Angeles, California 90013-1065
 6         (213) 629-7400

 7    For Defendant Mattel, Inc.:

 8         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
           BY:  MICHAEL T. ZELLER
 9         BY:  B. DYLAN PROCTOR
           BY:  JON COREY
10         Attorneys at Law
           865 South Figueroa Street, 10th Floor
11         Los Angeles, California 90017
           (213) 624-7707
12
      For Defendant MGA:
13
           GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
14         BY:  JOEL KLEVENS
           Attorney at Law
15         10250 Constellation Boulevard, Nineteenth Floor
           Los Angeles, California 90067
16         (310) 553-3000

17    Also Present:

18         CRAIG HOLDEN

19

20

21

22

23

24

25
```

1   them, had they been successful in fomenting a prosecution

2   against MGA.  And we've cited cases which make that

3   proposition clear and the language from those cases is not

4   so complicated or difficult.  In the Bank of America

5   versus Terra Nova Insurance case, which we cited in our

6   brief, the Court says,

7                "Disclosing information to

8                governmental authorities in the hope

9                that they will attack an adversary,

10               however, cannot be said to be done in

11               the pursuit of trial preparation.

12               Thus disclosure in such a situation

13               results in a waiver of the work

14               product protection."

15       And right in the middle of that quote, which is

16   cited in our brief, is a cite to the AT&T case, which

17   Mr. Proctor asked you to take a look at, AT&T, 642 Fed.2nd

18   at 1299, they cited 1285.

19       So -- I mean, this is the law, and there is a

20   waiver, and they have no basis to avoid that waiver.  To

21   the extent that these documents were supplied in a group,

22   in a context, we're entitled to see those.  The fact that

23   they say well, most, maybe not all, of the documents that

24   we gave to the Feds, we've given to you somewhere -- you

25   asked the right question, you got the answer, yes --

EXHIBIT _9_   54

1    they're telling you and they're telling us that yes, among

2    the umpteen hundred thousand or million pages, I don't

3    know what's been produced in this case, there are

4    documents that are also the same documents that we gave to

5    the Mexican authorities and somewhere else there are

6    documents that may be some of the same documents that we

7    gave to the Canadian authorities and somewhere else may be

8    documents that we gave to the U.S. authorities. But no

9    where do we get here's the documents that we gave to these

10   people.

11          And their burden argument -- first of all, not

12   raised, and that would be a basis, even though not raised

13   in an opposition? But, leaving aside that it's not

14   raised, what's the burden? Are they saying that they

15   don't have -- they don't know what documents were supplied

16   to the Mexican authorities, the Canadian authorities and

17   the U.S. authorities, and that it will require scouring

18   files from some lawyer? That's hogwash.

19          The lawyer's going to have a file of what he gave

20   to the Mexicans and Mattel has a file of what was given to

21   these Mexicans. And if they want to tell us that they

22   don't, they can do that. But to say that it's going to be

23   too hard to find out is just frivolous. And the proof of

24   that pudding is that it wasn't even put in the opposition.

25          I'm just about finished. In fact, I think I am.

EXHIBIT __9__   55

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES

TRANSCRIPT OF PROCEEDINGS                    03/11/09

1    So I would submit on that.

2              MR. O'BRIEN:  Thank you, Counsel.

3              MR. KLEVENS:  Unless you have further questions.

4              MR. O'BRIEN:  No further questions.

5         I want to compliment all the counsel on excellent

6    argument today.  I will get an order out very promptly,

7    and also expect an order to go out promptly on the

8    ex parte application.

9         Are there any other housekeeping issues that

10   anyone wants to take up at this time?

11             MR. KLEVENS:  No.  Thank you.

12             MR. O'BRIEN:  I think we've got a pretty good

13   schedule stretched out for the next few weeks, with a

14   spring break in there for some of us that have kids on a

15   spring break schedule, but, again, compliment you on the

16   argument, compliment both sides on the papers.  It was all

17   excellent.  And I will get back to you quickly.

18             MR. KLEVENS:  Thank you.

19             MR. ZELLER:  Thank you.

20             MR. O'BRIEN:  Thank you all.  Have a good day.

21   ///

22   ///

23

24

25

1      I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby certify:

3      That the foregoing proceedings were taken

4   before me at the time and place herein set forth; that

5   any witnesses in the foregoing proceedings, prior to

6   testifying, were duly sworn; that a record of the

7   proceedings was made by me using machine shorthand

8   which was thereafter transcribed under my direction;

9   that the foregoing transcript is a true record of the

10  testimony given.

11      Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript [  ] was [  ] was not requested.

15      I further certify I am neither financially

16  interested in the action nor a relative or employee

17  of any attorney or party to this action.

18      IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20          MAR 1 2 2009

21  Dated: _____

22

23          *Cheryl R. Kamalski*
            CHERYL R. KAMALSKI

24          CSR No. 7113

25

EXHIBIT __9__

PAGE *130*