1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11 | CARTER BRYANT, an individual,       | CASE NO. CV 04-9049 SGL (RNBx)
   |                                     | Consolidated with Case Nos. CV 04-09059
12 |          Plaintiff,                 | and CV 05-02727
13 |    vs.                              | **DISCOVERY MATTER**
14 | MATTEL, INC., a Delaware            | [To Be Heard By Discovery Master
   | corporation,                        | Robert C. O'Brien]
15 |                                     |
   |          Defendant.                 | **[PUBLIC REDACTED] MATTEL,
16 |                                     | INC.'S OPPOSITION TO MOTION TO
   |                                     | QUASH AND/OR FOR PROTECTIVE
17 | AND CONSOLIDATED ACTIONS            | ORDER RE SUBPOENAS ISSUED BY
   |                                     | MATTEL, INC. TO NON-PARTIES
18 |                                     | LEON NEMAN, FRED MASHIAN,
   |                                     | AND NEIL KADISHA**
19
                                          [Declaration of Jon Corey filed
20                                        concurrently herewith]

21                                        Hearing Date:  TBD
                                          Time:          TBD
22                                        Place:         Arent Fox, LLP
                                                         555 West Fifth Street
23                                                       48th Floor
                                                         Los Angeles, CA 90013
24
                                          **Phase 2:**
25                                        Disc. Cut-off:    December 11, 2009
                                          Pre-trial Conf.:  March 1, 2010
26                                        Trial Date:       March 23, 2010

27

28

07209/2849999.1

OPPOSITION TO MOTION TO QUASH

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ........................................................................................................ 2

ARGUMENT .............................................................................................................. 7

I.    THE OBJECTIONS TO MATTEL'S DOCUMENT SUBPOENAS WERE UNTIMELY AND THEREFORE WAIVED ....................................... 7

II.    ORDERS PRECLUDING DEPOSITIONS ON RELEVANCE GROUNDS ARE DISFAVORED ............................................................... 8

III.    THE DISCOVERY THAT MATTEL SEEKS IS RELEVANT TO MGA'S AND ISAAC LARIAN'S NET WORTH AND TO MATTEL'S DAMAGES CLAIMS ................................................................................... 9

    A.    The Witnesses Possess Relevant Information And Documents ............. 9

    B.    The Requests Are Relevant To Other Phase 2 Issues .......................... 12

IV.    THE WITNESSES' OBJECTIONS TO THE SUBPOENAS ARE WITHOUT MERIT ............................................................................... 12

V.    MATTEL WAS UNDER NO OBLIGATION TO MEET AND CONFER REGARDING THE SCHEDULING OF DEPOSITION DATES ..................................................................................................... 14

CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

Page

### Cases

A. Farber and Partners, Inc. v. Garber,
  234 F.R.D. 186 (C.D. Cal. 2006) .................................................................... 13

Anderson v. Air West, Inc.,
  542 F.2d 1090 (9th Cir. 1976) ......................................................................... 8

In re Bergeson,
  112 F.R.D. 692 (D. Mont. 1986) ................................................................... 13

Bucher v. Richardson Hosp. Authority,
  160 F.R.D. 88 (N.D. Tex. 1994) ...................................................................... 8

Covey Oil Co. v. Continental Oil Co.,
  340 F.2d 993 (10th Cir. 1965) ....................................................................... 13

Deal v. Lutheran Hospitals & Homes,
  127 F.R.D. 166 (D. Alaska 1999) .................................................................... 7

E.E.O.C. v. Greater Metroplex Interiors, Inc.,
  2009 WL 412934 ............................................................................................. 8

Koninklike Philips Electronics N.V. v. KXD Technology, Inc.,
  2007 WL 3101248 (D. Nev. Oct. 16, 2007) ................................................. 14

Mansourian v. Board of Regents of University of Cal. at Davis,
  2007 WL 4557104 (E.D. Cal. Dec. 21, 2007) ................................................ 8

McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,
  894 F.2d 1482 (5th Cir. 1990) ....................................................................... 13

Panola Land Buyers Ass'n v. Shuman,
  762 F.2d 1550 (11th Cir. 1985) ..................................................................... 13

Perius v. Abbott Laboratories,
  2008 WL 3889942 (N.D. Ill. August 20, 2008) .............................................. 8

Ray v. BlueHippo Funding, LLC,
  2008 WL 3399392 (N.D.Cal. August 11, 2008) ........................................... 14

Residential Constructors, LLC v. Ace Property and Cas. Ins. Co.,
  2006 WL 3149362 (D. Nev. 2006) ................................................................ 13

Salter v. Upjohn Co.,
  593 F.2d 649 (5th Cir. 1979) .......................................................................... 8

Seabrook Medical Systems, Inc. v. Baxter Healthcare Corp.,
  164 F.R.D. 232 (S.D. Ohio 1995) ................................................................. 14

State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.,
    2007 WL 2993840 (E.D.N.Y. 2007) .................................................................. 13

U.S. E.E.O.C. v. ABM Industries Inc.,
    2008 WL 5385618 (E.D. Cal. 2008) .................................................................. 13

Universal Trading & Inv. Co. v. Kiritchenko,
    2006 WL 3798157 (N.D. Cal. Dec. 22, 2006) ...................................................... 8

Valvida v. Kmart Corp.,
    2000 WL 1739215 (D.V.I. 2000) ....................................................................... 14

Wertheim Schroder & Co. Inc. v. Avon Products, Inc.,
    1995 WL 6259 (S.D.N.Y. Jan. 9, 1995) ............................................................. 13

**Statutes**

Fed. R. Civ. P. 26 .................................................................................................. 12

Fed. R. Civ. P. 45(c)(2)(B) ...................................................................................... 7

## Preliminary Statement

The Discovery Master should not permit MGA and related entities and individuals to continue to conceal the sources and true nature of the roughly $300 million in "debt" MGA claims it must repay. Whether this debt is legitimate or bogus is highly relevant to a number of Phase 2 issues, including MGA's and Larian's net worth. The subpoenas now at issue are designed to provide clarity to this long-obscured issue, among others. The witnesses here -- Neil Kadisha (a principal of Omni 808 who claims he contributed at least $50 million to MGA), Leon Neman (Isaac Larian's brother-in-law, a former MGA director and the admitted principal of Vision Capital), and Fred Mashian (the attorney who helped structure the deals) -- all have information in their possession that is relevant under the terms of the Discovery Master's prior Orders. A blanket order quashing their depositions, as demanded, would be unprecedented in these circumstances. The motion to quash and for a protective order should be denied.

The witnesses urge that the terms of the Discovery Master's prior Order require quashing of Mattel's subpoenas. This is incorrect. The Order, by recognizing the legitimacy of net worth discovery, actually requires the opposite. But the contention is immaterial in any case. As Mattel details in its concurrently-filed motion to reconsider, new evidence that has come to light since the Order was issued (produced by Wachovia, not MGA, Larian, Omni, or any of the other MGA-affiliated entities) shows that -- contrary to the Omni parties' representations to both the Discovery Master and the Court -- Larian and MGA *are* affiliated with the Omni Parties and *have* provided funds, through IGWT, that Omni then funneled back into MGA as "debt" in purportedly (but clearly not) "arm's length" transactions. This scheme to conceal the true state of MGA's finances by engaging in related party transactions is fair game for discovery. It bears on MGA's net worth, damages and other issues. The witnesses bringing this motion have knowledge of the scheme and may have documents that relate to it. That knowledge, and those documents, are discoverable.

Aside from contesting relevance, the witnesses raise several other objections, all of which are spurious. Undue burden is a non-issue: as the parties resisting discovery, the witnesses must prove that the burden involved in responding to Mattel's subpoenas is "undue," yet they offer only conclusory assertions unsupported by evidence. No description of the volume of documents involved or of the time or expense required to respond to the subpoenas is offered, nor could the witnesses make any such showing given that their associated entities, Omni 808, Vision Capital, and Lexington Financial, are all recently-formed, single-purpose entities. That the witnesses claim to be non-parties is also unavailing. They not only are affiliated with Larian and MGA, but the <u>Federal Rules</u> provide for, and do not prevent, discovery from non-parties who have pertinent information. (Because federal discovery rules are liberal as to parties and non-parties alike, dozens of non-parties who were *not* affiliated with MGA or Mattel -- and these witnesses are affiliated with MGA -- properly were deposed, and produced documents, in Phase 1 as a result of subpoenas issued by MGA, Larian and Mattel.)

Last, the conclusion that a protective order must be granted because Mattel purportedly did not "meet and confer" before noticing the depositions is a non-sequitur. The witnesses cite not one case precluding a deposition from going forward *altogether,* as they demand, based on an alleged scheduling dispute (even were there one, which there wasn't). The illogic of that position reveals the vigor with which MGA, Larian, and Omni and, now, the witnesses have attempted (and will attempt to continue) to conceal evidence. This latest attempt should be rejected.

### Background

Mattel does not wish to burden the Discovery Master by reciting again the interrelation between the various entities and individuals involved in the unlawful scheme now at issue, having recited this before. Accordingly, Mattel sets forth below only the core background that relates directly to the matter at bar.

**The Witnesses**.  During and immediately after the Phase 1 trial that resulted in substantial jury verdicts against MGA and Larian, Omni 808 Investors, LLC ("Omni 808") purported to take a security interest in certain MGA assets.[1]  Omni 808 is a single purpose entity formed on August 12, 2008, during the damages phase of the Phase 1 trial and after MGA and Larian were already found liable to Mattel.[2]  As the Discovery Master has noted, Omni 808 claims that it acquired nearly all of MGA's debt to Wachovia of roughly $300 million.[3]  Omni 808 also has admitted, after MGA had first sworn to the Court and the Ninth Circuit that it had never done so, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[4]  Neil Kadisha is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[5]

According to the Omni Parties' UCC statements, Omni 808 appears to be owned and funded by Vision Capital, LLC ("Vision Capital") which, like Omni 808, is a special-purpose entity that was formed during the damages phase of the Phase 1 trial.[6]  Leon Neman now admits, in his motion to quash, that he is a principal of Vision Capital.[7] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[8] Neman is a principal of Neman Brothers & Associates, which owns the building at

---

[1] See UCC Financing Statement Amendment dated September 9, 2008, amending prior UCC Financing Statement to add Omni 808 Investors, LLC as a creditor to MGA with co-priority with Wachovia Bank, N.A., attached as Exhibit 11 to the Declaration of John D. Corey in Support of Mattel, Inc.'s Motion for Reconsideration of Phase II Discovery Matter Order No. 3, ("Reconsideration Dec."), dated March 24, 2009, lodged concurrently herewith.
[2] See Omni 808 Investors, LLC Certificate of Status and Articles of Organization, attached as Exhibit 16 to the concurrently filed Declaration of Jon D. Corey.
[3] See March 10, 2009 Discovery Master Order, at 19-20, Corey Dec., Exh. 23.
[4] See Declaration of Brian Wing in Support of MGA's Correction to the Opposition to Mattel's Ex Parte Application for a Receiver, dated December 31, 2008, Corey Dec., Exh. 15.
[5] See ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, attached as Exhibit B to the Declaration of Brian Wing in Support of MGA's Correction to the Opposition to Mattel's Ex Parte Application for a Receiver, dated December 31, 2008, Corey Dec., Exh. 15.
[6] See Vision Capital, LLC Certificate of Formation dated August 19, 2008, Reconsideration Dec. Exh., 12.
[7] Motion at 2:16.
[8] See Declaration of Michael T. Zeller in Support of Mattel's Opposition to Omni 808 Investors, LLC's Ex Parte Application to Intervene, dated February 5, 2009 ("Zeller Dec.") at ¶ 4, lodged concurrently herewith.

1525 South Broadway in Los Angeles.[9] Vision Capital claimed to be located at this same address in its August 29, 2008 UCC financing statement.[10]

Also according to the Omni Parties' UCC statements, Vision Capital purportedly obtained the money used to fund Omni 808 from Lexington Financial Limited ("Lexington").[11] The principals of Lexington are unknown because Nevis, where it is incorporated, deliberately does not request or disclose any such information about its corporations (and Lexington has never disclosed such information to Mattel or the Court).[12] Lexington perfected its purported security interest in Vision Capital's ownership interest in Omni 808 on August 29, 2008—three days after the jury's damages verdict against MGA and Larian.[13] Fred Mashian, an attorney, is identified as the Lexington contact on the UCC financing statement showing that Vision Capital secured its alleged loan from Lexington with its ostensible ownership interest in Omni 808.[14] Mr. Mashian is also the listed agent for several entities that Leon Neman owns.[15] One of them -- Rock-Hill Holdings, LLC, a Leon Neman entity that lists Mashian as its registered agent -- also has a Delaware address that is the same as Vision Capital's alleged Delaware address.[16]

**The Court's Prior Order**. Mattel previously moved to compel documents from Omni 808, Vision Capital, IGWT Group, LLC, IGWT 826 Investments, LLC and other entities, which the Discovery Master granted in part and denied in part. The Discovery Master substantially granted the motion as to the IGWT parties based in part on evidence suggesting they are "affiliated with—if not wholly owned by—Larian."[17] The Discovery Master granted the motion as to Omni 808 as to

---

[9] See Zeller Dec. at ¶ 6.
[10] UCC Financing Statement dated August 29, 2008, Reconsideration Dec., Exh. 13.
[11] See id. (with Lexington taking a purported security interest in Vision Capital's alleged ownership interest in Omni 808 Investors LLC).
[12] See December 12, 2008 letter from Registrar Williams, Reconsideration Dec., Exh. 15.
[13] See id.
[14] See UCC Financing Statement dated August 29, 2008, Reconsideration Dec., Exh. 13.
[15] See Zeller Dec. ¶ 11.
[16] See Zeller Dec. ¶ 12.
[17] Discovery Master Order No. 3, dated March 10, 2009, at 25, Corey Dec., Exh. 23.

documents relating to the existence of any debt owed by MGA to Omni 808 and any communications between Omni 808 and MGA regarding that debt, reasoning that such documents are pertinent to MGA's net worth.[18] However, the Discovery Master denied the motion as to other Omni 808 documents and denied it as to Vision Capital documents entirely.[19]

As detailed in Mattel's concurrently-filed motion to reconsider, those denials were predicated on representations that Larian and MGA did not fund and are not affiliated with Omni or Vision. The Discovery Master expressly noted: "Based on the information presented at the February 11, 2009 hearing and in connection with the pending motions, it does not appear that either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have an ownership interest in the Financing Entities."[20] The Omni parties' counsel represented just that at argument on the motion:

> MR. GORDINIER: What documents do we have that show that either Mr. Larian or MGA paid money into this to purchase this debt? I can tell you there are none. This is a ready, fire, aim situation. The allegations that were made and were made publicly are unconscionable and can't be undone.[21]

Similarly, counsel represented to Judge Larson that the Omni 808 debt purchase was an arm's length transaction, not backed or funded by Larian:

> MR. GORDINIER: I know at least $50 million came from Mr. Kadisha and his immediate -- that's -- it's serious money, Your Honor. This was an arm's length transaction.[22]

Documents recently produced by Wachovia belie these representations. As detailed in the motion to reconsider, these documents show that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[23] They also show that Omni 808 and MGA are "▮▮▮▮▮▮," and that Larian ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[18] Id. at 29.
[19] See March 10, 2009 Discovery Master Order No. 3, at 28-29, Corey Dec., Exh. 23.
[20] See id. at 4.
[21] See March 4, 2009 Discovery Master Hearing Transcript at 51:3-8 (emphasis added), Corey Dec., Exh. 24.
[22] See id. at 78:9-19.
[23] See Motion for Reconsideration of Phase II Discovery Order No. 3, dated March 24, 2009 ("Reconsideration Motion"), at Background, Section II.

1  ███████ [24] And Neman, in the motion at bar, admits that he -- ███████
2  ███████████████████████ -- is a principal of Vision Capital.[25] The
3  witnesses, in their motion, rely heavily on the Discovery Master's prior Order and
4  specifically its conclusions that "it does not appear that either MGA Entertainment,
5  Inc., MGA Entertainment (HK) Limited, or Larian have an ownership interest in the
6  Financing Entities" and that "neither entity is alleged by Mattel to be a creditor of
7  MGA Entertainment, Inc." (E.g., Mtn. at 1-2.)  In light of new evidence, and as set
8  forth in Mattel's motion to reconsider, those conclusions can no longer be sustained.

**The Subpoenas**.  Mattel served document subpoenas on Leon Neman and Fred Mashian on February 9, 2009, and January 31, 2009, respectively.[26]  Mattel repeatedly tried to serve a subpoena on Neil Kadisha starting January 23, 2009, but on each occasion service was refused because Mr. Kadisha was allegedly "out of town" or "out of the office" over the entire period.[27]  On February 6, 2009, Mattel sent a letter to Kadisha's counsel, Messrs. Gordinier and Villar, inquiring whether they would agree to accept service on Mr. Kadisha's behalf.[28]  Mr. Gordinier responded that Mr. Kadisha was out of the country and that he had asked for authority to accept service on Mr. Kadisha's behalf,[29] but Mattel received no further response from Mr. Gordinier.  Mattel then sent another letter to Mr. Gordinier on February 24, 2009, requesting either that he confirm he was authorized to accept service of a subpoena or, alternatively, to set up a time to meet and confer regarding an anticipated motion.[30]  Mattel eventually was able to serve a subpoena for documents and testimony on Mr. Kadisha on February 26, 2009, the same day it also served deposition subpoenas on Nemen and Mashian.[31]

---

[24] OmniNet Capital, LLC's offer letter to Wachovia Bank, dated July 29, 2008, Reconsideration Dec., Exh. 2
[25] Zeller Dec., ¶ 4; Motion at 2:16.
[26] Corey Dec., Exhs. 1, 3.
[27] Corey Dec., ¶ 12, Exhs. 11 and 12.
[28] February 6, 2009 letter from Jon Corey to Todd Gordinier and Peter Villar, Corey Dec., Exh. 11.
[29] February 9, 2009 letter from Todd Gordinier to Jon Corey, Corey Dec., Exh. 12.
[30] Corey Dec., Exh. 13.
[31] Kadisha Subpoena, dated 25, 2009, Corey Dec., Exh. 2.

1    The subpoenas at issue seek depositions of the witnesses and categories of
2 relevant documents. One category of requests encompasses documents directly related
3 to MGA's net worth.[32] Another relates to documents that pertain to Omni 808's
4 acquisition of MGA's debt.[33] Other requests target communications about MGA's
5 debts,[34] MGA debt acquisition by third parties,[35] and the identity of true owners of
6 Omni Parties that purportedly own MGA debt.[36]

### Argument

I.   **THE OBJECTIONS TO MATTEL'S DOCUMENT SUBPOENAS WERE UNTIMELY AND THEREFORE WAIVED**

Mashian and Nemen failed to serve timely objections to the subpoenas. Objections must be served within 14 days after service of the subpoena, Fed. R. Civ. P. 45(c)(2)(B), or they will be deemed waived. Deal v. Lutheran Hospitals & Homes, 127 F.R.D. 166, 168 (D. Alaska 1999) (objections to subpoena waived where not served within time period proscribed by Rule 45). Fred Mashian and Leon Nemen did not serve objections to Mattel's subpoenas within the requisite time period.[37] Both Mashian and Nemen have therefore waived any right to withhold the subpoenaed documents.

---

[32] See, e.g., Neman Request No. 7, Mashian Request No. 4, and Kadisha Request No. 10, Corey Dec., Exhs. 1, 2, and 3.

[33] See, e.g., Neman Request No. 4 and Kadisha Requests Nos. 1, 30, 32, and 36; Mashian Request No. 15 and Kadisha Requests Nos. 28, 29, and 31; Kadisha Requests Nos. 14, 17, 18, 20, and 24, Corey Dec., Exhs. 1, 2, and 3.

[34] See, e.g., Kadisha Requests Nos. 8 and 9; Requests for such communications are made in Neman Request Nos. 20-24, Mashian Request No. 23, and Kadisha Request No. 39, Corey Dec., Exhs. 1, 2, and 3.

[35] See, e.g., Neman Request Nos. 1-3, 5, 6, 17-19, 27, Mashian Request Nos. 1-3, 20, 22, 26, 38, 21, and Kadisha Request Nos. 2-7, 33-35, 37, 38, 40, 43; Neman Request Nos. 13-16, Mashian Request Nos. 13, 17-19, and Kadisha Requests No. 27, Corey Dec., Exhs. 1, 2, and 3.

[36] See, e.g., Neman Request Nos. 11, 12, 26, Mashian Request Nos. 9-12, 14, 16, 25, 27, and Kadisha Request Nos. 21-23, 25, 26, 42, and 44; Neman Request Nos. 9, 10, 25, Mashian Request Nos. 5-8, and 24, and Kadisha Request Nos. 11-13, 15, 16, and 41, Corey Dec., Exhs. 1, 2, and 3.

[37] See Corey Dec., Exhs. 1, 3, 25; Stipulation and Order for Appointment of a Discovery Master, dated December 6, 2006, at 5, Corey Dec., Exh. 26.

## II. ORDERS PRECLUDING DEPOSITIONS ON RELEVANCE GROUNDS ARE DISFAVORED

The witnesses seek a blanket order precluding their depositions altogether. "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." Mansourian v. Board of Regents of University of Cal. at Davis, 2007 WL 4557104, *2 (E.D. Cal. Dec. 21, 2007) (quoting Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979)). "The movant must show a particular and compelling need for such an order.... This requirement 'furthers the goal that courts only grant as narrow a protective order as is necessary under the facts.'" Bucher v. Richardson Hosp. Authority, 160 F.R.D. 88, 92 (N.D. Tex. 1994) (denying motion to quash deposition) (citations omitted). Both the prior Discovery Master and the Court have rejected efforts to prohibit depositions of witnesses who "probably" had knowledge of discoverable information, holding that any proper objections such as those grounded in privilege must be made on a question-by-question basis.[38]   Other courts enforce the same rule. See, e.g., Anderson v. Air West, Inc., 542 F.2d 1090, 1093 (9th Cir. 1976) (motion for protective order properly denied if witness probably had some knowledge of discoverable information); E.E.O.C. v. Greater Metroplex Interiors, Inc., 2009 WL 412934, *2 (N.D. Tex. Feb. 17, 2009 (denying motion to quash deposition and holding that objections to questions on the basis of privilege or as being cumulative or otherwise improper must be made on a question-by-question basis); Perius v. Abbott Laboratories, 2008 WL 3889942, *9 (N.D. Ill. August 20, 2008) (because deponent "could have relevant personal knowledge," request for a "motion for a blanket protective order as to those depositions is denied."); Universal Trading & Inv. Co. v. Kiritchenko, 2006 WL 3798157, *2-3 (N.D. Cal. Dec. 22, 2006) (defendant not entitled to blanket protective order because

---

[38]   See May 1, 2008 Discovery Master Order Granting in Part and Denying in Part Mattel's Motion to Compel Deposition and Production of Documents of Christensen Glaser Fink Jacobs Weil & Shapiro LLP, Corey Dec., Exh. 17; January 7, 2008 Minute (footnote continued)

07209/2849999.1

-8-

OPPOSITION TO MOTION TO QUASH

privilege against self incrimination must be determined on a question-by-question basis).

### III. THE DISCOVERY THAT MATTEL SEEKS IS RELEVANT TO MGA'S AND ISAAC LARIAN'S NET WORTH AND TO MATTEL'S DAMAGES CLAIMS

#### A. The Witnesses Possess Relevant Information And Documents

Here, Neman, Kadisha and Mashian each have knowledge and documents relevant to the genuineness of MGA's purported liabilities and the circumstances under which those alleged liabilities were acquired. To determine MGA's net worth, Mattel must first determine the "book value" of MGA.[39] Key to determining MGA's "book value" is determining whether the reported liabilities -- such as its debt -- are legitimate. That is, book value must take into account whether there is a reasonable possibility that the company will be required to pay those liabilities in full at some point in the future. If the liability in fact will not have to be repaid, then that "liability" should not be taken into account when determining MGA's book value and, therefore, its net worth.[40] To evaluate whether MGA's purported debt is truly a liability, testimony and documents related to the source of the funding, the ultimate owners of the debt, the course of conduct such as the history of payment or non-payment, and any agreements or understandings between MGA or Larian and the source of the funds are pertinent.[41]

As detailed in Mattel's concurrently filed motion to reconsider, substantial evidence, including documents recently produced by Wachovia, suggests that the MGA/Omni/808/Vision Capital transactions are shams designed to conceal that Larian is making capital contributions to MGA disguised as debt. Wachovia has produced documents showing that ███████████████████████████████████████. In

---

Order Granting in Part and Denying in Part Mattel's Motion for Leave to Take Additional Discovery, Corey Dec., Exh. 18.
[39] Declaration of Michael J. Wagner, dated March 24, 2009, and filed concurrently herewith ("Wagner Dec."), ¶ 9.
[40] Wagner Dec., ¶ 11.
[41] Wagner Dec., ¶ 14.

1  particular, the ███████████████████████████████████████████

2  ███████████████████████████████████████████████████████████

3  █████████████[42]  As the Discovery Master has recognized, IGWT 826 is controlled and

4  likely owned by Larian.[43]  Another agreement signed by MGA explicitly states that

5  ██████████████████████████████████.[44] ███████████████████████

6  ███████████████████████████████████████████████████████████

7  █████████████████████████████[45]  Mattel is entitled to further discovery to confirm

8  whether, in fact, MGA truly owes the funds it claims it owes to Omni 808.

9        The witnesses are likely to have relevant information in this regard.

10       Mr. Kadisha:  As the CEO of Omni 808, which claims to have purchased

11 substantially all of the debt owed by MGA to Wachovia, Kadisha should have

12 knowledge of the transaction.  Documents indicate that Mr. Kadisha was directly

13 involved in the alleged purchase, prompting even Omni 808's counsel to concede his

14 involvement (and his alleged $50 million contribution).  Mr. Kadisha should also have

15 knowledge of the transaction by which Larian's company, IGWT 826, funded Omni

16 808's extension of supposed credit to MGA.

17       Mr. Neman:  Neman is ████████████████████, served as a director of

18 MGA, and is a principal of Vision Capital.[46]  Vision claims to fund and own Omni 808,

19 purchased with funds obtained from Lexington.

20       Mr. Mashian:  Listed as the contact person in documents relating to Vision

21 Capital's purported loan from Lexington, and as the person who prepared the UCC

22 statement, Mr. Mashian also is the listed agent for several other entities that Neman

---

[42] See Secured Delayed Draw Demand Note, Reconsideration Dec., Exh. 3.
[43] See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 25, Corey Dec., Exh. 23.
[44] See ██████████ Note, dated September 3, 2008, Reconsideration Dec., Exh. 4 (██████); see also ████████████████████████, at WACHOVIA 001886, Reconsideration Dec., Exh. 5 (████████████████████████████████████████).
[45] Reconsideration Dec., Exh. 2.
[46] Zeller Dec., ¶¶ 4, 6; Motion at 2.

1  owns.[47] Mr. Mashian has admitted that he worked on—and thus has knowledge of—
2  the relevant transactions.[48]

3        The document requests attached to the subpoenas likewise seek financial
4  information relating to the net worth of MGA,[49] as well as the agreements that the
5  purported creditors have entered into with each other and MGA, including documents:

- related to agreements, contracts, or transactions between Vision Capital, Lexington Financial Limited, OmniNet Capital, IGWT 826, IGWT Group, OmniNet 808, MGA, Isaac Larian, Angela Larian, Larian family members, Fred Mashian, Leon Neman, and MGA.[50]

- related to the source of funding or credit to, or detail loan facilities relating to, Vision Capital, Lexington Financial Limited, Omni 808, OmniNet, IGWT, MGA, Isaac Larian, Angela Larian, Larian family members, Fred Mashian, and Leon Neman.[51]

Mattel also seeks documents relevant to the identity of the true owners and structure of Omni 808, Vision Capital, and Lexington Financial, including documents:

- related to the formation, governance, ownership or capitalization of Vision Capital, OmniNet, Omni 808, Lexington Financial, and IGWT.[52]

- related to the relationships between Vision Capital, OmniNet, Omni 808, Isaac Larian, Larian's family members, Fred Mashian, Neil Kadisha, and Lexington Financial Limited, and MGA.[53]

All these requests are likely to lead to the discovery of admissible evidence relating to the true nature of MGA's "debt" and hence MGA's and Larian's net worth.

---

[47] See supra at n. 15.
[48] Declaration of Fred F. Mashian in Opposition to Mattel, Inc.'s Ex Parte Application For An Order Deeming Lexington Financial, LLC Served, or in the Alternative, to (1) Compel an Authorized Representative of Lexington Financial, LLC to Appear to Accept Service of Subpoena, or (2) Issue an Order Authorizing Lexington Financial, LLC To Be Served Through the California Secretary of State, filed March 9, 2009, at ¶¶ 3, 6.
[49] See, e.g., Mashian Request No. 4, Kadisha request No. 10, Corey Dec., Exhs. 1, 2.
[50] Neman Request Nos. 1-3, 5, 6, 17-19, 27, Mashian Request Nos. 1-3, 20, 22, 26, 38, 21, and Kadisha Request Nos. 2-7, 33-35, 37, 38, 40, 43, Corey Dec., Exhs. 1, 2.
[51] Neman Request Nos. 13-16, Mashian Request Nos. 13, 17-19, and Kadisha Requests No. 27, Corey Dec., Exhs. 1, 2, 3.
[52] Neman Request Nos. 9, 10, 25, Mashian Request Nos. 5-8, and 24, and Kadisha Request Nos. 11-13, 15, 16, and 41, Corey Dec., Exhs. 1, 2, 3
[53] Neman Request Nos. 11, 12, 26, Mashian Request Nos. 9-12, 14, 16, 25, 27, and Kadisha Request Nos. 21-23, 25, 26, 42, and 44, Corey Dec., Exhs. 1, 2, 3.

### B. The Requests Are Relevant To Other Phase 2 Issues

Documents responsive to Mattel's requests are also relevant to Mattel's disgorgement claim. When resolving the parties' motions related to the third-party subpoenas, the Discovery Master did not compel production of documents on the basis of disgorgement because it determined that "Mattel does not claim that the Financing Entities have 'received money that properly belonged to Mattel.'"[54] However, as discussed above and in the motion for reconsideration, the documents produced by Wachovia indicate that Omni 808 (as well as Vision Capital and Lexington) may have received monies from the MGA Parties that properly belongs to Mattel. This is especially true in light of the revelation that ▌ -- which the Discovery Master previously found was likely controlled and owned by Larian -- to fund MGA.[55]

A separate and independent basis for denying the motion to quash Mattel's subpoenas is that they will identify potentially knowledgeable witnesses and their locations. Fed. R. Civ. P. 26 ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense -- including the . . . identity and location of persons who know of any discoverable matter."). Even if Neman, Kadisha, and Mashian are not involved in a fraudulent scheme—and the facts indicate they are—they likely will be knowledgeable about MGA's debt status, which the Discovery Master has already determined to be relevant to Phase 2 issues.

## IV. THE WITNESSES' OBJECTIONS TO THE SUBPOENAS ARE WITHOUT MERIT

In light of the relevance of Mattel's subpoenas, the Neman, Kadisha, and Mashian objections are not well taken. The witnesses argue that Mattel's subpoenas are "duplicative, overbroad and abusively drawn" (Opp. at 12:8-13:28), even though the Court has repeatedly rejected similar arguments and ordered production in response to

---

[54] March 10, 2009 Discovery Master Order, at 23:11-14 (unclean hands), Corey Dec., Exh. 23. See also id, 19:8-11 (disgorgement).

comparable discovery requests.[56] "[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper--especially when a party fails to submit any evidentiary declarations supporting such objections." A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006).[57]  Here, the witnesses have made no showing of burden: they have not even provided a description of the volume of documents involved, let alone evidence of the time or expense required to respond to the subpoenas.

Nor is there any merit to the witnesses' claim that Mattel may not "burden non-parties with the expense of responding to discovery that may be obtained from parties to the litigation." (Opp., 14:10-11).  There is no requirement in the Federal Rules that discovery must be sought from a party before a non-party, or any rule allowing a non-party to refuse production if a party also has a copy of a requested document. "[N]othing in the Federal Rules of Civil Procedure requires a litigant to rely solely on discovery obtained from an adversary instead of utilizing subpoenas." State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840, at *1 (E.D.N.Y. 2007).[58]  Moreover, the witnesses have not demonstrated that any or all of

---

[55] Id. at 26-27.

[56] See Order Granting Mattel's Motion to Compel Production of Documents, dated January 25, 2007, at 11-12, Corey Dec., Exh. 19; Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 10, Corey Dec., Exh. 20; Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for Sanctions, dated June 19, 2007, at 2-4, Corey Dec., Exh. 22; Order Re Motions Heard on June 11, 2007, dated June 27, 2007, at 33-34, Corey Dec., Exh. 21.

[57] See also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990) (objections that document requests are overly broad, burdensome and oppressive are insufficient to meet objecting party's burden of explaining why discovery requests are objectionable); Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir. 1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific to demonstrate why requested discovery is objectionable); U.S. E.E.O.C. v. ABM Industries Inc., 2008 WL 5385618, at *8 (E.D. Cal. 2008) ("A bare assertion of undue burden without factual allegations does not suffice."); Residential Constructors, LLC v. Ace Property and Cas. Ins. Co., 2006 WL 3149362, at *9 (D. Nev. 2006) ("In opposing discovery on grounds of burdensomeness, the objecting party is required to demonstrate that the time and expense involved in responding to the requested discovery will, in fact, be unduly burdensome.").

[58] "[A] person may not avoid a subpoena by saying that the evidence sought from him is obtainable from another." Covey Oil Co. v. Continental Oil Co., 340 F.2d 993, 998 (footnote continued)

the documents requested are available from another party, nor is it likely that they are. Finally, in the context of this case, given the witnesses' ties to the MGA Parties, and given the MGA Parties' long history of concealing evidence and false testimony,[59] the witnesses' alleged status as non-parties should be given little or no weight.

### V. MATTEL WAS UNDER NO OBLIGATION TO MEET AND CONFER REGARDING THE SCHEDULING OF DEPOSITION DATES

The witnesses argue that the Court should quash the subpoenas because Mattel failed to meet and confer before scheduling the depositions (Opp., 15:8-16:18), but not a single case they cite so holds. In Ray v. BlueHippo Funding, LLC, 2008 WL 3399392 (N.D.Cal. August 11, 2008), the district court did not quash the subpoena, but simply scheduled it for a different date. Similarly, in Seabrook Medical Systems, Inc. v. Baxter Healthcare Corp., 164 F.R.D. 232, 233 (S.D. Ohio 1995), the court held that "[t]he deposition subpoena issued by defendant REMAINS IN FORCE and is NOT QUASHED" and merely ordered the parties to agree upon a date, as did the court in Valvida v. Kmart Corp., 2000 WL 1739215, *2 (D.V.I. 2000).[60] No authority supports prohibiting a deposition for failure to confer about its date.

In any case, Mattel did seek to meet and confer and made efforts to accommodate the witnesses. On February 6, 2009, Mattel sent a letter to Todd Gordinier and Peter Villar, counsel for Mr. Kadisha, inquiring whether counsel would

---

(10th Cir. 1965) (overruled on other grounds). State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840, at *1 (E.D.N.Y. 2007) (compelling production of documents third-party claimed were in possession of party to litigation); In re Bergeson, 112 F.R.D. 692, 695 (D. Mont. 1986) (conclusory assertions that documents sought are available from others more economically "does not constitute a showing of unreasonableness or oppressiveness."). Whether the discovery is sought from a party versus a non-party is relevant for the determination of whether the requests are unduly burdensome, but here the witnesses have made no showing of undue burden at all. See, e.g., Wertheim Schroder & Co. Inc. v. Avon Products, Inc., 1995 WL 6259, *6 (S.D.N.Y. Jan. 9, 1995) (stating that "weight should be given to nonparty status in assessing the burden of compliance" but denying non-party's motion to quash).

[59] See Reconsideration Motion at Section C.2.
[60] See also Koninklike Philips Electronics N.V. v. KXD Technology, Inc., 2007 WL 3101248, *17 (D. Nev. Oct. 16, 2007) (addressing whether to sanction a party who failed to appear at deposition; "Rule 30 does not, by its terms, require that the noticing party confer with opposing counsel before scheduling a deposition.").

agree to accept service on Mr. Kadisha's behalf.[61] On February 24, 2009, Mattel sent another letter to Todd Gordinier, asking to meet and confer further about the subpoenas.[62] On March 9, 2009, Mattel sent yet another meet and confer letter, this one to both Amman Khan, counsel for MGA, and Mr. Villar **_asking for proposed dates for the witnesses' depositions_**.[63] The witnesses' assertion that Mattel did not meet and confer in good faith to schedule the deposition dates is false. In contrast to Mattel's good faith efforts, the witnesses refused to propose alternative dates or to convincingly justify their failure to appear on the dates noticed. This sideshow, in any case, is immaterial.

### Conclusion

For the reasons set forth above, Mattel respectfully requests that the Discovery Master deny the motion in its entirety.

DATED: March 24, 2009        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Jon D. Corey
   Jon D. Corey
   Attorneys for Mattel, Inc.

---

[61] February 6, 2009 letter from Jon Corey to Todd Gordinier and Peter Villar, Corey Dec., Exh. 11.
[62] Corey Dec., Exh. 13.
[63] March 9, 2009 letter from Jon Corey to Amman Khan and Peter Villar, Corey Dec., Exh. 10.