QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>          Plaintiff,<br><br>     vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>          Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>[PUBLIC REDACTED] DECLARATION OF MICHAEL J. WAGNER SUBMITTED IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER RE SUBPOENAS ISSUED BY MATTEL, INC. TO NON-PARTIES LEON NEMAN, FRED MASHIAN, AND NEIL KADISHA<br><br>Date:   TBD<br>Time:   TBD<br>Place:  Arent Fox LLC<br><br>**Phase 2:**<br>Disc. Cut-off:      December 11, 2009<br>Pre-trial Conf.:    March 1, 2010<br>Trial Date:         March 23, 2010 |

# DECLARATION OF MICHAEL J. WAGNER

I, Michael J. Wagner, declare as follows:

1. I am a Certified Public Accountant and Attorney, licensed to practice in the State of California. I was retained by the law firm of Quinn Emanuel Urquhart Oliver & Hedges, LLP to provide opinions on damages in connection with the captioned matter and to provide rebuttal opinions to MGA's damages expert. I testified twice on these issues during the Phase 1 trial in this case that occurred this past summer in Riverside, California.

## Qualifications

2. I am a Managing Director at LitiNomics, Inc., a consulting firm providing economic and financial consulting services. I am resident in its Silicon Valley office. I have testified 110 times at trial and 29 times in alternative dispute resolution forums, most of which testimony related to analysis and quantification of economic damages. My educational background, work history, professional affiliations, testimony experience, speeches, and publications are set out in my *curriculum vitae* attached hereto at Exhibit A.

3. I rendered an opinion at the Phase 1 trial of this matter regarding the net worth of Isaac Larian and of MGA Entertainment, Inc. and its subsidiaries. I am aware of no objection by any party regarding my qualifications to do so. I have been asked to review various materials providing more recent financial information regarding MGA Entertainment, Inc. and Isaac Larian's net worth and to provide an assessment of the information that would be necessary for a reasonable financial professional to render an opinion at Phase 2 trial regarding the net worth of Isaac Larian and MGA Entertainment, Inc.

## Materials Considered

4. In connection with this declaration, members of my staff and I have reviewed the following materials:

1
2
3
4
- Documents Bates-numbered WACHOVIA 2023 through 11912;
- Mattel, Inc.'s Notice of Motion and Motion to Compel Production of Documents Responsive to Third-Party Subpoenas; and Memorandum of Points and Authorities and supporting declarations;

5
6
7
- Mattel, Inc.'s Reply in Support of Motion to Compel Production of Documents Responsive to Third-Party Subpoenas and supporting declarations;

8
9
10
- Mattel, Inc.'s Reply in Response to the MGA' Parties Opposition to Motion to Compel Production of Documents Responsive to Third-Party Subpoenas and supporting declarations;

11
12
13
- Mattel, Inc.'s Reply In Support Of Mattel, Inc.'s Motion To Compel Bingham McCutchen LLP To Produce Documents Responsive To Subpoena;

14
15
16
- Motion to Quash and/or for Protective Order re Subpoenas Issued by Mattel, Inc. to Non-Parties Leon Neman, Fred Mashian and Neil Kadisha;

17
18
19
- Subpoenas to Omni 808 Investors, OmniNet Capital, Lexington Financial, Leon Neman, Vision Capital, Fred Mashian and Neil Kadisha; and

20
- Phase II Discovery Matter Order No. 3.

## Background

[lines 22–28 redacted]

1  ███████████████████████████████████████████████████
2  ██████████████████████████████████████████████
3  ███████████████████████████████████████████████████
4     ██████████████████████████████████████████
5  █████████████████████████████████████████████████
6  ██████████████████████████████████████
7  ███████████████████████████████████████████████████
8  █████████████████████████████████████████
9  ██████████████████████████████████████████████
10    ██████████████████████████████████████████████
11 ███████████████████████████████████████████████████
12 ██████████████████████████████████████████████
13 █████████████████████████████████████████████
14 █████████████████████████████████████████████
15 ██████████████████████████████████████████████
16 ████████████████████████████

17  8.  ████████████████████████████████████████████
18 ███████████████████████████████████████████████████
19 ██████████████████████████████████████████████████
20 █████████████████████████████████████████████
21 █████████████████████████████████████████████████
22 ███████████████████████████████████████████████████
23 ████████████████████████████████████████████████
24 ██████████████████████████████████████████████████
25 █████████████████████████████████████████████████
26 █████████████████████████████████████████████████
27 ██████████████████████████████████████████████████
28

07975/2849476.2

-3-

WAGNER DECLARATION

1 ▮▮▮
2 ▮▮▮

### Discussion

9. I have been asked to address how a reasonable financial professional, such as myself, would consider the two significant long-term liabilities identified above (▮▮▮) for purposes of calculating the net worth of MGA Entertainment, Inc. and Isaac Larian. To calculate the net worth of both MGA Entertainment, Inc. and Isaac Larian, its majority shareholder, one must first determine the book value of MGA Entertainment, Inc. The book value of a company is calculated by subtracting a company's liabilities from the company's assets.

10. When calculating the book value of a claimed debt, one must determine 1) whether the reported liabilities are legitimate, meaning whether there is a reasonable possibility that the company will, in fact, be required to pay those liabilities in full at some time in the future and 2) whether the liabilities should properly be characterized as debt or equity.

11. If a likely possibility exists that the liability will not have to be repaid, then a reasonable financial professional would not take that liability or liabilities into account in their entirety to determine book value. If, in fact, all or any portion of the alleged ▮▮▮ is owed to Isaac Larian or to any person affiliated with or related to Isaac Larian, then additional analysis is required. A reasonable financial professional would inquire into whether the ostensible creditor may not require payment or may forgive all or a portion of the debt, or may have promised to forgive all or a portion of the debt

12. Second, if Isaac Larian, as a shareholder, is in fact a creditor owed all or part of any debt, then one must determine whether the debt should be treated as debt or instead as a capital contribution. A reasonable financial professional would consider whether loans by shareholders to a company, particularly if the company is

1  undercapitalized, should be characterized as capital contributions, not as loans to the
2  company. If money provided by a shareholder to a company is properly
3  characterized as a contribution to capital, rather than a loan, then the value of the
4  capital contribution is not subtracted from assets to determine net worth.
5       13.    In my expert opinion, there are indications that the purchase of the debt
6  from Wachovia was not an arms-length transaction. These include:

- [REDACTED]

- that all or a portion of the source of funds for the claimed Omni 808 Investors, LLC purchase of the Wachovia debt allegedly came from Vision Capital [UCC Financing Statement dated August 29, 2008 (Exhibit F)];

- that Leon Neman, an Isaac Larian relative, who also has served as an MGA director, is a principal of Vision Capital [Motion to Quash and/or for Protective Order re Subpoenas Issued by Mattel, Inc. to Non-Parties Leon Neman, Fred Mashian and Neil Kadisha at 2:16 (Exhibit G)];

- that all or a portion of the source of funds for the Omni 808 Investors, LLC allegedly came to Vision Capital from an offshore entity known as Lexington Financial Limited, registered in the Caribbean nation of Nevis [UCC Financing Statement dated August 29, 2008 (Exhibit F); Letter from Registrar Clevelan Williams, Registrar of Nevis Financial Services Department to Austin Lescott, dated December 12, 2008 (Exhibit H)];

|   |   |
|---|---|
| 1 | • that a known associate of Leon Neman, Fred Mashian, has ties to Vision Capital and Lexington Financial [UCC Financing Statement dated August 29, 2008; Motion to Quash and/or for Protective Order re Subpoenas Issued by Mattel, Inc. to Non-Parties Leon Neman, Fred Mashian and Neil Kadisha at 2:18-20 (Exhibit G)]; and |

- ████████████████████████████████████████████

  [WACHOVIA 2755 (Exhibit H)].

True and correct copies of the referenced documents are attached as Exhibits E through H.

14. To determine whether the debt is legitimate and fully payable and should be taken into account for a book value analysis, a reasonable financial professional would need access to and to consider, among other things, the following types of information:

- the ultimate source of funds for the Omni 808 Investors' alleged purchase of the Wachovia debt;
- the ultimate owners of the claimed debt;
- any agreements and/or understandings between MGA Entertainment, Isaac Larian or any company or persons owned by, controlled by or affiliated with them, on the one hand, and Omni 808 Investors, its ultimate owners, and the person or person who sourced the funds on the other hand;
- the terms of any prior loans made by shareholders to the company and the performance of those terms, such as whether and under what conditions the company repaid those loans;
- whether any steps were taken to ensure that the terms of the loans were truly negotiated at arms-length;

- whether the terms of any such transaction was approved by a majority of disinterested owners of the company;
- whether the company obtained any opinion that such a transaction was fair to the company, taking into account the financial condition of the company and market conditions;
- whether Omni 808 Investors, Vision Capital, Lexington Financial, IGWT 826 Investors, LLC and IGWT Group, LLC are owned or controlled, directly or indirectly, by MGA Entertainment, Isaac Larian or persons affiliated with or related to Isaac Larian;
- whether Omni 808 undertook any due diligence or other investigation into MGA's or Larian's finances, or the Wachovia debt;
- whether Vision Capital or Lexington Financial undertook any due diligence or investigated MGA's, Larian's, or Omni 808's finances or the Wachovia debt;
- whether Vision Capital or Lexington Financial have legitimate businesses or operations separate and apart from their role in the Omni 808/Wachovia transaction;
- who owns or controls, directly or indirectly, Vision Capital or Lexington Financial;
- any other transactions, understandings, agreements or arrangements between Vision Capital or Lexington Financial and their principals or affiliates, on the one hand, and MGA Entertainment, Inc., Isaac Larian or those affiliated with or related to them, on the other hand; and
- the course of conduct regarding the alleged debt, including the history of payment or non-payment among and between MGA, Larian, Omni 808, Vision Capital, Lexington Financial, IGWT Group and IGWT 826 Investors.

15. Based on my review of MGA Entertainment, Inc.'s historical financial statements, the legitimacy or illegitimacy of the debt to Wachovia/Omni 808 Investors and to shareholders (allegedly in excess of $360 million dollars), is a material amount that a reasonable financial professional would consider to determine accurately the book value of MGA Entertainment, Inc. for purposes of assessing net worth.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 24, 2009 at Mountain View, California.

*[signature]*

Michael J. Wagner