EXHIBIT 21

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ____ ✓ Send _____
Entered ____ ✓ Closed _____
JS-5/JS-6 ____  JS-2/JS-3 ____
Scan Only____  Docketed on CM ____
    THIS CONSTITUTES NOTICE OF
    ENTRY AS REQUIRED BY FRCP 77(d)

        JUN 2 7 2007

EASTERN DIVISION
BY            DEPUTY

FILED - EASTERN DIVISION
CLERK, U.S. DISTRICT COURT

JUN 2 7 2007

CENTRAL DISTRICT OF CALIFORNIA
BY   JIM HOLMES        DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, | CASE NO. CV 04-09049 SGL |
| Plaintiff, | CONSOLIDATED WITH |
| v. | CV 04-09059 SGL |
| | CV 05-02727 SGL |
| MATTEL, INC., | ORDER RE MOTIONS HEARD ON |
| Defendant, | JUNE 11, 2007 |
| | |
| AND CONSOLIDATED ACTIONS | |

Presently before the Court is a multitude of motions filed by a number of parties in these consolidated cases. The factual allegations underlying the present actions are expansive and complex. They are set forth below only to the extent necessary for the Court's consideration of the present motions. At their essence, although involving a number of other legal and factual issues, these cases involve the rights to certain fashion dolls.

The present motions, six in total, focus on four basic issues: Two of the motions, filed by certain counter-defendants, address the sufficiency of the allegations made by Mattel, Inc. ("Mattel") in its counterclaims; most notably, these motions challenge the sufficiency of the allegations which underlie Mattel's claims based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.

Docket No. 577

EXHIBIT ___21___

PAGE ___229___

06/27/07

RightFAX          6/5  2007 3:04    PAGE 003/037    ax Server

1  §§ 1961-1968 ("RICO"). Another motion challenges the Court's exercise of

2  personal jurisdiction over a foreign corporation, MGAE de México, S.R.L. de C.V.

3  ("MGA Mexico"). Two additional motions seek review of a ruling, issued by a court-

4  appointed discovery master, overruling objections made during a party's deposition

5  that were based on the attorney-client and joint-defense privileges. A final motion

6  heard on June 11, 2007, addresses the Court's scheduling order that divided the

7  issues to be tried in these consolidated cases into two phases. This last motion will

8  be addressed in a separate order.

9       The Court has reviewed the parties' filings regarding these motions and held

10  a hearing on June 11, 2007. For the reasons and in the manner set forth more fully

11  herein, the Court makes the following rulings regarding these motions:

12       1.    Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian

13  ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189):[1]

14  **GRANTED IN PART AND DENIED IN PART.**

15       2.    Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and

16  XI (docket # 191): **GRANTED IN PART AND DENIED IN PART.**

17       3.    Motion of MGA Mexico to Dismiss Mattel's Amended Answer and

18  Counterclaims (docket # 266): **DENIED.**

19       4.    Motion of MGA Objecting to Discovery Master's March 7, 2007, Order

20  (docket # 308): **GRANTED IN PART AND DENIED IN PART.**

21       5.    Motion of Carter Bryant Objecting to Discovery Master's March 7,

22  2007, Order (docket # 306): **GRANTED IN PART AND DENIED IN PART.**

23

24

25

26

27

28
_____
[1] Joining in this Motion were MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Carter Bryant ("Bryant"), and MGA Mexico.

EXHIBIT _____ 21 _____

PAGE _____ 230

## I. Factual Allegations

The following allegations appear in the Amended Answer and Counterclaims ("AAC"):

### A.   Bryant's Employment by Mattel

Carter Bryant was hired by Mattel as a Barbie product designer in January 1999. (AAC ¶ 21.) At that time, Bryant signed an "Employee Confidential Information and Inventions Agreement," wherein he agreed not to assist or work for a Mattel competitor while employed by Mattel and that the designs and inventions he created while employed by Mattel were Mattel property. (AAC ¶¶ 22-23.) Bryant also executed a "Conflict of Interest Questionnaire" wherein he certified that, other than as disclosed, he had not worked for a Mattel competitor in the past year, had not engaged in a business transaction with a Mattel competitor that could create a conflict of interest, and that he would inform Mattel immediately if such an event occurred. (AAC ¶¶ 24-25.) While still employed by Mattel, Bryant used Mattel property and resources to develop and design the Bratz concept. (AAC ¶ 26.) Bryant also allegedly enlisted other Mattel employees to perform work on the Bratz line, in some cases, falsely informing those employees that they were working on a Mattel project. (AAC ¶ 27.)

### B.   MGA's Involvement in Bryant's Conduct

MGA knew of and encouraged Bryant's misappropriation of Mattel property and resources. (AAC ¶ 33). Bryant made affirmative misrepresentations to Mattel, including that he was leaving Mattel for "non-competitive" pursuits. (AAC ¶ 28.) Bryant and MGA concealed from Mattel that Bryant developed Bratz while employed by Mattel, that Bryant worked with MGA during the time he was employed by Mattel, and that Larian and others, not Bryant, were the creators of Bratz. (AAC ¶ 35.) Prior to his departure from MGA, Bryant entered into a contract with MGA to provide design services to MGA on a "top priority" basis. (AAC ¶ 36.) Bryant left Mattel's employ on October 20, 2000; three weeks later, MGA

EXHIBIT   2/   3

PAGE   231

showed the Bratz prototypes to focus groups and retailers. (AAC ¶ 29.) Soon thereafter, MGA showed the Bratz line to retailers at the Hong Kong Toy Fair in January, 2001, and then began manufacturing and selling the dolls to retailers for an annual revenue in the excess of $500 million. (AAC ¶¶ 31-32.)

## C.    **Proprietary Information**

### 1.    **Mexico**

Counter-defendant Carlos Gustavo Machado Gomez ("Machado"), nonparty Mariana Trueba Almada ("Trueba"), and nonparty Pablo Vargas San Jose ("Vargas") were upper-level employees at Mattel Mexico. (AAC ¶¶ 38-40.) In the three months before all three simultaneously resigned from Mattel Mexico on April 19, 2004, they were in contact with MGA via an email account with the address "plot04@aol.com". (AAC ¶ 42.) The three former employees allegedly used this account to supply MGA with confidential and proprietary Mattel information. (AAC ¶ 42.) The three also copied various proprietary Mattel documents onto USB flash drives prior to resigning. (AAC ¶ 44-46.) Shortly before her departure, Trueba increased her access to Mattel's confidential information and attended a meeting at which Mattel personnel analyzed Barbie programs for the United States, Canada, and South America. (AAC ¶ 47.)

Among them, Machado, Trueba, and Vargas stole documents containing information regarding Mattel's future products, production and shipping costs, sales information, customer information, marketing information, and strategic research information both in Mexico and worldwide. (AAC ¶ 48.) The stolen data was not limited to the Mexican market; rather, the information stolen had the potential, and in fact did, give MGA an unfair competitive advantage in the United States and around the world. (AAC ¶ 49.)

In an attempt to conceal his actions, Machado ran a software program on his Mattel computer in order to erase information pertaining to his contact with MGA. (AAC ¶ 51.) When Mattel alerted Mexican authorities about the theft, they seized

EXHIBIT _21_   4

PAGE _232_

1   from MGA's Mexico City offices, pursuant to a search warrant, a large number of

2   documents containing Mattel trade secrets and confidential information. (AAC

3   ¶ 53.)

4            Shortly after the theft, Machado, Trueba, and Vargas traveled to Los

5   Angeles to meet face-to-face with MGA personnel. (AAC ¶ 52.)

6       **2.    Canada**

7            Jane Brisbois was the Director of Sales for the Girls Division in Canada.

8   (AAC ¶ 71.) When she was hired in 1999, she agreed to preserve and not disclose

9   Mattel's proprietary information. (AAC ¶ 71.)  While still employed by Mattel,

10  Brisbois spoke with Larian on September 22, 2005. (AAC ¶ 74.)  That same day,

11  Brisbois copied approximately 45 Mattel documents containing Mattel trade secret

12  information into a USB flash drive that she took from the Mattel Canada office.

13  (AAC ¶ 74.)  The files taken by Brisbois included documents regarding Mattel sales,

14  advertising strategies, market analyses, product launch dates, and profit margins in

15  Canada, Mexico, and the United States. (AAC ¶ 74.)  Four days later, she resigned

16  from Mattel. (AAC ¶ 74.)

17           When Mattel learned of Brisbois' misappropriation of Mattel documents, it

18  notified Canadian law enforcement officials, who were able to recover the flash

19  drive and the documents from Brisbois. (AAC ¶ 75.)

20      **3.    United States**

21           Ron Brawer was Mattel's Senior Vice President and General Manager.

22  (AAC ¶ 55.)  On September 17, 2004, Brawer informed Mattel that he was leaving

23  Mattel to work for MGA. (AAC ¶ 63.)  During Brawer's exit interview, he falsely

24  represented that he had returned all proprietary information to Mattel; specifically,

25  Brawer took the information in his contacts file which included contact information

26  for Mattel customers and Mattel employees. (AAC ¶ 68.)  Brawer has since used

27  the contact information to induce certain Mattel employees to join MGA and

28  misappropriate Mattel trade secrets. (AAC ¶ 69.)

EXHIBIT _2/_   5

PAGE _233_

1   MGA has also allegedly hired at least 25 other Mattel employees, some of
2   whom have provided MGA with Mattel's confidential information. (AAC ¶ 77.)

3   **D.   Larian's Communications Regarding Mattel's New Product Line**
4       On May 12, 2006, Larian sent an email message to an email distribution list
5   that included a reference to a new Mattel Barbie line ("MY SCENE MY BLING
6   BLING") which Mattel had not yet made public. (AAC ¶ 79.) The distribution of the
7   email included members of the media and many of Mattel's most significant
8   customers. (AAC ¶ 78.) Soon after sending the email, Larian began calling these
9   significant customers and making false representations about the product;
10  specifically, Larian told each that it was the only retailer to purchase the product
11  and that Mattel would not be supporting the product with television advertising.
12  (AAC ¶ 80.)

13  **E.   Exhibit C**
14      In Exhibit C to the AAC, Mattel references a number of communications,
15  numbering well over one hundred, that it contends constitutes predicate acts of mail
16  fraud or wire fraud. Exhibit C does not describe the contents of those
17  communications.

**II. Counterclaims Asserted**

18
19      Based on these allegations, Mattel asserts the following counterclaims:
20  (1) Copyright Infringement, including willful, vicarious, and contributory
21  infringement, asserted against MGA, MGA Hong Kong, Larian and Bryant;
22  (2) violation of RICO's substantive prohibition, 18 U.S.C. § 1962(c), asserted as
23  authorized by 18 U.S.C. § 1964(c) against all defendants, which alleges predicate
24  acts of, *inter alia*, mail fraud, wire fraud, and criminal copyright infringement; (3) a
25  violation of RICO's prohibition against conspiracies, 18 U.S.C. § 1962(d), asserted
26  against all defendants; (4) state-law misappropriation of trade secrets against MGA,
27  MGA Mexico, Larian, and Machado; (5) breach of contract, asserted against Bryant
28  only and based on certain employment agreements between Bryant and Mattel;

EXHIBIT  21   6
PAGE  234

1  (6) intentional interference with contract, asserted against MGA and Larian and

2  based on Bryant's employment agreements; (7) breach of fiduciary duty, asserted

3  against Bryant and Machado; (8) aiding and abetting breach of fiduciary duty,

4  asserted against MGA and Larian; (9) breach of the duty of loyalty, asserted

5  against Bryant and Machado; (10) aiding and abetting breach of the duty of loyalty,

6  asserted against MGA and Larian; (11) conversion, asserted against all counter-

7  defendants; (12) violation of California's unfair competition law, Cal. Bus. & Prof.

8  Code § 17200, asserted against all counter-defendants; and finally, (13) a claim for

9  declaratory relief.

10  **III. Counter-Defendants' Motions to Dismiss for Failure to State a Claim**

11      The parties have moved to dismiss a number of Mattel's counterclaims on

12  various grounds.  The Court addresses each claim in turn, considering at all times

13  the standard for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

14  **A.   Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

15      In lieu of an answer, a party may, as the counter-defendants have here, file a

16  motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which provides that such a

17  motion may be made where the pleader has "fail[ed] to state a claim upon which

18  relief can be granted."  Id.  In deciding a Rule 12(b)(6) motion, the Court must also

19  consider the requirements of Fed. R. Civ. P. 8(a), which requires only a "short and

20  plain statement of the claim showing that the pleader is entitled to relief" or, when

21  the claim at issue avers fraud or mistake, the motion must be considered in

22  conformity with Fed. R. Civ. P. 9(b), which requires fraud and mistake to be pleaded

23  with particularity.  See 5A Charles A. Wright & Arthur Miller, Federal Practice and

24  Procedure, §1356 (1990); James Wm. Moore, Moore's Federal Practice, Vol. 2

25  § 12.34[1][c].

26      In bringing a motion pursuant to Rule 12(b)(6), the moving party has the

27  burden of persuading the Court that the complaint has failed to state a claim upon

28  which relief can be granted.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406,

EXHIBIT  21

PAGE  235

1409 (3d Cir.), cert. denied, 501 U.S. 1222 (1991). In considering the motion,

"courts must consider the complaint in its entirety," and read it in the light most

favorable to the plaintiff, accepting as true all factual allegations in the complaint, as

well as reasonable inferences to be drawn therefrom. Tellabs, Inc. v. Makor Issues

& Rights, Ltd., __ U.S. __, No. 06-484, 2007 WL 1773208, at *9 (June 21, 2007);

Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). However, the Court need not

accept any unwarranted deductions of fact, or conclusory legal statements cast in

the form of factual allegations. See Western Mining Council v. Watt, 643 F.2d 618,

624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).

Generally, a court cannot consider evidence in deciding a Rule 12(b)(6)

motion; however, a court may consider exhibits attached to the complaint as well as

documents that are not physically attached to the complaint but "whose contents

are alleged in [the] complaint and whose authenticity no party questions." Branch v.

Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), cert. denied, 512 U.S. 1219 (1994).

Facts of which a court may take judicial notice pursuant to Fed. R. Evid. 201 are

also properly considered. Mir v. Little Company of Mary Hospital, 844 F.2d 646,

649 (9th Cir. 1988).

**B.    RICO Claims**

The counter-defendants devote most of their motions to the sufficiency of the

allegations regarding Mattel's RICO claims. The Court's analysis begins, as it must

when considering a federal statute, with the language of that statute. The

substantive RICO prohibition at issue is found in 18 U.S.C. § 1962(c):

> It shall be unlawful for any person employed by or associated
>
> with any enterprise engaged in, or the activities of which affect,
>
> interstate or foreign commerce, to conduct or participate, directly or
>
> indirectly, in the conduct of such enterprise's affairs through a pattern
>
> of racketeering activity or collection of unlawful debt.

Id. Conspiracies to violate this substantive prohibition are themselves prohibited by

EXHIBIT  21  8

PAGE  236

1  § 1962(d), which states that "[i]t shall be unlawful for any person to conspire to

2  violate any of the provisions of subsection (a), (b), or (c) of this section." Id. Many

3  of these terms are defined by the statutory language, including "racketeering

4  activity," "enterprise," and "pattern of racketeering activity":

5      (1) "racketeering activity" means . . . (B) any act which is

6  indictable under any of the following provisions of title 18, United

7  States Code: . . . section 1341 (relating to mail fraud), section 1343

8  (relating to wire fraud), . . . section 1512 (relating to tampering with a

9  witness, victim, or an informant), . . . section 1952 (relating to

10  [interstate and foreign travel or transportation in aid of racketeering

11  enterprises]), [and] section 2319 (relating to criminal infringement of a

12  copyright)[.]

13      . . . .

14      (4) "enterprise" includes any individual, partnership,

15  corporation, association, or other legal entity, and any union or group

16  of individuals associated in fact although not a legal entity;

17      (5) "pattern of racketeering activity" requires at least two acts of

18  racketeering activity, one of which occurred after the effective date of

19  this chapter and the last of which occurred within ten years (excluding

20  any period of imprisonment) after the commission of a prior act of

21  racketeering activity[.]

22  18 U.S.C. § 1961.

23      In considering a Rule 12(b)(6) motion seeking to dismiss a RICO claim, the

24  Court measures the sufficiency of alleged predicate acts of wire fraud and mail

25  fraud by the Rule 9(b) "pleading-with-particularity" standard; however, the Court

26  measures the sufficiency of all other predicate acts by the more lenient standard set

27  forth in Rule 8(a). Compare Fed. R. Civ. P. 9(b) ("In all averments of fraud or

28  mistake, the circumstances constituting fraud or mistake shall be stated with

EXHIBIT __21__ 9

PAGE __237__

1  particularity. Malice, intent, knowledge, and other condition of mind of a person

2  may be averred generally.") with Fed. R. Civ. P. 8(a) ("A pleading which sets forth a

3  claim for relief, . . . shall contain . . . (2) a short and plain statement of the claim

4  showing that the pleader is entitled to relief . . . ."); see Lancaster Community Hosp.

5  v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991) (applying Rule

6  9(b) standard to allegations of mail fraud and noting that "[t]he Ninth Circuit has

7  repeatedly insisted that [Rule 9(b)] be followed in RICO actions alleging the

8  predicate act of mail fraud."), cert. denied, 502 U.S. 1094 (1992).

9        In order to state its claim under § 1962(c), Mattel "must allege (1) conduct

10  (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing

11  injury to [its] business or property."  Ove v. Gwinn,  264 F.3d 817, 825 (9th Cir.

12  2001) (internal quotation marks and citation omitted).  Here, counter-defendants'

13  motions challenge the first, second, fourth, and fifth elements.

14      1.    **"Conduct or Participate"**

15        Bryant contends that his role in any alleged scheme or enterprise is too

16  tenuous to constitute the "conduct" necessary to impose RICO liability.  In order to

17  have RICO liability imposed upon him, a defendant must "conduct or participate,

18  directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of

19  racketeering activity . . . ." 18 U.S.C. § 1962(c).  The United States Supreme Court

20  has elaborated on this statutory language in Reves v. Ernst & Young, 507 U.S. 170,

21  179 (1993), wherein it noted:

22      [T]he word "participate" makes clear that RICO liability is not limited to

23      those with primary responsibility for the enterprise's affairs, just as the

24      phrase "directly or indirectly" makes clear that RICO liability is not

25      limited to those with a formal position in the enterprise, but some part

26      in directing the enterprise's affairs is required.

27  Id. Here, Mattel has alleged that Bryant secretly developed Bratz while employed

28  by Mattel and using Mattel's resources and employees, that he concealed that fact

EXHIBIT __21__   10

PAGE __238__

1   when he had a duty to disclose it, and that he did these things in order to facilitate

2   the development of the Bratz concept by Mattel's direct competitor, in violation of,

3   *inter alia*, criminal copyright law.  These allegations, if proven to be true, are

4   sufficient to impose RICO liability on Bryant.

5        **2.   Enterprise**

6        Bryant's motion challenges the sufficiency of the allegations regarding a

7   RICO enterprise.  That enterprise is alleged to be an "association-in-fact" enterprise

8   comprised of the counter-defendants, Brawer, Trueba, Vargas, Brisbois, and

9   others. (AAC ¶ 89.)  Mattel alleges that counter-defendants participated in or

10  conducted the affairs of the association-in-fact enterprise through a pattern of

11  racketeering activities, including, as detailed in the AAC, predicate acts of mail

12  fraud, wire fraud, evidence tampering, interstate and foreign travel to aid

13  racketeering activities, and criminal copyright infringement. (AAC ¶ 90.)  The

14  counter-defendants' goal is alleged to have been to "execut[e] or attempt to

15  execut[e] [a] scheme to improperly defraud Mattel and steal its trade secret or

16  otherwise confidential and proprietary information . . . ." (AAC ¶ 90.)

17       A recent *en banc* decision of the Ninth Circuit sets forth a comprehensive

18  analysis of the sufficiency of allegations regarding a RICO enterprise necessary to

19  state a claim.  See Odom v. Microsoft Corp., 486 F.3d 541, 2007 WL 1297249 (9th

20  Cir. 2007) (designated for publication).  That decision provides the blueprint for the

21  Court's present analysis.

22       Odom involved an alleged scheme involving consumers who purchased

23  computers from Best Buy retail stores.  Id. at 543.  The computers would include a

24  Microsoft compact disc that the cashier would scan; the consumer's credit card was

25  also scanned for purchase.  Id.  The credit card information was transmitted to

26  Microsoft, and Microsoft would, at some point, begin making unauthorized charges

27  to the credit card used to purchase the computer, ostensibly for Microsoft's

28  provision of internet services.  Id.  Odom brought substantive RICO and RICO

EXHIBIT __21__  11

PAGE __239__

1  conspiracy claims based on these allegations. Id. at 544.

2      The Ninth Circuit first noted the evidenced judicial resistance to RICO in the

3  lower courts, contrasted with the Supreme Court's four reversals of such narrow

4  readings of RICO. Id. at 545-47 (citing United States v. Turkette, 452 U.S. 576

5  (1981) (rejecting notion that RICO prohibited only the infiltration of legitimate

6  businesses by organized crime); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 481

7  (1985) (rejecting notion that RICO could be used to impose civil liability only where

8  the defendant had been criminally convicted and that such liability was limited to a

9  narrow measure of damages); National Organization for Women v. Scheidler, 510

10  U.S. 249 (1994) (rejecting the notion that RICO liability could be imposed only when

11  the acts of a RICO enterprise had an economic motive); and Cedric Kushner

12  Promotions v. King, 533 U.S. 158 (2001) (reversing lower court's ruling that no

13  RICO claim was stated where president and sole shareholder of a corporation was

14  alleged to have associated with his wholly owned corporation as a RICO

15  "enterprise," and relying on fact that person and corporation were separate legal

16  entities). In Odom, the Ninth Circuit understandably viewed these four holdings as

17  a "general instruction that we should not read the statutory terms of RICO

18  narrowly." Odom, 486 F.3d at 547 (internal citation omitted).

19      In Odom, the Ninth Circuit clarified -- and relaxed -- the standard for pleading

20  and proving an "associated-in-fact" enterprise such as the one alleged here:

21          The definition of "enterprise" In the text of RICO is fairly

22      straightforward. In its entirety, the definition is as follows: "'enterprise'

23      includes any individual, partnership, corporation, association, or other

24      legal entity, and any union or group of individuals associated in fact

25      although not a legal entity." 18 U.S.C. § 1961(4). As is evident from

26      the text, this definition is not very demanding. A single "individual" is

27      an enterprise under RICO. Similarly, a single "partnership," a single

28      "corporation," a single "association," and a single "other legal entity"

EXHIBIT _21_   12

PAGE _240_

1   are all enterprises.  At issue in this case is the last kind of enterprise

2   listed in the definition -- a "group of individuals associated in fact."  It is

3   undisputed that a corporation can be an "individual" for purposes of

4   an associated-in-fact enterprise.

5   Id. at 548.

6       The Ninth Circuit acknowledged that "enterprise" must be something greater

7   than merely a pattern of racketeering activity; however, the court rejected the notion

8   that an enterprise must have a particular ascertainable organizational structure.  Id.

9   at 551 ("We take this opportunity to join the circuits that hold that an

10  associated-in-fact enterprise under RICO does not require any particular

11  organizational structure, separate or otherwise.") (citations omitted).  A party need

12  only set forth factual allegations of "a group of persons associated together for a

13  common purpose of engaging in a course of conduct," "evidence of an ongoing

14  organization, formal or informal," and "evidence that the various associates function

15  as a continuing unit."  Id. at 552 (internal citations and quotation marks omitted).

16      As for the common purpose, it was met in Odom, where the plaintiff had

17  alleged the following:

18          [D]efendants had the common purpose of increasing the

19          number of people using Microsoft's Internet Service, and doing so by

20          fraudulent means.  Best Buy furthered this common purpose by

21          distributing Microsoft Internet Trial CD's and conveying its customers'

22          debit and credit card information to Microsoft.  Microsoft then used the

23          information to activate customer accounts.

24  Id.  Here, Mattel has alleged the common purpose of attempting to defraud Mattel

25  and steal its trade secrets.  Mattel's many factual allegations, detailed herein,

26  support this alleged common purpose.

27      As for the "ongoing organization" requirement, the Ninth Circuit in Odom

28  noted that the plaintiffs had met that element, which was met where the

EXHIBIT __2/__  13

PAGE __241__

1   organization was alleged to be "a vehicle for the commission of two or more

2   predicate crimes." Id. (internal quotation marks and citation omitted).  The Ninth

3   Circuit noted the following factual allegations:

4           Microsoft and Best Buy established mechanisms for

5       transferring plaintiffs' personal and financial information from Best Buy

6       to Microsoft. That information then allowed Microsoft to activate

7       plaintiffs' Internet accounts without their knowledge or permission.

8       These mechanisms enabled Microsoft to bill plaintiffs improperly for

9       MSN services in 2001, 2002 and 2003.

10  Id. Here, plaintiffs have alleged that the counter-defendants coordinated their many

11  efforts at depriving Mattel of its proprietary information and its intellectual property.

12  The allegations regarding common use of the "plot04@aol.com" email address to

13  transfer confidential Mattel information to MGA support the finding of an "ongoing

14  organization."  So, too, do the allegations regarding the repeated communications

15  between Bryant and MGA.

16      The "continuing unit" requirement does not appear to the Court to mandate

17  that the organization continues to this day;[2] rather, the requirement is related to the

18  notion that RICO was not meant to address discrete instances of fraud or criminal

19  conduct.  "[T]he continuity requirement focuses on whether the associates'

20  behavior was 'ongoing' rather than isolated activity." Id. at 553 (internal quotation

21  marks and citation omitted).  Related to that concern, it is also clear to the Court

22  that this requirement is related to the duration of the racketeering activities. See id.

23  ("An almost two-year time span is far more than adequate to establish that Best

24  Buy and Microsoft functioned as a continuing unit.").  Here, the allegations do not

25  reveal that the conduct complained of was mere isolated activity; rather, Mattel sets

26  forth allegations of racketeering activity that spanned a period of three years.  The

27  _____

28       [2] Nevertheless, Mattel alleges that the enterprise exists to this day by virtue
    of its continued use of Mattel's information and property.

EXHIBIT ___21___   14

PAGE ___242___

1   allegations describe a scheme consisting of corporate warfare between competitors

2   that has been waged over a long period of time and waged on a number of fronts,

3   both foreign and domestic. The "continuing unit" requirement is therefore satisfied.

4          Accordingly, the Court finds that Mattel has sufficiently pleaded the existence

5   of a RICO enterprise.

6       **3.     Predicate Acts of Racketeering Activity**

7              **a.     Mail Fraud and Wire Fraud**

8       The criminal prohibition against mail fraud is found at 18 U.S.C. § 1341:

9              Whoever, having devised or intending to devise any scheme or

10      artifice to defraud, . . . for the purpose of executing such scheme or

11      artifice or attempting so to do, places in any post office or authorized

12      depository for mail matter, any matter or thing whatever to be sent or

13      delivered by the Postal Service, or deposits or causes to be deposited

14      any matter or thing whatever to be sent or delivered by any private or

15      commercial interstate carrier, or takes or receives therefrom, any such

16      matter or thing, . . . shall be fined under this title or imprisoned not

17      more than 20 years, or both.

18   Id. The Ninth Circuit has described the elements of mail fraud as "(1) proof of a

19   scheme to defraud; (2) using or causing the use of the mails to further the

20   fraudulent scheme; and (3) specific intent to defraud." United States v. Rogers, 321

21   F.3d 1226, 1229 (9th Cir. 2003) (internal citation omitted).

22      The criminal prohibition against wire fraud is similar:

23             Whoever, having devised or intending to devise any scheme or

24      artifice to defraud, . . . transmits or causes to be transmitted by means

25      of wire, radio, or television communication in interstate or foreign

26      commerce, any writings, signs, signals, pictures, or sounds for the

27      purpose of executing such scheme or artifice, shall be fined under this

28      title or imprisoned not more than 20 years, or both.

EXHIBIT    21      16

PAGE    243

1  18 U.S.C. § 1343. The Ninth Circuit has described the elements of wire fraud as
2  "(1) a scheme to defraud; (2) use of the wires in furtherance of the scheme; and
3  (3) a specific intent to deceive or defraud." United States v. Shipsey, 363 F.3d 962,
4  971 (9th Cir. 2004) (citations omitted).
5      As all parties acknowledge, the predicate acts of mail fraud and wire fraud
6  must be pleaded with particularity pursuant to Fed. R. Civ. P. 9(b). Specifically,
7  Mattel must detail "the time, place, and manner of each act of fraud, [and it must
8  set forth] the role of each defendant in each scheme." Lancaster Community
9  Hosp., 940 F.2d at 405. This standard applies in RICO actions alleging predicate
10  acts of mail fraud. Id.
11      Here, Mattel sets forth allegations of predicate acts of mail fraud and wire
12  fraud referenced in Exhibit C to the AAC. However, these alleged predicate acts
13  are insufficiently pleaded because they fail to adequately describe the contents of
14  the communications; specifically, they fail to detail time, place and manner of "each
15  act of fraud." The substantive RICO claim is therefore dismissed to the extent it is
16  premised on those communications. Mattel is **GRANTED** leave to amend the RICO
17  claim based on this insufficiency; Mattel must attach to the Second Amended
18  Answer and Counterclaims ("SAAC") copies of the referenced communications.
19  The contents of packages referenced in Exhibit C must be described in order to
20  meet the Rule 9(b) requirements.
21      At oral argument, counsel for MGA argued that the substance of many, if not
22  all of the communications, cannot be read to further a scheme to defraud. That
23  argument will be considered another day, after Mattel files the SAAC. However, the
24  Court takes the opportunity today to note that, given the broad scope of the alleged
25  scheme to defraud, including the criminal copyright infringement allegations,
26  otherwise innocuous and routine communications regarding day-to-day operations
27  and product development may be found to be in furtherance of that scheme. See
28  Tellabs, Inc. v. Makor Issues & Rights, Ltd., ___ U.S. ___, No. 06-484, 2007 WL

                            21          16

1773208, at *9 (June 21, 2007) (noting that, in considering a Rule 12(b)(6) motion, "courts must consider the complaint in its entirety").

Counter-defendants also argue that Mattel failed to plead each defendant's role in furtherance of the scheme to defraud. As interpreted by the Ninth Circuit, the Rule 9(b) standard clearly requires that a plaintiff so plead. Lancaster Community Hosp., 940 F.2d at 405. However, the Court will view the communications alleged to constitute mail and wire fraud in conjunction with all the allegations set forth regarding the alleged scheme in the counterclaims. See Flood v. Makowski, No. 3:CV-03-1803, 2004 WL 1908221, at *14 (M.D. Pa., Aug. 24, 2004) (applying the principle that reasonable inferences in favor of a plaintiff must be made when considering a Rule 12(b)(6) motion and noting that "[a]lthough Plaintiffs' Complaint does not expressly identify how each particular mail or wire communication furthered the scheme, the Complaint clearly alleges facts which create an unquestionable inference that the alleged communications furthered the scheme.").

Counter-defendants also argue that, because the emails alleged to constitute wire fraud were sent among individuals physically located in the same state, Mattel will not be able to establish the interstate nature of the communications. See 18 U.S.C. § 1343 (setting forth the requirement that communications be transmitted "in interstate or foreign commerce"). Mattel has alleged that the communications were transmitted in interstate or foreign commerce. (AAC ¶ 93(b).) This suffices at the pleadings stage; however, eventually Mattel will be called upon to support these allegations with evidence. See First Pacific Bancorp, Inc. v. Bro, 847 F.2d 542, 547 (9th Cir. 1988) (implicitly holding that wire fraud must be supported, at the summary judgment stage, by evidence of interstate wire fraud).

The Court dismisses the RICO claim to the extent it is based on the alleged predicate acts of mail fraud and wire fraud because those acts are not pleaded with

EXHIBIT 21
PAGE 245
17

1    particularity as required by Rule 9(b).  Mattel is **GRANTED** ten days' leave to file a

2    SAAC that incorporates and attaches and/or describes the communications and the

3    contents of packages referenced in Exhibit C.

4              b.    <u>**Evidence Tampering**</u>

5              Unlike the mail fraud and wire fraud allegations, the allegations regarding the

6    remaining predicate acts are governed by the more lenient pleading standards of

7    Rule 8(a).  <u>See</u> <u>Slade v. Gates</u>, No. 01-8244-RMT, 2002 WL 31387263, at *6 (C.D.

8    Cal., Oct. 11, 2002).  The Court considers the sufficiency of those remaining

9    allegations pursuant to this Rule.

10             The criminal prohibition against tampering with evidence is found at 18

11   U.S.C. § 1512:

12                   Whoever corruptly . . . alters, destroys, mutilates, or conceals a

13             record, document, or other object, or attempts to do so, with the intent

14             to impair the object's integrity or availability for use in an official

15             proceeding . . . shall be fined under this title or imprisoned not more

16             than 20 years, or both.

17   <u>Id.</u>  Mattel's opposition makes clear that its evidence tampering allegations are

18   based upon two categories of documents:  The first category of documents,

19   perhaps composed of only one multi-page document, involves the alleged alteration

20   of Bryant's contract with MGA to remove a fax header showing that the date of its

21   execution, which predated the effective date of Bryant's resignation from Mattel.[3]

22   The second category of documents are those filed with the United States Copyright

23   Office, which are alleged to omit the disclosure that certain Bratz drawings were

24   "works for hire," and which are alleged to have had alterations made to certain

25

26             [3] The AAC merely alleges that counter-defendants Bryant and MGA
27   "tamper[ed] with and defac[ed] documents which showed that . . . Bryant was a
     Mattel employee while he was working for and with MGA . . . ."  (AAC ¶ 35.)
28   However, it is clear from other filings by the parties that, at a minimum, this
     allegation refers to MGA's contract with Bryant.

EXHIBIT ___21___

PAGE ___246___

1  relevant dates. (See AAC ¶ 35; Mattel Opp. to MGA's Motion at 9.)

2         As to the first category, a predicate act is sufficiently alleged.  Mattel has

3  alleged that a document was altered in a manner designed to conceal critical

4  evidence, highly relevant to the present official proceeding, regarding the timing of

5  the execution of the document.

6         Conversely, it is unclear whether Mattel has alleged a predicate act with

7  respect to the second category of documents.  The issue of whether submitting

8  fraudulent registrations and "altering relevant dates" on documents submitted to the

9  United States Copyright Office has not been fully briefed by the parties; the issue

10 was framed in this manner only upon the filing of the reply.[4]  Therefore, the Court

11 reserves this issue for a later date, and anticipates that it will be addressed by the

12 parties in a motion to dismiss the SAAC.

13         c.    **Travel Act Violation**

14         Federal criminal law prohibits interstate or foreign travel to aid in

15 racketeering activities.  18 U.S.C. § 1952; see also 18 U.S.C. § 1961 (defining a

16 violation of § 1962 as a RICO predicate act).  In relevant part, the criminal

17 prohibition states:

18         Whoever travels in interstate or foreign commerce or uses the

19         mail or any facility in interstate or foreign commerce, with intent to . . .

20         promote, manage, establish, carry on, or facilitate the promotion,

21         management, establishment, or carrying on, of any unlawful activity,

22         and thereafter performs or attempts to perform . . . [such an act,] shall

23         be fined under this title, imprisoned not more than 5 years, or

24         both . . . .

25                                   . . . .

26         As used in this section . . . "unlawful activity" means . . .

27  _____

28    [4] The Court does not view this failure as the fault of any party.

21   19

247

PAGE

1   extortion, bribery, or arson in violation of the laws of the State in which

2   committed or of the United States . . . .

3   Id. Mattel alleges that Bryant and others traveled in interstate commerce to commit

4   commercial bribery in violation of California's prohibition against commercial

5   bribery, which in relevant part provides:

6        (a) Any employee who solicits, accepts, or agrees to accept

7   money or any thing of value from a person other than his or her

8   employer, other than in trust for the employer, corruptly and without

9   the knowledge or consent of the employer, in return for using or

10   agreeing to use his or her position for the benefit of that other person,

11   and any person who offers or gives an employee money or any thing

12   of value under those circumstances, is guilty of commercial bribery.

13   Cal. Penal Code § 641.3.  Several allegations support a violation of § 641.3(a),

14   which in turn supports a violation of 18 U.S.C. § 1952.  Mattel has alleged that

15   Bryant, while still employed by Mattel, entered into a contract with MGA to provide

16   design services to MGA on a "top priority" basis, and used Mattel property,

17   employees, and resources to develop and design the Bratz concept.

18        Counter-defendants argue that the requirement under California's

19   commercial bribery statute that a violator act "corruptly" is not met because Bryant

20   did not intend to injure Mattel.  Such an intent is not required; rather it is sufficient

21   that Bryant is alleged to have intended to defraud Mattel.  See Cal. Penal Code

22   § 341.3(d)(3) (defining "corruptly" as involving the intent "to injure or defraud")

23   (emphasis added).

24        d.   **Criminal Copyright Violations**

25        The parties dispute the relevant pleading standard that governs the

26   allegations which underlie the criminal copyright violation claim.  Counter-

27   defendants would have the Court apply the more exacting Rule 9(b) standards

28   because, in their assessment, the claim "sounds in fraud."  Mattel, however,

EXHIBIT __21__    20

PAGE __248__

1   contends that there is no reason to depart from the more lenient Rule 8(a) standard

2   generally applied to copyright claims because, in its assessment, the claims "sound

3   in copying, not fraud." (Mattel Opposition to MGA's Motion at 4.)

4          The recent Ninth Circuit case on this issue, cited by both parties, stands for

5   the unremarkable proposition that, consistent with Rule 9(b), all *averments* of fraud

6   must be pleaded with particularity, regardless of whether fraud is an essential

7   element of the claim to which the averment relates. See Vess v. Ciba-Geigy Corp.

8   USA, 317 F.3d 1097, 1103 (9th Cir. 2003); Fed. R. Civ. P. 9(b) ("In all *averments*

9   of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

10  with particularity.") (emphasis added).

11         Considering Rules 8(a), 9(b), and the teachings of Vess, a spectrum

12  emerges. At the left end of this spectrum are claims that do not involve any

13  allegations of fraud. Those need only satisfy Rule 8(a)'s "short and plain

14  statement" standard. At the opposite end of the spectrum are claims based solely

15  on fraud, and the facts underlying such a claim must be alleged with particularity

16  pursuant to Rule 9(b). Lying closer to the Rule 9(b) end of the spectrum is a

17  category of claims discussed in Vess:

18              In cases where fraud is not a necessary element of a claim, a

19         plaintiff may choose nonetheless to allege in the complaint that the

20         defendant has engaged in fraudulent conduct. In some cases, the

21         plaintiff may allege a unified course of fraudulent conduct and rely

22         entirely on that course of conduct as the basis of a claim. In that

23         event, the claim is said to be "grounded in fraud" or to "sound in

24         fraud," and the pleading of that claim as a whole must satisfy the

25         particularity requirement of Rule 9(b).

26  Vess, 317 F.3d at 1103-04 (internal citations omitted). It is into this category MGA

27  contends that the allegations of criminal copyright claims fit, and MGA therefore

28  contends that all allegations regarding the criminal copyright claims must be

EXHIBIT _____21_____          21

PAGE _____249_____

1  pleaded with particularity.

2       However, Vess sets up another category, lying closer to the Rule 8(a) part of

3  the spectrum (but nevertheless requiring pleading with some particularity):

4       In other cases, however, a plaintiff may choose not to allege a

5       unified course of fraudulent conduct in support of a claim, but rather

6       to allege some fraudulent and some non-fraudulent conduct.  In such

7       cases, only the allegations of fraud are subject to Rule 9(b)'s

8       heightened pleading requirements. . . . The rule does not require that

9       allegations supporting a claim be stated with particularity when those

10      allegations describe non-fraudulent conduct.

11      [In other words,] in a case where fraud is not an essential

12      element of a claim, only allegations ("averments") of fraudulent

13      conduct must satisfy the heightened pleading requirements of Rule

14      9(b).  Allegations of non-fraudulent conduct need satisfy only the

15      ordinary notice pleading standards of Rule 8(a).

16  Id. at 1104-05.

17      Whether fraud is an essential element of criminal copyright infringement

18  must be determined by reference to the statutory language and any interpretative

19  case law.  In relevant part, the prohibition against criminal copyright infringement

20  provides:  "Any person who violates section 506(a) (relating to criminal offenses) of

21  title 17 shall be punished as provided [herein] in and such penalties shall be in

22  addition to any other provisions of title 17 or any other law."  18 U.S.C. § 2319.  In

23  turn, the relevant provision in 17 U.S.C. § 506 states that "[a]ny person who willfully

24  infringes a copyright shall be punished as provided under section 2319 of title 18, if

25  the infringement was committed . . . for purposes of commercial advantage or

26  private financial gain . . . ."  17 U.S.C. § 506(a)(1)(A).  The elements of the offense

27  are easily gleaned from the straightforward statutory language:  "Criminal

28  infringement of copyright has three elements: (1) infringement of a copyright

EXHIBIT 21   22

PAGE 250

(2) done wilfully (3) for purposes of commercial advantage or private financial gain." United States v. Goss, 803 F.2d 638, 642 (11th Cir. 1986).

Clearly, fraud is not an essential element of a criminal copyright claim, taking it out of the category at the far end of the spectrum described above, and necessitating an inquiry into whether Mattel has chosen to incorporate a fraud element into its criminal copyright claim. The AAC at ¶ 93(e) reveals that the criminal copyright claim is premised upon the "willfull[] infringe[ment of] Mattel's copyrights, including with respect to documents containing Mattel trade secret and confidential information . . . ." The Opposition fills in more details regarding this claim, noting that the criminal copyright claim is premised upon the Bratz-related works, Bratz-derivative works, and works contained within Mattel's allegedly purloined trade secrets and confidential information. (Mattel Opposition to MGA's Motion at 5).

These allegations do not "allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim" such that the claim could be said to "sound in fraud" and therefore require pleading with particularity as to the entire claim. The allegations establish that much of the conduct complained of consists of simple copying of the Bratz-related works or the creation of Bratz-derivative works. Such allegations are unrelated to allegations of fraud. Therefore, if this claim falls anywhere on the spectrum other than the Rule 8(a) category, it falls in the category described by Vess as those claims in which a claimant chooses to "allege some fraudulent and some non-fraudulent conduct." Id. at 1104.

When one considers that the alleged predicate acts of criminal copyright infringement are but a small part of a larger, and singular, claim brought pursuant to RICO, it is evident that the RICO claim falls neatly into the category of claims that are based partly on fraudulent and partly on non-fraudulent conduct. The Court has already found that certain fraudulent conduct -- that supporting the alleged predicate acts of mail fraud and wire fraud -- is insufficiently pleaded. The current

EXHIBIT   21        23

PAGE       251

1  focus, however, is whether the allegations supporting the predicate acts of criminal
2  copyright infringement involve fraudulent conduct.
3       Here, there are two types of works allegedly infringed.  The first type is the
4  Bratz-related and Bratz-derivative works.  The second type is Mattel's other trade
5  secrets and confidential information.  Both types are alleged -- with particularity -- to
6  have been procured by MGA through fraudulent conduct, but the criminal copyright
7  infringement predicate acts do not implicate that fraudulent conduct.  Rather, they
8  implicate only questions of whether counter-defendants wilfully infringed Mattel's
9  works for commercial advantage or private financial gain.  Here, Mattel has
10 sufficiently alleged predicate acts of criminal copyright infringement by alleging that
11 MGA and other counter-defendants willfully infringed its copyrights for purposes of
12 gaining commercial advantage and private financial gain.  As Mattel correctly
13 contends, state of mind, in this instance willfulness, may be pleaded generally.  See
14 Ferguson Beauregard/Logic Controls v. Mega systems, LLC, 350 F.3d 1327, 1343
15 (Fed. Cir. 2003).
16      **4.    Injury to Business or Property**
17      "Recovery under RICO is limited to those injuries flowing from predicate
18 acts . . . ."  Resolution Trust Corp. v. Keating, 186 F.3d 1110, 1117 (9th Cir. 1999)
19 (citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497 (1985)).  Here, Mattel
20 has alleged damages flowing from the alleged acts of racketeering activity.  (AAC
21 ¶ 96).  Damages easily flow from theft of trade secrets and confidential information
22 committed by a direct competitor and from infringement of copyrights that are
23 alleged to have been used to make millions -- if not billions -- of dollars.
24      Counter-defendants argue that Mattel lacks standing to sue on behalf of its
25 subsidiaries.  This issue arises because many of the allegations of the thefts of
26 trade secrets involve actions taken in Mexico or Canada by employees of Mattel's
27 foreign subsidiaries.  Mattel argues that it is not attempting to sue for damages
28 incurred by its subsidiaries; rather, Mattel alleges that much of the confidential

EXHIBIT ___21___   24

PAGE ___252___

1  information stolen by the employees of Mattel's subsidiaries belonged not to

2  Mattel's subsidiaries, but to Mattel itself.  Based on these allegations, Mattel may

3  sue for damages it sustained.  Mattel may not sue for damages incurred by its

4  foreign subsidiaries.

5          5.     **Ruling on Motions to Dismiss**

6          The Motions to Dismiss the RICO claims are **GRANTED** in part.  As set forth

7  herein, the alleged predicate acts of mail fraud and wire fraud are insufficiently

8  alleged, and Mattel is **GRANTED** leave to amend the AAC.

9  **C.     Trade Secrets**

10         MGA contends that Mattel has failed to plead its trade secrets with sufficient

11 particularity to comply with its duties under Cal. Code Civ. P. § 2019.210, which

12 provides:

13             In any action alleging the misappropriation of a trade secret

14         under the Uniform Trade Secrets Act . . . , before commencing

15         discovery relating to the trade secret, the party alleging the

16         misappropriation shall identify the trade secret with reasonable

17         particularity subject to any orders that may be appropriate under

18         Section 3426.5 of the Civil Code [involving in camera reviews and

19         sealing of court documents].

20 Id.  Based on the unambiguous language of the statute, the Court agrees with

21 Mattel's characterization of this requirement as one related to discovery rather than

22 related to pleading.

23         The Court also agrees that, by identifying documents in discovery by Bates-

24 stamp number, Mattel has complied with the dictates of § 2019.210.  See

25 Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal.App.4th 826, 835-36,

26 (2005) (internal quotation marks and citations omitted) ("[Reasonable particularity]

27 means that the plaintiff must make some showing that is reasonable, i.e., fair,

28 proper, just and rational[,] . . . under all of the circumstances to identify its alleged

EXHIBIT ___21___  25

PAGE ___253___

1  trade secret in a manner that will allow the trial court to control the scope of

2  subsequent discovery, protect all parties' proprietary information, and allow them a

3  fair opportunity to prepare and present their best case or defense at a trial on the

4  merits.").  MGA's complaints regarding the volume of documents so identified, and

5  their skepticism of Mattel appropriately attaching such an identification to many of

6  those identified documents, are not properly addressed at this stage of the

7  proceedings.

8         The motion to dismiss the trade secrets claim on this basis is therefore

9  **DENIED**.

10 **D.    Duplicative State-Law Claims**

11        Bryant's motion to dismiss Mattel's duplicative state-law claims is **DENIED**.

12 The state-law counterclaims asserted against Bryant in the AAC admittedly overlap

13 with the claims asserted against him in the 04-9059 case, however, the factual

14 allegations underlying the claims asserted in the AAC are broader in scope than

15 those underlying the claims asserted in the 04-9059 case.

16 **IV. Motion to Dismiss for Lack of Personal Jurisdiction**

17        MGA Mexico challenges this Court's exercise of personal jurisdiction over it.

18 As set forth below, the Court concludes that it may, consistent with California law

19 and the federal Due Process Clause, exercise specific personal jurisdiction over

20 this admittedly foreign corporation.

21 **A.    The Constitutional Exercise of Personal Jurisdiction**

22        Where a party moves to dismiss a claim for lack of personal jurisdiction, the

23 party asserting the claim bears the burden of demonstrating that jurisdiction is

24 appropriate.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir.

25 2004).  However, in opposing a motion to dismiss for lack of personal jurisdiction,

26 the party asserting the claim need only make a *prima facie* showing of jurisdictional

27 facts.  Id. Disputed facts are to be resolved in favor of the exercise of personal

28 jurisdiction.  Id.

EXHIBIT __21__  26

PAGE __254__

1    Because there is no applicable federal statute governing personal
2    jurisdiction, the Court applies the law of the state in which the district court sits. Id.
3    (citations omitted). "Because California's long-arm jurisdictional statute is
4    coextensive with federal due process requirements, the jurisdictional analyses
5    under state law and federal due process are the same." Id. at 800-01 (citations
6    omitted). In order for a court's exercise of personal jurisdiction over a nonresident
7    defendant to be constitutionally permissible, the defendant must have "minimum
8    contacts" with the forum state "such that the exercise of jurisdiction does not offend
9    traditional notions of fair play and substantial justice." Id. at 801 (internal quotation
10   marks and citation omitted).

11        Personal jurisdiction may be either general or specific. For general personal
12   jurisdiction to apply, a defendant (or here, a counter-defendant) "must engage in
13   continuous and systematic general business contacts . . . that approximate a
14   physical presence in the forum state." Id. (internal quotation marks and citations
15   omitted).

16        To determine whether it has specific personal jurisdiction over a nonresident
17   defendant, the Court employs a three-part test:

18             (1) The non-resident defendant must purposefully direct his
19        activities or consummate some transaction with the forum or resident
20        thereof; or perform some act by which he purposefully avails himself
21        of the privilege of conducting activities in the forum, thereby invoking
22        the benefits and protections of its laws; (2) the claim must be one
23        which arises out of or relates to the defendant's forum-related
24        activities; and (3) the exercise of jurisdiction must comport with fair
25        play and substantial justice, i.e. it must be reasonable.

26   Id. at 802.

27        The party asserting the claim bears the burden of establishing the first two
28   parts of the test. Id. If that party establishes the first two parts, then the burden

EXHIBIT ___21___
                    27
PAGE ___255___

1  shifts to the party resisting the Court's exercise of personal jurisdiction "to present a

2  **compelling case** that the exercise of jurisdiction would not be reasonable." Id.

3  (emphasis added).

4         The first part of the test is satisfied by either "purposeful availment" or

5  "purposeful direction." Id. Purposeful availment is shown when a defendant avails

6  itself of the privilege of doing business in a forum state, usually met when the

7  defendant took some action in the forum, such as executing or performing a

8  contract there. Id. By virtue of such actions, a defendant "purposefully avails itself

9  of the privilege of conducting activities within the forum State, thus invoking the

10  benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

11  When taking advantage of these "benefits and protections," a defendant must also

12  "submit to the burdens of litigation in that forum." Burger King Corp. v. Rudzewicz,

13  471 U.S. 462, 476 (1985).

14         By contrast, purposeful direction, involves actions by the defendant outside

15  of the forum state but that are directed at the forum. Schwarzenegger, 374 F.3d at

16  803. The purposeful direction analysis is derived from a three-part "effects test"

17  that finds its roots in the Supreme Court's decision in Calder v. Jones, 465 U.S. 783

18  (1984). Pursuant to this analysis, the defendant must "have (1) committed an

19  intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

20  defendant knows is likely to be suffered in the forum state." Id.; Schwarzenegger,

21  374 F.3d at 803. All three parts of the test must be satisfied. The second part of

22  the effects test is described by the Ninth Circuit as the "express aiming"

23  requirement, and requires that the counter-defendants "expressly aimed" its

24  intentional act at California. See Schwarzenegger, 374 F.3d at 806. Specifically,

25  "express aiming" is found where the defendant is alleged to have engaged in

26  wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident

27  of the forum state." Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082,

28

EXHIBIT ___21___  28

PAGE ___254___

1087 (9th Cir. 2000).[5]

Assuming that the party asserting a claim can establish that the party resisting the Court's exercise of personal jurisdiction has met either the purposeful availment or express aiming part of the three-part test regarding the exercise of specific personal jurisdiction, courts next consider whether the claim arises out of or relates to the forum-related activities. In making this determination, the Court considers whether the contacts with the forum gave rise to the claims asserted, employing a "but for" standard.  See Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001).

Once the purposeful availment/express aiming and relatedness requirements are established, the burden shifts to the party resisting the Court's exercise of jurisdiction to show that exercise of jurisdiction is unreasonable.  In determining reasonableness, the Court considers seven factors:

> 1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.

---

[5]  What constitutes, or doesn't constitute, "express aiming" is best illustrated by example.  For instance, in Pebble Beach Co. v. Caddy, 453 F.3d 1151 (9th Cir. 2006), no express aiming was found where the owner of a bed-and-breakfast in England (overlooking a pebbly beach) used the term "pebblebeach," the name of a famous golf course located in California, on its web site. Id. at 1153, 1156-57. The Ninth Circuit acknowledged that it might be foreseeable that the defendant's use of the web site might have some effect on California, but noted that mere foreseeability of effect in a forum state is not enough to constitute express aiming. Id. at 1157.  In contrast to Pebble Beach is the case of Panavision Intern., L.P. v. Toeppen,141 F.3d 1316, 1321 (9th Cir. 1998), in which the Ninth Circuit found that the express aiming requirement was met where the defendant registered plaintiff's marks as Internet domain names in order to force a California plaintiff to pay him money.

EXHIBIT  21
PAGE  257

29

1  Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991) (internal citation

2  omitted).  No factor is dispositive and the Court must balance all seven.  Id.

3  (internal citation omitted).

4  B.     **MGA Mexico's Contacts with the Forum State**

5       The AAC alleges that Issac Larian and other MGA officers, while in

6  California, executed a plot to target three high-level employees of Mattel Mexico,

7  and entice them to steal Mattel's trade secrets.  In written offers of employment to

8  these three individuals, Issac Larian held himself out to be the CEO of MGA

9  Mexico.  This plot was facilitated by a number of cross-border communications

10  among the participants as well as travel to the United States by the targeted

11  employees.

12  C.     **The Court May Exercise Personal Jurisdiction over MGA Mexico**

13       The AAC repeatedly alleges that Larian, who held himself out to be MGA

14  Mexico's CEO, and who was designated as MGA Mexico's "legal agent" in Mexican

15  registration document actively sought to induce others to access and steal Mattel's

16  trade secrets while located in the California.  See Velázquez Decl. Exs. A-C; Salem

17  Decl. Ex. B.  This constitutes purposeful availment.

18       To the extent that any of the actions taken in Mexico by the three Mexican

19  employees may be imputed to Mattel Mexico, there is also purposeful direction.

20  The alleged actions taken on behalf of MGA Mexico were specifically engineered to

21  result in the alleged illegal acquisition of trade secrets belonging to Mattel, a

22  California resident.[6]

23       The relatedness requirement is also clearly met.  The contacts with

24  California involve actions allegedly taken in order to further the illegal acquisition of

25  Mattel's trade secrets, leading to the present claims against MGA Mexico for

26  misappropriation of trade secrets and the related RICO claims.

27  _____

28       [6] The AAC alleges the theft of trade secrets belonging not only to Mattel's
Mexican subsidiary, but also to Mattel itself, which is a California corporation.

30

EXHIBIT  21

PAGE  258

The burden, therefore, is on MGA Mexico to show that the exercise of jurisdiction is unreasonable.[7]  As noted previously, the Court considers seven factors.  The first factor the Court considers is the defendant's purposeful interjection.  For the reasons the Court has found purposeful availment and purposeful direction, this factor favors the exercise of personal jurisdiction.

MGA Mexico argues, without elaboration, that the burden of defending itself in California is "significant."  However, the assumption underlying this argument is that the present action is more properly litigated by MGA's and Mattel's Mexican subsidiaries.  This assumption misses the point of Mattel's claim against MGA Mexico; Mattel, the parent company, was itself injured by MGA's Mexico's alleged misappropriation of its own trade secrets because the alleged misappropriation was not limited to trade secrets belonging to its Mexican subsidiary.  The argument based on this faulty assumption is therefore unconvincing.  In order to show unreasonableness, the burden on the defendant must be great.  See Panavision, 141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.") (internal quotation marks and citation omitted).

As to the third and seventh factors, regarding conflicts of law and the

---

[7]  In its reply, MGA Mexico declares that it "made a 'compelling case' in support of its motion to dismiss that it would be unreasonable to force it to litigate in this forum."  MGA Mexico Reply at 10.  However, MGA Mexico's motion papers fail to acknowledge that they bear the burden on this issue.  See MGA Mexico's Memorandum of Points and Authorities at 10 ("Finally, Mattel has failed to satisfy the third element required for specific jurisdiction -- that the exercise of jurisdiction over the defendant would be reasonable.").  As Mattel accurately predicted in its opposition papers, MGA Mexico implicitly acknowledged its burden in the reply, and used the occasion to improperly present additional arguments for the first time.  Although the Court ordinarily would not consider such arguments, it does so here because it does not change the Court's ultimate conclusion.  See In re Intuit Privacy Litigation, 138 F.Supp.2d 1272, 1275 n.3 (C.D. Cal. 2001) ("this court does not consider arguments raised anew for the first time in a reply brief as to do so would unfairly deny the non-moving party an opportunity to respond.").

31

EXHIBIT  21

PAGE  259

RightFAX                6/2  2007 3:04    PAGE 033/037      ax Server

existence of an alternative forum, MGA Mexico makes veiled references to the
criminal action in Mexico as constituting a choice of forum made by Mattel,
apparently implying that Mattel, having chosen to pursue criminal charges in
Mexico, should be precluded from invoking the power of this Court. It appears to
the Court that MGA Mexico has failed to fully and clearly articulate this argument
because it is untenable. Whether Mexican authorities pursue criminal charges
based on the same conduct underlying the claims in this action is irrelevant to
whether this Court may constitutionally exercise personal jurisdiction over MGA
Mexico. Therefore, MGA Mexico's argument on this issue is unpersuasive.

The fourth factor, the interest in adjudicating the dispute, weighs in favor of
the exercise of personal jurisdiction, as does the sixth, the plaintiff's interest in
convenient and effective relief.

MGA Mexico argues that the fifth factor weighs in its favor when the Court
considers that the site of injury, which it does not believe is California, is the most
efficient forum. However, this argument is premised on the rejected assumption
that the present action is more properly litigated between MGA's and Mattel's
Mexican subsidiaries.

On balance, a consideration of the reasonableness factors reveals that MGA
Mexico has fallen far short of establishing the "compelling case" necessary to
render the Court's exercise of personal jurisdiction unreasonable.

The Court concludes that Mattel has established the first two parts of the
specific personal jurisdiction test, and that MGA Mexico has failed to establish that
the Court's exercise of personal jurisdiction over it is otherwise unreasonable.
Accordingly, the Court **DENIES** MGA Mexico's motion to dismiss.

## V. MGA's and Bryant's Motions Regarding
## the Discovery Master's March 7, 2007, Order

MGA and Bryant seek review of a decision that resolved discovery disputes
that arose during Bryant's deposition, and that was rendered by the Court-

EXHIBIT  21      32

PAGE  260

appointed discovery master, Judge Edward A. Infante (Ret.), on March 7, 2007. The Court's order appointing Judge Infante provides that his orders resolving discovery disputes shall be reviewed in the same manner as those made by a magistrate judge of this Court.

Pursuant to Fed. R. Civ. P. 72(a), when the parties object to the ruling of a magistrate judge on a non-dispositive manner, such as a discovery dispute, the district judge may modify or set aside only those portions of the magistrate judge's order that are "clearly erroneous or contrary to law." Id.

The "clearly erroneous" language refers to factual findings. See e.g., Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust, 508 U.S. 602, 622 (1993) (discussing the clearly erroneous standard). Here, there were no explicit factual findings or legal conclusions made by Judge Infante regarding the relevant rulings; therefore, the Court reviews the record presented to Judge Infante to determine whether his rulings are contrary to law. See March 7, 2007, Order.

Questions that do not seek the substance of attorney-client communications generally do not implicate the attorney-client privilege. United States v. Carrillo,16 F.3d 1046, 1050 (9th Cir. 1994) (finding no violation of the attorney-client privilege where prosecutor, who asked whether a criminal defendant had consulted with his attorney during a recess in order to raise an inference of attorney coaching of testimony during the trial, stopped short of asking defendant the substance of defendant's communications with his attorney). Therefore, questions such as the one addressed by objection No. 38, asking whether Bryant talked to counsel for MGA during a break from his deposition, are not subject to objection based on the attorney-client privilege. This conclusion is consistent with Judge Infante's Order.

Mattel's question regarding who is paying Bryant's legal fees, addressed by objection No. 42, is likewise not objectionable. MGA and Bryant argue that state law applies; however, because the present consolidated actions involve both

EXHIBIT ___21___  33

PAGE ___261___

1   federal and state-law claims, the federal law of privilege applies. <u>Agster v.</u>

2   <u>Maricopa County</u>, 422 F.3d 836, 839-40 (9th Cir. 2005) ("Where there are federal

3   question claims and pendent state law claims present, the federal law of privilege

4   applies."). To that end, consistent with federal privilege law, fee-payment

5   arrangements are relevant to credibility and bias, and if asked in discovery, Bryant

6   must disclose who is paying his legal fees. <u>See</u> <u>United States v. Blackman</u>, 72 F.3d

7   1418, 1424 (9th Cir. 1995) ("As a general rule, client identity and the nature of the

8   fee arrangement between attorney and client are not protected from disclosure by

9   the attorney-client privilege."). This conclusion is also consistent with Judge

10  Infante's Order.

11          However, in this case, the joint-defense privilege protects from disclosure the

12  substance of certain statements made by Bryant and his attorneys in the presence

13  of attorneys representing MGA. "The joint defense privilege protects

14  communications between an individual and an attorney for another when the

15  communications are 'part of an on-going and joint effort to set up a common

16  defense strategy.'" <u>United States v. Bay State Ambulance and Hosp. Rental</u>

17  <u>Service, Inc.</u>, 874 F.2d 20, 28 (1st Cir. 1989) (internal quotation marks and citation

18  omitted). Generally, to rely on the joint-defense privilege, a party must establish

19  three elements: "(1) [T]he communications were made in the course of a joint

20  defense effort, (2) the statements were designed to further the effort, and (3) the

21  privilege has not been waived." <u>Id.</u>

22          The Court finds the first element was met. The Court, based on its review of

23  the record pending before Judge Infante, is satisfied that the parties had in place at

24  the time of Bryant's deposition, and have in place today, a valid joint-defense

25  agreement. The Court also finds that the second element was met. Mattel cannot

26  seriously contend that MGA's interests are not aligned with Bryant's in this action,

27  or that counsels' thorough preparation of Bryant for his deposition was not designed

28  to further the joint defense effort. Finally, as for the third element, there is no

EXHIBIT _____21_____   34

PAGE _____262_____

suggestion in the record that any party has waived the attorney-client privilege.

Accordingly, the Court holds that Judge Infante's rulings on Objection Nos. 39 and 50 are contrary to law to the extent those rulings require Bryant to divulge the substance of his communications with counsel for MGA.

## VII. Conclusion

In the manner set forth more fully herein, the Court makes the following rulings:

1.      Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189): **GRANTED IN PART AND DENIED IN PART.**

2.      Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and XI (docket # 191): **GRANTED IN PART AND DENIED IN PART.**

3.      Motion of MGA Mexico to Dismiss Mattel's Amended Answer and Counterclaims (docket # 266): **DENIED.**

4.      Motion of MGA Objecting to Discovery Master's March 7, 2007, Order (docket # 308): **GRANTED IN PART AND DENIED IN PART.**

5.      Motion of Carter Bryant Objecting to Discovery Master's March 7, 2007, Order (docket # 306): **GRANTED IN PART AND DENIED IN PART.**

Mattel is **GRANTED** ten days' leave to amend the AAC in conformity with this Order. The Counter-defendants shall answer or otherwise respond to the SAAC no later than thirty days after the filing of the SAAC.

EXHIBIT    21

PAGE    263

The Motion Re Trial Structure (docket #462) has been the subject of further briefing by the parties and is set for further oral argument on July 2, 2007.  Ruling on that matter is **DEFERRED** pending oral argument.

DATE:  June 27, 2007

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE

EXHIBIT 21
36

PAGE 264

om:     Name:     United States District Court
                  312 North Spring Street
                  Los Angeles, CA 90012
        Voice Phone: (213) 894-5474


:       Name:     Michael Zeller
        Company:
                  865 S Figueroa St, 10th Floor,
        City/State:  Los Angeles, CA 90017-2543
        Fax Number:  213-443-3100

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA



## Automated Document Delivery Service
*Notice pursuant to Rule 77(d) FRCiv.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

x Notes:

se 2:04-CV-09049 : CARTER BRYANT V. MATTEL INC


*rsuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search /arrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents (Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail address for each division is as follows:*

*Western Division: CrimIntakeCourtDocs-LA@cacd.uscourts.gov*
*Southern Division: CrimIntakeCourtDocs-SA@cacd.uscourts.gov*
*Eastern Division: CrimIntakeCourtDocs-RS@cacd.uscourts.gov*

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!**
**To switch, complete and submit**
**Optical Scanning Enrollment / Update form G-76.**
**Call 213-894-5474 for help and free technical support.**


*you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for 'hich you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

te and time of transmission:         Wednesday, June 27, 2007 3:04:20 PM
mber of pages including this cover sheet:  37


EXHIBIT  21

PAGE  265

EXHIBIT 22

**CONFORMED COPY**

FILED

2007 JUN 20  PM 1:12

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY ___

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                UNITED STATES DISTRICT COURT

8                CENTRAL DISTRICT OF CALIFORNIA

9                       EASTERN DIVISION

10

11   CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                            JAMS Reference No.1100049530
12          Plaintiff,

13      v.                                  Consolidated with
                                            Case No. CV 04-09059
14   MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15          Defendant.                      **ORDER GRANTING IN PART AND
                                            DENYING IN PART MATTEL'S
16                                          MOTION TO ENFORCE THE
                                            COURT'S ORDER OF JANUARY 25,
17                                          2007, TO COMPEL PRODUCTION OF
                                            DOCUMENTS BY CARTER BRYANT
18                                          AND FOR SANCTIONS**

19   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
20   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
21

22

23

24                    I. INTRODUCTION

25       On May 15, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Enforce the Court's

26   Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for

27

28   Bryant v. Mattel, Inc.,                                              1
     CV-04-09049 SGL (RNBx)

EXHIBIT ___22___

PAGE ___266___

C10|19|07

1   Sanctions." On May 18, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on

2   May 23, 2007, Mattel submitted a reply brief. Mattel essentially seeks an order compelling

3   Bryant to produce copies of a document identified on Bryant's privilege log that has been

4   withheld on the basis of the attorney-client privilege.[1] Having considered all the papers submitted

5   by the parties, Mattel's motion to produce the two documents withheld under a claim of privilege

6   is granted and the request for sanctions is denied.

7                                    II. BACKGROUND

8        In early January of 2007, Mattel filed a motion to compel Bryant to produce, among other

9   things, his fee agreement with MGA in response to Request Nos. 2, 13, and 48. Bryant argued

10  that such agreements are irrelevant and privileged. The Discovery Master held that the

11  documents relating to fee or indemnity agreements between MGA and Bryant are relevant to

12  demonstrate bias and lack of credibility. Accordingly, the Discovery Master ordered Bryant to

13  produce, among other things, all non-privileged documents responsive to Request Nos. 2, 13, and

14  48, and to produce a privilege log in compliance with Rule 26(b)(5), Fed.R.Civ.P. See Discovery

15  Master's Order Granting Mattel's Motion to Compel Production of Documents, dated January 25,

16  2007 (the "January 25, 2007 Order").

17       On March 16, 2007, Bryant served a privilege log that listed as items Nos. 9 and 10 copies

18  of a fee agreement between MGA and the law firm of Littler Mendelson, P.C. ("Littler"). Littler

19  is counsel of record for Bryant in this action. Notably, however, the privilege log indicates that

20  the author of the fee agreement is "Robert F. Millman, Esq. (attorney with Littler Mendelson,

21  P.C., counsel for MGA Entertainment, Inc., and acting in his capacity as counsel for MGA

22  Entertainment, Inc.)." Proctor Decl., Ex. 5. The recipient is identified as "Daphne Gronich, Esq.

---

[1] The parties were able to resolve a portion of the motion during the briefing process. In addition to the fee agreements, Mattel originally sought production of a communication between MGA's patent counsel and Mr. Bryant regarding a patent for interchangeable doll footgear and feet. A day before the opposition brief was due, Bryant offered to produce the communication if Mattel agreed that doing so would not constitute a waiver of privilege as to any other document or testimony. Mattel accepted Bryant's offer. See Bryant's Opposition at 1 and Mattel's Reply at 1. Mattel continues to assert, however, that Bryant's conduct warrants sanctions because Bryant should have offered to produce the communication during the meet and confer process.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __22__

PAGE __267__

2

1   (general counsel for MGA Entertainment, Inc.)." Id. Privilege Log Entry Nos. 9 and 10 are both

2   described as an "addendum to retainer agreement between Littler Mendelson, P.C. and MGA

3   Entertainment, Inc." Id. The only difference in the description is that Privilege Log Entry No. 9

4   is "executed," whereas No. 10 is a "draft." Id. In his opposition brief, Bryant represents that

5   items No. 9 and No. 10 are "the same document, save that one copy has two signatures and the

6   other only one." Id. Bryant is not a party to the fee agreement. MGA, however, has apparently

7   asserted the attorney-client privilege as to item Nos. 9 and 10 and Bryant is withholding the

8   document pursuant to their joint defense agreement. Bryant's Opposition at 3.

9          Mattel contends that the fee agreement identified as items No. 9 and 10 should be

10  produced pursuant to the January 25, 2007 Order. Mattel contends that although Bryant was not a

11  party to that agreement, the agreement between MGA and Littler is nevertheless an agreement for

12  MGA to pay Bryant's legal fees and is relevant to show Bryant's bias and lack of credibility.

13  Mattel further contends that the agreement between MGA and Littler is not privileged under

14  Ninth Circuit law. See e.g. United States v. Blackman, 72 F.3d 1418, 1424 (9th Cir. 1995) ("[a]s a

15  general rule, client identity and the nature of the fee arrangement between attorney and client are

16  not protected from disclosure by the attorney-client privilege."); Clarke v. American Commerce

17  Natl. Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("Our decisions have recognized that the identity of

18  the client, the amount of the fee, the identification of payment by case file name, and the general

19  purpose of the work performed are usually not protected from disclosure by the attorney-client

20  privilege.").

21         Bryant contends that the documents at issue are in his possession solely because they were

22  provided to his counsel under a joint defense agreement. He contends that this joint defense

23  agreement prevents him from waiving the attorney-client privilege asserted by MGA. He further

24  asserts that if Mattel wants to challenge the privilege asserted, Mattel should seek the document

25  directly from MGA.

26                              III. DISCUSSION

27         For reasons already set forth in the January 25, 2007 Order, the documents at issue are

28  relevant to the claims and defenses in the case. Pursuant to the terms of the January 25, 2007

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT   22

PAGE   268

1  Order, Bryant was required to either produce the documents or identify them on a privilege log.
2  As the party withholding the documents, Bryant was required to substantiate the claim of
3  privilege under Federal Rule of Civil Procedure 26(b)(5).  He has failed to do so.  Bryant has not
4  made any attempt to submit affidavits or other admissible evidence to establish that, for instance,
5  the withheld documents contain confidential attorney-client communications made for the
6  purpose of giving legal advice.  Nor has he made any challenge to the caselaw cited by Mattel
7  holding that, in general, fee agreements are not privileged under Ninth Circuit law.  That Bryant
8  and MGA are parties to a joint defense agreement does not excuse Bryant from substantiating the
9  underlying claim of attorney-client privilege.  See Griffin v. Davis, 161 F.R.D. 687, 691 (C.D.
10  Cal. 1995).

11       Moreover, MGA, which participated in the meet and confer on this motion and was served
12  with the motion[2], has not made any attempt to substantiate its claim of the attorney-client
13  privilege other than the unsupported assertions in Bryant's privilege log.  Therefore, the claim of
14  privilege is overruled as to privilege log items Nos. 9 and 10 and the documents are ordered
15  produced.

### IV. CONCLUSION

16       For the reasons set forth above, Bryant is ordered to produce privilege log items Nos. 9
17  and 10 forthwith.  Mattel's motion for sanctions is denied.
18       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
19  Master, Bryant shall file this Order with the Clerk of Court forthwith.

20
21  Dated:  June 19, 2007
22                              /s/Edward A. Infante
23                              _____
                                HON. EDWARD A. INFANTE (Ret.)
24                              Discovery Master
25
26  _____
27       [2] See Mattel's Reply at 1.
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                   4

EXHIBIT    22

PAGE    269

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on June 19, 2007,

I served the attached ORDER GRANTING IN PART AND DENYING IN PART

MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF JANUARY 25, 2007,

TO COMPEL PRODUCTION OF DOCUMENTS BY CARTER BRYANT AND FOR

SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that

the above is true and correct.

Executed on June 19, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT _22_

PAGE _270_

CALENDAR

RECEIVED

JUN 2 5 2007

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No.1100049530
12          Plaintiff,

13      v.                                 Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15          Defendant.                     **ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
16                                         MOTION TO ENFORCE THE
                                           COURT'S ORDER OF JANUARY 25,
17                                         2007, TO COMPEL PRODUCTION OF
                                           DOCUMENTS BY CARTER BRYANT
18                                         AND FOR SANCTIONS**

19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22

23

24                          I. INTRODUCTION

25      On May 15, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Enforce the Court's

26  Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for

27

28  Bryant v. Mattel, Inc.,                                              1
    CV-04-09049 SGL (RNBx)

EXHIBIT ___22___

PAGE ___271___

1    Sanctions." On May 18, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on

2    May 23, 2007, Mattel submitted a reply brief.  Mattel essentially seeks an order compelling

3    Bryant to produce copies of a document identified on Bryant's privilege log that has been

4    withheld on the basis of the attorney-client privilege.[1]  Having considered all the papers submitted

5    by the parties, Mattel's motion to produce the two documents withheld under a claim of privilege

6    is granted and the request for sanctions is denied.

                                        II. BACKGROUND

7

8          In early January of 2007, Mattel filed a motion to compel Bryant to produce, among other

9    things, his fee agreement with MGA in response to Request Nos. 2, 13, and 48.  Bryant argued

10   that such agreements are irrelevant and privileged.  The Discovery Master held that the

11   documents relating to fee or indemnity agreements between MGA and Bryant are relevant to

12   demonstrate bias and lack of credibility.  Accordingly, the Discovery Master ordered Bryant to

13   produce, among other things, all non-privileged documents responsive to Request Nos. 2, 13, and

14   48, and to produce a privilege log in compliance with Rule 26(b)(5), Fed.R.Civ.P.  See Discovery

15   Master's Order Granting Mattel's Motion to Compel Production of Documents, dated January 25,

16   2007 (the "January 25, 2007 Order").

17         On March 16, 2007, Bryant served a privilege log that listed as items Nos. 9 and 10 copies

18   of a fee agreement between MGA and the law firm of Littler Mendelson, P.C. ("Littler").  Littler

19   is counsel of record for Bryant in this action.  Notably, however, the privilege log indicates that

20   the author of the fee agreement is "Robert F. Millman, Esq. (attorney with Littler Mendelson,

21   P.C., counsel for MGA Entertainment, Inc., and acting in his capacity as counsel for MGA

22   Entertainment, Inc.)."  Proctor Decl., Ex. 5.  The recipient is identified as "Daphne Gronich, Esq.

23   _____

24         [1] The parties were able to resolve a portion of the motion during the briefing process.  In addition to the fee
     agreements, Mattel originally sought production of a communication between MGA's patent counsel to Mr. Bryant
25   regarding a patent for interchangeable doll footgear and feet.  A day before the opposition brief was due, Bryant
     offered to produce the communication if Mattel agreed that doing so would not constitute a waiver of privilege as to
     any other document or testimony.  Mattel accepted Bryant's offer.  See Bryant's Opposition at 1 and Mattel's Reply
26   at 1.  Mattel continues to assert, however, that Bryant's conduct warrants sanctions because Bryant should have
     offered to produce the communication during the meet and confer process.

27

28

EXHIBIT ___22___

PAGE ___272___

1    (general counsel for MGA Entertainment, Inc.)." Id.  Privilege Log Entry Nos. 9 and 10 are both

2    described as an "addendum to retainer agreement between Littler Mendelson, P.C. and MGA

3    Entertainment, Inc." Id.  The only difference in the description is that Privilege Log Entry No. 9

4    is "executed," whereas No. 10 is a "draft." Id.  In his opposition brief, Bryant represents that

5    items No. 9 and No. 10 are "the same document, save that one copy has two signatures and the

6    other only one." Id.  Bryant is not a party to the fee agreement.  MGA, however, has apparently

7    asserted the attorney-client privilege as to item Nos. 9 and 10 and Bryant is withholding the

8    document pursuant to their joint defense agreement.  Bryant's Opposition at 3.

9            Mattel contends that the fee agreement identified as items No. 9 and 10 should be

10   produced pursuant to the January 25, 2007 Order.  Mattel contends that although Bryant was not a

11   party to that agreement, the agreement between MGA and Littler is nevertheless an agreement for

12   MGA to pay Bryant's legal fees and is relevant to show Bryant's bias and lack of credibility.

13   Mattel further contends that the agreement between MGA and Littler is not privileged under

14   Ninth Circuit law.  See e.g. United States v. Blackman, 72 F.3d 1418, 1424 (9th Cir. 1995) ("[a]s a

15   general rule, client identity and the nature of the fee arrangement between attorney and client are

16   not protected from disclosure by the attorney-client privilege."); Clarke v. American Commerce

17   Natl. Bank, 974 F.2d 127, 129 (9th Cir. 1992) ("Our decisions have recognized that the identity of

18   the client, the amount of the fee, the identification of payment by case file name, and the general

19   purpose of the work performed are usually not protected from disclosure by the attorney-client

     privilege.").

20           Bryant contends that the documents at issue are in his possession solely because they were

21   provided to his counsel under a joint defense agreement.  He contends that this joint defense

22   agreement prevents him from waiving the attorney-client privilege asserted by MGA.  He further

23   asserts that if Mattel wants to challenge the privilege asserted, Mattel should seek the document

24   directly from MGA.

25                                     III. DISCUSSION

26           For reasons already set forth in the January 25, 2007 Order, the documents at issue are

27   relevant to the claims and defenses in the case.  Pursuant to the terms of the January 25, 2007

28
     Bryant v. Mattel, Inc.,                                                                    3
     CV-04-09049 SGL (RNBx)

EXHIBIT _____22_____

PAGE _____273_____

1   Order, Bryant was required to either produce the documents or identify them on a privilege log.

2   As the party withholding the documents, Bryant was required to substantiate the claim of

3   privilege under Federal Rule of Civil Procedure 26(b)(5).  He has failed to do so.  Bryant has not

4   made any attempt to submit affidavits or other admissible evidence to establish that, for instance,

5   the withheld documents contain confidential attorney-client communications made for the

6   purpose of giving legal advice.  Nor has he made any challenge to the caselaw cited by Mattel

7   holding that, in general, fee agreements are not privileged under Ninth Circuit law.  That Bryant

8   and MGA are parties to a joint defense agreement does not excuse Bryant from substantiating the

9   underlying claim of attorney-client privilege.  See Griffin v. Davis, 161 F.R.D. 687, 691 (C.D.

10  Cal. 1995).

11          Moreover, MGA, which participated in the meet and confer on this motion and was served

12  with the motion[2], has not made any attempt to substantiate its claim of the attorney-client

13  privilege other than the unsupported assertions in Bryant's privilege log.  Therefore, the claim of

14  privilege is overruled as to privilege log items Nos. 9 and 10 and the documents are ordered

    produced.

15                                  IV. CONCLUSION

16          For the reasons set forth above, Bryant is ordered to produce privilege log items Nos. 9

17  and 10 forthwith.  Mattel's motion for sanctions is denied.

18          Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

19  Master, Bryant shall file this Order with the Clerk of Court forthwith.

20

21  Dated:   June 19, 2007

22                                  /s/Edward A. Infante
                                    _____
23                                  HON. EDWARD A. INFANTE (Ret.)
                                    Discovery Master
24

25

26  _____
        [2] See Mattel's Reply at 1.
27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                    4

EXHIBIT ___22___

PAGE ___274___

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on June 19, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF JANUARY 25, 2007, TO COMPEL PRODUCTION OF DOCUMENTS BY CARTER BRYANT AND FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on June 19, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT ___22___

PAGE ___275___

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On June 20, 2007, I served the following document(s):

**ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO ENFORCE THE COURT'S ORDER OF JANUARY 25, 2007, TO COMPEL PRODUCTION OF DOCUMENTS BY CARTER BRYANT AND FOR SANCTIONS**

by regular **UNITED STATES MAIL** by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for collection and processing of correspondence for mailing. According to that practice, items are deposited with the United States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel:    213/443-3000
Fax:   213/443-3100
Quinn: johnquinn@quinnemanuel.com
Zeller: michaelzeller@quinnemanuel.com

Diana M. Torres
O'Melveny & Myers, LLP
400 S. Hope Street
Los Angeles, CA 90071
Tel:    213/430-6000
Fax:   213/430-6407
Email: dtorres@omm.com

Patricia L. Glaser
Christensen Glaser Fink Jacobs Weil & Shapiro
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Tel:    310/553-3000
Fax:   310/556-2920
Email: pglaser@chrisglase.com

Executed on June 20, 2007, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

EXHIBIT 22

PAGE 276

JULIE A. SELBY

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

395645.01

EXHIBIT 23

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
3   Telephone:  213.629.7400
    Facsimile:   213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                      EASTERN DIVISION

11

12  CARTER BRYANT, an individual,          Case No.  CV 04-09049 SGL (RNBx)

13              Plaintiff,                  Consolidated with
                                           Case No. CV 04-09059
14           v.                            Case No. CV 05-2727

15  MATTEL, INC., a Delaware              **PHASE II DISCOVERY MATTER**
    corporation,
16                                         **ORDER NO. 3, REGARDING:**
             Defendant.
17                                         **(1) MOTION OF MGA
                                           ENTERRTAINMENT, INC.,
18                                         ISAAC LARIAN AND MGA
                                           ENTERTAINMENT (HK)
19                                         LIMITED TO QUASH
                                           NON-PARTY SUBPOENAS; and**
20
                                           **(2) MOTION OF MATTEL, INC.
21                                         TO COMPEL PRODUCTION OF
                                           DOCUMENTS RESPONSIVE TO
22                                         THE SAME NON-PARTY
                                           SUBPOENAS**
23

24  ┌─────────────────────────────┐
    │ CONSOLIDATED WITH
25  │ MATTEL, INC. v. BRYANT and
    │ MGZ ENTERTAINMENT, INC. v.
26  │ MATTEL, INC.
    └─────────────────────────────┘
27

28
ARENT FOX LLP                        1                          ORDER NO. 3
ATTORNEYS AT LAW                                    [Case No. CV 04-09049 SGL (RNBx)]
LOS ANGELES

EXHIBIT ___23___

PAGE ___277___

1   This Order sets forth the Discovery Master's ruling on: (1) the motion of

2   MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Limited

3   (collectively "MGA") to quash certain non-party subpoenas [Docket Number 4779]

4   and (2) the corresponding motion of Mattel, Inc. ("Mattel") to compel production of

5   documents responsive to the same non-party subpoenas [Docket Numbers 4769 and

6   4788] (collectively, the "Motions").

7   The Motions came on regularly for hearing before the Discovery Master on

8   March 4, 2009. All interested parties were represented by counsel and afforded the

9   opportunity to present oral argument on the Motions. The Discovery Master,

10  having considered the papers filed in support of and in opposition to the Motions,

11  and having heard oral argument thereon, rules as set forth below.

12  **I.    INTRODUCTION**

13

14  **A.    The Court's February 11, 2009 Ruling**

15  On February 11, 2009, the Court heard oral argument on various motions

16  filed by the parties. During the proceedings, counsel took the opportunity to orally

17  request clarification by the Court regarding whether the parties' respective motions

18  relating to the subpoenas served by Mattel on various entities allegedly related to

19  MGA (the "Subpoenas") are in any way stayed or precluded by any of the Court's

20  prior orders.

21  In response, the Court stated: "I will instruct the Discovery Master this

22  afternoon, in no uncertain terms, that there is no stay on any discovery related to

23  this case at all." (Reporter's Transcript of Proceedings, February 11, 2009 ["Tr."],

24  99:8 – 10). Counsel for MGA then referred to the fact that the Court had

25  previously declined to allow Mattel to serve certain discovery accompanying

26  Mattel's motion for a receiver and characterized the third-party subpoenas as an

27  attempt to circumvent the Court's ruling. (Tr., 101:12 – 17). In response, the Court

28  stated:

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___23___

PAGE ___278___

Then the question becomes – and this is a question for the Discovery Master, not for this Court – whether or not the discovery is related to Phase 2. If it is, it is. I'm not going to pass any judgment whatsoever. I'm going to leave that completely up to the Discovery Master. ... The question for the [D]iscovery [M]aster will be whether or not the disputed discovery request is related or relevant to the trial that has now been scheduled for March [2010] or not.

(Tr., 101:18 – 22; 103:1 – 3).

The Discovery Master understands the Court's ruling as indicating that, in deciding the motions relating to the Subpoenas, the Discovery Master should consider whether there is a nexus between the information sought by the Subpoenas, on the one hand, and the Phase 2 claims and counterclaims set for trial in March 2010, on the other hand. If the information sought by the Subpoenas is, to use the Court's words, "related to Phase 2" or "related or relevant to the [Phase 2] trial," then that information could potentially be the subject of appropriate discovery requests by Mattel.[1]

**B.      Information Sought By The Subpoenas**

The information sought by Mattel's Subpoenas falls into two broad categories. First, Mattel seeks documents from third parties Omni 808 Investors, LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively, the "Financing Entities") involving, among other things, their internal ownership and operations and their role in providing financing to MGA during the summer of 2008 (the

---

[1] Even prior to the Court's February 11, 2009 ruling, Mattel acknowledged that it had the burden of demonstrating a nexus between the information sought by the Subpoenas and the Phase 2 issues, as demonstrated by Mattel's inclusion of a section in its Motion to Compel summarizing the claims to be adjudicated in Phase 2, (Motion, pp. 5 – 8), and a section arguing that the information sought by the third-party subpoenas is relevant to Mattel's Phase 2 claims, (Id., pp. 18 - 24 and 24 – 25). However, Mattel also argued that the information sought might be appropriate regardless of any nexus to Phase 2. (See id., pp. 14 – 17 [arguing that MGA's prior statements regarding its finances in Phase 1 "opened the door" to discovery on this issue] and id., p. 23 [arguing that the information sought is relevant to MGA's credibility]). Based on the Court's subsequent ruling on February 11, 2009, as well as the Discovery Master's own independent evaluation of those arguments, the Discovery Master concludes, as discussed more fully below, that these arguments are insufficient, standing alone, to justify the non-party discovery Mattel seeks. Rather, Mattel must demonstrate some link between the information sought and the issues to be adjudicated by the Court at the Phase 2 trial.

EXHIBIT ___23___

PAGE ___279___

1   "Financing Discovery"). Based on the information presented at the February 11,

2   2009 hearing and in connection with the pending motions, it does not appear that

3   either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have

4   an ownership interest in the Financing Entities.[2] (*See* Tr., 70:22 – 72:5; 78:9 -25).

5        Second, Mattel seeks documents from third parties IGWT Group, LLC and

6   IGWT 826 Investments, LLC (collectively, the "Transferee Entities") regarding

7   MGA's sale to them of infringing MGA inventory, namely Bratz dolls (the

8   "Transferee Discovery"). MGA does not dispute that the Transferee Entities are

9   owned and/or controlled by Larian. (*See, e.g.,* MGA's Reply in support of its

10   Motion to Quash, at p. 5, fn. 6, where MGA refers to the purchase of Bratz

11   inventory by the Transferee Entities as "Larian's purchase of those . . .

12   products . . . .").[3]

13   **II.**   **MGA's Motion To Quash**

14        Because it could dispose of all outstanding discovery issues related to the

15   Subpoenas, the Discovery Master first addresses MGA's Motion to Quash filed on

16   February 3, 2009.

17       **A.**   **Legal Standard**

18        As the party moving to quash the Subpoenas, MGA bears the burden of

19   satisfying the standard set forth in Rule 45(b), which provides that the court may

20   "quash or modify the subpoena if it is unreasonable and oppressive." (Fed. R. Civ.

21   P. 45(b); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir.

22   2004) ["The moving party has the burden of proof to demonstrate that compliance

23   

---

24   [2] Of course, this is one of the facts Mattel seeks to investigate through the Subpoenas to the Financing Entities. The

25   Discovery Master's ruling denying Mattel's Motion to Compel the Financing Parties to comply with the Subpoenas does not address – and should not be construed as deciding – whether Mattel could, upon establishing a nexus to a

26   legitimate Phase 2 issue, seek to obtain this information from MGA.

     [3] Moreover, MGA does not dispute the assertions made by Mattel in its Motion to Compel at pp. 11– 12, including

27   that Larian created IGWT Group during the Phase 1 trial and registered its place of business as his home address, and that Larian created IGWT 826 Investments the day after the Phase 1 trial ended and registered it at the home address

28   of his sister.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   23

PAGE   280

1   with the subpoena would be unreasonable and oppressive" (internal quotations

2   omitted)]; *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) [The

3   burden of proving that a subpoena is oppressive is on the party moving to quash];

4   *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) [the

5   burden is on the movant to establish that a subpoena duces tecum should be

6   quashed]).  "The burden is particularly heavy to support a 'motion to quash as

7   contrasted to some more limited protection.'"  (*Westinghouse Electric Corp. v. City*

8   *of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965) [denying a motion to quash

9   supported by two affidavits]).

10      **B.     Arguments Made By MGA In Support Of Its Motion To Quash**

11         The sole argument set forth in MGA's Motion to Quash is that the Court's

12  January 7, 2009 order appointing a forensic auditor bars Mattel from seeking the

13  information sought by the Subpoenas.  (*See* MGA's Motion to Quash, pp. 1 - 6).

14  But that argument fails for the reasons set forth above.  The Court made it clear at

15  the hearing on February 11, 2009 that:

16         There is no stay on discovery.  Period. . . . . [The forensic auditor
17         appointed by the Court] is acting at the Court's discretion to
           inform the Court of information. . . . That's an entirely separate
18         matter.  And I have not stayed any discovery and there should be
19         no reliance on that.  If that was misunderstood, it's clarified now.

20  (Tr., 97:15, 98:8 - 9, and 98:13 - 15).

21         Recognizing that its only argument has been rejected by the Court, MGA

22  argues for the first time in its Reply that its Motion to Quash should be granted

23  because the Subpoenas are not relevant to any of Mattel's Phase 2 claims.  (*See*

24  MGA's Reply Brief in Support of the Motion to Quash, pp. 1 and 5 - 12).

25  However, MGA did not make this argument in its opening brief.  It instead declared

26  in its moving papers that whether the Subpoenas are related to any "Phase 2 issues

27  is beside the point."  (*Id.*, p. 5).  Because MGA did not address the relevance of the

28  subject discovery until the filing of its Reply, the Discovery Master declines to

EXHIBIT ___23___

PAGE ___281___

1   consider the argument in connection with the Motion to Quash.

2          The Discovery Master, like the Court,[4] disfavors the insertion of new

3   arguments at the reply stage that could have been raised in the moving papers. A

4   party filing a motion is required to raise all of its arguments in its opening brief to

5   prevent "sandbagging" of the non-moving party and to provide opposing counsel

6   the chance to respond. This rule is routinely adhered to by courts in the Ninth

7   Circuit. (*See, e.g., United States v. Boyce*, 148 F.Supp .2d 1069, 1085

8   (S.D.Cal.2001); *Leick v. Hartford Life and Acc. Ins. Co.*, 2007 WL 1847635 at *1,

9   n. 1 (E.D.Cal. 2007); *Stewart v. Wachowski*, 2004 WL 2980783, at *11 (C.D.Cal.

10  Sept. 28, 2004); *Hamilton v. Willms*, 2007 WL 2558615, *11 (E.D.Cal.2007); *see

11  also United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir.1993); *United States v.

12  Wright*, 215 F.3d 1020, 1030 n. 3 (9th Cir.2000)).

13         Furthermore, MGA will not suffer any prejudice from this decision because

14  the issue it raised in its Reply (i.e., are the Subpoenas seeking information related to

15  any Phase 2 claims) has been fully briefed by the parties and is ruled upon by the

16  Discovery Master in connection with Mattel's Motion to Compel.[5] (*See* Section III

17  below).

18         Accordingly, MGA's Motion to Quash is **DENIED**.

19  //

20  //

21  //

22  //

23

24  [4] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not

25  change [its] ultimate conclusion."

26  [5] That the arguments raised in the Reply are the same as those in MGA's Opposition to the Motion to Compel is conceded by Mattel. Indeed, Mattel admitted in its Request to Consolidate MGA's Motion to Quash and Motion to

27  Compel (which was denied as untimely by the Discovery Master at the hearing on March 4, 2009) that the "MGA Parties' Opposition to Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas .

28  . . makes the same arguments as the MGA Parties' Reply in support of their Motion to Quash." (Mattel's Request to Consolidate MGA's Motion to Quash and Mattel's Motion to Compel, p. 2).

EXHIBIT __23__

PAGE __282__

**III.   Mattel's Motions To Compel**

    **A.   The Purported Procedural Defects Barring Mattel's Motions To Compel**

MGA, the Financing Entities, and the Transferee Entities all argue that that Mattel's Motion to Compel should be denied on several different procedural grounds.

        **1.   The Court's January 7, 2009 Order**

As an initial matter, the Transferee Entities and the Financing Entities repeat the argument made by MGA in its Motion to Quash that the Court's January 7, 2009 Order appointing a forensic auditor barred Mattel from seeking the discovery sought by the Subpoenas. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 3; Transferee Entities' Opposition to Mattel's Motion to Compel at pp. 5 - 7). But that argument fares no better here than it did with respect to MGA's Motion to Quash and is rejected for the reasons discussed in Section II above.

        **2.   Local Rule 37**

The Financing Entities and the Transferee Entities also argue that Mattel's Motion to Compel should be denied because Mattel failed to comply with Local Rule 37 by, among other things, failing to meet and confer and failing to file a joint stipulation. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 1 and 7 - 10; Transferee Entities' Opposition to Mattel's Motion to Compel, p. 2 [referencing Local Rule 37 in passing]). However, Local Rule 37 (as distinguished from Federal Rule 37, which is discussed in subsection 7a, below) does not apply to discovery disputes in this case. Rather, the applicable procedure is the one adopted by the Court in its order appointing a discovery master dated December 6, 2006 ("Discovery Master Order").[6] Because the Discovery Master Order provides that

---

[6] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a discovery master for Phase 2 of this litigation. (*See* Court's Order dated January 6, 2009, p. 2 ["The Discovery Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____23_____

PAGE _____283_____

1   "all third parties subject to discovery requests . . . in this litigation shall be bound

2   by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that

3   order applies to the Financing Entities as well as the Transferee Entities, and its

4   procedures replace those set forth in Local Rule 37. (*Id.*, p. 4).

5   **3.    Local Rule 11-6 And Paragraph 4(b) Of The Court's**

6   **Standing Order**

7        The Financing Entities and MGA further argue that Mattel's Motion to

8   Compel should be denied because it exceeds the page limitations set forth in Local

9   Rule 11-6 and Paragraph 4(b) of the Court's Standing Order. (*See* Financing

10  Entities' Opposition to Mattel's Motion to Compel, p. 9; MGA's Opposition to

11  Mattel's Motion to Compel, pp. 18 - 19). Each of these contentions is unavailing.

12  The Discovery Master Order (not the Local Rules or the Court's Standing Order)

13  governs discovery disputes in this case, and it does not impose any page limit on

14  such motions.[7] In fact, the Discovery Master Order dispenses with the formatting

15  requirements of the Local Rules in certain ways, such as allowing letter briefs, and

16  even permits the parties to agree to alternative procedures, including, presumably,

17  filing briefs that are more than 25 pages in length. (*See* Discovery Master Order, p.

18  4). Thus, while the Discovery Master encourages the parties to be as efficient as

19  possible in their briefing, he recognizes that briefs in excess of 25 pages are either

20  directly permitted under the Discovery Master Order (since no page limitation was

21  imposed by the Court) or implicitly allowed (since the parties may agree to

22  alternate procedures). He further recognizes that the complex nature of this case

23  may periodically necessitate the filing of briefs that exceed 25 pages.[8] For all of

24

25  [7] Even assuming the 25 page limitation for briefs did apply, Mattel had the option of filing separate motions to
    compel for each of the subpoenas at issue and could have easily extended the page limitation well beyond the 30
26  pages it filed in connection with its combined motion that addressed multiple subpoenas propounded on the
    Transferee Entities and the Financing Entities.

27  [8] In fact, the parties to this lawsuit have filed multiple discovery motions in this case that contained more than 25
    pages. (*See* Supplemental Declaration of Jon D. Corey in Support of Mattel, Inc.'s Reply in Response to The MGA
28  Parties' Opposition to Motion to Compel, ¶ 7).

EXHIBIT __23__

PAGE __284__

1    these reasons, filings in excess of 25 pages are permitted.[9]

2            **4.**     **Local Rule 6-1**

3         The Financing Entities argue in passing that Mattel's motion to compel

4    should be denied because it violates Local Rule 6-1. (Financing Entities'

5    Opposition to Mattel's Motion to Compel, p. 6).   However, the Discovery Master

6    Order adopts a completely different set of deadlines than the Local Rules for the

7    filing of motions, oppositions and replies, and a different schedule for noticing

8    hearing dates. (Discovery Master Order, p. 4).  Therefore, Local Rule 6-1 has no

9    applicability here.

10            **5.**     **Failure To Name MGA In The Motion To Compel**

11         MGA next argues that Mattel's motion to compel is procedurally improper

12    because MGA was not named in the Motion to Compel and Mattel should not be

13    allowed to respond to MGA's objections.   (MGA's Opposition to Mattel's Motion

14    to Compel, p. 18).  But MGA has cited no legal authority, and the Discovery

15    Master has found none, standing for the proposition that a party must name in its

16    motion to compel all parties who have objected to an underlying subpoena even if

17    they are not actually the target of the subpoena.  In fact, the contention that Mattel's

18    Motion to Compel should have been brought against MGA makes no sense given

19    that it could not possibly comply with any order compelling a response to the

20    Subpoenas.

21            **6.**     **Mattel's Separate Statement**

22         MGA also contends that Mattel's Motion to Compel should be denied

23    because its' separate statement "is another classic example of . . . inefficiency."

24    (*Id.*, p. 19).  Once again, nothing in the Discovery Master Order prevents a party

25    from filing a separate statement that first identifies the request in dispute and then

26

27    _____

28    [9] In the event the length of briefs ever becomes excessive, the Discovery Master will issue an order setting a specific page limitation.

- 9 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____23_____

PAGE _____285_____

1  sets forth the various contentions of the parties, even if the information regarding

2  the various requests happens to be repetitive.  Regardless, MGA has not cited any

3  legal authority in support of its position and the Discovery Master finds no reason

4  to dispose of Mattel's Motion to Compel merely because it filed a separate

5  statement that contains duplicative arguments.[10]

6  **7.   Meeting And Conferring**

7      As their final procedural argument in opposition to the Motion to Compel,

8  the Transferee Entities and the Financing Entities assert that the motion should be

9  denied because Mattel failed to adequately meet and confer prior to filing the

10  motion. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 7 - 8;

11  Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).

12  **a.   Applicable Procedure**

13      Prior to filing its motion to compel, Mattel had an obligation to comply with

14  both the Federal Rules of Civil Procedure and the Discovery Master Order.  Federal

15  Rule of Civil Procedure 37(a) expressly requires that a party filing a motion to

16  compel discovery first meet and confer in "good faith."  (Fed. R. Civ. Proc. 37(a)).

17  Similarly, the Discovery Master Order states that unless an "alternative procedure"

18  is agreed upon or otherwise ordered by the Discovery Master, the

19      moving party shall first identify each dispute, state the relief
20  sought, and identify the authority supporting the requested relief
   in a meet and confer letter that shall be served on all parties by
21  facsimile or electronic mail.  The parties shall have five court
   days from the date of service of that letter to conduct an in-person
22  conference to attempt to resolve the dispute.  If the dispute has
   not been resolved within five court days after such service, the
23  moving party may seek relief from the Discovery Master by
   formal motion or letter brief . . .

24  (Discovery Master Order, p. 4).

25  //

26

27

28

[10] The Discovery Master notes that where there are numerous discovery requests in dispute he would prefer for a separate statement to be submitted by the moving party.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -   ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 23
PAGE 286

1                 **b.**     **Mattel's Meet And Confer Regarding The Financing**

2                        **Entities**

3         In challenging Mattel's meet and confer effort, the Financing Entities first

4 claim that Mattel violated the Discovery Master Order because no "in-person

5 meeting occurred." (Financing Entities' Opposition to Mattel's Motion to Compel,

6 p. 8). But that argument is without merit, since Mattel and the Financing Entities

7 agreed to an alternative procedure that disposed of the in-person meet and confer

8 requirement.[11] Indeed, MGA's counsel sent counsel for Mattel, counsel for the

9 Transferee Entities and counsel for the *Financing Entities* a letter on January 23,

10 2009 memorializing the parties' agreement and establishing a schedule whereby the

11 parties would "meet and confer on January 29 and 30 . . ." (Mattel's Reply in

12 Support of its Motion to Compel filed on February 13, 2009, pp. 9 - 10;

13 Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply to the

14 Motion to Compel filed on February 13, 2009, ¶ 4 and Ex. 2). That the Financing

15 Entities' counsel received this letter and acted in accordance with its terms is

16 evidenced by, among other things, the fact that they served objections to the

17 Subpoenas on January 28, 2009 (which was the deadline specified in the January 23

18 letter) and started meeting and conferring with Mattel's counsel telephonically on

19 January 30. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 3

20 and 4). Accordingly, Mattel did not have any obligation to meet with the Financing

21 Entities in person since the parties had agreed to waive that obligation.

22         Nevertheless, Mattel still had an obligation to meet and confer with the

23 Financing Entities in good faith. Good faith cannot be shown merely through

24 perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a genuine

25 attempt to resolve the discovery dispute through non-judicial means. (Fed. R. Civ.

26    [11] To promote efficiency and minimize the necessity for counsel to travel between their respective offices, the

27 Discovery Master shall deem Paragraph 5 of the Discovery Master Order (mandating that the parties have an in person conference to attempt to resolve discovery disputes) to be sufficiently satisfied if the parties and non-parties involved in a discovery dispute meet and confer telephonically or by video conference. However, the Discovery

28 Master emphasizes that this accommodation in no way lessens the parties' obligation to meet and confer in good faith.

- 11 -        ORDER NO. 3
                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   23

PAGE   287

1   Proc. 37(a)(1)).

2        Because the evidence and declarations submitted by Mattel and the Financing

3   Entities are in conflict regarding what transpired during their respective meet and

4   confer communications, (*Cf.* Financing Entities' Opposition to Mattel's Motion to

5   Compel, pp. 3 – 5; Mattel's Reply Brief in Support of its Motion to Compel filed on

6   February 13, 2009, pp. 9-10), the Discovery Master gives Mattel the benefit of the

7   doubt and concludes that it adequately met and conferred with respect to Omni 808

8   Investors, LLC and Vision Capital, LLC.

9        By contrast, Mattel arguably did not even begin the meet and confer process

10  with OmniNet Capital, LLC prior to filing its motion to compel, because counsel

11  for the Financing Entities informed Mattel that they did not receive that Subpoena

12  until the afternoon of February 2, 2009 and filed objections to the Subpoena on that

13  date. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 5). No

14  "good faith" meeting could therefore have taken place.

15       Although the meet and confer with respect to OmniNet Capital, LLC was

16  inadequate, the Discovery Master will nonetheless address the merits of Mattel's

17  Motion to Compel in all respects, including concerning the Subpoena served on

18  OmniNet Capital, LLC. The Discovery Master does so for purposes of efficiency

19  (i.e., the issues to be decided regarding the subpoena served on OmniNet Capital,

20  LLC are essentially identical to those that must be addressed in connection with the

21  subpoenas served on Omni 808 Investors, LLC and Vision Capital, LLC) and

22  because addressing the merits of the motion does not alter the outcome.[12]

23              c.      **Mattel's Efforts To Meet And Confer Regarding The**

24                      **Transferee Entities**

25       Like the Financing Entities, the Transferee Entities contend that Mattel's

26  motion to compel should be denied because it did not meet and confer in good faith.

27

28

---

[12] As noted above, the parties are admonished to abide by the provisions of the Discovery Master Order requiring a good faith attempt to meet and confer regarding discovery disputes prior to the filing of any discovery motion.

EXHIBIT ___23___

PAGE ___288___

1   (Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5). Yet, the

2   Transferee Entities concede that their counsel engaged in multiple meet and confer

3   teleconferences.   (*Id.* at pp. 3 - 4).   Several emails and letters were also exchanged

4   between the parties as part of the meet and confer process.   (*Id.*).   In light of these

5   interactions, the Discovery Master again gives Mattel the benefit of the doubt in

6   favor of resolving the issues on the merits and concludes that it adequately met and

7   conferred with the Transferee Entities.

8          **B.     Legal Standard Governing Enforcement Of The Subpoenas**

9          Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil

10  actions of "any matter, not privileged, which is relevant to the subject matter

11  involved . . .. The information sought need not be admissible at the trial if the

12  information sought appears reasonably calculated to lead to the discovery of

13  admissible evidence." Rule 26(b) is liberally interpreted to permit wide-ranging

14  discovery of all information reasonably calculated to lead to discovery

15  of admissible evidence; but the discoverable information need not be admissible at

16  the trial. (*Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248,

17  250 (D.Kan.1993)).

18         The broad scope of discovery described in subsection (b)(1) is tempered by

19  provisions protecting the responding party from undue burden.  Rule 26(b)(2)

20  provides that the frequency or extent of discovery otherwise allowed by the Rules

21  must be limited if the court determines that "(i) the discovery sought is

22  unreasonably cumulative or duplicative, or is obtainable from some other source

23  that is more convenient, less burdensome, or less expensive; (ii) the party seeking

24  discovery has had ample opportunity by discovery in the action to obtain the

25  information sought; or (iii) the burden or expense of the proposed discovery

26  outweighs its likely benefit, taking into account the needs of the case, the amount in

27  controversy, the parties' resources, the importance of the issues at stake in the

28  litigation, and the importance of the proposed discovery in resolving the issues."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT      23

PAGE      289

1      Moreover, the Federal Rules distinguish between discovery from non-parties

2   to a lawsuit (governed under Rule 45) and discovery from parties (governed

3   generally by Rule 26), based in part on the recognition that the former is inherently

4   more burdensome and less convenient than the latter. (*See, e.g., Solarex v. Arco*

5   *Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) [The status of a non-party is

6   significant when determining whether compliance with a discovery demand would

7   constitute an undue burden]; *Katz v. Batvia Marine and Sporting Supplies, Inc.*, 984

8   F.2d 422, 424 (Fed. Cir. 1993) [The fact that discovery is sought from a non-party

9   is one factor that the Court may weigh in determining whether the discovery

10   requested is necessary, relevant, or burdensome]. Courts applying Rules 26 and 45

11   have interpreted these rules to afford non-parties special heightened protection

12   against burdensome discovery. (*See, e.g., Exxon Shipping Co. v. U.S. Dept of*

13   *Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

14      Accordingly, requests for documents that pertain to a party and that can be

15   more easily and inexpensively obtained from that party also impose an undue

16   burden. (*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)).

17   Further, if the documents sought are neither relevant nor calculated to lead to the

18   discovery of admissible evidence, "then any burden whatsoever imposed upon the

19   non-party would be by definition undue." (*Compaq Computer Corp. v. Packard*

20   *Bell Electronics, Inc.*, 163 F.R.D. 329, 335-336 (N.D.Cal. 1995)).

21      Each of the moving parties bears the burden of establishing the basis for the

22   relief it seeks. As the party moving to compel compliance with the Subpoenas,

23   Mattel bears the burden of "establishing that the information sought is relevant and

24   necessary to its lawsuit." (*Cytodyne Technologies, Inc. v. Biogenic Technologies,*

25   *Inc.*, 216 F.R.D. 533, 534 (M.D.Fla. 2003)).

26      Finally, in deciding whether to enforce a subpoena, the Discovery Master

27   must balance "the relevance of the discovery sought, the requesting party's need,

28   and the potential hardship to the party subject to the subpoena." (*Heat & Control,*

EXHIBIT ___23___

PAGE ___290___

1   *Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986) citing

2   *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560, 564 (7th Cir.1984)).

3       **C.   Mattel's Contention That MGA Has Placed Its Finances At Issue**

4         As its first ground for moving to compel production of the documents sought

5   by the Subpoenas, Mattel argues that MGA has misrepresented its finances, thereby

6   making it necessary and appropriate for Mattel "to obtain an accurate understanding

7   of MGA's and Larian's finances." (Motion to Compel, p. 14). According to

8   Mattel, MGA's supposed misrepresentations have placed its financial condition at

9   issue, and have opened the door to discovery of any information bearing on MGA's

10   finances.   (*Id.* ["Discovery on MGA's financials is amply warranted by MGA's

11   own statements *alone.*"] (emphasis added)).

12         However, after Mattel filed its Motion, the Court made it clear that the

13   validity of the Subpoenas must be evaluated with reference to whether they relate to

14   the matters to be adjudicated in Phase 2.   As the Discovery Master understands the

15   Court's ruling, the Subpoenas cannot be justified merely because they seek

16   information regarding some contention made during Phase 1, without regard to

17   Phase 2. In other words, putting a fact at issue in Phase 1, cannot, standing alone,

18   suffice to render that fact the proper subject of discovery in Phase 2.

19         Thus, to the extent Mattel's first argument asserts that MGA's statements,

20   standing alone, warrant discovery from the Subpoena recipients, that argument is

21   rejected.  Rather, the Discovery Master will evaluate whether discovery of MGA's

22   finances is warranted in light of the issues to be adjudicated in Phase 2.

23         Further, even if Mattel were not required to demonstrate some nexus between

24   the Subpoenas and the issues to be adjudicated in Phase 2, the argument that the

25   Subpoenas are justified because MGA placed its financial condition at issue would

26   still fail for the simple reason that Mattel is not seeking discovery from MGA but

27   rather *non- parties*.  Mattel does not cite any statements or conduct by the

28   //

EXHIBIT _____23_____

PAGE _____291_____

1      Financing Entities putting their financial affairs at issue in this litigation.[13]

2  Rather, Mattel argues that the statements and conduct of *MGA* should be attributed

3  to the Financing Entities and construed as their consent to discovery of their

4  internal financial affairs.  Such an assumption is unwarranted.

5      **D.**    **Mattel's Contention That The Subject Discovery Is Relevant To**

6          **Phase 2**

7          **1.**    **Subpoenas To The Financing Entities**

8      Mattel next argues that the Subpoenas to the Financing Entities seek

9  information relevant to a variety of Phase 2 issues.[14]

10         **a.**    **Mattel's RICO Counterclaim**

11     Mattel first asserts in its Motion to Compel that the discovery it seeks is

12 relevant to its RICO counterclaim because "Mattel alleges that the counter-

13 defendants have operated a widespread criminal enterprise that has engaged in

14 numerous acts of mail and wire fraud and other predicate acts in violation of the

15 RICO statute" and that "MGA's mid-trial transactions with Omni 808 and the other

16 non-operating entities" is "a continuation of that pattern of racketeering activity."

17 (Motion, p. 18).

18

19 [13] In its Reply to the Financing Entities' Opposition to its Motion to Compel, Mattel argues that the Financing

20 Entities (referred to by Mattel as the "Omni Parties") have injected themselves into the litigation because one of them, Omni 808 Investors, LLC, applied to intervene. (Reply, p. 8).  However, a decision on that application has

21 been deferred by the Court, (Tr., 80:15 – 17), and therefore Omni 808 Investors, LLC and the other Financing Entities remain outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-parties.

22 [14] Mattel argues in one of its reply briefs filed on February 25, 2009 that the Discovery Master should strike MGA's

23 Opposition to the Motion to Compel because: (1) MGA indicated that it would not be filing an Opposition and (2) the Opposition was filed a week late. (*See* Mattel's Reply in Response to MGA's Opposition to the Motion to

24 Compel, p. 4).  The Discovery Master declines that request.  The assertion that MGA would not file an Opposition is based on an alleged oral conversation which counsel for Mattel apparently did not confirm in writing. (*See*

25 Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply in Response to MGA's Opposition to the Motion to Compel, ¶ 4).  Even assuming such a statement had been made, MGA was entitled to change its mind.  As

26 for Mattel's argument that the Opposition was untimely, the Discovery Master notes that he was only recently appointed.  This fact combined with the backlog of discovery motions may have resulted in some confusion as to

27 when various briefs were due to be filed.  The Discovery Master prefers to address issues on the merits and declines to strike the Opposition as untimely.  Notwithstanding the foregoing, the Discovery Master urges the parties to

28 strictly comply with the briefing schedule set forth under the Discover Master Order for all future discovery motions unless an alternative procedure is agreed upon by the parties and approved by the Discovery Master or the Court.

EXHIBIT ___23___

PAGE ___292___

1    But Mattel's allegations in support of its RICO counterclaim turn on

2    misappropriation of trade secrets and confidential information, and make no

3    mention of improper transfers of funds or any other predicate act similar to MGA's

4    purported business transactions with any of the Financing Entities.[15]  Accordingly,

5    these financial transactions are not a "continuation" of the "pattern" of conduct

6    Mattel alleges in very precise detail in its RICO counterclaim.  (*Asdourian v.*

7    *Konstantin*, 77 F. Supp. 2d 349, 358 (E.D.N.Y. 1999) [cited by Mattel and stating

8    RICO claimant must show "[a]n interrelationship between acts, suggesting the

9    existence of a pattern, [which] may be established...[by] proof of their temporal

10   proximity, or common goals, or similarity of methods, or repetitions' (citation

11   omitted)]; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989) [RICO claims

12   must be supported by a "pattern" of activity and "the mere fact that there are a

13   number of predicates is no guarantee that they fall into any arrangement or order.

14   A pattern is not formed by sporadic activity ...  Instead, the term 'pattern' itself

15   requires the showing of a relationship between the predicates" (quotations and

16   internal citations omitted)]).

17        At this stage, Mattel has failed to demonstrate a relationship between the

18   predicate acts alleged by Mattel in its Counterclaims – which were bound together

19   by a purported scheme to misappropriate Mattel's trade secrets – and the

20   //

21   //

22   //

23   ---

[15] *See* Mattel's Second Amended Answer and Counterclaims ("Counterclaims"), p. 55-62, ¶ 90 [alleging the MGA
24   Parties and other counter-defendants "for the purpose of executing and attempting to execute the scheme to
improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information" committed
25   various predicate acts], ¶ 91 [alleging the MGA Parties and other counter-defendants "shared the common purpose of
enabling MGA to obtain confidential, proprietary and otherwise valuable Mattel property through improper means in
26   order to assist MGA in illegally competing with Mattel"], ¶ 92 [alleging the enterprises are continuing enterprises
because they are "designed to and did unlawfully acquire the confidential business information and property of
27   Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and
business methods, practices, and processes"], ¶ 93(a) [alleging mail fraud committed in furtherance of scheme to
28   "defraud Mattel of its confidential trade secret information and property"], ¶ 93(b) [alleging wire fraud "defraud
Mattel of its confidential trade secret information and property"], and ¶ 102 [the MGA Parties and other counter-
defendants "schemed to defraud Mattel and steal its property and trade secret information"].



EXHIBIT ___23___

PAGE ___293___

1    transactions Mattel seeks to investigate here.[16]

2         Also, the RICO counterclaim (like the other counterclaims to be adjudicated

3    in Phase 2) was asserted in July, 2007 – more than a year before either Omni 808

4    Investors, LLC or Vision Capital, LLC came into existence – and therefore

5    apparently did not encompass the activities of those entities or the transactions

6    which are the subject of the Financing Discovery.  While that fact might be

7    overcome by a showing that the Financing Entities were created or used to further a

8    scheme to carry on misconduct that is the subject of Phase 2, Mattel did not

9    demonstrate that such is the case in its briefs and supporting evidence.

10        In sum, absent some argument or evidence demonstrating a nexus between

11   the predicate activities alleged in the RICO counterclaim, on the one hand, and the

12   transactions and other matters which are the subject of the Financing Discovery, on

13   the other hand, there has been no showing by Mattel that the Subpoenas to the

14   Financing Entities are reasonably calculated to lead to the discovery of admissible

15   evidence regarding the RICO counterclaim.

16              **b.    Mattel's Disgorgement Remedy**

17        Next, Mattel asserts that the Subpoenas to the Financing Entities seek

18   information relevant to its remedy of disgorgement, which is an available remedy

19   for Mattel's Phase 2 counterclaim for misappropriation of trade secrets.  Mattel

20   argues:

21

22   _____

     [16] This conclusion is consistent with the case cited by Mattel – *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372

23   (W.D.N.Y. 2006).  There, the plaintiffs "asserted broad civil RICO claims against the Nicolo defendants predicated,
     among other violations, upon alleged money  laundering violations.  Specifically, the Complaint alleges that the

24   Nicolo defendants and the other named defendants constituted an enterprise as defined in the RICO statute that was
     engaged in a pattern of racketeering activity, including mail and wire fraud and, more importantly for purposes of

25   this motion, money laundering." (*Id.*, at 375).  "The alleged money laundering consisted of repeated deposits into
     various financial institutions in order both to promote and carry on the unlawful activity – that is, by paying and

26   depositing kickbacks to certain members of the enterprise – and to conceal and attempt to conceal the proceeds, their
     nature, source and location – that is, by transferring funds between defendants and between various accounts

27   maintained by those defendants." (*Id.* [emphasis added]).  Thus, inquiry into the defendants' finances was
     appropriate as it was likely to reveal activity related to the alleged predicate acts.  Here, on the other hand, Mattel has

28   not alleged any sort of financial scheme which would support inquiry into the MGA Parties' financial transactions
     with third parties.

EXHIBIT ___23___

PAGE ___294___

1
2
3
4
5
6

> For purposes of establishing disgorgement, Mattel must take into account money transferred from MGA and Isaac Larian, regardless of the manner in which it was transferred. Mattel is entitled to discovery that shows all assets siphoned from MGA or Isaac Larian . . . . By these subpoenas, Mattel seeks evidence to prove the amount the defendants must disgorge. Money that properly belonged to Mattel was transferred from MGA or Isaac Larian to an entity controlled by them.

7    (Motion, pp. 20:1 – 4, 21:12 – 14).

8        While the foregoing statements may be true as a general proposition, none of

9    the Financing Entities is alleged to have "received money that properly belonged to

10   Mattel." To the contrary, Mattel asserts that the Financing Entities are creditors of

11   MGA. Therefore, Mattel has not demonstrated how any of the categories of

12   documents sought from the Financing Entities would aid it in ascertaining the

13   amount defendants must disgorge.

14                c.      **Phase 2 Damages**

15       Mattel's third argument in favor of enforcement of the Subpoenas is that they

16   "seek documents relevant to MGA's financial condition" and other "factors

17   relevant to an award of punitive damages." (Motion to Compel, p. 21:19 – 22).

18   Depending on the particular scope of the document request, such discovery from

19   Omni 808 Investors, LLC may be appropriate in connection with Phase 2 because

20   any information evidencing MGA's indebtedness to Omni 808 Investors, LLC from

21   the purchase of the alleged Wachovia debt or direct loans to MGA is relevant to

22   MGA's net worth (and hence punitive damages).[17] As the Court noted in its

23   February 11, 2009 ruling:

24       I can see tremendous overlap between, for example, discovery on

25
26
27
28

---

[17] The Discovery Master's analysis is fundamentally different for OmniNet Capital, LLC and Vision Capital, LLC because neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc. (Motion to Compel, pp. 9 and 10). To the contrary, Mattel concedes that "OmniNet [Capital, LLC] is not the secured party, and thus presumably not the actual debt purchaser/lender. Rather, the company holding the security interest is Omni 808 [Investors, LLC] . . . [which] appears to be owned funded by a company called Vision Capital, LLC." (Id.) Because it admits that OmniNet Capital, LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to show that the information sought from those entities has any bearing on MGA's financial condition.

EXHIBIT ___23___

PAGE ___295___

1    financial condition of the company as it relates to damages in the
     Phase 2 and also issues that the receiver is looking at.  And
2    without making a ruling on any of this, I would not suggest for a
     moment that these are mutually exclusive categories.

3    (Tr., 101:3 - 8)

4        Mattel argues that the necessary connection between the Financing

5    Discovery and Phase 2 damages exists because the Financing Entities have acquired

6    a security interest in MGA's assets, which, in turn, affects MGA's financial

7    condition.  Specifically, Mattel argues that Omni 808 Investors, LLC is:

8
         directly involved in providing funding to MGA in exchange for a
9        security interest.  Such funding, and security interests, are in and
         of themselves directly relevant to the financial condition of the
10       MGA Parties, including the amount of the security interests, the
         terms and conditions of the funding, and the rate of funding. . . .
11

12   (Motion to Compel, p. 22: 13 – 17).

13       The Discovery Master agrees that such limited information, as it relates to

14   the purchase by Omni 808 Investors, LLC of the debt obligation previously held by

15   Wachovia Bank, is reasonably calculated to lead to the discovery of admissible

16   evidence concerning Phase 2 issues, including the calculation of MGA's net worth

17   for purposes of calculating punitive damages.[18]  Accordingly, Mattel's motion to

18   compel responses from Omni 808 Investors, LLC is granted with respect to

19   documents relating to (1) the existence of any debt owed by MGA Entertainment,

20   Inc. to Omni 808 Investors, LLC and (2) any communications between Omni 808

21   Investors, LLC and the MGA parties regarding any such indebtedness.

22       The problem, however, is the vast majority of the document requests set forth

23   in the Subpoena propounded on Omni 808 Investors, LLC are not narrowly tailored

24   to obtain information demonstrating the amount and nature of MGA's indebtedness

25   (and hence net worth) or communications regarding any such debt,[19] but instead

26   _____
     [18] During oral argument, counsel for MGA represented (and counsel for Mattel seemed to agree) that the Court
27   deferred discovery regarding the Wachovia debt until the middle of the Phase I trial.  (Reporter's Transcript of
     Proceedings, March 4, 2009, pp. 72, 85 and 86).  The extent to which that damages information was obtained directly
28   from Wachovia, as opposed to MGA, is not clear from the record provided to the Discovery Master.

     [19] Nor did Mattel move to compel MGA to produce this information in the first instance.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -                        ORDER NO. 3
                             [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____23_____

PAGE _____296_____

1     would require the Financing Entities to produce virtually every document in their

2     possession regarding their formation, operations, and history of transactions.

3     Among other things, the Subpoenas to the Financing Entities seek:

4        •    All records that "substantiate transfers of assets" by the Financing

5            Entities "to other entities, individuals, and/or parties, within the U.S.

6            and outside of the U.S." (Exhibits 27-29 to Supplemental Declaration

7            of Jon D. Corey In Support Of Mattel, Inc.'s Reply In Support Of

8            Motion To Compel Production of Documents Responsive to Third-

9            Party Subpoenas, Attachment A, ¶ 16);

10        •    All documents "detailing or setting forth the relationship" between

11            each of the Financing Entities and other non-parties (*Id.* at ¶¶ 6-10);

12        •    All documents referring or relating to the "all contributions, loans and

13            any sources of funding" for the Financing Entities (*Id.* at ¶ 13);

14        •    All documents referring or relating to the "source of funding" of other

15            non-parties (*Id.* at ¶ 16);

16        •    All documents showing detail of "all loan facilities" referring or

17            relating to the Financing Entities and other non-parties (*Id.* at ¶ 14);

18        •    All documents referring or relating to "transactions involving any

19            compensation, loans, advances, payments, fees or any other form of

20            consideration" paid to other non-parties (*Id.* at ¶ 15);

21        •    All "communications" referring or relating to the Financing Entities

22            and other non-parties (*Id.* at ¶ 17).

23       Accordingly, the Discovery Master concludes that most of the categories of

24     documents in the Subpoenas are overbroad and not reasonably calculated to lead to

25     the discovery of admissible evidence with respect to Phase 2 issues, as detailed in

26     Section IV below (entitled "Disposition").

27     //

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _23_

PAGE _297_

1

### d.   Credibility Of MGA Witnesses

2    Mattel's fourth argument consists of a single, conclusory paragraph asserting

3    that it is entitled to its discovery in order to determine the credibility of MGA's

4    witnesses.  To support this argument, Mattel first states that information is

5    discoverable "if it relates to 'the credibility of any witness.'" (Motion to Compel,

6    p. 23 (citing *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.,* 175 F.R.D.

7    646, 650 (C.D. Cal. 1997)).[20]  Next, Mattel asserts that "MGA and Larian made

8    statements under oath about their financial condition as well as about the role of

9    Omni 808 and the other non-operating entities in providing MGA with additional

10   funding." (*Id.*)  But that is the full extent of Mattel's argument.  Mattel does not

11   attempt to show that the specific discovery that it has propounded is reasonably

12   calculated to lead to the discovery of the evidence that it contends would be

13   admissible.

14   Discoverable information generally includes evidence relevant to the

15   credibility of a party or a key witness. (See *Paulsen v. Case Corp.,* 168 F.R.D. 285,

16   287-288 (C.D. Cal. 1996); see also *Ragge v. MCA/Universal Studios,* 165 F.R.D.

17   601, 603-604 (C.D. Cal. 1995); *U.S. v. City of Torrance,* 164 F.R.D. 493, 495 (C.D.

18   Cal. 1995)).  If Mattel's discovery were reasonably calculated to lead to the

19   discovery of such information, then it might be permissible. (*Id.* ["Rule 26 is

20   liberally interpreted to permit wide ranging discovery of all information reasonably

21   calculated to lead to discovery of admissible evidence."])  But Mattel has not taken

22   any steps to connect its discovery to such evidence.  As discussed above, Mattel

23   bears the burden of demonstrating that its discovery is reasonably calculated to lead

24   to the discovery of admissible evidence.  Here, Mattel has only stated that

25   credibility evidence can be admissible and that credibility is at issue in this case –

26   without referring at all to specific categories of documents in the Subpoenas or

27

28   [20] The Discovery Master notes that the case cited by Mattel does not actually discuss or apply this proposition.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____23_____

PAGE _____298_____

1    linking those categories of documents to prior or anticipated testimony of MGA's

2    witnesses. Simply stating that credibility evidence is discoverable does nothing

3    toward meeting Mattel's burden to demonstrate that the particular discovery at issue

4    here is reasonably calculated to lead to the discovery of such evidence.

5                          e.    MGA's Unclean Hands

6         Mattel next argues in its Motion to Compel that MGA has asserted an

7    unclean hands defense in response to Mattel's Phase 2 claims, and consequently

8    Mattel is entitled to discover whether the MGA Parties are currently "engaging in

9    sham and fraudulent financial transactions such as concealing profits" to preclude

10   MGA "from invoking the unclean hands defense themselves." (Motion, pp. 23 -

11   24.)  But this argument does not apply to the Financing Entities because, as

12   discussed above, Mattel does not claim that the Financing Entities have "received

13   money that properly belonged to Mattel" or otherwise used those entities to conceal

14   profits.  To the contrary, Mattel asserts that the Financing Entities are creditors of

15   MGA.

16        Regardless, Mattel's theory is that, even if Mattel has unclean hands, MGA

17   may not assert that defense unless MGA itself is blameless.  (*Id.*, at 24 [a "party

18   asserting an equitable defense, however, must itself have 'clean hands.'"]).

19   Mattel's statement of the law is correct as far as it goes. But, as the Ninth Circuit

20   has stated, "'unclean hands does not constitute 'misconduct in the abstract,

21   unrelated to the claim to which it is asserted as a defense.'" (*Jarrow Formulas, Inc.

22   v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)).  "It is fundamental to

23   [the] operation of the doctrine that the alleged misconduct . . . relate directly to the

24   transaction concerning which the complaint is made." (*Dollar Sys., Inc. v. Avcar

25   Leasing Sys., Inc.* 13 F.2d 165, 173 (9th Cir. 1989)). Accordingly, courts will not

26   allow discovery based on an unclean hands defense where the "allegations of

27   misconduct do not relate to the transactions... forming the basis for the

28   []complaint." (*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D.Cal.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___23___

PAGE ___299___

1    1996)).

2       Here, Mattel does not link any of the categories of documents referenced in

3    the Subpoenas (which involve the creation and operation of the Financing Entities

4    beginning with their formation in the summer of 2008) to any of the conduct at

5    issue in Phase 2 (which involves such matters as the alleged theft of trade secrets in

6    Mexico in 2004 and other conduct unrelated to the relationship between the

7    Financing Entities and MGA).  Accordingly, the Financing Discovery is not

8    reasonably calculated to lead to the discovery of admissible evidence regarding

9    MGA's alleged unclean hands in connection with the matters to be adjudicated in

10    Phase 2.

11                 **f.**     **Mattel's Unfair Competition Counterclaim**

12       As Mattel acknowledges, California's Unfair Competition Law, Business &

13    Professions Code §§ 17200 et seq. (the "Unfair Competition Law") encompasses

14    "'anti–competitive business practices as well as injuries to consumers, and has as a

15    major purpose the preservation of fair business competition.'"  (Opp. at 24:25 –

16    25:2, quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone*

17    *Co.* (1999) 20 Cal.4th 163, 180)).  However, Mattel's papers do not sufficiently

18    demonstrate that the documents sought from the Financing Entities involve "anti-

19    competitive business practices," "injuries to consumers," or anything affecting

20    consumers or the public at all.  Instead, Mattel simply asserts, without any

21    supporting analysis, that MGA has violated the Unfair Competition Law by

22    "manipulating the sources of [its own] funding" (presumably the Financing

23    Entities).  That allegation, even if true, does not appear to involve the "unlawful,

24    unfair or fraudulent" marketing or sale of anything and therefore does not fall

25    within the ambit of the Unfair Competition Law.

26    //

27    //

28    //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 23 _____

PAGE _____ 300 _____

1
2
3

        g.    **Summary Of The Discovery Master's Findings With Respect To The Subpoenas Directed To The Financing Entities**

4   For the foregoing reasons, the Discovery Master finds that, based on the

5   record before him, Mattel has failed to sufficiently articulate the necessary

6   connection between most of the Financing Discovery and any Phase 2 issue.

7   Moreover, while there is a connection between the Financing Discovery and some

8   of the Phase 2 issues referenced (i.e., MGA's financial condition and its bearing on

9   Mattel's claim for punitive damages), Mattel has failed to demonstrate that the

10   Subpoenas meet the standard set forth in Rule 26(b)(2) and that all of the requested

11   discovery is permissible in light of the case law interpreting Rules 26 and 45.

12   Accordingly, Mattel's motion to compel the Financing Entities to comply

13   with the Subpoenas is **GRANTED** in part and **DENIED** in part.

14           2.    **Subpoenas To The Transferee Entities**

15   In their briefs regarding the enforceability of the Subpoenas, Mattel and

16   MGA do not, as a general rule, make a distinction between the Financing Entities

17   and the Transferee Entities, but rather direct the same arguments to both groups

18   collectively.  However, there are important distinctions between the two groups,

19   including, without limitation, that: (1) the Transferee Entities appear to be affiliated

20   with – if not wholly owned by – Larian; (2) the Transferee Discovery involves the

21   sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest

22   pursuant to the Court's December 3, 2008 ruling; and (3) the Subpoenas seek some

23   documents relevant to Phase 2 issues which presumably cannot be obtained from

24   MGA, namely the Transferee Entities' contracts with, and records of sales to, third

25   parties purchasing the Bratz products.  Accordingly, in ruling on the Subpoenas

26   directed to the Transferee Entities, the Discovery Master's analysis of certain of the

27   parties' above-referenced arguments differs, as follows.

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____23_____

PAGE _____301_____

### a. Non-Party Considerations

To begin with, the distinction between a party and non-party here is less compelling given the MGA parties' apparent admission that the Transferee Entities are single purpose entities created and controlled by Larian (who is, of course, himself a party) to dispose of inventory that is the subject of this litigation. Further, the MGA parties presumably do not have custody of the sales contracts whereby IGWT Group LLC sold Bratz products to third parties. The Discovery Master also notes that counsel for the Transferee Entities has submitted a declaration stating that there are "hundreds of sales contracts at issue, and as such, thousands of documents responsive to Mattel's requests." (Declaration of Jeffrey B. Valle dated February 17, 2009 ["Valle Decl."], ¶ 7). The unavailability of these relevant documents from any other source weighs heavily in favor of enforcing the Subpoena to IGWT Group LLC.

### b. Relevance To Phase 2 Issues

#### 1. Phase 2 Damages

As mentioned above, Mattel argues that the Subpoenas "seek documents relevant to MGA and Larian's financial condition, net worth, and ability to pay" on the ground that such information is relevant to Mattel's Phase 2 damages claims, including Mattel's claim for punitive damages.

For the reasons previously discussed, the Discovery Master finds that, with respect to the Financing Entities, the discovery requests were, for the most part overbroad, and/or not sufficiently linked to Phase 2 issues. However, the Discovery Master's analysis is necessarily different with respect to entities which were created and apparently wholly owned and/or controlled by Larian (a defendant in Phase 2), and which are admittedly selling inventory which generate revenues in which Mattel has an interest. Specifically, Mattel contends that Larian has caused MGA to sell the inventory at a deep (80%) discount to the Transferee Entities. This practice, if true, limits MGA's profits (which go to MGA's balance sheet, and ultimately

EXHIBIT _____ 23
PAGE _____ 302

1    affects MGA's net worth) while at the same time allowing Larian to capture

2    additional profits which otherwise would have been realized by MGA and reflected

3    on MGA's balance sheet). Accordingly, the Discovery Master finds that most of

4    the documents Mattel seeks to subpoena from the Transferee Entities properly

5    relate to Phase 2 issues, as specified in Section IV below.[21]

6                **2.**      **Mattel's Unfair Competition Counterclaim**

7        Given MGA's admissions regarding Larian's ownership/control of the

8    Transferee Entities, coupled with their sale of inventory purchased from MGA, the

9    Discovery Master finds that many of the documents requested from the Transferee

10   Entities are also arguably related to a "fraudulent," "unlawful," or "unfair" business

11   practice within the meaning of the Unfair Competition Law and the scope of

12   Mattel's Counterclaims. Among other things, the Court's December 3, 2008 order

13   imposes a constructive trust on the proceeds of MGA's sale of the subject

14   inventory. If, as Mattel argues, MGA's sale of that inventory to the Transferee

15   Entities constitutes a scheme on the part of Larian to enrich himself by depriving

16   Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then

17   such conduct would constitute an unlawful attempt to circumvent the Court's order

18   and arguably render the transaction between MGA and the Transferee Entities an

19   anti-competitive business practice that is unlawful, unfair or fraudulent to other toy

20   manufacturers, including Mattel. Therefore, such alleged misconduct, if proven,

21   could violate the Unfair Competition Law.

22        Moreover, although Mattel asserted its counterclaim for violation of the

23   Unfair Competition Law prior to the alleged misconduct (and long before the

24   Transferee Entities came into existence), Mattel phrased its allegations broadly

25

26     [21] The Discovery Master notes that IGWT 826 Investments is registered at the home address of Larian's sister and brother-in-law, indicating that some of Larian's relatives may be involved in the ownership or operation of the

27   Transferee Entities. Accordingly, the Discovery Master has specified in some instances that the production of documents shall include those referencing not only Larian, but also his spouse, his children, his siblings, or their spouses, or any entity or person affiliated with them. However, the Discovery Master has stopped short of ordering

28   the production of documents relating to any other entities, individuals "within the U.S. and outside the U.S.," as requested in Category 6 of each of the Subpoenas directed to the Transferee Entities.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 27 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    23

PAGE    303

1   enough to potentially encompass subsequent acts of unfair competition which

2   perpetuate or extend the misconduct alleged in the Counterclaims.  Unlike Mattel's

3   RICO counterclaim, Mattel's Twelfth Counterclaim for Unfair Competition does

4   not purport to rest on a list of enumerated, factually detailed and carefully defined

5   acts, but rather is phrased broadly to cover "unlawful, unfair and/or fraudulent acts

6   of unfair competition" which include, "without limitation" certain illustrative

7   examples. (Counterclaims, p. 74, ¶ 165).

8       Of course, the Discovery Master cannot predict whether the Court will

9   ultimately deem Mattel's unfair competition counterclaim to be sufficiently elastic

10  to encompass MGA's alleged misuse of the Transferee Entities or whether Mattel

11  will seek (and the Court permit) amendment of the counterclaim to expressly

12  reference such alleged misconduct.  Nevertheless, in light of the fact that the

13  discovery need only appear reasonably calculated to lead to the discovery of

14  admissible evidence, the Discovery Master finds that certain aspects of the

15  Subpoenas are sufficiently related to Mattel's Phase 2 unfair competition claim.

16          c.    **Summary Of The Discovery Master's Findings With**

17                **Respect To The Subpoenas Directed To The**

18                **Transferee Entities**

19      As set forth above, the Discovery Master finds that Mattel has sufficiently

20  articulated a connection between some of the Transferee Discovery and its Phase 2

21  claims.  Accordingly, Mattel's motion to compel the Transferee Entities to comply

22  with the Subpoenas is **GRANTED** in part and **DENIED** in part.

23  **IV.   Disposition**

24      1.    The Motion to Quash filed by MGA is **DENIED**.

25      2.    Mattel's Motion to Compel the Financing Entities to produce

26  documents responsive to the Subpoenas is **DENIED** with respect to OmniNet

27  Capital, LLC and Vision Capital, LLC.

28      3.    Mattel's Motion to Compel Omni 808 Investors, LLC to produce

- 28 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___23___

PAGE ___304___

1   documents responsive to the Subpoena propounded on it is **GRANTED** in part and
2   **DENIED** in part, as follows:
3          a.   Requests 1 through 3, 13, 15, and 17:  The Motion is granted
4   with respect to documents relating to (1) the existence of any debt owed by MGA
5   Entertainment, Inc. to Omni 808 Investors, LLC, including any debt purchased
6   from Wachovia Bank, and (2) any communications between Omni 808 Investors,
7   LLC and the MGA parties regarding any such indebtedness.  The motion is denied
8   regarding any other documents sought by these requests.
9          b.   Requests 4 through 12, 14 and 18:  The Motion is denied.
10   4.   Mattel's Motion to Compel the Transferee Entities to produce
11   documents responsive to the Subpoenas is **DENIED** as to Request 6 propounded to
12   IGWT Group LLC and Request 6 propounded to IGWT 826 Investments, LLC.
13   5.   Mattel's Motion to Compel the Transferee Entities to produce
14   documents responsive to the Subpoenas is **GRANTED,** as follows:
15                   **Subpoena To IGWT Group LLC**
16          a.   Request 1:  The Motion is granted with respect to documents
17   relating to the purchase by, or transfer to, IGWT Group LLC of any items of value,
18   including Bratz products, from MGA, Larian, his spouse, his children, his siblings,
19   or their spouses, or any entity or person affiliated with them.
20          b.   Request 2:  The Motion is granted
21          c.   Request 3:  The Motion is granted with respect to documents
22   relating to any ownership interest by Larian, his spouse, his children, his siblings,
23   or their spouses, or any entity or person affiliated with them.
24          d.   Request 4:  The Motion is granted with respect to documents
25   relating to any sources of funding by Larian, his spouse, his children, his siblings,
26   or their spouses, or any entity or person affiliated with them.
27          e.   Request 5:  The Motion is granted with respect to documents
28   relating to any compensation, loans, advances, payments, fees or any other form of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 29 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 23
PAGE 305

1  consideration paid by IGWT Group LLC to Larian, his spouse, his children, his

2  siblings, or their spouses, or any entity or person affiliated with them.

3     f.   Request 7: The Motion is granted.

4        **Subpoena To IGWT 826 Investments LLC**

5     a.   Request 1: The Motion is granted with respect to documents

6  relating to the purchase by, or transfer to, IGWT 826 Investments LLC of any items

7  of value, including Bratz products, from MGA, Larian, his spouse, his children, his

8  siblings, or their spouses, or any entity or person affiliated with them.

9     b.   Request 2: The Motion is granted

10    c.   Request 3: The Motion is granted with respect to documents

11  relating to any ownership interest by Larian, his spouse, his children, his siblings,

12  or their spouses, or any entity or person affiliated with them.

13    d.   Request 4: The Motion is granted with respect to documents

14  relating to any sources of funding by Larian, his spouse, his children, his siblings,

15  or their spouses, or any entity or person affiliated with them.

16    e.   Request 5: The Motion is granted with respect to documents

17  relating to any compensation, loans, advances, payments, fees or any other form of

18  consideration paid by IGWT 826 Investments LLC to Larian, his spouse, his

19  children, his siblings, or their spouses, or any entity or person affiliated with them.

20    f.   Request 7: The Motion is granted.

21    5.   All non-privileged documents referenced in Paragraphs 3 and 5, above,

22  shall be produced within 30 days of this Order, subject to any applicable

23  confidentiality designations available under the Protective Order.

24    6.   Nothing in this Order should be deemed to prevent Mattel from

25  seeking discovery from the MGA parties of documents encompassed by the

26  Subpoenas upon the showing of a sufficient nexus between the particular discovery

27  requests and legitimate Phase 2 issues, and subject to any applicable objections.

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   23
PAGE   306

1

Dated:  March 10, 2009

2

3

4                                                By:        /s/ Robert C. O'Brien

5                                                           ROBERT C. O'BRIEN
                                                            Discovery Master
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 23 _____

PAGE _____ 307 _____

EXHIBIT 24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION


CARTER BRYANT, an individual,

     Plaintiff,

  vs.

MATTEL, INC., a Delaware
corporation,

     Defendants.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. CV 04-9405 and
05-2727

**CERTIFIED**

**COPY**


AND CONSOLIDATED ACTIONS.


REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Wednesday, March 4, 2009

Volume 1


Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 106479

EXHIBIT _____24_____

PAGE _____308_____

877.955.3855
www.sarnoffcourtreporters.com

IRVINE ● LOS ANGELES ● SAN FRANCISCO ● LAS VEGAS ● SAN DIEGO

**SARNOFF**
*Court Reporters and*
*Legal Technologies*

TRANSCRIPT OF PROCEEDINGS                    03/04/09

```
1              UNITED STATES DISTRICT COURT
            CENTRAL DISTRICT OF CALIFORNIA
2                 EASTERN DIVISION

3

4   CARTER BRYANT, an individual,

5        vs.                       No. CV 04-9049 SGL (RNBx)
                                   Consolidated with
6   MATTEL, INC., a Delaware       Nos. CV 04-9405 and
    corporation,                   05-2727
7
             Defendants.
8

9

10

11   _____
    AND CONSOLIDATED ACTIONS.
12   _____

13

14

15

16        REPORTER'S TRANSCRIPT OF PROCEEDINGS, Volume 1,

17   taken at 555 West Fifth Street, 48th Floor, Los Angeles,

18   California, beginning at 10:08 a.m. and ending at

19   12:12 p.m. on Wednesday, March 4, 2009, before

20   CHERYL R. KAMALSKI, Certified Shorthand Reporter No. 7113.

21

22

23

24
                    EXHIBIT  24
25
                    PAGE  309
```

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

1   compel is improper and should be denied for both serious

2   substantive and procedural reasons.  If we're going to

3   have these rules, they have a purpose, they have to be

4   followed.  And the Court's very order, the Court's

5   standing order says if this isn't done, it won't be

6   considered.  They now are walking away from these other

7   orders and they want to rely on the discovery stipulation

8   and order which, of course, I had no knowledge of when we

9   were having this discussion.  As you're well aware of,

10   they didn't even comply with that.  Perhaps if they had,

11   and set out, as they're required to do in writing, what it

12   is they want, why they want it, let's talk about it, let's

13   sit down and discuss it, we could, perhaps, have narrowed

14   it.  In fact, both I and my colleague told Mr. Corey we

15   were pretty sure we could satisfy himself with respect to

16   the bona fides of the transaction.  That was rejected.

17        MR. O'BRIEN:  Let me ask you this question.

18   You've said the discovery's overbroad.  What narrow

19   request could Mattel make that you believe would be proper

20   under the circumstances here?  In other words, what kind

21   of request do you think would be, as a third party?  I

22   mean, I understand you don't want to respond to anything,

23   it's a burden.  But assuming there's always a burden in

24   responding to discovery, what narrow request, based on

25   your understanding of the issues in phase 2, would be

50

EXHIBIT  2(

310

1      proper for your -- that you wouldn't come in here and file
2      a motion to quash?
3              MR. GORDINIER:  What documents do we have that
4      show that either Mr. Larian or MGA paid money into this to
5      purchase this debt?  I can tell you there are none.  This
6      is a ready, fire, aim situation.  The allegations that
7      were made and were made publicly are unconscionable and
8      can't be undone.
9              MR. O'BRIEN:  What other areas?  For example,
10     would the payment history with respect to the debt from
11     MGA to 808, assuming there is one, I don't know if this is
12     a balloon payment or that sort of thing --
13             MR. GORDINIER:  I assume that's in MGA's
14     financial statements, but -- I mean, I assume that they've
15     made payments.  I don't know the answer to that, that's
16     reflected on their financial statements, which I'm
17     assuming have been exchanged, but I don't know that.
18             MR. O'BRIEN:  Mr. Russell said that there was
19     discovery that was taken of Wachovia in phase 1.  I was
20     not involved in the case.  I don't know what discovery was
21     taken of Wachovia.  But, presumably -- but it sounds like,
22     and I'll let Mr. Zeller answer this and Mr. Russell
23     address it as well, but if there was discovery in phase 1
24     that was proper as to Wachovia in establishing the debt
25     and looking at the payment terms, and all that sort of

EXHIBIT 24
PAGE 311

1   thing, would that same sort of discovery be proper
2   vis-a-vis 808 --
3          MR. GORDINIER:  We absolutely offered -- we
4   offered, without knowing any of this, to give them the
5   deal documents.  Absolutely.  I don't know that it's
6   proper.  I think it's overbroad and I think it's
7   premature, but I'll just tell you, we offered to give them
8   the deal documents.  There's no secret there.  We did buy
9   the debt at a discount.  You've read the transcript.  I
10  told Judge Larson my client wants to make money at this,
11  and so he made a business decision that -- you know,
12  Wachovia has its own reasons for doing what it's doing
13  that we all can kind of guess -- but I don't know.  My
14  client had his own reasons for doing what he's doing.  The
15  only thing that seems to relate to all this is do they
16  have -- are there any documents that show the disgorgement
17  thing, or whatever he's trying to argue, and I'm not
18  familiar with the phase 2 -- but I have no problem
19  conceptually giving them the deal documents.  None at all.
20  But that doesn't entitle them to look at all records that
21  reflect all my nonparty entities, all documents detailing
22  or setting forth.  Read through them; they're overbroad
23  and they're improper.
24          MR. O'BRIEN:  What about performance, the
25  performance of the loan.

52

EXHIBIT  24
        312

1          I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4   before me at the time and place herein set forth; that

5   any witnesses in the foregoing proceedings, prior to

6   testifying, were duly sworn; that a record of the

7   proceedings was made by me using machine shorthand

8   which was thereafter transcribed under my direction;

9   that the foregoing transcript is a true record of the

10  testimony given.

11         Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript [  ] was [  ] was not requested.

15         I further certify I am neither financially

16  interested in the action nor a relative or employee

17  of any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20

21  Dated: _____MAR 0 9 2009_____

22

23                 _Cheryl R. Kamalski_

24                 CHERYL R. KAMALSKI
                   CSR No. 7113

25

EXHIBIT __24__

PAGE __3/3__

EXHIBIT 25

**Cyrus Naim**

REDACTED

**Attachments:** Mashian Objs to Mattel's Subpoena.PDF; Neman Bros. Objs to Mattel's Financial Subpoena ( Sunset Blvd.).PDF; Leon Neman Objs to Mattel's Financial Subpoena.PDF

REDACTED

**From:** Villar, Peter N. [mailto:peter.villar@bingham.com]
**Sent:** Monday, February 23, 2009 6:24 PM
**To:** Jon Corey
**Cc:** 'thomas.nolan@skadden.com'; 'pglaser@glaserweil.com'; 'rjf@msk.com'; Gordinier, Todd E.
**Subject:** MGA v. Mattel

Jon:  Attached are our objections to the subpoenas issued by Mattel, Inc. to Fred Mashian, Leon Neman and Neman Brothers & Associates, Inc.  We understand that you also attempted to serve Mr. Mashian with a subpoena to Lexington Financial, LLC.  Mr. Mashian advised us that he is not the agent for service for any such entity.

Regards, Peter

B I N G H A M
Peter N. Villar |
Plaza Tower, 18th Floor |
600 Anton Boulevard |
Costa Mesa, CA 92626-1924 |
T 714.830.0640 |
F 714.830.0700 |
peter.villar@bingham.com |

===============================================================
Bingham McCutchen LLP Circular 230 Notice:   To ensure compliance with IRS requirements, we info.
The information in this e-mail (including attachments, if any) is considered confidential and is

EXHIBIT ___25___

PAGE ___314___

3/24/2009

EXHIBIT 26

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemnauel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

[Additional counsel listed on following page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| Plaintiff, | Consolidated with |
| v. | Case No. CV 04-09059 |
| | Case No. CV 05-02727 |
| MATTEL, INC., a Delaware corporation, | STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND |
| Defendant. | [PROPOSED] ORDER |
| | Discovery Cutoff Date: Not Set |
| | Trial Date: Not Set |

EXHIBIT 26

PAGE 3/5

1   LITTLER MENDELSON
       Robert F. Millman (Bar No. 062152)
2      Douglas A. Wickham (Bar No. 127268)
       Keith A. Jacoby (Bar No. 150233)
3   2049 Century Park East, 5th Floor
    Los Angeles, California 90067-3107
4   Telephone:  (310) 553-0308
    Facsimile:   (310) 553-5583
5
6   Attorneys for Carter Bryant

7   O'MELVENY & MYERS LLP
       Diana M. Torres (Bar No. 162284)
    400 S. Hope Street
8   Los Angeles, California 90017
    Telephone:  (213) 430-6000
9   Facsimile:   (213) 430-6407

10  O'MELVENY & MYERS LLP
       Dale Cendali
11  Times Square Tower
    7 Times Square
12  New York, NY 10036

13  CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
       Patricia Glaser (Bar No. 55668)
14  10250 Constellation Boulevard - 19th Floor
    Los Angeles, CA 90067
15  Telephone:  (310) 553-3000
    Facsimile:  (310) 556-2920
16
17  Attorneys for MGA Entertainment, Inc.

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ___26___

PAGE ___316___        - 2 -

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1    WHEREAS, the parties are in agreement that a discovery master should be

2  appointed in this matter to resolve any discovery disputes and to minimize the

3  burden on the Court; and

4    WHEREAS, the parties have agreed upon a nominee, Hon. Edward A. Infante

5  (Ret.), and he has agreed to serve as a discovery master in this matter;

6    NOW, THEREFORE, to facilitate the fair and efficient completion of pre-

7  trial discovery, the parties Mattel, Inc. and Carter Bryant and MGA Entertainment,

8  Inc., by and through their respective counsel of record, hereby stipulate and agree as

9  follows:

10    1.    The Discovery Master shall be appointed to assure and provide cost-

11  effective discovery and to minimize the burden of discovery disputes upon the

12  Court.  Any and all discovery motions and other discovery disputes in the above

13  captioned action shall be decided by a master ("Discovery Master") pursuant to

14  Federal Rule of Civil Procedure 53.  Any motions currently pending before

15  Magistrate Judge Block shall be transferred to the Discovery Master.  The moving

16  party shall provide to the Discovery Master all papers associated with each pending

17  motion.

18    2.    The Discovery Master shall be Hon. Edward A. Infante (Ret.).  His

19  business address is: Two Embarcadero Center, Suite 1500, San Francisco, CA

20  94111.

21    3.    Judge Infante shall serve as the Discovery Master until all issues herein

22  have been finally disposed of or determined, or until he shall withdraw in

23  accordance with applicable law.  If at any time he becomes unable to serve as the

24  Discovery Master, the parties shall confer to present an alternative agreed-upon

25  designee to the Court.  In the event that the parties cannot agree to an alternate

26  designee, then the Court shall appoint a Discovery Master.

27    4.    The Discovery Master shall have the authority to set the date, time, and

28  place for all hearings determined by the Discovery Master to be necessary; to

EXHIBIT ___26___

PAGE ___317___

-3-

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1   preside over hearings (whether telephonic or in-person); to take evidence in
2   connection with discovery disputes; to issue orders resolving discovery motions
3   submitted to the Discovery Master; to conduct telephonic conferences to resolve
4   discovery disputes arising during depositions; to issue orders awarding non-
5   contempt sanctions, including, without limitation, the award of attorney's fees, as
6   provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and
7   recommendations, as appropriate.

8        5.    All discovery disputes shall be resolved by motion (except those arising
9   during a deposition which the Discovery Master determines can be resolved by
10  telephonic conference during the deposition).  The moving party shall first identify
11  each dispute, state the relief sought, and identify the authority supporting the
12  requested relief in a meet and confer letter that shall be served on all parties by
13  facsimile or electronic mail.  The parties shall have five court days from the date of
14  service of that letter to conduct an in-person conference to attempt to resolve the
15  dispute.  If the dispute has not been resolved within five court days after such
16  service, the moving party may seek relief from the Discovery Master by formal
17  motion or letter brief, at the moving party's option.  The opposing party shall have
18  five court days from the date of service of the motion or letter brief to submit a
19  formal opposition or response.  Any reply brief or letter brief shall be served within
20  three court days from the date of service of a formal opposition or response.  The
21  hearing on the motion shall take place within five court days of the service of any
22  reply brief or letter unless (a) the parties agree to another hearing date or agree that
23  no hearing is necessary; (b) the Discovery Master determines that no hearing is
24  necessary; or (c) the Discovery Master is not available, in which case the hearing
25  shall take place on the Discovery Master's first available date.  The foregoing shall
26  not prohibit (i) the parties from agreeing to alternate procedures, or (ii) a party from
27  seeking the Discovery Master's immediate resolution of a dispute or resolution of a
28  dispute upon shortened time upon a showing of good cause why a party would be

EXHIBIT 26

PAGE 318                    - 4 -

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1   prejudiced absent prompt resolution.  Service of any document by fax or electronic
2   mail prior to 6:00 p.m. shall constitute service on that day.

3      6.  The Discovery Master's orders resolving discovery disputes, reports, or
4   recommendations pursuant to Rule 53(e) or (f) shall be treated as rulings made by a
5   Magistrate Judge of the United States District Court.  The Discovery Master shall
6   file each order, report, or recommendation pursuant to Rule 53(e) or (f) and serve
7   the parties within five court days of his/her decision on a matter.

8      7.  A court reporter shall transcribe any hearing or other proceeding before
9   the Discovery Master.

10     8.  The cost of any proceeding before the Discovery Master, including the
11  fees of the Discovery Master, the fees of court reporters who transcribe hearings or
12  other proceedings before the Discovery Master, and the fees of any other person
13  necessary to the efficient administration of the proceeding before the Discovery
14  Master, shall be paid one-half by Mattel, Inc., and one-half by MGA Entertainment,
15  Inc. and Carter Bryant unless, consistent with the Federal Rules of Civil Procedure,
16  the Discovery Master Orders otherwise.  By agreeing to share costs among the
17  parties, no party waives its right to seek recovery or reimbursement for such costs
18  from any other party.

19     9.  The Discovery Master shall be compensated according to his regular
20  hourly rate of $750.

21     10.  Pursuant to Federal Rule of Civil Procedure 53(b)(2), the Discovery
22  Master shall proceed with all reasonable diligence.

23     11.  Based on an affidavit filed by Hon. Edward A. Infante pursuant to
24  28 U.S.C. § 455 and Federal Rule of Civil Procedure 53(b)(3), the parties are not
25  aware that he has a relationship to the parties, to counsel, to the action, or to the
26  Court that would require disqualification of a judge under 28 U.S.C. § 455, and
27  based thereon the parties expressly waive any ground for disqualification disclosed
28  therein of Hon. Edward A. Infante to serve as master in these proceedings.

EXHIBIT _____26_____

PAGE _____319_____

- 5 -

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1  12. The Discovery Master shall not have ex parte communications with ~~the~~
2 ~~Court~~, a party or counsel.

3  13. The Discovery Master shall preserve and maintain all documents and
4 materials submitted by the parties as well as all orders, reports, and
5 recommendations issued by the Discovery Master. These documents, materials,
6 orders, reports and recommendations shall be the record of the Discovery Master's
7 activities, and shall be maintained in chronological order until the Discovery Master
8 is informed by the parties that all issues herein have been finally disposed of and
9 determined.

10  14. The Discovery Master is hereby authorized to receive and consider
11 information and documents designated "CONFIDENTIAL" and "CONFIDENTIAL-
12 ATTORNEYS EYES ONLY" pursuant to the January 4, 2005 Stipulated Protective
13 Order. The Discovery Master agrees to be bound by the January 4, 2005 Order.

14  15. All third parties subject to discovery requests or deposition in this
15 litigation shall be bound by the terms of this Stipulation and Order.

16

17 Dated: November 22, 2006   O'MELVENY & MYERS LLP
18
19
20        By: _____
         Diana Torres
         Attorneys for MGA Entertainment, Inc.
21
22 Dated: November 29, 2006   LITTLER MENDELSON
23
24        By: _____
25         Douglas A. Wickham
         Attorneys for Carter Bryant
26
27
28

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

- 6 -

EXHIBIT 26
PAGE 320

1  Dated: ~~November~~ December 4, 2006          QUINN EMANUEL URQUHART
                                                 OLIVER & HEDGES, LLP
2

3                                                By: _Jon D Corey_
4                                                    Jon D. Corey
                                                     Attorneys for Mattel, Inc.
5

6                          **ORDER**

7       The foregoing Stipulation for Appointment of a Discovery Master is SO

8  ORDERED *as modified.*

9

10 Dated:  _12-6-06_ .                    _S G Larson_
11                                        Hon. Stephen G. Larson
                                          United States District Court Judge
12

13             **CONSENT OF DISCOVERY MASTER**

14      If appointed by the Court, I, the undersigned, consent to serve as Discovery

15 Master in the above referenced proceeding consistent with this Order.

16

17 Dated:  _12-5-06_                      _Edward A Infante_
18                                        Hon. Edward A. Infante (Ret.)
19

20

21

22

23

24

25

26

27

28

                                          - 7 -

EXHIBIT _26_

PAGE _321_

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA** )
**COUNTY OF LOS ANGELES** )

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 5, 2006, I served the foregoing document described as **STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND [PROPOSED ORDER** on all interested parties in this action.

**Keith A. Jacoby, Esq.**
**Douglas Wickham, Esq.**
**Littler Mendelson**
**A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
Phone: 310-553-0308
**Fax: 310-553-5583**

**Diana M. Torres, Esq.**
**O'Melveney & Meyers**
400 S. Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
**Fax: 213-430-6407**

[ ]   By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:

**[X]   BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[ ]   **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on December 5, 2006, at Los Angeles, California.

[ ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Cheri Hatch
Print Name

Signature

EXHIBIT _26_

PAGE _322_

EXHIBIT 27

1   Bingham McCutchen LLP
    TODD E. GORDINIER (SBN 82200)
2   todd.gordinier@bingham.com
    PETER N. VILLAR (SBN 204038)
3   peter.villar@bingham.com
    CRAIG A. TAGGART (SBN 239168)
4   craig.taggart@bingham.com
    600 Anton Boulevard, 18th Floor
5   Costa Mesa, CA  92626-1924
    Telephone:  714.830.0600
6   Facsimile:  714.830.0700

7   Attorneys Specially Appearing For Non-party
8   LEXINGTON FINANCIAL LIMITED

9                  UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  Carter Bryant, an individual, | Case No. CV 04-9049 SGL (RNBx) |
| 12         Plaintiff, | **[To Be Heard By Discovery Master Robert C. O'Brien]** |
| 13            v. | |
| 14  Mattel, Inc., a Delaware Corporation, | **DECLARATION OF FRED F. MASHIAN IN OPPOSITION TO MATTEL, INC.'S EX PARTE APPLICATION FOR AN ORDER DEEMING LEXINGTON** |
| 15         Defendant. | |
| 16 | **FINANCIAL, LLC SERVED, OR IN THE ALTERNATIVE, TO (1) COMPEL AN AUTHORIZED REPRESENTATIVE OF LEXINGTON FINANCIAL, LLC TO APPEAR TO ACCEPT SERVICE OF SUBPOENA, OR (2) ISSUE AN ORDER AUTHORIZING LEXINGTON FINANCIAL, LLC TO BE SERVED THROUGH THE CALIFORNIA SECRETARY OF STATE** |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23  AND CONSOLIDATED ACTIONS. | **Phase 2:** |
| 24 | Discovery Cut-off:        Dec. 11, 2009 <br> Pre-trial Conference:   March 1, 2010 <br> Trial Date:                   March 23, 2010 |

25

26

27

28

DECLARATION OF FRED F. MASHIAN IN OPPOSITION TO MATTEL, INC.'S EX PARTE APPLICATION
FOR AN ORDER DEEMING LEXINGTON FINANCIAL, LLC SERVED

A/72865474.1

EXHIBIT ____27____
PAGE ____323____

1    I, Fred F. Mashian, hereby declare as follows:

2        1.      I am an attorney certified to practice law in the State of California. I

3    make this declaration in opposition to Mattel, Inc.'s *ex parte* application for an

4    order deeming Lexington Financial, LLC to be served with a subpoena purportedly

5    issued by Mattel, Inc. on or about January 30, 2009 (the "Subpoena"). I have

6    personal knowledge of the matters stated herein, and if called upon could and

7    would testify competently to them.

8        2.      I am a business attorney, with a focus on international and domestic

9    tax and estate planning.

10       3.      From time to time, I have been retained to provide legal services for

11   LEXINGTON FINANCIAL LIMITED. I am not, and never have been, an officer,

12   director, partner, member, employee or agent of LEXINGTON FINANCIAL

13   LIMITED. I am not, and have never been, the agent for service of process for

14   LEXINGTON FINANCIAL LIMITED. I was not authorized to accept service of

15   the Subpoena on behalf of LEXINGTON FINANCIAL LIMITED, nor have I ever

16   been authorized to accept service of a subpoena on behalf of LEXINGTON

17   FINANCIAL LIMITED.

18       4.      I also have no knowledge of, affiliation with, or relationship to the

19   entity referenced on the Subpoena, "Lexington Financial, LLC." I have never been

20   authorized to accept service of the Subpoena on behalf of any such entity. In fact,

21   to my knowledge, no such entity exists.

22       5.      LEXINGTON FINANCIAL LIMITED was duly formed under the

23   laws of Nevis on or about March 3, 2006, and is in good standing. Its business

24   address is located in London, England. It has no offices in the United States or in

25   California. The correct name and address of LEXINGTON FINANCIAL

26   LIMITED is set forth in Exhibits 1 and 3 to the Declaration of Jon Corey filed in

27   support of Mattel, Inc.'s ex parte application.

28

-1-

EXHIBIT __27__
PAGE __324__

6.    In 2008, LEXINGTON FINANCIAL LIMITED made a loan to Vision Capital, LLC, a Delaware Limited Liability Company.  I prepared the loan documents in connection with that loan transaction, and I filed a UCC Financing Statement (attached as Exhibit 1 to the Declaration of Jon Corey).

7.    LEXINGTON FINANCIAL LIMITED has no affiliation with or relationship to MGA Entertainment, Inc. or Isaac Larian.  I have no affiliation with or relationship to MGA Entertainment, Inc. or Isaac Larian.

8.    On the morning of Saturday, January 31, 2009, a man came to my door and handed me two subpoenas.  One of the subpoenas was addressed to me personally and the other was addressed to "Lexington Financial, LLC."  I told the man that I was not an agent for service of process for Lexington Financial, LLC and that I did not believe that any such entity even existed.  I refused to accept service of the Subpoena to Lexington Financial, LLC.  In fact, the Declaration of Mark Shurlock filed in support of Mattel's ex parte application even confirms my refusal to accept service of the Lexington Subpoena (though Mr. Shurlock does not provide a complete or accurate account of all of the facts).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on March 8, 2009.

Fred Mashian

-2-

A/72865474.1

EXHIBIT _27_
PAGE _325_