1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile: (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11 | CARTER BRYANT, an individual,      | CASE NO. CV 04-9049 SGL (RNBx)
   |                                     | Consolidated With Case No. 04-9059 and
12 |                  Plaintiff,         | Case No. 05-2727
   |                                     |
13 |           vs.                       | **DISCOVERY MATTER**
   |                                     |
14 | MATTEL, INC., a Delaware            | **[To Be Heard By Discovery Master
   | corporation,                        | Robert C. O'Brien]**
15 |                                     |
   |                  Defendant.         | [PUBLIC REDACTED] MATTEL,
16 |                                     | INC.'S NOTICE OF MOTION AND
   |                                     | MOTION FOR RECONSIDERATION
17 | AND CONSOLIDATED ACTIONS           | OF PHASE II DISCOVERY MATTER
   |                                     | ORDER NO. 3; AND
18 |                                     |
   |                                     | MEMORANDUM OF POINTS AND
19 |                                     | AUTHORITIES IN SUPPORT
   |                                     | THEREOF
20 |                                     |
   |                                     | [Notice of Lodging and Declaration of Jon
21 |                                     | Corey filed concurrently]
22 |                                     | Hearing Date:    TBD
   |                                     | Time:            TBD
23 |                                     | Place:           Arent Fox, LLP
   |                                     |                  555 West Fifth Street,
24 |                                     |                  48th Floor
   |                                     |                  Los Angeles, CA
25 |                                     |
   |                                     | **Phase 2:**
26 |                                     | Disc. Cut-off:   December 11, 2009
   |                                     | Pre-trial Conf.: March 1, 2010
27 |                                     | Trial Date:      March 23, 2010
28

07975/2850408.1

TO ALL PARTIES, NON-PARTIES OMNI 808 INVESTORS, LLC, OMNINET CAPITAL, LLC, VISION CAPITAL, LLC, IGWT GROUP, LLC, IGWT 826 INVESTMENTS, LLC AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at a hearing before Discovery Master Robert C. O'Brien which will occur on a date and at a time to be set by the Discovery Master, Mattel, Inc. ("Mattel") will, and hereby does, move the Discovery Master to reconsider his Phase II Discovery Matter Order No. 3, dated March 10, 2009 (the "Order"), as it pertains to Omni 808 Investors, LLC, OmniNet Capital, LLC and Vision Capital, LLC (hereinafter, collectively, the "Omni Parties").

This Motion is made pursuant to Federal Rules of Civil Procedure 26 and 54(b) and Local Rule 7-18 on the grounds that (1) as a result of Wachovia Bank's March 16, 2009 production of documents, new material facts have emerged revealing Larian's and MGA's involvement in the Omni Parties' alleged acquisition of the majority of MGA's debt and revealing Larian's use of the Omni Parties to conceal MGA profits and to mask capital contributions to MGA as debt, see Local Rule 7-18(b), and (2) the Omni Parties made material misstatements which were relied upon by the Discovery Master regarding MGA's and Isaac Larian's affiliation with and funding of the Omni Parties, such that there is "a material difference in fact or law from that presented to the Court," see Local Rule 7-18(a).

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Jon Corey and exhibits filed concurrently, the Notice of Lodging filed concurrently, the records and files of this Court, and all other matters of which the Court may take judicial notice.

1    **<u>Statement of Rule 7-3 Compliance</u>**

2    Counsel for Mattel, MGA, and the third-party witnesses met and

3    conferred regarding this Motion on March 13, 2009 and at times thereafter.

4

5    DATED: March 24, 2009          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
6

7                                   By /s/ Michael T. Zeller
                                       Michael T. Zeller
8                                      Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND ................................................................................................... 3

I.     THE DISCOVERY MASTER DENIED MATTEL'S REQUESTS FOR DOCUMENTS BASED ON THE OMNI PARTIES' COUNSEL'S REPRESENTATIONS. ...................................................................................... 3

    A.     The Discovery Master Limited Discovery Based On The Conclusion That MGA and Larian Did Not Have An Interest In The Omni Parties ......................................................................................... 4

    B.     The Discovery Master Came To This Conclusion Based On The Representations Of The Omni Parties' Counsel ....................................... 5

    C.     The Omni Parties' Counsel Had Made Similar Representations Previously To The District Court ............................................................. 8

II.    DOCUMENTS PRODUCED FOLLOWING THE DISCOVERY MASTER'S ORDER REVEAL THAT THE REPRESENTATIONS OF THE OMNI PARTIES WERE INCORRECT. .................................................. 9

ARGUMENT ...................................................................................................... 10

I.     RECONSIDERATION IS APPROPRIATE IN LIGHT OF NEW EVIDENCE, AND BECAUSE THE OMNI PARTIES MISSTATED THEIR STATUS. ............................................................................................ 10

II.    THE NEWLY-PRODUCED EVIDENCE SHOWS THAT MATTEL'S REQUESTS ARE PROPER. ........................................................................ 12

    A.     As Affiliates Of MGA And Larian, The Omni Parties Are Not Entitled To Non-Party Status. .................................................................. 12

    B.     Mattel's Requests Are Relevant To Phase 2 Claims And Defenses. ................................................................................................ 13

        1.     Mattel's Requests Are Relevant To Net Worth. ......................... 15

        2.     Mattel Seeks Documents Relevant To Disgorgement. ............... 17

        3.     The Requests Are Relevant To Mattel's Unfair Competition Claim. ...................................................................... 17

    C.     Mattel's Requests Seek Documents From The Omni Parties Which Cannot Be Obtained From MGA. ............................................... 18

        1.     The Omni Parties Have Admitted That MGA Does Not Possess Requested Documents. ................................................... 18

-i-

2.    It Has Been Only Through Third-Party Discovery That Mattel Was Able to Disprove MGA Entertainment's and Larian's Misrepresentations to the Court and Regarding Discovery Compliance.................................................19

(a)    MGA Denied That Other Mattel Employees Worked On Bratz; Third Party Discovery Proved Otherwise.................................................20

(b)    MGA Denied that Work On Bratz Commenced Before Bryant Left Mattel; Third Party Discovery Proved that Was False. ..............................21

(c)    Despite Court Orders, MGA Also Withheld From Mattel Financial Information That Mattel Learned Existed Only Once It Was Produced By Third Parties. ..............................................23

III.    MATTEL'S INDIVIDUAL SUBPOENA REQUESTS SPECIFICALLY RELATE TO PHASE 2 ISSUES. ....................................26

CONCLUSION.............................................................................29

# TABLE OF AUTHORITIES

**Page**

## Cases

U.S. v. LoRusso,
  695 F.2d 45 (2d Cir. 1982) ..................................................................................10

Viacom Intern., Inc. v. YouTube, Inc.,
  2008 WL 3876142 (N.D.Cal. 2008) .....................................................................20

## Statutes

Fed. R. Civ. P. 54(b) ...........................................................................................10

Local Rule 7-18(b) ..............................................................................................11

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

On March 10, 2009, the Discovery Master issued Order No. 3 denying Mattel's requests for documents from OmniNet Capital, LLC and Vision Capital, LLC, and granting only limited discovery from Omni 808 Investors, LLC, based on a determination that Omni 808, OmniNet and Vision Capital (hereinafter, collectively, the "Omni Parties") are "outsiders to the litigation."[1] This conclusion was based on the Omni Parties' repeated representations to the Court and to the Discovery Master that MGA and Isaac Larian did not have an interest in the Omni Parties.

Six days later, non-party Wachovia—from whom the purported "outsiders" purchased MGA's debt—produced new evidence to Mattel showing that the Omni Parties' representations were neither accurate nor candid. Those documents reveal, among other things, that when the debt was allegedly acquired, OmniNet stated that ███████████████████████████████ ████████████████████████████████████████████ ███████████[2] Another document produced by Wachovia—which is an agreement to which MGA is a party—expressly identifies Omni as an ███████████.[3] Other documents indicate that Omni 808 has been funded by IGWT 826

---

[1] See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 16 n.13, attached as Exhibit 1 to the Declaration of Jon Corey in support of Mattel's Motion for Reconsideration, dated March 24, 2009 ("Corey Dec.") and filed concurrently herewith.

[2] OmniNet Capital, LLC's offer letter to Wachovia Bank, dated July 29, 2008, Corey Dec., Exh. 2 (emphasis added).

[3] See Senior Promissory Note, dated September 3, 2008, Corey Dec., Exh. 4 (███████████████████████████████████████████); see also September 8, 2008 Wachovia Memo. at WACHOVIA 001886, Corey Dec., Exh. 5. (summarizing terms of Wachovia's Senior Note and stating that ████████████████████████████████████████).

MATTEL'S MOTION FOR RECONSIDERATION

1 | Investments, an entity controlled by Larian.[4]   Thus, documents produced by
2 | Wachovia appear to show that Omni 808 and IGWT 826 Investments are shells that
3 | Larian is using to mask his own capital contributions to MGA, which he, MGA and
4 | the Omni Parties are mischaracterizing as debt.

5 | Accordingly, reconsideration is appropriate because these new facts
6 | were, and are, material to MGA and Larian's net worth—a matter that Judge Larson,
7 | the former Discovery Master and the current Discovery Master all have ruled is a
8 | proper and relevant matter for discovery.  Had the Discovery Master been informed
9 | at the time of his Order that (1) the Omni Parties are related to and affiliates of
10 | MGA and Larian, and (2) the Omni Parties are involved in funneling money from
11 | Larian to MGA, his analysis would have been different.  A key to determining
12 | MGA's "book value," and thus the net worth of both MGA and Larian, is whether
13 | the reported liabilities—such as the more than $300 million in debt that MGA
14 | purports to owe to the Omni Partes—are legitimate.  If there is a reasonable
15 | possibility that MGA will not be required to pay those alleged liabilities in full at
16 | some point in the future, then they should not be counted against MGA's net worth.
17 | In order to evaluate whether MGA's purported debt is truly a liability, documents
18 | related to the source of the funding, the ultimate owners of the debt, and the
19 | agreements or understandings between MGA or Larian and the source of the
20 | funds—documents which Mattel's subpoenas are reasonably calculated to
21 | discover—are critically important.

22 | In light of this newly-produced evidence, Mattel respectfully requests
23 | that the Discovery Master reconsider his March 10, 2009 Order as it pertains to the
24 | Omni Parties and order the Omni Parties to produce documents in response to all of
25 | Mattel's document requests.

26 |

27 | [4]   See Secured Delayed Draw Demand Note, Corey Dec., Exh. 3.

28 |

**Background**

I.   **THE DISCOVERY MASTER DENIED MATTEL'S REQUESTS FOR DOCUMENTS BASED ON THE OMNI PARTIES' COUNSEL'S REPRESENTATIONS.**

After the Court lifted the Phase 2 discovery stay, Mattel served subpoenas seeking the production of documents on Omni 808 Investors, LLC,[5] OmniNet Capital, LLC[6] and Vision Capital, LLC[7] (hereinafter, collectively, the "Omni Parties"), and IGWT Group, LLC[8] and IGWT 826 Investments, LLC[9] (hereinafter, collectively, the "IGWT Parties"), among others.  The MGA Parties filed a motion to quash the subpoenas, and Mattel moved to compel the Omni Parties and the IGWT Parties to produce documents responsive to the subpoenas on February 3, 2009.

On March 10, 2009, the Discovery Master issued an Order denying MGA's motion to quash and denying in part and granting in part Mattel's motion to compel.[10]  Specifically, Mattel's motion was denied with respect to OmniNet and Vision Capital.[11]  Mattel's motion to compel documents from Omni 808 was granted for Request Nos. 1-3, 13, 15, and 17 with respect to documents relating to (1) the existence of any debt owed by MGA to Omni 808, and (2) any communications between Omni 808 and MGA regarding that debt,[12] but was otherwise denied.[13]  In

---

[5]   Omni 808 Investors, LLC (Beverly Hills) and Omni 808 Investors, LLC (Los Angeles) subpoenas, dated January 9, 2009, Corey Dec., Exh. 6.
[6]   OmniNet Capital, LLC subpoena, dated January 9, 2009, Corey Dec., Exh. 7.
[7]   Vision Capital, LLC subpoena, dated January 13, 2009, Corey Dec., Exh. 8.
[8]   IGWT Group, LLC subpoena, dated January 12, 2009, Corey Dec., Exh. 9.
[9]   IGWT 826 Investments, LLC subpoena, dated January 12, 2009, Corey Dec., Exh. 10.
[10]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 4, Corey Dec., Exh. 1.
[11]   See id. at 28.
[12]   See id. at 28-29.

contrast, except for a single request, the Discovery Master granted Mattel's motion to compel documents from the IGWT Parties, with certain limitations.[14]

### A.   The Discovery Master Limited Discovery Based On The Conclusion That MGA and Larian Did Not Have An Interest In The Omni Parties.

In limiting discovery, the Discovery Master considered the Omni Parties to be "outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-parties."[15]  This conclusion was based directly on the Omni Parties' representation that Larian and MGA did not fund and are not affiliated with the Omni Parties.  The Discovery Master expressly noted:  "Based on the information presented at the February 11, 2009 hearing and in connection with the pending motions, it does not appear that either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have an ownership interest in the Financing Entities."[16]

The Discovery Master's analysis was "necessarily different" with respect to the IGWT Parties, as to which the Discovery Master granted Mattel's Motion in large part, because:  (1) the IGWT Parties are "affiliated with—if not wholly owned by—Larian"; (2) the requests to IGWT involve issues relevant to Phase 2, including "the sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest pursuant to the Court's December 3, 2008 ruling"; and (3) the IGWT requests seek some Phase 2 documents "which presumably cannot be obtained from MGA."[17]  Accordingly, he concluded that Mattel's requests are

---

[13]  See id. at 29.
[14]  See id. at 29-30.
[15]  See id. at 16 n.13.
[16]  See id. at 4.
[17]  See id. at 25.

MATTEL'S MOTION FOR RECONSIDERATION

reasonably calculated to lead to the discovery of admissible evidence and granted Mattel's motion in large part.[18]

### B. The Discovery Master Came To This Conclusion Based On The Representations Of The Omni Parties' Counsel.

With its Motion to Compel, Mattel submitted evidence showing that MGA and Larian had engaged in numerous related-party transaction during the course of the Phase 1 trial, and during the damages phase in particular. Mattel also showed in its Motion that MGA's transactions with the Omni Parties appeared to be structured to conceal the ultimate source of funds. This included the following evidence, which was (and remains) essentially unrefuted:

- Omni 808 Investors, LLC, a single-purpose entity formed on August 12, 2008 during the damages phase of trial, had purported to purchase a substantial portion of the more than $300 million debt that MGA owed to Wachovia, taking an alleged security interest in certain MGA assets.[19]

- According to the Omni Parties' UCC Financing Statements, Omni 808 appears to be owned and funded by a company called Vision Capital, LLC which, like Omni 808, was formed during the damages phase of the trial.[20]

---

[18]  See id. at 29-30.

[19]  See UCC Financing Statement Amendment dated September 9, 2008, amending prior UCC Financing Statement to add Omni 808 Investors, LLC as a creditor to MGA with co-priority with Wachovia Bank, N.A., Corey Dec., Exh. 11. More specifically, the purported security interest was only in ███████████████████████████████████ ████████████████████████████████████████████ See Supplemental Declaration of Michael Zeller iso (1) Mattel's Application for Receiver and (2) Mattel's Opposition to Omni 808's Application for Leave to Intervene, dated March 23, 2009 ("Supp. Zeller Dec."), at ¶¶ 13-16 and Exhs. 11-16, lodged concurrently herewith.

[20]  See Vision Capital, LLC Certificate of Formation dated August 19, 2008, Corey Dec. Exh. 12.

- The Omni Parties' UCC Financing Statements also claim that Vision Capital in turn obtained money to fund Omni 808, and presumably MGA, from a company called Lexington Financial Limited, a Nevis Company. Lexington is an offshore company registered in the Caribbean island of Nevis, a country notorious for its corporate and banking secrecy laws.[21] Lexington also has an address in London at the same location as a company that provides "virtual office" services, i.e., mail drop and answering service.[22]

- Fred Mashian, a Sunset Boulevard "estate-planning" attorney, is identified as the Lexington contact on a UCC financing statement showing that Vision Capital secured its alleged loan from Lexington with its ownership interest in Omni 808.[23] Lexington perfected its purported security interest in Vision Capital's ownership interest in Omni 808 on August 29, 2008—three days after the jury's damages verdict against MGA and Larian.[24]

- 1525 South Broadway in Los Angeles—the address for Vision Capital provided in the August 29, 2008 UCC Financing Statement[25]—is the

---

[21]   See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 13 (with Lexington Capital taking a security interest in Vision Capital's ownership interest in Omni 808 Investors LLC); "Offshore-Based Limited Liability Company (LLC)" at www.offshore-protection.com/nevisLLC.html, Corey Dec., Exh. 14.

[22]   See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 13; December 12, 2008 letter from Registrar Clevelan Williams, Corey Dec., Exh. 15. Office Front "Home" (offering website by Office Front allowing a person to obtain a "virtual office" for as little as £10 a month), Corey Dec., Exh. 16.

[23]   See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 13.

[24]   See UCC Financing Statement dated August 29, 2008, Corey Dec., Exh. 13.

[25]   See Declaration of David Antolin, dated February 4, 2009, lodged concurrently herewith.

1  address of Neman Brothers & Associates.[26]  Leon Neman is a principal
2  of Neman Brothers & Associates and owns the building at 1525
3  Broadway.[27]

4  • Leon Neman is Isaac Larian's brother-in-law and has served as a
5  director of MGA.[28]  Mr. Mashian, the agent for Lexington Financial, is
6  the listed agent for several entities that Leon Neman owns.[29]  Indeed,
7  Rock-Hill Holdings, LLC, a Leon Neman entity that lists Mashian as
8  its registered agent, also has a Delaware address that is the same as
9  Vision Capital's alleged Delaware address.[30]

10  Notwithstanding this evidence of repeated related-party transactions,
11  the Omni Parties' counsel maintained that the Omni Parties' purported acquisition of
12  the majority of MGA's debt was an "arm's length transaction" for which the MGA
13  Parties did not provide funding or have an interest.  The Omni Parties' counsel
14  represented this to the Discovery Master at argument:

15  MR. GORDINIER:  What documents do we have
that show that either Mr. Larian or MGA paid money into
16  this to purchase this debt?  *I can tell you there are none.*
This is a ready, fire, aim situation.  The allegations that
17  were made and were made publicly are unconscionable
and can't be undone.[31]

18
19
20
21
22

---

[26]  Id.
23  [27]  See Declaration of Michael T. Zeller in Support of Mattel's Opposition to Omni 808
24  Investors, LLC's *Ex Parte* Application to Intervene, dated February 5, 2009, at ¶ 6 ("Zeller Dec."), lodged concurrently herewith.
25  [28]  See Zeller Dec. ¶ 4.
[29]  See Zeller Dec. ¶ 11.
26  [30]  See Zeller Dec. ¶ 12.
27  [31]  See March 4, 2009 Discovery Master Hearing Transcript at 51:3-8, Corey Dec., Exh. 17 (emphasis added).
28

C.     **The Omni Parties' Counsel Had Made Similar Representations Previously To The District Court.**

The Omni Parties' counsel made similar representations to the District Court when claiming that Omni 808 should be permitted to intervene because its interests are not aligned with those of MGA and Larian. For example, Omni 808 claimed that its ostensible acquisition of the Wachovia loan debt was "a straightforward, arm's-length business deal."[32]   When the Court directly inquired whether the funds for the transaction had come from MGA or Larian, counsel represented that they had not:

> THE COURT:   You're representing to the Court, though, that this was not MGA's money; that this was -- from wherever it came from, it came from someplace else.
>
> MR. GORDINIER:   Your Honor, two things. I've never met Mr. Larian, and I know less about MGA than almost everybody else.
>
> THE COURT:   I'm not asking about what you know from
>
> MGA but of what you know from your client.
>
> MR. GORDINIER:   What I know from my client is, he put in many millions of dollars. He had a couple of investors with him to put in many millions of dollars.
>
> THE COURT:   Those investors and that money did not come from MGA?
>
> MR. GORDINIER:     That's the best of my understanding, Your Honor. That's true.[33]
>
> * * *
>
> THE COURT:   Your representation, then, is that based on your information and belief, the proceeds for that were not proceeds -- I said MGA, but MGA, Isaac Larian, any other MGA entity.

[32]   See Omni 808 *Ex Parte* Application for Leave to Intervene, dated February 3, 2009, at 2:6-7, Corey Dec., Exh. 18; see also id. at 10:1-15 (denying that Omni 808 and MGA are aligned).

[33]   See February 11, 2009 Hearing Transcript, at 71:16-72:5, Corey Dec., Exh. 19.

1   MR. GORDINIER:  As far as I know, Your Honor, this was structured by Mr. Kadisha and the monies went to Wachovia.

2

3   THE COURT:  I know that part.  The question is where the monies came from.

4

5   MR. GORDINIER:  I know at least $50 million came from Mr. Kadisha and his immediate -- that's -- it's serious money, Your Honor.  This was an arm's length transaction.[34]

6

7   In the March 10, 2009 Order, the Discovery Master relied on the Omni

8   Parties' representations to the Court and to the Discovery Master to conclude that "it

9   does not appear that either MGA Entertainment, Inc., MGA Entertainment (HK)

10   Limited, or Larian have an ownership interest in the Financing Entities"[35] and

11   limited Mattel's discovery to the Omni Parties on that basis.

12   **II.   DOCUMENTS   PRODUCED   FOLLOWING   THE   DISCOVERY**

13   **MASTER'S ORDER REVEAL THAT THE REPRESENTATIONS OF**

14   **THE OMNI PARTIES WERE INCORRECT.**

15   On March 16, 2009, six days after the Discovery Master issued Order

16   No. 3, non-party Wachovia Bank produced documents that show the Omni Parties'

17   representations to the Court and to the Discovery Master were not correct and that

18   the Omni Parties are in fact affiliated with MGA and funded by Larian.  Among the

19   newly-produced evidence is a copy of OmniNet's offer letter to Wachovia, dated

20   July 29, 2008, relating to the ostensible loan acquisition.  In that letter, OmniNet

21   stated that ███████████████████████████████████████████

22   ████████████████████████████████████████████████████[36]

23

24

─────────────────────

25   [34]   See id. at 78:9-19.

26   [35]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 4, Corey Dec., Exh. 1.

27   [36]   OmniNet Capital, LLC's offer letter to Wachovia Bank, dated July 29, 2008, Corey Dec., Exh. 2 (emphasis added).

28

1        Similarly, Paragraph 3 of the "Secured Delayed Draw Demand Note"
2   between MGA and Omni 808 produced by Wachovia states that Omni 808's funding
3   to MGA comes from IGWT 826 Investments—an entity which is "affiliated with—
4   if not wholly owned by—Larian."[37]   Another agreement to which MGA was a party
5   specifically identifies and treats Omni as an ▮▮▮▮▮▮▮▮▮.[38]   Additionally,
6   following the issuance of the Discovery Master's Order, Leon Neman -- who is Isaac
7   Larian's brother-in-law and has been a director of MGA -- belatedly admitted that he
8   is a principal of Vision Capital.[39]

9        Thus, the distinctions between the Omni Parties and the IGWT Parties
10  based on the Omni Parties' representations are belied by new evidence.

11                              **Argument**

12  **I.    RECONSIDERATION IS APPROPRIATE IN LIGHT OF NEW**
13       **EVIDENCE, AND BECAUSE THE OMNI PARTIES MISSTATED**
14       **THEIR STATUS.**

15       The Discovery Master is empowered by the District Court to decide
16  matters falling within the Stipulation for Appointment of a Discovery Master, and
17  therefore may reconsider or modify his March 10, 2009 Order.   See U.S. v.
18  LoRusso, 695 F.2d 45, 53 (2d Cir. 1982) ("A district court has the inherent power to
19  reconsider and modify its interlocutory orders prior to the entry of judgment.")
20  (citations omitted); see also Fed. R. Civ. P. 54(b) ("any order or other decision . . .
21

22  _____

     [37]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 25, Corey
23  Dec., Exh. 1.
     [38]   See Senior Promissory Note, dated September 3, 2008, Corey Dec., Exh. 4 (▮
24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮);
25  see also September 8, 2008 Wachovia Memo. at WACHOVIA 001886, Corey Dec., Exh. 5
     (summarizing terms of Wachovia's Senior Note and stating that ▮▮▮▮▮▮▮▮▮
26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).
     [39]   See Motion to Quash Subpoenas Issued by Mattel to Leon Neman, Fred Mashian
27  and Neil Kadisha, dated March 12, 2009, at 2, Corey Dec., Exh. 20.
28

1  may be revised at any time before the entry of a judgment adjudicating all the claims
2  and all the parties' rights and liabilities.").

3       Reconsideration is an appropriate remedy when there is "a material
4  difference in fact or law from that presented to the Court before such decision that in
5  the exercise of reasonable diligence could not have been known to the party moving
6  for reconsideration at the time of such decision," Local Rule 7-18 (a), or based on
7  "the emergence of new material facts … after the time of such decision," Local
8  Rule 7-18(b).  New material facts have emerged regarding Larian's and MGA's
9  involvement in the Omni Parties' supposed acquisition of the majority of MGA's
10  debt and regarding Larian's use of the Omni Parties to mask capital contributions to
11  MGA as debt.  See Local Rule 7-18(b).

12       Further, the Omni Parties made material misstatements to the Court and
13  to the Discovery Master regarding MGA's and Isaac Larian's affiliation with and
14  funding of the Omni Parties.  The Omni Parties' representations—also made without
15  correction by MGA or Larian—led the Court and the Discovery Master to believe
16  that the Omni Parties are independent of and at arm's-length from MGA and
17  Larian.[40]  The Discovery Master denied Mattel's motion with respect to Vision
18  Capital and OmniNet and ordered that Omni 808 produce only a limited set of
19  documents on that basis.  Newly-produced evidence belies the Omni Parties' claims.
20  Therefore, there exists "a material difference in fact . . . from that presented to the
21  Court" before the issuance of the March 10, 2009 Order, and reconsideration is
22  appropriate.  See Local Rule 7-18(a).

23

24

_____

25  [40]  See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 4, Corey
26  Dec., Exh. 1 ("Based on the information presented at the February 11, 2009 hearing and in connection with the pending motions, it does not appear that either MGA Entertainment,
27  Inc., MGA Entertainment (HK) Limited, or Larian have an ownership interest in the
28  Financing Entities.").

## II.   THE NEWLY-PRODUCED EVIDENCE SHOWS THAT MATTEL'S REQUESTS ARE PROPER.

### A.   As Affiliates Of MGA And Larian, The Omni Parties Are Not Entitled To Non-Party Status.

Relying on the Omni Parties' representations, the Discovery Master concluded that "it does not appear that either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have an ownership interest in the Financing Entities."[41]  Based on this, the Discovery Master determined that the Omni Parties are "outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-parties."[42]

However, the "Secured Delayed Draw Demand Note" between MGA and Omni 808 reveals that IGWT 826 Investments—an entity which is "wholly owned and/or controlled by Larian"—**directly funded** Omni 808's extension of so-called credit to MGA.[43]  Another agreement signed by MGA explicitly identifies Omni 808 as an ███████████.[44]  Isaac Larian's brother-in-law, Leon Neman, who has served as a director of MGA,[45] recently admitted that he is in fact a principal of Vision Capital,[46] which too has claimed to have been a funding source for Omni 808's funding to MGA.  The Omni Parties are affiliates of and related to

---

[41]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 4, Corey Dec., Exh. 1.

[42]   See id. at 16, n.13.

[43]   See Secured Delayed Draw Demand Note, Corey Dec., Exh. 3.

[44]   See Senior Promissory Note, dated September 3, 2008, Corey Dec., Exh. 4 (███████████); see also September 8, 2008 Wachovia Memo. at WACHOVIA 001886, Corey Dec., Exh. 5 (summarizing terms of Wachovia's Senior Note and stating that ███████████).

[45]   See Zeller Dec., at ¶ 6.

[46]   See Motion to Quash Subpoenas Issued by Mattel to Leon Neman, Fred Mashian and Neil Kadisha, dated March 12, 2009, at 2, Corey Dec., Exh. 20.

1    the MGA Parties.   They are therefore not entitled to any perceived non-party
2    discovery protections.

3    **B.    Mattel's Requests Are Relevant To Phase 2 Claims And Defenses.**

4            Whether technically third-parties or not, Mattel's discovery requests
5    clearly seek discoverable information as to the Omni Parties in light of this new
6    evidence.   The Discovery Master rejected many of Mattel's relevance arguments
7    because he believed—based on the Omni Parties' misrepresentations and
8    omissions—that the Omni Parties were separate and independent from Larian and
9    MGA.  The Discovery Master made clear that his analysis was "necessarily different
10   with respect to entities which were created and apparently wholly owned and/or
11   controlled by Larian (a defendant in Phase 2)."[47]   As discussed, the new evidence
12   demonstrates that the Omni Parties are indeed entities that are "controlled and/or
13   owned by Larian."

14           As noted, the newly-produced Wachovia documents confirm that Omni
15   808 is an ▮▮▮▮▮▮▮▮▮▮▮; that Larian holds an ownership interest in Omni 808's
16   supposed acquisition of Wachovia debt; and that Omni 808 additionally received
17   funds from IGWT 826 Investments, a Larian entity, to ostensibly extend credit to
18   MGA.[48]  a document produced by Wachovia confirms that OmniNet is an ▮▮▮▮▮
19   ▮▮▮▮  as well.[49]   Indeed, OmniNet—of which Neil Kadisha is the principal—

20
21
22   _____

23   [47]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 26, Corey
24   Dec., Exh. 1.
     [48]   See Background Section II infra.
25   [49]   See September 8, 2008 Wachovia Memo. at WACHOVIA 001886, Corey Dec.,
     Exh. 5 (stating that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26   ▮▮▮▮▮).
27
28

1   made the initial offer to Wachovia to purchase ██████████████,[50]

2   which further indicates that the transaction was not at arm's-length.[51]

3         The Wachovia production also reveals that the Omni Parties are

4   directly involved in the "scheme on the part of Larian to enrich himself by depriving

5   Mattel of the true profits to be paid to Mattel pursuant to the Court's order," which

6   the Discovery Master found justified discovery as to the IGWT Parties.[52]  MGA has

7   sold current inventory—including products which are infringing pursuant to the

8   Court's December 3, 2008 rulings—to IGWT at a discount of more than 80

9   percent,[53] thereby limiting "MGA's profits (which go to MGA's balance sheet, and

10   ultimately affects MGA's net worth) while at the same time allowing Larian to

11   capture additional profits which otherwise would have been realized by MGA and

12   reflected on MGA's balance sheet."[54]  The "Secured Delayed Draw Demand Note"

13   between MGA and Omni 808, which Wachovia produced on March 16, 2009,

14   reveals that IGWT 826 Investments **directly funded** Omni 808's extension of

15   supposed credit to MGA.[55]  Thus, Larian appears to be funneling those hidden

16   profits through the Omni Parties and then pumping them back into MGA disguised

17   as debt.[56]  In addition to concealing MGA's true profits, such a  scheme would

18   enable MGA to artificially inflate the amount of debt that MGA will seek to deduct

---

[50]   OmniNet Capital, LLC's offer letter to Wachovia Bank, dated July 29, 2008, Corey Dec., Exh. 2.

[51]   Declaration of Michael J. Wagner, dated March 24, 2009 ("Wagner Dec."), ¶ 13, and lodged concurrently herewith.¶

[52]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 27, Corey Dec., Exh. 1.

[53]   See Declaration of Cyrus Naim in Support of Mattel's *Ex Parte* Application For Appointment of a Receiver, dated January 2, 2009, at ¶ 2, Corey Dec., Exh. 21.

[54]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 26-27, Corey Dec., Exh. 1.

[55]   See Secured Delayed Draw Demand Note, Corey Dec., Exh. 3.

[56]   See Secured Delayed Draw Demand Note, Corey Dec., Exh. 3.

1  from any disgorged profits Mattel seeks as part of its damages or from any net worth

2  calculation for punitive damages purposes.[57]

3       Further discovery into these issues is appropriate.  Had the Discovery

4  Master been aware of (1) the Omni Parties' affiliation with Larian and MGA, and (2)

5  the Omni Parties' involvement in the MGA Parties' efforts to conceal their true

6  profits from the sale of MGA products and to disguise those profits as debt, his

7  analysis of the relevance of Mattel's subpoenas would have been "necessarily

8  different."  Accordingly, reconsideration is appropriate here.

9           **1.    Mattel's Requests Are Relevant To Net Worth.**

10       In the March 10, 2009 Order, the Discovery Master rejected the MGA

11  Parties' argument that net worth and financial condition were irrelevant to Phase 2

12  and compelled Omni 808, IGWT 826 and IGWT Group to produce documents

13  relevant to Mattel's damages claims.[58]  The Discovery Master did not compel the

14  production of documents by OmniNet or Vision Captial, and did not compel Omni

15  808 to produce documents regarding its ownership and management.

16       In light of the recently-revealed facts, Mattel's requests properly seek

17  documents pertinent to determine the "book value" of MGA, as relevant to net

18  worth.[59]  A key to determining MGA's "book value" is assessing whether reported

19  liabilities, such as its alleged debt, are legitimate—assessing whether there is a

20  reasonable possibility that the company will be required to pay those liabilities in

21

22  _____

   [57]  Indeed, during the Phase 1 trial, MGA sought to introduce evidence of its claimed
23  debt to Wachovia as bearing on MGA's and Larian's net worth.  See August 7, 2008 A.M.
   Trial Transcript, at 6260:4-10 (discussing the Wachovia debt and claiming that "[i]t goes
24  to the immediate valuation and financial condition of MGA and its bearing on Mr. Larian's
   net worth."), Corey Dec., Exh. 22.
25  [58]  See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 19-20, 26-27,
26  Exh. 1.
   [59]  Declaration of Michael J. Wagner, dated March 24, 2009 ("Wagner Dec."), ¶¶ 9-15,
27  and lodged concurrently herewith.

28

-15-

1   full at some point in the future.  If the liability will not have to be repaid, then that

2   "liability" should not be deducted from MGA's book value and its net worth.[60]   To

3   evaluate whether MGA's purported debt is truly a liability, documents related to the

4   source of the funding, the ultimate owners of the debt, the course of performance

5   regarding payment or non-payment and any agreements or understandings between

6   MGA or Larian and the source of the funds are pertinent.[61]

7          The documents recently produced by Wachovia demonstrate that both

8   Omni 808 and OmniNet are ███████████ [62] and that Larian holds ████

9   ███████████████ [63]  Isaac Larian's brother-in-law also

10  recently admitted he is a principal of Vision Capital.[64]   The true identity of the

11  persons controlling, and ultimately owning, the Omni Parties is relevant because it

12  will reveal whether these are truly arm's-length transactions or not, and the

13  likelihood that MGA will pay (or be obligated to pay) on the alleged liability.

14  Accordingly, Mattel respectfully requests that the Discovery Master reconsider his

15  Order and compel all of the Omni Parties to produce documents related not only to

16  the existence of MGA's debt and related communications, but also related to the

17  Omni Parties' ownership and management.

18

19

20  _____

21   [60]  Wagner Dec., ¶¶ 10-11.

22   [61]  Wagner Dec., ¶¶ 9-15.
     [62]  See Senior Promissory Note, dated September 3, 2008, Corey Dec., Exh. 4 (████

23   ████████);
     see also September 8, 2008 Wachovia Memo. at WACHOVIA 001886, Corey Dec., Exh. 5

24   (summarizing terms of Wachovia's Senior Note and stating that ███████████

25   ████████████████████).
     [63]  OmniNet Capital, LLC's offer letter to Wachovia Bank, dated July 29, 2008, Corey

26   Dec., Exh. 2.
     [64]  See Motion to Quash Subpoenas Issued by Mattel to Leon Neman, Fred Mashian

27   and Neil Kadisha, dated March 12, 2009, at 2, Corey Dec., Exh. 20.

28

### 2.   **Mattel Seeks Documents Relevant To Disgorgement.**

Although the Discovery Master recognized that Mattel might be entitled discovery on its claim for disgorgement "as a general proposition," he nonetheless concluded that "none of the [Omni Parties] is alleged to have 'received money that properly belonged to Mattel.'"[65]  From the facts which have emerged since the issuance of the March 10, 2009 Order, it appears the opposite is true:  the Omni Parties have received, or expect to receive, monies from MGA and Larian that properly belong to Mattel.  This is especially apparent in light of the fact that Omni 808 received funds from IGWT 826, which received funds rightly belonging to Mattel.[66]

### 3.   **The Requests Are Relevant To Mattel's Unfair Competition Claim.**

In finding the IGWT discovery relevant to Mattel's unfair competition claim, the Discovery Master ruled:

> Among other things, the Court's December 3, 2008 order imposes a constructive trust on the proceeds of MGA's sales of the subject inventory. If, as Mattel argues, MGA's sale of that inventory to the [IGWT Parties] constitutes a scheme on the part of Larian to enrich himself by depriving Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then such conduct would constitute an unlawful attempt to circumvent the Court's order and arguably render the transaction between MGA and the [IGWT Parties] an anti-competitive business practice that is unlawful, unfair or fraudulent to other toy manufacturers, including Mattel.[67]

However, in his March 10, 2009 Order, the Discovery Master determined that the MGA Parties' possible manipulation of its sources of funding to

---

[65]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 19, Corey Dec., Exh. 1.
[66]   See Secured Delayed Draw Demand Note, Corey Dec., Exh. 3.
[67]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 27, Corey Dec., Exh. 1.

07975/2850408.1

acquire its own debt cannot be unfair competition because it did not involve the "marketing or sale of anything" and "does not fall within the ambit of the Unfair Competition Law."[68]

The newly-produced evidence indicates that Omni 808 is directly implicated in anti-competitive practices. As a recipient of proceeds from IGWT 826 which it used to extend alleged credit to MGA, Omni 808 appears to be a direct participant in the Larian's fraudulent efforts to circumvent the Court's December 3, 2008 ruling by concealing MGA's true profits.

### C.   Mattel's Requests Seek Documents From The Omni Parties Which Cannot Be Obtained From MGA.

#### 1.   The Omni Parties Have Admitted That MGA Does Not Possess Requested Documents.

In compelling the IGWT Parties to produce documents, the Discovery Master noted that "the MGA parties presumably do not have custody" of some of the requested documents.[69] The Discovery Master stated that "[t]he unavailability of these relevant documents from any other source weighs heavily in favor of enforcing the Subpoena to IGWT Group LLC."[70] Mattel's subpoena to the Omni Parties should be enforced for the same reason. As the Omni Parties have themselves admitted, they are in the sole possession of certain documents sought by Mattel.

For example, Mattel's requests to the Omni Parties seek documents related to the Omni Parties' formation and the identities of their principals, as well as documents showing the nature and terms of Omni's claimed acquisition of the Wachovia debt. According to Omni itself, "Omni is in the best (and perhaps only)

---

[68] See id. at 24.
[69] See id. at 26.
[70] See id.

position to describe the facts and circumstances surrounding its purchase of the Senior Bank Credit Facility from Wachovia."[71]   Further, at the March 4, 2009 Discovery Master hearing, counsel for the Omni Parties represented that MGA was not a direct party to the Omni-Wachovia transaction, since those negotiations were solely between Omni and Wachovia:

> Now, it's true MGA was not a party directly to the transaction between Omni 808 and Wachovia.  They had to sign some guarantees,  I think, or some indemnifications, I'm not sure exactly, I'm not a corporate guy.  But that deal was negotiated between Omni 808 and Wachovia.[72]

Because Mattel's requests to the Omni Parties seek documents which they themselves indicate are not available from any other source—including from MGA—Mattel's subpoenas to the Omni Parties should be enforced.

### 2.   It Has Been Only Through Third-Party Discovery That Mattel Was Able to Disprove MGA Entertainment's and Larian's Misrepresentations to the Court and Regarding Discovery Compliance.

The Discovery Master specifically denied some of the third-party discovery sought by Mattel with a note that Mattel had not "move[d] to compel MGA to produce this information in the first instance."[73]   Mattel respectfully disagrees with the proposition that parties must seek to compel party discovery before it can seek non-party discovery, or in place of non-party discovery.  While courts generally afford non-parties a broader level of protection from *burdensome* discovery, parties have a right to non-party discovery without regard to the

---

[71]   See Omni 808 Investors, LLC's Reply in Support of *Ex Parte* Application for Leave to Intervene, dated February 9, 2009, at 10, Corey Dec., Exh. 23.

[72]   See March 4, 2009 Discovery Master Hearing Transcript, at 55:22-56:2, Corey Dec., Exh. 17.

discovery they can obtain from parties to the litigation.  See, e.g. Viacom Intern., Inc. v. YouTube, Inc., 2008 WL 3876142, at *3 (N.D.Cal. 2008) ("Thus, there is no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession.").

This is particularly true here, given the defendants' lack of trustworthiness and repeated violations of court orders.  The Phase 1 jury found that MGA had fraudulently concealed its misconduct in this case.[74]  Larian also ████ ████████████████████████████, leading the Court to strike his testimony.[75]  And, if anything is the hallmark of this litigation, it is third-party discovery—and only third-party discovery—which has repeatedly exposed the falsity of MGA's and Larian's testimony and claims, including as found by the jury in Phase 1.

As set forth in detail below, the truth in this case has been revealed only because of third party discovery, and the time has long since passed that MGA and Isaac Larian should be given the benefit of the doubt.

### (a)   MGA Denied That Other Mattel Employees Worked On Bratz; Third Party Discovery Proved Otherwise.

For years, MGA claimed that Carter Bryant was the only employee of Mattel who worked on Bratz while a Mattel employee.[76]  From 2000 to 2005, MGA funneled millions of dollars in payments to its agents and contractors Veronica and Peter Marlow.[77]  Through the Marlows, MGA secretly paid three more then-Mattel

---

[73]   See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 20 n.19, Corey Dec., Exh. 1.

[74]   See Phase 1B Verdict Form As Given, at 8, Corey Dec., Exh. 34.

[75]   See Transcript of Sealed Chambers Proceedings, dated August 15, 2008, at 7631:4-7632:20, 7643:20-7644:7, Corey Dec., Exh. 32; August 15, 2008 P.M. Trial Transcript at 7676:5-14, Corey Dec., Exh. 33.

[76]   See Deposition of Lisa Tonnu, Vol. 2, dated September 24, 2007, at 297:15-298:10, Corey Dec., Exh. 50.

[77]   See Trial Tr. (June 24, 2008 ) at 3649:20-3650:1, Corey Dec., Exh. 26.

MATTEL'S MOTION FOR RECONSIDERATION

1   Design Center employees to work on hundreds of Bratz products.[78]   MGA continued

2   its bribery of these Mattel employees for secret work on Bratz over the span of five

3   years -- even after this lawsuit was filed in 2004.[79]   Yet, during more than three

4   years of discovery, MGA never disclosed these facts, despite Court Orders

5   compelling MGA to fully disclose Mattel employees who were working on Bratz.[80]

6   MGA's illegal conduct was exposed only in the course of third-party Veronica

7   Marlow's document production and then her deposition in late December 2007—a

8   deposition which MGA had long obstructed from happening.[81]   Upon further

9   investigation, Mattel also discovered from the Marlows that these illegal payments

10   had further been concealed by paying the employees in cash and through the use of

11   false names and false social security numbers.[82]

12           **(b)**   **MGA Denied that Work On Bratz Commenced Before**

13                       **Bryant Left Mattel; Third Party Discovery Proved that**

14                       **Was False.**

15           MGA and Bryant also were adamant that no work occurred on Bratz

16   before Bryant left Mattel and initially claimed that MGA's 10,000 page production

17   was substantially all documents related to Bryant and to the early development of

18   Bratz.[83]   Yet, Anna Rhee, a third party engaged by Bryant and paid by MGA,

19

20   _____

21   [78]   See TX 13223, Corey Dec., Exh. 37.

   [79]   See Trial Tr. (June 24, 2008 ) at 3670:5-22, Corey Dec., Exh. 26.

22   [80]   See Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses by MGA, dated May 15, 2007, at 12, Corey Dec., Exh. 38.

23   [81]   Mattel, Inc.'s Motion for Order Confirming that the Discovery Master Hears and

24   Resolves All Discovery Disputes, Including Those With Third Parties, dated December 13, 2007, at 5:18-6:4, Docket No. 1244, Corey Dec., Exh. 25.

25   [82]   See Trial Tr. (June 24, 2008 ) at 3673:5-3674:1, Corey Dec., Exh. 26.

   [83]   MGA represented in opposition to Mattel's February 2, 2007 motion to compel

26   production of documents and interrogatory answers that Mattel's motion was unnecessary

27   because "as of the date of this opposition [February 21, 2007], [MGA] will have produced virtually all, if not all, of the documents at issue."   See MGA Entertainment, Inc.'s

28   (footnote continued)

produced documents in January 2005 pursuant to subpoena and confirmed at her deposition that invoices she submitted to MGA in June 2000 were invoices for work on Bratz dolls.[84]  It was only after this was exposed that MGA suddenly produced the invoices in question and their alleged internal backup.[85]

Likewise, in September 2006, another third-party witness, Steven Linker, produced design drawings, emails and other documents relating to Bratz that Linker had received *from or exchanged with MGA and Bryant* well before Bryant left Mattel.[86]  Linker's testimony and the documents he produced established that the Bratz project was much further along before Bryant left Mattel than MGA and Bryant had claimed.  For example, before Linker's testimony, MGA had produced an email relating to Bratz development that Linker's design partner, Liz Hogan, had sent to MGA on October 23, 2000—a date after Bryant had left Mattel.  MGA, however, had not produced the <u>earlier</u> emails—which pre-dated Bryant's departure from Mattel—that Hogan had exchanged with MGA on that very same subject.[87]  Mattel obtained those only when Linker produced them pursuant to subpoena.  These were not the only documents that MGA withheld.  Among Linker's production was a key design drawing for the three-dimensional Bratz dolls—a drawing Bryant previously testified at his deposition that he had not created until

Opposition to Mattel, Inc.'s Motion to Compel Production of Documents and Interrogatory Answers, dated February 21, 2007 at 2:15-17, Corey Dec., Exh. 29.  In reality, MGA had produced about 10,000 pages of documents at that time.  Corey Dec., ¶ 30.
[84]   Deposition of Anna Rhee, dated January 7, 2005, at 105:2-110:9, Corey Dec., Exh. 40; Rhee Invoice, Corey Dec., Exh. 41.
[85]   <u>See, e.g.</u>, Rhee Invoice from MGA's Production, Corey Dec., Exh. 42.
[86]   Deposition of Steven Linker, dated September 13, 2006, at 56:21-59:23, 66:7-67:9, 76:22-78:23, 80:16-91:5, Corey Dec., Exh. 43; Hogan emails, Corey Dec., Exh. 44; Bratz design drawing by Carter Bryant, Bates No. SL00044, which was part of Exhibit 323—a packet of drawings and specifications produced by Steve Linker that he received from MGA on October 19, 2000, Corey Dec., Exh. 45.
[87]   Hogan email from MGA's Production, Corey Dec., Exh. 46.

1   November 2000 after he had left Mattel.[88]  Linker's testimony and the documents he
2   produced, however, proved that MGA itself gave that same design drawing (as well
3   as other Bratz development documents) to Linker at a meeting with MGA on
4   October 19, 2000, <u>before</u> Bryant left Mattel.[89]  It was only after Linker's deposition,
5   and MGA's glaring omissions had been revealed, that MGA then produced
6   documents referencing the October 19, 2000 meeting between Linker and MGA that
7   Linker had revealed in his deposition[90] and also that MGA then admitted this key
8   Bratz design drawing had in fact been made while Bryant was still a Mattel
9   employee.[91]

### (c)    Despite Court Orders, MGA Also Withheld From Mattel Financial Information That Mattel Learned Existed Only Once It Was Produced By Third Parties.

13          After being ordered to produce documents relating to his net worth,
14   Larian produced two documents prepared by MGA's internal accountants,
15   estimating MGA's net worth as of October 2007 to be $2 billion.[92]  In response to an
16   order compelling MGA to produce a <u>Rule</u> 30(b)(6) witness to testify about its net
17   worth, the designee, Lisa Tonnu, testified that "MGA doesn't have net worth
18   calculations."[93]

---

[88]     Deposition of Carter Bryant, at 350:16-350:25, 351:15-353:13, 527:17-528:20, Corey Dec., Exh. 47; Bratz design drawing by Carter Bryant, Corey Dec., Exh. 48.
[89]     Linker Deposition, at 77:6-78:23, Corey Dec., Exh. 43; Bratz design drawing by Carter Bryant produced by Steve Linker, Corey Dec., Exh. 45.
[90]     Day Planner Pages, Corey Dec., Exh. 49.
[91]     Deposition Transcript of Paula Garcia, Vol. 2, dated May 25, 2007, at 589:25-592:7, Corey Dec., Exh. 30.
[92]     <u>See</u> Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Documents by Isaac Larian, dated December 31, 2007, at 15-16, Corey Dec. Exh. 31.
[93]     Deposition Tr. of Lisa Tonnu, Volume 2, dated September 24, 2007, at 333:5, Corey Dec., Exh. 50.

MATTEL'S MOTION FOR RECONSIDERATION

After the jury found for Mattel at the Phase 1(a) trial and the parties proceeded to the damages phase (when it was in MGA's and Larian's interest to understate their net worth), MGA produced documents from Moss Adams, Larian's accountants,[94] that purported to ███████████████████████████ ███████[95]—three months *before* defendants' previously-produced spreadsheet indicating ███████████████.[96] Ms. Tonnu, the designee who testified **that no such documents existed, was the person who requested and received the Moss Adams appraisal**—and indeed had done so on a regular basis for years.[97]   The document also stated on its face that MGA received it from Moss Adams on October 12, 2007,[98] but MGA withheld it for months and produced it only mid-trial.[99]

Mattel had subpoenaed this very type of document from Moss Adams in November 2007 in a request that reads:  "To the extent not included in your production responsive to Request Nos. 1-6, all DOCUMENTS indicating MGA's net worth."[100]   MGA Entertainment and Larian moved to quash the Moss Adams

---

[94]   Moss Adams's Valuation Analysis of MGA Entertainment, Inc. as of June 30, 2007, Cover Letter to MGA dated October 12, 2007, Corey Dec., Exh. 24.
[95]   See id.
[96]   Compare id. with TX 4947, Corey Dec., Exh. 27.  MGA/Larian had financial incentive to encourage Moss Adams to lowball the valuation because this number was to be used to calculate phantom-stock bonus payments to certain employees.
[97]   At her September 24, 2007 deposition, MGA's Rule 30(b)(6) designee, Lisa Tonnu, testified not only that she did not know MGA's net worth, but that she didn't "deal with net worth valuations and net worth calculations."  Deposition Tr. of Lisa Tonnu, Volume 2, dated September 24, 2007, 333:3-334:21, Corey Dec., Exh. 50.  However, the Moss Adams valuation references prior valuations that Moss Adams had done, and Ms. Tonnu herself was the person who had been dealing with Moss Adams and had requested the valuation.  Moss Adams's Valuation Analysis of MGA Entertainment, Inc. as of June 30, 2007, Cover Letter to MGA dated October 12, 2007, Corey Dec., Exh. 24.
[98]   Moss Adams's Valuation Analysis of MGA Entertainment, Inc. as of June 30, 2007, Cover Letter to MGA dated October 12, 2007, Corey Dec., Exh. 24.
[99]   See Corey Dec. at ¶ 25.
[100]   See Mattel's Subpoena to Moss Adams, dated November 26, 2007, Corey Dec., Exh. 35.

1   subpoena, among others, because MGA and Larian claimed the documents were
2   "duplicative" of ones they were already compelled to produce and professed to have
3   produced all of the net worth documents that Mattel needed.[101]   Based on those
4   representations,[102] Mattel was prevented from getting this appraisal or any other
5   documents related to MGA's/Larian's net worth from Moss Adams in discovery, and
6   thus prevented from using these to impeach Larian or to call Tonnu to impeach
7   Larian at trial.

8            Nor can MGA or the Omni Parties claim that such discovery
9   misconduct is a thing of the past.  The production last week by Wachovia—a third
10  party—shows that even now MGA and Larian have continued to withhold financial
11  information, including information compelled by Court Order.   For example,
12  Wachovia produced multiple documents, including documents based on information
13  that **MGA** had been providing to Wachovia throughout 2007 and 2008, showing that
14  MGA's representations ▮▮▮▮▮▮▮▮▮▮▮▮ to the Court were simply
15  false.[103]   As another example, Wachovia produced a copy of the "Master
16  Assignment and Exchange Agreement," dated September 3, 2008, ▮▮▮▮▮▮▮
17  ▮▮▮▮▮▮, Isaac Larian and Larian relatives (who also are MGA shareholders
18  through various trusts) engaged in no fewer than ▮ financial transactions with
19  MGA purportedly valued at more than $▮▮▮▮.[104]   Neither MGA nor Larian
20  have ever produced this agreement, the promissory notes or any other documents
21  related to these transactions, despite repeated requests by Mattel and despite Court
22
23
24  [101]   See MGA's Motion to Quash Subpoenas or, in the Alternative, for Protective Order, dated December 21, 2007, at 13-19, Corey Dec., Exh. 36.
25  [102]   See Order Granting in Part and Denying in Part MGA Parties' Motion to Quash
26  Subpoenas; Granting in Part and Denying in Part Mattel's Counter Motion to Compel, dated May 7, 2008, at 10, Corey Dec., Exh. 39.
27  [103]   See Supp. Zeller Dec., Section IV.
    [104]   See Supp. Zeller Dec., at ¶ 11.
28

1  Orders compelling the production of such financial information.[105]  Nor have MGA

2  or Larian ever produced the documents discussed above showing their involvement

3  in the alleged acquisition of the Wachovia debt, or in funding Omni 808 or IGWT.

4         In short, MGA and Larian's record of misrepresentations under oath

5  and to the Court about facts, financial condition, and discovery compliance should

6  not be trusted, so Mattel's efforts to obtain this discovery from third parties is wholly

7  proper and indeed the only way the truth can be exposed.

8  **III.   MATTEL'S INDIVIDUAL SUBPOENA REQUESTS SPECIFICALLY**

9        **RELATE TO PHASE 2 ISSUES.**

10         Mattel's requests are narrowly tailored to obtain information regarding

11  the real parties behind the Omni Parties.  They seek documents:

12  - "sufficient to identify (a) each member, managing member,

13    holder of any ownership interest in, shareholder, officer and

14    director" of the Omni Parties and "(b) the dates of such person's

15    affiliation with" the Omni Parties;[106]

16  - "referring or relating to the formation and governance" of the

17    Omni Parties;[107]

18  - "setting forth the relationship" among the various third-party

19    entities;[108]

20  - "setting forth the relationship" between the Omni Parties and

21    MGA;[109]

22

23  [105]  See id.

24  [106]  See Mattel's Request No. 4 to Omni 808; Mattel's Request No. 5 to Vision Capital; Mattel's Request No. 4 to OmniNet.

25  [107]  See Mattel's Request No. 5 to Omni 808; Mattel's Request No. 6 to Vision Capital.

26  [108]  See Mattel's Request Nos. 6, 7 and 8 to Omni 808; Mattel's Request Nos. 7, 8 and 9 to Vision Capital; Mattel's Request Nos. 5, 6 and 7 to OmniNet.

27  [109]  See Mattel's Request No. 9 to Omni 808; Mattel's Request No. 10 to Vision Capital; Mattel's Request No. 8 to OmniNet.

28

- "setting forth the relationship" between the Omni Parties and Larian or his family members;[110] and

- "referring or relating to the source of funding" for the Omni Parties.[111]

Mattel's request are also reasonably calculated to discover relevant Phase 2 evidence about the Omni Parties' purported acquisition of MGA's debt, as well as the purported debt's terms, nature, amount and legitimacy (or lack thereof). Mattel seeks documents:

- "referring or relating to agreements, contracts or transactions between" the Omni Parties and MGA or Wachovia, and "any amendments or modifications thereto, and any communications referring or relating to any such agreements, contracts or transactions";[112]

- "referring or relating to agreements, contracts or transactions" between Vision Capital and Omni 808, or between Vision Capital and Lexington;[113]

- "containing financial information, including but not limited to historical and prospective financial performance, provided by MGA" to the Omni Parties since January 1, 2007;[114]

---

[110]   See Mattel's Request No. 10 to Omni 808; Mattel's Request No. 11 to Vision Capital; Mattel's Request No. 9 to OmniNet.
[111]   See Mattel's Request Nos. 11, 12 and 13 to Omni 808; Mattel's Request Nos. 12, 13 and 15 to Vision Capital; Mattel's Request Nos. 10, 11 and 12 to OmniNet.
[112]   See Mattel's Request Nos. 1 and 2 to Omni 808; Mattel's Request No. 1 to Vision Capital; Mattel's Request Nos. 1 and 2 to OmniNet.
[113]   See Mattel's Request Nos. 2 and 3 to Vision Capital.
[114]   See Mattel's Request No. 3 to Omni 808; Mattel's Request No. 4 to Vision Capital; Mattel's Request No. 3 to OmniNet.

MATTEL'S MOTION FOR RECONSIDERATION

1
2
3
4

- "referring or relating to transactions involving any compensation, loans, advances, payments, fees or any other form of consideration paid" by the Omni Parties to Larian, or to any individual or entity related to Larian, including MGA;[115] and

5
6

- Reflecting communications "referring or relating to" the Omni Parties, Mattel, MGA, Larian, Mashian or Bratz.[116]

7   As demonstrated above, documents showing (1) the true identities of
8   the Omni Parties' owners and managers, and (2) whether the Omni Parties'
9   ostensible acquisition of the Wachovia debt and subsequent extension of additional
10  alleged credit to MGA was legitimate, are directly relevant to Phase 2 damages. If
11  the Omni transactions were in fact related-party transactions and MGA is not under
12  an actual obligation to repay the debt, then MGA's purported "liability" should not
13  be deducted from its book value and, therefore, from its net worth.[117]  As shown, to
14  evaluate whether MGA's purported debt is truly a liability, documents related to the
15  source of the funding, the ultimate owners of the debt, the course of conduct such as
16  the history of payment or non-payment, and any agreements or understandings
17  between MGA or Larian and the source of the funds, are important.[118]  Further, as
18  explained above, such evidence is relevant to prove the amount of money that
19  defendants must disgorge and to show that MGA and Larian have engaged in unfair
20  business practices.

21
22
23

---

24  [115]   See Mattel's Request No. 15 to Omni 808; Mattel's Request No. 17 to Vision
25  Capital; Mattel's Request No. 13 to OmniNet.
    [116]   See Mattel's Request No. 17 to Omni 808; Mattel's Request No. 19 to Vision
26  Capital; Mattel's Request No. 14 to OmniNet.
27  [117]   See Wagner Dec., ¶¶ 9-15.
    [118]   See id.
28

## **Conclusion**

For the foregoing reasons, Mattel respectfully requests that the Discovery Master Discovery Master reconsider his March 10, 2009 Order as it pertains to the Omni Parties and compel the Omni Parties to produce documents in response to all of Mattel's document requests.

DATED:  March 24, 2009          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                By /s/ Michael T. Zeller
                                   Michael T. Zeller
                                   Attorneys for Mattel, Inc.

MATTEL'S MOTION FOR RECONSIDERATION