**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
Ann Jones, Paralegal (404) 881-7563

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

CT Corporation System
2295 Gateway Oaks Drive
Ste 185
Sacramento CA 95833

06-7090317861
10/30/2006  16:46

FILED
CALIFORNIA
SECRETARY OF STATE
SOS

10214810002   UCC 1 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| OR | MGA Entertainment (Mexico), Inc. | | | | | |
| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16380 Roscoe Blvd., Suite 200 | Van Nuys | CA | 91406 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| 20-0998523 | | Corporation | California | CA C2643976 | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| OR | | | | | | |
| | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|---|
| OR | Wachovia Bank, National Association, as Agent | | | | | |
| | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| One South Broad Street, PA 4830 | Philadelphia | PA | 19107 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All of the Debtor's right, title and interest in the following, whether now owned or hereafter acquired: (a) subject to the limitation set forth in Exhibit A attached hereto, equity interests in MGAE de Mexico SRL de CV, (b) related assets and (c) proceeds thereof, all as more particularly described on Exhibit A attached hereto.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
File with California Secretary of State                    MN 67608845-1

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)
Gardner 19513/315438

EXHIBIT __7__

PAGE __150__

1021481002

## Exhibit A

**Debtor:**
MGA Entertainment (Mexico), Inc.
16380 Roscoe Blvd., Suite 200
Van Nuys, California 91406

**Secured Party:**
Wachovia Bank, National Association, as Agent
One South Broad Street, PA 4830
Philadelphia, Pennsylvania 19107

All of Debtor's right, title and interest in, to and under the following (collectively, the "Collateral"):

(a) all Equity Interests now or hereafter acquired or held by Debtor in the issuer (the "Issuer") described in Schedule 1 attached hereto;

(b) all payments due or to become due to Debtor in respect of any of the foregoing;

(d) all of Debtor's claims, rights, powers, privileges, authority, puts, calls, options, security interests, liens and remedies, if any, in respect of any of the foregoing;

(e) all of Debtor's rights to exercise and enforce any and every right, power, remedy, authority, option and privilege of Debtor relating to any of the foregoing including, without limitation, any power to (i) terminate, cancel or modify any agreement, (ii) execute any instruments and to take any and all other action on behalf of and in the name of Debtor in respect of any of the foregoing and the applicable Issuer thereof, (iii) exercise voting rights or make determinations, (iv) exercise any election (including, but not limited to, election of remedies), (v) exercise any "put", right of first offer or first refusal, or other option, (vi) exercise any right of redemption or repurchase, (vii) give or receive any notice, consent, amendment, waiver or approval, (viii) demand, receive, enforce, collect or receipt for any of the foregoing, (ix) enforce or execute any checks, or other instruments or orders, and (x) file any claims and to take any action in connection with any of the foregoing;

(f) all certificates and instruments representing or evidencing any of the foregoing;

(g) all other rights, titles, interests, powers, privileges and preferences pertaining to any of the foregoing; and

(h) all Proceeds of any of the foregoing.

Notwithstanding the foregoing, Debtor has only granted a security interest in (x) 65% (or such greater percentage that, due to a change in an applicable law after October 27, 2006, (A) could not reasonably be expected to cause the undistributed earnings of the Issuer as determined for United States federal income tax purposes to be treated as a deemed dividend to the Issuer's United States parent and (B) could not reasonably be expected to cause any material adverse tax consequences) of the issued and outstanding Equity Interest of the Issuer entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) and (y) 100% of the issued and outstanding Equity Interest of the Issuer not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)).

As used herein:

"Equity Interest" means, with respect to any Person, any share of capital stock of (or other ownership interests in) such Person, any warrant, option or other right for the purchase or other

LEGAL02/30153146v1

A - 1

EXHIBIT 7

PAGE 151

acquisition from such Person of any share of capital stock of (or other ownership interests in) such Person, any security convertible into or exchangeable for any share of capital stock of (or other ownership interests in) such Person or warrant, right or option for the purchase or other acquisition from such Person of such shares (or such other ownership interests), and any other ownership interest in such Person (including, without limitation, partnership, member or trust interests therein), whether voting or nonvoting, and whether or not such share, warrant, option, right or other interest is authorized or otherwise existing on any date of determination.

"Person" means an individual, corporation, partnership, limited liability company, association, trust or unincorporated organization, or a government or any agency or political subdivision thereof.

"Proceeds" means all proceeds (including proceeds of proceeds) of any of the Collateral including all: (a) rights, benefits, distributions, premiums, profits, dividends, interest, cash, instruments, documents of title, accounts, contract rights, inventory, equipment, general intangibles, payment intangibles, deposit accounts, chattel paper, and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for, or as a replacement of or a substitution for, any of the Collateral, or proceeds thereof (including any cash, Equity Interests, or other instruments issued after any recapitalization, readjustment, reclassification, merger or consolidation with respect to the Issuers and any security entitlements, as defined in Section 8-102(a)(17) of the UCC, with respect thereto); (b) "proceeds," as such term is defined in Section 9-102(a)(64) of the UCC; (c) proceeds of any insurance, indemnity, warranty, or guaranty (including guaranties of delivery) payable from time to time with respect to any of the Collateral, or proceeds thereof; and (d) payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral, or proceeds thereof.

LEGAL02/30133146v1

EXHIBIT __7__

PAGE __152__

## SCHEDULE 1

### MGA Entertainment (Mexico), Inc.
### Pledged Equity Interests

| Issuer | Jurisdiction of Formation | Class of Equity Interest | Certificate Number (if any) | Percentage of Ownership |
|---|---|---|---|---|
| MGAE de Mexico SRL de CV | Mexico | Shares Parte Social | N/A | 65% |

EXHIBIT ___7___

PAGE ___153___

**FILING OFFICER STATEMENT**

**INTERNAL USE ONLY**

1.Identification of the Record to which this FILING OFFICER STATEMENT relates.

1a. INITIAL FINANCING STATEMENT #: 067090317861

1b. RECORD TO WHICH THIS STATEMENT RELATES:

DOCUMENT NUMBER: 10268190001
FILING NUMBER: 0670908369
FILE DATE/TIME: 11/3/2006 1:34:00 PM

THE ABOVE SPACE IS FOR THE CA FILING OFFICE USE ONLY

2. Describe the inaccuracy or mistake on the part of the file office:

- ☒ Debtor   ☐ Secured Party
- ☐ Name and Address not indexed.
- ☒ Name indexed incorrectly
- ☐ Address indexed incorrectly

- ☐ File Date entered incorrectly
- ☐ Wrong Action type entered
- ☐ Wrong Filing Type entered
- ☐ Filed in Error
- ☐ Other

3. Describe filing office administrative action taken as a result of inaccuracy or mistake (including date of each action).

- ☐ Added Name:
- ☐ Address:
- ☒ Corrected Name from: MGA EMTERTAINMENT (MEXICO), INC.
- ☒ To: MGA ENTERTAINMENT (MEXICO), INC.
- ☐ Corrected Address from:
- ☐ To:
- ☐ Corrected File Date from          to
- ☐ Re-entered the UCC3          as a
- ☐ Changed the Filing Type from          to
- ☐ Document Deleted
- ☐ Other:

4. Additional Explanation (if applicable):

EXHIBIT 7
PAGE 154

**UCC FINANCING STATEMENT AMENDMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Ann Jones, Paralegal (404) 881-7563

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

    UCC Direct Services
    1232 Q St
    Sacramento CA 95814
    Account 10010537
    CDD

**07-71137422**
**05/14/2007  11:35**

**FILED**
CALIFORNIA
SECRETARY OF STATE
SOS

12649850003   UCC 3 FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
06-7090317861 filed 10/30/06

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the ☐ REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:
6a. ORGANIZATION'S NAME

OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7. CHANGED (NEW) OR ADDED INFORMATION:
7a. ORGANIZATION'S NAME

OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☒ restated collateral description, or describe collateral ☐ assigned.

All of the Debtor's right, title and interest in the following, whether now owned or hereafter acquired: (a) subject to the limitation set forth in Exhibit A attached hereto, equity interests in MGAE de Mexico SRL de CV, (b) related assets and (c) proceeds thereof, all as more particularly described on Exhibit A attached hereto.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.
9a. ORGANIZATION'S NAME
Wachovia Bank, National Association, as Agent

OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

10. OPTIONAL FILER REFERENCE DATA
File with California Secretary of State; Debtor Name: MGA Entertainment (Mexico), Inc.   6926A88SO

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)
Gardner 19513/15638

JBM

EXHIBIT ___7___

PAGE ___155___

1254965000 3

## Exhibit A

**Debtor:**
MGA Entertainment (Mexico), Inc.
16380 Roscoe Blvd., Suite 200
Van Nuys, California 91406

**Secured Party:**
Wachovia Bank, National Association, as Agent
One South Broad Street, PA 4830
Philadelphia, Pennsylvania 19107

All of Debtor's right, title and interest in, to and under the following (collectively, the "Collateral"):

(a)     all Equity Interests now or hereafter acquired or held by Debtor in issuer (the "Issuer") described in Schedule 1 attached hereto;

(b)     all payments due or to become due to Debtor in respect of any of the foregoing;

(c)     all of Debtor's claims, rights, powers, privileges, authority, puts, calls, options, security interests, liens and remedies, if any, in respect of any of the foregoing;

(d)     all of Debtor's rights to exercise and enforce any and every right, power, remedy, authority, option and privilege of Debtor relating to any of the foregoing including, without limitation, any power to (i) terminate, cancel or modify any agreement, (ii) execute any instruments and to take any and all other action on behalf of and in the name of Debtor in respect of any of the foregoing and the applicable Issuer thereof, (iii) exercise voting rights or make determinations, (iv) exercise any election (including, but not limited to, election of remedies), (v) exercise any "put", right of first offer or first refusal, or other option, (vi) exercise any right of redemption or repurchase, (vii) give or receive any notice, consent, amendment, waiver or approval, (viii) demand, receive, enforce, collect or receipt for any of the foregoing, (ix) enforce or execute any checks, or other instruments or orders, and (x) file any claims and to take any action in connection with any of the foregoing;

(e)     all certificates and instruments representing or evidencing any of the foregoing;

(f)     all other rights, titles, interests, powers, privileges and preferences pertaining to any of the foregoing; and

(g)     all Proceeds of any of the foregoing.

Notwithstanding the foregoing, (x) in no event shall the Debtor be required to subject to the Lien of the Pledge Agreement or any other loan document more than 65% (or such greater percentage that, due to a change in an Applicable Law after October 27, 2006, (A) could not reasonably be expected to cause the undistributed earnings of such Foreign Subsidiary as determined for United States federal income tax purposes to be treated as a deemed dividend to such Foreign Subsidiary's United States parent and (B) could not reasonably be expected to cause any material adverse tax consequences) of the issued and outstanding Equity Interest of a Foreign Subsidiary entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) determined on a collective basis, but (y) the Debtor shall be required to subject to the Lien of the Pledge Agreement 100% of the issued and outstanding Equity Interest of a Foreign Subsidiary not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)).

EXHIBIT ___7___

PAGE ___156___

As used herein:

"Equity Interest" means, with respect to any Person, any share of capital stock of (or other ownership interests in) such Person, any warrant, option or other right for the purchase or other acquisition from such Person of any share of capital stock of (or other ownership interests in) such Person, any security convertible into or exchangeable for any share of capital stock of (or other ownership interests in) such Person or warrant, right or option for the purchase or other acquisition from such Person of such shares (or such other ownership interests), and any other ownership interest in such Person (including, without limitation, partnership, member or trust interests therein), whether voting or nonvoting, and whether or not such share, warrant, option, right or other interest is authorized or otherwise existing on any date of determination.

"Person" means an individual, corporation, partnership, limited liability company, association, trust or unincorporated organization, or a government or any agency or political subdivision thereof.

"Proceeds" means all proceeds (including proceeds of proceeds) of any of the Collateral including all: (a) rights, benefits, distributions, premiums, profits, dividends, interest, cash, instruments, documents of title, accounts, contract rights, inventory, equipment, general intangibles, payment intangibles, deposit accounts, chattel paper, and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for, or as a replacement of or a substitution for, any of the Collateral, or proceeds thereof (including any cash, Equity Interests, or other instruments issued after any recapitalization, readjustment, reclassification, merger or consolidation with respect to the Issuers and any security entitlements, as defined in Section 8-102(a)(17) of the UCC, with respect thereto); (b) "proceeds," as such term is defined in Section 9-102(a)(64) of the UCC; (c) proceeds of any insurance, indemnity, warranty, or guaranty (including guaranties of delivery) payable from time to time with respect to any of the Collateral, or proceeds thereof; and (d) payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral, or proceeds thereof.

EXHIBIT 7

PAGE 157

## SCHEDULE 1

MGA Entertainment (Mexico), Inc.
Pledged Equity Interests

| Issuer | Jurisdiction of Formation | Class of Equity Interest | Certificate Number (if any) | Percentage of Ownership |
|---|---|---|---|---|
| MGAE de Mexico SRL de CV | Mexico | Shares Parte Social | N/A | 100% |

LEGAL02/30237046v2

EXHIBIT 7
PAGE 158

**08-71714107**

**09/09/2008 16:03**

**FILED**
CALIFORNIA
SECRETARY OF STATE

SOS

18335690005   UCC 3 FILING

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

76-0000-158-2

CL@S
INFORMATION SERVICES
WWW.CLOSMIB.COM
1022 HURLEY WAY, SUITE 150
SACRAMENTO, CA 95825
TEL:916.554.3166/916.932.5010
FAX:916.554.3199

errand number   1036 AM/RW

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # 06-7090317861 | 10/30/06 | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the ☐ REAL ESTATE RECORDS. |
|---|---|---|

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. **X ASSIGNMENT (full):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment effects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. **CURRENT RECORD INFORMATION:**

OR

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. **CHANGED (NEW) OR ADDED INFORMATION:**

OR

| 7a. ORGANIZATION'S NAME **OMNI 808 Investors LLC, as Agent** | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS **9420 Wilshire Blvd., Suite 400** | CITY **Beverly Hills** | STATE **CA** | POSTAL CODE **90212** | COUNTRY **USA** |
|---|---|---|---|---|

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION **Limited Liability Company** | 7f. JURISDICTION OF ORGANIZATION **California** | 7g. ORGANIZATIONAL ID #, if any ☐ NONE |
|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment

OR

| 9a. ORGANIZATION'S NAME **Wachovia Bank, National Association, as Agent** | | | |
|---|---|---|---|
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. **OPTIONAL FILER REFERENCE DATA**
Debtor: MGA Entertainment (Mexico), Inc.                    CA-SOS

FILING OFFICE COPY – NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC 3) (REV. 07/29/98)

A/72646923.1/3003762-0000308275

EXHIBIT ___**7**___

PAGE ___**159**___

# EXHIBIT 8

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

District of _____    Delaware _____

CARTER BRYANT, an individual,

**SUBPOENA IN A CIVIL CASE**

V.

MATTEL, INC., a Delaware corporation,

Case Number: [1]  C.D.Cal. CV 04-9049 SGL(RNBx)
Consolidated with cases CV 04-9059
and 05-2727

TO: Vision Capital, LLC
   800 Delaware Avenue
   Wilmington, DE 19801

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| National Legal Process Servers, Inc. Attn: Kim Ryan 2008 Pennsylvania Ave., Ste. 207 Wilmington, DE 19806 | January 26, 2009 9:00 a.m. |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Jon Corey /SH Attorney for Plaintiff, Mattel, Inc. | January 12, 2009 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jon Corey, QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017 (213) 443-3000

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

EXHIBIT **8**

PAGE **160**

AO88  (Rev. 12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

**(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.**

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) DUTIES IN RESPONDING TO A SUBPOENA.**

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) CONTEMPT.**

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

EXHIBIT __8__

PAGE __161__

## ATTACHMENT A

1.      All documents referring or relating to agreements, contracts or transactions between MGA Entertainment, Inc. and Vision Capital, LLC, or any subsidiary or affiliate of Vision Capital, LLC, and any amendments or modifications thereto, and any communications referring or relating to any such agreements, contracts or transactions.

2.      All documents referring or relating to agreements, contracts or transactions between Vision Capital, LLC, or any subsidiary or affiliate of Vision Capital, LLC, and Lexington Financial, LLC, or any subsidiary or affiliate of Lexington Financial, LLC, and any amendments or modifications thereto, and any communications referring or relating to any such agreements, contracts or transactions.

3.      All documents referring or relating to agreements, contracts or transactions between Vision Capital, LLC, or any subsidiary or affiliate of Vision Capital, LLC, and Omni 808 Investors, LLC, or any subsidiary or affiliate of Omni 808 Investors, LLC, and any amendments or modifications thereto, and any communications referring or relating to any such agreements, contracts or transactions.

4.      All documents containing financial information, including but not limited to historical and prospective financial performance, provided by MGA Entertainment, Inc. to Vision Capital, LLC, or any subsidiary or affiliate of Vision Capital, LLC, since January 1, 2007.

5.      Documents sufficient to identify (a) each member, managing member, holder of any ownership interest in, shareholder, officer and director of Vision Capital, LLC and (b) the dates of such person's affiliation with Vision Capital, LLC.

6.      All documents referring or relating to the formation and governance of Vision Capital, LLC.

7.      All documents detailing or setting forth the relationship between Vision Capital, LLC and OmniNet Capital, LLC, if any.

8.      All documents detailing or setting forth the relationship between Vision Capital, LLC and Omni 808 Investors, LLC, if any.

9.      All documents detailing or setting forth the relationship between Vision Capital, LLC and Lexington Financial, LLC, if any.

10.     All documents detailing or setting forth the relationship between Vision Capital, LLC and MGA Entertainment, Inc., if any.

1

EXHIBIT ___8___

PAGE ___162___

11.    All documents detailing or setting forth the relationship between Vision Capital, LLC and Isaac Larian or his family members, if any.

12.    All documents referring or relating to the source of funding or credit for Lexington Financial, LLC.

13.    All documents referring or relating to the source of funding or credit for Omni 808 Investors, LLC.

14.    All documents referring or relating to the source of funding or credit for MGA Entertainment, Inc. or any of its subsidiaries or affiliates.

15.    All documents referring or relating to all contributions, loans and any sources of funding for Vision Capital, LLC during the last twelve months, including but not limited to agreements and/or contracts supporting these transactions.

16.    All documents showing detail of all loan facilities with an indication of creditor and relevant terms referring or relating to MGA Entertainment, Inc., OmniNet Capital, LLC, Omni 808 Investors, LLC, Lexington Financial, LLC or any subsidiary or affiliate of the foregoing, or to Isaac Larian or his family members.

17.    All documents referring or relating to transactions involving any compensation, loans, advances, payments, fees or any other form of consideration paid by Vision Capital, LLC to Isaac Larian, his family members, or affiliates, or any other related party, including MGA Entertainment, Inc.

18.    Any and all records that substantiate transfers of assets by Vision Capital, LLC to other entities, individuals, and/or parties, within the U.S. and outside of the U.S.

19.    All communications referring or relating to Omni 808 Investors, LLC, Lexington Financial, LLC, Mattel, MGA, Isaac Larian, Fred Mashian and/or Bratz.

20.    All documents referring or relating to the U.C.C. financing statement attached as Exhibit 1 and/or the security interest(s) allegedly reflected therein.

2

EXHIBIT  8

PAGE  163

# EXHIBIT 1

EXHIBIT __8__

PAGE __164__

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
FRED MASHIAN
3102747501

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
FRED MASHIAN
9255 SUNSET BOULEVARD
SUITE 830
LOS ANGELES, CA 90069
USA

DOCUMENT NUMBER: 182308300 02
FILING NUMBER: 08-7170410100
FILING DATE: 08/29/2008 14:33
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| VISION CAPITAL, LLC, A DELAWARE LIMITED LIABILITY COMPANY | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 1525 SOUTH BROADWAY | LOS ANGELES | | CA | 90015 | USA |
| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any | |
| | | LLC | DE | 4588295 | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any | ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| LEXINGTON FINANCIAL LIMITED, A NEVIS COMPANY | | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 33-35 DAWS LANE | LONDON | | | NW7 4SD | GBUK |

**4. This FINANCING STATEMENT covers the following collateral:**
ALL OF DEBTOR'S RIGHT, TITLE AND INTEREST IN MEMBERSHIP INTERESTS OF OMNI 808 INVESTORS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY,
SECRETARY OF STATE FILING #200811610026.

**5. ALT DESIGNATION: ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING**

| 6. This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]  [optional] ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2 |
|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

FILING OFFICE COPY

EXHIBIT  *8*

PAGE  *165*

# EXHIBIT 9

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

_____CENTRAL_____ _____CALIFORNIA_____

CARTER BRYANT, an individual,

**SUBPOENA IN A CIVIL CASE**

V.

MATTEL, INC., a Delaware corporation,

Case Number: . CV 04-9049 SGL (RNBx)
Consolidated with cases CV 04-9059
and 05-2727

TO: IGWT Group, LLC, C/O: National Corporate Research, Ltd.
523 West 6th Street, Suite 544
Los Angeles, CA 90014

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | January 26, 2009 |
| 865 S. Figueroa Street, 10th Floor | 9:00 a.m. |
| Los Angeles, CA 90017 |  |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Jon Corey /su* Attorney for Plaintiff, Mattel, Inc. | January 12, 2009 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jon Corey, QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017 (213) 443-3000

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

¹1 f action is pending in district other than district of issuance, state district under case number.

AO-88

EXHIBIT ___9___

PAGE ___166___

AO88  (Rev.  12/07) Subpoena in a Civil Case (Page 2)

| PROOF OF SERVICE | |
|---|---|
| DATE | PLACE |

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA
 (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees   on a party or attorney who fails to comply.
 (2) Command to Produce Materials or Permit Inspection.
 (A) Appearance Not Required. A person commanded to produce documents, not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
 (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
 (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance

 (3) Quashing or Modifying a Subpoena.
 (A) When Required  On timely motion, the issuing court must quash or modify a subpoena that:
 (i) fails to allow a reasonable time to comply,
 (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
 (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
 (iv) subjects a person to undue burden.
 (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
 (i) disclosing a trade secret or other confidential research, development, or commercial information.
 (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
 (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
 (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

 (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
 (ii) ensures that the subpoenaed person will be reasonably compensated.
(d) DUTIES IN RESPONDING TO A SUBPOENA.
 (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
 (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
 (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
 (2) Claiming Privilege or Protection.
 (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
 (i) expressly make the claim; and
 (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
 The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



EXHIBIT ___9___

PAGE ___167___

## ATTACHMENT A

1.      All documents referring or relating to agreements, contracts, transactions, sales, shipments or the direct or indirect transfer of any item of value between MGA Entertainment, Inc., its affiliates, Isaac Larian or his family members and IGWT Group, LLC, including without limitation the agreement dated July 7, 2008.

2.      All documents referring or relating to the revenue generated by IGWT Group, LLC's sales, licensing, distribution or other transfer of Bratz products and the transfer or disposition of such revenue.

3.      Documents sufficient to identify (a) each member, managing member, holder of any ownership interest in, shareholder, officer and director of IGWT Group, LLC and (b) the dates of such person's affiliation with IGWT Group, LLC.

4.      All documents referring or relating to all contributions, loans and any sources of funding for IGWT Group, LLC during the last twelve months, including but not limited to agreements and/or contracts supporting these transactions.

5.      All documents referring or relating to transactions involving any compensation, loans, advances, payments, fees or any other form of consideration paid by IGWT Group, LLC to Isaac Larian, his family members, or affiliates, or any other related party.

6.      Any and all records that substantiate transfers of assets by IGWT Group, LLC to other entities, individuals, and/or parties, within the U.S. and outside of the U.S.

7.      All communications referring or relating to Vision Capital, LLC, Lexington Financial, LLC, Mattel, MGA, Isaac Larian and/or Bratz.

1

EXHIBIT _*9*_

PAGE _*168*_

# EXHIBIT 10

AO88 (Rev. 12/07) Subpoena in a Civil Case

### Issued by the
# UNITED STATES DISTRICT COURT

_____CENTRAL_____    _____CALIFORNIA_____

CARTER BRYANT, an individual,

**SUBPOENA IN A CIVIL CASE**

V.

MATTEL, INC., a Delaware corporation,

Case Number: [1]   CV 04-9049 SGL (RNBx)
Consolidated with cases CV 04-9059
and 05-2727

TO: IGWT 826 Investments, LLC, C/O:  National Corporate Research, Ltd.
    523 West 6th Street, Suite 544
    Los Angeles, CA 90014

[ ] YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

[X]  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | January 26, 2009 |
| 865 S. Figueroa Street, 10th Floor | 9:00 a.m. |
| Los Angeles, CA 90017 | |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Jon Corey /sa | |
| Attorney for Plaintiff, Mattel, Inc. | January 12, 2009 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jon Corey, QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017 (213) 443-3000

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

EXHIBIT _10_

PAGE _169_

AO88  (Rev.  12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE                                         SIGNATURE OF SERVER

                                                              ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
    (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
    (2) Command to Produce Materials or Permit Inspection.
        (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
        (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
            (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
            (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
    (3) Quashing or Modifying a Subpoena.
        (A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
            (i) fails to allow a reasonable time to comply;
            (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
            (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
            (iv) subjects a person to undue burden.
        (B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
            (i) disclosing a trade secret or other confidential research, development, or commercial information;
            (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
            (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
        (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

            (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
            (ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.
    (1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
        (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
        (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
        (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
        (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) Claiming Privilege or Protection.
        (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
            (i) expressly make the claim; and
            (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
        (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
    The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).



EXHIBIT   10

PAGE   170

## ATTACHMENT A

1.      All documents referring or relating to agreements, contracts, transactions, sales, shipments or the direct or indirect transfer of any item of value between MGA Entertainment, Inc., its affiliates, Isaac Larian or his family members and IGWT 826 Investments, LLC.

2.      All documents referring or relating to the revenue generated by IGWT 826 Investments, LLC's sales, licensing, distribution or other transfer of Bratz products and the transfer or disposition of such revenue.

3.      Documents sufficient to identify (a) each member, managing member, holder of any ownership interest in, shareholder, officer and director of IGWT 826 Investments, LLC and (b) the dates of such person's affiliation with IGWT 826 Investments, LLC.

4.      All documents referring or relating to all contributions, loans and any sources of funding for IGWT 826 Investments, LLC during the last twelve months, including but not limited to agreements and/or contracts supporting these transactions.

5.      All documents referring or relating to transactions involving any compensation, loans, advances, payments, fees or any other form of consideration paid by IGWT 826 Investments, LLC to Isaac Larian, his family members, or affiliates, or any other related party.

6.      Any and all records that substantiate transfers of assets by IGWT 826 Investments, LLC to other entities, individuals, and/or parties, within the U.S. and outside of the U.S.

7.      All communications referring or relating to Vision Capital, LLC, Lexington Financial, LLC, Mattel, MGA, Isaac Larian and/or Bratz.

1

EXHIBIT _10_

PAGE _171_

# EXHIBIT 11

08-71714107
09/09/2008 16:03

FILED
CALIFORNIA
SECRETARY OF STATE
505

16335690005   UCC 3 FILING

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

71-00004593

**CL@S**
INFORMATION
SERVICES

proof number  1036 AMRW

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # 08-7090317861 | 10/30/08 | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the U REAL ESTATE RECORDS. |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ ASSIGNMENT (full): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR OMNI 808 Investors LLC, as Agent | | | |
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 9420 Wilshire Blvd., Suite 400 | Beverly Hills | CA | 90212 | USA |

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE 7e. TYPE OF ORGANIZATION ORGANIZATION DEBTOR | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|
| | Limited Liability Company | California | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR Wachovia Bank, National Association, as Agent | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
Debtor: MGA Entertainment (Mexico), Inc.                              CA-SOS

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC 3) (REV. 07/29/98)

EXHIBIT ___11___

PAGE ___172___

1
2

# TABLE OF AUTHORITIES

Page(s)

3

**FEDERAL CASES**

4
5

*Arakaki v. Cayetano,*
   324 F.3d 1078 (9th Cir. 2003) .................................................. 6, 9

6
7

*Beckman Indus. Inc. v. International Ins. Co.,*
   966 F.2d 470 (9th Cir. 1992) ..................................................... 6

8
9

*Commerz Union Austalt v. Collectors' Guild, Ltd.,*
   792 F. Supp. 870 (S.D.N.Y. 1991) ............................................. 8

10
11

*DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.,*
   187 F. Supp. 910 (S.D. Ohio 2001) ............................................ 9

12
13

*Donnelly v. Glickman,*
   159 F.3d 405 (9th Cir. 1998) ..................................................... 6

14

*Engra, Inc. v. Gabel,*
   958 F.2d 643 (5th Cir. 1992) ..................................................... 7

15
16

*Forest Conservation Council v. United States Forest Serv.,*
   66 F.3d 1489 (9th Cir. 1995) ..................................................... 7

17
18

*Kootenai Tribe v. Veneman,*
   313 F.3d 1094 (9th Cir. 2002) .................................................. 10

19
20

*League of United Latin American Citizens v. Wilson,*
   131 F.3d 1297 (9th Cir. 1997) ................................................... 6

21
22

*Lockyer v. U.S.,*
   450 F.3d 436 (9th Cir. 2006) ..................................................... 6

23
24

*Meyer Jewelry Co. v. Meyer Holdings, Inc.,*
   906 F. Supp. 428 (E.D. Mich. 1995) ........................................... 9

25

*Mountain Top Condominium v. Dave Stabbert Master Builder,*
   72 F.3d 361 (3rd Cir. 1995) ....................................................... 8

26
27

*NL Indus. v. Secretary of Interior,*
   777 F.2d 433 (9th Cir. 1985) ..................................................... 8

28

A/72829697.5/3009108-0000335082

EXHIBIT *18*

PAGE *206*

*Reich v. ABC/York-Estes Corp.,*
   64 F.3d 316 (7th Cir. 1995) ............................................................. 3

*Rumbaugh v. Beck,*
   491 F. Supp. 511 (E.D. Pa. 1980) .................................................... 9

*Saluck v. Rosner,*
   1999 WL 46620 (E.D. Pa. Jan. 6, 1999) ......................................... 9

*San Juan County v. U.S.,*
   503 F.3d 1163 (10th Cir. 2007) ....................................................... 7

*SEC v. Flight Transp. Corp.,*
   699 F.2d 943 (8th Cir. 1983) ........................................................... 8

*Sierra Club v. EPA,*
   995 F.2d 1478 (9th Cir. 1993) ......................................................... 8

*Southwest Center for Biological Diversity v. Berg,*
   268 F.3d 810 (9th Cir. 2001) ...................................................... 3, 7

*Stringfellow v. Concerned Neighbors in Action,*
   480 U.S. 370 (1987) ........................................................................ 6

*Trbovich v. United Mine Workers,*
   404 U.S. 528 (1972) ........................................................................ 9

*U.S. v. South Florida Water Dist.,*
   922 F.2d 704 (11th Cir. 1991) ......................................................... 7

*United States v. State of Washington,*
   86 F.3d 1499 (9th Cir. 1996) ........................................................... 7

*Venegas v. Skaggs,*
   867 F.2d 527 (9th Cir. 1989) ......................................................... 11

*Yniguez v. Arizona,*
   939 F.2d 727 (9th Cir. 1991) ........................................................... 8

RULES

Fed. R. Civ. P. 24(a) .......................................................................... 6

Federal Rule of Civil Procedure 24(b)(2) ........................................ 10

-iii-

A/72829697.5/3009108-0000335082

EXHIBIT *18*

PAGE *207*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Non-party Omni 808 Investors, LLC ("Omni") is the largest secured creditor of MGA Entertainment, Inc. ("MGA").  Omni recently was served with a sweeping subpoena from Mattel, Inc. ("Mattel") in connection with this litigation requesting the production of documents relating to Omni's formation, governance, finances, business relationships and transactions.  Mattel's papers in support of its request to have the Court appoint a receiver to "oversee and control all business and financial aspects" of MGA mischaracterize Omni, its principals and the transaction Mattel purports to describe to this Court.  Because the appointment of a receiver could significantly and irreparably harm Omni's interests as a senior secured creditor of MGA, Omni hereby seeks leave of Court to intervene in this action for this limited purpose.

Mattel's *ex parte* application is replete with false and misleading representations and demonstrates Mattel's profound misunderstanding, *inter alia*, of Omni and the circumstances surrounding its recent purchase of MGA's debt from non-party Wachovia.  The actual background of this transaction is both straightforward and easily explained.  In October 2006, Wachovia Bank, National Association and a syndicate of other financial institutions (collectively, "Wachovia") provided a senior revolving credit facility to MGA (the "Senor Bank Credit Facility").  In July 2008, Wachovia accelerated the maturity of the outstanding debt obligations owed to Wachovia by MGA (over $310 million), demanding full and immediate payment of the entire unpaid balance as it was entitled to do under the terms of its Senior Bank Credit Facility.

In response to Wachovia's accelerated loan payment demand, MGA began efforts to find someone who would purchase the Senior Bank Credit Facility from Wachovia.  Neil Kadisha, the Managing Partner of a diversified investment firm, Omninet Capital, LLC, was approached and began discussions with Wachovia

- 1 -

EXHIBIT *18*

PAGE *208*

1    regarding a potential purchase of the Senior Bank Credit Facility.  In September

2    2008, Wachovia and Omni (a special purpose entity formed by Mr. Kadisha for

3    this transaction) entered into an assignment and exchange agreement whereby

4    Omni acquired all right, title and interest in the Senior Bank Credit Facility

5    excluding approximately $21 million which was retained by Wachovia.  Omni's

6    purchase of the Senior Bank Credit Facility from Wachovia was a straightforward,

7    arms-length business deal between non-parties to this action.

8         In support of its argument for the appointment of a receiver, Mattel

9    insinuates, without any evidence, that there was something untoward about the

10   timing and circumstances of Omni's debt purchase transaction.  Mattel falsely

11   represents to the Court that MGA received new "sudden funding" from an "off-

12   shore, non-operating" entity during the trial of this action.  Even allowing for its

13   ignorance of the actual terms of the Omni-Wachovia transaction, there is no reason

14   for such language.  If by "funding" Mattel means the loan from Wachovia, that

15   funding was provided by Wachovia to MGA under the Senior Bank Credit Facility

16   beginning in 2006 -- *long before the trial and any judgment was entered against*

17   *MGA in this action in 2008.*  If by "funding" Mattel means the Omni-Wachovia

18   transaction, the monies flowed *from Omni to Wachovia* as consideration for the

19   purchase of the debt owed by MGA.  The timing of the Omni-Wachovia

20   transaction in September 2008 was driven by a host of factors, most proximately

21   by Wachovia's decision to accelerate the outstanding debt obligation under the

22   Senior Bank Credit Facility.

23        Moreover, the source was not an "off-shore, non-operating" entity, as Mattel

24   repeatedly suggests in its application.  Wachovia (defined to include it and its

25   syndicate of bank and other institutional lenders), the original source of the

26   funding, are all substantial financial institutions; Omni, the assignee of the loan, is

27   a California limited liability company.  Mattel's paranoiac rhetoric regarding this

28   transaction and the source of the funding is unfounded.

- 2 -

A/72829697.5/3009108-0000335082



EXHIBIT **18**

PAGE **209**

1        Under federal law, a non-party is entitled to intervene *as a matter of right*

2    when it claims an interest relating to the property or transaction that is the subject

3    of the action and is so situated that disposing of the action may as a practical

4    matter impair or impede its ability to protect its interest.  A non-party may also

5    intervene, in the discretion of the court, when it has a claim that shares with the

6    main action a common question of law or fact.

7        Here, Omni has a secured interest in MGA's assets, including, *inter alia,*

8    MGA's inventory and accounts receivable, that is far greater and superior to any

9    alleged interest of unsecured creditors like Mattel.  Mattel is asking this Court for

10   an extraordinary remedy, solely to suit its own litigation and competitive interests,

11   which if granted could well cripple MGA's operations and would certainly impair

12   the security interests of Omni and other creditors.  Indeed, the proffered basis for

13   Mattel's opposition to Omni's application for leave to intervene -- that a debtor can

14   adequately represent the interests of its largest secured creditor -- speaks volumes

15   about Mattel's approach not only to this issue but also to its actual motivations in

16   making its request for a receiver.

17       For these reasons, Omni respectfully requests that the Court grant it leave to

18   intervene in this action for the purposes of challenging the appointment of a

19   receiver and related issues that could adversely affect Omni's security interests.

20

21   **II.   STATEMENT OF FACTS**[1]

22       On or about October 27, 2006, MGA entered into a Credit Agreement with

23   Wachovia Bank, National Association and a syndicate of other banks and

24

25   _____

26   [1] In evaluating a motion to intervene, courts must accept as true all nonconclusory allegations contained in the motion.  *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001); *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995).

27

28

- 3 -

EXHIBIT _18_

PAGE _210_

1  institutional lenders (collectively, "Wachovia"), pursuant to which Wachovia

2  provided a senior revolving credit facility to MGA in an aggregate available

3  amount for borrowing up to $400 million, secured by a senior perfected security

4  interest in, *inter alia,* all of MGA's inventory and accounts receivable (the "Senior

5  Bank Credit Facility"). On July 21, 2008, Wachovia declared the Senior Bank

6  Credit Facility to be in default and accelerated the maturity of the outstanding debt

7  obligations owed to Wachovia by MGA, demanding full and immediate payment

8  of the entire unpaid $313,496,700 balance of the loans.

9       In response to Wachovia's accelerated loan payment demand, MGA

10  approached Neil Kadisha, a highly regarded businessman and philanthropist who is

11  currently the Managing Partner of a diversified investment firm, Omninet Capital,

12  LLC.[2] Mr. Kadisha and Omninet Capital, LLC have substantial experience

13  evaluating and investing in distressed debt and distressed companies. Mr. Kadisha

14  immediately commenced negotiations with Wachovia regarding a potential

15  purchase of the Senior Bank Credit Facility from Wachovia.

16       On or about July 29, 2008, Omninet Capital, LLC made an offer to acquire

17  the Senior Bank Credit Facility, including the outstanding debt obligations from

18  Wachovia for $109,723,845 (representing 35% of the $313,496,700 principal

19  amount of the debt obligations outstanding as of the acceleration date). After a

20  couple weeks of heavy negotiations, Wachovia agreed to sell and assign its interest

21  in all but $21,944,769 of the outstanding debt obligations under the Senior Bank

22  Credit Facility to Omni (the retained amount was then exchanged for unsecured

23  promissory notes issued by MGA to Wachovia). In order to fund the acquisition of

24  

25  [2] Omni is loathe to address the gratuitous ad hominem attacks concerning Mr. Kadisha and an ongoing civil litigation matter in the papers filed by Mattel, which

26  are inaccurate, incomplete and irrelevant, but if the Court is at all concerned by those matters Omni is prepared to do so. Suffice it to say for now that the civil

27  litigation matter referred to by Mattel has not yet been finally resolved.

28  

- 4 -

EXHIBIT *18*

PAGE *211*

1   the Senior Bank Credit Facility, Mr. Kadisha solicited various private investors and

2   formed a special purpose entity, Omni 808 Investors, LLC, a California limited

3   liability company ("Omni")[3]. The formation of a special purpose entity is very

4   common for these types of transactions and is neither suspicious nor improper.

5       On or about September 3, 2008, Omni and Wachovia entered into a written

6   Master Assignment and Exchange Agreement whereby Omni acquired all right,

7   title and interest in the debt obligations under the Senior Bank Credit Facility,

8   other than the $21,944,769 exchanged for the unsecured promissory notes issued

9   by MGA to Wachovia Bank, National Association and the other original lenders.

10  As a result of the agreement, Omni stepped into and presently stands, as successor-

11  in-interest, in the position of Wachovia under the Senior Bank Credit Facility and

12  has a senior perfected security interest in MGA's assets, including, *inter alia*,

13  MGA's inventory and accounts receivable. Omni's secured interest is superior to

14  that of any potential unsecured creditors, including Mattel.

15      Omni has a compelling interest in the financial health and stability of MGA

16  and its assets. If MGA fails, MGA's ability to repay the outstanding debt

17  obligation in excess of $300 million owed to Omni will certainly be imperiled.

18  The appointment of a receiver to "oversee and control all financial and business

19  aspects" of MGA, solely to satisfy Mattel's interests, would harm MGA's ability to

20  operate independently and efficiently and would infringe upon, or potential

21  foreclose, the interests of Omni and other creditors.

22

23

24

25

26  [3] Mattel erroneously refers to Omni 808 International, LLC, in its *ex parte*
    application, which further demonstrates Mattel's confusion regarding the entities
27  involved.

28

A/72829697.5/3009108-0000335082

EXHIBIT **18**

PAGE **212**

## III.   LEGAL ARGUMENT

### A.   Omni is Entitled to Intervene as a Matter of Right for the Limited Purpose of Protecting Omni's Status as a Secured Creditor

Omni is entitled to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a). Rule 24(a) provides that a court must permit a non-party to intervene who "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest . . . ." *See also, Lockyer v. U.S.*, 450 F.3d 436, 440 (9th Cir. 2006). The Ninth Circuit construes Rule 24 liberally in favor of applicants for intervention. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). The inquiry required under Rule 24(a)(2) is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate. *Donnelly*, 159 F.3d at 409. "In determining whether intervention is appropriate, we are guided primarily by practical and equitable considerations. We generally interpret the requirements broadly in favor of intervention." *Id.*

When a non-party claims an interest relating to the subject property or transaction of the action, courts generally require four factors: (1) a timely application; (2) the applicant has a "significantly protectable" interest relating to the property or transaction involved in the pending lawsuit; (3) the disposition of the lawsuit may adversely affect applicant's interest unless intervention is allowed; and (4) the existing parties may not adequately represent the would-be intervenor's interest. *Arakaki*, 324 F.3d at 1083; *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

Additionally, a district court has the discretion to grant a non-party limited intervention for certain issues or purposes. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378 (1987); *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *Beckman Indus. Inc. v. International Ins. Co.*, 966 F.2d

- 6 -

EXHIBIT *18*

PAGE *213*

1   470, 473 (9th Cir. 1992). "A nonparty may have a sufficient interest for some

2   issues in a case but not others, and the court may limit intervention accordingly."

3   *U.S. v. South Florida Water Dist.*, 922 F.2d 704, 707 (11th Cir. 1991); *San Juan*

4   *County v. U.S.*, 503 F.3d 1163, 1203 (10th Cir. 2007).

5          1.     Omni's Application Is Timely.

6          Courts generally consider the following factors relevant to the issue of

7   timeliness:  (1) the stage of the proceedings at the time the applicant seeks to

8   intervene; (2) the prejudice to the existing parties from applicant's delay in seeking

9   leave to intervene; and (3) any reason for and the length of delay in seeking

10  intervention. *United States v. State of Washington*, 86 F.3d 1499, 1502 (9th Cir.

11  1996); *Engra, Inc. v. Gabel*, 958 F.2d 643, 644 (5th Cir. 1992).

12         Here, Omni's application is timely.  On or about January 9, 2009, Mattel

13  served a subpoena on Omni requesting the production of documents relating to

14  Omni's formation, governance, finances, business relationships and transactions.

15  Omni also recently learned that Mattel filed an *ex parte* application for the

16  appointment of a receiver at MGA.  The Court has yet to decide the pending

17  request for the appointment of a receiver and Omni has acted without delay.

18         2.     Omni Has a Significantly Protectable Interest in

19                the Receivership Issues Involved in the Pending
                  Litigation.

20         "[W]hether an applicant for intervention demonstrates sufficient interest in

21  an action is a practical, threshold inquiry.  No specific legal or equitable interest

22  need be established." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d

23  810, 818 (9th Cir. 2001) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th

24  Cir. 1993)); *see also Forest Conservation Council v. United States Forest Serv.*, 66

25  F.3d 1489, 1493 (9th Cir. 1995).  "It is generally enough that the interest [asserted]

26  is protectable under some law, and that there is a relationship between the legally

27  protected interest and the claims at issue." *Southwest Center for Biological*

28  *Diversity*, 268 F.3d at 818 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th

-7-

EXHIBIT *18*

PAGE *214*

1   Cir. 1993)). *See, e.g., NL Indus. v. Secretary of Interior*, 777 F.2d 433, 435 (9th

2   Cir. 1985) (corporate property owner that held unpatented mining claim on

3   particular property permitted to intervene in dispute over other mining claims on

4   that property). An intervenor's interest must be "significantly protectable such that

5   it will be directly and immediately affected by the litigation." *Werbungs und*

6   *Commerz Union Austalt v. Collectors' Guild, Ltd.*, 792 F. Supp. 870, 874

7   (S.D.N.Y. 1991) (court allows intervention by investor in one party when investor

8   had secured appeal bond and owned collateral securing letter of credit).

9        Here, Omni is the largest secured creditor of MGA, with a superior interest

10  in MGA's assets to any unsecured creditors including Mattel. Omni's interest is

11  directly related to issues raised by Mattel in its *ex parte* application for the

12  appointment of a receiver. Therefore, Mattel has a significantly protectable

13  interest relating to the property or transaction which is the subject of this action.

14              3.      The Appointment of a Receiver May Impair or
15                      Impede Omni's Ability to Protect Its Interests.

16        In order to show that the disposition of the action may impair or impede the

17  ability to protect a non-party's interest, the non-party need only show a "practical"

18  impairment, "not whether the decision itself binds them." *Yniguez v. Arizona*, 939

19  F.2d 727, 735 (9th Cir. 1991). Courts consistently allow creditors to intervene "of

20  right" where a receiver has been appointed and taken control of a debtor's assets.

21  The rationale is that the first creditor's action may effectively foreclose the

22  interests of other creditors. *See Sierra Club v. U.S.*, 995 F.2d 1478, 1486 (9th Cir.

23  1993); *SEC v. Flight Transp. Corp.*, 699 F.2d 943, 947 (8th Cir. 1983); *Mountain*

24  *Top Condominium v. Dave Stabbert Master Builder*, 72 F.3d 361, 366-367 (3rd

25  Cir. 1995).

26        Here, the appointment of a receiver to "oversee and control all financial and

27  business aspects" of MGA, as Mattel proposes, could cripple MGA's business and

28  impair Omni's ability to protect its senior perfected security interest in its

                                        - 8 -

EXHIBIT *18*

PAGE *215*

1   collateral, which includes MGA's inventory and accounts receivable and

2   ultimately in MGA's ability to repay its outstanding secured debt obligation to

3   Omni of in excess of $300 million. The financial and business affairs of MGA are

4   best handled independently by businessmen who understand its products and its

5   industry.[4]

6           4.      The Existing Parties May Not Adequately

7                   Represent Omni's Interest.

8           In order to demonstrate the inadequacy of the existing parties to protect its

9   interest, the applicant's burden is minimal and is satisfied so long as the applicant

10  shows that representation by existing parties *may be*" inadequate. *Trbovich v.*

11  *United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). The Ninth Circuit considers

12  three factors in determining the adequacy of representation: "(1) whether the

13  interest of a present party is such that it will undoubtedly make all of a proposed

14  intervenor's arguments; (2) whether the present party is capable and willing to

15  make such arguments; and (3) whether a proposed intervenor would offer any

16  necessary elements to the proceeding that other parties would neglect." *Arakaki*,

17  324 F.3d at 1086 (citing *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775,

18  778 (9th Cir.1986)). "The most important factor in determining the adequacy of

19  representation is how the applicant's interest compares with the interest of existing

20  parties." *Id.*

21

22  ───────────────

    [4] Courts are reluctant to appoint receivers to solvent corporations. *See, e.g.,*
23  *DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.*, 187 F. Supp. 910, 925 (S.D.
    Ohio 2001) (declining to appoint receiver despite other facts in favor of doing so
24  where corporation was solvent and productive); *Meyer Jewelry Co. v. Meyer
    Holdings, Inc.*, 906 F. Supp. 428, 434 (E.D. Mich. 1995) ("The deleterious effects
25  of a receivership would result in more harm than good in this case."); *Rumbaugh v.
    Beck*, 491 F. Supp. 511, 521 (E.D. Pa. 1980) (finding that because a corporation
26  was presently operating in a successful manner, appointment of a receiver would
    "be potentially more harmful than if one were not implanted"); *Saluck v. Rosner*,
27  1999 WL 46620, at *2 (E.D. Pa. Jan. 6, 1999) ("the appointment of a receivership
    of a solvent corporation is a drastic remedy.").

28

                                      - 9 -

EXHIBIT _18_

PAGE _216_

1   Here, the interests of the present parties are not such that they will

2   undoubtedly make all of Omni's arguments in opposition to the appointment of a

3   receiver. Obviously Mattel's interests are directly at odds with Omni's interests.

4   Further, although MGA also opposes the appointment of a receiver, there is no

5   reason to believe that it can or will make all of Omni's arguments on its behalf.

6   Omni's primary interest is in MGA's ability to repay its secured debt obligation of

7   in excess $300 million owed to Omni. Moreover, Omni is in the best position to

8   describe the facts and circumstances surrounding its purchase of the Senior Bank

9   Credit Facility from Wachovia.

10   According to Mattel's counsel, it is Mattel's view that MGA as debtor can

11   adequately protect the interests of its largest secured creditor. Mattel's position is

12   nonsensical as the financial interests of a debtor and secured creditor are, on their

13   face, aligned differently. Therefore, the existing parties may not adequately

14   represent Omni's interest regarding the appointment of a receiver and other issues

15   relating to Omni's status as a secured creditor.

16   **B.   In the Alternative, This Court Should Grant Omni**
17   **Permissive Intervention**

18   Even if Omni were not entitled to intervene as a matter of right, the Court

19   should exercise its discretion and permit its intervention in this matter. Under

20   Federal Rule of Civil Procedure 24(b)(2), permissive intervention should be

21   granted whenever the "applicant's claim . . . and the main action have a question of

22   law or fact in common," and when the intervention would not "unduly delay or

23   prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P.

24   24(b)(2). The existence of a "common question" is liberally construed. *Kootenai*

25   *Tribe v. Veneman*, 313 F.3d 1094, 1108-1109 (9th Cir. 2002). A proposed

26   intervenor under Rule 24(b)(2) "need not demonstrate a 'significantly protectable'

27   interest relating to the property or transaction which is the subject of the action.'"

28   *Defenders of Wildlife*, 2005 WL 3260986, at *2 (citing *Kootenai Tribe of Idaho v.*

- 10 -

EXHIBIT _18_

PAGE _217_

1  *Veneman*, 313 F.3d 1094, 1108-09 (9th Cir. 2002)).  Omni meets each of these

2  requirements.

3      Here, as explained above, there are common questions of law and fact

4  between Omni's claims and the issues raised in Mattel's application to appoint a

5  receiver.  Moreover, Omni's participation will not unduly delay or prejudice the

6  adjudication of the rights of the original parties.  Omni's participation will be

7  limited to challenging Mattel's request to appoint a receiver and protecting its

8  interests as a secured creditor.  The burden is on the parties to plead and prove any

9  alleged prejudice.  *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989).

10

11  **IV.   CONCLUSION**

12      For the foregoing reasons, Omni respectfully requests the Court grant this

13  application and authorize it to intervene for the limited purpose of responding to

14  Mattel's request for the appointment of a receiver for MGA and all other issues

15  related to the proposed receiver or Omni's status as a secured creditor of MGA.

16

17  DATED:  February 3, 2009        Bingham McCutchen LLP

18

19

20                                By: _____

21                                    Todd E. Gordinier
                                      Attorneys for Non-party
                                      Omni 808 Investors, LLC

22

23

24

25

26

27

28

A/72829697.5/3009108-0000335082

EXHIBIT _18_

PAGE _218_

# EXHIBIT 19



1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

MATTEL, INC.,                          )
                                       )
                    Plaintiff,         )
                                       )
       vs.                             )  No. CV 04-09049
                                       )
MGA ENTERTAINMENT, INC., ET. AL.,      )
                                       )
                    Defendants.        )
_____       )  Motions
AND CONSOLIDATED ACTIONS,              )
                                       )


REPORTER'S TRANSCRIPT OF PROCEEDINGS

Riverside, California

Wednesday, February 11, 2009

10:03 A.M.


THERESA A. LANZA, RPR, CSR
Federal Official Court Reporter
3470 12th Street, Rm. 134
Riverside, California  92501
951-274-0844
WWW.THERESALANZA.COM

EXHIBIT 19

PAGE 219

·dnesday, February 11, 2009                      Mattel vs. MGA Entertainme:

2

```
 1   APPEARANCES:

 2   ON BEHALF OF MATTEL, INC.:

 3                           QUINN EMANUEL
                             By:  JOHN QUINN
 4                                DYLAN PROCTOR
                                  MICHAEL T. ZELLER
 5                           865 S. FIGUEROA STREET,
                             10TH FLOOR
 6                           LOS ANGELES, California   90017
                             213-624-7707
 7

 8   ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
     (Outgoing)
 9                           SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                             By:  THOMAS J. NOLAN
10                                JASON RUSSELL
                             300 SOUTH GRAND AVENUE
11                           LOS ANGELES, CALIFORNIA   90071-3144
                             213-687-5000
12

13   ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
     (Incoming)
14                           GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
                             By:  JOEL KLEVENS
15                           10250 Constellation Boulevard
                             Los Angeles, California   90067
16                           310-553-3000

17                           MITCHELL, SILBERBERG & KNUPP LLP
                             BY:  RUSSELL J. FRACKMAN
18                           11377 West Olympic Boulevard,
                             Los Angeles, California   90064-1683
19                           310-312-2000

20

21   ON BEHALF OF DEFENDANT GUSTAVO MACHADO:

                             OVERLAND BORENSTEIN SCHEPER & KIM LLP
22                           BY:  ALEXANDER H. COTE
                             601 West Fifth Street,
23                           12th Floor
                             Los Angeles, California   90071
24                           213-613-4660

25   / / /
```

Wednesday, February 11, 2009                    Mattel vs. MGA Entertainment

EXHIBIT _19_

PAGE _220_

3



1                    I N D E X  (Continued)

2

3    APPEARANCES  (continued):

4

     On behalf of OMNI 808:

5

6                    BINGHAM McCUTCHEN LLP
                     BY:  Todd E. Gordinier
7                    600 Anton Boulevard
                     Costa Mesa, CA  92626-1924
8                    714-830-0622

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT ___19

PAGE  221

4

```
1                    I N D E X

2                                        Page

3   Motions.....................................    4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT **19**

PAGE **222**

```
 1    follow the logical reason, their full amount of damages, based

 2    on the instructions that they were provided and the evidence

 3    that they were given, comes out to a consistent verdict.

 4              THE COURT:  I do understand your argument.  Thank

 5    you, Counsel.

 6              MR. ZELLER:  Your Honor --

 7              THE COURT:  No.  I've allowed the moving party to

 8    speak first and last, and let's stick to that.  You have well

 9    briefed these things.

10              I next want to take up Omni 808's ex-parte

11    application to intervene for limited purposes.

12              Mr. Gordinier.

13              MR. GORDINIER:  Thank you for offering me the

14    opportunity to address the Court.

15              We've set out in our papers, really, what we're

16    looking for here.  The transaction by which Omni 808 acquired

17    its interest and stepped into the shoes of Wachovia was

18    straightforward and it was at arm's length.  And I, frankly,

19    although naively, believed that if we would get stipulated to

20    be a party to the proceeding going forward, to the extent the

21    Court --

22              THE COURT:  Where do those funds come from?

23              MR. GORDINIER:  Mr. Kadisha, Your Honor, is a very

24    substantial individual.  Mr. Kadisha, Neil Kadisha, who is the

25    president and CEO of Omni 808, was one of the founders of
```

01:34
01:34
01:35
01:35

71

1    Qualcomm.  With everything that's gone on in the market in the

2    last six or seven months, I don't want to make any

3    representations, but Mr. Kadisha has from time to time appeared

4    on the Forbes 400 list.  I don't know what his net worth is.

5            What happened, Your Honor, is, Wachovia called the          01:35

6    note.  I don't know why.  I've been involved in these cases

7    where everybody feels like the world revolves around what's

8    happening in this courtroom.  As the Court knows, Wachovia had

9    other issues.

10           Wachovia and its syndicate wanted it off its balance        01:35

11   sheet, and MGA needed relief from the immediate need to pay

12   money they did not have.  And my client was approached and put

13   together people and bought the indebtedness and assumed the

14   debt at a discount, at a substantial discount; and he expects

15   to make money.                                                      01:36

16           THE COURT:  You're representing to the Court, though,

17   that this was not MGA's money; that this was -- from wherever

18   it came from, it came from someplace else.

19           MR. GORDINIER:  Your Honor, two things.  I've never

20   met Mr. Larian, and I know less about MGA than almost everybody     01:36

21   else.

22           THE COURT:  I'm not asking about what you know from

23   MGA but of what you know from your client.

24           MR. GORDINIER:  What I know from my client is, he put

25   in many millions of dollars.  He had a couple of investors with     01:36

EXHIBIT _19_

PAGE _224_

72

1    him to put in many millions of dollars.

2           THE COURT:  Those investors and that money did not

3    come from MGA?

4           MR. GORDINIER:  That's the best of my understanding,

5    Your Honor.  That's true.                                    01:36

6           And the best way to resolve that is what the Court

7    has already done.  The Court did exactly the right thing and

8    set up Mr. Durkin, who's very accomplished, to look at MGA's

9    books.  Step number one, he can tell the Court what their

10   balance sheet is, what their income statement is, and also the    01:37

11   sources and uses of cash.

12          And if there are any issues -- and, by the way, I'm

13   happy to talk to Mr. Durkin or have Mr. Durkin talk to my

14   client.  This is not intended to be -- this wasn't a fraudulent

15   transaction, Your Honor.  We negotiated -- we -- I didn't do    01:37

16   it -- Omni 808 negotiated with Davis Polk on behalf of Wachovia

17   and bought at a discount; and Omni 808 expects to and would

18   like to make money on its investment, and will not be able to

19   do so, obviously, if MGA goes out of business.  So our interest

20   here is in protecting Omni 808's investment.  And part of that    01:38

21   is wanting a say in how MGA's business on this receiver issue

22   is dealt with.

23          THE COURT:  The interest to intervene is focused, as

24   you indicate in your papers, on the receivership issue?

25          MR. GORDINIER:  That's correct, Your Honor.  That's    01:38

EXHIBIT ___*19*

PAGE *225*

73

```
 1    correct.

 2             THE COURT:  Very well.

 3             Does anyone wish to be heard in opposition to the

 4    ex-parte application?

 5             MR. ZELLER:  Yes, Your Honor.                         01:38

 6             I don't know that we've been -- and maybe the Court

 7    heard it differently, but I still do not hear anything that

 8    certainly approaches evidence that this was, in fact, an arm's

 9    length transaction.

10             THE COURT:  I have a representation from respected   01:38

11    counsel.

12             MR. ZELLER:  Well, he said -- Your Honor, the

13    Court -- all he said was to the best of his knowledge.  He

14    didn't say it didn't come from it.

15             Second, the Court asked MGA; it didn't ask from      01:39

16    Larian, Larian's brother-in-law, his wife -- there are other

17    family members involved in this, and their fingerprints are on

18    this.  So, certainly, I want to be very clear, Your Honor, we

19    have not gone so far as to say, this is a fraud, this is a

20    sham, or so on.  The fact is that there are substantial        01:39

21    questions here as to the bona fides of this transaction and

22    whether or not this has been papered in a way to basically

23    create debt and credit, where, in fact, it would simply be

24    treated by the tax code, by the bankruptcy code, by the courts,

25    for every other purpose, as, in fact, being nothing but a loan, 01:39
```

ednesday, February 11, 2009                      Mattel vs. MGA Entertainment

EXHIBIT __19__

PAGE __226__

1   Because, otherwise, the Court is creating, I mean, truly very,

2   very pragmatic problems.  And that's just even on the

3   settlement front.  There are others I can talk about, in terms

4   of the complication of the proceedings.

5           If we now have yet another party, and particularly      01:44

6   one who we do not really know who it is, floating around in

7   this case, asserting rights -- and whatever it is that Omni 808

8   claims to have, namely this credit interest, can be fully

9   protected by Local Rule 66 procedures.

10          In fact, if that's all they're really trying to do,     01:44

11  to intervene on that basis, that's coextensive with Local Rule

12  66.  So there is nothing to be gained, and huge amounts to be

13  potentially lost, by allowing them in.

14          THE COURT:  Thank you, Counsel.

15          Mr. Gordinier, do you wish to respond?                  01:44

16          MR. GORDINIER:  Yes.  The last point first.

17          The last thing I want to do is sit at a settlement

18  table with these gentlemen, no offense to either of them, who I

19  know well.  We are entitled as a matter of right to intervene,

20  to protect our interests.  These unprovoked and unwarranted     01:44

21  personal attacks are just inappropriate.

22          I said as far as I know because I wasn't involved in

23  the actual funding of the deal.  But it's my understanding that

24  many millions of dollars went to Wachovia, for which Wachovia

25  transferred its interest in the debt.  And that was an arm's    01:45

EXHIBIT _____ *19*

PAGE _____ *227*

**Exhibit A**

1B214810B02

Debtor:
MGA Entertainment (Mexico), Inc.
16380 Roscoe Blvd., Suite 200
Van Nuys, California 91406

Secured Party:
Wachovia Bank, National Association, as Agent
One South Broad Street, PA 4830
Philadelphia, Pennsylvania 19107

All of Debtor's right, title and interest in, to and under the following (collectively, the "Collateral"):

    (a)    all Equity Interests now or hereafter acquired or held by Debtor in the issuer (the "Issuer") described in Schedule 1 attached hereto;

    (b)    all payments due or to become due to Debtor in respect of any of the foregoing;

    (d)    all of Debtor's claims, rights, powers, privileges, authority, puts, calls, options, security interests, liens and remedies, if any, in respect of any of the foregoing;

    (e)    all of Debtor's rights to exercise and enforce any and every right, power, remedy, authority, option and privilege of Debtor relating to any of the foregoing including, without limitation, any power to (i) terminate, cancel or modify any agreement, (ii) execute any instruments and to take any and all other action on behalf of and in the name of Debtor in respect of any of the foregoing and the applicable Issuer thereof, (iii) exercise voting rights or make determinations, (iv) exercise any election (including, but not limited to, election of remedies), (v) exercise any "put", right of first offer or first refusal, or other option, (vi) exercise any right of redemption or repurchase, (vii) give or receive any notice, consent, amendment, waiver or approval, (viii) demand, receive, enforce, collect or receipt for any of the foregoing, (ix) enforce or execute any checks, or other instruments or orders, and (x) file any claims and to take any action in connection with any of the foregoing;

    (f)    all certificates and instruments representing or evidencing any of the foregoing;

    (g)    all other rights, titles, interests, powers, privileges and preferences pertaining to any of the foregoing; and

    (h)    all Proceeds of any of the foregoing.

Notwithstanding the foregoing, Debtor has only granted a security interest in (x) 65% (or such greater percentage that, due to a change in an applicable law after October 27, 2006, (A) could not reasonably be expected to cause the undistributed earnings of the Issuer as determined for United States federal income tax purposes to be treated as a deemed dividend to the Issuer's United States parent and (B) could not reasonably be expected to cause any material adverse tax consequences) of the issued and outstanding Equity Interest of the Issuer entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) and (y) 100% of the issued and outstanding Equity Interest of the Issuer not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)).

As used herein:

    "Equity Interest" means, with respect to any Person, any share of capital stock of, (or other ownership interests in) such Person, any warrant, option or other right for the purchase or other

LEGAL02/30133146v1

A- 1

EXHIBIT _11_

PAGE _173_

acquisition from such Person of any share of capital stock of (or other ownership interest in) such Person, any security convertible into or exchangeable for any share of capital stock of (or other ownership interests in) such Person or warrant, right or option for the purchase or other acquisition from such Person of such shares (or such other ownership interests), and any other ownership interest in such Person (including, without limitation, partnership, member or trust interests therein), whether voting or nonvoting, and whether or not such share, warrant, option, right or other interest is authorized or otherwise existing on any date of determination.

"Person" means an individual, corporation, partnership, limited liability company, association, trust or unincorporated organization, or a government or any agency or political subdivision thereof.

"Proceeds" means all proceeds (including proceeds of proceeds) of any of the Collateral including all: (a) rights, benefits, distributions, premiums, profits, dividends, interest, cash, instruments, documents of title, accounts, contract rights, inventory, equipment, general intangibles, payment intangibles, deposit accounts, chattel paper, and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for, or as a replacement of or a substitution for, any of the Collateral, or proceeds thereof (including any cash, Equity Interests, or other instruments issued after any recapitalization, readjustment, reclassification, merger or consolidation with respect to the Issuers and any security entitlements, as defined in Section 8-102(a)(17) of the UCC, with respect thereto); (b) "proceeds," as such term is defined in Section 9-102(a)(64) of the UCC; (c) proceeds of any insurance, indemnity, warranty, or guaranty (including guaranties of delivery) payable from time to time with respect to any of the Collateral, or proceeds thereof; and (d) payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral, or proceeds thereof.

EXHIBIT _11_

PAGE _174_

## SCHEDULE 1

### MGA Entertainment (Mexico), Inc.
### Pledged Equity Interests

| Issuer | Jurisdiction of Formation | Class of Equity Interest | Certificate Number (if any) | Percentage of Ownership |
|--------|--------------------------|--------------------------|----------------------------|-------------------------|
| MGAE de Mexico SRL de CV | Mexico | Shares Parte Social | N/A | 65% |

EXHIBIT _11_

PAGE _175_

---

**FILING OFFICER STATEMENT**

**INTERNAL USE ONLY**

1. Identification of the Record to which this FILING OFFICER STATEMENT relates.

    1a. INITIAL FINANCING STATEMENT #: 067090317861

    1b. RECORD TO WHICH THIS STATEMENT RELATES:

DOCUMENT NUMBER: 10268190001
FILING NUMBER: 0670908569
FILE DATE/TIME: 11/3/2006 1:34:00 PM

THE ABOVE SPACE IS FOR THE CA FILING OFFICER USE ONLY

2. Describe the inaccuracy or mistake on the part of the file office:

☒ Debtor　☐ Secured Party
☐ Name and Address not indexed.
☒ Name indexed incorrectly
☐ Address indexed incorrectly

☐ File Date entered incorrectly
☐ Wrong Action type entered
☐ Wrong Filing Type entered
☐ Filed in Error
☐ Other

3. Describe filing office administrative action taken as a result of inaccuracy or mistake (including date of each action).

☐ Added Name:
☐ Address:
☒ Corrected Name from: MGA EMTERTAINMENT (MEXICO), INC.
☒ To: MGA ENTERTAINMENT (MEXICO), INC.
☐ Corrected Address from:
☐ To:
☐ Corrected File Date from　　　　to
☐ Re-entered the UCC3　　　　as a
☐ Changed the Filing Type from　　　　to
☐ Document Deleted
☐ Other:

4. Additional Explanation (if applicable):

11/03/2006 13:34

EXHIBIT _11_

PAGE _176_

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**07-71137422**

**05/14/2007 11:35**

**FILED**
CALIFORNIA
SECRETARY OF STATE
SOS
12840850883

A. NAME & PHONE OF CONTACT AT FILER [optional]
Ann Jones, Paralegal (404) 881-7363

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

> UCC Direct Services
> 1232 Q St
> Sacramento CA 95814
> Account 10010537
> CDD

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
06-7090317861 filed 10/30/06

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:
6a. ORGANIZATION'S NAME

OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7. CHANGED (NEW) OR ADDED INFORMATION:
7a. ORGANIZATION'S NAME

OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☑ restated collateral description, or describe collateral ☐ assigned.

All of the Debtor's right, title and interest in the following, whether now owned or hereafter acquired: (a) subject to the limitation set forth in Exhibit A attached hereto, equity interests in MGAH de Mexico SRL de CV, (b) related assets and (c) proceeds thereof, all as more particularly described on Exhibit A attached hereto.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.
9a. ORGANIZATION'S NAME
Wachovia Bank, National Association, as Agent

OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

10. OPTIONAL FILER REFERENCE DATA
File with California Secretary of State; Debtor Name: MGA Entertainment (Mexico), Inc.   6826488 SO
5BM

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)
Cardan 19513/13438

EXHIBIT **11**

PAGE **177**

**Exhibit A**

Debtor:
MGA Entertainment (Mexico), Inc.
16380 Roscoe Blvd., Suite 200
Van Nuys, California 91406

Secured Party:
Wachovia Bank, National Association, as Agent
One South Broad Street, PA 4830
Philadelphia, Pennsylvania 19107

All of Debtor's right, title and interest in, to and under the following (collectively, the "Collateral"):

(a)    all Equity Interests now or hereafter acquired or held by Debtor in Issuer (the "Issuer") described in Schedule 1 attached hereto;

(b)    all payments due or to become due to Debtor in respect of any of the foregoing;

(c)    all of Debtor's claims, rights, powers, privileges, authority, puts, calls, options, security interests, liens and remedies, if any, in respect of any of the foregoing;

(d)    all of Debtor's rights to exercise and enforce any and every right, power, remedy, authority, option and privilege of Debtor relating to any of the foregoing including, without limitation, any power to (i) terminate, cancel or modify any agreement, (ii) execute any instruments and to take any and all other action on behalf of and in the name of Debtor in respect of any of the foregoing and the applicable Issuer thereof, (iii) exercise voting rights or make determinations, (iv) exercise any election (including, but not limited to, election of remedies), (v) exercise any "put", right of first offer or first refusal, or other option, (vi) exercise any right of redemption or repurchase, (vii) give or receive any notice, consent, amendment, waiver or approval, (viii) demand, receive, enforce, collect or receipt for any of the foregoing, (ix) enforce or execute any checks, or other instruments or orders, and (x) file any claims and to take any action in connection with any of the foregoing;

(e)    all certificates and instruments representing or evidencing any of the foregoing;

(f)    all other rights, titles, interests, powers, privileges and preferences pertaining to any of the foregoing; and

(g)    all Proceeds of any of the foregoing.

Notwithstanding the foregoing, (x) in no event shall the Debtor be required to subject to the Lien of the Pledge Agreement or any other loan document more than 65% (or such greater percentage that, due to a change in an Applicable Law after October 27, 2006, (A) could not reasonably be expected to cause the undistributed earnings of such Foreign Subsidiary as determined for United States federal income tax purposes to be treated as a deemed dividend to such Foreign Subsidiary's United States parent and (B) could not reasonably be expected to cause any material adverse tax consequences) of the issued and outstanding Equity Interest of a Foreign Subsidiary entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) determined on a collective basis, but (y) the Debtor shall be required to subject to the Lien of the Pledge Agreement 100% of the issued and outstanding Equity Interest of a Foreign Subsidiary not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)).

EXHIBIT _11_

PAGE _178_

As used herein:

"Equity Interest" means, with respect to any Person, any share of capital stock of (or other ownership interests in) such Person, any warrant, option or other right for the purchase or other acquisition from such Person of any share of capital stock of (or other ownership interests in) such Person, any security convertible into or exchangeable for any share of capital stock of (or other ownership interests in) such Person or warrant, right or option for the purchase or other acquisition from such Person of such shares (or such other ownership interests), and any other ownership interest in such Person (including, without limitation, partnership, member or trust interests therein), whether voting or nonvoting, and whether or not such share, warrant, option, right or other interest is authorized or otherwise existing on any date of determination.

"Person" means an individual, corporation, partnership, limited liability company, association, trust or unincorporated organization, or a government or any agency or political subdivision thereof.

"Proceeds" means all proceeds (including proceeds of proceeds) of any of the Collateral including all: (a) rights, benefits, distributions, premiums, profits, dividends, interest, cash, instruments, documents of title, accounts, contract rights, inventory, equipment, general intangibles, payment intangibles, deposit accounts, chattel paper, and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for, or as a replacement of or a substitution for, any of the Collateral, or proceeds thereof (including any cash, Equity Interests, or other instruments issued after any recapitalization, readjustment, reclassification, merger or consolidation with respect to the Issuers and any security entitlements, as defined in Section 8-102(a)(17) of the UCC, with respect thereto); (b) "proceeds," as such term is defined in Section 9-102(a)(64) of the UCC; (c) proceeds of any insurance, indemnity, warranty, or guaranty (including guaranties of delivery) payable from time to time with respect to any of the Collateral, or proceeds thereof; and (d) payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral, or proceeds thereof.

EXHIBIT _11_

PAGE _179_

SCHEDULE 1

MGA Entertainment (Mexico), Inc.
Pledged Equity Interests

| Issuer | Jurisdiction of Formation | Class of Equity Interest | Certificate Number (if any) | Percentage of Ownership |
|---|---|---|---|---|
| MGAE de Mexico SRL de CV | Mexico | Shares Parts Social | N/A | 100% |

12649652003

LEGAL02/30237046v2

EXHIBIT _11_

PAGE _180_

# EXHIBIT 12



PAGE  1

*The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT

COPIES OF ALL DOCUMENTS ON FILE OF "VISION CAPITAL, LLC" AS

RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

CERTIFICATE OF FORMATION, FILED THE NINETEENTH DAY OF

AUGUST, A.D. 2008, AT 12:36 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID

CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE

AFORESAID LIMITED LIABILITY COMPANY, "VISION CAPITAL, LLC".

4589295   8100H

081207227

You may verify this certificate online
at corp.delaware.gov/authver.shtml

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 7032931

DATE: 12-17-08

EXHIBIT **12**

PAGE **181**

08/19/2008 11:30 FAX 3026528597          DELAWARE CORP          → SECY OF STATE     ☒002

State of Delaware
Secretary of State
Division of Corporations
Delivered 12:41 PM 08/19/2008
FILED 12:36 PM 08/19/2008
SRV 080883130 - 4589295 FILE

## CERTIFICATE OF FORMATION

### OF

### VISION CAPITAL, LLC

This Certificate of Formation of **VISION CAPITAL, LLC** the ("Company"), is being executed by the undersigned for the purpose of forming a limited liability company pursuant to the Delaware Limited Liability Company Act.

　　1.　The name of the Company is **VISION CAPITAL, LLC**.

　　2.　The address of the registered office of the Company in Delaware is 800 Delaware Avenue, City of Wilmington, New Castle County, 19801.  The Company's registered agent at that address is Delaware Corporations LLC.

　　**IN WITNESS WHEREOF**, the undersigned, an authorized person, has caused this Certificate of Formation to be duly executed as of the 19th day of August, 2008.

DELAWARE CORPORATIONS LLC,
Authorized Person

By:  _____

Robin G. Brooks, Vice President

EXHIBIT _12_

PAGE _182_

# EXHIBIT 13

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER (optional)** FRED MASHIAN 3102747501 | |
| **B. SEND ACKNOWLEDGMENT TO: (Name and Address)** FRED MASHIAN 9255 SUNSET BOULEVARD SUITE 630 LOS ANGELES, CA 90069 USA | **DOCUMENT NUMBER:** 18230830002 **FILING NUMBER:** 08-7170410100 **FILING DATE:** 08/29/2008 14:33 **IMAGE GENERATED ELECTRONICALLY FOR WEB FILING THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY** |

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME |  |  |  |  |  |
|---|---|---|---|---|---|
| VISION CAPITAL, LLC, A DELAWARE LIMITED LIABILITY COMPANY | | | | | |

OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1525 SOUTH BROADWAY | LOS ANGELES | CA | 90015 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION DE | 1g. ORGANIZATIONAL ID#, if any 4589295 ☐NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME |  |  |  |  |
|---|---|---|---|---|
| | | | | |

OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any ☐NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)** - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME |  |  |  |  |
|---|---|---|---|---|
| LEXINGTON FINANCIAL LIMITED, A NEVIS COMPANY | | | | |

OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 33-35 DAWS LANE | LONDON | | NW7 4SD | GBR |

**4. This FINANCING STATEMENT covers the following collateral:**
ALL OF DEBTOR'S RIGHT, TITLE AND INTEREST IN MEMBERSHIP INTERESTS OF OMNI 808 INVESTORS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, SECRETARY OF STATE FILING #200821610026.

**5. ALT DESIGNATION:** ☐LESSEE/LESSOR ☐CONSIGNEE/CONSIGNOR ☐BAILEE/BAILOR ☐SELLER/BUYER ☐AG. LIEN ☐NON-UCC FILING

☐**6. This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS** Attach Addendum [if applicable] | **7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)** [ADDITIONAL FEE]    [optional] ☐All Debtors ☐Debtor 1 ☐Debtor 2 |

**8. OPTIONAL FILER REFERENCE DATA**

FILING OFFICE COPY

EXHIBIT __*13*__

PAGE __*183*__

# EXHIBIT 14

M&L | Nevis LLC

 

Home | About Us | Fee Schedule | Order | Contact Us



17 December, 2008

· En Español
· Home
· About Us
· Why Offshore?
· Contact Us
· Fee Schedule
· Order Online
· Why Panama?
· Panama as a Tax Haven
· Panama Foundation
· Panama Corporation
· Corporation / Foundation Combined
· Panama Charitable Foundation
· Panama Real Estate
· Real Estate Title / Escrow Services
· Offshore Banking
· Why Belize?
· Belize IBC
· Costa Rica Corporation
· Why Nevis?
· Nevis IBC
· Nevis LLC
· Why Seychelles?
· Seychelles IBC
· Offshore Trust
· Management Services
· International Fiduciary Structure
· Account Signatory Services
· Offshore Debit Card
· E-Commerce Solutions
· Offshore Web Hosting
· Internet Banking Software
· Offshore Bank Formations
· Swedish Credit Union
· NZ Offshore Finance Co.
· Uruguay SAFI
· Panama Financial Company
· Captive Insurance
· Offshore FAQ's
· Mail Forwarding
· Virtual Office Services
· Re-Invoicing Services
· Relocation Services
· Panama Immigration/ Panama Passport
· Ship / Yacht Registration Services
· Investments
· Reseller Program
· Panama Links



Member of The
NETCHECK
Commerce Bureau
Member Since 10/03
CLICK TO VERIFY

## OFFSHORE-BASED LIMITED LIABILITY COMPANY (LLC)

**DEFINITION:** If your primary goal is not legal tax efficiency but simply access to a low cost way of sheltering assets and providing privacy, a standalone Nevis Limited Liability Company may be ideal. A Limited Liability Company (or LLC) is a form of company or corporation that enjoys some distinctions from "normal" companies. At the most simple level, think of an LLC as a sleek cross between a company and a partnership, with all of the benefits of both.

The general advantages of LLCs are enhanced by the jurisdictional advantage of Nevis, the first offshore financial centre anywhere to enact a Limited Liability Ordinance.

**EXCELLENT PRIVACY:**

- Since the beneficial owners and/or managers are not registered anywhere an LLC provides complete anonymity.
- Nevis has strict privacy oriented laws that forbid any registering, recording, or disclosure of directors and shareholders of exempt companies incorporated there. This means that no annual or other reports by members need to be filed in the public records of Nevis; therefore, there is complete anonymity and their identities are not accessible by any outside party.
- The company's records may be located anywhere in the world

**EXCELLENT ASSET PROTECTION FEATURES:**

- A Nevis LLC enables you to protect your assets and funds from government agencies, creditors, and lawsuits.
- As an owner, you are not exposed to personal liability.
- As an owner, you can participate in management without becoming personally liable for the company's debts.
- A Nevis LLC is particularly advantageous for asset protection purposes since there are no shares that can be attached by a court of law.
- Members are not liable for obligations of the company.

**OTHER LLC BENEFITS:** LLCs provide these additional advantages:

- LLCs provide a mechanism by which managers can limit the authority of non-managing members.
- LLCs have no limitation on the number of members.
- There are no limitations on ownership of an LLC.
- No corporate tax, income tax, withholding tax, stamp tax, asset tax, exchange controls or other fees or taxes are levied in Nevis on assets or income originating outside of Nevis.
- Members of Nevis LLCs may be individuals or business entities of any nationality or domicile.
- Nevis LLCs may amend their Articles of Organisation, merge, or consolidate with other domestic or

EXHIBIT _14_

PAGE _184_

M&L | Nevis LLC



PAN/AMCHAM
Proud Member

- foreign LLCs or other business entities.
- Members of Nevis LLCs may assign their interests to other parties unless restricted otherwise.
- Nevis permits sole member LLCs.
- Management of LLCs may be accomplished by the members or by managers designated by the members.
- Nevis LLCs face no stock limitations and can issue preferred interests analogous to preferred stock of corporations.
- A Nevis LLC is an excellent vehicle if used by a group of investors for a joint venture investment. In this respect it functions as if it were a Limited Partnership, but with all the added features and advantages mentioned above of an LLC that Limited Partnerships for the most part do not have.
- A Nevis LLC can be set up within 24 hours and has low initial cost and low annual fees.

**Deeper Understanding on the efficacy of LLC's**

**LLC vs. a "Normal" Corporation:**

The primary distinction between an LLC and a "normal" company such as a "C" corporation (USA) or a PLC (United Kingdom), is that the LLC is a tax-neutral vehicle because it is taxed as a partnership, rather than as a corporation. Thus, using an LLC eliminates tax at the corporate level. In this regard, it is somewhat like a U.S. "S" corporation or a German GmbH but without all the restrictions and disadvantages. So if the LLC itself has no tax payment obligation - then who does? The obligation for any taxes that would otherwise be owed by the LLC bypasses the LLC itself and attaches directly to the members of the LLC. Members are to LLCs what shareholders are to normal companies. Other companies, as well as individuals and trusts, can be members of an LLC. There are no limits on the number of members or the classes of members that an LLC may have. The important thing to remember is that each member is responsible for his, her or its own pro-rata part of any overall tax obligation of the LLC and that the LLC itself has no tax obligations.

**LLC as Trust Alternative:**

Because of the flexibility available in LLC management structuring and because of the favorable way in which the laws of Nevis are drafted, LLCs can also be used as alternatives to a trust. The manager of the LLC is akin to the trustee of a trust and the members are akin to the beneficiaries of a trust. Sovereign Management & Legal can act as a manager of an LLC on behalf of a client who desires to take advantage of our corporate management services. Substituting an LLC for a trust can change the reporting requirements of taxpayers in onshore jurisdictions. Many providers have abandoned the trust as an offshore planning vehicle because trusts have become a target on onshore legislation and unfavourable court decisions (especially in the U.S.). Hence many are instead recommending either an LLC or a Foundation depending on what the client requirements are. The income or capital gain of an LLC is not reportable as trust income or gain or as corporate income or gain but is treated as personal income or gain.

**Multi-National Joint Ventures:**

LLCs are excellent vehicles for structuring joint venture arrangements between project participants from different countries. This is so because the venture can enjoy all of the benefits of incorporation, but each member is liable for his own taxation in his own country. Moreover, the membership flexibility allows different joint ventures to have different levels of ownership and reward based upon the value that each constituent member brings to the project. The only drawback is that prior to forming LLCs for multi-national joint ventures, the parties must check to see that this hybrid entity is granted the requisite corporate and pass through (partnership) status in the jurisdictions in which the joint ventures are located. Advice from a local onshore lawyer should be sought

**Tax Free:**

All LLCs are free from all forms of Nevisian taxation. There are no Nevisian taxes on dividends, income, capital distribution, or wages whatsoever. Moreover, unlike many onshore jurisdictions, Nevis does not tax an LLC for accumulated (but undistributed) earnings

EXHIBIT 14

PAGE 195

M&L | Nevis LLC

**Privacy:**

All of the affairs of the LLC are private and cannot be disclosed except under truly exceptional circumstances such as links to international terrorism. The only document that needs to be filed with the government is the annual corporate license and this contains minimal information. There is no annual report or annual financial return that needs to be made to the government. There is no public inspection of your LLCs' records. Confidentiality is further enhanced if the LLC appoints our company as manager and we perform the minimal corporate duties required under Nevisian law.

**Enhanced Confidentiality:**

Nevisian LLC laws contain many requirements related to confidentiality including strict financial secrecy laws. Strict legal requirements, known as fiduciary duties, would also govern Sovereign Manager Services behavior as a manager of an LLC. These fiduciary duties are imposed on managers by both the equivalent of the LLCs bylaws and by the proper law of the LLC (usually the law of the country where the manager is located, i.e. Panama). Many of these fiduciary requirements relate to secrecy and accounting obligations by which the manager must abide. Nevisian LLC and Panamanian law prevent our company from discussing your LLC business with anyone you have not instructed us to talk to.

Other governments' agencies such as the Internal Revenue Service in the United States, Revenue Canada, or the Inland Revenue in the United Kingdom cannot force us to discuss your business with them unless they obtain a court order against you or us or both ordering us to make disclosure. But a court order from their respective jurisdiction is useless in Nevis or Panama. In accordance with strong Nevisian law, a judgement from outside of Nevis will not be recognised by Nevisian courts. This means an onshore judgement creditor who won a lawsuit against you or your LLC in, for example, the U.S. or Germany cannot take that U.S. or German judgement and require a Nevisian court to enforce it.

In addition to not recognizing the judgements of other countries, Nevisian law and Nevisian courts do not favor the granting of court orders against LLCs except under truly exceptional circumstances. Nevisian law favors upholding the independence and application of its own law over the enforcement of foreign, onshore laws.

To view pricing, the components of our special offshore packages and to order click here.

Top

Home | About Us | Why Offshore? | Contact Us | Fee Schedule | Order Online | Why Panama?
Panama as a Tax Haven | Panama Foundation | Panama Corporation | Panama Charitable Foundation
Panama Real Estate | Why Belize? | Belize IBC | Belize LLP | Belize PCC | Costa Rica Corporation
Why Nevis? | Nevis LLC | Nevis IBC | Why Seychelles? | Seychelles IBC | Offshore Trust | IBC/Foundation Combined
Offshore Banking | Management Services | Account Signatory Services | Re-Invoicing Services
E-Commerce Solutions | Offshore Debit Card | Offshore Web Hosting | Offshore Bank Formations | Swedish Credit Union
NZ Offshore Finance Company | Uruguay SAFI | Panama Financial Company | Internet Banking Software
Captive Insurance | Offshore FAQ's | Mail Forwarding | Virtual Office Services
Ship / Yacht Registration Services | Relocation Services in Panama | Panama Passport Programs
Investments | Reseller Program | Panama Links | Sitemap

For optimal viewing and navigation, please enable javascript.

EXHIBIT _14_

PAGE _186_

# EXHIBIT 15



# NEVIS ISLAND ADMINISTRATION

*Ministry of Finance, Statistics & Economic Planning*
*REGULATION AND SUPERVISION DEPARTMENT*

December, 12th 2008

Austin Lescott
Clay Ghaut
St. John's Parish
Nevis

Dear Sir

## RE: INFORMATION REQUESTED ON 12th December, 2008

In connection with the above, we advise as follows:

| | |
|---|---|
| Exact Company Name: | LEXINGTON FINANCIAL LIMITED |
| Date of Incorporation: | 03rd March, 2006 |
| Company Number: | C 29848 |
| Registered Agent & Address: | Trust Services Nevis Limited<br>Springates Building<br>Government Road, Charlestown, Nevis<br>Telephone Number: 1 (869) 469-7270/1<br>Fax Number: 1 (869) 469-7272 |
| Shares: | 100,000 shares with par value USD$1.00 |
| Status (standing, etc.): | The Company is in Good Standing |

**Public Record Documents (Art. Of Inc./Org., Amendments, etc):** *FILED*

There are no charges, liens, mortgages or encumbrances filed for or on behalf of the company and/or its shareholders. Also note that information on directors, shareholders, officers, beneficial owners, annual returns and financial statements are not required to be filed by law. Consequently, such information is not available.

Should you require any further information, please do not hesitate to contact us.

Yours sincerely,

Clevelan Williams (Mr.)
REGISTRAR

NEVIS FINANCIAL
SERVICES DEPARTMENT

P. O. Box 689, Main Street, Charlestown, Nevis, West Indies
Tel: 1(869) 469-1469 • 1(869) 469-5521 Ext. 2150 • Fax: 1(869) 469-7739
Website: www.nevisfinance.com • Email: nevfin@sisterisles.kn

EXHIBIT **15**

PAGE **187**

# EXHIBIT 16

Office Front - Virtual Office, Call Handling, Call Answering, Virtual Receptionist & Mai...   Page 1 of 2



HOME
OUR SERVICES
WHO CAN BENEFIT
WHY USE US?
OUR PRICES
OBTAIN A QUOTE
ORDER ONLINE
CASE STUDIES
ARTICLES
NEWS
TESTIMONIALS
POST & FAX SERVICE
F.A.Q
HEAR OUR
OPERATORS
PARTNERS

Home

## A TOTAL VIRTUAL OFFICE OR TELEPHONE ANSWERING SERVICE

IDEAL FOR SOLE TRADERS/PROFESSIONALS, MEDIUM/LARGE COMPANIES FO
COMPANIES WISHING A UK PRESENCE

IMAGE - TIME - EFFICIENCY ...we do more for you than just answer phones

NO GIMMICKS - NO HIDDEN CHARGES - NO SETUP FEE - NO REGISTRATION TO GET A QUO

JUST AN EASY TO UNDERSTAND AND FULLY TRANSPARENT SERVICE THAT DELIVERS EVE

TELEPHONE LINES - LOW COST INTERNATIONAL CALLS - INTERNATIONAL TELEPHONE NUMBERS - FAX TO EMAIL
SMALL/MEDIUM SIZE BUSINESS?

- Superb IMAGE for your company
- We ANSWER your inbound calls
- Your clients talk to a REAL receptionist!
- Friendly, PROFESSIONAL manner
- LOW, clear pricing
- Bespoke FLEXIBLE service

LARGER BUSINESS?

- Up to 70% direct cost savings over direct employment
- Redirect your staff to revenue generation
- Comprehensive switchboard facilities
- Friendly, Professional manner
- No need for Holiday/Sick Cover/Cost
- No HR Cost

Excellent Value
Services from as little as £10 per month + CALLS
You can be operational TODAY or order for later activation
Present a professional image to your clients

### Call NOW for a NO OBLIGATION quote
### FREEFONE ..08000 19 15 39

Subscribe to our
Newsletter

Become an
Affiliate

Write articles for
Officefront

Become a
Referral Agent



OUR CREDIT-CRUN
BUSTER
SPECIAL OFFERS & DISC
TO HELP WITH CURR
ECONOMIC SITUATI
LET'S WORK TOGETHER
THROUGH IT

officefront

Thanks for
Calling

How May
Help You ?



Carter Backer Winter



JORDANS

EXHIBIT *16*

PAGE *188*

Office Front - Virtual Office, Call Handling, Call Answering, Virtual Receptionist & Mai...   Page 2 of 2

OfficeFront Ltd | 33-35 Daws Lane | London NW7 4SD
Tel +44 20 8906 6666 | Fax +44 20 8906 6611 | Email sales@officefront.co.uk
Copyright © 2008 Officefront Limited. Registered in England & Wales Company number 04752787.

Sitemap

EXHIBIT _16_

PAGE _189_

# EXHIBIT 17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION


CARTER BRYANT, an individual,

     Plaintiff,

    vs.

MATTEL, INC., a Delaware
corporation,

             Defendants.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. CV 04-9405 and
05-2727

CERTIFIED
COPY

AND CONSOLIDATED ACTIONS.


REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Wednesday, March 4, 2009

Volume 1


Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 106479

EXHIBIT __17__

PAGE __190__



877.955.3855
www.sarnoffcourtreporters.com
IRVINE ▫ LOS ANGELES ▫ SAN FRANCISCO ▫ LAS VEGAS ▫ SAN DIEGO

SARNOFF
Court Reporters and
Legal Technologies

1                    UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF CALIFORNIA
2                         EASTERN DIVISION

3

4    CARTER BRYANT, an individual,

5          vs.                          No. CV 04-9049 SGL (RNBx)
                                        Consolidated with
6    MATTEL, INC., a Delaware           Nos. CV 04-9405 and
     corporation,                       05-2727
7
              Defendants.
8

9

10

11    _____

12   AND CONSOLIDATED ACTIONS.

13    _____

14

15

16          REPORTER'S TRANSCRIPT OF PROCEEDINGS, Volume 1,

17   taken at 555 West Fifth Street, 48th Floor, Los Angeles,

18   California, beginning at 10:08 a.m. and ending at

19   12:12 p.m. on Wednesday, March 4, 2009, before

20   CHERYL R. KAMALSKI, Certified Shorthand Reporter No. 7113.

21

22

23

24

25

EXHIBIT _17_

PAGE _191_

```
 1    APPEARANCES:

 2

 3    Discovery Master:

 4          ROBERT C. O'BRIEN
            Attorney at Law
 5          555 West Fifth Street, Suite 4800
            Los Angeles, California  90013-1065
 6          (213) 629-7400

 7    For Defendant Mattel, Inc.:

 8          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
            BY:  MICHAEL T. ZELLER
 9          BY:  JON COREY
            Attorneys at Law
10          865 South Figueroa Street, 10th Floor
            Los Angeles, California 90017
11          (213) 624-7707

12          MATTEL, INC.
            BY:  JILL E. THOMAS
13          Assistant General Counsel
            333 Continental Boulevard
14          El Segundo, California 90245-5012
            (310) 252-2000

15

      For Defendants MGA and Isaac Larian:
16

17          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
            BY:  JASON D. RUSSELL
            BY:  JENNIFER K. DEL CASTILLO
18          Attorneys at Law
            300 South Grand Avenue
19          Los Angeles, California 90071
            (213) 687-5000

20

      For Defendant IGWT Group and IGWT 826 Investments:
21

22          VALLE & ASSOCIATES
            BY:  JEFFREY B. VALLE
            BY:  ILAN WISNIA
23          Attorneys at Law
            11911 San Vicente Boulevard, Suite 324
24          Los Angeles, California 90049
            (310) 476-0300

25
```

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT *17*

PAGE *192*

TRANSCRIPT OF PROCEEDINGS                           03/04/09

```
 1    APPEARANCES (Continued):

 2

 3    For 808 Investors, LLC, Vision Capital, LLC, and OmniNet
      Capital, LLC:
 4
          BINGHAM McCUTCHEN LLP
 5        BY:  TODD E. GORDINIER
          BY:   PETER VILLAR
 6        Attorneys at Law
          600 Anton Boulevard, 18th Floor
 7        Costa Mesa, California 92626-1924
          (714) 830-0622
 8
      Also Present:
 9
          STEPHEN HAUSS
10        CRAIG HOLDEN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

EXHIBIT _17_

PAGE _193_

1    compel is improper and should be denied for both serious

2    substantive and procedural reasons.  If we're going to

3    have these rules, they have a purpose, they have to be

4    followed.  And the Court's very order, the Court's

5    standing order says if this isn't done, it won't be

6    considered.  They now are walking away from these other

7    orders and they want to rely on the discovery stipulation

8    and order which, of course, I had no knowledge of when we

9    were having this discussion.  As you're well aware of,

10   they didn't even comply with that.  Perhaps if they had,

11   and set out, as they're required to do in writing, what it

12   is they want, why they want it, let's talk about it, let's

13   sit down and discuss it, we could, perhaps, have narrowed

14   it.  In fact, both I and my colleague told Mr. Corey we

15   were pretty sure we could satisfy himself with respect to

16   the bona fides of the transaction.  That was rejected.

17        MR. O'BRIEN:  Let me ask you this question.

18   You've said the discovery's overbroad.  What narrow

19   request could Mattel make that you believe would be proper

20   under the circumstances here?  In other words, what kind

21   of request do you think would be, as a third party?  I

22   mean, I understand you don't want to respond to anything,

23   it's a burden.  But assuming there's always a burden in

24   responding to discovery, what narrow request, based on

25   your understanding of the issues in phase 2, would be

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT _17_

PAGE _194_

1    proper for your -- that you wouldn't come in here and file

2    a motion to quash?

3            MR. GORDINIER:   What documents do we have that

4    show that either Mr. Larian or MGA paid money into this to

5    purchase this debt?  I can tell you there are none.  This

6    is a ready, fire, aim situation.  The allegations that

7    were made and were made publicly are unconscionable and

8    can't be undone.

9            MR. O'BRIEN:  What other areas?  For example,

10   would the payment history with respect to the debt from

11   MGA to 808, assuming there is one, I don't know if this is

12   a balloon payment or that sort of thing --

13           MR. GORDINIER:  I assume that's in MGA's

14   financial statements, but -- I mean, I assume that they've

15   made payments.  I don't know the answer to that, that's

16   reflected on their financial statements, which I'm

17   assuming have been exchanged, but I don't know that.

18           MR. O'BRIEN:  Mr. Russell said that there was

19   discovery that was taken of Wachovia in phase 1.  I was

20   not involved in the case.  I don't know what discovery was

21   taken of Wachovia.  But, presumably -- but it sounds like,

22   and I'll let Mr. Zeller answer this and Mr. Russell

23   address it as well, but if there was discovery in phase 1

24   that was proper as to Wachovia in establishing the debt

25   and looking at the payment terms, and all that sort of

EXHIBIT _17_

PAGE _195_

1    thing, would that same sort of discovery be proper

2    vis-a-vis 808 --

3            MR. GORDINIER:  We absolutely offered -- we

4    offered, without knowing any of this, to give them the

5    deal documents.  Absolutely.  I don't know that it's

6    proper.  I think it's overbroad and I think it's

7    premature, but I'll just tell you, we offered to give them

8    the deal documents.  There's no secret there.  We did buy

9    the debt at a discount.  You've read the transcript.  I

10   told Judge Larson my client wants to make money at this,

11   and so he made a business decision that -- you know,

12   Wachovia has its own reasons for doing what it's doing

13   that we all can kind of guess -- but I don't know.  My

14   client had his own reasons for doing what he's doing.  The

15   only thing that seems to relate to all this is do they

16   have -- are there any documents that show the disgorgement

17   thing, or whatever he's trying to argue, and I'm not

18   familiar with the phase 2 -- but I have no problem

19   conceptually giving them the deal documents.  None at all.

20   But that doesn't entitle them to look at all records that

21   reflect all my nonparty entities, all documents detailing

22   or setting forth.  Read through them; they're overbroad

23   and they're improper.

24           MR. O'BRIEN:  What about performance, the

25   performance of the loan.

52

EXHIBIT *17*

PAGE *196*

```
 1            So, for example, would communications regarding
 2    the loan -- because one of the statements that Mr. Zeller
 3    made is that he thought that this loan might be forgiven
 4    or that it might be a sham loan, would communications
 5    between the 808 entities and MGA regarding whether the
 6    loan should be paid back, whether the loan has to be paid
 7    back, when the loan has to be paid back, would those sorts
 8    of communications, if they exist -- I have no idea if they
 9    exist or not -- would those be, in your view, discoverable
10    from your clients or would those be --
11            MR. GORDINIER:  In my view under the law, given
12    what they've propounded and given the motion they've made,
13    you have no choice but to deny it.
14            Having said that, informally we're sitting here
15    trying to cut through all this stuff.  I have no trouble,
16    and I've told them in the one conversation they deemed to
17    have, that we would have no trouble giving them the deal
18    documents.  I can tell you we have no trouble giving you,
19    or giving them the payments reflected or that sort of
20    stuff.  That doesn't mean, and I don't think the law would
21    require or permit that at this point.  I think at this
22    point you have to go -- they have to go to MGA first,
23    because all that's coming from MGA, and I really do think
24    that's the appropriate procedure.  And I really don't
25    think it's proper to encourage this precise kind of
```

54

EXHIBIT __17__

PAGE ___197___

TRANSCRIPT OF PROCEEDINGS                         03/04/09

1   abusive fishing expedition, which is what we've got going

2   on.

3           MR. O'BRIEN:  And I understand your position.

4   I'm not negotiating with you on MGA's behalf and I'm not

5   suggesting that you -- I'm just trying to get an idea of

6   where you think the law -- what the parameters of

7   discovery are with respect to your client.  So I'm not

8   telling you you should, on the record or otherwise, offer

9   to give them documents if you don't think they're due.

10  I'm not trying to push you into that position and hold

11  it -- the point of this isn't to meet and confer.  I'm

12  just trying to get an idea of where you see the contours

13  of the law with respect to your client as to what

14  discovery might or might not be proper.

15          And I understand your position that on this

16  record you don't think any of the current discovery is

17  proper, but --

18          MR. GORDINIER:  Right.  Assuming they can't get,

19  from MGA, the payments from MGA on the loan, I have no

20  problem with that.  I have no problem with the loan

21  documents.

22          Now, it's true MGA was not a party directly to

23  the transaction between Omni 808 and Wachovia.  They had

24  to sign some guarantees, I think, or some

25  indemnifications, I'm not sure exactly, I'm not a

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT _17_

PAGE _198_

1  corporate guy.  But that deal was negotiated between

2  Omni 808 and Wachovia.  And so -- let's make sure that I'm

3  communicating with you, and that is on this record they're

4  not entitled to anything.  However, what I want more than

5  anything out of today is efficiency and economy and peace

6  and you guys in the front of this table go on and do your

7  thing leading to the trial between all the MGA entities

8  and the Mattel entities and leave me and my clients alone.

9  And if that will cut it off, I'd be happy to do that.

10  That's my position.  Do you see what I'm saying?

11          MR. O'BRIEN:  I do.  I understand.  Mr. Zeller

12  took the position that in the Ninth Circuit the law that

13  we're dealing with here, unlike New York, a party isn't

14  required to go to their adversary before going to a third

15  party to seek discovery.  Do you have a -- you seem to be

16  taking a different position --

17          MR. GORDINIER:  It's ironic --

18          MR. O'BRIEN:  -- as a practical matter.  Is there

19  a case cite or.

20          MR. GORDINIER:  Absolutely.  It's ironic that

21  Mr. Zeller would cite the Ninth Circuit.  Google

22  Mr. Zeller and Mattel and read the Ninth Circuit's opinion

23  on why a subpoena like this should be quashed, and why

24  sanctions against an attorney can be granted.  The case

25  name is Mattel versus Walking Mountain Productions.  So

56

EXHIBIT _17_

PAGE _199_

1    that's the case I'd cite to you.

2          MR. O'BRIEN:  All right.

3          MR. GORDINIER:  Here it is, it's 353 F 3rd 792.

4    If you want, I can hand it up to you.

5          MR. O'BRIEN:  I can take a look at it.  One --

6          MR. GORDINIER:  Most of it is not related.  Go to

7    the end where they're upholding -- Judge Lew found that

8    what Mr. Zeller was doing was improper, and sanctioned

9    him, and the Ninth Circuit affirmed it.  So if you want

10   the authority I'm relying on, that's it.

11         MR. O'BRIEN:  Okay.  I'll take it -- if that's

12   the authority you're relying on for that position, I'll

13   take it.

14         The one thing that I do want to caution here is

15   that we're not litigating that case.  I don't know what

16   the discovery issues were in that case.  We're going to be

17   together for a fair amount of time.  I know you may not --

18         MR. GORDINIER:  Hopefully not me.

19         MR. O'BRIEN:  I understand that.

20         MR. GORDINIER:  No offense, Mr. O'Brien.

21         MR. O'BRIEN:  None taken.  But I do -- I don't

22   want to have, unless it's directly relevant, and I'm

23   sure you weren't intending to do so, but I don't want any

24   sort of ad hominum attacks on counsel and question their

25   motives and that sort of thing.  My feeling here is that

EXHIBIT _17_

PAGE _200_

1         I, the undersigned, a Certified Shorthand

2  Reporter of the State of California, do hereby certify:

3         That the foregoing proceedings were taken

4  before me at the time and place herein set forth; that

5  any witnesses in the foregoing proceedings, prior to

6  testifying, were duly sworn; that a record of the

7  proceedings was made by me using machine shorthand

8  which was thereafter transcribed under my direction;

9  that the foregoing transcript is a true record of the

10  testimony given.

11        Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript [  ] was [  ] was not requested.

15        I further certify I am neither financially

16  interested in the action nor a relative or employee

17  of any attorney or party to this action.

18        IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20

21  Dated:  MAR 0 9 2009 _____

22

23               *Cheryl R. Kamalski*

              CHERYL R. KAMALSKI

24              CSR No. 7113

25

EXHIBIT *17*

PAGE *207*

# EXHIBIT 18

1   Bingham McCutchen LLP
    TODD E. GORDINIER (SBN 82200)
2   todd.gordinier@bingham.com
    PETER N. VILLAR (SBN 204038)
3   peter.villar@bingham.com
    JENNIFER A. LOPEZ (SBN 232320)
4   jennifer.lopez@bingham.com
    600 Anton Boulevard
5   18th Floor
    Costa Mesa, CA  92626-1924
6   Telephone:  714.830.0600
    Facsimile:  714.830.0700
7

8   Attorneys for Non-party
    OMNI 808 INVESTORS, LLC
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| Carter Bryant, an individual, | Case No. CV 04-9049 SGL (RNBx) |
| Plaintiff, | **OMNI 808 INVESTORS, LLC'S *EX PARTE* APPLICATION FOR LEAVE TO INTERVENE FOR LIMITED PURPOSE AS A MATTER OF RIGHT OR, IN THE ALTERNATIVE, FOR PERMISSIVE INTERVENTION** |
| v. | |
| Mattel, Inc., a Delaware Corporation, | |
| Defendant. | |
| | Judge:  Hon. Stephen G. Larson |
| AND CONSOLIDATED ACTIONS | |

2-3-09

A/72829697.5/3009108-0000335082

EXHIBIT *18*

PAGE *202*

1       Omni 808 Investors, LLC ("Omni") hereby applies *ex parte* pursuant to Rule

2   24(a) or, in the alternative, Rule 24(b) of the Federal Rules of Civil Procedure and

3   Local Rule 7-19, for an order authorizing it to intervene for the limited purpose of

4   responding to Mattel, Inc.'s ("Mattel") *Ex Parte* Application for Appointment of a

5   Receiver for MGA Entertainment, Inc. ("MGA") and all other issues related to

6   Omni's status as a secured creditor of MGA.

7       Omni makes this application on the grounds that Mattel's request for the

8   appointment of a receiver at MGA may have an immediate and irreparable adverse

9   impact on Omni, MGA's largest secured creditor. Omni satisfies all of the

10  requirements to intervene as a matter of right: the application is timely; Omni has

11  a significantly protectable interest relating to the property or transaction involved

12  in the pending lawsuit; disposition of the lawsuit may adversely affect Omni's

13  interest unless intervention is allowed; and the existing parties do not adequately

14  represent Omni's interest. In the alternative, the Court should exercise its

15  discretion to grant permissive intervention because Omni has a claim that shares a

16  common question of law or fact with the main action.

17      Good cause exists to seek this relief on an *ex parte* basis because Mattel has

18  made its request for the appointment of a receiver on an *ex parte* basis. If the

19  Court appoints a receiver, Omni may suffer irreparable harm.

20      Pursuant to Local Rule 7-19, on February 2, 2009, Omni's counsel gave

21  notice of this *ex parte* application and the relief being sought to counsel for MGA,

22  Robert Herrington of Skadden, Arps, Slate, Meagher & Flom LLP (telephone: 213-

23  687-5000; address: 300 South Grand Avenue, Suite 3400, Los Angeles, California

24  90071) and counsel for Mattel, Jon Corey of Quinn Emanuel Urquhart Oliver &

25  Hedges, LLP (telephone: 213-443-3000; address: 865 South Figueroa Street, 10th

26  Floor, Los Angeles, California 90017-2543). Counsel for MGA stated that MGA

27  will not oppose this application. Counsel for Mattel stated that Mattel will oppose

28

A/72829697.5/3009108-0000335082

EXHIBIT *18*

PAGE *203*

1  this application because it is Mattel's view that MGA as debtor can adequately

2  protest the interests of its largest secured creditor.  Omni disagrees.

3       This application is based on this Notice of *Ex Parte* Application, the

4  accompanying Memorandum of Points and Authorities, the records and files of this

5  Court, including without limitation the Phase 1 trial record, and all other matters of

6  which the Court may take judicial notice.

7

8  DATED:  February 3, 2009          Bingham McCutchen LLP

9

10

11  By:
        Todd E. Gordinier
12       Attorneys for Non-party
        Omni 808 Investors, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

EXHIBIT __18__

PAGE __204__

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................. 1

II. STATEMENT OF FACTS ...................................................... 3

III. LEGAL ARGUMENT ........................................................... 6

    A.   Omni is Entitled to Intervene as a Matter of Right for the Limited Purpose of Protecting Omni's Status as a Secured Creditor ........................................................................... 6

        1.   Omni's Application Is Timely. ..................................... 7

        2.   Omni Has a Significantly Protectable Interest in the Receivership Issues Involved in the Pending Litigation. .......... 7

        3.   The Appointment of a Receiver May Impair or Impede Omni's Ability to Protect Its Interests. ........................ 8

        4.   The Existing Parties May Not Adequately Represent Omni's Interest. ..................................................... 9

    B.   In the Alternative, This Court Should Grant Omni Permissive Intervention ..................................................................... 10

IV. CONCLUSION .................................................................... 11

-i-

A/72829697.5/3009108-0000335082

EXHIBIT _18_

PAGE _205_

1

2
## TABLE OF AUTHORITIES

3                                                                                    **Page(s)**

**FEDERAL CASES**

4

5
*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir. 2003) ............................................................. 6, 9

6

7
*Beckman Indus. Inc. v. International Ins. Co.,*
  966 F.2d 470 (9th Cir. 1992) .................................................................. 6

8

9
*Commerz Union Austalt v. Collectors' Guild, Ltd.,*
  792 F. Supp. 870 (S.D.N.Y. 1991) ......................................................... 8

10

11
*DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.,*
  187 F. Supp. 910 (S.D. Ohio 2001) ........................................................ 9

12

13
*Donnelly v. Glickman,*
  159 F.3d 405 (9th Cir. 1998) .................................................................. 6

14
*Engra, Inc. v. Gabel,*
  958 F.2d 643 (5th Cir. 1992) .................................................................. 7

15

16
*Forest Conservation Council v. United States Forest Serv.,*
  66 F.3d 1489 (9th Cir. 1995) .................................................................. 7

17

18
*Kootenai Tribe v. Veneman,*
  313 F.3d 1094 (9th Cir. 2002) .............................................................. 10

19

20
*League of United Latin American Citizens v. Wilson,*
  131 F.3d 1297 (9th Cir. 1997) ................................................................ 6

21

22
*Lockyer v. U.S.,*
  450 F.3d 436 (9th Cir. 2006) .................................................................. 6

23

24
*Meyer Jewelry Co. v. Meyer Holdings, Inc.,*
  906 F. Supp. 428 (E.D. Mich. 1995) ...................................................... 9

25
*Mountain Top Condominium v. Dave Stabbert Master Builder,*
  72 F.3d 361 (3rd Cir. 1995) .................................................................... 8

26

27
*NL Indus. v. Secretary of Interior,*
  777 F.2d 433 (9th Cir. 1985) .................................................................. 8

28

A/72829697.5/3009108-0000335082

EXHIBIT *18*

PAGE *206*

*Reich v. ABC/York-Estes Corp.,*
    64 F.3d 316 (7th Cir. 1995)..............................................................3

*Rumbaugh v. Beck,*
    491 F. Supp. 511 (E.D. Pa. 1980)..................................................9

*Saluck v. Rosner,*
    1999 WL 46620 (E.D. Pa. Jan. 6, 1999)........................................9

*San Juan County v. U.S.,*
    503 F.3d 1163 (10th Cir. 2007).....................................................7

*SEC v. Flight Transp. Corp.,*
    699 F.2d 943 (8th Cir. 1983)..........................................................8

*Sierra Club v. EPA,*
    995 F.2d 1478 (9th Cir. 1993).......................................................8

*Southwest Center for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001)....................................................3, 7

*Stringfellow v. Concerned Neighbors in Action,*
    480 U.S. 370 (1987)........................................................................6

*Trbovich v. United Mine Workers,*
    404 U.S. 528 (1972).........................................................................9

*U.S. v. South Florida Water Dist.,*
    922 F.2d 704 (11th Cir. 1991).......................................................7

*United States v. State of Washington,*
    86 F.3d 1499 (9th Cir. 1996).........................................................7

*Venegas v. Skaggs,*
    867 F.2d 527 (9th Cir. 1989).......................................................11

*Yniguez v. Arizona,*
    939 F.2d 727 (9th Cir. 1991).........................................................8

**RULES**

Fed. R. Civ. P. 24(a) .........................................................................6

Federal Rule of Civil Procedure 24(b)(2).......................................10

-iii-

EXHIBIT *18*

PAGE *207*

1         <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.**     **INTRODUCTION**

3         Non-party Omni 808 Investors, LLC ("Omni") is the largest secured creditor

4   of MGA Entertainment, Inc. ("MGA"). Omni recently was served with a sweeping

5   subpoena from Mattel, Inc. ("Mattel") in connection with this litigation requesting

6   the production of documents relating to Omni's formation, governance, finances,

7   business relationships and transactions. Mattel's papers in support of its request to

8   have the Court appoint a receiver to "oversee and control all business and financial

9   aspects" of MGA mischaracterize Omni, its principals and the transaction Mattel

10   purports to describe to this Court. Because the appointment of a receiver could

11   significantly and irreparably harm Omni's interests as a senior secured creditor of

12   MGA, Omni hereby seeks leave of Court to intervene in this action for this limited

13   purpose.

14         Mattel's *ex parte* application is replete with false and misleading

15   representations and demonstrates Mattel's profound misunderstanding, *inter alia*,

16   of Omni and the circumstances surrounding its recent purchase of MGA's debt

17   from non-party Wachovia. The actual background of this transaction is both

18   straightforward and easily explained. In October 2006, Wachovia Bank, National

19   Association and a syndicate of other financial institutions (collectively,

20   "Wachovia") provided a senior revolving credit facility to MGA (the "Senor Bank

21   Credit Facility"). In July 2008, Wachovia accelerated the maturity of the

22   outstanding debt obligations owed to Wachovia by MGA (over $310 million),

23   demanding full and immediate payment of the entire unpaid balance as it was

24   entitled to do under the terms of its Senior Bank Credit Facility.

25         In response to Wachovia's accelerated loan payment demand, MGA began

26   efforts to find someone who would purchase the Senior Bank Credit Facility from

27   Wachovia. Neil Kadisha, the Managing Partner of a diversified investment firm,

28   Omninet Capital, LLC, was approached and began discussions with Wachovia

- 1 -

EXHIBIT *18*

PAGE *208*

1   regarding a potential purchase of the Senior Bank Credit Facility.  In September
2   2008, Wachovia and Omni (a special purpose entity formed by Mr. Kadisha for
3   this transaction) entered into an assignment and exchange agreement whereby
4   Omni acquired all right, title and interest in the Senior Bank Credit Facility
5   excluding approximately $21 million which was retained by Wachovia.  Omni's
6   purchase of the Senior Bank Credit Facility from Wachovia was a straightforward,
7   arms-length business deal between non-parties to this action.

8       In support of its argument for the appointment of a receiver, Mattel
9   insinuates, without any evidence, that there was something untoward about the
10  timing and circumstances of Omni's debt purchase transaction.  Mattel falsely
11  represents to the Court that MGA received new "sudden funding" from an "off-
12  shore, non-operating" entity during the trial of this action.  Even allowing for its
13  ignorance of the actual terms of the Omni-Wachovia transaction, there is no reason
14  for such language.  If by "funding" Mattel means the loan from Wachovia, that
15  funding was provided by Wachovia to MGA under the Senior Bank Credit Facility
16  beginning in 2006 -- *long before the trial and any judgment was entered against*
17  *MGA in this action in 2008.*  If by "funding" Mattel means the Omni-Wachovia
18  transaction, the monies flowed *from Omni to Wachovia* as consideration for the
19  purchase of the debt owed by MGA.  The timing of the Omni-Wachovia
20  transaction in September 2008 was driven by a host of factors, most proximately
21  by Wachovia's decision to accelerate the outstanding debt obligation under the
22  Senior Bank Credit Facility.

23      Moreover, the source was not an "off-shore, non-operating" entity, as Mattel
24  repeatedly suggests in its application.  Wachovia (defined to include it and its
25  syndicate of bank and other institutional lenders), the original source of the
26  funding, are all substantial financial institutions; Omni, the assignee of the loan, is
27  a California limited liability company.  Mattel's paranoiac rhetoric regarding this
28  transaction and the source of the funding is unfounded.

- 2 -

EXHIBIT _18_

PAGE _209_

1    Under federal law, a non-party is entitled to intervene *as a matter of right*

2    when it claims an interest relating to the property or transaction that is the subject

3    of the action and is so situated that disposing of the action may as a practical

4    matter impair or impede its ability to protect its interest. A non-party may also

5    intervene, in the discretion of the court, when it has a claim that shares with the

6    main action a common question of law or fact.

7    Here, Omni has a secured interest in MGA's assets, including, *inter alia,*

8    MGA's inventory and accounts receivable, that is far greater and superior to any

9    alleged interest of unsecured creditors like Mattel. Mattel is asking this Court for

10   an extraordinary remedy, solely to suit its own litigation and competitive interests,

11   which if granted could well cripple MGA's operations and would certainly impair

12   the security interests of Omni and other creditors. Indeed, the proffered basis for

13   Mattel's opposition to Omni's application for leave to intervene -- that a debtor can

14   adequately represent the interests of its largest secured creditor -- speaks volumes

15   about Mattel's approach not only to this issue but also to its actual motivations in

16   making its request for a receiver.

17   For these reasons, Omni respectfully requests that the Court grant it leave to

18   intervene in this action for the purposes of challenging the appointment of a

19   receiver and related issues that could adversely affect Omni's security interests.

20

21   **II.    STATEMENT OF FACTS[1]**

22   On or about October 27, 2006, MGA entered into a Credit Agreement with

23   Wachovia Bank, National Association and a syndicate of other banks and

24

25   _____

26   [1] In evaluating a motion to intervene, courts must accept as true all nonconclusory allegations contained in the motion. *Southwest Center for Biological Diversity v. Berg,* 268 F.3d 810, 819 (9th Cir. 2001); *Reich v. ABC/York-Estes Corp.,* 64 F.3d 316, 321 (7th Cir. 1995).

27

28

- 3 -

A/72829697.5/3009108-0000335082

EXHIBIT _18_

PAGE _210_

1  institutional lenders (collectively, "Wachovia"), pursuant to which Wachovia

2  provided a senior revolving credit facility to MGA in an aggregate available

3  amount for borrowing up to $400 million, secured by a senior perfected security

4  interest in, *inter alia,* all of MGA's inventory and accounts receivable (the "Senior

5  Bank Credit Facility"). On July 21, 2008, Wachovia declared the Senior Bank

6  Credit Facility to be in default and accelerated the maturity of the outstanding debt

7  obligations owed to Wachovia by MGA, demanding full and immediate payment

8  of the entire unpaid $313,496,700 balance of the loans.

9       In response to Wachovia's accelerated loan payment demand, MGA

10  approached Neil Kadisha, a highly regarded businessman and philanthropist who is

11  currently the Managing Partner of a diversified investment firm, Omninet Capital,

12  LLC.[2] Mr. Kadisha and Omninet Capital, LLC have substantial experience

13  evaluating and investing in distressed debt and distressed companies. Mr. Kadisha

14  immediately commenced negotiations with Wachovia regarding a potential

15  purchase of the Senior Bank Credit Facility from Wachovia.

16       On or about July 29, 2008, Omninet Capital, LLC made an offer to acquire

17  the Senior Bank Credit Facility, including the outstanding debt obligations from

18  Wachovia for $109,723,845 (representing 35% of the $313,496,700 principal

19  amount of the debt obligations outstanding as of the acceleration date). After a

20  couple weeks of heavy negotiations, Wachovia agreed to sell and assign its interest

21  in all but $21,944,769 of the outstanding debt obligations under the Senior Bank

22  Credit Facility to Omni (the retained amount was then exchanged for unsecured

23  promissory notes issued by MGA to Wachovia). In order to fund the acquisition of

24

25  [2] Omni is loathe to address the gratuitous ad hominem attacks concerning Mr. Kadisha and an ongoing civil litigation matter in the papers filed by Mattel, which

26  are inaccurate, incomplete and irrelevant, but if the Court is at all concerned by those matters Omni is prepared to do so. Suffice it to say for now that the civil

27  litigation matter referred to by Mattel has not yet been finally resolved.

28

A/72829697.5/3009108-0000335082

EXHIBIT ___18___

PAGE ___211___

1   the Senior Bank Credit Facility, Mr. Kadisha solicited various private investors and

2   formed a special purpose entity, Omni 808 Investors, LLC, a California limited

3   liability company ("Omni")[3]. The formation of a special purpose entity is very

4   common for these types of transactions and is neither suspicious nor improper.

5       On or about September 3, 2008, Omni and Wachovia entered into a written

6   Master Assignment and Exchange Agreement whereby Omni acquired all right,

7   title and interest in the debt obligations under the Senior Bank Credit Facility,

8   other than the $21,944,769 exchanged for the unsecured promissory notes issued

9   by MGA to Wachovia Bank, National Association and the other original lenders.

10  As a result of the agreement, Omni stepped into and presently stands, as successor-

11  in-interest, in the position of Wachovia under the Senior Bank Credit Facility and

12  has a senior perfected security interest in MGA's assets, including, *inter alia*,

13  MGA's inventory and accounts receivable.  Omni's secured interest is superior to

14  that of any potential unsecured creditors, including Mattel.

15      Omni has a compelling interest in the financial health and stability of MGA

16  and its assets.  If MGA fails, MGA's ability to repay the outstanding debt

17  obligation in excess of $300 million owed to Omni will certainly be imperiled.

18  The appointment of a receiver to "oversee and control all financial and business

19  aspects" of MGA, solely to satisfy Mattel's interests, would harm MGA's ability to

20  operate independently and efficiently and would infringe upon, or potential

21  foreclose, the interests of Omni and other creditors.

22

23

24

25

26  [3]  Mattel erroneously refers to Omni 808 International, LLC, in its *ex parte*
    application, which further demonstrates Mattel's confusion regarding the entities

27  involved.

28

-5-

EXHIBIT 18

PAGE 212

## III.  LEGAL ARGUMENT

### A.  Omni is Entitled to Intervene as a Matter of Right for the Limited Purpose of Protecting Omni's Status as a Secured Creditor

Omni is entitled to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a). Rule 24(a) provides that a court must permit a non-party to intervene who "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest . . . ." *See also, Lockyer v. U.S.*, 450 F.3d 436, 440 (9th Cir. 2006). The Ninth Circuit construes Rule 24 liberally in favor of applicants for intervention. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). The inquiry required under Rule 24(a)(2) is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate. *Donnelly*, 159 F.3d at 409. "In determining whether intervention is appropriate, we are guided primarily by practical and equitable considerations. We generally interpret the requirements broadly in favor of intervention." *Id.*

When a non-party claims an interest relating to the subject property or transaction of the action, courts generally require four factors: (1) a timely application; (2) the applicant has a "significantly protectable" interest relating to the property or transaction involved in the pending lawsuit; (3) the disposition of the lawsuit may adversely affect applicant's interest unless intervention is allowed; and (4) the existing parties may not adequately represent the would-be intervenor's interest. *Arakaki*, 324 F.3d at 1083; *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

Additionally, a district court has the discretion to grant a non-party limited intervention for certain issues or purposes. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378 (1987); *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *Beckman Indus. Inc. v. International Ins. Co.*, 966 F.2d

- 6 -

EXHIBIT __18__

PAGE __213__

1   470, 473 (9th Cir. 1992). "A nonparty may have a sufficient interest for some

2   issues in a case but not others, and the court may limit intervention accordingly."

3   *U.S. v. South Florida Water Dist.*, 922 F.2d 704, 707 (11th Cir. 1991); *San Juan*

4   *County v. U.S.*, 503 F.3d 1163, 1203 (10th Cir. 2007).

5         1.    <u>Omni's Application Is Timely.</u>

6         Courts generally consider the following factors relevant to the issue of

7   timeliness: (1) the stage of the proceedings at the time the applicant seeks to

8   intervene; (2) the prejudice to the existing parties from applicant's delay in seeking

9   leave to intervene; and (3) any reason for and the length of delay in seeking

10   intervention. *United States v. State of Washington*, 86 F.3d 1499, 1502 (9th Cir.

11   1996); *Engra, Inc. v. Gabel*, 958 F.2d 643, 644 (5th Cir. 1992).

12         Here, Omni's application is timely. On or about January 9, 2009, Mattel

13   served a subpoena on Omni requesting the production of documents relating to

14   Omni's formation, governance, finances, business relationships and transactions.

15   Omni also recently learned that Mattel filed an *ex parte* application for the

16   appointment of a receiver at MGA. The Court has yet to decide the pending

17   request for the appointment of a receiver and Omni has acted without delay.

18         2.    <u>Omni Has a Significantly Protectable Interest in</u>

19                <u>the Receivership Issues Involved in the Pending</u>
             <u>Litigation.</u>

20         "[W]hether an applicant for intervention demonstrates sufficient interest in

21   an action is a practical, threshold inquiry. No specific legal or equitable interest

22   need be established." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d

23   810, 818 (9th Cir. 2001) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th

24   Cir. 1993)); *see also Forest Conservation Council v. United States Forest Serv.*, 66

25   F.3d 1489, 1493 (9th Cir. 1995). "It is generally enough that the interest [asserted]

26   is protectable under some law, and that there is a relationship between the legally

27   protected interest and the claims at issue." *Southwest Center for Biological*

28   *Diversity*, 268 F.3d at 818 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th

-7-

EXHIBIT *18*

PAGE *214*

1   Cir. 1993)). *See, e.g., NL Indus. v. Secretary of Interior*, 777 F.2d 433, 435 (9th
2   Cir. 1985) (corporate property owner that held unpatented mining claim on
3   particular property permitted to intervene in dispute over other mining claims on
4   that property). An intervenor's interest must be "significantly protectable such that
5   it will be directly and immediately affected by the litigation." *Werbungs und*
6   *Commerz Union Austalt v. Collectors' Guild, Ltd.*, 792 F. Supp. 870, 874
7   (S.D.N.Y. 1991) (court allows intervention by investor in one party when investor
8   had secured appeal bond and owned collateral securing letter of credit).

9          Here, Omni is the largest secured creditor of MGA, with a superior interest
10  in MGA's assets to any unsecured creditors including Mattel. Omni's interest is
11  directly related to issues raised by Mattel in its *ex parte* application for the
12  appointment of a receiver. Therefore, Mattel has a significantly protectable
13  interest relating to the property or transaction which is the subject of this action.

14          3.      The Appointment of a Receiver May Impair or
15                  Impede Omni's Ability to Protect Its Interests.

16          In order to show that the disposition of the action may impair or impede the
17  ability to protect a non-party's interest, the non-party need only show a "practical"
18  impairment, "not whether the decision itself binds them." *Yniguez v. Arizona*, 939
19  F.2d 727, 735 (9th Cir. 1991). Courts consistently allow creditors to intervene "of
20  right" where a receiver has been appointed and taken control of a debtor's assets.
21  The rationale is that the first creditor's action may effectively foreclose the
22  interests of other creditors. *See Sierra Club v. U.S.*, 995 F.2d 1478, 1486 (9th Cir.
23  1993); *SEC v. Flight Transp. Corp.*, 699 F.2d 943, 947 (8th Cir. 1983); *Mountain*
24  *Top Condominium v. Dave Stabbert Master Builder*, 72 F.3d 361, 366-367 (3rd
25  Cir. 1995).

26          Here, the appointment of a receiver to "oversee and control all financial and
27  business aspects" of MGA, as Mattel proposes, could cripple MGA's business and
28  impair Omni's ability to protect its senior perfected security interest in its

                                          - 8 -

EXHIBIT __18__

PAGE __215__

1  collateral, which includes MGA's inventory and accounts receivable and

2  ultimately in MGA's ability to repay its outstanding secured debt obligation to

3  Omni of in excess of $300 million. The financial and business affairs of MGA are

4  best handled independently by businessmen who understand its products and its

5  industry.[4]

6          4.      The Existing Parties May Not Adequately
7                  Represent Omni's Interest.

8          In order to demonstrate the inadequacy of the existing parties to protect its

9  interest, the applicant's burden is minimal and is satisfied so long as the applicant

10  shows that representation by existing parties *may be* inadequate. *Trbovich v.*

11  *United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). The Ninth Circuit considers

12  three factors in determining the adequacy of representation: "(1) whether the

13  interest of a present party is such that it will undoubtedly make all of a proposed

14  intervenor's arguments; (2) whether the present party is capable and willing to

15  make such arguments; and (3) whether a proposed intervenor would offer any

16  necessary elements to the proceeding that other parties would neglect." *Arakaki*,

17  324 F.3d at 1086 (citing *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775,

18  778 (9th Cir.1986)). "The most important factor in determining the adequacy of

19  representation is how the applicant's interest compares with the interest of existing

20  parties." *Id.*

21

22  [4] Courts are reluctant to appoint receivers to solvent corporations. *See, e.g.*,
23  *DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.*, 187 F. Supp. 910, 925 (S.D.
    Ohio 2001) (declining to appoint receiver despite other facts in favor of doing so
24  where corporation was solvent and productive); *Meyer Jewelry Co. v. Meyer
    Holdings, Inc.*, 906 F. Supp. 428, 434 (E.D. Mich. 1995) ("The deleterious effects
25  of a receivership would result in more harm than good in this case."); *Rumbaugh v.
    Beck*, 491 F. Supp. 511, 521 (E.D. Pa. 1980) (finding that because a corporation
26  was presently operating in a successful manner, appointment of a receiver would
    "be potentially more harmful than if one were not implanted"); *Saluck v. Rosner*,
27  1999 WL 46620, at *2 (E.D. Pa. Jan. 6, 1999) ("the appointment of a receivership
    of a solvent corporation is a drastic remedy.").

28

EXHIBIT *18*

PAGE *216*

1    Here, the interests of the present parties are not such that they will

2    undoubtedly make all of Omni's arguments in opposition to the appointment of a

3    receiver. Obviously Mattel's interests are directly at odds with Omni's interests.

4    Further, although MGA also opposes the appointment of a receiver, there is no

5    reason to believe that it can or will make all of Omni's arguments on its behalf.

6    Omni's primary interest is in MGA's ability to repay its secured debt obligation of

7    in excess $300 million owed to Omni. Moreover, Omni is in the best position to

8    describe the facts and circumstances surrounding its purchase of the Senior Bank

9    Credit Facility from Wachovia.

10   According to Mattel's counsel, it is Mattel's view that MGA as debtor can

11   adequately protect the interests of its largest secured creditor. Mattel's position is

12   nonsensical as the financial interests of a debtor and secured creditor are, on their

13   face, aligned differently. Therefore, the existing parties may not adequately

14   represent Omni's interest regarding the appointment of a receiver and other issues

15   relating to Omni's status as a secured creditor.

16   **B.   In the Alternative, This Court Should Grant Omni**
17   **      Permissive Intervention**

18   Even if Omni were not entitled to intervene as a matter of right, the Court

19   should exercise its discretion and permit its intervention in this matter. Under

20   Federal Rule of Civil Procedure 24(b)(2), permissive intervention should be

21   granted whenever the "applicant's claim . . . and the main action have a question of

22   law or fact in common," and when the intervention would not "unduly delay or

23   prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P.

24   24(b)(2). The existence of a "common question" is liberally construed. *Kootenai*

25   *Tribe v. Veneman*, 313 F.3d 1094, 1108-1109 (9th Cir. 2002). A proposed

26   intervenor under Rule 24(b)(2) "need not demonstrate a 'significantly protectable'

27   interest relating to the property or transaction which is the subject of the action.'"

28   *Defenders of Wildlife*, 2005 WL 3260986, at *2 (citing *Kootenai Tribe of Idaho v.*

- 10 -

EXHIBIT _18_

PAGE _217_

1    *Veneman*, 313 F.3d 1094, 1108-09 (9th Cir. 2002)).  Omni meets each of these

2    requirements.

3        Here, as explained above, there are common questions of law and fact

4    between Omni's claims and the issues raised in Mattel's application to appoint a

5    receiver.  Moreover, Omni's participation will not unduly delay or prejudice the

6    adjudication of the rights of the original parties.  Omni's participation will be

7    limited to challenging Mattel's request to appoint a receiver and protecting its

8    interests as a secured creditor.  The burden is on the parties to plead and prove any

9    alleged prejudice.  *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989).

10

11   **IV.    CONCLUSION**

12       For the foregoing reasons, Omni respectfully requests the Court grant this

13   application and authorize it to intervene for the limited purpose of responding to

14   Mattel's request for the appointment of a receiver for MGA and all other issues

15   related to the proposed receiver or Omni's status as a secured creditor of MGA.

16

17   DATED:  February 3, 2009          Bingham McCutchen LLP

18

19

20                                    By:  _____
                                          Todd E. Gordinier
21                                        Attorneys for Non-party
                                          Omni 808 Investors, LLC
22

23

24

25

26

27

28

- 11 -

A/72829697.5/3009108-0000335082

EXHIBIT _18_

PAGE _218_

# EXHIBIT 19



1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

MATTEL, INC.,                          )
                                       )
                    Plaintiff,         )
                                       )
        vs.                            )    No. CV 04-09049
                                       )
MGA ENTERTAINMENT, INC., ET. AL.,      )
                                       )
                    Defendants.        )    Motions
_____       )
AND CONSOLIDATED ACTIONS,              )
                                       )


REPORTER'S TRANSCRIPT OF PROCEEDINGS

Riverside, California

Wednesday, February 11, 2009

10:03 A.M.

THERESA A. LANZA, RPR, CSR
Federal Official Court Reporter
3470 12th Street, Rm. 134
Riverside, California  92501
951-274-0844
WWW.THERESALANZA.COM

EXHIBIT 19

PAGE 219

2

```
 1   APPEARANCES:

 2   ON BEHALF OF MATTEL, INC.:

 3                        QUINN EMANUEL
                          By:  JOHN QUINN
 4                             DYLAN PROCTOR
                               MICHAEL T. ZELLER
 5                        865 S. FIGUEROA STREET,
                          10TH FLOOR
 6                        LOS ANGELES, California   90017
                          213-624-7707
 7

 8   ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
     (Outgoing)
 9                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          By:  THOMAS J. NOLAN
10                             JASON RUSSELL
                          300 SOUTH GRAND AVENUE
11                        LOS ANGELES, CALIFORNIA   90071-3144
                          213-687-5000
12

13   ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
     (Incoming)
14                        GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
                          By:  JOEL KLEVENS
15                        10250 Constellation Boulevard
                          Los Angeles, California   90067
16                        310-553-3000

17                        MITCHELL, SILBERBERG & KNUPP LLP
                          By:  RUSSELL J. FRACKMAN
18                        11377 West Olympic Boulevard,
                          Los Angeles, California   90064-1683
19                        310-312-2000

20

21   ON BEHALF OF DEFENDANT GUSTAVO MACHADO:

22                        OVERLAND BORENSTEIN SCHEPER & KIM LLP
                          By:  ALEXANDER H. COTE
23                        601 West Fifth Street,
                          12th Floor
24                        Los Angeles, California   90071
                          213-613-4660
25   / / /
```

EXHIBIT _19_

PAGE _220_



3

```
1                    I N D E X  (Continued)

2

3   APPEARANCES (continued):

4

5   On behalf of OMNI 808:

6                    BINGHAM McCUTCHEN LLP
                     BY:  Todd E. Gordinier
7                    600 Anton Boulevard
                     Costa Mesa, CA  92626-1924
8                    714-830-0622

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

:dnesday, February 11, 2009                    Mattel vs. MGA Entertainmer

EXHIBIT ___19

PAGE ___221

4

```
 1                        I N D E X

 2                                              Page

 3     Motions.....................................    4

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Wednesday, February 11, 2009                    Mattel vs. MGA Entertainment

EXHIBIT 19

PAGE 222

70

```
 1   follow the logical reason, their full amount of damages, based
 2   on the instructions that they were provided and the evidence
 3   that they were given, comes out to a consistent verdict.
 4           THE COURT:  I do understand your argument.  Thank
 5   you, Counsel.
 6           MR. ZELLER:  Your Honor --
 7           THE COURT:  No.  I've allowed the moving party to
 8   speak first and last, and let's stick to that.  You have well
 9   briefed these things.
10           I next want to take up Omni 808's ex-parte          01:34
11   application to intervene for limited purposes.
12           Mr. Gordinier.
13           MR. GORDINIER:  Thank you for offering me the
14   opportunity to address the Court.
15           We've set out in our papers, really, what we're     01:34
16   looking for here.  The transaction by which Omni 808 acquired
17   its interest and stepped into the shoes of Wachovia was
18   straightforward and it was at arm's length.  And I, frankly,
19   although naively, believed that if we would get stipulated to
20   be a party to the proceeding going forward, to the extent the 01:35
21   Court --
22           THE COURT:  Where do those funds come from?
23           MR. GORDINIER:  Mr. Kadisha, Your Honor, is a very
24   substantial individual.  Mr. Kadisha, Neil Kadisha, who is the
25   president and CEO of Omni 808, was one of the founders of      01:35
```

Mattel vs. MGA Entertainme:

EXHIBIT _**19**_

PAGE **223**

1    Qualcomm.  With everything that's gone on in the market in the

2    last six or seven months, I don't want to make any

3    representations, but Mr. Kadisha has from time to time appeared

4    on the Forbes 400 list.  I don't know what his net worth is.

5         What happened, Your Honor, is, Wachovia called the           01:35

6    note.  I don't know why.  I've been involved in these cases

7    where everybody feels like the world revolves around what's

8    happening in this courtroom.  As the Court knows, Wachovia had

9    other issues.

10        Wachovia and its syndicate wanted it off its balance          01:35

11   sheet, and MGA needed relief from the immediate need to pay

12   money they did not have.  And my client was approached and put

13   together people and bought the indebtedness and assumed the

14   debt at a discount, at a substantial discount; and he expects

15   to make money.                                                     01:36

16        THE COURT:  You're representing to the Court, though,

17   that this was not MGA's money; that this was -- from wherever

18   it came from, it came from someplace else.

19        MR. GORDINIER:  Your Honor, two things.  I've never

20   met Mr. Larian, and I know less about MGA than almost everybody   01:36

21   else.

22        THE COURT:  I'm not asking about what you know from

23   MGA but of what you know from your client.

24        MR. GORDINIER:  What I know from my client is, he put

25   in many millions of dollars.  He had a couple of investors with   01:36

EXHIBIT *19*

PAGE **224**

72

1    him to put in many millions of dollars.

2           THE COURT:   Those investors and that money did not

3    come from MGA?

4           MR. GORDINIER:   That's the best of my understanding,

5    Your Honor.   That's true.                                    01:36

6           And the best way to resolve that is what the Court

7    has already done.   The Court did exactly the right thing and

8    set up Mr. Durkin, who's very accomplished, to look at MGA's

9    books.   Step number one, he can tell the Court what their

10   balance sheet is, what their income statement is, and also the   01:37

11   sources and uses of cash.

12          And if there are any issues -- and, by the way, I'm

13   happy to talk to Mr. Durkin or have Mr. Durkin talk to my

14   client.   This is not intended to be -- this wasn't a fraudulent

15   transaction, Your Honor.   We negotiated -- we -- I didn't do    01:37

16   it -- Omni 808 negotiated with Davis Polk on behalf of Wachovia

17   and bought at a discount; and Omni 808 expects to and would

18   like to make money on its investment, and will not be able to

19   do so, obviously, if MGA goes out of business.   So our interest

20   here is in protecting Omni 808's investment.   And part of that   01:38

21   is wanting a say in how MGA's business on this receiver issue

22   is dealt with.

23          THE COURT:   The interest to intervene is focused, as

24   you indicate in your papers, on the receivership issue?

25          MR. GORDINIER:   That's correct, Your Honor.   That's   01:38

EXHIBIT  *19*

PAGE  *225*

1    correct.

2         THE COURT:  Very well.

3         Does anyone wish to be heard in opposition to the

4    ex-parte application?

5         MR. ZELLER:  Yes, Your Honor.                    01:38

6         I don't know that we've been -- and maybe the Court

7    heard it differently, but I still do not hear anything that

8    certainly approaches evidence that this was, in fact, an arm's

9    length transaction.

10        THE COURT:  I have a representation from respected   01:38

11   counsel.

12        MR. ZELLER:  Well, he said -- Your Honor, the

13   Court -- all he said was to the best of his knowledge.  He

14   didn't say it didn't come from it.

15        Second, the Court asked MGA; it didn't ask from      01:39

16   Larian, Larian's brother-in-law, his wife -- there are other

17   family members involved in this, and their fingerprints are on

18   this.  So, certainly, I want to be very clear, Your Honor, we

19   have not gone so far as to say, this is a fraud, this is a

20   sham, or so on.  The fact is that there are substantial        01:39

21   questions here as to the bona fides of this transaction and

22   whether or not this has been papered in a way to basically

23   create debt and credit, where, in fact, it would simply be

24   treated by the tax code, by the bankruptcy code, by the courts,

25   for every other purpose, as, in fact, being nothing but a loan,  01:39

:dnesday, February 11, 2009                    Mattel vs. MGA Entertainme *19*

EXHIBIT _____ 19

PAGE 226

1    Because, otherwise, the Court is creating, I mean, truly very,

2    very pragmatic problems.  And that's just even on the

3    settlement front.  There are others I can talk about, in terms

4    of the complication of the proceedings.

5         If we now have yet another party, and particularly    01:44

6    one who we do not really know who it is, floating around in

7    this case, asserting rights -- and whatever it is that Omni 808

8    claims to have, namely this credit interest, can be fully

9    protected by Local Rule 66 procedures.

10        In fact, if that's all they're really trying to do,    01:44

11   to intervene on that basis, that's coextensive with Local Rule

12   66.  So there is nothing to be gained, and huge amounts to be

13   potentially lost, by allowing them in.

14        THE COURT:  Thank you, Counsel.

15        Mr. Gordinier, do you wish to respond?                 01:44

16        MR. GORDINIER:  Yes.  The last point first.

17        The last thing I want to do is sit at a settlement

18   table with these gentlemen, no offense to either of them, who I

19   know well.  We are entitled as a matter of right to intervene,

20   to protect our interests.  These unprovoked and unwarranted    01:44

21   personal attacks are just inappropriate.

22        I said as far as I know because I wasn't involved in

23   the actual funding of the deal.  But it's my understanding that

24   many millions of dollars went to Wachovia, for which Wachovia

25   transferred its interest in the debt.  And that was an arm's   01:45

Wednesday, February 11, 2009                    Mattel vs. MGA Entertainment

EXHIBIT 19

PAGE 227

78

1   length deal, and it was a straightforward negotiation, and

2   Davis Polk represented Wachovia.  There is no reason for the

3   kind of repeated personal --

4           THE COURT:  And who represented --

5           MR. GORDINIER:  My partner in San Francisco, Bingham.    01:45

6           THE COURT:  Bingham.

7           MR. GORDINIER:  It's a fine firm, Your Honor.

8           Bingham represented Omni 808 in this transaction.

9           THE COURT:  Your representation, then, is that based

10  on your information and belief, the proceeds for that were not    01:45

11  proceeds -- I said MGA, but MGA, Isaac Larian, any other MGA

12  entity.

13          MR. GORDINIER:  As far as I know, Your Honor, this

14  was structured by Mr. Kadisha and the monies went to Wachovia.

15          THE COURT:  I know that part.  The question is where    01:46

16  the monies came from.

17          MR. GORDINIER:  I know at least $50 million came from

18  Mr. Kadisha and his immediate -- that's -- it's serious money,

19  Your Honor.  This was an arm's length transaction.

20          The focus of the receiver motion should be, and I    01:46

21  know is, from the Court's perspective, on MGA.  And Mr. Durkin,

22  when he finishes his process, or in the middle of his

23  process -- I'd be happy to talk to him about how this

24  transaction was structured.

25          THE COURT:  Very good.    01:46

EXHIBIT __19__

PAGE __228__

1          MR. GORDINIER:  We are not intending to hold up or

2   obstruct.  We've moved with the drift of this case as it's gone

3   for the ten days I've been involved in it.  We're not going to

4   hold the case up.  But we do believe we're entitled to be heard

5   on the receiver issue.                                          01:47

6          THE COURT:  Very good.

7          We're going to take a very brief five-minute break

8   for the court reporter.  I'll come back and rule on these

9   matters, and then we'll proceed with the hearing.

10         (Whereupon, a brief recess was held.)                    01:47

11         THE COURT:  We're back on the record.

12         Regarding the receivership and everything, there's

13   actually three matters that are related.  First of all, there

14   is the ex-parte application for receivership which was being

15   held in abeyance by the Court; I have the ex-parte application  02:07

16   by Omni 808 for intervention for this limited purpose; and then

17   I have a request for a briefing schedule on the appointment of

18   a receiver.

19         For the record, the Court wishes to disclose that

20   last evening, or yesterday afternoon, the Court held a meeting  02:07

21   with the forensic auditor, Mr. Durkin, and his staff, as well

22   as certain judicial officers of the court and certain other

23   nonjudicial individuals assisting the Court.  All have been

24   expressly ordered not to disclose the contents of the interim

25   report pending further order of this Court, and the Court did   02:08

EXHIBIT **19**

PAGE **229**

105

1  we'll go from there.

2          MR. ZELLER:  Thank you.

3          THE COURT:  Anything further?

4          Thank you.  Good day.

5

6

7

8

9

10                         CERTIFICATE

11

12  I hereby certify that pursuant to section 753, title 28, United
    States Code, the foregoing is a true and correct transcript of
13  the stenographically recorded proceedings held in the above-
    entitled matter and that the transcript page format is in
14  conformance with the regulations of the Judicial Conference of
    the United States.

15

16  _Theresa A. Lanza_                    _2-13-09_
    THERESA A. LANZA, CSR, RPR                Date
17  Federal Official Court Reporter

18

19

20

21

22

23

24

25

EXHIBIT *19*

PAGE *230*

# EXHIBIT 20



1   Bingham McCutchen LLP
    TODD E. GORDINIER (SBN 82200)
2   todd.gordinier@bingham.com
    PETER N. VILLAR (SBN 204038)
3   peter.villar@bingham.com
    CRAIG A. TAGGART (SBN 239168)
4   craig.taggart@bingham.com
    600 Anton Boulevard, 18th Floor
5   Costa Mesa, CA 92626-1924
    Telephone: 714.830.0600
6   Facsimile: 714.830.0700

7
    Attorneys for Non-Parties
8   LEON NEMAN, FRED MASHIAN
    and NEIL KADISHA

9                       UNITED STATES DISTRICT COURT

10                     CENTRAL DISTRICT OF CALIFORNIA

11                            EASTERN DIVISION

12

13   CARTER BRYANT, an individual,          Case No. CV 04-9049 SGL (RNBx)

14          Plaintiff,                       Consolidated with Case No.
                                             CV 04-09059 and Case No. CV 05-2727
15          v.
                                             DISCOVERY MATTER
16   MATTEL, INC., a Delaware                To be heard by Discovery Master
     Corporation,                           Robert C. O'Brien
17
            Defendant.                       NOTICE OF MOTION AND
18                                           MOTION TO QUASH AND/OR FOR
                                             PROTECTIVE ORDER RE
19                                           SUBPOENAS ISSUED BY MATTEL,
                                             INC. TO NON-PARTIES LEON
20                                           NEMAN, FRED MASHIAN AND
                                             NEIL KADISHA; MEMORANDUM
21                                           OF POINTS AND AUTHORITIES IN
                                             SUPPORT
22
                                             [DECLARATION OF PETER N.
23                                           VILLAR FILED CONCURRENTLY]

24                                           Date:       TBD
                                             Time:       TBD
25                                           Place:      Arent Fox LLP
                                                         555 West Fifth Street
26                                                       48th Floor
                                                         Los Angeles, CA 90013
27   AND CONSOLIDATED ACTIONS.

28
     A/72865234.2/3009108-0000337036                    -1-

EXHIBIT 20

PAGE 231

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2      **PLEASE TAKE NOTICE** that Non-parties Leon Neman, Fred Mashian

3  and Neil Kadisha (collectively, "Non-party Deponents") will and hereby do move

4  pursuant to Federal Rules of Civil Procedure 26(c) and 45 for a protective order

5  and/or to quash the deposition subpoenas issued by Mattel, Inc.  The motion will

6  be heard at a date and time to be determined before the Discovery Master, Robert

7  C. O'Brien.

8      The motion is made on the grounds that the deposition subpoenas are

9  objectionable on many grounds and that this Court should quash them and/or issue

10  a protective order under Rules 26(c) and 45 of the Federal Rules of Civil Procedure

11  because, among other things: (1) the subpoenas seek information that is not

12  relevant and beyond the scope of the Discovery Master's Order No. 3 issued on

13  March 10, 2009; (2) the subpoenas are duplicative of discovery already sought by

14  Mattel and abusively drawn for the purpose of annoying, harassing and exerting

15  pressure on the Non-party Deponents; (3) any information purportedly relevant to

16  Phase 2 should be first sought from the parties before burdening non-parties; and

17  (4) Mattel unilaterally set the deposition dates and times without consulting with

18  the Non-party Deponents or their counsel.

19      This motion is based on the Notice of Motion and Motion to Quash and/or

20  for Protective Order, the attached Memorandum of Points and Authorities in

21  support thereof, the supporting Declaration of Peter N. Villar filed herewith, the

22  pleadings and records on file in this action, any matters to which this Court may

23  take judicial notice, and any further evidence and argument as may be presented on

24  this motion.

25

26

27

28

A/72865234.2/3009108-0000337036

-2-

EXHIBIT **20**

PAGE **232**

1    DATED:  March 12, 2009            Bingham McCutchen LLP

2

3                                      By:

4                                          Peter N. Villar
                                           Attorneys for Non-Parties
5                                          LEON NEMAN, FRED MASHIAN
                                           and NEIL KADISHA
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/72865234.2/3009108-0000337036                          -3-

EXHIBIT __20__

PAGE __233__

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ..................................................................................................... 1

II.  STATEMENT OF FACTS ........................................................................................ 4

III. LEGAL ARGUMENT ............................................................................................. 6

    A.   The Court Has The Discretion To Quash The Subpoenas
        And/Or Issue A Protective Order ................................................................... 6

    B.   The Court's March 10, 2009 Order Affirms That Mattel's
        Subpoenas To The Non-party Deponents Should Be Quashed ........... 8

        1.   Mattel's Deposition Subpoenas Are Improper And Seek
            Irrelevant Information ............................................................... 8

        2.   Mattel's Document Requests To Mr. Kadisha Should Be
            Quashed Because It Is Overbroad And Seeks Documents
            Irrelevant To Phase 2 ............................................................. 10

    C.   Mattel's Subpoenas Should Be Quashed Because They Are
        Duplicative, Overbroad And Abusively Drawn ................................... 12

    D.   Mattel's Subpoenas Should Be Quashed Because Mattel Has
        Made No Effort To Obtain The Information From The Parties
        Before Burdening Non-Parties .......................................................... 14

    E.   The Court Should Quash The Subpoenas Because Mattel Failed
        To Meet And Confer Before Scheduling The Depositions ............... 15

IV.  CONCLUSION ..................................................................................................... 16

EXHIBIT **20**

PAGE **234**

1

## TABLE OF AUTHORITIES

2

3                                                                 **Page(s)**

**FEDERAL CASES**

4

5 *Anderson v. Abercrombie & Fitch Stores, Inc.,*
    No. 06cv991-WQH (BLM), 2007 WL 1994059 (S.D. Cal. Jul. 2, 2007)..........14

6

7 *Beinin v. Center for Study of Popular Culture,*
    No. C 06-02298 JW, 2007 WL 1795693 (N.D. Cal. June 20, 2007)..................7

8 *Dart Industries Co., Inc. v. Westwood Chemical Co., Inc.,*
    649 F.2d 646 (9th Cir. 1980) ............................................................................7

9

10 *Exxon Shipping Co. v. U.S. Dept. of Interior, et al.,*
    34 F.3d 774 (9th Cir.1994) ...............................................................................6

11

12 *Fairview Development Corp. v. Aztex Custom Homebuilders, LLC,*
    No. CV-07-0337-PHX-SMM, 2008 WL 2113492 (D. Ariz. May 16,

13     2008) ..................................................................................................................6

14 *Hackmann v. Auto Owners Ins. Co.,*
    No. 2:05-cv-876, 2009 WL 330314 (S.D. Ohio Feb. 6, 2009) ..........................6

15

16 *Jadwin v. County of Kern,*
    No. CV-F-07-026 OWW/TAG, 2008 WL 2916386 (E.D. Cal. Jul. 28,

17     2008) ..................................................................................................................7

18

19 *Koninklike Philips Electronics N.V. v. KXD Technology, Inc.,*
    No. 2:05-cv-1532-RLH-GWF, 2007 WL 3101248 (D. Nev. Oct. 16,

20     2007) ................................................................................................................15

21 *Laxalt v. McClatchy,*
    116 F.R.D. 455 (D. Nev. 1986) ........................................................................7

22

23 *Lizotte v. Praxair, Inc.,*
    No. C07-1868RSL, 2009 WL 159249 (W.D. Wash. Jan. 22, 2009)..................7

24

25 *Mattel, Inc. v. Walking Mountain Productions,*
    353 F.3d 792 (9th Cir. 2003) .................................................................3, 12, 13

26

27 *Moon v. SCP Pool Corp.,*
    232 F.R.D. 633 (C.D. Cal. 2005)....................................................................14

28

EXHIBIT __20__

PAGE __235__

*Ray v. BlueHippo Funding, LLC,*
    No. C-06-1807 JSW (EMC), 2008 WL 3399392 (N.D. Cal. Aug. 11,
    2008) ...................................................................................................... 15

*Seabrook Medical Systems, Inc. v. Baxter Healthcare Corp.,*
    164 F.R.D. 232 (S.D. Ohio 1995)........................................................... 15

*Theofel v. Farey-Jones,*
    341 F.3d 978 (9th Cir. 2003) ..................................................................... 6

*Valvida v. Kmart Corp.,*
    2000 WL 1739215 (D. Virgin Islands 2000) ........................................ 15

**RULES**

Fed. R. Civ. P. 10.......................................................................................... 11

Fed. R. Civ. P. 26............................................................................................ 7

Fed. R. Civ. P. 26(c)(1)................................................................................... 7

Fed. R. Civ. P. 26(c)........................................................................................ 7

Fed. R. Civ. P. 26(c)(1)(A), (B) & (D)........................................................... 7

Fed. R. Civ. P. 30(b)(6) ................................................................................ 13

Fed. R. Civ. P. 45............................................................................................ 7

Fed. R. Civ. P. 45(c)(3)................................................................................... 6

EXHIBIT __20__

PAGE __236__

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

In its latest effort to intimidate and harass non-parties in connection with this litigation, Mattel, Inc. ("Mattel") has issued three more deposition subpoenas to non-parties Leon Neman (principal of Vision Capital, LLC), Fred Mashian (outside attorney for Vision Capital, LLC) and Neil Kadisha (principal of Omninet Capital, LLC and Omni 808 Investors, LLC) (collectively, "Non-party Deponents"). The Discover Master already issued an Order dated March 10, 2009 finding that information relating to Vision Capital, LLC and Omninet Capital, LLC is not relevant to the issues in this case, and that only a limited category of documents relating to Omni 808 Investors, LLC is discoverable. Despite the Court's Order, however, Mattel issued these subpoenas to obtain the very information and documents from the Non-party Deponents that the Discovery Master determined <u>could</u> <u>not</u> <u>be</u> <u>obtained</u> from the non-party Finance Entities and is <u>not</u> <u>relevant</u> to the Phase 2 proceedings between Mattel and MGA Entertainment, Inc. ("MGA"). The time has come for this Court to put an end to Mattel's relentless assault on innocent non-parties.

The Court should quash theses subpoenas and/or issue a protective order prohibiting Mattel from taking the depositions of the Non-party Deponents or from obtaining the 44 categories of documents requested from Mr. Kadisha for the following reasons. <u>First</u>, this Court's March 10, 2009 Order relating to Mattel's document subpoenas directed to Omni 808 Investors, LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively, "Financing Entities") affirmed that the information Mattel is seeking from the Financing Entities, and the individuals related thereto, is irrelevant to the Phase 2 proceedings between Mattel and MGA. The Discovery Master held that "it does not appear that either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have an

A/72865234.2/3009108-0000337036  -1-

EXHIBIT  20

PAGE  237

1    ownership interest in the Financing Entities." (March 10, 2009 Discovery Master

2    Order at 4.)   Furthermore, after rejecting each of Mattel's relevance arguments,

3    the Discovery Master held that "Mattel's Motion to Compel the Financing Entities

4    to produce documents responsive to the Subpoenas is **DENIED** with respect to

5    OmniNet Capital, LLC and Vision Capital, LLC." (March 10, 2009 Discovery

6    Master Order at 28.)  The Court specifically noted that "neither entity is alleged by

7    Mattel to be a creditor of MGA Entertainment, Inc." (March 10, 2009 Discovery

8    Master Order at 19 n. 17.)  The Court also denied Mattel's motion to compel all

9    but a narrow subset of the documents sought from Omni 808.  The only documents

10   that the Court ordered to be disclosed are "documents relating to (1) the existence

11   of any debt owed by MGA Entertainment, Inc. to Omni 808 Investors, LLC,

12   including any debt purchased from Wachovia Bank, and (2) any communications

13   between Omni 808 Investors, LLC and the MGA parties regarding any such

14   indebtedness." (March 10, 2009 Discovery Master Order at 29.)

15          In light of the Court's March 10, 2009 Order, the deposition subpoenas are

16   improper and should be quashed.  Mr. Neman is a principal of Vision Capital.

17   Thus, because this Court determined that the subpoena to Vision Capital is

18   improper, there is no reason to depose Mr. Neman.  Further, Mr. Mashian is a

19   business attorney that has provided legal services on occasion for Vision Capital,

20   LLC.  Thus, there are no grounds to depose Mr. Mashian.

21          There is also no basis on which to depose or obtain documents from Mr.

22   Kadisha, a principal of Omninet Capital and Omni 808.  The Discovery Master

23   already found that information relating to Omninet Capital is not relevant to this

24   action, and found that information relating to Omni 808 is not relevant except for a

25   narrow subset of documents relating to "MGA's net worth." Because all

26   potentially relevant information will be produced by Omni 808 pursuant to the

27   Discovery Master's March 10 Order, there is no basis or need to depose Mr.

28   Kadisha.  Moreover, each of the 44 broad categories of documents requested by

A/72865234.2/3009108-0000337036                    -2-

EXHIBIT __20__

PAGE __238__

1   Mattel from Mr. Kadisha is either irrelevant or duplicative in light of the Court's
2   March 10 Order.
3       Second, Mattel's subpoenas are abusively drawn for the purpose of
4   annoying, harassing and exerting pressure on the Non-party Deponents. As this
5   Court is aware, these abusive litigation tactics are not new to either Mattel or its
6   counsel at Quinn Emanuel. Indeed, the leading Ninth Circuit Court of Appeals
7   opinion concerning abusive non-party discovery involves subpoenas served by
8   Mattel and Quinn Emanuel under similar (though less egregious) circumstances.
9   In that case, *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir.
10  2003), the Court found that Mattel served the subpoenas to "exert pressure" on
11  non-party witnesses and that "a pattern is clear in this case that [Mattel's counsel]
12  files these oppressive subpoena requests … for the purpose of annoying and
13  harassment and not really for the purpose of getting information." *Id.* at 814. The
14  Court quashed the subpoenas and sanctioned Mattel for abuse of the discovery
15  process. *Id.* The Court should do the same here.
16      Third, although it is now clear that the deposition subpoenas are improper
17  given this Court's March 10, 2009 Order, even if this Court were to determine that
18  any of the Non-party Deponents potentially have relevant information, the Court
19  should forbid the depositions from going forward until Mattel has exhausted its
20  ability to obtain the information from actual parties to the litigation. There is
21  ample authority for the proposition that parties are required to seek information
22  from actual parties to a case before burdening non-parties.
23      Fourth, the Court should quash the subpoenas because Mattel unilaterally
24  noticed the depositions without extending the most basic professional courtesy of
25  contacting counsel for MGA or the Non-party Deponents before scheduling the
26  depositions and refused to even respond to MGA's and the Non-party Deponents'
27  written requests to withdraw or reschedule the depositions. Furthermore, some of
28  the depositions conflict with hearings that are scheduled before this Court.

A/72865234.2/3009108-0000337036                    -3-

EXHIBIT __20__

PAGE __239__

1    Mattel's failure to extend this basic professional courtesy and respond to the Non-
2    party Deponents' written requests is an independent basis to quash the subpoenas.
3         Accordingly, the Non-party Deponents respectfully request that the Court
4    quash the subpoenas and/or issue a protective order forbidding the depositions
5    from going forward.
6
7    **II.    STATEMENT OF FACTS**
8         On February 25 and 26, 2009, Mattel issued three deposition subpoenas on
9    non-parties Leon Neman, Fred Mashian and Neil Kadisha ("Non-party
10   Deponents"). (Exs. A, B, C to Villar Decl.)  The subpoena directed to Mr. Kadisha
11   also requests 44 broad categories of documents, which seek virtually the exact
12   same information and documents contained in the subpoenas to the non-party
13   Finance Entities that the Discovery Master found to be irrelevant pursuant to the
14   March 10, 2009 Order.
15        On March 4, 2009, the Court held a hearing on Mattel's Motion to Compel
16   the Production of Documents Responsive to Third-Party Subpoenas.  The Court
17   informed the parties it would issue an order on the motions the following week.
18   The Court has also scheduled a hearing on Non-Party Bingham McCutchen LLP's
19   Motion to Quash Mattel's Subpoena to Bingham McCutchen LLP for April 14,
20   2009.
21        On or about March 6, 2009, following Mattel's notice of the depositions,
22   Amman A. Khan, attorney for MGA Entertainment, Inc., wrote a letter Jon Corey,
23   attorney for Mattel. (Ex. D to Villar Decl.)  Mr. Khan informed Mr. Corey that
24   none of the dates were cleared by MGA before scheduling the depositions. (*Id.*)
25   Further, Mr. Khan also informed Mr. Corey that some of non-party witness
26   depositions conflict with hearings that are set before this Court. (*Id.*)
27        Shortly thereafter, on March 6, 2009, Peter Villar, attorney for the Non-party
28   Deponents, sent a letter to Mr. Corey. (Ex. E to Villar Decl.)  Mr. Villar told Mr.

A/72865234.2/3009108-0000337036                    -4-

EXHIBIT _20_

PAGE _240_

1   Corey that Mattel did not have the courtesy to clear any of the deposition dates

2   with Bingham or the Non-party Deponents either. (*Id.*) Mr. Villar also explained

3   that the deposition subpoenas are just as improper as the document subpoenas that

4   Mattel issued to other Non-party Finance Entities. (*Id.*) Mr. Villar requested that

5   the depositions be taken off-calendar because, at a minimum, they were premature

6   given the fact that the Court's rulings on the pending discovery motions would

7   necessarily impact the propriety, timing and scope of any third-party discovery.

8   (*Id.*) Mr. Villar also informed Mr. Corey that if Mattel does not take the

9   depositions off-calendar, the Non-party Deponents would have no choice but to

10   notify the Discovery Master so as to preserve their rights. (*Id.*) Mattel never

11   responded to either Mr. Khan's or Mr. Villar's letter. (Villar Decl., ¶ 7.)

12        On March 10, 2009, the Court issued its Order No. 3, Regarding: (1) Motion

13   of MGA Entertainment, Inc., Isaac Larian and MGA Entertainment (HK) Limited

14   to Quash Non-party Subpoenas; and (2) Motion of Mattel, Inc. to Compel

15   Production of Documents Responsive to the Same Non-party Subpoenas. Among

16   other things, the Court's Order specifically addressed Mattel's Motion to Compel

17   in relation to the subpoenas directed to Omni 808 Investors, LLC, Omninet

18   Capital, LLC and Vision Capital, LLC (collectively, "Financing Entities").

19        The Court held that "Mattel's Motion to Compel the Financing Entities to

20   produce documents responsive to the Subpoenas is **DENIED** with respect to

21   OmniNet Capital, LLC and Vision Capital, LLC." (March 10, 2009 Discovery

22   Master Order at 28.) The Court specifically noted that "neither entity is alleged by

23   Mattel to be a creditor of MGA Entertainment, Inc." (March 10, 2009 Discovery

24   Master Order at 19 n. 17.) Further, the Court also denied Mattel's Motion to

25   Compel for all but a narrow subset of the documents sought from Omni 808. The

26   Court held that a very limited number of documents are relevant to "MGA's Net

27   Worth." (March 10, 2009 Discovery Master Order at 19, 20.) Specifically, the

28   Court ordered only the production of "documents relating to (1) the existence of

A/72865234.2/3009108-0000037036

-5-

EXHIBIT 20

PAGE 241

1    any debt owed by MGA Entertainment, Inc. to Omni 808 Investors, LLC,

2    including any debt purchased from Wachovia Bank, and (2) any communications

3    between Omni 808 Investors, LLC and the MGA parties regarding any such

4    indebtedness." (March 10, 2009 Discovery Master Order at 29.)  The Court

5    "denied" all other documents sought from Mattel's subpoenas to the Non-party

6    Finance Entities.  (*Id.*)

7           Despite the Court's March 10, 2009 Order, Mattel has not agreed to

8    withdraw its subpoenas to the Non-party Deponents.  Thus, the Non-party

9    Deponents had no alternative but to move to quash the subpoenas and for a

10   protective order.

11

12   **III.   LEGAL ARGUMENT**

13          **A.     The Court Has The Discretion To Quash The Subpoenas**

14                 **And/Or Issue A Protective Order**

15          "The subpoena power is a substantial delegation of authority to private

16   parties, and those who invoke it have a grave responsibility to ensure it is not

17   abused." *Theofel v. Farey-Jones*, 341 F.3d 978, 984 (9th Cir. 2003).  Rule 45(c),

18   which sets forth the procedures for quashing abusive subpoenas, "is intended to

19   protect nonparties to litigation from, in effect, suffering inconvenience or expense

20   from having to participate in someone else's quarrel." *Hackmann v. Auto Owners*

21   *Ins. Co.*, No. 2:05-cv-876, 2009 WL 330314, at *1 (S.D. Ohio Feb. 6, 2009); *see*

22   *also Fairview Development Corp. v. Aztex Custom Homebuilders, LLC*, No. CV-

23   07-0337-PHX-SMM, 2008 WL 2113492, at *1 (D. Ariz. May 16, 2008) ("'A court

24   ***must*** quash or modify a subpoena that subjects a person to undue burden' . . . [and]

25   ***must*** quash a subpoena that 'requires disclosure of privileged or other protected

26   matter, if no exception or waiver applies.'") (emphasis added); *Exxon Shipping Co.*

27   *v. U.S. Dept. of Interior, et al.*, 34 F.3d 774, 779 (9th Cir.1994) ("Rule 26(c) and

28   Rule 45(c)(3) give ample discretion to district courts to quash or modify subpoenas

LA72865234.2/3009108-0000337036                     -6-

EXHIBIT __20__

PAGE __242__

1    causing 'undue burden.'").

2     Furthermore, under Federal Rule of Civil Procedure 26(c), "[t]he Court has

3    discretion to issue a protective order forbidding or limiting discovery." *Lizotte v.*

4    *Praxair, Inc.*, No. C07-1868RSL, 2009 WL 159249, at \*1 (W.D. Wash. Jan. 22,

5    2009) (citing Fed. R. Civ. P. 26(c)(1)). Rule 26(c) of the Federal Rules of Civil

6    Procedure provides, in pertinent part, that "[t]he court may, for good cause, issue

7    an order to protect a party or person from annoyance, embarrassment, oppression,

8    or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). The Court's order may

9    include: (1) "forbidding the disclosure or discovery;" (2) "specifying terms,

10   including time and place, for the disclosure or discovery;" and (3) "forbidding

11   inquiry into certain matters, or limiting the scope of disclosure or discovery to

12   certain matters." Fed. R. Civ. P. 26(c)(1)(A), (B) & (D).

13    It is also well-recognized in the Ninth Circuit that the protections afforded

14   under the Federal Rules of Civil Procedure are heightened where a non-party is

15   moving to quash and/or for a protective order. *See, e.g., Dart Industries Co., Inc.*

16   *v. Westwood Chemical Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While

17   discovery is a valuable right and should not be unnecessarily restricted, the

18   'necessary' restriction may be broader when a nonparty is the target of discovery")

19   (citation omitted); *see also Laxalt v. McClatchy*, 116 F.R.D. 455, 457 (D. Nev.

20   1986) (it is "well established that nonparties to litigation enjoy greater protection

21   from discovery than normal parties"); *Jadwin v. County of Kern*, No. CV-F-07-026

22   OWW/TAG, 2008 WL 2916386, at \*2 (E.D. Cal. Jul. 28, 2008) ("Discovery

23   restrictions may be even broader where the target is a non-party."); *Beinin v.*

24   *Center for Study of Popular Culture*, No. C 06-02298 JW, 2007 WL 1795693, at

25   \*6 (N.D. Cal. June 20, 2007) ("necessary restrictions must be imposed on non-

26   party discovery to protect third parties from harassment, inconvenience, or

27   disclosure of confidential documents") (citation omitted). Indeed, this Court has

28   specifically noted "[c]ourts applying Rules 26 and 45 have interpreted these rules

A/72865234.2/3009108-0000337036   -7-

EXHIBIT 20

PAGE 243

1   to afford non-parties special heightened protection against burdensome discovery."

2   (March 10, 2009 Discovery Master Order at 14.)

3        As set forth below the Court should quash the subpoenas and/or issue

4   protective order because, among other things: (1) the subpoenas seek information

5   that is not relevant and beyond the scope of the Discovery Master's Order No. 3

6   issued on March 10, 2009; (2) the subpoenas are duplicative of discovery already

7   sought by Mattel and abusively drawn for the purpose of annoying, harassing and

8   exerting pressure on the Non-party Deponents; (3) any information purportedly

9   relevant to Phase 2 should be first sought from the parties before burdening non-

10  parties; and (4) Mattel unilaterally set the deposition dates and times without

11  consulting with the Non-party Deponents or their counsel.

12     B.   **The Court's March 10, 2009 Order Affirms That Mattel's**

13          **Subpoenas To The Non-party Deponents Should Be**

14          **Quashed**

15          1.   **Mattel's Deposition Subpoenas Are Improper**

16               **And Seek Irrelevant Information**

17        The Court's March 10, 2009 Order affirmed the Financing Entities'

18  contentions that Mattel's abusively drawn subpoenas are improper, harassing and

19  seek information that is wholly irrelevant to the Phase 2 proceedings between

20  Mattel and MGA. Despite the fact that Mattel's subpoenas to the Non-party

21  Deponents seeks the exact same information that this Court deemed to be

22  irrelevant, Mattel refuses to withdraw its subpoenas. Thus, the Court should quash

23  the deposition subpoenas.

24        In its March 10, 2009 Order, the Court affirmed that the information Mattel

25  is seeking from the Financing Entities, and the individuals related thereto, is

26  irrelevant to the Phase 2 proceedings between Mattel and MGA. This Court

27  specifically rejected each and every argument that Mattel presented in support of

28  the purported relevance of the documents sought from Omninet Capital, LLC and

EXHIBIT __20__

PAGE __244__

1    Vision Capital, LLC.  Among other things, the Court specifically noted that

2    "neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc."

3    (March 10, 2009 Discovery Master Order at 28.)  Thus, the Court unequivocally

4    held that "Mattel's Motion to Compel the Financing Entities to produce documents

5    responsive to the Subpoenas is **DENIED** with respect to OmniNet Capital, LLC

6    and Vision Capital, LLC."  (March 10, 2009 Discovery Master Order at 29.)

7         The Court also denied Mattel's Motion to Compel all but a very limited

8    subset of the documents sought from Omni 808.  All of Mattel's relevance

9    arguments relating to Omni 808 were also rejected, except a very narrow category

10   of documents relating to "MGA's networth." (March 10, 2009 Discovery Master

11   Order at 19.)  Specifically, the only documents that this Court deemed to be

12   relevant at all are "documents relating to (1) the existence of any debt owed by

13   MGA Entertainment, Inc. to Omni 808 Investors, LLC, including any debt

14   purchased from Wachovia Bank, and (2) any communications between Omni 808

15   Investors, LLC and the MGA parties regarding any such indebtedness." (March

16   10, 2009 Discovery Master Order at 29.)

17        This Court's March 10, 2009 Order affirms that Mattel's deposition

18   subpoenas to the Non-party Deponents are improper and should be quashed.  The

19   Court has made it abundantly clear that all of the information Mattel is seeking,

20   other than a very limited portion of documents sought from Omni 808 relating to

21   MGA's networth, is not relevant to the Phase 2 proceedings.  The information

22   sought from Mattel's document subpoenas to the Financing Entities is inextricably

23   intertwined with the information Mattel is seeking to obtain from the Non-party

24   Deponents.

25        Given the Court's order, there is no reason that Mattel should be permitted

26   to harass the Non-party Deponents through a series of depositions.  Mr. Neman is a

27   principal of Vision Capital.  Significantly, this Court denied Mattel's Motion to

28   Compel against Vision Capital in its entirety because, among other reasons, the

A/72865234.2/3009108-0000337036                    -9-

EXHIBIT _20_

PAGE _245_

1   information sought is not relevant to the Phase 2 proceedings.  Thus, the deposition

2   of Mr. Neman, seeking the exact same information Mattel was seeking in its

3   subpoena to Vision Capital, is improper and should be quashed.

4   　　　Similarly, Mr. Mashian is an outside business attorney that has on occasion

5   provided legal services for Vision Capital.  Thus, there are no grounds to depose

6   Mr. Mashian, and the deposition subpoena directed to him must be quashed.

7   　　　There are also no grounds to depose Mr. Kadisha, a principal of Omninet

8   Capital and Omni 808.  Although this Court deemed a very limited amount of

9   Omni 808 documents relevant to "MGA's net worth," that does not justify

10   harassing Mr. Kadisha with a deposition subpoena.  It is clear that the "existence of

11   any debt" and the relevant "communications between Omni 808 Investors, LLC

12   and MGA parties regarding such indebtedness" will be contained within the

13   documents that Omni 808 will be producing pursuant to this Court's March 10,

14   2009 Order.  There is simply no need to depose Mr. Kadisha given that the

15   information sought will be contained within the documents.  At a minimum, the

16   Court should quash the subpoena to Mr. Kadisha and require Mattel to demonstrate

17   to this Court, after reviewing the documents, what additional information it needs

18   before subjecting Mr. Kadisha to a deposition.

19   　　　Accordingly, the Non-party Deponents respectfully request that the Court

20   quash the deposition subpoenas in their entirety.

21   　　　　　**2.**　**Mattel's Document Requests To Mr. Kadisha**

22   　　　　　　　**Should Be Quashed Because It Is Overbroad**

23   　　　　　　　**And Seeks Documents Irrelevant To Phase 2**

24   　　　In addition to the testimony sought from the Non-party Deponents, Mattel's

25   subpoena to Mr. Kadisha also requests that he produce documents in response to

26   44 overbroad, duplicative and irrelevant document requests.  The documents

27   sought are the exact same documents that Mattel sought from the Financing

28   Entities and which this Court concluded were not relevant to the Phase 2

A/72865234.2/3009108-0000337036　　　　　　-10-

EXHIBIT __20__

PAGE __246__

1   proceedings. Thus, this Court should quash the document subpoena to Mr.

2   Kadisha in its entirety.

3        In the Court's March 10, 2009 Order, it determined, among other things, that

4   Mattel's subpoenas to Vision Capital, LLC and OmniNet Capital, LLC were

5   overbroad and sought information irrelevant to the Phase 2 proceedings between

6   Mattel and MGA. The Court denied Mattel's motions to compel in response to

7   these subpoenas in their entirety. Furthermore, the Court determined that virtually

8   all of the documents sought from Omni 808 were also irrelevant and denied

9   Mattel's motion to compel to all but a limited portion of the documents relating to

10  "the existence of any debt owed by MGA Entertainment, Inc. to Omni 808

11  Investors" and "communications between Omni 808 Investors, LLC and the MGA

12  parties regarding any such indebtedness." (March 10, 2009 Discovery Master

13  Order at 29.)

14       In its 44 requests to Mr. Kadisha, Mattel seeks the exact same documents

15  that it sought from the Financing Entities and that the Court concluded were

16  irrelevant to the Phase 2 proceedings. (*See* Ex. A to Villar Decl.) As outlined in

17  Mr. Kadisha's objections, the Financing Entities' oppositions to Mattel's motions

18  to compel and the Court's March 10, 2009 Order, Mattel's document requests seek

19  irrelevant information and are grossly overbroad.[1] (*See* Ex. F to Villar Decl.)

20  Since the Court determined that the Financing Entities were not required to

21  produce the documents that Mattel is seeking from Mr. Kadisha, there is no basis

22  to require the individuals related to the entities to produce them. Furthermore,

23  based on the Court's March 10, 2009 Order, the only documents that could

24  plausibly be relevant to Phase 2 are documents evidencing "the existence of any

25

26  _____

    [1] Pursuant to Rule 10 of the Federal Rule of Civil Procedure, Mr. Kadisha adopts
27  by reference the arguments set forth in the Financing Entities' oppositions to
    Mattel's motions to compel.
28

EXHIBIT _20_

PAGE _247_

1    debt" and "communications between Omni 808 Investors, LLC and the MGA

2    parties regarding any such indebtedness." (March 10, 2009 Discovery Master

3    Order at 29.)  However, these documents are being produced by Omni 808, and

4    therefore the requests to Mr. Kadisha are duplicative.  Thus, to the extent Mr.

5    Kadisha even has relevant documents in his possession, custody or control, there is

6    no basis to require him to produce these exact same documents.  Accordingly, the

7    Court should quash the document subpoena to Mr. Kadisha.

8        **C.**    **Mattel's Subpoenas Should Be Quashed Because They Are**

9                **Duplicative, Overbroad And Abusively Drawn**

10        Independent of the fact that Mattel's subpoenas seek information that is

11    wholly irrelevant to the Phase 2 proceedings, the Court should quash Mattel's

12    subpoenas because they are duplicative of discovery already sought by Mattel and

13    abusively drawn for the purpose of annoying, harassing and exerting pressure on

14    the Non-party Deponents.

15        In *Mattel, Inc. v. Walking Mountain Productions*, Mattel and its counsel

16    Quinn Emanuel issued a subpoena to one of the defendant's expert's employers in

17    a purported attempt to obtain information to impeach the expert's testimony. *Id.* at

18    813.  Judge Ronald Lew of the Central District of California found that Mattel's

19    subpoenas were "way too broad for the explanation given by [Mattel's counsel],"

20    "abusively drawn," and that "no attempt had been made to try to tailor the

21    information request to the immediate needs of the case." *Id.* at 813.  The Court

22    found that Mattel served the subpoenas to "exert pressure" on non-party witnesses

23    and that "a pattern is clear in this case that [Mattel's counsel] files these oppressive

24    subpoena requests … for the purpose of annoying and harassment and not really

25    for the purpose of getting information." *Id.* at 814.  The Court quashed the

26    subpoenas and sanctioned Mattel for abuse of the discovery process. *Id.*  The

27    Ninth Circuit affirmed the district court's order quashing the subpoena and issuing

28    sanctions against Mattel. *Id.*

A/72865234.2/3009108-0000337036

-12-

EXHIBIT __20__

PAGE __248__

1          In affirming the district court's order quashing the subpoena, the Ninth

2    Circuit Court of Appeals made several findings that are instructive on the issues

3    presented in this motion.  First, the court noted that "Mattel had served a virtually

4    identical Rule 30(b)(6) subpoena and document demand" on other nonparties,

5    which led such parties to withdraw as percipient witnesses.  Similarly, the

6    deposition subpoenas to the Non-party Deponents and the document subpoena on

7    Mr. Kadisha seek the exact same information sought in the subpoenas that Mattel

8    has directed to the Financing Entities and other non-parties, including, without

9    limitation, those served upon Omni 808 Investors, LLC, Vision Capital, LLC,

10   Omninet Capital, LLC, Lexington Financial, LLC, and Bingham McCutchen LLP.

11   As the Ninth Circuit Court of Appeals noted, the pattern and practice of serving

12   identically overly broad and abusive subpoenas supports the notion that the

13   subpoenas were served for an improper purpose.  *Id.* at 813-14.

14          Further, the court noted that the overbreadth of the subpoena and the tenuous

15   relationship that the subpoenaed parties had to the litigation demonstrated that the

16   subpoenas were "'served for the purpose of annoying and harassment and not

17   really for the purpose of getting information.'"  *Id.* at 814.  This is the exact same

18   tactic that Mattel and its attorneys are using in this litigation.  The Discovery

19   Master's March 10, 2009 Order affirmed that the information sought from the

20   Financing Entities is not relevant to the Phase 2 proceedings.  Furthermore, Mattel

21   has served virtually the exact same subpoena, seeking the same information, to a

22   plethora of non-parties.  Thus, similar to its tactics in *Mattel, Inc. v. Walking*

23   *Mountain Productions*, the only conclusion that can possibly be drawn from

24   Mattel's subpoenas to the Non-party Deponents is that they were issued in order to

25   annoy, burden and harass.

26          Therefore, because Mattel's subpoenas to the Non-party Deponents are

27   duplicative, overbroad, harassing and abusively drawn, the Court should quash

28   them in their entirety.

A/72865234.2/3009108-0000337036

-13-

EXHIBIT  20

PAGE  249

**D.**   **Mattel's Subpoenas Should Be Quashed Because Mattel Has Made No Effort To Obtain The Information From The Parties Before Burdening Non-Parties**

This Court has already determined that virtually all of the information Mattel is seeking is irrelevant to the Phase 2 proceedings. Nonetheless, if this Court somehow determines that the Non-party Deponents may have information that is relevant to the Phase 2 proceedings, the Court should issue a protective order forbidding the Non-party Deponents' depositions until Mattel has exhausted its ability to obtain the information sought from actual parties to the litigation. Mattel's attempt to burden non-parties with the expense of responding to discovery that may be obtained from parties to the litigation is wholly improper.

There is ample authority in the Ninth Circuit for the proposition that a party is required to seek information from parties before burdening non-parties. *See, e.g., Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) (quashing non-party subpoena when the "requests all pertain to defendant, who is a party, and, thus, plaintiffs can more easily and inexpensively obtain the documents from defendant, rather than from nonparty"); *Dibel v. Jenny Craig, Inc.*, Civil No. 06cv2533 BEN(AJB), 2007 WL 2220987, at *2 (S.D. Cal. Aug. 1, 2007) (granting motion to quash third party subpoena because request for documents "duplicative and overly burdensome" when the requested documents were available from defendants); *Anderson v. Abercrombie & Fitch Stores, Inc.*, No. 06cv991-WQH (BLM), 2007 WL 1994059, at *1 (S.D. Cal. Jul. 2, 2007) ("District courts also have broad discretion to limit discovery. For example, a court may limit the scope of any discovery method if it determines that the discovery sought is 'unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.') (citing Fed. R. Civ. P. 26(b)(2)(C)).

Mattel is purportedly seeking information relating to Omni 808's acquisition

EXHIBIT _20_

PAGE _250_

1    of debt in MGA.  However, Mattel has not exhausted its ability to obtain this

2    information from MGA or other parties to the litigation.  Rather, Mattel's pattern

3    and practice has been to send subpoenas seeking the exact same information to as

4    many non-party entities as possible.  Mattel's duplicative discovery is improper,

5    especially considering that Mattel can seek this information from actual parties to

6    this litigation.  Thus, at a minimum, the Court should require Mattel to seek the

7    information from MGA or other parties to this action before burdening non-parties.

8    **E.**      **The Court Should Quash The Subpoenas Because Mattel**

9               **Failed To Meet And Confer Before Scheduling The**

10              **Depositions**

11           Aside from the fact that the deposition subpoenas are abusively drawn and

12   seek information that is irrelevant to the Phase 2 proceedings, the deposition

13   subpoenas should be quashed and/or a protective order should be issued because

14   Mattel failed to meet and confer with counsel and the Non-Party Deponents before

15   scheduling the deposition dates.

16           "The failure to meet and confer in scheduling a deposition . . . is a factor in

17   deciding whether a protective order should be granted."  *Koninklike Philips*

18   *Electronics N.V. v. KXD Technology, Inc.*, No. 2:05-cv-1532-RLH-GWF, 2007

19   WL 3101248, at *17 (D. Nev. Oct. 16, 2007); *Ray v. BlueHippo Funding, LLC*,

20   No. C-06-1807 JSW (EMC), 2008 WL 3399392, at *2-3 (N.D. Cal. Aug. 11, 2008)

21   (granting protective order preventing the deposition from taking place on the

22   scheduled date where the defendants' counsel was unavailable on the noticed

23   dates); *Seabrook Medical Systems, Inc. v. Baxter Healthcare Corp.*, 164 F.R.D.

24   232, 233 (S.D. Ohio 1995) (issuing protective order staying deposition of third

25   party when parties failed to "discuss and agree to a deposition date before the

26   issuance of the subpoena, not after"); *Valvida v. Kmart Corp.*, 2000 WL 1739215,

27   at *2 (D. Virgin Islands 2000) (ordering parties to confer and agree on dates for

28   depositions of witnesses).

A/72865234.2/3009108-0000337036

-15-

EXHIBIT __20__

PAGE __251__

1   Here, Mattel made no effort to meet and confer before scheduling the

2   depositions to determine the availability of counsel and the Non-Party Deponents.

3   On March 6, 2009, attorneys for MGA wrote a letter to Mattel informing them that

4   none of the deposition dates were cleared with them and, in fact, some of them

5   conflicted with hearings scheduled before this Court. (Ex. ___ to Villar Decl.)

6   Similarly, counsel for the Non-party Deponents also sent a letter to Mattel's

7   attorney informing them that the depositions were premature, improper and that

8   none of the dates were cleared with the non-parties or their counsel. (Ex. E to

9   Villar Decl.)  Furthermore, even after the Court issued its March 10, 2009 ruling,

10   which essentially holds that the information Mattel is seeking is irrelevant to Phase

11   2, Mattel refused to withdraw its subpoenas or respond to either MGA's or the

12   Non-party Deponents' correspondence.  Given that the discovery cut-off date is

13   nine months away, there is no reason that Mattel could not have conferred with all

14   parties and counsel before noticing the depositions.

15   Because Mattel failed to meet and confer with the Non-party Deponents or

16   MGA regarding their availability for these depositions, the Non-party Deponents

17   respectfully request that the Court quash the subpoenas and/or issue a protective

18   forbidding the depositions from going forward.

19

20   **IV.   CONCLUSION**

21   For the forgoing reasons, the Non-party Deponents respectfully request that

22   the Court issue a protective order and/or quash the subpoeans in their entirety.

23

24

25

26

27

28

A/72865234.2/3009108-0000337036                                -16-

EXHIBIT **20**

PAGE **252**

1    DATED: March 12, 2009                    Bingham McCutchen LLP

2

3                                             By: _____

4                                                 Peter N. Villar
                                                  Attorneys for Non-parties
5                                                 LEON NEMAN, FRED MASHIAN
                                                  and NEIL KADISHA

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/72865234.2/3009108-0000337036                          -17-

EXHIBIT _20_

PAGE _253_

# EXHIBIT 21



CONFORMED COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5  (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

12  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

13            Plaintiff,                 Consolidated with
                                         Case No. CV 04-09059
14       vs.                             Case No. CV 05-02727

15  MATTEL, INC., a Delaware             DECLARATION OF CYRUS S. NAIM
    corporation,                         IN SUPPORT OF MATTEL, INC.'S *EX
16                                       PARTE* APPLICATION FOR
            Defendant.                   APPOINTMENT OF A RECEIVER
17                                       FOR MGA OR FOR ALTERNATIVE
                                         RELIEF
18  AND CONSOLIDATED ACTIONS

19
                                         Hearing Date:   January 5, 2009
20                                       Time:           10:00 a.m.
                                         Place:          Courtroom 1
21
                                         **Phase 1C**
22

23

24

25

26

27                                                      EXHIBIT _21_

28                                                      PAGE _254_

07209/2747856.1

NAIM DEC ISO EX PARTE APPLICATION FOR RECEIVER

1          I, Cyrus S. Naim, declare as follows:

2          1.    I am a member of the bar of the State of California and an

3  associate with Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for

4  plaintiff and counter-defendant, Mattel, Inc. ("Mattel").  I make this declaration of

5  personal, firsthand knowledge and, if called and sworn as a witness, I could and

6  would testify competently thereto.

7          2.    A review of the spreadsheet attached as Exhibit A to the

8  Declaration of John Woolard in Support of the MGA Parties' Opposition to Mattel's

9  Ex Parte Application for Receiver, dated December 29, 2008, shows that the

10  wholesale value of the products sold to IGWT (obtained by multiplying the column

11  labeled FOBHK by Net Avail TOTAL Units) was $37,313,359.23.  The retail value

12  of the products sold to IGWT (obtained by multiplying the column labeled MSRP

13  by Net Avail TOTAL Units) was $65,007,816.54.  Mr. Larian's total discount on the

14  items purchased (obtained by dividing the purchase price, $5,309,016.27, by the

15  wholesale price, $37,313,359.23) was approximately 81.7%.

16          3.    I conducted a search of the documents produced in this action by

17  MGA Entertainment, Inc.  I was unable to locate W-2 forms produced by MGA for

18  any year after 2006.

19          4.    Attached as Exhibit 1 is a true and correct copy of excerpts of a

20  document produced by MGA in this action at Bates range MGA 3896751–MGA

21  3896966.

22

23          I declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.

24          Executed this 2nd day of January, 2009, at Los Angeles, California.

25

26

27                    Cyrus S. Naim

28                                  EXHIBIT __21__

07209/2747856.1                                      PAGE __255__

NAIM DEC ISO EX PARTE APPLICATION FOR RECEIVER

# EXHIBIT 22

6191

<pre>
 1                  UNITED STATES DISTRICT COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3                        EASTERN DIVISION

 4                          - - -

 5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

 6                          - - -

 7   MATTEL, INC.,                      )
                                        )
 8                  PLAINTIFF,          )
                                        )
 9        VS.                           )  NO. CV 04-09049
                                        )
10   MGA ENTERTAINMENT, INC., ET. AL.,  )
                                        )
11                  DEFENDANTS.         )  TRIAL DAY 31
                                        )  MORNING SESSION
12   AND CONSOLIDATED ACTIONS,          )  PAGES 6191-6350
                                        )
13

14

15        REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16                   RIVERSIDE, CALIFORNIA

17               THURSDAY, AUGUST 7, 2008

18                     8:13 A.M.

19

20

21

22

23             THERESA A. LANZA, RPR, CSR
             FEDERAL OFFICIAL COURT REPORTER
24              3470 12TH STREET, RM. 134
              RIVERSIDE, CALIFORNIA  92501
25                  951-274-0844
                WWW.THERESALANZA.COM
</pre>

CERTIFIED COPY

EXHIBIT 22
PAGE 256

6192



```
 1    APPEARANCES:

 2
      ON BEHALF OF MATTEL, INC.:
 3
                          QUINN EMANUEL
 4                        BY:   JOHN QUINN
                               JON COREY
 5                             MICHAEL T. ZELLER
                               HARRY OLIVAR
 6                             TIMOTHY ALGER
                          865 S. FIGUEROA STREET,
 7                        10TH FLOOR
                          LOS ANGELES, CALIFORNIA  90017
 8

 9

10    ON BEHALF OF MGA ENTERTAINMENT:

11                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:   THOMAS J. NOLAN
12                             JASON RUSSELL
                               RAOUL KENNEDY
13                             LAUREN AGUIAR
                               CARL ROTH
14                        300 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA  90071-3144
15                        213-687-5000

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT **22**

PAGE **257**

THURSDAY, AUGUST 7, 2008              TRIAL DAY 31, MORNING SESSION

6193

```
                            I N D E X


PLAINTIFF
WITNESS          DIRECT        CROSS      REDIRECT      RECROSS
ISAAC LARIAN (CONTINUED)

BY MR. PRICE     6236                      6271
BY MR. NOLAN                   6246                      6280


PLAINTIFF
WITNESS          DIRECT        CROSS      REDIRECT      RECROSS
MICHAEL WAGNER

BY MR. QUINN     6281



            EXHIBITS           RECEIVED

              655               6236
              656               6237
              657               6237
              658               6238
              659               6238
            10188               6239
            10722               6239
             4947               6243
            10195               6243
            10219               6286
            13931               6293
            13932               6304
            13908               6312
```

EXHIBIT 22

PAGE 258

THURSDAY, AUGUST 7, 2008          TRIAL DAY 31, MORNING SESSION

1   WE ASKED FOR INFORMATION REGARDING CREDIT AGREEMENT

2   SPECIFICALLY WITH RESPECT TO THE 2006 CREDIT AGREEMENT AND THEY

3   OBJECTED, THIS MOTION PRACTICE, AND WE LOST.

4       SO NOW THEY WANT TO BRING IN THE AGREEMENT; BRING IN

5   WHAT HAPPENED RECENTLY.  WE DON'T KNOW, AND ALL WE HAVE ARE

6   THESE LETTERS, AND WE DON'T KNOW WHAT ELSE HAS HAPPENED.

7       THE COURT:  I THOUGHT ALL THAT WAS ORDERED TURNED

8   OVER.

9       MR. ROTH:  WE TURNED OVER LETTERS AND THE LOAN

10  AGREEMENT.

11      MR. COREY:  WE HAVE THE LOAN AGREEMENT.  WE GOT IT

12  TWO DAYS AGO.  IT WAS DESIGNATED THE HIGHEST TIER, AND THERE

13  ARE REFERENCES TO LETTERS TO AMENDMENT; THERE'S NO OTHER

14  CORRESPONDENCE THAT WE HAVE, OTHER THAN DEMAND LETTERS FROM

15  WACHOVIA; SO WE HAVE ABSOLUTELY NO IDEA WHAT REALLY IS THE

16  STATE OF PLAY WITH RESPECT TO THE DEMAND LETTERS.

17      THE COURT:  WHAT DO YOU WANT TO GET INTO HERE?

18      MR. NOLAN:  RECEIPT OF THE LETTERS.

19      THE COURT:  AND THE LETTERS SAY 'WE'RE CUTTING YOU

20  OFF.'

21      MR. NOLAN:  YES.

22      MR. COREY:  THE LETTERS SAY WE WANT $300 MILLION

23  BACK.  AND THEY INVOKED THE LOCK BOX PROVISION.  ONE OF THE

24  REVENUES JUST FLOW THROUGH THE WACHOVIA; THEY DON'T GO TO MGA.

25      THE COURT:  LET ME HEAR YOUR ARGUMENT.   EXHIBIT **22**

PAGE **259**

1    MR. NOLAN:  YOUR HONOR, WE'VE RAISED THIS.  WE

2  PRODUCED THIS.  WE BROUGHT IT TO THE COURT'S ATTENTION TEN DAYS

3  AGO.  WE PRODUCED THE DOCUMENTS TO THEM.  THEY HAVE THE

4  LETTERS.  THEY HAVE THE LOAN AGREEMENTS.  WE SHOULD BE ENTITLED

5  TO SHOW RIGHT NOW THE EFFECT THE RECEIPT OF THESE LETTERS FROM

6  WACHOVIA THAT ENFORCE THE LOCK BOX AGREEMENT SUCH THAT ANYTHING

7  HAVING TO DO WITH THE OPERATIONS OF MGA ARE NOW SUBJECT TO

8  THESE CONDITIONS.  IT GOES TO THE IMMEDIATE VALUATION AND

9  FINANCIAL CONDITION OF MGA AND ITS BEARING ON MR. LARIAN'S NET

10  WORTH.

11    THE COURT:  PART OF THE CONCERN I HAVE FOR THIS IS

12  REPRESENTATIONS WERE MADE TO THE COURT THAT -- I ASSUME WE'RE

13  NOW -- YOU ASKED FOR CERTAIN THINGS REMAIN IN CHAMBERS; I

14  ASSUME THIS IS ALL NOW OUT IN THE OPEN?

15    MR. NOLAN:  YES.

16    THE COURT:  JUST WANTED TO MAKE SURE BEFORE I SAID

17  ANYTHING.

18    YOU HAD MADE AN INDICATION THAT ACCOUNTS HAD BEEN

19  FROZEN AND THERE'S BEEN AN ATTEMPT TO NEGOTIATE A RESOLUTION.

20    THIS IS SOMETHING WHICH IS AWKWARD, BECAUSE OBVIOUSLY

21  AT THIS POINT MR. LARIAN AND MGA HAS INCENTIVE NOT TO --

22  THERE'S A CONCERN HERE IN TERMS OF TRANSPARENCY.

23    I'M NOT SUGGESTING ANYBODY IS DOING ANYTHING WRONG.

24  BUT MATTEL IS IN A POSITION NOT TO KNOW WHAT IS GOING ON.  MGA

25  HAS EVERY INCENTIVE RIGHT NOW, AT LEAST FOR THE NEXT WEEK, TO

THURSDAY, AUGUST 7, 2008          TRIAL DAY 31, MORNING SESSION

EXHIBIT 22

PAGE 260

6261

1    PORTRAY THEMSELVES IN THE WORST POSSIBLE LIGHT TO THIS JURY,

2    FINANCIALLY.  AND THE ONLY WAY TO ENSURE EVERYTHING IS ABOVE

3    BOARD IS TO HAVE COMPLETE DISCLOSURE OF ALL FINANCIAL RECORDS

4    RELATE TO WACHOVIA.

5            I ASSUME THAT'S WHAT YOU'RE --

6            MR. COREY:  YES.  FOR EXAMPLE, THE CREDIT AGREEMENT

7    HAS A $200 MILLION CAP ON THE ACCELERATION AMOUNT.

8            THE COURT:  YOU DON'T HAVE A COPY OF THAT?

9            MR. COREY:  I DO BUT IT HAS A $200 MILLION CAP.

10   THERE ARE THREE HUNDRED MILLION DOLLARS OF INDEBTEDNESS.  WHERE

11   DOES THAT COME FROM?

12           THAT'S THE KIND OF ISSUE WE'RE DEALING WITH.

13           THE COURT:  I LET YOU, MGA, GET IN ANY INFORMATION

14   LEGITIMATELY THAT SHOWS A FINANCIAL PROBLEM.  BUT THERE NEEDS

15   TO BE A FULL DISCLOSURE AT THIS POINT; THAT'S THE CONCERN I

16   HAVE GOING FORWARD.

17           MR. PRICE:  IF I COULD SUGGEST.  MR. NOLAN SAID HE

18   WAS GOING TO CALL MR. LARIAN IN THE CASE.  AGAIN, WE NEED TO

19   GET ALL OF THE DOCUMENTS, THE CORRESPONDENCE THAT'S BEEN GOING

20   ON.  THERE WAS A REPRESENTATION THEY ARE TRYING TO WORK THIS

21   OUT.  WE KNOW NOTHING ABOUT THAT.  WE NEED TO KNOW.

22           THE COURT:  YOU'RE GOING TO BE RECALLING MR. LARIAN

23   IN YOUR CASE.

24           MR. NOLAN:  I DIDN'T KNOW IF I COULD, BECAUSE I TRIED

25   TO ALERT YOU TO THIS ISSUE.

THURSDAY, AUGUST 7, 2008                TRIAL DAY 31, MORNING SESSION

EXHIBIT 22

PAGE 261

1

2   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
3   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
    ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
4   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.

5

6                                                        8-8-08

7   THERESA A. LANZA, CSR, RPR                          . DATE
    FEDERAL OFFICIAL COURT REPORTER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                          EXHIBIT  22

25                                          PAGE  262


THURSDAY, AUGUST 7, 2008              TRIAL DAY 31, MORNING SESSION

# EXHIBIT 23

1   Bingham McCutchen LLP
    TODD E. GORDINIER (SBN 82200)
2   todd.gordinier@bingham.com
    PETER N. VILLAR (SBN 204038)
3   peter.villar@bingham.com
    JENNIFER A. LOPEZ (SBN 232320)
4   jennifer.lopez@bingham.com
    600 Anton Boulevard
5   18th Floor
    Costa Mesa, CA  92626-1924
6   Telephone:  714.830.0600
    Facsimile:  714.830.0700
7
8   Attorneys for Non-party
    OMNI 808 INVESTORS, LLC
9
                UNITED STATES DISTRICT COURT
10
               CENTRAL DISTRICT OF CALIFORNIA
11
                    EASTERN DIVISION
12
13
    Carter Bryant, an individual,          Case No. CV 04-9049 SGL (RNBx)
14
         Plaintiff,                        **OMNI 808 INVESTORS, LLC'S**
15                                         **REPLY MEMORANDUM IN**
         v.                                **SUPPORT OF** *EX PARTE*
16                                         **APPLICATION FOR LEAVE TO**
    Mattel, Inc., a Delaware Corporation,  **INTERVENE FOR LIMITED**
17                                         **PURPOSE AS A MATTER OF**
         Defendant.                        **RIGHT OR, IN THE**
18                                         **ALTERNATIVE, FOR PERMISSIVE**
                                           **INTERVENTION**
19
20                                         Judge:  Hon. Stephen G. Larson
21
22   AND CONSOLIDATED ACTIONS.
23
24
25
26
27
28

A/72837928.2

EXHIBIT **23**

PAGE **263**