# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................... - 1 -

II.  OMNI IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT
     FOR THE LIMITED PURPOSE OF PROTECTING ITS STATUS
     AS A SECURED CREDITOR ................................................. - 4 -

     A.   Omni Has Established a Significantly Protectable Interest in the
          Receivership Issues Involved in the Pending Litigation ................ - 5 -

     B.   Omni Has Established That The Appointment of a Receiver
          May Impair or Impede Omni's Ability to Protect Its Interests ....... - 8 -

     C.   Omni Has Established That The Existing Parties May Not
          Adequately Represent Omni's Interests .......................................... - 9 -

     D.   Omni's Application Is Timely ....................................................... - 11 -

III. THE COURT SHOULD GRANT OMNI PERMISSIVE
     INTERVENTION IN THE ALTERNATIVE ......................................... - 11 -

IV.  CONCLUSION ..................................................................................... - 12 -

i

A/72837928.2

EXHIBIT 23

PAGE 264

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alisal Water Corp. v. Silverwood Estates,*
    370 F.3d 915 (9th Cir. 2004) ................................................................7, 8

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003) ...........................................................4, 5, 10

*Beckman Indus. Inc. v. International Ins. Co.,*
    966 F.2d 470 (9th Cir. 1992) ....................................................................5

*DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.,*
    187 F. Supp. 910 (S.D. Ohio 2001) .........................................................9

*Donnelly v. Glickman,*
    159 F.3d 405 (9th Cir. 1998) ................................................................4, 5

*Engra, Inc. v. Gabel,*
    958 F.2d 643 (5th Cir. 1992) .................................................................11

*Forest Conservation Council v. United States Forest Serv.,*
    66 F.3d 1489 (9th Cir. 1995) ...................................................................5

*Kootenai Tribe v. Veneman,*
    313 F.3d 1094 (9th Cir. 2002) ...............................................................11

*League of United Latin American Citizens v. Wilson,*
    131 F.3d 1297 (9th Cir. 1997) .................................................................5

*Lockyer v. U.S.,*
    450 F.3d 436 (9th Cir. 2006) ...................................................................4

*Meyer Jewelry Co. v. Meyer Holdings, Inc.,*
    906 F. Supp. 428 (E.D. Mich. 1995) ........................................................9

*Rissetto v. Plumbers and Steamfitters Local 343,*
    94 F.3d 597 (9th Cir. 1996) .....................................................................6

*Rumbaugh v. Beck,*
    491 F. Supp. 511 (E.D. Pa. 1980) ............................................................9

A/72837928.2

EXHIBIT **23**

PAGE **265**

*Saluck v. Rosner,*
   1999 WL 46620 (E.D. Pa. Jan. 6, 1999)...............................................9

*San Juan County v. U.S.,*
   503 F.3d 1163 (10th Cir. 2007) ...........................................................5

*SEC v. Flight Transp. Corp.,*
   699 F.2d 943 (8th Cir. 1983) ........................................................8, 10

*Southwest Center for Biological Diversity v. Berg,*
   268 F.3d 810 (9th Cir. 2001) ...........................................................5, 7

*Stringfellow v. Concerned Neighbors in Action,*
   480 U.S. 370 (1987)..............................................................................5

*Trbovich v. United Mine Workers,*
   404 U.S. 528 (1972)..............................................................................9

*U.S. v. South Florida Water Dist.,*
   922 F.2d 704 (11th Cir. 1991) .............................................................5

*United States v. State of Washington,*
   86 F.3d 1499 (9th Cir. 1996) .............................................................11

*Venegas v. Skaggs,*
   867 F.2d 527 (9th Cir. 1989) .............................................................12

*Yniguez v. Arizona,*
   939 F.2d 727 (9th Cir. 1991) ...............................................................8

OTHER AUTHORITIES

Fed. R. Civ. P. 24(a)..................................................................................4

Fed. R. Civ. P. 24(b)(2)...........................................................................11

Federal Rule of Civil Procedure 24(b)(1) ..............................................11

Rule 11 .......................................................................................................2

Rule 24 ...................................................................................................2, 4

Rule 24(a)(2) ..............................................................................................4

A/72837928.2

EXHIBIT **23**

PAGE **266**

## I.    INTRODUCTION

Mattel, Inc.'s opposition to Omni 808 Investors, LLC's *ex parte* application to intervene for a limited purpose in this action reveals much more than Mattel's profound misunderstanding regarding Omni, its principals, and its acquisition of MGA's debt obligations from Wachovia.  Regrettably, Mattel's opposition demonstrates its willingness to intentionally mislead the Court with false, irrelevant and unsupported allegations, and personal attacks, in order to silence a non-party with contrary viewpoints regarding, *inter alia*, Mattel's request for the appointment of a receiver.

The first and most glaring problem with Mattel's opposition is its argument that Omni has failed to establish a "bona fide interest" in MGA's assets.  This argument is ironic, to be charitable, given that it is *Mattel* who first brought Omni's secured interest in MGA's assets to the Court's attention.  Indeed, in support of Mattel's *ex parte* application for the appointment of a receiver, Mattel represented to this Court (supported by a sworn declaration of its counsel) that "*a new creditor, Omni 808 International (sic), LLC ("Omni") has take (sic) an (sic) security interest in all or substantially all of MGA's assets" and "is now apparently one of MGA's largest creditors (and perhaps its largest)*." (Mattel's Ex Parte Application for Appointment of a Receiver, 5:7-8; 6:15-16.)

Mattel's attempt to simultaneously argue that Omni *has a security interest in all or substantially all of MGA's assets* (to support its receiver application) and that Omni *does not have a bona fide interest in MGA's assets* (to oppose Omni's intervention application) is not only telling but entirely unavailing.  Indeed, Omni set forth detailed facts in its *ex parte* application regarding its agreement with Wachovia whereby Omni acquired all right, title and interest in the Senior Bank Credit Facility and, as a result, has a senior perfected security interest in MGA's assets, including MGA's inventory and accounts receivable.  These facts "must be

- 1 -

EXHIBIT **23**

PAGE **267**

1  accepted as true" for purposes of this application.  Mattel has offered no evidence

2  purporting to contest any of these facts.

3      Faced with the fact that Omni is indeed the largest secured creditor of MGA,

4  a position superior to any claim that can be made by Mattel, Mattel argues that

5  Omni's position as a secured creditor does not justify intervention.  In making this

6  argument, Mattel ignores the relevant legal factors cited by Omni and the

7  applicable authority on which they depend.  Mattel instead relies upon inapplicable

8  cases wherein a potential creditor is seeking to intervene in a lawsuit *for all*

9  *purposes* claiming a general interest in a defendant's assets based on, *inter alia*, a

10  speculative recovery in an unrelated civil action.

11      Here, as detailed in its application, Omni is seeking to intervene for a ***limited***

12  ***purpose*** in connection with Mattel's request for the appointment of a receiver so it

13  can protect its position as MGA's largest secured creditor.  Mattel fails to cite a

14  single case where a court in this circuit, or any circuit, denied a creditor's

15  application to intervene for such a limited purpose.  The Ninth Circuit construes

16  Rule 24 ***liberally*** in favor of intervention, and the cases Omni has cited in which

17  creditors have been permitted to intervene for such limited purposes control here.

18      Mattel also erroneously argues that Omni has not shown that the

19  appointment of a receiver may impair or impede its security interest because it

20  contends that it is unclear whether the Bratz product line is within the scope of the

21  collateral underlying Omni's Senior Bank Credit Facility.  This argument barely

22  meets the strictures of Rule 11 since Mattel itself has represented to the Court, as is

23  the case, that Omni has a senior perfected interest in "***all or substantially all of***

24  ***MGA's assets***."  Moreover, there can be little question that the appointment of a

25  receiver has the potential to adversely affect all of MGA's products and business

26  operations and, consequently, to adversely affect Omni's security interests --

27  whatever Mattel thinks they are.

28

- 2 -

A/72837928.2

EXHIBIT **23**

PAGE **268**

1       Mattel also baselessly argues that MGA can adequately represent Omni's

2  interest in connection with the appointment of a receiver. This argument, as

3  previously explained, is nonsense. MGA's interests as a debtor are not aligned

4  with Omni's interests as a creditor. Omni's primary interest is in MGA's ability to

5  repay its secured debt obligation of more than $300 million owed to Omni. There

6  is no reason to believe that MGA can or will "undoubtedly make all" of Omni's

7  arguments on its behalf, and Omni is in the best (and only) position to describe the

8  facts and circumstances surrounding its purchase of the Senior Bank Credit Facility

9  from Wachovia.

10      Mattel also tries to mislead the Court regarding the timing of Omni's

11  application. Mattel argues that Omni's application is untimely because it obtained

12  its interest in MGA's assets "five months ago." However, as Mattel well knows,

13  Omni's interests in this regard only accrued when Mattel filed its *ex parte*

14  application for the appointment of a receiver. Since Omni promptly filed its

15  application upon its discovery of Mattel's filing, and since the receiver issue has

16  not yet been decided, the timeliness of Omni's application is a non-issue.

17      Because Mattel has no factual or legal grounds upon which to oppose

18  Omni's application, Mattel spends most of its brief speculating about the source of

19  the funds Omni allegedly used to purchase MGA's debt from Wachovia. Mattel

20  argues that Omni allegedly received funding from non-party Vision Capital, who

21  allegedly received its funding from non-party Lexington Financial, and fixates on

22  the allegation that Isaac Larian's brother-in-law has alleged ties to these alleged

23  non-party investors in Omni. None of Mattel's purported "conspiracy theories" are

24  relevant to the issues before the Court. As explained in the *ex parte* application,

25  ***Omni acquired Wachovia's existing rights, title and interest in an existing Senior***

26  ***Bank Credit Facility.*** The source of Omni's funding is no more relevant than the

27  source of Wachovia's funding. If one of Isaac Larian's relatives had a tie to an

28  investor in Wachovia, it wouldn't matter either -- and certainly wouldn't have

- 3 -

A/72837928 2

EXHIBIT 23

PAGE 269

1   negated Wachovia's right to intervene as a senior perfected secured creditor before

2   its deal with Omni.

3          Finally, Mattel regrettably, but not surprisingly, resorts to slinging mud at

4   Omni and its principal, Neil Kadisha, with irrelevant allegations, taken out of

5   context, from an unresolved civil suit. This tactic is unfortunate and no more

6   relevant than recent public allegations surrounding Mattel's own illegal and

7   unethical business practices.

8          Because the appointment of a receiver could significantly and irreparably

9   harm Omni's interests as a senior secured creditor of MGA, Omni respectfully

10  requests that the Court grant it leave to intervene in this action for the purposes of

11  challenging the appointment of a receiver and related issues that could adversely

12  affect Omni's security interests.

13  **II.    OMNI IS ENTITLED TO INTERVENE AS A MATTER OF**

14  **        RIGHT FOR THE LIMITED PURPOSE OF PROTECTING ITS**

15  **        STATUS AS A SECURED CREDITOR**

16         Omni is entitled to intervene as a matter of right pursuant to Fed. R. Civ. P.

17  24(a). Rule 24(a) provides that a court must permit a non-party to intervene who

18  "claims an interest relating to the property or transaction that is the subject of the

19  action and is so situated that disposing of the action may as a practical matter

20  impair or impede the movant's ability to protect its interest . . . ." *See also,*

21  *Lockyer v. U.S.,* 450 F.3d 436, 440 (9th Cir. 2006). The Ninth Circuit construes

22  Rule 24 liberally in favor of applicants for intervention. *Arakaki v. Cayetano,* 324

23  F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman,* 159 F.3d 405, 409

24  (9th Cir. 1998)). The inquiry required under Rule 24(a)(2) is a flexible one, and a

25  practical analysis of the facts and circumstances of each case is appropriate.

26  *Donnelly,* 159 F.3d at 409. "In determining whether intervention is appropriate,

27  we are guided primarily by practical and equitable considerations. We generally

28  interpret the requirements broadly in favor of intervention." *Id.*

- 4 -

A/72837928.2

EXHIBIT **23**

PAGE **270**

1    When a non-party claims an interest relating to the subject property or

2  transaction of the action, courts generally require four factors: (1) a timely

3  application; (2) the applicant has a "significantly protectable" interest relating to

4  the property or transaction involved in the pending lawsuit; (3) the disposition of

5  the lawsuit may adversely affect applicant's interest unless intervention is allowed;

6  and (4) the existing parties may not adequately represent the would-be intervenor's

7  interest. *Arakaki*, 324 F.3d at 1083; *League of United Latin American Citizens v.*

8  *Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

9    Additionally, a district court has the discretion to grant a non-party limited

10  intervention for certain issues or purposes. *See Stringfellow v. Concerned*

11  *Neighbors in Action*, 480 U.S. 370, 378 (1987); *Donnelly v. Glickman*, 159 F.3d

12  405, 409 (9th Cir. 1998); *Beckman Indus. Inc. v. International Ins. Co.*, 966 F.2d

13  470, 473 (9th Cir. 1992). "A nonparty may have a sufficient interest for some

14  issues in a case but not others, and the court may limit intervention accordingly."

15  *U.S. v. South Florida Water Dist.*, 922 F.2d 704, 707 (11th Cir. 1991); *San Juan*

16  *County v. U.S.*, 503 F.3d 1163, 1203 (10th Cir. 2007).

17    A.   **Omni Has Established a Significantly Protectable Interest**

18         **in the Receivership Issues Involved in the Pending**

19         **Litigation**

20    "[W]hether an applicant for intervention demonstrates sufficient interest in

21  an action is a practical, threshold inquiry. No specific legal or equitable interest

22  need be established." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d

23  810, 818 (9th Cir. 2001) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th

24  Cir. 1993)); *see also Forest Conservation Council v. United States Forest Serv.*, 66

25  F.3d 1489, 1493 (9th Cir. 1995). "It is generally enough that the interest [asserted]

26  is protectable under some law, and that there is a relationship between the legally

27  protected interest and the claims at issue." *Southwest Center for Biological*

28

- 5 -

A/72837928.2

EXHIBIT **23**

PAGE **271**

1   *Diversity*, 268 F.3d at 818 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th

2   Cir. 1993)).

3          In its opposition, Mattel erroneously argues that Omni "makes no showing

4   that it has any bona fide interest" in MGA's assets.  This argument is the opposite

5   of the position previously taken by Mattel in its *ex parte* application for the

6   appointment of a receiver where Mattel represented to this Court (supported by a

7   sworn declaration of its counsel) that "*a new creditor, Omni 808 International*

8   *(sic), LLC ("Omni") has take (sic) an (sic) security interest in all or substantially*

9   *all of MGA's assets" and "is now apparently one of MGA's largest creditors*

10  *(and perhaps its largest)*."  (Mattel's Ex Parte Application for Appointment of a

11  Receiver, 5:7-8; 6:15-16).

12         Mattel's attempt to simultaneously argue that Omni has a "security interest

13  in all or substantially all of MGA's assets" (for purposes of its receiver application)

14  <u>and</u> that Omni does not have a bona fide interest in MGA's assets (for purposes of

15  its opposition to Omni's intervention application) is specious and precluded by the

16  doctrine of judicial estoppel.[1]  Moreover, Mattel's new argument is unavailing as

17  Omni set forth detailed facts in its *ex parte* application regarding its assignment

18  and exchange agreement with Wachovia whereby Omni acquired all right, title and

19  interest in the Senior Bank Credit Facility and, as a result, has a senior perfected

20  security interest in MGA's assets, including MGA's inventory and accounts

21

22  _____

23  [1]  "Judicial estoppel, sometimes also known as the doctrine of preclusion of
    inconsistent positions, precludes a party from gaining an advantage by taking one
    position, and then seeking a second advantage by taking an incompatible position."
24  *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996).
    "The policies underlying preclusion of inconsistent positions are general
25  considerations of the orderly administration of justice and regard for the dignity of
    judicial proceedings." *Id*. at 601.  "Judicial estoppel is intended to protect against a
26  litigant playing fast and loose with the courts." *Id*.  "Because it is intended to
    protect the dignity of the judicial process, it is an equitable doctrine invoked by a
27  court at its discretion." *Id*.

28

- 6 -

EXHIBIT __23__

PAGE __272__

1   receivable. These facts "must be accepted as true" for purposes of this application.

2   *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir.

3   2001). Mattel has offered no evidence purporting to contest any of these facts.[2]

4       Faced with the fact that Omni is the largest secured creditor of MGA, Mattel

5   argues that Omni's position as a secured creditor does not justify intervention. In

6   making this argument, Mattel ignores the relevant legal factors cited by Omni and

7   instead relies upon inapplicable cases wherein a *potential* creditor is seeking to

8   intervene in a lawsuit *for all purposes* (unrelated to the appointment of receiver)

9   *"merely claiming a general interest in [defendant's] assets based on a*

10  *speculative recovery in an unrelated civil action."* (*See* Mattel's Opposition,

11  10:9-10, citing *Gould v. Alleco, Inc.*, 883 F.2d 281, 285 (4th Cir. 1989)). Here,

12  Omni is seeking to intervene *for the limited purpose* in connection with Mattel's

13  request for the appointment of a receiver and so it can protect its position as

14  MGA's largest secured creditor. Mattel fails to cite a single case where a court in

15  this circuit, or any circuit, denied a creditor's application to intervene for the

16  limited purpose of challenging the appointment of a receiver. Indeed, Mattel's

17  primary support for its opposition to Omni's application, *Alisal Water Corp. v.*

18  *Silverwood Estates*, 370 F.3d 915 (9th Cir. 2004), does not involve a creditor's

19  opposition to the appointment of the receiver. In *Alisal Water*, following entry of

20  summary judgment in favor of the United States against Alisal Water Corp. for

21  violating the Safe Drinking Water Act, and while considering the United States'

22  request for penalties against Alisal, the district court appointed a receiver to

23  manage Alisal's drinking water systems and oversee Alisal's possible sale. The

24  court affirmed the denial of a third party's motion to intervene on the grounds that

25

26  [2] Contrary to statements made in Mattel's opposition, Omni has offered to provide Mattel with documents reflecting Omni's agreement with Wachovia to acquire

27  MGA's debt obligations. Mattel has rejected these offers, and instead prematurely filed a motion to compel without meeting and conferring in good faith.

28

-7-

EXHIBIT **23**

PAGE **273**

1   seeking to protect a prior judgment was insufficient given the likelihood that such

2   intervention could delay longstanding litigation and encumber the U.S.'s efforts to

3   ensure safe drinking water for the public. The *Alisal* case, therefore, is inapposite.

4        Unlike Mattel, Omni has cited applicable authority in which creditors have

5   been permitted to intervene as a matter of right where a receiver has been

6   appointed and taken control of a debtor's assets. The rationale is that the first

7   creditor's action may effectively foreclose the interests of other creditors. *See SEC*

8   *v. Flight Transp. Corp.*, 699 F.2d 943, 947 (8th Cir. 1983). In *SEC v. Flight*

9   *Transp. Corp.*, for example, the appellate court rejected all of the same arguments

10  made by Mattel in this case and reversed the district court's order denying

11  intervention. The Court reasoned that such arguments fail to recognize that

12  because the defendant's assets are in the hands of a receiver and may be affected

13  by an order of the district court (i.e., an order of disgorgement or constructive

14  trust), the non-party intervenor's interests "may be foreclosed" by the action of the

15  district court. Therefore, the non-party had a right to intervene as a matter of law.

16  *Id. at* 948.

17       Because Omni's interest is directly related to issues raised by Mattel in its *ex*

18  *parte* application for the appointment of a receiver, Mattel has a significantly

19  protectable interest relating to the property or transaction which is the subject of

20  this action.

21       **B.     Omni Has Established That The Appointment of a Receiver**

22              **May Impair or Impede Omni's Ability to Protect Its**

23              **Interests**

24       In order to show that the disposition of the action may impair or impede the

25  ability to protect a non-party's interest, the non-party need only show a "practical"

26  impairment, "not whether the decision itself binds them." *Yniguez v. Arizona*, 939

27  F.2d 727, 735 (9th Cir. 1991). In its opposition, Mattel erroneously argues that

28  Omni has not shown that the appointment of a receiver may impair or impede its

- 8 -

A/72837928.2

EXHIBIT **23**

PAGE **274**

1  security interest because it is unclear whether the Bratz product line is within the

2  scope of the collateral underlying Omni's Senior Bank Credit Facility.  This

3  argument is, again, inconsistent with Mattel's prior representation to this Court that

4  Omni has a "security interest in all or substantially all of MGA's assets" and is

5  unavailing as Omni has a senior perfected interest in all of MGA's assets (superior

6  to any unsecured interests that Mattel may have by virtue of its judgment in this

7  action).

8      Moreover, this argument is a red herring because the appointment of a

9  receiver to "oversee and control all financial and business aspects" of MGA will

10  adversely affect all of MGA's products and business operations and, consequently,

11  will impair Omni's ability to protect its senior perfected security interest in its

12  collateral, which includes MGA's inventory and accounts receivable and

13  ultimately in MGA's ability to repay its outstanding secured debt obligation to

14  Omni of in excess of $300 million.[3]

15      **C.    Omni Has Established That The Existing Parties May Not**

16          **Adequately Represent Omni's Interests**

17      The United States Supreme Court has held that in order to demonstrate the

18  inadequacy of the existing parties to protect its interest, the applicant's burden is

19  "*minimal*" and is satisfied so long as the applicant shows that representation by

20  existing parties "*may be*" inadequate. *Trbovich v. United Mine Workers*, 404 U.S.

21

22  [3]  As explained in Omni's *ex parte* application, courts are reluctant to appoint
    receivers to solvent corporations. *See, e.g., DeBoer Structures, Inc. v. Shaffer Tent*
23  *& Awning Co.*, 187 F. Supp. 910, 925 (S.D. Ohio 2001) (declining to appoint
    receiver despite other facts in favor of doing so where corporation was solvent and
24  productive); *Meyer Jewelry Co. v. Meyer Holdings, Inc.*, 906 F. Supp. 428, 434
    (E.D. Mich. 1995) ("The deleterious effects of a receivership would result in more
25  harm than good in this case."); *Rumbaugh v. Beck*, 491 F. Supp. 511, 521 (E.D. Pa.
    1980) (finding that because a corporation was presently operating in a successful
26  manner, appointment of a receiver would "be potentially more harmful than if one
    were not implanted"); *Saluck v. Rosner*, 1999 WL 46620, at *2 (E.D. Pa. Jan. 6,
27  1999) ("the appointment of a receivership of a solvent corporation is a drastic
    remedy.").

28

-9-

A/72837928 2

EXHIBIT __23__

PAGE __275__

1   528, 538 n.10 (1972). The Ninth Circuit considers three factors in determining the

2   adequacy of representation: "(1) whether the interest of a present party is such that

3   it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the

4   present party is capable and willing to make such arguments; and (3) whether a

5   proposed intervenor would offer any necessary elements to the proceeding that

6   other parties would neglect." *Arakaki*, 324 F.3d at 1086 (citing *California v.*

7   *Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir.1986)).

8       In its opposition, Mattel argues, without basis, that MGA may adequately

9   represent Omni's interests. However, the legal issue is not whether MGA "may"

10  adequately represent Omni's interests; the issue is whether MGA "may not"

11  adequately represent Omni's interests. Mattel does not, and cannot, contend that

12  MGA "undoubtedly" can or will "make all" of Omni's arguments in opposition to

13  Mattel's application for a receiver.

14      Further, Omni's and MGA's ultimate objectives are different. Omni's

15  primary objective is in MGA's ability to repay its secured debt obligation of in

16  excess $300 million owed to Omni. The financial interests of a debtor and secured

17  creditor are, on their face, aligned differently. The fact that MGA may also oppose

18  the appointment of a receiver, on other or similar grounds, is irrelevant. *SEC v.*

19  *Flight Transp. Corp.*, 699 F.2d at 947 (holding that "while [intervenor's] interests

20  may not be adverse to those of [a party] or the receiver, they are sufficiently

21  'disparate' to warrant intervention"). Moreover, there is no dispute that Omni is in

22  the best (and perhaps only) position to describe the facts and circumstances

23  surrounding its purchase of the Senior Bank Credit Facility from Wachovia.

24      Therefore, the existing parties may not adequately represent Omni's interest

25  regarding the appointment of a receiver and other issues relating to Omni's status

26  as a secured creditor. Omni has more than satisfied its "minimal" burden.

27

28

- 10 -

A/72837928.2

EXHIBIT **23**

PAGE **276**

**D.   Omni's Application Is Timely**

Courts generally consider the following factors relevant to the issue of timeliness: (1) the stage of the proceedings at the time the applicant seeks to intervene; (2) the prejudice to the existing parties from applicant's delay in seeking leave to intervene; and (3) any reason for and the length of delay in seeking intervention. *United States v. State of Washington*, 86 F.3d 1499, 1502 (9th Cir. 1996); *Engra, Inc. v. Gabel*, 958 F.2d 643, 644 (5th Cir. 1992).

In its opposition, Mattel misleadingly argues that Omni's application is untimely because its interest in MGA's assets "was created over five months ago." However, contrary to Mattel's efforts to mislead the Court, Omni's interest in this litigation accrued when it became aware of Mattel's application to appoint a receiver at MGA. Omni acted without delay in filing is application after learning of Mattel's filing, and the Court has yet to decide the pending request for the appointment of a receiver. Therefore, Omni's application is timely, and Mattel will suffer no prejudice as a result.

**III.   THE COURT SHOULD GRANT OMNI PERMISSIVE INTERVENTION IN THE ALTERNATIVE**

Even if Omni were not entitled to intervene as a matter of right, the Court should exercise its discretion and permit its intervention in this matter. Under Federal Rule of Civil Procedure 24(b)(1), permissive intervention should be granted whenever the "applicant's claim . . . and the main action have a question of law or fact in common," and when the intervention would not "unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(2). The existence of a "common question" is liberally construed. *Kootenai Tribe v. Veneman*, 313 F.3d 1094, 1108-1109 (9th Cir. 2002). A proposed intervenor under Rule 24(b)(2) "need not demonstrate a 'significantly protectable' interest relating to the property or transaction which is the subject of the action.'" *Defenders of Wildlife*, 2005 WL 3260986, at *2 (citing *Kootenai Tribe of Idaho v.*

- 11 -

EXHIBIT **23**

PAGE **277**

1   *Veneman*, 313 F.3d 1094, 1108-09 (9th Cir. 2002)).  Omni meets each of these

2   requirements.

3        In its opposition, Mattel erroneously argues that Omni has failed to identify

4   a common question of law or fact.  Not true.  As clearly demonstrated both in

5   Omni's application, and in Mattel's opposition, there are numerous common

6   questions of law and fact between Omni's claims as a secured creditor and the

7   issues raised in Mattel's application to appoint a receiver.  Moreover, Omni's

8   participation will not unduly delay or prejudice the adjudication of the rights of the

9   original parties.  Omni's participation will be limited to challenging Mattel's

10  request to appoint a receiver and protecting its interests as a secured creditor.

11       The burden is on the parties to plead and prove any alleged prejudice.

12  *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989).  Mattel has failed to prove

13  any such prejudice beyond its unsupported and conclusory allegations that Omni's

14  participation in the receiver issues will "create unnecessary issues, delay

15  proceedings, create confusion ... and complicate matters."  Mattel simply wants to

16  prevent Omni from raising issues regarding the appointment of a receiver that are

17  contrary to Mattel's litigation and competitive interests in this litigation.  That is

18  not a basis upon which to deny intervention.

19  **IV.   CONCLUSION**

20       For the foregoing reasons, Omni respectfully requests the Court grant this

21  application and authorize it to intervene for the limited purpose of responding to

22  Mattel's request for the appointment of a receiver for MGA and all other issues

23  related to the proposed receiver or Omni's status as a secured creditor of MGA.

24  DATED:  February 9, 2009          Bingham McCutchen LLP

25                                    By: _____

26                                          Todd E. Gordinier
                                          Attorneys for Non-party
27                                        Omni 808 Investors, LLC

28

A/72837928.2

EXHIBIT 23

PAGE 278

# EXHIBIT 24

# FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 25

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11                       EASTERN DIVISION

12  CARTER BRYANT, an individual,       CASE NO. CV 04-9049 SGL (RNBx)

13                 Plaintiff,           Consolidated with
                                        Case No. CV 04-09059
14         vs.                          Case No. CV 05-02727

15  MATTEL, INC., a Delaware
    corporation,                        MATTEL, INC.'S MOTION FOR
16                                       ORDER CONFIRMING THAT THE
                   Defendant.            DISCOVERY MASTER HEARS
17                                       AND RESOLVES ALL
                                         DISCOVERY DISPUTES,
18  AND CONSOLIDATED ACTIONS             INCLUDING THOSE WITH THIRD
                                         PARTIES
19
                                        [Declaration of Juan Pablo Albán;
20                                      [Proposed] Order]

21                                      Date:   January 7, 2007
                                        Time:   10 a.m.
22                                      Place:  Courtroom 1

23                                      Phase I
                                        Discovery Cut-Off:      January 28, 2008
24                                      Pre-Trial Conference:   May 5, 2008
                                        Trial Date:             May 27, 2008
25

26

27

28

07209/2322551.4

12-13
MATTEL'S MOTION FOR ORDER RE APPLICABILITY OF DISCOVERY MASTER STIP.

EXHIBIT  25

PAGE  372

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 7, 2007, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of Honorable Stephen G. Larson, located at 3470 Twelfth Street, Riverside, California, 92501, Mattel, Inc. will, and hereby does, respectfully move the Court, pursuant to Federal Rules of Civil Procedure 37 and 53, for an order confirming that pursuant to the Stipulation and Order for Appointment of a Discovery Master, signed by the Honorable Stephen G. Larson on December 6, 2006 (the "Order"), Discovery Master Hon. Edward A. Infante (Ret.) shall hear and rule on all discovery disputes between the parties and between a party and any third-party subject to the personal jurisdiction of the Court, including but not limited to discovery disputes between (a) Mattel and counter-defendant Carlos Gustavo Machado Gomez, and (b) Mattel and third parties Elise Cloonan, Margaret Hatch-Leahy, Veronica Marlow, Farhad Larian, Kaye Scholer LLP and Stern & Goldberg.

Mattel makes this motion on the grounds that the Court ordered that: "[a]ny and all discovery motions and other discovery disputes in the above captioned action shall be decided by a master ("Discovery Master") . . . until all issues herein have been finally disposed of or determined, or until he shall withdraw in accordance with applicable law;"[1] and that "[a]ll third parties subject to discovery requests or deposition in this litigation shall be bound by the terms of this Stipulation and Order."[2] Counter-defendant Carlos Gustavo Machado Gomez and third parties Elise Cloonan, Margaret Hatch-Leahy, Veronica Marlow, Farhad Larian, Kaye Scholer LLP and Stern & Goldberg nevertheless have each taken the position that,

---

[1] Declaration of Juan Pablo Albán filed concurrently herewith ("Albán Dec."), Exh. 1 at 3, ¶¶ 1, 3 (Dec. 5, 2006 Stip. and Order for Appointment of Discovery Master).

[2] Id. at 6, ¶ 15.

EXHIBIT _25_

PAGE _373_

-i-

1   notwithstanding the plain language of the Order, the Order does not apply to them.
2   The MGA defendants also now adopt that interpretation as well.

3       This motion is based on the accompanying Memorandum of Points and
4   Authorities, the concurrently filed declaration of Juan Pablo Albán, and all
5   pleadings and papers on file with the Court in this action.

6                   **Statement of Local Rule 7-3 Compliance**

7       Mattel conferred with each opposing counsel here on various dates beginning
8   on September 24, 2007.

9

10  DATED:  December 13, 2007        QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
11

12                                   By
13                                     Jon. D. Corey
                                       Attorneys for Plaintiff
14                                     Mattel, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27                                                      EXHIBIT **25**

28                                                      PAGE **374**

07209/2322551.4                              -ii-
                 MATTEL'S MOTION FOR ORDER RE APPLICABILITY OF DISCOVERY MASTER STIP.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ................................................................................................... 2

    A.    The Discovery Master Order. ................................................... 2

    B.    The Discovery Disputes with Defendant Machado. ............................. 2

    C.    The Discovery Disputes With MGA-Affiliated Third Parties
           Farhad Larian, Kaye Scholer and Stern & Goldberg............................ 3

    D.    Discovery Disputes with MGA-Affiliated Witnesses Cloonan,
           Leahy and Marlow. ................................................................. 5

ARGUMENT .......................................................................................................... 6

I.    THE COURT PROPERLY APPOINTED THE DISCOVERY
    MASTER.......................................................................................... 6

II.    THE DISCOVERY MASTER HAS AUTHORITY TO DETERMINE
    ALL DISCOVERY DISPUTES. ............................................................ 7

    A.    The Language of the Order Expressly Applies To Discovery
           Disputes At Issue. ................................................................... 7

    B.    Federal Law Supports The Applicability of the Order Here. ................. 8

    C.    Machado's And The Third Parties' Consent Arguments Are
           Unavailing. .............................................................................. 9

III.    OBJECTIONS TO THE DISCOVERY MASTER ORDER ARE
    ONLY DELAY TACTICS....................................................................... 10

CONCLUSION........................................................................................................ 12

EXHIBIT __25__

PAGE __375__

07209/2322551.4

-i-

MATTEL'S MOTION FOR ORDER RE APPLICABILITY OF DISCOVERY MASTER STIP.

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

In re "Agent Orange" Product Liability Litigation,
94 F.R.D. 173 (S.D.N.Y. 1982).............................................................9

Galbreath v. Metro. Trust Co. of California,
134 F.2d 569 (10th Cir. 1943)...............................................................8

Matter of Andros Compania Maritima, S.A.,
(March Rich & Co., A.G.) 579 F.2d 691 (2nd Cir. 1978)....................11

Mayo v. Dean Witter Reynolds, Inc.,
258 F. Supp. 2d 1097 (N.D. Cal. 2003)................................................8

Moore v. Rees,
2007 WL 2955947 (E.D. Ky. 2007).....................................................8

United States v. Conservation Chemical Company,
106 F.R.D. 210 (D. Mo. 1985).........................................................8-9

Woods v. Saturn Distribution Corp.,
78 F.3d 424 (9th Cir. 1996)................................................................11

### Statutes

Federal Rules of Civil Procedure

Rule 26(a)............................................................................................6

Rule 37................................................................................................i, 7

Rule 45.................................................................................1, 4, 7, 10

Rule 53................................................................................................8

Rule 53(a)(1).......................................................................................6

Rule 53(c)...........................................................................................8

Federal Rule of Evidence 501...............................................................10

### Other Authorities

9A Wright & Miller, Federal Practice and Procedure
§ 2606 at 672 (2d ed. 1994)................................................................8

EXHIBIT __25__

PAGE __376__

-ii-

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

On December 6, 2007, this Court issued the Discovery Master Order (the "Order"), to which Mattel, Carter Bryant and MGA had stipulated. The Order provided that the Discovery Master shall determine "[a]ny and all discovery motions and other discovery disputes in the above captioned action."[3]   The Order also expressly provides that "[a]ll third parties subject to discovery requests or deposition in this litigation shall be bound by the terms" of the Order.[4]

Defendant Machado and certain third parties—almost all of whom are closely affiliated with defendants MGA and Larian—purport to reject and refuse to abide by the plain language of that Order.  In doing so, they are creating numerous satellite disputes by contending that the Order does not apply to them and thus countermanding the very efficiency the Order was intended to bring to discovery matters.  Their main reason for this position is apparently that they did not consent to the Order.  Court Orders, of course, need no consent.  Nor did this one.  The operative provisions of Federal Rule of Civil Procedure 53—which is what empowered the Court to enter the Order—require no consent to the appointment of a master to handle pretrial discovery.  To the contrary, as a duly entered Order, Machado and third parties are bound by it unless this Court grants them relief, which it has not done.  Indeed, none of them has ever even sought such relief. Mattel respectfully requests that the Court confirm that Judge Infante shall hear and resolve all discovery disputes involving the parties and any third parties within the personal jurisdiction of the Court in these consolidated actions.

---

[3]   Albán Dec., Exh. 1 at 3, ¶¶ 1, 3 (Order).
[4]   Id. at 6 ¶ 15.

EXHIBIT **25**

PAGE **377**

07209/2322551.4

-1-

## Background

A.   **The Discovery Master Order.**

The Order appointed Judge Infante as Discovery Master and authorized him to determine "[a]ny and all discovery motions and other discovery disputes in the above captioned action . . . until all issues herein have been finally disposed of or determined, or until he shall withdraw in accordance with applicable law."[5]   The Order further granted Judge Infante authority "to take evidence in connection with discovery disputes; to issue orders resolving discovery motions submitted to the Discovery Master; to issue orders awarding non-contempt sanctions, including, without limitation, the award of attorney's fees, as provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and recommendations as appropriate."[6]   Finally, the Order requires that "[a]ll third parties subject to discovery requests or deposition in this litigation shall be bound by the terms of this Stipulation and Order."[7]

B.   **The Discovery Disputes with Defendant Machado.**

Machado, a former Mattel employee in Mexico whom Mattel alleges stole Mattel trade secrets for his and MGA's benefit, is a party to this action.   When Machado refused to appear for deposition, or to consent to production of electronic messages from accounts he used to execute the trade secret theft, Mattel sought relief from the Discovery Master.[8]   Machado opposed the motion on the sole ground that the Discovery Master Order did not apply to him.[9]   Mattel's motion is currently

---

[5]   Id. at 3, ¶¶ 1, 3.
[6]   Id. at 3-4, ¶ 4.
[7]   Id. at 6, ¶ 15.
[8]   Id., Exh. 8 (Mattel's Mot. to Compel Machado dated Nov. 15, 2007).
[9]   Id., Exh. 9 (Machado's Opp. to Mattel's Mot. to Compel dated Nov. 26, 2007).

EXHIBIT **25**

PAGE **378**

07209/2322551.4

MATTEL'S MOTION FOR ORDER RE APPLICABILITY OF DISCOVERY MASTER STIP.

1    noticed for a January 4, 2008 hearing.[10]  Machado's counsel informed Mattel as

2    recently as December 20, 2007 that Machado opposes the Discovery Master's

3    jurisdiction to adjudicate these discovery disputes.[11]

4         C.    **The Discovery Disputes With MGA-Affiliated Third Parties**

5             **Farhad Larian, Kaye Scholer and Stern & Goldberg.**

6        The Discovery Master compelled MGA to produce documents related

7    to lawsuits and arbitrations between Farhad Larian and Isaac Larian, finding that

8    those proceedings related to the conception of Bratz.[12]  MGA has disobeyed that

9    order, to date having produced just four documents related to the Larian v. Larian

10   proceedings to Mattel's knowledge.[13]  Isaac Larian likewise has produced no

11   documents related to these proceedings.[14]  Discovery that Mattel has obtained

12   separately confirms that the timing of the conception and early development of

13   Bratz in late 1999 and 2000, and Isaac Larian's concealment thereof, were *the key*

14   *issues* in those proceedings.

15        Specifically, on September 28, 2000, ten days after the alleged effective

16   date of Carter Bryant's contract purporting to assign rights to Bratz to MGA, Isaac

17   Larian convinced Farhad Larian—without telling him about Bratz—that they should

18   have their uncle Morad Zarabi decide a fair value for MGA and have one brother

19   sell his stock in MGA to the other.[15]  Zarabi concluded that Farhad Larian should

20

21      [10]   Id. ¶ 9. Other document discovery from Machado also remains in dispute, as

22   Machado served objections to Mattel's first set of document requests replete with

23   groundless, boilerplate objections. Id., Exh. 10 (Machados' Objs. to Mattel's First
   Set of RFPs dated October 15, 2007).

24      [11]   Id., Exh. 4 (Dec. 10, 2007 email from Cote to Albán et al.).

25      [12]   Id., Exh. 11 at 10-11 (May 15, 2007 Order of the Discovery Master).
     [13]   Id. ¶ 13.

26      [14]   Id.

27      [15]   Id., Exhs. 12 (Agr. to Arbitrate and Selection of Arbitrator), 13 at ¶¶ 4, 5
   (Nov. 7, 2003 F. Larian Dec.).

28

EXHIBIT ____**25**

PAGE ____**379**

MATTEL'S MOTION FOR ORDER RE APPLICABILITY OF DISCOVERY MASTER STIP.

1   sell his interest in MGA to Isaac Larian for $8.775 million.[16]  Ernest Dutcher, whom
2   Zarabi retained to appraise MGA, valued MGA through December 31, 1999.[17]

3          Farhad Larian later complained to Zarabi about his brother's
4   concealment of Bratz during the stock sale negotiations in 2000.[18]  Zarabi responded
5   and oversaw another appraisal "based upon information [he] gathered in 2002."[19]
6   Dutcher this time *valued MGA as of December 31, 2000* and projected a 2001
7   revenue growth rate of twenty-five percent (25%), more than five times higher than
8   the 2001 growth rate he projected when valuing MGA as of December 31, 1999.[20]
9   By Dutcher's own account, he could have projected such a large growth rate only if
10  "hot products that came along" for MGA justified it.[21]

11          Unable to resolve his disputes through Zarabi, Farhad Larian sued his
12  brother, alleging, among other things, that (i) in late 1999 or early 2000, Isaac
13  Larian and MGA "became aware" of a new product line called "Bratz," (ii) MGA
14  planned and executed the development of Bratz throughout 2000, and (iii) Isaac
15  Larian concealed the plans for Bratz from Farhad Larian in order to keep the
16  valuation of MGA artificially low.[22]  As the Court is aware, these are time periods
17  during which Bryant was a Mattel employee and are well before MGA and Bryant
18  claim they were even introduced to one another in September 2000.   On
19  February 28, 2005, Farhad Larian also brought suit against Zarabi alleging the same
20
21
22   [16]  Id., Exhs. 14 at ¶ 5 (Sep. 14, 2004 Zarabi Dec.).
23   [17]  Id. Exh. 15 at ¶¶ 5-6 (Jan. 9, 2007 Dutcher Dec.).
     [18]  Id., Exh. 14 at ¶ 6 (Sep. 14, 2004 Zarabi Dec.).
24   [19]  Id. at ¶¶ 7-8.
25   [20]  Id., Exh. 15 at ¶¶ 8-9 and Exhs. B at p.20, C at p.20 (Jan. 9, 2005 Dutcher Dec.).
26   [21]  Id., Exh. 16 at 18:14-19:12 (Sep. 10, 2003 Tr. of Audiotaped Meeting w/
27   E. Dutcher).
     [22]  Id., Exh. 17 at ¶¶ 13-23 (Aug. 25, 2003 Larian v. Larian Complaint).
28

**EXHIBIT _25_**

**PAGE _380_**

facts about Bratz and including Zarabi as a co-conspirator.[23]   The so-called "arbitrations" by Zarabi and the civil lawsuits that followed are the Larian v. Larian proceedings for which Mattel seeks discovery.

Mattel served Rule 45 subpoenas on third parties involved in the proceedings, including Farhad Larian, Kaye Scholer and Stern & Goldberg.  Kaye Scholer represented Isaac Larian, and Stern & Goldberg represented Zarabi, during significant portions of those proceedings.  Farhad Larian refused to produce key responsive documents, while Kaye Scholer and Stern & Goldberg refused to produce any documents.[24]   Mattel thereby moved to compel production of documents from these third parties.[25]   Farhad Larian, Stern & Goldberg and Kaye Scholer all contend that the Discovery Master Order does not apply to them.[26] Indeed, as recently as December 11, 2007, Kaye Scholer expressly stated that it has no intention of abiding by the Discovery Master Order, including by not filing an opposition until December 27, 2007, contrary to the terms of the Order and without attempting to agree to a schedule with Mattel.[27]

D.   **Discovery Disputes with MGA-Affiliated Witnesses Cloonan, Leahy and Marlow.**

Cloonan, Leahy and Marlow refused to confirm deposition dates in any binding way until Mattel applied _ex parte_ before this Court to compel them.[28]   Only

---

[23]   Id., Exh. 18 at ¶¶ 14-18 (Feb. 28, 2005 Larian v. Zarabi Complaint).
[24]   Id., Exhs. 19 (Dec. 5, 2007 Ltr. from Albán to Lever); 20 (Oct. 31, 2007 Ltr. from Goldberg to Albán); 21 (Nov. 21, 2007 Ltr. from Delgadillo to Albán).
[25]   Id., Exhs. 22 (Dec. 7, 2007 email from Alban to J. Infante attaching filings against Farhad Larian and Stern & Goldberg); 23 (Dec. 10, 2007 email from Alban to J. Infante attaching filings against Kaye Scholer).
[26]   Id., Exhs. 3, 6, 7 (Ltrs. indicating opposition to the Discovery Master's jurisdiction).
[27]   Id., Exh. 24 (Ltr. from Delgadillo to Alban).
[28]   Id., Exh. 25 (Mattel's Nov. 15, 2007 _Ex Parte_ App.).

EXHIBIT _25_

PAGE _381_

MATTEL'S MOTION FOR ORDER RE APPLICABILITY OF DISCOVERY MASTER STIP.

1  after the *ex parte* papers were filed did they represent that the depositions could go

2  forward with binding deposition dates.[29]  Leahy's deposition took place on

3  December 12, 2007, while Cloonan's and Marlow's depositions are scheduled for

4  December 14 and 28, 2007, respectively.[30]  Nevertheless, discovery disputes remain

5  with these witnesses.  For example, Leahy improperly redacted entries in her

6  business planner that she has produced and then only agreed to make a proper

7  disclosure on the afternoon of her deposition—thus depriving Mattel of the ability to

8  question her on those documents.

9          It is beyond dispute that Cloonan, Leahy and Marlow possess

10  discoverable information.  Indeed, each is a key witness and has been identified by

11  MGA as "possess[ing] information relevant to the conception, creation, design and

12  development of 'Bratz.'"[31]  Each of these three key witnesses also have claimed

13  during meet and confer sessions with Mattel that they dispute the Discovery

14  Master's jurisdiction to adjudicate disputes involving them.[32]

15                              **Argument**

16  **I.   THE COURT PROPERLY APPOINTED THE DISCOVERY MASTER**

17          The District Court's Order appointed Judge Infante as Discovery

18  Master to address pretrial discovery issues in this case.  Federal Rule of Civil

19  Procedure 53(a)(1) provides that a court may appoint a master to: "(A) perform

20  duties consented to by the parties; (B) hold trial proceedings and make or

21  recommend findings of fact . . . or (C) address pretrial and post-trial matters that

22  cannot be addressed effectively and timely by an available district judge or

23  ───────────────────────

24  [29]  Id., Exh. 26 (Nov. 20, 2007 Order of the Court).

25  [30]  Id. ¶ 28.
    [31]  Id., Exh. 27 at ¶¶ 4-6 (MGA's Rule 26(a) Disclosures).  Mattel respectfully

26  refers the Court to Exhibit 25 in the Albán Dec., at 7-8, for details on each of these

27  witnesses' role in the conception, creation, design and development of Bratz.
    [32]  Id., Exh. 5 (Dec. 9, 2007 Ltr. from McFarland to Proctor).

28

EXHIBIT **25**

PAGE **382**

07209/2322551.4

-6-

magistrate judge of the district." Fed. R. Civ. P. 53(a)(1). The Court appointed the Discovery Master here to address pretrial discovery, finding that his appointment would "facilitate the fair and efficient completion of pre-trial discovery" and "minimize the burden of discovery disputes upon the Court."[33]

As a duly entered Order, it is binding on both Machado and third parties as shown below.

## II.   THE DISCOVERY MASTER HAS AUTHORITY TO DETERMINE ALL DISCOVERY DISPUTES.

### A.   The Language of the Order Expressly Applies To Discovery Disputes At Issue.

There is no question that the Order, by its terms, squarely mandates that the discovery disputes in this action be heard and decided by the Discovery Master, including disputes with parties such as Machado and third-parties such as Farhad Larian, Kaye Scholer and Stern & Goldberg. The Order provides that Judge Infante is authorized to determine "[a]ny and all discovery motions and other discovery disputes in the above captioned action . . . until all issues herein have been finally disposed of or determined, or until he shall withdraw in accordance with applicable law."[34] The Order further granted Judge Infante authority "to take evidence in connection with discovery disputes; to issue orders resolving discovery motions submitted to the Discovery Master; to issue orders awarding non-contempt sanctions, including, without limitation, the award of attorney's fees, as provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and recommendations as appropriate."[35] Finally, the Order expressly requires that "[a]ll

---

[33] Id., Exh. 1 at 3.
[34] Id., Exh. 1 at 3, ¶¶ 1, 3 (Order).
[35] Id. at 3-4, ¶¶ 4.

EXHIBIT __25__

PAGE __383__

07209/2322551.4

-7-

MATTEL'S MOTION FOR ORDER RE APPLICABILITY OF DISCOVERY MASTER STIP.

1  third parties subject to discovery requests or deposition in this litigation shall be
2  bound by the terms of this Stipulation and Order."[36]

3        There accordingly can be no plausible dispute that the Order expressly
4  directs discovery disputes with parties and third parties alike in this litigation be
5  decided by the Discovery Master.   .

6      **B.**    <u>**Federal Law Supports The Applicability of the Order Here.**</u>

7        Machado—a party—is without question bound by the Court's orders.
8  <u>Moore v. Rees</u>, 2007 WL 2955947, *3 (E.D. Ky. 2007).  Indeed, it is well-settled
9  that when a party enters a litigation, he is bound by "all prior orders and
10  adjudications of fact and law as though he had be a party from commencement of
11  suit."   <u>See</u> <u>Moore</u>, 2007 WL 2955947, *3 (E.D. Ky. 2007) (holding intervenor
12  would be bound by all prior orders) (<u>citing</u> <u>Galbreath v. Metro. Trust Co. of</u>
13  <u>California</u>, 134 F.2d 569, 570 (10th Cir. 1943)).

14        To the extent Machado wished to exempt himself from the explicit
15  terms of the Discovery Master Order, he was required to bring a timely motion for
16  reconsideration before this Court, and make the required showing to justify it. <u>See</u>
17  <u>Mayo v. Dean Witter Reynolds, Inc.</u>, 258 F. Supp. 2d 1097, 1103 (N.D. Cal. 2003)
18  (once an order is entered, the judge may only modify or set it aside through a motion
19  for reconsideration).  Or, in the case of the appointment of a master, he was required
20  to assert a timely objection to the District Court.  "A party who desires to contest the
21  propriety of a reference to a master under <u>Rule</u> 53 should move the *trial court* for
22  revocation of the reference.  Inaction in this regard is tantamount to acquiescence."
23  9A Wright & Miller, <u>Federal Practice and Procedure</u> § 2606 at 672 (2d ed. 1994)
24  (emphasis added); <u>see also</u> <u>United States v. Conservation Chemical Company</u>, 106
25  F.R.D. 210, 227 (D. Mo. 1985) ("Where a party merely objects to a court's order,

26

27  [36] <u>Id.</u> at 6, ¶ 15.

28

07209/2322551.4

EXHIBIT **25**

PAGE **384**

-8-

1  such action does not constitute a motion" for purposes of challenged reference to a

2  special master.).  The third parties are equally bound.  See, e.g., In re "Agent

3  Orange" Product Liability Litigation, 94 F.R.D. 173, 174 (S.D.N.Y. 1982) (ordering

4  appointment of special master to oversee pretrial discovery over objections of

5  nonparty).  See also Fed. R. Civ. P. 53(c) (master "may recommend a contempt

6  sanction against a party and sanctions against a nonparty," suggesting that the

7  master has authority to resolve disputes involving third parties).  It would be

8  anomalous and inefficient for the Discovery Master to handle discovery disputes

9  between some of the parties, but to require disputes with other parties such as

10 Machado or over subpoenas to be handled by a Magistrate Judge.  Surely, that is

11 not what the Court (or the parties) intended.

12    C.    **Machado's And The Third Parties' Consent Arguments Are**

13          **Unavailing.**

14          As far as Mattel can tell, Machado's and the third parties' principal

15 excuse for their refusals to abide by the Order is that they have not expressly

16 consented to it.  The Discovery Master Order, however, binds parties such as

17 Machado as well as third parties without necessity of their consent.  Rule

18 53(a)(1)(C) expressly empowers the Court to appoint a master to handle pretrial

19 matters.  That is exactly the power the Court exercised here, finding that the

20 Discovery Master could ensure fair and efficient pretrial discovery and minimize the

21 burden on the Court.  Nowhere does Rule 53(a)(1)(C) say that the Court requires the

22 consent of the parties.  To the contrary, it is plain that the relevant Rule does not

23 require consent.  Section (A) of Rule 53(a)(1) allows appointment of a master to

24 handle *any* matter "consented to by the parties."  In stark contrast, Section (C)

25 contains no such requirement of consent, making clear that consent is not required

26 for the appointment of a master to handle pretrial discovery matters.  See also Fed.

27 R. Civ. P. 53(a)(2) (expressly requiring consent of parties to appoint a master who

28 has possible conflicts); Comments to 2003 Amendments to Rule 53 (noting only that

07209/2322551.4

-9-

MATTEL'S MOTION FOR ORDER RE APPLICABILITY OF DISCOVERY MASTER STIP.

EXHIBIT **25**

PAGE **285**

1  appointment of trial master for a jury trial—and not for a non-jury trial—would

2  require the consent of the parties).

3  **III.   OBJECTIONS TO THE DISCOVERY MASTER ORDER ARE ONLY**

4       **DELAY TACTICS.**

5       Prompt resolution of the proper forum for discovery disputes promotes

6  efficiency and judicial economy.  Rather than cooperate in this effort, Machado and

7  the third parties here quarrel over forum with one purpose, to stonewall Mattel's

8  requests and to delay discovery.  These parties apparently intend to wait for the

9  Discovery Master to rule on Mattel's discovery motions — less than a month before

10  Phase I fact discovery ends — and only then appeal his rulings (if adverse) to the

11  Court with a challenge to the Discovery Master's jurisdiction.  Under that scenario,

12  which would require yet another round of motion practice before the Court, the

13  resolution of the proper forum would be resolved, at the earliest, in February, after

14  the Phase 1 Discovery Cut-off date.

15       This tactic is but another of defendants' efforts to stymie Mattel's

16  discovery efforts.  Machado's delays are well documented above.  Cloonan, Leahy

17  and Marlow forced Mattel to file an *ex parte* application before consenting to

18  binding deposition dates.  Stern & Goldberg insisted that Mattel write three "meet

19  and confer" letters before even agreeing to have a meet and confer; then during the

20  conference asked Mattel to provide it with detailed authority as to why it should

21  produce any documents, seemingly in an attempt to compromise; and only to refuse

22  to produce documents.[37]  In an almost verbatim recital of Stern & Goldberg's

23  ――――――――――――――――――

24  [37]  Id., Exhs. 7, 20, 28, 29, 30, 31, 32, 33 (Correspondence between Albán and

25  Goldberg dated between Sep. 28, 2007 and Oct. 31, 2007).  As the authority Mattel
cites in Exhibit 33 shows, Stern & Goldberg clings primarily to an "arbitral

26  privilege" that is not applicable here--such privilege under federal law (which

27  applies here under Fed. R. of Evid. 501) applies only in subsequent proceedings
where a party to an arbitration (i.e., Isaac or Farhad Larian here) challenges an

28  (footnote continued)

EXHIBIT __25__

PAGE __286__

1   excuses to refuse any meet and confer, Farhad Larian forced Mattel to request the

2   conference no less than four times before even agreeing to meet, delaying the

3   conference from Mattel's initial request on October 3, 2007 until November 20,

4   2007.[38]    Even now, Farhad Larian contends Mattel's motion to compel was

5   "premature."[39]  The correspondence cited here also makes clear that Farhad Larian

6   and Stern & Goldberg have made sure MGA and Isaac Larian have a say in their

7   Rule 45 discovery obligations.  Finally, Kaye Scholer—Isaac Larian's lawyers—

8   initially agreed to produce documents responsive to twenty-six of Mattel's thirty-

9   five requests for production by November 19, 2007, only to backtrack on the

10   representation on November 21, 2007, refusing to produce a single document.[40]

11          As is obvious, these defendants' and third parties' jousting over the

12   simple issue of who should decide discovery motions in this case—in the face of the

13   clear terms of the Discovery Master Order—only serves to magnify cost, cause

14   delay and prejudice Mattel.  The Court should put an end to their burgeoning

15   satellite litigation over the Discovery Master Order and reject their objections to the

16   Discovery Master's authority.

17

18

19

20

21

22

23   arbitrator's decisions. Matter of Andros Compania Maritima, S.A. (March Rich &

24   Co., A.G.), 579 F.2d 691, 702 (2nd Cir. 1978); Woods v. Saturn Distribution Corp.,
     78 F.3d 424, 430 (9th Cir. 1996) (citing Andros).

25       [38]  Id., Exh. 34 (Ltr. from Albán to Lever dated Dec. 10, 2007).

26       [39]  Id., Exh. 35 (Dec. 7, 2007 Ltr. from Lever to Albán).

27       [40]  Id., Exhs. 36 (Nov. 21, 2007 Ltr. from Albán to Delgadillo); 21 (Nov. 21,
     2007 Ltr. from Delgadillo to Albán).

28

EXHIBIT 25

PAGE 387

1

## Conclusion

2           For the foregoing reasons, Mattel respectfully requests that the Court

3   grant its Motion in its entirety and rule that the Stipulation and Order for

4   Appointment Of A Discovery Master Order applies to all discovery disputes

5   between a party or parties and all third parties within the personal jurisdiction of the

6   Court.

7

8   DATED:  December 13, 2007        QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP

9

10                                   By _____ for
11                                       Jon D. Corey
                                         Attorneys for Mattel, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                          EXHIBIT __*25*__

28                                          PAGE __*388*__

07209/2322551.4

-12-

# EXHIBIT 26

3589

1            UNITED STATES DISTRICT COURT

2           CENTRAL DISTRICT OF CALIFORNIA

3              EASTERN DIVISION

4                - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                - - -

7  MATTEL, INC.,

8            PLAINTIFF,  )

9        VS.           )  NO. CV 04-09049

10  MGA ENTERTAINMENT, INC., ET. AL.,  )

11          DEFENDANTS.  )  TRIAL DAY 17
                       )  AFTERNOON SESSION

12  AND CONSOLIDATED ACTIONS,  )  PAGES 3589-3689

13

14

15    REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16          RIVERSIDE, CALIFORNIA

17        TUESDAY, JUNE 24, 2008

18            2:55 P.M.

19

20

21

22

23        THERESA A. LANZA, RPR, CSR
          FEDERAL OFFICIAL COURT REPORTER

24        3470 12TH STREET, RM. 134
        RIVERSIDE, CALIFORNIA  92501

25          951-274-0844
        WWW.THERESALANZA.COM

CERTIFIED COPY

EXHIBIT __26__

PAGE __389__

3590

```
 1   APPEARANCES:

 2

     ON BEHALF OF MATTEL, INC.:
 3
                         QUINN EMANUEL
 4                       BY:   JOHN QUINN
                               JON COREY
 5                             MICHAEL T. ZELLER
                               HARRY OLIVAR
 6                             TIMOTHY ALGER
                         865 S. FIGUEROA STREET,
 7                       10TH FLOOR
                         LOS ANGELES, CALIFORNIA   90017
 8

 9

10   ON BEHALF OF MGA ENTERTAINMENT:

11                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                         BY:   THOMAS J. NOLAN
12                             JASON RUSSELL
                               RAOUL SLOAN
13                             LAUREN AGUIAR
                               CARL ROTH
14                       300 SOUTH GRAND AVENUE
                         LOS ANGELES, CALIFORNIA   90071-3144
15                       213-687-5000

16

17   ON BEHALF OF THIRD-PARTY DEFENDANT PETER MARLOW:

18                       LAW OFFICE OF STEVEN M. GOLDSOBEL
                         BY:   STEVEN M. GOLDSOBEL
19                       1900 AVENUE OF THE STARS
                         SUITE 1800
20                       LOS ANGELES, CA   90067
                         310-552-4848
21

22

23

24                                          EXHIBIT  26

25                                          PAGE  390
```

TUESDAY, JUNE 24, 2008                    TRIAL DAY 17, AFTERNOON SESSION

```
 1                          I N D E X

 2                                                PAGE

 3   DEFENSE CASE (CONTINUED)...................... 3592

 4   PLAINTIFF WITNESS.............................  3619

 5

 6   DEFENSE
     WITNESS         DIRECT     CROSS    REDIRECT    RECROSS
 7   JACQUELINE PRINCE (VIA VIDEO DEPOSITION)

 8   BY MR. ZELLER   3592

 9

10   PLAINTIFF
     WITNESS         DIRECT     CROSS    REDIRECT    RECROSS
11   PETER MARLOW

12   BY MR. ZELLER      3619
     BY MS. AGUIAR                3658
13

14

15

              EXHIBITS        RECEIVED
16
                 61              3618
17               62              3618
              5723 (PP. 1,2)     3632
18            10034              3678

19

20

21

22

23

24                              EXHIBIT _26_

25                              PAGE _391_
```

TUESDAY, JUNE 24, 2008                    TRIAL DAY 17, AFTERNOON SESSION

3648

1        MR. NOLAN:  THE ERRATA SHEET IS PART OF THE

2    TRANSCRIPT.

3        THE COURT:  IT'S OVERRULED.

4    BY MR. ZELLER:

5    Q    ALSO, YOUR LAWYER CLAIMED, AS RECENTLY AS THIS DEPOSITION    04:06

6    YOU JUST HAD, THAT YOU AND MGA HAD SOMETHING THAT WAS CALLED A

7    JOINT DEFENSE.

8        DO YOU REMEMBER THAT?

9        MS. AGUIAR:  OBJECTION.  RELEVANCE; CALLS FOR A LEGAL

10   CONCLUSION.                                                       04:07

11       MR. ZELLER:  CREDIBILITY, YOUR HONOR.

12       THE COURT:  I KNOW.

13       OVERRULED.

14       WATCH THE SUBJECT MATTER, COUNSEL.

15       MR. ZELLER:  I CAN SHARPEN IT UP, YOUR HONOR.                 04:07

16   BY MR. ZELLER:

17   Q    DURING THE COURSE OF YOUR DEPOSITION, DO YOU RECALL THAT

18   YOUR LAWYER FROM TIME TO TIME OBJECTED AND SAID, 'MR. MARLOW,

19   DON'T ANSWER THOSE QUESTIONS BECAUSE YOU HAVE SOMETHING CALLED

20   A JOINT DEFENSE.'                                                 04:07

21       DO YOU REMEMBER THOSE WORDS BEING USED?

22   A    YES.

23   Q    AND YOU UNDERSTOOD THAT MEANT YOUR LAWYER WAS SAYING THAT

24   YOU AND MGA HAVE SIMILAR INTERESTS; IS THAT RIGHT?

25   A    I DON'T UNDERSTAND IT.                                       04:07

EXHIBIT **26**

PAGE **392**

TUESDAY, JUNE 24, 2008                    TRIAL DAY 17, AFTERNOON SESSION

3649

1    Q    WELL, YOU HAD NO UNDERSTANDING OF WHAT A JOINT DEFENSE IS

2    BETWEEN YOU AND MGA?

3            MS. AGUIAR:   OBJECTION.   RELEVANCE.   AND IT WAS

4    WITHDRAWN.

5            THE COURT:   WAS IT WITHDRAWN, COUNSEL?                    04:07

6            MR. GOLDSOBEL:   YES.

7            MR. ZELLER:   THIS IS, AGAIN, CREDIBILITY.   IT TIES TO

8    MGA.

9            THE COURT:   WAS THE OBJECTION WITHDRAWN?

10           MR. GOLDSOBEL:   YES, YOUR HONOR, IT WAS WITHDRAWN.        04:08

11           THE COURT:   LET'S MOVE ALONG.

12   BY MR. ZELLER:

13   Q    AND BY THE WAY, THAT MEETING THAT YOU HAD WITH MR. NOLAN

14   JUST THIS WEEKEND BEFORE LAST, HE TOLD YOU TO KEEP THOSE

15   DISCUSSIONS CONFIDENTIAL, DIDN'T HE?                              04:08

16   A    YES.

17   Q    YOU AND VERONICA MARLOW HAD, APPROXIMATELY, A SEVEN-YEAR

18   BUSINESS RELATIONSHIP WITH CARTER BRYANT; IS THAT TRUE?

19   A    YES.

20   Q    AND YOU AND VERONICA MARLOW HAVE RECEIVED MILLIONS OF        04:08

21   DOLLARS FROM MGA AND CARTER BRYANT OVER THE YEARS; IS THAT

22   TRUE?

23   A    YES.

24   Q    IN FACT, YOU'VE RECEIVED AT LEAST $2 TO $3 MILLION; IS

25   THAT TRUE?                                                         04:08

EXHIBIT **26**

PAGE **393**

TUESDAY, JUNE 24, 2008                    TRIAL DAY 17, AFTERNOON SESSION

3650

1    A    YES.

2    Q    YOU AND YOUR WIFE LAST RECEIVED A PAYMENT FOR BRATZ AS

3    RECENTLY AS THREE OR FOUR MONTHS AGO.

4    A    A LITTLE LONGER.  I THINK ABOUT FOUR OR FIVE MONTHS AGO.

5    Q    AND YOU CERTAINLY HOPE YOU'LL GET MORE MONEY FROM THEM IN      04:05

6    THE FUTURE; IS THAT RIGHT?

7         MS. AGUIAR:  OBJECTION.  VAGUE AND AMBIGUOUS AS TO

8    WHO WAS MAKING THOSE PAYMENTS.

9         THE COURT:  SUSTAINED.

10   BY MR. ZELLER:

11   Q    DO YOU HAVE AN EXPECTATION THAT YOU'LL RECEIVE MONEY IN

12   THE FUTURE FROM THEM?

13        MS. AGUIAR:  OBJECTION.  SAME OBJECTIONS.

14        THE COURT:  FROM WHO, COUNSEL?  IT'S NOT CLEAR.

15        SUSTAINED.                                                    04:05

16   BY MR. ZELLER:

17   Q    ISN'T IT TRUE THAT DURING THE TIME THAT YOU AND

18   VERONICA MARLOW HAVE PROVIDED SERVICES TO MGA, YOU'VE DONE THAT

19   UNDER THE DIRECTION OF MGA AND CARTER BRYANT?

20        MS. AGUIAR:  OBJECTION.  FOUNDATION; ASSUMES FACTS            04:05

21   NOT IN EVIDENCE.

22        THE COURT:  LAY A FOUNDATION, COUNSEL.

23   BY MR. ZELLER:

24   Q    I TAKE IT THAT YOU HAVE PERSONALLY BEEN INVOLVED IN

25   COMMUNICATIONS WITH CARTER BRYANT AND MGA INSOFAR AS THEY          04:10

EXHIBIT 26

PAGE 394

1   PERTAIN TO WORK PERFORMED ON THE BRATZ PROJECT GOING BACK TO

2   2000; RIGHT?

3   A    CORRECT.

4   Q    YOU HAVE PERSONAL KNOWLEDGE AS TO WHERE THOSE DIRECTIONS

5   AND INSTRUCTIONS HAVE COME FROM; RIGHT?                         04:10

6   A    SOMETIMES.

7   Q    AND THE ONES THAT YOU'RE AWARE OF, THOSE DIRECTIONS AND

8   INSTRUCTIONS AS TO WHAT WORK TO DO, WHAT SERVICES TO PERFORM,

9   THOSE HAVE COME FROM MGA AND CARTER BRYANT; IS THAT TRUE?

10  A    YES.                                                       04:10

11  Q    AND CARTER BRYANT AND MGA HAVE HAD THE POWER TO APPROVE OR

12  DISAPPROVE THE WORK THAT YOU AND YOUR WIFE HAVE DONE ON BRATZ;

13  IS THAT TRUE?

14  A    YES.

15  Q    AND YOU AND VERONICA MARLOW HAVE, FROM TIME TO TIME, HELD   04:10

16  YOURSELVES OUT AS ACTING FOR MGA; IS THAT RIGHT?

17          MS. AGUIAR:   OBJECTION.   VAGUE; LACK OF FOUNDATION.

18          THE COURT:   EXPLAIN YOUR TERM, COUNSEL.

19  BY MR. ZELLER:

20  Q    HAVE YOU EVER TOLD ANYONE, OR HAS YOUR WIFE, TO YOUR        04:11

21  KNOWLEDGE, EVER TOLD ANYONE, THAT YOU AND SHE WERE WORKING OR

22  ACTING ON MGA'S BEHALF; IN OTHER WORDS, DOING SOMETHING FOR

23  MGA?

24  A    NO.

25  Q    THAT'S NEVER HAPPENED?                                      04:11

TUESDAY, JUNE 24, 2008                    TRIAL DAY 17, AFTERNOON SESSION

EXHIBIT __26__

395

3669

1    I'LL BE LOOKING FOR FOUNDATIONAL OBJECTIONS.

2         MR. ZELLER:  SO THE COURT KNOWS, WHAT I WOULD --

3    MAYBE IF I START WITH THE EMPLOYMENT, BECAUSE THAT MAY BE

4    THAT --

5         THE COURT:  YOU CAN START WHEREVER YOU WANT.  I'M          04:53

6    JUST SAYING, BEFORE YOU GET TO THAT E-MAIL --

7         MR. ZELLER:  INTO THE 2005 ONE.

8         THE COURT -- IT'S GOT TO BE THIS WITNESS'S

9    UNDERSTANDING THAT THAT'S WHAT HE WAS COMMUNICATING TO MGA.

10        MR. ZELLER:  AND THIS, OF COURSE, GOES TO               04:53

11   CREDIBILITY.  SHE ASKED THOSE QUESTIONS.

12        THE COURT:  I UNDERSTAND WHAT IT GOES TO, COUNSEL.

13        MR. ZELLER:  THANK YOU.

14        (WHEREUPON, SIDE-BAR PROCEEDINGS WERE CONCLUDED.)

15        THE COURT:  YOU MAY PROCEED, COUNSEL.                   04:54

16   BY MR. ZELLER:

17   Q    YOU SAID, IN RESPONSE TO MGA'S COUNSEL'S QUESTIONS, IN

18   VARIOUS WAYS, THAT NEITHER YOU NOR YOUR WIFE EVER TOLD OR EVER

19   INFORMED MGA, IN WORDS OR SUBSTANCE, THAT THESE OTHER MATTEL

20   EMPLOYEES WERE SECRETLY WORKING ON BRATZ WHILE MATTEL         04:54

21   EMPLOYEES; IS THAT CORRECT?

22   A    CORRECT.

23   Q    SO THE RECORD IS CLEAR HERE AS WELL, THERE WAS ACTUALLY A

24   THIRD MATTEL EMPLOYEE WHO WAS SECRETLY WORKING ON BRATZ WHILE A

25   MATTEL EMPLOYEE AND WORKING ON THE BRATZ CLOTHING; IS THAT     04:54

3670

1   TRUE?

2   A    CORRECT.

3   Q    AND THAT WAS BEATRIZ MORALES?

4   A    CORRECT.

5   Q    SO WE HAVE THE TIME FRAMES CLEARLY IN MIND, MARIA SALAZAR,    04:54

6   WHILE A MATTEL EMPLOYEE, WORKED ON THE BRATZ CLOTHING FROM AT

7   LEAST THE 2000 AND 2001 TIME PERIOD; CORRECT?

8   A    CORRECT.

9   Q    ANA CABRERA DID THAT AS WELL, FROM THE 2000 TO 2005 TIME

10  PERIOD; IS THAT CORRECT?    04:55

11  A    CORRECT.

12  Q    AND BEATRIZ MORALES DID THAT FROM AT LEAST THE 2001

13  THROUGH THE 2005 TIME PERIOD; CORRECT?

14  A    CORRECT.

15  Q    SO THERE WERE AT LEAST ANOTHER THREE MATTEL EMPLOYEES WHO    04:55

16  WORKED FOR YEARS, SECRETLY, ON BRATZ AND WERE PAID BY YOU AND

17  YOUR WIFE AND REIMBURSED BY MGA TO WORK ON BRATZ; IS THAT TRUE?

18  A    CORRECT.

19  Q    IF I UNDERSTAND IT, THIS WENT ON FOR YEARS AND YEARS, WITH

20  ALL THREE OF THEM, WITHOUT ANY INKLING, ANY HINT, TO MGA AS TO    04:55

21  WHAT WAS GOING ON; IS THAT RIGHT?

22  A    CORRECT.

23  Q    NOW, ISN'T IT TRUE THAT MARIA SALAZAR, IN FACT, BECAME

24  EMPLOYED BY MGA BACK IN 2003?

25  A    CORRECT.    04:56

EXHIBIT 26

PAGE 399

3671

1    Q    AND CERTAINLY, SHE KNEW THAT SHE HAD BEEN SECRETLY WORKING

2    ON BRATZ WHILE A MATTEL EMPLOYEE; CORRECT?   SO SHE HAD TO HAVE

3    KNOWN.

4         MS. AGUIAR:   OBJECTION AS TO TIME FRAME, YOUR HONOR.

5         THE COURT:   SUSTAINED.                                    04:56

6         REPHRASE YOUR QUESTION.   JUST CLARIFY AS TO THE TIME

7    PERIOD IN QUESTION.

8         MR. ZELLER:   YES, YOUR HONOR.

9    BY MR. ZELLER:

10   Q    PRIOR TO THE TIME THAT MARIA SALAZAR ACTUALLY BEGAN AS AN   04:56

11   EMPLOYEE THERE AT MGA IN THE 2003 TIME PERIOD, OBVIOUSLY SHE

12   HAD ALREADY KNOWN SHE HAD BEEN SECRETLY WORKING ON BRATZ AS A

13   MATTEL EMPLOYEE FOR A COUPLE OF YEARS BEFORE THAT; RIGHT?

14        MS. AGUIAR:   OBJECTION.   MISSTATES THE TESTIMONY AND

15   INACCURATE TIME FRAME.                                          04:56

16        THE COURT:   REPHRASE, COUNSEL.

17   BY MR. ZELLER:

18   Q    MARIA SALAZAR, OF COURSE, BY YOUR UNDERSTANDING, KNEW WHAT

19   SHE HAD DONE ON BRATZ; THAT IS, SECRETLY WORK ON IT WHILE A

20   MATTEL EMPLOYEE; RIGHT?                                         04:5

21   A    CORRECT.

22   Q    AND SHE KNEW THAT PRIOR TO 2003; IS THAT TRUE?

23   A    CORRECT.

24   Q    AND SHE KNEW THAT, THEREFORE, WHEN SHE BEGAN AS AN

25   EMPLOYEE AT MGA.                                                04:5

EXHIBIT 26

PAGE 398

TUESDAY, JUNE 24, 2008                    TRIAL DAY 17, AFTERNOON SESSION

3672

1  A    CORRECT.

2  Q    SO CERTAINLY, SOMEBODY -- WHEN YOU TOLD US NO ONE AT MGA

3  KNEW, AT LEAST MARIA SALAZAR, AN MGA EMPLOYEE FROM 2003 ON, SHE

4  KNEW WHAT HAD HAPPENED; RIGHT?

5  A    CORRECT.                                                     04:57

6  Q    NOW, AS FAR AS YOU KNOW, MARIA SALAZAR, TO THIS DAY, IS AN

7  MGA EMPLOYEE; IS THAT TRUE?

8  A    I DON'T KNOW.

9  Q    WELL, LAST YOU KNEW, SHE WAS AN MGA EMPLOYEE; RIGHT?

10  A    RIGHT.                                                      04:57

11  Q    DIRECTING YOUR ATTENTION TO EXHIBIT 10034.  I THINK IN

12  RESPONSE TO -- SOME OF THE QUESTIONS YOU WERE ASKED WERE

13  BASICALLY, 'DID MARIA SALAZAR EVER KNOW?  DID YOU EVER TELL HER

14  THAT SHE HAD WORKED ON BRATZ, THAT THE PRODUCT SHE WAS WORKING

15  ON WAS BRATZ WHILE SHE WAS A MATTEL EMPLOYEE?'                   04:58

16        MS. AGUIAR:  OBJECTION.  MISSTATES THE QUESTION AND

17  THE TESTIMONY.

18        THE COURT:  SUSTAINED.

19        MR. ZELLER:  I'LL REPHRASE IT, THEN.

20  BY MR. ZELLER:

21  Q    IT'S TRUE, THEN, AT SOME POINT, MARIA SALAZAR BECAME AWARE

22  THAT THE PROJECT SHE WAS SECRETLY WORKING ON WHILE A MATTEL

23  EMPLOYEE WAS A MGA PROJECT CALLED "BRATZ"?

24  A    YES.

25  Q    AND ALSO ANA CABRERA LEARNED THAT AT SOME POINT; IS THAT   04:58

EXHIBIT 26

260

3673

1   TRUE?

2   A    YES.

3   Q    AND BEATRIZ MORALES LEARNED THAT AT SOME POINT AS WELL?

4   A    YES.

5   Q    ISN'T IT TRUE THAT YOU USED PHONY NAMES IN DOCUMENTS TO          04:58

6   COVER UP THE FACT THAT THESE MATTEL EMPLOYEES WERE SECRETLY

7   WORKING ON BRATZ WHILE MATTEL EMPLOYEES?

8   A    IT WASN'T MY INTENT TO COVER ANYTHING UP.

9   Q    WHETHER YOU INTENDED TO OR NOT, THAT IS WHAT YOU DID; IS

10  THAT NOT TRUE?                                                        04:59

11  A    CORRECT.

12  Q    AND IN AT LEAST SOME OF THOSE DOCUMENTS THAT YOU

13  PROVIDED -- AND ALSO WHAT YOU DID IS, NOT ONLY USED PHONY NAMES

14  FOR PEOPLE IN THESE DOCUMENTS; YOU USED PHONY SOCIAL SECURITY

15  NUMBERS; CORRECT?                                                     04:59

16  A    I WASN'T AWARE THAT THEY WERE PHONY.

17  Q    I'M SORRY?

18  A    I WASN'T AWARE OF THAT AT THE TIME.

19  Q    YOU CERTAINLY BECAME AWARE OF IT AT SOME POINT THAT THAT'S

20  WHAT YOU WERE DOING; RIGHT?                                           04:59

21  A    RIGHT.

22  Q    IN FACT, BACK IN 2003, YOU GOT A NOTICE FROM THE I.R.S.

23  TELLING YOU THAT THOSE SOCIAL SECURITY NUMBERS FOR THE WORK

24  THAT WAS BEING DONE AND THE PAYMENTS THAT WERE BEING MADE WERE

25  WRONG.                                                                04:59

EXHIBIT __26__

PAGE __400__

TUESDAY, JUNE 24, 2008                    TRIAL DAY 17, AFTERNOON SESSION

3674

1    A    RIGHT.

2    Q    SO YOU CERTAINLY HAD AN INKLING OR AN UNDERSTANDING BY

3    THAT POINT THAT THE SOCIAL SECURITY NUMBERS THAT WERE BEING

4    USED WERE PHONY.

5            MS. AGUIAR:  OBJECTION.  RELEVANCE.                    04:59

6            THE COURT:  OVERRULED.  THIS IS IMPEACHMENT.

7            THE WITNESS:  THAT'S RIGHT.

8    BY MR. ZELLER:

9    Q    AND WHAT DID YOU DO ONCE YOU RECEIVED THAT NOTICE FROM THE

10   I.R.S. THAT THERE WAS SOMETHING WRONG WITH THOSE TAX DOCUMENTS   05:00

11   BECAUSE YOU WERE USING PHONY SOCIAL SECURITY NUMBERS TO COVER

12   UP THE FACT THAT THESE MATTEL EMPLOYEES WERE WORKING ON BRATZ

13   SECRETLY?

14   A    I ASKED THE MATTEL EMPLOYEES TO PLEASE GIVE ME CORRECT

15   SOCIAL SECURITY NUMBERS.                                       05:00

16   Q    WHEN DID YOU DO THAT, SIR?

17   A    AFTER RECEIVING THE NEXT NOTICE.

18   Q    YOU DID THAT RIGHT WITHIN THE LAST COUPLE OF WEEKS.

19   A    WELL, ACTUALLY, IT WAS IN 2005.

20   Q    SO YOU WAITED THREE YEARS?  TWO YEARS?                     05:00

21   A    THAT WAS THE TIME I RECEIVED THE NEXT NOTICE.

22   Q    SO DIRECTING YOUR ATTENTION, THEN, TO EXHIBIT 10034.

23   A    RIGHT.

24   Q    YOU RECOGNIZE THIS, GENERALLY SPEAKING, AS AN EMPLOYMENT

25   APPLICATION THAT MARIA SALAZAR FILLED OUT FOR MGA BACK IN THE   05:0

EXHIBIT  26

PAGE  401

3675

1   2003 TIME PERIOD; IS THAT TRUE?

2         MS. AGUIAR:  OBJECTION,  FOUNDATION.

3         THE COURT:  ASK THE QUESTION, COUNSEL..

4         MR. ZELLER:  LET ME TRY IT THIS WAY, YOUR HONOR:  THE

5   DOCUMENT IS IN EVIDENCE.                                          05:0]

6         THE COURT:  RELEVANCY HAS BEEN ESTABLISHED.

7         YOU MAY PUBLISH IT, COUNSEL.

8         MR. ZELLER:  THANK YOU, YOUR HONOR.

9         IF WE COULD SHOW, PLEASE, EXHIBIT 10034.

10        THE COURT:  I'M SOMEWHAT CONCERNED ABOUT THE TIME AT   05:0]

11  THIS POINT.  I KNOW THIS WITNESS HAS BEEN WAITING NUMEROUS

12  DAYS, AND THE ATTORNEYS HAVE BEEN WAITING.  WE'RE AT THE 5:00

13  HOUR.

14        BEFORE I ASK THE JURY IF THEY WILL WAIT FOR A FEW

15  MORE MINUTES, HOW MUCH LONGER DO YOU ANTICIPATE THAT YOU HAVE?  05:0]

16        MR. ZELLER:  I WOULD ANTICIPATE THAT IT IS PROBABLY

17  TEN MINUTES, YOUR HONOR.

18        THE COURT:  MEMBERS OF THE JURY, ARE YOU ABLE TO

19  WAIT?  IS ANYONE NOT ABLE TO WAIT?

20        YOU NEED TO LEAVE?                                     05:0]

21        VERY GOOD.

22        WE'RE GOING TO HAVE TO RESUME WITH THIS ON JULY 1ST,

23  WHEN WE RESUME TESTIMONY.

24        YES, COUNSEL?

25        MR. GOLDSOBEL:  I'LL BE OUT OF TOWN, YOUR HONOR, ON A   05:0]

TUESDAY, JUNE 24, 2008                    TRIAL DAY 17, AFTERNOON SESSION

EXHIBIT 26

PAGE 402

3689

1         HAVE A GOOD WEEK.  I'LL SEE YOU NEXT TUESDAY.

2         THE CLERK:  COURT STANDS ADJOURNED.

3

4

5

6

7

8

9

10                            CERTIFICATE

11

12  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
13  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
    ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
14  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.

15

16

17  THERESA A. LANZA, RPR, CSR       6-30-08
    OFFICIAL COURT REPORTER          DATE

18

19

20

21

22

23

24                                  EXHIBIT __26__

25                                    PAGE __403__

TUESDAY, JUNE 24, 2008            TRIAL DAY 17, AFTERNOON SESSION

# EXHIBIT 27

Isaac and Angela Larian
Net Worth - As of March 14, 2005

**Assets**

| | |
|---|---|
| Cash | 400,000 |
| Marketable Securities | 34,000,000 |
| Accounts Receivable* | 98,000,000 |
| Notes Receivable | 3,000,000 |
| Retirement Accounts | 450,000 |
| Limited Partnership (Roscoe Property) | ? |
| Residence | 12,000,000 |
| S-Corp - MGA Entertainment | 1,200,000,000 |
| Total Assets | 1,347,850,000 |

**Liabilities**

| | |
|---|---|
| Real Estate | 900,000 |
| Property Taxes Payable | 17,000 |
| Total Liabilities | 917,000 |
| Total Net Worth | 1,346,933,000 |

*Monies held in MGA cash accounts to be distributed in 2005

CONFIDENTIAL - ATTORNEYS' EYES ONLY

(4 PGS)
Exhibit no. 4947
Date: 3/26/08
Larian, I. Pyburn

EXHIBIT 27
PAGE 404   MGA 3787275

4947.1

EX 4947-0001

ISAAC AND ANGELA LARIAN
List of Assets
2006

**ASSETS**
Cash

| | | Checking | | |
|---|---|---|---|---|
| | | Savings | | |

Marketable Securities

| | | | | |
|---|---|---|---|---|
| Bernstein - Isaac GRAT Investments | $ | 15,249,332 | 31-May-06 | |
| Bernstein - Angela GRAT Investments | $ | 15,235,816 | 31-May-06 | |
| Bernstein - Larian Family Trust Investments | $ | 17,440,877 | 31-May-06 | |
| Bernstein - Isaac Living Trust Investments | $ | 3,273 | 31-May-06 | |
| Bernstein - Angela Living Trust Investments | $ | 3,273 | 31-May-06 | |
| Bear Stems - Angela GRAT | $ | 19,067,735 | 30-Jun-06 | |
| Bear Stems - Larian Living Trust | $ | 26,597,931 | 30-Jun-06 | |
| Bear Stems - Isaac GRAT | $ | 19,215,632 | 30-Jun-06 | |
| JPMorgan - Isaac GRAT Investments | $ | 13,789,314 | 30-Jun-06 | |
| JPMorgan - Angela GRAT Investments | $ | 13,789,314 | 30-Jun-06 | |
| Retirement Accounts - 401K | $ | | | |
| Residences | $ | 12,000,000 | | |
| Toybox LLC | $ | 10,636,470 | Pro rata share of investment | |
| 16300 Roscoe Boulevard LLC | $ | 8,795,650 | Pro rata share of investment | |
| MGA Entertainment, Inc. | $ | 1,636,380,000 | Pro rata share of investment | |
| Zapf Creation Gmbh | $ | 8,199,336 | | |

**TOTAL ASSETS**   $   1,816,403,953

**LIABILITY**

| | | | |
|---|---|---|---|
| Income tax liability | $ | 7,200,000 | |
| Other tax liability | $ | 120,000 | |
| Mortgage | $ | 1,000,000 | |

**TOTAL LIABILITY**   $   8,320,000

**NET ASSETS**   $   1,808,083,953

_Ownership in MGA Entertainment, Inc._

| | |
|---|---|
| Larian Family Trust | 0.18% |
| Isaac Larian | 9.85% |
| Angela Larian | 9.85% |
| Isaac Larian GRATS | 26.97% |
| Angela Larian GRATS | 26.97% |
| | 81.92% |

_Ownership in Toybox LLC_

| | |
|---|---|
| Isaac Larian GRATS | 40.91% |
| Angela Larian GRATS | 40.91% |
| | 81.82% |

EXHIBIT _27_

PAGE _405_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3787276

_4947.2_
EX 4947-0002

*Ownership in 16300 Roscoe Boulevard, LLC*
Larian Family Trust                                      81.82%

*Ownership in Zapf*
Shares outstanding                           5,000,000
Percentage ownership                         16.36%
Current Value                                € 7.85   as of 8/24/06
Current Value                                $10.02  as of 8/24/06  - Canda

EXHIBIT __**27**__

PAGE __**406**__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3787277

*4947.3*

ISAAC AND ANGELA LARIAN
List of Assets
2007

**ASSETS**

Cash

| | | | | |
|---|---|---|---|---|
| | Checking | $ | | |

Marketable Securities

| | | | | |
|---|---|---|---|---|
| Larian Living Trust | | | | |
| | Bear Steams | $ | 29,493,409 | Sep-07 |
| | UBS | $ | 27,927,481 | Oct-07 |
| | Bemstein | $ | 19,336,239 | Sep-07 |
| Qualified Annuity Trusts | | | | |
| | Bear Steams | $ | 41,744,764 | Sep-07 |
| | JP Morgan | $ | 33,314,083 | Oct-07 |
| | UBS | $ | 17,749,867 | Oct-07 |
| | Bemstein | $ | 35,043,046 | Sep-07 |

| | | | |
|---|---|---|---|
| Retirement Accounts - 401K | $ | | |
| Notes Receivable | $ | 22,236,433 | Oct-07 |
| Residences | $ | 20,000,000 | Oct-07 |
| Toybox LLC | $ | 13,909,230 | Pro rata share of investment |
| MGA North LLC | $ | 31,540,000 | Pro rata share of investment |
| 16300 Roscoe Boulevard LLC | $ | 8,795,650 | Pro rata share of investment |
| MGA Entertainment, Inc. | $ | 1,636,380,000 | Pro rata share of investment |
| Zapf Creation Gmbh | $ | 11,258,302 | Sep-07 |

**TOTAL ASSETS**          $   1,948,728,505

**LIABILITY**

| | | |
|---|---|---|
| Income tax liability | $ | |
| Bank Loans | $ | 30,390,290 |
| Mortgage | $ | 900,000 |

**TOTAL LIABILITY**          $   31,290,290

**NET ASSETS**          $   1,917,438,215

| | |
|---|---|
| Ownership in MGA Entertainment, Inc. | 81.82% |
| Ownership in MGA North LLC | 63.00% |
| Ownership in Toybox LLC | 81.82% |
| Ownership in 16300 Roscoe Boulevard LLC | 81.82% |
| Ownership in Zapf | 20.89% |

OCTOBER 25, 2007

EXHIBIT _27_

PAGE _407_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3787279

4947-4
EX 4947-0004

# EXHIBIT 28

1  Hon. Edward A. Infante (Ret.)
2  JAMS
   Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

12  CARTER BRYANT, an individual,        CASE NO. CV 04-09049 SGL (RNBx)
                                         JAMS Reference No. 1100049530
13              Plaintiff,

14        v.                             Consolidated with
                                         Case No. CV 04-09059
15  MATTEL, INC., a Delaware corporation, Case No. CV 05-2727

16              Defendant.               ORDER GRANTING IN PART AND
                                         DENYING IN PART MGA PARTIES'
17                                       MOTION TO QUASH SUBPOENAS;
                                         GRANTING IN PART AND DENYING
18                                       IN PART MATTEL'S COUNTER
                                         MOTION TO COMPEL
19
   CONSOLIDATED WITH
20  MATTEL, INC. v. BRYANT and
   MGA ENTERTAINMENT, INC. v. MATTEL,
21  INC.

22                        I. INTRODUCTION

23      On December 21, 2007, MGA Entertainment, Inc. ("MGA"), Isaac Larian, MGA

24  Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively, the "MGA

25  Parties") submitted their motion for an order quashing subpoenas issued by Mattel, Inc.

26  ("Mattel") to non-parties ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

5-7-08

EXHIBIT 28

PAGE 408

1    Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells

2    Fargo, or in the alternative, a protective order limiting the scope of those subpoenas. On

3    December 27, 2007, the MGA Parties submitted a supplemental brief to add to their motion to

4    quash three more subpoenas Mattel served on the Isaac E. Larian Qualified Annuity Trust 2004,

5    the Isaac and Angela Larian Family Trust, and the Isaac and Angela Larian Trust.  On January 18,

6    2008, Mattel submitted an opposition and counter motion to compel production of documents

7    responsive to the subpoenas and a privilege log.  On February 7, 2008, the MGA Parties

8    submitted a reply, and on February 15, 2008, Mattel submitted a reply in support of its counter

9    motion.  The parties were directed to meet and confer further regarding the motions, which has

10    been completed.  <u>See</u> Joint Report dated March 28, 2008.  Despite the additional meet and confer

11    sessions, the parties were unable to resolve or narrow their disputes regarding the instant motions.

12    Pursuant to Paragraph 5 of the Stipulation and Order for Appointment of a Discovery Master, the

13    Discovery Master finds it appropriate to take the motions under submission for decision without

14    oral argument.

15                          II. BACKGROUND

16        Ernst & Young and Deloitte & Touche are MGA's auditors.  Mattel's subpoenas to MGA's

17    auditors seek production of documents:  (1) relating to MGA's annual audits and the identity of

18    other auditors; (2) indicating or calculating MGA's net worth and the value of MGA's goodwill

19    and intellectual property; (3) relating to Bratz; and (4) relating to the legal dispute between Isaac

20    and Farhad Larian.

21        Wachovia lent money to MGA to fund the creation and/or development of Bratz and to

22    acquire Little Tikes.  Mattel's subpoena to Wachovia seeks documents related to:  (1) the loans

23    Wachovia extended to MGA; (2) the legal dispute between Isaac and Farhad Larian; (3) MGA's

24    net worth, goodwill, and intellectual property; (4) Bratz; and (5) this action.

25        ConsumerQuest is a marketing research firm that performed market research and analysis

26    for MGA products, including Bratz.  Mattel's subpoena to ConsumerQuest seeks documents

27

28

EXHIBIT __28__

PAGE __409__

1    related to: (1) Bratz and other products involved in this action; (2) consumer research and

2    marketing work done regarding other MGA products underlying the parties' claims; and (3)

3    communications with MGA, Isaac Larian, and other parties relevant to this action, such as Carter

4    Bryant or other former Mattel employees and vendors.

5         Wells Fargo is and has been MGA's bank during periods relevant to this action.  Mattel's

6    subpoena to Wells Fargo contains five requests, seeking MGA's banking and financial documents,

7    including account information, cancelled checks, monthly and daily transactional history, and

8    bank statements.

9         Moss Adams is and has been Isaac Larian's accountant during the relevant period.  The

10   subpoena to Moss Adams seeks: (1) accounting records, tax records, and schedules for MGA,

11   Isaac Larian, Isaac Larian's trusts and Farhad Larian; (2) documents indicating or calculating

12   MGA's and Isaac Larian's net worth; (3) documents relating to the value of MGA's intellectual

13   property and goodwill; (4) documents relating to Bratz and this action; (5) evidence of payments

14   from MGA or Isaac Larian to Bryant and other Mattel employees; and (6) Isaac Larian's

15   involvement with other trust or institutions in which he has an interest.

16        Mattel also served subpoenas on several of Isaac Larian's trusts.  Mattel's subpoenas to

17   Isaac Larian's trusts seek: (1) documents related to the trusts' organization, including the

18   identities of its trustees and beneficiaries; (2) the trusts' tax records; (3) documents indicating the

19   trusts' assets; and (4) information related to other trusts in which Larian has an interest.

20        All of the non-parties objected to Mattel's subpoenas on the grounds that, *inter alia*, they

21   are overly broad, unduly burdensome and seek irrelevant and/or duplicative information.  Park

22   Decl., Exs. 15-26.

23        The MGA Parties contend that Mattel's subpoenas are overly broad, unduly burdensome,

24   and cumulative and duplicative of discovery Mattel has already sought and received.  More

25   specifically, the MGA Parties raise the following objections to each of the four categories of

26   documents Mattel seeks.  First, the MGA Parties contend that Mattel's subpoenas essentially seek

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SOL (RNBx)

3

EXHIBIT  28

PAGE  410

1  unfettered access to MGA and Isaac Larian's financial histories for a nine-year period from 1999

2  to the present, and that there is no claim or defense at issue that could possibly justify the breadth

3  and intrusiveness of the subpoenas.  Further, the MGA parties contend that they have already

4  produced vast amounts of relevant financial documents in response to Mattel's discovery requests.

5  To make their point, the MGA Parties prepared a detailed chart that identifies Mattel's subpoenas

6  requests to the non-parties and for each such request, identifies an exemplary list of duplicative

7  document requests and/or interrogatories that Mattel served on Carter Bryant and/or the MGA

8  Parties.  See Decl. of Amy Park in Support of MGA Defendants' Motion to Quash, Ex. 28.

9        Second, the MGA Parties contend that Mattel's subpoenas are overbroad in that they call

10  for production of the financial records of every person who ever did any work for MGA or Isaac

11  Larian, and every conceivable relative of Isaac Larian.  The MGA Parties contend that the private

12  financial records of these non-parties are not relevant to the case, and that Mattel's subpoenas

13  constitute an abuse of the non-party discovery process.

14        Third, the MGA Parties contend that Mattel has already sought and received documents

15  relating to the litigation between Isaac Larian and his brother Farhad Larian from multiple

16  sources.  More specifically, the MGA Parties contend that Mattel has sought and received

17  relevant documents from Isaac and Farhad Larian, as well MGA and at least two law firms

18  involved in the litigation between the Larian brothers.

19        Fourth, the MGA Parties object to the various requests for all documents obtained from

20  MGA or Isaac Larian relating to Bratz, other MGA products or Carter Bryant.  Although the

21  MGA Parties acknowledge that some of the requested documents may be relevant, the MGA

22  Parties contend that the document requests are objectionable because Mattel has already requested

23  and received well over three million pages of relevant documents from the MGA Parties. The

24  MGA Parties also contend that Mattel's requests are so overly broad that it is impossible to

25  discern what specific, relevant, non-duplicative documents Mattel is requesting from the non-

26  parties.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT **28**

PAGE **411**

1    In contrast, Mattel contends that all of the subpoenas seek documents that are relevant to

2    several issues in the case, including, but not limited to, the creation and development of Bratz,

3    Mattel's damages claim (including Mattel's claims for punitive damages and disgorgement),

4    Mattel's claim against MGA for commercial bribery, MGA's damages claims, the value of MGA's

5    goodwill and intellectual property, and the credibility and bias of MGA and Isaac Larian, as well

6    as other potential witnesses.  Mattel contends that it should be permitted to pursue discovery from

7    non-parties, and not have to rely upon the good faith of MGA and Isaac Larian to comply with

8    their discovery obligations.  Mattel also contends that it should be permitted to pursue discovery

9    from the non-parties in order to guard against the possibility of spoliation of evidence and/or

10    document tampering.

11    Furthermore, Mattel contends that the MGA Parties have not shown that they possess,

12    much less have produced, all of the documents Mattel is seeking from the non-parties.  More

13    specifically, Mattel contends that the MGA Parties have failed to produce the following

14    documents that Mattel has requested from the various non-parties:  documents related to Isaac

15    Larian's net worth and the value of MGA's intellectual property and goodwill; MGA's tax records;

16    Wells Fargo banking records for MGA; documents related to payments to by MGA, Larian, or the

17    Larian trusts to Bryant and other Mattel employees and vendors; documents from the Larian v.

18    Larian litigation; documents related to the Larian trusts, including any documents showing Isaac

19    Larian's interest in, payments received from, or transfer to those trusts; and documents regarding

20    the 1999-2000 and 2006 loans MGA received from Wachovia, including what documents MGA

21    and Larian gave to Wachovia to justify the loans.  Furthermore, Mattel contends that MGA's

22    descriptions of the documents it has produced are vague, inaccurate or misleading.

23    Mattel also contends that the MGA Parties' burden objection is unsubstantiated in that

24    none of the subpoenaed parties has filed a declaration in opposition to the motion or offered any

25    specific evidence that the subpoenas impose an undue burden.  Rather, Mattel represents that

26    some of the subpoenaed parties were already in the process of preparing documents for

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT *28*

PAGE *412*

1  production or meeting and conferring with Mattel when MGA filed the instant motion.  Corey

2  Decl., ¶¶7-9.  Furthermore, Mattel points out that it has offered to reimburse the non-parties for

3  copying costs and to have its own paralegal and counsel inspect documents gathered.

III. STANDARDS

5      Rule 26, Fed.R.Civ.P., provides that "[p]arties may obtain discovery regarding any matter,

6  not privileged, that is relevant to the claim or defense of any party."  Fed.R.Civ.P. 26(b)(1).  The

7  court shall, however, limit the frequency or extent of use of the discovery methods if the court

8  determines that (i) the discovery sought is unreasonably cumulative or duplicative, or is

9  obtainable from some other source that is more convenient, less burdensome, or less expensive;

10  (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

11  information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

12  benefit, taking into account the needs of the case, the amount in controversy, the parties'

13  resources, the importance of the issues at stake in the litigation, and the importance of the

14  proposed discovery in resolving the issues.  Fed.R.Civ.P. 26(b)(2)(C).

15      Rule 45, Fed.R.Civ.P., requires third parties to produce documents (and reasonably

16  accessible electronically stored information) that are responsive to a subpoena that a party serves

17  on them.  Fed.R.Civ.P. 45(b), (d).  If the subpoenaed documents are relevant and there is good

18  cause for their production, the subpoena is enforced unless the documents are privileged or the

19  subpoena is unreasonable, oppressive, annoying or embarrassing.  U.S. v. American Optical Co.,

20  39 F.R.D. 580, 583 (N.D. Cal. 1966).

21      Rule 45(c)(1), Fed.R.Civ.P., requires a party serving a subpoena to take reasonable steps

22  to avoid imposing undue burden or expense on a person subject to the subpoena.  Furthermore,

23  "[t]he issuing court must enforce this duty and impose an appropriate sanction--which may

24  include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply."

25  Id. Rule 45 also provides that the issuing court must quash or modify a subpoena under certain

26  circumstances, including among others, when the subpoena requires the disclosure of privileged

27

28

EXHIBIT *28*

PAGE *413*

1  or other protected matter or subjects a person to undue burden.  Fed.R.Civ.P. 45(c)(3)(A)(iii) and

2  (iv).  A motion to quash a subpoena or for a protective order as to that subpoena may be made by

3  a party-opponent.  See Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C. D. Cal. 2005) (granting

4  defendants' motion to quash subpoena).

5         In evaluating whether a subpoena imposes an undue burden, Rule 45(c)(3)(A),

6  Fed.R.Civ.P., "'requires the court to weigh the burden to the subpoenaed party against the value of

7  the information to the serving party,' . . . and in particular requires the court to consider: 'such

8  factors as relevance, the need of the party for the documents, the breadth of the document request,

9  the time period covered by it, the particularity with which the documents are described and the

10  burden imposed.'"  Moon, 232 F.R.D. at 637, quoting Travelers Indem. Co. v. Metropolitan Life

11  Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005).  Another important factor in evaluating burden is

12  whether the subpoenaing party can more easily and inexpensively obtain the documents from

13  another party, rather than from the nonparty.  Moon, 232 F.R.D. at 638.

14                          IV. DISCUSSION

15  A. Financial Information re MGA and Isaac Larian

16         Mattel has subpoenaed five different entities that perform financial services for MGA or

17  Isaac Larian:  Wells Fargo, Wachovia, Ernst & Young, Deloitte & Touche and Moss Adams.

18  Although Mattel's requests encompass documents that are relevant to several issues in the case,

19  the requests are unduly burdensome, exceedingly overbroad and unreasonably cumulative of

20  other discovery Mattel has already sought and received in this case.

21         For example, the subpoena to Wells Fargo demands production of the following broad

22  categories of financial documents: (1) "[a]ll DOCUMENTS REFERRING OR RELATING TO

23  MGA from January 1, 1999 to the present, inclusive"; (2) "[a]ll DOCUMENTS REFERRING OR

24  RELATING TO the ACCOUNT maintained by YOU numbered 9600112551, including but not

25  limited to statements, monthly statements, annual statements, daily transaction history reports,

26  monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature

27

28

Bryant v. Mattel, Inc.,                                                                                    7
CV-04-09049 SOL (RNBx)

EXHIBIT _28_

PAGE _414_

1   cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNT, created

2   between January 1, 1999 and the present, inclusive"; (3) "[a]ll DOCUMENTS REFERRING OR

3   RELATING TO" any other accounts created between January 1, 1999 and the present, inclusive;

4   (4) DOCUMENTS sufficient to show the account number for all accounts maintained in the name

5   of, for the benefit of or concerning MGA between January 1, 1999 and the present, inclusive; (5)

6   and "[a]ll DOCUMENTS showing or relating to any account(s) held by MGA or any account(s)

7   on which MGA has signatory authority at any other financial institution."

8       The breadth of the requests to Wells Fargo is compounded by the fact that "MGA" is

9   defined to include MGA Entertainment Inc., any of its current or former employees, officers,

10   directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates,

11   predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf.

12   Furthermore, the phrase "REFERRING OR RELATING TO" is defined expansively as

13   "reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing

14   or indicating in any way." Park Decl., Ex. 11.

15       The subpoena to Isaac Larian's tax accounting firm, Moss Adams, is similarly overbroad.

16   For example, Mattel seeks "[a]ll DOCUMENTS RELATING TO MGA [and] ISAAC LARIAN,

17   including without limitation, accounting records, tax returns and schedules . . . and drafts thereof,

18   W-2s, work papers, worksheets, payroll records, financial statements (audited and unaudited), pro

19   formas, budgets, account information and account statements." Park Decl., Ex. 12. The phrase

20   "RELATING TO" in the subpoena to Moss Adams is drafted in the broadest possible manner to

21   include "referencing, referring to, constituting, evidencing, pertaining to, mentioning, supporting,

22   contradicting, negating, bearing on, touching on, containing, embodying, reflecting, identifying,

23   stating, dealing with, concerning, commenting on, summarizing, responding to, relating to,

24   describing or discussing in any way." Id. As another example, Mattel's subpoena to Moss Adams

25   includes a request for all documents relating to any non-payroll payment or transfer of value from

26   MGA or Isaac Larian to any "FORMER MATTEL EMPLOYEE." Mattel does not identify any

27

28

8

EXHIBIT **28**

PAGE **415**

1  of these "FORMER MATTEL EMPLOYEES" or otherwise limit the request to any specific time

2  period.

3      The subpoenas to Deloitte & Touch and Ernst & Young are similarly unrestrained in

4  scope, seeking the following categories of financial documents:  all documents constituting or

5  relating to MGA's annual audits, including without limitation accounting records, audit programs,

6  audit reports and drafts thereof, tax returns, work papers, worksheets, payroll records, financial

7  projections, pro formas and budgets, from the period beginning January 1, 1999 to the present; all

8  documents indicating or calculating MGA's net worth; and all documents indicating the value of

9  MGA's intellectual property or goodwill.  Park Decl., Exs. 7-8.

10     With respect to Wachovia, Mattel seeks the following categories of financial documents:

11  all documents relating to any loan agreement that Wachovia entered into with MGA since January

12  1, 1999, including drafts of any agreements; all documents that MGA or any other person

13  provided to Wachovia for purposes of entering into any loan agreement between Wachovia and

14  MGA; all documents that were in the "three (3) boxes of loan documents" that Wachovia referred

15  to in a November 15, 2005 letter to Robert G. Wilson, Esq.; all documents relating to any loan

16  agreement entered into by MGA, or sought or requested by MGA, during the time period January

17  1, 1999 and December 31, 2000, inclusive; all communications between Wachovia and MGA

18  during the time period January 1, 1999 and December 31, 2000, inclusive; all documents

19  indicating or showing a calculation of MGA's net worth or value; all documents indicating or

20  calculating the value of MGA's intellectual property or goodwill; all documents relating to Bratz,

21  including without limitation those obtained from MGA, since January 1, 1999; and documents

22  sufficient to identify any other MGA lender or person who extended or was requested to extend a

23  line of credit to MGA since January 1, 1998.  Park Decl., Ex. 9.  Mattel contends that the loan

24  documents will contain information about the timing and creation of Bratz.  However, all of the

25  requests for financial documents, except for portions of Request Nos. 4 and 5, are much broader,

26

27

28

EXHIBIT _28_

PAGE _416_

1   seeking everything relating to any loan between MGA and Wachovia from 1999 through the

2   present.

3         Furthermore, to the extent any of Mattel's requests for financial information encompass

4   relevant materials, the requests remain unreasonably duplicative and cumulative of discovery

5   Mattel has already sought and obtained from MGA and Isaac Larian (with the exception of

6   Request Nos. 4 and 5 in the Wachovia subpoena). MGA has produced the following: audited and

7   unaudited quarterly and annual profit and loss statements; audited and unaudited quarterly and

8   annual statements; annual reports; various MGA financial reports; various financial documents

9   relating to Veronica Marlow; documents showing royalty payments to Carter Bryant; documents

10   showing MGA's sales, returns and costs of goods sold for each month, by SKU, since 2001;

11   documents showing MGA's promotional advertising and media expenditures, including MGA's

12   internal allocation of those expenditures by brand and/or product; documents showing MGA's

13   amortization and depreciation of certain capital assets and expenditures; documents showing

14   MGA's monthly general ledger entries aggregated by account, including income and expense

15   accounts, reserves and liabilities; and documents sufficient to explain MGA's various accounts as

16   presently and historically maintained in MGA's books and records. Park Decl., ¶3.

17         The MGA Parties also represent that Isaac Larian recently produced over 50,000 pages of

18   documents which included, among other things, documents showing his net worth; his gross

19   income, wages, dividend income, interest income, and other income; his banks and bank

20   accounts; and various other financial documents. Park Decl., ¶2. Thus, Mattel has received

21   ample financial documents. Mattel has also deposed MGA, Isaac Larian, and other witnesses

22   regarding relevant financial information. In view of the discovery Mattel has already sought and

23   received, Mattel's over-reaching, broad subpoenas to the various non-parties seeking more

24   financial information regarding MGA and Isaac Larian are unjustified under Rule 26(b)(2),

25   Fed.R.Civ.P.

26   //

27

28

EXHIBIT **28**

PAGE **417**

B. Financial Information re Non-Parties

Mattel's subpoenas also seek financial documents regarding numerous non-parties, including everyone who has ever worked for or represented MGA or Isaac Larian, and every relative of Isaac Larian.  Once again, although the subpoenas encompass documents that are potentially relevant to Mattel's claims and defenses, the subpoenas are overly broad, sweeping in vast amounts of documents that have little to no relevance.  For example, Mattel's subpoenas to Moss Adams and the various trusts include requests for all formation documents, all tax returns, any other tax-related documents from 1999 to the present, and documents relating to the operation of the trust, including every trustee and beneficiary of each trust, every disbursement by each trust, every asset owned by each trust, and every liability of each trust.  Mattel has not shown that all of the requested documents are relevant to the claims and defenses in the case.

Mattel's subpoenas to the non-parties are also unreasonably duplicative and cumulative of discovery Mattel has already sought and received in this case.  Furthermore, to the extent Mattel's subpoenas might include requests that are not unreasonably duplicative and/or cumulative of other discovery requests, the probative value of the information Mattel seeks is substantially outweighed by the burden of production, especially in light of the privacy interests of the many non-parties who would be affected.[1]

C. Information re Litigation Between Isaac and Farhad Larian

All of Mattel's subpoenas to the non-parties, except Wells Fargo, include a request for all documents relating to any litigation between Isaac Larian and Farhad Larian.  These requests are unreasonably duplicative and cumulative of many requests Mattel previously served on Isaac Larian, MGA, Farhad Larian, Stern & Goldberg and Kaye Scholer.  Mattel has sought and received substantial discovery regarding the litigation between Isaac and Farhad Larian.  See

---

[1]  In its reply brief, Mattel contends that Isaac Larian is the trustee of all of the trusts that Mattel has subpoenaed, and therefore he was required, but purportedly failed, to search for and produce trust documents when responding to the discovery requests directed to him.  These issues are beyond the scope of the present motion, and will not be addressed herein.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT  28

PAGE  418

1   Order Re Mattel's Motions to Compel Farhad Larian, Kaye Scholer and Stern & Goldberg to

2   Produce Documents dated January 25, 2008.  Mattel has not shown that the non-parties possess

3   any relevant, non-privileged materials beyond what Mattel has already sought and received from

4   other sources.  Furthermore, the burden and expense of complying with the non-party subpoenas

5   substantially outweigh their likely benefit under Rule 26(b)(2), Fed.R.Civ.P.

6   D. Documents re MGA's Products or Carter Bryant

7       Mattel's subpoenas to the non-parties include requests for documents relating to Carter

8   Bryant, Bratz and other MGA products or work performed for MGA.  Although this category of

9   requests encompasses documents that are potentially relevant to the claims and defenses in the

10  case, the requests are nevertheless objectionable because they are overly broad and not tailored to

11  exclude irrelevant, duplicative or unreasonably cumulative information.  Mattel has taken vast

12  amounts of discovery regarding Carter Bryant, Bratz, and other MGA products from several

13  different sources.  Mattel has not shown that the non-parties possess any relevant, non-privileged

14  materials beyond what Mattel has already sought and received from other sources.  Furthermore,

15  the burden and expense of complying with the non-party subpoenas substantially outweigh their

16  likely benefit under Rule 26(b)(2), Fed.R.Civ.P.

17                          V. CONCLUSION

18      For the reasons set forth above, the MGA Parties' motion to quash, or in the alternative for

19  a protective order, is granted, except with respect to the following requests:

20      • Wachovia subpoena, Request No. 4, limited to "all documents relating to any loan

21          agreement entered into by MGA, or sought or requested by MGA, during the time

22          period January 1, 1999 and December 31, 2000, inclusive"; and Request No. 5,

23          limited to "all communications between YOU and MGA during the time period

24          January 1, 1999 and December 31, 2000, inclusive" regarding any loan agreement

25          entered into by MGA, or sought or requested by MGA, during the time period

26          January 1, 1999 and December 31, 2000, inclusive.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              12

EXHIBIT __28__

PAGE __419__

1   Mattel's counter motion to compel is granted in part and denied in part in accordance with the

2   Court's ruling on the MGA Parties' motion to quash, or in the alternative for a protective order, as

3   set forth immediately above.  Wachovia shall produce documents responsive to Request Nos. 4

4   and 5 as set forth above on or before May 16, 2008.

5         Nothing in this Order is intended to authorize or preclude Mattel from seeking documents

6   from the non-parties identified herein as part of Phase 2 discovery, if appropriate.

7         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

8   Master, the MGA Parties shall file this Order with the Clerk of Court forthwith.

9

10   Dated: May 7, 2008                       /S/

11                         HON. EDWARD A. INFANTE (Ret.)

12                           Discovery Master

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

13

EXHIBIT __28__

PAGE __420__

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 7, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MGA PARTIES' MOTION TO QUASH SUBPOENAS; GRANTING IN PART AND DENYING IN PART MATTEL'S COUNTER MOTION TO COMPEL in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 7, 2008, at San Francisco, California.

Anthony Sales

EXHIBIT __28__

PAGE __421__

# EXHIBIT 29

1   DALE M. CENDALI (admitted *pro hac vice*)
    DIANA M. TORRES (S.B. #162284)
2   JAMES P. JENAL (S.B. # 180190)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, CA 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5   Email:     jjenal@omm.com

6   PATRICIA GLASER (S.B. #55668)
    CHRISTENSEN, GLASER, FINK,
7   JACOBS, WEIL & SHAPIRO, LLP
    10250 Constellation Boulevard, 19th Floor
8   Los Angeles, CA 90067
    Telephone: (310) 553-3000
9   Facsimile: (310) 557-9815

10  Attorneys for MGA Entertainment, Inc.

RECEIVED

FEB 2 1 2007

11

12

13  UNITED STATES DISTRICT COURT
    CENTRAL DISTRICT OF CALIFORNIA
14  EASTERN DIVISION

15

16  CARTER BRYANT, an individual,      Case No. CV 04-09049 SGL (RNBx)
                                        (consolidated with CV 04-9059 & 05-2727)
              Plaintiff,
17                                      **DISCOVERY MATTER**
         v.
18                                      **MGA ENTERTAINMENT, INC.'S**
    MATTEL, INC., a Delaware           **OPPOSITION TO MATTEL, INC.'S**
19  Corporation,                        **MOTION TO COMPEL PRODUCTION**
                                        **OF DOCUMENTS AND**
              Defendant.                **INTERROGATORY ANSWERS**
20

21  CONSOLIDATED WITH                   Hearing date:    March 5, 2007
    MATTEL, INC. v. BRYANT and          Hearing time:    8:00 a.m.
22  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
23

24

25

26                                                      EXHIBIT   29

27                                                      PAGE      422

28

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

1  DALE M. CENDALI (admitted *pro hac vice*)
   DIANA M. TORRES (S.B. #162284)
2  JAMES P. JENAL (S.B. # 180190)
   O'MELVENY & MYERS LLP
3  400 South Hope Street
   Los Angeles, CA 90071-2899
4  Telephone: (213) 430-6000
   Facsimile: (213) 430-6407
5  Email:     jjenal@omm.com

6  PATRICIA GLASER (S.B. #55668)
   CHRISTENSEN, GLASER, FINK,
7  JACOBS, WEIL & SHAPIRO, LLP
   10250 Constellation Boulevard, 19th Floor
8  Los Angeles, CA 90067
   Telephone: (310) 553-3000
9  Facsimile: (310) 557-9815

RECEIVED

FEB 21 2007

10  Attorneys for MGA Entertainment, Inc.

11

12                 UNITED STATES DISTRICT COURT
13                CENTRAL DISTRICT OF CALIFORNIA
14                      EASTERN DIVISION

15

16  CARTER BRYANT, an individual,      | Case No. CV 04-09049 SGL (RNBx)
                 Plaintiff,            | (consolidated with CV 04-9059 & 05-2727)
17        v.                           |
                                       | **DISCOVERY MATTER**
18  MATTEL, INC., a Delaware           |
    Corporation,                       | **MGA ENTERTAINMENT, INC.'S**
19               Defendant.            | **OPPOSITION TO MATTEL, INC.'S**
                                       | **MOTION TO COMPEL PRODUCTION**
20                                     | **OF DOCUMENTS AND**
                                       | **INTERROGATORY ANSWERS**
21  CONSOLIDATED WITH                  |
    MATTEL, INC. v. BRYANT and         | Hearing date:  March 5, 2007
22  MGA ENTERTAINMENT, INC. v.         | Hearing time:  8:00 a.m.
    MATTEL, INC.                       |
23

24

25

26                                       EXHIBIT __29__

27                                       PAGE __423__

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................2

II.   FACTS AND PROCEDURAL BACKGROUND .........................................3

III.  ARGUMENT.................................................................... 10

      A.   Mattel's Motion Is Unnecessary And Should Be Denied With
           Respect To The Majority Of Documents Specifically Identified
           Therein................................................................ 10

      B.   Mattel's Motion With Respect To The Remaining Requests
           Should Be Denied Because They Seek Documents Not Relevant
           To This Litigation, Documents Covered By A Protective Order,
           Or Documents Of The Type Mattel Itself Has Refused To
           Produce ............................................................... 16

      C.   Mattel Is Not Entitled To Information Concerning Bryant's
           Attorneys' Fees........................................................ 24

      D.   Mattel Is Not Entitled To Irrelevant, One-Sided Discovery .............. 24

      E.   Mattel Is Not Entitled To Expert Discovery At This Time................ 27

      F.   Mattel's Assertions That MGA Has Withheld Documents Until
           Mattel Receives Them From Other Sources And/Or Because Of
           "Evidence" Concerning The Timing Of The Creation And
           Development of "Bratz" Are Without Merit.............................. 28

      G.   Mattel's Motion To Compel Further Interrogatory Responses
           Should Be Denied As Moot.............................................. 31

      H.   If Sanctions Are Warranted, They Are Warranted Against
           Mattel................................................................. 32

IV.   CONCLUSION................................................................ 32

EXHIBIT **29**

PAGE **424**

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

# TABLE OF AUTHORITIES

Page

## CASES

Advanced Modular Sputtering, Inc. v. Superior Court,
132 Cal. App. 4th 826 (2d Dist. 2005)................................................................. 20

Am. Heavy Moving & Rigging Co. v. Robb Techs., L.L.C.,
No. 2:04-CV-00933-JCM (GWF), 2006 U.S. Dist. LEXIS 51276,
(D. Nev. July 24, 2006).................................................................................... 22

Brown Bag Software v. Symantec Corp.,
960 F.2d 1465 (9th Cir.) .................................................................................. 22

Computer Economics, Inc. v. Gartner Group Inc., 50 F. Supp. 2d 980
(S.D. Cal. 1999) ............................................................................................. 19

Intersong-USA, Inc. v. CBS, Inc., 1 Fed. R. Serv. 3d 609 (S.D.N.Y.
1985)............................................................................................................. 20

Vermont Microsystems, Inc. v. Autodesk, Inc., 88 F.3d 142 (2d Cir.
1996) ............................................................................................................ 19

## STATUTES

Cal. Civ. Code, § 3426.1(d) ................................................................................ 22

Fed. R. Civ. Proc. 26 ................................................................................... 21, 22

Fed. R. Civ. Proc. 33(b) ..................................................................................... 31

Fed. R. Civ. Proc. 6(a)........................................................................................ 31

EXHIBIT _29_

PAGE _425_

1    This memorandum of points and authorities is filed in support of MGA

2  Entertainment, Inc.'s ("MGA") Opposition to Mattel, Inc.'s ("Mattel") motion to

3  compel production of documents and interrogatory answers in the case originally

4  captioned *Mattel, Inc. v. Bryant*, Case No. CV 04-9059 SGL (RNBx).

5  **I.    INTRODUCTION**

6    Mattel's motion to compel is a disingenuous attempt to convince this Court

7  that MGA is withholding relevant documents and refusing to produce documents

8  until Mattel discovers the existence of such documents from other sources.  In

9  actuality, and contrary to Mattel's assertion, MGA long ago produced volumes of

10  documents responsive to Mattel's requests and, indeed, produced far more

11  documents of substance than has Mattel.[1]  In response to a letter from Mattel on

12  January 7, 2007, in which Mattel complained about documents produced in August

13  2004, May 2005, and September 2006, MGA agreed to address the vast majority of

14  the issues Mattel raises in this motion.  Before the date for MGA's response,

15  however, Mattel filed the instant motion to compel.  MGA continued its production

16  regardless and, as of the date of this opposition, will have produced virtually all, if

17  not all, of the documents at issue.

18    The real issues raised by Mattel's motion, however, are those about which

19  Mattel makes only passing reference: (1) whether Mattel is entitled to unfettered

20  access to all of MGA's financial records, regardless of whether they pertain to any

21

22  [1] Although Mattel claims to have produced some 60,000 pages of documents, it neglects
to mention that 32,000 pages of those documents were produced on January 5, 2007, and
23  further neglects to mention that almost all of those documents are copies of Mattel product
catalogues, incomprehensible and, by Mattel's own admission, incomplete phone records,
24  and single page photographs of apparently every Barbie doll Mattel has ever produced,
including "Shrek Barbie," "Queen of England Barbie," "Classical Goddess Barbie," and
25  catalogs of Barbie's from the 1960's.  Additionally, a large number of the documents in
Mattel's January 2007 production are duplicative of documents within the very same
26  production, and several images from the "My Scene," "DIVA STARZ," and "Little
Mommy" lines are recurrent with unsubstantial alteration.  (*See* Declaration of Antonio
27  De Anda ¶ 2).  Mattel has produced virtually no electronic mail or documents concerning
the origin and development of "My Scene," "DIVA STARZ," or "Flavas," the product
28  lines at issue in MGA's claims.  (*Id.* ¶ 3.)

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

- 2 -

EXHIBIT _29_

PAGE _426_

1   product at issue in this lawsuit; (2) whether Mattel is entitled to unfettered access to

2   MGA's design plans for yet-unreleased "Bratz" products; and (3) whether Mattel is

3   entitled to compel the types of documents from MGA that Mattel itself has refused

4   to produce, such as witness statements made in other legal proceedings and

5   documents in the possession of indirect subsidiaries.  MGA respectfully submits

6   that the answer to each of those questions is no.

7   **II.    FACTS AND PROCEDURAL BACKGROUND**

8          Over the past six weeks, Mattel has papered this Court with thousands of

9   pages of one-sided, incomplete and inaccurate stories about the conduct of MGA

10  and Carter Bryant, whether germane to the issue at hand or not.  MGA and Bryant

11  have tried not to burden the Special Master with the parties' differences on the

12  merits or their differences on discovery disputes prior to the Special Master's

13  appointment.  Indeed, MGA recognizes that the case has changed substantially over

14  the past few months.  But, to convey fully the baselessness of Mattel's latest motion

15  *and Mattel's true objective*, MGA must recount Mattel's prior conduct and the

16  agreements that the parties reached before this calendar year, all of which Mattel

17  now neglects to mention.  As set forth more fully below, Mattel's motion is far

18  more about obtaining access to MGA's financial information unrelated to the

19  products at issue, plans for future product development, and other one-sided

20  discovery, than it is about obtaining better copies of supposedly "illegible"

21  documents and the laundry list of other issues Mattel raises in its motion.

22         In April 2004, three and a half years after Bryant left Mattel's employ, Mattel

23  filed a vaguely worded, five count complaint against him, and him alone.  Two

24  months later, even though the name "MGA" appeared nowhere in its complaint,

25  Mattel served MGA, its most threatening competitor, with an eight page subpoena

26  for 21 categories of documents to be produced, ostensibly, in ten days, without even

27

28

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)
EXHIBIT **21**

PAGE **427**

**H.    If Sanctions Are Warranted, They Are Warranted Against Mattel**

Finally, Mattel argues that it is entitled to sanctions.  As set forth at length above, and contrary to Mattel's assertions, MGA has already produced or is diligently working to produce documents in response to Mattel's requests.  In contrast, Mattel filed this motion without specifically informing the Special Master of the documents it truly seeks to compel.  For that, Mattel should be sanctioned.

## IV.    CONCLUSION

For the reasons set forth above, the Court should deny Mattel's motion to compel and for sanctions.

Dated: February 20, 2007            O'MELVENY & MYERS LLP

By: Diana M. Torres
Attorneys for MGA Entertainment, Inc.

LA2:824135.1

EXHIBIT **29**

PAGE **428**

MGA'S OPPOSITION TO
MATTEL'S MOTION TO COMPEL
CV 04-09049 SGL (RNBX)

# EXHIBIT 30

# FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 31

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

12  CARTER BRYANT, an individual,            CASE NO. CV 04-09049 SGL (RNBx)
                                             JAMS Reference No. 1100049530
13              Plaintiff,

14        v.                                 Consolidated with
                                             Case No. CV 04-09059
15  MATTEL, INC., a Delaware corporation,    Case No. CV 05-2727

16              Defendant.                   **ORDER GRANTING IN PART AND
                                             DENYING IN PART MATTEL'S
17                                           MOTION TO COMPEL PRODUCTION
                                             OF DOCUMENTS BY ISAAC LARIAN;
18                                           DENYING REQUEST FOR
                                             SANCTIONS**
19

20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
21  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
22

23                         I. INTRODUCTION

24        On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production

25  of Documents by Isaac Larian and for Award of Monetary Sanctions." Specifically, Mattel seeks

26  an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First

27  Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                              12-31

EXHIBIT  31
PAGE  441

1   15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199,

2   207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents

3   withheld based on any claimed privilege.  Mattel also seeks an award of sanctions against Larian

4   in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing

5   this motion.  Larian submitted an opposition on December 5, 2007.[1]  Mattel submitted a reply on

6   December 10, 2007.  The matter was heard on December 14, 2007.  Having considered the

7   motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in

8   part and denied in part, and the request for sanctions is denied.

### II. BACKGROUND

9        On June 13, 2007, Mattel propounded its First Set of Requests for Production of

10  Documents and Things to Larian, the CEO and majority owner of MGA.  On August 6, 2007,

11  Larian filed his initial responses and objections.  The parties met and conferred, and on September

12  25, 2007, Larian served supplemental responses and objections.

13       Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the

14  276 Requests.  The parties met and conferred further, and Larian ultimately agreed to provide

15  further responses to 55 of the disputed 87 Requests.  Specifically, Larian agreed to supplement his

16  responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-

17  76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that

18  have not previously been produced."  MGA's Opposition at pp. 1-2.

19       The remaining 32 Requests at issue can be grouped into ten categories:  (1) personal

20  financial data; (2) communications with Mattel employees; (3) statements to the media; (4)

21  telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market

22  research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's

23  arbitration; and (10) MGA Hong Kong and MGA Mexico.

24  //

25

26       [1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should

27  not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim statement of Mattel's position.  The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve Mattel's motion on the merits.

28

EXHIBIT __31__

PAGE __442__

**II. DISCUSSION**

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT ___31

PAGE ___443

he will do so.  Second, Larian's agreement to produce responsive documents is apparently limited to documents from his so-called "personal files."  See Opposition at 2:2-3.

Mattel's counsel "never agreed that Larian could limit his response to the above requests to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his response to documents in Larian's 'personal files.'"  Supp. Decl. of Scott B. Kidman.  Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34, Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding parties' "possession, custody or control."  The limitation is also unworkable because, as Mattel points out, it "would create a situation by which responsive and highly relevant documents might never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and Larian, on the other hand, deems [a] document not to be part of his 'personal files.'"  Reply at p.6.

Market Research for Products Not at Issue:  Request Nos. 79-81

In Request No. 79, Mattel seeks all documents relating to any focus groups relating to Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports.  In his supplemental response, Larian agrees to produce the following documents, subject to his general objections:

> Larian will produce all documents within his possession, custody, or control that relate to focus groups for "MGA contested products" and "Mattel contested products," as those terms are defined in Mattel's First Requests for Production regarding Claims of Unfair Competition, if any, and that have not already been produced, that he discovers in the course of his reasonable search and diligent inquiry, and to which no privilege or other protection applies, including without limitation, the attorney-client privilege or attorney's work product doctrine.

Mattel's Consolidated Separate Statement at pp. 20-21.

In Request No. 80, Mattel seeks all documents relating to any services or work performed by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all videotapes, summaries, notes and reports associated therewith.  In his supplemental response, Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to the request and to which no privilege or other protection applies.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4



EXHIBIT 31
PAGE 444

1    In Request No. 81, Mattel seeks all documents relating to Alaska Momma.  In his
2 supplemental response, Larian agrees to produce all documents relating or referring to Bratz,
3 Angel or Bryant that are responsive to the request and to which no privilege or other protection
4 applies.
5    Mattel contends that the requests are as narrowly tailored as possible to capture relevant
6 information.  More specifically, Mattel contends that Request No. 79 seeks documents that bear
7 directly on the timing of the development of Bratz, as well as MGA's unfair competition claims
8 and Mattel's defense thereto.  Mattel contends that the requested documents may demonstrate that
9 MGA is guilty of copying Mattel's Barbie and My Scene products.
10    Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome.  As an
11 example, Larian points to Request No. 80, which requests all documents relating to any services
12 or work performed by L.A. Focus, regardless of whether that work has any relation to the claims
13 and defenses in the action or any of the products at issue.  Larian similarly contends that Request
14 Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or
15 defense in this case.
16    Mattel's motion to compel Larian to produce all documents responsive to Request No. 79
17 is granted.  The request is reasonably limited in subject matter to Bratz and Angel.  The requested
18 documents are relevant to several issues in the case, including the origin, conception and creation
19 of Bratz. The requested documents are also relevant to the unfair competition claims.  Larian's
20 supplemental response to Request No. 79 is unduly restrictive.  Among other things, the
21 definitions of "contested MGA products" encompass only those products that provide a basis for
22 any claim by MGA against Mattel, and not claims by Mattel against MGA.
23    Mattel's motion to compel Larian to produce all documents responsive to Request Nos.
24 80-81 is denied.  These requests, as drafted, are clearly overbroad because they have no
25 reasonable limitations on subject matter or time.  In particular, the requests are directed to L.A.
26 Focus and Alaska Momma without regard to whether the services or work the companies
27 provided has any relation to any product at issue.
28    Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT _31_

PAGE _445_

documents related to the products at issue: Bratz and Angel. In Mattel's view, Larian's supplemental response is too narrow and "may result in the exclusion of highly relevant documents because the project, concept or design that is the subject of the focus group is deemed not to relate to something then known as Bratz or Angel." However, Larian acknowledges that these types of hypothetical documents would still fall within the narrower scope of production proposed in his supplemental response.

Mattel also contends that it is entitled to all of the requested documents called for by Request No. 80 because they are relevant to credibility and bias, particularly if the documents show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A. Focus used. It is, however, not apparent how deviations from standard procedures would impact credibility or bias.

As to Request No. 81, Mattel contends that the documents showing the relationship between Larian or MGA and Alaska Momma are relevant, even if they do not themselves specifically relate to Bratz, Angel or Bryant. Mattel contends that communications from Larian or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's and Bryant's stories about how and when they came to be introduced. Mattel also contends that documents showing other dealings between Larian or MGA and Alaska Momma are relevant to the issues of bias and credibility. Mattel's supposition about the types of documents that might exist does not justify the type of far-reaching request it has propounded. Request No. 81 is also not limited by either subject matter or time.

Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in accordance with his supplemental responses.

Bryant's Attorney and Niece: Request Nos. 113-115

In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne Wang, a lawyer who represented Bryant in his contract negotiations with MGA. In Request No. 114, Mattel seeks all documents, including without limitation all communications, between

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

1   Larian or MGA and Anne Wang.  In Request No. 115, Mattel seeks documents relating to Brooke

2   Gilbert, Bryant's niece.  In his supplemental responses, Larian agrees to produce documents

3   relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or

4   other protection applies.  Thus, the only issue is whether Larian should be required to produce

5   responsive documents that do not relate to Bratz, Angel or Bryant.

6          Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin

7   and conception of Bratz and the timing thereof.  Mattel also contends that the documents may

8   disclose relevant information regarding Mattel's claims for breach of contract and inducing

9   breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's

10  contractual obligations with Mattel.  Mattel also contends that Larian has failed to carry his

11  burden of demonstrating that the requests are overly burdensome.

12          Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114

13  are inadequate because the limitations on scope may eliminate otherwise relevant documents that

14  do not specifically refer to Bratz, Angel or Bryant.  For example, Mattel contends that

15  communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or

16  Bryant may be relevant to the issues of credibility and bias.

17          Mattel contends that Request No. 115 seeks documents that are relevant to determine

18  whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software

19  that had been installed and run on the hard drive.  Bryant claims to have given his computer to his

20  niece.  Mattel also contends that the requested documents are relevant to the issues of credibility

21  and bias.  Further, Mattel contends that Larian's supplemental response to Request No. 115 is

22  inadequate, because evidence of any communication between Larian and his niece, regardless of

23  subject matter, is significant.

24          Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome

25  because they lack any subject matter or time constraints.  Further, Larian contends that the

26  requests constitute an improper fishing expedition and necessarily sweep in documents that are

27  not relevant to any claim or defense.

28  //

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT ___ 31

PAGE ___ 447

1    Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied.  The
2  requests are overbroad because they are not focused on relevant subject matter and are untethered
3  to any claim or defense.  Although Mattel asserts that responsive documents unrelated to Bratz,
4  Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility
5  is too remote to justify the breadth of Mattel's requests.

6    Larian's supplemental responses are sufficient to provide Mattel with relevant and
7  responsive documents.  Larian shall produce documents responsive to Request Nos. 113-115 in
8  accordance with his supplemental responses.

9
10  The Larian Brothers' "Arbitrations and Suits":  Request Nos. 123-125
11    In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and
12  suits between Larian and his brother, Farhad Larian.  In Request No. 124, Mattel seeks all
13  documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad
14  Larian against Larian, including without limitation all declarations, affidavits, transcripts, video
15  and/or audio recordings and sworn testimony given by any person in such suit or arbitration
16  proceedings.  In Request No. 125, Mattel seeks all documents relating to any and all settlements,
17  resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad
18  Larian.  In his supplemental responses, Larian agrees to produce all documents referring or
19  relating to Bratz that are responsive to the requests and to which no privilege or other protection
   applies.

20    Mattel contends that the court has already ruled that the arbitration proceedings between
21  Larian and his brother are relevant because they involve, among other matters, the conception and
22  creation date for Bratz.  Mattel contends that Larian's supplemental responses improperly limit
23  the requests to the exclusion of potentially relevant documents.  For example, Mattel contends
24  that documents that relate to the business, activities and plans of MGA in early 2000 are relevant
25  to the timing of the development of Bratz, whether or not they specifically refer to Bratz.
26  Mattel also contends that the requested documents are relevant to the value of the Bratz brand and
27  the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

28



EXHIBIT __31__

PAGE __448__

1   example, profits from the sale and licensing of Bratz and other information that would impeach

2   Larian's testimony that he has not made any profits from Bratz.  Further, Mattel contends that the

3   requested documents may lead to evidence of the assessments or valuations of the net worth or

4   value of MGA or Larian, regardless of any reference to Bratz specifically.  Mattel also contends

5   that settlement documents may contain information that bears on the merit of Farhad Larian's

6   claims and the value of Bratz.  Mattel also claims that the requested documents are relevant to

7   motive, intent, bias and credibility.

8       Larian contends the instant requests are overbroad and unduly burdensome.  Further,

9   Larian contends that the relationship of the requested documents to any of the claims or defenses

10  in the present action is questionable, and the existence of such documents is conjectural.

11  Moreover, Larian contends that many of the categories of documents of interest to Mattel are

12  already the subject of other requests.  Larian also contends that Request Nos. 123-125 impose an

13  undue burden because of the protective orders in place that strictly limit the use of any documents

14  from an arbitration and suit between Larian and his brother.  Larian represents that he is currently

15  working with Mattel and his brother in an attempt to achieve suitable modifications to the orders

16  that are agreeable to all parties.

17      Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is

18  denied.  The requests are clearly overbroad in calling for all documents from the arbitrations and

19  suits between Larian and his brother, without any subject matter limitations.  Furthermore, these

20  requests are unduly burdensome to the extent they require production of documents that do not

21  refer or relate to Bratz.  Such documents have marginal relevance, at best, to the claims and

22  defenses in the case.

23      Larian's supplemental responses to Request Nos. 123 -125 are sufficient.  Larian's

24  agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will

25  enable Mattel to obtain documents relevant to the claims and defenses in the case, including many

26  of the categories of documents of interest to Mattel.  For example, under Larian's proposed

27  limitation, documents that relate to the business, activities and plans of MGA in 2000 that also

28  refer or relate to Bratz must be produced.  Documents relating to the value of the Bratz brand are

EXHIBIT __3/__

PAGE __449__

1  also within the scope of Larian's proposed limitation and would have to be produced.  Documents

2  relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be

3  produced.  Further, Larian's proposed limitation does not necessarily foreclose discovery

4  regarding the appraisal of MGA prepared by Mr. Dutcher.  In particular, documents relating to

5  MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue

6  projections must be produced if such documents refer or relate to Bratz.  Accordingly, Larian

7  shall produce documents responsive to Request Nos. 123-125 in accordance with his

8  supplemental responses.

9  <u>Telephone Records:  Request Nos. 178-181</u>

10         In Request No. 178, Mattel seeks all documents relating to, including without limitation

11  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

12  from January 1, 1998 through January 1, 2001.  Larian objects to this request.

13         In Request No. 179, Mattel seeks all documents relating to, including without limitation

14  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

15  from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel.  In his supplemental

16  responses, Larian agrees to produce documents responsive to Request No. 179.  In response to

17  this motion, however, Larian contends that he should be permitted to produce documents

18  responsive to Request No. 179 in redacted form as discussed more fully below.

19         In Request No. 180, Mattel seeks all documents relating to, including without limitation

20  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

21  from April 1, 2004 through June 1, 2004.  Larian objects to this request.

22         In Request No. 181, Mattel seeks all documents relating to, including without limitation

23  phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf

24  at any time.  In his supplemental response, Larian agrees to produce all documents pertaining to

25  communications made prior to January 1, 2001 that are responsive to the request and to which no

26  privilege or other protection applies.

27  //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT __*31*__

PAGE __*450*__

Mattel contends that Request No. 178 seeks documents relevant to show Larian's communications with Bryant and other Mattel employees while such employees may still have been employed by Mattel and before Larian claims to have known about Bratz. Similarly, Mattel contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them to steal Mattel trade secrets.

Further, Mattel contends that the requested documents regarding telephone records are relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent they show communications with current and former Mattel employees, including Machado, Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses. With respect to burden, Mattel contends that it would be more burdensome to attempt to produce the requested records in redacted form, and further, that the protective order in place is sufficient to protect Larian's privacy concerns.

Larian contends that the requests regarding telephone records are overbroad, completely unbounded as to subject matter, and necessarily sweep in private information that is completely irrelevant to any of the claims or defenses in the case. Larian also points out that the court previously considered similar requests served on Bryant and allowed production of redacted copies of telephone records as long as Bryant provided a signed verification that none of his redactions related to Bratz, MGA or any other project he worked on for MGA. Specifically, Bryant was permitted to produce redacted phone records as long as he provided a "signed verification that none of the telephone records that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA." Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production of Documents by Bryant). Larian contends that he should be permitted to redact responsive documents consistent with the court's prior order. During the meet and confer, Larian offered to provide redacted records and a signed verification that none of the redacted information was

*Bryant v. Mattel, Inc.,*
CV-04-09049 SGL (RNBx)

11

EXHIBIT __31__

PAGE __451__

1 relevant to the case, but Mattel did not respond to the offer.

2  Mattel's motion to compel documents responsive to Request Nos. 178 (all documents

3 relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied. The

4 request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in

5 private information that is completely irrelevant to the case. Larian should not be subjected to

6 such an intrusion into his private and business affairs when Mattel has made no attempt to tailor

7 the request to the communications, claims, and defenses identified above.

8  In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records

9 for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters

10 (Bratz and/or Angel). Accordingly, Larian shall abide by his agreement to comply with Request

11 No. 179, as stated in his supplemental response. Larian's proposal to produce responsive

12 documents in redacted form is appropriate to address his privacy concerns. More specifically,

13 Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian

14 provides a signed verification that none of the redacted material refers or relates in any way to

15 MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA,

16 or that are otherwise relevant to the case.

17  Mattel's motion to compel documents responsive to Request No. 180 (documents relating

18 to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted. Request No. 180

19 is reasonably tailored to a two month period during which MGA and Larian allegedly recruited

20 employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets. <u>See</u>

21 Mattel's Second Amended Answer and Counterclaims, ¶¶37-54. Larian may produce documents

22 responsive to Request No. 180 in redacted form as specified above with respect to Request No.

23 179.

24  Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian)

25 is overbroad as written because it has no time limits. In his supplemental response, Larian agrees

26 to produce communications prior to January 1, 2001 that are responsive to the request. Larian's

27 proposed limitation is a reasonable compromise that will provide Mattel with relevant documents

28 without imposing an undue burden. Accordingly, Larian shall produce documents responsive to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT __31__

PAGE __452__

Request No. 181 consistent with his supplemental response, and may produce such documents in redacted form as specified above with respect to Request No. 179.

Statements to the Media:  Request Nos. 190-192, 194-197 and 199

In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action. Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products. Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may also contain admissions regarding the origin and conception of Bratz and statements relevant to damages.

Larian contends that the requests are overbroad and unduly burdensome, particularly because several of the requests seek publicly available information.  Further, Larian points out that the court has already considered and rejected as overbroad a nearly identical request served on MGA that called for all documents relating to any communications by MGA with any news organization regarding the contested MGA products or the contested Mattel products.  Larian contends that the same reasoning applies to the instant requests.

Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and 199 is denied.  Although several of the requests encompass potentially relevant documents, the requests are overbroad and encompass documents that have little to no relevance to the claims and defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz, or damages.

//

EXHIBIT __31__

PAGE __453__

1      Furthermore, many of these overbroad requests seek publicly available information that is

2 readily accessible to Mattel for which Larian should not be burdened. To the extent the requested

3 documents and information are not publicly available, such documents and information are

4 marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm.

5 In either case, the burden and expense of searching for and producing responsive documents are

6 unjustified.

7

8 Communications With Mattel Employees: Request No. 198

9      In Request No. 198, Mattel seeks all communications between Larian and any individual

10 while the individual was employed by Mattel. Mattel contends that this request is directly

11 relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported

12 burden of production.

13      Larian contends that the request is overbroad and unduly burdensome because it is

14 unrestricted as to time and subject matter. Larian also points out that the court has previously

15 found a similar request overbroad. Larian further contends that employees in the toy industry are

16 likely to maintain contacts with other toy manufacturers, and that a large corporation such as

17 Mattel is likely to have a high number of employees communicating with MGA or its officers,

18 which makes the request more unduly burdensome and unreasonable than it appears on its face.

19      Unlike other requests regarding communications, Request No. 198 is reasonably tailored

20 to the specific and numerous allegations in the case regarding alleged trade secret theft. Although

21 the request is not limited by subject matter, it is limited in other respects to seek relevant

22 documents without imposing an undue burden. The request is limited to communications

23 between Larian (and not MGA or persons acting on his behalf) and individuals employed at

24 Mattel. The request is also limited to only those communications that took place while the

25 individuals were employed at Mattel.

26      Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's

27 allegations of trade secret theft. The alleged trade secret theft began with Bryant's conduct in

28 1999 and continued to 2005. Accordingly, Larian shall produce documents responsive to Request

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT __31__

PAGE ___454___

No. 198 that are limited to the time frame 1999 to 2005.

Personal Financial Data: Request Nos. 207-209 and 269

In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks or financial institutions and other banking relationships since January 1, 1999. In Request No. 208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such income for each year from 1999 to the present. In Request No. 209, Mattel seeks Larian's federal and state tax returns for each year from 1999 to the present. In Request No. 269, Mattel seeks documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from 1999 to the present.

Mattel contends that Request No. 207 seeks information reasonably calculated to lead to information showing the timing of payments to Bryant and others, which in turn is relevant to the timing of the development of Bratz and issues of credibility. Mattel contends that Request Nos. 208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial condition, which in turn is relevant to damages. Further, Mattel contends that it is entitled to information regarding the sources of Larian's income to determine whether they are attributable to the alleged misconduct and thus subject to disgorgement.

Larian contends that the requested personal financial information is not relevant to the claims or defenses at issue. More specifically, Larian contends that neither the names of his banks nor his gross income have any bearing upon either compensatory or punitive damages or Mattel's claim for disgorgement of profits. Larian further contends that there is no support for Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

Larian also contends that all three of the requests overlap substantially with requests Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or burden posed by these requests to him. Further, Larian contends that the court has previously found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered no reason why the same result should not apply here.

Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted. The

EXHIBIT __31__

PAGE __455__

1  requests are reasonably calculated to lead to the discovery of admissible evidence relevant to
2  several issues in the case.  For example, the requested information is likely to lead to information
3  regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of
4  the creation of Bratz.  The requested information is also likely to show Larian's income and net
5  worth, which are relevant to damages.  Further, Larian has failed to establish that the requests are
6  unduly burdensome.  Although Mattel has sought and obtained broad discovery of financial
7  information from MGA, Mattel is also entitled to seek financial information directly from Larian.
8       Mattel's motion is denied as to Request No. 209, provided that Larian complies with
9  Request Nos. 207, 208 and 269.  In light of the discovery of financial information ordered herein
10  and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax
11  returns.

12  Storage Devices:  Request Nos. 222 and 224

13       In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating
14  to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,
15  delete or modify digital information relating to Bratz, Angel, or Bryant.  Mattel contends that a
16  request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in
17  electronic form.  Mattel also contends that Rule 34 permits a party to obtain and test computer
18  hard drives and other storage devices.

19       Larian contends that the requests are overbroad, unduly burdensome, duplicative, and
20  ignore his privilege and privacy interests.  Larian also objects to an inspection of his actual hard
21  drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which
22  states that the amendment of Rule 34 relating to "electronically stored information is not meant to
23  create a routine right of direct access to a party's electronic information system."  See
24  Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes.  Larian contends that there is no justification for
25  an inspection of his electronic devices because there is no allegation that he improperly deleted
26  documents.
27       Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT __31__

PAGE __456__

1    With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to

2    authorize the routine production of a party's electronic devices. Mattel attempts to justify

3    Request No. 222 by pointing to various instances of alleged destruction of evidence. See Mattel's

4    Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer

5    laptops; "wiping" information from the hard drives of Larian's computer laptops every six

6    months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and

7    destructive testing of Bryant's original Bratz drawings). However, Mattel fails to explain how

8    these alleged instances of evidence destruction justify Request No. 222, other than to assert that it

9    has a right to inspect Larian's storage devices to ensure that relevant information has not been

10   deleted or permanently destroyed. Mattel's stated purpose suggests instead that Mattel is

11   launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal

12   Rules of Civil Procedure. See e.g. Rivera v. NIBCO, Inc., supra. Furthermore, Mattel's stated

13   purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222.

14   Among other things, Request No. 222 encompasses every storage device that Larian has used to

15   copy digital information relating to Bratz. Mattel does not need every CD and DVD containing

     copies of Bratz-related video and audio content, but that is what the request seeks.

16         Request No. 222 is also duplicative because it requests information that is sought in

17   numerous other requests served on Larian as well as MGA. Mattel has served hundreds of

18   requests for documents and communications relating to Bratz, Angel, and Bryant. To comply

19   with the requests, Larian was required to search for documents in both hard-copy and electronic

20   form. Under the circumstances, it is unnecessary for Larian to also produce the requested storage

21   devices.

22         Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims

23   and defenses in the case, and therefore do not justify the burden of production on Larian.

24

25   Bryant's Storage Devices:  Request Nos. 225, 227 and 228

26         In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents

27   relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

28

1  receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2      Larian contends that the requests are improperly directed to him because he does not have

3  personal possession of Bryant's hard drive or storage devices, or other information about those

4  devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5  requests are overbroad and unduly burdensome for the reasons discussed above in connection

6  with Request Nos. 222 and 224.

7      Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8  denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9

10  MGA Hong Kong and MGA Mexico: Request Nos. 272 and 273

11      In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

12  Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

13  Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to

14  produce documents sufficient to show the ownership of these entities.

15      Mattel contends that the requests seek information relevant to refute MGA Mexico's

16  personal jurisdiction defense, and which bear on whether the acts of Larian and others are

17  attributable to the entities. Mattel also contends that Larian's (or MGA's) ownership interest in

18  these companies is relevant to net worth. Mattel contends that Larian's supplemental response is

19  inadequate because it would allow Larian to withhold contradictory information and conceal the

20  true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know

21  the ownership of these entities at times when different allegedly wrongful acts took place and to

22  determine if the ownership structure changed as a means of concealing assets or concealing the

23  payments of commercial bribes.

24      Larian contends that these requests should not be made to him, but to the entities

25  themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

26  Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

27  served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

28  burdensome, and that at most, he should only have to produce a list of owners.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)



EXHIBIT __3/__    [18]

PAGE __458__

1    Mattel contends that Larian cannot avoid his duty to respond to these requests simply by

2    saying that the information is obtainable from another source. Further, Mattel contends that

3    Larian has failed to establish that the requests are unduly burdensome.

4         Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied

5    pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable

6    from another source that is more convenient, less burdensome, or less expensive, namely MGA

7    Mexico and MGA Hong Kong. The requests are also overbroad and unduly burdensome.

8                                    IV. CONCLUSION

9         For the reasons set forth above, it is hereby ordered as follows:

10        1.    At meet and confer sessions held after the filing of this motion, Larian agreed to

11   produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-

12   146, 213, 221 and 223. Accordingly, Larian shall produce, without limitation, all non-privileged

13   documents that are responsive to these Requests.

14        2.    With respect to the remaining requests that are at issue in this motion, Larian shall:

15        A.    produce, without limitation, all non-privileged documents that are

16   responsive to Request Nos. 79, 180, 198 (for the time period 1999-2005), 207, 208 and

17   269; and

18        B.    produce, in accordance with his supplemental responses, non-privileged

19   documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and

20   209.

21        C.    Larian may produce documents responsive to Request Nos. 179, 180 and

22   181 in redacted form as provided herein.

23        D.    Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199,

24   209, 222, 224, 225, 227, 228, 272 and 273.

25        3.    Larian shall produce all non-privileged documents that are required by this Order

26   that are in his possession, custody or control and that have not already been produced no later

27   than January 11, 2008.

28        4.    Larian shall produce a privilege log no later than January 15, 2008.

EXHIBIT __31__

PAGE __459__

1    5.    Mattel's request for sanctions is denied.

2    Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3    Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5    Dated: December 31, 2007

         HON. EDWARD A. INFANTE (Ret.)
6                    Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

20

EXHIBIT __31__

PAGE __460__

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 2, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 2, 2008, at San Francisco, California.

_Sandra Chan_
Sandra Chan

EXHIBIT __31__

PAGE __461__

# EXHIBIT 32

# FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 33

7652

1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                    ---

4    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5                    ---

6   MATTEL, INC.,                :   PAGES 7652 - 7873
                                 :
7            PLAINTIFF,          :
                                 :
8     VS.                        :   NO. ED CV04-09049-SGL
                                 :   [CONSOLIDATED WITH
9   MGA ENTERTAINMENT, INC.,     :   CV04-9059 & CV05-2727]
    ET AL.,                      :
10                               :
             DEFENDANTS.         :
11   _____     :

12

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16            RIVERSIDE, CALIFORNIA

17          FRIDAY, AUGUST 15, 2008

18           JURY TRIAL - DAY 36

19            AFTERNOON SESSION

20

21

22                         MARK SCHWEITZER, CSR, RPR, CRR
                           OFFICIAL COURT REPORTER
23                         UNITED STATES DISTRICT COURT
                           181-H ROYBAL FEDERAL BUILDING
24                         255 EAST TEMPLE STREET
                           LOS ANGELES, CALIFORNIA 90012
25                         (213) 663-3494

CERTIFIED
COPY

EXHIBIT 33

PAGE 475

7653

1   **Appearances of Counsel:**

2

3   On Behalf of Mattel:

4        Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
         By John B. Quinn, Esq.
5            B. Dylan Proctor, Esq.
             Michael T. Zeller, Esq.
6            Harry Olivar, Esq.
             John Corey, Esq.
7            Diane Hutnyan, Esq.
             William Price, Esq.
8        855 South Figueroa Street
         10th Floor
9        Los Angeles, CA 90017
         (213) 624-7707
10

11

12   On Behalf of MGA Entertainment:

13       Skadden, Arps, Slate, Meagher & Flom LLP
         By Thomas J. Nolan, Esq.
14           Carl Alan Roth, Esq.
             Jason Russell, Esq.
15           Lauren Aguiar, Esq.
             David Hansen, Esq.
16           Matthew Sloan, Esq.
             Robert Herrington, Esq.
17           Raoul D. Kennedy, Esq.
         300 South Grand Avenue
18       Los Angeles, CA 90071-3144
         (213) 687-5000
19

20

21

22

23

24

25

EXHIBIT ___ **33**

PAGE ___ **476**

7675

1          THE COURT:  Because doll design apportionment would
2    have raised a whole bunch of issues that we would have had to
3    get into, and I presume that you were not going down that
4    road just because the complexities.
5          I mean, Patry writes at length on this in his
6    discussion of Sheldon, that this can be a very complicated
7    analysis.  Putting doll design aside, and that's why when we
8    start taking dolls apart and things of that nature, the Court
9    sustained objections on relevancy grounds.
10         But I really did rely on these on packaging
11   noncopyrighted accessories, promotional themes, additional
12   characters.  I did get into mechanical maneuverability just
13   because I thought even though that goes to doll design,
14   that's so clearly divorced from doll design aspects of how
15   the doll looks and arguably the protectable element issues,
16   that I thought that was easily severed out.
17         So I've given you actually a sixth factor, but I'm
18   not -- doll design as a concept like that, that is waived.
19   That is gone.
20         MR. ROTH:  Not comparing arms to legs.
21         THE COURT:  Very good.  So we're good on that.
22         Anything else?  It's past one o'clock.  I really
23   want to bring the jury in because we only have two and a half
24   hours of testimony left, and we've got a rebuttal witness,
25   and we've got to get through here by 5:30.  So let's move

EXHIBIT __33__

PAGE __477__

7676

1  forward.

2          MR. ROTH:  Very good, your Honor.

3          THE COURT:  All right.  Let's bring the jury in.

4          **(WHEREUPON THE JURY ENTERS.)**

5          THE COURT:  Good afternoon, members of the jury.

6  The Court has an instruction to provide concerning some

7  testimony you heard earlier.  You heard testimony earlier

8  about conversations between Mr. Larian and his counsel

9  concerning when Carter Bryant did the drawings and the works

10  in question.

11          That testimony is stricken, and you are instructed

12  to disregard any testimony or evidence concerning

13  communications between Mr. Larian and his counsel.  That

14  should not affect your decision at all.

15          Counsel, you may continue.

16          **ISAAC LARIAN, PREVIOUSLY SWORN.**

17          **RECROSS-EXAMINATION (CONTINUED)**

18  BY MR. PRICE:

19  Q.   I think you said a couple times in your examination that

20  you respected the jury's verdict; is that right?

21  A.   I do.

22  Q.   The day of the jury's verdict, you spoke with The Wall

23  Street Journal, didn't you?

24  A.   I don't recall.  I might have.

25  Q.   And do you recall telling that reporter in connection

EXHIBIT __33__

PAGE __478__

7677

1   with the jury's verdict that, quote, Mattel succeeded in

2   confusing the jury.

3   A.   I said that, yes.

4   Q.   You also -- Mr. Nolan asked you about whether you had

5   any malice toward Mattel.

6        Do you recall that?

7   A.   I'm sorry?

8   Q.   Mr. Nolan asked you whether you had any malice toward

9   Mattel.

10       Do you recall that?

11  A.   Do I have any malice toward Mattel?

12  Q.   Yes.  Do you recall Mr. Nolan's --

13  A.   In regards to what?

14  Q.   Mattel.

15  A.   Yes, I heard the question.

16  Q.   And you said you did not; correct?

17  A.   That's correct.

18  Q.   I believe your testimony was that the idea for a fashion

19  doll began when someone at Wal-Mart said they wanted

20  something to compete with Mattel?

21  A.   I believe one of the things that was -- that I said

22  created the idea for fashion doll was Ron Stover, who was a

23  Wal-Mart buyer, said bring me something that competes with

24  Barbie.

25  Q.   And in connection with that competition and talking with

EXHIBIT __33__

PAGE __479__

7872

```
 1              THE COURT:  I think -- between damages and
 2    copyright?
 3              MR. NOLAN:  Yes.
 4              THE COURT:  I generally don't do that, but this
 5    isn't my normal case.  So I suppose I'll give you leave to do
 6    so.
 7              MR. NOLAN:  I appreciate the courtesy.  We
 8    understand it's not the typical --
 9              THE COURT:  No slapping hands, though.
10              MR. NOLAN:  We'll try to make the switch as
11    efficient as possible.
12              THE COURT:  That makes sense in a case of this
13    nature.  That's fine.  I look forward to hearing from
14    Mr. Kennedy as well.
15              All right.  If there's nothing further, I thank you
16    for your tremendous efforts on bringing this case to a close
17    this afternoon.  And I'll look forward to your closing
18    arguments on Wednesday.  In the interim, we'll have our
19    charging instruction on Monday morning at 9:00.  Court is
20    adjourned for the day.
21
22              (Proceedings concluded at 6:15 P.M.)
23
24
25
```

EXHIBIT __33__

PAGE __480__

7873

1

2

3

4

5

6

7               C E R T I F I C A T E

8

9

10          I hereby certify that pursuant to Title 28,

11   Section 753 United States Code, the foregoing is a true and

12   correct transcript of the stenographically reported

13   proceedings in the above matter.

14          Certified on August 15, 2008.

15

16

17   MARK SCHWEITZER, CSR, RPR, CRR
     Official Court Reporter
18   License No. 10514

19

20

21

22

23

24

25

EXHIBIT **33**

PAGE **481**

# EXHIBIT 34



Case 2:04-cv-09049-SGL-RNB    Document 4279    Filed 08/26/2008    Page 1 of 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC.,<br><br>              Plaintiff,<br><br>       vs.<br><br>MGA ENTERTAINMENT, INC., et al.,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059 SGL (RNBx)<br>Case No. CV 05-02727 SGL (RNBx)<br><br>Honorable Stephen G. Larson<br><br>**PHASE B VERDICT FORM AS GIVEN** |

07209/2609529;2209/260
584.2

EXHIBIT __34__

PAGE __482__

PHASE B VERDICT FORM AS GIVEN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERDICT FORM - PHASE B

We answer the questions submitted to us as follows:

## I.  Damages for Phase A Claims

(Answer all four questions in this section.)

## Intentional Interference With Contractual Relations

1.    In Phase A of this trial, you found that MGA Entertainment, Inc. ("MGA") and Isaac Larian are liable to Mattel for intentional interference with contractual relations.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:        $____20 MILLION____

As to Mr. Larian:  $____10  MILLION____

## Aiding and Abetting Breach of Fiduciary Duty

2.    In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:        $____20 MILLION____

As to Mr. Larian:  $____10  MILLION____

## Aiding and Abetting Breach of the Duty of Loyalty

3.    In Phase A of this trial, you found that MGA and Isaac Larian are liable to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:        $____20 MILLION____

As to Mr. Larian:  $____10  MILLION____

EXHIBIT **34**

PAGE ____**483**

07209/2609529.2608584

-2-

PHASE B VERDICT FORM AS GIVEN

**Conversion**

4.    In Phase A of this trial, you found that MGA, Isaac Larian and MGA Entertainment (HK) Limited ("MGA Hong Kong") are liable to Mattel for conversion.  What amount of damages, if any, should be awarded to Mattel?

As to MGA:              $ _31,500 PLUS 7% INTEREST_

As to Mr. Larian:        $ _0_      CALCULATED FROM

As to MGA Hong Kong: $ _0_      THE DATE MATTEL'S
                                      PROPERTY WAS
                                      CONVERTED.

EXHIBIT **34**

PAGE **484**

07209/2609529.2608584.2

-3-

## II.  Copyright Infringement

5.   Has Mattel proven by a preponderance of the evidence that MGA is liable to Mattel for copyright infringement?

      Yes    __X__

      No    ____

If your answer is "yes," then answer Question 6.

If your answer is "no," then answer Question 7.

6.   Was MGA's copyright infringement willful?

      Yes    __.__

      No    __X__

Answer Question 7.

7.   Has Mattel proven by a preponderance of the evidence that Isaac Larian is liable to Mattel for copyright infringement?

      Yes    __X__

      No    ____

If your answer is "yes," then answer Question 8.

If your answer is "no," then answer Question 9.

8.   Was Mr. Larian's copyright infringement willful?

      Yes    ____

      No    __X__

Answer Question 9.

9.   Has Mattel proven by a preponderance of the evidence that MGA Hong Kong is liable to Mattel for copyright infringement?

      Yes    __X__

EXHIBIT __34__

PAGE __485__

-4-

07209/2609529.2608584

PHASE B VERDICT FORM AS GIVEN

1      No _____

2      If your answer is "yes," then answer Question 10.

3      If your answer is "no," then answer Question 11.

4

5      10.    Was MGA Hong Kong's copyright infringement willful?

6             Yes _____

7             No    X

8      Answer Question 11.

9

10     11.    What amount of damages, if any, should be awarded to Mattel for the

11     defendants' copyright infringement?

12     (a)    Copyright Infringement by MGA

13            $   6 Million

14     (b)    Copyright Infringement by Isaac Larian

15            Distributions Mr. Larian received from MGA attributable to Bratz-

16            related works:

17            $   3 Million

18            Value of Mr. Larian's ownership percentage of MGA attributable to

19            Bratz-related works:

20            $   0

21     (c)    Copyright Infringement by MGA Hong Kong:

22            $   1 Million

23

24

25

26

27                                          EXHIBIT   34

28                                          PAGE   486

07209/2609529.2608584

-5-

PHASE B VERDICT FORM AS GIVEN

### III.  Punitive Damages

12.    Has Mattel proven by clear and convincing evidence that MGA acted with malice, oppression, or fraud?

      Yes  _____

      No    X

If your answer is "yes," then answer Question 13.

If your answer is "no," then answer Question 14.

13.    What amount of punitive damages, if any, should be awarded against MGA?

      $_____ 0 _____

Answer Question 14.

14.    Has Mattel proven by clear and convincing evidence that Isaac Larian acted with malice, oppression, or fraud?

      Yes  _____

      No    X

If your answer is "yes," then answer Question 15.

If your answer is "no," then answer Question 16.

15.    What amount of punitive damages, if any, should be awarded against Mr. Larian?

      $_____ 0 _____

Answer Question 16.

16.    Has Mattel proven by clear and convincing evidence that MGA Hong Kong acted with malice, oppression, or fraud?

      Yes  _____

EXHIBIT  34

PAGE  487

PHASE B VERDICT FORM AS GIVEN



1        No    X

2        If your answer is "yes," then answer Question 17.

3        If your answer is "no," then answer Question 18.

4

5        17.    What amount of punitive damages, if any, should be awarded against

6    MGA Hong Kong?

7             $_____

8        Answer Question 18.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                    EXHIBIT  34

28                                    PAGE  488

07209/2609529,2608584

-7-

### IV.  Fraudulent Concealment

(Answer all five questions in this section.)

18.  Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of intentional interference with contract against it until at least April 27, 2002?

      Yes   _X_

      No   ____

19.  Has Mattel proven by a preponderance of the evidence that Isaac Larian fraudulently concealed the bases for Mattel's claim of intentional interference with contract against him until at least April 27, 2002?

      Yes   ____

      No   _X_

20.  Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of conversion against it until at least April 27, 2001?

      Yes   _X_

      No   ____

21.  Has Mattel proven by a preponderance of the evidence that Mr. Larian fraudulently concealed the bases for Mattel's claim of conversion against him until at least April 27, 2001?.

      Yes   ____

      No   _X_

EXHIBIT **34**

PAGE **489**

-8-

PHASE B VERDICT FORM AS GIVEN

1        22.    Has Mattel proven by a preponderance of the evidence that MGA Hong

2    Kong fraudulently concealed the bases for Mattel's claim of conversion against it

3    until at least April 27, 2001?

4           Yes  _____

5           No    _X_

6

7        Once this verdict form is completed, the foreperson of the jury should sign

8    and date on the lines below.

9

10   DATED: _August 26, 2008_    _/s/_
                                  Jury Foreperson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                        EXHIBIT **34**

28                                        PAGE **490**

-9-

PHASE B VERDICT FORM AS GIVEN

# EXHIBIT 35

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

_____Central_____ DISTRICT OF __California__

CARTER BRYANT, an Individual

V.

MATTEL, INC., a Delaware Corporation

**SUBPOENA IN A CIVIL CASE**

Case Number: [1]  CV 04-9059 NM (RNBx)
Consolidated with cases CV 04-9059
and CV 05-2727

TO:  Moss Adams
     11766 Wilshire Blvd., Suite 900
     Los Angeles, CA 90025

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE Quinn Emanuel Urquhart Oliver & Hedges LLP 865 South Figueroa St., 10th Floor Los Angeles, CA 90017 | DATE AND TIME Dececember 14, 2007 10 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) Attorney for Plaintiff, Mattel, Inc. | DATE November 26, 2007 |
|---|---|

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Juan Pablo Albán, Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa St., 10th Floor  (213) 443-3624

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

**35**

AO-88

PAGE ___491___

AO88  (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | | PLACE | |
|---|---|---|---|---|

**SERVED**

| SERVED ON (PRINT NAME) | | MANNER OF SERVICE | |
|---|---|---|---|

| SERVED BY (PRINT NAME) | | TITLE | |
|---|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

EXHIBIT _____ 35

PAGE 492