ATTACHMENT A

Documents To Be Produced

1.   DEFINITIONS.

      a.   "YOU" or "YOUR" means Moss Adams, current or former employees, attorneys, including partners, associates and shareholders, agents, representatives, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

      b.   "ISAAC LARIAN" means Isaac Larian, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, relatives (whether by blood or marriage), and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

      c.   "FARHAD LARIAN" means Farhad Larian, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

      d.   "ISAAC AND ANGELA LARIAN TRUST" means the Isaac and Angela Larian Trust and any other trust of which ISAAC LARIAN is a trustee or of which any member of Isaac Larian's family, whether by blood or marriage, is a beneficiary, the current or former trustees, beneficiaries, attorneys, agents, representatives, accountants, vendors, consultants or any other PERSON acting on its behalf, subject to its authority or its control.

      e.   "ISAAC LARIAN ANNUITY TRUST" means the Isaac Larian Annuity Trust and any other trust of which ISAAC LARIAN is a trustee or of which any member of Isaac Larian's family, whether by blood or marriage, is a beneficiary, the current or former trustees, beneficiaries, attorneys, agents, representatives, accountants, vendors, consultants or any other PERSON acting on its behalf, subject to its authority or its control.

07209/2251749.4

1

EXHIBIT __35__

PAGE __493__

f.     "BRYANT" means Carter Bryant, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, relatives (whether by blood or marriage), and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

g.     "GARCIA" means Paula Garcia, formerly known as Paula Treantafelles, and all of her current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, relatives (whether by blood or marriage), and any other PERSON acting on her behalf, pursuant to her authority or subject to her control.

h.     "MARLOW" means Veronica Marlow and all of her current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, relatives (whether by blood or marriage), and any other PERSON acting on her behalf, pursuant to her authority or subject to her control.

i.     "FORMER MATTEL EMPLOYEE" means any PERSON whom MATTEL employed and whom MGA subsequently employed, or who otherwise performed any service for the benefit of MGA during or after his or her employment at Mattel, including without limitation as an independent contractor.

j.     "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof.  Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

k.     "DESIGN" or "DESIGNS" means any and all representations,

07209/2251749.4

2

EXHIBIT ___35___

PAGE ___494___

whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, concepts, ideas, inventions and/or improvements, as well as all other items, things and documents in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part. the phrase "product, doll or DESIGN or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.

l.     "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, shareholders, attorneys, accountants, vendors, consultants, independent contractors, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control. Without any limitation on the foregoing, "MGA" includes "ABC International Traders, Inc.," as MGA was formerly known.

m.     "MATTEL" means Mattel, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

n.     "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

o.     "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, COMMUNICATIONS, facsimiles, electronic mail, records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and

07209/2251749.4

3

EXHIBIT __35__

PAGE __495__

summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including without limitation all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

       p.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

       q.    "RELATING TO" means referencing, referring to, constituting, evidencing, pertaining to, mentioning, supporting, contradicting, negating, bearing on, touching on, containing, embodying, reflecting, identifying, stating, dealing with, concerning, commenting on, summarizing, responding to, relating to, describing or discussing in any way.

       r.    "MATTEL ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly <u>Mattel, Inc. v. Bryant</u>, first filed in Los Angeles County Superior Court; <u>Bryant v. Mattel, Inc.</u>; and <u>MGA Entertainment, Inc. v. Mattel, Inc.</u>; and all counterclaims, cross-claims and defenses therein.

       s.    The "FARHAD LARIAN DISPUTES" means any and all suits, arbitrations and disputes between Farhad Larian, on the one hand, and Isaac Larian, on the other hand, including without limitation the actions captioned <u>Farhad Larian v. Isaac Larian</u>, Los Angeles Superior Court Case No. BC 301371 and <u>Farhad Larian v. Mora Zarabi et al.</u>, Los Angeles Superior Court Case No. BC 329501, and the arbitration captioned <u>Farhad Larian v. Isaac Larian</u> before ADR Services, Inc., ADRS Case No. 05-2096-ABH.

       t.    The singular form of a noun or pronoun includes within its

07209/2251749.4

4

EXHIBIT _35_

PAGE _496_

meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and vice versa, whenever such construction results in a broader disclosure of DOCUMENTS or information.

2.    INSTRUCTIONS.

   a. YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

   b. If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

     (1) The privilege or protection that you claim precludes disclosure;

     (2) The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

     (3) The date, author(s), addressee(s); and

     (4) Any additional facts on which YOU would base YOUR claim of privilege or protection.

   c. YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

   d. YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

   e. Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

07209/2251749.4

EXHIBIT **35**

PAGE **496**

### 3.   DOCUMENTS TO BE PRODUCED.

(1)    All DOCUMENTS RELATING TO MGA, including without limitation accounting records, tax returns and schedules (including without limitation Form 1040, Form 1099, Form 1120, Schedule E or Schedule K-1) and drafts thereof, work papers, worksheets, payroll records, financial statements (audited and unaudited), pro formas and budgets from the period beginning January 1, 1999 to the present.

(2)    All DOCUMENTS RELATING TO ISAAC LARIAN, including without limitation accounting records, tax returns and schedules (including without limitation Form 1040, Form 1099, Form 1120, Schedule E and Schedule K-1) and drafts thereof, W-2s, work papers, worksheets, payroll records, financial statements (audited and unaudited), pro formas, budgets, account information and account statements, from the period beginning January 1, 1999 to the present.

(3)    All DOCUMENTS RELATING TO FARHAD LARIAN, including without limitation accounting records, tax returns and schedules (including without limitation Form 1040, Form 1099, Form 1120, Schedule E and Schedule K-1) and drafts thereof, W-2s, work papers, worksheets, payroll records, financial statements (audited and unaudited), pro formas, budgets, account information and account statements from the period beginning January 1, 1999 to the present.

(4)    All DOCUMENTS RELATING TO the ISAAC AND ANGELA LARIAN TRUST, including without limitation accounting records, tax returns and schedules (including without limitation Form 1040, Form 1099, Form 1120, Schedule E and Schedule K-1) and drafts thereof, W-2s, work papers, worksheets, payroll records, financial statements (audited and unaudited), pro formas, budgets, account information and account statements from the period beginning January 1, 1999 to the present.

(5)    All DOCUMENTS RELATING TO the ISAAC LARIAN ANNUITY TRUST, including without limitation accounting records, tax returns and schedules (including without limitation Form 1040, Form 1099, Form 1120, Schedule E and Schedule K-1) and drafts thereof, W-2s, work papers, worksheets, payroll records, financial statements (audited and unaudited), pro formas, budgets, account information and account statements from the period beginning January 1, 1999 to the present.

07209/2251749.4

6

EXHIBIT  35

PAGE  497

(6)     To the extent not included in your production responsive to Request Nos. 1-5, all DOCUMENTS indicating ISAAC LARIAN's net worth.

(7)     To the extent not included in your production responsive to Request Nos. 1-6, all DOCUMENTS indicating MGA's net worth.

(8)     To the extent not included in your production responsive to Request Nos. 1-7, all DOCUMENTS indicating or calculating the value of MGA's intellectual property or goodwill.

(9)     All DOCUMENTS RELATING TO BRATZ that YOU obtained from ISAAC LARIAN or otherwise since January 1, 1999.

(10)   All DOCUMENTS RELATING to the MATTEL ACTION.

(11)   All DOCUMENTS RELATING TO the FARHAD LARIAN DISPUTES, including without limitation any discovery requests received by YOU in connection therewith and any communications between YOU and counsel for FARHAD LARIAN or counsel for ISAAC LARIAN.

(12)   All DOCUMENTS evidencing, showing or relating to payments to or transfers of value from MGA to ISAAC LARIAN, ISAAC LARIAN ANNUITY TRUST, or ISAAC AND ANGELA ANNUITY TRUST.

(13)   All DOCUMENTS evidencing, showing or relating to payments to or transfers of value from MGA or ISAAC LARIAN to BRYANT.

(14)   All DOCUMENTS evidencing, showing or relating to payments to or transfers of value from MGA or ISAAC LARIAN to GARCIA.

(15)   All DOCUMENTS evidencing, showing or relating to payments to or transfers of value from MGA or ISAAC LARIAN to MARLOW.

(16)   All DOCUMENTS evidencing, showing or relating to non-payroll payments to or transfers of value from MGA or ISAAC LARIAN to any FORMER MATTEL EMPLOYEE.

07209/2251749.4

7

EXHIBIT __35__

PAGE __498__

(17)   DOCUMENTS sufficient to show YOUR policies or practices relating to the preservation, retention or destruction of DOCUMENTS sought by or the subject of Request Nos. 1 through 14.

(18)   DOCUMENTS sufficient to identify any other PERSON who has served as MGA's, ISAAC LARIAN's, FARHAD LARIAN's, the ISAAC AND ANGELA LARIAN FAMILY TRUST or the ISAAC LARIAN ANNUITY TRUST's auditor(s) or accountant(s) since January 1, 1999.

(19)   DOCUMENTS sufficient to identify all trusts or other entity in which ISAAC LARIAN is an officer, director, member, shareholder or trustee; has or had a direct or indirect ownership interest; had or has direct or indirect control or of which he or any member of his family (by blood or marriage) is or was an owner, shareholder, employee, officer, director, trustee, member or beneficiary.

EXHIBIT ___**35**___

PAGE ___**499**___

# EXHIBIT 36

1 | THOMAS J. NOLAN (Bar No. 66992)
2 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   | 300 South Grand Avenue
   | Los Angeles, CA 90071-3144
3 | Telephone: (213) 687-5000
   | Facsimile: (213) 687-5600
4 | E-mail: tnolan@skadden.com

5 | RAOUL D. KENNEDY (Bar No. 40892)
6 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   | 4 Embarcadero Center, 38th Floor
   | San Francisco, California 94111-5974
7 | Telephone: (415) 984-6400
   | Facsimile: (415) 984-2698
8 | Email: rkennedy@skadden.com

9 | Attorneys for Counter-Defendants,
10 | MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA
   | ENTERTAINMENT (HK) LIMITED, and MGAE de MEXICO S.R.L. de C.V.

11

12 | UNITED STATES DISTRICT COURT

13 | CENTRAL DISTRICT OF CALIFORNIA

14

15 | CARTER BRYANT, an individual )   CASE NO. CV 04-9049 SGL (RNBx)
                                  )
16 |              Plaintiff,       )   Consolidated with Case No. 04-9059
                                  )   and Case No. 05-2727
17 |        v.                     )
                                  )   **DISCOVERY MATTER**
18 | MATTEL, INC., a Delaware       )
    | corporation                  )   [To be heard by Discovery Master
19 |                              )   Hon. Edward A. Infante (Ret.)]
    |              Defendant.      )
20 |                              )   **MGA DEFENDANTS' NOTICE OF**
    |                              )   **MOTION AND MOTION TO**
21 |                              )   **QUASH SUBPOENAS OR, IN THE**
    |                              )   **ALTERNATIVE, FOR**
22 |                              )   **PROTECTIVE ORDER AND**
    |                              )   **MEMORANDUM IN SUPPORT**
23 |                              )
    |                              )   [DECLARATION OF AMY PARK
24 |                              )   AND SEPARATE STATEMENT
    | Consolidated with MATTEL, INC. v. )   FILED UNDER SEPARATE
25 | BRYANT and MGA              )   COVER]
    | ENTERTAINMENT, INC. v.       )
26 | MATTEL, INC.                 )   Date: TBD
    |                              )   Time: TBD
27 |                              )   Place: TBD
28 |

*12-21*

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT **36**

PAGE **500**

# TABLE OF CONTENTS

|  |  | **Page** |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| I. | PRELIMINARY STATEMENT. | 1 |
| II. | STATEMENT OF FACTS. | 3 |
| | A. In Response to Mattel's Thousands of Document Requests, the MGA Defendants Have Produced and Are Producing Over Three Million Pages of Documents. | 3 |
| | B. Mattel Has Targeted Non-Parties Having Personal, Financial or Business Relationships with the MGA Defendants and Subpoenaed Them for Irrelevant or Duplicative Documents | 5 |
| III. | THE DISCOVERY MASTER MUST STOP MATTEL'S ABUSIVE NON-PARTY DISCOVERY PRACTICES. | 9 |
| | A. The Federal Rules Require Mattel to Limit Its Subpoenas to Relevant Matter that Is Not Duplicative of Party Discovery and Cannot Be Obtained Through Less Burdensome Means. | 9 |
| | B. Mattel's Subpoenas Are Abusively Drawn to Seek Irrelevant and Duplicative Materials and Are Designed Solely to Harass the MGA Defendants and Non-Parties with whom They Have Personal, Financial or Business Relationships. | 11 |
| | 1. Mattel Seeks Irrelevant and Duplicative Financial Information Regarding MGA and Isaac Larian. | 13 |
| | 2. Mattel Seeks Irrelevant Financial Information Regarding Many Non-Parties. | 19 |
| | 3. Mattel Seeks Irrelevant and Duplicative Information Regarding Litigation Between Isaac and Farhad Larian. | 21 |
| | 4. Mattel's Requests for Documents Related to MGA's Products or Carter Bryant Are Overly Broad and Abusively Drawn. | 23 |
| IV. | CONCLUSION. | 25 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

EXHIBIT __36__

PAGE __501__

# TABLE OF AUTHORITIES

**CASES**                                                                                   **Page**

Aliotti v. Senora,
   217 F.R.D. 496 (N.D. Cal. 2003) ..................................................................... 10, 16

Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,
   649 F.2d 646 (9th Cir. 1980).............................................................................. 9

In re Ashworth, Inc. Sec. Litig.,
   Civil No. 99 cv 0121 L (JAH),
   2002 U.S. Dist. LEXIS 27991 (S.D. Cal. May 10, 2002)..................................... 13

J & M Turner, Inc. v. Applied Bolting Tech. Prods.,
   Civil Action No. 95-2179, Civil Action No. 96-5819,
   1997 U.S. Dist. LEXIS 4447 (E.D. Pa. Apr. 2, 1997) ......................................... 11

Lectrolarm Custom Sys. v. Pelco Sales,
   212 F.R.D. 567 (E.D. Cal. 2002)................................................................... 11, 23

Mattel, Inc. v. Walking Mountain Productions,
   353 F.3d 792 (9th Cir. 2003).................................................................... passim

Moon v. SCP Pool Corp.,
   232 F.R.D. 633 (C.D. Cal. 2005) ................................................................. 10, 21

Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.,
   262 F. Supp. 2d 923 (N.D. Ill. 2003) ................................................................. 15

S. Cal. Hous. Rights Ctr. v. Krug,
   Case No. CV 06-1420 SJO (JCx),
   2006 U.S. Dist. LEXIS 65330 (C.D. Cal. Sept. 5, 2006).................................... 13

Travelers Indem. Co. v. Metropolitan Life Ins. Co.,
   228 F.R.D. 111 (D. Conn. 2005) ....................................................................... 10

**RULES**

Federal Rule of Civil Procedure 26(b)(1) .......................................................... 9, 16

Federal Rule of Civil Procedure 26(b)(2) ............................................................... 10

Federal Rule of Civil Procedure 26(b)(2)(C).................................... 10, 17, 21, 23

Federal Rule of Civil Procedure 45(c)(1).......................................................... 9, 24

Federal Rule of Civil Procedure 45(c)(3)(A)(iv) ..................................................... 9

EXHIBIT 36

PAGE 502

1 | TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2 |      PLEASE TAKE NOTICE that on _____, 2008, at ____, or as soon

3 | thereafter as the matter may be heard, before the Honorable Edward Infante (Ret.),

4 | Discovery Master, located at Two Embarcadero Center, Suite 1500, San Francisco,

5 | CA 94111, counter-defendants MGA Entertainment, Inc., Isaac Larian, MGA

6 | Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively,

7 | the "MGA Defendants") will and hereby do move, pursuant to Federal Rule of Civil

8 | Procedure 26(b)(2) and 45(c)(3), for an order quashing subpoenas issued by Mattel,

9 | Inc. to non-parties ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac

10 | and Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia

11 | Bank and Wells Fargo, or, in the alternative, a protective order limiting the scope of

12 | those subpoenas.

13 |      This motion is made on the grounds that Mattel's subpoenas are overly broad

14 | and impose an undue burden on the above-referenced non-parties.  In particular, the

15 | subpoenas seek documents that are irrelevant to this litigation or are duplicative of

16 | documents and information that, to the extent it is relevant, has already been sought

17 | and obtained or is being obtained by Mattel through other discovery.  In addition,

18 | Mattel has made no effort to properly tailor its requests and has failed to take

19 | reasonable steps to avoid unduly burdening the non-parties.

20 |      This motion is based on this Notice of Motion and Motion to Quash

21 | Subpoenas or, in the Alternative, for Protective Order, the attached Memorandum of

22 | Points and Authorities in support thereof, the supporting Declaration of Amy S. Park

23 | and Separate Statement filed herewith, the pleadings and records on file in this action,

24 | and any further evidence and argument as may be presented to the Discovery Master

25 | on this motion.

26 |

27 |

28 |

EXHIBIT ___ 36

PAGE ___ 503

1                  **Statement of Local Rule 7-3 Compliance**

2         The parties met and conferred on December 21, 2007, regarding the subject of

3 this motion but were not able to resolve this motion.

4

5 DATED:  December 21, 2007

6                           SKADDEN, ARPS, SLATE, MEAGHER &
                          FLOM, LLP

7

8                        By: _Thomas J. Nolan /DS_

9                           Thomas J. Nolan

10                           Attorneys for Counter-Defendants, MGA
                          ENTERTAINMENT, INC., ISAAC

11                           LARIAN, MGA ENTERTAINMENT (HK)
                          LIMITED, and MGAE de MEXICO S.R.L.

12                           de C.V.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA DEFENDANT'S MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT __36__

PAGE __504__

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **PRELIMINARY STATEMENT.**

Counter-defendants MGA Entertainment, Inc. ("MGA"), Isaac Larian, MGA Entertainment (HK) Limited ("MGA HK"), and MGAE de Mexico S.R.L. de C.V. ("MGA Mexico") (collectively, the "MGA Defendants") bring this motion to quash subpoenas issued by Mattel to ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells Fargo (collectively, the "Non-Parties"), or, alternatively, for a protective order substantially limiting the scope of those subpoenas.[1]

Mattel has propounded thousands of discovery requests, including more than 2,300 document requests, on the MGA Defendants in this case. Many of the documents that Mattel has sought and obtained from the MGA Defendants include a wide assortment of financial documents. Indeed, the Discovery Master recently heard several motions brought by Mattel to compel the MGA Defendants to produce even more financial documents.

Apparently not satisfied with the voluminous production of information that Mattel has received and will be receiving from the MGA Defendants, Mattel has recently embarked on an expansive and harassing campaign to obtain much of the same information, as well as substantial amounts of other irrelevant documents, from a host of non-parties who have a personal, financial or business relationship with the MGA Defendants but have no involvement in this case. Mattel's efforts to harass these non-parties with overly broad subpoenas represent the same type of abusive non-party discovery tactics that Mattel has been sanctioned for in other litigation.

---

[1] The issue of whether the Discovery Master Order in this case applies to non-parties *subpoenaed by Mattel is the subject of a pending motion before the Court. The* MGA Defendants' motion, however, does not implicate that motion because the MGA Defendants only seek relief as to Mattel, over whom the Discovery Master unquestionably has jurisdiction, and the subpoenas at issue here implicate issues that Mattel has already put before the Discovery Master in prior motions to compel.

1

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT **36**

PAGE **505**

1   Indeed, in *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813-14 (9th

2   Cir. 2003), the Ninth Circuit affirmed the district court's order sanctioning Mattel

3   and its counsel, Quinn Emanuel, for issuing a "very broad" and "abusively drawn"

4   discovery subpoena. The Court held that – just like the subpoenas here – "no attempt

5   had been made to try to tailor the information request to the immediate needs of the

6   case" and that the subpoena was served simply "for the purpose of annoying and

7   harassment and not really for the purpose of getting information." *Id.*

8          Mattel's subpoenas to the Non-Parties generally consist of four categories of

9   requests, all of which are overly broad and seek materials that are irrelevant to this

10  case or that have been or could be obtained from the MGA Defendants.

11         *First*, Mattel has subpoenaed the Non-Parties for the *entirety* of MGA and Mr.

12  Larian's financial records, from tax returns to canceled checks, for a nine-year period

13  from 1999 to the present. There is no claim or defense at issue in this case that could

14  possibly justify giving Mattel such unfettered access to MGA and Mr. Larian's

15  financial histories. Moreover, to the extent some of the requested documents may be

16  relevant, the MGA Defendants have already produced many responsive documents,

17  and indeed, the Discovery Master recently ordered MGA to produce numerous other

18  financial documents.

19         *Second*, Mattel has demanded that the Non-Parties produce vast amounts of

20  financial records for a host of other *non-parties*, including every person who ever did

21  any work for MGA or Mr. Larian, and every conceivable relative of Mr. Larian. The

22  private financial records of these non-parties are not even remotely relevant to this

23  case and Mattel's efforts to obtain such information constitute a clear abuse of the

24  non-party discovery process.

25         *Third*, Mattel has requested from the Non-Parties all documents relating to any

26  litigation between Mr. Larian and his brother Farhad Larian. Mattel, however, has

27  already requested the same documents from both Isaac and Farhad Larian, as well as

28

EXHIBIT **36**

PAGE **506**

1   MGA and at least two law firms involved in the litigation between the Larian

2   brothers.  Even if the documents were relevant, Mattel should not be permitted to

3   seek the same documents from twelve different sources.  Such duplication is not only

4   unreasonable, it also unduly burdens the Non-Parties.

5        *Fourth*, Mattel's subpoenas include various requests for all documents

6   obtained from MGA or Isaac Larian relating to Bratz, other MGA products, or Carter

7   Bryant.  While some documents relating to Mr. Bryant or the MGA products at issue

8   in this case may be relevant, Mattel's requests to the Non-Parties are improper

9   because Mattel has already requested and received well over three million pages of

10   such documents from the MGA Defendants.  To the extent that Mattel is seeking

11   relevant documents that are not duplicative, Mattel's requests are so overly broad that

12   it is impossible to discern what specific relevant, non-duplicative documents Mattel

13   is requesting from the Non-Parties.

14        With fewer than 40 days left until the January 28, 2008 Phase 1 fact discovery

15   cut-off, the parties should be working diligently to wrap up Phase 1 discovery, not

16   ramp it up with excessive non-party discovery.  However, absent the Discovery

17   Master's intervention, it is clear that Mattel will continue its abusive and harassing

18   non-party discovery tactics.  Accordingly, the MGA Defendants request that the

19   Discovery Master grant their motion to quash or, alternatively, for a protective order.

20   II.   **STATEMENT OF FACTS.**

21        A.   **In Response to Mattel's Thousands of Document Requests, the
           MGA Defendants Have Produced and Are Producing Over Three
22           Million Pages of Documents.**

23        During the course of this nearly four-year-old litigation, Mattel has served and

24   continues to serve the MGA Defendants with more than a dozen sets of document

25   requests containing more than 2,300 individual requests.  (Declaration of Amy Park

26   ("Park Decl."), ¶ 1.)  These requests have included hundreds of requests for

27   documents relating to Bratz and other MGA products at issue in the case.  (Park

28

3

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT _**36**_

PAGE _**507**_

1 | Decl., ¶ 1.)  They have also included well over 120 requests devoted to an overly

2 | broad array of personal and corporate financial information.  *(See, e.g.,* Park Decl.,

3 | Ex. 1 (Mattel's 2nd Set of RFPs to MGA) at Requests 3-45; Ex. 2 (Mattel's 1st Set of

4 | RFPs to MGA HK) at Requests 3-45; Ex. 3 (Mattel's 5th Set of RFPs to MGA) at

5 | Requests 4-7, 12-47.)  The MGA Defendants have responded and are responding to

6 | Mattel's requests by objecting, where appropriate, on relevance, breadth and other

7 | grounds, and by producing responsive documents.  (Park Decl. ¶ 4.)  To date, the

8 | MGA Defendants have produced more than three million pages of documents

9 | responsive to Mattel's many requests.  *(Id.* ¶ 2.)

10 |        With respect to financial information, Mattel has already sought *and obtained*

11 | broad discovery from MGA, including the following:

12 |        •     Audited and unaudited quarterly and annual profit and loss statements;

13 |        •     Audited and unaudited quarterly and annual statements;

14 |        •     Annual reports;

15 |        •     Various MGA financial reports;

16 |        •     Various financial documents relating to Veronica Marlow;

17 |        •     Documents showing royalty payments to Carter Bryant;

18 |
19 |        •     Documents showing MGA's sales, returns and costs of good sold for each month, by SKU, since 2001;

20 |        •     Documents showing MGA's promotional, advertising and media expenditures, including MGA's internal allocation of those expenditures by brand and/or product;

21 |
22 |        •     Documents showing MGA's amortization and depreciation of certain capital assets and expenditures;

23 |
24 |        •     Documents showing MGA's monthly general ledger entries aggregated by account, including income and expense accounts, reserves and liabilities; and

25 |        •     Documents sufficient to explicate MGA's various accounts as presently *and historically maintained in MGA's books and records, as well as* various nomenclature assigned to items, products, brands, sub-brands, and profit centers.

26 |
27 |
28 |

1  (Park Decl. ¶ 3.)  The MGA Defendants also will be producing or otherwise making

2  available to Mattel additional documents responsive to Mattel's Second Set of

3  Requests for Production.  (Park Decl. ¶ 4.)  In addition, in the upcoming weeks, the

4  MGA Defendants will be responding to six other outstanding sets of document

5  requests for which responses are not yet due, including, by producing responsive

6  documents, identifying responsive documents that have already been produced, or by

7  requesting that the parties meet and confer over the scope of the requests.  (*Id.*)

8       **B.    Mattel Has Targeted Non-Parties Having Personal, Financial or
            Business Relationships with the MGA Defendants and Subpoenaed**

9            **Them for Irrelevant or Duplicative Documents.**

10           In addition to seeking millions of pages of documents from the MGA

11  Defendants, Mattel has issued subpoenas seeking wide-ranging categories of

12  documents from dozens of non-parties.  In particular, in the past few months, Mattel

13  has served subpoenas on non-parties who have personal, financial or business

14  relationships with the MGA Defendants, but have no connection to this litigation.

15  These subpoenas, which are summarized below, are replete with requests for

16  documents that are largely irrelevant, duplicative of materials already sought from

17  the MGA Defendants, or seek information that is obtainable from the parties or other

18  less intrusive means.

19           In September 2007, Mattel served document subpoenas on Isaac Larian's

20  brother Farhad Larian who is a former executive and shareholder of MGA, and two

21  law firms that were involved in an arbitration between Isaac and Farhad Larian—

22  Kaye Scholer, which represented Isaac Larian, and Stern & Goldberg, which

23  represented the arbitrator.  (Park Decl., Exs. 4-5.)  Although some of the requests

24  concerned Bratz and Mattel, many were directed at a variety of unrelated matters.

25  For example, Mattel's subpoenas included numerous requests seeking all documents

26  relating in any way to any disputes between Farhad and Isaac Larian (Park Decl., Ex.

27  6 (F. Larian Subpoena) at Requests 1, 2, 4, 16, 22; Ex. 5 (Stern & Goldberg

28

EXHIBIT __36__

PAGE __509__

1    Subpoena) at Requests 1-3, 21; Ex. 4 (Kaye Scholer Subpoena) at Requests 1-3, 21;

2    and all documents relating in any way to any financial transactions or other

3    agreements between MGA, Isaac Larian or his family, on the one hand, and Farhad

4    Larian or his family, on the other (Park Decl., Ex 6 (F. Larian Subpoena) at Requests

5    3, 23, 24; Ex. 5 (Stern & Goldberg Subpoena) at Requests 4, 22, 23; Ex. 4 (Kaye

6    Scholer Subpoena) at Requests 4, 22, 23).[2]

7        On October 25, 2007, Mattel issued identical subpoenas to MGA's auditors,

8    Ernst & Young and Deloitte & Touche. (Park Decl., Exs. 7-8.) Only one request

9    specifically related to Bratz. (*Id.* at Request 4.) The other requests demanded all

10   documents related in any way to MGA audits, including "accounting records, audit

11   programs, audit reports and drafts thereof, tax returns, work papers, worksheets,

12   payroll records, financial projections, pro formas and budgets"; calculations of

13   MGA's net worth or the value of its intellectual property or goodwill; and any

14   litigation between Isaac and Farhad Larian. (*Id.* at Requests 1-3, 6.) Mattel also

15   requested that MGA's auditors produce documents identifying any other MGA

16   accountants or auditors. (*Id.* at Request 8.)

17       On October 25, 2007, Mattel also issued a subpoena to Wachovia, one of

18   MGA's lenders. (Park Decl., Ex. 9.) As with the subpoenas to MGA's auditors, only

19   one request to Wachovia related to Bratz. (*Id.* at Request 8.) The other requests

20   sought all documents related in any way to any loan agreement with MGA, including

21   "accounting records, tax returns, pro formas, expense records, financial projections,

22   budgets or business plans"; calculations of MGA's net worth or the value of its

23   intellectual property or goodwill; and any litigation between Isaac and Farhad Larian.

24

25

26   [2] The subpoenas to Farhad Larian and the law firms are currently the subject of
     motions to compel that Mattel filed with the Discovery Master. As will be pointed
27   out in the briefing on those motions, those subpoenas suffer from the same defects as
     the subpoenas at issue here.

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT __36__

PAGE __510__

1   (*Id.* at Requests 1-4, 6, 7, 10.)  Mattel also demanded all communications with MGA,

2   regardless of subject matter, in 1999 and 2000.  (*Id.* at Request 5.)

3          On November 16, 2007, Mattel issued a subpoena to ConsumerQuest, a

4   market research firm that did various research work for MGA.  (Park Decl., Ex. 10.)

5   The requests sought wide-ranging categories of documents, including: all documents

6   related in any way to Bratz or Scooter Samantha, or to any work done for MGA

7   relating to those and various other MGA products (*id.* at Requests 1-5, 8, 13); all

8   documents related in any way to any work done for MGA before 2003, regardless of

9   the subject matter (*id.* at Request 6); all actual or proposed agreements with MGA,

10  Isaac Larian, Farhad Larian or Carter Bryant on any subject matter (*id.* at Request

11  12); and all documents related in any way to any litigation between Isaac and Farhad

12  Larian (*id.* at Request 14). ·Mattel's subpoena also sought virtually every

13  communication between ConsumerQuest and the MGA Defendants, without

14  limitation as to time or subject.  (*Id.* at Requests 9-11.)

15         On November 20, 2007, Mattel subpoenaed MGA's bank Wells Fargo,

16  requesting all documents related in any way to MGA during a nine-year period from

17  1999 to the present.  (Park Decl., Ex. 11 at Request 1.)  Mattel also requested all

18  documents from the same nine-year period related in any way to any MGA account

19  with Wells Fargo, including "statements, monthly statements, annual statements,

20  daily transaction history reports, monthly transaction history reports, deposit reports,

21  deposit slips, canceled checks, [and] signature cards."  (*Id.* at Requests 2-5.)

22         On November 26, 2007, Mattel subpoenaed Isaac Larian's tax accounting firm,

23  Moss Adams, for all documents related in any way to MGA, Isaac or Farhad Larian,

24  any of their relatives, and two trusts established by Isaac Larian—the Isaac Larian

25  Annuity Trust and the Isaac and Angela Larian Trust (collectively, the "Larian

26

27

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT ___ **36**

PAGE ___ **511**

1  Trusts")[3]—during a nine-year period from 1999 to the present.  (Park Decl., Ex. 12 at
2  Requests 1-5, 12.)  The documents requested by Mattel included "accounting records,
3  tax returns and schedules (including without limitation Form 1040, Form 1099, Form
4  1120, Schedule E and Schedule K-1) and drafts thereof, W-2s, work papers,
5  worksheets, payroll records, financial statements (audited and unaudited), pro formas,
6  budgets, account information and account statements." (*Id.* at Requests 1-5.)
7      Mattel also sought numerous other documents from Moss Adams, including:
8  all documents indicating Isaac Larian's net worth, MGA's net worth or the value of
9  MGA's intellectual property or goodwill (*id.* at Requests 6-8); all documents related
10  in any way to any litigation between Isaac and Farhad Larian (*id.* at Request 11); all
11  documents related in any way to payments from MGA, Isaac Larian or any of his
12  relatives to Mr. Bryant or any of his relatives, Veronica Marlow or any of her
13  relatives, Paula Garcia or any of her relatives, or any former Mattel employee (*id.* at
14  Requests 13-16).  Mattel also demanded documents identifying every auditor or
15  accountant used by MGA, Isaac or Farhad Larian, any of their relatives, or the Larian
16  Trusts since 1999. (*Id.* at Request 18.)  In addition, Mattel sought documents
17  identifying every entity in which Isaac Larian or any of his relatives ever had any
18  ownership interest in or served as an employee, officer, director, trustee, shareholder,
19  beneficiary or member. (*Id.* at Request 19.)
20      On December 14, 2007, Mattel issued identical subpoenas to the Larian
21  Trusts.[4] (Park Decl., Exs. 13-14.)  The subpoenas demanded a host of documents
22  covering virtually every aspect of the Trusts, including: all of their actual and draft

---

[3] Mattel misidentified the trusts.  The correct names of the trusts are The Isaac and Angela Larian Family Trust and The Isaac E. Larian Qualified Annuity Trust 2004.

[4] Mattel's misidentification of the trusts renders the subpoenas to them ineffective. However, assuming Mattel serves the same subpoenas on the correctly named trusts, those subpoenas should be quashed or a protective order as to those subpoenas issued for the reasons set forth herein.

8

EXHIBIT 36
PAGE 512

1  formation documents (*id.* at Request 1); all documents relating in any way to the

2  Larian Trusts' tax liabilities, including all actual and draft tax returns and schedules

3  from 1999 to the present (*id.* at Requests 2-3); documents showing all trustees,

4  beneficiaries, disbursements made, assets owned, or liabilities owed since 1999 (*id.*

5  at Requests 4-8); all documents related in any way to Bratz or Bryant (*id.* at Requests

6  9-10); and all documents related in any way to any litigation between Isaac and

7  Farhad Larian (*id.* at Request 12). As with the Moss Adams subpoena, Mattel

8  demanded documents identifying every auditor or accountant used by the Larian

9  Trusts since 1999, plus documents identifying every entity in which Isaac Larian or

10 any of his relatives ever had an ownership interest or served as an employee, officer,

11 director, trustee, shareholder, beneficiary or member. (*Id.* at Requests 14-15.)

12         All of the Non-Parties, as well as the MGA Defendants, have objected to

13 Mattel's subpoenas on the grounds that, *inter alia*, they are overly broad, unduly

14 burdensome, and seek irrelevant and/or duplicative information. (Park Decl. Exs.

15 15-26.) Counsel for Mattel and the MGA Defendants met and conferred on

16 December 21, 2007, in an attempt to resolve the MGA Defendants' objections to the

17 subpoenas, but they were not able to reach a resolution. (Park Decl., ¶ 5.)

18 III.   **THE DISCOVERY MASTER MUST STOP MATTEL'S ABUSIVE**
       **NON-PARTY DISCOVERY PRACTICES.**
19

20         A.    **The Federal Rules Require Mattel to Limit Its Subpoenas to**
              **Relevant Matter that Is Not Duplicative of Party Discovery and**
21            **Cannot Be Obtained Through Less Burdensome Means.**

22         A party is only entitled to seek discovery of materials and information that are

23 "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The need to

24 limit the permissible scope of discovery applies with even greater force in the

25 context of non-party discovery. *See Dart Indus. Co., Inc. v. Westwood Chem. Co.,*

26 *Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and

27 should not be unnecessarily restricted, . . . the 'necessary' restriction may be broader

28

9

EXHIBIT **36**

PAGE **513**

1   when a nonparty is the target of discovery.") (citation omitted).  Indeed, a

2   subpoenaing party must "take reasonable steps to avoid imposing undue burden or

3   expense on a person subject to that subpoena." Fed. R. Civ. P. 45(c)(1).

4        Where the subpoenaing party fails to properly limit the scope of its subpoena

5   such that the subpoena "subjects a person to undue burden," a court must quash or

6   modify the subpoena on timely motion. Fed. R. Civ. P. 45(c)(3)(A)(iv).  In addition,

7   Federal Rule of Civil Procedure 26(b)(2) requires that discovery shall be limited by

8   the court if it finds any of the following:

9        (i) the discovery sought is unreasonably cumulative or duplicative, or

10       can be obtained from some other source that is more convenient, less
        burdensome, or less expensive;

11       (ii) the party seeking discovery has had ample opportunity to obtain the

12       information by discovery in the action; or

13       (iii) the burden or expense of the proposed discovery outweighs its
        likely benefit, considering the needs of the case, the amount in
        controversy, the parties' resources, the importance of the issues at stake

14       in the action, and the importance of the discovery in resolving the issues.

15   Fed. R. Civ. P. 26(b)(2)(C).

16        A motion to quash a subpoena or for a protective order as to that subpoena

17   may be made by a party-opponent.  *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633,

18   636 (C.D. Cal. 2005) (granting defendants' motion to quash subpoena issued by

19   plaintiff); *Aliotti v. Senora*, 217 F.R.D. 496, 499 (N.D. Cal. 2003) (granting

20   defendant's motion for protective order as to subpoenas issued by plaintiff).  Indeed,

21   a party cannot merely object to a subpoena served on a nonparty; rather, the party

22   "must seek a protective order or make a motion to quash." *Moon*, 232 F.R.D. at 636.

23        In evaluating whether a subpoena imposes an undue burden and therefore

24   must be quashed or modified, "'the court [must] weigh the burden to the subpoenaed

25   party against the value of the information to the serving party,' . . . and, in particular,

26   requires the court to consider: 'such factors as relevance, the need of the party for the

27   documents, the breadth of the document request, the time period covered by it, the

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT __3 6__

PAGE __5 14__

1  particularity with which the documents are described and the burden imposed.'" *Id.*

2  at 637, quoting *Travelers Indem. Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111,

3  113 (D. Conn. 2005) (granting defendant's motion to quash subpoena because it

4  covered a ten-year period and was not limited to products at issue).

5      A subpoena is also unduly burdensome where the subpoenaing party "can

6  more easily and inexpensively obtain the documents from [another party], rather than

7  from [the] nonparty." *Moon*, 232 F.R.D. at 638. *See also Lectrolarm Custom Sys. v.*

8  *Pelco Sales*, 212 F.R.D. 567, 573 (E.D. Cal. 2002) (issuing protective order where

9  plaintiff subpoenaed non-party for documents that plaintiff had sought from

10  defendant because the "burdensome and harassing nature of the requests clearly

11  outweigh[ed] the minimal need for the very limited amount of information that could

12  be discovered under the subpoenas"); *J & M Turner, Inc. v. Applied Bolting Tech.*

13  *Prods.*, Civil Action No. 95-2179, Civil Action No. 96-5819, 1997 U.S. Dist. LEXIS

14  4447 (E.D. Pa. Apr. 2, 1997) (granting non-party bank's motion to quash subpoena

15  seeking financial information already sought and obtained from another party).

16      Applying these principles here, there is no question that Mattel's subpoenas to

17  the Non-Parties must be quashed or, at a minimum, substantially narrowed.

18      **B.**    **Mattel's Subpoenas Are Abusively Drawn to Seek Irrelevant and**
             **Duplicative Materials and Are Designed Solely to Harass the MGA**

19              **Defendants and Non-Parties with whom They Have Personal,**
             **Financial or Business Relationships.**

20

21      Spurning the limitations that the Federal Rules and the Court have expressly

22  imposed on non-party discovery, Mattel has spent its last few months of Phase 1

23  discovery issuing a multitude of subpoenas demanding the production of vast

24  amounts of largely irrelevant personal and financial information about the MGA

25  Defendants, every person who ever worked for or represented MGA, and every

26  conceivable relative of Isaac Larian. As is clear from the face of Mattel's requests,

27

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT **36**

PAGE **515**

1  Mattel has abused the non-party discovery process with these unnecessary and
2  harassing subpoenas.

3        This is hardly the first time that Mattel has engaged in improper non-party
4  discovery practices.  In *Mattel, Inc. v. Walking Mountain Productions*, Mattel and its
5  trial counsel, Quinn Emanuel, tried to enforce a subpoena issued to the San Francisco
6  Museum Of Modern Art ("SFMOMA"), the employer of one of the defendant's
7  experts.  The subpoena demanded not only "all documents relating to [the defendant]
8  and his works and all documents relating to Mattel or Barbie, . . . [b]ut it also
9  demanded all documents relating to the SFMOMA's 'policy or practice relating to the
10  third-party copying, reproduction, or photographing' of works in which the
11  SFMOMA had a proprietary interest—a topic that [had] no bearing on [the] litigation
12  or [the expert]."  353 F.3d at 813.

13        The district court quashed the subpoena and sanctioned Mattel, finding that
14  Mattel's subpoena was "very broad" and "abusively drawn"; that Mattel made "no
15  attempt . . . to try to tailor the information request to the immediate needs of the
16  case"; and that the subpoena was "served for the purpose of annoying and
17  harassment and not really for the purpose of getting information."  *Id.* at 813-14.
18  The Ninth Circuit affirmed the district court's order: "Given the intended protections
19  of the Rule [45] and Mattel's violation of those protections, we find that the San
20  Francisco federal district court did not abuse its discretion by quashing Mattel's
21  subpoena, and its factual findings do not display clear error."  *Id.* at 814.

22        Mattel's non-party discovery tactics in this case are as abusive and improper as
23  its tactics in *Walking Mountain*, if not more so.  Mattel's subpoenas to the Non-
24  Parties generally seek four categories of information: (1) financial information
25  regarding MGA and Isaac Larian; (2) financial information regarding non-parties,
26  including every current and former MGA employee, the Larian Trusts and every
27  conceivable relative of Mr. Larian; (3) all documents related in any way to any
28

EXHIBIT  3 6

PAGE  5 1 6

1 | litigation between Isaac and Farhad Larian; and (4) various documents related to
2 | Bratz, other MGA products at issue or Carter Bryant.  Mattel's requests are so overly
3 | broad and abusively drawn that it is readily apparent that they were specifically
4 | drafted solely to burden and harass the Non-Parties and the MGA Defendants.  In
5 | addition, to the extent that any of the materials sought by Mattel are relevant, Mattel
6 | has made no effort to exclude from the scope of its subpoenas those documents that
7 | it has already obtained, sought or could seek through party discovery.

8           **1.  Mattel Seeks Irrelevant and Duplicative Financial**
9                   **Information Regarding MGA and Isaac Larian.**

10 |     Mattel has subpoenaed five different entities that perform financial services
11 | for MGA or Isaac Larian seeking virtually every scrap of paper and every byte of
12 | data pertaining to MGA and Mr. Larian's finances over the last nine years.  (Park
13 | Decl., Ex. 11 (Wells Fargo Subpoena) at Requests 1-5; Ex. 9 (Wachovia Subpoena)
14 | at Requests 1-7, 12; Exs. 7-8 (Ernst & Young and Deloitte & Touche Subpoenas) at
15 | Requests 1-3, 8; Ex. 12 (Moss Adams Subpoena) at Requests 1, 2, 6-8, 12-16, 18.)
16 | There is no justification for issuing such expansive subpoenas covering largely
17 | irrelevant material, particularly since whatever small amount of relevant information
18 | may be covered by the subpoenas has already been requested from the parties.
19 |     When a party subpoenas an adverse party's financial information, courts are
20 | especially vigilant in limiting the subpoena's scope so that irrelevant financial
21 | information is not produced.  *See S. Cal. Hous. Rights Ctr. v. Krug,* Case No. CV 06-
22 | 1420 SJO (JCx), 2006 U.S. Dist. LEXIS 65330 (C.D. Cal. Sept. 5, 2006) (denying
23 | request for production of tax return because plaintiff could not show a compelling
24 | need for the return where less intrusive means could be used to establish defendant's
25 | net worth); *In re Ashworth, Inc. Sec. Litig.,* Civil No. 99 cv 0121 L (JAH), 2002 U.S.
26 | Dist. LEXIS 27991, at *20 (S.D. Cal. May 10, 2002).  In *Ashworth,* for example, the
27 | district court quashed subpoenas issued to the defendant's financial analysts and
28 |

13<br>MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,<br>FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT 36

PAGE 517

1 | investment companies as "overwhelmingly broad in category and content" because
2 | "[a]s they are phrased, the requests appear, in this Court's view, to seek all
3 | documents in the third party financial analysis' possession that refer to or mention
4 | Ashworth in any shape or form."  2002 U.S. Dist. LEXIS 27991, at *20.
5 |      Here, Mattel's subpoenas do not merely appear to ask for everything relating
6 | to MGA or Mr. Larian, they *literally* demand everything.  The subpoena to MGA's
7 | bank Wells Fargo, for example, demands "[a]ll DOCUMENTS REFERRING OR
8 | RELATING TO MGA from January 1, 1999 to the present, inclusive."  (Park Decl.,
9 | Ex. 11 at Request 1.  *See also id.* at Requests 2-5 (requesting all documents related to
10 | any MGA account at Wells Fargo or any other financial institution).)  The subpoena
11 | to Mr. Larian's tax accounting firm Moss Adams similarly demands "[a]ll
12 | DOCUMENTS RELATING TO MGA [and] ISAAC LARIAN, including without
13 | limitation accounting records, tax returns and schedules . . . and drafts thereof, W-2s,
14 | work papers, worksheets, payroll records, financial statements (audited and
15 | unaudited), pro formas, budgets, account information and account statements."  (Park
16 | Decl., Ex. 12 at Requests 1, 2.)  Moreover, in case it was not clear enough from these
17 | requests that Mattel truly wanted *everything*, Mattel gave the term "RELATING TO"
18 | the broadest possible construction imaginable.  (*Id.* at 4 (defined as "referencing,
19 | referring to, constituting, evidencing, pertaining to, mentioning, supporting,
20 | contradicting, negating, bearing on, touching on, containing, embodying, reflecting,
21 | identifying, stating, dealing with, concerning, commenting on, summarizing,
22 | responding to, relating to, describing or discussing in any way.").)
23 |      Mattel's subpoenas to MGA's auditors and lender are equally unrestrained in
24 | scope.  For example, Mattel's subpoenas request all documents relating to the
25 | financial services that MGA's auditors and lender have provided MGA over the last
26 | nine years. (Park Decl., Exs. 7-8 (Ernst & Young and Deloitte & Touche Subpoenas)
27 | at Request 1 ("All documents constituting or relating to MGA's annual audits . . .
28 |

EXHIBIT 36

PAGE 518

1 | from the period beginning January 1, 1999 to the present."); Ex. 9 (Wachovia
2 | Subpoena) at Request 1 ("All documents relating to any loan agreement . . . that
3 | YOU have entered into with MGA since January 1, 1999 . . .").) Mattel has also
4 | requested that the Non-Parties produce documents identifying other lenders, auditors
5 | or accountants of MGA or Mr. Larian, presumably because Mattel wants to serve
6 | them with similar subpoenas. (Park Decl., Exs. 7-8 (Ernst & Young and Deloitte &
7 | Touche Subpoenas) at Request 8; Ex. 12 (Moss Adams Subpoena) at Request 18; Ex.
8 | 9 (Wachovia Subpoena) at Request 12.)

9 |      Mattel has asserted that it needs this financial information because it is
10 | relevant to damages, Mattel's commercial bribery allegations, and to counter a
11 | statement Mr. Larian made in a prior litigation that, as of 2007, he could not recall
12 | whether he received a bonus in 2003 because MGA's owners invested the company's
13 | profits back into the company.  Such inchoate assertions of relevance are insufficient
14 | to justify the type of unfettered access to MGA and Mr. Larian's financial
15 | information that Mattel seeks. *See, e.g., Ocean Atlantic Woodland Corp. v. DRH*
16 | *Cambridge Homes, Inc.*, 262 F. Supp. 2d 923, 927 (N.D. Ill. 2003).

17 |      In *Ocean Atlantic*, the copyright owner of real estate development plans sued a
18 | developer for infringement with respect to one of its development sites.  The
19 | plaintiff's "interrogatories and production requests [sought] all of the defendants'
20 | financial records relating to their entire business and professional activities, on all
21 | construction projects throughout the country, beginning from 1997 through present
22 | date." *Id.* at 926.  Posing the question "can anything remotely relevant to the claims
23 | and defenses-or more pointedly to damages-arising from use of the Development
24 | Plans at the Liberty Grove development site justify this massive body of discovery,"
25 | the court answered, "*We hardly think so.*" *Id.* (emphasis added).  "This court
26 | perceives an improper motive and purpose to this broad discovery. We cannot
27 | conceive of any relevance to the claims or defenses asserted in this copyright
28 |

15

EXHIBIT **36**

PAGE **519**

1 | infringement case, or of any legitimate purpose of this massive discovery demand.
2 | The production of virtually the entirety of defendants' business books and records
3 | relating to all of its projects could not lead to any admissible evidence." *Id.* at 927.
4 |       The Discovery Master should reach the same conclusion in this case. Mattel's
5 | alleged damages in this case are tied to the particular products at issue, not MGA or
6 | Mr. Larian's entire financial history. Documents such as all of MGA and Mr.
7 | Larian's tax returns, account statements and expense records, or the audit files and
8 | loan documents for MGA, are neither relevant to damages in this case nor reasonably
9 | calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P.
10 | 26(b)(1). Indeed, the Discovery Master already rejected an attempt by Mattel to
11 | obtain Carter Bryant's tax returns. (Park Decl., Ex. 27 (1/25/07 Order) at 14-15.)
12 |       Similarly, Mattel's assertion that the requested financial information is relevant
13 | to its commercial bribery allegations is specious. Mattel's bribery allegations consist
14 | of nothing more than an assertion that MGA financed Bryant to develop Bratz while
15 | he was still employed at Mattel. Mattel's Second Am. Answer & Counterclaim at 37
16 | (¶ 33), 59 (¶ 93(d)), 74 (¶ 165). Thus, the only financial documents that could
17 | possibly be relevant to this allegation are documents showing any payments by
18 | MGA to Bryant during the time he was a Mattel employee.
19 |      Mattel's claim that it needs all of Mr. Larian's financial records to counter his
20 | statement that he did not think he received a bonus in 2003 because MGA's owners
21 | invested the company's profits back into MGA is nothing more than an absurd
22 | fishing expedition. *See Aliotti*, 217 F.R.D. at 498 (rejecting request for party-
23 | opponent's tax returns for impeachment purposes because request was "the kind of
24 | 'fishing expedition' that would undermine the public policy against unnecessary
25 | public disclosure of tax returns") (quotation marks and citations omitted). Setting
26 | aside the issue of relevance (which we dispute), Mattel does not need to comb
27 |
28 |

16

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT __36__

PAGE __520__

1  through nine years' worth of Mr. Larian's financial records to determine whether he
2  received a bonus from MGA in 2003.  That information is obtainable from MGA.

3        In addition to seeking irrelevant material, Mattel's subpoenas contain requests
4  that are covered by one or more of the more than 2,300 document requests Mattel
5  has served on the MGA Defendants.  (Park Decl., Ex. 28 (chart comparing Mattel's
6  requests to Non-Parties with Mattel's document requests to MGA Defendants).)  For
7  example, Mattel has requested that some of the Non-Parties produce documents
8  relating to calculations of MGA and Mr. Larian's net worth and the value of MGA's
9  intellectual property and goodwill, even though Mattel has already requested the
10 same documents from the MGA Defendants.  (*Id.* at 24, 39, and 53.)  As shown
11 below, MGA has already produced numerous documents reflecting MGA's historical
12 and current financial status.  In addition, MGA is continuing to identify, offer to
13 meet and confer about, and produce other relevant, responsive documents.  There is
14 no reason for Mattel to harass non-parties for the same information.

15       Similarly, Mattel's subpoenas for financial records relating to Mr. Larian are
16 duplicative of documents that Mattel served on Mr. Larian.  The document requests
17 to Mr. Larian are the subject of a motion to compel that Mattel filed with the
18 Discovery Master and that has been taken under submission.  Regardless of how the
19 Discovery Master rules as to Mr. Larian's financial documents, resolution of that
20 motion will obviate the need for any production by the Non-Parties.  If the Discovery
21 Master orders Mr. Larian to produce financial documents, Mattel's requests to the
22 Non-Parties will be duplicative of those documents and therefore unnecessary.  If,
23 however, the Discovery Master finds that Mattel's requests to Mr. Larian seek
24 irrelevant information, that ruling would also prevent Mattel from pursuing the Non-
25 Parties for the same irrelevant information.

26       Numerous other documents requested from the Non-Parties are also
27 duplicative of documents that the MGA Defendants have already produced or will be
28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT __**3 6**__

PAGE __**521**__

1   producing.  *See* Fed. R. Civ. P. 26(b)(2)(C) (limiting discovery if it "is unreasonably

2   cumulative or duplicative, or can be obtained from some other source that is more

3   convenient, less burdensome, or less expensive"). The financial documents produced

4   by the MGA Defendants to date include:

5   • Audited and unaudited quarterly and annual profit and loss statements;

6   • Audited and unaudited quarterly and annual statements;

7   • Annual reports;

8   • Various MGA financial reports;

9   • Various financial documents relating to Veronica Marlow;

10   • Documents showing royalty payments to Carter Bryant;

11   • Documents showing MGA's sales, returns and costs of good sold for
12      each month, by SKU, since 2001;

13   • Documents showing MGA's promotional, advertising and media
        expenditures, including MGA's internal allocation of those expenditures
14      by brand and/or product;

15   • Documents showing MGA's amortization and depreciation of certain
        capital assets and expenditures;

16   • Documents showing MGA's monthly general ledger entries aggregated
17      by account, including income and expense accounts, reserves and
        liabilities; and

18   • Documents sufficient to explicate MGA's various accounts as presently
        and historically maintained in MGA's books and records, as well as
19      various nomenclature assigned to items, products, brands, sub-brands,
20      and profit centers.

21   (Park Decl., ¶ 3.)  The MGA Defendants also will be producing or otherwise making

22   available to Mattel additional documents responsive to Mattel's Second Set of

23   Requests for Production.  (Park Decl., ¶ 4.)  In addition, since Mattel continues to

24   serve additional document requests, the MGA Defendants will continue to review

25   and respond to those requests, and to offer to meet and confer regarding the scope of

26   any production of documents.  (*Id.*)  In view of the ample financial documents that

27   the MGA Defendants have produced or will be producing, there is no basis for

28   Mattel to be seeking volumes of financial information from the Non-Parties.

18

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT   36

PAGE   522

1   Mattel has no legitimate need to discover the entirety of MGA and Mr.
2   Larian's financial records over the last nine years.  Nor is there any reason to unduly
3   burden non-parties with expansive requests for such records when those materials
4   either are irrelevant or are properly the subject of party discovery.  The Discovery
5   Master should bar Mattel from seeking such discovery from the Non-Parties.
6          2.    **Mattel Seeks Irrelevant Financial Information Regarding**
7                **Many Non-Parties.**
8       Mattel's subpoenas also demand financial documents regarding numerous non-
9   parties, including everyone who has ever worked for or represented MGA or Isaac
10  Larian, and every relative of Mr. Larian.  (Park Decl., Ex. 11 (Wells Fargo Subpoena)
11  at Requests 1-5; Ex. 9 (Wachovia Subpoena) at Requests 1-7, 12; Exs. 7-8 (Ernst &
12  Young and Deloitte & Touche Subpoenas) at Requests 1-3, 8; Ex. 12 (Moss Adams
13  Subpoena) at Requests 1-8, 12-16, 18, 19; Exs. 13-14 (Larian Trusts Subpoenas) at
14  Requests 1-8, 14, 15.)  Such documents are irrelevant and Mattel's efforts to discover
15  them constitute a clear abuse of the non-party discovery process.
16      Mattel's subpoenas to Moss Adams and the Larian Trusts, for example,
17  include requests that expressly demand the production of a wide array of financial
18  records relating to the Larian Trusts and Farhad Larian.  (Park Decl., Ex. 12 (Moss
19  Adams Subpoena) at Requests 3-5, 12.)  Among the documents sought from the
20  Larian Trusts are "[a]ll of [their] formation DOCUMENTS," all tax returns and any
21  other tax-related documents from 1999 to the present, and documents relating to
22  every material aspect of the Larian Trusts' operation since 1999, including every
23  trustee and beneficiary of each trust, every disbursement made by each trust, every
24  asset owned by each trust, and every liability owed by each trust.  (Park Decl., Exs.
25  13-14 (Larian Trusts Subpoenas) at Requests 1-8.)
26      The financial records of the Larian Trusts and Farhad Larian are not relevant
27  to this case.  None of them are parties to this litigation or alleged to have participated
28

19

EXHIBIT **36**

PAGE **523**

1  in any of the wrongful acts charged by Mattel.  Mattel asserts that financial

2  information regarding Farhad Larian and the Larian Trusts is relevant to show what

3  Mr. Larian did with his money.  How Larian spent or invested his money, however,

4  is irrelevant to the party's claims and defenses.  Mattel's conversion counterclaim, for

5  example, alleges that Mr. Larian wrongfully obtained property and monies belonging

6  to Mattel.  Mattel's Second Am. Answer and Counterclaim at 72-73.  *See also id.* at

7  76 (requesting disgorgement of monies "obtained as a result of the conduct alleged

8  herein").  How Larian spent or invested his money does not bear on the issue of

9  where that money came from or how Larian obtained it.  Nor is such information

10 reasonably calculated to lead to admissible evidence regarding that issue.

11        In addition to the Larian Trusts and Farhad Larian, Mattel has demanded that

12 Wells Fargo, Moss Adams, Ernst & Young, Deloitte & Touche and Wachovia

13 produce financial records for numerous non-parties by using overly broad definitions

14 of "MGA" and "ISAAC LARIAN."  Specifically, Mattel has broadly defined "MGA"

15 to include "any of its current or former employees, officers, directors, agents,

16 representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-

17 interest and successors-in-interest, and any other PERSON acting on its behalf,

18 pursuant to its authority or subject to its control." (Park Decl., Ex. 11 (Wells Fargo

19 Subpoena) at 1.  *See also* Ex. 12 (Moss Adams Subpoena) at 3; Park Decl., Ex. 9

20 (Wachovia Subpoena) at 1-2.)  Similarly, Mattel has defined "ISAAC LARIAN" to

21 include "all of his current or former employees, agents, representatives, attorneys,

22 accountants, vendors, consultants, independent contractors, predecessors-in-interest

23 and successors-in-interest, relatives (whether by blood or marriage), and any other

24 PERSON acting on his behalf, pursuant to his authority or subject to his control."

25 (Park Decl., Ex. 12 (Moss Adams Subpoena) at 1.)

26        Mattel's sweeping definitions have no legitimate purpose and were intended

27 solely to harass.  Indeed, *Mattel's definition of Mr. Larian even extends to his*

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT __36__

PAGE __524__

1   *children.*  Mattel cannot credibly assert that the tax returns, financial statements,

2   payroll records and other financial records for Mr. Larian's children and all of these

3   other non-parties are even remotely relevant to proving damages or establishing or

4   refuting any of the parties' claims or defenses.  Even if Mattel could concoct some

5   theory of relevance, any probative value would be far outweighed by the burden and

6   expense associated with identifying all of these individuals and searching for and

7   collecting responsive documents, as well as by the substantial privacy interests of the

8   many non-parties who would be affected by compliance with the subpoenas.

9        Mattel's attempt to seek financial records of non-parties such as the Larian

10  Trusts, all of Mr. Larian's relatives and everyone who has ever done any work for

11  MGA or Mr. Larian mirrors the abusive non-party discovery tactics that Mattel and

12  Quinn Emanuel employed in *Walking Mountain.*  As was the case in *Walking*

13  *Mountain,* none of the non-party information that Mattel is demanding in this case

14  has anything to do with this litigation.  In addition, Mattel's requests are overly broad

15  and have not been tailored in any way to focus on relevant documents that Mattel

16  actually needs.  Indeed, Mattel appears to have deliberately drafted its requests to be

17  as broad as possible.  The Discovery Master should respond in the same manner that

18  the district court and Ninth Circuit responded in *Walking Mountain*—quash Mattel's

19  subpoenas.

20        **3.    Mattel Seeks Irrelevant and Duplicative Information
21             Regarding Litigation Between Isaac and Farhad Larian.**

22        Each of Mattel's subpoenas to the Non-Parties except Wells Fargo includes a

23  request for all documents relating to any litigation between Isaac Larian and his

24  brother Farhad.  (Park Decl., Ex. 9 (Wachovia Subpoena) at Request 10; Exs. 7-8

25  (Ernst & Young and Deloitte & Touche Subpoenas) at Request 6; Ex. 12 (Moss

26  Adams Subpoena) at Request 11; Ex. 10 (ConsumerQuest Subpoena) at Request 14;

27  Exs. 13-14 (Larian Trusts Subpoenas) at Request 12.)  These requests are excessive

28

21

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT __36__

PAGE __525__

1  and unnecessary. Mattel has requested those documents from the best sources of

2  those materials and, to the extent they are relevant, has obtained or will obtain them

3  from those sources. *See* Fed. R. Civ. P. 26(b)(2)(C) (limiting discovery where it "is

4  unreasonably cumulative or duplicative, or can be obtained from some other source

5  that is more convenient, less burdensome, or less expensive"); *Moon*, 232 F.R.D. at

6  638 (subpoena was unduly burdensome where party "can more easily and

7  inexpensively obtain the documents from [another party]").

8      Mattel's requests to the Non-Parties for documents relating to any litigation

9  between Isaac and Farhad Larian are duplicative of requests that Mattel previously

10  served on Isaac Larian, MGA, Farhad Larian, Stern & Goldberg and Kaye Scholer.

11  (Park Decl., Ex. 28 (comparison chart) at 28-29, 44, 57 and 92.)  Mattel has already

12  received some documents in response to those previously served requests and is

13  currently engaged in motion practice with respect to the production of additional

14  documents by Isaac Larian, Farhad Larian and the law firms.  (Park Decl., ¶ 6.)

15  Mattel has not asserted that the Non-Parties possess any unique set of relevant, non-

16  privileged materials relating to litigation between Isaac and Farhad Larian that

17  neither Isaac Larian, Farhad Larian, nor the law firms possess.  Under the

18  circumstances, Mattel's duplicative requests to the Non-Parties are improper.

19      As to documents that Mattel has already received, Mattel's demand that the

20  Non-Parties search for and produce the same documents is unduly burdensome.  To

21  the extent production of additional documents is ordered in connection with the

22  pending discovery motions, Mattel's requests that the Non-Parties also produce those

23  documents would be improper since Mattel would already be obtaining such

24  materials from other sources.  Moreover, to the extent it is determined that Mattel is

25  not entitled to any further production by Isaac Larian, Farhad Larian or the law firms,

26  Mattel should not be permitted to circumvent that ruling by seeking such production

27  from the Non-Parties.  Accordingly, Mattel's requests to the Non-Parties for

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT __36__

PAGE __526__

1  documents relating to all litigation between Isaac and Farhad Larian must be rejected.

2         **4.  Mattel's Requests for Documents Related to MGA's Products or Carter Bryant Are Overly Broad and Abusively Drawn.**

3

4        Mattel's subpoenas to the Non-Parties also include requests for all documents

5  relating to Bratz that they obtained from MGA and/or Isaac Larian.  (Park Decl., Ex.

6  9 (Wachovia Subpoena) at Request 8; Exs. 7-8 (Ernst & Young and Deloitte &

7  Touche Subpoenas) at Request 4; Ex. 12 (Moss Adams Subpoena) at Request 9; Ex.

8  10 (ConsumerQuest Subpoena) at Requests 1, 3, 5; Exs. 13-14 (Larian Trusts

9  Subpoenas) at Request 9.)  Mattel has also requested that the Larian Trusts and

10  ConsumerQuest produce documents relating to Carter Bryant.  (Park Decl., Exs. 13-

11  14 (Larian Trusts Subpoenas) at Request 10; Ex. 10 (ConsumerQuest Subpoena) at

12  Request 11.)  The ConsumerQuest subpoena further requests documents relating to

13  other MGA products or work performed for MGA.  (Park Decl., Ex. 10 at Requests 2,

14  4, 6-8, 10, 12.)  Although some documents regarding MGA's products or Mr. Bryant

15  may be relevant, Mattel's requests are improper because they are overly broad and

16  not tailored to exclude irrelevant or duplicative information.  *See* Fed. R. Civ. P.

17  26(b)(2)(C); *Walking Mountain*, 353 F.3d at 813 (quashing subpoena issued by

18  Mattel and Quinn Emanuel because "no attempt had been made to try to tailor the

19  information request to the immediate needs of the case").

20        Over the past three years, Mattel has taken vast amounts of discovery

21  regarding Bratz, other MGA products at issue and Mr. Bryant.  Mattel has served the

22  MGA Defendants with hundreds of document requests covering these subjects and

23  has received in response to its requests more than three million pages of responsive

24  documents.  (Park Decl., ¶ 2.)  For example, Mattel has already requested and

25  obtained from MGA mountains of documents relating to Bratz.  (*See, e.g.*, Park Decl.,

26  Ex. 29 (Mattel's 1st Set of RFPs to MGA) at Request 32 ("ALL DOCUMENTS

27  prepared, written, transmitted or received (whether in whole or in part) prior to

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT **36**

PAGE **522**

1  January 1, 2001 that REFER OR RELATE TO BRATZ.") & Request 33 ("ALL
2  DOCUMENTS that REFER OR RELATE TO BRATZ that REFER OR RELATE
3  TO any time prior to January 1, 2001 (regardless of when such document was
4  prepared, written, transmitted or received, whether in whole or in part).").)  Similarly,
5  documents relating to market research for MGA's "4 Best Friends," "Mommy's Little
6  Patient," "Mommy's Little" and "Alienracers" products are already the subject of
7  several of Mattel's document requests to MGA.  (See, e.g., Park Decl., Ex. 30
8  (Mattel's 1st Set of RFPs Re Unfair Competition) at Request 26 ("All DOCUMENTS
9  RELATING TO the target market or potential target market, and the demographics
10 of any actual, potential or prospective consumers, customer, purchasers or licensees
11 of the CONTESTED MGA PRODUCTS.") & Request 36 ("All DOCUMENTS
12 RELATING TO any consumer studies, reports, surveys, interviews or reports
13 regarding the CONTESTED MGA PRODUCTS . . .").)
14       Having had ample opportunity to take discovery regarding Bratz, the other
15 MGA products at issue, and Mr. Bryant, Mattel should not be permitted to burden
16 the Non-Parties with duplicative discovery requests. Fed. R. Civ. P. 26(b)(2)(C);
17 Lectrolarm, 212 F.R.D. at 573 (granting protective order against subpoenas that
18 requested information that was already the subject of party discovery).  Even if some
19 of the documents Mattel seeks are relevant, Mattel has a duty to "take reasonable
20 steps to avoid imposing undue burden or expense on [subpoenaed non-parties]." Fed.
21 R. Civ. P. 45(c)(1).  Such steps include tailoring the requests by specifying only the
22 relevant, non-duplicative materials that Mattel needs. See Walking Mountain, 353
23 F.3d at 813 (quashing Mattel's subpoena where Mattel made "no attempt . . . to try to
24 tailor the information request to the immediate needs of the case"); Lectrolarm, 212
25 F.R.D. at 573 (holding that plaintiff could only obtain documents from non-party
26 "with a showing that there is specific, relevant information in [non-party's]
27 possession that [is not privileged]").
28

1      Mattel has made no effort to tailor its requests, but has deliberately drafted

2 them to cast as wide a net as possible. For example, Mattel has broadly requested

3 that ConsumerQuest produce "ALL DOCUMENTS REFERRING OR RELATING

4 TO BRATZ . . . [AND] SCOOTER SAMANTHA," without any limitation as to time

5 or type of documents. (Park Decl., Ex. 10 at Requests 1, 2.) Mattel has also

6 demanded that ConsumerQuest produce "all DOCUMENTS REFERRING OR

7 RELATING TO any study, survey, focus group, research group or other work or

8 services for MGA that YOU conducted, facilitated or were otherwise involved with

9 prior to December 31, 2002, " which literally encompasses everything that

10 ConsumerQuest ever did for MGA prior to 2003, even if it had nothing to do with

11 Bratz or any of the other MGA products at issue. (*Id.* at Request 6.)

12      Because Mattel has failed to take any steps, let alone reasonable steps, to avoid

13 unduly burdening the Non-Parties, its subpoenas are improper and must be quashed

14 or substantially narrowed.

15 **IV.   CONCLUSION.**

16      Mattel has misused the subpoena process by serving deliberately overbroad

17 requests in an attempt to harass and intimidate the MGA Defendants and Non-Parties.

18 Even worse, Mattel has refused to withdraw the subpoenas or make any effort to

19 narrow their scope in any meaningful way. Accordingly, the MGA Defendants

20 respectfully request that the Discovery Master quash Mattel's subpoenas to

21 ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and Angela Larian

22 Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells

23 Fargo, or, at a minimum, issue a protective order substantially narrowing the scope

24 of those subpoenas and requiring Mattel to specifically identify the relevant and non-

25 duplicative information that it seeks from the Non-Parties.

26

27

28

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE,
FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT **36**

PAGE **529**

DATED: December 21, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _Thomas J. Nolan /PQ_
Thomas J. Nolan

Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LIMITED, and MGAE de MEXICO S.R.L. de C.V.

26

MGA DEFENDANTS' MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER AND MEMORANDUM IN SUPPORT

EXHIBIT __36__

PAGE __530__

# EXHIBIT 37

From:           Peter Marlow
Sent:           Monday, August 01, 2005 12:31 PM
To:             'cbe1068@sbcglobal.net'
Subject:        FW: Veronica Marlow


-----Original Message-----
From: Peter Marlow [mailto:pmarlow@socal.rr.com]
Sent: Monday, June 20, 2005 3:14 PM
To: Paula Garcia
Cc: Isaac Larian (ilarian@mgae.com); 'Isaac Larian (President / CEO)'; 'mwoods@mgae.com';
'CBE1068@cs.com'
Subject: Veronica Marlow


Hi Paula,

I have prepared the following table to show how Veronica's costs to you this year are in line with
previous years. Also, you will see that the cost per doll is quite reasonable and is not increasing.
(Please let me know if your e-mail formatting makes this table difficult to read.)


2002

2003

2004

2005

2005 (note 1)

total payments (note 2)

318,731

545,077

238,274

181,562

215,452

sales tax charged

0

0

1,865

5,823

8,199

net

CONFIDENTIAL ATTORNEYS' EYES ONLY

318,731

545,077

236,409

175,739

207,253

dolls (note 3)

100

159

77

101

147

cost per doll

3,187

3,428

3,070

1,740

1,410

Notes:

1) Data in this last column of 2005 shows dolls quoted, not yet invoiced.

2) Shows payments received from MGA during the calendar year. Payments do not include Sugar Planets royalty payments.

3) Includes all Bratz, Boyz, Babyz, Lil' Bratz and Lipstixx. Some dolls may have outfits with many more pieces than others, even 2 or 3 sets of outfits per doll. This item indicates a count of dolls, not outfits. Each duplicate sample is also counted as one doll.

Due to a delay in my bookkeeping, 49 of the 101 dolls that appear as being made in 2005 (first column of 2005) were actually delivered in 2004 but not invoiced or paid for until 2005. This type of discrepancy exists to a much smaller degree (5 or 10 dolls) between other years.

Cost per doll was higher in 2003 due to overtime expenses. Average cost per doll has gone down in 2005 due to an increase of duplicates and Babyz in the mix. (Duplicates cost less to make than the first preliminary design sample because they do not require research, shopping, pattern making, spec sheets, etc.) If you would like, we may break this table down further to show cost per outfit as well as create separate tables for Babyz and duplicates.

Veronica has seriously considered your very generous offer of employment with MGA and regrets that she cannot accept it. This is her concern:

If Veronica goes to work for MGA, she will no longer be able to work with her team of pattern and sample makers. They have secure day jobs with an outlook of many more years of stability that they

CONFIDENTIAL ATTORNEYS' EYES ONLY

KMW-MARLOW 002916

EXHIBIT __37__

PAGE __532__

EX 13223-0002

are unwilling to leave. They only moonlight for Veronica. About 6 months ago we offered each of them full-time employment at double their present salaries with a very generous benefits package but they all refused.

These are older ladies, comfortable with the way things are and they don't want to change. We pay them very generously because they are risking their day jobs - even a nice retirement - to work for us. If they were ever discovered they'd certainly be painfully humiliated and fired. Yet they have told Veronica several times that they don't work for her for the money.

Veronica never shows them any impatience. She never intimidates, threatens or pressures them. They have nothing to fear. Veronica sits and works with them, always by their sides with tools in her hands. She's one of them. She's their friend. There's never any bickering or gossip.

Veronica invented giving them yearly bonuses. Not because they asked for it, but because she loves them. So we give them an extra $3,000 to $5,000 a year each. They cried upon getting their first bonus checks realizing that after all these years they have finally found someone to work for that treats them right. I don't think they are motivated by the amount of money we give them. I think it just helps them understand how much we love them, value them and enjoy them. The money is a sure way of showing it.

These women have fun together. They eat and sit around a big TV watching Spanish soap operas while they work. As Veronica leaves for work in the evening I sometimes ask her if she can't stay home that night. She'll usually tell me she needs to go. She doesn't "need" to go so she can supervise or crack a whip. She needs to go because they want her there. They need her.

So, how do they get any work done like this? Maybe it's just that they are so talented. They have more than 100 years total of doll making experience between them. They are extremely fast and accurate. Despite the TV and the laughter, they work at a very intense pace. More importantly, though, they just love what they do. They are having fun. And what Veronica does through her love for these women, perhaps without even realizing it, is create a work environment where that fun never goes away. It's as close as you can get to a Santa's workshop.

When it's over they'll be fine. They aren't going to start looking for jobs when Veronica has to call it quits. They have jobs. Working for Veronica is their fun. They do this for her.

With Veronica at MGA, Mel and Isaac would be expecting the same productivity and quality they get from her now. But that just won't happen. The dolls won't be as nice, deadlines will be missed and sales will go down.

In the short term, MGA might be able to save a few thousand dollars by shaking up this delicate but very successful arrangement. But it will cause frustrations and aggravations down the line that Veronica will not want to put up with for any amount of money, especially if there will be more meetings like the last one. If MGA is willing to destroy Bratz over a few thousand dollars, then something very wrong is going on. Veronica will not want to be a part of it.

Best regards,

Peter

CONFIDENTIAL ATTORNEYS' EYES ONLY

KMW-MARLOW 002917

EXHIBIT __37__

PAGE __533__
EX 13223-0003

# EXHIBIT 38

CONFORMED COPY
LODGED                    FILED

2007 MAY 16  PM 1:59   2007 MAY 16  PM 2:00

CLERK U.S. DISTRICT COURT   CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.     CENTRAL DIST. OF CALIF.
RIVERSIDE                   RIVERSIDE
BY                          BY

1  | Hon. Edward A. Infante (Ret.)
   | JAMS
2  | Two Embarcadero Center
   | Suite 1500
3  | San Francisco, California 94111
   | Telephone:   (415) 774-2611
4  | Facsimile:   (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

                          EASTERN DIVISION

9

10

11 | CARTER BRYANT, an individual,          | CASE NO. C 04-09049 SGL (RNBx)
   |                                        | JAMS Reference No. 1100049530
12 |          Plaintiff,
   |                                        |
13 |     v.                                 | Consolidated with
   |                                        | Case No. CV 04-09059
14 | MATTEL, INC., a Delaware corporation,  | Case No. CV 05-2727
   |                                        |
15 |          Defendant.                    | ORDER GRANTING MATTEL'S
   |                                        | MOTION TO COMPEL PRODUCTION
16 |                                        | OF DOCUMENTS AND
   |                                        | INTERROGATORY RESPONSES BY
17 | CONSOLIDATED WITH                      | MGA
   | MATTEL, INC. v. BRYANT and
18 | MGA ENTERTAINMENT, INC. v. MATTEL,
   | INC.
19 |

20                          I.  INTRODUCTION

21      On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

22 of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

23 20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

24 reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

25 submission pending the parties' submission of a proposed protective order, which was received

26

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

EXHIBIT 38

PAGE 534

1   on April 23, 2007.  Having considered the motion papers and comments of counsel at the hearing,

2   Mattel's motion to compel is granted.

3                                    II.  BACKGROUND

4        A.  Requests for Documents

5        In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6   became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7   categories of documents, to be produced in ten days.  MGA filed a motion to quash, which the

8   court granted because of the short amount of time provided for compliance with the subpoena.

9   The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10  some of Mattel's requests.  In particular, the parties agreed to limit production to the "first

11  generation" Bratz dolls.  On August 12, 2004, MGA produced documents.

12       In 2005, the parties stipulated to supplementing their document productions on May 16,

13  2005.  Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14       In September of 2006, MGA made a supplemental production of documents.  On February

15  5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16  with legibility problems.  On February 20, 2007, MGA produced an additional 224 pages of

17  documents to replace earlier produced documents with legibility problems.

18       Mattel now moves to compel MGA to produce documents responsive to its requests.  As a

19  preliminary matter, Mattel contends that MGA's production is deficient because it contains

20  redactions and cut-off text.  Further, Mattel contends that MGA's production is incomplete with

21  respect to essentially five categories of documents.  First, Mattel contends that MGA is

22  withholding documents relating to the origins of Bratz and Bryant's work for MGA.  Mattel

23  believes that MGA's production is incomplete based upon its review of documents that have been

24  produced by third party Steven Linker.  According to Mattel, Linker's documents from October

25  of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26  previously represented.  Mattel also contends that MGA's responses to the document requests

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                            2

EXHIBIT _38_

PAGE _535_

1   contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2   responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3   show when certain dates relating to Bratz occurred.  Mattel contends that these "carve outs

4   purport to allow MGA to cherry-pick what it will and will not produce to Mattel." Mattel's

5   Separate Statement at 17:11-13.  Mattel also contends that the carve-outs fail to provide notice of

6   what is or is not being withheld.  Mattel also contends that MGA's objections based upon its

7   confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8   protective order in place.  In addition, Mattel contends that MGA's objection to producing

9   documents relating to activities or conduct in foreign countries is wholly improper because those

10   documents may contain information relevant to Mattel's claims.

11        Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12   such documents relate to the "first generation" Bratz dolls.  Mattel argues that whether the work

13   ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14   discovery purposes.  Mattel contends that the works created by Bryant during his Mattel

15   employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16   a Bratz doll released at a particular time.[1]

17        Mattel next contends that MGA is improperly withholding documents about designs

18   Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19   be derivative of work he did when employed by Mattel.  Mattel contends that it is entitled to

20   explore whether such works and the profits from Bratz dolls other than the "first generation"

21   Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22   and damages.  Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23   improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24   information as well as MGA's unfair competition claims.

25   _____

26     [1] Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion to compel Bryant to produce documents.

27

28   Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                         3

EXHIBIT   38
PAGE   536

1    Mattel also asserts that MGA is improperly withholding documents relating to products,
2    services and matters other than those relating to "dolls." According to Mattel, it has evidence that
3    Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by
4    Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the
5    Inventions Agreement.
6        Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just
7    payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant
8    because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;
9    (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual
10   damages; and (3) payments may show when and what trade secret information Bryant and other
11   defendants allegedly misappropriated from Mattel.
12       Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel
13   contends that all agreements between Bryant and MGA are relevant, not just the original
14   September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all
15   documents relating to MGA and Bryant's alleged joint defense agreement because such
16   information would be relevant to demonstrate bias and lack of credibility.
17       Fifth, Mattel seeks production of all declarations, affidavits and other sworn written
18   statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such
19   information may reveal relevant information about the date of creation of Bryant's Bratz
20   drawings.
21       In response, MGA denies withholding responsive documents and asserts that it has
22   produced volumes of documents responsive to Mattel's requests. In particular, MGA represents
23   that it has produced all responsive and relevant documents that it was able to locate in response to
24   request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even
25   before the motion was filed, it had agreed to address the vast majority of the issues raised in this
26   motion. In particular, MGA represents that it is diligently working to produce documents related
27
28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                           4

EXHIBIT _____ 38

PAGE _____ 537

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100. MGA represents that it informed

3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4   have been released on the market. In addition, MGA represents that it has agreed to produce

5   documents relevant to Bratz or Prayer Angels that it received from Union Bank. More

6   specifically, MGA represents that it agreed to review and produce documents provided to it by

7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8   Bratz or Prayer Angels. MGA also represents that it has agreed to produce royalty statements.

9   Therefore, MGA views the motion as unnecessary.

10          MGA next contends that Mattel's motion should be denied for the following additional

11   reasons. First, MGA contends that Mattel is not entitled to MGA's product design documents for

12   unreleased products. MGA asserts that its product design documents for its unreleased toy

13   concepts are among its most highly valuable trade secrets. Furthermore, MGA contends that

14   designs and drawings for products currently under development, over six years after Bryant first

15   created his original Bratz drawings, have no relevance to any of Mattel's claims. In the event that

16   documents relating to unreleased products are ordered produced, MGA requests a protective order

17   under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18   than the current protective order provides. In the alternative, MGA requests that any order

19   compelling production of documents relating to unreleased products should essentially be stayed

20   until after MGA's products are publicly released.

21          Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22   attorneys' fees because the information is privileged. Furthermore, MGA contends that the

23   information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SOL (RNBx)

5

EXHIBIT 38
PAGE 538

1  in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2  Opposition at 24:9-12.[2]

3       Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4  and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5  refused to produce similar types of documents. More significantly, MGA contends that Mattel's

6  requests for non-public witness statements are "a blatant attempt to avoid the discovery

7  limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8  imposed by this Court." MGA's Opposition at 25:6-7. MGA explains its position as follows.

9  MGA is involved in litigation against a number of counterfeiters and infringers in Asia. In 2003,

10 Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11 attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12 abandoned its claims based upon "Toon Teens" in this court. Thereafter, those defendants took

13 the position that MGA did not own, and therefore could not enforce, the rights to Bratz. MGA

14 was thus forced to litigate the issue of ownership. MGA contends that "[i]n effect, by prompting

15 foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16 a situation in which MGA has been forced to give testimony and provide evidence related to

17 issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18      Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19 dispute between MGA's chief executive officer and his brother because such documents are in no

20 way relevant to this lawsuit. MGA explains that the brothers were involved in an arbitration

21 proceeding relating to MGA's CEO's purchase of his brother's interest in MGA. Moreover,

22 MGA contends that the brothers were bound by a protective order prohibiting the use of any

23 documents or testimony for any purpose other than the arbitration.

24

25 ——————————

26      [2]  Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

27

28 Bryant v. Mattel, Inc.,
   CV-04-09049 SOL (RNBx)                                                          6

EXHIBIT ___38

PAGE ___539

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel
2    files because they contain confidential information and are not relevant to the lawsuit.  Sixth,
3    MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are
4    in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd.  Lastly,
5    MGA objects to producing documents relating to any testing performed to determine the date that
6    Bratz documents were created.  MGA contends that such discovery is premature and should not
7    proceed until experts are designated.

8        B. Interrogatories

9        On April 28, 2005, Mattel served its Second Set of Interrogatories.  On May 20, 2005,
10   however, the district court stayed the action.  On May 17, 2006, the district court lifted the stay.
11   On May 30, 2006, MGA responded to the interrogatories.

12       Mattel contends that MGA's responses to the interrogatories were untimely.  Further,
13   Mattel contends that the interrogatory responses to numbers five through eleven are deficient
14   because they lack substantive information and consist almost entirely of objections.  MGA
15   responds that the motion is moot because it is prepared to provide supplemental responses to its
16   interrogatories.  MGA does not otherwise assert any additional grounds for opposing Mattel's
17   motion to compel responses to interrogatories.

18                   III. DISCUSSION

19       A. Rule 26 of the Federal Rules of Civil Procedure

20       Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain
21   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any
22   party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the
23   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.
24   Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is
25   unreasonably cumulative or duplicative, or is obtainable from some other source that is more
26   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample
27
28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                              7

EXHIBIT _38_

PAGE _540_

1   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4   the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5   26(b)(2).

6      B.  Document Requests

7         1.  Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8            34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9      The requests above seek discoverable information regarding the origins of Bratz and

10  Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11  response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and  69 (MGA's Opposition at 13:4-5), and is

12  "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13  and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14  14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15  products and documents from MGA Hong Kong.

16      As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17  its production to "relevant and responsive non-objectionable documents" or documents

18  "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19  might be excluding documents that are responsive to the request based upon its unilateral

20  determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21  document requests ordered herein without these restrictions.

22                  Design Documents for Unreleased Products

23      MGA's design documents for unreleased products are relevant to Mattel's claims and

24  defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25  parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26  design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28

EXHIBIT  38

PAGE  541

1  to Modify Protective Order; And Proposed Order Thereon ("stipulation").  The parties' stipulation

2  has been approved and entered as an order of the court.  MGA is ordered to produce design

3  documents for unreleased products that are responsive to Mattel's document requests in

4  accordance with the terms of the stipulation and order.

5                          Documents from MGA Hong Kong

6          Documents relating to activities or conduct in foreign countries are relevant and

7  discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8  Bratz.  Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9  provides reciprocal discovery from its subsidiaries.

10         Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11 the context of this motion, and therefore is not addressed herein.  MGA is ordered to produce

12 documents from MGA Hong Kong.

13         Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14 64, 69, 96, 97, 98, 99, 100.

15             2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16             61, 63, 66, 67, 70, 88, 90, 91

17         Mattel contends that MGA is improperly limiting its document production to the "first

18 generation" Bratz dolls.  MGA represents, however, that it has agreed to produce subsequent

19 generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20 documents for yet unreleased products.

21         As stated previously, design documents for yet unreleased products are relevant and

22 discoverable.  See Order Modifying Protective Order.  Accordingly, MGA is ordered to produce

23 all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24 59, 61, 63, 66, 67, 70, 88, 90, and 91.

25         //

26         //

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              9

EXHIBIT _38_

PAGE _542_

1        3. MGA's Payments to Bryant (Nos.43, 45)

2            MGA represents that it has already agreed to produce documents related to Bratz, without

3    limiting its production to "first generation" Bratz.  MGA's motion at 13:7-14:3.  Nevertheless,

4    Mattel is entitled to an order compelling production of such documents by a date certain.  Mattel's

5    motion is granted with respect to request nos. 43 and 45.

6        4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

7            MGA represents that it has already agreed to produce non-privileged documents

8    responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not

9    relevant (MGA's motion at 13:7-14:3).  These requests seek documents relating to fee or

10   indemnity agreements between MGA and Bryant .

11           Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility.

12   Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50.  Any

13   responsive documents withheld on the basis of a privilege must be properly identified in a

14   privilege log.

15.      5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40,

16           41,

17           In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits,

18   and other sworn written statements from cases that refer or relate to Bratz or Angel.  Mattel

19   anticipates that these documents could provide evidence relating to the conception date for Bratz.

20           Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception

21   date for Bratz.  MGA admits in its opposition brief that this issue was litigated in its suits against

22   alleged counterfeiters and infringers.[3]  The issue also appears to have been raised in the

23   arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother

24   Farhad Larian.  In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

25   _____

26        [3]  Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and
     infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority

27   that prohibits Mattel's conduct.

28

     Bryant v. Mattel, Inc.,                                              10
     CV-04-09049 SGL (RNBx)

EXHIBIT __38__

PAGE __543__

1  that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2  documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3  protective order that prohibits the use of any documents or testimony for any purpose other than

4  the arbitration.  MGA, however, has not provided any evidence of the protective order.

5  Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6          6. Documents Regarding Date-Testing (Request No. 92)

7          Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8  from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9  testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto."  MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12          The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports.  The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15          C. Interrogatories

16          Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served.  The district court lifted the stay on May 17, 2006.

25      [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's
26  personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore
   should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                                                                    11

EXHIBIT  38

PAGE  544

1       Neither party has cited to any caselaw governing the calculation of the 30-day period

2   when there is an intervening stay in discovery.  In the absence of any caselaw, MGA's responses

3   will be treated as timely in order to preserve any valid objections MGA may have asserted.

4       Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5   conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6   tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7   before December 31, 2001, including a description of each person's role and the start and end

8   dates of each person's involvement.  In response, MGA asserted numerous objections, but did

9   provide the names of five individuals.

10      The interrogatory clearly seeks information relevant to the claims at issue.  MGA's

11  objections are without merit.  The interrogatory is not vague, ambiguous, compound or overbroad.

12  Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13  for confidential, proprietary or commercially sensitive information, or seeks information

14  protected by the attorney-client privilege.  Furthermore, MGA's response is incomplete insofar as

15  it fails to provide the description of each person's role and the start and end dates of each person's

16  involvement.  Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17  5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18      Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19  embodiment of Angel.  MGA is ordered to provide a complete response to Interrogatory No. 6 for

20  the reasons previously discussed in connection with Interrogatory No. 5.

21      Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22  December 31, 2001.  In response, MGA asserted numerous objections and did not provide any

23  substantive information.

24      MGA's objections are without merit.  The interrogatory clearly seeks information relevant

25  to establishing when Bryant first conceived Bratz.  The interrogatory is not vague, ambiguous,

26  compound or overbroad.  Nor has MGA carried its burden of establishing that the interrogatory is

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT   38

PAGE   545

1    unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2    seeks information protected by the attorney-client privilege. Accordingly, MG is ordered to

3    provide a complete response to Interrogatory No. 7.

4         Interrogatory No.8 asks MGA to identify each and every embodiment of Angel. MGA is

5    ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6    discussed in connection with Interrogatory No. 7.

7         Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8    or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9    or painting of Bratz. In response, MGA asserted numerous objections and did not provide any

10    substantive information.

11        The interrogatory seeks information relevant to establishing when Bryant first conceived

12    Bratz. Furthermore, MGA's boiler-plate objections are unsubstantiated. Accordingly, MGA is

13    ordered to provide a complete response to Interrogatory No. 9.

14        Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15    was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16    which each such instance occurred, the location of each show or exhibit, and the identity of

17    persons with knowledge of the shows or exhibits. In response, MGA asserted numerous

18    objections and provided the following information: Hong Kong Toy Fair in Hong Kong in or

19    about January 2001 and New York Toy Fair, New York, in or about February 2001.

20        Once again, MGA's boiler-plate objections are unsubstantiated. The information is

21    potentially relevant to establish when Bryant conceived Bratz. Further, the response is

22    incomplete insofar as it fails to identify any persons with knowledge. Therefore, MGA is ordered

23    to provide a complete response to Interrogatory No. 10.

24        Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25    including without limitation each office, home and cell phone number, in the name of, for the

26    benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT _38_

PAGE _546_

1  January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2  limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3  boiler-plate objections.

4          Once again, MGA has failed to substantiate any of its objections with supporting

5  declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6  provide a full response to Interrogatory No. 11.

7                                          IV.  CONCLUSION

8          For the reasons set forth above, Mattel's motion to compel production of documents is

9  granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10  identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11  for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12  motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13  provide responses to interrogatories consistent with this Order, and produce a privilege log in

14  compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15  sanctions is denied.

16          Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17  Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21  Dated: May /5, 2007

                                    _____
22                                  HON. EDWARD A. INFANTE (Ret.)
                                    Discovery Master
23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                        14

EXHIBIT _38_

PAGE _547_

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15,

2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL

PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in

the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on May 15, 2007, at San Francisco, California

Anthony Sales

EXHIBIT __38__

PAGE __548__

# EXHIBIT 39

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:     (415) 774-2611
4  Facsimile:     (415) 982-5287

5

6

7

8                 UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

12                                      CASE NO. CV 04-09049 SGL (RNBx)
   CARTER BRYANT, an individual,        JAMS Reference No. 1100049530
13
            Plaintiff,
14                                      Consolidated with
       v.                               Case No. CV 04-09059
15                                      Case No. CV 05-2727
   MATTEL, INC., a Delaware corporation,
16                                      ORDER GRANTING IN PART AND
            Defendant.                  DENYING IN PART MGA PARTIES'
17                                      MOTION TO QUASH SUBPOENAS;
                                        GRANTING IN PART AND DENYING
18                                      IN PART MATTEL'S COUNTER
                                        MOTION TO COMPEL
19
   CONSOLIDATED WITH
20 MATTEL, INC..v. BRYANT and
   MGA ENTERTAINMENT, INC. v. MATTEL,
21 INC.

22                              I. INTRODUCTION

23      On December 21, 2007, MGA Entertainment, Inc. ("MGA"), Isaac Larian, MGA

24 Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively, the "MGA

25 Parties") submitted their motion for an order quashing subpoenas issued by Mattel, Inc.

26 ("Mattel") to non-parties ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

                          5-7-08

EXHIBIT  39
PAGE  5-49

1   Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells
2   Fargo, or in the alternative, a protective order limiting the scope of those subpoenas. On
3   December 27, 2007, the MGA Parties submitted a supplemental brief to add to their motion to
4   quash three more subpoenas Mattel served on the Isaac E. Larian Qualified Annuity Trust 2004,
5   the Isaac and Angela Larian Family Trust, and the Isaac and Angela Larian Trust. On January 18,
6   2008, Mattel submitted an opposition and counter motion to compel production of documents
7   responsive to the subpoenas and a privilege log. On February 7, 2008, the MGA Parties
8   submitted a reply, and on February 15, 2008, Mattel submitted a reply in support of its counter
9   motion. The parties were directed to meet and confer further regarding the motions, which has
10  been completed. See Joint Report dated March 28, 2008. Despite the additional meet and confer
11  sessions, the parties were unable to resolve or narrow their disputes regarding the instant motions.
12  Pursuant to Paragraph 5 of the Stipulation and Order for Appointment of a Discovery Master, the
13  Discovery Master finds it appropriate to take the motions under submission for decision without
14  oral argument.

15                              II. BACKGROUND
16          Ernst & Young and Deloitte & Touche are MGA's auditors. Mattel's subpoenas to MGA's
17  auditors seek production of documents: (1) relating to MGA's annual audits and the identity of
18  other auditors; (2) indicating or calculating MGA's net worth and the value of MGA's goodwill
19  and intellectual property; (3) relating to Bratz; and (4) relating to the legal dispute between Isaac
20  and Farhad Larian.

21          Wachovia lent money to MGA to fund the creation and/or development of Bratz and to
22  acquire Little Tikes. Mattel's subpoena to Wachovia seeks documents related to: (1) the loans
23  Wachovia extended to MGA; (2) the legal dispute between Isaac and Farhad Larian; (3) MGA's
24  net worth, goodwill, and intellectual property; (4) Bratz; and (5) this action.

25          ConsumerQuest is a marketing research firm that performed market research and analysis
26  for MGA products, including Bratz. Mattel's subpoena to ConsumerQuest seeks documents

27
28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                      2

EXHIBIT __39__

PAGE __550__

1 related to:  (1) Bratz and other products involved in this action; (2) consumer research and

2 marketing work done regarding other MGA products underlying the parties' claims; and (3)

3 communications with MGA, Isaac Larian, and other parties relevant to this action, such as Carter

4 Bryant or other former Mattel employees and vendors.

5   Wells Fargo is and has been MGA's bank during periods relevant to this action.  Mattel's

6 subpoena to Wells Fargo contains five requests, seeking MGA's banking and financial documents,

7 including account information, cancelled checks, monthly and daily transactional history, and

8 bank statements.

9   Moss Adams is and has been Isaac Larian's accountant during the relevant period.  The

10 subpoena to Moss Adams seeks:  (1) accounting records, tax records, and schedules for MGA,

11 Isaac Larian, Isaac Larian's trusts and Farhad Larian; (2) documents indicating or calculating

12 MGA's and Isaac Larian's net worth; (3) documents relating to the value of MGA's intellectual

13 property and goodwill; (4) documents relating to Bratz and this action; (5) evidence of payments

14 from MGA or Isaac Larian to Bryant and other Mattel employees; and (6) Isaac Larian's

15 involvement with other trust or institutions in which he has an interest.

16   Mattel also served subpoenas on several of Isaac Larian's trusts.  Mattel's subpoenas to

17 Isaac Larian's trusts seek:  (1) documents related to the trusts' organization, including the

18 identities of its trustees and beneficiaries; (2) the trusts' tax records; (3) documents indicating the

19 trusts' assets; and (4) information related to other trusts in which Larian has an interest.

20   All of the non-parties objected to Mattel's subpoenas on the grounds that, *inter alia*, they

21 are overly broad, unduly burdensome and seek irrelevant and/or duplicative information.  Park

22 Decl., Exs. 15-26.

23   The MGA Parties contend that Mattel's subpoenas are overly broad, unduly burdensome,

24 and cumulative and duplicative of discovery Mattel has already sought and received.  More

25 specifically, the MGA Parties raise the following objections to each of the four categories of

26 documents Mattel seeks.  First, the MGA Parties contend that Mattel's subpoenas essentially seek

27

28

EXHIBIT **3 9**

PAGE **5 5 1**

1  unfettered access to MGA and Isaac Larian's financial histories for a nine-year period from 1999

2  to the present, and that there is no claim or defense at issue that could possibly justify the breadth

3  and intrusiveness of the subpoenas.  Further, the MGA parties contend that they have already

4  produced vast amounts of relevant financial documents in response to Mattel's discovery requests.

5  To make their point, the MGA Parties prepared a detailed chart that identifies Mattel's subpoenas

6  requests to the non-parties and for each such request, identifies an exemplary list of duplicative

7  document requests and/or interrogatories that Mattel served on Carter Bryant and/or the MGA

8  Parties.  See Decl. of Amy Park in Support of MGA Defendants' Motion to Quash, Ex. 28.

9          Second, the MGA Parties contend that Mattel's subpoenas are overbroad in that they call

10  for production of the financial records of every person who ever did any work for MGA or Isaac

11  Larian, and every conceivable relative of Isaac Larian.  The MGA Parties contend that the private

12  financial records of these non-parties are not relevant to the case, and that Mattel's subpoenas

13  constitute an abuse of the non-party discovery process.

14          Third, the MGA Parties contend that Mattel has already sought and received documents

15  relating to the litigation between Isaac Larian and his brother Farhad Larian from multiple

16  sources.  More specifically, the MGA Parties contend that Mattel has sought and received

17  relevant documents from Isaac and Farhad Larian, as well as MGA and at least two law firms

18  involved in the litigation between the Larian brothers.

19          Fourth, the MGA Parties object to the various requests for all documents obtained from

20  MGA or Isaac Larian relating to Bratz, other MGA products or Carter Bryant.  Although the

21  MGA Parties acknowledge that some of the requested documents may be relevant, the MGA

22  Parties contend that the document requests are objectionable because Mattel has already requested

23  and received well over three million pages of relevant documents from the MGA Parties. The

24  MGA Parties also contend that Mattel's requests are so overly broad that it is impossible to

25  discern what specific, relevant, non-duplicative documents Mattel is requesting from the non-

26  parties.

27

28

1       In contrast, Mattel contends that all of the subpoenas seek documents that are relevant to

2   several issues in the case, including, but not limited to, the creation and development of Bratz,

3   Mattel's damages claim (including Mattel's claims for punitive damages and disgorgement),

4   Mattel's claim against MGA for commercial bribery, MGA's damages claims, the value of MGA's

5   goodwill and intellectual property, and the credibility and bias of MGA and Isaac Larian, as well

6   as other potential witnesses.  Mattel contends that it should be permitted to pursue discovery from

7   non-parties, and not have to rely upon the good faith of MGA and Isaac Larian to comply with

8   their discovery obligations.  Mattel also contends that it should be permitted to pursue discovery

9   from the non-parties in order to guard against the possibility of spoliation of evidence and/or

10   document tampering.

11       Furthermore, Mattel contends that the MGA Parties have not shown that they possess,

12   much less have produced, all of the documents Mattel is seeking from the non-parties.  More

13   specifically, Mattel contends that the MGA Parties have failed to produce the following

14   documents that Mattel has requested from the various non-parties:  documents related to Isaac

15   Larian's net worth and the value of MGA's intellectual property and goodwill; MGA's tax records;

16   Wells Fargo banking records for MGA; documents related to payments to by MGA, Larian, or the

17   Larian trusts to Bryant and other Mattel employees and vendors; documents from the Larian v.

18   Larian litigation; documents related to the Larian trusts, including any documents showing Isaac

19   Larian's interest in, payments received from, or transfer to those trusts; and documents regarding

20   the 1999-2000 and 2006 loans MGA received from Wachovia, including what documents MGA

21   and Larian gave to Wachovia to justify the loans.  Furthermore, Mattel contends that MGA's

22   descriptions of the documents it has produced are vague, inaccurate or misleading.

23       Mattel also contends that the MGA Parties' burden objection is unsubstantiated in that

24   none of the subpoenaed parties has filed a declaration in opposition to the motion or offered any

25   specific evidence that the subpoenas impose an undue burden.  Rather, Mattel represents that

26   some of the subpoenaed parties were already in the process of preparing documents for

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT  3 9

PAGE  5 5 3

1   production or meeting and conferring with Mattel when MGA filed the instant motion.  Corey

2   Decl., ¶¶7-9.  Furthermore, Mattel points out that it has offered to reimburse the non-parties for

3   copying costs and to have its own paralegal and counsel inspect documents gathered.

### III. STANDARDS

5   Rule 26, Fed.R.Civ.P., provides that "[p]arties may obtain discovery regarding any matter,

6   not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1).  The

7   court shall, however, limit the frequency or extent of use of the discovery methods if the court

8   determines that (i) the discovery sought is unreasonably cumulative or duplicative, or is

9   obtainable from some other source that is more convenient, less burdensome, or less expensive;

10   (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

11   information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

12   benefit, taking into account the needs of the case, the amount in controversy, the parties'

13   resources, the importance of the issues at stake in the litigation, and the importance of the

14   proposed discovery in resolving the issues.  Fed.R.Civ.P. 26(b)(2)(C).

15   Rule 45, Fed.R.Civ.P., requires third parties to produce documents (and reasonably

16   accessible electronically stored information) that are responsive to a subpoena that a party serves

17   on them.  Fed.R.Civ.P. 45(b), (d).  If the subpoenaed documents are relevant and there is good

18   cause for their production, the subpoena is enforced unless the documents are privileged or the

19   subpoena is unreasonable, oppressive, annoying or embarrassing.  U.S. v. American Optical Co.,

20   39 F.R.D. 580, 583 (N.D. Cal. 1966).

21   Rule 45(c)(1), Fed.R.Civ.P., requires a party serving a subpoena to take reasonable steps

22   to avoid imposing undue burden or expense on a person subject to the subpoena.  Furthermore,

23   "[t]he issuing court must enforce this duty and impose an appropriate sanction--which may

24   include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply."

25   Id.  Rule 45 also provides that the issuing court must quash or modify a subpoena under certain

26   circumstances, including among others, when the subpoena requires the disclosure of privileged

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT ___39___

PAGE ___554___

1   or other protected matter or subjects a person to undue burden.  Fed.R.Civ.P. 45(c)(3)(A)(iii) and

2   (iv).  A motion to quash a subpoena or for a protective order as to that subpoena may be made by

3   a party-opponent.  See Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C. D. Cal. 2005) (granting

4   defendants' motion to quash subpoena).

5        In evaluating whether a subpoena imposes an undue burden, Rule 45(c)(3)(A),

6   Fed.R.Civ.P., "'requires the court to weigh the burden to the subpoenaed party against the value of

7   the information to the serving party,' . . . and in particular requires the court to consider: 'such

8   factors as relevance, the need of the party for the documents, the breadth of the document request,

9   the time period covered by it, the particularity with which the documents are described and the

10  burden imposed.'"  Moon, 232 F.R.D. at 637, quoting Travelers Indem. Co. v. Metropolitan Life

11  Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005).  Another important factor in evaluating burden is

12  whether the subpoenaing party can more easily and inexpensively obtain the documents from

13  another party, rather than from the nonparty.  Moon, 232 F.R.D. at 638.

14                              IV. DISCUSSION

15  A. Financial Information re MGA and Isaac Larian

16       Mattel has subpoenaed five different entities that perform financial services for MGA or

17  Isaac Larian:  Wells Fargo, Wachovia, Ernst & Young, Deloitte & Touche and Moss Adams.

18  Although Mattel's requests encompass documents that are relevant to several issues in the case,

19  the requests are unduly burdensome, exceedingly overbroad and unreasonably cumulative of

20  other discovery Mattel has already sought and received in this case.

21       For example, the subpoena to Wells Fargo demands production of the following broad

22  categories of financial documents: (1) "[a]ll DOCUMENTS REFERRING OR RELATING TO

23  MGA from January 1, 1999 to the present, inclusive"; (2) "[a]ll DOCUMENTS REFERRING OR

24  RELATING TO the ACCOUNT maintained by YOU numbered 9600112551, including but not

25  limited to statements, monthly statements, annual statements, daily transaction history reports,

26  monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT __39__

PAGE __555__

1   cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNT, created

2   between January 1, 1999 and the present, inclusive"; (3) "[a]ll DOCUMENTS REFERRING OR

3   RELATING TO" any other accounts created between January 1, 1999 and the present, inclusive;

4   (4) DOCUMENTS sufficient to show the account number for all accounts maintained in the name

5   of, for the benefit of or concerning MGA between January 1, 1999 and the present, inclusive; (5)

6   and "[a]ll DOCUMENTS showing or relating to any account(s) held by MGA or any account(s)

7   on which MGA has signatory authority at any other financial institution."

8          The breadth of the requests to Wells Fargo is compounded by the fact that "MGA" is

9   defined to include MGA Entertainment Inc., any of its current or former employees, officers,

10  directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates,

11  predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf.

12  Furthermore, the phrase "REFERRING OR RELATING TO" is defined expansively as

13  "reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing

14  or indicating in any way." Park Decl., Ex. 11.

15         The subpoena to Isaac Larian's tax accounting firm, Moss Adams, is similarly overbroad.

16  For example, Mattel seeks "[a]ll DOCUMENTS RELATING TO MGA [and] ISAAC LARIAN,

17  including without limitation, accounting records, tax returns and schedules . . . and drafts thereof,

18  W-2s, work papers, worksheets, payroll records, financial statements (audited and unaudited), pro

19  formas, budgets, account information and account statements." Park Decl., Ex. 12. The phrase

20  "RELATING TO" in the subpoena to Moss Adams is drafted in the broadest possible manner to

21  include "referencing, referring to, constituting, evidencing, pertaining to, mentioning, supporting,

22  contradicting, negating, bearing on, touching on, containing, embodying, reflecting, identifying,

23  stating, dealing with, concerning, commenting on, summarizing, responding to, relating to,

24  describing or discussing in any way." Id. As another example, Mattel's subpoena to Moss Adams

25  includes a request for all documents relating to any non-payroll payment or transfer of value from

26  MGA or Isaac Larian to any "FORMER MATTEL EMPLOYEE." Mattel does not identify any

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT ___ 39

PAGE ___ 556

1    of these "FORMER MATTEL EMPLOYEES" or otherwise limit the request to any specific time

2    period.

3         The subpoenas to Deloitte & Touch and Ernst & Young are similarly unrestrained in

4    scope, seeking the following categories of financial documents: all documents constituting or

5    relating to MGA's annual audits, including without limitation accounting records, audit programs,

6    audit reports and drafts thereof, tax returns, work papers, worksheets, payroll records, financial

7    projections, pro formas and budgets, from the period beginning January 1, 1999 to the present; all

8    documents indicating or calculating MGA's net worth; and all documents indicating the value of

9    MGA's intellectual property or goodwill. Park Decl., Exs. 7-8.

10        With respect to Wachovia, Mattel seeks the following categories of financial documents:

11   all documents relating to any loan agreement that Wachovia entered into with MGA since January

12   1, 1999, including drafts of any agreements; all documents that MGA or any other person

13   provided to Wachovia for purposes of entering into any loan agreement between Wachovia and

14   MGA; all documents that were in the "three (3) boxes of loan documents" that Wachovia referred

15   to in a November 15, 2005 letter to Robert G. Wilson, Esq.; all documents relating to any loan

16   agreement entered into by MGA, or sought or requested by MGA, during the time period January

17   1, 1999 and December 31, 2000, inclusive; all communications between Wachovia and MGA

18   during the time period January 1, 1999 and December 31, 2000, inclusive; all documents

19   indicating or showing a calculation of MGA's net worth or value; all documents indicating or

20   calculating the value of MGA's intellectual property or goodwill; all documents relating to Bratz,

21   including without limitation those obtained from MGA, since January 1, 1999; and documents

22   sufficient to identify any other MGA lender or person who extended or was requested to extend a

23   line of credit to MGA since January 1, 1998. Park Decl., Ex. 9. Mattel contends that the loan

24   documents will contain information about the timing and creation of Bratz. However, all of the

25   requests for financial documents, except for portions of Request Nos. 4 and 5, are much broader,

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT __35__

PAGE __557__

1   seeking everything relating to any loan between MGA and Wachovia from 1999 through the

2   present.

3        Furthermore, to the extent any of Mattel's requests for financial information encompass

4   relevant materials, the requests remain unreasonably duplicative and cumulative of discovery

5   Mattel has already sought and obtained from MGA and Isaac Larian (with the exception of

6   Request Nos. 4 and 5 in the Wachovia subpoena).  MGA has produced the following:  audited and

7   unaudited quarterly and annual profit and loss statements; audited and unaudited quarterly and

8   annual statements; annual reports; various MGA financial reports; various financial documents

9   relating to Veronica Marlow; documents showing royalty payments to Carter Bryant; documents

10   showing MGA's sales, returns and costs of goods sold for each month, by SKU, since 2001;

11   documents showing MGA's promotional advertising and media expenditures, including MGA's

12   internal allocation of those expenditures by brand and/or product; documents showing MGA's

13   amortization and depreciation of certain capital assets and expenditures; documents showing

14   MGA's monthly general ledger entries aggregated by account, including income and expense

15   accounts, reserves and liabilities; and documents sufficient to explain MGA's various accounts as

16   presently and historically maintained in MGA's books and records. Park Decl., ¶3.

17        The MGA Parties also represent that Isaac Larian recently produced over 50,000 pages of

18   documents which included, among other things, documents showing his net worth; his gross

19   income, wages, dividend income, interest income, and other income; his banks and bank

20   accounts; and various other financial documents. Park Decl., ¶2. Thus, Mattel has received

21   ample financial documents.  Mattel has also deposed MGA, Isaac Larian, and other witnesses

22   regarding relevant financial information. In view of the discovery Mattel has already sought and

23   received, Mattel's over-reaching, broad subpoenas to the various non-parties seeking more

24   financial information regarding MGA and Isaac Larian are unjustified under Rule 26(b)(2),

25   Fed.R.Civ.P.

26   //

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT 39

PAGE 558

B. Financial Information re Non-Parties

Mattel's subpoenas also seek financial documents regarding numerous non-parties, including everyone who has ever worked for or represented MGA or Isaac Larian, and every relative of Isaac Larian. Once again, although the subpoenas encompass documents that are potentially relevant to Mattel's claims and defenses, the subpoenas are overly broad, sweeping in vast amounts of documents that have little to no relevance. For example, Mattel's subpoenas to Moss Adams and the various trusts include requests for all formation documents, all tax returns, any other tax-related documents from 1999 to the present, and documents relating to the operation of the trust, including every trustee and beneficiary of each trust, every disbursement by each trust, every asset owned by each trust, and every liability of each trust. Mattel has not shown that all of the requested documents are relevant to the claims and defenses in the case.

Mattel's subpoenas to the non-parties are also unreasonably duplicative and cumulative of discovery Mattel has already sought and received in this case. Furthermore, to the extent Mattel's subpoenas might include requests that are not unreasonably duplicative and/or cumulative of other discovery requests, the probative value of the information Mattel seeks is substantially outweighed by the burden of production, especially in light of the privacy interests of the many non-parties who would be affected.[1]

C. Information re Litigation Between Isaac and Farhad Larian

All of Mattel's subpoenas to the non-parties, except Wells Fargo, include a request for all documents relating to any litigation between Isaac Larian and Farhad Larian. These requests are unreasonably duplicative and cumulative of many requests Mattel previously served on Isaac Larian, MGA, Farhad Larian, Stern & Goldberg and Kaye Scholer. Mattel has sought and received substantial discovery regarding the litigation between Isaac and Farhad Larian. See

---

[1] In its reply brief, Mattel contends that Isaac Larian is the trustee of all of the trusts that Mattel has subpoenaed, and therefore he was required, but purportedly failed, to search for and produce trust documents when responding to the discovery requests directed to him. These issues are beyond the scope of the present motion, and will not be addressed herein.

EXHIBIT __39__

PAGE __555__

1   Order Re Mattel's Motions to Compel Farhad Larian, Kaye Scholer and Stern & Goldberg to

2   Produce Documents dated January 25, 2008.  Mattel has not shown that the non-parties possess

3   any relevant, non-privileged materials beyond what Mattel has already sought and received from

4   other sources.  Furthermore, the burden and expense of complying with the non-party subpoenas

5   substantially outweigh their likely benefit under Rule 26(b)(2), Fed.R.Civ.P.

6   D. Documents re MGA's Products or Carter Bryant

7         Mattel's subpoenas to the non-parties include requests for documents relating to Carter

8   Bryant, Bratz and other MGA products or work performed for MGA.  Although this category of

9   requests encompasses documents that are potentially relevant to the claims and defenses in the

10  case, the requests are nevertheless objectionable because they are overly broad and not tailored to

11  exclude irrelevant, duplicative or unreasonably cumulative information.  Mattel has taken vast

12  amounts of discovery regarding Carter Bryant, Bratz, and other MGA products from several

13  different sources.  Mattel has not shown that the non-parties possess any relevant, non-privileged

14  materials beyond what Mattel has already sought and received from other sources.  Furthermore,

15  the burden and expense of complying with the non-party subpoenas substantially outweigh their

16  likely benefit under Rule 26(b)(2), Fed.R.Civ.P.

17                              V. CONCLUSION

18        For the reasons set forth above, the MGA Parties' motion to quash, or in the alternative for

19  a protective order, is granted, except with respect to the following requests:

20        •   Wachovia subpoena, Request No. 4, limited to "all documents relating to any loan

21             agreement entered into by MGA, or sought or requested by MGA, during the time

22             period January 1, 1999 and December 31, 2000, inclusive"; and Request No. 5,

23             limited to "all communications between YOU and MGA during the time period

24             January 1, 1999 and December 31, 2000, inclusive" regarding any loan agreement

25             entered into by MGA, or sought or requested by MGA, during the time period

26             January 1, 1999 and December 31, 2000, inclusive.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                          12

EXHIBIT   39
PAGE   560

1  Mattel's counter motion to compel is granted in part and denied in part in accordance with the

2  Court's ruling on the MGA Parties' motion to quash, or in the alternative for a protective order, as

3  set forth immediately above.  Wachovia shall produce documents responsive to Request Nos. 4

4  and 5 as set forth above on or before May 16, 2008.

5         Nothing in this Order is intended to authorize or preclude Mattel from seeking documents

6  from the non-parties identified herein as part of Phase 2 discovery, if appropriate.

7         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

8  Master, the MGA Parties shall file this Order with the Clerk of Court forthwith.

9

10  Dated: May 7, 2008                                    /S/
                                        _____

11                                       HON. EDWARD A. INFANTE (Ret.)
                                              Discovery Master
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

                                                                    13

EXHIBIT  39

PAGE  561

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 7, 2008, I served the
attached ORDER GRANTING IN PART AND DENYING IN PART MGA PARTIES' MOTION TO QUASH
SUBPOENAS; GRANTING IN PART AND DENYING IN PART MATTEL'S COUNTER MOTION TO
COMPEL in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.Eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true
and correct.

Executed on  May 7, 2008, at San Francisco, California.

Anthony Sales

EXHIBIT __39__

PAGE __562__

# EXHIBIT 40

# FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 41

CONFIDENTIAL

TO: MGA Entertainment

| NAME | SHIP TO |
|------|---------|
| ANNA RHEE | |
| ADDRESS | ADDRESS |
| 1613 FORD AVE. | |
| CITY, STATE, ZIP | CITY, STATE, ZIP |
| REDONDO BCH, CA·90278 | |

| ORDER NUMBER | DEPT | | | | | | PRICE | DATE |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 6/7 80 |

| QUANTITY | DESCRIPTION | | | PRICE | AMOUNT |
|---|---|---|---|---|---|
| 2 | Angel baby Doll Heads | price→ | $ | 400.00 | |
| | | tax→ | | 33.00 | |
| | | TOTAL PRICE → | $ | 433.00 | |
| | | INCLUDING TAX | | | |
| | | (PAID) | | | |
| | Request by | | | | |
| | Kerri Legg | | | | |

BUYER:

EXHIBIT
Rhee
201
2/3/05

KEEP THIS SLIP FOR REFERENCE

EXHIBIT **41** AR 0001
201-1

PAGE **577**

# EXHIBIT 42

Req # 02303

PO # 30003

096588

V 22974
pm 5039
LCT 04332

To : MGA Eentertiment

| NAME | | SHIP TO | |
|------|--|---------|--|
| ANNA RHEE | | | |
| ADDRESS | | ADDRESS | |
| 1613 FORD AVE. | | | |
| CITY, STATE, ZIP | | CITY, STATE, ZIP | |
| REDONDO BCH, CA·90278 | | | |

| 2 | Angel Baby Doll Heads | | price → | $ | 400. | 00 |
|---|-----------------------|--|---------|---|------|----|
| | | | tax → | $ | 33. | 00 |
| | | TOTAL PRICE | → | $ | 433. | 00 |
| | | INCLUDING TAX | | | | |

Request by
Kerri Legg

→ (310) 374-2820

tax id # 570-107-1518

Request by
Kerri Legg

Confidential
Attorneys' Eyes Only

TD 8100                MGA000706

EXHIBIT 42
PAGE 578



# EXHIBIT 43

# FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 44



Wed, Oct 18, 2000 10:18 PM

**From:** Liz Hogan <lizhogan@earthlink.net>
**To:** paula treanntafelles <ptreantafelles@mgae.com>
**Cc:** steve linker <llnk67@earthlink.net>
**Date:** Thursday, October 12, 2000 7:47 PM
**Subject:** questions: BRATS

FMA — 2/1

paula and carter,
(please forward to carter, i dont have his email)

steve and i would like to meet with you and carter on monday
to maybe get some of the art...so we can get going....
let us know what time and where is good for you.

here are some questions and comments on the Brats project:

✓ 1. we need some spec sheets calling out sizes and dimensions
      on the dolls and the accessories     copies ___ Today

✓ 2. we need the existing art boards that we saw in the mtg. ...
      or good color copies.   copies

3. is the name "BRATS" confirmed or can we work on it/change it? — need new name by end of month.
                                                                       For GIRLs too.

4. do you have photos/jpegs of the sculpts? — casts by next week For Ref.

5. are the renderings of the outfits (that we saw)
   the confirmed outfits that you will be manufacturing?

6. is there any packaging brief?

thanks,
liz

DEADLINES

"Double TROUBLE"

12/15 — WAL-MART MTg.
         TRADE SHOWS

11/20 (?) — TARGET — white Box - FoR Plan-A-gRAMs.
           Box whites FoR Plano gRams.

11/

DEP. EX. NO. 320
FOR I.D., AS OF    9-13-06 pi

Page 1 of 1

SL00001

EXHIBIT 44

PAGE 613

Sat, Oct 22, 2005   12:23 AM

From: Liz Hogan <lizhogan@earthlink.net>
To: paula treanntafelles <ptreantafelles@mgae.com>
Cc: steve linker <link57@earthlink.net>
Date: Saturday, October 14, 2000 6:06 PM
Subject: Packaging Estimate: Brats

---

Paula-

The following is the estimate for the Brats Trade Dress and packaging design project.
It looks like a lot but it covers every possible area we could think of that might come
up during the next couple of months, including a couple rounds of revisions, hiring
illustrators, and/or photography, and it also includes our full dedication that you
requested. Our costs will be balanced out according to what we provide you on this
project. Meaning, we will only charge you for the time we spend working on the
project and not the full quote amount unless we reach that mark at any time (highly
unlikely-but worse case scenario). If that is the case we will notify you on where we
are at during each phase.

we look forward to getting started, thanks.

Steven Linker
Penny Arcade. Inc.
310-395-1205

Packaging Estimate: Brats (small doll line)
4 Sku's - 12.99 Retail (9" dolls)
2 Sku's - 4.99 Retail  (Dress Packs)
1 Sku  -  9.99 Retail (Hair Pack)

DEP. EX. NO. 321
FOR I.D., AS OF  9-13-06 pk

Page 1 of 3

SL00005

EXHIBIT  44

PAGE  614

Sat, Oct 22, 2005   12:23 AM

Dieline:
box development (pencil skectches) - 600.00
dieline/ 3 structures (engineered, w/mock-up) - 1050.00
(1 round of revisions included)
Total: 1650.00

Phase 1
trade dress exploration, research and concepting /3 unique directions
includes:
product shots FPO (digital) - 1,500.00
logo development - 5,000.00 -7,,500 (ave. 6,000.00)
tag line/burst copy and fonts - 1,500.00 - 2,500.00
color palette exploration-pms chips - 600.00
background patterns/design/research - 5,000.00 -7,500.00
support art/icons - 4,000.00 - 4,500.00
Total: 17,600.00 - 24,000.00

-meet to review 11/01/00
comments and changes (board art for sales mtg) 11/06
need additional 2 weeks in this concepting stage -if possible

Phase 2
(MGA to make comments -style/direction is chosen)

logo finals - 4,000.00 - 6,000.00
stylized illustrations (girl poses) production ready - 8,000.00 - 10,000.00
art, icons/element - 1,000.00 - 3,000.00
copy approved - 2,000.00
product and kid photoshoot - 9,000.00-13,000.00
(includes model fees, supplies, hi-res scan, art direction)
MGA legal copy, safety copy, logos, UPC provided - 2,000.00
build 3 dielines (illustrator) - 1,100.00
print outs, mock ups - 3,000.00 - 3,500.00
Total: 30,100.00 - 40,600.00

-status review 12/01 1
-date approved samples will be ready for photoshoot???

Phase 3
set all 7 boxes/ backercards for print production
clean-up, spell check, final approvals MGA

Page 2 of 3

SL00006

EXHIBIT __44__

PAGE ____615____

Sat, Oct 22, 2005   12:23 AM

FMA  includes hi res scans from photoshoot,
layered files provided on disk to MGA and
print outs, final mock ups.
press proof –optional LA – 350.00
Total:  7,350.00 –10,000.00


-FMA due TBA
 Total: 57,600.00 – 7,6250.00

*all mock-ups will be created to scale
no rush fee's are included

Page 3 of 3

SL00007
EXHIBIT __44__
PAGE __616__

Sat, Oct 22, 2005   12:17 AM

From: Liz Hogan <lizhogan@earthlink.net>
To: <lizhogan@earthlink.net>
Date: Thursday, October 12, 2000 6:59 PM
Subject: est

Packaging Estimate: Brats (small doll line)
 4 Sku's – 12.99 Retail (9" dolls)
 2 Sku's – 4.99 Retail  (Dress Packs)
 1 Sku  –  9.99 Retail (Hair Pack)

  Dieline:
 box development (pencil skectches) – 600.00
 dieline/ 3 structures (engineered, w/mock-up) – 1050.00
 (1 round of revisions included)
 Total: 1650.00

  Phase 1
 trade dress exploration, research and concepting /3 unique directions
 includes:
 product shots FPO (digital) – 1,500.00
 logo development – 5,000.00 –7,,500 (ave. 6,000.00)
 tag line/burst copy and fonts – 1,500.00 – 2,500.00
 color palette exploration-pms chips – 600.00
 background patterns/design/research  – 5,000.00 –7,500.00
 support art/icons – 4,000.00 – 4,500.00
 Total: 17,600.00 – 24,000.00

 -meet to review 11/01/00
 comments and changes (board art for sales mtg) 11/06
 need additional 2 weeks in this concepting stage –if possible

  Phase 2 .
 (MGA to make comments –style/direction is chosen)

 logo finals – 4,000.00 – 6,000.00
 stylized illustrations (girl poses) production ready – 8,000.00 – 10,000.00
 art, icons/element – 1,000.00 – 3,000.00

DEP. EX. NO. 326   Page 1 of 2
FOR I.D., AS OF _____ 9-13-06ρυ
SL00008

EXHIBIT  44

PAGE  617

Sat, Oct 22, 2005   12:17 AM

copy approved – 2,000.00
product and kid photoshoot – 9,000.00-13,000.00
(includes model fees, supplies, hi-res scan, art direction)
MGA legal copy, safety copy, logos, UPC provided – 2,000.00
build 3 dielines (illustrator) – 1,100.00
print outs, mock ups – 3,000.00 – 3,500.00
Total: 30,100.00 – 40,600.00

–status review 12/011
–date approved samples will be ready for photoshoot???

Phase 3
set all 7 boxes/ backercards for print production
clean-up, spell check, final approvals MGA
FMA includes hi res scans from photoshoot,
layered files provided on disk to MGA and
print outs, final mock ups
press proof –optional LA – 350.00
Total: 7,350.00 –10,000.00

–FMA due TBA
Total: 57,600.00 – 7,6250.00

*all mock-ups will be created to scale
no rush fee's are included

SL00009

EXHIBIT 44

PAGE 618

Sat, Oct 22, 2005   12:32 AM

**From:** Liz Hogan <lizhogan@mediaone.net>
**To:** <ptreantafelles@mgae.com>, <RHarris@mgae.com>; <KLegg@mgae.com>
**Cc:** steve linker <link67@earthlink.net>
**Date:** Monday, October 23, 2000 2:11 PM
**Subject:** revised quote

Paula and Rachel,

Here is our revised quote.  As you can see it is considerably
lower and does not include any (production ready) illustrations
of the dolls/products, photography, art direction of the shoots,
or hi-res scans. (Outside Quotes are in red in the estimate).

Our original estimate included the art direction and design of
illustrations and photography which we think are essential
to the overall look of the packaging.

We are very familiar with the doll aisle and with the
statement that BRATS needs to make in order to stand out.
Our original estimate was for our full attention to your project
through completion and during the toy fair season.

If you have any questions please call us.


Thanks,
Liz Hogan at 310 392 5303
or Steve Linker at 310 395 1205

!!!please note my new email address: lizhogan@mediaone.net


Packaging Estimate: Brats (small doll line)
4 Sku's - 12.99 Retail  (9" dolls)
4 Sku's - 4.99 Retail  (Dress Packs)
1 Sku  -  9.99 Retail (Hair Pack)


Dieline:

DEP. EX. NO. 327
FOR I.D., AS OF 9-13-06 pv

Page 1 of 3

SL00010

EXHIBIT 44
PAGE 619

Sat, Oct 22, 2005   12:32 AM

box development (pencil sketches) –300.00
dieline/ 3 structures (engineered, w/mock-up) –1050.00
(1 round of revisions included)
Total: 1350.00

Phase 1
   trade dress exploration, research and concepting
   /2 unique directions includes:
product shots FPO (digital) – 500.00
logo development – 2500.00
tag line/burst copy and fonts – 1250.00
color palette exploration-pms chips – 300.00
background patterns/design/research – 4000.00
support art/icons – 2500.00
Total: 11,050.00

–meet to review status btwn 11/07–14

Phase 2
(MGA to make comments –style/direction is chosen)
logo finals – 4000.00
stylized illustrations (girl poses) production
ready – (OUTSIDE QUOTE –6000.00-8000.00)
 art, icons/elements – 2500.00
copy approved – 750.00
product and kid photo shoot – (OUTSIDE QUOTE –10,000.00)
(includes model fees, supplies, hi-res scan, art direction)
 MGA legal copy, safety copy, logos, UPC provided –1250.00
set 9 box dielines up/ build 3 dielines (illustrator) – 1300.00
print outs, mock ups – (OUTSIDE QUOTE –2700.00)
Total: 9800.00
–DOESN'T INCLUDE HIRING ILLUSTRATOR OR PHOTOGRAPHY...MGA TO
PROVIDE

Phase 3
 set all 9 boxes for print production
clean-up, spell check, final approvals MGA
– FMA layered files provided on disk to MGA
– print outs
– final mock ups
Total: 11,000.00

SL00011
EXHIBIT __44__
PAGE __620__

Sat, Oct 22, 2005   12:32 AM

-FMA due TBA
Estimated Total: 30,000.00 – 35,000.00

*all mock-ups will be created to scale
no rush fee's are included

Page 3 of 3

SL00012
EXHIBIT __44__

PAGE __621__

# EXHIBIT 45



TOP OF HEAD

ROOTING LINE / SEPERATION LINE

ACTUAL PROPORTION

ACTUAL SIZE 10"

SL00044

EXHIBIT **45**

PAGE **622**

# EXHIBIT 46

**From:**   Liz Hogan [lizhogan@medlaone.net]
**Sent:**   Monday, October 23, 2000 2:12 PM
**To:**   ptreantafelles@mgae.com; RHarris@mgae.com; KLegg@mgae.com
**Cc:**   steve linker
**Subject:** revised quote

Paula and Rachel,

Here is our revised quote.  As you can see it is considerably
lower and **does not** include any (production ready) illustrations
of the dolls/products, photography, art direction of the shoots,
or hi-res scans. *(Outside Quotes are in red in the estimate).*

Our original estimate included the art direction and design of
illustrations and photography which we think are essential
to the overall look of the packaging.

We are very familiar with the doll aisle and with the
statement that BRATS needs to make in order to stand out.
Our original estimate was for our full attention to your project
through completion and during the toy fair season.

If you have any questions please call us.


Thanks,
Liz Hogan at
or Steve Linker at

!!!please note my new email address: lizhogan@mediaone.net


**Packaging Estimate: Brats (small doll line)**
4 Sku's -     **Retail  (9" dolls)**
4 Sku's -     **Retail  (Dress Packs)**
1 Sku -     **Retail (Hair Pack)**


**Dieline:**
box development (pencil sketches) -
dieline/ 3 structures (engineered, w/mock-up)  -
(1 round of revisions included)
**Total:**

**Phase 1**
  trade dress exploration, research and concepting

# REDACTED

CONFIDENTIAL
ATTORNEY'S EYES ONLY

EXHIBIT _____ **46**

PAGE _____ **623**

MGA004721

MGA0004721 A

/2 **unique directions** includes:
product shots FPO (digital) -
logo development - ˙
tag line/burst copy and fonts -
color palette exploration-pms chips -
background patterns/design/research -
support art/icons -
**Total:**

-meet to review status btwn 11/07-14

**Phase 2**
(MGA to make comments -style/direction is chosen)
logo finals -
*stylized illustrations (girl poses) production
ready - (OUTSIDE QUOTE -*
art, icons/elements -
copy approved -
*product and kid photo shoot - (OUTSIDE QUOTE -*
*(includes model fees, supplies, hi-res scan, art direction)*
MGA legal copy, safety copy, logos, UPC provided -
set 9 box dielines up/ build 3 dielines (illustrator) -
*print outs, mock ups - (OUTSIDE QUOTE -*
**Total:**
**-DOESN'T INCLUDE HIRING ILLUSTRATOR OR PHOTOGRAPHY...MGA TO PROVIDE**

**Phase 3**
set all 9 boxes for print production
clean-up, spell check, final approvals MGA
- FMA layered files provided on disk to MGA
- print outs
- final mock ups
**Total:**

-FMA due TBA
**Estimated Total:**

*all mock-ups will be created to scale
no rush fee's are included

**REDACTED**

CONFIDENTIAL
ATTORNEY'S EYES ONLY

EXHIBIT **46**

PAGE **624**

**MGA004722**

MGA0004722 A

# EXHIBIT 47

# FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER

# EXHIBIT 48



TOP OF HEAD

ROOTING LINE / SEPERATION LINE

ACTUAL PROPORTION

ACTUAL SIZE
10"

0.7
3. 4/0
2.52

7.47

(310) 580-3615

ATTORNEY'S EYES ONLY

BRYANT 00278

EXHIBIT 48

PAGE 644

# EXHIBIT 49

**20**

Friday
October 2000

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

September 2000        November 2000

→ Task Completed
→ Planned Forward
X Task Deleted
◇ Delegated Task
○ In Process

↓ ABC Prioritized Daily Task List

| | | |
|---|---|---|
| → | Donation Due — VICTOR'S baby Shower | |
| → | Jon BRATZ pkg quote | |
| → | Pricing Fr Kerri | |
| | PO process | |
| ✓ | Call BMW | |
| → | CALL Karl — lvc | |
| → | CALL Bob Romero | |
| X | Call Aileen — client Bday | |

**Daily Expenses**

**Appointment Schedule**

8

9

10 :30 Showroom Mtg.

11 Mizo Kids out

12

1

2

3

4

5

6

7 OPEN HOUSE
:30 Melc

8
:30 ↓

© 1998 Franklin Covey Co.          www.franklincovey.com          Original-Classic

CONFIDENTIAL –
ATTORNEYS' EYES ONLY

MGA 0008891

EXHIBIT __49__

PAGE __645__

Our aspirations are our possibilities.
— Samuel Johnson

2(
Frida
October-200

Monthly Focus:
Mission—What is at the
center of my personal
vision and purpose?

**Daily Record of Events**                           29th Day  72 Left  Week

Ranger Time Force   PRG Due to HK

✓ Prepare List for Isaac to Jon @ HK

✓ UR3D - Proofs Fr. Stan Pan .com

✓ Beate - Need quote - Liz;Steve.

✓ Email Estimate - Richard @ ayz.

© 1998 Franklin Covey Co.                  www.franklincovey.com                  Original-Classic

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

MGA 0008892
EXHIBIT ____ 49
PAGE ____ 646

# 23

**Monday**
**October 2000**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

September 2000     November 2000

Appointment Schedule

8

_Meeting_

9

**↓ ABC Prioritized Daily Task List**

→ _Call Maureen - Mas_
                    _Fields_

✓ _Ron Bratz pkg quote_

→ _Get pkg budgets_

10

11

12

1

2

3

4

5

6

**Daily Expenses**

7

8

© 1998 Franklin Covey Co.          www.franklincovey.com          Original—Classic

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

MGA 0008893

EXHIBIT __49__

PAGE __647__

# EXHIBIT 50

# FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER