# Exhibit O

178

3191

1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                      ---

4      **HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING**

5                      ---

6   MATTEL, INC.,                  :  PAGES 3191 - 3319
                                   :
7           PLAINTIFF,             :
                                   :
8      VS.                         :  NO. ED CV04-09049-SGL
                                   :  [CONSOLIDATED WITH
9   MGA ENTERTAINMENT, INC.,       :  CV04-9059 & CV05-2727]
    ET AL.,                        :
10                                 :
           DEFENDANTS.             :
11  _____

12

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16            RIVERSIDE, CALIFORNIA

17          FRIDAY, JUNE 20, 2008

18           JURY TRIAL - DAY 16

19            MORNING SESSION

20

21

22                        MARK SCHWEITZER, CSR, RPR, CRR
                          OFFICIAL COURT REPORTER
23                        UNITED STATES DISTRICT COURT
                          181-H ROYBAL FEDERAL BUILDING
24                        255 EAST TEMPLE STREET
                          LOS ANGELES, CALIFORNIA 90012
25                        (213) 663-3494

CERTIFIED COPY

179

3192

1    **Appearances of Counsel:**

2

3    On Behalf of Mattel:

4         Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
          By John B. Quinn, Esq.
5              B. Dylan Proctor, Esq.
               Michael T. Zeller, Esq.
6              Harry Olivar, Esq.
               John Corey, Esq.
7              Diane Hutnyan, Esq.
               William Price, Esq.
8         855 South Figueroa Street
          10th Floor
9         Los Angeles, CA 90017
          (213) 624-7707
10

11

12   On Behalf of MGA Entertainment:

13        Skadden, Arps, Slate, Meagher & Flom LLP
          By Thomas J. Nolan, Esq.
14             Carl Alan Roth, Esq.
               Jason Russell, Esq.
15             Lauren Aguiar, Esq.
               David Hansen, Esq.
16             Matthew Sloan, Esq.
               Robert Herrington, Esq.
17        300 South Grand Avenue
          Los Angeles, CA 90071-3144
18        (213) 687-5000

19

20

21

22

23

24

25

180

1   to start conspiring to create this argument, I think, defies

2   logic.

3           I want to make two final points, if I might, your

4   Honor.  These motions are easily made, but very potentially

5   dangerous, and I think is represented by Napster and Zolin,

6   and I think it's especially important, your Honor, and

7   troubling that there was a procedure and a process in this

8   case where documents that were privileged and inadvertently

9   produced, and as the Court knows, I think, from reviewing the

10  record, that this document was on a privileged log by MGA but

11  inadvertently produced by the law firm of Kaye Scholer.

12          When it was brought before it was used in any

13  deposition, we clawed it back.  That was in, I believe,

14  March, your Honor, or February that we clawed it back.  Under

15  the protective order in this case, both law firms undertook a

16  responsibility as officers of the court, a protective order

17  was entered by your Honor, that in connection of the

18  procedure of a clawed back document, you would represent that

19  you have destroyed any copies of these documents, and that

20  the right procedure would then be to go to court and seek a

21  motion to compel, which wasn't done, your Honor, until far --

22  in fact, it wasn't done.

23          On the eve -- the Friday afternoon, I believe, of

24  the start of the evidence, we were told that this motion was

25  going to be filed.  And counsel has repeatedly quoted from a

1  document that under the protective order was supposed to have

2  been destroyed back in March.  And we cite to the case, your

3  Honor, of Lazar versus Mauney at page 3, footnote 3, that

4  disclosing the contents of an inadvertently produced

5  privileged document is not the best course of practice

6  expected of lawyers practicing.

7          This document, the contents of it, had been

8  mentioned on the public record.  It was done in -- at a

9  sidebar conference again this morning, and I think I needed

10 to point that out.

11         THE COURT:  Very well.

12         MR. NOLAN:  Thank you very much.

13         MR. QUINN:  We don't have a copy of the document.

14 And I have not mentioned its contents this morning.  It must

15 be the case that even a clawed back document can be

16 challenged.  And what caused us to bring this was getting the

17 document production from Ms. Glaser showing for the first

18 time a copy of the contract with the date whited out, which

19 we got, just a matter of two weeks before we filed the

20 motion.

21         So in terms of timing, your Honor, that's why it

22 was brought when it was brought.

23         There hasn't been any mention, and wholly apart

24 from the crime fraud, is the issue of waiver.  They have

25 produced or sought to offer communications with Mr. Rosembaum

3210

1   in the middle of trial, which all of this time were on a

2   privilege log and were withheld from us, and we couldn't

3   follow up --

4         THE COURT:   Counsel, the Court has not allowed

5   those documents in.

6         MR. QUINN:   The Court hasn't, but it's quoted in

7   their brief.  They rely on it.

8         THE COURT:   It's not before the jury.

9         MR. QUINN:   All right.

10         THE COURT:   Very well.  Before I rule on that,

11   there's two other documents that were brought to the Court's

12   attention.  One was an exhibit that Mattel believed we needed

13   to have a ruling on before we get through these last

14   witnesses and they rest.  And that was Exhibits 13380 and

15   13381.  These are e-mail communications between Mr. Larian

16   and his brother.

17         I would like someone from Mattel to identify for

18   the Court specifically what portions of these that they

19   believe to be relevant.  There's a lot of language in here

20   which is of concern to the Court in terms of its prejudicial

21   impact.  And I suspect everybody in this room has said things

22   about a relative or a brother or sister or mother or child

23   that they probably didn't mean exactly what they said, and we

24   sometimes use language with family members carelessly.

25         MR. ZELLER:   And I think that's a fair comment.  I

183

3211

1   would say this, however, your Honor, is that Fred Larian was

2   also an executive of MGA.  This was in the context of a

3   business communication.  And not only was he an executive for

4   MGA for quite some time, but even after he left MGA as an

5   executive, he was a paid consultant for many years, all the

6   way, as far as we know, up to the end of 2005.

7           THE COURT:  I do appreciate that.  That's why I'm

8   not just categorically saying this is off, but I'd like you

9   to identify precisely these two documents, what it is that

10  you think is relevant.

11          MR. ZELLER:  And I think one is more easily

12  explainable than the other.

13          THE COURT:  Okay.

14          MR. ZELLER:  So let me start with perhaps the

15  easier one.

16          THE COURT:  All right.

17          MR. ZELLER:  And that is the e-mail where Farhad

18  repeats what he says was an instruction by Isaac Larian to

19  withhold the originals of documents in the Fireman's Fund

20  litigation.

21          THE COURT:  This is in the ABC International

22  Traders stock certificate?

23          MR. ZELLER:  No, that's the other e-mail, your

24  Honor.

25          THE COURT:  You're referring to 13380.

184

3218

1   their documents, and Mr. Larian, Fred Larian was sent a copy

2   of that, and again, what I'm saying is this carom shot of

3   trying to use this e-mail to prove that he must have done

4   something notorious in this case and then have it relate to

5   Isaac Larian's credibility.  That's the prejudicial part.

6           THE COURT:  Very well.  Briefly.

7           MR. ZELLER:  Briefly, your Honor.  Mr. Fred Larian

8   testified specifically that he had destroyed this evidence

9   about Bratz in 2000 to keep it from Mattel in this case.

10  There is a direct nexus with respect to it.  Certainly the

11  issue of -- I won't call it spoilation because from our

12  perspective, this goes back to, for more than anything else

13  as to Fred Larian.

14          But also, with the Fireman's Fund litigation, I

15  don't think it's true that we have to get into the details of

16  what the case was about.  What matters was there was an

17  instruction according to Mr. Fred Larian to withhold those

18  documents.

19          THE COURT:  What about counsel's arguments that the

20  significance of that instruction can only be tested by having

21  some understanding of what role those originals, as opposed

22  to the copies, played.  My reading of this, it seems to be

23  that there were copies of these very same documents that were

24  produced.  There were some legibility questions with them.

25  Someone came up with the originals, and apparently there was

185

1    an instruction not to turn over the originals.  That's my

2    reading of the initial e-mail here.

3            MR. ZELLER:  Sure.  And there's no question that,

4    you know, one could try and argue about the nexus of what we

5    were holding and why.  But the fact is that it's quite clear

6    that Fred Larian is saying he was told to withhold

7    information.  Regardless.

8            And one thing that the jury could infer from that

9    evidence and the evidence that Mr. Fred Larian will testify

10   about, the circumstances of what he did, is in fact he is

11   withholding this evidence, not just simply that he destroyed

12   it, but that he is withholding it.  The circumstances under

13   which he describes his destruction of evidence, you know, I

14   think a jury may very well find doesn't mean he actually got

15   rid of it.  He's just holding it and withholding it from us.

16           THE COURT:  Thank you, Counsel.

17           MR. ZELLER:  Thank you.

18           THE COURT:  All right.  This is what I'm going to

19   do on all three of these.  I'm going to make my rulings at

20   this point.

21           With respect to the documents, the privileged

22   documents, including Bates KS 07831 and the other documents

23   in that series that have been designated, based on what's

24   before me right now, the Court does not find that there is

25   sufficient evidence to order the documents to be produced to

186

3220

1  Mattel; however, I do believe that there is a sufficient

2  showing for the Court to examine the documents in camera.

3       So I'm going to order MGA to turn the series of

4  documents over to the Court.  Perhaps once the Court looks at

5  it, when that is combined with the evidence that is before

6  the Court, there may be sufficient evidence to produce them,

7  but I at this point don't think there's sufficient evidence

8  without knowing more about the documents themselves.

9       And, Counsel, I'm going to ask that you have

10 someone on your team do that and provide those to Mr. Holmes

11 as soon as possible, because I'd like to do this during

12 breaks or lunch today and get this done.

13      With respect to Exhibit 13381, I'm going to find on

14 402 and 403 grounds that that is precluded from Mattel's case

15 in chief based on the witnesses being called at this point.

16      As far as 13380, we are definitely going to redact

17 the line in the e-mail from Mr. Fred Larian to Isaac Larian,

18 the second sentence of that first e-mail on May 25th:  I

19 doubt you will swear on any your children's lives," through

20 the end of that sentence.  That has been redacted.  And

21 before counsel could seek to introduce this before the jury,

22 the Court will consider the testimony of Mr. Fred Larian to

23 that point and whether or not a sufficient foundation has

24 been laid for even getting into this issue, let alone into

25 this document.

187

3221

1          So I'm going to reserve ruling on that until

2     Mr. Larian has testified.  But in any event, let's have the

3     line completely redacted, and let's do it in such a way as

4     though it appears that that line was never there.  Let's just

5     have that blanked out, because there's certainly no point in

6     getting into that.

7          So that's those three documents.

8          I do have rulings to make on all of transcripts,

9     but since we're not going to be doing that until Tuesday at

10    the earliest, I'll probably reserve those in the end of the

11    day.

12         I was just handed a note that we have all jurors

13    present.  It's two minutes before nine o'clock.  Let's have

14    Mr. Bryant up on the stand and ready to go at nine o'clock

15    unless there are other issues.

16         MR. PRICE:  There's an issue we need to take up at

17    sidebar.  It concerns a transcript.

18         THE COURT:  Very well.

19         **(SIDEBAR CONFERENCE HELD.)**

20         MR. PRICE:  Your Honor, you mentioned that if we

21    were going to use the in camera hearing transcript to

22    impeach, that we should request a sidebar conference first.

23         THE COURT:  What?

24         MR. PRICE:  From Mr. Bryant on the Evidence

25    Eliminator.

188

3319

7              C E R T I F I C A T E

10          I hereby certify that pursuant to Title 28,

11   Section 753 United States Code, the foregoing is a true and

12   correct transcript of the stenographically reported

13   proceedings in the above matter.

14          Certified on June 20, 2008.


          _____
17   MARK SCHWEITZER, CSR, RPR, CRR
     Official Court Reporter
18   License No. 10514

189

# Exhibit P

190

3320

1           UNITED STATES DISTRICT COURT

2           CENTRAL DISTRICT OF CALIFORNIA

3               EASTERN DIVISION

4                  - - -

5       HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                  - - -

7   MATTEL, INC.,                    )
                                     )
8                   PLAINTIFF,       )
                                     )
9           VS.                      )   NO. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, INC., ET. AL., )  TRIAL DAY 16
                                     )   AFTERNOON SESSION
11                  DEFENDANTS.      )   PAGES 3320-3468
    ─────────────────────────────   )
12  AND CONSOLIDATED ACTIONS,        )
    ─────────────────────────────   )

13

14

15     REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17            FRIDAY, JUNE 20, 2008

18                 1:41 P.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
           FEDERAL OFFICIAL COURT REPORTER
24            3470 12TH STREET, RM. 134
           RIVERSIDE, CALIFORNIA  92501
25               951-274-0844
              WWW.THERESALANZA.COM

3321

```
 1   APPEARANCES:

 2
     ON BEHALF OF MATTEL, INC.:
 3
                         QUINN EMANUEL
 4                       BY:   JOHN QUINN
                               JON COREY
 5                             MICHAEL T. ZELLER
                               HARRY OLIVAR
 6                             TIMOTHY ALGER
                               WILLIAM PRICE
 7                       865 S. FIGUEROA STREET,
                         10TH FLOOR
 8                       LOS ANGELES, CALIFORNIA   90017
                         213-624-7707
 9

10
     ON BEHALF OF MGA ENTERTAINMENT:
11
                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
12                       BY:   THOMAS J. NOLAN
                               MATTHEW SLOAN
13                             RAOUL KENNEDY
                               LAUREN AGUIAR
14                             CARL ROTH
                         300 SOUTH GRAND AVENUE
15                       LOS ANGELES, CALIFORNIA   90071-3144
                         213-687-5000
16

17

18

19

20

21

22

23

24

25
```

3376

1    AFFIRMATIVE ANSWER ON THAT, SIR.

2    Q    YOU HAVE EXAMINED DOZENS OF NOTARY BOOKS DURING YOUR

3    CAREER; IS THAT CORRECT?

4    A    YES, I'D SAY, AT A MINIMUM.

5    Q    AND IN YOUR EXPERIENCE, DO NOTARIES GENERALLY TRY TO KEEP    03:12

6    THE ENTIRE TEXT OF AN ENTRY IN A SINGLE BOX?

7    A    THEY DO.

8    Q    SO IF THERE WAS A LOT OF TEXT, THEY MAY HAVE TO TRY TO

9    SQUEEZE IT ALL IN; IS THAT CORRECT?

10   A    THAT'S CORRECT.    03:12

11           THE COURT:   COUNSEL, IF YOU'RE MOVING ON TO A

12   DIFFERENT AREA, WE'RE GOING TO TAKE OUR AFTERNOON BREAK.

13           (WHEREUPON, JURORS DEPART COURTROOM.)

14           (WHEREUPON, A BRIEF RECESS WAS HELD.)

15           THE COURT:   WE'RE BACK ON THE RECORD.    04:04

16           JUST TO PUT ON THE RECORD, THE COURT HAD AN IN-CAMERA

17   MEETING WITH COUNSEL FOR BOTH MATTEL AND MGA THAT WAS OFF THE

18   RECORD IN WHICH THE COURT DISCUSSED ITS IN-CAMERA REVIEW OF THE

19   DOCUMENTS FOR WHICH MGA CLAIMS ATTORNEY-CLIENT PRIVILEGE.

20           THE COURT HAS REVIEWED THE DOCUMENTS IN LIGHT OF ALL    04:04

21   OF THE ARGUMENT AND THE EVIDENCE AND LEGAL ANALYSIS SUBMITTED

22   TO IT, AND FINDS THAT ALL BUT ONE OF THE DOCUMENTS ARE

23   PRIVILEGED.  AND I BELIEVE THAT, JUST FOR THE RECORD, MGA

24   RECOGNIZES THAT THE E-MAIL FROM ISAAC LARIAN TO...

25           MS. AGUIAR:   YOUR HONOR, IF IT WOULD BE HELPFUL, WE    04:05

FRIDAY, JUNE 20, 2008                 TRIAL DAY 16, AFTERNOON SESSION

193

3377

1  KNOW WHICH DOCUMENT YOU ARE REFERRING TO.   I SAW WHICH ONE YOU

2  REFERRED TO, AND WE HAVE AN UNDERSTANDING.

3          THE COURT:   YOU KNOW WHICH ONE I'M REFERRING TO?

4      MS. AGUIAR:   YES.

5          THE COURT:   EXCEPT FOR THAT ONE DOCUMENT.   I MUST        04:05

6  HAVE LEFT IT INSIDE.

7      MS. AGUIAR:   IT'S AN E-MAIL BETWEEN MR. BRYANT AND

8  MR. LARIAN.

9          THE COURT:   YES.   IT WAS AN E-MAIL BETWEEN MR. LARIAN

10  AND MR. BRYANT.                                                04:05

11      MS. AGUIAR:   CORRECT.

12      THE COURT:   AND YOU WILL TURN THAT OVER TODAY.

13      MS. AGUIAR:   WE WILL.

14          THE COURT:   OTHERWISE, ALL OF THE DOCUMENTS,

15  INCLUDING THE CLAWBACK DOCUMENT, WHICH WAS KS-07831, ARE       4:05

16  PRIVILEGED, AND THE CLIENT FRAUD EXCEPTION DOES NOT APPLY.   AND

17  I'LL NOT VICIATE THAT PRIVILEGE IN THIS CASE AT THIS POINT; SO

18  THAT TAKES CARE OF THAT MOTION.   THE COURT WILL INDICATE THAT

19  IN A MINUTE ORDER AS WELL.

20          HERE IT IS.   I FOUND IT.                               04:06

21          THIS IS THE E-MAIL FROM ISAAC LARIAN TO

22  VICTORIA O'CONNOR, WHICH WAS FORWARDING AN E-MAIL FROM

23  CARTER BRYANT TO ISAAC LARIAN.   AND THIS WILL BE ATTACHED TO

24  THE MINUTE ORDER AND TURNED OVER TO MATTEL.

25          WE'RE BACK ON THE RECORD.   LET'S BRING THE JURY IN.   04:06

FRIDAY, JUNE 20, 2008              TRIAL DAY 16, AFTERNOON SESSION   194

3378

1    YES, COUNSEL?

2    **MS. MORGENTHALER:**  I'M ALISA MORGENTHALER,

3    CHRISTENSEN GLASER, COUNSEL FOR NONPARTY FARHAD LARIAN.

4        COUNSEL FOR MATTEL DEMANDED THAT MR. LARIAN BE HERE

5    AT 1:15 TODAY.  HE'S BEEN WAITING SINCE THAT TIME.  AND HE IS          04:06

6    NOT REALLY AVAILABLE TO ATTEND ON ANOTHER DAY.  COUNSEL'S

7    INDICATING THEY'RE GOING TO TAKE A LATER SCHEDULED WITNESS

8    BEFORE HIM, AND WE'D LIKE TO HAVE THE COURT TAKE MR. LARIAN,

9    WHO'S SCHEDULED NEXT AFTER THE EXPERT, SO THAT HE CAN HAVE HIS

10   TESTIMONY TODAY, AS SCHEDULED.          04:07

11   **THE COURT:**  THANK YOU, COUNSEL.

12   CAN WE ACCOMMODATE, MR. QUINN?

13   **MR. QUINN:**  THE OTHER WITNESS IS PETER MARLOW, WHO'S

14   REPRESENTED BY THE GENTLEMAN IN THE AISLE, WHO'S FAMILIAR TO US

15   ALL.          04:07

16   **THE COURT:**  YES.

17   **MR. GOLDSOBEL:**  GOOD AFTERNOON, YOUR HONOR.

18   **MR. QUINN:**  AND WE HAVE TOLD THEM THAT IT SEEMS

19   UNLIKELY THAT WE WILL GET TO BOTH OF THEIR CLIENTS.

20   WE WOULD DO EITHER ONE.          04:07

21   **THE COURT:**  WELL, LET'S DO THIS:  I'LL ASK THE JURY

22   IF THEY'RE WILLING TO STAY A LITTLE LATER TONIGHT AND WE'LL SEE

23   IF WE CAN'T STAY UNTIL 5:30.  LET'S RESUME HERE AND GET THROUGH

24   THESE WITNESSES AS QUICKLY AS WE CAN.

25   THANK YOU, COUNSEL.          04:07

3468

1          ALL GOOD THINGS HAVE TO COME TO AN END AT SOME POINT

2    IN TIME.

3          **MR. QUINN:**  WE HAVE TO DO A CROSS-EXAMINATION TOO.

4          **MR. NOLAN:**  OF COURSE.

5          **MR. QUINN:**  WE BELIEVE IN GOOD FAITH THAT WE ARE DOWN        06:18

6    TO SOME WITNESSES WHO WILL BE PRETTY SHORT.  BUT I DON'T KNOW

7    THAT WE CAN DO THEM AND ALSO DO MR. LYTER.

8          **THE COURT:**  THE COURT IS CERTAINLY GOING TO BE AS

9    FLEXIBLE WITH MGA AS IT HAS BEEN WITH MATTEL.

10          **MR. NOLAN:**  I APPRECIATE THAT.                              06:18

11          **THE COURT:**  VERY GOOD.

12          EVERYONE HAVE A GOOD WEEKEND.

13

14

15

16

17                    CERTIFICATE

18

19   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
20   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
21   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

22

23   _Theresa A. Lanza_                    6-24-08

24   THERESA A. LANZA, RPR, CSR                DATE
     OFFICIAL COURT REPORTER

25

FRIDAY, JUNE 20, 2008              TRIAL DAY 16, AFTERNOON SESSION   196

# Exhibit Q

197

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11

| | |
|---|---|
| 12   MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| 13          Plaintiff, | Consolidated with |
| 14      vs. | Case No. CV 04-09059 SGL (RNBx)<br>Case No. CV 05-02727 SGL (RNBx) |
| 15   MGA ENTERTAINMENT, INC., et al., | Honorable Stephen G. Larson |
| 16        Defendant. | **PHASE B VERDICT FORM AS GIVEN** |
| 17 ————————————————— | |
| 18   AND CONSOLIDATED ACTIONS | |

19

20

21

22

23

24

25

26

27

28



## II.  Copyright Infringement

5.     Has Mattel proven by a preponderance of the evidence that MGA is liable to Mattel for copyright infringement?

    Yes        _X_

    No         ___

If your answer is "yes," then answer Question 6.

If your answer is "no," then answer Question 7.


6.     Was MGA's copyright infringement willful?

    Yes        ___

    No         _X_

Answer Question 7.


7.     Has Mattel proven by a preponderance of the evidence that Isaac Larian is liable to Mattel for copyright infringement?

    Yes        _X_

    No         ___

If your answer is "yes," then answer Question 8.

If your answer is "no," then answer Question 9.


8.     Was Mr. Larian's copyright infringement willful?

    Yes        ___

    No         _X_

Answer Question 9.


9.     Has Mattel proven by a preponderance of the evidence that MGA Hong Kong is liable to Mattel for copyright infringement?

    Yes        _X_

PHASE B VERDICT FORM AS GIVEN

199

1          No   ____

2     If your answer is "yes," then answer Question 10.

3     If your answer is "no," then answer Question 11.

4

5     10.   Was MGA Hong Kong's copyright infringement willful?

6          Yes   ____

7          No   _X_

8     Answer Question 11.

9

10     11.   What amount of damages, if any, should be awarded to Mattel for the

11     defendants' copyright infringement?

12     (a)   Copyright Infringement by MGA

13          $   6 Million

14     (b)   Copyright Infringement by Isaac Larian

15          Distributions Mr. Larian received from MGA attributable to Bratz-

16          related works:

17          $   3 Million

18          Value of Mr. Larian's ownership percentage of MGA attributable to

19          Bratz-related works:

20          $   0

21     (c)   Copyright Infringement by MGA Hong Kong:

22          $   1 Million

23

24

25

26

27

28

209/2609529.2608584

-5-

PHASE B VERDICT FORM AS GIVEN

### III.  Punitive Damages

1

2      12.   Has Mattel proven by clear and convincing evidence that MGA acted

3  with malice, oppression, or fraud?

4          Yes   ____

5          No   _X_

6  If your answer is "yes," then answer Question 13.

7  If your answer is "no," then answer Question 14.

8

9      13.   What amount of punitive damages, if any, should be awarded against

10  MGA?

11          $_____⊘_____

12  Answer Question 14.

13

14      14.   Has Mattel proven by clear and convincing evidence that Isaac Larian

15  acted with malice, oppression, or fraud?

16          Yes   ____

17          No   _X_

18  If your answer is "yes," then answer Question 15.

19  If your answer is "no," then answer Question 16.

20

21      15.   What amount of punitive damages, if any, should be awarded against

22  Mr. Larian?

23          $_____⊘_____

24  Answer Question 16.

25

26      16.   Has Mattel proven by clear and convincing evidence that MGA Hong

27  Kong acted with malice, oppression, or fraud?

28          Yes   ____

209/2609529.2608584/2

-6-

PHASE B VERDICT FORM AS GIVEN

201

## IV.  Fraudulent Concealment

(Answer all five questions in this section.)

18.   Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of intentional interference with contract against it until at least April 27, 2002?

Yes   _X_

No   ____

19.   Has Mattel proven by a preponderance of the evidence that Isaac Larian fraudulently concealed the bases for Mattel's claim of intentional interference with contract against him until at least April 27, 2002?

Yes   ____

No   _X_

20.   Has Mattel proven by a preponderance of the evidence that MGA fraudulently concealed the bases for Mattel's claim of conversion against it until at least April 27, 2001?

Yes   _X_

No   ____

21.   Has Mattel proven by a preponderance of the evidence that Mr. Larian fraudulently concealed the bases for Mattel's claim of conversion against him until at least April 27, 2001?

Yes   ____

No   _X_

209/2609529.26085844

PHASE B VERDICT FORM AS GIVEN

202

1    22.    Has Mattel proven by a preponderance of the evidence that MGA Hong

2    Kong fraudulently concealed the bases for Mattel's claim of conversion against it

3    until at least April 27, 2001?

4              Yes    _____

5              No      X

6

7         Once this verdict form is completed, the foreperson of the jury should sign

8    and date on the lines below.

9

10   DATED:  *August 26, 2008*          /s/

                                        Jury Foreperson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PHASE B VERDICT FORM AS GIVEN

203

# Exhibit R

204



```
                    FILED
        CLERK, U.S. DISTRICT COURT

              JUL 10 2008

        CENTRAL DISTRICT OF CALIFORNIA
        EASTERN DIVISION         BY DEPUTY
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | Hon. Stephen G. Larson |
| MGA ENTERTAINMENT, INC., | |
| Defendant. | **FINAL JURY INSTRUCTIONS AS GIVEN** |
| AND CONSOLIDATED ACTIONS | |

## JURY INSTRUCTION NO. 29

In its final claim, Mattel contends that MGA, MGA Entertainment (HK) Limited, and Isaac Larian wrongfully exercised control over Mattel's property, including tangible Bratz-related works such as Mr. Bryant's drawings. To establish this claim for conversion, Mattel must prove the following by a preponderance of the evidence:

1.      That tangible property was "conceived or reduced to practice" --- that is, created --- by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000);

2.      That any of the defendants intentionally took possession of such property for a significant period of time;

3.      That Mattel did not consent;

4.      That Mattel was harmed; and

5.      That any one of the defendant's conduct was a substantial factor in causing Mattel's harm.

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

206

# Exhibit S

207

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | |
| | Consolidated with |
| vs. | CASE NO. CV 04-9059 SGL (RNBx) |
| | CASE NO. CV 05-2727 SGL (RNBx) |
| MGA ENTERTAINMENT, INC., et al., | Hon. Stephen G. Larson |
| Defendants. | |
| AND CONSOLIDATED ACTIONS | **COURT'S PHASE B JURY INSTRUCTIONS AS GIVEN** |

208

## JURY INSTRUCTION NO. 35

Mattel claims that defendants fraudulently concealed the facts underlying Mattel's claims of intentional interference with contract and conversion.  Defendants deny these allegations.

To prove fraudulent concealment, Mattel must show the following by a preponderance of the evidence

(1)   the defendants took affirmative steps to conceal the facts that could have led Mattel to discover that Carter Bryant created Bratz-related works while employed by Mattel or that Carter Bryant entered into a contract with and worked with MGA while he was still employed by Mattel; and

(2)   Mattel was not aware of such facts that either did or would have, with diligence, led Mattel to discover that Carter Bryant created Bratz works while employed by Mattel or that Carter Bryant entered into a contract with and worked with MGA while he was still employed by Mattel.

If you so find by the preponderance of the evidence, you should find for Mattel on its allegations of fraudulent concealment.  If not, you should find for defendants on the allegations of fraudulent concealment.

39

209

# Exhibit T

210

4022

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                    ---

4   **HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING**

5                    ---

6   MATTEL, INC.,              :   PAGES 4022- 4201

7          PLAINTIFF,          :

8      VS.                     :   NO. ED CV04-09049-SGL
                               :   [CONSOLIDATED WITH
9   MGA ENTERTAINMENT, INC.,   :   CV04-9059 & CV05-2727]
    ET AL.,                    :
10                             :
           DEFENDANTS.         :
11  _____

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               RIVERSIDE, CALIFORNIA

17             WEDNESDAY, JULY 2, 2008

18               JURY TRIAL - DAY 19

19               AFTERNOON SESSION

20

21

22                         MARK SCHWEITZER, CSR, RPR, CRR
                           OFFICIAL COURT REPORTER
23                         UNITED STATES DISTRICT COURT
                           181-H ROYBAL FEDERAL BUILDING
24                         255 EAST TEMPLE STREET
                           LOS ANGELES, CALIFORNIA 90012
25                         (213) 663-3494

CERTIFIED
COPY

211

4023

```
1    Appearances of Counsel:

2

3    On Behalf of Mattel:

4        Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
         By John B. Quinn, Esq.
5            B. Dylan Proctor, Esq.
             Michael T. Zeller, Esq.
6            Harry Olivar, Esq.
             John Corey, Esq.
7            Diane Hutnyan, Esq.
             William Price, Esq.
8        855 South Figueroa Street
         10th Floor
9        Los Angeles, CA 90017
         (213) 624-7707
10

11

12   On Behalf of MGA Entertainment:

13       Skadden, Arps, Slate, Meagher & Flom LLP
         By Thomas J. Nolan, Esq.
14           Carl Alan Roth, Esq.
             Jason Russell, Esq.
15           Lauren Aguiar, Esq.
             David Hansen, Esq.
16           Matthew Sloan, Esq.
             Robert Herrington, Esq.
17       300 South Grand Avenue
         Los Angeles, CA 90071-3144
18       (213) 687-5000

19

20

21

22

23

24

25
```

212

4065

1   them in '99, then it's relevant to have an expert testify on

2   that, and it's relevant if the jury is going to be asked

3   about that, which they are.  It's in the verdict forms.

4          If there's no implication, and they find that the

5   drawings are essentially the same drawings, except that they

6   are colored in, then that doesn't translate to ownership.

7          THE COURT:  Right.

8          MS. AGUIAR:  Okay.  And then with regard to

9   sculpting, I think yes, it's true that this witness doesn't

10  know what happened between certain dates, but again, getting

11  back to the verdict form, just because we're almost getting

12  to that point and the parties have been amending it to

13  reflect how this case has been tried, they are asking this

14  jury whether Mr. Bryant created or directed someone else to

15  create these 3-D things.

16         So if the jury is going to have to decide, well,

17  was it him that did it or was it the sculptor, I think it's

18  pertinent to have a sculpting expert talk about the fact that

19  it's critical for the process, and what Mr. Bryant provided

20  could have resulted in 16 different sculpts, but it resulted

21  in this one because of the sculptor, not because of

22  Mr. Bryant.  What Mr. Corey read from a hearing that happened

23  before we had our first day of trial, as your Honor observed

24  earlier today, things change.

25         THE COURT:  Things change.  And no one should

213

4066

1   presume that any particular question is going to be asked of

2   the jury.  The Court will make that determination.

3           MS. AGUIAR:  Of course.  I just mean that both

4   sides --

5           THE COURT:  I just don't want Mattel to think they

6   have already figured out the verdict form.

7           MS. AGUIAR:  Thank you, your Honor.

8           THE COURT:  All right.  If there's nothing further,

9   the Court is prepared to rule on this motion and the motion

10  for waiver.

11          Okay.  Let me begin with the earlier motion that we

12  discussed, the motion regarding waiver.  The Court is going

13  to deny that motion.  I do believe that there was a waiver of

14  the privilege; however, I do not believe the scope extends as

15  far as Mattel is seeking.  However, having said that, if MGA

16  goes any further down this road at all, the Court will

17  revisit this ruling.

18          Regarding the motion to preclude the expert

19  witness, Mr. Robert Tonner, the Court grants that motion.

20  Putting aside the issue of the relevance of any of this, the

21  Court has a much more fundamental problem, after considering

22  the testimony of Mr. Robert Tonner.  And I will only --

23  certainly not to embarrass anybody, but I simply don't find

24  Mr. Tonner credible.  I find his testimony lacking in

25  credibility.  And I find it to be tailored testimony and not

214

1   suitable for an expert witness.  And exercising its <u>Daubert</u>

2   required function, the Court precludes the testimony of

3   Mr. Tonner.

4          If parties would seek a further elaboration of the

5   Court's reasoning on this, the Court is happy to provide it.

6   I'm always reluctant to do so when one requires the Court to

7   comment on the character and credibility of the witness.

8   Based on the Court's assessments of the testimony that was

9   given here in response not only to counsel's questions but

10  the Court's questions, I simply don't find this witness to be

11  credible as an expert or in any other way.

12         So motion in limine to exclude Mr. Tonner's

13  testimony is granted.

14         MS. AGUIAR:  Just one clarification, your Honor.  I

15  don't know that it will become an issue, but Mattel has an

16  expert who essentially is very much along the same lines as

17  Mr. Tonner in terms of his -- I don't want to say they have

18  the same background, but they have similar comparisons that

19  they are drawing, very similar graphics, and the bar graphics

20  were drawn from their expert.  We tried to make the points we

21  were -- we think needed to be made.

22         So I don't think this is what you are saying, but

23  if we could have some guidance on whether this area of

24  testimony -- you seem to be saying apart from commenting on

25  Mr. Tonner himself, that this area of testimony is just

4201

```
 1
 2
 3
 4
 5
 6                    C E R T I F I C A T E
 7
 8
 9          I hereby certify that pursuant to Title 28,
10   Section 753 United States Code, the foregoing is a true and
11   correct transcript of the stenographically reported
12   proceedings in the above matter.
13          Certified on July 2, 2008.
14
15
16          MARK SCHWEITZER, CSR, RPR, CRR
            Official Court Reporter
17          License No. 10514
18
19
20
21
22
23
24
25
```

216

# Exhibit U

217

2936

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3              EASTERN DIVISION

4                 - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                 - - -

7   MATTEL, INC.,                    )
                                     )
8                    PLAINTIFF,      )
                                     )
9          VS.                       )   NO. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, INC., ET. AL., )
                                     )
11                   DEFENDANTS.     )   TRIAL DAY 15
                                     )   MORNING SESSION
12  AND CONSOLIDATED ACTIONS,        )   PAGES 2936-3032
                                     )

13

14

15      REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17           WEDNESDAY, JUNE 18, 2008

18                 9:07 A.M.

19

20

21

22

23          THERESA A. LANZA, RPR, CSR
          FEDERAL OFFICIAL COURT REPORTER
24          3470 12TH STREET, RM. 134
          RIVERSIDE, CALIFORNIA 92501
25              951-274-0844
            WWW.THERESALANZA.COM

2937

```
 1    APPEARANCES:

 2
      ON BEHALF OF MATTEL, INC.:
 3
                          QUINN EMANUEL
 4                        BY:  JOHN QUINN
                               JON COREY
 5                             MICHAEL T. ZELLER
                               HARRY OLIVAR
 6                             TIMOTHY ALGER
                          865 S. FIGUEROA STREET,
 7                        10TH FLOOR
                          LOS ANGELES, CALIFORNIA  90017
 8

 9

10    ON BEHALF OF MGA ENTERTAINMENT:

11                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:  THOMAS J. NOLAN
12                             JASON RUSSELL
                               RAOUL KENNEDY
13                             LAUREN AGUIAR
                               CARL ROTH
14                        300 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA  90071-3144
15                        213-687-5000

16

17

18

19

20

21

22

23

24

25
```

WEDNESDAY, JUNE 18, 2008                    TRIAL DAY 15, MORNING SESSION    219

2944

1   Q    NOW, DID YOU HAVE A PRACTICE IN 1999, WHEN YOU WOULD

2   TRAVEL ON VACATION, TO BRING NOTEBOOKS WITH YOU?

3   A    NO, NOT THAT I REMEMBER.

4   Q    WE TALKED A LITTLE BIT YESTERDAY ABOUT SEVENTEEN MAGAZINE.

5        DO YOU RECALL THAT TESTIMONY?                            09:14

6   A    YES.

7   Q    AND AS I RECALL FROM THAT TESTIMONY, YOU HAD LOOKED AT

8   CERTAIN ADS IN SEVENTEEN MAGAZINE; AND THAT WAS THE AUGUST 1998

9   EDITION OF THE SEVENTEEN MAGAZINE; CORRECT?

10  A    YES.                                                     09:14

11  Q    AND THERE HAS BEEN A LOT OF TESTIMONY ABOUT KICKAPOO HIGH

12  SCHOOL.

13       DO YOU RECALL THAT?

14  A    YES.

15  Q    MY MISTAKE YESTERDAY, I WANTED TO GO TO A MAP, AND I      09:14

16  DIDN'T HAVE IT AVAILABLE.  IF I COULD GO BACK IN TIME TO THAT

17  NOW, JUST TO DISCUSS THIS.

18       MR. NOLAN:  PUT UP, AARON, IF YOU DON'T MIND, THE

19  OPENING GRAPHIC THAT WAS USED BY MATTEL IN THE OPENING

20  STATEMENT.                                                    09:14

21  BY MR. NOLAN:

22  Q    NOW, MR. BRYANT, DO YOU HAVE AN UNDERSTANDING IN THIS CASE

23  AS TO WHETHER OR NOT MATTEL BELIEVES YOU EVER EVEN DROVE BY

24  KICKAPOO HIGH SCHOOL?

25       MR. PRICE:  OBJECTION.  IRRELEVANT.                      09:15

2945

1       **THE COURT:**  SUSTAINED.

2    **BY MR. NOLAN:**

3    Q    DID YOU DRIVE BY THE KICKAPOO HIGH SCHOOL IN LATE AUGUST

4    OF 1998?

5    A    YES.

6    Q    JUST SO THAT WE'RE CLEAR ABOUT THE GRAPHIC THAT MATTEL WAS

7    USING, AND JUST TO REORIENT EVERYBODY, YOU WERE WORKING AT

8    OLD NAVY, WHICH IS LOCATED IN THE BATTLEFIELD MALL; CORRECT?

9    A    YES.

10   Q    AND THAT'S IN SPRINGFIELD, MISSOURI.

11   A    RIGHT.

12   Q    THAT'S APPROXIMATELY AN HOUR, GIVE OR TAKE A FEW MINUTES,

13   DEPENDING ON TRAFFIC, FROM YOUR PARENTS' HOME.

14   A    YES.

15   Q    I DON'T THINK I'VE ASKED YOU THIS, BUT WHAT WAS YOUR

16   POSITION AT OLD NAVY?  WERE YOU DESIGNING FOR THEM?

17   A    OH, NO.  I WAS JUST A SALESPERSON.

18   Q    AND YOU WORKED DURING THE DAY FOR OLD NAVY.

19   A    I THINK I HAD VARIOUS SHIFTS DURING THE DAY, SOME WERE AT

20   NIGHT.

21   Q    BUT YOUR SKETCHES THAT YOU DID FOR BRATZ WERE DONE IN THE

22   EVENING, AFTER YOU CAME BACK FROM OLD NAVY; IS THAT CORRECT?

23   A    I THINK SO, YES.

24   Q    SO THIS GRAPHIC -- AND THE RED LINE INDICATES A ROUTE

25   COMING OUT OF THE BATTLEFIELD PARKING LOT AND COMING DOWN THIS

09:15

09:15

09:16

09:16

09:16

2946

1    AREA, AND THEN HOOKING ON TO THIS OTHER THOROUGHFARE -- AND I'M

2    GOING TO ASK YOU TO PUT NAMES ON THIS HERE IN A MINUTE -- AND

3    THEN COMING DOWN TO YOUR PARENTS' HOUSE.

4            DO YOU SEE THAT?

5    A    YES.                                                                  09:17

6    Q    NOW, YESTERDAY I BELIEVE I ASKED YOU THIS, BUT I JUST WANT

7    TO PUT THIS IN CONTEXT.

8            MR. BRYANT, DID YOU EVER TAKE THE ROUTE THAT MATTEL

9    SUGGESTED THROUGH THIS OPENING GRAPHIC, FROM OLD NAVY TO YOUR

10   PARENTS' HOUSE?                                                            09:17

11   A    NO.

12   Q    AND HOW CAN YOU BE CERTAIN THAT YOU DID NOT TAKE THAT

13   ROUTE?

14   A    I THINK AT THE TIME I DIDN'T EVEN KNOW THAT ROUTE EXISTED.

15   Q    IF YOU LOOK -- AND YOU MIGHT HAVE 18507, IF THIS MORNING     09:17

16   IS BETTER THAN YESTERDAY AFTERNOON.  YOU SHOULD HAVE IT IN YOUR

17   NOTEBOOK, IN THE WHITE BOOK.  IT'S 18507.

18   A    OKAY.

19           MR. NOLAN:  YOUR HONOR, WE'D LIKE TO PUBLISH THIS

20   GRAPHIC.  THERE'S BEEN NO OBJECTION BY MR. PRICE.  IT'S 18507.    09:18

21   I'LL PUT UP 18507-001.

22   BY MR. NOLAN:

23   Q    CAN YOU PLEASE DIRECT ME, WITH MY NEW TOY, THE LASER, TO

24   WHERE OLD NAVY WAS LOCATED IN THIS BATTLEFIELD MALL.

25   A    I THINK, IF YOU FOLLOW THAT RED BALLOON OVER TO YOUR          09:19

3032

```
 1              THE COURT:  IT WAS JUST FILED ON JUNE 17TH.  I JUST
 2   WANTED TO GIVE YOU NOTICE OF IT.  WE'LL TAKE THIS UP AT 1:15.
 3              MR. NOLAN:  THANK YOU.
 4              THE COURT:  COURT IS IN RECESS.
 5              (WHEREUPON, MORNING SESSION IS CONCLUDED. )            12:01
 6
 7
 8
 9
10
11
12
13
14                          CERTIFICATE
15
16   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
17   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
18   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.
19
20
     THERESA A. LANZA, CSR, RPR          6-20-08
21   FEDERAL OFFICIAL COURT REPORTER        DATE
22
23
24
25
```

WEDNESDAY, JUNE 18, 2008                    TRIAL DAY 15, MORNING SESSION