# Exhibit V

224

1255

```
 1              UNITED STATES DISTRICT COURT

 2             CENTRAL DISTRICT OF CALIFORNIA

 3                   EASTERN DIVISION

 4

 5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

 6
                                        CERTIFIED
 7   MATTEL, INC.,              )         COPY
                                )
 8              PLAINTIFF,       )
                                )
 9         VS.                  )    NO. CV 04-09049
                                )
10   MGA ENTERTAINMENT, INC., ET. AL.,   )
                                )
11              DEFENDANTS.     )    TRIAL DAY 7
                                )    PAGES 1255-1390
12   AND CONSOLIDATED ACTIONS,  )
                                )
13

14

15        REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17            WEDNESDAY, JUNE 4TH, 2008

18                   8:28 A.M.

19

20

21

22

23             THERESA A. LANZA, RPR, CSR
              FEDERAL OFFICIAL COURT REPORTER
24              3470 12TH STREET, RM. 134
              RIVERSIDE, CALIFORNIA  92501
25                   951-274-0844
                  WWW.THERESALANZA.COM
```

WEDNESDAY, JUNE 4, 2008                    TRIAL DAY 7

225

1256

```
 1    APPEARANCES:

 2
      ON BEHALF OF MATTEL, INC.:
 3
                              QUINN EMANUEL
 4                            BY:   JOHN QUINN
                                    JON COREY
 5                                  MICHAEL T. ZELLER
                                    HARRY OLIVAR
 6                                  TIMOTHY ALGER
                              865 S. FIGUEROA STREET,
 7                            10TH FLOOR
                              LOS ANGELES, CALIFORNIA  90017
 8

 9

10    ON BEHALF OF MGA ENTERTAINMENT:

11                            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                              BY:   THOMAS J. NOLAN
12                                  JASON RUSSELL
                                    RAOUL KENNEDY
13                                  LAUREN AGUIAR
                                    CARL ROTH
14                            300 SOUTH GRAND AVENUE
                              LOS ANGELES, CALIFORNIA  90071-3144
15                            213-687-5000

16

17

18

19

20

21

22

23

24

25
```

WEDNESDAY, JUNE 4, 2008                          TRIAL DAY 7

1279

1    AND LET ME ALSO STRESS SOMETHING ELSE, BECAUSE

2    MR. NOLAN HAS STARTED TO REARGUE THE VERY WAIVER ISSUE WE HAVE

3    TALKED WITH THE COURT TIME AND TIME AND TIME AGAIN.   THERE IS

4    THE NINTH CIRCUIT CASE -- THE COLUMBIA BROADCASTING CASE MAKES

5    IT VERY CLEAR THAT THE BELATED WAIVER OF PRIVILEGE IN THESE          08:56

6    CIRCUMSTANCES IS INAPPROPRIATE; IT'S IMPROPER; IT'S

7    SANDBAGGING.   AND THAT ABSOLUTELY IS THE CASE HERE.

8    WE ASKED WITNESSES REPEATEDLY QUESTIONS ABOUT THOSE

9    KINDS OF COMMUNICATIONS, AND THEY ASSERTED THE PRIVILEGE.   WE

10   ARE NOW IN TRIAL.   THEY MADE THEIR CHOICE MONTHS AGO.   AND AS      08:56

11   THE COURT HAS POINTED OUT, IF THEY WERE GOING TO MAKE THAT

12   WAIVER AND TAKE THEIR CHANCES -- BECAUSE, TO BE SURE, WE WERE

13   GOING TO ARGUE AND WE WILL CONTINUE TO ARGUE, IF THEY'RE

14   ALLOWED TO PUT THESE IN, THAT THERE IS A WHOLESALE WAIVER.

15   BUT ALSO, JUST TO FOCUS THE COURT ON THIS PARTICULAR               08:56

16   ISSUE ABOUT THESE E-MAILS -- BECAUSE I THINK WE CAN DEAL WITH

17   THE MORE NARROW ISSUE AT THE MOMENT, WHICH ARE THESE E-MAILS

18   THAT THEY HAVE PRODUCED.   BUT IN FAIRNESS, YOUR HONOR, IT'S

19   INTERESTING THAT ALL THEY HAVE PRODUCED ARE THE COMMUNICATIONS

20   BETWEEN VICTORIA O'CONNOR AND DAVID ROSENBAUM, AND FOR A VERY      08:57

21   NARROW TIME PERIOD IN 2000.   COMPLETELY ABSENT ARE OTHER

22   COMMUNICATIONS BETWEEN THE LAWYER AND MS. O'CONNOR DURING OTHER

23   TIME PERIODS.   COMPLETELY ABSENT ARE HIS COMMUNICATIONS WITH

24   ISAAC LARIAN.   SO WE'RE TALKING ABOUT NOT JUST A SELECTIVE

25   LIMITED WAIVER, WE'RE TALKING ABOUT AN EXTREMELY LIMITED AND       08:57

WEDNESDAY, JUNE 4, 2008                    TRIAL DAY 7

227

1280

1. UNFAIR ONE.  SO IF WE'RE GOING TO GET INTO THESE ISSUES ABOUT

2. THE SCOPE OF THE WAIVER, THIS IS CLASSIC SWORD AND SHIELD THAT

3. THEY ARE ENGAGING IN HERE, AND IT'S IN VIOLATION OF THE MOTION

4. *IN LIMINE*, WHICH THE COURT PRECLUDED THEM, PRECLUDED THEM FROM

5. RELYING ON EXACTLY THESE E-MAILS AND EXACTLY THIS KIND OF      08:57

6. INFORMATION.

7.          THE COURT:  MR. NOLAN, I HAVEN'T READ THESE E-MAILS.

8. WHAT DO THESE E-MAILS SAY?  WHAT IS THE GRAVAMEN OF THEM?

9.          MR. NOLAN:  THE E-MAIL EXCHANGE IS BETWEEN

10. DAVID ROSENBAUM AND VICTORIA O'CONNOR, RECITING FACTUAL      08:57

11. STATEMENTS THAT HAVE BEEN OBTAINED FROM ANNE WANG, WHO WAS

12. REPRESENTING CARTER BRYANT, REGARDING INFORMATION THAT WAS

13. CONVEYED AND THEN CONVEYED TO VICTORIA O'CONNOR.

14.          ISAAC LARIAN, BY THE WAY, WAS QUESTIONED ON THIS

15. INFORMATION AT HIS DEPOSITION.  THEY ARE NOT SURPRISED BY THIS  08:58

16. CONTENT.

17.          ALL IT SAYS, YOUR HONOR, IS -- THERE'S A STATEMENT

18. FROM ANNE WANG THAT CARTER BRYANT HAS CONFIRMED, IN LOOKING AT

19. CHRONOLOGY OF THE PRODUCTION OF THE DRAWINGS, THAT THEY WERE

20. DONE OUTSIDE THE SCOPE OF MATTEL.                            08:58

21.          ISAAC LARIAN WAS QUESTIONED EXTENSIVELY ABOUT THAT.

22. THAT'S NOT BASED ON ADVICE OF COUNSEL.  THAT'S A FACTUAL

23. RECITATION THAT HAS BEEN IN THIS CASE.  IT'S OF NO SURPRISE;

24. IT'S NO SIGNIFICANT MOMENT; IT'S NOT A 'GOTCHA' MOMENT.

25.          THAT'S THE GIST OF IT, YOUR HONOR.                  08:58

WEDNESDAY, JUNE 4, 2008                    TRIAL DAY 7

228

1281

1        AND REPORTING THAT CARTER BRYANT SIGNED THE AGREEMENT

2  AT 3:52 P.M. ON OCTOBER 4TH.

3        THOSE ARE THE TWO FACTUAL STATEMENTS THAT ARE BEING

4  INCLUDED HERE.

5        AND BY THE WAY, VICTORIA O'CONNOR TESTIFIED ALREADY  08:59

6  IN HER DEPOSITION THAT SHE WAS TOLD THAT BY CARTER BRYANT

7  HERSELF.  IT'S NOT THE 'GOTCHA' MOMENT THAT THEY'RE ALL SAYING

8  IT IS.

9        MR. ZELLER:  THE MOTION *IN LIMINE* NUMBER SEVEN THAT

10  THE COURT GRANTED CITED, QUOTED, CHAPTER AND VERSUS, THE  08:59

11  REPEATED EFFORTS WE MADE WHEN WE ASKED DEPOSITION QUESTIONS

12  ABOUT THOSE VERY COMMUNICATIONS.  THEY INSTRUCTED -- TO A

13  PERSON THEY INSTRUCTED.  THAT INCLUDED THE LARIAN DEPOSITION.

14        WE HAVE CERTAINLY NEVER TAKEN THE POSITION THAT A

15  COMMUNICATION BETWEEN MR. BRYANT AND MR. LARIAN WOULD BE  08:59

16  PRIVILEGED.  THE COURT CAN SEE FROM THE E-MAILS BEFORE IT THAT

17  THESE ARE CLEARLY PRIVILEGED COMMUNICATIONS.  THEY ARE BY A

18  LAWYER TO A PERSON WHO IS AN EXECUTIVE AT THE TIME TO MGA.

19        THE COURT:  ON 18468, WHOSE NOTES ARE THESE?

20        MR. NOLAN:  THOSE ARE NOTES OF ANNE WANG,  09:00

21  REPRESENTING CARTER BRYANT, AND DAVID ROSENBAUM, BOTH OF WHOM

22  ARE GOING TO BE TESTIFYING IN THIS CASE.

23        MR. ZELLER:  WE WERE DENIED THE OPPORTUNITY TO TAKE

24  DEPOSITION DISCOVERY FROM THEM BECAUSE THEY WERE INSTRUCTED.

25        I ALSO NOTE, YOUR HONOR -- JUST TO SHOW HOW UNFAIR  09:00

WEDNESDAY, JUNE 4, 2008        TRIAL DAY 7

229

1282

```
 1   THIS REALLY IS, AND HOW INCOMPLETE THIS PARTIAL WAIVER IS, THE

 2   COURT WILL RECALL THAT IT HAD BEFORE IT THAT E-MAIL BETWEEN

 3   ISAAC LARIAN AND PATTIE GLASER, THAT, IN FACT, IS QUITE

 4   DIFFERENT IN TERMS OF A FACTUAL REPRESENTATION THAN WHAT'S SAID

 5   IN THIS E-MAIL.  AND THEY HAVE ASSERTED PRIVILEGE OVER THAT.         09:0C

 6   WE HAVE BEEN DENIED THE OPPORTUNITY TO PUT THE FULL PICTURE AND

 7   THE FULL FACTS IN FRONT OF THE JURY.

 8            BUT BOTTOM LINE, THE COURT HAS PRECLUDED THIS.  THEY

 9   HAVE ARGUED ABOUT THIS VERY POINT HALF A DOZEN TIMES IN THIS

10   COURTROOM AND IN FRONT OF JUDGE INFANTE, AND THE COURT AND         09:0C

11   JUDGE INFANTE HAVE CONSISTENTLY REJECTED IT.

12            WITH ALL DUE RESPECT, IN TERMS OF THE OTHER EXHIBITS

13   AND THAT SORT OF THING, IF THOSE ARE AN ISSUE, THEY NEED TO

14   RAISE THEM.  WE CAN DEAL WITH THEM ONE BY ONE, IF THEY ARE

15   TRULY AN ISSUE.  THINGS THAT ARE UNCONTROVERTED, PRESUMABLY,       09:01

16   WILL NOT BE AN ISSUE AND WON'T BE DRAGGED IN FRONT OF THE

17   COURT.  BUT THIS IS SOMETHING WE USED UP ONE OF OUR MOTIONS

18   IN LIMINE ON TO SPECIFICALLY PRECLUDE SO THAT THIS VERY THING

19   DID NOT HAPPEN.  AND NOW THEY ARE DOING IT.

20            THE COURT:  WE'RE WASTING A LOT OF JURY TIME RIGHT         09:01

21   NOW, WHICH I'M GOING TO HAVE TO CHARGE TO BOTH SIDES.

22            LET'S GET THE BRODE WITNESS GOING FIRST.  I'M GOING

23   TO HAVE TO TAKE A LOOK AT THESE AND LOOK AT THE MOTION

24   IN LIMINE, AND I MAY EVEN HAVE TO HEAR FURTHER ARGUMENT ON

25   THIS.  BUT LET'S GET BRODE AND THE FIRST ONE -- DENISE O'NEAL.      09:01
```

WEDNESDAY, JUNE 4, 2008                    TRIAL DAY 7

230

1306

1   GOING TO BE USED WITH MR. ROSENBAUM.

2          YOU'RE NOT COMPROMISING YOUR ABILITY TO GET THIS IN,

3   DEPENDING ON HOW THIS IS FLUSHED OUT.  BUT AT THE SAME TIME,

4   MR. QUINN IS NOT BEING, AS YOU SAY, SAND-BAGGED BY HAVING THESE

5   DOCUMENTS USED THIS MORNING.                                    09:30

6          MR. QUINN:  AND THE BASIS FOR THAT IS THAT IT'S

7   PURELY FACTUAL MATERIAL.

8          THE COURT:  YES.

9          MR. QUINN:  I'LL SEE IF THAT'S IT.  THEN, REMEMBER,

10  THERE IS IN THIS E-MAIL TO PATTIE GLASER WHERE HE SAYS HE DID   09:30

11  THIS NIGHTS AND WEEKENDS.

12         THE COURT:  I WILL LOOK AT THAT.  I UNDERSTAND THAT

13  IT WAS A VERY CURSORY REVIEW OF ALL OF THESE EXHIBITS.  THEY DO

14  APPEAR TO BE FACTUAL TYPE EXHIBITS, EXCEPT FOR THE ONES WHERE

15  THE NOTES ON THE AGREEMENT -- SOME OF THAT APPEARS TO BE        09:31

16  ADVICE.  BUT LIKE I SAY, IT WAS A VERY QUICK REVIEW.  I JUST

17  SAW THESE DOCUMENTS MYSELF FOR THE FIRST TIME.  BUT I THINK THE

18  WAY TO RESOLVE THIS IN A MORE THOUGHTFUL MANNER IS TO NOT WASTE

19  ANY MORE OF THE JURY'S TIME AND TO PROCEED WITH MS. O'CONNOR

20  THIS MORNING.  YOU HAVE OTHER WITNESSES.                        09:31

21         AND YOU HAVE OTHER EVIDENCE.  YOU CAN GET THIS IN.

22  YOU MAKE THIS POINT IN YOUR OPPOSITION TO THE MOTION *IN LIMINE*,

23  SO I DON'T THINK YOU'RE BEING PREJUDICED BY GOING FORWARD WITH

24  MS. O'CONNOR.

25         MR. NOLAN:  JUST SO THE RECORD IS CLEAR, NOT THAT I      09:31

WEDNESDAY, JUNE 4, 2008                    TRIAL DAY 7

231

1346

1   MOMENT THAT IT WOULD PROBABLY BE FRIDAY, ASSUMING MR. LARIAN IS

2   OFF THE STAND AT SOME REASONABLE POINT ON FRIDAY AT THE LATEST.

3        THE COURT:  ANYWAY, YOU'VE RECEIVED THE RELIEF YOU

4   REQUESTED CONCERNING THIS WITNESS, COUNSEL.  THESE DOCUMENTS

5   WILL NOT BE USED FOR THIS WITNESS.                          10:26

6        MR. ZELLER:  YES, THANK YOU.

7        MR. NOLAN:  WITHOUT PUBLISHING THE DOCUMENT OR USING

8   THEM IN ANY FASHION, ONE OF THEM, WHICH SHE IS COPIED ON, COULD

9   I ASK HER TO TAKE A LOOK AT IT TO SEE IF IT REFRESHES HER

10  RECOLLECTION AS TO THE DATE THE CONTRACT WAS SIGNED, BECAUSE    10:26

11  SHE CANNOT RECALL THAT DATE.

12       THE COURT:  I UNDERSTAND THAT.

13       NO.  YOU'RE NOT USING THESE DOCUMENT IN THIS

14  EXAMINATION.

15       MR. NOLAN:  I UNDERSTAND.                              10:26

16       THE COURT:  WITH RESPECT TO THE TKACIK DEPOSITION,

17  THE COURT WILL MAKE THE FOLLOWING RULINGS:

18       PAGE 7, OVERRULED.

19       PAGE 9, BOTH HEARSAY OBJECTIONS ARE OVERRULED.

20       PAGE 10, OVERRULED.  PAGE 23 TO 24, OVERRULED.        10:27

21       PAGE 25, IT IS SUSTAINED WITH RESPECT TO LINES FOUR

22  AND FIVE, BUT OVERRULED AS TO THE REMAINING PART, QUOTE:  "THAT

23  IS DIRECTLY ATTRIBUTED TO MATT BOUSQUETTE"; SO WHAT IS TO BE

24  DELETED IS THE PHRASE "MATTEL NOW CONCEDES BARBIE HAS GRADUALLY

25  LOST TOUCH WITH SOME YOUNG GIRL'S LIVES."  THAT'S OUT; THAT'S    10:27

WEDNESDAY, JUNE 4, 2008                    TRIAL DAY 7

232

1390

```
 1    THE COURT HAS NOT RULED ON.

 2              THE COURT:  OKAY.  THANK YOU.

 3

 4

 5

 6

 7

 8

 9

10

11                      CERTIFICATE

12

13    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
      STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
14    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
      ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
15    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
      THE UNITED STATES.
16

17    _____              6-4-08
      THERESA A. LANZA, CSR, RPR          _____
18    FEDERAL OFFICIAL COURT REPORTER          DATE

19

20

21

22

23

24

25
```

WEDNESDAY, JUNE 4, 2008                    TRIAL DAY 7

233

# Exhibit W

234

1976

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    ---

4    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5    ---

6    MATTEL, INC.,                    :    PAGES 1976 - 2117

7         PLAINTIFF,                  :

8         VS.                         :    NO. ED CV04-09049-SGL
                                       :    [CONSOLIDATED WITH
9    MGA ENTERTAINMENT, INC.,         :    CV04-9059 & CV05-2727]
     ET AL.,                          :

10                                     :

11        DEFENDANTS.                 :

12

13

14

15            REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               RIVERSIDE, CALIFORNIA

17             TUESDAY, JUNE 10, 2008

18             JURY TRIAL - DAY 10

19             AFTERNOON SESSION

20

21

22            MARK SCHWEITZER, CSR, RPR, CRR
              OFFICIAL COURT REPORTER
23            UNITED STATES DISTRICT COURT
              181-H ROYBAL FEDERAL BUILDING
24            255 EAST TEMPLE STREET
              LOS ANGELES, CALIFORNIA 90012
25            (213) 663-3494

CERTIFIED COPY

235

1977

```
1    Appearances of Counsel:

2

3    On Behalf of Mattel:

4        Quinn Emanuel
         By John B. Quinn, Esq.
5            B. Dylan Proctor, Esq.
             Michael T. Zeller, Esq.
6            Harry Oliver, Esq.
             John Corey, Esq.
7            Diane Hutnyan, Esq.
             William Price, Esq.
8        855 South Figueroa Street
         10th Floor
9        Los Angeles, CA 90017
         (213) 624-7707
10

11

12   On Behalf of MGA Entertainment:

13       Skadden, Arps, Slate, Meagher & Flom LLP
         By Thomas J. Nolan, Esq.
14           Carl Alan Roth, Esq.
             Jason Russell, Esq.
15           Lauren Aguiar, Esq.
             David Hansen, Esq.
16           Matthew Sloan, Esq.
         300 South Grand Avenue
17       Los Angeles, CA 90071-3144
         (213) 687-5000
18

19

20

21

22

23

24

25
```

236

2086

1     lawyer concerning the chronology of the Bratz drawings?

2          MR. PRICE:  Object.  That violates the Court's

3     order.

4          THE COURT:  I'm sorry?

5          MR. PRICE:  I object.  It violates the Court's

6     order.

7          THE COURT:  Counsel, let's go to sidebar.

8          (SIDEBAR CONFERENCE HELD.)

9          THE COURT:  Mr. Nolan?

10         MR. NOLAN:  Your Honor, at page 1705 of this trial

11    transcript, starting at line 6, question by Mr. Price:

12         "So you're saying that Ms. O'Connor was given proof

13    of a story that these drawings were not done while Mr. Bryant

14    was at Mattel?

15         "Answer:  Ms. O'Connor went to David Rosembaum who

16    went to Anna Wang, who is Carter Bryant's lawyer, and

17    according to an e-mail that I have seen, his lawyer came back

18    and said she has proof she knows it was done in 1998 when

19    Carter said that the initial drawings --

20         "Question by Mr. Price:  Since this is a critical

21    question as to whether or not those drawings belonged to

22    Mattel, your response was what proof are you talking about

23    besides Mr. Bryant's word?  That was your response; correct?

24         "I did not ask that specific question that you just

25    asked.  I did not."

2087

1    And then there's a long line about what kind of
2    investigation he did and stuff like that.  He testified that
3    he saw an e-mail exchange, and I believe that based on that,
4    your Honor, your ruling with respect to the production of
5    these documents prevented me from asking Victoria O'Connor
6    about them, but you did not restrict us from asking questions
7    to Mr. Larian about it.
8         I will also represent that during his deposition in
9    this case, Mr. Larian also testified with respect to an
10   e-mail that he saw, confirmation about this.  So there's no
11   surprise.  This is a factual assertion, and I think I should
12   be allowed, based on this testimony, to put in this e-mail,
13   which is an e-mail that's referenced and not have to wait to
14   do it during David Rosenbaum.
15        MR. PRICE:  I don't think he should be able to do
16   it under either.  This is part of the implied waiver, which
17   you know very well.  The question was did he rely on this
18   communication from counsel.  And they prohibited us from
19   going into that at all.  We've been through this -- I luckily
20   wasn't present.
21        But you, your Honor, and Mr. Zeller and others have
22   gone through this for a long time.  And we finally get this
23   e-mail last week.  And I think you're right.  That is unfair
24   surprise.  They shouldn't be able to now say well, we're
25   waiving the privilege --

238

2088

1          THE COURT:  Counsel's suggestion is that your

2    question and the unobjected to answer opened the door for

3    this at this point?

4          MR. PRICE:  Well, he points out an answer which

5    pertains to privileged material.  I can't control that.

6    Mr. Nolan keeps trying to say we opened the door because he

7    blurts out answers which he's not supposed to blurt out

8    pursuant to the Court's order.

9          THE COURT:  Well, it's more than -- I mean, what

10   were you referring to in your question?  If not this e-mail

11   or that advice?

12         MR. PRICE:  Well, the question was he said he told

13   Ms. O'Connor to find out.  My question was --

14         THE COURT:  I presume the proof was whether or not

15   Carter Bryant's attorney, namely, Anna Wang, brought back.

16         MR. PRICE:  The answer should have been yes or no.

17   Now, I can't move to strike every time he blurts out an

18   answer.  He's summarizing what he just said.

19         MR. NOLAN:  There was no motion to strike.  He came

20   in.  He asked specifically about the proof.  He moved on, and

21   then he started talking about the inadequacies of just

22   accepting the representations from Carter Bryant.  He went

23   right on with it, your Honor, and cross-examined him

24   extensively on that.  Factual as well as hypothetical

25   questions, and he did so knowing that what the Court's ruling

237

2089

1    was --

2           Well, your Honor, I think when this issue came up,

3    you went back and you looked at the motions in limine that

4    were actually argued with respect to Mr. Rosenbaum's

5    documents, and I think you drew a distinction between the

6    factual assertions and the privileged material, and then you

7    said since this was just given to them last night, the night

8    before Victoria O'Connor, that it would be a surprise, and

9    you shouldn't be allowed to use it with Victoria O'Connor.

10          THE COURT:  The Court did make this distinction

11   between factual and legal.  And what about the e-mail here

12   brings it into the latter?

13          MR. ZELLER:  You know, your Honor, I would say

14   this.  Is that if this -- let me start with this point, your

15   Honor:  This is one that we have made all along.

16          If there is a waiver, it is all the way, and it is

17   all the way through today, because copyright infringement is

18   a continuing wrong.  There is authority for the proposition.

19   That is how far the waiver goes.  If he is going to rely upon

20   state of mind at that time, his state of mind at all times is

21   relevant for purposes of copyright infringement.  We have

22   made that -- it has never been refuted by MGA.

23          Now, of course, what they have done, and just to

24   correct one statement that Mr. Nolan made, it is true that

25   Isaac Larian blurted out yet again at his deposition

246

2090

1    previously the point about the e-mail, but when we tried to

2    follow up, and this is in the record, they instructed, they

3    invoked the privilege. We didn't receive these documents

4    until the course of trial. So it's not just simply a waiver

5    issue that could have been dealt with in the normal course of

6    the case.

7           Now what we're dealing with is also a severe

8    prejudice issue. We had been denied discovery into this

9    whole waiver matter. Even -- so that is something that just

10   can't really be cured, and that doesn't seem to -- the

11   alleged door opening --

12          THE COURT: But the question, again, is what is the

13   attorney-client communication here? This is simply a factual

14   issue, and that was the distinction that I made last week.

15   How is this --

16          MR. ZELLER: But as the Court has pointed out, if

17   they -- they asserted privilege over these communications and

18   over this very communication. That was their assertion.

19   If -- and this has been Judge Infante's point all along. He

20   said this from the very first ruling he made in the case. If

21   it's factual, it's not privileged. They asserted privilege.

22   That was their choice. If they were going to rely upon those

23   documents and they were truly not privileged, they should

24   have been produced a year and a half ago, if not two years

25   ago.

241

2091

1          So I think that you know, they are doing precisely

2     what the Ninth Circuit has said is not proper.  Number one, a

3     belated waiver, and number two, extremely limited one,

4     because they only want to show the jury and the court a very

5     small fraction of what those communications are.

6          THE COURT:  So, Counsel, I guess the question to

7     you is would you be willing to waive entirely?

8          MR. NOLAN:  Your Honor, the answer is no because of

9     the breadth of the waiver.  What this has been is a history

10    of negotiations back and forth where we said to Mattel we are

11    going to produce, you know, the factual exchange of

12    e-mails --

13         THE COURT:  But the bottom line is it wasn't

14    produced and provided.

15         MR. NOLAN:  Right.  But this is a redo argument of

16    what we had the day that Victoria O'Connor was on the stand.

17    You indicated on the record -- you went back and looked at

18    the arguments that had been had the previous Monday with

19    respect to factual assertions --

20         THE COURT:  This is a factual assertion.

21         MR. NOLAN:  It is.  It doesn't constitute a waiver

22    of anything.  It's a factual assertion made from Carter

23    Bryant --

24         THE COURT:  But the e-mail speaks to an attorney

25    opining that the drawings are made outside the scope of

2092

1    employment.

2        MR. NOLAN:  Your Honor, but this is Ann Wang, who

3    says I spoke with -- I'm sorry.  This is David Rosembaum

4    saying I spoke with Carter's lawyer and e-mailed her a copy

5    of the draft.  And he goes on.  And she said that she has

6    reviewed the chronology of the creation of this design and is

7    satisfied that Carter created this outside the scope of his

8    employment at Mattel.

9        It's simply a factual recitation as to chronology

10   of dates.  In other words, that he did it before he went to

11   work at Mattel.  That's simply the factual recitation that is

12   being made.

13       MR. ZELLER:  If I may interject --

14       MR. NOLAN:  May I go on?  I'm sorry.

15       She says she understands the concerns here.

16   Apparently he conceived of this product in 1998.  So I

17   recommend that your patent attorneys review this project as

18   soon as possible to avoid any time limitations in the patent

19   law.

20       So she is saying that it was done in 1998.  That's

21   a factual assertion as to evidence that's going to come into

22   this case.

23       MR. ZELLER:  MGA is on the horns of a dilemma at

24   this point.  Number one, if, as Mr. Nolan now represents

25   years into the litigation, that e-mail is not entirely

243

1    privileged, well, then they were in violation of a court

2    order, and specifically the January 25, 2007, order of Judge

3    Infante that the Court is now, of course, very familiar with,

4    in which all such documents were ordered produced long ago.

5                So either they have violated that court's order or

6    the court's order, or number two, they are at this point

7    revealing privileged communications.  Those are the only

8    alternatives at this point.

9                And in either case, it's either a complete

10   wholesale waiver --

11               THE COURT:  Let me stop you there.  Why wasn't this

12   produced if this is not privileged?

13               MR. NOLAN:  At the time of the production and the

14   time that this issue came up, and I wasn't personally

15   involved --

16               THE COURT:  I know that.  You are unfortunately

17   held responsible with prior counsel.

18               MR. NOLAN:  Mattel has taken the position in

19   various privilege assertions that they were making that the

20   factual recitations would not be disclosed because it would

21   be considered a waiver of the privilege.

22               We offered a scenario where both sides could work

23   out an exchange where the factual assertions would be

24   exchanged -- at the very time we were also working on the

25   investigative report.  That whole issue.

2094

1          THE COURT:  I understand.

2          MR. NOLAN:  So then what happened, your Honor, is

3   both of us made a motion to Judge Infante.  We asked for a

4   disclosure of the factual assertions containing --

5          THE COURT:  When was this disclosed?

6          MR. NOLAN:  Oh, we had these arguments just a week

7   ago just before Victoria O'Connor.

8          MR. ZELLER:  We have never had these documents,

9   your Honor, until the midst of trial.  And that, I think, is

10  undisputed.

11         THE COURT:  You may continue to examine on areas

12  that have been brought up.  I'm not going to let the document

13  itself in.  But you can certainly -- Mr. Price did elicit

14  that there was an e-mail that he relied upon related to the

15  chronology.  And I'll permit you to examine on that.  As far

16  as the document itself, given the totality of the

17  circumstances here, I'm going to sustain objection to the

18  admission of the document.  But you can ask about the e-mail

19  and the chronology that he received.

20         MR. ZELLER:  And just so, if I may, your Honor, to

21  the extent he starts going into those communications that we

22  were not allowed to take discovery on, which also occurred at

23  the deposition, so it wasn't just the documents we were

24  denied, we were also denied the opportunity to cross-examine

25  Mr. Larian about these very same --

2095

```
1            THE COURT:  And you're going to have an opportunity
2   to cross-examine when Mr. Price stands back up.
3            MR. PRICE:  And I'm not going to make any more
4   objections on this.  They are reserved.
5            THE COURT:  Very well.  It's understood.  The
6   document is not in.
7            MR. NOLAN:  I understand.
8            THE COURT:  Very well.
9            (CONCLUSION OF SIDEBAR CONFERENCE.)
10            MR. NOLAN:  Your Honor, I apologize.  Mr. Larian
11   went to the restroom.
12            THE COURT:  There's no need to apologize about
13   that.
14            And just for the record, we're going to be ending
15   in about 10 minutes because we have a juror who has a car
16   issue.  And we don't want to have any tickets.
17            Mr. Nolan.
18            MR. NOLAN:  Thank you.
19   Q.  Mr. Larian, before signing the consulting agreement with
20   Carter Bryant on October 4th, had you had conversations with
21   Victoria O'Connor?
22   A.  I did.
23   Q.  Did Ms. O'Connor tell you anything about a chronology of
24   when the drawings were done?
25   A.  She did.
```

2096

1   Q.   Based on what Ms. O'Connor advised you, did you go

2   forward and sign the agreement?

3   A.   I did.

4   Q.   When you signed the consulting agreement with

5   Mr. Bryant, what was your belief and understanding as to when

6   Carter Bryant did the concept drawings for Bratz?

7   A.   In 1998 in Missouri, when he was living with his

8   parents.

9   Q.   If you had believed that he had done these drawings, the

10  master drawings while at Mattel, would you have ever signed

11  the contract?

12  A.   I would not have signed it if he had done it at Mattel,

13  no.

14  Q.   Would you have ever risked millions of dollars to

15  develop Bratz?

16  A.   No, I would not.

17  Q.   By the way, after you released Bratz, did you ever

18  receive a letter from Mattel directly or through their

19  lawyers saying words to the effect, hey, Bratz is a name that

20  was proprietary to Mattel?  Did you ever receive such a

21  letter?

22  A.   I did not.

23  Q.   Did you ever receive a letter from anybody at Mattel or

24  their lawyers, any law firm, saying gee, the pose of one of

25  the doll drawings, Chloe, the pose is similar to Toon Teens?

2117

```
 1
 2
 3
 4
 5
 6
 7                    C E R T I F I C A T E
 8
 9
10          I hereby certify that pursuant to Title 28,
11   Section 753 United States Code, the foregoing is a true and
12   correct transcript of the stenographically reported
13   proceedings in the above matter.
14          Certified on June 10, 2008.
15
16
17          MARK SCHWEITZER, CSR, RPR, CRR
            Official Court Reporter
18          License No. 10514
19
20
21
22
23
24
25
```

## PROOF OF SERVICE

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, Nineteenth Floor, Los Angeles, California 90067.

On March 25, 2009, I served the foregoing document described as:

**[PUBLIC REDACTED] DECLARATION OF JOEL N. KLEVENS IN SUPPORT OF MGA PARTIES' OPPOSITION TO MATTEL, INC.'S 3/13/09 MOTION FOR AN ORDER COMPELLING PRODUCTION OF COMMUNICATIONS PURPORTEDLY MADE IN FURTHERANCE OF CRIMES AND FRAUDS AND AS TO WHICH MGA HAS ALLEGEDLY WAIVED ATTORNEY-CLIENT PRIVILEGE**

on the interested parties to this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

### PLEASE SEE ATTACHED SERVICE LIST

☐ (BY MAIL)  I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐ (BY OVERNIGHT DELIVERY SERVICE)  I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows.  I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☐ (BY PERSONAL SERVICE)  I caused such envelope to be delivered by hand to the offices of the above named addressee.

☒ (**BY EMAIL**)  I caused such documents to be delivered via email to the addressee(s).

☐ (BY FACSIMILE)  I caused such documents to be delivered via facsimile to the offices of the addressee(s) at the following facsimile number:

Executed this 25th day of March, 2009, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

YUMI CHUNG

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310.553.3000

671262

1

## SERVICE LIST

2
Robert C. O'Brien
Discovery Master
3
Arent Fox LLP
555 West 5th St., Suite 4800
4
Los Angeles, CA 90013

5
John Quinn, Esq.
(johnquinn@quinnemanuel.com)
6
Jon D. Corey, Esq.
(joncorey@quinnemanuel.com)
7
Michael T. Zeller, Esq.
(michaelzeller@quinnemanuel.com)
8
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
9
Los Angeles, CA 90017-2543

10
Russell J. Frackman, Esq.
(rjf@msk.com)
11
Patricia H. Benson, Esq.
(phb@msk.com)
12
Mitchell, Silberberg & Knupp, LLP
11377 W. Olympic Blvd.
13
Los Angeles, CA 90067
(310) 312-2000

14

Thomas J. Nolan, Esq.
15
(tnolan@skadden.com)
Raoul D. Kennedy, Esq.
16
(rkennedy@skadden.com)
Jason D. Russell, Esq.
17
(Jason.russell@skadden.com)
Skadden, Arps, Slate, Meagher & Flom LLP
18
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
19
(213) 687-5000

20
Mark E. Overland, Esq.
moverland@obsklaw.com
21
Alexander H. Cote, Esq.
acote@obsklaw.com
22
Overland Borenstein Scheper & Kim LLP
601 W. 5th Street, 12th Floor
23
Los Angeles, CA 90017

24

Todd E. Gordinier, Esq.
25
todd.gordinier@bingham.com
Bingham McCutchen LLP
26
600 Anton Blvd., 18th Floor
Costa Mesa, CA 92626

27

28

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 Constellation Boulevard
Nineteenth Floor
Los Angeles, California 90067
310-553-3000

671262

[PUBLIC REDACTED] KLEVENS DECL. ISO MGA PARTIES' OPP. TO MATTEL, INC.'S 3/13/09 MOTION TO COMPEL