1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12           Plaintiff, | Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727 |
| 13      vs. | **DISCOVERY MATTER** |
| 14  MATTEL, INC., a Delaware<br>corporation, | **[To Be Heard By Discovery Master<br>Robert C. O'Brien Pursuant To Order Of<br>January 6, 2009]** |
| 15           Defendant. | |
| 16 _____ | MATTEL, INC.'S NOTICE OF MOTION<br>AND MOTION TO COMPEL *IN CAMERA*<br>REVIEW AND PRODUCTION OF NON- |
| 17  AND CONSOLIDATED ACTIONS | ATTORNEY OR NON-LEGAL<br>COMMUNICATIONS LISTED ON<br>MGA'S PRIVILEGE LOGS |
| 18 _____ | |
| 19 | |
| 20  **[PUBLIC REDACTED]** | [Declaration of B. Dylan Proctor And<br>Appendices of Privilege Log Entries<br>Submitted Concurrently] |
| 21 | |
| 22 | Hearing Date:        TBD<br>Time:                TBD<br>Place:               TBD |
| 23 | |
| 24 | **Phase 2:**<br>Discovery Cut-off:    Dec. 11, 2009<br>Pre-trial Conference: Mar. 1, 2010 |
| 25 | Trial Date:          Mar. 23, 2010 |
| 26 | |
| 27 | |
| 28 | |

07975/2806318.17

Case No CV 04-9049 SGL (RNBx).
MATTEL'S MOTION TO COMPEL *IN CAMERA* REVIEW AND PRODUCTION OF NON-ATTORNEY OR NON-
LEGAL COMMUNICATIONS LISTED ON MGA'S PRIVILEGE LOGS

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2              PLEASE TAKE NOTICE that, at a hearing date to be set by the

3    Discovery Master Robert C. O'Brien, Mattel, Inc. ("Mattel") will and hereby does

4    move the Court, pursuant to <u>Federal Rules of Civil Procedure</u> 26 and 37, for an

5    order compelling MGA Entertainment, Inc. ("MGA") and Isaac Larian ("Larian") to

6    provide to the Discovery Master for *in camera* review and, if appropriate based on

7    such review, produce to Mattel specified documents and communications

8    improperly withheld on MGA's and Larian's privilege logs under a claim of

9    privilege, as enumerated in Appendices A-E,[1] including: (1) communications

10   between non-lawyers regarding non-legal issues;[2] (2) communications for   which

11

12   _____

13   [1]   Appendices A-E list each privilege log entry at issue in this motion, including
     all the information about such entries provided in the corresponding MGA and
14   Larian privilege logs. Excerpts of the relevant privilege logs produced by MGA and
     Larian are also attached to the concurrently filed Declaration of B. Dylan Proctor
15   ("Proctor Decl."). <u>See</u> MGA's Supplemental Privilege Log – August 14, 2007,
     revised March 20, 2008 ("Rev. Aug. Log"), Proctor Decl., Ex. 1; MGA's
16   Supplemental Privilege Log – September 5, 2007, revised March 20, 2008 ("Rev.
17   Sept. Log"), Proctor Decl., Ex. 2; MGA's Privilege Log for MGA's October 17, and
     October 19, 2007 Document Production, dated November 16, 2008 ("Oct. Log"),
18   Proctor Decl., Ex. 3; Isaac Larian's Privilege Log, dated January 15, 2008 ("Jan. 15
19   Log"), Proctor Decl., Ex. 4; MGA's Supplemental Privilege Log for MGA's
     October 2007 Document Production, dated January 22, 2008 ("Supp. Oct. Log"),
20   Proctor Decl., Ex. 5; MGA's Privilege Log – January 23, 2008, revised February 5,
21   2008 ("Rev. Jan. 23 Log"), Proctor Decl., Ex. 6; Isaac Larian's Privilege Log –
     January 30, 2008 ("Jan. 30 Log"), Proctor Decl., Ex. 7; MGA's Privilege Log –
22   January 28, 2008, revised February 8, 2008 ("Rev. Jan. 28 Log"), Proctor Decl.,
23   Ex. 8; and MGA's April 30, 2008 Privilege Log ("April 30 Log"), Proctor Decl.,
     Ex. 9.
24   [2]   The privilege log entries at issue that appear to fall under this description,
25   which are further detailed in Appendix A, include: <u>Rev. Aug Log. Nos.</u> 669, 735,
26   764, 773, 775, 777, 790, 852, 853, 866, 867, 874, 900, 933, 962, 965, 966, 967, 968,
     983, 985, 990, 1037, 1040, 1043, 1047, 1057, 1058, 1062, 1089, 1090, 1091, 1095,
27   1097, 1098, 1105; <u>Oct. Log Nos.</u> 8, 39, 134, 135, 267, 539, 546, 824, 1036, 1068,
28       (footnote continued)

                                                    -1-                  Case No CV 04-9049 SGL (RNBx).

1  no author or recipient has been indentified;[3]   (3) communications   for   which   the

2  author  or  recipient  is  mistakenly  indentified  as  an  attorney;[4]  (4) communications

3

4

5  1123, 1124, 1406, 1462, 1463, 1481, 1506, 1514, 1780, 1781, 1782, 1941, 1942,
   2073, 2074, 2090, 2101, 2117, 2259, 2260, 2263, 2267, 2269, 2271, 2274, 2672,
6  2677, 2694, 2724, 2728, 2732, 2765, 2775, 2786, 2787, 2802, 2807, 2814, 2815,
   2830, 2833, 2848, 2849, 2851, 2852, 2853, 3213, 3299, 3367, 3368; Supp. Oct. Log
7  Nos. 44, 55, 114, 115, 116, 123; Jan. 15 Log Nos. 29, 30, 32, 33, 34, 35, 38, 40, 41,
8  44, 48, 51, 52, 53, 56, 57, 58, 61, 62, 63, 64, 68, 98, 107; Rev. Jan. 23 Log Nos. 3,
   8, 31, 32, 52, 58, 59, 68, 79, 96, 97, 103, 106, 108, 111, 114, 115, 133, 150, 151,
9  152, 153, 154, 155, 156, 157, 158, 182, 205, 209, 232, 233, 245, 253, 262, 267, 287,
10 296, 371, 372, 373, 376, 381, 536, 544, 545, 546, 547, 548, 551, 557, 577, 578, 579,
   580, 581, 584, 585, 588, 589, 591, 592, 593, 594, 595, 596, 597, 598, 599, 600, 601,
11 602, 603, 604, 609, 610, 611, 612, 613, 614, 615, 616, 655, 656, 672, 683, 684, 693,
12 749, 1083, 1172, 1173, 1178, 1179, 1254, 1262, 1275, 1277, 1281, 1285, 1287,
   1292, 1301, 1302, 1306, 1309, 1318, 1356, 1360, 1364, 1365, 1366, 1367, 1374,
13 1399, 1413, 1418, 1420, 1424, 1438, 1439, 1440, 1460, 1463, 1465, 1468, 1471,
14 1473, 1474, 1475, 1509, 1525, 1529, 1536, 1587, 1603, 1622, 1623, 1624, 1625,
   1627, 1635, 1662, 1701, 1702, 1704, 1705, 1706, 1708, 1709, 1710, 1711, 1712,
15 1718, 1719, 1721, 1722, 1724, 1727, 1728, 1729, 1730, 1731, 1732, 1734, 1735,
16 1736, 1737, 1767, 1773, 1774, 1775, 1779, 1783, 1788, 1821, 1824, 1890, 1896,
   1898, 1899, 1903, 1904, 1917, 1919, 1920, 1968, 1969, 1970, 1977, 1986, 1998,
17 2011, 2025, 2039, 2042, 2043, 2064, 2071, 2080, 2082, 2149; Rev. Jan. 28 Log
18 Nos. 3, 5, 9, 12, 16, 18, 28, 31, 36, 37, 38, 42, 43, 44, 47, 51, 61, 65, 67, 91, 92, 97,
   98, 99, 113, 124, 127, 132, 136, 137, 140, 141, 160, 166, 219, 262, 272, 274, 281,
19 292, 310, 311, 312, 313, 314, 316, 317, 319, 331, 332, 333, 334, 335, 336, 343, 371,
20 372, 382, 384, 385, 386, 387, 388, 392, 414, 420, 446; Jan. 30 Log Nos. 1, 2, 5, 6,
   7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29,
21 30, 31, 32, 33, 34, 36, 37, 38, 39, 40, 64, 66, 294, 295, 296, 297, 298, 299, 300.
22     [3]    The privilege log entries at issue that appear to fall under this description,
23 which are further detailed in Appendix B, include:  Rev. Aug. Log Nos. 661, 662,
   653; Rev. Sept. Log No. 1022; Rev. Jan. 23 Log Nos. 582, 605, 750, 1476, 1491,
24 1606, 1641, 1703, 1713, 1720, 2034, 2036, 2046, 2079, 2084, 2144; Rev. Jan. 28
25 Log Nos. 39, 40, 52, 214, 264, 275, 276, 282, 348; Jan. 30 Log Nos. 122, 124, 126,
   218, 225, 226, 244, 246, 257; Oct. Log Nos. 71, 261.
26     [4]    The privilege log entries at issue that appear to fall under this description,
27 which are further detailed in Appendix C, include:  Oct. Log Nos. 3, 1046, 1047,
   1466, 1467, 1761.
28

MATTEL'S MOTION TO COMPEL *IN CAMERA* REVIEW AND PRODUCTION OF NON-ATTORNEY OR NON-
LEGAL COMMUNICATIONS LISTED ON MGA'S PRIVILEGE LOGS

1  involving attorneys but which do not relate to legal issues;[5] and (5) communications
2  on which an attorney has merely been blind carbon copied.[6]

3       This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 26
4  and 37 on the grounds that MGA and Larian are improperly withholding non-
5  privileged documents and communications that are relevant to Mattel's claims and
6  defenses, and that MGA and Larian have failed to establish the privileges claimed.

7       This Motion is based on this Notice of Motion and Motion, the
8  accompanying Memorandum of Points and Authorities, the concurrently filed
9  Declaration of B. Dylan Proctor and Appendices, the records and files of this Court,
10  and all other matters of which the Court may take judicial notice.

11
12       **<u>Statement of Rule 37-1 Compliance</u>**

13       The parties met and conferred on February 18, 2009, and at times
14  thereafter, regarding the issues set forth in this Motion.

15
16  DATED: March 27, 2009     QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
17
18       By <u>/s/ B. Dylan Proctor</u>
19       B. Dylan Proctor
     Attorneys for Mattel, Inc.
20
21
22
23  [5] The privilege log entries at issue that appear to fall under this description, which are further detailed in Appendix D, include: <u>Rev. Jan. 23 Log Nos.</u> 1480,
24  1647, 1648, 2014, 2074; <u>Rev. Jan. 28 Log Nos.</u> 347; <u>Supp. Oct. Log Nos.</u> 89, 90,
25  125, 126, 127, 128, 129, 130, 131.
[6] The privilege log entries at issue that appear to fall under this description,
26  which are further detailed in Appendix E, include: <u>Jan. 15 Log No.</u> 188; <u>Rev. Jan. 23 Log Nos.</u> 118, 670, 1087, 1096, 1099, 1103, 1650, 1988, 2031, 2090; <u>Jan. 30
27  Log No.</u> 65.
28

# **TABLE OF CONTENTS**

<u>**Page**</u>

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

PRELIMINARY STATEMENT .............................................. 1

BACKGROUND ................................................................................ 2

ARGUMENT ................................................................................ 8

I.      MGA'S PRIVILEGE LOGS SHOW THAT IT IS IMPROPERLY
        WITHHOLDING NON-PRIVILEGED COMMUNICATIONS ................... 8

        A.      Communications Between Non-Lawyers ............................. 11

        B.      Unidentified Author or Recipients ........................................ 15

        C.      Author or Recipient Misidentified as an Attorney ................................ 18

        D.      Non-Legal Communications .................................................. 19

        E.      Blind Carbon Copies ............................................................ 21

CONCLUSION ................................................................................ 23

MATTEL'S MOTION TO COMPEL *IN CAMERA* REVIEW AND PRODUCTION OF NON-ATTORNEY OR NON-LEGAL COMMUNICATIONS LISTED ON MGA'S PRIVILEGE LOGS

# TABLE OF AUTHORITIES

**Page**

## Cases

AIU Ins. Co. v. TIG Ins. Co.,
2008 WL 4067437 (S.D.N.Y. Aug. 28, 2008) .......................................................... 10

Aurora Loan Servs., Inc. v. Posner, Posner & Assoc., P.C.,
499 F. Supp. 2d 475 (S.D.N.Y. 2007) ..................................................................... 20

Baxter Healthcare Corp. v. Fresenius Med. Care, Inc.,
2008 WL 5214330 (N.D. Cal. Dec. 12, 2008) ......................................................... 17

Blanchard v. EdgeMark Fin. Corp.,
192 F.R.D. 233 (N.D. Ill. 2000) .............................................................................. 21

In re Brand Name Prescription Drugs Antitrust Litig.,
1995 WL 663684 (N.D. Ill. Nov. 6, 1995) ............................................................... 21

Breon v. Coca-Cola Bottling Co. of New England,
232 F.R.D. 49 (D. Conn. 2005) ............................................................................... 15

Bryant v. Mattel, Inc.,
2007 WL 5430887 (C.D. Cal. June 20, 2007)................................................... 9, 10, 11

In re CV Therapeutics, Inc. Sec. Litig.,
2006 WL 1699536 (N.D. Cal. Jun. 16, 2006) .......................................................... 17

Clavo v. Zarrabian,
2003 WL 24272641 (C.D. Cal. Feb. 24, 2003) ........................................................ 21

Coleman v. Schwarzenegger ("Coleman I"),
2008 WL 2732182 (E.D. Cal. Jul. 8, 2008)......................................................... 10, 14

Coleman v. Schwarzenegger ("Coleman II"),
2008 WL 4415324, at *2 (N.D. Cal. Sept. 25, 2008)........................................... 14, 19

Coleman v. Schwarzenegger ("Coleman III"),
2008 WL 1749474, at *3 (E.D. Cal. Apr. 14, 2008) ................................................. 10

Conopco, Inc. v. Wein,
2007 WL 1859757 (S.D.N.Y. 2007) ....................................................................... 21

Flanagan v. Benicia Unified School Dist.,
2008 WL 2073952 (E.D. Cal. 2008) ........................................................................ 11

Kovacs v. Hershey Co.,
2006 WL 3319103 (D. Colo. Nov. 14, 2006)............................................................ 13

Mac-Ray Corp. v. Ricotta,
2004 WL 1368857 (W.D.N.Y. Jun. 16, 2004) ......................................................... 20

07975/2806318.17

-ii-

Case No CV 04-9049 SGL (RNBx).

MATTEL'S MOTION TO COMPEL *IN CAMERA* REVIEW AND PRODUCTION OF NON-ATTORNEY OR NON-LEGAL COMMUNICATIONS LISTED ON MGA'S PRIVILEGE LOGS

Mid-Continent Cas. Co. v. Eland Energy, Inc.,
    2007 WL 948154 (D. Conn. Mar. 26, 2007) ...................................................15

Muro v. Target Corp.,
    2006 WL 3422181 (N.D. Ill. Nov. 28, 2006) .........................................14, 21

Natural Resources Defense Council v. Gutierrez,
    2008 WL 2468494 (N.D. Cal. Jul. 17, 2008) ...................................................9

Pacific Gas and Elec. Co. v. U.S.,
    69 Fed. Cl. 784 (Fed. Cl. 2006) .......................................................................18

QST Energy, Inc. v. Mervyn's,
    2001 WL 777489 (N.D. Cal. May 14, 2001).....................................................9

SmithKline Beecham Corp. v. Apotex Corp.,
    232 F.R.D. 467 (E.D. Pa. 2005) ......................................................................18

Synopsys, Inc. v. Ricoh Co., Ltd.,
    2006 WL 2479109 (N.D. Cal. Aug. 28, 2006) .............................................14, 22

U.S. v. Davis,
    132 F.R.D. 12 (S.D.N.Y. 1990) .......................................................................22

U.S. v. Exxon Corp.,
    87 F.R.D. 624 (D.D.C. 1980) ..........................................................................15

United States v. Munoz,
    233 F.3d 1117 (9th Cir. 2000) ...........................................................................9

Urban Box Office Network, Inc. v. Interface Managers, L.P.,
    2006 WL 1004472 (S.D.N.Y. Apr. 18, 2006) .................................................19

Vioxx Prods. Liab. Litig. Steering Comm. v. Merck & Co.,
    2006 WL 1726675 (5th Cir. May 26, 2006)....................................................10

Wilderness Soc. v. U.S. Dept. of Int.,
    344 F. Supp. 2d 1 (D.D.C. 2004)......................................................................18

Williams v. Sprint/United Mgmt. Co.,
    2006 WL 266599 (D. Kan. Feb. 1, 2006).........................................................9

**Statutes**

Federal Rules of Civil Procedure 26(b)(5) ...............................................................3, 9

07975/2806318.17

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA has long used its privilege logs to shield non-privileged documents from discovery.   After it was ordered to produce logs of compelled, relevant documents it was withholding on privilege grounds in 2007, MGA belatedly logged over 10,000 such documents.  Many of those entries, on their face, appeared not to involve privileged communications.  Mattel moved the Court in Phase 1, after months of delays by MGA, to order the production of certain broad categories of documents listed in these logs.  MGA opposed, attacking Mattel for "broadly ask[ing] the Court to order MGA to produce entire categories of documents"[7] and claiming that only an individual examination of each document—a process no longer practicable by the time the motion was heard by Judge Larson after the Phase 1 trial had already commenced—could resolve claims of privilege.  Judge Larson agreed.  Although the Court was "sympathetic" to Mattel's view given the breadth of the documents withheld by MGA,[8] it was understandably "not interested in looking at all of these documents"[9] in the middle of a trial, and denied Mattel's motion as to the categorical relief it sought.

Mattel now brings, as to Phase 2, the motion that MGA itself claimed was the only proper way to address the question of whether documents are properly withheld as privileged.  MGA is withholding as "attorney-client communications" or as "reflecting" legal advice communications between non-lawyers who appear to be discussing (in whole or in part) routine business matters; communications where MGA does not even know, or does not say, who the author or recipient is;

---

[7]  MGA's Opposition to Mattel's Supplemental Motions to Compel ("MGA Opp. to Supp. Mot."), dated February 29, 2008, at 7, Proctor Decl., Ex. 10.
[8]  June 2, 2008 Hearing Tr. at 20:11-16, Proctor Decl., Ex. 11.
[9]  Id. at 23:3-4.

07975/2806318.17

communications in which non-lawyers are wrongfully identified as lawyers; communications in which an attorney is part of a group of non-attorneys discussing business matters; and communications where lawyers are merely blind carbon copied on communications among non-lawyers. Mattel has identified individually the entries that for these reasons appear to be non-privileged communications. They should be provided to the Discovery Master *in camera* for a determination as to whether they have been properly withheld; if not, they should be ordered produced to Mattel.[10]

## Background

During the parties' meet and confer, MGA took the position that Mattel's arguments had already been rejected by the Court in denying its Phase 1 motion to compel.[11]   A brief summary of MGA's multi-year effort to delay production of its logs and to shield non-privileged communications is necessary to make clear where this motion fits in that history and why MGA is wrong in claiming that Judge Larson ruled on it already.

MGA's Production in Phase 1.   At the beginning of 2007, although discovery had been ongoing for years, MGA had yet to produce a log listing the documents it was withholding on privilege grounds—at that time, all that had been provided was a log with less than 100 entries produced in 2005.  Accordingly, Mattel sought and received several orders from the prior Discovery Master requiring MGA to produce "all non-privileged documents" responsive to a number of Mattel's requests.  MGA was instructed to "produce all documents in un-redacted form" except where required to maintain privilege and to "produce a privilege log in

---

[10]  The attached Appendices A-E list each privilege log entry at issue and all information provided in the corresponding MGA and Larian privilege logs.

-2-

1    compliance with Rule 26(b)(5)" as to any compelled, responsive documents being
2    withheld on privilege grounds by the end of May 2007.[12]

3          By August 2007, long after the Discovery Master's deadline had
4    passed, MGA still had not produced a comprehensive log for the thousands of
5    documents it was withholding.  Although the Discovery Master had specifically
6    ordered production by May, MGA's counsel refused to produce its logs until at least
7    mid-September 2007.[13]   With the Phase 1 discovery cutoff rapidly approaching,
8    Mattel moved for a finding that MGA had waived its claims of privilege by failing
9    to timely substantiate its claims by producing a proper privilege log.[14]   In response,
10   MGA produced incomplete privilege logs listing approximately 4000 withheld
11   documents in August and September of 2007.  Although the prior Discovery Master
12   found that "the privilege logs submitted by MGA are untimely" and expressed
13   "disappoint[ment] [] in the way discovery has been produced" by MGA, he declined
14   to impose a wholesale waiver in light of MGA's belated production of the logs.[15]
15   After that ruling, and even after the Phase 1 discovery cutoff, MGA then produced
16   several other logs to bring the total number of withheld logged documents to over
17   10,000 entries.[16]

18          The logs MGA produced had numerous categorical deficiencies.
19   Whole categories of non-privileged documents or communications were apparently

20   _____

21   [11]   See Mar. 3, 2009 Letter from B. Dylan Proctor to C. Mankey ("Mar. 3
22   Letter"). Proctor Decl., Ex. 12; Mar. 4, 2009 Letter from C. Mankey to B. Dylan
     Proctor, Proctor Decl., Ex. 13 ("Mar. 4 Letter").
23   [12]   May 15, 2007 Order Granting Mattel's Motion to Compel Production of
24   Documents and Interrogatory Responses by MGA, at 14, Proctor Decl., Ex. 14
     (ordering production of documents and privilege log).
25   [13]   See Mattel's Motion to Compel Production of Documents Withheld as
26   Privileged, filed August 10, 2007, at 5, Proctor Decl., Ex. 15.
     [14]   See id.
27   [15]   See Dec. 14, 2007 Hearing Tr. at 27:24-25, 28:11-13, Proctor Decl., Ex. 36.

28

withheld, documents with multiple attachments were logged as single entries, and many entries lacked basic information or were described in such vague terms that it was impossible to evaluate the claim of privilege.[17]   The parties met and conferred repeatedly over a period of several months, resolving some but not all of these issues.[18]   Most significantly, even after MGA had revised its logs it was clear that MGA continued to withhold documents for which it had failed to substantiate its claim of privilege.[19]

       Mattel's Prior Motions to Compel.   As the Phase 1 discovery cutoff approached at the end of January 2008, Mattel submitted three motions to compel to the prior Discovery Master seeking production of categories of documents.  The first focused on MGA's practice of withholding allegedly privileged documents in their entirety rather than producing them in redacted form such that all non-privileged information is revealed; Mattel sought a broad categorical order requiring MGA "immediately" to "produce all documents they have improperly withheld under a claim of privilege, either in their entirety or in redacted form."[20]   The second focused on MGA's withholding of information relating to trademark search results

---

[16]   See Proctor Decl. ¶ 11.
[17]   See, e.g., Dec. 7, 2007 Letter from B. Dylan Proctor to T. Mille., Proctor Decl., Ex. 16 (detailing various deficiencies and requesting meet and confer).
[18]   See, e.g., Dec. 21, 2007 Letter from B. Dylan Proctor to J. Allen, Proctor Decl., Ex. 17; Dec. 24, 2007 Letter from J. Allen to B. Dylan Proctor, Proctor Decl., Ex. 18; Jan. 2, 2008 Letter from B. Dylan Proctor to J. Allen, Proctor Decl., Ex. 19; Jan. 7, 2008 Letter from J. Allen to B. Dylan Proctor, Proctor Decl., Ex. 20; Jan. 16, 2008 Letter from B. Dylan Proctor to J. Allen, Proctor Decl., Ex. 21.
[19]   See, e.g., Feb. 13, 2008 Letter from J. Allen to B. Dylan Proctor, Proctor Decl., Ex. 22 (declining to conduct further meet and confers).
[20]   See Mattel's Motion to Compel the Production of Previously Withheld Documents Only Portions of Which are Allegedly Privileged, dated January 21, 2008, at 1, Proctor Decl., Ex. 23.

MATTEL'S MOTION TO COMPEL IN CAMERA REVIEW AND PRODUCTION OF NON-ATTORNEY OR NON-LEGAL COMMUNICATIONS LISTED ON MGA'S PRIVILEGE LOGS

and dates of first use.[21]   The third focused on MGA's withholding of communications with third parties on the basis of a claimed "common interest" privilege.[22]  Because MGA continued to produce its logs in piecemeal fashion after the discovery cutoff, Mattel also filed several supplemental notices of motion based on the broad issues pending before the prior Discovery Master.[23]

The Discovery Master Agreed With Mattel But Directed Further Meet and Confers.   In March 2008, the prior Discovery Master heard argument on Mattel's motions.  Judge Infante stated that "Mattel's motion [was] well-taken" and that he "agree[ed] with Mattel's position" on the central issues, and in particular, noted that MGA's logs included "documents that look like they're not privileged."[24] However, because MGA continued to produce both new logs and revised versions of its prior logs, Judge Infante believed it was "premature to issue an order" and directed the parties to meet and confer further.[25]

Subsequent Meet and Confers Proved Unavailing.  Pursuant to the prior Discovery Master's directive, Mattel promptly sought to engage MGA in further discussion of its logs.[26]  At a conference in April of 2008, MGA indicated that many of the entries raised in Mattel's motions related to Phase 2 and proposed that the

---

[21]   See Mattel's Motion to Compel Production of Withheld MGA (1) Trademark Search Results, (2) Date of First Use Information, and (3) Factual Data Communicated for Purposes of Filing Trademark or Other Intellectual Property Applications, dated January 21, 2008, Proctor Decl., Ex. 24.

[22]   See Mattel's Motion to Compel Production of Third Party Communications Improperly Withheld Under a Claim of "Common Interest" Privilege, dated January 23, 2008, Proctor Decl., Ex. 25.

[23]   See Supplemental Notice of Motion and Memorandum in Support of Mattel's Motion to Compel Production of Previously Withheld Documents Only Portions of Which are Allegedly Privileged, dated February 5, 2008, Proctor Decl., Ex. 26.

[24]   Mar. 10. 2008 Hearing Tr. at 85:2-3, 85:11-12, 86:15, Proctor Decl., Ex. 27.

[25]   Id. at 86:17-20.

[26]   See Mar 20, 2008 Letter from H. Olivar to J. Allen, Proctor Decl., Ex. 28.

parties narrow the scope of the motions by limiting them to entries relevant only to Phase 1.[27]  In response, Mattel attempted to categorize certain entries as exclusively related to Phase 2 (a difficult task given MGA's vague log descriptions) and offered to defer consideration as to these entries provided MGA would confirm that they did not relate to Phase 1.[28]  Even though it had custody of the documents at issue and had initially broached this very proposal, MGA refused by letter dated May 7, 2008.[29]

The Discovery Master Did Not Issue Any Order.  Because it became clear that no resolution could be achieved through further conferences, and because the start of the Phase 1 trial was then less than one month away, Mattel immediately (that same day) informed the prior Discovery Master that no resolution had been achieved and requested an order on its pending motions, which had already been fully briefed and argued.[30]  No order issued, however.

The Court Declined to Rule on Broad Categorical Demands.  On May 29, 2008, on the eve of trial, the parties informed Judge Larson that the prior Discovery Master had not issued orders on several pending discovery motions, including Mattel's motions relating to MGA's logs.[31]  On June 2, 2008, after trial

---

[27]  See May 7, 2008 Letter from J. Allen to H. Olivar ("May 7 Letter"), Proctor Decl., Ex. 30.  Prior to the Discovery Master's direction that the parties engage in further meet and confers, MGA had similarly stated that many of the entries related to Phase 2 and took the position that, given the stay of Phase 2 discovery, any discussion of those entries was "premature."  See Feb. 13 Letter, Proctor Decl., Ex. 22.
[28]  See May 2, 2008 Letter from H. Olivar to J. Allen, Proctor Decl., Ex. 29.
[29]  See May 7 Letter, Proctor Decl., Ex. 30.
[30]  See May 7, 2008 Letter from H. Olivar to J. Infante, Discovery Master, Proctor Decl., Ex. 31.
[31]  See Supplemental Declaration of B. Dylan Proctor Re Motions Pending Before the Discovery Master, dated May 29, 2008, Proctor Decl., Ex. 32 (identifying unresolved motions).

1   had already commenced, Judge Larson sought to dispose of the eleven pending

2   discovery motions, including Mattel's motion for an order that only the privileged

3   portion of communications could be withheld, the motion that MGA now claims is

4   identical to this one.

5          The crux of MGA's opposition to the earlier motion was that Mattel

6   was improperly "mount[ing] a categorical attack" on MGA's privilege logs, "instead

7   of engaging in a particularized analysis of the bases for MGA's privilege claims."[32]

8   MGA argued that "privilege claims cannot be resolved in the abstract" and whether

9   a particular communication contained non-privileged information and could be

10  produced in redacted form, as Mattel sought, required a document-by-document

11  analysis.[33]   MGA urged that Mattel's motion was improper because Mattel was

12  "broadly ask[ing] the Court to order MGA to produce entire categories of

13  documents."[34]  "This evaluation," MGA urged, "requires a particularized review of

14  each of the documents at issue and cannot be performed on a generic basis as Mattel

15  has attempted to do."[35]

16         That was the basis on which the Court declined to order production

17  while the Phase 1 trial was ongoing.   Judge Larson noted that Mattel's motion

18  sought "broad categorical demands"; although the Court was "sympathetic" with

19  Mattel's position given the breadth of the documents withheld by MGA,[36] with the

20  trial already underway the Court was "not interested in looking at all of these

21  documents."[37]  The Court stated that while there was "not a bas[i]s . . . for the Court

22

23

24   [32]  See MGA Opp. to Supp. Mot., at 7, 8, Proctor Decl., Ex. 10.

25   [33]  Id. at 2.

     [34]  Id. at 7.

26   [35]  Id. at 2.

27   [36]  June 2, 2008 Hearing Tr. at 20:11-16, Proctor Decl., Ex. 11.

     [37]  Id. at 23:3-4.

28

1   to order a production at this point,"[38] "it might be appropriate for MGA to revisit the

2   documents on their privilege[] log to determine whether not these documents are

3   truly privileged, and particularly whether they are entirely privileged as opposed to

4   being only partially privileged in which [case] redactions can perhaps be

5   submitted."[39]

6           The Parties' Recent Meet and Confers.   After the stay on Phase 2

7   discovery was lifted, Mattel requested that MGA revisit certain individual entries on

8   its privilege logs.[40]   MGA refused to do so, taking the position that the Court's

9   ruling during the Phase 1 trial settled the matter and that it would not examine the

10  underlying entries to determine whether its prior claims of privilege were well-

11  founded.[41]   Thus, although MGA had previously claimed that many of the entries

12  related exclusively to Phase 2[42] and opposed Mattel's motion by demanding that the

13  parties "go back to fundamentals and examine each and every element of the

14  attorney/client privilege" with respect to each entry challenged,[43] it now refuses to

15  review those documents on the very basis it proposed.[44]

16                                  **Argument**

17  **I.    MGA'S PRIVILEGE LOGS SHOW THAT IT IS IMPROPERLY**

18       **WITHHOLDING NON-PRIVILEGED COMMUNICATIONS**

19          MGA's logs show that it is improperly withholding documents that are

20  not privileged.  Hundreds of communications between non-lawyers, many of which

21  relate to MGA's routine business activities, have been withheld.  In other cases, an

22

---

23  [38] Id. at 36:6-8.

24  [39] Id. at 20:22-21.

    [40] See February 8, 2009 Letter from J. Corey to A. Khan, Proctor Decl., Ex. 33.

25  [41] See Mar. 3 Letter, Proctor Decl., Ex. 12.

    [42] See Feb. 13 Letter, Proctor Decl., Ex. 22; May 7 Letter, Proctor Decl., Ex. 30.

26  [43] MGA Opp. to Supp. Mot. at 8, Proctor Decl., Ex. 10 (quoting Jan. 3, 2008

27  Hearing Tr.).

28

MATTEL'S MOTION TO COMPEL *IN CAMERA* REVIEW AND PRODUCTION OF NON-ATTORNEY OR NON-LEGAL COMMUNICATIONS LISTED ON MGA'S PRIVILEGE LOGS

1   attorney is simply blind copied on a non-privileged communication or is discussing

2   everyday non-legal business matters. Still other entries on MGA's logs do not

3   identify senders or recipients, or have non-lawyers wrongly listed as lawyers.

4   MGA has withheld all of these as "attorney-client communications," claiming that

5   the communications "reflect" legal advice.[45]

6               As the party seeking to withhold responsive documents based on the

7   attorney-client privilege, MGA bears the burden of establishing that the privilege

8   applies. Bryant v. Mattel, Inc., 2007 WL 5430887, at *2 (C.D. Cal. June. 20, 2007)

9   (noting that burden is on withholding party to "substantiate the claim of privilege

10   under Federal Rule of Civil Procedure 26(b)(5)" and ordering production of

11   documents from privilege log); see also United States v. Munoz, 233 F. 3d 1117,

12   1128 (9th Cir. 2000) (burden is on party asserting the attorney-client privilege to

13   establish all of its elements). The withholding party must make a "clear showing"

14   that the asserted privilege applies. See Williams v. Sprint/United Mgmt. Co., 2006

15   WL 266599, at *4 (D. Kan. Feb. 1, 2006); see also Natural Resources Defense

16   Council v. Gutierrez, 2008 WL 2468494, at *3 (N.D. Cal. Jun. 17, 2008) ("Once

17   the privilege is invoked, the party asserting it must make a prima facie showing that

18

---

19   [44] See Mar. 3 Letter, Proctor Decl., Ex. 12; Mar 4 Letter, Proctor Decl., Ex. 13.

20   [45] MGA also asserts that a handful of entries are protected work product. However, its logs provide no basis to assess whether these communications (which

21   are largely between non-lawyers) are actually protected work product. See Natural Resources Defense Council v. Gutierrez, 2008 WL 2468494, at *3 (N.D. Cal. Jul.

22   17, 2008) (logs failed to provide sufficient detail to evaluate either the attorney-

23   client or work product privileges). The few entries that have some detail suggest that these communications are simply everyday business communications. For

24   example, MGA claims that Entry No. 295, Rev. Aug. Log, was used "in connection"

25   with some unidentified litigation, but it is a 2001 email from Larian to Dennis Medici, MGA's CFO, described as an email "regarding price list"—it is not work

26   product. See QST Energy, Inc. v. Mervyn's, 2001 WL 777489, at *5 (N.D. Cal.

27   (footnote continued)

28

MATTEL'S MOTION TO COMPEL IN CAMERA REVIEW AND PRODUCTION OF NON-ATTORNEY OR NON-LEGAL COMMUNICATIONS LISTED ON MGA'S PRIVILEGE LOGS

1   the privilege protects the documents in question.") (citation omitted).  Doing so

2   requires more than simply placing entries on a privilege log and declaring them

3   privileged.    Rather, the party asserting the privilege must "provide enough

4   information to permit the court to review the applicability of the privilege to the

5   documents at issue." Coleman v. Schwarzenegger ("Coleman I"), 2008 WL

6   2732182, at *3 (E.D. Cal. Jul. 8, 2008).

7            MGA's logs do not meet these standards.  In many instances, the only

8   basis for MGA's withholding of non-legal communications is MGA's bare assertion

9   that the communication, in some manner, is one "reflecting" or "rendering" legal

10   advice.  But merely saying it does not make it so—the obligation is to "substantiate"

11   a claim of privilege. Bryant, 2007 WL 5430887, at *2.[46]  The communications at

12   issue should be submitted to the Discovery Master for *in camera* review to assess

13   whether any valid privilege applies. See, e.g., AIU Ins. Co. v. TIG Ins. Co., 2008

14   WL 4067437, at *10 (S.D.N.Y. Aug. 28, 2008) ("Given this lack of specificity [in

15   the log descriptions], I can assess [party's] claims of privilege only by reviewing the

16   face of the withheld documents in light of the general context in which they were

17   prepared and the information disclosed on the privilege and redaction logs.").  Such

18   a procedure is commonly used in the Ninth Circuit where a party's privilege log

19   does not adequately allow for an assessment of the privilege but is not so devoid of

20   information as to be a wholesale waiver.    See Coleman v. Schwarzenegger

21   ("Coleman III"), 2008 WL 1749474, at *3 (E.D. Cal. Apr. 14, 2008) ("In the Ninth

22   Circuit the rules of evidence with respect to privileges do allow for in camera

23

24   May 14, 2001) ("if the document was prepared in the ordinary course of business, regardless of any litigation, it is not work product").

25   [46]   See also Vioxx Prods. Liab. Litig. Steering Comm. v. Merck & Co., 2006

26   WL 1726675, at *5 (5th Cir. May 26, 2006) (noting that "ambiguity and confusion

27   plagued many of the documents because of the description of their subject matter as 'reflecting legal advice'") (Dennis, J., concurring and dissenting in part).

28

1   review: a court undertakes in camera review of documents to decide whether the

2   attorney-client privilege even exists with respect to those documents.").   This

3   procedure has been used in this action numerous times, <u>see, e.g.</u>, <u>Bryant v.</u>

4   <u>Mattel, Inc.</u>, 2007 WL 5416682, at *1 (C.D. Cal. Jul. 20, 2007) (holding, after

5   reviewing documents from privilege log *in camera*, that certain documents were

6   privileged and others were not); June 20, 2008 Order at 1 (finding that MGA had

7   improperly withheld logged communication as privileged, and ordering

8   production),[47] and should be utilized again now.[48]

9       **A.**    <u>**Communications Between Non-Lawyers**</u>

10         Numerous entries on MGA's logs show that MGA is improperly

11   withholding communications between non-lawyers about everyday business

12   transactions.   Many of these entries have descriptions that do not even purport to

13   involve legal advice. ████████████████████████████████████

14 ██████████████████████████████████████████████████████

15 ████████████████████████████████[49]   Neither Ms. Bacon nor Mr. Larian

16   is an attorney, and nowhere in the entry's description does MGA even claim that the

17   communication involves a legal issue much less legal advice.   Nevertheless, MGA

18   improperly withheld this email as an attorney-client communication.

19

20

---

21    [47]   Proctor Decl., Ex. 34.

22    [48]   Of course, *in camera* review "is not to be used as a substitute for a party's

23   obligation to justify its withholding of documents." <u>Flanagan v. Benicia Unified</u>
<u>School Dist.</u>, 2008 WL 2073952, at *4 (E.D. Cal. 2008) (noting that party with "the

24   burden must make a sufficient showing to create a privilege issue *before* in camera

25   review is appropriate") (citation omitted, emphasis in original).   While Mattel
believes that MGA is improperly withholding all of the entries identified in this

26   motion and that MGA cannot even meet its initial burden, at a minimum *in camera*

27   review is in order.
   [49]   Entry No. 1986, Rev. Jan. 23 Log at 222.

28

MATTEL'S MOTION TO COMPEL *IN CAMERA* REVIEW AND PRODUCTION OF NON-ATTORNEY OR NON-
LEGAL COMMUNICATIONS LISTED ON MGA'S PRIVILEGE LOGS

1    There are many other similar entries which cannot reasonably be
2  construed to consist entirely of privileged communications, as MGA has claimed by
3  withholding them:



18  All of these entries are communications between non-attorneys with subject matter
19  descriptions relating to routine MGA business matters (manufacturing, cash flow,
20  commercial disputes and employment).  Nevertheless, MGA has improperly
21  withheld them as attorney-client communications.
22    For other entries, MGA attempts to cloak the communications in the
23  language of privilege by describing them as "reflecting," "requesting" or

---

50   Entry No. 31, Rev. Jan. 23 Log at 3.
51   Entry No. 267, Rev. Jan. 23 Log at 30.
52   Entry No. 1418, Rev. Jan. 23 Log at 159.
53   Entry No. 2064, Rev. Jan. 23 Log at 231.

1    "rendering" legal advice.  Even so, the descriptions of these communications—
2    which are between non-lawyers—suggest that they are simply everyday business
3    communications.  For example:

4        •   
5
6
7    Neither Mr. Larian nor Ms. Johnson are attorneys; it is not even facially possible for
8    Larian to "request" legal advice from Johnson.  While employment or HR matters
9    might involve legal issues, the fact that legal issues are involved does not make
10   communications between non-lawyers on those subjects privileged.  See, e.g.,
11   Kovacs v. Hershey Co., 2006 WL 3319103, at *3 (D. Colo. Nov. 14, 2006) ("[An
12   HR employee] is not a lawyer. For [communications with an HR employee] to be
13   subject to the attorney-client privilege, they must contain 'a communication between
14   a lawyer and client' and 'must relate to legal advice or strategy sought by the
15   client.'") (citation omitted).

16       Indeed, MGA describes literally hundreds of entries in this manner—
17   entries that involve non-lawyers discussing business issues, but that MGA says
     involve "requests for" or "reflect" or "render" legal advice:

18       •
19
20
21       •
22
23       •
24

25   ───────────────────
26   54   Entry No. 287, Rev. Jan. 28 Log at 31.
27   55   Entry No. 1399, Rev. Jan. 23 Log at 157.
     56   Entry No. 1413, Rev. Jan. 23 Log at 159.
     57   Entry No. 1471, Rev. Jan 23 Log at 165.
28

MATTEL'S MOTION TO COMPEL IN CAMERA REVIEW AND PRODUCTION OF NON-ATTORNEY OR NON-
LEGAL COMMUNICATIONS LISTED ON MGA'S PRIVILEGE LOGS



Some of MGA's entries simply assert that they involve legal advice, but do not provide even the general subject matter of the alleged advice:

Merely saying that a document is privileged does not make it so. See Muro v. Target Corp., 2006 WL 3422181, at *2 (N.D. Ill. Nov. 28, 2006) ("The mere assertion of a privilege is not enough."); Coleman v. Schwarzenegger ("Coleman II"), 2008 WL 4415324, at *2 (N.D. Cal. Sept. 25, 2008) (affirming Magistrate Judge's order compelling production where "[m]any of the document descriptions are short and vague, so as to provide the reader with minimal information with which to evaluate the claim of privilege"); Synopsys, Inc. v. Ricoh Co., Ltd., 2006 WL 2479109, at *2 (N.D. Cal. Aug. 28, 2006) ("Reliance on the phrase 'pursuant to the advice of counsel' is not a talisman which automatically invokes the privilege.").

---

[58]   Entry No. 1662, Rev. Jan. 23 Log at 186.
[59]   Entry No. 2677, Oct. Log at 213.
[60]   Entry No. 1473, Rev. Jan. 23 Log at 165.
[61]   Entry No. 1463, Rev. Jan. 23 Log at 164.  There are several other entries on the logs purporting to show that Larian frequently sought legal advice from his sister.

1    There are hundreds of similar entries showing communications solely
2  between non-lawyers.[62]  These communications should be produced *in camera* to
3  the Discovery Master to allow for a determination as to whether these non-legal
4  employees are, in fact, engaging in privileged discourse.  If the documents are not
5  truly privileged, they should be ordered produced.   Or, if a document contains
6  privileged information, the unprivileged portions of the document should be ordered
7  produced.  See Breon v. Coca-Cola Bottling Co. of New England, 232 F.R.D. 49,
8  55 (D. Conn. 2005) ("It is not proper to withhold an entire document from discovery
9  on grounds that a portion of it may be privileged. . . . The proper procedure in such
10  instances is to redact the allegedly privileged communication, and produce the
11  redacted document."); Mid-Continent Cas. Co. v. Eland Energy, Inc.,   2007 WL
12  948154, at *1 (D. Conn. Mar. 26, 2007) (noting that "the withholding of *entire*
13  documents where only portions of the document are privileged may establish bad
14  faith and result in sanctions").  MGA clearly has not met its burden of proving the
15  privilege to date—it has not even identified the source of any legal advice contained
16  within these non-lawyer communications as required. See, e.g., U.S. v. Exxon
17  Corp., 87 F.R.D. 624, 637 (D.D.C. 1980) (noting that privilege log "should reveal
18  the source of the information, whether the communication occurred in confidence,
19  and whether the source was a lawyer").   MGA bears the burden of proving
20  privilege; it should be required to meet it.

21          **B.      Unidentified Author or Recipients**

22          A number of entries on MGA's logs fail to indentify either an author or
23  recipient for allegedly privileged communications.  From the descriptions given in
24  MGA's logs, these entries do not appear to be "authorless" documents, but rather

---

[62]  Other entries showing similar withheld communications between non-lawyers
are detailed in Appendix A.

MATTEL'S MOTION TO COMPEL *IN CAMERA* REVIEW AND PRODUCTION OF NON-ATTORNEY OR NON-
LEGAL COMMUNICATIONS LISTED ON MGA'S PRIVILEGE LOGS

are emails or other documents for which such information should be ascertainable. For example:



---

[63] Entry Nos. 661, 662, Rev. Aug. Log at 42.

[64] Entry No. 653, Rev. Aug. Log at 41.  This entry, which simultaneously indicates the author as both an unidentified attorney and Larian, is so unclear as to be meaningless.  Either way, MGA has failed to identify the alleged attorney who either authored the ████████████ or conveyed legal advice to Larian.

[65] Entry No. 1022, Rev. Sept. Log at 50.

[66] Entry No. 582, 605, Rev. Jan. 23 Log at 65, 67.

[67] Entry No. 750, Rev. Jan. 23 Log at 84.

-16-                                    Case No CV 04-9049 SGL (RNBx).



By "fail[ing] to provide sufficient identification" of the authors or recipients of these communications,[74] MGA has not substantiated its claims of privilege. Baxter Healthcare Corp. v. Fresenius Med. Care, Inc., 2008 WL 5214330, at *3 (N.D. Cal. Dec. 12, 2008) (ordering production of documents listed on privilege log where author was unknown or unidentified); In re CV Therapeutics, Inc. Sec. Litig., 2006 WL 1699536, at *9 (N.D. Cal. Jun. 16, 2006) (holding distribution to "unidentified email recipients . . . destroys the confidential

[68]  Entry No. 1476, Rev. Jan. 23 Log at 166.
[69]  Entry No. 1703, Rev. Jan. 23 Log at 191.
[70]  Entry No. 2046, Rev. Jan. 23 Log at 229.
[71]  Entry No. 214, Rev. Jan. 28 Log at 23.
[72]  Entry No. 348, Rev. Jan. 28 Log at 42.
[73]  Entry No. 261, Oct. Log at 19.
[74]  Other entries for which MGA has failed to identify an author or recipient are further detailed in Appendix B.

07975/2806318.17

-17-

Case No CV 04-9049 SGL (RNBx).

MATTEL'S MOTION TO COMPEL IN CAMERA REVIEW AND PRODUCTION OF NON-ATTORNEY OR NON-LEGAL COMMUNICATIONS LISTED ON MGA'S PRIVILEGE LOGS

1  nature of the communication absent an explanation of who these recipients were"
2  and ordering production of log entries); SmithKline Beecham Corp. v. Apotex
3  Corp. 232 F.R.D. 467, 476 (E.D. Pa. 2005) (courts should "scrutinize closely any
4  privilege claim where [a party] is unable to identify the author"; ordering documents
5  on privilege log produced); Wilderness Soc. v. U.S. Dept. of Int., 344 F. Supp. 2d 1,
6  17 (D.D.C. 2004) (denying privilege where "defendants fail to identify the author
7  [or] recipient"). At a minimum, these documents should be produced for *in camera*
8  review by the Discovery Master. See Pacific Gas and Elec. Co. v. U.S., 69 Fed. Cl.
9  784, 812 (Fed. Cl. 2006) (party's failure to identify author in privilege logs
10 supported disclosure as a sanction, but ordering production *in camera* instead).

11        **C.    Author or Recipient Misidentified as an Attorney**

12        A number of entries on MGA's logs mistakenly identify certain
13 individuals as attorneys, and then claim the communication is an attorney-client
14 communication. The majority of these entries involve a former MGA employee,
15 Dennis Medici, who was not an MGA attorney but rather was MGA's Chief
16 Financial Officer. Nevertheless, on at least six entries from MGA's October log he
17 is wrongly indentified as "Dennis Medici, Esq." For example:

18   •
19
20                          
21   •
22
23
24
25

26
27   75  Entry No. 3, Oct. Log at 1.
     76  Entry Nos. 1046, 1047, Oct. Log at 81.
28



None of these communications involves actual attorneys.[78]   Nor do the subjects of the communications—employment and advertising issues, stock options and compensation—even suggest that the communications are anything other than everyday business conversations with MGA's CFO. They should be produced, or at a minimum, provided to the Discovery Master for *in camera* review.  See, e.g., Coleman II, 2008 WL 4415324, at *4 (reviewing documents *in camera* and ordering production because "it appears that the recipient of documents [listed on] the August 5, 2008 log is not an attorney and therefore the privilege, as asserted for these documents, fails").

## D.   Non-Legal Communications

Other entries on MGA's logs show communications that may involve counsel, but based on the descriptions do not relate to legal matters.  It is "well-established that the attorney-client privilege applies only where legal advice, not business advice, is sought and given."  Urban Box Office Network, Inc. v. Interfase Managers, L.P., 2006 WL 1004472, at *4 (S.D.N.Y. Apr. 18, 2006) (ordering production of documents after *in camera* review).  "[M]erely because a document is sent to an attorney does not render it a privileged attorney-client communication."  Urban Box, 2006 WL 1004472, at *5.  Yet many entries on MGA's logs show that it is withholding communications about everyday business matters merely because an attorney or paralegal was among the recipients.  For example:

---

[77]   Entry No. 1761, Oct. Log at 133.
[78]   Other entries for which MGA has mistakenly identified a communication's author or recipient as an attorney are detailed in Appendix C.

1  • ███████████████████████████████████

2  ████████████[79]██████████████████████

3 There appears to be no basis to withhold such a communication as privileged.

4 MGA's description does not even assert that the communication "reflects" or

5 otherwise involves legal advice. Tellingly, MGA's log (which has already been

6 once revised) does not even indicate the alleged privilege grounds on which this

7 communication has been withheld. See, e.g., Aurora Loan Servs., Inc. v. Posner,

8 Posner & Assoc., P.C., 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) (affirming

9 Magistrate Judge's order requiring production because "privilege log was

10 inadequate, on the grounds that the log does not identify which privilege is being

11 asserted (attorney-client or work product)"). Other entries are equally lacking:

12  • ███████████████████████████████████

13  ███████████████████████████████████

14  ███████████████[80]███████████████████

15        Despite there being nothing whatsoever legal about these

16 communications and others,[81] MGA has withheld them merely because of the

17 presence of an attorney or paralegal among the recipients. Communications

18 regarding sales, employment or other "routine business transaction[s] [are] outside

19 the scope of the attorney-client privilege." Mac-Ray Corp. v. Ricotta, 2004 WL

20 1368857, at *2, 3 (W.D.N.Y. Jun. 16, 2004) (ordering communications regarding

21 "human resources" and "sales orders" produced). The presence of an attorney or

22 paralegal does not render these everyday business communications privileged.

23 Clavo v. Zarrabian, 2003 WL 24272641, at *2 (C.D. Cal. Feb. 24, 2003) (mere

24

25 ───────────────────────

26  [79]  Entry No. 1647, Rev. Jan. 23 Log at 166.

   [80]  Entry No. 2074, Rev. Jan. 23 Log at 233.

27  [81]  Other entries showing similar withheld non-legal communications are
detailed in Appendix D.

28

1 transmittal of documents or information to a lawyer is insufficient to bring
2 documents under the umbrella of the attorney-client privilege); <u>Blanchard v.</u>
3 <u>EdgeMark Fin. Corp.</u>, 192 F.R.D. 233, 240 (N.D. Ill. 2000) (fact that attorney was
4 cc'd did not render communication privileged).[82] Nor does a conclusory description
5 that the communication "reflects" legal advice provide a basis for withholding it.
6 <u>See</u> <u>In re Brand Name Prescription Drugs Antitrust Litig.</u>, 1995 WL 663684, at *3
7 (N.D. Ill. Nov. 6, 1995) (privilege log's "cursory descriptions" that communications
8 between business and legal personnel "reflects legal advice" is "not enough to
9 satisfy its burden of showing that the privilege exists"). "[W]here an attorney is
10 involved in the business affairs of a client," such mixed communications may only
11 be deemed privileged where "the predominant purpose of the communication is to
12 render or solicit legal advice." <u>Conopco, Inc. v. Wein</u>, 2007 WL 1859757, at *5
13 (S.D.N.Y. 2007).  MGA's logs fail to make any such showing.

14     **E.**   **<u>Blind Carbon Copies</u>**

15     Finally, a number of entries on MGA's logs show that it is withholding
16 documents based on nothing other than the fact that an attorney or paralegal has
17 been "blind carbon copied."  For example:



[82]  <u>See also</u> <u>Muro</u>, 2006 WL 3422181, at *3 ("The attorney-client privilege excludes from its scope even confidential communications with a lawyer about business or other non-legal matters.").
[83]  Entry No. 1087, Rev. Jan. 23 Log at 121.

07975/2806318.17       -21-      Case No CV 04-9049 SGL (RNBx).
MATTEL'S MOTION TO COMPEL <i>IN CAMERA</i> REVIEW AND PRODUCTION OF NON-ATTORNEY OR NON-LEGAL COMMUNICATIONS LISTED ON MGA'S PRIVILEGE LOGS

[black redaction bar] [84]

MGA cannot claim that an email to a non-lawyer about what is clearly a business issue is transformed into an attorney-client communication merely because the sender chose, for whatever reason, to "bcc" counsel.[85]   Documents or communications transmitted to an attorney as "blind carbon copies" typically are not protected attorney-client communications. See, e.g., U.S. v. Davis, 132 F.R.D. 12, 17 (S.D.N.Y. 1990) (ordering party to produce memorandum on which attorney was blind carbon copied).   Accordingly, these documents and similar entries should be ordered produced, or at a minimum, submitted to the Discovery Master for *in camera* review.[86]

---

[84]   Entry No. 1650, Rev. Jan. 23 Log at 185.  This communication took place around the same period that Mr. Bonifacj was trying to recruit Mattel employees to MGA. See 10/18/2006 Email from J.C. Bonifacj to I. Larian, MGA 0194755-57 (" [black redaction bar] "), Proctor Decl., Ex. 35.

[85]   Indeed, MGA's descriptions do not even suggest a legal issue was involved. See Synopsys, Inc. v. Ricoh Co., Ltd., 2006 WL 2479109, at *2 (N.D. Cal. Aug. 28, 2006) (ordering production of documents where privilege log descriptions did not contain any "phrase that would link the documents to legal advice").

[86]   Other entries that MGA has withheld based solely on a bcc'd attorney are further detailed in Appendix E.

MATTEL'S MOTION TO COMPEL *IN CAMERA* REVIEW AND PRODUCTION OF NON-ATTORNEY OR NON-LEGAL COMMUNICATIONS LISTED ON MGA'S PRIVILEGE LOGS

1

## <u>Conclusion</u>

2      For the reasons set forth above, Mattel respectfully requests that its

3  motion be granted.

4

5  DATED:  March 27, 2009          QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP
6

7                                  By /s/ B. Dylan Proctor
                                      B. Dylan Proctor
8                                     Attorneys for Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07975/2806318.17

-23-                        Case No CV 04-9049 SGL (RNBx).
MATTEL'S MOTION TO COMPEL *IN CAMERA* REVIEW AND PRODUCTION OF NON-ATTORNEY OR NON-
LEGAL COMMUNICATIONS LISTED ON MGA'S PRIVILEGE LOGS