# EXHIBIT 11

1

1                UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                  EASTERN DIVISION

4                  - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6               - - -

**CERTIFIED COPY**

7  MATTEL, INC.,              )
                        )

8           PLAINTIFF,   )
                        )

9        VS.            )  NO. ED CV 04-09049
                        )  (LEAD LOW NUMBER)

10  MGA ENTERTAINMENT, INC., ET. AL., )
                        )

11          DEFENDANTS.  )  MOTION HEARING
                        )

12  AND CONSOLIDATED ACTIONS,   )
                        )

13

14

15       REPORTER'S TRANSCRIPT OF PROCEEDINGS

16          RIVERSIDE, CALIFORNIA

17         MONDAY , JUNE 2 , 2008

18            1:33 P.M.

19

20

21

22

23        THERESA A. LANZA, RPR, CSR
       FEDERAL OFFICIAL COURT REPORTER
24      3470 12TH STREET, RM. 134
       RIVERSIDE, CALIFORNIA  92501
25        951-274-0844
       WWW.THERESALANZA.COM

EXHIBIT __11__

PAGE __236__ (A)

2

```
1    APPEARANCES:

2

3

     ON BEHALF OF MATTEL:
4
                          QUINN EMANUEL
5                         BY:  HARRY A. OLIVAR
                          BY:  JON COREY
6                         BY:  DYLAN PROCTOR
                          865 S. FIGUEROA STREET,
7                         10TH FLOOR
                          LOS ANGELES, CALIFORNIA  90017
8                         213-624-7707

9

10   ON BEHALF OF MGA ENTERTAINMENT:

11                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:  JASON RUSSELL
12                        BY:   JOSE ALLAN
                          300 SOUTH GRAND AVENUE
13                        LOS ANGELES, CALIFORNIA  90071-3144
                          213-687-5000
14

15

16

17

18

19

20

21

22

23

24
                                          EXHIBIT  11
25
                                          PAGE  237
```

MONDAY, JUNE 2, 2008                     MOTIONS HEARING

3

I N D E X

                                                    PAGE

MOTIONS ..........................................    4

EXHIBIT ___11___

PAGE ___238___

4

```
 1        RIVERSIDE, CALIFORNIA; MONDAY, JUNE 2 , 2008; 1:33 P.M.
 2                         -OOO-
 3         THE CLERK:  CALLING CALENDAR ITEM NINE, MATTEL INC.
 4    VERSUS MGA ENTERTAINMENT INC., AND RELATED ACTIONS, CV 04-9059.
 5         MAY WE HAVE COUNSEL PLEASE COME FORWARD AND STATE      01:33
 6    YOUR APPEARANCES FOR THE RECORD.
 7         MR. COREY:  JON COREY, HARRY OLIVAR, AND
 8    DYLAN PROCTOR FOR MATTEL.
 9         MR. RUSSELL:  JASON RUSSELL AND JOSE ALLAN FOR MGA.
10         THE COURT:  GOOD AFTERNOON TO YOU ALL.              01:36
11         WE'RE ON CALENDAR FOR A SERIES OF MOTIONS THAT HAD
12    NOT BEEN ADDRESSED BY THE DISCOVERY MASTER BUT ARE RELATED TO
13    PHASE ONE OR SUBMITTED TO THE COURT AS BEING RELATED TO PHASE
14    ONE, WHICH I WANTED TO RULE ON BEFORE THE TRIAL WENT ANY
15    FURTHER.                                                 01:37
16         THE COURT HAS RECEIVED AND REVIEWED THE DOCUMENTS
17    SUBMITTED IN SUPPORT AND OPPOSITION TO THESE MOTIONS AND IS
18    PREPARED TO HEAR FURTHER ARGUMENT AT THIS TIME AND MAKE RULINGS
19    ON EACH OF THEM.
20         THE FIRST MOTION I HAVE BEFORE ME -- AND I'LL GO      01:37
21    THROUGH THEM IN THE ORDER THAT THEY WERE PRESENTED,
22    UNLESS THERE IS --
23         MR. RUSSELL:  I APOLOGIZE, BUT WE HAVE COUNSEL FOR
24    THIRD PARTY, MS. ANNE WONG'S COUNSEL IS HERE; THAT'S MOTION
25    SIX; I THOUGHT, JUST AS A COURTESY TO HER, WE COULD LET HER --  01:37
```

5

1          **THE COURT:**  LET'S TAKE THAT UP FIRST.  ABSOLUTELY.

2          THANK YOU, MR. RUSSEL.

3          NUMBER 6, MATTEL'S MOTION TO COMPEL PRODUCTION OF

4     DOCUMENTS BY ANNE WONG.

5          IS THERE ANYTHING FURTHER THAT'S NOT SET FORTH IN THE          01:37

6     PAPERS THAT COUNSEL WOULD LIKE TO ADDRESS AT THIS TIME?

7          **MR. PROCTOR:**  I'M HAPPY TO SUBMIT ON THE PAPERS.

8          **THE COURT:**  MA'AM?

9          **MS. BURROW:**  I'M HAPPY TO SUBMIT.

10          **THE COURT:**  OKAY.  VERY GOOD.                              01:38

11          THE COURT HAS REVIEWED THE PAPERS HERE.

12          MY DECISION IS TO GRANT THE MOTION WITH RESPECT TO

13     ALL NONPRIVILEGED INFORMATION ON THE RETENTION AGREEMENT WITH

14     CARTER BRYANT.  AS I UNDERSTAND IT, EVERYTHING HAS BEEN

15     RESOLVED BETWEEN THE PARTIES SINCE FILING THE MOTION, EXCEPT     01:38

16     FOR THAT RETENTION AGREEMENT WITH CARTER BRYANT.

17          THE EXAMPLES, TO NAME A FEW, OF THINGS THAT THE COURT

18     HAD IN MIND AS TO WHAT WOULD NOT BE PRIVILEGED WOULD BE, FOR

19     EXAMPLE, THE FAX HEADER; THE DATE OF THE AGREEMENT; ANY FACTUAL

20     IDENTIFICATIONS MADE WITHIN CONTEXT OF THE AGREEMENT.  BUT       01:38

21     CERTAINLY THE COURT COULD ALSO ENVISION -- AND I THINK EVEN

22     MATTEL CAN SEE THAT THERE MAY BE SOME PRIVILEGE INFORMATION

23     THEREIN -- BUT A REDACTED VERSION OF THE DOCUMENT THAT PROVIDES

24     ANY NONPRIVILEGED INFORMATION IS ORDERED PRODUCED.

25          AND I TRUST THAT CAN BE DONE, COUNSEL, WITHIN THREE         01:39

EXHIBIT ___

PAGE 240

6

1  DAYS OF TODAY'S DATE?

2          MS. BURROW:  THAT SHOULD BE FINE, YOUR HONOR.

3          THE COURT:  VERY WELL; SO IT'S ORDERED TO BE PRODUCED

4  WITHIN THREE DAYS OF TODAY'S DATE.

5          THANK YOU, COUNSEL.

6          MS. BURROW:  THANK YOU, YOUR HONOR.

7          THE FIRST MOTION IS MATTEL'S MOTION TO COMPEL

8  DEPOSITIONS OF LITTLER MENDELSON.  THE COURT HAS RECEIVED AND

9  REVIEWED THIS MOTION AS WELL.

10         THE COURT GAVE SOME THOUGHT TO HEARING FROM LITTLER          01:39

11 MENDELSON, BUT I TRUST THEY ARE AWARE OF THIS MOTION, OR AT

12 LEAST WERE AWARE INITIALLY OF THIS MOTION.

13         MR. PROCTOR:  LITTLER MENDELSON IS REPRESENTED BY THE

14 KEKER FIRM, YOUR HONOR, AND THEY WERE INVOLVED IN BRIEFING THE

15 MOTION.                                                             01:40

16         WE GAVE NOTICE, WE SENT AN E-MAIL TO THE KEKER FIRM

17 YESTERDAY, INDICATING THAT THE MOTION WAS GOING TO BE HEARD

18 TODAY.  I RECEIVED AN E-MAIL BACK FROM MR. WERDEGAR SUGGESTING

19 THAT BECAUSE THEY ARE IN SAN FRANCISCO IT WAS INSUFFICIENT

20 NOTICE, AND REQUESTING THAT THE MOTION NOT BE HEARD AT THIS          01:40

21 TIME.

22         WHAT I WOULD SUGGEST, IF I MAY MAKE A SUGGESTION, IS,

23 JUDGE INFANTE HAS REPEATEDLY ISSUED ORDERS ON DISCOVERY MOTIONS

24 WITHOUT ARGUMENT.  I'M HAPPY TO SUBMIT ON THE PAPERS.

25         THE COURT:  VERY WELL.                                      01:40

MONDAY, JUNE 2, 2008                    MOTIONS HEARING

EXHIBIT 11

PAGE 241

1      **MR. RUSSELL:** YOUR HONOR, IF I MIGHT, SINCE I HAD THE

2   OPPORTUNITY TO SPEAK TO KEKER THIS MORNING. I JUST WANTED TO

3   PUT ON RECORD THAT THE NOTICE MR. PROCTOR REFERRED TO WAS GIVEN

4   AT 9:39 P.M. LAST NIGHT, AND THEY ASKED IF THEY COULD BE HEARD

5   ON THIS MOTION; SO I'LL JUST PUT THAT ON THE RECORD.          01:40

6      **THE COURT:** VERY WELL.

7      I APPRECIATE THAT, MR. RUSSEL.

8      ORDINARILY, THE COURT WOULD FEEL COMFORTABLE, GIVEN

9   THE EXHAUSTIVE NATURE OF THE BRIEFS IN THIS CASE, TO RULE

10  WITHOUT ORAL ARGUMENT. BUT IN LIGHT OF A RESPONSE FOR AN      01:41

11  OPPORTUNITY TO ADDRESS THE COURT, AND GIVEN THIS IS A FIRM THAT

12  IS NO LONGER IN THE CASE, I THINK PROBABLY THE BETTER PRACTICE

13  WOULD BE TO AFFORD AN OPPORTUNITY TO THE FIRM TO RESPOND.

14      SINCE THIS IS ON THE RECORD, I DON'T HAVE ANY

15  PROBLEM, MY TENTATIVE WOULD BE TO PERMIT A LIMITED DEPOSITION  01:41

16  ON CERTAIN LIMITED TOPICS. BUT BEFORE I MAKE THAT FINAL, I

17  THINK IT'S ONLY FAIR TO LET LITTLER MENDELSON RESPOND.

18      YOU SPOKE TO MR. KEKER, THE FIRM. DID YOU HAVE A

19  SENSE WHEN THEY MIGHT BE AVAILABLE?

20     **MR. RUSSELL:** NO, YOUR HONOR. THEY SAID THEY NEEDED   01:42

21  MORE THAN 12 HOURS NOTICE.

22     **THE COURT:** FAIR ENOUGH.

23     **MR. RUSSELL:** IF I COULD ASK OF THE COURT, PERHAPS

24  IT'S NOT NECESSARY TO HAVE HEARING, DEPENDING ON WHAT HAPPENS

25  WITH YOUR TENTATIVE. IF YOU'RE WILLING TO DO THAT, I THINK IT  01:42

8

1   MIGHT BE BETTER FOR ALL OF US TO HEAR WHERE YOUR TENTATIVE

2   LEANINGS ARE, AND THEN THEY CAN DECIDE IF FURTHER ARGUMENT IS

3   NECESSARY; PERHAPS THEY CAN INDICATE A DESIRE TO SUBMIT ON THE

4   PAPERS.

5                  **THE COURT:**  VERY WELL.                                    01:42

6           THE TENTATIVE THE COURT HAD WRITTEN UP WAS THAT

7   MATTEL'S MOTION TO COMPEL THE DEPOSITION OF LITTLER MENDELSON

8   WAS TO BE GRANTED.

9           THE LAW FIRM OF LITTLER MENDELSON IS ORDERED TO

10  DESIGNATE AND SUBMIT A PERSON MOST KNOWLEDGEABLE TO SIT FOR THE    01:42

11  DEPOSITION REGARDING NONPRIVILEGED PERCIPIENT INFORMATION

12  CONCERNING WHEN IT OBTAINED THE HARD DRIVES IN QUESTION; HOW

13  THEY WERE PRESERVED; WHEN THE DESK TOP WITNESSING, IF AT ALL;

14  AND ANY INFORMATION CONCERNING ALLEGATIONS OF THE DESTRUCTION

15  OF EVIDENCE.                                                       01:42

16          THE COURT FINDS THE INFORMATION SOUGHT IS RELEVANT;

17  CANNOT REASONABLY BE OBTAINED THROUGH OTHER MEANS; WOULD NOT,

18  AT THIS POINT, DISRUPT THE ADVERSARY LITIGATION PROCESS, GIVEN

19  THAT THE TRIAL IS UNDER WAY AND THAT THE DEFENDANTS HAVE

20  ALTERNATIVE COUNSEL; AND, GIVEN THE PARAMETERS SET FORTH ABOVE,    01:43

21  WOULD NOT INTRUDE UPON PRIVILEGED INFORMATION AS THAT

22  INFORMATION WOULD BE EXPRESSLY EXCLUDED FROM ANY SUCH

23  DEPOSITION.

24          BUT I WILL INDICATE THAT IS THE COURT'S TENTATIVE

25  RULING.  I WILL AFFORD LITTLER MENDELSON AN OPPORTUNITY TO         01:43

EXHIBIT ___H___
PAGE ___243___

9

1  RESPOND.  TODAY IS JUNE 2ND.  LET'S GIVE THEM UNTIL WEDNESDAY,

2  AT 8:30 A.M. -- NOT WEDNESDAY.  LET'S SAY THURSDAY AT 8:30 A.M.

3          WHILE I'M ON THE TOPIC OF WEDNESDAY, THE COURT HAS

4  ANOTHER MATTER TO ATTEND TO, THAT IT WISHES TO ATTEND TO, ON

5  WEDNESDAY AFTERNOON; SO I'M THINKING OF ONLY RUNNING THE TRIAL    01:44

6  ON WEDNESDAY MORNING; BUT TO MAXIMIZE TRIAL TIME, START AT 8:30

7  WITH THE JURY, ASSUMING THERE'S NO PROBLEM RUNNING FROM 8:30 TO

8  11:30 OR CLOSE TO NOON AND WE'D GET AT LEAST A HALF DAY IN.

9          THE COURT COULD ADJUST ITS AFTERNOON CALENDAR OR

10  SCHEDULE, IF EITHER PARTY HAD A WITNESS THAT COULD ONLY COME IN   01:44

11  THE AFTERNOON.  I KNOW THIS IS KIND OF SHORT NOTICE.  IF

12  THERE'S NOT, THE COURT WOULD PREFER TO BE DARK ON WEDNESDAY

13  AFTERNOON.

14          MR. COREY, CAN YOU SPEAK FROM MATTEL'S PERSPECTIVE ON

15  THIS?  IS THERE ANY PARTICULAR WITNESS THAT HAS TO APPEAR ON     01:44

16  WEDNESDAY AFTERNOON, THAT YOU ARE AWARE OF?

17          MR. COREY:  YOUR HONOR, I WILL NEED TO CHECK WITH

18  MS. O'CONNOR; SHE WAS THE WITNESS WHO WE HAD ASKED TO GO LATE

19  ON FRIDAY WITH.  I THINK SHE IS AVAILABLE ON WEDNESDAY

20  AFTERNOON, AND THAT'S WHEN SHE WAS AVAILABLE NEXT WEEK.          01:45

21          THE COURT:  RIGHT.

22          MR. COREY:  I NEED TO FIND OUT IF SHE IS AVAILABLE

23  SOME TIME LATER, BECAUSE I KNOW SHE HAS A BUSINESS TRIP TOWARD

24  THE END OF NEXT WEEK.  I'M NOT SURE WHAT HER SCHEDULE IS THE

25  FOLLOWING WEEK.                                                 01:45

EXHIBIT __11__

PAGE __244__

1       **THE COURT:**  IF YOU COULD BE PREPARED TO SPEAK ON THAT

2   TOMORROW MORNING.

3       **MR. COREY:**  ABSOLUTELY.

4       **THE COURT:**  MR. RUSSEL?

5       **MR. RUSSELL:**  I'M SURE WE CAN BE ACCOMMODATING ON          01:45

6   THIS ISSUE.

7       **THE COURT:**  I'LL HEAR FROM YOU, MR. COREY, OR

8   SOMEONE, TOMORROW MORNING ON MS. O'CONNOR.

9       I DO RECALL WE DIDN'T GET TO HER ON FRIDAY AND SHE

10  HAD SOMEONE'S SURGERY TO ATTEND TO TODAY OR TOMORROW AND THAT    01:45

11  WEDNESDAY AFTERNOON WAS HER FIRST AVAILABILITY.  PERHAPS SHE

12  COULD COME THURSDAY MORNING.

13      **MR. COREY:**  ABSOLUTELY, YOUR HONOR.

14      **THE COURT:**  VERY GOOD.  THANK YOU.

15      THE NEXT MOTION IS MATTEL'S MOTION FOR                       01:45

16  RECONSIDERATION OF PORTIONS OF THE DISCOVERY MASTER'S

17  DECEMBER 31, 2007 ORDER.

18      THIS ORDER IS DENIED WITHOUT PREJUDICE TO REFILING

19  ONCE THE STAY ON PHASE TWO DISCOVERY IS LIFTED AND FOLLOWING A

20  RENEWED MEET AND CONFER CONCERNING THE SUBJECT MATTER OF THE     01:46

21  MOTION.

22      THE THIRD MOTION IS THE MOTION REGARDING -- I HAVE

23  SOME QUESTIONS REGARDING MGA'S MOTION TO QUASH THE DEPOSITION

24  SUBPOENA; THIS IS THE NUMBERING GAME, WHICH I THOUGHT I HAD

25  SUFFICIENTLY PUNTED TO THE DISCOVERY MASTER, BUT APPARENTLY IT   01:46

EXHIBIT 11

PAGE 245

1   HAS BEEN THROWN RIGHT BACK TO THIS COURT, AS IT'S NEVER BEEN

2   WORKED OUT.  I WANT TO TRY AND KEEP THIS AS SIMPLE AS POSSIBLE.

3   AS MANY TIMES AS I'VE REVIEWED THE PAPERS, I COULDN'T GET A

4   CLEAR UNDERSTANDING OF EXACTLY THE NUMBER OF DEPOSITIONS THAT

5   HAVE BEEN NOTICED AND/OR COMPLETED BY MATTEL.  AND SUBTRACT          01:46

6   FROM THAT NUMBER THOSE DEPOSITIONS THAT THE COURT SPECIFICALLY

7   AUTHORIZED JANUARY 7TH.

8          I BELIEVE I HAVE CLARIFIED IN MY FEBRUARY MINUTE

9   ORDER THAT THE GOOD CAUSE THE COURT FOUND FOR ADDITIONAL

10  DEPOSITIONS -- AND I BELIEVE I ENUMERATED WHO THOSE DEPOSITIONS      01:47

11  APPLIED TO -- WERE OVER AND ABOVE THE 24; SO THIS SHOULD BE A

12  RATHER SIMPLE PROCESS OF DETERMINING THE TOTAL NUMBER OF

13  DEPOSITIONS NOTICED OR CONDUCTED BY MATTEL; TAKING OUT THOSE

14  THAT WERE REFERENCED IN THE JANUARY 7TH ORDER; AND THEN

15  DETERMINING WHETHER OR NOT, AFTER DOING THAT SUBTRACTION, WE         01:47

16  HAVE 24 OR LESS DEPOSITIONS.

17          MR. COREY?

18          **MR. COREY:**  AND I APPRECIATE THE EFFORT THAT THE

19  COURT HAS GONE THROUGH TO PROVIDE US WITH THAT GUIDANCE.  BUT

20  WITH RESPECT TO THIS MOTION, I'M NOT SURE THAT REMAINS A LIVE       01:47

21  ISSUE.

22          THIS WAS THE MOTION THAT WE DISCUSSED WHERE I THOUGHT

23  WE HAD NARROWED THE ISSUE FOR THIS PARTICULAR MOTION TO THE

24  WACHOVIA SUBPOENA AND POTENTIALLY THE MOSS ADAMS SUBPOENA,

25  BECAUSE MOST OF THE INDIVIDUALS IDENTIFIED IN THIS MOTION           01:47

EXHIBIT 11

PAGE 246

12

1    ACTUALLY HAVE BEEN DEPOSED, SO THOSE ARE OFF THE TABLE.

2            THE COURT:  ALL RIGHT.

3            BUT STILL, WHETHER OR NOT THERE'S ANY DEPOSITIONS

4    LEFT TO BE TAKEN TURNS ON THE ANALYSIS I SET FORWARD.

5            I'M NOT AT THIS POINT CONSIDERING GOOD CAUSE FOR AN            01:48

6    ADDITIONAL DEPOSITION; IT'S SIMPLY A MATTER OF WHETHER OR NOT

7    YOU HAVE ANOTHER DEPOSITION TO TAKE.

8            MR. COREY:  AND TO BE CLEAR, WITH RESPECT TO WACHOVIA

9    AND MOSS ADAMS, THOSE ARE THIRD PARTIES FOR WHOM THE COURT HAS

10   ALREADY FOUND GOOD CAUSE IN THE ORDER.                                01:48

11           THE COURT:  OKAY.  THEN WHAT'S THE ISSUE?

12           MR. COREY:  THE ISSUE IS ONE OF SCOPE, I BELIEVE.

13   AND PERHAPS I'M SPEAKING OUT OF TURN.  IT'S MGA'S MOTION, BUT I

14   DIDN'T WANT THE COURT TO GO TOO FAR DOWN A PATH WHERE IT DIDN'T

15   HAVE TO GO.                                                           01:48

16           THE COURT:  I APPRECIATE THAT.  IT MAY BE TOO LATE

17   FOR THAT, BUT I APPRECIATE IT NONETHELESS.

18           MR. COREY:  I APOLOGIZE FOR NOT BEING --

19           THE COURT:  I KNOW YOU DID MENTION THIS ON FRIDAY,

20   AND PERHAPS I WASN'T FOLLOWING AS WELL AS I SHOULD HAVE.             01:48

21           MR. COREY:  WITH RESPECT TO THIS MOTION AND WITH

22   RESPECT TO WACHOVIA AND MOSS ADAMS, YOUR HONOR, THERE WAS AN

23   ORDER THAT JUDGE INFANTE ISSUED THAT WAS REVISITED A LITTLE

24   BIT.

25           THE COURT:  CAN YOU REFER ME TO THE PAGES OF THE             01:49

EXHIBIT ____

PAGE ____ 297

13

1   MOTION AND THE OPPOSITION THAT ARE AT ISSUE, THEN?

2          MR. COREY:  I CAN, YOUR HONOR.

3          I'M LOOKING AT THE AMENDED NOTICE OF MOTION.

4          THE COURT:  THE FIRST OR THE SECOND?

5          MR. COREY:  THE SECOND AMENDED MOTION; THAT WOULD BE          01:49

6   SECTION 2-C WHICH STARTS ON PAGE 11; AND IN THE OPPOSITION,

7   YOUR HONOR, THE DISCUSSION STARTING ON PAGE 5.

8          THE COURT:  AGAIN, THE DOCUMENT SUBPOENAS I

9   REFERENCED HERE ARE THE SUBJECT OF THE MOTION TO QUASH, WHICH I

10  DENIED LAST WEEK; CORRECT?                                          01:50

11         MR. COREY:  JUDGE INFANTE ISSUED AN ORDER COMPELLING

12  WACHOVIA TO PRODUCE DOCUMENTS PURSUANT TO THE DOCUMENT

13  SUBPOENA.  WACHOVIA WAS BEING, WE THOUGHT, STINGY WITH RESPECT

14  TO THE DOCUMENTS IT'S PRODUCING.  WE BROUGHT THAT TO THE

15  ATTENTION OF THE COURT, AND WACHOVIA HAS SINCE PRODUCED 1,500      01:51

16  PAGES.

17         THE COURT:  AND IT'S PURSUANT TO THOSE DOCUMENTS THAT

18  YOU WANT TO CONDUCT THIS DEPOSITION?

19         MR. COREY:  CORRECT.  THERE WAS AN AGREEMENT OR A

20  REPRESENTATION MADE TO JUDGE INFANTE, BY MR. KENNEDY BASED ON      01:51

21  AN AGREEMENT THAT HE AND I HAD REACHED, THAT WE HAD PROPOSED

22  THAT THE SCOPE OF THE DEPOSITION OUT OF WACHOVIA BE PARALLEL

23  WITH THE RULINGS THAT JUDGE INFANTE MADE WITH RESPECT TO

24  WACHOVIA.  AND THAT'S THE RELIEF I THINK THAT --

25         THE COURT:  IF THIS IS THE ONLY ISSUE THAT'S LEFT,          01:51

EXHIBIT ____ ΙΤ

PAGE ____ 248

1   MR. RUSSEL, LET ME HEAR FROM YOU ON THIS.

2        THERE'S NO QUESTION IN THE COURT'S MIND THAT IT WAS

3   APPROPRIATE FOR ALL OF THE DOCUMENTS RELATED IN THE LOAN, 1999

4   TO 2000, TO BE TURNED OVER; THE COURT MADE THAT RULING LAST

5   WEEK.  APPARENTLY THESE WERE NOT THE SUBJECT OR WERE NOT        01:52

6   INCLUDED IN THE DEPOSITION THAT WAS DONE EARLIER?  IS THAT

7   YOUR --

8        **MR. RUSSELL:**  I DON'T THINK THERE WAS A DEPOSITION.

9        **THE COURT:**  THERE NEVER WAS A DEPOSITION?

10       **MR. RUSSELL:**  JUST TO BE CLEAR, THE WAY IT WORKED WAS   01:52

11  THERE WAS A DEPOSITION SUBPOENA FOR DOCUMENTS AND THEN A

12  DEPOSITION SUBPOENA FOR TESTIMONY.  IT WAS MGA'S POSITION THAT

13  THE TWO WERE INTERRELATED; THAT IS TO SAY, THE MOTION TO QUASH

14  AS TO THE DOCUMENTS WERE GRANTED, THERE WOULDN'T BE A NEED FOR

15  DEPOSITION WITH TESTIMONY; SO THE TWO WERE LINKED.              01:52

16       **THE COURT:**  WHY WERE THEY SEPARATED BY MATTEL TO

17  BEGIN WITH, MR. COREY?

18       **MR. COREY:**  YOUR HONOR, I DON'T KNOW THE ANSWER TO

19  THAT QUESTION.

20       **THE COURT:**  DO YOU AGREE IT MAKES SENSE THAT THE TWO   01:52

21  ARE CONNECTED?

22       **MR. COREY:**  THEY ARE ABSOLUTELY CONNECTED.

23        THIS IS SPECULATION, BUT, WE DID NOT KNOW EXACTLY

24  WHAT WACHOVIA'S ROLE WAS, AND WE WANTED TO SEE IF THERE WERE

25  DOCUMENTS RELATED TO ANYTHING BEFORE WE UNDERTOOK THE           01:52

15

1  DEPOSITION.

2         **THE COURT:**  I SEE.  I WILL AGREE WITH YOU,

3  MR. RUSSEL.  AT THIS POINT, ESSENTIALLY, THEY ARE ONE AND THE

4  SAME.

5         NOW THAT THE COURT HAS RULED THE DOCUMENTS ARE TO BE

6  PRODUCED, WHY SHOULDN'T THERE BE A DEPOSITION OF THAT PERSON?

7  ASSUMING THAT THERE'S NOT A COUNTING ISSUE.

8         **MR. RUSSELL:**  WELL, I'LL COME BACK TO THE COUNTING

9  ISSUE.  BUT WITH RESPECT TO THAT ISSUE ABOUT WHETHER THERE

10  SHOULD BE A DEPOSITION, YOUR HONOR HAD RULED THAT WACHOVIA TURN

11  OVER THE DOCUMENTS AND HAS MADE FURTHER RULINGS WITH RESPECT TO

12  WHAT THE PURPOSE OF THOSE DOCUMENTS ARE SUPPOSED TO BE.  THAT

13  IS TO SAY THAT, IF I UNDERSTOOD YOUR HONOR'S PRIOR RULINGS,

14  WE'RE NOT GOING TO HAVE ANY DISPUTE ABOUT WHAT IT IS THAT

15  MR. LARIAN'S WEALTH AND ASSETS ARE, AND THAT'S REALLY WHAT THE

16  WACHOVIA PRODUCTION WAS GOING TO.

17         I'M NOT SURE WE NEED THIS DEPOSITION WITHOUT REGARD

18  TO THE COUNTING ISSUES.  WE'RE IN THE MIDDLE OF TRIAL.  THEY

19  HAVE THE DOCUMENTS.  IF THIS IS A QUESTION OF AUTHENTICITY OR

20  SOMETHING LIKE THAT, THAT SEEMS POSSIBLE.  BUT JUST AT BASE,

21  I'M NOT SURE WE NEED THE DEPOSITION IN THE FIRST INSTANCE.

22         **THE COURT:**  YOU SAID ABOUT WEALTH, BECAUSE THESE ARE

23  LOANS MADE TO MGA PRESUMABLY TO UNDERWRITE -- I THINK FROM

24  MATTEL'S PERSPECTIVE TO UNDERWRITE THE BRATZ PROJECT; SO THIS

25  HAS NOTHING DO WITH MR. LARIAN'S WEALTH.

01:53
01:53
01:53
01:53
01:54

MONDAY, JUNE 2, 2008                    MOTIONS HEARING

EXHIBIT ___11___

PAGE ___250___

16

1      **MR. RUSSELL:** HIS POSITION -- IF I UNDERSTOOD THE

2 PRIOR DISCUSSION ON THIS WACHOVIA ISSUE, THOSE TWO ARE

3 INTERRELATED; THAT IS TO SAY, THE REASON THEY WANT THE WACHOVIA

4 DOCUMENTS IS TO SHOW WHAT THE FINANCIAL POSITION OF THE COMPANY

5 WAS AT THE TIME.                    01:54

6      **THE COURT:** VERY WELL.

7      MR. COREY?

8      **MR. COREY:** THAT'S ACTUALLY NOT WHAT WE'RE SEEKING.

9      THE SCOPE OF THE DOCUMENTS THAT WERE PRODUCED WERE

10 LIMITED, AS THE COURT PROPERLY IDENTIFIED, TO A LINE OF CREDIT   01:54

11 THAT EXTENSIONS OR LOANS, OR HOWEVER YOU WANT TO CHARACTERIZE

12 IT --

13      **THE COURT:** AND YOU JUST WANT TO DO A DEPOSITION WITH

14 RESPECT TO THOSE DOCUMENTS.

15      **MR. COREY:** CORRECT.                  01:54

16      FOR EXAMPLE, ONE OF THE DOCUMENTS WACHOVIA PRODUCED

17 ON WEDNESDAY OR THURSDAY OF LAST WEEK WAS CARTER BRYANT'S

18 AGREEMENT; AND SO WE THINK THERE'S SOME INQUIRY THAT NEEDS TO

19 BE MADE THERE.

20      I DON'T THINK IT NEEDS TO BE A LONG DEPOSITION, AND   01:55

21 ONE OF MY ASSOCIATES HAS CONFERRED WITH COUNSEL FOR WACHOVIA TO

22 SEE IF WE CAN RESOLVE THIS BY AGREEMENT. WHAT HE SAID IS THAT

23 HE WOULD AWAIT THE COURT'S ORDER. I DON'T THINK WE NEED A

24 LONG, BUT I THINK SOME INQUIRY NEEDS TO BE MADE.

25      **THE COURT:** IS TWO HOURS SUFFICIENT?         01:55

17

1      MR. COREY:  YES, YOUR HONOR.

2      THE COURT:  MR. RUSSEL?

3      MR. RUSSELL:  WELL, MAYBE WE HAVE THE CART BEFORE THE

4   HORSE.  IF IT'S POSSIBLE TO RESOLVE IT WITHOUT DEPOSITION, WHY

5   DON'T WE SEE IF WE CAN DO THAT.  THAT CERTAINLY MAKES SENSE TO      01:55

6   ME.

7      IF NOT, THAT'S FINE.  A TWO-HOUR DEPOSITION WOULD BE

8   FINE, IF IT'S LIMITED TO PRODUCTION AND AUTHENTIFICATION OF

9   DOCUMENTS.  BUT THAT TAKES US TO THE SECOND ISSUE, AND THAT IS

10  THE COUNTING ISSUE.                                                01:55

11     MR. COREY IS CORRECT, IF I READ THE VARIOUS BACK AND

12  FORTH, MOST OF THE DEPOSITIONS THAT WERE REFERENCED IN THE

13  SECOND AMENDED SUPPLEMENTAL NOTICE HAVE BEEN TAKEN.  THERE ARE,

14  BY MY COUNT, FOUR THAT HAVE NOT:  CECELIA KWOK, MOSS ADAMS,

15  CAROL WITSCHELL, AND WACHOVIA.  SO IF IT'S THE POSITION OF        01:56

16  MATTEL THAT AS TO ALL BUT WACHOVIA, THAT THEY DON'T WANT THEM,

17  THEN THERE'S NOTHING MORE TO FIGHT ABOUT.  IF IT'S JUST

18  WACHOVIA, THEN WE'LL SUBMIT ON WHAT YOUR HONOR IS PREPARED TO

19  DO.

20     THE COURT:  WHAT'S YOUR THOUGHT ON THESE THREE OTHER           01:56

21  DEPOSITIONS IDENTIFIED BY MR. RUSSELL?  ARE YOU PLANNING TO

22  PROCEED WITH THOSE DURING THIS TRIAL?

23     MR. COREY:  WITH RESPECT TO MS. WITSCHELL, NO, AND

24  CECELIA KWOK, I BELIEVE THE ANSWER IS NO.

25     WE DO THINK IT WOULD BE APPROPRIATE TO HAVE A SHORT            01:56

EXHIBIT  11

PAGE  252

1   DEPOSITION OF MOSS ADAMS FOR THE REASON THE COURT IDENTIFIED

2   WITH RESPECT TO THE MOTION ON MR. LARIAN'S -- THE QUESTION OF

3   MR. LARIAN'S WEALTH AND THE COURT GRANTED THE ORDER --

4           THE COURT:  WHO IS MOSS ADAMS, AGAIN?

5           MR. COREY:  MR. LARIAN'S ACCOUNTANT.                    01:56

6           MR. RUSSELL:  HIS PERSONAL ACCOUNTANT.

7           MR. COREY:  AGAIN, I DON'T THINK WE WOULD NEED A LONG

8   DEPOSITION.  BUT I DO THINK IT'S WORTH POINTING OUT THAT ONE OF

9   THE ARGUMENTS MADE IN THE PAPERS WITH RESPECT TO MOSS ADAMS --

10  AND I'M QUOTING FROM PAGE 15 OF MGA'S REPLY -- "OF COURSE, THE   01:57

11  BEST SOURCE OF TESTIMONY ABOUT THESE DOCUMENTS AND TOPICS --

12  REFERRING TO THE TOPICS FOR THE MOSS ADAMS DEPOSITION -- IS

13  MR. LARIAN HIMSELF."

14          AND AS THE COURT RECOGNIZES, WE'VE BEEN DOWN THAT

15  PATH AND WE'VE RUN INTO A DEAD-END.                              01:57

16          THE COURT:  GIVEN THE COURT'S RULINGS, THOUGH, ON

17  WHAT MR. LARIAN NEEDS TO BE PREPARED TO DO -- AND I'VE ALREADY

18  GRANTED YOUR MOTION REQUIRING THEM TO BRING THE DOCUMENTS

19  SUPPORTING HIS POSITION IN THE COMPANY AND WHAT REVENUES WERE

20  GENERATED BY IT -- GIVEN THAT, IS IT STILL NECESSARY?           01:57

21          MR. COREY:  I THINK IF WE CAN GET THE DOCUMENTS AND

22  LOOK AT THEM IN THE MORNING, BEFORE MR. LARIAN TAKES THE STAND,

23  THEN PERHAPS THERE IS NO NEED TO DO THAT HERE, TO TAKE MOSS

24  ADAMS' DEPOSITION.

25          I UNDERSTAND THE COURT HAS INSTRUCTED MR. LARIAN TO      01:58

EXHIBIT  11
PAGE  253

19

1   BE PREPARED TO TESTIFY, BUT I THINK THERE'S SOME PREJUDICE TO

2   MATTEL IN BEING DEPRIVED OF THE ABILITY TO CROSS-EXAMINE

3   WHATEVER MAY COME OUT OF HIS MOUTH WITHOUT HAVING SOME IDEA OF

4   WHAT HE'S GOING TO SAY.

5          **THE COURT:**  IF PLAINTIFF WERE BEING REPRESENTED BY A          01:58

6   SOLE PRACTITIONER, COMPLETELY ABSORBED IN DOING WHATEVER --

7   GIVEN THE RESOURCES AVAILABLE, I THINK THAT WHEN THOSE

8   DOCUMENTS COME IN, YOU'LL HAVE AN OPPORTUNITY TO REVIEW THEM,

9   OR SOMEONE ON YOUR TEAM WILL.

10         **MR. COREY:**  I'M SURE SOMEONE ON MY TEAM WILL.          01:58

11         **THE COURT:**  THIS IS WHAT I'M GOING TO DO.

12         MGA'S MOTION TO QUASH THE DEPOSITION IS GRANTED IN

13  PART AND DENIED IN PART.  IT IS DENIED WITH RESPECT TO

14  WACHOVIA.  I'M GOING TO AFFORD LEAVE FOR A 2-HOUR DEPOSITION

15  WITH THE CUSTODIAN OR PERSON MOST KNOWLEDGEABLE AT WACHOVIA.          01:58

16  IT SOUNDS LIKE YOU'RE ALREADY IN CONTACT WITH SOMEBODY,

17  MR. COREY, IN TERMS OF WHO WOULD SIT FOR THAT?

18         **MR. COREY:**  IN TOUCH WITH THEIR COUNSEL.  I'M NOT

19  SURE WHO WOULD SIT, BUT I CAN CONVEY THAT.

20         **THE COURT:**  I TRUST THEY WILL DESIGNATE THE PERSON          01:59

21  MOST KNOWLEDGEABLE ABOUT THESE DOCUMENTS.

22         **MR. COREY:**  I'M SURE THEY WILL.

23         **THE COURT:**  VERY WELL.

24         OTHERWISE, THE MOTION IS GRANTED, AND THERE WILL BE

25  NO FURTHER DEPOSITIONS DURING PHASE ONE.          01:59

MONDAY, JUNE 2, 2008                    MOTIONS HEARING   EXHIBIT __11__

PAGE __254__

20

1            **MR. COREY:**  THANK YOU, YOUR HONOR.

2            **THE COURT:**  VERY WELL.

3            BOY, I'D LOVE TO SKIP OVER THIS NEXT ONE, BUT I AM

4    NOT ABLE TO.  THERE ARE THREE MOTIONS TOGETHER.  MATTEL'S

5    MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS WITHHELD AS            01:59

6    PRIVILEGED.  THESE THREE MOTIONS, AND, TO A LESSER EXTENT, THE

7    NEXT ONE WHICH ALSO DEALS WITH PRIVILEGE, WERE THE ONES THAT

8    CONSUMED MOST OF THE COURT'S TIME THIS WEEKEND.

9            THERE ARE COMPETING COMPLICATIONS HERE.

10           ON THE ONE HAND, MGA IS CORRECT IN POINTING OUT THAT            01:59

11   THESE ARE KIND OF BROAD CATEGORICAL DEMANDS.  ON THE OTHER

12   HAND, I'M SOMEWHAT SYMPATHETIC TO MATTEL'S POSITION THAT GIVEN

13   THE BREADTH OF DOCUMENTS INVOLVED, AND GIVEN THE CATCH-22

14   POSITION, OF COURSE, OF ANYONE CHALLENGING A PRIVILEGE LOG,

15   IT'S DIFFICULT TO PROCEED BY ANY OTHER WAY THAN BY BROAD            02:00

16   CATEGORICAL DEMANDS.

17           MY TENTATIVE THOUGHT IS, I DON'T THINK THERE'S A

18   SUFFICIENT SHOWING TO ORDER MGA SIMPLY TO TURN OVER, WHOLESALE,

19   THESE BROAD CATEGORIES.

20           ON THE OTHER HAND, I DO THINK THAT PERHAPS, AIDED BY            02:00

21   THE COURT'S RULINGS ON SOME OF THE ISSUES OF CONTENTION BETWEEN

22   THE PARTIES, IT MIGHT BE APPROPRIATE FOR MGA TO REVISIT THE

23   DOCUMENTS ON THEIR PRIVILEGED LOG TO DETERMINE WHETHER OR NOT

24   THESE DOCUMENTS ARE TRULY PRIVILEGED, AND PARTICULARLY WHETHER

25   THEY ARE ENTIRELY PRIVILEGED AS OPPOSED TO BEING ONLY PARTIALLY            02:00

MONDAY, JUNE 2, 2008                    MOTIONS HEARING

1    PRIVILEGED IN WHICH REDACTIONS CAN PERHAPS BE SUBMITTED.

2              I ALSO GET THE SENSE, IN GOING THROUGH THIS --

3    THERE'S A SERIES OF MOTIONS HERE, AND THEN THERE'S A SERIES OF

4    SUPPLEMENTAL MOTIONS AND OPPOSITIONS AND REPLIES -- THAT THE

5    LANDSCAPE HAS CHANGED, PERHAPS, SINCE THESE MOTIONS WERE FIRST    02:01

6    FILED AND PERHAPS EVEN SINCE THE SUPPLEMENTAL MOTIONS HAVE BEEN

7    FILED; SO I SUPPOSE WHERE I WANT TO START THESE PARTICULAR

8    MOTIONS IS BY HEARING FROM COUNSEL IN TERMS OF WHERE WE ARE AS

9    OF THIS DATE, AND HAVE WE SUFFICIENTLY NARROWED THE ISSUES.

10             **MR. OLIVAR:**  I WISH I COULD SAY WE HAD, YOUR HONOR.    02:01

11             YOUR HONOR IS CORRECT IS THAT THE VOLUME INVOLVED IS

12   PROBLEMATIC.  BUT OUR VIEW IS IT'S A PROBLEM OF MGA'S OWN

13   CREATION.  AS SET FORTH IN THE PAPERS, MGA WAS ORDERED TO

14   PROVIDE PRIVILEGE LOGS BY JULY OF 2007, AND THE LOGS WE'RE

15   ARGUING TODAY WERE PRODUCED IN NOVEMBER; FOUR OF THEM IN    02:02

16   JANUARY AND TWO IN MARCH; SO THESE WERE PRODUCED OVER THE LAST

17   SIX MONTHS, MANY EITHER DAYS BEFORE OR AFTER THE DISCOVER

18   CUTOFF.  BY THE TIME THEY WERE ORDERED TO PRODUCED, THEY LODGED

19   100 DOCUMENTS.  NOW WE'RE WELL OVER 10,000; I THINK THE CORRECT

20   NUMBER IS 12,000.  AND THE ONES WE'VE CHALLENGED AS PROBLEMATIC    02:02

21   WHICH INCLUDE MULTIPLE COMMUNICATIONS AMONG NONLAWYERS, ALSO

22   COMMUNICATIONS INVOLVING LICENSEES, WHICH JUDGE INFANTE FOUND

23   THERE WAS NO SHOWING TO JUSTIFY COMMON INTEREST CLAIM.

24             **THE COURT:**  LET ME STOP YOU THERE.

25             WHEN I FIRST READ YOUR MOTION AND YOU SAY THAT    02:02

EXHIBIT __((__

PAGE __256__

1   THERE'S THOUSANDS OF DOCUMENTS, COMMUNICATIONS BETWEEN

2   NONLAWYERS, AND I CAN UNDERSTAND AT FIRST BLUSH WHERE REVIEWING

3   THAT, WAIT A SECOND HERE, THERE'S GOT TO BE SOMETHING IN THIS

4   THAT'S NOT PRIVILEGED.

5          MR. RUSSEL OR MGA RESPONDS BY SAYING THAT -- AND IT'S         02:02

6   A POINT WELL TAKEN -- THAT NONLAWYERS, NONLAWYER EMPLOYEES IN

7   THE COMPANY COULD BE DISCUSSING, IN AN E-MAIL, LEGAL ADVICE

8   RECEIVED FROM COUNSEL.  AND PROVIDED THAT DOESN'T GET INTO A

9   THIRD PARTY'S HANDS, THAT LEGAL ADVICE BEING DISCUSSED COULD BE

10  PRIVILEGED.                                                          02:03

11          I TRUST YOU'D AGREE WITH THAT.

12          MR. OLIVAR:  WE DO AGREE WITH THAT.

13          THE ISSUE IS THAT THE ENTIRE COMMUNICATIONS AMONG THE

14  NONLAWYERS HAVE BEEN WITHHELD; NO REDACTION OF JUST LEGAL

15  ADVICE.                                                              02:03

16          THE COURT:  IT'S ALSO CONCEIVABLE THAT AN ENTIRE

17  E-MAIL OR AN ENTIRE DOCUMENT IS DEVOTED TO A DISCUSSION OF THAT

18  OPINION.

19          SHORT OF ASKING THE COURT TO TAKE THESE DOCUMENTS

20  IN CAMERA AND REVIEW THESE THOUSANDS OF DOCUMENTS, I DON'T KNOW      02:03

21  WHAT MORE -- OTHER THAN, PERHAPS, DIRECT COUNSEL TO CERTIFY

22  THAT THEY HAVE REVIEWED ALL OF THESE DOCUMENTS -- WHICH IS

23  BASICALLY WHAT A PRIVILEGED LOG IS -- AND DETERMINE THAT EACH

24  ONE OF THESE, IN WHOLE OR IN PART, DEPENDING WHETHER THEY HAVE

25  REDACTED THEM OR NOT, CONTAINS PRIVILEGED INFORMATION.              02:04

EXHIBIT 11
PAGE 257

1          I DON'T THINK THERE'S A BASIS TO SAY 'TURN OVER ALL

2     OF THE DOCUMENTS.'

3          I'M NOT INTERESTED IN LOOKING AT ALL OF THE

4     DOCUMENTS.  I THINK WE NEED TO RELY ON MGA THAT THEY HAVE FOUND

5     THAT THESE DOCUMENTS ARE PRIVILEGED.                          02:04

6          I'M NOT SAYING THAT I DON'T HAVE THE SAME PAUSE THAT

7     YOU HAVE WHEN I LOOK AT THE VOLUME OF IT, BUT --

8          MR. OLIVAR:  AS TO THAT FIRST CATEGORY, I TAKE YOUR

9     HONOR'S POINT.  I DON'T THINK IT WOULD BE APPROPRIATE TO SAY

10    'PRODUCE ALL OF THE DOCUMENTS.'                               02:04

11         THE COURT:  OKAY.

12         MR. OLIVAR:  BUT I THINK IT IS INCONCEIVABLE, TALKING

13    ABOUT THESE DOCUMENTS INVOLVING NONLAWYERS, THAT EVERY WORD AND

14    EVERY SUBJECT MATTER OF ALL OF THEM WOULD BE PRIVILEGED.

15    CERTAINLY, SOME OF THESE E-MAILS INVOLVED SOME NONLEGAL ADVICE  02:04

16    AMONG THESE NONLAWYERS.

17         THE COURT:  I THINK I WOULD BE INCLINED TO DO IS

18    DIRECT COUNSEL TO TAKE A SECOND LOOK AT THEM.  BUT BEYOND THAT,

19    I DON'T REALLY SEE THE RELIEF, AT LEAST AS YOU REQUESTED IN THE

20    MOTION, AS BEING APPROPRIATE.                                 02:05

21         MR. OLIVAR:  FOR THE FIRST MOTION, THE COMMUNICATION

22    WITH NONLAWYERS, I THINK YOUR HONOR IS RIGHT; CERTIFICATION

23    WOULD BE APPROPRIATE.

24         THE COURT:  LET'S TALK ABOUT THOSE OTHER ONES,

25    BECAUSE I TEND TO AGREE, AND I'LL WANT TO HEAR FROM MR. RUSSELL  02:05

1   ON THIS, OR OTHER COUNSEL, THAT PURE TRADEMARK SEARCH RESULTS

2   AND REQUESTS, UNADORNED TRADEMARK SEARCH AND TRADEMARK

3   REQUESTS, TRADEMARK DATES OF FIRST USE.  THE ACTUAL FACTUAL

4   DATA THAT IS COMMUNICATED WITH RESPECT TO THAT, I THINK THE LAW

5   IS FAIRLY CLEAR THAT IS NOT PRIVILEGE.                              02:05

6        NOW, ATTORNEY OPINIONS CONCERNING THAT OR

7   INTERPRETING THAT OR ADVISING ON THE SUBMISSION OF TRADEMARK

8   DATES AND APPLICATIONS IS PRIVILEGED TO THE EXTENT THAT IT

9   OTHERWISE MEETS THE PRIVILEGE REQUIREMENTS.

10       THAT'S WHERE I SEE THE DISTINCTION.                           02:05

11       ADMITTEDLY, RELYING ON WHAT YOU'VE SUBMITTED TO THE

12  COURT IN TERMS OF WHATEVER HAS BEEN PRODUCED IN THE LOG, IT'S

13  NOT CLEAR AND IT NEEDS TO BE PERHAPS CLARIFIED THAT THAT IS THE

14  SAME UNDERSTANDING THAT HAS INFORMED MGA'S DESIGNATION OF

15  PRIVILEGED MATERIALS.                                              02:06

16       THAT'S MY TENTATIVE REACTION AFTER READING YOUR

17  BRIEFS AND CONSIDERING THEIR RESPONSES.

18       MR. OLIVAR:  WE DO HAVE MORE HUNDREDS OF DOCUMENTS IN

19  THAT SECOND CATEGORY, WHICH AT SOME LEVEL MUST IDENTIFY THE

20  TRADEMARK THAT WAS SEARCHED, THE RESULTS OF SOME SEARCH, AND A    02:06

21  DATE OF FIRST USE.  IT'S INCONCEIVABLE THERE COULD BE HUNDREDS

22  OF COMMUNICATIONS ABOUT TRADEMARK ISSUES WITHOUT HAVING SEARCH

23  RESULTS OR DATES OF FIRST USE INVOLVED IN SOME WAY, AND THAT

24  FACTUAL INFORMATION NEEDS TO BE PRODUCED.

25       IN FACT, IN THEIR BRIEF, I THINK THEY SAY 'THE               02:06

EXHIBIT 1

PAGE 257

1    PROBLEM WITH THIS IS WE WOULD JUST BE PRODUCING ONE OR TWO

2    LINES FROM A DOCUMENT,' AND OUR RESPONSE IS 'THAT'S WHAT WE

3    WANT.'

4             **THE COURT:**  RIGHT.

5             THE THIRD CATEGORY, YOU TALK ABOUT THESE LICENSEES        02:06

6    AND THE OTHER DISTRIBUTORS.  THERE'S ONLY TWO IDENTIFIED.

7    BANDAI AND ACCLAIM GAMES; THOSE ARE THE TWO I'VE SEEN

8    IDENTIFIED.  YOU REFER TO BANDAI AND OTHERS; MGA COMES BACK AND

9    SAYS BANDAI AND ACCLAIM GAMES.

10            YOUR REFRAIN IS THAT THE LEGAL INTERESTS NEED TO BE       02:07

11   IDENTICAL.  THE LAW SEEMS TO INDICATE THAT THEY NEED TO BE

12   IDENTICAL OR NEARLY IDENTICAL.  THERE SEEMS TO BE SOME DEGREE

13   OF FLEXIBILITY.  IT'S NOT ABSOLUTELY IDENTICAL.  AND THEN, OF

14   COURSE, THAT SECOND ELEMENT OF WORKING TOGETHER IN A COMMON

15   EFFORT.                                                           02:07

16            BUT PROVIDED COUNSEL IS REPRESENTING THAT THAT'S

17   PRECISELY WHAT IS GOING ON HERE.  I MEAN, I CAN CERTAINLY SEE

18   WHERE A MANUFACTURER AND A DISTRIBUTOR OR A LICENSEE DOES HAVE

19   A COMMON INTEREST AND SIMILAR OR NEARLY IDENTICAL LEGAL

20   INTERESTS IN ENSURING THAT WHATEVER IT IS THAT IS BEING SOLD TO   02:07

21   THE CONSUMERS IS PROTECTED BY AN APPROPRIATE TRADEMARK AND/OR

22   COPYRIGHT SO THAT SOMEBODY ELSE, SOME OTHER MANUFACTURER AND/OR

23   DISTRIBUTOR AREN'T OUT THERE RIPPING THEM OFF.

24            **MR. OLIVAR:**  I THINK COUNSEL IS ARGUING THAT THE

25   LEGAL TEST IS MET BUT IS NOT PRESENTING ANY EVIDENCE THAT IT'S    02:08

1  MET.

2       **THE COURT:** WHAT KIND OF EVIDENCE ARE YOU LOOKING

3  FOR? THAT'S SOMETHING ELSE YOU SAY AS WELL, BUT I AM NOT SURE

4  WHAT YOU ARE LOOKING FOR.

5       **MR. OLIVAR:** SOME TESTIMONY FROM A PERCIPIENT WITNESS   02:08

6  THAT BANDAI AND ACCLAIM GAMES HAVE AN IDENTICAL LEGAL ISSUE; IT

7  PUTS IT CLOSE TO IDENTICAL WITH MGA IN DEFENDING AGAINST THE

8  CLAIMS OF THIS LAWSUIT.

9       **THE COURT:** SO YOU'RE LOOKING FOR A DECLARATION OR

10  SOMETHING TO THAT EFFECT.   02:08

11       **MR. OLIVAR:** WE HAVE THAT, BUT IT REALLY SAYS NOTHING

12  AT ALL. IT SAYS WE WORK WITH BANDAI CLOSELY, THEY HAVE VARIOUS

13  ROLES, THEY HAVE INTERESTS IN THE SALE OF BRATZ. WE ACCEPT

14  THEY HAVE ECONOMIC INTERESTS AS A LICENSEE. BUT THE CASE LAW

15  IS CLEAR THAT JUST BECAUSE SOMEONE IS INTERESTED IN THE SALES   02:08

16  OF BRATZ CONTINUING IN A COMMERCIAL SENSE, THAT DOES NOT COUNT

17  AS AN IDENTICAL OR MERELY AN IDENTICAL LEGAL INTEREST.

18       THERE'S NO EVIDENCE THAT BANDAI HAS BEEN WORKING WITH

19  MGA ON A COORDINATED LEGAL STRATEGY OR THAT ANY OF THESE

20  DOCUMENTS IN ANY WAY FIT INTO THAT STRATEGY. THEY JUST HAVE   02:09

21  DOCUMENTS INVOLVING PRODUCT SALES OR INVOICES OR TRADEMARKS AND

22  THEY SAY PURSUANT TO COMMON INTEREST, AND THERE'S NO EVIDENCE

23  TO SATISFY ANY OF THE LEGAL TESTS AS TO THESE DOCUMENTS.

24       THE ONE DECLARATION THEY PUT IN, MR. KHARI, SAYS

25  NOTHING THAT WOULD SATISFY THE LEGAL TESTS.   02:09

EXHIBIT _11_

PAGE _26_

1    SO THAT ONE I THINK IS SUSCEPTIBLE TO A CLEAR RULING.

2  WE HIT A STONE WALL DURING MEET AND CONFER TRYING TO GET

3  PRODUCTION OF THOSE DOCUMENTS.

4        **THE COURT:**  VERY GOOD.

5        MR. ALLAN, LET ME HEAR FROM YOU ON THIS.                    02:09

6        **MR. ALLAN:**  GOOD AFTERNOON, YOUR HONOR.

7        JOSE ALLAN.  I'M FROM THE SKADDEN ARPS OFFICE IN SAN

8  FRANCISCO.

9        **THE COURT:**  WELCOME, COUNSEL.

10       **MR. ALLAN:**  I'VE SPENT QUITE A BIT OF TIME FOCUSED     02:10

11 JUST ON THESE PRIVILEGED LOG ISSUES, YOUR HONOR, AND THEY DO

12 BREAK DOWN INTO THREE GENERAL CATEGORIES; THOSE THAT THE CLAIM

13 IS MADE THAT THIS JUST REFLECTS COMMUNICATIONS AMONG IN-HOUSE

14 PERSONNEL AND NO LAWYER IS INVOLVED; THE SO-CALLED TRADEMARK

15 SEARCH RESULTS; AND THEN THE THIRD-PARTY COMMUNICATIONS.       02:10

16       LET'S DEAL WITH THE FIRST CATEGORY FIRST, BECAUSE I

17 HAVE HAD QUITE EXTENSIVE COMMUNICATIONS WITH THE QUINN FIRM

18 CONCERNING THE NATURE OF THE DOCUMENTS.

19       WHEN THIS ISSUE FIRST CAME UP, WE WENT BACK THROUGH

20 THE PRIVILEGED LOGS AND IDENTIFIED THE DOCUMENTS WHICH WE      02:10

21 BELIEVED COULD BE REDACTED AND PRODUCED IN PART WHERE THERE WAS

22 NONPRIVILEGED COMMUNICATIONS INVOLVED.  THE DOCUMENTS THAT

23 REMAINED ON THE LOG WERE DOCUMENTS IN WHICH INTERNAL MGA

24 PERSONNEL WERE DISCUSSING ADVICE RECEIVED FROM COUNSEL

25 CONCERNING A BROAD ARRAY OF MATTERS.  THOSE ARE THE DOCUMENTS  02:11

EXHIBIT __11__

PAGE __262__

28

```
 1   THAT WE'VE TOLD THEM WE HAVE DECIDED SHOULD NOT BE PRODUCED.

 2   THEY WERE NOT SUSCEPTIBLE OF BEING PRODUCED IN REDACTED FORM.

 3   BUT WE COMMITTED AND WE DID GO THROUGH AND REVIEW EVERY

 4   DOCUMENT THAT THEY IDENTIFIED IN THEIR LETTER THAT THEY HAD

 5   RAISED A QUESTION ABOUT, AND WE ASSURED OURSELVES THAT THE ONES    02:11

 6   THAT WERE NOT BEING PRODUCED IN REDACTED FORM WERE

 7   APPROPRIATELY WITHHELD ON THE GROUNDS OF PRIVILEGED LOGS.

 8            THE COURT:  LET ME STOP YOU THERE.

 9            CAN YOU REPRESENT THEN TO THE COURT YOU'VE DONE THAT

10   FOR NOT ONLY THE ONES THEY HAVE RAISED PERHAPS IN A LETTER OR     02:11

11   YOUR COMMUNICATIONS, BUT ALL OF THE ONES IDENTIFIED IN THIS

12   FIRST MOTION?

13            MR. ALLAN:  YES.

14            ONE OF THE PROBLEMS IS WE'VE HAD A MOVING TARGET

15   HERE.  I SAID, 'LOOK, I'M GOING TO GIVE YOU A REVISED LOG WHICH   02:11

16   IDENTIFIES DOCUMENTS WHICH HAVE BEEN PRODUCED IN REDACTED FORM

17   AND DOCUMENTS WHICH HAVE BEEN WITHHELD IN PART.'

18            THE COURT:  VERY WELL.

19            MR. ALLAN:  WE GAVE THEM THOSE LOGS.  AND I SAID,

20   'LOOK, ONCE YOU GET THOSE LOGS, I'D LIKE YOU TO GO THROUGH        02:12

21   THOSE NEW REVISED LOGS AND TELL ME WHICH DOCUMENTS YOU STILL

22   HAVE A PROBLEM WITH, THAT YOU'VE GOT SOME CONCERNS ABOUT.'

23            I GOT THAT LETTER.  I WENT BACK AND WENT THROUGH

24   THOSE DOCUMENTS AND WE IDENTIFIED THE ONES THAT WE BELIEVED ARE

25   APPROPRIATELY WITHHELD IN WHOLE; SO WE'VE BEEN THROUGH THAT       02:12
```

1  EXERCISE.

2      **THE COURT:**  WHAT ABOUT THE TRADEMARK SEARCH RESULTS

3  AND REQUESTS?

4      **MR. ALLAN:**  YOUR HONOR, YOU HIT THE NAIL RIGHT ON THE

5  HEAD WITH REGARD TO THE TRADEMARK SEARCH RESULTS.  WE HAVE NOT

6  WITHHELD FROM PRODUCTION DOCUMENTS WHERE SOMEBODY DID A

7  TRADEMARK SEARCH RESULT AND GOT A PRINTOUT BACK IDENTIFYING

8  WHAT OTHER MARKS WERE OUT THERE.

9      WHAT WE HAVE WITHHELD ARE DOCUMENTS IN WHICH COUNSEL

10  FOR MGA HAS SAID, 'LOOK, I'VE CONDUCTED A TRADEMARK SEARCH

11  RESULT AND THIS IS WHAT I DISCOVERED AND HERE'S MY ADVICE TO

12  YOU AS TO WHAT YOUR NEXT STEPS OUGHT TO BE.'

13      NOW, MR. OLIVAR HAS AGREED THAT THOSE TYPES OF

14  COMMUNICATIONS WOULD BE PRIVILEGED AND THAT THEY ARE NOT

15  SEEKING PRODUCTION OF THAT TYPE OF COMMUNICATIONS.

16      **THE COURT:**  LET ME STOP YOU THERE.

17      I DON'T KNOW WHETHER HE DOES OR NOT.  I DON'T KNOW IF

18  I AGREE.

19      THE FIRST SENTENCE THAT YOU SAID THERE, IN YOUR

20  HYPOTHETICAL LETTER, 'I HAVE CONDUCTED A TRADEMARK SEARCH AND

21  THIS IS MY ADVICE TO YOU,' I AGREE THAT EVERYTHING AFTER 'THIS

22  IS MY ADVICE TO YOU...' IS REDACTED AND PROTECTED BY PRIVILEGE.

23  BUT THE FACT HE CONDUCTED OR SHE CONDUCTED A TRADEMARK SEARCH

24  RESULT, THAT FIRST PORTION, THAT IS NOT PROTECTED, UNDER MY

25  READING OF THE LAW.

1    **MR. ALLAN:**  I UNDERSTAND THAT, YOUR HONOR.

2         BUT WE HAVE THE PRIVILEGED LOG THAT IDENTIFIES THE

3    SENDER OF THE LETTER, THE RECIPIENT OF THE LETTER, AND THAT IT

4    RELATES TO A TRADEMARK SEARCH OR COPYRIGHT MATTER.

5         **THE COURT:**  BUT COUNSEL POINTS IN HIS BRIEF THAT YOU    02:14

6    DON'T SPECIFY WHICH TRADEMARK SEARCH RESULTS YOU'RE REFERRING

7    TO.

8         IS THAT CORRECT?

9         **MR. ALLAN:**  THAT'S CORRECT.  WE DO NOT, IN ALL

10   INSTANCES, SPECIFY WHAT TRADEMARKS -- BECAUSE, YOUR HONOR, IT'S   02:14

11   A COMMUNICATION THAT'S PRIVILEGED.  WHAT WE WOULD END UP WITH

12   IS A LETTER THAT HAS AN ADDRESSEE ON IT, A DATE, AND A RE:

13   LINE, AND THEN THE ENTIRETY OF THE DOCUMENT IS REDACTED FROM

14   THERE ON OUT.

15        OUR SUBMISSION HAS BEEN, GIVEN THE DEMANDS OF THIS    02:14

16   CASE -- WE JUST DON'T SEE HOW THAT INFORMATION PROVIDES

17   ANYTHING OF BENEFIT TO MATTEL.  AND WE NOTE THAT MATTEL

18   CERTAINLY HAS NOT DONE THAT WITH RESPECT TO THE DOCUMENTS THEY

19   HAVE GIVEN US.  AND WE'RE NOT AWARE OF ANY CASE LAW THAT SAYS

20   THAT'S THE WAY YOU PARSE THROUGH THE REDACTIONS WHERE IT'S THE   02:15

21   DATE OF THE RECIPIENT, WHICH IS ALREADY ON THE PRIVILEGED LOGS,

22   THE RE:  LINE, AND THEN REMAINDER OF THE DOCUMENT IS THEN

23   REDACTED.

24        **THE COURT:**  THE CONCERN I THINK IS IN PART THAT

25   MATTEL DOES NOT HAVE A FULL ACCOUNTING FOR ALL OF THE TRADEMARK  02:15

EXHIBIT 11
PAGE 265

1   SEARCH RESULTS THAT WERE DONE.

2           CAN YOU REPRESENT THAT IN ONE FORM -- I AM NOT

3   INTERESTED, AND I DON'T THINK MATTEL'S INTERESTED AT THIS

4   POINT, IN CUMULATIVE EVIDENCE.  BUT THE CONCERN IS, ARE THERE

5   ANY SEARCHES THAT MAY HAVE BEEN DONE OR SEARCH RESULTS RECEIVED          02:15

6   THAT ARE NOT OTHERWISE ACCOUNTED FOR IN EVIDENCE THAT YOU HAVE

7   PRODUCED?

8           AND IF YOU'RE NOT SURE, JUST TELL ME THAT.

9           MR. ALLAN:  I HAVE A PRETTY GOOD IDEA, BUT I DON'T

10  WANT TO MAKE A REPRESENTATION ON THE RECORD NOW UNTIL I'M              02:15

11  ABSOLUTELY SURE OF THAT.

12          BUT ONE OF THE THINGS THAT I DID RAISE HERE IS A WAY

13  OF TRYING TO NARROW THE NUMBER OF DOCUMENTS IN PLAY, BECAUSE

14  WE'VE GOT ABOUT 1,500 DOCUMENTS THAT ARE THE SUBJECT OF

15  QUESTION, WAS TO SEE IF WE COULD BRING OUR FOCUS DOWN TO THE           02:16

16  ONES THAT WERE RELEVANT TO PHASE 1-A AND LOOK AT THE DOCUMENTS

17  FROM THAT STANDPOINT AND SAY, OKAY, ARE THERE ANY PHASE 1-A

18  DOCUMENTS ON THE LIST THAT YOU HAVE RAISED THAT WE REALLY NEED

19  TO FIGHT OVER?

20          BUT I CANNOT SAY FOR CERTAIN, AS I STAND HERE TODAY,           02:16

21  YOUR HONOR, WHETHER THOSE RELATE ONLY TO THE MARKS THAT HAVE

22  BEEN AT ISSUE.

23          THE COURT:  VERY GOOD.

24          MR. ALLAN:  I KNOW SOME OF THEM DO NOT.  THEY HAVE

25  NOTHING TO DO WITH THE ISSUES IN THE CASE.  THEY RELATE TO            02:16

32

```
 1   OTHER PRODUCTS.  ONE OF THE REASONS WE ENDED UP WITH 10,000
 2   DOCUMENTS ON THE LOG IS WE GOT A VERY BROAD DISCOVERY REQUEST
 3   THAT SAYS 'PRODUCE EVERYTHING REFERING AND RELATING, MENTIONING
 4   BRATZ'; SO YOU NOW, BY DEFINITION, END UP WITH A VERY, VERY
 5   BROAD SWEEP OF DOCUMENTS.  NOW YOU'VE GOT TO CULL THROUGH FOR      02:17
 6   PRIVILEGE, AND YOU END UP WITH A LOT OF PRIVILEGED DOCUMENTS
 7   THAT HAVE NOTHING TO DO WITH PHASE 1-B OR PHASE 2.  THEY HAVE
 8   NOTHING TO DO WITH THE LAWSUIT.
 9          THE COURT:  THANK YOU.  VERY WELL.
10          I'D LIKE TO HEAR FROM YOU ON THE COMMON INTEREST          02:17
11   PRIVILEGE.
12          THE CONCERN THE COURT HAS HERE IS THAT MY
13   UNDERSTANDING OF THE COMMON INTEREST PRIVILEGE IS THAT, FIRST
14   OF ALL, THE PARTIES MUST HAVE AN ORDINARILY IDENTICAL EQUAL
15   INTERESTS AND, SECOND, COMMUNICATION MUST BE PART OF A            02:17
16   COORDINATED LEGAL STRATEGY.
17          THE CONCERN COUNSEL RAISES -- AND I THINK THIS MAY BE
18   WELL FOUNDED TO A CERTAIN EXTENT -- IS THAT THE EVIDENCE THAT
19   YOU HAVE SUBMITTED, THE DECLARATIONS, DOESN'T REALLY CAPTURE
20   THOSE ELEMENTS OR FULLY CAPTURE THOSE ELEMENTS.  I WANT TO MAKE   02:18
21   SURE ANYTHING THAT'S BEING WITHHELD ON A COMMON INTEREST
22   EXCEPTION TO THE ATTORNEY-CLIENT PRIVILEGE IS SOMEHOW BEEN
23   EVALUATED WITH THAT STANDARD IN MIND.
24          MR. ALLAN:  IT HAS BEEN, YOUR HONOR.
25          THIS WAS ANOTHER INSTANCE IN WHICH -- WE REFER TO         02:18
```

EXHIBIT ___1(___
PAGE___267___

1   THEM AS THE BANDAI DOCUMENTS BECAUSE BANDAI REPRESENTS THE

2   OVERWHELMING NUMBER OF DOCUMENTS THAT FALL INTO THIS CATEGORY.

3         THE BANDAI DOCUMENTS, WE WENT BACK THROUGH AFTER

4   THOSE WERE RAISED AS AN ISSUE, AND WE TOOK ANOTHER LOOK AT THEM

5   AND WE MADE SURE -- MGA HAS A NUMBER OF DIFFERENT RELATIONSHIPS        02:18

6   WITH BANDAI.  ONE RELATIONSHIP IS CLEARLY AS A DISTRIBUTOR.  SO

7   WITH RESPECT TO ORDERING INFORMATION, INVOICING, SHIPPING, THAT

8   KIND OF STUFF, WE ACKNOWLEDGE THAT'S NOT PRIVILEGED, AND THAT

9   WAS PRODUCED.  THAT'S NOT THE ISSUE.

10         BANDAI HAS ALSO ASSISTED MGA IN A NUMBER OF TRADEMARK        02:18

11   AND INTELLECTUAL PROPERTY MATTERS.  IT HAS HELPED MGA SECURE

12   COUNSEL IN FOREIGN COUNTRIES TO PROVIDE ADVICE WITH RESPECT TO

13   THE REGISTRATION OF A TRADEMARK; IT'S BEEN THE LIAISON IN MANY

14   INSTANCES BETWEEN THE LOCAL COUNSEL AND MGA WITH RESPECT TO

15   THOSE TRADEMARK MATTERS.        02:19

16         THE OTHER CATEGORY OF WORK THAT BANDAI HAS PERFORMED

17   IS IN ASSISTING MGA IN IDENTIFYING OTHER COMPANIES THAT HAVE

18   BEEN INFRINGING ON MGA'S MARKS, WHERE THERE'S BEEN LITIGATION

19   OR BANDAI HAS SAID, LOOK, YOU OUGHT TO KNOW THAT THERE'S

20   ANOTHER COMPANY THAT'S SELLING A VERY SIMILAR PRODUCT, AND MGA        02:19

21   IS SAYING BACK WELL, 'GEE, CAN YOU GET THAT FOR US AND HELP

22   WITH THAT EFFORT?'

23         THOSE ARE THE TWO --

24         **THE COURT:**  CAN YOU, MR. ALLAN, REPRESENT TO THE

25   COURT THAT ALL OF THE DOCUMENTS IDENTIFIED BY MATTEL FALL INTO        02:20

EXHIBIT __11__

PAGE __268__

34

```
1    ONE OF THOSE TWO CATEGORIES?  THAT ALL OF THE DOCUMENTS THAT
2    HAVE NOT BEEN BASED ON THIS COMMON INTEREST PRIVILEGE FALL INTO
3    ONE OF THOSE TWO CATEGORIES?
4         MR. ALLAN:  YES, YOUR HONOR.  AND I'LL DO YOU ONE
5    BETTER AND I'LL GO BACK AND DOUBLE CONFIRM THAT.  BUT THAT HAS     02:20
6    BEEN THE STANDARD THAT WE USED.
7         THE COURT:  VERY WELL.  THANK YOU, COUNSEL.
8         I'D LIKE TO HEAR FROM MATTEL ON THE SECOND ISSUE, AND
9    THAT'S ON MY CONCERN ABOUT CUMULATIVE EVIDENCE.  BECAUSE,
10   CERTAINLY, IF THERE WAS A TRADEMARK SEARCH OR IF MGA RECEIVED A   02:20
11   TRADEMARK SEARCH RESULT, WE DON'T NEED FIVE DOCUMENTS REFERRING
12   TO THAT PARTICULAR SEARCH OR THAT PARTICULAR SEARCH RESULT,
13   PROVIDED THAT YOU HAVE IT.
14        WOULD YOU AGREE?
15        MR. OLIVAR:  THIS WAS A MOTION ABOUT DOCUMENTS            02:20
16   CLAIMED TO BE PRIVILEGE.  THE ARGUMENT IS NOW THEY ARE NOT
17   PRIVILEGED, BUT WE DON'T NEED WHAT WE'RE SEEKING.
18        THE COURT:  I UNDERSTAND THAT, BELIEVE ME.
19        MR. OLIVAR:  TAKING COUNSEL'S REPRESENTATION THEY MAY
20   NOT BE PRIVILEGED -- YES, WE DO NEED THE INFORMATION WE'RE       02:21
21   SEEKING AS TO FIRST USES OF BRATZ AND OTHER TRADEMARKS.
22        THE COURT:  FAIR ENOUGH.
23        MR. OLIVAR:  THIS IS WHAT I DISCOVERED, COUNSEL IS
24   SAYING; THAT'S NOT PRIVILEGED ON A TRADEMARK SEARCH.
25        THE COURT:  I AGREE.                                       02:21
```

EXHIBIT 11

PAGE 269

1        IS THERE A CUMULATIVE DIMENSION?  DOES THERE COME A

2    POINT WHEN IT BECOMES OBVIOUS THAT --

3          **MR. OLIVAR:**  YOU HAVE TO SEE THE DOCUMENTS.

4        WITH ALL DUE RESPECT, WE DON'T ACCEPT MGA'S

5    REPRESENTATION THAT THERE IS NOTHING OF BENEFIT TO US IN THESE      02:21

6    DOCUMENTS.  I DON'T THINK IN THIS CASE WE OUGHT TO HAVE TO

7    ACCEPT THAT.

8        ONE FINAL THING, MR. ALLAN MADE REPRESENTATIONS ON

9    ONE AND THREE.  THERE ARE SOME DOCUMENTS THAT WE THINK ARE SO

10    CRITICAL THAT WE DON'T WANT TO TAKE COUNSEL'S REPRESENTATION IN    02:21

11    COURT THAT THEY ARE NOT PRIVILEGED.  WE WOULD SUBMIT A SMALL

12    NUMBER TO YOUR HONOR, LESS THAN 50, IN THE CRITICAL TIME

13    PERIOD, SUCH AS THE CONSULTING AGREEMENT IN AUGUST OF 2000 BY A

14    NONLAWYER THAT THEY SAY IS PRIVILEGED, FOR SOME REASON, FOR

15    YOUR HONOR'S REVIEW.  WE REQUESTED THE ABILITY TO DO THAT, LESS    02:22

16    THAN 50 DOCUMENTS, SO WE DON'T HAVE TO ACCEPT COUNSEL'S

17    REPRESENTATION THAT LOG ENTRIES THAT APPEAR TO BE IMPROPER ARE

18    REALLY PRIVILEGED.

19        WITH THAT, I'LL SUBMIT, YOUR HONOR.

20          **THE COURT:**  ALL RIGHT.                                   02:22

21        THE COURT IS GOING TO GRANT IN PART AND DENY IN PART

22    ALL THREE OF THESE MOTIONS.

23        I'M GOING TO DENY THE FIRST MOTION, BASED ON THE

24    REPRESENTATIONS MADE BY MR. ALLAN HERE BEFORE THE COURT TODAY

25    THAT ALL OF THE DOCUMENTS THAT HAVE BEEN REPRESENTED AS           02:22

EXHIBIT __(_
PAGE __270

1   COMMUNICATIONS BETWEEN NONLAWYERS ARE, IN FACT, PRIVILEGED AND

2   THAT MR. ALLAN HAS PERSONALLY ASSURED THE COURT THAT THOSE HAVE

3   BEEN REVIEWED AND, IN FACT, TO THE EXTENT THAT THEY ARE

4   PARTIALLY NONPRIVILEGED, THAT THEY HAVE BEEN PRODUCED IN

5   REDACTED FORM.  TO THE EXTENT THAT THEY HAVE NOT BEEN PRODUCED,    02:23

6   THAT IS BECAUSE THEY ARE FULLY PRIVILEGED.  HERE'S JUST SIMPLY

7   NOT A BASES FOR ANY PARTICULAR DOCUMENT OR ANY GROUP OF

8   DOCUMENTS FOR THE COURT TO ORDER A PRODUCTION AT THIS POINT.  I

9   DO ACCEPT MR. ALLAN'S REPRESENTATION.  SO THE FIRST MOTION I

10  WILL DENY; THAT'S THE MOTION TO COMPEL PRODUCTION OF PREVIOUSLY   02:23

11  WITHHELD DOCUMENTS, ONLY PORTIONS OF WHICH ARE ALLEGEDLY

12  PRIVILEGED.

13        WITH RESPECT TO THE SECOND MOTION IN THIS GROUPING

14  RELATED TO THE TRADEMARK SEARCH RESULTS, I'M GOING TO GRANT

15  THIS IN PART BY ORDERING THAT ALL DOCUMENTS WHICH REVEAL         02:23

16  TRADEMARK SEARCH RESULTS AND REQUESTS AND/OR TRADEMARK DATES OF

17  FIRST USE BE PRODUCED SUBJECT TO REDACTION FOR ANY PRIVILEGED

18  COMMUNICATIONS.

19        SO IF THE DOCUMENT MAKES A REFERENCE, TO USE AN

20  EXAMPLE, LIKE MR. ALLAN USED -- I CONDUCTED A TRADEMARK SEARCH   02:24

21  ON SUCH AND SUCH A DATE, THIS IS MY ADVICE; THE FORMER PART

22  WOULD BE PRODUCED, THE LATTER PART WOULD BE REDACTED.

23        WITH RESPECT TO THE THIRD MOTION CONCERNING THE

24  SO-CALLED BANDAI DOCUMENTS, THIS IS THE COMMON INTEREST

25  PRIVILEGE, THE COURT IS SETTING FORTH ITS FINDINGS AND ITS       02:24

1   LEGAL CONCLUSIONS THAT THE COMMON INTEREST PRIVILEGE ATTACHES

2   ONLY WHERE THE PARTIES SHARE IDENTICAL OR NEARLY IDENTICAL

3   LEGAL INTERESTS; AND TWO, THE COMMUNICATIONS ARE MADE AS PART

4   OF A COORDINATED LEGAL STRATEGY.

5           I'M CONFIDENT IN MR. ALLAN'S EXPLANATION OF HIS          02:24

6   REVIEW, BUT I AM GOING TO REQUIRE THAT BASED ON SOME DEGREE OF

7   UNCERTAINTY OR A DESIRE TO DOUBLE CHECK, THAT HE MAKE A

8   COMPREHENSIVE REVIEW OF THE SO-CALLED BANDAI DOCUMENTS AND THAT

9   IS TO INCLUDE THE ACCLAIM GAME OR ANY OTHER THIRD-PARTY TO

10  WHICH THESE DOCUMENTS WERE DISCLOSED, AND SUBMIT APPROPRIATE      02:25

11  EVIDENCE TO THE COURT IN THE FORM OF A SWORN DECLARATION OF THE

12  REVIEW THAT WAS MADE, WHAT WAS DONE TO ENSURE THOSE HAVE BEEN

13  PROPERLY DESIGNATED ON THE PRIVILEGED LOGS.

14          MR. ALLAN:  ONE INQUIRY WITH REGARD TO THE SECOND

15  MOTION, AND THAT IS, WOULD THE COURT CONSIDER A DATE LIMITATION   02:25

16  WITH RESPECT TO THOSE TRADEMARK SEARCH RESULTS?  BECAUSE THERE

17  ARE A NUMBER OF DOCUMENTS THAT ARE 2002, 2003, WELL BEYOND THE

18  PERIOD THAT THEY WOULD REALLY HAVE ANY BEARING ON THE ISSUES

19  THAT ARE TEED UP FOR PHASE 1-A.

20          THE COURT:  COUNSEL?                                      02:26

21          MR. OLIVAR:  FIRST DATES OF FIRST USE ARE CRITICAL NO

22  MATTER WHEN THEY APPEAR.  IF IT'S A 2004 SEARCH FOR BRATZ, AND

23  IT'S REPRESENTED TO THE LAWYER BRATZ WAS FIRST USED IN AUGUST

24  OF 2000, THAT'S A DOCUMENT WE WANT; AT LEAST THE PART ABOUT THE

25  DATE OF FIRST USE.                                               02:26

EXHIBIT ___11___

PAGE ___272___

38

1          THE COURT:  WHAT ABOUT THE TRADEMARK SEARCH RESULTS?

2          MR. OLIVAR:  I WOULD DEFER TO MY CO-COUNSEL ON THAT

3  ONE.

4          MR. PROCTOR:  I THINK 2002 AND LATER DOCUMENTS

5  REGARDING TRADEMARK SEARCHES AND RESULTS MORE LIKELY GO TO 1-B   02:26

6  AS OPPOSED TO THE DATE OF FIRST USE, YOUR HONOR.

7          MR. OLIVAR:  GIVEN THAT WE'RE ONLY TALKING ABOUT SOME

8  ONE HUNDRED DOCUMENTS THAT HAVE BEEN LISTED FOR MANY MONTHS,

9  THE BURDEN IS NOT SO SEVERE ON MGA TO PRODUCE THE NONPRIVILEGED

10  MATERIAL.                                                       02:27

11          THE COURT:  MR. ALLAN, THE CONCERN I HAVE IS THAT I

12  CAN'T SEE THE RELEVANCE IN 1-B, AND WE'RE DECIDING THIS FOR

13  PURPOSES OF PHASE ONE IN ITS ENTIRETY.

14          MR. ALLAN:  YOUR HONOR, IF WE'RE ONLY TALKING ABOUT

15  ONE HUNDRED DOCUMENTS, I DON'T HAVE A CONCERN.  I DON'T HAVE    02:27

16  THE SAME CONCERN.

17          THE COURT:  YOU'RE NOT SURE HOW MANY DOCUMENTS WE'RE

18  TALKING ABOUT.

19          MR. ALLAN:  CORRECT, THAT MIGHT FIT INTO THAT

20  CATEGORY.                                                      02:27

21          THE COURT:  YOU SHOULD HAVE A BETTER IDEA THAN THEY

22  DO.

23          MR. ALLAN:  WELL, NO, BECAUSE THEY HAVE GONE THROUGH

24  THE PRIVILEGED LOGS AND HAVE SENT US LISTS IDENTIFYING

25  DOCUMENTS ON THE LOG THAT THEY HAVE A CONCERN ABOUT; SO THAT'S   02:27

MONDAY, JUNE 2, 2008                    MOTIONS HEARING

EXHIBIT __11__

PAGE __273__

1   THE NUMBERS THAT WE'VE BEEN DEALING WITH HERE.

2           THE COURT:   THE COURT'S ORDER IS GOING TO BE AS IT

3   WAS TENTATIVELY INDICATED.

4           MR. OLIVAR:   WITH RESPECT TO THE SUBMISSION OF

5   EVIDENCE, IS THAT SERVED ON US, OR CAN WE GET A DATE FOR THAT?   02:27

6   BECAUSE IT'S WITH RESPECT TO CATEGORY 3.

7           THE COURT:   I SAID WITHIN THREE DAYS ON THAT OTHER

8   ONE.

9           HOW MUCH TIME DO YOU NEED, MR. ALLAN?

10          KEEP IN MIND THAT MATTEL NEEDS THIS FOR THEIR CASE IN   02:28

11  PHASE 1-A, AND WE'RE ALREADY INTO THE TRIAL HERE; SO...

12          MR. ALLAN:   YOUR HONOR, COULD I SUGGEST A WEEK?

13          THE COURT:   COUNSEL?

14          MR. PROCTOR:   WE WILL LIKELY BE RESTING OUR CASE IN

15  APPROXIMATELY TWO WEEKS; THAT'S STARTING TO PUSH IT.   02:28

16          THE COURT:   A WEEK WOULD GO TO NEXT MONDAY.

17          LET'S SAY BY THE CLOSE OF BUSINESS ON FRIDAY; I'LL

18  GIVE YOU FIVE DAYS.

19          MR. ALLAN:   VERY WELL, YOUR HONOR.

20          MR. OLIVAR:   WILL WE BE ABLE TO SEE A COPY OF THAT   02:28

21  SUBMISSION, YOUR HONOR?

22          THE COURT:   OH, YES.   THAT'S PART OF THE RECORD; THAT

23  WILL BE FILED --

24          MR. OLIVAR:   THANK YOU, YOUR HONOR.

25          THE COURT -- AND SERVED ON THE COURT AND OPPOSING   02:28

EXHIBIT ___11___

PAGE ___274___

1  COUNSEL.

2          MOVING TO NUMBER FIVE, MATTEL'S MOTION TO COMPEL

3  PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD AS PRIVILEGED BY

4  MGA, LARIAN AND THIRD-PARTY DAVID ROSENBAUM.  THIS IS ANOTHER

5  ONE WHERE I'M GOING TO ASK FOR THE STATUS, BECAUSE THERE'S SOME    02:29

6  INDICATION IN THE PAPERS THIS HAS EVOLVED WITH TIME.

7          MR. PROCTOR:  FOR THAT LAST MOTION, IS THE CLOSE OF

8  BUSINESS FRIDAY ALSO THE DEADLINE FOR PRODUCTION OF THE ORDERED

9  DOCUMENTS?

10          THE COURT:  YES.    02:29

11          MR. PROCTOR:  THANK YOU.

12          THIS MOTION HAS EVOLVED, YOUR HONOR.  WE HAVE LISTED

13  ON PAGE 3 OF OUR REPLY TO MGA'S AMENDED OPPOSITION, WHICH IS

14  OUR SECOND REPLY ON THIS MOTION.

15          THE COURT:  YES; I HAVE THAT FLAGGED HERE.    02:29

16          MR. PROCTOR:  PAGE 3, THE BOTTOM, THOSE ARE THE

17  ENTRIES STILL AT ISSUE.  BASED ON MGA'S REPRESENTATIONS -- I,

18  OF COURSE, DON'T KNOW THIS TO BE TRUE, BUT BASED ON MGA'S

19  REPRESENTATION, I BELIEVE THESE ARE ALL EITHER THE SAME

20  DOCUMENT WITH DIFFERENT PAGES OR THEY ARE THE SAME SERIES OF    02:29

21  DOCUMENTS.

22          IT'S REALLY JUST ONE ISSUE PRESENTED BY THIS MOTION

23  RIGHT NOW.  IT'S AN INTERESTING ISSUE TO ME, IF I MAY SAY.

24          ANNE WONG, BRYANT'S COUNSEL, SENDS MR. ROSENBAUM A

25  RED LINE OF THE DRAFT CONTRACT BETWEEN MGA AND BRYANT.    02:30

EXHIBIT ____

PAGE ___275___

41

1   MR. ROSENBAUM READS IT, HAS SOME THOUGHTS, AND THEN JOTS THOSE

2   THOUGHTS DOWN, WHATEVER HE DOES, WRITES IN THE MARGINS, 'THIS

3   IS OKAY; THIS IS NOT OKAY,' WHATEVER HE WRITES.

4           **THE COURT:** AND YOUR ARGUMENT IS THAT HE'S ALREADY

5   TESTIFIED TO THIS IN HIS DEPOSITION.                                    02:30

6           **MR. PROCTOR:** OUR ARGUMENT IS THAT HIS THOUGHTS ABOUT

7   WHAT OPPOSING PARTIES IN CONTRACT NEGOTIATIONS SUBMITS TO HIM,

8   HIS THOUGHTS ABOUT THE NEGOTIATIONS AS REFLECTED IN HIS NOTES,

9   ARE NOT PRIVILEGE. AND THE EVIDENCE OF THAT, ASIDE FROM JUST

10  THE RULES OF PRIVILEGE, IS THE FACT THAT MGA DIDN'T INSTRUCT          02:30

11  HIM NOT TO ANSWER WHEN WE SAID, FOR EXAMPLE, "WHEN YOU GOT THE

12  SEPTEMBER 14TH FAX FROM MR. BRYANT, WHERE HE SAID 'I CAN'T LOOK

13  INTO THIS MORE WITHOUT RISKING SUSPICION,' WHAT DID YOU THINK

14  ABOUT THAT?" HE ANSWERED THAT QUESTION.

15          HIS THOUGHTS IN THAT CONTEXT ARE NOT PRIVILEGE.                02:30

16          **THE COURT:** WHY ARE HIS THOUGHTS RELEVANT?

17          I UNDERSTAND FOR DISCOVERY PURPOSES WHY YOU MIGHT

18  WANT THOSE. BUT NOW WE'RE IN TRIAL. I COULD IMAGINE THAT MGA

19  WILL MAKE THE OBJECTION THAT THOUGHTS OF COUNSEL THAT WERE NOT

20  COMMUNICATED, THAT WERE NOT ACTED UPON, ARE CALLING FOR             02:31

21  SPECULATION AND NOT ADMISSIBLE FOR THIS JURY TO CONSIDER.

22          **MR. PROCTOR:** IN TERMS OF ADMISSIBILITY, I THINK THAT

23  WOULD BE AN ERRONEOUS ARGUMENT.

24          **THE COURT:** WHY?

25          **MR. PROCTOR:** MR. ROSENBAUM IS THE LINCHPIN OF MGA'S       02:31

EXHIBIT ___

PAGE __ 276

42

1   GOOD FAITH DEFENSE.  MGA'S DEFENSE IS 'CARTER BRYANT MADE

2   REPRESENTATIONS TO ME, ISAAC LARIAN; I ASKED PEOPLE TO MAKE

3   SURE WHAT HE WAS SAYING WAS TRUE; WE CHECKED WITH

4   MR. ROSENBAUM, AND HE CHECKED WITH MS. WONG.'

5           THE COURT:  YOU'VE ANSWERED MY QUESTION; THIS GOES TO     02:31

6   THE GOOD FAITH; YOU MADE THAT ARGUMENT AS WELL.

7           ALL RIGHT.  LET ME HEAR FROM YOU, MR. RUSSEL.

8           MR. RUSSELL:  YOUR HONOR, IN THE INTEREST OF MAKING

9   THINGS EASY -- AND THIS IS A PROPOSAL WE'VE MADE MANY TIMES --

10  WE'RE PREPARED RIGHT NOW TO WAIVE THE PRIVILEGE WITH RESPECT TO   02:32

11  ALL DOCUMENTS ROSENBAUM PREPARED FROM WHEN HE WAS RETAINED TO

12  DRAFT THE CONTRACT THROUGH THE COMPLETION OF THAT DRAFTING.

13  BECAUSE THERE ARE TWO DIFFERENT DISCRETE CATEGORIES OF

14  DOCUMENTS.

15          MR. ROSENBAUM TESTIFIED -- AND WE CAN GET TO THAT --      02:32

16  HE TESTIFIED HE WAS RETAINED ESSENTIALLY IN THE MIDDLE OF

17  SEPTEMBER TO DRAFT A CONTRACT BETWEEN MGA AND BRYANT THAT TOOK

18  HIM A FEW WEEKS; AND THAT IS CATEGORY 1.

19          CATEGORY 2 ARE UNRELATED REPRESENTATIONS BY ROSENBAUM

20  OF MGA DRAFTING OTHER CONTRACTS, LICENSING AGREEMENTS,          02:32

21  NON-BRATZ RELATED OR VERY TANGENTIALLY RELATED BRATZ MATERIALS.

22          THE COURT:  IS THAT WHAT THEY ARE ASKING FOR HERE?

23  THEY ARE ASKING FOR ENTRY NUMBER 20 ON THE MGA LOG.  THAT'S NOT

24  THESE OTHER --

25          MR. RUSSELL:  IF I UNDERSTAND IT, I THOUGHT THEY WERE      02:33

MONDAY, JUNE 2, 2008                    MOTIONS HEARING

EXHIBIT  I'

PAGE  277

```
 1   ALSO ASKING FOR ENTRY 234 AND 235.

 2          THE COURT:  NO; THAT'S NO LONGER IN PLAY.

 3          MR. RUSSELL:  IN ANY EVENT, I'M STILL WILLING TO MAKE

 4   THE SAME POSITION.  THIS IS AN INTERESTING LEGAL ISSUE, BUT

 5   THIS IS NOT A CONCERN THAT WE HAVE.  WE'RE HAPPY TO TURN IT        02:33

 6   OVER, BUT WE DON'T WANT AN ARGUMENT THAT BY TURNING OVER

 7   EVERYTHING MR. ROSENBAUM HAD -- WE'RE PREPARED RIGHT NOW --

 8   EVERYTHING HE HAD FROM WHEN HE WAS RETAINED THROUGH WEEKS

 9   AFTER -- IF YOU WANT, WE CAN GO TO THE END OF 2000; MAKE IT

10   CLEAN -- WE'LL TURN EVERY SINGLE ONE OF THOSE DOCUMENTS OVER,      02:33

11   BECAUSE WE DON'T HAVE A CONCERN.

12          THE CONCERN HAS ALWAYS BEEN THERE WILL BE SOME

13   ARGUMENT THAT THAT'S BROADER THAN A WAIVER AS TO THAT

14   TRANSACTIONAL REPRESENTATION.

15          THE COURT:  YOU'RE CLEARLY ON THE RECORD OF THAT            02:33

16   LIMITATION.

17          COUNSEL, YOU'RE NOT SEEKING ANYTHING BEYOND THAT, ARE

18   YOU?

19          MR. PROCTOR:  MR. RUSSELL IS TAKING MGA'S FIFTH OR

20   SIXTH RUN AT A TRANSACTIONAL WAIVER.  OBVIOUSLY THERE'S SOME       02:34

21   COMMUNICATIONS OUT THERE, PRIVILEGED COMMUNICATIONS, WHICH THEY

22   WANT TO PRODUCE WITHOUT BEARING THE BURDEN OF PRODUCING SUBJECT

23   MATTER WAIVER COMMUNICATION.

24          WE'RE NOT ASKING FOR THEIR PRIVILEGED COMMUNICATIONS.

25   WE'RE ASKING FOR THE SPECIFIED DOCUMENTS HERE, WHICH DON'T        02:34
```

44

```
 1   APPEAR TO BE PRIVILEGED.

 2         THE COURT:  ENTRY 20 ON MGA LOG AND 18 ON THE

 3   ROSENBAUM LOG, I ASSUME, ARE THE SAME DOCUMENT.

 4         MR. RUSSELL:  THEY ARE.

 5         THE COURT:  IT'S THESE OTHER ENTRIES ON THE LARIAN'S      02:34

 6   PRIVILEGED LOG 864, 764, 887 THROUGH 891 INCLUSIVE, AND 1121

 7   THROUGH 1125, THEY RELATE TO THOSE SAME DOCUMENTS; CORRECT?

 8         MR. PROCTOR:  BASED ON THEIR PAPERS, I UNDERSTAND

 9   THESE ARE INDIVIDUAL PAGES FROM THE SAME DOCUMENTS.

10         THE COURT:  SAME DOCUMENT?                               02:34

11         MR. RUSSELL:  CORRECT.

12         THE COURT:  I'M GOING TO ORDER THAT BE TURNED OVER.

13         YOUR LIMITATION ON THE WAIVER, COUNSEL, IS NOTED FOR

14   THE RECORD.

15         MR. RUSSELL:  JUST TO MAKE ONE OTHER THING CLEAR,        02:34

16   WHICH IS, WE WERE MINDFUL OF YOUR HONOR'S PRIOR RULINGS AND

17   WHAT YOU SAID TO MR. ALLAN; THAT IS TO SAY, WE HAVE TAKEN A

18   SECOND LOOK AT THE DOCUMENTS AND WE WILL BE SUPPLEMENTING OUR

19   PRODUCTION WITH REDACTED VERSIONS OF SOME DOCUMENTS BASED ON

20   WHAT YOUR HONOR HAS RULED PREVIOUSLY.                         02:35

21         THE COURT:  LET'S MAKE SURE ALL THAT IS DONE AS WELL

22   AS THE PRODUCTION OF THESE DOCUMENTS WITHIN FIVE DAYS.

23         MR. RUSSELL:  NO PROBLEM, YOUR HONOR.

24         THE COURT:  VERY WELL.

25         NUMBER SIX WAS DEALT WITH.                               02:35
```

EXHIBIT ___11__

PAGE ___279__

```
 1              NUMBER SEVEN.  THIS IS FOR AN ORDER ENFORCING THE
 2   COURT'S JANUARY 25, 2007 ORDER COMPELLING BRYANT TO PRODUCE
 3   HARD DRIVES AND FOR SANCTIONS.
 4              WHAT IS THE STATUS OF PRODUCTION OF THESE HARD DRIVES
 5   AT THIS POINT?  I KNOW THERE'S THE THREE EARLIER HARD DRIVES,      02:35
 6   AND THEN THERE'S SOME ADDITIONAL ONES.
 7              MR. COREY?
 8              MR. COREY:  I CAN TELL YOU WHAT I UNDERSTAND THAT WE
 9   HAVE IMAGES OF THE DESK TOP AND THE LAPTOP MR. BRYANT USED UP
10   TO THE TIME THAT HE LEFT MATTEL AND SHORTLY RIGHT AFTER HE LEFT    02:35
11   MATTEL.  I UNDERSTAND THERE'S AN ADDITIONAL CATEGORY OF BOTH
12   IMAGES AND COMPUTERS OUT THERE THAT MATTEL DOES NOT HAVE.
13              THAT'S AS SIMPLE AS I CAN MAKE IT.
14              THE COURT:  COULD SOMEONE DESCRIBE THAT CATEGORY WITH
15   ANY GREATER SPECIFICITY?                                          02:36
16              MR. RUSSELL:  WHAT I WAS GOING TO SAY IS THIS IS A
17   MOTION UNIQUELY WELL SITUATED FOR, I THINK, THE KEKER FIRM TO
18   BE HERE.  INDEED, I ASKED MR. WERDEGAR TO SEND ME THE
19   CORRESPONDENCE BACK AND FORTH BETWEEN MR. PROCTOR AND HIMSELF.
20   HE PROVIDED TO ME REDACTED VERSIONS OF THAT COMMUNICATION.  I     02:36
21   THINK IT'S IMPORTANT, YOUR HONOR, PERHAPS, IF I MIGHT BE
22   PERMITTED TO LODGE IT WITH YOU.  BECAUSE MR. WERDEGAR, RIGHT IN
23   HIS E-MAIL, HE SAYS "MOREOVER, IN THE SETTLEMENT AGREEMENT
24   BETWEEN MATTEL AND MR. BRYANT, MATTEL EXPRESSLY...  IT'S
25   REDACTED.  MATTEL, THEREFORE, IS NOW BARRED BY THE SETTLEMENT     02:36
```

46

```
 1   AGREEMENT FROM PURSUING THE RULE 34 REQUESTS THAT ARE THE
 2   SUBJECT OF THE MOTION."
 3          THE COURT:  LET ME STOP YOU HERE.
 4          DOES MGA HAVE POSSESSION OF ANY OF THESE COMPUTERS?
 5          MR. RUSSELL:  NO.                                    02:37
 6          MR. COREY:  THEY DO NOT.  AND IF WE WANT TO WAIT TO
 7   RESOLVE THIS MOTION UNTIL MR. WERDEGAR CAN BE HERE, I'M MORE
 8   THAN HAPPY TO DO THAT.
 9          THERE WAS A SEPARATE ORDER IN WHICH MGA WAS
10   INSTRUCTED TO TURN OVER ANY HARD DRIVES THAT MR. BRYANT HAD   02:37
11   USED.  I UNDERSTAND THAT MGA DID NOT HAVE IN ITS POSSESSION
12   ANYTHING LIKE THAT.
13          THE COURT:  SO TO THE EXTENT THIS IS ISSUED TOWARDS
14   MGA, THE MOTION IS MOOT BASED ON THE REPRESENTATION OF
15   MR. RUSSEL THAT THEY DON'T HAVE ANYTHING.                    02:37
16          MR. COREY:  RIGHT.  THIS MOTION IS NOT DIRECTED TO
17   MGA AT ALL.
18          THE COURT:  SO WE NEED TO GET CARTER BRYANT'S COUNSEL
19   IN HERE.
20          MR. COREY:  I THINK THAT WOULD BE WISE, YOUR HONOR.   02:37
21          THE COURT:  BECAUSE AT THIS POINT, BASICALLY, THE
22   REQUEST WAS DIRECTED TOWARDS WHAT IS NOW A THIRD PARTY.
23          MR. COREY:  CORRECT.  WHICH BRINGS IN A SET OF
24   COMPLICATIONS WITH IT.
25          THE COURT:  YES.                                     02:37
```

1       LET'S PROVIDE NOTICE -- WHY DON'T WE HAVE A HEARING

2  AT 8:30 ON THURSDAY MORNING, RIGHT ALONG WITH THE OTHER MATTER,

3  IF NECESSARY.

4       **MR. RUSSELL:**  IF I MIGHT, IN LIGHT OF THE FACT

5  MR. BRYANT IS REFERENCING THE CONTENTS OF HIS SETTLEMENT    02:38

6  AGREEMENT AS THE BASIS FOR DENYING THE MOTION, HOW --

7       **THE COURT:**  DO YOU WANT TO RENEW YOUR REQUEST FOR A

8  COPY OF THE SETTLEMENT ORDER?

9       **MR. RUSSELL:**  YES.  BUT IF I'M NOT GOING TO GET IT,

10  I'M CURIOUS, HOW DO YOU WANT TO HANDLE THAT ARGUMENT WITH MGA   02:38

11  IN THE COURTROOM?

12       **THE COURT:**  I MAY HAVE TO DO A SEALED HEARING.  BUT

13  I'LL CROSS THAT BRIDGE WHEN I GET TO IT.

14       LET MR. NOLAN KNOW YOU MADE THE REQUEST AGAIN AND THE

15  COURT DENIED IT AGAIN.    02:38

16       **MR. RUSSELL:**  THANK YOU, YOUR HONOR.

17       **THE COURT:**  MOVING RIGHT ALONG.

18       MATTEL'S MOTION FOR REQUEST FOR ADMISSION.

19       AFTER REVIEWING THE DOCUMENTS, THE COURT'S TENTATIVE

20  IS AS FOLLOWS:  THE MOTION IS GRANTED WITH RESPECT TO RFA'S 36   02:38

21  THROUGH 39, INCLUSIVE.  IT IS DEFERRED WITH RESPECT TO NUMBERS

22  63, 66, AND 69 WHICH RELATE TO PHASE B, AND IT'S DENIED AS MOOT

23  IN ALL OTHER RESPECTS, EITHER BECAUSE THEY ARE RELATED TO

24  CARTER BRYANT OR BECAUSE THE COURT FINDS THAT THE SUPPLEMENTAL

25  RESPONSES ARE ADEQUATE.    02:39

1    THE COURT WILL HEAR FURTHER ARGUMENT, IF COUNSEL

2  WISHES.

3    MR. PROCTOR:  I HAVE VERY LITTLE TO SAY.

4    THE ONE QUESTION THAT I HAVE FOR THE COURT IS DENIED

5  AS MOOT BECAUSE IT RELATES TO CARTER BRYANT.                      02:39

6    CAN THE COURT GIVE SOME GUIDANCE AS TO THAT?

7    THE COURT:  SURE.  I'LL GIVE YOU THE NUMBERS.

8  ACTUALLY IT WAS MR. COREY, I BELIEVE, WHO IDENTIFIED THESE FOR

9  THE COURT THE OTHER DAY IN COURT.  THE CARTER BRYANT RESPONSES

10 WERE MOOT; THEY ARE IDENTIFIED IN THE PAPERS.  IF YOU TURN TO     02:40

11 YOUR MOTION PAGE 1, YOU BROKE IT DOWN INTO COMPELLING MGA

12 ENTERTAINMENT AND LARIAN TO PRODUCE RFA'S TO A NUMBER OF RFA'S,

13 5 THROUGH 8, 15 AND 16, 19 THROUGH 34, 36 THROUGH 39, 44

14 THROUGH 49, 52 THROUGH 59, 60, 63, 66, AND 69.

15    MR. PROCTOR:  I MAY HAVE MISUNDERSTOOD, YOUR HONOR.           02:40

16    IS YOUR ORDER SIMPLY THAT THE MOTION AS TO

17 CARTER BRYANT'S RESPONSE IS MOOT?

18    THE COURT:  RIGHT.  THAT'S MOOT, AS WELL AS I'M

19 GRANTING YOUR MOTION WITH RESPECT TO 36 THROUGH 39 AS DIRECTED

20 TO MGA.  I'M DEFERRING THE MOTION ON 63, 66, AND 69 AS RELATED    02:41

21 TO PHASE TWO.  AND THEN I'M DENYING IT WITH RESPECT TO THE

22 REMAINING ONES THAT YOU'VE ASKED VIS-À-VIS MGA FINDING THAT THE

23 SUPPLEMENTAL ANSWERS WERE GIVEN, ALTHOUGH PERHAPS UNTIMELY.

24    MR. PROCTOR:  THE ONLY ONES I'D ASK THE COURT TO

25 RECONSIDER ON ARE 29 TO 34, THE DAVID ROSENBAUM ONES.  FOR THE    02:41

MONDAY, JUNE 2, 2008                     MOTIONS HEARING

EXHIBIT  11

PAGE  285

49

```
 1    LIFE OF ME, I DON'T UNDERSTAND WHAT MGA MEANS BY THOSE
 2    RESPONSES.  MR. ROSENBAUM WAS MGA'S AGENT; HE IS AT THE
 3    LINCHPIN OF THEIR DEFENSE.  HE RECEIVES A FAX FROM
 4    CARTER BRYANT SAYING "I CAN'T LOOK INTO THIS ANYMORE, MY
 5    OBLIGATION IS TO MATTEL."                                          02:41
 6            THE COURT:  I AGREE THAT THEIR INITIAL RESPONSE WAS
 7    QUITE ENIGMATIC AND HARD TO UNDERSTAND.  THEY MAY NOT BE USING
 8    THE WORD THAT YOU WANT THEM TO USE, BUT I THINK THEY ARE
 9    EXPLAINING AND ADMITTING AND DENYING WHAT HIS ROLE IS.
10            MR. PROCTOR:  I'LL SUBMIT ON THAT.                         02:42
11            MR. RUSSELL:  WE'LL SUBMIT, YOUR HONOR.
12            THE COURT:  THAT WOULD BE THE ORDER OF THE COURT,
13    THEN.
14            WITH RESPECT TO NUMBER NINE, MATTEL'S MOTION TO
15    COMPEL THE RETURN OF PRIVILEGED DOCUMENT N 0074372, THIS IS        02:42
16    DÉJÀ VU ALL OVER AGAIN.
17            THE PARTIES ARE TAKING JUST THE OPPOSITE POSITION
18    THEY MADE JUST SHORTLY.
19            MY SENSE ON THIS IS THAT THE CLAWBACK WAS WAIVED WHEN
20    SO MUCH TIME PASSED AND NO MOTION WAS BROUGHT.  ALLEGEDLY, THIS    02:42
21    WAS USED IN TWO DIFFERENT DEPOSITIONS WITHOUT OBJECTION, AND
22    THAT'S EXACTLY THE BASIS THAT THE COURT RULED IN MATTEL'S FAVOR
23    LAST WEEK IN FINDING THAT DOCUMENTS THAT MGA WANTED TO HAVE
24    CLAWED BACK PURSUANT TO THE SAME PROTECTIVE ORDER, THE SAME
25    AGREEMENT, THAT THEY HAD WAIVED IT; SO OUT OF FAIRNESS, I CAN'T    02:42
```

EXHIBIT ll

PAGE 2 8 ll

| 1 | THINK OF ANY REASON WHY I SHOULD TREAT MATTEL ANY DIFFERENTLY |
|---|---|
| 2 | AT THIS POINT WHEN THEY ARE ON THE LOSING END OF THE DOCUMENT. |
| 3 | MR. OLIVAR: THERE ARE A COUPLE OF DIFFERENCES, YOUR |
| 4 | HONOR. IT'S NOT CORRECT TO SAY THERE WAS NO OBJECTION AT THE |
| 5 | DEPOSITIONS. |
| 6 | THE COURT: I DIDN'T SAY THERE WAS NO OBJECTION. |
| 7 | THERE WAS NO MOTION BROUGHT. |
| 8 | MR. OLIVAR: CORRECT. NO MOTION WAS BROUGHT. |
| 9 | THIS MOTION WAS BROUGHT, YOUR HONOR, BUT -- |
| 10 | THE COURT: BUT WAS THERE AN OBJECTION MADE DURING |
| 11 | THE DEPOSITION ITSELF? |
| 12 | MR. OLIVAR: MR. GORDON SAID 'EXCUSE ME, I THOUGHT |
| 13 | THIS OUGHT TO BE REDACTED,' AND THERE WAS A REPRESENTATION FROM |
| 14 | THE LAWYER THAT IT WAS UNTRUE, AND THEN THE DEPOSITION |
| 15 | PROCEEDED AND THERE WERE OBJECTIONS MADE, YES; THAT'S AT THE |
| 16 | SECOND OF THE TWO DEPOSITIONS. |
| 17 | THE COURT: MR. GORDON CERTAINLY KNOWS HOW TO |
| 18 | INSTRUCT THE WITNESS TO EXTRICATE A DOCUMENT THAT'S PRIVILEGED |
| 19 | FROM A DEPOSITION. |
| 20 | MR. OLIVAR: CORRECT, YOUR HONOR. |
| 21 | I THINK THE OBJECTIONS WERE -- |
| 22 | THE COURT: AS DOES MR. COREY. |
| 23 | MR. OLIVAR: I BELIEVE MR. GORDON WAS MISLEAD BY THE |
| 24 | SKADDEN ATTORNEY WHO REPRESENTED ON THE RECORD THAT IT WAS AN |
| 25 | ACCEPTABLE DOCUMENT TO QUESTION THE WITNESS ON. THERE WAS THAT |

02:43
02:43
02:43
02:43
02:43
02:43

MONDAY, JUNE 2, 2008

MOTIONS HEARING

EXHIBIT 11

PAGE 285

1  COLLOQUY -- AND YOUR HONOR HAS THE RECORD -- WHERE MR. GORDON

2  DID OBJECT.

3       SECOND, WITH RESPECT TO MGA, THE REASON NO MOTION WAS

4  BROUGHT WAS BECAUSE MGA TOLD MATTEL IT WOULD GO THROUGH ITS

5  FILES AND GIVE EVERYTHING BACK.  IT SAID WE ARE SEARCHING OUR          02:44

6  FILES TO RETRIEVE ALL COPIES; SO MGA AGREED IT WAS GOING TO

7  COMPLY WITH THE ORDER.

8       **THE COURT:**  WAS THAT IN JULY?

9       **MR. OLIVAR:**  YES.  THAT WHAT WAS WHEN THE REQUEST WAS

10  MADE, IN JULY.                                                        02:44

11       **THE COURT:**  WELL, NOW WE'RE FAST FORWARDED TO THE

12  DEPOSITIONS IN DECEMBER AND JANUARY, AND THE DOCUMENT IS STILL

13  FLOATING AROUND OUT THERE.  OBVIOUSLY, THEY DIDN'T DO IT.

14       **MR. OLIVAR:**  YES.  THAT'S WHY THIS MOTION WAS

15  BROUGHT.                                                              02:44

16       **THE COURT:**  THE MOTION WASN'T BROUGHT UNTIL WELL

17  AFTER THAT.  WHEN WAS THE MOTION BROUGHT?

18       **MR. OLIVAR:**  FEBRUARY 28TH.

19       **THE COURT:**  MARCH; RIGHT?

20       **MR. OLIVAR:**  I THOUGHT IT WAS END OF FEBRUARY;               02:45

21  FEBRUARY 28, 2008.

22       **THE COURT:**  OKAY.

23       THAT'S PRETTY CLOSE TO MARCH.

24       I DON'T THINK THIS WAS TIMELY.  I THINK THIS SUFFERS

25  FROM THE SAME ISSUE THAT HAVE BEEN USED TO CLAW BACK -- THIS IS       02:45

| 1 | SOMETHING THAT IF THEY DIDN'T PROVIDE IT IN JULY, AS THEY | |
| 2 | SHOULD HAVE, AND THE FIRST TIME IT SHOWED UP IN A DEPOSITION -- | |
| 3 | AND PLEASE UNDERSTAND, I'M NOT FAULTING MR. GORDON OR MR. COREY | |
| 4 | OR ANYONE ELSE; THE AMOUNT OF VOLUME OF DOCUMENTS IN THIS CASE | |
| 5 | IS STAGGERING.  BUT I JUST HAVE TO, I THINK, APPLY THE SAME | 02:45 |
| 6 | PRINCIPALS ON BOTH SIDES.  I THINK THE SAME ARGUMENT COULD HAVE | |
| 7 | BEEN MADE BY MGA THAT, 'YEAH, WE DIDN'T OBJECT OR IT WAS USED | |
| 8 | IN DEPOSITION AND WE DIDN'T BRING A MOTION.  BUT, COME ON, | |
| 9 | THERE'S A HUGE AMOUNT OF DOCUMENTS.' | |
| 10 | I'M GOING TO DENY THE MOTION. | 02:45 |
| 11 | THE LAST MOTION HAS BEEN NARROWED TO BASICALLY AN | |
| 12 | APPLICATION FOR GUIDANCE AS TO EVIDENCE RECEIVED FROM | |
| 13 | ANA CABRERA. | |
| 14 | I'VE RECEIVED NO OPPOSITION TO THIS MOTION, OR | |
| 15 | APPLICATION, OR AT LEAST THERE'S NONE IN THE BINDER. | 02:46 |
| 16 | MY GENERAL GUIDANCE ON THIS, MY TENTATIVE THOUGHTS, | |
| 17 | AND I'LL HEAR FROM BOTH PARTIES IF THEY WANT, THESE RELATE TO | |
| 18 | THESE DOCUMENTS SEALED UP BY MATTEL AND MATTEL CAN CERTAINLY | |
| 19 | UNSEAL THEM; THEY CAN DO WHATEVER THEY WANT TO THEM.  BUT AS | |
| 20 | FAR AS THEIR ADMISSION, IT'S GOING TO BE SUBJECT TO FOUNDATION | 02:46 |
| 21 | AND SUBJECT TO AUTHENTICATION AND SUBJECT TO A CHAIN OF | |
| 22 | CUSTODY.  IF YOU CAN LAY THAT, THE DOCUMENTS WILL BE | |
| 23 | ADMISSIBLE.  BUT IF THE FOUNDATION AND AUTHENTICATION AND CHAIN | |
| 24 | OF CUSTODY IS NOT THERE, THEN THEY WON'T BE.  BUT SHORT OF | |
| 25 | GIVING YOU THE PARAMETERS THAT THE COURT WILL USE TO DETERMINE | 02:46 |

| | |
|---|---|
| 1 | THE ADMISSIBILITY, I THINK ANYTHING ELSE AT THIS POINT WOULD BE |
| 2 | AN ADVISORY OPINION. |
| 3 | MR. COREY:  THANK YOU, YOUR HONOR. |
| 4 | MR. RUSSELL:  WE'LL SUBMIT ON THAT. |
| 5 | THE COURT:  IT SOUNDS LIKE WE HAVE TO GIVE SOME |
| 6 | PEOPLE AN OPPORTUNITY TO SHOW UP ON THURSDAY MORNING AT 8:30 |
| 7 | AND THEN WE'LL THEN WRAP THAT UP. |
| 8 | MR. COREY, I'LL HEAR BACK FROM YOU CONCERNING |
| 9 | WEDNESDAY AFTERNOON, WHICH THE COURT WOULD PREFER TO HAVE DARK. |
| 10 | MR. PROCTOR:  A FEW MORE MATTERS, YOUR HONOR. |
| 11 | THE FIRST TWO ARE CLARIFICATIONS. |
| 12 | IN THE ORDER REGARDING THE FIRST MOTION, THE COURT |
| 13 | SPOKE IN TERMS OF A RESPONSE.  JUST FOR SCHEDULING PREPARATION, |
| 14 | DOES THE COURT CONTEMPLATE ARGUMENT ON THAT MOTION AT 8:30, OR |
| 15 | IS THE COURT SOLICITING A BRIEF FROM KEKER? |
| 16 | THE COURT:  IF SOMEONE WANTS TO SAY SOMETHING, I WILL |
| 17 | ALLOW THAT. |
| 18. | MR. PROCTOR:  THE SECOND ONE, I BELIEVE YOU GAVE MGA |
| 19 | FIVE DAYS TO PRODUCE THE ROSENBAUM DOCUMENTS.  THERE IS SOME |
| 20 | CHANCE, DEPENDING ON THE SPEED OF TESTIMONY, THAT WE WOULD BE |
| 21 | CALLING HIM TO THE STAND AT THE END OF THIS WEEK; I THINK IT'S |
| 22 | JUST ONE DOCUMENT OR TWO DOCUMENTS; SO IF WE COULD EXPEDITE |
| 23 | THAT. |
| 24 | THE COURT:  THAT SOUNDS REASONABLE. |
| 25 | MR. RUSSELL? |

02:46

02:47

02:47

02:47

02:48

54

| | |
|---|---|
| 1 | MR. RUSSELL: WE COULD DO IT IN 48 HOURS. |
| 2 | THE COURT: VERY WELL. LET'S DO THAT WITH THE |
| 3 | ROSENBAUM; THAT'S MOTION NUMBER FIVE. |
| 4 | MR. PROCTOR: CORRECT. |
| 5 | THE COURT: LET'S DO THAT WITHIN 48 HOURS, THEN. |
| 6 | MR. PROCTOR: THE THIRD, YOUR HONOR, IS SCHEDULING A |
| 7 | HEARING ON EVIDENCE ELIMINATOR, MOTION IN LIMINE STAGE. |
| 8 | THE COURT: RIGHT. THAT CAN BE TAKEN UP BEFORE THE |
| 9 | -- CARTER BRYANT, I ASSUME CARTER BRYANT IS THE NEXT ONE TO |
| 10 | COME IN. -- TRY TO HAVE HIM COME IN THROUGH -- |
| 11 | MR. PROCTOR: CORRECT, THROUGH HIM AND THE EXPERTS. |
| 12 | THE COURT: WHEN MIGHT MR. BRYANT TESTIFY? |
| 13 | MR. PROCTOR: LIKELY EARLY NEXT WEEK, WHICH IS WHY, |
| 14 | SUBJECT TO THE COURT'S CALENDAR, I WAS GOING TO SUGGEST MONDAY |
| 15 | AFTERNOON, IF THAT WORKED. |
| 16 | THE COURT: THAT SOUNDS GOOD, BECAUSE I WANT TO HEAR |
| 17 | FROM NOT ONLY CARTER BRYANT, BUT THE TESTIMONY FROM THE |
| 18 | EXPERTS. |
| 19 | MR. PROCTOR: DOES THE COURT HAVE ANY PREFERENCES |
| 20 | REGARDING READING REQUESTS FOR ADMISSION INTO THE RECORD? IF |
| 21 | WE WANT TO INTRODUCE MGA'S RESPONSE, SHOULD WE JUST READ IT IN |
| 22 | TO THE RECORD? |
| 23 | THE COURT: JUST READ IT. CLEAR IT WITH THE COURT |
| 24 | FIRST; MAKE SURE THAT MGA HAS A CHANCE TO REVIEW IT. BUT |
| 25 | SUBJECT TO THAT, THEY ARE JUST READ. |

02:48 (line 5)
02:48 (line 10)
02:48 (line 15)
02:49 (line 20)
02:49 (line 25)

55

1          MR. PROCTOR:  WE ARE PROBABLY TOMORROW GOING TO BE

2    PLAYING SOME VIDEOS.  THERE ARE SOME DOCUMENTS WHICH ARE

3    INTRODUCED THROUGH THE WITNESSES ON THE VIDEOS, WHICH ARE

4    OBJECTED TO.  NORMALLY WE INTEND TO DO THE SPLIT SCREEN, WHERE

5    YOU SHOW THE TESTIMONY AND THE DOCUMENT, RATHER THAN PAUSE IN        02:49

6    THE MIDDLE OF THE VIDEO, HOW DOES THE COURT WANT TO HANDLE

7    THAT, ON THE ADMISSIBILITY OF THE DOCUMENTS IN ADVANCE, SO WE

8    CAN FIGURE OUT WHAT TO PLAY AND WHAT NOT TO PLAY.

9          THE COURT:  YES.

10         NANA ASHONG IS GOING TO BE THE FIRST ONE.                      02:49

11         MR. PROCTOR:  I BELIEVE THAT IS CORRECT; AND STEVEN

12   LINKER ARE THE ONES WE INTEND TO PLAY TOMORROW.

13         THE COURT:  I'LL GIVE YOU THOSE RULINGS IN THE

14   MORNING.  THE COURT HAS FINISHED NANA ASHONG; I'VE NOT FINISHED

15   STEVEN LINKER.  DOES THAT GIVE YOU ENOUGH TIME?                      02:50

16         MR. PROCTOR:  YES.  OUR GUY CAN DO IT FROM THE BACK,

17   I THINK.

18         THE COURT:  I'D PREFER THOSE -- THERE'S GOING TO BE

19   SEVERAL PORTIONS TAKEN OUT, PARTICULARLY ON RELEVANCY GROUNDS

20   ON 1-A.  I THINK I GAVE SOMETHING OF A PRELUDE TO THAT THE          02:50

21   OTHER DAY.

22         MR. PROCTOR:  ON NANA ASHONG, IS THAT RELATED TO THE

23   ANGEL DOCUMENTS IN 2001?

24         THE COURT:  YES.

25         MR. PROCTOR:  MAY I BE HEARD ON THAT?                          02:50

MONDAY, JUNE 2, 2008                          MOTIONS HEARING  EXHIBIT _**11**_

PAGE _**290**_

```
1            THE COURT:  SURE.

2            MR. PROCTOR:  MS. ANNA RHEE, THE COURT IS FAMILIAR

3    WITH HER NAME, SHE WILL TESTIFY IN JUNE OF 2000 SHE WAS WORKING

4    ON BRATZ, AND BRYANT TOLD HER TO USE -- THESE ARE HER WORDS --

5    TOLD HER TO USE A CODE NAME, ANGEL; AND SHE DESCRIBES IT AS A          02:50

6    CODE NAME.  MGA VERY MUCH WANTS TO IMPEACH THAT TESTIMONY, AND

7    SAYS, NO, THIS REFERS TO PRAYER ANGELS.  AND YOU MAY HAVE HEARD

8    PAULA GARCIA DENY ON THE STAND -- I THINK IT WAS ONE OF THE

9    DAYS SHE WAS TESTIFYING, FRIDAY, I THINK IT WAS -- DENY ANGEL

10   WAS EVER USED AS A NAME FOR BRATZ; SHE MADE THAT DENIAL VERY           02:51

11   UNEQUIVOCALLY.

12            NANA ASHONG WORKED AT MGA IN 2001 AND CONFIRMS THAT

13   ANGEL WAS A NICKNAME FOR A DOLL --

14            THE COURT:  I'M MORE REFERRING TO THE DOCUMENTS AND

15   THE TESTIMONY RELATED TO THOSE DEVELOPMENTS IN 2001.                   02:51

16            MR. PROCTOR:  AND NANA ASHONG, SHE WAS ONLY AT MGA IN

17   2001, SO HER TESTIMONY RELATES TO 2001.  BUT PAULA GARCIA JUST

18   DENIED -- AND PAULA GARCIA HAS BEEN A BRATZ PROJECT MANAGER FOR

19   SEVEN YEARS -- SHE DENIED THAT ANGEL WAS EVER USED FOR THE NAME

20   BRATS.  NANA ASHONG DIRECTLY IMPEACHED THAT TESTIMONY AND              02:51

21   CORROBORATES MS. RHEE'S TESTIMONY THAT WHAT SHE WAS PAINTING IN

22   JUNE OF 2000 WAS, IN FACT, BRATZ, USING A CODE NAME 'ANGEL.'

23   HER ACKNOWLEDGMENT THAT THE WORD 'ANGEL' WAS USED AT MGA AS A

24   BRATZ DOLL, WHETHER IT BE IN 2001 OR 2000, I WOULD SUBMIT, ARE

25   CLEARLY ADMISSIBLE.                                                    02:52
```

1        **THE COURT:**  THE CONCERN I'M GOING TO HAVE, THOUGH,

2  IS -- AND WHAT YOU'RE ARTICULATING THERE, I CAN UNDERSTAND THE

3  BASIS FOR THAT.  HOW YOU DO THAT THROUGH THIS VIDEO DEPOSITION

4  IS GET INTO DOCUMENTS THAT GO WELL BEYOND JUST THAT PARTICULAR

5  POINT; THAT'S THE PROBLEM OF HAVING VIDEO DEPOSITION TESTIMONY.   02:52

6        LET ME THINK ABOUT THAT.  WE'LL TAKE THIS UP TOMORROW

7  MORNING.

8        DO YOU WISH TO BE HEARD ON THAT OR WAIT UNTIL THE

9  MORNING?

10        **MR. RUSSELL:**  I'D PREFER TO WAIT.   02:52

11        **MR. PROCTOR:**  WE'RE DOING THIS THROUGH VIDEO.  THE

12  COURT IS RULING ON IT.  MUCH IS FOUNDATIONAL.  IF THE COURT

13  WANTS TO EX OUT THE FOUNDATIONAL STUFF --

14        **THE COURT:**  RIGHT.  I MAY BE ASKING FOR SOME

15  DIRECTION ON THAT.   02:52

16        **MR. PROCTOR:**  OKAY.

17        **MR. COREY:**  ONE MORE ISSUE.

18        I KNOW THE COURT NOTED THE OTHER DAY THAT IT GETS

19  BLIND SIDED ON A REGULAR BASIS.  I'D LIKE TO PREEMPT THAT A

20  LITTLE BIT.   02:53

21        JUDGE INFANTE ORDERED SOME MEDIA OF ONE OF THE

22  WITNESSES TO PRODUCE A ZIP AND HARD DISK DRIVE.  WE'VE HAD OUR

23  PEOPLE LOOK AT THIS AND WE PROVIDED TO COUNSEL FOR MGA THIS

24  MORNING A VERY SHORT EXPERT REPORT RELATING TO THAT, AND I HOPE

25  WE CAN REACH AN AGREEMENT ON IT.  IF WE CAN'T, WE WILL BE   02:53

MONDAY, JUNE 2, 2008        MOTIONS HEARING

EXHIBIT 11

PAGE 292

1   ASKING THE COURT TO ENTERTAIN A MOTION TO ALLOW THAT EXPERT TO

2   TESTIFY AND TO HAVE MGA CONSIDER THAT REPORT.

3         **MR. RUSSELL:**  YOUR HONOR, I RECEIVED NOTICE OF THIS

4   FROM MR. COREY APPROXIMATELY AN HOUR BEFORE I SHOWED UP IN

5   COURT.  IT'S DIFFICULT TO, WITH ANY CERTAINTY, RESPOND TO IT.          02:53

6         I GUESS WHAT I'D ASK IS I CAN TELL YOU NOW, MGA IS

7   GOING TO OBJECT, BECAUSE WE BELIEVE THEY HAVE HAD THE

8   OPPORTUNITY TO HAVE THIS REPORT LONG BEFORE THE EXPERT PROCESS

9   COMMENCED; SO IF IT'S THEIR INTENT TO USE THIS REPORT, I'D ASK

10  THEY BE GIVEN A DATE TO FILE THIS MOTION, LET'S SET UP A               02:54

11  BRIEFING SCHEDULE.  BECAUSE, IN OUR VIEW, THIS IS CLEARLY

12  UNTIMELY, INAPPROPRIATE, AND WE STRONGLY OBJECT.

13        **THE COURT:**  SINCE YOU'VE ONLY HAD AN HOUR TO THINK

14  ABOUT THIS, LET'S TALK ABOUT IT TOMORROW MORNING, AND WE'LL SEE

15  IF BRIEFING IS APPROPRIATE.                                            02:54

16        **MR. RUSSELL:**  THANK YOU, YOUR HONOR.

17        **MR. COREY:**  THANK YOU, JUDGE.

18                    CERTIFICATE

19

20  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
    ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.

23

24  _____          6-3-08

25  THERESA A. LANZA, RPR, CSR                DATE
    FEDERAL OFFICIAL COURT REPORTER

MONDAY, JUNE 2, 2008                    MOTIONS HEARING   EXHIBIT  11

                                                          PAGE  293

# EXHIBIT 12

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

March 3, 2009

VIA FACSIMILE AND U.S. MAIL

Caroline Mankey, Esq.
Glaser, Weil, Fink, Jacobs & Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067

Re:     Mattel v. MGA Entertainment, Inc., et al.

Dear Caroline:

I write further to our discussion last week regarding MGA's privilege logs.

As to the first category of entries set forth in our February 8, 2009 letter - communications between non-lawyers and non-legal communications - you stated that, in MGA's view, the Court ruled on this issue in Phase 1, precluding consideration of the privilege issues now. Hence, based on the prior ruling, MGA is not willing to analyze the underlying documents to determine whether MGA's claims of privilege are well-founded and/or to produce any non-privileged ones, in whole or in part.

As to the remaining categories set forth in the letter, you agreed to review the underlying documents to determine whether MGA would continue to stand by its claims of privilege. You agreed to either provide a supplemental privilege log that will show the privileged nature of the documents or produce the documents, in whole or in part, in the next two weeks. We look forward to receiving MGA's supplemental logs and/or any documents that MGA acknowledges were improperly withheld on March 10, 2009, as agreed.

Best regards,

Dylan Proctor

B. Dylan Proctor

EXHIBIT __12__

PAGE __294__

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

# EXHIBIT 13

RECEIVED

MAR 0 5 2009

LAW OFFICES

### GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000
FAX (310) 556-2920

DIRECT DIAL NUMBER
(310) 556-7874
EMAIL: CMANKEY@GLASERWEIL.COM

March 4, 2009

Ⲙ MERITAS LAW FIRMS WORLDWIDE

B. Dylan Proctor, Esq.
QUINN, EMANUEL, URQUHART,
    OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543

          Re:   MGA v. Mattel

Dear Dylan:

      This responds to your letter dated March 3, 2009, regarding our conference last week regarding MGA's privilege logs.  To clarify, I agreed that MGA would review the privileged documents in all of the categories referenced in your letter other than the first category (purported communications between non-lawyers and purportedly non-legal communications) as soon as possible.  You agreed to give us two weeks, until March 10, 2009, before filing a motion to compel the production.  I did not, however, unconditionally agree to provide a supplemental privilege log or produce documents by March 10, 2009.  In fact, I expressly stated that I did not believe that the review and supplementation could be completed in two weeks and instead asked you for at least 30 days in which to undertake a review and supplementation, which you refused.

      Although we are doing everything we can to complete our review of the underlying documents as quickly as possible, it is my continued belief that we will not be able to complete a review and supplementation by March 10, 2009.  Therefore, I reiterate my request for additional time in which to review the documents and supplement the privilege log in an effort to eliminate or at least narrow the scope of any motion practice on this subject  Please let me know if you would be willing to further defer the filing of any motion to compel production of these documents until March 30, 2009.

      Thank you for your attention to this matter.

                  Very truly yours,

                  Caroline H. Mankey
        of GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

CHM:lde

669066

EXHIBIT 13

PAGE 295

# EXHIBIT 14

CONFORMED COPY
LODGED                                    FILED

2007 MAY 16  PM 1: 59   2007 MAY 16  PM 2: 00

CLERK U.S. DISTRICT COURT   CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.     CENTRAL DIST. OF CALIF.
       RIVERSIDE                   RIVERSIDE
BY_____       BY_____

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:   (415) 774-2611
4   Facsimile:   (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                          EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12        Plaintiff,

13        v.                               Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15        Defendant.                       ORDER GRANTING MATTEL'S
                                           MOTION TO COMPEL PRODUCTION
16                                         OF DOCUMENTS AND
                                           INTERROGATORY RESPONSES BY
17  CONSOLIDATED WITH                      MGA
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20

21                          I. INTRODUCTION

22        On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

23  of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA"). On February

24  20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

25  reply brief. The matter was heard on March 5, 2007. Thereafter the motion was taken under

26  submission pending the parties' submission of a proposed protective order, which was received

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                            1

EXHIBIT  14

PAGE  296

1   on April 23, 2007.  Having considered the motion papers and comments of counsel at the hearing,

2   Mattel's motion to compel is granted.

3   II. BACKGROUND

4       A.  Requests for Documents

5       In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6   became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7   categories of documents, to be produced in ten days.  MGA filed a motion to quash, which the

8   court granted because of the short amount of time provided for compliance with the subpoena.

9   The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10  some of Mattel's requests.  In particular, the parties agreed to limit production to the "first

11  generation" Bratz dolls.  On August 12, 2004, MGA produced documents.

12      In 2005, the parties stipulated to supplementing their document productions on May 16,

13  2005.  Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14      In September of 2006, MGA made a supplemental production of documents.  On February

15  5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16  with legibility problems.  On February 20, 2007, MGA produced an additional 224 pages of

17  documents to replace earlier produced documents with legibility problems.

18      Mattel now moves to compel MGA to produce documents responsive to its requests.  As a

19  preliminary matter, Mattel contends that MGA's production is deficient because it contains

20  redactions and cut-off text.  Further, Mattel contends that MGA's production is incomplete with

21  respect to essentially five categories of documents.  First, Mattel contends that MGA is

22  withholding documents relating to the origins of Bratz and Bryant's work for MGA.  Mattel

23  believes that MGA's production is incomplete based upon its review of documents that have been

24  produced by third party Steven Linker.  According to Mattel, Linker's documents from October

25  of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26  previously represented.  Mattel also contends that MGA's responses to the document requests

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

2

EXHIBIT ___14___

PAGE ___29___

1    contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2    responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3    show when certain dates relating to Bratz occurred. Mattel contends that these "carve outs

4    purport to allow MGA to cherry-pick what it will and will not produce to Mattel." Mattel's

5    Separate Statement at 17:11-13. Mattel also contends that the carve-outs fail to provide notice of

6    what is or is not being withheld. Mattel also contends that MGA's objections based upon its

7    confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8    protective order in place. In addition, Mattel contends that MGA's objection to producing

9    documents relating to activities or conduct in foreign countries is wholly improper because those

10   documents may contain information relevant to Mattel's claims.

11           Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12   such documents relate to the "first generation" Bratz dolls. Mattel argues that whether the work

13   ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14   discovery purposes. Mattel contends that the works created by Bryant during his Mattel

15   employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16   a Bratz doll released at a particular time.[1]

17           Mattel next contends that MGA is improperly withholding documents about designs

18   Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19   be derivative of work he did when employed by Mattel. Mattel contends that it is entitled to

20   explore whether such works and the profits from Bratz dolls other than the "first generation"

21   Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22   and damages. Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23   improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24   information as well as MGA's unfair competition claims.

25   _____

26           [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
      to compel Bryant to produce documents.

27

28                                                                                                    3
      Bryant v. Mattel, Inc.,
      CV-04-09049 SGL (RNBx)

EXHIBIT   14
PAGE   298

1    Mattel also asserts that MGA is improperly withholding documents relating to products,

2    services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3    Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4    Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5    Inventions Agreement.

6        Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7    payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8    because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9    (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10   damages; and (3) payments may show when and what trade secret information Bryant and other

11   defendants allegedly misappropriated from Mattel.

12       Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13   contends that all agreements between Bryant and MGA are relevant, not just the original

14   September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15   documents relating to MGA and Bryant's alleged joint defense agreement because such

16   information would be relevant to demonstrate bias and lack of credibility.

17       Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18   statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19   information may reveal relevant information about the date of creation of Bryant's Bratz

20   drawings.

21       In response, MGA denies withholding responsive documents and asserts that it has

22   produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23   that it has produced all responsive and relevant documents that it was able to locate in response to

24   request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25   before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26   motion. In particular, MGA represents that it is diligently working to produce documents related

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                              4

                                              EXHIBIT _14_

                                              PAGE _279_

1  to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,
2  49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100. MGA represents that it informed
3  Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that
4  have been released on the market. In addition, MGA represents that it has agreed to produce
5  documents relevant to Bratz or Prayer Angels that it received from Union Bank. More
6  specifically, MGA represents that it agreed to review and produce documents provided to it by
7  Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for
8  Bratz or Prayer Angels. MGA also represents that it has agreed to produce royalty statements.
9  Therefore, MGA views the motion as unnecessary.

10      MGA next contends that Mattel's motion should be denied for the following additional
11  reasons. First, MGA contends that Mattel is not entitled to MGA's product design documents for
12  unreleased products. MGA asserts that its product design documents for its unreleased toy
13  concepts are among its most highly valuable trade secrets. Furthermore, MGA contends that
14  designs and drawings for products currently under development, over six years after Bryant first
15  created his original Bratz drawings, have no relevance to any of Mattel's claims. In the event that
16  documents relating to unreleased products are ordered produced, MGA requests a protective order
17  under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically
18  than the current protective order provides. In the alternative, MGA requests that any order
19  compelling production of documents relating to unreleased products should essentially be stayed
20  until after MGA's products are publicly released.

21      Second, MGA contends that Mattel is not entitled to information concerning Bryant's
22  attorneys' fees because the information is privileged. Furthermore, MGA contends that the
23  information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24
25
26
27
28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __14__ ⁵

PAGE __306__

1 | in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's
2 | Opposition at 24:9-12.[2]

3 |      Third, MGA asserts that Mattel is not entitled to review all non-public witness statements
4 | and litigation documents concerning Bratz for a variety of reasons, including because Mattel has
5 | refused to produce similar types of documents. More significantly, MGA contends that Mattel's
6 | requests for non-public witness statements are "a blatant attempt to avoid the discovery
7 | limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations
8 | imposed by this Court." MGA's Opposition at 25:6-7. MGA explains its position as follows.
9 | MGA is involved in litigation against a number of counterfeiters and infringers in Asia. In 2003,
10 | Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an
11 | attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel
12 | abandoned its claims based upon "Toon Teens" in this court. Thereafter, those defendants took
13 | the position that MGA did not own, and therefore could not enforce, the rights to Bratz. MGA
14 | was thus forced to litigate the issue of ownership. MGA contends that "[i]n effect, by prompting
15 | foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created
16 | a situation in which MGA has been forced to give testimony and provide evidence related to
17 | issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18 |      Fourth, MGA contends that Mattel is not entitled to documents concerning a family
19 | dispute between MGA's chief executive officer and his brother because such documents are in no
20 | way relevant to this lawsuit. MGA explains that the brothers were involved in an arbitration
21 | proceeding relating to MGA's CEO's purchase of his brother's interest in MGA. Moreover,
22 | MGA contends that the brothers were bound by a protective order prohibiting the use of any
23 | documents or testimony for any purpose other than the arbitration.

24 |
25 | ―――――――――――――――
26 |   [2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.
27 |
28 | Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

6

EXHIBIT 14

PAGE 501

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2    files because they contain confidential information and are not relevant to the lawsuit.  Sixth,

3    MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4    in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd.  Lastly,

5    MGA objects to producing documents relating to any testing performed to determine the date that

6    Bratz documents were created.  MGA contends that such discovery is premature and should not

7    proceed until experts are designated.

8        B. Interrogatories

9    On April 28, 2005, Mattel served its Second Set of Interrogatories.  On May 20, 2005,

10   however, the district court stayed the action.  On May 17, 2006, the district court lifted the stay.

11   On May 30, 2006, MGA responded to the interrogatories.

12   Mattel contends that MGA's responses to the interrogatories were untimely.  Further,

13   Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14   because they lack substantive information and consist almost entirely of objections.  MGA

15   responds that the motion is moot because it is prepared to provide supplemental responses to its

16   interrogatories.  MGA does not otherwise assert any additional grounds for opposing Mattel's

17   motion to compel responses to interrogatories.

18                    III. DISCUSSION

19   A. Rule 26 of the Federal Rules of Civil Procedure

20   Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22   party."  Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

23   discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.

24   Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25   unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                              7

EXHIBIT 14

PAGE 302

1 | opportunity by discovery in the action to obtain the information sought; or (iii) the burden or
2 | expense of the proposed discovery outweighs its likely benefit, taking into account the needs of
3 | the case, the amount in controversy, the parties' resources, the importance of the issues at stake in
4 | the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.
5 | 26(b)(2).

6 |       B.  Document Requests

7 |          1.  Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,
8 |             34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9 |      The requests above seek discoverable information regarding the origins of Bratz and
10 | Bryant's work for MGA. MGA represents that it has produced all responsive documents in
11 | response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and 69 (MGA's Opposition at 13:4-5), and is
12 | "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,
13 | and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at
14 | 14:1-4 and note 39). MGA does, however, object to producing design documents for unreleased
15 | products and documents from MGA Hong Kong.

16 |      As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted
17 | its production to "relevant and responsive non-objectionable documents" or documents
18 | "sufficient" to show when events relating to Bratz occurred. These restrictions suggest that MGA
19 | might be excluding documents that are responsive to the request based upon its unilateral
20 | determination of what is "relevant" or "sufficient." Mattel shall provide the responses to
21 | document requests ordered herein without these restrictions.

22 |               Design Documents for Unreleased Products

23 |      MGA's design documents for unreleased products are relevant to Mattel's claims and
24 | defenses and must be produced. See Order Modifying Protective Order. On April 23, 2007, the
25 | parties submitted a stipulation to modify the existing protective order to limit the disclosure of
26 | design documents for unreleased products that constitute trade secret information. See Stipulation
27 |
28 |

EXHIBIT ___14___

PAGE ___303___

1 | to Modify Protective Order; And Proposed Order Thereon ("stipulation"). The parties' stipulation

2 | has been approved and entered as an order of the court. MGA is ordered to produce design

3 | documents for unreleased products that are responsive to Mattel's document requests in

4 | accordance with the terms of the stipulation and order.

5 | Documents from MGA Hong Kong

6 | Documents relating to activities or conduct in foreign countries are relevant and

7 | discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8 | Bratz. Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9 | provides reciprocal discovery from its subsidiaries.

10 | Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11 | the context of this motion, and therefore is not addressed herein. MGA is ordered to produce

12 | documents from MGA Hong Kong.

13 | Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14 | 64, 69, 96, 97, 98, 99, 100.

15 | 2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16 | 61, 63, 66, 67, 70, 88, 90, 91

17 | Mattel contends that MGA is improperly limiting its document production to the "first

18 | generation" Bratz dolls. MGA represents, however, that it has agreed to produce subsequent

19 | generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20 | documents for yet unreleased products.

21 | As stated previously, design documents for yet unreleased products are relevant and

22 | discoverable. See Order Modifying Protective Order. Accordingly, MGA is ordered to produce

23 | all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24 | 59, 61, 63, 66, 67, 70, 88, 90, and 91.

25 | //

26 | //

27 |

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT 19
PAGE 304

1      ### 3. MGA's Payments to Bryant (Nos.43, 45)

2          MGA represents that it has already agreed to produce documents related to Bratz, without

3      limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless,

4      Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's

5      motion is granted with respect to request nos. 43 and 45.

6          ### 4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

7          MGA represents that it has already agreed to produce non-privileged documents

8      responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not

9      relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or

10     indemnity agreements between MGA and Bryant .

11         Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility.

12     Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any

13     responsive documents withheld on the basis of a privilege must be properly identified in a

14     privilege log.

15.        ### 5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40,

16     41,

17         In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits,

18     and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel

19     anticipates that these documents could provide evidence relating to the conception date for Bratz.

20         Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception

21     date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against

22     alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the

23     arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother

24     Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

25     ───────────────

26     [3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and
       infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority
       that prohibits Mattel's conduct.

27

28     Bryant v. Mattel, Inc.,                                                                                    10
       CV-04-09049 SGL (RNBx)

EXHIBIT __14__

PAGE __305__

1   that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2   documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3   protective order that prohibits the use of any documents or testimony for any purpose other than

4   the arbitration.  MGA, however, has not provided any evidence of the protective order.

5   Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6           6. Documents Regarding Date-Testing (Request No. 92)

7           Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8   from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9   testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto."  MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12          The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports.  The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15          C. Interrogatories

16          Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served.  The district court lifted the stay on May 17, 2006.

---

25          [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's

26  personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore

        should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28

EXHIBIT _14_

PAGE _306_

1    Neither party has cited to any caselaw governing the calculation of the 30-day period

2    when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses

3    will be treated as timely in order to preserve any valid objections MGA may have asserted.

4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5    conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6    tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7    before December 31, 2001, including a description of each person's role and the start and end

8    dates of each person's involvement. In response, MGA asserted numerous objections, but did

9    provide the names of five individuals.

10    The interrogatory clearly seeks information relevant to the claims at issue. MGA's

11    objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad.

12    Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13    for confidential, proprietary or commercially sensitive information, or seeks information

14    protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as

15    it fails to provide the description of each person's role and the start and end dates of each person's

16    involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17    5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18    Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19    embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for

20    the reasons previously discussed in connection with Interrogatory No. 5.

21    Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22    December 31, 2001. In response, MGA asserted numerous objections and did not provide any

23    substantive information.

24    MGA's objections are without merit. The interrogatory clearly seeks information relevant

25    to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous,

26    compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT __14__

PAGE __307__

1  unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2  seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3  provide a complete response to Interrogatory No. 7.

4       Interrogatory No.8 asks MGA to identify each and every embodiment of Angel.  MGA is

5  ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6  discussed in connection with Interrogatory No. 7.

7       Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8  or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9  or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10  substantive information.

11       The interrogatory seeks information relevant to establishing when Bryant first conceived

12  Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13  ordered to provide a complete response to Interrogatory No. 9.

14       Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15  was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16  which each such instance occurred, the location of each show or exhibit, and the identity of

17  persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18  objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19  about January 2001 and New York Toy Fair, New York, in or about February 2001.

20       Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21  potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22  incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23  to provide a complete response to Interrogatory No. 10.

24       Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25  including without limitation each office, home and cell phone number, in the name of, for the

26  benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

                                          13

EXHIBIT 19

PAGE 308

1   January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2   limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3   boiler-plate objections.

4          Once again, MGA has failed to substantiate any of its objections with supporting

5   declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6   provide a full response to Interrogatory No. 11.

7                                    IV. CONCLUSION

8          For the reasons set forth above, Mattel's motion to compel production of documents is

9   granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10  identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11  for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12  motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13  provide responses to interrogatories consistent with this Order, and produce a privilege log in

14  compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15  sanctions is denied.

16         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17  Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21  Dated: May /5, 2007

22                                    HON. EDWARD A. INFANTE (Ret.)
                                      Discovery Master
23

24

25

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                              14

EXHIBIT  14

PAGE  369

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15,

2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL

PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in

the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT 19

PAGE 310