# EXHIBIT 25

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727 |
| vs. | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation, | **[To be Heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant to Court Order of December 6, 2006]** |
| Defendant. | MATTEL, INC.'S NOTICE OF MOTION AND MOTION COMPELLING PRODUCTION OF THIRD PARTY COMMUNICATIONS IMPROPERLY WITHHELD UNDER A CLAIM OF "COMMON INTEREST" PRIVILEGE; AND MEMORANDUM OF POINTS AND AUTHORITIES |
| AND CONSOLIDATED ACTIONS | |
| **CONFIDENTIAL: FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** | [Declaration B. Dylan Proctor filed concurrently herewith]<br><br>Date: February 8, 2008<br>Time: 9:30 a.m.<br>Place: TBA<br><br>**Phase I**<br>Discovery Cut-Off: Jan. 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

EXHIBIT 25

PAGE 581

1-23

1   Case No. CV 04-9049 SGL (RNBx)
MOTION TO COMPEL DOCUMENTS DISCLOSED TO THIRD PARTIES

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 | PLEASE TAKE NOTICE that Mattel, Inc. will, and hereby does, move the
3 | Court, pursuant to Federal Rules of Civil Procedure 26 and 37, for an order compelling
4 | MGA Entertainment, Inc. ("MGA") to produce third party communications improperly
5 | withheld under a claim of privilege, including MGA's Supplemental Privilege Log,
6 | dated August 14, 2007 ("August Log") Nos. 408, 409, 550, 831, 987, 1073, 1080, 1081,
7 | 1066, 1107, MGA's Supplemental Privilege Log, dated September 5, 2007 ("September
8 | Log") Nos. 1170, 2831, the Privilege Log for MGA's October 17 and October 19
9 | Document Productions, dated November 16, 2007 ("October Log") Nos. 80, 82, 83, 84,
10 | 85, 86, 261, 471, 778, 891, 921, 922, 923, 925, 926, 1291, 1337, 1434, 1437, 1438,
11 | 1439, 1440, 1443, 1444, 1445, 1446, 1453, 1685, 1816, 1817, 1823, 1825, 1844, 1853,
12 | 1878, 1889, 2238, 2533, 2534, 2793, 3004, 3005, 3312, and Isaac Larian's Privilege
13 | Log, dated January 15, 2008 ("Larian Log") Nos. 31, 90, 169, 188. Additionally, the
14 | Court should order MGA to produce those communications which it has agreed were
15 | improperly withheld, but which Mattel has not received. This Motion shall be heard by
16 | the Honorable Edward Infante, Discovery Master, on February 8, 2008 at 9:30 a.m., or
17 | at a date and time set by Judge Infante.

18 | This Motion is made pursuant to Federal Rules of Civil Procedure 26 and 37 on
19 | the grounds that MGA is withholding non-privileged documents that are highly relevant
20 | to Mattel's claims because MGA has waived any privilege through the affirmative
21 | disclosure of information to various third parties, and had no reasonable expectation of
22 | continued confidentiality.

23 | This Motion is based on this Notice of Motion and Motion, the accompanying
24 | Memorandum of Points and Authorities, the Declaration of B. Dylan Proctor filed
25 | concurrently herewith, the records and files of this Court, and all other matters of which
26 | the Court may take judicial notice.

27

28

EXHIBIT __25__

PAGE __382__

1     **Statement of Rule 37-1 Compliance**

2        The parties met and conferred on December 17, 2007, and times thereafter,

3 regarding the issues set forth in this motion.

4

5 DATED: January 23, 2008       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6

7             By _B. Dylon Proctor /2DK_

8                 B. Dylan Proctor
                Attorneys for Plaintiff

9                 Mattel, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                      EXHIBIT _2 5_

28                      PAGE _383_

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 1

ARGUMENT .............................................................................................................. 4

I.   MGA HAS WAIVED THE ATTORNEY-CLIENT PRIVILEGE THROUGH ITS AFFIRMATIVE DISCLOSURE OF PRIVILEGED COMMUNICATIONS TO THIRD PARTIES ................................................. 4

     A.   The Interests In Common Must Be Legal and Identical ..................... 5

     B.   The Communication Must Further the Common Legal Interest ........... 7

II.  MGA CANNOT SATISFY ITS BURDEN TO DEMONSTRATE THAT ITS COMMUNICATIONS WITH BANDAI OR OTHER LICENSEES ARE SUBJECT TO THE COMMON INTEREST EXCEPTION ................................................................................................... 8

III. MGA'S BELATED ASSERTIONS OF PRIVILEGE SHOULD BE IGNORED .............................................................................................. 13

CONCLUSION .......................................................................................................... 15

EXHIBIT __25__

PAGE __384__

09/2356738.1

-i-

MOTION TO COMPEL DOCUMENTS DISCLOSED TO THIRD PARTIES

# TABLE OF AUTHORITIES

**Page**

## Cases

Avago Technologies General IP Pte. Ltd. v. Elan Microelectronics Corp.,
2007 WL. 841785 (N.D. Cal. Mar. 20, 2007).................................................. 6, 10

Baden Sports, Inc. v. Kabushiki Kaisha Molten,
2007 WL. 1185680 (W.D. Wash. 2007) ........................................................... 4, 8

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,
160 F.R.D. 437 (S.D.N.Y. 1995).............................................................. 4, 5, 6, 11

Bank of Am. v. Terra Nova Ins. Co.,
211 F. Supp. 2d 493 (S.D.N.Y. 2002)............................................................... 5, 6

Banks v. Office of Senate Sergeant-at-Arms,
233 F.R.D. 1 (D.D.C. 2005) .................................................................................. 14

Bowne, Inc. v. AmBase Corp.,
150 F.R.D. 465 (S.D.N.Y 1993).......................................................................... 14

Carte Blanche PTE., Ltd. v. Diners Club Int'l, Inc.,
130 F.R.D. 28 (S.D.N.Y. 1990)........................................................................... 14

D.O.T. Connectors, Inc. v. J.B. Nottingham & Co., Inc.,
2001 WL. 34104928 (N.D. Fla. Jan. 22, 2001).................................................... 8

Dexia Credit Local v. Rogan,
231 F.R.D. 287 (N.D. Ill. 2005) ............................................................................ 5

Duplan Corp. v. Deering Milliken, Inc.,
397 F. Supp. 1146 (D.C.S.C. 1974) ..................................................................... 11

F.D.I.C. v. Ogden Corp.,
202 F.3d 454 (1st Cir. 2000) .................................................................................. 5

In re FTC,
2001 WL. 396522 (S.D.N.Y. Apr. 19, 2001)........................................................ 5

Ferko v. National Ass'n For Stock Car Auto Racing, Inc.,
219 F.R.D. 396 (E.D. Tex. 2003)......................................................................... 12

In re Gaming Lottery Sec. Litig.,
2000 WL. 1171166 (S.D.N.Y. 2000) ..................................................................... 8

General Elec. Co. v. Johnson,
2007 WL. 433095 (D.D.C. Feb. 5, 2007)............................................................ 13

Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.,
215 F.R.D. 466 (S.D.N.Y. 2003)................................................................. 5, 7, 11

EXHIBIT ____25____

PAGE ____385____

-ii-

209/2356738.1

In re Honeywell Int'l Inc. Sec. Litig.,
230 F.R.D. 293 (S.D.N.Y. 2003)..................................................................... 13

In re Imperial Corp. of Am.,
179 F.R.D. 286 (S.D. Cal. 1998)..................................................................... 12

Intex Recreation Corp. v. Team Worldwide Corp.,
471 F. Supp. 2d 11 (D.D.C. 2007) ............................................................ 7, 10

In re JP Morgan Chase & Co. Securities Litigation,
2007 WL. 2363311 (N.D. Ill. Aug. 13, 2007)................................................. 5

John B. v. Goetz,
2007 WL. 4014015 (M.D. Tenn. Nov. 15, 2007) ......................................... 13

Johnson v. Matthey,
2002 WL. 1728566 (S.D.N.Y. Jul. 24, 2002) ................................................. 6

Katz v. AT & T Corp.,
191 F.R.D. 433 (E.D. Pa. 2000) .......................................................... 6, 8, 10

Lexington Ins. Co. v. Swanson,
240 F.R.D. 662 (W.D. Wash. Feb. 12, 2007)............................................... 13

Libbey Glass, Inc. v. Oneida, Ltd.,
1999 U.S. Dist. LEXIS 4558 (N.D. Ohio 1999) ..................................... 10, 12

MCI Construction, LLC. v. Hazen and Sawyer, P.C.,
213 F.R.D. 268 (M.D.N.C. 2003)................................................................. 14

MPT, Inc. v. Marathon Labels, Inc.,
2006 U.S. Dist. LEXIS 4998 (N.D. Ohio Feb. 9, 2006) ............................... 6

Nidec Corp. v. Victor Co. of Japan,
2007 WL. 1994171 (N.D. Cal. 2007)......................................................... 5, 7

North Carolina Elec. Membership Corp. v. Carolina Power & Light Co.,
110 F.R.D. 511 (M.D.N.C. 1986)................................................................... 7

Oak Indus. v. Zenith Indus.,
1998 WL. 79614 (N.D. Ill. 1988).................................................................. 11

In re Priceline.com, Inc. Sec. Litig.,
233 F.R.D. 92 (D. Conn. 2005)...................................................................... 8

In re Regents of the Univ. of California,
101 F.3d 1386 (Fed. Cir. 1996)...................................................................... 6

In re Rivastigmine Patent Litig.,
2005 WL. 2319005 (S.D.N.Y. Sept. 22, 2005)........................................... 6, 7

Shamis v. Ambassador Factors Corp.,
34 F. Supp. 2d 879 (S.D.N.Y. 1999)............................................................. 4

EXHIBIT __25__

PAGE __386__

MOTION TO COMPEL DOCUMENTS DISCLOSED TO THIRD PARTIES

209/2356738.1

*In re Total Containment, Inc.,*
2007 WL. 1775364 (Bankr. E.D. Pa. Jun. 18, 2007) ............................................. 5

*U.S. v. Bergonzi,*
216 F.R.D. 487 (N.D. Cal. 2003) ........................................................................... 7

*U.S. v. Evans,*
113 F.3d 1457 (7th Cir. 1997) ............................................................................... 12

*United Investors Life Ins. Co. v. Nationwide Life Ins. Co.,*
233 F.R.D. 483 (N.D. Miss. 2006) ......................................................................... 8

*United States v. Doe,*
429 F.3d 450 (3d Cir. 2005) ................................................................................... 5

*United States v. Palache,*
913 F.2d 1375 (9th Cir. 1990) ................................................................................ 4

*United States v. Weissman,*
195 F.3d 96 (2d Cir. 1999) .................................................................................... 12

*Walsh v. Northrop Grumman Corp.,*
165 F.R.D. 16 (E.D.N.Y. 1996) .............................................................................. 5

*Weil Ceramics & Glass, Inc. v. Work,*
110 F.R.D. 500 (E.D.N.Y 1986) ............................................................................. 5

EXHIBIT 25

PAGE 387

-iv-

!09/2356738.1

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

MGA's privilege logs are rife with deficiencies and improper assertions of privilege. Prime among these are the numerous entries on the logs relating to communications between MGA and various outside parties, mostly its licensees, which have been withheld as supposedly privileged. MGA claims the communications are privileged because MGA shared a "common interest" with these third parties However, the common interest doctrine does not apply here. That exception is limited to relationships where parties share identical legal interests and the communications are made as part of a coordinated legal strategy. Here, the relationships at issue are ordinary business relationships between MGA and its licensees, and the communications were made in furtherance of those business relationships. MGA's communications with its business partners cannot be privileged. And even if some privileged information was contained in these communications, MGA waived its privilege by disclosing the contents to third parties.

### Statement of Facts

As this Court knows well, MGA's privilege logs were long delayed, and the Court has already found that "the privilege logs submitted by MGA are untimely," and expressed "disappoint[ment] [] in the way discovery has been produced" by MGA.[1] Unfortunately, the supplemental privilege logs that MGA finally produced in August and September 2007 had numerous deficiencies. Many of those same deficiencies were

---

[1] Tr. of Dec. 14, 2007 Hearing, at 27:24-25, 28:11-12, attached Exhibit 13 to the Declaration of B. Dylan Proctor in Support of Mattel's January 21, 2008 Motion To Compel Production of Previously Withheld Documents Only Portions of Which are Allegedly Privileged, dated January 21, 2008 ("Portions Proctor Decl."). Where appropriate, this motion refers to the privilege logs and related documents submitted with the recently filed motion compelling documents only portions of which are allegedly privileged.

EXHIBIT ___25___

PAGE ___388___

-1-

MOTION TO COMPEL DOCUMENTS DISCLOSED TO THIRD PARTIES

1   apparent in MGA's October log, as well as Isaac Larian's privilege log. Starting in early

2   December and continuing on for next six weeks, Mattel engaged MGA in a lengthy

3   meet and confer process in an attempt to resolve these many deficiencies without resort

4   to motion practice.[2]   MGA eventually conceded that many of the communications

5   should not have been withheld, and agreed to produce them either in their entirety or in

6   redacted form.[3]   However, MGA has continued to improperly claim the privilege as to

7   many of the withheld documents.

8          This motion focuses on one of the most significant problems on MGA's logs:

9   communications between MGA and various third parties, for which MGA claims are

10  privileged even though disclosed.   Most significantly, a number of entries show

11  communications between MGA and a number of executives and employees of Bandai,

12  an early licensee of Bratz in Europe.   For example:

13      •   August Log 1081: A June 22, 2001 email from an unidentified Bandai
            employee to a trademark attorney, copying eleven Bandai employees
14          and Martin Hitch, an MGA employee in International Sales. The
            communication is described as an "[e]mail containing attorney-client
15          communications for the purpose of rendering legal advice regarding
            trademark registrations in various countries," and the attorney-client
16          privilege has been asserted.

17      •   August Log 1066: An October 22, 2001 email from Ray Dorrity, a
            Bandai employee, to Beth Cahill, MGA paralegal, copying Bandai
18          employees Rosie Bayles and Masaharu Igarashi, and MGA employees
            Julian Boyers and Martin Hitch. The communication is described as
19          "[e]mail containing attorney-client communication for the purpose of
            conveying legal advice regarding obtaining UK trademark registration,"
20          and the attorney-client privilege has been asserted.[4]

21

22  [2]   See Declaration of B. Dylan Proctor in Support of Mattel's Motion Compelling
    Production of Third Party Communications Improperly Withheld Under a Claim of
23  "Common Interest" Privilege ("Common Interest Proctor Decl.") ¶ 2, filed concurrently
24  with this motion.
    [3]   See Common Interest Proctor Decl. ¶ 4.
25  [4]   These are just some examples of the many communications between MGA and
26  Bandai that have been improperly withheld. Others include: Aug. Log Nos. 408, 409,
    831, 987, 1073, 1080, 1107; Oct. Log Nos. 80, 82, 83, 891, 921, 922, 923, 925, 926,
27  (footnote continued)

28

EXHIBIT   25

PAGE   389

1  In addition to the many withheld communications between MGA and Bandai, the

2  logs also show that communications between MGA and other outside parties have

3  been improperly withheld.  For example:

4  •  August Log No. 657: A June 29, 2001 email between Isaac Larian and
      Patricia Glaser, MGA's outside counsel, copying Greg Fischbach, an
5     employee at Acclaim Games.  The communication is described as an
      "[e]mail communication from client to attorney providing information
6     for the purpose of obtaining legal advice regarding potential litigation,"
      and the attorney-client and work product privileges have been
7     asserted.[5]

8  MGA has offered no reasonable explanation as to why these communications with third

9  parties should not be disclosed.  Through the meet and confer process MGA has agreed

10 that many of its third party communications were improperly withheld as privileged.[6]

11 For the remaining, however, MGA has argued that the communications are "privileged

12 in their entirety based on the common interest privilege" because they "contain

13 privileged communications with [MGA's] licensees and/or licensing agents regarding

14 issues such as trademark registrations, advertising, and potential litigation."[7]

15

16

17

18

19

---

20 1291, 1337, 1434, 1437, 1438, 1439, 1440, 1685, 1835, 1844, 2533, 2534, 3004, 3005,
   3312; Larian Log No. 31.
21 [5]  These are just some examples of the many communications between MGA and
22 outside parties (besides Bandai) which have been improperly withheld.  Others include:
   Aug. Log Nos. 550: Sept. Log Nos. 1170, 2831; Oct. Log Nos. 84, 85, 86, 261, 471,
23 778, 1443, 144, 1445, 1446, 1453, 1816, 1817, 1823, 1853, 1878, 1889, 2238; Larian
24 Log Nos. 90, 169, 188.
   [6]  See Letter from J. Allen to B. Dylan Proctor, dated January 9, 2008, at 2,
25 Common Interest Proctor Decl., Ex. 3.
26 [7]  Id., at 2-3, Common Interest Proctor Decl., Ex. 3.  However, these documents still
27 have not been produced.  Common Interest Proctor Decl. ¶ 4.

28

EXHIBIT ___25___

PAGE ___390___

MOTION TO COMPEL DOCUMENTS DISCLOSED TO THIRD PARTIES

1 | **Argument**

2 | **I.   MGA HAS WAIVED THE ATTORNEY-CLIENT PRIVILEGE**

3 | **THROUGH ITS AFFIRMATIVE DISCLOSURE OF PRIVILEGED**

4 | **COMMUNICATIONS TO THIRD PARTIES**

5 | The voluntary disclosure of a privileged attorney-client communication to a third

6 | party waives the privilege. See United States v. Palache, 913 F.2d 1375, 1379 (9th Cir.

7 | 1990).   A party cannot have a reasonable expectation of confidentiality in

8 | communications made to third parties.   MGA seeks to avoid this basic principle by

9 | recasting its various communications with outside parties as relating to a "common

10 | interest." This so-called privilege is a "limited exception" to the general rule of waiver,

11 | and allows privileged communications to be shared with non-parties under certain

12 | narrow circumstances.   Shamis v. Ambassador Factors Corp., 34 F. Supp. 2d 879,

13 | 893 (S.D.N.Y. 1999). For the exception to apply, however, the communications must

14 | have been (1) made regarding a common legal interest, and (2) specifically designed to

15 | further that legal interest. Baden Sports, Inc. v. Kabushiki Kaisha Molten, 2007 WL

16 | 1185680, at *1 (W.D. Wash. 2007). Thus it is frequently noted that the doctrine has

17 | both a theoretical and a practical component: "In theory, the parties among whom

18 | privileged matter is shared must have a common legal, as opposed to commercial,

19 | interest. In practice, they must have demonstrated cooperation in formulating a

20 | common legal strategy." Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160

21 | F.R.D. 437, 447 (S.D.N.Y. 1995). Both aspects are necessary to support the doctrine's

22 | application. See In re Rivastigmine Patent Litig., 2005 WL 2319005, at *3 (S.D.N.Y.

23 | Sept. 22, 2005).

24 | MGA fails to satisfy the requirements of this narrow exception. The relationship

25 | between MGA and its various licensees is an ordinary business relationship, and the

26 | common interest doctrine has no application to type of communications at issue here.

27 | Further, while the descriptions of the entries on its logs (as well as the presence of some

28 |

EXHIBIT ___**2**___

PAGE ___**391**___

-4-

MOTION TO COMPEL DOCUMENTS DISCLOSED TO THIRD PARTIES

1   attorneys) suggest that privileged information may have been disclosed in some of the
2   communications, that is of no moment: whatever privileged status that information had
3   cannot be maintained after disclosure to outside parties.

4   **A.   The Interests In Common Must Be Legal and Identical**

5        It is a "basic requirement of the common interest exception that the parties must
6   have 'a common legal, as opposed to commercial, interest." <u>Nidec Corp. v. Victor Co.</u>
7   <u>of Japan</u>, 2007 WL 1994171, at *3-4 (N.D. Cal. 2007) (quoting <u>Bank Brussels Lambert</u>,
8   160 F.R.D. at 447). This is the "critical component" of the common interest doctrine.
9   <u>Bank of Am.</u>, 211 F. Supp. 2d at 497. Further, this common legal interest must be
10  "identical, not simply similar." <u>Dexia Credit Local v. Rogan</u>, 231 F.R.D. 287, 293
11  (N.D. Ill. 2005); <u>see also</u> <u>United States v. Doe</u>, 429 F.3d 450, 453 (3d Cir. 2005)
12  (parties must have "an identical (or nearly identical) legal interest as opposed to a
13  merely similar interest").[8]

14       Although the common interest doctrine requires a legal interest, it is well-settled
15  that a "concern about litigation . . . does not transform [the parties'] common interest
16  and enterprise into a legal, as opposed to commercial matter." <u>Walsh v. Northrop</u>
17  <u>Grumman Corp.</u>, 165 F.R.D. 16, 19 (E.D.N.Y. 1996). Thus, federal courts have
18  "repeatedly held that communications regarding business matters—even where
19  litigation is pending or imminent—do not qualify for protection from discovery under
20  the common interest rule." <u>Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.</u>, 215

21

22  [8]  <u>See, e.g.</u>, <u>In re JP Morgan Chase & Co. Securities Litigation</u>, 2007 WL 2363311,
23  at *4 (N.D. Ill. Aug. 13, 2007) (holding that pre-merger two companies did not share a
    common legal interest because "a common legal interest is required, and the Court
24  cannot conclude from the existence of a common business interest that the parties' legal
    interests were identical"); <u>see also</u> <u>F.D.I.C. v. Ogden Corp.</u>, 202 F.3d 454, 461 (1st Cir.
25  2000); <u>In re Total Containment, Inc.</u>, 2007 WL 1775364, at *5-6 (Bankr. E.D. Pa. Jun.
26  18, 2007); <u>Weil Ceramics & Glass, Inc. v. Work</u>, 110 F.R.D. 500, 502-503 (E.D.N.Y
27  1986).

28

EXHIBIT ___25___

PAGE ___392___

!09/2356738.1

MOTION TO COMPEL DOCUMENTS DISCLOSED TO THIRD PARTIES

1   F.R.D. 466, 471 (S.D.N.Y. 2003); see also In re FTC, 2001 WL 396522, at *5

2   (S.D.N.Y. Apr. 19, 2001) ("courts have recognized that a business strategy which

3   happens to include a concern about litigation is not a ground for invoking the common

4   interest rule"). Likewise, a business strategy which "include[s] as a component the

5   desire to avoid litigation" does not endow the relationship with sufficient legal interest

6   to allow for the application of the common interest exception. Bank of Am. v. Terra

7   Nova Ins. Co., 211 F. Supp. 2d 493, 497 (S.D.N.Y. 2002); Bank Brussels Lambert, 160

8   F.R.D. at 447 ("the common interest doctrine does not encompass a joint business

9   strategy which happens to include as one of its elements a concern about litigation").

10       The relationship between a licensor and its licensee or distributor is an ordinary

11  business relationship. Although they may share a common interest in avoiding

12  infringement litigation or in protecting the validity of the intellectual property, this

13  alone is not a sufficient basis for finding that the common interest exception applies.

14  See, e.g., Katz v. AT & T Corp., 191 F.R.D. 433, 438 n.4 (E.D. Pa. 2000) (common

15  interest does not automatically arise from licensor-licensee relationship). Generally,

16  courts have found a common legal interest between licensor and licensee only where

17  the parties' relationships are so intertwined that they can be viewed as having identical

18  interests—for example, having jointly developed a patent that will later be licensed on

19  an exclusive basis. See e.g., In re Regents of the Univ. of California, 101 F.3d 1386,

20  1389 (Fed. Cir. 1996); see also In re Rivastigmine, 2005 WL 2319005, at *3-4

21  (discussing when parties "jointly developing" a patent may claim protection of the

22  common interest exception). But just licensing a product owned by another or

23  "[s]imply working together with another company on a patent does not guarantee that

24  the common interest exception to waiver will apply." Avago Technologies General IP

25  Pte. Ltd. v. Elan Microelectronics Corp., 2007 WL 841785, at *2 (N.D. Cal. Mar. 20,

26  2007) (rejecting argument that parties had "a common interest in designing and

27  marketing [a product] that would not infringe [plaintiff's] patents"); MPT, Inc. v.

28

EXHIBIT 25

PAGE 393

MOTION TO COMPEL DOCUMENTS DISCLOSED TO THIRD PARTIES

09/2356738.1

1  Marathon Labels, Inc., 2006 U.S. Dist. LEXIS 4998 (N.D. Ohio Feb. 9, 2006) (parties
2  sharing privileged communications had a common interest in patent, but interests were
3  commercial, not legal); Johnson v. Matthey, 2002 WL 1728566, at *6 (S.D.N.Y. Jul.
4  24, 2002) ("[t]he shared desire to maximize royalty income is . . . simply a commercial
5  concern").

6       **B.**    **The Communication Must Further the Common Legal Interest**

7      Even where the legal interests of the parties are sufficiently congruent that the
8  common interest exception might apply, a party seeking to rely on the doctrine must
9  still demonstrate that the specific communications at issue were "designed to further
10  that [legal] effort." Nidec Corp., 2007 WL 1994171, at *4 (quoting U.S. v. Bergonzi,
11  216 F.R.D. 487, 495 (N.D. Cal. 2003)). Not every communication between the parties
12  will remain privileged; only those that are directly related to seeking legal advice
13  regarding the common issue fall within the exception. See North Carolina Elec.
14  Membership Corp. v. Carolina Power & Light Co., 110 F.R.D. 511, 518 (M.D.N.C.
15  1986) (holding that communications that related to business and economic issues were
16  not protected despite common legal interest between the parties).

17      Moreover, this second prong of the common interest exception requires a
18  showing of a "coordinated legal strategy" between the parties. Intex Recreation
19  Corp. v. Team Worldwide Corp., 471 F. Supp. 2d 11, 16 (D.D.C. 2007); see also In re
20  Rivastigmine, 2005 WL 2319005, at *4 (communications to be protected must
21  demonstrate legal cooperation). This necessary coordination may be evidenced by
22  various factors, including formal collaboration agreements, sharing of legal fees, or
23  other activities that show a joint pursuit of legal services. See id., 2005 WL 2319005,
24  at *22-23. Mere discussion of legal strategy does not amount to coordination. See Gulf
25  Islands Leasing, 215 F.R.D. at 473 (rejecting parties arguments that communications in
26  which legal strategy was discussed amounted to a coordinated legal strategy). The
27  exception is not designed to protect privileged information disclosed "in order to
28

EXHIBIT __25__

PAGE __344__

1 | facilitate a commercial decision." Nidec Corp., 2007 WL 1994171, at *4.
2 | Accordingly, when confronted with the task of determining whether communications
3 | were intended to further a common legal interest, courts frequently have asked whether
4 | "the disclosures would not have been made but for the sake of securing, advancing, or
5 | supplying legal representation." In re Gaming Lottery Sec. Litig., 2000 WL 1171166,
6 | at *6 (S.D.N.Y. 2000).

7 | **II.  MGA CANNOT SATISFY ITS BURDEN TO DEMONSTRATE THAT**
8 | **ITS COMMUNICATIONS WITH BANDAI OR OTHER LICENSEES**
9 | **ARE SUBJECT TO THE COMMON INTEREST EXCEPTION**

10 | As the party asserting the common interest exception in the face of clear
11 | disclosure to outside parties, MGA bears the heavy burden of showing why the
12 | exception should apply to avoid waiver. See Baden Sports, Inc., 2007 WL 1185680, at
13 | *2; see also In re Priceline.com, Inc. Sec. Litig., 233 F.R.D. 92, 94 (D. Conn. 2005)
14 | (holding that party asserting common interest must "place the communications in
15 | context so that an informed determination can be made with respect to each document
16 | drafted or received by persons affiliated with multiple companies or firms"). MGA has
17 | not made, and cannot make, such a showing; instead it has merely made a blanket
18 | assertion that the common interest doctrine applies.[9]

19 |

20 | [9] While the common interest doctrine may serve to prevent waiver, a party seeking
21 | the doctrine's application must still prove that the underlying communications are
privileged. See Katz v. AT & T Corp., 191 F.R.D. at 437 ("To take advantage of the
22 | common interest doctrine the plaintiffs must still satisfy their burden of proving first
that the material is privileged and second that the parties had an identical legal, and not
23 | solely commercial, interest."). Here, with regard to the applicability of both the
24 | underlying privilege and the common interest exception, MGA's privilege log provides
no basis by which "the court and the [opposing party] are able to 'test the merits' within
25 | the four corners of the privilege log itself." United Investors Life Ins. Co. v. Nationwide
26 | Life Ins. Co., 233 F.R.D. 483, 486 (N.D. Miss. 2006). This is especially true regarding
those entries where MGA has also asserted the work product privilege, as the log's
27 | (footnote continued)

28 |

EXHIBIT **25**

PAGE **3 45**

-8-

209/2356738.1

1    That is hardly surprising, because the relationships between MGA and Bandai or

2    its other licensees simply do not present the type of common legal interest or

3    coordinated legal strategy that courts have held is necessary for the doctrine to apply.

4    Simply put, MGA and Bandai were in an ordinary business relationship. The

5    documents produced by MGA show exactly this. An "International Distribution Deal

6    Memo" executed between MGA and Bandai in July 2001 reveals the ordinary *business*

7    relationship between the two companies.[10] By the terms of the deal, Bandai became a

8    European distributor for "all toys and accessories related" to the Bratz brand for a three

9    year period.[11] In return, Bandai, like most business partners, paid consideration.[12] It is

10   a textbook example of an ordinary business relationship between licensor-manufacturer

11   and licensee-distributor—including terms for a letter of credit and other payment

12   requirements, packaging and advertisement costs, and an option for renewal.[13] Other

13   documents produced by MGA, including various commercial invoices,[14] packing lists,[15]

14

15

---

16   descriptions provide no bases to believe that the entries relate to work product prepared

17   in anticipation of litigation. Accordingly, at the very least, the Court should order that the communications at issue be submitted *in camera* so that a determination may be

18   properly made. See, e.g., D.O.T. Connectors, Inc. v. J.B. Nottingham & Co., Inc., 2001

19   WL 34104928, at *4 (N.D. Fla. Jan. 22, 2001) ("The court cannot tell, however, whether the [common interest] privilege[] actually exist without *in camera* review.").

20   [10]   See International Distribution Memo, dated July 2, 2001, Common Interest

21   Proctor Decl., Ex. 6; see also Addendum, Common Interest Proctor Decl., Ex. 7.
     [11]   See International Distribution Memo, Common Interest Proctor Decl., Ex. 6.

22   [12]   See id., Common Interest Proctor Decl., Ex. 6.
     [13]   See id., Common Interest Proctor Decl., Ex. 6.

23   [14]   See, e.g., ABC International Traders, Inc. Commercial Invoice, dated May 27,

24   2001, Common Interest Proctor Decl., Ex. 8 (reflecting the sale of assorted Bratz dolls

25   to Bandai).
     [15]   See, e.g., ABC International Traders, Inc. Packing List, dated May 27, 2001,

26   Common Interest Proctor Decl., Ex. 9 (reflecting the shipment of assorted Bratz dolls to

27   Bandai).

28

EXHIBIT __25__

PAGE _____39 b

1 and bills of lading,[16] further confirm the everyday commercial nature of this
2 relationship. Likewise, internal MGA emails show that Bandai was one among a
3 number of licensees or distributors[17] who MGA employees thought of as "customers"
4 with whom MGA had negotiated agreements for the sale of Bratz merchandise.[18]

5 This is exactly the kind of commercial relationship which courts have
6 consistently held does not provide grounds for the application of the common interest
7 doctrine. For example, in Intex, the court held that the "execution of an exclusive
8 distribution agreement" is merely "an agreement to enter into a common 'business or
9 commercial interest,' which courts have explicitly held is not protected by the common
10 interest doctrine." Intex, 471 F. Supp. 2d at 17; see also Katz v. AT & T Corp., 191
11 F.R.D. at 438 n.4 (finding no common interest between licensor and licensee); Libbey
12 Glass, Inc. v. Oneida, Ltd., 1999 U.S. Dist. LEXIS 4558, at *19 (N.D. Ohio 1999) (no
13 common interest where supplier shared privileged information with foreign
14 manufacturer).

15 The only remotely "legal" aspect of the relationship between MGA and Bandai
16 appears to be evidenced by MGA's statement in the Distribution Agreement that it had
17 "appointed attorneys to process the trademark applications relating" to the Bratz
18 products and that MGA would be responsible for the legal fees "associated with the
19 processing or protection" of the trademarks.[19] But as numerous courts have made clear,
20 a claim of common interest in avoiding infringement litigation or protecting the validity

21

---

22 [16] See, e.g., Danmar Lines Bill of Lading, dated May 28, 2001, Common Interest
Proctor Decl., Ex. 10 (reflecting shipment of assorted Bandai dolls to Bandai).
23 [17] See, e.g., Email from Isaac Larian to Jim Olmstead, dated January 24, 2001,
24 Common Interest Proctor Decl., Ex. 11 (discussing details regarding Bandai and other
25 licensee shipments).
[18] See Rebecca Harris Depo. Tr. 139:11-144:4, 168:15-179:5, Common Interest
26 Proctor Decl., Ex. 12.
[19] Id., Proctor Decl., Ex. 12.
27

28

EXHIBIT 25

PAGE 397

:09/2356738.1

-10-

1   of intellectual property is not the type of identical legal interest sufficient to allow for

2   the common interest exception. See, e.g., Intex, 471 F. Supp. 2d at 17; Avago, 2007

3   WL 841785, at *2. Nor can it be said that discussions regarding infringement amount

4   to a "coordinated legal strategy." Bandai and MGA were not jointly developing the

5   property at issue; rather, MGA was simply licensing it to Bandai. While both may have

6   had an interest in avoiding litigation, this does not change the routine business nature of

7   their relationship. See Gulf Islands Leasing, 215 F.R.D. at 473.

8        Indeed, that the agreement clearly states that the prosecution and protection of

9   the intellectual property is solely MGA's responsibility, itself shows that Bandai and

10  MGA did not have a common *legal* interest which is *identical* (much less any

11  coordinated legal strategy regarding such nonexistent interests). This is the same

12  situation faced by the court in Duplan Corp. v. Deering Milliken, Inc., 397 F. Supp.

13  1146 (D.C.S.C. 1974), an early case analyzing the common interest doctrine, wherein

14  the court distinguished between the legal interests between various parties in a patent

15  litigation. The court held that those parties who were legally obligated with a "duty to

16  act" with regard to the underlying patent did have had a common *legal* interest.

17  397 F. Supp. at 1175. By contrast, the Duplan court was clear that an exclusive-

18  licensee, while "interested" from a "commercial standpoint" in the legal issues arising

19  from a patent litigation, did not have a "sufficient community of interest" so that any

20  communications to the licensee remained privileged, and thus found the privilege

21  waived as to the licensee. See id.; see also Bank Brussels Lambert, 160 F.R.D. at 447

22  ("In practice, however, the Duplan court required more than merely concurrent legal

23  interests. Although the court found that a communication with a non-party that was

24  contractually obligated to be the party's legal patent advisor fell within the common

25  interest doctrine, it held that disclosure to the exclusive licensee of the party's patent

26  constituted a waiver.").

27

28

EXHIBIT ____25____

PAGE ____398____

-11-

MOTION TO COMPEL DOCUMENTS DISCLOSED TO THIRD PARTIES

1       The purpose of the common interest exception is not to protect these types of

2 routine business communications with outside parties. It does not shield privileged

3 "information which a party freely shares with other business persons." Oak Indus. v.

4 Zenith Indus., 1998 WL 79614, at *4 (N.D. Ill. 1988). For whatever business or

5 strategic reasons, MGA may have made a choice to disclose privileged information to

6 outside parties. In doing so, it waived any claim to the attorney-client privilege and the

7 protections from further disclosure. See, e.g., Libbey Glass, 1999 U.S. Dist. LEXIS

8 4558, at *19 (supplier who shared legal advice regarding likelihood of infringement

9 with a foreign manufacturer waived the privilege because the disclosure was to

10 facilitate commercial relationship not further common legal interest).

11       This is the very essence of the waiver doctrine, which aims to prevent a party

12 from disclosing privileged information where advantageous but also hiding behind the

13 privilege to avoid disclosure in other contexts. In re Imperial Corp. of Am., 179 F.R.D.

14 286, 290 (S.D. Cal. 1998) ("Since the common interest privilege is an extension of the

15 attorney-client privilege and work product doctrine . . . the court will not allow the

16 common interest privilege to be used as a shield to prevent the disclosure" of privileged

17 information already disclosed). Having disclosed privilege information to its licensees

18 to gain a business advantage, MGA cannot now withhold these communications any

19 longer. To allow such a broad application of the attorney-client privilege would it

20 expand it beyond all reasonable proportions. When faced with situations to the issues

21 presented here, courts have "shown significant restraint in expanding the boundaries of

22 the common interest doctrine." Ferko v. National Ass'n For Stock Car Auto

23 Racing, Inc., 219 F.R.D. 396, 402 (E.D. Tex. 2003); see also United States v.

24 Weissman, 195 F.3d 96, 100 (2d Cir. 1999) (warning that expansions to the attorney-

25 client privilege through the common interest doctrine should be "cautiously extended").

26 And for good reason: at bottom, "the attorney-client privilege is in derogation of the

27 search for truth and its scope must therefore not be expansively construed . . . [by]

28

EXHIBIT _____ 25

PAGE _____ 319

:09/2356738.1

-12-

MOTION TO COMPEL DOCUMENTS DISCLOSED TO THIRD PARTIES

1  novel application of the 'common interest rule.'" <u>U.S. v. Evans</u>, 113 F.3d 1457,

2  1468 (7th Cir. 1997). This court should do the same. MGA's communications with

3  licensees and other outside parties must be disclosed.

4  **III. MGA'S BELATED ASSERTIONS OF PRIVILEGE SHOULD BE**

5  **IGNORED**

6      Even if they had merit, MGA's assertions would have to be disregarded because

7  they came too late. For the majority of the entries at issue, MGA did not initially assert

8  common interest on its logs.[20] This was in clear contrast to numerous entries for which

9  MGA did claim the common interest privilege.[21] After Mattel challenged various

10  entries as having been waived by disclosure, MGA belatedly sought to assert common

11  interest over those entries as well, by letter.[22] The <u>Rules</u> do not permit these kind of

12  attempts "to re-engineer privilege logs to align their privilege assertions with their legal

13  arguments." <u>In re Honeywell Int'l Inc. Sec. Litig.</u>, 230 F.R.D. 293, 299 (S.D.N.Y.

14  2003) (holding that failure to assert privilege on the log resulted in waiver and ordering

15  disclosure). Thus courts have frequently barred parties from belatedly asserting

16  privilege bases not listed in their privilege logs. <u>See, e.g.</u>, <u>General Elec. Co. v.</u>

17  <u>Johnson</u>, 2007 WL 433095, at *5 (D.D.C. Feb. 5, 2007) (rejecting party's attempt to

18  assert different basis for privilege after multiple logs had been produced, and ordering

19  disclosure); <u>John B. v. Goetz</u>, 2007 WL 4014015, at *3 (M.D. Tenn. Nov. 15, 2007)

20

---

[20]  <u>See, e.g.</u>, August Log Nos. 408, 409, 550, 831, 987, 1073, 1080, 1081, 1066, 1107 (no common interest asserted); September Log Nos. 1170, 2831 (no common interest asserted); October Log Nos. 80, 82, 83, 84, 85, 86, 261, 471, 778, 891, 921, 922, 923, 925, 926, 1291, 1337, 1434, 1437, 1438, 1685, 1816, 1817, 1823, 1825, 1844, 1853, 1878, 1889, 2238, 2533, 2534, 2793, 3004, 3005, 3312 (no common interest asserted); Larian Log Nos. 31, 90, 169, 188 (no common interest asserted).
[21]  <u>See, e.g.</u>, October Log Nos. 1439, 1440, 1443, 1444, 1445, 1446, 1453 (asserting the common interest privilege).
[22]  <u>See</u> January 9, 2008 letter from J. Allen to B. Dylan Proctor, at 2-3, Common Interest Proctor Decl., Ex. 3.

EXHIBiT ___ 25

PAGE ___ 460

-13-

209/2356738.1

1 (ordering production where party failed to assert proper basis of privilege on log);

2 Lexington Ins. Co. v. Swanson, 240 F.R.D. 662, 668 (W.D. Wash. Feb. 12, 2007)

3 (ordering production where asserted basis for privilege in briefing but failed to assert it

4 on the log); Banks v. Office of Senate Sergeant-at-Arms, 233 F.R.D. 1, 9 (D.D.C. 2005)

5 (rejecting belated assertion of privilege); Bowne, Inc. v. AmBase Corp., 150 F.R.D.

6 465, 489-90 (S.D.N.Y 1993); Carte Blanche PTE., Ltd. v. Diners Club Int'l, Inc., 130

7 F.R.D. 28, 32 (S.D.N.Y. 1990). It is of no moment that MGA now belatedly, in its

8 meet and confer letters, asserts that these communications are subject to the common

9 interest privilege. A party's "assertions of privilege are controlled by its privilege log"

10 and "simply making a statement in a brief" is insufficient. MCI Construction, LLC. v.

11 Hazen and Sawyer, P.C., 213 F.R.D. 268, 272-73 (M.D.N.C. 2003). Accordingly, to

12 the extent that these communications could have been subject to common interest

13 protection, they are not because that privilege was not asserted. Moreover, MGA's

14 failure to assert the common interest exception in a timely fashion is more than an issue

15 of procedural niceties; rather, it goes to MGA's own understanding as to the nature of

16 its communications with its licensees and underscores the essential fact that the

17 common interest exception—rooted as it is in the doctrine joint defense against a

18 common adversary—should not be easily expanded to the context of business

19 communications between corporate entities.

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28

EXHIBIT __25__

PAGE __401__

MOTION TO COMPEL DOCUMENTS DISCLOSED TO THIRD PARTIES

1

**Conclusion**

2        For the foregoing reasons, Mattel respectfully requests that this Court find that

3   MGA has waived the attorney-client privilege through the affirmative disclosure of

4   privileged information to outside parties, and order all such communications which

5   have been improperly withheld, including but not limited to the examples cited herein,

6   to be produced in their entirety.

7

8   DATED:  January 23, 2008          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
9

10                                     By  B. Dylan Proctor /BDK

11                                        B. Dylan Proctor
                                          Attorneys for Mattel, Inc.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                    EXHIBIT  25

28                                                    PAGE  402

209/2356738.1

-15-

# EXHIBIT 26

CONFORMED

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone:   (213) 443-3000
7   Facsimile:   (213) 443-3100

8   Attorneys for Mattel, Inc.

9                UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                      EASTERN DIVISION

12   CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

13                Plaintiff,                 Consolidated with
                                            Case No. CV 04-09059
14         vs.                              Case No. CV 05-02727

15   MATTEL, INC., a Delaware              **DISCOVERY MATTER**
     corporation,
16                                          **[To Be Heard By Discovery Master**
                  Defendant.                **Hon. Edward Infante (Ret.) Pursuant**
17                                          **To The Court's Order of December 6,**
                                            **2006]**
18   AND CONSOLIDATED ACTIONS
                                            SUPPLEMENTAL NOTICE OF
19                                          MOTION AND MEMORANDUM IN
                                            SUPPORT OF MATTEL, INC.'S
20                                          MOTION TO COMPEL
                                            PRODUCTION OF PREVIOUSLY
21                                          WITHHELD DOCUMENTS ONLY
                                            PORTIONS OF WHICH ARE
22   **CONFIDENTIAL:**                      ALLEGEDLY PRIVILEGED
     **FILED UNDER SEAL PURSUANT**
23   **TO PROTECTIVE ORDER**                [Supplemental Declaration of B. Dylan
                                            Proctor filed concurrently herewith]
24
                                            Date:   TBA
25                                          Time:   TBA
                                            Place:  TBA
26
                                            **Phase I**
27                                          Discovery Cut-off: January 28, 2008
                                            Pre-trial Conference: May 5, 2008
28                                          Trial Date: May 27, 2008

209/2376581.1

2-5-08

EXHIBIT 26   PAGE 4 03

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:  (213) 443-3100

8   Attorneys for Mattel, Inc.

9                  UNITED STATES DISTRICT COURT

10                CENTRAL DISTRICT OF CALIFORNIA

11                       EASTERN DIVISION

12   CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)

13             Plaintiff,               Consolidated with
                                        Case No. CV 04-09059
14        vs.                           Case No. CV 05-02727

15   MATTEL, INC., a Delaware           **DISCOVERY MATTER**
     corporation,
16                                      **[To Be Heard By Discovery Master**
              Defendant.                **Hon. Edward Infante (Ret.) Pursuant**
17                                      **To The Court's Order of December 6,**
   ─────────────────────────────────   **2006]**
18   AND CONSOLIDATED ACTIONS
                                        SUPPLEMENTAL NOTICE OF
19                                      MOTION AND MEMORANDUM IN
                                        SUPPORT OF MATTEL, INC.'S
20                                      MOTION TO COMPEL
                                        PRODUCTION OF PREVIOUSLY
21                                      WITHHELD DOCUMENTS ONLY
                                        PORTIONS OF WHICH ARE
22   **CONFIDENTIAL:**                  ALLEGEDLY PRIVILEGED
     **FILED UNDER SEAL PURSUANT**
23   **TO PROTECTIVE ORDER**            [Supplemental Declaration of B. Dylan
                                        Proctor filed concurrently herewith]
24
                                        Date:   TBA
25                                      Time:   TBA
                                        Place:  TBA
26
                                        **Phase I**
27                                      Discovery Cut-off: January 28, 2008
                                        Pre-trial Conference: May 5, 2008
28                                      Trial Date: May 27, 2008

1 TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that Mattel, Inc. hereby supplements its

3 Notice of Motion and Motion to Compel Production of Previously Withheld

4 Documents Only Portions of Which are Allegedly Privileged ("Motion to Compel"),

5 filed on January 22, 2008,

6         As set out in Mattel's Motion to Compel, MGA initially took the position

7 in this case that it could withhold entire documents because portions contained

8 privileged communications. After an extensive meet and confer, MGA's counsel

9 agreed to "produce in redacted form any documents which we determine are capable

10 of being redacted without revealing privileged information" and also to prepare

11 revised privilege logs.[1] Further, MGA's new counsel explained that, unlike MGA's

12 prior counsel, they recognized the obligation to produce non-privileged portions of

13 documents and have done so in the productions and logs they have provided.[2] As set

14 forth in Mattel's motion, that assertion appeared to be incorrect because MGA's new

15 counsel had not followed its stated practice.

16         Moreover, following the submission of Mattel's Motion to Compel,

17 MGA and Isaac Larian have produced three privilege logs—on January 25, January

18 28, and Janaury 30, 3008—each of which continues to exhibit the same inappropriate

19 approach of withholding documents in their entirety rather than producing them in

20 redacted form.[3] Of the more than two thousand entries on the January 25, 2008 log, a

21

22

---

23   [1]   Letter from Jose Allen to B.D. Proctor, dated December 24, 2007, attached as

24 Exhibit 4 to previously filed Declaration of B. Dylan Proctor in Support of Mattel's Motion to Compel Documents Only Portions of Which are Allegedly Privileged, filed

25 January 22, 2008 ("Portions Proctor Decl.").

  [2]   See id., Portions Proctor Decl., Exh. 4.

26   [3]   MGA produced privilege logs January 25, January 28, and January 30, 2008.

27 The logs are attached as Exhibits 1, 2, and 3, respectively, to the concurrently filed

28 Supplemental Declaration of B. Dylan Proctor ("Supp. Proctor Decl."). EXHIBIT 2 4

07209/2376581.1

great many are communications between non-lawyers.[4]  The same pattern is borne out in the other logs recently produced.  On both the January 28, 2008 and January 30, 2008 privilege logs, nearly twenty percent of the entries on each log are communications between non-lawyers which appear to have been withheld in their entirety.[5]  As before, these communications likely contain substantial portions which are not privileged and should be produced at least in redacted form.  For example, Entry No. 31 on the January 25th log is a May 21, 2003 email from Isaac Larian to Mel Woods, neither of whom is an attorney, described as an "[e]mail chain discussing

---

[4]    See, e.g., Jan. 25, 2008 Privilege Log Nos. 3, 8, 20, 31, 32, 52, 57, 58, 59, 68, 70, 79, 96, 97, 103, 104, 106, 107, 108, 110, 111, 114, 115, 129, 133, 150, 151, 152, 153, 154, 155, 156, 157, 158, 182, 205, 209, 232, 233, 245, 253, 255, 262, 267, 287, 296, 371, 372, 376, 381, 536, 544-548, 551, 557, 577, 584, 585, 588, 589, 591-599, 609-612, 614, 655, 656, 672, 683, 684, 693, 749, 759, 762, 764, 765, 767, 769, 771, 773, 1083, 1172, 1173, 1178, 1179, 1254, 1262, 1275, 1277, 1281, 1285, 1287, 1292, 1301, 1302, 1306, 1309, 1318, 1322, 1324, 1356, 1360, 1364, 1365, 1366, 1367, 1374, 1399, 1413, 1418, 1420, 1424, 1435, 1437, 1438, 1439, 1440, 1460, 1463, 1465, 1468, 1471, 1473, 1474, 1475, 1476, 1509, 1525, 1529, 1536, 1587, 1603, 1609, 1622-1625, 1627, 1635, 1641, 1646, 1655, 1662, 1701, 1702, 1703, 704, 1705, 1706, 1708, 1709, 1710, 1711, 1712, 1713, 1716, 1718, 1719, 1720, 1721, 1722, 1724, 1727, 1728, 1729, 1730, 1731, 1732, 1734, 1735, 1736, 1737, 1767, 1773, 1774, 1775, 1779, 1783, 1788, 1821, 1824, 1890, 1896, 1898, 1899, 1903, 1904, 1917, 1919, 1920, 1968-1970, 1977, 1986, 1998, 2011, 2025, 2039, 2042, 2043, 2064, 2071, 2080, 2082, 2144, 2149, Supp Proctor Decl., Exh. 1.

[5]    See, e.g., Jan. 28, 2008 Privilege Log Nos. 3, 5, 8, 11, 15, 17, 27, 28, 30, 35, 36, 37, 41, 42, 43, 49, 50, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 64, 65, 66, 68-72, 74, 76, 77, 78, 79, 80, 81, 83, 84, 85, 93, 104, 107, 112, 115, 117, 119, 120, 123, 124, 139, 140, 143, 145, 149, 150, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 166, 167, 172, 173, 174, 175, 176, 182, 183, 185, 186, 187, 188, 189, 228, 239, 240, 244, 245, 247, 250, 254, 264, 268, 270, 276, 295, 296, 301, 302, 303, 314, 317, 318, 332, 357, 365, 367, 370, 371, 382, 382, 402, 479, 500, 501, 502, 503, 504, 505, 506, 523, 559, 578, 604, 605, 606, 607, 610, 611, 619, 622, 630, 636, 638, 639, 668-670, 705, 706, 725, 726, 728, 729, 730, 734, Supp. Proctor Decl., Exh. 2; Jan. 30, 2008 Privilege Log Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 37, 38, 39, 40, 42, 49, 50, 66, 122, 124, 225, 226, 252, 257, 294, 295, 296, 297, 298, 299, 300, Supp. Proctor Decl., Exh. 3.

EXHIBIT  26

SUPPLEMENTAL MEMORANDUM ISO MATTEL'S MOTION TO COMPEL PRODUCTION OF PREVIOUSLY WITHHELD DOCUMENTS ONLY PORTIONS OF WHICH ARE ALLEGEDLY PRIVILEGED

1  manufacturing issues," and withheld under a claim of attorney-client privilege.[6]
2  While some communications between non-lawyers may contain some privileged
3  information, the sheer number of entries withheld, coupled with MGA's practice of
4  withholding the communications in their entirety, is troubling.  MGA should not be
5  permitted to convert every communication that purportedly contains some privileged
6  information into an entirely privileged communication simply by listing it in its
7  privilege logs.

8          Accordingly, for the reasons set forth in Mattel's Motion to Compel, the
9  Court should order MGA and Larian to (1) produce all documents they have
10  improperly withheld under a claim of privilege, either in their entirety or in redacted
11  form, and (2) provide amended privilege logs for any documents or portions of
12  documents they continue to withhold on a claim of privilege to enable Mattel to
13  assess their privilege claims and, if necessary, engage in follow-up motion practice to
14  obtain compliance, including as to the new privilege logs served by MGA and Larian
15  after Mattel's Motion to Compel was filed.

16
17  DATED: February 5, 2008          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
18
19                                   By  B Dylan Proctor  BDK
20                                   B. Dylan Proctor
                                     Attorneys for Mattel, Inc.
21
22
23
24
25                                   EXHIBIT  24
26                                   PAGE  407
27
28

6  Jan. 25, 2008 Privilege Log No. 30, at 3, Supp. Proctor Decl., Exh. 1.

J7209/2376581.1

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Counter-Claimant,<br><br>        v.<br><br>MATTEL, INC., a Delaware Corporation,<br><br>                    Counter-Defendant. | Case No. CV 04-09049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Discovery Matter<br><br>[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant to the Court's Order of December 6, 2006<br><br>**PROOF OF SERVICE**<br><br>Date:    TBD<br>Time:    TBD<br>Place:   TBA<br><br>Phase 1<br><br>Discovery Cut-Off:       Jan. 28, 2008<br>Pre-Trial Conference:   May 5, 2008<br>Trial Date:                   May 27, 2008 |

EXHIBIT  24

PAGE  408

1    **PROOF OF SERVICE**

2    I am employed in the County of Los Angeles, State of California. I am over the age of
     eighteen years and not a party to the within action; my business address is Now Legal Service,
3    1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4    On February 5, 2008, I served true copies of the following document(s) described as

5    1. SUPPLEMENTAL NOTICE OF MOTION AND MEMORANDUM IN
     SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF
6    PREVIOUSLY WITHHELD DOCUMENTS ONLY PORTIONS OF WHICH ARE
     ALLEGEDLY PRIVILEGED
7

8    2. SUPPLEMENTAL DECLARATION OF B. DYLAN PROCTOR IN SUPPORT
     OF MATTEL'S MOTIONS TO COMPEL:
9    (A) PRODUCTION OF PREVIOUSLY WITHHELD DOCUMENTS ONLY
     PORTIONS OF WHICH ARE ALLEGEDLY PRIVILEGED;
10   (B) PRODUCTION OF THIRD PART COMMUNICATIONS IMPROPERLY
     WITHHELD UNDER A CLAIM OF 'COMMON INTEREST" PRIVILEGE;
11   (C) PRODUCTION OF WITHHELD MGA: (1) TRADEMARK SEARCH
     RESULTS, (2) DATE OF FIRST USE INFORMATION, AND (3) FACTUAL
12   DATA COMMUNICATED FOR THE PURPOSE OF FILING TRADEMARK OR
     OTHER INTELLECTUAL PROPERTY APPLICATIONS
13

14
     on the parties in this action as follows:
15

16       Thomas J. Nolan, Esq.
         Carl Roth, Esq.
17       **SKADDEN, ARPS, SLATE, MEAGHER**
         **& FLOM LLP**
18       300 S. Grand Ave., STE 3400
         Los Angeles, CA 90071

19

20   **[X] BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the
     person(s) being served.
21

22       I declare that I am employed in the office of a member of the bar of this Court at whose
     direction the service was made.

23       Executed on February 5, 2008, at Los Angeles, California.

24

25       _____
         Dave Quintana
26

27

28                                          EXHIBIT  $2b$

                                            PAGE  $409$

quinn emanuel

**PROOF OF SERVICE**

1

2   I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa

3   Street, 10th Floor, Los Angeles, California 90017-2543.

4

5   On February 5, 2008, I served true copies of the following document(s) described as

6   1. SUPPLEMENTAL NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF PREVIOUSLY WITHHELD DOCUMENTS ONLY PORTIONS OF WHICH ARE

7   ALLEGEDLY PRIVILEGED

8   2. SUPPLEMENTAL DECLARATION OF B. DYLAN PROCTOR IN SUPPORT OF MATTEL'S MOTIONS TO COMPEL:

9   (A) PRODUCTION OF PREVIOUSLY WITHHELD DOCUMENTS ONLY PORTIONS OF WHICH ARE ALLEGEDLY PRIVILEGED;

10   (B) PRODUCTION OF THIRD PART COMMUNICATIONS IMPROPERLY

11   WITHHELD UNDER A CLAIM OF 'COMMON INTEREST" PRIVILEGE;

12   (C) PRODUCTION OF WITHHELD MGA: (1) TRADEMARK SEARCH RESULTS, (2) DATE OF FIRST USE INFORMATION, AND (3) FACTUAL

13   DATA COMMUNICATED FOR THE PURPOSE OF FILING TRADEMARK OR

14   OTHER INTELLECTUAL PROPERTY APPLICATIONS

15

16

17   Michael Page, Esq.                     Judge Edward Infante
    John E. Trinidad, Esq.                 JAMS
    **Keker & Van Nest**                   c/o Sandra Chan

18   710 Sansome Street                     Two Embarcadero Center
    San Francisco, CA 94111                Suite 1500

19                                          San Francisco, CA 94111

20

21   **[X] BY FEDEX:** I deposited such document(s) in a box or other facility regularly maintained by FedEx, or delivered such document(s) to a courier or driver authorized by FedEx to receive

22   documents, in sealed envelope(s) or package(s) designated by FedEx with delivery fees paid or provided for, addressed to the person(s) being served.

23

24   I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

25   Executed on February 5, 2008, at Los Angeles, California.

26

27

28                              Shawna Allison

                                            EXHIBIT 26

**quinn emanuel**

1 | **PROOF OF SERVICE**

2 |  I am employed in the County of Los Angeles, State of California. I am over the age of
eighteen years and not a party to the within action; my business address is 865 South Figueroa
3 | Street, 10th Floor, Los Angeles, California 90017-2543.

4 | On February 5, 2008, I served true copies of the following document(s) described as

5 | 1. SUPPLEMENTAL NOTICE OF MOTION AND MEMORANDUM IN
SUPPORT OF MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF
6 | PREVIOUSLY WITHHELD DOCUMENTS ONLY PORTIONS OF WHICH ARE
ALLEGEDLY PRIVILEGED

7 |

8 | 2. SUPPLEMENTAL DECLARATION OF B. DYLAN PROCTOR IN SUPPORT
OF MATTEL'S MOTIONS TO COMPEL:
9 | (A) PRODUCTION OF PREVIOUSLY WITHHELD DOCUMENTS ONLY
PORTIONS OF WHICH ARE ALLEGEDLY PRIVILEGED;
10 | (B) PRODUCTION OF THIRD PART COMMUNICATIONS IMPROPERLY
WITHHELD UNDER A CLAIM OF 'COMMON INTEREST" PRIVILEGE;
11 | (C) PRODUCTION OF WITHHELD MGA: (1) TRADEMARK SEARCH
12 | RESULTS, (2) DATE OF FIRST USE INFORMATION, AND (3) FACTUAL
DATA COMMUNICATED FOR THE PURPOSE OF FILING TRADEMARK OR
13 | OTHER INTELLECTUAL PROPERTY APPLICATIONS
14 | on the parties in this action as follows:

15 |     Michael Page, Esq.                    Alexander H. Cote, Esq.
     John E. Trinidad, Esq.               **Overland Borenstein, Scheper & Kim,**
16 |     **Keker & Van Nest**                 **LLP**
     710 Sansome Street                   300 South Grand Avenue, Suite 2750
17 |     San Francisco, CA 94111              Los Angeles, CA 90071

18 |

19 | **[X] BY MAIL:** I am "readily familiar" with the practices of Quinn Emanuel Urquhart Oliver &
Hedges for collecting and processing correspondence for mailing with the United States Postal
20 | Service. Under that practice, it would be deposited with the United States Postal Service that
same day in the ordinary course of business. I enclosed the foregoing in sealed envelope(s)
21 | addressed as shown above, and such envelope(s) were placed for collection and mailing with
postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary
22 | business practices.

23 |  I declare that I am employed in the office of a member of the bar of this Court at whose
direction the service was made.
24 |

25 |  Executed on February 5, 2008, at Los Angeles, California.

26 |

27 |                                      Shawna Allison

28 |
                                      EXHiBiT ___2۷___

21554/2377384.1                    PROOF OF SERVICE--    PAGE ___1١___

# EXHIBIT 27

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,  )
           )
    PLAINTIFF,    )
           )
   V.        ) CASE NO. CV04-9049 SGL (RNBX)
           ) [CONSOLIDATED WITH
           ) CASE NO. 04-9059 AND
           ) CASE NO. 05-2727]
MATTEL, INC., A DELAWARE, A  )
CORPORATION,      )
           )
    DEFENDANT.   )
           )

# TELEPHONIC TRANSCRIPT OF PROCEEDINGS

# MARCH 10, 2008



**REPORTED BY:**
ANGELA DUPRE
CSR NO. 7804
JOB NO. 08AD016

COURT REPORTERS
515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT __27__

PAGE ____4/2____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| CARTER BRYANT, AN INDIVIDUAL, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | CASE NO. |
| | ) | |
| MATTEL, INC., A DELAWARE | ) | CV 04-9049 SGL (RNBX) |
| CORPORATION, | ) | [CONSOLIDATED WITH |
| | ) | CASE NO. 04-9059 AND |
| DEFENDANT. | ) | CASE NO. 05-2727] |
| | ) | |
| _____ | ) | |
| | ) | |
| AND CONSOLIDATED ACTION(S). | ) | |
| _____ | ) | |

TELEPHONIC TRANSCRIPT OF
PROCEEDINGS, TAKEN BEFORE HON.
EDWARD A. INFANTE, AT 865 SOUTH
FIGUEROA STREET, THIRD FLOOR, LOS
ANGELES, CALIFORNIA, COMMENCING
AT 8:32 A.M., MONDAY, MARCH 10,
2008, BEFORE ANGELA DUPRE, CSR 7804.

EXHIBIT 2 27

PAGE 413

```
 1    APPEARANCES OF COUNSEL:
 2

 3    FOR CARTER BRYANT:

          KEKER & VAN NEST, LLP
 4        BY:  MATTHEW M. WERDEGAR, ESQ.
               MICHAEL H. PAGE, ESQ.
 5        710 SANSOME STREET
          SAN FRANCISCO, CALIFORNIA 94111
 6        (415) 391-5400
          (TELEPHONICALLY)
 7

 8    FOR MATTEL, INC.:
 9        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
          BY:  TIMOTHY L. ALGER, ESQ.
10             JON D. COREY, ESQ.
               HARRY A. OLIVAR, JR., ESQ.
11             B. DYLAN PROCTOR, ESQ.
               DAVID W. QUINTO, ESQ.
12        865 SOUTH FIGUEROA STREET
          TENTH FLOOR
13        LOS ANGELES, CALIFORNIA 90017-2543
          (213) 443-3000
14
15    FOR MGA ENTERTAINMENT, INC.:
16        SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
          BY:  RAOUL D. KENNEDY, ESQ.
17             JOSE R. ALLEN, ESQ.
               THOMAS J. NOLAN, ESQ.
18             RICHARD J. ZUROMSKI, JR., ESQ.
               PAUL M. ECKLES, ESQ. (NEW YORK OFFICE)
19             MATTHEW E. SLOAN, ESQ. (LOS ANGELES OFFICE)
          FOUR EMBARCADERO CENTER
20        SUITE 3800
          SAN FRANCISCO, CALIFORNIA 94111
21        (415) 984-6400
          (TELEPHONICALLY)
22
23    ALSO PRESENT:
24        HON. EDWARD A. INFANTE (TELEPHONICALLY)
25
```

EXHIBIT ___27___

PAGE ___4/4___

3

```
 1                  LOS ANGELES, CALIFORNIA; MONDAY
 2                       MARCH 10, 2008
 3                        8:32 A.M.
 4
 5        JUDGE INFANTE:  WOULD YOU ENTER YOUR APPEARANCES,
 6   PLEASE.
 7             FIRST MATTEL.
 8        MR. COREY:  SURE.
 9             JON COREY, TIM ALGER, HARRY OLIVAR, DAVID
10   QUINTO, AND DYLAN PROCTOR, ON BEHALF OF MATTEL.
11             GOOD MORNING, YOUR HONOR.
12        JUDGE INFANTE:  MORNING.
13             MGA, PLEASE.
14        MR. KENNEDY:  GOOD MORNING, YOUR HONOR.
15             RAOUL KENNEDY, JOSE ALLEN, RICHARD
16   ZUROMSKI, PAUL ECKLES, AND TOM NOLAN, ON BEHALF OF
17   MGA.
18        MR. WERDEGAR:  GOOD MORNING, YOUR HONOR.
19             MATT WERDEGAR AND MIKE PAGE, ON BEHALF OF
20   CARTER BRYANT.
21        JUDGE INFANTE:  OKAY.  IS THERE A COURT
22   REPORTER ON BOARD?
23        MR. COREY:  YES, THERE IS, YOUR HONOR.
24        JUDGE INFANTE:  OKAY.  WE HAVE A HEARING ON
25   SEVERAL MOTIONS.  I HAVE YOUR JOINT REPORT
```

EXHIBIT __27__

PAGE __4/5__

4

1        MR. OLIVAR:   A BRIEF REPLY, YOUR HONOR.   HARRY

2   OLIVAR.

3        THIS MOTION IS IN NO WAY ABOUT LISTING

4   ATTACHMENTS SEPARATELY OR OTHERWISE.   ALL THREE OF

5   THESE MOTIONS HAVE BEEN ABOUT A CONSISTENT PATTERN

6   LISTING ON THE LOGS WHERE DOCUMENTS ARE LISTED THAT

7   EITHER SEEM -- APPEAR FROM THE DESCRIPTION NOT TO

8   BE PRIVILEGED OR TO CONTAIN NONPRIVILEGED

9   INFORMATION, AND UNDER YOUR HONOR'S ORDERS AND

10  UNDER THE LAW, WE'RE ENTITLED TO GET.

11       AND WE KEEP HEARING THINGS LIKE, WE NEED

12  TO MOVE OFF THESE LOGS, WE NEED TO MOVE FORWARD, IN

13  A SITUATION WHERE BOTH SIDES CAN SEE THAT THERE ARE

14  HUNDREDS OF DOCUMENTS LISTED ON THESE VERY

15  LATE=PRODUCED LOGS THAT SIMPLY AREN'T PRIVILEGED.

16       AND WHAT WE'RE ASKING YOUR HONOR TO DO IS

17  PUT AN ORDER IN PLACE THAT GETS MGA PRODUCING THESE

18  THINGS THAT AREN'T PRIVILEGED WITH SOME COMPULSION;

19  NOT THAT WE'RE WORKING ON IT AND IT'S GOING TO BE

20  VOLUNTARY IS INSUFFICIENT FOR OUR PURPOSES.   WE

21  WOULD LIKE AN ORDER THAT SAYS THAT THEY ARE

22  REQUIRED TO PRODUCE THE DOCUMENTS WE'VE ASKED FOR

23  IN THE THREE CATEGORIES.

24       AND WITH THAT, YOUR HONOR, I'LL SUBMIT.

25  JUDGE INFANTE:   OKAY.   ONE MOMENT.

EXHIBIT 27

PAGE 416

84

1          I FEEL THAT MATTEL HAS A LOT OF GOOD

2    POINTS HERE.  THERE ARE DOCUMENTS THAT LOOK LIKE

3    THEY'RE NOT PRIVILEGED.  I'M NOT QUITE SURE WHAT

4    THE BEST REMEDY IS.  I OBVIOUSLY DON'T HAVE TIME

5    FOR A MASSIVE IN CAMERA REVIEW.

6          I DO THINK THAT THE LOGS THAT HAVE JUST

7    BEEN PRODUCED THAT SUPERSEDE THE EARLIER LOGS

8    PRODUCED BY FORMER COUNSEL, MEAN THAT THOSE FORMER

9    LOGS SHOULD BE IGNORED AT THIS POINT, THE AMENDED

10   LOGS SHOULD BE WHAT'S FOCUSED UPON.

11         MATTEL'S MOTION IS WELL-TAKEN, BUT I'M

12   NOT QUITE SURE WHAT TO DO ABOUT IT.  I THINK THE

13   PARTIES SHOULD CONTINUE TO MEET AND CONFER.

14         YOU INDICATED YOU HAD MORE LOGS TO

15   PRODUCE IN THE NEXT FEW DAYS, IF I HEARD YOU

16   CORRECTLY, MR. ALLEN.

17       MR. ALLEN:  THAT IS CORRECT, YOUR HONOR.  WE

18   EXPECT BY THE END OF THIS WEEK, WE WILL BE THROUGH

19   WITH PRODUCING ALL OF THE REVISED AUGUST AND

20   SEPTEMBER LOGS.

21       MR. OLIVAR:  YOUR HONOR, WE WOULD ASK THAT AN

22   ORDER BE PUT IN PLACE THAT SETS FORTH THE BASIC

23   PRINCIPLES THAT WE HAVE BEEN ARGUING WITH MGA

24   ABOUT, THAT -- AND IT'S NOT CLEAR AT ALL FROM THEIR

25   PAPERS THAT THERE IS AN AGREEMENT THAT THEY'LL

85

EXHIBIT 27

PAGE 4/7

1   COMPLY WITH THE LAW UNDER THESE PRINCIPLES.

2          FIRST, THAT NONPRIVILEGED INFORMATION

3   WILL BE PRODUCED, IN DOCUMENTS THAT ARE MIXED, THAT

4   PRIVILEGED INFORMATION WILL BE REDACTED; SECOND,

5   THAT FACTUAL INFORMATION REGARDING TRADEMARKS AND

6   FIRST DATES OF USE WILL BE PRODUCED; AND, THIRD, A

7   FINDING THAT THEY HAVE NOT MADE A SUFFICIENT

8   SHOWING THAT THERE IS A COMMON INTEREST PRIVILEGE

9   WITH THEIR LICENSEES, BECAUSE THERE'S NO IDENTICAL

10  LEGAL INTEREST INVOLVED.

11         WE BELIEVE THAT AN ORDER SUCH AS THAT IS

12  NECESSARY TO MOVE THE PROCESS ALONG AND PUT AN END

13  TO THE DISPUTES ABOUT THESE DOCUMENTS THAT ARE

14  CLAIMED TO BE PRIVILEGED THAT WE BELIEVE ARE NOT.

15      JUDGE INFANTE:  I AGREE WITH MATTEL'S POSITION.

16  THE STATEMENT YOU JUST MADE IS SHARED BY ME.

17         BUT I THINK IT'S PREMATURE TO ISSUE AN

18  ORDER.  I'M GIVING YOU THE GUIDANCE THAT YOU JUST

19  ASKED FOR.  AND I THINK THE PARTIES NEED TO MEET

20  AND CONFER.

21         YOUR FIRST POINT IS THAT THE DOCUMENTS

22  SHOULD NOT BE WITHHELD AS TOTALLY PRIVILEGED, WHERE

23  PORTIONS OF IT ARE UNPRIVILEGED, AND PORTIONS OF IT

24  ARE PRIVILEGED.  YOU NEED TO GET INTO A REDACTION.

25         I ALSO SHARE YOUR VIEWS WITH RESPECT TO

86

EXHIBIT 27

PAGE 4/8

1   THE COMMON INTEREST CLAIM.  I -- I DON'T SEE A

2   BASIS FOR IT.  OF COURSE, I HAVEN'T SEEN THE

3   DOCUMENTS THEMSELVES, BUT I THINK THERE NEEDS TO BE

4   FURTHER PRODUCTION OF AMENDED LOGS.  I THINK THERE

5   NEEDS TO BE A VERY SERIOUS MEET AND CONFER.  I

6   THINK MATTEL'S POINTS ARE WELL-TAKEN, BUT I'M NOT

7   GOING TO ISSUE AN ORDER AT THIS MOMENT.

8        MR. OLIVAR:  WELL, THANK YOU FOR THE GUIDANCE,

9   YOUR HONOR.  WE'LL ATTEMPT TO ARRANGE A MEET AND

10  CONFER EXPEDITIOUSLY.  AND IF WE NEED TO GET BACK

11  BEFORE YOUR HONOR, WE'LL TRY TO GET BACK AS SOON AS

12  POSSIBLE.

13       JUDGE INFANTE:  THAT'S THE BEST I CAN DO AT

14  THIS POINT.  BUT I DO AGREE WITH MATTEL ON MOST OF

15  ITS ARGUMENTS.

16       MR. OLIVAR:  THANK YOU, YOUR HONOR.

17       JUDGE INFANTE:  ALL RIGHT.  DOES THAT TAKE CARE

18  OF 9, 10, AND 11?

19       MR. KENNEDY:  FROM OUR PERSPECTIVE, IT DOES,

20  YOUR HONOR.

21       JUDGE INFANTE:  OKAY.  I THINK THAT COMPLETES

22  OUR LIST FOR TODAY.

23            THERE WERE SEVERAL OTHER MOTIONS THAT YOU

24  LISTED IN YOUR JOINT REPORT WHERE MEET AND CONFER

25  EFFORTS HAVE NOT BEEN COMPLETED.

EXHIBIT 27

PAGE 419

1  STATE OF CALIFORNIA      )
                             )   SS.
2  COUNTY OF LOS ANGELES     )

3

4          I,   ANGELA DUPRE   , CERTIFIED

5  SHORTHAND REPORTER, CERTIFICATE NUMBER 7804, FOR

6  THE STATE OF CALIFORNIA, HEREBY CERTIFY:

7          THE PROCEEDINGS WERE RECORDED

8  STENOGRAPHICALLY BY ME AND WERE TRANSCRIBED TO THE

9  BEST OF MY ABILITY;

10         THE FOREGOING TRANSCRIPT IS A TRUE AND

11 CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

12         I FURTHER CERTIFY THAT I AM NEITHER

13 COUNSEL FOR NOR RELATED TO ANY PARTY TO SAID ACTION

14 NOR IN ANY WAY INTERESTED IN THE OUTCOME THEREOF.

15         IN WITNESS WHEREOF, I HAVE HEREUNTO

16 SUBSCRIBED MY NAME THIS 17 DAY OF

17 March          , 2008.

18

19

20

21 _____

22

23

24

25

EXHIBIT 90 27

PAGE 420

# EXHIBIT 28

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3176**

WRITER'S INTERNET ADDRESS
**harryolivar@quinnemanuel.com**

March 20, 2008

<u>**VIA FACSIMILE**</u>

Mr. Jose Allen, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Embarcadero Center, Suite 3800
San Francisco, CA 94111

Re:  <u>Mattel, Inc. v. Carter Bryant, et al.</u>

Dear Jose:

I have not received a response to my March 12, 2008 letter which, as directed by Judge Infante at the March 10, 2008 hearing, sought to schedule a further meet and confer on Mattel's challenge to MGA's privilege logs. As you know, Judge Infante stated that he agreed with Mattel's positions on these issues. Please let me know when you are available to discuss these issues or whether you have revised your privilege claims in light of Judge Infante's comments.

Additionally, last week we received a letter from your colleague, Lance Etcheverry, enclosing an additional MGA privilege log (dated March 12, 2008) related to certain documents that MGA claims it only recently identified in its document repository.

As you know, Judge Infante indicated his agreement at the hearing that MGA had failed to support its claim of a common interest privilege with Bandai and other third parties. Yet MGA continues to assert this privilege as to several entries on the recent log. See Nos. 4, 5, 6, 7, 8, 9, 16, 19, 20, 21. Although the log indicates that some of these documents have been produced in redacted form, they must be produced in their entirety.

Additionally, my prior letter left off certain entries that should have been included in Appendix A. These entries are August Log Nos. 51-53, 457, 458, 525-532, 550, 647-649, 660-663, 692, 726, 727, 733, 735, 764, 772, 791, 811-813, 821-824, 850, 851, 858, 859, 86, 949-952, 964,-973,

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2433443.1

EXHIBIT _28_

PAGE _421_

979, 984, 994, 1013, 1040, 1042, 1043, 1047, 1055, 1068-1078, 1098-1101, 1109, 1110;
September Log Nos. 16, 111, 116.

Please be prepared to discuss these entries when we meet and confer, and please let me know
when you are available, promptly.

Very truly yours,

Harry A. Olivar, Jr. /RR

Harry A. Olivar, Jr.

07209/2433443.1

2

EXHIBIT 28

PAGE 422

# EXHIBIT 29

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3176

WRITER'S INTERNET ADDRESS
harryolivar@quinnemanuel.com

May 2, 2008

**Via Facsimile and U.S. Mail**

Mr. Jose Allen, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Embarcadero Center, Suite 3800
San Francisco, CA 94111

Re:    <u>Mattel, Inc. v. Bryant, et al.</u>

Dear Jose:

In response to your stated desire to defer portions of Mattel's pending motions challenging the validity of privilege assertions as to multiple entries on MGA's privilege logs, Mattel is willing to agree to the following:

Mattel will divide the entries raised in its motions into two categories—the first category listing entries that Mattel believes relate most clearly to Phase 1, and the second category entries as to which Mattel is willing to defer consideration (subject to the representation from MGA set forth below). In my previous letters, I provided you with Appendices that listed the entries corresponding to the challenges raised in Mattel's motions. As discussed, Appendix A and Appendix B will be revised to reflect this division between challenges that should be determined now ("category-A1" and "category-B1"), and those Mattel is willing to defer ("category-A2" and "category-B2").

Mattel's accommodation is premised on receipt of MGA's written representation that the challenges Mattel is willing to defer do not relate to Phase 1 matters:

With regard to the category-A2 entries, MGA should represent that none of the documents as to which a ruling is deferred refer or relate to any of Carter Bryant, Mattel, Bratz products,

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

EXHIBIT _____29_____

PAGE _____423_____

including development, licensing, marketing, revenue and sales of such products, or generally to the time period before July 1, 2001, regardless of the actual date of the document or communication.

With regard to the category-B2 entries, MGA should represent that none of the documents as to which a ruling is deferred refer or relate to (i) trademark search requests or trademark search results sought or obtained prior July 1, 2001, regardless of the actual date of the document, (ii) dates of first use before July 1, 2001, regardless of the actual date of the document, and (iii) Carter Bryant, Mattel, or Bratz products, including development, licensing, marketing, revenue and sales of such products.

Any entries as to which MGA is not willing to make the above representations should be included in category 1, for immediate resolution by the Discovery Master.

Please let me know whether MGA is willing to make the above representations, so that we can proceed with resolution of Mattel's motions.

Best personal regards,

Harry A. Olivar (by)

Harry A. Olivar, Jr.

07209/2490414.2

2

EXHIBIT ___29___

PAGE ___424___

# EXHIBIT 30

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR EMBARCADERO CENTER

SAN FRANCISCO, CALIFORNIA 94111-4144

TEL: (415) 984-6400
FAX: (415) 984-2698
www.skadden.com

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
(415) 984-6442
DIRECT FAX
(888) 329-1260
EMAIL ADDRESS
JRALLEN@SKADDEN.COM

May 7, 2008

**Via Email and U.S. Mail**

Harry Olivar, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges LLP
865 South Figueroa Street
Los Angeles, California

      RE:    Carter Bryant v. Mattel, Inc., Case No. CV 04-9049
            SGL (RNBx) (Consolidated with Case Nos. CV 04-
            09059 and CV 05-02727

Dear Harry:

          I write to follow up on our meet and confer discussions regarding the entries on several privilege logs prepared by MGA[1] and to respond to your letter dated May 2, 2008, in which you responded to the proposal we made at our meet and confer session on April 28, 2008.

          As you may recall, at the April 28 meet and confer session we proposed that in light of the vast number of documents currently at issue (approximately 1500 listed in your March 12, 2008 letter), the parties should find a way to narrow the number of documents Judge Infante would be required to review *in camera* with respect to your pending motions. Specifically, given the fact that Phase 2 discovery has been stayed, we suggested that the parties' attention should be narrowed to focus only on documents related to Phase 1. In addition, we informed

---

[1]    Specifically, the logs produced by MGA in August, September and November 2007, as well as several logs produced in January 2008.

EXHIBIT    30

PAGE    425

Harry Olivar, Esq.
May 7, 2008
Page 2


you that because of the exceedingly broad scope of Mattel's discovery requests (such
as requests for documents that in any way "refer or relate" to Bratz), the privilege
logs of necessity included numerous documents that simply had nothing to do with
Phase 1 issues, nor even likely Phase 2. We therefore proposed that the parties
attempt to agree upon a protocol for identifying documents on the privilege logs that
are relevant only to Phase 1 issues. In this regard, we suggested that for purposes of
resolving the pending dispute over MGA's privilege logs the parties should focus
their attention on: 1) documents dated prior to June 30, 2001; 2) documents that refer
or relate to Carter Bryant or Mattel; and 3) documents that relate to the initial
development of first generation Bratz dolls. In our view, this approach would
drastically reduce the number of documents in dispute and also reduce the number of
documents that Judge Infante would have to review *in camera* in order to resolve
MGA's privilege claims.

During our discussions you identified two specific entries on MGA's
privilege logs, both of which aptly illustrated the merit of attempting to narrow the
scope of the documents in dispute. Specifically, you identified entry number 1898
on MGA's January 23/25, 2008 privilege log as an example of a document you
sought as part of your "Appendix A" documents (i.e., communications that appeared
to be between non-lawyers). After reviewing the document we informed you that it
involved an e-mail forwarding legal advice regarding language to include on
packaging for certain products in foreign countries. You also identified entry
number 27 on MGA's January 28, 2008 privilege log as an example of a document
that was part of your "Appendix B" documents (related to so-called "trademark
search results"). As we disclosed to you, without waiving any privileges, this
document related to the potential formation of a corporation in a foreign country and
had nothing to do with the issues in Phase 1 or Phase 2. We pointed out that it made
no sense for the parties to expend their resources debating the privileged status of
documents such as these because they have no potential bearing on the case. You
agreed that it was clear that neither of the documents you specifically pointed to as
"exemplars" had anything to do with Phase 1 or Phase 2.

In response to our invitation for you to submit a counterproposal for
our consideration on ways to narrow the number of documents in dispute, you sent
your letter of May 2, 2008 in which you identified two categories of documents: 1)
documents that you believe relate most clearly to Phase 1; and 2) documents that
could be deferred for later consideration, subject to receiving specified
representations from MGA. Unfortunately, your proposal does little to reduce the
number of documents at issue. By our count, the category 1 documents that you
have identified total approximately 1000 in number. We think it is unreasonable to
expect Judge Infante to conduct an *in camera review* of 1000 documents. In

EXHIBIT ____30____

PAGE ____426____

Harry Olivar, Esq.
May 7, 2008
Page 3

addition, the vast majority of your category 1 documents have nothing to do with Phase 1 issues. The parties therefore face the prospect of debating privilege claims for documents that have no relevance to this litigation. We do not believe this a productive use of judicial resources or the parties' resources. We urge you, once again, to put forward a proposal that reduces the number of documents that will have to be discussed and possibly submitted for *in camera* review.

Finally, we continue to disagree with your characterization of certain documents in your proposed "Appendix B1" regarding what you term "trademark search requests" or "trademark search reports." As we explained, the documents you seek typically involve an attorney's legal advice regarding trademark strategy. The same holds true for documents that include a "date of first use" and other "factual data" that is incidental to the legal advice being provided. Under any analysis these documents would be privileged and you agreed that you are not seeking privileged material. With respect to your position that merely "factual material" should be produced in redacted form, we note that the so-called "factual information" that you identified, i.e., the author of the document and the date of the document's creation, is already contained on the privilege logs. Therefore, the notion that this same information should be produced in redacted form is inappropriate and contrary to case law.

We remain willing to discuss these matters with you further in the hope that we can reach a mutually agreeable resolution of this matter.

Very truly yours,

José R. Allen

EXHIBIT ____30____

PAGE ____427____

# EXHIBIT 31

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3176

WRITER'S INTERNET ADDRESS
harryolivar@quinnemanuel.com

May 7, 2008

**VIA HAND DELIVERY**

Hon. Edward Infante (Ret.)
Discovery Master
c/o Sandra Chan
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, California 94111

Re:    Bryant v. Mattel, Inc., JAMS Ref. 1100049530

Dear Judge Infante:

I write to request Mattel's pending motions on two issues be decided along with the other motions that we understand will be decided this week.

First, Mattel respectfully requests an order on its pending Motion to Compel the Deposition Testimony of Littler Mendelson, submitted on December 13, 2007. As outlined in the motion, Mattel seeks testimony regarding these non-privileged matters:

- When and how Littler or its agents collected Bryant's computer hard drives.

- What was done with those drives once they were in Littler's possession, including how those drives were stored, whether evidence was preserved on backup images, and whether and when such drives were reviewed.

- Communications with third parties regarding collection and preservation of evidence that were the subject of representations made by Littler.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL. +81-3-5561-1711 FAX +81-3-5561-1712

At the January 3, 2008 hearing, Your Honor recognized that the chain-of-custody type information Mattel sought by its motion was "relevant" and "essential and necessary to the preparation of the entire case," but "believe[d] that [Mattel] should take the deposition of Mr. Bryant on this question first." See January 3, 2008 Hearing Tr. at 69:19-25, attached as Exhibit 1. Mattel subsequently questioned Bryant on these matters at deposition, but Bryant was unable to provide the needed information. See Deposition Transcript of Carter Bryant, at 757:22-760:1, attached as Exhibit 2.

Accordingly, Mattel respectfully requests a ruling, as sought in its motion, that Littler Mendelson be ordered to provide deposition on the topics requested.

Second, Mattel respectfully requests an order on its pending motions relating to MGA's privilege logs. Those motions are captioned as follows:

(A) Mattel's Motion to Compel the Production of Previously Withheld Documents Only Portions of Which Are Allegedly Privileged, submitted on January 21, 2008;

(B) Mattel's Motion for Order Compelling Production of Withheld MGA (1) Trademark Search Results, (2) Date of First Use Information, and (3) Factual Data Communicated for the Purpose of Filing Trademark or Other Intellectual Property Applications, submitted on January 23, 2008;

(C) Mattel's Motion Compelling Production of Third Party Communications Improperly Withheld Under a Claim of "Common Interest" Privilege, submitted on January 23, 2008

At the March 10, 2008 hearing on these motion, Your Honor indicated that you "agree[ed] with Mattel's position" on the central issues, but believed it was then "premature to issue an order" because MGA had stated it would produce revised versions of two of its logs. See March 10, 2008 Hearing Tr. at 86:15-18, attached as Exhibit 3. You directed the parties to meet and confer further with respect to any new logs produced by MGA.

MGA has produced its revised logs, multiple meet and confer discussions have occurred, and the issues raised in the motions remain unresolved. Although there was some discussion of accommodating MGA's desire to put off resolution of the motion as to entries that may relate to Phase 2 matters, the parties were not able to come to agreement on this issue. MGA also has made clear its positions that (i) it is not willing to produce voluntarily any of the documents as to which Mattel has taken the position privilege is not properly claimed; and (ii) it believes every challenged document, regardless whether supported by an adequate log entry, needs to be reviewed *in camera* by Your Honor.

Mattel respectfully requests a ruling, as sought in its motions, that MGA has failed to satisfy its burden of proving privilege as to the following categories of documents described in the motions:

- Documents authored by non-lawyers or other non-privileged documents improperly withheld in their entirety as privileged.

2

EXHIBIT 31

PAGE 429

- Documents containing non-privileged factual information such as trademark search requests and results and dates of first use.
- Documents or communications involving various third-parties, including Bandai, which destroys any claimed privilege.

These problems persist in MGA's revised logs (enclosed, as exhibits 4 and 5, in the event Your Honor wishes to review them) in the entries identified in Appendices A, B, and C that Mattel has prepared (attached as Exhibit 6). Having first raised its challenges to MGA's logs with MGA in December 2007, Mattel hereby requests a ruling on its motions as Your Honor's earliest convenience.

Thank you for your continuing attention to this matter.

Very truly yours,

Harry A. Olivar Jr.

Harry A. Olivar, Jr.

HAO

3

EXHIBIT _____ 31 _____

PAGE _____ 430 _____

# EXHIBIT 32

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12 | CARTER BRYANT, an individual,      | CASE NO. CV 04-9049 SGL (RNBx)
13 |          Plaintiff,                | Consolidated with
   |                                    | Case No. CV 04-09059
14 |     vs.                            | Case No. CV 05-02727
15 | MATTEL, INC., a Delaware           | **SUPPLEMENTAL DECLARATION**
   | corporation,                       | **OF B. DYLAN PROCTOR IN**
16 |                                    | **SUPPORT OF MATTEL, INC.'S**
   |          Defendant.                | **MOTIONS PENDING BEFORE**
17 |                                    | **THE DISCOVERY MASTER**
18 | AND CONSOLIDATED ACTIONS           | [Notice of Lodging filed concurrently
   |                                    | herewith]
19 |                                    |
20 |                                    | **Phase 1**
   |                                    | Pre-Trial Conference:   May 19, 2008
21 |                                    | Trial Date:             May 27, 2008

22

23

24

25

26                                    EXHIBIT ____32____

27                                    PAGE ____431____

28

07209/2521477.1

1

## DECLARATION OF B. DYLAN PROCTOR

2      I, B. Dylan Proctor, declare as follows:

3          1.     I am a member of the bar of the State of California and a partner

4  at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc.

5  ("Mattel"). I make this declaration of personal, firsthand knowledge, and if called

6  and sworn as a witness, I could and would testify competently thereto.

7          2.     The parties submitted various motions to the Discovery Master

8  that remain pending (the "now-pending" motions). These "now-pending" motions

9  are as follows:

10     (a)    Mattel's Motion to Compel the Deposition of Littler Mendelson, filed
              December 14, 2008 (the "Littler" motion);
11

12     (b)    MGA Defendants' Motion to Quash Deposition Subpoena re
              Wachovia, filed January 22, 2008 (the "Wachovia" motion);
13

14     (c)(i)  Mattel's Motion to Compel Production of Previously Withheld
              Documents Only Portions of Which are Allegedly Privileged, filed
15            January 22, 2008;

16     (c)(ii) Mattel's Motion for an Order Compelling Production of Withheld
17            MGA (1) Trademark Search Results; (2) Date of First Use Information;
              and (3) Factual Data Communicated for the Purpose of Filing
18            Trademark or Other Intellectual Property Applications, filed January
19            23, 2008;

20     (c)(iii) Mattel's Motion Compelling Production of Third Party
21            Communications Improperly Withheld Under a Claim of "Common
              Interest" Privilege, filed January 23, 2008 (together, the "Privilege
22            Log" Motions);

23     (d)    Mattel's Motion to Compel Production of Documents Improperly
24            Withheld as Privileged by MGA, Isaac Larian and Third Party David
              Rosenbaum, filed January 28, 2008 (the "Rosenbaum" motion);
25

26     (e)    Mattel's Motion to Compel Production of Documents by Anne Wang,
              filed January 28, 2008 (the "Wang" motion);

27

28

EXHIBIT ____**32**____

PAGE ____**432**____

07209/2521477.1

-2-

Case No. CV 04-9049 SGL (RNBx)

PROCTOR DECLARATION RE MOTIONS PENDING BEFORE DISCOVERY MASTER

1    (f)    Mattel's Motion for an Order Enforcing the Court's January 25, 2007
2              Order Compelling Bryant to Produce Computer Hard Drives and for
               Sanctions, filed January 28, 2008 (the "Hard Drive" motion);
3
    (g)    Mattel's Motion to Compel MGA Entertainment, Inc., MGA
4               Entertainment (HK) Limited, Isaac Larian and Carter Bryant to
5               Respond to Mattel, Inc.'s First Set of Requests for Admission, filed
               February 7, 2008 (the "RFA" motion);
6
7    (h)    Mattel's Motion to Compel MGA and Carter Bryant to Return
               Privileged Documents and for a Protective Order, filed February 28,
8               2008 (the "Return" motion);

9    (i)    Mattel's *Ex Parte* Application (1) to Compel the Depositions of Ana
10              Cabrera, Beatriz Morales, and Maria Salazar; (2) for Guidance as to
               Evidence Received from Ana Cabrera; and (3) for Sanctions, filed
11              April 3, 2008 (the "*Ex Parte*" application).

12        3.    January 23, 2008 Hearing:  The Discovery Master heard the

13 parties' arguments regarding the "Littler" motion at the January 23, 2008 Hearing.

14 At that time the Discovery Master stated that the discovery Mattel sought was

15 "relevant" and "essential and necessary to the preparation of the entire case" but

16 believed that Mattel should first take the further deposition of Carter Bryant on the

17 issues raised by its motions. (Jan. 3 Hearing Tr. at 69:19-25.)  Accordingly,

18 resolution of this motion was put off until after Mattel had taken Bryant's

19 deposition. Attached as Exhibit 1 is a true and correct copy of relevant excerpts

20 from the January 3, 2008 Hearing Transcript.

21        4.    February 22, 2008 Joint Report:  On February 22, 2008, pursuant

22 to the Discovery Master's instructions, the parties submitted a joint report that

23 outlined the result of the parties' ongoing meet-and-confers on various motions then

24 pending before the Discovery Master. Attached as Exhibit 2 is a true and correct

25 copy of the February 22, 2008 Joint Report to the Discovery Master Regarding

26 Pending Discovery Motions ("February Joint Report").

EXHIBIT __32__

PAGE __433__

27

28

-3-

PROCTOR DECLARATION RE MOTIONS PENDING BEFORE DISCOVERY MASTER

1        5.     The February Joint Report outlined which of the parties then-

2 pending motions (1) should be stayed as related to Phase 2, (2) should be decided at

3 the next available hearing, and (3) were subject to the parties continuing meet-and-

4 confer efforts.  Those motions that were ready for decision were listed by the

5 priority by which the parties would have them heard.  (Feb. Joint Rep. at 3-7.)

6        6.     None of the "now-pending" motions were listed as ones that

7 should be stayed as related to Phase 2.

8        7.     The "Wachovia" motion, the "Hard-Drive" motion and the three

9 "Privilege Log" motions were all listed by the parties as being ready for

10 determination at the next available hearing.  (Feb. Joint Report at 4-5.)

11        8.     The February Joint Report also indicated that the parties

12 continued to meet-and-confer regarding the "Littler Mendelson" motion, the

13 "Rosenbaum" motion and the "RFA" motion.  (Feb. Joint Report at 5-7.)

14        9.     <u>March 10, 2008 Hearing</u>:  At the subsequent hearing before the

15 Discovery Master the parties presented their respective positions regarding the

16 pending motions.  Attached as Exhibit 3 are relevant excerpts from the March 10,

17 2008 Hearing Transcript.

18        10.    The "Wachovia" motion was taken under submission by the

19 Discovery Master with the understanding of the parties expressed at the hearing on

20 the motion that it would parallel the ruling on the motion to quash and cross-motion

21 to compel Wachovia to produce documents pursuant to a document subpoena.  At

22 that hearing, Mr. Kennedy, counsel for MGA, said: "[W]e have a motion to quash

23 those subpoenas all together.  This, again, pertains to financial  information.  And

24 we've been through this third parties before.  We would urge, at a minimum, if those

25 motions are not going to be denied outright, that they ought to at least be deferred

26 for a ruling *in conjunction with the motion to quash*, so it gets resolved all at once."

27 (Mar. 10 Hearing Tr. at 11:24-12:7 (emphasis added)).  In light of Judge Infante's

28 Order compelling Wachovia to produced documents and the Court's recent

1  clarification of that Order, Mattel requests that the Wachovia motion be granted and

2  that Mattel be allowed to depose a Wachovia designee on the topics in the notice

3  that parallel the scope of the ruling on the document subpoena, for example

4  regarding "Any loan agreement or line of credit or other financing arrangement that

5  Wachovia Corporation has entered into with MGA Entertainment, Inc., since

6  January 1, 1999." Attached as Exhibit 4 is a true and correct copy of Mattel's

7  Notice of Deposition of Wachovia Corporation Pursuant to Federal Rule of Civil

8  Procedure 30(b)(6), dated January 17, 2008.

9           11.   At the March 10, 2008 Hearing, the Discovery Master also heard

10  argument on the "Hard Drives" motion, but delayed making a final decision to allow

11  for the surreply that was subsequently filed by Bryant. (Mar. 10 Hearing Tr. at

12  33:9-45:2.)  No decision was issued thereafter.

13          12.   Likewise, the Discovery Master heard argument on the

14  "Privilege Logs" motions. (Mar. 10 Hearing Tr. at 78:7-87:20.) The Discovery

15  Master stated that "Mattel's motion is well-taken" and that he "agree[ed] with

16  Mattel's position[s]," but that it was "premature to issue an order" because MGA

17  had stated that it would produce revised versions of two of its logs. (Mar. 10

18  Hearing Tr. at 85:11, 86:15, 86:17-18.) Accordingly, the Discovery Master directed

19  that the "parties should continue to meet and confer" after MGA produced its

20  revised logs. (Mar. 10 Hearing Tr. at 86:19-20.)

21          13.   With regard to "the several other motions that [the parties] listed

22  in [the] joint report where meet and confer efforts have not been completed," the

23  Discovery Master noted that the parties should continue to provide "update[s]" as to

24  "which motions are ripe to be heard." (Mar. 10 Hearing Tr. at 87:23-25, 88:1,

25  88:23-24.)

26          14.   March 28, 2008 Joint Report:  On March 28, 2008, pursuant to

27  the Discovery Master's instructions, the parties submitted another joint report

28  regarding the parties' ongoing meet-and-confers on the remaining pending motions.

07209/2521477.1

-5-

Case No. CV 04-9049 SGL (RNBx)

PROCTOR DECLARATION RE MOTIONS PENDING BEFORE DISCOVERY MASTER

EXHIBIT 32
PAGE 435

1   Attached as Exhibit 5 is a true and correct copy of the March 28, 2008 Joint Report

2   to the Discovery Master Regarding Pending Discovery Motions ("March Joint

3   Report").

4         15.    The March Joint Report outlined which of the parties' pending

5   motions (1) had been resolved, (2) which would be "taken off calendar" because

6   they related to Phase 2, and (3) those pending motions regarding which the parties

7   continued the efforts to resolve or narrow through further meet-and-confer.

8         16.    In addition, the March Joint Report identified two categories of

9   motions that the parties had been "unable to resolve or narrow and should be

10  decided in their entirety," and that the parties had been able to narrow and were

11  "now ripe for decision." (Mar. Joint Report at 5-11.) These two categories of

12  motions to to be "decided in their entirety" or that were "ripe for decision" included

13  the "RFA" and the "Return" motions which the Court discussed earlier this week,

14  when discussing the list of pending motions relating to Phase 1A.  May 27, 2008

15  Hearing Tr. at 5:24-7:8.  Attached as Exhibit 6 is a true and correct copy of relevant

16  excerpts from the May 27, 2008 Hearing Transcript (Rough).

17        17.    Regarding those motions that were ready for decision, the parties

18  also indicated which of the pending motions were most pressing by providing the

19  Discovery Master with a list of "priority" motions.  (Mar. Joint Report, Ex. A).

20        18.    None of the "now-pending" motions were listed as being

21  resolved or stayed as related to Phase 2.  (Mar. Joint Report at 3-4.)

22        19.    The "Return" motion, the "Rosenbaum" motion (as narrowed)

23  and the "RFA" motion (as narrowed) were all listed as being motions that were

24  ready for determination, though none was listed as a "priority" motion in Appendix

25  A.  (Mar. Joint Report at 6, 9, 11.)

26        20.    Consistent with the Discovery Master's prior directives, the

27  "Littler" and the three "Privilege Logs" motions were listed as being subject to

28  ongoing meet-and-confers.  (Mar. Joint Report at 11-12.)

1        21.    On April 1, 2008, the Discovery Master wrote to the parties to

2   schedule the motions that would be heard at the April 11, 2008 hearing.  None of the

3   "now-pending" motions was scheduled for that hearing.  Attached as Exhibit 7 is a

4   true and correct of the April 11, 2008 Email from Sandra Chan, on behalf of Judge

5   Infante, to the parties.

6        22.    On April 15, 2008, Mattel requested that the Discovery Master

7   issue a ruling on those aspects of its pending *Ex Parte* Application that had not been

8   mooted by the Court's April 10 Order.  (Mattel's April 15, 2008 letter has been

9   lodged concurrently with this declaration).  The Discovery Master did not issue a

10  ruling on this pending motion.

11       23.    Thereafter, the parties continued to meet-and-confer on the

12  subject of Mattel's three "Privilege Log" motions as previously directed by the

13  Discovery Master.  Because they were on unable to resolve these matters through

14  the subsequent meet-and-confers, on May 7, 2008 Mattel requested that the

15  Discovery Master issue a ruling on its pending motions.  Additionally, by that same

16  letter, Mattel requested that the Discovery Master issue a ruling on the pending

17  "Littler" motion because, as previously directed by the Discovery Master, it had

18  endeavored to obtain the discovery sought by its motion through Bryant's

19  deposition, but was unable to do so because Bryant had no knowledge on these

20  matters.  (Mattel's May 7, 2008 letter, and related correspondence from the parties,

21  has been concurrently lodged with this declaration).  The Discovery Master did not

22  issue a ruling on these pending motions.

23  //

24  //

25  //

26  //

27

28

EXHIBIT ____ 32

PAGE ____ 437

1          24.    To the best of my knowledge, prior to the statements made in

2  Court yesterday MGA had never taken the position that Mattel waived its rights to

3  pursue the motions now at issue.

4

5          I declare under penalty of perjury under the laws of the United States of

6  America that the foregoing is true and correct.

7          Executed on May 29, 2008, at Riverside, California.

8

9                                 /s/ B. Dylan Proctor
                                   B. Dylan Proctor
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                              EXHIBIT____32

28                                              PAGE____438

# EXHIBIT 33

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

February 8, 2009

<u>VIA FACSIMILE AND U.S. MAIL</u>

Patricia Glaser, Esq.
Amman Khan, Esq.
Glaser, Weil, Fink, Jacobs & Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067

Mark E. Overland, Esq.
Alexander H. Cote, Esq.
Overland, Borenstein, Scheper & Kim LLP
601 West 5th Street
Los Angeles, CA 90017

Russell J. Frackman, Esq.
Jean P. Nogues, Esq.
Mitchell Silberberg & Knupp LLP
1377 West Olympic Boulevard
Los Angeles, CA 90064

Re:    Mattel v. MGA Entertainment, Inc., et al.

Dear Counsel:

Pursuant to the <u>Local Rules</u> and the Discovery Master Stipulation, I write to request a meet and confer regarding certain entries on the privilege logs produced by MGA and Isaac Larian.[1]

---

[1]    The logs in question are MGA's Supplemental Privilege Log – August 14, 2007, revised March 20, 2008 ("Rev. Aug. Log"), MGA's Supplemental Privilege Log – September 5, 2007, revised March 20, 2008 ("Rev. Sept. Log"), MGA's Privilege Log for MGA's October 17, and October 19, 2007 Document Production, dated November 16, 2008 ("Oct. Log"), Isaac Larian's Privilege Log, dated January 15, 2008 ("Jan. 15 Log"), MGA's Supplemental Privilege Log for MGA's October 2007 Document Production, dated January 22, 2008 ("Supp. Oct. Log"), MGA's Privilige Log – January 23, 2008, revised February 5, 2008 ("Rev. Jan. 23 Log"), MGA's Privilege Log – January 28, 2008, revised February 8, 2008 ("Rev. Jan. 28 Log"), Isaac (footnote continued)

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

EXHIBIT _____ 33

PAGE _____ 439

Based on the descriptions provided by MGA in its logs, many entries currently withheld do not appear to be privileged, while other entries provide so little detail that it is impossible to assess MGA's claims of privilege. The parties previously conducted an entry-by-entry discussion of certain withheld communications, which helped to narrow the scope of the parties' eventual motion practice. In advance of such a continued conference, I have detailed below the entries for which MGA has not adequately met its burden to justify withholding. For convenience, I have grouped these into categories, though many entries from MGA's logs reflect deficiencies on multiple grounds.

### _Communications Between Non-Lawyers and Non-Legal Communications_

Numerous entries on MGA's logs reflect communications that do not involve counsel. For example, Entry No. 1986 on MGA's January 23 Log is a 2006 email between Schuyler Bacon and Isaac Larian described as an "Email chain regarding employment issues." Neither Ms. Bacon nor Mr. Larian is an attorney and nowhere does the description suggest that the communication reflects a lawyer's advice. Furthermore, as MGA and Larian themselves have argued, even if the emails repeat some privileged communication, the remainder of the email should be produced with any supposedly privileged portions redacted. MGA's blanket withholding of this email chaing is improper.

Other entries, while they involve counsel, do not appear to reflect any legal advice but rather involve purely business or other non-legal issues. For example, Entry No. 2074 on MGA's January 23 Log is a 2005 email from Pablo Vargas and Eric Villete and Isaac Larian which copies a large group—including one lawyer—regarding "sales strategy." Nevertheless it has been withheld on the purported grounds of attorney-client privilege.

Please be prepared to discuss MGA's claims of privilege regarding the following entries which exhibit these deficiencies. Absent a showing of their privileged nature, Mattel expects these documents to be produced in their entirety or, if any portions do reflect privileged communications, in redacted form.

- Rev. Aug. Log: 135, 457, 561.1, 561.2, 606, 651r, 653, 661, 662, 664r, 669, 690r, 692, 712, 713, 716r, 719, 730, 732, 733, 735, 744, 764, 767, 773, 775, 777, 790, 852, 853, 866, 867, 869r, 874, 883r, 894r, 900, 912r, 931r, 933, 934r, 961r, 962, 963r, 965, 966, 967, 968, 980r, 981r, 983, 984, 985, 990, 1037, 1040, 1042r, 1043, 1047, 1055r, 1056r, 1057, 1058, 1060r, 1061, 1062, 1077, 1078, 1079, 1080, 1081, 1082, 1088, 1089, 1090, 1091, 1095, 1097, 1098, 1101, 1103, 1105, 1106, 1107, 1110r, 1112, 1113r, 1132r.

- Rev. Sept. Log: 264.1r, 1022, 1903.

Larian's Privilege Log – January 30, 2008 ("Jan. 30 Log"), and MGA's April 30, 2008 Privilege Log ("April 30 Log").

2

EXHIBIT ___33___

PAGE ___440___

- Oct. Log: 3, 8, 39, 71, 134, 135, 175, 261, 267, 539, 546, 824, 1036, 1046, 1047, 1068, 1123, 1124, 1406, 1462, 1463, 1466, 1467, 1481, 1482, 1506, 1514, 1761, 1780, 1781, 1782, 1784, 1941, 1942, 2063, 2073, 2074, 2090, 2101, 2117, 2259, 2260, 2263, 2267, 2269, 2271, 2274, 2672, 2677, 2694, 2724, 2728, 2732, 2765, 2775, 2786, 2787, 2802, 2807, 2814, 2815, 2830, 2833, 2845, 2848, 2849, 2851, 2852, 2853, 3213, 3299, 3360, 3367, 3368.

- Jan. 15 Log: 29, 30 32, 33, 34, 35, 38, 40, 41, 44, 48, 51, 52, 53, 56, 57, 58, 59, 61, 62, 63, 64, 68, 89, 98, 107.

- Supp. Oct. Log: 44, 55, 89, 90, 98, 99, 106, 114, 115, 116, 123, 125, 126, 127, 128, 129, 130, 131, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150.

- Rev. Jan. 23 Log: 3, 8, 20, 31, 32, 52, 57, 58, 59, 68, 70, 79, 96, 97, 103, 106, 107, 108, 110, 111, 114, 115, 118, 133, 150, 151, 152, 153, 154, 155, 156, 157, 158, 182, 205, 209, 232, 233, 245, 253, 255, 262, 267, 287, 296, 371, 372, 373, 376, 381, 536, 544, 545, 546, 547, 548, 551, 557, 577, 578, 579, 580, 581, 584, 585, 588, 589, 591, 592, 593, 594, 595, 596, 597, 598, 599, 600, 601, 602, 603, 604, 609, 610, 611, 612, 614, 655, 656, 672, 683, 666, 667, 684, 693, 749, 759, 762, 764, 765, 767, 769, 771, 773, 782, 1083, 1172, 1173, 1178, 1179, 1254, 1262, 1275, 1277, 1281, 1285, 1287, 1292, 1301, 1302, 1306, 1309, 1318, 1322, 1324, 1356, 1360, 1364, 1365, 1366, 1367, 1374, 1399, 1413, 1418, 1420, 1424, 1435, 1437, 1438, 1439, 1440, 1460, 1463, 1465, 1468, 1471, 1473, 1474, 1475, 1476, 1509, 1525, 1529, 1536, 1587, 1603, 1606, 1622, 1623, 1624, 1625, 1627, 1635, 1641, 1655, 1662, 1701, 1702, 1703, 1704, 1705, 1706, 1708, 1709, 1710, 1711, 1712, 1713, 1716, 1718, 1719, 1720, 1721, 1722, 1724, 1727, 1728, 1729, 1730, 1731, 1732, 1734, 1735, 1736, 1737, 1767, 1773, 1774, 1775, 1779, 1783, 1788, 1821, 1824, 1890, 1896, 1898, 1899, 1903, 1904, 1917, 1919, 1920, 1968, 1969, 1970, 1977, 1986, 1998, 2011, 2014, 2025, 2039, 2042, 2043, 2046, 2060, 2064, 2071, 2074, 2080, 2082, 2084, 2144, 2147, 2148, 2149.

- Rev. Jan. 28 Log: 3, 5, 9, 12, 16, 18, 28, 31, 36, 37, 38, 39, 40, 43, 44, 47, 51, 52, 61, 65, 67, 75, 77, 91, 92, 97, 98, 99, 113, 124, 127, 132, 136, 137, 140, 141, 158, 160, 161, 163, 166, 203, 214, 219, 262, 264, 272, 274, 275, 276, 280, 281, 286, 287, 291, 292, 310, 311, 212, 313, 314, 316, 317, 319, 328, 331, 332, 333, 334, 335, 336, 343, 238, 364, 371, 372, 382, 384, 385, 386, 387, 388, 392, 414, 420, 442, 443, 446.

- Jan. 30 Log: 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 64, 66, 122, 124, 126, 218, 225, 226, 244, 245, 246, 257, 260, 282, 294, 295, 296, 297, 298, 299, 300.

- April 30 Log: 8, 9, 10, 17, 18.

Additionally, a handful of entries provide no basis for privilege other than the fact that an attorney or paralegal has been "blind carbon copied." See Jan. 15 Log No. 188, Jan. 23 Log Nos. 1650, 1988; Jan. 30 Log No. 30. Documents or communications transmitted to an attorney as

3

EXHIBIT _____ 33

PAGE _____ 441

"blind carbon copies" generally are not protected attorney-client communications. See, e.g., U.S. v. Davis, 132 F.R.D. 12, 17 (S.D.N.Y. 1990). Accordingly, these entries should be produced as well.

### Handwritten Notes

Hundreds of entries on MGA's logs involve "handwritten notes" for which neither the author of the note nor a description of its subject matter is provided. By failing to indicate who authored these notes, much less that they involved legal advice, MGA has not carried its "burden of proving every element applicable to the attorney-client privilege." Federal Election Com'n v. Christian Coalition, 178 F.R.D. 61, 70 (E.D. Va. 1998) (log entries deficient where they did not identify author of handwritten notes).[2]

Further, while some of these notes appear to be written on hardcopies of emails between lawyers or otherwise privileged documents—and therefore indicate such authors in the logs—MGA's logs do not indicate whether there is any independent basis to withhold these handwritten notes. "[W]here no author is listed, [the party claiming privilege] must describe the content of the documents [handwritten notes] such that [the party seeking discovery] and this Court may better assess the applicability of the privilege." Fidelity and Deposit Co. of Maryland v. McCulloch, 168 F.R.D. 516, 523 (E.D. Pa. 1996).

Accordingly, please be prepared to identify the author of the notes on the following documents and provide a sufficient description of the subject matter of the notes to permit the claim of privilege to be assessed.

- Rev. August Log: 127, 129.1, 131, 132, 172, 196, 259.1, 259.4, 299, 307.1, 310, 333.3, 343,11, 343.16. 346. 393. 394, 429.3, 431.1, 434.1, 437, 447, 457, 460.1r, 475.1, 483, 502.4, 507.1, 508, 521, 429.3r, 554, 555, 557, 558, 560, 562.2r, 562.3, 563r, 564, 565, 567, 570, 585.2, 585.3, 587, 591, 592, 602.1, 602.2, 604, 605.1, 605.2, 607.1, 607.2, 609, 613, 614.1, 614.3, 615, 618.2, 621, 622, 623.1, 625r, 626.3, 629, 630, 633, 634, 625r, 636r, 637r, 638, 639r, 640r, 641.1, 641.2, 642r, 643, 644, 653.

- Rev. Sept. Log: 40.2, 43.2, 124r, 139, 140.1r, 264.1r, 329.1r, 597.1r, 603, 608.1r, 608.2r, 699.1, 701, 702.1, 708, 804, 830.1, 869, 870, 877.1, 896.1, 932.1, 933.1, 1074.1, 1084.1, 1084.2, 1259, 1268, 1269, 1271, 1363, 1364.1, 1399, 1402, 1421.1, 1446.1r, 1455, 1633.1, 1659.1, 1666, 1672.1, 1672.2, 1672.3, 1683.1, 1691.1, 1692.1, 1822.1, 1829.2, 1839.1, 1839.7, 1844.1, 2023, 2068, 2076.1, 2150.1, 2174, 2182.1, 2191. 2194, 2195, 2196, 2199, 2200, 2201, 2202, 2319, 2325, 2326.1, 2327, 2347.1, 2369.1, 2369.5, 2377.1r, 2405, 2407, 2408, 2409, 2410, 2411, 2412, 2413.1, 2414, 2417, 2422.1, 2422.2, 2423, 2437.2, 2449, 2457, 2452.1, 2462.2, 2464, 2449, 2457, 2452.1, 2462.2, 2464, 2466,

---

[2]   Clearly, when MGA believed the notes were an "attorney's notes," it so indicated. See, e.g., Rev. Jan. 23 Log Nos. 794, 984, 988,1115. These entries, by contrast, have no indication that the notes even are an attorney's or reflect an attorney's legal advice.

EXHIBIT _____ 33

PAGE _____ 442

2470, 2530.1, 2607, 2614.1, 2630.1, 2677, 2814, 2822, 2829.1, 2831.2, 2853, 2854.1, 2855.1, 2856,1r, 2856.3r, 2856.4r, 2856.5r, 2857.2r, 2857.3r, 2857.4r, 2857.5r.

• Rev. Jan. 23 Log: 181, 234, 235, 312, 389, 392, 402, 920, 2079, 2127, 2150.

• Rev. Jan. 28 Log: 128, 170.

## Fax Cover Sheets

MGA's privilege logs indicate that it has withheld numerous fax cover sheets. Such documents are not generally privileged, in and of themselves, because correspondence that "merely transmit[s] documents to or from an attorney, even at the attorney's request for purposes of rendering legal advice to a client, are neither privileged nor attorney work-product." American Med. Systems, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Inc., 1999 WL 970341, at *5 (E.D. La. Oct. 22, 1999) (ordering production of fax cover sheets). Thus, while the underlying communication may be privileged, the fax cover sheets are not unless they also transmit confidential information.

Please be prepared to discuss whether MGA continues to assert its claim of privilege regarding these documents described as fax cover sheets.

• Rev. Aug. Log Nos. 101.1, 101.6, 129.1, 312.1, 526.1, 562.1, 562.12, 573.1, 574.1, 578.1, 583.1, 584, 585.1, 586.1.

• Rev. Sept. Log Nos. 255.7, 740.1, 891.1, 896.1, 1000.3, 1013.1, 1013.7, 1021.1, 1021.2, 1036.4, 1036.6, 1058.1, 1058.3, 1058.4, 1063.1, 1072.1, 1072.3, 1081.2, 1107.1, 1107.3, 1134.1, 1134.3, 1421.1, 1661.1, 1912.1, 1981.1, 2071.1, 2369.5, 2803.1, 2816.3, 2818.4, 1819.3, 2821.2, 2831.1, 2832.3, 2836.4, 2839.5, 2839.6;

• Rev. Jan. 23 Log Nos. 923, 924, 965, 966.

• Jan. 30 Log No. 208.

## Other Non-Privileged Documents

Finally, MGA has listed various documents such as photographs and public records on its privilege log that are not generally privileged.

First, there are various entries for "photo[s]," "design/drawing[s]," and "pictoral presentation[s]." Given that these documents are not "communications" between an attorney and client, the application of the attorney-client privilege does not appear well-founded. See Clavo v. Zarrabian, 2003 WL 24272641, at *1 (C.D. Cal. Sept. 24, 2003) ("The mere transmission of the photographs to counsel does not by itself justify privilege protection."). While some of these entries also assert the work-product privilege, the descriptions offer little basis to determine that these documents were prepared in anticipation of litigation.

5

EXHIBIT _____ 33

PAGE _____ 443

- Rev. Aug. Log: 585.2, 585.3.

- Rev. Sept. Log: 202.2, 203.2, 209.2, 210.2, 217.2, 218.2, 874.2, 1193.2, 1193.3, 1193.4, 1193.5, 1193.6, 1193.7, 1193.8, 1193.9, 1424.2, 1798.3, 1801.3, 1812.3, 1815.2, 2630.1, 2630.2, 2630.3, 2630.4, 2630.5, 2630.6, 2630.7, 2630.8, 2630.9, 2630.10, 2630.11, 2835.3, 2835.4, 2839.3, 2839.4.

- Rev. Jan. 23 Log: 6, 7, 196, 197, 198, 1153, 1348, 1414, 1421, 1618, 1874, 1875, 1881, 1882, 1884, 1885, 2100, 2101, 2102.

- Rev. Jan. 28 Log: 289, 290, 325, 326, 327.

Second, MGA's logs have numerous entries showing that MGA has improperly sought to claim privilege over documents from the public record, including such categories as press releases, advertisements, webpages, excerpts from periodicals, general company policies, and governmental documents.

- Rev. Sept. Log: 1047.3, 1047.6, 1047.7, 1047.8.

- Jan. 30 Log: 126, 152, 153, 154, 155, 156, 157, 158, 211, 228, 244, 245, 246, 247, 252, 290, 291, 301.

Third, the logs contain a number of documents from various legal proceedings. From the descriptions given, these documents do not appear to be internal drafts, but rather operative legal documents such as subpoenas, complaints, declarations and the like. These documents "on their face, are not privileged" and should be produced. Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc., 1998 WL 729735, at *2 (S.D.N.Y. Oct. 16,1998).

- Rev. Jan. 23 Log: 102, 297, 782, 783, 784, 1023, 1715, 1718, 1849, 1939, 2123, 2126, 2128, 2129, 2130, 2131, 2132, 2133, 2134, 2135, 2136, 2137.

Fourth, a number of the entries relate to communications regarding legal fees or invoices, vouchers, and other documents memorializing such payments. While bills and other documents regarding legal fees may contain both privileged and non-privileged information, the logs suggest that these documents have been withheld in their entirety. These documents should be produced in whole or, to the extent that they contain some privileged information, produced in redacted form.

- Rev. Aug. Log: 295.2.

- Rev. Sept. Log: 930.1, 932.1, 1421.4, 1577.2, 1635, 1636, 1821.3, 1822.2.

- Jan. 15 Log: 145, 182, 208.

6

EXHIBIT ____ 33

PAGE ____ 444

- Rev. Jan. 23 Log: 335, 336, 337, 338, 339, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 1066, 1067, 1068, 1069, 1070, 1071, 1072, 1073, 1074, 1075, 1076, 1077, 1078.

- Rev. Jan. 28 Log: 167, 215.

- Jan. 30 Log: 269, 282.

Finally, some of the descriptions on the logs are so vague that it is impossible to tell the subject matter of the document or communication, much less determine whether the privilege has been appropriately claimed. Specifically, a number of entries on the logs either lack description or are simply described as "spreadsheet[s]" or "chronolog[ies]" used "for the purposes of requesting legal advice," but give no indication as the type of information contained within, its purpose, or the attorneys involved. Please be prepared to discuss MGA's basis for its privilege assertions as to these documents.

- Rev. Aug. Log: 241.2.

- Rev. Jan. 23 Log: 578, 579, 580, 581, 600, 601, 602, 603, 604, 1606, 1939.

- Rev. Jan. 28 Log: 96, 117, 130, 140, 190, 198, 211, 237, 253, 258.

- Jan. 30 Log: 208.

Given these many deficiencies, it is incumbent on MGA to justify its claims or produce these documents. Pursuant to paragraph 5 of the Discovery Master Order and Local Rule 37, Mattel hereby requests a meet and confer on these deficiencies in MGA's privilege logs.

I look forward to hearing from you.


Best regards,

Jon Corey

Jon Corey


7

EXHIBIT _____ 33
PAGE _____ 445

# EXHIBIT 34

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                         Date:  June 20, 2008

Title:    CARTER BRYANT -v- MATTEL, INC.
          AND CONSOLIDATED ACTIONS
================================================================================

PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes                           None Present
          Courtroom Deputy Clerk               Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

None present                          None present

PROCEEDINGS:    (IN CHAMBERS) ORDER RE MOTION TO COMPEL PRODUCTION OF
                COMMUNICATIONS MADE IN FURTHERANCE OF CRIMES AND FRAUDS

        On June 20, 2008, the Court ordered MGA to submit documents, detailed on the record, for
in camera inspection. MGA did so, and the Court conducted its in camera review. Based on its
review of the clawed-back document, as well as the document submitted for in camera review, the
preponderance of the evidence does not support a finding that the sought legal advice in order to
further a crime or fraud. Accordingly, the Court does not order the production of the privileged
documents identified on the record.

        Nevertheless, the Court's review revealed that an email from Carter Bryant to Isaac Larian
was withheld from production as privileged. As acknowledged by counsel for MGA, this document,
identified as privilege log number 0548, is not privileged and is to be produced to Mattel forthwith.

        IT IS SO ORDERED.

MINUTES FORM 90                                     Initials of Deputy Clerk: jh
CIVIL -- GEN

                                    1

EXHIBIT _____ 34

PAGE _____ 446

# EXHIBIT 35

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 36

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION


CARTER BRYANT, an
individual,

      Plaintiff,

   vs.

MATTEL, INC., a Delaware
corporation,

      Defendants.

No. CV 04-9049 SGL
(RNBx)

**CERTIFIED
COPY**

Consolidated with MATTEL, INC. v.
BRYANT and MGA ENTERTAINMENT, INC.
v. MATTEL, INC.


HEARING BEFORE THE HONORABLE EDWARD A. INFANTE

San Francisco, California

Friday, December 14, 2007


Reported by:
DANA M. FREED
CSR No. 10602

JOB No. 76864

EXHIBIT _____ 36
PAGE _____ 450

1                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
2                         EASTERN DIVISION

3

4        CARTER BRYANT, an
         individual,
5
                    Plaintiff,
6
             vs.                          No. CV 04-9049 SGL
7                                         (RNBx)
         MATTEL, INC., a Delaware
8        corporation,

9                   Defendants.

10       _____

         Consolidated with MATTEL, INC. v.
11       BRYANT and MGA ENTERTAINMENT, INC.
         v. MATTEL, INC.
12       _____

13

14              Hearing before the Honorable Edward A. Infante,

15       at JAMS, Two Embarcadero Center, Suite 1500, San Francisco,

16       California, beginning at 10:49 a.m. and ending at

17       12:43 p.m. on Friday, December 14, 2007, before

18       DANA M. FREED, Certified Shorthand Reporter No. 10602.

19

20

21

22

23

24

25                                      EXHIBIT ___36___
                                        PAGE ___451___

2

```
 1   APPEARANCES:

 2

 3   For the Plaintiff CARTER BRYANT, an individual:

 4         KEKER & VAN NEST LLP
           BY:   MICHAEL H. PAGE
 5               JOHN TRINIDAD
                 CHRISTA MARTINE ANDERSON
 6         Attorneys at Law
           710 Sansome Street
 7         San Francisco, California 94111-1704
           415.391.5400
 8
     For the Defendant MATTEL, INC., a Delaware
 9   corporation:

10         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
           BY:   JOHN B. QUINN
11               JON COREY
                 SCOTT B. KIDMAN
12               B. DYLAN PROCTOR
           Attorneys at Law
13         865 Figueroa Street, 10th Floor
           Los Angeles, California 90017
14         213.443.3000

15   For the Defendants MGA Entertainment, Inc., MGA
     Entertainment (HK) Limited, and Isaac Larian:
16
           SKADDEN ARPS SLATE MEAGHER & FLOM LLP
17         BY:   RAOUL D. KENNEDY
                 THOMAS J. NOLAN
18               AMY S. PARK
           Attorneys at Law
19         Four Embarcadero Center, 38th Floor
           San Francisco, California 94111-5974
20         415.984.6400

21   Also Present:

22         CRAIG HOLDEN, MGA Entertainment

23

24                                    EXHIBIT ___36___

25                                    PAGE ___452___
```

EXHIBIT  36

PAGE  452

3

1          San Francisco, California, Friday, December 14, 2007

2                        10:49 a.m. - 12:43 p.m.

3

4          JUDGE INFANTE:  Let's begin with counsel.  If

5    you could please enter your appearances, please.

6    First for Mattel.

7          MR. QUINN:  John Quinn appearing for Mattel.

8          MR. COREY:  Jon Corey on behalf of Mattel.

9          MR. KIDMAN:  Scott Kidman for Mattel.

10         MR. PROCTOR:  B. Dylan Proctor for Mattel.

11         MS. ANDERSON:  Your Honor, Christa Martine

12   Anderson for Carter Bryant.

13         JUDGE INFANTE:  Okay.

14         MR. PAGE:  Michael Page for Carter Bryant.

15         MR. TRINIDAD:  John Trinidad for Carter

16   Bryant.

17         MR. HOLDEN:  Craig Holden for MGA.

18         MS. PARK:  Amy Park for MGA.

19         MR. NOLAN:  Tom Nolan for MGA.

20         MR. KENNEDY:  Raoul Kennedy also for MGA.

21         JUDGE INFANTE:  Thank you.

22         I received the parties' joint report

23   regarding motions scheduled to be heard as to which

24   motions you had resolved through your meet and confer

25   process, which motions needed a decision.  That report

EXHIBIT _____ 36

PAGE _____ 453        4

1    provided until after we filed this motion, and then

2    they started to drill the Lau, and it was mostly

3    back-end loaded.  Within the next -- November was the

4    largest logging, within 60 days of the discovery

5    cutoff here.

6           This is not a gotcha situation.  If

7    Your Honor takes a look at our moving papers at page 5

8    and the citations to Mr. Proctor's declaration, we

9    discussed in the meet and confer that took place on

10   August 2nd, the fact that they were in default of

11   this, Your Honor's order requiring the privilege log.

12   This was no surprise.

13          And we confirmed that in a letter that we

14   were objecting to that, to their failure to comply.

15   I wouldn't think it should be necessary to continue to

16   object and object and object to the fact that your

17   adversary is not in compliance with an order.  This

18   was not a gotcha situation.  This was something that

19   was specifically raised and discussed.

20          I mean, this is a case that -- where there

21   has been, as the Burlington court said, Your Honor,

22   a manipulation of the -- and a failure to comply with

23   the discovery rules which has disrupted the discovery

24   process.  And the Court said in that case that in

25   those circumstances it's appropriate to find a waiver,

EXHIBIT _____ 36

PAGE _____ 454

-26-

1   of privilege.  And I think that this is a, if there

2   ever was a case where such a waiver should be found

3   where there's been just defiance of an order being

4   told, notwithstanding the fact that there's an order

5   saying you must produce the log by the end of May,

6   being told in August we are not going to do it until

7   the middle of September at the earliest, with no

8   justification provided, the only appropriate response

9   to that, the only corrective measure, the only

10  meaningful sanction is not a couple thousand dollars

11  in attorney's fees at this point, it's waiver of the

12  privilege as to these documents.

13          JUDGE INFANTE:  Okay.  Thank you very much.

14          I have read everything on this, including the

15  case law cited, and in particular the Burlington case

16  with respect to the ad hoc approach and the balancing

17  of factors cited in that case.

18          I believe that Judge Larson's order, which

19  was a result of review of my prior order, in which he

20  postulated a new date for production of July 31st,

21  impliedly authorized that the privilege logs be

22  completed by that date as opposed to the date

23  I originally imposed which was May 31st.

24          So I believe that the privilege logs

25  submitted by MGA are untimely, but they're untimely

EXHIBIT _____ 36

PAGE _____ 455   27

```
 1    only as to, as of July 31st, '07, instead of

 2    May 31st, '07.  Given the number of documents

 3    involved, the magnitude of the document production,

 4    other circumstances involved in this litigation, and

 5    all of the factors taught by the Burlington case, I

 6    find that a wholesale waiver of the attorney/client

 7    privilege as to all documents requested by Mattel is

 8    inappropriate.

 9            Waiver is a serious matter.  It should be

10    dealt with cautiously.  Although I am not satisfied,

11    and indeed I'm disappointed, in the way discovery has

12    been produced, I think it would be too harsh to

13    declare a wholesale waiver of the scope that Mattel

14    hereby requests.

15            While I feel your motion was justified,

16    I decline to grant a waiver, to grant your motion and

17    find a waiver.  Motion is denied.

18            MR. QUINN:  May I -- I do not believe in our

19    moving papers we requested any other sanctions.

20            JUDGE INFANTE:  You did not.  You did not.

21    And for that reason, I'm not imposing any sanctions.

22            Mr. Kennedy, I would ask you to prepare an

23    order consistent with my comments on the record and my

24    citation of Burlington.

25            MR. KENNEDY:  Yes, Your Honor.
```

EXHIBIT____36____

PAGE____456____

28

1              JUDGE INFANTE:  And let the record also

2      reflect that MGA withdrew its countermotion.

3              Let's move on to the next motion.  How would

4      Mattel like to proceed?

5              MR. QUINN:  The next one, Your Honor, would

6      be the motion relating to the production of documents

7      bearing on indemnity issues and agreements with

8      witnesses or with Mr. Bryant in particular.  In terms

9      of the timeline, this overlaps the motion that we just

10     discussed.

11             JUDGE INFANTE:  Yes.

12             MR. QUINN:  It arises out of the May 15th

13     order where Your Honor ordered MGA to either produce

14     such documents, ruled they were relevant, or log them

15     as privileged.

16             JUDGE INFANTE:  Yes.  This is just, so we can

17     clarify the record, this is Mattel's Motion to Enforce

18     the Court's Order of May 15, 2007 and to Compel MGA to

19     Produce Compelled Documents Including Fee and/or

20     Indemnity Agreements Between MGA and Bryant and Order

21     That Any Privilege Objections Have Been Waived and

22     Impose Sanctions.

23             You may proceed.

24             MR. QUINN:  That was then the subject of

25     a proceeding before Judge Larson where there was

                                    EXHIBIT ____ 36

                                    PAGE ____ 457

                                                    29

1            I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3            That the foregoing proceedings were taken

4    before me at the time and place herein set forth; that

5    any witnesses in the foregoing proceedings, prior to

6    testifying, were duly sworn; that a record of the

7    proceedings was made by me using machine shorthand

8    which was thereafter transcribed under my direction;

9    that the foregoing transcript is a true record of the

10    testimony given.

11           Further, that if the foregoing pertains to

12    the original transcript of a deposition in a Federal

13    Case, before completion of the proceedings, review of

14    the transcript [  ] was [  ] was not requested.

15           I further certify I am neither financially

16    interested in the action nor a relative or employee

17    of any attorney or party to this action.

18           IN WITNESS WHEREOF, I have this date

19    subscribed my name.

20

21    Dated:   **DEC 1 7 2007**

22

23

                 DANA M. FREED

24               CSR No. 10602

25

EXHIBIT 36
PAGE 458