# EXHIBIT 1

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 2

## CONFLICT OF INTEREST QUESTIONNAIRE

_BRYANT, CARTER H._      _PROJECT DESIGNER_

Name (Last, First, M.I.)              Job Title                              Department

*Instructions:* The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflict of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

*Mattel Supplier* is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

*Mattel Competitor* is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

*Interest* means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

*Recipient of any commission, etc.*, means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

○ Yes  ● No   1. Have you owned, directly or indirectly, any interest in a Mattel supplier?

○ Yes  ● No   2. Have you owned, directly or indirectly, and interest in a Mattel competitor?

○ Yes  ● No   3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?

● Yes  ○ No   4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?

● Yes  ○ No   5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?

○ Yes  ● No   6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?

○ Yes  ● No   7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?

○ Yes  ● No   8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?

○ Yes  ● No   9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

_4, 5; freelance design & artwork in 1998,_
_from appr. 5/98 - 11/98 for the Ashton Drake_
_galleries._

I certify that I have read Mattel's policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to complete this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

_[signature]_                                        _01/04/98_
Signature                                             Date

M 0001621

DEPOSITION EXHIBIT

EXHIBIT _2_
PAGE _19_

EX 26-0001

# EXHIBIT 3

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 4

3033

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3                              ---

4          HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5                              ---

6   MATTEL, INC.,                  :  PAGES 3033 - 3190
                                    :
7             PLAINTIFF,            :
                                    :
8      VS.                          :  NO. ED CV04-09049-SGL
                                    :  [CONSOLIDATED WITH
9   MGA ENTERTAINMENT, INC.,        :  CV04-9059 & CV05-2727]
    ET AL.,                         :
10                                  :
              DEFENDANTS.           :
11  _____

12

13

14

15             REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                  RIVERSIDE, CALIFORNIA

17               WEDNESDAY, JUNE 18, 2008

18                  JURY TRIAL - DAY 15

19                   AFTERNOON SESSION

20

21

22                              MARK SCHWEITZER, CSR, RPR, CRR
                                OFFICIAL COURT REPORTER
23                              UNITED STATES DISTRICT COURT
                                181-H ROYBAL FEDERAL BUILDING
24                              255 EAST TEMPLE STREET
                                LOS ANGELES, CALIFORNIA 90012
25                              (213) 663-3494

CERTIFIED COPY



EXHIBIT 4
PAGE 27

3034

1   **Appearances of Counsel:**

2

3   On Behalf of Mattel:

4        Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
         By John B. Quinn, Esq.
5            B. Dylan Proctor, Esq.
             Michael T. Zeller, Esq.
6            Harry Olivar, Esq.
             John Corey, Esq.
7            Diane Hutnyan, Esq.
             William Price, Esq.
8        855 South Figueroa Street
         10th Floor
9        Los Angeles, CA 90017
         (213) 624-7707
10

11

12   On Behalf of MGA Entertainment:

13       Skadden, Arps, Slate, Meagher & Flom LLP
         By Thomas J. Nolan, Esq.
14           Carl Alan Roth, Esq.
             Jason Russell, Esq.
15           Lauren Aguiar, Esq.
             David Hansen, Esq.
16           Matthew Sloan, Esq.
             Robert Herrington, Esq.
17       300 South Grand Avenue
         Los Angeles, CA 90071-3144
18       (213) 687-5000

19   On Behalf of Carter Bryant
         Keker & Van Nest
20       By:  Christa Anderson, Esq.
              Michael H. Page, Esq.
21       710 Sansome Street
         San Francisco, CA 94111-1704
22       (415) 391-5400

23

24

25



EXHIBIT __4__
PAGE __28__

3035

# I N D E X

**CARTER BRYANT, PREVIOUSLY SWORN**........................ 3047

CROSS-EXAMINATION (CONTINUED) ......................... 3047

REDIRECT EXAMINATION BY MR. PRICE:.................... 3070

# E X H I B I T S

(Exhibit 10016 received.)............................ 3067

(Exhibit 1127 received.)............................. 3116

(Exhibit 10756 received.)............................ 3134

(Exhibit 13657 received.)............................ 3136

(Exhibits 12150 and 12151 received.)................. 3138

(Exhibit 13666 received.)............................ 3143

(Exhibit 13667 received.)............................ 3144

EXHIBIT 4
PAGE 29

3066

1    Q.    BY MR. NOLAN:  Mr. Bryant, when you signed the

2    declaration under oath, did you believe it to be true at the

3    time?

4    A.    Yes.

5    Q.    Has anyone ever asked you to sign a declaration under

6    oath falsely?

7    A.    Not to my knowledge, no.

8    Q.    The last area that I want to go to has to do with

9    Exhibit 10016.    10016.

10          Do you have it in front of you?

11   A.    What notebook?

12   Q.    I think it's the white notebook.

13   A.    What number?

14   Q.    I'm sorry.  10016.  So you have the document marked as

15   10016 in front of you?

16   A.    Yes.

17   Q.    And can you identify that for me?

18   A.    This looks like a receipt from Circuit City.

19   Q.    And what's the date of the receipt?

20   A.    Well, there's two dates on here.  One is 10/22/2000.

21   One is 10/21/2000.

22   Q.    Do you recall making any purchase of electronic

23   equipment from Circuit City in around 2000?

24   A.    Yes.

25          MR. NOLAN:  Your Honor, we'd offer 10016.


EXHIBIT  4
PAGE  30

3067

```
 1                THE COURT:  Any objection?
 2                MR. PRICE:  Objection.  Relevance.  This relates to
 3    the computer?
 4                MR. NOLAN:  That and also the fax machine, your
 5    Honor.  If we want to do a sidebar --
 6                THE COURT:  That's all right.  I'll overrule the
 7    objection conditionally.  I'll come back to it if I don't
 8    think there's relevance.
 9                (Exhibit 10016 received.)
10                MR. NOLAN:  Your Honor, we would offer it
11    conditionally.
12                THE COURT:  Yes.
13                MR. NOLAN:  May we publish it?
14                THE COURT:  You may.
15    Q.   BY MR. NOLAN:  I just want to point out a couple things
16    on the Circuit City.  It says there was a purchase of a
17    desktop computer.
18                Do you see that?
19    A.   Yes.
20    Q.   And the date is October 21st, 2000.  Do you see that?
21    A.   Yes.
22    Q.   And you bought some other stuff.  I want to go down to
23    the sixth item, a facsimile machine.
24                Do you see that?
25    A.   Yes.
```

EXHIBIT 4
PAGE 31

1  Q.   Did you in fact by a facsimile machine in or around

2  October of 2000?

3  A.   Yes.

4  Q.   Now, Mr. Bryant, we've asked you about your skills with

5  respect to the use of a computer.  I just want to focus for

6  just a few minutes on your skills with respect to a facsimile

7  machine.

8       Do you recall whether or not, when you purchased

9  the facsimile machine in October of 2000, if you ever set the

10 date on the facsimile?

11 A.   No, I don't think I did.

12 Q.   Okay.  And do you know whether or not following the use

13 and purchase of your facsimile machine -- and this is a

14 machine that was used where?  At your home?

15 A.   Yes, at my home.

16 Q.   Do you recall ever -- strike that.

17      Do you recall any issues about dates on facsimiles

18 being incorrect?

19            MR. PRICE:  Objection.  Relevance.

20            MR. NOLAN:  Maybe I can enter into a stipulation

21 real quick.

22            THE COURT:  Very well.

23            MR. NOLAN:  Or, your Honor, I could go to sidebar

24 real quick --

25            THE COURT:  Why don't you confer with counsel.

EXHIBIT ___4___
PAGE __32__

3123

1  were in '98; right?

2  **A.**  What do you mean done at Mattel?

3  **Q.**  Well, Mr. Nolan was asking you whether or not you were

4  concerned about taking these drawings to Ms. Prince; right?

5  **A.**  Yes, I think I remember that.

6  **Q.**  A nice woman?

7  **A.**  Sure.

8  **Q.**  And you didn't have any reason to be concerned, unless

9  you were going to tell her you did these at Mattel; right?

10 **A.**  I'm sorry.  I'm not following your question.

11 **Q.**  Well, you told her, "These don't belong to Mattel.  I

12 created them earlier"; right?

13 **A.**  I told her that I created them in 1998, yes.

14 **Q.**  Now, you remember the drawing you did in front of the

15 jury yesterday?

16 **A.**  Yes.

17 **Q.**  Now, I just want to see your understanding.  You could

18 take that drawing to a notary; correct?

19 **A.**  Sure.

20 **Q.**  You could have the notary notarize it as of the date you

21 took it to the notary; correct?

22 **A.**  Yes.

23 **Q.**  And you could tell the notary I'd like you to put in the

24 book that this is an original drawing by me created in Paris,

25 France, in 1934.  Well, let's pick a date that -- well, in

EXHIBIT __4__
PAGE __33__

1   1995; right?

2   **A.**   Yes, that's possible.

3   **Q.**   And the notary will write down what you say.  You

4   understand that?

5   **A.**   Yes.

6   **Q.**   I mean, they don't do an investigation to see whether or

7   not you in fact created the document you drew yesterday, they

8   don't do an investigation to see whether you did it in Paris,

9   France, in 1995; right?

10  **A.**   I wouldn't imagine so, no.

11  **Q.**   So all the notarization shows is that as of August 1999,

12  with respect to those drawings, they existed; right?

13  **A.**   Yes.

14  **Q.**   And you wanted that established, that they existed in

15  August of 1999, because you were going to send them to this

16  company.  I've forgotten the name.  Alaska Mama.  How could I

17  forget?

18  **A.**   Right.

19  **Q.**   So as of January '99, then, you had no Bratz-related

20  documents which have any dates on them at all; correct?

21  **A.**   No, not that I remember.

22  **Q.**   You haven't copyrighted any Bratz drawings; right?

23  **A.**   No.

24  **Q.**   Is my statement correct?

25  **A.**   Yes.  Not that I remember.

EXHIBIT __4__
PAGE __34__

1   Q.   And as of '99, you hadn't done the poor man's copyright

2   of putting a copy in an envelope and sending it to yourself.

3   A.   No, I don't think so.

4   Q.   And I think you said that in the '98 time frame, while

5   you were there in Missouri, you actually tried to hook up

6   with an agent; correct?

7   A.   Yes.

8   Q.   To represent your works potentially to other folks;

9   right?

10  A.   Yes.

11  Q.   And there's no evidence that you actually showed any of

12  these agents your Bratz drawing; is that right?

13  A.   I don't know if I did or not.

14  Q.   Well, you didn't get notarized in '98 any Bratz drawings

15  so you could give them to your agent to try to shop around;

16  right?

17  A.   I don't believe so, no.

18  Q.   And then we have this notebook, which is 1155.

19       Do you have that original in front of you?

20  A.   That black one?   Yes.

21  Q.   And I think I misspoke in my examination of you.   I said

22  it was something over a hundred pages because I was counting

23  front and back with the Bates numbering.   If you look at that

24  notebook, more than half the pages are torn out; right?

25  A.   Yeah, I mean, there are a lot of pages missing.

EXHIBIT   4
PAGE   35

3190

2      (Proceedings concluded at 5:50 P.M.)

7          C E R T I F I C A T E

10         I hereby certify that pursuant to Title 28,

11    Section 753 United States Code, the foregoing is a true and

12    correct transcript of the stenographically reported

13    proceedings in the above matter.

14         Certified on June 18, 2008.

MARK SCHWEITZER, CSR, RPR, CRR
Official Court Reporter
License No. 10514

EXHIBIT 4
PAGE 36

# EXHIBIT 5

2353



```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3                   EASTERN DIVISION

 4                     - - -

 5       HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

 6                     - - -

 7   MATTEL, INC.,                  )
                                    )
 8                  PLAINTIFF,      )
                                    )
 9           VS.                    )   NO. CV 04-09049
                                    )
10   MGA ENTERTAINMENT, INC., ET. AL.,  )
                                    )
11                  DEFENDANTS.     )   TRIAL DAY 12
     _____)   MORNING SESSION
12   AND CONSOLIDATED ACTIONS,      )   PAGES 2353-2427
     _____)

13

14

15        REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16                  RIVERSIDE, CALIFORNIA

17               THURSDAY, JUNE 12, 2008

18                    9:24 A.M.

19

20

21

22

23             THERESA A. LANZA, RPR, CSR
            FEDERAL OFFICIAL COURT REPORTER
24            3470 12TH STREET, RM. 134
            RIVERSIDE, CALIFORNIA  92501
25               951-274-0844
            WWW.THERESALANZA.COM
```

CERTIFIED COPY

EXHIBIT 5
PAGE 37

2354

```
 1   APPEARANCES:

 2
     ON BEHALF OF MATTEL, INC.:
 3
                         QUINN EMANUEL
 4                       BY:   JOHN QUINN
                               JON COREY
 5                             MICHAEL T. ZELLER
                               HARRY OLIVAR
 6                             TIMOTHY ALGER
                         865 S. FIGUEROA STREET,
 7                       10TH FLOOR
                         LOS ANGELES, CALIFORNIA  90017
 8

 9

10   ON BEHALF OF MGA ENTERTAINMENT:

11                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                         BY:   THOMAS J. NOLAN
12                             JASON RUSSELL
                               RAOUL KENNEDY
13                             LAUREN AGUIAR
                               CARL ROTH
14                       300 SOUTH GRAND AVENUE
                         LOS ANGELES, CALIFORNIA  90071-3144
15                       213-687-5000

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT __5__

PAGE __38__

THURSDAY, JUNE 12, 2008                    TRIAL DAY 12, MORNING SESSION

2355

```
 1                          I N D E X

 2                                                    PAGE

 3     PLAINTIFF CASE (CONTINUED).....................  2372

 4

 5

 6
       WITNESS           DIRECT      CROSS     REDIRECT      RECROSS
 7     RACHEL HARRIS

 8     BY MR. QUINN      2372                  2414
       BY MR. NOLAN                  2389                     2423
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 5
PAGE 39

THURSDAY, JUNE 12, 2008                    TRIAL DAY 12, MORNING SESSION

2374

```
 1   Q    WHEN YOU STARTED WORK AT MGA IN OCTOBER OF 2000, DID YOU
 2   MEET A CARTER BRYANT?
 3   A    YES.
 4   Q    AND IN RELATION TO YOUR START DATE, HOW SOON AFTER THAT
 5   WAS IT THAT YOU MET CARTER BRYANT?                              09:55
 6   A    WITHIN, PROBABLY, A WEEK AND A HALF, AT THE MOST.
 7   Q    AND HOW DID THAT MEETING COME ABOUT?
 8   A    IT WAS JUST A SCHEDULED MEETING THAT I WAS TOLD I NEEDED
 9   TO ATTEND.
10   Q    WHO IS IT THAT TOLD YOU THAT YOU NEEDED TO ATTEND A        09:55
11   MEETING WITH MR. BRYANT?
12   A    MOST LIKELY, IT CAME BY E-MAIL AS A MEETING REQUEST, BUT
13   IT WAS WITH PAULA, CARTER, AND MERCEDEH.
14   Q    YOU KNEW IN ADVANCE IT WAS GOING TO BE WITH THOSE FOUR
15   PEOPLE?                                                         09:56
16   A    YES.
17   Q    AND MERCEDEH, IS THAT MERCEDEH WARD?
18   A    YES.
19   Q    WHAT WAS HER POSITION?
20   A    I DON'T KNOW EXACTLY WHAT HER TITLE WAS, BUT I BELIEVE SHE 09:56
21   WAS PRODUCT DEVELOPMENT, DIRECTOR OF PRODUCT DEVELOPMENT.
22   Q    AND PAULA IS PAULA TREANTAFELLES, NOW KNOWN AS
23   PAULA GARCIA?
24   A    YES.
25   Q    AND BEFORE THE MEETING, DID YOU GET ANY UNDERSTANDING AS   09:56
```

EXHIBIT __5__

PAGE __40__

2375

```
 1   TO WHAT THE PURPOSE OF THE MEETING WAS?

 2   A    TO INTRODUCE MERCEDEH WARD AND I TO THE NEW DOLL LINE.

 3   Q    THE NEW DOLL LINE, MEANING...

 4   A    THE NEW FASHION DOLL LINE THAT WAS GOING TO BE STARTED.

 5   Q    DID IT HAVE A NAME, THEN, AT THE TIME?                   09:56

 6   A    NOT TO MY KNOWLEDGE.

 7   Q    AT LEAST THEY DIDN'T TELL YOU THAT?

 8   A    CORRECT.

 9   Q    DID MS. GARCIA, IN ADVANCE OF THIS MEETING, TELL YOU

10   ANYTHING ELSE ABOUT MR. BRYANT OR WHAT WOULD BE HAPPENING AT   09:56

11   THE MEETING?

12   A    SHE JUST MENTIONED THAT CARTER WAS COMING IN AND HE WAS

13   THE CREATOR; HE HAD -- HE WAS COMING IN ON HIS LUNCH, SO WE

14   NEEDED TO KIND OF MOVE QUICKLY, THAT HE WAS GOING TO BE

15   PRESENTING THE DOLLS TO US, AND THAT WE SHOULDN'T REALLY       09:57

16   MENTION MUCH ABOUT HIM COMING HERE AT LUNCH BECAUSE HE HAD

17   ALREADY GIVEN HIS NOTICE AT MATTEL AND HE WAS GOING TO BE

18   LEAVING THERE.

19   Q    DID SHE INDICATE SHE KNEW THAT HE WAS A MATTEL EMPLOYEE AT

20   THE TIME?                                                     09:57

21   A    YES.

22   Q    DID SHE INDICATE WHETHER YOU SHOULD SAY ANYTHING ONE WAY

23   OR ANOTHER ABOUT THE FACT THAT MR. BRYANT WAS COMING OVER?

24   A    YES.  SHE MENTIONED NOT TO SAY ANYTHING BECAUSE HE WAS

25   COMING OVER DURING HIS LUNCH BREAK.                           09:57
```

EXHIBIT   5

PAGE   41

THURSDAY, JUNE 12, 2008

TRIAL DAY 12, MORNING SESSION

```
 1    Q    OKAY.

 2         DID SHE SAY ANYTHING ABOUT WHETHER OR NOT MATTEL

 3    WOULD BE UPSET IF THEY KNEW THAT MR. BRYANT WAS COMING OVER TO

 4    MGA?

 5    A    I DON'T RECALL IF SHE MENTIONED IT AT THAT POINT, NO.      09:58

 6    Q    LET ME ENLARGE THE QUESTION, THEN.

 7         AT ANY POINT, DID SHE SAY ANYTHING TO YOU ON THAT

 8    SUBJECT, AS TO WHETHER MATTEL WOULD BE UPSET IF MATTEL KNEW

 9    THAT MR. BRYANT WAS COMING OVER TO MGA?

10    A    I CAN'T REMEMBER EXACTLY IF SHE MENTIONED IT, BUT IT WAS   09:58

11    IMPLIED.

12    Q    DO YOU RECALL WHAT SHE SAID THAT IMPLIED THAT TO YOU?

13              MR. NOLAN:  OBJECTION, YOUR HONOR.  FOUNDATION AS TO

14    TIME; TEMPORAL FOUNDATION.

15              THE COURT:  SUSTAINED.                                09:58

16    BY MR. QUINN:

17    Q    WHAT YOU'VE INDICATED, THAT SHE IMPLIED THAT MATTEL WOULD

18    BE UPSET IF IT WAS KNOWN THAT MR. BRYANT WAS COMING OVER, WHEN

19    WAS IT THAT MS. TREANTAFELLES SAID THIS THAT CAUSED YOU TO HAVE

20    THIS UNDERSTANDING?  WAS IT BEFORE THE MEETING?                 09:59

21    A    IT WAS JUST BEFORE THE MEETING THAT SHE HAD MENTIONED THE

22    DETAILS ABOUT HIM COMING, YES.

23    Q    THAT SHE SAID THAT?

24    A    YES.

25    Q    DID SHE INDICATE WHETHER OR NOT SHE HAD KNOWN MR. BRYANT   09:59
```

EXHIBIT 5
PAGE 42

2377

1   FROM MATTEL?

2   A    AT THAT TIME, NO.

3   Q    AT ANY TIME, DID SHE INDICATE THAT?

4   A    IN THE FUTURE, YES.

5   Q    ·THIS WAS SOME FUTURE CONVERSATION YOU HAD WITH HER?          09:59

6   A    YES.  JUST, SHE HAD MENTIONED THAT SHE KNEW CARTER FROM

7   MATTEL WHEN SHE WAS THERE.

8   Q    SO MS. TREANTAFELLES --

9        MR. NOLAN:  OBJECTION, YOUR HONOR.  FOUNDATION AS TO

10  TEMPORAL TIME IN THAT CONVERSATION.                                09:59

11       THE COURT:  SUSTAINED.

12  BY MR. QUINN:

13  Q    CAN YOU TELL US WHEN IT WAS THAT MS. TREANTAFELLES TOLD

14  YOU THAT SHE HAD KNOWN MR. BRYANT WHEN SHE HAD WORKED AT

15  MATTEL?                                                            09:59

16  A    I CAN'T SAY THE EXACT DATE.  I DON'T KNOW THE EXACT DATE.

17  Q    CAN YOU PUT IT, ROUGHLY?  WAS IT IN 2000, OCTOBER

18  NOVEMBER, DECEMBER?

19  A    YES.

20  Q    OTHER THAN THAT OCCASION, JUST BEFORE THE MEETING WHERE       10:00

21  SHE TOLD YOU THAT MATTEL WOULD BE UPSET AND YOU SHOULDN'T SAY

22  ANYTHING ABOUT MR. BRYANT COMING OVER, WAS THERE EVER ANY OTHER

23  OCCASION WHEN MS. TREANTAFELLES SAID TO YOU THAT YOU REALLY

24  SHOULDN'T BE SAYING ANYTHING ABOUT MR. BRYANT'S INVOLVEMENT IN

25  BRATZ?                                                             10:00

EXHIBIT  5
PAGE  43

```
 1   A     NO.
 2   Q     DID YOU EVER HAVE A CONVERSATION WITH ANYONE ELSE AT MGA
 3   WHERE IT WAS INDICATED TO YOU THAT YOU SHOULDN'T SAY ANYTHING
 4   ABOUT MR. BRYANT'S INVOLVEMENT IN BRATZ?
 5   A     YES.                                                          10:00
 6   Q     WHO WAS IT THAT YOU HAD THAT CONVERSATION WITH?
 7   A     MERCEDEH.
 8   Q     MERCEDEH WARD?
 9   A     YES.
10   Q     ANYONE ELSE THAT YOU SPOKE TO -- WELL, LET ME FOLLOW UP ON    10:01
11   THAT.
12         WHAT WAS IT THAT MERCEDEH WARD SAID ABOUT WHY YOU
13   SHOULDN'T SAY ANYTHING ABOUT MR. BRYANT'S INVOLVEMENT IN BRATZ?
14              MR. NOLAN:  OBJECTION, YOUR HONOR.  FOUNDATION AS TO
15   TIME.                                                              10:01
16              THE COURT:  SUSTAINED.
17   BY MR. QUINN:
18   Q     WHEN WAS IT THAT MERCEDEH WARD SAID THIS TO YOU?
19   A     SHE WOULD PERIODICALLY COME INTO MY OFFICE, AND WE WOULD
20   DISCUSS DIFFERENT PRODUCTS AND THINGS; SO IT WAS AT ONE OF         10:01
21   THOSE OCCASIONS THAT SHE HAD MENTIONED IT TO ME.
22   Q     DOES THAT SEEM TO YOU LIKE IT WAS SOMETIME IN THE YEAR
23   2000?
24              MR. NOLAN:  OBJECTION, YOUR HONOR.  LEADING.
25              THE COURT:  REPHRASE.                                   10:01
```

EXHIBIT 5
PAGE 44

2379

```
 1              SUSTAINED.
 2    BY MR. QUINN:
 3    Q    CAN YOU NARROW IT AT ALL IN TIME, IN TERMS OF THE MONTH OR
 4    YEAR, WHEN YOU HAD THIS CONVERSATION WITH MERCEDEH WARD?
 5    A    IT WAS DEFINITELY WITHIN HER FIRST FEW WEEKS AT MGA.        10:01
 6    Q    AND DO YOU KNOW WHEN MERCEDEH WARD STARTED AT MGA?
 7    A    I DO.  SHE STARTED WITHIN DAYS OF MY START DATE.
 8    Q    DID SHE INDICATE TO YOU WHY YOU SHOULDN'T SAY ANYTHING
 9    ABOUT MR. BRYANT'S INVOLVEMENT WITH BRATZ?
10              MR. NOLAN:  OBJECT ON THE BASIS OF HEARSAY,           10:02
11    YOUR HONOR.
12              THE COURT:  SUSTAINED.
13    BY MR. QUINN:
14    Q    WHAT WAS MERCEDEH WARD'S POSITION?  WAS SHE IN CHARGE OF
15    ENGINEERING FOR BRATZ?                                         10:02
16    A    YES.
17    Q    AND WHEN YOU HAD THIS CONVERSATION WITH HER, DID SHE
18    INDICATE TO YOU WHY YOU SHOULDN'T SAY ANYTHING TO ANYONE ABOUT
19    HIS INVOLVEMENT IN BRATZ?
20              THE COURT:  THAT SEEMS TO BE THE SAME QUESTION,       10:02
21    COUNSEL.
22              MR. NOLAN:  SAME OBJECTIONS.
23              MR. QUINN:  THAT'S AN ADMISSION, YOUR HONOR.
24              THE COURT:  OVERRULED.
25    / / /                                                          10:02
```

EXHIBIT 5
PAGE 45

```
 1   BY MR. QUINN:

 2   Q    DID SHE INDICATE TO YOU WHY --

 3            THE COURT:  I'LL HEAR YOU AT SIDE-BAR, IF YOU WANT,

 4   COUNSEL.  THIS SEEMS TO BE AN ADMISSION OF A PARTY OPPONENT.

 5            MR. NOLAN:  SIDE-BAR REAL QUICKLY.                    10:02

 6            (WHEREUPON, THE FOLLOWING PROCEEDINGS

 7            WERE HELD AT SIDE-BAR:)

 8            THE COURT:  I WASN'T THINKING ABOUT IT BEING A PARTY

 9   OPPONENT.

10            MR. NOLAN:  YOUR HONOR, THIS IS A CONVERSATION BY AN   10:03

11   EMPLOYEE TWO WEEKS INTO MGA, APPARENTLY.  WHEN THE TIME THIS

12   TOOK PLACE, SHE IS NOT AN OFFICER, SHE'S NOT A DIRECTOR, SHE'S

13   NOT IN MANAGEMENT, PER SE.  SHE'S IN A PARTICULAR AREA.  THIS

14   IS WITHIN HER FIRST TWO WEEKS WHERE -- IT'S A CONFIDENTIAL

15   LINE.  I DON'T THINK THAT IS GROUNDS FOR IMPOSING UPON HER THE  10:03

16   ABILITY TO BIND THE COMPANY ON AN ADMISSION.  AND I THINK IT'S

17   JUST RANCK HEARSAY.

18            THE COURT:  COUNSEL?

19            MR. QUINN:  WHAT THE WITNESS SAID IS SHE WAS IN

20   CHARGE OF ENGINEERING FOR BRATZ.  THIS IS A CONVERSATION ON    10:04

21   THAT VERY SUBJECT.  SO, AS TO THAT SUBJECT, I THINK SHE'S FULLY

22   QUALIFIED.

23            THE COURT:  WHO IS THE SOURCE OF THE ACTUAL

24   STATEMENT?

25            MR. QUINN:  MERCEDEH WARD MAKES THE STATEMENT.        10:04
```

EXHIBIT 5
PAGE 46

2381

```
 1              THE COURT:  WHO IS THE HEAD OF ENGINEERING.

 2              MR. QUINN:  EXACTLY; THAT'S WHAT THE WITNESS SAID.

 3              THE COURT:  COUNSEL, I'D LIKE TO HAVE THIS DONE

 4   OUTSIDE OF THE PRESENCE OF THE JURY.

 5              DOES THIS WITNESS KNOW THE -- DO WE HAVE ANYTHING      10:04

 6   ABOUT WHERE MERCEDEH WARD GOT THAT INFORMATION FROM?

 7              MR. QUINN:  I DON'T KNOW THE ANSWER TO THAT.  I WOULD

 8   ASK.

 9              THE COURT:  NO.

10              MR. NOLAN:  IT'S DOUBLE HEARSAY.                       10:04

11              THE COURT:  SHE MAY NOT BE A DIRECTOR, BUT IT'S A

12   HIGH ENOUGH POSITION IN THE PARTICULAR CONTEXT OF THE BRATZ

13   DIVISION.  I'LL OVERRULE THE OBJECTION.

14              THANK YOU, COUNSEL.

15              (WHEREUPON, SIDE-BAR PROCEEDINGS WERE CONCLUDED.)     10:05

16   BY MR. QUINN:

17   Q    MS. HARRIS, DID MERCEDEH WARD INDICATE TO YOU WHY YOU

18   SHOULDN'T SAY ANYTHING TO ANYONE ABOUT MR. BRYANT'S INVOLVEMENT

19   WITH BRATZ?

20   A    YES.                                                        10:05

21   Q    WHAT DID SHE SAY?

22   A    SHE HAD MENTIONED THAT CARTER HAD PREVIOUSLY WORKED AT

23   MATTEL AND HAD PRESENTED THE DOLL LINE TO MATTEL AND THEY HAD

24   TURNED IT DOWN; SO THEREFORE, ONCE HE PRESENTED IT TO MGA AND

25   DECIDED TO LEAVE, THAT WE SHOULD JUST NOT MENTION ANY OF THAT    10:05
```

EXHIBIT 5
PAGE 47

2382

1   HAD HAPPENED.

2   Q    DID SHE SAY YOU SHOULDN'T MENTION IT WITHIN MGA OR OUTSIDE

3   OF MGA?

4   A    OUTSIDE OF MGA.

5   Q    WAS THERE EVER ANYONE ELSE AT MGA WHO GAVE YOU THE                10:06

6   INSTRUCTION THAT CARTER BRYANT REALLY SHOULDN'T BE MENTIONED AS

7   HAVING ANYTHING TO DO WITH BRATZ?

8   A    ISAAC LARIAN, AT CERTAIN TIMES, IN JUST GENERAL MEETINGS.

9   Q    ISAAC LARIAN?

10  A    YES.                                                             10:06

11  Q    AND THIS WAS ON ONE OCCASION OR ON MORE THAN ONE OCCASION?

12  A    AT MOST, TWO.

13  Q    WHAT DO YOU RECALL MR. LARIAN SAYING ON THE FIRST OCCASION

14  ABOUT NOT SAYING ANYTHING ABOUT MR. BRYANT HAVING ANYTHING TO

15  DO WITH BRATZ?                                                        10:06

16          MR. NOLAN:   FOUNDATION WITH RESPECT TO TIME.

17          THE COURT:   SUSTAINED.

18  BY MR. QUINN:

19  Q    WHEN, APPROXIMATELY, WAS THE FIRST OCCASION?

20  A    I WOULD SAY WITHIN THE FIRST TWO MONTHS OR SO.                   10:06

21  Q    AND CAN YOU RECALL WHERE YOU WERE, WHERE HE WAS, WHEN HE

22  GAVE YOU THIS INSTRUCTION?

23  A    NO.

24  Q    AND WHAT WAS IT THAT MR. LARIAN SAID TO YOU AT THAT TIME?

25  A    I DON'T RECALL WORD FOR WORD.                                    10:07

EXHIBIT __5__
PAGE __48__

2383

```
 1   Q    ALL RIGHT.

 2         WHAT'S YOUR BEST RECOLLECTION OF THE INSTRUCTION THAT

 3   YOU RECEIVED?

 4   A    JUST THAT WE SHOULDN'T MENTION THAT CARTER WAS INVOLVED

 5   WITH IT; THAT IT SHOULD HAVE BEEN A DOLL LINE COMING FROM MGA.   10:07

 6   Q    DID HE SAY THAT YOU SHOULDN'T MENTION IT TO ANYONE WITHIN

 7   MGA, OR YOU SHOULDN'T MENTION IT TO ANYONE OUTSIDE OF MGA, OR

 8   BOTH?

 9   A    OUTSIDE OF MGA.

10   Q    WAS THERE EVER ANOTHER OCCASION -- I TAKE IT THERE WAS   10:07

11   ANOTHER OCCASION WHERE YOU RECEIVED SIMILAR INSTRUCTION FROM

12   MR. LARIAN.

13   A    I'M SURE THERE WAS.  I DON'T REMEMBER IF IT WAS E-MAILED

14   OR IN PERSON.  I DON'T RECALL.

15   Q    BUT YOU'RE CONFIDENT YOU RECEIVED THAT INSTRUCTION MORE   10:07

16   THAN ONCE?

17   A    YES.

18   Q    LET ME ASK YOU THIS ABOUT MR. LARIAN:  DID YOU GIVE ANY

19   CONSIDERATION AT ALL TO NOT FOLLOWING HIS INSTRUCTION?

20   A    NO.                                                       10:07

21   Q    WHY?

22         MR. NOLAN:  OBJECTION AS TO THE RELEVANCE OF WHY,

23   YOUR HONOR.

24         THE COURT:  SUSTAINED.

25         WELL, OVERRULED.                                         10:08
```

EXHIBIT **5**

PAGE **49**

2384

```
 1   BY MR. QUINN:

 2   Q    WHY?

 3   A    BECAUSE I WAS WORKING FOR THE COMPANY, AND I WAS LOYAL TO

 4   THE COMPANY.

 5   Q    WERE PEOPLE AFRAID OF MR. LARIAN AT MGA?              10:08

 6           MR. NOLAN:  OBJECTION.  RELEVANCE; ALSO FOUNDATION.

 7           THE COURT:  SUSTAINED.

 8   BY MR. QUINN:

 9   Q    DID MR. LARIAN SAY ANYTHING TO YOU ABOUT WHAT YOU SHOULD

10   SAY ABOUT WHO CAME UP WITH THE BRATZ DOLL?  HE SAID, 'DON'T   10:08

11   MENTION CARTER BRYANT.'  DID HE SAY ANYTHING TO YOU ABOUT WHO

12   SHOULD BE CREDITED WITH COMING UP WITH THE BRATZ DOLL?

13   A    JUST MGA.

14   Q    NOW, YOU TOLD US ABOUT WHAT MERCEDEH WARD TOLD YOU ABOUT

15   MR. BRYANT HAVING PRESENTED THE BRATZ DOLL AT MATTEL.         10:08

16           THAT'S WHAT SHE SAID?

17   A    YES.

18   Q    YOU DON'T KNOW WHETHER THAT'S TRUE OR NOT?

19   A    NO IDEA.

20   Q    BASED ON THE INSTRUCTIONS THAT YOU RECEIVED FROM        10:09

21   MS. GARCIA AND MR. LARIAN, WAS IT YOUR UNDERSTANDING THAT

22   MR. BRYANT'S PARTICIPATION IN BRATZ WAS TO BE KEPT SECRET?

23           MR. NOLAN:  OBJECTION, YOUR HONOR.  FOUNDATION; ALSO

24   RELEVANCE WITH RESPECT TO HER STATE OF MIND.

25           THE COURT:  SUSTAINED.                               10:09
```

EXHIBIT 5
PAGE 50

2387

```
 1              LAY A FOUNDATION IN TERMS OF THIS.

 2              I'LL SUSTAIN THE SECOND ONE.

 3   BY MR. QUINN:

 4   Q    AS DIRECTOR OF CREATIVE SERVICES, DID YOU -- I TAKE IT

 5   THAT'S A DEPARTMENT?                                            10:12

 6   A    YES.

 7   Q    AND DID YOU INTERACT WITH MR. LARIAN A GREAT DEAL IN THAT

 8   JOB?

 9   A    YES.

10   Q    IN YOUR RELATIONS WITH HIM, WAS HE SOMEONE WHO GOT         10:12

11   INVOLVED A LOT IN THE DETAILS OF THE BUSINESS?

12   A    YES, HE DID.

13   Q    WOULD YOU REGARD HIM -- SOME PEOPLE -- IT'S NOT

14   NECESSARILY A BAD THING, BUT YOU HEAR THE PHRASE SOMETIMES

15   "MICROMANAGER."                                                 10:12

16   A    SOMEWHAT.

17              MR. NOLAN:  OBJECTION.  IRRELEVANT WITH RESPECT TO

18   CHARACTERIZATION; ALSO LACK OF FOUNDATION.

19              THE COURT:  REPHRASE YOUR QUESTION, COUNSEL.

20   BY MR. QUINN:                                                   10:12

21   Q    IN TERMS OF THE THINGS THAT YOU WORKED WITH HIM ON, DID HE

22   GET VERY INVOLVED IN THE DETAILS?

23   A    YES.

24   Q    FROM THE TIME YOU STARTED THERE -- I TAKE IT YOU FIRST

25   HEARD ABOUT THIS BRATZ PROJECT WITHIN THE FIRST TEN DAYS OF     10:13
```

EXHIBIT 5

PAGE 51

2388

```
 1   YOUR STARTING AT MGA?

 2   A    YES.

 3   Q    FROM THE TIME THAT YOU STARTED, WAS THERE EVER ANY

 4   CONSIDERATION TO NOT GOING FORWARD WITH THE BRATZ DOLL?

 5          MR. NOLAN:  OBJECTION, YOUR HONOR.  AGAIN, CALLS FOR      10:13

 6   SPECULATION; LACK OF FOUNDATION.

 7          THE COURT:  SUSTAINED.

 8   BY MR. QUINN:

 9   Q    YOU GOT INVOLVED IN THE BRATZ DOLL YOURSELF, I TAKE IT?

10   A    YES.                                                        10:13

11   Q    AND WAS THERE EVER ANY INDICATION TO YOU THAT THERE WAS

12   ANY DOUBT AS TO WHETHER THE COMPANY WAS GOING FORWARD WITH THE

13   BRATZ DOLL?

14   A    NO.

15   Q    LET ME SEE IF I CAN REFRESH YOUR RECOLLECTION.             10:13

16          IF YOU COULD LOOK, PLEASE -- YOU SHOULD SEE UP THERE

17   A COPY OF YOUR DEPOSITION.  IF YOU COULD TURN, PLEASE, TO

18   PAGE 264.  IF YOU COULD JUST READ THAT TO YOURSELF, NOT OUT

19   LOUD, ON PAGE 264, LINES 3 TO 11, PERHAPS DOWN TO 15.  LET ME

20   KNOW WHEN YOU HAVE HAD A CHANCE TO DO THAT.                     10:15

21   A    OKAY.

22   Q    DOES READING THAT REFRESH YOUR RECOLLECTION ABOUT ANY

23   OTHER DIRECTION YOU RECEIVED ABOUT WHO SHOULD BE CREDITED WITH

24   THE IDEA FOR THE BRATZ DOLL?

25   A    YES.                                                       10:15
```

EXHIBIT ___5___

PAGE ___52___

2389

```
 1   Q    WHAT IS IT THAT YOU NOW REMEMBER, HAVING READ YOUR
 2   TESTIMONY?
 3   A    JUST THAT IF ANYONE WAS TO ASK, IT WAS TO BE CREDITED TO
 4   ISAAC OR THE INSPIRATION OF HIS DAUGHTER.
 5   Q    AND WHO WAS IT WHO TOLD YOU THAT?                        10:15
 6   A    THAT CAME FROM ISAAC.
 7             MR. QUINN:   NOTHING FURTHER.
 8             THE COURT:   CROSS-EXAMINATION?
 9                      CROSS-EXAMINATION
10   BY MR. NOLAN:
11   Q    I REPRESENT MGA.
12             WE'VE NEVER MET, HAVE WE?
13   A    NO.
14   Q    YOU WERE TERMINATED BY MGA; IS THAT CORRECT?
15   A    YES.                                                     10:16
16   Q    AND AFTER YOU WERE TERMINATED BY MGA, DID YOU APPLY FOR A
17   JOB AT MATTEL?
18   A    YES.
19   Q    NOW, LAST NIGHT WHEN I WAS READING YOUR DEPOSITION, I
20   NOTICED THAT YOUR DEPOSITION WAS TAKEN FEBRUARY 26, 2008;     10:16
21   CORRECT?
22   A    YES.
23   Q    SO THAT'S A FEW MONTHS AGO.
24             I THINK YOU SAID THAT YOUR APPLICATION WAS STILL
25   PENDING AT MATTEL; IS THAT CORRECT?                           10:16
```

EXHIBIT __5__

PAGE __53__

2390

```
 1   A    WELL, I'VE PUT APPLICATIONS IN ON-LINE AT MATTEL FOR

 2   YEARS.  THAT'S THE TOY INDUSTRY.  THERE'S ONLY SO MANY TOY

 3   COMPANIES, AND IN ORDER TO CONTINUE WORKING IN CALIFORNIA, I

 4   WOULD NEED TO APPLY TO EVERY TOY COMPANY THAT'S OUT THERE.

 5   Q    CAN YOU TELL THE JURY HOW MANY TIMES YOU'VE APPLIED FOR      10:16

 6   EMPLOYMENT AT MATTEL.

 7   A    AS POSITIONS ARISE AT MATTEL, IF THEY ARE OF INTEREST, I

 8   HAVE APPLIED; SO IT COULD HAVE BEEN TWO OR THREE OVER THE

 9   YEARS.

10   Q    COULD IT BE MORE THAN TWO OR THREE?                         10:17

11   A    POSSIBLY.

12   Q    AND YOUR LATEST APPLICATION, YOU'VE NOT HEARD BACK YET

13   FROM MATTEL; CORRECT?

14   A    NO.  THE POSITIONS ARE ALREADY FILLED.  THERE'S NOT ANY

15   AVAILABLE POSITIONS THAT I HAVE APPLIED FOR.                     10:17

16   Q    HAVE YOU WITHDRAWN YOUR APPLICATION?

17   A    NO.  I DON'T THINK THERE'S A WAY TO DO THAT ON-LINE.

18   Q    WE'VE BEEN TALKING TODAY ABOUT EVENTS IN THE YEAR 2000;

19   RIGHT?

20   A    YES.                                                        10:17

21   Q    YOU STARTED TO WORK AT MGA -- YOUR FIRST DAY WAS

22   OCTOBER 11TH?

23   A    YES.

24   Q    OF THE YEAR 2000?

25   A    YES.                                                        10:17
```

EXHIBIT 5
PAGE 54

2427

1

2

3                                    CERTIFICATE

4

5   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
6   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
    ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
7   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.

8

9

10  THERESA A. LANZA, RPR, CSR                    6-13-08
    OFFICIAL COURT REPORTER                        DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT ___5___
PAGE ___55___

THURSDAY, JUNE 12, 2008                    TRIAL DAY 12, MORNING SESSION

2428

1                  UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3                           ---

4          HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5                           ---

6    MATTEL, INC.,                  :   PAGES 2428 - 2524
                                    :
7            PLAINTIFF,             :
                                    :
8        VS.                        :   NO. ED CV04-09049-SGL
                                    :   [CONSOLIDATED WITH
9    MGA ENTERTAINMENT, INC.,       :   CV04-9059 & CV05-2727]
     ET AL.,                        :
10                                  :
             DEFENDANTS.            :
11   _____:

12

13

14

15               REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                    RIVERSIDE, CALIFORNIA

17                  THURSDAY, JUNE 12, 2008

18                   JURY TRIAL - DAY 12

19                    AFTERNOON SESSION

20

21

22                                  MARK SCHWEITZER, CSR, RPR, CRR
                                    OFFICIAL COURT REPORTER
23   CERTIFIED                      UNITED STATES DISTRICT COURT
                                    181-H ROYBAL FEDERAL BUILDING
24   COPY                           255 EAST TEMPLE STREET
                                    LOS ANGELES, CALIFORNIA 90012
25                                  (213) 663-3494

EXHIBIT  5

56

2429

1   **Appearances of Counsel:**

2

3   On Behalf of Mattel:

4       Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
        By John B. Quinn, Esq.
5           B. Dylan Proctor, Esq.
            Michael T. Zeller, Esq.
6           Harry Olivar, Esq.
            John Corey, Esq.
7           Diane Hutnyan, Esq.
            William Price, Esq.
8       855 South Figueroa Street
        10th Floor
9       Los Angeles, CA 90017
        (213) 624-7707
10

11  On Behalf of MGA Entertainment:

12      Skadden, Arps, Slate, Meagher & Flom LLP
        By Thomas J. Nolan, Esq.
13          Carl Alan Roth, Esq.
            Jason Russell, Esq.
14          Lauren Aguiar, Esq.
            David Hansen, Esq.
15          Matthew Sloan, Esq.
        300 South Grand Avenue
16      Los Angeles, CA 90071-3144
        (213) 687-5000
17

18  For Carter Bryant:

19      Keker & Van Nest
        By Christa Anderson, Esq.
20          Michael H. Page, Esq.
        710 Sansome Street
21      San Francisco, CA 94111-1704
        (415) 391-5400
22

23

24

25

EXHIBIT 5
57

2430

1                            **I N D E X**

2

3   **CARTER BRYANT, PREVIOUSLY SWORN**........................ 2433

4   DIRECT EXAMINATION (CONTINUED) BY MR. PRICE............ 2433

5

6

7                          **E X H I B I T S**

8
      (Exhibit 2201 received.)............................. 2518
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT  5
68

2483

```
 1              MR. PRICE:  Your Honor, I'd like to play from

 2   Mr. Carter's deposition -- I'm sorry.  I've done this so

 3   much -- Mr. Bryant's deposition.

 4              THE WITNESS:  That's all right, Mr. Bill.

 5              MR. PRICE:  That was good.  If we could play from

 6   November 5, 2004, page 299, line 13 to line 25.

 7              THE COURT:  Any objection?

 8              MR. NOLAN:  No objection.

 9              THE COURT:  You may, Counsel.

10              MR. NOLAN:  Your Honor, I apologize.  Can we play

11   through page 300, line 19 ?

12              MR. PRICE:  I object, your Honor.  The question is

13   why did he do it.

14              THE COURT:  One second.  I'm going to sustain

15   Mr. Price's objection.  You can explore this, Counsel, in

16   your cross-examination.

17              WHEREUPON THE VIDEOTAPED DEPOSITION

18              EXCERPTS OF CARTER BRYANT, AS PROVIDED

19              BY COUNSEL, ARE INCORPORATED HEREIN.

20              "QUESTION:  And my question to you is,

21         looking at this black and white version, what is it

22         that makes you think that this is a photocopy of

23         the color version?

24              "ANSWER:  Because of the shading and, you

25         know, there's obvious mid-tones in there.
```

EXHIBIT 5

59

```
 1              "QUESTION:  You do not recall -- or you did
 2        add this 8/1998?
 3              "ANSWER:  Yes.
 4              "QUESTION:  You just don't recall when you
 5        added that?
 6              "ANSWER:  I don't recall.
 7              "QUESTION:  Do you recall for what purpose you
 8        added that?
 9              "ANSWER:  No, I don't."
10   Q.   BY MR. PRICE:  Getting back to the first page there,
11   Mr. Bryant, one thing we can say for certain is that this
12   8/98 was added sometime in 1999.
13   A.   I couldn't say that for certain, no.
14   Q.   Let me rephrase.
15              One thing we can say for certain is this 8/98 was
16   added sometime after you began working at Mattel.
17   A.   I'm still not exactly sure what you're asking me.
18   Q.   You began working for Mattel again in January of 1999;
19   right?
20   A.   Right.
21   Q.   At that time that poster board, wherever it existed, was
22   blank.
23   A.   Yes.
24   Q.   So my question is you added this date 8/1998 at some
25   time after January of 1999; correct?
```



2485

1   A.   I think I added it after I left Mattel.

2   Q.   So it could have been in 2000 or 2001?

3   A.   Yes.

4   Q.   Could have been 2004?

5   A.   Possibly.  I don't remember it being that late.

6   Q.   Are you aware of a single one of your Bratz drawings

7   which has a 1998 date on it which was actually put there,

8   where the date was put there in 1998?

9   A.   I'm not sure.

10  Q.   Sitting here today, you can't think of a single drawing

11  that has a 1998 date on it that was put there by you in 1998;

12  correct?

13  A.   No, I can't really.  Generally, you know, I don't

14  usually put a date on like a master drawing, line drawing.  I

15  typically don't necessarily date those.

16  Q.   So the answer is you can't identify a specific one today

17  where you put a '98 date on it in 1998; correct?

18  A.   No, I can't.

19  Q.   You can identify, however, at least three drawings where

20  you put a 1999 date on them in 1999.

21  A.   Yes.

22  Q.   And those are the ones we looked at earlier.  The 1327,

23  the 1328, and the Exhibit 777; correct?

24  A.   If you could show those to me again.

25  Q.   Sure.  1327, September 19, '99.  That was put there in


EXHIBIT 5
6

1   '99; right?

2   **A.**   Yes.

3   **Q.**   And then 1328, September 19, 1999, that was put there in

4   '99; right?   In fact, September 19, 1999?

5   **A.**   I'm assuming so, yes.

6   **Q.**   And then Exhibit 777, where you have August 27, '99,

7   which was put there about August 27, '99; correct?

8   **A.**   Yes.

9   **Q.**   If you look at the originals in front of you, you'll see

10  that there are some other poster boards which have Bratz

11  dolls on them.   And there are these dates of '98 on them.

12          Do you see that?

13  **A.**   Yes.

14  **Q.**   And maybe you could pull up one of those.   And which

15  character is that?

16  **A.**   This is Sasha.   I think she was originally called

17  Hallidae.

18  **Q.**   Let's put up Exhibit 3, page 5.   And I think Mr. Bryant

19  was holding up the original.   Is that the original that you

20  are looking at that you are holding up?

21  **A.**   Yes.

22  **Q.**   And you'll notice that again, this has this August 1998

23  date on it; right?

24  **A.**   Yes.

25  **Q.**   And if there's any date in these exhibits or in these


EXHIBIT 5
6

2524

1

2

3

4

5

6                        C E R T I F I C A T E

7

8

9              I hereby certify that pursuant to Title 28,

10   Section 753 United States Code, the foregoing is a true and

11   correct transcript of the stenographically reported

12   proceedings in the above matter.

13              Certified on June 12, 2008.

14

15

16              MARK SCHWEITZER, CSR, RPR, CRR
                Official Court Reporter
17              License No. 10514

18

19

20

21

22

23

24

25

EXHIBIT 5

63

# EXHIBIT 6





ATTORNEY'S EYES ONLY

BRYANT 00197

EXHIBIT 6
PAGE 64

EX 5-0057

# EXHIBIT 7

SCULPTURAL BODY DRAWING; 9/19/99
TO BE USED FOR ALL DOLLS



JOINTED HERE, @ SHOULDERS

JOINTED @ HIPS

SCULPTED FINGERNAILS

TOTAL DOLL HEIGHT W/ HEAD: 11½" — 12"

9"

ACTUAL SIZE

BASIC SHOE SCULPT

2" APPX.

2¼" APPX.

CONFIDENTIAL        Attorney's Eyes Only                    BRYANT 01975


DEPOSITION EXHIBIT

EXHIBIT ___7___
PAGE ___65___                    EX 1327-0001



SCULPTURAL BODY DRAWING; 9/19/99
TO BE USED FOR ALL DOLLS

JOINTED HERE, @ SHOULDERS

JOINTED @ HIPS

SCULPTED FINGERNAILS

TOTAL DOLL HEIGHT W/ HEAD:
11½" – 12"

9"

ACTUAL SIZE

BASIC SHOE SCULPT.

2 mm

EXHIBIT 7

EX 1327-0002

# EXHIBIT 8



2½" APPX

LUPE

ACTUAL SIZE

-LUPE-

SCULPTURAL
DRAWINGS;
HEADS

9/19/99



2½" APPX

ACTUAL SIZE

ZOE

-ZOE-



CONFIDENTIAL        Attorney's Eyes Only        BRYANT 01976

EXHIBIT   8
PAGE   67        EX 1328-0001



SCULPTURAL
DRAWINGS;
HEADS

9/19/99

CONFIDENTIAL      Attorney's Eyes Only      BRYANT 01970

EXHIBIT 8
PAGE 68

EX 1328-0002

# EXHIBIT 9

| From: | Isaac Larian |
|---|---|
| To: | Victoria O'Connor; Dave Malacrida; Aileen Storer; Paula Treantafelles; Margo Chazen; Dianna Eisenberg |
| CC: | Abe Mirza; Julie Mote; Beth Cahill |
| BCC: | |
| Sent Date: | 2002-03-12 12:17:42:953 |
| Received Date: | 2002-03-12 12:17:42:953 |
| Subject: | FW: Hi |
| Attachments: | |

Victoria, Dave: Who gave David Dees info and what he does for us to this Yahoo lady and why?

This Yahoo lady is giving us too much legal grief even though she does not mean it.

Please DO NOT send any information or reply to her e mails unless you have cleared it with me.

Julie/Beth/ Abe:                                     There must be no mention about Mattel or any of their properties, Carter , any MGA Bratz arts ,etc.


-----Original Message-----
From: Paula Treantafelles
Sent: Monday, March 11, 2002 5:55 PM
To: Isaac Larian; Abe Mirza; Beth Cahill
Subject: FW: Hi

-----Original Message-----
From: David Dees [mailto:davodees@hotmail.com]
Sent: Saturday, March 09, 2002 12:37 PM
To: bryant598@cs.com
Subject: Hi

Hi Carter,

I thought you would enjoy this letter i wrote to the Bratzworld club on Yahoo. It starts off with the club leader introducing it. Dees.

Hello!

I'm posting a wonderful letter from David Dees- the guy who does the awesome art we love to look at on the Bratz website and on posters and wherever Bratz girls are. I just want to post it to its own message so I can save that as a text file in the David Dees folder in files so you can read it anytime you like. We've



EXHIBIT
4507

CONFIDENTIAL - ATTORNEYS' EYES ONLY                          MGA 3801819

EXHIBIT   9
PAGE   69

4507 - 1

EX 4507-0001

always liked it that MGA communicates with the Bratz fans and
this takes it even further into VERY COOL land.

Make sure you also check out his portfolio for all the other stuff
he does- you've probably seen lots of it- he's extremely talented!

Okay enough from me- I'll post his letter right after this
:)
snowflakebebe

>Hello my name is Christian (I'm a girl!) and I do a fan list for the Bratz
>dolls and I was wondering if you could post and maybe share some of your
>other Bratz art that we may not have seen (we have lots of it in the files
>section) - or talk about your experience working on the illustrations of
>the
>Bratz. I am in contact with MGA and they have endorsed this "fan club" so
>if
>I need to get permission from them for anything I can ask- but I hope
>you'll
>share some art if you can. We have the link to your portfolio up in our
>files and bookmark section. Come visit sometime :) We love your art. Its
>a
>big part of the fun of the Bratz :)

Hi Christian,

Thanks so much for your letter and interest in the world of Bratz. I talked
to the art director at MGA , and she said that of course i am not the one to
be releasing any Bratz art ahead of time, so i will check and see if i can
post some of that older airbrush art for you. She also said MGA is in the
process of building a new website that is going to be packed to the hilt
with cool art of all the new fashions, and believe me, they are wild and
colorful as i just finished about thirty new pieces of art that will amaze
you.

I work freelance as an illustrator and have my own studio at home where i
paint at my leisure, but if a job comes in you can be sure that it is
usually being rushed. My immediate live-in family consists of two furry
felines. A crosseyed siamese mix named Buddy, and a female red striped tabby
named Goose.

I am swamped right now with colorizing lots of the new wacky funk styles,
and there are new hats and boas and tops that I got a kick out of. However I
can't take credit for creating the Bratz Dolls, or even the first Bratz
illustrations, for that honor would go to a fellow named Carter Bryant*, who
is truly a genius of fashion and the soul and only person who first drew
those great pouty lips and that extreme look that only our heros share. I
have never met him personally, but on the phone and emails he is certainly
the nicest sincere fellow ever, and very optimistic and complementary about
my art in his approach. It felt good early on when he would tell me i was
doing a good job bringing them to life. Can you tell I am a fan of his as

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3801820

EXHIBIT    9
PAGE    70

4507-2

EX 4507-0002

well?

Let me tell you about MGA. It is located in North Hills, California, at the west end of the beautiful San Fernando Valley, where i lived for many years, but now i live in Salt Lake, where the Olympics just were. Anyway, when you walk into the big, high ceiling lobby there is a real pretty receptionist with reddish brown hair (and that sometimes wears leopard prints), and if you look to the left you will see the stairs wind up to the second floor where all the cool stuff happens. And as you start up them there is, to the right, a little rock garden with plants, and it always has some of the new toys, like robot dogs, insectobots, or baby dolls sitting in there as if they are playing. As you get to the top of the stairs, that is if you can get permission to come up to this top secret place, the first thing you notice to your right is two big doors opening into a spacious office with a fancy glass desk, usually covered with toys, and sitting there working busily away is a great fellow named Isaac, who is the owner, president, and creator of most of the MGA toys. He always seems to leave his doors open and when i stop by to pick up a job i glance in and wave if he happens to look up.

The first big area past there has lots of low partitioned cubicles with all the business people who keep the finances working, but then the next rows are the package and advertising designers, which is sort of the front line of the creativity, and as you continue up the steps there is a silly sign hanging that says Design Farm, and that is the beginning of the art studios. It always freaks me out to go in there because it is a busy beehive of toy ideas and designers flying around like a tornado. It is a big open room with black walls and bright lights shining down spotlighting the work areas, and colorful toys and wacky new ideas and drawings lining the walls. The middle area has a long table work table covered with new toy packages being assembled for the first time, with most of the mocked up packages being created by cutting and pasting by hand, and only after the idea is shown through many approval lines is it mass produced. Sometimes a whole new line of Bratz accessories will be displayed, and i am amazed at the details of the clothes at such a small scale. When i pop in I am usually asked for my opinion about the new toys, such as if i think they will be popular or how to promote them, and i am always happy to put in my two cents. There are about a dozen or so design areas with computers that surround the work table, and at each station is someone with more talent than you can imagine all corraled into one group. That is why they come up with such great stuff. There is also a window on one wall and whenever i look out of it, it is stunning to look down into the warehouse which quite a large expanse of big boxes and lifts carrying them around. I guess that is the tour.

About working on the illustrations, well they are all colored on the computer. The best thing i can say is that i finally figured out a great way to paint their hair that flows great, and looks sort of real. But that is in the last group of art i just finished and it will available to you soon i suppose. If you have any suggestions about any of the art I always welcome your viewpoint.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

MGA 3801821

EXHIBIT 9
PAGE 71

4507 -3
EX 4507-0003

Anyway that is about it. I will send in anything that i am allowed to
release to you guys, or check my website for new art that i am putting up
all the time. Feel free to download any art that you like off my site. See
ya. david.

(* You can do a google.com search under Carter Bryant and you
can see some things he has done.

-snowflakebebe)

WOW what a cool letter... i have to say again that everyone so far involved
with the Bratz company is so cool, and responds personally and actually
takes some time.... as for Carter Bryant i searched and searched and came up
with nothing. so if any one find his website, can you post the URL.. ;) many
thanks...

Pink Glitter
>>Vayne<<
xxx

---

Get your FREE download of MSN Explorer at http://explorer.msn.com/intl.asp.

CONFIDENTIAL – ATTORNEYS' EYES ONLY                    MGA 3801822

EXHIBIT __9__
PAGE __12__

4507-4

EX 4507-0004

# EXHIBIT 10

| From: | Isaac Larian |
| To: | Dee Dee Valencia |
| CC: | |
| BCC: | |
| Sent Date: | 2003-02-06 20:05:14:687 |
| Received Date: | 2003-02-06 20:05:14:687 |
| Subject: | RE: Bratz |
| Attachments: | |

Good ideas.

Lets share with the team after NY and execute.

-----Original Message-----
**From:** Dee Dee Valencia
**Sent:** Thursday, February 06, 2003 11:59 AM
**To:** Isaac Larian
**Subject:** RE: Bratz

Okay ... I am jotting down my first thought .... I'll think more. Had experience in past lives in collectible market....

Limited Edition Collectible # of pcs low low low - build for the future

SELLING - DISTRIBUTION
-Go for 2 partners; 1 TV (QVC) and other Hallmark sold in Collectibles Section (next would be ornaments with Hallmark)
-Offer the first 1,000 to our fan club members - 1st come first serve - build frenzy then you can advertise that the remaining # is going to be on QVC and in Hallmark only for a limited time.
-This strategy would also help, 'literally presell' the program to QVC & Hallmark. Built in demand, advertised, slam dunk!
-After market sales - will boom - ebay.... keep track of it .. powerful ...

FEATURES:
-Signed by....???? - I know we want to keep Carter under wraps ...

-Custom / Original art of girls as the certificate of authenticity - framed for room and showing off to friends

-The box is JUST AS IMPORTANT as THE PRODUCT in the collectible market. So packaging needs to be authentic and out of this world.

Product Ideas:
-Porcelain real hair, real fabrics as accents - high high detail
-Tie to well known hip fashion designer that designed clothing for extra equity
-Set of 4 dolls 6"-8"high (size smaller than mass market dolls - these are display only pcs)
-They need to be sold in a showcase cool environment - funky - this is part of the display in their room
-Something exclusive for the girl herself ... exclusive fashion bag is my first thought.

I'll think more.... we should absolutely utilize the Bratz Fan Club more. They 'expect' to be the first ones to know what is up and coming for Bratz. This is a built in base for exclusive or allocated or presold sell of goods.

DD



EXHIBIT 10
PAGE 13

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3801558
EX 4942-0001

-----Original Message-----
**From:** Isaac Larian
**Sent:** Wednesday, February 05, 2003 8:13 PM
**To:** Summer Wells; Paula Treantafelles; Dee Dee Valencia; Shawn Brower; Randi Kagan
**Subject:** Bratz

What do you think about the idea of developing a high end ,really cute, older, collectable plush to sell only in Specialty and gift? For dolls, may be we do a plastic head?

Let me know what do you think?

Isaac Larian
CEO
MGA ENTERTAINMENT
*A Consumer Entertainment Product Company*
16730 Schoenborn Street
North Hills, California, 91343-6122
Tel: 818-894-3150
Fax:818-894-1267
llarian@mgae.com
www.MGAE.COM
Meet the girls with Passion for Fashion
www.Bratzpack.com

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT __10__
PAGE __74__

MGA 3801559
EX 4942-0002

# EXHIBIT 11

Confidential - For Attorney's Eyes Only

# FORMER MATTEL EMPLOYEES - 04/20/06

| | A | B | C | D |
|---|---|---|---|---|
| 1 | ACTIVE EMPLOYEES | MGA POSITION | MGA DATES | MATTEL DATES |
| 2 | | | | |
| 3 | Abundis, Ricardo | SR. SALES ANALYST | 12/06/04-PRESENT | 07/00-11/04 |
| 4 | Bate, Ian | QUALITY ASSURANCE MANAGER | 7/31/2006-PRESENT | 7/2000-10/2000 |
| 5 | Bloodworth III, John E. | Product Manager, Games | 08/21/06-PRESENT | 06/01/06-08/06 |
| 6 | Bloodworth III, John E. | Product Manager, Games | 08/21/06-PRESENT | 03/1998-01/2000 |
| 7 | Bloomfield, Kevin | SR. DESIGNER | 11/25/02-PRESENT | 10/00-11/00 |
| 8 | Brawer, Ron | EVP MARKETING | 10/05/04-PRESENT | 1996-2004 |
| 9 | Brisbois, Janine (CANADA) | VP NAT'L ACCTS. | 10/04/05-PRESENT | 1/2001-9/2005 |
| 10 | Castilla, Jorge | MGR. SALES PLANNING | 04/03/06-PRESENT | 06/98-03/06 |
| 11 | Chang, Suzy | Sr. Development Designer | 08/28/06-Present | Summer 2000 |
| 12 | Cheng, Steve | SR. DESIGNER | 04/03/02-PRESENT | 09/99-06/01 |
| 13 | Cody Jr, Gerry | Sr. Designer - Boys Toys | 11/20/06-PRESENT | 11/99-4/00 |
| 14 | Cody Jr, Gerry | Sr. Designer - Boys Toys | 11/20/06-PRESENT | 06/04-01/05 |
| 15 | Contreras, Nick | VP CUSTOMER MKTG | 11/29/04-PRESENT | 1994-2004 |
| 16 | Cooney Jr., Daniel | VP National Account Manager | 05/15/06-PRESENT | 01/04-05/06 |
| 17 | Cooney Jr., Daniel | VP National Account Manager | 05/15/06-PRESENT | 10/96-09/01 |
| 18 | Domingo, Luisito H | DEV. DESIGNER | 07/07/03-PRESENT | 10/96-10/01 |
| 19 | Dominguez, Greg Paul | PROD. DESIGNER | 04/01/02-PRESENT | 11/98-07/00 |
| 20 | Feldman, Joe | DESIGN ENGINEER | 12/08/04-PRESENT | 7/93-2/04 |
| 21 | Forrest, Craig | Product Manager, Games | 5/15/06-PRESENT | 10/97-01/05 |
| 22 | Garcia, Mia | DEV. DESIGNER | 2/23/05-PRESENT | 2000-2004 |
| 23 | Garcia, Paula | VP GIRLS TOY PD | 04/17/00-PRESENT | 12/97-04/00 |
| 24 | Gonzalez, Eduardo | Sr. Director of Quality Assurance | 10/16/06-PRESENT | 4/1985-1/1997 |
| 25 | Gonzalez, Eduardo | QUALITY ASS. MGR. | 1/3/05-8/8/05 | 4/1985-1/1997 |
| 26 | Hall, Tracy | Sr. Director of Prod. Dev, CE/YE | 08/07/06 - PRESENT | 09/1987-04/1989 |
| 27 | Hansen, Melody | FACE PAINTER | 03/13/06-PRESENT | 04/94-01-06 |
| 28 | Hansen, Todd | PACKAGING ENG. | 5/2/05-PRESENT | 1994-1996 |
| 29 | Hatch, Jill | Sr. Director, National Sales | 09/18/06 - PRESENT | 04/04 - 09/02/2006 |
| 30 | Hatch, Jill | Sr. Director, National Sales | 09/18/06 - PRESENT | 06/96 - 01/03 |
| 31 | Hinh, Michael | MGR. CATEGORY ADV. | 6/27/05-PRESENT | 10/02-6/05 |
| 32 | Hsu, Janet | VP LIFESTYLES | 3/9/05-PRESENT | 8/2002-3/2005 |
| 33 | Koa, Alice | CUST. MKTG. MGR. | 2/21/05-PRESENT | 10/03-2/05 |
| 34 | Kaufman, Ken | ADVERTISING EXEC. | 01/03/05-PRESENT | 1995-2004 |
| 35 | Keller, Pamela E | VP Supply Chain & Operations | 09/25/06 - PRESENT | 10/95 - 01/99 |
| 36 | Keossian, Alejandro Gabriel | GR. DESIGNER | 08/11/03-PRESENT | 02/02-08/03 |
| 37 | Kim, Joyce | SR. PLAYSET DESIGN | 2/23/05-PRESENT | 9/98-9/04 |
| 38 | Kim, Young | SEAMSTRESS | 01/15/04-PRESENT | 09/98-06/02 |
| 39 | Kirst, Kristen | HAIR ROOTER | 03/31/03-PRESENT | 12/00-02/03 |
| 40 | Komatsu, Ellen | DEV. DESIGNER | 08/25/03-PRESENT | 10/98-03/02 |

EXHIBIT 11
PAGE 75



MGA 1134723

EX 1932-0001

FORMER MATTEL EMPLOYEES - 04/20/06

| | A | B | C | D |
|---|---|---|---|---|
| 41 | Larson, Jill | Sales Associate | starts 12/19/06 | 09/90-Present |
| 42 | Law, Chi Shing | DEV DESIGN MGR | 05/01/06-PRESENT | 08/00-08/02 |
| 43 | Leahy, Margaret | SR. SCULPTOR | TEMP TO PERM EFF 4/4/05 | 03/95-09/00 |
| 44 | Lumabao, Bo | PRD/MKT MANAGER | 2/14/05-PRESENT | 4/01-10/02 |
| 45 | Marks, Dorothy | SAMPLE MAKER | 07/26/05-PRESENT | 01/01/03-04/12/04 |
| 46 | Martin, Raymond John | PROD. MANAGER | 02/23/04-PRESENT | 08/97-02/03 |
| 47 | McBride, Susan | PROD. MANAGER | 06/03/02-PRESENT | 2000-2001 |
| 48 | Min, Aye Aye | HAIR ROOTER | 03/20/2006-PRESENT | 07/1994-02/2006 |
| 49 | Nigoghossian, Christine | SR. DOLL DESIGNER | 04/25/05-PRESENT | 1991-2002 |
| 50 | Palijo, Amelia Ivy Arafiles | SR. SCULPTURIST | 02/23/04-PRESENT | 08/98-01/04 |
| 51 | Parkinson, Ana Mancia | DEV. DESIGNER | 05/10/04-PRESENT | 1990-2004 |
| 52 | Paulino, Denise | SAMPLE MAKER | 01/18/05-PRESENT | 05/1991-3/2001 |
| 53 | Pestonji, Danny | DESIGNER | 06/01/04-PRESENT | 06/95-11/01 |
| 54 | Phoosopha, Poottipong | FACE PAINTER | 12/08/03-PRESENT | 03/97-10/01; 02/02-12/03 |
| 55 | Pickard, Michael | PACKAGING ENG. | 03/22/04-PRESENT | 10/92-02/02 |
| 56 | Ratleff, Leland | Senior HR Director | 12/04/06-PRESENT | 1985-12/1/06 |
| 57 | Ronquillo, Desiree Elisabeth | SR. DEV. DESIGNER | 05/03/04-PRESENT | 02/01-04/04 |
| 58 | Ruiz, Micaela | SAMPLE MAKER | 2/13/06-PRESENT | 1985-2/2006 |
| 59 | Sasic-Koetsier, Natasha | ILLUSTRATOR | 06/01/04-PRESENT | NOT APPLICABLE |
| 60 | Salazar, Maria Elena | SEAMSTRESS | 03/31/03-PRESENT | 1996-2001 |
| 61 | Salemnia, Shirin | RESEARCH MGR. | 02/17/03-PRESENT | 06/00-01/03 |
| 62 | Scott, Harvey | SAMPLE MAKER | 08/01/05-PRESENT | 1992-07/2005 |
| 63 | Su, Jier | DIR. PROJECT PLANNING | 8/15/05-PRESENT | 11/1998-07/2005 |
| 64 | Smith, Steffen J. | SR. PKG. ENG. | 10/13/03-PRESENT | 01/99-12/00 |
| 65 | Soai, Dennis | DEV. DESIGNER | 03/04/02-PRESENT | 06/95-02/00 |
| 66 | Thompson, Marla | SOURCING MANAGER | 04/04/04-PRESENT | 07/91-03/05 |
| 67 | Tran, Chau Ngoc | SAMPLE MAKER | 05/10/04-PRESENT | 08/88-10/03 |
| 68 | Upshaw, Gail | SEAMSTRESS | 5/23/05-PRESENT | 9/83-3/01 |
| 69 | Wang, Chang-Chin | ASSOC. FACE DES. | 05/03/04-PRESENT | 11/98-04/04 |
| 70 | Ward, Lance | STRUCTURAL ENG. | 08/02/04-PRESENT | 12/99-10/03 |
| 71 | Whittaker, Dawn | DESIGN DEV. MGR. | 12/06/04-PRESENT | 1998-2004 |
| 72 | Wong, Jenny | GR. DESIGNER | 09/09/02-PRESENT | 11/99-02/02 |
| 73 | | | | |
| 74 | | | | |
| 75 | 1 Confidentiality/Inventions Agreement | | | |
| 76 | 2 Proprietary Information Agreement | | | |
| 77 | 3 Employment Agreement | | | |
| 78 | | | | |
| 79 | | | | |
| 80 | NON-ACTIVE EMPLOYEES | MGA POSITION | MGA DATES | MATTEL DATES |

Confidential - For Attorney's Eyes Only

EXHIBIT ||
PAGE 76

MGA 1134724

EX 1932-0002

Confidential - For Attorney's Eyes Only

## FORMER MATTEL EMPLOYEES - 04/20/06

| | A | B | C | D |
|---|---|---|---|---|
| 81 | | | | |
| 82 | Aryapour, Daryoush | CREATIVE SER. DIR. | 10/25/99-04/14/00 | 03/96-06/99 |
| 83 | Blaser, Janet | DEV. DESIGNER | 06/14/04-09/10/04 | 04/95-04/04 |
| 84 | Bower Violette, Mari Joanne | PROD. MANAGER | 10/13/03-PRESENT | 07/99-03/03 |
| 85 | Brown, Lilia | GR. DESIGNER | 03/31/03-05/05/05 | UNKNOWN |
| 86 | Burlando, Gabriella | PROD. MANAGER | 03/5/02-06/27/06 | 11/97-10/01 |
| 87 | Chonavel, Fabienne | MARKETING MGR. | 04/10/92-08/23/02 | 8/95-2/96 |
| 88 | Dailey, Christine | VP PROD. DEV. | 05/14/01-11/22/02 | 05/84-01/86 |
| 89 | Gillmour, Kami | VP MARKETING | 05/24/99-07/14/00 | 05/90-04/99 |
| 90 | Hardouin, Christopher | PROJECT MGR. | 06/04/01-07/15/04 | 7/04-PRESENT |
| 91 | Hitch, Martin | VP INT'L SALES | 01/04/01-06/04/02 | 04/90-01/98 |
| 92 | Huntley, James | VP MARKETING | 5/23/05-PRESENT | 4/01-5/05 |
| 93 | Kagan, Randi | MARKETING DIR. | 09/23/02-07/22/03 | 11/97-04/98 |
| 94 | Koch, Andreas | PRODUCT MGR. | 10/18/99-01/11/01 | 04/98-12/98 |
| 95 | Mayer, Lyn Carol | FABRIC ARTIST | 07/21/03-05/05/05 | 02/98-04/01 |
| 96 | Mils, Frank | MANAGER OF QA | 03/20/06-07/07/06 | 08/97-07/01 |
| 97 | Nguyen, Xuanlan T | PATTERN MAKER | 05/19/03-01/03/05 | 08/92-10/99 |
| 98 | O'Brien, Gary Thomas | FIELD SALES DIR. | 05/10/04-07/22/04 | 1998-2002 |
| 99 | Otero, Jose | WEB DESIGNER | 08/11/03-2/1/06 | 2003? |
| 100 | Owen, Dan | SR. PAYSET MGR. | 08/23/04-12/13/05 | 01/99-08/04 |
| 101 | Parasole, Nicolletta | GR. DESIGNER | 01/05/04-6/27/04 | UNKNOWN |
| 102 | Rambeau, Roger | VP OPERATIONS | 05/13/96-04/03/98 | 10/72-10/85 |
| 103 | Reed, Wendy | SOFT GOODS SPEC. | 11/06/00-01/12/01 | 07/97-10/00 |
| 104 | Reyes, Scot Anthony | SM DOLL DESIGNER | 05/23/04-3/11/05 | 05/01-11/02; 01/04 |
| 105 | Ross, Lon | MARKETING DIR. | 11/13/00-08/03/01 | 1996-2000 |
| 106 | Schwartz, Dena | SR. PROD. MGR. | 05/21/01-04/08/02 | 1984-1988 |
| 107 | Shaver, Brandi | GR. DESIGNER | 05/03/04-06/30/06 | NOT APPLICABLE |
| 108 | Stinnett, Holly | SR. BRAND MGR. | 03/21/03-1/12/05 | 05/96-10/02 |
| 109 | Tawil, Lisa | LICENSING COORD. | 04/08/02-07/18/03 | 10/98-2/01 |
| 110 | Terry, Gord | DIR. OF SALES | 10/01/01-06/06/02 | 06/94-03/97 |
| 111 | Ward, Mercedeh | SR. PROD. DESIGNER | 10/00-1/01; 3/7/05-8/5/05 | 1985-2000 |
| 112 | Whitaker, Joseph | CONSULTANT | 11/05/96-03/??/97 | 88-'89; '82-'83; '64-'78 |
| 113 | Williams, Patrick | SVP SALES | 01/07/01-05/29/01 | 5/96-11/98 |
| 114 | Wong, Tong | DEV. DESIGNER | 03/10/03-05/16/03 | 1999-2003 |
| 115 | Wright, Cherrise | SOFT GOODS MGR. | 03/03/04-8/24/05 | 11/94-05/99 |
| 116 | Zbojniewicz, Dave* | DIR BUS PLANNING | 04/04-09/04 | 09/04-PRESENT |
| 117 | | | | |
| 118 | * Independent Contractor | | | |
| 119 | | | | |
| 120 | | | | |

EXHIBIT 11   PAGE 77

MGA 113425

EX 1932-0003

Confidential - For Attorney's Eyes Only

FORMER MATTEL EMPLOYEES - 04/20/06

| | A | B | C | D |
|---|---|---|---|---|
| 121 | MGA TEMPS | MGA POSITION | MGA DATES | MATTEL DATES |
| 122 | | | | |
| 123 | Bryant, Carter | PRODUCT DESIGNER | ????-PRESENT | DON'T ASK |
| 124 | Feicht, Steve | ARTIST/JR. DESIGNER | 07/18/02-PRESENT | 01/97-01/02 |
| 125 | Ho, Jeff | SR. PROD. ARTIST | ????-10/04 | 1998-???? |
| 126 | Rhee, Anna | DOLL FACE DESIGN | ????-PRESENT | DON'T ASK |
| 127 | | | | |
| 128 | ** Signed Copyright Assignment | | | |

EXHIBIT 11
PAGE 78

MGA 1134726

EX 1932-0004

Confidential - For Attorney's Eyes Only

# FORMER MATTEL EMPLOYEES - 04/20/06

| | E | F | G |
|---|---|---|---|
| | | NDA | COMMENTS |
| 1 | MATTEL POSITION | | |
| 2 | | | |
| 3 | SR. SALES ANALYST | YES | |
| 4 | SENIOR PRODUCT ENGINEER | YES | |
| 5 | Production/QA (Contract Position) | YES | 1 & 2 |
| 6 | QA Technical Lead | YES | 1 & 2 |
| 7 | LEAD ILLUSTRATOR | YES | |
| 8 | SVP MARKETING | YES | 3 |
| 9 | SALES DIRECTOR | YES | CANADA |
| 10 | Int'l Planning Manager | YES | |
| 11 | Design Internship at Pleasant Co., Mattel Inc. | YES | 1 & 2 |
| 12 | TOY DESIGNER | YES | |
| 13 | Intern, Design | YES | 1 & 2 |
| 14 | Temporary Designer | YES | 1 & 2 |
| 15 | DIR. CUSTOMER MKTG | YES | |
| 16 | Director of Sales - TRU | YES | |
| 17 | Marketing Sr. Brand Manager | YES | |
| 18 | SR. DESIGNER | YES | |
| 19 | FREELANCE DESIGNER | NO | 1 & 2 |
| 20 | STAFF DESIGNER | YES | |
| 21 | Producer/QA Lead | YES | 1 & 2 |
| 22 | SR. DESIGNER | YES | |
| 23 | PRODUCT PLANNER | NO | 1 & 3 |
| 24 | PROD. INTEGRITY ENG. | YES | 1 & 2 |
| 25 | PROD. INTEGRITY ENG. | YES | |
| 26 | Project Designer | YES | 2 |
| 27 | FACE DESIGNER | YES | |
| 28 | PACKAGING ENG. | YES | |
| 29 | Sr. Account Executive | YES | 1 & 2 |
| 30 | Sr. Account Executive | YES | 1 & 2 |
| 31 | MGR. CATEGORY ADV. | YES | |
| 32 | DIR. SR. ACCT. MGR. | YES | |
| 33 | BUS ANALYST-TARGET | YES | |
| 34 | VP CREATIVE ADV. | YES | |
| 35 | Manager - Global Sourcing | YES | |
| 36 | FREELANCE DESIGNER | YES | |
| 37 | PROJECT DESIGNER | YES | |
| 38 | PATTERN MAKER | YES | |
| 39 | DOLL HAIR DESIGNER | YES | |
| 40 | DESIGNER | NO | 1 & 2 |

EXHIBIT 11
PAGE 79

MGA 1134727

EX 1932-0005

Confidential - For Attorney's Eyes Only

## FORMER MATTEL EMPLOYEES - 04/20/06

| | E | F | G |
|---|---|---|---|
| 41 | Retail Service Rep | YES | 1 & 2 upon orientation |
| 42 | STAFF ENIGINEER | YES | |
| 43 | MANAGER | YES | |
| 44 | ACCOUNT EXECUTIVE | YES | |
| 45 | SAMPLE MAKER | YES | |
| 46 | SR. PROJECT ENG. | YES | |
| 47 | SENIOR PRODUCER | NO | 1 & 2 |
| 48 | HAIR DESIGNER | YES | |
| 49 | FREELANCE DESIGNER | YES | |
| 50 | SR. SCULPUTOR | YES | |
| 51 | FREELANCE DESIGNER | YES | |
| 52 | SAMPLEMAKER | YES | |
| 53 | DESIGNER | YES | |
| 54 | FREELANCE DESIGNER | YES | |
| 55 | PACKAGING ENG. | YES | |
| 56 | HR Director - Boys Division | | Upon Orientation |
| 57 | SR. DEV. DESIGNER | YES | |
| 58 | LEAD SAMPLE MAKER | YES | |
| 59 | SEE BELOW * | YES | |
| 60 | PATTERN MAKER | YES | |
| 61 | MKT/RES ANALYST | YES | |
| 62 | SAMPLE MAKER | YES | |
| 63 | SR. PRODUCT PLANNER | YES | |
| 64 | PACKAGING ENG. | YES | |
| 65 | PROJECT DESIGNER | NO | 1 & 2 |
| 66 | PROJ ADM SPECIALIST | YES | |
| 67 | DESIGNER'S ASST. | YES | |
| 68 | DESIGNER ASSOC. | YES | |
| 69 | FACE DESIGNER | YES | |
| 70 | SR. PROJECT ENG. | YES | |
| 71 | PROJECT DESIGNER | YES | 1 & 2 |
| 72 | GR. DESIGNER | NO | 1 & 2 |
| 73 | | | |
| 74 | | | |
| 75 | | | |
| 76 | | | |
| 77 | | | |
| 78 | | | |
| 79 | | | |
| 80 | MATTEL POSITION | NDA | VOLUNTARY |

EXHIBIT 11
PAGE 90

MGA 1134728

EX 1932-0006

Confidential - For Attorney's Eyes Only

EXHIBIT 11
PAGE 131

MGA 1134729

EX 1932-0007

## FORMER MATTEL EMPLOYEES - 04/20/06

| | E | F | G |
|---|---|---|---|
| 81 | | | |
| 82 | SR. ART DIRECTOR | N/A | YES |
| 83 | DEV. DESIGNER | YES | YES |
| 84 | SR. ENGINEER | YES | YES |
| 85 | FREELANCE | YES | NO |
| 86 | ASSO. PROD. MGR. | NO | 1 & 2 |
| 87 | PRODUCT MGR. | N/A | NO |
| 88 | MARKETING MGR. | N/A | NO |
| 89 | MARKETING DIR. | N/A | YES |
| 90 | UNKNOWN | NO | 1 & 2 |
| 91 | BUS. DEV. MGR. | N/A | YES |
| 92 | DIRECTOR MARKETING | YES | |
| 93 | PRODUCT MGR. | N/A | NO |
| 94 | ASSOC. PRODUCT MGR. | N/A | YES |
| 95 | FREELANCE DESIGNER | YES | NO |
| 96 | SENIOR ENGINEER | YES | |
| 97 | PATTERN MAKER | YES | NO |
| 98 | ACCT. EXECUTIVE | YES | NO |
| 99 | PROD. ARTIST | YES | |
| 100 | ASSOC. ART DIRECTOR | YES | |
| 101 | FREELANCE | YES | NO |
| 102 | VP OF MANUFACTURING | N/A | YES |
| 103 | ASSOC. PRODUCT DES. | N/A | YES |
| 104 | SR. DESIGNER | YES | YES |
| 105 | SR. BRAND MGR. | N/A | YES |
| 106 | SR. SEWING ENGINEER | N/A | YES |
| 107 | SEE BELOW ** | YES | |
| 108 | SR. PRODUCT COORD. | YES | NO |
| 109 | MARKETING/BUS. DEV. | N/A | NO |
| 110 | SR. ACCT. MANAGER | N/A | NO |
| 111 | PROJECT DESIGNER | YES | MUTUAL |
| 112 | SVP, MKTG. & PD | N/A | TEMPORARY |
| 113 | NAT'L SALES DIRECTOR | N/A | MUTUAL |
| 114 | PROJECT DESIGNER | YES | YES |
| 115 | SR. MANAGER | NO | YES |
| 116 | DIR. OF FINANCE/BOYS | YES | YES |
| 117 | | | |
| 118 | | | |
| 119 | | | |
| 120 | | | |

Confidential - For Attorney's Eyes Only

## FORMER MATTEL EMPLOYEES - 04/20/06

| | E | F | G |
|---|---|---|---|
| 121 | MATTEL POSITION | NDA | |
| 122 | | | |
| 123 | DON'T ASK | NO | |
| 124 | ART DIRECTOR | ICA | |
| 125 | FREELANCE | N/A | |
| 126 | DON'T ASK | ** | |
| 127 | | | |
| 128 | | | |

EXHIBIT 11
PAGE 82

MGA 1134730

EX 1932-0008

Jiyoung Kym, Esq.
Law Office of Jiyoung Kym
3700 Wilshire Blvd., Suite 260
Los Angeles, 90010

jkym@yahoo.com

Tel: 213-386-0800
Fax: 213-389-0650

EXHIBIT  11
PAGE  83

# EXHIBIT 12

Claimant
Isaac Larian
First
Exhibits IL 1 and ILA-D
/ 4 .05.04

# IN THE HIGH COURT OF JUSTICE

# CHANCERY DIVISION

# INTELLECTUAL PROPERTY

# B E T W E E N :

## MGA ENTERTAINMENT, INC.

Claimant

- and -

## THOMAS CHRISTOPHER JOSEPH METSON

Defendant

---

## AFFIDAVIT OF ISAAC LARIAN

---

I, **ISAAC LARIAN,** of 16730 Schoenborn Street, North Hills, California, CA 91343, USA

MAKE OATH and say as follows:

(53 pgs)

Exhibit no. 947
Date: 10/9/07
Woodman   P. Pyburn

Confidential - Attorney's Eyes Only

EXHIBIT 12
PAGE 84

MGA 0868039

8.      I established the Claimant and was the inspiration behind the BRATZ dolls.  I have been
        the main driving force behind the success of the Claimant.

Confidential - Attorney's Eyes Only



EXHIBIT  12
PAGE  85

MGA 0868040

211.    In the circumstances, I respectfully request that this Honourable Court should grant the injunction and disclosure order sought by the Claimant in this action.


Sworn at   *14730 schoenBORN ST.*        )  ~~David Newcomb~~
          *NORTh HiLLs, .CA. 91343*      )
                                         )

          *MOn 14, 2004*


          Before me        *Joseph David Newcomb*


                    JOSEPH DAVID NEWCOMB
                    · Commission # 1466241
                    Notary Public - California
                    Los Angeles County
                    My Comm. Expires Jan 27, 2008


                                                    346

                                        EXHIBIT   12
                                        PAGE      86

Confidential - Attorney's Eyes Only

MGA 0868090

# EXHIBIT 13

From:           Isaac Larian (President / CEO)
To:             Isaac Larian (President / CEO)
CC:
BCC:
Sent Date:      2003-07-14 17:52:29.375
Received Date:  2003-07-14 17:52:29.437
Subject:        Fw: Fact-checking
Attachments:

Isaac Larian
CEO
MGA Entertainment Inc.
A Consumer Entertainment Product Company
16730 Schoenborn St
North Hills, Ca. 91343-6122
Tel : 818-894-3150
Fax : 818-894-1267

----Original Message----
From: Chris Palmeri <chris_palmeri@businessweek.com>
To: Larianl1@mgae.com <Larianl1@mgae.com>
Sent: Mon Jul 14 18:01:48 2003
Subject: Fact-checking

Isaac,

I have a Mattel story running this week that features Bratz prominently.
I quote you as saying: Like they say in business school, no risk, no
reward. I describe you as the chief executive of privately-held MGA
Entertainment, Inc. of North Hills, Calif. We say that through May of
this year, Bratz had doll sales in the U.S. of $22 million vs. $27
million for traditional Barbie and $4 million for My Scene. We say that,
overall, Bratz will do about $500 million in sales this year, vs. $1.5
billion for Barbie. We describe you as a 49 year old Iranian immigrant,
trained as a civil engineer, who modeled Bratz after your own children
who wear midriff-bearing shirts, low-rise jeans and baseball caps.

Is all of that accurate? Please let me know asap. And thanks for your
help.

213 480-5225

Exhibit no. 4941
Date: 3/26/08
Larian, I. P. Pybum

CONFIDENTIAL

MGA 3805091

EXHIBIT 13
PAGE 87

EX 4941-0001

# EXHIBIT 14

Page 1 of 3

**Bonnie Blume**

From:     Isaac Larian (Do Not Use)
Sent:     Monday, June 30, 2003 2:24 PM
To:       Isaac Larian (Do Not Use); Bonnie Blume
Subject:  FW: Interview with Isaac

BELOW

-----Original Message-----
From: Sam Phillips [mailto:samphillips@dial.pipex.com]
Sent: Friday, June 27, 2003 1:02 AM
To: dmalacrida@mgae.com
Subject: Interview with Isaac

Dear Dave

Here's an idea of things I'd like to discuss with Isaac for License Europe magazine:

The history of MGA Entertainmnet and the corporate culture (private/public; core business etc)

MGA IS A PRIVATE COMPANY ESTALBLISHED IN 1979
Isaac's background - how he became involved in the toy business etc

CAME TO THE USA AT 17 WITH $750 IN MY POCKET, HAVE A CIVIL ENGINEERING DEGREE, STARTED THE COMPANY SELLING GIFT ON MAIL ORDER AND THEN CONSUMER ELECTRONICS. ESTABLISHED TOYS ( MGA) IN 1987 WITH NINTENDO.
(Dave if you have anything you could send me on these topics in advance I'd be very grateful - I have looked online but in vain!)

How did Bratz evolve?

THEY EVLVED AS A CHLANGE BY A WALMART BUYER TO DESIGN AND BRING A PRODUCT THAT WILL BEAT BARBIE.
At what point did you know it would be a global hit?

RIGHT FROM THE BEGINNING WHEN WE DID FOCUS GROUP STUDIES.
Why do you think it hit the spot so successfully?

BECAUSE IT GIVES LITTLE GIRLS WHAT THEY ARE LOOKING FOR: REALISIM ( 10.5" AND NOT 11.5), FASHIONABLE , A LIFE STYLE STATEMNET, WHAT THEY WEAR NOW.
Why was it the right time?

GIRLS AGES OF 7-11 HAVE BEEN LOOKING FOR A LONG TIME FOR A DOLL TO REPLACE THE "BABISH" BARBIE . NOBODY GAVE THEM WHAT THEY ENVISIONED TILL BRATZ CAME TO THE MARKET.
What do you think about it being so popular internationally - Spain, Scandinavia, etc?

BRATZ ARE THE NO 1 FASHION DOLL IN SPAIN, UK, FRANCE, SCANDINIVA, ITALY,

6/30/2003
Confidential - Attorney's Eyes Only

Exhibit no. 630
Date: 9/30/07
Nolacrida  B. Pyburn

EXHIBIT 14
PAGE 88

MGA 0860577

630.1

EX 630-0001

ETC.

IN SPAIN, BARTZ NOW HAVE A MUCH BIGGER MARKET SHARE THAN BARBIE.

BUT NOT ONLY DOLLS ARE DOING GREAT. THANKS TO GREAT LICENSING PARTNERS LIKE KIDS ENTERTAINMENT IN SCANDINVIA AND TLC IN THE UK, BRATZ LICENSED PRODUCTS ARE SOME OF HOTTEST SOUGHT AFTER PRODUCTS OUT THERE.

I'd like to know more about Isaac's insight into the girls' marekt and how this translated into the Bratz phenomenon.

How has the Bratz phenomenon affected your company and how will it impact the company and toy business long term?
MGA WAS GROWING 30-40% PER YEAR PRIOR TO BRATZ. THIS GROWTH WAS FULED BY PRODUCT INNOVATION. WITH BRATZ THE GROWTH HAS BEEN MORE THAN 200-300%. THE  TOY BUSINESS AS A WHOLE DOES NOT GROW MORE THAN 2% PER YEAR. SO , OUR GROWTH IS COMING AT THE EXPENSE OF OTHER TOY COMPANIES LIKE MATTEL.

What's your strategy for the growth of Bratz globally?

BY COUNTIBNUING PRODUCTION INOVATION, MAINTAINING QUALITY AND AGGRESSIVE MARKETING.
How will MGA manage its success?

WITH SOURNDING OURSELVES WITH PASSIONABLE PEOPLE.

Had you been a licensor before?

NO. THIS IS THE FIRST TIME. BUT WE HAVE BEEN A LICENSEE MANY TIMES.
Was Bratz part of a conscious decision to become one?
YES.

What is your view of the licensing business as a whole and how it serves kids?

IT IS GREAT. THE KIDS  TODAY ARE BRAND CONSIOUSE AND IF YOU HAVE A PROPERTY LIKE BRATZ THEY WILL BUY THE GOODS AS LONG AS THEY ARE GETTING THE QUALITY THEY HAVE COME TO EXPECT FROM THE BRAND.
Where do you think the greatest innovation is in licensing (and toys) at the moment?
IN NEW PROPERTIES LIKE BRATZ AS WELL AS RETRO, EVERGREEN'S LIKE CARE BEAR, TMNT. MARVEL DID A GREAT JOB WITH SPIDERMAN AND I HOPE THEY COUNTINUE WITH THAT.

Do you believe in 'brand building'?'

ABSOULTELY. WE ARE TOUGH ON PRODUCT APPROVAL AND WE DO THIS TO BUILD THE BRATZ BRAND. WE HAVE LAUNCHED 3 NEW BRNADS AT THE LICENSING SHOW ( SP, BOYZ, L'LL BRATZ) AND WE HAVE MORE ON THE WAY.

I'd like to discuss the toy licensing arena in the light of Bratz doing the unthinkable (rivalling Barbie) - such as the copycat ideas coming up, how it changes retailers' outlook etc

6/30/2003
Confidential - Attorney's Eyes Only

MGA 0860578

EXHIBIT 14
PAGE 89

630.2

EX 630-0002

IT IS UNFORTUNATE THAT BIG TOY COMPANIES WITH UNLIMITED RESOURCES
RESORT TO IMMITATION RATHER THAN PRODUCT INNOVATION. BUT, WE BELIEVE
THAT CONSUMERS ARE SMART AND WILL WANT TO ORIGINAL BRAND.

There's a stream of consciousness from me - I know that we'll get diverted onto other interesting topics.
Ideally, if we could have an hour - just in case we need that long.  Monday, Tues, Weds next week still
good for me if that suits Isaac.
I'm sorry we didnt' meet in New York!

Look forward very much to hearing from you - thanks for your help
Best wishes
Sam

+ 4 (0)1672 871274
www.licenseeurope.com

Confidential - Attorney's Eyes Only

MGA 0860579

EXHIBIT **14**
PAGE **90**

*630.3*
EX 630-0003

# EXHIBIT 15

Immigrant's Creative Company Shakes Up Toy Industry

By JEFF WEISS; Contributing Reporter

1,098 words

29 March 2004

San Fernando Valley Business Journal

English

2004 San Fernando Valley Business Journal. All rights reserved.

EXHIBIT 15
PAGE 91

M 0101133

EX 12058-0001

"My oldest son, 17-year-old Jason, is very creative and a music writer. He has come up with some of our popular toys," Larian said. "He came up with Commandobot—a robot that was the first ever robot toy to work on voice recognition. It was a fantastic seller that was featured in Wired magazine. It was Jason's idea for Bratz."

"Yasmin, my 15-year-old daughter, is involved in the business as well. She's particularly interested in fashion and focus groups. One of the Bratz is named after her," Larian said. "My 10-year-old son, Cameron, is also the namesake for one of the boy Bratz. Cameron comes up with different product ideas. One of our best ideas was a winter wonderland Bratz line. We were on a family ski vacation and he said 'Dad, you should do a Bratz winter break.' So we did it and it sold wonderfully."

EXHIBIT __15__
PAGE __92__

M 0101134

EX 12058-0002

EXHIBIT 15
PAGE 93

M 0101135

EX 12058-0003

# EXHIBIT 16

Matter No. 15904-142

UNITED STATES PATENT APPLICATION

For

## DOLL WITH AESTHETIC CHANGEABLE FOOTGEAR

Inventor:   Isaac Larian

OPPENHEIMER

OPPENHEIMER WOLFF & DONNELLY LLP
2029 Century Park East, Suite 3800
Los Angeles, California 90067
(310) 788-5000
Fax (310) 788-5100

Attorney Matter No. 15904-142



LA: 333498 v01 02/13/2003

MGA 0825485

EXHIBIT 16
PAGE 94

EX 500-0001

# DOLL WITH AESTHETIC CHANGEABLE FOOTGEAR

## FIELD OF THE INVENTION

[0001]   This invention relates to dolls or toy figures with changeable footgear.

## BACKGROUND OF THE INVENTION

[0002]   It has previously been proposed to make dolls with shoes, boots or footgear
which may be changed, and patents which relate to such arrangements include the
following:

| [0003] | L. Schmetzer | U.S. Pat. No. 187,322 | Granted February 13, 1877 |
|---|---|---|---|
| | G. Doebrich | U.S. Pat. No. 831,330 | Granted September 18, 1906 |
| | F. Steiff | U.S. Pat. No. 898,018 | Granted September 8, 1908 |
| | P.H. Young | U.S. Pat. No. 2,175,789 | Granted October 10, 1939 |
| | G.H. Calverley | U.S. Pat. No. 2,662,335 | Granted December 15, 1953 |
| | S.F. Speers et al. | U.S. Pat. No. 3,475,042 | Granted October 28, 1969 |
| | H.J. Solson et al. | U.S. Pat. No. 3,624,960 | Granted December 7, 1971 |
| | Goldfarb et al. | U.S. Pat. No. 3,782,027 | Granted January 1, 1974 |
| | Port | U.S. Pat. No. 4,030,240 | Granted June 21, 1977 |
| | Lambert | U.S. Pat. No. 4,137,115 | Granted January 30, 1979 |
| | Rahmstorf | U.S. Pat. No. 4,185,412 | Granted January 29, 1980 |
| | Keiji | U.S. Pat. No. 4,643,691 | Granted February 17, 1987 |
| | Schiavo et al. | U.S. Pat. No. 4,729,751 | Granted March 8, 1988 |
| | Fogarty et al. | U.S. Pat. No. 1,186,673 | Granted February 16, 1993 |
| | Larson | U.S. Pat. No. 5,588,895 | Granted December 31, 1996 |
| | Kulchyski | U.S. Pat. No. 5,803,787 | Granted September 8, 1998 |
| | Toft | U.S. Pat. No. 6,179,685 | Granted January 30, 2001 |
| | Asmussen et al. | U.S. Pat. No. 6,203,396 | Granted March 20, 2001 |

[0004]   In reviewing these patents, the appearance of the resultant dolls or figures is
relatively "clunky" and not aesthetically pleasing.

## SUMMARY OF THE INVENTION

[0005]   In accordance with the present invention a more aesthetically pleasing and
elegant doll with changeable footgear, includes open work shoes with exposed portions
of the feet matching the color and texture of the exposed legs; and straps of the shoes
extend around the lower legs at the separation point where the removable foot/shoe
assemblies mate with the lower leg. With this configuration, the straps of the shoes
conceal the joint between the leg and the foot/shoe assembly, resulting in a more
realistic and elegant doll construction.

-1-



EXHIBIT 14
PAGE 95

MGA 0825486

EX 500-0002

[0006]   Additional features which may be included would involve the use of colored shoes and shoe straps which contrast sharply with the exposed skin areas of the foot; and snap-in mechanical arrangements for assembling the shoe/foot assemblies to the legs of the doll.

[0007]   Other objects, features and advantages will become apparent from a consideration of the following detailed description, and from the accompanying drawings.

BRIEF DESCRIPTION OF THE DRAWINGS

[0008]   Fig. 1 shows a doll provided with changeable shoes or footgear, illustrating the principles of the invention;

[0009]   Fig. 2 is an enlarged cross-sectional view taken along the plane indicated at 2-2 of Fig. 1; and

[0010]   Figs. 3 – 5 illustrate alternative shoes or foot/shoe assemblies shown mounted on one leg of the doll of Fig. 1.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

[0011]   While the specification describes particular embodiments of the present invention, those of ordinary skill can devise variations of the present invention without departing from the inventive concepts.

[0012]   Referring more particularly to the drawings, Fig. 1 shows a doll 12 formed of known materials employed for dolls, such as resilient plastic material. The doll 12 has lower legs 14, 16 and foot and shoe assemblies 18, 20 for mounting on the lower legs 14, 16, respectively.

[0013]   Fig. 2 is an enlarged cross-sectional view taken in the plane indicated at 2 – 2 in Fig. 1.

[0014]   In order to removably secure the shoe and foot assemblies 18, 20 to the legs 14, 16, the leg 14 has an enlarged protuberance 22 which snaps into a recess 24 in the assembly 18; and similarly, as shown in Fig. 2, the leg 16 has an enlarged protuberance 26 which locks into a recess 28 in the shoe and foot assembly 20.

2

EXHIBIT  16
PAGE   96

MGA 0825487

EX 500-0003

[0015] It is desirable that the separation points 30 and 32 be concealed or made less noticeable, to provide a more realistic appearance. This is accomplished by providing the shoes with the appearance of a strap 34 on assembly 18, and strap 36 on assembly 20. With the upper edge of the simulated strap enlargements 34, 36 coincident with the separation points 30, 32, the separation points are not conspicuous.

[0016] This effect is enhanced by the exposed skin areas 42 on assembly 18 and 44 on assembly 20. Further, the color and texture of the lower legs 14, 16 are substantially the same as the color and texture of the exposed feet areas 42 and 44.

[0017] Figs. 3, 4 and 5 illustrate typical alternative shoe styles which may be employed with the doll 12 of Fig. 1. Thus, a shoe/foot assembly may be selected of a color to match the color of a dress to be worn by the doll, or may be selected for special activities such as beach wear or formal occasions.

[0018] In Fig. 3 the leg 52, separation point 54, and upper strap 56 on the foot/shoe assembly 58, are shown. In addition, the skin area 60 of the foot/shoe assembly 58 is substantially the same as that of the leg 52.

[0019] Fig. 4 shows another alternative shoe/foot configuration 64 mounted on the leg 66 at separation point 68. As in the arrangements of Figs. 1 – 3, the simulated strap 70 conceals the separation point 68, and the skin area 72 of the foot matches that of the lower leg 66.

[0020] Fig. 5 is a similar showing of a shoe/foot assembly 76 mounted on the lower leg 78 of the doll at separation point 80. The simulated strap 82 serves to camouflage the separation point. In Fig. 5 the shoe is shown darkened to emphasize that different colored shoes may be employed, and that it is desirable that the shoe color contrast sharply with the skin color for more effective concealment or camouflaging of the separation point. For specific examples, the shoe colors may be blue, green, red, black or some combination thereof.

[0021] Return to Fig. 2 of the drawings, it may be noted that the protuberance 26 has a larger cross-sectional configuration than the mouth 27 of the opening 28. Accordingly, with both the doll legs 16, 18 and the foot/shoe assemblies 18 and 20 being of resilient

3.

EXHIBIT 10
PAGE 97

MGA 0825488

EX 500-0004

Matter No. 15904-142

material, the protuberance 26 may be snapped through the mouth 27 of the opening 28, and thereafter the shoe/foot assemblies are firmly held onto the legs 14, 16 of the doll.

[0022]  In the foregoing detailed description, specific embodiments of the invention have been described.  However, it is to be understood that various changes and modifications may be made without departing from the spirit and scope of the invention. Thus, by way of example and not of limitation instead of having the protuberance 26 on the leg 16 and the recess 28 on the shoe/foot assemblies, this configuration may be reversed, with the protuberance on the shoe/foot assembly, and the recess on the doll legs.  Further, instead of a single protuberance and mating recess, other snap-together arrangements may be employed, using more than one protuberance/recess, or a snap-in ring and mating ring shaped recess could be used.  It is also noted that, instead of using resilient plastic for the doll, stiffer plastic could be employed, and the foot/shoe assemblies may be attached using a simple concealed mechanical latch.  Accordingly, the invention is not limited to the exact embodiments described hereinabove and shown in the drawings.

4

EXHIBIT 16
PAGE 98

MGA 0825489

EX 500-0005

Matter No. 15904-142

WE CLAIM:

1.   A doll with changeable footgear comprising:

a torso having a body and legs, said legs having a predetermined skin color and texture;

a pair of foot/shoe assemblies, each including an open shoe with straps, with the shoe being open to expose at least part of the foot, the foot having substantially the same predetermined skin color and texture;

each said assembly being removable secured to one of said legs at the lower leg or ankle of said doll at a separation point;

each said assembly and lower legs having a snap-together joint with a protuberance on one part and a mating recess on the other part; and

a simulated strap forming part of said shoe extending around said assembly at said separation point.

2.   A doll as defined in claim 1 wherein the shoe portion of the foot/shoe assembly is colored to contrast sharply with the exposed skin areas of the foot.

3.   A doll with changeable footgear as defined in claim 1 further including a plurality of different sets of shoes of different styles for selectively mounting on said legs.

4.   A doll as defined in claim 1 wherein said doll and said foot/shoe assemblies are formed of resilient plastic material.

5.   A doll with changeable footgear comprising:

a torso having a body and legs, said legs having a predetermined color;

a pair of foot/shoe assemblies, each including an open shoe with straps, with the shoe being open to expose at least part of the foot, the foot having substantially the same predetermined color;

each said assembly being removable secured to one of said legs at the lower leg or ankle of said doll at a separation point;

5

EXHIBIT 16
PAGE 99

MGA 0825490

EX 500-0006

Matter No. 15904-142

each said assembly and lower legs having a joint for releasably securing the foot/shoe assemblies to the legs; and

a simulated strap forming part of said shoe extending around said assembly at said separation point.

6. A doll as defined in claim 5 wherein the shoe portion of the foot/shoe assembly is colored to contrast sharply with the exposed skin areas of the foot.

7. A doll with changeable footgear as defined in claim 5 further including a plurality of different sets of shoes of different styles for selectively mounting on said legs.

8. A doll as defined in claim 5 wherein said doll and said foot/shoe assemblies are formed of resilient plastic material.

9. A doll with changeable footgear comprising:

a torso having a body and legs, said legs having a predetermined color;

a pair of foot/shoe assemblies, each including an open shoe with straps, with the shoe being open to expose at least part of the foot, the foot having substantially the same predetermined color;

each said assembly being removable secured to one of said legs at the lower leg or ankle of said doll at a separation point;

each said assembly and lower legs having a snap-together joint; and

a simulated strap forming part of said shoe extending around said assembly at said separation point.

10. A doll as defined in claim 9 wherein the shoe portion of the foot/shoe assembly is colored to contrast sharply with the exposed skin areas of the foot.

11. A doll with changeable footgear as defined in claim 9 further including a plurality of different sets of shoes of different styles for selectively mounting on said legs.

12. A doll as defined in claim 9 wherein said doll and said foot/shoe assemblies are formed of resilient plastic material.

6

EXHIBIT 14
PAGE 100

MGA 0825491

EX 500-0007

Matter No. 15904-142

13. A doll with changeable footgear comprising:

a torso having a body and legs;

a pair of foot/shoe assemblies, each including an open shoe with straps, with the shoe being open to expose at least part of the foot;

each said assembly being removable secured to one of said legs at the lower leg or ankle of said doll at a separation point;

each said assembly and lower legs having a joint for releasably securing the foot/shoe assemblies to the legs; and

a simulated strap forming part of said shoe extending around said assembly at said separation point.

14. A doll as defined in claim 13 wherein the shoe portion of the foot/shoe assembly is colored to contrast sharply with the exposed skin areas of the foot.

15. A doll with changeable footgear as defined in claim 13 further including a plurality of different sets of shoes of different styles for selectively mounting on said legs.

16. A doll as defined in claim 13 wherein said doll and said foot/shoe assemblies are formed of resilient plastic material.

17. A doll as defined in claim 13 wherein said exposed parts of the feet have substantially the same color as said legs.

Z

EXHIBIT 10
PAGE 101

MGA 0825492

EX 500-0008

Matter No. 15904-142

## Doll With Aesthetic Changeable Footgear

ABSTRACT OF THE DISCLOSURE

A doll with changeable footgear includes a torso with legs, and a pair of foot/shoe assemblies mounted on the legs at separation points; and each foot shoe assembly has exposed skin of a color and texture substantially matching the skin of the legs, and the simulated shoes include simulated straps extending around the foot/shoe assembly immediately adjacent the separation point on each leg. Each foot/shoe assembly may be mounted on one of the doll legs, employing a protuberance on one part and a recess on the other part, with a snap-in locking fit between the two parts. The simulated shoes may be of a sharply contrasting color relative to the skin color.

8

EXHIBIT 10        MGA 0825493

PAGE 102        EX 500-0009

1/2



FIG. 1

FIG. 2

EXHIBIT 1Ø
PAGE 103

MGA 0825494

EX 500-0010

2/2



FIG. 3

FIG. 4

FIG. 5

EXHIBIT 16
PAGE 104

MGA 0825495

EX 500-0011

# EXHIBIT 17

EX 1-0004

BRYANT 00265

ATTORNEY'S EYES ONLY

EXHIBIT 17
PAGE 105



To give Zoe a whole new look for night, change her short dark brown hairstyle to her long blonde hairdo (included), change her pants to a skirt (also included) and change her sneakers to platform sandals (you get those too!)

# EXHIBIT 18

2708

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                   EASTERN DIVISION

4                      - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                      - - -

7   MATTEL, INC.,                    )
                                     )
8                    PLAINTIFF,      )
                                     )
9        VS.                         )  NO. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, INC., ET. AL.,)
                                     )
11                   DEFENDANTS.     )  TRIAL DAY 14
    _____    )  MORNING SESSION
12  AND CONSOLIDATED ACTIONS,        )  PAGES 2708-2817
                                     )
13

14

15       REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16                 RIVERSIDE, CALIFORNIA

17                TUESDAY, JUNE 17, 2008

18                     8:47 A.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
            FEDERAL OFFICIAL COURT REPORTER
24             3470 12TH STREET, RM. 134
            RIVERSIDE, CALIFORNIA   92501
25               951-274-0844
            WWW.THERESALANZA.COM

EXHIBIT 18
PAGE 106

2709

```
 1   APPEARANCES:

 2
     ON BEHALF OF MATTEL, INC.:
 3
                          QUINN EMANUEL
 4                        BY:   JOHN QUINN
                               JON COREY
 5                             MICHAEL T. ZELLER
                               HARRY OLIVAR
 6                             TIMOTHY ALGER
                          865 S. FIGUEROA STREET,
 7                        10TH FLOOR
                          LOS ANGELES, CALIFORNIA  90017
 8

 9

10   ON BEHALF OF MGA ENTERTAINMENT:

11                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:   THOMAS J. NOLAN
12                             JASON RUSSELL
                               RAOUL KENNEDY
13                             LAUREN AGUIAR
                               CARL ROTH
14                        300 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA  90071-3144
15                        213-687-5000

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT **18**

PAGE **107**

TUESDAY, JUNE 17, 2008            TRIAL DAY 14, MORNING SESSION

2710

```
 1                          I N D E X

 2                                                    PAGE

 3    PLAINTIFF CASE (CONTINUED)..................... 2727

 4

 5

 6    PLAINTIFF
      WITNESS          DIRECT      CROSS     REDIRECT    RECROSS
 7    CARTER BRYANT (CONTINUED)

 8    BY MR. PRICE        2727
      BY MR. NOLAN                  2779
 9

10

11
              EXHIBITS          RECEIVED
12
                 20               2759
13             10480             2763
                1326             2766
14               27              2767
                593              2769
15

16

17

18

19

20

21

22

23

24

25                                    EXHIBIT 18
                                      PAGE 108
```

TUESDAY, JUNE 17, 2008          TRIAL DAY 14, MORNING SESSION

2732

```
 1   ORIGINAL NOTEBOOK DRAWINGS AND SOMETIME IN 1998; IS THAT RIGHT?

 2   A    YES.

 3   Q    EXHIBIT 5-100, WHICH IS BRYANT 00290.

 4        IS THIS ANOTHER EXAMPLE OF A DRAWING WHICH YOU CLAIM

 5   WAS DONE IN 1998, AFTER THOSE ORIGINAL NOTEBOOK DRAWINGS?         09:15

 6   A    NO, I WOULDN'T AGREE WITH YOU ON THAT.

 7   Q    OKAY.

 8        WHEN WAS THIS ONE DONE?

 9   A    THIS, I BELIEVE, WAS DRAWN IN 2000.

10   Q    AND WHEN IN 2000?                                           09:15

11   A    I THINK IT WAS LATE NOVEMBER OF 2000.

12   Q    SO YOU'RE SAYING THIS ONE WAS DONE AFTER YOU LEFT MATTEL;

13   IS THAT RIGHT?

14   A    YES.

15   Q    LET'S LOOK AT 5-101.                                        09:21

16        IS THIS A DOCUMENT WHICH YOU CLAIM WAS DRAWN AFTER

17   THOSE ORIGINAL DRAWINGS BUT SOMETIME IN 1998?

18   A    WHAT WAS THE NUMBER ON IT, AGAIN?

19   Q    IT'S BRYANT 290 AND IT'S 5-101.

20   A    OKAY.                                                       09:21

21   Q    IS THIS THE DRAWING WHICH YOU CLAIM WAS DONE IN 1998,

22   AFTER THOSE ORIGINAL DRAWINGS IN THE BLACK NOTEBOOK?

23   A    YES.

24   Q    BY THE WAY, IT IS YOUR UNDERSTANDING, IS IT NOT, THAT

25   THOSE ORIGINAL DRAWINGS THAT WE'RE LOOKING AT WITH THE TORN      09:22
```

EXHIBIT 18
PAGE 109

2733

1    SHEETS OF PAPER --

2    A    YES.

3    Q    -- THOSE CAME OUT OF THE BLACK NOTEBOOK?

4    A    I AM NOT COMPLETELY CERTAIN WHICH NOTEBOOK THOSE CAME

5    OUT OF.                                                          09:22

6    Q    YOU WERE LOOKING AT THEM FRIDAY WITH THE BLACK NOTEBOOK.

7         WOULD YOU LIKE TO SEE IT AGAIN?

8    A    SURE.

9    Q    THIS IS THE ORIGINAL OF 1155-C.

10        IS IT YOUR UNDERSTANDING THAT THOSE ORIGINAL DRAWINGS    09:23

11   THAT YOU MADE, WHICH WERE 5-39, 5-40, 5-41, AND 5-42, CAME OUT

12   OF THAT NOTEBOOK?

13   A    I BELIEVE SO, YES.

14   Q    I'M GOING TO SWITCH YOU NOW TO A DIFFERENT EXHIBIT.   IF

15   YOU WOULD LOOK AT EXHIBIT 1.                                    09:23

16        IS EXHIBIT 1 A COLLECTION OF SOME OF THE PITCH

17   MATERIALS THAT YOU INTENDED TO SHOW MGA IN 2000?

18   A    YES, BASED ON THE OLD '98 DRAWINGS.

19   Q    AND JUST TO BE CLEAR, EVERY ONE OF THESE PAGES -- LET ME

20   DEFINE IT THIS WAY.  I'M GOING TO ASK YOU WHETHER THEY WERE    09:24

21   CREATED AFTER 1998.  AND BY THAT I MEAN, YOU PUT PENCIL TO

22   PAPER TO CREATE THESE PARTICULAR DRAWINGS WHILE YOU WORKED AT

23   MATTEL; CORRECT?

24        MR. NOLAN:   OBJECTION, YOUR HONOR.  VAGUE AND

25   AMBIGUOUS AS TO THE PROCESS.                                   09:24

EXHIBIT 18
PAGE 110

TUESDAY, JUNE 17, 2008              TRIAL DAY 14, MORNING SESSION

2734

```
 1              THE COURT:  REPHRASE.

 2              I'M A LITTLE CONFUSED MYSELF.

 3    BY MR. PRICE:

 4    Q    ALL I MEAN BY 'THESE WERE CREATED WHEN YOU WORKED FOR

 5    MATTEL,' I MEAN THAT ORIGINALLY THEY WERE BLANK PAGES AND WHILE    09:25

 6    YOU WERE AT MATTEL TO CREATE THESE, YOU FIRST PUT PEN OR PENCIL

 7    OR A MAGIC MARKER OR A PASTEL MARKER, WHATEVER, TO PAPER.

 8    A    YES.  USING THE DRAWINGS FROM 1998.

 9    Q    SO WHAT YOU'RE SAYING IS THAT YOU -- AGAIN, THE PROCESS OF

10    USING A LIGHT BOX AND YOU PUT THAT ON A BLANK POSTER BOARD, AND    09:25

11    THEN YOU TOOK PEN, PENCIL, WHATEVER, AND DREW THESE DRAWINGS IN

12    EXHIBIT 1 IN 1999; CORRECT?

13    A    YES.

14    Q    WHILE WORKING AT MATTEL?

15    A    NOT WHILE PHYSICALLY AT MATTEL; BUT OFF HOURS, YES.          09:25

16    Q    WHILE EMPLOYED BY MATTEL?

17    A    WHILE EMPLOYED BY MATTEL, YES.

18    Q    WOULD YOU LOOK AT EXHIBIT 2.

19              COULD YOU TELL US, WERE THESE DOCUMENTS IN EXHIBIT 2

20    DONE ALSO IN PREPARATION FOR THE PITCH THAT YOU MADE TO MGA IN    09:26

21    2000?

22    A    WELL, THEY LOOK LIKE THE SAME DRAWINGS THAT WE JUST LOOKED

23    AT.

24    Q    WITHOUT TEXT.

25    A    RIGHT, WITHOUT TEXT.                                         09:26
```

EXHIBIT 18
PAGE 111

# EXHIBIT 19

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 20

ATTORNEYS' EYES ONLY

## Isaac Larian (President / CEO)

From:      Fred Larian
Sent:      Thursday, May 25, 2000 12:49 PM
To:      Isaac Larian
Subject:      RE: Information requested by Marty Katz regarding Fireman's Fund

Your denial does not make my allegation any less true and time will prove what the real truth is. I doubt you will swear on any of your children's lives that my allegations are not true (then again, I have been surprised before).

When the time comes, we will go through both of our testimonies and prove who lied about what.

-----Original Message-----
From: Isaac Larian
Sent: Wednesday, May 24, 2000 7:15 PM
To: Fred Larian
Subject: RE: Information requested by Marty Katz regarding Fireman's Fund

Your allegation stated below is false, and self serving , as usual.

The records we have ( including your testimony in the Fireman Insurance case) speak for themselves.

-----Original Message-----
From: Fred Larian
Sent: Wednesday, May 24, 2000 6:32 PM
To: Isaac Larian
Subject: Information requested by Marty Katz regarding Fireman's Fund

You have accused me of falsifying documents. You are the one who is trying to falsify things. For example, during the week of April 24, I informed you that in response to a fax from Risa of Marty Katz's office, the originals of the health insurance termination forms on Leon Michanie (copies of which had been previously provided to Fireman's Fund) were located and that legible copies were made. You instructed me to not provide those to Marty and to tell him we could not find the originals. On April 30, 2000, at my preparation meeting with Marty, I ignored your instructions and gave the copies to Marty.

1

CG 0009

EXHIBIT 20
PAGE 134

EX 13380-0001

# EXHIBIT 21

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 22

3469

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                    - - -

4      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5                    - - -

6   MATTEL, INC.,                    :   PAGES 3469 - 3588
                                     :
7          PLAINTIFF,                :
                                     :
8      VS.                           :   NO. ED CV04-09049-SGL
                                     :   [CONSOLIDATED WITH
9   MGA ENTERTAINMENT, INC.,         :   CV04-9059 & CV05-2727]
    ET AL.,                          :
10                                   :
           DEFENDANTS.               :
11   _____

12

13

14

15      REPORTER'S TRANSCRIPT OF PROCEEDINGS

16          RIVERSIDE, CALIFORNIA

17        TUESDAY, JUNE 24, 2008

18        JURY TRIAL - DAY 17

19          MORNING SESSION

20

21

22                         MARK SCHWEITZER, CSR, RPR, CRR
                           OFFICIAL COURT REPORTER
23   CERTIFIED             UNITED STATES DISTRICT COURT
                           181-H ROYBAL FEDERAL BUILDING
24   COPY                  255 EAST TEMPLE STREET
                           LOS ANGELES, CALIFORNIA 90012
25                         (213) 663-3494



EXHIBIT 22
PAGE 143

3470

1   Appearances of Counsel:

2

3   On Behalf of Mattel:

4       Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
        By John B. Quinn, Esq.
5           B. Dylan Proctor, Esq.
            Michael T. Zeller, Esq.
6           Harry Olivar, Esq.
            John Corey, Esq.
7           Diane Hutnyan, Esq.
            William Price, Esq.
8       855 South Figueroa Street
        10th Floor
9       Los Angeles, CA 90017
        (213) 624-7707
10

11

12  On Behalf of MGA Entertainment:

13      Skadden, Arps, Slate, Meagher & Flom LLP
        By Thomas J. Nolan, Esq.
14          Carl Alan Roth, Esq.
            Jason Russell, Esq.
15          Lauren Aguiar, Esq.
            David Hansen, Esq.
16          Matthew Sloan, Esq.
            Robert Herrington, Esq.
17      300 South Grand Avenue
        Los Angeles, CA 90071-3144
18      (213) 687-5000

19

20

21

22

23

24

25

EXHIBIT 22
PAGE 144

3471

1

## I N D E X

2

3    CASSIDY PARK, SWORN.................................... 3486

4    DIRECT EXAMINATION BY MR. ZELLER: ..................... 3486
     CROSS-EXAMINATION BY MR. NOLAN:    ..................... 3494
5    REDIRECT EXAMINATION BY MR. ZELLER: ................... 3554
     RECROSS-EXAMINATION BY MR. NOLAN: ..................... 3559
6    FURTHER REDIRECT EXAMINATION BY MR. ZELLER:........... 3562
     FURTHER RECROSS-EXAMINATION BY MR. NOLAN: ............ 3563

7

     CRAIG HOLDEN, SWORN................................... 3564
8
     DIRECT EXAMINATION BY MR. QUINN: ..................... 3564
9    CROSS-EXAMINATION BY MS. AGUIAR:...................... 3569

10

     VIDEOTAPED DEPOSITION EXCERPTS OF JACKIE RAMONA PRINCE. 3574
11

12

13

14    ## E X H I B I T S

15

16    (Exhibit 13675 received.)............................. 3491

17    (Exhibits 13677, 13678, and 13676 received.)........... 3493

18    (Exhibit 15952 received.)............................. 3499

19    (Exhibit 250 received.)............................... 3526

20    (Exhibit 10034 received.)............................. 3569

21    (Exhibit 13629 received.)............................. 3572

22

23

24

25


EXHIBIT 22
PAGE 145

3569

```
 1   tab 10034.
 2           Do you see that, sir?
 3   A.    I do.
 4   Q.    And without getting into the detail of it, do you see a
 5   Bates number there that this is a document, an employment
 6   application that was produced by MGA?
 7   A.    Yes, I see the MGA Bates numbers.
 8           MR. QUINN:  So we would offer that exhibit, your
 9   Honor, 10034.
10           THE COURT:  Any objection outside of what was
11   stated at sidebar?
12           MS. AGUIAR:  With the express condition of what we
13   stated at sidebar, we have no objection.
14           THE COURT:  Very well.  I'm going to admit this
15   conditionally.  Counsel, I'm not going to let you publish
16   this until the Court hears further testimony.
17           (Exhibit 10034 received.)
18           MR. QUINN:  I have nothing further.  Shortest
19   witness so far.
20           THE COURT:  Very well.
21           Cross-examination?
22                   CROSS-EXAMINATION
23   BY MS. AGUIAR:
24   Q.    Mr. Holden, what's your position at MGA?
25   A.    I'm in-house counsel.
```



EXHIBIT 22
PAGE 146

1      MS. AGUIAR:  Thank you very much.  Nothing further.
2      THE COURT:  Thank you, Counsel.  You may step down,
3  sir.
4      Mattel's next witness.
5      MR. QUINN:  Your Honor, at this point we have a
6  stipulation that we've entered into with MGA in order to
7  avoid having to call some expert witnesses.
8      THE COURT:  Very well.
9      MR. QUINN:  So if I might just read it, your Honor.
10      THE COURT:  You may.  The jury will hear the
11  stipulation.  This actually is a stipulation which obviates
12  the need to call a witness from either side.  So this is
13  basically the combined testimony of these two expert --
14  computer experts.
15      Counsel?
16      MR. QUINN:  Carter Bryant purchased a laptop
17  computer in November 2001 and downloaded the Evidence
18  Eliminator program from the Internet and then installed it on
19  his laptop computer on September 10th, 2002.
20      Exhibit 13629 is the Evidence Eliminator website
21  for 2002.
22      And, your Honor, I believe that there is a
23  stipulation that that is to be received in evidence, and we
24  would offer that in evidence.
25      THE COURT:  It is admitted.  I'll be waiting to



EXHIBIT 22
PAGE 147

3571

1   hear from counsel when they join in the stipulation.   But

2   we'll get to that in a moment.

3            MR. QUINN:   Evidence Eliminator ran in the

4   background when Carter Bryant's laptop computer was turned

5   on.   Evidence Eliminator includes a function called safe

6   shutdown which permanently eliminates the residue of deleted

7   files and renders such files unrecoverable by computer

8   forensic experts.

9            The laptop computer was imaged on July 14th, 2004,

10  by a technician who was hired by counsel for Carter Bryant in

11  this case.

12           On July 12th, 2004, the safe shutdown feature of

13  the Evidence Eliminator program was run on the laptop.   It

14  took approximately one half hour to operate the safe shutdown

15  feature of Evidence Eliminator.

16           No adult content was located in Carter Bryant's

17  profile on the hard drive of the laptop computer.

18           The Spy Hunter software program, which is designed

19  to block out pop-up advertisements, was installed on the

20  laptop computer.

21           Just one moment, your Honor.

22           THE COURT:   You may.

23           MR. QUINN:   That's the conclusion.

24           MR. NOLAN:   Subject to the other objections we

25  made, yes, we join in the stipulation.

EXHIBIT 22
PAGE 148

1          And, your Honor, with respect to Exhibit 13629,

2   with respect to the objections that we've previously made,

3   Mr. Quinn is correct that that document can come into

4   evidence subject to the earlier objections.

5          THE COURT:  Very well, Counsel.  So the 13629 is

6   admitted.

7              **(Exhibit 13629 received.)**

8          THE COURT:  And the stipulation is to be treated as

9   having been proven to the members of the jury.

10         Mr. Quinn, you may call your next witness.

11         MR. QUINN:  Your Honor, at this time Mattel is

12  prepared to conditionally rest.

13         THE COURT:  Very well.

14         MR. QUINN:  Subject to calling certain witnesses

15  who have not been available who are going to be scheduled.

16         THE COURT:  Very well.  Members of the jury, there

17  are a few witnesses that -- whose schedules the Court is

18  accommodating.  One we anticipate being called this

19  afternoon.  A few more will be called next week that are part

20  of Mattel's case in chief, but just to move this along, we're

21  now going to shift and permit the defense to start their case

22  in chief.

23         You've heard an extensive amount of testimony

24  elicited by both sides.  As I've previously instructed you,

25  it does not matter which side calls the witness.  In fact, to

EXHIBIT 82
PAGE 149

3588

1
2
3
4
5
6
7
8
9
10              C E R T I F I C A T E
11
12
13          I hereby certify that pursuant to Title 28,
14   Section 753 United States Code, the foregoing is a true and
15   correct transcript of the stenographically reported
16   proceedings in the above matter.
17          Certified on June 24, 2008.
18
19
20   MARK SCHWEITZER, CSR, RPR, CRR
     Official Court Reporter
21   License No. 10514
22
23
24
25

EXHIBIT 22
150

3589

1               UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                    EASTERN DIVISION

4                      - - -

5         HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                      - - -

7    MATTEL, INC.,                    )        **CERTIFIED**
                                      )
8                     PLAINTIFF,      )          **COPY**
                                      )
9          VS.                        )   NO. CV 04-09049
                                      )
10   MGA ENTERTAINMENT, INC., ET. AL.,)
                                      )
11                    DEFENDANTS.     )   TRIAL DAY 17
                                      )   AFTERNOON SESSION
12   AND CONSOLIDATED ACTIONS,        )   PAGES 3589-3689
                                      )

13

14

15      REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16                RIVERSIDE, CALIFORNIA

17              TUESDAY, JUNE 24, 2008

18                   2:55 P.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
             FEDERAL OFFICIAL COURT REPORTER
24              3470 12TH STREET, RM. 134
             RIVERSIDE, CALIFORNIA  92501
25                 951-274-0844
             WWW.THERESALANZA.COM

TUESDAY, JUNE 24, 2008              TRIAL DAY 17, AFTERNOON SESSION

EXHIBIT  22
PAGE  151

3590

```
1    APPEARANCES:

2

3    ON BEHALF OF MATTEL, INC.:

4                         QUINN EMANUEL
                         BY:   JOHN QUINN
5                              JON COREY
                              MICHAEL T. ZELLER
6                              HARRY OLIVAR
                              TIMOTHY ALGER
7                         865 S. FIGUEROA STREET,
                         10TH FLOOR
8                         LOS ANGELES, CALIFORNIA  90017

9

10   ON BEHALF OF MGA ENTERTAINMENT:

11                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                         BY:   THOMAS J. NOLAN
12                             JASON RUSSELL
                              RAOUL SLOAN
13                             LAUREN AGUIAR
                              CARL ROTH
14                        300 SOUTH GRAND AVENUE
                         LOS ANGELES, CALIFORNIA  90071-3144
15                        213-687-5000

16

17   ON BEHALF OF THIRD-PARTY DEFENDANT PETER MARLOW:

18                        LAW OFFICE OF STEVEN M. GOLDSOBEL
                         BY:   STEVEN M. GOLDSOBEL
19                        1900 AVENUE OF THE STARS
                         SUITE 1800
20                        LOS ANGELES, CA  90067
                         310-552-4848
21

22

23

24

25
```

TUESDAY, JUNE 24, 2008

TRIAL DAY 17, AFTERNOON SESSION

EXHIBIT ___22___
PAGE ___152___

3591

```
 1                          I N D E X

 2                                            PAGE

 3   DEFENSE CASE (CONTINUED)....................   3592

 4   PLAINTIFF WITNESS...........................   3619

 5

 6   DEFENSE
     WITNESS         DIRECT     CROSS    REDIRECT    RECROSS
 7   JACQUELINE PRINCE (VIA VIDEO DEPOSITION)

 8   BY MR. ZELLER   3592

 9

10   PLAINTIFF
     WITNESS         DIRECT     CROSS    REDIRECT    RECROSS
11   PETER MARLOW

12   BY MR. ZELLER     3619
     BY MS. AGUIAR              3658
13

14

15

16           EXHIBITS          RECEIVED

17             61                 3618
               62                 3618
18             5723 (PP. 1,2)     3632
               10034              3678

19

20

21

22

23

24

25
```

TUESDAY, JUNE 24, 2008

TRIAL DAY 17, AFTERNOON SESSION

EXHIBIT 22
PAGE 153

```
 1              MR. NOLAN:   THE ERRATA SHEET IS PART OF THE
 2    TRANSCRIPT.
 3              THE COURT:   IT'S OVERRULED.
 4    BY MR. ZELLER:
 5    Q    ALSO, YOUR LAWYER CLAIMED, AS RECENTLY AS THIS DEPOSITION   04:06
 6    YOU JUST HAD, THAT YOU AND MGA HAD SOMETHING THAT WAS CALLED A
 7    JOINT DEFENSE.
 8              DO YOU REMEMBER THAT?
 9              MS. AGUIAR:   OBJECTION.   RELEVANCE; CALLS FOR A LEGAL
10    CONCLUSION.                                                      04:07
11              MR. ZELLER:   CREDIBILITY, YOUR HONOR.
12              THE COURT:   I KNOW.
13              OVERRULED.
14              WATCH THE SUBJECT MATTER, COUNSEL.
15              MR. ZELLER:   I CAN SHARPEN IT UP, YOUR HONOR.         04:07
16    BY MR. ZELLER:
17    Q    DURING THE COURSE OF YOUR DEPOSITION, DO YOU RECALL THAT
18    YOUR LAWYER FROM TIME TO TIME OBJECTED AND SAID, 'MR. MARLOW,
19    DON'T ANSWER THOSE QUESTIONS BECAUSE YOU HAVE SOMETHING CALLED
20    A JOINT DEFENSE.'                                                04:07
21              DO YOU REMEMBER THOSE WORDS BEING USED?
22    A    YES.
23    Q    AND YOU UNDERSTOOD THAT MEANT YOUR LAWYER WAS SAYING THAT
24    YOU AND MGA HAVE SIMILAR INTERESTS; IS THAT RIGHT?
25    A    I DON'T UNDERSTAND IT.                                      04:07
```

3649

```
 1   Q    WELL, YOU HAD NO UNDERSTANDING OF WHAT A JOINT DEFENSE IS

 2   BETWEEN YOU AND MGA?

 3            MS. AGUIAR:  OBJECTION.  RELEVANCE.  AND IT WAS

 4   WITHDRAWN.

 5            THE COURT:  WAS IT WITHDRAWN, COUNSEL?               04:07

 6            MR. GOLDSOBEL:  YES.

 7            MR. ZELLER:  THIS IS, AGAIN, CREDIBILITY.  IT TIES TO

 8   MGA.

 9            THE COURT:  WAS THE OBJECTION WITHDRAWN?

10            MR. GOLDSOBEL:  YES, YOUR HONOR, IT WAS WITHDRAWN.   04:08

11            THE COURT:  LET'S MOVE ALONG.

12   BY MR. ZELLER:

13   Q    AND BY THE WAY, THAT MEETING THAT YOU HAD WITH MR. NOLAN

14   JUST THIS WEEKEND BEFORE LAST, HE TOLD YOU TO KEEP THOSE

15   DISCUSSIONS CONFIDENTIAL, DIDN'T HE?                         04:08

16   A    YES.

17   Q    YOU AND VERONICA MARLOW HAD, APPROXIMATELY, A SEVEN-YEAR

18   BUSINESS RELATIONSHIP WITH CARTER BRYANT; IS THAT TRUE?

19   A    YES.

20   Q    AND YOU AND VERONICA MARLOW HAVE RECEIVED MILLIONS OF    04:08

21   DOLLARS FROM MGA AND CARTER BRYANT OVER THE YEARS; IS THAT

22   TRUE?

23   A    YES.

24   Q    IN FACT, YOU'VE RECEIVED AT LEAST $2 TO $3 MILLION; IS

25   THAT TRUE?                                                   04:08
```



EXHIBIT  22
PAGE  155

3650

```
 1   A    YES.

 2   Q    YOU AND YOUR WIFE LAST RECEIVED A PAYMENT FOR BRATZ AS

 3   RECENTLY AS THREE OR FOUR MONTHS AGO.

 4   A    A LITTLE LONGER.  I THINK ABOUT FOUR OR FIVE MONTHS AGO.

 5   Q    AND YOU CERTAINLY HOPE YOU'LL GET MORE MONEY FROM THEM IN     04:09

 6   THE FUTURE; IS THAT RIGHT?

 7             MS. AGUIAR:  OBJECTION.  VAGUE AND AMBIGUOUS AS TO

 8   WHO WAS MAKING THOSE PAYMENTS.

 9             THE COURT:  SUSTAINED.

10   BY MR. ZELLER:

11   Q    DO YOU HAVE AN EXPECTATION THAT YOU'LL RECEIVE MONEY IN

12   THE FUTURE FROM THEM?

13             MS. AGUIAR:  OBJECTION.  SAME OBJECTIONS.

14             THE COURT:  FROM WHO, COUNSEL?  IT'S NOT CLEAR.

15             SUSTAINED.                                               04:09

16   BY MR. ZELLER:

17   Q    ISN'T IT TRUE THAT DURING THE TIME THAT YOU AND

18   VERONICA MARLOW HAVE PROVIDED SERVICES TO MGA, YOU'VE DONE THAT

19   UNDER THE DIRECTION OF MGA AND CARTER BRYANT?

20             MS. AGUIAR:  OBJECTION.  FOUNDATION; ASSUMES FACTS       04:09

21   NOT IN EVIDENCE.

22             THE COURT:  LAY A FOUNDATION, COUNSEL.

23   BY MR. ZELLER:

24   Q    I TAKE IT THAT YOU HAVE PERSONALLY BEEN INVOLVED IN

25   COMMUNICATIONS WITH CARTER BRYANT AND MGA INSOFAR AS THEY         04:10
```

EXHIBIT 22

PAGE 156

3651

1   PERTAIN TO WORK PERFORMED ON THE BRATZ PROJECT GOING BACK TO

2   2000; RIGHT?

3   A    CORRECT.

4   Q    YOU HAVE PERSONAL KNOWLEDGE AS TO WHERE THOSE DIRECTIONS

5   AND INSTRUCTIONS HAVE COME FROM; RIGHT?                          04:10

6   A    SOMETIMES.

7   Q    AND THE ONES THAT YOU'RE AWARE OF, THOSE DIRECTIONS AND

8   INSTRUCTIONS AS TO WHAT WORK TO DO, WHAT SERVICES TO PERFORM,

9   THOSE HAVE COME FROM MGA AND CARTER BRYANT; IS THAT TRUE?

10  A    YES.                                                        04:10

11  Q    AND CARTER BRYANT AND MGA HAVE HAD THE POWER TO APPROVE OR

12  DISAPPROVE THE WORK THAT YOU AND YOUR WIFE HAVE DONE ON BRATZ;

13  IS THAT TRUE?

14  A    YES.

15  Q    AND YOU AND VERONICA MARLOW HAVE, FROM TIME TO TIME, HELD   04:10

16  YOURSELVES OUT AS ACTING FOR MGA; IS THAT RIGHT?

17            MS. AGUIAR:   OBJECTION.   VAGUE; LACK OF FOUNDATION.

18            THE COURT:   EXPLAIN YOUR TERM, COUNSEL.

19  BY MR. ZELLER:

20  Q    HAVE YOU EVER TOLD ANYONE, OR HAS YOUR WIFE, TO YOUR        04:11

21  KNOWLEDGE, EVER TOLD ANYONE, THAT YOU AND SHE WERE WORKING OR

22  ACTING ON MGA'S BEHALF; IN OTHER WORDS, DOING SOMETHING FOR

23  MGA?

24  A    NO.

25  Q    THAT'S NEVER HAPPENED?                                      04:11

TUESDAY, JUNE 24, 2008                TRIAL DAY 17, AFTERNOON SESSION

```
 1              I'LL BE LOOKING FOR FOUNDATIONAL OBJECTIONS.
 2              MR. ZELLER:  SO THE COURT KNOWS, WHAT I WOULD --
 3    MAYBE IF I START WITH THE EMPLOYMENT, BECAUSE THAT MAY BE
 4    THAT --
 5              THE COURT:  YOU CAN START WHEREVER YOU WANT.  I'M        04:53
 6    JUST SAYING, BEFORE YOU GET TO THAT E-MAIL --
 7              MR. ZELLER:  INTO THE 2005 ONE.
 8              THE COURT -- IT'S GOT TO BE THIS WITNESS'S
 9    UNDERSTANDING THAT THAT'S WHAT HE WAS COMMUNICATING TO MGA.
10              MR. ZELLER:  AND THIS, OF COURSE, GOES TO              04:53
11    CREDIBILITY.  SHE ASKED THOSE QUESTIONS.
12              THE COURT:  I UNDERSTAND WHAT IT GOES TO, COUNSEL.
13              MR. ZELLER:  THANK YOU.
14              (WHEREUPON, SIDE-BAR PROCEEDINGS WERE CONCLUDED.)
15              THE COURT:  YOU MAY PROCEED, COUNSEL.                  04:54
16    BY MR. ZELLER:
17    Q    YOU SAID, IN RESPONSE TO MGA'S COUNSEL'S QUESTIONS, IN
18    VARIOUS WAYS, THAT NEITHER YOU NOR YOUR WIFE EVER TOLD OR EVER
19    INFORMED MGA, IN WORDS OR SUBSTANCE, THAT THESE OTHER MATTEL
20    EMPLOYEES WERE SECRETLY WORKING ON BRATZ WHILE MATTEL            04:54
21    EMPLOYEES; IS THAT CORRECT?
22    A    CORRECT.
23    Q    SO THE RECORD IS CLEAR HERE AS WELL, THERE WAS ACTUALLY A
24    THIRD MATTEL EMPLOYEE WHO WAS SECRETLY WORKING ON BRATZ WHILE A
25    MATTEL EMPLOYEE AND WORKING ON THE BRATZ CLOTHING; IS THAT       04:54
```

EXHIBIT 22

PAGE 188

3670

```
 1   TRUE?

 2   A    CORRECT.

 3   Q    AND THAT WAS BEATRIZ MORALES?

 4   A    CORRECT.

 5   Q    SO WE HAVE THE TIME FRAMES CLEARLY IN MIND, MARIA SALAZAR,    04:54

 6   WHILE A MATTEL EMPLOYEE, WORKED ON THE BRATZ CLOTHING FROM AT

 7   LEAST THE 2000 AND 2001 TIME PERIOD; CORRECT?

 8   A    CORRECT.

 9   Q    ANA CABRERA DID THAT AS WELL, FROM THE 2000 TO 2005 TIME

10   PERIOD; IS THAT CORRECT?                                          04:55

11   A    CORRECT.

12   Q    AND BEATRIZ MORALES DID THAT FROM AT LEAST THE 2001

13   THROUGH THE 2005 TIME PERIOD; CORRECT?

14   A    CORRECT.

15   Q    SO THERE WERE AT LEAST ANOTHER THREE MATTEL EMPLOYEES WHO     04:55

16   WORKED FOR YEARS, SECRETLY, ON BRATZ AND WERE PAID BY YOU AND

17   YOUR WIFE AND REIMBURSED BY MGA TO WORK ON BRATZ; IS THAT TRUE?

18   A    CORRECT.

19   Q    IF I UNDERSTAND IT, THIS WENT ON FOR YEARS AND YEARS, WITH

20   ALL THREE OF THEM, WITHOUT ANY INKLING, ANY HINT, TO MGA AS TO     04:55

21   WHAT WAS GOING ON; IS THAT RIGHT?

22   A    CORRECT.

23   Q    NOW, ISN'T IT TRUE THAT MARIA SALAZAR, IN FACT, BECAME

24   EMPLOYED BY MGA BACK IN 2003?

25   A    CORRECT.                                                     04:56
```

TUESDAY, JUNE 24, 2008                    TRIAL DAY 17, AFTERNOON SESSION

159

```
 1  Q    AND CERTAINLY, SHE KNEW THAT SHE HAD BEEN SECRETLY WORKING
 2  ON BRATZ WHILE A MATTEL EMPLOYEE; CORRECT?  SO SHE HAD TO HAVE
 3  KNOWN.
 4            MS. AGUIAR:  OBJECTION AS TO TIME FRAME, YOUR HONOR.
 5            THE COURT:  SUSTAINED.                                    04:56
 6            REPHRASE YOUR QUESTION.  JUST CLARIFY AS TO THE TIME
 7  PERIOD IN QUESTION.
 8            MR. ZELLER:  YES, YOUR HONOR.
 9  BY MR. ZELLER:
10  Q    PRIOR TO THE TIME THAT MARIA SALAZAR ACTUALLY BEGAN AS AN     04:56
11  EMPLOYEE THERE AT MGA IN THE 2003 TIME PERIOD, OBVIOUSLY SHE
12  HAD ALREADY KNOWN SHE HAD BEEN SECRETLY WORKING ON BRATZ AS A
13  MATTEL EMPLOYEE FOR A COUPLE OF YEARS BEFORE THAT; RIGHT?
14            MS. AGUIAR:  OBJECTION.  MISSTATES THE TESTIMONY AND
15  INACCURATE TIME FRAME.                                             04:56
16            THE COURT:  REPHRASE, COUNSEL.
17  BY MR. ZELLER:
18  Q    MARIA SALAZAR, OF COURSE, BY YOUR UNDERSTANDING, KNEW WHAT
19  SHE HAD DONE ON BRATZ; THAT IS, SECRETLY WORK ON IT WHILE A
20  MATTEL EMPLOYEE; RIGHT?                                            04:57
21  A    CORRECT.
22  Q    AND SHE KNEW THAT PRIOR TO 2003; IS THAT TRUE?
23  A    CORRECT.
24  Q    AND SHE KNEW THAT, THEREFORE, WHEN SHE BEGAN AS AN
25  EMPLOYEE AT MGA.                                                   04:57
```

3672

```
 1   A     CORRECT.

 2   Q     SO CERTAINLY, SOMEBODY -- WHEN YOU TOLD US NO ONE AT MGA

 3   KNEW, AT LEAST MARIA SALAZAR, AN MGA EMPLOYEE FROM 2003 ON, SHE

 4   KNEW WHAT HAD HAPPENED; RIGHT?

 5   A     CORRECT.                                                      04:57

 6   Q     NOW, AS FAR AS YOU KNOW, MARIA SALAZAR, TO THIS DAY, IS AN

 7   MGA EMPLOYEE; IS THAT TRUE?

 8   A     I DON'T KNOW.

 9   Q     WELL, LAST YOU KNEW, SHE WAS AN MGA EMPLOYEE; RIGHT?

10   A     RIGHT.                                                        04:57

11   Q     DIRECTING YOUR ATTENTION TO EXHIBIT 10034.  I THINK IN

12   RESPONSE TO -- SOME OF THE QUESTIONS YOU WERE ASKED WERE

13   BASICALLY, 'DID MARIA SALAZAR EVER KNOW?  DID YOU EVER TELL HER

14   THAT SHE HAD WORKED ON BRATZ, THAT THE PRODUCT SHE WAS WORKING

15   ON WAS BRATZ WHILE SHE WAS A MATTEL EMPLOYEE?'                      04:58

16         MS. AGUIAR:  OBJECTION.  MISSTATES THE QUESTION AND

17   THE TESTIMONY.

18         THE COURT:  SUSTAINED.

19         MR. ZELLER:  I'LL REPHRASE IT, THEN.

20   BY MR. ZELLER:

21   Q     IT'S TRUE, THEN, AT SOME POINT, MARIA SALAZAR BECAME AWARE

22   THAT THE PROJECT SHE WAS SECRETLY WORKING ON WHILE A MATTEL

23   EMPLOYEE WAS A MGA PROJECT CALLED "BRATZ"?

24   A     YES.

25   Q     AND ALSO ANA CABRERA LEARNED THAT AT SOME POINT; IS THAT      04:5
```

3673

```
 1   TRUE?

 2   A    YES.

 3   Q    AND BEATRIZ MORALES LEARNED THAT AT SOME POINT AS WELL?

 4   A    YES.

 5   Q    ISN'T IT TRUE THAT YOU USED PHONY NAMES IN DOCUMENTS TO        04:58

 6   COVER UP THE FACT THAT THESE MATTEL EMPLOYEES WERE SECRETLY

 7   WORKING ON BRATZ WHILE MATTEL EMPLOYEES?

 8   A    IT WASN'T MY INTENT TO COVER ANYTHING UP.

 9   Q    WHETHER YOU INTENDED TO OR NOT, THAT IS WHAT YOU DID; IS

10   THAT NOT TRUE?                                                      04:59

11   A    CORRECT.

12   Q    AND IN AT LEAST SOME OF THOSE DOCUMENTS THAT YOU

13   PROVIDED -- AND ALSO WHAT YOU DID IS, NOT ONLY USED PHONY NAMES

14   FOR PEOPLE IN THESE DOCUMENTS; YOU USED PHONY SOCIAL SECURITY

15   NUMBERS; CORRECT?                                                   04:59

16   A    I WASN'T AWARE THAT THEY WERE PHONY.

17   Q    I'M SORRY?

18   A    I WASN'T AWARE OF THAT AT THE TIME.

19   Q    YOU CERTAINLY BECAME AWARE OF IT AT SOME POINT THAT THAT'S

20   WHAT YOU WERE DOING; RIGHT?                                         04:59

21   A    RIGHT.

22   Q    IN FACT, BACK IN 2003, YOU GOT A NOTICE FROM THE I.R.S.

23   TELLING YOU THAT THOSE SOCIAL SECURITY NUMBERS FOR THE WORK

24   THAT WAS BEING DONE AND THE PAYMENTS THAT WERE BEING MADE WERE

25   WRONG.                                                              04:59
```

EXHIBIT 22
PAGE 162

3674

```
 1   A    RIGHT.

 2   Q    SO YOU CERTAINLY HAD AN INKLING OR AN UNDERSTANDING BY

 3   THAT POINT THAT THE SOCIAL SECURITY NUMBERS THAT WERE BEING

 4   USED WERE PHONY.

 5             MS. AGUIAR:  OBJECTION.  RELEVANCE.                  04:59

 6             THE COURT:  OVERRULED.  THIS IS IMPEACHMENT.

 7             THE WITNESS:  THAT'S RIGHT.

 8   BY MR. ZELLER:

 9   Q    AND WHAT DID YOU DO ONCE YOU RECEIVED THAT NOTICE FROM THE

10   I.R.S. THAT THERE WAS SOMETHING WRONG WITH THOSE TAX DOCUMENTS  05:00

11   BECAUSE YOU WERE USING PHONY SOCIAL SECURITY NUMBERS TO COVER

12   UP THE FACT THAT THESE MATTEL EMPLOYEES WERE WORKING ON BRATZ

13   SECRETLY?

14   A    I ASKED THE MATTEL EMPLOYEES TO PLEASE GIVE ME CORRECT

15   SOCIAL SECURITY NUMBERS.                                       05:00

16   Q    WHEN DID YOU DO THAT, SIR?

17   A    AFTER RECEIVING THE NEXT NOTICE.

18   Q    YOU DID THAT RIGHT WITHIN THE LAST COUPLE OF WEEKS.

19   A    WELL, ACTUALLY, IT WAS IN 2005.

20   Q    SO YOU WAITED THREE YEARS?  TWO YEARS?                     05:0

21   A    THAT WAS THE TIME I RECEIVED THE NEXT NOTICE.

22   Q    SO DIRECTING YOUR ATTENTION, THEN, TO EXHIBIT 10034.

23   A    RIGHT.

24   Q    YOU RECOGNIZE THIS, GENERALLY SPEAKING, AS AN EMPLOYMENT

25   APPLICATION THAT MARIA SALAZAR FILLED OUT FOR MGA BACK IN THE   05:0
```

EXHIBIT 22

PAGE 163

3675

```
 1   2003 TIME PERIOD; IS THAT TRUE?
 2            MS. AGUIAR:  OBJECTION.  FOUNDATION.
 3            THE COURT:  ASK THE QUESTION, COUNSEL..
 4            MR. ZELLER:  LET ME TRY IT THIS WAY, YOUR HONOR:  THE
 5   DOCUMENT IS IN EVIDENCE.                                    05:01
 6            THE COURT:  RELEVANCY HAS BEEN ESTABLISHED.
 7            YOU MAY PUBLISH IT, COUNSEL.
 8            MR. ZELLER:  THANK YOU, YOUR HONOR.
 9            IF WE COULD SHOW, PLEASE, EXHIBIT 10034.
10            THE COURT:  I'M SOMEWHAT CONCERNED ABOUT THE TIME AT  05:01
11   THIS POINT.  I KNOW THIS WITNESS HAS BEEN WAITING NUMEROUS
12   DAYS, AND THE ATTORNEYS HAVE BEEN WAITING.  WE'RE AT THE 5:00
13   HOUR.
14            BEFORE I ASK THE JURY IF THEY WILL WAIT FOR A FEW
15   MORE MINUTES, HOW MUCH LONGER DO YOU ANTICIPATE THAT YOU HAVE?  05:01
16            MR. ZELLER:  I WOULD ANTICIPATE THAT IT IS PROBABLY
17   TEN MINUTES, YOUR HONOR.
18            THE COURT:  MEMBERS OF THE JURY, ARE YOU ABLE TO
19   WAIT?  IS ANYONE NOT ABLE TO WAIT?
20            YOU NEED TO LEAVE?                                 05:01
21            VERY GOOD.
22            WE'RE GOING TO HAVE TO RESUME WITH THIS ON JULY 1ST,
23   WHEN WE RESUME TESTIMONY.
24            YES, COUNSEL?
25            MR. GOLDSOBEL:  I'LL BE OUT OF TOWN, YOUR HONOR, ON A  05:02
```

3689

```
 1              HAVE A GOOD WEEK.  I'LL SEE YOU NEXT TUESDAY.

 2              THE CLERK:  COURT STANDS ADJOURNED.

 3

 4

 5

 6

 7

 8

 9

10                            CERTIFICATE

11

12   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
13   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
14   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.
15

16

17   THERESA A. LANZA, RPR, CSR             6-30-08
     OFFICIAL COURT REPORTER                _____
18                                            DATE

19

20

21

22

23

24

25
```

# EXHIBIT 23

Evidence Eliminator - What evidence is on your hard drive?                    Page 1 of 1



THE WORLD'S #1 PC SECURITY UTILITY

**THE MOVIE**          **ENTER SITE**

Buy protection for just $149.95 (US) that will defeat Forensic Analysis equipment costing over $7000.00 (US).

**Note:** This incredible bargain price cannot continue forever! Current prices should be regarded as temporary - **Buy now and save!**

This site uses MacroMedia Flash 4 plug-ins. Under Windows 98 your browser already has these plug-ins. If not, your browser will automatically load the plug-ins as you enter the site.

PLAINTIFF'S
EXHIBIT
13629
CV O4-9049 SGL

EX 13629-0001

EXHIBIT 23
PAGE 166

!!! NEW !!! HOT POWER UPGRADE FOR USERS OF WINDOWS XP/2000/NT4/ME/



**Did you know...** that the **government** and **police** are installing **black boxes** in ISPs to record your Internet surfing and downloads **for evidence?**

**Deleting "internet cache and history", will not protect you...** your PC is storing deadly evidence. Even **FORMATTING** the disk won't work.

All those **Web Pages, Pictures, Movies, Videos, Sounds, E-mail and Everything Else** you have ever viewed could easily be recovered - even many years later.

*Defend yourself!* Make your Internet access safer. Get yourself a truly clean and faster "Like New" PC!

▶ **Download Evidence Eliminator⸮ Now!**



**Click here** to see more Screenshots! or ▶ **Download Now!**

PROTECT YOUR JOB, PROPERTY, FAMILY, CAR, FRIENDS AND YOUR REPUTATION -
BEFORE IT'S TOO LATE!

**You are being watched...** how about your **Boss?** Do you surf the internet and send **E-mail** at work? Your work PC will be **full of evidence**. It is becoming common in the workplace for companies to copy and investigate the contents of workers computers

**Latest News**

**CLICK HERE TO
ACCESS BANNED
NEWSGROUPS!**

**Testimonials**

Just a few of the many letters of thanks we receive daily from satisfied customers around the world:

Seeing EE going through its comprehensive clean-up made me breathe so much easier. It is still the most worthwhile protection I have ever purchased for the computer. Your team is to be commended for the excellent product, support and upgrading. You haven't abandoned those of us who bought the product in its early stages and continued to use, enjoy and trust EE. RB, USA

Thank you for making a program that a person of my limited computer knowledge can use and understand... ...makes this something that anyone surfing the net should use. KG, USA

Wow!! That has to be the best online support I have ever had. A real person answered my mail, quickly. Thanks for making such a great product. KS, USA

I just downloaded and installed your product today. I love it! My 200 Mhz machine is noticeably faster and now has an additional 100+ meg of hard disk space available. I just ordered Evidence Eliminator this

EXHIBIT 23
PAGE 167

EX 13629-0002

out of hours - without your consent or knowledge. This is perfectly legal and it is happening **now!** Your job could be at risk, what would happen to you if you **lost your job?** People like you are losing their jobs right now because of their Internet activities in **America** and the **UK.**

According to an **APBNews** report, 73.5% of all companies **admit** they *"record and review their employees' communications and activities on the job."*

There is no need for you to play Russian roulette with your job, family, car, property and everything else that depends on it! Act now! We can help, **Evidence Eliminator™** can protect you from the dangers of the Internet! Download today with no risk, guaranteed. Act now! And transform your computer into a safe, clean and faster machine!

#### ▸ Get Evidence Eliminator and Be Safe!

⚠️ **CONSUMER SCAM ALERT** - Fraud artists target privacy consumers

False advertising has duped many consumers into buying worthless imitation software - "eraser / internet washers" that do not work - you might as well throw your money away. If you have recently been the victim of a scam by one of these fly-by-night outfits you are strongly urged to get your money back as quickly as possible, and not to use the software under any circumstances because it could even damage your hard disk! You don't have to take risks, make sure you accept only the authentic, original **Evidence Eliminator™** and be sure you are both 100% safe and secure!

Do you have an ex-spouse or ex-partner with a grudge against you, have you been "Grassed"? Has anyone ever put a floppy disk in your computer? Is someone after your job? Can you honestly say that you **really know for sure** what may have been accidentally downloaded or purposefully hidden on your PC?

Do your **children or their friends** use your computers? What have they downloaded and tried to delete?

Did you know for example that every click you make on Windows 98 Start Menu is logged and stored permanently on a hidden encrypted database within your own computer?

If you have a business, protect your workplace and computers with **Evidence Eliminator™.** Don't get investigated - **get protected!**

**Evidence Eliminator™** is proven to defeat the exact same forensic software as used by the US Secret Service, Customs Department and Los Angeles Police Department (LAPD).

**It is a proven fact...** routine Forensic Analysis equipment such as **EnCase** and **F.R.E.D.** used by Private and Business Investigators, Law-Enforcement and others, can recover evidence from parts of your hard drive that you thought were empty, **parts that you had cleaned.**



**Your hard drive might appear clean...** but still be full of **'sensitive material'** that you did not want to download in the first place and it might very well be a **Serious Criminal Offence** in your country to have that data stored on your computer even if you didn't know it was still there. **You could go to Jail!** Pressing 'Delete' or emptying your 'Recycle Bin' - or even 'Formatting' your disk - simply **will not work,** the

evening. This beats anything I've seen to date. Please keep up the good work!! RR, USA

...the program you have designed is simply excellent. nothing like it can compare. JG, USA

Great product  you need to get the message across more widely! Anyone with teenage sons knows how likely it is that something unwanted is lurking on the h/d.. ...Well - most impressive! Somehow the whole product had a certain 'aura of quality' about it and seemed worth buying... Seems I was right - money well spent! SC, UK

Just wanted to say "THANK YOU" for such a GREAT program. EE does an amazing job of finding and removing things I don't really want to leave on the equipment. I Also want to express my appreciation for the rapid response to my registration... ...FAST! I am looking forward to the updated version that is supposed to be released soon. Again, Thank you for an excellent product, quick registration, and ease of mind. RB, USA

It appears to be as useful as a system cleaner as it is a security program... ...I appreciate your response and follow-up. I've never seen any company follow up as well as you guys have. Thanks again! GB, USA

Evidence-Eliminator is the perfect tool for the casual or frequent internet user that makes purchases online. The safe and secure deletion of files that might possibly store financial information on one's hard drive can be wiped clean without fear of it being used or accessed dishonestly. Overall, an OUTSTANDING

EXHIBIT 23  PAGE 108   EX 13629-0003

**'sensitive material'** will still remain on your hard drive!

**You will be held responsible** for any data which you allow to remain on your computer, even if it was only by accident. Even files and **Internet Searches** you have made which you thought you had never "saved to disk" can be recorded as **permanent evidence** on your hard drive.

**Get total protection now...** If you do not use Evidence Eliminator™ your PC is "a ticking **Time Bomb** waiting to go off!" Only with **Evidence Eliminator™** can you get the protection you deserve, only then can you use your PC to explore the Internet with confidence.

The distinctive style and unsurpassed quality of **Evidence Eliminator™** and its rapid ongoing development and success have firmly established **Evidence Eliminator™** as the **world's premier** computer hard drive cleansing system!

**Evidence Eliminator™** is a powerful and easy-to-use program, no other commercially available program can do the same job. Every day, **Evidence Eliminator™** quickly and professionally deep cleans your computer of 'sensitive material', leaving you with a clean PC, a clean conscience and instant **peace of mind.**

**We are so confident** that you will want **Evidence Eliminator™** protecting you and your interests we can give you this unbeatable **Limited Time Special Offer!** Order and download **Evidence Eliminator™** software now and we will include **free** lifetime Technical Support and **free** extremely valuable lifetime Upgrades! There is no risk, you are protected by our 30 day money-back guarantee. Start to enjoy the benefits of a truly clean and faster "Like New" PC! Download today with no risk, guaranteed. **This incredible Limited Time Special Offer is guaranteed for today only and may be cancelled at any time!**

▶ **Download Now And Protect Yourself!**



**Click here** to see more Screenshots!

SPEED-UP YOUR PC AND INTERNET BROWSER - MAKE IT SAFER TO USE THE INTERNET!

program and worth every penny. I will spread the word with my colleagues about this fantastic way to make sure their computers are safe on an everyday basis. IG, USA

Even more amazing, is a software company that has such a positive and rapid trouble shooting team (an all too rare occurrence). I had a response within hours of my last e-mail to you. Congratulations on your professionalism and Customer Services. It is really impressive and appreciated. MM, USA

Until I tried this unique product I had spent several hours each week manually reducing the size of my registry and trying to eliminate the numerous and bloated entries that had accumulated each time I installed software or just spent time on the internet. GC, USA

It's about time that someone created software that performs multiple functions from one source and is user friendly. I can now delete all of the various items that were installed on my computer with the push of a button and let Evidence Eliminator do all of the work. I was running three different types of software and still did not get half of the results that were achieved the first time I used your product. Thanks, MW, USA

Your courtesy, kindness and prompt responses to my emails is wonderful and all too rare these days. Thanks again, sincerely. NC, USA

This is a great product - it takes care of essential cleanup & important system maintenance with one click. Thanks again. BI, USA

EXHIBIT 23   EX 13629-0004
PAGE 169

**Working deep below your Windows operating system...** Evidence Eliminator™ employs the exact same sector analysis technology as available in ultra-high-priced tools available to law-enforcement agencies, for example the **FBI**. After identifying and analyzing the unwanted data hidden in your drives, **Evidence Eliminator™** destroys it with **proven methods of secure disposal** similar to US Department of Defense standards for destruction of classified material.

**Award winning... Evidence Eliminator™** has been featured on TV, Radio shows, many top Magazines and has been decorated with high praise, admiration and awards:

*"I tested the software recently and was astonished at its thoroughness. It did wipe clean a ton of stuff... ...I was truly impressed"* Mark A. Kellner, "On Computers" Columnist, THE WASHINGTON TIMES Click here to read review

*"performs its stated goal admirably...Short of dousing it with gasoline and setting it ablaze, the only way to keep things spotless and shiny clean is with Evidence Eliminator."* Slaughterhouse.com "Pick Of the Day" Click here to read review

*"an ultra-powerful application... Evidence Eliminator keeps your system running fast and on the right side of the law... Evidence Eliminator really is an excellent program for protecting your privacy."* RocketDownload.com "5-Smileys Award" Click here to read review

*"it performs secure file wipes, making it all but impossible to recover data within... Evidence Eliminator is thorough yet very easy to set up and use"* ZDNet PC Magazine "5-Star Editors Pick" and "ZDNet 7th Annual Awards Finalist" Click here to read review

**The fact is...** your computer is spying on you and is filling up with evidence, only **Evidence Eliminator™** can protect and help you. In tests, **Evidence Eliminator™** defeats **EnCase** and other Forensic Analysis equipment as used by investigators, police and government agencies. So enjoy the benefits of our unbeatable **Limited Time Special Offer** and download yours now!

▸ **Webmasters: Click Here**

**To protect and to serve the public...** that is our mission! Employers, parents, surfers and Internet professionals from all over the world use, trust and depend upon **Evidence Eliminator™**'s state-of-the-art technology. Even the best Forensic Laboratory Analysis with electron microscopes is no match for **Evidence Eliminator™**'s formidable display of new, innovative, World-Leading data destruction technologies.

**Whatever reasons you have...** for needing **Evidence Eliminator™**, one thing is for sure - downloading **Evidence Eliminator™** will be the most important thing you have ever done. Act now, try it risk free, and transform your computer into a safe, clean and faster machine!

**Easy to use...** Evidence Eliminator™ is the essential one-click user-friendly technology for the security-conscious surfer. If you use just one program on your PC - make it **Evidence Eliminator™** before it's too late!

▸ **Download Evidence Eliminator™ right now - Click Here!**

▸ **Click Here** for information on downloading and our **Incredible Special Offer.**

Hi guys.. for starters, I love this program...
...Not only does it give you peace of mind by deleting garbage that could hang around for months, it also keeps my hard drives clean of unwanted files. JC, USA

This is to me THE best software program ever introduced to the public!... .. It has been such a pleasure to use. I am telling my family and friends about your wonderful product... ... I was so impressed by the program I purchased mine as soon as I could. Thank you for not only your product, but also for the most actively involved Technical Support anywhere in cyberspace!! My sincere gratitude to you all. DT, USA

I'm truly amazed that you can provide this sort of quality at the price you charge. Best wishes. JC, USA

Thank you for everything this is the kind of program that I will use forever. RB, USA

Don't miss out! Act now and enjoy the benefits of our unbeatable Limited Time Special Offer!

AS SEEN ON

Webmasters & ISPs: We will pay you to link to us. Join our Associate Program
Trademarks, Terms & Copyright

Click here to **BUY NOW**

EXHIBIT 23       EX 13629-0005
PAGE 170

**Evidence Eliminator™ recommends alibis.com**
uncensored newsgroups. Access banned
newsgroups now, you'll be amazed what you can
find - **Click Here**

Click Here!



**Click Here!**

EX 13629-0006

EXHIBIT 23
PAGE 171

# EXHIBIT 24

2525

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3                        EASTERN DIVISION

4                          - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                          - - -

7   MATTEL, INC.,                    )
                                     )
8                    PLAINTIFF,      )
                                     )
9            VS.                     )   NO. CV 04-09049
                                     )
10  MGA ENTERTAINMENT, INC., ET. AL.,)
                                     )
11                   DEFENDANTS.     )   TRIAL DAY 13
    _____)   MORNING SESSION
12  AND CONSOLIDATED ACTIONS,        )   PAGES 2525-2601
    _____)

13

14

15       REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16                    RIVERSIDE, CALIFORNIA

17                   FRIDAY, JUNE 13, 2008

18                       9:50 A.M.

19

20

21

22

23              THERESA A. LANZA, RPR, CSR
               FEDERAL OFFICIAL COURT REPORTER
24              3470 12TH STREET, RM. 134
               RIVERSIDE, CALIFORNIA  92501
25                   951-274-0844
                 WWW.THERESALANZA.COM          EXHIBIT 24
                                               PAGE 172

2526

```
 1  APPEARANCES:

 2
    ON BEHALF OF MATTEL, INC.:
 3
                             QUINN EMANUEL
 4                           BY:   JOHN QUINN
                                   JON COREY
 5                                 MICHAEL T. ZELLER
                                   HARRY OLIVAR
 6                                 TIMOTHY ALGER
                             865 S. FIGUEROA STREET,
 7                           10TH FLOOR
                             LOS ANGELES, CALIFORNIA  90017
 8

 9

10  ON BEHALF OF MGA ENTERTAINMENT:

11                           SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                             BY:   THOMAS J. NOLAN
12                                 JASON RUSSELL
                                   RAOUL KENNEDY
13                                 LAUREN AGUIAR
                                   CARL ROTH
14                           300 SOUTH GRAND AVENUE
                             LOS ANGELES, CALIFORNIA  90071-3144
15                           213-687-5000

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 24
PAGE 173

2527

```
 1                        I N D E X

 2                                              PAGE

 3    PLAINTIFF CASE (CONTINUED)...................  2535

 4

 5

 6    PLAINTIFF
      WITNESS          DIRECT       CROSS     REDIRECT     RECROSS
 7    CARTER BRYANT  (CONTINUED)

 8    BY MR. PRICE     2535

 9

10

11          EXHIBITS           RECEIVED

12          11904              2547
            11905              2550
13           5023              2584
             504               2592
14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 24
PAGE 174

1  2002, YOU KNEW THAT MGA WOULD GET A GRACE PERIOD; RIGHT?

2  A    AGAIN, I HAD VERY LITTLE UNDERSTANDING OF THIS DOCUMENT.

3  Q    LETS GO BACK TO YOUR DECLARATION, THEN, THE FIRST PAGE.

4        YOU KNOW FOR A FACT THAT BRATZ DOLLS HAVE THE STRAP-

5  TYPE SHOES AND THE DOLLS HAVE A SNAP-ON FEATURE AT ABOUT THE        12:04

6  ANKLE SO THAT DIFFERENT FOOT GEAR MAY BE MOUNTED ON THE DOLL;

7  WHERE THE STRAP-TYPE SHOES, THE COLORING OF THE SKIN TONE ON

8  THE EXPOSED AREA OF THE FEET ARE MATCHED TO THE COLORING OF THE

9  LOWER LEGS OF THE DOLL -- YOU KNEW THAT DOLLS WITH ALL OF THOSE

10  FEATURES WERE SOLD IN 2001.                                        12:04

11  A    YES.

12  Q    THAT WAS YOUR UNDERSTANDING AS TO THE FIRST RELEASE DATE

13  FOR DOLLS WITH EVERY FEATURE THAT'S IN PARAGRAPH THREE; RIGHT?

14        MR. NOLAN:   OBJECTION, YOUR HONOR WITH RESPECT TO

15  FOUNDATION.                                                        12:04

16        MR. PRICE:   NO SPEAKING OBJECTIONS, YOUR HONOR.

17        MR. NOLAN:   FOUNDATION; IT ALSO MISSTATES THE

18  DOCUMENT.

19        THE COURT:   OVERRULED.

20        THE WITNESS:   I MEAN, YEAH.  AS FAR AS THAT PARAGRAPH       12:04

21  GOES, I THINK I UNDERSTOOD THAT.

22  BY MR. PRICE:

23  Q    AND BECAUSE OF THE OBJECTION, I JUST WANT TO MAKE SURE

24  THAT WE UNDERSTAND.

25        YOU UNDERSTOOD THAT WHAT WAS DESCRIBED IN                    12:05

EXHIBIT 24
PAGE 175

```
 1   PARAGRAPH THREE, WERE RELEASED IN 2001.
 2   A    YES.  I THINK I UNDERSTOOD THAT.
 3   Q    NOW LET'S GO TO THE SECOND PAGE OF YOUR DECLARATION, THEN.
 4            HERE YOU SAY "I WAS ACTIVELY INVOLVED WITH THE
 5   RELEASE OF THE BRATZ DOLLS OF THE CONFIGURATION AS SET FORTH IN   12:05
 6   PARAGRAPH THREE ABOVE."
 7            WAS THAT STATEMENT TRUE, THAT YOU WERE ACTIVELY
 8   INVOLVED IN THE RELEASE OF THE BRATZ DOLLS AS DESCRIBED IN
 9   PARAGRAPH THREE?
10   A    YES.                                                         12:05
11   Q    AND THEN YOU SAID, UNDER PENALTY OF PERJURY, UNDER OATH,
12   "THIS RELEASE DID NOT OCCUR UNTIL THE FALL OF THE YEAR 2002."
13            DO YOU SEE WHERE YOU SAID THAT?
14   A    YES.
15   Q    THAT'S A FALSE STATEMENT, ISN'T IT?                          12:05
16   A    WELL, LOOKING BACK AT IT NOW, YOU KNOW, I SUPPOSE THAT
17   MAYBE IT IS.  BUT AGAIN, I HAD VERY LIMITED KNOWLEDGE OF THIS
18   DOCUMENT.  IT WASN'T REALLY EXPLAINED TO ME WHY THEY WERE
19   ASKING FOR IT, YOU KNOW, AND I REMEMBER JUST GOING THROUGH THIS
20   DOCUMENT RATHER QUICKLY.                                          12:06
21   Q    YOU MADE THIS STATEMENT -- LET'S GO BACK.
22            YOU KNOW THAT STATEMENT IS FALSE; CORRECT?  THE
23   STATEMENT THAT THE DOLLS, THE CONFIGURATION AS SET FORTH IN
24   PARAGRAPH THREE, THAT THE RELEASE DIDN'T OCCUR UNTIL THE FALL
25   OF 2002.  YOUR UNDERSTANDING IS THAT'S FALSE.                     12:06
```

EXHIBIT 24
PAGE 176

2598

| 1 | A    WELL, I MEAN, IT SEEMS LIKE IT, YES. | |
| 2 | Q    AND YOU WERE MAKING THIS STATEMENT TO THE FEDERAL PATENT | |
| 3 | OFFICE; RIGHT? | |
| 4 | A    I REALLY DIDN'T KNOW THAT. | |
| 5 | Q    WELL, LET'S GO TO THE FIRST PAGE HERE. | 12:07 |
| 6 | YOU SEE IT SAYS, "MAIL STOP, NON FEE AMENDMENT, | |
| 7 | COMMISSIONER FOR PATENTS, P.O. BOX 1450, ALEXANDRIA, VIRGINIA, | |
| 8 | 22313-1450." | |
| 9 | DO YOU SEE THAT? | |
| 10 | A    YES. | 12:07 |
| 11 | Q    YOU KNEW THIS WAS GOING TO THE PATENT OFFICE; RIGHT? | |
| 12 | A    I REALLY DON'T RECALL HAVING THAT KNOWLEDGE. | |
| 13 | Q    WELL, ASSUMING YOU READ THIS AT THE TIME BEFORE SIGNING IT | |
| 14 | UNDER PENALTY OF PERJURY, YOU WOULD HAVE KNOWN THEN IT WAS | |
| 15 | GOING TO THE PATENT OFFICE; RIGHT? | 12:07 |
| 16 | A    NO.  NOT NECESSARILY. | |
| 17 | Q    WHY NOT NECESSARILY?  WHY, IF YOU GOT THIS, YOU WERE ASKED | |
| 18 | TO SIGN IT UNDER PENALTY OF PERJURY, WHY WOULD YOU NOT HAVE | |
| 19 | KNOWN IT WAS GOING TO THE PATENT OFFICE? | |
| 20 | A    WELL, I DON'T REALLY THINK, FIRST OF ALL, THAT I | 12:07 |
| 21 | UNDERSTOOD THIS WAS UNDER PENALTY OF PERJURY.  YOU KNOW, AT | |
| 22 | THIS TIME I WAS NOT FAMILIAR WITH THESE TYPE OF DECLARATIONS, | |
| 23 | AND I, YOU KNOW -- IT WAS JUST SOMETHING THAT I WAS ASKED TO | |
| 24 | SIGN.  AND, YOU KNOW, I TRIED TO UNDERSTAND IT AS BEST I COULD. | |
| 25 | Q    SO YOU DIDN'T UNDERSTAND THAT BEFORE YOU PUT YOUR | 12:08 |

EXHIBIT 24

PAGE - 177

2599

1   SIGNATURE THERE, THAT YOU WERE DECLARING THAT "ALL OF THE

2   STATEMENTS MADE HEREIN OF MY OWN KNOWLEDGE ARE TRUE AND THAT

3   ALL STATEMENTS MADE ON INFORMATION AND BELIEF ARE BELIEVED TO

4   BE TRUE, AND, FURTHER, THAT THESE STATEMENTS WERE MADE WITH THE

5   KNOWLEDGE THAT WILLFUL FALSE STATEMENTS, THE LIKE, SO MADE ARE          12:08

6   PUNISHABLE BY FINE OR IMPRISONMENT OR BOTH UNDER SECTION 1001

7   OF TITLE 18 OF THE UNITED STATES CODE, AND THAT SUCH WILLFUL

8   FALSE STATEMENTS MAY JEOPARDIZE THE VALIDITY OF THE APPLICATION

9   OR ANY PATENT APPLICATION ISSUING THEREON."

10         YOU READ THAT BEFORE YOU SIGNED IT; RIGHT?                        12:08

11  A    YOU KNOW, YEAH, I THINK I SKIMMED OVER IT.

12  Q    AND SO AT LEAST AS OF THE DATE OF THIS DECLARATION, YOU

13  WERE WILLING TO STATE UNDER OATH A FALSE DATE SO THAT MGA COULD

14  HAVE PROPERTY RIGHTS, PATENT RIGHTS; YOU WERE WILLING TO DO

15  THAT; RIGHT?                                                            12:09

16  A    YOU KNOW, I DON'T RECALL AT THAT TIME BELIEVING THAT THIS

17  WAS A FALSE STATEMENT.  YOU KNOW, LOOKING AT IT NOW, PERHAPS IT

18  WAS.  BUT AT THAT TIME, NO, I DID NOT BELIEVE THAT.

19  Q    IS THERE ANY REASON YOU BELIEVE THAT -- AT THE TIME YOU

20  SIGNED THIS STATEMENT, YOU KNEW THAT THE DOLLS, WHICH HAD ALL           12:09

21  OF THE FEATURES DESCRIBED IN PARAGRAPH THREE, HAD BEEN RELEASED

22  IN 2001; RIGHT?

23  A    YEAH.  I HAD A GENERAL UNDERSTANDING OF THAT.

24  Q    SO AT THE TIME YOU SIGNED THIS STATEMENT, YOU KNEW THAT

25  WHAT YOU SAID IN PARAGRAPH FOUR WAS FALSE, WHICH IS THAT THEY           12:09

EXHIBIT    24

PAGE   178

2601

1                           CERTIFICATE

2

3    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
4    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
5    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

6

7

8    THERESA A. LANZA, RPR, CSR                    6-15-08
     OFFICIAL COURT REPORTER                        DATE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                            EXHIBIT  24
                                            PAGE  179

FRIDAY, JUNE 13, 2008              TRIAL DAY 13, MORNING SESSION