# EXHIBIT 28

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 29

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 30

3191

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                    ---

4     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5                    ---

6   MATTEL, INC.,                    :   PAGES 3191 - 3319
                                     :
7          PLAINTIFF,              , :
                                     :
8       VS.                          :   NO. ED CV04-09049-SGL
                                     :   [CONSOLIDATED WITH
9   MGA ENTERTAINMENT, INC.,         :   CV04-9059 & CV05-2727]
    ET AL.,                          :
10                                   :
           DEFENDANTS.               :
11  _____

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               RIVERSIDE, CALIFORNIA

17             FRIDAY, JUNE 20, 2008

18               JURY TRIAL - DAY 16

19                MORNING SESSION

20

21

22                              MARK SCHWEITZER, CSR, RPR, CRR
    CERTIFIED                    OFFICIAL COURT REPORTER
23                               UNITED STATES DISTRICT COURT
    COPY                         181-H ROYBAL FEDERAL BUILDING
24                               255 EAST TEMPLE STREET
                                 LOS ANGELES, CALIFORNIA 90012
25                               (213) 663-3494

EXHIBIT 30
PAGE 287

1 | **Appearances of Counsel:**

2

3 | On Behalf of Mattel:

4 |     Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
            By John B. Quinn, Esq.
5 |         B. Dylan Proctor, Esq.
            Michael T. Zeller, Esq.
6 |         Harry Olivar, Esq.
            John Corey, Esq.
7 |         Diane Hutnyan, Esq.
            William Price, Esq.
8 |     855 South Figueroa Street
        10th Floor
9 |     Los Angeles, CA 90017
        (213) 624-7707
10

11

12 | On Behalf of MGA Entertainment:

13 |     Skadden, Arps, Slate, Meagher & Flom LLP
            By Thomas J. Nolan, Esq.
14 |        Carl Alan Roth, Esq.
            Jason Russell, Esq.
15 |        Lauren Aguiar, Esq.
            David Hansen, Esq.
16 |        Matthew Sloan, Esq.
            Robert Herrington, Esq.
17 |     300 South Grand Avenue
        Los Angeles, CA 90071-3144
18 |     (213) 687-5000

19

20

21

22

23

24

25

EXHIBIT 30
PAGE 288

 1  document that under the protective order was supposed to have
 2  been destroyed back in March. And we cite to the case, your
 3  Honor, of Lazar versus Mauney at page 3, footnote 3, that
 4  disclosing the contents of an inadvertently produced
 5  privileged document is not the best course of practice
 6  expected of lawyers practicing.

 7          This document, the contents of it, had been
 8  mentioned on the public record. It was done in -- at a
 9  sidebar conference again this morning, and I think I needed
10  to point that out.

11          THE COURT: Very well.

12          MR. NOLAN: Thank you very much.

13          MR. QUINN: We don't have a copy of the document.
14  And I have not mentioned its contents this morning. It must
15  be the case that even a clawed back document can be
16  challenged. And what caused us to bring this was getting the
17  document production from Ms. Glaser showing for the first
18  time a copy of the contract with the date whited out, which
19  we got, just a matter of two weeks before we filed the
20  motion.

21          So in terms of timing, your Honor, that's why it
22  was brought when it was brought.

23          There hasn't been any mention, and wholly apart
24  from the crime fraud, is the issue of waiver. They have
25  produced or sought to offer communications with Mr. Rosembaum

EXHIBIT 30
PAGE 289

1    in the middle of trial, which all of this time were on a

2    privilege log and were withheld from us, and we couldn't

3    follow up --

4                 THE COURT:    Counsel, the Court has not allowed

5    those documents in.

6                 MR. QUINN:    The Court hasn't, but it's quoted in

7    their brief.    They rely on it.

8                 THE COURT:    It's not before the jury.

9                 MR. QUINN:    All right.

10                 THE COURT:    Very well.    Before I rule on that,

11   there's two other documents that were brought to the Court's

12   attention.    One was an exhibit that Mattel believed we needed

13   to have a ruling on before we get through these last

14   witnesses and they rest.    And that was Exhibits 13380 and

15   13381.    These are e-mail communications between Mr. Larian

16   and his brother.

17                 I would like someone from Mattel to identify for

18   the Court specifically what portions of these that they

19   believe to be relevant.    There's a lot of language in here

20   which is of concern to the Court in terms of its prejudicial

21   impact.    And I suspect everybody in this room has said things

22   about a relative or a brother or sister or mother or child

23   that they probably didn't mean exactly what they said, and we

24   sometimes use language with family members carelessly.

25                 MR. ZELLER:    And I think that's a fair comment.    I


EXHIBIT 30
PAGE 290

     1   would say this, however, your Honor, is that Fred Larian was

     2   also an executive of MGA.  This was in the context of a

     3   business communication.  And not only was he an executive for

     4   MGA for quite some time, but even after he left MGA as an

     5   executive, he was a paid consultant for many years, all the

     6   way, as far as we know, up to the end of 2005.

     7            THE COURT:  I do appreciate that.  That's why I'm

     8   not just categorically saying this is off, but I'd like you

     9   to identify precisely these two documents, what it is that

    10   you think is relevant.

    11            MR. ZELLER:  And I think one is more easily

    12   explainable than the other.

    13            THE COURT:  Okay.

    14            MR. ZELLER:  So let me start with perhaps the

    15   easier one.

    16            THE COURT:  All right.

    17            MR. ZELLER:  And that is the e-mail where Farhad

    18   repeats what he says was an instruction by Isaac Larian to

    19   withhold the originals of documents in the Fireman's Fund

    20   litigation.

    21            THE COURT:  This is in the ABC International

    22   Traders stock certificate?

    23            MR. ZELLER:  No, that's the other e-mail, your

    24   Honor.

    25            THE COURT:  You're referring to 13380.

EXHIBIT 30
PAGE 291

3319

1

2

3

4

5

6

7                        C E R T I F I C A T E

8

9

10          I hereby certify that pursuant to Title 28,

11  Section 753 United States Code, the foregoing is a true and

12  correct transcript of the stenographically reported

13  proceedings in the above matter.

14          Certified on June 20, 2008.

15

16

17          MARK SCHWEITZER, CSR, RPR, CRR
            Official Court Reporter
18          License No. 10514

19

20

21

22

23

24

25

EXHIBIT   30
PAGE  292

# EXHIBIT 31



1

2

3

4

5

6

7

8

9

10

**FILED**
CLERK, U.S. DISTRICT COURT

JUL 10 2008

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION         BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| 11 MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| 12        Plaintiff, | Consolidated with<br>Case No. CV 04-09059 |
| 13    vs. | Case No. CV 05-02727 |
| 14 | Hon. Stephen G. Larson |
| 15 MGA ENTERTAINMENT, INC., | |
| 16      Defendant. | **FINAL JURY INSTRUCTIONS AS GIVEN** |
| 17 | |
| 18 AND CONSOLIDATED ACTIONS | |

19

20

21

22

23

24

25

26

27

28

EXHIBIT 31
PAGE 293

## JURY INSTRUCTION NO. 1

1

2

3     Members of the Jury: Now that you have heard all of the evidence and will
4  soon hear the arguments of the attorneys, it is my duty to instruct you as to the law
5  of the case.

6

7     A copy of these instructions will be sent with you to the jury room when you
8  deliberate.

9

10     You must not infer from these instructions or from anything I may say or do
11  as indicating that I have an opinion regarding the evidence or what your verdict
12  should be.

13

14     It is your duty to find the facts from all the evidence in the case. To those
15  facts you will apply the law as I give it to you. You must follow the law as I give
16  it to you whether you agree with it or not. And you must not be influenced by any
17  personal likes or dislikes, opinions, prejudices, or sympathy. That means that you
18  must decide the case solely on the evidence before you. You will recall that you
19  took an oath to do so.

20

21     In following my instructions, you must follow all of them and not single out
22  some and ignore others; they are all important.

23

24

25

26

27

28



EXHIBIT 31
PAGE 294

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 2

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

In criminal trials, the prosecution must prove that the defendant is guilty beyond a reasonable doubt. But in civil trials, such as this one, the party who is required to prove something by a preponderance of the evidence need prove only that it is more likely to be true than not true.

EXHIBIT 31
PAGE 295

-2-

## JURY INSTRUCTION NO. 3

The law defines cause in its own particular way.  A cause of injury, damage, loss or harm is something that is a substantial factor in bringing about an injury, damage, loss or harm.

A "substantial factor" is something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result.



1

## **JURY INSTRUCTION NO. 4**

2

3

4     You should decide the case as to each defendant separately.  Unless

5   otherwise stated, the instructions apply to all parties.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 31
PAGE 297

## JURY INSTRUCTION NO. 5

The evidence you are to consider in deciding what the facts are consists of:

(1) The sworn testimony of any witness;

(2) The exhibits which are received into evidence; and

(3) Any facts to which the lawyers have agreed.

EXHIBIT 31
PAGE 298

1
2

### JURY INSTRUCTION NO. 6

3
4    In reaching your verdict, you may consider only the testimony and exhibits
5 received into evidence. Certain things are not evidence, and you may not consider
6 them in deciding what the facts are. I will list them for you.

7
8    (1)    Arguments and statements by lawyers are not evidence. The lawyers
9        are not witnesses. What they have said in their opening statements, closing
10       arguments, and at other times is intended to help you interpret the evidence,
11       but it is not evidence. If the facts as you remember them differ from the way
12       the lawyers have stated them, your memory of them controls.

13
14   (2)    Questions and objections by lawyers are not evidence. Attorneys
15       have a duty to their clients to object when they believe a question is
16       improper under the rules of evidence. You should not be influenced by the
17       objection or by the court's ruling on it.

18
19   (3)    Testimony that has been excluded or stricken, or that you have been
20       instructed to disregard, is not evidence and must not be considered. In
21       addition sometimes testimony and exhibits are received only for a limited
22       purpose; when I have given a limiting instruction, you must follow it.

23
24   (4)    Anything you may have seen or heard when the court was not in
25       session is not evidence. You are to decide the case solely on the evidence
26       received at the trial.

27
28

EXHIBIT 31
PAGE 299

-6-                     Case No. Case No. CV 04-9049 SGL (RNBx)
                        JOINT PROPOSED JURY INSTRUCTIONS

1
2                          <u>**JURY INSTRUCTION NO. 7**</u>
3
4          Some evidence may be admitted for a limited purpose only.
5
6          When I instruct you that an item of evidence has been admitted for a limited
7    purpose, you must consider it only for that limited purpose and for no other.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27                                                        EXHIBIT  3 1
28                                                        PAGE  300

1

## JURY INSTRUCTION NO. 8

2

3

4       Evidence may be direct or circumstantial.  Direct evidence is direct proof of

5  a fact, such as testimony by a witness about what that witness personally saw or

6  heard or did.  Circumstantial evidence is proof of one or more facts from which

7  you could find another fact.  You should consider both kinds of evidence.  The law

8  makes no distinction between the weight to be given to either direct or

9  circumstantial evidence.  It is for you to decide how much weight to give to any

10  evidence.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 31
PAGE 301

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 9

If weaker and less satisfactory evidence is offered by a party, when it was within that party's ability to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust.

EXHIBIT  31
PAGE  302

1

## JURY INSTRUCTION NO. 10

2

3

4    In deciding the facts in this case, you may have to decide which testimony to

5    believe and which testimony not to believe.  You may believe everything a witness

6    says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the

7    number of witnesses who testify about it.

8

9    In considering the testimony of any witness, you may take into account:

10

11    (1)    the opportunity and ability of the witness to see or hear or know

12    the things testified to;

13

14    (2)    the witness's memory;

15

16    (3)    the witness's manner while testifying;

17

18    (4)    the witness's interest in the outcome of the case and any bias or

19    prejudice;

20

21    (5)    whether other evidence contradicted the witness's testimony;

22

23    (6)    the reasonableness of the witness's testimony in light of all the

24    evidence; and

25

26    (7)    any other factors that bear on believability.

27    EXHIBIT  31

28    PAGE  303

1      The weight of the evidence as to a fact does not necessarily depend on the

2  number of witnesses who testify about it.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                    EXHIBIT  31

28                                                    PAGE  304

Case No. Case No. CV 04-9049 SGL (RNBx)
                                          JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 11

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess. Please understand that while you were waiting, we were working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum. I did not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

EXHIBIT __31__
PAGE __305__

-12-

## JURY INSTRUCTION NO. 12

The parties have agreed to certain facts to be placed in evidence. You should therefore treat these facts as having been proved.

EXHIBIT 31
PAGE 306

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 13

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The depositions of a number of witnesses were taken in this case. You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

EXHIBIT  31
PAGE  307

## JURY INSTRUCTION NO. 14

The evidence that a witness has lied under oath on a prior occasion or given inconsistent testimony under oath may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

EXHIBIT 31
PAGE 30B

1

## JURY INSTRUCTION NO. 15

2

3

4      Evidence has been presented to you in the form of answers of one of the

5   parties to written interrogatories submitted by the other side.  These answers have

6   been given in writing and under oath, before the actual trial, in response to

7   questions that were submitted in writing under established court procedures.  You

8   should consider the answers, insofar as possible, in the same way as if they were

9   made from the witness stand by the party that responded to the written

10   interrogatories.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT  31
PAGE  309

-16-

## JURY INSTRUCTION NO. 16

1

2

3    Evidence has been presented to you in the form of admissions of one of the

4  parties to written requests submitted by the other side.  These answers have been

5  given in writing and under oath, before the actual trial, in response to requests that

6  were submitted in writing under established court procedures.  The matters

7  admitted are deemed conclusively established as to the party that made the

8  admission.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                    EXHIBIT  31

28                                                    PAGE   310

## JURY INSTRUCTION NO. 17

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

EXHIBIT 31
PAGE 311

-18-

1
2
## <u>JURY INSTRUCTION NO. 18</u>
3

4      Certain charts and summaries not received in evidence have been shown to
5  you in order to help explain the contents of books, records, documents, or other
6  evidence in the case.  They are not themselves evidence or proof of any facts.  If
7  they do not correctly reflect the facts or figures shown by the evidence in the case,
8  you should disregard these charts and summaries and determine the facts from the
9  underlying evidence.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT  31
PAGE  312

Case No. Case No. CV 04-9049 SGL (RNBx)
                                    JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 19

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

EXHIBIT 31
PAGE 313

## <u>JURY INSTRUCTION NO. 20</u>

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

EXHIBIT **31**

PAGE **314**

-21-

## JURY INSTRUCTION NO. 21

1
2
3      In its first claim, Mattel contends that it has certain rights to all Bratz-
4 related ideas, concepts, drawings, designs, and other works "conceived or reduced
5 to practice," that is, created, by Carter Bryant, alone or jointly with others, while he
6
7 was employed by Mattel, including Bratz drawings and the idea for the name
8 "Bratz."
9
10
11     MGA and Isaac Larian deny Mattel's contention.
12
13
14     Mattel's claim is based on a contract between Carter Bryant and Mattel
15 called the "Employee Confidential Information and Inventions Agreement" or
16 simply the "Inventions Agreement." As a matter of law, the Inventions Agreement
17 is a valid and enforceable agreement.
18
19
20     Section 2(a) of the Inventions Agreement provides:
21
22
23     "I agree to communicate to the Company as promptly and fully as
24 practicable all inventions [as defined below] conceived or reduced to practice by
25 me (alone or jointly [with] others) at any time during my employment by the
26
27 Company. I hereby assign to the Company and/or its nominees all my right, title
28

EXHIBIT __31__
PAGE __315__

1   and interest in such inventions, and all my right, title and interest in any patents,

2   copyrights, patent applications or copyright applications based thereon. I will

3   assist the Company and/or its nominees (without charge but at no expense to me)

4

5   at any time in every proper way to obtain for its and/or their own benefit, patents,

6   and copyrights for all such inventions anywhere in the world and to enforce its

7   and/or their rights in legal proceedings."

8

9

10      The Inventions Agreement defines the term "inventions" as follows:

11

12      "[T]he term 'inventions' includes, but is not limited to, all discoveries,

13   improvements, processes, developments, designs, know-how, data computer programs

14   and formulae, whether patentable or unpatentable."

15

16       To prevail on its first claim, Mattel must show, by the preponderance of the

17   evidence, that any particular Bratz-related idea, concept, drawing, design or work was

18   "conceived or reduced to practice," that is, created, by Mr. Bryant, alone or jointly

19   with others, while employed by Mattel.

20

21      It is for you to decide what, if any, Bratz-related works were created by Mr.

22   Bryant, alone or jointly with others, while he was employed by Mattel.

23

24

25

26

27

28

## JURY INSTRUCTION NO. 22

In its second claim, Mattel contends that that MGA and Isaac Larian intentionally interfered with the Inventions Agreement between Mattel and Carter Bryant. To establish this claim, Mattel must prove the following by a preponderance of the evidence:

1.  That there was a contract or contracts between Mattel and Carter Bryant;

2.  That MGA and/or Mr. Larian knew of the contract;

3.  That MGA and/or Mr. Larian intended to disrupt the performance of this contract;

4.  That the conduct of MGA and/or Mr. Larian prevented performance or made performance more difficult;

5.  That Mattel was harmed in some way; and

EXHIBIT 31
PAGE 317

1     6.    That the conduct of MGA and/or Mr. Larian was a substantial factor

2   in causing Mattel's harm.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 31
PAGE 318

## JURY INSTRUCTION NO. 23

As a matter of law, there was a valid contract between Mattel and Mr. Bryant, namely the Inventions Agreement.

As a matter of law, Mr. Bryant directly competed with Mattel by entering into a contract with MGA, Mattel's competitor, to produce a competing product while he was still employed by Mattel. Whether the remaining requirements of Mattel's claim for intentional interference with contractual relations have been satisfied or not is for you to decide.

It is also a matter of law that MGA and/or Isaac Larian's mere offering of employment to Carter Bryant would not be sufficient, by itself, to establish an intentional interference with the contract between Mattel and Mr. Bryant.

EXHIBIT 31
PAGE 319

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

1

## JURY INSTRUCTION NO. 24

2

3       In deciding whether MGA or Isaac Larian acted intentionally, you may

4

consider whether they knew that a disruption in the performance of a contract or

5

6     contracts was substantially certain to result from their conduct.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                              EXHIBIT __31__

28                                              PAGE __320__

## JURY INSTRUCTION NO. 25

In its third and fourth claims, Mattel contends that MGA and Isaac Larian aided and abetted Carter Bryant's breaches of (1) his fiduciary duty to Mattel and (2) his duty of loyalty to Mattel. To establish that MGA and/or Mr. Larian are liable for aiding and abetting breaches of fiduciary duty or breach of the duty of loyalty, Mattel must prove the following by a preponderance of the evidence:

1.    Mr. Bryant's conduct constituted a breach of such duty or duties;

2.    MGA and/or Mr. Larian knew that Mr. Bryant's conduct constituted a breach of duty or duties; and

3.    MGA and/or Mr. Larian gave substantial assistance or encouragement to Mr. Bryant to breach his duty or duties.



EXHIBIT 31
PAGE 321

## JURY INSTRUCTION NO. 26

To establish that Mr. Bryant breached his fiduciary duty to Mattel, Mattel must prove the following by a preponderance of the evidence:

1.     That Mr. Bryant owed a fiduciary duty to Mattel;

2.     That Mr. Bryant breached his fiduciary duty to Mattel;

3.     That Mattel did not give informed consent to Mr. Bryant's conduct;

4.     That Mattel was harmed in some way; and

5.     That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

Once a party assumes a fiduciary duty to another, that party is obligated to act on behalf of the other party, to hold the interest of the other paramount over his own interests, and to take no action that would further his interests over the other person's interest.

EXHIBIT 31
PAGE 322

## JURY INSTRUCTION NO. 27

To establish that Mr. Bryant breached his duty of loyalty to Mattel, Mattel must prove the following by a preponderance of the evidence:

1.    That Mr. Bryant was Mattel's employee;

2.    That Mr. Bryant knowingly acted against Mattel's interests while he was employed by Mattel;

3.    That Mattel did not give informed consent to Mr. Bryant's conduct;

4.    That Mattel was harmed in some way; and

5.    That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

An employee owes his or her employer a duty of loyalty. The scope of the employee's duty varies with the nature of the employee's relationship with his employer.

EXHIBIT __31__
PAGE __303__

-30-

## JURY INSTRUCTION NO. 28

As a matter of law, Carter Bryant owed both a fiduciary duty and duty of loyalty to Mattel.

Mr. Bryant's fiduciary duty to Mattel is predicated upon paragraph 1(a) of the Inventions Agreement and is related to Mr. Bryant's obligation to keep Proprietary Information confidential.

Section 1(a) of the Inventions Agreement provides:

"I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust."

The Inventions Agreement defines the term "Proprietary Information" as follows:

EXHIBIT 31
PAGE 324

-31-                    Case No. Case No. CV 04-9049 SGL (RNBx)
                        JOINT PROPOSED JURY INSTRUCTIONS

"'Proprietary Information' means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors, and other persons and entities with whom the Company does business."

As a matter of law, Mr. Bryant breached his duty of loyalty to Mattel when he entered into a contract with MGA, Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.

At the same time, merely seeking employment from a competitor, and a failure to notify an employer of a decision to seek new employment until a decision is final, does not constitute a breach of duty of loyalty.

EXHIBIT 31
PAGE 325

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

## JURY INSTRUCTION NO. 29

In its final claim, Mattel contends that MGA, MGA Entertainment (HK) Limited, and Isaac Larian wrongfully exercised control over Mattel's property, including tangible Bratz-related works such as Mr. Bryant's drawings. To establish this claim for conversion, Mattel must prove the following by a preponderance of the evidence:

    1.    That tangible property was "conceived or reduced to practice" --- that is, created --- by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000);

    2.    That any of the defendants intentionally took possession of such property for a significant period of time;

    3.    That Mattel did not consent;

    4.    That Mattel was harmed; and

    5.    That any one of the defendant's conduct was a substantial factor in causing Mattel's harm.

EXHIBIT 31
PAGE 326

Case No. Case No. CV 04-9049 SGL (RNBx)
JOINT PROPOSED JURY INSTRUCTIONS

1
2
3

### JURY INSTRUCTION NO. 30

4
5
6

When you begin your deliberations, you should elect one member of the jury
as your presiding juror. That person will preside over the deliberations and speak
for you here in court.

7
8
9
10
11

You will then discuss the case with your fellow jurors to reach agreement if
you can do so. Your verdict must be unanimous.

12
13
14
15

Each of you must decide the case for yourself, but you should do so only
after you have considered all of the evidence, discussed it fully with the other
jurors, and listened to the views of your fellow jurors.

16
17
18

Do not hesitate to change your opinion if the discussion persuades you that
you should. Do not come to a decision simply because other jurors think it is right.

19
20
21
22
23

It is important that you attempt to reach a unanimous verdict but, of course,
only if each of you can do so after having made your own conscientious decision.
Do not change an honest belief about the weight and effect of the evidence simply
to reach a verdict.

24
25
26
27
28

EXHIBIT 31
PAGE 327

-34-

## JURY INSTRUCTION NO. 31

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

EXHIBIT  31
PAGE 328

-35-

1

2  ## JURY INSTRUCTION NO. 32

3

4        A verdict form has been prepared for you. After you have reached

5  unanimous agreement on a verdict, your presiding juror will fill in the form that

6  has been given to you, sign and date it, and advise the court that you are ready to

7  return to the courtroom.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 31
PAGE 329

# EXHIBIT 32

1   DALE M. CENDALI *(admitted pro hac vice)*
    DIANA M. TORRES (S.B. #162284)
2   STEVEN J. OLSON (S.B. #182240)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, California 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5   Email: dtorres@omm.com

6   PATRICIA GLASER (S.B. #55668)
    CHRISTENSEN, GLASER, FINK,
7   JACOBS, WEIL & SHAPIRO LLP
    10250 Constellation Boulevard, 19th Floor
8   Los Angeles, California 90067
    Telephone:  (310) 553-3000
9   Facsimile:   (310) 556-2920
    Email: pglaser@chrisglase.com
10
    Attorneys for Counter-defendants MGA
11  Entertainment, Inc., Isaac Larian, MGA
    Entertainment (HK) Limited, and MGAE de
12  Mexico S.R.L. de C.V.

13

14

15              UNITED STATES DISTRICT COURT

16            CENTRAL DISTRICT OF CALIFORNIA

17                    EASTERN DIVISION

18  CARTER BRYANT, an individual,          | Case No. CV 05-2727 SGL (RNBx)
                                           | (Consolidated with CV 04-09049 and
19              Plaintiff,                 | CV 04-9059)

20        v.                               | **ANSWER AND AFFIRMATIVE
                                           | DEFENSES OF MGA
21  MATTEL, INC., a Delaware Corporation,  | ENTERTAINMENT INC., MGA
                                           | ENTERTAINMENT (HK)
22              Defendant                  | LIMITED, AND MGAE DE
                                           | MEXICO S.R.L. DE C.V. TO
23                                         | MATTEL, INC.'S SECOND
                                           | AMENDED ANSWER AND
24                                         | COUNTERCLAIMS**

25
    CONSOLIDATED WITH
26                                         | Judge:      Hon. Stephen G. Larson
                                           | Courtroom:  1
27  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v.
28  MATTEL, INC.

EXHIBIT 32
PAGE 330

1    Counter-defendants MGA Entertainment, Inc. ("MGA"), MGA

2   Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively

3   the "MGA Defendants") hereby answer, for themselves alone, the Second

4   Amended Answer and Counterclaim of Counter-claimant Mattel Inc., as follows:

5        As a preliminary matter, Mattel's use of headings throughout its

6   counterclaims is improper, and therefore no response to Mattel's headings is

7   required. If any response is required, MGA Defendants deny all allegations

8   contained in Mattel's headings.

9                          **RESPONSES**

10       1.   MGA Defendants deny the allegations set forth in paragraph 1.

11       2.   MGA Defendants deny the allegations set forth in paragraph 2.

12       3.   MGA Defendants admit that MGA decided to expand into

13   Mexico in or about 2004, and deny the remaining allegations set forth in paragraph

14   3.

15       4.   MGA Defendants deny the allegations set forth in paragraph 4.

16       5.   MGA Defendants deny the allegations set forth in paragraph 5.

17       6.   MGA Defendants admit that the Court has federal question

18   jurisdiction over this action pursuant to 28 U.S.C. § 1331, deny that 17 U.S.C. §§

19   101 and 18 U.S.C. § 1964(c) apply to the extraterritorial conduct alleged in the

20   Counterclaims, and deny that Mattel is entitled to any relief on its Counterclaims.

21       7.   MGA Defendants admit that venue is proper in this District for

22   Mattel's claims based on conduct alleged to have occurred within this District and

23   deny that venue is proper in this District for acts alleged to have occurred in

24   Mexico, Canada, Hong Kong, or other places outside of this District.

25       8.   MGA Defendants admit the allegations set forth in paragraph 8.

26       9.   MGA Defendants admit the allegations set forth in the first and

27   second sentences of paragraph 9, and deny the remaining allegations set forth in

28   paragraph 9.

EXHIBIT 32
PAGE 331

1          10.    MGA Defendants admit the allegations set forth in paragraph

2     10.

3          11.    MGA Defendants admit the allegations set forth in the first

4     sentence of paragraph 11, and deny the remaining allegations set forth in paragraph

5     11.

6          12.    MGA Defendants admit the allegations set forth in paragraph

7     12.

8          13.    MGA Defendants admit the allegations set forth in the first

9     sentence of paragraph 13, and deny the remaining allegations set forth in paragraph

10    13.

11         14.    MGA Defendants admit the allegations set forth in paragraph

12    14.

13         15.    Paragraph 15 is a statement of Mattel's legal position, to which

14    no response is necessary. To the extent a response is required, MGA Defendants

15    deny the allegations set forth in paragraph 15.

16         16.    MGA Defendants admit the allegations set forth in the first

17    sentence of paragraph 16. MGA Defendants are without sufficient knowledge to

18    admit or deny the remaining allegations set forth in paragraph 16, and on that basis,

19    deny the remaining allegations set forth in paragraph 16.

20         17.    MGA Defendants are without sufficient knowledge to admit or

21    deny the allegations set forth in paragraph 17, and on that basis, deny the

22    allegations set forth in paragraph 17.

23         18.    MGA Defendants are without sufficient knowledge to admit or

24    deny the allegations set forth in paragraph 18, and on that basis, deny the

25    allegations set forth in paragraph 18.

26         19.    MGA Defendants admit that MGA is a toy manufacturer, that

27    MGA began as a consumer electronics business and expanded into the toy business

28    with licenses to sell handheld electronic games, and later expanded its business by

-3- EXHIBIT 32

PAGE 332

1   launching the Bratz fashion doll line, and deny the remaining allegations set forth in

2   paragraph 19.

3        20.   MGA Defendants deny the allegations set forth in paragraph 20.

4        21.   MGA Defendants admit that Carter Bryant is a former employee

5   of Mattel, and state that they are without sufficient knowledge to admit or deny the

6   remaining allegations set forth in paragraph 21, and on that basis, deny the

7   remaining allegations set forth in paragraph 21.

8        22.   MGA Defendants are without sufficient knowledge to admit or

9   deny the allegations set forth in paragraph 22, and on that basis, deny the

10  allegations set forth in paragraph 22.

11       23.   MGA Defendants are without sufficient knowledge to admit or

12  deny the allegations set forth in paragraph 23, and on that basis, deny the

13  allegations set forth in paragraph 23.

14       24.   MGA Defendants are without sufficient knowledge to admit or

15  deny the allegations set forth in paragraph 24, and on that basis, deny the

16  allegations set forth in paragraph 24.

17       25.   MGA Defendants are without sufficient knowledge to admit or

18  deny the allegations set forth in paragraph 25, and on that basis, deny the

19  allegations set forth in paragraph 25.

20       26.   MGA Defendants deny the allegations set forth in paragraph 26.

21       27.   MGA Defendants deny the allegations set forth in paragraph 27.

22       28.   MGA Defendants deny the allegations set forth in paragraph 28.

23       29.   MGA Defendants deny the allegations set forth in paragraph 29.

24       30.   MGA Defendants admit that after MGA made the decision to

25  proceed with the manufacture of the Bratz dolls, MGA employees communicated

26  with employees of MGA Entertainment (HK) Limited on subjects including the

27  manufacturing of Bratz, and deny the remaining allegations set forth in the first

28

EXHIBIT __32__
-4- PAGE __333__

1  sentence of paragraph 30. MGA Defendants admit the second sentence of
2  paragraph 30.

3     31.   MGA Defendants admit that samples of the four original Bratz
4  dolls were shown at the Hong Kong Toy Fair in January 2001, and deny the
5  remaining allegations set forth in paragraph 31.

6     32.   MGA Defendants admit that MGA and its subsidiaries have
7  distributed and sold Bratz and Bratz-related products in many countries throughout
8  the world, that MGA and its subsidiaries have licensed Bratz to third parties, that
9  MGA has derived annual revenues from its sales and licenses of Bratz in excess of
10  $500 million, that MGA and its subsidiaries continue to market, sell and license
11  Bratz and intend to continue to do so, and deny the remaining allegations set forth
12  in paragraph 32.

13     33.   MGA Defendants deny the allegations set forth in paragraph 33.
14     34.   MGA Defendants deny the allegations set forth in paragraph 34.
15     35.   MGA Defendants deny the allegations set forth in paragraph 35.
16     36.   MGA Defendants admit that Bryant had an agreement with
17  MGA, state that the terms of the agreement speak for themselves, and deny the
18  remaining allegations set forth in paragraph 36.

19     37.   MGA Defendants admit that in or about late 2003 or early 2004,
20  MGA decided to form a new corporation, MGAE de Mexico, S.R.L. de C.V., to
21  conduct business in Mexico, admit that MGAE de Mexico hired three employees of
22  Mattel's Mexican subsidiary, and deny the remaining allegations set forth in
23  paragraph 37.

24     38.   MGA Defendants admit that Carlos Gustavo Machado Gomez
25  was a Marketing Manager, Boys Division, for Mattel Mexico, admit that Machado
26  was employed at Mattel Mexico from April 1997 until April 19, 2004, admit that
27  Machado had access to some nonpublic business information of Mattel Mexico, and
28  state that they are without sufficient knowledge to admit or deny the remaining

EXHIBIT 32

- 5 -  PAGE 334

1   allegations set forth in paragraph 38, and on that basis, deny the remaining

2   allegations set forth in paragraph 38.

3         39.    MGA Defendants admit that Mariana Trueba Almada was a

4   Marketing Manager, Girls Division, for Mattel Mexico, admit that Trueba had

5   access to some nonpublic business information of Mattel Mexico, and state that

6   they are without sufficient knowledge to admit or deny the remaining allegations

7   set forth in paragraph 39, and on that basis, deny the remaining allegations set forth

8   in paragraph 39.

9         40.    MGA Defendants admit that Pablo Vargas San Jose was a Trade

10  Marketing Manager for Mattel Mexico, admit that Vargas was employed at Mattel

11  Mexico from March 2001 until April 19, 2004, admit that Vargas had access to

12  some nonpublic business information of Mattel Mexico, and state that they are

13  without sufficient knowledge to admit or deny the remaining allegations set forth in

14  paragraph 40, and on that basis, deny the remaining allegations set forth in

15  paragraph 40.

16        41.    MGA Defendants admit that in or about early 2004, Machado,

17  Trueba and Vargas discussed leaving Mattel Mexico, admit that Machado, Trueba

18  and Vargas resigned from Mattel Mexico on April 19, 2004, admit that they did not

19  identify their new employer to Mattel Mexico, admit that Machado, Trueba and

20  Vargas were offered and accepted employment with MGAE de Mexico, and deny

21  the remaining allegations set forth in paragraph 41.

22        42.    MGA Defendants admit that MGA personnel communicated by

23  telephone with Machado and Vargas prior to their Mattel resignations, admit that

24  MGA personnel, including Isaac Larian, communicated by e-mail with Machado

25  and Vargas concerning terms of employment through an America Online e-mail

26  account with the address <plot04@aol.com>, and deny the remaining allegations

27  set forth in paragraph 42.

28

EXHIBIT __32__

- 6 - PAGE __335__

1    43.   MGA Defendants admit that in or about March 2004, Machado,

2  Trueba, and Vargas made plans to travel from Mexico to Los Angeles in April

3  2004, admit that in or about March 2004, Machado, Trueba and Vargas discussed

4  with MGA personnel, including Larian, employment at MGAE de Mexico, state

5  that the quoted <plot04@aol.com> e-mails speak for themselves, and deny the

6  remaining allegations set forth in paragraph 43.

7    44.   MGA Defendants are without sufficient knowledge to admit or

8  deny the allegations set forth in paragraph 44, and on that basis, deny the

9  allegations set forth in paragraph 44.

10    45.   MGA Defendants are without sufficient knowledge to admit or

11  deny the allegations set forth in paragraph 45, and on that basis, deny the

12  allegations set forth in paragraph 45.

13    46.   MGA Defendants are without sufficient knowledge to admit or

14  deny the allegations set forth in paragraph 46, and on that basis, deny the

15  allegations set forth in paragraph 46.

16    47.   MGA Defendants are without sufficient knowledge to admit or

17  deny the allegation set forth in the third sentence of paragraph 47, and on that basis,

18  deny these allegations, and deny the remaining allegations set forth in paragraph 47.

19    48.   MGA Defendants deny the allegations set forth in paragraph 48.

20    49.   MGA Defendants deny the allegations set forth in paragraph 49.

21    50.   MGA Defendants are without sufficient knowledge to admit or

22  deny the allegation that MGA publicized a claim that, in 2005, it had increased its

23  Mexican market share by 90% over the prior year, and on that basis, deny this

24  allegation, and deny the remaining allegations set forth in paragraph 50.

25    51.   MGA Defendants deny the allegations set forth in paragraph 51.

26    52.   MGA Defendants deny the allegations set forth in paragraph 52.

27    53.   MGA Defendants admit that on October 27, 2005, Mexican

28  authorities searched MGAE de Mexico and seized certain documents, and state that

EXHIBIT  32

PAGE  336

1    they are without sufficient knowledge to admit or deny the remaining allegations

2    set forth in paragraph 53, and on that basis, deny the remaining allegations set forth

3    in paragraph 53.

4          54.    MGA Defendants admit that Machado was transferred from

5    MGAE de Mexico to MGA's office in Van Nuys, California, admit that Machado

6    resides in the County of Los Angeles, and deny the remaining allegations set forth

7    in paragraph 54.

8          55.    MGA Defendants admit the allegations set forth in the first

9    sentence of paragraph 55. MGA Defendants admit that Tyco Toys hired Brawer on

10   April 22, 1996, and state that they are without sufficient knowledge to admit or

11   deny the remaining allegations set forth in the second sentence of paragraph 55, and

12   on that basis, deny the remaining allegations set forth in the second sentence of

13   paragraph 55. MGA Defendants admit the allegations set forth in third sentence of

14   paragraph 55. MGA Defendants admit that on April 9, 1997, Brawer became a

15   Marketing Director for Mattel in Mount Laurel, New Jersey, and state that the

16   remaining allegations in the fourth sentence of paragraph 55 are a statement of

17   Mattel's legal position, to which no response is necessary. To the extent a response

18   is required, MGA Defendants deny the remaining allegations set forth in paragraph

19   55.

20         56.    MGA Defendants are without sufficient knowledge to admit or

21   deny the allegations set forth in paragraph 56, and on that basis, deny the

22   allegations set forth in paragraph 56. The last sentence of paragraph 56 is a

23   statement of Mattel's legal position, to which no response is necessary. To the

24   extent a response is required, MGA Defendants deny the remaining allegations set

25   forth in paragraph 56.

26         57.    MGA Defendants admit that by 2003, Brawer had advanced

27   within Mattel to a Senior Vice President position over customer marketing, and

28   state that the remaining allegations in the first sentence of paragraph 57 are a

- 8 -

EXHIBIT 3 2

PAGE 337

1   statement of Mattel's legal position, to which no response is necessary. To the
2   extent a response is required, MGA Defendants deny the remaining allegations set
3   forth in the first sentence of paragraph 57. MGA Defendants admit that in his
4   executive position, Brawer was provided access to certain nonpublic Mattel
5   information.

6          58.    MGA Defendants admit the allegations set forth in the first
7   sentence of paragraph 58. MGA Defendants deny the allegations set forth in the
8   second sentence of paragraph 58. MGA Defendants are without sufficient
9   knowledge to admit or deny the remaining allegations set forth in paragraph 58, and
10  on that basis, deny the remaining allegations set forth in paragraph 58.

11         59.    MGA Defendants are without sufficient knowledge to admit or
12  deny the allegations set forth in paragraph 59, and on that basis, deny the
13  allegations set forth in paragraph 59.

14         60.    MGA Defendants admit that in April 2004, Mattel made Brawer
15  a Senior Vice President/General Manager, and state that they are without sufficient
16  knowledge to admit or deny the remaining allegations set forth in paragraph 60, and
17  on that basis, deny the remaining allegations set forth in paragraph 60.

18         61.    MGA Defendants admit that in May 2004, Brawer began
19  performing General Manager duties, working with one of Mattel's major retail
20  customer accounts, and state that they are without sufficient knowledge to admit or
21  deny the remaining allegations set forth in paragraph 61, and on that basis, deny the
22  remaining allegations set forth in paragraph 61.

23         62.    MGA Defendants admit the allegations set forth in the first
24  sentence of paragraph 62. MGA Defendants admit that as Brawer left, he carried a
25  large cardboard box, and deny the remaining allegations set forth in the second
26  sentence of paragraph 62. MGA Defendants state that they are without sufficient
27  knowledge to admit or deny the remaining allegations set forth in paragraph 62, and
28  on that basis, deny the remaining allegations set forth in paragraph 62.

- 9 -

EXHIBIT    32

PAGE    338

1       63.    MGA Defendants admit the allegations set forth in paragraph

2   63.

3       64.    MGA Defendants admit that on September 20, 2004, Mattel

4   hand-delivered a letter to Brawer, state that the contents of the letter speak for

5   themselves, and deny the remaining allegations set forth in paragraph 64.

6       65.    MGA Defendants admit that at his exit interview on September

7   29, 2004, Brawer was given a copy of an agreement with Tyco that he had signed

8   on April 22, 1996, and a copy of Mattel's Code of Conduct, admit that Brawer

9   stated that he had not signed the Code of Conduct, and deny the remaining

10   allegations set forth in paragraph 65.

11       66.    MGA Defendants admit that on October 1, 2004, Brawer's last

12   day of employment with Mattel, Mattel delivered a letter to Brawer, state that the

13   contents of the letter speak for themselves, and deny the remaining allegations set

14   forth in paragraph 66.

15       67.    MGA Defendants admit that Brawer became MGA's Executive

16   Vice President of Sales and Marketing, admit that he was responsible for sales

17   worldwide, admit that he had and continues to have responsibility for MGA's

18   accounts with some of the same retailers that he worked with while at Mattel, and

19   deny the remaining allegations set forth in paragraph 67.

20       68.    MGA Defendants admit that Brawer stated during his exit

21   interview that he had returned all confidential proprietary information to Mattel,

22   state that he did not provide copies of information from his personal contacts file,

23   and deny the remaining allegations set forth in paragraph 68.

24       69.    MGA Defendants admit that since leaving Mattel, Brawer has

25   had contacts with certain Mattel employees, both by telephone and electronic mail,

26   and deny the remaining allegations set forth in paragraph 69.

27       70.    MGA Defendants deny the allegations set forth in paragraph 70.

28

EXHIBIT 32

PAGE 339

1    71.    MGA Defendants are without sufficient knowledge to admit or
2    deny the allegations set forth in paragraph 71, and on that basis, deny the
3    allegations set forth in paragraph 71.

4    72.    MGA Defendants are without sufficient knowledge to admit or
5    deny the allegations set forth in paragraph 72, and on that basis, deny the
6    allegations set forth in paragraph 72.

7    73.    MGA Defendants admit that on September 26, 2005, Brisbois
8    resigned from Mattel Canada, state that she took a position as Vice President of
9    National Accounts at MGAE Canada, and deny the remaining allegations set forth
10   in the first sentence of paragraph 73. MGA Defendants are without sufficient
11   knowledge to admit or deny the remaining allegations set forth in paragraph 73, and
12   on that basis, deny the remaining allegations set forth in paragraph 73.

13   74.    MGA Defendants admit that Brisbois spoke with Isaac Larian
14   by telephone on or about the evening of September 22, 2005, deny that Brisbois
15   copied approximately 45 Mattel documents onto a USB or thumb drive on that
16   same date, deny that Brisbois concealed the thumb drive the last time she left
17   Mattel Canada's office, and state that they are without sufficient knowledge to
18   admit or deny the remaining allegations set forth in paragraph 74, and on that basis,
19   deny the remaining allegations set forth in paragraph 74.

20   75.    MGA Defendants are without sufficient knowledge to admit or
21   deny the allegations set forth in paragraph 75, and on that basis, deny the
22   allegations set forth in paragraph 75.

23   76.    MGA Defendants admit that Brisbois traveled several times to
24   MGA's offices in Van Nuys, California and met with Larian and Brawer, that
25   MGA issued a press release, state that the press release speaks for itself, and state
26   that they are without sufficient knowledge to admit or deny the remaining
27   allegations set forth in paragraph 76 and, on that basis, deny the remaining
28   allegations set forth in paragraph 76.

EXHIBIT 32
PAGE 340

1  77. MGA Defendants admit that MGA has hired at least 25

2 employees directly from Mattel's United States operations in the past few years,

3 and deny the remaining allegations set forth in paragraph 77.

4  78. MGA Defendants deny the allegations set forth in the first

5 sentence of paragraph 78. MGA Defendants admit that Larian has sent email

6 messages to a "Bratz News" distribution list, admit that the recipients of e-mail

7 messages sent to the "Bratz News" distribution list includes members of the media

8 as well as representatives of customers of both MGA and Mattel, and deny the

9 remaining allegations set forth in paragraph 78.

10  79. MGA Defendants admit that on May 12, 2006, Larian sent an

11 email message to the "Bratz News" distribution list that included a reference to the

12 new My Scene product with real gems, and state that they are without sufficient

13 knowledge to admit or deny the remaining allegations set forth in paragraph 79, and

14 on that basis, deny the remaining allegations set forth in paragraph 79.

15  80. MGA Defendants admit that Larian told one retailer that such

16 retailer was the only retailer with plans to purchase MY SCENE BLING BLING

17 with real gems, at a time when Larian had a good faith belief that such retailer was

18 the only retailer with plans to purchase MY SCENE BLING BLING with real

19 gems, and deny the remaining allegations set forth in paragraph 80.

20  81. MGA Defendants deny the allegation set forth in paragraph 81.

21  82. MGA Defendants repeat their responses contained in paragraphs

22 1 through 81 of this Answer and incorporate them by reference as though fully and

23 completely set forth herein.

24  83. MGA Defendants deny the allegations set forth in paragraph 83.

25  84. MGA Defendants deny the allegations set forth in paragraph 84.

26  85. MGA Defendants deny the allegations set forth in paragraph 85.

27  86. MGA Defendants deny the allegations set forth in paragraph 86.

28  87. MGA Defendants deny the allegations set forth in paragraph 87.

EXHIBIT 32
PAGE 341

1         88.   MGA Defendants repeat their responses contained in paragraphs

2   1 through 87 of this Answer and incorporate them by reference as though fully and

3   completely set forth herein.

4         89.   MGA Defendants deny the allegations set forth in paragraph 89.

5         90.   MGA Defendants deny the allegations set forth in paragraph 90.

6         91.   MGA Defendants deny the allegations set forth in paragraph 91.

7         92.   MGA Defendants deny the allegations set forth in paragraph 92.

8         93.   MGA Defendants deny the allegations set forth in paragraph 93.

9         94.   MGA Defendants deny the allegations set forth in paragraph 94.

10        95.   MGA Defendants deny the allegations set forth in paragraph 95.

11        96.   MGA Defendants deny the allegations set forth in paragraph 96.

12        97.   MGA Defendants deny the allegations set forth in paragraph 97.

13        98.   MGA Defendants repeat their responses contained in paragraphs

14  1 through 97 of this Answer and incorporate them by reference as though fully and

15  completely set forth herein.

16        99.   MGA Defendants deny the allegations set forth in paragraph 99.

17        100.  MGA Defendants deny the allegations set forth in paragraph

18  100.

19        101.  MGA Defendants deny the allegations set forth in paragraph

20  101.

21        102.  MGA Defendants deny the allegations set forth in paragraph

22  102.

23        103.  MGA Defendants deny the allegations set forth in paragraph

24  103.

25        104.  MGA Defendants deny the allegations set forth in paragraph

26  104.

27        105.  MGA Defendants deny the allegations set forth in paragraph

28  105.

EXHIBIT __32__

PAGE __342__

1          106.   MGA Defendants repeat their responses contained in paragraphs

2    1 through 105 of this Answer and incorporate them by reference as though fully and

3    completely set forth herein.

4          107.   MGA Defendants deny the allegations set forth in paragraph

5    107.

6          108.   MGA Defendants deny the allegations set forth in paragraph

7    108.

8          109.   MGA Defendants deny the allegations set forth in paragraph

9    109.

10         110.   MGA Defendants deny the allegations set forth in paragraph

11   110.

12         111.   MGA Defendants deny the allegations set forth in paragraph

13   111.

14         112.   MGA Defendants deny the allegations set forth in paragraph

15   112.

16         113.   MGA Defendants deny the allegations set forth in paragraph

17   113.

18         114.   MGA Defendants deny the allegations set forth in paragraph

19   114.

20         115.   MGA Defendants deny the allegations set forth in paragraph

21   115.

22         116.   MGA Defendants repeat their responses contained in paragraphs

23   1 through 115 of this Answer and incorporate them by reference as though fully and

24   completely set forth herein.

25         117.   MGA Defendants deny the remaining allegations set forth in

26   paragraph 117.

27         118.   MGA Defendants deny the allegations set forth in paragraph

28   118.

EXHIBIT ___32___
PAGE ___343___

1    119.  MGA Defendants deny the allegations set forth in paragraph

2    119.

3    120.  MGA Defendants deny the allegations set forth in paragraph

4    120.

5    121.  MGA Defendants deny the allegations set forth in paragraph

6    121.

7    122.  MGA Defendants repeat their responses contained in paragraphs

8    1 through 121 of this Answer and incorporate them by reference as though fully and

9    completely set forth herein.

10    123.  MGA Defendants deny the allegations set forth in paragraph

11    123.

12    124.  MGA Defendants deny the allegations set forth in paragraph

13    124.

14    125.  MGA Defendants deny the allegations set forth in paragraph

15    125.

16    126.  MGA Defendants deny the allegations set forth in paragraph

17    126.

18    127.  MGA Defendants deny the allegations set forth in paragraph

19    127.

20    128.  MGA Defendants deny the allegations set forth in paragraph

21    128.

22    129.  MGA Defendants repeat their responses contained in paragraphs

23    1 through 128 of this Answer and incorporate them by reference as though fully and

24    completely set forth herein.

25    130.  The first and fifth sentences of paragraph 130 are statements of

26    Mattel's legal position, to which no response is necessary.  To the extent a response

27    is required, MGA Defendants deny the allegations set forth in the first and fifth

28    sentences of paragraph 130. MGA Defendants are without sufficient knowledge to

EXHIBIT   32

PAGE   344

1    admit or deny the remaining allegations set forth in paragraph 130, and on that

2    basis, deny the remaining allegations set forth in paragraph 130.

3              131.   MGA Defendants deny the allegations set forth in paragraph

4    131.

5              132.   MGA Defendants deny the allegations set forth in paragraph

6    132.

7              133.   MGA Defendants deny the allegations set forth in paragraph

8    133.

9              134.   MGA Defendants deny the allegations set forth in paragraph

10   134.

11             135.   MGA Defendants deny the allegations set forth in paragraph

12   135.

13             136.   MGA Defendants repeat their responses contained in paragraphs

14   1 through 135 of this Answer and incorporate them by reference as though fully and

15   completely set forth herein.

16             137.   MGA Defendants deny the allegations set forth in paragraph

17   137.

18             138.   MGA Defendants deny the allegations set forth in paragraph

19   138.

20             139.   MGA Defendants deny the allegations set forth in paragraph

21   139.

22             140.   MGA Defendants deny the allegations set forth in paragraph

23   140.

24             141.   MGA Defendants deny the allegations set forth in paragraph

25   141.

26             142.   MGA Defendants repeat their responses contained in paragraphs

27   1 through 141 of this Answer and incorporate them by reference as though fully and

28   completely set forth herein.

- 16 -   EXHIBIT 32

PAGE 345

1      143.  Paragraph 143 is a statement of Mattel's legal position, to which

2  no response is necessary.  To the extent a response is required, MGA Defendants

3  deny the allegations set forth in the paragraph 143.

4      144.  MGA Defendants deny the allegations set forth in paragraph

5  144.

6      145.  MGA Defendants deny the allegations set forth in paragraph

7  145.

8      146.  MGA Defendants deny the allegations set forth in paragraph

9  146.

10      147.  MGA Defendants deny the allegations set forth in paragraph

11  147.

12      148.  MGA Defendants deny the allegations set forth in paragraph

13  148.

14      149.  MGA Defendants repeat their responses contained in paragraphs

15  1 through 148 of this Answer and incorporate them by reference as though fully and

16  completely set forth herein.

17      150.  MGA Defendants deny the allegations set forth in paragraph

18  150.

19      151.  MGA Defendants deny the allegations set forth in paragraph

20  151.

21      152.  MGA Defendants deny the allegations set forth in paragraph

22  152.

23      153.  MGA Defendants deny the allegations set forth in paragraph

24  153.

25      154.  MGA Defendants deny the allegations set forth in paragraph

26  154.

27

28

EXHIBIT 32
PAGE 346

1    155. MGA Defendants repeat their responses contained in paragraphs

2    1 through 154 of this Answer and incorporate them by reference as though fully and

3    completely set forth herein.

4    156. MGA Defendants deny the allegations set forth in paragraph

5    156.

6    157. MGA Defendants deny the allegations set forth in paragraph

7    157.

8    158. MGA Defendants deny the allegations set forth in paragraph

9    158.

10   159. MGA Defendants deny the allegations set forth in paragraph

11   159.

12   160. MGA Defendants deny the allegations set forth in paragraph

13   160.

14   161. MGA Defendants deny the allegations set forth in paragraph

15   161.

16   162. MGA Defendants deny the allegations set forth in paragraph

17   162.

18   163. MGA Defendants repeat their responses contained in paragraphs

19   1 through 162 of this Answer and incorporate them by reference as though fully and

20   completely set forth herein.

21   164. MGA Defendants deny the allegations set forth in paragraph

22   164.

23   165. MGA Defendants deny the allegations set forth in paragraph

24   165.

25   166. MGA Defendants deny the allegations set forth in paragraph

26   166.

27

28

EXHIBIT ___32___
PAGE ___347___

- 18 -

1        167.   MGA Defendants repeat their responses contained in paragraphs

2    1 through 166 f this Answer and incorporate them by reference as though fully and

3    completely set forth herein.

4        168.   MGA Defendants deny the allegations set forth in paragraph

5    168.

6        169.   Paragraph 169 is a statement of Mattel's legal position, to which

7    no response is necessary.  To the extent a response is required, MGA Defendants

8    deny the allegations set forth in the paragraph 169.

9        170.   Paragraph 170 is a statement of Mattel's legal position, to which

10   no response is necessary.  To the extent a response is required, MGA Defendants

11   deny the allegations set forth in the paragraph 170.

12                        **AFFIRMATIVE DEFENSES**

13        Without admitting any wrongful conduct on the part of MGA Defendants or

14   any Counter-Defendant, and without admitting that Mattel suffered any loss,

15   damage, or injury, MGA Defendants allege the following affirmative defenses to

16   the Counterclaims.  By designating the following as affirmative defenses, MGA

17   Defendants do not in any way waive or limit any defenses which are or may be

18   raised by their denials, allegations, and averments set forth herein.  MGA

19   Defendants also do not, by alleging any affirmative defense, admit that Mattel does

20   not have the burden of proof for any or all facts underlying any of those defenses.

21   These defenses are pled in the alternative, and are raised to preserve the rights of

22   MGA Defendants to assert such defenses, and are without prejudice to their ability

23   to raise other and further defenses.

24                        **FIRST AFFIRMATIVE DEFENSE**

25                          (Failure to State a Claim)

26        Mattel's counterclaims fail to state a claim against MGA Defendants upon

27   which relief can be granted.

28

EXHIBIT 32
PAGE 348

- 19 -

1                      **SECOND AFFIRMATIVE DEFENSE**

2                           (Lack of Standing)

3       Mattel's counterclaims are barred in whole or in part by its lack of standing.

4                       **THIRD AFFIRMATIVE DEFENSE**

5                          (Unclean Hands)

6       Mattel's counterclaims are barred in whole or in part by Mattel's unclean

7 hands. This affirmative defense is based, in part, on Mattel's efforts to undermine

8 MGA's business and to "kill" Bratz at any cost which include, but are not limited

9 to, Mattel's: efforts to infringe and dilute MGA's trade dress, copy MGA's

10 products, packaging, themes, and advertising (including for Mattel products My

11 Scene, Diva Starz, Wee 3 Friends, Acceleracers, and Polly Pocket, to name a few),

12 and engage in other acts of unfair competition against MGA as alleged in MGA's

13 complaint against Mattel; efforts to create negative publicity or press about MGA,

14 MGA products, Bryant, Larian, or MGA employees; efforts to fund or commission

15 market research or studies that portray Bratz or MGA products negatively; efforts

16 to interfere with MGA's acquisition of or investment in Zapf Creation AG; efforts

17 to include negative references to MGA or Bratz on Mattel's "We Believe in Girls"

18 website; efforts or intent to interfere with business dealings or contractual relations

19 between MGA and Smoby Group; influencing Nickelodeon to reject MGA

20 advertisements or to limit time slots for advertisements; assisting parties in lawsuits

21 against MGA; monitoring, "spying on" or gaining knowledge of MGA's trade

22 secrets, non-public information, non-public activities, unreleased products, and

23 product development; gaining access, or attempts to gain access, to MGA

24 showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false

25 pretenses; wrongfully obtaining MGA's costs and sales information through

26 Mattel-employed category managers at retailers; inducing non-party customers to

27 breach confidentiality agreements with MGA and divulge non-public information

28 about MGA's unreleased products; covertly investigating MGA, its officers and

EXHIBIT 32

PAGE 349

1  employees, and their family members; contacting persons under false pretense in
2  order to interrogate them about Bratz and this litigation; coercing Mattel employees
3  to accept restrictive covenants (right before massive layoff) and non-compete
4  clauses and other efforts to prevent prospective MGA employees from accepting
5  offers of employment; delay in suing Carter Bryant because, *inter alia*, Mattel
6  wanted Bryant to testify in an unrelated Mattel case; falsely inflating its Barbie
7  sales figures in an effort to mislead the public and retailers; and taking all measures
8  to conceal its bad acts, including the willful non-retention and destruction of
9  documents. These averments are made on information and belief except where
10 MGA Defendants have knowledge thereof.

11                    **FOURTH AFFIRMATIVE DEFENSE**

12                              (Laches)

13        Mattel's counterclaims are barred by the equitable doctrine of laches. MGA
14 Defendants avers that Mattel was on notice no later than March 2002 as to Bryant's
15 involvement with MGA and the creation of the original Bratz dolls.

16                     **FIFTH AFFIRMATIVE DEFENSE**

17                       (Statute of Limitations)

18        Mattel's counterclaims are barred by the applicable statutes of limitations.

19                     **SIXTH AFFIRMATIVE DEFENSE**

20                            (Good Faith)

21        Mattel cannot maintain its counterclaims against MGA Defendants because
22 MGA Defendants acted in good faith and in conformity with applicable laws, and
23 did not directly or indirectly induce the act or acts constituting the alleged causes of
24 actions.

25                   **SEVENTH AFFIRMATIVE DEFENSE**

26                  (Information Readily Ascertainable)

27

28

EXHIBIT 32
PAGE 350

1    MGA Defendants cannot be liable for misappropriation of information that

2 was readily ascertainable by proper means at the time of the alleged acquisition or

3 use.

4    ### EIGHTH AFFIRMATIVE DEFENSE

5    ### (Acts or Omissions of Others)

6    Mattel's damages, if any, were not caused by MGA Defendants and are not

7 attributable to any acts or omissions of MGA Defendants.

8    ### NINTH AFFIRMATIVE DEFENSE

9    ### (Res Judicata)

10   Mattel's counterclaims are barred in whole or in part by res judicata.

11   ### TENTH AFFIRMATIVE DEFENSE

12   ### (Estoppel)

13   Mattel's counterclaims are barred in whole or in part by estoppel.

14   ### ELEVENTH AFFIRMATIVE DEFENSE

15   ### (Acquiescence)

16   Mattel's counterclaims are barred in whole or in part by acquiescence.

17   ### TWELFTH AFFIRMATIVE DEFENSE

18   ### (Lack of Ownership)

19   Mattel is neither the legal nor beneficial owner in the copyrights purportedly

20 at issue.

21   ### THIRTEENTH AFFIRMATIVE DEFENSE

22   ### (Invalid Copyrights)

23   Mattel's purported copyrights have expired or are otherwise invalid.

24   ### FOURTEENTH AFFIRMATIVE DEFENSE

25   ### (Failure to Mitigate)

26   MGA Defendants deny that Mattel suffered any damages, but even if it did,

27 Mattel failed to take reasonable steps to mitigate those purported damages.

28

EXHIBIT 32
PAGE 351

## FIFTEENTH AFFIRMATIVE DEFENSE

### (No Statutory Damages or Attorneys' Fees)

Mattel is barred from recovering statutory damages and/or attorneys' fees because it failed to register the copyrights that are purportedly at issue within the time required by 17 U.S.C. § 412.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Innocent Intent)

MGA Defendants deny that Mattel owns any copyright interest in the alleged works, but even if MGA Defendants infringed any copyright interest held by Mattel, MGA Defendants did so without knowledge or intent.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Waiver)

Mattel's counterclaims are barred in whole or in part by waiver.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Abandonment)

Mattel has abandoned any interest it may have had in the alleged copyrighted works.

## NINETEENTH AFFIRMATIVE DEFENSE

### (*De Minimus* Use)

MGA Defendants deny that Mattel owns any copyright interest in the alleged works, but even if Mattel could craft a claim that the Bratz dolls incorporate an aspect of a Mattel copyrighted work, such use would be *de minimus* and non-infringing.

EXHIBIT 32
PAGE 352

## TWENTIETH AFFIRMATIVE DEFENSE

### (Joint Authorship)

MGA Defendants deny that Mattel owns any copyright interest in the alleged works, but even if it did, any liability would be eliminated or greatly diminished by the doctrine of joint authorship.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Undiscovered Defenses)

MGA Defendants have insufficient knowledge or information upon which to form a belief as to whether additional defenses are available. MGA Defendants reserve the right to assert any further or additional defenses upon receiving more complete information regarding the matters alleged in the Counterclaims, through discovery or otherwise.

WHEREFORE, MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V., pray for relief as follows:

    a.    that the Counterclaims be dismissed with prejudice;

    b.    that judgment be entered in favor of counter-defendants and against counterclaimant;

    c.    that counter-defendants recover their costs and attorneys' fees; and

    d.    that the Court award such other and further relief as is just and proper.

Dated: August 13, 2007        O'MELVENY & MYERS LLP



Steven J. Olson
Attorneys for Counter-defendants
MGA Entertainment, Inc., Isaac Larian,
MGA Entertainment (HK) Limited, and
MGAE de Mexico S.R.L. de C.V.

LA2:837754.6

- 24 -

EXHIBIT 32
PAGE 353

# EXHIBIT 33

RECEIVED

JAN – 8 2008

1   THOMAS J. NOLAN (Bar No. 066992)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2   300 South Grand Avenue
    Los Angeles, CA  90071-3144
3   Telephone:   (213) 687-5000
    Facsimile:    (213) 687-5600
4   E-mail:       tnolan@skadden.com

5   KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6   4 Times Square
    New York, NY  10036
7   Telephone:   (212) 735-3000
    Facsimile:    (212) 735-2000
8   E-mail:       kplevan@skadden.com

9   Attorneys for Counter-Defendants,
    MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
10  (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13                  **EASTERN DIVISION**

| | |
|---|---|
| 14  CARTER BRYANT, an individual | CASE NO. CV 04-9049 SGL (RNBx) |
| 15          Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| 16      v. | **MGA'S RESPONSE TO** |
| 17  MATTEL, INC., a Delaware corporation | **MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY REGARDING DEFENDANTS' AFFIRMATIVE DEFENSES** |
| 18          Defendant. | |
| 19 | **CONFIDENTIAL --** |
| 20 | **ATTORNEYS' EYES ONLY** |
| 21 | Honorable Stephen G. Larson Courtroom 1 |
| 22 | |
| 23 | Discovery Cut-Off:  March 3, 2008 |

24

25

26

27

28

I-7

EXHIBIT  33
PAGE  354

## PRELIMINARY STATEMENT

1
2  The General Response set forth herein applies to all responses that MGA
3 Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de
4 Mexico S.R.L. de C. V., (the "MGA Defendants") are providing in response to the
5 amended supplemental interrogatory regarding affirmative defenses (the
6 "Interrogatory") or may in the future provide in response to any discovery request in
7 this action. The Response is made without waiving, or intending to waive but, on the
8 contrary, expressly reserving: (a) the right to object, on the grounds of competency,
9 privilege, relevancy or materiality, or any other proper grounds, to the use of the
10 Response, for any purpose in whole or in part, in any subsequent step or proceeding in
11 this action or any other action; (b) the right to object on any and all grounds, at any
12 time, to other interrogatories or other discovery procedures; and (c) the right at any
13 time to revise, correct, add to, or clarify any of the responses propounded herein.
14  The Response reflects only the present state of the MGA Defendants'
15 discovery regarding the information that Mattel seeks. Discovery and other
16 investigation or research concerning this litigation are continuing. It is anticipated
17 that further discovery, independent investigation, and legal research and analysis will
18 supply additional facts and meaning to the known facts, as well as establish entirely
19 new factual conclusions, all of which may lead the MGA Defendants to discover other
20 information responsive to this Interrogatory. The MGA Defendants therefore reserve
21 the right to amend or supplement this Response at any time in light of future
22 investigation, research or analysis, and also expressly reserves the right to rely on, at
23 any time, including trial, subsequently discovered information omitted from this
24 Response as a result of mistake, error, oversight or inadvertence. The MGA
25 Defendants do not hereby admit, adopt or acquiesce in any factual or legal contention,
26 assertion or characterization contained in the Interrogatory or any particular request
27 therein, even where the MGA Defendants have not otherwise objected to a particular
28 interrogatory, or has agreed to provide information responsive to a particular

1

EXHIBIT __33__

PAGE __355__

1  interrogatory.

2      No incidental or implied admissions are intended by this Response.  These

3  responses should not be taken as an admission that the MGA Defendants accept or

4  admit the existence of any facts set forth or assumed by any instruction, definition or

5  interrogatory.

6  **SUPPLEMENTAL INTERROGATORY:**

7      State the facts upon which YOU intend to rely at trial to support YOUR

8  affirmative defenses, and IDENTIFY all PERSONS with knowledge of those facts

9  and all DOCUMENTS that REFER OR RELATE TO those facts.

10  **RESPONSE TO SUPPLEMENTAL INTERROGATORY:**

11      A.   Failure to State a Claim

12      Mattel's counterclaims fail to state a claim against the MGA Defendants upon

13  which relief can be granted.  This is a legal defense and does not require factual

14  support.

15      B.   Unclean Hands / *in Pari Delicto*

16      Mattel's counterclaims are barred in whole or in part by Mattel's unclean

17  hands and wrongful acts.  This affirmative defense is based, in part, on Mattel's

18  efforts to undermine MGA's business and to "kill" Bratz at any cost which includes,

19  but is not limited to, Mattel's efforts to infringe and dilute MGA's trade dress, copy

20  MGA's products, packaging, themes, and advertising, and engage in other acts of

21  unfair competition against MGA.  Since the Bratz dolls were launched in 2001, Mattel

22  has serially imitated and copied many of MGA's products, trade dress, trademarks,

23  themes, ideas, advertising and product packaging, including, but not limited to:

24      •   Mattel imitated and copied the disproportionately large heads, distinctive

25          faces with artfully made-up, heavy-lidded, sultry, almond-shaped large

26          eyes and large, overly-lined and lipsticked lips, trendy, hip clothes and

27          hair styles, and oversized feet of MGA's Bratz female fashion dolls with

28          Mattel's My Scene fashion dolls.  Further, Mattel has systematically

EXHIBIT 33

PAGE 356

1  use as a fashion doll sculpt would have produced shapes that were different from the
2  actual shape of the final three-dimensional Bratz sculpt used in manufacturing the first
3  generation of Bratz dolls released on the market by MGA in or about June 2001.
4  Indeed, a team of highly-skilled artists (including several that had been used by
5  Mattel) spent months developing the Bratz first-generation dolls—valuable time and
6  original creative effort that would not have been necessary if said first-generation
7  Bratz dolls were simply a copy of Bryant's designs.

8      The absence of substantial similarity is further shown in the close correlation
9  between Bryant's drawings and the inspiration he points to, including but not limited
10  to the Steve Madden and Paris Blues advertisements in the August 1998 issue of
11  *Seventeen Magazine*, as well as other advertisements in that issue, such as the Coca
12  Cola advertisement.

13      Mattel's own My Scene Barbie line of dolls provides further proof that the first
14  generation of Bratz dolls was not substantially similar to the Bryant drawings, in that
15  (i) Mattel asserts that the My Scene Barbie dolls are independent works of art, not
16  copied from Bratz, yet (ii) said dolls are far closer in appearance to Bratz dolls than
17  are Bryant's two-dimensional drawings.

18      Additional details regarding such differences will be the subject of expert
19  disclosures and will be provided in accordance with the Court's schedule for expert
20  discovery.

21      With respect to any Carter Bryant contribution to the first generation Bratz
22  product after October 4, 2000 and before October 21, 2000, MGA notes that any such
23  contribution was far outweighed by the original and/or creative input of other artists
24  working for or on behalf of MGA on the Bratz concept, which was owned by MGA as
25  a consequence of the transfer of rights from Bryant to MGA.

26      With respect to Bratz two-dimensional character art utilized on, for example,
27  Bratz product packaging and licensed products, while the initial Bratz character art
28  was derivative of Bryant's initial sketches from 1998, by no later than August, 2003,

69 ·

EXHIBIT  33
PAGE  357

1 the Bratz character art had changed sufficiently such that it was no longer derivative
2 of Bryant's sketches.

3     The following persons have knowledge of facts and circumstances surrounding
4 the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica Marlow;
5 Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca Harris;
6 Tina Tomiyama; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong; Lily
7 Martinez; Ei Akiko Fong; John Steven Baulch; Aileen Storer; Debora Middleton;
8 Ronan Spelman; Charlotte Broussard.

9     The following documents may be relevant to the foregoing: all documents
10 that refer to or evidence the work performed by MGA employees and freelancers
11 toward the reduction to practice of the first generation of Bratz dolls during the period
12 after October 20, 2000 through June 1, 2001, including but not limited to: Carter
13 Bryant's drawings; documents and tangible things produced by Margaret Leahy;
14 tangible things produced by Veronica Marlow; invoices submitted by employees
15 and/or freelance artists working for MGA for work performed on the Bratz project; all
16 documents that constitute samples of the following items in the public domain in
17 1998: Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie dolls;
18 Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No Name;
19 Hello Kitty; anime, including, e.g., Sailor Moon; manga; Coca-Cola advertisements;
20 Steve Madden advertisements; and Paris Blues advertisements; Bratz prototypes,
21 samples, sculpts, and rotocasts found in Hong Kong and produced to Mattel. The
22 documents evidencing this work are too numerous to identify individually.

23     P.   Joint Authorship

24     MGA Defendants deny that Mattel owns any copyright interest in the alleged
25 works, but even if it did, any liability would be eliminated or greatly diminished by
26 the doctrine of joint authorship. The original concepts contributed by Bryant to the
27 creation of the Bratz dolls represent only one of the many factors that combined to
28 make Bratz one of the most successful fashion dolls on the market. The contributions

70

EXHIBIT 33

PAGE 358

1 | made by MGA to the Bratz dolls far outweigh any contributions made by Bryant prior
2 | to October 21, 2000 in terms of the overall factors that contributed to the commercial
3 | success of Bratz. Mattel played no role in MGA's improvements, enhancements and
4 | changes to the Bratz dolls and/or the Bratz concept. Mattel played no role in the
5 | creation and/or selection of the Bratz slogan, "The Girls with a Passion for Fashion!"
6 | or the brand name "Bratz." Mattel played no role in the development of the Bratz line
7 | of dolls' innovative and trend-setting packaging, the importance of which is
8 | demonstrated in part by Mattel's having copied such packaging. Mattel played no
9 | role in MGA's development of and selection of the fashions for the Bratz dolls.
10 | Mattel played no role in the development of other MGA Bratz spinoff, sub-brands,
11 | and other successful additions to the Bratz doll family, including, but not limited to,
12 | Bratz Boyz, Bratz Kidz, Bratz Big Kidz, Bratz Babyz, Bratz Babyz Boyz, Bratz
13 | Babyz Ponyz, Lil' Bratz, Lil' Bratz Boyz, Bratz Petz, Bratz Lil' Angelz, Itsy Bitsy
14 | Bratz, Itsy Bitsy Bratz Petz, Micro Bratz, Be-Bratz, and Funky Fashion Makeover
15 | Heads. Mattel played no role in the development of the myriad of accessories for the
16 | Bratz dolls. Mattel played no role in MGA's and/or Klasky Csupo, Inc.'s creation
17 | and/or development of two-dimensional Bratz character art utilized on, for example,
18 | product packaging and licensed products. Mattel played no role in the development
19 | of the successful themes that have enhanced the popularity of the Bratz dolls. Mattel
20 | played no role in the development of the Bratz animated TV series, Bratz TV
21 | commercials, or Bratz the movie. Mattel played no role in the development of the
22 | myriad of Bratz licensed products. Mattel played no role in the development of the
23 | Bratz brand. Mattel played no role in the development of the storylines and personas
24 | associated with each of the Bratz dolls.

25 |      Additionally, neither the first generation of Bratz dolls nor any subsequent
26 | Bratz products were based on any Carter Bryant designs created on or before October
27 | 19, 2000. MGA further contends that the first generation of Bratz dolls (and
28 | subsequent Bratz products) were "conceived of" and "reduced to practice" for

1 purposes of design patent law, and first expressed in a tangible medium for purposes
2 of copyright law, after October 20, 2000, as a result of original, creative efforts of
3 artists employed by, or working on behalf of, MGA. All first-generation Bratz dolls
4 and subsequent Bratz products are not substantially similar to, are not a copy of, and
5 are not derivative of, any Carter Bryant designs completed on or before October 19,
6 2000.

7        To the extent that Mattel argues that the shapes of characters in Carter Bryant's
8 drawings that he called "Bratz" (including, but not limited to, those drawings
9 identified by Carter Bryant in Exhibit 5 of his deposition as being sketched in August
10 1998) represented a conception of what could have later become a three-dimensional
11 object that could have been the subject of a design patent, MGA contends as follows:

12        Carter Bryant was not a sculptor, and any effort to translate his pre-1999 two-
13 dimensional flat art into a three-dimensional form for use as a fashion doll sculpt
14 would have produced shapes that were different from the actual shape of the final
15 three-dimensional Bratz sculpt used in manufacturing the first generation of Bratz
16 dolls released on the market by MGA in or about June 2001. Also, different sculpt
17 artists would have created different sculpts – Bryant's two-dimensional drawings did
18 not dictate a specific three-dimensional object. The shapes of the characters in
19 Bryant's drawings bear little resemblance to the final shape of the actual Bratz dolls.
20 Differences between the drawings and the final shape of the actual Bratz dolls
21 include, but are not limited to, the following:  posture; hip-to-waist ratio; feet size
22 (dolls' feet are not as exaggerated as characters' feet in the drawings); head size
23 (dolls' heads are proportionally smaller than characters' heads in the drawings); eyes
24 (dolls' eyes are more open than characters' eyes in the drawings); other facial features
25 including lips, cheek bones, chin and forehead.

26        Moreover, the final physical shape of the first generation of Bratz dolls,
27 released on the market by MGA in or about June 2001, was conceived of by Margaret
28 Leahy, working on behalf of MGA, along with other MGA agents and employees

72

EXHIBIT 33
PAGE 360

1  such as employees in Hong Kong and Mercedeh Ward. The conception of this
2  physical shape was completed on or after October 20, 2000, and reduced to practice
3  no earlier than December 19, 2000.

4       Copyright infringement analysis under Ninth Circuit law requires that
5  "objective" or "extrinsic" elements that are "scènes-à-faire" in the public domain, or
6  public domain materials that Bryant was aware of and that directly or indirectly
7  influenced him in developing his concept for a new line of fashion dolls, be filtered
8  out of the subject works, and, thereafter, that the remaining "subjective" or "intrinsic"
9  elements be evaluated for substantial similarity. Carter Bryant's 1998 drawings
10 contain many elements that must be filtered out, including but not limited to the
11 oversized head, eyes, lips, and feet of the figures in Bryant's drawings and the stock
12 model and/or doll poses. A non-exhaustive list of examples of prior existing works
13 that incorporate such elements includes the following: sources of inspiration
14 specifically identified by Carter Bryant, including Steve Madden advertisements and
15 Paris Blues advertisements, which were highly visible in 1998 (various Steve Madden
16 advertisements also served as a key inspiration for Mattel's own "Toon Teens" dolls);
17 Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie dolls; Mattel's
18 Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No Name; Hello
19 Kitty; Coca-Cola advertisements; anime, including, e.g., Sailor Moon; and manga.

20      Once all of the materials that directly or indirectly influenced Bryant and all
21 "scène-à-faire" features are eliminated from the analysis, the first generation Bratz
22 dolls (and all subsequent Bratz products) are readily seen as not substantially similar
23 to Carter Bryant's 1998 drawings. The differences between the drawings and the first
24 generation Bratz dolls include, but are not limited to, the following:

25      •    Posture
26      •    Hip-to-waist ratio
27      •    Feet size (dolls' feet are not as exaggerated as characters' feet in the
28           drawings)

73

EXHIBIT __33__

PAGE __361__

1       •    Head size (dolls' heads are proportionally smaller than characters' heads
2           in the drawings)

3       •    Eyes (dolls' eyes are more open than characters' eyes in the drawings)

4       •    Eye to lips ratio (lips of characters in drawings are proportionally larger
5           relative to eyes than are lips of dolls)

6       •    Hair (characters in drawings have much edgier hairstyles than the dolls
7           do)

8       •    Shapes of eyes and eye design

9       •    Shapes of lips

10     •    Overall look and feel (dolls are overall softer, less extreme than
11         drawings)

12       That the dolls and the drawings are not substantially similar also is consistent

13 with the fact that Carter Bryant was not a sculptor, and, as discussed above, any effort

14 to translate his pre-1999 two-dimensional flat art into a three-dimensional form for

15 use as a fashion doll sculpt would have produced shapes that were different from the

16 actual shape of the final three-dimensional Bratz sculpt used in manufacturing the first

17 generation of Bratz dolls released on the market by MGA in or about June 2001.

18 Indeed, a team of highly-skilled artists (including several that had been used by

19 Mattel) spent months developing the Bratz first-generation dolls—valuable time and

20 original creative effort that would not have been necessary if said first-generation

21 Bratz dolls were simply a copy of Bryant's designs.

22       The absence of substantial similarity is further shown in the close correlation

23 between Bryant's drawings and the inspiration he points to, including but not limited

24 to the Steve Madden and Paris Blues advertisements in the August 1998 issue of

25 *Seventeen Magazine*, as well as other advertisements in that issue, such as the Coca

26 Cola advertisement.

27       Mattel's own My Scene Barbie line of dolls provides further proof that the first

28 generation of Bratz dolls was not substantially similar to the Bryant drawings, in that

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES        NO. CV 04-9049 SGL (RNBx)

EXHIBIT  33

PAGE  362

1 (i) Mattel asserts that the My Scene Barbie dolls are independent works of art, not
2 copied from Bratz, yet (ii) said dolls are far closer in appearance to Bratz dolls than
3 are Bryant's two-dimensional drawings.

4      Additional details regarding such differences will be the subject of expert
5 disclosures and will be provided in accordance with the Court's schedule for expert
6 discovery.

7      With respect to any Carter Bryant contribution to the first generation Bratz
8 product after October 4, 2000 and before October 21, 2000, MGA notes that any such
9 contribution was far outweighed by the original and/or creative input of other artists
10 working for or on behalf of MGA on the Bratz concept, which was owned by MGA as
11 a consequence of the transfer of rights from Bryant to MGA.

12      With respect to Bratz two-dimensional character art utilized on, for example,
13 Bratz product packaging and licensed products, while the initial Bratz character art
14 was derivative of Bryant's initial sketches from 1998, by no later than August, 2003,
15 the Bratz character art had changed sufficiently such that it was no longer derivative
16 of Bryant's sketches.

17      The following persons have knowledge of facts and circumstances surrounding
18 the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica Marlow;
19 Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca Harris;
20 Tina Tomiyama; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong; Lily
21 Martinez; Ei Akiko Fong; John Steven Baulch; Aileen Storer; Debora Middleton;
22 Ronan Spelman; Charlotte Broussard.

23      The following documents may be relevant to the foregoing: all documents that
24 refer to or evidence the work performed by MGA employees and freelancers toward
25 the reduction to practice of the first generation of Bratz dolls during the period after
26 October 20, 2000 through June 1, 2001, including but not limited to: Carter Bryant's
27 drawings; documents and tangible things produced by Margaret Leahy; tangible
28 things produced by Veronica Marlow; invoices submitted by employees and/or

EXHIBIT 33
PAGE 363

1  freelance artists working for MGA for work performed on the Bratz project; all
2  documents that constitute samples of the following items in the public domain in
3  1998: Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie dolls;
4  Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No Name;
5  Hello Kitty; anime, including, e.g., Sailor Moon; manga; Coca-Cola advertisements;
6  Steve Madden advertisements; and Paris Blues advertisements; Bratz prototypes,
7  samples, sculpts, and rotocasts found in Hong Kong and produced to Mattel.  The
8  documents evidencing this work are too numerous to identify individually.

9      Q.    Competition Privilege/Justification

10     Mattel's counterclaims are barred in whole or in part on the grounds that the
11  acts of the MGA Defendants were lawful competition or justified.  MGA's
12  development and marketing of toys, including its Bratz fashion dolls and other
13  products constitutes lawful competition.

14     Discovery is ongoing and the MGA Defendants reserve the right to supplement
15  this response and, consistent with its obligations under Federal Rule of Civil
16  Procedure 26(e), the MGA Defendants will supplement this response if they receive
17  additional responsive information.

18     R.    Good Faith

19     Mattel's counterclaims are barred in whole or in part because the MGA
20  Defendants acted in good faith.  MGA acted in good faith when Bryant transferred
21  and MGA acquired all rights to the Bratz concept, because of the following facts of
22  which MGA was aware in the September to October 2000 time period: (i) Bryant had
23  an idea in August or September of 1998, when he was not employed by Mattel, for a
24  series of characters that he named Bratz that could be used to create a line of fashion
25  dolls; (ii) at the same time, Bryant sketched a series of drawings to illustrate his
26  conception; (iii) Bryant was the rightful owner of the concepts reflected in his
27  drawings and other representations of his ideas and of his drawings; (iv) Bryant and
28  his counsel, who MGA understood to have conducted an investigation, represented

76

EXHIBIT __33__

PAGE __364__

1 | and warranted to MGA that Bryant was the exclusive originator and owner of his
2 | Bratz ideas and drawing and that no third party had any interest or rights in the
3 | drawings or the ideas reflected in the drawings; (v) Bryant came recommended by
4 | Veronica Marlow, a trusted freelancer who had worked for MGA in the past; (vi)
5 | immediately upon entering into a written freelance agreement with Bryant, Isaac
6 | Larian, the CEO of MGA, instructed Bryant to immediately resign from Mattel (and
7 | to the extent that anyone at MGA knew or had reason to know that Bryant had given
8 | two-weeks' notice at Mattel, his continuing presence at Mattel during that notice
9 | period had nothing to do with MGA's efforts to invest in and develop a line of dolls
10 | based on Bryant's concepts); (vii) assuming some part of the Bratz concept was a
11 | feature that could have been protected by a design patent, any such invention was not
12 | "conceived of" or "reduced to practice" prior to October 21, 2000, and such
13 | conception and reduction to practice were effectuated by Margaret Leahy, working on
14 | behalf of MGA, after October 20, 2000 and before June 1, 2001, along with other
15 | MGA agents and employees such as employees in Hong Kong and Mercedeh Ward;
16 | and (viii) MGA perceived (correctly) that Bryant's concept for a new line of dolls was
17 | one that needed considerable original, creative contributions and development by
18 | skilled artists who would be retained by MGA. MGA also perceived (correctly) while
19 | Bryant's idea provided a starting point, a significant amount of time, skill, resources,
20 | and original creative effort would be required to create a line of dolls that would have
21 | a chance of succeeding in the highly competitive fashion doll market, historically
22 | dominated by Mattel's Barbie. MGA thus retained for that purpose skilled artists,
23 | including Margaret Leahy, who worked for MGA as a sculptor throughout the
24 | relevant time period, and face painter Anna Rhee. Considerable contributions to the
25 | development of this product were also made by, among others, Paula Garcia, who was
26 | responsible for the overall supervision of the project, Isaac Larian, Mercedeh Ward,
27 | Veronica Marlow, and those involved in package design. This major investment by
28 | MGA, and the risks it faced, confirms MGA's good faith.

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES        NO. CV 04-9049 SGL (RNBx)

EXHIBIT __33__

PAGE __365__

1      Discovery is ongoing and the MGA Defendants reserve the right to supplement

2 this response and, consistent with its obligations under Federal Rule of Civil

3 Procedure 26(e), the MGA Defendants will supplement this response if they receive

4 additional responsive information.

5      The following persons have knowledge of facts and circumstances regarding

6 the foregoing: Carter Bryant; Bryant's mother, Janet Bryant; Bryant's father, Thomas

7 Bryant; Isaac Larian; Jeanne Galvano; Richard Irmen; Elise Cloonan; Ramona Prince;

8 Margaret Leahy; Veronica Marlow; Mercedeh Ward; Sarah Halpern; Paula Garcia;

9 Steve Tarmichael; Rebecca Harris; Cecilia Kwok; David Dees; Jesse Ramirez;

10 Samuel Wong; Edmond Lee; Steven Lee; Aileen Storer; Eric Yip; Leon Djiguerian;

11 Steffen Smith; Rachel Harris; Maggie Siu; Ben Ton; Sam Wong; Ray Wong; Ann

12 Wang; David Rosenbaum.

13      The following documents are relevant to the foregoing: Carter Bryant's

14 August and September 1998 drawings that he called "Bratz" (including, but not

15 limited to, those drawings identified by Carter Bryant in Exhibit 5 of his deposition as

16 being sketched in August 1998); publicly available materials that Bryant identified in

17 his deposition testimony as inspiring his conception of a line of dolls in August or

18 September of 1998, including but not limited to the August 1998 issue of *Seventeen*

19 *Magazine*; all of Carter Bryant's sketches and/or modifications of sketches relating to

20 Bratz concepts which were made by him after January 4, 1999 and prior to October

21 21, 2000; each and every document, prototype, and sample produced by Margaret

22 Leahy, including documents and items marked as exhibits at her deposition and those

23 not marked as exhibits at her deposition; castings produced by Veronica Marlow at

24 her deposition, including photographs of such castings marked as exhibits at her

25 deposition; invoices submitted from Carter Bryant, Veronica Marlow, Anna Rhee,

26 Victoria O'Connor, and other invoices submitted by freelancers for work performed

27 on the Bratz project; documents relating to the work performed by MGA employees

28 and freelancers toward the reduction to practice of the first generation of Bratz dolls

78

EXHIBIT 33

PAGE 366

1 during the period after October 19, 2000 through June 1, 2001, including but not
2 limited to: documents showing the development of the first generation of Bratz dolls;
3 documents showing exchanges with the Hong Kong factory regarding the
4 development of the first generation of Bratz dolls; documents showing the timing of
5 the development of packaging, fashion, and accessories for the first generation of
6 Bratz dolls; documents related to the January 2001 Hong Kong toy fair; documents
7 related to the February 2001 New York toy fair; polyurethane samples of prototypes;
8 rotocasts and sculpts in Hong Kong; all prototypes, samples, and tangible items
9 produced by Margaret Leahy and Veronica Marlow, including items marked as
10 exhibits at their depositions and those not marked as exhibits at their depositions;
11 invoices submitted from Carter Bryant, Veronica Marlow, Anna Rhee, Victoria
12 O'Connor, and other invoices submitted by freelancers for work performed on the
13 Bratz project; Carter Bryant's August and September 1998 drawings that he called
14 "Bratz" (including, but not limited to, those drawings identified by Carter Bryant in
15 Exhibit 5 of his deposition as being sketched in August 1998); and all of Carter
16 Bryant's sketches and/or modifications of sketches relating to Bratz concepts which
17 were made by him after January 4, 1999 and prior to October 21, 2000; Carter
18 Bryant's August and September 1998 drawings that he called "Bratz" (including, but
19 not limited to, those drawings identified by Carter Bryant in Exhibit 5 of his
20 deposition as being sketched in August 1998); publicly available materials that Bryant
21 identified in his deposition testimony as inspiring his conception of a line of dolls in
22 August or September of 1998, including but not limited to the August 1998 issue of
23 *Seventeen Magazine*; Mattel's Brand Directional Outlines; analyses and assessments
24 of Mattel's marketing strategies prepared and/or produced by Young and Rubicam
25 Brands and Peterson Milla Hooks; Mattel's Marketing Department assessments of
26 Mattel's advertising and branding strategies; Mattel's Creative Briefs; documents
27 generated by Mattel Worldwide Consumer Research relating to any aspect of the
28 market for fashion dolls, including without limitation Bratz, My Scene, and Barbie;

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES          NO. CV 04-9049 SGL (RNBx)

EXHIBIT __33__

PAGE __367__

1 | each and every document, prototype, and sample produced by Margaret Leahy,
2 | including documents and items marked as exhibits at her deposition and those not
3 | marked as exhibits at her deposition; castings produced by Veronica Marlow at her
4 | deposition, including photographs of such castings marked at her deposition; invoices
5 | submitted from Carter Bryant, Veronica Marlow, Anna Rhee, Victoria O'Connor, and
6 | other invoices submitted by freelancers for work performed on the Bratz project; all of
7 | Carter Bryant's sketches and/or modifications of sketches relating to Bratz concepts
8 | which were made by him after January 4, 1999 and prior to October 21, 2000.

9 |     S.    Lack of Authority

10 |     Mattel's counterclaims are barred in whole or in part on the grounds that to the
11 | extent any person committed an unlawful or tortious act, the person lacked authority
12 | to commit such act on behalf of the MGA Defendants.

13 |     Discovery is ongoing and the MGA Defendants reserve the right to supplement
14 | this response and, consistent with its obligations under Federal Rule of Civil
15 | Procedure 26(e), the MGA Defendants will supplement this response if they receive
16 | additional responsive information.

17 |     T.    Lack of Standing

18 |     Mattel's counterclaims are barred in whole or in part by its lack of standing
19 | because does not have any ownership interest in Bratz. Carter Bryant conceived of
20 | the idea for a new line of fashion dolls that he called "Bratz" in August/September
21 | 1998, a time when he was not employed by Mattel. There was neither a conception
22 | nor a reduction to practice of Bryant's idea for Bratz, as those terms are used in patent
23 | law and/or in the Employee Confidential Information and Inventions Agreement
24 | produced in this action by Mattel as M0001596 ("Employee Agreement"), during the
25 | period of Bryant's employment Mattel. Any work that Bryant performed relating to
26 | his Bratz ideas during the time period that he was still employed by Mattel constituted
27 | lawful steps by Bryant to prepare to embark upon a new career. Consequently, the
28 | Employee Agreement, which by its express terms is limited to inventions conceived

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES      NO. CV 04-9049 SGL (RNBx)

EXHIBIT 33

PAGE 368

1    also have pending motions to compel against Mattel.  The MGA Defendants reserve

2    the right to assert any further or additional defenses upon receiving more complete

3    information regarding the matters alleged in the Counterclaims, through discovery or

4    otherwise.

5

6    DATED:  January 7, 2008

7                       SKADDEN, ARPS, SLATE, MEAGHER &
                          FLOM LLP

8

9                By:  _____

10                      Thomas J. Nolan
                       Attorneys for Counter-Defendants, MGA

11                    ENTERTAINMENT, INC., ISAAC LARIAN,
                   MGA ENTERTAINMENT (HK) Ltd., and MGAE

12                    de MEXICO S.R.L. de C.V.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

85

EXHIBIT 33
PAGE 369

# EXHIBIT 33

RECEIVED

JAN – 8 2008

1 THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 300 South Grand Avenue
Los Angeles, CA 90071-3144
3 Telephone: (213) 687-5000
Facsimile: (213) 687-5600
4 E-mail: tnolan@skadden.com

5 KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 4 Times Square
New York, NY 10036
7 Telephone: (212) 735-3000
Facsimile: (212) 735-2000
8 E-mail: kplevan@skadden.com

9 Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
10 (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11 **UNITED STATES DISTRICT COURT**

12 **CENTRAL DISTRICT OF CALIFORNIA**

13 **EASTERN DIVISION**

14 CARTER BRYANT, an individual ) CASE NO. CV 04-9049 SGL (RNBx)
                                )
15         Plaintiff,           ) Consolidated with Case No. 04-9059
                                ) and Case No. 05-2727
16      v.                      )
                                ) **MGA'S RESPONSE TO**
17 MATTEL, INC., a Delaware     ) **MATTEL, INC.'S AMENDED**
   corporation                  ) **SUPPLEMENTAL**
18                              ) **INTERROGATORY**
           Defendant.           ) **REGARDING DEFENDANTS'**
19                              ) **AFFIRMATIVE DEFENSES**
                                )
20                              ) **CONFIDENTIAL --**
                                ) **ATTORNEYS' EYES ONLY**
21                              )
                                ) Honorable Stephen G. Larson
22                              ) Courtroom 1
                                )
23                              ) Discovery Cut-Off: March 3, 2008

24

25

26

27

28

I-7

EXHIBIT 33
PAGE 354

## **PRELIMINARY STATEMENT**

The General Response set forth herein applies to all responses that MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C. V., (the "MGA Defendants") are providing in response to the amended supplemental interrogatory regarding affirmative defenses (the "Interrogatory") or may in the future provide in response to any discovery request in this action. The Response is made without waiving, or intending to waive but, on the contrary, expressly reserving: (a) the right to object, on the grounds of competency, privilege, relevancy or materiality, or any other proper grounds, to the use of the Response, for any purpose in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other interrogatories or other discovery procedures; and (c) the right at any time to revise, correct, add to, or clarify any of the responses propounded herein.

The Response reflects only the present state of the MGA Defendants' discovery regarding the information that Mattel seeks. Discovery and other investigation or research concerning this litigation are continuing. It is anticipated that further discovery, independent investigation, and legal research and analysis will supply additional facts and meaning to the known facts, as well as establish entirely new factual conclusions, all of which may lead the MGA Defendants to discover other information responsive to this Interrogatory. The MGA Defendants therefore reserve the right to amend or supplement this Response at any time in light of future investigation, research or analysis, and also expressly reserves the right to rely on, at any time, including trial, subsequently discovered information omitted from this Response as a result of mistake, error, oversight or inadvertence. The MGA Defendants do not hereby admit, adopt or acquiesce in any factual or legal contention, assertion or characterization contained in the Interrogatory or any particular request therein, even where the MGA Defendants have not otherwise objected to a particular interrogatory, or has agreed to provide information responsive to a particular

1

EXHIBIT _33_

PAGE _355_

1  interrogatory.

2      No incidental or implied admissions are intended by this Response. These
3  responses should not be taken as an admission that the MGA Defendants accept or
4  admit the existence of any facts set forth or assumed by any instruction, definition or
5  interrogatory.

6  **SUPPLEMENTAL INTERROGATORY:**

7      State the facts upon which YOU intend to rely at trial to support YOUR
8  affirmative defenses, and IDENTIFY all PERSONS with knowledge of those facts
9  and all DOCUMENTS that REFER OR RELATE TO those facts.

10  **RESPONSE TO SUPPLEMENTAL INTERROGATORY:**

11      A.    Failure to State a Claim

12      Mattel's counterclaims fail to state a claim against the MGA Defendants upon
13  which relief can be granted. This is a legal defense and does not require factual
14  support.

15      B.    Unclean Hands / *in Pari Delicto*

16      Mattel's counterclaims are barred in whole or in part by Mattel's unclean
17  hands and wrongful acts. This affirmative defense is based, in part, on Mattel's
18  efforts to undermine MGA's business and to "kill" Bratz at any cost which includes,
19  but is not limited to, Mattel's efforts to infringe and dilute MGA's trade dress, copy
20  MGA's products, packaging, themes, and advertising, and engage in other acts of
21  unfair competition against MGA. Since the Bratz dolls were launched in 2001, Mattel
22  has serially imitated and copied many of MGA's products, trade dress, trademarks,
23  themes, ideas, advertising and product packaging, including, but not limited, to:

24      •    Mattel imitated and copied the disproportionately large heads, distinctive
25           faces with artfully made-up, heavy-lidded, sultry, almond-shaped large
26           eyes and large, overly-lined and lipsticked lips, trendy, hip clothes and
27           hair styles, and oversized feet of MGA's Bratz female fashion dolls with
28           Mattel's My Scene fashion dolls. Further, Mattel has systematically

2

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES          NO. CV 04-9049 SGL (RNBx)

EXHIBIT 33
PAGE 356

1  use as a fashion doll sculpt would have produced shapes that were different from the
2  actual shape of the final three-dimensional Bratz sculpt used in manufacturing the first
3  generation of Bratz dolls released on the market by MGA in or about June 2001.
4  Indeed, a team of highly-skilled artists (including several that had been used by
5  Mattel) spent months developing the Bratz first-generation dolls—valuable time and
6  original creative effort that would not have been necessary if said first-generation
7  Bratz dolls were simply a copy of Bryant's designs.

8       The absence of substantial similarity is further shown in the close correlation
9  between Bryant's drawings and the inspiration he points to, including but not limited
10  to the Steve Madden and Paris Blues advertisements in the August 1998 issue of
11  *Seventeen Magazine*, as well as other advertisements in that issue, such as the Coca
12  Cola advertisement.

13       Mattel's own My Scene Barbie line of dolls provides further proof that the first
14  generation of Bratz dolls was not substantially similar to the Bryant drawings, in that
15  (i) Mattel asserts that the My Scene Barbie dolls are independent works of art, not
16  copied from Bratz, yet (ii) said dolls are far closer in appearance to Bratz dolls than
17  are Bryant's two-dimensional drawings.

18       Additional details regarding such differences will be the subject of expert
19  disclosures and will be provided in accordance with the Court's schedule for expert
20  discovery.

21       With respect to any Carter Bryant contribution to the first generation Bratz
22  product after October 4, 2000 and before October 21, 2000, MGA notes that any such
23  contribution was far outweighed by the original and/or creative input of other artists
24  working for or on behalf of MGA on the Bratz concept, which was owned by MGA as
25  a consequence of the transfer of rights from Bryant to MGA.

26       With respect to Bratz two-dimensional character art utilized on, for example,
27  Bratz product packaging and licensed products, while the initial Bratz character art
28  was derivative of Bryant's initial sketches from 1998, by no later than August, 2003,

69

EXHIBIT 33

PAGE 357

1   the Bratz character art had changed sufficiently such that it was no longer derivative

2   of Bryant's sketches.

3        The following persons have knowledge of facts and circumstances surrounding

4   the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica Marlow;

5   Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca Harris;

6   Tina Tomiyama; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong; Lily

7   Martinez; Ei Akiko Fong; John Steven Baulch; Aileen Storer; Debora Middleton;

8   Ronan Spelman; Charlotte Broussard.

9        The following documents may be relevant to the foregoing:  all documents

10  that refer to or evidence the work performed by MGA employees and freelancers

11  toward the reduction to practice of the first generation of Bratz dolls during the period

12  after October 20, 2000 through June 1, 2001, including but not limited to:  Carter

13  Bryant's drawings; documents and tangible things produced by Margaret Leahy;

14  tangible things produced by Veronica Marlow; invoices submitted by employees

15  and/or freelance artists working for MGA for work performed on the Bratz project; all

16  documents that constitute samples of the following items in the public domain in

17  1998: Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie dolls;

18  Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No Name;

19  Hello Kitty; anime, including, e.g., Sailor Moon; manga; Coca-Cola advertisements;

20  Steve Madden advertisements; and Paris Blues advertisements; Bratz prototypes,

21  samples, sculpts, and rotocasts found in Hong Kong and produced to Mattel.  The

22  documents evidencing this work are too numerous to identify individually.

23        P.   Joint Authorship

24        MGA Defendants deny that Mattel owns any copyright interest in the alleged

25  works, but even if it did, any liability would be eliminated or greatly diminished by

26  the doctrine of joint authorship. The original concepts contributed by Bryant to the

27  creation of the Bratz dolls represent only one of the many factors that combined to

28  make Bratz one of the most successful fashion dolls on the market.  The contributions

1  made by MGA to the Bratz dolls far outweigh any contributions made by Bryant prior
2  to October 21, 2000 in terms of the overall factors that contributed to the commercial
3  success of Bratz. Mattel played no role in MGA's improvements, enhancements and
4  changes to the Bratz dolls and/or the Bratz concept. Mattel played no role in the
5  creation and/or selection of the Bratz slogan, "The Girls with a Passion for Fashion!"
6  or the brand name "Bratz." Mattel played no role in the development of the Bratz line
7  of dolls' innovative and trend-setting packaging, the importance of which is
8  demonstrated in part by Mattel's having copied such packaging. Mattel played no
9  role in MGA's development of and selection of the fashions for the Bratz dolls.
10 Mattel played no role in the development of other MGA Bratz spinoff, sub-brands,
11 and other successful additions to the Bratz doll family, including, but not limited to,
12 Bratz Boyz, Bratz Kidz, Bratz Big Kidz, Bratz Babyz, Bratz Babyz Boyz, Bratz
13 Babyz Ponyz, Lil' Bratz, Lil' Bratz Boyz, Bratz Petz, Bratz Lil' Angelz, Itsy Bitsy
14 Bratz, Itsy Bitsy Bratz Petz, Micro Bratz, Be-Bratz, and Funky Fashion Makeover
15 Heads. Mattel played no role in the development of the myriad of accessories for the
16 Bratz dolls. Mattel played no role in MGA's and/or Klasky Csupo, Inc.'s creation
17 and/or development of two-dimensional Bratz character art utilized on, for example,
18 product packaging and licensed products. Mattel played no role in the development
19 of the successful themes that have enhanced the popularity of the Bratz dolls. Mattel
20 played no role in the development of the Bratz animated TV series, Bratz TV
21 commercials, or Bratz the movie. Mattel played no role in the development of the
22 myriad of Bratz licensed products. Mattel played no role in the development of the
23 Bratz brand. Mattel played no role in the development of the storylines and personas
24 associated with each of the Bratz dolls.

25      Additionally, neither the first generation of Bratz dolls nor any subsequent
26 Bratz products were based on any Carter Bryant designs created on or before October
27 19, 2000. MGA further contends that the first generation of Bratz dolls (and
28 subsequent Bratz products) were "conceived of" and "reduced to practice" for

EXHIBIT **33**

PAGE **359**

1  purposes of design patent law, and first expressed in a tangible medium for purposes
2  of copyright law, after October 20, 2000, as a result of original, creative efforts of
3  artists employed by, or working on behalf of, MGA.  All first-generation Bratz dolls
4  and subsequent Bratz products are not substantially similar to, are not a copy of, and
5  are not derivative of, any Carter Bryant designs completed on or before October 19,
6  2000.

7       To the extent that Mattel argues that the shapes of characters in Carter Bryant's
8  drawings that he called "Bratz" (including, but not limited to, those drawings
9  identified by Carter Bryant in Exhibit 5 of his deposition as being sketched in August
10  1998) represented a conception of what could have later become a three-dimensional
11  object that could have been the subject of a design patent, MGA contends as follows:

12       Carter Bryant was not a sculptor, and any effort to translate his pre-1999 two-
13  dimensional flat art into a three-dimensional form for use as a fashion doll sculpt
14  would have produced shapes that were different from the actual shape of the final
15  three-dimensional Bratz sculpt used in manufacturing the first generation of Bratz
16  dolls released on the market by MGA in or about June 2001.  Also, different sculpt
17  artists would have created different sculpts – Bryant's two-dimensional drawings did
18  not dictate a specific three-dimensional object.  The shapes of the characters in
19  Bryant's drawings bear little resemblance to the final shape of the actual Bratz dolls.
20  Differences between the drawings and the final shape of the actual Bratz dolls
21  include, but are not limited to, the following:  posture; hip-to-waist ratio; feet size
22  (dolls' feet are not as exaggerated as characters' feet in the drawings); head size
23  (dolls' heads are proportionally smaller than characters' heads in the drawings); eyes
24  (dolls' eyes are more open than characters' eyes in the drawings); other facial features
25  including lips, cheek bones, chin and forehead.

26       Moreover, the final physical shape of the first generation of Bratz dolls,
27  released on the market by MGA in or about June 2001, was conceived of by Margaret
28  Leahy, working on behalf of MGA, along with other MGA agents and employees

EXHIBIT  33
PAGE  360

1 such as employees in Hong Kong and Mercedeh Ward.  The conception of this
2 physical shape was completed on or after October 20, 2000, and reduced to practice
3 no earlier than December 19, 2000.

4       Copyright infringement analysis under Ninth Circuit law requires that
5 "objective" or "extrinsic" elements that are "scènes-à-faire" in the public domain, or
6 public domain materials that Bryant was aware of and that directly or indirectly
7 influenced him in developing his concept for a new line of fashion dolls, be filtered
8 out of the subject works, and, thereafter, that the remaining "subjective" or "intrinsic"
9 elements be evaluated for substantial similarity.  Carter Bryant's 1998 drawings
10 contain many elements that must be filtered out, including but not limited to the
11 oversized head, eyes, lips, and feet of the figures in Bryant's drawings and the stock
12 model and/or doll poses.  A non-exhaustive list of examples of prior existing works
13 that incorporate such elements includes the following:  sources of inspiration
14 specifically identified by Carter Bryant, including Steve Madden advertisements and
15 Paris Blues advertisements, which were highly visible in 1998 (various Steve Madden
16 advertisements also served as a key inspiration for Mattel's own "Toon Teens" dolls);
17 Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie dolls; Mattel's
18 Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No Name; Hello
19 Kitty; Coca-Cola advertisements; anime, including, e.g., Sailor Moon; and manga.

20       Once all of the materials that directly or indirectly influenced Bryant and all
21 "scène-à-faire" features are eliminated from the analysis, the first generation Bratz
22 dolls (and all subsequent Bratz products) are readily seen as not substantially similar
23 to Carter Bryant's 1998 drawings.  The differences between the drawings and the first
24 generation Bratz dolls include, but are not limited to, the following:

25    •    Posture

26    •    Hip-to-waist ratio

27    •    Feet size (dolls' feet are not as exaggerated as characters' feet in the

28         drawings)

73

EXHIBIT  33

PAGE  361

1      • Head size (dolls' heads are proportionally smaller than characters' heads
2         in the drawings)
3      • Eyes (dolls' eyes are more open than characters' eyes in the drawings)
4      • Eye to lips ratio (lips of characters in drawings are proportionally larger
5         relative to eyes than are lips of dolls)
6      • Hair (characters in drawings have much edgier hairstyles than the dolls
7         do)
8      • Shapes of eyes and eye design
9      • Shapes of lips
10     • Overall look and feel (dolls are overall softer, less extreme than
11        drawings)

12        That the dolls and the drawings are not substantially similar also is consistent
13     with the fact that Carter Bryant was not a sculptor, and, as discussed above, any effort
14     to translate his pre-1999 two-dimensional flat art into a three-dimensional form for
15     use as a fashion doll sculpt would have produced shapes that were different from the
16     actual shape of the final three-dimensional Bratz sculpt used in manufacturing the first
17     generation of Bratz dolls released on the market by MGA in or about June 2001.
18     Indeed, a team of highly-skilled artists (including several that had been used by
19     Mattel) spent months developing the Bratz first-generation dolls—valuable time and
20     original creative effort that would not have been necessary if said first-generation
21     Bratz dolls were simply a copy of Bryant's designs.

22        The absence of substantial similarity is further shown in the close correlation
23     between Bryant's drawings and the inspiration he points to, including but not limited
24     to the Steve Madden and Paris Blues advertisements in the August 1998 issue of
25     *Seventeen Magazine*, as well as other advertisements in that issue, such as the Coca
26     Cola advertisement.

27        Mattel's own My Scene Barbie line of dolls provides further proof that the first
28     generation of Bratz dolls was not substantially similar to the Bryant drawings, in that

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES          NO. CV 04-9049 SGL (RNBx)

EXHIBIT  33
PAGE  362

1 (i) Mattel asserts that the My Scene Barbie dolls are independent works of art, not
2 copied from Bratz, yet (ii) said dolls are far closer in appearance to Bratz dolls than
3 are Bryant's two-dimensional drawings.

4     Additional details regarding such differences will be the subject of expert
5 disclosures and will be provided in accordance with the Court's schedule for expert
6 discovery.

7     With respect to any Carter Bryant contribution to the first generation Bratz
8 product after October 4, 2000 and before October 21, 2000, MGA notes that any such
9 contribution was far outweighed by the original and/or creative input of other artists
10 working for or on behalf of MGA on the Bratz concept, which was owned by MGA as
11 a consequence of the transfer of rights from Bryant to MGA.

12     With respect to Bratz two-dimensional character art utilized on, for example,
13 Bratz product packaging and licensed products, while the initial Bratz character art
14 was derivative of Bryant's initial sketches from 1998, by no later than August, 2003,
15 the Bratz character art had changed sufficiently such that it was no longer derivative
16 of Bryant's sketches.

17     The following persons have knowledge of facts and circumstances surrounding
18 the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica Marlow;
19 Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca Harris;
20 Tina Tomiyama; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong; Lily
21 Martinez; Ei Akiko Fong; John Steven Baulch; Aileen Storer; Debora Middleton;
22 Ronan Spelman; Charlotte Broussard.

23     The following documents may be relevant to the foregoing: all documents that
24 refer to or evidence the work performed by MGA employees and freelancers toward
25 the reduction to practice of the first generation of Bratz dolls during the period after
26 October 20, 2000 through June 1, 2001, including but not limited to: Carter Bryant's
27 drawings; documents and tangible things produced by Margaret Leahy; tangible
28 things produced by Veronica Marlow; invoices submitted by employees and/or

EXHIBIT 33

PAGE 363

1  freelance artists working for MGA for work performed on the Bratz project; all
2  documents that constitute samples of the following items in the public domain in
3  1998: Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie dolls;
4  Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No Name;
5  Hello Kitty; anime, including, e.g., Sailor Moon; manga; Coca-Cola advertisements;
6  Steve Madden advertisements; and Paris Blues advertisements; Bratz prototypes,
7  samples, sculpts, and rotocasts found in Hong Kong and produced to Mattel.  The
8  documents evidencing this work are too numerous to identify individually.

9      Q.   Competition Privilege/Justification

10     Mattel's counterclaims are barred in whole or in part on the grounds that the
11 acts of the MGA Defendants were lawful competition or justified.  MGA's
12 development and marketing of toys, including its Bratz fashion dolls and other
13 products constitutes lawful competition.

14     Discovery is ongoing and the MGA Defendants reserve the right to supplement
15 this response and, consistent with its obligations under Federal Rule of Civil
16 Procedure 26(e), the MGA Defendants will supplement this response if they receive
17 additional responsive information.

18     R.   Good Faith

19     Mattel's counterclaims are barred in whole or in part because the MGA
20 Defendants acted in good faith.  MGA acted in good faith when Bryant transferred
21 and MGA acquired all rights to the Bratz concept, because of the following facts of
22 which MGA was aware in the September to October 2000 time period: (i) Bryant had
23 an idea in August or September of 1998, when he was not employed by Mattel, for a
24 series of characters that he named Bratz that could be used to create a line of fashion
25 dolls; (ii) at the same time, Bryant sketched a series of drawings to illustrate his
26 conception; (iii) Bryant was the rightful owner of the concepts reflected in his
27 drawings and other representations of his ideas and of his drawings; (iv) Bryant and
28 his counsel, who MGA understood to have conducted an investigation, represented

1 and warranted to MGA that Bryant was the exclusive originator and owner of his
2 Bratz ideas and drawing and that no third party had any interest or rights in the
3 drawings or the ideas reflected in the drawings; (v) Bryant came recommended by
4 Veronica Marlow, a trusted freelancer who had worked for MGA in the past; (vi)
5 immediately upon entering into a written freelance agreement with Bryant, Isaac
6 Larian, the CEO of MGA, instructed Bryant to immediately resign from Mattel (and
7 to the extent that anyone at MGA knew or had reason to know that Bryant had given
8 two-weeks' notice at Mattel, his continuing presence at Mattel during that notice
9 period had nothing to do with MGA's efforts to invest in and develop a line of dolls
10 based on Bryant's concepts); (vii) assuming some part of the Bratz concept was a
11 feature that could have been protected by a design patent, any such invention was not
12 "conceived of" or "reduced to practice" prior to October 21, 2000, and such
13 conception and reduction to practice were effectuated by Margaret Leahy, working on
14 behalf of MGA, after October 20, 2000 and before June 1, 2001, along with other
15 MGA agents and employees such as employees in Hong Kong and Mercedeh Ward;
16 and (viii) MGA perceived (correctly) that Bryant's concept for a new line of dolls was
17 one that needed considerable original, creative contributions and development by
18 skilled artists who would be retained by MGA.  MGA also perceived (correctly) while
19 Bryant's idea provided a starting point, a significant amount of time, skill, resources,
20 and original creative effort would be required to create a line of dolls that would have
21 a chance of succeeding in the highly competitive fashion doll market, historically
22 dominated by Mattel's Barbie.  MGA thus retained for that purpose skilled artists,
23 including Margaret Leahy, who worked for MGA as a sculptor throughout the
24 relevant time period, and face painter Anna Rhee.  Considerable contributions to the
25 development of this product were also made by, among others, Paula Garcia, who was
26 responsible for the overall supervision of the project, Isaac Larian, Mercedeh Ward,
27 Veronica Marlow, and those involved in package design.  This major investment by
28 MGA, and the risks it faced, confirms MGA's good faith.

EXHIBIT  33

PAGE  365

1   Discovery is ongoing and the MGA Defendants reserve the right to supplement
2   this response and, consistent with its obligations under Federal Rule of Civil
3   Procedure 26(e), the MGA Defendants will supplement this response if they receive
4   additional responsive information.

5   The following persons have knowledge of facts and circumstances regarding
6   the foregoing: Carter Bryant; Bryant's mother, Janet Bryant; Bryant's father, Thomas
7   Bryant; Isaac Larian; Jeanne Galvano; Richard Irmen; Elise Cloonan; Ramona Prince;
8   Margaret Leahy; Veronica Marlow; Mercedeh Ward; Sarah Halpern; Paula Garcia;
9   Steve Tarmichael; Rebecca Harris; Cecilia Kwok; David Dees; Jesse Ramirez;
10  Samuel Wong; Edmond Lee; Steven Lee; Aileen Storer; Eric Yip; Leon Djiguerian;
11  Steffen Smith; Rachel Harris; Maggie Siu; Ben Ton; Sam Wong; Ray Wong; Ann
12  Wang; David Rosenbaum.

13  The following documents are relevant to the foregoing: Carter Bryant's
14  August and September 1998 drawings that he called "Bratz" (including, but not
15  limited to, those drawings identified by Carter Bryant in Exhibit 5 of his deposition as
16  being sketched in August 1998); publicly available materials that Bryant identified in
17  his deposition testimony as inspiring his conception of a line of dolls in August or
18  September of 1998, including but not limited to the August 1998 issue of *Seventeen*
19  *Magazine*; all of Carter Bryant's sketches and/or modifications of sketches relating to
20  Bratz concepts which were made by him after January 4, 1999 and prior to October
21  21, 2000; each and every document, prototype, and sample produced by Margaret
22  Leahy, including documents and items marked as exhibits at her deposition and those
23  not marked as exhibits at her deposition; castings produced by Veronica Marlow at
24  her deposition, including photographs of such castings marked as exhibits at her
25  deposition; invoices submitted from Carter Bryant, Veronica Marlow, Anna Rhee,
26  Victoria O'Connor, and other invoices submitted by freelancers for work performed
27  on the Bratz project; documents relating to the work performed by MGA employees
28  and freelancers toward the reduction to practice of the first generation of Bratz dolls

78

EXHIBIT 33

PAGE 366

1 │ during the period after October 19, 2000 through June 1, 2001, including but not
2 │ limited to: documents showing the development of the first generation of Bratz dolls;
3 │ documents showing exchanges with the Hong Kong factory regarding the
4 │ development of the first generation of Bratz dolls; documents showing the timing of
5 │ the development of packaging, fashion, and accessories for the first generation of
6 │ Bratz dolls; documents related to the January 2001 Hong Kong toy fair; documents
7 │ related to the February 2001 New York toy fair; polyurethane samples of prototypes;
8 │ rotocasts and sculpts in Hong Kong; all prototypes, samples, and tangible items
9 │ produced by Margaret Leahy and Veronica Marlow, including items marked as
10 │ exhibits at their depositions and those not marked as exhibits at their depositions;
11 │ invoices submitted from Carter Bryant, Veronica Marlow, Anna Rhee, Victoria
12 │ O'Connor, and other invoices submitted by freelancers for work performed on the
13 │ Bratz project; Carter Bryant's August and September 1998 drawings that he called
14 │ "Bratz" (including, but not limited to, those drawings identified by Carter Bryant in
15 │ Exhibit 5 of his deposition as being sketched in August 1998); and all of Carter
16 │ Bryant's sketches and/or modifications of sketches relating to Bratz concepts which
17 │ were made by him after January 4, 1999 and prior to October 21, 2000; Carter
18 │ Bryant's August and September 1998 drawings that he called "Bratz" (including, but
19 │ not limited to, those drawings identified by Carter Bryant in Exhibit 5 of his
20 │ deposition as being sketched in August 1998); publicly available materials that Bryant
21 │ identified in his deposition testimony as inspiring his conception of a line of dolls in
22 │ August or September of 1998, including but not limited to the August 1998 issue of
23 │ *Seventeen Magazine*; Mattel's Brand Directional Outlines; analyses and assessments
24 │ of Mattel's marketing strategies prepared and/or produced by Young and Rubicam
25 │ Brands and Peterson Milla Hooks; Mattel's Marketing Department assessments of
26 │ Mattel's advertising and branding strategies; Mattel's Creative Briefs; documents
27 │ generated by Mattel Worldwide Consumer Research relating to any aspect of the
28 │ market for fashion dolls, including without limitation Bratz, My Scene, and Barbie;

EXHIBIT __33__

PAGE __367__

1  each and every document, prototype, and sample produced by Margaret Leahy,
2  including documents and items marked as exhibits at her deposition and those not
3  marked as exhibits at her deposition; castings produced by Veronica Marlow at her
4  deposition, including photographs of such castings marked at her deposition; invoices
5  submitted from Carter Bryant, Veronica Marlow, Anna Rhee, Victoria O'Connor, and
6  other invoices submitted by freelancers for work performed on the Bratz project; all of
7  Carter Bryant's sketches and/or modifications of sketches relating to Bratz concepts
8  which were made by him after January 4, 1999 and prior to October 21, 2000.

9       S.     Lack of Authority

10      Mattel's counterclaims are barred in whole or in part on the grounds that to the
11  extent any person committed an unlawful or tortious act, the person lacked authority
12  to commit such act on behalf of the MGA Defendants.

13      Discovery is ongoing and the MGA Defendants reserve the right to supplement
14  this response and, consistent with its obligations under Federal Rule of Civil
15  Procedure 26(e), the MGA Defendants will supplement this response if they receive
16  additional responsive information.

17      T.     Lack of Standing

18      Mattel's counterclaims are barred in whole or in part by its lack of standing
19  because does not have any ownership interest in Bratz.  Carter Bryant conceived of
20  the idea for a new line of fashion dolls that he called "Bratz" in August/September
21  1998, a time when he was not employed by Mattel.  There was neither a conception
22  nor a reduction to practice of Bryant's idea for Bratz, as those terms are used in patent
23  law and/or in the Employee Confidential Information and Inventions Agreement
24  produced in this action by Mattel as M0001596 ("Employee Agreement"), during the
25  period of Bryant's employment Mattel.  Any work that Bryant performed relating to
26  his Bratz ideas during the time period that he was still employed by Mattel constituted
27  lawful steps by Bryant to prepare to embark upon a new career.  Consequently, the
28  Employee Agreement, which by its express terms is limited to inventions conceived

80

EXHIBIT 33
PAGE 368

1  also have pending motions to compel against Mattel.  The MGA Defendants reserve

2  the right to assert any further or additional defenses upon receiving more complete

3  information regarding the matters alleged in the Counterclaims, through discovery or

4  otherwise.

5

6  DATED:  January 7, 2008

7                                    SKADDEN, ARPS, SLATE, MEAGHER &
                                     FLOM LLP
8

9                                    By: _____

10                                        Thomas J. Nolan
                                     Attorneys for Counter-Defendants, MGA
11                                   ENTERTAINMENT, INC., ISAAC LARIAN,
                                     MGA ENTERTAINMENT (HK) Ltd., and MGAE
12                                   de MEXICO S.R.L. de C.V.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES          NO. CV 04-9049 SGL (RNBx)

EXHIBIT 33
PAGE 369

# EXHIBIT 34

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

     Plaintiff,

      vs.

MATTEL, INC., a Delaware
corporation,

     Defendants.

AND CONSOLIDATED ACTIONS.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. CV 04-9405 and
05-2727

**CERTIFIED
COPY**

---

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Wednesday, March 11, 2009

Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 106486

EXHIBIT 34
PAGE 370

1               UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
2                     EASTERN DIVISION

3

4    CARTER BRYANT, an individual,

5           Plaintiff,

6       vs.                          No. CV 04-9049 SGL (RNBx)
                                     Consolidated with
7    MATTEL, INC., a Delaware        Nos. CV 04-9405 and
     corporation,                    05-2727

8

           Defendants.
9    _____

10   AND CONSOLIDATED ACTIONS.

11

12   _____

13

14

15

16          REPORTER'S TRANSCRIPT OF PROCEEDINGS, taken at

17   555 West Fifth Street, 48th Floor, Los Angeles,

18   California, beginning at 10:18 a.m. and ending at

19   11:53 a.m. on Wednesday, March 11, 2009, before

20   CHERYL R. KAMALSKI, Certified Shorthand Reporter No. 7113.

21

22

23

24

25

EXHIBIT 34
PAGE 371

```
 1   APPEARANCES:

 2

 3   Discovery Master:

 4        ROBERT C. O'BRIEN
          Attorney at Law
 5        555 West Fifth Street, Suite 4800
          Los Angeles, California 90013-1065
 6        (213) 629-7400

 7   For Defendant Mattel, Inc.:

 8        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
          BY:   MICHAEL T. ZELLER
 9        BY:   B. DYLAN PROCTOR
          BY:   JON COREY
10        Attorneys at Law
          865 South Figueroa Street, 10th Floor
11        Los Angeles, California 90017
          (213) 624-7707
12
     For Defendant MGA:
13
          GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
14        BY:   JOEL KLEVENS
          Attorney at Law
15        10250 Constellation Boulevard, Nineteenth Floor
          Los Angeles, California 90067
16        (310) 553-3000

17   Also Present:

18        CRAIG HOLDEN

19

20

21

22

23

24

25
```

3

EXHIBIT __34__

PAGE __372__

 1    accessible to MGA.  Because if they had been successful in

 2    bringing about a criminal prosecution against MGA, MGA

 3    would have had a right to see those documents.  And that

 4    is an expressed ground for waiver of the work product

 5    privilege, which Mattel concedes, in its papers, that if

 6    you give the documents that you're alleging are work

 7    product to somebody under circumstances where it

 8    substantially increases that documents are going to be

 9    made available to your adversary, that that waives the

10    privilege.  And that's precisely what they did when they

11    gave the documents to Mexican authorities, U.S.

12    authorities and Canadian authorities in order to bring

13    about a litigation against MGA.

14          And the second reason that the work product

15    privilege is waived is conceded, and now it becomes

16    apparent why, I think, Mattel wanted to file a second

17    opposition -- you're aware that they filed an opposition

18    way back when, when this motion was made, and then

19    discovery was stayed, and the appropriate thing would have

20    been we would have simply filed a reply, because it was

21    stayed before we filed a reply, and that would have been

22    the end of the documents, but Mattel insisted on filing a

23    new opposition, which, of course, repeated all the

24    arguments in their first one, but it left out something

25    that was in the first one, and that is at page 3, lines 17

37

EXHIBIT 34
PAGE 373

1    and 18, and in paragraph 16 of the Alger declaration,

2    which was submitted in support of their first opposition,

3    and what that says is that Mattel had selectively produced

4    documents that, quote, "reflected communications between

5    Mattel and law enforcement." And, of course, that

6    concession is another admission that there must be a

7    waiver of the work product privilege, if it had any

8    application. Because you cannot, and the law, again, on

9    this is clear, you cannot selectively give up work product

10   documents and then refuse to produce the rest. And that's

11   precisely what happened here and precisely what is

12   admitted in that initial opposition and that initial

13   declaration from Mr. Alger.

14              So if there were an application of the work

15   product privilege here, which there is not, it was waived

16   by selective production and by the disclosure itself to

17   the Mexican, Canadian and U.S. authorities.

18              And lastly the position that Mattel takes that

19   the litigation privilege or the Noerr-Pennington doctrine

20   would protect them is totally lame.

21              The law is clear that those doctrines have to do

22   with whether Mattel should be afforded immunity from suit,

23   from liability because of their disclosures to law

24   enforcement. And that is not what is at issue here before

25   you.

38

EXHIBIT 34
PAGE 374

1    As you know, what is at issue here is whether or

2 not they have the right not to allow discovery of those

3 documents and communications with law enforcement, not

4 whether, once they make such disclosure, whether they

5 would be liable to suit, tort claim, defamation, whatever,

6 antitrust, which is the subject of Noerr-Pennington, and

7 the answer, of course, is they're not liable to suit, but

8 they are also not immune from discovery.

9    Thank you.

10    MR. O'BRIEN:   Thank you.   Is it Mr. Dylan?

11    MR. PROCTOR:   Proctor, Dylan Proctor.

12    MR. O'BRIEN:   Mr. Proctor.

13    MR. PROCTOR:   Thank you.

14    I want to start off by dispelling a

15 misunderstanding as to what Mattel has produced and what

16 it has not produced, a misunderstanding that's prominent

17 in the papers.

18    Mattel has not engaged in a stratagem to conceal

19 documents by giving them to law enforcement and then

20 saying oh, we gave them to law enforcement, so now we're

21 not going to produce them in this case.   That's not what

22 this is about.

23    Documents and communications that are pertinent

24 to the case that are responsive to legitimate discovery

25 requests or subject to disclosure under Rule 26(a) have

39

EXHIBIT 34
PAGE 315

1   authorities and how does that compare with what you're

2   claiming against us?  What did you say was taken?  Who did

3   you say took it?  What was the intent?  We are entitled to

4   that.  And it relates directly to the claims.  This is a

5   showing of relevance that goes far beyond any that Mattel

6   has made in connection with its motions.

7         I mean, this -- the request itself makes clear

8   that it's only matters that are relevant to this case.

9   We're not asking for communications with the authorities

10  about whatever.  We're asking for communications about the

11  allegations in the counterclaim.  How can that not go?

12        And, as you pointed out, these are not some

13  people on some rogue assignment.  These are agents of

14  Mattel communicating with authorities about the very wrong

15  that they're suing MGA about.  We're entitled to see what

16  those communications were.  And they will go directly to

17  credibility of Mattel and its charges and the way it's

18  handling those charges, and they will go directly to

19  unclean hands.  If those communications are different, are

20  unfounded, are seeking to pressure the authorities, are

21  singling out people who are innocent, for their own

22  purposes, it will go directly to the way in which they are

23  purporting to use the criminal process in Mexico or Canada

24  or the United States to bolster their civil claim here in

25  the United States.  And it will go directly to unclean

62

EXHIBIT __34__

PAGE __376__

 1   hands in the way in which unclean hands applies, namely,

 2   unclean hands with respect to the matters at issue.

 3           So I heard nothing from Mr. Proctor that would

 4   give you comfort in finding that these requests don't go

 5   to documents that are relevant.

 6           And he had nothing to offer, either, with respect

 7   to the privilege issue, other than to ask for another bite

 8   at the apple and to ask you to address the privilege issue

 9   later.

10           The privilege issue is their justification for

11   not producing these documents, and their only one, and

12   they don't have a basis for it, because the privilege

13   doesn't apply and because it was waived.

14           What he read from Mr. Alger and what I read from

15   Mr. Alger is more than sufficient basis to establish a

16   waiver.  There was nothing out of context about that at

17   all.  He said some of these communications have been

18   supplied to you.  Well, which ones?  I assume the ones

19   that Mattel liked.  And that is the very reason why there

20   is a waiver.  You can't pick and choose.  You can't give

21   us some of the communications and say well, the rest are

22   privileged.  None of them is privileged, because the

23   privilege has been waived.  And it was waived, as well, as

24   we've already indicated, because the disclosure to these

25   authorities does make it more likely that we would get

EXHIBIT  34
PAGE  377

1    them, had they been successful in fomenting a prosecution

2    against MGA.  And we've cited cases which make that

3    proposition clear and the language from those cases is not

4    so complicated or difficult.  In the Bank of America

5    versus Terra Nova Insurance case, which we cited in our

6    brief, the Court says,

7                    "Disclosing information to

8                governmental authorities in the hope

9                that they will attack an adversary,

10               however, cannot be said to be done in

11               the pursuit of trial preparation.

12               Thus disclosure in such a situation

13               results in a waiver of the work

14               product protection."

15           And right in the middle of that quote, which is

16   cited in our brief, is a cite to the AT&T case, which

17   Mr. Proctor asked you to take a look at, AT&T, 642 Fed.2nd

18   at 1299, they cited 1285.

19           So -- I mean, this is the law, and there is a

20   waiver, and they have no basis to avoid that waiver.  To

21   the extent that these documents were supplied in a group,

22   in a context, we're entitled to see those.  The fact that

23   they say well, most, maybe not all, of the documents that

24   we gave to the Feds, we've given to you somewhere -- you

25   asked the right question, you got the answer, yes --

64

EXHIBIT _34_
PAGE _378_

1          I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4   before me at the time and place herein set forth; that

5   any witnesses in the foregoing proceedings, prior to

6   testifying, were duly sworn; that a record of the

7   proceedings was made by me using machine shorthand

8   which was thereafter transcribed under my direction;

9   that the foregoing transcript is a true record of the

10  testimony given.

11         Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript [  ] was [  ] was not requested.

15         I further certify I am neither financially

16  interested in the action nor a relative or employee

17  of any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20         MAR 1 2 2009

21  Dated: _____

22

23         _____
           *Cheryl R. Kamalski*
24         CHERYL R. KAMALSKI
           CSR No. 7113

25