# EXHIBIT 35

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
3   Telephone: 213.629.7400
    Facsimile: 213.629.7401
4   obrien.robert@arentfox.com

5

6   Discovery Master

7

8                 UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                     EASTERN DIVISION

11

12   CARTER BRYANT, an individual,,        Case No.  CV 04-09049 SGL (RNBx)

13                  Plaintiff,             Consolidated with
                                           Case No. CV 04-09059
14         v.                              Case No. CV 05-2727

15   MATTEL, INC., a Delaware             **PHASE 2 DISCOVERY MATTER**
     corporation,
16                                         **ORDER NO. 6, REGARDING:**
                   Defendant.
17                                             **(1) MOTION OF MATTEL, INC.
                                               TO COMPEL PRODUCTION OF
18                                             DOCUMENTS RESPONSIVE
                                               TO ITS FIRST AND THIRD
19                                             SETS OF REQUESTS FOR
                                               PRODUCTION; and**
20
                                               **(2) MOTION OF MGA TO
21                                             COMPEL PRODUCTION OF
                                               DOCUMENTS RESPONSIVE TO
22                                             THE DOCUMENT REQUEST
                                               NOS. 526 AND 528**
23

24

25   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
26   MGA ENTERTAINMENT, INC. v.
     MATTEL, INC.
27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                           ORDER NO. 6
                                           [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 380

I.   **INTRODUCTION**

This Order sets forth the Discovery Master's ruling on: (1) the motion of Mattel, Inc. ("Mattel") to compel production of documents by MGA Entertainment, Inc. ("MGA Entertainment") responsive to Mattel's First Set of Requests for Production No. 48 and Third Set of Requests for Production Nos. 43 through 75, 87 and 88 [Docket No. 4741] (the "Mattel Motion"), and (2) the motion of MGA Entertainment, Isaac Larian, MGA Entertainment HK Limited, and MGAE De Mexico SRL De Cv (collectively "MGA") to compel Mattel to produce documents responsive to MGA's Requests for Production 526 and 528 [Docket Number 4782] (the "MGA Motion") (collectively, the "Motions").

The Motions came on regularly for hearing before the Discovery Master on March 11, 2009. All interested parties were represented by counsel and afforded the opportunity to present oral argument on the Motions. The Discovery Master, having considered the papers filed in support of and in opposition to the Motions, and having heard oral argument thereon, rules as set forth below.

II.   **THE MATTEL MOTION**

Mattel seeks to compel MGA Entertainment to produce documents responsive to 36 separate document requests. (Mattel Motion, pp. 9 – 15). However, MGA Entertainment subsequently agreed to produce all non-privileged documents responsive to 34 of the document requests identified by Mattel. (MGA Opposition, p. 6). Therefore, the only document requests that remain at issue are Mattel's Third Set of Requests for Production Nos. 87 and 88. (*Id.*, p. 7).

A.   **The Discovery Sought**

Document Request No. 87 seeks "all personnel and vendor files for each person identified in Exhibit 664." (Mattel's Sep. Stmt., p. 3).

Document Request No. 88 seeks "all personnel and vendor files for each person who has worked as an employee of or vendor for [MGA Entertainment] and who also has been at any time an employee or vendor for Mattel." (*Id.*, p. 5).

EXHIBIT   35
PAGE   381

1       **B.      Phase 1 Ruling**

2           This is not the first time that Mattel has moved to compel responses to

3   Document Request Nos. 87 and 88. Mattel previously moved to compel responses

4   to these requests as part of Phase 1, but its motion was denied because "Request

5   Nos. 87 and 88 (files for former Mattel employees) . . . relate[d] primarily to Phase

6   2 issues." (Disc. Master Order, Apr. 14, 2008, p. 7). The former discovery

7   master's April 14, 2008 Order denying Mattel's original motion to compel further

8   held that "[i]n view of the stay on Phase 2 discovery . . . . [n]othing in this Order is

9   intended to authorize or preclude Mattel from seeking further production of

10  documents in response to Request Nos. 1 – 88 during Phase 2 discovery." (*Id.*, pp.7

11  - 8).

12      **C.      Objections of MGA Entertainment**

13          In its Opposition, MGA Entertainment relies on three basic grounds for

14  refusing to produce the requested documents. First, MGA Entertainment argues

15  that Mattel failed to meet and confer. Second, MGA Entertainment argues that the

16  requests are overbroad. Finally, MGA Entertainment argues that California's

17  privacy laws prevent it from producing the requested documents.

18          **1.      Purported Failure To Meet And Confer**

19          As indicated above, MGA Entertainment first asserts that Mattel's Motion to

20  Compel should be denied because Mattel failed to adequately meet and confer.

21  (MGA Opposition, pp. 9 - 10). However, MGA Entertainment admits that Mattel

22  did meet and confer regarding the two requests at issue prior to filing its original

23  motion to compel in Phase 1. (*Id.*, p. 2 ["The Renewed Motion is in fact based on

24  meet and confer discussions held over one year ago with MGA's prior lead

25  counsel."]; *see also id.*, p. 9 n.2 [Mattel "met and conferred over a year ago"].)

26  MGA further provides no legal authority, and the Discovery Master has found

27  none, supporting the proposition that a party must meet and confer again before

28  renewing a motion to compel that was denied merely because the case had been

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   35
PAGE   382

1   divided into phases and where the order denying the motion expressly noted that

2   nothing in the ruling was intended to "preclude Mattel from seeking further

3   production of documents in response" to the requests as part of Phase 2 discovery.[1]

4   (Order Apr. 14, 2008, pp. 7 - 8).

5        Even assuming such a requirement did exist, Mattel in fact met and conferred

6   with MGA Entertainment for a second time following the filing of its current

7   motion and resolved 34 of the 36 document requests in dispute. (MGA Opposition,

8   pp. 1, 6.) However, the parties were still unable to resolve their differences relating

9   to Document Requests Nos. 87 and 88. (*Id.*, 7–9.) It is, therefore, unclear what

10  could have been accomplished by an additional meet and confer on these issues

11  prior to the filing of the motion. Regardless, Mattel met and conferred once before

12  filing its current motion to compel and that is all that is required by the Federal

13  Rules of Civil Procedure and the discovery procedures governing this case.

14        **2.    Overbreadth Objection**

15        MGA Entertainment's second argument in opposition to Mattel's Motion is

16  that Document Requests Nos. 87 and 88 are "grossly overbroad." (MGA

17  Opposition, pp. 14 – 15). Specifically, MGA Entertainment argues that the requests

18  are improper because they are not tied "to any product(s) that Mattel alleged that

19  MGA [Entertainment] stole from Mattel." (*Id.*,14.) Without citing any legal

20  authority in support of this position, MGA Entertainment asserts that the current

21  Discovery Master should find that the requests are overbroad because the prior

22  discovery master merely compelled it to produce portions of personnel and vendor

23  files related to the Bratz products as part of Phase 1 discovery. (*Id.*; *see also* Order

24  Apr.14, 2008, pp. 7 - 8). But MGA Entertainment's argument fails to recognize

25  //

26

27  [1] The arguments of MGA Entertainment that (1) it has new lead counsel and (2) the case has "changed dramatically"
28  since the initial meet and confer took place in 2008 are not supported by any legal authority, (MGA Opposition, p. 9),
    and do nothing to alter the fact that Mattel met and conferred on these issues previously.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -                                    ORDER NO. 6
                                [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   35
PAGE   383

1    the differences between Mattel's Phase 1 and Phase 2 claims.[2]

2          The touchstone for determining whether a particular discovery request is

3    reasonably calculated to lead to the discovery of admissible evidence in this case is

4    whether the request bears some relation to the issues to be tried in Phase 2.

5    Whereas Phase 1 of this case primarily addressed whether Mattel or MGA

6    Entertainment owned the rights to the Bratz products, Mattel's Phase 2 claims are

7    not linked to a single discrete product or even multiple products.  Instead, the issues

8    to be litigated in Phase 2 include, among other things, Mattel's claim that MGA

9    Entertainment stole "a vast array of trade secrets and other confidential information

10   that comprise Mattel's intellectual infrastructure," including, among other things,

11   stealing "Mattel's proprietary business methods, practices and information."

12   (Second Amended Answer and Counterclaims ["SAAC"], ¶ 20).  Mattel alleges in

13   its Counterclaims, which are to be litigated in Phase 2, that MGA Entertainment :

14   •   "engaged in a pattern of stealing and using [Mattel's] property and trade

15       secrets," (*Id.*,    ¶ 1);

16   •   "repeated—and even expanded—its pattern of theft [regarding the Bratz

17       dolls] on numerous occasions," including by hiring away three key Mattel

18       employees in Mexico who "stole virtually every category of Mattel's

19       sensitive and trade secret business plans and information for the Mexican

20       market as well as a significant quantity of sensitive and trade secret

21       information for Mattel's U.S. and worldwide businesses," (*Id.*, ¶ 3);

22   •   "stole Mattel trade secrets regarding Mattel's customers, sales, projects,

23       advertising and strategy, not only for Canada, but the United States and the

24       rest of the world," (*Id.*, ¶ 70);

25   //

26

27   ----

[2] MGA Entertainment's claim that the document requests are overbroad is also inconsistent with its statement that it

28   would "produce all requested personnel files in their entirety (except for any medical or health related documents) if Mattel gave notice to the employees and obtained their consent for such disclosure." (MGA Opposition, pp. 8 – 9).

EXHIBIT   35
PAGE   384

1     •   "took from Mattel documents containing proprietary advertising, project,

2        sales, customer and strategy information for not only Canada, but for the

3        United States," (*Id.*, ¶ 4);

4     •   "engaged in an ongoing, widespread pattern of . . . inducing Mattel

5        employees to steal Mattel's confidential information or other property and

6        take it with them to MGA [Entertainment]," (*Id.*, ¶ 5);

7     •   stole "Mattel's plans, strategy and business information for the Mexican

8        market and materials related to Mattel's worldwide business strategies," (*Id.*,

9        ¶ 37);

10    •   "enticed [Mattel's employees] to steal Mattel's most sensitive business

11        planning materials, and then hired them to assist in establishing and running

12        MGA's new Mexican subsidiary," (*Id.*, ¶ 37);

13    •   "directed [certain Mattel employees'] to steal virtually all Mattel confidential

14        and proprietary information that they could access and bring it with them to

15        MGA," (*Id.*, ¶ 43), including "virtually every type of document a competitor

16        would need to enter the Mexican market, and to unlawfully compete with

17        Mattel in Mexico, in the United States and elsewhere," such as "global

18        internal future line lists that detailed anticipated future products; production

19        and shipping costs for Mattel products, daily sales data for Mattel products;

20        customer data; sales estimates and projections; marketing projections;

21        documents analyzing changes in sales performance from 2003 to 2004;

22        budgets for advertising and promotional expenses; strategic research

23        reflecting consumer responses to products in development; media plans;

24        consumer comments regarding existing Mattel products customer discounts

25        and terms of sale; customer inventory level data; assessments of promotional

26        campaign success; market size historical data and projections; marketing

27        plans and strategies, merchandising plans; retail pricing and marketing

28        strategies; and other similar materials," (*Id.*, ¶ 48);

EXHIBIT __35__
PAGE __385__

1     •   "targeted certain Mattel employees who have broad access to Mattel

2       proprietary information in an effort to induce and encourage them to join

3       MGA [Entertainment] and to steal or otherwise wrongfully misappropriate

4       Mattel confidential information and trade secrets," including by "promising

5       these employees salaries 25 percent or more higher than they earn at Mattel

6       and stating to them that they should not be concerned by legal action taken

7       by Mattel to protect its trade secrets and its rights because such claims are

8       hard to prove and easy to defeat," (*Id.*, ¶ 69); and

9     •   "hired directly from Mattel's United States operations at least 25 employees,

10      from Senior Vice-President level to lower level employees," and that some of

11      these individuals misappropriated "Mattel confidential and proprietary

12      information, including Mattel's strategic plans; business operations; methods

13      and systems; marketing and advertising strategies and plans; future product

14      lines; product profit margins, and customer requirements." (*Id.*, ¶ 77).

15       In light of the foregoing allegations, the documents requested by Mattel fall

16 within the purview of permissible discovery allowed by Federal Rule of Civil

17 Procedure 26. Rule 26 permits the discovery of information that is "relevant to the

18 claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Accordingly, Mattel's

19 request for "all personnel and vendor files" of individuals who either (1) work at

20 MGA Entertainment and previously used to work for Mattel or (2) who are vendors

21 of MGA Entertainment and used to work with or had contact with Mattel appears to

22 be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

23          **3.    Privacy Rights Objection**

24       MGA Entertainment's final argument is that the records sought by Mattel

25 (i.e., personnel and vendor files) invade the privacy rights of non-parties and cannot

26 be produced under *California law* unless the individuals affected are given advance

27 notice of the requests and afforded an opportunity to object to the production.

28 (MGA's Opposition, pp. 10 – 14). Specifically, MGA Entertainment argues that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

EXHIBIT 35
PAGE 386

1   the California Constitution and California Code of Civil Procedure § 1985.3

2   together constitute a fundamental public policy in California that do not allow

3   MGA Entertainment to "place its employees privacy rights at risk." (*Id.*). But each

4   of these contentions is unavailing.

5        As an initial matter, a protective order has been entered in this case. (Mattel

6   Reply, p. 2). This fact is crucial to analyzing the privacy concerns raised by MGA

7   Entertainment, because courts within the Ninth Circuit have repeatedly held that,

8   where such an order has been (or will be) entered, state-based privacy laws do not

9   bar production of personnel files.[3] *See, e.g., Nakagawa v. Regents of Univ. of Cal.*,

10   2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) (ordering production of

11   personnel files and stating "[a]ny other privacy concerns defendant may have

12   should be addressed by a protective order"); *Grinzi v. Barnes*, 2004 WL 2370639,

13   *1 (N.D. Cal. Oct. 20, 2004) ("The proper mechanism for an employer to use to

14   protect an employee's privacy interest in his personnel file is to obtain, either by

15   stipulation or motion, a properly crafted protective order under Rule 26(c)");

16   *Maldonado v. Cal. Dep't of Corr. & Rehab.*, 2007 WL 4249811, *7 (E.D. Cal. Nov.

17   30, 2007) ("The court has already analyzed these non-party privacy rights, and the

18   protective order should serve to remedy any concern in this regard."); *Walton v. K-*

19   *Mart, Inc.*, 2007 WL 4219395, *2 (N.D. Cal. November 28, 2007) ("In view of the

20   employees' privacy interests, documents shall be produced pursuant to an

21   attorneys' eyes only protective order."); *Keller-McIntrye v. Coll. Of Health &*

22   *Human Servs.*, 2006 WL 3456672, *1-*2 (N.D. Cal. November 29, 2006) (ordering

23   production of employee information, pursuant to a protective order, despite privacy

24   claims under California law).

25        Further, contrary to MGA Entertainment's assertions, the Ninth Circuit has

26   [3] In fact, some of the California authority relied on by MGA Entertainment contemplates that confidential

27   information may be appropriately disclosed if a protective order is in place. (*See, e.g., Valley Bank of Nev. v. Superior Court*, 15 Cal. 3d 652, 658 (1975) ["[T]he trial court has available certain procedural devices which may be

28   useful in fashioning an appropriate order that will, so far as possible, accommodate considerations of both disclosure and confidentiality."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___35___
PAGE ___387___

1  held that "personnel files are discoverable in federal question cases . . . despite

2  claims of [state-created] privilege,"[4] (*Garrett v. San Francisco*, 818 F.2d 1515,

3  1519 n. 6 (9th Cir. 1987); *see also Kerr v. District Court*, 511 F.2d 192, 197 (9th

4  Cir. 1975)), and this includes any claim of privilege resulting from California Code

5  of Civil Procedure § 1985.3,[5] (*see Reed v. Williams*, 2007 WL 2140506, *4 (E.D.

6  Cal. July 25, 2007) [holding that the requirements of California Code of Civil

7  Procedure § 1985.3 do not apply in federal question cases because "federal law

8  applies in terms of substantive, privilege and discovery law."]).  Accordingly, the

9  privacy concerns raised by MGA Entertainment have no applicability here.

10        Despite the foregoing, and notwithstanding the existence of the protective

11  order as a safeguard, the Discovery Master finds that the requested documents

12  should exclude "health care specific information," because Mattel's counsel

13  conceded that Mattel is not seeking such information in its discussions with counsel

14  for MGA Entertainment.  (*See* Decl. of Amman Khan, Ex. G, 2).  Counsel for

15  Mattel restated this position at the hearing.

16        The Discovery Master further orders MGA Entertainment to redact any

17  social security numbers, tax identification numbers, dates of birth, indication of

18  sexual orientation, bank account numbers, and checking account numbers that may

19  be included within the requested documents prior to production, as Mattel has not

20  made a showing at this time that such discrete personal information is reasonably

21  calculated to lead to the discovery of admissible evidence.

22        **D.    Conclusion**

23        The documents sought by Mattel's Request Nos. 87 and 88 are reasonably

24  calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

---

25  [4] Mattel's SAAC includes, among other things, claims for alleged RICO violations under U.S.C. §§ 1962(c), 1962(d)
26  and 1964(c), (SAAC at ¶¶ 88 – 105) and MGA Entertainment removed this action to federal court on federal question
     grounds, (Mattel Reply, p. 5).

27  [5] The same rule may even apply in diversity cases, (see *Corser v. County of Merced*, 2006 WL 2536622, *2 (E.D.
28  Cal. August 31, 2006) [holding that "the extent that Section 1985.3 may provide a California-law privilege [] the
     privilege does not apply to this litigation"], but the Discovery Master need not resolve that issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                    - 8 -                        ORDER NO. 6
                                                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  35
PAGE  388

1   2 claims, and are not protected from disclosure on the grounds of third-party

2   privacy rights or any other ground cited by MGA Entertainment.

3   **III.    MATTEL'S REQUEST FOR SANCTIONS**

4         In its Reply, Mattel also seeks $1,460 in sanctions relating to the attorneys'

5   fees and costs it incurred in drafting the reply. (Mattel's Reply, pp. 11 – 13; *see*

6   *also* Decl. of Zachary Krug, ¶ 14). As the Discovery Master has previously stated,

7   however, he, like the Court,[6] disfavors the insertion of new arguments at the reply

8   stage that could have been raised in the moving papers.[7] This rule is routinely

9   adhered to by courts in the Ninth Circuit. *See, e.g., United States v. Boyce*, 148

10  F.Supp .2d 1069, 1085 (S.D. Cal. 2001); *Leick v. Hartford Life & Accident Ins. Co.,*

11  2007 WL 1847635, at *1, n. 1 (E.D. Cal. June 27, 2007); *Stewart v. Wachowski,*

12  2004 WL 2980783, at *11 (C.D. Cal. Sept. 28, 2004); *Hamilton v. Willms,* 2007

13  WL 2558615, at *11 (E.D. Cal.2007); *see also United States v. Cox,* 7 F.3d 1458,

14  1463 (9th Cir.1993); *United States v. Wright,* 215 F.3d 1020, 1030 n. 3 (9th

15  Cir.2000).

16        Accordingly, the Discovery Master therefore declines to award sanctions

17  against MGA Entertainment.

18  **IV.    MGA'S MOTION TO COMPEL RESPONSES TO DOCUMENT**

19         **REQUEST NOS. 526 AND 528**

20        In its motion, MGA seeks an order compelling Mattel to produce documents

21  responsive to two document requests (the "Requests") included in MGA's Fifth Set

22  of Requests for Production of Documents and Things dated August 3, 2007.

23  //

24

25  [6] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would
    not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not
26  change [its] ultimate conclusion."

27  [7] Mattel was apparently aware of MGA Entertainment's grounds for opposing the motion before it filed its moving
    papers, since Mattel met and conferred with MGA Entertainment prior to bringing its motion. Mattel nevertheless
    failed to request a sanctions award in its moving papers, thereby depriving opposing counsel and MGA
28  Entertainment of the chance to oppose the request in the Opposition brief.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 389

## A. The Discovery Sought

The Requests seek copies of Mattel's communications with law enforcement authorities (Request No. 526) and copies of any documents that it has provided to law enforcement authorities (Request No. 528). The complete text of the Requests is as follows:

- **Request No 526**: All DOCUMENTS that constitute COMMUNICATIONS between YOU (including YOUR agents and attorneys) and law enforcement authorities in Mexico, Canada, or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities, concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

- **Request No. 528**: All DOCUMENTS that you (including YOUR agents and attorneys) provided to law enforcement authorities in Mexico, Canada [*sic*] or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

## B. Mattel's Objections

In its Opposition, Mattel relies on three basic grounds for refusing to produce the requested documents. First, Mattel argues that the Requests are overbroad and encompass information not reasonably calculated to lead to the discovery of admissible evidence. Second, Mattel argues that the documents are protected by the work product doctrine. Finally, Mattel argues that the documents are

EXHIBIT  35
PAGE  390

1   privileged.

2             **1.**    **Overbreadth Objection**

3         Among the issues to be adjudicated in Phase 2 are Mattel's counterclaims for

4   RICO violations, misappropriation of trade secrets and unfair competition. Mattel's

5   SAAC alleges that "Mattel notified Mexican authorities about the [alleged] theft of

6   its trade secret and confidential information." (SAAC, ¶ 53). The SAAC further

7   details Mattel's knowledge of the Mexican authorities' activities related to MGAE

8   de Mexico and suggests that Mattel communicated with the authorities regarding

9   their seizure of certain documents from MGA's office. (*Id.*, ¶ 53). Mattel also

10  alleges that "Mattel notified Canadian law enforcement authorities" about its belief

11  that Janine Brisbois copied documents onto a thumb drive when she left Mattel.

12  (*Id.*, ¶ 75). Further, Mattel states that it communicated with Canadian authorities

13  regarding the information allegedly recovered from Brisbois' thumb drive. (*Id.*, ¶

14  75).

15        Mattel has also acknowledged that at least some of the documents responsive

16  to Request No. 526 relate to Mattel's claims by producing to MGA "the judicial file

17  in criminal proceedings in Mexico, relating to the trade secret thefts in that country,

18  *and some of those materials reflected communications between Mattel and law*

19  *enforcement*." (Declaration of Timothy L. Alger dated January 24, 2008 ["Alger

20  Decl."], ¶ 16 (emphasis added).)

21        Given Mattel's allegations regarding the theft of its trade secrets, its

22  communications with law enforcement officials, and the overlap between the civil

23  and criminal claims Mattel is pursuing, the Discovery Master concludes that, as a

24  threshold matter, MGA has made a prima facie case that the Requests seeking the

25  documents Mattel provided to law enforcement officials, as well as Mattel's

26  communications with those officials, are reasonably calculated to lead to the

27  discovery of admissible evidence regarding the claims to be adjudicated in Phase 2.

28        Although the Requests on their face relate to Phase 2 issues, Mattel

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __35__
PAGE __391__

1  nonetheless argues in its Opposition that Request No. 526 is overbroad because

2  Mattel's civil claims are wholly separate and independent from any criminal relief

3  it is seeking. (Mattel Opposition, p. 4 ["The civil claims stand or fall based on

4  MGA's actions, not Mattel's subsequent communications with law enforcement."]).

5      In so arguing, Mattel misses the point. The issue is not whether Mattel's

6  communications with law enforcement officials constitute the basis of Mattel's

7  claims. Rather, the issue is whether those communications are reasonably

8  calculated to lead to the discovery of admissible evidence regarding what Mattel

9  itself characterizes as the basis of its claims, namely MGA's alleged acts of trade

10  secret misappropriation. Mattel does not dispute that its subsequent

11  communications with law enforcement involve the same conduct that is the basis of

12  the civil claims. On the contrary, Mattel has alleged in its SACC that it is

13  concurrently seeking relief through the criminal justice system and this civil action

14  based on the same documents allegedly stolen by MGA and confirmed that fact

15  during the meet and confer process. (See, e.g., Alger Decl., ¶ 16 [asserting that "the

16  judicial file in the criminal proceedings in Mexico" are among the "documents

17  relating to Mattel's Counterclaims."] [emphasis added].)

18      Mattel's communications with law enforcement may, among other things,

19  disclose what Mattel told the investigating authorities about what information was

20  taken, the people who have knowledge of the thefts, and any supposed criminal

21  intent on the part of MGA or the former Mattel employees who supposedly took the

22  information. Given this admitted overlap in subject matter, the communications

23  between Mattel and law enforcement agencies are discoverable. (See, e.g., In re

24  Qwest Commc'ns Intl., Inc., 450 F.3d 1179, 1181-82, 1201 (10th Cir. 2006) [private

25  plaintiff permitted discovery of materials provided to law enforcement authorities

26  concerning the same underlying facts]).

27      With respect to Request No. 528 (seeking documents Mattel provided to law

28  enforcement agencies), Mattel argues that it has already provided to MGA tens of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 392

1   thousands of documents that pertain to the underlying facts of Mattel's

2   counterclaims.  (Mattel Opposition p, 5).  But, as Mattel admits, that production

3   does not satisfy Request No. 528 which, in Mattel's words "seeks something more

4   and different." (*Id.*).  According to Mattel, the "different" information sought by

5   Request No. 528 is information that would enable "MGA's executives to defend

6   against actual or potential criminal charges . . ." (*Id.*).  However, since those

7   possible criminal charges are based on the same conduct as Mattel's civil claims, it

8   would be inappropriate to bar MGA from obtaining that information for use in this

9   lawsuit, simply because that same information might also relate to possible future

10  criminal cases (which may or may not ever be filed).  Put another way, the

11  information sought by MGA to defend the civil claims does not become

12  "irrelevant" simply because it might have the ancillary effect of facilitating MGA's

13  defense of possible criminal claims.

14       Lastly, Mattel argues that both Requests are overbroad because they are not

15  limited to misconduct expressly alleged in the SAAC but also seek "documents

16  'concerning . . . any other alleged taking of confidential MATTEL information by

17  MGA . . .'" (Mattel Opposition, pp. 5 -6).  In response, MGA points out that the

18  SAAC includes a catch-all allegation stating that unidentified "additional

19  employees accessed, copied and took from Mattel confidential and proprietary

20  information." (SAAC, ¶ 77).  Mattel's apparent purpose in including such an

21  allegation was to preserve its right to allege and prove other acts of

22  misappropriation besides those expressly alleged in the SAAC.  Accordingly, since

23  Mattel reserves the right to seek relief regarding additional, un-alleged acts, MGA

24  should likewise be entitled to conduct discovery to identify those additional acts

25  and to determine what evidence Mattel may have to prove them.

26       **2.    Work Product Objection**

27       Next, Mattel argues that production of Mattel's communications with law

28  enforcement agencies, together with the documents Mattel chose to provide to those

EXHIBIT  35
PAGE  393

1   agencies, would violate the attorney work-product doctrine by revealing counsel's

2   strategy and mental processes. (Mattel Opposition, p. 6).

3        To qualify for work-product protection under Federal Rule Civil Procedure

4   26, documents must meet two requirements: (1) they must be "prepared in

5   anticipation of litigation or for trial," and (2) they must be prepared "by or for

6   another party or by or for that other party's representative." *In re Cal. Pub. Utils.*

7   *Comm'n*, 892 F.2d 778, 780-781 (9th Cir. 1989). In determining whether the

8   doctrine is applicable to a particular document, "the court must consider the

9   *primary purpose* of the work product doctrine, which is to 'prevent exploitation of a

10  party's efforts in *preparing for litigation*.'" *Johnson v. Finn*, 2007 WL 3232253,

11  *1 (E.D. Cal. Oct. 31, 2007) (emphasis added). The authorities Mattel cites agree

12  that the purpose of the work product doctrine is "to establish a zone of privacy for

13  *strategic litigation planning*." (Opposition, p. 6 quoting *United States v. Adlman*,

14  68 F.3d 1495, 1501 (2d Cir. 1995) [emphasis added].)

15       Here, Mattel does not demonstrate any connection between its

16  communications with law enforcement officials, on the one hand, and its litigation

17  strategy in the present civil case, on the other hand. Rather, it appears that Mattel's

18  primary purpose in communicating with, and disclosing the disputed documents to,

19  various law enforcement officials was to instigate criminal prosecutions by

20  prosecutorial agencies, not pursue its civil claims against MGA. Thus, to the extent

21  the selection of particular documents by Mattel's counsel reveals counsel's

22  impressions and mental processes, the window into counsel's thinking relates to

23  counsel's strategy of encouraging *criminal prosecution* by the relevant authorities.

24  There is no showing that counsel's thinking regarding how best to achieve *that*

25  purpose would also reveal counsel's strategies and impressions in any matter

26  related to the current civil litigation. In short, Mattel has made an insufficient

27  showing that the communications and documents at issue constitute work product

28  in *this* litigation. Accordingly, the work-product doctrine is inapplicable.

EXHIBIT 35
PAGE 394

1    Further, even if the work-product doctrine somehow applied to Mattel's
2    communications with law enforcement agencies, Mattel waived it, in at least two
3    ways. First, Mattel admits that it has already produced some of those
4    communications to MGA. (See Alger Decl., ¶ 16.)

5    Second, to the extent Mattel's communications with law enforcement
6    officials disclose its conclusions and theories to law enforcement officials, such a
7    disclosure also constitutes a waiver. Mattel admits that the work-product doctrine
8    is waived when material is "voluntarily disclosed such that it may become readily
9    accessible to an adversary." (Mattel Opposition, pp. 6 - 7 (citing *Aronson v.*
10   *McKesson HBOC, Inc.*, 2005 WL 934331, *6 (N.D. Cal. Mar. 31, 2005)). In fact,
11   the courts have specifically held that "disclosing information to governmental
12   authorities in the hope that they will attack an adversary . . . cannot be said to be
13   done 'in the pursuit of ...trial preparation.' Thus, disclosure in such a situation
14   results in a waiver of the work product protection." *Bank of America, NA. v. Terra*
15   *Nova Insur. Co.*, 212 F.R.D. 166, 172-73 (S.D.N.Y. 2002). Therefore, when a party
16   provides information to law enforcement agencies and "harbor[s] the hope, even if
17   un-communicated, that its disclosures would encourage the Government to
18   prosecute" a third party, this disclosure constitutes waiver because it "substantially
19   increase[s] the potential that the information gained during the investigation would
20   be disclosed to [the] adversary." *Id.*

21   Given that Mattel disclosed the documents to these entities with the intention
22   of triggering criminal prosecution of MGA and its representatives, the intended
23   effect of Mattel's disclosure is to make those documents available to MGA under
24   the applicable rules of criminal procedure, which would entitle MGA to the
25   documentary evidence on which any alleged criminal liability is based. Mattel
26   itself concedes this fact when it acknowledges that MGA can request disclosure of
27   the information provided to law enforcement officials "in accordance with the
28   applicable law in the countries involved." (Mattel Opposition, p. 5). Mattel knew

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 395

1 | when it provided the documents to law enforcement agencies that such production
2 | "substantially increased the opportunities for potential adversaries to obtain the
3 | information." (Mattel Opposition, p. 7). Thus, Mattel cannot demonstrate a
4 | reasonable expectation this material would remain protected.

5 | ### 3. Privilege Objections

6 | Lastly, Mattel asserts that the litigation privilege codified in Cal. Civ. Code §
7 | 47(b) and/or the *Noerr-Pennington* doctrine bar MGA from seeking any affirmative
8 | relief from Mattel based on the latter's communications with law enforcement
9 | authorities. Consequently (Mattel reasons), those communications "are not
10 | properly discoverable" in this action. (Mattel Opposition, p. 8).

11 | That argument is based on a premise for which there is no support in the
12 | record, namely that MGA seeks the subject documents in order to assert a claim
13 | against Mattel arising from Mattel's allegedly privileged communications.
14 | Proceeding from this unsupported assumption, Mattel then argues that such a non-
15 | existent claim would be barred.

16 | However, that speculative foray is entirely non-responsive to the MGA
17 | Motion. The MGA Motion asserts that the documents should be produced not
18 | because MGA intends to sue Mattel for communicating with law enforcement
19 | authorities, but rather because Mattel itself injected the issue of the criminal
20 | proceedings *into this lawsuit* by asserting in its SAAC that Mattel has
21 | communicated with criminal authorities in various countries regarding the conduct
22 | of MGA upon which Mattel bases its counterclaims. *That* is the reason MGA
23 | offers for seeking the subject documents.

24 | Accordingly, Mattel's attempt to rely on privilege fails to address the actual
25 | position taken by MGA in its Motion or the issues raised in the pleadings. Further,
26 | the cases cited by Mattel demonstrate on their face that the subject privileges are
27 | restricted to situations not present here. Those cases stand for the proposition that
28 | parties who communicate with law enforcement officials may be immune from

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 396

1  *liability* under California tort law and federal anti-trust law, respectively -- not that
2  such parties are immune from *discovery* in civil suits.

### a.  The Litigation Privilege

4      The California Supreme Court described the scope of the litigation privilege
5  in a case cited by Mattel, *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350 (2004).
6  According to Mattel, *Hagberg* stands for the proposition that a communication to
7  law enforcement officials about suspected criminal activity "enjoys an unqualified
8  privilege." (Mattel's Opp'n, 8.)  However, nothing in the *Hagberg* opinion
9  addresses the issue presented here, namely whether communications and documents
10 passed from the reporting party to the law enforcement agency is discoverable in
11 litigation arising out of the same underlying, allegedly criminal, activities.  Rather,
12 in *Hagberg* the question presented was "whether *tort liability* may be imposed for
13 statements made when a citizen contacts law enforcement personnel to report
14 suspected criminal activity...." 32 Cal. 4th at 355 (emphasis added).  The Court
15 answered that question in the affirmative. *Id.*

16     The other California cases cited by Mattel are in accord. See *Jacob B. v.*
17 *County of Shasta*, 40 Cal. 4th 948, 955, 956 (2007) ("We have discussed the basic
18 principles underlying section 47(b)'s litigation privilege in many cases.... [P]ublic
19 agencies... must be permitted to provide such information without fear of being
20 harassed by *derivative lawsuits*.") (emphasis added); *Silberg v. Anderson*, 50 Cal.
21 3d 205, 213, 214 (1990) (the "*litigation* privilege" provided by section 47(2)
22 "afford[s] litigants and witnesses... the utmost freedom of access to the courts
23 without fear of being harassed subsequently by *derivative tort actions*") (emphasis
24 added); *Williams v. Taylor*, 129 Cal, App. 3d 745 (1982) (affirming summary
25 judgment against plaintiff's claims for slander and malicious prosecution based on
26 Section 47(b)).

### b.  The *Noerr-Penington* Doctrine

28     "The Noerr-Pennington doctrine *immunizes from the antitrust laws* anti-

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 17 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 397

1   competitive conduct undertaken to influence or petition government bodies, or to
2   utilize judicial or quasi-judicial mechanisms." (*Forro Precisions, Inc. v. Intl Bus.*
3   *Mach.* 673 F.2d 1045, 1059 (1982) [emphasis added]).   In *Forro*, the plaintiff
4   brought suit against IBM for assisting a police search of his business premises.
5   Based in part on the *Noerr-Pennington* doctrine, the court held that the plaintiff's
6   antitrust claim could not be based on IBM's solicitation of aid from the police
7   department that resulted in the police investigation and search of his premises, or on
8   IBM's assistance in these activities.   (*Id.* at 1053 ["IBM's actions in assisting the
9   police...were privileged and could not serve as a basis for *civil liability*."] [emphasis
10  added]) .  In short, the "privilege" at issue in *Forro* dealt with freedom from
11  antitrust liability, not freedom from discovery.[8]

12              **c.      Application To The Present Case**

13           Here, MGA has not yet asserted any affirmative claim against Mattel arising
14  out of Mattel's communication with law enforcement officials.  If and when MGA
15  attempts to do so, it may well be appropriate for Mattel to assert the privileges
16  discussed above in an attempt to defeat any such claims on the merits.  In the
17  meantime, MGA is simply defending Mattel's civil claims in the present action, and
18  no privilege cited by counsel prevents MGA from conducting discovery regarding
19  the basis for those claims.

20       **C.      Conclusion**

21           The documents sought by MGA's Request Nos. 526 and 528 are reasonably
22  calculated to lead to the discovery of admissible evidence regarding Mattel's Phase
23  2 claims, and are not protected from disclosure under any of the privileges or
24  doctrines cited by Mattel.

25  //

26

27  [8] Mattel cites only one case in which the Court actually held that a party was protected from the production of
    communications made to government agencies regarding suspected criminal activity.  However, in that case (which
28  arose under the Annunzio-Wylie Act) the communications were sought to prove a defamation claim based on those
    communications. *See Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 35
PAGE 398

## V.     DISPOSITION

1.     The Mattel Motion is **GRANTED**, with the exception of health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers.

2.     Mattel's request for sanctions is **DENIED**.

3.     The MGA Motion is **GRANTED**.

4.     All non-privileged documents shall be produced within 30 days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

5.     All documents to be produced pursuant to this Order, including employee personnel files and records of communications between Mattel and law enforcement officials, shall be produced in the same format and order as they are maintained in the original files of the parties as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i).

6.     The documents reflecting Mattel's communications with law enforcement officials shall include any and all enclosures, and documents transmitted as a group shall be marked in a manner that permits MGA to ascertain which pages constitute each individual transmittal.

7.     All personnel or vendor documents redacted by MGA in accordance with this Order shall, whenever applicable, retain any letterhead, title, or other header that permits Mattel to ascertain the general nature and source of the document redacted and shall be marked in a manner that permits Mattel to ascertain which pages comprise a single document.

Dated:     March 13, 2009

By:     /s/ Robert C. O'Brien
ROBERT C. O'BRIEN
Discovery Master

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT  35
PAGE  899

# EXHIBIT 36

1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9             CENTRAL DISTRICT OF CALIFORNIA
10                 EASTERN DIVISION
11   MATTEL, INC.,                    CASE NO. CV 04-9049 SGL (RNBx)
12            Plaintiff,
13                                    Consolidated with
14        vs.                        CASE NO. CV 04-9059 SGL (RNBx)
15                                    CASE NO. CV 05-2727 SGL (RNBx)
16   MGA ENTERTAINMENT, INC., et al.,   Hon. Stephen G. Larson
17
18   Defendants.
19                                    COURT'S PHASE B JURY
     AND CONSOLIDATED ACTIONS
20                                    INSTRUCTIONS AS GIVEN
21
22
23
24
25
26
27
28


EXHIBIT 36
PAGE 400

## JURY INSTRUCTION NO. 1

Members of the Jury:

Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

2

EXHIBIT 36
PAGE 401

**JURY INSTRUCTION NO. 2**

You should decide the case as to each party separately. Unless otherwise stated,

the instructions apply to all parties.

3

EXHIBIT __3 6__
PAGE __402__

1

## JURY INSTRUCTION NO. 3

2

Whether or not you have taken notes, you should rely on your own memory of

3

the evidence. Notes are only to assist your memory. You should not be overly influenced

4

by your notes or those of your fellow jurors.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

EXHIBIT 36
PAGE 403

## JURY INSTRUCTION NO. 4

The evidence you are to consider in deciding what the facts are consists of:

1.    the sworn testimony of any witness;

2.    the exhibits which are received into evidence; and

3.    any facts to which the lawyers have agreed or stipulated.

5

EXHIBIT 36
PAGE 404

1

## JURY INSTRUCTION NO. 5

2

3      In reaching your verdict, you may consider only the testimony and exhibits

4   received into evidence. Certain things are not evidence, and you may not consider them in

5   deciding what the facts are. I will list them for you:

6      (1)   Arguments and statements by lawyers are not evidence. The lawyers are not

7            witnesses. What they have said in their opening statements, will say in their

8            closing arguments, and at other times is intended to help you interpret the

9            evidence, but it is not evidence. If the facts as you remember them differ

10           from the way the lawyers have stated them, your memory of them controls.

11

12     (2)   Questions and objections by lawyers are not evidence. Attorneys have a

13           duty to their clients to object when they believe a question is improper

14           under the rules of evidence. You should not be influenced by the objection

15           or by the court's ruling on it.

16

17     (3)   Testimony that has been excluded or stricken, or that you have been

18           instructed to disregard, is not evidence and must not be considered.  In

19           addition sometimes testimony and exhibits are received only for a limited

20           purpose; when I have given a limiting instruction, you must follow it.

21     (4)   Anything you may have seen or heard when the court was not in session is

22           not evidence. You are to decide the case solely on the evidence received at

23           the trial.

24

25

26

27

28

6

EXHIBIT __36__
PAGE __405__

**JURY INSTRUCTION NO. 6**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

7

EXHIBIT 36
PAGE 400

1

### JURY INSTRUCTION NO. 7

2

There are rules of evidence that control what can be received into evidence.

3

4

When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the

5

other side thinks that it is not permitted by the rules of evidence, that lawyer may object.

6

If I overrule the objection, the question may be answered or the exhibit received. If I

7

sustain the objection, the question cannot be answered, and the exhibit cannot be

8

received. Whenever I sustain an objection to a question, you must ignore the question

9

and must not guess what the answer might have been.

10

Sometimes I have ordered that evidence be stricken from the record. That means

11

12

that when you are deciding the case, you must not consider that evidence.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

EXHIBIT *30*
PAGE *407*

## JURY INSTRUCTION NO. 8

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

9

EXHIBIT 36
PAGE 408

### JURY INSTRUCTION NO. 9

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else; this includes discussing the case in internet chat rooms or through internet "blogs," internet bulletin boards or e-mails. Nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read or listen to any news stories, articles, radio, television, or online reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the bailiff to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.

10

EXHIBIT 36
PAGE 409

### JURY INSTRUCTION NO. 10

During deliberations, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.

11

EXHIBIT 36
PAGE 410

1

## JURY INSTRUCTION NO. 11

2

You must not make any assumptions about a witness based solely upon the use of

3

an interpreter to assist that witness.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

EXHIBIT  36
PAGE  411

### JURY INSTRUCTION NO. 12

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess. Please understand that while you were waiting, we were working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum. I did not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

13

EXHIBIT  36
PAGE  412

## JURY INSTRUCTION NO. 13

The parties have agreed to certain facts. You should therefore treat these facts as having been proved.

EXHIBIT 36
PAGE 413

1

### JURY INSTRUCTION NO. 14

2

3        A deposition is the sworn testimony of a witness taken before trial.  The witness

4     is placed under oath to tell the truth and lawyers for each party may ask questions.  The

5     questions and answers are recorded.  When a person is unavailable to testify at trial, the

6     deposition of that person, including a videotaped deposition, may be used at the trial.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 36
PAGE 414

## JURY INSTRUCTION NO. 15

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

16

EXHIBIT _36_
PAGE _415_

1

## JURY INSTRUCTION NO. 16

2

3    Certain charts and summaries not received in evidence have been shown to you

4    in order to help explain the contents of books, records, documents, or other evidence in

5    the case. They are not themselves evidence or proof of any facts. If they do not correctly

6    reflect the facts or figures shown by the evidence in the case, you should disregard these

7    charts and summaries and determine the facts from the underlying evidence.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 36
PAGE 416

1

## JURY INSTRUCTION NO. 17

2

3       Other charts and summaries have been received into evidence to illustrate

4   information brought out in the trial. Charts and summaries are only as good as the

5   underlying evidence that supports them. You should, therefore, give them only such

6   weight as you think the underlying evidence deserves.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

EXHIBIT 36
PAGE 417

1

## JURY INSTRUCTION NO. 18

2

You have heard evidence that both Mattel and MGA purchased and evaluated

3

each other's existing products and had those products in their respective facilities. In this

4

trial, there is no allegation that it is illegal or improper for a company or person to

5

purchase, possess, or evaluate the publicly available product of a competitor.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _36_
PAGE ___418___

### JURY INSTRUCTION NO. 19

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

20

EXHIBIT 56
PAGE 419

1

### JURY INSTRUCTION NO. 20

2

Mattel claims that the defendants, MGA Entertainment, Inc. ("MGA"), Isaac

3
4

Larian and MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), engaged in copyright

infringement of certain items that you found in Phase A of this trial were created by

5
6

Carter Bryant when he worked at Mattel. The defendants deny that claim.

7

Copyright is the exclusive right to copy.

8

This right to copy includes the exclusive rights to:

9

(1)    Authorize, or make additional copies, or otherwise reproduce the

10
11

copyrighted work;

12

(2)    Recast, transform, or adopt the work, that is, to prepare derivative works

13

based upon the copyrighted work;

14

(3)    Distribute copies of the copyrighted work to the public by sale or other

15

transfer of ownership; and

16
17

(4)    Display publicly a copyrighted work.

18

It is the owner of a copyright who may exercise these exclusive rights to copy.

19

As a matter of law, Mattel is the owner, by assignment, of the Bratz-related items

20

that you found were created by Carter Bryant, alone or jointly with others, while

21

employed by Mattel, which items have been registered by Mattel at the U.S. Copyright

22
23

Office. In general, copyright law protects against production, adaptation and distribution

24

of substantially similar copies of the owner's copyrighted work without the owner's

25

permission. An owner may enforce these rights to exclude others in an action for

26

copyright infringement.

27
28

21

EXHIBIT 36
PAGE 420

1    You must consider each defendant's acts separately to determine whether that

2  defendant has engaged in an act that is an infringement of Mattel's copyright.

22

EXHIBIT 36
PAGE 421

### JURY INSTRUCTION NO. 21

Copyright law allows the author of an original work to prevent others from copying the way or form the author used to express the ideas in the author's work. Only the particular way of expressing an idea can be copyrighted. Copyright law does not give the author the right to prevent others from copying or using the underlying ideas contained in the work, such as any procedures, processes, systems, methods of operation, concepts, principles or discoveries.

The right to exclude others from copying extends only to how the author expressed the ideas in the copyrighted work. The copyright is not violated when someone uses an idea from a copyrighted work, as long as the particular way of expressing that idea in the work is not copied.

23

EXHIBIT 36
PAGE 422

# JURY INSTRUCTION NO. 22

Anyone who copies original elements of a copyrighted work without the owner's permission infringes the copyright.

Mattel claims that the defendants have infringed copyrights for the Bratz-related items described above.  On Mattel's copyright infringement claim, Mattel has the burden of proving both of the following by a preponderance of the evidence:

1.     Mattel is the owner of a valid copyright; and

2.     The defendants copied original elements from the copyrighted work.

If you find that Mattel has proved both of these elements, your verdict should be for Mattel.

If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for the defendants.

As a matter of law, the first element is satisfied because Mattel is the owner of each of the items you found were created by Carter Bryant, alone or jointly with others, while employed by Mattel and which Mattel has registered with the U.S. Copyright Office.

Whether or not the second element is satisfied is for you to decide.

24

EXHIBIT 36
PAGE 423

**JURY INSTRUCTION NO. 23**

A copyright owner is entitled to exclude others from creating derivative works based upon the owner's copyrighted work. The term derivative work refers to a work based on one or more pre-existing works. Accordingly, Mattel is entitled to exclude others from recasting, transforming, or adapting, without Mattel's permission, the copyrighted works you found were created by Carter Bryant, alone or jointly with others, while he was employed by Mattel.

25

EXHIBIT 36
PAGE 424

# JURY INSTRUCTION NO. 24

An owner is entitled to copyright protection of a compilation.  A compilation is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

The owner of a compilation may enforce the right to exclude others in an action for copyright infringement.

26

EXHIBIT  36
PAGE  405

### JURY INSTRUCTION NO. 25

As explained above, Mattel has the burden of proving that the defendants copied original elements from Mattel's copyrighted work. There are two ways in which Mattel may meet that burden.

First, Mattel may show the defendants copied from the work by showing by a preponderance of the evidence that the defendants actually copied a significant amount of protectable expression from the work.

Second, in the alternative, Mattel may also show the defendants copied from the work by showing by a preponderance of the evidence that the defendants had access to Mattel's copyrighted works and that there are substantial similarities between the defendants' works and original elements of Mattel's works.

It is undisputed in this case that defendants had access to Mattel's copyrighted works. Whether there are substantial similarities between the defendants' works and original elements of Mattel's works is for you to decide.

27

EXHIBIT 30
PAGE 426

**JURY INSTRUCTION NO. 26**

You are to make a determination regarding substantial similarity according to a two-step process, which includes application of the "extrinsic test" and the "intrinsic test." To prevail on its claims for copyright infringement, Mattel must satisfy both of these tests.

First, you must apply the extrinsic test. Under the extrinsic test, Mattel must establish that specific ideas and expressive elements of the works Mattel owns and the Bratz-related products that Mattel claims are infringing are substantially similar.

The Court has determined what elements of the works that you found were created by Carter Bryant, solely or jointly while working at Mattel, are protectable under copyright law. These are the elements that you should consider for the purpose of your comparisons to each of the allegedly infringing products under the extrinsic test:

First, the particularized, synergistic compilation and expression of the human form and anatomy that expresses a unique style and conveys a distinct look or attitude;

Second, the particularized expression of a doll's head, lips, eyes, eyebrows, eye features, nose, chin, hair style and breasts, including the accentuation or exaggeration of certain anatomical features relative to others (doll lips, eyes, eyebrows, and eye features) and de-emphasis of certain anatomical features relative to others (doll nose and thin, small doll bodies); and

Third, the particularized doll clothes, doll shoes, and doll accessories that express aggressive, contemporary, youthful style.

In contrast, certain basic elements of Carter Bryant's works are not protectable. Specifically, copying of protected expression or ideas cannot be established by the mere

28

EXHIBIT 36
PAGE 427

1   fact that both Carter Bryant's works and the allegedly infringing designs bear a

2   resemblance or similarity to human form and human physiology; have hair, heads, two

3
4   eyes, eyebrows, lips, nose, chin, mouth, and other features that track human anatomy and

5   physiology; wear or have human clothes, shoes, and accessories; depict a certain age,

6   race, ethnicity, or have an "urban" appearance; possess common or standard anatomical

7   features relative to others or depict common or standard treatment of fashion doll subject

8   matter. Nevertheless, particular compilations or combinations of these otherwise non-

9
10  protectable elements in the works which express a particular style or convey a distinct

11  look or attitude, are protectable.

12          You should consider only the elements I have just listed for purposes of the

13  extrinsic test. Focusing on the protectable elements of the works by Carter Bryant as

14  compared to those elements in the allegedly infringing Bratz-related works, you must

15  determine whether Mattel has proven by the preponderance of the evidence that the works

16
17  are substantially similar. If you so find, you must next consider the intrinsic test. If you

18  do not so find, you must find for the defendants.

19          The intrinsic test looks at the overall similarity of ideas and expression in the

20  works from the perspective of an ordinary observer. You should ask yourself whether the

21  ordinary, reasonable audience, in this case girls between the ages of 7 and 12, would

22
23  determine or recognize the defendants' products as reflecting the total concept and feel, or

24  as a "picturization," of the Bratz-related works that you have found Carter Bryant created

25  alone or jointly with others while employed by Mattel.

26          Mattel does not need to establish that the works it alleges are infringing are

27  identical or virtually identical to the works it owns, nor that the allegedly infringing

28

29

EXHIBIT 36
PAGE 428

1   works do not contain any non-infringing material.  However, Mattel does need to

2   establish that, focusing on the protectable elements of Carter Bryant's designs which I

3   have identified under the extrinsic test, and the overall look and feel of the works under

4
5   the intrinsic test, there are substantial similarities between the copyright-protected works

6   and the allegedly infringing works.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 36
PAGE 429

1

## JURY INSTRUCTION NO. 27

2

3       The degree of similarity required to support a finding of substantial similarity is

4  affected by the degree of access MGA, Isaac Larian and MGA Hong Kong had to Carter

5  Bryant's works. The greater the level of access, the lower the showing of similarity

6  required to support a finding of substantial similarity. However, the burden of proving

7  substantial similarity by a preponderance of the evidence always remains with Mattel.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31

EXHIBIT 36
PAGE 430

1

## JURY INSTRUCTION NO. 28

2

Copyright law protects distinctive characters. Defendants' works infringe

3

4

Mattel's copyrights if they copy recognizable and distinctive traits, attributes, and

5

elements of the personalities of the characters portrayed in Carter Bryant's works.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 36
PAGE 431

1

**JURY INSTRUCTION NO. 29**

2

If you find that defendants had access to the copyrighted works and substantial

3

similarity between the copyrighted works and allegedly infringing works, you must find

4

5

that defendants infringed Mattel's copyrights. Defendants contend that certain Bratz-

6

related works were created independently, that is, that defendants did not actually copy or

7

prepare derivative works from Carter Bryant's works when they created these Bratz-

8

related works, notwithstanding their admitted access to these works. A claim of

9

independent creation applies where a defendant can prove that he or she created the

10

11

allegedly infringing work without copying or adapting or preparing derivative works from

12

the original to which he or she had access.

13

Defendants bear the burden of proof on the issue of independent creation.

14

If you find that Mattel has shown the elements of infringement and defendants

15

have not established independent creation by a preponderance of the evidence, then you

16

must find for Mattel on its claim of copyright infringement.

17

18

19

20

21

22

23

24

25

26

27

28

33

EXHIBIT 36
PAGE 432



1

**JURY INSTRUCTION NO. 30**

2

A two-dimensional work, such as a drawing, can be infringed by a

3

4

three-dimensional work, such as a doll. A doll, which consists of different materials or

5

includes aspects that are not visible in a copyrighted drawing, nevertheless will infringe

6

the drawing when the works are substantially similar in their appearance under the

7

extrinsic and intrinsic tests. A three-dimensional work is not an independent creation

8

merely because it includes or is a result of artistic or non-artistic work not included in the

9

copyrighted work. Rather, the question is whether the three-dimensional work is

10

11

substantially similar to the two-dimensional work as a whole using the extrinsic/intrinsic

12

test described above.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 36

PAGE 433

1

## JURY INSTRUCTION NO. 31

2

3    A copyright can be infringed by intermediate or preparatory works, including

4    works prepared in the product development or marketing stage, that are substantially

5    similar to a copyrighted work, regardless of whether the end product of the copying also

6    infringes the copyright.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

35

EXHIBIT 36
PAGE 434

## JURY INSTRUCTION NO. 32

Mattel has presented evidence concerning certain copyright infringement lawsuits brought by MGA in Hong Kong pursuant to Hong Kong law.

The Court has excluded, and you may not consider, any reference to any legal arguments or legal conclusions associated with those lawsuits.

You may, however, consider any factual statements or factual representations that MGA made in those lawsuits.

It is for you to decide how much weight, if any, to give to those factual statements or factual representations.

36

EXHIBIT 36
PAGE 435

**JURY INSTRUCTION NO. 33**

If you find that MGA infringed Mattel's copyright in the Bratz works, you may consider Mattel's claim that Isaac Larian vicariously infringed that copyright. Mattel has the burden of proving each of the following by a preponderance of the evidence:

1.    Isaac Larian profited directly from the infringing activity of MGA;

2.    Isaac Larian had the right and ability to supervise/control the infringing activity of MGA; and

3.    Isaac Larian failed to exercise that right and ability.

If you find that Mattel proved each of these elements, your verdict should be for Mattel if you also find that MGA infringed Mattel's copyright.  If, on the other hand, Mattel has failed to prove any of these elements, your verdict should be for Isaac Larian on Mattel's claim for copyright infringement, unless you find that Isaac Larian is liable for contributory infringement under the instruction that follows.

37

EXHIBIT 36
PAGE 436

## JURY INSTRUCTION NO. 34

A defendant may be liable for copyright infringement engaged in by another if he/it knew or had reason to know of the infringing activity and intentionally materially contributes to that infringing activity.

If you find that MGA infringed Mattel's copyright in Bratz works, but that MGA Hong Kong and/or Isaac Larian did not directly or vicariously engage in acts of infringement, you should proceed to consider Mattel's claim that MGA Hong Kong and Isaac Larian contributorily infringed that copyright. To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

1.    Isaac Larian and/or MGA Hong Kong knew or had reason to know of the infringing activity of MGA; and

2.    Isaac Larian and/or MGA Hong Kong intentionally materially contributed to MGA's infringing activity.

If you find that MGA infringed Mattel's copyright and you also find that Mattel has proved both of these elements, your verdict should be for Mattel. If, on the other hand, Mattel has failed to prove either or both of these elements as against MGA Hong Kong and/or Isaac Larian, and also failed to prove direct or vicarious infringement by MGA Hong Kong and/or Isaac Larian, your verdict should be for those defendants.

38

EXHIBIT _26_
PAGE_437_

# JURY INSTRUCTION NO. 35

Mattel claims that defendants fraudulently concealed the facts underlying

Mattel's claims of intentional interference with contract and conversion. Defendants deny

these allegations.

To prove fraudulent concealment, Mattel must show the following by a

preponderance of the evidence

(1)  the defendants took affirmative steps to conceal the facts that could have led

Mattel to discover that Carter Bryant created Bratz-related works while

employed by Mattel or that Carter Bryant entered into a contract with and

worked with MGA while he was still employed by Mattel; and

(2)  Mattel was not aware of such facts that either did or would have, with

diligence, led Mattel to discover that Carter Bryant created Bratz works

while employed by Mattel or that Carter Bryant entered into a contract with

and worked with MGA while he was still employed by Mattel.

If you so find by the preponderance of the evidence, you should find for Mattel

on its allegations of fraudulent concealment. If not, you should find for defendants on the

allegations of fraudulent concealment.

39

EXHIBIT 36
PAGE 438

1

## JURY INSTRUCTION NO. 36

2         It is the duty of the Court to instruct you about the measure of damages.  By

3    instructing you on damages, the Court does not mean to suggest for which party your

4    verdict should be rendered.

5

6         It is for you to determine what damages, if any, have been proved.

7         Your award must be based upon evidence and not upon speculation, guesswork

8    or conjecture.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 36
PAGE 439

## JURY INSTRUCTION NO. 37

In Phase A, you determined that Mattel had proved its claim for intentional interference with contractual relations against the defendants MGA and Isaac Larian. You must now decide how much money, if any, should be awarded as damages.

The amount of damages must include an award for each item of harm that was caused by MGA's and Isaac Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel must prove the amount of damages. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)    Compensatory and general damages, including disgorgement of profits earned by MGA and Isaac Larian as a result of their wrongful conduct;

(2)    Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's claim arose;

(3)    Punitive damages.

41



EXHIBIT 34
PAGE 440

## JURY INSTRUCTION NO. 38

In Phase A, you determined that Mattel had proved its claims against the defendants MGA and Isaac Larian for aiding and abetting Carter Bryant's breach of fiduciary duty and breach of the duty of loyalty. You must now decide how much money, if any, should be awarded as damages.

The amount of damages must include an award for each item of harm that was caused by MGA's and Isaac Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel must prove the amount of its damages. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1) Compensatory and general damages, including disgorgement of profits earned by MGA and Isaac Larian as a result of their wrongful conduct;

(2) Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's claim arose;

(3) Punitive damages.

42

EXHIBIT 36
PAGE 441

**JURY INSTRUCTION NO. 39**

1

2          Mattel is entitled to obtain disgorgement of profits as an element of its damages

3     for the wrongful acts of aiding and abetting breach of fiduciary duty and duty of loyalty

4     that you have found. Accordingly, if you find that MGA and/or Isaac Larian obtained

5     profits or advantages because of these specific wrongful acts, those profits and

6

7     advantages should be awarded to Mattel.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

43

EXHIBIT 36
PAGE 442

### JURY INSTRUCTION NO. 40

In Phase A of this trial, you found that Mattel had proved its claims for conversion of tangible property against MGA, Isaac Larian and MGA Hong Kong. You must now decide how much money will reasonably compensate Mattel for the harm. This compensation is called damages.

Mattel must prove the amount of its damages. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)   The fair market value of the tangible Bratz works created by Carter Bryant while he was employed by Mattel; and

(2)   Prejudgment interest at the maximum rate, which is 7%, calculated from the date Mattel's property was converted;

(3)   Punitive damages.

Fair market value is measured as of the time the tangible item was converted. Fair market value is the highest price that a willing buyer would have paid to a willing seller assuming that there is no pressure on either one to buy or sell, and that the buyer and seller know all the uses and purposes for which the tangible items are reasonably capable of being used.

44

EXHIBIT 36
PAGE 443

## JURY INSTRUCTION NO. 41

If you find for the plaintiff, Mattel, on any of its copyright infringement claims against the defendants, you must determine Mattel's damages. Mattel is entitled to recover any profits of the defendants attributable to the infringement. Mattel must prove damages by a preponderance of the evidence.

45

EXHIBIT 34
PAGE 944

## JURY INSTRUCTION NO. 42

You may make an award of the defendants' profits only if you find that the plaintiff showed a causal relationship between the infringement and the defendants' gross revenue.

The defendants' profit is determined by deducting expenses from the defendants' gross revenue.

The defendants' gross revenue is all of the defendants' receipts from sale of a product containing or using the copyrighted work or associated with the infringement. Mattel has the burden of proving the defendants' gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendants' gross revenue. The defendants have the burden of proving the defendants' expenses by a preponderance of the evidence.

Indirect profits are the defendants' profits with a less direct connection or link to the infringement. A plaintiff such as Mattel may be entitled to indirect profits in addition to direct profits. To recover indirect profits, Mattel must establish a causal relationship between the infringement and the profits generated indirectly from such infringement.

In other words, Mattel must offer some evidence that the infringement at least partially caused the profits that the infringer generated as a result of the infringement.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The defendants have the

EXHIBIT 36
PAGE 445

1  burden of proving the portion of the profit, if any, attributable to factors other than

2  infringing the copyrighted work.

3        Defendants are not required to prove with precision the percentage of its profits

4  attributable to factors other than infringement, so long as the apportionment is reasonable

5

6  and just. However, in determining what portion of the defendants' profits are attributable

7  to copyright infringement, the benefit of the doubt should be given to Mattel and not

8  defendants.

9        If the copyrighted portions are so intermingled with the rest of the infringing

10  work that they cannot well be distinguished from it, the entire profits realized by the

11

12  defendants are to be given to the plaintiff. At the same time, defendants do not need to

13  demonstrate that the profits not attributable to infringement are completely free of

14  infringing material.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

47

EXHIBIT 36

PAGE 446

**JURY INSTRUCTION NO. 43**

Mattel also claims that defendants engaged in willful infringement of Mattel's copyrights. An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

1.   The defendants engaged in acts that infringed the copyright; and

2.   The defendants knew that those acts infringed the copyright.

A defendant cannot deduct overhead expenses, operating expenses, or taxes from his/its gross revenue when the copyright infringement is willful.

48

EXHIBIT 36
PAGE 447

**JURY INSTRUCTION NO. 44**

Mattel seeks damages under more than one legal claim or theory and as to three defendants. In awarding damages as to any particular claim or defendant, you should not consider or discount your award based on amounts, if any, that you award as to any other claim or defendant. That is, you should award the full amount of damages you find appropriate, if any, as to each separate claim against each defendant. The Court will ensure, once your verdict has been reached, that the plaintiff does not obtain duplicative damages.

49

EXHIBIT 36
PAGE 448

### JURY INSTRUCTION NO. 45

If you decide that Isaac Larian's, MGA's or MGA Hong Kong's conduct caused Mattel harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Isaac Larian only if Mattel proves by clear and convincing evidence that Isaac Larian engaged in that conduct with malice, oppression, or fraud.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

You may award punitive damages against MGA or MGA Hong Kong only if Mattel proves that MGA or MGA Hong Kong acted with malice, oppression, or fraud. To do this, Mattel must prove one of the following by clear and convincing evidence:

1.     That the malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of MGA or MGA Hong Kong, who acted on behalf of MGA or MGA Hong Kong; or

2.     That an officer, a director, or a managing agent of MGA or MGA Hong Kong had advance knowledge of the unfitness of another officer, director, or managing

1  agent of MGA or MGA Hong Kong and employed that person with a knowing disregard

2  of the rights or safety of others; or

3       3.    That the conduct constituting malice, oppression, or fraud was authorized by

4  one or more officers, directors, or managing agents of MGA or MGA Hong Kong; or

5

6       4.    That one or more officers, directors, or managing agents of MGA or MGA

7  Hong Kong knew of the conduct constituting malice, oppression, or fraud and adopted or

8  approved that conduct after it had occurred.

9       "Malice" means that a defendant acted with intent to cause injury or that a

10  defendant's conduct was despicable and was done with a willful and knowing disregard of

11  the rights or safety of another. A defendant acts with knowing disregard when the

12  defendant is aware of the probable dangerous consequences of his or its conduct and

13

14  deliberately fails to avoid those consequences.

15       "Oppression" means that a defendant's conduct was despicable and subjected

16  Mattel to cruel and unjust hardship in knowing disregard of its rights.

17       "Despicable conduct" is conduct that is so vile, base, or contemptible that it

18

19  would be looked down on and despised by reasonable people.

20       "Fraud" means that a defendant intentionally misrepresented or concealed a

21  material fact and did so intending to harm Mattel.

22       An employee is a "managing agent" if he or she exercises substantial independent

23  authority and judgment in his or her corporate decision making such that his or her

24

25  decisions ultimately determine corporate policy.

26       There is no fixed formula for determining the amount of punitive damages, and

27  you are not required to award any punitive damages. If you decide to award punitive

28

51

EXHIBIT __36__
PAGE __450__

1  damages, you should consider all of the following separately for each defendant in

2  determining the amount:

3       a.    How reprehensible was that defendant's conduct?

4       b.    Is there a reasonable relationship between the amount of punitive damages

5
6  and Mattel's harm or between the amount of punitive damages and potential harm to

7  Mattel that the defendant knew was likely to occur because of his or its conduct?

8  Punitive damages may not be used to punish a defendant for the impact of its alleged

9  misconduct on persons other than Mattel.

10       c.    In view of that defendant's financial condition, what amount is necessary to

11  punish him or it and discourage future wrongful conduct?  You may not increase the

12
13  punitive award above an amount that is otherwise appropriate merely because a defendant

14  has substantial financial resources.  Any award you impose may not exceed that

15  defendant's ability to pay.

52

EXHIBIT 36
PAGE 451

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. 46**

You have heard testimony regarding the prospect of an injunction being issued in this case. It is for the Court to decide what, if any, injunctive relief to order.

53

EXHIBIT 36
PAGE 452

### JURY INSTRUCTION NO. 47

When you begin your deliberations, your foreperson will preside over the deliberations and will speak for you here in Court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

EXHIBIT _36_
PAGE _453_

## JURY INSTRUCTION NO. 48

1

2          If it becomes necessary during your deliberations to communicate with me, you

3      may send a note through the bailiff, signed by your presiding juror or by one or more

4      members of the jury. No member of the jury should ever attempt to communicate with me

5
       except by a signed writing; I will communicate with any member of the jury on anything
6
7      concerning the case only in writing, or here in open court. If you send out a question, I

8      will consult with the parties before answering it, which may take some time. You may

9      continue your deliberations while waiting for the answer to any question. Remember that

10     you are not to tell anyone—including me—how the jury stands, numerically or otherwise,

11     until after you have reached a unanimous verdict or have been discharged. Do not
12
13     disclose any vote count in any note to the court.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

55

EXHIBIT _36_ .
PAGE _454_

## JURY INSTRUCTION NO. 49

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

EXHIBIT 34
PAGE 455

# EXHIBIT 37

3690

1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                 EASTERN DIVISION

4                    - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                    - - -

7   MATTEL, INC.,                          **CERTIFIED**

8                 PLAINTIFF,                **COPY**

9        VS.                    )   NO. CV 04-09049

10  MGA ENTERTAINMENT, INC., ET. AL.,   )

11                DEFENDANTS.   )   TRIAL DAY 18
                              )   MORNING SESSION
12  AND CONSOLIDATED ACTIONS,   )   PAGES 3690-3821

13

14

15     REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16               RIVERSIDE, CALIFORNIA

17             TUESDAY, JULY 1ST, 2008

18                  8:44 A.M.

19

20

21

22

23            THERESA A. LANZA, RPR, CSR
            FEDERAL OFFICIAL COURT REPORTER
24             3470 12TH STREET, RM. 134
            RIVERSIDE, CALIFORNIA   92501
25               951-274-0844
            WWW.THERESALANZA.COM

EXHIBIT 37
PAGE 456



```
 1    APPEARANCES:

 2
      ON BEHALF OF MATTEL, INC.:
 3
                          QUINN EMANUEL
 4                        BY:   JOHN QUINN
                                JON COREY
 5                              MICHAEL T. ZELLER
                                HARRY OLIVAR
 6                              TIMOTHY ALGER
                          865 S. FIGUEROA STREET,
 7                        10TH FLOOR
                          LOS ANGELES, CALIFORNIA  90017
 8

 9

10    ON BEHALF OF MGA ENTERTAINMENT:

11                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:   THOMAS J. NOLAN
12                              JASON RUSSELL
                                RAOUL SLOAN
13                              LAUREN AGUIAR
                                CARL ROTH
14                        300 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA  90071-3144
15                        213-687-5000

16

17

18

19

20

21

22

23

24                                      EXHIBIT 37
25                                      PAGE 457
```

TUESDAY, JULY 1, 2008                    TRIAL DAY 18, MORNING SESSION

3692

```
 1                        I N D E X

 2                                              PAGE

 3    DEFENSE CASE (CONTINUED)........................ 3705

 4    PLAINTIFF CASE (INTERRUPTED).................... 3770

 5

 6

 7    DEFENSE
      WITNESS          DIRECT      CROSS      REDIRECT      RECROSS
 8    JANET LENORE BRYANT (VIA VIDEO DEPOSITION)

 9    BY MR. ZELLER     3705

10

11    PLAINTIFF
      WITNESS          DIRECT      CROSS      REDIRECT      RECROSS
12    FARHAD LARIAN

13    BY MR. QUINN      3770                 3798, 3816
      BY MR. NOLAN                  3790                    3809
14

15
```

```
16

17              EXHIBITS           RECEIVED

18              734                3768
                736                3768
19              744                3768
                754                3768
20              767                3768
                774                3768
21              778                3768
                779                3768
22              781                3768
                783                3768
23              795                3768
                18569              3811
24
                                    EXHIBIT  37
25                                  PAGE  458
```

TUESDAY, JULY 1, 2008                TRIAL DAY 18, MORNING SESSION

```
 1   YOUR BROTHER'S REQUEST?

 2   A    NO, I DID NOT.

 3   Q    IT'S TRUE, THOUGH, ISN'T IT, THAT YOUR BROTHER HAS TOLD

 4   YOU PREVIOUSLY TO MAKE DOCUMENTS UNAVAILABLE IN LITIGATION?

 5   ISN'T THAT TRUE?                                               11:17

 6            MR. NOLAN:  OBJECTION, YOUR HONOR.  RELEVANCE; 403;

 7   LACK OF FOUNDATION; AND ALSO HEARSAY.

 8            THE COURT:  OVERRULED.

 9   BY MR. QUINN:

10   Q    SIR, IT'S TRUE THAT IN CONNECTION WITH OTHER LITIGATION,  11:17

11   YOUR BROTHER HAS TOLD YOU TO MAKE DOCUMENTS UNAVAILABLE; ISN'T

12   THAT TRUE?

13   A    I WANT TO ANSWER, IF I CAN GO BACK FOR A SECOND.

14            I'VE PROVIDED YOU 12,000 PAGES OF DOCUMENTS.  SORRY,

15   I LOST TRACK OF MY                                            11:18

16            IS IT TRUE?  I THINK I KNOW WHAT YOU'RE REFERRING TO.

17            IN 2000, ISAAC AND I WERE BICKERING AT EACH OTHER,

18   AND WE WERE PLAYING A TIT-FOR-TAT GAME, AND HE DIDN'T WANT ME

19   INVOLVED IN LITIGATION AT THE TIME BECAUSE I HAD SCREWED UP

20   SOME CASE IN TEXAS; SO HE SIMPLY DIDN'T WANT ME TO DEAL WITH   11:18

21   THE ATTORNEYS IN THAT CASE.

22   Q    THAT MAY BE THE ANSWER TO A DIFFERENT QUESTION, SIR.

23            MY QUESTION IS, IT'S TRUE THAT YOUR BROTHER HAS TOLD

24   YOU PREVIOUSLY TO MAKE DOCUMENTS UNAVAILABLE IN LITIGATION?

25   THAT'S HAPPENED BEFORE; TRUE?                                 11:18
```

EXHIBIT 37
PAGE 459

3785

1    A    WHAT HAPPENED WAS, IN THE FIREMAN'S FUND CASE, AS I SAID,

2    WE WERE PLAYING TIT-FOR-TAT; WE WERE BICKERING AT EACH OTHER;

3    AND HE DID NOT WANT ME INVOLVED IN THE CASE.  THERE WAS ONE

4    DOCUMENT THAT WE HAD GIVEN COPIES OF TO THE ATTORNEYS, AND THE

5    ORIGINAL WAS EXACTLY THE SAME AS THE COPY.  HE SIMPLY DIDN'T          11:19

6    WANT ME INVOLVED IN THE CASE, AND THAT'S WHY HE TOLD ME NOT TO

7    GIVE IT.

8    Q    SO HE TOLD YOU IN THAT CASE NOT TO MAKE THE LEGIBLE

9    ORIGINALS AVAILABLE TO FIREMEN'S FUND; CORRECT?  THAT'S WHAT HE

10   TOLD YOU?                                                            11:19

11   A    BECAUSE HE WAS GOING TO HANDLE IT HIMSELF.

12   Q    YOU WROTE AN E-MAIL ABOUT THIS; CORRECT?

13   A    YES.

14   Q    YOU DIDN'T MAKE ANY MENTION OF THE FACT IN THE E-MAIL THAT

15   HE WAS GOING TO HANDLE IT HIMSELF, DID YOU?                          11:19

16   A    AS I SAID, WE WERE PLAYING TIT-FOR-TAT, AND I WAS TRYING

17   TO SAY, 'I GOT YOU,' AND HE WAS TRYING TO SAY HE GOT ME; SO WE

18   HAD -- WE HAD A SIBLING RIVALRY.

19   Q    AND THE 'I GOT YOU' THAT YOU GAVE TO HIM WAS THAT YOU

20   REMINDED HIM THAT IN THIS FIREMAN'S FUND CASE, HE HAD               11:20

21   INSTRUCTED YOU NOT TO MAKE SOME ORIGINAL DOCUMENTS AVAILABLE,

22   AND YOU SAID, 'I DID IT ANYWAY.'

23        YOU SAID YOU DID IT ANYWAY; CORRECT?    EXHIBIT 37

24   A    THAT'S TRUE.                            PAGE 460

25   Q    NOW, AFTER YOU DISMISSED YOUR FRAUD CASE AGAINST               11:20

```
 1  MR. LARIAN RELATING TO YOUR ALLEGATIONS OF CONCEALMENT OF

 2  BRATZ, HE WENT TO COURT AND GOT AN ATTORNEY'S FEES AWARD

 3  AGAINST YOU; CORRECT?

 4  A    YES, HE DID.

 5  Q    FOR $1 MILLION; CORRECT?                              11:20

 6  A    YES, HE DID.

 7  Q    THAT'S STILL HANGING OVER YOU TO THIS DAY; ISN'T THAT

 8  TRUE?

 9  A    NO, IT'S NOT.

10  Q    HAVE YOU PAID IT?                                     11:20

11  A    NO, I HAVE NOT.

12  Q    HAS ANYBODY TAKEN CARE OF THAT, THAT YOU'RE AWARE OF?

13  A    TAKEN CARE OF IT, MEANING WHAT?

14  Q    LET ME ASK IT THIS WAY:  IT'S TRUE, ISN'T IT, THAT YOUR

15  BROTHER COULD, TOMORROW, GO EXECUTE AND TRY TO COLLECT THAT  11:20

16  MILLION DOLLAR ATTORNEY'S FEES AWARD?

17  A    ALL HE HAS TO DO IS GIVE ME A CALL AND I'LL WRITE HIM A

18  CHECK.

19  Q    HAS HE GIVEN YOU THAT CALL YET?

20  A    NO.                                                   11:2J

21  Q    HE COULD GIVE IT TO YOU TOMORROW.

22  A    IF HE WANTS TO, HE CAN.  HE PROMISED ME HE WOULDN'T

23  COLLECT IT.  IF HE WANTS TO, HE CAN.

24  Q    HAVE YOU EVER HEARD OF SOMETHING CALLED A SATISFACTION OF

25  JUDGMENT THAT SOMEBODY CAN FILE WITH THE COURT TO ABSOLUTELY  11:2J
```

3821

1  COMING BACK UNTIL 1:45.

2          ANYTHING FROM MGA?

3          **MR. NOLAN:**  NO.  WE'RE FINE.

4          (MORNING SESSION CONCLUDED.)

5

6

7

8

9

10

11

12

13                          CERTIFICATE

14

15  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
16  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
    ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
17  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.

18

19

20  THERESA A. LANZA, RPR, CSR                    7-2-08
    OFFICIAL COURT REPORTER                        DATE

21

22

23

24

25                                      EXHIBIT  37
                                        PAGE  462

TUESDAY, JULY 1, 2008                    TRIAL DAY 18, MORNING SESSION

# EXHIBIT 38

3881

```
 1                    UNITED STATES DISTRICT COURT

 2                  CENTRAL DISTRICT OF CALIFORNIA

 3                         EASTERN DIVISION

 4                            - - -

 5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

 6                            - - -
```

**CERTIFIED COPY**

```
 7   MATTEL, INC.,                  )
                                    )
 8                  PLAINTIFF,      )
                                    )
 9             VS.                  )   NO. CV 04-09049
                                    )
10   MGA ENTERTAINMENT, INC., ET. AL., )
                                    )
11                  DEFENDANTS.     )   TRIAL DAY 19
     _____)   MORNING SESSION
12   AND CONSOLIDATED ACTIONS,      )   PAGES 3881-4021
     _____)

13

14

15        REPORTER'S TRANSCRIPT OF JURY TRIAL PROCEEDINGS

16                    RIVERSIDE, CALIFORNIA

17                  WEDNESDAY, JULY 2, 2008

18                        8:48 A.M.

19

20

21

22

23                 THERESA A. LANZA, RPR, CSR
                 FEDERAL OFFICIAL COURT REPORTER
24                  3470 12TH STREET, RM. 134
                 RIVERSIDE, CALIFORNIA  92501
25                     951-274-0844
                   WWW.THERESALANZA.COM
```

EXHIBIT 38
PAGE 403

```
 1    APPEARANCES:

 2
      ON BEHALF OF MATTEL, INC.:
 3
                          QUINN EMANUEL
 4                        BY:   JOHN QUINN
                                JON COREY
 5                              MICHAEL T. ZELLER
                                HARRY OLIVAR
 6                              TIMOTHY ALGER
                          865 S. FIGUEROA STREET,
 7                        10TH FLOOR
                          LOS ANGELES, CALIFORNIA   90017
 8

 9

10    ON BEHALF OF MGA ENTERTAINMENT:

11                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:   THOMAS J. NOLAN
12                              JASON RUSSELL
                                RAOUL KENNEDY
13                              LAUREN AGUIAR
                                CARL ROTH
14                        300 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA   90071-3144
15                        213-687-5000

16
      ON BEHALF OF THIRD-PARTY DEFENDANT PETER MARLOW:
17
                          LAW OFFICES OF STEVEN M. GOLDSOBEL
18                        BY:   STEVEN M. GOLDSOBEL
                          1900 AVENUE OF THE STARS
19                        SUITE 1800
                          LOS ANGELES, CA   90067
20                        310-552-4848

21

22

23

24
                                          EXHIBIT 38
25                                        PAGE 464
```

1   HAPPENING.

2          THE COURT:  I WANT TO HEAR HIS TESTIMONY.

3          MS. AGUIAR:  AS IF WE'RE DOING, FOR LACK OF A BETTER

4   WORD, A DRY RUN?

5          THE COURT:  YES.

6          MS. AGUIAR:  LIKE, JUST GO THROUGH IT AND 'WHAT WOULD

7   YOU SAY,' RATHER THAN MORE OF LIKE A VOIR DIRE, LIKE 'WHAT

8   WOULD YOU SAY, WHAT DO YOU THINK ABOUT THIS' --

9          THE COURT:  WHAT I MAY DO, FOR THE COURT'S

10  CONVENIENCE, IS BREAK IT DOWN INTO THE FOUR CATEGORIES THAT      09:15

11  YOU'VE SUGGESTED HERE.  WE'VE COME UP WITH THE CREATIVE DESIGN

12  PROCESS FOR THE DRAWINGS; THE COMPARATIVE INFLUENCE PROCESS;

13  THE COLORIZATION, WHICH ADDS BOTH THE COLORIZATION OF THE

14  DRAWINGS AND THE FASHION DRAWINGS; AND THE SCULPTING.  AND IN

15  EACH OF THOSE FOUR AREAS, I'D LIKE TO HEAR HIS TESTIMONY AS      09:15

16  ELICITED FROM YOU, AND I'D LIKE TO HEAR THE CROSS-EXAMINATION;

17  AND THEN THE COURT WILL ASSESS WHETHER OR NOT THIS EXPERT IS

18  REALLY QUALIFIED, AND THE COURT WILL PERFORM ITS GATEKEEPING

19  FUNCTION.

20         MS. AGUIAR:  OKAY.  THEN WE MAY NEED THE BETTER PART      09:15

21  OF 12:30 TO 1:30.

22         THE COURT:  ALL RIGHT.  THEN LET'S START AT 12:15;

23  HAVE HIM READY TO GO AT 12:15.

24         MS. AGUIAR:  I WILL.

25         THE COURT:  VERY WELL.   EXHIBIT __38__                   09:16
                                    PAGE __465__

```
 1              THE WAIVER ISSUE.  I'LL TELL YOU WHERE I AM ON THIS
 2   AT THIS POINT.
 3              I THINK IT'S PRETTY CLEAR TO THE COURT THAT THE
 4   ROSENBAUM E-MAIL WAS A PRIVILEGED COMMUNICATION.  THERE IS NO
 5   QUESTION THAT IT CONTAINED ADVICE FROM AN ATTORNEY TO A CLIENT.   09:17
 6   IT MADE A RECOMMENDATION.  IT DID SET FORTH FACTUAL STATEMENTS.
 7   THE FACTUAL STATEMENTS WERE IN THE CONTEXT OF THE E-MAIL, THE
 8   PREDICATE FOR THE RECOMMENDATION; SO I THINK THE FACTUAL
 9   STATEMENT IS INEXTRICABLY INTERTWINED WITH THE ADVICE.
10              THE ADVICE-OF-COUNSEL DEFENSE HAS NOT BEEN ASSERTED,   09:17
11   OR HAS BEEN OTHERWISE DEALT WITH.  BUT I THINK THAT'S A BIT OF
12   A RED HERRING IN THIS CASE, BECAUSE I DON'T THINK IT'S
13   NECESSARY TO ASSERT AN ADVICE-OF-COUNSEL DEFENSE TO WAIVE
14   ATTORNEY-CLIENT PRIVILEGE BY PRODUCTION OF A PRIVILEGED
15   COMMUNICATION.                                                   09:17
16              BUT WHERE I THINK MGA HAS A FAIRLY CONVINCING
17   ARGUMENT GOES TO THE SCOPE OF THE WAIVER, AND PARTICULARLY THIS
18   IN RE: SEAGATE TECH CASE THAT THEY CITE ON PAGE 19 OF THEIR
19   OPPOSITION, WHICH I DON'T REALLY HAVE A CLEAR RESPONSE FROM
20   MATTEL.  SO I WANT TO BEGIN THIS BY GIVING MATTEL AN             09:18
21   OPPORTUNITY TO RESPOND TO BOTH THE ANALYSIS AND THE CONCLUSION
22   OF THE SEAGATE CASE.  AND SEPARATE AND APART FROM THE MERITS OF
23   THIS ISSUE, THE COURT IS SOMEWHAT CONCERNED ABOUT THE TIMING OF
24   THE MOTION SEEKING THE WAIVER.  I'D LIKE THAT ISSUE ADDRESSED
25   AS WELL.                                                         09:18
```

EXHIBIT 38
PAGE 464

1    SO I'M GOING TO INVITE MATTEL TO PROCEED FIRST ON

2  THIS.  I GUESS THE FIRST TWO ISSUES ARE NOT NECESSARY TO

3  ADDRESS, BECAUSE I DO THINK THAT THIS WAS A PRIVILEGED

4  COMMUNICATION; BUT I DO SEE THE COURT'S DISTINCTION IN SEAGATE,

5  THE FEDERAL CIRCUIT'S DISTINCTION, AND I SEE HOW IT MIGHT APPLY    09:18

6  TO THIS PARTICULAR COMMUNICATION.  AND I'M ALSO CONCERNED ABOUT

7  THE TIMING.

8         WHO FROM MATTEL -- I DON'T SEE ANYONE JUMPING UP.

9         **MR. PROCTOR:**  I'M TRYING TO REFRESH MYSELF ON THE

10  SEAGATE CASE, YOUR HONOR.                                          09:19

11         **THE COURT:**  I'LL READ THE QUOTE FROM SEAGATE THAT MGA

12  RELIES UPON.  "WHEREAS OPINION COUNSEL SERVES TO PROVIDE AN

13  OBJECTIVE ASSESSMENT FOR MAKING INFORMED BUSINESS DECISIONS,

14  TRIAL COUNSEL FOCUSES ON LITIGATION STRATEGY AND EVALUATES THE

15  MOST SUCCESSFUL MANNER IN PRESENTING A CASE TO A JUDICIAL          09:19

16  DECISION MAKER AND TRIAL COUNSEL ENGAGED IN AN ADVERSARIAL

17  PROCESS."

18         THE COURT DISTINGUISHES BETWEEN, ESSENTIALLY, THE

19  ADVICE BEING OFFERED IN A BUSINESS CONTEXT.

20         HERE, THE ADVICE BEING OFFERED IS CLEARLY RELATED TO        09:19

21  TIME LIMITATIONS ON PATENT LAWS.  AND I DON'T BUY THIS

22  DISTINCTION THAT -- THIS DISSECTION THAT MGA TRIES TO SAY,

23  'WELL, THE LINE BEFORE THAT IS UNRELATED FACTUAL ASSERTION FROM

24  THE ADVICE THAT'S GIVEN.'  IT'S CLEARLY GIVEN -- THE ADVICE IS

25  GIVEN RELYING ON THAT FACTUAL OR CONCLUSION OF FACT THAT THE       09:20

EXHIBIT 38
PAGE 467

```
 1          SEAGATE ON ITS FACE DOESN'T LIMIT ITSELF TO THE
 2   PATENT CONTEXT.  BUT EVEN IF IT DID, THIS IS HAND AND GLOVE.
 3   IT IS PATENT ADVICE ON THE ONE HAND, AND ON THE OTHER, A YEAR
 4   LATER, MR. LARIAN REACHING OUT TO NOT JUST ANY COUNSEL, BUT
 5   PATTY GLASER, WHO WAS, FOR A TIME, TRIAL COUNSEL.            09:32
 6          THE COURT:  WHAT WAS SHE AT THE TIME THAT HE MADE THE
 7   COMMUNICATION WITH HER?
 8          MR. RUSSELL:  WELL, THERE WASN'T LITIGATION PENDING,
 9   BUT HE SOUGHT HER AND RETAINED HER WHEN LITIGATION WAS FILED.
10   SO I DON'T THINK --                                         09:32
11          THE COURT:  GO BACK TO THE COURT'S QUESTION.
12          WHEN HE MADE THE COMMUNICATIONS, WHAT ROLE --
13          I GUESS I'M MAKING THE ASSUMPTION THAT SHE WAS
14   CONSULTING HIM AT THAT TIME, IN ANTICIPATION OF LITIGATION.
15          MR. RUSSELL:  THERE'S ABSOLUTELY NO DOUBT,           09:32
16   YOUR HONOR.  SHE HAD REPRESENTED MR. LARIAN AND MGA FOR YEARS
17   AS HIS LITIGATION COUNSEL.
18          THE COURT:  NOT AS HIS PATENT ATTORNEY?
19          MR. RUSSELL:  ABSOLUTELY NOT.
20          THE COURT:  I'M SURE MS. GLASER COULD --             09:32
21          MR. RUSSELL:  SHE COULD CORRECT ME, I'M SURE; BUT IN
22   THIS CONTEXT -- AND I THINK YOU'VE SEEN, YOUR HONOR, IN
23   CHAMBERS, THE VERY E-MAIL.
24          THE COURT:  I HAVE.
25          MR. RUSSELL:  YOU KNOW THAT THE CONTEXT IS CLEAR;    09:32
```

EXHIBIT 38
PAGE 468

1  MR. LARIAN WAS CONCERNED ABOUT ACTUAL LITIGATION. NOT PATENT

2  LITIGATION.

3        THE COURT: OKAY.

4        MR. RUSSELL: AND I JUST WANT TO MAKE ONE OTHER POINT

5  ON THIS TIMING ISSUE, BECAUSE I DON'T WANT TO LEAVE IT

6  UNADDRESSED; AND THAT IS, THIS HAS BEEN SOMETHING THAT THEY SAT

7  ON THEIR HANDS FOR THREE WEEKS AS WITNESSES HAVE COME UP AND

8  DOWN. WHY DID WE NOT HEAR FROM THEM?

9        THE POSITION NOW IS, ON JUNE 4TH, THE CHANGING ACT

10  HAPPENED, AND 20 DAYS HAVE PASSED, 20 DAYS WHILE WITNESSES WHO

11  AUTHORED AND RECEIVED E-MAILS TESTIFIED. NOT A PEEP. AND I

12  DON'T UNDERSTAND WHY THAT, IN AND OF ITSELF, SHOULDN'T BE A

13  BASIS TO DENY THEIR MOTION. I DIDN'T HEAR ANYTHING FROM

14  MR. QUINN, AND THE BRIEFS ARE DEAD SILENT ON THAT POINT.

15        THE COURT: VERY GOOD.

16        MR. QUINN?

17        MR. QUINN: I DON'T KNOW IF THE COURT IS INTERESTED

18  IN WHAT TRANSPIRED AT THE DEPOSITION AND WHAT I AGREED TO OR

19  NOT. IF THAT'S SOMETHING THAT --

20        THE COURT: AT THIS POINT, I THINK IT'S WATER UNDER

21  THE BRIDGE. I THINK BOTH SIDES ARE AGREED, AND I THINK THE

22  COURT IS FINDING, THAT THE PRIVILEGE IS WAIVED WITH RESPECT TO

23  THE DOCUMENT, THIS DOCUMENT; THAT'S DONE.

24        MR. QUINN: RIGHT.

25        THE COURT: WHAT I'M STRUGGLING WITH IS THE SCOPE OF

09:33
09:33
09:33
09:33
09:34

EXHIBIT 38
PAGE 469

1  THAT WAIVER.

2         MR. QUINN:  RIGHT.

3         IS THE COURT STILL CONCERNED -- I GATHER THE COURT IS

4  ALSO STILL CONCERNED ABOUT MS. GLASER'S ROLE AND THE POTENTIAL

5  IMPLICATION OF --                                              09:34

6         THE COURT:  THAT DOES HAVE --

7         MR. QUINN:  -- LITIGATION COUNSEL.

8         THE COURT:  RIGHT.

9         MR. QUINN:  HOWEVER WE DESCRIBE THAT, IN THE PATENT

10  CONTEXT OR OUTSIDE OF THE PATENT CONTEXT -- AND I SUBMIT THIS   09:34

11  IS REALLY AN ISSUE THAT ARISES IN SEAGATE AND OTHER PATENT

12  CASES IN THE CIRCUMSTANCES I'VE DESCRIBED, WHERE THE PLAINTIFF

13  IS TRYING TO GET INTO LITIGATION COUNSEL'S FILES TO SEE WHAT

14  IT --

15         THE COURT:  THIS IS PATENT ADVICE THAT OSTENSIBLY IS     09:34

16  BEING COMMUNICATED HERE; CORRECT?

17         MR. QUINN:  NO.

18         THE COURT:  HOW DO YOU READ THAT, AT LEAST ON ITS

19  FACE?

20         MR. QUINN:  ON SEAGATE?                                  09:34

21         THE COURT:  NO.  IN THE ROSENBAUM E-MAIL.

22         THE ADVICE GIVEN -- TO THE EXTENT THERE IS ADVICE

23  GIVEN BY THIS E-MAIL, IS, 'I RECOMMEND THAT YOUR PATENT

24  ATTORNEYS REVIEW THIS PROJECT AS SOON AS POSSIBLE TO AVOID ANY

25  TIME LIMITATIONS IN THE PATENT LAWS.'                          09:35

EXHIBIT __38__
PAGE __470__

3916

```
 1          MR. QUINN:  THERE IS PATENT ADVICE, SURE, YOUR HONOR;

 2   BUT GOING FORWARD TO MS. GLASER'S E-MAIL --

 3          THE COURT:  THAT'S THE ONLY ADVICE, THAT I CAN SEE,

 4   IN THIS E-MAIL.  I DON'T SEE ANY OTHER ADVICE.

 5          MR. QUINN:  BUT, YOUR HONOR, THE POINT IS THAT THE      09:35

 6   QUESTION OF THE ALLEGED PRIVILEGED DOCUMENT THAT WE'RE SAYING

 7   THAT COMES WITHIN THE SCOPE OF THIS HAS NOTHING TO DO WITH

 8   PATENT ADVICE.

 9          THE COURT:  IT DOESN'T.

10          MR. QUINN:  THERE'S NO CLAIM OF WILLFULNESS.  THERE'S   09:35

11   NO EFFORT TO -- I GUESS THIS WOULD BE MY MAIN POINT,

12   YOUR HONOR, AND I THINK THIS IS THE IMPORTANT THING TO GRASP:

13   WHATEVER OUR CONCERN IS ABOUT PROTECTING TRIAL COUNSEL, OR EVEN

14   PRELITIGATION, POTENTIAL TRIAL COUNSEL'S ADVICE AND ROLE, IT

15   CAN'T APPLY TO THAT INITIAL COMMUNICATION FROM THE CLIENT      09:35

16   BEFORE HE'S EVER GOTTEN ANY ADVICE FROM THE LITIGATOR.  IF

17   THAT'S ON THE SAME SUBJECT MATTER -- AND THIS REALLY IS OUR

18   ARGUMENT, YOUR HONOR -- IF THE CLIENT MAKES A COMMUNICATION TO

19   A LAWYER THAT'S ON THE SAME SUBJECT AS TO WHICH THE PRIVILEGE

20   HAS ALREADY BEEN WAIVED, THEN IT'S WAIVED THERE, AND THAT      09:36

21   INITIAL COMMUNICATION CAN'T IMPLICATE THE TRIAL LAWYER'S ROLE,

22   WHETHER IT'S FAIR OR UNFAIR, TO GET INTO THE TRIAL LAWYER'S

23   FILE.  THAT'S WHAT SEAGATE IS CONCERNED WITH.

24          THE COURT:  IT'S AN INTERESTING QUESTION.  I THINK I

25   UNDERSTAND YOUR ARGUMENT.  YOUR POINT IS THAT ADVICE AND       09:36
```

EXHIBIT _38_
PAGE _471_

1    UNAVAILABLE YESTERDAY, BUT HE IS AVAILABLE THIS MORNING.

2          IS THAT RIGHT, MR. ZELLER?

3          **MR. ZELLER:**  YES.

4          **THE COURT:**  VERY GOOD.

5          **MR. ZELLER:**  YES.                                      09:47

6          MATTEL CALLS PETER MARLOW FOR THE CONCLUSION OF HIS

7    TESTIMONY.

8          **THE COURT:**  VERY WELL.

9          **MR. ZELLER:**  IF I MAY MOVE INTO EVIDENCE THE REST OF

10   EXHIBIT 5723, WHICH WERE THOSE TIME SHEETS.  THE COURT HAD    09:47

11   ALLOWED THE INTRODUCTION OF THE FIRST TWO PAGES, AND THERE WERE

12   SOME ADDITIONAL PAGES.

13         **THE COURT:**  VERY WELL.

14         ANY OBJECTION?

15         **MS. AGUIAR:**  I STILL HAVE AN OBJECTION ON RELEVANCE   09:47

16   AND 403, YOUR HONOR.

17         **THE COURT:**  VERY WELL.

18         THAT IS OVERRULED, AND THE EXHIBIT IS ADMITTED.

19         (EXHIBIT 5723 RECEIVED.)

20         **MR. ZELLER:**  THANK YOU.                              09:47

21         AND THEN THERE WAS ALSO EXHIBIT 10034, WHICH IS THE

22   APPLICATION OF MARIA SALAZAR TO MGA.  THE COURT HAD

23   CONDITIONALLY ADMITTED IT THROUGH THE CUSTODIAN OF RECORDS,

24   CONTINGENT ON IT BEING CONNECTED UP WITH RELEVANCE; AND I THINK

25   THAT'S NOW BEEN ESTABLISHED.    EXHIBIT __38__               09:48
                                     PAGE __412__

```
 1          THE COURT:  THAT RELEVANCY OBJECTION IS OVERRULED, OR

 2   AT LEAST THE CONDITIONAL ADMITTANCE IS MADE UNCONDITIONALLY.

 3   IT IS ADMITTED, AND IT MAY BE PUBLISHED.

 4          (EXHIBIT 10034 RECEIVED.)

 5          MR. ZELLER:  THANK YOU, YOUR HONOR.              09:46

 6          THE COURT:  VERY WELL.

 7          MR. MARLOW, WELCOME BACK.

 8          COUNSEL, YOU MAY PROCEED.

 9              FURTHER DIRECT EXAMINATION

10   BY MR. ZELLER:                                         09:46

11   Q    GOOD MORNING, MR. MARLOW.

12   A    GOOD MORNING.

13   Q    WHEN YOU TESTIFIED HERE IN COURT LAST WEEK, YOU TOLD US

14   THAT THERE WERE THREE MATTEL EMPLOYEES WHO SECRETLY WORKED FOR

15   YEARS ON BRATZ FASHIONS WHILE THEY WERE EMPLOYED BY MATTEL.   09:46

16          DO YOU REMEMBER THAT?

17   A    I REMEMBER THE QUESTION.

18   Q    AND THESE THREE ARE NAMED MARIA SALAZAR, ANA CABRERA, AND

19   BEATRIZ MORALES, AS WE TALKED ABOUT; RIGHT?

20   A    UH-HUH.  YES.                                     09:46

21   Q    AND WHEN YOU TESTIFIED LAST WEEK BEFORE THE JURY IN

22   RESPONSE TO MGA'S COUNSEL'S QUESTIONS, YOU TESTIFIED THAT AS

23   FAR AS YOU KNEW, AND AS FAR AS YOU KNOW, NO ONE AT MGA WAS EVER

24   AWARE THAT ANY OF THESE THREE MATTEL EMPLOYEES WERE WORKING ON

25   BRATZ WHILE THEY WERE EMPLOYED BY MATTEL.              09:45
```

EXHIBIT 38
PAGE 473

```
 1              DO YOU RECALL THAT?
 2    A    YES.
 3    Q    AND YOU SPECIFICALLY SAID ISAAC LARIAN NEVER KNEW; RIGHT?
 4    A    YES.
 5    Q    IT'S YOUR RECOLLECTION?                                      09:49
 6    A    YES.
 7    Q    AND YOU SAID PAULA GARCIA AND CARTER BRYANT DIDN'T KNOW
 8    EITHER, IN RESPONSE TO MGA'S COUNSEL'S QUESTIONS.
 9              DO YOU RECALL THAT?
10    A    VAGUELY.                                                     09:49
11    Q    NOW, IN FACT, YOU UNDERSTOOD YEARS AGO THAT MGA KNEW
12    MATTEL EMPLOYEES HAD BEEN SECRETLY WORKING ON BRATZ FASHIONS;
13    ISN'T THAT TRUE?
14              MS. AGUIAR:  OBJECTION.  LACKS FOUNDATION.
15    MISCHARACTERIZES HIS TESTIMONY.                                   09:49
16              THE COURT:  SUSTAINED ON FOUNDATION.
17    BY MR. ZELLER:
18    Q    MS. SALAZAR JOINED MGA AS AN EMPLOYEE IN 2003; CORRECT?
19    A    I DON'T KNOW.  I BELIEVE SO.
20    Q    AND SHE CERTAINLY KNEW SHE HAD WORKED ON BRATZ SECRETLY      09:49
21    WHILE A MATTEL EMPLOYEE; RIGHT?
22    A    YES.
23    Q    AND SO ONE REASON YOU UNDERSTOOD THAT MGA KNEW NO LATER
24    THAN 2003 THAT MATTEL EMPLOYEES WERE SECRETLY WORKING ON BRATZ
25    FASHIONS WAS BECAUSE, AS WE JUST DISCUSSED, MS. SALAZAR          09:50
```

EXHIBIT __38__
PAGE __474__

1          **MS. AGUIAR:**  BUT THERE WOULD BE LESS THAN ASKING

2     EVERY SINGLE QUESTION, I WOULD JUST ASK HIM TO EXPLAIN TO YOU

3     HIS TESTIMONY, AND THEN MR. COREY WOULD BE ABLE TO FOLLOW UP ON

4     THAT.

5          **THE COURT:**  VERY WELL.                                    12:18

6          LET'S GET BACK TOGETHER IN ABOUT TEN OR 15 MINUTES.

7          (WHEREUPON A BRIEF RECESS WAS HELD.)

8          (MORNING SESSION CONCLUDED. )

9

10

11

12

13

14

15                         CERTIFICATE

16

17     I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
       STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
18     THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
       ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
19     CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
       THE UNITED STATES.

20

21

22     THERESA A. LANZA, RPR, CSR          7-3-08
       OFFICIAL COURT REPORTER                DATE

23

24

25                              EXHIBIT _38_
                                PAGE _475_

WEDNESDAY, JULY 2, 2008          TRIAL DAY 19, MORNING SESSION

# EXHIBIT 39

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 40

**From:** Peter Marlow
**Sent:** Monday, August 01, 2005 12:31 PM
**To:** 'cbe1068@sbcglobal.net'
**Subject:** FW: Veronica Marlow

-----Original Message-----
From: Peter Marlow [mailto:pmarlow@socal.rr.com]
Sent: Monday, June 20, 2005 3:14 PM
To: Paula Garcia
Cc: Isaac Larian (ilarian@mgae.com); 'Isaac Larian (President / CEO)'; 'mwoods@mgae.com';
'CBE1068@cs.com'
Subject: Veronica Marlow

Hi Paula,

CONFIDENTIAL ATTORNEYS' EYES ONLY

KMW-MARLOW 002915

EXHIBIT __40__
PAGE __491__

EX 13223-0001

If Veronica goes to work for MGA, she will no longer be able to work with her team of pattern and sample makers. They have secure day jobs with an outlook of many more years of stability that they

CONFIDENTIAL ATTORNEYS' EYES ONLY

KMW-MARLOW 002916

EXHIBIT 40
PAGE 492

EX 13223-0002

are unwilling to leave. They only moonlight for Veronica. About 6 months ago we offered each of them full-time employment at double their present salaries with a very generous benefits package but they all refused.

These are older ladies, comfortable with the way things are and they don't want to change. We pay them very generously because they are risking their day jobs - even a nice retirement - to work for us. If they were ever discovered they'd certainly be painfully humiliated and fired. Yet they have told Veronica several times that they don't work for her for the money.

So, how do they get any work done like this? Maybe it's just that they are so talented. They have more than 100 years total of doll making experience between them. They are extremely fast and accurate. Despite the TV and the laughter, they work at a very intense pace. More importantly, though, they just love what they do. They are having fun. And what Veronica does through her love for these women, perhaps without even realizing it, is create a work environment where that fun never goes away. It's as close as you can get to a Santa's workshop.

Best regards,

Peter

CONFIDENTIAL ATTORNEYS' EYES ONLY

KMW-MARLOW 002917

EXHIBIT 40
PAGE 493

EX 13223-0003

# EXHIBIT 41

1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                              ---

4         HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5                              ---

6    MATTEL, INC.,                :   PAGES 3191 - 3319
                                   :
7              PLAINTIFF,          :
                                   :
8       VS.                        :   NO. ED CV04-09049-SGL
                                   :   [CONSOLIDATED WITH
9    MGA ENTERTAINMENT, INC.,      :   CV04-9059 & CV05-2727]
     ET AL.,                       :
10                                 :
               DEFENDANTS.         :
11   _____

12

13

14

15            REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                    RIVERSIDE, CALIFORNIA

17                    FRIDAY, JUNE 20, 2008

18                    JURY TRIAL - DAY 16

19                      MORNING SESSION

20

21

22                              MARK SCHWEITZER, CSR, RPR, CRR
                                OFFICIAL COURT REPORTER
23   CERTIFIED                    UNITED STATES DISTRICT COURT
                                181-H ROYBAL FEDERAL BUILDING
24   COPY                        255 EAST TEMPLE STREET
                                LOS ANGELES, CALIFORNIA 90012
25                               (213) 663-3494



EXHIBIT  41
PAGE  494

3192

```
 1    Appearances of Counsel:

 2

 3    On Behalf of Mattel:

 4         Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
           By John B. Quinn, Esq.
 5             B. Dylan Proctor, Esq.
               Michael T. Zeller, Esq.
 6             Harry Olivar, Esq.
               John Corey, Esq.
 7             Diane Hutnyan, Esq.
               William Price, Esq.
 8         855 South Figueroa Street
           10th Floor
 9         Los Angeles, CA 90017
           (213) 624-7707
10

11

12    On Behalf of MGA Entertainment:

13         Skadden, Arps, Slate, Meagher & Flom LLP
           By Thomas J. Nolan, Esq.
14             Carl Alan Roth, Esq.
               Jason Russell, Esq.
15             Lauren Aguiar, Esq.
               David Hansen, Esq.
16             Matthew Sloan, Esq.
               Robert Herrington, Esq.
17         300 South Grand Avenue
           Los Angeles, CA 90071-3144
18         (213) 687-5000

19

20

21

22

23

24

25
```

EXHIBIT 41
PAGE 495

3193

1                                I N D E X

2

3   CARTER BRYANT, PREVIOUSLY SWORN...................... 3227

4   REDIRECT EXAMINATION (CONTINUED) BY MR. PRICE:........ 3228

5   RECROSS-EXAMINATION BY MR. NOLAN: .................... 3252

6   FURTHER REDIRECT EXAMINATION BY MR. PRICE:............ 3276

7   LLOYD W. CUNNINGHAM, SWORN........................... 3296

8   DIRECT EXAMINATION BY MR. QUINN: .................... 3296

9

10                              E X H I B I T S

11   (Exhibit 15364 received.)............................ 3267

12   (Exhibit 13634 and 13635 received.)................... 3311

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 41
PAGE 496

1   an instruction not to turn over the originals.  That's my

2   reading of the initial e-mail here.

3          MR. ZELLER:  Sure.  And there's no question that,

4   you know, one could try and argue about the nexus of what we

5   were holding and why.  But the fact is that it's quite clear

6   that Fred Larian is saying he was told to withhold

7   information.  Regardless.

8          And one thing that the jury could infer from that

9   evidence and the evidence that Mr. Fred Larian will testify

10  about, the circumstances of what he did, is in fact he is

11  withholding this evidence, not just simply that he destroyed

12  it, but that he is withholding it.  The circumstances under

13  which he describes his destruction of evidence, you know, I

14  think a jury may very well find doesn't mean he actually got

15  rid of it.  He's just holding it and withholding it from us.

16         THE COURT:  Thank you, Counsel.

17         MR. ZELLER:  Thank you.

18         THE COURT:  All right.  This is what I'm going to

19  do on all three of these.  I'm going to make my rulings at

20  this point.

21         With respect to the documents, the privileged

22  documents, including Bates KS 07831 and the other documents

23  in that series that have been designated, based on what's

24  before me right now, the Court does not find that there is

25  sufficient evidence to order the documents to be produced to

EXHIBIT 41
PAGE 497

1    Mattel; however, I do believe that there is a sufficient

2    showing for the Court to examine the documents in camera.

3          So I'm going to order MGA to turn the series of

4    documents over to the Court.  Perhaps once the Court looks at

5    it, when that is combined with the evidence that is before

6    the Court, there may be sufficient evidence to produce them,

7    but I at this point don't think there's sufficient evidence

8    without knowing more about the documents themselves.

9          And, Counsel, I'm going to ask that you have

10   someone on your team do that and provide those to Mr. Holmes

11   as soon as possible, because I'd like to do this during

12   breaks or lunch today and get this done.

13         With respect to Exhibit 13381, I'm going to find on

14   402 and 403 grounds that that is precluded from Mattel's case

15   in chief based on the witnesses being called at this point.

16         As far as 13380, we are definitely going to redact

17   the line in the e-mail from Mr. Fred Larian to Isaac Larian,

18   the second sentence of that first e-mail on May 25th:  I

19   doubt you will swear on any your children's lives," through

20   the end of that sentence.  That has been redacted.  And

21   before counsel could seek to introduce this before the jury,

22   the Court will consider the testimony of Mr. Fred Larian to

23   that point and whether or not a sufficient foundation has

24   been laid for even getting into this issue, let alone into

25   this document.

EXHIBIT  4 1
PAGE  498

1         So I'm going to reserve ruling on that until

2    Mr. Larian has testified.  But in any event, let's have the

3    line completely redacted, and let's do it in such a way as

4    though it appears that that line was never there.  Let's just

5    have that blanked out, because there's certainly no point in

6    getting into that.

7         So that's those three documents.

8         I do have rulings to make on all of transcripts,

9    but since we're not going to be doing that until Tuesday at

10   the earliest, I'll probably reserve those in the end of the

11   day.

12        I was just handed a note that we have all jurors

13   present.  It's two minutes before nine o'clock.  Let's have

14   Mr. Bryant up on the stand and ready to go at nine o'clock

15   unless there are other issues.

16        MR. PRICE:  There's an issue we need to take up at

17   sidebar.  It concerns a transcript.

18        THE COURT:  Very well.

19        (SIDEBAR CONFERENCE HELD.)

20        MR. PRICE:  Your Honor, you mentioned that if we

21   were going to use the in camera hearing transcript to

22   impeach, that we should request a sidebar conference first.

23        THE COURT:  What?

24        MR. PRICE:  From Mr. Bryant on the Evidence

25   Eliminator.

EXHIBIT __41__
PAGE __499__

3319

1

2

3

4

5

6

7                          **C E R T I F I C A T E**

8

9

10          I hereby certify that pursuant to Title 28,

11   Section 753 United States Code, the foregoing is a true and

12   correct transcript of the stenographically reported

13   proceedings in the above matter.

14          Certified on June 20, 2008.

15

16

17          MARK SCHWEITZER, CSR, RPR, CRR
            Official Court Reporter
18          License No. 10514

19

20

21

22

23

24

25

EXHIBIT 41
PAGE 500

# EXHIBIT 42

4351

1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                     ---

4     **HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING**

5                     ---

6  MATTEL, INC.,                 :   PAGES 4351 - 4517
                                 :
7           PLAINTIFF,           :
                                 :
8     VS.                        :   NO. ED CV04-09049-SGL
                                 :   [CONSOLIDATED WITH
9  MGA ENTERTAINMENT, INC.,      :   CV04-9059 & CV05-2727]
   ET AL.,                       :
10                               :
           DEFENDANTS.           :
11  _____:

12

13

14

15         REPORTER'S TRANSCRIPT OF PROCEEDINGS

16             RIVERSIDE, CALIFORNIA

17           THURSDAY, JULY 3, 2008

18            JURY TRIAL - DAY 20

19             AFTERNOON SESSION

20

21

22                          MARK SCHWEITZER, CSR, RPR, CRR
                            OFFICIAL COURT REPORTER
23                          UNITED STATES DISTRICT COURT
                            181-H ROYBAL FEDERAL BUILDING
24                          255 EAST TEMPLE STREET
                            LOS ANGELES, CALIFORNIA 90012
25                          (213) 663-3494

CERTIFIED COPY

EXHIBIT 42
PAGE 501

4352

1 | **Appearances of Counsel:**

2

3 | On Behalf of Mattel:

4 | Quinn, Emmanuel, Urquhart, Oliver & Hedges, LLP
     By John B. Quinn, Esq.
5 | B. Dylan Proctor, Esq.
     Michael T. Zeller, Esq.
6 | Harry Olivar, Esq.
     John Corey, Esq.
7 | Diane Hutnyan, Esq.
     William Price, Esq.
8 | 855 South Figueroa Street
     10th Floor
9 | Los Angeles, CA 90017
     (213) 624-7707

10

11

12 | On Behalf of MGA Entertainment:

13 | Skadden, Arps, Slate, Meagher & Flom LLP
     By Thomas J. Nolan, Esq.
14 | Carl Alan Roth, Esq.
     Jason Russell, Esq.
15 | Lauren Aguiar, Esq.
     David Hansen, Esq.
16 | Matthew Sloan, Esq.
     Robert Herrington, Esq.
17 | 300 South Grand Avenue
     Los Angeles, CA 90071-3144
18 | (213) 687-5000

19

20

21

22

23

24

25

EXHIBIT 42
PAGE 502

4353

1                                I N D E X

2

3    MARGARET ANN LEAHY, PREVIOUSLY SWORN.................. 4361

4    CROSS-EXAMINATION (CONTINUED) BY MR. PRICE:........... 4361
     REDIRECT EXAMINATION BY MR. NOLAN:  ................... 4369
5    RECROSS-EXAMINATION BY MR. PRICE:..................... 4381

6    TIM KILPIN, SWORN.................................... 4392

7    DIRECT EXAMINATION BY MR. NOLAN:  ..................... 4393

8    RICHARD DE ANDA, SWORN............................... 4407

9    DIRECT EXAMINATION BY MR. NOLAN:  ..................... 4408

10   CROSS-EXAMINATION BY MR. ZELLER:...................... 4421

11   DEPOSITION EXCERPTS OF
     RICHARD IRMEN WERE PLAYED............................ 4447

12

13                            E X H I B I T S

14

15   (Exhibit 1132 received.)............................ 4361

16   (Exhibits 1127-A and 1127-B received.).............. 4376

17   (Exhibit 12995 received.)........................... 4381

18

19

20

21

22

23

24

25



EXHIBIT 42
PAGE 503

```
1   A.   Yes.

2   Q.   And was this prototype a rotocast?

3   A.   Well, body was injection molded.

4   Q.   And I think you told me that you left Mattel in about

5   February of 1998?

6   A.   I believe so.

7   Q.   And what is it that occasioned your departure from

8   Mattel?

9   A.   I was laid off.

10  Q.   During the time you were working there at Mattel, did

11  you have any complaints or issues with your work there?

12  A.   No, not really.

13  Q.   Well, you say not really to a lawyer, it -- it means

14  I'll have to follow up.

15           I mean did you have any problems, or did you -- I

16  mean what was your general -- your general feeling about your

17  employment there at Mattel?

18  A.   I enjoyed working there, but I can't say there was never

19  a problem because you always have problems in any of your

20  work spaces or, you know, anybody you work for, not

21  everything is peachy all the time.

22  Q.   I know you mentioned that you left Mattel in February of

23  1998.  Was Carter still actually working there in the design

24  center as of that time?

25  A.   No.
```

EXHIBIT 42
PAGE 504

4452

| | | |
|---|---|---|
| 1 | Q. | At some point he moved to Missouri? |
| 2 | A. | Yes. |
| 3 | Q. | When did he do that? |
| 4 | A. | He moved in -- I believe it was December of '97. |
| 5 | Q. | Is that when he moved to that house in Kimberling, |

6 Missouri, where his parents were living?

| 7 | A. | I believe so. |
|---|---|---|
| 8 | Q. | That's your understanding? |
| 9 | A. | Yes. |
| 10 | Q. | Were you -- were you with Carter when he moved back from |

11 Kimberling City to California?  In other words, did you

12 travel with him on that occasion?

| 13 | A. | No, I did not. |
|---|---|---|
| 14 | Q. | So you were in California, and then Carter moved from |

15 Kimberling City back to California, and you were already

16 there?

| 17 | A. | Yes. |
|---|---|---|
| 18 | Q. | And where were you living at that time, then? |
| 19 | A. | I was living in the Palmdale-Lancaster area of |

20 California.

| 21 | Q. | And then when Carter moved back, was he living with you |
|---|---|---|

22 again?

| 23 | A. | No.  He was living in the house in Gardena with Elise |
|---|---|---|

24 Cloonan, the house we eventually bought.

| 25 | Q. | I see.  So when Carter moved back from Kimberling City |
|---|---|---|

EXHIBIT 42
PAGE 505

1  to California in late 1998, he moved into the same house that

2  Elise was living in?

3  A.   Yes.

4  Q.   Elise Cloonan.

5  A.   Yes.

6  Q.   And that was the house on 160th Street in Gardena?

7  A.   Yes.

8  Q.   And then at some point later, you moved from the place

9  in Lancaster to the house in Gardena?

10  A.   Yes.

11  Q.   And can you recall when you first saw him after he had

12  moved back from Kimberling City to California?

13  A.   January 1st or 2nd, but I believe it was the 1st.

14  Q.   That was January 1st or 2nd, 1999?

15  A.   Yes.

16  Q.   And where did you see him?

17  A.   I was house sitting for a friend in Lancaster, and when

18  he drove in from Missouri, he stayed a couple days with me.

19  Q.   Oh, I see.  Before he actually moved into the Gardena

20  place?

21  A.   Yes.

22  Q.   And you said you were house sitting for a friend in

23  Lancaster.  So was that the house you'd been staying in, or

24  was that a separate house?

25  A.   Separate house.

EXHIBIT _____
PAGE __506__

4454

1   Q.   So you were living in Lancaster at that time, and during

2   that January 1st or 2nd, 1999, time period, you were house

3   sitting and, therefore, in another house in Lancaster?

4   A.   Yes.

5   Q.   And that's where Carter came and stayed with you once he

6   came back from Kimberling City?

7   A.   Yes.  He stayed like overnight with me and then went to

8   L.A. sometime before he started work.

9   Q.   Did there come a time when you became involved in a

10  request by Veronica Marlow or Peter Marlow that she receive

11  some royalties in connection with Bratz?

12  A.   Yes.

13  Q.   What was the first occasion in which you can recall that

14  occurring?

15  A.   It was -- Carter had told me of an agreement that he had

16  made with Veronica concerning the royalties.

17  Q.   And so you initially learned of it from Carter?

18  A.   Yes.

19  Q.   And what did he say about that agreement?

20  A.   He said that he had verbally promised Veronica a

21  percentage of his royalties for a thank you for the

22  introduction and gratitude.

23  Q.   Did he say anything else about it?

24  A.   Not that I recall.

25  Q.   Did he say what the percentage was?

EXHIBIT 42
PAGE 507

4517

```
1    Mattel is at 46 hours and 45 minutes.

2              MR. QUINN:   Thank you, your Honor.

3              THE COURT:   Approximately.

4              MR. NOLAN:   Your Honor, have a great weekend.

5              THE COURT:   You too.   Take care.

6

7              (Proceedings concluded at 6:10 P.M.)

8

9                   C E R T I F I C A T E

10

11

12         I hereby certify that pursuant to Title 28,

13   Section 753 United States Code, the foregoing is a true and

14   correct transcript of the stenographically reported

15   proceedings in the above matter.

16         Certified on July 3, 2008.

17

18

19         MARK SCHWEITZER, CSR, RPR, CRR
           Official Court Reporter
20         License No. 10514

21

22

23

24

25
```

EXHIBIT  42
PAGE  508

# EXHIBIT 43

1   DALE M. CENDALI (admitted pro hac vice)
    DIANA M. TORRES (S.B. #162284)
2   MARC F. FEINSTEIN (S.B. #158901)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, California 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5   Email: dtorres@omm.com

6   PATRICIA GLASER (S.B. # 55668)
    CHRISTENSEN, GLASER, FINK,
7   JACOBS, WEIL & SHAPIRO LLP
    10250 Constellation Boulevard, 19th Floor
8   Los Angeles, California 90067
    Telephone: (310) 553-3000
9   Facsimile: (310) 556-2920
    Email: pglaser@chrisglase.com

10
    Attorneys for Counter-defendants MGA
11  Entertainment, Inc., Isaac Larian, MGA
    Entertainment (HK) Limited, and MGAE de
12  Mexico S.R.L. de C.V.

13

14

15              UNITED STATES DISTRICT COURT

16            CENTRAL DISTRICT OF CALIFORNIA

17                    EASTERN DIVISION

18  CARTER BRYANT, an individual,        Case No. CV 05-2727 SGL (RNBx)
                                         (Consolidated with CV 04-09049 and
19              Plaintiff,               CV 04-9059)

20       v.                             AMENDED ANSWER AND
                                        AFFIRMATIVE DEFENSES OF
21  MATTEL, INC., a Delaware Corporation, MGA ENTERTAINMENT INC.,
                                         MGA ENTERTAINMENT (HK)
22              Defendant               LIMITED, AND MGAE DE
                                        MEXICO S.R.L. DE C.V. TO
23                                      MATTEL, INC.'S SECOND
                                        AMENDED ANSWER AND
24                                      COUNTERCLAIMS

25
    CONSOLIDATED WITH               Judge:    Hon. Stephen G. Larson
26                                  Courtroom: 1
    MATTEL, INC. v. BRYANT and
27  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
28

EXHIBIT __43__
PAGE __509__

1    Counter-defendants MGA Entertainment, Inc. ("MGA"), MGA

2  Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively

3  the "MGA Defendants") hereby answer, for themselves alone, the Second

4  Amended Answer and Counterclaim of Counter-claimant Mattel Inc., as follows:

5    As a preliminary matter, Mattel's use of headings throughout its

6  counterclaims is improper, and therefore no response to Mattel's headings is

7  required. If any response is required, MGA Defendants deny all allegations

8  contained in Mattel's headings.

9                        **RESPONSES**

10        1:    MGA Defendants deny the allegations set forth in paragraph 1.

11        2.    MGA Defendants deny the allegations set forth in paragraph 2.

12        3.    MGA Defendants admit that MGA decided to expand into

13  Mexico in or about 2004, and deny the remaining allegations set forth in paragraph

14  3.

15        4.    MGA Defendants deny the allegations set forth in paragraph 4.

16        5.    MGA Defendants deny the allegations set forth in paragraph 5.

17        6.    MGA Defendants admit that the Court has federal question

18  jurisdiction over this action pursuant to 28 U.S.C. § 1331, deny that 17 U.S.C. §§

19  101 and 18 U.S.C. § 1964(c) apply to the extraterritorial conduct alleged in the

20  Counterclaims, and deny that Mattel is entitled to any relief on its Counterclaims.

21        7.    MGA Defendants admit that venue is proper in this District for

22  Mattel's claims based on conduct alleged to have occurred within this District and

23  deny that venue is proper in this District for acts alleged to have occurred in

24  Mexico, Canada, Hong Kong, or other places outside of this District.

25        8.    MGA Defendants admit the allegations set forth in paragraph 8.

26        9.    MGA Defendants admit the allegations set forth in the first and

27  second sentences of paragraph 9, and deny the remaining allegations set forth in

28  paragraph 9.

LA2:841935.2

- 2 -

EXHIBIT __43__

PAGE __510__

1 developing their business and invest tens of millions of dollars developing the Bratz

2 products and building the Bratz brand.

### FOURTH AFFIRMATIVE DEFENSE

#### (Statute of Limitations)

5 Mattel's counterclaims are barred by the applicable statutes of limitations,

6 including but not limited to, 18 U.S.C. § 1961 *et seq.*, 17 U.S.C. § 507(b), and Code

7 of Civil Procedure §§ 337, 339, 343 and 338(c).

### FIFTH AFFIRMATIVE DEFENSE

#### (*Bona Fide* Purchaser for Value)

10 Mattel cannot maintain its counterclaims against MGA Defendants because

11 MGA Defendants paid valuable consideration for Bryant's assignment of his rights

12 in the original Bratz drawings to MGA Defendants, and MGA Defendants acted

13 with a good faith belief that Bryant owned the rights to his original Bratz drawings

14 and that his assignment of such rights to MGA Defendants was valid and

15 permissible.

### SIXTH AFFIRMATIVE DEFENSE

#### (17 U.S.C. § 205(d))

18 Mattel cannot maintain its counterclaims against MGA Defendants because,

19 among other things, MGA Defendants acted with a good faith belief that Bryant

20 owned the rights to his original Bratz drawings and that his assignment of such

21 rights to MGA Defendants was valid and permissible.

### SEVENTH AFFIRMATIVE DEFENSE

#### (Information Readily Ascertainable)

24 MGA Defendants cannot be liable, either on their own account or by

25 association with other defendants, for misappropriation of information that was

26 readily ascertainable by proper means at the time of the alleged acquisition or use.

27 Such information includes, but is not limited to, the identity of suppliers,

28

LA2:841935.2

- 22 -

EXHIBIT 43
PAGE 511

1  aspect of a Mattel copyrighted work, such use would be *de minimus* and non-
2  infringing.

### SIXTEENTH AFFIRMATIVE DEFENSE

#### (Joint Authorship)

5  MGA Defendants deny that Mattel owns any copyright interest in the alleged
6  works, but even if it did, any liability would be eliminated or greatly diminished by
7  the doctrine of joint authorship.

### SEVENTEENTH AFFIRMATIVE DEFENSE

#### (Competition Privilege/Justification)

10  Mattel's counterclaims are barred in whole or in part on the grounds that the
11  acts of the MGA Defendants were lawful competition or justified.

### EIGHTEENTH AFFIRMATIVE DEFENSE

#### (Good Faith)

14  Mattel's counterclaims are barred in whole or in part because the MGA
15  Defendants acted in good faith.

### NINETEENTH AFFIRMATIVE DEFENSE

#### (Lack of Authority)

18  Mattel's counterclaims are barred in whole or in part on the grounds that to
19  the extent any person committed an unlawful or tortious act, the person lacked
20  authority to commit such act on behalf of the MGA Defendants.

### TWENTIETH AFFIRMATIVE DEFENSE

#### (Lack of Standing)

23  Mattel's counterclaims are barred in whole or in part by its lack of standing.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

#### (Joinder in Defenses of Co-Defendants)

26  MGA Defendants hereby adopt and incorporate by reference any and all
27  other affirmative defenses that have been or will be asserted by any other defendant
28  (including Bryant) in this litigation to the extent that defendants may share in such

LA2:841935.2

- 25 -

EXHIBIT 43
PAGE 512

1 | affirmative defenses.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Undiscovered Defenses)

MGA Defendants have insufficient knowledge or information upon which to form a belief as to whether additional defenses are available. MGA Defendants reserve the right to assert any further or additional defenses upon receiving more complete information regarding the matters alleged in the Counterclaims, through discovery or otherwise.

WHEREFORE, MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V., pray for relief as follows:

a. that the Counterclaims be dismissed with prejudice;

b. that judgment be entered in favor of counter-defendants and against counterclaimant;

c. that counter-defendants recover their costs and attorneys' fees; and

d. that the Court award such other and further relief as is just and proper.

Dated: September 19, 2007

O'MELVENY & MYERS LLP

_____

Marc F. Feinstein
Attorneys for Counter-defendants
MGA Entertainment, Inc., Isaac Larian,
MGA Entertainment (HK) Limited, and
MGAE de Mexico S.R.L. de C.V.

LA2:841935.2

- 26 -

EXHIBIT 43
PAGE 513

1                         **PROOF OF SERVICE**

2         I, Karen A. Nakatsu, declare:

3         I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles,

4  California  90071-2899.  On September 19, 2007, I served the within document(s):

5         **AMENDED ANSWER AND AFFIRMATIVE DEFENSES OF**
         **MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT**

6         **(HK) LIMITED, AND MGAE DE MEXICO S.R.L. DE C.V.**
         **TO MATTEL, INC.'S SECOND AMENDED ANSWER AND**

7         **COUNTERCLAIMS**

8   ☒     by causing to be personally served the document(s) listed above to the person(s)
         listed below.

9

10        John B. Quinn, Esq.
        Michael T. Zeller, Esq.

11       B. Dylan Proctor, Esq.
        Quinn Emanuel Urquhart Oliver & Hedges, LLP

12       865 South Figueroa Street,
        10th Floor

13       Los Angeles, CA 90017

14   ☒     by placing the document(s) listed above in a sealed envelope with postage thereon
         fully prepaid, in the United States mail at Los Angeles, California addressed as set

15        forth below.  I am readily familiar with the firm's practice of collecting and
        processing correspondence for mailing.  Under that practice it would be deposited

16       with the U.S. Postal Service on that same day with postage thereon fully prepaid in
        the ordinary course of business.  I am aware that on motion of the party served,

17       service is presumed invalid if the postal cancellation date or postage meter date is
        more than one day after date of deposit for mailing in affidavit.

18

19        Patricia Glaser, Esq.            Michael H. Page, Esq.
        Christensen, Glaser, Fink, Jacobs,     Keker & Van Nest LLP

20       Weil & Shapiro, LLP            710 Sansome Street
        10250 Constellation Blvd.,        San Francisco, CA 94111

21       19th Floor
        Los Angeles, CA 90067

22

23        James W. Spertus, Esq.
        Law Offices of James W. Spertus

24       12100 Wilshire Blvd., Suite 620
        Los Angeles, CA 90025

25

26

27

28

EXHIBIT __43__

PAGE __514__

1     I declare under penalty of perjury under the laws of the United States that the
above is true and correct.

2     Executed on September 19, 2007, at Los Angeles, California.

3

4                                          _Karen A. Nakatsu_
5                                          Karen A. Nakatsu

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA2:817525.2

EXHIBIT 43
PAGE 515