1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
2 | johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

EASTERN DIVISION

11

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| v. | |
| MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| Defendant. | **[To Be Heard By Discovery Master Robert C. O'Brien]** |
| AND CONSOLIDATED ACTIONS | [PUBLIC REDACTED] MATTEL, INC.'S EX PARTE APPLICATION FOR AN ORDER FOR PRESERVATION OF DOCUMENTS; AND |
| | MEMORANDUM IN SUPPORT THEREOF |
| | [Declaration of Michael T. Zeller filed concurrently herewith] |
| | Hearing Date: TBA<br>Time: TBA<br>Place: TBA |
| | **Phase 2**<br>Discovery Cut-off: December 11, 2009<br>Pre-trial Conference: March 1, 2010<br>Trial Date: March 23, 2010 |

1 TO ALL PARTIES, LEXINGTON FINANCIAL LIMITED AND ITS
2 COUNSEL OF RECORD:

3 Pursuant to <u>Local Rule</u> 7-19, Mattel, Inc. ("Mattel") hereby applies <u>ex</u>
4 <u>parte</u> for an Order requiring that Lexington Financial Limited ("Lexington")
5 preserve documents responsive to a subpoena issued by Mattel.

6 Lexington is an off-shore company, registered in a jurisdiction that
7 enables Lexington's efforts to keep the identity of its principals secret. New
8 evidence shows that Lexington has funded companies in which MGA
9 Entertainment, Inc. ("MGA") and Isaac Larian have financial interests, which in
10 turn have ostensibly purchased MGA debt in a scheme to hide assets from Mattel
11 and the Court. Mattel has ample reason to believe that Lexington is in possession of
12 documents relevant to Phase 2 of this case, including issues relating to MGA's net
13 worth, the legitimacy or illegitimacy of MGA's claimed debt obligations and
14 MGA's disposition of proceeds and property in which Mattel has an interest, but to
15 date it has evaded service of Mattel's subpoena and thus avoided producing any of
16 them.

17 Mattel also has reason to believe that the relevant documents in
18 Lexington's possession are in danger of being destroyed, secreted, or spoliated.
19 Mattel has sought Lexington's confirmation that it would preserve documents
20 responsive to its subpoena but each time Lexington has refused. Recently, the
21 Discovery Master ordered other persons and entities involved in the same
22 transactions as Lexington to preserve evidence after they had refused to do so.
23 Some entities not covered by that Order that had initially refused Mattel's
24 preservation requests agreed to them once that Order was issued. Lexington
25 remains recalcitrant. Notwithstanding the Discovery Master's Order, Lexington
26 refuses to agree that evidence in its possession will not be spoliated or destroyed
27 until the discovery matters involving it are fully resolved.

28

1           To ensure that Lexington preserves relevant evidence, the Discovery

2 Master should issue an Order requiring that Lexington, as well as its officers,

3 directors, employees, agents, representatives and counsel, preserve documents and

4 information responsive to Mattel's subpoenas.  Good cause exists to seek this relief

5 on an ex parte basis because, absent a preservation order, relevant evidence could be

6 spoliated before a regularly noticed motion could be heard.

7           Pursuant to Local Rule 7-19, on March 23, 2009, and then, after

8 issuance of the Discovery Master's preservation Order, on March 27, 2009, Mattel's

9 counsel provided notice of this Application and the relief being sought to counsel

10 for   Lexington, Todd E. Gordinier, Esq., Bingham McCutchen LLP, 600 Anton

11 Boulevard, 18th Floor Costa Mesa, CA 92626-1924, Facsimile: (714) 830-0717, and

12 to counsel for the MGA Parties, Amman Khan, Esq., Glaser, Weil, Fink, Jacobs &

13 Shapiro, LLP, 10250 Constellation Boulevard, 19th Floor, Los Angeles, CA 90067

14 Facsimile: (310) 556-2920, Jason Russell, Esq., Skadden, Arps, Slate, Meagher &

15 Flom LLP, 300 South Grand Avenue, Suite 3400, Los Angeles, CA 90071,

16 Facsimile: (213) 687-5600, and Russell J. Frackman, Esq., Mitchell, Silberberg &

17 Knupp, LLP, 11377 West Olympic Boulevard, Los Angeles, CA 90064, Facsimile:

18 (310) 312-3100.[1]  Counsel for Lexington stated that it would oppose this motion.[2]

19

20

21

22

23

---

24   [1]  Declaration of Michael T. Zeller, dated April 2, 2009 and filed concurrently herewith

25 ("Zeller Dec."), ¶ 2, March 23, 2009 letter from Jon Corey to Peter M. Villar, Zeller Dec., Exh. 1; March 27, 2009 letter from Michael Zeller to Todd E. Gordinier, Zeller Dec., Exh. 2.

26   [2]  See March 24, 2009 letter from Peter Villar to Jon Corey, Zeller Dec. Exh. 3; March

27 30, 2009 letter from Todd E. Gordinier to Michael Zeller, Zeller Dec., Exh. 4.  Counsel for the MGA parties did not respond.

28

1    This Application is based on this Application, the concurrently filed
2  Declaration of Michael T. Zeller, the records and files of this Court, and all other
3  matters of which the Court may take judicial notice.

4  DATED:  April 2, 2009              QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
5

6                                       By /s/ Michael T. Zeller
7                                          Michael T. Zeller
                                           Attorneys for Mattel, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................... 1

BACKGROUND .................................................................................... 2

ARGUMENT ......................................................................................... 7

I.  LEXINGTON SHOULD BE ORDERED TO PRESERVE EVIDENCE ........ 7

    A.  There Is A High Level Of Concern That Lexington Will Not Preserve Documents In The Absence Of An Order ................................. 7

    B.  The Loss Of The Documents Held By Lexington Would Cause Mattel Irreparable Harm ........................................................................ 10

    C.  Lexington Is Capable Of Maintaining The Evidence ............................ 11

II.  LEXINGTON'S CLAIMS THAT THIS COURT IS POWERLESS TO PREVENT IT FROM DESTROYING EVIDENCE IS WITHOUT MERIT ........................................................................ 11

    A.  Lexington Has Purposefully Availed Itself Of This Forum By Funding And Touting Ownership Interests In Companies Doing Business In California And In California Companies. ........................... 13

    B.  Lexington Has Purposefully Availed Itself Of This Forum By Purposefully Directing Its Activities Toward California ....................... 14

    C.  The Discovery Arises Directly Out Of Lexington's Forum Related Conduct .................................................................................. 16

    D.  Exercising Jurisdiction Over Lexington Would Not Be Unreasonable ....................................................................................... 17

    E.  Lexington Has Consented To Jurisdiction By Appearing Before The Court And Itself Threatens Judicial Action Against Mattel .......... 18

    F.  In The Alternative, Mattel Is Entitled To Jurisdictional Discovery ............................................................................................ 18

CONCLUSION ..................................................................................... 19

# TABLE OF AUTHORITIES

Page

## Cases

Bancroft & Masters, Inc. v. August Nat'l, Inc,
223 F.3d 1082 (9th Cir. 2000) ............................................................. 13, 15, 16, 17

Burger King Corp. v. Rudzewicz,
471 U.S. 462 (1985) .................................................................................. 14, 17

C.f. Data Disc., Inc. v. Systems Technology Assoc., Inc.,
557 F.2d 1280 (9th Cir. 1977) ................................................................................ 12

Calder v. Jones,
465 U.S. 783 (1984) .......................................................................... 12, 15, 16

Capricorn Power Co. v. Siemens Westinghouse Power Corp.,
220 F.R.D. 429 (W.D. Pa. 2004) .................................................................................. 7

Columbia Pictures Industries v. Bunnell, CV 06-1093FMCJCX,
2007 WL 2080419 (C.D. Cal. May 29, 2007) ............................................................. 7

Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances,
723 F.2d 357 (3d Cir. 1983) .......................................................................... 18

Harris Rutsky & Co. Insur. Serv., Inc. v. Bell & Clements Ltd.,
328 F.3d 1122 (9th Cir. 2003) ...................................................................... 13, 15

Jackson v. Hayakawa,
682 F.2d 1344 (9th Cir. 1982) ................................................................................ 18

Larsen v. Lauriel Investments, Inc.,
161 F. Supp. 2d 1029 (D. Ariz. 2001) .................................................................. 12

Laub v. U.S. Dept. of Interior,
342 F.3d 1080 (9th Cir. 2003) ............................................................................ 18

Metroplitan Life Insurance Co. v. Neaves,
912 F.2d 1062 (9th Cir. 1990) ............................................................................ 16

Panavision Int'l, L.P. v. Toeppen,
141 F.3d 1316 (9th Cir. 1998) .................................................................... 13, 15, 16

Schnabel v. Lui,
302 F.3d 1023 (9th Cir. 2002) ............................................................................ 18

Sher v. Johnson,
911 F.2d 1357 (9th Cir. 199) ............................................................................ 14

MATTEL'S EX PARTE APPLICATION FOR AN ORDER REQUIRING PRESERVATION OF DOCUMENTS

Sinatra v. National Enquirer, Inc.,
    854 F.2d 1191 (9th Cir. 1988) ........................................................................ 12, 15

U.S. v. Comprehensive Drug Testing, Inc.,
    513 F.3d 1085 (9th Cir. 2008) ............................................................................... 7

Yahoo! Inc. v. LawLigue Contre Le Racisme Et L'Antisemitisme,
    433 F.3d 1199 (9th Cir. 2006) ............................................................................. 16

Ziegler v. Indian River County,
    64 F.3d 470 (9th Cir. 1995) ................................................................................. 16

**Statutes**

Cal. Code Civ. Proc.
    § 410.10 ............................................................................................................... 12

Corporations Code
    § 2100 .................................................................................................................. 12

**Miscellaneous**

Federal Judicial Center, Managing Discovery of Electronic Information:
    A Pocket Guide for Judges 17 (eds. Barbara Rothstein, Ronald J.
    Hedges & Elizabeth C. Wiggins) (2007)) ............................................................ 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Lexington Financial Limited undoubtedly possesses documents and information relevant to this litigation, including Phase 2 damages and receivership issues. It has refused to provide any of those documents or even to accept service of Mattel's subpoena. Mattel may or may not eventually obtain full relief requiring production of these documents (we believe discoverability is clear), but in either case Mattel's efforts to obtain these documents should not be rendered illusory by the destruction of the evidence before an order compelling production can issue.

Potentially relevant discovery should be preserved. This should not be a controversial proposition, but to Lexington it appears to be. When Mattel first asked, Lexington would not agree to preserve documents responsive to Mattel's subpoenas. That was troubling. That Lexington has now persisted in that refusal even after the Discovery Master specifically ordered entities related to Lexington (and represented by the same counsel) to preserve documents responsive to Mattel's subpoenas is even more troubling. And that Lexington's refusals directly contradict statements it made to the Discovery Master is more troubling still.

Based on documents recently produced by Wachovia, it appears that Isaac Larian had a financial interest in the ostensible purchase of roughly $300 million of MGA debt from Wachovia by Omni 808, making himself a purported MGA creditor with alleged priority over Mattel. Lexington has purportedly provided funding to Vision Capital, a Larian shell company, which in turn provided funds to Omni 808 to purchase that MGA debt. Thus, Lexington is a participant in efforts by MGA and Larian to convert MGA equity into debt and thereby mask the true state of MGA's and Larian's finances. That directly contradicts statements that counsel for Lexington has made to the Discovery Master and to the Court.

Mattel believes it is entitled to, and will eventually obtain, orders compelling full discovery from Lexington. Lexington should not be allowed to

1 | destroy, secret or spoliate the evidence that Mattel is pursuing before orders can
2 | issue.    Because Lexington refuses to agree with this unremarkable proposition,
3 | Mattel respectfully requests that the Discovery Master issue an order requiring
4 | Lexington to preserve documents sought by Mattel's subpoenas until further order of
5 | the Court.

### Background

7 |    Lexington is involved in a chain of transactions that, when closely
8 | examined, indicate that MGA and Larian may be hiding assets from Mattel and the
9 | Court.  New evidence from Wachovia reveals that counsel for Lexington has not
10 | been forthcoming about these transactions or the true identities of the parties
11 | involved.    Lexington promised the Discovery Master that it would preserve
12 | documents that are relevant to these issues, but has since refused to do so.

13 |    *Lexington's Involvement in Questionable Transactions*.  Lexington is
14 | incorporated in Nevis, a country known for its corporate and banking secrecy laws.[3]
15 | In August, 2008, Lexington recorded a UCC Financing Statement, claiming to have
16 | taken a security interest in an entity called Vision Capital.[4]  The security interest in
17 | Vision Capital is, in effect, a security interest in another entity called Omni 808: the
18 | UCC statement endows Lexington with effectively all of Vision Capital's interest in
19 | Omni 808.[5]  Lexington filed its claimed security interest in Vision Capital and Omni
20 | 808 on August 29, 2008—three days after the jury's damages verdict.[6]

---

[3]  See UCC Financing Statement dated August 29, 2008, Zeller Dec., Exh. 5 (with Lexington Capital taking a security interest in Vision Capital's ownership interest in Omni 808 Investors LLC); "Offshore-Based Limited Liability Company (LLC)" at www.offshore-protection.com/nevisLLC.html, Zeller Dec., Exh. 6.

[4]  Vision Capital, it has recently been learned, has a principal named Leon Neman, who is also Isaac Larian's brother-in-law.  See Motion to Quash Subpoenas Issued by Mattel to Leon Neman, Fred Mashian and Neil Kadisha, dated March 12, 2009, at 2, Zeller Dec., Exh. 15.

[5]  See UCC Financing Statement dated August 29, 2008, Zeller Dec., Exh. 5.

[6]  Id.

1    Shortly afterwards, Omni 808 filed a UCC statement alleging that it
2 had purchased a $300 million debt from Wachovia.[7] This was debt that MGA had
3 owed to Wachovia, and now purportedly owed to Omni 808. MGA told the Court
4 that it faced bankruptcy due in part to the Wachovia debt.[8] But MGA never filed for
5 bankruptcy. The public records do not disclose who provided Lexington with the
6 funds that it ostensibly provided, through Vision Capital, to Omni 808 for the
7 Wachovia/MGA debt purchase.

8    Counsel for Lexington has repeatedly assured the Court and Discovery
9 Master that Isaac Larian did not provide any funds used in this debt purchase:

10    THE COURT: You're representing to the Court, though,

11    that this was not MGA's money; that this was—from wherever

12    it came from, it came from someplace else.

13    MR. GORDINIER: Your Honor, two things. I've never

14    met Mr. Larian, and I know less about MGA than almost everybody

15    else.

16    THE COURT: I'm not asking about what you know from

17    MGA but of what you know from your client.

18    MR. GORDINIER: What I know from my client is, he put

19    in many millions of dollars. He had a couple of investors with

20    him to put in many millions of dollars.

21    THE COURT: Those investors and that money did not

22    come from MGA?

23    MR. GORDINIER: That's the best of my understanding,

24

25

26    [7] See UCC Financing Statement Amendment dated September 9, 2008, amending prior UCC Financing Statement to add Omni 808 Investors, LLC as a creditor to MGA with co-priority with Wachovia Bank, N.A., Zeller Dec., Exh. 35.

27    [8] See Declaration of Brian Wing in Support of the MGA Parties' Request for a Stay, dated December 11, 2008 at ¶ 13, Zeller Dec., Exh. 8.

28

1    Your Honor. That's true.[9]

2    MR. GORDINIER: What documents do we have that show that either

3    Mr. Larian or MGA paid money into this to purchase this debt? I can

4    tell you there are none. This is a ready, fire, aim situation. The

5    allegations that were made and were made publicly are unconscionable

6    and can't be undone.[10]

7    However, Mattel recently obtained documents, produced by Wachovia,

8    that contradict these representations. The documents include, among others:

9         •    A July 29, 2008 offer letter relating to the ostensible acquisition

10   of MGA debt from Wachovia which expressly stated that ███████████

11   ████████████████████████████████████.[11]

12        •    A September 3, 2008 Omni 808 agreement reflecting that Omni

13   808's purported loans to MGA are funded by a shell entity that is ████████

14   ███████████████████████[12]

15        •    A September 3, 2008 Senior Promissory Note, to which Omni

16   808 is a party, which specifically identifies and treats Omni 808 as an affiliate

17   of MGA.[13]

18

19

---

20   [9]  See February 11, 2009 Hearing Transcript, at 71:16-72:5, Zeller Dec., Exh. 9; March

21   4, 2009 Discovery Master Hearing Transcript at 51:3-8, Zeller Dec., Exh. 10.

22   [10]  March 4, 2009 Discovery Master Hearing Transcript at 51:3-8, Zeller Dec., Exh. 10.

     [11]  See OmniNet Capital, LLC's offer letter to Wachovia Bank, dated July 29, 2008,

23   Zeller Dec., Exh. 11 (emphasis added).

     [12]  See Phase II Discovery Matter Order No. 3, dated March 10, 2009, at 25, Zeller

24   Dec., Exh. 13. This entity, IGWT 826, was created during the Phase I trial. See Secured

     Delayed Draw Demand Note, Zeller Dec., Exh. 12, at ¶ 3 (███████████████████

25   █████████████████████).

26   [13]  See Senior Promissory Note, dated September 3, 2008, Zeller Dec., Exh. 14 (section

     9(b) states that ███████—i.e., Omni 808—is an ██████ of MGA under the Note).

27   As the Senior Promissory Note recites on its first page, ████████████████████████

28   ██████████████████

1        *Mattel's Attempts To Obtain Discovery From Lexington.*   On January

2   31, 2009, Mattel served a subpoena on Fred Mashian, an attorney who was named in

3   Lexington's August 29, 2008 UCC financing statement as Lexington's contact.[14]

4   Lexington refused to accept service of the subpoena.  Although he is listed on the

5   UCC financing statement, Mashian has declared that he is not an officer, director,

6   partner, member, employee or agent of Lexington and therefore cannot accept

7   service of process on Lexington's behalf.[15]   Based on his representations, the

8   Discovery Master ruled that Lexington was not properly served in a prior Order.[16]

9   Lexington's counsel in this action has also successfully refused to accept service on

10   behalf of Lexington, and service through the Secretary of State of California was

11   likewise held ineffective.[17]   Mattel is pursuing additional methods of service, and is

12   filing a motion for leave to amend its operative pleadings to make clear that the

13   transactions involving Lexington are the subject of Mattel's claims.[18]

14        *Lexington Promises the Court that it will Preserve Documents*.   When

15   confronted with these service issues, the Discovery Master recognized the risk that

16   documents would be destroyed or lost.  When, at argument, Lexington sought an

17   extension of time to respond to a motion, the Discovery Master stated to Lexington's

18   counsel:

19        I will take your representation today that Lexington or affiliated entities

20        are not going to destroy any documents that would have been subject to

21        the subpoena that may or may not have been served so that we can deal

22

23   [14]   See UCC Financing Statement dated August 29, 2008, Zeller Dec., Exh. 5;

24   Lexington Financial subpoena, dated January 30, 2009, Zeller Dec., Exh. 16.

     [15]   See Discovery Master Order No. 8, dated March 16, 2009 at p. 6-7, Zeller Dec.,

25   Exh. 17.

     [16]   Id.

26   [17]   Id. at p. 7-11.

27   [18]   See letter from Michael Zeller to Amman Khan, Esq., dated March 13, 2009, Zeller

28   Dec., Exh. 37.

1      with that issue, but there will be no document destruction of any nature,

2      and I'm going to ask you to convey that to the Lexington people and let

3      them know that you've made that representation on their behalf.[19]

4 Counsel for Lexington responded, "Will do."[20] Afterwards, Mattel wrote to counsel

5 for Lexington to confirm that it was preserving, and would continue to preserve,

6 relevant documents in anticipation of discovery.[21] Lexington refused.[22]

7      On March 27, 2009, the Discovery Master issued an Order requiring

8 other related subpoenaed parties—including Omni 808, OmniNet, and Vision

9 Capital—to preserve relevant documents.[23] The Order did not address whether

10 Lexington—and other entities—should also preserve documents. Accordingly,

11 Mattel wrote to counsel for Lexington and the other entities to inquire whether they

12 would also preserve relevant documents in light of the Discovery Master's Order.[24]

13 Several of those entities have agreed to preserve documents in accordance with the

14 terms of Order No. 10.[25] Lexington, however, continues to refuse.[26]

15

16

17

18

---

[19] See Hearing Transcript dated March 4, 2009, at 97:22-98:5, Zeller Dec., Exh. 10.

[20] Id.

[21] March 13, 2009 letter from Jon Corey to Thomas Nolan, Todd N. Gordinier, et. al, Zeller Dec., Exh. 18.; March 19, 2009 letter from Jon Corey to Thomas Nolan, Todd N. Gordinier et. al,, Zeller Dec., Exh. 19; March 23, 2009 letter from Jon Corey to Peter M. Villar, Zeller Dec., Exh. 1.

[22] See March 24, 2009 letter from Peter Villar sent to Jon Corey, Zeller Dec. Exh. 3.

[23] See Discovery Master Order No. 10, Zeller Dec., Exh. 20.

[24] March 27, 2009 letter from Michael Zeller to Todd E. Gordinier, Zeller Dec., Exh. 2.

[25] See March 30, 2009 email from Ilan Wisnia to Michael T. Zeller, Zeller Dec., Exh. 34; March 30, 2009 letter from Todd N. Gordinier to Michael T. Zeller, Zeller Dec. Exh. 4.

[26] See March 30, 2009 letter from Todd N. Gordinier to Michael T. Zeller, Zeller Dec. Exh. 4. In that letter, counsel went so far as to suggest that the Court lacked the power to issue an Order requiring that Lexington preserve documents. This is a far cry from Lexington's position at the March 4, 2009 hearing.

1

**Argument**

2 I.     LEXINGTON SHOULD BE ORDERED TO PRESERVE EVIDENCE

3          Because Lexington refuses to agree to preserve evidence sought by
4 Mattel, the Discovery Master should issue an order compelling it to do so.  In
5 determining whether to issue an order to preserve, three factors must be balanced:
6 (1) the level of concern the Court has for the continuing existence and maintenance
7 of the integrity of the evidence in the absence of an order directing preservation; (2)
8 any irreparable harm likely to result to the party seeking preservation absent an
9 order directing preservation; and (3) the capability of the party to maintain the
10 evidence sought to be preserved, considering the evidence's form, condition or
11 contents and any physical, spatial or financial burdens a preservation order would
12 create.  Capricorn Power Co. v. Siemens Westinghouse Power Corp., 220 F.R.D.
13 429, 432-33 (W.D. Pa. 2004); see also Columbia Pictures Industries v. Bunnell, CV
14 06-1093FMCJCX, 2007 WL 2080419, *7-8 (C.D. Cal. May 29, 2007) (ordering
15 defendant to preserve data through duration of litigation even if amount of data
16 constituted several gigabytes a day).[27]

17          A.     There Is A High Level Of Concern That Lexington Will Not Preserve
18                 Documents In The Absence Of An Order

19          As to the first factor, Mattel faces a genuine threat that documents will
20 be destroyed or lost.  Perhaps most telling is that Lexington refuses to acknowledge
21 any preservation obligations or provide any assurances that it will not destroy
22 material evidence, even after the Discovery Master issued his Order requiring other
23 third parties involved in the same transactions as Lexington to do so.  Mattel has

24

---

25 [27]   See also U.S. v. Comprehensive Drug Testing, Inc., 513 F.3d 1085, 1091 n. 13 (9th
26 Cir. 2008) ("[J]udges should consider 'preservation order[s]' to 'minimize the risk that
relevant evidence will be deliberately or inadvertently destroyed' and to 'help ensure
information is retrieved when it is most accessible (i.e., before it has been deleted or
27 removed from active online data).'") (citing Federal Judicial Center, Managing Discovery
of Electronic Information: A Pocket Guide for Judges 17 (eds. Barbara Rothstein, Ronald
28 J. Hedges & Elizabeth C. Wiggins) (2007)).

1  asked Lexington to confirm, both before the issuance of that Order and afterwards,
2  that it will preserve documents.  Yet, at least in its correspondence with Mattel,
3  Lexington remains consistent: it refuses.

4              Other pertinent circumstances only serve to amplify the concern.
5  Lexington is an offshore company registered in Nevis, as noted.  The official
6  corporate records for Lexington declare that Nevis does not ask (and will not
7  disclose) any information about Lexington, including even the bare identities of its
8  principals.[28]  Lexington has an address in London at the same location as a company
9  that provides "virtual office" services, i.e., mail drop and answering service.[29]
10  Lexington's counsel has represented that Larian did not provide any funding and
11  had no interest in the Omni/Lexington/Vision Capital/Wachovia transactions, but
12  new evidence produced by Wachovia shows that (1) Omni 808 is an affiliate of
13  MGA; (2) Larian has had an interest in the purported acquisition of $300 million in
14  debt from Wachovia all along; (3) Larian has funded Omni 808 through a Larian
15  shell vehicle, IGWT 826, that he set up during the Phase 1 trial and then used, after
16  the adverse liability verdict against him and MGA, to siphon millions of dollars in
17  Bratz products; and (4) Vision Capital, which purportedly funded Omni 808, is a
18  shell in which Leon Neman, Isaac Larian's brother-in-law, claims to be a principal,

19
20
21

22  [28]  See December 12, 2008 letter from Registrar Clevelan Williams, Zeller Dec., Exh.
23  21.
24  [29]  See UCC Financing Statement dated August 29, 2008, Zeller Dec., Exh. 5;
     December 12, 2008 letter from Registrar Clevelan Williams, Corey Dec., Exh. 21; Office
25  Front "Home" (offering website by Office Front allowing a person to obtain a "virtual office" for as little as £10 a month), Zeller Dec., Exh. 22.

26
27
28

1    and that was also set up mid-trial.[30]  Vision Capital's alleged ownership interests in
2    Omni 808 are, in turn, supposedly owned by Lexington Financial.[31]

3            Given Lexington's role in these financial manipulations, its efforts to
4    stymie discovery, its false denials about Larian's role in the transactions, and its
5    refusals to agree to preserve documents, the threat that Lexington will not preserve
6    evidence is substantial.  And, given Lexington's use of the secrecy haven of Nevis,
7    there is a substantial risk that important documents, if not destroyed outright, may
8    be transported out of jurisdiction absent judicial intervention.

9            Last, the history of evidence spoliation and destruction by MGA,
10   Larian and those affiliated with them also heightens the risk.  A jury has already
11   found that MGA engaged in fraudulent concealment.[32]  This case has seen the
12   "wiping" of Carter Bryant's computer hard drives with the "Evidence Eliminator"
13   program.[33]  It  has seen flat out admissions by Farhad Larian—a former MGA
14   executive who was, at the time, still on MGA's payroll and who is Isaac Larian's
15   brother and Leon Neman's brother-in-law—that he destroyed documents to keep
16   them from Mattel in this litigation.[34]  In violation of Court Orders compelling
17   disclosure, MGA concealed the fact that, through its contractors Veronica and Peter
18   Marlow, it was secretly bribing over a five-year period three Mattel employees to
19
20   ───────────────

21   [30]  See February 11, 2009 Hearing Transcript, at 1978:9-19, Zeller Dec., Exh. 9; March
     4, 2009 Discovery Master Hearing Transcript at 51:3-8, Zeller Dec., Exh. 10; OmniNet
22   Capital, LLC's offer letter to Wachovia Bank, dated July 29, 2008, Zeller Dec., Exh. 11;
     Secured Delayed Draw Demand Note, Zeller Dec., Exh. 12; Senior Promissory Note, dated
23   September 3, 2008, Zeller Dec., Exh. 14.

     [31]  See UCC Financing Statement dated August 29, 2008, Zeller Dec., Exh. 5.
24
     [32]  Phase 1B Verdict Form, at 8, Zeller Dec., Exh. 23; Trial Transcript, August 26,
25   2008, at 8314:23-8315:14, Zeller Dec., Exh. 24.

     [33]  Trial Transcript, June 13, 2008, afternoon session, 2684:4-2685:17, Zeller Dec.,
26   Exh. 25; Trial Transcript, June 10, 2008, afternoon session, 1980:24-1981:8, Zeller Dec.,
     Exh. 26.
27
     [34]  See Farhad Larian Deposition, Vol. 1, dated February 4, 2008, at 56:9-58:11, 65:21-
28   67:2, 170:10-174:5, Zeller Dec. Exh. 27.

1  work on dozens of Bratz products.[35]   In an effort to cover up these unlawful
2  activities, MGA's contractors prepared fabricated payment records that used false
3  social security numbers and false names.[36]   Furthermore, after it was exposed that
4  defendants had engaged in unauthorized destructive handling of Bratz design
5  drawings after this suit was filed, the Court observed: "there are serious questions
6  concerning the handling of these critical documents certainly caus[ing] the Court
7  much concern about whether the truth seeking functions of the adversarial system
8  have been fundamentally compromised in this case."[37]   Lexington's involvement
9  with MGA and Larian eliminates any confidence that evidence will be preserved
10  absent an Order.  An Order to preserve documents should be issued.

11          B.      The Loss Of The Documents Held By Lexington Would Cause Mattel
12                  Irreparable Harm

13          If documents sought from Lexington are not preserved, Mattel and the
14  Court may never fully untangle MGA's and Larian's web of financial transactions,
15  including transactions moving funds and inventory in which Mattel has an interest
16  and which are, at a minimum, centrally relevant to MGA's and Larian's net worth.
17  Mattel risks, ultimately, the loss of assets to which it is entitled.  The jury's Phase 1
18  verdicts and the Court's December 3 injunctive Orders found that Mattel owns Bratz
19  intellectual property that is currently in MGA's possession.  In addition, MGA and
20  Larian are liable to Mattel for monetary damages awarded by the jury.  Larian and

21

22   [35]   See Deposition Transcript of Peter Marlow, Vol. 2, dated June 16, 2008, at 409:19-
23   410:5, 420:14-421:7; Zeller Dec., Exh. 28; Transcript of the Deposition of Veronica
     Marlow, dated December 28, 2007, at 306:14-308:1, 363:15-365:17, Zeller Dec., Exh. 29;
24   Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of
     Documents by MGA; Denying Request for Monetary Sanctions, dated August 13, 2007,
25   Zeller Dec., Exh. 30; Order Granting in Part and Denying in Part Mattel's Motion to
     Enforce Court's Discovery Orders and To Compel; To Overrule Purportedly Improper
26   Instructions; and For Sanctions, dated January 8, 2008, at p. 9, Zeller Dec. Exh. 31.
     [36]   See Trial Transcript for June 24, 2008 at 3672:21-3674:21, Zeller Dec., Exh. 32.
27   [37]   Court's Order Denying Appointment of Expert Witnesses dated August 11, 2007 at
28   11:10-11:13, Zeller Dec., Exh. 33.

1   MGA, through the Omni 808/Lexington/Vision Capital transactions, seek to thwart
2   Mattel's rights and conceal their assets by converting the proceeds of Mattel's
3   intellectual property into MGA debt.   Mattel faces irreparable harm should
4   Lexington be permitted to destroy evidence, which would increase the likelihood
5   that MGA and Larian will succeed in such efforts.

6          C.   Lexington Is Capable Of Maintaining The Evidence

7          Lexington is plainly capable of maintaining its own financial and
8   corporate records.   Lexington is in control of those records, including through
9   counsel. Indeed, Lexington has not even alleged that it lacks the ability to maintain
10  financial documentation or that any undue burden or expense would be incurred as a
11  result of their preservation.  Many of the documents sought by Mattel's subpoena
12  consist of basic financial and corporate information that any reputable, honest
13  company would maintain.

14  II.    LEXINGTON'S CLAIMS THAT THIS COURT IS POWERLESS TO
15         PREVENT IT FROM DESTROYING EVIDENCE IS WITHOUT MERIT

16         While Lexington maintains, and the Discovery Master has held, that
17  Lexington has successfully avoided formal service of Mattel's subpoena thus far, the
18  success or lack of success of Lexington's evasions does not play into this analysis.
19  It remains the case that there are relevant documents in Lexington's possession.
20  While Mattel's ultimate ability to obtain those documents will depend on proper
21  service of a subpoena, the Court's ability to issue a preservation order is not so
22  limited.

23         In a recent letter, counsel for Lexington alleged that Lexington was
24  beyond this Court's personal jurisdiction, citing the Discovery Master's Order No.
25  8.[38]  That Order says nothing about personal jurisdiction.[39]  Order No. 8 held that

26

27     [38]   March 30, 2009 letter from Todd E. Gordinier to Michael Zeller, Zeller Dec., Exh.
28  4.

1   Corporations Code § 2100 did not permit service of Mattel's subpoena through the
2   California Secretary of State,[40] but California's Long Arm Statute and § 2100 are not
3   coterminous.[41]  The Discovery Master held that § 2100 did not apply because Mattel
4   had not demonstrated that Lexington had entered into "repeated and successive
5   transactions" in California.[42]  In contrast, personal jurisdiction is proper over a
6   defendant who is alleged to have engaged in a deliberate act *outside* the forum that
7   is aimed at a plaintiff whom the defendant knows to be a resident of the forum under
8   the "effects doctrine." See Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1995
9   (9th Cir. 1988) (it is proper to exercise personal jurisdiction over "a defendant
10  whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act
11  having effect in the forum state."); Calder v. Jones, 465 U.S. 783, 789 (1984)
12  (personal jurisdiction existed where "intentional, and allegedly tortious, actions were
13  expressly aimed at California" though they occurred elsewhere).

14          At this early stage, in which Mattel merely seeks an Order that
15  documents be preserved, Mattel need only make a prima facie showing of personal
16  jurisdiction.  C.f. Data Disc., Inc. v. Systems Technology Assoc., Inc., 557 F.2d
17  1280, 1285 (9th Cir. 1977).[43]  The burden of showing personal jurisdiction is
18  "minimal." Larsen v. Lauriel Investments, Inc., 161 F. Supp. 2d 1029, 1047-48 (D.

19

20  [39]  See Discovery Master's Order No. 10, dated March 16, 2009, Zeller Dec., Exh. 20.

    [40]  Id.

21  [41]  Cal. Code Civ. Proc. § 410.10 provides that "[a] court of this state may exercise
22  jurisdiction on any basis not inconsistent with the Constitution of this state or of the United
    States."

23  [42]  Id. at 9-10.

24  [43]  In Data Disc., Inc., the Ninth Circuit held that "[i]f the court determines that it will
    receive only affidavits or affidavits plus discovery materials, these very limitations dictate
25  that a plaintiff must make only a prima facie showing of jurisdictional facts through the
    submitted materials in order to avoid a defendant's motion to dismiss." Id. Under this
26  reasoning, where the party disputing personal jurisdiction has refused to produce *any*
    documents, arguably some lower standard would apply. Id. (the plaintiff's "quantum of
27  proof" on personal jurisdiction "may vary, depending upon the nature of the proceeding
    and the type of evidence which the plaintiff is permitted to present."). Regardless, as
28  discussed below, Mattel can amply make a prima facie showing against Lexington.

1  Ariz. 2001). In merely seeking the Court's jurisdiction for issuance of a preservation
2  order, Mattel's uncontested jurisdictional allegations are taken as true and any
3  factual dispute is resolved in Mattel's favor. Bancroft & Masters, Inc. v. August
4  Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000) ("because the prima facie
5  jurisdictional analysis requires us to accept the plaintiff's allegations as true, we
6  must adopt [plaintiff]'s version of events for purposes of this appeal."); Harris
7  Rutsky & Co. Insur. Serv., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th
8  Cir. 2003) (same).

9      Here, specific personal jurisdiction exists because: (1) Lexington both
10 purposefully availed itself of the privilege of conducting activities in the forum and,
11 purposefully directed its activities at the forum state, either of which is sufficient;
12 (2) the discovery at issue relates to Lexington's forum-related activities; and (3) the
13 exercise of jurisdiction is not unreasonable. Panavision Int'l, L.P. v. Toeppen, 141
14 F.3d 1316, 1320 (9th Cir. 1998). Moreover, Lexington consented to this Court's
15 jurisdiction by appearing generally and availing itself of the Court's processes.

16      A.  Lexington Has Purposefully Availed Itself Of This Forum By Funding
17          And Touting Ownership Interests In Companies Doing Business In
18          California And In California Companies.

19      Lexington has filed a UCC statement asserting a security interest in
20 Vision Capital, a company doing business in California.[44] That security interest
21 consists of the entirety of Vision Capital's "right, title and interest in membership
22 interests of Omni 808 Investors, LLC, a California Limited Liability Company."[45]
23 Lexington has obtained this interest through the in-state dealings of its attorney,
24
25
26
───────────────
[44] UCC Financing Statement dated August 29, 2008, Zeller Dec., Exh. 5.
27 [45] Id. Omni 808, as shown above, has engendered transactions whereby Isaac Larian
28 appears to have taken an ownership interest in his own debt.

1   Fred Mashian, who practices in Los Angeles, California.[46]   Thus, Lexington,
2   through an in-state transaction, claims to have obtained ownership interests in two
3   companies doing business in California—one of which is incorporated in
4   California—which have, in turn, engaged in questionable transactions involving
5   MGA and Isaac Larian.

6          A contractual relationship will constitute purposeful availment where
7   "prior negotiations and contemplated future consequences, along with the terms of
8   the contract and the parties' actual course of dealing" demonstrate that the party's
9   contacts are "'substantial' and not merely 'random, fortuitous, or attenuated.'"   Sher
10   v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 199) (quoting Burger King Corp. v.
11   Rudzewicz, 471 U.S. 462, 479 (1985)).   There is nothing random, fortuitous or
12   attenuated about Lexington's forum-related contacts.   Lexington's touted security
13   interest endows Lexington with continuous ongoing alleged rights in both Vision
14   Capital and Omni 808.   It is also clear that Lexington, Vision Capital, and Omni 808
15   contemplated that this arrangement would have substantial future consequences.
16   While the parties' prior negotiations have been kept secret by Lexington and other
17   parties, Fred Mashian, a California attorney, has admitted he took part in them on
18   behalf of Lexington.   Lexington's ownership interests in these companies did not
19   come about by chance or happenstance, and they are more than sufficient to show
20   "purposeful availment" by Lexington.

21          B.   Lexington Has Purposefully Availed Itself Of This Forum By
22                Purposefully Directing Its Activities Toward California

23          As an independent ground, Lexington has purposefully availed itself of
24   the forum under the "effects" doctrine.   Under that doctrine, a party need not have
25   any direct contact with the forum in order for there to have been purposeful

26

___

27   [46]   Id.   See also Declaration of Fred F. Mashian in Opposition to Mattel, Inc.'s Ex Parte
Application for an Order Deeming Lexington Financial Served, dated March 9, 2009,
28   Zeller Dec., Exh. 36.

1 || availment; rather, intentional conduct outside the forum is sufficient if it is "aimed
2 || or has an effect in the forum state." Panavision, 141 F.3d at 1321. Accordingly, the
3 || Court may exercise jurisdiction over any party "whose only 'contact' with the forum
4 || is the 'purposeful direction' of a foreign act having effect in the forum state." Sinatra
5 || v National Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988) (emphasis in
6 || original); see also Harris Rutsky, 328 F.3d at 1130 (physical contact with forum
7 || state not necessary for personal jurisdiction; purposeful direction of foreign act
8 || having effect in forum state is sufficient). Purposeful availment exists under the
9 || effects doctrine where the party: (1) committed an intentional act; (2) expressly
10 || aimed at the forum state; (3) causing harm which the defendant knows is likely to be
11 || suffered in the forum state. Calder, 465 U.S. at 789.

12 ||        Here, there is no question that Lexington committed an intentional act
13 || by purchasing and touting a security interest in Vision Capital—which consisted of
14 || all of Vision Capital's interest in Omni 808. It is also clear that, under Mattel's
15 || allegations, Lexington's intentional act was expressly aimed at the forum state. The
16 || "express aiming" element requires allegations that the party "engaged in wrongful
17 || conduct targeted at a plaintiff whom the defendant knows to be a resident of the
18 || forum." Bancroft, 223 F.3d at 1087. Mattel alleges that Lexington, MGA, Larian,
19 || and other Larian-controlled entities targeted Mattel specifically in order to, among
20 || other things, conceal assets from Mattel and the Court. In its Third Amended
21 || Answer and Counterclaim, Mattel plans to add allegations, among others, that the
22 || financial manipulations and fraudulent conveyances carried out by and through
23 || Omni 808, Neil Kadisha, Leon Neman, Fred Mashian, Lexington, Vision, IGWT,
24 || Schneider and others constitute additional RICO predicate acts.[47]

25
26

27   [47] See letter from Michael Zeller to Amman Khan, Esq., dated March 13, 2009, Zeller
28   Dec., Exh. 37.

1              "Express aiming" exists because Mattel alleges that Lexington, and the

2   other entities, has engaged in a wrongful scheme targeted at Mattel, which is more

3   than sufficient.  See Yahoo! Inc. v. LawLigue Contre Le Racisme Et

4   L'Antisemitisme, 433 F.3d 1199, 1208 (9th Cir. 2006) ("We do not read Calder

5   necessarily to require in purposeful direction cases that all (or even any)

6   jurisdictionally relevant effects have been caused by wrongful acts.").

7              As in Bancroft, Mattel does not allege that Lexington engaged in "mere

8   untargeted negligence," but rather that it engaged in specific acts designed to

9   frustrate Mattel's ability to obtain profits owed to Mattel under this Court's rulings.

10  233 F.3d at 1087 (quoting Calder, 465 U.S. at 789).  Those allegations amply satisfy

11  "purposeful availment" under the effects doctrine.  See Panavision, 141 F.3d at 1321

12  (jurisdiction proper over nonresident defendant who purportedly registered

13  plaintiff's trademarks as domain names as part of alleged scheme to obtain money

14  from plaintiff); Bancroft, 223 F.3d at 1988 (jurisdiction in California proper over

15  Georgia corporation that sent letter to Virginia based on allegations that the letter

16  was intended to interfere with California plaintiff's use of its domain name);

17  Metroplitan Life Insurance Co. v. Neaves, 912 F.2d 1062, 1065 (9th Cir. 1990)

18  (Alabama resident subject to California jurisdiction based on letter to insurance

19  company representing that she was entitled to a payment that actually belonged to a

20  California resident).

21        C.     The Discovery Arises Directly Out Of Lexington's Forum Related

22              Conduct

23             The second element—that the exercise of personal jurisdiction arise out

24  of Lexington's forum-related activities—is also met.  The Ninth Circuit "measure[s]

25  this requirement in terms of 'but for' causation." Bancroft, 223 F.3d at 1088 (citing

26  Ziegler v. Indian River County, 64 F.3d 470, 474 (9th Cir. 1995).  That is, the test is

27  satisfied if "but for," the contacts, there would be no occasion for exercising

28  jurisdiction over the party in question. Ziegler, 64 F.3d at 474.

1    Mattel seeks documents in order to uncover the nature and purpose of
2  Lexington's alleged security interests in Vision Capital and Omni 808 and to
3  discover the details of the fraudulent scheme of which Lexington is a part.
4  Lexington obtained these purported security interests in California entities and did
5  so through forum-related conduct, i.e., the formation of Lexington's security
6  agreement, which was carried out by Fred Mashian in the State of California.
7  Lexington's forum-related conduct includes efforts to injure Mattel in California by
8  enabling Larian to siphon assets out of MGA.   The only reason that Mattel seeks
9  these documents is that Lexington engaged in these transactions; had it not, there
10 would be no occasion for the Court to exercise jurisdiction over Lexington.
11 Accordingly, the exercise of jurisdiction arises out of Lexington's forum-related
12 conduct.   <u>See</u> <u>Bancroft</u>, 223 F.3d at 1088 (finding "but for" test satisfied where
13 contacts constituting purposeful availment gave rise to suit).

14       D.    <u>Exercising Jurisdiction Over Lexington Would Not Be Unreasonable</u>

15       Binding precedent "explicitly places upon the defendant the burden of
16 demonstrating unreasonableness and requires the defendant to put on a 'compelling
17 case.'"   <u>Bancroft</u>, 223 F.3d at 1088 (citing <u>Burger King</u>, 471 U.S. at 476).[48]
18 Lexington has articulated no case for unreasonableness, nor can it.   It is imminently
19 reasonable for a party to a highly questionable transaction with substantial ties to
20 California, such as Lexington, to preserve documents requested to uncover the
21
22

_____

23 [48]   Under <u>Burger King</u>, the party challenging jurisdiction must show unreasonableness
24 under the following factors:   (1) the extent of defendant's purposeful injection into the forum; (2) the burden on defendant in defending in the forum; (3) the extent of the conflict
25 with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of
26 the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.   <u>Id.</u>   The party "must show a due process violation; it must show
27 that jurisdiction in California would make the litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his
28 opponent." <u>Burger King</u>, 471 U.S. at 478 (internal quotations omitted).

1   nature and purpose of that transaction, especially where those documents are
2   potentially relevant to an ongoing litigation.

3       E.      Lexington Has Consented To Jurisdiction By Appearing Before The
4               Court And Itself Threatens Judicial Action Against Mattel

5           As another independent basis for jurisdiction, Lexington has waived
6   any challenge to the Court's exercise of personal jurisdiction. See Schnabel v. Lui,
7   302 F.3d 1023, 1037 (9th Cir. 2002) ("plaintiffs who avail themselves of the district
8   court consent to personal jurisdiction"); Jackson v. Hayakawa, 682 F.2d 1344, 1347
9   (9th Cir. 1982) ("Defendants can waive the defect of lack of personal jurisdiction by
10  appearing generally without first challenging the defect in a preliminary motion.").

11          Here, counsel for Lexington appeared at the March 4, 2009 hearing.
12  During the course of that hearing, counsel did not once object to the exercise of
13  jurisdiction over Lexington, and in fact promised the Discovery Master, on
14  Lexington's behalf, that Lexington would not destroy evidence.[49]   Since that time,
15  Lexington has engaged in motion practice through the Court and has even
16  threatened Mattel that it would apply to the Court for sanctions.[50]   By doing so,
17  Lexington waived any challenge to jurisdiction.  And by promising the Court that it
18  would preserve evidence, Lexington certainly waived any challenge at least insofar
19  as it concerns that very promise.

20      F.      In The Alternative, Mattel Is Entitled To Jurisdictional Discovery

21          In all events, as the Ninth Circuit has held, "discovery should ordinarily
22  be granted where pertinent facts bearing on the question of jurisdiction are
23  controverted or where a more satisfactory showing of the facts is necessary." Laub
24  v. U.S. Dept. of Interior, 342 F.3d 1080, 1093 (9th Cir. 2003); see also Compagnie

25  _____

26  [49] See February 11, 2009 Hearing Transcript, at 1978:9-19, Zeller Dec., Exh. 9; March
    4, 2009 Discovery Master Hearing Transcript at 51:3-8, Zeller Dec., Exh. 10.
27  [50] See March 30, 2009 letter from Todd E. Gordinier to Michael Zeller, Zeller Dec.,
28  Exh. 4.

1  Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357,

2  362 (3d Cir. 1983) ("Where the plaintiff's claim is not clearly frivolous, the district

3  court should ordinarily allow discovery on jurisdiction to aid the plaintiff in

4  discharging [its] burden [to establish personal jurisdiction].").  Mattel merely seeks

5  an Order preserving evidence.  If the Discovery Master deems that it lacks sufficient

6  facts to make a determination on personal jurisdiction, it clearly has the power to

7  issue an Order requiring preservation of evidence that could later be used to

8  demonstrate personal jurisdiction (as well as the power to order such discovery

9  outright).

10  **CONCLUSION**

11  Mattel respectfully requests that Lexington be ordered to preserve

12  documents responsive to Mattel's subpoena and barred from destroying, secreting or

13  spoliating such documents and from moving any responsive documents out of this

14  Court's jurisdiction.

15

16  DATED:  April 2, 2009           QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
17

18           By  /s/ Michael T. Zeller
                  Michael T. Zeller
19                Attorneys for Mattel, Inc.

20

21

22

23

24

25

26

27

28

-19-                    Case No. CV 04-9049 SGL (RNBx)