# EXHIBIT 11

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 12



Corporate Office:

16380 Roscoe Boulevard
Van Nuys, CA 91406 USA
Tel: 818.894.2525
Fax: 818.894.8094

November 14, 2008

Wachovia Bank, National Association
One Wachovia Center
301 South College Street
Charlotte, North Carolina 28288

Attention: Thomas M. Cambern, Managing Director

Dear Mr. Cambern:

Thank you for your letter dated November 12, 2008 (the "Response Letter") in response to our letter dated November 3, 2008 (the "Borrowing Notification") which provided notice, pursuant to Section 8(f) of each Senior Promissory Note dated as of September 3, 2008 (collectively, the "Senior Promissory Notes") issued by MGA Entertainment Inc. ("MGA"). Capitalized terms used but not otherwise defined herein have the meaning assigned to such terms in the Senior Promissory Notes.

Enclosed please find a copy of the Secured Delayed Draw Demand Note. Except for a draw request under the Credit Agreement, no other documents were executed by Omni and MGA in connection with this borrowing, or otherwise, since the closing under the Assignment and Exchange Agreement.

As you will see in the Demand Note, the Demand Note provides that all obligations owed thereunder (including all principal, all accrued and unpaid interest, and all unpaid expenses and other costs chargeable to Borrower) are due and payable upon OMNI's demand. The interest on any unpaid principal amount of the loans due under the Demand Note accrue at a per annum rate of nine percent (9.0%). As in the case of the Subordinated Purchaser Notes, the collateral for the Demand Note is the "Collateral" under the Credit Agreement. Accordingly, such liens are permitted under Section 9(e) of each Senior Promissory Note and Section 5.03(b)(ii) of the Guarantee and Subordination Agreement inasmuch as the Subordinated Purchaser Notes are secured equally and ratably with the Demand Note.

Please contact me if you have any further questions or concerns with regard to this matter.

Regards,

Brian Wing
Executive Vice President

Hong Kong Office:

9th Floor, Tower 6
The Gateway, Harbour City
9 Canton Road, Tsimshatsui
Kowloon, Hong Kong
Tel: 852.2732.9200
Fax: 852.2732.9242
LA1 1285180v.2
The ABC Group

cc:   Isaac Larian, Chief Executive Officer, MGA Entertainment Inc.
Moshe Kupietzky, Esq., Sidley Austin LLP
Neil Kadisha, Chief Executive Officer, [...] Investors LLC
Peter Carson, Esq., Bingham M[...]

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

EXHIBIT  12
PAGE  61

WACHOVIA 002752

**Exhibit A**

**Demand Note**

**[See attached]**

Exhibit B

LAI 1285180v.2

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

EXHIBIT ____ 12

PAGE ____ 62

WACHOVIA 002753

SECURED DELAYED DRAW DEMAND NOTE 

(MGA Entertainment Inc.)

$40,000,000

October 16, 2008
Los Angeles, California

FOR VALUE RECEIVED, the undersigned, MGA ENTERTAINMENT INC., a California corporation (together with its successors, "Borrower"), hereby unconditionally promises to pay to the order of OMNI 808 INVESTORS LLC, a California limited liability company (together with its successors, assigns and transferees, collectively, "OMNI 808"), ON DEMAND, in lawful money of the United States of America, the principal sum of FORTY MILLION DOLLARS ($40,000,000) (the "Maximum Amount") or such lesser amount as may be outstanding on the date of demand therefore representing Draws advanced by OMNI 808 hereunder, together with all accrued but unpaid interest thereon, computed as set forth below, and all unpaid expenses and other costs or disbursements chargeable to, or reimbursable by, Borrower hereunder. Capitalized terms used but not otherwise defined herein shall have the meaning given to them in Section 12 below, and if such terms are not defined therein, then as such terms are defined in the Credit Agreement.

1.     Demand Note.  Notwithstanding anything to the contrary containing in this Note (but subject to Section 2 below), all obligations owing under and as provided by this Note (including the principal amount of all outstanding Draws, all accrued and unpaid interest thereon and all unpaid expenses and other costs or disbursements chargeable to, or reimbursable by, Borrower hereunder shall be immediately due and payable upon OMNI 808's demand (or Agent's demand on behalf of OMNI 808) therefore, and failure to so pay any such amounts on the date demand therefore shall have been made under this Note or otherwise to pay any accrued interest on the date stated to be pursuant to Section 4 below (or within three Business Days thereof) shall be an Event of Default hereunder and under the Credit Agreement.

2.     Acknowledgment and Reaffirmation of Side Letter Agreement.  By accepting this Note, Borrower and OMNI 808 (as the sole Lender under the Credit Agreement as of the date of this Note), and by acknowledging and confirming this Note, the Guarantors party hereto, each acknowledge and reaffirm that Side Letter Agreement dated September 3, 2008 among Borrower, the Guarantors party thereto and OMNI 808 (the "Side Letter Agreement"), including, without limitation, Sections 3 through 7 thereof, including their respective agreements to (and to cause each of their Subsidiaries to) cooperate and work with each other and their respective representatives in good faith to negotiate and enter into such amendments to; and such amendments and restatements of, the existing Loan Documents (including, without limitation, an amended and restated Credit Agreement) and into such additional Loan Documents as will be mutually agreeable in order to restructure (the "Restructuring") the existing credit facilities described in and evidenced by the Loan Documents substantially in accordance with the contemplated material terms set forth in Section 7 of the Side Letter Agreement. In furtherance of the foregoing, the parties hereto acknowledge and agree that it is their respective understanding and intention that in connection with the consummation of the contemplated Restructuring, if this Note has not previously been fully drawn and all obligations outstanding hereunder have not previously been paid in full, in each case as of the date such contemplated amendment and restatement of the Credit Agreement shall have closed and become effective (the "Restatement Effective Date"; it being understood and agreed unless and until the Restatement Effective Date shall have occurred, this Note shall continue to be, and shall be enforceable for all purposes as, a secured demand promissory note), then (a) the undrawn portion of this

A/72666358.4

EXHIBIT _____ 12

PAGE _____ 43

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

WACHOVIA 002754

Note (if any) will be incorporated into such amended and restated Credit Agreement as a delayed-draw facility having substantially the same economic terms as the "Term Loan" (as such term is defined in Section 7(a) of the Side Letter Agreement) except that all interest shall continue to be cash interest and (b) this Note will be amended, restated and replaced by a new secured term note evidencing the obligations then outstanding under this Note and all further obligations as may be incurred or accrued from time to time thereafter under or in respect of such delayed-draw facility or the outstanding obligations hereunder. The parties hereto further agree that as a result of the issuance of this Note and the Draws made available pursuant to Section 3 below by OMNI 808 to Borrower, the size of the "Accordion Facility" contemplated by Section 7(b) of the Side Letter Agreement to be included in an amended and restated Credit Agreement shall be reduced to an aggregate maximum principal amount of $10,000,000.

3.      Delayed-Draw Facility.  OMNI 808 agrees to make loans to Borrower evidenced by this Note (each such loan being a "Draw" hereunder) from time to time prior to October 26, 2011 in an aggregate principal amount not to exceed the Maximum Amount; provided that OMNI 808's obligation to fund each individual Draw hereunder shall be subject to the satisfaction of the following conditions: (i) OMNI 808 shall have received an executed Draw Request completed by Borrower, in the form of Exhibit A attached hereto, at least three Business Days prior to the requested funding date of the Draw (unless, as to any requested Draw, a shorter period is consented to by OMNI 808 in its discretion), (ii) each such Draw shall be in a minimum principal amount of $1,000,000 or increments of $100,000 in excess thereof (unless, as to any requested Draw, a different amount is consented to by OMNI 808 in its discretion), (iii) each of the conditions precedent to such Draw set forth in Section 10 below shall have been satisfied (unless, as to any requested Draw, waived by OMNI 808 in its discretion) and (iv) OMNI 808 shall have previously received the proceeds (in immediately available funds in Dollars) of a loan in the principal amount of, and for the purpose of funding, such requested Draw made by IGWT 826 Investments, LLC, a California limited liability ("IGWT"), to OMNI 808 under that Senior Promissory Note dated October 16, 2008 by and between OMNI 808, as maker, and IGWT.   Subject to the conditions set forth in the preceding sentence, all Draws funded hereunder shall be made available to Borrower on the requested funding date set forth in the applicable Draw Request in immediately available funds in Dollars by wire transfer at the account set forth in the applicable Draw Request (unless, as to any requested Draw, a different funding arrangement is consented to by OMNI 808 in its discretion).   Principal amounts of Draws repaid or prepaid hereunder will not be available for reborrowing under the terms hereof.

4.      Accrual and Imposition of Interest.  Borrower agrees to pay OMNI 808 interest on the unpaid principal amount of each Draw made by OMNI 808 hereunder for the period from and including the date of the making of such Draw up to but excluding the date such Draw shall have been paid in full at the per annum rate equal to nine percent (9.0%).   Interest hereunder will be calculated, accrued, imposed and payable on the basis of a 360-day year for the actual number of days elapsed.

5.      Voluntary Prepayments.  At any time, upon advance written notice to OMNI 808 of at least three Business Days (unless a shorter period is consented to by OMNI 808 in its discretion), Borrower may prepay outstanding Draws hereunder in whole or in part without penalty or premium. Amounts prepaid pursuant to this Section 5 shall be applied to Borrower's obligations hereunder in accordance with Section 7 below.

6.      Mechanics of Payment.  All payments and other amounts due hereunder must be received by OMNI 808 by wire transfer in immediately available funds in Dollars (and without any deduction, offset, netting, counterclaim or reservation of rights) on or before 1:00 p.m. Los Angeles,

2

A/72666358.4

EXHIBIT _____ 12

PAGE _____ 64

WACHOVIA 002755

California time on the due date therefor at the principal office of OMNI 808 located at 9420 Wilshire Boulevard, Suite 400, Beverly Hills, California 90212, Attn: Chief Executive Officer, or at such other location as OMNI 808 at any time or from time to time may designate to Borrower in writing. Any funds received by OMNI 808 after 1:00 p.m. Los Angeles, California time on any day will be deemed to be received on the next succeeding Business Day. Whenever any payment to be made hereunder is due on a day that is not a Business Day, then such payment may be made on the next succeeding Business Day, and such extension of time will be included in the computation of interest due hereunder.

7.     Application of Payments.   All payments and other funds received by OMNI 808 hereunder will be applied in the following order: (a) to any obligations for the payment of expenses and costs due under this Note, then (b) to any accrued and unpaid interest under this Note, then (c) to the principal amount of any outstanding Draws under this Note, and then (d) to any other Obligations of Borrower under the Loan Documents.

8.     Usury Savings Provision.   Notwithstanding any provision of any Loan Document (including this Note), Borrower shall not be required to pay interest at a rate or any fee or charge hereunder in an amount prohibited by applicable law. If interest or any fee or charge payable hereunder on any date would be in a prohibited amount, then such interest, fee or charge will be automatically reduced to the maximum amount that is not prohibited, and any interest, fee or charge for subsequent periods (to the extent not prohibited by applicable law) will be increased accordingly until OMNI 808 receives payment of the full amount of each such reduction. To the extent that any prohibited amount is actually received by OMNI 808, then such amount will be automatically deemed to constitute a repayment of principal indebtedness hereunder.

9.     Covenants.   Without limiting any of the covenants of Borrower set forth in the other Loan Documents, including, without limitation, the Credit Agreement, Borrower hereby covenants and agrees that, until this Note has been paid in full, Borrower will comply with the following covenants:

(a)     Margin Stock Restrictions.   Borrower shall not, and shall not permit any other Loan Party or any other Subsidiary to, use any of the proceeds hereunder, directly or indirectly, to purchase or carry, or to reduce or retire any indebtedness that was originally incurred to purchase or carry, any "Margin Stock" or for any other purpose that might constitute the transactions contemplated hereby as a "Purpose Credit" within the meaning of the Board of Governors of the Federal Reserve Systems' Margin Regulations.

(b)     Further Assurances.   From time to time, Borrower shall, and shall cause any other Loan Party or any other Subsidiary to, execute and deliver (or will cause to be executed and delivered) such supplements, amendments, modifications to and/or replacements of this Note and such further agreements, documents or instruments as may be reasonably required or reasonably requested by OMNI 808 to effectuate the intention of the parties to (or to otherwise facilitate the performance of) this Note.

10.     Closing Conditions.   The obligation of OMNI 808 to fund any Draw requested hereunder by Borrower, as contemplated to be made under this Note, is subject to the satisfaction (or waiver by OMNI 808 in its discretion) of the following conditions:

(a)     Execution of this Note.   Prior to the funding of the initial Draw hereunder, this Note shall have been executed by Borrower, OMNI 808, each Guarantor and Agent as provided on the signature pages hereto.

3

A/72666358.4

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

EXHIBIT _____ 12

PAGE _____ 65

WACHOVIA 002756

(b)   Secretary's Certificate with Attachments.  Prior to the funding of the initial Draw hereunder, Borrower shall, and shall have caused each Guarantor party hereto to, deliver to OMNI 808 certificates of the Secretary or an Assistant Secretary of Borrower and such Guarantors (with incumbency), certifying the names and true signatures of the officers of such Person authorized to execute this Note and, with respect to (and on behalf of) Borrower, to execute Draw Requests hereunder), attaching (i) copies of the resolutions of the board of directors of Borrower and each Guarantor party hereto, authorizing its execution and delivery of, and the performance of, its respective obligations under this Note, (ii) certified copies of the Organizational Documents of Borrower and each Guarantor party hereto; and (iii) a good standing certificate for Borrower and each Guarantor party hereto from the Secretary of State of the state of incorporation of each such Person, each dated as of a recent date.

(c)   Representations and Warranties.  The representations and warranties contained in Section 11 below shall be true and correct on and as of the date hereof and, with respect to each requested Draw, as of the funding date of each such Draw.

(d)   Compliance with Laws.  The advance of the funds, with respect to each requested Draw, on the terms and conditions herein provided (including the use of the proceeds thereof by Borrower) shall not violate any applicable law or governmental regulation and shall not subject OMNI 808 to any tax, penalty or liability under or pursuant to any applicable law or governmental regulation.

(e)   Perfection of Security Interest.  All actions necessary to maintain perfection of the Lien of Agent for the benefit of OMNI 808 (as the sole Lender under the Credit Agreement as of the date of this Note), in the Collateral shall have been taken in accordance with the terms and provisions of the Security Documents.  The Lien of Agent in the Collateral shall be valid and enforceable and shall secure all Obligations (including all obligations of Borrower hereunder), and the Collateral shall be subject to no other Liens other than as permitted by the Credit Agreement.

11.   Representations and Warranties.  Borrower hereby represents and warrants to and for the benefit of OMNI 808 as follows:.

(a)   Organization and Good Standing.  Each of Borrower, the other Loan Parties and the other Subsidiaries (i) is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization, and (ii) has all requisite corporate or similar power to own its properties and to conduct its business as now conducted and as currently proposed to be conducted, and (iii) is duly qualified to conduct business as a foreign corporation or other legal entity and is currently in good standing in each state and jurisdiction in which it conducts business, except where failure to be duly qualified and in good standing could not reasonably be expected to have a Material Adverse Effect.

(b)   Power and Authority.  Borrower has all requisite corporate power and authority under applicable law and under its Organizational Documents to execute, deliver and perform its obligations under this Note.

(c)   Validity and Legal Effect.  This Note constitutes, and the other Loan Documents to which Borrower is a party constitute, valid and binding obligations of Borrower enforceable against it in accordance with the terms thereof, except as may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws and except as limited by general principles of equity.

4

A/72666358.4

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

EXHIBIT _____ 12

PAGE _____ 66

WACHOVIA 002757

(d)    No Violation of Laws or Agreements. The execution, delivery and performance by Borrower of this Note (i) will not violate or contravene any material provision of any material law, rule, regulation, administrative order or judicial decree (federal, state or local), (ii) will not violate or contravene any provision of the Organizational Documents of Borrower, of any Guarantor or any of the other Subsidiaries, (iii) will not result in any material breach or violation of (or constitute a material default under) any material agreement or instrument by which Borrower, any Guarantor or any of the other Subsidiaries or any of their respective assets or property may be bound, and (iv) will not result in or require the creation of any Lien (other than pursuant to the Loan Documents) upon or with respect to any assets or properties of Borrower, any Guarantor or any of the other Subsidiaries, whether such assets or properties are now owned or hereafter acquired.

12.    Definitions.   For purposes of this Note, the following terms have the following corresponding meanings:

(a).    "Agent" means OMNI 808 in its capacity as "Agent" for and on behalf of the Lenders under the Credit Agreement and the other Loan Documents, as the successor in such capacity to Wachovia Bank, National Association, having been appointed pursuant as the replacement Agent pursuant to the Master Assignment, and any of its successors in such capacity.

(b)    "Business Day" means any day that is not a Saturday, a Sunday or a day on which banks under the laws of the States of California or New York are authorized or required to be closed.

(c)    "Credit Agreement" means that Credit Agreement dated as of October 26, 2006, as amended and otherwise modified through the date hereof (including, without limitation, as modified by the Master Assignment), by and among Borrower, Agent and OMNI 808, as a sole Lender thereunder as of the date of this Note, and each of the other entities as may from time to time become party thereto as a Lender, as the same may be further amended, restated, supplemented or otherwise modified from time to time after the date hereof.

(d)    "Master Assignment" means that Master Assignment and Exchange Agreement dated as of September 3, 2008 by and among Borrower, the Subsidiary Guarantors party thereto, OMNI 808, Wachovia Bank, National Association and each of the other financial institutions party thereto.

(e)    "Note" means this Secured Delayed Draw Demand Note, as amended, modified, restated and/or replaced from time to time in accordance with the terms hereof.

(f)    "Organizational Documents" means, relative to any entity, its certificate or articles of incorporation or organization or formation, its by-laws or operating agreements, and all equityholder agreements, voting agreements and similar arrangements applicable to any of its authorized shares of capital stock, its partnership interests or its member interests, and any other arrangements relating to the control or management of any such entity.

13.    Costs and Expenses. Borrower shall pay or reimburse OMNI 808 on demand therefore for all expenses and costs (including, without limitation, all reasonable attorneys' fees and disbursements) that OMNI 808 or Agent, on behalf of OMNI 808, may pay or incur in connection with (i) the preparation, negotiation and review of this Note, any waivers, consents and amendments in connection herewith or therewith and all other documentation related hereto or thereto, (ii) any continuing perfection or protection of Agent's interest in any of the Collateral in connection with this Note, and (iii) the

5

A/72666358.4

EXHIBIT    12

PAGE    67

WACHOVIA 002755

collection or enforcement of this Note. All obligations provided for in this Section 13 shall survive the termination of this Note, the repayment of Borrower's obligations hereunder and the repayment of all other Obligations.

14.   Remedies.   Lender may enforce this Note in accordance with such remedies as may be available under applicable law, the Security Documents and each of the other Loan Documents, which remedies shall be cumulative.

15.   Selected Waivers and Consents by Borrower.   Borrower hereby waives diligence, presentment, protest, demand for payment, notice of protest and non-payment, notice of dishonor, and any and all other notices or demands in connection with the delivery, acceptance, payment, performance, default, acceleration or enforcement of this Note. Borrower, in addition, hereby consents (without the necessity of prior notice) to any extensions of time, renewals, releases of any party hereto or guarantor hereof, waivers and/or modifications in connection herewith that may be granted or consented to by OMNI 808 from time to time. Borrower also waives, to the extent not prohibited by applicable law, any defenses (other than the defense of full unconditional payment) and rights of discharge to its obligations hereunder that it may have or may hereafter acquire based upon suretyship or impairment of collateral (including lack of attachment or perfection with respect thereto).

16.   Waivers by OMNI 808.   To be effective, any waiver by OMNI 808 hereunder must be expressed in a writing executed by OMNI 808. If OMNI 808 waives any term, right or remedy arising hereunder or under any applicable law, then such waiver will not be deemed to be a waiver (i) upon any later occurrence or recurrence of any events giving rise to the earlier waiver or (ii) as to any other Person. No failure or delay by OMNI 808 or Agent on behalf of OMNI 808 and any other Lender that shall hereafter become a party to the Credit Agreement to insist upon the strict performance of any Loan Document (including this Note), or to exercise any right or remedy, will constitute a waiver of compliance with any term, condition, covenant or agreement, or preclude OMNI 808 or Agent on behalf of OMNI 808 and any other Lender that shall hereafter become a party to the Credit Agreement from exercising any right, power, or remedy at any later time or times. By accepting payment after the due date of any amount payable under this Note, neither OMNI 808 nor Agent on behalf of OMNI 808 and any other Lender that shall hereafter become a party to the Credit Agreement will not be deemed to waive the right either to require prompt payment when due of all other amounts payable under any Loan Document or to declare an Event of Default hereunder or under any other Loan Document for failure to effect such prompt payment of any such other amount.

17.   Reinstatement.   To the maximum extent not prohibited by applicable law, this Note (and the obligations of Borrower hereunder and the Collateral therefor) will be automatically reinstated and the indebtedness correspondingly increased (as though such payments had not been made) if at any time any amount received by OMNI 808 in respect hereof is rescinded or must otherwise be restored, refunded or returned by OMNI 808 to Borrower or other Person for any reason, including (a) as a result of the insolvency, bankruptcy, dissolution, liquidation or reorganization of any Person, or (b) as a result of the appointment of any receiver, intervenor, conservator, trustee or similar official for any Person or for any part of the assets of any Person.

18.   Assignability.   Borrower shall not assign or delegate any of its obligations, duties, rights or benefits hereunder without the prior written consent of OMNI 808. OMNI 808 (and its successors or assigns) may assign, transfer, participate, syndicate, delegate and/or pledge all or any part of its obligations, duties, rights and benefits under this Note in accordance with the Credit Agreement.

6

A72666358.4

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

EXHIBIT _____ 12

PAGE _____ 68

WACHOVIA 002759

19.    Conflicts Among Loan Documents.  In the event of any irreconcilable conflict between the terms and conditions of this Note and the terms and conditions of any other Loan Document, then the terms and conditions of this Note shall govern.

20.    Relationship with Prior Agreements.  This Note completely and fully supersedes all oral agreements and all other and prior written agreements by and among Borrower and OMNI 808 concerning the terms and conditions of the credit arrangement described in this Note.

21.    Severability.  If fulfillment of any provision of or any transaction related to this Note at the time performance is due involves transcending the limit of validity prescribed by applicable law, then (ipso facto) the obligation to be fulfilled shall be reduced to the limit of such validity.  If any clause or provision of this Note operates or would prospectively operate to invalidate this Note or any other Loan Document in whole or in part, then such clause or provision only shall be void (as though not contained herein or therein), and the remainder of this Note shall remain operative and in full force and effect.

22.    No Fiduciary Relationship.  No provision in the Loan Documents and no course of dealing between the parties shall be deemed to create any fiduciary duty owing to Borrower or any other Loan Party or any of their respective Affiliates by OMNI 808 and OMNI 808 shall not be deemed to be a partner, joint venturer or co-venturer with Borrower by reason of this Note or the transaction contemplated hereunder.

23.    Loan Documents; Secured Note; Reaffirmation.  Borrower and each Guarantor party hereto, by executing this Note, hereby acknowledges, agrees, represents and warrants that: (a) this Note is being executed in connection with the Credit Agreement and shall constitute one of the Loan Documents; (b) all obligations of Borrower under this Note are Obligations for all purposes of the Loan Documents, and the full amount of such obligations are secured by the Collateral identified and described as security for the Obligations in the Security Documents and the other Loan Documents; and (c) the Credit Agreement and the other Loan Documents to which it, or any of its Subsidiaries, is a party are valid and enforceable against it and/or such Subsidiaries, as the case may be.  Borrower and each Guarantor party hereto hereby expressly reaffirms, where applicable, each of its and its Subsidiaries' Obligations under the Loan Documents, and waives each and every one of the possible defenses to such Obligations to the extent permitted by Applicable Law; and each Guarantor party hereto hereby reaffirms that its obligations under the Guaranty are separate and distinct from Borrower's obligations.

24.    Notices.  Any notice or other communication in connection with this Note will be deemed satisfactorily given if it is in writing and is delivered either personally to the addressee thereof, or by prepaid registered or certified U.S. mail (return receipt requested), or by a nationally recognized commercial courier service with next-day delivery charges prepaid, or by facsimile (voice confirmed), or by any other reasonable means of personal delivery to the party entitled thereto at its respective address set forth below:

If to Borrower:         MGA Entertainment Inc.
                        16380 Roscoe Boulevard, Suite 200
                        Van Nuys, California 91460
                        Attn: General Counsel
                        Telephone:    (818) 894-2525
                        Facsimile:    (818) 895-0771

7

A/72666358.4

EXHIBIT _____ 12

PAGE _____ 69

WACHOVIA 002760

with a copy to:

MGA Entertainment Inc.
16380 Roscoe Boulevard, Suite 200
Van Nuys, California 91460
Attn: Isaac Larian, Chief Executive Officer
Telephone:      (818) 894-3150
Telecopy:       (818) 894-1267

with a copy to:

Sidley Austin LLP
555 West Fifth Street
Los Angeles, California 90013
Attn: Moshe J. Kupietzky, Esq.
Telephone:      (213) 896-6020
Facsimile:      (213) 896-6600

If to Lender:

OMNI 808 Investors LLC
9420 Wilshire Boulevard, Suite 400
Beverly Hills, California 90212
Attn: Chief Executive Officer
Telephone:      (310) 300-4100
Facsimile:      (310) 300-4101

and to:

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111
Attn: Peter H. Carson, Esq.
Telephone:      (415) 393-2000
Facsimile:      (415) 393-2286

Any party to, or beneficiary of, this Note may change its address or other contact information for notice purposes by giving notice thereof to the other parties to, and beneficiaries of, this Note in accordance with this Section 24, *provided* that such change shall not be effective until two calendar days after notice of such change. All such notices and other communications will be deemed given and effective (a) if by mail, then upon actual receipt or two calendar days after mailing as provided above (whichever is earlier), or (b) if by facsimile, then upon successful transmittal to such party's and/or such beneficiary's designated number, or (c) if by nationally recognized commercial courier service, then upon actual receipt or two Business Days after delivery to the courier service (whichever is earlier), or (d) if otherwise delivered, then upon actual receipt.

25.     **Litigation, Jurisdictional and Related Consents.** The parties hereto acknowledge that any dispute or controversy between OMNI 808, Borrower or any Guarantor party hereto shall be addressed in accordance with Section 12.4 of the Credit Agreement.

8

A/72666358.4

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

EXHIBIT _____ 12
PAGE _____ 70

WACHOVIA 002761

26.   <u>Governing Law and Binding Effect</u>.  This Note is binding upon and inures to the benefit of the parties hereto and their respective successors and assigns.  This Note is governed as to its validity, interpretation, construction and effect by the laws of the State of New York (without giving effect to the conflicts of law rules of such state).

27.   <u>Headings</u>.  The headings under this Note are inserted for convenience of reference only and are not intended to affect the meaning or interpretation of this Note.

[Balance of Page Intentionally Blank...Signatures on Next Page]

9

A/72666358.4

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

EXHIBIT _____ 12

PAGE _____ 71

WACHOVIA 002762

IN WITNESS WHEREOF, Borrower has executed this Secured Delayed Draw Demand Note on the day and year first written above.

BORROWER:

MGA ENTERTAINMENT INC.,
a California corporation

By: _____
Name: Isaac Larian
Title: CEO

ACCEPTED:

OMNI 808 INVESTORS LLC,
a California limited liability company,
In its capacity as OMNI 808 and in its separate
capacity as Agent

By: _____
Name: Mel Krish
Title: Managing Member

CONSENTED AND AGREED
TO BY THE GUARANTORS
(for purposes of Section 2 and Section 23
hereof):

MGA ENTERTAINMENT (MEXICO), INC.,
a California corporation

By: _____
Name: Isaac Larian
Title: CEO

THE LITTLE TIKES COMPANY,
an Ohio corporation

By: _____
Name: Isaac Larian
Title: CEO

[SIGNATURE PAGE TO SECURED DELAYED DRAW DEMAND NOTE]

A/72660332.1

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

EXHIBIT _____ 12

PAGE _____ 72

WACHOVIA 002763

**IN WITNESS WHEREOF,** Borrower has executed this Secured Delayed Draw Demand Note on the day and year first written above.

BORROWER:

MGA ENTERTAINMENT INC.,
a California corporation

By:  Name: Isaac Larian
     Title: CEO

ACCEPTED:

**OMNI 808 INVESTORS LLC,**
a California limited liability company,
In its capacity as OMNI 808 and in its separate
capacity as Agent

By:  Name: _____
     Title: _____

CONSENTED AND AGREED
TO BY THE GUARANTORS
(for purposes of Section 2 and Section 23
hereof):

**MGA ENTERTAINMENT (MEXICO), INC.,**
a California corporation

By:  Name: Isaac Larian
     Title: CEO

**THE LITTLE TIKES COMPANY,**
an Ohio corporation

By:  Name: Isaac Larian
     Title: CEO

[SIGNATURE PAGE TO SECURED DELAYED DRAW DEMAND NOTE]

A/72666351.1

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER ENTERED JANUARY 4, 2005

EXHIBIT _____ 12

PAGE _____ 73

WACHOVIA 002764

# EXHIBIT 13



1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA 90013-1065
3  Telephone: 213.629.7400
   Facsimile: 213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11

12  CARTER BRYANT, an individual,    Case No. CV 04-09049 SGL (RNBx)

13              Plaintiff,

14         v.                        Consolidated with
                                     Case No. CV 04-09059
15  MATTEL, INC., a Delaware         Case No. CV 05-2727
    corporation,
16                                   PHASE II DISCOVERY MATTER
                Defendant.
17                                   ORDER NO. 3, REGARDING:

18                                        (1) MOTION OF MGA
                                     ENTERTAINMENT, INC.,
19                                   ISAAC LARIAN AND MGA
                                     ENTERTAINMENT (HK)
20                                   LIMITED TO QUASH
                                     NON-PARTY SUBPOENAS; and
21
                                          (2) MOTION OF MATTEL, INC.
22                                   TO COMPEL PRODUCTION OF
                                     DOCUMENTS RESPONSIVE TO
23                                   THE SAME NON-PARTY
                                     SUBPOENAS
24

25  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
26  MGA ENTERTAINMENT, INC. v.
    MATTEL, INC.
27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1                               ORDER NO. 3
                            [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___13___

PAGE ___74___

1    This Order sets forth the Discovery Master's ruling on: (1) the motion of

2    MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Limited

3    (collectively "MGA") to quash certain non-party subpoenas [Docket Number 4779]

4    and (2) the corresponding motion of Mattel, Inc. ("Mattel") to compel production of

5    documents responsive to the same non-party subpoenas [Docket Numbers 4769 and

6    4788] (collectively, the "Motions").

7    The Motions came on regularly for hearing before the Discovery Master on

8    March 4, 2009.  All interested parties were represented by counsel and afforded the

9    opportunity to present oral argument on the Motions.  The Discovery Master,

10   having considered the papers filed in support of and in opposition to the Motions,

11   and having heard oral argument thereon, rules as set forth below.

12   **I.    INTRODUCTION**

13

14   **A.    The Court's February 11, 2009 Ruling**

15   On February 11, 2009, the Court heard oral argument on various motions

16   filed by the parties.  During the proceedings, counsel took the opportunity to orally

17   request clarification by the Court regarding whether the parties' respective motions

18   relating to the subpoenas served by Mattel on various entities allegedly related to

19   MGA (the "Subpoenas") are in any way stayed or precluded by any of the Court's

20   prior orders.

21   In response, the Court stated: "I will instruct the Discovery Master this

22   afternoon, in no uncertain terms, that there is no stay on any discovery related to

23   this case at all." (Reporter's Transcript of Proceedings, February 11, 2009 ["Tr."],

24   99:8 – 10).  Counsel for MGA then referred to the fact that the Court had

25   previously declined to allow Mattel to serve certain discovery accompanying

26   Mattel's motion for a receiver and characterized the third-party subpoenas as an

27   attempt to circumvent the Court's ruling.  (Tr., 101:12 – 17).  In response, the Court

28   stated:

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 13

PAGE _____ 19

> Then the question becomes – and this is a question for the
> Discovery Master, not for this Court – whether or not the
> discovery is related to Phase 2. If it is, it is. I'm not going to
> pass any judgment whatsoever. I'm going to leave that
> completely up to the Discovery Master. ... The question for the
> [D]iscovery [M]aster will be whether or not the disputed
> discovery request is related or relevant to the trial that has now
> been scheduled for March [2010] or not.

(Tr., 101:18 – 22; 103:1 – 3).

 The Discovery Master understands the Court's ruling as indicating that, in
deciding the motions relating to the Subpoenas, the Discovery Master should
consider whether there is a nexus between the information sought by the
Subpoenas, on the one hand, and the Phase 2 claims and counterclaims set for trial
in March 2010, on the other hand. If the information sought by the Subpoenas is, to
use the Court's words, "related to Phase 2" or "related or relevant to the [Phase 2]
trial," then that information could potentially be the subject of appropriate
discovery requests by Mattel.[1]

### B. Information Sought By The Subpoenas

 The information sought by Mattel's Subpoenas falls into two broad
categories. First, Mattel seeks documents from third parties Omni 808 Investors,
LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively, the "Financing
Entities") involving, among other things, their internal ownership and operations
and their role in providing financing to MGA during the summer of 2008 (the

---

[1] Even prior to the Court's February 11, 2009 ruling, Mattel acknowledged that it had the burden of demonstrating a
nexus between the information sought by the Subpoenas and the Phase 2 issues, as demonstrated by Mattel's
inclusion of a section in its Motion to Compel summarizing the claims to be adjudicated in Phase 2, (Motion, pp. 5 –
8), and a section arguing that the information sought by the third-party subpoenas is relevant to Mattel's Phase 2
claims, (Id., pp. 18 - 24 and 24 – 25). However, Mattel also argued that the information sought might be appropriate
regardless of any nexus to Phase 2. (See id., pp. 14 – 17 [arguing that MGA's prior statements regarding its finances
in Phase 1 "opened the door" to discovery on this issue] and id., p. 23 [arguing that the information sought is relevant
to MGA's credibility]). Based on the Court's subsequent ruling on February 11, 2009, as well as the Discovery
Master's own independent evaluation of those arguments, the Discovery Master concludes, as discussed more fully
below, that these arguments are insufficient, standing alone, to justify the non-party discovery Mattel seeks. Rather,
Mattel must demonstrate some link between the information sought and the issues to be adjudicated by the Court at
the Phase 2 trial.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT   13

PAGE   76

1  "Financing Discovery"). Based on the information presented at the February 11,

2  2009 hearing and in connection with the pending motions, it does not appear that

3  either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have

4  an ownership interest in the Financing Entities.[2]  (See Tr., 70:22 – 72:5; 78:9 -25).

5       Second, Mattel seeks documents from third parties IGWT Group, LLC and

6  IGWT 826 Investments, LLC (collectively, the "Transferee Entities") regarding

7  MGA's sale to them of infringing MGA inventory, namely Bratz dolls (the

8  "Transferee Discovery"). MGA does not dispute that the Transferee Entities are

9  owned and/or controlled by Larian. (See, e.g., MGA's Reply in support of its

10  Motion to Quash, at p. 5, fn. 6, where MGA refers to the purchase of Bratz

11  inventory by the Transferee Entities as "Larian's purchase of those . . .

12  products . . . .").[3]

13  **II.    MGA's Motion To Quash**

14       Because it could dispose of all outstanding discovery issues related to the

15  Subpoenas, the Discovery Master first addresses MGA's Motion to Quash filed on

16  February 3, 2009.

17       **A.    Legal Standard**

18       As the party moving to quash the Subpoenas, MGA bears the burden of

19  satisfying the standard set forth in Rule 45(b), which provides that the court may

20  "quash or modify the subpoena if it is unreasonable and oppressive."  (Fed. R. Civ.

21  P. 45(b); see also Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir.

22  2004) ["The moving party has the burden of proof to demonstrate that compliance

23

24  [2] Of course, this is one of the facts Mattel seeks to investigate through the Subpoenas to the Financing Entities. The

25  Discovery Master's ruling denying Mattel's Motion to Compel the Financing Parties to comply with the Subpoenas
   does not address – and should not be construed as deciding – whether Mattel could, upon establishing a nexus to a

26  legitimate Phase 2 issue, seek to obtain this information from MGA.

   [3] Moreover, MGA does not dispute the assertions made by Mattel in its Motion to Compel at pp. 11– 12, including

27  that Larian created IGWT Group during the Phase 1 trial and registered its place of business as his home address, and
   that Larian created IGWT 826 Investments the day after the Phase 1 trial ended and registered it at the home address

28  of his sister.

EXHIBIT ___13___

PAGE ___11___

1   with the subpoena would be unreasonable and oppressive" (internal quotations

2   omitted)]; *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) [The

3   burden of proving that a subpoena is oppressive is on the party moving to quash];

4   *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) [the

5   burden is on the movant to establish that a subpoena duces tecum should be

6   quashed]). "The burden is particularly heavy to support a 'motion to quash as

7   contrasted to some more limited protection.'" (*Westinghouse Electric Corp. v. City

8   of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965) [denying a motion to quash

9   supported by two affidavits]).

10          **B.      Arguments Made By MGA In Support Of Its Motion To Quash**

11          The sole argument set forth in MGA's Motion to Quash is that the Court's

12  January 7, 2009 order appointing a forensic auditor bars Mattel from seeking the

13  information sought by the Subpoenas. (*See* MGA's Motion to Quash, pp. 1 - 6).

14  But that argument fails for the reasons set forth above. The Court made it clear at

15  the hearing on February 11, 2009 that:

16              There is no stay on discovery. Period. . . . . [The forensic auditor
17              appointed by the Court] is acting at the Court's discretion to
                inform the Court of information. . . . That's an entirely separate
18              matter. And I have not stayed any discovery and there should be
19              no reliance on that. If that was misunderstood, it's clarified now.

20  (Tr., 97:15, 98:8 - 9, and 98:13 - 15).

21          Recognizing that its only argument has been rejected by the Court, MGA

22  argues for the first time in its Reply that its Motion to Quash should be granted

23  because the Subpoenas are not relevant to any of Mattel's Phase 2 claims. (*See*

24  MGA's Reply Brief in Support of the Motion to Quash, pp. 1 and 5 - 12).

25  However, MGA did not make this argument in its opening brief. It instead declared

26  in its moving papers that whether the Subpoenas are related to any "Phase 2 issues

27  is beside the point." (*Id.*, p. 5). Because MGA did not address the relevance of the

28  subject discovery until the filing of its Reply, the Discovery Master declines to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

13
78

PAGE

1   consider the argument in connection with the Motion to Quash.

2      The Discovery Master, like the Court,[4] disfavors the insertion of new

3   arguments at the reply stage that could have been raised in the moving papers.  A

4   party filing a motion is required to raise all of its arguments in its opening brief to

5   prevent "sandbagging" of the non-moving party and to provide opposing counsel

6   the chance to respond.  This rule is routinely adhered to by courts in the Ninth

7   Circuit.  (*See, e.g., United States v. Boyce*, 148 F.Supp .2d 1069, 1085

8   (S.D.Cal.2001); *Leick v. Hartford Life and Acc. Ins. Co.*, 2007 WL 1847635 at *1,

9   n. 1 (E.D.Cal. 2007); *Stewart v. Wachowski*, 2004 WL 2980783, at *11 (C.D.Cal.

10   Sept. 28, 2004); *Hamilton v. Willms*, 2007 WL 2558615, *11 (E.D.Cal.2007); *see*

11   *also United States v. Cox*, 7 F.3d 1458, 1463 (9th Cir.1993); *United States v.*

12   *Wright*, 215 F.3d 1020, 1030 n. 3 (9th Cir.2000)).

13      Furthermore, MGA will not suffer any prejudice from this decision because

14   the issue it raised in its Reply (i.e., are the Subpoenas seeking information related to

15   any Phase 2 claims) has been fully briefed by the parties and is ruled upon by the

16   Discovery Master in connection with Mattel's Motion to Compel.[5]  (*See Section III*

17   below).

18      Accordingly, MGA's Motion to Quash is **DENIED.**

19   //

20   //

21   //

22   //

23

24   [4] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

25

26   [5] That the arguments raised in the Reply are the same as those in MGA's Opposition to the Motion to Compel is conceded by Mattel. Indeed, Mattel admitted in its Request to Consolidate MGA's Motion to Quash and Motion to Compel (which was denied as untimely by the Discovery Master at the hearing on March 4, 2009) that the "MGA Parties' Opposition to Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas . . . makes the same arguments as the MGA Parties' Reply in support of their Motion to Quash." (Mattel's Request to Consolidate MGA's Motion to Quash and Mattel's Motion to Compel, p. 2).

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                    ORDER NO. 3
                                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____13_____

PAGE _____79_____

1    **III.**    **Mattel's Motions To Compel**

2      **A.**     **The Purported Procedural Defects Barring Mattel's Motions To**

3        **Compel**

4      MGA, the Financing Entities, and the Transferee Entities all argue that that

5 Mattel's Motion to Compel should be denied on several different procedural

6 grounds.

7      **1.**     **The Court's January 7, 2009 Order**

8      As an initial matter, the Transferee Entities and the Financing Entities repeat

9 the argument made by MGA in its Motion to Quash that the Court's January 7,

10 2009 Order appointing a forensic auditor barred Mattel from seeking the discovery

11 sought by the Subpoenas. (Financing Entities' Opposition to Mattel's Motion to

12 Compel at p. 3; Transferee Entities' Opposition to Mattel's Motion to Compel at

13 pp. 5 - 7). But that argument fares no better here than it did with respect to MGA's

14 Motion to Quash and is rejected for the reasons discussed in Section II above.

15      **2.**     **Local Rule 37**

16      The Financing Entities and the Transferee Entities also argue that Mattel's

17 Motion to Compel should be denied because Mattel failed to comply with Local

18 Rule 37 by, among other things, failing to meet and confer and failing to file a joint

19 stipulation. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 1

20 and 7 - 10; Transferee Entities' Opposition to Mattel's Motion to Compel, p. 2

21 [referencing Local Rule 37 in passing]). However, Local Rule 37 (as distinguished

22 from Federal Rule 37, which is discussed in subsection 7a, below) does not apply to

23 discovery disputes in this case. Rather, the applicable procedure is the one adopted

24 by the Court in its order appointing a discovery master dated December 6, 2006

25 ("Discovery Master Order").[6] Because the Discovery Master Order provides that

26

27    [6] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a
discovery master for Phase 2 of this litigation. (*See* Court's Order dated January 6, 2009, p. 2 ["The Discovery

28 Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-7-

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    13

PAGE      80

1    "all third parties subject to discovery requests . . . in this litigation shall be bound

2    by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that

3    order applies to the Financing Entities as well as the Transferee Entities, and its

4    procedures replace those set forth in Local Rule 37. (*Id.*, p. 4).

5            3.      **Local Rule 11-6 And Paragraph 4(b) Of The Court's**

6                    **Standing Order**

7          The Financing Entities and MGA further argue that Mattel's Motion to

8    Compel should be denied because it exceeds the page limitations set forth in Local

9    Rule 11-6 and Paragraph 4(b) of the Court's Standing Order. (*See* Financing

10    Entities' Opposition to Mattel's Motion to Compel, p. 9; MGA's Opposition to

11    Mattel's Motion to Compel, pp. 18 - 19). Each of these contentions is unavailing.

12    The Discovery Master Order (not the Local Rules or the Court's Standing Order)

13    governs discovery disputes in this case, and it does not impose any page limit on

14    such motions.[7] In fact, the Discovery Master Order dispenses with the formatting

15    requirements of the Local Rules in certain ways, such as allowing letter briefs, and

16    even permits the parties to agree to alternative procedures, including, presumably,

17    filing briefs that are more than 25 pages in length. (*See* Discovery Master Order, p.

18    4). Thus, while the Discovery Master encourages the parties to be as efficient as

19    possible in their briefing, he recognizes that briefs in excess of 25 pages are either

20    directly permitted under the Discovery Master Order (since no page limitation was

21    imposed by the Court) or implicitly allowed (since the parties may agree to

22    alternate procedures). He further recognizes that the complex nature of this case

23    may periodically necessitate the filing of briefs that exceed 25 pages.[8] For all of

24

---

25    [7] Even assuming the 25 page limitation for briefs did apply, Mattel had the option of filing separate motions to
compel for each of the subpoenas at issue and could have easily extended the page limitation well beyond the 30
26    pages it filed in connection with its combined motion that addressed multiple subpoenas propounded on the
Transferee Entities and the Financing Entities.

27    [8] In fact, the parties to this lawsuit have filed multiple discovery motions in this case that contained more than 25
pages. (*See* Supplemental Declaration of Jon D. Corey in Support of Mattel, Inc.'s Reply in Response to The MGA
28    Parties' Opposition to Motion to Compel, ¶ 7).

EXHIBIT _____ 13

PAGE _____ 81

1   these reasons, filings in excess of 25 pages are permitted.[9]

2           **4.    Local Rule 6-1**

3       The Financing Entities argue in passing that Mattel's motion to compel

4   should be denied because it violates Local Rule 6-1. (Financing Entities'

5   Opposition to Mattel's Motion to Compel, p. 6).    However, the Discovery Master

6   Order adopts a completely different set of deadlines than the Local Rules for the

7   filing of motions, oppositions and replies, and a different schedule for noticing

8   hearing dates. (Discovery Master Order, p. 4). Therefore, Local Rule 6-1 has no

9   applicability here.

10          **5.    Failure To Name MGA In The Motion To Compel**

11      MGA next argues that Mattel's motion to compel is procedurally improper

12  because MGA was not named in the Motion to Compel and Mattel should not be

13  allowed to respond to MGA's objections. (MGA's Opposition to Mattel's Motion

14  to Compel, p. 18). But MGA has cited no legal authority, and the Discovery

15  Master has found none, standing for the proposition that a party must name in its

16  motion to compel all parties who have objected to an underlying subpoena even if

17  they are not actually the target of the subpoena.  In fact, the contention that Mattel's

18  Motion to Compel should have been brought against MGA makes no sense given

19  that it could not possibly comply with any order compelling a response to the

20  Subpoenas.

21          **6.    Mattel's Separate Statement**

22      MGA also contends that Mattel's Motion to Compel should be denied

23  because its' separate statement "is another classic example of . . . inefficiency."

24  (*Id.*, p. 19). Once again, nothing in the Discovery Master Order prevents a party

25  from filing a separate statement that first identifies the request in dispute and then

26

27
[9] In the event the length of briefs ever becomes excessive, the Discovery Master will issue an order setting a specific
28  page limitation.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                ORDER NO. 3
                                        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___13___

PAGE ___82___

1    sets forth the various contentions of the parties, even if the information regarding

2    the various requests happens to be repetitive.  Regardless, MGA has not cited any

3    legal authority in support of its position and the Discovery Master finds no reason .

4    to dispose of Mattel's Motion to Compel merely because it filed a separate

5    statement that contains duplicative arguments.[10]

6              7.    **Meeting And Conferring**

7          As their final procedural argument in opposition to the Motion to Compel,

8    the Transferee Entities and the Financing Entities assert that the motion should be

9    denied because Mattel failed to adequately meet and confer prior to filing the

10   motion. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 7 - 8;

11   Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).

12             a.    **Applicable Procedure**

13         Prior to filing its motion to compel, Mattel had an obligation to comply with

14   both the Federal Rules of Civil Procedure and the Discovery Master Order.  Federal

15   Rule of Civil Procedure 37(a) expressly requires that a party filing a motion to

16   compel discovery first meet and confer in "good faith." (Fed. R. Civ. Proc. 37(a)).

17   Similarly, the Discovery Master Order states that unless an "alternative procedure"

18   is agreed upon or otherwise ordered by the Discovery Master, the

19         moving party shall first identify each dispute, state the relief
20         sought, and identify the authority supporting the requested relief
           in a meet and confer letter that shall be served on all parties by
21         facsimile or electronic mail.  The parties shall have five court
           days from the date of service of that letter to conduct an in-person
22         conference to attempt to resolve the dispute.  If the dispute has
           not been resolved within five court days after such service, the
23         moving party may seek relief from the Discovery Master by
           formal motion or letter brief . . .

24   (Discovery Master Order, p. 4).

25   //

26

27

28
_____
[10] The Discovery Master notes that where there are numerous discovery requests in dispute he would prefer for a
separate statement to be submitted by the moving party.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___13___

PAGE ___83___

1            **b.**    **Mattel's Meet And Confer Regarding The Financing**

2                     **Entities**

3       In challenging Mattel's meet and confer effort, the Financing Entities first

4 claim that Mattel violated the Discovery Master Order because no "in-person

5 meeting occurred." (Financing Entities' Opposition to Mattel's Motion to Compel,

6 p. 8). But that argument is without merit, since Mattel and the Financing Entities

7 agreed to an alternative procedure that disposed of the in-person meet and confer

8 requirement.[11] Indeed, MGA's counsel sent counsel for Mattel, counsel for the

9 Transferee Entities and counsel for the *Financing Entities* a letter on January 23,

10 2009 memorializing the parties' agreement and establishing a schedule whereby the

11 parties would "meet and confer on January 29 and 30 . . ." (Mattel's Reply in

12 Support of its Motion to Compel filed on February 13, 2009, pp. 9 - 10;

13 Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply to the

14 Motion to Compel filed on February 13, 2009, ¶ 4 and Ex. 2). That the Financing

15 Entities' counsel received this letter and acted in accordance with its terms is

16 evidenced by, among other things, the fact that they served objections to the

17 Subpoenas on January 28, 2009 (which was the deadline specified in the January 23

18 letter) and started meeting and conferring with Mattel's counsel telephonically on

19 January 30. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 3

20 and 4). Accordingly, Mattel did not have any obligation to meet with the Financing

21 Entities in person since the parties had agreed to waive that obligation.

22       Nevertheless, Mattel still had an obligation to meet and confer with the

23 Financing Entities in good faith. Good faith cannot be shown merely through

24 perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a genuine

25 attempt to resolve the discovery dispute through non-judicial means. (Fed. R. Civ.

26

27

28

[11] To promote efficiency and minimize the necessity for counsel to travel between their respective offices, the Discovery Master shall deem Paragraph 5 of the Discovery Master Order (mandating that the parties have an in person conference to attempt to resolve discovery disputes) to be sufficiently satisfied if the parties and non-parties involved in a discovery dispute meet and confer telephonically or by video conference. However, the Discovery Master emphasizes that this accommodation in no way lessens the parties' obligation to meet and confer in good faith.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 13

PAGE _____ 84

1   Proc. 37(a)(1)).

2       Because the evidence and declarations submitted by Mattel and the Financing

3   Entities are in conflict regarding what transpired during their respective meet and

4   confer communications, (Cf. Financing Entities' Opposition to Mattel's Motion to

5   Compel, pp. 3 – 5; Mattel's Reply Brief in Support of its Motion to Compel filed on

6   February 13, 2009, pp. 9-10), the Discovery Master gives Mattel the benefit of the

7   doubt and concludes that it adequately met and conferred with respect to Omni 808

8   Investors, LLC and Vision Capital, LLC.

9       By contrast, Mattel arguably did not even begin the meet and confer process

10  with OmniNet Capital, LLC prior to filing its motion to compel, because counsel

11  for the Financing Entities informed Mattel that they did not receive that Subpoena

12  until the afternoon of February 2, 2009 and filed objections to the Subpoena on that

13  date. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 5). No

14  "good faith" meeting could therefore have taken place.

15      Although the meet and confer with respect to OmniNet Capital, LLC was

16  inadequate, the Discovery Master will nonetheless address the merits of Mattel's

17  Motion to Compel in all respects, including concerning the Subpoena served on

18  OmniNet Capital, LLC. The Discovery Master does so for purposes of efficiency

19  (i.e., the issues to be decided regarding the subpoena served on OmniNet Capital,

20  LLC are essentially identical to those that must be addressed in connection with the

21  subpoenas served on Omni 808 Investors, LLC and Vision Capital, LLC) and

22  because addressing the merits of the motion does not alter the outcome.[12]

23                  c.      Mattel's Efforts To Meet And Confer Regarding The

24                          Transferee Entities

25      Like the Financing Entities, the Transferee Entities contend that Mattel's

26  motion to compel should be denied because it did not meet and confer in good faith.

27

28

---

[12] As noted above, the parties are admonished to abide by the provisions of the Discovery Master Order requiring a good faith attempt to meet and confer regarding discovery disputes prior to the filing of any discovery motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                                    ORDER NO. 3
                          - 12 -        [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    13

PAGE       85

1 (Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5). Yet, the

2 Transferee Entities concede that their counsel engaged in multiple meet and confer

3 teleconferences. (*Id.* at pp. 3 - 4). Several emails and letters were also exchanged

4 between the parties as part of the meet and confer process. (*Id.*). In light of these

5 interactions, the Discovery Master again gives Mattel the benefit of the doubt in

6 favor of resolving the issues on the merits and concludes that it adequately met and

7 conferred with the Transferee Entities.

8     **B.     Legal Standard Governing Enforcement Of The Subpoenas**

9     Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil

10 actions of "any matter, not privileged, which is relevant to the subject matter

11 involved . . .. The information sought need not be admissible at the trial if the

12 information sought appears reasonably calculated to lead to the discovery of

13 admissible evidence." Rule 26(b) is liberally interpreted to permit wide-ranging

14 discovery of all information reasonably calculated to lead to discovery

15 of admissible evidence; but the discoverable information need not be admissible at

16 the trial. (*Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248,

17 250 (D.Kan.1993)).

18     The broad scope of discovery described in subsection (b)(1) is tempered by

19 provisions protecting the responding party from undue burden. Rule 26(b)(2)

20 provides that the frequency or extent of discovery otherwise allowed by the Rules

21 must be limited if the court determines that "(i) the discovery sought is

22 unreasonably cumulative or duplicative, or is obtainable from some other source

23 that is more convenient, less burdensome, or less expensive; (ii) the party seeking

24 discovery has had ample opportunity by discovery in the action to obtain the

25 information sought; or (iii) the burden or expense of the proposed discovery

26 outweighs its likely benefit, taking into account the needs of the case, the amount in

27 controversy, the parties' resources, the importance of the issues at stake in the

28 litigation, and the importance of the proposed discovery in resolving the issues."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___13___

PAGE ___84___

1        Moreover, the Federal Rules distinguish between discovery from non-parties

2   to a lawsuit (governed under Rule 45) and discovery from parties (governed

3   generally by Rule 26), based in part on the recognition that the former is inherently

4   more burdensome and less convenient than the latter. (See, e.g., Solarex v. Arco

5   Solar, Inc., 121 F.R.D. 163, 179 (E.D.N.Y. 1988) [The status of a non-party is

6   significant when determining whether compliance with a discovery demand would

7   constitute an undue burden]; Katz v. Batvia Marine and Sporting Supplies, Inc., 984

8   F.2d 422, 424 (Fed. Cir. 1993) [The fact that discovery is sought from a non-party

9   is one factor that the Court may weigh in determining whether the discovery

10   requested is necessary, relevant, or burdensome]. Courts applying Rules 26 and 45

11   have interpreted these rules to afford non-parties special heightened protection

12   against burdensome discovery. (See, e.g., Exxon Shipping Co. v. U.S. Dept of

13   Interior, 34 F.3d 774, 779 (9th Cir. 1994)).

14        Accordingly, requests for documents that pertain to a party and that can be

15   more easily and inexpensively obtained from that party also impose an undue

16   burden. (Moon v. SCP Pool Corp., 232 F.R.D. 633, 638 (C.D. Cal. 2005)).

17   Further, if the documents sought are neither relevant nor calculated to lead to the

18   discovery of admissible evidence, "then any burden whatsoever imposed upon the

19   non-party would be by definition undue." (Compaq Computer Corp. v. Packard

20   Bell Electronics, Inc., 163 F.R.D. 329, 335-336 (N.D.Cal. 1995)).

21        Each of the moving parties bears the burden of establishing the basis for the

22   relief it seeks. As the party moving to compel compliance with the Subpoenas,

23   Mattel bears the burden of "establishing that the information sought is relevant and

24   necessary to its lawsuit." (Cytodyne Technologies, Inc. v. Biogenic Technologies,

25   Inc., 216 F.R.D. 533, 534 (M.D.Fla. 2003)).

26        Finally, in deciding whether to enforce a subpoena, the Discovery Master

27   must balance "the relevance of the discovery sought, the requesting party's need,

28   and the potential hardship to the party subject to the subpoena." (Heat & Control,

EXHIBIT _____ 13

PAGE _____ 97

1  *Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986) citing

2  *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560, 564 (7th Cir.1984)).

3    **C.    Mattel's Contention That MGA Has Placed Its Finances At Issue**

4        As its first ground for moving to compel production of the documents sought

5  by the Subpoenas, Mattel argues that MGA has misrepresented its finances, thereby

6  making it necessary and appropriate for Mattel "to obtain an accurate understanding

7  of MGA's and Larian's finances." (Motion to Compel, p. 14). According to

8  Mattel, MGA's supposed misrepresentations have placed its financial condition at

9  issue, and have opened the door to discovery of any information bearing on MGA's

10  finances. (*Id.* ["Discovery on MGA's financials is amply warranted by MGA's

11  own statements *alone.*"] (emphasis added)).

12        However, after Mattel filed its Motion, the Court made it clear that the

13  validity of the Subpoenas must be evaluated with reference to whether they relate to

14  the matters to be adjudicated in Phase 2. As the Discovery Master understands the

15  Court's ruling, the Subpoenas cannot be justified merely because they seek

16  information regarding some contention made during Phase 1, without regard to

17  Phase 2. In other words, putting a fact at issue in Phase 1, cannot, standing alone,

18  suffice to render that fact the proper subject of discovery in Phase 2.

19        Thus, to the extent Mattel's first argument asserts that MGA's statements,

20  standing alone, warrant discovery from the Subpoena recipients, that argument is

21  rejected. Rather, the Discovery Master will evaluate whether discovery of MGA's

22  finances is warranted in light of the issues to be adjudicated in Phase 2.

23        Further, even if Mattel were not required to demonstrate some nexus between

24  the Subpoenas and the issues to be adjudicated in Phase 2, the argument that the

25  Subpoenas are justified because MGA placed its financial condition at issue would

26  still fail for the simple reason that Mattel is not seeking discovery from MGA but

27  rather *non-parties*. Mattel does not cite any statements or conduct by the

28  //

EXHIBIT ____13____

PAGE ____88____

1        Financing Entities putting their financial affairs at issue in this litigation.[13]

2  Rather, Mattel argues that the statements and conduct of *MGA* should be attributed

3  to the Financing Entities and construed as their consent to discovery of their

4  internal financial affairs.  Such an assumption is unwarranted.

5       **D.**    **Mattel's Contention That The Subject Discovery Is Relevant To**

6             **Phase 2**

7         **1.**    **Subpoenas To The Financing Entities**

8        Mattel next argues that the Subpoenas to the Financing Entities seek

9  information relevant to a variety of Phase 2 issues.[14]

10           **a.**    **Mattel's RICO Counterclaim**

11        Mattel first asserts in its Motion to Compel that the discovery it seeks is

12  relevant to its RICO counterclaim because "Mattel alleges that the counter-

13  defendants have operated a widespread criminal enterprise that has engaged in

14  numerous acts of mail and wire fraud and other predicate acts in violation of the

15  RICO statute" and that "MGA's mid-trial transactions with Omni 808 and the other

16  non-operating entities" is "a continuation of that pattern of racketeering activity."

17  (Motion, p. 18).

18

---

19  [13] In its Reply to the Financing Entities' Opposition to its Motion to Compel, Mattel argues that the Financing

20  Entities (referred to by Mattel as the "Omni Parties") have injected themselves into the litigation because one of
them, Omni 808 Investors, LLC, applied to intervene. (Reply, p. 8). However, a decision on that application has

21  been deferred by the Court, (Tr., 80:15 – 17), and therefore Omni 808 Investors, LLC and the other Financing
Entities remain outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-
parties.

22  [14] Mattel argues in one of its reply briefs filed on February 25, 2009 that the Discovery Master should strike MGA's

23  Opposition to the Motion to Compel because: (1) MGA indicated that it would not be filing an Opposition and
(2) the Opposition was filed a week late. (*See* Mattel's Reply in Response to MGA's Opposition to the Motion to

24  Compel, p. 4).  The Discovery Master declines that request.  The assertion that MGA would not file an Opposition is
based on an alleged oral conversation which counsel for Mattel apparently did not confirm in writing. (*See*

25  Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply in Response to MGA's Opposition to the
Motion to Compel, ¶ 4).  Even assuming such a statement had been made, MGA was entitled to change its mind.  As

26  for Mattel's argument that the Opposition was untimely, the Discovery Master notes that he was only recently
appointed.  This fact combined with the backlog of discovery motions may have resulted in some confusion as to

27  when various briefs were due to be filed.  The Discovery Master prefers to address issues on the merits and declines
to strike the Opposition as untimely.  Notwithstanding the foregoing, the Discovery Master urges the parties to

28  strictly comply with the briefing schedule set forth under the Discover Master Order for all future discovery motions
unless an alternative procedure is agreed upon by the parties and approved by the Discovery Master or the Court.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___13___

PAGE ___89___

1    But Mattel's allegations in support of its RICO counterclaim turn on

2    misappropriation of trade secrets and confidential information, and make no

3    mention of improper transfers of funds or any other predicate act similar to MGA's

4    purported business transactions with any of the Financing Entities.[15]  Accordingly,

5    these financial transactions are not a "continuation" of the "pattern" of conduct

6    Mattel alleges in very precise detail in its RICO counterclaim.  (*Asdourian v.*

7    *Konstantin*, 77 F. Supp. 2d 349, 358 (E.D.N.Y. 1999) [cited by Mattel and stating

8    RICO claimant must show "[a]n interrelationship between acts, suggesting the

9    existence of a pattern, [which] may be established...[by] proof of their temporal

10   proximity, or common goals, or similarity of methods, or repetitions' (citation

11   omitted)]; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989) [RICO claims

12   must be supported by a "pattern" of activity and "the mere fact that there are a

13   number of predicates is no guarantee that they fall into any arrangement or order.

14   A pattern is not formed by sporadic activity ... Instead, the term 'pattern' itself

15   requires the showing of a relationship between the predicates" (quotations and

16   internal citations omitted)]).

17       At this stage, Mattel has failed to demonstrate a relationship between the

18   predicate acts alleged by Mattel in its Counterclaims – which were bound together

19   by a purported scheme to misappropriate Mattel's trade secrets – and the

20   //

21   //

22   //

23
24   [15] *See* Mattel's Second Amended Answer and Counterclaims ("Counterclaims"), p. 55-62, ¶ 90 [alleging the MGA
     Parties and other counter-defendants "for the purpose of executing and attempting to execute the scheme to
25   improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information" committed
     various predicate acts], ¶ 91 [alleging the MGA Parties and other counter-defendants "shared the common purpose of
26   enabling MGA to obtain confidential, proprietary and otherwise valuable Mattel property through improper means in
     order to assist MGA in illegally competing with Mattel"], ¶ 92 [alleging the enterprises are continuing enterprises
27   because they are "designed to and did unlawfully acquire the confidential business information and property of
     Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and
28   business methods, practices, and processes"], ¶ 93(a) [alleging mail fraud committed in furtherance of scheme to
     "defraud Mattel of its confidential trade secret information and property"], ¶ 93(b) [alleging wire fraud "defraud
     Mattel of its confidential and trade secret information and property"], and ¶ 102 [the MGA Parties and other counter-
     defendants "schemed to defraud Mattel and steal its property and trade secret information"].

EXHIBIT _____ 13

PAGE _____ 90

1   transactions Mattel seeks to investigate here.[16]

2        Also, the RICO counterclaim (like the other counterclaims to be adjudicated

3   in Phase 2) was asserted in July, 2007 – more than a year before either Omni 808

4   Investors, LLC or Vision Capital, LLC came into existence – and therefore

5   apparently did not encompass the activities of those entities or the transactions

6   which are the subject of the Financing Discovery.  While that fact might be

7   overcome by a showing that the Financing Entities were created or used to further a

8   scheme to carry on misconduct that is the subject of Phase 2, Mattel did not

9   demonstrate that such is the case in its briefs and supporting evidence.

10       In sum, absent some argument or evidence demonstrating a nexus between

11  the predicate activities alleged in the RICO counterclaim, on the one hand, and the

12  transactions and other matters which are the subject of the Financing Discovery, on

13  the other hand, there has been no showing by Mattel that the Subpoenas to the

14  Financing Entities are reasonably calculated to lead to the discovery of admissible

15  evidence regarding the RICO counterclaim.

16            b.    **Mattel's Disgorgement Remedy**

17       Next, Mattel asserts that the Subpoenas to the Financing Entities seek

18  information relevant to its remedy of disgorgement, which is an available remedy

19  for Mattel's Phase 2 counterclaim for misappropriation of trade secrets.  Mattel

20  argues:

21

---

22  [16] This conclusion is consistent with the case cited by Mattel – *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372
23  (W.D.N.Y. 2006).  There, the plaintiffs "asserted broad civil RICO claims against the Nicolo defendants predicated,
    among other violations, upon alleged money laundering violations.  Specifically, the Complaint alleges that the
24  Nicolo defendants and the other named defendants constituted an enterprise as defined in the RICO statute that was
    engaged in a pattern of racketeering activity, including mail and wire fraud and, more importantly for purposes of
25  this motion, money laundering." (*Id.*, at 375).  "The alleged money laundering consisted of repeated deposits into
    various financial institutions in order both to promote and carry on the unlawful activity – that is, by paying and
26  depositing kickbacks to certain members of the enterprise – and to conceal and attempt to conceal the proceeds, their
    nature, source and location – that is, by transferring funds between defendants and between various accounts
27  maintained by those defendants." (*Id.* [emphasis added]).  Thus, inquiry into the defendants' finances was
    appropriate as it was likely to reveal activity related to the alleged predicate acts.  Here, on the other hand, Mattel has
28  not alleged any sort of financial scheme which would support inquiry into the MGA Parties' financial transactions
    with third parties.  .

EXHIBIT         13

PAGE            91

For purposes of establishing disgorgement, Mattel must take into account money transferred from MGA and Isaac Larian, regardless of the manner in which it was transferred. Mattel is entitled to discovery that shows all assets siphoned from MGA or Isaac Larian . . . . By these subpoenas, Mattel seeks evidence to prove the amount the defendants must disgorge. Money that properly belonged to Mattel was transferred from MGA or Isaac Larian to an entity controlled by them.

(Motion, pp. 20:1 – 4, 21:12 – 14).

While the foregoing statements may be true as a general proposition, none of the Financing Entities is alleged to have "received money that properly belonged to Mattel." To the contrary, Mattel asserts that the Financing Entities are creditors of MGA. Therefore, Mattel has not demonstrated how any of the categories of documents sought from the Financing Entities would aid it in ascertaining the amount defendants must disgorge.

      **c. Phase 2 Damages**

Mattel's third argument in favor of enforcement of the Subpoenas is that they "seek documents relevant to MGA's financial condition" and other "factors relevant to an award of punitive damages." (Motion to Compel, p. 21:19 – 22). Depending on the particular scope of the document request, such discovery from Omni 808 Investors, LLC may be appropriate in connection with Phase 2 because any information evidencing MGA's indebtedness to Omni 808 Investors, LLC from the purchase of the alleged Wachovia debt or direct loans to MGA is relevant to MGA's net worth (and hence punitive damages).[17] As the Court noted in its February 11, 2009 ruling:

I can see tremendous overlap between, for example, discovery on

---

[17] The Discovery Master's analysis is fundamentally different for OmniNet Capital, LLC and Vision Capital, LLC because neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc. (Motion to Compel, pp. 9 and 10). To the contrary, Mattel concedes that "OmniNet [Capital, LLC] is not the secured party, and thus presumably not the actual debt purchaser/lender. Rather, the company holding the security interest is Omni 808 [Investors, LLC] . . . [which] appears to be owned funded by a company called Vision Capital, LLC." (Id.) Because it admits that OmniNet Capital, LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to show that the information sought from those entities has any bearing on MGA's financial condition.

EXHIBIT   13

PAGE   92

1        financial condition of the company as it relates to damages in the
2   Phase 2 and also issues that the receiver is looking at. And
     without making a ruling on any of this, I would not suggest for a
3   moment that these are mutually exclusive categories.

(Tr., 101:3 - 8)

4       Mattel argues that the necessary connection between the Financing

5   Discovery and Phase 2 damages exists because the Financing Entities have acquired

6   a security interest in MGA's assets, which, in turn, affects MGA's financial

7   condition. Specifically, Mattel argues that Omni 808 Investors, LLC is:

8

9        directly involved in providing funding to MGA in exchange for a
     security interest. Such funding, and security interests, are in and
10   of themselves directly relevant to the financial condition of the
     MGA Parties, including the amount of the security interests, the
11   terms and conditions of the funding, and the rate of funding. . . .

12   (Motion to Compel, p. 22: 13 – 17).

13       The Discovery Master agrees that such limited information, as it relates to

14   the purchase by Omni 808 Investors, LLC of the debt obligation previously held by

15   Wachovia Bank, is reasonably calculated to lead to the discovery of admissible

16   evidence concerning Phase 2 issues, including the calculation of MGA's net worth

17   for purposes of calculating punitive damages.[18] Accordingly, Mattel's motion to

18   compel responses from Omni 808 Investors, LLC is granted with respect to

19   documents relating to (1) the existence of any debt owed by MGA Entertainment,

20   Inc. to Omni 808 Investors, LLC and (2) any communications between Omni 808

21   Investors, LLC and the MGA parties regarding any such indebtedness.

22       The problem, however, is the vast majority of the document requests set forth

23   in the Subpoena propounded on Omni 808 Investors, LLC are not narrowly tailored

24   to obtain information demonstrating the amount and nature of MGA's indebtedness

25   (and hence net worth) or communications regarding any such debt,[19] but instead

26     [18] During oral argument, counsel for MGA represented (and counsel for Mattel seemed to agree) that the Court
27   deferred discovery regarding the Wachovia debt until the middle of the Phase 1 trial. (Reporter's Transcript of
     Proceedings, March 4, 2009, pp. 72, 85 and 86). The extent to which that damages information was obtained directly
28   from Wachovia, as opposed to MGA, is not clear from the record provided to the Discovery Master.

  [19] Nor did Mattel move to compel MGA to produce this information in the first instance.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____13_____

PAGE _____93_____

1   would require the Financing Entities to produce virtually every document in their

2   possession regarding their formation, operations, and history of transactions.

3   Among other things, the Subpoenas to the Financing Entities seek:

4         •   All records that "substantiate transfers of assets" by the Financing

5             Entities "to other entities, individuals, and/or parties, within the U.S.

6             and outside of the U.S." (Exhibits 27-29 to Supplemental Declaration

7             of Jon D. Corey In Support Of Mattel, Inc.'s Reply In Support Of

8             Motion To Compel Production of Documents Responsive to Third-

9             Party Subpoenas, Attachment A, ¶ 16);

10        •   All documents "detailing or setting forth the relationship" between

11             each of the Financing Entities and other non-parties (*Id.* at ¶¶ 6-10);

12        •   All documents referring or relating to the "all contributions, loans and

13             any sources of funding" for the Financing Entities (*Id.* at ¶ 13);

14        •   All documents referring or relating to the "source of funding" of other

15             non-parties (*Id.* at ¶ 16);

16        •   All documents showing detail of "all loan facilities" referring or

17             relating to the Financing Entities and other non-parties (*Id.* at ¶ 14);

18        •   All documents referring or relating to "transactions involving any

19             compensation, loans, advances, payments, fees or any other form of

20             consideration" paid to other non-parties (*Id.* at ¶ 15);

21        •   All "communications" referring or relating to the Financing Entities

22             and other non-parties (*Id.* at ¶ 17).

23      Accordingly, the Discovery Master concludes that most of the categories of

24   documents in the Subpoenas are overbroad and not reasonably calculated to lead to

25   the discovery of admissible evidence with respect to Phase 2 issues, as detailed in

26   Section IV below (entitled "Disposition").

27   //

28

EXHIBIT ___13___

PAGE ___94___

### d.   Credibility Of MGA Witnesses

Mattel's fourth argument consists of a single, conclusory paragraph asserting that it is entitled to its discovery in order to determine the credibility of MGA's witnesses. To support this argument, Mattel first states that information is discoverable "if it relates to 'the credibility of any witness.'" (Motion to Compel, p. 23 (citing *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997)).[20] Next, Mattel asserts that "MGA and Larian made statements under oath about their financial condition as well as about the role of Omni 808 and the other non-operating entities in providing MGA with additional funding." (*Id.*) But that is the full extent of Mattel's argument. Mattel does not attempt to show that the specific discovery that it has propounded is reasonably calculated to lead to the discovery of the evidence that it contends would be admissible.

. Discoverable information generally includes evidence relevant to the credibility of a party or a key witness. (See *Paulsen v. Case Corp.*, 168 F.R.D. 285, 287-288 (C.D. Cal. 1996); see also *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 603-604 (C.D. Cal. 1995); *U.S. v. City of Torrance*, 164 F.R.D. 493, 495 (C.D. Cal. 1995)). If Mattel's discovery were reasonably calculated to lead to the discovery of such information, then it might be permissible. (*Id.* ["Rule 26 is liberally interpreted to permit wide ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence."]) But Mattel has not taken any steps to connect its discovery to such evidence. As discussed above, Mattel bears the burden of demonstrating that its discovery is reasonably calculated to lead to the discovery of admissible evidence. Here, Mattel has only stated that credibility evidence can be admissible and that credibility is at issue in this case – without referring at all to specific categories of documents in the Subpoenas or

---

[20] The Discovery Master notes that the case cited by Mattel does not actually discuss or apply this proposition.

EXHIBIT     13

PAGE     95

1  linking those categories of documents to prior or anticipated testimony of MGA's

2  witnesses.  Simply stating that credibility evidence is discoverable does nothing

3  toward meeting Mattel's burden to demonstrate that the particular discovery at issue

4  here is reasonably calculated to lead to the discovery of such evidence.

5           **e.    MGA's Unclean Hands**

6       Mattel next argues in its Motion to Compel that MGA has asserted an

7  unclean hands defense in response to Mattel's Phase 2 claims, and consequently

8  Mattel is entitled to discover whether the MGA Parties are currently "engaging in

9  sham and fraudulent financial transactions such as concealing profits" to preclude

10  MGA "from invoking the unclean hands defense themselves." (Motion, pp. 23 -

11  24.) But this argument does not apply to the Financing Entities because, as

12  discussed above, Mattel does not claim that the Financing Entities have "received

13  money that properly belonged to Mattel" or otherwise used those entities to conceal

14  profits.  To the contrary, Mattel asserts that the Financing Entities are creditors of

15  MGA.

16       Regardless, Mattel's theory is that, even if Mattel has unclean hands, MGA

17  may not assert that defense unless MGA itself is blameless.  (*Id.*, at 24 [a "party

18  asserting an equitable defense, however, must itself have 'clean hands.'"]).

19  Mattel's statement of the law is correct as far as it goes.  But, as the Ninth Circuit

20  has stated, "'unclean hands does not constitute 'misconduct in the abstract,

21  unrelated to the claim to which it is asserted as a defense.'" (*Jarrow Formulas, Inc.*

22  *v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)). "It is fundamental to

23  [the] operation of the doctrine that the alleged misconduct . . . relate directly to the

24  transaction concerning which the complaint is made." (*Dollar Sys., Inc. v. Avcar*

25  *Leasing Sys., Inc.* 13 F.2d 165, 173 (9th Cir. 1989)). Accordingly, courts will not

26  allow discovery based on an unclean hands defense where the "allegations of

27  misconduct do not relate to the transactions... forming the basis for the

28  []complaint." (*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D.Cal.

EXHIBIT ___13___

PAGE ___96___

1   1996)).

2      Here, Mattel does not link any of the categories of documents referenced in

3   the Subpoenas (which involve the creation and operation of the Financing Entities

4   beginning with their formation in the summer of 2008) to any of the conduct at

5   issue in Phase 2 (which involves such matters as the alleged theft of trade secrets in

6   Mexico in 2004 and other conduct unrelated to the relationship between the

7   Financing Entities and MGA). Accordingly, the Financing Discovery is not

8   reasonably calculated to lead to the discovery of admissible evidence regarding

9   MGA's alleged unclean hands in connection with the matters to be adjudicated in

10   Phase 2,

11          **f.     Mattel's Unfair Competition Counterclaim**

12      As Mattel acknowledges, California's Unfair Competition Law, Business &

13   Professions Code §§ 17200 et seq. (the "Unfair Competition Law") encompasses

14   "'anti–competitive business practices as well as injuries to consumers, and has as a

15   major purpose the preservation of fair business competition.'" (Opp. at 24:25 –

16   25:2, quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone*

17   *Co.* (1999) 20 Cal.4th 163, 180)). However, Mattel's papers do not sufficiently

18   demonstrate that the documents sought from the Financing Entities involve "anti-

19   competitive business practices," "injuries to consumers," or anything affecting

20   consumers or the public at all. Instead, Mattel simply asserts, without any

21   supporting analysis, that MGA has violated the Unfair Competition Law by

22   "manipulating the sources of [its own] funding" (presumably the Financing

23   Entities). That allegation, even if true, does not appear to involve the "unlawful,

24   unfair or fraudulent" marketing or sale of anything and therefore does not fall

25   within the ambit of the Unfair Competition Law.

26   //

27   //

28   //

AREN1 FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____13____

PAGE ____97____

g.  **Summary Of The Discovery Master's Findings With
Respect To The Subpoenas Directed To The Financing
Entities**

For the foregoing reasons, the Discovery Master finds that, based on the record before him, Mattel has failed to sufficiently articulate the necessary connection between most of the Financing Discovery and any Phase 2 issue. Moreover, while there is a connection between the Financing Discovery and some of the Phase 2 issues referenced (i.e., MGA's financial condition and its bearing on Mattel's claim for punitive damages), Mattel has failed to demonstrate that the Subpoenas meet the standard set forth in Rule 26(b)(2) and that all of the requested discovery is permissible in light of the case law interpreting Rules 26 and 45.

Accordingly, Mattel's motion to compel the Financing Entities to comply with the Subpoenas is **GRANTED** in part and **DENIED** in part.

2.  **Subpoenas To The Transferee Entities**

In their briefs regarding the enforceability of the Subpoenas, Mattel and MGA do not, as a general rule, make a distinction between the Financing Entities and the Transferee Entities, but rather direct the same arguments to both groups collectively.  However, there are important distinctions between the two groups, including, without limitation, that: (1) the Transferee Entities appear to be affiliated with – if not wholly owned by – Larian; (2) the Transferee Discovery involves the sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest pursuant to the Court's December 3, 2008 ruling; and (3) the Subpoenas seek some documents relevant to Phase 2 issues which presumably cannot be obtained from MGA, namely the Transferee Entities' contracts with, and records of sales to, third parties purchasing the Bratz products.  Accordingly, in ruling on the Subpoenas directed to the Transferee Entities, the Discovery Master's analysis of certain of the parties' above-referenced arguments differs, as follows.

//

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 25 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  13

PAGE  98

a.   **Non-Party Considerations**

To begin with, the distinction between a party and non-party here is less compelling given the MGA parties' apparent admission that the Transferee Entities are single purpose entities created and controlled by Larian (who is, of course, himself a party) to dispose of inventory that is the subject of this litigation. Further, the MGA parties presumably do not have custody of the sales contracts whereby IGWT Group LLC sold Bratz products to third parties. The Discovery Master also notes that counsel for the Transferee Entities has submitted a declaration stating that there are "hundreds of sales contracts at issue, and as such, thousands of documents responsive to Mattel's requests." (Declaration of Jeffrey B. Valle dated February 17, 2009 ["Valle Decl."], ¶ 7). The unavailability of these relevant documents from any other source weighs heavily in favor of enforcing the Subpoena to IGWT Group LLC.

b.   **Relevance To Phase 2 Issues**

1.   **Phase 2 Damages**

As mentioned above, Mattel argues that the Subpoenas "seek documents relevant to MGA and Larian's financial condition, net worth, and ability to pay" on the ground that such information is relevant to Mattel's Phase 2 damages claims, including Mattel's claim for punitive damages.

For the reasons previously discussed, the Discovery Master finds that, with respect to the Financing Entities, the discovery requests were, for the most part overbroad, and/or not sufficiently linked to Phase 2 issues. However, the Discovery Master's analysis is necessarily different with respect to entities which were created and apparently wholly owned and/or controlled by Larian (a defendant in Phase 2), and which are admittedly selling inventory which generate revenues in which Mattel has an interest. Specifically, Mattel contends that Larian has caused MGA to sell the inventory at a deep (80%) discount to the Transferee Entities. This practice, if true, limits MGA's profits (which go to MGA's balance sheet, and ultimately

EXHIBIT _____ 13
PAGE _____ 99

1    affects MGA's net worth) while at the same time allowing Larian to capture

2    additional profits which otherwise would have been realized by MGA and reflected

3    on MGA's balance sheet).  Accordingly, the Discovery Master finds that most of

4    the documents Mattel seeks to subpoena from the Transferee Entities properly

5    relate to Phase 2 issues, as specified in Section IV below.[21]

6                        **2.    Mattel's Unfair Competition Counterclaim**

7           Given MGA's admissions regarding Larian's ownership/control of the

8    Transferee Entities, coupled with their sale of inventory purchased from MGA, the

9    Discovery Master finds that many of the documents requested from the Transferee

10   Entities are also arguably related to a "fraudulent," "unlawful," or "unfair" business

11   practice within the meaning of the Unfair Competition Law and the scope of

12   Mattel's Counterclaims.  Among other things, the Court's December 3, 2008 order

13   imposes a constructive trust on the proceeds of MGA's sale of the subject

14   inventory.  If, as Mattel argues, MGA's sale of that inventory to the Transferee

15   Entities constitutes a scheme on the part of Larian to enrich himself by depriving

16   Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then

17   such conduct would constitute an unlawful attempt to circumvent the Court's order

18   and arguably render the transaction between MGA and the Transferee Entities an

19   anti-competitive business practice that is unlawful, unfair or fraudulent to other toy

20   manufacturers, including Mattel.  Therefore, such alleged misconduct, if proven,

21   could violate the Unfair Competition Law.

22          Moreover, although Mattel asserted its counterclaim for violation of the

23   Unfair Competition Law prior to the alleged misconduct (and long before the

24   Transferee Entities came into existence), Mattel phrased its allegations broadly

25

26   [21] The Discovery Master notes that IGWT 826 Investments is registered at the home address of Larian's sister and
     brother-in-law, indicating that some of Larian's relatives may be involved in the ownership or operation of the
27   Transferee Entities.  Accordingly, the Discovery Master has specified in some instances that the production of
     documents shall include those referencing not only Larian, but also his spouse, his children, his siblings, or their
     spouses, or any entity or person affiliated with them.  However, the Discovery Master has stopped short of ordering
28   the production of documents relating to any other entities, individuals "within the U.S. and outside the U.S.," as
     requested in Category 6 of each of the Subpoenas directed to the Transferee Entities.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1   enough to potentially encompass subsequent acts of unfair competition which

2   perpetuate or extend the misconduct alleged in the Counterclaims.  Unlike Mattel's

3   RICO counterclaim, Mattel's Twelfth Counterclaim for Unfair Competition does

4   not purport to rest on a list of enumerated, factually detailed and carefully defined

5   acts, but rather is phrased broadly to cover "unlawful, unfair and/or fraudulent acts

6   of unfair competition" which include, "without limitation" certain illustrative

7   examples.  (Counterclaims, p. 74, ¶ 165).

8        Of course, the Discovery Master cannot predict whether the Court will

9   ultimately deem Mattel's unfair competition counterclaim to be sufficiently elastic

10  to encompass MGA's alleged misuse of the Transferee Entities or whether Mattel

11  will seek (and the Court permit) amendment of the counterclaim to expressly

12  reference such alleged misconduct.  Nevertheless, in light of the fact that the

13  discovery need only appear reasonably calculated to lead to the discovery of

14  admissible evidence, the Discovery Master finds that certain aspects of the

15  Subpoenas are sufficiently related to Mattel's Phase 2 unfair competition claim.

16            c.    **Summary Of The Discovery Master's Findings With**

17                 **Respect To The Subpoenas Directed To The**

18                 **Transferee Entities**

19        As set forth above, the Discovery Master finds that Mattel has sufficiently

20  articulated a connection between some of the Transferee Discovery and its Phase 2

21  claims.  Accordingly, Mattel's motion to compel the Transferee Entities to comply

22  with the Subpoenas is **GRANTED** in part and **DENIED** in part.

23  IV.  **Disposition**

24       1.    The Motion to Quash filed by MGA is **DENIED**.

25       2.    Mattel's Motion to Compel the Financing Entities to produce

26  documents responsive to the Subpoenas is **DENIED** with respect to OmniNet

27  Capital, LLC and Vision Capital, LLC.

28       3.    Mattel's Motion to Compel Omni 808 Investors, LLC to produce

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 28 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___13___

PAGE ___101___

1  documents responsive to the Subpoena propounded on it is **GRANTED** in part and

2  **DENIED** in part, as follows:

3         a.   Requests 1 through 3, 13, 15, and 17:  The Motion is granted

4  with respect to documents relating to (1) the existence of any debt owed by MGA

5  Entertainment, Inc. to Omni 808 Investors, LLC, including any debt purchased

6  from Wachovia Bank, and (2) any communications between Omni 808 Investors,

7  LLC and the MGA parties regarding any such indebtedness.  The motion is denied

8  regarding any other documents sought by these requests.

9         b.   Requests 4 through 12, 14 and 18:  The Motion is denied.

10      4.   Mattel's Motion to Compel the Transferee Entities to produce

11  documents responsive to the Subpoenas is **DENIED** as to Request 6 propounded to

12  IGWT Group LLC and Request 6 propounded to IGWT 826 Investments, LLC.

13      5.   Mattel's Motion to Compel the Transferee Entities to produce

14  documents responsive to the Subpoenas is **GRANTED**, as follows:

15                      **Subpoena To IGWT Group LLC**

16         a.   Request 1:  The Motion is granted with respect to documents

17  relating to the purchase by, or transfer to, IGWT Group LLC of any items of value,

18  including Bratz products, from MGA, Larian, his spouse, his children, his siblings,

19  or their spouses, or any entity or person affiliated with them.

20         b.   Request 2:  The Motion is granted

21         c.   Request 3:  The Motion is granted with respect to documents

22  relating to any ownership interest by Larian, his spouse, his children, his siblings,

23  or their spouses, or any entity or person affiliated with them.

24         d.   Request 4:  The Motion is granted with respect to documents

25  relating to any sources of funding by Larian, his spouse, his children, his siblings,

26  or their spouses, or any entity or person affiliated with them.

27         e.   Request 5:  The Motion is granted with respect to documents

28  relating to any compensation, loans, advances, payments, fees or any other form of

EXHIBIT _____13_____

PAGE _____102_____

1  consideration paid by IGWT Group LLC to Larian, his spouse, his children, his

2  siblings, or their spouses, or any entity or person affiliated with them.

3          f.      Request 7: The Motion is granted.

4          **Subpoena To IGWT 826 Investments LLC**

5          a.      Request 1: The Motion is granted with respect to documents

6  relating to the purchase by, or transfer to, IGWT 826 Investments LLC of any items

7  of value, including Bratz products, from MGA, Larian, his spouse, his children, his

8  siblings, or their spouses, or any entity or person affiliated with them.

9          b.      Request 2: The Motion is granted

10         c.      Request 3: The Motion is granted with respect to documents

11  relating to any ownership interest by Larian, his spouse, his children, his siblings,

12  or their spouses, or any entity or person affiliated with them.

13         d.      Request 4: The Motion is granted with respect to documents

14  relating to any sources of funding by Larian, his spouse, his children, his siblings,

15  or their spouses, or any entity or person affiliated with them.

16         e.      Request 5: The Motion is granted with respect to documents

17  relating to any compensation, loans, advances, payments, fees or any other form of

18  consideration paid by IGWT 826 Investments LLC to Larian, his spouse, his

19  children, his siblings, or their spouses, or any entity or person affiliated with them.

20         f.      Request 7: The Motion is granted.

21      5.      All non-privileged documents referenced in Paragraphs 3 and 5, above,

22  shall be produced within 30 days of this Order, subject to any applicable

23  confidentiality designations available under the Protective Order.

24      6.      Nothing in this Order should be deemed to prevent Mattel from

25  seeking discovery from the MGA parties of documents encompassed by the

26  Subpoenas upon the showing of a sufficient nexus between the particular discovery

27  requests and legitimate Phase 2 issues, and subject to any applicable objections.

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT     13

PAGE     103

1   Dated:  March 10, 2009

2

3

4                                              By:        /s/ Robert C. O'Brien

5                                                         ROBERT C. O'BRIEN
                                                         Discovery Master
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 31 -                              ORDER NO. 3
                                   [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____13____

PAGE ____105____