# EXHIBIT 1

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-2727 |
| vs. | MATTEL, INC.'S SEVENTH SET OF INTERROGATORIES |
| MATTEL, INC., a Delaware corporation, | Discovery Cut-off: January 14, 2008<br>Pre-trial Conference: April 7, 2008<br>Trial Date: April 29, 2008 |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | Discovery Cutoff: March 3, 2008<br>Final Pretrial Conf.: June 2, 2008<br>Trial Date: July 1, 2008 |

PROPOUNDING PARTY:        Mattel, Inc.

RESPONDING PARTIES:       MGA Entertainment, Inc., Isaac Larian, Carter

Bryant, MGA Entertainment (HK) Limited, MGAE

de Mexico S.R.L. de C.V., and Carlos Gustavo

Machado Gomez

SET NO.:                  SEVENTH

EXHIBIT ___1___
PAGE ___4___

10-25

Pursuant to <u>Federal Rule of Civil Procedure</u> 33, plaintiff Mattel, Inc. ("Mattel") hereby requests that MGA Entertainment, Inc., Isaac Larian, Carter Bryant, MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V., and Carlos Gustavo Machado Gomez (collectively, "the Responding Parties") individually answer the following Interrogatories separately and fully, in writing and under oath, within 30 days after service hereof.  The Responding Parties shall be obligated to supplement their responses to the Interrogatories at such times and to the extent required by the <u>Federal Rules of Civil Procedure</u>.

## Definitions

1.    "YOU" and "YOUR" mean each of the Responding Parties.

2.    "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, experts, divisions, AFFILIATES (including without limitation MGA Entertainment (HK) Limited and MGAE de Mexico S.R.L. de C.V.), predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.  Without limiting the foregoing, "MGA" includes the entities known as ABC International Traders or ABC International Traders, Inc.  For purposes of the these Interrogatories, "MGA" does not include BRYANT.

3.    "MATTEL" means Mattel, Inc., its current employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, AFFILIATES, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

4.    "AFFILIATES" means any and all corporations, proprietorships, d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or indirectly, in whole or in part, own or control, are under common ownership or control with, or are owned or controlled by a PERSON, party or entity, including without limitation each parent, subsidiary and joint venture of such PERSON, party or entity.

07209/2264383.107209/22
63218.1

EXHIBIT  l
PAGE  5

-2-

5.     "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

6.     "SOLD," "SELL" or "SALE" means to distribute, market, license, sell, offer to sell, or convey or transfer in any way for compensation.

7.     "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated therewith.

8.     "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u> and <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved.  Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

9.     "REFER OR RELATE TO" a given subject matter means relate to, refer to, constitute, contain, embody, depict, incorporate, reflect, evidence, identify,

07209/2264383.107209/22
63218.1

EXHIBIT   1   -3-

PAGE   6

1  state, deal with, comment on, respond to, describe, analyze, support, refute, contradict,

2  or in any way pertain to that subject matter, either directly or indirectly.

3          10.    "IDENTIFY" or "IDENTITY" means the following:

4              (a)    with reference to an individual or individuals, means to state,

5  fully and separately as to each, such individual's full name, any known business title,

6  current or last known business affiliation, current or last known residential address,

7  current or last known business address, current or last known relationship to MGA, and

8  current or last known telephone number.

9              (b)    with reference to an entity or entities, means to state, fully and

10  separately as to each, such entity's full name, state (or country) of incorporation or

11  organization, present or last known address, and present or last known telephone

12  number.

13              (c)    with reference to a product or packaging, means to state, fully

14  and separately as to each, the full name of the product or, in the case of packaging, the

15  product or item with which the packaging is used; the SKU number or any other

16  applicable unique identifier or designation of the product or, in the case of packaging,

17  the product or item with which the packaging is used; the time period during which the

18  product was, has been or will be SOLD or, in the case of product packaging, the time

19  period during which the product packaging was, has been or will be used; and the

20  IDENTITY of each PERSON who has licensed from YOU the right to SELL such

21  product or, in the case of product packaging, the IDENTITY of the PERSON who has

22  licensed from YOU the right to use the packaging or to SELL the products with which

23  the packaging is used.

24              (d)    with reference to any other DOCUMENT or DOCUMENTS,

25  means to describe each DOCUMENT by Bates number.   In the event that a

26  DOCUMENT does not have a Bates number, IDENTIFY means, with respect to each

27  such DOCUMENT, to provide a complete description of it such that it may be the

28  subject of a request for the production of documents, including by stating the date,

07209/2264383.107209/12
63218.1

EXHIBIT       1       -4-

PAGE       7

1  identity of the author, addressee(s), signatories, parties, or other PERSONS identified
2  therein, its present location or custodian and a description of its contents.

3          (e)     with reference to a trade dress, means to describe, fully and
4  separately, each and every element that makes up the claimed trade dress and to
5  IDENTIFY each and every product or product packaging SOLD by YOU or YOUR
6  licensees that embodies, uses or employs the claimed trade dress.

7          (f)      with reference to the protectibility of a trade dress, means to
8  state, fully and separately, all facts that support YOUR contention that such trade dress
9  is inherently distinctive or has acquired secondary meaning and that such trade dress is
10  famous if YOU so contend that such trade dress is famous; the date that YOU contend
11  such trade dress acquired secondary meaning and, if YOU contend the trade dress is
12  famous, the date on which YOU contend that it became famous; all facts that support
13  YOUR contention that such trade dress is not functional; and, if YOU are relying on
14  advertising to establish secondary meaning or fame, the dollar amounts, by year, spent
15  by YOU or anyone acting on YOUR behalf on advertising that features such trade
16  dress.

17          11.     "Any" as used in these interrogatories includes the word "all," and
18  the word "all" as used in these interrogatories includes the word "any."

19          12.     The singular form of a noun or pronoun includes within its meaning
20  the plural form of the noun or pronoun so used, and vice versa; the use of the masculine
21  form of a pronoun also includes within its meaning the feminine form of the pronoun so
22  used, and vice versa; the use of any tense of any verb includes also within its meaning
23  all other tenses of the verb so used, whenever such construction results in a broader
24  request for information; and "and" includes "or" and vice versa, whenever such
25  construction results in a broader disclosure of documents or information.

26
27
28

1 **Instructions**

2       A.   When   an   interrogatory   requests   disclosure   of   a

3 COMMUNICATION or other information as to which YOU claim any privilege or

4 protection as a ground for nondisclosure, identify each PERSON who participated in or

5 had knowledge of the COMMUNICATION or other information and provide the

6 following:

7           (i)     the privilege or protection that YOU claim precludes disclosure;

8           (ii)    the subject matter of the COMMUNICATION or information

9                    (without revealing the content as to which the privilege is claimed);

10                    and

11           (iii)   any additional facts or grounds on which YOU base YOUR

12                    claim of privilege or protection.

13       B.    When an interrogatory requests that YOU provide information,

14 YOU are required to supply all information known by or available to YOU or YOUR

15 employees, officers, directors, agents, representatives, attorneys and experts. If YOU

16 cannot completely answer the interrogatory after making diligent efforts to do so,

17 please so state. Then describe in detail all efforts made to answer the interrogatory;

18 identify every PERSON involved in such efforts; and state the additional information

19 YOU need, if any, to respond completely to the interrogatory.

20

21

22

23

24

25

26

27

28

07209/2264383.107209/22
63218.1

EXHIBIT ___/___   -6-

PAGE _____9_____

MATTEL'S SEVENTH SET OF INTERROGATORIES

**Interrogatories**

INTERROGATORY NO. 48:

Separately IDENTIFY each trade dress that YOU contend MATTEL has copied, infringed or diluted or that is otherwise the subject of YOUR claims, defenses or allegations in THIS ACTION.

INTERROGATORY NO. 49:

For each trade dress identified in response to Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL product, packaging or other matter that YOU contend copies, infringes or dilutes such trade dress, including without limitation by describing fully and separately, for each such MATTEL product, packaging or other matter, each and every element of the claimed trade dress that YOU contend MATTEL has copied, infringed or diluted.

INTERROGATORY NO. 50:

For each trade dress identified in response to Interrogatory No. 48, separately and completely IDENTIFY all facts that support YOUR contention that such trade dress is protectible, all DOCUMENTS that REFER OR RELATE to the foregoing and all PERSONS with knowledge of the foregoing.

DATED:  October 25, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                  By_____
                                     Michael T. Zeller
                                     Attorneys for Plaintiff
                                     Mattel, Inc.

07209/2264383.107209/22
63218.1

EXHIBIT ___1___
PAGE ___10___          -7-

MATTEL'S SEVENTH SET OF INTERROGATORIES

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On October 25, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S SEVENTH SET OF INTERROGATORIES** on the parties in this action as follows:

Thomas Nolan, Esq.
**SKADDEN ARPS SLATE MEAGHER & FLOM, LLP**
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Mark E. Overland, Esq.
David C. Scheper, Esq.
Alexander H. Cote
**OVERLAND BORENSTEIN SCHEPER & KIM LLP**
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071-3144

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
**KEKER & VAN NEST, LLP**
710 Sansome Street
San Francisco, CA 94111

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 25, 2007, at Los Angeles, California.

NOW LEGAL -- Dave Quintana

EXHIBIT 1
PAGE 11

07209/2263102.1                        -1-

# EXHIBIT 2

1 | THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 300 South Grand Avenue
Los Angeles, California 90071-3144
3 | Telephone:  (213) 687-5000
Facsimile:  (213) 687-5600
4 | E-mail:    tnolan@skadden.com

5 | RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | Four Embarcadero Center, Suite 3800
San Francisco, CA  94111
7 | Telephone:  (415) 984-6400
Facsimile:  (415) 984-2698
8 | E-mail:      rkennedy@skadden.com

9 | Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
10 | (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11 |                    UNITED STATES DISTRICT COURT

12 |                   CENTRAL DISTRICT OF CALIFORNIA

13 |                             EASTERN DIVISION

14 | CARTER BRYANT, an individual        )  CASE NO. CV 04-9049 SGL (RNBx)
                                        )
15 |                  Plaintiff,         )  Consolidated with Case No. 04-9059
                                        )  and Case No. 05-2727
16 |            v.                       )
                                        )  **MGA ENTERTAINMENT (HK)**
17 | MATTEL, INC., a Delaware            )  **LTD.'S OBJECTIONS AND**
     corporation                        )  **RESPONSES TO MATTEL**
18 |                                     )  **INC.'S SEVENTH SET OF**
                  Defendant.            )  **INTERROGATORIES**
19 |                                     )
                                        )
20 |                                     )  Honorable Stephen G. Larson
                                        )  Courtroom 1
21 |                                     )
                                        )
22 | Consolidated with MATTEL, INC. v.   )  Discovery Cut-Off:  March 3, 2008
     BRYANT and MGA                      )
23 | ENTERTAINMENT, INC. v.              )
     MATTEL, INC.                        )
24 |                                     )

25 | **PROPOUNDING PARTY:**     **MATTEL, INC. ("MATTEL")**

26 | **RESPONDING PARTY:**     **MGA ENTERTAINMENT (HK) LTD.**

27 | **SET NUMBER:**             **SEVENTH**

28 |

EXHIBIT _____2_____

PAGE _____12_____

# PRELIMINARY STATEMENT

The General Response set forth herein applies to all responses that MGA Entertainment (HK) Ltd. ("MGA HK") is providing in response to these interrogatories or may in the future provide in response to any discovery request in this action. The Response is made without waiving, or intending to waive but, on the contrary, expressly reserving:  (a) the right to object, on the grounds of competency, privilege, relevancy or materiality, or any other proper grounds, to the use of the Response, for any purpose in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other interrogatories or other discovery procedures; and (c) the right at any time to revise, correct, add to, or clarify any of the responses propounded herein.

The Response reflects only the present state of MGA HK's discovery regarding the information that Mattel seeks.  Discovery and other investigation or research concerning this litigation are continuing.  It is anticipated that further discovery, independent investigation, and legal research and analysis will supply additional facts and meaning to the known facts, as well as establish entirely new factual conclusions, all of which may lead MGA HK to discover other information responsive to these interrogatories.  MGA HK therefore reserves the right to amend or supplement this Response at any time in light of future investigation, research or analysis, and also expressly reserves the right to rely on, at any time, including trial, subsequently discovered information omitted from this Response as a result of mistake, error, oversight or inadvertence.  MGA HK does not hereby admit, adopt or acquiesce in any factual or legal contention, assertion or characterization contained in the Interrogatories or any particular request therein, even where MGA HK has not otherwise objected to a particular interrogatory, or has agreed to provide information responsive to a particular interrogatory.

No incidental or implied admissions are intended by this Response. These responses should not be taken as an admission that MGA HK accepts or

1

EXHIBIT __2__
PAGE __/3__

1  admits the existence of any facts set forth or assumed by any instruction, definition
2  or interrogatory.

3  ## GENERAL OBJECTIONS

4       MGA HK responds to these interrogatories subject to the following
5  general objections and limitations, each of which is incorporated into each and every
6  response as though fully set forth therein:

7       1.    MGA HK objects to these interrogatories to the extent they seek
8  information that is not subject to disclosure under any applicable privilege, doctrine
9  or immunity, including without limitation the attorney-client privilege, the work
10 product doctrine, the right of privacy, and all other privileges recognized under the
11 constitutional, statutory or decisional law of the United States of America, the State
12 of California or any other applicable jurisdiction.

13      2.    MGA HK objects to these interrogatories to the extent they seek
14 information not relevant to the claims or defenses of any party to this action and not
15 reasonably calculated to lead to the discovery of admissible evidence.

16      3.    MGA HK objects to these interrogatories to the extent they seek
17 information which by reason of public filing or otherwise is already in Mattel's
18 possession or is readily accessible to Mattel.

19      4.    MGA HK objects to these interrogatories to the extent they seek
20 the disclosure of information (1) not currently within its possession, custody or
21 control; (2) that MGA HK cannot locate after a reasonably diligent search; or (3) that
22 refer to persons, entities, or events not known to MGA HK.  Such instructions,
23 definitions, or requests are objectionable where they seek to require more of MGA
24 HK than any obligation imposed by the Federal Rules of Civil Procedure; subject
25 MGA HK to unreasonable and undue annoyance, oppression, burden, and expense;
26 and/or seek to impose upon MGA HK an obligation to investigate or discover
27 information or materials from sources equally accessible to Mattel.

28

EXHIBIT __2__
PAGE __14__

MGA HK'S RESPONSES TO MATTEL INC.'S SEVENTH SET OF INTERROGATORIES    NO. CV 04-9049 SGL (RNBx)
M

1           5.     MGA HK objects to these interrogatories to the extent they are
2 overbroad and unduly burdensome.

3           6.     MGA HK objects to the definitions and instructions to the extent
4 such definitions and instructions purport to enlarge, expand, or alter in any way the
5 plain meaning and scope of any specific term or specific interrogatories on the
6 ground that such enlargement, expansion, or alteration renders such a term or request
7 vague, ambiguous, unintelligible, overly broad, unduly burdensome, and/or
8 uncertain.

9           7.     MGA HK objects to the following definitions in these
10 interrogatories:

11                (a)     MGA HK objects to the definition of the terms
12 "IDENTIFY" or "IDENTITY" (Definitions ¶ 10) as overbroad, unduly burdensome,
13 vague and ambiguous, and oppressive. Mattel's definition of these terms inherently
14 calls for answers to multiple discrete questions or subparts to questions. For
15 example, as those terms are used with reference to a protectibility of a trade dress
16 (Definitions ¶ 10(f)), the use of those terms request at least four different and distinct
17 facts: (a) all facts that support YOUR contention that such trade dress is inherently
18 distinctive or has acquired secondary meaning and that such trade dress is famous;
19 (b) the date that YOU contend such trade dress acquired secondary meaning and, if
20 YOU contend the trade dress is famous, the date on which YOU contend that it
21 became famous; (c) all facts that support YOUR contention that such trade dress is
22 not functional; and (d) if YOU are relying on advertising to establish secondary
23 meaning or fame, the dollar amounts, by year, spent by YOU or anyone acting on
24 YOUR behalf on advertising that features such trade dress. Therefore, any
25 interrogatory that includes or incorporates the terms "IDENTIFY" or "IDENTITY" is
26 necessarily compound, and should be posed as separate interrogatories;

27                (b)     MGA HK also objects to the term "any" (Definitions ¶ 11)
28 on the grounds and to the extent it is overbroad, unduly burdensome, and/or is vague

EXHIBIT   2

PAGE   15

1 | and ambiguous in the context of the interrogatories as written and as those
2 | interrogatories would be plainly understood absent Mattel's definitions;

3 |         (c)    MGA HK objects to the definition of the terms "SOLD,"
4 | "SELL" or "SALE" (Definitions ¶ 6) as overbroad, unduly burdensome, vague and
5 | ambiguous, and oppressive and strays far from the English meaning of the terms by
6 | including concepts such as distribution, licensing and marketing, which are distinct
7 | from selling.  MGA HK will interpret the terms "SOLD," "SELL" or "SALE"
8 | consistent with their ordinary, common usages.

9 |       8.    MGA HK objects to these interrogatories to the extent they may
10 | unfairly seek to restrict the facts on which MGA HK may rely at trial.  Discovery has
11 | not been completed and MGA HK is not yet necessarily in possession of all the facts
12 | and documents upon which MGA HK intends to rely.  All of the responses submitted
13 | herewith are tendered to Mattel with the reservation that the responses are submitted
14 | without limiting the evidence on which MGA HK may rely to support the
15 | contentions and defenses that MGA HK may assert at the trial of this action and to
16 | rebut or impeach the contentions, assertions and evidence that Mattel may present.
17 | MGA HK reserves the right to supplement or amend these responses at a future date.

18 |       9.    MGA HK objects to each interrogatory to the extent it seeks
19 | information that will be the subject of expert witness testimony and that is therefore
20 | premature.

21 |       10.    MGA HK objects to each interrogatory to the extent it calls for a
22 | legal conclusion.

23 |       11.    MGA HK objects to each interrogatory to the extent it seeks the
24 | disclosure of confidential, proprietary, or trade-secret information.

25 |       12.    MGA HK reserves the right to object on any ground at any time
26 | to such other supplemental discovery requests as Mattel may propound involving or
27 | relating to the same subject matter of these interrogatories.

28 |

EXHIBIT __2__

PAGE __16__

MGA HK'S RESPONSES TO MATTEL INC.'S SEVENTH SET OF INTERROGATORIES    NO. CV 04-9049 SGL (RNBx)
M

1    13.    In responding to these interrogatories, MGA HK has not

2  complied and will not comply with any instructions or definitions that seek to impose

3  requirements in addition to those imposed by the Federal Rules of Civil Procedure,

4  the local rules of this Court, any orders entered by the Court in this action, or other

5  applicable law.

6    14.    Consistent with Rule 33(d) of the Federal Rules of Civil

7  Procedure, MGA HK objects to providing responses to interrogatories that can be

8  derived from documents that have been or will be produced (when requested in

9  compliance with Rule 26) and where the burden of deriving such information is

10  substantially the same for Mattel as it is for MGA HK.

11    15.    MGA HK objects to the definitions, instructions, and

12  interrogatories to the extent they seek information that was prepared in anticipation

13  of litigation, constitutes attorney work product, discloses mental impressions,

14  conclusions, opinions or legal theories of any attorney for or otherwise representative

15  of MGA HK, contains privileged attorney-client communications, or is otherwise

16  protected from disclosure by any privileges, laws or rules.  MGA HK shall not

17  produce such information in response to Mattel's interrogatories.  Any disclosure of

18  such protected or privileged information is inadvertent and shall not be construed as

19  a waiver of those privileges or protections.  MGA HK reserves the right to correct

20  the record with regard to any such inadvertent disclosure, as provided for in the

21  Protective Order governing this case.

22    16.    MGA HK objects to each of Mattel's interrogatories because

23  Mattel has propounded more than 50 interrogatories, including discrete subparts.

24  Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50

25  for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

26    17.    The responses below shall not be construed as an admission as to

27  the relevance or admissibility of any statement or characterization contained in any

28  interrogatory.  MGA HK reserves all objections, including without limitation,

EXHIBIT ___2___

PAGE ___17___

1 objections as to competency, relevance, materiality, privilege, authenticity, or
2 admissibility.

3        18.    To the extent MGA HK responds to an interrogatory, it does so
4 without waiving or intending to waive but rather, on the contrary, preserving and
5 intending to preserve, its contention that anything Mr. Bryant did on weekends,
6 evenings, vacation and any other time outside ordinary business hours was not done
7 while he was working for Mattel.  MGA HK's response may not be taken as an
8 admission that the information it provides in its response in any way reflects or
9 evidences work performed by Mr. Bryant while he was working for Mattel or that
10 MGA HK adopts or agrees with any fact or legal conclusion assumed, presumed or
11 contained in Mattel's interrogatory.

12      **OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES**

13        Without waiving or departing from its General Response and General
14 Objections, and specifically incorporating them in its response to each interrogatory
15 below, MGA HK makes the following additional objections and responses to
16 specific interrogatories:

17 **INTERROGATORY NO. 48:**

18        Separately IDENTIFY each trade dress that YOU contend MATTEL
19 has copied, infringed or diluted or that is otherwise the subject of YOUR claims,
20 defenses or allegations in THIS ACTION.

21 **RESPONSE TO INTERROGATORY NO. 48:**

22        MGA HK incorporates by reference its General Response and General
23 Objections above, as though fully set forth herein and specifically incorporates
24 General Objection No. 7 (regarding Definitions), including without limitation its
25 objection to the definitions of the terms "IDENTIFY" and "SOLD."  MGA HK also
26 objects to this interrogatory to the extent it seeks information that is not subject to
27 disclosure under any applicable privilege, doctrine or immunity, including without
28 limitation the attorney-client privilege, the work product doctrine, the right of

6

EXHIBIT ___2___

PAGE ___18___

1 | privacy, and all other privileges recognized under the constitutional, statutory or
2 | decisional law of the United States of America, the State of California or any other
3 | applicable jurisdiction.

4 |       MGA HK further objects because the interrogatory additionally contains
5 | discrete subparts that require separate, distinct and multiple responses through
6 | defined terms.  Specifically, Mattel's definitions of the terms "IDENTIFY" as applied
7 | to trade dress would require MGA HK to provide separate, distinct, and multiple
8 | responses.  For example, Mattel's definition of the term "IDENTIFY" in the context
9 | of this interrogatory purports to require MGA HK to "IDENTIFY" discrete facts for
10 | each copied, infringed or diluted trade dress, including:  (a) each and every element
11 | that makes up the claimed trade dress; and (b) each and every product or product
12 | packaging SOLD that embodies, uses or employs the claimed trade dress.  This
13 | interrogatory is further compounded by Mattel's definition of "IDENTITY," which
14 | purports to require MGA HK to provide the following information for each of the
15 | product or product packing requestedto be identified as part of Mattel's definition of
16 | "IDENTIFY," above:  (1) the full name of the product, or in the case of packaging,
17 | the product or item with which the packaging is used; (2) the SKU number or any
18 | other applicable unique identifier or designation of the product or, in the case of
19 | packaging, the product or item with which the packaging is used; (3) the time period
20 | during which the product was, has been or will be SOLD or, in the case of product
21 | packaging, the time period during which the product packaging was, has been or will
22 | be used; and (4) the IDENTITY of each PERSON who has licensed from YOU the
23 | right to SELL such product or, in the case of product packaging, the IDENTITY of
24 | the PERSON who has licensed from YOU the right to use the packaging or to SELL
25 | the products with which the packaging is used.  This interrogatory is further
26 | compounded by Mattel's definition of "IDENTITY," which purports to require MGA
27 | HK to provide the following information for each of the persons requested to be
28 | identified as part of Mattel's definition of "IDENTIFY," above:  (1) the individual's

7

EXHIBIT ___2___

PAGE ___19___

1 name; (2) any known business title; (3) the current or last known business affiliation;
2 (4) the current or last known residential address; (5) the current or last known
3 business address; (6) the current or last known relationship to MGA; and (7) the
4 current or last known telephone number. Additionally, through Mattel's definition of
5 "YOU," this interrogatory asks for all of the foregoing information about contentions
6 regarding trade dress by each of the multiple separate responding parties to this set of
7 interrogatories.

8        MGA HK further objects to the extent this interrogatory seeks
9 information that is beyond MGA HK's personal knowledge and is not in MGA HK's
10 possession, custody, or control. MGA HK also objects to this interrogatory to the
11 extent it calls for information already produced in this litigation or more easily
12 obtainable from other sources. MGA HK objects to providing responses to
13 interrogatories that can be derived from documents that have been or will be
14 produced (when requested in compliance with Rule 26) and where the burden to
15 derive such information is substantially the same for Mattel as it is for MGA HK.

16        MGA HK further objects to this interrogatory on the grounds that it
17 appears to be directed at other parties to the litigation, and not MGA HK. MGA HK
18 does not assert trade dress claims in this action. Therefore, this interrogatory is
19 inapplicable to MGA HK, seeks information that is not relevant to the claims and
20 defense in this action, and is not reasonably calculated to lead to the discovery of
21 admissible evidence.

22        MGA HK objects to this interrogatory because Mattel has propounded
23 more than 50 interrogatories. Under Judge Larson's order of February 22, 2007,
24 "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-
25 SGL and CV 05-02727.]"

26 **INTERROGATORY NO. 49:**

27        For each trade dress identified in response to Interrogatory No. 48,
28 separately and fully IDENTIFY each and every MATTEL product, packaging or

1 | other matter that YOU contend copies, infringes or dilutes such trade dress,
2 | including without limitation by describing fully and separately, for each such
3 | MATTEL product, packaging or other matter, each and every element of the claimed
4 | trade dress that YOU contend MATTEL has copied, infringed or diluted.

5 | **RESPONSE TO INTERROGATORY NO. 49:**

6 |     MGA HK incorporates by reference its General Response and General
7 | Objections above, as though fully set forth herein and specifically incorporates
8 | General Objection No. 7 (regarding Definitions), including without limitation its
9 | objection to the definition of the terms "SOLD," "REFER OR RELATE TO" and
10 | "IDENTIFY" insofar as it is used to refer to "product or packaging." MGA HK also
11 | objects to this interrogatory to the extent it seeks information that is not subject to
12 | disclosure under any applicable privilege, doctrine or immunity, including without
13 | limitation the attorney-client privilege, the work product doctrine, the right of
14 | privacy, and all other privileges recognized under the constitutional, statutory or
15 | decisional law of the United States of America, the State of California or any other
16 | applicable jurisdiction.

17 |     MGA HK objects because the interrogatory is compound on its face.
18 | MGA HK further objects because the interrogatory additionally contains discrete
19 | subparts that require separate, distinct and multiple responses through defined terms.
20 | Specifically, Mattel's definition of the term "IDENTIFY" (Definitions ¶ 10(c)) as it
21 | pertains to "product or packaging" requires MGA HK to provide separate, distinct,
22 | and multiple responses. For example, Mattel's definition of the term "IDENTIFY" in
23 | the context of this interrogatory purports to require MGA HK to provide a multitude
24 | of discrete facts for each infringing or diluting product, packaging or other matter,
25 | including: (1) the full name of the product, or in the case of packaging, the product
26 | or item with which the packaging is used; (2) the SKU number or any other
27 | applicable unique identifier or designation of the product or, in the case of
28 | packaging, the product or item with which the packaging is used; (3) the time period

9

EXHIBIT __2__

PAGE __21__

1  during which the product was, has been or will be SOLD or, in the case of product

2  packaging, the time period during which the product packaging was, has been or will

3  be used; and (4) the IDENTITY of each PERSON who has licensed from YOU the

4  right to SELL such product or, in the case of product packaging, the IDENTITY of

5  the PERSON who has licensed from YOU the right to use the packaging or to SELL

6  the products with which the packaging is used. This interrogatory is further

7  compounded by Mattel's definition of "IDENTITY," which purports to require MGA

8  HK to provide the following information for each of the persons requested to be

9  identified as part of Mattel's definition of "IDENTIFY," above: (1) the individual's

10  name; (2) any known business title; (3) the current or last known business affiliation;

11  (4) the current or last known residential address; (5) the current or last known

12  business address; (6) the current or last known relationship to MGA; and (7) the

13  current or last known telephone number. Additionally, through Mattel's definition of

14  "YOU," this interrogatory asks for all of the foregoing information about contentions

15  regarding trade dress by each of the multiple separate responding parties to this set of

16  interrogatories.

17          MGA HK further objects to the extent this interrogatory seeks

18  information that is beyond MGA HK's personal knowledge and is not in MGA HK's

19  possession, custody, or control. MGA HK also objects to this interrogatory to the

20  extent it calls for information already produced in this litigation or more easily

21  obtainable from other sources. MGA HK objects to providing responses to

22  interrogatories that can be derived from documents that have been or will be

23  produced (when requested in compliance with Rule 26) and where the burden to

24  derive such information is substantially the same for Mattel as it is for MGA HK.

25          MGA HK further objects to this interrogatory on the grounds that it

26  appears to be directed at other parties to the litigation, and not MGA HK. MGA HK

27  does not assert trade dress claims in this action. Therefore, this interrogatory is

28  inapplicable to MGA HK, seeks information that is not relevant to the claims and

10

EXHIBIT _____2_____

PAGE _____22_____

1  defense in this action, and is not reasonably calculated to lead to the discovery of

2  admissible evidence.

3          MGA HK objects to this interrogatory because Mattel has propounded

4  more than 50 interrogatories.  Under Judge Larson's order of February 22, 2007,

5  "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

6  SGL and CV 05-02727.]"

7  **INTERROGATORY NO. 50:**

8          For each trade dress identified in response to Interrogatory No. 48,

9  separately and completely IDENTIFY all facts that support YOUR contention that

10  such trade dress is protectible, all DOCUMENTS that REFER OR RELATE to the

11  foregoing and all PERSONS with knowledge of the foregoing.

12  **RESPONSE TO INTERROGATORY NO. 50:**

13          MGA HK incorporates by reference its General Response and General

14  Objections above, as though fully set forth herein and specifically incorporates

15  General Objection No. 7 (regarding Definitions), including without limitation its

16  objection to the definitions of the terms "IDENTIFY" or "IDENTITY," and "REFER

17  OR RELATE TO."  MGA HK also objects to this interrogatory to the extent it seeks

18  information that is not subject to disclosure under any applicable privilege, doctrine

19  or immunity, including without limitation the attorney-client privilege, the work

20  product doctrine, the right of privacy, and all other privileges recognized under the

21  constitutional, statutory or decisional law of the United States of America, the State

22  of California or any other applicable jurisdiction.

23          MGA HK further objects to the interrogatory on the grounds that it is

24  oppressive, harassing, and unduly burdensome insofar as it requires MGA HK to

25  compile detailed financial reports of information not reasonably available solely for

26  the purpose of responding to this interrogatory.

27          MGA HK further objects because the interrogatory additionally contains

28  discrete subparts that require separate, distinct and multiple responses through

11

EXHIBIT ___2___

PAGE ___23___

1  defined terms.  Specifically, Mattel's definitions of the terms "IDENTIFY" as applied

2  to the protectibility of trade dress would require MGA HK to provide separate,

3  distinct, and multiple responses.

4          For example, Mattel's definition of the term "IDENTIFY," in the

5  context of protectibility of a trade dress (Definitions ¶ 10(f)), requests at least four

6  different and distinct facts:  (a) all facts that support YOUR contention that such

7  trade dress is inherently distinctive or has acquired secondary meaning and that such

8  trade dress is famous; (b) the date that YOU contend such trade dress acquired

9  secondary meaning and, if YOU contend the trade dress is famous, the date on which

10 YOU contend that it became famous; (c) all facts that support YOUR contention that

11 such trade dress is not functional; and (d) if YOU are relying on advertising to

12 establish secondary meaning or fame, the dollar amounts, by year, spent by YOU or

13 anyone acting on YOUR behalf on advertising that features such trade dress.

14 Additionally, through Mattel's definition of "YOU," this interrogatory asks for all of

15 the foregoing information about contentions regarding trade dress by each of the

16 multiple separate responding parties to this set of interrogatories.

17          MGA HK further objects to the extent this interrogatory seeks

18 information that is beyond MGA HK's personal knowledge and is not in MGA HK's

19 possession, custody, or control.  In particular, MGA HK objects to this interrogatory

20 to the extent that it requests that MGA HK "IDENTIFY *all* facts . . . *all*

21 DOCUMENTS . . . and *all* PERSONS" (emphasis added).  MGA HK also objects to

22 this interrogatory to the extent it calls for information already produced in this

23 litigation or more easily obtainable from other sources.  MGA HK objects to

24 providing responses to interrogatories that can be derived from documents that have

25 been or will be produced (when requested in compliance with Rule 26) and where

26 the burden to derive such information is substantially the same for Mattel as it is for

27 MGA HK.

28          MGA HK further objects to this interrogatory on the grounds that it

MGA HK'S RESPONSES TO MATTEL INC.'S SEVENTH SET OF INTERROGATORIES   NO. CV 04-9049 SGL (RNBx)
M

EXHIBIT ___2___

PAGE ___2 4___

1  appears to be directed at other parties to the litigation, and not MGA HK.  MGA HK

2  does not assert trade dress claims in this action.  Therefore, this interrogatory is

3  inapplicable to MGA HK, seeks information that is not relevant to the claims and

4  defense in this action, and is not reasonably calculated to lead to the discovery of

5  admissible evidence.

6             MGA HK objects to this interrogatory because Mattel has propounded

7  more than 50 interrogatories.  Under Judge Larson's order of February 22, 2007,

8  "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

9  SGL and CV 05-02727.]"

10           AS TO OBJECTIONS ONLY:

11

12  DATED:  November 26, 2007

13

14                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

15

16                       By: _____

17                             Thomas J. Nolan
                     Attorneys for Counter-Defendants, MGA

18                       ENTERTAINMENT, INC., ISAAC LARIAN,
                     MGA ENTERTAINMENT (HK) LTD., and
                     MGAE de MEXICO S.R.L. de C.V.

19

20

21

22

23

24

25

26

27

28

13

EXHIBIT __2__
PAGE __25__

# EXHIBIT 3

1  THOMAS J. NOLAN (Bar No. 066992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, CA  90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:   (213) 687-5600
4  E-mail:       tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  Four Embarcadero Center, Suite 3800
   San Francisco, CA  94111
7  Telephone:  (415) 984-6400
   Facsimile:   (415) 984-2698
8  E-mail:       rkennedy@skadden.com

9  Attorneys for Counter-Defendants,
   MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
10 (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11              UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13                  EASTERN DIVISION

14 | CARTER BRYANT, an individual | ) | CASE NO. CV 04-9049 SGL (RNBx) |

15 |              Plaintiff, | ) | Consolidated with Case No. 04-9059 and Case No. 05-2727 |

16 |          v. | ) | |

17 | MATTEL, INC., a Delaware corporation | ) | **MGA ENTERTAINMENT, INC.'S SUPPLEMENTAL RESPONSES TO MATTEL, INC.'S SEVENTH SET OF INTERROGATORIES** |

18 |              Defendant. | ) | |

19 | | ) | Honorable Stephen G. Larson Courtroom 1 |

20 | | ) | |

21 | Consolidated with MATTEL, INC. v. BRYANT and MGA | ) | Discovery Cut-Off:  March 3, 2008 |

22 | ENTERTAINMENT, INC. v. MATTEL, INC. | ) | |

23 | | ) | |

24 **PROPOUNDING PARTY:    MATTEL, INC. ("MATTEL")**

25 **RESPONDING PARTY:    MGA ENTERTAINMENT, INC.**

26 **SET NUMBER:              SEVENTH**

27

28

MGA'S SUPPL. RESPONSES TO MATTEL INC.'S SEVENTH SET OF INTERROGATORIES    NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___3___
PAGE ___26___

## PRELIMINARY STATEMENT

The General Response set forth herein applies to all responses that MGA Entertainment, Inc. ("MGA") is providing in response to these interrogatories or may in the future provide in response to any discovery request in this action. The Response is made without waiving, or intending to waive but, on the contrary, expressly reserving: (a) the right to object, on the grounds of competency, privilege, relevancy or materiality, or any other proper grounds, to the use of the Response, for any purpose in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other interrogatories or other discovery procedures; and (c) the right at any time to revise, correct, add to, or clarify any of the responses propounded herein.

The Response reflects only the present state of MGA's discovery regarding the information that Mattel seeks. Discovery and other investigation or research concerning this litigation are continuing. It is anticipated that further discovery, independent investigation, and legal research and analysis will supply additional facts and meaning to the known facts, as well as establish entirely new factual conclusions, all of which may lead MGA to discover other information responsive to these interrogatories. MGA therefore reserves the right to amend or supplement this Response at any time in light of future investigation, research or analysis, and also expressly reserves the right to rely on, at any time, including trial, subsequently discovered information omitted from this Response as a result of mistake, error, oversight or inadvertence. MGA does not hereby admit, adopt or acquiesce in any factual or legal contention, assertion or characterization contained in the Interrogatories or any particular request therein, even where MGA has not otherwise objected to a particular interrogatory, or has agreed to provide information responsive to a particular interrogatory.

No incidental or implied admissions are intended by this Response. These responses should not be taken as an admission that MGA accepts or admits the

1

EXHIBIT __3__

PAGE __27__

1 existence of any facts set forth or assumed by any instruction, definition or
2 interrogatory.

### GENERAL OBJECTIONS

4      MGA responds to these interrogatories subject to the following general
5 objections and limitations, each of which is incorporated into each and every
6 response as though fully set forth therein:

7      1.    MGA objects to these interrogatories to the extent they seek
8 information that is not subject to disclosure under any applicable privilege, doctrine
9 or immunity, including without limitation the attorney-client privilege, the work
10 product doctrine, the right of privacy, and all other privileges recognized under the
11 constitutional, statutory or decisional law of the United States of America, the State
12 of California or any other applicable jurisdiction.

13      2.    MGA objects to these interrogatories to the extent they seek
14 information not relevant to the claims or defenses of any party to this action and not
15 reasonably calculated to lead to the discovery of admissible evidence.

16      3.    MGA objects to these interrogatories to the extent they seek
17 information which by reason of public filing or otherwise is already in Mattel's
18 possession or is readily accessible to Mattel.

19      4.    MGA objects to these interrogatories to the extent they seek the
20 disclosure of information (1) not currently within its possession, custody or control;
21 (2) that MGA cannot locate after a reasonably diligent search; or (3) that refer to
22 persons, entities, or events not known to MGA. Such instructions, definitions, or
23 requests are objectionable where they seek to require more of MGA than any
24 obligation imposed by the Federal Rules of Civil Procedure; subject MGA to
25 unreasonable and undue annoyance, oppression, burden, and expense; and/or seek to
26 impose upon MGA an obligation to investigate or discover information or materials
27 from sources equally accessible to Mattel.

28

EXHIBIT ___3___
PAGE ___28___

1        5.     MGA objects to these interrogatories to the extent they are

2 overbroad and unduly burdensome.

3        6.     MGA objects to the definitions and instructions to the extent such

4 definitions and instructions purport to enlarge, expand, or alter in any way the plain

5 meaning and scope of any specific term or specific interrogatories on the ground that

6 such enlargement, expansion, or alteration renders such a term or request vague,

7 ambiguous, unintelligible, overly broad, unduly burdensome, and/or uncertain.

8        7.     MGA objects to the following definitions in these interrogatories:

9        (a)     MGA objects to the definition of the terms "IDENTIFY" or

10 "IDENTITY" (Definitions ¶ 10) as overbroad, unduly burdensome, vague and

11 ambiguous, and oppressive. Mattel's definition of these terms inherently calls for

12 answers to multiple discrete questions or subparts to questions. For example, as

13 those terms are used with reference to a protectibility of a trade dress (Definitions ¶

14 10(f)), the use of those terms request at least four different and distinct facts: (a) all

15 facts that support YOUR contention that such trade dress is inherently distinctive or

16 has acquired secondary meaning and that such trade dress is famous; (b) the date that

17 YOU contend such trade dress acquired secondary meaning and, if YOU contend the

18 trade dress is famous, the date on which YOU contend that it became famous; (c) all

19 facts that support YOUR contention that such trade dress is not functional; and (d) if

20 YOU are relying on advertising to establish secondary meaning or fame, the dollar

21 amounts, by year, spent by YOU or anyone acting on YOUR behalf on advertising

22 that features such trade dress. Therefore, any interrogatory that includes or

23 incorporates the terms "IDENTIFY" or "IDENTITY" is necessarily compound, and

24 should be posed as separate interrogatories;

25        (b)     MGA also objects to the term "any" (Definitions ¶ 11) on

26 the grounds and to the extent it is overbroad, unduly burdensome, and/or is vague

27 and ambiguous in the context of the interrogatories as written and as those

28 interrogatories would be plainly understood absent Mattel's definitions;

EXHIBIT 3
PAGE 29

1        (c)    MGA objects to the definition of the terms "SOLD,"
2    "SELL" or "SALE" (Definitions ¶ 6) as overbroad, unduly burdensome, vague and
3    ambiguous, and oppressive and strays far from the English meaning of the terms by
4    including concepts such as distribution, licensing and marketing, which are distinct
5    from selling. MGA will interpret the terms "SOLD," "SELL" or "SALE" consistent
6    with their ordinary, common usages.

7        8.    MGA objects to these interrogatories to the extent they may
8    unfairly seek to restrict the facts on which MGA may rely at trial. Discovery has not
9    been completed and MGA is not yet necessarily in possession of all the facts and
10   documents upon which MGA intends to rely. All of the responses submitted
11   herewith are tendered to Mattel with the reservation that the responses are submitted
12   without limiting the evidence on which MGA may rely to support the contentions
13   and defenses that MGA may assert at the trial of this action and to rebut or impeach
14   the contentions, assertions and evidence that Mattel may present. MGA reserves the
15   right to supplement or amend these responses at a future date.

16       9.    MGA objects to each interrogatory to the extent it seeks
17   information that will be the subject of expert witness testimony and that is therefore
18   premature.

19       10.   MGA objects to each interrogatory to the extent it calls for a legal
20   conclusion.

21       11.   MGA objects to each interrogatory to the extent it seeks the
22   disclosure of confidential, proprietary, or trade-secret information.

23       12.   MGA reserves the right to object on any ground at any time to
24   such other supplemental discovery requests as Mattel may propound involving or
25   relating to the same subject matter of these interrogatories.

26       13.   In responding to these interrogatories, MGA has not complied
27   and will not comply with any instructions or definitions that seek to impose
28   requirements in addition to those imposed by the Federal Rules of Civil Procedure,

4

EXHIBIT __3__
PAGE __30__

1  the local rules of this Court, any orders entered by the Court in this action, or other

2  applicable law.

3       14.    Consistent with Rule 33(d) of the Federal Rules of Civil

4  Procedure, MGA objects to providing responses to interrogatories that can be

5  derived from documents that have been or will be produced (when requested in

6  compliance with Rule 26) and where the burden of deriving such information is

7  substantially the same for Mattel as it is for MGA.

8       15.    MGA objects to the definitions, instructions, and interrogatories

9  to the extent they seek information that was prepared in anticipation of litigation,

10  constitutes attorney work product, discloses mental impressions, conclusions,

11  opinions or legal theories of any attorney for or otherwise representative of MGA,

12  contains privileged attorney-client communications, or is otherwise protected from

13  disclosure by any privileges, laws or rules.  MGA shall not produce such information

14  in response to Mattel's interrogatories.  Any disclosure of such protected or

15  privileged information is inadvertent and shall not be construed as a waiver of those

16  privileges or protections.  MGA reserves the right to correct the record with regard to

17  any such inadvertent disclosure, as provided for in the Protective Order governing

18  this case.

19       16.    MGA objects to each of Mattel's interrogatories because Mattel

20  has propounded more than 50 interrogatories, including discrete subparts.  Under

21  Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each

22  side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

23       17.    The responses below shall not be construed as an admission as to

24  the relevance or admissibility of any statement or characterization contained in any

25  interrogatory.  MGA reserves all objections, including without limitation, objections

26  as to competency, relevance, materiality, privilege, authenticity, or admissibility.

27       18.    To the extent MGA responds to an interrogatory, it does so

28  without waiving or intending to waive but rather, on the contrary, preserving and

5

EXHIBIT 3
PAGE 31

1 | intending to preserve, its contention that anything Mr. Bryant did on weekends,
2 | evenings, vacation and any other time outside ordinary business hours was not done
3 | while he was working for Mattel.  MGA's response may not be taken as an admission
4 | that the information it provides in its response in any way reflects or evidences work
5 | performed by Mr. Bryant while he was working for Mattel or that MGA adopts or
6 | agrees with any fact or legal conclusion assumed, presumed or contained in Mattel's
7 | interrogatory.

8 | **OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES**

9 | Without waiving or departing from its General Response and General
10 | Objections, and specifically incorporating them in its response to each interrogatory
11 | below, MGA makes the following additional objections and responses to specific
12 | interrogatories:

13 | **INTERROGATORY NO. 48:**

14 | Separately IDENTIFY each trade dress that YOU contend MATTEL
15 | has copied, infringed or diluted or that is otherwise the subject of YOUR claims,
16 | defenses or allegations in THIS ACTION.

17 | **RESPONSE TO INTERROGATORY NO. 48:**

18 | MGA incorporates by reference its General Response and General
19 | Objections above, as though fully set forth herein and specifically incorporates
20 | General Objection No. 7 (regarding Definitions), including without limitation its
21 | objection to the definitions of the terms "IDENTIFY" and "SOLD." MGA also
22 | objects to this interrogatory to the extent it seeks information that is not subject to
23 | disclosure under any applicable privilege, doctrine or immunity, including without
24 | limitation the attorney-client privilege, the work product doctrine, the right of
25 | privacy, and all other privileges recognized under the constitutional, statutory or
26 | decisional law of the United States of America, the State of California or any other
27 | applicable jurisdiction.

28 | MGA further objects because the interrogatory additionally contains

MGA'S SUPPL. RESPONSES TO MATTEL INC.'S SEVENTH SET OF INTERROGATORIES    NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___3___

PAGE ___32___

1  discrete subparts that require separate, distinct and multiple responses through
2  defined terms.  Specifically, Mattel's definitions of the terms "IDENTIFY" and
3  "IDENTITY" as applied to trade dress would require MGA to provide separate,
4  distinct, and multiple responses.  For example, Mattel's definition of the term
5  "IDENTIFY" in the context of this interrogatory purports to require MGA to
6  "IDENTIFY" discrete facts for each copied, infringed or diluted trade dress,
7  including:  (a) each and every element that makes up the claimed trade dress; and (b)
8  each and every product or product packaging SOLD that embodies, uses or employs
9  the claimed trade dress.  This interrogatory is further compounded by Mattel's
10  definition of "IDENTITY," which purports to require MGA to provide the following
11  information for each of the product or product packing requested to be identified as
12  part of Mattel's definition of "IDENTIFY," above:  (1) the full name of the product,
13  or in the case of packaging, the product or item with which the packaging is used; (2)
14  the SKU number or any other applicable unique identifier or designation of the
15  product or, in the case of packaging, the product or item with which the packaging is
16  used; (3) the time period during which the product was, has been or will be SOLD
17  or, in the case of product packaging, the time period during which the product
18  packaging was, has been or will be used; and (4) the IDENTITY of each PERSON
19  who has licensed from YOU the right to SELL such product or, in the case of
20  product packaging, the IDENTITY of the PERSON who has licensed from YOU the
21  right to use the packaging or to SELL the products with which the packaging is used.
22  This interrogatory is further compounded by Mattel's definition of "IDENTITY,"
23  which purports to require MGA to provide the following information for each of the
24  persons requested to be identified as part of Mattel's definition of "IDENTIFY,"
25  above:  (1) the individual's name; (2) any known business title; (3) the current or last
26  known business affiliation; (4) the current or last known residential address; (5) the
27  current or last known business address; (6) the current or last known relationship to
28  MGA; and (7) the current or last known telephone number.  Additionally, through

EXHIBIT ___3___
PAGE ___33___

1  Mattel's definition of "YOU," this interrogatory asks for all of the foregoing
2  information about contentions regarding trade dress by each of the multiple separate
3  responding parties to this set of interrogatories.

4         MGA further objects to the extent this interrogatory seeks information
5  that is beyond MGA's personal knowledge and is not in MGA's possession, custody,
6  or control.  MGA also objects to this interrogatory to the extent it calls for
7  information already produced in this litigation or more easily obtainable from other
8  sources.  MGA objects to providing responses to interrogatories that can be derived
9  from documents that have or will be produced (when requested in compliance with
10  Rule 26) and where the burden to derive such information is substantially the same
11  for Mattel as it is for MGA.

12         MGA objects to this interrogatory because Mattel has propounded more
13  than 50 interrogatories.  Under Judge Larson's order of February 22, 2007,
14  "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-
15  SGL and CV 05-02727.]"

16         MGA further objects to this interrogatory on the ground that it is
17  premature because MGA's trade dress (and other legal concepts that may be
18  relevant) will be the subject of expert testimony at trial.  MGA objects to this
19  interrogatory to the extent it seeks to limit the expert testimony that MGA may seek
20  to introduce at trial.  MGA will identify its experts and make related disclosures in
21  accordance with the Court's orders and applicable rules.

22         Subject to and without waiving the foregoing objections, MGA
23  responds as follows:  MGA is willing to meet and confer with Mattel regarding this
24  interrogatory.

25  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 48:**

26         MGA incorporates by reference its General Response and General
27  Objections above, as though fully set forth herein and specifically incorporates
28  General Objection No. 7 (regarding Definitions), including without limitation its

8

EXHIBIT __3__

PAGE __34__

1 objection to the definitions of the terms "IDENTIFY" and "SOLD."  MGA also
2 objects to this interrogatory to the extent it seeks information that is not subject to
3 disclosure under any applicable privilege, doctrine or immunity, including without
4 limitation the attorney-client privilege, the work product doctrine, the right of
5 privacy, and all other privileges recognized under the constitutional, statutory or
6 decisional law of the United States of America, the State of California or any other
7 applicable jurisdiction.

8         MGA further objects because the interrogatory additionally contains
9 discrete subparts that require separate, distinct and multiple responses through
10 defined terms.  Specifically, Mattel's definitions of the terms "IDENTIFY" and
11 "IDENTITY" as applied to trade dress would require MGA to provide separate,
12 distinct, and multiple responses.  For example, Mattel's definition of the term
13 "IDENTIFY" in the context of this interrogatory purports to require MGA to
14 "IDENTIFY" discrete facts for each copied, infringed or diluted trade dress,
15 including:  (a) each and every element that makes up the claimed trade dress; and (b)
16 each and every product or product packaging SOLD that embodies, uses or employs
17 the claimed trade dress.  This interrogatory is further compounded by Mattel's
18 definition of "IDENTITY," which purports to require MGA to provide the following
19 information for each of the product or product packing requested to be identified as
20 part of Mattel's definition of "IDENTIFY," above:  (1) the full name of the product,
21 or in the case of packaging, the product or item with which the packaging is used; (2)
22 the SKU number or any other applicable unique identifier or designation of the
23 product or, in the case of packaging, the product or item with which the packaging is
24 used; (3) the time period during which the product was, has been or will be SOLD
25 or, in the case of product packaging, the time period during which the product
26 packaging was, has been or will be used; and (4) the IDENTITY of each PERSON
27 who has licensed from YOU the right to SELL such product or, in the case of
28 product packaging, the IDENTITY of the PERSON who has licensed from YOU the

9

EXHIBIT ___3___
PAGE ___35___

1  right to use the packaging or to SELL the products with which the packaging is used.
2  This interrogatory is further compounded by Mattel's definition of "IDENTITY,"
3  which purports to require MGA to provide the following information for each of the
4  persons requested to be identified as part of Mattel's definition of "IDENTIFY,"
5  above: (1) the individual's name; (2) any known business title; (3) the current or last
6  known business affiliation; (4) the current or last known residential address; (5) the
7  current or last known business address; (6) the current or last known relationship to
8  MGA; and (7) the current or last known telephone number.  Additionally, through
9  Mattel's definition of "YOU," this interrogatory asks for all of the foregoing
10  information about contentions regarding trade dress by each of the multiple separate
11  responding parties to this set of interrogatories.

12       MGA further objects to the extent this interrogatory seeks information
13  that is beyond MGA's personal knowledge and is not in MGA's possession, custody,
14  or control.  MGA also objects to this interrogatory to the extent it calls for
15  information already produced in this litigation or more easily obtainable from other
16  sources.  MGA objects to providing responses to interrogatories that can be derived
17  from documents that have or will be produced (when requested in compliance with
18  Rule 26) and where the burden to derive such information is substantially the same
19  for Mattel as it is for MGA.

20       MGA further objects to this interrogatory on the ground that it is
21  premature because MGA's trade dress (and other legal concepts that may be
22  relevant) will be the subject of expert testimony at trial.  MGA objects to this
23  interrogatory to the extent it seeks to limit the expert testimony that MGA may seek
24  to introduce at trial.  MGA will identify its experts and make related disclosures in
25  accordance with the Court's orders and applicable rules.

26       Subject to and without waiving the foregoing objections, MGA provides
27  the following supplemental response:

28       The unique and distinctive trade dress of MGA's "Bratz" line of dolls

10

EXHIBIT ___3___
PAGE ___36___

that Mattel has copied, infringed, and diluted is comprised of the following elements:

- the unique, unusual geometric-shaped packaging, with increased transparency including transparent open sides, and with a "flying banner" style slogan;
- the proportions and special arrangements of the eyes, noses, mouths and hairlines;
- the shape of the eyes, faces, heads and lips;
- the unique face paint, design, and color scheme depicting facial features;
- the disproportionately oversized heads;
- the oversized shoes; and
- the trendy, hip clothing and hair styles.

The unique and distinctive trade dress of MGA's "Bratz Petz" line of dolls that Mattel has copied, infringed and diluted is comprised of the following elements:

- the open box packaging with no top cover and with partial side panels that slope from a narrow front panel to a higher back panel;
- the large, humanlike, artfully made-up eyes with long eyelashes that sweep out and away from the outer corner of the eye;
- the disproportionately oversized heads; and
- the trendy human clothing.

**INTERROGATORY NO. 49:**

For each trade dress identified in response to Interrogatory No. 48, separately and fully IDENTIFY each and every MATTEL product, packaging or other matter that YOU contend copies, infringes or dilutes such trade dress, including without limitation by describing fully and separately, for each such MATTEL product, packaging or other matter, each and every element of the claimed trade dress that YOU contend MATTEL has copied, infringed or diluted.

11

EXHIBIT __3__

PAGE __37__

**RESPONSE TO INTERROGATORY NO. 49:**

MGA incorporates by reference its General Response and General Objections above, as though fully set forth herein and specifically incorporates General Objection No. 7 (regarding Definitions), including without limitation its objection to the definition of the terms "SOLD," "REFER OR RELATE TO" and "IDENTIFY" insofar as it is used to refer to "product or packaging." MGA also objects to this interrogatory to the extent it seeks information that is not subject to disclosure under any applicable privilege, doctrine or immunity, including without limitation the attorney-client privilege, the work product doctrine, the right of privacy, and all other privileges recognized under the constitutional, statutory or decisional law of the United States of America, the State of California or any other applicable jurisdiction.

MGA objects because the interrogatory is compound on its face. MGA further objects because the interrogatory additionally contains discrete subparts that require separate, distinct and multiple responses through defined terms. Specifically, Mattel's definition of the term "IDENTIFY" (Definitions ¶ 10(c)) as it pertains to "product or packaging" requires MGA to provide separate, distinct, and multiple responses. For example, Mattel's definition of the term "IDENTIFY" in the context of this interrogatory purports to require MGA to provide a multitude of discrete facts for each infringing or diluting product, packaging or other matter, including: (1) the full name of the product, or in the case of packaging, the product or item with which the packaging is used; (2) the SKU number or any other applicable unique identifier or designation of the product or, in the case of packaging, the product or item with which the packaging is used; (3) the time period during which the product was, has been or will be SOLD or, in the case of product packaging, the time period during which the product packaging was, has been or will be used; and (4) the IDENTITY of each PERSON who has licensed from YOU the right to SELL such product or, in the case of product packaging, the IDENTITY of the PERSON who has licensed

1  from YOU the right to use the packaging or to SELL the products with which the

2  packaging is used. This interrogatory is further compounded by Mattel's definition

3  of "IDENTITY," which purports to require MGA to provide the following

4  information for each of the persons requested to be identified as part of Mattel's

5  definition of "IDENTIFY," above: (1) the individual's name; (2) any known

6  business title; (3) the current or last known business affiliation; (4) the current or last

7  known residential address; (5) the current or last known business address; (6) the

8  current or last known relationship to MGA; and (7) the current or last known

9  telephone number. Additionally, through Mattel's definition of "YOU," this

10  interrogatory asks for all of the foregoing information about contentions regarding

11  trade dress by each of the multiple separate responding parties to this set of

12  interrogatories.

13       MGA further objects to the extent this interrogatory seeks information

14  that is beyond MGA's personal knowledge and is not in MGA's possession, custody,

15  or control. MGA also objects to this interrogatory to the extent it calls for

16  information already produced in this litigation or more easily obtainable from other

17  sources. MGA objects to providing responses to interrogatories that can be derived

18  from documents that have or will be produced (when requested in compliance with

19  Rule 26) and where the burden to derive such information is substantially the same

20  for Mattel as it is for MGA.

21       MGA objects to this interrogatory because Mattel has propounded more

22  than 50 interrogatories. Under Judge Larson's order of February 22, 2007,

23  "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

24  SGL and CV 05-02727.]"

25       MGA further objects to this interrogatory on the ground that it is

26  premature because MGA's trade dress (and other legal concepts that may be

27  relevant) will be the subject of expert testimony at trial. MGA objects to this

28  interrogatory to the extent it seeks to limit the expert testimony that MGA may seek

EXHIBIT ___3___

PAGE ___39___

1 | to introduce at trial.  MGA will identify its experts and make related disclosures in
2 | accordance with the Court's orders and applicable rules.
3 |        Subject to and without waiving the foregoing objections, MGA
4 | responds as follows: MGA is willing to meet and confer with Mattel regarding this
5 | interrogatory.
6 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 49:**
7 |        MGA incorporates by reference its General Response and General
8 | Objections above, as though fully set forth herein and specifically incorporates
9 | General Objection No. 7 (regarding Definitions), including without limitation its
10 | objection to the definition of the terms "SOLD," "REFER OR RELATE TO" and
11 | "IDENTIFY" insofar as it is used to refer to "product or packaging."  MGA also
12 | objects to this interrogatory to the extent it seeks information that is not subject to
13 | disclosure under any applicable privilege, doctrine or immunity, including without
14 | limitation the attorney-client privilege, the work product doctrine, the right of
15 | privacy, and all other privileges recognized under the constitutional, statutory or
16 | decisional law of the United States of America, the State of California or any other
17 | applicable jurisdiction.
18 |        MGA objects because the interrogatory is compound on its face.  MGA
19 | further objects because the interrogatory additionally contains discrete subparts that
20 | require separate, distinct and multiple responses through defined terms.  Specifically,
21 | Mattel's definition of the term "IDENTIFY" (Definitions ¶ 10(c)) as it pertains to
22 | "product or packaging" requires MGA to provide separate, distinct, and multiple
23 | responses.  For example, Mattel's definition of the term "IDENTIFY" in the context
24 | of this interrogatory purports to require MGA to provide a multitude of discrete facts
25 | for each infringing or diluting product, packaging or other matter, including:  (1) the
26 | full name of the product, or in the case of packaging, the product or item with which
27 | the packaging is used; (2) the SKU number or any other applicable unique identifier
28 | or designation of the product or, in the case of packaging, the product or item with

EXHIBIT ___3___
PAGE ____90___

1  which the packaging is used; (3) the time period during which the product was, has

2  been or will be SOLD or, in the case of product packaging, the time period during

3  which the product packaging was, has been or will be used; and (4) the IDENTITY

4  of each PERSON who has licensed from YOU the right to SELL such product or, in

5  the case of product packaging, the IDENTITY of the PERSON who has licensed

6  from YOU the right to use the packaging or to SELL the products with which the

7  packaging is used.  This interrogatory is further compounded by Mattel's definition

8  of "IDENTITY," which purports to require MGA to provide the following

9  information for each of the persons requested to be identified as part of Mattel's

10  definition of "IDENTIFY," above: (1) the individual's name; (2) any known

11  business title; (3) the current or last known business affiliation; (4) the current or last

12  known residential address; (5) the current or last known business address; (6) the

13  current or last known relationship to MGA; and (7) the current or last known

14  telephone number.  Additionally, through Mattel's definition of "YOU," this

15  interrogatory asks for all of the foregoing information about contentions regarding

16  trade dress by each of the multiple separate responding parties to this set of

17  interrogatories.

18         MGA further objects to the extent this interrogatory seeks information

19  that is beyond MGA's personal knowledge and is not in MGA's possession, custody,

20  or control.  MGA also objects to this interrogatory to the extent it calls for

21  information already produced in this litigation or more easily obtainable from other

22  sources.  MGA objects to providing responses to interrogatories that can be derived

23  from documents that have or will be produced (when requested in compliance with

24  Rule 26) and where the burden to derive such information is substantially the same

25  for Mattel as it is for MGA.

26         MGA further objects to this interrogatory on the ground that it is

27  premature because MGA's trade dress (and other legal concepts that may be

28  relevant) will be the subject of expert testimony at trial.  MGA objects to this

EXHIBIT ___3___

PAGE ___41___

1  interrogatory to the extent it seeks to limit the expert testimony that MGA may seek
2  to introduce at trial.  MGA will identify its experts and make related disclosures in
3  accordance with the Court's orders and applicable rules.

4            Subject to and without waiving the foregoing objections, MGA provides
5  the following supplemental response:

6            Each of Mattel's "My Scene" fashion dolls copied, infringed and
7  diluted:

8       • the unique, unusual geometric-shaped packaging, with increased
9         transparency including transparent open sides, and with a "flying
10        banner" style slogan;
11      • the proportions and special arrangements of the eyes, noses,
12        mouths and hairlines;
13      • the shape of the eyes, faces, heads and lips;
14      • the unique face paint, design, and color scheme depicting facial
15        features;
16      • the disproportionately oversized heads;
17      • the oversized shoes; and
18      • the trendy, hip clothing and hair styles.

19     Each of Mattel's "My Scene" pet dolls copied, infringed and diluted:

20      • the large, humanlike, artfully made-up eyes with long eyelashes
21        that sweep out and away from the outer corner of the eye;
22      • the disproportionately oversized heads;
23      • the trendy human clothing; and
24      • the open box packaging with no top cover and with partial side
25        panels that slope from a narrow front panel to a higher back
26        panel.

27 **INTERROGATORY NO. 50:**

28            For each trade dress identified in response to Interrogatory No. 48,

EXHIBIT __3__
PAGE __42__

1   separately and completely IDENTIFY all facts that support YOUR contention that

2   such trade dress is protectible, all DOCUMENTS that REFER OR RELATE to the

3   foregoing and all PERSONS with knowledge of the foregoing.

4   **RESPONSE TO INTERROGATORY NO. 50:**

5          MGA incorporates by reference its General Response and General

6   Objections above, as though fully set forth herein and specifically incorporates

7   General Objection No. 7 (regarding Definitions), including without limitation its

8   objection to the definitions of the terms "IDENTIFY" or "IDENTITY," and "REFER

9   OR RELATE TO."  MGA also objects to this interrogatory to the extent it seeks

10  information that is not subject to disclosure under any applicable privilege, doctrine

11  or immunity, including without limitation the attorney-client privilege, the work

12  product doctrine, the right of privacy, and all other privileges recognized under the

13  constitutional, statutory or decisional law of the United States of America, the State

14  of California or any other applicable jurisdiction.

15         MGA further objects to the interrogatory on the grounds that it is

16  oppressive, harassing, and unduly burdensome insofar as it requires MGA to compile

17  detailed financial reports of information not reasonably available solely for the

18  purpose of responding this interrogatory.

19         MGA further objects because the interrogatory additionally contains

20  discrete subparts that require separate, distinct and multiple responses through

21  defined terms.  Specifically, Mattel's definitions of the term "IDENTIFY" as applied

22  to the protectibility of trade dress would require MGA to provide separate, distinct,

23  and multiple responses.

24         For example, Mattel's definition of the term "IDENTIFY," in the

25  context of protectibility of a trade dress (Definitions ¶ 10(f)), requests at least four

26  different and distinct facts:  (a) all facts that support YOUR contention that such

27  trade dress is inherently distinctive or has acquired secondary meaning and that such

28  trade dress is famous; (b) the date that YOU contend such trade dress acquired

17

EXHIBIT ___3___

PAGE ___43___

1 | secondary meaning and, if YOU contend the trade dress is famous, the date on which
2 | YOU contend that it became famous; (c) all facts that support YOUR contention that
3 | such trade dress is not functional; and (d) if YOU are relying on advertising to
4 | establish secondary meaning or fame, the dollar amounts, by year, spent by YOU or
5 | anyone acting on YOUR behalf on advertising that features such trade dress.
6 | Additionally, through Mattel's definition of "YOU," this interrogatory asks for all of
7 | the foregoing information about contentions regarding trade dress by each of the
8 | multiple separate responding parties to this set of interrogatories.
9 |       MGA further objects to the extent this interrogatory seeks information
10 | that is beyond MGA's personal knowledge and is not in MGA's possession, custody,
11 | or control.  In particular, MGA objects to this interrogatory to the extent that it
12 | requests that MGA "IDENTIFY *all* facts . . . *all* DOCUMENTS . . . and *all*
13 | PERSONS" (emphasis added).  MGA also objects to this interrogatory to the extent
14 | it calls for information already produced in this litigation or more easily obtainable
15 | from other sources.  MGA objects to providing responses to interrogatories that can
16 | be derived from documents that have or will be produced (when requested in
17 | compliance with Rule 26) and where the burden to derive such information is
18 | substantially the same for Mattel as it is for MGA.
19 |       MGA objects to this interrogatory because Mattel has propounded more
20 | than 50 interrogatories.  Under Judge Larson's order of February 22, 2007,
21 | "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-
22 | SGL and CV 05-02727.]"
23 |       MGA further objects to this interrogatory on the ground that it is
24 | premature because MGA's trade dress (and other legal concepts that may be
25 | relevant) will be the subject of expert testimony at trial.  MGA objects to this
26 | interrogatory to the extent it seeks to limit the expert testimony that MGA may seek
27 | to introduce at trial.  MGA will identify its experts and make related disclosures in
28 | accordance with the Court's orders and applicable rules.

18

EXHIBIT __3__

PAGE __44__

1    Subject to and without waiving the foregoing objections, MGA

2  responds as follows:  MGA is willing to meet and confer with Mattel regarding this

3  interrogatory.

4  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 50:**

5    MGA incorporates by reference its General Response and General

6  Objections above, as though fully set forth herein and specifically incorporates

7  General Objection No. 7 (regarding Definitions), including without limitation its

8  objection to the definitions of the terms "IDENTIFY" or "IDENTITY," and "REFER

9  OR RELATE TO."  MGA also objects to this interrogatory to the extent it seeks

10  information that is not subject to disclosure under any applicable privilege, doctrine

11  or immunity, including without limitation the attorney-client privilege, the work

12  product doctrine, the right of privacy, and all other privileges recognized under the

13  constitutional, statutory or decisional law of the United States of America, the State

14  of California or any other applicable jurisdiction.

15    MGA further objects to the interrogatory on the grounds that it is

16  oppressive, harassing, and unduly burdensome insofar as it requires MGA to compile

17  detailed financial reports of information not reasonably available solely for the

18  purpose of responding this interrogatory.

19    MGA further objects because the interrogatory additionally contains

20  discrete subparts that require separate, distinct and multiple responses through

21  defined terms.  Specifically, Mattel's definitions of the term "IDENTIFY" as applied

22  to the protectibility of trade dress would require MGA to provide separate, distinct,

23  and multiple responses.

24    For example, Mattel's definition of the term "IDENTIFY," in the

25  context of protectibility of a trade dress (Definitions ¶ 10(f)), requests at least four

26  different and distinct facts:  (a) all facts that support YOUR contention that such

27  trade dress is inherently distinctive or has acquired secondary meaning and that such

28  trade dress is famous; (b) the date that YOU contend such trade dress acquired

19

EXHIBIT ___3___

PAGE ___45___

1   secondary meaning and, if YOU contend the trade dress is famous, the date on which
2   YOU contend that it became famous; (c) all facts that support YOUR contention that
3   such trade dress is not functional; and (d) if YOU are relying on advertising to
4   establish secondary meaning or fame, the dollar amounts, by year, spent by YOU or
5   anyone acting on YOUR behalf on advertising that features such trade dress.
6   Additionally, through Mattel's definition of "YOU," this interrogatory asks for all of
7   the foregoing information about contentions regarding trade dress by each of the
8   multiple separate responding parties to this set of interrogatories.
9            MGA further objects to the extent this interrogatory seeks information
10  that is beyond MGA's personal knowledge and is not in MGA's possession, custody,
11  or control.  In particular, MGA objects to this interrogatory to the extent that it
12  requests that MGA "IDENTIFY *all* facts . . . *all* DOCUMENTS . . . and *all*
13  PERSONS" (emphasis added).  MGA also objects to this interrogatory to the extent
14  it calls for information already produced in this litigation or more easily obtainable
15  from other sources.  MGA objects to providing responses to interrogatories that can
16  be derived from documents that have or will be produced (when requested in
17  compliance with Rule 26) and where the burden to derive such information is
18  substantially the same for Mattel as it is for MGA.
19           MGA further objects to this interrogatory on the ground that it is
20  premature because MGA's trade dress (and other legal concepts that may be
21  relevant) will be the subject of expert testimony at trial.  MGA objects to this
22  interrogatory to the extent it seeks to limit the expert testimony that MGA may seek
23  to introduce at trial.  MGA will identify its experts and make related disclosures in
24  accordance with the Court's orders and applicable rules.
25           Subject to and without waiving the foregoing objections, MGA provides
26  the following supplemental response:
27           That the elements of MGA's trade dress in its "Bratz" and "Bratz Petz"
28  lines are aesthetic and non-functional is apparent from an examination of the Bratz

20

EXHIBIT ___3___
PAGE ___46___

1   products and packaging, compared to other leading fashion dolls.  That MGA's
2   packaging was and is inherently distinctive is apparent from a comparison of said
3   packaging to the state of fashion doll packaging when Bratz was introduced in 2001,
4   the fact that following the Bratz introduction competitors have copied significant,
5   innovative elements of the Bratz packaging, and the fact that the packaging has won
6   industry awards.  MGA's trade dress has also acquired secondary meaning as a
7   source indicator for "Bratz" as a result of the enormous success of the Bratz dolls in
8   the market, and the marketing and promotional efforts employed by MGA to support
9   Bratz.

10          Documents evidencing the market strength of the Bratz trade dress
11   features include documents evidencing (i) sales totals; (ii) package awards; (iii)
12   package related design patents; (iv) publicity given to the Bratz dolls and their
13   success; and (v) documents evidencing industry awards given to MGA on account of
14   the success of the Bratz dolls and/or their innovative packaging, and the fact that said
15   packaging has been copied and mimicked by competitors.

16          Persons with knowledge of the packaging issues include Steffen Smith
17   (Director of Structural Engineering/Creative Package Development), Leon
18   Djiguerian (in Product Development), Samir Khare and Aileen Storer (Creative
19   Director of Bratz & Dolls).  Such issues also fall within the scope of expert
20   testimony.  Many individuals are knowledgeable of the striking similarities between
21   the protected trade dress of Bratz and features of My Scene Barbie dolls and
22   packaging.  These include Carter Bryant and Paula Garcia.

23
24
25
26
27
28

MGA'S SUPPL. RESPONSES TO MATTEL INC.'S SEVENTH SET OF INTERROGATORIES   NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___3___
PAGE ___47___



1    That the unique aspects of the Bratz dolls heads/facial features have

2  acquired secondary meaning falls within the scope of expert testimony.

3  DATED:  November 30, 2007

4

5                              SKADDEN, ARPS, SLATE, MEAGHER &
                             FLOM LLP
6

7                              By: _____
                                        Thomas J. Nolan
8                              Attorneys for Counter-Defendants, MGA
                             ENTERTAINMENT, INC., ISAAC LARIAN,
9                              MGA ENTERTAINMENT (HK) LTD., and
                             MGAE de MEXICO S.R.L. de C.V.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA'S SUPPL. RESPONSES TO MATTEL INC.'S SEVENTH SET OF INTERROGATORIES    NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___3___
PAGE ___48___

# EXHIBIT 4

1 | THOMAS J. NOLAN (Bar No. 66992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 300 South Grand Avenue
Los Angeles, California 90071-3144
3 | Telephone: (213) 687-5000
Facsimile: (213) 687-5600
4 | E-mail: tnolan@skadden.com

5 | RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | Four Embarcadero Center, 38th Floor
San Francisco, California 94111-5974
7 | Telephone: (415) 984-6400
Facsimile: (415) 984-2698
8 | E-mail: rkennedy@skadden.com

9 | Attorneys for Cross-Defendants
MGA Entertainment, Inc., MGAEntertainment (HK) Limited,
10 | MGAE De Mexico, S.R.L. De C.V., and ISAAC LARIAN

11 | **UNITED STATES DISTRICT COURT**

12 | **CENTRAL DISTRICT OF CALIFORNIA**

13 | **EASTERN DIVISION**

14 | CARTER BRYANT, an individual ) CASE NO. CV 04-9049 SGL (RNBx)
15 | Plaintiff, ) Consolidated with Case No. 04-9059 and Case No. 05-2727
16 | v. ) **DISCOVERY MATTER**
17 | MATTEL, INC., a Delaware corporation ) **[To be heard by Discovery Master Hon. Edward A. Infante (Ret.)]**
18 | Defendant. )
19 | ) **MGA ENTERTAINMENT, INC.'S OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL**
20 | Consolidated with MATTEL, INC. v. BRYANT and MGA ) **RESPONSES TO INTERROGATORIES (NOS. 27, 28,**
21 | ENTERTAINMENT, INC. v. MATTEL, INC. ) **29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 47, 48, 49 AND**
22 | **CONFIDENTIAL – ATTORNEYS' EYES ONLY** ) **50) BY THE MGA PARTIES**
23 | ) **[Declaration of Timothy A. Miller filed concurrently herewith]**
24 |
25 | Hearing Date: TBD
Time: TBD
26 | Place: TBD
27 | **Phase 1:**
Discovery Cut-Off: January 28, 2008
28 | **Filed Under Seal Pursuant to Protective Order** Pre-Trial Conference: May 5, 2008
Trial Date: May 27, 2008

12-31

EXHIBIT ___4___
PAGE ___49___

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.  PRELIMINARY STATEMENT ........................................................... 1

II.  STATEMENT OF FACTS ................................................................... 4

    A.  Mattel's Interrogatories and MGA's Timely Initial and Supplemental Responses ........................................................... 4

    B.  Mattel's Misrepresentations Regarding the Parties' "Meet and Confer" ......................................................................... 5

    C.  Mattel "Jumps the Gun" On Another Motion to Compel .......... 7

III.  INTERROGATORY NO. 46 IMPROPERLY INVADES MGA'S ATTORNEY-CLIENT RELATIONSHIP WITH PRIOR COUNSEL. ...................................................................................... 8

IV.  INTERROGATORY NO. 39 IS AN IMPROPER ATTEMPT TO OBTAIN BANK ACCOUNT INFORMATION TO ISSUE MORE ABUSIVELY DRAWN AND HARASSING SUBPOENAS .................................................................................. 10

V.  MATTEL'S CONTENTION INTERROGATORIES DIRECTED TO THE "INVENTION" OF BRATZ ARE DESIGNED TO CONFUSE THE JURY, CIRCUMVENT THE 50 INTERROGATORY LIMIT AND IMPOSE UNDUE BURDEN AND EXPENSE ON MGA. .......................................................... 13

    A.  Mattel's Misleading Defined Terms Are Designed To Confuse The Jury ................................................................. 13

        1.  Mattel's Definition of "Bratz Invention" ....................... 14

        2.  Mattel's Definition of "Design" .................................... 15

    B.  The Component Parts Of Mattel's Defined Terms Multiply The Interrogatories Beyond The 50-Interrogatory Limit ......... 17

    C.  Mattel's Interpretation Of Its Contention Interrogatories Renders Them Unduly Burdensome And Expensive .............. 19

VI.  MGA'S RESPONSES TO MATTEL'S CONTENTION INTERROGATORIES ARE FULL AND COMPLETE BECAUSE THEY PROVIDE MATTEL WITH THE PRINCIPAL FACTS SUPPORTING MGA'S CONTENTIONS ..... 21

    A.  Rule 33 Requires MGA To State The Principal Or Material Facts Supporting Its Contentions In Response To Mattel's Contention Interrogatories .......................................................... 21

i

EXHIBIT __4__
PAGE __50__

1     B.    MGA's Responses to Mattel's Contention Interrogatories Comply With Its Obligations Under Rule 33............................ 24

2

3            1.    Interrogatories Regarding Bratz Inventions and Designs (Nos. 27-30 and 42) ........................................ 24

4            2.    Interrogatories That Assume The Truth Of Mattel's Allegations And Ask MGA For Facts Proving The

5                     Negative. ............................................................................. 26

6            3.    Interrogatories Seeking Dates On Which The Products That Mattel Copied and Infringed

7                     Originated (Nos. 43 and 44) .......................................... 28

8            4.    Trade Dress Infringement Interrogatories (Nos. 48-50) ..................................................................................... 29

9

10 VII.    MGA HAS IDENTIFIED THE FORMER MATTEL EMPLOYEES WHO CAME TO WORK AT MGA (NO. 41).......... 31

11 VIII.   MGA HAS IDENTIFIED THE COMPUTERS FROM WHICH EARLY BRATZ-RELATED DOCUMENTS COULD HAVE

12       BEEN COLLECTED (INTERROGATORIES NOS. 40 AND 47)... 31

13 IX.    CONCLUSION ................................................................................. 33

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

EXHIBIT ___4___
PAGE ___51___

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Auto Meter Prods., Inc. v. Maxima Techs. & Sys., LLC,*
No. 05 C 4587, 2006 WL 3253636 (N.D. Ill. Nov. 6, 2006)........................ 22

*Autotext Commc'n Network v. US Telecom,Inc.,*
Civ. A. No. 94-2395-GTV, 1995 WL 625953
(D. Kansas Oct. 5, 1995)................................................................................. 23

*Blowers v. Lawyers Coop. Publ'g,*
Civil Action No. CIV-73-47, 1982 WL 221
(W.D.N.Y. Jan. 16, 1982) ............................................................................... 10

*Clean Earth Remediation & Constr. Servs. v. America Int'l Group,*
245 F.R.D. 137 (S.D.N.Y. 2007) ............................................................... 3, 19

*Dang v. Cross,*
No. CV 00 13001 GAF(RZX), 2002 WL 432197
(C.D. Cal. March 18, 2002) ..................................................................... 22, 23

*Desny v. Billy Wilder,*
46 Cal. 2d 715 (1956) ..................................................................................... 14

*Feshbach v. Securities & Exchange Commission,*
5 F. Supp. 2d 774 (N.D. Cal. 1997)................................................................. 8

*Flynn v. Church of Scientology Int'l,*
116 F.R.D. 1 (D. Mass. 1986).......................................................................... 8

*George v. Siemens Indus. Automation, Inc.,*
182 F.R.D. 134 (D.N.J. 1998),......................................................................... 9

*In re Grand Jury Subpoena To Kansas City Board of Public Utils.,*
No. 07-MC-212KHV/JPO, 2007 WL 4150974 (D. Kan. Nov. 19, 2007) .......................................................................................................... 9

*Grosso v. Miramax Film Corp.,*
383 F.3d 965 (9th Cir. 2004) ......................................................................... 14

*Grynberg v. Total S.A.,*
No. 03-cv-01280-WYD-BNB, 2006 WL 1186836
(D. Col. May 3, 2006)..................................................................... 2, 3, 19, 21

*Hickman v. Taylor,*
329 U.S. 495 (1947).......................................................................................... 8

*Hiskett v. Wal-Mart Stores, Inc.,*
180 F.R.D. 403 (D. Kan. 1998) ............................................................ 3, 22, 23

*IBP, Inc. v. Mercantile Bank of Topeka,*
179 F.R.D. 316 (D. Kan. 1998) ............................................................ 3, 21, 22

EXHIBIT __4__
PAGE __52__

1  *J & M Turner, Inc. v. Applied Bolting Tech. Prods.*,
2      Civil Action No. 95-2179, Civil Action No. 96-5819, 1997 U.S. Dist.
       LEXIS 4447 (E.D. Pa. Apr. 2, 1997)............................................................ 11

3  *Lawrence v. First Kansas Bank & Trust Co.*,
4      169 F.R.D. 657 (D. Kan. 1996) ...................................................... 20, 21, 27

5  *Lectrolarm Custom Sys. v. Pelco Sales*,
       212 F.R.D. 567 (E.D. Cal. 2002)............................................................. 11

6  *Mattel, Inc. v. Walking Mountain Prods.*,
7      353 F.3d 792 (9th Cir. 2003) .................................................................. 12

8  *Moon v. SCP Pool Corp.*,
       232 F.R.D. 633 (C.D. Cal. 2005)............................................................ 11

9  *Moses v. Halstead*,
10     236 F.R.D. 667 (D. Kan. 2006) ........................................ 2, 3, 19, 21, 23

11 *In re Napster, Inc. Copyright Litig.*,
       479 F.3d 1078 (9th Cir. 2007) ................................................................ 9

12 *Pension Benefit Guaranty Corp. v. Ziffer*,
13     No. 91 C 7762, 1994 WL 11654 (N.D. Ill. Jan. 6, 1994) ............................ 24

14 *Safeco of America v. Rawstron*,
       181 F.R.D. 441 (C.D. Cal. 1998)......................................................... 20, 27

15 *Stoldt  v. Centurion Indus.*,
16     No. 03-2634-CM-DJW, 2005 WL 375667 (D. Kan. Feb. 3, 2005) ....... 21, 27

17 *Tennison v. San Francisco*,
       226 F.R.D. 615 (N.D. Cal. 2005)............................................................ 22

18 *Twigg v. Pilgrim's Pride Corp.*,
19     Civil Action No. 3:05-CV-40, 2007 WL 676208
       (N.D. W. Va. Mar. 1, 2007)................................................................... 23

20 *Upjohn Co. v. United States*,
21     449 U.S. 383 (1981)................................................................................ 8

22 *Williams v. The Art Inst. Of Atlanta*,
       Civil Action File No. 1:06-CV-0285-CC/AJB, 2006 WL 3694649
23     (N.D. Ga. Sept. 1, 2006) ....................................................................... 23

24 *Wilson v. Thompson/Center Arms Co.*,
       Civil Action No. 05-6493-KDE-SS, 2006 WL 3524250
25     (E.D. La. Dec. 5, 2006).......................................................................... 23

26 *Zapata v. IBP, Inc.*,
       Civil Action No. 93-2366-EEO, 1997 WL 122588
27     (D. Kan. 1997) ...................................................................................... 24

28 ///

   ///

EXHIBIT __4__

PAGE __53__

1    ///

2    **STATUTES**

3    17 U.S.C. § 101 ................................................................................................ 14, 16

4    17 U.S.C. § 102(b) ................................................................................................. 14

5    35 U.S.C. § 102(g) ................................................................................................. 16

6    35 U.S.C. § 171 ..................................................................................................... 16

7    Cal. Civ. Code § 3426.1 ........................................................................................ 16

8    Fed. R. Civ. Proc. 26(b)(1) ...................................................................................... 8

9    Fed. R. Civ. Proc. 26(b)(3) ...................................................................................... 8

10

11    **OTHER AUTHORITIES**

12    1-23 *Chisum on Patents* § 23.01 .......................................................................... 16

13    1-GLOS *Chisum on Patents* (2007) ............................................................... 14, 16

14    4-13 *Nimmer on Copyright §13.03 (2007)* .......................................................... 17

15

16

17

18

19

20

21

22

23

24

25

26

27

28

v

EXHIBIT   4

PAGE   56

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

Although Mattel Inc.'s ("Mattel's") Motion to Compel Responses to Interrogatories (the "Motion") is addressed to twenty-three interrogatories, there are really only four areas of dispute.

First, does Interrogatory No. 46, which concerns an imagined "dispute" between MGA and its prior counsel of record, seek information that is protected by either the work product doctrine or attorney-client privilege? The answer is "Yes," and Mattel's request for that information should be denied. If Mattel's rank speculation that there was a "dispute" between MGA and its prior counsel (a fact that is assumed by Interrogatory No. 46 but not supported in Mattel's Motion) were correct, either (i) the dispute does not relate to the claims and defenses in this action, so it is irrelevant and outside the proper scope of discovery, or (ii) it does relate to the claims or defenses in this action, such that revelation of the substance of the dispute would necessarily reveal the thought processes of MGA's trial counsel and the communication of those thought processes from prior trial counsel to MGA.

Second, is Mattel entitled to the sweeping financial data sought in Interrogatory No. 39: every bank account that MGA, MGA Hong Kong, MGA Mexico and Isaac Larian have had at any time since January 1, 1999? The answer is "No," and Mattel's request should be denied. Mattel readily admits that it wants this information so that it can launch another series of third-party subpoenas seeking a broad array of private financial information about the defendants and various third parties. Mattel's abusive third party discovery practice in this action is the subject of MGA's separate motion to quash subpoenas issued by Mattel to ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells Fargo (filed December 21, 2007).

---

EXHIBIT __4__
PAGE __55__

1     Third, do Mattel's contention interrogatories attempt to use misleading and
2   unfair definitions to create jury confusion or to circumvent Judge Larson's 50-
3   interrogatory limit? The answer is "Yes" on both counts. For example, Mattel's
4   definition of "BRATZ INVENTION" contains ten separate component parts
5   ("representation, idea, concept, work, process, procedure, plan, improvement,
6   DESIGN or other development"). The incorporation of the defined term "DESIGN"
7   adds at least another 21 elements ("all works, designs, artwork, sketches, drawings,
8   illustrations, representations, depictions, blueprints, schematics, diagrams, images,
9   sculptures, prototypes, models, samples, rotocasts, reductions to practice,
10   developments, inventions and/or improvements"). The inclusion of these disparate
11   concepts in the term "invention" improperly conflates distinct issues of patent law,
12   copyright protection, trade secret law and the common law protecting original ideas,
13   many of which have no place in the ordinary usage of the term "invention." These
14   distinctions are especially important here because Mattel lays claim to Bratz under a
15   January 4, 1999, "Employee Confidential Information and Inventions Agreement."
16     Mattel is not seeking legitimate discovery designed to assist in the prosecution
17   or defense of claims. Rather, Mattel is looking for a misleading "sound bite" it can
18   read to the jury to argue that MGA concedes that Bryant "invented" Bratz while
19   employed by Mattel, or to force MGA to answer 30 plus interrogatories in one, thus
20   circumventing the 50-interrogatory limit. MGA has answered the interrogatories
21   using the common and ordinary meaning of the term "invention." Any further
22   response would only reward Mattel's attempted misuse of the discovery process.
23     Fourth, does Rule 33 require a response to a contention interrogatory to set
24   forth more than the principal factual and legal bases for the response, as MGA has
25   already done? The answer is clearly "No." *See Moses v. Halstead*, 236 F.R.D. 667,
26   674 (D. Kan. 2006); *Grynberg v. Total S.A.*, No. 03-cv-01280-WYD-BNB, 2006 WL
27   1186836, at *7 (D. Col. May 3, 2006) ("It is proper, of course, to inquire about the
28   material facts supporting specific factual matters raised in the pleadings."); *IBP, Inc.*

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL

EXHIBIT   4
PAGE   56

1  *v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998) ("An
2  interrogatory may reasonably ask for the material or principal facts which support a
3  contention."); *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D. Kan.
4  1998) ("Interrogatories may, however, properly ask for the 'principal or material'
5  facts which support an allegation or defense.").  Mattel's attempt to compel MGA to
6  provide a narrative account of every stitch of evidence supporting its defense of this
7  action would render Mattel's contention interrogatories unduly burdensome and
8  "inherently improper."  *See, e.g., Clean Earth Remediation & Constr. Servs. v. Am.*
9  *Int'l Group*, 245 F.R.D. 137, 141 (S.D.N.Y. 2007) ("[A] number of cases have held
10  that interrogatories seeking identification of all facts supporting a particular
11  allegation are *inherently improper*.") (emphasis added) (collecting cases); *Moses*,
12  236 F.R.D. at 674 ('[C]ontention interrogatories' are overly broad and unduly
13  burdensome on their face if they seek 'all facts' supporting a claim or defense, such
14  that the answering party is required to provide a narrative account of its case.");
15  *Grynberg*, 2006 WL 1186836, at *6-*7; *Hiskett*, 180 F.R.D. at 404-05
16  ("Interrogatories should not require the answering party to provide a narrative
17  account of its case."); *IBP, Inc.*, 179 F.R.D. at 321 ("[t]o require specifically 'each
18  and every' fact and application of law to fact . . . would too often require a laborious,
19  time-consuming analysis, search, and description of incidental, secondary, and
20  perhaps irrelevant and trivial details").

21       Finally, as Mattel acknowledges, during the meet and confer process, MGA
22  agreed to supplement a number of its responses.  MGA did so on the understanding
23  that Mattel would defer filing a motion to compel until after it received and reviewed
24  the supplemental responses.  Mattel then went ahead and filed the present Motion.
25  In light of that unexpected development, MGA is reevaluating whether voluntary
26  supplementation will serve any purpose.[1]

27
28

---

[1]  Parenthetically, MGA's offer to supplement its interrogatory responses was
not, as Mattel would suggest, a concession that MGA's prior responses were
deficient or incomplete.  As MGA told Mattel, two events in the litigation
*(cont'd)*

3

EXHIBIT __4__
PAGE __57__

## II. STATEMENT OF FACTS

### A. Mattel's Interrogatories and MGA's Timely Initial and Supplemental Responses

Since late September 2007, Mattel has served five sets of interrogatories, each of which was propounded to MGA, MGA Hong Kong, MGA Mexico and Isaac Larian, for a total of 20 sets containing 88 interrogatories: (i) Mattel's Revised Third Set of Interrogatories (containing Interrogatories Nos. 27-41); (ii) Mattel's Fourth, and later "Amended" Fourth Set of Interrogatories (containing Interrogatories Nos. 42-44); (iii) Mattel's Fifth Set of Interrogatories (Nos. 46-47); (iv) Mattel's Sixth Set of Interrogatories (propounding Interrogatory No. 45, which had been withdrawn from the Fourth Set) (the sole interrogatory of these five sets not at issue in this Motion); and (v) Mattel's Seventh Set of Interrogatories (Nos. 48-50). (*See* Proctor Decl. Exhs. 7-12.) As with Mattel's Motion, this opposition will focus on the responses of MGA. Each argument herein applies equally to the responses of each of the MGA entities and Mr. Larian.

MGA timely responded to each set of interrogatories, preserving its objections. (Miller Decl. ¶ 2.) However, given that MGA's new counsel was in the process of familiarizing itself with the case, MGA did not provide substantive responses to the interrogatories in its initial response. (*Id.*) The day after the stay was lifted, MGA met with Mattel's counsel to discuss a number of open discovery issues. (*Id.* ¶ 3.) It was pointed out to Mattel's counsel that Mattel had longstanding obligations to

---

*(cont'd from previous page)*

prompted MGA's decision to serve supplemental responses: (i) on December 10, 2007, Mattel served 117 pages of supplemental responses to MGA's February 2005 First Set of Interrogatories; and (ii) on December 12, 2007, Margaret Leahy, a key third-party witness involved in the early development of Bratz, was deposed. Mattel's long overdue supplemental interrogatory responses (and over 500 pages of supplemental responses to Carter Bryant's June 2004 First Set of Interrogatories) provided MGA with a better understanding of Mattel's contentions in this action and enabled MGA to respond more directly to those contentions. Margaret Leahy's deposition testimony provided additional facts supporting MGA's position. In addition, MGA was aware that key third party witnesses Elisa Cloonan and Veronica Marlow would be deposed prior to January 7. (Miller Decl. ¶ 13.)

---

EXHIBIT __4__

PAGE __58__

1 | provide supplemental responses to requests for admission and interrogatories that
2 | had been propounded by MGA and Carter Bryant on Mattel. (*Id.*) In that meeting,
3 | MGA's counsel and Mattel's counsel agreed to exchange supplemental responses to
4 | interrogatories and requests for admission on November 30, 2007. (*Id.*) MGA met
5 | the deadline, but Mattel did not. (*Id.* ¶¶ 4-5.)

6 |      **B.**    <u>**Mattel's Misrepresentations Regarding the Parties' "Meet and Confer"**</u>
7 |

8 |      Although MGA's counsel had agreed on November 16, 2007, to supplement
9 | its responses by November 30, 2007, Mattel's counsel began sending "meet and
10 | confer" letters about MGA's initial responses prior to November 30. (Miller Decl. ¶
11 | 6.) It later became clear that this was an effort to "start the clock" on Mattel's *pro*
12 | *forma* "meet and confer" obligations under the Discovery Master Stipulation so that
13 | Mattel could file a motion to compel as soon as possible. Indeed, after MGA served
14 | supplemental responses on November 30, 2007, as promised, Mattel's counsel
15 | refused to send a follow up letter addressing MGA's supplemental responses, but
16 | instead insisted on going forward with a meet and confer based on the letters that had
17 | been sent before MGA's supplemental responses had been served. (*Id.* ¶ 6, Ex. 1 at
18 | 2 - 3)

19 |      Counsel for Mattel and counsel for MGA conferred about MGA's
20 | supplemental responses on December 10 and 12, 2007. (Miller Decl. ¶ 7) In its
21 | Motion, Mattel makes several statements about this meet and confer process that are
22 | not accurate. First, it is important to note that the "record" upon which Mattel relies
23 | is a self-serving, one-sided letter dated December 13, 2007, sent by Mattel's counsel
24 | following the parties' meet and confer. (Proctor Decl. Ex. 5.) Counsel for Mattel
25 | sent this letter at a time when, as Mattel's counsel knew, counsel for MGA was
26 | primarily focused on the preparation of papers opposing an extremely voluminous
27 |
28 |

EXHIBIT __4__
PAGE __59__

1   motion to compel filed by Mattel.[2]  (Miller Decl. ¶ 7.)  MGA's counsel sent an email

2   to Mattel's counsel acknowledging receipt of the letter and saying that a response

3   would be sent.  (*Id.* ¶ 8.)  Mattel filed this Motion before MGA's counsel could send

4   a response.  (*Id.*)  Mattel's counsel's attempt to create a meet and confer "record" by

5   sending a self-serving letter and then rushing to file a motion before a responsive

6   letter could be sent should not be construed as agreement by MGA with anything

7   contained in that letter.

8          Second, Mattel asserts that "during the meet and confer process, counsel for

9   MGA represented to Mattel that MGA is not refusing to respond to any of Mattel's

10  interrogatories based on" the objection that the interrogatories exceed the 50-

11  interrogatory limit.  (Motion at 3-4, n.12; *id.* at 20:6-8.)  This is true, as stated, but

12  leaves out a *proviso* important to this Motion.  MGA has not refused to answer the

13  interrogatories based on the 50-interrogatory limit.  Rather, MGA has refused to use

14  the compound and misleading defined terms that permeate Mattel's interrogatories,

15  such as the terms "BRATZ INVENTION" and "DESIGN," but instead used the

16  word "invention" in its ordinary usage.  (Miller Decl. ¶ 9.)  During the meet and

17  confer process, Mattel's counsel objected to these answers, and argued that MGA

18  must either use Mattel's distorted definitions or respond to each of the many

19  component parts of Mattel's definition.  (*Id.* ¶ 10.)  Counsel for MGA made clear that

20  if Mattel asserted that interpretation of its interrogatories, MGA would reserve the

21  right to contend that Mattel's interrogatories are compound and exceed the 50-

22  interrogatory limit.  (*Id.*)[3]  *See* Section V, *infra*.

23  ────────────
    [2]      As counsel for Mattel well knew, at that time MGA's counsel was focused on
24       the preparation of papers in opposition to another premature motion to compel
         that had been filed by Mattel which included a 76-page brief, more than 130
25       pages of separate statements, and more than 1,000 pages of supporting
         documents, and for which Mattel had refused to grant more than a 6-day
26       extension of the one week response time.  (Miller Decl. ¶7.)

27  [3]      In support of its assertion, Mattel points to a letter from Mattel's counsel to
         MGA's counsel dated December 13, 2007.  (Mot. at 4 n.12.)  As noted above,
28       Mattel's counsel did not give MGA's counsel an opportunity to correct this
         misstatement.

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL

EXHIBIT ___4___
PAGE ___60___

1    Third, Mattel refers to "MGA's assurance in its Supplemental Responses to
2  Mattel Inc.'s Revised Third Set of Interrogatories that MGA '[would] respond using
3  words contained within the Mattel definition in their normal accepted
4  meaning.'" (Motion at 20-21.) Mattel seizes upon this language to argue that MGA
5  "contradicted" this assurance by refusing to use the defined term "BRATZ
6  INVENTION" or to respond to each of the component parts of that term. (*Id.*)
7  Mattel's counsel fails to mention that it raised this issue during the meet and confer,
8  and MGA's counsel clarified this language by explaining that the response was
9  inartfully drafted and that it should be read to say that MGA would respond using the
10 *words contained* in the *defined term* in their ordinary usage (*i.e.*, the words "Bratz"
11 and "invention"), not that MGA was committing to a response using each of the
12 several words used in Mattel's definition of "BRATZ INVENTION." (Miller Decl.
13 ¶ 11.)[4] As discussed below, to require MGA to respond to each component part of
14 each defined term in Mattel's interrogatories would violate the 50-interrogatory limit.

15     **C.     Mattel "Jumps the Gun" On Another Motion to Compel**

16    As Mattel acknowledges in its Motion, MGA offered in a conference of
17 counsel on December 12, 2007, to further supplement its responses. (Motion at 8.)
18 MGA's counsel did so with the understanding that Mattel would consider MGA's
19 supplemental responses before filing a motion to compel. (Miller Decl. ¶ 13.)
20 Mattel's counsel did not wait for a response to its December 13, 2007, letter, or any
21 supplemental interrogatory responses, but instead filed this Motion, based in large
22 part on the self-serving misrepresentations made in its counsel's December 13 letter.
23 Mattel moves to compel further responses to all but Interrogatory 45. As discussed
24 below, MGA's current responses comply with its obligations under Rule 33 of the
25 Federal Rules of Civil Procedure.

26  [4]    Again, Mattel points to the December 13, 2007, letter from its counsel to
27 MGA's counsel to support this contention. As noted in the previous footnote,
   this Motion was filed before MGA's counsel had an opportunity to correct the
28 record on this and other misstatements in Mattel's counsel's December 13
   letter. (Miller Decl. ¶ 8.)

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL

EXHIBIT __4__
PAGE __6/__

III.   **INTERROGATORY NO. 46 IMPROPERLY INVADES MGA'S ATTORNEY-CLIENT RELATIONSHIP WITH PRIOR COUNSEL.**

Mattel has failed to demonstrate how Interrogatory No. 46 could lead to the discovery of relevant non-privileged evidence. If the imagined "dispute" between MGA and its prior counsel does not relate to the claims or defenses in this action, then it is not relevant and is not subject to discovery. Fed. R. Civ. Proc. 26(b)(1). If the dispute does relate to the claims or defenses in the action, then it necessarily involves prior counsel's mental impressions as to how this action should or should not be litigated. Such mental impressions are protected by the attorney work product doctrine. *See Feshbach v. Sec. & Exch. Comm'n*, 5 F. Supp. 2d 774, 781-82 (N.D. Cal. 1997) (work product doctrine protects from disclosure "'the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation' as well as documents 'prepared in anticipation of litigation'") (citing Fed. R. Civ. P. 26(b)(3)); *see also Hickman v. Taylor*, 329 U.S. 495 (1947). Moreover, for there to be a "dispute," there must have been communication between attorney and client as to their differing views. Thus, Interrogatory No. 46 seeks to invade the attorney-client privilege by requiring MGA to disclose the nature of any such dispute, which would require MGA to disclose the content of attorney-client communications regarding the dispute. *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981).

But this entire debate is academic, because Mattel has not introduced a shred of evidence supporting its supposition that there was a "dispute" between MGA and its prior counsel. In addition, other than for its utterly baseless conspiracy theories involving imagined misconduct, Mattel has failed to offer any justification for its inquiry into MGA's relationship with its previous attorneys. Interrogatory No. 46 intrudes upon the attorney-client privilege and work product doctrine, notwithstanding Mattel's representation that it only seeks non-privileged information. *See Flynn v. Church of Scientology Int'l*, 116 F.R.D. 1, 4 (D. Mass. 1986) (quashing

8

EXHIBIT ___4___
PAGE ___62___

1  subpoena served on former attorney on privilege and relevance grounds).  Moreover,

2  Mattel's mere speculation that MGA discussed wrongdoing with its attorneys is not

3  enough to invade the attorney-client privilege or work product doctrine, particularly

4  where Mattel does not allege any wrongdoing actually occurred.  For example, as the

5  Ninth Circuit recently held, a party seeking to vitiate the attorney-client privilege or

6  work-product doctrine based on the crime-fraud exception must demonstrate the

7  applicability of the exception by a preponderance of evidence.  *In re Napster, Inc.*

8  *Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007).  Mattel's rank speculation

9  does not provide a basis to invade the privilege.

10       Nor is Mattel correct that MGA waived the attorney-client privilege or work

11  product doctrine by commenting to the press regarding its decision to change counsel.

12  There can be no waiver of protected material because none of the statements

13  disclosed the substance of any of confidential legal advice.  *See, e.g., In re Grand*

14  *Jury Subpoena To Kan. City Bd. of Public Utilities*, No. 07-MC-212KHV/JPO, 2007

15  WL 4150974, at * 6 (D. Kan. Nov. 19, 2007) (no waiver resulting from interview

16  about report where "[a]ll that was discussed during the interview were non-

17  privileged matters").  Rather, the statements at issue merely acknowledged the

18  change in counsel and discussed the reasons for it generally.

19       In addition, the authority Mattel does cite to support its contention that this is

20  an "appropriate case" for disclosure have no bearing on whether a party can be

21  forced to answer an interrogatory about its relationship with its former attorneys.  In

22  *George v. Siemens Industrial Automation, Inc.*, 182 F.R.D. 134 (D.N.J. 1998), the

23  court allowed disclosure of one paragraph of plaintiff's declaration that described her

24  mental condition after the court found the defendants' need for the information

25  "compelling" and concluded that "anything short of disclosing the information to

26  Defendants will result in the Court being a party to the perpetration of a fraud."  *Id.*

27  at 142-43.  Mattel's wild conspiracy theories fail to demonstrate any fraud or actual

28  need for the information, much less the "compelling" need discussed in *George*.

9

EXHIBIT ___4___

PAGE ___63___

1  Similarly, in *Blowers v. Lawyers Cooperative Publishing*, Civil Action No. CIV-73-

2  47, 1982 WL  221 (W.D.N.Y. Jan. 16, 1982), the court ruled that the information

3  sought – related to a fee agreement in a dispute over attorneys fees – was not

4  privileged to begin with. *Id.* at *5. Mattel makes no claim that MGA's fee

5  agreement with O'Melveny is relevant to this dispute and the case has no other

6  relevance here.

7  **IV.   INTERROGATORY NO. 39 IS AN IMPROPER ATTEMPT TO**
    **OBTAIN BANK ACCOUNT INFORMATION TO ISSUE MORE**

8  **ABUSIVELY DRAWN AND HARASSING SUBPOENAS**

9       Mattel's Interrogatory No. 39 requests MGA, MGA HK, MGA Mexico and

10 Isaac Larian to identify every bank or financial institution account that "refers or

11 relates" to them since January 1, 1999. As Mattel admits in its Motion, Mattel seeks

12 this information so that it can subpoena a broad array of financial information from

13 these banks and financial institutions. (Mot. at 25-27.) The Court should deny

14 Mattel's request to compel a response to Interrogatory No. 39 because Mattel has not

15 shown good cause for the invasive and burdensome third party discovery to which a

16 response will inevitably lead.

17      Mattel claims that it needs information concerning MGA's financial condition

18 to establish MGA's net worth in connection with Mattel's punitive damage claims.

19 (Mot. at 26-27.)  But Mattel has already received substantial financial information

20 from MGA directly, and has not shown how that information is insufficient.  MGA

21 has already produced more than 37,000 pages of financial information to Mattel,

22 including:

23       •    Audited and unaudited quarterly and annual profit and loss statements;

24       •    Audited and unaudited quarterly and annual statements;

25       •    Annual reports;

26       •    Various MGA financial reports;

27       •    Various financial documents relating to Veronica Marlow;

28       •    Documents showing royalty payments to Carter Bryant;

- Documents showing MGA's sales, returns and costs of good sold for each month, by SKU, since 2001;

- Documents showing MGA's promotional, advertising and media expenditures, including MGA's internal allocation of those expenditures by brand and/or product;

- Documents showing MGA's amortization and depreciation of certain capital assets and expenditures;

- Documents showing MGA's monthly general ledger entries aggregated by account, including income and expense accounts, reserves and liabilities; and

- Documents sufficient to explicate MGA's various accounts as presently and historically maintained in MGA's books and records, as well as various nomenclature assigned to items, products, brands, sub-brands, and profit centers.

(Miller Decl. ¶ 14.)  Mattel has not shown how this financial information is insufficient for its financial experts to determine MGA's net worth, or how additional discovery from MGA's banks and financial institutions will assist that analysis.

A subpoena is unduly burdensome where the subpoenaing party "can more easily and inexpensively obtain the documents from [another party], rather than from [the] nonparty." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005). *See also Lectrolarm Custom Sys. v. Pelco Sales*, 212 F.R.D. 567, 573 (E.D. Cal. 2002) (issuing protective order where plaintiff subpoenaed non-party for documents that plaintiff had sought from defendant because the "burdensome and harassing nature of the requests clearly outweigh[ed] the minimal need for the very limited amount of information that could be discovered under the subpoenas"); *J & M Turner, Inc. v. Applied Bolting Tech. Prods.*, Civil Action No. 95-2179, Civil Action No. 96-5819, 1997 U.S. Dist. LEXIS 4447, at * 3 (E.D. Pa. Apr. 2, 1997) (granting non-party bank's motion to quash subpoena seeking financial information already sought and obtained from another party).

Mattel claims that the "bank account information may lead to direct evidence of liability regarding Mattel's allegations of commercial bribery." (Mot. at 25.)

EXHIBIT ___4___
PAGE ___65___

1  These are nothing but unsubstantiated allegations that do not justify the type of
2  abusive non-party discovery that Interrogatory No. 39 is designed to facilitate.
3  Mattel's "bribery" allegations consist solely of Mattel's allegation that MGA
4  financed Bryant's development of Bratz while he was still employed at Mattel.
5  (Proctor Decl. Ex. 41, Mattel's Second Am. Answer & Counterclaim at 37 (¶ 33), 59
6  (¶ 93(d)), 74 (¶ 165).)  Thus, the only financial documents that could possibly be
7  relevant to this allegation are documents showing payments by MGA to Bryant
8  during the time he was a Mattel employee.  MGA witness Lisa Tonnu has already
9  testified regarding payments to Mr. Bryant.  (Miller Decl. ¶ 15, Ex. 2 at 9-14 and 20 )
10 The financial records produced by MGA would also reflect those payments.  This
11 Court should not permit Mattel to engage in a fishing expedition through the private
12 banking records of the MGA entities and Isaac Larian on a quest to substantiate its
13 speculation about "commercial bribery."[5]

14      If Mattel is permitted to obtain the identity of every bank at which MGA,
15 MGA HK, MGA Mexico and Isaac Larian hold accounts and detailed, private
16 account information for those banks, more abusively drawn subpoenas are sure to
17 follow.  Indeed, as detailed in MGA's motion to quash subpoenas issued by Mattel to
18 ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and Angela Larian
19 Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells
20 Fargo (filed December 21, 2007), Mattel has already subpoenaed these entities for
21 the *entirety* of MGA and Mr. Larian's financial records, from tax returns to canceled
22 checks, for a nine-year period from 1999 to the present, and has demanded that these
23 entities produce vast amounts of private financial records for a host of other *non-*
24 *parties*, including every person who ever did any work for MGA or Mr. Larian, and
25 every conceivable relative of Mr. Larian.
26
27 [5]   As the Court is aware, Mattel and its counsel of record in this action have
28 previously been sanctioned for their third party discovery tactics.  *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813-814 (9th Cir. 2003).

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL



EXHIBIT ___4___
PAGE ___66___

1 | **V.    MATTEL'S CONTENTION INTERROGATORIES DIRECTED TO THE "INVENTION" OF BRATZ ARE DESIGNED TO CONFUSE THE JURY, CIRCUMVENT THE 50 INTERROGATORY LIMIT AND IMPOSE UNDUE BURDEN AND EXPENSE ON MGA.**

2

3

4       Mattel's defined terms – including key terms such as "BRATZ INVENTION"

5 and "DESIGN" – include disparate concepts under intellectual property law that

6 have no place in the term "invention" and are obviously designed to confuse the jury

7 and multiply Mattel's interrogatories beyond the 50-interrogatory limit, not to obtain

8 legitimate discovery.

9       **A.    Mattel's Misleading Defined Terms Are Designed To Confuse The Jury**

10

11      Mattel improperly crams multiple, disparate concepts of intellectual property

12 law into key definitions – such as the defined term "BRATZ INVENTION" – in

13 hopes of forcing MGA to provide Mattel with a misleading "sound bite" for the jury.

14 MGA responded using the ordinary meaning of the term "invention."  (Miller Decl. ¶

15 9.)  In meet and confer, Mattel's counsel said that it will not consider MGA's

16 responses to be "full and complete" unless MGA either uses Mattel's misleading

17 defined terms in its responses or addresses each component part of each defined term

18 in each response.  Mattel is seeking to force MGA either to provide the misleading

19 sound bite that Mattel will use to mislead the jury, or answer many more than the 50

20 interrogatories permitted by Judge Larson.  The Court should not permit such abuse

21 of the interrogatory device.

22      Mattel's distorted definitions render the interrogatories directed to the

23 "invention" of Bratz unworkable and improper for a number of reasons.  First, they

24 make responding hopelessly complicated, and the answers confusing, which will

25 inevitably lead to numerous arguments over the scope and meaning of each and

26 every response.  Second, they allow Mattel to purport to ask one question while

27 actually asking multiple questions on independent issues in the same interrogatory.

28 Third, Mattel's improper definitions seek to force MGA to respond in such a way

EXHIBIT ____4____

PAGE ____67____

1 | that risks creating a misleading "sound bite" for the jury. These points are illustrated
2 | in the discussion below.

3 |        1.    Mattel's Definition of "Bratz Invention"

4 |        Although "invention" may have different meanings in different contexts, the
5 | term invariably relates to patent law. *See* 1-GLOS *Chisum on Patents* (2007)
6 | (describing the various uses of "invention" in patent law). Mattel, however, defines
7 | the term to include several other categories of intellectual property rights and
8 | doctrines in addition to patent law:

9 |
10 |
11 |
12 |

> BRATZ INVENTION means any representation, idea,
> concept, work, process, procedure, plan, improvement,
> DESIGN or other development, whether fixed in tangible
> form or not, that REFERS OR RELATES TO BRATZ,
> including but not limited to any DESIGN that REFERS OR
> RELATES TO BRATZ.

13 | *See* Mattel, Inc.'s Revised Third Set of Interrogatories at 4 (Proctor Decl. Ex. 7 at
14 | 31).

15 |        "Work" and "fixed in a tangible medium" are copyright law, not patent law,
16 | terms. *See* 17 U.S.C. § 101 (setting forth the rule that a "work is 'fixed' in a tangible
17 | medium of expression when its embodiment in a copy or phonorecord, by or under
18 | the authority of the author, is sufficiently permanent or stable to permit it to be
19 | perceived, reproduced, or otherwise communicated for a period of more than
20 | transitory duration"). In addition, by including the terms "idea" and "concept,"
21 | Mattel has also incorporated rights protected, not by patent law, but by California's
22 | idea-protection principles. *See Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967
23 | (9th Cir. 2004); *Desny v. Billy Wilder*, 46 Cal. 2d 715, 738-739 (1956).

24 |        Thus Mattel's proffered definition of "BRATZ INVENTION" includes within
25 | its scope at least three distinct areas of intellectual property law. These definitions
26 | are all the more confusing and complicated because while some "ideas" can be
27 | protected under the *Desny* doctrine and others could lead to a patented invention,
28 | "ideas" are not protected under copyright law. *See* 17 U.S.C. § 102(b).

EXHIBIT ___4___
PAGE ___68___

1    The risk of a misleading "sound bite" is readily apparent when one considers
2 that the critical document at issue in this lawsuit with respect to Mattel's affirmative
3 claims is the "Employee Confidential Information and Inventions Agreement" signed
4 by Carter Bryant on or about January 4, 1999.  Mattel seeks to have MGA admit that
5 Carter Bryant was responsible for creating an "invention," even though he in fact did
6 not create an "invention" as that term is used by everyone on the planet except for
7 Mattel, if what he did was create a novel idea protectible under *Desny*, but not
8 eligible for patent protection.

9    By way of example, Mattel's Interrogatories 27-29 ask MGA to "IDENTIFY
10 each and every BRATZ INVENTION that was CREATED" before or after certain
11 dates relating to Carter Bryant's employment at Mattel.  *See* Mattel, Inc.'s Revised
12 Third Set of Interrogatories at 9-10 (Proctor Decl. Ex. 7 at 36-37).  Mattel has known
13 since as early as 2005, when it took Carter Bryant's deposition, that Bryant made
14 minor changes to his Bratz-concept drawings in 1999 and/or 2000.  By defining
15 "CREATED" to include "altered," *see* Mattel, Inc.'s Revised Third Set of
16 Interrogatories at 6 (*id.* at 33) , Mattel is hoping that MGA will admit that Carter
17 Bryant made an "invention" during his employment with Mattel, even though the
18 minor changes he made to the drawings were not "inventions" as the term is used in
19 patent law, nor were they meaningful from a copyright point of view.  If successful,
20 Mattel's gambit would allow it to parade before the jury its "Inventions Agreement"
21 and then argue to the jury that in response to an interrogatory, MGA admitted that
22 Carter Bryant had indeed made an "invention" while working at Mattel in 1999/2000.

23    2.    Mattel's Definition of "Design"

24    Mattel defines "DESIGN" or "DESIGNS" as:

25    any and all representations, whether two-dimensional or
   three-dimensional, and whether in tangible, digital,
26    electronic or other form, including but not limited to all
   works, designs, artwork, sketches, drawings, illustrations,
27    representations, depictions, blueprints, schematics,
   diagrams, images, sculptures, prototypes, models, samples,
28    rotocasts, reductions to practice, developments, inventions
   and/or improvements, as well as all other items, things and

15

EXHIBIT __4__
PAGE __69__

1            DOCUMENTS in which any of the foregoing are or have
2            been expressed embodied, contained, fixed or reflected in
            any manner, whether in whole or in part.

3 *See* Mattel, Inc.'s Revised Third Set of Interrogatories at 3 (Proctor Decl. Ex. 7 at

4 30); Mattel, Inc.'s Amended Fourth Set of Interrogatories at 3 (Proctor Decl. Ex. 9 at

5 53).

6       This definition combines at least three or four disparate intellectual property

7 concepts. In addition to invoking copyright principles ("artwork, sketches, drawings,

8 illustrations, . . . depictions, blueprints, diagrams, images, sculptures, . . . models . . .

9 fixed . . ."), *see* 17 U.S.C. § 101, the definition also includes patent law terms, such

10 as "designs," "reductions to practice" and "improvements." *See* 35 U.S.C. § 102(g);

11 35 U.S.C. § 171; 1- GLOS *Chisum on Patents* (2007). In addition, the definition

12 makes no distinction between design and utility patents. *See* 1-23 *Chisum on Patents*

13 § 23.01 (highlighting the distinctions between the two).

14       Moreover, under Mattel's definition, a "DESIGN" could also be a trade secret

15 under California's Uniform Trade Secrets Act. *See* Cal. Civ. Code § 3426.1

16 (defining "Trade secret" as "information, including a formula, pattern, compilation,

17 program, device, method, technique, or process that: (1) Derives independent

18 economic value, actual or potential, from not being generally known to the

19 public . . ."). This is yet another critical distinction, because under the express terms

20 of Mattel's own "Inventions Agreement," trade secrets are treated differently than

21 are "inventions."

22       Using these terms, Mattel's Interrogatory 42 asks MGA to "State all facts that

23 support YOUR contention . . . that any BRATZ DOLLS are not BASED ON

24 BRATZ DESIGNS created by BRYANT on or before October 19, 2000." *See*

25 Mattel, Inc.'s Amended Fourth Set of Interrogatories at 7 (Proctor Decl. Ex. 9 at 57).

26 To understand this, of course, one first has to consult the definition of "BASED

27 ON," defined by Mattel to mean "substantially similar to, a copy of or a derivative

28 of," which are all copyright terms. *See* Mattel, Inc.'s Amended Fourth Set of

EXHIBIT ___4___
PAGE ___70___

1 | Interrogatories at 4 (*Id.* at 54); 4-13 Nimmer on Copyright § 13.03 (2007).  By
2 | defining "BASED ON" in terms of copyright law, but then using the term in
3 | conjunction with the broad-scope definition of "BRATZ DESIGNS" (which invokes
4 | patent law and trade secret principles), Mattel is attempting to gloss over the
5 | important distinctions between these separate areas of intellectual property law.
6 | These distinctions are extremely important here, because there is a hotly contested
7 | dispute over whether Mattel's "Inventions Agreement" even covered design patents
8 | and/or copyrights.

9 | We will not belabor the point further with a detailed discussion of each
10 | definition -- -- it is not MGA's responsibility to rewrite Mattel's deficient
11 | interrogatories.  As the examples discussed above illustrate, these interrogatories are
12 | not seeking reasonable and fair discovery; they are seeking jury "sound bites" that
13 | would inaccurately and misleadingly portray the facts of the dispute and distort the
14 | applicable legal principles.

15 | **B.      The Component Parts Of Mattel's Defined Terms Multiply The
16 |           Interrogatories Beyond The 50-Interrogatory Limit**

17 | During the meet and confer, Mattel's counsel demanded that, if MGA did not
18 | respond to the interrogatories using Mattel's misleading defined terms, then MGA
19 | must respond to each of the words contained in each defined term.  (Miller Decl. ¶
20 | 10.)  This demand clearly circumvents the 50-interrogatory limit.[6]

21 | This Court previously found that Mattel had exceeded the 50-interrogatory
22 | limit by attempting to address discrete issues and cover multiple legal theories and

23 | [6]  As noted above, contrary to the misrepresentations of Mattel's counsel, MGA
24 | did not abandon its argument that Mattel had exceeded the 50-interrogatory
     | limit in propounding these interrogatories.  MGA's counsel told Mattel's
25 | counsel in the meet and confer process that MGA was not relying on the 50-
     | interrogatory limit in its responses to the interrogatories, but instead was
26 | answering the interrogatories without use of Mattel's defined terms.  (Miller
     | Decl. ¶ 9.)  When Mattel's counsel contended that MGA must respond to each
27 | component part of each defined term in order to fully respond to the
     | interrogatories, MGA's counsel made clear to Mattel's counsel that if Mattel
28 | took that position, MGA would reserve the right to object to the multiplication
     | of Mattel's interrogatories as violative of the 50-interrogatory limit.  (*Id.*¶ 10.)

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL

EXHIBIT ___4___
PAGE ___71___

1 | factual matters in a single interrogatory.  (Order Granting Joint Motion for Protective

2 | Order at 7-8, Proctor Decl., Ex. 33.)  Mattel's use of defined terms that include

3 | distinct and separate legal issues and theories violates that ruling.[7]

4 |     As discussed above, by combining the defined terms "BRATZ INVENTION,"

5 | "DESIGNS," "CREATED" and "BASED ON" in its interrogatories, Mattel attempts

6 | to force MGA to address discrete issues of patent, trade secret, copyright and

7 | California common law.  In doing so, Mattel includes multiple legal issues in several

8 | of the interrogatories.  For example, in responding to Interrogatory Nos. 27-29, to

9 | avoid making an untrue admission that Bryant "CREATED" a "BRATZ

10 | INVENTION" while employed by Mattel, MGA cannot use Mattel's definition of

11 | "BRATZ INVENTION," which includes concepts that do not properly belong within

12 | any recognized use of the term "invention."  Mattel would have this Court compel

13 | MGA to answer the interrogatory by responding to each of the component parts of

14 | that defined term, which includes 9 different concepts plus the defined term

15 | "DESIGN," which contains more than 21 additional component parts.  And these

16 | disparate subparts do not relate to a single legal theory.  To answer each of the

17 | components of the term "BRATZ INVENTION," including its use of the term

18 | "DESIGN," MGA would be required to address issues of patent law, copyright law,

19 | trade secret law, contract law and California common law protecting original ideas

20 | that go to the heart of this case.  Under the Court's September 5, 2007, order, these

21 | interrogatories are compound and exceed the 50-interrogatory limit. (*See* Order

22 | Granting Joint Motion for Protective Order at 7-8 (Proctor Decl. Ex. 33)

---

[7] Mattel suggests that this Court previously approved these interrogatories. (Mot. at 5.)  Mattel is wrong.  As Mattel concedes, in its prior ruling, the Court held that a request to state supporting facts, identify persons with information and identify relevant documents constituted a single interrogatory so long as the subject matter of the interrogatory focused on a single issue, and also held that an interrogatory "that covers multiple claims, legal theories or other subjects" counts as multiple interrogatories. (*Id.* at 5; Order Granting Joint Motion for Protective Order at 7-8, Proctor Decl., Ex. 33.) As demonstrated herein, Mattel's misleading use of compound defined terms violates the Court's rule.  The Court did not previously address the compound nature of these defined terms.

18

EXHIBIT __4__

PAGE __72__

**C.**   <u>Mattel's Interpretation Of Its Contention Interrogatories Renders Them Unduly Burdensome And Expensive</u>

In responding to Mattel's contention interrogatories, MGA provided Mattel with the *principal* facts supporting the contentions identified in the interrogatories, identified persons with knowledge of those facts based on its current investigation and the incomplete state of discovery (including significant document and deposition discovery that has not yet been provided by Mattel), and identified the principal documents or categories of documents that support each contention.  In this Motion, Mattel seeks (i) to force MGA to "state all facts" that support its contentions, (ii) to identify every person who might know about those facts, and (iii) to compel MGA to review the nearly 4 million pages of documents produced in this action to identify all documents that supports its contentions.  Mattel's interpretation of its contention interrogatories would impose an undue burden on MGA.  Indeed, many courts reject out of hand this type of contention interrogatory as overly broad, unduly burdensome and therefore "inherently improper".  *Clean Earth Remediation & Constr. Servs.*, 245 F.R.D. at 141 ("[A] number of cases have held that interrogatories seeking identification of all facts supporting a particular allegation are *inherently improper*.") (emphasis added) (collecting cases); *see, e.g., Moses*, 236 F.R.D. at 674 ('[C]ontention interrogatories' are overly broad and unduly burdensome on their face if they seek 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case."); *Grynberg*, 2006 WL 1186836, at *6-*7.

The undue burden of Mattel's contention interrogatories is exacerbated by the fact that they ask MGA, as the defendant in this case, to "prove the negative" by, in effect, requiring MGA to support its denial of Mattel's contention in this case that Bryant invented Bratz while employed by Mattel (*e.g.* Interrogatories Nos. 27-29) and to explain why it should not be punished with injunctive relief and punitive damages (*e.g.* Interrogatories Nos. 32-33).  For example, in *Lawrence v. First*

19

EXHIBIT ___4___
PAGE ___73___

1   *Kansas Bank & Trust Co.*, 169 F.R.D. 657 (D. Kan. 1996), the court held that

2   plaintiff's contention interrogatories requiring defendant to "state all facts"

3   supporting its denial of allegations made in plaintiff's complaint were overly broad

4   and placed an unreasonable burden on the defendant. *Id* at 662-663. The district

5   court recognized that this type of contention interrogatory, where a plaintiff seeks to

6   compel the defendant to prove the negative, is particularly burdensome:

> 7   Part of that burden arises in this case by the characteristic
> 8   common to these interrogatories for asking defendant to
>     provide "all" facts in support of its denials of allegations
> 9   pled by plaintiff. To state "all" facts in support of a
>     negative proposition, of course, includes an inventory of
> 10   evidence which defendant itself would offer at trial to
>     refute the claims of plaintiff. Beyond that, however, it
> 11   would further require defendant to provide essentially a
>     review of facts and commentary to support its evaluation, if
> 12   any, that the anticipated evidence of plaintiff as to each
>     disputed paragraph of the complaint simply lacks weight or
> 13   credibility. The request for "all" facts, based not only upon
>     knowledge, but also upon simply information and belief,
> 14   adds a significant and unreasonable burden to the task of
>     the answering party.

15   *Id.* at 663. In finding the interrogatories to be unduly burdensome, the district court

16   anticipated just the type of abusive contention interrogatories that Mattel seeks to

17   compel MGA to answer here:

> 18   the interrogatories in question would require defendant to
>     provide the equivalent of a narrative account of its case in
> 19   defense, addressing each issue and detail raised by its
>     denials. This would include every evidentiary fact, details
> 20   of testimony by supporting witnesses, contents of
>     supporting documents, and even argumentative
> 21   justification for its belief of facts beyond the knowledge of
>     defendant. The Court can hardly construe the intent of
> 22   plaintiff as anything less, given her requests for "all facts"
>     and her repeated emphasis in her memoranda upon the
> 23   word "all."

24   *Id.* at 662; *see also Safeco of America v. Rawstron*, 181 F.R.D. 441, 447-448 (C.D.

25   Cal. 1998) (following *Lawrence* and holding that interrogatories that sought to

26   require the answering party to state all facts supporting the denial of statements made

27   in requests for admission were unduly burdensome; finding with respect to the

28

EXHIBIT ___4___

PAGE ___74___

1  "identification of facts" that "as the court suggested in *Lawrence*, the universe of
2  potentially responsive information is almost endless").

3      Similarly, Mattel argues that a "full and complete" response, under Mattel's
4  interpretation, must include a statement of "all facts" supporting the contentions of
5  MGA that Mattel's allegations in the complaint are not true.  Under this
6  interpretation, MGA would be required to review the nearly 4 million pages of
7  documents produced in this action and more than 50 days of deposition testimony to
8  state "every evidentiary fact, details of testimony by supporting witnesses, [and the]
9  contents of supporting documents." *Lawrence*, 169 F.R.D. at 662.  Such an
10  interpretation renders the interrogatories unduly burdensome and expensive.

11      As discussed below, Rule 33 of the Federal Rules of Civil Procedure does not
12  require this type of response to properly framed contention interrogatories.

13  **VI.**  **MGA'S RESPONSES TO MATTEL'S CONTENTION**
14  **INTERROGATORIES ARE FULL AND COMPLETE BECAUSE**
     **THEY PROVIDE MATTEL WITH THE PRINCIPAL FACTS**
15  **SUPPORTING MGA'S CONTENTIONS**

16      MGA has complied with its obligation to respond to Mattel's contention
17  interrogatories under any reasonable interpretation of those interrogatories.

18      **A.**  **Rule 33 Requires MGA To State The Principal Or Material Facts**
             **Supporting Its Contentions In Response To Mattel's Contention**
19           **Interrogatories**

20      Those courts that permit the type of contention interrogatories propounded by
21  Mattel have held that the duty to respond is limited to an identification of the
22  "'principal or material' facts which support" the contention.  *Moses*, 236 F.R.D. at
23  674 (quoting *Stoldt v. Centurion Indus.*, No. 03-2634-CM-DJW, 2005 WL 375667,
24  at *5 (D. Kan. Feb. 3, 2005)).  *See also Grynberg*, 2006 WL 1186836, at *7 ("It is
25  proper, of course, to inquire about the material facts supporting specific factual
26  matters raised in the pleadings."); *IBP, Inc.*, 179 F.R.D. at 321 ("An interrogatory
27  may reasonably ask for the material or principal facts which support a contention.").
28  As one court explained, "to require specifically 'each and every' fact and application

EXHIBIT __4__
PAGE __75__

1  of law to fact . . . would too often require a laborious, time-consuming analysis,

2  search, and description of incidental, secondary, and perhaps irrelevant and trivial

3  details." *Id.* at 321. Courts recognize that contention interrogatories should not ·

4  require the responding party to lay out a narrative account of every factual detail

5  supporting their case:

> Interrogatories should not require the answering party to
> provide a narrative account of its case. They should not
> duplicate initial disclosures. The court will generally find
> them overly broad and unduly burdensome on their face to
> the extent they ask for every fact which supports identified
> allegations or defenses. Interrogatories may, however,
> properly ask for the principal or material facts which
> support an allegation or defense.

11  *Hiskett*, 180 F.R.D. at 404-05 (citations and internal quotation marks omitted).

12      Mattel's cases do not support Mattel's overly broad and unduly burdensome

13  interpretation. In *Auto Meter Products, Inc. v. Maxima Technologies & Systems,*

14  *LLC*, No. 05 C 4587, 2006 WL 3253636 (N.D. Ill. Nov. 6, 2006), the answering

15  party was forced to respond to "all facts" interrogatories after it added new

16  contentions following the close of fact discovery. *Id.* at *2. Here, fact discovery

17  remains open, Mattel is the party that has failed to produce documents and

18  deposition witnesses, and in these interrogatories Mattel asks MGA to support its

19  denial of Mattel's unsupported allegations. *Tennison v. San Francisco*, 226 F.R.D.

20  615 (N.D. Cal. 2005), is likewise inapposite because the interrogatory responses at

21  issue there merely referred to various pleadings and papers in response to a request

22  for facts supporting claims at issue, leaving the court to conclude that further

23  responses were necessary because the defendant "should not have to guess" the

24  plaintiff's position. *Id.* at 618. As discussed below, MGA has not simply referred to

25  a mass of pleadings or documents, but has set forth the principal facts supporting its

26  contentions in this action. *Dang v. Cross*, No. CV 00 13001 GAF(RZX), 2002 WL

27  432197 (C.D. Cal. March 18, 2002), primarily addressed whether the definition of

28  the term "identify" in that case rendered the interrogatories compound and in excess

EXHIBIT ___4___
PAGE ___76___

1  of the 25 interrogatory limit. *Id.* at *2-3. Applying a "clearly erroneous" standard to

2  the recommendation of the magistrate and without analysis of the specific

3  interrogatories, the district court affirmed the magistrate's ruling that the "state all

4  facts" contention interrogatories at issue there were distinguishable from the

5  improper interrogatories struck down in *Lawrence* and its progeny, recognizing that

6  "reasonable people (or Magistrate Judges) might disagree about the burden imposed

7  by these interrogatories. . . ." *Id.* at *3-4. *Dang* does not support the unduly

8  burdensome interrogatories pressed by Mattel here.

9       The court in *Autotext Communications Network v. US Telecom, Inc.*, Civ. A.

10  No. 94-2395-GTV, 1995 WL 625953 (D. Kansas Oct. 5, 1995), rejected an argument

11  that "all facts" interrogatories are "necessarily improper," but found such

12  interrogatories to be "unnecessary and unreasonable" where they require

13  identification of thousands of company employees "no matter how small or

14  insignificant [their] involvement" in the events at issue in the litigation. *Id.* at *1-*2.

15  More recent decisions from the same district court reaffirmed that "'[c]ontention

16  interrogatories' are overly broad and unduly burdensome on their face if they seek

17  'all facts' supporting a claim or defense, such that the answering party is required to

18  provide a narrative account of its case." *Moses*, 236 F.R.D. at 674; *see also Hiskett*,

19  180 F.R.D. at 404-05 ("Interrogatories should not require the answering party to

20  provide a narrative account of its case.").[8]

21  ───────────────────────────────

[8] The other authorities cited by Mattel also fail to demonstrate that "all facts"
22  interrogatories are proper here. *See Twigg v. Pilgrim's Pride Corp.*, Civil
Action No. 3:05-CV-40, 2007 WL 676208, at *11-12 (N.D. W. Va. Mar. 1,
23  2007) (deciding, for purposes of fee motion, that objections were not
substantially justified; the court "emphasize[d]" that its discussion "is not
24  about how the Court would have ruled had specific objections been
presented"); *Wilson v. Thompson/Center Arms Co.*, Civil Action No. 05-6493-
25  KDE-SS, 2006 WL 3524250, at * 1 (E.D. La. Dec. 5, 2006) (compelling
further responses where interrogatory recipients argued that they were not
26  obligated to provide any information other than their Rule 26 initial
disclosures); *Williams v. The Art Inst. Of Atlanta*, Civil Action File No. 1:06-
27  CV-0285-CC/AJB, 2006 WL 3694649, at *6-*7 (N.D. Ga. Sept. 1, 2006)
(party provided no substantive responses to contention interrogatories served
28  two weeks before discovery cut-off even though no discovery was needed to
respond); *Zapata v. IBP, Inc.*, Civil Action No. 93-2366-EEO, 1997 WL

*(cont'd)*



EXHIBIT ___4___
PAGE ___77___

**B.**   **MGA's Responses to Mattel's Contention Interrogatories Comply With Its Obligations Under Rule 33**

1.   Interrogatories Regarding Bratz Inventions and Designs (Nos. 27-30 and 42)

Interrogatories Nos. 27-30 and 42 all relate to the origination and ownership of the Bratz line of fashion dolls:

Interrogatory No. 27:  IDENTIFY each and every BRATZ INVENTION YOU contend was CREATED, in whole or in part, prior to January 4, 1999, and for each BRATZ INVENTION so identified state all facts that support YOUR contention that such BRATZ INVENTION (or aspects or portions thereof) was CREATED prior to January 4, 1999, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

Interrogatory No. 28:  IDENTIFY each and every BRATZ INVENTION YOU contend was CREATED, in whole or in part, after October 19, 2000 and before June 1, 2001, and for each BRATZ INVENTION so identified state all FACTS that support YOUR contention that such BRATZ INVENTION (or aspects or portions thereof) was CREATED after October 19, 2000 and before June 1, 2001, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

Interrogatory No. 29:  IDENTIFY each and every BRATZ INVENTION that was CREATED, in whole or in part, after January 3, 1999 and before October 21, 2000, and for each BRATZ INVENTION so identified state all FACTS that REFER OR RELATE TO the timing of the creation of such BRATZ INVENTION and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

Interrogatory No. 30:  State all facts that support YOUR contention, if YOU so contend, that, assuming BRYANT assigned rights in any BRATZ INVENTION to MATTEL pursuant to the INVENTIONS AGREEMENT, MGA is entitled to priority over and/or has superior rights to MATTEL as to such BRATZ INVENTION, and

*(cont'd from previous page)*
122588, at * 1 (D. Kan. 1997) (responding party required to supplement where initial response did not respond to request; interrogatory sought "factual basis" for  affirmative defenses rather than "all facts" or "each and every fact"); *Pension Benefit Guaranty Corp. v. Ziffer*, No. 91 C 7762, 1994 WL 11654, at * 1 (N.D. Ill. Jan. 6, 1994) (authorizing seven "all facts" interrogatories but noting that in other circumstances such interrogatories "may be vague and open-ended").

EXHIBIT ___4___
PAGE ___78___

1               IDENTIFY all PERSONS with knowledge of such facts
and all DOCUMENTS that REFER OR RELATE TO such
2               facts. ( Proctor Decl. Ex. 7 at 36-37)

3               Interrogatory No. 42: State all facts that support YOUR
contention, if YOU so contend, that any BRATZ DOLLS
4               are not BASED ON BRATZ DESIGNS created by
BRYANT on or before October 19, 2000, and IDENTIFY
5               all PERSONS with knowledge of such facts and all
DOCUMENTS that REFER OR RELATE TO such facts.
6               ( *Id.*, Ex. 8 at 48)

7         MGA's responses to Interrogatories Nos. 27-30 and 42 satisfy MGA's

8 obligations under Rule 33. They set forth MGA's principal factual and legal

9 contentions with respect to the origination of Bratz. MGA's principal contention in

10 this case with respect to the origination of Bratz is that in August or September of

11 1998, when Carter Bryant was not employed by Mattel, Bryant, inspired by images,

12 including in the August 1998 issue of Seventeen Magazine, the appearance of

13 teenagers, as well as other images in the public domain, conceived of an idea for a

14 line of dolls he named Bratz. (*See* MGA's Suppl. Responses to Interrogatories Nos.

15 27-29, Proctor Decl. Ex. 21 at 229-30, 235-36 and 241.) At the same time, Bryant

16 sketched a series of drawings to illustrate his idea. (*Id.*) Bryant did not create any

17 invention or original idea related to Bratz during the period of his employment by

18 Mattel. (*Id.*)

19         MGA further contends that, to the extent that the Bratz line of dolls first

20 marketed by MGA in 2001 contained features covered by design patent law, those

21 "inventions" were "reduced to practice" after October 20, 2000 and before June 1,

22 2001, after Bryant had assigned all rights in Bratz to MGA and after Carter Bryant's

23 employment by Mattel had been terminated. (MGA's Suppl. Response to

24 Interrogatory No. 28, Proctor Decl. Ex. 21 at 235-36.) Neither the first generation of

25 Bratz dolls nor any subsequent Bratz products were "based on" any Carter Bryant

26 designs created on or before October 19, 2000, but instead the first generation of

27 Bratz dolls (and subsequent Bratz products) were "conceived of" and "reduced to

28 practice" for purposes of design patent law, and first expressed in a tangible medium

EXHIBIT __4__
PAGE __79__

1 │ for purposes of copyright law, after October 20, 2000, as a result of efforts of artists

2 │ employed by, or working on behalf of, MGA. (MGA's Suppl. Responses to Mattel's

3 │ Amended Fourth Set of Interrogatories, No. 42, Proctor Decl. Ex. 25 at 504-505.)

4 │     In its supplemental responses, MGA has provided Mattel with its principal

5 │ factual and legal contentions with respect to the "invention" of Bratz under both

6 │ utility patent law and design patent law. MGA's responses to Interrogatories Nos.

7 │ 27-30 and 42, which are set forth in full in MGA's Response to Mattel's Separate

8 │ Statement, comply with MGA's obligations under Rule 33 to provide the principal

9 │ facts supporting its contentions regarding the "invention" of Bratz.

10 │        2.   <u>Interrogatories That Assume The Truth Of Mattel's Allegations</u>

11 │            <u>And Ask MGA For Facts Proving The Negative.</u>

12 │     Interrogatories Nos. 31-38 assume that Mattel owns Bryant's original idea for

13 │ Bratz and ask MGA to explain why it should not be punished for developing

14 │ Bryant's idea into one of the most successful fashion dolls on the market:

15 │         Interrogatory No. 31: State all facts that support YOUR
16 │         contention, if YOU so contend, that the INVENTIONS
          AGREEMENT is not valid and enforceable, and
17 │         IDENTIFY all PERSONS with knowledge of such facts
          and all DOCUMENTS that REFER OR RELATE TO such
18 │         facts.

19 │         Interrogatory No. 32: State all facts that support YOUR
          contention, if YOU so contend, that MATTEL is not or
20 │         would not be entitled to injunctive relief as requested in its
          COMPLAINT and/or COUNTERCLAIMS if it is
21 │         ultimately determined that MATTEL owns one or more
          BRATZ INVENTIONS, and IDENTIFY all PERSONS
22 │         with knowledge of such facts and all DOCUMENTS that
          REFER OR RELATE TO such facts.

23 │         Interrogatory No. 33: State all facts that support YOUR
          contention, if YOU so contend, that MATTEL is not
24 │         entitled to an award of punitive or exemplary damages
          against YOU, and IDENTIFY all PERSONS with
25 │         knowledge of such facts and all DOCUMENTS that
          REFER OR RELATE TO such facts.
26 │

27 │         Interrogatory No. 34: State all facts that support YOUR
          contention, if YOU so contend, that YOU did not
28 │         intentionally interfere with the INVENTIONS
          AGREEMENT when BRYANT purported to TRANSFER
          and MGA purported to ACQUIRE rights to BRATZ, and

EXHIBIT   4
PAGE   80

IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

Interrogatory No. 35: State all facts that support YOUR contention, if YOU so contend, that YOU did not aid or abet any breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL when BRYANT performed work or services with or for MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

Interrogatory No. 36: State all facts that support YOUR contention, if YOU so contend, that YOU acted with an innocent state of mind or reasonably believed that MATTEL did not own any rights in any BRATZ INVENTION when BRYANT purported to TRANSFER and MGA purported to ACQUIRE rights to BRATZ, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

Interrogatory No. 37: State all facts that support YOUR contention, if YOU so contend, that BRYANT did not breach the INVENTIONS AGREEMENT when BRYANT purported to TRANSFER rights to BRATZ to MGA, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

Interrogatory No. 38: State all facts that support YOUR contention, if YOU so contend, that BRYANT did not breach BRYANT's duty of loyalty or fiduciary duties to MATTEL when BRYANT performed work or services with or for MGA while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

(Proctor Decl. Ex. 7 at 37-39.)

These contention interrogatories improperly assume that Mattel has already prevailed in this action and ask MGA to explain why it should not be punished for wrongdoing that Mattel has yet to establish. *See Lawrence*, 169 F.R.D. at 662; *Safeco of America v. Rawstron*, 181 F.R.D. at 447-448. Mattel is the plaintiff in this action with the burden of proof on these issues. Yet Mattel demands that MGA set forth its defenses before Mattel had proven a single fact in support of its affirmative

EXHIBIT ___4___

PAGE ___81___

1  claims.  Nevertheless, MGA answered the interrogatories in good faith by providing

2  the principal facts supporting its contentions.

3       For example, MGA explained the principal factual and legal bases for its

4  contentions that (i) even assuming Mattel could show that it owned some rights to

5  ideas conceived by Bryant prior to his assignment to MGA, Mattel would not be

6  entitled to injunctive relief or punitive damages (Nos. 32, 33 and 36), (ii) Bryant's

7  inventions agreement with MGA is invalid an unenforceable due to Mattel's own

8  conduct (No. 31), and (iii) that the transfer of all rights to Bratz from Bryant to MGA

9  did not constitute an intentional interference with any contract between Bryant and

10  Mattel or a breach of any fiduciary duties owed by Bryant to Mattel (Nos. 34-35 and

11  37-38).  (Proctor Decl. Ex. 21 at 244 - 274.)  These responses, which are set forth in

12  full in MGA's Response to Mattel's Separate Statement, more than comply with

13  MGA's obligations under Rule 33.

14          3.   Interrogatories Seeking Dates On Which The Products That
                 Mattel Copied and Infringed Originated (Nos. 43 and 44)

15

16       In Interrogatories Nos. 43 and 44, Mattel asks when the intellectual property

17  that MGA contends has been infringed by Mattel was conceived and first fixed in

18  any tangible medium of expression:

19          Interrogatory No. 43:  For each concept, design, product,
            product packaging or other matter that YOU contend
20          MATTEL copied or infringed, including but not limited to
            those identified in MGA's Responses To Mattel, Inc.'s
21          First Set Of Interrogatories Re Claims Of Unfair
            Competition, Response To Interrogatory No. 2 (and any
22          Supplemental Responses to such Interrogatory), state the
            date that each such concept, design, product, product
23          packaging or other matter was conceived, and IDENTIFY
            all PERSONS with knowledge of, and all DOCUMENTS
24          that REFER OR RELATE TO, the foregoing.

25          Interrogatory No. 44:  For each concept, design, product,
            product packaging or other matter that YOU contend
26          MATTEL copied or infringed, including but not limited to
            those identified in MGA's Responses To Mattel, Inc.'s
27          First Set Of Interrogatories Re Claims Of Unfair
            Competition, Response To Interrogatory No. 2 (and any
28          Supplemental Responses to such Interrogatory), state the
            date that each such concept, design, product, product

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL



EXHIBIT ___4___
PAGE ___82___

1       packaging or other matter was first fixed in any tangible
2       medium of expression (if ever), and IDENTIFY all
        PERSONS with knowledge of, and all DOCUMENTS that
3       REFER OR RELATE TO, the foregoing.

4  (Proctor Decl. Ex. 9 at 57-58.)  In response, MGA incorporated prior responses in

5  which MGA had identified the date that the relevant MGA products were first

6  available for sale and noted that "in general, at MGA, product development is

7  completed 7-8 months before the first invoice date, although that time period could

8  be reduced in certain situations to 5-6 months."  (Proctor Decl. Ex. 25 at 508.)  This

9  provides Mattel with an approximate first date of conception and expression in a

10  tangible medium for each product.

11      MGA is assessing whether more definite dates can be determined.  If more

12  specific information as to the date these products were first conceived and first fixed

13  in a tangible medium can be determined without undue burden to MGA, it will

14  provide that information in supplemental responses.

15          4.    Trade Dress Infringement Interrogatories (Nos. 48-50)

16      Interrogatories Nos. 48 through 50 ask MGA to identify each trade dress that

17  has been infringed by Mattel and the Mattel product that infringes that trade dress,

18  and to explain how that trade dress is protectible:

19       Interrogatory No. 48:  Separately IDENTIFY each trade
20       dress that YOU contend MATTEL has copied, infringed or
        diluted or that is otherwise the subject of YOUR claims,
21       defenses or allegations in THIS ACTION.

22       Interrogatory No. 49:  For each trade dress identified in
        response to Interrogatory No. 48, separately and fully
23       IDENTIFY each and every MATTEL product, packaging
        or other matter that YOU contend copies, infringes or
24       dilutes such trade dress, including without limitation by
        describing fully and separately, for each such MATTEL
25       product, packaging or other matter, each and every element
        of the claimed trade dress that YOU contend MATTEL has
26       copied, infringed or diluted.

27       Interrogatory No. 50:  For each trade dress identified in
        response to Interrogatory No. 48, separately and
28       completely IDENTIFY all facts that support YOUR
        contention that such trade dress is protectible, all

29

EXHIBIT  4

PAGE  83

1   DOCUMENTS that REFER OR RELATE to the foregoing
2   and all PERSONS with knowledge of the foregoing.

3   (Proctor Decl. Ex. 12 at 87.)

4          First, MGA notes that this is a Phase 2 issue that is not subject to the January

5   28, 2008, Phase 1 discovery cutoff.  Just as Mattel has done in its interrogatory

6   responses, MGA has reserved the right to supplement its responses as discovery

7   progresses.  (Proctor Decl. Ex. 29 at 574)  MGA will supplement these responses in

8   the course of Phase 2 discovery.

9          Second, MGA's responses provide Mattel with the principal facts supporting

10  its contentions regarding Mattel's trade dress infringement, in compliance with its

11  Rule 33 obligations under the authorities discussed *supra*.  MGA identified the

12  elements of its trade dress that Mattel has infringed.  (Proctor Decl. Ex. 29 at 583-84.)

13  MGA identified Mattel's "My Scene" fashion dolls and pet dolls as the Mattel

14  products that infringed this trade dress.  (*Id.* at 589.)  MGA also identified the

15  principal facts supporting its contention that its trade dress was protectible under

16  applicable trade dress legal principles, including that the trade dress is aesthetic and

17  non-functional, inherently distinctive, and has acquired secondary meaning.  (*Id.* at

18  593-94.)  These responses are sufficient to apprise Mattel of MGA's contentions on

19  this Phase 2 issue.

20         Mattel contends that it is improper to reserve the right to supplement this

21  interrogatory during expert discovery.  (Mot. at 25.)  Mattel is wrong.  Indeed, Mattel

22  has stated in many of its interrogatory responses that the response may be

23  supplemented in the course of expert discovery.  (Miller Decl. ¶ 16.)  Mattel does not

24  contest that the identification of the elements and products subject to trade dress

25  infringement will be a subject of expert testimony.  MGA is not required to serve its

26  Phase 1 expert reports until February 11, 2008, and all dates for Phase 2 expert

27  discovery have been vacated by Judge Larson.  If, in the course of their analysis,

28  MGA's experts identify other MGA products or elements of MGA products that

---

30

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL

EXHIBIT ___4___
PAGE ___84___

1 | have been infringed by Mattel, MGA will supplement its interrogatory responses to

2 | identify those products or elements.

3 | **VII.   MGA HAS IDENTIFIED THE FORMER MATTEL EMPLOYEES WHO CAME TO WORK AT MGA (NO. 41)**

4 |

5 |         Interrogatory No. 41 asks MGA to identify former Mattel employees who

6 | came to work at MGA:

> Interrogatory No. 41:  IDENTIFY all PERSONS who at any time have been employed by or under contract with MATTEL who are now or have been employed by or under contract with YOU since January 1, 1999, and, for each, such PERSON, state his or her name, date of hire or effective date of contract, the date on which YOU first had contact with such PERSON regarding potential employment or contracting, the date(s) on which such PERSON was interviewed for possible employment or contracting, each title (if any) such PERSON has held while employed by or under contract with YOU, and the date of termination (if applicable).

14 | (Proctor Decl. Ex. 7 at 40.)  MGA did so.  In response, MGA provided a chart that

15 | listed former Mattel employees, their position at MGA and each such employee's

16 | dates of employment at MGA.  (*Id.*, Ex. 21 at 281-286.)

17 |         Mattel requested during the meet and confer that MGA also provide the date

18 | when MGA "first had contact" with each such person and the date that MGA

19 | interviewed that person, and repeats that request here.  (Mot. at 22.)  MGA agreed to

20 | determine whether such information was reasonably available to MGA.  Mattel says

21 | that MGA "never responded" (Mot. at 22:16), but leaves out the fact that Mattel did

22 | not wait for a response, but instead filed this Motion.  (Miller Decl. ¶ 8.)  MGA is

23 | looking for the requested information, and if it is reasonably available without undue

24 | burden to MGA, it will supplement its response to Interrogatory No. 41 to provide it.

25 | **VIII.  MGA HAS IDENTIFIED THE COMPUTERS FROM WHICH EARLY BRATZ-RELATED DOCUMENTS COULD HAVE BEEN COLLECTED (INTERROGATORIES NOS. 40 AND 47)**

26 |

27 |         In its Motion, Mattel argues that Interrogatories Nos. 40 and 47 ask MGA to

28 | identify the sources of certain early documents related to Bratz:

EXHIBIT __4__
PAGE __85__

1  Interrogatory No. 40: IDENTIFY each and every
2  STORAGE DEVICE that YOU have used for any purpose
   which contains or contained DIGITAL INFORMATION
3  that REFERS OR RELATES TO BRATZ prior to January
   1, 2002. (Proctor Decl. Ex. 7 at 40.)

4  Interrogatory No. 47: IDENTIFY each and every
5  SOURCE OF INFORMATION from which YOU have
   COLLECTED DOCUMENTS in THIS ACTION that
6  REFER OR RELATE TO BRATZ and that also REFER
   OR RELATE TO the time period prior to February 28,
7  2001 (regardless of when such DOCUMENT was, in whole
   or part created, drafted, generated, sent, received or
   transmitted). (Proctor Decl. Ex. 10 at 69.)
8

9     In response to Interrogatory No. 40, MGA described the computer systems
10 that existed worldwide at MGA prior to January 1, 2002. (Proctor Decl. Ex. 21 at
11 279-79.) As Mattel recognizes in its Motion, in the meet and confer process, MGA
12 offered to exchange with Mattel a log listing source information for documents that
13 have been produced.[9] (Mot. at 35.) With this information, Mattel would have
14 known where Bratz related documents could have been stored during the time period
15 prior to January 1, 2002 (from MGA's response to Interrogatory No. 40), and where
16 MGA located the documents it produced (from the source log). Mattel rejected the
17 offer. (Proctor Decl. Ex. 5 at 21.)
18     Mattel argues that such information "would not reveal sources that contain
19 early Bratz documents that MGA has not produced documents from" or "where
20 MGA looked for documents, as well as where MGA failed to look." (Mot. at 35-36.)
21 Mattel's demand assumes that MGA is aware of the existence of Bratz documents on

22 [9] Mattel's description of the "source log" proposed by MGA was not exactly
23 accurate. Mattel says in its Motion that MGA proposed to produce a "source
   log" for the "entirety of their productions" which "would provide certain
24 information for every document provided by MGA, including each document's
   Bates number, the identify of the individual who created the document and the
25 location where the document was located by MGA." (Mot. at 35.) In fact,
   MGA's counsel told Mattel's counsel that, at the time of the meet and confer,
26 MGA believed that it could provide source information with respect to more
   than 90 percent of its production, and that the information would include the
27 bates number of the documents, the location where the document was found,
   and the person associated with or who maintained that source of the
28 information (not the person who "created" the document). (Miller Decl. ¶ 12.)
   But the point is moot because Mattel rejected this offer.

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES   Case No. CV 04-9049 SGL

EXHIBIT 4
PAGE 86

1 | its computer systems that relate to the time period prior to January 1, 2002, and has
2 | not produced those documents.  Mattel has made no such showing.  Indeed, MGA
3 | has already produced more than 3.7 million pages of documents in this case.  Mattel,
4 | on the other hand, has produced only a few hundred thousand pages of documents
5 | and still has not produced documents from its ZEUS computer system, but instead
6 | has delayed any meaningful meet and confer on a search of that system.  Mattel's
7 | speculation is not a basis to compel further responses to Interrogatories 40 and 47.

8      Mattel claims that its interrogatories seek "to discover what sources MGA has
9 | examined to produce the key documents in this case, and perhaps more important,
10 | the source MGA has <u>not</u> examined."  (Mot. at 34.)  The Court should require Mattel
11 | to identify the "key documents" to which it refers, and MGA will identify for Mattel
12 | the sources of information from which those documents were obtained (to the extent
13 | that information is reasonably available to MGA).

14      Finally, these interrogatories are cumulative.  Mattel has propounded a Rule
15 | 30(b)(6) deposition topic regarding the collection of documents produced in this
16 | action.  (Proctor Decl. Ex. 42 at 835 (Topic 39).)  MGA has agreed to provide
17 | additional testimony on this topic.  (Miller Decl. ¶ 15.)  Therefore, there is no need to
18 | compel further response to Interrogatories Nos. 40 and 47.

19 | **IX.**   **CONCLUSION**

20      For the foregoing reasons, Mattel's motion to compel responses to
21 | interrogatories should be denied.

22 | DATED:  December 31, 2007      SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM, LLP
23
24
25 | By: _____
    RAOUL D. KENNEDY
26 |     Attorneys for Cross-Defendants
    MGA Entertainment, Inc., MGA
27 |     Entertainment (HK) Limited,
    MGAE De Mexico, S.R.L. De C.V.,
28 |     and ISAAC LARIAN

MGA'S OPP. TO MATTEL'S MOT. COMPEL RESPONSES TO INTERROGATORIES    Case No. CV 04-9049 SGL
202673-San Francisco Server 1A - MSW

EXHIBIT ____4____
PAGE ___87___