# EXHIBIT 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                    `Date: March 12, 2009
Title:     MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
========================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, U.S. DISTRICT JUDGE

      Cindy Sasse                          None Present
      Courtroom Deputy                     Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:    ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                         None Present

PROCEEDINGS:   **ORDER REFERRING (1) MOTION FOR REVIEW OF PORTIONS OF
               DISCOVERY MASTER'S FEBRUARY 15, 2008, ORDER (DOCKET #4717)
               AND (2) MOTION FOR ISSUANCE OF LETTER OF REQUEST (DOCKET
               #4721) TO DISCOVERY MASTER**

      The Court has received the above-referenced discovery motions, and refers them to the
Discovery Master.

      The Discovery Master may issue appropriate dispositions of these motions. The Discovery
Master shall consider the issues presented by the motion for review as if presented to him in the
first instance; he should not apply the "clearly erroneous or contrary to law" standard that the Court
would apply.

      This procedure – in which the Phase 2 Discovery Master may review prior discovery orders
-- shall apply only to motions seeking review of discovery orders issued previously by the Phase 1
Discovery Master to which timely objections were made <u>prior</u> to the imposition of the stay as to
Phase 2 discovery. The parties may not seek leave to review before the Phase 2 Discovery
Master any other discovery orders issued previously by the Phase 1 Discovery Master.

      **IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN                        1'            Initials of Deputy Clerk ___cls_____

EXHIBIT _____9_____

PAGE _____179_____

# EXHIBIT 10

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

December 13, 2007

**VIA FACSIMILE AND U.S. MAIL**

Timothy A. Miller, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Re:   Mattel, Inc. v. Carter Bryant, et al.

Dear Tim:

I write further to our meet and confers of Monday, December 10, 2007, and Wednesday, December 12, 2007, regarding the MGA Parties' ("MGA") responses and supplemental responses to Mattel's Revised Third, Amended Fourth, Fifth, Sixth and Seventh sets of interrogatories.

First, MGA confirmed, as it had stated in prior correspondence, that it does not stand on the objection that Mattel's Third, Fourth or Fifth Sets of Interrogatories purportedly exceeds the 50-interrogatory limit as a basis for refusing to respond to these interrogatories. You also stated that MGA was not standing on this objection with respect the Sixth and Seventh sets as well, and indeed, MGA has provided a partial response to Mattel's 48th, 49th and 50th interrogatories.

Second, you confirmed that the responses and supplemental responses MGA has provided to date merely lay out what MGA views as the "basic facts" or a "fair representation of the facts," and do not provide details. You explained, regarding Mattel's contention interrogatories, that all the facts on which MGA intends to rely are encompassed by the facts it has disclosed, but that MGA

---

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2321626.2

EXHIBIT _____ 10

PAGE _____ 180

has not articulated all of those facts. MGA also confirmed that, in some cases, it has unilaterally limited its responses by disregarding the definitions in Mattel's requests, and instead answering as though Mattel's defined terms do not have the definitions specified in the interrogatories. MGA also confirmed that it has not and will not identify documents with specificity for Mattel's requests that call for an identification of documents. As we explained, Mattel disagrees with these limitations on MGA's responses.

MGA did offer to provide Mattel with what it said should be a "substantial supplement" to many of its responses to provide addition detail by January 7, 2007. However, when I asked which interrogatories MGA is willing to supplement, you stated that MGA was not yet certain of this. You also would not commit to providing a full and complete response not limited by objections to any of Mattel's interrogatories. You also said MGA would not use the definitions of "Bratz Invention" and other terms provided in Mattel's interrogatories in forming its responses, and may or may not fully respond in light of the meaning of those terms specified in the interrogatories, and would not commit to identify all documents by Bates number.

MGA also identified several interrogatories for which MGA refuses to provide any supplemental response, namely Nos. 39 and 46.

Interrogatories Nos. 27, 28, 29

MGA stated that in responding to Nos. 27, 28 and 29, it did not use the definition of the term "Bratz Invention" provided by Mattel in its Revised Third Set of Interrogatories, but instead interpreted these interrogatories by using the more limited definition of the term "invention" that MGA believes is used in utility patent law. Mattel pointed out that this significantly limited MGA's response, and also directly contradicted MGA's assurance in its Supplemental Responses to Mattel, Inc.'s Revised Third Set of Interrogatories that MGA "[would] respond using words contained within the Mattel definition in their normal accepted meaning." You confirmed that MGA had not so responded.

MGA also stated that the facts it had identified as supporting its contentions were, as with the other requests, the "basic facts" on which it intends to rely, but not the "details." I explained that Mattel disagrees with that limitation, and with MGA's failure to identify documents for these and all other requests that call for an identification of documents.

Interrogatories Nos. 30, 31, 32, 34, 35, 36, 37, 38, 42

Mattel pointed out that all of MGA's responses to these interrogatories are incomplete for one or more reasons, either because they fail to adequately disclose the facts supporting MGA's contentions, do not identify any witnesses with knowledge of the facts on which MGA's contentions are based, or do not identify any documents at all, by category or number. You confirmed that, while these responses do not contain a detailed explanation of all the facts on which MGA's contentions are based, they do provide the "basic facts" or a "fair representation of MGA's position" with respect to the subject of each of these interrogatories.

EXHIBIT ___10___

PAGE ___181___

With respect to Interrogatory No. 34, you stated that some of the documents to be identified are privileged, as reflected in the Responses, and that MGA would not produce such documents. I asked whether MGA would identify them on its privilege logs. You said you would consider that.

## Interrogatory No. 39

In response to MGA's inquiry as to why bank account information is relevant, Mattel has explained more than once that it is entitled to third party discovery, including from bank and financial institutions, in order to verify relevant financial information provided by MGA or any other party in the suit and to obtain financial information that MGA has failed to produce. We also pointed out that Judge Infante has already effectively ruled on this issue. Furthermore, both parties have put MGA's financial information and status directly at issue. MGA engaged in financial transactions that directly relate to and thus evidence the timing of Bratz. MGA has committed acts in commercial bribery, which makes its financial transactions directly at issue. MGA itself has chosen put entire acquisitions, such as those involving Zapf and Smoby, at issue in its unclean hands defense. Furthermore, Mattel has punitive damages claims to which MGA's financials are pertinent.

## Interrogatory No. 41

Mattel pointed out that MGA's response is incomplete in that it fails to provide either the date of first contact or the date of any employment interview(s) for any of the employees listed in the response. Mattel also pointed out that MGA provided no dates of employment whatsoever with respect to Carter Bryant. MGA promised to investigate this matter, and consider whether it would supplement. MGA confirmed that the list of employees it has provided is complete to the best of its knowledge, and not limited by objections. Please let me know if MGA is willing to supplement its response to this interrogatory as soon as possible.

## Interrogatories Nos. 43 and 44

Mattel pointed out that MGA's responses to Nos. 43 and 44 are improper in that they simply refer to MGA's response to Interrogatory No. 3 of Mattel's First Set of Interrogatories Re: Claims of Unfair Competition, which do not provide the information requested in these interrogatories.

## Interrogatory No. 45

MGA stated that it produced the documents needed to obtain the information sought in this interrogatory, on Friday, Dec. 7, 2007 and Wednesday, December 12, 2007.

## Interrogatory No. 46

MGA continues to refuse to respond to Interrogatory No. 46. When I asked why, you stated that MGA's position is that all of the information requested is protected by the attorney-client privilege. As I explained, we disagree with that assertion.

EXHIBIT _____ 10

PAGE _____ 182

## Interrogatories Nos. 40 and 47

MGA did not commit to provide an additional supplemental response to No. 40 or any
substantive response to No. 47, but instead proposed that Mattel and MGA exchange "source
logs" regarding the entirety of their productions in lieu of MGA's provision of a response.
According to MGA's proposal, these "source logs" would provide certain information for every
document produced by MGA, including each document's Bates number, the identity of the
individual who created the document and the location where the document was located by MGA
for production, e.g. the server where it was found.  MGA stated that it has already gathered this
information for 90% of the documents it produced in this case.  Mattel pointed out that the
interrogatory is both more narrow and more broad than this -- it does not request source
information for every document in this case, and instead seeks information only about key early
Bratz documents, but it also does seek additional information MGA proposes not be included on
the source logs.

According to MGA's proposal, Mattel must waive its right to seek a full response to this
interrogatory were it to accept.  Mattel is unwilling to agree to MGA's proposal because, under it,
MGA would not provide the information Mattel seeks.  MGA then said it would consider
whether it would supplement its response.  Please let me know if it intends to.

## Interrogatory No. 48

Mattel pointed out that MGA's response is incomplete in that it fails to identify each product
which MGA contends has been infringed by Mattel.  MGA responded that its answer contains
the "basic facts."  MGA also added that its answer may be incomplete as the subject matter of
this interrogatory will be the source of expert testimony, and an expert may identify additional
facts that support MGA's contention.  That is not acceptable since it necessarily will allow MGA
to sandbag Mattel by introducing new products into the litigation at the time of expert reports
and thus after fact discovery has closed.

## Interrogatory No. 49

Mattel stated that MGA's response is incomplete in that it fails to identify each Mattel product
that MGA contends copies, infringes or dilutes any MGA trade dress.  MGA responded that it
contends that every MY SCENE doll infringes each identified element of the trade dress of the
Bratz line of dolls and each MY SCENE PET doll infringes upon each identified element of the
trade dress of the Bratz Petz line of dolls.

## Interrogatory No. 50

MGA stated that its response to No. 50 is a "fair representation of MGA's position" with respect
to its contention that any trade dress identified in No. 48 is protectible, though details are not
provided.

4

EXHIBIT ___10___

PAGE ___183___

As we discussed, please let me know if MGA is willing to agree to supplement any of the interrogatories as to which it has not yet responded with its position.

Very truly yours,

*B. Dylan Proctor /MJM*

B. Dylan Proctor

EXHIBIT _____ 10

PAGE _____ 184

# EXHIBIT 11

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:   (415) 774-2611
4  Facsimile:   (415) 982-5287

5

6

7                      UNITED STATES DISTRICT COURT

8                      CENTRAL DISTRICT OF CALIFORNIA

9                             EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
12              Plaintiff,

13        v.                               Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15              Defendant.                 ORDER GRANTING JOINT MOTION
                                           FOR PROTECTIVE ORDER
16                                         REGARDING MATTEL'S
                                           INTERROGATORIES; DENYING
17                                         MATTEL'S MOTION TO COMPEL
                                           INTERROGATORY RESPONSES
18  
    CONSOLIDATED WITH
19  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v. MATTEL,
20  INC.

21

22

23                          I. INTRODUCTION

24       Presently pending are two separate motions pertaining to Mattel's Third Set of

25  Interrogatories: (1) MGA Entertainment, Inc., MGA Entertainment (HK) LTD., Isaac Larian, and

26  Carter Bryant's (collectively "Defendants") Joint Motion For Protective Order Regarding Mattel,

27

28  Bryant v. Mattel, Inc.,                                        1
    CV-04-09049 SGL (RNBx)

                              9-05-07

EXHIBIT     11
PAGE        185

1   Inc.'s ("Mattel") Interrogatories[1]; and (2) Mattel's motion to compel Defendants to answer the

2   Third Set of Interrogatories.[2]  Having considered the motion papers and the comments of counsel

3   at the hearing, the joint motion for a protective order is granted, and Mattel's motion to compel

4   interrogatory responses is denied.  MGA's request for sanctions in connection with Mattel's

5   motion to compel interrogatory responses is also denied.[3]

6                                              II. BACKGROUND

7          In December of 2004, Mattel served Carter Bryant ("Bryant") and MGA Entertainment,

8   Inc. ("MGA") with its First Set of Interrogatories, which consisted of a total of six interrogatories.

9   In April of 2005, Mattel served Bryant and MGA with its Second Set of Interrogatories, asking

10  Bryant four questions and MGA seven questions.  Of these, three interrogatories to Bryant were

11  identical to three interrogatories to MGA.  In December of 2006, Mattel served MGA with its

12  First Set of Interrogatories Re Claims of Unfair Competition, which consisted of ten additional

13  interrogatories.

14         During a scheduling conference held on February 12, 2007, the district court imposed a

15  limit on interrogatories of "50 for each side for both cases."  February 27, 2007 Minute Order,

16  Proctor Dec., Ex. 6; Tr. of scheduling conference, Proctor Dec., Ex. 7.  When MGA asked

17  whether all Defendants would count as one "side" under the court's order, the court confirmed

18  that was its intent: "there's one party, essentially, on the other side, and [defendants] have two

19  parties."  Tr. of scheduling conference, Proctor Dec., Ex. 7.  After MGA clarified that there were

20  actually six Defendants, the court asked Bryant's counsel if Bryant would need to serve fifty

21

22

23

24         [1]  Defendants submitted their joint motion on July 10, 2007.  Mattel submitted its opposition on July 17, 2007.  Defendants submitted their reply brief on July 20, 2007.

25         [2]  Mattel submitted its motion to compel on July 18, 2007.  Defendants submitted an opposition on August 1, 2007.  Mattel submitted its reply brief on August 6, 2007.

26
           [3]  The Discovery Master determined that a hearing was not necessary.
27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                                                                                              2

EXHIBIT ___11___

PAGE ___186___

interrogatories on Mattel in addition to MGA's interrogatories.  Bryant stated that he probably would not.  The court responded as follows:

> Let's try to work within the confines of the 50 interrogatories, and if you need more, again, the court is going to be forthcoming, if there's a need for it. And it's the type of order that if you can stipulate amongst yourselves, you're not going to need an order from the court.
>
> But if you're not agreeing amongst yourselves, then you're going to have to come back to the court before you bust those limits.  Unlike every other order the court issues, where once the court issues an order and you need an order from the court to alter that, this is one that I will give you authority amongst yourselves to stipulate to a greater number.  But [let's] be reasonable.  I can't imagine you can't work this out.  I just don't want to have open-ended numbers of interrogatories and experts.

Id. at 24:5-18.  The court also directed the parties to return to court if they were unable to reach an agreement.  Id. at 24:23.

On June 7, 2007, Mattel served its Third Set of Interrogatories on the "other side" – MGA, MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), Isaac Larian ("Larian") and Bryant – asking each of these four defendants the same nineteen questions.  On July 9, 2007, MGA, MGA Hong Kong, Larian and Bryant each separately served objections to the Third Set of Interrogatories and no responses.  The parties met and conferred on July 10, 2007.  Defendants refused to answer any of the interrogatories, claiming that Mattel had exceeded the fifty interrogatory limit and that the interrogatories were otherwise objectionable on several grounds. Defendants contended that Mattel exceeded the 50 interrogatories limit by serving interrogatories that are compound and by serving interrogatories on multiple responding parties on the "same side."  By Defendants' calculations, when each discrete subpart of each of Mattel's interrogatories served on each of the responding parties are counted separately, Mattel has served, at a minimum, 227 separate interrogatories.  In contrast, Mattel contended that its interrogatories are not compound, and that each identical interrogatory it serves should be counted as one, regardless of how many parties it serves on the "other side."  By Mattel's calculations, it has propounded a total of forty-three non-identical interrogatories.  The parties

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT _____ 11

PAGE _____ 187

1    also discussed potentially stipulating to a greater number of interrogatories but apparently did not

2    reach an agreement.

3          Defendants move for a protective order preventing Mattel from serving additional

4    interrogatories and requiring Mattel to serve a revised Third Set of Interrogatories or else identify

5    which interrogatories (or subparts) it wishes to be answered, consistent with the limits imposed

6    by the district court. Mattel opposes the motion, contending that it has not exceeded the 50

7    interrogatory limit set by the district court. In a separate motion, Mattel moves to compel

8    Defendants to provide responses to its Third Set of Interrogatories.

9    III. STANDARDS

10         Under Federal Rules of Civil Procedure 26(c), a court may "make any order which justice

11   requires to protect a party or person from annoyance, embarrassment, oppression, or undue

12   burden or expense," including "that the disclosure or discovery not be had."

13   IV. DISCUSSION

14         Defendants' motion for a protective order raises essentially three issues: (1) whether an

15   identical interrogatory served on several Defendants should be counted as only one interrogatory

16   or counted separately for each Defendant served with the identical interrogatory; (2) whether an

17   interrogatory that requires a Defendant to "state all facts," "identify all persons with knowledge of

18   such facts," and "identify all documents" should be counted as a single interrogatory or three

19   separate interrogatories; and (3) whether an interrogatory that covers multiple claims, legal

20   theories or other subjects should be counted as a single interrogatory or multiple interrogatories.

21   A. The Fifty "Per Side" Limit

22         The district court limited interrogatories to fifty "per side." Although the district court's

23   order does not speak directly to this issue, the most reasonable approach is to count one identical

24   interrogatory served on all six of the Defendants as one interrogatory. Under this approach,

25   Mattel may serve a total of 50 non-identical interrogatories to the "other side," and Defendants

26   collectively may serve a total of 50 non-identical interrogatories on Mattel.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT _____ 11

PAGE _____ 188

1    Defendants' alternative approach is not realistic because it would leave Mattel with far

2  fewer interrogatories than the 50 permitted by the district court. Indeed, Defendants' approach

3  would not even provide Mattel with the presumptive limit of 25 interrogatories permitted under

4  Rule 33(a), Fed.R.Civ.P. Under Defendants' approach, Mattel would be limited to approximately

5  eight interrogatories for each of the six Defendants, but Defendants would be allowed to serve 50

6  interrogatories on Mattel. Such an imbalance would be fundamentally unfair.

7    Therefore, for purposes of applying the 50 interrogatory limit, one identical interrogatory

8  served on all six of the Defendants is counted as one interrogatory.

9  B. Interrogatories Requiring Responding Party to: (1) state all facts; (2) identify all persons with

10  knowledge; and (3) identify all documents

11    Pursuant to Rule 33(a), Fed.R.Civ.P., "discrete subparts" of an interrogatory are to be

12  counted as separate interrogatories for purposes of the statutorily imposed limit on the number of

13  interrogatories a party may serve upon any other party. Although Rule 33(a) does not define the

14  term "discrete subparts," The Advisory Committee addresses this issue and provides the

15  following guidance as to when subparts should and should not count as separate interrogatories:

16    Each party is allowed to serve 25 interrogatories upon any other party, but must
   secure leave of court (or stipulation from the opposing party) to serve a larger
17    number. Parties cannot evade this presumptive limitation through the device of
   joining as 'subparts' questions that seek information about discrete separate
18    subjects. However, a question asking about communications of a particular type
   should be treated as a single interrogatory even though it requests that the time,
19    place, persons present, and contents be stated separately for each such
   communication.

20

21  Advisory Committee Notes for the 1993 Amendments to Rule 33. A leading treatise has

22  explained that "it would appear that an interrogatory containing subparts directed at eliciting

23  details concerning the common theme should be considered a single question, although the

24  breadth of an area inquired about may be disputable." 8A Charles A. Wright, Arthur R. Miller &

25  Richard L. Marcus, Federal Practice and Procedure § 2168.1, at 261 (2d ed. 1994). "Although

26  there is no bright-line test as to whether a subpart should be counted as an interrogatory, the

27

28  Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

5

EXHIBIT _____ 11
PAGE _____ 189

1   weight of authority interpreting <u>Rule 33(a)</u> requires examining whether the subparts are

2   'logically or factually subsumed within and necessarily related to the primary question.'"

3   <u>Chapman v. California Dept. of Education</u>, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) citing

4   <u>Safeco of America v. Rawstron</u>, 181 F.R.D. 441, 445 (C.D. Cal. 1998), quoting <u>Ginn v. Gemini</u>

5   <u>Inc.</u>, 137 F.R.D. 320, 322 (D. Nev. 1991).

6          Cases applying Rule 33(a), Fed.R.Civ.P., however, have not been consistent in addressing

7   whether an interrogatory constitutes one or more interrogatories if it asks the responding party to

8   (1) state all facts, (2) identify all persons with knowledge of such facts, and/or (3) identify all

9   documents referring or relating to such facts.  On the one hand, for example, in <u>United States ex</u>

10  <u>rel. Pogue v. Diabetes Treatment Ctrs. of America, Inc.</u>, 235 F.R.D. 521, 524 (D.C. Cir. 2006),

11  the court explained that an "interrogatory may properly seek identification of documents and facts

12  supporting a contention, but it may not do so in a single interrogatory."  <u>See</u> <u>also</u> <u>Nobles v. Jacobs</u>

13  <u>IMC</u>, 2003 WL 23198817 (D. Virgin Islands 2003) (finding that an interrogatory that asks the

14  responding party to state all facts regarding a particular issue and to identify all persons having

15  knowledge of such information is two separate interrogatories); <u>Chapman v. California Dept. of</u>

16  <u>Education</u>, 2002 WL 32854376 (N.D. Cal. Feb. 6, 2002) (treating an interrogatory seeking

17  disclosure of facts (including the identity of persons with knowledge) and documents as two

18  separate interrogatories); <u>Kendall v. GES Exposition Services, Inc.</u>, 174 F.R.D. 684, 685-86 (D.

19  Nevada 1997) (determining that a subpart asking for documents in addition to facts should be

20  treated as two subparts).  On the other hand, for example, in <u>Krawczyc v. City of Dallas</u>, 2004

21  WL 614842 at *3 (N.D. Tex. 2004), the court held that an interrogatory asking a party to state

22  facts supporting a contention and to identify persons with knowledge of those facts counts as one

23  interrogatory because "[w]itnesses and their statements are facts," and hence the subpart is

24  "factually subsumed within and necessarily related to the primary question."

25          In the instant case, most of Mattel's interrogatories follow the same format, asking the

26  responding party to state all facts supporting a contention or contentions, to identity persons with

27

28  <span style="font-size:small">Bryant v. Mattel, Inc.,<br>CV-04-09049 SGL (RNBx)</span>                                                         6

EXHIBIT ____11____

PAGE ____190____

1   knowledge, and to identify all documents that refer or relate to such acts.  Notwithstanding

2   caselaw to the contrary, these subparts are not discrete.  Rather, the subparts are related and

3   directed to the underlying details of a specifically identified contention (or contentions) in a

4   manner similar to the example given in the Advisory Committee Notes:  "a question asking about

5   communications of a particular type should be treated as a single interrogatory even though it

6   requests that the time, place, persons present, and contents be stated separately for each such

7   communication."  Therefore, subparts seeking facts supporting a contention, the identity of

8   persons with knowledge, and documents are not counted separately for purposes of applying the

9   50 interrogatory limit.

10  C.  Interrogatories Addressing Several Discrete Issues

11         Notwithstanding the discussion above in Section "B," many of Mattel's interrogatories are

12  compound because they address discrete issues.  For example, Mattel has propounded the

13  following interrogatory:

14             State all facts that support YOUR contention, if YOU so contend, that one
            or more of MATTEL's claims against YOU in THIS ACTION is barred, in whole
15          or in part, by the doctrines of unclean hands, estoppel, waiver, or consent, and
            IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS
16          that REFER OR RELATE TO such facts.[4]

17  This interrogatory is directed to four separate and discrete defense theories:  unclean hands,

18  estoppel, waiver and consent.  Therefore, the interrogatory is compound and each of the four

19  discrete subparts should be counted as a separate interrogatory.  See Safeco of America, 181

20  F.R.D. at 446 ("Where the underlying requests for admissions [that are the subject of an

21  interrogatory] concern different, separate, or discrete matters, however, the interrogatory should

22  be viewed as containing a subpart for each request."); see also Sec. Ins Co. v. Trustmark Ins. Co.,

23  2003 WL 22326563 (D. Conn. 2003) (finding that a single interrogatory seeking information

24

25

26

27

28

---

[4]  Mattel's Third Set of Interrogatories (No. 18), Glad Dec., Ex. 9.

EXHIBIT ___11___

PAGE ___191___

1   about all elements of a given claim was compound and explaining that each element of a claim is

2   discrete and constitutes a separate interrogatory).

3   　　　Mattel's next interrogatory is even more expansive, covering multiple legal theories and

4   factual matters:

5   　　　　　State all facts that support YOUR contention, if YOU so contend, that
6   　　　　YOU did not intentionally interfere with the INVENTIONS AGREEMENT or
　　　　　any other agreement or contract between MATTEL and BRYANT, or aid or abet
7   　　　　any breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL,
　　　　　when BRYANT purported to TRANSFER and MGA purported to ACQUIRE
8   　　　　rights to BRATZ or when BRATZ performed work or services with or for MGA
　　　　　while BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with
9   　　　　knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO
　　　　　such facts.[5]

10   This interrogatory includes three different legal contentions: (1) intentional interference with the

11   Inventions Agreement; (2) intentional interference with any other agreement or contract between

12   Mattel and Bryant; and (3) aiding or abetting any breach of fiduciary duty or duty of loyalty

13   owed by Bryant to Mattel.[6]   In addition, this interrogatory asks the responding party to apply two

14   different sets of factual allegations to the three different legal contentions.   Therefore, the

15   interrogatory consists of six discrete subparts, each of which counts as a separate interrogatory.

16   　　　The following additional interrogatories contain similar types of discrete and separate

17   subparts:  Mattel's First Set of Interrogatories (Unfair Competition), No. 5 (two discrete

18   subparts); No. 10 (two discrete subparts); Mattel's Third Set of Interrogatories, No. 17 (two

19   discrete subparts), No. 22 (two discrete subparts), No. 23 (4 discrete subparts), No. 25 (two

20   discrete subparts), and No. 27 (2 discrete subparts).  When all of these discrete subparts are taken

21   into consideration, it is evident that Mattel exceeded the 50 interrogatory limit when it

22

23

24   　　　[5]  Id. (No. 21).

25

26   　　　[6] The portion of the interrogatory seeking contentions about a potential breach of a fiduciary duty or the duty
of loyalty could potentially be interpreted as two separate interrogatories, but because these theories are similar and
presumably would be based on interrelated facts, this portion of the interrogatory will count as one interrogatory.

27

28   Bryant v. Mattel, Inc.,                                                                                    8
     CV-04-09049 SGL (RNBx)

EXHIBIT __11__

PAGE __192__

1   propounded its Third Set of Interrogatories.  Therefore, Defendants are entitled to a protective

2   order.

3                                        V. CONCLUSION

4          For the reasons set forth above, Defendants' motion for a protective order is granted, and

5   Mattel's motion to compel responses to the Third Set of Interrogatories is denied.  Mattel may

6   serve a Revised Third Set of Interrogatories that shall not exceed the 50 interrogatory limit

7   imposed by the district court.  MGA's request for sanctions in connection with Mattel's motion to

8   compel interrogatory responses is denied.

9          Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

10  Master, MGA shall file this Order with the Clerk of Court forthwith.

13  Dated: September 5, 2007

                                    _Edward A. Infante_

                                    HON. EDWARD A. INFANTE (Ret.)
                                    Discovery Master

EXHIBIT ___11___

PAGE ___193___

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 5, 2007, I served the attached ORDER GRANTING JOINT MOTION FOR PROTECTIVE ORDER REGARDING MATTEL'S INTERROGATORIES; DENYING MATTEL'S MOTION TO COMPEL INTERROGATORY RESPONSES in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 5, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT ___11___

PAGE ___194___

# EXHIBIT 12

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(D).

**PRIORITY SEND**
& ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                    Date: July 2, 2007

Title:   CARTER BRYANT -v- MATTEL, INC.
         AND CONSOLIDATED ACTIONS
======================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                               Theresa Lanza
Courtroom Deputy Clerk                   Court Reporter

ATTORNEYS PRESENT FOR CARTER        ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                        John B. Quinn
                                     Brett Dylan Proctor
                                     Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:

ENTERED
CLERK, U.S. DISTRICT COURT

JUL - 5 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION     BY DEPUTY

DOCKETED ON CM

JUL - 5 2007

BY _____ 164

Dale M. Cendali
Patricia Glaser

PROCEEDINGS:   MINUTE ORDER

As set forth more fully herein, the Court hereby makes the following ruling regarding matters heard on July 2, 2007:

(1)   The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)   The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505);

(3)   The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90                                    Initials of Deputy Clerk Jh
CIVIL – GEN                          1             Time: 01/15

EXHIBIT 12  (608)

PAGE 195

67|c2|c7

regarding date of production of documents (docket #545); and

(4)   The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508).

(5)   The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.

(1)   Motion re Trial Structure (docket #462)

Previous orders of the Court specified that the claims and counterclaims brought in this action will be tried in two phases.  The parties have agreed, in large part, to a refinement of the Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1.  Where the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases, with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all Phase 1 damages being tried after all the other issues.  Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings.  This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings.  A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL,** as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007. Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)   MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505), and
(3)   MGA's Ex Parte Application regarding date of production of documents (docket #545).

The Discovery Master's May 15, 2007, Order compels production of documents regarding ink, paper, and chemical analysis and documents relating to unreleased MGA products.  The order required that documents be produced no later than the end of May.

The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary to law" standard set forth in Fed. R. Civ. P. 72(a).

The Discovery Master's order compels the production of only non-privileged documents. Therefore, MGA's arguments that the Discovery Master's order requires production of documents in violation of the attorney-client privilege are misplaced.  If the only responsive documents are privileged, then MGA need not produce them, but must produce a privilege log.

MGA acknowledges that it has raised an argument before the Court that was not raised

EXHIBIT _____12_____

PAGE _____196_____

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B). MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below. The Court disagrees. Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds. A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production. MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law. Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature. They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor. The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings. That is clear. However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial. There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims. Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim. Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers. This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result. However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here. Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

EXHIBIT ___12___

PAGE ___197___

later than two weeks after that date.  Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above.  The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above.  The application is **DENIED** in all other respects.

(4)    MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added).  "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation."  <u>Sanders v. Circle K Corp.</u>, 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted).  Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

<u>Alexander v. F.B.I.</u>, 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT ___12___

PAGE ___198___

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)     Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT ___12____

PAGE ___199___

# EXHIBIT 13

1    Robert C. O'Brien (SBN 154372)
     ARENT FOX LLP
2    555 West Fifth Street, 48th Floor
     Los Angeles, CA  90013-1065
3    Telephone:  213.629.7400
     Facsimile:   213.629.7401
4    obrien.robert@arentfox.com

5    Discovery Master

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                EASTERN DIVISION

11

| | |
|---|---|
| 12   CARTER BRYANT, an individual, | Case No.  CV 04-09049 SGL (RNBx) |
| 13           Plaintiff, | |
| 14           v. | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727 |
| 15   MATTEL, INC., a Delaware<br>corporation, | **PHASE 2 DISCOVERY MATTER** |
| 16 | |
| 17         Defendant. | **AMENDED[1] ORDER NO. 11, REGARDING:** |
| 18 | **(1)  MOTION OF MATTEL, INC.** |
| 19 | **TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS** |
| 20 | **BY MGA ENTERTAINMENT, INC. AND ISAAC LARIAN; and** |
| 21 | |
| 22   CONSOLIDATED WITH | **(2)  MOTION OF MATTEL, INC.** |
| 23   MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. | **TO COMPEL THE DEPOSITIONS OF PABLO VARGAS AND** |
| 24   MATTEL, INC. | **MARIANA TRUEBA** |

25

26

---

27   [1] The only difference between this Amended Order No. 11 and the original order is the language in Section III
28   requiring MGA Entertainment, Inc. and Isaac Larian to produce responsive documents and information within 30
     days of the original order.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ **13**

PAGE _____ **200**

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    This Order sets forth the Discovery Master's ruling on two motions filed by

2    Mattel, Inc. ("Mattel"):  (1) a motion to compel responses to interrogatories and

3    production of documents by MGA Entertainment, Inc. ("MGA") and Isaac Larian

4    ("Larian") [Docket No. 4817] (the "Written Discovery Motion"), and (2) a motion

5    to compel the depositions of Pablo Vargas and Mariana Trueba [Docket No. 4799]

6    (the "Deposition Motion") (collectively, the "Motions").

7        The Motions came on regularly for hearing before the Discovery Master on

8    March 19, 2009.  All interested parties were represented by counsel and afforded

9    the opportunity to present oral argument on the Motions.  The Discovery Master,

10   having considered the papers filed in support of and in opposition to the Motions,

11   and having heard oral argument, rules as set forth below.

12   **I.    MATTEL'S WRITTEN DISCOVERY MOTION**

13       In its Written Discovery Motion, Mattel seeks to compel MGA to produce

14   documents responsive to 40 separate document requests[2] and provide answers to 12

15   different interrogatories.  (Separate Statement in Support of the Written Discovery

16   Motion, pp. 1 – 41 and 45 – 102).  Mattel further seeks to compel Larian to produce

17   documents responsive to 3 separate document requests and provide answers to 11

18   different interrogatories.[3]   (*Id.*, pp. 41 – 43 and 49 – 102).

19   **A.    Document Requests**

20       **1.    Document Requests Propounded On MGA**

21       Document Request Nos. 4 through 37 seek financial information from MGA

22

---

[2] Although Mattel purports to compel responses from MGA to Document Request Nos. 4 – 37 and 40 – 45 in its Written Discovery Motion, its Separate Statement does not reference Request for Production No. 42, mislabels Document Request Nos. 43, 44 and 45 (as requests numbered 42, 43 and 44, respectively) and includes Document Request No. 46 (incorrectly numbered as request 45).  (*Compare* Separate Statement in Support of the Written Discovery Motion at pp. 37 – 40 with the Declaration of Scott L. Watson in Support of the Written Discovery Motion ("Watson Decl."), Ex. 1 at pp. 13 and 14).  Because Mattel has in reality moved to compel responses to Document Requests Nos. 4 – 37, 40, 41, and 43 – 46, the Discovery Master's ruling addresses only those requests – not Document Request No. 42.  Moreover, any reference to a document request relating to MGA in this Order shall refer to the actual number of the document request as set forth in Mattel's Second Set of Requests for Production of Documents and Things to MGA dated June 6, 2007 (attached to the Watson Decl. as Exhibit 1).

[3] The 11 interrogatories propounded on Larian are the same as 11 of the 12 interrogatories at issue regarding MGA.

EXHIBIT _____13_____

PAGE _____261_____

1   related to sales, revenues, costs, profits, customer returns, customer rebates and

2   customer credits regarding the Bratz Dolls or Bratz Product,[4] as well as documents

3   sufficient to identify customers who purchased any Bratz Product from MGA or its

4   licensees. (Watson Decl., Ex. 1 at pp. 7 – 12).

5        Document Request Nos. 43, 44 and 46 similarly seek financial information

6   from MGA related to the Bratz product line:

7        • Document Request No. 43 (erroneously numbered in Mattel's Separate

8          Statement as request number 42): "All sales, profit and cash flow

9          projections or forecasts for BRATZ DOLLS, BRATZ PRODUCTS,

10         BRATZ MOVIES, and BRATZ TELEVISION SHOWS." (Id., p. 13).

11       • Document Request No. 44 (erroneously numbered in Mattel's Separate

12         Statement as request number 43): "All DOCUMENTS that REFER

13         OR RELATE TO the value of the Bratz brand." (Id.).

14       • Document Request No. 46 (erroneously numbered in Mattel's Separate

15         Statement as request number 45): "All DOCUMENTS that evidence,

16         reflect, REFER OR RELATE TO the BRATZ DOLL's share of the

17         fashion doll market, including, without limitation, the extent to which

18         Bratz has been or is gaining or losing market share in the fashion doll

19         market." (Id., p. 14).

20       Document Request Nos. 40, 41 and 45, on the other hand, seek financial

21   information from MGA as a whole, not just financial data limited to the Bratz Dolls

22   or Bratz Product:

23       • Document Request No. 40: "All DOCUMENTS that describe YOUR

---

[4] Mattel defines the term "Bratz Product" as follows:

'Bratz Product' means any product whether two-dimensional or three-dimensional, and whether in tangible, digital or electronic or other form: (i) that is or has ever been distributed, marketed or sold under the name 'Bratz' or as part of the 'Bratz' line; (ii) that depicts, incorporates, embodies consists of or REFERS OR RELATES TO BRATZ; and/or (iii) that is or has ever been distributed, marketed or sold in any packaging that includes the name 'Bratz' or depicts, incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ.

(Watson Decl., Ex. 1 at p. 3; see also id., Ex. 4 at p. 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____13_____     - 2 -     AMENDED ORDER NO. 11
                                    [Case No. CV 04-09049 SGL (RNBx)]
PAGE _____202_____

1  cost allocation procedures." (*Id.*, p. 13).

2  • Document Request No. 41: "YOUR general ledgers from January 1,

3  1995 through the present." (*Id.*).

4  • Document Request No. 45 (erroneously numbered in Mattel's Separate

5  Statement as request number 44): "DOCUMENTS sufficient to

6  calculate YOUR net worth on a yearly basis for each year from 1999

7  to the present." (*Id.*).

8  **2.    Document Requests Propounded On Larian**

9  The three document requests propounded on Larian (i.e., Documents Request

10  Nos. 207, 208 and 269) seek information regarding all of Larian's earnings and

11  bank accounts:

12  • Document Request No. 207: "DOCUMENTS sufficient to IDENTIFY

13  each account with any bank or financial institution that YOU have or

14  have had, or that YOU have or have had any legal or beneficial interest

15  in, since January 1, 1999." (Watson Decl., Ex. 4 p. 51).

16  • Document Request No. 208: "Documents sufficient to establish

17  YOUR gross income, and the sources of that gross income, for the

18  years 1999 through the present, inclusive." (*Id.*, p. 52).

19  • Document Request No. 269: "DOCUMENTS sufficient to calculate

20  YOUR net worth on a yearly basis for each year from 1999 to the

21  present." (*Id.*, p. 63).

22  **3.    Phase 1 Rulings**

23  This is not the first time that Mattel has moved to compel responses to the

24  document requests at issue. Mattel previously filed two motions to compel that

25  asked the former discovery master to compel MGA and Larian (collectively, the

26  "MGA Parties") to, among other things, respond to the same 43 document requests

27  in dispute here. (Watson Decl., Exs. 2 and 7). The prior discovery master granted

28  both motions (at least as they relate to the document requests that are the subject of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____13_____   - 3 -

PAGE _____203_____

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1  the present dispute). (*Id.*, Ex. 3 at pp. 1 – 3; *Id.*, Ex. 8 at pp. 15 and 16).

2       Because the prior discovery master compelled MGA to produce information

3  responsive to Document Request Nos. 4 – 37, 40, 41 and 43 – 46, and directed

4  Larian to produce information responsive to Document Request Nos. 207, 208 and

5  269, Mattel argues (1) that the MGA Parties have a duty under Federal Rule of

6  Civil Procedure 26 to supplement their prior productions, and (2) that the

7  information the MGA Parties "are withholding is relevant to the damages Mattel

8  seeks," (Written Discovery Motion, pp. 8 – 9).

9         **4.    Objections Of MGA**

10       In their Opposition, the MGA Parties rely on two grounds for refusing to

11  supplement their prior document productions regarding Document Request Nos. 4 –

12  37, 40, 41, 43 – 46, 207, 208 and 269.  First, the MGA Parties argue that Mattel

13  failed to meet and confer in good faith.  (Opposition, pp. 3 – 5).  Second, the MGA

14  Parties argue that the requested information is not relevant to the claims and

15  defenses at issue in Phase 2.  (*Id.*, 5 – 7).

16         **a.    Purported Failure To Meet And Confer**

17       Because it could dispose of the outstanding discovery issues related to the

18  document requests that are the subject of the present dispute, the Discovery Master

19  first addresses the MGA Parties' argument that Mattel failed to meet and confer

20  properly prior to filing its Written Discovery Motion.

21       The MGA Parties argue that Mattel's motion to compel should be denied

22  because Mattel failed to comply with the meet and confer requirements of Local

23  Rule 37-1.  (*Id.*, pp. 3 – 5).  As the Discovery Master has previously ruled,

24  however, Local Rule 37 (as distinguished from Federal Rule 37) does not apply to

25  discovery disputes in this case.  The applicable meet and confer procedures are set

26  forth in the Court's order appointing a discovery master dated December 6, 2006

27  ("Discovery Master Order") and in the Federal Rules of Civil Procedure, (Fed. R.

28  Civ. Proc. 37(a); Discovery Master Order, p. 4), the latter of which expressly

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT \_\_\_\_\_**13**_____  4-

PAGE \_\_\_\_\_**204**\_\_\_\_\_

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   requires that, before filing a motion to compel, the moving party must meet and

2   confer in "good faith." (Fed. R. Civ. Proc. 37(a)).

3       Because Rule 37 and the Discovery Master Order govern the meet and confer

4   process in this case, the Discovery Master construes the MGA Parties' meet and

5   confer argument in light of the good faith requirement embedded in Rule 37. The

6   MGA Parties claim that Mattel did not meet and confer in good faith because its

7   counsel sent them "a meet and confer letter inviting [them] to further meet and

8   confer on February 11, 2009" and then filed a motion to compel one "day before

9   the proposed meet and confer session" was scheduled to occur (i.e., on February 10,

10   2009). (Opposition, pp. 3 − 5; *see also* Declaration of Amman Khan, Ex. H at p. 2

11   [wherein Mattel's counsel asked counsel for the MGA Parties to "be in a position to

12   provide us with MGA and Larian's position by Wednesday, February 11, 2009."]).

13   However, the record available to the Discovery Master demonstrates that Mattel

14   made several prior attempts to meet and confer with the MGA Parties, including

15   engaging in the following:

16       &bull; On January 6, 2009, Mattel's counsel sent a letter demanding that the

17         MGA Parties supplement their production concerning the document

18         requests by February 1, 2009, (Watson Decl., Ex. 17);

19       &bull; Counsel for the MGA Parties never responded to Mattel's January 6,

20         2009 letter, (Written Discovery Motion, p. 6);

21       &bull; Counsel for Mattel sent counsel for the MGA Parties a second copy of

22         the January 6, 2009 letter on February 5, 2009, (Watson Decl., Ex. 30);

23       &bull; Counsel for Mattel and counsel for the MGA Parties then spoke on

24         February 6, 2009, and were supposed to discuss, among other things,

25         the document requests at issue, but counsel for the MGA Parties was

26         not prepared to discuss the requests at the appointed time, (Watson

27         Decl., ¶ 22); and

28       &bull; Counsel for Mattel and the MGA Parties then spoke *again* on February

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES



EXHIBIT _____ 13

PAGE _____ 265

- 5 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1          9, 2009 to discuss the document requests but counsel for the MGA

2          Parties was still not prepared to discuss the issues, (*Id.*).

3          In light of foregoing facts (which are not disputed by the MGA Parties), it is

4    clear that Mattel satisfied Rule 37's "good faith" meet and confer requirement. The

5    plain language of Federal Rule of Civil Procedure 37(a)(1) permits a party to "move

6    for an order compelling . . . discovery . . . [if] the movant has in good faith

7    conferred or *attempted to confer* with the" the non-moving party." (Fed. R. Civ. P.

8    37(a) [emphasis added]). Because it attempted to meet and confer with counsel for

9    the MGA Parties on at least two occasions (but was unable to do so because the

10   MGA Parties were not prepared to meet and confer during either of the agreed upon

11   times), Mattel satisfied its meet and confer obligations under Rule 37.[5]

12                   **b.       Relevance Of The Document Requests To Phase 2**

13          The MGA Parties also oppose Mattel's demand for a supplemental

14   production on the ground that none of the document requests as issue seek

15   information reasonably calculated to lead to the discovery of admissible evidence.

16   (Opposition, pp. 5 – 7).

17                   **(1)      Document Request Nos. 207, 208 And 269**

18          With respect to the three document requests directed to Larian (i.e.,

19   Document Request Nos. 207, 208 and 269), the Opposition contends that they are

20   not relevant to any Phase 2 claims. (Opposition, p. 6).

21          Each of the requests seeks information related to Larian's financial condition,

22   Mattel's damages, and/or whether the facts alleged in Mattel's Second Amended

23   Answer and Counterclaim ("SAAC") are true. For example, Document Request

24   _____

25   [5] The Discovery Master's ruling is also supported by the fact that the MGA Parties refused to produce any of the
     requested information following the filing of the Written Discovery Motion. It is, therefore, unclear what could have
     been accomplished by an additional meet and confer on these issues. Moreover, Mattel's counsel stated at oral

26   argument that they met with MGA's counsel again on February 11, 2009 regarding the document requests and they
     still "had no answer to this question." (Transcript of March 19, 2009 hearing before the Discovery Master ("Tr.") p.

27   68:7-9). Regardless, Mattel attempted to meet and confer twice before filing its current motion to compel (i.e., on
     February 6 and 9, 2009) and that is all that is required by the Federal Rules of Civil Procedure and the discovery

28   procedures governing this case.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____**13**____ _-6-_

PAGE ____**206**____

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   Nos. 208 and 269 seek documents sufficient to identify Larian's net worth (Request

2   No. 269) and gross income (Request No. 208).  Such information relates to Phase 2

3   damages issues, including, among other things, damages sought against Larian in

4   connection with Mattel's unfair competition cause of action as well as the

5   calculation of Larian's net worth for purposes of litigating the propriety of any

6   "exemplary damages under Cal. Civ. Code § 3294."[6]  (SAAC, ¶¶ 163 – 166).  It is

7   therefore discoverable.

8        In its SAAC, Mattel also alleges that MGA, Larian and others hired former

9   Mattel's employees for the express purpose of misappropriating Mattel's

10  confidential and proprietary information, and that the MGA Parties promised such

11  individuals increased salaries at MGA.  (*See, e.g.,*  SAAC, ¶¶ 69 and 77).  Mattel's

12  request for documents sufficient to identify Larian's bank accounts (i.e., Request

13  No. 207) is, therefore, reasonably calculated to lead to the discovery of admissible

14  evidence regarding the source of any payments that may have been made by Larian

15  to former Mattel employees.[7]

16              **(2)    Document Request Nos. 4 – 37, 40, 41 And 43 –**

17                           **46**

18       Regarding the requests directed to MGA (i.e., Document Request Nos. 4 –

19  37, 40, 41 and 43 – 46), MGA argues that they are improper because they seek

20  financial information "related to Bratz dolls, which was a Phase 1 issue,"

21  (Opposition, p. 5).  Specifically, the MGA parties argue that:

22              [a]ny claim by Mattel that it needs [supplemental] Bratz-

23

---

24   [6] While the Discovery Master agrees that Document Request Nos. 208 and 269 are relevant to Phase 2 issues, he concludes that Larian should not be required to provide updated information concerning his net worth and gross income every few months. Yet, Mattel is entitled to obtain this financial information at least once prior to the Phase 2 trial so that it can assess the veracity of the information provided by Larian through the discovery process, question deponents about the figures provided, and give the data to its experts. Further, acquiring updated financial information from Larian is appropriate because his net worth and gross income could, in theory, have been altered by the verdict rendered in Phase 1 or recent economic conditions.

27  [7] Any imposition resulting from Document Request No. 207 should be minimal because Larian was ordered to produce documents identifying his bank accounts as part of Phase 1.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____ **15** ____    - 7 -

PAGE____ **207**

1    related financial information in order to establish its Phase

2    2 damages ignores the jury's Phase 1 damages award . . . .

3    Mattel sought disgorgement of all Bratz profits during

4    Phase 1 and the jury made its award. Mattel may not

5    relitigate this issue in Phase 2.

6    (*Id.*, p. 6).

7    However, Document Request Nos. 40, 41 and 45[8] make no mention of

8    financial information related to the Bratz Dolls or Bratz Product. They instead seek

9    (1) "All DOCUMENTS that describe [MGA's] cost allocation procedures,"

10    (Watson Decl., Ex. 1 at p. 13), (2) MGA's "general ledgers from January 1, 1995

11    through the present," (*id.*), and (3) "DOCUMENTS sufficient to calculate [MGA's]

12    net worth on a yearly basis for each year from 1999 to the present," (*id.*).

13    Therefore, MGA's argument does not apply to these document requests.

14    Document Request Nos. 40, 41 and 45 (erroneously numbered in Mattel's

15    Separate Statement as request number 44) are further reasonably calculated to lead

16    to the discovery of admissible evidence. As the Discovery Master previously ruled,

17    the touchstone for determining whether a particular discovery request is reasonably

18    calculated to lead to the discovery of admissible evidence in this case is whether the

19    request bears some relation to the issues to be tried in Phase 2. That standard is met

20    here, since MGA's general ledgers, net worth, and cost allocation procedures all

21    bear on Mattel's Phase 2 damages claims, including Mattel's claim for punitive

22    damages.

23    As for the remainder of the document requests directed to MGA (i.e.,

24    Document Request Nos. 4 – 37, 43,[9] 44,[10] and 46),[11] they are admittedly linked to

---

[8] Document Request No. 45 is erroneously numbered in Mattel's Separate Statement as request number 44.

[9] Document Request No. 43 is erroneously numbered in Mattel's Separate Statement as request number 42.

[10] Document Request No. 44 is erroneously numbered in Mattel's Separate Statement as request number 43.

[11] Document Request No. 46 is erroneously numbered in Mattel's Separate Statement as request number 45.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___13___    - 8 -

PAGE ___208___

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    financial information related to the Bratz Dolls/Bratz Product. While the Discovery

2    Master recognizes that many, if not all, of the issues related to the theft of the Bratz

3    Dolls as well as any damages that may be recoverable by Mattel relating to such

4    misconduct were litigated and resolved in Phase 1 that does not necessarily mean

5    the information sought by Mattel is irrelevant.

6        As an initial matter, the Court's December 3, 2008 order imposes a

7    constructive trust on the proceeds of MGA's sale of Bratz dolls. Continued sale of

8    any such inventory is thus relevant to the Court's injunction and presumably must

9    be made available to Mattel on that basis alone.[12]

10       Document Request Nos. 4 – 37, 43 (erroneously numbered in Mattel's

11   Separate Statement as request number 42), 44 (erroneously numbered in Mattel's

12   Separate Statement as request number 43), and 46 (erroneously numbered in

13   Mattel's Separate Statement as request number 45) also relate to Mattel's Phase 2

14   claims. The counterclaims to be litigated in Phase 2 (e.g., Mattel's RICO causes of

15   action, misappropriation of trade secrets claim, and unfair competition cause of

16   action) all incorporate by reference the allegation that "MGA first stole 'Bratz,' a

17   fashion doll, from Mattel, and then continued stealing Mattel's confidential and

18   proprietary information to fuel MGA's growth." (SAAC, ¶¶ 1, 88, 98, 106, and

19   163). The SAAC later alleges that "[b]y engaging in the foregoing conduct, [MGA

20   has, among other things,] . . . engaged in unlawful, unfair or fraudulent business

21   act[s] or practice[s]" in violation of California Business and Professions Code

22   section 17200 *et seq.* (SAAC, ¶ 165). Therefore, in addition to the alleged

23   misappropriation of other trade secrets, Mattel's Phase 2 counterclaims at least

24   arguably include evidence relating to the purported theft of the Bratz Dolls as well.

25       Mattel's two RICO claims also both refer explicitly to a "Bratz Criminal

26

27   _____

[12] MGA also has a continuing duty to supplement its production under the Federal Rules of Civil Procedure. (*See*

28   Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to . . . [a] request for production . . . must supplement or correct its disclosure or response . . . in a timely manner"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____13____    - 9 -

PAGE ____209____

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    Enterprise." (SAAC, ¶¶ 89 and 100).  The SAAC further expressly alleges that one

2    of the purported racketeering activities was the "altering [of] numerous original

3    Bratz drawings created by Bryant . . ." (SAAC, ¶ 93(c)(ii)).  These allegations are

4    sufficient to render Document Request Nos. 4 – 37, 43, 44 and 46 reasonably

5    calculated to lead to the discovery of admissible evidence in Phase 2.

6         The Discovery Master cannot predict whether the Court will ultimately

7    construe Mattel's Phase 2 claims as broad enough to encompass MGA's alleged

8    misappropriation of the Bratz Dolls, or whether Mattel will be barred from

9    presenting any evidence that it has been damaged by such misconduct at the Phase

10   2 trial on the ground that the issue was previously litigated and resolved in Phase 1.

11   Given that the discovery here need only appear reasonably calculated to lead to the

12   discovery of admissible evidence concerning the Phase 2 claims, the Discovery

13   Master finds that the aforementioned document requests are sufficiently related to

14   Mattel's Phase 2 claims to be discoverable at this time.

15            **5.    Conclusion**

16        For all of the foregoing reasons, Mattel's motion to compel responses to

17   Document Request Nos. 4 – 37, 40, 41, 43 – 46 (erroneously numbered in Mattel's

18   Separate Statement as requests numbered 42 – 45), 207, 208 and 269 is granted.

19   **B.    Interrogatories Propounded On MGA And Larian**

20        The second part of Mattel's Written Discovery Motion addresses various

21   interrogatories propounded on the MGA Parties.

22            **1.    Interrogatory No. 45 Propounded On MGA**

23   Interrogatory No. 45 asks MGA[13] to:

24            IDENTIFY each BRATZ PRODUCT that has been

25            SOLD by [MGA] or [its] licensees and, for each such

26

27   ───────────────

     [13] Although Interrogatory No. 45 was propounded on Larian as well, (*see* Watson Decl., Ex. 9), Mattel's Written

28   Discovery Motion seeks an order compelling just "MGA TO SUPPLEMENT ITS RESPONSES TO
     INTERROGATORY NO. 45." (Written Discovery Motion, p. 9:8-9 [emphasis omitted]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___13___          - 10 -          AMENDED ORDER NO. 11
                                          [Case No. CV 04-09049 SGL (RNBx)]
PAGE ___210___

1    BRATZ PRODUCT, state . . . (a) the number of units of

2    each such BRATZ PRODUCT SOLD by [MGA] or [its]

3    licensees, (b) the gross and net revenue received by

4    [MGA] from such SALES of each such BRATZ

5    PRODUCT, (c) all costs [MGA] incurred in connection

6    with each such BRATZ PRODUCT, including but not

7    limited to [MGA's] costs of goods sold, and (d) [MGA's]

8    gross and net profits from each such BRATZ PRODUCT.

9  (Separate Statement in Support of the Written Discovery Motion, p. 45; *see also*

10  Written Discovery Motion, p. 9).

11               **a.      Phase 1 Rulings**

12       As with the document requests discussed above, Mattel concedes that "MGA

13  identified and produced documents responsive to [Interrogatory No. 45] in

14  December 2007, and later supplemented th[at] production mid-trial . . ." (Written

15  Discovery Motion, p. 9). Nonetheless, Mattel argues that "MGA now . . . refuses to

16  supplement its response" without justification. (*Id.*)

17               **b.      Objections Of MGA**

18       In its Opposition, MGA argues that it does not have to provide the

19  information requested by Interrogatory No. 45 for two reasons. First, it claims that,

20  like the document requests propounded on MGA, "Mattel's entitlement to gross and

21  net profits from sales of Bratz products was an issue adjudicated in Phase 1, and

22  Mattel fails to explain how this discovery is relevant to or proper in Phase 2."

23  (Opposition, p. 7). The information sought by Interrogatory No. 45 is virtually

24  identical to the documents sought by Document Request Nos. 21 (requesting

25  "DOCUMENTS sufficient to show the number of units of each BRATZ

26  PRODUCT sold by [MGA] or [its] licensees"), 22 (requesting "DOCUMENTS

27  sufficient to show the revenue received by [MGA] from the sale of each BRATZ

28  PRODUCT sold by [MGA] or [its] licensees"), 23 (requesting "DOCUMENTS

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____13____ - 11 -

PAGE _____211

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   sufficient to show [MGA's] cost of goods sold, unit cost and other cost for each

2   BRATZ PRODUCT sold by [MGA] or [its] licensees"), and 24 (requesting

3   "DOCUMENTS that evidence, reflect or REFER OR RELATE TO [MGA's]

4   profits from the sale of each BRATZ PRODUCT sold by [MGA] or [its]

5   licensees"), discussed above.  Accordingly, MGA's relevancy argument regarding

6   Interrogatory No. 45 is not persuasive for the same reasons discussed in Section

7   I.A.4.b.2 above, namely that the information is relevant to the constructive trust

8   imposed by the Court on the proceeds of MGA's sale of Bratz dolls and is also

9   arguably relevant to Mattel's Phase 2 claims.[14]

10          MGA also argues that it should not be required to provide the information

11   requested by Interrogatory No. 45 because it "has already provided information that

12   is current through the second fiscal quarter of 2008" and it would be unduly

13   burdensome to gather the documents necessary to update that information.

14   (Opposition, pp. 7 – 8).  MGA did not argue, however, in its Opposition that it

15   would be unduly burdensome to respond to Document Request Nos. 21, 22, 23 and

16   24 discussed above in Section I.A.4.b.2.  Therefore, MGA can gather the

17   documents responsive to those requests and refer Mattel to those materials.  (*See*

18   Fed. R. Civ. P. 33(d) [If the answer to an interrogatory may be determined by

19   examining . . . a party's business records . . . the responding party may answer by

20   specifying the records that must be reviewed . . ."]).

21          The MGA Parties' argument that it is overly burdensome to require MGA to

22   spend 320 hours to inform Mattel of the most recent sales figures concerning the

23   Bratz products, (Opposition, p. 7), is also unpersuasive, given the importance of the

24

25   [14] Again, the Discovery Master cannot predict whether the Court will ultimately deem Mattel's Phase 2 claims broad
     enough to encompass MGA's alleged misappropriation of the Bratz dolls or whether Mattel will be barred from

26   presenting any evidence that it has been damaged by such misconduct at the Phase 2 trial on the ground that the issue
     was previously litigated and resolved in Phase 1.  Nevertheless, in light of the fact that the discovery need only

27   appear reasonably calculated to lead to the discovery of admissible evidence concerning the Phase 2 claims, the
     Discovery Master finds that Interrogatory No. 45 is sufficiently related to Mattel's Phase 2 claims to be discoverable

28   at this time.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 13 _____   - 12 --

PAGE _____ 212 _____

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    information requested and the wide-ranging extent of the discovery to date. As

2    explained above, the information sought is relevant to the constructive trust

3    imposed by the Court's December 3, 2008 ruling and relevant to Mattel's Phase 2

4    claims. Also, while 320 hours may be unduly burdensome in certain

5    circumstances, it is not unreasonable on its face here given that the MGA Parties

6    have already produced more than 4 million documents.[15]  (*See Cappacchione v.*

7    *Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 491 (W.D.N.C. 1998)

8    ["Requiring a responding party to perform extensive research or to compile

9    substantial amounts of data and information does not automatically constitute an

10   undue burden . . . Imposing such a burden is particularly proper where, as here, the

11   information sought is crucial to the ultimate determination of a crucial issue and

12   where the location of the documents is best known by the responding party."]).

                          c.      **Conclusion**

14           For all of the foregoing reasons, Interrogatory No. 45 is reasonably

15   calculated to lead to the discovery of admissible evidence regarding Mattel's

16   Phase 2 claims and must be answered by MGA.

17           **2.     Interrogatory Nos. 56 – 63 Propounded On MGA And**

18                   **Larian**

19           Mattel propounded Interrogatory Nos. 56 – 63 on both MGA and Larian.

20   These interrogatories ask the MGA Parties to provide information regarding their

21   alleged theft of certain Mattel documents:

22           •   Interrogatory No. 56: "IDENTIFY all MATTEL DOCUMENTS that

23               MGA has obtained, received, reviewed, copied, reproduced,

24               transmitted, requested, or used at any time since January 1, 1999, and

25               IDENTIFY all PERSONS with knowledge of such facts and all

26               DOCUMENTS that REFER OR RELATE TO such MATTEL

---

[15] *See* Opposition at p. 4 n. 1 [stating that "the MGA Defendants [have] produced four million, two hundred thousand (4,200,000) pages of documents"].

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT  **13**          - 13 -          AMENDED ORDER NO. 11
                                         [Case No. CV 04-09049 SGL (RNBx)]

PAGE  **213**

1   DOCUMENTS." (Separate Statement in Support of Written

2   Discovery Motion, p. 49).

3   • Interrogatory No. 57: "IDENTIFY all DOCUMENTS that REFER

4   OR RELATE TO any MATTEL product or plan that any of the

5   FORMER MATTEL EMPLOYEES provided, transmitted or disclosed

6   to, shared with or used on behalf of MGA at any time since January 1,

7   1999, and IDENTIFY all PERSONS with knowledge of such facts."

8   (*Id.*, p. 52).

9   • Interrogatory No. 58: "State all facts which support YOUR

10   contention, if YOU so contend, that YOU and/or MGA did not obtain

11   any MATTEL DOCUMENTS through improper means, and

12   IDENTIFY all PERSONS with knowledge of such facts and all

13   DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

14   54).

15   • Interrogatory No. 59: "State all facts which support YOUR

16   contention, if YOU so contend, that any information in the MATTEL

17   DOCUMENTS does not and/or did not derive independent economic

18   value from not being generally known to the public or other

19   PERSONS who can obtain economic value from its disclosure or use,

20   and IDENTIFY all PERSONS with knowledge of such facts and all

21   DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

22   57).

23   • Interrogatory No. 60: "State all facts which support YOUR

24   contention, if YOU so contend, that any information in the MATTEL

25   DOCUMENTS was known to the public or to PERSONS who can

26   obtain economic value from its disclosure or use, and IDENTIFY all

27   PERSONS with knowledge of the foregoing and All DOCUMENTS

28   that REFER OR RELATE TO the foregoing." (*Id.*, p. 61).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____13_____   - 14 -   AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

PAGE _____214_____

1        •   Interrogatory No. 61: "State all facts which support YOUR

2            contention, if YOU so contend, that YOU and/or MGA independently

3            developed, or did not otherwise use or disclose, any information in the

4            MATTEL DOCUMENTS, and IDENTIFY all PERSONS with

5            knowledge of such facts and all DOCUMENTS that REFER OR

6            RELATE TO such facts." (*Id.*, pp. 64 – 65).

7        •   Interrogatory No. 62: "State all facts which support YOUR contention

8            that YOUR use or disclosure of information in the MATTEL

9            DOCUMENTS neither benefited YOU nor harmed MATTEL, and

10          IDENTIFY all PERSONS with knowledge of such facts and all

11          DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

12          69).

13        •   Interrogatory No. 63: "State all facts which support YOUR

14          contention, if YOU so contend, that YOU and/or MGA had, has or

15          have any right to copy, possess, use or disclose any MATTEL

16          DOCUMENT, and IDENTIFY all PERSONS with knowledge of such

17          facts and all DOCUMENTS that REFER OR RELATE TO such

18          facts." (*Id.*, p. 73).

19                 **a.**    **Objections Of MGA And Larian**

20            In their Opposition, the MGA Parties rely on four basic grounds for refusing

21    to provide responses to Interrogatory Nos. 56 – 63. First, the MGA Parties argue

22    that Interrogatory Nos. 56 and 58 – 63 are unduly burdensome. (Opposition, pp. 9

23    – 10).   Second, the MGA Parties argue that the interrogatories presuppose facts

24    that are not true. (*Id.*, p. 8).  Third, the MGA Parties argue that all 8 interrogatories

25    are impermissibly compound and exceed the number of allotted interrogatories.

26    (*Id.*, pp. 10 – 11). Finally, the MGA Parties argue that Interrogatory Nos. 58, 59

27    and 62 improperly ask them to establish a negative proposition. (*Id.*, pp. 11 – 12).

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

**EXHIBIT**    **13**   -15-

PAGE   **215**

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

**(1)     Unduly Burdensome Objection**

The MGA Parties' primary argument in opposition to Interrogatory Nos. 56 – 63 is that each of the seven interrogatories that references the term "MATTEL DOCUMENTS" (i.e., Interrogatories Nos. 56 and 58 – 63) is unduly burdensome. (Opposition, p. 9 – 10).  While the MGA Parties do concede that the interrogatories "relate to Phase 2" issues, (Tr., p. 57:13), they object to the interrogatories because they claim that the interrogatories require them "to state all facts, identify all documents and identify all witnesses, supporting contentions for over 8 boxes of documents . . ." (Opposition, pp. 9 – 10).  Whether an undue burden exists, however, depends on, among other things, the value of the information sought versus the burden alleged by the responding party.  (*See King v. Georgia Power Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) ["Although preparation of a direct answer will be time-consuming, and probably costly, the information is crucial to the issues of this suit, and is in the exclusive custody of the defendant."]).

Applying this test here, the Discovery Master finds that Interrogatory Nos. 56 and 58 – 63, at least as he understands them, go to the core of Mattel's Phase 2 trade secret claims.  (Tr., 37:9-12 ["We're not asking for something of marginal importance.  We're asking for . . . their core contentions related to the trade secret claims."]).  As the Discovery Master has previously explained, the issues to be litigated in Phase 2 include, among other things, Mattel's claim that the MGA Parties stole "a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure," including, among other things, stealing "Mattel's proprietary business methods, practices and information." (SAAC, ¶ 20).  Indeed, Mattel alleges in its SAAC that the MGA Parties:

- "engaged in an ongoing, widespread pattern of . . . inducing Mattel employees to steal Mattel's confidential information or other property and take it with them to MGA," (*Id.*, ¶ 5);

//

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 13 _____  - 16 -

PAGE _____ 216 _____

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1         • stole "Mattel's plans, strategy and business information for the

2             Mexican market and materials related to Mattel's worldwide business

3             strategies," (*Id.*, ¶ 37);

4         • "directed [certain Mattel employees'] to steal virtually all Mattel

5             confidential and proprietary information that they could access and

6             bring it with them to MGA," (*Id.*, ¶ 43), including "virtually every

7             type of document a competitor would need to enter the Mexican

8             market, and to unlawfully compete with Mattel in Mexico, in the

9             United States and elsewhere . . ." (*Id.*, ¶ 48);

10       • "targeted certain Mattel employees who have broad access to Mattel

11           proprietary information in an effort to induce and encourage them to

12           join MGA and to steal or otherwise wrongfully misappropriate Mattel

13           confidential information and trade secrets," including by "promising

14           these employees salaries 25 percent or more higher than they earn at

15           Mattel and stating to them that they should not be concerned by legal

16           action taken by Mattel to protect its trade secrets and its rights because

17           such claims are hard to prove and easy to defeat," (*Id.*, ¶ 69); and

18       • "hired directly from Mattel's United States operations at least 25

19           employees, from Senior Vice-President level to lower level

20           employees," and that some of these individuals misappropriated

21           "Mattel confidential and proprietary information, including Mattel's

22           strategic plans; business operations; methods and systems; marketing

23           and advertising strategies and plans; future product lines; product

24           profit margins, and customer requirements." (*Id.*, ¶ 77).

25          Therefore, this is not a situation where Mattel has alleged that the MGA

26  Parties stole a handful of documents.  The SAAC instead alleges that the MGA

27  Parties engaged in the wholesale theft of Mattel's trade secrets, including stealing

28  "virtually every type of document a competitor would need to enter the Mexican

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **13**     - 17 -

PAGE **217**

1    market, and to unlawfully compete with Mattel in Mexico, in the United States and

2    elsewhere . . ." (*Id.*, ¶ 48). Because Mattel alleges that its claims against the MGA

3    Parties relate to "a massive and pervasive theft of Mattel information," (Tr., 33:18-

4    19), including all of the documents that have been identified as the MATTEL

5    DOCUMENTS, Mattel is entitled to ask what the MGA Parties' contentions are

6    regarding whether or not those documents constitute trade secrets, particularly

7    given that such information is exclusively within the control of the MGA Parties.

8    As Mattel's counsel expressed at oral argument, Mattel is "going to go to trial

9    accusing MGA and the other defendants of stealing all of these documents . . . and

10   [the MGA Parties are] going to have to articulate what their contentions are with

11   respect to whether or not these are trade secrets . . ." (Tr., 36:24-37:3; *see also id.*

12   81:9-10 [wherein Mattel's counsel states that these documents "are the ones that

13   Mattel is going to be proceeding to trial on."]).

14          Also, the MGA Parties' claim of undue burden does not take into account the

15   vast scope of this litigation to date. (*Cf.* Opposition at p. 4 n. 1 [stating that Mattel

16   propounded 4,647 requests for admission, 2,889 requests for production, and 71

17   interrogatories in Phase 1]). The MGA Parties do not provide any supporting

18   declaration or specific evidence to support their assertion of burden beyond their

19   statement that the term "MATTEL DOCUMENTS" refers to 8 boxes of documents.

20   For example, the MGA Parties have not provided the Discovery Master with details

21   regarding: (1) a time estimate as to how long it would take to respond to the

22   Interrogatories; (2) the anticipated costs of responding to the Interrogatories; (3) the

23   extent to which any facts that must be set forth in answering the Interrogatories are

24   voluminous; or (4) an estimate of the number of documents and/or persons that may

25   have knowledge of such responsive facts. Therefore, the Discovery Master finds

26   that the MGA Parties have not met their burden of demonstrating that answering

27   //

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES



Exhibit _____ **13**

PAGE _____ **218**

- 18 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    the requested interrogatories is overly burdensome.[16]  (*See Jackson v. Montgomery*

2    *Ward & Co., Inc.*, 173 F.R.D. 524, 528-9 (D.Nev. 1997) ["The party claiming that a

3    discovery request is unduly burdensome must allege specific facts which indicate

4    the nature and extent of the burden, usually by affidavit or other reliable

5    evidence."]).

6         While there is no specific evidence in the record demonstrating that the MGA

7    Parties will inevitably suffer an undue burden in responding to Interrogatory Nos.

8    56 and 58 – 63, the Discovery Master is nonetheless cognizant of the fact that a

9    demand for "all facts" relating to what could be thousands of different documents

10   could be construed by Mattel in a manner that could place an unreasonable burden

11   on the MGA Parties, particularly when that information is requested via a written

12   interrogatory.  The Discovery Master, thus, limits six of the interrogatories at

13   issue[17] and requires that the MGA Parties identify all facts, documents and

14   witnesses that they currently intend to rely on at summary judgment or trial to

15   demonstrate (i) they did not obtain any MATTEL DOCUMENTS through improper

16   means (i.e., Interrogatory No. 58), (ii) that the information in the MATTEL

17   documents did not derive independent economic value (i.e., Interrogatory No. 59),

18   (iii) any information in the MATTEL DOCUMENTS was known to the public,

19   (i.e., Interrogatory No. 60), (iv) the MGA Parties independently developed, or did

20   not otherwise use or disclose, any information in the MATTEL DOCUMENTS

21   (i.e., Interrogatory No. 61), (v) that the MGA Parties have not benefited by their use

22   of the information in the MATTEL DOCUMENTS nor harmed Mattel

23   (Interrogatory No. 62), and (vi) the MGA Parties had or have a right to copy,

24   possess, use or disclose any MATTEL DOCUMENT (Interrogatory No. 63).

25         The Discovery Master finds that this limitation is appropriate because Mattel

26

27   [16] The Discovery Master also notes that the MGA Parties did not provide any legal authority in support of their position on this issue.  (Opposition, pp. 9 – 10).

28   [17] Interrogatory Nos. 56 and 57 must be answered as phrased.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ **13** _____ - 19 -          AMENDED ORDER NO. 11
                                              [Case No. CV 04-09049 SGL (RNBx)]

PAGE _____ **219**

1    conceded in its Reply that it was not asking the MGA Parties "to provide

2    facts they have no knowledge of," [18] (Reply, p. 17), but rather wanted to assess the

3    "specific contentions Defendants may make regarding the [allegedly] stolen

4    documents," (*id.*, p. 17). Mattel's counsel reiterated this position again at oral

5    argument, wherein he declared that Mattel was not necessarily interested in "a

6    parsing document by document," (Tr., 34:14-15), but instead "what [the MGA

7    Parties'] trial positions are going to be, before the jury is seated," (*id.*, p. 81:14-15).

8                      **(2)    Purported Presuppositions Regarding**

9                             **Interrogatory Nos. 56 and 58 – 63.**

10          The MGA Parties next assert that Interrogatory Nos. 60, 61 and 63 are

11   objectionable because they require the MGA Parties to presuppose that they are "in

12   possession of documents stolen or taken from Mattel by former employees – a fact

13   that MGA denies." (Opposition, p. 8). The MGA Parties further assert that "each

14   of the interrogatories using the term 'MATTEL DOCUMENTS' [which includes

15   Interrogatory Nos. 56 and 58 – 63] requires MGA to assume . . . unfounded

16   assertions . . . which make the interrogatories unanswerable and incomprehensible."

17   (*Id.*, p. 9). However, the MGA Parties cite no legal authority, and the Discovery

18   Master has found none, standing for the proposition that a party may refuse to

19   respond to an interrogatory merely because the interrogatory assumes a fact the

20   responding party disputes.

21                      **(3)    Compound And Excessive Objections**

22          The MGA Parties next assert that Interrogatory Nos. 56 – 63 are

23   impermissibly compound and exceed the allotted number of interrogatories.

24   (Opposition, pp. 10 and 11). Each of these contentions is unavailing.

25          As an initial matter, the MGA Parties did not object to Interrogatory Nos. 56

---

26   [18] Of course, if the MGA Parties subsequently wish to present other facts, witnesses or documents at summary
27   judgment or trial, they must supplement their response to these interrogatories accordingly and include the additional
     information. (*See* Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to an interrogatory . . . must supplement
28   its . . . response[] in a timely manner if the party learns that in some material respect the . . . response is incomplete
     . . ."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___ **13** ___ - 20 -

PAGE ___ **220**

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   and 58 – 60 on the ground that they are compound.  Nor did they object to any of

2   the interrogatories as exceeding the allotted limit, except for Interrogatory No. 63.

3   Therefore, the MGA Parities waived any such objections to those interrogatories.

4   (*See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th

5   Cir. 1992) [stating that "failure to object to discovery requests within the time

6   period required constitutes a waiver of any objection."]).

7        As for the interrogatories where the objections were asserted, the MGA

8   Parties have not demonstrated that the interrogatories are compound or exceed the

9   allotted limit.  The fact that the interrogatories ask MGA to identify witnesses, facts

10  and documents related to the MATTEL DOCUMENTS does not render the

11  interrogatories compound because the questions in each interrogatory refer to one

12  common theme and count as a single interrogatory.  (*See Swackhammer v. Sprint

13  Corp. PCS*, 225 F.R.D. 658, 644 (D. Kan. 2004) ["[A]n interrogatory containing

14  subparts directed at eliciting details concerning a 'common theme' should generally

15  be considered a single question"]).  The prior discovery master applied this precise

16  rule in Phase 1, concluding that interrogatories "with subparts seeking facts

17  supporting a contention, the identity of persons with knowledge, and documents are

18  not counted separately for the purposes of applying the . . . interrogatory limit."

19  (Prior Discover Master Order dated September 15, 2007, pp. 5 – 7).

20              **(4)     Establishing A Negative Proposition Objection**

21        As their final argument in opposing Interrogatory Nos. 56 – 63, the MGA

22  Parties assert that three of the interrogatories improperly ask them to establish a

23  negative proposition (i.e., Interrogatory Nos. 58, 59 and 62).  (Opposition, pp. 11 –

24  12).  The relevant question, however, is not whether an interrogatory may require a

25  party to prove a negative.  Rather, all of the cases cited by the parties concerning

26  this issue examine whether the interrogatory in question imposes an unreasonable

27  //

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___**13**___ - 21 -

PAGE ___**221**___

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   burden on the responding party.[19]  For the reasons explained above, there has been

2   no showing by the MGA Parties that an undue burden exists here.  (*See* Opposition,

3   pp. 11 – 12).

### b.   Conclusion

5   For all of the foregoing reasons, the objections to Interrogatory Nos. 56 – 63

6   are overruled and Mattel's motion to compel responses to the interrogatories is

7   granted, subject to the limitations discussed above.

### 3.   Interrogatory Nos. 67 – 69 Propounded On MGA And Larian

10   Mattel also propounded Interrogatory Nos. 67 – 69 on both MGA and Larian.

11   These interrogatories ask the MGA Parties to provide information regarding any

12   payments they may have made to former Mattel employees and any persons

13   identified in the parties' initial disclosures:

14   • Interrogatory No. 67: "IDENTIFY fully and separately each and every

15     payment of money or other item of value that YOU have made or

16     given, or any promise, agreement, proposal [o]r offer by YOU to pay

17     money or given any item of value, to or on behalf of any PERSON

18     identified in any of the parties' initial disclosures in this ACTION at

19     any time when such person was not an employee of MGA, including

20     without limitation with respect to legal fees incurred by or on behalf of

21     such PERSON."  (Separate Statement in Support of Written Discovery

22     Motion, p. 88).

23   • Interrogatory No. 68: "To the extent not disclosed in prior

---

[19] The two cases cited by MGA in support of its argument (*Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 - 448 (C.D.Cal.1998) and *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 662-663 (D.Kan.1996)), both address the question of whether interrogatories are overly burdensome.  The same analysis is applied in the cases cited by Mattel.  (*See Dang v. Cross*, 2002 WL 432197, *4 (C.D. Cal. 2002) [affirming magistrate judge's holding that interrogatories request "all facts" in support of a denial of a statement were not unduly burdensome]); *Tennison v. San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005) [concluding an interrogatory requiring plaintiff to provide all facts supporting the denial of an allegation was not unduly burdensome]; *Chapman v. California Dep't of Education*, 2002 WL 32854376, *2 (N.D. Cal. 2002) [same]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 15 ___   - 22 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

PAGE _____ 222

1        Interrogatories, IDENTIFY fully and separately each and every

2        payment of money or other item of value that MGA has made, or any

3        promise, agreement, proposal or offer by MGA to pay money or given

4        any item of value, to or on behalf of any of the FORMER MATTEL

5        EMPLOYEES, including without limitation with respect to legal fees

6        incurred by or on behalf of any of the FORMER MATTEL

7        EMPLOYEES." (*Id.*, p. 91).

8        • Interrogatory No. 69: "To the extent not disclosed in prior

9        Interrogatories, IDENTIFY fully and separately each and every

10        payment of money or other item of value that YOU have made, or any

11        promise, agreement, proposal or offer by YOU to pay money or given

12        any item of value, since January 1, 1998 to or on behalf of any

13        PERSON who has been employed by MATTEL (excluding ordinary

14        salary and benefits paid to such PERSON while an MGA employee),

15        including without limitation with respect to legal fees incurred by or

16        on behalf of such PERSON and bonuses paid to such PERSON." (*Id.*,

17        p. 92).

18        **a.    Objections Of MGA And Larian**

19        In their Opposition, the MGA Parties rely on two basic grounds for refusing

20    to provide responses to these three interrogatories.  First, the MGA Parties argue

21    that the interrogatories are impermissibly compound and exceed the number of

22    allotted interrogatories.  (*Id.*, pp. 10 – 11).  Second, the MGA Parties argue that

23    interrogatories are overly broad.  (*Id.*, pp. 12 – 14).

24        **(1)    Compound And Excessive Objections**

25        Like their objections to Interrogatory Nos. 56 – 63, the MGA Parties contend

26    that Interrogatory Nos. 67 – 69 are impermissibly compound and exceed the

27    allotted number of interrogatories.  (Opposition, pp. 10 and 11).  But those

28    arguments are not persuasive for reasons discussed in Section I.B.2.a.3 above.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **13**

PAGE **223**

- 23 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1

### (2)  Overly Broad Objection

2  The MGA Parties' second argument regarding Interrogatory Nos. 67 – 69 is

3  that they are overly broad.  The MGA Parties complain that Interrogatory No. 67 is

4  overbroad because it seeks information regarding payments by MGA to any persons

5  identified in the initial disclosures, not just former Mattel employees.  (Opposition,

6  pp. 12 – 13).

7  While a payment to a potential witness could be relevant to the issue of bias

8  and, therefore, discoverable, (*See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281,

9  283 (C.D. Cal. 1998) ["Rule 26 further permits the discovery of information which

10  may simply relate to the credibility of a witness or other evidence in the case."]),

11  the SAAC merely alleges that the MGA Parties bribed former Mattel employees —

12  not every single witness in this case.  In the absence of an allegation suggesting that

13  other witnesses may have been bribed, Interrogatory No. 67 is overly broad and not

14  relevant at this time.[20]  Accordingly, Mattel's motion to compel a response to

15  Interrogatory No. 67 is denied at this stage.

16  As for Interrogatory Nos. 68 and 69, the MGA Parties first argue that the

17  "burden and expense of determining whether each individual contemplated by these

18  interrogatories was ever paid by MGA . . . far outweighs the interrogatories' likely

19  benefit." (*Id.*, pp. 13 and 14).  Once again, however, the MGA Parties provide no

20  evidence to support such a claim.  (*See Jackson*, 173 F.R.D. at 528-9 ["The party

21  claiming that a discovery request is unduly burdensome must allege specific facts

22  which indicate the nature and extent of the burden, usually by affidavit or other

23  reliable evidence."]).

24  The MGA Parties only remaining complaint is that Interrogatory No. 69

25  seeks information regarding payments to "or on behalf of" any person who has been

26
27
28

[20] Mattel's request for information regarding payments by the MGA Parties to all individuals identified in the parties' initial disclosures presumably extends to all former Mattel employees identified therein as well.  To the extent Interrogatory No. 67 seeks such information, it is plainly relevant to Mattel's Phase 2 claims.  Nevertheless, the Discovery Master denies Mattel's motion to compel a response to Interrogatory No. 67 in its entirety because any payments by the MGA Parties to former Mattel employees is duplicative of Interrogatory Nos. 68 and/or 69.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __13__  - 24 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

PAGE __224__

1    employed by Mattel and that Interrogatory No. 68 defines FORMER MATTEL

2    EMPLOYEES as including specific individuals as well as each such person's

3    "current or former employees, agents, representatives, attorneys, accountants,

4    vendors, consultants, independent contractors, predecessors-in-interest and

5    successors-in-interest, and any other Person acting on [his or her] behalf, pursuant

6    to [his or her] authority or subject to [his or her] control." (Opposition, p. 13).

7    While they assert these definitional objections, counsel for the MGA Parties

8    nevertheless conceded at oral argument that to the extent "MGA paid . . . former

9    Mattel employees, for other than their salary as MGA employees, I think that is a

10   fair inquiry." (Tr., 63:17-20; *id.*, 61:21 - 64:4).

11        Therefore, the Discovery Master orders the MGA Parties to identify fully and

12   separately each and every payment of money or other item of value that they have

13   made or offered to pay to or on behalf of any "former employee of Mattel" since

14   January 1, 1998 but limits the definition of former Mattel employees to "all

15   individuals that the MGA Parties are aware of that worked for Mattel and who

16   received any payment (excluding ordinary salary and benefits paid to such person

17   while an MGA employee) from the MGA Parties."[21]

18                          **b.       Conclusion**

19        For all of the foregoing reasons, Mattel's motion to compel is denied with

20   respect to Interrogatory No. 67. Regarding Interrogatory Nos. 68 and 69, Mattel's

21   motion to compel responses to the interrogatories is granted, subject to the

22   limitations discussed above.

23   **C.    Summary Of Ruling Regarding The Written Discovery Motion**

24        Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in**

25   **part**.

26   _____

27   [21] While Interrogatory Nos. 68 and 69 both seek information regarding payments made by the MGA Parties to former Mattel employees for "legal fees," the MGA Parties did not argue in their Opposition or at oral argument that such a

28   request is improper for that specific reason, but instead merely relied on the definitional argument discussed above. Accordingly, the Discovery Master does not need to resolve that particular issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____**13**_____          - 25 -          AMENDED ORDER NO. 11
                                                [Case No. CV 04-09049 SGL (RNBx)]
PAGE _____**225**_____

1  II.   **MATTEL'S DEPOSITION MOTION**

2      A.   **Introduction**

3          As indicated above, the Deposition Motion addresses the motion of Mattel to

4  compel the depositions of Pablo Vargas San Jose ("Vargas") and Mariana Trueba

5  Almada ("Trueba") (collectively, the "Witnesses").

6          1.   **Background**

7          The Witnesses are former employees of Mattel in Mexico[22] who, along with

8  another former Mattel manager and named defendant, Carlos Gustavo Machado

9  Gomez ("Machado") left Mattel to establish and run MGA's newly formed Mexico

10  operation, defendant MGA De Mexico ("MGA Mex"), in 2004.  Mattel alleges that

11  Machado and the Witnesses stole Mattel trade secrets.

12          The Witnesses are Mexican nationals who reside in Mexico, where MGA

13  Mex has its principal place of business.  Vargas currently serves as the Director of

14  Sales for MGA Mex.  In that capacity, he supervises approximately 8 or 9

15  employees and reports to Susan Kuemmerle ("Kuemmerle"), the Vice President of

16  MGA Mex.  Trueba currently serves as the Marketing Manager of Special Projects

17  for MGA Mex.  She does not manage or supervise any employees of MGA Mex.

18  Trueba reports directly to Machado, who is MGA Mex's Director of Marketing.

19  Machado, in turn, reports to Kuemmerle.

20          2.   **Procedural History**

21          On January 10, 2008, Mattel served deposition notices pursuant to Federal

22  Rule of Civil Procedure 30(b)(1) setting the depositions of Vargas and Trueba for

23  January 24, 2008 in Los Angeles.  In response, MGA and its affiliated parties to

24  this action (the "MGA Defendants") asserted that neither of the Witnesses is a

25  "managing agent," and therefore Mattel must subpoena the Witnesses.  On

26  January 28, 2008, Mattel filed an *ex parte* application to compel the depositions of

27  ────────────────────

28  [22] Vargas was the Senior Marketing Manager, Boys Division, for Mattel Mexico and Trueba was the Senior Marketing Manager, Girls Division, for Mattel Mexico.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____**13**____ - 26 -

PAGE ____**226**____

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1 the Witnesses (as well as others).  Mattel's application was stayed with other Phase

2 2 discovery and then denied without prejudice on September 23, 2008.  After the

3 Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel noticed the

4 depositions of Vargas on January 27, 2009 and of Trueba on January 28, 2009.

5 Once again, the MGA Defendants objected on the ground that neither of the

6 Witnesses is an officer, director or managing agent of MGA Mex.  After the parties

7 were unable to resolve their dispute, Mattel filed the Deposition Motion.

8  **B.** **Discussion**

9   Mattel argues that (1) the Witnesses are directors and/or managing agents of

10 MGA Mex, and (2) that MGA Mex must produce them for deposition in Los

11 Angeles.  Mattel also seeks sanctions on the ground that the MGA Defendants are

12 acting in bad faith and without justification to frustrate Mattel's legitimate

13 discovery rights.  In response, the MGA Defendants argue that (1) the Witnesses

14 are merely mid-level employees who cannot be deemed to act for MGA Mex, and

15 (2) even if the Witnesses could be deposed pursuant to Federal Rule of Civil

16 Procedure 30(b) ("Rule 30(b)"), the depositions must be conducted in Mexico.  The

17 MGA Defendants seek sanctions against Mattel, contending that Mattel failed to

18 adequately meet and confer with one of the attorneys for MGA Mex, Amman Khan

19 ("Khan") and then served a redacted version of the Deposition Motion on a

20 different attorney for the MGA Defendants, Patricia Glaser ("Glaser") while she

21 was out of town.[23]  According to MGA Mex, Mattel only served a complete,

22 unredacted copy of the Deposition Motion on counsel for the MGA Defendants two

23 days before the deadline for the Opposition.

24  **1.** **Legal Standard**

25   If a corporation is a party to an action, any other party may take the

26 deposition of that corporation by identifying a specific officer, director, or

27

[23] Both Khan and Glaser are partners at Glaser Weil, Phase 2 attorneys of record for the MGA Defendants, including MGA Mex.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ **13**  - 27 -

PAGE _____ **227**

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   managing agent to be deposed and noticing that person's deposition under Rule

2   30(b)(1).  Notice alone is enough to compel the managing agent to attend the

3   deposition.  (*JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. &*

4   *Trade Services, Inc.*, 220 F.R.D. 235, 237 (S.D.N.Y. 2004)).  For purposes of

5   compelling a corporate officer's deposition, courts do not recognize a distinction

6   between an "apex" official or director and other high corporate officials.  (*Resort*

7   *Properties of America v. El-Ad Properties N.Y. LLC*, 2008 WL 2741131 at *2 (D.

8   Nev. July, 10 2008) citing Fed. Civ. Proc. 37(d) advisory committee's notes

9   ["There is slight warrant for the present distinction between officers and managing

10  agents on the one hand and directors on the other."]).

11         The case law provides somewhat ambiguous guidance with respect to the

12  burden of proof for demonstrating managing agent status.  Generally, the burden is

13  on the discovering party to establish the status of the witness.  (See *Sugarhill*

14  *Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985);

15  *Proseus v. Anchor Line, Ltd.*, 26 F.R.D. 165, 167 (S.D.N.Y.1960)).  At the same

16  time, however (and as Mattel points out in its papers), courts resolve doubts in

17  favor of the examining party, at least during the discovery phase.  (See *Sugarhill*,

18  105 F.R.D. at 171; *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97

19  (S.D.N.Y.1968)).  "Thus, it appears that the examining party has the burden of

20  providing enough evidence to show that it is at least a close question whether the

21  proposed deponent is a managing agent."  (*United States of America v. Afram Lines*

22  *(USA) Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)).

23         The identification of a managing agent in any given case is fact-sensitive.

24  "[B]ecause of the vast variety of factual circumstances to which the concept must

25  be applied, the standard . . . remains a functional one to be determined largely on a

26  case-by-case basis."  (*Founding Church of Scientology of Washington, D.C., Inc. v.*

27  *Webster,* 802 F.2d 1448, 1452 (D.C.Cir. 1986) (citation omitted)).  "Thus, 'the

28  question of whether a particular person is a 'managing agent' is to be answered

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___**13**___   - 28 -

PAGE ___**228**___

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   pragmatically on an ad hoc basis . . . .'" (*Afram Lines*, 159 F.R.D. at 413 quoting 8

2   C. Wright & A. Miller, *Federal Practice and Procedure* § 2103, at 376 (1970) and

3   citing 4A *Moore's Federal Practice* ¶ 30.51, at 30-47 to 30-48 (1994)).  Whether a

4   proposed deponent falls into a particular category of employee or agent is therefore

5   less relevant than the individual's specific functions and authority.

6        As both parties acknowledge, federal courts have formulated a set of factors

7   to assist in determining whether person is a party's "managing agent," and therefore

8   subject to deposition under Rule 30(b)(1):

9        1)   whether the individual is invested with general powers allowing him to

10            exercise judgment and discretion in corporate matters;

11       2)   whether the individual can be relied upon to give testimony, at his

12            employer's request, in response to the demands of the examining

13            party;

14       3)   whether any person or persons are employed by the corporate

15            employer in positions of higher authority than the individual

16            designated in the area regarding which the information is sought by the

17            examination;

18       4)   the general responsibilities of the individual "respecting the matters

19            involved in the litigation;" and

20       5)   whether the individual can be expected to identify with the interests of

21            the corporation.

22   (*Sugarhill*, 105 F.R.D. at 170).

23        According to Mattel, the most important of these factors is "whether the

24   witness can be expected to identify with the employer corporation's interest as

25   opposed to an adversary's." (Deposition Motion, p. 12, quoting *In re Honda*

26   *American Motor Co.*, 168 F.R.D. 535, 541 (D. Md. 1996)).  Applying that test,

27   Mattel argues that the Witnesses are presumptively loyal to MGA Mex, given that

28   they helped to found the company and part of the "tight" group that manages its

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____13____   - 29 -

PAGE ____229____

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   day-to-day operations. (Deposition Motion, p. 13). Accordingly (Mattel reasons),

2   the Witnesses are managing agents of MGA Mex.

3         Mattel's emphasis on the employee's loyalty as the main test for determining

4   his or her status is unwarranted. Federal courts have effectively challenged the

5   notion that the employee's loyalty to the employer is entitled to special weight.

6   (*Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 350 (N.D.Oh. 1999)). As the

7   *Libbey Glass* court explained, that view "overstates the role of the deponent's . . .

8   apparent fidelity to the principal's interests, because it would apply to many agents

9   and employees who do not function with the degree of authority over a company's

10  affairs connoted by the term 'managing' agent." (*Id.*, at 350). Moreover, the

11  *Libbey Glass* court demonstrated that the approach followed in *Honda* is based on a

12  rationale that no longer applies. Specifically, the court traced the rule to *Newark*

13  *Ins. Co. v. Sartain*, 20 F.R.D. 583, 586 (N.D. Cal. 1957), which sets forth the

14  analytical underpinning of the "loyalty" factor.

15        In that case, the court was concerned with the evidentiary problem facing a

16  litigant seeking to obtain and use the testimony of an adversary corporation's most

17  senior employees. Under the then-existing rule, a litigant could not call such an

18  employee to testify at trial in his or her individual capacity without waiving the

19  right to impeach the witness. This presented a problem for the party seeking to

20  elicit the testimony, because, as the court reasoned, a corporation's ranking

21  employee having possession of pertinent information will always "give his

22  testimony in the light most favorable to the principal," but would, at the same time,

23  be immune from impeachment at trial. (*Id.*) On that basis, the court concluded that

24  an adversary should be able to obtain such testimony from the employee in his or

25  her capacity as the representative of the corporation (who could, therefore, be

26  subject to impeachment).

27        However, as the court in *Libbey Glass* noted, the concerns expressed in

28  *Newark Ins.* were rendered moot by the enactment of Federal Rule of Evidence 607

EXHIBIT ____13____      - 30 -      AMENDED ORDER NO. 11
                                    [Case No. CV 04-09049 SGL (RNBx)]

PAGE ____230____

1   ("Rule 607").[24]  Under that rule, a party may take the deposition of a senior

2   employee of an adversary corporation in his individual capacity and may

3   nonetheless still seek to impeach that testimony.  In other words, characterizing a

4   particular witness as a "managing agent" no longer provides any substantive

5   advantage to the deposing party, only procedural advantages (i.e., the ability to take

6   the deposition without a subpoena).

7        Having discarded the notion that the witness' loyalty to his employer is the

8   main factor to be considered in ascertaining his status as a managing agent, the

9   court in *Libbey Glass* instead focused on "the nature of the deponent's activities on

10  behalf of the corporation, rather than his loyalty to its interests." (*Libbey Glass,*

11  197 F.R.D. at 350).  The court reasoned:

12           For the purpose of determining whether an individual is a

13           'managing agent' within the meaning of the discovery rules, the

14           alter ego theory provides a useful analogy.  As in the arena of

15           corporate liability, the focus begins with the character of the

16           individual's control.  In addition, we can profitably examine both

17           the degree to which the interests of the individual and the

18           corporation converge, and how helpful the individual will be in

19           fact finding on the matter at issue, in comparison to others

20           associated with the corporation.  As in all matters appertaining to

21           discovery, it is the ends of justice that are to be served.

22  (*Id.*, quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Webster,*

23  802 F.2d 1448, 1453 (D.C. Cir. 1986)).  The Discovery Master finds that the

24  analysis set forth in *Libbey Glass* and the authorities cited therein to be the most

25  practical and well-reasoned test for determining whether the Witnesses are

26  managing agents of MGA Mex, and applies that test below.

27
28
___
[24] Rule 607 provides "The credibility of a witness may be attacked by any party, including the party calling the witness."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __13__        - 31 -         AMENDED ORDER NO. 11
                              [Case No. CV 04-09049 SGL (RNBx)]

PAGE __231__

1          **2.      Analysis Of The Witnesses' Job Functions And Managerial**

2                  **Authority**

3                  **a.      The Nature Of The Witnesses' Activities On Behalf**

4                          **Of, And Control Over, MGA Mex.**

5          In accordance with the approach outlined in *Libbey Glass*, the Discovery

6   Master begins his analysis by examining the Witnesses' activities on behalf of, and

7   managerial control over the operations of, MGA Mex.

8          Mattel relies heavily on documentary evidence regarding the role of

9   Machado and the Witnesses in establishing MGA Mex in 2004, but the Discovery

10  Master finds that this evidence, which is limited to events that occurred five years

11  ago, to be only minimally probative of the *current scope* of the Witnesses' activities

12  and authority.[25]  The only evidence presented by the parties concerning the

13  Witnesses' current role in the company is the testimony of Kuemmerle.  That

14  testimony derives from three sources:  (1) her declaration filed on February 27,

15  2007 ("First Kuemmerle Decl.") (attached as Exh. 12 to Zeller Decl.); (2) her

16  deposition testimony on January 28, 2008 ("Kuemmerle Tr.") (attached as Exh. 9 to

17  Zeller Decl.); and (3) her declaration filed on February 12, 2009 in support of the

18  Opposition to the Deposition Motion ("Second Kuemmerle Decl.").

19         The relevant portion of Kuemmerle's first declaration is Paragraph 6, which

20  states in its entirety:

21                  All of the day to day operations of MGA Mexico are managed

22                  locally in Mexico.  For example, MGA Mexico's Finance

23                  Director, Sales Director and Marketing Director are all based in

24                  Mexico and all of the marketing and finance functions are

25                  handled in Mexico.

26  (First Kuemmerle Decl., ¶ 6).

27

28  [25] As counsel for the MGA Defendants noted at oral argument, the critical question is "when do we look at this question as to whether these [Witnesses] are managing agents?  And the answer, of course, is now." (Tr., 21:14-16).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ____**13**____   - 32 -   AMENDED ORDER NO. 11
                                   [Case No. CV 04-09049 SGL (RNBx)]

PAGE ____**232**____

1     There are two main excerpts from Kuemmerle's deposition transcript cited
2  by Mattel in support of its Deposition Motion.  In the first, Kuemmerle testifies that
3  pricing for the products sold by MGA Mex is set by means of a "combined team
4  effort" among a group that counsel refers to as "the four of you."  (Kuemmerle Tr.,
5  p. 91:8 – 14, [Exh. 9 to Zeller Decl., p. 154]).[26]  Kuemmerle testifies that these
6  individuals (which apparently include the Witnesses) continue to set the pricing of
7  MGA Mex products in the same manner to this day.  (Id.).

8     Second, Mattel relies on a passage of Kuemmerle's deposition in which she
9  testified that, at the time the Witnesses joined MGA Mex in 2004, "we were so
10  tight of a group, not enough employees, that we were all forced to multitask."
11  (Kuemmerle Tr., p. 135:24 - 136:1, [Exh. 9 to Zeller Decl., pp. 169 - 170]).

12     In her second declaration, Kuemmerle testifies regarding the chain of
13  command at MGA Mex.  Specifically, she testifies that Vargas reports directly to
14  her and that Trueba reports to Machado, who in turn reports to Kuemmerle.
15  (Second Kuemmerle Decl., ¶¶ 3 – 4).  Kuemmerle is entirely silent regarding the
16  functions performed by, or general authority exercised by, either of the Witnesses.
17  Instead, she simply states that Ms. Trueba "does not manage or supervise anyone at
18  all at MGA De Mexico."  (Id., ¶ 4).  Kuemmerle does not state whether Vargas
19  supervises anyone.  (Id., ¶ 3).

20     In the absence of any evidence directly addressing the Witnesses' current
21  role in MGA Mex, Mattel asks the Discovery Master to infer that the Witnesses are
22  managing agents based on the Witnesses' job titles and past participation in the
23  "tight group" that made operational decisions for the fledgling company several
24  years ago.  However, such an inference is not supported by the scant evidence
25  before the Discovery Master.  For instance, the Discovery Master cannot attribute

---

[26] None of the prior passages of the deposition transcript provided by Mattel reflect the individuals to whom counsel is referring. However, later, counsel asks Kuemmerle a question beginning with "When you and Mr. Machado and Mr. Vargas and Ms. Trueba were determining the prices for MGA products . . . " (Kuemmerle Tr., p. 93:2 – 6 [Exh. 9 to Zeller Decl., p. 156]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __13__       - 33 -       AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

PAGE __233__

1   such status to Trueba, who supervises no employees, and whose scope of
2   responsibility is circumscribed to public relations.[27]

3        Likewise, although Mattel emphasizes that Vargas supervises approximately
4   8 or 9 MGA Mex employees (Kuemmerle Tr., p. 97:5 – 11, [Exh. 9 to Zeller Decl.,
5   p. 159]), that fact, alone, is ambiguous at best, because Mattel does not provide the
6   necessary context by identifying the number of total MGA Mex employees. If, for
7   instance, MGA Mex employs 100 persons, then Vargas' oversight of 8 or 9
8   employees would tend to indicate he does not have such authority.[28]  Because the
9   necessary contextual information is not provided, the Discovery Master is unable to
10  assess the significance (if any) of the evidence that is provided regarding Vargas'
11  current role at MGA Mex.

12       In sum, the evidence currently before the Discovery Master is insufficient to
13  allow him to determine that the Witnesses' functions on behalf of, and control over,
14  MGA Mex is such that they can be deemed its "managing agents."

15                      **b.     Other Factors**

16       Since there is virtually no evidence addressing the critical factor governing
17  whether the Witnesses are managing agents of their employer (see Section II.B.2.a,
18  above), the five factors enumerated by the *Sugarhill* Court have marginal relevance,
19  at best.  Even if all those factors were satisfied – which they are not – the record
20  would still be insufficient to enforce the deposition notices at issue here.  However,
21  in order to create a complete record and to address the arguments made by the
22  parties, the Discovery Master nonetheless briefly discusses those factors below.

23       As set forth above, the first factor identified by the *Sugarhill* Court bearing

---

[27] Mattel also argues that the Discovery Master should infer that Ms. Trueba is a managing agent because she submitted a declaration on behalf of MGA Mex two years ago (April 11, 2007) in connection with its motion to dismiss for lack of personal jurisdiction in which she identified her job title as "Director of Marketing."  (Deposition Motion, p. 4 fn. 4 and Exh. A to Suppl. Zeller Decl.).

[28] At oral argument, Mattel's counsel asserted that MGA Mex presently employs 34 or 35 individuals, (Tr., pp. 15 – 16), but there is no admissible evidence before the Discovery Master to support such an assertion.  Further, such a contention (if true) merely demonstrates that Vargas supervises, at most, approximately 25 percent of the employees at MGA Mex, and is insufficient to show that he can be deemed its "managing agent."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

. EXHIBIT ___13___   - 34 -

PAGE ___234___

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    on the issue of whether an employee is a managing agent is whether he or she "is

2    invested with *general* powers allowing him to exercise judgment and discretion in

3    corporate matters." (*Sugarhill*, 105 F.R.D. at 170 [emphasis added]). Here, the

4    current scope of Trueba's authority appears to be the opposite of "general:" she is

5    responsible for handling media and public relations. (Kuemmerle Tr., p. 97:14 – 15

6    attached as Exh. 9 to Kahn Decl.). Likewise, Vargas' authority, although somewhat

7    broader than that of Trueba, appears to be confined primarily to sales. (Second

8    Kuemmerle Decl., ¶ 3). There is no evidence that either of the Witnesses has any

9    authority over such things as internal administrative functions, budgeting, contracts

10   with vendors, and various other aspects of running a business.

11       The second *Sugarhill* factor (whether the individual can be relied upon to

12   give testimony at the employer's request) is satisfied, since the Witnesses are

13   current employees of MGA Mex who will presumably cooperate in their

14   employer's defense of Mattel's counterclaims by providing testimony at a

15   deposition.

16       Turning to the third *Sugarhill* factor (whether there are other MGA Mex

17   employees in positions of higher authority than the Witnesses in the area regarding

18   which the information is sought), the Discovery Master finds that the undisputed

19   testimony of Kuemmerle demonstrates that there are such MGA Mex employees:

20   Kuemmerle supervises Vargas and (through Machado) Trueba. (Second

21   Kuemmerle Decl., ¶¶ 3 and 4). Accordingly, this factor weighs against finding that

22   the Witnesses are "managing agents."

23       With respect to fourth factor (the general responsibilities of the Witnesses

24   respecting the matters involved in the litigation), Mattel's papers demonstrate that

25   the Witnesses do oversee aspects of MGA Mex which are directly addressed by

26   Mattel's Phase 2 counterclaims, namely sales and public relations (which, Mattel

27   contends, MGA Mex conducts using stolen Mattel trade secrets). (Deposition

28   Motion, pp. 4 – 7). Accordingly, this factor weighs in favor of deeming the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT_____13_____      - 35 -

PAGE_____235_____

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    Witnesses to be managing agents.

2          The last factor is the "loyalty" inquiry discussed above, namely whether the

3    Witnesses can be expected to identify with the interests of MGA Mex.  Because

4    they are being subjected to investigation in Mexico, have their own lawyers and the

5    MGA Defendants may take the position that if any Mattel documents were taken,

6    the Witnesses did it on their own, Vargas and Trueba's interests do not necessarily

7    align with the MGA Defendants in this matter.  It is unclear on this record whether

8    this factor weighs in favor of or against deeming the Witnesses to be managing

9    agents.

10         **C.    Summary Of The Discovery Master's Findings In Connection**

11               **With The Deposition Motion**

12         At this stage, Mattel has not met its initial burden to demonstrate that the

13   Witnesses are managing agents of MGA Mex.  The presumption in favor of the

14   party seeking discovery only applies (as Mattel itself acknowledges) in *close* cases.

15   (*Honda*, 168 F.R.D. at 540).  Given the current state of the evidence presented, this

16   is not such a case.[29]

17         Nevertheless, it is clear to the Discovery Master that the Witnesses have

18   information relating to several Phase 2 issues and that Mattel is entitled to take their

19   depositions.[30]  Accordingly, Mattel may promptly prepare letters rogatory and

20   submit them to the Discovery Master, who will see that the letters rogatory are

21   expeditiously issued by the Court.

22         **D.    Sanctions**

23               **1.    Mattel's Request For Sanctions**

24         Having found that the MGA Defendants have articulated a meritorious legal

---

[29] In light of the Discovery Master's finding that the Witnesses are not managing agents of MGA Mex, it is unnecessary for him to reach the question of where the depositions may be taken.

[30] The Discovery Master would not hesitate to enforce subpoenas propounded on the Witnesses if they resided in the United States and were being deposed in their individual capacities.  However, since they are foreign nationals who are not managing agents of MGA Mex (at least on the evidence presented), the Discovery Master does not have authority to compel the depositions under Rule 30(b)(1).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT    13    - 36 -

PAGE    236

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   and factual basis for their objections to the subject deposition notices, the Discovery

2   Master concludes that the refusal of the MGA Defendants to produce the Witnesses

3   was justified.  Accordingly, Mattel's request for sanctions is **DENIED**.

4           **2.**     **The MGA Defendants' Request For Sanctions**

5        The MGA Defendants request an award of sanctions against Mattel for

6   conduct related to Mattel's service of the Deposition Motion.  First, the MGA

7   Defendants contend that Mattel should have served the Deposition Motion on

8   Amman A. Kahn ("Kahn"), the main attorney at Glaser Weil with whom Mattel's

9   counsel had been communicating regarding the subject depositions.  The MGA

10   Defendants complain that, instead of doing so, Mattel served the Deposition Motion

11   on Kahn's colleague, Glaser, while the latter was out of town.  However, the MGA

12   Defendants do not explain why other attorneys in their office who were assigned to

13   the matter were not notified of the delivery of the Deposition Motion given Ms.

14   Glaser's absence.  Further, Mattel has submitted the declaration of its counsel,

15   Michael T. Zeller ("Zeller") attaching a proof of service reflecting that Mattel

16   served the Deposition Motion on all three law firms representing the MGA

17   Defendants at the same time (February 6, 2009) that the motion was filed.  (See

18   Suppl. Zeller Decl., Exh. E).

19        Second, the MGA Defendants argue that Mattel only served a redacted

20   version of the Deposition Motion on them at some later point, leaving them only

21   two days to draft and file opposing papers, and refused Kahn's request for a

22   reasonable extension of time.  (Kahn Decl., ¶¶ 3 - 4).  However, the Kahn Decl. is

23   vague regarding the date and manner in which Mattel is alleged to have belatedly

24   served the unredacted version of the Deposition Motion, (*id.*), and so the Discovery

25   Master is unable to ascertain whether Kahn's belated receipt of the motion was

26   caused by some conduct of Mattel, or instead, caused by internal delays within

27   Glaser Weil in routing the papers to the appropriate attorney.

28        Accordingly, the MGA Defendants' request for sanctions is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ **13** _____ - 37 -

PAGE _____ **237**

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

## III.   DISPOSITION

**A.**   Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in part**, as follows:

1.   Document Request Nos. 207, 208 and 269 directed to Larian:  The Motion is **GRANTED**.  All non-privileged documents, responsive to these document requests shall be produced by Larian within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

2.   Document Request Nos. 4 – 37, 40, 41, 43 (erroneously numbered in Mattel's Separate Statement as request number 42), 44 (erroneously numbered in Mattel's Separate Statement as request number 43), 45 (erroneously numbered in Mattel's Separate Statement as request number 44), and 46 (erroneously numbered in Mattel's Separate Statement as request number 45) directed to MGA:  The Motion is **GRANTED**.  All non-privileged documents, responsive to these document requests shall be produced by MGA within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

3.   Interrogatory No. 45 directed to MGA:  The Motion is **GRANTED**.  MGA's response to this interrogatory shall be served within 30 days of the original Order No. 11, subject to any applicable confidentiality designations available under the Protective Order.

4.   Interrogatory Nos. 56 – 63 directed to MGA and Larian:

a.   The Motion is **GRANTED** with respect to Interrogatory Nos. 56 and 57.

b.   Regarding Interrogatory Nos. 58 – 63, the Motion is **GRANTED** subject to the following limitations:  The Discovery Master orders the MGA Parties to identify all facts, documents or witnesses that they currently intend to rely on at summary judgment or trial to demonstrate (i) they did not obtain any

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____13_____    - 38 -

PAGE _____238_____

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    MATTEL DOCUMENTS through improper means (i.e., Interrogatory No. 58),

2    (ii) that the information in the MATTEL documents did not derive independent

3    economic value (i.e., Interrogatory No. 59), (iii) any information in the MATTEL

4    DOCUMENTS was known to the public, (i.e., Interrogatory No. 60), (iv) the MGA

5    Parties independently developed, or did not otherwise use or disclose, any

6    information in the MATTEL DOCUMENTS (i.e., Interrogatory No. 61), (v) that

7    the MGA Parties have not benefited by their use of the information in the MATTEL

8    DOCUMENTS nor harmed Mattel (Interrogatory No. 62), and (vi) the MGA

9    Parties had or have a right to copy, possess, use or disclose any MATTEL

10   DOCUMENT (Interrogatory No. 63).

11              c.     The MGA Parties responses to interrogatories numbered

12   56 – 63 shall be served within 30 days of the original Order No. 11, subject to any

13   applicable confidentiality designations available under the Protective Order.

14              5.     Interrogatory No. 67 directed to MGA and Larian:  The Motion

15   is **DENIED**.

16              6.     Regarding Interrogatory Nos. 68 and 69 directed to MGA and

17   Larian, the Motion is **GRANTED** subject to the following limitations:  The MGA

18   Parties are ordered to identify fully and separately each and every payment of

19   money or other item of value that they have made or offered to pay to or on behalf

20   of any former employee of Mattel since January 1, 1998, with the definition of

21   former Mattel employees re-defined as "all individuals that the MGA Parties are

22   aware of that worked for Mattel and who received any payment (excluding ordinary

23   salary and benefits paid to such person while an MGA employee) from the MGA

24   Parties."  The MGA Parties responses to these interrogatories shall be served within

25   30 days of the original Order No. 11, subject to any applicable confidentiality

26   designations available under the Protective Order.

27       **B.**   Mattel's Deposition Motion:

28              1.     Mattel's Deposition Motion is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ 13

PAGE _____ 239

- 39 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1          2.      Mattel's request for sanctions is **DENIED**.

2          3.      The MGA Defendants' request for sanctions is **DENIED**.

3

4     Dated:  March 31, 2009

5

6                                         By:        /s/ Robert C. O'Brien

7                                                    ROBERT C. O'BRIEN
                                                    Discovery Master
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 40 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___13___

PAGE ___239.1___