# EXHIBIT 1

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

January 28, 2009

VIA ELECTRONIC MAIL

Amman Khan, Esq.
Glaser, Wiel, Fink, Jacobs & Shapiro, LLP
10250 Constellation Blvd., Ninteenth Floor
Los Angeles, California 90067

Re:    Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Amman:

I write in response to your letter of January 28, 2009 regarding various issues and our conversation of today's date.

First, with respect to your request for an extension of two additional weeks to respond to the renewed motion to compel MGA to produce documents, because the Court has not signed the proposed substitution/association order that was recently submitted, your firm is not counsel of record and can neither request nor agree to an extension of time to respond to case deadlines.

Second, in the interest of avoiding yet further delay by MGA and in efficient transition, Mattel is willing to discuss various matters with you. Further, if the Court confirms your firm as lead counsel, Mattel will agree that MGA can have until Friday, February 6, 2009 to oppose the motion. Mattel provides this extension based on your representation that your client may change its position and produce documents in response to the requests. Mattel does not believe, however, that MGA needs a week to determine whether it will change its position. Notwithstanding the size of the declaration, the issues raised by the motion are discrete. MGA needs to decide whether it will produce documents related to Scooter Samantha, documents related to Space Babies/Scot Reyes, personnel files for former Mattel employees and vendors, and communications with 12 individuals re Phase 2 claims and defenses. The answers to those

quinn emanuel urquhart oliver & hedges, llp

SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL (415) 875-6600 FAX (415) 875-6700
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 20 7653 2000 FAX +44 20 7653 2100

EXHIBIT ___1___

PAGE ___8___

questions can and should be decided promptly. Should MGA decide to change its position, then I can discuss this with you at your earliest convenience. MGA has not provided any reason why it needs "5-6 days" to decide how it will handle these discrete categories, particularly when these issues were raised over a year ago and should have been considered by MGA before forcing Mattel to file a motion at that time.

Third, the fact "that [your] firm was just associated in the case two days ago" is of no moment. As set forth above, the association has yet to be permitted by the Court. Moreover, your firm was actively involved in this case previously when Phase 2 discovery was ongoing. Presumably MGA made the decision to bring your firm in for Phase 2 more than a month ago (and likely much earlier than that), and as Mattel pointed out in its response to the proposed substitution when it was first filed, there is no basis for any delay if the substitution of counsel is to go forward. If your firm or Mitchell Silberberg believed that their respective association would delay proceedings, or that either firm needed a stay if the association were approved, then MGA and its counsel and proposed counsel were obligated to disclose it to Judge Larson at the January 26, 2009 hearing at the latest and to obtain his authorization for it. Neither firm raised any such issue. It cannot be now used as a basis to prejudice Mattel with further delay.

Fourth, with respect to your request that the parties exchange electronically documents supporting renewed motions, I do not believe that a separate agreement regarding service of electronic documents is necessary given that the MGA Parties have agreed previously in the Discovery Master Stipulation that electronic service is appropriate. And, as you may be aware, in the Joint Report submitted to the Discovery Master, the parties have requested leave to provide discovery motions to the Discovery Master electronically.

Finally, you stated that your were not sure whether your firm represented Shirin Salemnia. I asked you to confirm whether your firm represents her and whether you will accept service of a subpoena on her behalf. I look forward to your prompt response.

If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon Corey

Jon Corey

JDC:jlm
07975.2778076.1

2

EXHIBIT 1
PAGE 9

# EXHIBIT 2

LAW OFFICES

**GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP**

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000
FAX (310) 556-2920

RECEIVED
FEB 1 0 2009

DIRECT DIAL NUMBER
(310) 556-7865
EMAIL: AKHAN@GLASERWEIL.COM

February 7, 2009

TTT MERITAS LAW FIRMS WORLDWIDE

**VIA U.S. MAIL AND FACSIMILE (213) 443-3100**

Jon D. Corey, Esq.
QUINN, EMANUEL, URQUHART,
  OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

      Re:    *Bryant v. Mattel, Inc. and Consolidated Actions*
           U.S.D.C. Eastern Division, Case No. CV04-09049 SJL (RNBx)

Dear Jon:

      This memorializes our agreements from earlier this afternoon during our meet and confer discussions on various Phase 2 discovery issues in the above-captioned matters.

      First, you agreed to withdraw Mattel's January 26, 2009 Renewed Motion to Compel Documents and Things, filed with Discovery Master O'Brien based on MGA's agreement to execute a stipulation and order thereon to produce in 30 days all non-privileged documents responsive to (1) RFP No. 48 (Set One), concerning communications re Phase 2 claims and defenses between MGA and the 12 individuals identified in the Renewed Motion; (2) RFP Nos. 43-55 (Set Three), concerning Scooter Samantha; (3) RFP Nos. 56-75 (Set Three) concerning Space Babies / Scot Reyes.

      Second, we agreed to re-visit on Monday February 9, 2009 our impasse regarding RFP Nos. 87 - 88 (Set Three), which seek the personnel and vendor files of approximately 100 individuals at MGA who formerly worked for or dealt with Mattel. Those requests violate the employees' privacy rights and are overbroad. MGA offered to produce documents from those files if Mattel would agree to limit the scope of the requests to documents related to products that Mattel contends were stolen by MGA, as the Discovery Master had previously limited such requests in the past (see e.g. April 14, 2008 Order, p. 7:3-6). You refused to so limit the requests and stated that privacy rights objections had been overruled in prior Orders issued by the Discovery Master and you agreed to provide me with those Orders in advance of our Monday meet and confer.

666240

EXHIBIT    2

PAGE    10

Jon D. Corey, Esq.
February 6, 2009
Page 2

Third, with respect to MGA's supplemental responses to Interrogatory Nos. 41, 43 and
44, we agreed that MGA would provide responses to Interrogatory No. 41 in 30 days. With
respect to Interrogatory Nos. 43 and 44, we proposed that MGA should have until 30 days after
the ruling on Mattel's anticipated Motion for Summary Judgment/Adjudication on MGA's trade
dress claims, to respond. (Please see Jean Nogues 2/6/09 letter to you in this regard). You stated
that you would check with your client and get back to us. In addition, we stated that there was
nothing in the February 15, 2008 Order that compelled any responses by MGA de Mexico. You
stated that you disagreed and would get back to us with support for your position.

Fourth, with respect to MGA's supplemental response to Interrogatory No. 45 of Mattel's
Sixth Set of Interrogatories, MGA's responses to Mattel's Supplemental Interrogatories; and
Isaac Larian's responses to Mattel's Supplemental Interrogatories, we agreed that I would
provide Scott Watson of your office with our position on each of these interrogatories on
Monday February 9, 2009. Except, however, with respect to Interrogatory Nos. 51-55 and 64,
we proposed that MGA should have until 30 days after the ruling on Mattel's anticipated Motion
for Summary Judgment/Adjudication to respond (Please refer to Jean Nogues 2/6/09 letter to you
in this regard). You stated that you would check with your client and get back to us on this
proposal on Monday February 9, 2009.

Fifth, with respect to Mattel's request to depose Isaac Larian for a third time, and more
specifically, to seek leave to depose Mr. Larian for an additional ten hours, we stated that we
believed such request was overly burdensome and is, in effect, a motion for reconsideration of
former Discovery Master Infante's March 10, 2008 Order which allotted Mattel five (5) hours to
depose Mr. Larian on Phase 2 issues. You stated your disagreement with our position, and we
both agreed that we were not likely to reach a compromise on this issue.

Sixth, with respect to Mattel's request to depose Ronald Brawer for a second time, we
agreed that we would re-visit this issue on Monday and that we would try to ascertain whether
Mr. Brawer was still located in London.

Seventh, with respect to Mattel's request for all communications from 1999 to the present
between Mr. Larian and Mattel employees, we agreed that I will provide you with MGA's
position on this issue on Monday.

Eighth, with respect to your request that MGA and MGA de Mexico identify the persons
to be produced responsive to Mattel's Fourth FRCP 30(b)(6) deposition notice to MGA and
Mattel's January 9, 2008 FRCP 30(b)(6) deposition notice to MGA de Mexico, you agreed to
identify for me the deposition topics and provide me with the deposition notices.

Ninth, with respect your demand that Isaac Larian supplement his production of personal
financial records responsive to RFP Nos. 207, 208 and 269 and that MGA supplement its
production of financial documents responsive to RFP Nos. 4-37 and 40-45 in Mattel's Second
Set of Requests for Production to MGA, you agreed that you would provide me with the actual
requests at issue as well as the orders compelling production.

666240

EXHIBIT _____2_____

PAGE _____11_____

Jon D. Corey, Esq.
February 6, 2009
Page 3

Tenth, you requested that MGA provide you with the last known address for former MGA employee Shirin Salemnia. You argued MGA has an obligation to provide Ms. Salemnia's last known address stemming from the parties most recent FRCP 26 disclosures. I disagreed and we agreed to revisit this issue on Monday.

Eleventh, we agreed that MGA would serve amended objections to Mattel's deposition notices for Pablo Vargas, Mariana Trueba and Shirin Salemnia, and that such amended objections would maintain all objections related to the invalidity of Mattel's deposition notices but withdraw MGA's objection that the depositions of Vargas, Trueba and Salmenia were barred because they were required to be completed prior to January 31, 2008.

Twelfth, we also agreed to discuss on Monday February 9, 2009, amendments to the parties' stipulation appointing a discovery master. Mattel seeks to do away with the requirement that the parties meet and confer in-person prior to filing discovery motions. MGA requests that the 5 court day deadline to file oppositions to any discovery motions be extended to 8 court days. We will raise these issues with our respective clients.

Please advise me in writing immediately if your understanding of our discussion differs from mine. Thank you very much.

Very truly yours,

Amman Khan
of GLASER, WEIL, FINK, JACOBS
& SHAPIRO, LLP

AMM/rs

cc:     Joel N. Klevens, Esq.
        Jason Russell, Esq.
        Patricia Benson, Esq.

EXHIBIT     2

PAGE     12

# EXHIBIT 3

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

February 8, 2009

<u>VIA FACSIMILE AND U.S. MAIL</u>

Amman Khan, Esq.
Glaser, Weil, Fink, Jacobs & Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067

Re:     Mattel v. MGA Entertainment, Inc., et al.

Dear Amman:

I write in furtherance of our meeting of counsel of February 6, 2009 regarding various Phase 2
discovery issues.

<u>First</u>, regarding Mattel's Renewed Motion to Compel Production of Documents and Things by
MGA Entertainment, Inc., filed January 26, 2008 and currently pending before the Discovery
Master, you agreed that MGA would produce, within thirty days, all non-privileged documents
responsive to Mattel's Request No. 48 from its First Set of RFPs for the twelve individuals
indentified in Mattel's motion. You also agreed to produce, within thirty days, all non-privileged
documents responsive to Mattel's Request Nos. 43-75 from its Third Set of RFPs regarding
"Scooter Samantha," "Space Babies" and Scott Reyes, as set forth in Mattel's motion.

As to Mattel's Request Nos. 87 and 88, regarding personnel files for former Mattel employees
and vendors, you stated that your objections to producing the personnel files in their entirety
arose from concerns over employee privacy. As I stated at the conference, the prior Discovery
Master and the Court have time and again held that the Protective Order in this case sufficiently
ameliorates any such concerns. As an example, I direct your attention to the attached Discovery
Master's May 15, 2007 wherein he overruled similar privacy objections and ordered the
production of personnel files. <u>See</u> May 15, 2007 Order Granting Mattel's Motion to Compel
Production of Documents and Things, at 3, 9 (overruling MGA's privacy objections on behalf of

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

EXHIBIT ___3___

PAGE ___13___

third parties and ordering production of responsive documents); see also id. at 11 n.4 ("The
personnel file may have documents relevant to Bratz, and therefore should be produced. The
protective order is sufficient to alleviate . . . privacy concern[s]."). Similarly, in another Order
the Discovery Master overruled Bryant's objections based on the privacy of third parties because
"the protective order is sufficient to address . . . confidentiality concerns." January 26, 2007
Order Granting Mattel's Motion to Compel Production of Documents and Things, at 15.

I trust this adequately alleviates your concerns and that MGA will also produce these files.
Separately, I explained that Mattel is not only interested in what may be in the personnel files,
but what may not be in there, such as instances of no disciplinary action taken. Mattel will
agree, however, to exclude from its request any health care specific information. Once MGA
agrees to a stipulation so ordering the production of these documents, then Mattel will take its
motion off-calendar.

Second, with regard to MGA's outstanding responses to a number of Mattel's Interrogatories,
you agreed that MGA would respond to Interrogatory No. 41 within thirty days.

Regarding Mattel's Interrogatory Nos. 43, 44, 51-55 and 64, your colleague, Mr. Nouges
proposed that, in light of Mattel's intention to seek summary adjudication of MGA's claims of
trade dress infringement, MGA be permitted to delay its response to these interrogatories until
thirty days after any ruling on Mattel's contemplated motion. I informed you that I would
discuss your proposal with our client, but that I did not expect them to agree.

Additionally, you questioned whether MGAE de Mexico was bound by the Order compelling
responses to Interrogatory Nos. 41-43. Both the original February 15, 2008 Order and the
subsequent April 22, 2008 Clarification were directed to the "MGA Parties," including MGAE
de Mexico.    Moreover, as I stated at the conference, the interrogatories to MGAE de Mexico
are identical to those that Mattel propounded upon MGA, and assuming MGAE de Mexico takes
the same positions that were advanced by MGA and rejected by the Discovery Master, there is
no reason MGAE should not be similarly bound by the logic of the Order. As you indicated that
you did not have the requests at issue, I have attached Mattel's interrogatories to MGAE de
Mexico.

Third, regarding Mattel's request to schedule the continued deposition of Isaac Larian on Phase 2
matters, you indicated that as MGA's CEO, any such deposition would be impermissibly
burdensome. You asked me why additional time was justified. I told you that, at most, Mattel
had five hours to depose Mr. Larian regarding Phase 2 issues, that he was a named defendant,
that there are tens of thousands, if no hundreds of thousands, of pages of documents that he
authored or related to him and the five hours (much of which was devoted to further Phase 1
issues given that MGA and Larian produced the vast majority of their documents amounting to
millions of pages after Mr. Larian was first deposed). As such, further deposition is warranted.
Because we were unable to reach an agreement on this issue, Mattel will seek an order form the
Discovery Master compelling Mr. Larian's further deposition testimony.

Fourth, regarding Mattel's request to schedule the continued deposition of Ron Brawer on Phase
2 matters, you took the position that his deposition was unwarranted because he had already been

2

EXHIBIT ___3___

PAGE ___14___

deposed and because you did not see Mr. Brawer's continued relevance. Mr. Brawer is a key witness and/or actor at the core of Mattel's Phase 2 allegations. His deposition was never completed, and now that Phase 2 has begun, it should be scheduled immediately. You agreed that you would consider this issue and to provide a response on Monday.

Fifth, regarding Mattel's intention to file a motion for reconsideration of the order compelling Isaac Larian's communications with Mattel employees, but limiting the response to communications that occurred prior to 2005, you indicated that you needed more time to consider the issue because you claimed that your firm did not have the documents, and you needed to determine whether compliance with Mattel's request would be unduly burdensome. I informed you that it was not my understanding that the Discovery Master's time limitation was based on burden considerations. As we discussed, the Discovery Master's prior order limited the scope of Mattel's request based on misapprehension of Mattel's counterclaims. The temporal limitation was not an issue discussed at the hearing or briefed, but a decision made, *sua sponte*, by the Discovery Master. Plainly Mr. Larian's communications with Mattel's employees are highly relevant—indeed, more so, if there may be, as you initially suggested, that Mr. Larian has had so many communications with Mattel employees that responding to such a request would impose an undue burden upon Mr. Larian or upon MGA. We agreed that you would provide me with a firm position on Monday.

Sixth, regarding Mattel's 30(b)(6) deposition of MGAE de Mexico and MGA, you agreed that at the conference on Monday you would be in a position to state which employees would be designated for which topics and their dates of availability. To assist you, I've am attaching Mattel's January 9, 2008 Deposition Notices of MGAE de Mexico and MGA.

Seventh, regarding MGA's supplemental document production regarding financial information, as required by Rule 26(e)(1) and the Discovery Master's Orders of December 28 and 31, 2007, you indicated that you were not in a position to respond to Mattel's request at this time because you did not have the document requests or orders at issue. To assist you, I am attaching Mattel's Requests Nos. 207, 208, 209 and the relevant Discovery Master orders. Please be prepared to respond substantively to Mattel's request on Monday.

Eighth, regarding Mattel's deposition notices of Mr. Vargas, Ms. Trueba and Ms. Salemnia, you agreed that MGA was no longer were objecting on the grounds that Judge Larson's January 7, 2008 order required all Phase 2 depositions to be completed by the end of January 2008. I requested, and you agreed, to provide by Monday, February 9, 2009, amended objections to those deposition notices with that objection omitted.

Ninth, regarding Ms. Salemnia's last known address, you indicated that you would be able to respond at our Monday conference.

Tenth, regarding the current procedures for discovery disputes, I had requested that MGA agree to amend the discovery master stipulation to reflect the parties' long-standing practice of conducting meetings of counsel telephonically. Further, we will take under consideration your request that we amend the procedures to allow a party extended time to file any opposition and reply.

3

EXHIBIT 3

PAGE 15

Finally, I must note that you were not adequately prepared to substantively discuss a number of issues which we had planned to address at last Friday's meeting of counsel. For a number of these disputes you did not even have the relevant pleadings or underlying orders. As a courtesy, I am providing you with those documents that you lack, but I am sure that your co-counsel has. We do not expect that your association in of this case will cause further delay in its prosecution or defense of this case. If the association of your firm was going to cause delay in any respect, then the time to raise that was with the Court upon the request for association. Your failure to do so does not justify any delay or excuses for not being fully prepared, particularly given that your firm is but one of MGA's counsel in this case.

If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon Corey

Jon Corey

Enclosures

cc:     Jean P. Nogues, Esq. (via electronic mail w/ enclosures)

4

EXHIBIT __3__

PAGE __16__

# EXHIBIT 4

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, 107-0052
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**LONDON**
16 Old Bailey
London United Kingdom
+44(0) 20 7653 2000
Facsimile: +44(0) 20 7653 2100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**    February 9, 2009        **NUMBER OF PAGES, INCLUDING COVER: 17**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Amman Kahn, Esq. Glaser, Weil, Fink, Jacobs & Shapiro, LLP | 310-556-7865 | 310-556-2920 |

**FROM:**     Jon D. Corey, Esq.

**RE:**     *Mattel, Inc. v. MGA Entertainment, Inc., et al*

**MESSAGE:**

07209/2791996.1

| CLIENT # 7209 | ROUTE/ RETURN TO: Johanna M. - 10th Floor | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED?   ☐ NO   ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT ____4____

PAGE ____17____

## quinnemanuel triallawyers | losangeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

February 9, 2009

<u>VIA FACSIMILE AND U.S. MAIL</u>

Amman Khan, Esq.
Glaser, Weil, Fink, Jacobs & Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067

Re:     Mattel v. MGA Entertainment, Inc., et al.

Dear Amman:

I write in furtherance of our ongoing meet and confer regarding various Phase 2 discovery issues and to confirm several issues from today's conference.

<u>First</u>, with regard to Mattel's renewed motion to compel, we received your proposed stipulation which confirmed MGA's agreement to produce documents responsive to Mattel's Request No. 48 (1st Set) and Request Nos. 43-75 (3rd set). However, before Mattel would be willing to take its motion off-calendar, we must have a response to whether MGA will agree to produce personnel and vendor files responsive to Request Nos. 87 and 88 (3rd Set) or will continue to object on the grounds of third party privacy. As I previously indicated, the Discovery Master has overruled such objections on multiple occasions because of the protective order provides adequate privacy protection.

As you indicated that you were still discussing this issue with your client, I agreed to give you an extra day to confirm whether MGA will also agree to produce all non-privileged documents responsive to Requests Nos. 87 and 88.

<u>Second</u>, you confirmed that MGAE de Mexico would, like MGA, respond to Mattel's Interrogatories No. 41 by March 9, 2008.

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3356

EXHIBIT _____4_____

PAGE _____18_____

Third, you indicated that MGA would not agree to make Ron Brawer available for further deposition on Phase 2 matters. As I previously explained, Mr. Brawer is a key witness at the core of Mattel's Phase 2 allegations. Because his deposition was never completed, and because of his critical status in Phase 2, Mattel will seek an order from the court compelling the continued deposition of Mr. Brawer.

Fourth, you agreed that MGA and Isaac Larian would produce all post-2005 communications between Mr. Larian and Mattel employees by March 9, 2009.

Fifth, regarding Mattel's 30(b)(6) deposition notices of MGAE de Mexico and MGA, you indicated that in order to determine which employees should be designated and their dates of availability you needed additional time to discuss the specific topics with your client. Please provide us this information by Wednesday, February 11, 2009.

Sixth, regarding MGA's supplemental document production of financial information, as required by the Discovery Master's prior Orders of December 28 and 31, 2007, you again indicated that you needed additional time to consider MGA's position. Also, as my prior letter mistakenly referenced Request No. 209 rather than No. 269, I am attaching, for your convenience, a copy of Request No. 269. Please be in a position to provide us with MGA's and Larian's position by Wednesday, February 11, 2009.

Seventh, regarding Mattel's deposition notices to Mr. Vargas, Ms. Trueba and Ms. Salemnia, you previously indicated that MGA was no longer objecting on the grounds of that all Phase 2 depositions to be completed by the end of January 2008 and had agreed to provide amended objections reflecting the withdrawal of this objection. We have not yet received MGA's amended objections. Please provide them to us by Wednesday, February 11, 2009.

Eighth, in response to Mattel's request for Ms. Salemnia's last known address, you stated that you were not authorized to disclose this information.

Best regards,

Jon Corey

Jon D. Corey

Enclosures

2

EXHIBIT ___4___

PAGE ___19___

# EXHIBIT 5



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Shane H. McKenzie (Bar No. 228978)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, | Case No. CV 04-09059 NM (RNBx) |
| Plaintiff, | |
| v. | MATTEL, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS TO MGA ENTERTAINMENT INC. |
| CARTER BRYANT, an individual | |
| Defendant. | |
| | |
| CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public, | |
| Counterclaimant, | |
| v. | |
| MATTEL, INC., a Delaware corporation, | |
| Counter-defendant. | |

ORIGINAL

EXHIBIT 5

PAGE 20

2/14

1    Pursuant to <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure</u>, Plaintiff
2 and Counter-Defendant Mattel, Inc. hereby requests that MGA Entertainment Inc.
3 make available for inspection and copying the following documents and things
4 within thirty days of the service of these Requests, at the offices of Quinn Emanuel
5 Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th Floor, Los
6 Angeles, California 90036.

7    These Requests shall be deemed to be continuing, and MGA
8 Entertainment Inc. shall be obligated to supplement its responses to these requests
9 at such times and to the extent required by <u>Rule</u> 26(e) of the <u>Federal Rules of Civil</u>
10 <u>Procedure</u>.

11

12                           <u>DEFINITIONS</u>

13

14    For purposes of this Request for Production of Documents:

15    A.    "YOU" or "YOUR" means MGA Entertainment Inc. and any of
16 its current or former employees, officers, directors, agents, representatives,
17 attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and
18 successors-in-interest, and any other PERSON acting on its behalf, pursuant to its
19 authority or subject to its control.

20    B.    "MATTEL" means Mattel, Inc. and any of its current or former
21 employees, officers, directors, agents, representatives, attorneys, subsidiaries,
22 divisions, affiliates, predecessors-in-interest and successors-in-interest, and any
23 other PERSON acting on its behalf, pursuant to its authority or subject to its
24 control.

25    C.    "DOCUMENT" or "DOCUMENTS" means all "writings" and
26 "recordings" as those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil</u>
27 <u>Procedure</u> and <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not
28 limited to, all writings and records of every type and description including, but not

EXHIBIT    5

PAGE    21

-2-

FIRST REQUEST FOR PRODUCTION TO MGA

1 | limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles,
2 | electronic mail ("e-mail"), records of telephone conversations, handwritten and
3 | typewritten notes of any kind, statements, reports, minutes, recordings, transcripts
4 | and summaries of meetings, voice recordings, pictures, photographs, drawings,
5 | computer cards, tapes, discs, printouts and records of all types, studies, instruction
6 | manuals, policy manuals and statements, books, pamphlets, invoices, canceled
7 | checks and every other device or medium by which or through which information
8 | of any type is transmitted, recorded or preserved. Without any limitation on the
9 | foregoing, the term "DOCUMENT" shall include all copies that differ in any
10 | respect from the original or other versions of the DOCUMENT, including, but not
11 | limited to, all drafts and all copies of such drafts or originals containing initials,
12 | comments, notations, insertions, corrections, marginal notes, amendments or any
13 | other variation of any kind.

14 |      D.    "REFER OR RELATE TO" means constituting, embodying,
15 | containing, referring to, commenting on, evidencing, regarding, discussing,
16 | describing, mentioning, reflecting, expressing, pertaining to, concerning,
17 | supporting, contradicting, negating, revoking or otherwise relating to in any
18 | manner.

19 |      E.    "PERSON" or "PERSONS" means all natural persons,
20 | partnerships, corporations, joint ventures and any kind of business, legal or public
21 | entity or organization, as well as its, its or her agents, representatives, employees,
22 | officers and directors and any one else acting on its, its or her behalf, pursuant to
23 | its, its or her authority or subject to its, its or her control.

24 |      F.    "BRYANT" means Carter Bryant, any of his current or former
25 | agents, representatives, attorneys, employees, partners, joint venturers,
26 | predecessors-in-interest and successors-in-interest, and any other PERSON acting
27 | on his behalf, pursuant to his authority or subject to his control.

28 |

EXHIBIT ___5___

-3-

PAGE ___22___

FIRST REQUEST FOR PRODUCTION TO MGA

1          G.    "BRATZ" means any project ever known by that name
2 (whether in whole or in part and regardless of what such project is or has been
3 also, previously or subsequently called) and any doll or any portion thereof that is
4 now or has ever been known as, or sold or marketed under, the name or term
5 "Bratz" (whether in whole or in part and regardless of what such doll is or has
6 been also, previously or subsequently called) or that is now or has ever been sold
7 or marketed as part of the "Bratz" line, and all prototypes, models, samples and
8 versions of such doll or any portion thereof.

9          H.    "ANGEL" means any project that is the subject of
10 MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20,
11 MGA000724-28 and MGA000734, and any doll (sometimes purportedly called
12 "Angel," "Angel Faces" and/or "Prayer Angels") or any portion thereof that is the
13 subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20,
14 MGA000724-28 and MGA000734, including all prototypes, models, samples and
15 versions of such doll(s) or any portion thereof. Without limiting the generality of
16 the foregoing, "ANGEL" means any project or any doll or any portion thereof that
17 is the subject of MGA000706-08, MGA000710-12, MGA000714-16,
18 MGA000718-20, MGA000724-28 and MGA000734, regardless of what any such
19 project or doll has in fact been called, and regardless of what any such project or
20 doll is or has been also, previously or subsequently called.

21          I.    "DESIGNS" means any and all works, designs, artwork,
22 sketches, drawings, illustrations, representations, depictions, blueprints,
23 schematics, diagrams, descriptions, sculptures, prototypes, models, samples,
24 reductions to practice, developments, know-how, ideas, concepts, inventions
25 and/or improvements, as well as all other items, things and DOCUMENTS in
26 which any of the foregoing are or have been expressed, embodied, contained,
27 fixed or reflected in any manner, whether in whole or in part.

28

EXHIBIT 5

PAGE 23

-4-

07209/642197.1

FIRST REQUEST FOR PRODUCTION TO MGA

1        J.        "COMMUNICATION" or "COMMUNICATIONS" means and
2   includes any disclosure, transfer or exchange of information between two or more
3   PERSONS, whether orally or in writing, including, without limitation, any
4   conversation or discussion by means of meeting, letter, telephone, note,
5   memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic
6   or other medium, including without limitation in written, audio or video form.

7        K.        The singular form of a noun or pronoun includes within its
8   meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of
9   the masculine form of a pronoun also includes within its meaning the feminine
10  form of the pronoun so used, and *vice versa*; the use of any tense of any verb
11  includes also within its meaning all other tenses of the verb so used, whenever
12  such construction results in a broader request for information; and "and" includes
13  "or" and *vice versa*, whenever such construction results in a broader disclosure of
14  documents or information.

15

16                                    INSTRUCTIONS

17

18       A.        Unless otherwise specified, these requests call for
19  DOCUMENTS prepared on or after January 1, 1995 through the present.
20  Documents shall be produced in their original file folders, or in lieu thereof, any
21  writing on the file folder from which each such document is taken shall be copied
22  and appended to such document and the person for whom or department, division,
23  or office for which the document or the file folder is maintained shall be
24  identified.

25       B.        YOU are to produce all DOCUMENTS requested hereby that
26  are in YOUR possession, custody and control.

27       C.        In the event that any document called for by these requests is to
28  be withheld on the basis of a claim of privilege or immunity from discovery, that

07209/642197.1

EXHIBIT ___5___

PAGE ___24___

-5-

FIRST REQUEST FOR PRODUCTION TO MGA

1  document is to be identified by stating (i) any addressor and addressee; (ii) any
2  indicated or blind copy; (iii) the document's date, subject matter, number of pages,
3  and attachments or appendices; (iv) all persons to whom the document was
4  distributed, shown, or explained; (v) its present custodian; and (vi) the nature of
5  the privilege or immunity asserted.

6          D.    In the event that any document called for by these requests has
7  been destroyed or discarded, that document is to be identified by stating: (i) any
8  addressor and addressee; (ii) any indicated or blind copies; (iii) the document's
9  date, subject matter, number of pages, and attachments or appendices; (iv) all
10  persons to whom the document was distributed, shown, or explained; (v) the date
11  of destruction or discard, manner of destruction or discard, and reason for
12  destruction or discard; (vi) the persons who were authorized to carry out such
13  destruction or discard; and (vii) whether any copies of the document presently
14  exist and, if so, the name of the custodian of each copy.

15
16  REQUESTS FOR PRODUCTION
17
18  <u>REQUEST FOR PRODUCTION NO. 1</u>:

19          All DOCUMENTS that REFER OR RELATE TO any agreement or
20  contract between YOU and BRYANT, including without limitation all drafts
21  thereof and all actual or proposed amendments, modifications and revisions
22  thereto.

23
24  <u>REQUEST FOR PRODUCTION NO. 2</u>:

25          All DOCUMENTS that REFER OR RELATE TO the performance of
26  any agreement or contract between YOU and BRYANT.

27
28

EXHIBIT _5_

PAGE _25_

-6-

FIRST REQUEST FOR PRODUCTION TO MGA

1 | REQUEST FOR PRODUCTION NO. 44:

2 |     All DOCUMENTS that REFER OR RELATE TO invoices submitted

3 | by BRYANT to YOU prior to January 31, 2001.

4 |

5 | REQUEST FOR PRODUCTION NO. 45:

6 |     All of YOUR royalty statements to or for BRYANT.

7 |

8 | REQUEST FOR PRODUCTION NO. 46:

9 |     All DOCUMENTS that REFER OR RELATE TO BRYANT'S

10 | participation in the conception, creation, design, development, sculpting, tooling,

11 | production or manufacture of BRATZ.

12 |

13 | REQUEST FOR PRODUCTION NO. 47:

14 |     All DOCUMENTS that REFER OR RELATE TO BRYANT'S

15 | participation in the conception, creation, design, development, sculpting, tooling,

16 | production or manufacture of ANGEL.

17 |

18 | REQUEST FOR PRODUCTION NO. 48:

19 |     All non-privileged COMMUNICATIONS between YOU and any

20 | PERSON that REFER OR RELATE TO this action.

21 |

22 | REQUEST FOR PRODUCTION NO. 49:

23 |     All DOCUMENTS that REFER OR RELATE TO any

24 | indemnification that BRYANT has sought, proposed, requested or obtained in

25 | connection with this action.

26 |

27 |

28 |

EXHIBIT _5_

07209/642197.1

PAGE _26_

-16-

FIRST REQUEST FOR PRODUCTION TO MGA

REQUEST FOR PRODUCTION NO. 99:

       All doll heads, sculpts, prototypes, models, samples and tangible items that REFER OR RELATE TO DESIGNS for dolls, doll accessories or toys that BRYANT produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, prior to January 1, 2001.

REQUEST FOR PRODUCTION NO. 100:

       All doll heads, sculpts, prototypes, models, samples and tangible items that support, refute or otherwise REFER OR RELATE TO any facts underlying YOUR Affirmative Defenses in this action.

DATED: March 14, 2005          QUINN EMANUEL URQUHART
                              OLIVER & HEDGES, LLP

                              By _____
                              Shane Heather McKenzie
                              Attorneys for Plaintiff/Counter-defendant
                              Mattel, Inc.

EXHIBIT ___5___

PAGE ___27___

FIRST REQUEST FOR PRODUCTION TO MGA

## PROOF OF SERVICE
1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA** )
) SS
**COUNTY OF LOS ANGELES** )

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On March 14, 2005, I served the foregoing document described as **Mattel, Inc.'s First Set of Requests For Production of Documents And Tangible Things to MGA Entertainment Inc.** on all interested parties in this action.

Robert F. Millman, Esq.
Douglas A. Wickham, Esq.
Littler Mendelson
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
FAX: 310-553-5583

[ ]   By placing [ ] the original [ ] true copies thereof enclosed in sealed envelopes addressed as follows:

[ X ]   **BY MAIL:**   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ X ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

Executed on March 14, 2005, at Los Angeles, California.

[ ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ X ]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Rebecca A. Ramos
Print Name

Signature

EXHIBIT _____5_____

PAGE _____28_____

1

## PROOF OF SERVICE
1013A(3) CCP Revised 5/1/88

2    **STATE OF CALIFORNIA**                )
                                                          ) SS
3    **COUNTY OF LOS ANGELES**         )

4         I am employed in the county of Los Angeles State of California. I am over the age of 18
     and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor,
5    Los Angeles, California 90017.

6         On March 14, 2005, I served the foregoing document described as **Mattel, Inc.'s First Set
     of Requests For Production of Documents And Tangible Things to MGA Entertainment Inc.**
7    on all interested parties in this action.

8                                        **Paula E. Ambrosini, Esq.**
                                              **O'Melveny & Meyers**
9                                            400 So. Hope Street
                                                Los Angeles, CA 90071
10                                               (213) 430-6407

11   [  ]    By placing [ ] the original [ ] true copies thereof enclosed in sealed envelopes addressed as
             follows:

12   [  ]    **BY MAIL:**    I deposited such envelope in the mail at Los Angeles, California. The
             envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar"
13           with the firm's practice of collection and processing correspondence for mailing. Under that
             practice it would be deposited with U.S. postal service on that same day with postage thereon
14           fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that
             on motion of the party served, service is presumed invalid if postal cancellation date or
15           postage meter date is more than one day after date of deposit for mailing in affidavit.

16   [ X ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s)
17           set forth above on this date.

18   [ X ]   **BY PERSONAL SERVICE** I caused to be delivered such envelope by hand to the
             addressee.

19   Executed on March 14, 2005, at Los Angeles, California.

20   [  ]    (State) I declare under penalty of perjury under the laws of the State of California that the
             above is true and correct.
21

22   [ X ]   (Federal) I declare that I am employed in the office of a member of the bar of this court at
             whose direction the service was made.

23

24
     Rebecca A. Ramos
25   Print Name                                          Signature

26

27

28

                                 EXHIBIT ___5___

                                 PAGE ___29___

# EXHIBIT 6

LAW OFFICES

## GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP

10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000
FAX (310) 556-2920

DIRECT DIAL NUMBER
(310) 556-7812
EMAIL: RSTOLL@GLASERWEIL.COM

March 19, 2009

III MERITAS LAW FIRMS WORLDWIDE

**VIA EMAIL AND FACSIMILE**

Diane C. Hutnyan, Esq.
QUINN, EMANUEL, URQUHART,
 OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

Re:   *Bryant v. Mattel, Inc. and Consolidated Actions*
      U.S.D.C. Eastern Division, Case No. CV04-09049 SJL(RNBx)

Dear Diane:

I am writing to memorialize our conversation earlier today concerning MGA's offer to make Scooter Samantha doll samples available for inspection that are responsive to Mattel's Requests for Production. As we discussed, MGA will make the doll samples available in our offices. Please let me know what time on either the afternoons of March 26 or March 27 that Mattel will be able to inspect the samples.

Very truly yours,

Richard Stoll
for GLASER, WEIL, FINK, JACOBS
& SHAPIRO, LLP

RGS/yc

cc:   Joel N. Klevens, Esq.
      Jason Russell, Esq.
      Patricia Benson, Esq.

670761

EXHIBIT ____6____

PAGE ____30____

# EXHIBIT 7

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

March 25, 2009

VIA ELECTRONIC MAIL AND FAX

Richard Stoll, Esq.
Glaser, Weil, Fink, Jacobs & Shapiro LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067

Re:      Mattel v. MGA Entertainment, Inc., et al.

Dear Mr. Stoll:

As you know, Mattel withdrew its Motion To Compel as to Request Nos. 45-47 and 58-59 of Mattel's Third Set of Requests For Documents and Things in exchange for MGA's promise that it would promptly produce all materials responsive to those requests.

Now, based on our conversation and your letter of March 19, 2009, it appears that MGA plans to produce something less than all materials responsive to those five requests.

Please confirm, in writing, by the close of business tomorrow, a date certain as to when MGA will produce for inspection all responsive items. If MGA will not promptly produce all responsive materials for inspection, we will renew our motion to compel MGA to do so and seek sanctions.

Very truly yours,

Diane C. Hutnyan

cc:      Amman Khan, Esq.

EXHIBIT ___7___

PAGE ___31___

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

# EXHIBIT 8

1 | Robert C. O'Brien (SBN 154372)
ARENT FOX LLP
2 | 555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
3 | Telephone:  213.629.7400
Facsimile:   213.629.7401
4 | obrien.robert@arentfox.com

5

6 | Discovery Master

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11

12 | CARTER BRYANT, an individual,,      Case No.  CV 04-09049 SGL (RNBx)

13 |            Plaintiff,      Consolidated with
Case No. CV 04-09059
14 |      v.      Case No. CV 05-2727

15 | MATTEL, INC., a Delaware      **PHASE 2 DISCOVERY MATTER**
corporation,
16 |            Defendant.      **ORDER NO. 6, REGARDING:**

17 |      **(1)  MOTION OF MATTEL, INC. TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO ITS FIRST AND THIRD SETS OF REQUESTS FOR PRODUCTION; and**

18

19

20

21 |      **(2)  MOTION OF MGA TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO THE DOCUMENT REQUEST NOS. 526 AND 528**

22

23

24

25 | CONSOLIDATED WITH
MATTEL, INC. v. BRYANT and
26 | MGA ENTERTAINMENT, INC. v.
MATTEL, INC.
27

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___8___

PAGE ___32___

## I.   **INTRODUCTION**

This Order sets forth the Discovery Master's ruling on: (1) the motion of Mattel, Inc. ("Mattel") to compel production of documents by MGA Entertainment, Inc. ("MGA Entertainment") responsive to Mattel's First Set of Requests for Production No. 48 and Third Set of Requests for Production Nos. 43 through 75, 87 and 88 [Docket No. 4741] (the "Mattel Motion"), and (2) the motion of MGA Entertainment, Isaac Larian, MGA Entertainment HK Limited, and MGAE De Mexico SRL De Cv (collectively "MGA") to compel Mattel to produce documents responsive to MGA's Requests for Production 526 and 528 [Docket Number 4782] (the "MGA Motion") (collectively, the "Motions").

The Motions came on regularly for hearing before the Discovery Master on March 11, 2009. All interested parties were represented by counsel and afforded the opportunity to present oral argument on the Motions. The Discovery Master, having considered the papers filed in support of and in opposition to the Motions, and having heard oral argument thereon, rules as set forth below.

## II.   **THE MATTEL MOTION**

Mattel seeks to compel MGA Entertainment to produce documents responsive to 36 separate document requests. (Mattel Motion, pp. 9 – 15). However, MGA Entertainment subsequently agreed to produce all non-privileged documents responsive to 34 of the document requests identified by Mattel. (MGA Opposition, p. 6). Therefore, the only document requests that remain at issue are Mattel's Third Set of Requests for Production Nos. 87 and 88. (*Id.*, p. 7).

### A.   **The Discovery Sought**

Document Request No. 87 seeks "all personnel and vendor files for each person identified in Exhibit 664." (Mattel's Sep. Stmt., p. 3).

Document Request No. 88 seeks "all personnel and vendor files for each person who has worked as an employee of or vendor for [MGA Entertainment] and who also has been at any time an employee or vendor for Mattel." (*Id.*, p. 5).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___8___

PAGE ___33___

**B.   Phase 1 Ruling**

This is not the first time that Mattel has moved to compel responses to Document Request Nos. 87 and 88. Mattel previously moved to compel responses to these requests as part of Phase 1, but its motion was denied because "Request Nos. 87 and 88 (files for former Mattel employees) . . . relate[d] primarily to Phase 2 issues." (Disc. Master Order, Apr. 14, 2008, p. 7). The former discovery master's April 14, 2008 Order denying Mattel's original motion to compel further held that "[i]n view of the stay on Phase 2 discovery . . . . [n]othing in this Order is intended to authorize or preclude Mattel from seeking further production of documents in response to Request Nos. 1 – 88 during Phase 2 discovery." (*Id.*, pp.7 - 8).

**C.   Objections of MGA Entertainment**

In its Opposition, MGA Entertainment relies on three basic grounds for refusing to produce the requested documents. First, MGA Entertainment argues that Mattel failed to meet and confer. Second, MGA Entertainment argues that the requests are overbroad. Finally, MGA Entertainment argues that California's privacy laws prevent it from producing the requested documents.

**1.   Purported Failure To Meet And Confer**

As indicated above, MGA Entertainment first asserts that Mattel's Motion to Compel should be denied because Mattel failed to adequately meet and confer. (MGA Opposition, pp. 9 - 10). However, MGA Entertainment admits that Mattel did meet and confer regarding the two requests at issue prior to filing its original motion to compel in Phase 1. (*Id.*, p. 2 ["The Renewed Motion is in fact based on meet and confer discussions held over one year ago with MGA's prior lead counsel."]; *see also id.*, p. 9 n.2 [Mattel "met and conferred over a year ago"].) MGA further provides no legal authority, and the Discovery Master has found none, supporting the proposition that a party must meet and confer again before renewing a motion to compel that was denied merely because the case had been

EXHIBIT ___8___

PAGE ___34___

1  divided into phases and where the order denying the motion expressly noted that

2  nothing in the ruling was intended to "preclude Mattel from seeking further

3  production of documents in response" to the requests as part of Phase 2 discovery.[1]

4  (Order Apr. 14, 2008, pp. 7 - 8).

5        Even assuming such a requirement did exist, Mattel in fact met and conferred

6  with MGA Entertainment for a second time following the filing of its current

7  motion and resolved 34 of the 36 document requests in dispute.  (MGA Opposition,

8  pp. 1, 6.)  However, the parties were still unable to resolve their differences relating

9  to Document Requests Nos. 87 and 88.  (*Id.*, 7–9.)  It is, therefore, unclear what

10  could have been accomplished by an additional meet and confer on these issues

11  prior to the filing of the motion.  Regardless, Mattel met and conferred once before

12  filing its current motion to compel and that is all that is required by the Federal

13  Rules of Civil Procedure and the discovery procedures governing this case.

14              **2.   Overbreadth Objection**

15        MGA Entertainment's second argument in opposition to Mattel's Motion is

16  that Document Requests Nos. 87 and 88 are "grossly overbroad."  (MGA

17  Opposition, pp. 14 – 15).  Specifically, MGA Entertainment argues that the requests

18  are improper because they are not tied "to any product(s) that Mattel alleged that

19  MGA [Entertainment] stole from Mattel." (*Id.*,14.)  Without citing any legal

20  authority in support of this position, MGA Entertainment asserts that the current

21  Discovery Master should find that the requests are overbroad because the prior

22  discovery master merely compelled it to produce portions of personnel and vendor

23  files related to the Bratz products as part of Phase 1 discovery.  (*Id.*; *see also* Order

24  Apr.14, 2008, pp. 7 - 8).  But MGA Entertainment's argument fails to recognize

25  //

26

27  _____

[1] The arguments of MGA Entertainment that (1) it has new lead counsel and (2) the case has "changed dramatically"
since the initial meet and confer took place in 2008 are not supported by any legal authority, (MGA Opposition, p. 9),

28  and do nothing to alter the fact that Mattel met and conferred on these issues previously.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -
                                   ORDER NO. 6
                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____8____

PAGE ____35____

1    the differences between Mattel's Phase 1 and Phase 2 claims.[2]

2          The touchstone for determining whether a particular discovery request is

3    reasonably calculated to lead to the discovery of admissible evidence in this case is

4    whether the request bears some relation to the issues to be tried in Phase 2.

5    Whereas Phase 1 of this case primarily addressed whether Mattel or MGA

6    Entertainment owned the rights to the Bratz products, Mattel's Phase 2 claims are

7    not linked to a single discrete product or even multiple products.  Instead, the issues

8    to be litigated in Phase 2 include, among other things, Mattel's claim that MGA

9    Entertainment stole "a vast array of trade secrets and other confidential information

10   that comprise Mattel's intellectual infrastructure," including, among other things,

11   stealing "Mattel's proprietary business methods, practices and information."

12   (Second Amended Answer and Counterclaims ["SAAC"], ¶ 20).  Mattel alleges in

13   its Counterclaims, which are to be litigated in Phase 2, that MGA Entertainment :

14   •   "engaged in a pattern of stealing and using [Mattel's] property and trade

15       secrets," (*Id.,*     ¶ 1);

16   •   "repeated—and even expanded—its pattern of theft [regarding the Bratz]

17       dolls] on numerous occasions," including by hiring away three key Mattel

18       employees in Mexico who "stole virtually every category of Mattel's

19       sensitive and trade secret business plans and information for the Mexican

20       market as well as a significant quantity of sensitive and trade secrete

21       information for Mattel's U.S. and worldwide businesses," (*Id.,* ¶ 3);

22   •   "stole Mattel trade secrets regarding Mattel's customers, sales, projects,

23       advertising and strategy, not only for Canada, but the United States and the

24       rest of the world," (*Id.,* ¶ 70);

25   //

26

27   _____

[2] MGA Entertainment's claim that the document requests are overbroad is also inconsistent with its statement that it

28   would "produce all requested personnel files in their entirety (except for any medical or health related documents) if
     Mattel gave notice to the employees and obtained their consent for such disclosure."  (MGA Opposition, pp. 8 – 9).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -                        ORDER NO. 6
                             [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___8___

PAGE ___36___

1   • "took from Mattel documents containing proprietary advertising, project,

2   sales, customer and strategy information for not only Canada, but for the

3   United States," (*Id.*, ¶ 4);

4   • "engaged in an ongoing, widespread pattern of . . . inducing Mattel

5   employees to steal Mattel's confidential information or other property and

6   take it with them to MGA [Entertainment]," (*Id.*, ¶ 5);

7   • stole "Mattel's plans, strategy and business information for the Mexican

8   market and materials related to Mattel's worldwide business strategies," (*Id.*,

9   ¶ 37);

10  • "enticed [Mattel's employees] to steal Mattel's most sensitive business

11  planning materials, and then hired them to assist in establishing and running

12  MGA's new Mexican subsidiary," (*Id.*, ¶ 37);

13  • "directed [certain Mattel employees'] to steal virtually all Mattel confidential

14  and proprietary information that they could access and bring it with them to

15  MGA," (*Id.*, ¶ 43), including "virtually every type of document a competitor

16  would need to enter the Mexican market, and to unlawfully compete with

17  Mattel in Mexico, in the United States and elsewhere," such as "global

18  internal future line lists that detailed anticipated future products; production

19  and shipping costs for Mattel products, daily sales data for Mattel products;

20  customer data; sales estimates and projections; marketing projections;

21  documents analyzing changes in sales performance from 2003 to 2004;

22  budgets for advertising and promotional expenses; strategic research

23  reflecting consumer responses to products in development; media plans;

24  consumer comments regarding existing Mattel products customer discounts

25  and terms of sale; customer inventory level data; assessments of promotional

26  campaign success; market size historical data and projections; marketing

27  plans and strategies, merchandising plans; retail pricing and marketing

28  strategies; and other similar materials," (*Id.*, ¶ 48);

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 8 _____

PAGE _____ 37 _____

1       • "targeted certain Mattel employees who have broad access to Mattel

2       proprietary information in an effort to induce and encourage them to join

3       MGA [Entertainment] and to steal or otherwise wrongfully misappropriate

4       Mattel confidential information and trade secrets," including by "promising

5       these employees salaries 25 percent or more higher than they earn at Mattel

6       and stating to them that they should not be concerned by legal action taken

7       by Mattel to protect its trade secrets and its rights because such claims are

8       hard to prove and easy to defeat," (*Id.*, ¶ 69); and

9       • "hired directly from Mattel's United States operations at least 25 employees,

10      from Senior Vice-President level to lower level employees," and that some of

11      these individuals misappropriated "Mattel confidential and proprietary

12      information, including Mattel's strategic plans; business operations; methods

13      and systems; marketing and advertising strategies and plans; future product

14      lines; product profit margins, and customer requirements." (*Id.*, ¶ 77).

15          In light of the foregoing allegations, the documents requested by Mattel fall

16 within the purview of permissible discovery allowed by Federal Rule of Civil

17 Procedure 26. Rule 26 permits the discovery of information that is "relevant to the

18 claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Accordingly, Mattel's

19 request for "all personnel and vendor files" of individuals who either (1) work at

20 MGA Entertainment and previously used to work for Mattel or (2) who are vendors

21 of MGA Entertainment and used to work with or had contact with Mattel appears to

22 be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

23            **3.    Privacy Rights Objection**

24         MGA Entertainment's final argument is that the records sought by Mattel

25 (i.e., personnel and vendor files) invade the privacy rights of non-parties and cannot

26 be produced under *California law* unless the individuals affected are given advance

27 notice of the requests and afforded an opportunity to object to the production.

28 (MGA's Opposition, pp. 10 – 14). Specifically, MGA Entertainment argues that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____8____

PAGE ____38____

1   the California Constitution and California Code of Civil Procedure § 1985.3

2   together constitute a fundamental public policy in California that do not allow

3   MGA Entertainment to "place its employees privacy rights at risk." (*Id.*). But each

4   of these contentions is unavailing.

5        As an initial matter, a protective order has been entered in this case. (Mattel

6   Reply, p. 2). This fact is crucial to analyzing the privacy concerns raised by MGA

7   Entertainment, because courts within the Ninth Circuit have repeatedly held that,

8   where such an order has been (or will be) entered, state-based privacy laws do not

9   bar production of personnel files.[3] *See, e.g., Nakagawa v. Regents of Univ. of Cal.,*

10  2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) (ordering production of

11  personnel files and stating "[a]ny other privacy concerns defendant may have

12  should be addressed by a protective order"); *Grinzi v. Barnes,* 2004 WL 2370639,

13  *1 (N.D. Cal. Oct. 20, 2004) ("The proper mechanism for an employer to use to

14  protect an employee's privacy interest in his personnel file is to obtain, either by

15  stipulation or motion, a properly crafted protective order under Rule 26(c)");

16  *Maldonado v. Cal. Dep't of Corr. & Rehab.,* 2007 WL 4249811, *7 (E.D. Cal. Nov.

17  30, 2007) ("The court has already analyzed these non-party privacy rights, and the

18  protective order should serve to remedy any concern in this regard."); *Walton v. K-*

19  *Mart, Inc.,* 2007 WL 4219395, *2 (N.D. Cal. November 28, 2007) ("In view of the

20  employees' privacy interests, documents shall be produced pursuant to an

21  attorneys' eyes only protective order."); *Keller-McIntrye v. Coll. Of Health &*

22  *Human Servs.,* 2006 WL 3456672, *1-*2 (N.D. Cal. November 29, 2006) (ordering

23  production of employee information, pursuant to a protective order, despite privacy

24  claims under California law).

25       Further, contrary to MGA Entertainment's assertions, the Ninth Circuit has

26  ---

[3] In fact, some of the California authority relied on by MGA Entertainment contemplates that confidential

27  information may be appropriately disclosed if a protective order is in place. (*See, e.g., Valley Bank of Nev. v. Superior Court,* 15 Cal. 3d 652, 658 (1975) ["[T]he trial court has available certain procedural devices which may be

28  useful in fashioning an appropriate order that will, so far as possible, accommodate considerations of both disclosure and confidentiality."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___8___

PAGE ___39___

1  held that "personnel files are discoverable in federal question cases . . . despite

2  claims of [state-created] privilege,"[4] (*Garrett v. San Francisco*, 818 F.2d 1515,

3  1519 n. 6 (9th Cir. 1987); *see also Kerr v. District Court*, 511 F.2d 192, 197 (9th

4  Cir. 1975)), and this includes any claim of privilege resulting from California Code

5  of Civil Procedure § 1985.3,[5] (*see Reed v. Williams*, 2007 WL 2140506, *4 (E.D.

6  Cal. July 25, 2007) [holding that the requirements of California Code of Civil

7  Procedure § 1985.3 do not apply in federal question cases because "federal law

8  applies in terms of substantive, privilege and discovery law."]). Accordingly, the

9  privacy concerns raised by MGA Entertainment have no applicability here.

10      Despite the foregoing, and notwithstanding the existence of the protective

11  order as a safeguard, the Discovery Master finds that the requested documents

12  should exclude "health care specific information," because Mattel's counsel

13  conceded that Mattel is not seeking such information in its discussions with counsel

14  for MGA Entertainment. (*See* Decl. of Amman Khan, Ex. G, 2). Counsel for

15  Mattel restated this position at the hearing.

16      The Discovery Master further orders MGA Entertainment to redact any

17  social security numbers, tax identification numbers, dates of birth, indication of

18  sexual orientation, bank account numbers, and checking account numbers that may

19  be included within the requested documents prior to production, as Mattel has not

20  made a showing at this time that such discrete personal information is reasonably

21  calculated to lead to the discovery of admissible evidence.

22      **D.**   **Conclusion**

23      The documents sought by Mattel's Request Nos. 87 and 88 are reasonably

24  calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

---

[4] Mattel's SAAC includes, among other things, claims for alleged RICO violations under U.S.C. §§ 1962(c), 1962(d) and 1964(c), (SAAC at ¶¶ 88 – 105) and MGA Entertainment removed this action to federal court on federal question grounds, (Mattel Reply, p. 5).

[5] The same rule may even apply in diversity cases, (see *Corser v. County of Merced*, 2006 WL 2536622, *2 (E.D. Cal. August 31, 2006) [holding that "the extent that Section 1985.3 may provide a California-law privilege [] the privilege does not apply to this litigation"], but the Discovery Master need not resolve that issue.

EXHIBIT    8

PAGE    40

1   2 claims, and are not protected from disclosure on the grounds of third-party

2   privacy rights or any other ground cited by MGA Entertainment.

3   **III.   MATTEL'S REQUEST FOR SANCTIONS**

4          In its Reply, Mattel also seeks $1,460 in sanctions relating to the attorneys'

5   fees and costs it incurred in drafting the reply. (Mattel's Reply, pp. 11 – 13; *see*

6   *also* Decl. of Zachary Krug, ¶ 14). As the Discovery Master has previously stated,

7   however, he, like the Court,[6] disfavors the insertion of new arguments at the reply

8   stage that could have been raised in the moving papers.[7] This rule is routinely

9   adhered to by courts in the Ninth Circuit. *See, e.g., United States v. Boyce*, 148

10  F.Supp .2d 1069, 1085 (S.D. Cal. 2001); *Leick v. Hartford Life & Accident Ins. Co.,*

11  2007 WL 1847635, at *1, n. 1 (E.D. Cal. June 27, 2007); *Stewart v. Wachowski,*

12  2004 WL 2980783, at *11 (C.D. Cal. Sept. 28, 2004); *Hamilton v. Willms,* 2007

13  WL 2558615, at *11 (E.D. Cal.2007); *see also United States v. Cox,* 7 F.3d 1458,

14  1463 (9th Cir.1993); *United States v. Wright,* 215 F.3d 1020, 1030 n. 3 (9th

15  Cir.2000).

16          Accordingly, the Discovery Master therefore declines to award sanctions

17  against MGA Entertainment.

18  **IV.   MGA'S MOTION TO COMPEL RESPONSES TO DOCUMENT**

19  **REQUEST NOS. 526 AND 528**

20          In its motion, MGA seeks an order compelling Mattel to produce documents

21  responsive to two document requests (the "Requests") included in MGA's Fifth Set

22  of Requests for Production of Documents and Things dated August 3, 2007.

23  //

24

25  [6] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would
    not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not
26  change [its] ultimate conclusion."

27  [7] Mattel was apparently aware of MGA Entertainment's grounds for opposing the motion before it filed its moving
    papers, since Mattel met and conferred with MGA Entertainment prior to bringing its motion. Mattel nevertheless
    failed to request a sanctions award in its moving papers, thereby depriving opposing counsel and MGA
28  Entertainment of the chance to oppose the request in the Opposition brief.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-9-                                                ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___8___

PAGE ___41___

### A.    The Discovery Sought

The Requests seek copies of Mattel's communications with law enforcement authorities (Request No..526) and copies of any documents that it has provided to law enforcement authorities (Request No. 528). The complete text of the Requests is as follows:

- **Request No 526**: All DOCUMENTS that constitute COMMUNICATIONS between YOU (including YOUR agents and attorneys) and law enforcement authorities in Mexico, Canada, or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities, concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

- **Request No. 528**: All DOCUMENTS that you (including YOUR agents and attorneys) provided to law enforcement authorities in Mexico, Canada [*sic*] or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

### B.    Mattel's Objections

In its Opposition, Mattel relies on three basic grounds for refusing to produce the requested documents. First, Mattel argues that the Requests are overbroad and encompass information not reasonably calculated to lead to the discovery of admissible evidence. Second, Mattel argues that the documents are protected by the work product doctrine. Finally, Mattel argues that the documents are

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

EXHIBIT _____ 8 _____

PAGE _____ 42 _____

1   privileged.

2          **1.      Overbreadth Objection**

3         Among the issues to be adjudicated in Phase 2 are Mattel's counterclaims for

4   RICO violations, misappropriation of trade secrets and unfair competition. Mattel's

5   SAAC alleges that "Mattel notified Mexican authorities about the [alleged] theft of

6   its trade secret and confidential information." (SAAC, ¶ 53). The SAAC further

7   details Mattel's knowledge of the Mexican authorities' activities related to MGAE

8   de Mexico and suggests that Mattel communicated with the authorities regarding

9   their seizure of certain documents from MGA's office. (*Id.*, ¶ 53). Mattel also

10  alleges that "Mattel notified Canadian law enforcement authorities" about its belief

11  that Janine Brisbois copied documents onto a thumb drive when she left Mattel.

12  (*Id.*, ¶ 75). Further, Mattel states that it communicated with Canadian authorities

13  regarding the information allegedly recovered from Brisbois' thumb drive. (*Id.*, ¶

14  75).

15        Mattel has also acknowledged that at least some of the documents responsive

16  to Request No. 526 relate to Mattel's claims by producing to MGA "the judicial file

17  in criminal proceedings in Mexico, relating to the trade secret thefts in that country,

18  *and some of those materials reflected communications between Mattel and law*

19  *enforcement.*" (Declaration of Timothy L. Alger dated January 24, 2008 ["Alger

20  Decl."], ¶ 16 (emphasis added).)

21        Given Mattel's allegations regarding the theft of its trade secrets, its

22  communications with law enforcement officials, and the overlap between the civil

23  and criminal claims Mattel is pursuing, the Discovery Master concludes that, as a

24  threshold matter, MGA has made a prima facie case that the Requests seeking the

25  documents Mattel provided to law enforcement officials, as well as Mattel's

26  communications with those officials, are reasonably calculated to lead to the

27  discovery of admissible evidence regarding the claims to be adjudicated in Phase 2.

28        Although the Requests on their face relate to Phase 2 issues, Mattel

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ____8____

PAGE ____43____

1   nonetheless argues in its Opposition that Request No. 526 is overbroad because
2   Mattel's civil claims are wholly separate and independent from any criminal relief
3   it is seeking. (Mattel Opposition, p. 4 ["The civil claims stand or fall based on
4   MGA's actions, not Mattel's subsequent communications with law enforcement."]).

5        In so arguing, Mattel misses the point. The issue is not whether Mattel's
6   communications with law enforcement officials constitute the basis of Mattel's
7   claims. Rather, the issue is whether those communications are reasonably
8   calculated to lead to the discovery of admissible evidence regarding what Mattel
9   itself characterizes as the basis of its claims, namely MGA's alleged acts of trade
10  secret misappropriation. Mattel does not dispute that its subsequent
11  communications with law enforcement involve the same conduct that is the basis of
12  the civil claims. On the contrary, Mattel has alleged in its SACC that it is
13  concurrently seeking relief through the criminal justice system and this civil action
14  based on the same documents allegedly stolen by MGA and confirmed that fact
15  during the meet and confer process. (See, e.g., Alger Decl., ¶ 16 [asserting that "the
16  judicial file in the criminal proceedings in Mexico" are among the "documents
17  *relating to Mattel's Counterclaims*."] [emphasis added].)

18       Mattel's communications with law enforcement may, among other things,
19  disclose what Mattel told the investigating authorities about what information was
20  taken, the people who have knowledge of the thefts, and any supposed criminal
21  intent on the part of MGA or the former Mattel employees who supposedly took the
22  information. Given this admitted overlap in subject matter, the communications
23  between Mattel and law enforcement agencies are discoverable. (*See, e.g., In re*
24  *Qwest Commc'ns Intl., Inc.*, 450 F.3d 1179, 1181-82, 1201 (10th Cir. 2006) [private
25  plaintiff permitted discovery of materials provided to law enforcement authorities
26  concerning the same underlying facts]).

27       With respect to Request No. 528 (seeking documents Mattel provided to law
28  enforcement agencies), Mattel argues that it has already provided to MGA tens of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -                                          ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___8___

PAGE ___4/4___

1  thousands of documents that pertain to the underlying facts of Mattel's

2  counterclaims. (Mattel Opposition p, 5). But, as Mattel admits, that production

3  does not satisfy Request No. 528 which, in Mattel's words "seeks something more

4  and different." (*Id.*). According to Mattel, the "different" information sought by

5  Request No. 528 is information that would enable "MGA's executives to defend

6  against actual or potential criminal charges . . ." (*Id.*). However, since those

7  possible criminal charges are based on the same conduct as Mattel's civil claims, it

8  would be inappropriate to bar MGA from obtaining that information for use in this

9  lawsuit, simply because that same information might also relate to possible future

10 criminal cases (which may or may not ever be filed). Put another way, the

11 information sought by MGA to defend the civil claims does not become

12 "irrelevant" simply because it might have the ancillary effect of facilitating MGA's

13 defense of possible criminal claims.

14       Lastly, Mattel argues that both Requests are overbroad because they are not

15 limited to misconduct expressly alleged in the SAAC but also seek "documents

16 'concerning . . . any other alleged taking of confidential MATTEL information by

17 MGA . . .'" (Mattel Opposition, pp. 5 -6). In response, MGA points out that the

18 SAAC includes a catch-all allegation stating that unidentified "additional

19 employees accessed, copied and took from Mattel confidential and proprietary

20 information." (SAAC, ¶ 77). Mattel's apparent purpose in including such an

21 allegation was to preserve its right to allege and prove other acts of

22 misappropriation besides those expressly alleged in the SAAC. Accordingly, since

23 Mattel reserves the right to seek relief regarding additional, un-alleged acts, MGA

24 should likewise be entitled to conduct discovery to identify those additional acts

25 and to determine what evidence Mattel may have to prove them.

26       **2.    Work Product Objection**

27       Next, Mattel argues that production of Mattel's communications with law

28 enforcement agencies, together with the documents Mattel chose to provide to those

EXHIBIT ___8___
PAGE ___45___

1    agencies, would violate the attorney work-product doctrine by revealing counsel's
2    strategy and mental processes.  (Mattel Opposition, p. 6).

3         To qualify for work-product protection under Federal Rule Civil Procedure
4    26, documents must meet two requirements:  (1) they must be "prepared in
5    anticipation of litigation or for trial," and (2) they must be prepared "by or for
6    another party or by or for that other party's representative." *In re Cal. Pub. Utils.*
7    *Comm'n*, 892 F.2d 778, 780-781 (9th Cir. 1989).  In determining whether the
8    doctrine is applicable to a particular document, "the court must consider the
9    *primary purpose* of the work product doctrine, which is to 'prevent exploitation of a
10   party's efforts in *preparing for litigation.*'" *Johnson v. Finn*, 2007 WL 3232253,
11   *1 (E.D. Cal. Oct. 31, 2007) (emphasis added).  The authorities Mattel cites agree
12   that the purpose of the work product doctrine is "to establish a zone of privacy for
13   *strategic litigation planning.*" (Opposition, p. 6 quoting *United States v. Adlman*,
14   68 F.3d 1495, 1501 (2d Cir. 1995) [emphasis added].)

15        Here, Mattel does not demonstrate any connection between its
16   communications with law enforcement officials, on the one hand, and its litigation
17   strategy in the present civil case, on the other hand.  Rather, it appears that Mattel's
18   primary purpose in communicating with, and disclosing the disputed documents to,
19   various law enforcement officials was to instigate criminal prosecutions by
20   prosecutorial agencies, not pursue its civil claims against MGA.  Thus, to the extent
21   the selection of particular documents by Mattel's counsel reveals counsel's
22   impressions and mental processes, the window into counsel's thinking relates to
23   counsel's strategy of encouraging *criminal prosecution* by the relevant authorities.
24   There is no showing that counsel's thinking regarding how best to achieve *that*
25   purpose would also reveal counsel's strategies and impressions in any matter
26   related to the current civil litigation.  In short, Mattel has made an insufficient
27   showing that the communications and documents at issue constitute work product
28   in *this* litigation.  Accordingly, the work-product doctrine is inapplicable.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -                                    ORDER NO. 6
                                          [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 8

PAGE _____ 46

1    Further, even if the work-product doctrine somehow applied to Mattel's
2    communications with law enforcement agencies, Mattel waived it, in at least two
3    ways. First, Mattel admits that it has already produced some of those
4    communications to MGA. (See Alger Decl., ¶ 16.)

5    Second, to the extent Mattel's communications with law enforcement
6    officials disclose its conclusions and theories to law enforcement officials, such a
7    disclosure also constitutes a waiver. Mattel admits that the work-product doctrine
8    is waived when material is "voluntarily disclosed such that it may become readily
9    accessible to an adversary." (Mattel Opposition, pp. 6 - 7 (citing *Aronson v.*
10   *McKesson HBOC, Inc.*, 2005 WL 934331, *6 (N.D. Cal. Mar. 31, 2005)). In fact,
11   the courts have specifically held that "disclosing information to governmental
12   authorities in the hope that they will attack an adversary . . . cannot be said to be
13   done 'in the pursuit of . . . trial preparation.' Thus, disclosure in such a situation
14   results in a waiver of the work product protection." *Bank of America, NA. v. Terra*
15   *Nova Insur. Co.*, 212 F.R.D. 166, 172-73 (S.D.N.Y. 2002). Therefore, when a party
16   provides information to law enforcement agencies and "harbor[s] the hope, even if
17   un-communicated, that its disclosures would encourage the Government to
18   prosecute" a third party, this disclosure constitutes waiver because it "substantially
19   increase[s] the potential that the information gained during the investigation would
20   be disclosed to [the] adversary." *Id.*

21   Given that Mattel disclosed the documents to these entities with the intention
22   of triggering criminal prosecution of MGA and its representatives, the intended
23   effect of Mattel's disclosure is to make those documents available to MGA under
24   the applicable rules of criminal procedure, which would entitle MGA to the
25   documentary evidence on which any alleged criminal liability is based. Mattel
26   itself concedes this fact when it acknowledges that MGA can request disclosure of
27   the information provided to law enforcement officials "in accordance with the
28   applicable law in the countries involved." (Mattel Opposition, p. 5). Mattel knew

EXHIBIT ___8___

PAGE ___47___

1   when it provided the documents to law enforcement agencies that such production

2   "substantially increased the opportunities for potential adversaries to obtain the

3   information." (Mattel Opposition, p. 7). Thus, Mattel cannot demonstrate a

4   reasonable expectation this material would remain protected.

### 3.   Privilege Objections

6   Lastly, Mattel asserts that the litigation privilege codified in Cal. Civ. Code §

7   47(b) and/or the *Noerr-Pennington* doctrine bar MGA from seeking any affirmative

8   relief from Mattel based on the latter's communications with law enforcement

9   authorities. Consequently (Mattel reasons), those communications "are not

10   properly discoverable" in this action. (Mattel Opposition, p. 8).

11   That argument is based on a premise for which there is no support in the

12   record, namely that MGA seeks the subject documents in order to assert a claim

13   against Mattel arising from Mattel's allegedly privileged communications.

14   Proceeding from this unsupported assumption, Mattel then argues that such a non-

15   existent claim would be barred.

16   However, that speculative foray is entirely non-responsive to the MGA

17   Motion. The MGA Motion asserts that the documents should be produced not

18   because MGA intends to sue Mattel for communicating with law enforcement

19   authorities, but rather because Mattel itself injected the issue of the criminal

20   proceedings *into this lawsuit* by asserting in its SAAC that Mattel has

21   communicated with criminal authorities in various countries regarding the conduct

22   of MGA upon which Mattel bases its counterclaims. *That* is the reason MGA

23   offers for seeking the subject documents.

24   Accordingly, Mattel's attempt to rely on privilege fails to address the actual

25   position taken by MGA in its Motion or the issues raised in the pleadings. Further,

26   the cases cited by Mattel demonstrate on their face that the subject privileges are

27   restricted to situations not present here. Those cases stand for the proposition that

28   parties who communicate with law enforcement officials may be immune from

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT _____ 8 _____

PAGE _____ 4/8 _____

1  *liability* under California tort law and federal anti-trust law, respectively – not that

2  such parties are immune from *discovery* in civil suits.

### a.      The Litigation Privilege

4       The California Supreme Court described the scope of the litigation privilege

5  in a case cited by Mattel, *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350 (2004).

6  According to Mattel, *Hagberg* stands for the proposition that a communication to

7  law enforcement officials about suspected criminal activity "enjoys an unqualified

8  privilege." (Mattel's Opp'n, 8.)  However, nothing in the *Hagberg* opinion

9  addresses the issue presented here, namely whether communications and documents

10  passed from the reporting party to the law enforcement agency is discoverable in

11  litigation arising out of the same underlying, allegedly criminal, activities.  Rather,

12  in *Hagberg* the question presented was "whether *tort liability* may be imposed for

13  statements made when a citizen contacts law enforcement personnel to report

14  suspected criminal activity...." 32 Cal. 4th at 355 (emphasis added).  The Court

15  answered that question in the affirmative.  *Id.*

16       The other California cases cited by Mattel are in accord.  See *Jacob B. v.*

17  *County of Shasta*, 40 Cal. 4th 948, 955, 956 (2007) ("We have discussed the basic

18  principles underlying section 47(b)'s litigation privilege in many cases....  [P]ublic

19  agencies... must be permitted to provide such information without fear of being

20  harassed by *derivative lawsuits*.") (emphasis added); *Silberg v. Anderson*, 50 Cal.

21  3d 205, 213, 214 (1990) (the "*litigation* privilege" provided by section 47(2)

22  "afford[s] litigants and witnesses... the utmost freedom of access to the courts

23  without fear of being harassed subsequently by *derivative tort actions*") (emphasis

24  added); *Williams v. Taylor*, 129 Cal, App. 3d 745 (1982) (affirming summary

25  judgment against plaintiff's claims for slander and malicious prosecution based on

26  Section 47(b)).

### b.      The *Noerr-Pennington* Doctrine

28       "The Noerr-Pennington doctrine *immunizes from the antitrust laws* anti-

EXHIBIT     8

PAGE      49

1   competitive conduct undertaken to influence or petition government bodies, or to
2   utilize judicial or quasi-judicial mechanisms." (*Forro Precisions, Inc. v. Intl Bus.*
3   *Mach.* 673 F.2d 1045, 1059 (1982) [emphasis added]). In *Forro*, the plaintiff
4   brought suit against IBM for assisting a police search of his business premises.
5   Based in part on the *Noerr-Pennington* doctrine, the court held that the plaintiff's
6   antitrust claim could not be based on IBM's solicitation of aid from the police
7   department that resulted in the police investigation and search of his premises, or on
8   IBM's assistance in these activities. (*Id.* at 1053 ["IBM's actions in assisting the
9   police...were privileged and could not serve as a basis for *civil liability*."] [emphasis
10  added]) . In short, the "privilege" at issue in *Forro* dealt with freedom from
11  antitrust liability, not freedom from discovery.[8]

12                          **c.    Application To The Present Case**

13          Here, MGA has not yet asserted any affirmative claim against Mattel arising
14  out of Mattel's communication with law enforcement officials. If and when MGA
15  attempts to do so, it may well be appropriate for Mattel to assert the privileges
16  discussed above in an attempt to defeat any such claims on the merits. In the
17  meantime, MGA is simply defending Mattel's civil claims in the present action, and
18  no privilege cited by counsel prevents MGA from conducting discovery regarding
19  the basis for those claims.

20      **C.    Conclusion**

21          The documents sought by MGA's Request Nos. 526 and 528 are reasonably
22  calculated to lead to the discovery of admissible evidence regarding Mattel's Phase
23  2 claims, and are not protected from disclosure under any of the privileges or
24  doctrines cited by Mattel.

25  //

26

27
28

[8] Mattel cites only one case in which the Court actually held that a party was protected from the production of communications made to government agencies regarding suspected criminal activity. However, in that case (which arose under the Annunzio-Wylie Act) the communications were sought to prove a defamation claim based on those communications. *See Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -                          ORDER NO. 6
                    [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___8___
PAGE ___50___

## V.    DISPOSITION

1.    The Mattel Motion is **GRANTED**, with the exception of health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers.

2.    Mattel's request for sanctions is **DENIED**.

3.    The MGA Motion is **GRANTED**.

4.    All non-privileged documents shall be produced within 30 days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

5.    All documents to be produced pursuant to this Order, including employee personnel files and records of communications between Mattel and law enforcement officials, shall be produced in the same format and order as they are maintained in the original files of the parties as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i).

6.    The documents reflecting Mattel's communications with law enforcement officials shall include any and all enclosures, and documents transmitted as a group shall be marked in a manner that permits MGA to ascertain which pages constitute each individual transmittal.

7.    All personnel or vendor documents redacted by MGA in accordance with this Order shall, whenever applicable, retain any letterhead, title, or other header that permits Mattel to ascertain the general nature and source of the document redacted and shall be marked in a manner that permits Mattel to ascertain which pages comprise a single document.

Dated:    March 13, 2009

By:    /s/ Robert C. O'Brien
ROBERT C. O'BRIEN
Discovery Master

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 19 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT    8

PAGE    51

# EXHIBIT 9

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
### CIVIL MINUTES -- GENERAL

Case No.   CV 04-09049 SGL(RNBx)                     Date: February 4, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.
           AND CONSOLIDATED ACTIONS
======================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes                              Theresa Lanza
           Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR CARTER          ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

Michael Page                          John Quinn
                                      Jon D. Corey

                                      ATTORNEY PRESENT FOR CARLOS
ATTORNEYS PRESENT FOR MGA:            GUSTAVO MACHADO GOMEZ:

Thomas J. Nolan
Carl A. Roth
Robert J. Harrington

ATTORNEYS PRESENT FOR THIRD-
PARTY WITNESSES

Larry W. McFarland
Scott Gizer
Ramit Mizrahi
Henry H. Gonzalez
Neal A. Potischman
John Patrick Petrullo


Alexander H. Cote


MINUTES FORM 90                                Initials of Deputy Clerk ___jh
CIVIL -- GEN                      1             Time: 1/45


EXHIBIT _____9_____

PAGE _____52_____

PROCEEDINGS:

HEARING ON EX PARTE APPLICATIONS:

1722 EX PARTE APPLICATION to Compel Deposition of Ana Cabrera, Beatriz Morales, and Maria Salazar and Mel Woods

1724 EX PARTE APPLICATION to Compel Depositions of Daphne Gronich, Joe Tiongco, Mariana Trueba, Pablo Vargas, MGA Entertainment, Inc.

1538 EX PARTE APPLICATION for Relief from 01-07-2008 Order re Motion Hearing

1583 EX PARTE APPLICATION to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy, and Veronica Marlow

1624 EX PARTE APPLICATION to Enforce Court's Orders Compelling Production of Tangible Items

1628 EX PARTE APPLICATION to Stay pending Review of Discovery Master's January 11, 2008 Order Granting MGA's and Bryant's Motion to Compel

ORDER TO SHOW CAUSE DIRECTED TO COUNSEL LARRY McFARLAND

Having considered the documents submitted in support of and opposition to the applications set forth above, and having heard oral argument, the Court issues its rulings on these matters as stated on the record and as follows:

## EX PARTE APPLICATIONS REGARDING DEPOSITIONS
## (DOCKET #1722 AND #1724) AND ORDER TO SHOW CAUSE

These applications are DENIED IN PART, subject to the following rulings:

(1)     The Court's January 7, 2008, Order was intended to grant certain specified relief from the numerical limitations on discovery requests; it was not meant to make definitive rulings on burdensomeness, relevance, privilege, or service of discovery requests.

(2)     The Phase 1 discovery deadline has expired. Any Phase 1 discovery not properly served on or before this deadline may not now be pursued. Based on the representation of counsel that process for the letters rogatory on the Hong Kong witnesses has not been initiated, these witnesses may not be deposed on Phase 1 issues. Notwithstanding this ruling, however, the Court is concerned with the allegations by Mattel in its ex parte application regarding certain actions of Larry

MINUTES FORM 90
CIVIL -- GEN                                2

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT 9
PAGE 53

McFarland, who represents certain third-party witnesses. Mattel submits that Mr.
McFarland has been deliberately evading service of a notice of deposition on him
and his clients – serious allegations when made by an officer of the Court against
another officer of the Court. Accordingly, Mr. McFarland is **ORDERED TO SHOW
CAUSE** why he and his clients should not be ordered to appear for deposition. A
written response to this OSC must be filed no later than February 11, 2008. Other
parties may file written replies no later than February 19, 2008. The Court will hear
the matter at 10:00 a.m., February 25, 2008, in Courtroom One of the above-
referenced Court.

(3)    Phase 1 depositions that have been scheduled past the discovery deadline for the
convenience of the witnesses or pursuant to the stipulation of the parties and/or
witnesses may proceed as scheduled.

(4)    All discovery related to Phase 2, other than certain individual depositions that may be
related to both Phase 1 and Phase 2, is STAYED until further order of the Court.

(5)    As previously ordered and reaffirmed by this Court, all discovery matters shall be
presented in the first instance to the Discovery Master. The fact that the Discovery
Master's ruling might impact upon the Court's scheduling order does not relieve the
parties of following this procedure. For instance, motions to compel, motions to
quash, or motions challenging service as to existing discovery requests shall be
brought before the Discovery Master. So, too, must objections based on
burdensomeness, relevancy, or privilege. In general, and on the matters touched
upon herein, the Court expresses no opinion as to these issues, and instead leaves
those issues to the Discovery Master to decide in the first instance.

(6)    To the extent that certain challenged depositions are within the scope of the Court's
January 7, 2008, Order, and are related to Phase 1 (or to the extent that a given
deposition (other than a Rule 30(b)(6) deposition) is related to both Phase 1 and
Phase 2), said deposition may proceed subject to the challenges set forth in the
previous paragraph. To the extent that the depositions are related to Phase 2, they
are STAYED, as set forth above, notwithstanding the January 7, 2008, Order.

(7)    The parties' arguments require the Court to resolve an internal inconsistency in the
Court's January 7, 2008, Order. The Court's Order was meant to grant all parts of
Mattel's Motion for Leave to Take Additional Discovery (docket #1134) except the
relief sought as to the deposition of Carter Bryant. The Court amends its 01.07.08
Order as follows:

Delete: <Specifically, the Court grants Mattel's request to take the
individual depositions relating to the Bratz claims (set forth in the
moving papers at 9-11) and relating to the trade secret and RICO

MINUTES FORM 90                                Initials of Deputy Clerk __jh_____
CIVIL -- GEN                          3        Time: 1/45

EXHIBIT ___9___

PAGE ___54___

Case 2:04-cv-09049-SGL-RNB     Document 1931     Filed 02/04/2008     Page 4 of 7

claims (set forth in the moving papers at 13).>

Replace with: <Specifically, the Court grants Mattel's request to take the individual depositions relating to the Bratz claims (set forth in the moving papers at 9-11), relating to the trade secret and RICO claims (set forth in the moving papers at 13), and relating to document preservation (set forth in the moving papers at 14 (Joe Tiongco and Daphne Gronich)).>

(8)     The Court's January 7, 2008, Order granted leave to take additional discovery over and above the previously allocated 24 depositions per side. Nevertheless, as to all other depositions, how to "count" the previously allocated depositions is left to the discretion of the Discovery Master.

(9)     At the hearing, counsel for Christensen, Glaser requested that the Court clarify that its January 7, 2008, ruling granted leave to depose it on only one issue. That is not the case, and the request is DENIED. Mattel has been granted relief from the numerical limitations that previously restricted its ability to depose those individuals and entities addressed by the Court's January 7, 2008, Order, including its ability to depose Christensen, Glaser. Unless otherwise restricted by the Discovery Master upon proper presentation of the issue to him, Mattel may depose Christensen, Glaser on any relevant, non-privileged matter.

### MACHADO GOMEZ'S EX PARTE APPLICATION RE
### JANUARY 7, 2008, ORDER (DOCKET # 1504)

This application is GRANTED. As noted above, Phase 2 discovery is STAYED until further order of the Court. The Court will address Phase 2 discovery, motions, pretrial, and trial dates after the conclusion of Phase 1 of the trial.

### MATTEL'S EX PARTE APPLICATION RE MOTION TO COMPEL PRODUCTION OF
### ELECTRONIC MEDIA FROM THIRD PARTIES (DOCKET #1538)

This application is DENIED. This matter must be addressed in the first instance by the Discovery Master.

### MATTEL'S EX PARTE APPLICATION TO ENFORCE COURT'S ORDERS
### COMPELLING PRODUCTION OF TANGIBLE ITEMS (#1624)

This application is GRANTED IN PART. Counsel for MGA shall employ its best efforts to arrange for shipment of those tangible things located in the Peoples' Republic of China ("PRC") to Hong Kong Special Administrative Region ("Hong Kong") for examination in conjunction with those tangible things already located in Hong Kong. Otherwise, counsel for MGA shall cooperate in the

EXHIBIT ___9___
PAGE ___55___

arrangements for inspection in both Hong Kong and the PRC.   Mattel's request for costs is denied without prejudice.

Counsel are encouraged to meet and confer with the intent of reaching a stipulation regarding the supplementation of expert reports.   Absent such stipulation, at the appropriate time, the Court will entertain an ex parte application from any party regarding this issue.

## MATTEL'S EX PARTE APPLICATION TO STAY PENDING REVIEW OF DISCOVERY MASTER'S JANUARY 11, 2008 ORDER (DOCKET # 1628)

This application is GRANTED IN PART.   The Court sets the motion for hearing on February 11, 2008.   Opposition shall be filed no later than February 6, 2008; any reply shall be filed no later than February 8, 2008.   The Discovery Master's January 11, 2008, Order is stayed until the issuance of the Court's minute order regarding the February 11, 2008, hearing.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN

5

Initials of Deputy Clerk __jh_____
Time: 1/45

EXHIBIT ____9_____

PAGE ____56_____

Case 2:04-cv-09049-SGL-RNB    Document 1931    Filed 02/04/2008    Page 6 of 7

## NOTICE PARTY SERVICE LIST

Case No.  CV 04-09049 SGL(RNBx)    Case Title  Carter Bryant v. Mattel, Inc.

Title of Document  Minute Order of February 4, 2008

| |
|---|
| Atty Sttlmnt Officer Panel Coordinator |
| BAP (Bankruptcy Appellate Panel) |
| Beck, Michael J (Clerk, MDL Panel) |
| BOP (Bureau of Prisons) |
| CA St Pub Defender (Calif. State PD) |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| Case Asgmt Admin (Case Assignment Administrator) |
| Catterson, Cathy (9th Circuit Court of Appeal) |
| Chief Deputy Admin |
| Chief Deputy Ops |
| Clerk of Court |
| Death Penalty H/C (Law Clerks) |
| Dep In Chg E Div |
| Dep In Chg So Div |
| Federal Public Defender |
| Fiscal Section |
| Intake Section, Criminal LA |
| Intake Section, Criminal SA |
| Intake Supervisor, Civil |
| PIA Clerk - Los Angeles (PIALA) |
| PIA Clerk - Riverside (PIAED) |
| PIA Clerk - Santa Ana (PIASA) |
| PSA - Los Angeles (PSALA) |
| PSA - Riverside (PSAED) |
| PSA - Santa Ana (PSASA) |
| Schnack, Randall (CJA Supervising Attorney) |
| Statistics Clerk |

| |
|---|
| US Attorneys Office - Civil Division -L.A. |
| US Attorneys Office - Civil Division - S.A. |
| US Attorneys Office - Criminal Division -L.A. |
| US Attorneys Office - Criminal Division -S.A. |
| US Bankruptcy Court |
| US Marshal Service - Los Angeles (USMLA) |
| US Marshal Service - Riverside (USMED) |
| US Marshal Service -Santa Ana (USMSA) |
| US Probation Office (USPO) |
| US Trustee's Office |
| Warden, San Quentin State Prison, CA |

| ✓ | *ADD NEW NOTICE PARTY*<br>(if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*:  P.O. Box 581103

Salt Lake City,  UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |
| |

Initials of Deputy Clerk  jh

G-75  (03/07)                    NOTICE PARTY SERVICE LIST

EXHIBIT   9

PAGE   57

## NOTICE PARTY SERVICE LIST

**Case No.**   CV 04-09049 SGL(RNBx)   **Case Title** Carter Bryant v. Mattel, Inc.

**Title of Document**   Minute Order of February 4, 2008

| |
|---|
| Atty Sttlmnt Officer Panel Coordinator |
| BAP (Bankruptcy Appellate Panel) |
| Beck, Michael J (Clerk, MDL Panel) |
| BOP (Bureau of Prisons) |
| CA St Pub Defender (Calif. State PD) |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| Case Asgmt Admin (Case Assignment Administrator) |
| Catterson, Cathy (9th Circuit Court of Appeal) |
| Chief Deputy Admin |
| Chief Deputy Ops |
| Clerk of Court |
| Death Penalty H/C (Law Clerks) |
| Dep In Chg E Div |
| Dep In Chg So Div |
| Federal Public Defender |
| Fiscal Section |
| Intake Section, Criminal LA |
| Intake Section, Criminal SA |
| Intake Supervisor, Civil |
| PIA Clerk - Los Angeles (PIALA) |
| PIA Clerk - Riverside (PIAED) |
| PIA Clerk - Santa Ana (PIASA) |
| PSA - Los Angeles (PSALA) |
| PSA - Riverside (PSAED) |
| PSA - Santa Ana (PSASA) |
| Schnack, Randall (CJA Supervising Attorney) |
| Statistics Clerk |

| |
|---|
| US Attorneys Office - Civil Division -L.A. |
| US Attorneys Office - Civil Division - S.A. |
| US Attorneys Office - Criminal Division -L.A. |
| US Attorneys Office - Criminal Division -S.A. |
| US Bankruptcy Court |
| US Marshal Service - Los Angeles (USMLA) |
| US Marshal Service - Riverside (USMED) |
| US Marshal Service -Santa Ana (USMSA) |
| US Probation Office (USPO) |
| US Trustee's Office |
| Warden, San Quentin State Prison, CA |

| ✓ | ***ADD NEW NOTICE PARTY*** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address *(include suite or floor)*:  Two Embarcadero

Center, Suite 1500, San Francisco, CA 94111

*E-mail:

*Fax No.:

* For CIVIL cases only

| ***JUDGE / MAGISTRATE JUDGE (list below):*** |
|---|
| |
| |
| |
| |

**Initials of Deputy Clerk** jh

EXHIBIT _9_

PAGE _58_

# EXHIBIT 10

CALENDARED

**RECEIVED**

**JAN 0 8 2009**

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                    Date: January 6, 2009

Title:    MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
==========================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

              James Holmes                         None Present
              Courtroom Deputy Clerk               Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                            None Present

PROCEEDINGS:   ORDER APPOINTING DISCOVERY MASTER

        As in Phase 1 of this case, the Court intends to appoint a Discovery Master to govern any
discovery disputes that might arise in Phase 2 of this case.  The appointment of the Discovery
Master was made at the joint request of the parties in this case.  See Stipulation for Appointment of
a Discovery Master and Order, December 6, 2006.

        Pursuant to Federal Rule of Civil Procedure 53(a)(1)(C), the Court continues to believe that
a Discovery Master, as opposed to the assigned Magistrate Judge, is necessary to address what
MGA has aptly described to the Court as "the massive administrative burdens in time and labor
necessary to deal with the enormous complexities, both legal and practical, of the issues in Phase
2" and the "sheer volume of complex civil discovery disputes likely to arise in Phase 2."  Based on
the Court's experience in this case, there is no question that a Discovery Master is needed to
"effectively and timely" address the anticipated discovery matters in this case.

        The Court previously submitted to all counsel of record the names of eight attorneys for
consideration by the parties and invited counsel to submit, in camera, any objections to those
attorneys to serve as a Discovery Master (or as a Special Master to oversee the implementation of
the permanent injunction, if needed).  The Court has carefully considered the objections submitted.
Two of the individuals named were not the subject of an objection by any party.  Of those two, the
Court selects Robert C. O'Brien of Arent, Fox to serve as Discovery Master for Phase 2 of this

MINUTES FORM 90                                              Initials of Deputy Clerk: jh
CIVIL -- GEN                          1

01-06

EXHIBIT   10

PAGE   59

case.

The Discovery Master will serve under the terms and conditions of the Stipulation and Order
dated December 6, 2006, the terms and conditions of which were previously agreed to by the
parties. The stay on discovery for Phase 2 of this case is hereby VACATED.

Notwithstanding the parties' stated lack of objection to the appointment of Mr. O'Brien as
Discovery Master, the Discovery Master is directed to promptly disclose to counsel for all parties
any potential grounds for conflict of interest or disqualification, and the parties shall, within three
days of receipt of said disclosure, submit any objection to the Court in camera.   A failure to object
will be deemed by the Court as a waiver of any objections and consent to Mr. O'Brien to serve as
Discovery Master. The Discovery Master is further directed to contact counsel for all parties and
resolve any and all outstanding discovery motions as expeditiously as possible.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN

2

Initials of Deputy Clerk: jh

EXHIBIT ____ *10*

PAGE ____ *60*