# EXHIBIT 21

**Cyrus Naim**

**From:**   Jon Corey

**Sent:**   Friday, March 27, 2009 4:48 PM

**To:**   Richard Stoll

**Subject:** Mattel, Inc. v. MGA Entertainment, Inc. et al.

Rich,

Following up on the voicemail I left you, please give me a call to discuss the status of the draft stipulation which we had sent back
to you on February 12, 2009, but which we have no record of any further response by you.

Best regards,

Jon Corey
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail:  joncorey@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named
above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If
the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are
hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this
message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete
the original message.

EXHIBIT ___21___

PAGE ___94___

# EXHIBIT 22

**Cyrus Naim**

**From:** Jon Corey
**Sent:** Tuesday, March 31, 2009 10:34 AM
**To:** Jon Corey; 'Richard Stoll'
**Subject:** RE: Mattel, Inc. v. MGA Entertainment, Inc. et al.

Richard,

I have received no response to my voice-mail message or my e-mail message. Please call me to discuss.

Best regards,


Jon Corey

Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: joncorey@quinnemanuel.com
Web: www.quinnemanuel.com


---

**From:** Jon Corey
**Sent:** Friday, March 27, 2009 4:48 PM
**To:** Richard Stoll
**Subject:** Mattel, Inc. v. MGA Entertainment, Inc. et al.

Rich,

Following up on the voicemail I left you, please give me a call to discuss the status of the draft stipulation which we had sent back to you on February 12, 2009, but which we have no record of any further response by you.

Best regards,


Jon Corey
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: joncorey@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT _22_

PAGE _95_

3/31/2009

# EXHIBIT 23

REDACTED

REDACTED

REDACTED

**From:** Richard Stoll [mailto:rstoll@glaserweil.com]
**Sent:** Tuesday, March 31, 2009 6:22 PM
**To:** Jon Corey
**Cc:** Amman Khan
**Subject:** RE: Mattel, Inc. v. MGA Entertainment, Inc. et al.

Dear Jon:

We offered back in February to sign a stipulation if you took your Renewed Motion off-calendar, however, Mattel refused to do so with respect to Request Nos. 87 and 88 concerning MGA's personnel and vendor files. Because you did not take the Renewed Motion off-calendar, we did not sign the stipulation, and we will not do so now. In any event, the issue is moot. MGA has now produced approximately 95% of the documents it agreed to produce and the production is nearly complete. We have received Mr. Zeller's letters specifying the documents and images that you claim are blank or illegible, and as you know, we have already provided a disc with corrected JPEG images. We will, of course, examine each of the documents listed in Mr. Zeller's letters and provide corrected versions where appropriate.

Best,
Rich


**Richard G. Stoll | Glaser, Weil, Fink, Jacobs & Shapiro LLP**
10250 Constellation Boulevard, 19th Floor, Los Angeles, California 90067
main: 310.553.3000 | direct: 310.556.7812 | fax: 310.556.2920 | rstoll@glaserweil.com

This message and any attached documents may contain information from the law firm of Glaser, Weil, Fink, Jacobs & Shapiro, LLP that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute or use this information. If you have received this transmission in error, please notify the sender immediately by reply e-mail and then delete this message.

EXHIBIT ___23___

PAGE ___96___

4/1/2009

**From:** Jon Corey [mailto:joncorey@quinnemanuel.com]
**Sent:** Tuesday, March 31, 2009 10:34 AM
**To:** Jon Corey; Richard Stoll
**Subject:** RE: Mattel, Inc. v. MGA Entertainment, Inc. et al.

Richard,

I have received no response to my voice-mail message or my e-mail message.  Please call me to discuss.

Best regards,


Jon Corey

Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  joncorey@quinnemanuel.com
Web:  www.quinnemanuel.com




**From:** Jon Corey
**Sent:** Friday, March 27, 2009 4:48 PM
**To:** Richard Stoll
**Subject:** Mattel, Inc. v. MGA Entertainment, Inc. et al.

Rich,

Following up on the voicemail I left you, please give me a call to discuss the status of the draft stipulation which we had sent back to you on February 12, 2009, but which we have no record of any further response by you.

Best regards,


Jon Corey
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  joncorey@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT ____23____

PAGE ____97____

4/1/2009

# EXHIBIT 24

1   DALE M. CENDALI (admitted *pro hac vice*)
     DIANA M. TORRES (S.B. #162284)
2   JAMES P. JENAL (S.B. # 180190)
     O'MELVENY & MYERS LLP
3   400 South Hope Street
     Los Angeles, CA 90071-2899
4   Telephone: (213) 430-6000
     Facsimile: (213) 430-6407
5   Email:     jjenal@omm.com

6   PATRICIA GLASER (S.B. #55668)
     CHRISTENSEN, GLASER, FINK,
7   JACOBS, WEIL & SHAPIRO, LLP
     10250 Constellation Boulevard, 19th Floor
8   Los Angeles, CA 90067
     Telephone: (310) 553-3000
9   Facsimile: (310) 557-9815

10   Attorneys for MGA Entertainment, Inc.

11   DOUGLAS A. WICKHAM (S.B. #127268)
     KEITH A. JACOBY (S.B. #150233)
12   LITTLER MENDELSON
     A Professional Corporation
13   2049 Century Park East, 5th Floor
     Los Angeles, CA 90067.3107
14   Telephone: (310) 553-0308
     Facsimile: (310) 553-5583

15   Attorneys for Carter Bryant

16               UNITED STATES DISTRICT COURT

17              CENTRAL DISTRICT OF CALIFORNIA

18                  EASTERN DIVISION

| | |
|---|---|
| 19   CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727) |
|           Plaintiff, | |
| 20      v. | **DISCOVERY MATTER** |
| 21   MATTEL, INC., a Delaware Corporation, | **MGA AND BRYANT'S JOINT MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND THE DEPOSITION OF 30(B)(6) WITNESSES** |
| 22           Defendant. | |
| 23 | |
| 24   CONSOLIDATED WITH | [To be heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant to the Court's Order of December 6, 2006] |
| 25   MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. | |
| 26   MATTEL, INC. | |

27

28

1-5-07

EXHIBIT 24

PAGE 98

1       This memorandum of points and authorities is filed in support of MGA

2   Entertainment, Inc.'s ("MGA") and Carter Bryant's ("Bryant") motion to compel

3   Mattel, Inc. ("Mattel") to produce documents responsive to MGA's requests and the

4   depositions of witnesses designated by Mattel under Federal Rule of Civil

5   Procedure 30(b)(6) in the case originally captioned *Mattel, Inc. v. Bryant,* Case No.

6   CV 04-9059 SGL (RNBx).

7   **I.     INTRODUCTION**

8       While these consolidated cases are quite complex, the two issues raised by

9   this motion could not be simpler.  The first issue concerns discovery at the core of

10  MGA and Bryant's statute of limitations and laches defenses.  There is no dispute

11  that in 2002 Mattel CEO Robert Eckert received an anonymous letter informing

12  him that a former Mattel employee – Bryant – had allegedly created the "Bratz"

13  dolls while at Mattel and taken that creation to MGA.  It is also undisputed that Mr.

14  Eckert forwarded the letter to Alan Kaye, Mattel's Vice President of Human

15  Resources, who, at Mr. Eckert's direction, instructed Richard de Anda, Mattel's

16  Vice President of World Wide Security, to conduct an investigation.  But there

17  Mattel has drawn the line, refusing to produce any documents or permit any

18  testimony related to this investigation.  Yet despite its vague claim of privilege,

19  Mattel refuses to detail the withheld documents on its privilege log as required by

20  the Rules.  Mattel's claim of privilege cannot withstand scrutiny, and an order

21  allowing MGA this critical discovery is warranted.

22      The second issue is even more straight-forward.  A year-and-a-half ago

23  Mattel, as part of a lengthy meet and confer process, set forth in a letter a list of

24  witnesses in response to Bryant's Rule 30(b)(6) deposition notice, which had been

25  served in 2004.  The timing for those depositions was interrupted by a stay while

26  Mattel appealed Judge Manella's order keeping this case in Federal court.  The

27  Ninth Circuit having affirmed, the stay was lifted on May 16, 2006.  Nonetheless,

28  despite numerous requests over the past several months, Mattel has refused to offer

- 2 -

EXHIBIT ___24___

PAGE ___99___

1  any deposition dates for the majority of these witnesses.  An order directing Mattel

2  to make all of its remaining 30(b)(6) witnesses available for deposition by February

3  28, 2007, is therefore both necessary and proper.

4  **II.  FACTUAL BACKGROUND**

5  **A.  MGA's "Bratz" Dolls Challenge Mattel's "Barbie"**

6  For over forty years, Mattel's "Barbie" dominated the doll industry.

7  Introduced in 1959, the original "Barbie" doll grew to be enormously popular in a

8  relatively short period of time. *Id.* Due largely to the success of its "Barbie" line,

9  Mattel became one of the world's largest toymakers.  Barbie's popularity began to

10  fade in the late 1990s, however, as the line had come to appeal only to young girls.

11  Mattel, unable to attract the influential "tween" market (*i.e.*, children between

12  childhood and adolescence), turned to other products on the assumption that girls in

13  their "tween" years were no longer interested in dolls.

14  MGA, a family-owned business headquartered in Van Nuys, California,

15  began in 1979 as a small consumer electronics business.  In 1987, the company

16  made its first forays into the toy business.  But it was in 2001 that MGA was

17  propelled into the limelight – and onto Mattel's radar screen – when it introduced

18  its own, innovative line of fashion dolls named the "Bratz," which demonstrated the

19  ability to do what no other fashion doll had done before – go head-to-head with

20  Mattel's "Barbie".

21  The "Bratz" dolls were based on drawings originally created in 1998 by

22  Carter Bryant, a former Mattel employee who became, and remains, a consultant to

23  MGA.  "Bratz" dolls have a hip, edgy look and "attitude" very unlike the "Barbie"

24  doll – or, at that time, any other doll.  And, unlike "Barbie," the "Bratz" dolls

25  appealed to precisely the "tween" age girls that Mattel had considered unreachable.

26  In 2002, only one year after launch, the "Bratz" dolls supplanted "Barbie" as the

27  top selling fashion doll for six consecutive months.  In response, Mattel rushed to

28  introduce its own line of "hip" fashion dolls, including the now-abandoned

- 3 -

MGA AND BRYANT'S JOINT MOTION TO
COMPEL THE PRODUCTION OF DOCUMENTS
CV 04-09049 SGL (RNBX)

EXHIBIT ____𝒶𝓁____

PAGE ____160____

1     "Flavas" dolls and the "My Scene" line, but MGA's "Bratz" dolls remained popular

2     -- too popular for Mattel's liking.

3         After failing to beat the "Bratz" dolls in the marketplace, Mattel took to the

4     courts. On April 27, 2004, Mattel brought this action in state court against Bryant,

5     alleging breach of contract, breach of fiduciary duty, breach of the duty of loyalty,

6     conversion and unjust enrichment. Given references in Mattel's complaint to its

7     allegedly stolen "intellectual property," Bryant, a resident of Missouri, removed the

8     case to federal court. Mattel, however, moved to remand, claiming that it did not

9     know whether $75,000 was in controversy, and insisting that it was asserting claims

10     based on state law only, not copyright infringement. Based on Mattel's denials, the

11     case was remanded to state court.[1]

12         With the case seemingly safely ensconced in state court, Mattel produced

13     documents and made admissions that left no doubt about the potential value of its

14     claims. Included in its post-remand production of documents was a letter dated

15     August 5, 2002, addressed to Mattel CEO Robert Eckert from an anonymous source

16     (the "2002 Anonymous Letter"), alleging that Bryant stole the idea for "Bratz" from

17     Mattel. Shortly thereafter, Bryant removed the case again, and this time Mattel's

18     motion for remand – in which it claimed it *still* did not know whether $75,000 was

19     in controversy and *still* was not alleging copyright infringement – was denied.

20         Now, over two-and-a-half years after filing suit against Bryant and nearly

21     two years after the initiation of the discovery disputes presented here, Mattel has

22     filed a motion for leave to amend its complaint to add claims against MGA and

23     Bryant for, among other things, the very claim it has denied all along – copyright

24     infringement. That claim, and several others to which it now seeks to add MGA,

25

26   [1] Indeed, throughout this litigation, Mattel has steadfastly claimed that this case involved only
state-law employment related claims and that "Mattel has not asserted copyright infringement
27   claims against Bryant in this action." And, as recently as June 2006, Mattel stated in writing that
Bryant had no reasonable apprehension of a copyright infringement claim. Based on these
28   assertions, Mattel has refused to date to produce discovery related to the theory Bryant and MGA
long suspected Mattel intended to assert -- copyright infringement. *See* Torres Decl. ¶ 11.

MGA AND BRYANT'S JOINT MOTION TO
COMPEL THE PRODUCTION OF DOCUMENTS
CV 04-09049 SGL (RNBX)

EXHIBIT ____24____

PAGE ____161____

1   has a three year statute of limitations.  17 U.S.C. § 507(b).  Thus, discovery on the

2   2002 Anonymous Letter and investigation and the likely testimony of Mattel's Rule

3   30(b)(6) witnesses are relevant, *inter alia,* to the statute of limitations and laches.

4       **B.**    **Mattel Stonewalls Discovery of the 2002 Anonymous Letter**

5           **Investigation**

6         MGA and Bryant know one thing – in 2002, Mattel investigated the very

7   same allegations it now seeks to make against them in federal court.  Handwritten

8   notes on the 2002 Anonymous Letter indicate that, at Mr. Eckert's direction, Alan

9   Kaye, Mattel's Vice President of Human Relations, instructed Richard de Anda,

10  Mattel's Vice President of World Wide Security, to conduct an investigation into

11  the letter's allegations that Bryant had worked with MGA on the project that

12  became the "Bratz" dolls while Bryant was still employed at Mattel. (*See*

13  Declaration of Diana M. Torres ("Torres Decl.") ¶ 2, Ex. A.)  At his deposition, Mr.

14  Kaye confirmed that he instructed Mr. de Anda to conduct the investigation and

15  that he had further discussions with Mr. de Anda regarding the investigation, but

16  would not testify about the subject of those discussions because they involved

17  Mattel's counsel. (Torres Decl. ¶ 3, Ex. B (Deposition of Alan Kaye, December 10,

18  2004 ("Kaye Dep.") at 24-27).)

19        Despite this evidence, which makes it clear that Mattel did indeed investigate

20  the allegations contained in the 2002 Anonymous Letter, Mattel has not produced

21  even a single document related to the investigation.  But neither has it made even a

22  single entry onto its privilege log related to this issue.  Mattel has taken this

23  untenable position because it knows that either producing the documents *or* logging

24  them on a privilege log will show that Mattel was well on notice more than four

25  years ago of the very claims it is seeking to bring now.

26        MGA and Bryant have made clear to Mattel their position on this issue, yet

27  Mattel has refused to make any attempt to resolve the dispute without the

28  intervention of this Court.  On January 14, 2005 – nearly two years ago – counsel

EXHIBIT ___24___    - 5 -    MGA AND BRYANT'S JOINT MOTION TO
COMPEL THE PRODUCTION OF DOCUMENTS
CV 04-09049 SGL (RNBX)

PAGE ___102___

1   for the parties engaged in a conference pursuant to Local Rule 37 regarding several

2   outstanding discovery issues. (Torres Decl. ¶ 4.)  Among the many issues presented

3   at this meeting, the parties discussed Mattel's failure to produce documents

4   concerning the 2002 Anonymous Letter or investigation, its instructions not to

5   answer questions at deposition concerning the investigation, and the deficiencies of

6   Mattel's privilege log.  Mattel's counsel *refused to state Mattel's position* on these

7   issues at that conference, or in response to further communications.  (*Id.*)  Similarly,

8   the parties engaged in numerous, lengthy conferences of counsel in August 2006, at

9   which time these subjects were again addressed.  Mattel has steadfastly refused

10  either to produce responsive documents or to supplement its privilege log.  (*Id.* ¶ 5.)

11      **C.     Mattel Fails to Produce for Deposition its 30(b)(6) Witnesses**

12          Mattel's recalcitrant behavior concerning its Rule 30(b)(6) witnesses has

13  gone on even longer than its attempts to stonewall discovery on the 2002

14  Anonymous Letter investigation.  Bryant first served notice seeking to depose

15  Mattel pursuant to Rule 30(b)(6) *on August 20, 2004*, but the case was remanded to

16  state court.  (*Id.* ¶ 6, Ex. C.)  When the case was again removed to federal court,

17  Bryant served a new notice on December 21, 2004.[2]  The deposition (pursuant to

18  the "General Notice") was to commence on January 11, 2005.  (*Id.* ¶ 7, Ex. D.)

19  Mattel never objected to the notice and never moved for a protective order.  (*Id.*)

20          Nonetheless, Mattel continued to stall.  On January 17, 2005, *after* the date

21  set for deposition on the General Notice, Mattel claimed that it had served

22

_____

23  [2] The notice sought testimony from Mattel in the following areas:
      • The existence and enforceability of contractual and non-contractual duties that Mattel
24        alleges Bryant owed to Mattel;
      • Bryant's alleged wrongful acts, including breach of contractual and non-contractual duties
25        and alleged misappropriations/conversions;
      • The damages alleged by Mattel and Mattel's failure to mitigate damages;
26    • Mr. Bryant's affirmative defenses based on statute of limitations and laches; and
      • Issues relating to Mattel's responses to Bryant's discovery requests, including electronic
27        discovery and the duty to preserve evidence.
28  (*See* Torres Decl.¶ 7, Ex. D.)

MGA AND BRYANT'S JOINT MOTION TO
COMPEL THE PRODUCTION OF DOCUMENTS
CV 04-09049 SGL (RNBX)

EXHIBIT ___24___

PAGE ___103___

1   objections on December 29, 2004.  Neither MGA nor Bryant received such

2   objections.  Indeed, when pressed, *Mattel was unable to provide a copy of the*

3   *purported objections or proof of service.*  (*Id.* ¶ 8.)

4          On March 14 and 15, 2005, Bryant, MGA and Mattel engaged in a lengthy

5   Local Rule 7-3 meeting of counsel concerning a variety of outstanding discovery

6   issues.  At this meeting, Mattel agreed to designate and produce its 30(b)(6)

7   witnesses.  (Torres Decl. ¶ 9.)  Two months later, on May 16, 2005, Mattel finally

8   made its long-overdue designations.  (*Id.* Ex. E.)  On May 20, 2005, the Honorable

9   Nora M. Manella issued a stay of all discovery in this case pending the Ninth

10  Circuit's interlocutory review of certain jurisdictional issues.  The discovery stay

11  was lifted on May 16, 2006 and since August, 2006, MGA has been asking Mattel

12  for dates on which to commence the 30(b)(6) depositions.  (*Id.* ¶ 10; Declaration of

13  James P. Jenal ("Jenal Decl.") ¶¶ 2-11.)

14         Since that time, Mattel has produced witnesses for deposition on only two

15  narrow topics – the use of a time-recording system (known as P2) and a computer

16  file storage system (known as Zeus).  Meanwhile, Mattel's counsel, in a manner

17  unfathomable, has either wholly ignored or repeatedly stalled in responding to

18  repeated requests to schedule the depositions of the remaining witnesses.  (Torres

19  Decl. ¶ 10; Jenal Decl. ¶ 2-11.)  As set forth more fully in the accompanying

20  Declaration of James P. Jenal:

21      •   MGA wrote to Mattel on September 29, 2006, concerning a date to
22          conclude the Zeus deposition and for the Email deposition.  Having
            heard nothing, on October 10, 2006 MGA again wrote to Mattel
23          seeking dates for the Zeus, Email and all remaining 30(b)(6)
24          depositions.  In response, Mattel claimed to be preparing a letter to
            address MGA's requests.
25

26      •   Having not received the promised letter, MGA wrote again to Mattel
            on October 13.  Mattel waited a week, finally responding on October
27          20, to offer dates for the conclusion of the Zeus deposition yet another
28          two more weeks hence (November 6-8) and a date for the Email

                                    - 7 -        MGA AND BRYANT'S JOINT MOTION TO
                                                 COMPEL THE PRODUCTION OF DOCUMENTS
                                                 CV 04-09049 SGL (RNBX)

EXHIBIT ___24___

PAGE ___104___

Deposition nearly seven weeks off (December 6). Mattel's letter ignored completely MGA's requests regarding the remaining 30(b)(6) witnesses.

- On October 31, though given no reasons for the delay of either deposition, MGA agreed to one of the dates suggested for the Zeus deposition but requested that Mattel set a date in November for the Email Deposition and again reminded Mattel of its obligations to produce for deposition witnesses on the remaining 30(b)(6) topics.

- On November 10, without having heard from Mattel, MGA sent Mattel an email agreeing to go forward with the Email Deposition on December 6. And, yet again, MGA also asked Mattel for a response regarding the additional 30(b)(6) witnesses – a response that MGA had been requesting since September.

- On November 14, Mattel unilaterally cancelled the Email Deposition, claiming that "the focus of the parties [sic] efforts should be to reach agreement upon a discovery master" – even though Mattel had agreed to these depositions in a letter a year-and-a-half earlier and it was Mattel who had refused -- for a year and a half -- to agree to a discovery master.

- On November 21 and 30, MGA again wrote to Mattel inquiring as to the Email Deposition. Mattel responded on December 1, now claiming that the witness it had designated for its Email Deposition was unavailable on the agreed-upon date – December 6 – or at any time prior to January 16 ostensibly because Mattel had recently acquired another company. Again, Mattel ignored completely MGA's repeated requests regarding the additional, outstanding 30(b)(6) topics.

- On December 4, MGA asked Mattel to designate a new witness – one available before year's end – for its Email Deposition but Mattel refused to do so and has agreed to produce that witness only *after* the hearing on its motion for leave to amend its complaint.

- Mattel has *never* responded to MGA's numerous requests concerning the other witnesses Mattel designated pursuant to Rule 30(b).

(*See* Jenal Decl. ¶¶ 2-11, Exs. F-P.)

EXHIBIT 24
PAGE 105

- 8 -

III.  **ARGUMENT**

    A.  **Mattel Should Be Ordered to Produce Evidence Related to the 2002 Anonymous Letter and Investigation or To Enter the Evidence Into Its Privilege Log**

The evidence relating to the 2002 Anonymous Letter and investigation is inarguably responsive to multiple discovery requests[3] and relevant to this litigation. Indeed, the mere existence of such evidence – regardless of whether its content is deemed privileged – is highly relevant to determining the point in time at which Mattel was on notice of the claims it now seeks to bring. This discovery therefore is essential to the statute of limitations and laches defenses for Bryant and MGA.

    1.  **Mattel Should Be Ordered To Produce The Evidence Relating to the 2002 Anonymous Letter and Investigation Because It Has No Basis For Claiming Privilege and Because It Has Refused To Log That Evidence on a Privilege Log**

Under well-established principles, the attorney client privilege and attorney work product doctrine provide strong but narrow protection from disclosure. The attorney-client privilege protects confidential communications between an attorney and client made *only for the purpose of securing legal advice from the attorney.* *See Weatherford v. Bursey*, 429 U.S. 545, n. 4 (1977) (citing *Fisher v. United States*, 425 U.S. 391, 402-405 (1976)); *United States v. Austin*, 416 F.3d 1016, 1022 (9th Cir. 2005). It does not shield evidence from discovery merely because such evidence was transmitted, at some point, to an attorney. *See D.I. Chadbourne, Inc. v. Sup. Court of the City and County of San Francisco*, 60 Cal. 2d 723, 737 (Cal. 1964) (employee witness to matters then communicated to corporation's attorneys "is an independent witness; and the fact that the employer requires him to make a statement for transmittal to the latter's attorney does not alter his status or make his statement subject to the attorney-client privilege.").

Similarly, the work-product doctrine serves to guard against divulging the

---

[3] At a minimum, the documents are responsive to the following requests by Bryant, Nos. 3, 5, 15, 17, 18, 28, 31, 35, and 36. *See* Jenal Decl. ¶ 12, Ex. Q.

MGA AND BRYANT'S JOINT MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS CV 04-09049 SGL (RNBX)

EXHIBIT __21__
PAGE __106__

1  attorney's strategies and legal impressions. It does not shield the underlying facts

2  from discovery simply because the party's attorney later learned those facts. *See*

3  *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("Because the

4  work product doctrine is intended only to guard against divulging the attorney's

5  strategies and legal impressions, it does not protect facts concerning the creation of

6  work product or facts contained within work product."); *Nutmeg Insurance Co. v.*

7  *Atwell, Vogel & Sterling, et al.*, 120 F.R.D. 504, 509 (W.D. La. 1988) ( "courts

8  have consistently held that the work-product concept furnishes no shield against

9  discovery . . . of the facts that the adverse party's lawyer has learned, or the persons

10  from whom he has learned such facts, or the existence or non-existence of

11  documents..."). Moreover, evidence is not protected by the work-product doctrine

12  unless it was prepared "in anticipation of litigation." Fed. R. Civ. P. 26(b)(3);

13  *Martin v. Valley Nat. Bank of Arizona*, 140 F.R.D. 291, 304 (S.D.N.Y. 1991) ("It

14  follows, then, that if a party prepares a document in the ordinary course of its

15  business, it will not be protected even if the party is aware that the document may

16  also be useful in the event of litigation."). As the court explained in *Binks Mfg. Co.*

17  *v. National Presto Indus., Inc.*, "[a] more or less routine investigation of a possibly

18  resistable claim is not sufficient to immunize an investigative report developed in

19  the ordinary course of business." 709 F.2d 1109, 1118-19 (7th Cir. 1983).

20  From what little discovery Mattel has allowed of the 2002 Anonymous Letter

21  and investigation, it does not appear to be protected by either the attorney client

22  privilege or the work product doctrine. As set forth above, the 2002 Anonymous

23  Letter is addressed to Mattel's Chief Executive Officer Robert Eckert. It bears a

24  stamp indicating that it was received by Mr. Eckert on August 5, 2002. It also

25  bears a handwritten note from Mr. Eckert to Mr. Kaye in which Mr. Eckert requests

26  that Mr. Kaye task Mr. de Anda with investigating the allegations contained therein.

27  Mr. Kaye, pursuant to the directive of Mr. Eckert, then instructed Mr. de Anda to

28  conduct the investigation. Although Mr. de Anda may have conducted the

- 10 -

EXHIBIT ____24____

PAGE ____107____

1   investigation with counsel, it is clear from the limited testimony that Mattel has

2   allowed that it was not performed for the purpose of obtaining legal advice nor was

3   it performed at the initiation of counsel. And, because Mattel maintains that it had

4   no basis for believing a claim against Bryant or MGA existed prior to November,

5   2003, Mattel has *never* claimed that it was conducted in anticipation of litigation.

6   Accordingly, Mattel's refusal to produce documents related to the 2002

7   Anonymous Letter and its similar refusal to allow questioning about the

8   investigation is improper.

9         Mattel's assertion of privilege and simultaneous refusal to produce a

10   privilege log is an independent basis on which to order Mattel to produce the

11   documents and testimony concerning the 2002 Anonymous Letter and

12   investigation. Fed. R. Civ. P. 26(b)(5); *see U.S. v. Construction Prods. Research,*

13   *Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (denying protection of privilege where party

14   produced a deficient privilege log). Indeed, Mattel's complete failure to include

15   any reference to documents related to the 2002 Anonymous Letter and investigation

16   in its privilege log supports a finding that any claim of privilege that Mattel may

17   assert as to such documents has been waived. *See Construction Prods. Research,*

18   *Inc.*, 73 F.3d at 473.

19         2.   **Mattel Must Provide a Complete Privilege Log and Identify the Basis for Its Instructions Not to Answer**

20

21         Mattel cannot have it both ways – it cannot withhold documents or

22   information on the grounds of privilege, yet refuse to provide a log setting forth the

23   specific privilege asserted. A privilege log is critical to a party's ability to assess

24   and, if appropriate, challenge the assertion of privilege over each document

25   withheld. If Mattel is allowed to withhold documents on the basis of privilege, it

26   should be required to log them. Similarly, Mattel should be required to state the

27   specific basis for instructing its witnesses not to provide testimony that it claims,

28   vaguely, is "privileged." Only in this way will MGA and Bryant be able to

EXHIBIT ___24___

PAGE ___108___

- 11 -

MGA AND BRYANT'S JOINT MOTION TO
COMPEL THE PRODUCTION OF DOCUMENTS
CV 04-09049 SGL (RNBX)

1   challenge what they believe are Mattel's improper assertions of privilege.

2       In this case, a privilege log and the specific identification of the privileges
3   Mattel asserts will also serve another purpose – to show that Mattel's claims are
4   time barred. To withhold documents or testimony on the basis of a claimed
5   privilege, Mattel must aver that the documents or information it seeks to withhold
6   either reflect legal advice or were prepared in anticipation of litigation. By doing
7   so, however, Mattel will be admitting that many of the claims in Mattel's proposed
8   amended complaint, including its newly minted copyright infringement claim, are
9   time barred. Mattel should not be allowed to abuse the rules of discovery to avoid
10  making this fatal admission. Accordingly, Mattel should be ordered to provide a
11  proper privilege log identifying any documents withheld on the grounds of
12  privilege and the basis for its claim and, to avoid further delay, to produce the
13  documents it claims to be privileged for *in camera* inspection.

14      **B.   Mattel Should Be Compelled to Produce Its 30(b)(6) Witnesses**

15      In order to mount even a basic defense, MGA and Bryant require – and
16  Mattel should be ordered to provide – the testimony sought in Bryant's 30(b)(6)
17  notices. These notices – *served in 2004* – request, among other things, that Mattel
18  provide key testimony regarding the factual bases for its causes of action and
19  demands for relief and for information relating to Bryant's statutes of limitations
20  and laches defenses. There is no dispute about the relevance or appropriateness of
21  these remaining 30(b)(6) depositions – Mattel waived any such objections by
22  agreeing to them in its May 16, 2005 letter. Nonetheless, since the stay was lifted,
23  Mattel has refused to respond to MGA's repeated requests for deposition dates.
24  Mattel should be ordered to produce its witnesses on a date convenient to MGA and
25  Bryant no later than February 14, 2007.

26  **IV.   CONCLUSION**

27      For the foregoing reasons, the Court should grant MGA and Bryant's Joint
28  Motion to Compel Mattel to produce documents in response to MGA's request, to

EXHIBIT __24__          - 12 -          MGA AND BRYANT'S JOINT MOTION TO
                                        COMPEL THE PRODUCTION OF DOCUMENTS
PAGE __109__                            CV 04-09049 SGL (RNBX)

Fax sent by   : 3105538720          Robert F. Millman          01/05/07   15:35   Pg:   2/2

1 | permit the re-examination of Mr. Kaye, to require Mattel to log any documents

2 | withheld on the grounds of privilege and to produce its witnesses for deposition.

3

4 |       Dated: January 5, 2007              O'MELVENY & MYERS LLP

5

6 |                                           By: James P. Jena
  |                                           Attorneys for MGA Entertainment, Inc.

7 |                                           LITTLER MENDELSON

8

9 |                                           By: Keith A. Jacoby
  |                                           Attorneys for Carter Bryant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   - 13 -     MGA AND BRYANT'S JOINT MOTION TO
                                              COMPEL THE PRODUCTION OF DOCUMENTS
                                              CV 04-09049 SGL (RNBX)

EXHIBIT ___24___,

PAGE ___110___

## PROOF OF SERVICE

I, Karen A. Nakatsu, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On January 5, 2007, I served the within document:

> MGA AND BRYANT'S JOINT MOTION TO COMPEL
> THE PRODUCTION OF DOCUMENTS AND THE
> DEPOSITION OF 30(B)(6) WITNESSES

☒ by causing to be personally served and by sending by electronic mail the document(s) listed above to the person(s) listed below.

> Jon Corey, Esq.
> Quinn Emanuel Urquhart Oliver & Hedges, LLP
> 865 South Figueroa Street, 10th Floor
> Los Angeles, CA 90017
> jcorey@quinnemanuel.com

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit and also by sending by electronic mail the document(s) listed above to the person(s) listed below.

Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East
Fifth Floor
Los Angeles, CA 90067
kjacoby@littler.com

Patricia Glaser, Esq.
Christensen, Glaser, Fink, Jacol
Weil & Shapiro, LLP
10250 Constellation Blvd.
19th Floor
Los Angeles, CA 90067
pglaser@chrimill.com

LA2:820510.1

EXHIBIT _24_

PAGE _111_

PROOF OF SERVICE

1   ☒   by putting a true and correct copy thereof, together with an unsigned co
        of this declaration, in a sealed envelope designated by the carrier, with
2       delivery fees paid or provided for, for delivery the next business day to
        person(s) listed below, and placing the envelope for collection today by
3       the overnight courier in accordance with the firm's ordinary business
        practices. I am readily familiar with this firm's practice for collection a
4       processing of overnight courier correspondence. In the ordinary course
        business, such correspondence collected from me would be processed o
5       the same day, with fees thereon fully prepaid, and deposited that day in
        box or other facility regularly maintained by Fedex, which is an express
6       carrier.

7           Sandra Chan
            Case Manager
8           JAMS
            Two Embarcadero Center, Suite 1500
9           San Francisco, CA 94111
            schan@jamsadr.com
10

11          I declare under penalty of perjury under the laws of the United States

12   that the above is true and correct.

13          Executed on January 5, 2007, at Los Angeles, California.

14                              _Karen  a. Nakatsu_
15                                  Karen A. Nakatsu

16

17

18

19

20

21

22

23

24

25

26

27

28

LA2:820510.1          EXHIBIT ___24___          PROOF OF SERVICE

                      PAGE ___112___

# EXHIBIT 25

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10               UNITED STATES DISTRICT COURT

11               CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

| | |
|---|---|
| 13  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 14        Plaintiff, | Consolidated with |
| 15     vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 16  MATTEL, INC., a Delaware<br>corporation, | MATTEL, INC.'S THIRD SET OF<br>REQUESTS FOR DOCUMENTS AND<br>THINGS TO MGA |
| 17        Defendant. | ENTERTAINMENT, INC. |
| 18 | |
| 19  AND CONSOLIDATED CASES | |
| 20 | |

21

22

23

24

25

26               EXHIBIT __25__

27               PAGE __113__

28                    10-24

07209/2261215.1

1    Pursuant to Rule 34 of the Federal Rules of Civil Procedure,

2   Mattel, Inc. hereby requests that MGA Entertainment, Inc. respond to these

3   document requests ("Requests") and make available for inspection and copying

4   originals of the following documents within 30 days of service at the offices of

5   Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th

6   floor, Los Angeles, CA 90017.  MGA Entertainment, Inc. shall be obligated to

7   supplement responses to these requests at such times and to the extent required by

8   Rule 26(e) of the Federal Rules of Civil Procedure.

9

10   **I.    DEFINITIONS**

11

12    For purposes of these Requests, the following definitions apply:

13    A.    "YOU," "YOUR" and "MGA" mean MGA Entertainment, Inc.

14   and all of its current or former directors, officers, employees, agents, contractors,

15   attorneys, accountants, representatives, subsidiaries, divisions, AFFILIATES,

16   predecessors-in-interest and successors-in-interest, and any other PERSON acting

17   on its behalf, pursuant to its authority or subject to its control.

18    B.    "MATTEL" means Mattel, Inc. and all of its current or former

19   directors, officers, employees, agents, contractors, attorneys, accountants,

20   representatives, subsidiaries, divisions, AFFILIATES, predecessors-in-interest and

21   successors-in-interest, and any other PERSON acting on its behalf, pursuant to its

22   authority or subject to its control.

23    C.    "AFFILIATES" means any and all corporations, proprietorships,

24   d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or

25   indirectly, in whole or in part, own or control, are under common ownership or

26   control with, or are owned or controlled by a PERSON, party or entity, including

27   without limitation each parent, subsidiary and joint venture of such PERSON, party

28   or entity.

07209/2261215.1

EXHIBIT _25_

PAGE ___114___

-2-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

1        D.     "PERSON" or "PERSONS" means all natural persons,
2 partnerships, corporations, joint ventures and any kind of business, legal or public
3 entity or organization, as well as its, his or her agents, representatives, employees,
4 officers and directors and any one else acting on its, his or her behalf, pursuant to
5 its, his or her authority or subject to its, his or her control.

6        E.     "BRATZ" means any project, product, doll or DESIGN ever
7 known by that name (whether in whole or in part and regardless of what such
8 project, product or doll is or has been also, previously or subsequently called) and
9 any product, doll or DESIGN or any portion thereof that is now or has ever been
10 known as, or sold or marketed under, the name or term "Bratz" (whether in whole or
11 in part and regardless of what such product, doll or DESIGN or portion thereof is or
12 has been also, previously or subsequently called) or that is now or has ever been
13 sold or marketed as part of the "Bratz" line, and each version or iteration of such
14 product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or
15 DESIGNS or any portion thereof" also includes without limitation any names,
16 fashions, accessories, artwork, packaging or any other works, materials, matters or
17 items included or associated therewith.  Without limiting the generality of the
18 foregoing, the term "BRATZ" does not and shall not require that there be a doll,
19 product or three-dimensional embodiment existing at the time of the event, incident
20 or occurrence that is the subject of, or otherwise relevant or responsive to, the
21 Requests herein.

22        F.     "SCOOTER SAMANTHA" means any project, product, doll or
23 DESIGN ever known by that name (whether in whole or in part and regardless of
24 what such project, product or doll is or has been also, previously or subsequently
25 called) and any product, doll or DESIGN or any portion thereof that is now or has
26 ever been known as, or sold or marketed under, the name or term "Scooter
27 Samantha" (whether in whole or in part and regardless of what such product, doll or
28 DESIGN or portion thereof is or has been also, previously or subsequently called) or

EXHIBIT _____25_____

PAGE _____1/15_____

1   that is now or has ever been sold or marketed as part of the "Scooter Samantha"

2   line, and each version or iteration of such product, doll or DESIGN or any portion

3   thereof.  As used herein, "product, doll or DESIGNS or any portion thereof" also

4   includes without limitation any names, fashions, accessories, artwork, packaging or

5   any other works, materials, matters or items included or associated therewith.

6   Without limiting the generality of the foregoing, the term "SCOOTER

7   SAMANTHA" does not and shall not require that there be a doll, product or three-

8   dimensional embodiment existing at the time of the event, incident or occurrence

9   that is the subject of, or otherwise relevant or responsive to, the Requests herein.

10          G.     "SPACE BABES" means the project, product, doll or DESIGN

11   referenced in MGA 2144569 or that has ever known by that name (whether in whole

12   or in part and regardless of what such project, product or doll is or has been also,

13   previously or subsequently called) and any product, doll or DESIGN or any portion

14   thereof that is now or has ever been known as, or sold or marketed under, the name

15   or term "Space Babes" (whether in whole or in part and regardless of what such

16   product, doll or DESIGN or portion thereof is or has been also, previously or

17   subsequently called) or that is now or has ever been sold or marketed as part of the

18   "Scooter Samantha" line, and each version or iteration of such product, doll or

19   DESIGN or any portion thereof.  As used herein, "product, doll or DESIGNS or any

20   portion thereof" also includes without limitation any names, fashions, accessories,

21   artwork, packaging or any other works, materials, matters or items included or

22   associated therewith.  Without limiting the generality of the foregoing, the term

23   "SPACE BABES" does not and shall not require that there be a doll, product or

24   three-dimensional embodiment existing at the time of the event, incident or

25   occurrence that is the subject of, or otherwise relevant or responsive to, the Requests

26   herein.

27          H.     "SCOOTER SHANNEN" means any project, product, doll or

28   DESIGN ever known by that name (whether in whole or in part and regardless of

EXHIBIT     25
PAGE        116

-4-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

1   what such project, product or doll is or has been also, previously or subsequently
2   called) and any product, doll or DESIGN or any portion thereof that is now or has
3   ever been known as, or sold or marketed under, the name or term "Scooter Shannen"
4   (whether in whole or in part and regardless of what such product, doll or DESIGN
5   or portion thereof is or has been also, previously or subsequently called) or that is
6   now or has ever been sold or marketed as part of the "Scooter Shannen" line, and
7   each version or iteration of such product, doll or DESIGN or any portion thereof.
8   As used herein, "product, doll or DESIGNS or any portion thereof" also includes
9   without limitation any names, fashions, accessories, artwork, packaging or any other
10  works, materials, matters or items included or associated therewith.  Without
11  limiting the generality of the foregoing, the term "SCOOTER SHANNEN" does not
12  and shall not require that there be a doll, product or three-dimensional embodiment
13  existing at the time of the event, incident or occurrence that is the subject of, or
14  otherwise relevant or responsive to, the Requests herein.

15          I.      "DESIGN" or "DESIGNS" means any and all representations,
16  whether two-dimensional or three-dimensional, and whether in tangible, digital,
17  electronic or other form, including but not limited to all works, designs, artwork,
18  sketches, drawings, illustrations, representations, depictions, blueprints, schematics,
19  diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to
20  practice, developments, inventions and/or improvements, as well as all other items,
21  things and DOCUMENTS in which any of the foregoing are or have been
22  expressed, embodied, contained, fixed or reflected in any manner, whether in whole
23  or in part.

24          J.      "DOCUMENT" or "DOCUMENTS" means all "writings" and
25  "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil
26  Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not
27  limited to, all writings and records of every type and description including, but not
28  limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles,

07209/2261215.1

EXHIBIT  **25**

PAGE  **117**

-5-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

1 electronic mail ("e-mail"), records of telephone conversations, handwritten and
2 typewritten notes of any kind, statements, reports, minutes, recordings, transcripts
3 and summaries of meetings, voice recordings, pictures, photographs, drawings,
4 computer cards, tapes, discs, printouts and records of all types, studies, instruction
5 manuals, policy manuals and statements, books, pamphlets, invoices, canceled
6 checks and every other device or medium by which or through which information of
7 any type is transmitted, recorded or preserved. Without any limitation on the
8 foregoing, the term "DOCUMENT" shall include all copies that differ in any respect
9 from the original or other versions of the DOCUMENT, including, but not limited
10 to, all drafts and all copies of such drafts or originals containing initials, comments,
11 notations, insertions, corrections, marginal notes, amendments or any other variation
12 of any kind.

13         K.     "THIRD-PARTY LAWSUIT" or "THIRD-PARTY
14 LAWSUITS" means any legal proceeding of any kind, including without limitation
15 any suit, lawsuit, action, arbitration or customs proceeding, other than this ACTION.

16         L.     "BRATZ LAWSUITS" means any legal proceeding of any kind,
17 including without limitation any suit, lawsuit, action, arbitration or customs
18 proceeding, other than this ACTION that REFERS OR RELATES to BRATZ,
19 including without limitation each of the following legal actions and each of their
20 associated proceedings and appeals:

21         *MGA Entertainment Inc. v. Wai Man International (H.K.) Limited*
22         *MGA Entertainment inc. v. Sunny Toys Industrial Company Limited*
23         *MGA Entertainment Inc. and Elliot Rudell trading as Rudell Design v.*
24 *Wealth Ocean Industrial Limited*
25         *MGA Entertainment Inc. v. Registrar of Companies & Yokon*
26 *International Limited & Wong Tat*
27         *MGA Entertainment Inc. and MGA Entertainment (H.K.) Limited v.*
28 *Double Grand Corporation Limited*

EXHIBIT   *25*

PAGE   *118*

-6-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

1    *MGA Entertainment Inc. v. Hunglam Toys Company Limited*

2    *MGA Entertainment Inc. v. Union Top (HK) Company Limited*

3    *MGA Entertainment Inc. v. Uni-Fortune Toys Industrial Limited & Fu*

4    *Wei Toys Company Limited*

5    *MGA Entertainment Inc. v. Linwell Industries Limited*

6    *MGA Entertainment Inc. v. Yokon International Limited; Golden City*

7    *Toys Company Limited; Wong Tat*

8    *MGA Entertainment Inc. v. Fu Li Sheng Craft Toy Company Limited*

9    *and Xie Jun Yu trading as Tracy Industrial (H.K.) Company*

10   *Kin Yat Industrial Company Limited v. MGA Entertainment (H.K.)*

11   *Limited*

12   *ABC International Traders doing business as MGA Entertainment v.*

13   *Toys & Trends (Hong Kong) Limited; Cityworld Limited; Jurg Willi Kesselring*

14   *Golden Bright Manufacturer Limited v. MGA Entertainment (HK)*

15   *Limited*

16   *MGA Entertainment (HK) Limited v. Leaves Industries Limited*

17   *Queentex Company Limited v. MGA Entertainment (HK) Limited*

18   *MGA Entertainment (HK) Limited v. Queentex Company Limited*

19   *ABC International Traders doing business as MGA Entertainment v.*

20   *Qualiman Industrial Company Ltd.*

21   *Golden Bright Manufacturer Limited v. Sunlight Electronic Toys*

22   *Larian v. Larian*

23   *MGA Entertainment v. Ubisoft Entertainment S.A.*

24   *MGA Entertainment v. Fun-4-All*

25   *McDonald's Corporation v. MGA Entertainment, Inc. f/k/a ABC*

26   *International Traders*

27   *Karen Dudnikov, Michael Meadors v. MGA Entertainment, Inc.*

28   *Art Attacks Ink, LLC v. MGA Entertainment, Inc.*

EXHIBIT __25__

-7-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

PAGE __119__

1    M.    "INFRINGE" or "INFRINGES" means infringe, dilute, be

2 substantially or confusingly similar to, or otherwise violate any rights in, whether

3 statutory, common law, contractual or otherwise.

4    N.    "REFER OR RELATE TO" means constituting, embodying,

5 containing, referring to, commenting on, evidencing, regarding, discussing,

6 describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting,

7 contradicting, negating, revoking or otherwise relating to in any manner.

8    O.    "IDENTIFY" or "IDENTITY" means the following:

9          (i)    with reference to an individual or individuals, means to

10 state, fully and separately as to each, such individual's full name, any known

11 business title, current or last known business affiliation, current or last known

12 residential address, current or last known business address, current or last known

13 relationship to MGA Entertainment, Inc., and current or last known telephone

14 number.

15         (ii)   with reference to an entity or entities, means to state, fully

16 and separately as to each, such entity's full name, state (or country) of incorporation

17 or organization, present or last known address, and present or last known telephone

18 number.

19    P.    "Any" as used in these Requests includes the word "all," and the

20 word "all" as used in these Requests includes the word "any."

21    Q.    The singular form of a noun or pronoun includes within its

22 meaning the plural form of the noun or pronoun so used, and vice versa; the use of

23 the masculine form of a pronoun also includes within its meaning the feminine form

24 of the pronoun so used, and vice versa; the use of any tense of any verb includes

25 also within its meaning all other tenses of the verb so used, whenever such

26 construction results in a broader request for information; and "and" includes "or"

27 and vice versa, whenever such construction results in a broader disclosure of

28 documents or information.

07209/2261215.1

EXHIBIT    25

PAGE    120

-8-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

1 | II.   **INSTRUCTIONS**

2

3 |      A.   YOU are to produce all requested DOCUMENTS in YOUR

4 | possession, custody or control.

5 |      B.   If YOU contend that YOU are not required to produce certain

6 | DOCUMENTS called for by these Requests on the grounds of a privilege or

7 | protection that YOU are not prepared to waive, identify each such DOCUMENT

8 | and provide the following information:

9 |         1.   the date and type of the DOCUMENT, the author(s) and all

10 |            recipients;

11 |         2.   the privilege or protection that YOU claim permits YOU to

12 |            withhold the DOCUMENT;

13 |         3.   the title and subject matter of the DOCUMENT;

14 |         4.   any additional facts on which YOU base YOUR claim of

15 |            privilege or protection; and

16 |         5.   the identity of the current custodian of the original of the

17 |            DOCUMENT.

18 |      C.   DOCUMENTS shall be produced in their original file folders, or

19 | in lieu thereof, any writing on the file folder from which each such DOCUMENT is

20 | taken shall be copied and appended to such DOCUMENT and the PERSON for

21 | whom or department, division or office for which the DOCUMENT or the file

22 | folder is maintained shall be identified.

23 |      D.   The DOCUMENTS should be produced in their complete and

24 | unaltered form.  Attachments to DOCUMENTS should not be removed.  The

25 | DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for

26 | any reason, including alleged nonrelevance.  If emails are produced that have or had

27 | attachments, the attachments shall be attached when produced.

28 |      E.   DOCUMENTS in electronic form shall be produced in that form.

07209/2261215.1

EXHIBIT   **25**

PAGE   *121*

-9-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

1        **F.**    In the event that any DOCUMENT called for by these requests

2  has been destroyed or discarded, that DOCUMENT is to be identified by stating:

3        1.    the date and type of the DOCUMENT, the author(s) and all

4                recipients;

5        2.    the DOCUMENT's date, subject matter, number of pages, and

6                attachments or appendices;

7        3.    the date of destruction or discard, manner of destruction or

8                discard, and reason for destruction or discard;

9        4.    the PERSONS who were authorized to carry out such destruction

10               or discard;

11       5.    the PERSONS who have knowledge of the content, origins,

12              distribution and destruction of the DOCUMENT; and

13       6.    whether any copies of the document exist and, if so, the name of

14              the custodian of each copy.

15

16  **III.**   **REQUESTS FOR DOCUMENTS AND THINGS**

17

18  <u>REQUEST FOR PRODUCTION NO. 1</u>:

19        A sample of each doll, product or other matter that, whether in whole or

20  in part, YOU have alleged or contended INFRINGES BRATZ in any THIRD-

21  PARTY LAWSUIT, including without limitation in the BRATZ LAWSUITS.

22

23  <u>REQUEST FOR PRODUCTION NO. 2</u>:

24        To the extent not produced in Response to Request No. 1, a sample of

25  each doll, product or other matter that, whether in whole or in part, YOU have

26  alleged or contended, including in any cease and desist letter, INFRINGES BRATZ.

27

28

EXHIBIT   **25**

PAGE   **102**

-10-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

1 | REQUEST FOR PRODUCTION NO. 3:

2         All photographs, digital scans or other depictions of each and every

3 | doll, product or other matter that, whether in whole or in part, YOU have alleged or

4 | contended INFRINGES BRATZ in any THIRD-PARTY LAWSUIT, including

5 | without limitation in the BRATZ LAWSUITS.

6

7 | REQUEST FOR PRODUCTION NO. 4:

8         To the extent not produced in Response to Request No. 3, all

9 | photographs, digital scans or other depictions of each doll, product or other matter

10 | that, whether in whole or in part, YOU have ever alleged or contended, including in

11 | any cease and desist letter, INFRINGES BRATZ.

12

13 | REQUEST FOR PRODUCTION NO. 5:

14         DOCUMENTS sufficient to identify each doll, product or other matter

15 | sold, offered for sale, manufactured, distributed, promoted or advertised by any

16 | PERSON other than MATTEL that YOU have alleged or contended, whether in

17 | whole or in part, INFRINGES BRATZ.

18

19 | REQUEST FOR PRODUCTION NO. 6:

20         All DOCUMENTS that REFER OR RELATE TO any claim or

21 | contention by YOU (other than in this ACTION) that any doll, product or other

22 | matter, whether in whole or in part, that has been sold, offered for sale,

23 | manufactured, distributed, promoted or advertised by any PERSON INFRINGES

24 | BRATZ.

25

26 | REQUEST FOR PRODUCTION NO. 7:

27         All COMMUNICATIONS, including without limitation cease and

28 | desist letters, between YOU and any other PERSON that REFER OR RELATE TO

EXHIBIT __25__

-11-

PAGE __103__

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

1 | any claim or contention by YOU that any doll or product, whether in whole or in
2 | part, sold, offered for sale, manufactured, distributed, promoted or advertised by
3 | such PERSON INFRINGES BRATZ.

4

5 | REQUEST FOR PRODUCTION NO. 8:

6 |         All complaints, statements of claim, counterclaims and answers in the
7 | BRATZ LAWSUITS, including without limitation all amendments thereto.

8

9 | REQUEST FOR PRODUCTION NO. 9:

10 |         All witness lists and other disclosures of witness names or identities in
11 | the BRATZ LAWSUITS, including without limitation all amendments thereto.

12

13 | REQUEST FOR PRODUCTION NO. 10:

14 |         All interrogatory responses by YOU or made on YOUR behalf in the
15 | BRATZ LAWSUITS, including without limitation all amendments thereto.

16

17 | REQUEST FOR PRODUCTION NO. 11:

18 |         All transcripts of proceedings, including all trial and hearing
19 | transcripts, in the BRATZ LAWSUITS, including without limitation all
20 | amendments thereto.

21

22 | REQUEST FOR PRODUCTION NO. 12:

23 |         All transcripts of depositions given by or on behalf of YOU in the
24 | BRATZ LAWSUITS, including without limitation all amendments thereto.

25

26 | REQUEST FOR PRODUCTION NO. 13:

27 |         All pleadings and other DOCUMENTS filed, submitted or served by
28 | YOU in the BRATZ LAWSUITS that REFER OR RELATE TO BRATZ.

07209/2261215.1

EXHIBIT __25__ -12-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

PAGE __124__

1  REQUEST FOR PRODUCTION NO. 14:

2          All pleadings and other DOCUMENTS filed, submitted or served by

3  YOU in the BRATZ LAWSUITS that compare BRATZ to any other doll or product,

4  whether in whole or in part.

5

6  REQUEST FOR PRODUCTION NO. 15:

7          All pleadings and other DOCUMENTS filed, submitted or served by

8  YOU in the BRATZ LAWSUITS that claim, allege or assert that the appearance or

9  features of any doll or other product, whether in whole or in part, INFRINGES

10  BRATZ.

11

12  REQUEST FOR PRODUCTION NO. 16:

13          All demonstrative exhibits filed, submitted, introduced, displayed or

14  used by YOU in the BRATZ LAWSUITS that REFER OR RELATE TO BRATZ.

15

16  REQUEST FOR PRODUCTION NO. 17:

17          All expert reports and expert disclosures filed, submitted or served by

18  YOU in the BRATZ LAWSUITS that REFER OR RELATE TO BRATZ.

19

20  REQUEST FOR PRODUCTION NO. 18:

21          All subpoenas served in the BRATZ LAWSUITS that REFER OR

22  RELATE TO BRATZ.

23

24  REQUEST FOR PRODUCTION NO. 19:

25          All DOCUMENTS produced pursuant to any subpoena in the BRATZ

26  LAWSUITS that REFER OR RELATE TO BRATZ.

27

28

EXHIBIT ___25___

PAGE ___/25___

-13-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

07209/2261215.1

ι

1   REQUEST FOR PRODUCTION NO. 20:

2          All DOCUMENTS produced or made available for inspection by YOU

3   in the BRATZ LAWSUITS.

4

5   REQUEST FOR PRODUCTION NO. 21:

6          All DOCUMENTS produced or made available for inspection by YOU

7   in the BRATZ LAWSUITS that REFER OR RELATE TO BRATZ.

8

9   REQUEST FOR PRODUCTION NO. 22:

10          All DOCUMENTS produced or made available for inspection by YOU

11   in the BRATZ LAWSUITS that REFER OR RELATE TO MGA, including without

12   limitation the finances or financial condition of MGA.

13

14   REQUEST FOR PRODUCTION NO. 23:

15          All Court orders, decisions and judgments in the BRATZ LAWSUITS.

16

17   REQUEST FOR PRODUCTION NO. 24:

18          All Court orders, decisions and judgments in any THIRD-PARTY

19   LAWSUIT in which YOU have claimed, alleged or stated, in words or substance,

20   that any doll or product sold, offered for sale, manufactured, distributed, promoted

21   or advertised by any PERSON infringes, dilutes or is confusingly similar to

22   BRATZ.

23

24   REQUEST FOR PRODUCTION NO. 25:

25          To the extent not produced in response to any other Request for

26   Production, all DOCUMENTS in which YOU have claimed, alleged or stated, in

27   words or substance, that any doll, product or other matter sold, offered for sale,

28

EXHIBIT ___25___

PAGE ___106___

-14-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

07209/2261215.1

1

1 | manufactured, distributed, promoted or advertised by any PERSON infringes,
2 | dilutes or is confusingly similar to BRATZ.

3

4 | <u>REQUEST FOR PRODUCTION NO. 26:</u>
5 |      To the extent not produced in response to any other Request for
6 | Production, all DOCUMENTS, including without limitation pleadings, in which
7 | YOU have referenced or described YOUR alleged trade dress rights or potential
8 | trade dress in BRATZ.

9

10 | <u>REQUEST FOR PRODUCTION NO. 27:</u>
11 |      To the extent not produced in response to any other Request for
12 | Production, all DOCUMENTS, including without limitation pleadings, in which
13 | YOU have referenced or described YOUR alleged copyright rights or potential
14 | copyright rights in BRATZ.

15

16 | <u>REQUEST FOR PRODUCTION NO. 28:</u>
17 |      To the extent not produced in response to any other Request for
18 | Production, all DOCUMENTS, including without limitation pleadings, in which
19 | YOU have referenced or described YOUR alleged patent rights or potential patent
20 | rights in BRATZ.

21

22 | <u>REQUEST FOR PRODUCTION NO. 29:</u>
23 |      All DOCUMENTS that REFER OR RELATE TO any agreements
24 | settling, resolving, compromising or otherwise disposing of the BRATZ
25 | LAWSUITS.

26

27

28

EXHIBIT _____ 25_____

PAGE _____ 127_____  -15-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

07209/2261215.1

1 | REQUEST FOR PRODUCTION NO. 30:

2       All DOCUMENTS that REFER OR RELATE TO any agreements

3 settling, resolving, compromising or otherwise disposing of any legal proceedings in

4 which YOU have claimed that any product sold, offered for sale, manufactured,

5 distributed, promoted or advertised by such PERSON infringes, dilutes or is

6 confusingly similar to BRATZ.

7

8 | REQUEST FOR PRODUCTION NO. 31:

9       All DOCUMENTS that REFER OR RELATE to any use or

10 considered, proposed or potential use, of the term "Jade" in connection with any

11 MGA doll, product or other matter, including without limitation all trademark

12 search report for "Jade."

13

14 | REQUEST FOR PRODUCTION NO. 32:

15       All DOCUMENTS that REFER OR RELATE to when and the

16 circumstances under which Sandra Bilotto first came to YOUR attention.

17

18 | REQUEST FOR PRODUCTION NO. 33:

19       All DOCUMENTS that REFER OR RELATE to when and the

20 circumstances under which YOU first hired or engaged for any reason Sandra

21 Bilotto.

22

23 | REQUEST FOR PRODUCTION NO. 34:

24       All DOCUMENTS that REFER OR RELATE to the work or services

25 that Sandra Bilotto provided to YOU in connection with her first engagement by

26 YOU, including without limitation all invoices relating thereto.

27

28

EXHIBIT _____ 25_____

PAGE _____ 128_____

-16-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

07209/2261215.1

REQUEST FOR PRODUCTION NO. 35:

All DOCUMENTS that REFER OR RELATE to work or services provided by Sandra Bilotto to YOU prior to January 1, 2001.

REQUEST FOR PRODUCTION NO. 36:

All DOCUMENTS that REFER OR RELATE to work or services provided by Sandra Bilotto to MATTEL prior to January 1, 2001.

REQUEST FOR PRODUCTION NO. 37:

All tangible items, including without limitation all head sculpts, prototypes and models, provided by Sandra Bilotto to YOU prior to January 1, 2001.

REQUEST FOR PRODUCTION NO. 38:

All DOCUMENTS that REFER OR RELATE to YOUR knowledge of the work or services provided by Sandra Bilotto to MATTEL prior to January 1, 2001, regardless of when such knowledge was acquired.

REQUEST FOR PRODUCTION NO. 39:

All DOCUMENTS that REFER OR RELATE to payments made by YOU to Sandra Bilotto prior to January 1, 2001.

REQUEST FOR PRODUCTION NO. 40:

All DOCUMENTS that REFER OR RELATE to payments made by YOU to Sandra Bilotto after January 1, 2001.

EXHIBIT _25_

PAGE _129_

07209/2261215.1

-17-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

1 | REQUEST FOR PRODUCTION NO. 41:

2            All COMMUNICATIONS between Isaac Larian and Sandra Bilotto,

3 | including without limitation all such COMMUNICATIONS that REFER OR

4 | RELATE TO MATTEL, any MATTEL doll or product, BRYANT or BRATZ.

5

6 | REQUEST FOR PRODUCTION NO. 42:

7            All COMMUNICATIONS between Isaac Larian and Paula Garcia,

8 | including without limitation all such COMMUNICATIONS that REFER OR

9 | RELATE TO MATTEL, any MATTEL doll or product, BRYANT or BRATZ.

10

11 | REQUEST FOR PRODUCTION NO. 43:

12            All DOCUMENTS that REFER OR RELATE TO when and under

13 | what circumstances SCOOTER SAMANTHA was first conceived of, including

14 | without limitation all such DOCUMENTS that identify the PERSON who conceived

15 | of SCOOTER SAMANTHA.

16

17 | REQUEST FOR PRODUCTION NO. 44:

18            All DOCUMENTS that REFER OR RELATE TO the conception,

19 | creation, design, development, sculpting, tooling, production and manufacture of

20 | SCOOTER SAMANTHA.

21

22 | REQUEST FOR PRODUCTION NO. 45:

23            A sample of each doll or other product that, whether in whole or in

24 | part, has been sold as or under the name SCOOTER SAMANTHA or as part of the

25 | SCOOTER SAMANTHA line.

26

27

28

EXHIBIT __25__

PAGE __130__

-18-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

1 | REQUEST FOR PRODUCTION NO. 46:

2 |      All prototypes, models, samples and tangible items that REFER OR

3 | RELATE TO SCOOTER SAMANTHA.

4

5 | REQUEST FOR PRODUCTION NO. 47:

6 |      All prototypes, models, samples and tangible items that REFER OR

7 | RELATE TO SCOOTER SHANNEN.

8

9 | REQUEST FOR PRODUCTION NO. 48:

10 |      All DOCUMENTS that REFER OR RELATE TO SCOOTER

11 | SAMANTHA as it was first presented to YOU.

12

13 | REQUEST FOR PRODUCTION NO. 49:

14 |      All DOCUMENTS that REFER OR RELATE TO SCOOTER

15 | SAMANTHA prior to January 1, 2002.

16

17 | REQUEST FOR PRODUCTION NO. 50:

18 |      All DOCUMENTS that REFER OR RELATE TO SCOOTER

19 | SHANNEN and REFER OR RELATE TO the time period prior to January 1, 2002

20 | (regardless of when such DOCUMENT was created, drafted, generated, sent,

21 | received or transmitted).

22

23 | REQUEST FOR PRODUCTION NO. 51:

24 |      All DOCUMENTS that REFER OR RELATE TO Paula Garcia's work

25 | in connection with or role in SCOOTER SAMANTHA.

26

27

28

EXHIBIT __25__

PAGE __131__

-19-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

1  REQUEST FOR PRODUCTION NO. 52:

2          All DOCUMENTS that REFER OR RELATE TO Isaac Larian's work

3  in connection with or role in SCOOTER SAMANTHA.

4

5  REQUEST FOR PRODUCTION NO. 53:

6          DOCUMENTS sufficient to show the first manufacture date of each

7  and every SCOOTER SAMANTHA product.

8

9  REQUEST FOR PRODUCTION NO. 54:

10          DOCUMENTS sufficient to show the first ship date of each and every

11  SCOOTER SAMANTHA product.

12

13  REQUEST FOR PRODUCTION NO. 55:

14          DOCUMENTS sufficient to show YOUR revenues from SCOOTER

15  SAMANTHA.

16

17  REQUEST FOR PRODUCTION NO. 56:

18          All DOCUMENTS that REFER OR RELATE TO when and under

19  what circumstances SPACE BABES was first conceived of, including without

20  limitation all such DOCUMENTS that identify the PERSON who conceived of

21  SPACE BABES.

22

23  REQUEST FOR PRODUCTION NO. 57:

24          All DOCUMENTS that REFER OR RELATE TO the conception,

25  creation, design, development, sculpting, tooling, production and manufacture of

26  SPACE BABES.

27

28  EXHIBIT ___ 25 _____

PAGE ___ 132 _____   -20-
DOCUMENT REQUESTS TO MGA ENTERTAINMENT

1  REQUEST FOR PRODUCTION NO. 58:

2          A sample of each doll or other product that, whether in whole or in

3  part, has been sold as or under the name SPACE BABES or as part of the SPACE

4  BABES line.

5

6  REQUEST FOR PRODUCTION NO. 59:

7          All prototypes, models, samples and tangible items that REFER OR

8  RELATE TO SPACE BABES.

9

10  REQUEST FOR PRODUCTION NO. 60:

11          All DOCUMENTS that REFER OR RELATE TO SPACE BABES as

12  it was first presented to YOU.

13

14  REQUEST FOR PRODUCTION NO. 61:

15          All DOCUMENTS that REFER OR RELATE TO SPACE BABES

16  prior to January 1, 2005.

17

18  REQUEST FOR PRODUCTION NO. 62:

19          All DOCUMENTS that REFER OR RELATE TO Paula Garcia's work

20  in connection with or role in SPACE BABES.

21

22  REQUEST FOR PRODUCTION NO. 63:

23          All DESIGNS conceived of, made, produced or created, whether in

24  whole or in part, by Scot Reyes in connection with SPACE BABES.

25

26

27

28      EXHIBIT ___25___

        PAGE ___/33___        -21-
                           DOCUMENT REQUESTS TO MGA ENTERTAINMENT

07209/2261215.1

REQUEST FOR PRODUCTION NO. 64:

All DOCUMENTS that REFER OR RELATE TO DESIGNS conceived of, made, produced or created, whether in whole or in part, by Scot Reyes in connection with SPACE BABES.

REQUEST FOR PRODUCTION NO. 65:

All DOCUMENTS that REFER OR RELATE TO Scot Reyes' work in connection with or role in SPACE BABES.

REQUEST FOR PRODUCTION NO. 66:

All actual or proposed contracts and agreements between YOU and Scot Reyes that REFER OR RELATE TO SPACE BABES, including without limitation all drafts thereof.

REQUEST FOR PRODUCTION NO. 67:

All DOCUMENTS that REFER OR RELATE TO payments by YOU to Scot Reyes for or in connection with SPACE BABES.

REQUEST FOR PRODUCTION NO. 68:

All DOCUMENTS that REFER OR RELATE TO payments by YOU to Scot Reyes.

REQUEST FOR PRODUCTION NO. 69:

All DOCUMENTS that REFER OR RELATE TO Isaac Larian's work in connection with or role in SPACE BABES.

EXHIBIT __25__

PAGE __134__

07209/2261215.1

-22-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

1 | REQUEST FOR PRODUCTION NO. 70:

2 |      DOCUMENTS sufficient to show the first manufacture date of each

3 | and every SPACE BABES product.

4 |

5 | REQUEST FOR PRODUCTION NO. 71:

6 |      DOCUMENTS sufficient to show the first ship date of each and every

7 | SPACE BABES product.

8 |

9 | REQUEST FOR PRODUCTION NO. 72:

10 |      DOCUMENTS sufficient to show YOUR revenues from SPACE

11 | BABES.

12 |

13 | REQUEST FOR PRODUCTION NO. 73:

14 |      All DOCUMENTS that REFER OR RELATE TO any DESIGN

15 | offered, submitted, pitched, assigned or transferred by Scot Reyes to YOU, acquired

16 | or purchased by, or assigned to, YOU from Scot Reyes, requested or solicited by

17 | YOU from Scot Reyes or made, created, produced or conceived of, whether in

18 | whole or in party, by Scot Reyes on YOUR behalf.

19 |

20 | REQUEST FOR PRODUCTION NO. 74:

21 |      All COMMUNICATIONS between YOU and Scot Reyes that REFER

22 | OR RELATE TO MATTEL or any MATTEL doll or product.

23 |

24 | REQUEST FOR PRODUCTION NO. 75:

25 |      All DOCUMENTS that REFER OR RELATE TO MATTEL

26 | documents or information provided, shown or otherwise disclosed to YOU by Scot

27 | Reyes.

28 |

EXHIBIT 25

1   REQUEST FOR PRODUCTION NO. 76:

2         All DOCUMENTS that REFER OR RELATE to payments made by

3   YOU to Paula Garcia prior to January 1, 2002.

4

5   REQUEST FOR PRODUCTION NO. 77:

6         All DOCUMENTS that REFER OR RELATE to any payments made

7   by YOU to Paula Garcia, including without limitation any and all bonuses and

8   incentive payments made by YOU to Paula Garcia.

9

10   REQUEST FOR PRODUCTION NO. 78:

11         All personnel and vendor files for Maureen Mullen (formerly

12   Chianese).

13

14   REQUEST FOR PRODUCTION NO. 79:

15         All personnel and vendor files for Scot Reyes.

16

17   REQUEST FOR PRODUCTION NO. 80:

18         All personnel and vendor files for Sandra Bilotto.

19

20   REQUEST FOR PRODUCTION NO. 81:

21         All personnel and vendor files for Steve Linker.

22

23   REQUEST FOR PRODUCTION NO. 82:

24         All personnel and vendor files for Veronica Marlow.

25

26   REQUEST FOR PRODUCTION NO. 83:

27         All personnel and vendor files for Peter Marlow.

28

EXHIBIT __25__

PAGE __136__

-24-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

1  REQUEST FOR PRODUCTION NO. 84:

2    All personnel and vendor files for Wendy Ragsdale.

3

4  REQUEST FOR PRODUCTION NO. 85:

5    All personnel and vendor files for Billy Ragsdale.

6

7  REQUEST FOR PRODUCTION NO. 86:

8    All personnel and vendor files for Sarah Halpern.

9

10  REQUEST FOR PRODUCTION NO. 87:

11    To the extent not produced in response to any other Request for

12  Production, all personnel and vendor files for each person identified in Exhibit 664

13  (bearing Bates numbers MGA 0868630-31).

14

15  REQUEST FOR PRODUCTION NO. 88:

16    To the extent not produced in response to any other Request for

17  Production, all personnel and vendor files for each person who has worked as an

18  employee of or vendor for YOU and who also has been at any time an employee of

19  or vendor for MATTEL.

20

21  DATED: October 24, 2007

22       QUINN EMANUEL URQUHART OLIVER &
     HEDGES, LLP

23

24       By _Mike T. Z___

25       Michael T. Zeller
     Attorneys for Mattel, Inc.

26

27

28

EXHIBIT __25__

PAGE __137__

-25-

DOCUMENT REQUESTS TO MGA ENTERTAINMENT

# EXHIBIT 26

CONFORMED COPY

FILED

2007 MAY 18  PH 3: 45

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2   johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5   (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile:  (213) 443-3100

CALENDARED

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12  | CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
    |---|---|
13  | Plaintiff, | Consolidated with |
14  | | Case No. CV 04-09059 |
    | vs. | Case No. CV 05-02727 |
15  | | |
    | MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
16  | Defendant. | |
17  | | Hon. Edward A. Infante (Ret.) |
    | | Discovery Master |
18  | AND CONSOLIDATED CASES | [PROPOSED] ORDER GRANTING |
19  | | MATTEL INC.'S MOTION TO |
    | | COMPEL MGA TO PRODUCE |
20  | | WITNESSES FOR DEPOSITION |
    | | PURSUANT TO RULE 30(B)(6) |
21  | | |
    | | Date: May 15, 2007 |
22  | | Time: 8:15 a.m. |
    | | Place: Telephonic |
23  | | |
    | | Discovery Cut-Off: October 22, 2007 |
24  | | Pre-Trial Conference: January 14, 2008 |
    | | Trial Date: February 12, 2008 |

25

26

27

28

07209/2121176:1

EXHIBIT ___26___

PAGE ___138___

CS/18/67

## ~~[PROPOSED]~~ ORDER

Having considered Mattel, Inc.'s Motion To Compel MGA To Produce Witnesses For Deposition Pursuant To <u>Rule</u> 30(b)(6) (the "Motion"), and all other papers and argument submitted in support of or opposition to the Motion, and finding good cause therefor, Mattel's Motion is GRANTED.

IT IS HEREBY ORDERED that:

1. MGA shall make Paula Garcia available for deposition on or before June 15, 2007 as a designee on Topics 1-3 and 6-8 of Mattel's Notice of Deposition of MGA Pursuant to <u>Rule</u> 30(b)(6) dated February 16, 2005 and in her individual capacity.

2. MGA shall confirm its designees and the dates of the designees' availability for deposition for all Topics except Topic Nos. 25 and 26 in Mattel's Notice of Deposition of MGA Pursuant to <u>Rule</u> 30(b)(6) dated February 1, 2007 (the "Second Notice") on or before May 22, 2007.

3. MGA shall make its designees for all Topics in the Second Notice, except Topic Nos. 25 and 26, available for deposition on or before June 30, 2007.

4. The parties shall meet and confer regarding the timing of the depositions on Topic Nos. 25 and 26 of the Second Notice. Such depositions may take place after June 30, 2007.

5. All of MGA's objections and/or limitations regarding the Topics in Mattel's <u>Rule</u> 30(b)(6) deposition notices are overruled.

//
//
//
//
//
//
//

EXHIBIT __26__

PAGE __139__

ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

1

2    6.    Mattel's request for sanctions is denied.

3

4    **IT IS SO ORDERED.**

5

6  DATED: _May 16_____, 2007

.7

8

.9               Hon. Edward A. Infante (Ret.)
                 Discovery Master

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    EXHIBIT ___26___

28    PAGE ___140___

07209/2121176.1

-2-
ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 17,

2007, I served the attached ORDER GRANTING MATTEL INC.'S MOTION TO COMPEL

MGA TO PRODUCE WITNESSES FOR DEPOSITION PURSUANT TO RULE 30(B)(6)

in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 17, 2007, at San Francisco, California.

Anthony R. Sales

EXHIBIT __26__

PAGE __141__

# EXHIBIT 27



1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5  (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12

13  CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)

14          Plaintiff,                    Consolidated with
                                          Case No. CV 04-09059
        vs.                               Case No. CV 05-02727
15
    MATTEL, INC., a Delaware corporation, **DISCOVERY MATTER**
16
          Defendant.                      Hon. Edward A. Infante (Ret.)
17                                         Discovery Master

18                                         [PROPOSED] ORDER GRANTING
    AND CONSOLIDATED CASES                 MATTEL, INC.'S MOTION TO
19                                         COMPEL PRODUCTION OF
                                           DOCUMENTS BY MGA
20                                         ENTERTAINMENT, INC.

21                                         Date:  December 14, 2007
                                           Time:  10:45 a.m..
22                                         Place: JAMS S.F. Office

23                                         Discovery Cut-Off:  January 28, 2008
                                           Pre-Trial Conference: April 7, 2008
24                                         Trial Date:  April 29, 2008

25

26

27
                                )
28

07209/2335377.1                        12-28

                                                        PROPOSED ORDER

           EXHIBIT ___27___

           PAGE _____142_____

# [PROPOSED] ORDER

Having considered Mattel, Inc.'s Motion to Compel Production of Documents by MGA Entertainment, Inc. dated November 26, 2007 (the "Motion"), and all other papers and argument submitted in support of or in opposition to the Motion,

IT IS HEREBY ORDERED that:

1.      Mattel's Motion is GRANTED.

2.      MGA Entertainment, Inc. ("MGA") shall produce on or before January 10, 2008 all non-privileged documents responsive to Request Nos. 2-6, 8-15, 17-23, 25-33, 35-43 and 45-46 of Mattel, Inc.'s Second Set of Requests for Documents and Things to MGA Entertainment, Inc.

3.      In response to Request No. 7, MGA shall produce on or before January 10, 2008 (a) all documents that state or refer to MGA's profits (including without limitation gross profits, net profits or incremental profits) from the sale of each Bratz doll sold by MGA or its licensees and (b) documents sufficient to determine, calculate and/or evaluate MGA's profits (including without limitation gross profits, net profits and incremental profits) from the sale of each Bratz doll sold by MGA or its licensees, including any summary reports of such profits or summary reports of costs deductible from revenue to arrive at such profits.

4.      In response to Request No. 16, MGA shall produce on or before January 10, 2008 (a) all documents that state or refer to MGA's profits (including without limitation gross profits, net profits or incremental profits) by product number or SKU from the sale of each Bratz doll sold by MGA or its licensees and (b) documents sufficient to determine, calculate and/or evaluate MGA's profits (including without limitation gross profits, net profits and incremental profits) by product number or SKU from the sale of each Bratz doll sold by MGA or its licensees, including any summary reports of such profits or summary reports of costs deductible from revenue to arrive at such profits.

07209/2335377.1

-1-

PROPOSED ORDER

EXHIBIT _27_

PAGE _143_

1      5.    In response to Request No. 24, MGA shall produce on or before January
2  10, 2008 (a) all documents that state or refer to MGA's profits (including without
3  limitation gross profits, net profits or incremental profits) from the sale of each Bratz
4  product sold by MGA or its licensees and (b) documents sufficient to determine,
5  calculate and/or evaluate MGA's profits (including without limitation gross profits,
6  net profits and incremental profits) from the sale of each Bratz product sold by MGA
7  or its licensees, including any summary reports of such profits or summary reports of
8  costs deductible from revenue to arrive at such profits.

9      6.    In response to Request No. 34, MGA shall produce on or before January
10  10, 2008 (a) all documents that state or refer to MGA's profits (including without
11  limitation gross profits, net profits or incremental profits) by product number or SKU
12  from the sale of each Bratz product sold by MGA or its licensees and (b) documents
13  sufficient to determine, calculate and/or evaluate MGA's profits (including without
14  limitation gross profits, net profits and incremental profits) by product number or
15  SKU from the sale of each Bratz product sold by MGA or its licensees, including any
16  summary reports of such profits or summary reports of costs deductible from revenue
17  to arrive at such profits.

18

19

20

21

22

23

24

25

26

27

28

07209/2335377.1

-2-

PROPOSED ORDER

EXHIBIT __27__

PAGE __144__

1      7.    In response to Request No. 44, MGA shall produce on or before January

2  10, 2008 (a) all valuations of, or that refer or relate to, Bratz at any time from 1998 to

3  the present, (b) all documents that state or refer to the value of the Bratz at any time

4  from 1998 to the present and (c) documents sufficient to determine, calculate and/or

5  evaluate the value of the Bratz for each year from 1998 to the present.

6

7     **IT IS SO ORDERED.**

8

9  DATED: _12-28_ , 2007

10

11

12  Hon. Edward A. Infante (Ret.)
     Discovery Master

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on December 28, 2007, I served the attached: (1) ORDER GRANTING MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA ENTERTAINMENT, INC., (2) STIPULATION AND ORDER RE: CONTINUANCE OF TIME FOR PARTIES TO FILE JOINT STATEMENT REGARDING MATTEL'S REQUEST FOR DESTRUCTIVE TESTING OF BRYANT ORIGINALS, and (3) ORDER GRANTING MATTEL'S REQUEST FOR EXTENSION OF TIME TO SERVE ITS OPPOSITION PAPERS IN RESPONSE TO MGA'S MOTION TO COMPEL RULE 30(b)(6) WITNESSES in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on December 28, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT __27__

PAGE __146__

# EXHIBIT 28

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:     (415) 774-2611
4   Facsimile:     (415) 982-5287

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
13  |                               | JAMS Reference No. 1100049530 |
    |         Plaintiff,            |                                |
14  |                               |                                |
    |           v.                  | Consolidated with              |
15  |                               | Case No. CV 04-09059           |
    |                               | Case No. CV 05-2727            |
16  | MATTEL, INC., a Delaware corporation, |                          |
    |                               | **ORDER GRANTING IN PART AND** |
17  |         Defendant.            | **DENYING IN PART MATTEL'S**   |
    |                               | **MOTION TO COMPEL PRODUCTION** |
18  |                               | **OF DOCUMENTS BY ISAAC LARIAN;** |
    |                               | **DENYING REQUEST FOR**        |
19  |                               | **SANCTIONS**                  |

20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
21  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
22

23                        I. INTRODUCTION

24          On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production

25  of Documents by Isaac Larian and for Award of Monetary Sanctions." Specifically, Mattel seeks

26  an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First

27  Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

12-31            EXHIBIT _28_
                 PAGE _149_

1   15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199,

2   207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents

3   withheld based on any claimed privilege. Mattel also seeks an award of sanctions against Larian

4   in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing

5   this motion. Larian submitted an opposition on December 5, 2007.[1]  Mattel submitted a reply on

6   December 10, 2007. The matter was heard on December 14, 2007. Having considered the

7   motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in

8   part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

9

10      On June 13, 2007, Mattel propounded its First Set of Requests for Production of

11  Documents and Things to Larian, the CEO and majority owner of MGA. On August 6, 2007,

12  Larian filed his initial responses and objections. The parties met and conferred, and on September

    25, 2007, Larian served supplemental responses and objections.

13      Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the

14  276 Requests. The parties met and conferred further, and Larian ultimately agreed to provide

15  further responses to 55 of the disputed 87 Requests. Specifically, Larian agreed to supplement his

16  responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-

17  76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that

18  have not previously been produced." MGA's Opposition at pp. 1-2.

19      The remaining 32 Requests at issue can be grouped into ten categories: (1) personal

20  financial data; (2) communications with Mattel employees; (3) statements to the media; (4)

21  telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market

22  research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's

23  arbitration; and (10) MGA Hong Kong and MGA Mexico.

24  //

25

26  _____
    [1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should
    not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim

27  statement of Mattel's position. The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve
    Mattel's motion on the merits.

28                                                                                                      2
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

                        EXHIBIT ___28___

                        PAGE ___150___

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3



EXHIBIT _____28_____

PAGE _____151_____

1  he will do so.  Second, Larian's agreement to produce responsive documents is apparently limited

2  to documents from his so-called "personal files."  See Opposition at 2:2-3.

3        Mattel's counsel "never agreed that Larian could limit his response to the above requests

4  to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his

5  response to documents in Larian's 'personal files.'"  Supp. Decl. of Scott B. Kidman.

6  Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,

7  Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding

8  parties' "possession, custody or control."  The limitation is also unworkable because, as Mattel

9  points out, it "would create a situation by which responsive and highly relevant documents might

10  never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and

11  Larian, on the other hand, deems [a] document not to be part of his 'personal files.'"  Reply at p.6.

12  Market Research for Products Not at Issue:  Request Nos. 79-81

13        In Request No. 79, Mattel seeks all documents relating to any focus groups relating to

14  Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports.  In

15  his supplemental response, Larian agrees to produce the following documents, subject to his

16  general objections:

17      Larian will produce all documents within his possession, custody, or control that
    relate to focus groups for "MGA contested products" and "Mattel contested

18      products," as those terms are defined in Mattel's First Requests for Production
    regarding Claims of Unfair Competition, if any, and that have not already been

19      produced, that he discovers in the course of his reasonable search and diligent
    inquiry, and to which no privilege or other protection applies, including without

20      limitation, the attorney-client privilege or attorney's work product doctrine.

21

22  Mattel's Consolidated Separate Statement at pp. 20-21.

23        In Request No. 80, Mattel seeks all documents relating to any services or work performed

24  by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all

25  videotapes, summaries, notes and reports associated therewith.  In his supplemental response,

26  Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to

27  the request and to which no privilege or other protection applies.

28  Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____28_____

PAGE _____152_____

4

1    In Request No. 81, Mattel seeks all documents relating to Alaska Momma. In his

2    supplemental response, Larian agrees to produce all documents relating or referring to Bratz,

3    Angel or Bryant that are responsive to the request and to which no privilege or other protection

4    applies.

5    Mattel contends that the requests are as narrowly tailored as possible to capture relevant

6    information. More specifically, Mattel contends that Request No. 79 seeks documents that bear

7    directly on the timing of the development of Bratz, as well as MGA's unfair competition claims

8    and Mattel's defense thereto. Mattel contends that the requested documents may demonstrate that

9    MGA is guilty of copying Mattel's Barbie and My Scene products.

10   Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome. As an

11   example, Larian points to Request No. 80, which requests all documents relating to any services

12   or work performed by L.A. Focus, regardless of whether that work has any relation to the claims

13   and defenses in the action or any of the products at issue. Larian similarly contends that Request

     Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or

14   defense in this case.

15   Mattel's motion to compel Larian to produce all documents responsive to Request No. 79

16   is granted. The request is reasonably limited in subject matter to Bratz and Angel. The requested

17   documents are relevant to several issues in the case, including the origin, conception and creation

18   of Bratz. The requested documents are also relevant to the unfair competition claims. Larian's

19   supplemental response to Request No. 79 is unduly restrictive. Among other things, the

20   definitions of "contested MGA products" encompass only those products that provide a basis for

21   any claim by MGA against Mattel, and not claims by Mattel against MGA.

22   Mattel's motion to compel Larian to produce all documents responsive to Request Nos.

23   80-81 is denied. These requests, as drafted, are clearly overbroad because they have no

24   reasonable limitations on subject matter or time. In particular, the requests are directed to L.A.

25   Focus and Alaska Momma without regard to whether the services or work the companies

26   provided has any relation to any product at issue.

27   Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT _28_

PAGE _153_

1  documents related to the products at issue: Bratz and Angel. In Mattel's view, Larian's
2  supplemental response is too narrow and "may result in the exclusion of highly relevant
3  documents because the project, concept or design that is the subject of the focus group is deemed
4  not to relate to something then known as Bratz or Angel." However, Larian acknowledges that
5  these types of hypothetical documents would still fall within the narrower scope of production
6  proposed in his supplemental response.

7       Mattel also contends that it is entitled to all of the requested documents called for by
8  Request No. 80 because they are relevant to credibility and bias, particularly if the documents
9  show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A.
10  Focus used. It is, however, not apparent how deviations from standard procedures would impact
11  credibility or bias.

12       As to Request No. 81, Mattel contends that the documents showing the relationship
13  between Larian or MGA and Alaska Momma are relevant, even if they do not themselves
14  specifically relate to Bratz, Angel or Bryant. Mattel contends that communications from Larian
15  or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant
16  claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's
17  and Bryant's stories about how and when they came to be introduced. Mattel also contends that
18  documents showing other dealings between Larian or MGA and Alaska Momma are relevant to
19  the issues of bias and credibility. Mattel's supposition about the types of documents that might
20  exist does not justify the type of far-reaching request it has propounded. Request No. 81 is also
21  not limited by either subject matter or time.

22       Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in
23  accordance with his supplemental responses.

24  **Bryant's Attorney and Niece: Request Nos. 113-115**

25       In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne
26  Wang, a lawyer who represented Bryant in his contract negotiations with MGA. In Request No.
27  114, Mattel seeks all documents, including without limitation all communications, between

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT ___28___
PAGE ___154___

1   Larian or MGA and Anne Wang. In Request No. 115, Mattel seeks documents relating to Brooke

2   Gilbert, Bryant's niece. In his supplemental responses, Larian agrees to produce documents

3   relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or

4   other protection applies. Thus, the only issue is whether Larian should be required to produce

5   responsive documents that do not relate to Bratz, Angel or Bryant.

6       Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin

7   and conception of Bratz and the timing thereof. Mattel also contends that the documents may

8   disclose relevant information regarding Mattel's claims for breach of contract and inducing

9   breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's

10  contractual obligations with Mattel. Mattel also contends that Larian has failed to carry his

11  burden of demonstrating that the requests are overly burdensome.

12      Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114

13  are inadequate because the limitations on scope may eliminate otherwise relevant documents that

14  do not specifically refer to Bratz, Angel or Bryant. For example, Mattel contends that

15  communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or

16  Bryant may be relevant to the issues of credibility and bias.

17      Mattel contends that Request No. 115 seeks documents that are relevant to determine

18  whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software

19  that had been installed and run on the hard drive. Bryant claims to have given his computer to his

20  niece. Mattel also contends that the requested documents are relevant to the issues of credibility

21  and bias. Further, Mattel contends that Larian's supplemental response to Request No. 115 is

22  inadequate, because evidence of any communication between Larian and his niece, regardless of

23  subject matter, is significant.

24      Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome

25  because they lack any subject matter or time constraints. Further, Larian contends that the

26  requests constitute an improper fishing expedition and necessarily sweep in documents that are

27  not relevant to any claim or defense.

28  //

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT   28

PAGE   155

1    Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied. The

2   requests are overbroad because they are not focused on relevant subject matter and are untethered

3   to any claim or defense. Although Mattel asserts that responsive documents unrelated to Bratz,

4   Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility

5   is too remote to justify the breadth of Mattel's requests.

6    Larian's supplemental responses are sufficient to provide Mattel with relevant and

7   responsive documents. Larian shall produce documents responsive to Request Nos. 113-115 in

8   accordance with his supplemental responses.

9

10   The Larian Brothers' "Arbitrations and Suits": Request Nos. 123-125

11    In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and

12   suits between Larian and his brother, Farhad Larian. In Request No. 124, Mattel seeks all

13   documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad

14   Larian against Larian, including without limitation all declarations, affidavits, transcripts, video

15   and/or audio recordings and sworn testimony given by any person in such suit or arbitration

16   proceedings. In Request No. 125, Mattel seeks all documents relating to any and all settlements,

17   resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad

18   Larian. In his supplemental responses, Larian agrees to produce all documents referring or

19   relating to Bratz that are responsive to the requests and to which no privilege or other protection

20   applies.

21    Mattel contends that the court has already ruled that the arbitration proceedings between

22   Larian and his brother are relevant because they involve, among other matters, the conception and

23   creation date for Bratz. Mattel contends that Larian's supplemental responses improperly limit

24   the requests to the exclusion of potentially relevant documents. For example, Mattel contends

25   that documents that relate to the business, activities and plans of MGA in early 2000 are relevant

26   to the timing of the development of Bratz, whether or not they specifically refer to Bratz.

27   Mattel also contends that the requested documents are relevant to the value of the Bratz brand and

28   the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT ___28___

PAGE ___156___

1   example, profits from the sale and licensing of Bratz and other information that would impeach

2   Larian's testimony that he has not made any profits from Bratz. Further, Mattel contends that the

3   requested documents may lead to evidence of the assessments or valuations of the net worth or

4   value of MGA or Larian, regardless of any reference to Bratz specifically. Mattel also contends

5   that settlement documents may contain information that bears on the merit of Farhad Larian's

6   claims and the value of Bratz. Mattel also claims that the requested documents are relevant to

7   motive, intent, bias and credibility.

8       Larian contends the instant requests are overbroad and unduly burdensome. Further,

9   Larian contends that the relationship of the requested documents to any of the claims or defenses

10  in the present action is questionable, and the existence of such documents is conjectural.

11  Moreover, Larian contends that many of the categories of documents of interest to Mattel are

12  already the subject of other requests. Larian also contends that Request Nos. 123-125 impose an

13  undue burden because of the protective orders in place that strictly limit the use of any documents

14  from an arbitration and suit between Larian and his brother. Larian represents that he is currently

15  working with Mattel and his brother in an attempt to achieve suitable modifications to the orders

16  that are agreeable to all parties.

17      Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is

18  denied. The requests are clearly overbroad in calling for all documents from the arbitrations and

19  suits between Larian and his brother, without any subject matter limitations. Furthermore, these

20  requests are unduly burdensome to the extent they require production of documents that do not

21  refer or relate to Bratz. Such documents have marginal relevance, at best, to the claims and

    defenses in the case.

22      Larian's supplemental responses to Request Nos. 123 -125 are sufficient. Larian's

23  agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will

24  enable Mattel to obtain documents relevant to the claims and defenses in the case, including many

25  of the categories of documents of interest to Mattel. For example, under Larian's proposed

26  limitation, documents that relate to the business, activities and plans of MGA in 2000 that also

27  refer or relate to Bratz must be produced. Documents relating to the value of the Bratz brand are

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

9

EXHIBIT __28__

PAGE __157__

1  also within the scope of Larian's proposed limitation and would have to be produced.  Documents

2  relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be

3  produced.  Further, Larian's proposed limitation does not necessarily foreclose discovery

4  regarding the appraisal of MGA prepared by Mr. Dutcher.  In particular, documents relating to

5  MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue

6  projections must be produced if such documents refer or relate to Bratz.  Accordingly, Larian

7  shall produce documents responsive to Request Nos. 123-125 in accordance with his

8  supplemental responses.

9

Telephone Records:  Request Nos. 178-181

10        In Request No. 178, Mattel seeks all documents relating to, including without limitation

11  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

12  from January 1, 1998 through January 1, 2001.  Larian objects to this request.

13        In Request No. 179, Mattel seeks all documents relating to, including without limitation

14  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

15  from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel.  In his supplemental

16  responses, Larian agrees to produce documents responsive to Request No. 179.  In response to

17  this motion, however, Larian contends that he should be permitted to produce documents

18  responsive to Request No. 179 in redacted form as discussed more fully below.

19        In Request No. 180, Mattel seeks all documents relating to, including without limitation

20  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

21  from April 1, 2004 through June 1, 2004.  Larian objects to this request.

22        In Request No. 181, Mattel seeks all documents relating to, including without limitation

23  phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf

24  at any time.  In his supplemental response, Larian agrees to produce all documents pertaining to

25  communications made prior to January 1, 2001 that are responsive to the request and to which no

26  privilege or other protection applies.

27  //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT ___28___

PAGE ___158___

1    Mattel contends that Request No. 178 seeks documents relevant to show Larian's

2   communications with Bryant and other Mattel employees while such employees may still have

3   been employed by Mattel and before Larian claims to have known about Bratz. Similarly, Mattel

4   contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and

5   Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them

6   to steal Mattel trade secrets.

7    Further, Mattel contends that the requested documents regarding telephone records are

8   relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show

9   communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent

10   they show communications with current and former Mattel employees, including Machado,

11   Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements

12   Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses. With respect to

13   burden, Mattel contends that it would be more burdensome to attempt to produce the requested

14   records in redacted form, and further, that the protective order in place is sufficient to protect

15   Larian's privacy concerns.

16    Larian contends that the requests regarding telephone records are overbroad, completely

17   unbounded as to subject matter, and necessarily sweep in private information that is completely

18   irrelevant to any of the claims or defenses in the case. Larian also points out that the court

19   previously considered similar requests served on Bryant and allowed production of redacted

20   copies of telephone records as long as Bryant provided a signed verification that none of his

21   redactions related to Bratz, MGA or any other project he worked on for MGA. Specifically,

22   Bryant was permitted to produce redacted phone records as long as he provided a "signed

23   verification that none of the telephone records that were redacted relate or refer in any way to

24   MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA."

25   Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production

26   of Documents by Bryant). Larian contends that he should be permitted to redact responsive

27   documents consistent with the court's prior order. During the meet and confer, Larian offered to

28   provide redacted records and a signed verification that none of the redacted information was

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT ___28___

PAGE ___159___

1    relevant to the case, but Mattel did not respond to the offer.

2         Mattel's motion to compel documents responsive to Request Nos. 178 (all documents

3    relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied. The

4    request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in

5    private information that is completely irrelevant to the case. Larian should not be subjected to

6    such an intrusion into his private and business affairs when Mattel has made no attempt to tailor

7    the request to the communications, claims, and defenses identified above.

8         In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records

9    for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters

10   (Bratz and/or Angel). Accordingly, Larian shall abide by his agreement to comply with Request

11   No. 179, as stated in his supplemental response. Larian's proposal to produce responsive

12   documents in redacted form is appropriate to address his privacy concerns. More specifically,

13   Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian

14   provides a signed verification that none of the redacted material refers or relates in any way to

15   MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA,

     or that are otherwise relevant to the case.

16        Mattel's motion to compel documents responsive to Request No. 180 (documents relating

17   to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted. Request No. 180

18   is reasonably tailored to a two month period during which MGA and Larian allegedly recruited

19   employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets. See

20   Mattel's Second Amended Answer and Counterclaims, ¶¶37-54. Larian may produce documents

21   responsive to Request No. 180 in redacted form as specified above with respect to Request No.

22   179.

23        Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian)

24   is overbroad as written because it has no time limits. In his supplemental response, Larian agrees

25   to produce communications prior to January 1, 2001 that are responsive to the request. Larian's

26   proposed limitation is a reasonable compromise that will provide Mattel with relevant documents

27   without imposing an undue burden. Accordingly, Larian shall produce documents responsive to

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                        12

     EXHIBIT  28

     PAGE  160

1   Request No. 181 consistent with his supplemental response, and may produce such documents in

2   redacted form as specified above with respect to Request No. 179.

3

4   Statements to the Media:  Request Nos. 190-192, 194-197 and 199

5           In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6   and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7   Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8   to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9   Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10  regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

11  products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

12  Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

13  also contain admissions regarding the origin and conception of Bratz and statements relevant to

    damages.

14          Larian contends that the requests are overbroad and unduly burdensome, particularly

15  because several of the requests seek publicly available information.  Further, Larian points out

16  that the court has already considered and rejected as overbroad a nearly identical request served

17  on MGA that called for all documents relating to any communications by MGA with any news

18  organization regarding the contested MGA products or the contested Mattel products.  Larian

19  contends that the same reasoning applies to the instant requests.

20          Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

21  199 is denied.  Although several of the requests encompass potentially relevant documents, the

22  requests are overbroad and encompass documents that have little to no relevance to the claims and

23  defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

24  sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

25  Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

26  or damages.

27  //

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    13

EXHIBIT ___28___

PAGE ___161___

1    Furthermore, many of these overbroad requests seek publicly available information that is
2    readily accessible to Mattel for which Larian should not be burdened. To the extent the requested
3    documents and information are not publicly available, such documents and information are
4    marginally, if at all, relevant because they are not likely to have caused Mattel compensable harm.
5    In either case, the burden and expense of searching for and producing responsive documents are
6    unjustified.

7
8    Communications With Mattel Employees: Request No. 198

9    In Request No. 198, Mattel seeks all communications between Larian and any individual
10   while the individual was employed by Mattel. Mattel contends that this request is directly
11   relevant to Mattel's claims of trade secret theft, and that the relevancy outweighs any purported
     burden of production.

12   Larian contends that the request is overbroad and unduly burdensome because it is
13   unrestricted as to time and subject matter. Larian also points out that the court has previously
14   found a similar request overbroad. Larian further contends that employees in the toy industry are
15   likely to maintain contacts with other toy manufacturers, and that a large corporation such as
16   Mattel is likely to have a high number of employees communicating with MGA or its officers,
17   which makes the request more unduly burdensome and unreasonable than it appears on its face.

18   Unlike other requests regarding communications, Request No. 198 is reasonably tailored
19   to the specific and numerous allegations in the case regarding alleged trade secret theft. Although
20   the request is not limited by subject matter, it is limited in other respects to seek relevant
21   documents without imposing an undue burden. The request is limited to communications
22   between Larian (and not MGA or persons acting on his behalf) and individuals employed at
23   Mattel. The request is also limited to only those communications that took place while the
24   individuals were employed at Mattel.

25   Nevertheless, an additional temporal limit is appropriate to tailor the request to Mattel's
26   allegations of trade secret theft. The alleged trade secret theft began with Bryant's conduct in
27   1999 and continued to 2005. Accordingly, Larian shall produce documents responsive to Request

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

     14

     EXHIBIT _28_
     PAGE _162_

1   No. 198 that are limited to the time frame 1999 to 2005.

2

3   <u>Personal Financial Data: Request Nos. 207-209 and 269</u>

4       In Request No. 207, Mattel seeks documents sufficient to identify each of Larian's banks

5 or financial institutions and other banking relationships since January 1, 1999. In Request No.

6 208, Mattel seeks documents sufficient to establish Larian's gross income and sources for such

7 income for each year from 1999 to the present. In Request No. 209, Mattel seeks Larian's federal

8 and state tax returns for each year from 1999 to the present. In Request No. 269, Mattel seeks

9 documents sufficient to show or calculate Larian's net worth on a yearly basis for each year from

10 1999 to the present.

11       Mattel contends that Request No. 207 seeks information reasonably calculated to lead to

12 information showing the timing of payments to Bryant and others, which in turn is relevant to the

13 timing of the development of Bratz and issues of credibility. Mattel contends that Request Nos.

14 208-209 and 269 seek non-privileged information that is directly relevant to Larian's financial

15 condition, which in turn is relevant to damages. Further, Mattel contends that it is entitled to

16 information regarding the sources of Larian's income to determine whether they are attributable

17 to the alleged misconduct and thus subject to disgorgement.

18       Larian contends that the requested personal financial information is not relevant to the

19 claims or defenses at issue. More specifically, Larian contends that neither the names of his

20 banks nor his gross income have any bearing upon either compensatory or punitive damages or

21 Mattel's claim for disgorgement of profits. Larian further contends that there is no support for

22 Mattel's supposition that Larian has siphoned off MGA assets for his own personal benefit.

23       Larian also contends that all three of the requests overlap substantially with requests

24 Mattel previously propounded upon MGA, and that Mattel has failed to justify the duplication or

25 burden posed by these requests to him. Further, Larian contends that the court has previously

26 found that Mattel was not entitled to obtain tax returns from Bryant, and that Mattel has offered

27 no reason why the same result should not apply here.

      Mattel's motion to compel responses to Request Nos. 207-208 and 269 is granted. The

28

1   requests are reasonably calculated to lead to the discovery of admissible evidence relevant to
2   several issues in the case.  For example, the requested information is likely to lead to information
3   regarding payments from Larian to Bryant, which is relevant to, among other things, the timing of
4   the creation of Bratz.  The requested information is also likely to show Larian's income and net
5   worth, which are relevant to damages.  Further, Larian has failed to establish that the requests are
6   unduly burdensome.  Although Mattel has sought and obtained broad discovery of financial
7   information from MGA, Mattel is also entitled to seek financial information directly from Larian.

     Mattel's motion is denied as to Request No. 209, provided that Larian complies with
8
9   Request Nos. 207, 208 and 269.  In light of the discovery of financial information ordered herein
10  and other requests propounded to MGA, Mattel has not shown a compelling need for Larian's tax
11  returns.

12  Storage Devices:  Request Nos. 222 and 224

13      In Request Nos. 222 and 224, Mattel seeks digital storage devices and documents relating
14  to digital storage devices used by Larian to create, prepare, generate, copy, transmit, receive,
15  delete or modify digital information relating to Bratz, Angel, or Bryant.  Mattel contends that a
16  request for documents under Rule 34, Fed.R.Civ.P., operates as a request for documents stored in
17  electronic form.  Mattel also contends that Rule 34 permits a party to obtain and test computer
18  hard drives and other storage devices.

19      Larian contends that the requests are overbroad, unduly burdensome, duplicative, and
20  ignore his privilege and privacy interests.  Larian also objects to an inspection of his actual hard
21  drives or other storage devices based upon the Committee Note to Rule 34, Fed.R.Civ.P., which
22  states that the amendment of Rule 34 relating to "electronically stored information is not meant to
23  create a routine right of direct access to a party's electronic information system."  See
24  Fed.R.Civ.P. 34(a)(1), 2006 Adv. Comm. Notes.  Larian contends that there is no justification for
25  an inspection of his electronic devices because there is no allegation that he improperly deleted
26  documents.

27      Mattel's motion to compel documents responsive to Request Nos. 222 and 224 is denied.

28
    Bryant v. Mattel, Inc.,                                          16
    CV-04-09049 SGL (RNBx)

                          EXHIBIT  28
                          PAGE  164

1   With respect to Request No. 222, Larian correctly notes that Rule 34 was not intended to

2   authorize the routine production of a party's electronic devices. Mattel attempts to justify

3   Request No. 222 by pointing to various instances of alleged destruction of evidence. See Mattel's

4   Consolidated Separate Statement at pp. 203-204 (purported destruction of Larian's computer

5   laptops; "wiping" information from the hard drives of Larian's computer laptops every six

6   months; redacting "Barbie Collectibles" from a faxed version of Bryant's Bratz agreement; and

7   destructive testing of Bryant's original Bratz drawings). However, Mattel fails to explain how

8   these alleged instances of evidence destruction justify Request No. 222, other than to assert that it

9   has a right to inspect Larian's storage devices to ensure that relevant information has not been

10  deleted or permanently destroyed. Mattel's stated purpose suggests instead that Mattel is

11  launching a fishing expedition in pursuit of new claims, which is not permitted by the Federal

12  Rules of Civil Procedure. See e.g. Rivera v. NIBCO, Inc., supra. Furthermore, Mattel's stated

13  purpose for inspecting Larian's storage devices does not justify the breadth of Request No. 222.

14  Among other things, Request No. 222 encompasses every storage device that Larian has used to

15  copy digital information relating to Bratz. Mattel does not need every CD and DVD containing

    copies of Bratz-related video and audio content, but that is what the request seeks.

16        Request No. 222 is also duplicative because it requests information that is sought in

17  numerous other requests served on Larian as well as MGA. Mattel has served hundreds of

18  requests for documents and communications relating to Bratz, Angel, and Bryant. To comply

19  with the requests, Larian was required to search for documents in both hard-copy and electronic

20  form. Under the circumstances, it is unnecessary for Larian to also produce the requested storage

21  devices.

22        Documents responsive to Request No. 224 are minimally relevant (if at all) to the claims

23  and defenses in the case, and therefore do not justify the burden of production on Larian.

24

25  Bryant's Storage Devices: Request Nos. 225, 227 and 228

26        In Request Nos. 225, 227 and 228, Mattel seeks digital storage devices and documents

27  relating to digital storage devices used by Bryant to create, prepare, generate, copy, transmit,

28

1  receive, delete or modify digital information relating to Bratz, Angel, or MGA.

2      Larian contends that the requests are improperly directed to him because he does not have

3  personal possession of Bryant's hard drive or storage devices, or other information about those

4  devices. Mattel's Consolidated Separate Statement at p. 206. Larian also contends that the

5  requests are overbroad and unduly burdensome for the reasons discussed above in connection

6  with Request Nos. 222 and 224.

7      Mattel's motion to compel documents responsive to Request Nos. 225, 227 and 228 is

8  denied for the reasons already discussed in connection with Request Nos. 222 and 224.

9

10  MGA Hong Kong and MGA Mexico: Request Nos. 272 and 273

11      In Request Nos. 272 and 273, Mattel seeks documents relating to the ownership of MGA

12  Entertainment HK Ltd. ("MGA Hong Kong") and MGAE de Mexico S.r.l. de C.V. ("MGA

13  Mexico"), both of which are named defendants. In his supplemental responses, Larian agrees to

14  produce documents sufficient to show the ownership of these entities.

15      Mattel contends that the requests seek information relevant to refute MGA Mexico's

16  personal jurisdiction defense, and which bear on whether the acts of Larian and others are

17  attributable to the entities. Mattel also contends that Larian's (or MGA's ) ownership interest in

18  these companies is relevant to net worth. Mattel contends that Larian's supplemental response is

19  inadequate because it would allow Larian to withhold contradictory information and conceal the

20  true ownership of the business entities. Furthermore, Mattel contends that it is entitled to know

21  the ownership of these entities at times when different allegedly wrongful acts took place and to

22  determine if the ownership structure changed as a means of concealing assets or concealing the

23  payments of commercial bribes.

24      Larian contends that these requests should not be made to him, but to the entities

25  themselves or to MGA. Further, Larian contends that the requests are duplicative of a request

26  Mattel served on MGA Mexico, another request served on MGA Hong Kong, and another request

27  served on MGA. Moreover, Larian contends that the requests are overbroad and unduly

28  burdensome, and that at most, he should only have to produce a list of owners.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _28_

PAGE _166_

18

1   Mattel contends that Larian cannot avoid his duty to respond to these requests simply by
2   saying that the information is obtainable from another source. Further, Mattel contends that
3   Larian has failed to establish that the requests are unduly burdensome.

4   Mattel's motion to compel documents responsive to Request Nos. 272-273 is denied
5   pursuant to Rule 26(b)(2), Fed.R.Civ.P., because the requested information is clearly obtainable
6   from another source that is more convenient, less burdensome, or less expensive, namely MGA
7   Mexico and MGA Hong Kong. The requests are also overbroad and unduly burdensome.

## IV. CONCLUSION

8   For the reasons set forth above, it is hereby ordered as follows:

9   1.   At meet and confer sessions held after the filing of this motion, Larian agreed to
10  produce documents in response to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-76, 82-101, 139-
11  146, 213, 221 and 223. Accordingly, Larian shall produce, without limitation, all non-privileged
12  documents that are responsive to these Requests.

13  2.   With respect to the remaining requests that are at issue in this motion, Larian shall:
14       A.   produce, without limitation, all non-privileged documents that are
15  responsive to Request Nos. 79, 180, 198 (for the time period 1999-2005), 207, 208 and
16  269; and

17       B.   produce, in accordance with his supplemental responses, non-privileged
18  documents that are responsive to Request Nos. 80, 81, 113-115, 123-125, 179, 181 and
19  209.

20       C.   Larian may produce documents responsive to Request Nos. 179, 180 and
21  181 in redacted form as provided herein.

22       D.   Mattel's motion is denied as to Request No. 178, 190-192, 194-197, 199,
23  209, 222, 224, 225, 227, 228, 272 and 273.

24  3.   Larian shall produce all non-privileged documents that are required by this Order
25  that are in his possession, custody or control and that have not already been produced no later
26  than January 11, 2008.

27  4.   Larian shall produce a privilege log no later than January 15, 2008.

28  
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

19

EXHIBIT ___28___

PAGE ___167___

1        5.    Mattel's request for sanctions is denied.

2        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3    Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5    Dated: December 31, 2007

6                        HON. EDWARD A. INFANTE (Ret.)
                        Discovery Master

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

               20

EXHIBIT _____28_____

PAGE _____168_____

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 2, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY ISAAC LARIAN; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzle Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 2, 2008, at San Francisco, California.

_____
Sandra Chan

EXHIBIT ___28___

PAGE ___169___