# EXHIBIT 46

**ORIGINAL**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5  (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Plaintiff and Cross-
   Defendant
9  Mattel, Inc.

10            UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12                  EASTERN DIVISION

13 | CARTER BRYANT, an         | CASE NO. CV 04-9049 SGL (RNBx)
   | individual,                |
14 |                            | Consolidated with
   |          Plaintiff,        | Case No. CV 04-09059
15 |                            | Case No. CV 05-02727
   |     vs.                    |
16 |                            | **DISCOVERY MATTER**
   | MATTEL, INC., a Delaware   |
17 | corporation,               | **[To Be Heard By Discovery Master Hon.**
   |                            | **Edward Infante (Ret.) Pursuant To The Court's**
18 |          Defendant.        | **Order Of December 6, 2006]**
19 |                            | MATTEL, INC.'S NOTICE OF MOTION AND
   | AND CONSOLIDATED           | MOTION TO COMPEL PRODUCTION OF
20 | ACTIONS                    | DOCUMENTS AND INTERROGATORY
   |                            | ANSWERS BY MGA ENTERTAINMENT, INC.;
21 |                            |
   |                            | AND MEMORANDUM OF POINTS AND
22 |                            | AUTHORITIES
23 |                            | [Separate Statement and Declaration of Michael T.
   |                            | Zeller filed concurrently herewith]
24 |                            |
   |                            | Hearing Date: TBA
25 |                            | Time: TBA
   |                            | Place: TBA
26 |                            |
   |                            | Discovery Cut-off: None Set
27 |                            | Pre-trial Conference: None Set
   |                            | Trial Date: None Set
28 |                            |

EXHIBIT _46_

PAGE _345_

2-2

MATTEL, INC.'S MOTION TO COMPEL

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that at a telephonic conference before

3  Discovery Master Hon. Edward Infante (Ret.) that will occur on a date and at a time

4  to be determined by Judge Infante, plaintiff Mattel, Inc. ("Mattel") will, and hereby

5  does,  move the Court:

6        (1) to compel MGA Entertainment, Inc. ("MGA") to produce

7  documents responsive to Mattel Request Nos. 1, 2, 6, 7, 8, 9, 10, 11, 12, 13, 26, 27,

8  32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 43, 45, 46, 49, 50, 51, 53, 55, 57, 59, 61, 63,

9  64, 66, 67, 69, 70, 88, 90, 91, 92, 96, 97, 98, 99, 100, including all documents,

10  regardless of date of creation, relating to the origins of Bratz and the design,

11  development and marketing of Bratz prior to June 31, 2001;

12        (2) to compel MGA to produce all redacted documents in un-redacted

13  form; serve a complete privilege log; and complete its production by producing

14  missing attachments, fax cover pages and the like;

15        (3) to compel MGA to answer fully and completely Mattel

16  Interrogatories Nos. 5-11; and

17        (3) for an award of sanctions against MGA in the amount of $6,700.00,

18  which represents a portion of the costs incurred by Mattel in bringing this Motion.

19        This Motion is made pursuant to <u>Federal Rules of Civil Procedure</u> 34

20  and 37 on the grounds that Mattel's Requests seek discoverable information and

21  MGA's objections lack merit.

22        This motion shall be heard by the Honorable Edward Infante,

23  Discovery Master.  The parties met and conferred regarding this motion on August 8

24  and 16, 2006 and on January 26, 2007.

25

26

27

28

**EXHIBIT** ___46___

**PAGE** ___346___

MATTEL, INC.'S MOTION TO COMPEL

1            This Motion is based on this Notice of Motion and Motion, the

2    accompanying Memorandum of Points and Authorities, the Declaration of

3    Michael T. Zeller filed concurrently herewith, the Separate Statement filed

4    concurrently herewith, the records and files of this Court, and all other matters of

5    which the Court may take judicial notice.

6

7    DATED: February 2, 2007        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

8

9                              By _____

10                                 Michael T. Zeller

                              Attorneys for Plaintiff and Cross-Defendant

11                                 Mattel, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27           **EXHIBIT** ___46___

28           **PAGE** ___347___

-1-

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

Preliminary Statement ..................................................................................... 1

Argument ........................................................................................................ 3

I.    MGA's Production Is Incomplete And Unintelligible. ..................................... 3

II.   MGA Has Engaged In A Practice Of Failing To Produce Responsive Documents Until Mattel Discovers Such Documents From Other Sources. ....................................................................................................... 7

III.  MGA's Refusal To Produce Any Documents From Its Hong Kong Subsidiary Is Contrary To Law. ................................................................. 11

IV.  MGA's Failure To Produce Prior Testimony Regarding Bratz Frustrates Mattel's Ability To Gather Evidence And Identify Witnesses. ...................... 13

V.   MGA's Failure To Provide Full And Complete Answers To Mattel's Interrogatories Relating To The Origins Of Bratz Frustrates Mattel's Ability To Gather Evidence And Identify Witnesses. ................................... 15

VI.  MGA Should Be Sanctioned. ........................................................................ 18

EXHIBIT ___46___

PAGE ___348___

1

# TABLE OF AUTHORITIES

2

**Page**

3

### Cases

In re ATM Fee Antitrust Litigation,
233 F.R.D. 542 (N.D. Cal. 2005) .................................................................... 12

Bohannon v. Honda Motor Co., Ltd., et al.,
127 F.R.D. 536 (D. Kan. 1989) ...................................................................... 14

Braley v. Campbell,
832 F.2d 1504 (10th Cir. 1987) ...................................................................... 19

Davis v. Fendler,
650 F.2d 1154 (9th Cir. 1981) ........................................................................ 16

Hyde & Drath v. Baker,
24 F.3d 1162 (9th Cir. 1994) .......................................................................... 19

Miller v. Federal Express Corp.,
186 F.R.D. 376 (W.D. Tenn. 1999) ................................................................ 17

RTC v. Dabney,
73 F.3d 262 (10th Cir. 1995) .......................................................................... 19

Richmark Corp. v. Timber Falling Consultants,
959 F.2d 1468 (9th Cir.), cert. denied, 506 U.S. 948 (1992) ....................... 16

U.S. v. Internaitonal Union of Petroleum and Industrial Workers,
870 F.2d 1450 (9th Cir. 1989) ........................................................................ 12

VNA Plus, Inc. v. Apria Healthcare Group, Inc.,
1999 WL. 386949 (D. Kan. 1999) .................................................................. 17

### Statutes

28 U.S.C. § 1927 ................................................................................................. 19

Fed. R. Civ. P. 33(b)(3) ...................................................................................... 16

Fed. R. Civ. P. 33(b)(6) ....................................................................................... 7

Fed. R. Civ. P. 33(d) .......................................................................................... 17

Fed. R. Civ. P. 34 ................................................................................................. i

Fed. R. Civ. P. 37(a)(4) ...................................................................................... 19

EXHIBIT 46

PAGE 349

07209/2046181.3

-ii-

1

## Miscellaneous

2  Moore's Federal Practice § 33.174[2]......................................................................... 16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  EXHIBIT __46__

28  PAGE __350__

07209/2046181.3

-iii-

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Mattel, Inc. ("Mattel") seeks to compel defendant MGA Entertainment, Inc. ("MGA") to produce all documents—regardless of their date of creation—relating to the origin, conception, design and development of Bratz and to fully answer Mattel's Interrogatories on those subjects. As the Discovery Master observed in his recent Order granting Mattel's motion to compel against defendant Carter Bryant, "at the heart of this lawsuit is a dispute over the rights to the 'Bratz' dolls."[1] The Order makes clear that documents relating to the origin, design and development of Bratz are thus discoverable.

MGA, however, continues to withhold information on these subjects and, despite Mattel's repeated requests, has failed to cure the deficiencies in MGA's production. To date, Mattel has produced nearly 60,000 pages of documents. In contrast, MGA has produced a few thousand pages.[2] Not only are certain categories of critical documents relating to Bratz absent from MGA's production,[3] but what little MGA has produced is itself deficient. Among other things, MGA's production includes pages that are replete with redactions, often to the point where all or most of the entire page is blank except for the Bates number, "Attorneys' Eyes Only" and "Redacted" stamps put on them by attorneys.[4] The net result of these multiple deficiencies is to render MGA's production both woefully incomplete and

---

[1] Order Granting Mattel's Motion to Compel Production of Documents, dated January 25, 2007, at 2, attached as Exhibit 1 to the Declaration of Michael T. Zeller, dated February 1, 2007 and filed concurrently herewith ("Zeller Dec.").

[2] Zeller Dec., ¶ 3.

[3] For instance, MGA has not produced any internal documents from its Hong Kong office, even though it was involved in the development of Bratz. See Zeller Dec., Exh. 7.

[4] See e.g., sample pages from MGA's production, Zeller Dec., Exhs. 2-6.

1   unintelligible, and MGA has failed to produce clearly relevant documents regarding
2   the origin, conception, design and development of Bratz.  MGA's failure to comply
3   with its discovery obligations also extends to its incomplete or non-existent answers
4   to Mattel's Interrogatories seeking basic information about these same subjects.
5   These facts alone justify granting Mattel's Motion to Compel.  However, these
6   deficiencies are even more disturbing in light of MGA's pattern of not producing
7   critical documents or identifying witnesses involved with Bratz until Mattel
8   independently discovers such documents from another source or such witnesses
9   come forward.

10   MGA also has no legitimate excuse for its stonewalling here.  MGA's
11   arguments attempting to justify its incomplete and heavily redacted production, such
12   as its artificial "First Generation Bratz" distinction, are virtually identical to the
13   positions that Bryant had asserted in his refusals to produce relevant Bratz
14   documents and that the Discovery Master had rejected in his Order granting Mattel's
15   Motion to Compel against Bryant.  Although MGA at one point stated that it would
16   reconsider its positions in light of that Order, MGA nevertheless opted to persist in
17   its failures and refusals.   MGA should be compelled to produce responsive
18   documents without redactions (except to protect attorney-client privilege or attorney
19   work product and are reflected on a privilege log) responsive to Mattel's document
20   requests and to fully and completely answer Mattel's Interrogatories.

21   MGA's (and Bryant's) pattern of obstructionism notwithstanding,
22   Mattel has uncovered evidence confirming that (1) Bryant designed Bratz while
23   employed by Mattel; (2) Bryant used Mattel resources to design Bratz; (3) MGA
24   contracted with Bryant to obtain the rights to Bratz knowing that Bryant was
25   employed by Mattel; and (4) MGA paid Bryant for work performed on Bratz while
26
27
28

EXHIBIT __46__

PAGE __352__

-2-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1  he was still employed by Mattel.[5]  Furthermore, Mattel has uncovered evidence of,

2  and is asserting claims for, trade secret theft, copyright infringement and acts of

3  unfair competition by defendants.[6]  MGA's incomplete production and its

4  inadequate Interrogatory answers jeopardize Mattel's ability to pursue its rights and

5  to defend itself against MGA's own claims -- claims for which MGA recently

6  announced it would be seeking "billions" of dollars in damages.[7]  Mattel respectfully

7  requests that the Discovery Master grant this motion in its entirety, including by

8  ordering MGA to produce all non-privileged documents relating to the origin,

9  conception, design and development of Bratz, and to fully answer Mattel's

10  Interrogatories.

11

12                          **Argument**

13  **I.    MGA's Production Is Incomplete And Unintelligible.**

14            MGA's production contains numerous inappropriate redactions that do

15  not appear to be based on privilege, such that more than half of MGA's production

16  consists of pages that are <u>entirely</u> redacted.[8]  Pages with text are frequently so

17  heavily redacted as to be unintelligible.  For instance, multiple emails produced by

18  MGA have everything but the "To," "From" and "Subject" header information

19  redacted.[9]  Other pages include illegible text or images and/or have text or other

20

21

22        [5]  Mattel's Amended Answer and Cross-Complaint in *MGA v. Mattel, Inc.*, Case

23  No. CV 05-2727 SGL (RNBx) (the "Unfair Competition Case") at ¶¶ 26-27, Zeller
    Dec., Exh. 8.

24        [6]  Id. at ¶¶ 37-54.
        [7]  "Nightline" transcript at 5, Zeller Dec., Exh. 56.  MGA Complaint at ¶ 101-

25  125, Zeller Dec., Exh. 9.  Moreover, MGA's Complaint states on its face that it

26  seeks "tens of millions" of dollars from Mattel.  Id. at Prayer ¶ 2.
        [8]  See, e.g. Entirely redacted pages from MGA's production, Zeller Dec., Exh. 2.

27        [9]  See, e.g. Heavily redacted emails from MGA's production Zeller Dec., Exh. 3.

28

1  information cut-off.[10]   Other pages reference attachments to emails and other
2  documents, but the attachments are missing.[11]  In addition, invoices are produced for
3  which no corresponding check stubs, purchase orders or requisitions were
4  produced.[12]  In some cases, the identifying information necessary to match invoices
5  with other financial documents may have been redacted.  Many other pages are even
6  redacted in their entirety.[13]

7          MGA's justifications for its heavy-handed redactions are almost
8  identical to the ones that Bryant had asserted and that were rejected by the
9  Discovery Master in his Order Granting Mattel's Motion to Compel Production of
10 Documents of Bryant.  For instance, like Bryant, MGA has withheld information
11 and documents relating to any Bratz product other than "First Generation" Bratz—
12 an artificial, and illogical, limitation which the Discovery Master rejected.[14]
13 Further, MGA imposed a "First Generation" Bratz limitation with regards to royalty
14 statements from MGA to Bryant, producing heavily redacted statements that show
15 only Bryant's earnings on the "First Generation" Bratz.  This limitation, too, was one
16 rejected by the Discovery Master in his Order.[15]  Like Bryant, MGA also stood on
17 its refusal to produce evidence relating to agreements between MGA and Bryant,
18 including their fee arrangements.  The Discovery Master similarly rejected this
19 limitation on discovery, noting that such agreements go to issues of liability, bias
20 and lack of credibility.[16]

21

22  [10]  See, e.g., Cut-off and illegible pages from MGA's production, Zeller Dec.,
23  Exh. 4.
     [11]  See, e.g., Email with missing attachment from MGA's production, Zeller
24  Dec., Exh. 5.
     [12]  See, e.g., Invoice from MGA's production, Zeller Dec., Exh. 6.
25  [13]  See, e.g., Zeller Dec, Exh. 2.
26  [14]  See Discovery Master's Order at 12-13, Zeller Dec., Exh. 1.
     [15]  Id. at 13-14.
27  [16]  Id. at 12.

28
     EXHIBIT  46
                                                        -4-
07209/2046181.3                                          MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL
     PAGE  354

1          Consistent with the Discovery Master's Order, and because they seek

2  clearly discoverable information, MGA should be compelled to produce the

3  following categories of documents:

4       • Documents referring or relating to Bryant's agreements with MGA,

5           including communications exchanged by the parties and drafts of the

6           agreements;[17]

7       • Documents referring or relating to agreements discussed or negotiated

8           by Bryant and MGA while he was employed by Mattel other than

9           signed agreements that were "reached" while Bryant was employed by

10         Mattel;[18]

11      • Documents referring or relating to Bryant's fee agreements with MGA

12          or other indemnity agreements relating to this action;[19]

13      • All documents relating to works created or services provided by Bryant

14          to MGA during his Mattel employment, regardless of whether they

15          resulted in a Bratz doll released in June of 2001;[20]

16      • All non-privileged documents referring or relating to designs that

17          Bryant created, authored, produced, conceived of or reduced to practice

18          after October 20, 2000 as purported "works-made-for-hire" (whether in

19          whole or in part) for or on behalf of MGA;[21]

20      • All documents referring or relating to the conception, creation, design,

21          development, engineering or sculpting of Bratz;[22]

22

23

---

24  [17] Id. at 12.

25  [18] Id. at 12.
     [19] Id. at 12.

26  [20] Id. at 12-13.

27  [21] Id. at 12-13.
     [22] Id. at 12-13.

28

07209/2046181.3

EXHIBIT _46_

PAGE _355_

-5-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- All non-privileged documents referring or relating to work, activities or services that Bryant performed concerning Bratz after October 20, 2000;[23]

- All non-privileged documents referring or relating to Bryant's participation in the conception, creation, design, development, sculpting, tooling, production or manufacture of Bratz;[24]

- All prototypes, models, samples and tangibles referring or relating to designs for dolls, doll accessories or toys that Bryant produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, for MGA;[25]

- All documents relating to Bryant's payments from MGA, including all royalty statements in unredacted form;[26]

- All communications between Bryant and MGA or third parties that relate to designs Bryant created while employed by Mattel;[27]

- All communications between Bryant and MGA that relate to Mattel employees;[28]

- All communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment;[29]

[23] Id. at 12-13.
[24] Id. at 12-13.
[25] Id. at 12-13.
[26] Id. at 13-14.
[27] Id. at 15-16.
[28] Id. at 15-16.
[29] Id. at 15-16.

EXHIBIT 46

PAGE 356

07209/2046181.3

-6-
MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1      • All non-privileged communications between Bryant and MGA that
2         post-date Bryant's Mattel employment;[30] and

3      • All non-privileged documents referring or relating to any copyright,
4         patent or any other application or registration for designs that Bryant
5         produced, created, authored, conceived of or reduced to practice,
6         whether alone or jointly with others, since January 1, 1995, including
7         without limitation all communications pertaining thereto.[31]

8         An Order is necessary to ensure that MGA can no longer use artificial
9  distinctions to cherry-pick what documents it chooses to produce and which
10 documents it chooses to withhold from Mattel and to ensure that what MGA
11 produces is produced in unredacted from (unless it is to protect privilege and is
12 reflected on a privilege log).

13

14 **II.     MGA Has Engaged In A Practice Of Failing To Produce Responsive**
15 **Documents Until Mattel Discovers Such Documents From Other Sources.**

16        On multiple occasions, MGA has failed to produce responsive
17 documents until after a third party produces them.  For example, Anna Rhee, an
18 MGA vendor, produced documents in January 2005 pursuant to subpoena and
19 testified at her deposition that invoices she submitted to MGA in June 2000 were
20 invoices for Bratz face-painting.[32]  Subsequently, MGA produced the invoices in

21

22

23   [30]  Id. at 15-16.
24   [31]  Id. at 16.
25   [32]  Deposition of Anna Rhee ("Rhee Deposition"), dated January 7, 2005, at
     105:2-110:9, Zeller Dec., Exh. 10; Rhee Invoice, Zeller Dec., Exh. 11.  A more
26   detailed account of matters pertaining to Ms. Rhee's testimony and documents is
27   included in Mattel's motion to compel with respect to MGA's Rule 30(b)(6) witness,
     Kerri Brode.
28

EXHIBIT __46__

PAGE __357__

-7-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1   question and their alleged internal backup.[33]  In September 2006, another third-party

2   witness, Steven Linker, produced design drawings, emails and other documents

3   relating to Bratz that Linker had received *from or exchanged with MGA and*

4   *Bryant* before Bryant left Mattel.[34]   Neither MGA nor Bryant had produced

5   previously many of these documents.

6            Linker's testimony and the documents he produced, including emails

7   and other documents relating to Bratz that pre-dated Bryant's departure from Mattel

8   and that had not been produced by MGA or Bryant, established that the Bratz

9   project was much further along before Bryant left Mattel than MGA and Bryant had

10  claimed.  For example, before Linker's testimony, MGA had produced an email

11  relating to Bratz development that Linker's design partner, Liz Hogan, had sent to

12  MGA on October 23, 2000, a date which was conveniently after Bryant left Mattel.

13  MGA, however, had not produced the <u>earlier</u> emails—those pre-dating Bryant's last

14  day of employment at Mattel—that Hogan had exchanged with MGA on that very

15  same subject.[35]  Mattel obtained those only when Linker produced them pursuant to

16  subpoena.  These were not the only documents that MGA withheld.  Among

17  Linker's production was a key design drawing for the three-dimensional Bratz

18  dolls—a drawing Bryant previously testified at his deposition that he had not created

19  until November 2000 after he had left Mattel.[36]   Linker's testimony and the

20

---

21  [33]  See, e.g., Rhee Invoice from MGA's Production, Zeller Dec., Exh. 12.

22  [34]  Deposition of Steven Linker ("Linker Deposition"), dated September 13,

23  2006, at 56:21-59:23, 66:7-67:9, 76:22-78:23, 80:16-91:5, Zeller Dec., Exh. 13;
    Hogan emails, Zeller Dec., Exh. 14; packet produced by Steve Linker that he

24  received from MGA on October 19, 2000 that includes a Bratz design drawing by

25  Carter Bryant, Bates No. SL00044, Zeller Dec., Exh. 15.
    [35]  Hogan email from MGA's Production, Zeller Dec., Exh. 16.

26  [36]  Deposition of Carter Bryant ("Bryant Deposition") at 350:16-350:25, 351:15-

27  353:13, 527:17-528:20, Zeller Dec., Exh. 17; Bratz design drawing by Carter
    Bryant, Zeller Dec., Exh. 18.

28

1   documents he produced, however, prove that MGA itself gave that same design
2   drawing (as well as other Bratz development documents) to Linker at a meeting with
3   MGA on October 19, 2000, <u>before</u> Bryant left Mattel.[37]   It was only after Linker's
4   deposition and MGA's glaring omissions had been revealed that MGA then
5   produced documents referencing the October 19, 2000 meeting between Linker and
6   MGA that Linker had testified.[38]

7          Although MGA produced a few documents referencing the October 19,
8   2000 meeting with Linker, and did so only after MGA's failure to produce highly
9   material documents was exposed, MGA still has not produced any drafts,
10  communications or similar documents relating to the materials that MGA gave
11  Linker before Bryant left Mattel.  Those materials, which include finished design,
12  marketing and pricing documents for Bratz, undoubtedly did not emerge from thin
13  air in full-blown fashion.  In fact, Hogan's emails show that the packaging team
14  needed detailed information about the Bratz doll products—size, piece-count, price,
15  etc.—before she and Linker could provide a quote for Bratz packaging work to
16  MGA.[39]  Yet, to this day, MGA has not produced documents or drafts showing how
17  or when the Bratz products reflected in the MGA materials that Linker produced
18  were designed, or how or when the retail prices, the product piece counts, the
19  information developed to describe each doll, and the prices for the dolls and
20  fashions that are listed in the materials were determined.

21         Further highlighting the point, there is, overall, an enormous disparity
22  between the extensive work that Mattel is now learning was done on Bratz
23  development before Bryant left Mattel and the minimalistic source documentation

24

25  [37]  Linker Deposition at 77:6-78:23, Zeller Dec., Exh. 13; Bratz design drawing
26  by Carter Bryant produced by Steve Linker, Zeller Dec., Exh. 15.
27  [38]  Day Planner Pages, Zeller Dec., Exh. 19.
    [39]  Hogan emails, Zeller Dec., Exh. 14.
28

07209/2046181.3

EXHIBIT ___46___
                                              -9-
PAGE ___359___    MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1    that MGA has produced for it.   Just two days before Linker's deposition in

2    September 2006, MGA produced for the first time bare bones invoices showing that

3    one vendor alone had already billed at least 169 hours for Bratz work she performed

4    before Bryant left Mattel.[40] Although this and other evidence thus strongly suggests

5    that extensive Bratz design and development was underway before Bryant left

6    Mattel, many categories of documents and communications that undoubtedly were

7    created as a matter of course reflecting the particulars of all this activity (and likely

8    also showing additional Bratz activity) have not been produced by MGA and

9    Bryant.

10        Mattel has reason to believe other responsive documents are being

11    withheld as well. MGA is obligated to produce bank records in its possession,

12    custody or control relating to products at issue in this case per a subpoena served on

13    Union Bank of California and an agreement the parties reached relating to those

14    records on June 20, 2006.[41] Pursuant to this agreement, MGA produced certain

15    cancelled checks from Union Bank.[42] However, Mattel's request was broader than

16    simply cancelled checks, encompassing signature cards, bank statements and deposit

17    slips.[43] In addition, relevant and responsive checks appear not to have been

18    produced. Cancelled checks from the Union Bank records and calendar entries from

19    a recent MGA production on January 4, 2007 identify David Dees as being a design

20

21       [40]   See Marlow invoices produced by MGA, Zeller Dec., Exh. 20.

22       [41]   Per the parties' agreement, MGA's counsel took possession of the documents

23    produced by Union Bank pursuant to the subpoena; MGA then was to produce any
documents relating to products at issue in the litigation and to produce documents

24    relating to particular vendors at Mattel's request. See Zeller Dec., ¶ 23; see also

25    Subpoena of Union Bank of California, Zeller Dec., Exh. 21.
      [42]   See, e.g., Cancelled checks produced by Union Bank, Zeller Dec., Exh. 22.

26       [43]   See Attachment A to Subpoena of Union Bank of California, Zeller Dec.,

27    Exh. 21; see also Dees Invoices from Union Bank's production, Zeller Dec., Exh.
22.

28

EXHIBIT ___46___

PAGE ___360___

-10-

1   vendor who billed an extensive amount of work on Bratz—$4,000 worth as of
2   February 2001 and another $7,015 by mid May 2001.[44]  Nonetheless, Mattel has not
3   received other documents showing the design work that he did on the project before
4   then.  MGA was obligated under Mattel's Requests to provide documents relating to
5   Dees, a vendor who worked on Bratz during the relevant time period.  Moreover,
6   per the parties' agreement relating to the Union Bank records, Mattel can request
7   documents for a specific vendor by name; however, Mattel should not be forced to
8   guess which vendors performed work on Bratz.

9           Mattel cannot be expected to receive only those MGA documents it
10  happens to obtain from third parties who have responsive documents—particularly
11  given that MGA and Bryant also had failed to identify third parties who have
12  relevant knowledge and documents, such as Linker, in their Interrogatory
13  responses.[45]  MGA should be compelled to produce all documents—regardless of
14  date of creation—relating to the origin, creation, conception, design and
15  development of Bratz.

16

17  **III.   MGA's Refusal To Produce Any Documents From Its Hong Kong**
18          **Subsidiary Is Contrary To Law.**

19          MGA's Hong Kong office, MGA Entertainment (HK) Limited ("MGA
20  Hong Kong"), played a key role in Bratz and has documents and things responsive
21  to Mattel's document requests.  MGA, however, refuses to produce documents or
22  things from MGA Hong Kong, and instead has limited its production to only

23

24  _____

25  [44]  Id.; see also Day planner pages, Zeller Dec., Exh. 23.
     [45]  See MGA's Response to Mattel's Interrogatory Nos. 5 & 6, Zeller Dec., Exh.
26  25; see also Mattel's Separate Statement In Support Of Mattel's Motion To Compel,
27  dated February 1, 2007 and filed concurrently herewith, ("Separate Statement") at
     60:16-60:26.
28

EXHIBIT ___46___
                              -11-
PAGE ___361___   MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1  communications between MGA in the U.S. and MGA Hong Kong.[46]   MGA
2  maintains that MGA Hong Kong is a separate company not located within the
3  jurisdiction of the United States and that documents and things located there are not
4  under MGA's "possession, custody or control."  However, MGA Hong Kong is
5  controlled by MGA and its central purpose is to implement parent MGA's policy.
6  Therefore, MGA has "legal control" over MGA Hong Kong and should be
7  compelled to produce any documents in its Hong Kong subsidiary's possession,
8  custody or control.  See In re ATM Fee Antitrust Litigation, 233 F.R.D. 542, 544
9  (N.D. Cal. 2005) (where the court ordered a company to produce any documents in
10  its wholly-owned subsidiary's custody that were responsive to the plaintiffs' requests
11  for production of documents as well as answer any interrogatories related to
12  information within the possession of the subsidiary).

13          Like MGA, the defendant in ATM conceded that its subsidiary had
14  responsive documents, but it contended that because the subsidiary was a "separate
15  legal entity," the defendant company did not have control over the documents. Id. at
16  545.  The ATM court rejected this argument, instead applying the "legal control
17  standard" for a parent's obligation to produce documents in the possession and
18  custody of a subsidiary. Id. at 545 (internal cites omitted).  A parent company has
19  "legal control" of its subsidiary if it has "the legal right to obtain documents upon
20  demand" and not simply the defendant's practical ability to obtain the documents
21  requested.  See U.S. v. Internaitonal Union of Petroleum and Industrial Workers,
22  870 F.2d 1450, 1463 (9th Cir. 1989).

23          Even based upon MGA's limited, heavily sanitized production, it is
24  clear that MGA exercises legal control over MGA Hong Kong.  There are numerous
25  emails in which MGA's CEO Isaac Larian gives specific direction to MGA Hong
26
27  [46]  Zeller Dec., Exh. 7.
28

EXHIBIT __46__

PAGE __362__

-12-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1  Kong about everything from personnel issues in Hong Kong to more general
2  manufacturing and sales issues.[47] In addition, Mr. Larian and Jahangir Makabi, both
3  of whom are MGA officers, are the sole directors of MGA Hong Kong. Bryant also
4  personally visited and worked at MGA Hong Kong in the Fall of 2000 to work on
5  Bratz.[48] Obtaining discovery from MGA Hong Kong is critical because MGA Hong
6  Kong was intimately involved with the production of Bratz in 2000 and early 2001;
7  thus it unquestionably has internal documents and things that can shed light on this
8  critical, and contested, time period. Further, in its Interrogatory responses, MGA
9  identifies only five people in the United States and then "various people then
10 employed in Hong Kong" as being involved in the conception, origin, creation, etc.
11 of the first embodiments of Bratz.[49] On the one hand, MGA states that it is not
12 obligated to produce responsive documents from MGA Hong Kong in response to
13 the Requests; simultaneously, MGA states that it does not have to identify by name
14 individuals in Hong Kong who worked on Bratz in response to the Interrogatories
15 because their identities can be determined from the documents. Neither argument
16 taken alone has merit, but together they certainly must fail.

17

18 **IV. MGA's Failure To Produce Prior Testimony Regarding Bratz Frustrates**
19     **Mattel's Ability To Gather Evidence And Identify Witnesses.**

20          Initially, MGA categorically refused to produce any declarations,
21 affidavits or other sworn written statements of any type by MGA that referred or
22 related to Bratz or Angel—the name that Rhee testified she was told to use on her

23

24

---

25  [47] See Larian email produced by MGA, Zeller Dec., Exhs. 26.
26  [48] See Bryant Deposition at 489:12-490:9, Zeller Dec., Exh. 17.
27  [49] See MGA's Response to Mattel's Interrogatory No. 5, Zeller Dec., Exh. 25;
    see also Separate Statement at 60:11-61:20.
28

EXHIBIT 46

-13-

PAGE 363

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1　early invoices for Bratz.[50]　Similarly, MGA categorically refused to produce any

2　transcripts or video and/or audio recordings of statements made by MGA under oath

3　that referred or related to Bratz or Angel.[51]　MGA also refused to produce any

4　documents that referred or related to Bratz or Angel that were filed, submitted and

5　served in the suit and/or arbitration proceedings brought by Farhad Larian—a

6　former MGA executive and Isaac Larian's brother.[52]　MGA maintained that such

7　documents were not relevant to the subject matter of the lawsuit or reasonably

8　calculated to lead to the discovery of admissible evidence.[53]

9　　　　　　This argument is without merit.　Any statements of fact made by MGA

10　in other sworn testimony relating to the timing, origins, and creation of Bratz or

11　Angel are relevant to this case in myriad ways, including for purposes of identifying

12　additional witnesses, establishing admissions of fact and impeachment through prior

13　statements. See Bohannon v. Honda Motor Co., Ltd., et al., 127 F.R.D. 536, 540 (D.

14　Kan. 1989) ("The transcripts of deposition testimony given and approved by

15　employees of [defendant]...are discoverable statements.")　The prior sworn

16　statements by MGA that Mattel has been able to obtain through a third party—but

17　that were never produced by MGA—revealed that (1) Bratz was first exhibited in

18　the fall of 2000 and (2) key Bratz design drawings that Bryant had testified in this

19

20

21

22

23　　[50]　Zeller Dec., Exh. 7.

24　　[51]　Id.

25　　[52]　Id.　Farhad Larian brought suit against his brother because Farhad claimed
that Isaac had concealed the development of Bratz beginning in early 2000 from

26　Farhad in order to buy Farhad's share of the company at a reduced price. Thus
materials in the case would be directly relevant to the origins and timing of Bratz.

27　　[53]　Id.

28

EXHIBIT ___46___

-14-

PAGE ___364___　MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1  case were created in 1998 were, in fact, created in 2000.[54]  Both of these facts are
2  obviously highly relevant to the present suit.

3          Over the course of the parties' meet and confers, MGA stated that it
4  would explore the possibility of producing such testimony and sworn statements if
5  Mattel agreed to produce testimony regarding products such as Flavas.[55]  However,
6  such products are at best only tangentially related to this suit.  While Mattel may be
7  amenable to producing such materials, Mattel should not have to barter to get
8  discovery to which it is clearly entitled and has long sought.  Such testimony
9  relating to Bratz is particularly important because the early development of Bratz is
10  highly contested in this case and MGA has made conflicting public statements over
11  the years regarding the origins of Bratz—attributing Bratz to everyone from Larian's
12  son to Larian himself to the result of some sort of doll design contest.[56]

13

14  **V.    MGA's Failure To Provide Full And Complete Answers To Mattel's**
15         **Interrogatories Relating To The Origins Of Bratz Frustrates Mattel's**
16         **Ability To Gather Evidence And Identify Witnesses.**

17          The deficiencies in MGA's production are magnified by the equally
18  serious shortcomings in MGA's responses to Mattel's Interrogatories relating to the
19  origins of Bratz.[57]

20

21

22

23     [54]  See Larian affidavit, Zeller Dec., Exh. 27; see also Lee Shiu Cheung
       affidavit and Exhibit LSC-3 to the affidavit, Zeller Dec., Exh. 28.
24     [55]  Torres Letter, Zeller Dec., Exh. 36.
       [56]  See, e.g., Zeller Dec., Exh. 29.
25     [57]  See Mattel, Inc.'s Second Set of Interrogatories to Defendant MGA
26  Entertainment, Inc. (the "Interrogatories"), Zeller Dec., Exh. 24; MGA's Response to
    Mattel's Second Set of Interrogatories (the "Interrogatory Responses"), Zeller Dec.,
27  Exh. 25.
28

1          As an initial matter, MGA failed to serve a response to Mattel's Second

2  Set of Interrogatories within the 30 days required by <u>Rule</u> 33(b)(3).[58] By failing to

3  serve a timely response (or timely objection), MGA has waived all objections. "Any

4  ground not stated in a timely objection is waived . . . ." <u>Federal Rule of Civil</u>

5  <u>Procedure</u> 33(b)(4).  Any objection not made within 30 days of service of an

6  interrogatory is waived unless the responding party seeks an extension of time to

7  answer or object. <u>Id.</u>; see Moore's Federal Practice § 33.174[2]; <u>Davis v. Fendler</u>,

8  650 F.2d 1154, 1160 (9th Cir. 1981) (holding that untimely service of response to

9  interrogatories waives objections); <u>Richmark Corp. v. Timber Falling Consultants</u>,

10  959 F.2d 1468, 1473 (9th Cir.) (stating that "failure to object to discovery requests

11  within the time required constitutes a waiver of any objection."), <u>cert. denied</u>, 506

12  U.S. 948 (1992).  Because MGA failed to provide full and complete responses

13  (without objection), Mattel may move the Court to order MGA to do so. <u>See, e.g.</u>,

14  <u>Richmark Corp.</u>, 959 F.2d at 1473.

15          Furthermore,  MGA's  responses  to  Mattel's  Second  Set  of

16  Interrogatories were, and remain, substantively deficient. Indeed, MGA's responses

17  to many of the Interrogatories simply consist of improper objections without any

18  substantive response. For example, the instructions to Mattel's Interrogatories direct

19

---

20    [58]  MGA's unverified Responses to Mattel's Second Set of Interrogatories were

21  faxed, without proof of service, at approximately 10:30 p.m. on May 30, 2006—six
days after they were due. Mattel personally served its Second Set of Interrogatories

22  to Defendant MGA Entertainment, Inc. on April 28, 2005. Pursuant to <u>Federal Rule</u>

23  <u>of Civil Procedure</u> 33(b)(3), MGA had thirty (30) days to respond to Mattel's
interrogatories. Judge Manella issued an order staying proceedings on May 20,

24  2005. At the time of the order, seven days remained for MGA to respond to Mattel's
Second Set of Interrogatories. Judge Larson issued an order lifting the stay on May

25  17, 2006. Accordingly, taking the stay into account, MGA's responses were due no

26  later than May 24, 2006. <u>See</u> Zeller Dec., Exh. 30; <u>see also</u> Court's Order Staying
Discovery in <u>Mattel, Inc. v. Bryant</u>; <u>Bryant v. Mattel, Inc.</u>; and <u>MGA Entertainment,</u>

27  <u>Inc. v. Mattel, Inc.</u>, dated May 20, 2005, Zeller Dec., Exh. 31.

28

EXHIBIT ___46___

PAGE ___366___

-16-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1  MGA to provide particulars about responsive individuals such as each individual's
2  name, address, telephone number and relationship to MGA.[59]  MGA completely
3  disregarded this.  Interrogatory No. 5 asked MGA to identify each person who was
4  involved in the creation, design and development of Bratz.  In response, MGA
5  named a few individuals who were known already in this litigation, in addition to
6  wholly unspecified "various people then employed in Hong Kong, the names of
7  whom are contained in documents previously produced by MGA."

8         MGA's responses violate Fed. R. Civ. P. 33(d).  Rule 33(d) requires
9  MGA to identify referenced documents specifically and in detail, either by their
10  Bates numbers or else through a sufficiently detailed description of them to allow
11  Mattel to ascertain which specific documents are being referenced.  See, e.g., Miller
12  v. Federal Express Corp., 186 F.R.D. 376, 385 (W.D. Tenn. 1999) (holding that,
13  under Rule 33(d), "[t]he responding party must specify the documents from which
14  the answer may be derived with sufficient detail to permit the requesting party to
15  locate it" and compelling party to identify such documents "by Bates numbers the
16  documents" being referenced); VNA Plus, Inc. v. Apria Healthcare Group, Inc.,
17  1999 WL 386949, at *5 (D. Kan. 1999) (party may not "simply refer generically" to
18  documents produced in interrogatory response).  This deficiency is present in
19  MGA's response to Interrogatory No. 6 as well.  MGA's vague, generalized
20  reference to a heavily redacted, incomplete production also compounds the
21  shortcomings of an already deficient answer.  The particular information requested
22  in  Mattel's  instruction  is  exactly  the  type  of  information—among  other
23  information—that MGA redacted in its production or have explicitly stated it is
24  withholding, such as the MGA Hong Kong documents.

25
26
27  [59]   See Interrogatories at 4:1-5:5, Zeller Dec, Exh. 24.
28

07209/2046181.3

EXHIBIT 46
PAGE 367

-17-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1    Moreover, MGA simply objects to Interrogatory Nos. 7-9 and 11
2  without providing any substantive response. As noted above, these objections were
3  waived by MGA's failure to timely respond to the Interrogatories. Even if the
4  objections were timely, MGA's objections don't hold water. Interrogatories 7 and 8
5  seek critical evidence that goes to the heart of this case—the earliest representations
6  of Bratz and the project known as "Angel." As the Discovery Master has noted, the
7  rights to Bratz are at issue in this case.[60] Further, MGA contests Anna Rhee's
8  testimony that work she performed work in June 2000 on Bratz, contending that
9  Rhee actually worked on a different project identified as "Angel" or "Prayer Angels"
10 at that time. Interrogatory No. 9 asks MGA to identify each sworn statement that
11 refers or relates to the origins and creation of Bratz. As with the evidence sought by
12 Interrogatory Nos. 7 and 8, this information is critical to this case. Finally,
13 Interrogatory No. 11 asks MGA to identify phone numbers for its CEO Isaac Larian.
14 Given Mr. Larian's personal involvement in Bratz, this information may bear on the
15 defendants' story regarding the timing of Bratz. Without the numbers, Mattel cannot
16 check for them against phone records. MGA has no basis for withholding any of
17 this information and, therefore, should be compelled to provide full and complete
18 answers to the Interrogatories in question.

19

20 **VI.   MGA Should Be Sanctioned.**

21    Under the Federal Rules, a party bringing a motion to compel is entitled
22 to the "reasonable expenses incurred in making the motion, including attorney's fees,
23 unless the court finds that the motion was filed without the movant's first making a
24 good faith effort to obtain the disclosure or discovery without court action, or that
25 the opposing party's nondisclosure, response or objection was substantially justified,

26

27    [60]  Discovery Master's Order at 2, Zeller Dec., Exh. 1.

28

EXHIBIT __46__

-18-

PAGE __368__

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

07209/2046181.3

1   or that other circumstances make an award of expenses unjust." Fed. R. Civ. P.

2   37(a)(4). The burden of establishing substantial justification is on the party being

3   sanctioned. Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994).

4   Independently, sanctions may be imposed under 28 U.S.C. § 1927, which provides

5   that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably

6   and vexatiously may be required by the court to satisfy personally the excess costs,

7   expenses, and attorneys' fees reasonably incurred because of such conduct."

8   Sanctions under this section are appropriate "for conduct that, viewed objectively,

9   manifests either intentional or reckless disregard of the attorney's duties to the

10  court." RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995), citing Braley v.

11  Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987).

12          Sanctions are called for here. MGA cannot offer any legitimate excuse

13  for its repeated failure to produce clearly responsive documents and fully answer

14  Interrogatories on matters that go to core issues in this case. MGA has asserted

15  numerous objections that have no basis in law or fact. MGA has withheld, and

16  continues to withhold, indisputably relevant information. MGA has redacted vast

17  portions of documents, stripping them of salient information, and rendering them

18  unintelligible. And MGA has produced documents that are demonstrably

19  incomplete, including faxed communications that omit crucial information. Most

20  troubling, MGA has been caught hiding the ball: failing to produce highly relevant

21  MGA documents until after Mattel discovers the documents via third parties.

22  MGA's actions are contrary to its obligations and imperil the truth-seeking function

23  of the Court.

24          Throughout the meet and confer process, MGA claimed it would

25  remedy the deficiencies with its production, but never actually took any action to do

26

27

28

EXHIBIT ___46___

PAGE ___369___

-19-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

07209/2046181.3

1    so.[61]  When Mattel again approached MGA after the holidays to obtain compliance
2    in the hopes of avoiding motion practice, MGA promised that it would rectify some
3    unspecified problems with the May 2005 production, but then still did not do so.
4    When queried as to its intent, during a meet and confer on January 26, 2007, all
5    MGA would commit to was making superficial changes to its production, such as
6    correcting illegible text and cut-offs, rather than addressing the production's
7    substantive defects.[62]  Although MGA represented at that time that it would review
8    the Discovery Master's recent Order compelling Bryant's production to determine
9    whether or not MGA would reconsider any of its positions and that it would let
10    Mattel know by January 30, that date came and went without further response by
11    MGA.[63]

12       MGA's stratagems are the definition of unreasonable and vexatious,
13    and MGA and its counsel should be sanctioned for the fees and costs Mattel has
14    been forced to expend as a result of its evasions in connection with its document
15    production and Interrogatory responses.  Mattel therefore requests that MGA be
16    ordered to pay $4,700.00 as partial reimbursement for the fees and costs that Mattel
17    has incurred on this Motion.[64]

18
19
20
21
22
23
24

25    [61]   See Zeller Dec., ¶ 34, Exh. 32-43.
26    [62]   See Zeller Dec., Exhs. 42 & 43.
27    [63]   See Zeller Dec. Exh. 43.
28    [64]   See Zeller Dec., ¶ 57.

07209/2046181.3

1

2                              **Conclusion**

3                In light of the myriad deficiencies in MGA's production, Mattel

4   respectfully requests that MGA be compelled to fully answer Mattel's

5   Interrogatories and to produce all documents responsive to Mattel's document

6   requests, including, most importantly, those relating to the origin, conception,

7   design and development of Bratz.

8

9   DATED: February 2, 2007          QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
10

11                                   By  *Michael T. Z*
12                                      Michael T. Zeller
                                        Attorneys for Plaintiff and Cross-Defendant
13                                      Mattel, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27        EXHIBIT _____ 46

28        PAGE _____ 371

                                             -21-
                          MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

# EXHIBIT 47

CONFORMED COPY
LODGED
FILED

2007 MAY 16  PM 1: 59   2007 MAY 16  PM 2: 00

CLERK U.S. DISTRICT COURT   CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.   CENTRAL DIST. OF CALIF.
RIVERSIDE   RIVERSIDE
BY_____

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:   (415) 774-2611
4  Facsimile:   (415) 982-5287

5

6

7

8

9

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

10

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. C 04-09049 SGL (RNBx) |
| 12        Plaintiff, | JAMS Reference No. 1100049530 |
| 13     v. | Consolidated with |
| 14  MATTEL, INC., a Delaware corporation, | Case No. CV 04-09059 |
| | Case No. CV 05-2727 |
| 15        Defendant. | **ORDER GRANTING MATTEL'S** |
| 16 | **MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA** |
| 17  CONSOLIDATED WITH | |
| 18  MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, | |
| 19  INC. | |

20

### I. INTRODUCTION

21

        On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

22

of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA"). On February

23

20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

24

reply brief. The matter was heard on March 5, 2007. Thereafter the motion was taken under

25

submission pending the parties' submission of a proposed protective order, which was received

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT _____47_____

PAGE _____372_____

1   on April 23, 2007. Having considered the motion papers and comments of counsel at the hearing,

2   Mattel's motion to compel is granted.

## II. BACKGROUND

A. Requests for Documents

5   In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6   became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7   categories of documents, to be produced in ten days. MGA filed a motion to quash, which the

8   court granted because of the short amount of time provided for compliance with the subpoena.

9   The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10  some of Mattel's requests. In particular, the parties agreed to limit production to the "first

11  generation" Bratz dolls. On August 12, 2004, MGA produced documents.

12  In 2005, the parties stipulated to supplementing their document productions on May 16,

13  2005. Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14  In September of 2006, MGA made a supplemental production of documents. On February

15  5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16  with legibility problems. On February 20, 2007, MGA produced an additional 224 pages of

17  documents to replace earlier produced documents with legibility problems.

18  Mattel now moves to compel MGA to produce documents responsive to its requests. As a

19  preliminary matter, Mattel contends that MGA's production is deficient because it contains

20  redactions and cut-off text. Further, Mattel contends that MGA's production is incomplete with

21  respect to essentially five categories of documents. First, Mattel contends that MGA is

22  withholding documents relating to the origins of Bratz and Bryant's work for MGA. Mattel

23  believes that MGA's production is incomplete based upon its review of documents that have been

24  produced by third party Steven Linker. According to Mattel, Linker's documents from October

25  of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26  previously represented. Mattel also contends that MGA's responses to the document requests

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT __47__

PAGE __373__

1   contain inappropriate limitations, such as MGA's statement that it will produce "relevant and
2   responsive non-objectionable documents" or only that it will produce documents "sufficient" to
3   show when certain dates relating to Bratz occurred. Mattel contends that these "carve outs
4   purport to allow MGA to cherry-pick what it will and will not produce to Mattel." Mattel's
5   Separate Statement at 17:11-13. Mattel also contends that the carve-outs fail to provide notice of
6   what is or is not being withheld. Mattel also contends that MGA's objections based upon its
7   confidentiality concerns or the privacy rights of third parties are unwarranted in light of the
8   protective order in place. In addition, Mattel contends that MGA's objection to producing
9   documents relating to activities or conduct in foreign countries is wholly improper because those
10  documents may contain information relevant to Mattel's claims.

11       Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether
12  such documents relate to the "first generation" Bratz dolls. Mattel argues that whether the work
13  ultimately resulted in Bratz dolls that were released at a particular time does not matter for
14  discovery purposes. Mattel contends that the works created by Bryant during his Mattel
15  employment are highly relevant because Mattel owns them, regardless of whether they resulted in
16  a Bratz doll released at a particular time.[1]

17       Mattel next contends that MGA is improperly withholding documents about designs
18  Bryant created on Bratz dolls that were released after June 2001, even though such designs may
19  be derivative of work he did when employed by Mattel. Mattel contends that it is entitled to
20  explore whether such works and the profits from Bratz dolls other than the "first generation"
21  Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability
22  and damages. Furthermore, Mattel asserts that the "first generation" limitation on discovery is
23  improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary
24  information as well as MGA's unfair competition claims.

25

26       [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
         to compel Bryant to produce documents.
27

28   Bryant v. Mattel, Inc.,                                                                        3
     CV-04-09049 SGL (RNBx)

                    EXHIBIT ___47___

                    PAGE ___374___

1   Mattel also asserts that MGA is improperly withholding documents relating to products,
2   services and matters other than those relating to "dolls." According to Mattel, it has evidence that
3   Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by
4   Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the
5   Inventions Agreement.

6   Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just
7   payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant
8   because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;
9   (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual
10  damages; and (3) payments may show when and what trade secret information Bryant and other
11  defendants allegedly misappropriated from Mattel.

12  Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel
13  contends that all agreements between Bryant and MGA are relevant, not just the original
14  September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all
15  documents relating to MGA and Bryant's alleged joint defense agreement because such
16  information would be relevant to demonstrate bias and lack of credibility.

17  Fifth, Mattel seeks production of all declarations, affidavits and other sworn written
18  statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such
19  information may reveal relevant information about the date of creation of Bryant's Bratz
20  drawings.

21  In response, MGA denies withholding responsive documents and asserts that it has
22  produced volumes of documents responsive to Mattel's requests. In particular, MGA represents
23  that it has produced all responsive and relevant documents that it was able to locate in response to
24  request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even
25  before the motion was filed, it had agreed to address the vast majority of the issues raised in this
26  motion. In particular, MGA represents that it is diligently working to produce documents related
27
28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT __47__

PAGE __375__

1   to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2   49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3   Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4   have been released on the market. In addition, MGA represents that it has agreed to produce

5   documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6   specifically, MGA represents that it agreed to review and produce documents provided to it by

7   Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8   Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9   Therefore, MGA views the motion as unnecessary.

10       MGA next contends that Mattel's motion should be denied for the following additional

11   reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12   unreleased products.  MGA asserts that its product design documents for its unreleased toy

13   concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14   designs and drawings for products currently under development, over six years after Bryant first

15   created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16   documents relating to unreleased products are ordered produced, MGA requests a protective order

17   under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18   than the current protective order provides.  In the alternative, MGA requests that any order

19   compelling production of documents relating to unreleased products should essentially be stayed

20   until after MGA's products are publicly released.

21       Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22   attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23   information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT ___4/7___

PAGE ___37 6___

1  in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2  Opposition at 24:9-12.[2]

3       Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4  and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5  refused to produce similar types of documents. More significantly, MGA contends that Mattel's

6  requests for non-public witness statements are "a blatant attempt to avoid the discovery

7  limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8  imposed by this Court." MGA's Opposition at 25:6-7. MGA explains its position as follows.

9  MGA is involved in litigation against a number of counterfeiters and infringers in Asia. In 2003,

10  Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11  attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12  abandoned its claims based upon "Toon Teens" in this court. Thereafter, those defendants took

13  the position that MGA did not own, and therefore could not enforce, the rights to Bratz. MGA

14  was thus forced to litigate the issue of ownership. MGA contends that "[i]n effect, by prompting

15  foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16  a situation in which MGA has been forced to give testimony and provide evidence related to

17  issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18       Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19  dispute between MGA's chief executive officer and his brother because such documents are in no

20  way relevant to this lawsuit. MGA explains that the brothers were involved in an arbitration

21  proceeding relating to MGA's CEO's purchase of his brother's interest in MGA. Moreover,

22  MGA contends that the brothers were bound by a protective order prohibiting the use of any

23  documents or testimony for any purpose other than the arbitration.

24

25

26     [2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT 47

PAGE 377

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2    files because they contain confidential information and are not relevant to the lawsuit.  Sixth,

3    MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4    in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd.  Lastly,

5    MGA objects to producing documents relating to any testing performed to determine the date that

6    Bratz documents were created.  MGA contends that such discovery is premature and should not

7    proceed until experts are designated.

8         B. Interrogatories

9    On April 28, 2005, Mattel served its Second Set of Interrogatories.  On May 20, 2005,

10   however, the district court stayed the action.  On May 17, 2006, the district court lifted the stay.

11   On May 30, 2006, MGA responded to the interrogatories.

12   Mattel contends that MGA's responses to the interrogatories were untimely.  Further,

13   Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14   because they lack substantive information and consist almost entirely of objections.  MGA

15   responds that the motion is moot because it is prepared to provide supplemental responses to its

16   interrogatories.  MGA does not otherwise assert any additional grounds for opposing Mattel's

17   motion to compel responses to interrogatories.

18                    III. DISCUSSION

19       A. Rule 26 of the Federal Rules of Civil Procedure

20   Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21   discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22   party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

23   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24   Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25   unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                                    7

EXHIBIT ___47___

PAGE ___378___

1  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4  the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5  26(b)(2).

6      B.  Document Requests

7          1.  Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,

8              34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

9      The requests above seek discoverable information regarding the origins of Bratz and

10  Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11  response to request nos. 6, 26, 27, 32, 33, 34, 35, 55, and 69 (MGA's Opposition at 13:4-5), and is

12  "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13  and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14  14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15  products and documents from MGA Hong Kong.

16      As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17  its production to "relevant and responsive non-objectionable documents" or documents

18  "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19  might be excluding documents that are responsive to the request based upon its unilateral

20  determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21  document requests ordered herein without these restrictions.

                          Design Documents for Unreleased Products

23      MGA's design documents for unreleased products are relevant to Mattel's claims and

24  defenses and must be produced.  See Order Modifying Protective Order.  On April 23, 2007, the

25  parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26  design documents for unreleased products that constitute trade secret information.  See Stipulation

27

28  Bryant v. Mattel, Inc.,                                                                   8
    CV-04-09049 SGL (RNBx)

EXHIBIT __47__

PAGE __379__

1   to Modify Protective Order; And Proposed Order Thereon ("stipulation"). The parties' stipulation

2   has been approved and entered as an order of the court. MGA is ordered to produce design

3   documents for unreleased products that are responsive to Mattel's document requests in

4   accordance with the terms of the stipulation and order.

5                                    Documents from MGA Hong Kong

6           Documents relating to activities or conduct in foreign countries are relevant and

7   discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8   Bratz. Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9   provides reciprocal discovery from its subsidiaries.

10          Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein. MGA is ordered to produce

12  documents from MGA Hong Kong.

13          Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15               2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16                  61, 63, 66, 67, 70, 88, 90, 91

17          Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls. MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21          As stated previously, design documents for yet unreleased products are relevant and

22  discoverable. See Order Modifying Protective Order. Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25          //

26          //

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                                    9

EXHIBIT ___4/7___

PAGE ___386___

3. MGA's Payments to Bryant (Nos.43, 45)

MGA represents that it has already agreed to produce documents related to Bratz, without limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless, Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's motion is granted with respect to request nos. 43 and 45.

4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

MGA represents that it has already agreed to produce non-privileged documents responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or indemnity agreements between MGA and Bryant .

Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility. Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any responsive documents withheld on the basis of a privilege must be properly identified in a privilege log.

5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40, 41,

In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits, and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel anticipates that these documents could provide evidence relating to the conception date for Bratz.

Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

---

[3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___47___

PAGE ___381___

10

1   that MGA was developing Bratz by early 2000. Nevertheless, MGA objects to producing

2   documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3   protective order that prohibits the use of any documents or testimony for any purpose other than

4   the arbitration. MGA, however, has not provided any evidence of the protective order.

5   Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6         6. Documents Regarding Date-Testing (Request No. 92)

7        Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8   from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9   testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10   and including without limitation all results and reports relating thereto." MGA contends that the

11   request is premature, and should proceed in the course of expert discovery.

12        The request calls for relevant discovery and there is no basis for delaying production of

13   responsive documents, other than expert reports. The timing of expert reports is governed by

14   Rule 26(a)(2)(C), Fed.R.Civ.P. Accordingly, Mattel's motion is granted as to request no. 92.

15        C. Interrogatories

16        Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17   MGA has waived its objections to the interrogatories. Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18   responses to interrogatories are due thirty days after service. In this case, Mattel served its

19   interrogatories on April 28, 2005, and responses were initially due May 31, 2005. The district

20   court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21   served. The district court lifted the stay on May 17, 2006.

22

23

24

25

---

26     [4] In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's personnel file based upon privacy grounds. The personnel file may have documents relevant to Bratz, and therefore

27   should be produced. The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

28   Bryant v. Mattel, Inc.,
  CV-04-09049 SGL (RNBx)                   11

EXHIBIT __47__

PAGE __382__

1    Neither party has cited to any caselaw governing the calculation of the 30-day period
2  when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses
3  will be treated as timely in order to preserve any valid objections MGA may have asserted.

4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the
5  conception, origin, creation, design, development, sculpting, engineering, reduction to practice,
6  tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz
7  before December 31, 2001, including a description of each person's role and the start and end
8  dates of each person's involvement. In response, MGA asserted numerous objections, but did
9  provide the names of five individuals.

10    The interrogatory clearly seeks information relevant to the claims at issue. MGA's
11 objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad.
12 Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls
13 for confidential, proprietary or commercially sensitive information, or seeks information
14 protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as
15 it fails to provide the description of each person's role and the start and end dates of each person's
16 involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No.
17 5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18    Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any
19 embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for
20 the reasons previously discussed in connection with Interrogatory No. 5.

21    Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to
22 December 31, 2001. In response, MGA asserted numerous objections and did not provide any
23 substantive information.

24    MGA's objections are without merit. The interrogatory clearly seeks information relevant
25 to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous,
26 compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is

27

28  Bryant v. Mattel, Inc.,                                                                        12
    CV-04-09049 SGL (RNBx)

EXHIBIT ___47___

PAGE ___383___

1 | unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2 | seeks information protected by the attorney-client privilege. Accordingly, MG is ordered to

3 | provide a complete response to Interrogatory No. 7.

4 |      Interrogatory No.8 asks MGA to identify each and every embodiment of Angel. MGA is

5 | ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6 | discussed in connection with Interrogatory No. 7.

7 |      Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8 | or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9 | or painting of Bratz. In response, MGA asserted numerous objections and did not provide any

10 | substantive information.

11 |      The interrogatory seeks information relevant to establishing when Bryant first conceived

12 | Bratz. Furthermore, MGA's boiler-plate objections are unsubstantiated. Accordingly, MGA is

13 | ordered to provide a complete response to Interrogatory No. 9.

14 |      Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15 | was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16 | which each such instance occurred, the location of each show or exhibit, and the identity of

17 | persons with knowledge of the shows or exhibits. In response, MGA asserted numerous

18 | objections and provided the following information: Hong Kong Toy Fair in Hong Kong in or

19 | about January 2001 and New York Toy Fair, New York, in or about February 2001.

20 |      Once again, MGA's boiler-plate objections are unsubstantiated. The information is

21 | potentially relevant to establish when Bryant conceived Bratz. Further, the response is

22 | incomplete insofar as it fails to identify any persons with knowledge. Therefore, MGA is ordered

23 | to provide a complete response to Interrogatory No. 10.

24 |      Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25 | including without limitation each office, home and cell phone number, in the name of, for the

26 | benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27 |

28 | Bryant v. Mattel, Inc.,<br>CV-04-09049 SGL (RNBx)

13

EXHIBIT  47

PAGE  384

1  January 1, 1998 through the present, and IDENTIFY each and every carrier (including without
2  limitation any long-distance carrier) for each such number. In response, MGA asserted numerous
3  boiler-plate objections.

4      Once again, MGA has failed to substantiate any of its objections with supporting
5  declarations or legal authorities. Accordingly, all objections are overruled and MGA is ordered to
6  provide a full response to Interrogatory No. 11.

7  IV. CONCLUSION

8      For the reasons set forth above, Mattel's motion to compel production of documents is
9  granted. MGA shall produce all non-privileged documents that are responsive to the requests
10 identified in this Order. Further, MGA shall produce all documents in un-redacted form, except
11 for redactions that are justified by the attorney-client privilege or work product doctrine. Mattel's
12 motion to compel interrogatory answers is also granted. MGA shall produce documents and
13 provide responses to interrogatories consistent with this Order, and produce a privilege log in
14 compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007. Mattel's request for
15 sanctions is denied.

16     Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
17 Master, Mattel shall file this Order with the Clerk of Court forthwith.

21 Dated: May / 5, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

28 Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

EXHIBIT 47
PAGE 385

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15,

2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL

PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in

the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT _47_

PAGE _386_

# EXHIBIT 48

CONFORMED COPY

FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA  94111
415-774-2611
415-982-5287 (fax)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>        Plaintiff,<br><br>        v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>        Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | |

## I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of

Documents to the undersigned Discovery Master for disposition.[1]  On January 11, 2007, Carter

Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a

reply brief.  The matter was heard via telephonic conference call on January 24, 2007.  Having

---

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT ___48___

PAGE ___367___

1-26

1  considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel

2  Production of Documents is GRANTED.

3  ## II. BACKGROUND

4  At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly

5
6  lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made

7  commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of

8  Bratz dolls now rival Mattel's Barbie doll.

9  A. Mattel's Original Complaint

10
11  On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed

12  suit against its former employee Bryant in state court asserting claims for breach of contract,

13  breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel

14  employed Bryant as a product designer from September 1995 through April 1998, and from

15  January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee
16
17  Confidential Information and Inventions Agreement which required him not to engage in any

18  employment or business other than for Mattel, or invest or assist in any manner any business

19  competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel

20  all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his
21
22  employment.

23  In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that

24  he had not worked for any of Mattel's competitors in the prior twelve months and had not

25  engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of
26
27  any future events raising a conflict of interest.

28  Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for

29  a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT  48

PAGE  388

provide product design services on a "top priority" basis.[2]  The agreement further provided that
Bryant would receive royalties and other consideration for sales of products on which he provided
aid or assistance; that all work and services furnished by Bryant to MGA under the agreement
would be considered "works for hire"; and that all intellectual property rights to preexisting work
by Bryant purportedly would be assigned to MGA.  Mattel further alleges that Bryant converted,
misappropriated and misused Mattel property and resources while he was employed at Mattel.  In
the complaint, Mattel claims ownership of all inventions and works created by Bryant during his
Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of
duties.

        In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting
subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28
U.S.C. §1332 (diversity jurisdiction).  Mattel filed a motion to remand and submitted a copy of
Bryant's agreement with Mattel's competitor, namely MGA.  The agreement was dated
September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to
provide MGA with design services for the Bratz dolls.  In return, MGA agreed to compensate
Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz
dolls.  In August of 2004, the district court remanded the action.

        B.  Bryant's Cross-complaint

        In September of 2004, after the case was returned to state court, Bryant filed a cross-
complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information
and Inventions Agreement.  Bryant's cross-complaint included claims for unfair competition,
rescission, declaratory relief, and fraud.

//

---

[2] Bryant has already produced his agreement with MGA.  Therefore, the existence of the agreement does not appear
to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __48__

PAGE __389__

3

C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT 48

PAGE 391

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. See Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT __48__

PAGE __392__

1   1,600 pages of documents to date. Mattel contends, however, that the production is inadequate

2   and consistent with a pattern of stonewalling.[3] Accordingly, Mattel filed the instant motion to

3   compel responsive documents, which includes a request for sanctions in the amount of $7,805.

4       J.   Mattel's Motion to Compel Production of Documents

5

6       Mattel's motion has three parts. First, Mattel seeks an order compelling Bryant to produce

7   the following categories of requested documents: (a) documents relating to Bratz designs created

8   by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for

9   Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-

10  related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA

11

12  that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was

13  exposed to while working at Mattel. Mattel's Motion at 6. Mattel asserts that these categories of

14  documents are relevant to establish Bryant's liability and would reveal works rightfully owned by

15  Mattel.

16

17      Second, as to other categories of documents which Bryant has agreed to produce, Mattel

18  contends that Bryant has imposed unjustified limitations. According to Mattel, Bryant will not

19  produce any responsive documents that were created after the suit was filed; Bryant will not

20  produce any communications with MGA "created" after the end of his Mattel employment;

21

22  Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view,

23  "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known

24  contracts between him and MGA and refuses to produce non-privileged communications relating

25  to those contracts; and Bryant has withheld all but one category of financial documents relating to

26

27

28

29  [3] According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear.
    Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed. Mattel again obtained a
    court order compelling the deposition and sanctions. To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,                                                    7
CV-04-09049 SGL (RNBx)

EXHIBIT _____48_____

PAGE _____393_____

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents: documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4]   There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

8

EXHIBIT ___48___

PAGE ___394___

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 48
PAGE 395

9

1    requests and that the stipulation controlled to the extent they were inconsistent. Bryant's

2    Opposition at 5:22-6:21.

3         Bryant emphasizes that the parties have engaged in an extensive meet and confer process

4    and asks the Discovery Master to order the disposition of this motion in a manner consistent with

5    the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will

6    have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks

7    the Discovery Master to order Mattel not to revisit any of the requests that were the subject of

8    Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

9         Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In

10   particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to

11   Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone

12   records and financial information because these records are protected by privacy rights. Lastly,

13   Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit

14   was filed.

15                              III.  DISCUSSION

16        A.  The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

17        The parties' extensive submissions make it clear that the parties did not resolve the issues

18   raised in the instant motion. The parties met and conferred extensively and in good faith,

19   reaching compromises on virtually all categories of documents in dispute. Despite their efforts,

20   however, the parties were ultimately unable to execute a binding stipulation because they were

21   unable to agree on any provision to govern Mattel's future right to pursue additional discovery

22   from Bryant. It is clear that the parties deemed it necessary to include such a provision in the

23   draft stipulation in order to protect their respective positions. Because the parties did not execute

24   a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___4/8___

PAGE ___396___

10

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

EXHIBIT ___48___

PAGE ___397___

1　agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel

2　other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c)

3　documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating

4　to this action.

5

6　　　　The Discovery Master finds that the withheld documents are relevant to Mattel's claims.

7　Among other things, the withheld documents could establish the timing, nature and scope of

8　Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In

9　addition, the withheld documents could be used for impeachment purposes. Further, documents

10　relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate

11

12　bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred

13　by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged

14　documents responsive to Request Nos. 2, 13, and 48.

15

16　　　　Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's

17　　　　Development and Other Projects that Bryant Worked on for MGA

18　　　　Mattel seeks documents relating to the Bratz project and any other projects Bryant worked

19　on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls.

20　Bryant is prepared to produce additional documents relating to work he performed for MGA prior

21

22　to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant

23　breached his employee agreement by allegedly performing services for Mattel and MGA at the

24　same time. Bryant objects to the requests to the extent they seek any additional documents on

25　relevancy and overbreadth grounds.

26

27　　　　The Discovery Master finds that Mattel's requests seek relevant information and are not

28　overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30,

29　2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___48___

PAGE ___398___

12

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

### Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46: Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 48
PAGE 399

13

when the payments were actually made. Such payments might also lead to evidence to support

Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright

infringement. Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the

Bratz drawings and works by copying and preparing derivative works from those works. Under

the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual

damages. 17 U.S.C. §504(b). The works that potentially infringe Mattel's copyrights, therefore,

include all Bratz doll products that MGA released to the market. For this reason, and for reasons

already discussed in the previous subsection, Bryant's limited production of documents relating to

only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret

misappropriation. Payments could show when and what trade secret information Bryant and

other defendants allegedly misappropriated from Mattel. Any proof of trade secret theft is also

relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual

causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality

concerns raised by Bryant. Among other things, the protective order provides protection for

confidential trade secret information. It has two tiers of protection, allowing a party to designate

documents as either "Confidential" or "Confidential – Attorney's Eyes Only." The protective

order also requires the parties to use information produced in discovery only for purposes of this

litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged

documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46. Bryant,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___4/8___

PAGE ___4/00___

14

1  however, is not required to produce tax returns, provided that he otherwise fully complies with

2  these requests as ordered.

3      Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

4      Mattel seeks production of Bratz-related communications and communications with

5  MGA. More specifically, Mattel seeks production of four categories of documents Bryant has

6

7  refused to produce: (1) communications between Bryant and MGA or third parties that explicitly

8  relate to designs Bryant created while employed by Mattel; (2) communications between Bryant

9  and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating

10  to Bryant's Mattel employment or work Bryant performed for Mattel, except those

11

12  communications "created" prior to the close of Bryant's Mattel employment; and (4)

13  communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant

14  contends that the discovery requests for communications between Bryant and MGA are

15  overbroad. Bryant asserts that there are many former Mattel employees and friends of his who

16

17  have privacy rights that would be impinged upon if he were to disclose his communications.

18  Bryant also asserts that he has his own confidentiality interest regarding any information that he

19  shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they

20  would require him to reveal the identity of current Mattel employees seeking employment with

21

22  MGA or Bryant.

23      The Discovery Master finds that Mattel's requests for all communications between Bryant

24  and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what

25  Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient

26  to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential"

27

28  private information about current or former employees, contractors or vendors (including

29  employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

EXHIBIT _4/8_

PAGE _401_

15

privileged documents responsive to Request Nos. 20, 23, 27, and 28. However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA. Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

Request Nos. 49, 51: Mattel-Related Documents

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

Request No. 9: Documents re Registrations and Applications for Registrations

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration. Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper. Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1. Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT __48__

PAGE __402__

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2. Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3. Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4. Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5. Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6. Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7. Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

_____
HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT  48
PAGE  403

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25,

2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL

PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjakian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT __48__

PAGE __404__