# EXHIBIT 1

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 2

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 3

RECEIVED

CALENDARED

1  Patricia L. Glaser, State Bar No. 055668
   Pglaser@glaserweil.com
2  Joel N. Klevens, State Bar No. 045446
   Jklevens@ glaserweil.com
3  GLASER, WEIL, FINK, JACOBS
    & SHAPIRO, LLP
4  10250 Constellation Boulevard, 19th Floor
5  Los Angeles, California 90067
   Telephone:  310-553-3000
6  Facsimile:   310-556-2920

7  Russell J. Frackman, State Bar No. 049087
   rjf@msk.com
8  MITCHELL, SILBERBERG & KNUPP, LLP
   11377 West Olympic Boulevard
9  Los Angeles, California 90064
   Telephone:  310-312-2000
10 Facsimile:   310-312-3100

11 Attorneys for the MGA Parties For Phase Two

12            UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

14                  EASTERN DIVISION

15
   CARTER BRYANT, an individual          )  Case No. CV 04-9049 SGL (RNBx)
16                                        )
           Plaintiff,                     )  Consolidated with
17                                        )  Case No. 04-09059
   v.                                     )  Case No. 05-02727
18                                        )
   MATTEL, INC., a Delaware              )  **DISCOVERY MATTER**
19 Corporation                            )
                                          )  **MGA PARTIES' OPPOSITION TO**
20         Defendant.                     )  **MATTEL, INC.'S 1/26/09**
                                          )  **RENEWED MOTION TO COMPEL**
21                                        )  **PRODUCTION OF DOCUMENTS**
                                          )  **AND THINGS**
22 AND CONSOLIDATED ACTIONS              )
                                          )  [Declaration of Amman Khan and
23                                        )  Consolidated Separate Statement filed
                                          )  concurrently herewith]
24                                        )
                                          )  Date:    To be set
25                                        )  Time:    To be set
                                          )  Place:   To be set
26                                        )
27                                        )
28                                        )

2-12

**TABLE OF CONTENTS**

**Page**

Background Facts ............................................................................................................... 4

    The Phase 1 Trial ......................................................................................................... 4

    The Allegations Against Mr. Larian Are Just that - Allegations
    Mattel's Attempt to Present Them As Facts is Both Improper And
    At Odds With Reality. ................................................................................................ 5;

    A.    MCA Agreed to Produce All Non-Privileged Documents
           Responsive to 34 of the 36 Document Request at Issue in
           Mattel's Renewed Motion .......................................................................... 6

    B.    Mattel Rejected MGA's Proposal to Limit the Scope of the
           Requests in Accordance with Past Discovery Orders .................................. 7

    C.    Mattel Rejected MGA's Proposal to Produce All 120
           Personnel Files In Their Entirety Conditioned On Mattel Obtaining Each
           Employee's Consent for Disclosure ............................................................ 8

Argument ........................................................................................................................ 9

I.     MATTEL'S RENEWED MOTION SHOULD BE DENIEDBECAUSE
      MATTEL'S COUNSEL DID NOT MEET AND CONFER PRIOR
      TO FILING ........................................................................................................... 9

II.    MATTEL IS NOT ENTITLED TO THE ENTIRETY OF THE
      120 EMPLOYEE'S PERSONNEL FILES ......................................................... 10

    A.    The Personnel Files Contain Private and Confidential Information
           That MGA is Obligated to Protect ............................................................ 10

    B.    Mattel's Requests are Grossly Overbroad in Scope ................................... 14

III.   MATTEL IS NOT ENTITLED TO MGA'S VENDOR FILES ............................. 15

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

666895

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*In re California Public Utilities Commission,*
      892 F.2d 778 (9th Cir. 1989) ................................................................. 12

*Feldman v. Allstate Insurance Co.,*
      322 F.3d 660 (9th Cir. 2003) ............................................... 2, 4, 11, 12

*Liew v. Breen,*
      640 F.2d 1046 (9th Cir. 1981) ............................................................. 12

*S.A. Healy Co. v. Milwaukee Metropolitan Sewerage District,*
      60 F.3d 305 (7th Cir. 1995) ................................................................. 11

*Star Editorial, Inc. v. United States District Court for the Central District of California,*
      7 F.3d 856 (9th Cir. 1993) ................................................................... 12

*Wray v. Gregory,*
      61 F.3d 1414 (9th Cir. 1995) ............................................................... 11

## STATE CASES

*Board of Trustees v. Superior Court,*
      119 Cal. App. 3d 516 (1981) .................................................................. 9

*CBS, Inc. v. Partee,*
      198 Ill. App. 3d 936 (1990) ................................................................. 10

*Diaz v. Oakland Tribune,*
      139 Cal. App. 3d 118 (1983) ............................................................... 10

*Fortunato v. Superior Court,*
      114 Cal. App. 4th 475 (2003) .............................................................. 10

*Garden Grove Police Department v. Superior Court,*
      89 Cal. App. 4th 430 (2001) ................................................................ 10

*Harding Lawson Associates v. Superior Court,*
      10 Cal. App. 4th 7 (1992) .................................................................... 10

*Scottsdale Unified Sch. District Number 48 v. KPNX Broadcast Co.,*
      191 Ariz. 297 (1998) ........................................................................... 10

MGA PARTIES' OPPOSITION TO MATTEL, INC.'S 1/26/09 RENEWED MOTION TO COMPEL

666895

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 Constellation Boulevard
Nineteenth Floor
Los Angeles, California 90067
310-553-3000

*Thomas v. Hickman,*
    2006 WL 2868967 (E.D. Cal. 2006) .............................................................. 11

*Valley Bank of Nevada v. Superior Court,*
    15 Cal. 3d 652 (1975)................................................................................. 9, 10

### FEDERAL STATUTES

FRCP 37-1     ............................................................................................................ 8

Fed. R. Evid. 501................................................................................................. 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

MGA PARTIES' OPPOSITION TO MATTEL, INC.'S 1/26/09 RENEWED MOTION TO COMPEL

666895

## OPPOSITION TO MATTEL, INC.'S MOTION TO COMPEL

### Preliminary Statement

This is the MGA Parties' Opposition to Mattel, Inc.'s 1/26/09 "Renewed Motion To Compel Production of Documents and Things."[1]  Mattel's motion was filed **before** Mattel sought to meet and confer with MGA's lead counsel in Phase 2;[2] and after Mattel had (mis)represented in a joint report to the Discovery Master that it had no pending motions to compel.  Despite being blindsided by this motion, MGA has done Mattel's job for it -- met and conferred and resolved ninety-eight percent of the issues raised by Mattel's motion.  The only issue remaining is Mattel's overreaching attempt to secure the entirety of the employee personnel files for 120 individuals who work at MGA or who are MGA vendors and who also used to work, or had contact with, Mattel, as well as the entirety of MGA's vendor files.

Former Discovery Referee Infante rejected Mattel's position that it was entitled to production of personnel and vendor files *in their entirety*, as Mattel still insists.  In particular, on April 14, 2008, Judge Infante denied Mattel's motion to compel the production of personnel and vendor files in their entirety with respect to other document requests, and instead, ordered MGA to produce *limited portions* of those files consistent with MGA's proposal, that were limited to specific products.  Because Mattel refuses to limit its requests in such a fashion here, Request Nos. 87 and 88 are impermissibly overbroad, inconsistent with prior discovery orders in this case, and should be denied.

---

[1] It was agreed to between the parties that MGA's Opposition would be due on February 12, 2009.  (Declaration of Amman Khan filed concurrently herewith ("Khan Decl."), Ex. A [E-mail dated February 10, 2009 (2:38 p.m.) from Jon Corey].)

[2] The Renewed Motion is in fact based on meet and confer discussions held over one year ago with MGA's prior lead counsel.  The Glaser Weil firm, MGA's current lead counsel, was not involved in the case then and did not participate in those discussions.  In addition, the landscape of this case has changed dramatically in the past year as Phase 1 has ended, verdicts have been handed down, and the Phase 2 discovery stay has been lifted.  Further, the putative "Renewed" Motion is actually a new motion, since it combines into one pleading what were formerly two separate motions based on two separate sets of discovery.

1    Further, with respect to Mattel's request for all of MGA's personnel files,
2 under California law, employees have a constitutional right to privacy protection of
3 their employment files, their social security numbers, age information, race
4 information, marital status information, health information and employment
5 information.  Employees are entitled to notice before a third party can review their
6 employment files.  Indeed, the employee notice provisions of California Code of Civil
7 Procedure § 1985.3 apply here because the privacy interests which § 1985.3 protects
8 are substantive in nature and govern in cases where a federal court is sitting in
9 diversity.  See Feldman v. Allstate Ins. Co., 322 F. 3d 660, 666 (9th Cir. 2003)
10 (discussed below at Section II(A)).  MGA has proposed that Mattel give notice to the
11 120 individuals whose employee files they seek and give them an opportunity to
12 object.  Mattel refused this reasonable request and has demanded production of the
13 employment files in their entirety, except for health care related information.
14    As a result, MGA asks that the discovery referee do the following things with
15 respect to the last remaining issue.  First, deny Mattel's RFP's seeking MGA's entire
16 employment and vendor files for the 120 employees involved.  Second, in the
17 alternative, require Mattel to identify product information or other information it
18 contends was misappropriated by the individuals involved and narrow MGA's
19 response to the production requests for MGA's employee files and vendor files to that
20 information.  And third, require Mattel to give the 120 employees whose personnel
21 files are at issue a notice of privacy rights.  This will give the employees an
22 opportunity to object to production of their employment files, and allow MGA, which
23 will designate the employment files as "confidential attorneys eyes only," to redact all
24 health care information, social security numbers, home addresses and telephone
25 numbers, information about family members, salary, employment review related
26 information and any other information MGA deems necessary, to protect its
27 employees' privacy rights.
28

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

3

666895

## Background Facts

1      Mattel's highly inaccurate "account" of what transpired during Phase 1 of this

2 litigation, and in particular, Mattel's portrayal of MGA's CEO, Isaac Larian, is a

3 blatant attempt to "poison the well," and bias the Discovery Referee against MGA.

4 Mattel stoops so low as to present the highly inflammatory *allegations* contained in

5 its Second Amended Answer and Counterclaim ("SAAC"), as fact.  However, the

6 wrongdoing ascribed to Mr. Larian as alleged in Mattel's SAAC is not fact, and

7 neither the Court nor the Phase 1 jury, made any finding of such purported facts.  Not

8 only is Mattel's mudslinging unnecessary to any issue the Discovery Master is being

9 asked to resolve, but Mattel's allegations against Mr. Larian are contradicted by

10 evidence adduced at trial.

### The Phase 1 Trial

11      For four years Mattel pursued a $2 billion damage award in this case.  The

12 components of Mattel's damages request were astronomical -- $1.120 billion in

13 MGA's Bratz related revenues; another $385 million in profit distributions from

14 MGA to its CEO, Isaac Larian; and $310 million from the future profits generated by

15 what Mattel labeled the "Bratz franchise;" $320 million in pre-judgment interest;

16 plus, untold hundreds of millions in punitive damages from both MGA and Mr.

17 Larian.  However, the jury almost entirely rejected Mattel's request and awarded only

18 $10 million for copyright infringement, and *nothing* for future infringement.  (Khan

19 Decl., Ex. B at ¶ 11 [Phase 1 Verdict Form, dated August 26, 2008].)  Indeed, the jury

20 flatly rejected Mattel's broad infringement arguments and returned copyright

21 damages that were a tiny fraction of the amounts Mattel sought at trial.  Judge Larson

22 himself stated that "[t]he Court is certainly aware that the jury returned an award of

23 damages that was far less than that sought by Mattel."  (Khan Decl., Ex. C at p. 9

24 [Judge Larson's December 3, 2008 Order].)

25      Mattel argued for infringement damages of $777.9 million against MGA, $696

26 million against Mr. Larian, and $777.9 million against MGA Hong Kong.  (Khan

1   Decl., Ex. D at 8268:7-13 [Trial Transcript].)  The jury's $10 million infringement

2   damages award consisted of a $6 million award against MGA (a mere 0.77% of the

3   amount requested), a $3 million award against Mr. Larian (a mere 0.43% of the

4   amount requested), and a $1 million award against MGA Hong Kong (just 0.13% of

5   the amount requested).

6        Further, the jury found that neither MGA, Mr. Larian nor MGA (Hong Kong)

7   willfully infringed Mattel's copyrights.  (Khan Decl., Ex. B at ¶¶ 6, 8, 10 [Verdict

8   Form].)  In addition, the jury found that Mr. Larian did not fraudulently conceal the

9   facts underlying Mattel's intentional interference claim.  (Id. at ¶ 19.)

10       <u>The Allegations Against Mr. Larian Are Just That – Allegations; Mattel's</u>

11       <u>Attempt To Present Them As Facts Is Both Improper And At Odds With</u>

12       <u>Reality</u>.

13       Not only does Mattel present as "fact" the *allegations* against Mr. Larian

14  contained in its Counterclaims, but some of the allegations are actually contradicted

15  by evidence adduced at trial.  Indeed, the very documents that Mattel attaches to its

16  Motion demonstrate that Mattel is playing fast and loose with the facts in an attempt

17  to poison the Discovery Master's view of MGA and Mr. Larian at the outset of Phase

18  2.

19       For instance, Mattel states that Isaac Larian's brother, Farhad Larian,

20  deliberately destroyed 10-12 boxes of documents containing information on Bratz.

21  (See Motion at 5:13-6:1.)  However, the deposition testimony to which Mattel cites in

22  support of this "fact" reveals otherwise.  Farhad Larian testified that he discarded

23  *some* of the 10-12 boxes he got back concerning the Larian v. Larian arbitration from

24  his attorney – *not 10-12 boxes*.  (See Exhibit 20 attached to Mattel's Motion at 65:25;

25  66:1-22; and 67:1-2.)  Moreover, what Farhad Larian did testify to, was that he erased

26  some emails soon *after he terminated the arbitration against his brother Isaac* and

27  thus was under no obligation to preserve the documents, that *he alone was*

28  *responsible for erasing the emails*, and that *he never discussed this with anyone at*

GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
LAW OFFICES
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

5

666895

1   *MGA at any time.* (See Exhibit 20 attached to Mattel's Motion at 56:16-57:14.)

2   Mattel is clearly attempting to spin this testimony to suit its purposes.

3       Further, Mattel also states as "fact" that Isaac Larian "instructed" his brother to

4   lie to lawyers in a completely unrelated insurance action. (Motion at 6:2-6.) Not only

5   does this allegation have nothing to do with the instant litigation (let alone the discrete

6   discovery issue that is now before the Discovery Master), but as the email that Mattel

7   attached to its Motion demonstrates, it's an allegation that Isaac Larian flatly denied

8   when accused by his brother. (See Exhibit 21 attached to Mattel's Motion.) In sum,

9   the Discovery Master should completely ignore these, as well as all of Mattel's other

10  allegations and purported "facts," none of which have one scintilla of bearing on any

11  discovery issue in this case, and which are misrepresentations regardless.

12      **A.      MGA Agreed to Produce All Non-Privileged Documents Responsive**

13      **to 34 of the 36 Document Requests at Issue in Mattel's Renewed**

14      **Motion.**

15      Despite Mattel's failure to meet and confer prior to filing its motion, and in an

16  effort to resolve these issues informally and without wasting either the Discovery

17  Master's (or the Court's) valuable time, MGA took it upon itself to examine the

18  document requests at issue, as well as former Discovery Master Infante's prior orders.

19  Upon such review, MGA agreed to produce all non-privileged documents responsive

20  to almost every single one of Mattel's document requests.

21      MGA agreed to produce documents responsive to 34 of the 36 requests at issue

22  in the Renewed Motion. (Khan Decl., Ex. E [Letter dated February 7, 2009 from

23  Amman Khan].) Specifically, MGA agreed to produce documents in response to

24  Request No. 48 (Set One) (which includes all communications between MGA and the

25  12 individuals identified in the Renewed Motion), and Request Nos. 43-75 (Set

26  Three) (which includes all documents concerning the design, development and

27  revenues for "Scooter Samantha" and "Space Babes," as well as all documents

28  pertaining to Scot Reyes). (Id.)

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

6

666895

1    MGA only contests two of Mattel's 36 document requests.  Even for these two

2 requests (Request Nos. 87 and 88, which seek the *entire personnel and vendor files*

3 *for 120 MGA employees and vendors*), MGA reasonably proposed to produce

4 responsive documents in a limited fashion.  (Khan Decl., Ex. E [Letter from Amman

5 Khan dated February 7, 2009].)

6    **B.    Mattel Rejected MGA's Proposal to Limit the Scope of the Requests**

7         **in Accordance with Past Discovery Orders.**

8    MGA proposed that Request Nos. 87 and 88 should be limited in such a fashion

9 that MGA would agree to produce all documents within the employees/vendors' files

10 that pertained to the specific products and information that Mattel alleges were stolen

11 by MGA (*i.e.*, "Scooter Samantha" and "Space Babes").  MGA's proposal was based

12 upon, and consistent with, former Discovery Master Infante's April 14, 2008 Order,

13 which granted in part and denied in part, Mattel's motion to compel production of

14 personnel and vendor files related to Phase 1.

15    Judge Infante's April 14, 2008 Order denied Mattel's motion to compel the

16 production of the personnel and vendor files in their entirety.  Instead, Judge Infante

17 ordered (just as MGA has recently offered) that MGA produce *limited portions* of

18 those files, namely "documents from the personnel and vendor files of the individuals

19 identified . . . that relate to any work they performed on Bratz, Angel, and Prayer

20 Angel through June 30, 2001." (Khan Decl., Ex. "F" at 7:3-6; 7:16-18 [Judge

21 Infante's April 14, 2008 Order].)  Based on this Order, MGA proposed that, in lieu of

22 producing the personnel and vendor files in their entirety – a demand by Mattel that

23 Judge Infante previously had rejected – MGA would produce documents contained in

24 those files concerning the products and information that Mattel alleges MGA stole.

25 Mattel has flatly refused to so limit the two Requests.

26    Mattel refused to limit the requests to the specific products that it alleges MGA

27 stole (*i.e.*, "Scooter Samantha" and "Space Babes") based on the stated reason that

28 Mattel doesn't know what the employees stole.  Indeed, during the parties' February

1   6, 2009 meet and confer, Mattel's counsel stated that he would not agree to limit the

2   requests to products such as "Scooter Samantha" and "Space Babes" because the

3   issue was "not as discrete here," and that Mattel "could not tie [the requests] to

4   specific products."  (Khan Decl., ¶ 2.)  Further, Mattel's counsel admits that "Mattel

5   is not only interested in what may be in the personnel files, *but what may not be in*

6   *there*, such as instances of no disciplinary action taken." (Khan Decl., Ex. G at p. 2

7   [Letter dated February 8, 2009 from Jon Corey].) (emphasis added).  This is nothing

8   but a fishing expedition on Mattel's part, as the requests seek information not only on

9   products that Mattel alleges are stolen, *but also on products that Mattel has no*

10  *reason to believe were stolen*.  Such tactics have been rejected in this case already.

11  Judge Infante has already ruled that Mattel is not entitled to use discovery in this case

12  as a fishing expedition in pursuit of new claims.  (Khan Decl., Ex. H at 17:10-12

13  [Judge Infante's December 31, 2007 Order, stating that "Mattel's stated purpose

14  suggests instead that Mattel is launching a fishing expedition in pursuit of new claims,

15  which is not permitted by the Federal Rules of Civil Procedure"].)  Accordingly,

16  Mattel's requests are impermissibly overbroad.

17       The sole limitation that Mattel has offered is to exclude those documents within

18  personnel files pertaining to an individual's health.  With the exception of this

19  extremely narrow subset, Mattel maintains that it is entitled to the *entire* files for 120

20  employees.  The overbreadth of these Requests is astounding, and it is a certainty that

21  the Requests will capture documents that are entirely unrelated to Mattel's claims in

22  this case, and are private in nature.

23       **C.    Mattel Rejected MGA's Proposal to Produce All 120 Personnel Files**

24            **In Their Entirety Conditioned On Mattel Obtaining Each**

25            **Employee's Consent for Disclosure.**

26       In order to protect its employees' privacy rights (as well as to protect itself

27  from potential liability from those employees), MGA agreed to produce all requested

28  personnel files in their entirety (except for any medical or health related documents) if

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1  Mattel gave notice to the employees and obtained their consent for such disclosure.

2  (Khan Decl., Ex. I [E-mail dated February 10, 2009 (7:37 p.m.) from Amman Khan].)

3  MGA's proposal is consistent with California Code of Civil Procedure § 1985.3's

4  requirement that the party seeking employee records, give special notice to the

5  employee whose records are being sought.  Due to the substantive nature of this

6  otherwise procedural Code section, and the open question as to whether its notice

7  requirements apply in federal actions (see infra at Section II(A)), MGA does not feel

8  it can place its employees' fundamental privacy rights at risk, nor can it risk exposing

9  itself to potential liability for doing so.

10     Mattel, however, rejected MGA's proposal, just as it rejected MGA's proposal

11  to limit the document requests in a manner consistent with Judge Infante's April 14,

12  2008 Order.  (Khan Decl., Ex. A [Email dated February 10, 2009 (2:38 p.m.) from

13  Jon Corey].)

14                              **Argument**

15  I.    **MATTEL'S RENEWED MOTION SHOULD BE DENIED BECAUSE**

16        **MATTEL'S COUNSEL DID NOT MEET AND CONFER PRIOR TO**

17        **FILING**

18     Mattel filed its Renewed Motion on January 26, 2009, without meeting and

19  conferring, in violation of FRCP 37-1.  This fact alone warrants denial of Mattel's

20  motion.

21     The MGA Parties anticipate that Mattel will argue that it satisfied its meet and

22  confer obligations because it met and conferred over a year ago with respect to the

23  two motions that now have been consolidated in the current Renewed Motion.  That is

24  no answer.  First, MGA's current lead counsel, the Glaser Weil firm, was not

25  involved in the case and did not participate in the discussions a year ago.  Second, the

26  landscape of this litigation has changed dramatically in the past year: Phase 1 has

27  ended, verdicts have been handed down, and the Phase 2 discovery stay has been

28  lifted.  Further, the putative "Renewed" Motion is actually a new motion, since it

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

MGA PARTIES' OPPOSITION TO MATTEL, INC.'S 1/26/09 RENEWED MOTION TO COMPEL

1  combines into one pleading what were formerly two separate motions based on two

2  separate sets of discovery.

3      Had Mattel not been so bent on burying the MGA Parties with as many

4  motions as it could, as quickly as it could, the paperwork Mattel dumped on the

5  Discovery Master could have been significantly limited.  Indeed, after the MGA

6  Parties effectively forced Mattel to comply with its meet and confer obligations, the

7  vast majority of the disputes raised by Mattel's Motion were eliminated, leaving only

8  two for the Discovery Master to resolve.  Mattel should not be rewarded for its "file

9  now, meet and confer later" strategy.  To do so will only encourage Mattel to

10 continue to engage in the same type of scorched earth tactics that it used in Phase 1,

11 and that drove the costs of this litigation into the stratosphere.  If the Discovery

12 Master is not inclined to deny the Motion out of hand, at a minimum Mattel should be

13 sanctioned for filing the Motion without first satisfying its obligations to meet and

14 confer in good faith.

15 **II.    MATTEL IS NOT ENTITLED TO THE ENTIRETY OF THE 120**

16 **       EMPLOYEE'S PERSONNEL FILES**

17     **A.    The Personnel Files Contain Private and Confidential Information**

18 **           That MGA is Obligated to Protect.**

19     MGA, as an employer (or as a former employer), is legally obligated under

20 California law to protect its employees' privacy rights.  See Board of Trustees v.

21 Superior Court, 119 Cal.App.3d 516, 528-530 (1981) (noting that confidential

22 personnel files at a person's place of employment are within a zone of privacy); see

23 also Valley Bank of Nevada v. Superior Court, 15 Cal.3d 652, 658 (1975) (holding

24 that where confidential information is being sought pertaining to third persons, the

25 party from whom disclosure is sought is under an affirmative duty to notify them of

26 the discovery request; and they must be given a fair opportunity to object to the

27 invasion of their privacy).

28

1    It cannot be debated that the type of information sought by Mattel in its

2    Requests seeks private information.  For instance, Mattel maintains that it is entitled

3    to all personnel file documents evidencing the hiring and recruitment of each

4    employee, "including the terms and conditions (*salaries, bonus, etc.*)" of those

5    processes.  (See Mattel's Renewed Motion at 13:23-14:2) (emphasis added).  This

6    type of financial information is without a doubt the type of private information that

7    must be afforded protection.  See Valley Bank of Nev. v. Superior Court, 15 Cal. 3d

8    652, 656 (1975) ("'privacy' . . . extends to . . . financial records"); Fortunato v.

9    Superior Court, 114 Cal. App. 4th 475, 480-81 (2003) ("financial information . . . is

10   protected"); Harding Lawson Associates v. Superior Court, 10 Cal. App. 4th 7, 10

11   (1992) ("the balance will favor privacy . . . in third party personnel files ").

12   Moreover, other types of information that will be contained in MGA's

13   personnel files, such as an individual's date of birth, as well as their gender and race,

14   are also private in nature.  See Garden Grove Police Dep't v. Superior Court, 89 Cal.

15   App. 4th 430, 434 (2001) ("[a] birth date is personal data"); Scottsdale Unified Sch.

16   Dist. No. 48 v. KPNX Broad. Co., 191 Ariz. 297, 302 (1998) ("a person . . . has a

17   privacy interest in his or her birth date"); Diaz v. Oakland Tribune, 139 Cal. App. 3d

18   118, 132 (1983) (Plaintiff's "sexual identity was a private matter"); CBS, Inc. v.

19   Partee, 198 Ill. App. 3d 936, 945 (1990) (holding that lower court did nor err in

20   refusing production of racial identification information).

21   In order to protect its employees' privacy rights (as well as to protect MGA

22   itself from potential liability), MGA agreed that it would produce the requested files

23   and designate them as confidential provided that Mattel give notice to the employees

24   and obtain their consent.  (Khan Decl., Ex. I [e-mail dated February 10, 2009 (7:37

25   p.m.) from Amman Khan].)  MGA made this proposal with California Code of Civil

26   Procedure § 1985.3 in mind.  Section 1985.3 requires that the party seeking consumer

27   or employee records give special notice to the consumer or employee whose records

28   are being sought.  While it is presently unclear whether such special notice is required

1   in federal actions, MGA does not wish to place its employees' privacy rights at risk.

2   See Weil & Brown, Fed. Civ. Pro. Before Trial (The Rutter Group) at 11:1433.

3        Indeed, authority exists that holds state procedural rules (such as CCP §

4   1985.3's notice requirement) which serve "substantive goals" (such as an individual's

5   right to privacy), can apply in federal actions.  See S.A. Healy Co. v. Milwaukee

6   Metropolitan Sewerage Dist., 60 F. 3d 305, 310 (7th Cir. 1995) (Absent any

7   conflicting federal statute or rule, state procedural rules may be deemed "substantive"

8   for Erie purposes if limited to a particular substantive area (e.g. medical malpractice

9   or insurance contracts) and designed to accomplish a particular substantive objective).

10  Thus, even if a state rule is "procedural" in the ordinary sense of the term, a federal

11  court may treat the rule as substantive in nature if it is "designed to shape conduct

12  outside the courtroom and not just improve the accuracy or lower the cost of the

13  judicial process…." Id.  Put another way, "State procedural rules that are intimately

14  bound with substantive law may apply in federal actions where they in fact serve

15  substantive state policies and are more properly rules of substantive law within the

16  meaning of Erie." Thomas v. Hickman, 2006 WL 2868967, 40 (E.D. Cal. 2006)

17  (citing Feldman v. Allstate Ins. Co., 322 F.3d 660, 666 (9th Cir. 2003); Wray v.

18  Gregory, 61 F.3d 1414, 1417 (9th Cir. 1995)).

19       California, in particular, has expressed that privacy concerns are a matter

20  fundamental public policy through the State Constitution and various legislative

21  schemes.  Thus, the purpose of Section 1985.3 is more substantive than procedural in

22  nature.

23       Further, California's privacy laws apply to this case since the claims left to be

24  tried in Phase 2 are essentially state law claims.  Indeed, the Ninth Circuit held that

25  "[i]n diversity cases, a federal court must conform to state law to the extent mandated

26  by the principles set forth in the seminal case of Erie[.]" Feldman v. Allstate Ins. Co.,

27  322 F. 3d 660, 666 (9th Cir. 2003).  In Feldman, the Court had to decide whether

28  California Penal Code § 632(a), a state evidentiary rule limiting the admissibility of

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 Constellation Boulevard
NINETEENTH FLOOR
Los Angeles, California 90067
310-553-3000

666895

1  illegally intercepted conversations, should apply to a federal court sitting in diversity.

2  Id. at 666-667.  While the Court notes that "[m]ost evidentiary rules are procedural in

3  nature, and the Federal Rules of Evidence 'ordinarily govern in diversity cases,'

4  (citations omitted) . . . the Federal Rules do not supplant '*all* state law evidentiary

5  provisions with federal ones.' (emphasis in original).  Rather, state evidence rules that

6  are 'intimately bound up' with the state's substantive decision making must be given

7  full effect by federal courts sitting in diversity."  Id.  The Court found that the state

8  procedural rule applied because "*the statute thereby embodies a state substantive*

9  *interest in the privacy of California citizens* from exposure of their confidential

10  conversations to third parties" while noting that the "California Constitution expressly

11  guarantees a right to privacy."  Id. at 667 (emphasis added.)  The Court concluded by

12  "hold[ing] that Penal Code § 632 is an *integral component of California's*

13  *substantive state policy of protecting the privacy of its citizens, and is properly*

14  *characterized as substantive law within the meaning of Erie*."  Id. (emphasis added.)

15       Just as in Feldman, the "procedural" rule here, Code of Civil Procedure §

16  1985.3, exists as a check against the abuse of an individual's privacy rights.  Because

17  § 1985.3 clearly "embodies a state substantive interest in the privacy of California

18  citizens," it must apply.  See Fed. R. Evid. 501 (In civil actions and proceedings in

19  federal court, where state law provides the rule of decision, "the privilege of a

20  witness, . . . shall be determined in accordance with State law.");  see also Star

21  Editorial, Inc. v. United States District Court for the Central District of California, 7

22  F.3d 856, 859 (9th Cir. 1993) (same);  Liew v. Breen, 640 F.2d 1046, 1049 (9th Cir.

23  1981) ("Questions of privilege in diversity actions are controlled by the governing

24  state law.");  In re California Public Utilities Commission, 892 F.2d 778, 781 (9th Cir.

25  1989) (same).

26       Accordingly, MGA's proposal to produce its personnel files contingent upon

27  Mattel providing notice to the employees and obtaining their consent, is entirely

28

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

666895

1   reasonable given MGA's duty to protect its employees' privacy rights, and its right to

2   protect itself from exposure to liability.

3   **B.   Mattel's Requests Are Grossly Overbroad In Scope.**

4   The former Discovery Master in this case rejected Mattel's attempt to obtain

5   MGA's personnel files in their entirety.  In particular, Judge Infante's April 14, 2008,

6   Order compelled MGA to produce ***portions*** of personnel and vendor files related to

7   Phase 1 issues (in response to *other* document requests), but only ***"to the extent such***

8   ***documents relate to the work that the individuals performed related to Bratz prior to***

9   ***January 1, 2001,"*** as proposed by MGA in the meet and confer process.  (Khan

10   Decl., Ex. F at 6:22-7:2; 7:16-18 [Judge Infante's April 14, 2008 Order]) (emphasis

11   added).

12   Yet Mattel still seeks MGA's employee's files in their entirety.  The single

13   "concession" offered by Mattel, that documents relating to an employee's health need

14   not be produced, does not come close to bringing these Requests in line with the

15   limited production approved by the Discovery Master on April 14, 2008 with respect

16   to Phase 1 issues.  There, the production of MGA's personnel files was condoned (as

17   proposed by MGA) because the production was narrowed so that MGA only had to

18   produce "documents from the personnel and vendor files of the individuals identified .

19   . . that relate to any work they performed on Bratz, Angel, and Prayer Angel through

20   June 30, 2001." (Khan Decl., Ex. F at 7:3-6; 7:16-18 [Judge Infante's April 14, 2008

21   Order].)  Thus, MGA only had to produce documents related to specific products that

22   Mattel alleged that MGA had stolen.

23   Accordingly, in the hopes of resolving this discovery dispute informally and

24   without wasting the Discovery Master's time, MGA proposed to produce documents

25   responsive to Request Nos. 87 and 88 on a limited basis that was consistent with the

26   Discovery Master's April 14, 2008 ruling.  Specifically, MGA agreed to produce all

27   non-privileged documents relating to any product(s) that Mattel alleged that MGA

28   stole from Mattel (*i.e.*, "Scooter Samantha" and "Space Babes").  However, Mattel

1  unreasonably rejected MGA's proposal, and still insists that MGA produce the

2  personnel files in their *entirety* (excepting the health related documents).  Because the

3  Discovery Master was unwilling to order the production of personnel files *in their*

4  *entirety* back in April 2008, the same conclusion should be reached now.

5  **III.    MATTEL IS NOT ENTITLED TO MGA'S VENDOR FILES**

6         Mattel's request for production of MGA's vendor files in their entirety must be

7  denied for the same reasons as set forth above in Section II(B).  Namely, the requests

8  are indisputably overbroad in scope.  Judge Infante's April 14, 2008 Order applied

9  equally to the requested vendor files as it did to MGA's personnel files.  The

10 Discovery Master ordered a limited production of "documents from the *personnel* and

11 vendor files of the individuals identified . . . that relate to any work they performed on

12 Bratz, Angel, and Prayer Angel through June 30, 2001."  (Khan Decl., Ex. F at 7:3-6;

13 7:16-18) [Judge Infante's April 14, 2008 Order] (emphasis added.)  MGA's agreement

14 to produce all non-privileged documents relating to any product(s) that Mattel alleged

15 that MGA stole from Mattel (*i.e.*, "Scooter Samantha" and "Space Babes") is wholly

16 consistent with the April 14, 2008 Order.  Because the Discovery Master was

17 unwilling to order the production of vendor files *in their entirety* back in April 2008,

18 the same conclusion should be reached now.

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

MGA PARTIES' OPPOSITION TO MATTEL, INC.'S 1/26/09 RENEWED MOTION TO COMPEL

666895

## Conclusion

Based on the foregoing, the MGA Parties respectfully request that Mattel's January 26, 2009 Renewed Motion be denied as to Request for Production Nos. 87 and 88 (Set Three), and denied as moot with respect to Request for Production No. 48 (Set One) and Request for Production Nos. 43-75 (Set Three).

Dated: February 12, 2009

Patricia L. Glaser
Joel N. Klevens
GLASER, WEIL, FINK, JACOBS
  & SHAPIRO, LLP

Russell J. Frackman
MITCHELL, SILBERBERG & KNUPP, LLP

By: _____
Amman Khan
Attorneys for the MGA Parties
for Phase Two

666895

**PROOF OF SERVICE**

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 10250 Constellation Boulevard, Nineteenth Floor, Los Angeles, California 90067.

     On February 12, 2009, I served the foregoing document described as:

**MGA PARTIES' OPPOSITION TO MATTEL, INC.'S 1/26/09 RENEWED MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS**

on the interested parties to this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

**PLEASE SEE ATTACHED SERVICE LIST**

☐    **(BY MAIL)** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐    (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows. I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for.

☒    (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the above named addressee.

☒    (BY EMAIL)   I caused such documents to be delivered via email to the addressee(s).

☐    (BY FACSIMILE) I caused such documents to be delivered via facsimile to the offices of the addressee(s) at the following facsimile number:

Executed this 12th day of February, 2009, at Los Angeles, California.

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
YUMI CHUNG

1

## SERVICE LIST

2

3    Robert C. O'Brien
     Discovery Master
     Arent Fox LLP
4    555 West 5th St., Suite 4800
     Los Angeles, CA 90013
5    **[By Personal Service]**

6    John Quinn, Esq.
     (johnquinn@quinnemanuel.com)
7    Jon D. Corey, Esq.
     (joncorey@quinnemanuel.com)
8    Michael T. Zeller, Esq.
     (michaelzeller@quinnemanuel.com)
9    Quinn Emanuel Urquhart Oliver & Hedges, LLP
     865 South Figueroa Street, 10th Floor
10   Los Angeles, CA 90017-2543
     **[By Personal Service]**
11
     Russell J. Frackman, Esq.
12   (rjf@msk.com)
     Patricia H. Benson, Esq.
13   (phb@msk.com)
     Mitchell, Silberberg & Knupp, LLP
14   11377 W. Olympic Blvd.
     Los Angeles, CA 90067
15   (310) 312-2000
     **[By Email Service]**
16
     Thomas J. Nolan, Esq.
17   (tnolan@skadden.com)
     Raoul D. Kennedy, Esq.
18   (rkennedy@skadden.com)
     Jason D. Russell, Esq.
19   (Jason.russell@skadden.com)
     Skadden, Arps, Slate, Meagher & Flom LLP
20   300 South Grand Avenue, Suite 3400
     Los Angeles, CA 90071-3144
21   (213) 687-5000
     **[By Email Service]**
22
     Mark E. Overland, Esq.
23   moverland@obsklaw.com
     Alexander H. Cote, Esq.
24   acote@obsklaw.com
     Overland Borenstein Scheper & Kim LLP
25   601 W. 5th Street, 12th Floor
     Los Angeles, CA 90017
26   **[By Email Service]**

27

28

665887 v1

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000