EXHIBIT 1

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA 90013-1065
3   Telephone: 213.629.7400
    Facsimile: 213.629.7401
4   obrien.robert@arentfox.com

5

6   Discovery Master

7

8                 UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

| 12 | CARTER BRYANT, an individual,, | Case No. CV 04-09049 SGL (RNBx) |
|----|-------------------------------|--------------------------------|
| 13 | Plaintiff, | Consolidated with |
| 14 | v. | Case No. CV 04-09059<br>Case No. CV 05-2727 |
| 15 | MATTEL, INC., a Delaware<br>corporation, | **PHASE 2 DISCOVERY MATTER** |
| 16 | Defendant. | **ORDER NO. 6, REGARDING:** |
| 17 | | **(1) MOTION OF MATTEL, INC.<br>TO COMPEL PRODUCTION OF<br>DOCUMENTS RESPONSIVE<br>TO ITS FIRST AND THIRD<br>SETS OF REQUESTS FOR<br>PRODUCTION; and** |
| 18 | | |
| 19 | | |
| 20 | | **(2) MOTION OF MGA TO<br>COMPEL PRODUCTION OF<br>DOCUMENTS RESPONSIVE TO<br>THE DOCUMENT REQUEST<br>NOS. 526 AND 528** |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v.<br>MATTEL, INC. | |
| 25 | | |
| 26 | | |
| 27 | | |

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 1

PAGE 3

## I.    **INTRODUCTION**

This Order sets forth the Discovery Master's ruling on: (1) the motion of Mattel, Inc. ("Mattel") to compel production of documents by MGA Entertainment, Inc. ("MGA Entertainment") responsive to Mattel's First Set of Requests for Production No. 48 and Third Set of Requests for Production Nos. 43 through 75, 87 and 88 [Docket No. 4741] (the "Mattel Motion"), and (2) the motion of MGA Entertainment, Isaac Larian, MGA Entertainment HK Limited, and MGAE De Mexico SRL De Cv (collectively "MGA") to compel Mattel to produce documents responsive to MGA's Requests for Production 526 and 528 [Docket Number 4782] (the "MGA Motion") (collectively, the "Motions").

The Motions came on regularly for hearing before the Discovery Master on March 11, 2009. All interested parties were represented by counsel and afforded the opportunity to present oral argument on the Motions. The Discovery Master, having considered the papers filed in support of and in opposition to the Motions, and having heard oral argument thereon, rules as set forth below.

## II.    **THE MATTEL MOTION**

Mattel seeks to compel MGA Entertainment to produce documents responsive to 36 separate document requests. (Mattel Motion, pp. 9 – 15). However, MGA Entertainment subsequently agreed to produce all non-privileged documents responsive to 34 of the document requests identified by Mattel. (MGA Opposition, p. 6). Therefore, the only document requests that remain at issue are Mattel's Third Set of Requests for Production Nos. 87 and 88. (*Id.*, p. 7).

### A.    **The Discovery Sought**

Document Request No. 87 seeks "all personnel and vendor files for each person identified in Exhibit 664." (Mattel's Sep. Stmt., p. 3).

Document Request No. 88 seeks "all personnel and vendor files for each person who has worked as an employee of or vendor for [MGA Entertainment] and who also has been at any time an employee or vendor for Mattel." (*Id.*, p. 5).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 1

PAGE 4

1    **B.    Phase 1 Ruling**

2        This is not the first time that Mattel has moved to compel responses to

3    Document Request Nos. 87 and 88.  Mattel previously moved to compel responses

4    to these requests as part of Phase 1, but its motion was denied because "Request

5    Nos. 87 and 88 (files for former Mattel employees) . . . relate[d] primarily to Phase

6    2 issues." (Disc. Master Order, Apr. 14, 2008, p. 7).  The former discovery

7    master's April 14, 2008 Order denying Mattel's original motion to compel further

8    held that "[i]n view of the stay on Phase 2 discovery . . . . [n]othing in this Order is

9    intended to authorize or preclude Mattel from seeking further production of

10   documents in response to Request Nos. 1 – 88 during Phase 2 discovery." (*Id.*, pp.7

11   - 8).

12       **C.    Objections of MGA Entertainment**

13       In its Opposition, MGA Entertainment relies on three basic grounds for

14   refusing to produce the requested documents.  First, MGA Entertainment argues

15   that Mattel failed to meet and confer.  Second, MGA Entertainment argues that the

16   requests are overbroad.  Finally, MGA Entertainment argues that California's

17   privacy laws prevent it from producing the requested documents.

18           **1.    Purported Failure To Meet And Confer**

19       As indicated above, MGA Entertainment first asserts that Mattel's Motion to

20   Compel should be denied because Mattel failed to adequately meet and confer.

21   (MGA Opposition, pp. 9 - 10).  However, MGA Entertainment admits that Mattel

22   did meet and confer regarding the two requests at issue prior to filing its original

23   motion to compel in Phase 1.  (*Id.*, p. 2 ["The Renewed Motion is in fact based on

24   meet and confer discussions held over one year ago with MGA's prior lead

25   counsel."]; *see also id.*, p. 9 n.2 [Mattel "met and conferred over a year ago"].)

26   MGA further provides no legal authority, and the Discovery Master has found

27   none, supporting the proposition that a party must meet and confer again before

28   renewing a motion to compel that was denied merely because the case had been

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 1

PAGE 5

1   divided into phases and where the order denying the motion expressly noted that

2   nothing in the ruling was intended to "preclude Mattel from seeking further

3   production of documents in response" to the requests as part of Phase 2 discovery.[1]

4   (Order Apr. 14, 2008, pp. 7 - 8).

5        Even assuming such a requirement did exist, Mattel in fact met and conferred

6   with MGA Entertainment for a second time following the filing of its current

7   motion and resolved 34 of the 36 document requests in dispute. (MGA Opposition,

8   pp. 1, 6.) However, the parties were still unable to resolve their differences relating

9   to Document Requests Nos. 87 and 88. (*Id.*, 7–9.) It is, therefore, unclear what

10. could have been accomplished by an additional meet and confer on these issues

11   prior to the filing of the motion. Regardless, Mattel met and conferred once before

12   filing its current motion to compel and that is all that is required by the Federal

13   Rules of Civil Procedure and the discovery procedures governing this case.

14              **2.    Overbreadth Objection**

15        MGA Entertainment's second argument in opposition to Mattel's Motion is

16   that Document Requests Nos. 87 and 88 are "grossly overbroad." (MGA

17   Opposition, pp. 14 – 15). Specifically, MGA Entertainment argues that the requests

18   are improper because they are not tied "to any product(s) that Mattel alleged that

19   MGA [Entertainment] stole from Mattel." (*Id.*,14.) Without citing any legal

20   authority in support of this position, MGA Entertainment asserts that the current

21   Discovery Master should find that the requests are overbroad because the prior

22   discovery master merely compelled it to produce portions of personnel and vendor

23   files related to the Bratz products as part of Phase 1 discovery. (*Id.*; *see also* Order

24   Apr.14, 2008, pp. 7 - 8). But MGA Entertainment's argument fails to recognize

25   //

26

27   _____

[1] The arguments of MGA Entertainment that (1) it has new lead counsel and (2) the case has "changed dramatically"
28   since the initial meet and confer took place in 2008 are not supported by any legal authority, (MGA Opposition, p. 9),
and do nothing to alter the fact that Mattel met and conferred on these issues previously.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 1

PAGE 6

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 6 of 72   Page ID
#:166663
Case 2:04-cv-09049-SGL-RNB      Document 5018      Filed 03/13/2009    Page 5 of 20

1      the differences between Mattel's Phase 1 and Phase 2 claims.[2]

2            The touchstone for determining whether a particular discovery request is

3      reasonably calculated to lead to the discovery of admissible evidence in this case is

4      whether the request bears some relation to the issues to be tried in Phase 2.

5      Whereas Phase 1 of this case primarily addressed whether Mattel or MGA

6      Entertainment owned the rights to the Bratz products, Mattel's Phase 2 claims are

7      not linked to a single discrete product or even multiple products.  Instead, the issues

8      to be litigated in Phase 2 include, among other things, Mattel's claim that MGA

9      Entertainment stole "a vast array of trade secrets and other confidential information

10     that comprise Mattel's intellectual infrastructure," including, among other things,

11     stealing "Mattel's proprietary business methods, practices and information."

12     (Second Amended Answer and Counterclaims ["SAAC"], ¶ 20).  Mattel alleges in

13     its Counterclaims, which are to be litigated in Phase 2, that MGA Entertainment :

14     • "engaged in a pattern of stealing and using [Mattel's] property and trade

15         secrets," (*Id.*,    ¶ 1);

16     • "repeated—and even expanded—its pattern of theft [regarding the Bratz

17         dolls] on numerous occasions," including by hiring away three key Mattel

18         employees in Mexico who "stole virtually every category of Mattel's

19         sensitive and trade secret business plans and information for the Mexican

20         market as well as a significant quantity of sensitive and trade secrete

21         information for Mattel's U.S. and worldwide businesses," (*Id.*, ¶ 3);

22     • "stole Mattel trade secrets regarding Mattel's customers, sales, projects,

23         advertising and strategy, not only for Canada, but the United States and the

24         rest of the world," (*Id.*, ¶ 70);

25     //

26

27     ───────────────────

[2] MGA Entertainment's claim that the document requests are overbroad is also inconsistent with its statement that it

28     would "produce all requested personnel files in their entirety (except for any medical or health related documents) if
       Mattel gave notice to the employees and obtained their consent for such disclosure." (MGA Opposition, pp. 8 – 9).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                          - 4 -

1   • "took from Mattel documents containing proprietary advertising, project,

2   sales, customer and strategy information for not only Canada, but for the

3   United States," (*Id.*, ¶ 4);

4   • "engaged in an ongoing, widespread pattern of . . . inducing Mattel

5   employees to steal Mattel's confidential information or other property and

6   take it with them to MGA [Entertainment]," (*Id.*, ¶ 5);

7   • stole "Mattel's plans, strategy and business information for the Mexican

8   market and materials related to Mattel's worldwide business strategies," (*Id.*,

9   ¶ 37);

10   • "enticed [Mattel's employees] to steal Mattel's most sensitive business

11   planning materials, and then hired them to assist in establishing and running

12   MGA's new Mexican subsidiary," (*Id.*, ¶ 37);

13   • "directed [certain Mattel employees'] to steal virtually all Mattel confidential

14   and proprietary information that they could access and bring it with them to

15   MGA," (*Id.*, ¶ 43), including "virtually every type of document a competitor

16   would need to enter the Mexican market, and to unlawfully compete with

17   Mattel in Mexico, in the United States and elsewhere," such as "global

18   internal future line lists that detailed anticipated future products; production

19   and shipping costs for Mattel products, daily sales data for Mattel products;

20   customer data; sales estimates and projections; marketing projections;

21   documents analyzing changes in sales performance from 2003 to 2004;

22   budgets for advertising and promotional expenses; strategic research

23   reflecting consumer responses to products in development; media plans;

24   consumer comments regarding existing Mattel products customer discounts

25   and terms of sale; customer inventory level data; assessments of promotional

26   campaign success; market size historical data and projections; marketing

27   plans and strategies, merchandising plans; retail pricing and marketing

28   strategies; and other similar materials," (*Id.*, ¶ 48);

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 8 of 72   Page ID
#:166665
Case 2:04-cv-09049-SGL-RNB      Document 5018      Filed 03/13/2009      Page 7 of 20

1    • "targeted certain Mattel employees who have broad access to Mattel
2       proprietary information in an effort to induce and encourage them to join
3       MGA [Entertainment] and to steal or otherwise wrongfully misappropriate
4       Mattel confidential information and trade secrets," including by "promising
5       these employees salaries 25 percent or more higher than they earn at Mattel
6       and stating to them that they should not be concerned by legal action taken
7       by Mattel to protect its trade secrets and its rights because such claims are
8       hard to prove and easy to defeat," (*Id.*, ¶ 69); and

9    • "hired directly from Mattel's United States operations at least 25 employees,
10      from Senior Vice-President level to lower level employees," and that some of
11      these individuals misappropriated "Mattel confidential and proprietary
12      information, including Mattel's strategic plans; business operations; methods
13      and systems; marketing and advertising strategies and plans; future product
14      lines; product profit margins, and customer requirements." (*Id.*, ¶ 77).

15         In light of the foregoing allegations, the documents requested by Mattel fall
16   within the purview of permissible discovery allowed by Federal Rule of Civil
17   Procedure 26. Rule 26 permits the discovery of information that is "relevant to the
18   claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Accordingly, Mattel's
19   request for "all personnel and vendor files" of individuals who either (1) work at
20   MGA Entertainment and previously used to work for Mattel or (2) who are vendors
21   of MGA Entertainment and used to work with or had contact with Mattel appears to
22   be "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

23         **3.    Privacy Rights Objection**
24         MGA Entertainment's final argument is that the records sought by Mattel
25   (i.e., personnel and vendor files) invade the privacy rights of non-parties and cannot
26   be produced under *California law* unless the individuals affected are given advance
27   notice of the requests and afforded an opportunity to object to the production.
28   (MGA's Opposition, pp. 10 – 14). Specifically, MGA Entertainment argues that

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]
EXHIBIT 1
PAGE 9

1   the California Constitution and California Code of Civil Procedure § 1985.3

2   together constitute a fundamental public policy in California that do not allow

3   MGA Entertainment to "place its employees privacy rights at risk." (*Id.*). But each

4   of these contentions is unavailing.

5       As an initial matter, a protective order has been entered in this case. (Mattel

6   Reply, p. 2). This fact is crucial to analyzing the privacy concerns raised by MGA

7   Entertainment, because courts within the Ninth Circuit have repeatedly held that,

8   where such an order has been (or will be) entered, state-based privacy laws do not

9   bar production of personnel files.[3] *See, e.g., Nakagawa v. Regents of Univ. of Cal.*,

10  2008 WL 1808902, *3 (N.D. Cal. April 22, 2008) (ordering production of

11  personnel files and stating "[a]ny other privacy concerns defendant may have

12  should be addressed by a protective order"); *Grinzi v. Barnes*, 2004 WL 2370639,

13  *1 (N.D. Cal. Oct. 20, 2004) ("The proper mechanism for an employer to use to

14  protect an employee's privacy interest in his personnel file is to obtain, either by

15  stipulation or motion, a properly crafted protective order under Rule 26(c)");

16  *Maldonado v. Cal. Dep't of Corr. & Rehab.*, 2007 WL 4249811, *7 (E.D. Cal. Nov.

17  30, 2007) ("The court has already analyzed these non-party privacy rights, and the

18  protective order should serve to remedy any concern in this regard."); *Walton v. K-*

19  *Mart, Inc.*, 2007 WL 4219395, *2 (N.D. Cal. November 28, 2007) ("In view of the

20  employees' privacy interests, documents shall be produced pursuant to an

21  attorneys' eyes only protective order."); *Keller-McIntrye v. Coll. Of Health &*

22  *Human Servs.*, 2006 WL 3456672, *1-*2 (N.D. Cal. November 29, 2006) (ordering

23  production of employee information, pursuant to a protective order, despite privacy

24  claims under California law).

25       Further, contrary to MGA Entertainment's assertions, the Ninth Circuit has

26  ---

[3] In fact, some of the California authority relied on by MGA Entertainment contemplates that confidential
information may be appropriately disclosed if a protective order is in place. (*See, e.g., Valley Bank of Nev. v.*
27  *Superior Court*, 15 Cal. 3d 652, 658 (1975) ["[T]he trial court has available certain procedural devices which may be
useful in fashioning an appropriate order that will, so far as possible, accommodate considerations of both disclosure
28  and confidentiality."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 1

PAGE 10

1    held that "personnel files are discoverable in federal question cases . . . despite

2    claims of [state-created] privilege,"[4] (*Garrett v. San Francisco*, 818 F.2d 1515,

3    1519 n. 6 (9th Cir. 1987); *see also Kerr v. District Court*, 511 F.2d 192, 197 (9th

4    Cir. 1975)), and this includes any claim of privilege resulting from California Code

5    of Civil Procedure § 1985.3,[5] (*see Reed v. Williams*, 2007 WL 2140506, *4 (E.D.

6    Cal. July 25, 2007) [holding that the requirements of California Code of Civil

7    Procedure § 1985.3 do not apply in federal question cases because "federal law

8    applies in terms of substantive, privilege and discovery law."]). Accordingly, the

9    privacy concerns raised by MGA Entertainment have no applicability here.

10        Despite the foregoing, and notwithstanding the existence of the protective

11   order as a safeguard, the Discovery Master finds that the requested documents

12   should exclude "health care specific information," because Mattel's counsel

13   conceded that Mattel is not seeking such information in its discussions with counsel

14   for MGA Entertainment. (*See* Decl. of Amman Khan, Ex. G, 2). Counsel for

15   Mattel restated this position at the hearing.

16        The Discovery Master further orders MGA Entertainment to redact any

17   social security numbers, tax identification numbers, dates of birth, indication of

18   sexual orientation, bank account numbers, and checking account numbers that may

19   be included within the requested documents prior to production, as Mattel has not

20   made a showing at this time that such discrete personal information is reasonably

21   calculated to lead to the discovery of admissible evidence.

22   **D.    Conclusion**

23        The documents sought by Mattel's Request Nos. 87 and 88 are reasonably

24   calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

---

25   [4] Mattel's SAAC includes, among other things, claims for alleged RICO violations under U.S.C. §§ 1962(c), 1962(d)
26   and 1964(c), (SAAC at ¶¶ 88 – 105) and MGA Entertainment removed this action to federal court on federal question
     grounds, (Mattel Reply, p. 5).

27   [5] The same rule may even apply in diversity cases, (see *Corser v. County of Merced*, 2006 WL 2536622, *2 (E.D.
28   Cal. August 31, 2006) [holding that "the extent that Section 1985.3 may provide a California-law privilege [] the
     privilege does not apply to this litigation"], but the Discovery Master need not resolve that issue.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

-8-

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 1

PAGE 11

1   2 claims, and are not protected from disclosure on the grounds of third-party

2   privacy rights or any other ground cited by MGA Entertainment.

3   **III.   MATTEL'S REQUEST FOR SANCTIONS**

4         In its Reply, Mattel also seeks $1,460 in sanctions relating to the attorneys'

5   fees and costs it incurred in drafting the reply.  (Mattel's Reply, pp. 11 – 13; *see*

6   *also* Decl. of Zachary Krug, ¶ 14).  As the Discovery Master has previously stated,

7   however, he, like the Court,[6] disfavors the insertion of new arguments at the reply

8   stage that could have been raised in the moving papers.[7]  This rule is routinely

9   adhered to by courts in the Ninth Circuit.  *See, e.g., United States v. Boyce*, 148

10  F.Supp .2d 1069, 1085 (S.D. Cal. 2001); *Leick v. Hartford Life & Accident Ins. Co.,*

11  2007 WL 1847635, at *1, n. 1 (E.D. Cal. June 27, 2007); *Stewart v. Wachowski,*

12  2004 WL 2980783, at *11 (C.D. Cal. Sept. 28, 2004); *Hamilton v. Willms,* 2007

13  WL 2558615, at *11 (E.D. Cal.2007); *see also United States v. Cox,* 7 F.3d 1458,

14  1463 (9th Cir.1993); *United States v. Wright,* 215 F.3d 1020, 1030 n. 3 (9th

15  Cir.2000).

16        Accordingly, the Discovery Master therefore declines to award sanctions

17  against MGA Entertainment.

18  **IV.   MGA'S MOTION TO COMPEL RESPONSES TO DOCUMENT**

19        **REQUEST NOS. 526 AND 528**

20        In its motion, MGA seeks an order compelling Mattel to produce documents

21  responsive to two document requests (the "Requests") included in MGA's Fifth Set

22  of Requests for Production of Documents and Things dated August 3, 2007.

23  //

24

25  [6] In *Bryant v. Mattel, Inc.*, 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not change [its] ultimate conclusion."

26

27  [7] Mattel was apparently aware of MGA Entertainment's grounds for opposing the motion before it filed its moving papers, since Mattel met and conferred with MGA Entertainment prior to bringing its motion.  Mattel nevertheless failed to request a sanctions award in its moving papers, thereby depriving opposing counsel and MGA Entertainment of the chance to oppose the request in the Opposition brief.

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 1

PAGE 12

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 12 of 72   Page ID
#:166669
Case 2:04-cv-09049-SGL-RNB   Document 5018   Filed 03/13/2009   Page 11 of 20

### A.   The Discovery Sought

The Requests seek copies of Mattel's communications with law enforcement authorities (Request No. 526) and copies of any documents that it has provided to law enforcement authorities (Request No. 528). The complete text of the Requests is as follows:

- **Request No 526**: All DOCUMENTS that constitute COMMUNICATIONS between YOU (including YOUR agents and attorneys) and law enforcement authorities in Mexico, Canada, or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities, concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

- **Request No. 528**: All DOCUMENTS that you (including YOUR agents and attorneys) provided to law enforcement authorities in Mexico, Canada [*sic*] or the United States, including but not limited to the United States Attorney's Office, the Department of Justice and any national, regional, state or local authorities concerning any of the allegations in YOUR COUNTERCLAIMS or any other alleged taking of confidential MATTEL information by MGA or persons currently or formerly employed by MGA.

### B.   Mattel's Objections

In its Opposition, Mattel relies on three basic grounds for refusing to produce the requested documents. First, Mattel argues that the Requests are overbroad and encompass information not reasonably calculated to lead to the discovery of admissible evidence. Second, Mattel argues that the documents are protected by the work product doctrine. Finally, Mattel argues that the documents are

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]
EXHIBIT ___

PAGE 13

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 13 of 72   Page ID
#:166670
Case 2:04-cv-09049-SGL-RNB     Document 5018     Filed 03/13/2009     Page 12 of 20

1    privileged.

2                    **1.    Overbreadth Objection**

3            Among the issues to be adjudicated in Phase 2 are Mattel's counterclaims for

4    RICO violations, misappropriation of trade secrets and unfair competition. Mattel's

5    SAAC alleges that "Mattel notified Mexican authorities about the [alleged] theft of

6    its trade secret and confidential information." (SAAC, ¶ 53). The SAAC further

7    details Mattel's knowledge of the Mexican authorities' activities related to MGAE

8    de Mexico and suggests that Mattel communicated with the authorities regarding

9    their seizure of certain documents from MGA's office. (*Id.*, ¶ 53). Mattel also

10   alleges that "Mattel notified Canadian law enforcement authorities" about its belief

11   that Janine Brisbois copied documents onto a thumb drive when she left Mattel.

12   (*Id.*, ¶ 75). Further, Mattel states that it communicated with Canadian authorities

13   regarding the information allegedly recovered from Brisbois' thumb drive. (*Id.*, ¶

14   75).

15          Mattel has also acknowledged that at least some of the documents responsive

16   to Request No. 526 relate to Mattel's claims by producing to MGA "the judicial file

17   in criminal proceedings in Mexico, relating to the trade secret thefts in that country,

18   *and some of those materials reflected communications between Mattel and law*

19   *enforcement*." (Declaration of Timothy L. Alger dated January 24, 2008 ["Alger

20   Decl."], ¶ 16 (emphasis added).)

21          Given Mattel's allegations regarding the theft of its trade secrets, its

22   communications with law enforcement officials, and the overlap between the civil

23   and criminal claims Mattel is pursuing, the Discovery Master concludes that, as a

24   threshold matter, MGA has made a prima facie case that the Requests seeking the

25   documents Mattel provided to law enforcement officials, as well as Mattel's

26   communications with those officials, are reasonably calculated to lead to the

27   discovery of admissible evidence regarding the claims to be adjudicated in Phase 2.

28          Although the Requests on their face relate to Phase 2 issues, Mattel

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -                                    ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___

PAGE ___

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 14 of 72   Page ID
#:166671
Case 2:04-cv-09049-SGL-RNB      Document 5018      Filed 03/13/2009      Page 13 of 20

1    nonetheless argues in its Opposition that Request No. 526 is overbroad because

2    Mattel's civil claims are wholly separate and independent from any criminal relief

3    it is seeking. (Mattel Opposition, p. 4 ["The civil claims stand or fall based on

4    MGA's actions, not Mattel's subsequent communications with law enforcement."]).

5        In so arguing, Mattel misses the point. The issue is not whether Mattel's

6    communications with law enforcement officials constitute the basis of Mattel's

7    claims. Rather, the issue is whether those communications are reasonably

8    calculated to lead to the discovery of admissible evidence regarding what Mattel

9    itself characterizes as the basis of its claims, namely MGA's alleged acts of trade

10   secret misappropriation. Mattel does not dispute that its subsequent

11   communications with law enforcement involve the same conduct that is the basis of

12   the civil claims. On the contrary, Mattel has alleged in its SACC that it is

13   concurrently seeking relief through the criminal justice system and this civil action

14   based on the same documents allegedly stolen by MGA and confirmed that fact

15   during the meet and confer process. (See, e.g., Alger Decl., ¶ 16 [asserting that "the

16   judicial file in the criminal proceedings in Mexico" are among the "documents

17   *relating to Mattel's Counterclaims*."] [emphasis added].)

18       Mattel's communications with law enforcement may, among other things,

19   disclose what Mattel told the investigating authorities about what information was

20   taken, the people who have knowledge of the thefts, and any supposed criminal

21   intent on the part of MGA or the former Mattel employees who supposedly took the

22   information. Given this admitted overlap in subject matter, the communications

23   between Mattel and law enforcement agencies are discoverable. (*See, e.g., In re*

24   *Qwest Commc'ns Intl., Inc.*, 450 F.3d 1179, 1181-82, 1201 (10th Cir. 2006) [private

25   plaintiff permitted discovery of materials provided to law enforcement authorities

26   concerning the same underlying facts]).

27       With respect to Request No. 528 (seeking documents Mattel provided to law

28   enforcement agencies), Mattel argues that it has already provided to MGA tens of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 1

PAGE 15

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 15 of 72   Page ID
#:166672
Case 2:04-cv-09049-SGL-RNB   Document 5018   Filed 03/13/2009   Page 14 of 20

1    thousands of documents that pertain to the underlying facts of Mattel's

2    counterclaims. (Mattel Opposition p, 5). But, as Mattel admits, that production

3    does not satisfy Request No. 528 which, in Mattel's words "seeks something more

4    and different." (*Id.*). According to Mattel, the "different" information sought by

5    Request No. 528 is information that would enable "MGA's executives to defend

6    against actual or potential criminal charges . . ." (*Id.*). However, since those

7    possible criminal charges are based on the same conduct as Mattel's civil claims, it

8    would be inappropriate to bar MGA from obtaining that information for use in this

9    lawsuit, simply because that same information might also relate to possible future

10    criminal cases (which may or may not ever be filed). Put another way, the

11    information sought by MGA to defend the civil claims does not become

12    "irrelevant" simply because it might have the ancillary effect of facilitating MGA's

13    defense of possible criminal claims.

14       Lastly, Mattel argues that both Requests are overbroad because they are not

15    limited to misconduct expressly alleged in the SAAC but also seek "documents

16    'concerning . . . any other alleged taking of confidential MATTEL information by

17    MGA . . .'" (Mattel Opposition, pp. 5 -6). In response, MGA points out that the

18    SAAC includes a catch-all allegation stating that unidentified "additional

19    employees accessed, copied and took from Mattel confidential and proprietary

20    information." (SAAC, ¶ 77). Mattel's apparent purpose in including such an

21    allegation was to preserve its right to allege and prove other acts of

22    misappropriation besides those expressly alleged in the SAAC. Accordingly, since

23    Mattel reserves the right to seek relief regarding additional, un-alleged acts, MGA

24    should likewise be entitled to conduct discovery to identify those additional acts

25    and to determine what evidence Mattel may have to prove them.

26       **2.**    **Work Product Objection**

27       Next, Mattel argues that production of Mattel's communications with law

28    enforcement agencies, together with the documents Mattel chose to provide to those

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 1

PAGE 10

1   agencies, would violate the attorney work-product doctrine by revealing counsel's

2   strategy and mental processes. (Mattel Opposition, p. 6).

3          To qualify for work-product protection under Federal Rule Civil Procedure

4   26, documents must meet two requirements:  (1) they must be "prepared in

5   anticipation of litigation or for trial," and (2) they must be prepared "by or for

6   another party or by or for that other party's representative." *In re Cal. Pub. Utils.*

7   *Comm'n*, 892 F.2d 778, 780-781 (9th Cir. 1989).  In determining whether the

8   doctrine is applicable to a particular document, "the court must consider the

9   *primary purpose* of the work product doctrine, which is to 'prevent exploitation of a

10   party's efforts in *preparing for litigation.*'" *Johnson v. Finn*, 2007 WL 3232253,

11   *1 (E.D. Cal. Oct. 31, 2007) (emphasis added).  The authorities Mattel cites agree

12   that the purpose of the work product doctrine is "to establish a zone of privacy for

13   *strategic litigation planning.*" (Opposition, p. 6 quoting *United States v. Adlman*,

14   68 F.3d 1495, 1501 (2d Cir. 1995) [emphasis added].)

15          Here, Mattel does not demonstrate any connection between its

16   communications with law enforcement officials, on the one hand, and its litigation

17   strategy in the present civil case, on the other hand.  Rather, it appears that Mattel's

18   primary purpose in communicating with, and disclosing the disputed documents to,

19   various law enforcement officials was to instigate criminal prosecutions by

20   prosecutorial agencies, not pursue its civil claims against MGA.  Thus, to the extent

21   the selection of particular documents by Mattel's counsel reveals counsel's

22   impressions and mental processes, the window into counsel's thinking relates to

23   counsel's strategy of encouraging *criminal prosecution* by the relevant authorities.

24   There is no showing that counsel's thinking regarding how best to achieve *that*

25   purpose would also reveal counsel's strategies and impressions in any matter

26   related to the current civil litigation.  In short, Mattel has made an insufficient

27   showing that the communications and documents at issue constitute work product

28   in *this* litigation.  Accordingly, the work-product doctrine is inapplicable.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __1__

PAGE __17__

1    Further, even if the work-product doctrine somehow applied to Mattel's

2 communications with law enforcement agencies, Mattel waived it, in at least two

3 ways. First, Mattel admits that it has already produced some of those

4 communications to MGA. (See Alger Decl., ¶ 16.)

5    Second, to the extent Mattel's communications with law enforcement

6 officials disclose its conclusions and theories to law enforcement officials, such a

7 disclosure also constitutes a waiver. Mattel admits that the work-product doctrine

8 is waived when material is "voluntarily disclosed such that it may become readily

9 accessible to an adversary." (Mattel Opposition, pp. 6 - 7 (citing *Aronson v.*

10 *McKesson HBOC, Inc.*, 2005 WL 934331, *6 (N.D. Cal. Mar. 31, 2005)). In fact,

11 the courts have specifically held that "disclosing information to governmental

12 authorities in the hope that they will attack an adversary . . . cannot be said to be

13 done 'in the pursuit of . . . trial preparation.' Thus, disclosure in such a situation

14 results in a waiver of the work product protection." *Bank of America, NA. v. Terra*

15 *Nova Insur. Co.*, 212 F.R.D. 166, 172-73 (S.D.N.Y. 2002). Therefore, when a party

16 provides information to law enforcement agencies and "harbor[s] the hope, even if

17 un-communicated, that its disclosures would encourage the Government to

18 prosecute" a third party, this disclosure constitutes waiver because it "substantially

19 increase[s] the potential that the information gained during the investigation would

20 be disclosed to [the] adversary." *Id.*

21    Given that Mattel disclosed the documents to these entities with the intention

22 of triggering criminal prosecution of MGA and its representatives, the intended

23 effect of Mattel's disclosure is to make those documents available to MGA under

24 the applicable rules of criminal procedure, which would entitle MGA to the

25 documentary evidence on which any alleged criminal liability is based. Mattel

26 itself concedes this fact when it acknowledges that MGA can request disclosure of

27 the information provided to law enforcement officials "in accordance with the

28 applicable law in the countries involved." (Mattel Opposition, p. 5). Mattel knew

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __1__

PAGE __16__

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 18 of 72   Page ID
#:166675
Case 2:04-cv-09049-SGL-RNB      Document 5018      Filed 03/13/2009      Page 17 of 20

1    when it provided the documents to law enforcement agencies that such production

2    "substantially increased the opportunities for potential adversaries to obtain the

3    information." (Mattel Opposition, p. 7). Thus, Mattel cannot demonstrate a

4    reasonable expectation this material would remain protected.

5              **3.      Privilege Objections**

6         Lastly, Mattel asserts that the litigation privilege codified in Cal. Civ. Code §

7    47(b) and/or the *Noerr-Pennington* doctrine bar MGA from seeking any affirmative

8    relief from Mattel based on the latter's communications with law enforcement

9    authorities. Consequently (Mattel reasons), those communications "are not

10   properly discoverable" in this action. (Mattel Opposition, p. 8).

11        That argument is based on a premise for which there is no support in the

12   record, namely that MGA seeks the subject documents in order to assert a claim

13   against Mattel arising from Mattel's allegedly privileged communications.

14   Proceeding from this unsupported assumption, Mattel then argues that such a non-

15   existent claim would be barred.

16        However, that speculative foray is entirely non-responsive to the MGA

17   Motion. The MGA Motion asserts that the documents should be produced not

18   because MGA intends to sue Mattel for communicating with law enforcement

19   authorities, but rather because Mattel itself injected the issue of the criminal

20   proceedings *into this lawsuit* by asserting in its SAAC that Mattel has

21   communicated with criminal authorities in various countries regarding the conduct

22   of MGA upon which Mattel bases its counterclaims. *That* is the reason MGA

23   offers for seeking the subject documents.

24        Accordingly, Mattel's attempt to rely on privilege fails to address the actual

25   position taken by MGA in its Motion or the issues raised in the pleadings. Further,

26   the cases cited by Mattel demonstrate on their face that the subject privileges are

27   restricted to situations not present here. Those cases stand for the proposition that

28   parties who communicate with law enforcement officials may be immune from

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]
EXHIBIT 1
PAGE 19

1    *liability* under California tort law and federal anti-trust law, respectively – not that

2    such parties are immune from *discovery* in civil suits.

3                          **a.     The Litigation Privilege**

4            The California Supreme Court described the scope of the litigation privilege

5    in a case cited by Mattel, *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350 (2004).

6    According to Mattel, *Hagberg* stands for the proposition that a communication to

7    law enforcement officials about suspected criminal activity "enjoys an unqualified

8    privilege." (Mattel's Opp'n, 8.)  However, nothing in the *Hagberg* opinion

9    addresses the issue presented here, namely whether communications and documents

10   passed from the reporting party to the law enforcement agency is discoverable in

11   litigation arising out of the same underlying, allegedly criminal, activities.  Rather,

12   in *Hagberg* the question presented was "whether *tort liability* may be imposed for

13   statements made when a citizen contacts law enforcement personnel to report

14   suspected criminal activity...." 32 Cal. 4th at 355 (emphasis added).  The Court

15   answered that question in the affirmative.  *Id.*

16           The other California cases cited by Mattel are in accord.  See *Jacob B. v.*

17   *County of Shasta*, 40 Cal. 4th 948, 955, 956 (2007) ("We have discussed the basic

18   principles underlying section 47(b)'s litigation privilege in many cases.... [P]ublic

19   agencies... must be permitted to provide such information without fear of being

20   harassed by *derivative lawsuits*.") (emphasis added); *Silberg v. Anderson*, 50 Cal.

21   3d 205, 213, 214 (1990) (the "*litigation* privilege" provided by section 47(2)

22   "afford[s] litigants and witnesses... the utmost freedom of access to the courts

23   without fear of being harassed subsequently by *derivative tort actions*") (emphasis

24   added); *Williams v. Taylor*, 129 Cal, App. 3d 745 (1982) (affirming summary

25   judgment against plaintiff's claims for slander and malicious prosecution based on

26   Section 47(b)).

27                          **b.     The *Noerr-Pennington* Doctrine**

28           "The Noerr-Pennington doctrine *immunizes from the antitrust laws* anti-

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                            - 17 -                   ORDER NO. 6
                                                         [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __1__

PAGE __20__

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 20 of 72   Page ID
#:166677
Case 2:04-cv-09049-SGL-RNB   Document 5018   Filed 03/13/2009   Page 19 of 20

1    competitive conduct undertaken to influence or petition government bodies, or to

2    utilize judicial or quasi-judicial mechanisms." (*Forro Precisions, Inc. v. Intl Bus.*

3    *Mach.* 673 F.2d 1045, 1059 (1982) [emphasis added]).  In *Forro*, the plaintiff

4    brought suit against IBM for assisting a police search of his business premises.

5    Based in part on the *Noerr-Pennington* doctrine, the court held that the plaintiff's

6    antitrust claim could not be based on IBM's solicitation of aid from the police

7    department that resulted in the police investigation and search of his premises, or on

8    IBM's assistance in these activities. (*Id.* at 1053 ["IBM's actions in assisting the

9    police...were privileged and could not serve as a basis for *civil liability.*"] [emphasis

10   added]) .  In short, the "privilege" at issue in *Forro* dealt with freedom from

11   antitrust liability, not freedom from discovery.[8]

12            c.    **Application To The Present Case**

13           Here, MGA has not yet asserted any affirmative claim against Mattel arising

14   out of Mattel's communication with law enforcement officials.  If and when MGA

15   attempts to do so, it may well be appropriate for Mattel to assert the privileges

16   discussed above in an attempt to defeat any such claims on the merits.  In the

17   meantime, MGA is simply defending Mattel's civil claims in the present action, and

18   no privilege cited by counsel prevents MGA from conducting discovery regarding

19   the basis for those claims.

20      **C.    Conclusion**

21           The documents sought by MGA's Request Nos. 526 and 528 are reasonably

22   calculated to lead to the discovery of admissible evidence regarding Mattel's Phase

23   2 claims, and are not protected from disclosure under any of the privileges or

24   doctrines cited by Mattel.

25   //

26   _____

27   [8] Mattel cites only one case in which the Court actually held that a party was protected from the production of
communications made to government agencies regarding suspected criminal activity.  However, in that case (which
28   arose under the Annunzio-Wylie Act) the communications were sought to prove a defamation claim based on those
communications. *See Whitney Nat'l Bank v. Karam*, 306 F. Supp. 2d 678, 682 (S.D. Tex. 2004).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 18 -

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  1

PAGE  21

Case 2:04-cv-09049-DOC-RNB  Document 5139-4  Filed 04/07/09  Page 21 of 72  Page ID
#:166678
Case 2:04-cv-09049-SGL-RNB      Document 5018      Filed 03/13/2009      Page 20 of 20

## V.    DISPOSITION

1.    The Mattel Motion is **GRANTED**, with the exception of health care specific information, social security numbers, tax identification numbers, dates of birth, bank account numbers, and checking account numbers.

2.    Mattel's request for sanctions is **DENIED**.

3.    The MGA Motion is **GRANTED**.

4.    All non-privileged documents shall be produced within 30 days of this Order, subject to any applicable confidentiality designations available under the Protective Order.

5.    All documents to be produced pursuant to this Order, including employee personnel files and records of communications between Mattel and law enforcement officials, shall be produced in the same format and order as they are maintained in the original files of the parties as required by Federal Rule of Civil Procedure 34(b)(2)(E)(i).

6.    The documents reflecting Mattel's communications with law enforcement officials shall include any and all enclosures, and documents transmitted as a group shall be marked in a manner that permits MGA to ascertain which pages constitute each individual transmittal.

7.    All personnel or vendor documents redacted by MGA in accordance with this Order shall, whenever applicable, retain any letterhead, title, or other header that permits Mattel to ascertain the general nature and source of the document redacted and shall be marked in a manner that permits Mattel to ascertain which pages comprise a single document.

Dated:      March 13, 2009

By:_____ /s/ Robert C. O'Brien_____
ROBERT C. O'BRIEN
Discovery Master

ORDER NO. 6
[Case No. CV 04-09049 SGL (RNBx)]

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 1

PAGE 22

EXHIBIT 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

      Plaintiff,

     vs.

MATTEL, INC., a Delaware
corporation,

      Defendants.

AND CONSOLIDATED ACTIONS.

No. CV 04-9049 SGL (RNBx)
Consolidated with
Nos. CV 04-9405 and
05-2727

**CERTIFIED COPY**

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Wednesday, March 11, 2009

Reported by:
CHERYL R. KAMALSKI
CSR No. 7113

Job No. 106486

EXHIBIT 2
PAGE 23

TRANSCRIPT OF PROCEEDINGS          03/11/09

1                  UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF CALIFORNIA
2                      EASTERN DIVISION

3

4    CARTER BRYANT, an individual,

5            Plaintiff,

6        vs.                          No. CV 04-9049 SGL (RNBx)
                                      Consolidated with
7    MATTEL, INC., a Delaware         Nos. CV 04-9405 and
     corporation,                     05-2727
8
             Defendants.
9    _____

10   AND CONSOLIDATED ACTIONS.

11

12   _____

13

14

15

16        REPORTER'S TRANSCRIPT OF PROCEEDINGS, taken at

17   555 West Fifth Street, 48th Floor, Los Angeles,

18   California, beginning at 10:18 a.m. and ending at

19   11:53 a.m. on Wednesday, March 11, 2009, before

20   CHERYL R. KAMALSKI, Certified Shorthand Reporter No. 7113.

21

22

23

24

25

2

```
 1     APPEARANCES:

 2

 3     Discovery Master:

 4          ROBERT C. O'BRIEN
            Attorney at Law
 5          555 West Fifth Street, Suite 4800
            Los Angeles, California 90013-1065
 6          (213) 629-7400

 7     For Defendant Mattel, Inc.:

 8          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
            BY:   MICHAEL T. ZELLER
 9          BY:   B. DYLAN PROCTOR
            BY:   JON COREY
10          Attorneys at Law
            865 South Figueroa Street, 10th Floor
11          Los Angeles, California 90017
            (213) 624-7707

12
       For Defendant MGA:
13
            GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
14          BY:   JOEL KLEVENS
            Attorney at Law
15          10250 Constellation Boulevard, Nineteenth Floor
            Los Angeles, California 90067
16          (310) 553-3000

17     Also Present:

18          CRAIG HOLDEN

19

20

21

22

23

24

25
```

3

EXHIBIT 2

PAGE 25

**TRANSCRIPT OF PROCEEDINGS**                    03/11/09

```
1        Los Angeles, California, Wednesday, March 11, 2009
2                    10:18 a.m. - 11:53 a.m.
3
4        MR. O'BRIEN:  Welcome back down.  We've got a
5    smaller crowd this morning than we had last time, which I
6    think is a good sign.
7        Before we get started, if I can get counsel to
8    state their appearances on the record.
9        MR. KLEVENS:  Joel Klevens for MGA.
10       MR. HOLDEN:  Craig Holden, in-house for MGA.
11       MR. ZELLER:  Mike Zeller for Mattel.
12       MR. PROCTOR:  Dylan Proctor for Mattel.
13       MR. COREY:  Jon Corey for Mattel.
14       MR. O'BRIEN:  All right.  I think -- let me make
15   sure I've got the right memo that I prepared here.  I
16   believe that we have Mattel's motion to compel production
17   of documents by MGA.  It was a larger number, I think, and
18   then it was reduced in number.  It was, I think, let's
19   see, 43 through 75, 87, 88, and now it's been reduced to
20   just two requests.  Is that correct?
21       MR. COREY:  That's correct, 87 and 88.
22       MR. ZELLER:  Also just as a point of order, what
23   we hope to do or plan to do this morning is is that
24   Mr. Proctor can handle the motion that MGA has brought and
25   Mr. Corey can address our motion.  I'm hoping to be quiet
```

4

1    today.

2              MR. O'BRIEN:   That would be fine, although you're

3    welcome to -- this is relatively informal, this goes for

4    both counsel, I won't hold you to these tough rules on

5    splitting arguments, so certainly speak up if you'd like

6    to make a statement on either side.  I won't give you too

7    hard of a time about that.

8              Then with respect to MGA, we have MGA's motion to

9    compel request Nos. 526 and 528.

10             I wanted to let you know there is an ex parte

11   pending.  I'm going to take that ex parte, it's now been

12   briefed, under submission, and so we won't address that

13   today.  It involves, I believe, the financing entities

14   and -- I think it's just the financing entities, not the

15   transferee entities.  But that's something that I'll take

16   under submission, I won't set a separate hearing, and

17   we'll rule on that forthwith, hopefully in the next day or

18   two.

19             MR. ZELLER:   There's actually -- and I believe

20   you're referring -- there was an ex parte that we brought

21   dealing with basically the issue of service on Lexington

22   Financial.

23             MR. O'BRIEN:   That's correct.

24             MR. ZELLER:   I do believe that that has been

25   fully submitted -- fully briefed and now submitted.

5

EXHIBIT 2

PAGE 27

1    There is another matter that we brought to your

2    attention through letters dealing with, basically, the

3    meet-and-confer process, which, I believe, has been

4    addressed by your order of yesterday, I think in

5    particular in a footnote, I think, resolves that issue.

6    MR. O'BRIEN:  That's correct.  That's my

7    understanding.  Since those were exchanges of letters, I

8    haven't taken them to be a motion on calendar, unless

9    someone wants to make a motion.  I think they've now been

10   resolved by the first order.

11   MR. ZELLER:  Yeah.

12   MR. O'BRIEN:  So I won't put that letter exchange

13   on calendar for any disposition at this time.  Of course,

14   if it becomes an ongoing problem or there are issues with

15   the meet-and-confer process, please bring it to my

16   attention, and I can intervene, but that's an area that

17   I'm hopeful that I don't have to intervene in.  I think

18   that counsel ought to be able -- I understand it's a

19   contentious case, but at least on the modalities of

20   meeting and conferring ought to be something that can be

21   resolved by --

22   MR. KLEVENS:  It was resolved.  There was no

23   issue.  There still is no issue.

24   MR. O'BRIEN:  Which is good to hear.  And I

25   understand that -- my understanding is that dispute didn't

6

EXHIBIT 2

PAGE 28

1   have so much to do with MGA and Mattel, but had more to do

2   with some of the third-party entities and --

3          MR. KLEVENS:  There was certainly no dispute

4   between MGA and Mattel that I was aware of, both sides

5   agreed that the parties had used and would continue to use

6   telephonic meet and confers.  That was confirmed in

7   writing on more than one occasion.  So I was a little bit

8   perplexed by the dispute and certainly by Mattel's last

9   letter to you.

10         MR. O'BRIEN:  As far as the letters go, and I

11   said this last time, my assumption is that all the parties

12   are acting in good faith and I'm not going to get into

13   the -- unless that's proven otherwise, I'm not going to

14   get into any of the characterizations that are made in one

15   party's letter or the other party's letter.  I think the

16   meet-and-confer situation's resolved and it can take place

17   by telephone on a going-forward basis.

18         MR. ZELLER:  And I raise the letter just simply

19   so that we could take it off the table.

20         For the record, we had instances where Bingham

21   insisted we have a partner drive down to Orange County or

22   they would not meet and confer.  To somehow suggest that

23   this was a fictitious dispute created by Mattel, which is

24   how I sort of read what Mr. Klevens was saying, is just

25   not correct.

7

EXHIBIT 2

PAGE 29

1      MR. O'BRIEN:  Okay.  I didn't read him to be

2   saying that, and the Bingham folks aren't here, so I'm not

3   going to address that.  I understand the concern.  It was

4   set forth in the letters.  Hopefully it's now been

5   resolved in the order and it's off the table, and I think

6   we can focus on today's issues.

7      What my thought is that we'll go with Mattel's

8   motion to compel responses to request for production 87

9   and 88 first, we'll provide 10 minutes for Mattel to argue

10  that motion, if that time is insufficient, let me know,

11  MGA will have then 10 minutes to respond, and then Mattel

12  will have 5 minutes of rebuttal.  We'll then turn to MGA's

13  motion, we'll have the same time periods, just reverse it,

14  MGA will have 10 minutes to make the arguments, Mattel

15  will have 10 minutes to respond, and MGA will have 5

16  minutes of rebuttal.

17     I'm familiar with the papers, I've read all the

18  papers and am generally familiar with the issues.  Having

19  said that, and, Mr. Klevens, I don't think you were here

20  the last time, or the first hearing, I certainly want you

21  to highlight the arguments that you have whether in

22  opposition or in support -- in opposition of Mattel's

23  motion or in support of your motion.  Assume that I've

24  read the papers, which I have, but I'm not going to give

25  you some sort of instruction to limit oral argument to

8

EXHIBIT 2

PAGE 30

1   things that aren't in the papers, or that sort of thing.

2   I want to give you the time to advocate your position and

3   highlight the issues that you think I ought to be

4   attending to in my review of papers.

5           MR. KLEVENS:   That's fine.

6           MR. O'BRIEN:   All right.  So, I'm sorry, is it

7   Mr. Corey --

8           MR. ZELLER:   Yes.

9           MR. O'BRIEN:   Okay.

10          MR. COREY:   Thank you.  I doubt that I will take

11  the entire 10 minutes.

12          But let me start here.  With respect to request

13  Nos. 87 and 88, which are the only requests that remain at

14  issue in this particular motion, they seek personnel files

15  of Mattel employees who went and became employees of MGA

16  or who worked as independent contractors or vendors for

17  MGA.

18          I think, as the Discovery Master is aware, one of

19  the allegations that we have made, that Mattel has made,

20  is that MGA has engaged in a pattern or a practice of once

21  they obtained this Bratz product, they recognized that

22  they were really a company that was incapable of, I'm not

23  sure, capitalizing to the greatest extent that it could

24  without some help, and it looked at Mattel and it looked

25  at Mattel's employees to get that help, and really took

EXHIBIT 2

PAGE 31

1   from Mattel, the phrase I think we use in our complaint is

2   Mattel's intellectual infrastructure.  To date Mattel has

3   identified between 10 and 11 individuals who actually took

4   documents with them from Mattel when they left.

5          At that point you've got to ask the question,

6   well, what else has happened?  And so we asked for the

7   personnel files to figure out things like when did MGA

8   first start contacting people at Mattel, why were these

9   people targeted, what was the justification for contacting

10  them to begin with.  And that kind of information, I

11  understand from MGA, at least during the meet-and-confer

12  process, for all of these personnel files, was conceded to

13  be relevant.  There was an offer made to produce some

14  information from the personnel files.  So I think where

15  the rubber hits the road on this particular motion is is

16  there justification for limiting in any way the

17  information from those personnel files.  And I think the

18  answer to that question has to be no for two reasons.

19         The first reason that MGA puts up is the

20  documents shouldn't be produced because these individuals

21  have privacy rights.  Absolutely true.  Mattel doesn't

22  dispute that for a second.  The Federal Court and Congress

23  have devised a mechanism to deal with that privacy issue,

24  and that is by protective order.  Mattel respects the

25  privacy of these individuals, and this information

EXHIBIT 2

PAGE 32

```
 1   shouldn't be shared in discovery, unless there's a
 2   protective order in place, and here we do have a
 3   protective order in place.  Both the prior Discovery
 4   Master and Judge Larson have recognized that the existence
 5   of that protective order is enough to overcome any privacy
 6   concerns that any party or any third party may have.
 7              The reliance on California law, and we've cited
 8   the cases -- the only cases that have addressed this issue
 9   about imposing a prior notice requirement in federal
10   question cases, they all decide California law doesn't
11   apply.  There's just no place in a federal question case.
12              Now, going back to some of the information that
13   Mattel would be interested in in the personnel files is
14   not only information that may be there, like what were the
15   terms of their compensation, was it significantly higher
16   than market, is there a premium being paid for something,
17   but also information that may not be there.  For example,
18   and I think that we put this in our papers,
19   Gustavo Machado was an individual who was employed by MGA
20   Mexico, information that Mattel alleges he stole from
21   Mattel was discovered in MGA Mexico's offices when the
22   Mexican federal authorities issued a search warrant, and
23   there's no question that that occurred, those aren't
24   allegations, and Mr. Machado denies this.  But after that
25   fact MGA promoted Mr. Machado, after finding that out, MGA
```

11

EXHIBIT 2

PAGE 33

1    promoted Mr. Machado to become a vice president of

2    marketing in the United States.  So information relating

3    to his promotion, with MGA's full knowledge that this had

4    happened, is particularly relevant information that we

5    would like to use.

6              Separately, Mattel would like to know, with

7    respect to Mr. Machado or any of these other individuals

8    that we identified, are there disciplinary proceedings,

9    and particularly are there not disciplinary proceedings,

10   is there no record in the personnel files of any warning

11   or any admonition for these people acting outside or

12   inconsistent with what MGA claims its policy is with

13   respect to using competitor information.

14             Then, finally, I think that with respect to who

15   gets to decide what portions or what elements of the

16   personnel files should be produced, I'd urge the Discovery

17   Master to look at the Ladson case, which is

18   164 F.R.D. 376, and there was an application there for the

19   production of certain personnel files in a Title 7 case,

20   and the Court, reading from page 377, said,

21                  "The Court is not prepared to

22              allow defendants to determine what

23              information is necessary for the

24              plaintiffs to receive."

25             And I think that that same reasoning applies

12

EXHIBIT 2

PAGE 34

1   here.   The defendant in the Ladson case, like MGA here,

2   had offered to produce selected pieces of the personnel

3   file, but I don't think that that's a -- their election or

4   their decision as to what to produce within a specific

5   personnel file, I don't think, is sufficient to overcome

6   the relevancy requirement, or the relevancy standard.

7               MR. O'BRIEN:  All right.  Are you done?

8               MR. COREY:  Yes.

9               MR. O'BRIEN:  Okay.  Question for you:  Is there

10   any objection, on Mattel's part, to redacting -- or let me

11   phrase it differently.  What is the relevance of a social

12   security number, bank account numbers, healthcare

13   information for these employees, is that information that

14   you're seeking, or would you concede that those discrete

15   pieces of information, for example, a direct deposit

16   application for a checking account, I'm not talking about

17   how much money may have gone to the checking account, but

18   the person's checking account number, their social

19   security number, information about healthcare treatment

20   that they've had, is that information that Mattel is

21   seeking and believes is relevant here?

22               MR. COREY:  I think the information with respect

23   to bank account numbers and with respect to social

24   security numbers is relevant information.  I think that

25   would potentially lead to additional discoverable

1    information.

2          With respect to the healthcare -- the healthcare

3    information, no, it's not something that Mattel is

4    particularly interested in.

5          Mattel is concerned, though, about breaking up

6    the personnel files in light of what I anticipate to be an

7    offer at trial that this is the collection of documents

8    that constitutes the personnel file and there is no

9    instance in here of any action taken against any of these

10   individuals for taking a competitor's information.

11         MR. O'BRIEN:  Is that something --

12         MR. COREY:  It's an evidentiary concern more than

13   anything.  I don't want the response to be well, no, it's

14   not the complete file, so you can't draw that inference

15   from that.

16         MR. O'BRIEN:  Is that something that could be

17   solved through redacting the relevant pages?  So, for

18   example, if you had the file, and the page dealing with

19   someone's pregnancy or somebody's application for

20   insurance or that sort of thing, that may disclose private

21   matters, if those pages in a file were redacted, would

22   that be one way that would address the concern that you

23   have?

24         MR. COREY:  I believe so.  The specific

25   information, I think -- I think what we would request is

14

EXHIBIT 2

PAGE 36

1   that as long as there's an indicator on that page that it

2   is, in fact, a healthcare, if it has Blue Cross's logo at

3   the top, or something like that, I don't want redacted

4   blank pages, but I think if we -- some generic indicator,

5   I think that would be sufficient.

6               MR. O'BRIEN:   Okay.  I understand.

7               Mr. Klevens.

8               MR. KLEVENS:   Thank you.  And I'm going to take

9   my first opportunity to say thank you, "Mr. O'Brien," and

10  not fall into the "your Honor" trap if I can.

11              First, just to take a moment, as shown in MGA's

12  opposition and as conceded in Mattel's reply, it brought

13  this renewed motion without any effort to meet and confer,

14  except for meet and confers that took place more than a

15  year ago.  No effort to meet and confer since the phase 2

16  stay was lifted.

17              Also, as reflected in MGA's opposition and

18  conceded in Mattel's reply, MGA agreed to produce

19  responsive documents regarding the first RFP -- the first

20  RFPs No. 48 and the third set of RFPs 43 through 75.   34

21  of the 36 document requests MGA agreed to produce.

22              So notwithstanding all of the vitriol that you

23  get in this motion, and the hundreds of pages of exhibits,

24  and the page after page of what Mattel calls background,

25  there are two document requests presently pending before

15

EXHIBIT 2

PAGE 37

1    the Discovery Master, and no more than two.

2          And the issue, as you've already touched upon, is

3    to what extent are these requests overbroad.  An issue

4    that Mattel has not addressed is that these requests,

5    particularly request 87, demands all personnel and vendor

6    files for each person identified in Exhibit 664, which was

7    Exhibit 27 to the Krug declaration submitted with the

8    motion.  That exhibit contains 120 names.  Mattel says

9    well, gee, we suspect that 10 or 11 people are implicated

10   in the claims that we've alleged in the counterclaim,

11   namely, allegedly wrongfully hired and then allegedly

12   stealing trade secrets.  There is no showing by Mattel

13   with respect to the other 110 people and that any of those

14   others have -- that they have any basis to believe that

15   any of those others were wrongfully hired, or even if they

16   were, that they were involved in this alleged conspiracy

17   about taking trade secrets, that is, after all, what the

18   counterclaim is about and that's all that it's about.

19          So the first problem is that Mattel needs to

20   identify the individuals whose personnel or vendor files

21   they think they're entitled to, as opposed to using this

22   blunderbuss approach of simply saying we want 120 even

23   though we know nothing about 110 of those 120.  That is

24   the definition of a fishing expedition.  It is not an

25   effort to conduct discovery to fairly litigate the claims

16

EXHIBIT 2

PAGE 38

1    alleged.  It's an effort to conduct discovery to discover

2    new claims.  That is not allowed under all applicable

3    federal law.  So that's the first problem, it wasn't

4    addressed by Mr. Corey and needs to be addressed by

5    Mattel.

6            The second problem is that even if you get to a

7    universe of individuals whose personnel files should be

8    produced because they're relevant, you then have to deal

9    with the question of well, what's relevant to these

10   claims?  Is everything about an individual that might be

11   in his personnel file relevant to these claims?  What are

12   these claims about?  And, again, you get to the question

13   of -- that these claims are about an alleged plan by

14   Mattel (sic) to steal employees and to take trade secrets.

15           So it seems to me, again, Mattel needs to limit

16   the material that they're looking for to material that

17   would arguably be relevant.

18           We pointed out to you, in our papers, that when

19   this same issue came up in phase 1 and Mattel took the

20   same approach, which was we want all of these personnel

21   files, the ruling from then Master, Judge Infante, on

22   April 14th, 2008, was to say well, you can have material

23   from the personnel files but not all of the materials, and

24   he limited what was allowed to the portions of the files

25   relating to what was at issue in phase 1, which in that

EXHIBIT 2

PAGE 39

1        I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3        That the foregoing proceedings were taken

4    before me at the time and place herein set forth; that

5    any witnesses in the foregoing proceedings, prior to

6    testifying, were duly sworn; that a record of the

7    proceedings was made by me using machine shorthand

8    which was thereafter transcribed under my direction;

9    that the foregoing transcript is a true record of the

10   testimony given.

11       Further, that if the foregoing pertains to

12   the original transcript of a deposition in a Federal

13   Case, before completion of the proceedings, review of

14   the transcript [   ] was [   ] was not requested.

15       I further certify I am neither financially

16   interested in the action nor a relative or employee

17   of any attorney or party to this action.

18       IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20           MAR 1 2 2009

21   Dated: _____

22

23           _Cheryl R. Kamalski_

24           CHERYL R. KAMALSKI
             CSR No. 7113

25

EXHIBIT 2
PAGE 40

EXHIBIT 3

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 42 of 72   Page ID
#:166699
Case 2:04-cv-09049-SGL-RNB      Document 4992      Filed 03/10/2009      Page 1 of 31

1   Robert C. O'Brien (SBN 154372)
    ARENT FOX LLP
2   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
3   Telephone:  213.629.7400
    Facsimile:  213.629.7401
4   obrien.robert@arentfox.com

5   Discovery Master

6

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12   CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)

13              Plaintiff,
                                          **Consolidated with**
14        v.                              **Case No. CV 04-09059**
                                          **Case No. CV 05-2727**
15   MATTEL, INC., a Delaware
     corporation,                         **PHASE II DISCOVERY MATTER**
16
                Defendant.                **ORDER NO. 3, REGARDING:**
17
                                          **(1)  MOTION OF MGA**
18                                         **ENTERNTAINMENT, INC.,**
                                          **ISAAC LARIAN AND MGA**
19                                         **ENTERTAINMENT (HK)**
                                          **LIMITED TO QUASH**
20                                         **NON-PARTY SUBPOENAS; and**

21                                         **(2)  MOTION OF MATTEL, INC.**
                                          **TO COMPEL PRODUCTION OF**
22                                         **DOCUMENTS RESPONSIVE TO**
                                          **THE SAME NON-PARTY**
23                                         **SUBPOENAS**

24
     CONSOLIDATED WITH
25   MATTEL, INC. v. BRYANT and
     MGZ ENTERTAINMENT, INC. v.
26   MATTEL, INC.

27

28
                                                              ORDER NO. 3
                                      1              [Case No. CV 04-09049 SGL (RNBx)]

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 3
PAGE 41

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 43 of 72   Page ID
#:166700
Case 2:04-cv-09049-SGL-RNB      Document 4992      Filed 03/10/2009      Page 2 of 31

1    This Order sets forth the Discovery Master's ruling on: (1) the motion of

2    MGA Entertainment, Inc., Isaac Larian, and MGA Entertainment (HK) Limited

3    (collectively "MGA") to quash certain non-party subpoenas [Docket Number 4779]

4    and (2) the corresponding motion of Mattel, Inc. ("Mattel") to compel production of

5    documents responsive to the same non-party subpoena [Docket Numbers 4769 and

6    4788] (collectively, the "Motions").

7    The Motions came on regularly for hearing before the Discovery Master on

8    March 4, 2009.  All interested parties were represented by counsel and afforded the

9    opportunity to present oral argument on the Motions.  The Discovery Master,

10   having considered the papers filed in support of and in opposition to the Motions,

11   and having heard oral argument thereon, rules as set forth below.

12   **I.     INTRODUCTION**

13

14   **A.     The Court's February 11, 2009 Ruling**

15   On February 11, 2009, the Court heard oral argument on various motions

16   filed by the parties.  During the proceedings, counsel took the opportunity to orally

17   request clarification by the Court regarding whether the parties' respective motions

18   relating to the subpoenas served by Mattel on various entities allegedly related to

19   MGA (the "Subpoenas") are in any way stayed or precluded by any of the Court's

20   prior orders.

21   In response, the Court stated: "I will instruct the Discovery Master this

22   afternoon, in no uncertain terms, that there is no stay on any discovery related to

23   this case at all."  (Reporter's Transcript of Proceedings, February 11, 2009 ["Tr."],

24   99:8 – 10).  Counsel for MGA then referred to the fact that the Court had

25   previously declined to allow Mattel to serve certain discovery accompanying

26   Mattel's motion for a receiver and characterized the third-party subpoenas as an

27   attempt to circumvent the Court's ruling.  (Tr., 101:12 – 17).  In response, the Court

28   stated:

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -                    ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 3

PAGE 42

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 44 of 72   Page ID
#:166701
Case 2:04-cv-09049-SGL-RNB       Document 4992       Filed 03/1∪/2009       Page 3 of 31

1

2      Then the question becomes – and this is a question for the
       Discovery Master, not for this Court – whether or not the
3      discovery is related to Phase 2. If it is, it is. I'm not going to
       pass any judgment whatsoever. I'm going to leave that
4      completely up to the Discovery Master. ... The question for the
       [D]iscovery [M]aster will be whether or not the disputed
5      discovery request is related or relevant to the trial that has now
6      been scheduled for March [2010] or not.

7  (Tr., 101:18 – 22; 103:1 – 3).

8        The Discovery Master understands the Court's ruling as indicating that, in

9  deciding the motions relating to the Subpoenas, the Discovery Master should

10 consider whether there is a nexus between the information sought by the

11 Subpoenas, on the one hand, and the Phase 2 claims and counterclaims set for trial

12 in March 2010, on the other hand. If the information sought by the Subpoenas is, to

13 use the Court's words, "related to Phase 2" or "related or relevant to the [Phase 2]

14 trial," then that information could potentially be the subject of appropriate

15 discovery requests by Mattel.[1]

16       B.    Information Sought By The Subpoenas

17       The information sought by Mattel's Subpoenas falls into two broad

18 categories. First, Mattel seeks documents from third parties Omni 808 Investors,

19 LLC, OmniNet Capital, LLC and Vision Capital, LLC (collectively, the "Financing

20 Entities") involving, among other things, their internal ownership and operations

21 and their role in providing financing to MGA during the summer of 2008 (the

22

23 [1] Even prior to the Court's February 11, 2009 ruling, Mattel acknowledged that it had the burden of demonstrating a
   nexus between the information sought by the Subpoenas and the Phase 2 issues, as demonstrated by Mattel's
24 inclusion of a section in its Motion to Compel summarizing the claims to be adjudicated in Phase 2, (Motion, pp. 5 –
   8), and a section arguing that the information sought by the third-party subpoenas is relevant to Mattel's Phase 2
25 claims, (Id., pp. 18 - 24 and 24 – 25). However, Mattel also argued that the information sought might be appropriate
   regardless of any nexus to Phase 2. (See id., pp. 14 – 17 [arguing that MGA's prior statements regarding its finances
26 in Phase 1 "opened the door" to discovery on this issue] and id., p. 23 [arguing that the information sought is relevant
   to MGA's credibility]). Based on the Court's subsequent ruling on February 11, 2009, as well as the Discovery
27 Master's own independent evaluation of those arguments, the Discovery Master concludes, as discussed more fully
   below, that these arguments are insufficient, standing alone, to justify the non-party discovery Mattel seeks. Rather,
28 Mattel must demonstrate some link between the information sought and the issues to be adjudicated by the Court at
   the Phase 2 trial.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES                                    - 3 -           ORDER NO. 3
                                                         [Case No. CV 04-09049 SGL (RNBx)]
                                                         EXHIBIT 3

                                                         PAGE 43

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 45 of 72   Page ID
#:166702
Case 2:04-cv-09049-SGL-RNB      Document 4992      Filed 03/10/2009      Page 4 of 31

1    "Financing Discovery"). Based on the information presented at the February 11,

2    2009 hearing and in connection with the pending motions, it does not appear that

3    either MGA Entertainment, Inc., MGA Entertainment (HK) Limited, or Larian have

4    an ownership interest in the Financing Entities.[2] (*See* Tr., 70:22 – 72:5; 78:9 -25).

5        Second, Mattel seeks documents from third parties IGWT Group, LLC and

6    IGWT 826 Investments, LLC (collectively, the "Transferee Entities") regarding

7    MGA's sale to them of infringing MGA inventory, namely Bratz dolls (the

8    "Transferee Discovery"). MGA does not dispute that the Transferee Entities are

9    owned and/or controlled by Larian. (*See, e.g.*, MGA's Reply in support of its

10   Motion to Quash, at p. 5, fn. 6, where MGA refers to the purchase of Bratz

11   inventory by the Transferee Entities as "Larian's purchase of those . . .

12   products . . . .").[3]

13   **II.    MGA's Motion To Quash**

14       Because it could dispose of all outstanding discovery issues related to the

15   Subpoenas, the Discovery Master first addresses MGA's Motion to Quash filed on

16   February 3, 2009.

17       **A.    Legal Standard**

18       As the party moving to quash the Subpoenas, MGA bears the burden of

19   satisfying the standard set forth in Rule 45(b), which provides that the court may

20   "quash or modify the subpoena if it is unreasonable and oppressive." (Fed. R. Civ.

21   P. 45(b); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir.

22   2004) ["The moving party has the burden of proof to demonstrate that compliance

23

24   ───────────────────

     [2] Of course, this is one of the facts Mattel seeks to investigate through the Subpoenas to the Financing Entities. The
25   Discovery Master's ruling denying Mattel's Motion to Compel the Financing Parties to comply with the Subpoenas
     does not address – and should not be construed as deciding – whether Mattel could, upon establishing a nexus to a
26   legitimate Phase 2 issue, seek to obtain this information from MGA.

     [3] Moreover, MGA does not dispute the assertions made by Mattel in its Motion to Compel at pp. 11– 12, including
27   that Larian created IGWT Group during the Phase 1 trial and registered its place of business as his home address, and
     that Larian created IGWT 826 Investments the day after the Phase 1 trial ended and registered it at the home address
28   of his sister.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                              - 4 -                    ORDER NO. 3
                                                            [Case No. CV 04-09049 SGL (RNBx)]


EXHIBIT 3

PAGE 44

Case 2:04-cv-09049-DOC-RNB  Document 5139-4  Filed 04/07/09  Page 46 of 72  Page ID
#:166703
Case 2:04-cv-09049-SGL-RNB    Document 4992    Filed 03/10/2009    Page 5 of 31

1    with the subpoena would be unreasonable and oppressive" (internal quotations

2    omitted)]; *Linder v. Department of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998) [The

3    burden of proving that a subpoena is oppressive is on the party moving to quash];

4    *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005) [the

5    burden is on the movant to establish that a subpoena duces tecum should be

6    quashed]).  "The burden is particularly heavy to support a 'motion to quash as

7    contrasted to some more limited protection.'"  (*Westinghouse Electric Corp. v. City*

8    *of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965) [denying a motion to quash

9    supported by two affidavits]).

10       **B.    Arguments Made By MGA In Support Of Its Motion To Quash**

11       The sole argument set forth in MGA's Motion to Quash is that the Court's

12   January 7, 2009 order appointing a forensic auditor bars Mattel from seeking the

13   information sought by the Subpoenas.  (*See* MGA's Motion to Quash, pp. 1 - 6).

14   But that argument fails for the reasons set forth above.  The Court made it clear at

15   the hearing on February 11, 2009 that:

16           There is no stay on discovery.  Period. . . . . [The forensic auditor
             appointed by the Court] is acting at the Court's discretion to
17           inform the Court of information. . . . That's an entirely separate
             matter.  And I have not stayed any discovery and there should be
18           no reliance on that.  If that was misunderstood, it's clarified now.
19
20   (Tr., 97:15, 98:8 - 9, and 98:13 - 15).

21       Recognizing that its only argument has been rejected by the Court, MGA

22   argues for the first time in its Reply that its Motion to Quash should be granted

23   because the Subpoenas are not relevant to any of Mattel's Phase 2 claims.  (*See*

24   MGA's Reply Brief in Support of the Motion to Quash, pp. 1 and 5 - 12).

25   However, MGA did not make this argument in its opening brief.  It instead declared

26   in its moving papers that whether the Subpoenas are related to any "Phase 2 issues

27   is beside the point."  (*Id.*, p. 5).  Because MGA did not address the relevance of the

28   subject discovery until the filing of its Reply, the Discovery Master declines to

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 3

PAGE 45

1    consider the argument in connection with the Motion to Quash.

2         The Discovery Master, like the Court,[4] disfavors the insertion of new

3    arguments at the reply stage that could have been raised in the moving papers. A

4    party filing a motion is required to raise all of its arguments in its opening brief to

5    prevent "sandbagging" of the non-moving party and to provide opposing counsel

6    the chance to respond. This rule is routinely adhered to by courts in the Ninth

7    Circuit. (*See, e.g., United States v. Boyce,* 148 F.Supp .2d 1069, 1085

8    (S.D.Cal.2001); *Leick v. Hartford Life and Acc. Ins. Co.,* 2007 WL 1847635 at *1,

9    n. 1 (E.D.Cal. 2007); *Stewart v. Wachowski,* 2004 WL 2980783, at *11 (C.D.Cal.

10   Sept. 28, 2004); *Hamilton v. Willms,* 2007 WL 2558615, *11 (E.D.Cal.2007); *see*

11   *also United States v. Cox,* 7 F.3d 1458, 1463 (9th Cir.1993); *United States v.*

12   *Wright,* 215 F.3d 1020, 1030 n. 3 (9th Cir.2000)).

13        Furthermore, MGA will not suffer any prejudice from this decision because

14   the issue it raised in its Reply (i.e., are the Subpoenas seeking information related to

15   any Phase 2 claims) has been fully briefed by the parties and is ruled upon by the

16   Discovery Master in connection with Mattel's Motion to Compel.[5] (*See* Section III

17   below).

18        Accordingly, MGA's Motion to Quash is **DENIED**.

19   //

20   //

21   //

22   //

23

24   [4] In *Bryant v. Mattel, Inc.,* 573 F.Supp.2d 1254, 1273 n.7 (C.D. Cal. 2007), the Court noted that it "ordinarily would not consider" arguments made for the first time on reply but did so only "because [undertaking the analysis did] not

25   change [its] ultimate conclusion."

26   [5] That the arguments raised in the Reply are the same as those in MGA's Opposition to the Motion to Compel is conceded by Mattel. Indeed, Mattel admitted in its Request to Consolidate MGA's Motion to Quash and Motion to

27   Compel (which was denied as untimely by the Discovery Master at the hearing on March 4, 2009) that the "MGA Parties' Opposition to Mattel's Motion to Compel Production of Documents Responsive to Third Party Subpoenas . . . makes the same arguments as the MGA Parties' Reply in support of their Motion to Quash." (Mattel's Request to

28   Consolidate MGA's Motion to Quash and Mattel's Motion to Compel, p. 2).

EXHIBIT 3
PAGE 40

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 48 of 72   Page ID
#:166705
Case 2:04-cv-09049-SGL-RNB   Document 4992   Filed 03/10/2009   Page 7 of 31

1    **III.    Mattel's Motions To Compel**

2        **A.    The Purported Procedural Defects Barring Mattel's Motions To**

3            **Compel**

4        MGA, the Financing Entities, and the Transferee Entities all argue that that

5    Mattel's Motion to Compel should be denied on several different procedural

6    grounds.

7        **1.    The Court's January 7, 2009 Order**

8        As an initial matter, the Transferee Entities and the Financing Entities repeat

9    the argument made by MGA in its Motion to Quash that the Court's January 7,

10   2009 Order appointing a forensic auditor barred Mattel from seeking the discovery

11   sought by the Subpoenas.  (Financing Entities' Opposition to Mattel's Motion to

12   Compel at p. 3; Transferee Entities' Opposition to Mattel's Motion to Compel at

13   pp. 5 - 7).  But that argument fares no better here than it did with respect to MGA's

14   Motion to Quash and is rejected for the reasons discussed in Section II above.

15       **2.    Local Rule 37**

16       The Financing Entities and the Transferee Entities also argue that Mattel's

17   Motion to Compel should be denied because Mattel failed to comply with Local

18   Rule 37 by, among other things, failing to meet and confer and failing to file a joint

19   stipulation.  (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 1

20   and 7 - 10; Transferee Entities' Opposition to Mattel's Motion to Compel, p. 2

21   [referencing Local Rule 37 in passing]).  However, Local Rule 37 (as distinguished

22   from Federal Rule 37, which is discussed in subsection 7a, below) does not apply to

23   discovery disputes in this case.  Rather, the applicable procedure is the one adopted

24   by the Court in its order appointing a discovery master dated December 6, 2006

25   ("Discovery Master Order").[6]  Because the Discovery Master Order provides that

26

27     [6] The Discovery Master Order is incorporated by reference into the Court's January 6, 2009 Order appointing a
discovery master for Phase 2 of this litigation.  (See Court's Order dated January 6, 2009, p. 2 ["The Discovery

28   Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006"]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __3__

PAGE __47__

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 49 of 72   Page ID
#:166706
Case 2:04-cv-09049-SGL-RNB   Document 4992   Filed 03/10/2009   Page 8 of 31

1    "all third parties subject to discovery requests . . . in this litigation shall be bound

2    by the terms of this Stipulation and Order," (Discovery Master Order, p. 6), that

3    order applies to the Financing Entities as well as the Transferee Entities, and its

4    procedures replace those set forth in Local Rule 37.  (*Id.*, p. 4).

### 3.    Local Rule 11-6 And Paragraph 4(b) Of The Court's Standing Order

7    The Financing Entities and MGA further argue that Mattel's Motion to

8    Compel should be denied because it exceeds the page limitations set forth in Local

9    Rule 11-6 and Paragraph 4(b) of the Court's Standing Order.  (*See* Financing

10   Entities' Opposition to Mattel's Motion to Compel, p. 9; MGA's Opposition to

11   Mattel's Motion to Compel, pp. 18 - 19).  Each of these contentions is unavailing.

12   The Discovery Master Order (not the Local Rules or the Court's Standing Order)

13   governs discovery disputes in this case, and it does not impose any page limit on

14   such motions.[7]  In fact, the Discovery Master Order dispenses with the formatting

15   requirements of the Local Rules in certain ways, such as allowing letter briefs, and

16   even permits the parties to agree to alternative procedures, including, presumably,

17   filing briefs that are more than 25 pages in length.  (*See* Discovery Master Order, p.

18   4).  Thus, while the Discovery Master encourages the parties to be as efficient as

19   possible in their briefing, he recognizes that briefs in excess of 25 pages are either

20   directly permitted under the Discovery Master Order (since no page limitation was

21   imposed by the Court) or implicitly allowed (since the parties may agree to

22   alternate procedures).  He further recognizes that the complex nature of this case

23   may periodically necessitate the filing of briefs that exceed 25 pages.[8]  For all of

---

[7] Even assuming the 25 page limitation for briefs did apply, Mattel had the option of filing separate motions to compel for each of the subpoenas at issue and could have easily extended the page limitation well beyond the 30 pages it filed in connection with its combined motion that addressed multiple subpoenas propounded on the Transferee Entities and the Financing Entities.

[8] In fact, the parties to this lawsuit have filed multiple discovery motions in this case that contained more than 25 pages.  (*See* Supplemental Declaration of Jon D. Corey in Support of Mattel, Inc.'s Reply in Response to The MGA Parties' Opposition to Motion to Compel, ¶ 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT  3

PAGE  48

Case 2:04-cv-09049-DOC-RNB  Document 5139-4  Filed 04/07/09  Page 50 of 72  Page ID
#:166707
Case 2:04-cv-09049-SGL-RNB     Document 4992     Filed 03/10/2009     Page 9 of 31

1    these reasons, filings in excess of 25 pages are permitted.[9]

2    **4.    Local Rule 6-1**

3    The Financing Entities argue in passing that Mattel's motion to compel

4    should be denied because it violates Local Rule 6-1. (Financing Entities'

5    Opposition to Mattel's Motion to Compel, p. 6).    However, the Discovery Master

6    Order adopts a completely different set of deadlines than the Local Rules for the

7    filing of motions, oppositions and replies, and a different schedule for noticing

8    hearing dates. (Discovery Master Order, p. 4). Therefore, Local Rule 6-1 has no

9    applicability here.

10    **5.    Failure To Name MGA In The Motion To Compel**

11    MGA next argues that Mattel's motion to compel is procedurally improper

12    because MGA was not named in the Motion to Compel and Mattel should not be

13    allowed to respond to MGA's objections.    (MGA's Opposition to Mattel's Motion

14    to Compel, p. 18).  But MGA has cited no legal authority, and the Discovery

15    Master has found none, standing for the proposition that a party must name in its

16    motion to compel all parties who have objected to an underlying subpoena even if

17    they are not actually the target of the subpoena.  In fact, the contention that Mattel's

18    Motion to Compel should have been brought against MGA makes no sense given

19    that it could not possibly comply with any order compelling a response to the

20    Subpoenas.

21    **6.    Mattel's Separate Statement**

22    MGA also contends that Mattel's Motion to Compel should be denied

23    because its' separate statement "is another classic example of . . . inefficiency."

24    (*Id.*, p. 19). Once again, nothing in the Discovery Master Order prevents a party

25    from filing a separate statement that first identifies the request in dispute and then

26

27    ───────────────

28    [9] In the event the length of briefs ever becomes excessive, the Discovery Master will issue an order setting a specific
      page limitation.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 3

PAGE 49

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 51 of 72   Page ID
#:166708
Case 2:04-cv-09049-SGL-RNB   Document 4992   Filed 03/10/2009   Page 10 of 31

1   sets forth the various contentions of the parties, even if the information regarding

2   the various requests happens to be repetitive.  Regardless, MGA has not cited any

3   legal authority in support of its position and the Discovery Master finds no reason

4   to dispose of Mattel's Motion to Compel merely because it filed a separate

5   statement that contains duplicative arguments.[10]

6               **7.     Meeting And Conferring**

7        As their final procedural argument in opposition to the Motion to Compel,

8   the Transferee Entities and the Financing Entities assert that the motion should be

9   denied because Mattel failed to adequately meet and confer prior to filing the

10  motion.  (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 7 - 8;

11  Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5).

12             **a.     Applicable Procedure**

13       Prior to filing its motion to compel, Mattel had an obligation to comply with

14  both the Federal Rules of Civil Procedure and the Discovery Master Order.  Federal

15  Rule of Civil Procedure 37(a) expressly requires that a party filing a motion to

16  compel discovery first meet and confer in "good faith."  (Fed. R. Civ. Proc. 37(a)).

17  Similarly, the Discovery Master Order states that unless an "alternative procedure"

18  is agreed upon or otherwise ordered by the Discovery Master, the

19          moving party shall first identify each dispute, state the relief
            sought, and identify the authority supporting the requested relief
20          in a meet and confer letter that shall be served on all parties by
            facsimile or electronic mail.  The parties shall have five court
21          days from the date of service of that letter to conduct an in-person
            conference to attempt to resolve the dispute.  If the dispute has
22          not been resolved within five court days after such service, the
            moving party may seek relief from the Discovery Master by
23          formal motion or letter brief . . .

24  (Discovery Master Order, p. 4).

25  //

26

27  ──────────────
    [10] The Discovery Master notes that where there are numerous discovery requests in dispute he would prefer for a
28  separate statement to be submitted by the moving party.

EXHIBIT 3
PAGE 50

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 52 of 72   Page ID
#:166709
Case 2:04-cv-09049-SGL-RNB      Document 4992      Filed 03/10/2009      Page 11 of 31

1
2

        **b.**    **Mattel's Meet And Confer Regarding The Financing**
                  **Entities**

3        In challenging Mattel's meet and confer effort, the Financing Entities first

4    claim that Mattel violated the Discovery Master Order because no "in-person

5    meeting occurred." (Financing Entities' Opposition to Mattel's Motion to Compel,

6    p. 8). But that argument is without merit, since Mattel and the Financing Entities

7    agreed to an alternative procedure that disposed of the in-person meet and confer

8    requirement.[11] Indeed, MGA's counsel sent counsel for Mattel, counsel for the

9    Transferee Entities and counsel for the *Financing Entities* a letter on January 23,

10    2009 memorializing the parties' agreement and establishing a schedule whereby the

11    parties would "meet and confer on January 29 and 30 . . ." (Mattel's Reply in

12    Support of its Motion to Compel filed on February 13, 2009, pp. 9 - 10;

13    Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply to the

14    Motion to Compel filed on February 13, 2009, ¶ 4 and Ex. 2). That the Financing

15    Entities' counsel received this letter and acted in accordance with its terms is

16    evidenced by, among other things, the fact that they served objections to the

17    Subpoenas on January 28, 2009 (which was the deadline specified in the January 23

18    letter) and started meeting and conferring with Mattel's counsel telephonically on

19    January 30. (Financing Entities' Opposition to Mattel's Motion to Compel, pp. 3

20    and 4). Accordingly, Mattel did not have any obligation to meet with the Financing

21    Entities in person since the parties had agreed to waive that obligation.

22        Nevertheless, Mattel still had an obligation to meet and confer with the

23    Financing Entities in good faith. Good faith cannot be shown merely through

24    perfunctory efforts; rather Federal Rule of Civil Procedure 37 mandates a genuine

25    attempt to resolve the discovery dispute through non-judicial means. (Fed. R. Civ.

26

27

28

[11] To promote efficiency and minimize the necessity for counsel to travel between their respective offices, the Discovery Master shall deem Paragraph 5 of the Discovery Master Order (mandating that the parties have an in person conference to attempt to resolve discovery disputes) to be sufficiently satisfied if the parties and non-parties involved in a discovery dispute meet and confer telephonically or by video conference. However, the Discovery Master emphasizes that this accommodation in no way lessens the parties' obligation to meet and confer in good faith.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 3

PAGE 51

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 53 of 72   Page ID
#:166710
Case 2:04-cv-09049-SGL-RNB   Document 4992   Filed 03/10/2009   Page 12 of 31

1    Proc. 37(a)(1)).

2          Because the evidence and declarations submitted by Mattel and the Financing

3    Entities are in conflict regarding what transpired during their respective meet and

4    confer communications, (*Cf.* Financing Entities' Opposition to Mattel's Motion to

5    Compel, pp. 3 – 5; Mattel's Reply Brief in Support of its Motion to Compel filed on

6    February 13, 2009, pp. 9-10), the Discovery Master gives Mattel the benefit of the

7    doubt and concludes that it adequately met and conferred with respect to Omni 808

8    Investors, LLC and Vision Capital, LLC.

9          By contrast, Mattel arguably did not even begin the meet and confer process

10   with OmniNet Capital, LLC prior to filing its motion to compel, because counsel

11   for the Financing Entities informed Mattel that they did not receive that Subpoena

12   until the afternoon of February 2, 2009 and filed objections to the Subpoena on that

13   date. (Financing Entities' Opposition to Mattel's Motion to Compel at p. 5). No

14   "good faith" meeting could therefore have taken place.

15         Although the meet and confer with respect to OmniNet Capital, LLC was

16   inadequate, the Discovery Master will nonetheless address the merits of Mattel's

17   Motion to Compel in all respects, including concerning the Subpoena served on

18   OmniNet Capital, LLC. The Discovery Master does so for purposes of efficiency

19   (i.e., the issues to be decided regarding the subpoena served on OmniNet Capital,

20   LLC are essentially identical to those that must be addressed in connection with the

21   subpoenas served on Omni 808 Investors, LLC and Vision Capital, LLC) and

22   because addressing the merits of the motion does not alter the outcome.[12]

23                    c.      **Mattel's Efforts To Meet And Confer Regarding The**

24                            **Transferee Entities**

25         Like the Financing Entities, the Transferee Entities contend that Mattel's

26   motion to compel should be denied because it did not meet and confer in good faith.

27

28   [12] As noted above, the parties are admonished to abide by the provisions of the Discovery Master Order requiring a
     good faith attempt to meet and confer regarding discovery disputes prior to the filing of any discovery motion.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                                        - 12 -              ORDER NO. 3
                                                   [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 3

PAGE 53

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 54 of 72   Page ID
#:166711
Case 2:04-cv-09049-SGL-RNB     Document 4992     Filed 03/10/2009     Page 13 of 31

1  (Transferee Entities' Opposition to Mattel's Motion to Compel, pp. 2 - 5). Yet, the

2  Transferee Entities concede that their counsel engaged in multiple meet and confer

3  teleconferences. (*Id.* at pp. 3 - 4). Several emails and letters were also exchanged

4  between the parties as part of the meet and confer process. (*Id.*). In light of these

5  interactions, the Discovery Master again gives Mattel the benefit of the doubt in

6  favor of resolving the issues on the merits and concludes that it adequately met and

7  conferred with the Transferee Entities.

8      **B.     Legal Standard Governing Enforcement Of The Subpoenas**

9      Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil

10  actions of "any matter, not privileged, which is relevant to the subject matter

11  involved . . .. The information sought need not be admissible at the trial if the

12  information sought appears reasonably calculated to lead to the discovery of

13  admissible evidence." Rule 26(b) is liberally interpreted to permit wide-ranging

14  discovery of all information reasonably calculated to lead to discovery

15  of admissible evidence; but the discoverable information need not be admissible at

16  the trial. (*Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248,

17  250 (D.Kan.1993)).

18      The broad scope of discovery described in subsection (b)(1) is tempered by

19  provisions protecting the responding party from undue burden. Rule 26(b)(2)

20  provides that the frequency or extent of discovery otherwise allowed by the Rules

21  must be limited if the court determines that "(i) the discovery sought is

22  unreasonably cumulative or duplicative, or is obtainable from some other source

23  that is more convenient, less burdensome, or less expensive; (ii) the party seeking

24  discovery has had ample opportunity by discovery in the action to obtain the

25  information sought; or (iii) the burden or expense of the proposed discovery

26  outweighs its likely benefit, taking into account the needs of the case, the amount in

27  controversy, the parties' resources, the importance of the issues at stake in the

28  litigation, and the importance of the proposed discovery in resolving the issues."

EXHIBIT 3

PAGE 53

Case 2:04-cv-09049-DOC-RNB  Document 5139-4  Filed 04/07/09  Page 55 of 72  Page ID
#:166712
Case 2:04-cv-09049-SGL-RNB  Document 4992  Filed 03/10/2009  Page 14 of 31

1    Moreover, the Federal Rules distinguish between discovery from non-parties

2    to a lawsuit (governed under Rule 45) and discovery from parties (governed

3    generally by Rule 26), based in part on the recognition that the former is inherently

4    more burdensome and less convenient than the latter. (*See, e.g., Solarex v. Arco*

5    *Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) [The status of a non-party is

6    significant when determining whether compliance with a discovery demand would

7    constitute an undue burden]; *Katz v. Batvia Marine and Sporting Supplies, Inc.*, 984

8    F.2d 422, 424 (Fed. Cir. 1993) [The fact that discovery is sought from a non-party

9    is one factor that the Court may weigh in determining whether the discovery

10   requested is necessary, relevant, or burdensome].  Courts applying Rules 26 and 45

11   have interpreted these rules to afford non-parties special heightened protection

12   against burdensome discovery. (*See, e.g., Exxon Shipping Co. v. U.S. Dept of*

13   *Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

14   Accordingly, requests for documents that pertain to a party and that can be

15   more easily and inexpensively obtained from that party also impose an undue

16   burden. (*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)).

17   Further, if the documents sought are neither relevant nor calculated to lead to the

18   discovery of admissible evidence, "then any burden whatsoever imposed upon the

19   non-party would be by definition undue." (*Compaq Computer Corp. v. Packard*

20   *Bell Electronics, Inc.*, 163 F.R.D. 329, 335-336 (N.D.Cal. 1995)).

21   Each of the moving parties bears the burden of establishing the basis for the

22   relief it seeks.  As the party moving to compel compliance with the Subpoenas,

23   Mattel bears the burden of "establishing that the information sought is relevant and

24   necessary to its lawsuit." (*Cytodyne Technologies, Inc. v. Biogenic Technologies,*

25   *Inc.*, 216 F.R.D. 533, 534 (M.D.Fla. 2003)).

26   Finally, in deciding whether to enforce a subpoena, the Discovery Master

27   must balance "the relevance of the discovery sought, the requesting party's need,

28   and the potential hardship to the party subject to the subpoena." (*Heat & Control,*

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 14 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 3

PAGE 54

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 56 of 72   Page ID
#:166713
Case 2:04-cv-09049-SGL-RNB   Document 4992   Filed 03/10/2009   Page 15 of 31

1   *Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986) citing

2   *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560, 564 (7th Cir.1984)).

3       **C.    Mattel's Contention That MGA Has Placed Its Finances At Issue**

4           As its first ground for moving to compel production of the documents sought

5   by the Subpoenas, Mattel argues that MGA has misrepresented its finances, thereby

6   making it necessary and appropriate for Mattel "to obtain an accurate understanding

7   of MGA's and Larian's finances." (Motion to Compel, p. 14). According to

8   Mattel, MGA's supposed misrepresentations have placed its financial condition at

9   issue, and have opened the door to discovery of any information bearing on MGA's

10  finances.  (*Id.* ["Discovery on MGA's financials is amply warranted by MGA's

11  own statements *alone.*"] (emphasis added)).

12          However, after Mattel filed its Motion, the Court made it clear that the

13  validity of the Subpoenas must be evaluated with reference to whether they relate to

14  the matters to be adjudicated in Phase 2.  As the Discovery Master understands the

15  Court's ruling, the Subpoenas cannot be justified merely because they seek

16  information regarding some contention made during Phase 1, without regard to

17  Phase 2. In other words, putting a fact at issue in Phase 1, cannot, standing alone,

18  suffice to render that fact the proper subject of discovery in Phase 2.

19          Thus, to the extent Mattel's first argument asserts that MGA's statements,

20  standing alone, warrant discovery from the Subpoena recipients, that argument is

21  rejected.  Rather, the Discovery Master will evaluate whether discovery of MGA's

22  finances is warranted in light of the issues to be adjudicated in Phase 2.

23          Further, even if Mattel were not required to demonstrate some nexus between

24  the Subpoenas and the issues to be adjudicated in Phase 2, the argument that the

25  Subpoenas are justified because MGA placed its financial condition at issue would

26  still fail for the simple reason that Mattel is not seeking discovery from MGA but

27  rather *non- parties.*  Mattel does not cite any statements or conduct by the

28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 15 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT __3__
PAGE __55__

1    Financing Entities putting their financial affairs at issue in this litigation.[13]

2    Rather, Mattel argues that the statements and conduct of *MGA* should be attributed

3    to the Financing Entities and construed as their consent to discovery of their

4    internal financial affairs.  Such an assumption is unwarranted.

5    **D.    Mattel's Contention That The Subject Discovery Is Relevant To**

6    **Phase 2**

7    **1.    Subpoenas To The Financing Entities**

8    Mattel next argues that the Subpoenas to the Financing Entities seek

9    information relevant to a variety of Phase 2 issues.[14]

10   **a.    Mattel's RICO Counterclaim**

11   Mattel first asserts in its Motion to Compel that the discovery it seeks is

12   relevant to its RICO counterclaim because "Mattel alleges that the counter-

13   defendants have operated a widespread criminal enterprise that has engaged in

14   numerous acts of mail and wire fraud and other predicate acts in violation of the

15   RICO statute" and that "MGA's mid-trial transactions with Omni 808 and the other

16   non-operating entities" is "a continuation of that pattern of racketeering activity."

17   (Motion, p. 18).

18

19   [13] In its Reply to the Financing Entities' Opposition to its Motion to Compel, Mattel argues that the Financing
20   Entities (referred to by Mattel as the "Omni Parties") have injected themselves into the litigation because one of
     them, Omni 808 Investors, LLC, applied to intervene. (Reply, p. 8).  However, a decision on that application has
21   been deferred by the Court, (Tr., 80:15 – 17), and therefore Omni 808 Investors, LLC and the other Financing
     Entities remain outsiders to the litigation entitled to the heightened protection from discovery normally afforded non-
     parties.

22   [14] Mattel argues in one of its reply briefs filed on February 25, 2009 that the Discovery Master should strike MGA's
23   Opposition to the Motion to Compel because: (1) MGA indicated that it would not be filing an Opposition and
     (2) the Opposition was filed a week late. (*See* Mattel's Reply in Response to MGA's Opposition to the Motion to
24   Compel, p. 4).  The Discovery Master declines that request.  The assertion that MGA would not file an Opposition is
     based on an alleged oral conversation which counsel for Mattel apparently did not confirm in writing. (*See*
25   Supplemental Declaration of Jon D. Corey in Support of Mattel's Reply in Response to MGA's Opposition to the
     Motion to Compel, ¶ 4).  Even assuming such a statement had been made, MGA was entitled to change its mind.  As
26   for Mattel's argument that the Opposition was untimely, the Discovery Master notes that he was only recently
     appointed.  This fact combined with the backlog of discovery motions may have resulted in some confusion as to
27   when various briefs were due to be filed.  The Discovery Master prefers to address issues on the merits and declines
     to strike the Opposition as untimely.  Notwithstanding the foregoing, the Discovery Master urges the parties to
28   strictly comply with the briefing schedule set forth under the Discover Master Order for all future discovery motions
     unless an alternative procedure is agreed upon by the parties and approved by the Discovery Master or the Court.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT ___3___

PAGE ___56___

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 58 of 72   Page ID
#:166715
Case 2:04-cv-09049-SGL-RNB       Document 4992       Filed 03/10/2009       Page 17 of 31

1       But Mattel's allegations in support of its RICO counterclaim turn on

2   misappropriation of trade secrets and confidential information, and make no

3   mention of improper transfers of funds or any other predicate act similar to MGA's

4   purported business transactions with any of the Financing Entities.[15]  Accordingly,

5   these financial transactions are not a "continuation" of the "pattern" of conduct

6   Mattel alleges in very precise detail in its RICO counterclaim. (*Asdourian v.*

7   *Konstantin*, 77 F. Supp. 2d 349, 358 (E.D.N.Y. 1999) [cited by Mattel and stating

8   RICO claimant must show "[a]n interrelationship between acts, suggesting the

9   existence of a pattern, [which] may be established...[by] proof of their temporal

10  proximity, or common goals, or similarity of methods, or repetitions' (citation

11  omitted)]; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989) [RICO claims

12  must be supported by a "pattern" of activity and "the mere fact that there are a

13  number of predicates is no guarantee that they fall into any arrangement or order.

14  A pattern is not formed by sporadic activity ...  Instead, the term 'pattern' itself

15  requires the showing of a relationship between the predicates" (quotations and

16  internal citations omitted)]).

17      At this stage, Mattel has failed to demonstrate a relationship between the

18  predicate acts alleged by Mattel in its Counterclaims – which were bound together

19  by a purported scheme to misappropriate Mattel's trade secrets – and the

20  //

21  //

22  //

---

23  [15] *See* Mattel's Second Amended Answer and Counterclaims ("Counterclaims"), p. 55-62, ¶ 90 [alleging the MGA
24  Parties and other counter-defendants "for the purpose of executing and attempting to execute the scheme to
    improperly defraud Mattel and steal its trade secret or otherwise confidential and proprietary information" committed
25  various predicate acts], ¶ 91 [alleging the MGA Parties and other counter-defendants "shared the common purpose of
    enabling MGA to obtain confidential, proprietary and otherwise valuable Mattel property through improper means in
26  order to assist MGA in illegally competing with Mattel"], ¶ 92 [alleging the enterprises are continuing enterprises
    because they are "designed to and did unlawfully acquire the confidential business information and property of
27  Mattel and incorporated this information and property into MGA's ongoing business, marketing strategies and
    business methods, practices, and processes"], ¶ 93(a) [alleging mail fraud committed in furtherance of scheme to
    "defraud Mattel of its confidential trade secret information and property"], ¶ 93(b) [alleging wire fraud "defraud
28  Mattel of its confidential and trade secret information and property"], and ¶ 102 [the MGA Parties and other counter-
    defendants "schemed to defraud Mattel and steal its property and trade secret information"].

Arent Fox LLP
ATTORNEYS AT LAW
LOS ANGELES                              - 17 -                ORDER NO. 3
                                              [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 3
PAGE 57

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 59 of 72   Page ID
#:166716
Case 2:04-cv-09049-SGL-RNB        Document 4992        Filed 03/10/2009      Page 18 of 31

1    transactions Mattel seeks to investigate here.[16]

2         Also, the RICO counterclaim (like the other counterclaims to be adjudicated

3    in Phase 2) was asserted in July, 2007 – more than a year before either Omni 808

4    Investors, LLC or Vision Capital, LLC came into existence – and therefore

5    apparently did not encompass the activities of those entities or the transactions

6    which are the subject of the Financing Discovery.  While that fact might be

7    overcome by a showing that the Financing Entities were created or used to further a

8    scheme to carry on misconduct that is the subject of Phase 2, Mattel did not

9    demonstrate that such is the case in its briefs and supporting evidence.

10        In sum, absent some argument or evidence demonstrating a nexus between

11   the predicate activities alleged in the RICO counterclaim, on the one hand, and the

12   transactions and other matters which are the subject of the Financing Discovery, on

13   the other hand, there has been no showing by Mattel that the Subpoenas to the

14   Financing Entities are reasonably calculated to lead to the discovery of admissible

15   evidence regarding the RICO counterclaim.

16            **b.    Mattel's Disgorgement Remedy**

17        Next, Mattel asserts that the Subpoenas to the Financing Entities seek

18   information relevant to its remedy of disgorgement, which is an available remedy

19   for Mattel's Phase 2 counterclaim for misappropriation of trade secrets.  Mattel

20   argues:

21

22   [16] This conclusion is consistent with the case cited by Mattel – *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372
     (W.D.N.Y. 2006).  There, the plaintiffs "asserted broad civil RICO claims against the Nicolo defendants predicated,
23   among other violations, upon alleged money laundering violations.  Specifically, the Complaint alleges that the
     Nicolo defendants and the other named defendants constituted an enterprise as defined in the RICO statute that was
24   engaged in a pattern of racketeering activity, including mail and wire fraud and, more importantly for purposes of
     this motion, money laundering."  (*Id.*, at 375).  "The alleged money laundering consisted of repeated deposits into
25   various financial institutions in order both to promote and carry on the unlawful activity – that is, by paying and
     depositing kickbacks to certain members of the enterprise – and to conceal and attempt to conceal the proceeds, their
26   nature, source and location – that is, by transferring funds between defendants and between various accounts
     maintained by those defendants." (*Id.* [emphasis added]).  Thus, inquiry into the defendants' finances was
27   appropriate as it was likely to reveal activity related to the alleged predicate acts.  Here, on the other hand, Mattel has
     not alleged any sort of financial scheme which would support inquiry into the MGA Parties' financial transactions
28   with third parties.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES                                   - 18 -           ORDER NO. 3
                                                         [Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 3

PAGE 58

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 60 of 72   Page ID
#:166717
Case 2:04-cv-09049-SGL-RNB     Document 4992     Filed 03/10/2009     Page 19 of 31

1   For purposes of establishing disgorgement, Mattel must take into
2   account money transferred from MGA and Isaac Larian,
    regardless of the manner in which it was transferred.  Mattel is
3   entitled to discovery that shows all assets siphoned from MGA or
4   Isaac Larian . . . . By these subpoenas, Mattel seeks evidence to
    prove the amount the defendants must disgorge.  Money that
5   properly belonged to Mattel was transferred from MGA or Isaac
6   Larian to an entity controlled by them.

7   (Motion, pp. 20:1 – 4, 21:12 – 14).

8       While the foregoing statements may be true as a general proposition, none of

9   the Financing Entities is alleged to have "received money that properly belonged to

10  Mattel."  To the contrary, Mattel asserts that the Financing Entities are creditors of

11  MGA.  Therefore, Mattel has not demonstrated how any of the categories of

12  documents sought from the Financing Entities would aid it in ascertaining the

13  amount defendants must disgorge.

14                  c.      **Phase 2 Damages**

15      Mattel's third argument in favor of enforcement of the Subpoenas is that they

16  "seek documents relevant to MGA's financial condition" and other "factors

17  relevant to an award of punitive damages."  (Motion to Compel, p. 21:19 – 22).

18  Depending on the particular scope of the document request, such discovery from

19  Omni 808 Investors, LLC may be appropriate in connection with Phase 2 because

20  any information evidencing MGA's indebtedness to Omni 808 Investors, LLC from

21  the purchase of the alleged Wachovia debt or direct loans to MGA is relevant to

22  MGA's net worth (and hence punitive damages).[17]  As the Court noted in its

23  February 11, 2009 ruling:

24      I can see tremendous overlap between, for example, discovery on

25  _____
    [17] The Discovery Master's analysis is fundamentally different for OmniNet Capital, LLC and Vision Capital, LLC
26  because neither entity is alleged by Mattel to be a creditor of MGA Entertainment, Inc.  (Motion to Compel, pp. 9
    and 10).  To the contrary, Mattel concedes that "OmniNet [Capital, LLC] is not the secured party, and thus
27  presumably not the actual debt purchase/lender.  Rather, the company holding the security interest is Omni 808
    [Investors, LLC] . . . [which] appears to be owned funded by a company called Vision Capital, LLC."  (Id.)  Because
28  it admits that OmniNet Capital, LLC and Vision Capital, LLC are not creditors of MGA, Mattel has failed to show
    that the information sought from those entities has any bearing on MGA's financial condition.

EXHIBIT __3__
PAGE __59__

Case 2:04-cv-09049-DOC-RNB  Document 5139-4  Filed 04/07/09  Page 61 of 72  Page ID
#:166718
Case 2:04-cv-09049-SGL-RNB    Document 4992    Filed 03/10/2009    Page 20 of 31

1          financial condition of the company as it relates to damages in the
2          Phase 2 and also issues that the receiver is looking at. And
      without making a ruling on any of this, I would not suggest for a
3          moment that these are mutually exclusive categories.

(Tr., 101:3 - 8)

4         Mattel argues that the necessary connection between the Financing

5    Discovery and Phase 2 damages exists because the Financing Entities have acquired

6    a security interest in MGA's assets, which, in turn, affects MGA's financial

7    condition. Specifically, Mattel argues that Omni 808 Investors, LLC is:

8
      directly involved in providing funding to MGA in exchange for a
9          security interest. Such funding, and security interests, are in and
      of themselves directly relevant to the financial condition of the
10         MGA Parties, including the amount of the security interests, the
      terms and conditions of the funding, and the rate of funding. . . .
11
(Motion to Compel, p. 22: 13 – 17).
12

13        The Discovery Master agrees that such limited information, as it relates to

14   the purchase by Omni 808 Investors, LLC of the debt obligation previously held by

15   Wachovia Bank, is reasonably calculated to lead to the discovery of admissible

16   evidence concerning Phase 2 issues, including the calculation of MGA's net worth

17   for purposes of calculating punitive damages.[18] Accordingly, Mattel's motion to

18   compel responses from Omni 808 Investors, LLC is granted with respect to

19   documents relating to (1) the existence of any debt owed by MGA Entertainment,

20   Inc. to Omni 808 Investors, LLC and (2) any communications between Omni 808

21   Investors, LLC and the MGA parties regarding any such indebtedness.

22        The problem, however, is the vast majority of the document requests set forth

23   in the Subpoena propounded on Omni 808 Investors, LLC are not narrowly tailored

24   to obtain information demonstrating the amount and nature of MGA's indebtedness

25   (and hence net worth) or communications regarding any such debt,[19] but instead

26   ───────────────────────────
[18] During oral argument, counsel for MGA represented (and counsel for Mattel seemed to agree) that the Court
27   deferred discovery regarding the Wachovia debt until the middle of the Phase I trial. (Reporter's Transcript of
Proceedings, March 4, 2009, pp. 72, 85 and 86). The extent to which that damages information was obtained directly
from Wachovia, as opposed to MGA, is not clear from the record provided to the Discovery Master.
28
[19] Nor did Mattel move to compel MGA to produce this information in the first instance.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT **3**

PAGE **60**

Case 2:04-cv-09049-DOC-RNB  Document 5139-4  Filed 04/07/09  Page 62 of 72  Page ID
#:166719
Case 2:04-cv-09049-SGL-RNB  Document 4992  Filed 03/10/2009  Page 21 of 31

1   would require the Financing Entities to produce virtually every document in their

2   possession regarding their formation, operations, and history of transactions.

3   Among other things, the Subpoenas to the Financing Entities seek:

4   •       All records that "substantiate transfers of assets" by the Financing

5           Entities "to other entities, individuals, and/or parties, within the U.S.

6           and outside of the U.S." (Exhibits 27-29 to Supplemental Declaration

7           of Jon D. Corey In Support Of Mattel, Inc.'s Reply In Support Of

8           Motion To Compel Production of Documents Responsive to Third-

9           Party Subpoenas, Attachment A, ¶ 16);

10  •       All documents "detailing or setting forth the relationship" between

11          each of the Financing Entities and other non-parties (*Id.* at ¶¶ 6-10);

12  •       All documents referring or relating to the "all contributions, loans and

13          any sources of funding" for the Financing Entities (*Id.* at ¶ 13);

14  •       All documents referring or relating to the "source of funding" of other

15          non-parties (*Id.* at ¶ 16);

16  •       All documents showing detail of "all loan facilities" referring or

17          relating to the Financing Entities and other non-parties (*Id.* at ¶ 14);

18  •       All documents referring or relating to "transactions involving any

19          compensation, loans, advances, payments, fees or any other form of

20          consideration" paid to other non-parties (*Id.* at ¶ 15);

21  •       All "communications" referring or relating to the Financing Entities

22          and other non-parties (*Id.* at ¶ 17).

23          Accordingly, the Discovery Master concludes that most of the categories of

24  documents in the Subpoenas are overbroad and not reasonably calculated to lead to

25  the discovery of admissible evidence with respect to Phase 2 issues, as detailed in

26  Section IV below (entitled "Disposition").

27  //

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 21 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 2

PAGE 101

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 63 of 72   Page ID
#:166720
Case 2:04-cv-09049-SGL-RNB      Document 4992      Filed 03/10/2009      Page 22 of 31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### d.   Credibility Of MGA Witnesses

Mattel's fourth argument consists of a single, conclusory paragraph asserting that it is entitled to its discovery in order to determine the credibility of MGA's witnesses. To support this argument, Mattel first states that information is discoverable "if it relates to 'the credibility of any witness.'" (Motion to Compel, p. 23 (citing *Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997)).[20] Next, Mattel asserts that "MGA and Larian made statements under oath about their financial condition as well as about the role of Omni 808 and the other non-operating entities in providing MGA with additional funding." (*Id.*) But that is the full extent of Mattel's argument. Mattel does not attempt to show that the specific discovery that it has propounded is reasonably calculated to lead to the discovery of the evidence that it contends would be admissible.

Discoverable information generally includes evidence relevant to the credibility of a party or a key witness. (See *Paulsen v. Case Corp.*, 168 F.R.D. 285, 287-288 (C.D. Cal. 1996); see also *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 603-604 (C.D. Cal. 1995); *U.S. v. City of Torrance*, 164 F.R.D. 493, 495 (C.D. Cal. 1995)). If Mattel's discovery were reasonably calculated to lead to the discovery of such information, then it might be permissible. (*Id.* ["Rule 26 is liberally interpreted to permit wide ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence."]) But Mattel has not taken any steps to connect its discovery to such evidence. As discussed above, Mattel bears the burden of demonstrating that its discovery is reasonably calculated to lead to the discovery of admissible evidence. Here, Mattel has only stated that credibility evidence can be admissible and that credibility is at issue in this case – without referring at all to specific categories of documents in the Subpoenas or

---

[20] The Discovery Master notes that the case cited by Mattel does not actually discuss or apply this proposition.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 22 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 3

PAGE 62

1   linking those categories of documents to prior or anticipated testimony of MGA's

2   witnesses. Simply stating that credibility evidence is discoverable does nothing

3   toward meeting Mattel's burden to demonstrate that the particular discovery at issue

4   here is reasonably calculated to lead to the discovery of such evidence.

5                           e.    **MGA's Unclean Hands**

6           Mattel next argues in its Motion to Compel that MGA has asserted an

7   unclean hands defense in response to Mattel's Phase 2 claims, and consequently

8   Mattel is entitled to discover whether the MGA Parties are currently "engaging in

9   sham and fraudulent financial transactions such as concealing profits" to preclude

10  MGA "from invoking the unclean hands defense themselves." (Motion, pp. 23 -

11  24.) But this argument does not apply to the Financing Entities because, as

12  discussed above, Mattel does not claim that the Financing Entities have "received

13  money that properly belonged to Mattel" or otherwise used those entities to conceal

14  profits. To the contrary, Mattel asserts that the Financing Entities are creditors of

15  MGA.

16          Regardless, Mattel's theory is that, even if Mattel has unclean hands, MGA

17  may not assert that defense unless MGA itself is blameless. (*Id.*, at 24 [a "party

18  asserting an equitable defense, however, must itself have 'clean hands.'"]).

19  Mattel's statement of the law is correct as far as it goes. But, as the Ninth Circuit

20  has stated, "'unclean hands does not constitute 'misconduct in the abstract,

21  unrelated to the claim to which it is asserted as a defense.'" (*Jarrow Formulas, Inc.

22  v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002)). "It is fundamental to

23  [the] operation of the doctrine that the alleged misconduct . . . relate directly to the

24  transaction concerning which the complaint is made." (*Dollar Sys., Inc. v. Avcar

25  Leasing Sys., Inc.* 13 F.2d 165, 173 (9th Cir. 1989)). Accordingly, courts will not

26  allow discovery based on an unclean hands defense where the "allegations of

27  misconduct do not relate to the transactions... forming the basis for the

28  []complaint." (*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 952 (S.D.Cal.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 3

PAGE 63

Case 2:04-cv-09049-DOC-RNB    Document 5139-4    Filed 04/07/09    Page 65 of 72    Page ID
#:166722
Case 2:04-cv-09049-SGL-RNB    Document 4992    Filed 03/10/2009    Page 24 of 31

1    1996)).

2         Here, Mattel does not link any of the categories of documents referenced in

3    the Subpoenas (which involve the creation and operation of the Financing Entities

4    beginning with their formation in the summer of 2008) to any of the conduct at

5    issue in Phase 2 (which involves such matters as the alleged theft of trade secrets in

6    Mexico in 2004 and other conduct unrelated to the relationship between the

7    Financing Entities and MGA). Accordingly, the Financing Discovery is not

8    reasonably calculated to lead to the discovery of admissible evidence regarding

9    MGA's alleged unclean hands in connection with the matters to be adjudicated in

10    Phase 2.

11               **f.    Mattel's Unfair Competition Counterclaim**

12         As Mattel acknowledges, California's Unfair Competition Law, Business &

13    Professions Code §§ 17200 et seq. (the "Unfair Competition Law") encompasses

14    "'anti–competitive business practices as well as injuries to consumers, and has as a

15    major purpose the preservation of fair business competition.'"    (Opp. at 24:25 –

16    25:2, quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone*

17    *Co.* (1999) 20 Cal.4th 163, 180)). However, Mattel's papers do not sufficiently

18    demonstrate that the documents sought from the Financing Entities involve "anti-

19    competitive business practices," "injuries to consumers," or anything affecting

20    consumers or the public at all. Instead, Mattel simply asserts, without any

21    supporting analysis, that MGA has violated the Unfair Competition Law by

22    "manipulating the sources of [its own] funding" (presumably the Financing

23    Entities). That allegation, even if true, does not appear to involve the "unlawful,

24    unfair or fraudulent" marketing or sale of anything and therefore does not fall

25    within the ambit of the Unfair Competition Law.

26    //

27    //

28    //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

          - 24 -                 ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 3

PAGE 64

g.   **Summary Of The Discovery Master's Findings With Respect To The Subpoenas Directed To The Financing Entities**

For the foregoing reasons, the Discovery Master finds that, based on the record before him, Mattel has failed to sufficiently articulate the necessary connection between most of the Financing Discovery and any Phase 2 issue. Moreover, while there is a connection between the Financing Discovery and some of the Phase 2 issues referenced (i.e., MGA's financial condition and its bearing on Mattel's claim for punitive damages), Mattel has failed to demonstrate that the Subpoenas meet the standard set forth in Rule 26(b)(2) and that all of the requested discovery is permissible in light of the case law interpreting Rules 26 and 45.

Accordingly, Mattel's motion to compel the Financing Entities to comply with the Subpoenas is **GRANTED** in part and **DENIED** in part.

2.   **Subpoenas To The Transferee Entities**

In their briefs regarding the enforceability of the Subpoenas, Mattel and MGA do not, as a general rule, make a distinction between the Financing Entities and the Transferee Entities, but rather direct the same arguments to both groups collectively. However, there are important distinctions between the two groups, including, without limitation, that: (1) the Transferee Entities appear to be affiliated with – if not wholly owned by – Larian; (2) the Transferee Discovery involves the sale of MGA assets (i.e., Bratz products) in which Mattel has an ownership interest pursuant to the Court's December 3, 2008 ruling; and (3) the Subpoenas seek some documents relevant to Phase 2 issues which presumably cannot be obtained from MGA, namely the Transferee Entities' contracts with, and records of sales to, third parties purchasing the Bratz products. Accordingly, in ruling on the Subpoenas directed to the Transferee Entities, the Discovery Master's analysis of certain of the parties' above-referenced arguments differs, as follows.

//

EXHIBIT 3

PAGE 65

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 67 of 72   Page ID
#:166724
Case 2:04-cv-09049-SGL-RNB   Document 4992   Filed 03/10/2009   Page 26 of 31

### a.    Non-Party Considerations

To begin with, the distinction between a party and non-party here is less compelling given the MGA parties' apparent admission that the Transferee Entities are single purpose entities created and controlled by Larian (who is, of course, himself a party) to dispose of inventory that is the subject of this litigation. Further, the MGA parties presumably do not have custody of the sales contracts whereby IGWT Group LLC sold Bratz products to third parties. The Discovery Master also notes that counsel for the Transferee Entities has submitted a declaration stating that there are "hundreds of sales contracts at issue, and as such, thousands of documents responsive to Mattel's requests." (Declaration of Jeffrey B. Valle dated February 17, 2009 ["Valle Decl."], ¶ 7). The unavailability of these relevant documents from any other source weighs heavily in favor of enforcing the Subpoena to IGWT Group LLC.

### b.    Relevance To Phase 2 Issues

### 1.    Phase 2 Damages

As mentioned above, Mattel argues that the Subpoenas "seek documents relevant to MGA and Larian's financial condition, net worth, and ability to pay" on the ground that such information is relevant to Mattel's Phase 2 damages claims, including Mattel's claim for punitive damages.

For the reasons previously discussed, the Discovery Master finds that, with respect to the Financing Entities, the discovery requests were, for the most part overbroad, and/or not sufficiently linked to Phase 2 issues. However, the Discovery Master's analysis is necessarily different with respect to entities which were created and apparently wholly owned and/or controlled by Larian (a defendant in Phase 2), and which are admittedly selling inventory which generate revenues in which Mattel has an interest. Specifically, Mattel contends that Larian has caused MGA to sell the inventory at a deep (80%) discount to the Transferee Entities. This practice, if true, limits MGA's profits (which go to MGA's balance sheet, and ultimately

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 26 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 3

PAGE 66

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 68 of 72   Page ID
#:166725
Case 2:04-cv-09049-SGL-RNB   Document 4992   Filed 03/10/2009   Page 27 of 31

1    affects MGA's net worth) while at the same time allowing Larian to capture

2    additional profits which otherwise would have been realized by MGA and reflected

3    on MGA's balance sheet).  Accordingly, the Discovery Master finds that most of

4    the documents Mattel seeks to subpoena from the Transferee Entities properly

5    relate to Phase 2 issues, as specified in Section IV below.[21]

6              **2.    Mattel's Unfair Competition Counterclaim**

7              Given MGA's admissions regarding Larian's ownership/control of the

8    Transferee Entities, coupled with their sale of inventory purchased from MGA, the

9    Discovery Master finds that many of the documents requested from the Transferee

10   Entities are also arguably related to a "fraudulent," "unlawful," or "unfair" business

11   practice within the meaning of the Unfair Competition Law and the scope of

12   Mattel's Counterclaims.  Among other things, the Court's December 3, 2008 order

13   imposes a constructive trust on the proceeds of MGA's sale of the subject

14   inventory.  If, as Mattel argues, MGA's sale of that inventory to the Transferee

15   Entities constitutes a scheme on the part of Larian to enrich himself by depriving

16   Mattel of the true profits to be paid to Mattel pursuant to the Court's order, then

17   such conduct would constitute an unlawful attempt to circumvent the Court's order

18   and arguably render the transaction between MGA and the Transferee Entities an

19   anti-competitive business practice that is unlawful, unfair or fraudulent to other toy

20   manufacturers, including Mattel.  Therefore, such alleged misconduct, if proven,

21   could violate the Unfair Competition Law.

22             Moreover, although Mattel asserted its counterclaim for violation of the

23   Unfair Competition Law prior to the alleged misconduct (and long before the

24   Transferee Entities came into existence), Mattel phrased its allegations broadly

25

26   ―――――――――――――――
     [21] The Discovery Master notes that IGWT 826 Investments is registered at the home address of Larian's sister and
     brother-in-law, indicating that some of Larian's relatives may be involved in the ownership or operation of the

27   Transferee Entities.  Accordingly, the Discovery Master has specified in some instances that the production of
     documents shall include those referencing not only Larian, but also his spouse, his children, his siblings, or their

28   spouses, or any entity or person affiliated with them.  However, the Discovery Master has stopped short of ordering
     the production of documents relating to any other entities, individuals "within the U.S. and outside the U.S.," as
     requested in Category 6 of each of the Subpoenas directed to the Transferee Entities.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES
                                                    - 27 -              ORDER NO. 3
                                                            [Case No. CV 04-09049 SGL (RNBx)]

                                                              EXHIBIT 3

                                                              PAGE 67

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 69 of 72   Page ID
#:166726
Case 2:04-cv-09049-SGL-RNB      Document 4992      Filed 03/10/2009      Page 28 of 31

1   enough to potentially encompass subsequent acts of unfair competition which

2   perpetuate or extend the misconduct alleged in the Counterclaims.  Unlike Mattel's

3   RICO counterclaim, Mattel's Twelfth Counterclaim for Unfair Competition does

4   not purport to rest on a list of enumerated, factually detailed and carefully defined

5   acts, but rather is phrased broadly to cover "unlawful, unfair and/or fraudulent acts

6   of unfair competition" which include, "without limitation" certain illustrative

7   examples.  (Counterclaims, p. 74, ¶ 165).

8        Of course, the Discovery Master cannot predict whether the Court will

9   ultimately deem Mattel's unfair competition counterclaim to be sufficiently elastic

10  to encompass MGA's alleged misuse of the Transferee Entities or whether Mattel

11  will seek (and the Court permit) amendment of the counterclaim to expressly

12  reference such alleged misconduct.  Nevertheless, in light of the fact that the

13  discovery need only appear reasonably calculated to lead to the discovery of

14  admissible evidence, the Discovery Master finds that certain aspects of the

15  Subpoenas are sufficiently related to Mattel's Phase 2 unfair competition claim.

16              c.      **Summary Of The Discovery Master's Findings With**

17                      **Respect To The Subpoenas Directed To The**

18                      **Transferee Entities**

19       As set forth above, the Discovery Master finds that Mattel has sufficiently

20  articulated a connection between some of the Transferee Discovery and its Phase 2

21  claims.  Accordingly, Mattel's motion to compel the Transferee Entities to comply

22  with the Subpoenas is **GRANTED** in part and **DENIED** in part.

23  **IV.    Disposition**

24       1.      The Motion to Quash filed by MGA is **DENIED**.

25       2.      Mattel's Motion to Compel the Financing Entities to produce

26  documents responsive to the Subpoenas is **DENIED** with respect to OmniNet

27  Capital, LLC and Vision Capital, LLC.

28       3.      Mattel's Motion to Compel Omni 808 Investors, LLC to produce

EXHIBIT **3**

PAGE **68**

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 70 of 72   Page ID
#:166727
Case 2:04-cv-09049-SGL-RNB      Document 4992      Filed 03/10/2009      Page 29 of 31

1   documents responsive to the Subpoena propounded on it is **GRANTED** in part and

2   **DENIED** in part, as follows:

3        a.      Requests 1 through 3, 13, 15, and 17:  The Motion is granted

4   with respect to documents relating to (1) the existence of any debt owed by MGA

5   Entertainment, Inc. to Omni 808 Investors, LLC, including any debt purchased

6   from Wachovia Bank, and (2) any communications between Omni 808 Investors,

7   LLC and the MGA parties regarding any such indebtedness.  The motion is denied

8   regarding any other documents sought by these requests.

9        b.      Requests 4 through 12, 14 and 18:  The Motion is denied.

10      4.      Mattel's Motion to Compel the Transferee Entities to produce

11  documents responsive to the Subpoenas is **DENIED** as to Request 6 propounded to

12  IGWT Group LLC and Request 6 propounded to IGWT 826 Investments, LLC.

13      5.      Mattel's Motion to Compel the Transferee Entities to produce

14  documents responsive to the Subpoenas is **GRANTED**, as follows:

15                      **Subpoena To IGWT Group LLC**

16      a.      Request 1:  The Motion is granted with respect to documents

17  relating to the purchase by, or transfer to, IGWT Group LLC of any items of value,

18  including Bratz products, from MGA, Larian, his spouse, his children, his siblings,

19  or their spouses, or any entity or person affiliated with them.

20      b.      Request 2:  The Motion is granted

21      c.      Request 3:  The Motion is granted with respect to documents

22  relating to any ownership interest by Larian, his spouse, his children, his siblings,

23  or their spouses, or any entity or person affiliated with them.

24      d.      Request 4:  The Motion is granted with respect to documents

25  relating to any sources of funding by Larian, his spouse, his children, his siblings,

26  or their spouses, or any entity or person affiliated with them.

27      e.      Request 5:  The Motion is granted with respect to documents

28  relating to any compensation, loans, advances, payments, fees or any other form of

EXHIBIT __3__

PAGE __69__

1    consideration paid by IGWT Group LLC to Larian, his spouse, his children, his

2    siblings, or their spouses, or any entity or person affiliated with them.

3        f.    Request 7: The Motion is granted.

4              **Subpoena To IGWT 826 Investments LLC**

5        a.    Request 1: The Motion is granted with respect to documents

6    relating to the purchase by, or transfer to, IGWT 826 Investments LLC of any items

7    of value, including Bratz products, from MGA, Larian, his spouse, his children, his

8    siblings, or their spouses, or any entity or person affiliated with them.

9        b.    Request 2: The Motion is granted

10       c.    Request 3: The Motion is granted with respect to documents

11   relating to any ownership interest by Larian, his spouse, his children, his siblings,

12   or their spouses, or any entity or person affiliated with them.

13       d.    Request 4: The Motion is granted with respect to documents

14   relating to any sources of funding by Larian, his spouse, his children, his siblings,

15   or their spouses, or any entity or person affiliated with them.

16       e.    Request 5: The Motion is granted with respect to documents

17   relating to any compensation, loans, advances, payments, fees or any other form of

18   consideration paid by IGWT 826 Investments LLC to Larian, his spouse, his

19   children, his siblings, or their spouses, or any entity or person affiliated with them.

20       f.    Request 7: The Motion is granted.

21   5.    All non-privileged documents referenced in Paragraphs 3 and 5, above,

22   shall be produced within 30 days of this Order, subject to any applicable

23   confidentiality designations available under the Protective Order.

24   6.    Nothing in this Order should be deemed to prevent Mattel from

25   seeking discovery from the MGA parties of documents encompassed by the

26   Subpoenas upon the showing of a sufficient nexus between the particular discovery

27   requests and legitimate Phase 2 issues, and subject to any applicable objections.

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

- 30 -

ORDER NO. 3
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 3

PAGE 70

Case 2:04-cv-09049-DOC-RNB   Document 5139-4   Filed 04/07/09   Page 72 of 72   Page ID
#:166729
Case 2:04-cv-09049-SGL-RNB   Document 4992   Filed 03/10/2009   Page 31 of 31

1   Dated:  March 10, 2009

2

3

4                                              By:          /s/ Robert C. O'Brien

5                                                           ROBERT C. O'BRIEN
                                                           Discovery Master
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 3

PAGE 71