EXHIBIT 4

CONFORMED COPY

FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA  94111
415-774-2611
415-982-5287 (fax)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>            Plaintiff,<br><br>        v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>            Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | |

I.  INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1] On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief. The matter was heard via telephonic conference call on January 24, 2007. Having

---

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                          1

EXHIBIT 4
PAGE 72

1-26

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel Production of Documents is GRANTED.

## II. BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of Bratz dolls now rival Mattel's Barbie doll.

A. Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed suit against its former employee Bryant in state court asserting claims for breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel employed Bryant as a product designer from September 1995 through April 1998, and from January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee Confidential Information and Inventions Agreement which required him not to engage in any employment or business other than for Mattel, or invest or assist in any manner any business competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that he had not worked for any of Mattel's competitors in the prior twelve months and had not engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

EXHIBIT _4_

PAGE _73_

provide product design services on a "top priority" basis.[2]  The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA.  Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel.  In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction).  Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA.  The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls.  In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls.  In August of 2004, the district court remanded the action.

B. Bryant's Cross-complaint

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement.  Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2] Bryant has already produced his agreement with MGA.  Therefore, the existence of the agreement does not appear to be in dispute.

EXHIBIT 4
PAGE 74

### C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

### D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

### E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

### F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

EXHIBIT 4
PAGE 75

G. Court Dismisses Bryant's Cross-claims and Declaratory Relief Action

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H. Mattel's Counterclaims against MGA

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I. Mattel's Requests for Production of Documents

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

EXHIBIT __C|__

PAGE __7⍰__

was not heard before the district court stayed all discovery pending resolution of Mattel's appeal to the Ninth Circuit on subject matter jurisdiction issues.

After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to compel. The parties informed the court that they would submit a stipulation and order. See Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel Production of Documents, counsel will be submitting a stipulation and order which will be dispositive of all the issues in dispute.").

Over the next several months, the parties exchanged draft stipulations and orders to memorialize the parties' meet and confer session, but were unable to reach final agreement because Bryant insisted upon including the following sentence in the stipulation: "The stipulation resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23. From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel waive its right to all further discovery in connection with its requests. Mattel proposed the following provision as an alternative:

> Except as, and only as set forth in the terms of Paragraph One above, nothing in this Stipulation shall preclude or limit Mattel from seeking further discovery on any matter, including as to matter on which the parties could not reach complete agreement, or preclude or limit any right of Bryant to object or resist to such discovery.

Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was unacceptable to Bryant. At the direction of the Discovery Master, the parties met and conferred again in late December 2006, but to no avail.

Despite the parties' inability to reach final agreement, Bryant produced approximately

EXHIBIT 4
PAGE 77

1,600 pages of documents to date. Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3] Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

J.  Mattel's Motion to Compel Production of Documents

Mattel's motion has three parts. First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents: (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel. Mattel's Motion at 6. Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations. According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]  According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear. Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed. Mattel again obtained a court order compelling the deposition and sanctions. To date, only Bryant and Larian have been deposed.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

EXHIBIT 4
PAGE 78

his earnings from his work for MGA. Mattel's Motion at 7. Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

### K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel. He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004. Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims. Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter. See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies."). Accordingly, in the summer and fall of 2004, he produced the following categories of documents: documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4] There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center. MGA denies the accusation.

EXHIBIT 4
PAGE 79

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations.  According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT 4
PAGE 80

requests and that the stipulation controlled to the extent they were inconsistent. Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation. If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future. Bryant's Opposition at 1:24-2:3. Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel. Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects. In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees. Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights. Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

### III.  DISCUSSION

A.  The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion. The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute. Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant. It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions. Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

EXHIBIT 4

PAGE 81

1    Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by

2    the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

3        Furthermore, because the parties met and conferred in good faith and because they had a

4    legitimate dispute over language governing Mattel's future right to pursue additional discovery

5    from Bryant, the Discovery Master denies Mattel's request for sanctions.

6
7        B.  Rule 26 of the Federal Rules of Civil Procedure

8        Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

9    discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

10   party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

11   discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

12   Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

13   unreasonably cumulative or duplicative, or is obtainable from some other source that is more

14   convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

15   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

16   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

17   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

18   the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

19   26(b)(2).

20       C.  Mattel's Requests for Production

21       Request Nos. 2, 13, 48:  Documents Relating to Bryant's Agreements with MGA

22       Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related

23   agreements.  Bryant is withholding responsive documents, including (a) documents relating to his

24   Bratz agreements with MGA other than final signed agreements, including communications

25   exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT 4

PAGE 82

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT 4
PAGE 83

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46:  Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA.  Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA.  Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information.  Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns.  Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims.  First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion.  Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel.  Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13



EXHIBIT 4
PAGE 84

when the payments were actually made. Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement. Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works. Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages. 17 U.S.C. §504(b). The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market. For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation. Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel. Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant. Among other things, the protective order provides protection for confidential trade secret information. It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only." The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46. Bryant,

EXHIBIT 4

PAGE 85

1  however, is not required to produce tax returns, provided that he otherwise fully complies with

2  these requests as ordered.

3      Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

4      Mattel seeks production of Bratz-related communications and communications with

5  MGA. More specifically, Mattel seeks production of four categories of documents Bryant has

6

7  refused to produce: (1) communications between Bryant and MGA or third parties that explicitly

8  relate to designs Bryant created while employed by Mattel; (2) communications between Bryant

9  and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating

10

11  to Bryant's Mattel employment or work Bryant performed for Mattel, except those

12  communications "created" prior to the close of Bryant's Mattel employment; and (4)

13  communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant

14  contends that the discovery requests for communications between Bryant and MGA are

15  overbroad. Bryant asserts that there are many former Mattel employees and friends of his who

16

17  have privacy rights that would be impinged upon if he were to disclose his communications.

18  Bryant also asserts that he has his own confidentiality interest regarding any information that he

19  shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they

20  would require him to reveal the identity of current Mattel employees seeking employment with

21

22  MGA or Bryant.

23      The Discovery Master finds that Mattel's requests for all communications between Bryant

24  and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what

25  Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient

26

27  to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential"

28  private information about current or former employees, contractors or vendors (including

29  employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15



privileged documents responsive to Request Nos. 20, 23, 27, and 28.  However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA.  Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

  Request Nos. 49, 51:  Mattel-Related Documents

  Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

  Request No. 9:  Documents re Registrations and Applications for Registrations

  Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration.  Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

  As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper.  Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

## IV. CONCLUSION

  For the reasons set forth above, the Discovery Master orders as follows:

  1. Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

EXHIBIT __4__
PAGE __87__

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2. Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3. Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4. Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5. Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6. Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7. Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

EXHIBIT 4
PAGE 88

EXHIBIT 5

RECEIVED

1   Patricia L. Glaser, State Bar No. 055668
    Pglaser@glaserweil.com
2   Joel N. Klevens, State Bar No. 045446
    Jklevens@ glaserweil.com
3   GLASER, WEIL, FINK, JACOBS
      & SHAPIRO, LLP
4   10250 Constellation Boulevard, 19th Floor
    Los Angeles, California 90067
5   Telephone:  310-553-3000
    Facsimile:  310-556-2920
6
7   Russell J. Frackman, State Bar No. 049087
    rjf@msk.com
8   MITCHELL, SILBERBERG & KNUPP, LLP
    11377 West Olympic Boulevard
9   Los Angeles, California 90064
    Telephone:  310-312-2000
10  Facsimile:  310-312-3100

11  Attorneys for the MGA Parties For Phase Two

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                   EASTERN DIVISION

15
16  CARTER BRYANT, an individual      )  Case No. CV 04-9049 SGL (RNBx)
                                      )
17              Plaintiff,            )  Consolidated with
                                      )  Case No. 04-09059
18  v.                                )  Case No. 05-02727
                                      )
19  MATTEL, INC., a Delaware          )  **DISCOVERY MATTER**
    Corporation                       )
20                                    )  **MGA'S OPPOSITION TO**
                Defendant.            )  **SEPARATE STATEMENT IN**
21                                    )  **SUPPORT OF MATTEL, INC.'S**
                                      )  **RENEWED MOTION TO COMPEL**
22  AND CONSOLIDATED ACTIONS          )  **PRODUCTION OF DOCUMENTS**
                                      )  **AND THINGS BY MGA**
23                                    )  **ENTERTAINMENT, INC. AS**
                                      )  **CALLED FOR BY MATTEL'S**
24                                    )  **FIRST SET OF RFPS NO. 48, AND**
                                      )  **THIRD SET OF RFPS NOS. 43**
25                                    )  **THROUGH 75, 87 AND 88**
                                      )
26                                    )
                                      )  Date:     To be set
27                                    )  Time:     To be set
                                      )  Place:    To be set
28                                    )

666557

OPPOSITION TO SEPARATE STATEMENT

EXHIBIT  5

PAGE  89

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1    **CONSOLIDATED SEPARATE STATEMENT**

2       The MGA Parties respectfully submit this consolidated Separate Statement in

3 opposition to Mattel's Renewed Motion to Compel Production of Documents and

4 Things by MGA. For the Discovery Master's convenience, this Separate Statement

5 includes the text of each Request at issue, MGA's objections or responses, a short

6 discussion of why Mattel believes MGA should be compelled to produce documents

7 responsive to Mattel's requests, and MGA's arguments in opposition.

8       As set forth in the MGA Parties' Opposition filed concurrently herewith, the

9 vast majority of the Requests for Production at issue in Mattel's Renewed Motion are

10 no longer at issue as the MGA Parties agreed to produce all non-privileged documents

11 responsive to Request No. 48 (Set One) (with respect to the 12 individuals identified

12 by Mattel in its Renewed Motion), and Request Nos. 43-75 (Set Three). Thus, the

13 only two Requests in dispute are Request Nos. 87 and 88.

14

15 **REQUEST FOR PRODUCTION NO. 48:**

16       All non-privileged COMMUNICATIONS between YOU and any PERSON

17 that REFER OR RELATE TO this action.

18 **RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

19       MGA incorporates by reference the above-stated general objections as if fully

20 set forth herein. MGA also specifically objects to this request on the grounds that it

21 seeks information not relevant to the subject matter of this lawsuit or reasonably

22 calculated to lead to the discovery of admissible evidence, including, without

23 limitation, that it would extend to any communication between anyone at MGA and

24 any other person referring or relating in any way to a wide variety of matter that could

25 potentially be construed as "relating" to this litigation, without regard to whether such

26 communications are at all relevant to any claim or defense at issue herein. MGA also

27 objects to this request on the grounds that it is overbroad, unduly burdensome and

28 oppressive in that it purports to require MGA diligently to identify every

666557

EXHIBIT _5_

PAGE _9D_

1   communication that any of its hundreds of employees may have had with any other

2   person referring or relating to this action. MGA also objects to this request on the

3   grounds that it is overbroad, unduly burdensome and oppressive in that it is not in any

4   way limited as to the persons involved in the communications or as to time. MGA

5   also objects to this request on the grounds that it seeks information in violation of the

6   right of privacy. MGA also objects to this request on the grounds that it seeks

7   confidential, proprietary or commercially sensitive information, the disclosure of

8   which would be inimical to the business interests of MGA. MGA also objects to this

9   request to the extent it calls for the disclosure by the work-product doctrine, joint

10  defense or common interest privilege, or other privilege.

11       Subject to the foregoing, MGA will not produce documents in response to this

12  request.

13  **MATTEL'S REASONS WHY FURTHER RESPONSE TO REQUEST NO. 48**

14  **SHOULD BE COMPELLED**

15       Mattel's Request No. 48 seeks MGA's communications regarding this action

16  with twelve specific individuals who are either named defendants involved with the

17  theft of Mattel's trade secrets or who are likely have knowledge about such actions by

18  others. As set forth more fully in Mattel's Renewed Motion to Compel, each of these

19  individuals has knowledge of Mattel's Phase 2 claims.[1]

20       The Discovery Master previously ruled, communications about the case with

21  knowledgeable witnesses are relevant and discoverable. The communications Mattel

22  seeks are unquestionably relevant to Mattel's theft of trade secrets and RICO claims

23  and should be produced.[2] Each of these individuals was either directly involved or is

24  likely to have knowledge of the events in question. Moreover, because Request

25  No. 48 is by its terms limited to communications referring or relating to this action,

26  there is not just "a decent chance," but a virtual certainty, that responsive documents

27       [1] See Mattel's Renewed Motion to Compel at Part II.

        [2] They are also relevant to the development of Mattel's defenses in Phase 2. As the Discovery Master

28  previously noted "[a]ny proof of trade secret theft is also relevant to Mattel's defenses against MGA's unfair competition

666557  claims." January 25, 2007 Discovery Master's Order, at 14, Krug Decl., Ex. 31.

1  will permit Mattel to "use the information it uncovers either as evidence or to help

2  find evidence." Bernstein, 447 F. Supp. 2d at 1105.  For this reason,, courts

3  consistently uphold similar requests for production.  See, e.g., Steinbach v. Crediqy

4  Receivables, Inc., 2006 WL 1007272, at *9 (E.D. Ky. Apr. 14, 2006) (overruling

5  defendants' objections to requests for production for all "internal communications

6  with respect to Plaintiff, . . . [the] lawsuit, or the claims in [the] [Amended]

7  Complaint"); Aiken v. Rimkus Consulting Group, Inc., 2007 WL 1101210, at *1-2

8  (S.D. Miss. Apr. 4, 2007) (permitting plaintiff to discover all "communications" and

9  "correspondence" relating to its claim against defendant).  The Court should do the

10  same here.

11  **MGA'S OPPOSITION TO MATTEL'S REASONS WHY FURTHER**

12  **RESPONSE TO REQUEST NO. 48 SHOULD BE COMPELLED**

13       As set forth in the MGA Parties' Opposition filed concurrently herewith, this

14  Request for Production is no longer at issue as the MGA Parties agreed to produce all

15  non-privileged documents responsive to this Request, with respect to the 12

16  individuals identified in Mattel's Renewed Motion.  Accordingly, the Renewed

17  Motion is moot as to this Request.

18

19  **REQUEST FOR PRODUCTION NO. 87:**

20       To the extent not produced in response to any other Request for Production, all

21  personnel and vendor files for each person identified in Exhibit 664 (bearing Bates

22  numbers MGA 0868630-31).[3]

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 87:**

24       MGA incorporates by reference its General Response and General Objections

25  above, as though fully set forth herein.  MGA further objects to the request to the

26  extent it seeks the production of documents that are protected from disclosure under

27  any applicable privilege, doctrine or immunity, including without limitation the

28

666557

---

[3] Exhibit 664 is attached to the concurrently filed Krug Declaration.

EXHIBIT 5

PAGE 92

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

1   attorney-client privilege, the work product doctrine, the right of privacy, and all other

2   privileges recognized under the constitutional, statutory or decisional law of the

3   United States of America, the State of California or any other applicable jurisdiction.

4   MGA further objects to this request on the grounds that it is vague and ambiguous in

5   its use of the terms "personnel and vendor files." MGA further objects to this request

6   on the grounds that it is overly broad and unduly burdensome in that it seeks

7   documents not relevant to the claims or defenses in this action and not reasonably

8   calculated to lead to the discovery of admissible evidence. Mattel has not

9   demonstrated how *all* personnel and vendor files for each person identified in Exhibit

10  664 could be relevant to the claims and defenses in this action, let alone established

11  that the relevancy of these documents outweighs the individual's fundamental right of

12  privacy. MGA further objects to the request as oppressive, unduly burdensome and

13  harassing given the number of individuals listed in Exhibit 664. The request is not

14  limited to the subject matter of this action and requires disclosure of private,

15  confidential documents that are not relevant to this action, and is thus impermissibly

16  overbroad. See Aug. 13 Order at 9:17-20; May 22 Order at 21:5-7. MGA further

17  objects to this request as being overly broad and unduly burdensome on the grounds

18  that it is not limited in time. MGA further objects to the request to the extent it seeks

19  confidential, proprietary or commercially sensitive information, the disclosure of

20  which would be inimical to the business interests of MGA. MGA further objects to

21  the request to the extent it violates the privacy rights of third parties to their private,

22  confidential, proprietary or trade secret information. Such information may also be

23  subject to protective orders governing other litigations thereby precluding disclosure

24  in response to this request. MGA further objects to this request as cumulative,

25  duplicative, and unduly burdensome to the extent that it seeks documents previously

26  requested by Mattel or produced by MGA in response to Mattel's document requests.

27

28

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

EXHIBIT 5

PAGE 93

1 **REQUEST FOR PRODUCTION NO. 88:**

2      To the extent not produced in response to any other Request for Production, all

3 personnel and vendor files for each person who has worked as an employee of or

4 vendor for YOU and who also has been at any time an employee of or vendor for

5 MATTEL.

6 **RESPONSE TO REQUEST FOR PRODUCTION NO. 88:**

7      MGA incorporates by reference its General Response and General Objections

8 above, as though fully set forth herein.  MGA further objects to the request to the

9 extent it seeks the production of documents that are protected from disclosure under

10 any applicable privilege, doctrine or immunity, including without limitation the

11 attorney-client privilege, the work product doctrine, the right of privacy, and all other

12 privileges recognized under the constitutional, statutory or decisional law of the

13 United States of America, the State of California or any other applicable jurisdiction.

14 MGA further objects to this request on the grounds that it is vague and ambiguous in

15 its use of the terms "personnel and vendor files."  MGA further objects to this request

16 on the grounds that it is overly broad and unduly burdensome in that it seeks

17 documents not relevant to the claims or defenses in this action and not reasonably

18 calculated to lead to the discovery of admissible evidence.  Mattel has not

19 demonstrated how all personnel and vendor files for each person who has worked as

20 an employee of or vendor for MGA and who also has been at any time an employee

21 of or vendor for MATTEL could be relevant to the claims and defenses in this action,

22 let alone established that the relevancy of these documents outweighs the individual's

23 fundamental right of privacy.  MGA further objects to the request as vague and

24 ambiguous, oppressive, unduly burdensome and harassing given the number of

25 individuals who may worked as an employee or vendor for both MGA and Mattel in

26 their lifetime.  The request is not limited to the subject matter of this action and

27 requires disclosure of private, confidential documents that are not relevant to this

28 action, and is thus impermissibly overbroad.  See Aug. 13 Order at 9:17-20; May 22

666557

OPPOSITION TO SEPARATE STATEMENT

EXHIBIT 5

PAGE 94

1  Order at 21:5-7.  MGA further objects to this request as being overly broad and

2  unduly burdensome on the grounds that it is not limited in time.  MGA further objects

3  to the request to the extent that it seeks documents not in MGA's possession, custody

4  or control.  MGA further objects to the request to the extent it seeks confidential,

5  proprietary or commercially sensitive information, the disclosure of which would be

6  inimical to the business interests of MGA.  MGA further objects to the request to the

7  extent it violates the privacy rights of third parties to their private, confidential,

8  proprietary or trade secret information.  Such information may also be subject to

9  protective orders governing other litigations thereby precluding disclosure in response

10  to this request.

11       MGA further objects to this request as cumulative, duplicative, and unduly

12  burdensome to the extent that it seeks documents previously requested by Mattel or

13  produced by MGA in response to Mattel's document requests, including, but not

14  limited to:  Request Nos. 79-89 from Mattel's First Set of Requests for Production of

15  Documents and Tangible Things to MGA, and Request No. 60 from Mattel, Inc.'s

16  First Set of Requests for Documents and Things re Claims of Unfair Competition to

17  MGA Entertainment, Inc., and Request No. 201 from Mattel's First Set of Requests

18  for Documents and Things to Isaac Larian.

19  **MATTEL'S REASONS WHY FURTHER RESPONSE TO REQUEST NOS. 87**

20  **AND 88 SHOULD BE COMPELLED**

21       Mattel's Request Nos. 88 and 87 seek production of documents from MGA's

22  personnel or vendor files for former Mattel employees.  These files contain

23  information that is either relevant or reasonably calculated to lead to the discovery of

24  admissible evidence regarding MGA's theft of trade secrets and its interference

25  with Mattel's employees' continued duties to Mattel.  As set forth more fully in

26  Mattel's Renewed Motion to Compel, MGA has—as an active part of its recruitment

27  of Mattel employees—encouraged Mattel employees to abscond with Mattel's

28

666557

**OPPOSITION TO SEPARATE STATEMENT**

EXHIBIT 5

PAGE 95

1  confidential information.[4]  (Indeed for some employees, this is likely the sole reason
2  that they were recruited.)  As such, the back-and-forth communications documenting
3  the recruitment process and their hiring, including the terms and conditions (salaries,
4  bonus, etc.) are unquestionable relevant to Mattel's allegation that MGA overpaid or
5  paid above market salaries, bonuses, etc. to those Mattel employees that left with
6  Mattel trade secrets.[5]  This type of information is contained in MGA's personnel files;
7  therefore, the files should be produced.

8      Throughout Phase 1 discovery, the Discovery Master recognized that the
9  personnel files of MGA employees could have relevant information and ordered such
10  files produced.[6]6 The April 14 Order was no different: the Discovery Master ordered
11  MGA to produced personnel files relevant to certain Phase 1 issues, but denied it with
12  regard to Phase 2 because of the stay that was then—but is no longer—in effect.[7]

13

14  **MGA'S OPPOSITION TO MATTEL'S REASONS WHY FURTHER**
15  **RESPONSE TO REQUEST NOS. 87 AND 88 SHOULD BE COMPELLED**

16      **A.    MATTEL DID NOT MEET AND CONFER PRIOR TO FILING**
17          **ITS MOTION.**

18      Mattel filed its Renewed Motion on January 26, 2009, without meeting and
19  conferring, in violation of FRCP 37-1.  This fact alone warrants denial of Mattel's
20  motion.

21      The MGA Parties anticipate that Mattel will argue that it satisfied its meet and
22  confer obligations because it met and conferred over a year ago with respect to the
23  two motions that now have been consolidated in the current Renewed Motion.  That is
24  no answer.  First, MGA's current lead counsel, the Glaser Weil firm, was not

LAW OFFICES
GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
10250 CONSTELLATION BOULEVARD
NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
310-553-3000

---

25      [4]  See Mattel's Renewed Motion to Compel at Part III.
    [5]  The "recruitment" of Machado, Trueba and Vargas, for example, entailed a vast and surprising exchange of
26  Mattel's confidential information.  See Mattel's Supp. Resp. at 28-30, Krug Decl., Ex. 28.
    [6]  See, e.g., May 15, 2007 Order Granting Mattel's Motion to Compel Production of Documents and Things, at
27  11 n.4, Krug Decl., Ex. 32.  Indeed MGA appeared, at least initially, to concede the same by agreeing to produce
    personnel files, subject to privilege.  See, e.g., MGA's Response to Mattel's First Set of Request for Documents and
28  Things, at 71-78, Krug Decl. Ex. 33.
666557      [7]  See Order re Third Set at 7.

EXHIBIT 5

PAGE 96

1   **MGA'S OPPOSITION TO MATTEL'S REASONS WHY FURTHER**

2   **RESPONSE TO REQUEST NOS. 43-75 (SET THREE) SHOULD BE**

3   **COMPELLED**

4       As set forth in the MGA Parties' Opposition filed concurrently herewith, these

5   Requests for Production are no longer at issue as the MGA Parties agreed to produce

6   all non-privileged documents responsive to these Requests.  Accordingly, the

7   Renewed Motion is moot as to each of these Requests.

8

9

10   Dated:  February 12, 2009            Patricia L. Glaser
                               Joel N. Klevens

11                                GLASER, WEIL, FINK, JACOBS
                                 & SHAPIRO, LLP

12

13                                Russell J. Frackman
                               MITCHELL, SILBERBERG & KNUPP, LLP

14

15

16                              By:
                               Amman Khan

17                                Attorneys for the MGA Parties
                               for Phase Two

18

19

20

21

22

23

24

25

26

27

28

666557

**OPPOSITION TO SEPARATE STATEMENT**

EXHIBIT 5

PAGE 97

EXHIBIT 6

1  Robert C. O'Brien (SBN 154372)
   ARENT FOX LLP
2  555 West Fifth Street, 48th Floor
   Los Angeles, CA  90013-1065
3  Telephone:  213.629.7400
   Facsimile:   213.629.7401
4  obrien.robert@arentfox.com

5  Discovery Master

6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12  CARTER BRYANT, an individual,        Case No.  CV 04-09049 SGL (RNBx)

13            Plaintiff,
                                         Consolidated with
14            v.                         Case No. CV 04-09059
                                         Case No. CV 05-2727
15  MATTEL, INC., a Delaware
    corporation,                         **PHASE 2 DISCOVERY MATTER**
16
              Defendant.                 **AMENDED[1] ORDER NO. 11,
17                                        REGARDING:**

18                                       **(1)  MOTION OF MATTEL, INC.
                                         TO COMPEL RESPONSES TO
19                                       INTERROGATORIES AND
                                         PRODUCTION OF DOCUMENTS
20                                       BY MGA ENTERTAINMENT, INC.
                                         AND ISAAC LARIAN; and**
21
22  CONSOLIDATED WITH                    **(2)  MOTION OF MATTEL, INC.
    MATTEL, INC. v. BRYANT and           TO COMPEL THE DEPOSITIONS
23  MGA ENTERTAINMENT, INC. v.           OF PABLO VARGAS AND
    MATTEL, INC.                         MARIANA TRUEBA**
24

25

26

27  _____
    [1] The only difference between this Amended Order No. 11 and the original order is the language in Section III
28  requiring MGA Entertainment, Inc. and Isaac Larian to produce responsive documents and information within 30
    days of the original order.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

                        EXHIBIT _U_                    AMENDED ORDER NO. 11
                        PAGE _08_            [Case No. CV 04-09049 SGL (RNBx)]

1        This Order sets forth the Discovery Master's ruling on two motions filed by

2   Mattel, Inc. ("Mattel"):  (1) a motion to compel responses to interrogatories and

3   production of documents by MGA Entertainment, Inc. ("MGA") and Isaac Larian

4   ("Larian") [Docket No. 4817] (the "Written Discovery Motion"), and (2) a motion

5   to compel the depositions of Pablo Vargas and Mariana Trueba [Docket No. 4799]

6   (the "Deposition Motion") (collectively, the "Motions").

7        The Motions came on regularly for hearing before the Discovery Master on

8   March 19, 2009.  All interested parties were represented by counsel and afforded

9   the opportunity to present oral argument on the Motions.  The Discovery Master,

10  having considered the papers filed in support of and in opposition to the Motions,

11  and having heard oral argument, rules as set forth below.

12  **I.**    **MATTEL'S WRITTEN DISCOVERY MOTION**

13       In its Written Discovery Motion, Mattel seeks to compel MGA to produce

14  documents responsive to 40 separate document requests[2] and provide answers to 12

15  different interrogatories.  (Separate Statement in Support of the Written Discovery

16  Motion, pp. 1 – 41 and 45 – 102).  Mattel further seeks to compel Larian to produce

17  documents responsive to 3 separate document requests and provide answers to 11

18  different interrogatories.[3]  *(Id.*, pp. 41 – 43 and 49 – 102).

19      **A.**    **Document Requests**

20          **1.**    **Document Requests Propounded On MGA**

21       Document Request Nos. 4 through 37 seek financial information from MGA

22

23  [2] Although Mattel purports to compel responses from MGA to Document Request Nos. 4 – 37 and 40 – 45 in its Written Discovery Motion, its Separate Statement does not reference Request for Production No. 42, mislabels

24  Document Request Nos. 43, 44 and 45 (as requests numbered 42, 43 and 44, respectively) and includes Document Request No. 46 (incorrectly numbered as request 45).  (*Compare* Separate Statement in Support of the Written

25  Discovery Motion at pp. 37 – 40 with the Declaration of Scott L. Watson in Support of the Written Discovery Motion ("Watson Decl."), Ex. 1 at pp. 13 and 14).  Because Mattel has in reality moved to compel responses to Document

26  Requests Nos. 4 – 37, 40, 41, and 43 – 46, the Discovery Master's ruling addresses only those requests – not Document Request No. 42.  Moreover, any reference to a document request relating to MGA in this Order shall refer

27  to the actual number of the document request as set forth in Mattel's Second Set of Requests for Production of Documents and Things to MGA dated June 6, 2007 (attached to the Watson Decl. as Exhibit 1).

28  [3] The 11 interrogatories propounded on Larian are the same as 11 of the 12 interrogatories at issue regarding MGA.

EXHIBIT __*12*__ - 1 -

PAGE __*99*__

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

related to sales, revenues, costs, profits, customer returns, customer rebates and customer credits regarding the Bratz Dolls or Bratz Product,[4] as well as documents sufficient to identify customers who purchased any Bratz Product from MGA or its licensees. (Watson Decl., Ex. 1 at pp. 7 – 12).

Document Request Nos. 43, 44 and 46 similarly seek financial information from MGA related to the Bratz product line:

- Document Request No. 43 (erroneously numbered in Mattel's Separate Statement as request number 42): "All sales, profit and cash flow projections or forecasts for BRATZ DOLLS, BRATZ PRODUCTS, BRATZ MOVIES, and BRATZ TELEVISION SHOWS." (Id., p. 13).

- Document Request No. 44 (erroneously numbered in Mattel's Separate Statement as request number 43): "All DOCUMENTS that REFER OR RELATE TO the value of the Bratz brand." (Id.).

- Document Request No. 46 (erroneously numbered in Mattel's Separate Statement as request number 45): "All DOCUMENTS that evidence, reflect, REFER OR RELATE TO the BRATZ DOLL's share of the fashion doll market, including, without limitation, the extent to which Bratz has been or is gaining or losing market share in the fashion doll market." (Id., p. 14).

Document Request Nos. 40, 41 and 45, on the other hand, seek financial information from MGA as a whole, not just financial data limited to the Bratz Dolls or Bratz Product:

- Document Request No. 40: "All DOCUMENTS that describe YOUR

---

[4] Mattel defines the term "Bratz Product" as follows:

'Bratz Product' means any product whether two-dimensional or three-dimensional, and whether in tangible, digital or electronic or other form: (i) that is or has ever been distributed, marketed or sold under the name 'Bratz' or as part of the 'Bratz' line; (ii) that depicts, incorporates, embodies consists of or REFERS OR RELATES TO BRATZ; and/or (iii) that is or has ever been distributed, marketed or sold in any packaging that includes the name 'Bratz' or depicts, incorporates, embodies, consists of or REFERS OR RELATES TO BRATZ.

(Watson Decl., Ex. 1 at p. 3; see also id., Ex. 4 at p. 7).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES



EXHIBIT ___ - 2 -

PAGE 100

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   cost allocation procedures." (*Id.*, p. 13).

2   • Document Request No. 41: "YOUR general ledgers from January 1,

3   1995 through the present." (*Id.*).

4   • Document Request No. 45 (erroneously numbered in Mattel's Separate

5   Statement as request number 44): "DOCUMENTS sufficient to

6   calculate YOUR net worth on a yearly basis for each year from 1999

7   to the present." (*Id.*).

8   ### 2.   Document Requests Propounded On Larian

9   The three document requests propounded on Larian (i.e., Documents Request

10   Nos. 207, 208 and 269) seek information regarding all of Larian's earnings and

11   bank accounts:

12   • Document Request No. 207: "DOCUMENTS sufficient to IDENTIFY

13   each account with any bank or financial institution that YOU have or

14   have had, or that YOU have or have had any legal or beneficial interest

15   in, since January 1, 1999." (Watson Decl., Ex. 4 p. 51).

16   • Document Request No. 208: "Documents sufficient to establish

17   YOUR gross income, and the sources of that gross income, for the

18   years 1999 through the present, inclusive." (*Id.*, p. 52).

19   • Document Request No. 269: "DOCUMENTS sufficient to calculate

20   YOUR net worth on a yearly basis for each year from 1999 to the

21   present." (*Id.*, p. 63).

22   ### 3.   Phase 1 Rulings

23   This is not the first time that Mattel has moved to compel responses to the

24   document requests at issue. Mattel previously filed two motions to compel that

25   asked the former discovery master to compel MGA and Larian (collectively, the

26   "MGA Parties") to, among other things, respond to the same 43 document requests

27   in dispute here. (Watson Decl., Exs. 2 and 7). The prior discovery master granted

28   both motions (at least as they relate to the document requests that are the subject of

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 10
PAGE 101

- 3 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    the present dispute). (*Id.*, Ex. 3 at pp. 1 – 3; *Id.*, Ex. 8 at pp. 15 and 16).

2         Because the prior discovery master compelled MGA to produce information

3    responsive to Document Request Nos. 4 – 37, 40, 41 and 43 – 46, and directed

4    Larian to produce information responsive to Document Request Nos. 207, 208 and

5    269, Mattel argues (1) that the MGA Parties have a duty under Federal Rule of

6    Civil Procedure 26 to supplement their prior productions, and (2) that the

7    information the MGA Parties "are withholding is relevant to the damages Mattel

8    seeks," (Written Discovery Motion, pp. 8 – 9).

9                  **4.   Objections Of MGA**

10         In their Opposition, the MGA Parties rely on two grounds for refusing to

11    supplement their prior document productions regarding Document Request Nos. 4 –

12    37, 40, 41, 43 – 46, 207, 208 and 269.  First, the MGA Parties argue that Mattel

13    failed to meet and confer in good faith.  (Opposition, pp. 3 – 5).  Second, the MGA

14    Parties argue that the requested information is not relevant to the claims and

15    defenses at issue in Phase 2.  (*Id.*, 5 – 7).

16                 **a.   Purported Failure To Meet And Confer**

17         Because it could dispose of the outstanding discovery issues related to the

18    document requests that are the subject of the present dispute, the Discovery Master

19    first addresses the MGA Parties' argument that Mattel failed to meet and confer

20    properly prior to filing its Written Discovery Motion.

21         The MGA Parties argue that Mattel's motion to compel should be denied

22    because Mattel failed to comply with the meet and confer requirements of Local

23    Rule 37-1.  (*Id.*, pp. 3 – 5).  As the Discovery Master has previously ruled,

24    however, Local Rule 37 (as distinguished from Federal Rule 37) does not apply to

25    discovery disputes in this case.  The applicable meet and confer procedures are set

26    forth in the Court's order appointing a discovery master dated December 6, 2006

27    ("Discovery Master Order") and in the Federal Rules of Civil Procedure, (Fed. R.

28    Civ. Proc. 37(a); Discovery Master Order, p. 4), the latter of which expressly

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 4
- 4 -
PAGE 102

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    requires that, before filing a motion to compel, the moving party must meet and

2    confer in "good faith." (Fed. R. Civ. Proc. 37(a)).

3         Because Rule 37 and the Discovery Master Order govern the meet and confer

4    process in this case, the Discovery Master construes the MGA Parties' meet and

5    confer argument in light of the good faith requirement embedded in Rule 37. The

6    MGA Parties claim that Mattel did not meet and confer in good faith because its

7    counsel sent them "a meet and confer letter inviting [them] to further meet and

8    confer on February 11, 2009" and then filed a motion to compel one "day before

9    the proposed meet and confer session" was scheduled to occur (i.e., on February 10,

10   2009). (Opposition, pp. 3 – 5; *see also* Declaration of Amman Khan, Ex. H at p. 2

11   [wherein Mattel's counsel asked counsel for the MGA Parties to "be in a position to

12   provide us with MGA and Larian's position by Wednesday, February 11, 2009."]).

13   However, the record available to the Discovery Master demonstrates that Mattel

14   made several prior attempts to meet and confer with the MGA Parties, including

15   engaging in the following:

16        • On January 6, 2009, Mattel's counsel sent a letter demanding that the

17          MGA Parties supplement their production concerning the document

18          requests by February 1, 2009, (Watson Decl., Ex. 17);

19        • Counsel for the MGA Parties never responded to Mattel's January 6,

20          2009 letter, (Written Discovery Motion, p. 6);

21        • Counsel for Mattel sent counsel for the MGA Parties a second copy of

22          the January 6, 2009 letter on February 5, 2009, (Watson Decl., Ex. 30);

23        • Counsel for Mattel and counsel for the MGA Parties then spoke on

24          February 6, 2009, and were supposed to discuss, among other things,

25          the document requests at issue, but counsel for the MGA Parties was

26          not prepared to discuss the requests at the appointed time, (Watson

27          Decl., ¶ 22); and

28        • Counsel for Mattel and the MGA Parties then spoke *again* on February

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 6   - 5 -

PAGE 103

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

1    9, 2009 to discuss the document requests but counsel for the MGA

2    Parties was still not prepared to discuss the issues, (*Id.*).

3    In light of foregoing facts (which are not disputed by the MGA Parties), it is

4    clear that Mattel satisfied Rule 37's "good faith" meet and confer requirement.  The

5    plain language of Federal Rule of Civil Procedure 37(a)(1) permits a party to "move

6    for an order compelling . . . discovery . . . [if] the movant has in good faith

7    conferred or *attempted to confer* with the" the non-moving party."  (Fed. R. Civ. P.

8    37(a) [emphasis added]).  Because it attempted to meet and confer with counsel for

9    the MGA Parties on at least two occasions (but was unable to do so because the

10   MGA Parties were not prepared to meet and confer during either of the agreed upon

11   times), Mattel satisfied its meet and confer obligations under Rule 37.[5]

12   **b.    Relevance Of The Document Requests To Phase 2**

13   The MGA Parties also oppose Mattel's demand for a supplemental

14   production on the ground that none of the document requests as issue seek

15   information reasonably calculated to lead to the discovery of admissible evidence.

16   (Opposition, pp. 5 – 7).

17   **(1)    Document Request Nos. 207, 208 And 269**

18   With respect to the three document requests directed to Larian (i.e.,

19   Document Request Nos. 207, 208 and 269), the Opposition contends that they are

20   not relevant to any Phase 2 claims.  (Opposition, p. 6).

21   Each of the requests seeks information related to Larian's financial condition,

22   Mattel's damages, and/or whether the facts alleged in Mattel's Second Amended

23   Answer and Counterclaim ("SAAC") are true.  For example, Document Request

24

25   [5] The Discovery Master's ruling is also supported by the fact that the MGA Parties refused to produce any of the
     requested information following the filing of the Written Discovery Motion.  It is, therefore, unclear what could have
     been accomplished by an additional meet and confer on these issues.  Moreover, Mattel's counsel stated at oral

26   argument that they met with MGA's counsel again on February 11, 2009 regarding the document requests and they
     still "had no answer to this question."  (Transcript of March 19, 2009 hearing before the Discovery Master ("Tr.") p.

27   68:7-9).  Regardless, Mattel attempted to meet and confer twice before filing its current motion to compel (i.e., on
     February 6 and 9, 2009) and that is all that is required by the Federal Rules of Civil Procedure and the discovery

28   procedures governing this case.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____ - 6 -

PAGE 104

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    Nos. 208 and 269 seek documents sufficient to identify Larian's net worth (Request

2    No. 269) and gross income (Request No. 208).  Such information relates to Phase 2

3    damages issues, including, among other things, damages sought against Larian in

4    connection with Mattel's unfair competition cause of action as well as the

5    calculation of Larian's net worth for purposes of litigating the propriety of any

6    "exemplary damages under Cal. Civ. Code § 3294."[6]  (SAAC, ¶¶ 163 – 166).  It is

7    therefore discoverable.

8          In its SAAC, Mattel also alleges that MGA, Larian and others hired former

9    Mattel's employees for the express purpose of misappropriating Mattel's

10    confidential and proprietary information, and that the MGA Parties promised such

11    individuals increased salaries at MGA.  (*See, e.g.,* SAAC, ¶¶ 69 and 77).  Mattel's

12    request for documents sufficient to identify Larian's bank accounts (i.e., Request

13    No. 207) is, therefore, reasonably calculated to lead to the discovery of admissible

14    evidence regarding the source of any payments that may have been made by Larian

15    to former Mattel employees.[7]

16                    **(2)    Document Request Nos. 4 – 37, 40, 41 And 43 –**

17                             **46**

18          Regarding the requests directed to MGA (i.e., Document Request Nos. 4 –

19    37, 40, 41 and 43 – 46), MGA argues that they are improper because they seek

20    financial information "related to Bratz dolls, which was a Phase 1 issue,"

21    (Opposition, p. 5).  Specifically, the MGA parties argue that:

22                    [a]ny claim by Mattel that it needs [supplemental] Bratz-

23

---

24    [6] While the Discovery Master agrees that Document Request Nos. 208 and 269 are relevant to Phase 2 issues, he
concludes that Larian should not be required to provide updated information concerning his net worth and gross
income every few months.  Yet, Mattel is entitled to obtain this financial information at least once prior to the Phase
25    2 trial so that it can assess the veracity of the information provided by Larian through the discovery process, question
deponents about the figures provided, and give the data to its experts.  Further, acquiring updated financial
26    information from Larian is appropriate because his net worth and gross income could, in theory, have been altered by
the verdict rendered in Phase 1 or recent economic conditions.

27
[7] Any imposition resulting from Document Request No. 207 should be minimal because Larian was ordered to
28    produce documents identifying his bank accounts as part of Phase 1.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___ - 7 -      AMENDED ORDER NO. 11
                              [Case No. CV 04-09049 SGL (RNBx)]

PAGE 105

1            related financial information in order to establish its Phase

2            2 damages ignores the jury's Phase 1 damages award . . . .

3            Mattel sought disgorgement of all Bratz profits during

4            Phase 1 and the jury made its award.  Mattel may not

5            relitigate this issue in Phase 2.

6 (*Id.*, p. 6).

7       However, Document Request Nos. 40, 41 and 45[8] make no mention of

8 financial information related to the Bratz Dolls or Bratz Product.  They instead seek

9 (1) "All DOCUMENTS that describe [MGA's] cost allocation procedures,"

10 (Watson Decl., Ex. 1 at p. 13), (2) MGA's "general ledgers from January 1, 1995

11 through the present," (*id.*), and (3) "DOCUMENTS sufficient to calculate [MGA's]

12 net worth on a yearly basis for each year from 1999 to the present," (*id.*).

13 Therefore, MGA's argument does not apply to these document requests.

14       Document Request Nos. 40, 41 and 45 (erroneously numbered in Mattel's

15 Separate Statement as request number 44) are further reasonably calculated to lead

16 to the discovery of admissible evidence.  As the Discovery Master previously ruled,

17 the touchstone for determining whether a particular discovery request is reasonably

18 calculated to lead to the discovery of admissible evidence in this case is whether the

19 request bears some relation to the issues to be tried in Phase 2.  That standard is met

20 here, since MGA's general ledgers, net worth, and cost allocation procedures all

21 bear on Mattel's Phase 2 damages claims, including Mattel's claim for punitive

22 damages.

23       As for the remainder of the document requests directed to MGA (i.e.,

24 Document Request Nos. 4 – 37, 43,[9] 44,[10] and 46),[11] they are admittedly linked to

25 ───────────────

  [8]   Document Request No. 45 is erroneously numbered in Mattel's Separate Statement as request number 44.

26   [9] Document Request No. 43 is erroneously numbered in Mattel's Separate Statement as request number 42.

27   [10] Document Request No. 44 is erroneously numbered in Mattel's Separate Statement as request number 43.

28   [11] Document Request No. 46 is erroneously numbered in Mattel's Separate Statement as request number 45.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __ᴖ__   - 8 -   AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

PAGE __ᴖ__

1   financial information related to the Bratz Dolls/Bratz Product.  While the Discovery

2   Master recognizes that many, if not all, of the issues related to the theft of the Bratz

3   Dolls as well as any damages that may be recoverable by Mattel relating to such

4   misconduct were litigated and resolved in Phase 1 that does not necessarily mean

5   the information sought by Mattel is irrelevant.

6         As an initial matter, the Court's December 3, 2008 order imposes a

7   constructive trust on the proceeds of MGA's sale of Bratz dolls.  Continued sale of

8   any such inventory is thus relevant to the Court's injunction and presumably must

9   be made available to Mattel on that basis alone.[12]

10        Document Request Nos. 4 – 37, 43 (erroneously numbered in Mattel's

11   Separate Statement as request number 42), 44 (erroneously numbered in Mattel's

12   Separate Statement as request number 43), and 46 (erroneously numbered in

13   Mattel's Separate Statement as request number 45) also relate to Mattel's Phase 2

14   claims.  The counterclaims to be litigated in Phase 2 (e.g., Mattel's RICO causes of

15   action, misappropriation of trade secrets claim, and unfair competition cause of

16   action) all incorporate by reference the allegation that "MGA first stole 'Bratz,' a

17   fashion doll, from Mattel, and then continued stealing Mattel's confidential and

18   proprietary information to fuel MGA's growth."  (SAAC, ¶¶ 1, 88, 98, 106, and

19   163).  The SAAC later alleges that "[b]y engaging in the foregoing conduct, [MGA

20   has, among other things,] . . . engaged in unlawful, unfair or fraudulent business

21   act[s] or practice[s]" in violation of California Business and Professions Code

22   section 17200 *et seq.*  (SAAC, ¶ 165).  Therefore, in addition to the alleged

23   misappropriation of other trade secrets, Mattel's Phase 2 counterclaims at least

24   arguably include evidence relating to the purported theft of the Bratz Dolls as well.

25        Mattel's two RICO claims also both refer explicitly to a "Bratz Criminal

26

27   _____

[12] MGA also has a continuing duty to supplement its production under the Federal Rules of Civil Procedure.  (*See*

28   Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to . . . [a] request for production . . . must supplement or
correct its disclosure or response . . . in a timely manner"].)

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT  - 9 -

PAGE 107

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   Enterprise." (SAAC, ¶¶ 89 and 100). The SAAC further expressly alleges that one

2   of the purported racketeering activities was the "altering [of] numerous original

3   Bratz drawings created by Bryant . . ." (SAAC, ¶ 93(c)(ii)). These allegations are

4   sufficient to render Document Request Nos. 4 – 37, 43, 44 and 46 reasonably

5   calculated to lead to the discovery of admissible evidence in Phase 2.

6       The Discovery Master cannot predict whether the Court will ultimately

7   construe Mattel's Phase 2 claims as broad enough to encompass MGA's alleged

8   misappropriation of the Bratz Dolls, or whether Mattel will be barred from

9   presenting any evidence that it has been damaged by such misconduct at the Phase

10  2 trial on the ground that the issue was previously litigated and resolved in Phase 1.

11  Given that the discovery here need only appear reasonably calculated to lead to the

12  discovery of admissible evidence concerning the Phase 2 claims, the Discovery

13  Master finds that the aforementioned document requests are sufficiently related to

14  Mattel's Phase 2 claims to be discoverable at this time.

15          **5.      Conclusion**

16      For all of the foregoing reasons, Mattel's motion to compel responses to

17  Document Request Nos. 4 – 37, 40, 41, 43 – 46 (erroneously numbered in Mattel's

18  Separate Statement as requests numbered 42 – 45), 207, 208 and 269 is granted.

19      **B.    Interrogatories Propounded On MGA And Larian**

20      The second part of Mattel's Written Discovery Motion addresses various

21  interrogatories propounded on the MGA Parties.

22          **1.      Interrogatory No. 45 Propounded On MGA**

23  Interrogatory No. 45 asks MGA[13] to:

24          IDENTIFY each BRATZ PRODUCT that has been

25          SOLD by [MGA] or [its] licensees and, for each such

26

27  ─────────────────────
    [13] Although Interrogatory No. 45 was propounded on Larian as well, (*see* Watson Decl., Ex. 9), Mattel's Written
28  Discovery Motion seeks an order compelling just "MGA TO SUPPLEMENT ITS RESPONSES TO
    INTERROGATORY NO. 45." (Written Discovery Motion, p. 9:8-9 [emphasis omitted]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __12__    - 10 -    AMENDED ORDER NO. 11
                             [Case No. CV 04-09049 SGL (RNBx)]

PAGE __108__

1    BRATZ PRODUCT, state . . . (a) the number of units of
2    each such BRATZ PRODUCT SOLD by [MGA] or [its]
3    licensees, (b) the gross and net revenue received by
4    [MGA] from such SALES of each such BRATZ
5    PRODUCT, (c) all costs [MGA] incurred in connection
6    with each such BRATZ PRODUCT, including but not
7    limited to [MGA's] costs of goods sold, and (d) [MGA's]
8    gross and net profits from each such BRATZ PRODUCT.
9    (Separate Statement in Support of the Written Discovery Motion, p. 45; *see also*
10   Written Discovery Motion, p. 9).

11              **a.    Phase 1 Rulings**

12       As with the document requests discussed above, Mattel concedes that "MGA

13   identified and produced documents responsive to [Interrogatory No. 45] in

14   December 2007, and later supplemented th[at] production mid-trial . . ." (Written

15   Discovery Motion, p. 9). Nonetheless, Mattel argues that "MGA now . . . refuses to

16   supplement its response" without justification. (*Id.*)

17              **b.    Objections Of MGA**

18       In its Opposition, MGA argues that it does not have to provide the

19   information requested by Interrogatory No. 45 for two reasons. First, it claims that,

20   like the document requests propounded on MGA, "Mattel's entitlement to gross and

21   net profits from sales of Bratz products was an issue adjudicated in Phase 1, and

22   Mattel fails to explain how this discovery is relevant to or proper in Phase 2."

23   (Opposition, p. 7). The information sought by Interrogatory No. 45 is virtually

24   identical to the documents sought by Document Request Nos. 21 (requesting

25   "DOCUMENTS sufficient to show the number of units of each BRATZ

26   PRODUCT sold by [MGA] or [its] licensees"), 22 (requesting "DOCUMENTS

27   sufficient to show the revenue received by [MGA] from the sale of each BRATZ

28   PRODUCT sold by [MGA] or [its] licensees"), 23 (requesting "DOCUMENTS

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    sufficient to show [MGA's] cost of goods sold, unit cost and other cost for each

2    BRATZ PRODUCT sold by [MGA] or [its] licensees"), and 24 (requesting

3    "DOCUMENTS that evidence, reflect or REFER OR RELATE TO [MGA's]

4    profits from the sale of each BRATZ PRODUCT sold by [MGA] or [its]

5    licensees"), discussed above.  Accordingly, MGA's relevancy argument regarding

6    Interrogatory No. 45 is not persuasive for the same reasons discussed in Section

7    I.A.4.b.2 above, namely that the information is relevant to the constructive trust

8    imposed by the Court on the proceeds of MGA's sale of Bratz dolls and is also

9    arguably relevant to Mattel's Phase 2 claims.[14]

10        MGA also argues that it should not be required to provide the information

11   requested by Interrogatory No. 45 because it "has already provided information that

12   is current through the second fiscal quarter of 2008" and it would be unduly

13   burdensome to gather the documents necessary to update that information.

14   (Opposition, pp. 7 – 8).   MGA did not argue, however, in its Opposition that it

15   would be unduly burdensome to respond to Document Request Nos. 21, 22, 23 and

16   24 discussed above in Section I.A.4.b.2.  Therefore, MGA can gather the

17   documents responsive to those requests and refer Mattel to those materials.  (*See*

18   Fed. R. Civ. P. 33(d) [If the answer to an interrogatory may be determined by

19   examining . . . a party's business records . . . the responding party may answer by

20   specifying the records that must be reviewed . . ."]).

21        The MGA Parties' argument that it is overly burdensome to require MGA to

22   spend 320 hours to inform Mattel of the most recent sales figures concerning the

23   Bratz products, (Opposition, p. 7), is also unpersuasive, given the importance of the

24

25   [14] Again, the Discovery Master cannot predict whether the Court will ultimately deem Mattel's Phase 2 claims broad
     enough to encompass MGA's alleged misappropriation of the Bratz dolls or whether Mattel will be barred from
26   presenting any evidence that it has been damaged by such misconduct at the Phase 2 trial on the ground that the issue
     was previously litigated and resolved in Phase 1.  Nevertheless, in light of the fact that the discovery need only
27   appear reasonably calculated to lead to the discovery of admissible evidence concerning the Phase 2 claims, the
     Discovery Master finds that Interrogatory No. 45 is sufficiently related to Mattel's Phase 2 claims to be discoverable
28   at this time.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 6
PAGE 110

- 12 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1  information requested and the wide-ranging extent of the discovery to date. As

2  explained above, the information sought is relevant to the constructive trust

3  imposed by the Court's December 3, 2008 ruling and relevant to Mattel's Phase 2

4  claims. Also, while 320 hours may be unduly burdensome in certain

5  circumstances, it is not unreasonable on its face here given that the MGA Parties

6  have already produced more than 4 million documents.[15] (*See Cappacchione v.*

7  *Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 491 (W.D.N.C. 1998)

8  ["Requiring a responding party to perform extensive research or to compile

9  substantial amounts of data and information does not automatically constitute an

10  undue burden . . . Imposing such a burden is particularly proper where, as here, the

11  information sought is crucial to the ultimate determination of a crucial issue and

12  where the location of the documents is best known by the responding party."]).

<center>c.   **Conclusion**</center>

14       For all of the foregoing reasons, Interrogatory No. 45 is reasonably

15  calculated to lead to the discovery of admissible evidence regarding Mattel's

16  Phase 2 claims and must be answered by MGA.

17       <center>2.   **Interrogatory Nos. 56 – 63 Propounded On MGA And**</center>

18       <center>**Larian**</center>

19       Mattel propounded Interrogatory Nos. 56 – 63 on both MGA and Larian.

20  These interrogatories ask the MGA Parties to provide information regarding their

21  alleged theft of certain Mattel documents:

22       • Interrogatory No. 56: "IDENTIFY all MATTEL DOCUMENTS that

23       MGA has obtained, received, reviewed, copied, reproduced,

24       transmitted, requested, or used at any time since January 1, 1999, and

25       IDENTIFY all PERSONS with knowledge of such facts and all

26       DOCUMENTS that REFER OR RELATE TO such MATTEL

27

28  [15] *See* Opposition at p. 4 n. 1 [stating that "the MGA Defendants [have] produced four million, two hundred thousand (4,200,000) pages of documents"].

Arent Fox LLP
Attorneys At Law
Los Angeles



PAGE 111

- 13 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    DOCUMENTS." (Separate Statement in Support of Written

2    Discovery Motion, p. 49).

3    • Interrogatory No. 57: "IDENTIFY all DOCUMENTS that REFER

4    OR RELATE TO any MATTEL product or plan that any of the

5    FORMER MATTEL EMPLOYEES provided, transmitted or disclosed

6    to, shared with or used on behalf of MGA at any time since January 1,

7    1999, and IDENTIFY all PERSONS with knowledge of such facts."

8    (*Id.*, p. 52).

9    • Interrogatory No. 58: "State all facts which support YOUR

10   contention, if YOU so contend, that YOU and/or MGA did not obtain

11   any MATTEL DOCUMENTS through improper means, and

12   IDENTIFY all PERSONS with knowledge of such facts and all

13   DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

14   54).

15   • Interrogatory No. 59: "State all facts which support YOUR

16   contention, if YOU so contend, that any information in the MATTEL

17   DOCUMENTS does not and/or did not derive independent economic

18   value from not being generally known to the public or other

19   PERSONS who can obtain economic value from its disclosure or use,

20   and IDENTIFY all PERSONS with knowledge of such facts and all

21   DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.

22   57).

23   • Interrogatory No. 60: "State all facts which support YOUR

24   contention, if YOU so contend, that any information in the MATTEL

25   DOCUMENTS was known to the public or to PERSONS who can

26   obtain economic value from its disclosure or use, and IDENTIFY all

27   PERSONS with knowledge of the foregoing and All DOCUMENTS

28   that REFER OR RELATE TO the foregoing." (*Id.*, p. 61).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _12_

PAGE _112_

-14-

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    • <u>Interrogatory No. 61</u>: "State all facts which support YOUR
2      contention, if YOU so contend, that YOU and/or MGA independently
3      developed, or did not otherwise use or disclose, any information in the
4      MATTEL DOCUMENTS, and IDENTIFY all PERSONS with
5      knowledge of such facts and all DOCUMENTS that REFER OR
6      RELATE TO such facts." (*Id.*, pp. 64 – 65).

7    • <u>Interrogatory No. 62</u>: "State all facts which support YOUR contention
8      that YOUR use or disclosure of information in the MATTEL
9      DOCUMENTS neither benefited YOU nor harmed MATTEL, and
10     IDENTIFY all PERSONS with knowledge of such facts and all
11     DOCUMENTS that REFER OR RELATE TO such facts." (*Id.*, p.
12     69).

13   • <u>Interrogatory No. 63</u>: "State all facts which support YOUR
14     contention, if YOU so contend, that YOU and/or MGA had, has or
15     have any right to copy, possess, use or disclose any MATTEL
16     DOCUMENT, and IDENTIFY all PERSONS with knowledge of such
17     facts and all DOCUMENTS that REFER OR RELATE TO such
18     facts." (*Id.*, p. 73).

19            a.    **Objections Of MGA And Larian**

20         In their Opposition, the MGA Parties rely on four basic grounds for refusing

21   to provide responses to Interrogatory Nos. 56 – 63.  First, the MGA Parties argue

22   that Interrogatory Nos. 56 and 58 – 63 are unduly burdensome.  (Opposition, pp. 9

23   – 10).   Second, the MGA Parties argue that the interrogatories presuppose facts

24   that are not true.  (*Id.*, p. 8).  Third, the MGA Parties argue that all 8 interrogatories

25   are impermissibly compound and exceed the number of allotted interrogatories.

26   (*Id.*, pp. 10 – 11).  Finally, the MGA Parties argue that Interrogatory Nos. 58, 59

27   and 62 improperly ask them to establish a negative proposition.  (*Id.*, pp. 11 – 12).

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT **V**
PAGE 113

- 15 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

### (1)   Unduly Burdensome Objection

The MGA Parties' primary argument in opposition to Interrogatory Nos. 56 – 63 is that each of the seven interrogatories that references the term "MATTEL DOCUMENTS" (i.e., Interrogatories Nos. 56 and 58 – 63) is unduly burdensome. (Opposition, p. 9 – 10).  While the MGA Parties do concede that the interrogatories "relate to Phase 2" issues, (Tr., p. 57:13), they object to the interrogatories because they claim that the interrogatories require them "to state all facts, identify all documents and identify all witnesses, supporting contentions for over 8 boxes of documents . . ." (Opposition, pp. 9 – 10).  Whether an undue burden exists, however, depends on, among other things, the value of the information sought versus the burden alleged by the responding party.  (*See King v. Georgia Power Co.*, 50 F.R.D. 134, 136 (N.D. Ga. 1970) ["Although preparation of a direct answer will be time-consuming, and probably costly, the information is crucial to the issues of this suit, and is in the exclusive custody of the defendant."]).

Applying this test here, the Discovery Master finds that Interrogatory Nos. 56 and 58 – 63, at least as he understands them, go to the core of Mattel's Phase 2 trade secret claims.  (Tr., 37:9-12 ["We're not asking for something of marginal importance.  We're asking for . . . their core contentions related to the trade secret claims."]).  As the Discovery Master has previously explained, the issues to be litigated in Phase 2 include, among other things, Mattel's claim that the MGA Parties stole "a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure," including, among other things, stealing "Mattel's proprietary business methods, practices and information." (SAAC, ¶ 20).  Indeed, Mattel alleges in its SAAC that the MGA Parties:

- "engaged in an ongoing, widespread pattern of . . . inducing Mattel employees to steal Mattel's confidential information or other property and take it with them to MGA," (*Id.*, ¶ 5);

//

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __P__   - 16 -   AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

PAGE 114

1    • stole "Mattel's plans, strategy and business information for the
2       Mexican market and materials related to Mattel's worldwide business
3       strategies," (*Id.*, ¶ 37);

4    • "directed [certain Mattel employees'] to steal virtually all Mattel
5       confidential and proprietary information that they could access and
6       bring it with them to MGA," (*Id.*, ¶ 43), including "virtually every
7       type of document a competitor would need to enter the Mexican
8       market, and to unlawfully compete with Mattel in Mexico, in the
9       United States and elsewhere . . ." (*Id.*, ¶ 48);

10   • "targeted certain Mattel employees who have broad access to Mattel
11      proprietary information in an effort to induce and encourage them to
12      join MGA and to steal or otherwise wrongfully misappropriate Mattel
13      confidential information and trade secrets," including by "promising
14      these employees salaries 25 percent or more higher than they earn at
15      Mattel and stating to them that they should not be concerned by legal
16      action taken by Mattel to protect its trade secrets and its rights because
17      such claims are hard to prove and easy to defeat," (*Id.*, ¶ 69); and

18   • "hired directly from Mattel's United States operations at least 25
19      employees, from Senior Vice-President level to lower level
20      employees," and that some of these individuals misappropriated
21      "Mattel confidential and proprietary information, including Mattel's
22      strategic plans; business operations; methods and systems; marketing
23      and advertising strategies and plans; future product lines; product
24      profit margins, and customer requirements." (*Id.*, ¶ 77).

25      Therefore, this is not a situation where Mattel has alleged that the MGA
26   Parties stole a handful of documents.  The SAAC instead alleges that the MGA
27   Parties engaged in the wholesale theft of Mattel's trade secrets, including stealing
28   "virtually every type of document a competitor would need to enter the Mexican

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___P___     - 17 -     AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

PAGE __115__

1  market, and to unlawfully compete with Mattel in Mexico, in the United States and
2  elsewhere . . ." (*Id.*, ¶ 48).  Because Mattel alleges that its claims against the MGA
3  Parties relate to "a massive and pervasive theft of Mattel information," (Tr., 33:18-
4  19), including all of the documents that have been identified as the MATTEL
5  DOCUMENTS, Mattel is entitled to ask what the MGA Parties' contentions are
6  regarding whether or not those documents constitute trade secrets, particularly
7  given that such information is exclusively within the control of the MGA Parties.
8  As Mattel's counsel expressed at oral argument, Mattel is "going to go to trial
9  accusing MGA and the other defendants of stealing all of these documents . . . and
10  [the MGA Parties are] going to have to articulate what their contentions are with
11  respect to whether or not these are trade secrets . . ."   (Tr., 36:24-37:3; *see also id.*
12  81:9-10 [wherein Mattel's counsel states that these documents "are the ones that
13  Mattel is going to be proceeding to trial on."]).

14      Also, the MGA Parties' claim of undue burden does not take into account the
15  vast scope of this litigation to date.  (*Cf.* Opposition at p. 4 n. 1 [stating that Mattel
16  propounded 4,647 requests for admission, 2,889 requests for production, and 71
17  interrogatories in Phase 1]).  The MGA Parties do not provide any supporting
18  declaration or specific evidence to support their assertion of burden beyond their
19  statement that the term "MATTEL DOCUMENTS" refers to 8 boxes of documents.
20  For example, the MGA Parties have not provided the Discovery Master with details
21  regarding: (1) a time estimate as to how long it would take to respond to the
22  Interrogatories; (2) the anticipated costs of responding to the Interrogatories; (3) the
23  extent to which any facts that must be set forth in answering the Interrogatories are
24  voluminous; or (4) an estimate of the number of documents and/or persons that may
25  have knowledge of such responsive facts.  Therefore, the Discovery Master finds
26  that the MGA Parties have not met their burden of demonstrating that answering
27  //
28  //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT ___

PAGE ___

- 18 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    the requested interrogatories is overly burdensome.[16]  (*See Jackson v. Montgomery*

2    *Ward & Co., Inc.*, 173 F.R.D. 524, 528-9 (D.Nev. 1997) ["The party claiming that a

3    discovery request is unduly burdensome must allege specific facts which indicate

4    the nature and extent of the burden, usually by affidavit or other reliable

5    evidence."]).

6          While there is no specific evidence in the record demonstrating that the MGA

7    Parties will inevitably suffer an undue burden in responding to Interrogatory Nos.

8    56 and 58 – 63, the Discovery Master is nonetheless cognizant of the fact that a

9    demand for "all facts" relating to what could be thousands of different documents

10   could be construed by Mattel in a manner that could place an unreasonable burden

11   on the MGA Parties, particularly when that information is requested via a written

12   interrogatory.  The Discovery Master, thus, limits six of the interrogatories at

13   issue[17] and requires that the MGA Parties identify all facts, documents and

14   witnesses that they currently intend to rely on at summary judgment or trial to

15   demonstrate (i) they did not obtain any MATTEL DOCUMENTS through improper

16   means (i.e., Interrogatory No. 58), (ii) that the information in the MATTEL

17   documents did not derive independent economic value (i.e., Interrogatory No. 59),

18   (iii) any information in the MATTEL DOCUMENTS was known to the public,

19   (i.e., Interrogatory No. 60), (iv) the MGA Parties independently developed, or did

20   not otherwise use or disclose, any information in the MATTEL DOCUMENTS

21   (i.e., Interrogatory No. 61), (v) that the MGA Parties have not benefited by their use

22   of the information in the MATTEL DOCUMENTS nor harmed Mattel

23   (Interrogatory No. 62), and (vi) the MGA Parties had or have a right to copy,

24   possess, use or disclose any MATTEL DOCUMENT (Interrogatory No. 63).

25          The Discovery Master finds that this limitation is appropriate because Mattel

26

27   [16] The Discovery Master also notes that the MGA Parties did not provide any legal authority in support of their
     position on this issue. (Opposition, pp. 9 – 10).

28   [17] Interrogatory Nos. 56 and 57 must be answered as phrased.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _6_

PAGE _117_

- 19 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1  conceded in its Reply that it was not asking the MGA Parties "to provide

2  facts they have no knowledge of," [18] (Reply, p. 17), but rather wanted to assess the

3  "specific contentions Defendants may make regarding the [allegedly] stolen

4  documents," (*id.*, p. 17).  Mattel's counsel reiterated this position again at oral

5  argument, wherein he declared that Mattel was not necessarily interested in "a

6  parsing document by document," (Tr., 34:14-15), but instead "what [the MGA

7  Parties'] trial positions are going to be, before the jury is seated," (*id.*, p. 81:14-15).

8  **(2)    Purported Presuppositions Regarding**

9  **Interrogatory Nos. 56 and 58 – 63.**

10  The MGA Parties next assert that Interrogatory Nos. 60, 61 and 63 are

11  objectionable because they require the MGA Parties to presuppose that they are "in

12  possession of documents stolen or taken from Mattel by former employees – a fact

13  that MGA denies." (Opposition, p. 8).  The MGA Parties further assert that "each

14  of the interrogatories using the term 'MATTEL DOCUMENTS' [which includes

15  Interrogatory Nos. 56 and 58 – 63] requires MGA to assume . . . unfounded

16  assertions . . . which make the interrogatories unanswerable and incomprehensible."

17  (*Id.*, p. 9).  However, the MGA Parties cite no legal authority, and the Discovery

18  Master has found none, standing for the proposition that a party may refuse to

19  respond to an interrogatory merely because the interrogatory assumes a fact the

20  responding party disputes.

21  **(3)    Compound And Excessive Objections**

22  The MGA Parties next assert that Interrogatory Nos. 56 – 63 are

23  impermissibly compound and exceed the allotted number of interrogatories.

24  (Opposition, pp. 10 and 11).  Each of these contentions is unavailing.

25  As an initial matter, the MGA Parties did not object to Interrogatory Nos. 56

26  [18] Of course, if the MGA Parties subsequently wish to present other facts, witnesses or documents at summary

27  judgment or trial, they must supplement their response to these interrogatories accordingly and include the additional information. (*See* Fed. R. Civ. P. 26(e)(1) ["A party who has . . . responded to an interrogatory . . . must supplement

28  its . . . response[] in a timely manner if the party learns that in some material respect the . . . response is incomplete . . ."]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __4__

PAGE __118__

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

- 20 -

1    and 58 – 60 on the ground that they are compound.  Nor did they object to any of

2    the interrogatories as exceeding the allotted limit, except for Interrogatory No. 63.

3    Therefore, the MGA Parities waived any such objections to those interrogatories.

4    (*See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th

5    Cir. 1992) [stating that "failure to object to discovery requests within the time

6    period required constitutes a waiver of any objection."]).

7            As for the interrogatories where the objections were asserted, the MGA

8    Parties have not demonstrated that the interrogatories are compound or exceed the

9    allotted limit.  The fact that the interrogatories ask MGA to identify witnesses, facts

10   and documents related to the MATTEL DOCUMENTS does not render the

11   interrogatories compound because the questions in each interrogatory refer to one

12   common theme and count as a single interrogatory.  (*See Swackhammer v. Sprint*

13   *Corp. PCS*, 225 F.R.D. 658, 644 (D. Kan. 2004) ["[A]n interrogatory containing

14   subparts directed at eliciting details concerning a 'common theme' should generally

15   be considered a single question"]).  The prior discovery master applied this precise

16   rule in Phase 1, concluding that interrogatories "with subparts seeking facts

17   supporting a contention, the identity of persons with knowledge, and documents are

18   not counted separately for the purposes of applying the . . . interrogatory limit."

19   (Prior Discover Master Order dated September 15, 2007, pp. 5 – 7).

20                  **(4)    Establishing A Negative Proposition Objection**

21           As their final argument in opposing Interrogatory Nos. 56 – 63, the MGA

22   Parties assert that three of the interrogatories improperly ask them to establish a

23   negative proposition (i.e., Interrogatory Nos. 58, 59 and 62).  (Opposition, pp. 11 –

24   12).  The relevant question, however, is not whether an interrogatory may require a

25   party to prove a negative.  Rather, all of the cases cited by the parties concerning

26   this issue examine whether the interrogatory in question imposes an unreasonable

27   //

28   //

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __*G*__     - 21 -            AMENDED ORDER NO. 11
                                      [Case No. CV 04-09049 SGL (RNBx)]
PAGE __119__

1  burden on the responding party.[19]  For the reasons explained above, there has been

2  no showing by the MGA Parties that an undue burden exists here.  (*See* Opposition,

3  pp. 11 – 12).

### b.  Conclusion

4

5  For all of the foregoing reasons, the objections to Interrogatory Nos. 56 – 63

6  are overruled and Mattel's motion to compel responses to the interrogatories is

7  granted, subject to the limitations discussed above.

8  **3.  Interrogatory Nos. 67 – 69 Propounded On MGA And**

9  **Larian**

10  Mattel also propounded Interrogatory Nos. 67 – 69 on both MGA and Larian.

11  These interrogatories ask the MGA Parties to provide information regarding any

12  payments they may have made to former Mattel employees and any persons

13  identified in the parties' initial disclosures:

14  • Interrogatory No. 67: "IDENTIFY fully and separately each and every

15    payment of money or other item of value that YOU have made or

16    given, or any promise, agreement, proposal [o]r offer by YOU to pay

17    money or given any item of value, to or on behalf of any PERSON

18    identified in any of the parties' initial disclosures in this ACTION at

19    any time when such person was not an employee of MGA, including

20    without limitation with respect to legal fees incurred by or on behalf of

21    such PERSON."  (Separate Statement in Support of Written Discovery

22    Motion, p. 88).

23  • Interrogatory No. 68: "To the extent not disclosed in prior

24

_____

[19] The two cases cited by MGA in support of its argument (*Safeco of America v. Rawstron*, 181 F.R.D. 441, 447 -
25  448 (C.D.Cal.1998) and *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 662-663 (D.Kan.1996)), both
address the question of whether interrogatories are overly burdensome.  The same analysis is applied in the cases
26  cited by Mattel. (*See Dang v. Cross*, 2002 WL 432197, *4 (C.D. Cal. 2002) [affirming magistrate judge's holding
that interrogatories request "all facts" in support of a denial of a statement were not unduly burdensome]); *Tennison
27  v. San Francisco*, 226 F.R.D. 615, 618 (N.D. Cal. 2005) [concluding an interrogatory requiring plaintiff to provide all
facts supporting the denial of an allegation was not unduly burdensome]; *Chapman v. California Dep't of Education*,
28  2002 WL 32854376, *2 (N.D. Cal. 2002) [same]).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____

PAGE 120

- 22 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    Interrogatories, IDENTIFY fully and separately each and every

2    payment of money or other item of value that MGA has made, or any

3    promise, agreement, proposal or offer by MGA to pay money or given

4    any item of value, to or on behalf of any of the FORMER MATTEL

5    EMPLOYEES, including without limitation with respect to legal fees

6    incurred by or on behalf of any of the FORMER MATTEL

7    EMPLOYEES." (*Id.*, p. 91).

8    • Interrogatory No. 69: "To the extent not disclosed in prior

9    Interrogatories, IDENTIFY fully and separately each and every

10   payment of money or other item of value that YOU have made, or any

11   promise, agreement, proposal or offer by YOU to pay money or given

12   any item of value, since January 1, 1998 to or on behalf of any

13   PERSON who has been employed by MATTEL (excluding ordinary

14   salary and benefits paid to such PERSON while an MGA employee),

15   including without limitation with respect to legal fees incurred by or

16   on behalf of such PERSON and bonuses paid to such PERSON." (*Id.*,

17   p. 92).

18              **a.    Objections Of MGA And Larian**

19       In their Opposition, the MGA Parties rely on two basic grounds for refusing

20   to provide responses to these three interrogatories.  First, the MGA Parties argue

21   that the interrogatories are impermissibly compound and exceed the number of

22   allotted interrogatories.  (*Id.*, pp. 10 – 11).  Second, the MGA Parties argue that

23   interrogatories are overly broad.  (*Id.*, pp. 12 – 14).

24              **(1)    Compound And Excessive Objections**

25       Like their objections to Interrogatory Nos. 56 – 63, the MGA Parties contend

26   that Interrogatory Nos. 67 – 69 are impermissibly compound and exceed the

27   allotted number of interrogatories.  (Opposition, pp. 10 and 11).  But those

28   arguments are not persuasive for reasons discussed in Section I.B.2.a.3 above.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 12
PAGE 121

- 23 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

### (2)   Overly Broad Objection

The MGA Parties' second argument regarding Interrogatory Nos. 67 – 69 is that they are overly broad.  The MGA Parties complain that Interrogatory No. 67 is overbroad because it seeks information regarding payments by MGA to any persons identified in the initial disclosures, not just former Mattel employees.  (Opposition, pp. 12 – 13).

While a payment to a potential witness could be relevant to the issue of bias and, therefore, discoverable, (*See Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998) ["Rule 26 further permits the discovery of information which may simply relate to the credibility of a witness or other evidence in the case."]), the SAAC merely alleges that the MGA Parties bribed former Mattel employees — not every single witness in this case.  In the absence of an allegation suggesting that other witnesses may have been bribed, Interrogatory No. 67 is overly broad and not relevant at this time.[20]  Accordingly, Mattel's motion to compel a response to Interrogatory No. 67 is denied at this stage.

As for Interrogatory Nos. 68 and 69, the MGA Parties first argue that the "burden and expense of determining whether each individual contemplated by these interrogatories was ever paid by MGA . . . far outweighs the interrogatories' likely benefit."  (*Id.*, pp. 13 and 14).  Once again, however, the MGA Parties provide no evidence to support such a claim.  (*See Jackson,* 173 F.R.D. at 528-9 ["The party claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence."]).

The MGA Parties only remaining complaint is that Interrogatory No. 69 seeks information regarding payments to "or on behalf of" any person who has been

---

[20] Mattel's request for information regarding payments by the MGA Parties to all individuals identified in the parties' initial disclosures presumably extends to all former Mattel employees identified therein as well.  To the extent Interrogatory No. 67 seeks such information, it is plainly relevant to Mattel's Phase 2 claims.  Nevertheless, the Discovery Master denies Mattel's motion to compel a response to Interrogatory No. 67 in its entirety because any payments by the MGA Parties to former Mattel employees is duplicative of Interrogatory Nos. 68 and/or 69.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____

PAGE _____

- 24 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1  employed by Mattel and that Interrogatory No. 68 defines FORMER MATTEL

2  EMPLOYEES as including specific individuals as well as each such person's

3  "current or former employees, agents, representatives, attorneys, accountants,

4  vendors, consultants, independent contractors, predecessors-in-interest and

5  successors-in-interest, and any other Person acting on [his or her] behalf, pursuant

6  to [his or her] authority or subject to [his or her] control." (Opposition, p. 13).

7  While they assert these definitional objections, counsel for the MGA Parties

8  nevertheless conceded at oral argument that to the extent "MGA paid . . . former

9  Mattel employees, for other than their salary as MGA employees, I think that is a

10  fair inquiry." (Tr., 63:17-20; *id.*, 61:21 - 64:4).

11      Therefore, the Discovery Master orders the MGA Parties to identify fully and

12  separately each and every payment of money or other item of value that they have

13  made or offered to pay to or on behalf of any "former employee of Mattel" since

14  January 1, 1998 but limits the definition of former Mattel employees to "all

15  individuals that the MGA Parties are aware of that worked for Mattel and who

16  received any payment (excluding ordinary salary and benefits paid to such person

17  while an MGA employee) from the MGA Parties."[21]

18                    **b.    Conclusion**

19      For all of the foregoing reasons, Mattel's motion to compel is denied with

20  respect to Interrogatory No. 67.  Regarding Interrogatory Nos. 68 and 69, Mattel's

21  motion to compel responses to the interrogatories is granted, subject to the

22  limitations discussed above.

23      **C.    Summary Of Ruling Regarding The Written Discovery Motion**

24      Mattel's Written Discovery Motion is **DENIED in part** and **GRANTED in**

25  **part.**

26  _____

27  [21] While Interrogatory Nos. 68 and 69 both seek information regarding payments made by the MGA Parties to former
    Mattel employees for "legal fees," the MGA Parties did not argue in their Opposition or at oral argument that such a
    request is improper for that specific reason, but instead merely relied on the definitional argument discussed above.

28  Accordingly, the Discovery Master does not need to resolve that particular issue.


- 25 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

## II.    MATTEL'S DEPOSITION MOTION

### A.    Introduction

As indicated above, the Deposition Motion addresses the motion of Mattel to compel the depositions of Pablo Vargas San Jose ("Vargas") and Mariana Trueba Almada ("Trueba") (collectively, the "Witnesses").

#### 1.    Background

The Witnesses are former employees of Mattel in Mexico[22] who, along with another former Mattel manager and named defendant, Carlos Gustavo Machado Gomez ("Machado") left Mattel to establish and run MGA's newly formed Mexico operation, defendant MGA De Mexico ("MGA Mex"), in 2004.  Mattel alleges that Machado and the Witnesses stole Mattel trade secrets.

The Witnesses are Mexican nationals who reside in Mexico, where MGA Mex has its principal place of business.  Vargas currently serves as the Director of Sales for MGA Mex.  In that capacity, he supervises approximately 8 or 9 employees and reports to Susan Kuemmerle ("Kuemmerle"), the Vice President of MGA Mex.  Trueba currently serves as the Marketing Manager of Special Projects for MGA Mex.  She does not manage or supervise any employees of MGA Mex. Trueba reports directly to Machado, who is MGA Mex's Director of Marketing. Machado, in turn, reports to Kuemmerle.

#### 2.    Procedural History

On January 10, 2008, Mattel served deposition notices pursuant to Federal Rule of Civil Procedure 30(b)(1) setting the depositions of Vargas and Trueba for January 24, 2008 in Los Angeles.  In response, MGA and its affiliated parties to this action (the "MGA Defendants") asserted that neither of the Witnesses is a "managing agent," and therefore Mattel must subpoena the Witnesses.  On January 28, 2008, Mattel filed an *ex parte* application to compel the depositions of

---

[22] Vargas was the Senior Marketing Manager, Boys Division, for Mattel Mexico and Trueba was the Senior Marketing Manager, Girls Division, for Mattel Mexico.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _____

PAGE 124

- 26 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    the Witnesses (as well as others). Mattel's application was stayed with other Phase

2    2 discovery and then denied without prejudice on September 23, 2008. After the

3    Court lifted the stay on Phase 2 discovery on January 6, 2009, Mattel noticed the

4    depositions of Vargas on January 27, 2009 and of Trueba on January 28, 2009.

5    Once again, the MGA Defendants objected on the ground that neither of the

6    Witnesses is an officer, director or managing agent of MGA Mex. After the parties

7    were unable to resolve their dispute, Mattel filed the Deposition Motion.

8         **B.    Discussion**

9         Mattel argues that (1) the Witnesses are directors and/or managing agents of

10   MGA Mex, and (2) that MGA Mex must produce them for deposition in Los

11   Angeles. Mattel also seeks sanctions on the ground that the MGA Defendants are

12   acting in bad faith and without justification to frustrate Mattel's legitimate

13   discovery rights. In response, the MGA Defendants argue that (1) the Witnesses

14   are merely mid-level employees who cannot be deemed to act for MGA Mex, and

15   (2) even if the Witnesses could be deposed pursuant to Federal Rule of Civil

16   Procedure 30(b) ("Rule 30(b)"), the depositions must be conducted in Mexico. The

17   MGA Defendants seek sanctions against Mattel, contending that Mattel failed to

18   adequately meet and confer with one of the attorneys for MGA Mex, Amman Khan

19   ("Khan") and then served a redacted version of the Deposition Motion on a

20   different attorney for the MGA Defendants, Patricia Glaser ("Glaser") while she

21   was out of town.[23] According to MGA Mex, Mattel only served a complete,

22   unredacted copy of the Deposition Motion on counsel for the MGA Defendants two

23   days before the deadline for the Opposition.

24        **1.    Legal Standard**

25        If a corporation is a party to an action, any other party may take the

26   deposition of that corporation by identifying a specific officer, director, or

27

---

28   [23] Both Khan and Glaser are partners at Glaser Weil, Phase 2 attorneys of record for the MGA Defendants, including MGA Mex.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __12__  - 27 -

PAGE __125__

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1  managing agent to be deposed and noticing that person's deposition under Rule

2  30(b)(1).  Notice alone is enough to compel the managing agent to attend the

3  deposition.  (*JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. &*

4  *Trade Services, Inc.*, 220 F.R.D. 235, 237 (S.D.N.Y. 2004)).  For purposes of

5  compelling a corporate officer's deposition, courts do not recognize a distinction

6  between an "apex" official or director and other high corporate officials.  (*Resort*

7  *Properties of America v. El-Ad Properties N.Y. LLC*, 2008 WL 2741131 at *2 (D.

8  Nev. July, 10 2008) citing Fed. R. Civ. Proc. 37(d) advisory committee's notes

9  ["There is slight warrant for the present distinction between officers and managing

10  agents on the one hand and directors on the other."]).

11       The case law provides somewhat ambiguous guidance with respect to the

12  burden of proof for demonstrating managing agent status.  Generally, the burden is

13  on the discovering party to establish the status of the witness.  (See *Sugarhill*

14  *Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985);

15  *Proseus v. Anchor Line, Ltd.*, 26 F.R.D. 165, 167 (S.D.N.Y.1960)).  At the same

16  time, however (and as Mattel points out in its papers), courts resolve doubts in

17  favor of the examining party, at least during the discovery phase.  (See *Sugarhill*,

18  105 F.R.D. at 171; *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 97

19  (S.D.N.Y.1968)).  "Thus, it appears that the examining party has the burden of

20  providing enough evidence to show that it is at least a close question whether the

21  proposed deponent is a managing agent."  (*United States of America v. Afram Lines*

22  *(USA) Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)).

23       The identification of a managing agent in any given case is fact-sensitive.

24  "[B]ecause of the vast variety of factual circumstances to which the concept must

25  be applied, the standard . . . remains a functional one to be determined largely on a

26  case-by-case basis."  (*Founding Church of Scientology of Washington, D.C., Inc. v.*

27  *Webster*, 802 F.2d 1448, 1452 (D.C.Cir. 1986) (citation omitted)).  "Thus, 'the

28  question of whether a particular person is a 'managing agent' is to be answered

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 12

PAGE 126

- 28 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   pragmatically on an ad hoc basis . . . .'" (*Afram Lines*, 159 F.R.D. at 413 quoting 8

2   C. Wright & A. Miller, *Federal Practice and Procedure* § 2103, at 376 (1970) and

3   citing 4A *Moore's Federal Practice* ¶ 30.51, at 30-47 to 30-48 (1994)).  Whether a

4   proposed deponent falls into a particular category of employee or agent is therefore

5   less relevant than the individual's specific functions and authority.

6        As both parties acknowledge, federal courts have formulated a set of factors

7   to assist in determining whether person is a party's "managing agent," and therefore

8   subject to deposition under Rule 30(b)(1):

9        1)    whether the individual is invested with general powers allowing him to

10              exercise judgment and discretion in corporate matters;

11       2)    whether the individual can be relied upon to give testimony, at his

12             employer's request, in response to the demands of the examining

13             party;

14       3)    whether any person or persons are employed by the corporate

15             employer in positions of higher authority than the individual

16             designated in the area regarding which the information is sought by the

17             examination;

18       4)    the general responsibilities of the individual "respecting the matters

19             involved in the litigation;" and

20       5)    whether the individual can be expected to identify with the interests of

21             the corporation.

22   (*Sugarhill*, 105 F.R.D. at 170).

23       According to Mattel, the most important of these factors is "whether the

24   witness can be expected to identify with the employer corporation's interest as

25   opposed to an adversary's." (Deposition Motion, p. 12, quoting *In re Honda*

26   *American Motor Co.*, 168 F.R.D. 535, 541 (D. Md. 1996)).  Applying that test,

27   Mattel argues that the Witnesses are presumptively loyal to MGA Mex, given that

28   they helped to found the company and part of the "tight" group that manages its

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __16__

PAGE __737__

- 29 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    day-to-day operations. (Deposition Motion, p. 13). Accordingly (Mattel reasons),

2    the Witnesses are managing agents of MGA Mex.

3        Mattel's emphasis on the employee's loyalty as the main test for determining

4    his or her status is unwarranted. Federal courts have effectively challenged the

5    notion that the employee's loyalty to the employer is entitled to special weight.

6    (*Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 350 (N.D.Oh. 1999)). As the

7    *Libbey Glass* court explained, that view "overstates the role of the deponent's . . .

8    apparent fidelity to the principal's interests, because it would apply to many agents

9    and employees who do not function with the degree of authority over a company's

10   affairs connoted by the term 'managing' agent." (*Id.,* at 350). Moreover, the

11   *Libbey Glass* court demonstrated that the approach followed in *Honda* is based on a

12   rationale that no longer applies. Specifically, the court traced the rule to *Newark*

13   *Ins. Co. v. Sartain*, 20 F.R.D. 583, 586 (N.D. Cal. 1957), which sets forth the

14   analytical underpinning of the "loyalty" factor.

15       In that case, the court was concerned with the evidentiary problem facing a

16   litigant seeking to obtain and use the testimony of an adversary corporation's most

17   senior employees. Under the then-existing rule, a litigant could not call such an

18   employee to testify at trial in his or her individual capacity without waiving the

19   right to impeach the witness. This presented a problem for the party seeking to

20   elicit the testimony, because, as the court reasoned, a corporation's ranking

21   employee having possession of pertinent information will always "give his

22   testimony in the light most favorable to the principal," but would, at the same time,

23   be immune from impeachment at trial. (*Id.*) On that basis, the court concluded that

24   an adversary should be able to obtain such testimony from the employee in his or

25   her capacity as the representative of the corporation (who could, therefore, be

26   subject to impeachment).

27       However, as the court in *Libbey Glass* noted, the concerns expressed in

28   *Newark Ins.* were rendered moot by the enactment of Federal Rule of Evidence 607

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __12__

PAGE 128

- 30 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    ("Rule 607").[24]   Under that rule, a party may take the deposition of a senior

2    employee of an adversary corporation in his individual capacity and may

3    nonetheless still seek to impeach that testimony.  In other words, characterizing a

4    particular witness as a "managing agent" no longer provides any substantive

5    advantage to the deposing party, only procedural advantages (i.e., the ability to take

6    the deposition without a subpoena).

7         Having discarded the notion that the witness' loyalty to his employer is the

8    main factor to be considered in ascertaining his status as a managing agent, the

9    court in *Libbey Glass* instead focused on "the nature of the deponent's activities on

10   behalf of the corporation, rather than his loyalty to its interests." (*Libbey Glass,*

11   197 F.R.D. at 350).  The court reasoned:

12        For the purpose of determining whether an individual is a

13        'managing agent' within the meaning of the discovery rules, the

14        alter ego theory provides a useful analogy.  As in the arena of

15        corporate liability, the focus begins with the character of the

16        individual's control.  In addition, we can profitably examine both

17        the degree to which the interests of the individual and the

18        corporation converge, and how helpful the individual will be in

19        fact finding on the matter at issue, in comparison to others

20        associated with the corporation.  As in all matters appertaining to

21        discovery, it is the ends of justice that are to be served.

22   (*Id.*, quoting *Founding Church of Scientology of Washington, D.C., Inc. v. Webster,*

23   802 F.2d 1448, 1453 (D.C. Cir. 1986)).  The Discovery Master finds that the

24   analysis set forth in *Libbey Glass* and the authorities cited therein to be the most

25   practical and well-reasoned test for determining whether the Witnesses are

26   managing agents of MGA Mex, and applies that test below.

27

28   [24] Rule 607 provides "The credibility of a witness may be attacked by any party, including the party calling the witness."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT  *6*
PAGE  *129*

- 31 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    **2.    Analysis Of The Witnesses' Job Functions And Managerial**

2         **Authority**

3              **a.    The Nature Of The Witnesses' Activities On Behalf**

4                   **Of, And Control Over, MGA Mex.**

5         In accordance with the approach outlined in *Libbey Glass*, the Discovery

6    Master begins his analysis by examining the Witnesses' activities on behalf of, and

7    managerial control over the operations of, MGA Mex.

8         Mattel relies heavily on documentary evidence regarding the role of

9    Machado and the Witnesses in establishing MGA Mex in 2004, but the Discovery

10   Master finds that this evidence, which is limited to events that occurred five years

11   ago, to be only minimally probative of the *current scope* of the Witnesses' activities

12   and authority.[25]  The only evidence presented by the parties concerning the

13   Witnesses' current role in the company is the testimony of Kuemmerle.  That

14   testimony derives from three sources:  (1) her declaration filed on February 27,

15   2007 ("First Kuemmerle Decl.") (attached as Exh. 12 to Zeller Decl.); (2) her

16   deposition testimony on January 28, 2008 ("Kuemmerle Tr.") (attached as Exh. 9 to

17   Zeller Decl.); and (3) her declaration filed on February 12, 2009 in support of the

18   Opposition to the Deposition Motion ("Second Kuemmerle Decl.").

19        The relevant portion of Kuemmerle's first declaration is Paragraph 6, which

20   states in its entirety:

21              All of the day to day operations of MGA Mexico are managed

22              locally in Mexico.  For example, MGA Mexico's Finance

23              Director, Sales Director and Marketing Director are all based in

24              Mexico and all of the marketing and finance functions are

25              handled in Mexico.

26   (First Kuemmerle Decl., ¶ 6).

27

28   ---

[25] As counsel for the MGA Defendants noted at oral argument, the critical question is "when do we look at this question as to whether these [Witnesses] are managing agents?  And the answer, of course, is now."  (Tr., 21:14-16).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT *12*       - 32 -       AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]
PAGE 130

1   There are two main excerpts from Kuemmerle's deposition transcript cited

2   by Mattel in support of its Deposition Motion. In the first, Kuemmerle testifies that

3   pricing for the products sold by MGA Mex is set by means of a "combined team

4   effort" among a group that counsel refers to as "the four of you." (Kuemmerle Tr.,

5   p. 91:8 – 14, [Exh. 9 to Zeller Decl., p. 154]).[26] Kuemmerle testifies that these

6   individuals (which apparently include the Witnesses) continue to set the pricing of

7   MGA Mex products in the same manner to this day. (Id.).

8   Second, Mattel relies on a passage of Kuemmerle's deposition in which she

9   testified that, at the time the Witnesses joined MGA Mex in 2004, "we were so

10  tight of a group, not enough employees, that we were all forced to multitask."

11  (Kuemmerle Tr., p. 135:24 - 136:1, [Exh. 9 to Zeller Decl., pp. 169 - 170]).

12  In her second declaration, Kuemmerle testifies regarding the chain of

13  command at MGA Mex. Specifically, she testifies that Vargas reports directly to

14  her and that Trueba reports to Machado, who in turn reports to Kuemmerle.

15  (Second Kuemmerle Decl., ¶¶ 3 – 4). Kuemmerle is entirely silent regarding the

16  functions performed by, or general authority exercised by, either of the Witnesses.

17  Instead, she simply states that Ms. Trueba "does not manage or supervise anyone at

18  all at MGA De Mexico." (Id., ¶ 4). Kuemmerle does not state whether Vargas

19  supervises anyone. (Id., ¶ 3).

20  In the absence of any evidence directly addressing the Witnesses' current

21  role in MGA Mex, Mattel asks the Discovery Master to infer that the Witnesses are

22  managing agents based on the Witnesses' job titles and past participation in the

23  "tight group" that made operational decisions for the fledgling company several

24  years ago. However, such an inference is not supported by the scant evidence

25  before the Discovery Master. For instance, the Discovery Master cannot attribute

26

27  [26] None of the prior passages of the deposition transcript provided by Mattel reflect the individuals to whom counsel is referring. However, later, counsel asks Kuemmerle a question beginning with "When you and Mr. Machado and Mr. Vargas and Ms. Trueba were determining the prices for MGA products . . . " (Kuemmerle Tr., p. 93:2 – 6 [Exh. 9 to Zeller Decl., p. 156]).

28

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 10
PAGE 131

- 33 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1  such status to Trueba, who supervises no employees, and whose scope of

2  responsibility is circumscribed to public relations.[27]

3      Likewise, although Mattel emphasizes that Vargas supervises approximately

4  8 or 9 MGA Mex employees (Kuemmerle Tr., p. 97:5 – 11, [Exh. 9 to Zeller Decl.,

5  p. 159]), that fact, alone, is ambiguous at best, because Mattel does not provide the

6  necessary context by identifying the number of total MGA Mex employees.  If, for

7  instance, MGA Mex employs 100 persons, then Vargas' oversight of 8 or 9

8  employees would tend to indicate he does not have such authority.[28]  Because the

9  necessary contextual information is not provided, the Discovery Master is unable to

10  assess the significance (if any) of the evidence that is provided regarding Vargas'

11  current role at MGA Mex.

12      In sum, the evidence currently before the Discovery Master is insufficient to

13  allow him to determine that the Witnesses' functions on behalf of, and control over,

14  MGA Mex is such that they can be deemed its "managing agents."

15                    **b.    Other Factors**

16      Since there is virtually no evidence addressing the critical factor governing

17  whether the Witnesses are managing agents of their employer (see Section II.B.2.a,

18  above), the five factors enumerated by the *Sugarhill* Court have marginal relevance,

19  at best.  Even if all those factors were satisfied – which they are not – the record

20  would still be insufficient to enforce the deposition notices at issue here.  However,

21  in order to create a complete record and to address the arguments made by the

22  parties, the Discovery Master nonetheless briefly discusses those factors below.

23      As set forth above, the first factor identified by the *Sugarhill* Court bearing

24  _____

[27] Mattel also argues that the Discovery Master should infer that Ms. Trueba is a managing agent because she
25  submitted a declaration on behalf of MGA Mex two years ago (April 11, 2007) in connection with its motion to
dismiss for lack of personal jurisdiction in which she identified her job title as "Director of Marketing."  (Deposition
26  Motion, p. 4 fn. 4 and Exh. A to Suppl. Zeller Decl.).

[28] At oral argument, Mattel's counsel asserted that MGA Mex presently employs 34 or 35 individuals, (Tr., pp. 15 –
27  16), but there is no admissible evidence before the Discovery Master to support such an assertion.  Further, such a
contention (if true) merely demonstrates that Vargas supervises, at most, approximately 25 percent of the employees
28  at MGA Mex, and is insufficient to show that he can be deemed its "managing agent."

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT 12
PAGE 132                          - 34 -           AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1   on the issue of whether an employee is a managing agent is whether he or she "is

2   invested with *general* powers allowing him to exercise judgment and discretion in

3   corporate matters." (*Sugarhill*, 105 F.R.D. at 170 [emphasis added]). Here, the

4   current scope of Trueba's authority appears to be the opposite of "general:" she is

5   responsible for handling media and public relations. (Kuemmerle Tr., p. 97:14 − 15

6   attached as Exh. 9 to Kahn Decl.). Likewise, Vargas' authority, although somewhat

7   broader than that of Trueba, appears to be confined primarily to sales. (Second

8   Kuemmerle Decl., ¶ 3). There is no evidence that either of the Witnesses has any

9   authority over such things as internal administrative functions, budgeting, contracts

10  with vendors, and various other aspects of running a business.

11      The second *Sugarhill* factor (whether the individual can be relied upon to

12  give testimony at the employer's request) is satisfied, since the Witnesses are

13  current employees of MGA Mex who will presumably cooperate in their

14  employer's defense of Mattel's counterclaims by providing testimony at a

15  deposition.

16      Turning to the third *Sugarhill* factor (whether there are other MGA Mex

17  employees in positions of higher authority than the Witnesses in the area regarding

18  which the information is sought), the Discovery Master finds that the undisputed

19  testimony of Kuemmerle demonstrates that there are such MGA Mex employees:

20  Kuemmerle supervises Vargas and (through Machado) Trueba. (Second

21  Kuemmerle Decl., ¶¶ 3 and 4). Accordingly, this factor weighs against finding that

22  the Witnesses are "managing agents."

23      With respect to fourth factor (the general responsibilities of the Witnesses

24  respecting the matters involved in the litigation), Mattel's papers demonstrate that

25  the Witnesses do oversee aspects of MGA Mex which are directly addressed by

26  Mattel's Phase 2 counterclaims, namely sales and public relations (which, Mattel

27  contends, MGA Mex conducts using stolen Mattel trade secrets). (Deposition

28  Motion, pp. 4 − 7). Accordingly, this factor weighs in favor of deeming the

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _12_

PAGE 133

- 35 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1    Witnesses to be managing agents.

2            The last factor is the "loyalty" inquiry discussed above, namely whether the

3    Witnesses can be expected to identify with the interests of MGA Mex.  Because

4    they are being subjected to investigation in Mexico, have their own lawyers and the

5    MGA Defendants may take the position that if any Mattel documents were taken,

6    the Witnesses did it on their own, Vargas and Trueba's interests do not necessarily

7    align with the MGA Defendants in this matter.  It is unclear on this record whether

8    this factor weighs in favor of or against deeming the Witnesses to be managing

9    agents.

10       **C.      Summary Of The Discovery Master's Findings In Connection**

11                **With The Deposition Motion**

12           At this stage, Mattel has not met its initial burden to demonstrate that the

13   Witnesses are managing agents of MGA Mex.  The presumption in favor of the

14   party seeking discovery only applies (as Mattel itself acknowledges) in *close* cases.

15   (*Honda*, 168 F.R.D. at 540).  Given the current state of the evidence presented, this

16   is not such a case.[29]

17           Nevertheless, it is clear to the Discovery Master that the Witnesses have

18   information relating to several Phase 2 issues and that Mattel is entitled to take their

19   depositions.[30]  Accordingly, Mattel may promptly prepare letters rogatory and

20   submit them to the Discovery Master, who will see that the letters rogatory are

21   expeditiously issued by the Court.

22       **D.      Sanctions**

23                **1.      Mattel's Request For Sanctions**

24           Having found that the MGA Defendants have articulated a meritorious legal

---

[29] In light of the Discovery Master's finding that the Witnesses are not managing agents of MGA Mex, it is unnecessary for him to reach the question of where the depositions may be taken.

[30] The Discovery Master would not hesitate to enforce subpoenas propounded on the Witnesses if they resided in the United States and were being deposed in their individual capacities.  However, since they are foreign nationals who are not managing agents of MGA Mex (at least on the evidence presented), the Discovery Master does not have authority to compel the depositions under Rule 30(b)(1).

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __12__

PAGE __134__

- 36 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1 | and factual basis for their objections to the subject deposition notices, the Discovery
2 | Master concludes that the refusal of the MGA Defendants to produce the Witnesses
3 | was justified.  Accordingly, Mattel's request for sanctions is **DENIED**.

### 2. The MGA Defendants' Request For Sanctions

5 |     The MGA Defendants request an award of sanctions against Mattel for
6 | conduct related to Mattel's service of the Deposition Motion.  First, the MGA
7 | Defendants contend that Mattel should have served the Deposition Motion on
8 | Amman A. Kahn ("Kahn"), the main attorney at Glaser Weil with whom Mattel's
9 | counsel had been communicating regarding the subject depositions.  The MGA
10 | Defendants complain that, instead of doing so, Mattel served the Deposition Motion
11 | on Kahn's colleague, Glaser, while the latter was out of town.  However, the MGA
12 | Defendants do not explain why other attorneys in their office who were assigned to
13 | the matter were not notified of the delivery of the Deposition Motion given Ms.
14 | Glaser's absence.  Further, Mattel has submitted the declaration of its counsel,
15 | Michael T. Zeller ("Zeller") attaching a proof of service reflecting that Mattel
16 | served the Deposition Motion on all three law firms representing the MGA
17 | Defendants at the same time (February 6, 2009) that the motion was filed.  (See
18 | Suppl. Zeller Decl., Exh. E).

19 |     Second, the MGA Defendants argue that Mattel only served a redacted
20 | version of the Deposition Motion on them at some later point, leaving them only
21 | two days to draft and file opposing papers, and refused Kahn's request for a
22 | reasonable extension of time.  (Kahn Decl., ¶¶ 3 - 4).  However, the Kahn Decl. is
23 | vague regarding the date and manner in which Mattel is alleged to have belatedly
24 | served the unredacted version of the Deposition Motion, (*id.*), and so the Discovery
25 | Master is unable to ascertain whether Kahn's belated receipt of the motion was
26 | caused by some conduct of Mattel, or instead, caused by internal delays within
27 | Glaser Weil in routing the papers to the appropriate attorney.

28 |     Accordingly, the MGA Defendants' request for sanctions is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES



EXHIBIT _14_

PAGE _135_

- 37 -

1   **III.   DISPOSITION**

2       A.    Mattel's Written Discovery Motion is **DENIED in part** and

3   **GRANTED in part,** as follows:

4       1.    Document Request Nos. 207, 208 and 269 directed to Larian:  The

5   Motion is **GRANTED**.  All non-privileged documents, responsive to these

6   document requests shall be produced by Larian within 30 days of the original Order

7   No. 11, subject to any applicable confidentiality designations available under the

8   Protective Order.

9           2.    Document Request Nos. 4 – 37, 40, 41, 43 (erroneously

10  numbered in Mattel's Separate Statement as request number 42), 44 (erroneously

11  numbered in Mattel's Separate Statement as request number 43), 45 (erroneously

12  numbered in Mattel's Separate Statement as request number 44), and 46

13  (erroneously numbered in Mattel's Separate Statement as request number 45)

14  directed to MGA:  The Motion is **GRANTED**.  All non-privileged documents,

15  responsive to these document requests shall be produced by MGA within 30 days

16  of the original Order No. 11, subject to any applicable confidentiality designations

17  available under the Protective Order.

18          3.    Interrogatory No. 45 directed to MGA:  The Motion is

19  **GRANTED**.  MGA's response to this interrogatory shall be served within 30 days

20  of the original Order No. 11, subject to any applicable confidentiality designations

21  available under the Protective Order.

22          4.    Interrogatory Nos. 56 – 63 directed to MGA and Larian:

23              a.    The Motion is **GRANTED** with respect to Interrogatory

24  Nos. 56 and 57.

25              b.    Regarding Interrogatory Nos. 58 – 63, the Motion is

26  **GRANTED** subject to the following limitations:  The Discovery Master orders the

27  MGA Parties to identify all facts, documents or witnesses that they currently intend

28  to rely on at summary judgment or trial to demonstrate (i) they did not obtain any

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT _10_      - 38 -     AMENDED ORDER NO. 11
PAGE _136_                  [Case No. CV 04-09049 SGL (RNBx)]

1   MATTEL DOCUMENTS through improper means (i.e., Interrogatory No. 58),

2   (ii) that the information in the MATTEL documents did not derive independent

3   economic value (i.e., Interrogatory No. 59), (iii) any information in the MATTEL

4   DOCUMENTS was known to the public, (i.e., Interrogatory No. 60), (iv) the MGA

5   Parties independently developed, or did not otherwise use or disclose, any

6   information in the MATTEL DOCUMENTS (i.e., Interrogatory No. 61), (v) that

7   the MGA Parties have not benefited by their use of the information in the MATTEL

8   DOCUMENTS nor harmed Mattel (Interrogatory No. 62), and (vi) the MGA

9   Parties had or have a right to copy, possess, use or disclose any MATTEL

10  DOCUMENT (Interrogatory No. 63).

11              c.      The MGA Parties responses to interrogatories numbered

12  56 – 63 shall be served within 30 days of the original Order No. 11, subject to any

13  applicable confidentiality designations available under the Protective Order.

14        5.     Interrogatory No. 67 directed to MGA and Larian:  The Motion

15  is **DENIED**.

16        6.     Regarding Interrogatory Nos. 68 and 69 directed to MGA and

17  Larian, the Motion is **GRANTED** subject to the following limitations:  The MGA

18  Parties are ordered to identify fully and separately each and every payment of

19  money or other item of value that they have made or offered to pay to or on behalf

20  of any former employee of Mattel since January 1, 1998, with the definition of

21  former Mattel employees re-defined as "all individuals that the MGA Parties are

22  aware of that worked for Mattel and who received any payment (excluding ordinary

23  salary and benefits paid to such person while an MGA employee) from the MGA

24  Parties."  The MGA Parties responses to these interrogatories shall be served within

25  30 days of the original Order No. 11, subject to any applicable confidentiality

26  designations available under the Protective Order.

27      **B.**    Mattel's Deposition Motion:

28        1.     Mattel's Deposition Motion is **DENIED**.

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

EXHIBIT __4__

PAGE __137__

- 39 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

1        2.     Mattel's request for sanctions is **DENIED**.

2        3.     The MGA Defendants' request for sanctions is **DENIED**.

3

4   Dated: March 31, 2009

5

6                           By:     /s/ Robert C. O'Brien

7                                  ROBERT C. O'BRIEN
Discovery Master

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 6
PAGE 138

- 40 -

AMENDED ORDER NO. 11
[Case No. CV 04-09049 SGL (RNBx)]

EXHIBIT 7

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11 | CARTER BRYANT, an individual,        | CASE NO. CV 04-9049 SGL (RNBx)

12 |          Plaintiff,

13 |                                       | SECOND NOTICE OF DEPOSITION
   |                                       | OF MGA ENTERTAINMENT, INC.
14 |     vs.                              | PURSUANT TO FEDERAL RULE OF
   |                                       | CIVIL PROCEDURE 30(B)(6)
15 | MATTEL, INC., a Delaware
16 | corporation,                         | Discovery Cut-off:  None Set
   |          Defendant.                  | Pre-trial Conference:  None Set
17 |                                       | Trial Date:  None Set

18 | AND CONSOLIDATED ACTIONS

19

20

21

22

23

24

25

26

27

28

07209/2048031.1

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2            PLEASE TAKE NOTICE that on February 15, 2007 beginning on 9:30

3   a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant

4   MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges

5   LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017.  Pursuant to Fed. R.

6   Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers,

7   directors, managing agents or other persons who consent to testify on its behalf

8   concerning each of the topics set forth in Exhibit A hereto.

9            PLEASE TAKE FURTHER NOTICE that the deposition will take place

10   before a duly authorized notary public or other officer authorized to administer oaths at

11   depositions, and will continue from day to day, Sundays, Saturdays and legal holidays

12   excepted, until completed.

13            PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

14   P. 30(b)(2), the deposition will be videotaped.

15   DATED: February 1, 2007         QUINN EMANUEL URQUHART OLIVER &
                                      HEDGES, LLP
16

17

18                                    By _____
                                        Michael T. Zeller
19                                      Attorneys for Mattel, Inc.

20

21

22

23

24

25

26

27

28

07209/2048031

**Exhibit A**

EXHIBIT 7
PAGE 141

**EXHIBIT A**

1.    "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.    "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.    "BRATZ" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also, previously or subsequently called) and any product or doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product or doll or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each EMBODIMENT of such doll or any portion thereof.  As used herein, "product or doll or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.

4.    "DESIGN" or "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the

07209/2048031.

EXHIBIT 7

PAGE 142

foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

5.    "EMBODIMENT" means any representation, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

6.    The DRAWINGS means those documents produced as Bates Nos. MGA000053-57,    MGA000392-395,    MGA000435-439,    MGA000455-481 MGA004606,  MGA004608,  MGA004640,  MGA005065,  MGA006423-6426, MGA006432-6436, MGA006438-06440, MGA006442-6467, and SL00016-45.

7.    "BASED ON" means copied or reproduced from, substantially similar to, based on or derived from in any manner, whether in whole or in part.

8.    "CREATED" means produced, prepared, created, authored, conceived of or reduced to practice, whether in whole or in part and whether alone or jointly with others.

9.    "IDENTIFY" or "IDENTITY" means the following:

(a)    With reference to an individual, means such individual's name, current or last known business title, current or last known business affiliation, current or last known relationship to YOU, current or last known residential and business address, and current or last known telephone number.

(b)    With reference to an entity or governmental organization, means such entity's or organization's name, present or last-known address, and present

or last-known telephone number and the IDENTITY of each individual who has served or participated as a contact for or on behalf of such entity or organization.

(c)     With reference to an EMBODIMENT, means the IDENTITY of the individual author(s) or creator(s) of the EMBODIMENT as well as of each other individual who contributed in any manner to the EMBODIMENT; the form, material and medium of the EMBODIMENT (*e.g.*, preliminary three-dimensional resin sculpture, final three-dimensional wax sculpture, digitized file of final three-dimensional wax sculpture, two-dimensional design drawing on paper); each title or name of the EMBODIMENT; the start and end date(s) of the EMBODIMENT's creation or preparation; and the current location of the EMBODIMENT.

10.     "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

11.     "ACTION" shall mean this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

12.     "DIGITAL INFORMATION" shall mean any information created or stored digitally, including but not limited to electronically, magnetically or optically.

13.     "SYSTEM" or "SYSTEMS" shall mean any computer or network of computers or other network devices that allow a two or more computers to share information and equipment, including but not limited to local area networks, wide area networks, storage area networks, client-server networks or peer-to-peer networks. The

-4-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT 7

PAGE 144

1  use of the term "SYSTEM" or "SYSTEMS" shall also include the brand, model
2  number, technical specifications, and capacities of the computers who are part of each
3  such SYSTEM.

4      14.   "REFER OR RELATE TO" means constituting, embodying,
5  containing, referring to, commenting on, evidencing, regarding, discussing, describing,
6  mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting,
7  negating, revoking or otherwise relating to in any manner.

8      15.   "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as
9  those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and
10 Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings
11 and records of every type and description including, but not limited to, contracts,
12 agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"),
13 records of telephone conversations, handwritten and typewritten notes of any kind,
14 statements, reports, minutes, recordings, transcripts and summaries of meetings, voice
15 recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and
16 records of all types, studies, instruction manuals, policy manuals and statements, books,
17 pamphlets, invoices, canceled checks and every other device or medium by which or
18 through which information of any type is transmitted, recorded or preserved. Without
19 any limitation on the foregoing, the term "DOCUMENT" shall include all copies that
20 differ in any respect from the original or other versions of the DOCUMENT, including,
21 but not limited to, all drafts and all copies of such drafts or originals containing initials,
22 comments, notations, insertions, corrections, marginal notes, amendments or any other
23 variation of any kind.

24     16.   "PERSON" or "PERSONS" means all natural persons, partnerships,
25 corporations, joint ventures and any kind of business, legal or public entity or
26 organization, as well as its, his or her agents, representatives, employees, officers and

27
28

-5-
NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT 7

PAGE 145

directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

17.     The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

## Topics of Examination

1.     The origin, conception, creation, design, sculpting, development, engineering, rotocasting, modeling and prototyping of BRATZ and BRATZ DESIGNS CREATED prior to June 30, 2001 (regardless of when or whether such was released in any form to the public), including without limitation the timing thereof, the IDENTITY of each PERSON with knowledge thereof, the IDENTITY of each PERSON involved therein, and the nature, extent and time period(s) of each such PERSON's involvement.

2.     The circumstances under which BRATZ or any BRATZ DESIGN first came to YOUR attention, including without limitation the timing, method and manner thereof and the IDENTITY of each PERSON with knowledge thereof.

3.     The identity of each doll, product, work or item produced, developed, manufactured, licensed, sold or offered for sale by or for YOU or on YOUR behalf that was BASED ON any BRATZ DESIGN which BRYANT CREATED.

4.     To the extent not covered by Topic 3, each EMBODIMENT of any doll, doll accessory or toy that BRYANT CREATED prior to June 30, 2001.

5.     The work, activities and/or services that BRYANT performed for or with YOU or on YOUR behalf prior to June 30, 2001.

EXHIBIT __7__

PAGE __146__

6.    The origin, conception and creation of DESIGNS that BRYANT CREATED prior to June 30, 2001 and in which YOU claim to have, or have ever claimed to have, any right, title or interest (whether in whole or in part).

7.    The identity of, and the design, development, sculpting, development, engineering, rotocasting, modeling, prototyping and first sale of, any doll, product, work or item that has been produced, developed, manufactured, licensed, sold or offered for sale by, for or on behalf of YOU and that was BASED ON any DESIGN referenced in Topic 6.

8.    Each EMBODIMENT of BRATZ that was CREATED prior to June 30, 2001 or that was at any time BASED ON any BRATZ DESIGN which was CREATED prior to June 30, 2001.

9.    The DRAWINGS, including without limitation the authorship, creation, dissemination and use thereof and the source, meaning, authenticity and timing of any dates thereon.

10.    The IDENTITY of each vendor or third party who performed or contributed, or who was considered, solicited, requested, proposed or contemplated by YOU or BRYANT to perform or contribute, any activities, work or services in connection with BRATZ or BRATZ DESIGNS prior to June 30, 2001, YOUR COMMUNICATIONS therewith, and the nature, extent and timing of such activities, work or services.

11.    The exhibition, or proposed, offered, contemplated or requested exhibition, of BRATZ or any BRATZ DESIGN to any third party prior to June 30, 2001, including without limitation each instance in which BRATZ or any BRATZ DESIGN was marketed, offered for sale, pitched, shown or disclosed to, or otherwise discussed with or communicated to, any retailer, wholesaler or distributor and the DOCUMENTS that REFER OR RELATE thereto.

12.    The actual, proposed, requested or contemplated manufacture, fabrication or tooling (including the production of molds) of BRATZ, including without

EXHIBIT 2

PAGE 147

1 limitation the timing thereof and the IDENTITY of each manufacturer and potential
2 manufacturer used, proposed or considered.

3      13.   COMMUNICATIONS prior to June 30, 2001 between YOU and
4 any manufacturer, distributor, wholesaler, retailer, or any contemplated, proposed or
5 potential manufacturer, distributor, wholesaler or retailer, that REFER OR RELATE
6 TO BRATZ or any BRATZ DESIGN.

7      14.   When and where BRATZ was first manufactured, shipped,
8 distributed and sold, and the IDENTITIES and roles of PERSONS involved therein.

9      15.   The licensing, including without limitation the proposed or
10 requested licensing, of BRATZ or any BRATZ DESIGN prior to December 31, 2001,
11 including without limitation the timing thereof, the IDENTITY of each such licensee or
12 proposed or requested licensee and the product(s) or proposed product(s) involved.

13      16.   COMMUNICATIONS between YOU and BRYANT prior to
14 January 1, 2001, including without limitation the content, means and timing of such
15 COMMUNICATIONS, the IDENTITY of the PERSONS who were parties thereto and
16 the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

17      17.   COMMUNICATIONS that BRYANT made for YOU or on YOUR
18 behalf with any PERSON other than YOU that REFER OR RELATE TO BRATZ prior
19 to June 30, 2001.

20      18.   YOUR agreements and contracts with BRYANT, including without
21 limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that
22 REFER OR RELATE thereto, and any actual or proposed amendments thereto.

23      19.   Each agreement or contract between YOU and any PERSON other
24 than BRYANT that REFERS OR RELATES TO BRATZ or BRATZ DESIGNS that
25 REFERS OR RELATES to the time period prior to December 31, 2001 (regardless of
26 when such agreement or contract was negotiated or executed), including without
27 limitation the timing thereof, the negotiations, drafts and COMMUNICATIONS that
28 REFER OR RELATE thereto, and any actual or proposed amendments thereto.

07209/2048031.

-8-

1     20.   YOUR knowledge, prior to April 29, 2004, of BRYANT's contracts
2 and agreements with, and his obligations to, MATTEL.

3     21.   YOUR knowledge of, and access to, non-public MATTEL DIVA
4 STARZ project information and DESIGNS prior to June 30, 2001.

5     22.   The payment of money or anything of value by or for YOU or on
6 YOUR behalf that has been made to, for or on behalf of BRYANT (a) for work,
7 services or activities performed by BRYANT prior to January 1, 2001 (regardless of
8 when such payment was actually made), (b) for DESIGNS CREATED by BRYANT
9 prior to January 1, 2001 (regardless of when such payment was actually made) or (c) in
10 connection with BRATZ or any BRATZ DESIGN at any time, including without
11 limitation the timing, manner and amount(s) thereof and the reasons therefor.

12     23.   The payment of royalties to, for or on behalf of BRYANT made by
13 or for YOU or on YOUR behalf, including the timing, manner and amounts of such
14 payments and the reasons therefor.

15     24.   Any indemnification and fee arrangement that YOU and/or
16 BRYANT has sought, proposed, requested or obtained in connection with this
17 ACTION.

18     25.   YOUR revenues and profits from BRATZ, including without
19 limitation YOUR gross and net profits, and YOUR costs associated therewith.

20     26.   YOUR net worth.

21     27.   The payment of money or anything of value that YOU have made or
22 offered to make to, for or on behalf of Elise Cloonan, or that has been requested, sought
23 or received by, for or on behalf of Elise Cloonan, and the timing, manner, amount(s)
24 and reasons therefor.

25     28.   COMMUNICATIONS between YOU and Elise Cloonan that
26 REFER OR RELATE TO BRYANT, MATTEL, BRATZ and/or Anna Rhee, including
27 the DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

28

NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC.

EXHIBIT __7__

PAGE __149__

1      29.    COMMUNICATIONS made by, for or on behalf of YOU, whether

2 directly or indirectly, with Anna Rhee, including without limitation since February

3 2005 (but not including any such COMMUNICATIONS with her legal counsel).

4      30.    COMMUNICATIONS between YOU and Veronica Marlow,

5 Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), Sarah

6 Halpern, Steve Linker, Liz Hogan and/or Jesse Ramirez that REFER OR RELATE TO

7 BRYANT, MATTEL, BRATZ and/or Anna Rhee, including without limitation all

8 DOCUMENTS that REFER OR RELATE TO such COMMUNICATIONS.

9      31.    The IDENTITY of each PERSON who, at any time since January 1,

10 1998, has performed any work or services for, by or on behalf of YOU while such

11 PERSON was employed by MATTEL, the nature and timing of each such PERSON's

12 work or services and the amount(s) paid by YOU to each such PERSON.

13      32.    COMMUNICATIONS between YOU and BRYANT that REFER

14 OR RELATE TO MATTEL or REFER OR RELATE TO any DOCUMENT that was

15 prepared, authored or created by MATTEL that BRYANT has ever provided to, shown,

16 described to, communicated to or disclosed in any manner to YOU.

17      33.    The applications for registration and the registrations for copyright,

18 patent, trademark or any other right that REFER OR RELATE TO BRATZ or BRATZ

19 DESIGNS sought, made or obtained by, for or on behalf of YOU or BRYANT,

20 including without limitation COMMUNICATIONS pertaining thereto.

21      34.    Other than those previously filed and served in this ACTION or in

22 which Mattel, Inc.'s counsel in this ACTION was in attendance, the testimony,

23 transcripts, declarations, affidavits and other sworn written statements of any other type

24 by or from YOU or made on YOUR behalf that REFER OR RELATE TO BRATZ

25 THAT REFER OR RELATE TO the time period prior to June 30, 2001 (regardless of

26 when such testimony or sworn statement was taken, given, signed, made or filed).

27      35.    COMMUNICATIONS between YOU and Universal Commerce

28 Corp., Ltd. prior to June 30, 2001.

EXHIBIT 7

PAGE 150

1          36.    The source, meaning and authenticity of SL00013-14, including

2    without limitation the timing of its creation and the handwriting thereon.

3          37.    YOUR corporate structure since January 1, 1999, including without

4    limitation the relationship between MGA Entertainment, Inc. and any of its

5    predecessors, affiliates and subsidiaries.

6          38.    The retention or destruction policies, procedures and practices for

7    YOUR DOCUMENTS and DIGITAL INFORMATION that REFER OR RELATE TO

8    BRATZ since January 1, 1999, including without limitation the retention or destruction

9    of DOCUMENTS and DIGITAL INFORMATION when (a) hardware is replaced,

10   modified or upgraded and (b) when PERSONS leave YOUR employ.

11         39.    The preservation, collection, destruction, removal, transfer, loss or

12   impairment of YOUR DOCUMENTS and DIGITAL INFORMATION in connection

13   with the ACTION and/or any DOCUMENTS requested by MATTEL in the ACTION.

14         40.    The preservation, collection, destruction, removal, transfer, loss or

15   impairment of YOUR DOCUMENTS and DIGITAL INFORMATION since January 1,

16   1999 that REFER OR RELATE TO MATTEL (including without limitation to any

17   MATTEL product, plan or information) that YOU received in any manner from any

18   PERSON who was at the time an employee of MATTEL or who had previously been

19   an employee of MATTEL.

20         41.    The testing of or sampling from DOCUMENTS that REFER OR

21   RELATE TO BRATZ or BRYANT, including without limitation such testing or

22   sampling in connection with any ink, paper or chemical analysis performed or

23   attempted to be performed to date, any DOCUMENTS that REFER OR RELATE

24   thereto and all results and reports relating thereto.

25         42.    YOUR DIGITAL INFORMATION data backup policies, practices

26   and procedures from January 1, 1999 to the present, including without limitation the

27   location and specifications of any media used to preserve YOUR DIGITAL

28

07209/2048031.

-11-

EXHIBIT _7_

PAGE 151

1 INFORMATION and the software, if any, used to preserve YOUR DIGITAL
2 INFORMATION.

3      43.    The DIGITAL INFORMATION SYSTEMS and the application
4 software that YOU have used since January 1, 1999 that REFER OR RELATE TO
5 design, development, planning, inventory, manufacturing, sales, shipping and
6 accounting, including without limitation the common or shared storage for such
7 DIGITAL INFORMATION SYSTEMS, remote access of such DIGITAL
8 INFORMATION SYSTEMS, and any changes, modifications or upgrades to such
9 DIGITAL INFORMATION SYSTEMS or application software.

10      44.    The IDENTITY of PERSONS, including without limitation
11 vendors, who since January 1, 1999 have been responsible for or supported YOUR
12 DIGITAL INFORMATION SYSTEMS, including without limitation the IDENTITY of
13 such PERSON who serviced or provided hardware for YOUR DIGITAL
14 INFORMATION SYSTEMS, hosted, stored, archived or maintained YOUR DIGITAL
15 INFORMATION, including but not limited to internet service providers, and provided
16 analytical, training or implementation services with respect to YOUR DIGITAL
17 INFORMATION SYSTEMS.

18      45.    The electronic messaging SYSTEMS used by YOUR employees
19 within the scope of their employment between January 1, 1999 and the present,
20 including but not limited to electronic mail, instant messenger, telephone or voice-mail,
21 and the routing of such electronic messages to, from or within MGA.

22      46.    YOUR policies, practices and procedures regarding the use of
23 transportable media that contain or are capable of containing DIGITAL
24 INFORMATION, including but not limited to floppy discs, compact discs, DVDs, USB
25 drives, portable hard drives, digital cameras and personal digital assistants.

26
27
28

07209/2048031.

EXHIBIT 7

PAGE 152

**PROOF OF SERVICE**

1

2      I am employed in the County of Los Angeles, State of California. I am over the age of
eighteen years and not a party to the within action; my business address is 865 South Figueroa
3   Street, 10th Floor, Los Angeles, California 90017-2543.

4      On February 1, 2007, I served true copies of the following document(s) described as
**SECOND NOTICE OF DEPOSITION OF MGA ENTERTAINMENT, INC. PURSUANT**
5   **TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** on the parties in this action as
follows:
6

**BY MAIL TO:**
7

Keith A. Jacoby, Esq.
8   Littler Mendelson
2049 Century Park East, 5th Floor
9   Los Angeles, CA  90067-3107
Telephone: (310) 553-0308
10   Facsimile: (310) 553-5583

11   I enclosed the foregoing as well as a **COURTESY COPY** into sealed envelope(s) addressed as
shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The
12   envelope was mailed with postage thereon fully prepaid. (Courtesy copy

13   **BY PERSONAL SERVICE ON:**

14   Diana M. Torres, Esq.
O'Melveney & Meyers
15   400 So. Hope Street
Los Angeles, CA  90071
16   Telephone: (213) 430-6000
**Facsimile: (213) 430-6407**
17

I delivered such envelope(s) **(COURTESY COPY INCLUDED)** by hand to the office of the
18   person(s) being served.

19

20      I declare that I am employed in the office of a member of the bar of this Court at whose direction
the service was made.
21

22      Executed on February 1, 2007, at Los Angeles, California.

23

24                                      _____
                                       Mia Albert
25

26                                      _____
                                       Dave Quintana
27

28

07209/2049386.1

EXHIBIT 7

PAGE 153

EXHIBIT 8

**CONFORMED COPY**

FILED

2007 MAY 18  PM 3: 45

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 090378)
     johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

CALENDARED

8  Attorneys for Mattel, Inc.

9                 UNITED STATES DISTRICT COURT

10                CENTRAL DISTRICT OF CALIFORNIA

11                      EASTERN DIVISION

12  CARTER BRYANT, an individual,          Case No. CV 04-09049 SGL (RNBx)

13                Plaintiff,               Consolidated with
                                           Case No. CV 04-09059
14      vs.                                Case No. CV 05-02727

15  MATTEL, INC., a Delaware corporation,  **DISCOVERY MATTER**

16                Defendant.               Hon. Edward A. Infante (Ret.)
17                                         Discovery Master

18  AND CONSOLIDATED CASES                 [PROPOSED] ORDER GRANTING
                                           MATTEL INC.'S MOTION TO
19                                         COMPEL MGA TO PRODUCE
                                           WITNESSES FOR DEPOSITION
20                                         PURSUANT TO RULE 30(B)(6)

21                                         Date: May 15, 2007
                                           Time:  8:15 a.m.
22                                         Place:  Telephonic

23                                         Discovery Cut-Off: October 22, 2007
                                           Pre-Trial Conference: January 14, 2008
24                                         Trial Date:  February 12, 2008

25

26

27

28

07209/2121176.1

ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

CS118157  EXHIBIT 8

PAGE 154

1

$\mathcal{E}\ell$

## [PROPOSED] ORDER

2

3      Having considered Mattel, Inc.'s Motion To Compel MGA To Produce

4   Witnesses For Deposition Pursuant To <u>Rule</u> 30(b)(6) (the "Motion"), and all other

5   papers and argument submitted in support of or opposition to the Motion, and finding

6   good cause therefor, Mattel's Motion is GRANTED.

7      IT IS HEREBY ORDERED that:

8      1.    MGA shall make Paula Garcia available for deposition on or before June

9   15, 2007 as a designee on Topics 1-3 and 6-8 of Mattel's Notice of Deposition of

10  MGA Pursuant to <u>Rule</u> 30(b)(6) dated February 16, 2005 and in her individual

11  capacity.

12     2.    MGA shall confirm its designees and the dates of the designees'

13  availability for deposition for all Topics except Topic Nos. 25 and 26 in Mattel's

14  Notice of Deposition of MGA Pursuant to <u>Rule</u> 30(b)(6) dated February 1, 2007 (the

15  "Second Notice") on or before May 22, 2007.

16     3.    MGA shall make its designees for all Topics in the Second Notice,

17  except Topic Nos. 25 and 26, available for deposition on or before June 30, 2007.

18     4.    The parties shall meet and confer regarding the timing of the depositions

19  on Topic Nos. 25 and 26 of the Second Notice. Such depositions may take place after

20  June 30, 2007.

21     5.    All of MGA's objections and/or limitations regarding the Topics in

22  Mattel's <u>Rule</u> 30(b)(6) deposition notices are overruled.

23  //

24  //

25  //

26  //

27  //

28  //

07709/2121176.1

-1-
ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

EXHIBIT 8

PAGE 155

1

2      6.     Mattel's request for sanctions is denied.

3

4     **IT IS SO ORDERED.**

5

6 DATED: _May 16,_____, 2007

7

8              _Edward A. Infante_

9              Hon. Edward A. Infante (Ret.)
              Discovery Master

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-
ORDER GRANTING MATTEL'S MOTION TO COMPEL DEPOSITION OF MGA

EXHIBIT 8

PAGE 150

EXHIBIT 9

4764

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3                              ---

4          HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5                              ---

6    MATTEL, INC.,                    :   PAGES 4764 - 4889
                                      :
7              PLAINTIFF,             :
                                      :
8        VS.                          :   NO. ED CV04-09049-SGL
                                      :   [CONSOLIDATED WITH
9    MGA ENTERTAINMENT, INC.,         :   CV04-9059 & CV05-2727]
     ET AL.,                          :
10                                    :
               DEFENDANTS.            :
11   _____ :

12

13

14

15              REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                    RIVERSIDE, CALIFORNIA

17                  THURSDAY, JULY 10, 2008

18                   JURY TRIAL - DAY 22

19                     MORNING SESSION

20

21

22                              MARK SCHWEITZER, CSR, RPR, CRR
                                OFFICIAL COURT REPORTER
23                              UNITED STATES DISTRICT COURT
                                181-H ROYBAL FEDERAL BUILDING
24                              255 EAST TEMPLE STREET
                                LOS ANGELES, CALIFORNIA 90012
25                              (213) 663-3494

**CERTIFIED COPY**

EXHIBIT 9
PAGE 157

4774

1                        **CROSS-EXAMINATION**

2    BY MR. NOLAN:

3    Q.   Good morning, Ms. Park.

4    A.   Good morning.

5    Q.   I want to go back.  You appeared before, I guess a

6    couple weeks ago now, and you said that you were a part-time

7    employee at Mattel; is that correct?

8    A.   Correct.

9    Q.   And how long have you been a part-time employee?

10              MR. ZELLER:  This is asked and answered.

11              THE COURT:  Overruled.  You may answer.

12              THE WITNESS:  Since last April.

13   Q.   BY MR. NOLAN:  April of 2007?

14   A.   Correct.

15   Q.   And do you have an official title as a part-time

16   employee?

17   A.   Vice-president of product design.

18   Q.   And how many -- are you required to work a particular

19   number of hours a week?

20   A.   No, not necessarily.

21   Q.   Now, you are also in a real estate investment business?

22   A.   No.

23   Q.   Do you have any other employment when you aren't working

24   part time for Mattel?

25   A.   No.

EXHIBIT 9

PAGE 158

1   Q.   So within the last two months, how many hours have you

2   spent at an office in Mattel?

3   A.   I haven't been to Mattel within the last two months.

4   Q.   So let's go back.  How about in the last six months?

5   How many hours have you spent at Mattel?

6   A.   Probably, oh, I don't know, maybe an hour, maybe a

7   little bit more than that.

8   Q.   So since you went to part-time status on April 4th of

9   2007, let's go all the way back there, how many hours have

10  you spent at Mattel in your part-time work?

11  A.   At Mattel, probably less than 10.

12  Q.   Prior to transitioning over to part time, you were a

13  full-time employee at Mattel, yes?

14  A.   Yes.

15  Q.   And what was your title?

16  A.   Vice-president of product design.

17  Q.   And how long have you been in that position full time?

18  A.   Seven plus years.  Seven, eight years.

19  Q.   Now, when you were transitioned to a part-time status,

20  you were paid a severance pay by Mattel; correct?

21  A.   No.

22  Q.   Did you receive any compensation from Mattel since April

23  of last year?

24  A.   I'm a paid employee.

25  Q.   Okay.  So can you tell us for the 10 hours that you have

EXHIBIT 9

PAGE 159

4776

1    spent at Mattel since leaving Mattel, how much you've been

2    paid?

3              MR. ZELLER:  Mischaracterizes the testimony.

4    Assumes facts.

5              THE COURT:  Rephrase.

6    Q.   BY MR. NOLAN:  During the period of time that you have

7    been a part-time employee at Mattel, I understand that from

8    April 4th of 2007 through today, how much compensation have

9    you received from Mattel?

10   A.   I get a salary.  Are you asking my salary amount?

11   Q.   Sure.  If that's how you're paid, that's what I'm

12   asking.

13             MR. ZELLER:  This is not relevant.

14             THE COURT:  Credibility.  Overruled.

15             THE WITNESS:  It's approximately $210,000 a year.

16   Q.   BY MR. NOLAN:  As a part-time employee -- and how long

17   do you intend to be a part-time employee for Mattel?

18   A.   As long as I have a job, as long as it's mutually

19   agreeable.

20   Q.   Well, have you been promised a certain term as a

21   full-time employee?

22   A.   I'm not a full-time employee.

23   Q.   Have you been promised a part-time term?

24   A.   No.

25   Q.   Have you been told that as soon as this litigation is

EXHIBIT 9

PAGE 160

4777

1    over, that you would lose your part-time status?

2            MR. ZELLER:  Argumentative.  Assumes facts.

3            THE WITNESS:  No.

4            THE COURT:  Wait a second.  As phrased, Counsel.

5    Rephrase that.

6            MR. ZELLER:  She answered.  I'll withdraw the

7    objection, your Honor.

8            THE COURT:  Wait a second.  A little too late,

9    counsel.  The answer is stricken.  The question is stricken.

10           Counsel, ask your next question.

11   Q.   BY MR. NOLAN:  Is one of your duties as a part-time

12   employee at Mattel to cooperate with litigation?

13   A.   No.

14   Q.   You were asked to come in today to testify about

15   Exhibit 10624.

16           Aaron, can I have that published.

17           Now, Ms. Park, please tell the jury when you first

18   received a phone call from anybody asking you to offer

19   testimony concerning this exhibit, 10624.

20   A.   It was about 10:00 o'clock, 10:20, on this past Monday

21   evening.

22   Q.   And at the time of the phone call, did you have a copy

23   of Exhibit 10624 in front of you?

24   A.   No.

25   Q.   At the time of that phone call, had you ever seen

EXHIBIT 9

PAGE 161

4889

```
 1
 2
 3
 4
 5
 6
 7                    C E R T I F I C A T E
 8
 9
10           I hereby certify that pursuant to Title 28,
11    Section 753 United States Code, the foregoing is a true and
12    correct transcript of the stenographically reported
13    proceedings in the above matter.
14           Certified on July 10, 2008.
15
16
17           MARK SCHWEITZER, CSR, RPR, CRR
             Official Court Reporter
18           License No. 10514
19
20
21
22
23
24
25
```

EXHIBIT 9

PAGE 162