# Exhibit 9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | |
| | Consolidated with |
| vs. | CASE NO. CV 04-9059 SGL (RNBx) |
| | CASE NO. CV 05-2727 SGL (RNBx) |
| MGA ENTERTAINMENT, INC., et al., | Hon. Stephen G. Larson |
| Defendants. | |
| AND CONSOLIDATED ACTIONS | **COURT'S PHASE B JURY INSTRUCTIONS AS GIVEN** |

EXHIBIT _____9_____

PAGE _____211_____

### JURY INSTRUCTION NO. 20

Mattel claims that the defendants, MGA Entertainment, Inc. ("MGA"), Isaac Larian and MGA Entertainment (HK) Ltd. ("MGA Hong Kong"), engaged in copyright infringement of certain items that you found in Phase A of this trial were created by Carter Bryant when he worked at Mattel. The defendants deny that claim.

Copyright is the exclusive right to copy.

This right to copy includes the exclusive rights to:

(1)    Authorize, or make additional copies, or otherwise reproduce the copyrighted work;

(2)    Recast, transform, or adopt the work, that is, to prepare derivative works based upon the copyrighted work;

(3)    Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

(4)    Display publicly a copyrighted work.

It is the owner of a copyright who may exercise these exclusive rights to copy.

As a matter of law, Mattel is the owner, by assignment, of the Bratz-related items that you found were created by Carter Bryant, alone or jointly with others, while employed by Mattel, which items have been registered by Mattel at the U.S. Copyright Office. In general, copyright law protects against production, adaptation and distribution of substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in an action for copyright infringement.

EXHIBIT ____9____

PAGE ____22____

1      You must consider each defendant's acts separately to determine whether that

2   defendant has engaged in an act that is an infringement of Mattel's copyright.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 9

PAGE 23

1

## JURY INSTRUCTION NO. 22

2

3    Anyone who copies original elements of a copyrighted work without the owner's

4    permission infringes the copyright.

5    Mattel claims that the defendants have infringed copyrights for the Bratz-related

6    items described above.  On Mattel's copyright infringement claim, Mattel has the burden

7    of proving both of the following by a preponderance of the evidence:

8        1.    Mattel is the owner of a valid copyright; and

9
10       2.    The defendants copied original elements from the copyrighted work.

11    If you find that Mattel has proved both of these elements, your verdict should be

12    for Mattel.

13    If, on the other hand, Mattel has failed to prove either of these elements, your

14    verdict should be for the defendants.

15    As a matter of law, the first element is satisfied because Mattel is the owner of

16    each of the items you found were created by Carter Bryant, alone or jointly with others,

17    while employed by Mattel and which Mattel has registered with the U.S. Copyright

18
19    Office.

20    Whether or not the second element is satisfied is for you to decide.

21

22

23

24

25

26

27

28

24

EXHIBIT _____ 9 _____

PAGE _____ 214 _____

# Exhibit 10

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  CENTRAL DISTRICT OF CALIFORNIA
10                         EASTERN DIVISION
11
12   MATTEL, INC.,                    | CASE NO. CV 04-9049 SGL (RNBx)
13              Plaintiff,            | Consolidated with
14                                    | Case No. CV 04-09059
         vs.                          | Case No. CV 05-02727
15                                    |
     MGA ENTERTAINMENT,               | Hon. Stephen G. Larson
16                                    |
              Defendant.              | **FINAL VERDICT FORM AS GIVEN**
17   _____|
18   AND CONSOLIDATED ACTIONS
19
20
21
22
23
24
25
26
27                                         EXHIBIT ___ **10**
28                                         PAGE ___ **25**

07209/2554627.7

                              **7-17**

                            Case No. CV 04-9049 SGL (RNBx)
                    FINAL PROPOSED VERDICT FORM FOR PHASE 1A

# VERDICT FORM

We answer the questions submitted to us as follows:

## <u>Timing of Tangible Items</u>

1.   For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 5-52, 62-1, 624/5-74, 62-11, 10537, 15180/5-75, 62-12, 10538, 15181/5-111, 708/5-112, 62-13/5-113,/5-114/62-14,/62-15, 1152-1, 1152-2, 10613/1328/10033-3/10033-4 |
| ☒ | ☐ | TX 5-88, 35-1, 35-3, 5-101/1327, 10153-3/10153-4 |
| ☒ | ☐ | TX 5-35, 757 |
| ☒ | ☐ | TX 5-36, 701, 702 |
| ☒ | ☐ | TX 5-37, 703 |
| ☒ | ☐ | TX 5-38, 762 |
| ☐ | ☐ | TX 5-39, 523, 752 |
| ☐ | ☐ | TX 5-40, 753, 754, 13583 |
| ☐ | ☐ | TX 751-2, 751-3, 5-41, 755 |
| ☐ | ☐ | TX 5-42, 756 |
| ☒ | ☐ | TX 5-43, 709 |
| ☒ | ☐ | TX 5-46, 710 |
| ☒ | ☐ | TX 5-49, 704 |
| ☒ | ☐ | TX 5-50, 705 |

EXHIBIT _____ 10

PAGE _____ 216

| Yes | No | |
|-----|----|---|
| ☒ | ☐ | TX 5-53, 1152-5, 1152-6, 10534, 15175 |
| ☒ | ☐ | TX 5-54, 62-2, 620, 774, 775 |
| ☒ | ☐ | TX 5-55, 62-3, 785, 1152-9 |
| ☒ | ☐ | TX 5-56, 764, 15176 |
| ☒ | ☐ | TX 5-57, 776, 777 |
| ☒ | ☐ | TX 5-58, 765, 15177 |
| ☒ | ☐ | TX 5-59, 739, 740 |
| ☒ | ☐ | TX 5-60, 761 |
| ☒ | ☐ | TX 5-61, 62-4, 782, 796-1, 1748 |
| ☒ | ☐ | TX 5-62, 62-5, 621, 767, 768, 5-71, 62-10, 770, 1752-1 |
| ☒ | ☐ | TX 5-63, 758, 759, 760 |
| ☒ | ☐ | TX 5-64, 62-6, 795, 1152-14, 1750 |
| ☒ | ☐ | TX 5-65, 1152-7, 1152-8, 11789 |
| ☒ | ☐ | TX 5-66, 794, 1152-13 |
| ☒ | ☐ | TX 5-67, 62-7, 784, 1152-11, 1152-12, 10535 |
| ☒ | ☐ | TX 5-68, 62-8, 781, 786, 790, 1751-4 |
| ☒ | ☐ | TX 5-69, 11788, 5-70, 62-9, 623, 783 |
| ☒ | ☐ | TX 5-72, 1152-15, 1152-16, 10536, 15179 |
| ☒ | ☐ | TX 5-73, 741, 742 |
| ☒ | ☐ | TX 5-76, 706 |
| ☒ | ☐ | TX 5-77, 707 |
| ☒ | ☐ | TX 5-78, 10539, 18501 |
| ☒ | ☐ | TX 5-136, 711 |
| ☒ | ☐ | TX 10579, 18281 |
| ☒ | ☐ | TX 15172 |

EXHIBIT ____ 10

PAGE ____ 27

2.    For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|-----|-----|---|
| ☒ | ☐ | TX 3-1, 779, 780, 1-1, 2-1, 778 |
| ☒ | ☐ | TX 3-2, 726, 727, 728, 1-4, 2-5 |
| ☒ | ☐ | TX 3-3, 1152-19, 1152-20, 11838, 15182, 1-6, 2-10, 5-104, 10544 |
| ☒ | ☐ | TX 3-5, 791, 1-8, 2-2 |
| ☒ | ☐ | TX 3-6, 11837, 15184, 1-7, 2-8, 743, 744, 5-107, 1152-17, 1152-18, 10547 |
| ☒ | ☐ | TX 3-8, 789, 1-11, 2-9, 734, 5-106, 10546 |
| ☒ | ☐ | TX 3-9, 788, 1-10, 2-6, 746, 5-103, 10543 |
| ☒ | ☐ | TX 3-10, 735, 736 |
| ☒ | ☐ | TX 3-12, 792, 1-3, 2-7, 5-102, 10542 |
| ☒ | ☐ | TX 3-13, 793, 1-5, 2-3, 10-3 |
| ☒ | ☐ | TX 5-79, 1-9, 2-4, 737, 10545, 5-105 |
| ☒ | ☐ | TX 1-2 |
| ☒ | ☐ | TX 3-11 |
| ☒ | ☐ | TX 5-26, 712 |
| ☒ | ☐ | TX 5-27, 713 |
| ☒ | ☐ | TX 5-81, 720 |
| ☒ | ☐ | TX 5-82, 715 |
| ☒ | ☐ | TX 5-83, 723 |
| ☒ | ☐ | TX 3-4, 5-84, 716, 717 |
| ☒ | ☐ | TX 3-7, 5-85, 718, 719, 10-2, 63-1 |
| ☒ | ☐ | TX 5-80, 721, 722, 5-86 |
| ☒ | ☐ | TX 5-87, 5-108, 724, 725 |
| ☒ | ☐ | TX 5-34 |

EXHIBIT    10

PAGE    218

3.    For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Yes | No | |
|---|---|---|
| ☒ | ☐ | TX 5-89, 35-2, 323-32, 323-33 |
| ☒ | ☐ | TX 1107, 10638 |
| ☒ | ☐ | TX 1108, 10639 |
| ☒ | ☐ | TX 1109, 771 |
| ☒ | ☐ | TX 1110, 773 |
| ☒ | ☐ | TX 5-14, 10515 |
| ☒ | ☐ | TX 5-18, 10518 |
| ☒ | ☐ | TX 5-19, 10519 |
| ☒ | ☐ | TX 5-28, 10526 |
| ☒ | ☐ | TX 5-30 |
| ☒ | ☐ | TX 5-95 |
| ☒ | ☐ | TX 5-96 |
| ☒ | ☐ | TX 5-99 |
| ☒ | ☐ | TX 323-18 |
| ☒ | ☐ | TX 323-19 |
| ☒ | ☐ | TX 323-26 |

EXHIBIT    10

PAGE    219

4.      For each of the items listed below, has Mattel proven by a preponderance of the evidence that the item was "conceived or reduced to practice" — that is, created — by Carter Bryant, alone or jointly with others, during the period in which he was employed by Mattel (January 4, 1999, to October 19, 2000)?

| Trial Exhibit No. | YES | NO |
| --- | --- | --- |
| The Three Dimensional Item Presented at Pitch Meeting | X | |
| Trial Exhibit 1136 | X | |

## Timing of Ideas

5.      Has Mattel proven by a preponderance of the evidence that Carter Bryant conceived the "Bratz" characters while employed by Mattel?

Yes   X

No   ____

6.      Has Mattel proven by a preponderance of the evidence that Carter Bryant conceived the name "Bratz" while employed by Mattel?

Yes   X

No   ____

EXHIBIT ____ 10

PAGE ____ 220

1    **Intentional Interference with Contractual Relations**

2    7.    Is MGA Entertainment, Inc. ("MGA") liable to Mattel for intentional

3    interference with contractual relations?

4    Yes   _X_

5    No   ___

6

7    8.    Is Isaac Larian liable to Mattel for intentional interference with

8    contractual relations?

9    Yes   _X_

10   No   ___

11

12   **Aiding and Abetting Breach of Fiduciary Duty**

13   9.    Is MGA liable to Mattel for aiding and abetting breach of fiduciary

14   duty?

15   Yes   _X_

16   No   ___

17

18   10.    Is Isaac Larian liable to Mattel for aiding and abetting breach of

19   fiduciary duty?

20   Yes   _X_

21   No   ___

22

23   **Aiding and Abetting Breach of the Duty of Loyalty**

24   11.    Is MGA liable to Mattel for aiding and abetting breach of the duty of

25   loyalty?

26   Yes   _X_

27   No   ___

28

EXHIBIT ___ 10

PAGE ___ 221

1  12. Is Isaac Larian liable to Mattel for aiding and abetting breach of the
2 duty of loyalty?

3    Yes X
4    No  ____

5

6           **Conversion**

7  13. Is MGA liable to Mattel for conversion?

8    Yes X
9    No  ____

10

11  14. Is Isaac Larian liable to Mattel for conversion?

12    Yes X
13    No  ____

14

15  15. Is MGA Entertainment (HK) Limited liable to Mattel for conversion?

16    Yes X
17    No  ____

18

19

20    Once this verdict form is completed, the foreperson of the jury should sign
21 and date on the lines below.

22 DATED: *July   17*_____, 2008
23

24

25          _____
             Presiding Juror
26

27            EXHIBIT ____ 10

28            PAGE ____ 222

07209/2554627.7          -7-  Case No. CV 04-9049 SGL (RNBx)
               FINAL PROPOSED VERDICT FORM FOR PHASE 1A

# Exhibit 11

1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10             EASTERN DIVISION
11

| | |
|---|---|
| 12 MATTEL, INC., | CASE NO. CV 04-9049 SGL (RNBx) |
| 13          Plaintiff, | Consolidated with |
| | Case No. CV 04-09059 SGL (RNBx) |
| 14          vs. | Case No. CV 05-02727 SGL (RNBx) |
| 15 MGA ENTERTAINMENT, INC., et al., | Honorable Stephen G. Larson |
| 16          Defendant. | **PHASE B VERDICT FORM AS GIVEN** |
| 17 AND CONSOLIDATED ACTIONS | |
| 18 | |

19
20
21
22
23
24
25
26
27
28

07209/2609529.2209/2601
584.2

EXHIBIT ___ 11
PAGE ___ 223

PHASE B VERDICT FORM AS GIVEN

1                  **VERDICT FORM - PHASE B**

2         We answer the questions submitted to us as follows:

3

4              **I.  Damages for Phase A Claims**

5            (Answer all four questions in this section.)

6

7      **Intentional Interference With Contractual Relations**

8        1.    In Phase A of this trial, you found that MGA Entertainment, Inc.

9 ("MGA") and Isaac Larian are liable to Mattel for intentional interference with

10 contractual relations.  What amount of damages, if any, should be awarded to

11 Mattel?

12          As to MGA:    $   _20 MILLION_

13          As to Mr. Larian: $   _10 MILLION_

14

15        **Aiding and Abetting Breach of Fiduciary Duty**

16        2.    In Phase A of this trial, you found that MGA and Isaac Larian are liable

17 to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty.  What

18 amount of damages, if any, should be awarded to Mattel?

19          As to MGA:    $   _20 MILLION_

20          As to Mr. Larian: $   _10 MILLION_

21

22       **Aiding and Abetting Breach of the Duty of Loyalty**

23        3.    In Phase A of this trial, you found that MGA and Isaac Larian are liable

24 to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.  What

25 amount of damages, if any, should be awarded to Mattel?

26          As to MGA:    $   _20 MILLION_

27          As to Mr. Larian: $   _10 MILLION_

28                                           EXHIBIT ____ 11

PHASE B VERDICT FORM AS GIVEN

Case 2:04-cv-09049-DOC-RNB   Document 5143-6   Filed 04/08/09   Page 18 of 95   Page ID
#:168023
Case 2:04-cv-09049-SC-RNB   Document 4279   Filed 08/26/2008   Page 3 of 9

1

## Conversion

2    4.    In Phase A of this trial, you found that MGA, Isaac Larian and MGA

3 Entertainment (HK) Limited ("MGA Hong Kong") are liable to Mattel for

4 conversion. What amount of damages, if any, should be awarded to Mattel?

5        As to MGA:        $ _31,500 PLUS 7% INTEREST_

6        As to Mr. Larian:      $ _0_    CALCULATED FROM

7        As to MGA Hong Kong: $ _0_    THE DATE MATTEL'S

8                                          PROPERTY WAS

9                                            CONVERTED.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __11__

PAGE __095__

PHASE B VERDICT FORM AS GIVEN

## II.  Copyright Infringement

5.    Has Mattel proven by a preponderance of the evidence that MGA is liable to Mattel for copyright infringement?

        Yes      __X__

        No      ____

If your answer is "yes," then answer Question 6.

If your answer is "no," then answer Question 7.

6.    Was MGA's copyright infringement willful?

        Yes      ____

        No      __X__

Answer Question 7.

7.    Has Mattel proven by a preponderance of the evidence that Isaac Larian is liable to Mattel for copyright infringement?

        Yes      __X__

        No      ____

If your answer is "yes," then answer Question 8.

If your answer is "no," then answer Question 9.

8.    Was Mr. Larian's copyright infringement willful?

        Yes      ____

        No      __X__

Answer Question 9.

9.    Has Mattel proven by a preponderance of the evidence that MGA Hong Kong is liable to Mattel for copyright infringement?

        Yes      __X__

EXHIBIT ___11___

PAGE ___226___

07209/2609529.2608584

PHASE B VERDICT FORM AS GIVEN

1          No    ____

2      If your answer is "yes," then answer Question 10.

3      If your answer is "no," then answer Question 11.

4

5      10.    Was MGA Hong Kong's copyright infringement willful?

6             Yes    ____

7             No      X

8      Answer Question 11.

9

10     11.    What amount of damages, if any, should be awarded to Mattel for the

11     defendants' copyright infringement?

12      (a)    Copyright Infringement by MGA

13             $    6 Million

14      (b)    Copyright Infringement by Isaac Larian

15             Distributions Mr. Larian received from MGA attributable to Bratz-

16             related works:

17             $    3 Million

18             Value of Mr. Larian's ownership percentage of MGA attributable to

19             Bratz-related works:

20             $         0

21      (c)    Copyright Infringement by MGA Hong Kong:

22             $    1 Million

23

24

25

26

27                                            EXHIBIT    11

28                                            PAGE    227

07209/2609529.2608584.2                    -5-

                                           PHASE B VERDICT FORM AS GIVEN

### III.  Punitive Damages

12.   Has Mattel proven by clear and convincing evidence that MGA acted with malice, oppression, or fraud?

Yes _____

No _____ X

If your answer is "yes," then answer Question 13.

If your answer is "no," then answer Question 14.

13.   What amount of punitive damages, if any, should be awarded against MGA?

$ _____

Answer Question 14.

14.   Has Mattel proven by clear and convincing evidence that Isaac Larian acted with malice, oppression, or fraud?

Yes _____

No _____ X

If your answer is "yes," then answer Question 15.

If your answer is "no," then answer Question 16.

15.   What amount of punitive damages, if any, should be awarded against Mr. Larian?

$ _____

Answer Question 16.

16.   Has Mattel proven by clear and convincing evidence that MGA Hong Kong acted with malice, oppression, or fraud?

Yes _____

EXHIBIT _____ 11

PAGE _____ 228

07209/2609529.2608584

PHASE B VERDICT FORM AS GIVEN

1          No    X

2      If your answer is "yes," then answer Question 17.

3      If your answer is "no," then answer Question 18.

4

5      17.    What amount of punitive damages, if any, should be awarded against

6   MGA Hong Kong?

7          $ _____ 0 _____

8      Answer Question 18.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT ____ 11

PAGE ____ 229

PHASE B VERDICT FORM AS GIVEN

Case 2:04-cv-09049-DOC-RNB   Document 5143-6   Filed 04/08/09   Page 23 of 95   Page ID
#:168028
Case 2:04-cv-09049-S   RNB     Document 4279     Filed 06/20/2008    Page 8 of 9

1        **IV.  Fraudulent Concealment**

2              (Answer all five questions in this section.)

3

4        18.    Has Mattel proven by a preponderance of the evidence that MGA

5    fraudulently concealed the bases for Mattel's claim of intentional interference with

6    contract against it until at least April 27, 2002?

7              Yes    _X_

8              No    ____

9

10       19.    Has Mattel proven by a preponderance of the evidence that Isaac Larian

11   fraudulently concealed the bases for Mattel's claim of intentional interference with

12   contract against him until at least April 27, 2002?

13             Yes    ____

14             No    _X_

15

16       20.    Has Mattel proven by a preponderance of the evidence that MGA

17   fraudulently concealed the bases for Mattel's claim of conversion against it until at

18   least April 27, 2001?

19             Yes    _X_

20             No    ____

21

22       21.    Has Mattel proven by a preponderance of the evidence that Mr. Larian

23   fraudulently concealed the bases for Mattel's claim of conversion against him until

24   at least April 27, 2001?.

25             Yes    ____

26             No    _X_

27

28

EXHIBIT ____ 11

PAGE ____ 230

07209/2609529.2608584

-8-

1    22.    Has Mattel proven by a preponderance of the evidence that MGA Hong

2    Kong fraudulently concealed the bases for Mattel's claim of conversion against it

3    until at least April 27, 2001?

4              Yes _____

5              No    X

6

7         Once this verdict form is completed, the foreperson of the jury should sign

8    and date on the lines below.

9

10   DATED: August 26, 2008

              /s/
              _____
              Jury Foreperson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                 EXHIBIT ___11___

28                                                 PAGE ___231___

07209/2609529.2608584

-9-

PHASE B VERDICT FORM AS GIVEN

# Exhibit 12

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                              Date: December 3, 2008
Title:    MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=======================================================================
PRESENT:    HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

       James Holmes                              None Present
       Courtroom Deputy Clerk                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                              None Present

PROCEEDINGS:

**ORDER FINDING IN FAVOR OF MATTEL AS TO THE MGA PARTIES' AFFIRMATIVE DEFENSES**

**ORDER GRANTING MATTEL'S MOTION FOR DECLARATORY JUDGMENT (DOCKET #4303)**

**ORDER GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND § 17200 INJUNCTIVE RELIEF (DOCKET #4305)**

**ORDER GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION (DOCKET #4306)**

**ORDER DENYING AS MOOT MOTION TO STRIKE PORTIONS OF HUTNYAN DECLARATIONS AND EXHIBITS THERETO (DOCKET #4351)**

**ORDER DENYING MOTION TO STRIKE THE PROCTOR, KEISER, AND HOLLANDER DECLARATIONS (DOCKET #4352)**

**ORDER DENYING AS MOOT MOTION TO STRIKE MEYER DECLARATION (DOCKET #4377)**

**ORDER STAYING COURT'S ORDER PENDING CONSIDERATION OF THE PARTIES' POST-**

MINUTES FORM 90                                              Initials of Deputy Clerk: jh
CIVIL -- GEN                          1

EXHIBIT _____ 12
PAGE _____ 232

**TRIAL MOTIONS**

**ORDER SETTING FORTH FURTHER BRIEFING SCHEDULE**

**ORDER REGARDING DISCOVERY MASTER PROPOSALS FOR PHASE 2**

**ORDER REGARDING JOINTLY LODGED LAPTOP COMPUTER**

**ORDER REGARDING SERVICE OF PERMANENT INJUNCTION**

**FILED CONCURRENTLY HEREWITH:**

**(1) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING DECLARATORY JUDGMENT**

**(2) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR CONSTRUCTIVE TRUST AND FOR FINDING LIABILITY AND INJUNCTIVE RELIEF PURSUANT TO CAL. BUS. & PROF. CODE § 17200**

**(3) MATTEL'S PROPOSED ORDER (AS MODIFIED BY THE COURT) GRANTING MATTEL'S MOTION FOR PERMANENT INJUNCTION**

These matters were heard on November 10, 2008, after extensive briefing by the parties. After a two-phase jury trial, the Court considers certain equitable issues (referred to as Phase 1C of the trial) and enters the following Order.  Filed concurrently herewith are:  (1) Mattel's Proposed Order (as modified by the Court) Granting Declaratory Judgment; (2) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Constructive Trust and for Finding Liability and Injunctive Relief Pursuant to Cal. Bus. & Prof. Code § 17200; and (3) Mattel's Proposed Order (as modified by the Court) Granting Mattel's Motion for Permanent Injunction.

In reaching the rulings set forth herein, the Court has considered the parties' briefs and exhibits submitted during Phase 1C of the trial, the arguments of counsel, as well as the entire record (including the evidence properly submitted in Phase 1A and Phase 1B of the trial) and its previous Orders.

The Court refers collectively to all defendants herein, including MGA CEO Isaac Larian ("Larian"), as "the MGA parties".  MGA Entertainment, Inc., is referred to as "MGAE".

The Court has carefully and deliberately considered the parties' well-presented legal and equitable arguments, authorities, and evidence concerning the motions identified above.  In its final analysis, the Court finds, as did the jury, that the preponderance of evidence establishes that Carter Bryant ("Bryant") created and developed the name, the concept, and, together with Margaret Leahy, the prototypical sculpt for the hugely-successful Bratz brand of female fashion

EXHIBIT _____ 12

PAGE _____ 233

Case 2:04-cv-09049-DOC-RNB   Document 5143-6   Filed 04/08/09   Page 28 of 95   Page ID
#:168033
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 3 of 17

dolls while working as an employee of Mattel and while bound by the terms of an Inventions Agreement, which provided that all rights to such property, and the property itself, belong to Mattel. Moreover, the Court further finds, as did the jury, that the preponderance of the evidence establishes that Isaac Larian and MGAE intentionally interfered with Bryant's contractual relations with Mattel, aided and abetted Bryant's breach of fiduciary duty to Mattel, aided and abetted Bryant's breach of his duty of loyalty to Mattel, and unlawfully converted certain property of Mattel. Finally, the Court finds, as did the jury, that the preponderance of the evidence establishes that the MGA parties, in further developing, producing, and marketing its Bratz brand of female fashion dolls, are liable to Mattel for copyright infringement.

## I. The MGA Parties' Affirmative Defenses

Through its "Statement of Position Regarding Phase 1C Issues" (docket #4308), the MGA parties seek the Court's verdict in their favor as to their affirmative defenses of laches, estoppel, and waiver. As set forth below, the Court rules in favor of Mattel, and against the MGA parties as to these three remaining affirmative defenses.[1]

### A.     Laches

Laches is an equitable defense that may bar a claim where a defendant establishes "(1) lack of diligence by the plaintiff, and (2) prejudice to the defendant." Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 987 (9th Cir. 2004). The MGA parties establish neither element.

Because the Court has already found that all the claims asserted against the MGA parties were filed within the applicable limitations periods, the Court starts with the presumption that laches is inapplicable. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).

Mattel has not delayed in bringing its claims against the MGA parties. The Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed approximately a year later on November 4, 2004. MGAE intervened in Mattel's suit against Bryant approximately one month later on December 7, 2004. See Dec. 7, 2004, Stip. & Order (04-9059 docket #36) ("MGA[] believes . . . that it has a significantly protectable interest relating to the subject matter of the action, . . . and that MGA's interest is not adequately represented by the existing parties."). Thereafter, the parties briefed Mattel's motion to remand (filed on December 1, 2004, and denied on March 4, 2005), before a stay was entered in the case on May 20, 2005, pending the Ninth Circuit's consideration of an

---

[1] By advancing only the affirmative defenses of laches, estoppel, and waiver in their Phase 1C brief, the MGA parties have implicitly waived the right to pursue any other affirmative defenses that they have not already expressly waived.

MINUTES FORM 90
CIVIL -- GEN                                    3                        Initials of Deputy Clerk: jh

EXHIBIT ___12___

PAGE ___234___

interlocutory appeal. After MGAE's intervention and before the stay was entered, the parties, including MGAE, engaged in discovery, and the Court considered certain discovery motions, including a motion to compel the deposition of Isaac Larian filed on March 17, 2005. The stay remained in place until after the Ninth Circuit affirmed the Court's denial of the motion to remand; it was lifted on May 16, 2006. Six months later, on November 17, 2006, Mattel sought leave to file its claims against the MGA parties. On this record, the Court finds no lack of diligence by Mattel.

Nor have the MGA parties shown they suffered resulting prejudice. MGAE was permitted to intervene in the lawsuit filed by Mattel against Carter Bryant only one month after it became evident that its rights could potentially be affected, and it did so with the express purpose of protecting its own rights. The other MGA parties have not shown that they suffered any prejudice unique to them or that the intervention by MGAE was not designed to protect their rights.

Moreover, the record does not support the evidentiary prejudice claimed by the MGA parties, and the record is devoid of any expectation-based prejudice (i.e., evidence of what MGA would have done differently had the claims against them been asserted sooner). Indeed, to the contrary, the record reveals that the MGA entities have continued to promote (and profit from) the Bratz brand during the entire pendency of the current litigation.

Because of the presumption that laches will not bar timely claims, and because the Court finds that the MGA parties have failed to establish either element of laches, the Court finds in favor of Mattel as to the affirmative defense of laches.

**B.    Estoppel**

For equitable estoppel to preclude Mattel's claims here, the MGA parties must establish four elements:

> (1) [T]he party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

Strong v. County of Santa Cruz, 15 Cal.3d 720, 725 (1975).

The MGA parties cannot establish the first element because, as noted above, the Court has already found, based on the undisputed evidence, that Mattel had no reason to know of its claims against Bryant until November 23, 2003, and that it had no knowledge of its claims against MGA and Larian until Bryant was deposed almost a year later.

The MGA parties have produced no evidence that Mattel intended them to act upon any apparent intention to refrain from asserting any claims against them. To the contrary, MGAE quickly intervened in Mattel's suit against Bryant to protect its interests.

MINUTES FORM 90
CIVIL -- GEN                                  4                     Initials of Deputy Clerk: jh

EXHIBIT _____ 12

PAGE _____ 235

Moreover, the MGA parties had no basis upon which to rely on Mattel's conduct. As found by the jury, they had superior knowledge regarding Bryant's creation of the Bratz drawings (and the timing of that creation).

Because the Court finds that the MGA parties cannot establish all the elements of estoppel, the Court finds in favor of Mattel as to the affirmative defense of estoppel.

## C.   Waiver

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entertainment, Inc., 843 F.2d 394, 399 (1988).

Here, the MGA parties contend that Mattel's tolerance of its employees' "moonlighting" for its competitors was so widespread as to constitute such a relinquishment. Although such implied waivers may be found where a plaintiff's conduct "is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished," Medico-Dental etc. Co. v. Horton & Converse, 21 Cal.2d 411, 432 (1942), no such conduct is present here.

No evidence of record suggests that Mattel tolerated the type of conduct in which Bryant engaged. The Court has previously addressed, and will not belabor here, the distinctions to be made between the limited evidence regarding "moonlighting" in the record and the conduct in which Bryant engaged. The evidence establishes, and the jury found, that while employed by Mattel as a fashion designer, Bryant preliminarily developed designs for and pitched a line of fashion dolls to Mattel's direct competitor. There is no evidence that Mattel has ever tolerated this type of conduct. Instead, several witness testified to their belief that such conduct would result in immediate termination of the offending employees. Indeed, the record is replete with details of the steps taken by Bryant, the MGA parties, and MGA employees to conceal the extent of Bryant's involvement in the Bratz project while he was employed by Mattel.

The Court finds in favor of Mattel as to the affirmative defense of waiver.

## II. Declaratory Relief Motion (docket #4303)

In its motion for declaratory judgment, Mattel seeks, pursuant to its thirteenth cause of action, a declaration of its rights (and the MGA parties' lack of rights) regarding the Bratz-related works, including certain drawings, sculpts, and ideas.[2] Mattel also seeks imposition of a

---

[2] The parties and the Court are all equally aware that ideas are not copyrightable. However, they are, as set forth in the Court's summary judgment order, assignable under California state law. As noted in the Court's summary judgment order, such an assignment was made by Bryant to Mattel.

MINUTES FORM 90                                                          Initials of Deputy Clerk: jh
CIVIL – GEN                                  5

EXHIBIT _____ 12

PAGE _____ 236

constructive trust as to MGA's copyright registrations in certain Bratz drawings.  As detailed in the
concurrently filed Order, the Court **GRANTS** Mattel's Motion for Declaratory Judgment (docket
#4303).

In opposition, the MGA parties contend that the relief sought by Mattel should not be
granted because it is preempted by the Copyright Act.  The Court rejects this argument.  The
Court's ruling regarding preemption is set forth in the Court's summary judgment order, which the
Court does not here modify.

Declaratory relief is generally granted "(1) when the judgment will serve a useful purpose in
clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief
from the uncertainty, insecurity, and controversy giving rise to the proceeding."  Bilbrey by Bilbrey
v. Brown, 738 F.2d 1462, 1470 (1984).

Here, considering this legal standard and based on the relationship among the parties, the
jury's verdicts, the Court's previous Orders, and the entire record, the Court finds that the
declaratory relief sought by Mattel is appropriate.[3]  Concurrently herewith, the Court has entered,
as modified, Mattel's proposed order for declaratory relief.

### III. Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4505)

As set forth more fully in its Motion, Mattel seeks, pursuant to California state law, imposition
of a constructive trust over the trademarks "Bratz" and "Jade."  Mattel also seeks, pursuant to its
twelfth cause of action, a finding that the MGA parties violated Cal. Bus. & Prof. Code § 17200 on
the basis of the jury's findings that the MGA parties converted Mattel's property, tortiously
interfered by Mattel's contractual relations, and aided and abetted Bryant's breaches of his
fiduciary duty and the duty of loyalty.  Pursuant to this finding, and in addition to imposition of a
constructive trust as to the Bratz and Jade marks, Mattel seeks an injunction prohibiting the MGA
parties from using these marks.  As detailed in the concurrently filed Order, the Court **GRANTS**
Mattel's Motion for Constructive Trust and § 17200 Injunctive Relief (docket #4305).

### A.   Constructive Trust

Cal. Civ. Code § 2223 provides that "[o]ne who wrongfully detains a thing is an involuntary
trustee thereof, for the benefit of the owner."  Cal. Civ. Code § 2224 explicitly addresses things
gained by wrongful acts: "One who gains a thing by fraud, accident, mistake, undue influence, the
violation of a trust, or other wrongful act, is, unless he or she has some other and better right
thereto, an involuntary trustee of the thing gained, for the benefit of the person who would
otherwise have had it."  The parties agree on the resulting elements, which may be stated as

---

[3]  The appropriateness of the constructive trust remedy is discussed below, in a separate
section, but applies equally here.

MINUTES FORM 90
CIVIL -- GEN                                    6                    Initials of Deputy Clerk: jh

EXHIBIT _____ 12
PAGE _____ 237

follows: "(1) the existence of a *res* (property or some interest in property); (2) the right of a complaining party to that *res*; and (3) some wrongful acquisition or detention of the *res* by another party who is not entitled to it. Communist Party v. 522 Valencia, Inc., 35 Cal.App.4th 980, 990 (1995).

Significantly, because the purpose of a constructive trust is to prevent unjust enrichment, enhancement of value is given to the beneficiary of the constructive trust. Haskel Engineering & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal.App.3d 371, 375 (1978)

Here, the jury found that the MGA parties wrongfully acquired the idea for the name "Bratz" along with the idea and preliminary drawings for a line of fashion dolls. The same is true for the one Bratz character who retained the name given her by Carter Bryant: "Jade."[4]  In addition to wrongfully acquiring them, the MGA parties continue to wrongfully retain them. The MGA parties enhanced the value of the names by acquiring trademark rights to them. California law requires, in this instance, that a constructive trust be imposed as to these marks. Mattel is the beneficiary of the constructive trust and MGA's trademarks in "Bratz" and "Jade" inure to Mattel's benefit.

In making this conclusion, the Court has considered, and rejected, the MGA parties' argument that Mattel has disavowed an intention to seek this remedy or waited too long to seek it. Mattel has conceded that it is not asserting a trademark infringement claim. It cannot, because it has not used the relevant marks in commerce, and one must do so to acquire trademark rights. Conversive, Inc. v. Conversagent, Inc., 433 F.Supp.2d 1079, 1089 (C.D. Cal. 2006) (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)). However, Mattel has not disavowed its intent to seek a constructive trust over the marks that were created by Bryant, with rights thereto acquired by the MGA parties through registration and use in commerce. This remedy is well within the scope of relief that is sought in Mattel's second amended answer and counterclaims, see SAAC at 73 ¶ 9 (Prayer for Relief) (seeking "imposition of a constructive trust over Bratz, including without limitations registrations and applications for registrations relating thereto made or filed by [the MGA parties] and third parties, and all profits, monies, royalties and any other benefits derived or obtained from [the MGA parties'] exercise of ownership, use, sale, distribution and licensing of Bratz"), and the Court has rejected all timeliness challenges to Mattel's claims.

## B.   § 17200 Violation

The record reveals sufficient evidence of injury-in-fact to Mattel to confer standing upon it to assert its § 17200 claim. Specifically, as testified to by Mattel officers (and acknowledged by MGAE officers and attorneys), Mattel has suffered lost market share as a result of the sales of the Bratz dolls. Moreover, the jury was instructed that "harm" to Mattel was a necessary element of a number of state law claims. See Final Jury Instructions as Given [Phase 1A], docket #4115, at

---

[4]   Bryant's other characters were re-named before they were marketed:  Zoe became the now-familiar Cloe, Hallidae became Sasha, and Lupe became Yasmin.

MINUTES FORM 90
CIVIL -- GEN                                          7                    Initials of Deputy Clerk: jh

EXHIBIT _____ 12
PAGE _____ 238

Instruction Nos. 22, 25-27, and 29 (intentional interference with contractual relations, aiding and abetting breaches of fiduciary duty and the duty of loyalty, and conversion).  The jury's finding in favor of Mattel as to those claims necessarily implies a factual finding by the jury as to the specified element of harm to Mattel and, as explained in more detail below, the Court is bound by that implicit factual finding.  Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (finding that by awarding damages on a specific claim, the jury implicitly found that the plaintiff had proven one particular element of that claim).

As set forth in a previous Order, this claim is only partially preempted by the Copyright Act. The preempted portion of Mattel's § 17200 claim did not survive summary judgment and is not at issue here.

Based on the jury's findings that the MGA parties converted Mattel's property, tortiously interfered with its contractual relations, and aided and abetted Bryant's breaches of his fiduciary duty and the duty of loyalty, the Court finds that the MGA parties also violated Cal. Bus. & Prof. Code § 17200.

### C.      § 17200 Injunctive Relief

Where a Court finds violation of § 17200, it has broad powers to shape appropriate injunctive relief:

> Any person who . . . has engaged . . . in unfair competition may be enjoined in any court of competent jurisdiction.  The court may make such orders or judgments, . . . as may be necessary to prevent the use or employment by any person of any practice which [either] constitutes unfair competition, . . . or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. § 17203.

The injunction sought by Mattel's proposed order (as modified by the Court) is necessary to restore to Mattel the property acquired as a result of the MGA parties' unfair competition.

For the reasons set forth above, concurrently herewith, the Court has entered, as modified, Mattel's proposed order for constructive trust and § 17200 injunctive relief.

### IV. Motion for Permanent Injunction (docket #4306)

### A.      Facts Supporting Injunctive Relief

The present motions, to varying degrees, implicate the question of to what extent a Court trying equitable claims is bound by a jury's factual findings related to the same underlying conduct.

EXHIBIT _____ 12_____

PAGE _____ 239_____

The question comes into sharpest focus in Mattel's Motion for Permanent Injunction.

"[W]here legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are based on the same facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993) (internal quotation marks and citation omitted). In the absence of an express finding, a court must determine whether implicit factual determinations by the jury can be inferred, and should consult the jury's verdict and the jury instructions to make this determination. Id. (finding, based on an examination of the jury instructions and the jury's verdict awarding damages as to a specific claim, that the jury implicitly found that plaintiff had proven one particular element of that claim).

The Court is certainly aware that the jury returned an award of damages that was far less than that sought by Mattel. Moreover, the Court is aware that a controversy exists as to the actual amount of the jury's verdict. See Mattel's Submission Regarding Email from Juror No. 7 and Request to Recall the Jury, docket #4288 (denied by Order dated September 3, 2008, docket #4295).

MGA has argued that the jury has found that only the so-called "first generation" Bratz dolls were infringing. The jury made no express finding on this issue; the general verdict form they were provided did not request such a detailed finding. Thus, in accordance with Gates, the Court looks to the jury instructions to determine any implicit findings.

The jury was instructed that "Mattel is entitled to recover any profits attributed to the infringement." MGA attempts to equate the $10 million figure awarded by the jury for copyright infringement to the amount of profits related to the first generation Bratz dolls. The difficulty with this "equation" is that it is woefully unbalanced. To be sure, MGA's damages expert presented evidence that the first generation Bratz dolls netted approximately $4 million in profits; had the jury awarded this amount as copyright damages, then the Court might be persuaded that the jury implicitly found that the infringement was limited to the first generation Bratz dolls. But that is not the case. The factual finding advanced by MGA cannot be inferred from the jury award.

In making this ruling, the Court is mindful of the jury's note that queried whether they could find infringement as to the first generation dolls and no other dolls. The Court, without objection from counsel, answered that question affirmatively. Although this note reveals that the jury considered limiting their finding of infringement to the first generation, it does not reveal that they ultimately chose that conclusion. Again, had the jury awarded an amount equal to the amount of profits generated by the first generation Bratz dolls, the Court would find, based on the award and the jury's note, that the jury implicitly found infringement as to the first generation Bratz dolls only.

Alternatively, counsel posited at oral argument, that the jury found that a large portion of the

MINUTES FORM 90
CIVIL -- GEN

9

Initials of Deputy Clerk: jh

EXHIBIT _____ 12
PAGE _____ 240

Bratz dolls infringed Mattel's copyrights, but only in very minute ways.[5]  Counsel likened the jury's
damage award to a rug that, no matter which way one moved it, simply would not cover the floor.
See Nov. 10, 2008, Tr. at 100-101.  Counsel explained that the jury's findings led to one conclusion
or the other and, regardless of which conclusion was chosen, the jury's finding did not support an
injunction:

> The rug is too small for an injunction, regardless of how you allocate
> that money.  You either come up with a vanishingly small subset of
> infringing products, or you come up with a vanishingly small percentage
> of infringement by all of the products.  And the jury has put that cap for
> us.

Id.  Although colorful, counsel's metaphor is not helpful.  Assuming that the Court would be bound
by a jury's factual finding in a case where only two possible inferences -- both of which would lead
the Court to the same conclusion -- were possible, this is not that case.

Where a jury returns a monetary award based on a particular piece of evidence such as an
expert report, the Court will infer the factual findings that necessarily flow from it.  But where, as
here, the Court and the parties are left to hazard various guesses as to the jury's intentions, the
Court can make no principled inferences and must therefore engage in its own fact-finding.[6]

The Court has carefully examined each of the exhibits attached to the proposed preliminary
injunction, as well as the actual exhibits being stored in Courtroom Four of the U.S. Courthouse in
Riverside, and finds that the dolls depicted in Exs. 3 and 4, and the products depicted in Exs. 5 and
6, are, pursuant to the standard set forth in the Court's Orders dated July 24, 2008, and August 15,
2008, substantially similar to Mattel's registered copyrighted drawings and are embodiments of the
sculpts depicted in Exs. 1 and 2.  In doing so, the Court has first examined the specific expressive
elements of the works at issue and has compared them to those found in the exhibits referenced

---

[5]  This argument was not raised in the opposition papers filed by the MGA parties, and is
rejected for that reason as well.  See Opp. at 21 ("Here, the circumstances clearly show that the
only reasonable conclusion to draw is that the jury's infringement finding was limited to a small
universe of products, specifically the first generation Bratz dolls as clothed and packaged.")
(emphasis added).

[6]  The MGA parties hazard such a guess in their opposition, wherein they attempt to
explain how, in the jury's mind, $4 million in first-generation profits could equate to $10 million total
copyright infringement award: "The jury's decision to award $6 million against MGA[E] (and $10
million total) rather than simply the $4 million] argued by MGA as profits for the first generation
may be due to the jury believing that MGA's proffer of $4 million in profits on nearly $80 million
revenue was a bit low."  Opp. at 21 n.30.  This guessing game illustrates why no factual findings
can be inferred from the jury's copyright infringement award and why the Court is obligated to
make its own factual findings.

MINUTES FORM 90
CIVIL -- GEN

10

Initials of Deputy Clerk: jh

EXHIBIT _____ 12

PAGE _____ 241

above, and the Court has then further examined the overall similarity of the expression in various works from the perspective of the ordinary observer. Although the Court recognizes that there are differences between the works, the Court ultimately finds that those dolls and products set forth in the above-referenced exhibits are **substantially similar** to Mattel's registered copyrighted drawings and are embodiments of the sculpts depicted in Exs. 1 and 2. Especially important to the Court's conclusion is the consistency of the particularized expression of the dolls' heads, lips, eyes, eyebrows, eye features, noses, as well as the particularized expression of certain anatomical features relative to others (most notably the doll lips, doll eyes, doll eyebrows, and certain other doll eye features) and de-emphasis of certain anatomical features (most notably the minimalized doll nose and thin, small doll bodies). Also important to the Court is the particularized, synergistic compilation and expression of the human form and anatomy that quite clearly expresses a unique style and conveys a distinct look or attitude, especially as perceived by the intended consumer market (7-12 year old girls). The evidence on this latter point is particularly compelling, supported by both analytical and market analysis. Together, these features clearly give each of the dolls the particularized expression to which the Court referred in its July 24, 2008, and August 15, 2008, Orders.

## B.    Standard for Awarding Permanent Injunctive Relief

The Supreme Court recently announced the standard for granting a permanent injunction:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

### 1.    Irreparable Injury

The Court begins, then, by looking to whether Mattel has established that it will suffer irreparable injury if an injunction is not granted.

Prior to the eBay decision, where a plaintiff sought a preliminary injunction, irreparable injury was presumed in intellectual property cases; in light of the eBay decision, some doubt has been cast on whether courts should continue to apply that presumption. See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 702 (Fed. Cir. 2008) (noting that the continuing viability of the presumption is "an open question").

Mattel has established its exclusive rights to the Bratz drawings, and the Court has found

MINUTES FORM 90
CIVIL -- GEN                                        11                    Initials of Deputy Clerk: jh

EXHIBIT _____ 12
PAGE _____ 242

that hundreds of the MGA parties' products -- including all the currently available core female fashion dolls Mattel was able to locate in the marketplace -- infringe those rights. The MGA parties have evinced an intention to continue marketing those dolls. This represents a wholesale inability on the part of Mattel to enforce its exclusive rights under the Copyright Act, amounting to irreparable harm. Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005).

MGA criticizes Mattel's reliance on Taylor, citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F.Supp.2d 1197, 1211 n.13 (C.D. Cal. 2007) (Wilson, J.). The Grokster case holds that, in copyright permanent injunction cases, a presumption of irreparable injury is not permitted in light of eBay. In Grokster, the court rejected the rationale of Taylor, stating:

> [T]his Court is not persuaded by the Eighth Circuit's pre-eBay conclusion in Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 968 (8th Cir. 2005), that because "[a plaintiff] certainly has the right to control the use of its copyrighted materials, . . . irreparable harm inescapably flows from the denial of that right." In substance, such language is nothing more than a disguised presumption, particularly with the use of the word "inescapably." After eBay, Plaintiffs cannot rely on the pure fact of infringement in order to establish irreparable harm.

Grokster, 518 F. Supp.2d at 1211 n.13. Judge Wilson's point is well-taken. Although the Taylor court did not purport to apply a presumption of irreparable harm, its use of the word "inescapably" in this phrase certainly could indicate that it was merely presuming irreparable harm. However, a review of the Taylor case makes clear that the Eighth Circuit considered the implications of allowing an infringer to continue to infringe: "[I]n copyright infringement actions, the denial of a request for injunctive relief could otherwise 'amount to a forced license to use the creative work of another.'" Taylor Corp., 403 F.3d at 967-68. This rationale removes Taylor further from the application of a "disguised presumption" of irreparable harm and closer to an actual finding of irreparable harm.

At least one district court within the Ninth Circuit is in accord with the Court's decision today, as it has decided, post-eBay, that a plaintiff who establishes past infringement and the threat of future infringement amounts to irreparable harm. Designer Skin, LLC v. S & L Vitamins, Inc., 2008 WL 4174882 at *5 (D. Ariz. 2008) (Teilborg, J.). Judge Teilborg's rationale is well articulated:

> Whatever else might be said against the propriety of a rule that holds that past infringement plus the threat of future infringement equals irreparable harm, it seems clear to this Court that such a rule would not run afoul of eBay's directives. First of all, the eBay Court did not address the showing necessary to establish "irreparable harm." It merely held that the plaintiff has the burden of proving it. Second, this two-part test does not resurrect the presumption of irreparable harm impliedly laid to rest by the eBay court. It simply recognizes that a

EXHIBIT ___12___

PAGE ___243___

Case 2:04-cv-09049-DOC-RNB    Document 5143-6    Filed 04/08/09    Page 38 of 95    Page ID
#:168043
Case 2:04-cv-09049-SGL-RNB      Document 4439      Filed 12/03/2008      Page 13 of 17

plaintiff meets the burden of proving irreparable harm by making this two-part showing. And finally, the two-part test does not represent a rule [prohibited by eBay] that an injunction automatically follows a determination that a copyright has been infringed. . . . In exercising their equitable discretion, courts would still have the freedom to deny injunctive relief when the public interest or the balance of hardships weighs against such relief.

Designer Skin, 2008 WL 4174882 at *5 (citation omitted).

Indeed, this is not so complex an issue as applied to the facts of this particular case. The statutory directive to the Court is clear: "Any court having jurisdiction of a civil action arising under this title may, . . . grant temporary and final injunctions on such terms as it may deem reasonable **to prevent or restrain infringement of a copyright.**" 17 U.S.C. § 502 (emphasis added). The Court can envision no case more appropriate for a finding of irreparable harm. Here, as the record shows and as the jury found, an employee bound by contract and fiduciary duty to communicate to his employer (and keep confidential from all others) all copyrightable works he creates during the term of his employment, not only fails to so communicate but actually secretly purports to convey the rights thereto to a direct competitor of his employer. The rights to those works are actively concealed from their true owner (by both the employee and the competitor) for years while the competitor exploits the works, reaping profits therefrom totaling hundreds of millions of dollars. After millions of pages of discovery are produced, thousands of filings are submitted, scores and scores of motions are decided by the Court, and after months of trial and two jury verdicts in favor of the plaintiff, defendants remain steadfast in their intention to continue to produce their infringing products. Viewed in this light, Mattel has established irreparable injury on the basis of the MGA parties' past infringement and the high probability of continued acts of infringement.

## 2.    Inadequate Legal Remedies

Unless MGA is enjoined, Mattel would be forced to sue each retailer and distributor to stop the sale and distribution of the infringing dolls; therefore, the legal remedies are inadequate. See Continental Airlines, Inc. v. Intra Brokers, Inc., 24 F.3d 1099, 1105 (9th Cir. 1994).

## 3.    Balance of Equities

Factually, the hardship on MGA weighs very heavily upon the Court. The Court has expressed its concerns in this regard on the record. The evidence at trial showed that, at least historically, Bratz is the brand that has made MGA profitable. And the proposed injunction addresses the core of that brand -- most notably, the female fashion dolls.

However, where, as here, the only hardship that will be suffered is lost profits from the cessation of its infringing activities, the Court, in the final analysis, must afford this very little -- if any -- weight. Triad Systems Corp. v. Southeastern Exp. Co., 64 F.3d 1330, 1338 (9th Cir. 1995) ("Where the only hardship that the defendant will suffer is lost profits from an activity which has

been shown likely to be infringing, such an argument in defense merits little equitable consideration
. . . .") (internal quotation marks and citations omitted), accord, Cadence Design Systems, Inc. v.
Avant! Corp., 125 F.3d 824, 829-30 (9th Cir. 1997) (collecting cases).  The balance of equities
favor Mattel.

### 4.    Public Interest

There is a strong economic interest, especially in these troubled economic times, in
maintaining a profitable enterprise as a going concern.  However, there is also a strong public
interest in enforcing copyright laws in a uniform manner.  Indeed, nothing is more essential to long-
term economic prosperity than the stability provided by the rule of law.  Although the MGA parties
raise excellent points in their opposition, in the end, the public interest is served by precluding
defendants from engaging in copyright infringement.  The injunction issued by the Court does no
more than that.

### C.    Scope of Injunction

The scope of the permanent injunction is set forth in a separate order.  Four issues raised in
the parties' papers warrant the brief discussion that follows.

### 1.    Impoundment and Destruction

As set forth more fully in its motion, Mattel seeks impoundment of Bratz dolls and
destruction of the specialized plates, molds, and matrices used to make them.  Impoundment of
existing infringing products and the destruction of the means to make those products are clearly
remedies contemplated by the Copyright Act.  See 17 U.S.C. § 503(a).  The MGA parties argue
that these remedies are inappropriate because there is no ongoing infringement or, at the very
least, its products infringe very little.  In its findings supporting the issuance of a permanent
injunction, the Court has rejected this premise, and the Court finds that the requested
impoundment and destruction is an appropriate remedy.[7]

### 2.    Recall

In light of the scope of infringement found by the Court, and in light of the fact that the
injunction addresses products that directly compete with Mattel's products, the Court has ordered
the recall of infringing products from retailers.  See CyberMedia, Inc. v. Symantec Corp., 19
F.Supp.2d 1070, 1079 (N.D. Cal.1998); Patry on Copyright, § 22:81.

---

[7]   No party shall destroy any of the implements used to make the Bratz dolls that are the
subject of the permanent injunction absent a specific order of this Court authorizing such
destruction.

MINUTES FORM 90
CIVIL -- GEN

14

Initials of Deputy Clerk: jh

EXHIBIT _____ 12
PAGE _____ 245

### 3.    Royalty

The MGA parties argue that the more appropriate remedy to be imposed here is for the Court to order a royalty instead of an injunction. The difficulty in this proposal is that it is premised on the idea that the ongoing infringement, if any, is minute. See Opp. at 29-32 (suggesting a royalty of .3% would be appropriate). As noted above, the Court has rejected this premise. Moreover, although the Court has been hopeful that an out-of-court resolution involving such a remedy may have been obtained, and has gone to great lengths to encourage both sides to pursue such a resolution in good faith, their failure so far to do so underscores the Court's present view, which is based on the evidence and argument of record, that the hostility between these parties is such that this form of remedy is unworkable.

### 4.    Appointment of a Special Master

Mattel suggests that the Court appoint a special master to "monitor implementation of the relief granted by the Court." Motion at 28. The MGA parties have not indicated their position on this issue. The appointment of a special master to monitor implementation of the permanent injunction is warranted; this task could easily overwhelm the Court's resources. Subject to the Court's consideration of any in camera objections submitted to the Court by the parties, the Court will select a Special Master from the list submitted below.

## V. Motion to Strike Portions of Hutnyan Declarations and Exhibits Thereto
## (docket #4351)

The MGA parties move to strike certain evidence offered by Mattel on the issue of harm suffered by Mattel, contending the evidence is inadmissible. This motion is **DENIED AS MOOT.** Although Mattel has offered additional evidence of harm, the Court has found the evidence of harm to Mattel offered during Phases 1A and 1B sufficient to resolve the issues presented in the current motions.

## VI. Motion to Strike the Proctor, Keiser, and Hollander Declarations
## (docket #4352)

The motion is **DENIED** as to the Proctor declaration. The declaration is a helpful presentation of appropriate argument and/or observations of counsel for the Court's consideration.

The motion is **DENIED** as to the Keiser declaration. The Keiser declaration authenticates two-dimensional depictions of three-dimensional models he scanned using a sophisticated scanning machine.

The motion is **DENIED** as to the Hollander declaration. This declaration was the subject of extensive briefing in MGA's motion in limine 8, which the Court has reviewed. Hollander's declaration, which presents survey evidence of the target market, is relevant to application of the

Initials of Deputy Clerk: jh

EXHIBIT _____ 12
PAGE _____ 246

intrinsic test. The Court, in fact, instructed the jury to consider how girls 7 to 12 would view the Bratz dolls. Hollander's survey attempts to determine just that. The Court has considered the methodological flaws pointed out by MGA in weighing the evidence Hollander presents.

### VII. Motion to Strike Meyer Declaration (docket #4377)

Mattel moves to strike the Meyer declaration. This motion is **DENIED AS MOOT.** This declaration sets forth a calculation justifying the proposed .3% royalty. The Court has rejected the proposal that a royalty be imposed.

### VIII. Stay of this Order

This Order, and the three concurrently filed orders, are stayed pending the Court's consideration of the parties' post-trial motions. This stay shall remain in place until lifted by further Order of this Court.

### IX. Briefing Schedule for Post-Trial Motions

Notwithstanding the Court's earlier order, the motions referred to in ¶ 3 of the Court's September 2, 2008, Order may be filed no later than December 22, 2008. Response briefs may be filed no later than January 12, 2009. Replies may be filed no later than January 19, 2009. A hearing on this matter is set for Wednesday, February 11, 2009, at 10:00 a.m., in Courtroom One of the above-referenced Court.

### X. Discovery Master Proposals for Phase 2

The Court previously stated that it would submit for counsel's consideration the names of potential Discovery Masters for Phase 2 that possess both the resources to handle the scope of the anticipated discovery disputes as well as the personal confidence of this Court. The Discovery Master would serve pursuant to the same terms and conditions of the Phase 1 Discovery Master. In addition, as noted above, the Court also intends to appoint a Special Master to oversee implementation of the permanent injunction. The Court provides for counsels' consideration the following individuals who meet the Court's requirements, and have indicated to the Court a willingness and an ability to serve in one or both of these roles. Counsel are directed to file any objections to any or all of the proposed Masters on or before December 22, 2008. Any such objections are to be submitted *in camera* and under seal with the Court. After considering any objections, as well as any preferences expressed by the parties, the Court will make an appointment at the appropriate time.

EXHIBIT ____ 12

PAGE ____ 247

Patrick A. Fraioli, Jr.
Moldo Davidson et al LLP
2029 Century Park East, 21st Fl.
Los Angeles, CA 90067
310-551-3100
pfraioli@mdfslaw.com

Jan L. Handzlik
Howrey LLP
550 S. Hope Street, Suite 1100
Los Angeles, CA 90071
213-892-1802
handzlikj@howrey.com

Kendall H. MacVey
Best Best & Krieger LLP
P.O. Box 1028
Riverside, CA 92502-1028
951-686-1450

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA 92502
951-682-1771
dmoore@rhlaw.com

Robert C. O' Brien
Arent Fox LLP
555 W. 5th Street, 48th fl.
Los Angeles, CA 90013
213-629-7400
obrien.robert@arentfox.com

C. Michael Zweiback
Alston & Bird LLP
333 S. Hope Street, 16th Fl.
Los Angeles, CA 90071
213-576-1000
michael.zweiback@alston.com

## XI. Jointly Lodged Laptop Computer

The Court is in possession of a jointly lodged laptop computer used to access the Phases 1A and 1B trial transcripts maintained by the parties. The Court will retain possession of the laptop computer until after its ruling on the motions referred to in section IX, above, and the parties are directed to follow the procedure outlined in the Court's September 9, 2008, Order regarding the e-filing of excerpts of transcripts cited in their anticipated motions.

## XII. Service of Permanent Injunction

The service of Mattel's proposed permanent injunction by the Clerk presents challenges given the limited resources of the Court. The permanent injunction, for reasons explained by Mattel on the record, attaches to it approximately 900 color copies. Accordingly, although the Court directs the Clerk to serve on all parties a copy of the permanent injunction, the Court directs Mattel, no later than ten days after the entry of this Order, to serve a copy of the permanent injunction, together with the color exhibits, on all parties.

**IT IS SO ORDERED.**

Initials of Deputy Clerk: jh

EXHIBIT _____ 12

PAGE _____ 248

# Exhibit 13

CALENDARED

**RECEIVED**

JAN 0 8 2009

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date: January 6, 2009

Title:    MATTEL, INC. V. MGA ENTERTAINMENT, INC., et al.
=============================================================================
PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

                James Holmes                         None Present
                Courtroom Deputy Clerk               Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

None Present                             None Present

PROCEEDINGS:    ORDER APPOINTING DISCOVERY MASTER

        As in Phase 1 of this case, the Court intends to appoint a Discovery Master to govern any
discovery disputes that might arise in Phase 2 of this case. The appointment of the Discovery
Master was made at the joint request of the parties in this case. See Stipulation for Appointment of
a Discovery Master and Order, December 6, 2006.

        Pursuant to Federal Rule of Civil Procedure 53(a)(1)(C), the Court continues to believe that
a Discovery Master, as opposed to the assigned Magistrate Judge, is necessary to address what
MGA has aptly described to the Court as "the massive administrative burdens in time and labor
necessary to deal with the enormous complexities, both legal and practical, of the issues in Phase
2" and the "sheer volume of complex civil discovery disputes likely to arise in Phase 2." Based on
the Court's experience in this case, there is no question that a Discovery Master is needed to
"effectively and timely" address the anticipated discovery matters in this case.

        The Court previously submitted to all counsel of record the names of eight attorneys for
consideration by the parties and invited counsel to submit, in camera, any objections to those
attorneys to serve as a Discovery Master (or as a Special Master to oversee the implementation of
the permanent injunction, if needed). The Court has carefully considered the objections submitted.
Two of the individuals named were not the subject of an objection by any party. Of those two, the
Court selects Robert C. O'Brien of Arent, Fox to serve as Discovery Master for Phase 2 of this

MINUTES FORM 90                                              Initials of Deputy Clerk: jh
CIVIL -- GEN                        1

01-06

EXHIBIT _____ 13
PAGE _____ 249

case.

The Discovery Master will serve under the terms and conditions of the Stipulation and Order dated December 6, 2006, the terms and conditions of which were previously agreed to by the parties. The stay on discovery for Phase 2 of this case is hereby VACATED.

Notwithstanding the parties' stated lack of objection to the appointment of Mr. O'Brien as Discovery Master, the Discovery Master is directed to promptly disclose to counsel for all parties any potential grounds for conflict of interest or disqualification, and the parties shall, within three days of receipt of said disclosure, submit any objection to the Court in camera.   A failure to object will be deemed by the Court as a waiver of any objections and consent to Mr. O'Brien to serve as Discovery Master.  The Discovery Master is further directed to contact counsel for all parties and resolve any and all outstanding discovery motions as expeditiously as possible.

IT IS SO ORDERED.

MINUTES FORM 90
CIVIL -- GEN                                              2                          Initials of Deputy Clerk: jh

EXHIBIT _____ 13
PAGE _____ 250

Date Transmit.      1/6/2009 3:00:50 PM

2:04-cv-9049  Doc: 4640

Melissa  Grant
Quinn Emanuel Urquhart Oliver and Hedges
865 South Figueroa Street, 10th Fl
Los Angeles, CA   90017-2543

Number of Pages:      2

*It is hereby certified that this document was served by first class mail postage prepaid or by fax or e-mail delivery to counsel (or parties) at their respective address or fax number or e-mail address of record.*

EXHIBIT ____13____

PAGE ____251____

MIME-Version:1.0
From:cacd_ecfmail@cacd.uscourts.gov
To:ecfnef@cacd.uscourts.gov
Bcc: johnquinn@quinnemanuel.com , randaosman@quinnemanuel.co
m , amorgenthaler@chrisglase.com , rkennedy@skadden.com , tn
olan@skadden.com , carl.roth@skadden.com , marcus.mumford@sk
adden.com , eherich@kmwlaw.com , timalger@quinnemanuel.com ,
joncorey@quinnemanuel.com , michaelzeller@quinnemanuel.com
, burrow@caldwell-leslie.com , wilson@caldwell-leslie.com ,
popescu@caldwell-leslie.com , kenneth.plevan@skadden.com , d
rogosa@skadden.com , sumclaug@skadden.com , acote@obsklaw.co
m , feseroma@obsklaw.com , marina.bogorad@skadden.com , dyla
nproctor@quinnemanuel.com , westonreid@quinnemanuel.com , st
ankaras@quinnemanuel.com , gayleduran@quinnemanuel.com , sgi
zer@glaserweil.com , robynaronson@dwt.com , frankromero@dwt.
com , cdowell@kmwlaw.com , cyrusnaim@quinnemanuel.com , leah
@spertuslaw.com , mikelly@skadden.com , sandyweisburst@quinn
emanuel.com , nef@cacd.circ9.dcn , obrien.robert@arentfox.co
m , prosper.pierre@arentfox.com , barbara_north@cacd.uscourt
s.gov , dscheper@obsklaw.com,feseroma@obsklaw.com_sumry,   l
mcfarland@kmwlaw.com, moverland@obsklaw.com,jhibino@obsklaw
.com_sumry,  jrussell@skadden.com,allison.velkes@skadden.com
_sumry, tholen@caldwell-leslie.com,mejia@caldwell-leslie.co
m,wilson@caldwell-leslie.com,  dwinthrop@howardrice.com,  di
anehutnyan@quinnemanuel.com,andreahoeven@quinnemanuel.com,
dhansen@skadden.com,  alexstolyar@quinnemanuel.com,  crd_blo
ck@cacd.uscourts.gov,crd_block@cacd.uscourts.gov_sumry,  crd
_larson@cacd.uscourts.gov,kathie_pimentel@cacd.uscourts.gov_
sumry,crd_larson@cacd.uscourts.gov_sumry,  crd_larson@cacd.u
scourts.gov,kathie_pimentel@cacd.uscourts.gov_sumry,crd_lars
on@cacd.uscourts.gov_sumry, Prosper.Pierre@Arentfox.com, Bar
bara_North@cacd.uscourts.gov,
Jerome B FalkHoward Rice Nemerovski Canady Falk & Rabkin3 Em
barcadero Ctr  7th FlSan Francisco CA 94111-4024,
Kien C TietStern and Goldberg6345 Balboa Boulevard, Suite 20
0Encino CA 91316,
Lauren E AguiarSkadden Arps Slate Meagher & Flom1440 New Yor
k AveWashington DC 20005-2111,
Melissa  GrantQuinn Emanuel Urquhart Oliver and Hedges865 So
uth Figueroa Street, 10th FlLos Angeles CA 90017-2543,
Cheryl  PlambeckDavis & Gilbert LLP1740 BroadwayNew York NY
10019US,
Amy R SabrinSkadden Arps Slate Meagher & Flom LLP1440 New Yo
rk Avenue NWWashington DC 20005-2111US,
David W FosterSkadden Arps Slate Meagher & Flom LLP1440 New

EXHIBIT _____ 13

PAGE _____ 252

York Avenue NWWashington DC 20036US,
Peter H BonisPeter Bonis Law Offices1990 N California Bl
vd, 8th FloorWalnut Creek CA 94596US
Message-Id:
Subject:Activity in Case 2:04-cv-09049-SGL-RNB Carter Bryant
v. Mattel Inc Order
Content-Type: text/html***NOTE TO PUBLIC ACCESS USERS*** Jud
icial Conference of the United States policy permits attorne
ys of record and parties in a case (including pro se litigan
ts) to receive one free electronic copy of all documents fil
ed electronically, if receipt is required by law or directed
by the filer. PACER access fees apply to all other users.
To avoid later charges, download a copy of each document dur
ing this first viewing. However, if the referenced document
is a transcript, the free copy and 30 page limit do not appl
y.'
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF
CALIFORNIA
Notice of Electronic Filing


The following transaction was entered  on 1/6/2009 at 2:31 P
M PST and filed
on 1/6/2009


Case Name:
Carter Bryant v. Mattel Inc
Case Number:2:04-cv-9049

Filer:

Document Number:

<a href=https://ecf.cacd.uscourts.gov/doc1/03107239590?magic
_num=MAGIC&de_seq_num=14130&caseid=167222
>4640


Docket Text:

EXHIBIT ___ 13
PAGE ___ 253

ORDER APPOINTING DISCOVERY MASTER by Judge Stephen G. Larson
: [re Order extend]
time [4503], Stipulation for Extension of Time to File, [449
0]; the Court
selects Robert C. O&#039;Brien of Arent, Fox to serve as Dis
covery Master
for Phase 2 of this case.  The stay on discovery for Phase 2
 of this case
is hereby VACATED.  Notwithstanding the parties&#039; stated
 lack of objection
to the appointment of Mr. O&#039;Brien as Discovery Master,
the Discovery
Master is directed to promptly disclose to counsel for all p
arties any potential
grounds for conflict of interest or disqualification, and th
e parties shall,
within three days of receipt of said disclosure, submit any
objection to
the Court in camera.  A failure to object will be deemed by
the Court as
a waiver of any objections and consent to Mr. O&#039;Brien t
o serve as Discovery
Master.  The Discovery Master is further directed to contact
 counsel for
all parties and resolve any and all outstanding discovery mo
tions as expeditiously
as possible. See order for complete text.  (jh)


2:04-cv-9049 Notice has been electronically mailed to:


John B Quinn        johnquinn@quinnemanuel.com

Randa A F Osman       randaosman@quinnemanuel.com

David C Scheper       dscheper@obsklaw.com,feseroma@obsklaw.co
m_sumry


.

EXHIBIT ____13____

PAGE ____254____

Larry W McFarland      lmcfarland@kmwlaw.com

Raoul D Kennedy       rkennedy@skadden.com

Mark E Overland       moverland@obsklaw.com, jhibino@obsklaw.co
m_sumry


Thomas J Nolan        tnolan@skadden.com, carl.roth@skadden.com
, marcus.mumford@skadden.com


Emil W Herich         eherich@kmwlaw.com

Jason D Russell       jrussell@skadden.com, allison.velkes@skad
den.com_sumry


Timothy L Alger        timalger@quinnemanuel.com

Sandra L Tholen       tholen@caldwell-leslie.com, mejia@caldwel
l-leslie.com, wilson@caldwell-leslie.com


Jon D Corey       joncorey@quinnemanuel.com

Douglas Andrew Winthrop       dwinthrop@howardrice.com

Michael T Zeller       michaelzeller@quinnemanuel.com

Linda M Burrow       burrow@caldwell-leslie.com, wilson@caldwe
ll-leslie.com, popescu@caldwell-leslie.com


Diane C Hutnyan       dianehutnyan@quinnemanuel.com, andreahoev
en@quinnemanuel.com


Kenneth A Plevan       kenneth.plevan@skadden.com, drogosa@ska
dden.com, sumclaug@skadden.com

EXHIBIT      13

PAGE      255

Marina Vladimir Bogorad        marina.bogorad@skadden.com

Brett Dylan Proctor        dylanproctor@quinnemanuel.com, westo
nreid@quinnemanuel.com

Stan  Karas        stankaras@quinnemanuel.com, gayleduran@quinn
emanuel.com, westonreid@quinnemanuel.com

Scott E Gizer        sgizer@glaserweil.com

David W Hansen        dhansen@skadden.com

Robyn  Aronson        robynaronson@dwt.com, frankromero@dwt.com

Oleg  Stolyar        alexstolyar@quinnemanuel.com

Christian C Dowell        cdowell@kmwlaw.com

Cyrus S Naim        cyrusnaim@quinnemanuel.com

Leah Chava Gershon        leah@spertuslaw.com

Michael P Kelly        mikelly@skadden.com

Sanford I Weisburst        sandyweisburst@quinnemanuel.com

2:04-cv-9049 Notice has been delivered by First Class U. S.
Mail or by
fax to: :

Jerome B Falk
Howard Rice Nemerovski Canady Falk & Rabkin
3 Embarcadero Ctr  7th Fl
San Francisco CA 94111-4024

EXHIBIT____13
PAGE____256

Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino CA 91316


Lauren E Aguiar
Skadden Arps Slate Meagher & Flom
1440 New York Ave
Washington DC 20005-2111


Melissa  Grant
Quinn Emanuel Urquhart Oliver and Hedges
865 South Figueroa Street, 10th Fl
Los Angeles CA 90017-2543


Cheryl  Plambeck
Davis & Gilbert LLP
1740 Broadway
New York NY 10019
US

Amy R Sabrin
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington DC 20005-2111
US

David W Foster
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington DC 20005-2111
US

Peter H Bonis
Peter H. Bonis Law Offices
1990 N. California Blvd, 8th Floor
Walnut Creek CA 94596
US

EXHIBIT_____13_____
PAGE_____257_____

# Exhibit 14



1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

MATTEL, INC.,                    )
                                 )
                  Plaintiff,     )
                                 )
        vs.                      )   No. CV 04-09049
                                 )
MGA ENTERTAINMENT, INC., ET. AL.,)
                                 )
                  Defendants.    )
_____)   Motions
AND CONSOLIDATED ACTIONS,        )
                                 )
_____)


REPORTER'S TRANSCRIPT OF PROCEEDINGS

Riverside, California

Wednesday, February 11, 2009

10:03 A.M.


THERESA A. LANZA, RPR, CSR
Federal Official Court Reporter
3470 12th Street, Rm. 134
Riverside, California  92501
951-274-0844
WWW.THERESALANZA.COM

2

```
 1   APPEARANCES:

 2   ON BEHALF OF MATTEL, INC.:

 3                         QUINN EMANUEL
                          By:  JOHN QUINN
 4                             DYLAN PROCTOR
                              MICHAEL T. ZELLER
 5                        865 S. FIGUEROA STREET,
                         10TH FLOOR
 6                        LOS ANGELES, California  90017
                         213-624-7707
 7

 8   ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
     (Outgoing)
 9                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:  THOMAS J. NOLAN
10                             JASON RUSSELL
                          300 SOUTH GRAND AVENUE
11                        LOS ANGELES, CALIFORNIA  90071-3144
                         213-687-5000
12

13   ON BEHALF OF MGA ENTERTAINMENT/ISAAC LARIAN:
     (Incoming)
14                         GLASER, WEIL, FINK, JACOBS & SHAPIRO, LLP
                          BY:  JOEL KLEVENS
15                        10250 Constellation Boulevard
                         Los Angeles, California  90067
16                        310-553-3000

17                        MITCHELL, SILBERBERG & KNUPP LLP
                          BY:  RUSSELL J. FRACKMAN
18                        11377 West Olympic Boulevard,
                         Los Angeles, California  90064-1683
19                        310-312-2000

20
     ON BEHALF OF DEFENDANT GUSTAVO MACHADO:
21
                          OVERLAND BORENSTEIN SCHEPER & KIM LLP
22                        BY:  ALEXANDER H. COTE
                         601 West Fifth Street,
23                        12th Floor
                         Los Angeles, California  90071
24                        213-613-4660

25   / / /
```

EXHIBIT 14
PAGE 55

dnesday, February 11, 2009                      Mattel vs. MGA Entertainmen

3

```
 1                      I N D E X  (Continued)

 2

 3    APPEARANCES  (continued):

 4
      On behalf of OMNI 808:
 5

 6                          BINGHAM McCUTCHEN LLP
                            BY:  Todd E. Gordinier
 7                          600 Anton Boulevard
                            Costa Mesa, CA  92626-1924
 8                          714-830-0622

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                        EXHIBIT        14

25                                        PAGE           260
```

Wednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

4

```
 1                        I N D E X

 2                                           Page

 3    Motions.......................................    4

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                    EXHIBIT _____ 14

25                                    PAGE _____ 261
```

:dnesday, February 11, 2009                    Mattel vs. MGA Entertainme:

93

 1          THE COURT:  What's your sense?

 2          MR. KLEVENS:  I would hope we could have a trial date

 3   in the latter part of November.

 4          THE COURT:  Of this year?

 5          MR. KLEVENS:  Yes, and work backward from that with        02:28

 6   our other deadlines, rather than pushing this all of the way to

 7   next spring.  And I'm hoping that we'll find ways to reduce the

 8   incredibly exorbitant amount of discovery that took place in

 9   Phase 1 and the incredible expense to both parties that was

10   entailed in that and figure out some ways to streamline some of    02:28

11   this in Phase 2 so that we don't have that kind of thing that

12   counsel and parties had in Phase 1.  And I think a tighter

13   schedule will hopefully facilitate that as well.

14          THE COURT:  Very well.

15          So if we had a November trial date, you'd be            02:29

16   suggesting a discovery cutoff, then, in July or August?

17          MR. KLEVENS:  I guess, right, or September.

18          THE COURT:  Because we'd still have to fit in the

19   dispositive motions.

20          MR. KLEVENS:  You're saying the motions would have to    02:29

21   follow the discovery cutoff?

22          THE COURT:  Yes.  I found it helps to have --

23          MR. KLEVENS:  So I guess August would be the

24   discovery cutoff.

25          THE COURT:  Very good.        EXHIBIT ___ 14        02:29

                                          PAGE ___ 762

1          MR. KLEVENS:  I would simply request the latter part

2   of November rather than the early part, because we do have a

3   conflict in the first week of November, the 5th and 13th.

4          (Brief pause. )

5          THE COURT:  I think, on the one hand, trying to wrap

6   up discovery, given my understanding of the Phase 2 issues, by

7   August or even September, I think, is unworkable.

8          At the same time, I do agree that spring of next

9   year, given how much discovery has gone on here and my sincere

10  hopes that we will be able to streamline discovery, is too much

11  time.

12         I'm going to set a discovery cutoff for the end of

13  this year; December 11, 2009 will be the discovery cutoff.

14         I have just received a note.

15         There's another defendant in this case.

16         Counsel, you did not weigh in on this.

17         MR. COTE:  Alexander Cote, representing Gustavo

18  Machado.

19         Either plan sounds fine with us, Your Honor.  We

20  don't anticipate a lot of discovery, so we'll defer to counsel.

21         Would that be for expert and fact discovery?

22         THE COURT:  All discovery cutoff, all discovery will

23  be done by this date.

24         MR. COTE:  Thank you.

25         THE COURT:  We've gone through this before; all

02:32

02:33

02:34

02:34

02:34

EXHIBIT    14
Mattel vs. MGA Entertainmer
PAGE    263

95

1    discovery is cut off December 11, 2009.

2            I will schedule dispositive motions for February 1st,

3    2010, at 10:00 A.M.; I'll schedule a pretrial conference for

4    March 1st, 2010, at 11:00 A.M.; and the trial date for Phase 2

5    will be March 23, 2010, at 9:30 A.M.  I will have the cutoff        02:35

6    for the mandatory settlement conference also scheduled for

7    December 11, 2009.

8            My hope would be that we could wrap this case up this

9    year, but, if not, we'll have dispositive motions and the trial

10   in the early part of next year.                                    02:35

11           Are there any conflicts, known conflicts at this

12   point, with any of those dates?

13           From Mattel's perspective?

14           MR. ZELLER:  No.  Not with Mattel, Your Honor.

15           THE COURT:  With MGA?                                       02:35

16           MR. KLEVENS:  I don't believe so, Your Honor.

17           MR. COTE:  None, Your Honor.

18           THE COURT:  Very well.

19           Is there anything else we need to address at this

20   time?                                                              02:35

21           MR. ZELLER:  Yes, Your Honor.

22           Given these deadlines -- and I regret having to

23   embroil the Court in this, because this is a, quote, "discovery

24   issue," but it involves the Court's orders from January.

25           As I've mentioned, we have received nothing from MGA,      02:35

EXHIBIT _____ 14

96

1    even as to things that were compelled before the stay.  They

2    have been taking the position that the Court's orders of

3    January 6th and January 7th effectively stayed our ability to

4    get financial discovery.

5              I would ask the Court to make a ruling on this.          02:36

6              I regret having to raise it, but we are going to lose

7    at least another month, if not another two months, in getting

8    financial information which is absolutely critical for our

9    ability to prepare for this.  And this is one reason why I was

10   suggesting as long as I was.                                       02:36

11             THE COURT:  I understand, Counsel.

12             MR. ZELLER:  But, the idea that there's a stay in

13   place is --

14             THE COURT:  I thought I made it clear that I lifted

15   all stays on discovery, but perhaps not.                           02:36

16             MR. KLEVENS:  The system the Court has set up cannot

17   work if counsel are allowed to come to the Court and give some

18   distorted view of what they think the dispute is about and not

19   leave it to the Discovery Master to look at and resolve and

20   give the parties the opportunity to brief.                         02:36

21             I'm not going to respond to what he says.  I don't

22   agree with a word that he said.  But I'm not going to

23   respond to it.

24             THE COURT:  I think you have responded, Counsel, and

25   I take your response at its value.                                 02:37

EXHIBIT ____14____

Wednesday, February 11, 2009                    Mattel vs. MGA Entertainmer

PAGE ____265____

1    we'll go from there.

2              **MR. ZELLER:**    Thank you.

3              **THE COURT:**    Anything further?

4              Thank you.    Good day.

5

6

7

8

9

10                              CERTIFICATE

11

12   I hereby certify that pursuant to section 753, title 28, United
     States Code, the foregoing is a true and correct transcript of
13   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
14   conformance with the regulations of the Judicial Conference of
     the United States.

15

16   _____          _____
     THERESA A. LANZA, CSR, RPR                        Date
17   Federal Official Court Reporter

18

19

20

21

22

23

24

25

                                                        14

EXHIBIT
Mattel vs. MGA Entertainme:
PAGE _____ 766

# Exhibit 15

**Filed Under Seal
Pursuant to Protective Order**

# Exhibit 16

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  | John B. Quinn (Bar No. 090378)
2 | (johnquinn@quinnemanuel.com)
  | Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
  | Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
  | 865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
  | Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | EASTERN DIVISION

| 12 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|----|-------------------------------|--------------------------------|
| 13 | Plaintiff, | Consolidated with |
| 14 | vs. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| 15 | MATTEL, INC., a Delaware corporation, | **MATTEL, INC.'S** *EX PARTE*<br>**APPLICATION FOR** |
| 16 | | **APPOINTMENT OF A RECEIVER**<br>**FOR MGA OR FOR** |
| 17 | Defendant. | **ALTERNATIVE RELIEF; AND** |
| 18 | AND CONSOLIDATED ACTIONS | **MEMORANDUM OF POINTS AND**<br>**AUTHORITIES** |
| 19 | | [Declaration of Michael T. Zeller and |
| 20 | | Proposed Order filed concurrently] |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

EXHIBIT \_\_\_\_16\_\_\_\_

PAGE \_\_\_\_284\_\_\_\_

MATTEL'S EX PARTE APPLICATION

07209/2744159.4

1  Mattel, Inc. ("Mattel") hereby respectfully applies *ex parte*, pursuant to Fed.

2 R. Civ. P. 66 and Local Rule 7-19, for an Order Appointing a Receiver for MGA

3 Entertainment, Inc., or for alternative relief, including without limitation for

4 expedited discovery.

5  Mattel makes this Application on the grounds that MGA has filed, both in this

6 Court and in the Ninth Circuit, stay applications based on MGA's claims of

7 imminent financial insolvency, including for reasons that MGA admits are unrelated

8 to the prospect of injunctive relief.  Regardless of whether MGA's assertions are

9 credited, MGA's repeated, conflicting assertions about its financial condition raise

10 serious doubts about its ability to (a) pay the Phase 1 trial damages award and any

11 award rendered in Phase 2 trial to Mattel and (b) maintain and preserve the Bratz

12 intellectual property that the jury and this Court determined are Mattel's.

13 Furthermore, there is mounting evidence that MGA and Larian have engaged in

14 questionable business arrangements and failed to disclose to the Court and Mattel

15 significant financial information, including the identity of the ultimate source of the

16 funding that MGA has been receiving since Phase 1B from a series of off-shore,

17 non-operating entities.  A receiver should be appointed, and MGA and Larian

18 should be ordered to pay the costs and fees associated with the receiver.

19 Alternatively, Mattel seeks leave to take expedited discovery into this subject

20 matter.

21  Good cause exists to seek this relief on an *ex parte* basis.  MGA claims that

22 its demise is imminent, and Mattel recently learned of additional questionable

23 practices by MGA and Larian.  Although Mattel has also asked for the appointment

24 of a receiver as a condition for any stay pending appeal, this Application seeks

25 appointment of a receiver regardless of the outcome of MGA's stay applications and

26 further relief such as expedited discovery.

27  Pursuant to Local Rule 7-19, on December 24, 2008, Mattel's counsel gave

28 notice of this Application and the relief being sought to counsel for the MGA

EXHIBIT_____16

PAGE____285

MATTEL'S EX PARTE APPLICATION

1  Parties, Jason Russell of Skadden, Arps, Slate, Meagher & Flom LLP (telephone:
2  213-687-5000; address: 300 South Grand Avenue, Suite 3400, Los Angeles,
3  California 90071). Counsel for defendants stated that the MGA Parties oppose this
4  Application.

5      This Application is based on this Notice of Application, the accompanying
6  Memorandum of Points and Authorities, the Declaration of Michael T. Zeller (and
7  its exhibits) filed concurrently herewith, the lodged Declarations of Michael J.
8  Wagner and Jon D. Corey, the records and files of this Court, including without
9  limitation the Phase 1 trial record, and all other matters of which the Court may take
10  judicial notice.

11

12  DATED:  December 28, 2008          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
13

14                                     By /s/ Michael T. Zeller
15                                       Michael T. Zeller
                                         Attorneys for Mattel, Inc.
16

17

18

19

20

21

22

23

24

25

26

27

28

072209/2744159.3

-ii-

EXHIBIT ___16___

PAGE ___286___

MATTEL'S EX PARTE APPLICATION

1  deposed on October 22, 2008, he repeatedly invoked his alleged right against self

2  incrimination and refused to provide substantive answers to Mattel's questions about

3  his theft.

4        **E.**    **Mattel's Interests Will Be Well-Served By The Appointment, And**

5             **It Is Highly Probable That Harm To Mattel By Denial Of**

6             **Appointment Would Outweigh Injury To Defendants**

7        MGA has no legitimate claim of cognizable injury from the appointment of a

8  receiver.  Mattel suggests the appointment of a receiver with experience in the toy

9  industry, to operate the company under the guidance of the Court and without

10  shareholder interference, to maximize MGA's long term profits and viability.  MGA

11  may not claim injury when the sole charter is to preserve its assets and long-term

12  existence.  To the contrary, MGA, its shareholders and employees should welcome

13  such a receiver, given that the current executive staff is responsible for MGA's

14  apparent impeding financial crisis.

15  **III.**  **ALTERNATIVELY,**   **EXPEDITED**   **DISCOVERY**   **SHOULD**   **BE**

16       **ORDERED**

17        "[T]he form and quantum of evidence required on a motion requesting the

18  appointment of a receiver is a matter of judicial discretion."  12 Wright, Miller &

19  Marcus, <u>Federal Practice and Procedure 2d</u> § 2983.  Mattel respectfully submits that

20  the existing evidence is sufficient to warrant the appointment of a receiver.

21  However, as the Court is aware, Mattel's pre-trial discovery efforts into MGA's

22  financials were significantly thwarted.[53]  Then, during Phase 1B trial, MGA and

23  Larian radically revised even what little they had disclosed and offered entirely new

24  financial information.  This was then followed by MGA's attempts to retreat from

25  its own sworn statements in opposing Mattel's injunction, only to be promptly

26  contradicted by MGA's current (and wholly conclusory and inconsistent) claims

27  
28  [53]  Trial Tr. at 5957:22-5958:20.

EXHIBIT ____ 16

PAGE ____ 284

MATTEL'S EX PARTE APPLICATION

1  about its financial status.   Nor has MGA produced its actual financial records,[54] and

2  Mattel has never had the opportunity to take discovery into that information or into

3  subsequent events involving MGA's finances.[55]

4      Accordingly, in the event that the Court believes that additional evidence is

5  appropriate or necessary before proper consideration of Mattel's application, Mattel

6  requests in the alternative expedited discovery regarding MGA's and Larian's

7  finances.   Such discovery should include (without limitation) the depositions of

8  Isaac Larian, Farhad Larian, the other officers and agents of IGWT, Omni,

9  Lexington, their various affiliates and any other persons or entities doing business

10  with them and any other person or entity with knowledge of the pertinent facts.   It

11  also should include (without limitation) the production of complete records showing

12  the sources of all funds and credit to MGA, the identity of IGWT, Omni and

13  Lexington, the arrangements that MGA and the Larians have with these and other

14  creditors, their current net worth and assets, transactions between MGA and/or Isaac

15  Larian and any person or company owned, in whole or in part, by Mr. Larian or

16  persons related to him.

17

18

19

20

21

22

23

24

25  [54] See, e.g., Federal Sav. & Loan Ins. Corp. v. Dixon, 835 F.2d 554, 566 (5th Cir.

26  1987) (recognizing adverse inference permissible based upon defendants' failure to

27  provide information regarding net worth to assist court in fashioning injunction).

28  [55]   Zeller Dec., ¶ 16.

EXHIBIT _____ 16

PAGE _____ 208

MATTEL'S EX PARTE APPLICATION

1

### Conclusion

2          For the foregoing reasons, Mattel respectfully requests that the Court appoint

3   a receiver.  In the alternative, the Court should grant Mattel expedited discovery into

4   MGA's and Larian's finances.

5

6   DATED:  December 28, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

7

8                                     By /s/ Michael T. Zeller

9                                        Michael T. Zeller
                                         Attorneys for Mattel, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _____ 16

PAGE _____ MATTEL'S EX PARTE APPLICATION

# Exhibit 17

**Filed Under Seal**
**Pursuant to Protective Order**

# Exhibit 18

1   Bingham McCutchen LLP
    TODD E. GORDINIER (SBN 82200)
2   todd.gordinier@bingham.com
    PETER N. VILLAR (SBN 204038)
3   peter.villar@bingham.com
    JENNIFER A. LOPEZ (SBN 232320)
4   jennifer.lopez@bingham.com
    600 Anton Boulevard
5   18th Floor
    Costa Mesa, CA  92626-1924
6   Telephone:  714.830.0600
    Facsimile:  714.830.0700
7

8   Attorneys for Non-party
    OMNI 808 INVESTORS, LLC
9
                    UNITED STATES DISTRICT COURT
10
                 CENTRAL DISTRICT OF CALIFORNIA
11
                          EASTERN DIVISION
12

13

| | |
|---|---|
| Carter Bryant, an individual, | Case No. CV 04-9049 SGL (RNBx) |
| Plaintiff, | **OMNI 808 INVESTORS, LLC'S** *EX PARTE* **APPLICATION FOR LEAVE TO INTERVENE FOR LIMITED PURPOSE AS A MATTER OF RIGHT OR, IN THE ALTERNATIVE, FOR PERMISSIVE INTERVENTION** |
| v. | |
| Mattel, Inc., a Delaware Corporation, | |
| Defendant. | |
| | Judge:  Hon. Stephen G. Larson |
| AND CONSOLIDATED ACTIONS | |

2-3-09

A/72829697.5/3009108-0000335082

EXHIBIT ____18____

PAGE ____296____

1    Omni 808 Investors, LLC ("Omni") hereby applies *ex parte* pursuant to Rule

2    24(a) or, in the alternative, Rule 24(b) of the Federal Rules of Civil Procedure and

3    Local Rule 7-19, for an order authorizing it to intervene for the limited purpose of

4    responding to Mattel, Inc.'s ("Mattel") *Ex Parte* Application for Appointment of a

5    Receiver for MGA Entertainment, Inc. ("MGA") and all other issues related to

6    Omni's status as a secured creditor of MGA.

7    Omni makes this application on the grounds that Mattel's request for the

8    appointment of a receiver at MGA may have an immediate and irreparable adverse

9    impact on Omni, MGA's largest secured creditor. Omni satisfies all of the

10   requirements to intervene as a matter of right: the application is timely; Omni has

11   a significantly protectable interest relating to the property or transaction involved

12   in the pending lawsuit; disposition of the lawsuit may adversely affect Omni's

13   interest unless intervention is allowed; and the existing parties do not adequately

14   represent Omni's interest. In the alternative, the Court should exercise its

15   discretion to grant permissive intervention because Omni has a claim that shares a

16   common question of law or fact with the main action.

17   Good cause exists to seek this relief on an *ex parte* basis because Mattel has

18   made its request for the appointment of a receiver on an *ex parte* basis. If the

19   Court appoints a receiver, Omni may suffer irreparable harm.

20   Pursuant to Local Rule 7-19, on February 2, 2009, Omni's counsel gave

21   notice of this *ex parte* application and the relief being sought to counsel for MGA,

22   Robert Herrington of Skadden, Arps, Slate, Meagher & Flom LLP (telephone: 213-

23   687-5000; address: 300 South Grand Avenue, Suite 3400, Los Angeles, California

24   90071) and counsel for Mattel, Jon Corey of Quinn Emanuel Urquhart Oliver &

25   Hedges, LLP (telephone: 213-443-3000; address: 865 South Figueroa Street, 10th

26   Floor, Los Angeles, California 90017-2543). Counsel for MGA stated that MGA

27   will not oppose this application. Counsel for Mattel stated that Mattel will oppose

28

- 1 -

EXHIBIT ___**18**___

PAGE ___**297**___

A/72829697.5/3009108-0000335082

1   this application because it is Mattel's view that MGA as debtor can adequately

2   protest the interests of its largest secured creditor.  Omni disagrees.

3         This application is based on this Notice of *Ex Parte* Application, the

4   accompanying Memorandum of Points and Authorities, the records and files of this

5   Court, including without limitation the Phase 1 trial record, and all other matters of

6   which the Court may take judicial notice.

7

8   DATED:  February 3, 2009        Bingham McCutchen LLP

9

10

11   By:                      

                              Todd E. Gordinier

12                              Attorneys for Non-party
                              Omni 808 Investors, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

EXHIBIT __18__

PAGE __298__

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................... 1

II.   STATEMENT OF FACTS ................................................................. 3

III.  LEGAL ARGUMENT ....................................................................... 6

    A.    Omni is Entitled to Intervene as a Matter of Right for the Limited Purpose of Protecting Omni's Status as a Secured Creditor ......................................................................... 6

        1.    Omni's Application Is Timely. ........................................ 7

        2.    Omni Has a Significantly Protectable Interest in the Receivership Issues Involved in the Pending Litigation. .......... 7

        3.    The Appointment of a Receiver May Impair or Impede Omni's Ability to Protect Its Interests. ....................................... 8

        4.    The Existing Parties May Not Adequately Represent Omni's Interest. ............................................................... 9

    B.    In the Alternative, This Court Should Grant Omni Permissive Intervention ...................................................................... 10

IV.  CONCLUSION ............................................................................... 11

EXHIBIT ____ 18

PAGE ____ 299

-i-

A/72829697.5/3009108-0000335082

# TABLE OF AUTHORITIES

Page(s)

FEDERAL CASES

*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir. 2003) ........................................................................ 6, 9

*Beckman Indus. Inc. v. International Ins. Co.,*
  966 F.2d 470 (9th Cir. 1992) ............................................................................ 6

*Commerz Union Austalt v. Collectors' Guild, Ltd.,*
  792 F. Supp. 870 (S.D.N.Y. 1991) ................................................................... 8

*DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.,*
  187 F. Supp. 910 (S.D. Ohio 2001) .................................................................. 9

*Donnelly v. Glickman,*
  159 F.3d 405 (9th Cir. 1998) ............................................................................ 6

*Engra, Inc. v. Gabel,*
  958 F.2d 643 (5th Cir. 1992) ............................................................................ 7

*Forest Conservation Council v. United States Forest Serv.,*
  66 F.3d 1489 (9th Cir. 1995) ............................................................................ 7

*Kootenai Tribe v. Veneman,*
  313 F.3d 1094 (9th Cir. 2002) ........................................................................ 10

*League of United Latin American Citizens v. Wilson,*
  131 F.3d 1297 (9th Cir. 1997) .......................................................................... 6

*Lockyer v. U.S.,*
  450 F.3d 436 (9th Cir. 2006) ............................................................................ 6

*Meyer Jewelry Co. v. Meyer Holdings, Inc.,*
  906 F. Supp. 428 (E.D. Mich. 1995) ................................................................ 9

*Mountain Top Condominium v. Dave Stabbert Master Builder,*
  72 F.3d 361 (3rd Cir. 1995) .............................................................................. 8

*NL Indus. v. Secretary of Interior,*
  777 F.2d 433 (9th Cir. 1985) ............................................................................ 8

-ii-

EXHIBIT 18

PAGE 300

*Reich v. ABC/York-Estes Corp.,*
   64 F.3d 316 (7th Cir. 1995)................................................................3

*Rumbaugh v. Beck,*
   491 F. Supp. 511 (E.D. Pa. 1980)....................................................9

*Saluck v. Rosner,*
   1999 WL 46620 (E.D. Pa. Jan. 6, 1999)........................................9

*San Juan County v. U.S.,*
   503 F.3d 1163 (10th Cir. 2007).......................................................7

*SEC v. Flight Transp. Corp.,*
   699 F.2d 943 (8th Cir. 1983)...........................................................8

*Sierra Club v. EPA,*
   995 F.2d 1478 (9th Cir. 1993).........................................................8

*Southwest Center for Biological Diversity v. Berg,*
   268 F.3d 810 (9th Cir. 2001).......................................................3, 7

*Stringfellow v. Concerned Neighbors in Action,*
   480 U.S. 370 (1987) .......................................................................6

*Trbovich v. United Mine Workers,*
   404 U.S. 528 (1972) .......................................................................9

*U.S. v. South Florida Water Dist.,*
   922 F.2d 704 (11th Cir. 1991).........................................................7

*United States v. State of Washington,*
   86 F.3d 1499 (9th Cir. 1996)...........................................................7

*Venegas v. Skaggs,*
   867 F.2d 527 (9th Cir. 1989)..........................................................11

*Yniguez v. Arizona,*
   939 F.2d 727 (9th Cir. 1991)...........................................................8

**RULES**

Fed. R. Civ. P. 24(a) .........................................................................6

Federal Rule of Civil Procedure 24(b)(2)......................................10

-iii-

EXHIBIT 18

PAGE 301

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Non-party Omni 808 Investors, LLC ("Omni") is the largest secured creditor of MGA Entertainment, Inc. ("MGA"). Omni recently was served with a sweeping subpoena from Mattel, Inc. ("Mattel") in connection with this litigation requesting the production of documents relating to Omni's formation, governance, finances, business relationships and transactions. Mattel's papers in support of its request to have the Court appoint a receiver to "oversee and control all business and financial aspects" of MGA mischaracterize Omni, its principals and the transaction Mattel purports to describe to this Court. Because the appointment of a receiver could significantly and irreparably harm Omni's interests as a senior secured creditor of MGA, Omni hereby seeks leave of Court to intervene in this action for this limited purpose.

Mattel's *ex parte* application is replete with false and misleading representations and demonstrates Mattel's profound misunderstanding, *inter alia*, of Omni and the circumstances surrounding its recent purchase of MGA's debt from non-party Wachovia. The actual background of this transaction is both straightforward and easily explained. In October 2006, Wachovia Bank, National Association and a syndicate of other financial institutions (collectively, "Wachovia") provided a senior revolving credit facility to MGA (the "Senor Bank Credit Facility"). In July 2008, Wachovia accelerated the maturity of the outstanding debt obligations owed to Wachovia by MGA (over $310 million), demanding full and immediate payment of the entire unpaid balance as it was entitled to do under the terms of its Senior Bank Credit Facility.

In response to Wachovia's accelerated loan payment demand, MGA began efforts to find someone who would purchase the Senior Bank Credit Facility from Wachovia. Neil Kadisha, the Managing Partner of a diversified investment firm, Omninet Capital, LLC, was approached and began discussions with Wachovia

- 1 -

EXHIBIT **18**

PAGE **362**

1    regarding a potential purchase of the Senior Bank Credit Facility.  In September

2    2008, Wachovia and Omni (a special purpose entity formed by Mr. Kadisha for

3    this transaction) entered into an assignment and exchange agreement whereby

4    Omni acquired all right, title and interest in the Senior Bank Credit Facility

5    excluding approximately $21 million which was retained by Wachovia.  Omni's

6    purchase of the Senior Bank Credit Facility from Wachovia was a straightforward,

7    arms-length business deal between non-parties to this action.

8         In support of its argument for the appointment of a receiver, Mattel

9    insinuates, without any evidence, that there was something untoward about the

10   timing and circumstances of Omni's debt purchase transaction.  Mattel falsely

11   represents to the Court that MGA received new "sudden funding" from an "off-

12   shore, non-operating" entity during the trial of this action.  Even allowing for its

13   ignorance of the actual terms of the Omni-Wachovia transaction, there is no reason

14   for such language.  If by "funding" Mattel means the loan from Wachovia, that

15   funding was provided by Wachovia to MGA under the Senior Bank Credit Facility

16   beginning in 2006 -- *long before the trial and any judgment was entered against*

17   *MGA in this action in 2008.*  If by "funding" Mattel means the Omni-Wachovia

18   transaction, the monies flowed *from Omni to Wachovia* as consideration for the

19   purchase of the debt owed by MGA.  The timing of the Omni-Wachovia

20   transaction in September 2008 was driven by a host of factors, most proximately

21   by Wachovia's decision to accelerate the outstanding debt obligation under the

22   Senior Bank Credit Facility.

23        Moreover, the source was not an "off-shore, non-operating" entity, as Mattel

24   repeatedly suggests in its application.  Wachovia (defined to include it and its

25   syndicate of bank and other institutional lenders), the original source of the

26   funding, are all substantial financial institutions; Omni, the assignee of the loan, is

27   a California limited liability company.  Mattel's paranoiac rhetoric regarding this

28   transaction and the source of the funding is unfounded.

EXHIBIT __**18**__

PAGE __**303**__

- 2 -

1    Under federal law, a non-party is entitled to intervene *as a matter of right*
2    when it claims an interest relating to the property or transaction that is the subject
3    of the action and is so situated that disposing of the action may as a practical
4    matter impair or impede its ability to protect its interest. A non-party may also
5    intervene, in the discretion of the court, when it has a claim that shares with the
6    main action a common question of law or fact.

7    Here, Omni has a secured interest in MGA's assets, including, *inter alia,*
8    MGA's inventory and accounts receivable, that is far greater and superior to any
9    alleged interest of unsecured creditors like Mattel. Mattel is asking this Court for
10   an extraordinary remedy, solely to suit its own litigation and competitive interests,
11   which if granted could well cripple MGA's operations and would certainly impair
12   the security interests of Omni and other creditors. Indeed, the proffered basis for
13   Mattel's opposition to Omni's application for leave to intervene -- that a debtor can
14   adequately represent the interests of its largest secured creditor -- speaks volumes
15   about Mattel's approach not only to this issue but also to its actual motivations in
16   making its request for a receiver.

17   For these reasons, Omni respectfully requests that the Court grant it leave to
18   intervene in this action for the purposes of challenging the appointment of a
19   receiver and related issues that could adversely affect Omni's security interests.

20

21   **II.    STATEMENT OF FACTS[1]**

22   On or about October 27, 2006, MGA entered into a Credit Agreement with
23   Wachovia Bank, National Association and a syndicate of other banks and

24   _____

25   [1] In evaluating a motion to intervene, courts must accept as true all nonconclusory
26   allegations contained in the motion. *Southwest Center for Biological Diversity v.*
     *Berg*, 268 F.3d 810, 819 (9th Cir. 2001); *Reich v. ABC/York-Estes Corp.*, 64 F.3d
27   316, 321 (7th Cir. 1995).

28
                                        - 3 -                    EXHIBIT __18__

                                                                PAGE __304__

1   institutional lenders (collectively, "Wachovia"), pursuant to which Wachovia

2   provided a senior revolving credit facility to MGA in an aggregate available

3   amount for borrowing up to $400 million, secured by a senior perfected security

4   interest in, *inter alia*, all of MGA's inventory and accounts receivable (the "Senior

5   Bank Credit Facility"). On July 21, 2008, Wachovia declared the Senior Bank

6   Credit Facility to be in default and accelerated the maturity of the outstanding debt

7   obligations owed to Wachovia by MGA, demanding full and immediate payment

8   of the entire unpaid $313,496,700 balance of the loans.

9        In response to Wachovia's accelerated loan payment demand, MGA

10  approached Neil Kadisha, a highly regarded businessman and philanthropist who is

11  currently the Managing Partner of a diversified investment firm, Omninet Capital,

12  LLC.[2] Mr. Kadisha and Omninet Capital, LLC have substantial experience

13  evaluating and investing in distressed debt and distressed companies. Mr. Kadisha

14  immediately commenced negotiations with Wachovia regarding a potential

15  purchase of the Senior Bank Credit Facility from Wachovia.

16       On or about July 29, 2008, Omninet Capital, LLC made an offer to acquire

17  the Senior Bank Credit Facility, including the outstanding debt obligations from

18  Wachovia for $109,723,845 (representing 35% of the $313,496,700 principal

19  amount of the debt obligations outstanding as of the acceleration date). After a

20  couple weeks of heavy negotiations, Wachovia agreed to sell and assign its interest

21  in all but $21,944,769 of the outstanding debt obligations under the Senior Bank

22  Credit Facility to Omni (the retained amount was then exchanged for unsecured

23  promissory notes issued by MGA to Wachovia). In order to fund the acquisition of

24  

25  [2] Omni is loathe to address the gratuitous ad hominem attacks concerning Mr.
    Kadisha and an ongoing civil litigation matter in the papers filed by Mattel, which
26  are inaccurate, incomplete and irrelevant, but if the Court is at all concerned by
    those matters Omni is prepared to do so. Suffice it to say for now that the civil
27  litigation matter referred to by Mattel has not yet been finally resolved.

28  

- 4 -

EXHIBIT ___18___

PAGE ___305___

A/72829697.5/3009108-0000335082

1    the Senior Bank Credit Facility, Mr. Kadisha solicited various private investors and

2    formed a special purpose entity, Omni 808 Investors, LLC, a California limited

3    liability company ("Omni")[3]. The formation of a special purpose entity is very

4    common for these types of transactions and is neither suspicious nor improper.

5        On or about September 3, 2008, Omni and Wachovia entered into a written

6    Master Assignment and Exchange Agreement whereby Omni acquired all right,

7    title and interest in the debt obligations under the Senior Bank Credit Facility,

8    other than the $21,944,769 exchanged for the unsecured promissory notes issued

9    by MGA to Wachovia Bank, National Association and the other original lenders.

10    As a result of the agreement, Omni stepped into and presently stands, as successor-

11    in-interest, in the position of Wachovia under the Senior Bank Credit Facility and

12    has a senior perfected security interest in MGA's assets, including, *inter alia,*

13    MGA's inventory and accounts receivable. Omni's secured interest is superior to

14    that of any potential unsecured creditors, including Mattel.

15        Omni has a compelling interest in the financial health and stability of MGA

16    and its assets. If MGA fails, MGA's ability to repay the outstanding debt

17    obligation in excess of $300 million owed to Omni will certainly be imperiled.

18    The appointment of a receiver to "oversee and control all financial and business

19    aspects" of MGA, solely to satisfy Mattel's interests, would harm MGA's ability to

20    operate independently and efficiently and would infringe upon, or potential

21    foreclose, the interests of Omni and other creditors.

22

23

24

25

---

26    [3] Mattel erroneously refers to Omni 808 International, LLC, in its *ex parte*

27    application, which further demonstrates Mattel's confusion regarding the entities
involved.

28

-5-

EXHIBIT __**18**__

PAGE __**306**__

III. **LEGAL ARGUMENT**

   A.   **Omni is Entitled to Intervene as a Matter of Right for the Limited Purpose of Protecting Omni's Status as a Secured Creditor**

Omni is entitled to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a). Rule 24(a) provides that a court must permit a non-party to intervene who "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest . . . ." *See also, Lockyer v. U.S.*, 450 F.3d 436, 440 (9th Cir. 2006). The Ninth Circuit construes Rule 24 liberally in favor of applicants for intervention. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). The inquiry required under Rule 24(a)(2) is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate. *Donnelly*, 159 F.3d at 409. "In determining whether intervention is appropriate, we are guided primarily by practical and equitable considerations. We generally interpret the requirements broadly in favor of intervention." *Id.*

When a non-party claims an interest relating to the subject property or transaction of the action, courts generally require four factors: (1) a timely application; (2) the applicant has a "significantly protectable" interest relating to the property or transaction involved in the pending lawsuit; (3) the disposition of the lawsuit may adversely affect applicant's interest unless intervention is allowed; and (4) the existing parties may not adequately represent the would-be intervenor's interest. *Arakaki*, 324 F.3d at 1083; *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).

Additionally, a district court has the discretion to grant a non-party limited intervention for certain issues or purposes. *See Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378 (1987); *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *Beckman Indus. Inc. v. International Ins. Co.*, 966 F.2d

- 6 -

EXHIBIT 18

PAGE 307

1    470, 473 (9th Cir. 1992). "A nonparty may have a sufficient interest for some

2    issues in a case but not others, and the court may limit intervention accordingly."

3    *U.S. v. South Florida Water Dist.*, 922 F.2d 704, 707 (11th Cir. 1991); *San Juan*

4    *County v. U.S.*, 503 F.3d 1163, 1203 (10th Cir. 2007).

5              1.    Omni's Application Is Timely.

6              Courts generally consider the following factors relevant to the issue of

7    timeliness: (1) the stage of the proceedings at the time the applicant seeks to

8    intervene; (2) the prejudice to the existing parties from applicant's delay in seeking

9    leave to intervene; and (3) any reason for and the length of delay in seeking

10   intervention. *United States v. State of Washington*, 86 F.3d 1499, 1502 (9th Cir.

11   1996); *Engra, Inc. v. Gabel*, 958 F.2d 643, 644 (5th Cir. 1992).

12             Here, Omni's application is timely.  On or about January 9, 2009, Mattel

13   served a subpoena on Omni requesting the production of documents relating to

14   Omni's formation, governance, finances, business relationships and transactions.

15   Omni also recently learned that Mattel filed an *ex parte* application for the

16   appointment of a receiver at MGA.  The Court has yet to decide the pending

17   request for the appointment of a receiver and Omni has acted without delay.

18             2.    Omni Has a Significantly Protectable Interest in
                     the Receivership Issues Involved in the Pending
19                   Litigation.

20             "[W]hether an applicant for intervention demonstrates sufficient interest in

21   an action is a practical, threshold inquiry.  No specific legal or equitable interest

22   need be established." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d

23   810, 818 (9th Cir. 2001) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th

24   Cir. 1993)); *see also Forest Conservation Council v. United States Forest Serv.*, 66

25   F.3d 1489, 1493 (9th Cir. 1995).  "It is generally enough that the interest [asserted]

26   is protectable under some law, and that there is a relationship between the legally

27   protected interest and the claims at issue." *Southwest Center for Biological*

28   *Diversity*, 268 F.3d at 818 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th

-7-

EXHIBIT ___ **16**

PAGE ___ **208**

A/72829697.5/3009108-0000335082

1     Cir. 1993)). *See, e.g., NL Indus. v. Secretary of Interior*, 777 F.2d 433, 435 (9th

2     Cir. 1985) (corporate property owner that held unpatented mining claim on

3     particular property permitted to intervene in dispute over other mining claims on

4     that property). An intervenor's interest must be "significantly protectable such that

5     it will be directly and immediately affected by the litigation." *Werbungs und*

6     *Commerz Union Austalt v. Collectors' Guild, Ltd.*, 792 F. Supp. 870, 874

7     (S.D.N.Y. 1991) (court allows intervention by investor in one party when investor

8     had secured appeal bond and owned collateral securing letter of credit).

9        Here, Omni is the largest secured creditor of MGA, with a superior interest

10    in MGA's assets to any unsecured creditors including Mattel. Omni's interest is

11    directly related to issues raised by Mattel in its *ex parte* application for the

12    appointment of a receiver. Therefore, Mattel has a significantly protectable

13    interest relating to the property or transaction which is the subject of this action.

14

              3.    The Appointment of a Receiver May Impair or
15                    Impede Omni's Ability to Protect Its Interests.

16        In order to show that the disposition of the action may impair or impede the

17    ability to protect a non-party's interest, the non-party need only show a "practical"

18    impairment, "not whether the decision itself binds them." *Yniguez v. Arizona*, 939

19    F.2d 727, 735 (9th Cir. 1991). Courts consistently allow creditors to intervene "of

20    right" where a receiver has been appointed and taken control of a debtor's assets.

21    The rationale is that the first creditor's action may effectively foreclose the

22    interests of other creditors. *See Sierra Club v. U.S.*, 995 F.2d 1478, 1486 (9th Cir.

23    1993); *SEC v. Flight Transp. Corp.*, 699 F.2d 943, 947 (8th Cir. 1983); *Mountain*

24    *Top Condominium v. Dave Stabbert Master Builder*, 72 F.3d 361, 366-367 (3rd

25    Cir. 1995).

26        Here, the appointment of a receiver to "oversee and control all financial and

27    business aspects" of MGA, as Mattel proposes, could cripple MGA's business and

28    impair Omni's ability to protect its senior perfected security interest in its

- 8 -

EXHIBIT __18__

PAGE __305__

1    collateral, which includes MGA's inventory and accounts receivable and

2    ultimately in MGA's ability to repay its outstanding secured debt obligation to

3    Omni of in excess of $300 million. The financial and business affairs of MGA are

4    best handled independently by businessmen who understand its products and its

5    industry.[4]

6            4.    The Existing Parties May Not Adequately
7                  Represent Omni's Interest.

8            In order to demonstrate the inadequacy of the existing parties to protect its

9    interest, the applicant's burden is minimal and is satisfied so long as the applicant

10   shows that representation by existing parties *"may be"* inadequate. *Trbovich v.*

11   *United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). The Ninth Circuit considers

12   three factors in determining the adequacy of representation: "(1) whether the

13   interest of a present party is such that it will undoubtedly make all of a proposed

14   intervenor's arguments; (2) whether the present party is capable and willing to

15   make such arguments; and (3) whether a proposed intervenor would offer any

16   necessary elements to the proceeding that other parties would neglect." *Arakaki,*

17   324 F.3d at 1086 (citing *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775,

18   778 (9th Cir.1986)). "The most important factor in determining the adequacy of

19   representation is how the applicant's interest compares with the interest of existing

20   parties." *Id.*

21

22   [4] Courts are reluctant to appoint receivers to solvent corporations. *See, e.g.,*
23   *DeBoer Structures, Inc. v. Shaffer Tent & Awning Co.*, 187 F. Supp. 910, 925 (S.D.
     Ohio 2001) (declining to appoint receiver despite other facts in favor of doing so
24   where corporation was solvent and productive); *Meyer Jewelry Co. v. Meyer*
     *Holdings, Inc.*, 906 F. Supp. 428, 434 (E.D. Mich. 1995) ("The deleterious effects
25   of a receivership would result in more harm than good in this case."); *Rumbaugh v.*
     *Beck*, 491 F. Supp. 511, 521 (E.D. Pa. 1980) (finding that because a corporation
26   was presently operating in a successful manner, appointment of a receiver would
     "be potentially more harmful than if one were not implanted"); *Saluck v. Rosner,*
27   1999 WL 46620, at *2 (E.D. Pa. Jan. 6, 1999) ("the appointment of a receivership
     of a solvent corporation is a drastic remedy.").
28

                                    - 9 -

EXHIBIT    18

PAGE    310

A/72829697.5/3009108-0000335082

1      Here, the interests of the present parties are not such that they will

2   undoubtedly make all of Omni's arguments in opposition to the appointment of a

3   receiver.  Obviously Mattel's interests are directly at odds with Omni's interests.

4   Further, although MGA also opposes the appointment of a receiver, there is no

5   reason to believe that it can or will make all of Omni's arguments on its behalf.

6   Omni's primary interest is in MGA's ability to repay its secured debt obligation of

7   in excess $300 million owed to Omni.  Moreover, Omni is in the best position to

8   describe the facts and circumstances surrounding its purchase of the Senior Bank

9   Credit Facility from Wachovia.

10      According to Mattel's counsel, it is Mattel's view that MGA as debtor can

11   adequately protect the interests of its largest secured creditor.  Mattel's position is

12   nonsensical as the financial interests of a debtor and secured creditor are, on their

13   face, aligned differently.  Therefore, the existing parties may not adequately

14   represent Omni's interest regarding the appointment of a receiver and other issues

15   relating to Omni's status as a secured creditor.

**B.    In the Alternative, This Court Should Grant Omni Permissive Intervention**

18      Even if Omni were not entitled to intervene as a matter of right, the Court

19   should exercise its discretion and permit its intervention in this matter.  Under

20   Federal Rule of Civil Procedure 24(b)(2), permissive intervention should be

21   granted whenever the "applicant's claim . . . and the main action have a question of

22   law or fact in common," and when the intervention would not "unduly delay or

23   prejudice the adjudication of the rights of the original parties."  Fed. R. Civ. P.

24   24(b)(2).  The existence of a "common question" is liberally construed.  *Kootenai*

25   *Tribe v. Veneman*, 313 F.3d 1094, 1108-1109 (9th Cir. 2002).  A proposed

26   intervenor under Rule 24(b)(2) "need not demonstrate a 'significantly protectable'

27   interest relating to the property or transaction which is the subject of the action.'"

28   *Defenders of Wildlife*, 2005 WL 3260986, at *2 (citing *Kootenai Tribe of Idaho v.*

- 10 -

EXHIBIT **B**

PAGE **311**

A/72829697.5/3009108-0000335082

1   *Veneman*, 313 F.3d 1094, 1108-09 (9th Cir. 2002)).  Omni meets each of these

2   requirements.

3       Here, as explained above, there are common questions of law and fact

4   between Omni's claims and the issues raised in Mattel's application to appoint a

5   receiver.  Moreover, Omni's participation will not unduly delay or prejudice the

6   adjudication of the rights of the original parties.  Omni's participation will be

7   limited to challenging Mattel's request to appoint a receiver and protecting its

8   interests as a secured creditor.  The burden is on the parties to plead and prove any

9   alleged prejudice. *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989).

10

11  **IV.   CONCLUSION**

12      For the foregoing reasons, Omni respectfully requests the Court grant this

13  application and authorize it to intervene for the limited purpose of responding to

14  Mattel's request for the appointment of a receiver for MGA and all other issues

15  related to the proposed receiver or Omni's status as a secured creditor of MGA.

16

17  DATED:  February 3, 2009          Bingham McCutchen LLP

18

19

20                                    By: _____
                                         Todd E. Gordinier
21                                       Attorneys for Non-party
                                         Omni 808 Investors, LLC
22

23

24

25

26

27

28

- 11 -

EXHIBIT 18
PAGE 312

# Exhibit 19

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
FRED MASHIAN
3102747001

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

FRED MASHIAN
9255 SUNSET BOULEVARD
SUITE 830
LOS ANGELES, CA 90069
USA

DOCUMENT NUMBER: 19230630002
FILING NUMBER: 08-7170419109
FILING DATE: 08/24/2008 14:20
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| VISION CAPITAL, LLC, A DELAWARE LIMITED LIABILITY COMPANY | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1525 SOUTH BROADWAY | LOS ANGELES | CA | 90015 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | LLC | DE | 4580296 ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| LEXINGTON FINANCIAL LIMITED, A NEVIS COMPANY | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 33-35 DAWS LANE | LONDON | | NW7 43D | GBR |

4. This FINANCING STATEMENT covers the following collateral:
ALL OF DEBTOR'S RIGHT, TITLE AND INTEREST IN MEMBERSHIP INTERESTS OF OMNI 808 INVESTORS, LLC, A
CALIFORNIA LIMITED LIABILITY COMPANY,
SECRETARY OF STATE FILING #200821610026.

5. ALT DESIGNATION: ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum [if applicable]

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY

EXHIBIT 19

313

# Exhibit 20

California Business Search                                   Page 1 of 1



**DISCLAIMER:** The information displayed here is current as of Dec 26, 2008 and is updated weekly. It is not a complete or certified record of the Limited Partnership or Limited Liability Company.

| LP/LLC | | |
|---|---|---|
| IGWT GROUP, LLC | | |
| **Number:** 200817910004 | **Date Filed:** 6/26/2008 | **Status:** active |
| **Jurisdiction:** CALIFORNIA | | |
| **Address** | | |
| 237 NORTH CAROLWOOD DRIVE | | |
| LOS ANGELES, CA 90077 | | |
| **Agent for Service of Process** | | |
| NATIONAL CORPORATE RESEARCH, LTD. (C2003899) | | |

Blank fields indicate the information is not contained in the computer file.

If the agent for service of process is a corporation, the address of the agent may be requested by ordering a status report. Fees and instructions for ordering a status report are included on the Business Entities Records Order Form.

EXHIBIT _____ 20 _____

PAGE _____ 314 _____

EXHIBIT _____ 11 _____

PAGE _____ 40 _____

Exhibit 50
Page 704