# Exhibit 43

1

1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3        EASTERN DIVISION

4           - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6           - - -

7    MATTEL, INC.,                    )
                                       )
8                   Plaintiff,         )
                                       )
9          vs.                         )   No. CV 04-09049
                                       )
10   MGA ENTERTAINMENT, INC., ET. AL., )
                                       )
11                  Defendants.        )
     _____   )   HEARING
12

13

14

15           REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              Riverside, California

17           Tuesday, December 30, 2008

18              10:04 A.M.

19

20

21

22

23           THERESA A. LANZA, RPR, CSR
             Federal Official Court Reporter
24           3470 12th Street, Rm. 134
             Riverside, California  92501
25           951-274-0844
             WWW.THERESALANZA.COM

CERTIFIED COPY

EXHIBIT __43__

2

```
 1   APPEARANCES:

 2
     On behalf of Mattel, Inc.:
 3
                         QUINN EMANUEL
 4                       By:   JOHN QUINN
                               MICHAEL T. ZELLER
 5                             DYLAN PROCTOR
                         865 S. FIGUEROA STREET,
 6                       10TH FLOOR
                         LOS ANGELES, California  90017
 7                       213-624-7707

 8

 9
     ON BEHALF OF MGA ENTERTAINMENT:
10
                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
11                       BY:   THOMAS J. NOLAN
                               JASON RUSSELL
12                       300 SOUTH GRAND AVENUE
                         LOS ANGELES, CALIFORNIA  90071-3144
13                       213-687-5000

14

15

16

17

18

19

20

21

22

23

24

25                                      EXHIBIT  43

                                        PAGE  570
```

Tuesday, December 30, 2008                      Mattel vs. MGA

3

```
 1                        i N D E X
 2                                              Page
 3    HEARING......................................    4
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25                              EXHIBIT ___ 43
                                PAGE ___ 51
```

Tuesday, December 30, 2008                    Mattel vs. MGA

56

1   2001 through 2007.

2          He points to $3 million of profits.  It's true, but

3   profit is different than revenues.  And the reason profits

4   suffered, respectfully, is because of extraordinary costs like

5   this case.  What we're talking about here, and the evidence is          01:37

6   uncontroverted, MGA's primary, or in Mr. Quinn's showing, only

7   profitable line, if this Court's orders are not stayed, will be

8   enjoined.  MGA's revenue from its only, according to Mr. Quinn,

9   profitable line will not be received by the company.  Mr. Wing

10  says it's at least 44 percent of the revenues.  MGA will lose         01:38

11  $150 million in sunk costs.  There is no question that this

12  will cause grave, potentially catastrophic, harm; and they

13  haven't even tried to rebut that.

14         Now, I understand he wants to get to the receiver

15  argument, which we were forced to respond to in 12 hours.  And       01:38

16  we can do that on Monday.  But for purposes of today, there is

17  absolutely no showing, none whatsoever, from Mattel that this

18  will not kill MGA.  It will kill MGA.  That is the record

19  before trial.  That is the record before you.

20         **THE COURT**:  Very well.                                     01:38

21         I think both prudence and equity require the Court to

22  modify its previous order, extending the stay to February 11th.

23         Having said that, I find simply no grounds to grant

24  the motion as phrased, a motion for stay pending appeal, for

25  the reasons that I stated earlier.  There is simply no way of        01:39

EXHIBIT ___43___

Tuesday, December 30, 2008

PAGE ___512___
Mattel vs. MGA

57

1   measuring the likelihood of success of an appeal of a decision

2   that has yet to be made.  And, likewise, the Court does have

3   serious questions about the irreparable harm.

4         In suggesting that I need to modify my previous stay,

5   I am not making a finding of irreparable harm.  And it's not on

6   that basis.  Rather, it is on the basis that I believe there is

7   a serious concern that the Court has that the status quo would

8   not be preserved on February 11th if the Court did not take

9   appropriate steps to modify its previously-entered stay.

10        So it is my intention to do so.

11        I happen to believe that this is inextricably

12   intertwined, however, with issues raised by Mattel in terms of

13   the finances of MGA, which at this point, quite frankly, are a

14   mystery to the Court.  And that mystery was compounded in part

15   by what I read on appeal, what I've heard from counsel, what

16   I've seen in other papers.  I just don't know what exactly is

17   going on with all of that, and I want to explore that at

18   Monday's hearing on that motion.

19        What I intend to do, following Monday's hearing, is

20   issue a written order which will set forth how '09 will

21   proceed, pending, of course, any decisions that the Court makes

22   on February 11th.  Because if the Court were to rule in MGA's

23   favor on February 11th, that would, if not eviscerate,

24   certainly unravel those decisions made after Phase 1-C. But I

25   do accept the evidence that a degree of certainty needs to be

EXHIBIT __ 43

Tuesday, December 30, 2008

PAGE __ 513
Mattel vs. MGA

58

1  maintained in order to preserve the status quo; and the Court
2  will be issuing an order to that effect following the hearing
3  on Monday.

4         That is the most that I can give at this point.  I
5  trust that there is probably a lot of work for MGA to do with          01:41
6  its suppliers and buyers to make sure that we can go forward.
7  The Court would certainly provide leave to both parties to
8  submit language that the Court might wish to consider to
9  address the concern, and only the concern, that the Court has
10 identified, how to preserve the 2009 buying season, purchasing          01:41
11 and buying season, for Bratz.

12        I think that is all the evidence supports.  I think
13 that's all the relief that is warranted at this stage, at this
14 posture of the litigation, and much remains to be seen in terms
15 of how things fold out on February 11th.  The more immediate           01:41
16 concern of the Court, though, is preserving the status quo; and
17 we'll take that up and the financial questions that the Court
18 has on Monday.

19        Are there any questions concerning where the Court is
20 at at this point?                                                      01:42
21        Mr. Nolan?
22        MR. NOLAN:  No, your Honor.  Thank you.
23        THE COURT:  Mr. Quinn?
24        MR. QUINN:  No, your Honor.
25        THE COURT:  Very well.                                          01:42

EXHIBIT __43__

PAGE __54__

1          Good day.  And Happy New Year.

2

3

4                          CERTIFICATE

5

6    I hereby certify that pursuant to section 753, title 28, United
     States Code, the foregoing is a true and correct transcript of
7    the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
8    conformance with the regulations of the Judicial Conference of
     the United States.
9

10   _____            1-7-09
     THERESA A. LANZA, CSR, RPR           _____
11   Federal Official Court Reporter          Date

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                        EXHIBIT  43

                                        PAGE  515

Tuesday, December 30, 2008                 Mattel vs. MGA

# Exhibit 44

CONFORMED COPY

LODGED

FILED

2007 MAY 16  PM 1: 59   2007 MAY 16  PM 2: 00

CLERK U.S. DISTRICT COURT   CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.   CENTRAL DIST. OF CALIF.
RIVERSIDE   RIVERSIDE
BY ____   BY ____

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:   (415) 774-2611
4   Facsimile:   (415) 982-5287

5

6

7               UNITED STATES DISTRICT COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9                       EASTERN DIVISION

10

11   CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                             JAMS Reference No. 1100049530
12            Plaintiff,

13        v.                                 Consolidated with
                                             Case No. CV 04-09059
14   MATTEL, INC., a Delaware corporation,   Case No. CV 05-2727

15            Defendant.                     **ORDER GRANTING MATTEL'S
                                             MOTION TO COMPEL PRODUCTION
16                                           OF DOCUMENTS AND
                                             INTERROGATORY RESPONSES BY
17   CONSOLIDATED WITH                       MGA**
     MATTEL, INC. v. BRYANT and
18   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
19

20
                            I.  INTRODUCTION
21
          On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production
22
     of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February
23
     20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a
24
     reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under
25
     submission pending the parties' submission of a propo ed protective order, which was received
26

27

28
     Bryant v. Mattel, Inc.,                                              1
     CV-04-09049 SGL (RNBx)

EXHIBIT _____ 44
PAGE _____ 516

1   on April 23, 2007.  Having considered the motion papers and comments of counsel at the hearing,

2   Mattel's motion to compel is granted.

3                                      II.  BACKGROUND

4          A.  Requests for Documents

5              In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6   became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7   categories of documents, to be produced in ten days.  MGA filed a motion to quash, which the

8   court granted because of the short amount of time provided for compliance with the subpoena.

9   The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10  some of Mattel's requests.  In particular, the parties agreed to limit production to the "first

11  generation" Bratz dolls.  On August 12, 2004, MGA produced documents.

12             In 2005, the parties stipulated to supplementing their document productions on May 16,

13  2005.  Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14             In September of 2006, MGA made a supplemental production of documents.  On February

15  5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16  with legibility problems.  On February 20, 2007, MGA produced an additional 224 pages of

17  documents to replace earlier produced documents with legibility problems.

18             Mattel now moves to compel MGA to produce documents responsive to its requests.  As a

19  preliminary matter, Mattel contends that MGA's production is deficient because it contains

20  redactions and cut-off text.  Further, Mattel contends that MGA's production is incomplete with

21  respect to essentially five categories of documents.  First, Mattel contends that MGA is

22  withholding documents relating to the origins of Bratz and Bryant's work for MGA.  Mattel

23  believes that MGA's production is incomplete based upon its review of documents that have been

24  produced by third party Steven Linker.  According to Mattel, Linker's documents from October

25  of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26  previously represented.  Mattel also contends that MGA's responses to the document requests

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___44___

PAGE ___517___

1    contain inappropriate limitations, such as MGA's statement that it will produce "relevant and

2    responsive non-objectionable documents" or only that it will produce documents "sufficient" to

3    show when certain dates relating to Bratz occurred.  Mattel contends that these "carve outs

4    purport to allow MGA to cherry-pick what it will and will not produce to Mattel."  Mattel's

5    Separate Statement at 17:11-13.  Mattel also contends that the carve-outs fail to provide notice of

6    what is or is not being withheld.  Mattel also contends that MGA's objections based upon its

7    confidentiality concerns or the privacy rights of third parties are unwarranted in light of the

8    protective order in place.  In addition, Mattel contends that MGA's objection to producing

9    documents relating to activities or conduct in foreign countries is wholly improper because those

10   documents may contain information relevant to Mattel's claims.

11        Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether

12   such documents relate to the "first generation" Bratz dolls.  Mattel argues that whether the work

13   ultimately resulted in Bratz dolls that were released at a particular time does not matter for

14   discovery purposes.  Mattel contends that the works created by Bryant during his Mattel

15   employment are highly relevant because Mattel owns them, regardless of whether they resulted in

16   a Bratz doll released at a particular time.[1]

17        Mattel next contends that MGA is improperly withholding documents about designs

18   Bryant created on Bratz dolls that were released after June 2001, even though such designs may

19   be derivative of work he did when employed by Mattel.  Mattel contends that it is entitled to

20   explore whether such works and the profits from Bratz dolls other than the "first generation"

21   Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability

22   and damages.  Furthermore, Mattel asserts that the "first generation" limitation on discovery is

23   improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary

24   information as well MGA's unfair competition claims.

25   _____

26        [1]  Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion
     to compel Bryant to produce documents.

27

28

Bryant v. Mattel, Inc.,                                                                    3
CV-04-09049 SGL (RNBx)

EXHIBIT ___ 44

PAGE ___ 518

1    Mattel also asserts that MGA is improperly withholding documents relating to products,

2 services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3 Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4 Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5 Inventions Agreement.

6    Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7 payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8 because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9 (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10 damages; and (3) payments may show when and what trade secret information Bryant and other

11 defendants allegedly misappropriated from Mattel.

12    Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13 contends that all agreements between Bryant and MGA are relevant, not just the original

14 September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15 documents relating to MGA and Bryant's alleged joint defense agreement because such

16 information would be relevant to demonstrate bias and lack of credibility.

17    Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18 statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19 information may reveal relevant information about the date of creation of Bryant's Bratz

20 drawings.

21    In response, MGA denies withholding responsive documents and asserts that it has

22 produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23 that it has produced all responsive and relevant documents that it was able to locate in response to

24 request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25 before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26 motion. In particular, MGA represents that it is diligently working to produce documents related

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT __44__
PAGE __519__

1  to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,
2  49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed
3  Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that
4  have been released on the market.  In addition, MGA represents that it has agreed to produce
5  documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More
6  specifically, MGA represents that it agreed to review and produce documents provided to it by
7  Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for
8  Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.
9  Therefore, MGA views the motion as unnecessary.

10       MGA next contends that Mattel's motion should be denied for the following additional
11  reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for
12  unreleased products.  MGA asserts that its product design documents for its unreleased toy
13  concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that
14  designs and drawings for products currently under development, over six years after Bryant first
15  created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that
16  documents relating to unreleased products are ordered produced, MGA requests a protective order
17  under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically
18  than the current protective order provides.  In the alternative, MGA requests that any order
19  compelling production of documents relating to unreleased products should essentially be stayed
20  until after MGA's products are publicly released.

21       Second, MGA contends that Mattel is not entitled to information concerning Bryant's
22  attorneys' fees because the information is privileged.  Furthermore, MGA contends that the
23  information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests
24
25
26
27
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___44___

PAGE ___520___

1   in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2   Opposition at 24:9-12.[2]

3        Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4   and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5   refused to produce similar types of documents.  More significantly, MGA contends that Mattel's

6   requests for non-public witness statements are "a blatant attempt to avoid the discovery

7   limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8   imposed by this Court."  MGA's Opposition at 25:6-7.  MGA explains its position as follows.

9   MGA is involved in litigation against a number of counterfeiters and infringers in Asia.  In 2003,

10   Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11   attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12   abandoned its claims based upon "Toon Teens" in this court.  Thereafter, those defendants took

13   the position that MGA did not own, and therefore could not enforce, the rights to Bratz.  MGA

14   was thus forced to litigate the issue of ownership.  MGA contends that "[i]n effect, by prompting

15   foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16   a situation in which MGA has been forced to give testimony and provide evidence related to

17   issues in this case that Mattel now seeks to obtain wholesale."  MGA's Opposition at 25:5-24.

18        Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19   dispute between MGA's chief executive officer and his brother because such documents are in no

20   way relevant to this lawsuit.  MGA explains that the brothers were involved in an arbitration

21   proceeding relating to MGA's CEO's purchase of his brother's interest in MGA.  Moreover,

22   MGA contends that the brothers were bound by a protective order prohibiting the use of any

23   documents or testimony for any purpose other than the arbitration.

24

25   _____

26     [2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

6

EXHIBIT ___44___

PAGE ___521___

1    Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2 files because they contain confidential information and are not relevant to the lawsuit.  Sixth,

3 MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4 in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd.  Lastly,

5 MGA objects to producing documents relating to any testing performed to determine the date that

6 Bratz documents were created.  MGA contends that such discovery is premature and should not

7 proceed until experts are designated.

8         B. Interrogatories

9    On April 28, 2005, Mattel served its Second Set of Interrogatories.  On May 20, 2005,

10 however, the district court stayed the action.  On May 17, 2006, the district court lifted the stay.

11 On May 30, 2006, MGA responded to the interrogatories.

12    Mattel contends that MGA's responses to the interrogatories were untimely.  Further,

13 Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14 because they lack substantive information and consist almost entirely of objections.  MGA

15 responds that the motion is moot because it is prepared to provide supplemental responses to its

16 interrogatories.  MGA does not otherwise assert any additional grounds for opposing Mattel's

17 motion to compel responses to interrogatories.

18                     III. DISCUSSION

19    A. Rule 26 of the Federal Rules of Civil Procedure

20    Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21 discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22 party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

23 discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24 Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25 unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26 convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                          7

EXHIBIT ___44___

PAGE ___522___

1  opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4  the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5  26(b)(2).

6      B.  <u>Document Requests</u>

7         1.  <u>Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,</u>

8            <u>34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100</u>

9      The requests above seek discoverable information regarding the origins of Bratz and

10 Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11 response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and  69 (MGA's Opposition at 13:4-5), and is

12 "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13 and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14 14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15 products and documents from MGA Hong Kong.

16     As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17 its production to "relevant and responsive non-objectionable documents" or documents

18 "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19 might be excluding documents that are responsive to the request based upon its unilateral

20 determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21 document requests ordered herein without these restrictions.

22             Design Documents for Unreleased Products

23     MGA's design documents for unreleased products are relevant to Mattel's claims and

24 defenses and must be produced.  <u>See</u> Order Modifying Protective Order.  On April 23, 2007, the

25 parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26 design documents for unreleased products that constitute trade secret information.  <u>See</u> Stipulation

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)



EXHIBIT ____44____

PAGE ____523____

1  to Modify Protective Order; And Proposed Order Thereon ("stipulation"). The parties' stipulation

2  has been approved and entered as an order of the court. MGA is ordered to produce design

3  documents for unreleased products that are responsive to Mattel's document requests in

4  accordance with the terms of the stipulation and order.

5                              Documents from MGA Hong Kong

6          Documents relating to activities or conduct in foreign countries are relevant and

7  discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8  Bratz. Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9  provides reciprocal discovery from its subsidiaries.

10         Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein. MGA is ordered to produce

12  documents from MGA Hong Kong.

13         Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15            2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,

16               61, 63, 66, 67, 70, 88, 90, 91

17         Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls. MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21         As stated previously, design documents for yet unreleased products are relevant and

22  discoverable. See Order Modifying Protective Order. Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25         //

26         //

27

28

Bryant v. Mattel, Inc.,                                                                           9
CV-04-09049 SGL (RNBx)

EXHIBIT ____44____

PAGE ____524____

### 3. MGA's Payments to Bryant (Nos.43, 45)

MGA represents that it has already agreed to produce documents related to Bratz, without limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless, Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's motion is granted with respect to request nos. 43 and 45.

### 4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

MGA represents that it has already agreed to produce non-privileged documents responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or indemnity agreements between MGA and Bryant .

Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility. Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any responsive documents withheld on the basis of a privilege must be properly identified in a privilege log.

### 5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40, 41,

In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits, and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel anticipates that these documents could provide evidence relating to the conception date for Bratz.

Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

---

[3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 44°
PAGE _____ 525

1   that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2   documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3   protective order that prohibits the use of any documents or testimony for any purpose other than

4   the arbitration.  MGA, however, has not provided any evidence of the protective order.

5   Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6          6. Documents Regarding Date-Testing (Request No. 92)

7          Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8   from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9   testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10  and including without limitation all results and reports relating thereto."  MGA contends that the

11  request is premature, and should proceed in the course of expert discovery.

12         The request calls for relevant discovery and there is no basis for delaying production of

13  responsive documents, other than expert reports.  The timing of expert reports is governed by

14  Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15         C. Interrogatories

16         Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17  MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18  responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19  interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20  court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21  served.  The district court lifted the stay on May 17, 2006.

22

23

24

25         ───────────────────

26         [4]  In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's
      personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore
27    should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

28
      Bryant v. Mattel, Inc.,
      CV-04-09049 SGL (RNBx)

                                                    EXHIBIT ____44____

                                                    PAGE ____526____

1      Neither party has cited to any caselaw governing the calculation of the 30-day period

2  when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses

3  will be treated as timely in order to preserve any valid objections MGA may have asserted.

4      Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5  conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6  tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7  before December 31, 2001, including a description of each person's role and the start and end

8  dates of each person's involvement. In response, MGA asserted numerous objections, but did

9  provide the names of five individuals.

10      The interrogatory clearly seeks information relevant to the claims at issue. MGA's

11  objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad.

12  Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13  for confidential, proprietary or commercially sensitive information, or seeks information

14  protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as

15  it fails to provide the description of each person's role and the start and end dates of each person's

16  involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17  5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18      Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19  embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for

20  the reasons previously discussed in connection with Interrogatory No. 5.

21      Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22  December 31, 2001. In response, MGA asserted numerous objections and did not provide any

23  substantive information.

24      MGA's objections are without merit. The interrogatory clearly seeks information relevant

25  to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous,

26  compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___44___ [12]

PAGE ___527___

1   unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2   seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3   provide a complete response to Interrogatory No. 7.

4        Interrogatory No.8 asks MGA to identify each and every embodiment of Angel.  MGA is

5   ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6   discussed in connection with Interrogatory No. 7.

7        Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8   or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9   or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10   substantive information.

11        The interrogatory seeks information relevant to establishing when Bryant first conceived

12   Bratz. Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13   ordered to provide a complete response to Interrogatory No. 9.

14        Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15   was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16   which each such instance occurred, the location of each show or exhibit, and the identity of

17   persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18   objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19   about January 2001 and New York Toy Fair, New York, in or about February 2001.

20        Once again, MGA's boiler-plate objections are unsubstantiated. The information is

21   potentially relevant to establish when Bryant conceived Bratz. Further, the response is

22   incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23   to provide a complete response to Interrogatory No. 10.

24        Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25   including without limitation each office, home and cell phone number, in the name of, for the

26   benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT _____ 44

PAGE _____ 528

1    January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2    limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3    boiler-plate objections.

4           Once again, MGA has failed to substantiate any of its objections with supporting

5    declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6    provide a full response to Interrogatory No. 11.

7                                    IV. CONCLUSION

8           For the reasons set forth above, Mattel's motion to compel production of documents is

9    granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10   identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11   for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12   motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13   provide responses to interrogatories consistent with this Order, and produce a privilege log in

14   compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15   sanctions is denied.

16          Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17   Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21   Dated: May /5, 2007

22                                            HON. EDWARD A. INFANTE (Ret.)
                                                    Discovery Master
23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                                                      14

EXHIBIT ____ 44

PAGE ____ 529

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15,

2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL

PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in

the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that
the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT __44__

PAGE __530__

# Exhibit 45

CONFORMED COPY

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:  (415) 774-2611
4  Facsimile:  (415) 982-5287

5

6

7

8

9

10

11  CARTER BRYANT, an individual,

12        Plaintiff,

13     v.

14  MATTEL, INC., a Delaware corporation,

15        Defendant.

16

17

18  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
19  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
20

21

22

23

24

25

26

27

28

CASE NO. C 04-09049 SGL (RNBx)
JAMS Reference No.1100049530

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**ORDER GRANTING IN PART AND
DENYING IN PART MATTEL'S
MOTION TO COMPEL PRODUCTION
OF DOCUMENTS BY MGA;
DENYING REQUEST FOR
MONETARY SANCTIONS**

## I. INTRODUCTION

On June 26, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production of Documents by MGA Entertainment, Inc. ("MGA") and for Award of Monetary Sanctions. Mattel seeks an order compelling MGA "to produce documents responsive to Mattel's First Set of Requests for Documents and Things Re Unfair Competition Claims, including, without limitation, Request Nos. 1, 3-10, 12-13, 16-18, 19-20, 26-27, 29-30, 32-40, 42-43, 45, 48-52, 54-56, 58-60,

EXHIBIT _____ 45
PAGE _____ 531

1    65-119, 137-140, 157-161, 164 and 166," and for sanctions in the amount of $4,500, which

2    represents a portion of the costs incurred by Mattel in bringing this motion.  Mattel's Motion at

3    p.1.  On July 3, 2007, MGA submitted its opposition brief, and on July 9, 2007, Mattel submitted

4    a reply brief.  The matter was heard via telephonic conference on August 13, 2007.  Having

5    considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel

6    is granted in part and denied in part, and the request for sanctions is denied.

                                    II. BACKGROUND

8         This consolidated action includes MGA's claims for unfair competition against Mattel.

9    Among other things, MGA alleges that Mattel has engaged in "serial copycatting" of MGA

10   products, packaging and advertising, including Bratz dolls and other Bratz products, Bratz

11   packaging and Bratz television commercials.  MGA also alleges that Mattel engaged in improper

12   conduct in dealing with retailers, licensees, employees and industry organizations.

13        After MGA filed its claims against Mattel, Mattel sought and was granted leave to file

14   several counterclaims against MGA, including claims for copyright infringement, violation of

15   RICO, conspiracy to violate RICO, misappropriation of trade secrets and unfair competition.

16   Among other things, Mattel alleges that MGA has induced Mattel employees to steal Mattel's

17   trade secrets, confidential information and other property and take it with them to their new

18   employment with MGA.  Mattel also alleges that Bryant conceived, created and developed Bratz

19   designs while he was employed by Mattel as a designer, that he concealed his Bratz work from

20   Mattel, and that he sold Bratz to MGA while he was a Mattel employee.  Mattel alleges that it is

21   the rightful owner of the Bratz designs and that MGA is engaging in copyright infringement of

22   the Bratz designs.

23        On December 18, 2006, Mattel propounded its First Set of Requests for Production of

24   Documents and Things re Claims for Unfair Competition to MGA (the "Requests for

25   Production").  The Requests for Production consist of 166 requests seeking information that

26

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT _____ 45

PAGE _____ 532

1   Mattel contends is relevant primarily to MGA's claims for unfair competition and Mattel's

2   defenses thereto.

3        In the meantime, MGA served its initial disclosures related to its unfair competition

4   claims.  Mattel immediately filed a motion to compel MGA to provide complete initial

5   disclosures in compliance with Rule 26, Fed.R.Civ.P.  Although the initial disclosures were

6   wholly inadequate, the Discovery Master denied the motion to compel, reasoning that it would be

7   more efficient and orderly for the parties to proceed with Mattel's pending Requests for

8   Production.

9        MGA served its responses to Mattel's Requests for Production on January 17, 2007.

10  MGA objected and refused to produce documents responsive to approximately two-thirds of

11  Mattel's requests.  As to the remaining requests, MGA agreed to produce "relevant and non-

12  objectionable documents," subject to its General and Specific Objections.

13       Thereafter the parties met and conferred in person and exchanged a few letters.  On

14  February 9, 2007, counsel for MGA advised Mattel by letter that MGA, subject to its General and

15  Specific objections, agreed to produce all "relevant and non-objectionable documents" responsive

16  to Request Nos. 1-4, 11, 13-15, 18, 21-26, 28-29, 31-36, 44-51, 53, 61-64, 118, 120-137, 141-156,

17  162-163, 165 and 166.  Kidman Decl., Ex. 14.  As to Request Nos. 9, 10 and 12, MGA also

18  agreed to produce "documents sufficient to show the timing of, and relevant facts regarding"

19  certain specified products.  Id.  Counsel for MGA sent another letter on February 16, 2007,

20  advising Mattel that MGA would produce documents responsive to Request Nos. 29 and 30.

21  Bradley Decl., Ex. 1.  On May 21, 2007, MGA advised Mattel by letter that it agreed, in essence,

22  to withdraw its restriction to "relevant and non-objectionable documents" in its responses to the

23  Requests For Production.  Bradley Decl., Ex. 3.  On May 31, 2007, MGA served supplemental

24  responses to Mattel's Requests for Production, which no longer included the phrase "relevant and

25  non-objectionable."  Kidman Decl., Exs. 11 and 16.

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT ___45___

PAGE ___533___

1    In its opening brief, Mattel contends that MGA has improperly refused to produce
2    documents relating to: the creation, origin, timing and ownership of the contested MGA products
3    and packaging, including the contested Bratz products and packaging (Request Nos. 5, 6-8, 16,
4    17, 19, 20, 38, 39, 48); MGA's alleged theft of Mattel's trade secrets and confidential information
5    by, among other things, targeting and recruiting current and former Mattel employees (Request
6    Nos. 42, 59, 60, 65-117, 138-140, 160, 161 and 164); damages (Request Nos. 27, 30 and 157-
7    159); facts MGA contends support its unfair competition claims (Request Nos. 45, 119 and 166).
8    Mattel contends that MGA has no legitimate basis for refusing to produce these categories of
9    documents because they are directly relevant to the claims and defenses in the case. Mattel also
10   contends that MGA has improperly restricted the scope of its document production in response to
11   Request Nos. 1, 3, 4, 13, 18, 29, 49, 52 and 137.
12       MGA contends that Mattel's motion should be denied in its entirety for three reasons.
13   First, Mattel is seeking documents MGA already agreed to produce as a result of the meet and
14   confer process. Second, Mattel is seeking documents that may be precluded by other motions
15   pending before the district court. Third, Mattel is seeking documents that constitute an
16   unreasonable and overbroad fishing expedition.
17       As to the first point, MGA contends that it has already agreed to produce documents
18   responsive to Request Nos. 9, 10, 12, 26, 29, 30, 32-36, 45, 48-51, 118, 137, and 166. Moreover,
19   MGA represents that it has produced more than 110,000 pages of documents, including
20   documents relating to the origin, infringement, design and tooling of Bratz and has also provided
21   Mattel with access to Bratz molds and sculpts. MGA also represents that it is continuing to
22   search for and produce documents responsive to Mattel's requests on a rolling basis.
23       MGA also asserts that it "has revisited certain of Mattel's requests, and so as to avoid
24   further burdening the Court, MGA agrees to produce non-privileged documents in its possession,
25   custody or control, subject to its previously stated General and Specific Objections, that are
26
27
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___45___

PAGE ___534___

1   responsive to the following sixteen requests: 5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and

2   157-159." MGA's Opposition at p. 3.

3   　　　MGA also represents that it is prepared to produce documents responsive to Mattel's

4   Request Nos. 65-117 and 119 (which seek documents concerning MGA-Mexico and its

5   employees, and other topics relevant to Mattel's counterclaims) now that Judge Larson issued an

6   order denying MGA's motion to dismiss Mattel's trade secret claims.[1]  MGA's Opposition at pp.

7   2 and 6.

8   　　　As to the second point, MGA contends that Mattel's motion to compel is premature with

9   respect to Request Nos. 1, 3, 4, 13 and 18.  MGA explains that these requests seek, among other

10  things, information pertaining to undisclosed and/or unreleased MGA products.  The Discovery

11  Master issued an order compelling MGA to produce such documents in response to other Mattel

12  discovery requests.  MGA appealed the Discovery Master's ruling, which was heard by Judge

13  Larson on July 2, 2007.  MGA contends that it should not be required to produce documents

14  responsive to Request Nos. 1, 3, 4, 13 and 18 until Judge Larson issues a ruling.

15  　　　For the remaining requests, however, MGA stands by its objections.  More specifically,

16  MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160, 161 and 164 are grossly overbroad

17  and unduly burdensome.

18  　　　In its reply brief, Mattel contends that MGA's belated offers to produce responsive

19  documents do not obviate the need for an order compelling production for several reasons.  First,

20  Mattel contends that in many instances, MGA's purported agreements to produce responsive

21  documents are subject to major qualifications.  For example, in response to Request Nos. 9, 10

22  and 12, MGA's meet and confer letter indicates that MGA has limited its production of

23  documents to only "documents sufficient to show the timing of, and relevant facts regarding"

24  certain products.  Kidman Decl., Ex. 14.  Second, Mattel points out that, in some instances, the

25

26  _____

27  　　　[1]  Judge Larson issued the order on June 27, 2007, a day after Mattel submitted its opening brief.

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SOL (RNBx)

EXHIBIT ____45____

PAGE ____535____

1   representations in MGA's meet and confer letters conflict with MGA's subsequent May 31, 2007

2   supplemental responses. For example, even though MGA stated earlier in its two meet and confer

3   letters that it would produce documents responsive to Request Nos. 9, 10, 12, 26, 30, 32-36, 45,

4   48, 50, 51, 118 and 166, MGA's May 31, 2007 supplemental responses indicate that MGA

5   objects and refuses to produce documents responsive to these requests. Third, Mattel contends

6   that MGA has acknowledged its responsibility to produce documents responsive to Request Nos.

7   65-117 and 119 in view of Judge Larson's June 27, 2007 order denying MGA's motion to dismiss

8   Mattel's counterclaims, and yet, MGA has failed to do so. Fourth, Mattel points out that MGA's

9   opposition brief is internally inconsistent with respect to Request Nos. 55 and 56, stating both that

10  MGA agrees to produce documents responsive to the requests, and that MGA objects to the

11  requests as overbroad and burdensome. See MGA's Opposition at pp. 3 and 8.

12      Mattel also contends that Request Nos. 1, 3, 4, 13 and 18 are no longer premature because

13  on July 5, 2007, two days after MGA submitted its opposition brief, Judge Larson issued an order

14  upholding the Discovery Master's ruling with respect to undisclosed and/or unreleased MGA

15  products. Accordingly, Mattel requests an order compelling production of documents all

16  documents responsive to Request Nos. 1, 3, 4, 13 and 18 without any limitations, and overruling

17  any objections thereto.

18      With respect to the remaining requests to which MGA continues to object, Mattel reasserts

19  that the requests seek documents relevant to Mattel's trade secret counterclaims. Mattel also

20  contends that MGA has failed to establish that complying with the requests would impose an

21  undue burden.

22                                III. DISCUSSION

23      Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

24  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

25  party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not

26  permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

27

28

EXHIBIT ___45___

PAGE ___53b___

1    2004) ("District courts need not condone the use of discovery to engage in 'fishing

2    expeditions.'"); <u>Bernstein v. Travelers Ins. Co.</u>, 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

3    (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

4    (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

5    the phrase "subject matter involved in the pending action," were intended to prevent discovery

6    that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

7    litigate the issues presented by the pleadings but to develop new claims or defenses.).

8        Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

9    extent of use of the discovery methods if the court determines that "(i) the discovery sought is

10    unreasonably cumulative or duplicative, or is obtainable from some other source that is more

11    convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

12    opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

13    expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

14    the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

15    the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

16    26(b)(2).

17    <u>**Request Nos. 1, 3, 4, 13 and 18**</u>

18        Request No. 1 seeks "[a] sample of each of the CONTESTED MGA PRODUCTS,

19    together with each such product's packaging, instructions, promotional materials and other

20    associated packaging materials." Request No. 3 seeks "[a] complete copy of each advertisement

21    or promotional statement prepared, produced, printed, broadcast, made available to anyone in any

22    manner via the Internet, or otherwise used or disseminated in any way in connection with the

23    CONTESTED MGA PRODUCTS." Request No. 4 seeks "[a] complete copy of each

24    COMMUNICATION, advertisement, promotional statement that provides a basis for any claim

25    by [MGA] against MATTEL." Request No. 13 seeks "[a]ll DOCUMENTS RELATING TO any

26    revision of any CONTESTED MGA PRODUCTS, including but not limited to any proposed

27

28    Bryant v. Mattel, Inc.,
        CV-04-09049 SGL (RNBx)

EXHIBIT _____ 45

PAGE _____ 537

1    alternatives, modifications or changes (whether or not implemented) to such CONTESTED MGA

2    PRODUCTS." Request No. 18 seeks "[a]ll DOCUMENTS RELATING TO the marketing,

3    advertising, promotion, licensing, offering for sale or sale of the CONTESTED MGA

4    PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans,

5    sales forecasts, strategies, surveys and analyses and including but not limited to all catalogs,

6    advertisements, brochures, displays and Internet publications."

7         During the meet and confer process, MGA agreed to produce documents responsive to

8    Request Nos. 1, 3, 4, 13 and 18. Kidman Decl., Ex. 14. In its subsequent supplemental

9    responses, however, MGA responded that it would produce responsive documents "visible to the

10   consuming public at the point of purchase," "made available to the public," or "presented to the

11   consuming public." MGA's Supp. Response, Kidman Decl., Ex. 8 and 16.

12        Mattel contends that the requested documents and items are relevant to MGA's claim of

13   "serial copying," whether or not they are seen by the consuming public. Mattel also contends that

14   the documents it seeks are relevant to any claim by MGA of "post sale confusion." Furthermore,

15   Mattel argues that MGA's restrictions on discovery are unreasonable in light of MGA's own

16   claimed trade dress, which MGA alleges extends to the entirety of MGA's marketing techniques

17   and product appearance. Mattel also contends that Request No. 13 seeks documents that are

18   directly relevant to MGA's claim that Mattel systematically modified its products to increase their

19   similarity to MGA's products over time.

20        In its opposition brief, MGA does not attempt to refute any of Mattel's relevancy

21   arguments above, relying instead on its argument that these requests are premature until Judge

22   Larson issues a ruling. Judge Larson, however, issued an order on July 5, 2007. Accordingly, the

23   requests are no longer premature. The subject requests are relevant and not unduly burdensome.

24   MGA is ordered to produce all non-privileged documents that are responsive to Request Nos. 1,

25   3, 4, 13 and 18.

26   //

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT ____ 45

PAGE ____ 538    8

1    <u>Request Nos. 5-8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159</u>

2        In its opposition brief, MGA agrees to produce documents responsive to Request Nos. "5-

3 8, 16-17, 19-20, 27, 37-40, 43, 52, 55-56, and 157-159." MGA's Opposition at p. 3. Later in its

4 opposition brief, however, MGA contends that Request Nos. 55 and 56 are overbroad and

5 burdensome.  <u>See</u> MGA's Opposition at pp. 3 and 8.  Request No. 55 seeks production of "[a]ll

6 periodicals, whether they be magazines, newspapers, newsletters, or any other type of periodical,

7 that mention the CONTESTED MGA PRODUCTS that have been published since January 1,

8 1999." Request No. 56 seeks "[a]ll television or radio broadcasts or cablecasts that mention the

9 CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999." MGA

10 contends that these requests encompass, among other things, every single advertisement MGA

11 ever ran in connection with BRATZ or any of the other products at issue.

12        Mattel contends that Request Nos. 55 and 56 are designed to obtain documents that may

13 contain admissions relevant to various issues in the case, including admissions regarding the

14 origin and timing of the products at issue; the performance of the contested products or MGA as a

15 whole, which may undercut MGA's claims for damages; and statements that might reveal that

16 MGA had access to confidential Mattel information.

17        Although Request Nos. 55 and 56 encompass potentially relevant documents, they are

18 overbroad.  They require MGA to produce every single advertisement MGA ever ran in

19 connection with all of the products at issue.  The requests are not limited in any respect to the

20 subjects of interest to Mattel, i.e., the origin and timing of the products at issue.  Furthermore,

21 Mattel has utilized other document requests and depositions to obtain the type of evidence it now

22 seeks.

23        Accordingly, Mattel's motion is granted as to Request Nos. 5-8, 16-17, 19-20, 27, 37-40,

24 43, 52, and 157-159 to ensure a deadline for production, and denied as to Request Nos. 55 and 56

25 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

26 //

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 45
PAGE 539

**Request Nos. 9, 10, 12**

Request Nos. 9, 10 and 12 call for "[a]ll DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale and ownership of products and packaging" "that YOU contend provide a basis for any claim against MATTEL, whether or not such claim is in the COMPLAINT" (No. 9); "that YOU contend MATTEL copied or infringed" (No. 10); and related "COMMUNICATIONS" (No. 12). During the meet and confer process, MGA agreed to produce "documents sufficient to show the timing of, and relevant facts" regarding the following products on the following topics:

- "First generation 'Bratz'" line, including packaging – invention, creation, origin, conception, authorship, design, development, sale and ownership;
- "Bratz" "Wintertime Wonderland" line, including packaging – invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Sportz" Cloe, including packaging – invention, creation, origin, conception, authorship and first sale;
- "Bratz" "Sun-Kissed Summer" line, including packaging and playset – invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Formal Funk" line –invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Runway Disco," including packaging – invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Funky Fashion Makeover Head," including packaging – invention, creation, origin, conception, authorship, and first sale;
- "Bratz" "Petz," including packaging – invention, creation, origin, conception, authorship, and first sale;

EXHIBIT 10 45

PAGE 540

1    • "4-Ever Best Friends," including packaging – invention, creation, origin, conception,

2    authorship, and first sale;

3    • "Mommy's Little Patient" – invention, creation, origin, conception, authorship, and first

4    sale;

5    • "AlienRacers," including logo – invention, creation, origin, conception, authorship, and

6    first sale; and

7    • "Bratz" "Diamondz" line – invention, creation, origin, conception, authorship, and first

8    sale.

9    Kidman Decl., Ex. 14.  In response to Request No. 9, MGA also agreed to produce documents

10   containing development, production and sales information for the product(s) affected by the hair

11   shortage allegedly caused by Mattel and "sufficient to show the timing of and relevant facts

12   regarding the shortage and its effect on MGA." Id.  Thereafter, MGA asserted objections to these

13   requests in its May 31, 2007 supplemental responses.  In opposition to Mattel's motion, however,

14   MGA restated that it would produce documents responsive to these requests consistent with its

15   prior meet and confer letter.  MGA's Opposition at p. 5.

16        Mattel contends that MGA's agreement to produce documents is insufficient because

17   MGA has limited its production to documents "sufficient to show."  MGA's opposition brief fails

18   to address Mattel's argument.  Instead, MGA merely asserts that it agreed to produce documents

19   responsive to Request Nos. 9, 10 and 12 during the meet and confer process, and therefore

20   Mattel's motion should be denied as moot.

21        Request Nos. 9, 10 and 12 clearly seek relevant information, and MGA has failed to

22   justify why its production should be limited to documents "sufficient to show."  Therefore,

23   Mattel's motion is granted as to Request Nos. 9, 10 and 12.

24   <u>Request Nos. 26, 29, 30, 32, 36, 45, 48-51, 118, 137 and 166</u>

25        In its two meet and confer letters MGA agreed to produce, subject to its General and

26   Specific Objections, documents responsive to Request Nos. 26, 29, 30, 32-36, 45, 48-51, 118, 137

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___ 45

PAGE ___ 541

1   and 166. Kidman Decl., Ex. 14. Mattel points out, however, that MGA's May 31, 2007

2   supplemental responses are inconsistent insofar as the responses indicate that MGA continues to

3   object to some of the requests or otherwise agrees to produce only a limited portion of documents

4   responsive to other requests. Mattel's Reply Brief at p. 7. Nevertheless, in its opposition brief,

5   MGA reaffirms its earlier agreement to produce all responsive documents, and states that it

6   considers Mattel's motion to be moot. See MGA's Opposition at pp. 5-6. Mattel's motion is

7   granted as to this category of requests.

8   **Request Nos. 65-117 and 119**

9        In its opposition brief, MGA agrees to produce documents responsive to Mattel's Request

10   Nos. 65-117 and 119 now that Judge Larson issued an order denying MGA's motion to dismiss

11   Mattel's trade secret claims. MGA's Opposition at pp. 2 and 6. Mattel's motion is granted as to

12   these requests.

13   **Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164**

14        MGA contends that Request Nos. 42, 54, 58-60, 138-140, 160-161 and 164 are overbroad

15   and unduly burdensome. Mattel insists that they are not. More specifically, Mattel contends that

16   the requests seek documents regarding MGA's alleged theft of Mattel's trade secrets, and in

17   particular, the theft of trade secrets through targeting and hiring current and former Mattel

18   employees.

19        Request No. 42 seeks "[a]ll COMMUNICATIONS between [MGA] and any individual

20   while the individual was employed by MATTEL." Although the request may encompass relevant

21   documents, it is overbroad insofar as it requires production of all communications, regardless of

22   subject matter. Furthermore, the request is objectionable to the extent it seeks documents that are

23   equally available to Mattel. Therefore, Mattel's motion is denied as to Request No. 42 pursuant

24   to Rule 26(b)(2), Fed.R.Civ.P.

25        Request No. 54 seeks "[a]ll DOCUMENTS RELATING TO any COMMUNICATION by

26   [MGA] with any news organization regarding the CONTESTED MGA PRODUCTS or the

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

EXHIBIT ___45___
                12
PAGE ___542___

1  CONTESTED MATTEL PRODUCTS." Once again, the request encompasses potentially

2  relevant documents, however it is overbroad, seeking all documents relating to any

3  communications by MGA with any news organization. Furthermore, the request seeks documents

4  that are of relatively minimal relevance to the claims and defenses in the case. Therefore,

5  Mattel's motion is denied as to Request No. 54 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

6        Request Nos. 58 seeks "[a]ll DOCUMENTS RELATING TO publicity by [MGA] or

7  about the CONTESTED MGA PRODUCTS since January 1, 1999, including but not limited to

8  advertising, media releases, and public relations material." This request is also overbroad in that

9  it seeks all documents relating to publicity by MGA about its products at issue in the litigation.

10  Mattel's motion is therefore denied as to Request No. 58 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

11        Request No. 59, asks for "[a]ll DOCUMENTS RELATING TO any effort by [MGA] to

12  recruit employees or contractors since January 1, 1999, including but not limited to advertising,

13  media releases, brochures, articles, catalogs, handbooks, and public relations material." The

14  request is overbroad insofar as it requires production of all documents relating to MGA's

15  recruiting, including for instance, recruiting from competitors other than Mattel. Mattel's motion

16  is therefore denied as to Request No. 59 pursuant to Rule 26(b)(2), Fed.R.Civ.P.

17        Request No. 60 seeks "[a]ll DOCUMENTS RELATING TO the hiring, engagement, or

18  retention by [MGA] of any former or current MATTEL employee or contractor since January 1,

19  1999, including but not limited to all employment agreements and agreements RELATING TO

20  confidentiality or the invention, authorship, or ownership of any concept or product." Request

21  No. 138 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON RELATING TO

22  the departure from MATTEL of any current or former MATTEL employee or contractor."

23  Request No. 139 seeks "[a]ll COMMUNICATIONS between [MGA] and any PERSON

24  RELATING TO the obligations to MATTEL, including the duty of confidentiality, of any current

25  or former MATTEL employee or contractor. Request No. 140 seeks "[a]ll

26  COMMUNICATIONS between [MGA] and any current or former MATTEL employee or

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___45___ 13.

PAGE ___543___

1  contractor RELATING TO the ownership of any idea, concept, design, or product.  Unlike the
2  previous requests, Request Nos. 60, 138, 139 and 140 are reasonably tailored to seek documents
3  central to Mattel's allegation that MGA stole its trade secrets through targeting and hiring current
4  and former Mattel employees.  MGA has not carried its burden of establishing that it would be
5  unduly burdensome to comply with these requests.  Accordingly, Mattel's motion is granted as to
6  Request Nos. 60, 138, 139 and 140.
7       Request No. 160 seeks "[a]ll DOCUMENTS received from MATTEL (whether directly
8  or indirectly) by [MGA] at any time since January 1, 1999." Request No. 161 seeks "[a]ll
9  DOCUMENTS that [MGA has] reason to believe were created by or originated from MATTEL,
10  other than MATTEL products that [MGA] purchased at retail." Request No. 164 seeks "[a]ll
11  DOCUMENTS RELATING TO any COMMUNICATIONS with, or inquiry or investigation by,
12  any government entity RELATING TO the CONTESTED MGA PRODUCTS or the
13  CONTESTED MATTEL PRODUCTS." These three requests are also reasonably tailored to seek
14  documents that could support Mattel's allegations of trade secret theft.  MGA has failed to
15  establish that it would be unduly burdensome to comply with these requests.  Mattel's motion is
16  granted as to Request Nos. 160, 161 and 164.

IV. CONCLUSION

18       For the reasons set forth above, Mattel's motion is granted as to Request Nos. 1, 3-10, 12,
19  13, 16-20, 26, 27, 29, 30, 32-40, 43, 45, 48-52, 60, 65-117, 118, 119, 137-140, 157-161, 164 and
20  166, and denied as to Request Nos. 42, 54-56, 58, 59.  MGA shall produce, without limitation, all
21  non-privileged responsive documents in accordance with this Order no later than August 30,
22  2007.  Mattel's request for sanctions is denied.
23       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
24  Master, Mattel shall file this Order with the Clerk of Court forthwith.
25  Dated: August 13, 2007
26                          HON. EDWARD A. INFANTE (Ret.)
27                          Discovery Master
28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT 45
PAGE 544

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 13, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY MGA; DENYING REQUEST FOR MONETARY SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 13, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT ___45___

PAGE ___545___

**Exhibit 46**

**Filed Under Seal**
**Pursuant to Protective Order**

**Exhibit 47**

1

1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                        ---

4      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5                        ---

6   MATTEL, INC.,                    :   PAGES 1- 76
                                     :
7            PLAINTIFF,              :
                                     :
8      VS.                           :   NO. ED CV04-09049-SGL
                                     :   [CONSOLIDATED WITH
9   MGA ENTERTAINMENT, INC.,         :   CV04-9059 & CV05-2727]
    ET AL.,                          :
10                                    :
             DEFENDANTS.             :
11   _____:

                                    CERTIFIED
12
                                    COPY
13

14

15           REPORTER'S TRANSCRIPT OF PROCEEDINGS

16              RIVERSIDE, CALIFORNIA

17             THURSDAY, MAY 22, 2008

18                 MORNING SESSION

19

20

21

22                    MARK SCHWEITZER, CSR, RPR, CRR
                      OFFICIAL COURT REPORTER
23                    UNITED STATES DISTRICT COURT
                      181-H ROYBAL FEDERAL BUILDING
24                    255 EAST TEMPLE STREET
                      LOS ANGELES, CALIFORNIA 90012
25                    (213) 663-3494

EXHIBIT _____ 47

PAGE _____ 593

2

```
1   Appearances of Counsel:

2

3   On Behalf of Mattel:

4       Quinn Emanuel
        By John B. Quinn, Esq.
5           B. Dylan Proctor, Esq.
            Michael T. Zeller, Esq.
6           Harry Olivar, Esq.
            John Corey, Esq.
7           Diane Hutnyan, Esq.
        855 South Figueroa Street
8       10th Floor
        Los Angeles, CA 90017
9       (213) 624-7707

10

11  On Behalf of MGA Entertainment:

12      Skadden, Arps, Slate, Meagher & Flom LLP
        By Thomas J. Nolan, Esq.
13          Carl Alan Roth, Esq.
            Jason Russell, Esq.
14          Lauren Aguiar, Esq.
            David Hansen, Esq.
15          Matthew Sloan, Esq.
        300 South Grand Avenue
16      Los Angeles, CA 90071-3144
        (213) 687-5000
17

18

19

20

21

22

23

24

25
```

EXHIBIT ___47___

PAGE ___574___

3

1                    **I N D E X**

2

3           MATTER:   MOTIONS IN LIMINE.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT _____ 47

PAGE _____ 595

43

1   to take, but I'd like to hear from both sides before I go

2   down the road.

3               MR. QUINN:  I think there is agreement on this,

4   actually, that to whatever extent profits are attributable to

5   intrinsic qualities of the doll, to what extent they are

6   attributable to packaging, marketing, and all the various

7   things that MGA says it has done, both sides agree that that

8   type of analysis has to be undertaken.

9               So we surely are going to be arguing, and we have

10  experts whose expert testimony on this is saying the real

11  appeal of this and success of this doll is because of the

12  aesthetic qualities of the doll.  It is what it is, and

13  that's the value.

14              They have experts that say well, that has some

15  value to be sure, but a much larger percentage of the profits

16  are really attributable to the innovative marketing.  And we

17  have competing experts on that as to the relative

18  proportions.

19              That doesn't address the problem.  We have to

20  battle the part of that that relates to their innovations,

21  their marketing, their inventory --

22              THE COURT:  I understand that you can also battle

23  that with some of the expert analysis that you've already

24  submitted or proffered.

25              MR. QUINN:  Well, we will do that anyway, your

EXHIBIT ___47___

PAGE ___556___

1   Honor.  For sure.  We will do that anyway.  But that's only

2   half the argument.  The other half of the argument that we

3   would be deprived of is what they claim as their innovations,

4   which really account for the values that were stolen from us.

5   That's where the Phase 2 stuff comes in.

6           So the battle about the relative contribution of

7   the intrinsic qualities of the doll versus marketing,

8   et cetera, that's a battle that's going to happen anyway, and

9   that's really not what we're -- we're not concerned about

10  that.  I think everybody is in agreement that that relative

11  contest as -- the contest as to the relative contributions,

12  the profits of those, that's going to happen.

13          What we're concerned about is should they be able

14  to lay off a lot of the value on innovations which we contend

15  were taken from Mattel.  And that's the Phase 2 problem.

16          It seems that if they are going to say, for

17  example, and I'm going to make this up, because I don't have

18  a specific example to hand.  We have this really innovative

19  package that was attractive that people liked.  And they are

20  going to tell the jury that that's really part of the value

21  and why the dolls flew off the shelves.

22          If that package was stolen from us and represents a

23  Mattel trade secret, we ought to able to tell that to the

24  jury.

25              THE COURT:  I guess the best way to do this is to

EXHIBIT ___ 47

PAGE ___ 597

45

1   instruct you not to make any reference to this in your

2   opening statement.  We'll have to wait until and if we

3   actually reach Phase 1-B and see what MGA does and what they

4   introduce and perhaps, as with anything else, they may open

5   the door to evidence that otherwise would not be admissible

6   under the trial.

7        I'm not going to rule at this point that it is

8   admissible.  In fact, I'm going to rule, for purposes of the

9   opening statement, that you are not to do it, and we'll just

10  have to wait and see.  I think that's really the only way we

11  can resolve this conundrum.

12       MR. QUINN:  In fact, in my opening statement I

13  wasn't intending to address any 1-B issue.  I thought 1-B --

14       THE COURT:  And you're right.  And there is going

15  to be a separate opening statement for that.  But just --

16       MR. QUINN:  I regard this as a 1-B conundrum.  In

17  my opening statement, I wasn't going to address it or any

18  other 1-B subject.

19       THE COURT:  Very well.  So that takes care of that

20  problem, and I'll set this forth in my ruling on this motion

21  in limine.  I do think my initial reaction is to uphold the

22  phasing.  In fact, it was Mattel that submitted the proposed

23  phasing, and I largely adopted what was submitted by Mattel.

24       So I don't think there's an issue that needs to be

25  addressed at this point.  We'll have to wait and see what MGA

EXHIBIT 47
PAGE 598

46

```
 1   does, assuming that we would get to a 1-B phase of the trial.
 2              Mr. Nolan?
 3              MR. NOLAN:  Yes.
 4              THE COURT:  All right.
 5              MR. NOLAN:  That's what my handlers have told me.
 6              THE COURT:  All right.  That's great.  Very good.
 7              I had skipped over -- I hadn't had a chance to read
 8   before yesterday the Motions in Limine 13, 14, and 15.
 9   Because I wasn't sure on the joinder that's been made clear.
10   So let's take those up at this time.
11              Motion in Limine 13 is the motion in limine to
12   exclude evidence regarding alleged spoilation of evidence by
13   Bryant.
14              14 is the motion to exclude evidence and argument
15   regarding Bryant's alleged borrowing of ideas or concepts
16   from preexisting Mattel projects, including Toon Teens, Diva
17   Starz, the Swan line, and Skipper.  We've already touched
18   upon that this morning to a certain extent.
19              And No. 15 is to exclude evidence and argument
20   regarding any of defendants' affirmative defenses or claims
21   that have been either dismissed or voluntarily withdrawn.
22              Starting with the easy one first, I trust with
23   respect to No. 15 at this point, to the extent that a claim
24   or defense has been withdrawn, that's not going to be an
25   issue.
```

EXHIBIT 47

PAGE 599

76

6          C E R T I F I C A T E

9          I hereby certify that pursuant to Title 28,

10   Section 753 United States Code, the foregoing is a true and

11   correct transcript of the stenographically reported

12   proceedings in the above matter.

13          Certified on May 22, 2008.

16          MARK SCHWEITZER, CSR, RPR, CRR
            Official Court Reporter
17          License No. 10514

EXHIBIT       47
PAGE         600

# Exhibit 48



1

1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3                   - - -

4    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

5                   - - -

6    MATTEL, INC.,              :   PAGES 1 - 81
                                :
7              PLAINTIFF,       :
                                :
8         VS.                   :   NO. ED CV04-09049-SGL
                                :   [CONSOLIDATED WITH
9    MGA ENTERTAINMENT, INC.,   :   CV04-9059 & CV05-2727]
     ET AL.,                    :
10                              :
               DEFENDANTS.      :
11   _____

12

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16             RIVERSIDE, CALIFORNIA

17             FRIDAY, MAY 23, 2008

18

19

20

21

22                       MARK SCHWEITZER, CSR, RPR, CRR
                         OFFICIAL COURT REPORTER
23                       UNITED STATES DISTRICT COURT
                         181-H ROYBAL FEDERAL BUILDING
24                       255 EAST TEMPLE STREET
                         LOS ANGELES, CALIFORNIA 90012
25                       (213) 663-3494

CERTIFIED COPY

EXHIBIT ___48___

PAGE ___601___

2

```
 1   Appearances of Counsel:

 2

 3   On Behalf of Mattel:

 4        Quinn Emanuel
          By John B. Quinn, Esq.
 5          Dylan Proctor, Esq.
            Michael T. Zeller, Esq.
 6          Harry Olivar, Esq.
            John Corey, Esq.
 7          Diane Hutnyan, Esq.
          855 South Figueroa Street
 8        10th Floor
          Los Angeles, CA 90017
 9        (213) 624-7707

10

11   On Behalf of MGA Entertainment:

12        Skadden, Arps, Slate, Meagher & Flom LLP
          By Thomas J. Nolan, Esq.
13          Carl Alan Roth, Esq.
            Jason Russell, Esq.
14          Robert Harrington, Esq.
            Lauren Aguiar, Esq.
15        300 South Grand Avenue
          Los Angeles, CA 90071-3144
16        (213) 687-5000

17

18

19

20

21

22

23

24

25
```

EXHIBIT      48

PAGE      602

3

1        I N D E X

2

3        MATTER:   PRETRIAL CONFERENCE.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT ___ 4B

PAGE ___ 603

1          MR. RUSSELL:  Your Honor, it is our position that

2     the Doe defendants should be dismissed not only for Phase 1

3     but for Phase 2 as well.  The only justification that I heard

4     Mr. Zeller make with respect to RICO claims, and that is of

5     course, a federal claim.  Rule 15 would apply there.  Doe

6     defendant procedures would not apply to a federal claim.  I

7     think that's undisputed.  There has been more than four years

8     of discovery prior to the phasing.

9          I don't think we've heard any justification for why

10    it is that they can't be on the minimal notice required to

11    have as sustained who the proper parties are, given the

12    millions of pages of documents that have been produced and

13    the dozens of depositions that have been taken.

14         THE COURT:  I suppose the concern on that point is

15    that discovery was stayed by the Court.  So if we had

16    completed discovery, that would be a better argument to make.

17    Is there any prejudice to MGA?  I want to make sure I'm not

18    missing something.  I certainly am going to rule that for

19    purposes of Phase 1, there will be no new Doe's added.  But

20    for purposes of Phase 2, waiting until after this trial is

21    over and Phase 1 is over, is there any real prejudice to MGA?

22         MR. RUSSELL:  Well, your Honor, at this point we're

23    arguing about the prejudice to people allegedly as yet

24    unknown.  And I think the problem is discovery wasn't stayed

25    for Phase 2 until February 24.  It's not as if they haven't

EXHIBIT  48

PAGE  604

1  had years and years and years to obtain this discovery. They

2  had a suit as early back as April of 2004 with essentially

3  unlimited discovery. And for them to suggest -- in fact,

4  your Honor, we briefed in our summary judgment motion that

5  you've got two current defendants who were not properly

6  before this court who should be dismissed on statute of

7  limitations grounds because they themselves are not proper

8  Doe defendants, namely, Isaac Larian and MGA Hong Kong.

9       I mean, the standards that are required to insert

10  somebody as a Doe defendant are essentially de minimis. You

11  have to know the identity, and you have to have some sense of

12  the nexus between that defendant and the case. I mean, that

13  is virtually no burden whatsoever. I don't see any reason

14  why we shouldn't be cutting off allegedly unknown Doe

15  defendants. But more particularly, we should be cutting off

16  two existing defendants with respect to the state law claims

17  in Phase 1.

18       THE COURT: Thank you, Counsel. The Court is going

19  to defer ruling on the Doe defendants as they relate to

20  Phase 2; however, as I indicated, there will be no further

21  Doe defendants with respect to Phase 1. This is something

22  I'll take up after this trial.

23       Your second point, Mr. Zeller, is the import of the

24  Court's rulings on Mattel's statutory unfair claim relating

25  to commercial bribery and tortious interference.

1          MR. ZELLER:  This was the result of yesterday's

2    order.  It may be that we were just being overly cautious in

3    understanding and interpreting the Court's order.

4          THE COURT:  Yesterday's order?

5          MR. ZELLER:  Correct.  The further order.  Because

6    at some point it seemed to suggest that all of the remainder

7    of the unfair competition claim was dismissed.  I assume that

8    the portions the court already found had survived in its

9    original summary judgment order are still in.  And I think in

10   fairness as well, I could just also point to MGA's portions

11   on page 120, I regret to say, of the pretrial conference

12   order, where I think that they also recognize it.

13         MR. RUSSELL:  If I might, your Honor, I apologize,

14   but we agree with what Mr. Zeller is saying.  We don't think

15   that the Court intended to dismiss all --

16         THE COURT:  No, what I did is there is basically --

17   I identified and analyzed this as three different components

18   to the unfair competition claim, the antitrust or unfair

19   aspect, I previously ruled, was not in play here.  The

20   fraudulent aspect, Mattel did not oppose that.  That was out.

21   What was still in was the unlawful component.  There you

22   needed underlying unlawful act, and I think I identified the

23   commercial bribery which, of course, is a Phase 2 issue, but

24   the tortious interference is in play here.  So to the extent

25   that we have an unfair competition, tortious interference

EXHIBIT ___ 48

PAGE ___ 606

81

1

2

3

4

5

6

7                      C E R T I F I C A T E

8

9

10              I hereby certify that pursuant to Title 28,

11  Section 753 United States Code, the foregoing is a true and

12  correct transcript of the stenographically reported

13  proceedings in the above matter.

14              Certified on May 23, 2008.

15

16

17  _____
    MARK SCHWEITZER, CSR, RPR, CRR
18  Official Court Reporter
    License No. 10514

19

20

21

22

23

24

25

EXHIBIT _____ 4b

PAGE _____ 607

# Exhibit 49

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**06-7090317861**
**10/30/2006 16:46**

**FILED**
CALIFORNIA
SECRETARY OF STATE
SOS

A. NAME & PHONE OF CONTACT AT FILER [optional]
Ann Jones, Paralegal (404) 881-7563

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

CT Corporation System
2295 Gateway Oaks Drive
Ste 185
Sacramento CA 95833

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME: MGA Entertainment (Mexico), Inc.

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16380 Roscoe Blvd., Suite 200 | Van Nuys | CA | 91406 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| 20-0998523 | | Corporation | California | CA C2643976 | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME

3. SECURED PARTY'S NAME
3a. ORGANIZATION'S NAME: Wachovia Bank, National Association, as Agent

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| One South Broad Street, PA 4830 | Philadelphia | PA | 19107 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All of the Debtor's right, title and interest in the following, whether now owned or hereafter acquired: (a) subject to the limitation set forth in Exhibit A attached hereto, equity interests in MGAE de Mexico SRL de CV, (b) related assets and (c) proceeds thereof, all as more particularly described on Exhibit A attached hereto.

File with California Secretary of State

MN(0768845-1

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)
Gardner 19513/315438

EXHIBIT 1
PAGE 6

Exhibit 37
Page 449

182148 10002

## Exhibit A

Debtor:
MGA Entertainment (Mexico), Inc.
16380 Roscoe Blvd., Suite 200
Van Nuys, California 91406

Secured Party:
Wachovia Bank, National Association, as Agent
One South Broad Street, PA 4830
Philadelphia, Pennsylvania 19107

All of Debtor's right, title and interest in, to and under the following (collectively, the "Collateral"):

(a)     all Equity Interests now or hereafter acquired or held by Debtor in the issuer (the "Issuer") described in Schedule 1 attached hereto;

(b)     all payments due or to become due to Debtor in respect of any of the foregoing;

(d)     all of Debtor's claims, rights, powers, privileges, authority, puts, calls, options, security interests, liens and remedies, if any, in respect of any of the foregoing;

(e)     all of Debtor's rights to exercise and enforce any and every right, power, remedy, authority, option and privilege of Debtor relating to any of the foregoing including, without limitation, any power to (i) terminate, cancel or modify any agreement, (ii) execute any instruments and to take any and all other action on behalf of and in the name of Debtor in respect of any of the foregoing and the applicable Issuer thereof, (iii) exercise voting rights or make determinations, (iv) exercise any election (including, but not limited to, election of remedies), (v) exercise any "put", right of first offer or first refusal, or other option, (vi) exercise any right of redemption or repurchase, (vii) give or receive any notice, consent, amendment, waiver or approval, (viii) demand, receive, enforce, collect or receipt for any of the foregoing, (ix) enforce or execute any checks, or other instruments or orders, and (x) file any claims and to take any action in connection with any of the foregoing;

(f)     all certificates and instruments representing or evidencing any of the foregoing;

(g)     all other rights, titles, interests, powers, privileges and preferences pertaining to any of the foregoing; and

(h)     all Proceeds of any of the foregoing.

Notwithstanding the foregoing, Debtor has only granted a security interest in (x) 65% (or such greater percentage that, due to a change in an applicable law after October 27, 2006, (A) could not reasonably be expected to cause the undistributed earnings of the Issuer as determined for United States federal income tax purposes to be treated as a deemed dividend to the Issuer's United States parent and (B) could not reasonably be expected to cause any material adverse tax consequences) of the issued and outstanding Equity Interest of the Issuer entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) and (y) 100% of the issued and outstanding Equity Interest of the Issuer not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)).

As used herein:

"Equity Interest" means, with respect to any Person, any share of capital stock of (or other ownership interests in) such Person, any warrant, option or other right for the purchase or other

LEGAL02/30133146v1

A - 1

EXHIBIT ___1___
PAGE ___4___

Exhibit 37
Page 450

acquisition from such Person of any share of capital stock of (or other ownership interests in) such Person, any security convertible into or exchangeable for any share of capital stock of (or other ownership interests in) such Person or warrant, right or option for the purchase or other acquisition from such Person of such shares (or such other ownership interests), and any other ownership interest in such Person (including, without limitation, partnership, member or trust interests therein), whether voting or nonvoting, and whether or not such share, warrant, option, right or other interest is authorized or otherwise existing on any date of determination.

"Person" means an individual, corporation, partnership, limited liability company, association, trust or unincorporated organization, or a government or any agency or political subdivision thereof.

"Proceeds" means all proceeds (including proceeds of proceeds) of any of the Collateral including all: (a) rights, benefits, distributions, premiums, profits, dividends, interest, cash, instruments, documents of title, accounts, contract rights, inventory, equipment, general intangibles, payment intangibles, deposit accounts, chattel paper, and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for, or as a replacement of or a substitution for, any of the Collateral, or proceeds thereof (including any cash, Equity Interests, or other Instruments issued after any recapitalization, readjustment, reclassification, merger or consolidation with respect to the Issuers and any security entitlements, as defined in Section 8-102(a)(17) of the UCC, with respect thereto); (b) "proceeds," as such term is defined in Section 9-102(a)(64) of the UCC; (c) proceeds of any insurance, indemnity, warranty, or guaranty (including guaranties of delivery) payable from time to time with respect to any of the Collateral, or proceeds thereof; and (d) payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral, or proceeds thereof.

EXHIBIT 1
PAGE 7

Exhibit 37
Page 451

1021481082

## SCHEDULE 1

MGA Entertainment (Mexico), Inc.
Pledged Equity Interests

| Issuer | Jurisdiction of Formation | Class of Equity Interest | Certificate Number (if any) | Percentage of Ownership |
|---|---|---|---|---|
| MGAE de Mexico SRL de CV | Mexico | Shares Parte Social | N/A | 65% |

EXHIBIT ___1___
PAGE ___0___

Exhibit 37
Page 452

FILING OFFICER STATEMENT

INTERNAL USE ONLY

1.Identification of the Record to which this FILING OFFICER STATEMENT relates.

  1a. INITIAL FINANCING STATEMENT #: 067090317861

  1b. RECORD TO WHICH THIS STATEMENT RELATES:

DOCUMENT NUMBER: 10268190001
FILING NUMBER: 0670908369
FILE DATE/TIME: 11/3/2006 1:34:00 PM

THE ABOVE SPACE IS FOR THE CA FILING OFFICE USE ONLY

2.  Describe the inaccuracy or mistake on the part of the file office:

- [x] Debtor    [ ] Secured Party
- [ ] Name and Address not Indexed.
- [x] Name Indexed Incorrectly
- [ ] Address Indexed Incorrectly

- [ ] File Date entered incorrectly
- [ ] Wrong Action type entered
- [ ] Wrong Filing Type entered
- [ ] Filed in Error
- [ ] Other

3.  Describe filing office administrative action taken as a result of inaccuracy or mistake (including date of each action).

- [ ] Added Name:
- [ ] Address:
- [x] Corrected Name from: MGA EMTERTAINMENT (MEXICO), INC.
- [x] To: MGA ENTERTAINMENT (MEXICO), INC.
- [ ] Corrected Address from:
- [ ] To:
- [ ] Corrected File Date from        to
- [ ] Re-entered the UCC3        as a
- [ ] Changed the Filing Type from        to
- [ ] Document Deleted
- [ ] Other:

4.  Additional Explanation (if applicable):

11/03/2006 13:34

1

Exhibit 37
Page 453

EXHIBIT 1
PAGE 9

EXHIBIT 45
PAGE 616

**UCC FINANCING STATEMENT AMENDMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
Ann Jones, Paralegal (404) 881-7563

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

UCC Direct Services
1232 Q St
Sacramento CA 95814
Account 10010537
CDD

07-71137422
05/14/2007 11:35

FILED
CALIFORNIA
SECRETARY OF STATE

12049850803

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
06-7090317861 filed 10/30/06

2. ☐ TERMINATION

3. ☐ CONTINUATION

4. ☐ ASSIGNMENT

5. AMENDMENT (PARTY INFORMATION)

8. AMENDMENT (COLLATERAL CHANGE): check only one box.

All of the Debtor's right, title and interest in the following, whether now owned or hereafter acquired: (a) subject to the limitation set forth in Exhibit A attached hereto, equity interests in MGAE de Mexico SRL de CV, (b) related assets and (c) proceeds thereof, all as more particularly described on Exhibit A attached hereto.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT
Wachovia Bank, National Association, as Agent

10. OPTIONAL FILER REFERENCE DATA
File with California Secretary of State; Debtor Name: MGA Entertainment (Mexico), Inc.   09264.8850
JBM

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

EXHIBIT 1
PAGE 10

Exhibit 37
Page 454

## Exhibit A

Debtor:
MGA Entertainment (Mexico), Inc.
16380 Roscoe Blvd., Suite 200
Van Nuys, California 91406

Secured Party:
Wachovia Bank, National Association, as Agent
One South Broad Street, PA 4830
Philadelphia, Pennsylvania 19107

All of Debtor's right, title and interest in, to and under the following (collectively, the "Collateral"):

(a)    all Equity Interests now or hereafter acquired or held by Debtor in Issuer (the "Issuer") described in Schedule 1 attached hereto;

(b)    all payments due or to become due to Debtor in respect of any of the foregoing;

(c)    all of Debtor's claims, rights, powers, privileges, authority, puts, calls, options, security interests, liens and remedies, if any, in respect of any of the foregoing;

(d)    all of Debtor's rights to exercise and enforce any and every right, power, remedy, authority, option and privilege of Debtor relating to any of the foregoing including, without limitation, any power to (i) terminate, cancel or modify any agreement, (ii) execute any instruments and to take any and all other action on behalf of and in the name of Debtor in respect of any of the foregoing and the applicable Issuer thereof, (iii) exercise voting rights or make determinations, (iv) exercise any election (including, but not limited to, election of remedies), (v) exercise any "put", right of first offer or first refusal, or other option, (vi) exercise any right of redemption or repurchase, (vii) give or receive any notice, consent, amendment, waiver or approval, (viii) demand, receive, enforce, collect or receipt for any of the foregoing, (ix) enforce or execute any checks, or other instruments or orders, and (x) file any claims and to take any action in connection with any of the foregoing;

(e)    all certificates and instruments representing or evidencing any of the foregoing;

(f)    all other rights, titles, interests, powers, privileges and preferences pertaining to any of the foregoing; and

(g)    all Proceeds of any of the foregoing.

Notwithstanding the foregoing, (x) in no event shall the Debtor be required to subject to the Lien of the Pledge Agreement or any other loan document more than 65% (or such greater percentage that, due to a change in an Applicable Law after October 27, 2006, (A) could not reasonably be expected to cause the undistributed earnings of such Foreign Subsidiary as determined for United States federal income tax purposes to be treated as a deemed dividend to such Foreign Subsidiary's United States parent and (B) could not reasonably be expected to cause any material adverse tax consequences) of the issued and outstanding Equity Interest of a Foreign Subsidiary entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) determined on a collective basis, but (y) the Debtor shall be required to subject to the Lien of the Pledge Agreement 100% of the issued and outstanding Equity Interest of a Foreign Subsidiary not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)).

A-1

EXHIBIT ___1___
PAGE ___11___

Exhibit 37
Page 455

As used herein:

"Equity Interest" means, with respect to any Person, any share of capital stock of (or other ownership interests in) such Person, any warrant, option or other right for the purchase or other acquisition from such Person of any share of capital stock of (or other ownership interests in) such Person, any security convertible into or exchangeable for any share of capital stock of (or other ownership interests in) such Person or warrant, right or option for the purchase or other acquisition from such Person of such shares (or such other ownership interests), and any other ownership interest in such Person (including, without limitation, partnership, member or trust interests therein), whether voting or nonvoting, and whether or not such share, warrant, option, right or other interest is authorized or otherwise existing on any date of determination.

"Person" means an individual, corporation, partnership, limited liability company, association, trust or unincorporated organization, or a government or any agency or political subdivision thereof.

"Proceeds" means all proceeds (including proceeds of proceeds) of any of the Collateral including all: (a) rights, benefits, distributions, premiums, profits, dividends, interest, cash, instruments, documents of title, accounts, contract rights, inventory, equipment, general intangibles, payment intangibles, deposit accounts, chattel paper, and other property from time to time received, receivable, or otherwise distributed in respect of or in exchange for, or as a replacement of or a substitution for, any of the Collateral, or proceeds thereof (including any cash, Equity Interests, or other instruments issued after any recapitalization, readjustment, reclassification, merger or consolidation with respect to the Issuers and any security entitlements, as defined in Section 8-102(a)(17) of the UCC, with respect thereto); (b) "proceeds," as such term is defined in Section 9-102(a)(64) of the UCC; (c) proceeds of any insurance, indemnity, warranty, or guaranty (including guaranties of delivery) payable from time to time with respect to any of the Collateral, or proceeds thereof; and (d) payments (in any form whatsoever) made or due and payable to Debtor from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the Collateral, or proceeds thereof.

1264965000 3

EXHIBIT ___I___
PAGE ___12___

Exhibit 37
Page 456

SCHEDULE 1

MGA Entertainment (Mexico), Inc.
Pledged Equity Interests

| Issuer | Jurisdiction of Formation | Class of Equity Interest | Certificate Number (if any) | Percentage of Ownership |
|---|---|---|---|---|
| MGAE de Mexico SRL de CV | Mexico | Shares Parte Social | N/A | 100% |

LEGAL02/30137046v2

1264956003

EXHIBIT ____1____
PAGE ____13____

Exhibit 37
Page 457

49

616

EXHIBIT

PAGE

**08-71714107**

**09/09/2008 16:03**

**FILED**

CA, (Form) A
SECRETARY OF STATE

SOS

18335590005   UCC 3 FILING

## UCC FINANCING STATEMENT **AMENDMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

T4-0000-656-2

CL@S
INFORMATION SERVICES
WWW.CLASINFO.COM

opened number **1036 AM RW**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| | |
|---|---|
| 1a. INITIAL FINANCING STATEMENT FILE # 08-7090317861 | 10/30/08 |

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ ASSIGNMENT (full): Give name of assignee in item 7a or 7b and address of assignee in item 7c and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| | | | | |
|---|---|---|---|---|
| OR | 6a. ORGANIZATION'S NAME | | | |
| | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| | | | | |
|---|---|---|---|---|
| OR | 7a. ORGANIZATION'S NAME  OMNI 808 Investors LLC, as Agent | | | |
| | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 9420 Wilshire Blvd., Suite 400 | Beverly Hills | CA | 90212 | USA |

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION Limited Liability Company | 7f. JURISDICTION OF ORGANIZATION California | 7g. ORGANIZATIONAL ID #, if any  ☐ NONE |
|---|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| | | | | |
|---|---|---|---|---|
| OR | 9a. ORGANIZATION'S NAME  Wachovia Bank, National Association, as Agent | | | |
| | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 10. OPTIONAL FILER REFERENCE DATA | |
|---|---|
| Debtor: MGA Entertainment (Mexico), Inc. | CA-SOS |

FILING OFFICE COPY – NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC 3) (REV. 07/29/98)

Exhibit 37
Page 458

EXHIBIT 1
PAGE 14

EXHIBIT 49
PAGE 419

# Exhibit 50

RECEIVED
DEC 07 2004

1   M. RANDALL OPPENHEIMER (S.B. #77649)
    DIANA M. TORRES (S.B. #162284)
2   O'MELVENY & MYERS LLP
    400 South Hope Street
3   Los Angeles, California 90071-2899
    Telephone:  (213) 430-6000
4   Facsimile:   (213) 430-6407

5

6   Attorneys for Applicant-Intervenor
    MGA ENTERTAINMENT, INC.

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware          Case No. CV 04-9059 NM (RNBx)
    Corporation,
12                                    **STIPULATION PERMITTING MGA
                     Plaintiff,       TO INTERVENE AS A PARTY TO
13                                    THIS ACTION**
              v.
14                                    Hon. Nora Manella
    CARTER BRYANT, an individual;
15  and DOES 1 through 10, inclusive,
16                   Defendant.
17

18

19

20

21

22

23

24

25

26                                    EXHIBIT ___50___
27
28                                    PAGE ___618___

                                      STIPULATION PERMITTING MGA TO
                                          INTERVENE AS A PARTY

1     WHEREAS, on April 27, 2004, Plaintiff Mattel, Inc. ("Mattel") filed suit

2  against Carter Bryant ("Bryant") and ten unnamed "Does" alleging breach of

3  contract, breach of the duty of loyalty, breach of fiduciary duty, conversion and

4  unjust enrichment.

5     WHEREAS, MGA, believes, at this time, that it has a significantly

6  protectable interest relating to the subject matter of the action, that the disposition

7  of the action may impair or impede MGA's ability to protect its interest absent

8  intervention, and that MGA's interest is not adequately represented by the existing

9  parties.

10     WHEREAS, Mattel is agreeable to the filing of the Answer in Intervention as

11  a procedural matter pursuant to this Stipulation, without waiver of, or prejudice to,

12  its rights, defenses or positions in this or any other action or to the Answer in

13  Intervention, including without limitation to Mattel's jurisdictional objections;

14     WHEREAS, Bryant is agreeable to the filing of the Answer in Intervention as

15  a procedural matter pursuant to this Stipulation, without waiver of, or prejudice to,

16  his rights, defenses or positions in this or any other action;

17     NOW THEREFORE, MGA, Mattel and Bryant hereby stipulate, subject to

18  this Court's approval, as follows:

19     1.     MGA may intervene as a party to this action; and

20     //

21     //

22     //

23     //

24     //

25     //

26     //

27     //

28     //

EXHIBIT ____50

- 1 -     PAGE ____69

1      2.    MGA shall be permitted to file its Answer in Intervention, lodged

2  concurrently with this Stipulation.

3

4          Dated:    December 3, 2004    O'MELVENY & MYERS LLP

5

6                                    By:

7                                      Diana M. Torres
                                    Attorneys for Applicant-Intervenor
                                    MGA ENTERTAINMENT, INC.

8

9          Dated:    December___, 2004    QUINN EMANUEL URQUHART

10                                       OLIVER & HEDGES LLP

11

12                                   By:_____

13                                       Michael T. Zeller
                                      Attorneys for Plaintiff
                                      MATTEL, INC.

14

15         Dated:    December___, 2004    LITTLER MENDELSON, P.C.

16

17                                   By:_____

18                                       Keith A. Jacoby
                                      Attorneys for Defendant
                                      CARTER BRYANT

19 IT IS SO ORDERED.

20

21         Dated:    December____, 2004

22

23                                       Hon. Nora M. Manella
                                      United States District Judge

24

25

26

27

28

                                          EXHIBIT ___ 50

- 2 -

                                          PAGE ___ 600

1    2.    MGA shall be permitted to file its Answer in Intervention, lodged

2  concurrently with this Stipulation.

3

4        Dated:      December____, 2004    O'MELVENY & MYERS LLP

5

6                                          By:_____
                                               Diana M. Torres
7                                          Attorneys for Applicant-Intervenor
                                           MGA ENTERTAINMENT, INC.
8

9        Dated:      December____, 2004    QUINN EMANUEL URQUHART
                                           OLIVER & HEDGES LLP
10

11

12                                         By:_____
                                               Michael T. Zeller
13                                         Attorneys for Plaintiff
                                           MATTEL, INC.
14

15       Dated:      December____, 2004    LITTLER MENDELSON, P.C.

16

17                                         By:_____
                                               Keith A. Jacoby
18                                         Attorneys for Defendant
                                           CARTER BRYANT
19

   IT IS SO ORDERED.
20

21       Dated:      December____, 2004

22

23                                         _____
                                           Hon. Nora M. Manella
                                           United States District Judge
24

25

26

27

28

                                - 2 -

EXHIBIT ____50____

PAGE ____621____

DEC-03-2004 09:27 FROM:LITTLER  MDELSON    310 553 5583       TO:2#852#12134306407    P.4/4

1      2.    MGA shall be permitted to file its Answer in Intervention, lodged

2   concurrently with this Stipulation.

3

4      Dated:    December____, 2004    O'MELVENY & MYERS LLP

5

6                                  By:_____

7                                      Diana M. Torres
                                    Attorneys for Applicant-Intervenor
8                                    MGA ENTERTAINMENT, INC.

9      Dated:    December____, 2004    QUINN EMANUEL URQUHART
10                                        OLIVER & HEDGES LLP

11

12                                    By:_____

13                                      Michael T. Zeller
                                      Attorneys for Plaintiff
14                                      MATTEL, INC.

15      Dated:    December 3, 2004    LITTLER MENDELSON, P.C.

16

17                                    By:_____

18                                      Keith A. Jacoby
                                      Attorneys for Defendant
19   IT IS SO ORDERED.                      CARTER BRYANT

20

21      Dated:    December____, 2004

22

23                                      Hon. Nora M. Manella
                                      United States District Judge
24

25

26

27

28

EXHIBIT ____50

PAGE ____622

1   M. RANDALL OPPENHEIMER (S.B. #77649)
    DIANA M. TORRES (S.B. #162284)
2   O'MELVENY & MYERS LLP
    400 South Hope Street
3   Los Angeles, California 90071-2899
    Telephone:  (213) 430-6000
4   Facsimile:  (213) 430-6407

5   Attorneys for Applicant-Intervenor
    MGA ENTERTAINMENT, INC.

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware              Case No. CV 04-9059 NM (RNBx)
    Corporation,
12                                        MGA ENTERTAINMENT, INC.'S
                        Plaintiff,        ANSWER IN INTERVENTION TO
13                                        PLAINTIFF'S UNVERIFIED
         v.                               COMPLAINT
14
    CARTER BRYANT, an individual;         Hon. Nora Manella
15  and DOES 1 through 10, inclusive,

16                      Defendant.

17

18

19

20

21

22

23

24

25

26

27                                        EXHIBIT ____50____

28                                        PAGE ____623____
    LA2:730044                    3       ANSWER IN INTERVENTION TO
                                          PLAINTIFF'S UNVERIFIED COMPLAINT

1    As it has now become abundantly clear that its rights are directly at stake in

2  this action, MGA Entertainment, Inc. ("MGA") intervenes in this case as a

3  defendant.  Plaintiff Mattel, Inc. ("Mattel") filed suit against Carter Bryant

4  ("Bryant"), a design consultant for MGA, asserting, among other claims, that he

5  "wrongfully converted Mattel property" for his own benefit and "the benefit and

6  gain of others" and seeking both monetary and injunctive relief.  It is now evident

7  that Mattel's claims are based on Mattel's misguided theory that Bryant allegedly

8  converted intellectual property from Mattel and used it as the underlying work for

9  his own and MGA's benefit.  MGA reaches this conclusion in light of at least the

10  following:

11    (a)    Mattel's recent registration for an unreleased project created in

12            approximately 1999 that it now calls "Toon Teens," from which Mattel

13            has asserted in the press Bryant "borrowed liberally" for his work on

14            "Bratz," and which is also the subject of the declaratory relief action

15            that Bryant has filed;

16    (b)    the questioning of Bryant at his recent deposition focusing on the

17            creation and development of "Bratz;"

18    (c)    Mattel's recent efforts to subpoena third parties who worked on

19            MGA's "Bratz" products and have no information concerning Bryant's

20            employment relationship with Mattel; and

21    (d)    Mattel's recent attempts to assist those who have infringed MGA's

22            rights in other countries to prove (falsely) that MGA does not own the

23            copyrights to its "Bratz" products.

24  Indeed, Mattel's purported conversion claim is nothing more than a copyright claim

25  in disguise.  It is preempted by federal copyright law, accordingly, and must be

26  recast as a copyright claim under federal law.  This copyright action necessarily

27  implicates MGA's rights, as MGA owns all intellectual property rights in "Bratz."

28  While MGA denies that Mattel is entitled to rights in any of MGA's intellectual

LA2:730044                     - 1 -   4            ANSWER IN INTERVENTION TO
                                                    PLAINTIFF'S UNVERIFIED COMPLAINT
                                                    EXHIBIT

PAGE _____ 604

1   property, including, without limitation, MGA's copyrights in the "Bratz" line of

2   products, MGA must now intervene in this action to defend its intellectual property

3   rights.  Therefore Defendant in Intervention MGA, as answer to the Complaint

4   herein, admits, denies, and alleges as follows:

5          1.      Upon information and belief, MGA admits that Mattel is a corporation

6   organized and existing under the laws of the State of Delaware and has a place of

7   business in El Segundo, California.  Except as so admitted, MGA is without

8   sufficient information to admit the allegations of ¶ 1, and on that basis denies the

9   same.

10         2.      MGA admits that defendant Bryant is an individual currently residing

11  in Springfield, Missouri.

12         3.      MGA is without sufficient information concerning either Mattel's

13  knowledge or the identities of the Doe Defendants, if any, to enable it to admit the

14  allegations of ¶ 3, and on that basis denies the same.

15         4.      MGA denies the allegations of ¶ 4.

16         5.      MGA denies the allegations of ¶ 5.

17         6.      MGA admits that Bryant does not currently reside in California and

18  that Los Angeles County is a proper venue for this action.  Except as so admitted,

19  MGA denies the allegations of ¶ 6.

20         7.      MGA is without information to admit the specific allegations of ¶ 7

21  and on that basis denies the same, but admits that reports from Mattel and other

22  public sources make assertions similar to those alleged in ¶ 7.

23         8.      MGA is without information to admit the specific allegations of ¶ 8

24  pertaining to Mattel's operations, and on that basis denies the same, but admits that

25  Mattel has a large facility in El Segundo, California, in which Mattel employs a

26  number of people.

27         9.      MGA is without information to admit the specific allegations of ¶ 9

28  pertaining to Mattel's operations, and on that basis denies the same, but admits that

LA2:730044                         - 2 -    5              ANSWER IN INTERVENTION TO
                                                    PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT _____ 50

PAGE _____ 605

1   Bryant was employed by Mattel during two time periods.

2       10.     MGA is informed and on that basis admits that Bryant signed

3   documents during his employment at Mattel. MGA alleges that Exhibit A speaks

4   for itself as to its contents. MGA lacks information sufficient to enable it to

5   identify or authenticate Exhibit A and on that basis denies each and every allegation

6   in ¶ 10 purporting to describe the content of Exhibit A. MGA further alleges that

7   the allegations in ¶ 10 purporting to describe the legal effect of Exhibit A consist of

8   legal argument and conclusions to which no response is required.

9       11.     MGA is informed and on that basis admits that Bryant signed

10  documents during his employment at Mattel. MGA alleges that Exhibit B speaks

11  for itself as to its contents. MGA lacks information sufficient to enable it to

12  identify or authenticate Exhibit B and on that basis denies each and every allegation

13  in ¶ 11 purporting to describe the content of Exhibit A. MGA further alleges that

14  the allegations in ¶ 11 purporting to describe the legal effect of Exhibit B consist of

15  legal argument and conclusions to which no response is required.

16      12.     MGA admits that Bryant signed a contract with MGA on or about

17  October 4, 2000 that provided that Bryant would receive royalties in connection

18  with certain work to be performed by him thereafter under that agreement, and that

19  MGA would own all intellectual property rights in property for which Bryant

20  provided services, as well as in the work assigned thereunder by Bryant to MGA.

21  Except as so admitted, MGA denies the allegations of ¶ 12.

22      13.     MGA is without information sufficient to admit the allegations in ¶ 13

23  and on that basis denies the same.

24      14.     MGA denies the allegations of ¶ 14.

25      15.     In answer to ¶ 15, MGA repeats its answers to the allegations in

26  paragraphs 1 through 14, above.

27      16.     MGA is informed and on that basis admits that Bryant signed

28  documents during his employment at Mattel. MGA alleges that any purported

LA2:730044                          - 3 -      6        ANSWER IN INTERVENTION TO
                                                        PLAINTIFF'S UNVERIFIED COMPLAINT  50
                                                                EXHIBIT

                                                        PAGE              626

1   "Mattel Employment Agreement" and "Conflict Questionnaire" speak for

2   themselves as to their contents.  MGA lacks information sufficient to enable it to

3   identify or authenticate the purported "Mattel Employment Agreement" and

4   "Conflict Questionnaire" and on that basis denies each and every allegation in ¶ 16

5   purporting to describe the contents of such documents.  MGA further alleges that

6   the allegations in ¶ 16 purporting to describe the legal effect of any purported

7   "Mattel Employment Agreement" or "Conflict Questionnaire" consist of legal

8   argument and conclusions to which no response is required.

9       17.   MGA alleges that any purported "Mattel Employment Agreement" and

10  "Conflict Questionnaire" speak for themselves as to their contents.  MGA lacks

11  information sufficient to enable it to identify or authenticate the purported "Mattel

12  Employment Agreement" and "Conflict Questionnaire" and on that basis denies

13  each and every allegation in ¶ 16 purporting to describe the contents of such

14  documents.  MGA further alleges that the allegations in ¶ 16 purporting to describe

15  the legal effect of any purported "Mattel Employment Agreement" or "Conflict

16  Questionnaire" consist of legal argument and conclusions to which no response is

17  required.  MGA is without sufficient information concerning Mattel's performance,

18  if any, and on that basis denies all allegations regarding the same.

19      18.   MGA denies the allegations of ¶ 18.

20      19.   MGA denies the allegations of ¶ 19 and affirmatively asserts that the

21  relief sought by Mattel in this paragraph indicates that Mattel's first cause of action

22  implicates federal copyright laws.  To the extent that Mattel herein purports to set

23  forth the allegations in support of its first cause of action to substantiate a federal

24  copyright claim, these allegations are also expressly denied.

25      20.   MGA denies the allegations of ¶ 20 except that MGA alleges that any

26  purported "Employment Agreement" speaks for itself as to its contents.  MGA

27  lacks information sufficient to enable it to identify or authenticate the purported

28  "Employment Agreement" and on that basis denies each and every allegation in ¶

1   20 purporting to describe the contents of such document. MGA further alleges that

2   the allegations in ¶ 20 purporting to describe the legal effect of any purported

3   "Employment Agreement" consist of legal argument and conclusions to which no

4   response is required.

5        21.   In answer to ¶ 21, MGA repeats its answers to the allegations in

6   paragraphs 1 through 20, above.

7        22.   MGA is without information sufficient to admit the allegations of ¶ 22,

8   and on that basis denies same except that MGA alleges that any purported

9   "Employee Agreement" speaks for itself as to its contents. MGA lacks information

10   sufficient to enable it to identify or authenticate the purported "Employee

11   Agreement" and on that basis denies each and every allegation in ¶ 22 purporting to

12   describe the contents of such document. MGA further alleges that the allegations in

13   ¶ 22 purporting to describe the legal effect of any purported "Employee

14   Agreement" consist of legal argument and conclusions to which no response is

15   required.

16        23.   MGA denies the allegations of ¶ 23 and affirmatively asserts that the

17   relief sought by Mattel in this paragraph indicates that Mattel's first cause of action

18   implicates federal copyright laws. To the extent that Mattel herein purports to set

19   forth the allegations in support of its first cause of action to substantiate a federal

20   copyright claim, these allegations are also expressly denied.

21        24.   MGA denies the allegations of ¶ 24.

22        25.   MGA denies the allegations of ¶ 25.

23        26.   MGA denies the allegations of ¶ 26.

24        27.   MGA denies the allegations of ¶ 27.

25        28.   In answer to ¶ 28, MGA repeats its answers to the allegations in

26   paragraphs 1 through 27, above.

27        29.   MGA denies the allegations of ¶ 29.

28        30.   MGA denies the allegations of ¶ 30 and affirmatively asserts that the

LA2:730044                          - 5 -      8          ANSWER IN INTERVENTION TO
                                                          PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT ___50___

PAGE ___628___

1   relief sought by Mattel in this paragraph indicates that Mattel's first cause of action

2   implicates federal copyright laws.  To the extent that Mattel herein purports to set

3   forth the allegations in support of its first cause of action to substantiate a federal

4   copyright claim, these allegations are also expressly denied.

5       31.    MGA denies the allegations of ¶ 31.

6       32.    MGA denies the allegations of ¶ 32.

7       33.    MGA denies the allegations of ¶ 33.

8       34.    MGA denies the allegations of ¶ 34.

9       35.    In answer to ¶ 35, MGA repeats its answers to the allegations in

10  paragraphs 1 through 34, above.

11      36.    MGA denies the allegations of ¶ 36 and affirmatively asserts that the

12  allegations in this paragraph indicate that Mattel's fourth cause of action implicates

13  federal copyright laws.  To the extent that Mattel herein purports to set forth the

14  allegations in support of its fourth cause of action to substantiate a federal copyright

15  claim, these allegations are also expressly denied..

16      37.    MGA denies the allegations of ¶ 37.

17      38.    MGA denies the allegations of ¶ 38.

18      39.    MGA denies the allegations of ¶ 39.

19      40.    In answer to ¶ 40, MGA repeats its answers to the allegations in

20  paragraphs 1 through 39, above.

21      41.    MGA denies the allegations of ¶ 41 and affirmatively asserts that the

22  allegations in this paragraph assert legal or equitable rights that are equivalent to

23  exclusive rights within the general scope of copyright protection and are, therefore,

24  expressly preempted by the Copyright Act, 17 U.S.C. § 101 *et seq*. and must be

25  recast as a federal question under copyright law.  To the extent that Mattel herein

26  purports to set forth the allegations in support of its fifth cause of action to support

27  a federal copyright claim, these allegations are also expressly denied.

28      42.    MGA denies the allegations of ¶ 42 and affirmatively asserts that the

LA2:730044                    - 6 -   9        ANSWER IN INTERVENTION TO
                                               PLAINTIFF'S UNVERIFIED COMPLAINT
                                               EXHIBIT                        D

                                        PAGE_____ 609

1    allegations in this paragraph assert legal or equitable rights that are equivalent to

2    exclusive rights within the general scope of copyright protection, which are

3    expressly preempted by the Copyright Act, 17 U.S.C. § 101 *et seq.* and must be

4    recast as a federal question under copyright law.  To the extent that Mattel herein

5    purports to set forth the allegations in support of its fifth cause of action to

6    substantiate a federal copyright claim, these allegations are also expressly denied.

7         43.    MGA denies the allegations of ¶ 43 and affirmatively asserts that the

8    allegations in this paragraph assert legal or equitable rights that are equivalent to

9    exclusive rights within the general scope of copyright protection, which are

10   expressly preempted by the Copyright Act, 17 U.S.C. § 101 *et seq.* and must be

11   recast as a federal question under copyright law.  To the extent that Mattel herein

12   purports to set forth the allegations in support of its fifth cause of action to

13   substantiate a federal copyright claim, these allegations are also expressly denied.

14        44.    MGA denies the allegations of ¶ 44.

15        45.    MGA denies the allegations of ¶ 45.

16

17                       **AFFIRMATIVE DEFENSES**

18        MGA asserts the following affirmative defenses:

19                   **FIRST AFFIRMATIVE DEFENSE**

20        1.    Plaintiff's Complaint and each purported claim for relief therein is

21   preempted by the Federal Copyright Act.

22                  **SECOND AFFIRMATIVE DEFENSE**

23        2.    Plaintiff's Complaint and each purported claim for relief therein fail to

24   state facts sufficient to constitute a claim for relief.

25                   **THIRD AFFIRMATIVE DEFENSE**

26        3.    Plaintiff's Complaint and each purported claim for relief therein are

27   barred by the equitable doctrine of unclean hands.

28

LA2:730044                          - 7 -   *10*          ANSWER IN INTERVENTION TO
                                                          PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT _____ 50

PAGE _____ 630

1                   **FOURTH AFFIRMATIVE DEFENSE**

2       4.     Plaintiff's Complaint and each purported claim for relief therein are

3 barred by the equitable doctrine of waiver.

4                   **FIFTH AFFIRMATIVE DEFENSE**

5       5.     Plaintiff's Complaint and each purported claim for relief therein are

6 barred by the equitable doctrine of estoppel.

7                   **SIXTH AFFIRMATIVE DEFENSE**

8       6.     Plaintiff's Complaint and each purported claim for relief therein are

9 barred by the equitable doctrine of laches.

10                  **SEVENTH AFFIRMATIVE DEFENSE**

11       7.     Plaintiff's Complaint and each purported claim for relief therein are

12 barred by the equitable doctrine of consent.

13                  **EIGHTH AFFIRMATIVE DEFENSE**

14       8.     Plaintiff's Complaint and each purported claim for relief therein, or

15 some of them, are barred by the applicable statutes of limitations, including

16 California Code of Civil Procedure sections 337, 339, 343 and 338(c) .

17                  **NINTH AFFIRMATIVE DEFENSE**

18       9.     Plaintiff's Complaint and each purported claim for relief therein, or

19 some of them, are barred because no Defendant owed a legal duty to Plaintiff or, if

20 any legal duty arose, it was not breached by any Defendant.

21                  **TENTH AFFIRMATIVE DEFENSE**

22       10.     Without admitting, and specifically denying, that any Defendant owed

23 any duty to Plaintiff, any duty or obligation, contractual or otherwise, which

24 Plaintiff claims was owed by any Defendant has been fully performed, satisfied

25 and/or discharged.

26                **ELEVENTH AFFIRMATIVE DEFENSE**

27       11.     Plaintiff's Complaint and each purported claim for relief therein are

28 barred because each Defendant has complied fully with his and/or its obligations, if

LA2:730044                 - 8 -  //          ANSWER IN INTERVENTION TO
PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT

PAGE       631

1 | any, under all applicable laws.

## TWELFTH AFFIRMATIVE DEFENSE

12.    Plaintiff's Complaint and each purported claim for relief therein are barred because Plaintiff has failed to exercise reasonable diligence in properly mitigating its damages, if any in fact were suffered.

## THIRTEENTH AFFIRMATIVE DEFENSE

13.    Plaintiff's Complaint and each purported claim for relief therein are barred because the alleged losses or harms sustained by Plaintiff, if any, resulted from causes other than any act or omission by any Defendant.

## FOURTEENTH AFFIRMATIVE DEFENSE

14.    Plaintiff's Complaint and each purported claim for relief therein, or some of them, are barred because to the extent Plaintiff has suffered any harm, and Defendant in Intervention denies that Plaintiff has suffered any harm, it is due to Plaintiff's own acts and omissions.

## FIFTEENTH AFFIRMATIVE DEFENSE

15.    Plaintiff's Complaint and each purported claim for relief therein, or some of them, are barred because any alleged contract between Plaintiff and Defendant Bryant fails for lack of consideration, is vague and uncertain, and therefore is void, voidable and/or unenforceable.

## SIXTEENTH AFFIRMATIVE DEFENSE

16.    Plaintiff's Complaint and each purported claim for relief therein, or some of them, are barred because any breaches of an alleged contract or duty, which Defendant in Intervention denies, are excused by Plaintiff's acts or omissions.

## SEVENTEENTH AFFIRMATIVE DEFENSE

17.    To the extent Plaintiff's Complaint and any purported claim for relief therein, or some of them, seek the remedy of injunctive relief, that remedy is barred because Plaintiff's remedies at law are adequate and any alleged harms, and

LA2:730044

- 9 -

ANSWER IN INTERVENTION TO
PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT _____ 50

PAGE _____ 632

1   Defendant in Intervention denies that there are harms, are not irreparable.

2   ## EIGHTEENTH AFFIRMATIVE DEFENSE

3   18.   Plaintiff's Complaint and each purported claim for relief therein

4   cannot be maintained because any duties or obligations, contractual or otherwise,

5   which Plaintiff claims are owed by Defendant Bryant, are contrary to applicable

6   law.

7   ## NINETEENTH AFFIRMATIVE DEFENSE

8   19.   Plaintiff is barred from recovering punitive and/or exemplary damages

9   from Defendant or Defendant in Intervention ("Defendants") because an award of

10  such damages would violate the United States and/or California Constitutions, and

11  applicable case law.

12  ## TWENTIETH AFFIRMATIVE DEFENSE

13  20.   Defendant in Intervention does not presently know all facts concerning

14  the conduct of Plaintiff sufficient to state all affirmative defenses at this time.

15  Defendant in Intervention will seek leave of Court to amend this Answer in

16  Intervention should it later discover facts demonstrating the existence of additional

17  affirmative defenses.

18

19  **WHEREFORE,** Defendant in Intervention prays for judgment as follows:

20  1.   Plaintiff's Complaint shall be dismissed in its entirety with prejudice;

21  2.   Plaintiff shall take nothing by its action against Defendant;

22  3.   Defendant in Intervention shall be awarded its costs of suit and

23  attorneys' fees incurred in this matter (to the extent permitted by applicable law);

24  and

25  4.   Defendant in Intervention shall be awarded such other further relief as

26  may be deemed just and proper.

27

28

LA2:730044

- 10 -  /3

ANSWER IN INTERVENTION TO
PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT _____ 5D

PAGE _____ 633

1

2      Dated:        December___, 2004

3                                          O'MELVENY & MYERS LLP

4                                          By:_____
                                                     Diana M. Torres
5                                          Attorneys for Defendant-in-Intervention
6                                          MGA ENTERTAINMENT, INC.

7

8    LA2:730044

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA2:730044                      - 11 -   14        ANSWER IN INTERVENTION TO
                                                PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT ___

PAGE ___ 634

## PROOF OF SERVICE

I, Deresa Gade, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On December, 3, 2004, I served the within documents:

**MGA ENTERTAINMENT INC.'S STIPULATION TO INTERVENE AS A PARTY ANSWER IN INTERVENTION, AND CERTIFICATE OF INTERESTED PARTIES**

☒  by transmitting via facsimile machine the document(s) listed above to the fax number(s) set forth below on this date. The outgoing facsimile machine telephone number in this office is (213) 430-6407.

☒  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Douglas A. Wickham
Keith Jacoby
Littler Mendelson
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Tel: (310) 553-0308
Fax: (310) 553-5583

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Tel: (213) 443-3000
Fax: (213) 443-3100

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on December 3, 2004, at Los Angeles, California.

_Deresa Gade_
Deresa Gade

EXHIBIT _50_

PAGE _635_